
**Freddie Mac**
We make home possible ℠

# Bulletin

**NUMBER: 2011-11**

**TO:** Freddie Mac Servicers                                                    June 30, 2011

### SUBJECT: SERVICING ALIGNMENT INITIATIVE AND HAWAII LEGISLATIVE CHANGES AFFECTING NON-JUDICIAL FORECLOSURES

With this *Single-Family Seller/Servicer Guide* ("Guide") Bulletin, we are announcing the Servicing Alignment Initiative, which is Freddie Mac's implementation of new Servicing requirements to streamline and simplify Servicing processes, help Servicers contact delinquent Borrowers more effectively, and determine eligibility for and offer alternatives to foreclosure to distressed homeowners. Freddie Mac is adopting these changes as part of its implementation of the consistent mortgage servicing and delinquency management requirements that are described in the Federal Housing Finance Agency's (FHFA) April 28, 2011 directive to Fannie Mae and Freddie Mac.

Additionally, we are providing specific requirements with regards to the processing of foreclosures in the State of Hawaii due to recent changes in Hawaii State law.

### SERVICING ALIGNMENT INITIATIVE

#### Overview

The new Servicing requirements address solicitation of delinquent Borrowers and evaluation of all Borrowers for each of the alternatives to foreclosure that we offer. New Borrower communications, solicitation and evaluation requirements apply to all alternatives to foreclosure offered under the Guide, including the Home Affordable Modification Program (HAMP) and the Home Affordable Foreclosure Alternatives (HAFA) initiative. Servicers must implement processes and procedures that will assist them in their efforts to complete relief or workout options more expeditiously, and work to reduce the number of Mortgages that will ultimately result in foreclosure.

Additionally, as part of the Servicing Alignment Initiative, in a future Bulletin, Freddie Mac will announce a new modification solution, the Freddie Mac Standard Modification. The Freddie Mac Standard Modification will include a three-month trial period, and eligibility and underwriting requirements that target Borrowers who are ineligible for HAMP or Borrowers who defaulted on previous HAMP or non-HAMP modifications. The Freddie Mac Standard Modification will eventually replace the current modification solution prescribed in Guide Chapter B65, *Workout Options*. In the interim, Servicers must continue evaluating Borrowers who are ineligible for HAMP using the modification requirements specified in Chapter B65 and their other applicable Purchase Documents.

With this Bulletin, we are announcing specific changes to our Servicing requirements in the following areas:

#### Borrower contact

▪ New requirements related to establishing quality right party contact and performance standards related to the Servicer's ability to establish quality right party contact

- Revised requirements related to collection efforts, including new call center and contact performance standards and requirements related to the breach letter and late payment notice
- Revised solicitation process, including the timing and scope of required Borrower solicitation and the specific solicitation documentation that must be used
- Revised Servicer evaluation standards, incentives and fees related to Borrower response rates and the successful transition of delinquent Borrowers into alternatives to foreclosure

**Delinquency management**

- Revised requirements related to the Borrower communication and evaluation process
- Revised requirements and restrictions related to the Servicer's initiation of foreclosure during the evaluation of the Borrower for an alternative to foreclosure
- Requirements for Servicers to review the Mortgage at specific times before and during the foreclosure process to ensure that there is no approved payment arrangement or pending alternative to foreclosure offer
- Requirements for Servicers to provide foreclosure certification to the attorney/trustee at least seven, but no more than 15 days, prior to the foreclosure sale date for all Mortgages that are scheduled for a foreclosure sale
- Revised property inspection requirements

**Income, hardship and other documentation requirements**

- Revised and standardized income and hardship documentation requirements applicable to both HAMP and non-HAMP modification solutions under the Guide
- Requirements for identifying the contents of a complete Borrower Response Package for a workout and certain relief options

**State foreclosure time lines and related compensatory fees**

- Revised State foreclosure time lines and permitting additional time for standard allowable delays beyond the control of the Servicer
- Revised State foreclosure time line compensatory fee assessment and billing to reinforce compliance with State foreclosure time lines from the Due Date of Last Paid Installment (DDLPI) through the foreclosure sale date

**Escalated cases**

- New requirements related to Servicer processes for reviewing and responding to Borrower complaints or disputes that rise to the level of an escalated case

## EFFECTIVE DATES

All of the changes related to the Servicing Alignment Initiative are effective on **October 1, 2011**, unless otherwise noted.

## BORROWER CONTACT REQUIREMENTS

### Quality right party contact

We have updated Guide Section 64.4, *Establishing Borrower Contact*, to redefine what constitutes successful right party contact and introduce the concept of "quality right party contact." Quality right party contact occurs when a Servicer establishes a rapport with the Borrower, and expresses empathy and a desire to help identify and discuss the most appropriate options for Delinquency resolution with the Borrower, co-Borrower or trusted advisor, such as a housing counselor. A Servicer's objective in contacting a delinquent Borrower is to establish quality right party contact.

A Servicer must make every attempt to achieve quality right party contact by:

- Determining the reason for the Delinquency and whether the reason is temporary or permanent in nature
- Determining whether or not the Borrower has vacated or plans to vacate the property
- Determining the Borrower's current perception of his or her financial circumstances and ability to repay the Mortgage debt
- Setting payment expectations and educating the Borrower on the availability of alternatives to foreclosure as appropriate
- Obtaining a commitment from the Borrower to either resolve the Delinquency through traditional methods (paying the total delinquent amount) or engaging in an alternative to foreclosure solution

Freddie Mac will measure a Servicer's effectiveness in achieving quality right party contact. In its efforts to contact Borrowers, a Servicer must strive to achieve a quality right party contact benchmark of at least 60% for its population of Borrowers who are 120 days delinquent. Refer to Section 65.8, *Performance Standards*, for more information regarding this performance standard and related reporting requirements.

**Collection efforts**

We have updated Section 64.5, *Collection Efforts*, to provide the minimum collection efforts required to bring a delinquent Mortgage current. To the extent that a Servicer has not already set up Automated Clearing House (ACH) payment arrangements or established other arrangements to cure the Delinquency, the Servicer must initiate telephone contact with each delinquent Borrower between the third and 36th day of Delinquency.

Telephone calls must continue at least every third day until quality right party contact is achieved and the Servicer determines that the Borrower does not intend to pursue an alternative to foreclosure, the Delinquency is cured, complete Borrower Response Package is received to evaluate the Borrower for an alternative to foreclosure or the Borrower enters into a repayment or forbearance agreement with the Servicer.

The Servicer must tailor its calling campaigns appropriately based on the risk characteristics of the Mortgage, each Borrower's level of Delinquency, previous payment habits and the minimum contact requirements set forth in Section 64.5.

Attempts to contact a delinquent Borrower must continue throughout the foreclosure process for a judicial foreclosure sale, up to 60 days prior to a foreclosure sale date, and for a non-judicial foreclosure sale, up to 30 days prior to a foreclosure sale date, unless:

- The Servicer established quality right party contact with the Borrower and determined the Borrower does not intend to pursue an alternative to foreclosure; or
- The Servicer previously evaluated the Borrower for all alternatives to foreclosure and determined foreclosure is the appropriate course of action

*Call center performance standards*

We have updated Section 65.8 to require that Servicers maintaining call centers meet the following minimum call center and other contact performance standards:

- Average speed to answer a telephone call of 60 seconds or less
- 5% or less telephone call Abandon Rate
- 1% or less telephone call Blockage Rate
- Average time for a live operator to respond to e-mails of 48 hours or less after receipt (automated responses not included)
- Live operator chat response times of five minutes or less between chats

Servicers that maintain a call center must maintain data related to the performance standards described above, and must make the data available to Freddie Mac upon request.

*Breach letter requirements and late payment notice*

We currently require Servicers to send a breach letter (also referred to as the "notice of acceleration" or "demand letter") to a Borrower no later than the 60th day of Delinquency if the Mortgage does not have satisfactory payment arrangements. With this Bulletin, we are revising the Guide to require that if State law requires the breach letter to be sent prior to the 60th day of Delinquency in order to be able to refer the Mortgage to foreclosure by the 120th day of Delinquency, the Servicer must send the breach letter by the earlier date.

If the Servicer determines the property is vacant or abandoned pursuant to Section 65.35, *What is an Abandoned Property?*, the Servicer must:

- Issue a breach letter within 10 days of the determination, provided the Mortgage is more than 30 days delinquent and, in any case, no later than the 60th day of Delinquency; and
- Refer the Mortgage to foreclosure upon expiration of the breach letter, unless the Servicer establishes quality right party contact with the Borrower to resolve the Delinquency. Even if quality right party contact is established, the Mortgage must be referred to foreclosure no later than the 120th day of Delinquency unless one of the exceptions to postpone foreclosure referral applies as described in Section 66.9.1, *When to Initiate Foreclosure on a First-Lien or a Second Mortgage/Home Improvement Loan (HIL)*.

We have revised the time frame during which the late notices/payment reminders must be sent to the Borrower from between the 11th and 13th day of Delinquency to no later than the 17th day of Delinquency.

Servicers must review the requirements of Section 64.5 for complete Borrower contact requirements and minimum collection efforts.

**Solicitation**

We have revised our solicitation requirements to require Servicers to solicit every Borrower who is 31 days or more delinquent for an alternative to foreclosure. Servicers must send a solicitation letter to Borrowers between the **31st and 35th day of Delinquency**, and again between the **61st and 65th day of Delinquency**, if the Servicer has not achieved quality right party contact and determined that the Borrower does not intend to pursue an alternative to foreclosure or the Borrower did not respond to the initial solicitation. The Servicer must provide in its solicitation letter the specific date by which the Borrower must respond with required information and documentation ("Borrower Response Package"), which must be 30 days from the date the solicitation letter was sent. In the event the 30th day falls on a non-Business Day, the Servicer may specify the following Business Day as the date by which the Borrower must respond.

Additionally, once a Mortgage has been referred to foreclosure, Servicers must instruct the foreclosure attorney/trustee to send a post-referral to foreclosure solicitation letter to the Borrower. This solicitation letter must be sent within **five Business Days following a foreclosure referral but no later than the 125th day of Delinquency.** The attorney/trustee may, but is not required to, include the contents of the Borrower Solicitation Package as described below under "Solicitation documents" with its post-referral to foreclosure solicitation letter to the Borrower.

Section 64.6, *Evaluation Hierarchy, Borrower Solicitation and Communication,* has been revised to include the hierarchy in which Servicers must evaluate a Borrower for all alternatives to foreclosure and now sets forth all related requirements for solicitation including the required contents of the solicitation letters.

*Solicitation documents*

To simplify the solicitation process, we are introducing new financial information, hardship and Borrower certification form, Guide Form 710, *Uniform Borrower Assistance Form*. A completed Form 710, or a Servicer customized equivalent, must be used for certain alternatives to foreclosure, including HAMP and HAFA, where such form is required. We are also providing sample solicitation templates that a Servicer may use to solicit Borrowers for all alternatives to foreclosure. Use of the new forms and solicitation requirements become effective for all new evaluations for an alternative to foreclosure conducted on or after **October 1, 2011.** Servicers should implement the new forms and solicitation requirements prior to October 1, 2011 in order to ensure that evaluations conducted on or after October 1, 2011 are in accordance with this requirement.

The new forms and solicitation templates are also available for download at:
**http://www.freddiemac.com/singlefamily/service/solicitation_docs.html.**

- **Uniform Borrower Assistance Form:** A completed Form 710 will provide the Servicer with a Borrower's financial information, including the reasons for the Borrower's financial hardship. The form also includes a request for income and hardship documentation that may be necessary to complete an evaluation of the Borrower for an alternative to foreclosure. The new Form 710 replaces Form 1126, *Borrower Financial Information*, Form 1114, *Making Home Affordable Request for Modification and Affidavit* ("RMA"), and Form 1115, *Making Home Affordable Hardship Affidavit*. Servicers may send the Borrower a customized equivalent of Form 710 provided that it requests the same financial information, hardship affidavit and attestations from the Borrower. However, if a Servicer receives Form 710 rather than its customized equivalent, the Servicer must accept Form 710. Throughout this Bulletin, any references to Form 710 are used to indicate both Form 710 and a Servicer's customized equivalent of Form 710.

- **HAMP Government Monitoring Data Form:** When soliciting Borrowers for an alternative to foreclosure in accordance with Section 64.6, Servicers must include new Form 710A, *HAMP Government Monitoring Data Form*, in the Borrower Solicitation Package for only those Borrowers who the Servicer determines are HAMP-eligible (e.g., loan originated prior to January 1, 2009, owner-occupied, etc.). The Borrower is not required to provide data requested on Form 710A. Servicers must accept and process Form 710 even if the Borrower did not furnish or fully complete Form 710A. Refer to Sections C65.2, *HAMP Documentation*, and C65.13(b) for additional requirements related to Government Monitoring Data. Refer to Section C65.4, *Eligibility*, for HAMP Borrower eligibility requirements.

- **Solicitation templates – Pre-referral to foreclosure:** New solicitation templates, Guide Exhibit 1131, *Borrower Solicitation Letter – 31 Days Delinquent*, and Exhibit 1161, *Borrower Solicitation Letter – 61 Days Delinquent*, represent the information that must be sent to Borrowers who are 31 days or more delinquent and 61 days or more delinquent to inform the Borrowers of all alternatives to foreclosure and the required documentation that must be submitted to a Servicer in order to be evaluated for an alternative to foreclosure. The new solicitation templates replace existing HAMP solicitation documents (Form 1120, *HAMP Proactive Solicitation Letter*, and Form 1121, *Documentation Request Letter*). Use of the solicitation templates is optional; however, they illustrate the level of specificity that is deemed to be in compliance with the requirements of Section 64.6.

  The contents of Exhibits 1131 and 1161 include:

  - ❑ A cover letter that describes the contents of the Borrower Solicitation Package
  - ❑ A homeowner checklist that explains the steps a Borrower must follow to request consideration for an alternative to foreclosure and provides guidance on completing the documents that need to be returned to the Servicer

- ❏ Information on avoiding foreclosure to help Borrowers understand the options they may have to either stay in or leave their home, and avoid foreclosure
- ❏ Frequently asked questions regarding the Borrower Solicitation Package and evaluation process
- ❏ Foreclosure scam notice that includes tips to avoid and how to report scams

The Borrower Solicitation Package consists of the following documents:

- ❏ Exhibit 1131, *Borrower Solicitation Letter – 31 Days Delinquent* – Sent to Borrowers between the 31st and 35th day of Delinquency; or
- ❏ Exhibit 1161, *Borrower Solicitation Letter – 61 Days Delinquent* – Sent to Borrowers between the 61st and 65th day of Delinquency;

And

- ❏ Uniform Borrower Assistance Form (Form 710 (6/11)); and
- ❏ Internal Revenue Service (IRS) Form 4506T-EZ, *Short Form Request for Individual Tax Return Transcript*. Servicers may obtain IRS Form 4506T-EZ directly from the IRS web site at **http://www.irs.gov**

- ■ **Solicitation template – Post-referral to foreclosure:** New Exhibit 94, *Post-Referral to Foreclosure Solicitation Letter*, represents the model post-referral to foreclosure solicitation letter that must be sent to Borrowers by the foreclosure attorney/trustee within five Business Days of a foreclosure referral but no later than the 125th day of Delinquency. The attorney/trustee may include Form 710, IRS Form 4506T-EZ and the following contents of Exhibit 1131, provided it is amended, as necessary, to ensure accuracy:
  - ❏ The homeowner checklist
  - ❏ Information on avoiding foreclosure
  - ❏ Frequently asked questions
  - ❏ Foreclosure scam notice that includes tips to avoid and how to report scams

With the exception of IRS Form 4506T-EZ and IRS Form 4506-T, *Request for Transcript of Tax Return*, electronic transmission and completion of the Borrower Response Package is permitted in accordance with the requirements of Section 50.3.1, *Acknowledgement and Consent to Electronic Transactions*, and Section 64.6(e). However, if permitted by and subject to IRS requirements, electronic submission of the IRS Form 4506T-EZ or IRS Form 4506-T is permitted as if it is a loss mitigation document in accordance with the requirements of Section 50.3.1 and Section 64.6(e). (IRS Form 4506T-EZ or IRS Form 4506-T may only be considered a loss mitigation document for purposes of Section 50.3.1 and Section 64.6(e) if either of those forms is received from the Borrower in a manner that permits the Servicer to submit it to the IRS in strict compliance with the IRS instructions and any other applicable IRS requirements.)

*Use of the Freddie Mac and Making Home Affordable logos*

Servicers must not use the Freddie Mac logo or the Making Home Affordable logo on the new solicitation documents described above. Additionally, **effective October 1, 2011,** Servicers must no longer add the Freddie Mac logo or the Making Home Affordable logo to envelopes, letters or packages, including the following documents, unless such logos are already included in the document as provided by Freddie Mac:

- ■ HAMP Counseling Referral Letter (Form 1119)
- ■ HAMP Agreement Cover Letter (Form 1118)
- ■ HAFA Short Sale Agreement (Form 1135)
- ■ HAFA Request for Approval of Short Sale (Form 1136)
- ■ HAFA Approval of Short Sale (Form 1137)
- ■ HAFA Disapproval of Short Sale (Form 1138)
- ■ HAFA Deed-in-Lieu Agreement (Form 1139)

**Borrower Response Package incentives and compensatory fees**

Freddie Mac will measure a Servicer's efforts to obtain complete Borrower Response Packages for Borrowers who are reported as 60 days delinquent, as detailed in Section 64.6. If the Servicer is conducting the HAMP imminent default evaluation pursuant to Section C65.5.2, *Determining Imminent Default*, a complete Borrower Response Package includes any additional hardship documentation that may be required as part of that evaluation.

*Incentives and compensatory fees*

The following describes the details of the measurement for the complete Borrower Response Package and Delinquency improvement performance standard.

| Point | Measurement |
|---|---|
| Delinquent Borrower Population | The number of Borrowers who become 60 days delinquent ("Delinquent Borrower Population") at the beginning of a month ("Start Date")<br><br>*Excludes Borrowers in bankruptcy (including a bankruptcy filed after the Start Date)* |
| Collection period | Six months from Start Date |
| Borrower Response Population | The number of Borrowers in the Delinquent Borrower Population who have delivered complete Borrower Response Packages by, or who are current or less than 60 days delinquent at, the end of the collection period ("Borrower Response Population")<br><br>*Excludes delinquent Borrowers in bankruptcy (including a bankruptcy filed after the Start Date)* |
| Performance Measurement | Borrower Response Population divided by the Delinquent Borrower Population ("Performance Measurement") |
| Minimum benchmark | The Performance Measurement is 50% |
| Incentive benchmark | The Performance Measurement is greater than or equal to 60% |

Servicers with a Performance Measurement that meets the incentive benchmark will receive an incentive in the amount of $500 for each complete Borrower Response Package received from a Borrower in the Delinquent Borrower Population prior to or during the six-month collection period.

Alternatively, Servicers that fail to meet the 50% minimum benchmark will be assessed a $500 fee for the number of additional complete Borrower Response Packages that the Servicer would have needed to collect from Borrowers in the Delinquent Borrower Population in order to meet the minimum benchmark.

A compensatory fee will not be assessed nor will an incentive be paid if the Servicer's Performance Measurement achieves the minimum benchmark but does not achieve the incentive benchmark.

*Reporting*

A Servicer must notify Freddie Mac via an Electronic Default Reporting (EDR) transmission within the first three Business Days of the month following the month that it received a complete Borrower Response Package from a Borrower.

**Effective October 1, 2011,** Servicers must report default action code H5 to report receipt of a complete Borrower Response Package for each Mortgage that a complete Borrower Response Package was received in the month following the month that the Borrower Response Package was received. Default action code H5 will no longer be used to report a positive solicitation response for HAMP-eligible Mortgages, and Servicers must no longer use the H5 code for this purpose.

Incentive payments or compensatory fees assessed for this Performance Measurement will be reflected in a Servicer's monthly Servicer Non-Performing Loans Invoice beginning in April 2012.

Section 65.8 has been updated to reflect this new performance standard.

### Alternative to foreclosure pull-through measurement

Servicers will be measured on their ability to successfully transition newly 60-day delinquent Borrowers into an alternative to foreclosure in a given quarter. At a minimum, Servicers must achieve at least a 60% alternative to foreclosure pull-through rate, measured as follows:

*Alternatives to foreclosure in the current quarter divided by the prior quarter's new 60-day delinquent Borrower inflows*

Reinstatements, forbearance plans, repayment plans, Trial Period Plans, payoffs, modifications, short payoffs and deeds-in-lieu of foreclosure are included in this performance standard. Loans in bankruptcy are excluded from this measurement.

Section 65.8 has been updated to reflect this new performance standard.

### DELINQUENCY MANAGEMENT

### Borrower communication and evaluation process

The new solicitation process requires that the Borrower submit to the Servicer all required documentation needed to conduct an evaluation of the Borrower for all alternatives to foreclosure offered in the Guide. A Servicer must review the Borrower for all alternatives to foreclosure, including HAMP, in accordance with the evaluation hierarchy set forth in Section 64.6(a). If the Servicer determines the Borrower is not eligible for an alternative to foreclosure, the Servicer must send the Borrower the appropriate Borrower Evaluation Notice (i.e., Non-Approval, Capacity to Pay Your Mortgage Letter or Non-Approval, Proceed to, or Continue with, Foreclosure) in accordance with the requirements of Section 64.6(d).

Servicers are currently required to provide specific communications during specific time frames to HAMP-eligible Borrowers relaying certain actions during the evaluation process, such as a non-approval notice or an incomplete information notice. We are revising our requirements to state that Servicers must provide the following notices during specified time frames to all Borrowers being evaluated for an alternative to foreclosure, whether or not the Borrowers are HAMP-eligible. Section 64.6(d) outlines the required contents for each notice described below:

- **Acknowledgement of a Borrower Response Package**

  Servicers must acknowledge to the Borrower receipt of the Borrower Response Package within **three Business Days** of receipt from the Borrower, regardless of whether the package is complete or incomplete. This acknowledgement of receipt may be completed verbally. Section 64.6(d) sets forth the requirements for the information that must be conveyed to the Borrower when acknowledging receipt of the Borrower Response Package.

- **Incomplete information notice**

  The Servicer must send an incomplete information notice to the Borrower no later than **five Business Days** from receipt of an incomplete package. The Servicer may send the incomplete information notice to the Borrower together with the acknowledgement of receipt of the Borrower Response Package, if feasible.

◼ **Borrower Evaluation Notice**

Within **five days of an evaluation decision but no later than 30 days** following receipt of the complete Borrower Response Package, the Servicer must provide the appropriate Borrower Evaluation Notice communicating its decision to the Borrower. With respect to those evaluation notices which are offers for alternatives to foreclosure, Servicers must include the date by which the Borrower must accept or indicate intent to accept such offers, which must be **14 days from the date of the applicable evaluation notice.**

The HAMP Trial Period Plan Borrower Evaluation Notice will replace HAMP Form 1117, *HAMP Trial Period Plan Notice*, and also the Borrower Notice and related requirements in Chapter C65, *Home Affordable Modification Program*, are being eliminated. Unless required by applicable federal, State or local law, Servicers are not required to include in the HAMP Trial Period Plan Borrower Evaluation Notice a primary reason or reasons for not offering the Borrower a specific alternative to foreclosure.

Borrowers who are less than 60 days delinquent may be required to provide additional hardship documentation in order for the Servicer to complete the imminent default evaluation as required under HAMP. In such cases, a complete Borrower Response Package is defined to include the imminent default hardship documentation for purposes of meeting the evaluation and Servicer response time frames set forth in Section 64.6. The Servicer's obligation to respond to such Borrowers within five days of an evaluation decision, but no later than 30 days from the receipt of a complete Borrower Response Package, applies once the Servicer receives the additional imminent default hardship documentation necessary to complete the evaluation. However, Servicers are reminded that for those Borrowers who are not required to provide additional hardship documentation, the Servicer's evaluation and response time frames set forth in Section 64.6 remain unchanged.

Most of the possible outcomes of a Servicer's decision and response are described in Section 64.6(c).

Model letters describing each Borrower Evaluation Notice are included in new Exhibit 93, *Evaluation Model Clauses*. The Borrower Evaluation Notices are also available for download at: **http://www.freddiemac.com/singlefamily/service/solicitation_docs.html**.

Use of the model letters is optional; however, they illustrate the level of specificity that is deemed to be in compliance with the requirements of Section 64.6. The possible outcomes of a Servicer's decision and response for each Borrower Evaluation Notice are described in Section 64.6(c). The model letters may be altered at the Servicer's discretion as it deems necessary to meet the requirements of Chapters A65, *Reinstatements and Relief Options*, B65, C65, and D65, *Home Affordable Foreclosure Alternatives*, and to comply with disclosure and other requirements under applicable federal, State or local law.

Section 64.6 sets forth all requirements related to the Borrower communication and evaluation process including the required contents of the notice acknowledging receipt of a complete Borrower Response Package and the incomplete information notice. Servicers must also refer to Chapters A65, B65, C65, and D65, for additional information on sending the Borrower Evaluation Notice specific to each reinstatement, relief or workout option.

**Servicer evaluation obligations during the foreclosure process**

We have revised requirements and placed restrictions on the initiation of foreclosure in certain circumstances.

A Mortgage must not be referred to foreclosure under the following conditions:

◼ A complete Borrower Response Package is received and the Servicer is evaluating the package. (Note: If a complete Borrower Response Package is submitted after the Mortgage is referred to foreclosure, the foreclosure process may continue while an evaluation is being performed for an alternative to foreclosure.)

◼ The Servicer has extended an offer for an alternative to foreclosure and the 14-day period for the Borrower's response has not expired

- The Borrower is approved for mortgage assistance under the Hardest Hit Fund initiative as set forth in Bulletin 2010-25
- The Borrower has accepted an offer for an alternative to foreclosure and is performing in accordance with its terms

*Reduced time period to provide a Borrower Evaluation Notice*

Under certain circumstances, Servicers will be required to evaluate the Borrower for an alternative to foreclosure and provide the Borrower with a Borrower Evaluation Notice in less than the 30-day time period described in the "Borrower communication and evaluation process" section above. Specifically, if the Servicer receives a complete Borrower Response Package close to the foreclosure sale date (i.e., less than 37 days prior to the sale date), the Servicer will not have 30 days to conduct an evaluation and communicate a decision prior to the deadline for providing a foreclosure certification to the attorney/trustee. We have updated Section 64.6 to provide specific requirements related to accelerated time lines for these situations.

Servicers should review the following Sections for complete requirements related to a Servicer's evaluation obligations during the foreclosure process:

- 64.6, *Evaluation Hierarchy, Borrower Solicitation and Communication*
- 66.9.1, *When to Initiate Foreclosure on a First-Lien or a Second Mortgage/Home Improvement Loan (HIL)*
- 66.32.1, *Foreclosure Sale Postponements*
- 66.41, *Complete Borrower Response Packages Received After the Foreclosure Sale Has Been Scheduled*

**Pre-foreclosure referral review**

Following expiration of the breach letter and the second Borrower Solicitation Package Borrower response time frame without affirmative Borrower response, but in no event less than seven days prior to referral to foreclosure, the Servicer must review the Mortgage account to verify that:

- It made every attempt to achieve quality right party contact in accordance with Section 64.4
- There is no approved payment arrangement
- There is no pending alternative to foreclosure offer, or if an offer has been made, that the Borrower response period has expired

In the event that the review results in discovery of an approved payment arrangement or pending alternative to foreclosure, the Servicer must not refer the Mortgage to foreclosure.

This requirement is included in new Section 66.9, *Pre-referral Account Review*.

**Pre-foreclosure sale reviews**

At least 30 days prior to the scheduled foreclosure/trustee sale, the Servicer must review the Mortgage history to verify compliance with all required Borrower outreach and solicitation requirements specified in Chapter 64, *Delinquencies*, and that there is not an approved payment arrangement or a pending alternative to foreclosure offer for which the Borrower response period has not expired.

This requirement is included in Section 66.41.1, *Reviews and Certifications Prior to Foreclosure Sale*.

**Certification to foreclosure attorney/trustee**

At least seven, but no more than 15 days prior to a foreclosure sale, the Servicer must once again review the Mortgage account. If, based on the account review, the Servicer determines that all Borrower outreach and solicitation requirements have been achieved and that there is no approved payment arrangement or pending alternative to foreclosure offer, or if an offer has been made, that the Borrower response period has expired, the Servicer must send written certification to the attorney/trustee **at least seven, but no more than 15 days prior to the foreclosure sale date** indicating the attorney/trustee must continue with

the foreclosure sale. However, the Servicer must not provide such certification if it exercised its discretion to postpone the foreclosure sale to facilitate resolution of an escalated case and such escalated case is not yet resolved. (Refer to Section 51.5.1, *Servicer Response to Complaints – Escalated Cases*.)

The foreclosure certification requirements are included in Section 66.41.1.

**Property Inspections**

We have revised our property inspection requirements to indicate that the initial property inspection must be ordered by the 45th day of Delinquency and completed by the 60th day of Delinquency, if the Servicer has not received a payment in the last 30 days or quality right party contact has not been achieved. The Servicer must continue to obtain a property inspection every 30 days if the Mortgage remains 45 days or more delinquent until:

- The Servicer achieves quality right party contact and the Borrower and Servicer agree to a prospective resolution to the Delinquency. A prospective resolution to the Delinquency can be a verbal commitment from the Borrower to resolve the Delinquency via a reinstatement, relief or workout option; or
- The Servicer receives the Property Condition Certificate (PCC) from Freddie Mac once the property reverts to Real Estate Owned (REO) after the foreclosure sale

If the property is found to be vacant or tenant-occupied, property inspections must continue as long as the Mortgage remains 45 or more days delinquent regardless of whether the Servicer achieves quality right party contact or a prospective resolution to the Delinquency.

An inspection is not required for Mortgages in bankruptcy performing in accordance with the terms of a bankruptcy plan.

Section 65.33, *When to Order a Property Inspection*, has been updated to reflect these changes.

## INCOME, HARDSHIP AND OTHER DOCUMENTATION REQUIREMENTS

### Income and hardship documentation

We have revised our income documentation requirements for all modifications offered under the Guide. Servicers must now obtain the same income documentation requirements when evaluating Borrowers for a HAMP modification under Chapter C65 or for a non-HAMP modification under Chapter B65. To streamline the evaluation process for an alternative to foreclosure, we are also implementing the revised income documentation requirements for all other workout types under the Guide and certain relief options. Refer to Section 65.18, *Borrower Income Documentation*, for all requirements related to the new income documentation. In addition, refer to Chapters A65, B65, C65 and D65 for income documentation requirements for the various relief and workout options.

We have also revised our requirements for establishing a Borrower's hardship for all Chapter B65 and C65 modifications under the Guide (including HAMP), as well as other workout options and certain relief options. The new hardship requirements are replacing our existing involuntary inability to pay requirements. To be eligible for a modification, the hardship must currently be causing or be expected to cause a long-term or permanent decrease in the Borrower's income or increase in the Borrower's expenses. Servicers should refer to Section 65.17, *Verifying a Borrower's Hardship*, for a description of the eligible hardships and the associated documentation requirements that the Borrower must provide to document the hardship.

We are also reminding Servicers that for Borrowers who must be determined to be in imminent default prior to being evaluated for HAMP, the Imminent Default Hardship documentation requirements as set forth in Section C65.5.2 have not changed.

**Borrower Response Package**

Servicers must obtain a complete Borrower Response Package from the Borrower to perform an evaluation of the Borrower for certain workout and relief options. A complete Borrower Response Package includes the following:

- Completed and signed Uniform Borrower Assistance Form
- Income documentation in accordance with Section 65.18
- Hardship documentation in accordance with Section 65.17
- Completed and signed IRS Form 4506T-EZ. Note: Servicers must obtain IRS Form 4506-T if the Borrower (i) is self-employed, and/or (ii) files federal income tax returns based on a fiscal calendar year (i.e., a tax year beginning in one calendar year and ending in the following year)
- If applicable, Imminent Default Hardship documentation in accordance with Section C65.5.2 for Borrowers who are less than 60 days delinquent, only when such documentation is necessary to complete the imminent default evaluation as required under HAMP
- Until we introduce our new Standard Modification option, for evaluations for a modification conducted under Chapter B65, Servicers will be required to obtain from Borrowers the following additional information pertaining to household and living expenses that is not included on the new Form 710 for Chapter B65 modifications.

  - ❑ Child care
  - ❑ Health insurance premiums (if not withheld from pay)
  - ❑ Medical (co-pays and monthly prescriptions)
  - ❑ Food
  - ❑ Auto expenses/auto insurance
  - ❑ Water/sewer/utilities/telephone
  - ❑ Life insurance premiums (not withheld from pay)

The new documentation requirements become effective **for all new evaluations for an alternative to foreclosure conducted on or after October 1, 2011.** Servicers may, and are strongly encouraged to implement these new requirements into their processes as soon possible.

Sections 64.6, 65.17 and 65.18 and Chapters A65, B65, C65 and D65 have been updated to reflect these changes.

## STATE FORECLOSURE TIME LINES AND COMPENSATORY FEES

We have revised our State foreclosure time lines in Exhibit 83, *Freddie Mac State Foreclosure Time Lines.* The new State foreclosure time lines are in effect for all Mortgages referred to foreclosure on or after **October 1, 2011.**

**Allowable delays in completing a foreclosure**

The State foreclosure time line will be extended for a Mortgage under the following circumstances:

- A Borrower files for bankruptcy protection
- Delays due to probate, military indulgence under the Servicemembers Civil Relief Act of 2003 or similar State law providing relief to active duty military service members, and contested foreclosures
- Delays incurred during the period the Borrower is evaluated for HAMP eligibility but is determined to be ineligible for HAMP
- Delays where the Borrower entered a HAMP Trial Period Plan but failed to comply with the terms of the plan

Refer to Exhibit 83A, *Determining State Foreclosure Time Line Compensatory Fees,* for the manner in which Freddie Mac calculates the additional time granted for each of the allowable delays.

**Compensatory fees**

If the Servicer exceeds the State foreclosure time line (DDLPI to foreclosure sale) on a Mortgage plus any allowable delays, compensatory fees will be assessed in addition to any actual damages caused by the Servicer's failure to comply with the requirements of the Guide.

For Mortgages referred to foreclosure on or after **October 1, 2011**, there is a new calculation for State foreclosure time line compensatory fees. With the new calculation, foreclosure sales completed by Servicers that are less than the State foreclosure time line standard will no longer offset foreclosure sales exceeding the State foreclosure time line (i.e., netting is no longer part of the compensatory fee calculation). In addition, foreclosure sales conducted by designated counsel are now subject to the compensatory fee calculation.

Compensatory fees will not be assessed if a Servicer's aggregate amount of monthly compensatory fees is $1,000 or less. Details of the new calculation for State foreclosure time line compensatory fees are outlined in Exhibit 83A.

For Mortgages referred to foreclosure on or after **October 1, 2011**, State foreclosure time line compensatory fees will be **billed monthly** on the Servicer Non-Performing Loans Invoice, rather than annually. The first monthly bill, to be distributed in early January of 2012, will capture State foreclosure time line compensatory fees related to Mortgages referred to foreclosure on or after October 1, 2011, resulting in foreclosure sales in October of 2011.

Subsequent Servicer Non-Performing Loans Invoices will only include compensatory fees for one month and will be for foreclosure sales conducted two months prior, provided the Mortgage was referred to foreclosure on or after October 1, 2011.

Servicers may submit data to correct past reporting discrepancies; however, no adjustment to the assessed compensatory fee(s) will be made for corrections related to inaccurate or incomplete reporting

Freddie Mac's existing compensatory fee calculation and annual assessment will continue to apply to all Mortgages referred to foreclosure prior to October 1, 2011.

Sections 66.30, *State Foreclosure Time Lines*, 66.32, *Allowable Delays in Completing a Foreclosure*, and 66.33, *State Foreclosure Time Line Performance Assessment*, and Exhibits 83 and 83A have been updated to reflect these changes.

## ESCALATED CASES

We have introduced new requirements directing Servicers to have processes and procedures in place for review and response to Borrower disputes and complaints about the Servicer and/or its third-party providers that rise to the level of an escalated case. Section 51.5.1 includes new requirements related to:

- When and how Servicers must respond to and resolve Borrower complaints or disputes
- Handling Borrower complaints or disputes on Mortgages that are referred to foreclosure
- Reporting requirements to Freddie Mac

Servicers must review Guide Section 51.5.1 for all requirements specific to the Servicer's management of escalated cases.

## HAWAII LEGISLATIVE CHANGES AFFECTING NON-JUDICIAL FORECLOSURES

Effective immediately, due to recent changes in Hawaii State law affecting non-judicial foreclosures, Servicers must:

- Commence all new Freddie Mac foreclosures in Hawaii as judicial foreclosures
- Convert all non-judicial foreclosures to judicial foreclosures in Hawaii that have not proceeded to foreclosure sale

In certain circumstances, Freddie Mac may be required to re-foreclose certain recent REO acquisitions that resulted from non-judicial foreclosures. Upon being notified, Servicers must rescind the non-judicial foreclosure and recommence the action as a judicial foreclosure.

In addition, due to the recent change in the foreclosure process, we are currently reviewing the maximum allowable attorney fee for Hawaii and will communicate any revision to such amount, if applicable, in a future Bulletin.

## TRAINING

A suite of training materials and reference documents will be available to support the Servicing Alignment Initiative topics announced in this Bulletin. Please register for our *Bulletin Overview* webinar for a comprehensive outline of this announcement. Additional Servicing Alignment Initiative training topics are also available for registration. To register for training, please visit **The Learning Center** at **www.freddiemac.com**. You can also review all of our current training offerings by accessing the **Servicing Alignment Initiative** section of **The Learning Center**.

## REVISIONS TO THE GUIDE

The revisions included in this Bulletin impact the following:

- Chapters 50, 51, 53, 64, 65, A65, B65, C65, D65, 66, 67, 78 and 83
- Forms 710 and 710A
- Exhibits 57A, 82, 83, 83A, 93, 94, 1131 and 1161
- Glossary
- Directory 5

## CONCLUSION

If you have any questions about the changes announced in this Bulletin, please contact your Freddie Mac representative or call (800) FREDDIE and select Servicing.

Sincerely,

*Tracy Hagen Mooney*

Tracy Hagen Mooney
Senior Vice President
Single-Family Servicing and REO

# Servicing Alignment Initiative FAQs

February 28, 2012

The following are answers to frequently asked questions about Freddie Mac's requirements for the Servicing Alignment Initiative. They provide additional guidance on our revised default management requirements under this initiative, but are not a replacement or substitute for information found in the *Single-Family Seller/Servicer Guide* (Guide) or the terms of your Master Agreement and/or Master Commitment.

For FAQs on the new modification solution, refer to the Standard Modification FAQs web page.

For complete requirements, review the associated Guide Bulletins and Chapters.

**Servicing Alignment Initiative**

1. What is the Servicing Alignment Initiative and why is FHFA directing it?
2. What servicing areas are being aligned?
3. What are the anticipated effects of the Servicing Alignment on homeowners and Servicers?
4. How does the Servicing Alignment Initiative affect Servicers responsibilities for foreclosures?
5. Can "dual-tracking" occur under the Servicing Alignment Initiative (in which foreclosure proceedings and loan modification activities are pursued concurrently)?
6. How does the alignment affect third-party counselors involved in loss mitigation?
7. How does the Servicing Alignment Initiative tie into the Servicer Compensation Initiative?
8. Are your requirements exactly the same as Fannie Mae's?

**Borrower Contact**

9. How have the requirements for contacting delinquent borrowers changed?
10. Do I need to satisfy each one of the defined quality right party contact (QRPC) attributes to fulfill the QRPC requirements?
11. Are the QRPC requirements satisfied if I meet all of the QRPC attributes, but the borrower declines all offers for a foreclosure prevention alternative?
12. Do payment receipts constitute a quality right party contact?
13. Does it constitute as QRPC if a borrower accepts a phone call, but refuses to discuss their intent, reason for delinquency, or listen to the foreclosure avoidance options? – New
14. Is the three-day calling rule for delinquent loans required for all loans?
15. Do the "days" in the requirements to conduct calls every third day until quality right party contact is achieved include weekends and holidays?
16. Am I required to call a borrower who historically pays on or around the 16th day of delinquency every third day? – New
17. If the 17th day of delinquency falls on a non-business day, may I send the late notice on the next business day? – New
18. Does Freddie Mac *require* Servicers to implement single point-of-contact models?
19. Can the solicitation letter and financial documentation be sent separately to a delinquent borrower?
20. What are Freddie Mac's requirements for contacting and working with a borrower who has filed for bankruptcy?
21. May I send borrower communications through regular mail, or does it have to be certified mail? What about electronically? – Updated
22. Am I required to establish a toll-free telephone number? – New
23. For the purpose of applying call center performance standards, how do you define a call center?
24. I cannot segregate Freddie Mac mortgage-related calls from Fannie Mae mortgage-related calls; therefore, I am not able to accurately report call blockage and abandonment rates. How do I ensure that I'm in compliance with this requirement? – New
25. The revised solicitation requirements require Servicers to solicit any borrower who is 31 days or more delinquent for an alternative to foreclosure between the 31st and 35th day of delinquency, and again between the 61st and 65th day of delinquency if right party contact has not been achieved. Does this mean that the Servicer has to call every three days, but only solicit for a workout between the 31st and 35th day of delinquency and again between the 61st and 65th day of delinquency?
26. If applicable law has different or more liberal requirements, should a Servicer follow applicable law?
27. I have a borrower who stated they do not wish to be contacted. May I still contact them to see if they changed their mind and would like to discuss foreclosure avoidance options? – New
28. Do I need to document my efforts to review borrowers for alternatives to foreclosure based on the evaluation hierarchy defined in the Guide?
29. When do escalated case requirements apply? – New
30. When providing the monthly report for escalated case activity, do I have to provide information for all eight of the defined categories in Guide Section 51.5.1?
31. What do I do if I receive a repeat complaint from a borrower and the initial complaint was already evaluated and responded to through our escalated case processes?
32. Will the new solicitation and delinquency management requirements under the Servicing Alignment Initiative retroactively apply to borrowers in the pipeline?
33. Are "door-knocking" campaigns required?
34. I service mortgages in areas that have state statutes to refer mortgages to foreclosure by the 120th day of delinquency. How should I handle this?
35. Can I use an auto dialer for my collection call campaigns?

**Home Affordable Modification Program (HAMP)**

36. If I am evaluating a borrower for imminent default for a HAMP modification, is there any additional documentation required?

37. How do the new solicitation requirements affect HAMP solicitation, documentation, evaluation time line and notice, and referral to foreclosure?
38. With the new solicitation document requirements, can I still use the current HAMP solicitation documents for borrowers whom I believe are eligible for HAMP?
39. If I am required to use default action code H5 to report the receipt of complete Borrower Response Packages, what EDR code should I use for reporting a positive solicitation response for HAMP?
40. May a borrower pay more than their contractual HAMP trial period payment without restarting the trial period? -- New

### Borrower Solicitation and Response Packages

41. May I use our proprietary solicitation package in lieu of the Borrower Solicitation Package?
42. Do I have to conduct follow-up calls to the borrower the day after I send the Borrower Solicitation Package?
43. Does a borrower need to respond to a solicitation within 30 calendar days or 30 business days?
44. If a borrower calls but does not have all the information they are required to provide, how does it affect the process and our progress?
45. If I am working with a borrower on an incomplete Borrower Response Package based on the first solicitation required between days 31 and 35 of delinquency, am I required to send the second Borrower Solicitation Package required between days 61 and 65 of delinquency?
46. Is a complete Borrower Response Package required for short-term home retention options?
47. Am I still required to evaluate a borrower if the borrower returns a complete Borrower Response Package after the 30-day response deadline?
48. Do I have to send the Borrower Solicitation package required between day 61 and 65 of delinquency if I have already evaluated the borrower's complete Borrower Response Package from the first solicitation, and the borrower did not qualify for an alternative to foreclosure?
49. Am I required to complete a short sale or deed-in-lieu evaluation within 30 days? -- New
50. Is there a limit to the number of times that a borrower can be re-evaluated for an alternative to foreclosure if the borrower continues to provide new or updated information?
51. What happens if I do not receive timely approval for non-delegated alternatives to foreclosure? -- New
52. If I must complete a borrower evaluation before I order the BPO, what happens if day 30 approaches and I did not receive the BPO? -- New
53. How old can a borrower's income documentation be? -- New
54. Am I required to obtain a borrower's bank statements? -- New
55. Do I report default action codes H4 and H5 for borrowers in imminent default? -- New

### Post-Referral to Foreclosure Solicitation Letter

56. Is the attorney/trustee still required to send the post-referral to foreclosure letter within five days after referral to foreclosure if the borrower files bankruptcy or a contested matter arises after the foreclosure referral, but before the solicitation is sent?
57. Is the post-referral to foreclosure solicitation letter required to be sent again if a foreclosure is suspended or postponed?
58. As the Servicer, am I responsible for making sure that the attorney/trustee sends the post-referral to foreclosure solicitation letter?
59. If I need to conduct a review before foreclosure initiation and another prior to foreclosure sale, and then also direct the attorney/trustee to send a foreclosure prevention solicitation letter after referral, isn't it too late in the foreclosure process for the attorney/trustee to send the foreclosure prevention solicitation letter?

### Foreclosure Time Lines

60. Will Freddie Mac set foreclosure time lines by county or MSA to account for areas within a state that take longer to process a foreclosure?
61. Will foreclosure time lines for borrowers in Chapter 7 or Chapter 13 bankruptcy change as a result of new foreclosure time lines announced today?
62. Will I get a credit if I exceed Freddie Mac's foreclosure time line requirements for a delay caused by obtaining a bankruptcy lift of stay or resolving other contested matters?
63. Will I get a credit if I exceed Freddie Mac's foreclosure time line requirements for a delay caused by a mandatory borrower mediation hearing?
64. Do Freddie Mac's requirements supersede any state requirements for foreclosure prevention actions?
65. How are deeds-in-lieu accounted for in the foreclosure time line requirements?
66. If I'm unable to refer a loan to foreclosure by the 120th day of delinquency because the borrower has submitted a Borrower Response Package that I'm considering for a workout, or because the response time for a foreclosure prevention offer has not expired, will the state foreclosure time lines be extended by a corresponding amount of time so I have longer to evaluate the borrower for a workout and/or so I can extend the offer period for a foreclosure alternative?
67. Should I proceed with a foreclosure sale if I receive a completed Borrower Solicitation Package less than 15 days from the foreclosure sale date?
68. Is there a required format for providing certification to foreclosure to the attorney/trustee?
69. Is it my responsibility as a Servicer to confirm that the attorney/trustee has received our foreclosure certification?
70. Are Freddie Mac's new foreclosure certification requirements in addition to or a replacement for the HAMP foreclosure certification requirement?

### Servicer Performance Management

71. How do the new requirements affect the Servicer Performance Profile and Servicer Success Scorecard?
72. If our call center does not meet the new benchmarks, will it reflect on our Servicer Performance Profile/Servicer Success Scorecard?

### Incentives and Compensatory Fees

73. How have incentives and compensatory fees changed?

74. How are complete Borrower Response Packages for borrowers who are 60 or more days delinquent treated if the Servicer's performance falls between the minimum 50 percent performance benchmark and the 60 percent incentive benchmark?
75. When will the incentives and compensatory fees become effective?
76. If a borrower does not make a full payment, will it affect whether I am charged a compensatory fee under the Borrower Response Package metrics?
77. If I have not reached the 50 percent performance benchmark for complete Borrower Response Packages, will compensatory fees be assessed for each delinquent mortgage for which I do not have a complete Borrower Response Package?
78. If between January and June, I receive 55 complete Borrower Response Packages from the 100 borrowers I have that are 60 or more days delinquent. Will I receive an incentive or a compensatory fee?
79. "Netting" is not allowed when calculating foreclosure time line compensatory fees. What does this mean?
80. I was assessed a Borrower Response Package compensatory fee of $500. I thought compensatory fees under $1,000 were being waived?
81. Is there an appeals process for foreclosure time line or other compensatory fees? – Updated
82. Can I dispute the compensatory fees citing the state or court-related delays as part of the monthly compensatory fees appeal process? – New
83. Can I still make data corrections under the new requirements?
84. How are foreclosure time line delays required by state legislation addressed in performance measurements and compensatory fees?
85. Are the limits on the incentives and compensatory fees in a consecutive 12-month period? – New

**Systems**

86. Is EarlyIndicator® still a viable tool to use with the new borrower contact requirements?
87. Does Electronic Default Reporting (EDR) capture all acceptable delays for servicing delinquent loans?
88. Are the limits on the incentives and compensatory fees in a consecutive 12-month period? – New
89. Will my reporting requirements through MIDANET® or the Service Loans application change?

**Other**

90. What loan types or products require Early Delinquency Counseling?

## Servicing Alignment Initiative

### 1. What is the Servicing Alignment Initiative and why is FHFA directing it?

The Servicing Alignment Initiative is an FHFA-led effort to establish consistent policies and processes for servicing delinquent loans owned or guaranteed by Freddie Mac or Fannie Mae. The alignment will help Servicers resolve delinquencies more consistently and efficiently, keep more borrowers in their homes whenever possible, and minimize losses to the GSEs and taxpayers.

### 2. What servicing areas are being aligned?

The aligned servicing standards focus on four key areas: (1) borrower contact, (2) delinquency management practices, (3) loan modifications and alternatives to foreclosure, and (4) foreclosure time lines. In addition, new monetary incentives and compensatory fees are being introduced to reinforce effective Servicer execution in key defined areas.

### 3. What are the anticipated effects of the Servicing Alignment on homeowners and Servicers?

The Servicing Alignment Initiative will help to streamline and simplify Servicer processes, with the following intended outcomes:
- Improved service to borrowers as well as greater consistency and clarity in borrower communications
- More efficient processing of loan modifications
- Consistency, fairness, and efficiency in the foreclosure process
- Increased Servicer accountability, reinforced by new incentives and compensatory fees
- The use of one set of documents from borrowers to determine modification eligibility more quickly and offer alternatives to foreclosure to homeowners who are not eligible for a modification

### 4. How does the Servicing Alignment Initiative affect Servicers' responsibilities for foreclosures?

We have adopted uniform, state-specific foreclosure time lines that reflect applicable foreclosure law requirements and current conditions in each state. Servicers remain responsible for improper actions, delays, and violations of applicable law. The state foreclosure time lines will be reviewed periodically and updated as necessary.

### 5. Can "dual-tracking" occur under the Servicing Alignment Initiative (in which foreclosure proceedings and loan modification activities are pursued concurrently)?

Under the new requirements, Servicers must engage in a single track for considering alternatives to foreclosure up to the date of foreclosure referral or the 120th day of delinquency, whichever is earlier. Also, prior to issuing a referral for foreclosure, the Servicer must perform a formal review of the case to confirm that the borrower has been considered for a foreclosure alternative consistent with the defined guidelines. Even after the foreclosure process has begun, Servicers must continue to work with homeowners on alternatives to foreclosure to ensure borrowers have additional opportunity to avoid foreclosure after the mortgage has been referred to foreclosure.

6. How does the alignment affect third-party counselors involved in loss mitigation?

Counselors should see greater transparency in the process for their clients seeking an alternative to foreclosure, as well as a standardized application process for borrowers. Freddie Mac continues to support and promote the use of housing counseling services.

7. How does the Servicing Alignment Initiative tie into the Servicer Compensation Initiative?

The Servicing Alignment Initiative immediately addresses Servicer performance in the managing of foreclosure and foreclosure prevention processes. The Servicer Compensation Initiative is considering the structure of Servicer compensation more broadly and systematically.

8. Are your requirements exactly the same as Fannie Mae's?

The GSEs have defined a common approach to loss-mitigation activities, and we are largely aligned in the defined default management areas. There are some differences between each GSE's operational implementation based on GSE-specific business needs.

## Borrower Contact

9. How have the requirements for contacting delinquent borrowers changed?

We have published requirements on standards and time lines for the following activities for contacting delinquent borrowers:
- Collection calls and call center standards
- Establishing quality right party contact
- Borrower Solicitation Packages
- Written communication notices (i.e., late notices, acknowledgment of receipt of Borrower Response Packages, incomplete information notices, evaluation notices, and breach [notice of acceleration] letters)
- Borrower Response Packages

The emphasis is on early intervention, and we require earlier and more frequent borrower contact. For example, collection calls should begin between the third and 36th day of delinquency. Detailed requirements are in Guide Bulletin 2011-11 [PDF], Guide Bulletin 2011-19 [PDF], and Guide Bulletin 2011-23 [PDF].

10. Do I need to satisfy each one of the defined quality right party contact (QRPC) attributes to fulfill the QRPC requirements?

A Servicer's objective in contacting a delinquent borrower is to establish quality right party contact. QRPC occurs when a Servicer establishes a rapport with the Borrower expressing empathy and a desire to help identify and discuss with the borrower, co-borrower or trusted advisor, such as a housing counselor, the most appropriate options for delinquency resolution. To meet the requirements you must make every attempt to achieve QRPC by:
- Determining the reason for delinquency and whether such reason is temporary or permanent in nature.
- Determining whether the borrower has vacated or plans to vacate the property.
- Determining the borrower's current perception of their financial circumstances and ability to repay the mortgage debt.
- Setting payment expectations and educating the borrower on the availability of foreclosure prevention alternatives as appropriate.
- Obtaining a commitment from the borrower to either resolve the delinquency through traditional methods (paying the total delinquency amount) or engaging in a foreclosure prevention alternative.

11. Are the QRPC requirements satisfied if I meet all of the QRPC attributes, but the borrower declines all offers for a foreclosure prevention alternative?

If you have made every attempt to achieve QRPC as defined in the Guide and the borrower declines all offers for a foreclosure prevention alternative, you have met the QRPC requirements. As always, it is important that you document your actions.

12. Do payment receipts constitute a quality right party contact?

No. Payment receipts do not constitute a quality right party contact.

13. Does it constitute as QRPC if a borrower accepts a phone call, but refuses to discuss their intent, reason for delinquency, or listen to the foreclosure avoidance options? – New

If you established rapport with the borrower, expressed empathy and a desire to help, and discussed the most appropriate options for delinquency resolution, then the Servicer has achieved QRPC. If the borrower refuses to discuss or listen to the most appropriate options to help resolve their delinquency, then QRPC has not been achieved – even if you made every attempt to engage in the five QRPC activities.

14. Is the three-day calling rule for delinquent loans required for all loans?

Servicers should use their discretion and initiate telephone contact with each delinquent borrower between days 3-36 of delinquency. Servicers may start at day three, but must start no later than day 36. Servicers should continue to focus on high-risk borrowers earlier in the collection process and must tailor calling campaigns appropriately based on the risk characteristics of the mortgage, each borrower's level of delinquency, previous payment habits, and the minimum contact requirements defined in Guide Section 64.5. Servicers may use the results of a collection and loss mitigation tool to assist in tailoring their collection and solicitation efforts.

The Servicer must continue to call at least every third day until the:

- Servicer achieves quality right party contact and determines that the borrower is not interested in an alternative to foreclosure,
- Delinquency is cured,
- Servicer achieves quality right party contact and has obtained from the borrower a promise to pay the delinquent amount by a specified date (not to exceed 30 days),
- Complete Borrower Response Package is received in accordance with Guide Section 64.6 to evaluate the borrower for an alternative to foreclosure, or
- Borrower enters into a repayment plan or forbearance agreement with the Servicer.

15. **Do the "days" in the requirements to conduct calls every third day until quality right party contact is achieved include weekends and holidays?**

Yes, weekends and holidays are included in the three-day contact requirements for establishing quality right party contact. However, you are able to call delinquent borrowers on the next business day if the day you are required to call falls on a non-business day and you are not open to conduct loss mitigation and collection activities.

In the Guide, the word "day" without the modifier "business" refers to a calendar day. A "business day" is defined as a day other than (1) a Saturday or Sunday, (2) a day on which the Federal Reserve Bank of New York is authorized or obligated by law or executive order to remain closed, or (3) a day on which the offices of Freddie Mac are closed.

16. **Am I required to call a borrower who historically pays on or around the 16th day of delinquency every third day?** – New

You must treat each delinquency individually by customizing the collection techniques to fit the borrower's circumstances. You should address higher-risk borrowers earlier in the collection cycle. In addition, all collection efforts must be based on the extent of the delinquency and your knowledge of certain factors, including the borrower's prior payment history and habits. You are not required to call all borrowers on the third day of delinquency. However, once you start calling a borrower, you should call every third day. If the third day falls on a non-business day, you must resume the next business day.

If you are using a loss mitigation tool to assist in tailoring your collection and solicitation efforts, you may elect to not send a Borrower Solicitation Package between days 31-35 of delinquency if the results of the tool indicate that the mortgage is a low risk for worsening delinquency.

17. **If the 17th day of delinquency falls on a non-business day, may I send the late notice on the next business day?** – New

Yes.

18. **Does Freddie Mac *require* Servicers to implement single point-of-contact models?**

No. The alignment strongly encourages and supports Servicers who have or will implement a single point-of-contact methodology for the purpose of achieving contact continuity throughout the delinquency process, but does not make this a specific requirement.

19. **Can the solicitation letter and financial documentation be sent separately to a delinquent borrower?**

No. The Borrower Solicitation Package, which includes the solicitation letter, financial forms, and other required documentation, must be sent during the time periods stipulated in our Guide requirements; 31-35 days delinquent and again at 61-65 days delinquent if quality right party contact has not been achieved or the borrower did not respond to the initial solicitation.

20. **What are Freddie Mac's requirements for contacting and working with a borrower who has filed for bankruptcy?**

A Servicer is not required to solicit a borrower in an active Chapter 7 or Chapter 13 bankruptcy. However, a borrower in active Chapter 7 or Chapter 13 bankruptcy, or whose mortgage has been discharged under Chapter 7 bankruptcy, must be considered for an alternative to foreclosure if the borrower, the borrower's counsel or bankruptcy trustee (with the borrower's written consent) submits a request to the Servicer. Additionally, you must comply with applicable law when contacting borrowers in bankruptcy.

21. **May I send borrower communications through regular mail, or does it have to be certified mail? What about electronically?** – Updated

You may send and receive your Borrower Response Packages through regular mail or electronically. However, a borrower cannot send IRS Form 4506-T, *Request for Transcript of Tax Return*, or IRS Form 4506T-EZ, *Short Form Request for Individual Tax Return Transcript*, to you electronically unless the IRS permits electronic transmissions of these forms. For complete requirements, refer to Guide Sections 50.3.1 and 64.6(e).

22. **Am I required to establish a toll-free telephone number? – New**

Yes, you must provide a toll-free telephone number for borrowers to call when they have questions or concerns so they do not incur a cost to make the phone call. For detailed requirements, refer to Guide Section 64.6(d). In addition, the borrower must be able to reach a representative from your servicing shop when they call the telephone number in accordance with the call center performance standards outlined in Guide Section 66.8.

23. **For the purpose of applying call center performance standards, how do you define a call center?**

We do not have a prescriptive definition of what constitutes a call center. We expect any facility responsible for a measurable volume of inbound/outbound calls to meet the minimum call center and other contact performance standards.

24. **I cannot segregate Freddie Mac mortgage-related calls from Fannie Mae mortgage-related calls; therefore, I am not able to accurately report call blockage and abandonment rates. How do I ensure that I'm in compliance with this requirement? – New**

The call center performance requirements are the same for Freddie Mac and Fannie Mae-owned mortgages. For complete call center performance requirements, refer to Guide Section 66.8.

25. **The revised solicitation requirements require Servicers to solicit any borrower who is 31 days or more delinquent for an alternative to foreclosure between the 31st and 35th day of delinquency, and again between the 61st and 65th day of delinquency if right party contact has not been achieved. Does this mean that the Servicer has to call every three days, but only solicit for a workout between the 31st and 35th day of delinquency and again between the 61st and 65th day of delinquency?**

Yes. The Servicer must also instruct the foreclosure attorney/trustee to send a post-referral to foreclosure solicitation letter within five business days of the foreclosure referral.

26. **If applicable law has different or more liberal requirements, should a Servicer follow applicable law?**

As always, Servicers must comply with all requirements under applicable law with respect to all of its Servicing activities. However, where our requirements are different than requirements under applicable law (e.g., acknowledgment of receipt of an escalated case), Servicers must comply with the shorter timeframe.

27. **I have a borrower who stated they do not wish to be contacted. May I still contact them to see if they changed their mind and would like to discuss foreclosure avoidance options? – New**

You must comply with the collection and solicitation requirements in accordance with the Guide, subject to applicable law. However, if the applicable telemarketing, servicing, collection, or other laws prohibit calling a borrower who states they do not wish to be contacted, only then must you comply with the applicable laws.

28. **Do I need to document my efforts to review borrowers for alternatives to foreclosure based on the evaluation hierarchy defined in the Guide?**

You should keep appropriate documentation in the mortgage file that demonstrates your efforts to assess a borrower's alternatives to foreclosure. The hierarchy is designed to ensure that the least costly home retention options are offered prior to a HAMP modification, which must be offered prior to the Freddie Mac classic or Standard Modification, as applicable. Servicers may also include the appropriate system notes to document their efforts.

29. **When do escalated case requirements apply? – New**

If a customer complaint or borrower communication reaches you and that complaint or communication rises to the level of a case escalation, then Freddie Mac's case escalation requirements apply, no matter how or where that borrower complaint or communication arrived at your shop. The complaint or communication that rises to an escalated case must be received on or after October 1, 2011, even if it relates to an issue or a loan that became delinquent prior to October 1, 2011.

30. **When providing the monthly report for escalated case activity, do I have to provide information for all eight of the defined categories in Guide Section 51.5.1?**

Yes. You must provide all of the following information to Freddie Mac via a spreadsheet by the 12th business day of every month for escalated cases that were referred to the Servicer by the borrower or requestor, and/or escalated cases resolved in the prior month:

- Freddie Mac loan number
- Servicer loan number
- Borrower name
- Date case received
- Date case resolved
- Resolution category
- Summary and description detailing events of the case

The spreadsheet must be submitted to FM_Servicers_Borrower_Report@freddiemac.com and the file name must be reflected as Servicer name_consumer inquiries_mmyy. The Servicer must continue to report each escalated case to Freddie Mac in the monthly report until the case is resolved. The Servicer is not required to include in the monthly report any cases initially referred to Freddie Mac by the borrower or requestor for which the Servicer is working with Freddie Mac to provide a resolution.

31. **What do I do if I receive a repeat complaint from a borrower and the initial complaint was already evaluated and responded to through our escalated case processes?**

If you have evaluated and responded to a borrower's complaint through your escalated case process that meets the requirements in the Guide, you do not need to take additional action on the repeat complaint other than to document it.

32. **Will the new solicitation and delinquency management requirements under the Servicing Alignment Initiative retroactively apply to borrowers in the pipeline?**

No. Use of the new forms and solicitation requirements became effective for all new evaluations for an alternative to foreclosure conducted on or after October 1, 2011.

33. **Are "door-knocking" campaigns required?**

No. Door-knocking campaigns are not required. However, Servicers are free to engage in them to increase Borrower Response Package completion rates.

34. **I service mortgages in areas that have state statutes to refer mortgages to foreclosure by the 120th day of delinquency. How should I handle this?**

If state law requires a breach letter to be sent prior to the 90th day of delinquency in order to be able to refer the mortgage to foreclosure by the 120th day of delinquency, you must send the breach letter on the earlier date.

35. **Can I use an auto dialer for my collection call campaigns?**

Yes, provided that a live agent will pick up the call if a connection is made.

## Home Affordable Modification Program (HAMP)

36. **If I am evaluating a borrower for imminent default for a HAMP modification, is there any additional documentation required?**

The borrower must submit, at a minimum, a complete Borrower Response Package and a signed IRS Form 4506T-EZ or a copy of the borrower's most recent signed federal income tax return.

In addition, IRS Form 4506T must be obtained if the borrower:
- Files tax returns based on a fiscal calendar year (i.e., a tax year beginning in one calendar year and ending in the following year) and/or;
- Is self-employed

The Servicer must obtain the borrower's tax transcript by processing the appropriate IRS form in the event tax returns are not received. The borrower may be required to provide additional hardship documentation if the borrower must also document an Imminent Default Hardship.

37. **How do the new solicitation requirements affect HAMP solicitation, documentation, evaluation time line and notice, and referral to foreclosure?**

With the Servicing Alignment Initiative, requirements related to the solicitation process and related documentation (e.g., Borrower Solicitation Package), evaluation time line and notices, referral to foreclosure and foreclosure processing apply to all alternatives to foreclosure, including HAMP. As a result, the existing requirements related to these topics that we have in place for HAMP have changed.

38. **With the new solicitation document requirements, can I still use the current HAMP solicitation documents for borrowers whom I believe are eligible for HAMP?**

For evaluations conducted on or after October 1, 2011, you may no longer use the current HAMP solicitation documents.
- New Form 710, *Uniform Borrower Assistance Form*, coupled with Form 710A, *Government Monitoring Data Form*, must be provided to all HAMP eligible borrowers, and will replace:
  - Form 1126, *Borrower Financial Information*, and

- Form 1114, Making Home Affordable (MHA) Request for Modification and Affidavit (RMA), and
- Form 1115, MHA Hardship Affidavit.
- Guide Exhibit 1131,Solicitation Letter – 31 Days Delinquent, and Guide Exhibit 1161, Solicitation Letter – 61 Days Delinquent replace:
  - Form 1120, HAMP Proactive Solicitation Letter, and
  - Form 1121, Documentation Request Letter.

In addition, the model evaluation clause for the "HAMP Trial Period Plan Notice" replaces Form 1117, Home Affordable Modification Program Trial Period Plan Notice. (See Exhibit 93, Evaluation Model Clauses, for this model letter.)

39. **If I am required to use default action code H5 to report the receipt of complete Borrower Response Packages, what EDR code should I use for reporting a positive solicitation response for HAMP?**

Per Guide Bulletin 2011-11, you are no longer required to report that a HAMP-eligible borrower has responded to a HAMP solicitation and is interested in pursuing an alternative to foreclosure, and you should not use default action code H5 for that purpose. You must begin using default action code H5 to report complete Borrower Response Packages that you receive.

40. **May a borrower pay more than their contractual HAMP trial period payment without restarting the trial period? – New**

Yes, a borrower can pay more than the required trial period amount without restarting their trial period.

## Borrower Solicitation and Response Packages

41. **May I use our proprietary solicitation package in lieu of the Borrower Solicitation Package?**

You may use the solicitation templates that Freddie Mac provides or customized equivalents that provide a comparable level of detail. In all instances, the Borrower Solicitation Package sent to the borrower must include the complete set of documents and content specified in the Guide.

42. **Do I have to conduct follow-up calls to the borrower the day after I send the Borrower Solicitation Package?**

Yes. You are required to begin calls the next day, and follow-up calls must continue at least every third day until quality right party contact is achieved. We suggest that you coordinate your mass mailing campaigns with your call center operations to initiate the calls on time.

43. **Does a borrower need to respond to a solicitation within 30 calendar days or 30 business days?**

The borrower must respond to the Borrower Solicitation Package within 30 calendar days, unless the 30th calendar day falls on a non-business day, in which case the response date is moved to the first business day after the 30th calendar day. However, if a borrower fails to respond, they are not precluded from submitting a complete Borrower Response Package to the Servicer at a later date, in which case a Servicer must consider that borrower for an alternative to foreclosure, except in certain limited instances (e.g., a foreclosure sale is imminent and there is insufficient time to review the borrower's later submission).

44. **If a borrower calls but does not have all the information they are required to provide, how does it affect the process and our progress?**

If the borrower does not have the required information, the Servicer must continue to follow up with the borrower until a complete Borrower Response Package is received in order for the Servicer to evaluate the borrower for an alternative to foreclosure.

45. **If I am working with a borrower on an incomplete Borrower Response Package based on the first solicitation required between days 31 and 35 of delinquency, am I required to send the second Borrower Solicitation Package required between days 61 and 65 of delinquency?**

If quality right party contact has been established, but you have not received information promised by the borrower or have received incomplete information, then you must call the borrower at least every third day to follow up on missing or incomplete information. In this instance, while working with a borrower on an incomplete Borrower Response Package, you are not required to send the second Borrower Solicitation Package required between days 61 and 65 of delinquency.

46. **Is a complete Borrower Response Package required for short-term home retention options?**

If you receive sufficient information to evaluate the borrower for a reinstatement or relief option in accordance with Chapter A65, or a workout option in accordance with Chapter D65 without the complete Borrower Response Package, you may do so.

47. **Am I still required to evaluate a borrower if the borrower returns a complete Borrower Response Package after the 30-day response deadline?**

   If a borrower fails to respond by the 30-day response deadline, the borrower may still submit a complete Borrower Response Package at a later date. You must consider that borrower for an alternative to foreclosure, except in certain limited instances (e.g., a foreclosure sale is imminent, and there is insufficient time to review the borrower's later submission – See Guide Section 64.6(d) (5) and Guide Section 66.41). In addition, you must still meet the required time frames for sending an acknowledgement of the Borrower Solicitation Package (three business days), an incomplete notice (five business days), and/or the evaluation decision (30 days) after receiving the Borrower Response Package. Servicers may, but are not required, to send a notice of incompleteness when an incomplete Borrower Response Package arrives within 37 days prior to a scheduled foreclosure sale. However, you are strongly encouraged to work with such borrowers to complete the package.

48. **Do I have to send the Borrower Solicitation package required between day 61 and 85 of delinquency if I have already evaluated the borrower's complete Borrower Response Package from the first solicitation, and the borrower did not qualify for an alternative to foreclosure?**

   No, you are not required to send the Borrower Solicitation Package required between day 61 and 85 of delinquency if the borrower did not qualify for an alternative to foreclosure based on your first evaluation, and you have met all of our Guide requirements. Please note that if the borrower's circumstances have changed, you should evaluate them again for an alternative to foreclosure based on their changed circumstances and submission of a new complete Borrower Response Package.

49. **Am I required to complete a short sale or deed-in-lieu evaluation within 30 days? – New**

   You must determine preliminary eligibility for short sales and deeds-in-lieu within 30 days of receiving the complete Borrower Response Package.

   For example, if the borrower meets the basic eligibility criteria for a HAFA Short Sale in accordance with the Guide within 30 days of receiving the complete Borrower Response Package, and you have determined that the borrower is not eligible for a reinstatement, repayment plan, forbearance plan, HAMP modification, or Standard Modification, you must send the HAFA model clause and Form 1135, *HAFA Short Sale Agreement*, to the borrower to begin the evaluation process. Please note that the HAFA model clause does not indicate the borrower is approved for a HAFA Short Sale; it only indicates that they may be eligible for evaluation and provides the remaining steps they must take to become eligible.

   If the borrower is either ineligible to be evaluated for or is ineligible for a HAFA Short Sale, you must continue evaluating the borrower for other alternatives to foreclosure in accordance with the evaluation hierarchy outlined in the Guide, which is: Freddie Mac Short Payoff, HAFA Deed-in-Lieu, and then Freddie Mac Deed-in-Lieu.

50. **Is there a limit to the number of times that a borrower can be re-evaluated for an alternative to foreclosure if the borrower continues to provide new or updated information?**

   No. There is no limit provided that the borrower submits a complete Borrower Response Package for each evaluation.

51. **What happens if I do not receive timely approval for non-delegated alternatives to foreclosure? – New**

   You must manage your file to ensure that there is sufficient time to request any necessary approvals from Freddie Mac or third parties, such as the mortgage insurer, so you can provide a response to the borrower no later than 30 days from receiving the complete Borrower Response Package.

   Freddie Mac will take into consideration, on a case-by-case basis, documented circumstances where a review conducted by a third party or Freddie Mac caused you to exceed the 30-day time frame.

52. **If I must complete a borrower evaluation before I order the BPO, what happens if day 30 approaches and I did not receive the BPO? – New**

   If an AVM value is not available, you should immediately order the BPO as soon as you receive a complete Borrower Response Package. If the BPO value does not arrive within 30 days of receiving the complete Borrower Response Package, you may refrain from making a final decision, except as necessary to comply with applicable law.

53. **How old can a borrower's income documentation be? – New**

   A borrower's income documentation cannot be more than 90 days old as of the date you first determine that the borrower submitted a complete Borrower Response Package.

54. **Am I required to obtain a borrower's bank statements? – New**

   You are only required to obtain a borrower's bank statement if the borrower has income that is required to be supported with bank statements.

For example, if a borrower provides you with a recent pay stub that reflects at least 30 days of year-to-date income, you do not need to obtain a bank statement. However, if you have received a borrower's bank statement or have access to the borrower's bank records, you should take that information into consideration in determining the extent of the borrower's financial hardship.

55. Do I report default action codes H4 and H5 for borrowers in imminent default? -- New

If a borrower is facing imminent default and you receive a complete Borrower Response Package, only report default action code H4. If the borrower becomes delinquent, you must report default action code H5.

## Post-Referral to Foreclosure Solicitation Letter

56. Is the attorney/trustee still required to send the post-referral to foreclosure letter within five days after referral to foreclosure if the borrower files bankruptcy or a contested matter arises after the foreclosure referral, but before the solicitation is sent?

Yes. The attorney/trustee should still send the post-referral foreclosure solicitation letter within five days of the referral provided doing so is not in violation of applicable law. As stated in Guide Chapter 66.9.2, the post-referral to foreclosure solicitation letter may be sent at a later date, but no later than necessary to comply with applicable law.

57. Is the post-referral to foreclosure solicitation letter required to be sent again if a foreclosure is suspended or postponed?

No, if the initial requirement to send the post-referral to foreclosure solicitation letter within five days after referral to foreclosure has been met, you do not need to send it again.

58. As the Servicer, am I responsible for making sure that the attorney/trustee sends the post-referral to foreclosure solicitation letter?

Yes. The Servicer is accountable for the actions of the attorney/ trustee, including sending the post-referral to foreclosure solicitation letter. We recommend that you build controls into your processes to ensure that the letter is sent.

59. If I need to conduct a review before foreclosure initiation and another prior to foreclosure sale, and then also direct the attorney/trustee to send a foreclosure prevention solicitation letter after referral, isn't it too late in the foreclosure process for the attorney/trustee to send the foreclosure prevention solicitation letter?

No. The solicitation letter is intended to secure a complete Borrower Response Package in an effort to provide an alternative to foreclosure and prevent the foreclosure sale, not necessarily to prevent the foreclosure process.

## Foreclosure Time Lines

60. Will Freddie Mac set foreclosure time lines by county or MSA to account for areas within a state that take longer to process a foreclosure?

No. We are issuing state standards for meeting foreclosure time lines. Specifically, our foreclosure time lines are based on the number of days from the due date of the last paid installment on the mortgage until the foreclosure sale occurs. The time lines are state-specific and are aimed to align more closely with actual foreclosure processing time lines in each state.

61. Will foreclosure time lines for borrowers in Chapter 7 or Chapter 13 bankruptcy change as a result of new foreclosure time lines announced today?

No. The foreclosure time lines for borrowers in Chapter 7 or Chapter 13 bankruptcy have not changed. The state foreclosure time lines will be extended if the delay is due to bankruptcy. However, Servicers are reminded that if they encounter a delay beyond their control, they may document the delay and submit it to Freddie Mac for consideration of a time line extension.

62. Will I get a credit if I exceed Freddie Mac's foreclosure time line requirements for a delay caused by obtaining a bankruptcy lift of stay or resolving other contested matters?

You have up to 90 days for each Chapter 7 bankruptcy filing and up to 125 days for each Chapter 13 bankruptcy filing to obtain relief from the stay. If you believe that a delay in these instances was beyond your control, you may submit an appeal to Freddie Mac with appropriate supporting documentation within 30 days of the publication of the compensatory fee being assessed.

As a reminder, the Monthly Compensatory Fee Analysis Report of the prior month's estimated state foreclosure time line compensatory fees will be available in the Servicer's Servicer Performance Profile (SPP) on the fifth business day of the following month. You must review

the report each month and have 30 days from the date of the report's publication to submit an appeal for the prior month's estimated compensatory fees.

63. **Will I get a credit if I exceed Freddie Mac's foreclosure time line requirements for a delay caused by a mandatory borrower mediation hearing?**

If you believe that the delay has been beyond your control, you can submit an appeal to Freddie Mac with appropriate supporting documentation.

64. **Do Freddie Mac's requirements supersede any state requirements for foreclosure prevention actions?**

Servicers must always comply with applicable law when engaged in any servicing activities for Freddie Mac mortgages. Where requirements overlap, Servicers must comply with the shorter time frame. Servicers should make every effort to meet Freddie Mac's time line requirements regardless of state requirements. Efforts may include sending state-required documentation, such as a breach or notice of acceleration letter, earlier in the delinquency in order to meet Freddie Mac's time lines. If a state is reviewing a borrower's situation, the Servicer should ensure they document the review and submit it to Freddie Mac for approval to postpone foreclosure proceedings.

65. **How are deeds-in-lieu accounted for in the foreclosure time line requirements?**

Deeds-in-lieu are included in the foreclosure time line requirements. Foreclosure time lines include loans that went into foreclosure sale or were deeded to Freddie Mac as a deed-in-lieu of foreclosure. Please see Guide Chapter 66.33 (a) and Guide Exhibit 83A for more information.

66. **If I'm unable to refer a loan to foreclosure by the 120th day of delinquency because the borrower has submitted a Borrower Response Package that I'm considering for a workout, or because the response time for a foreclosure prevention offer has not expired, will the state foreclosure time lines be extended by a corresponding amount of time so I have longer to evaluate the borrower for a workout and/or so I can extend the offer period for a foreclosure alternative?**

While a mortgage cannot be referred to foreclosure in either of the instances mentioned above, the foreclosure time lines will not be extended in either case. It is a Servicer's responsibility to secure a complete Borrower Response Package in a timely manner so that evaluations and foreclosure alternative offers can be processed within the designated time lines.

67. **Should I proceed with a foreclosure sale if I receive a completed Borrower Solicitation Package less than 15 days from the foreclosure sale date?**

You should proceed with the foreclosure *process*, while also reviewing the package for workout options. In non-judicial states, Servicers can exercise a one-time election to postpone a foreclosure sale for 30 days to evaluate the borrower for a workout. In judicial states, you can make a recommendation to Freddie Mac to postpone the foreclosure sale. In addition, if you offer a foreclosure alternative to the borrower, the borrower has 14 days to respond. As such, if a foreclosure sale is scheduled within that 14-day time period, you must postpone the foreclosure sale to allow the borrower the time to respond.

68. **Is there a required format for providing certification to foreclosure to the attorney/trustee?**

At least seven, but no more than 15 days prior to the foreclosure sale, you must review the account and send *written* certification to the attorney/trustee indicating that the foreclosure sale must continue unless certain conditions exist. Review Guide Section 66.41.1 for additional information.

69. **Is it my responsibility as a Servicer to confirm that the attorney/trustee has received our foreclosure certification?**

Yes, it is the Servicer's responsibility to confirm attorney/trustee receipt of the foreclosure certification.

70. **Are Freddie Mac's new foreclosure certification requirements in addition to or a replacement for the HAMP foreclosure certification requirement?**

The foreclosure certification requirements announced in our June 30 Guide Bulletin 2011-11 apply to all of Freddie Mac mortgages and replace any specific certification required for HAMP.

## Servicer Performance Management

71. **How do the new requirements affect the Servicer Performance Profile and Servicer Success Scorecard?**

Over time, we anticipate incorporating the new performance benchmarks into the Servicing Success Program and its associated Scorecard. In December 2011, Servicers will have

access to new reports in Default Reporting Manger℠ that track a Servicer's performance for two SAI's requirements:

- The "Quality Right Party Contact Monthly Monitoring Report" indicates how well a Servicer achieved the quality right party contact benchmark of at least 60% on its 120-day delinquent Freddie Mac portfolio.
- The "BRP Monthly Progress Report" denotes a Servicer's monthly performance for receipt of complete Borrower Response packages.

72. **If our call center does not meet the new benchmarks, will it reflect on our Servicer Performance Profile/Servicer Success Scorecard?**

As applicable, call center benchmarks may be added to the Servicer Success Scorecard in the future.

## Incentives and Compensatory Fees

73. **How have incentives and compensatory fees changed?**

Our new incentives and compensatory fees focus on rewarding Servicers for meeting quality benchmarks, and assessing compensatory fees and other remedies for Servicers who fail to meet our defined loss-mitigation metrics. These include:
- New Borrower Response Package benchmarks, with corresponding incentives and compensatory fees
- Workout incentives, including existing incentives for a workout and new incentives for the Freddie Mac Standard Modification when it becomes available
- Revised foreclosure time line compensatory fees

74. **How are complete Borrower Response Packages for borrowers who are 60 or more days delinquent treated if the Servicer's performance falls between the minimum 50 percent performance benchmark and the 60 percent incentive benchmark?**

Neither an incentive nor a compensatory fee will apply to those Borrower Response Packages.

75. **When will the incentives and compensatory fees become effective?**

The new incentives and compensatory fees became effective October 1, 2011.

76. **If a borrower does not make a full payment, will it affect whether I am charged a compensatory fee under the Borrower Response Package metrics?**

If a borrower is paying less than the full contractual mortgage payment (e.g., a forbearance plan with reduced payments) during the six-month collection period and has not otherwise submitted a complete Borrower Response Package, that mortgage will not be reflected in the numerator when calculating the performance measurement thereby reducing a Servicer's performance under that benchmark.

77. **If I have not reached the 50 percent performance benchmark for complete Borrower Response Packages, will compensatory fees be assessed for each delinquent mortgage for which I do not have a complete Borrower Response Package?**

No. Compensatory fees will only be assessed for the number of complete Borrower Response Packages that are needed to reach the 50 percent performance benchmark. For example, if your population of borrowers who are 60 or more days delinquent is 100, and you only have 45 borrowers who either (a) submitted a complete Borrower Response Package, or (b) became less delinquent (e.g., current or D30) at the end of the six-month collection period, a compensatory fee of $2500 will be applied for the 5 mortgages missing complete Borrower Response Packages.

78. **If between January and June, I receive 65 complete Borrower Response Packages from the 100 borrowers I have that are 60 or more days delinquent. Will I receive an incentive or a compensatory fee?**

No. You will not be assessed a Borrower Response Package compensatory fee because you reached the required 50 percent performance benchmark (50 Borrower Response Packages). You also will not receive a Borrower Response Package incentive (assuming an additional seven borrowers did not become less delinquent) because you did not reach the 60 percent incentive benchmark (60 borrowers who submitted complete Borrower Response Packages or who became less delinquent).

79. **"Netting" is not allowed when calculating foreclosure time line compensatory fees. What does this mean?**

"No netting" means that foreclosure sales completed *faster than* the foreclosure time line cannot offset loans *exceeding* the time line. This is applicable to mortgages that are referred to foreclosure on or after October 1, 2011.

80. **I was assessed a Borrower Response Package compensatory fee of $500. I thought compensatory fees under $1,000 were being waived?**

The waiver of compensatory fees under $1,000 is only for foreclosure time line compensatory fees, not Borrower Response Package compensatory fees.

81. Is there an appeals process for foreclosure time line or other compensatory fees? – Updated

The Servicer may appeal a pending compensatory fee prior to Freddie Mac billing the fee.

The *Monthly Compensatory Fee Analysis Report* of the prior month's estimated state foreclosure time line compensatory fees will be available in the Default Reporting Manager[SM] on the fourth business day of the following month. The Servicer must review the report each month, and if they believe a compensatory fee listed on their report is incorrect, the Servicer has 30 days from the date of the report's publication to submit an appeal.

For mortgages referred to foreclosure on or after October 1, 2011, the monthly bill will not include those mortgages for which the compensatory fees were waived.

For mortgages referred to foreclosure prior to October 1, 2011, the annual bill will not include those mortgages for which the compensatory fees were waived throughout the year.

Example: A foreclosure sale occurs in October for which the Servicer has exceeded Freddie Mac's state foreclosure time line as listed in Exhibit 83, *Freddie Mac State Foreclosure Time Lines*, and is subject to a compensatory fee. The Servicer must access the *Monthly Compensatory Fee Analysis Report* in the Servicer Performance Profile (available on the fourth business day in November). The Servicer then has 30 days from the fourth business day to submit an appeal to Freddie Mac (see Directory 5 in Guide Bulletin 2011-11 (PDF)).

82. Can I dispute the compensatory fees citing the state or court-related delays as part of the monthly compensatory fees appeal process? – New

Yes. If you believe a delay was beyond your control, you must submit adequate documentation that supports your claim(s) in your appeal.

83. Can I still make data corrections under the new requirements?

Servicers should, and will be allowed to, submit data to correct reporting discrepancies. However, no adjustment will be made to incentives or compensatory fees.

84. How are foreclosure time line delays required by state legislation addressed in performance measurements and compensatory fees?

In a situation in which a state foreclosure time line supersedes the time line dictated by Freddie Mac and a compensatory fee has been assessed, Servicers may appeal the assessment and show that the delay was beyond their control, that they sent letters and responses in a timely fashion, and that they worked with state agencies in a prudent manner.

85. Are the limits on the incentives and compensatory fees in a consecutive 12-month period? – New

If an incentive is received for a given loan, that loan will not be eligible for another incentive until six months after the first incentive. Additionally, only two incentive payments are allowed for the life of the loan.

## Systems

86. Is EarlyIndicator® still a viable tool to use with the new borrower contact requirements?

Servicers may continue to use EarlyIndicator® to track telephone calls with delinquent borrowers; however, use of EarlyIndicator® for monitoring required property inspections will no longer be available.

87. Does Electronic Default Reporting (EDR) capture all acceptable delays for servicing delinquent loans?

EDR captures the most relevant delays in servicing delinquent loans. Please review Guide Section 64.10 and Exhibit 82 or the EDR Quick Reference Guide on the Learning Center for more information.

88. Are the limits on the incentives and compensatory fees in a consecutive 12-month period? – New

If an incentive is received for a given loan, that loan will not be eligible for another incentive until six months after the first incentive. Additionally, only two incentive payments are allowed for the life of the loan.

89. Will my reporting requirements through MIDANET® or the Service Loans application change?

We are working toward full operational readiness for all impacted systems. We will provide more details and guidance on how to manage these changes in the near future.

## Other

90. **What loan types or products require Early Delinquency Counseling?**

Mortgage products that require Early Delinquency Counseling are listed in Guide Section 64.5C. The products include Home Possible® Mortgages and other mortgages for which Freddie Mac requires a Servicer to offer special servicing and Early Delinquency Counseling.

© 2012 Freddie Mac



**Freddie Mac**
We make home possible ®

# Bulletin

**NUMBER: 2011-17**

**TO:** Freddie Mac Servicers                                        September 30, 2011

### SUBJECT: UPDATES TO POST-REFERRAL TO FORECLOSURE SOLICITATION LETTER

With this *Single-Family Seller/Servicer Guide* ("Guide") Bulletin, we are eliminating Guide Exhibit 94, *Post-Referral to Foreclosure Solicitation Letter*, which was a model post-referral to foreclosure solicitation letter, due to the many differences in applicable laws that would require modification of the content of the letter.

As described in the Guide, Servicers must instruct the foreclosure attorney/trustee to send the Borrower a post-referral to foreclosure solicitation letter that reflects the content described in Guide Sections 64.6, *Evaluation Hierarchy, Borrower Solicitation and Communication*, and 66.9.2, *Solicitation during the Foreclosure Process*. Servicers must continue to consult with their foreclosure attorneys/trustees, who, in their discretion to the extent the foreclosure attorneys/trustees deem necessary, may draft the solicitation letter to meet the requirements of the Guide and to ensure that the content and timing of the letter comply with applicable law.

Effective immediately, we are also providing that in jurisdictions where as part of the mediation or settlement conference process the Borrower must receive a written request to participate in the process, the post-referral solicitation letter may be waived at the foreclosure attorney's/trustee's discretion.

In a subsequent Bulletin, Sections 64.6 and 66.9.2 will be updated to include the provision above and the Guide will be updated to remove all references to Exhibit 94.

### CONCLUSION

If you have any questions about the changes announced in this Bulletin, please contact your Freddie Mac representative or call (800) FREDDIE and select Servicing.

Sincerely,

*Tracy Hagen Mooney*

Tracy Hagen Mooney
Senior Vice President
Single-Family Servicing and REO

# Bulletin

**NUMBER: 2010-27**

**TO:** Freddie Mac Servicers                                                          November 15, 2010

## SUBJECTS

With this *Single-Family Seller/Servicer Guide* ("Guide") Bulletin, we are making the following changes
to our **Servicing requirements**:

- Updating the Guide to permit Document Custodians to release Notes directly to designated counsel
  when the original Note is needed to foreclose

- Updating our requirements with respect to the accrual and collection of late charges for forbearance
  agreements and repayment plans

- Revising the Guide to reflect that a modified Mortgage, processed under Guide Chapter B65,
  *Workout Options*, must be a fully amortizing fixed-rate Mortgage

- Updating the contact information for Servicers to notify Freddie Mac that a conversion option has
  been exercised for a convertible adjustable-rate Mortgage (ARM)

In addition, we are providing additional guidance and reminders related to the **Home Affordable
Modification Program (HAMP)**:

- Providing additional guidance on Servicer and Borrower incentives for FHA, VA and Rural Housing
  Service (RHS) Mortgages modified under HAMP

- Reminding Servicers that, as previously communicated to them, certain HAMP documents have been
  revised

Finally, we have updated Guide Section C65.6, *Underwriting the Borrower*, to include the provision that
if a Servicer has a Freddie Mac Broker's Price Opinion (BPO) or appraisal that is less than 90 days old on
the date the Servicer evaluates the Borrower for a HAMP Trial Period Plan using the Treasury NPV
Model, the Servicer may use that BPO or appraisal. This provision was inadvertently omitted when
Chapter C65, *Home Affordable Modification Program*, was revised with the July 28, 2010 Bulletin.

### Effective date

All of the changes announced in this Bulletin are effective immediately, unless otherwise noted.

### Designated counsel's request for release of documents in foreclosure actions

In some States, original Notes are required to process foreclosures and in those cases, Servicers typically
request the Note from the Document Custodian and forward it to the foreclosure counsel. For foreclosures
referred to designated counsel, in order to add greater efficiency to the process, we are updating the Guide
to permit the designated counsel to request the Note directly from the Document Custodian. To request
the Note from the Document Custodian, the designated counsel must complete and submit Form 1036DC,
*Designated Counsel's Request for Release of Documents*, which Freddie Mac will provide to designated
counsel.

Sections 18.6, *Document Custodian's Functions and Duties*, 66.16, *How to Initiate Foreclosure*, and 66.20, *Obtaining the Original Note*, have been updated to reflect this change.

**Late charges associated with forbearance agreements and repayment plans**

We are updating our requirements for long-term forbearance to explicitly provide that a Servicer may include in the long-term forbearance agreement any accrued late charges due from a Borrower at the time the Servicer entered into the agreement with the Borrower. In addition, Servicers must not accrue or collect late charges from the Borrower during the long-term forbearance period, and the subsequent repayment plan period, as applicable, if the Borrower is paying as stipulated in the agreement(s). This is consistent with our requirements for short-term forbearance agreements.

Servicers may recommence accrual of late charges if the Borrower defaults on any forbearance agreement or repayment plan.

Sections A65.16, *Repayment Plan Requirements*, A65.20, *Short-term Forbearance Requirements*, and A65.24, *Long-term Forbearance Requirements*, have been updated to reflect this change.

**Modified mortgage conditions**

We have revised Section B65.20, *Modified Mortgage Conditions*, to include our existing requirement that a modified Mortgage must be modified to a fully amortizing fixed-rate Mortgage. The Mortgage after modification must not be: an interest-only Mortgage, a bi-weekly Mortgage or a daily simple interest Mortgage.

**Notification of a conversion through the automated conversion process**

We have revised the contact information for Servicers to notify Freddie Mac when a Servicer is processing a conversion of a convertible adjustable-rate Mortgage (ARM) to a fixed interest rate through the automated conversion process. Servicers must now call Delivery at (800) FREDDIE instead of the previous conversion line.

Section 80.4.2, *Processing a Conversion through the Automated Conversion Process*, has been updated to reflect this change.

## HOME AFFORDABLE MODIFICATION PROGRAM

**Borrower and Servicer incentives**

We have updated the Guide to indicate that Freddie Mac will not pay any Borrower "Pay for Performance" or Servicer "Pay for Success" HAMP incentives for Mortgages modified under HAMP that are insured by the FHA or guaranteed by the VA or RHS. In addition, for such Mortgages, Freddie Mac will not pay Servicers workout compensation fees or the additional $500 incentive payment.

Servicers are reminded that as provided under Section 65.42, *Compensation Program*, they will not receive a workout compensation fee for any workouts completed on FHA, VA or RHS Mortgages.

Sections C65.4, *Eligibility*, and C65.9, *HAMP Incentives*, have been revised to reflect this update.

**Revised HAMP documents**

In a Single-Family Servicer e-mail dated October 8, 2010, Servicers were advised of revisions to the following HAMP documents:

- Form 3157, *Home Affordable Modification Agreement (3/09 (rev. 10/10))* ("Modification Agreement")
- Form 1118, *HAMP Agreement Cover Letter* ("HAMP Cover Letter")
- *Authorized Changes to Modification/Special Purpose Documents*
- Form 1117, *HAMP Trial Period Plan Notice – Verified Income* ("Trial Period Plan Notice (Verified)")

■ Form 1115, *Making Home Affordable Hardship Affidavit* ("MHA Hardship Affidavit")

Servicers are strongly encouraged to begin using the revised documents immediately. Use of the revised documents will become mandatory as follows:

■ Servicers must begin using the revised Modification Agreement and HAMP Cover Letter for HAMP modifications with a first payment due date on or after **March 1, 2011**

    ❑ The revised HAMP Cover Letter includes an additional disclosure for Borrowers receiving a HAMP modification that contains principal forbearance. This disclosure informs the Borrower that a principal curtailment may be applied to the deferred principal balance instead of the interest-bearing balance.

    ❑ Servicers must refer to Freddie Mac's updated *Authorized Changes to Modification/Special Purpose Documents* at **http://www.freddiemac.com/uniform/doc/authchanges_specialpurpose.doc** for information regarding required or permitted changes to the revised Modification Agreement

■ The revised Trial Period Plan Notice (Verified) must be used for HAMP Trial Period Plans with a first Trial Period payment due date on or after **March 1, 2011**

■ If the Servicer elects to use a proprietary financial information form in lieu of the Form 1114, *Making Home Affordable Request for Modification and Affidavit* ("RMA"), it must either use the revised MHA Hardship Affidavit or incorporate the contents of the revised MHA Hardship Affidavit into its proprietary financial information form for HAMP requests received or initial packages sent on or after **March 1, 2011**

Freddie Mac's documents were revised as a result of Treasury's issuance of its revised HAMP documents, which included new Treasury program requirements implementing the Principal Reduction Alternative (PRA) offering for non-Government Sponsored Enterprise (GSE) Servicers, announced in Treasury's HAMP Supplemental Directive 10-05 (Modification of Loans with Principal Reduction Alternative) ("SD 10-05").

***Treasury's PRA offering does not apply to Freddie Mac-owned Mortgages; therefore, the revised Freddie Mac HAMP documents do not include updates related to PRA. In addition, Treasury documents no longer specify that a borrower's principal curtailment may be applied to the deferred principal balance. Freddie Mac Servicers must use the Freddie Mac HAMP documents and cannot use those posted on HMPadmin.com in connection with Servicing Freddie Mac-owned Mortgages.***

Until otherwise notified, Freddie Mac Servicers must not implement the requirements in SD 10-05 for Freddie Mac Mortgages, including Freddie Mac-owned Mortgages insured or guaranteed by any federal agency, such as the FHA.

All of Freddie Mac's revised documents are available at **http://www.freddiemac.com/singlefamily/service/hmp_solicitation.html**

A Spanish translation of the revised *Authorized Changes to Modification/Special Purpose Documents* is also available at **http://www.freddiemac.com/singlefamily/service/hmp_solicitation.html**. Spanish translations of the other revised HAMP-related documents will be posted to our web site as they become available.

Section C65.2, *HAMP Documentation*, Guide Exhibit 4, *Single-Family Uniform Instruments,* and Exhibit 5, *Authorized Changes to Notes, Riders, Security Instruments and the Uniform Residential Loan Application,* have been updated to reflect this announcement.

 

## REVISIONS TO THE GUIDE

The revisions included in this Bulletin impact the following:

- Chapters 18, A65, B65, C65, D65, 66, and 80
- Exhibits 4 and 5
- Glossary

## CONCLUSION

If you have any questions, please contact your Freddie Mac representative or call (800) FREDDIE and select "Servicing" from the menu.

Sincerely,

*Tracy Hagen Mooney*

Tracy Mooney
Senior Vice President
Servicer Relationship & Performance Management