**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | **NOT FOR PUBLICATION** |
| In re: | ) | |
| | ) | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al*., | ) | |
| | ) | Chapter 11 |
| Debtors. | ) | |
| | ) | Jointly Administered |

**MEMORANDUM OPINION AND ORDER SUSTAINING THE**
**RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO**
**CLAIM NO. 2267 FILED BY ABOSEDE EBOWEME**

*A P P E A R A N C E S:*

MORRISON & FOERSTER LLP
*Attorneys for ResCap Borrower Claims Trust*
250 West 55th Street
New York, New York 10019
By:    Norman S. Rosenbaum, Esq.
        Jordan A. Wishnew, Esq.
        Meryl L. Rothchild, Esq.

ABOSEDE EBOWEME
*Pro Se*
4617 Covington Court
Grand Prairie, Texas 75052
By:    Abosede Eboweme

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the ResCap Borrower Claims Trust's (the "Trust") objection

(the "Objection," ECF Doc. # 8018) to Claim Number 2267 (the "Claim," *id.* Ex. 1) filed by

Abosede Eboweme ("Eboweme").[1]  The Claim is premised on causes of action that Eboweme

has previously asserted against Debtor GMAC Mortgage, LLC ("GMACM") and other non-

debtor defendants in an action filed in Texas in 2011.  Specifically, the Claim asserts causes of

---

[1] The Objection is supported by the declarations of Kathy Priore (the "Priore Declaration," ECF Doc.
# 8018-4) and Jon H. Patterson (the "Patterson Declaration," ECF Doc. # 8018-20).

action for (i) wrongful foreclosure; (ii) violations of the automatic stay during Eboweme's

bankruptcy case; (iii) intentional infliction of emotional distress ("IIED"); (iv) violations of the

Real Estate Settlement Procedures Act ("RESPA"); (v) violations of the Texas Debt Collection

Practices Act (the "TDCPA"); and (vi) violations of the Texas Deceptive Trade Practices Act

(the "TDTPA"). These causes of action purportedly relate to the foreclosure on Eboweme's

home in September 2011. Eboweme filed an opposition to the Objection (the "Opposition," ECF

Doc. # 8144).[2] The Court held a hearing on the Objection on February 25, 2015 (the "Hearing")

and took the matter under submission.[3] For the reasons explained below, the Objection is

**SUSTAINED** and the Claim is **EXPUNGED**.

## I.    BACKGROUND

### A.    Eboweme's Loan History

Eboweme took out a $123,500.00 loan (the "Loan") from Aegis Mortgage Corporation

("Aegis") in February 2002, evidenced by a note (the "Note," Priore Decl. Ex. 3-A) secured by a

deed of trust (the "Deed of Trust," *id.* Ex. 3-B) on real property located in Grand Prairie, Texas

(the "Property"). (Priore Decl. ¶ 4.) The Deed of Trust identified Mortgage Electronic

Registration Systems, Inc. ("MERS") as the beneficiary.[4] (*Id.*) Debtor Residential Funding

Company, LLC ("RFC") purchased the Loan from Aegis and transferred it to JP Morgan Chase

Bank ("JPM") when the Loan was securitized in May 2002.[5] (*Id.*) The Loan was removed from

---

[2]    Eboweme subsequently filed supplemental oppositions on February 25, 2015 (ECF Doc. # 8204) and March 16, 2015 (ECF Doc. # 8308) (together, the "Supplemental Oppositions"). Because the Supplemental Oppositions were not timely filed and were not filed with the Court's permission, the Court will not consider them.

[3]    Eboweme did not appear at the Hearing in person or by telephone.

[4]    The Deed of Trust was recorded on February 28, 2002 in the Tarrant County Property Records. (*Id.*)

[5]    The Note was negotiated via endorsements from Aegis to RFC and from RFC to JPM. (*Id.* ¶ 5; *see id.* Ex. 3-A.)

the securitization trust in January 2007.  (*Id.*)  JPM transferred the Loan back to RFC, and RFC

securitized the Loan again in February 2007, with LaSalle Bank National Association

("LaSalle") appointed as trustee.[6]  (*Id.*)  Debtor Homecomings Financial, LLC ("Homecomings")

serviced the Loan from March 2002 until July 2009, when servicing was transferred to

GMACM.  (*Id.* ¶ 5.)  GMACM transferred servicing rights to the Loan to Ocwen Loan

Servicing, LLC ("Ocwen") on February 16, 2013.  (*Id.*)

Eboweme defaulted on the Loan in May 2005.  (*Id.* ¶ 6.)  On May 4, 2005, Homecomings

sent Eboweme a notice of default advising her of the amount due on the Loan and the

consequences of not curing the default.  (*See id.* Ex. 3-C.)  Homecomings sent her similar notices

of default on June 3, June 14 and July 5, 2005.  (*See id.*)  Eboweme again defaulted on the Loan

in December 2006, prompting Homecomings to send her an additional notice of default on

December 4, 2006.  (*See id.*)  Eboweme again defaulted on the Loan in March 2008, and notices

of default were sent to her each month from March to September 2008.  (*See id.* Ex. 3-D.)

In October 2008, Homecomings offered Eboweme a loan modification that would have

reduced her monthly payment, offered an initial modified interest rate of 3%, and waived all

outstanding late charges.  (Priore Decl. ¶ 7; *see id.* Ex. 3-E.)  Eboweme rejected this loan

modification offer.  (Priore Decl. ¶ 7.)  In January 2009, Homecomings received a short sale

package from Eboweme but the package was incomplete.  (*See id.* ¶ 8.)  Homecomings received

the missing information from Eboweme on February 2, 2009.  (*See id.*)  Homecomings faxed

Eboweme a letter approving the short sale; however, Eboweme called Homecomings and stated

that she wished to pursue a loan modification instead of a short sale.  (*See id.* ¶ 9.)  On February

---

[6]        The Note was negotiated via allonges from The Bank of New York Trust Company, N.A., as successor to
JPM, to RFC, from RFC to itself, and from RFC to LaSalle.  (*See id.* Ex. 3-A.)

12, 2009, Homecomings approved Eboweme for a traditional loan modification trial plan, but she rejected the plan stating that she could not afford the required trial plan payments. (*Id.* ¶ 10.)

On February 27, 2009, Eboweme filed a chapter 13 bankruptcy case (the "Chapter 13 Case") in the United States Bankruptcy Court for the Northern District of Texas (the "Texas Bankruptcy Court"). (Obj. ¶ 20; *see id.* Ex. 5.) The Texas Bankruptcy Court confirmed Eboweme's chapter 13 plan on July 2, 2009. (Obj. ¶ 21; *see id.* Ex. 6.) After Eboweme failed to make the March through July 2009 payments on the Loan, (*see id.* Ex. 7 at 4, 11), Bank of America, National Association, as successor by merger to LaSalle ("BOA"), filed two motions for relief from the automatic stay to proceed with foreclosure.[7] (*See* Obj. ¶ 22). One motion was directed at Eboweme and the other motion was directed at a non-debtor co-borrower. (*See id.*)

On August 12, 2009, Eboweme sent GMACM a new loan modification workout package. (Priore Decl. ¶ 11; *see id.* Ex. 3-H.) GMACM denied the loan modification request on October 7, 2009 because Eboweme had insufficient income. (*See id.* ¶ 12; *id.* Ex. 3-I.)

For unexplained reasons, the bankruptcy court did not hear BOA's two motions for relief from the automatic stay until August 30, 2010. (*See* Obj. Exs. 8-A, 8-B.) The court granted BOA's motion to lift the automatic stay against Eboweme's co-borrower on September 30, 2010 (Obj. ¶ 22; *see id.* Ex. 8-A), and against Eboweme on February 14, 2011 (Obj. ¶ 23; *see id.* Ex. 8-B).

On March 7, 2011, GMACM sent Eboweme a demand letter (the "Demand Letter," Priore Decl. Ex. 3-J), asserting that she failed to make timely Loan payments from September 2008 through March 2011 and demanding the outstanding amount of $39,346.75. (Priore Decl.

---

[7]    BOA had standing to foreclose by virtue of its ownership of the Note as successor by merger to LaSalle. (*See* Obj. Ex. 7 at 4, 11.)

¶ 13.)  MERS, as nominee for Aegis and its successors and assigns, executed an assignment of

deed of trust in favor of BOA on June 14, 2011 (the "BOA Assignment," Priore Decl. Ex. 3-K).[8]

(Priore Decl. ¶ 14.)  On August 16, 2011, Eboweme was sent a notice of sale scheduling a

foreclosure sale on September 6, 2011 (the "Notice of Sale," *id.* Ex. 3-L).[9]  (Priore Decl. ¶ 15.)

The Property was sold at the foreclosure sale on September 6, 2011, and the foreclosure deed in

favor of BOA was recorded on October 18, 2011.  (*See id.* Ex. 3-M.)  According to the Trust,

Eboweme remains in possession of the Property.  (Priore Decl. ¶ 15.)

### B.    Eboweme's Wrongful Foreclosure Action

Eboweme filed an action against GMACM and other non-debtor defendants in federal

court in Texas on June 29, 2011.  (Patterson Decl. ¶ 10.)  She voluntarily dismissed the federal

action on September 29, 2011.  (*Id.*; *see id.* Ex. 4-F.)  On March 6, 2012, Eboweme filed a

petition in Texas state court (the "Petition," Patterson Decl. Ex. 4-A) naming GMACM, BOA,

and other defendants.  (*See id.*)  The state court action was based on substantially the same

allegations underlying the federal action and asserted the same causes of action.  (*Id.* ¶¶ 4, 10.)

Specifically, the Petition asserted causes of action for (i) wrongful foreclosure; (ii) intentional

infliction of emotional distress ("IIED"); (iii) violations of the automatic stay; (iv) violations of

RESPA; (vi) violations of the TDCPA; and (vii) violations of the TDTPA.  (*Id.*)  After GMACM

filed its bankruptcy petition in May 2012, the automatic stay prevented the state court action

from proceeding against GMACM, but the non-debtor defendants moved for summary judgment

---

[8]        The BOA Assignment was recorded on June 27, 2011.  (*See id.*)

[9]        The Notice of Sale identified GMACM as the mortgage servicer for BOA, as the mortgagee.  (*See id.*)  The
Notice of Sale also identified the substitute trustee as Debtor Executive Trustee Services, LLC ("ETS").  (*See id.*)

on April 4, 2013.[10]  (*See id.* ¶ 5.)  The Texas state court action remains pending against the non-

debtor defendants.  (*Id.* ¶ 9.)  As explained below, the potpourri of claims that Eboweme has

asserted against GMACM fail to state any claims on which relief may be granted.

### C.    The Claim

Eboweme timely filed her Claim against GMACM on November 5, 2012.  (Obj. ¶ 35.)

Her proof of claim asserts a secured claim in the amount of $3 million and an administrative

expense claim pursuant to section 503(b)(9) in the amount of $3 million plus the value of the

Property, which is listed as $130,000.  (*See id.*; *id.* Ex. 1.)  The asserted basis for the Claim is

"fraudulent loan, wrongful[] foreclosure, [and] fraudulent interest rate."  (*Id.* Ex. 1.)

The Debtors sent Eboweme a letter requesting additional information in support of the

Claim (the "Request Letter"), which she responded to on June 21, 2013.  (*Id.* ¶ 38.)  In a letter

attached to her response, she asserts that GMACM and non-debtors collectively pursued a

wrongful foreclosure in violation of provisions of the TDCPA.  (*Id.*)  Eboweme claims the

foreclosure violated the automatic stay in her bankruptcy cases.  (*Id.*)  Eboweme asserts that her

Loan was made on terms she wanted to modify, but GMACM would not assent to the

modification.  (*Id.*)  She alleges that GMACM pre-approved a loan modification in October

2008, which, she claims, she paid on time and in full.  (*Id.*)  She further alleges that she had no

notice of the foreclosure and that the Debtors violated RESPA by not providing her "the

mortgage servicing agreement" she requested.  (*Id.*)  Eboweme attaches several documents to her

Request Letter response, including (i) an unexecuted adjustable rate loan modification

agreement; (ii) a copy of the order granting BOA's motion for relief from the automatic stay as

---

[10]       According to the Trust, the summary judgment motion was scheduled to be heard on January 30, 2015; it is
not clear whether the Texas state court has decided the motion as of the date of this Opinion.

to Eboweme; and (iii) a copy of a letter she received in connection with the consent order entered

with the Board of Governors of the Federal Reserve System (the "FRB"), the Federal Deposit

Insurance Corporation, certain of the Debtors, including GMACM, and non-debtor affiliates Ally

Financial Inc. and Ally Bank.  (*Id.*)

### D.   The Objection

The Trust argues that each of the causes of action asserted against GMACM fails as a

matter of law.  The Trust also argues that Eboweme has not provided any documents supporting

the merits of her allegations; nor has she explained why such documents are not available.  (Obj.

¶¶ 48–49.)  The Trust contends the wrongful foreclosure claim fails because no "wrongful act"

resulted in the Loan or in the Debtors' foreclosure of the Property: Eboweme was provided

several loss mitigation opportunities; she was given proper notices of the foreclosure actions; and

the foreclosure did not violate the automatic stay in her bankruptcy cases.  The Trust also argues

that Eboweme fails to show how she was damaged in any way by GMACM.[11]  (*Id.* ¶¶ 50–53.)

The Trust argues that each of Eboweme's claims fails to state any plausible claim for

relief.  The RESPA claim fails to allege any actionable wrong and the claim would, in any event,

be time-barred.  (*Id.* ¶ 58.)  The IIED claim fails to allege the required element of extreme and

outrageous conduct, as the Debtors only took normal actions associated with the foreclosure

process.  (*Id.* ¶ 59–60.)  The TDCPA claim fails for several reasons: Eboweme has not

sufficiently alleged that GMACM made any misleading assertions, even if GMACM was a debt

collector within the meaning of the TDCPA, a point the Trust does not concede (*id.* ¶¶ 61–62);

---

[11]     The Objection is **SUSTAINED** to the extent Eboweme's Claim is premised on GMACM's alleged
violation of the automatic stay.  Eboweme has not specifically alleged that GMACM, or any other Debtor, took any
action in violation of the automatic stay during Eboweme's Chapter 13 Case.  The Demand Letter was not sent to
Eboweme until after the automatic stay was lifted as to both Eboweme and her co-borrower.

she did not adequately allege that GMACM threatened to take any action prohibited by the

TDCPA when collecting a debt (*id.* ¶ 63); and her claim arises out of a loan and does not involve

the purchase or lease of a good or service (*id.* ¶ 64).  Eboweme has no claim to be made whole

under the FRB Consent Order (*id.* ¶¶ 65–68); she received $500 from the Debtors' foreclosure

review process; the Debtors' complied with their obligations under the FRB settlement and owe

nothing further to Eboweme (*id.* ¶ 68).[12]  Finally, Eboweme fails to plead factual allegations

supporting a fraud claim against GMACM, particularly in light of the heightened pleading

standard of Federal Rule of Civil Procedure ("FRCP") 9(b).  (*Id.* ¶¶ 54–56.)

###### E.    The Opposition

Eboweme asserts that she lives in Texas and cannot come to the Court in New York.

(Opp. at 1.)  She objects to ResCap and Ocwen filing a motion against her, asserting that the two

entities are "working together and still committing fraud."  (*Id.*)  She also asserts that she "did

not get a copy of what was objected to."  (*Id.*)  Eboweme states that BOA committed fraud, as

admitted to Attorney General Holder, and was required to pay a large fine.  (*Id.* at 1–3.)  Finally,

Eboweme asserts that "[she] ha[s] nothing to do with Ocwen or ResCap, so they should not be in

[her] case with BOA."  (*Id.* at 3.)

## II.    DISCUSSION

### A.    Claims Objections

Correctly filed proofs of claim "constitute prima facie evidence of the validity and

amount of the claim . . . .  To overcome this prima facie evidence, an objecting party must come

forth with evidence which, if believed, would refute at least one of the allegations essential to the

---

[12]        The Objection is **SUSTAINED** to the extent Eboweme seeks payment from any Debtor based on the FRB settlement.  *See In re Residential Capital, LLC*, 517 B.R. 462, 477 (Bankr. S.D.N.Y. 2014) (holding that any amount a borrower received under Debtors' settlement with the FRB "does not indicate or represent any determination or acknowledgement by the Debtors that" the borrower's claim has merit).

claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). By

producing "evidence equal in force to the prima facie case," an objector can negate a claim's

presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a

preponderance of the evidence that under applicable law the claim should be allowed." *Creamer

v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS),

2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted). If the

objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of

its amount, the claimant need offer no further proof of the merits of the claim." 4 Collier on

Bankruptcy ¶ 502.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if

"unenforceable against the debtor and property of the debtor, under any agreement or applicable

law." 11 U.S.C. § 502(b)(1). To determine whether a claim is allowable by law, bankruptcy

courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674

(Bankr. D. Del. 2006).

Federal pleading standards apply when assessing the validity of a proof of claim. *See,

e.g.*, *In re Residential Capital, LLC*, 518 B.R. 720, 731 (Bankr. S.D.N.Y. 2014); *In re DJK

Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party

has met their burden in connection with a proof of claim, bankruptcy courts have looked to the

pleading requirements set forth in the Federal Rules of Civil Procedure." (citations omitted)).

Accordingly, a claimant must allege "enough facts to state a claim for relief that is plausible on

its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Where a complaint pleads facts that are merely

consistent with a defendant's liability, it stops short of the line between possibility and

9

plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and internal quotation

marks omitted). Plausibility "is not akin to a probability requirement," but rather requires "more

than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation and internal

quotation marks omitted). The court must accept all factual allegations as true, discounting legal

conclusions clothed in factual garb. *See, e.g.*, *id.* at 677–78; *Kiobel v. Royal Dutch Petroleum

Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded,

nonconclusory factual allegations in the complaint to be true" (citing *Iqbal*, 556 U.S. at 678)).

The court must then determine if these well-pleaded factual allegations state a "plausible claim

for relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task

that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

(citation omitted). A claim is plausible when the factual allegations permit "the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation

omitted). A claim that pleads only facts that are "merely consistent with a defendant's liability"

does not meet the plausibility requirement. *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 557 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of

the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal

quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." *Id.* (citation omitted). "The pleadings must

create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l

Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

To support claims grounded in fraud, FRCP 9(b) requires the claimant to "state with

particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). FRCP 9(b)

is grounded in the purpose "to protect the defending party's reputation, to discourage meritless

accusations, and to provide detailed notice of fraud claims to defending parties." *Silverman v.*

*Arctrade Capital, Inc. (In re Arctrade Fin. Techs. Ltd.)*, 337 B.R. 791, 801 (Bankr. S.D.N.Y.

2005) (internal quotation marks and citation omitted).

Although "[claims] drafted by *pro se* [claimants] are to be construed liberally, [] they

must nonetheless be supported by specific and detailed factual allegations sufficient to provide

the court and the defendant with 'a fair understanding of what the [claimant] is complaining

about and . . . whether there is a legal basis for recovery.'" *Kimber v. GMAC Mortg., LLC (In re*

*Residential Capital, LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (ellipsis in original)

(quoting *Iwachiw v. N.Y.C. Bd. of Elections*, 126 F. App'x 27, 29 (2d Cir. 2005)).

### B.    Wrongful Foreclosure

"Under Texas law, a wrongful foreclosure claim ordinarily requires a showing of (i) a

defect in the foreclosure sale proceedings; (ii) a grossly inadequate selling price; and (iii) a

causal connection between the defect and the grossly inadequate selling price." *Miller v. BAC*

*Home Loans Servicing, L.P.*, 726 F.3d 717, 726 (5th Cir. 2013) (citation omitted); *accord Fowler*

*v. U.S. Bank, Nat'l Ass'n*, 2 F. Supp. 3d 965, 967 (S.D. Tex. 2014); *Miller v. CitiMortgage, Inc.*,

970 F. Supp. 2d 568, 591 (N.D. Tex. 2013) (citing *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d

135, 139 (Tex. Ct. App. 2009)).  "The latter two elements need not be shown if the borrower

instead establishes that the lender deliberately chilled the bidding at the foreclosure sale."

*Waltner v. Aurora Loan Servs., L.L.C.*, 551 F. App'x 741, 749 (5th Cir. 2013) (citations omitted).

In the Petition she filed in Texas state court, Eboweme states:

> The Defendants foreclosure action was wrongful.  The Deed of
> Trust is not enforceable due to the lack of ownership in the note by
> the Defendants and if such lawful owner of the indebtedness was
> to prove up a proper Note, bifurcation of the [N]ote and security

11

> instrument has been proved by an assignment of the mortgage by
> an intrusive non-party that was not [a] "Holder in Due Course."

(Patterson Decl. Ex. 4-A at 10–11.)  Eboweme also asserts that (i) the foreclosure sale occurred

when she was in bankruptcy and paying GMACM (*id.* at 6); (ii) ownership of the Note and Deed

of Trust was not properly documented (*id.*); and (iii) she "did not know when [her] house was

really foreclosed" (*id.* at 8–9).

First, the Trust submitted evidence establishing that BOA had standing to foreclose, and

Eboweme has not submitted any evidence to the contrary.  "Under the Texas Property Code, the

only party with standing to initiate a non-judicial foreclosure sale is the mortgagee, or the

mortgage servicer acting on behalf of the current mortgagee." *Miller v. Homecomings Fin.,

LLC*, 881 F. Supp. 2d 825, 828–29 (S.D. Tex. 2012).  The Texas Property Code defines a

"mortgagee" as "(A) the grantee, beneficiary, owner, or holder of a security instrument; (B) a

book entry system; or (C) if the security interest has been assigned of record, the last person to

whom the security interest has been assigned of record."  TEX. PROP. CODE ANN. § 51.0001(4)

(West 2007).  Under Texas law, when a note secured by a mortgage is transferred, "the mortgage

or deed of trust is also automatically transferred to the note holder by virtue of the common-law

rule that 'the mortgage follows the note.'" *Santiago v. Novastar Mortg., Inc.*, 443 S.W.3d 462,

478 (Tex. Ct. App. 2014) (quoting *Henning v. OneWest Bank FSB*, 405 S.W.3d 950, 958 (Tex.

Ct. App. 2013)); *accord Nguyen v. Fed. Nat'l Mortg. Ass'n*, 958 F. Supp. 2d 781, 794 (S.D. Tex.

2013) (citation omitted).  "In order to enforce the note as a holder, a party who is not the original

lender must prove 'successive transfers of possession and indorsement' establishing an

'unbroken chain of title.'" *Miller*, 881 F. Supp. 2d at 829 (quoting *Leavings v. Mills*, 175

S.W.3d 301, 310 (Tex. Ct. App. 2004)).  A "holder" is defined in relevant part as "the person in

possession of a negotiable instrument that is payable either to bearer or to an identified person

12

that is the person in possession . . . ." TEX. BUS. & COM. CODE ANN. § 1-201(21)(A) (West 2005).

The Note bears endorsements from Aegis to RFC and from RFC to JPM. (*See* Priore Decl. Ex. 3-A.) The Note was subsequently endorsed by allonge from BONY, as successor to JPM, to RFC. (*See id.*) RFC endorsed the Note by separate allonge to itself (*see id.*), then RFC endorsed the Note to LaSalle (*see id.*). BOA is the corporate successor to LaSalle because of a corporate merger. (*See* Patterson Decl. Ex. 4-B, Ex. F.) Accordingly, BOA had standing to foreclose as mortgagee by virtue of its status as a holder of the Note.[13] Furthermore, GMACM had standing to foreclose as the mortgage servicer acting on behalf of BOA, as the mortgagee. *See Miller*, 881 F. Supp. 2d at 828–29; *see also* TEX. PROP. CODE ANN. § 51.000 ("'Mortgage servicer' means the last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt secured by a security instrument."). Section 51.0025 of the Texas Property Code provides that

> A mortgage servicer may administer the foreclosure of property under Section 51.002 on behalf of a mortgagee if:
>
> (1) the mortgage servicer and the mortgagee have entered into an agreement granting the current mortgage servicer authority to service the mortgage; and
>
> (2) the notices required under Section 51.002(b) disclose that the mortgage servicer is representing the mortgagee under a servicing agreement with the mortgagee and the name of the mortgagee and:
>
> > (A) the address of the mortgagee; or

---

[13]    Additionally, BOA had standing to foreclose as a mortgagee by virtue of being "the last person to whom the security interest has been assigned of record." TEX. PROP. CODE ANN. § 51.0001(4). MERS, as nominee for Aegis and its successors and assigns, assigned BOA the Deed of Trust on June 14, 2011 via the BOA Assignment. (*See* Priore Decl. Ex. 3-K.) The BOA Assignment was recorded in the Tarrant County Property Records on June 27, 2011. (*See id.*)

> (B) the address of the mortgage servicer, if there is an
> agreement granting a mortgage servicer the authority to
> service the mortgage.

*Id.* § 51.0025 (West 2005).

Second, the Trust submitted evidence establishing that (i) Eboweme was in default under the terms of her Loan (*see* Priore Decl. Exs. 3-C, 3-D, 3-J); (ii) Homecomings and GMACM sent Eboweme numerous notices of default indicating her options for curing default and the consequences of not doing so (*see id.*; *see also* Priore Decl. ¶¶ 6, 13); (iii) GMACM engaged in unsuccessful loss mitigation efforts with Eboweme (*see id.* Exs. 3-E, 3-F, 3-G, 3-H, 3-I); (iv) GMACM mailed a Demand Letter to Eboweme on March 7, 2011, requesting payment of outstanding amounts due on her Loan and indicating that the Loan balance would be accelerated if she failed to pay such amounts within 30 days (*see id.* Ex. 3-J; *see also* Priore Decl. ¶ 13); and (v) the Notice of Sale was sent to her on August 16, 2011, scheduling the foreclosure sale for September 6, 2011 (*see id.* Ex. 3-L; *see also* Priore Decl. ¶ 15).

Section 51.002(a) of the Texas Property Code provides in relevant part that "[a] sale of real property under a power of sale conferred by a deed of trust or other contract lien must be a public sale at auction held between 10 a.m. and 4 p.m. of the first Tuesday of a month." TEX. PROP. CODE ANN. § 51.002(a) (West 2013).  The Texas Property Code sets forth certain notice requirements in connection with a foreclosure sale.  Section 51.002(b) provides:

> Except as provided by Subsection (b-1), notice of the sale, which
> must include a statement of the earliest time at which the sale will
> begin, must be given at least 21 days before the date of the sale by:
>
> > (1) posting at the courthouse door of each county in which the
> > property is located a written notice designating the county in
> > which the property will be sold;

> (2) filing in the office of the county clerk of each county in which the property is located a copy of the notice posted under Subdivision (1); and
>
> (3) serving written notice of the sale by certified mail on each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt.[14]

*Id.* § 51.002(b).  This notice of sale must identify the name and street address for the trustee or substitute trustee.  *Id.* § 51.0075(e) (West 2009).  Additionally, under section 51.002(d), "the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b)."  *Id.* § 51.002(d) (West 2013).  A trustee under a deed of trust has a duty to strictly comply with the notice and sale provisions of Texas Property Code section 51.002.  *See Marsh v. Wells Fargo Bank, N.A.*, 760 F. Supp. 2d 701, 708 (N.D. Tex. 2011) (citations omitted).  While breach of this duty does not give rise to an independent tort, it "may be stated under Texas law as a claim for wrongful foreclosure."  *Id.* (emphasis omitted) (citation and internal quotation marks omitted).

First, the Demand Letter facially satisfies the requirements of section 51.002(d) of the Texas Property Code.  The Demand Letter provides that the amount due under the Loan would be accelerated if Eboweme did not cure her default within 30 days.  (*See* Priore Decl. Ex. 3-J.)

---

[14]    Subsection (b-1) of section 51.002 provides that "[i]f the courthouse or county clerk's office is closed because of inclement weather, natural disaster, or other act of God, a notice required to be posted at the courthouse under Subsection (b)(1) or filed with the county clerk under Subsection (b)(2) may be posted or filed, as appropriate, up to 48 hours after the courthouse or county clerk's office reopens for business, as applicable."  *Id.* § 51.002(b-1).

Additionally, the Trust submits that the Demand Letter was sent to Eboweme on March 7, 2011, (*see* Priore Decl. ¶ 16), and Eboweme has not submitted any evidence to the contrary.[15]

Second, the Notice of Sale (i) identifies GMACM as the mortgage servicer for BOA, as mortgagee, and provides GMACM's address; (ii) identifies ETS as the substitute trustee and provides ETS's address; (iii) specifies the location of the foreclosure sale as the "base of the Courthouse steps on the East side of the building"; and (iv) schedules the foreclosure sale for September 6, 2011, the first Tuesday of the month, at 10:00 a.m. but no later than three hours thereafter. (*See id.* Ex. 3-L.) Additionally, the Trust submits that the Notice of Sale was sent to Eboweme on August 16, 2011, exactly 21 days before the foreclosure sale was scheduled to take place. (*See* Priore Decl. ¶ 15.) However, the Trust has not submitted evidence of the appointment of ETS as substitute trustee of the Deed of Trust, nor has it explained when ETS was appointed as substitute trustee.[16] Accordingly, the Court cannot determine whether the Notice of Sale was defective by identifying ETS as the substitute trustee. *See* TEX. PROP. CODE ANN. § 51.0075(e).

Notwithstanding this question of fact regarding irregularities in the Notice of Sale, Eboweme fails to state a claim for wrongful foreclosure. *See Pelayo v. Wells Fargo Bank, N.A.*, No. SA-13-CV-1019 (DAE), 2014 WL 3513207, at *4 (W.D. Tex. July 14, 2014) ("In any event, even if substituting the trustee did constitute a defect in the foreclosure proceedings, Plaintiffs still fail to state a claim for wrongful foreclosure because they do not allege any facts to support the second and third elements of a wrongful foreclosure claim, namely a grossly inadequate

---

[15]    "The affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service." TEX. PROP. CODE. ANN. § 51.002(e).

[16]    While a mortgage servicer may appoint a substitute trustee "by power of attorney, corporate resolution, or other written instrument," TEX. PROP. CODE ANN. § 51.0075(d), the Trust has not submitted evidence of ETS's appointment as substitute trustee.

selling price and a causal connection between the defect and the grossly inadequate selling

price." (citation omitted)).  Eboweme has not alleged that a grossly inadequate selling price was

obtained at the foreclosure sale, let alone a causal connection between any alleged defect in the

foreclosure sale proceedings and a grossly inadequate selling price.  Nor has she alleged that the

lender, or any Debtor, deliberately chilled bidding at the foreclosure sale.  Accordingly, the

Objection is **SUSTAINED** as to Eboweme's wrongful foreclosure cause of action.[17]

### C.    RESPA

Eboweme has not sufficiently alleged a claim against GMACM for a violation of

RESPA.  Section 6(e) of RESPA provides:

> If any servicer of a federally related mortgage loan receives a
> qualified written request from the borrower (or an agent of the
> borrower) for information relating to the servicing of such loan, the
> servicer shall provide a written response acknowledging receipt of
> the correspondence within 5 days (excluding legal public holidays,
> Saturdays, and Sundays) unless the action requested is taken within
> such period.

12 U.S.C. § 2605(e)(1)(A) (2010).  A "qualified written request" ("QWR") is defined as

> a written correspondence, other than notice on a payment coupon
> or other payment medium supplied by the servicer, that—
>
> > (i) includes, or otherwise enables the servicer to identify, the
> > name and account of the borrower; and
> > (ii) includes a statement of the reasons for the belief of the
> > borrower, to the extent applicable, that the account is in error
> > or provides sufficient detail to the servicer regarding other
> > information sought by the borrower.

---

[17]    Additionally, it is not clear whether section 51.002 provides an independent right of action for damages.
*See, e.g., Ashton v. BAC Home Loans Servicing, L.P.*, Civil Action No. 4:13-cv-910 (NFA), 2013 WL 3807756, at
*4 (S.D. Tex. July 19, 2013) ("This Court has not found any cases that interpret section 51.002 to establish an
independent right of action for damages."); *Hill v. Wells Fargo Bank, N.A.*, Civil Action No. V-12-11 (JDR), 2012
WL 2065377, at *7 (S.D. Tex. June 6, 2012) (noting that the lack of "Texas precedent explicitly recognizing or
rejecting a right to recovery against a mortgagee based solely on a violation of § 51.002(d)").  "Rather, federal
courts have construed claims under section 51.002 to be wrongful foreclosure claims." *Ashton*, 2013 WL 3807756,
at *4 (citations omitted).

*Id.* § 2605(e)(1)(B).  Under section 6 of RESPA, a borrower may recover actual damages for a loan servicer's failure to respond to a qualified written response and additional damages "in the case of a pattern or practice of noncompliance."  *Id.* § 2605(f)(1).  "Thus, to state a claim for a RESPA violation in connection with a [QWR], a plaintiff must allege actual damages resulting from a violation of § 2605."  *Henderson v. Wells Fargo Bank, N.A.*, 974 F. Supp. 2d 993, 1017 (N.D. Tex. 2013) (alteration in original) (citations and internal quotation marks omitted).

In her Petition, Eboweme asserts that BOA violated RESPA by not providing her with a copy of the "Mortgage Service Agreement."  (Patterson Decl. Ex. 4-A at 9.)  However, she does not plead any facts that support a reasonable inference that GMACM, or any other Debtor, is liable for a violation of RESPA.  While she alleges that BOA failed to respond to her request for a copy of her "Mortgage Service Agreement," she has not asserted that she sent a QWR to any Debtor to which it failed to respond.  Accordingly, the Objection is **SUSTAINED** with respect to Eboweme's RESPA claim.

### D.    IIED

Eboweme has not stated a claim for IIED against GMACM.  Under Texas law, the elements of a claim for IIED are:  "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe."  *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995) (citing *Twyman v. Twyman*, 855 S.W.2d 619, 621–22 (Tex. 1993)).  "[L]iability for outrageous conduct should be found 'only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

intolerable in a civilized community.'" *Twyman*, 855 S.W.2d at 621 (quoting RESTATEMENT

(SECOND) OF TORTS § 46 cmt. d (1965)).

Ebowemeʼs Petition sets forth bare, conclusory allegations that the defendants in the state

court action are liable for IIED.   (*See* Patterson Decl. Ex. 4-A at 11 ("This wrongful foreclosure

upon my home, intentional or reckless[] engage [sic] in extreme and outrageous conduct to cause

me emotional distress.  The emotional distress that I suffered as a result of their conduct was

sever [sic]."). )  However, Eboweme does not make any factual allegations regarding how

GMACMʼs conduct was sufficiently "extreme or outrageous" or caused Eboweme suffered

severe emotional distress.  *Van Duzer v. U.S. Bank Natʼl Assʼn*, 582 F. Appʼx 279, 284 (5th Cir.

2014) (affirming dismissal of IEED claim where the defendants "failed to plead factual

allegations about which reasonable minds could differ in determining whether the defendantsʼ

conduct was 'extreme or outrageous'" or "facts indicating that they have suffered severe

emotional distress").  Accordingly, the Objection is **SUSTAINED** as to Ebowemeʼs IIED claim.

### E.    The TDCPA

In her Petition, Eboweme asserts that the state court action defendants foreclosed on her

Property in violation of the TDCPA, namely "Texas Finance Code Section[s] 392.30(8)[18] and

392.304 . . . ."  (Patterson Decl. Ex. 4-A at 6.)  Section 392.304 of the Texas Finance Code

provides that "in debt collection or obtaining information concerning a consumer, a debt

collector may not use a fraudulent, deceptive, or misleading representation that employs" certain

enumerated practices.  TEX. FIN. CODE. ANN. § 392.304(a) (West 2006).  Section 392.301(a)(8)

of the Texas Finance Code provides that "a debt collector may not use threats, coercion, or

---

[18]       There is no section 392.30(8) of the Texas Finance Code.  Since the only section of the TDCPA that has at
least eight subsections is section 392.301(a) of the Texas Finance Code, the Court presumes that Eboweme intended
to invoke this section.

attempts to coerce that employ . . . threatening to take an action prohibited by law." TEX. FIN.

CODE ANN. § 392.301(a)(8) (West 2006). "To violate the TDCPA using a misrepresentation, the

debt collector must have made an *affirmative statement* that was false or misleading." *Kruse v.*

*Bank of N.Y. Mellon*, 936 F. Supp. 2d 790, 792 (N.D. Tex. 2013) (emphasis in original) (citation

and internal quotation marks omitted). Eboweme has not identified any fraudulent, deceptive, or

misleading representation made by GMACM, or any Debtor. Nor has she alleged that any

Debtor threatened to take any action prohibited by law. Accordingly, the Objection is

**SUSTAINED** as to Eboweme's TDCPA claim.

### F.    The TDTPA

The elements of a claim under the TDTPA are: "(1) the plaintiff is a consumer, (2) the

defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a

producing cause of the consumer's damages." *Doe v. Boys Clubs of Greater Dall., Inc.*, 907

S.W.2d 472, 478 (Tex. 1995) (citing TEX. BUS. & COM. CODE § 17.50(a)(1)).

Eboweme's Petition arguably does not even reference the TDTPA; her only potential

invocation of the TDTPA is her assertion that the state court action defendants violated "other

various state laws." (Patterson Decl. Ex. 4-A at 6.) As a preliminary matter, these allegations

are conclusory at best and do not plead a claim under the TDTPA. Moreover, Eboweme cannot

state a claim under the TDTPA because she cannot show that she is a consumer within the

meaning of the statute. To qualify as a consumer under the TDTPA, a plaintiff must establish

that she is "an individual . . . who seeks or acquires by purchase or lease, any goods or services .

. . ." TEX. BUS & COM. CODE ANN. § 17.45(4) (West 2007). In general, loans of money or

extensions of credit are not considered goods or services that can form the basis of a TDTPA

claim. *Gomez v. Wells Fargo Bank, N.A.*, No. 3:10-CV-0381-B (JJB), 2010 WL 2900351, at *3

(N.D. Tex. 2010) (concluding that mortgagor who attempted to modify her home loan with

mortgagee to avoid repossession of her home was not a consumer under the TDTPA because she

was attempting to borrow money and not purchase a good or service); *see also Riverside Nat'l*

*Bank v. Lewis*, 603 S.W.2d 169, 175–76 (Tex. 1980) (holding that a party who "seeks only

money in a transaction is not a consumer" under the TDTPA); *Maginn v. Norwest*, 919 S.W.2d

164, 167 (Tex. Ct. App. 1996) (holding that a party was not a consumer under the TDTPA where

the purpose of the subject transaction was only to obtain a mortgage loan).  It is true that a party

who obtains a loan that is "inextricably intertwined" in the purchase or lease of a good or service

may qualify as a consumer.  *See Knight v. Int'l Harvester Credit Corp.*, 627 S.W.2d 382, 389

(Tex. 1982) (concluding that a bank customer qualified as a consumer because he sought

financing to purchase a dump truck).  But "[t]he determining factor is whether the purchase or

lease of a good or service was 'an objective of the transaction, not merely incidental to it.'"

*Gomez*, 2010 WL 2900351, at *3 (quoting *F.D.I.C. v. Munn*, 804 F.2d 860, 865 (5th Cir. 1986)).

 Eboweme used the Loan to purchase her *home*.  This does not qualify as a "good" or

"service" under the TDTPA.  *See, e.g.*, *Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 160 (Tex.

Ct. App. 2007) (concluding that the refinance of home equity loan cannot qualify as a good or a

service under the TDTPA); *Marketic v. U.S. Bank Nat'l Ass'n*, 436 F. Supp. 2d 842, 85 (N.D.

Tex. 2006) (concluding that a home equity loan is not a "good" or a "service" under the

TDTPA).  For all of the above reasons, the Court **SUSTAINS** the Objection to Eboweme's

TDTPA claim.

 **G. Fraud**

 To the extent Eboweme's Petition references fraud on the part of any Debtor, she fails to

state a claim for fraud.  "The elements of common law fraud in Texas are: (1) the defendant

21

made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused plaintiff injury." *Thompson v. Bank of Am., N.A.*, 13 F. Supp. 3d 636, 659 (N.D. Tex. 2014) (citing *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010)).

Eboweme has not sufficiently alleged a fraud claim.  She only makes the conclusory allegations in her Opposition that ResCap and Ocwen are working together to commit fraud. (Opp. at 1.)  In her Petition, she also makes the conclusory allegation that "GMAC[M's] claims are barred by terms of the loan fraudulent [sic] documents."  (Patterson Decl. Ex. 4-A at 9–10.) She does not provide enough factual allegations to satisfy the pleading standards of FRCP 8(a), let alone the heightened pleading standards for fraud claims required under FRCP 9(b). *See* FED. R. CIV. P. 9(b).  Accordingly, the Objection is **SUSTAINED** as to Eboweme's fraud claim.

### III.    <u>**CONCLUSION**</u>

For the reasons set forth above, the Objection is **SUSTAINED** in its entirety and the

Claim is **DISALLOWED** and **EXPUNGED**.

**IT IS SO ORDERED.**

Dated:    May 8, 2015
           New York, New York

*Martin Glenn*
_____
MARTIN GLENN
United States Bankruptcy Judge
