**Hearing Date and Time:  June 23, 2015 at 10:00 a.m. (Prevailing Eastern Time)**
**Response Date and Time:  June 8, 2015 at 4:00 p.m. (Prevailing Eastern Time)**

**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, New York 10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett

*Counsel for The ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------
                                                    )
In re:                                              )          Case No. 12-12020 (MG)
                                                    )
RESIDENTIAL CAPITAL, LLC, et al.,    )          Chapter 11
                                                    )
                              Debtors.          )          Jointly Administered
                                                    )
---------------------------------------------------------------

**NOTICE OF THE RESCAP BORROWER CLAIMS TRUST'S EIGHTY
SEVENTH OMNIBUS OBJECTION TO CLAIMS ((I) NO LIABILITY
BORROWER CLAIMS, (II) REDUCE AND ALLOW BORROWER CLAIM, AND
(III) REDESIGNATE, REDUCE AND ALLOW BORROWER CLAIM)**

   **PLEASE TAKE NOTICE** that the undersigned have filed the attached *ResCap*

*Borrower Claims Trust's Eighty-Seventh Omnibus Objection to Claims ((I) No Liability*

*Borrower Claims, (II) Reduce and Allow Borrower Claim, and (III) Redesignate, Reduce*

*and Allow Borrower Claim)* (the "Omnibus Objection"), which seeks to alter your rights

by disallowing your claim against the above-captioned Debtors.

   **PLEASE TAKE FURTHER NOTICE** that a hearing on the Omnibus Objection

will take place on **June 23, 2015 at 10:00 a.m. (Prevailing Eastern Time)** before the

Honorable Martin Glenn, at the United States Bankruptcy Court for the Southern District

of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408, Room 501.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Omnibus Objection must be made in writing, conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Notice, Case Management, and Administrative Procedures approved by the Bankruptcy Court [Docket No. 141], be filed electronically by registered users of the Bankruptcy Court's electronic case filing system, and be served, so as to be received no later than **June 8, 2015 at 4:00 p.m. (Prevailing Eastern Time)**, upon: (a) Chambers of the Honorable Martin Glenn, United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408; (b) counsel to the ResCap Borrower Claims Trust, Morrison & Foerster LLP, 250 West 55th Street, New York, NY 10019 (Attention: Norman S. Rosenbaum, Jordan A. Wishnew, and Jessica J. Arett); (c) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014 (Attention: Linda A. Riffkin and Brian S. Masumoto); (d) The ResCap Borrower Claims Trust, Polsinelli PC, 900 Third Avenue, 21st Floor, New York, NY 10022, (Attn: Daniel J. Flanigan) and (e) The ResCap Liquidating Trust, Quest Turnaround Advisors, 800 Westchester Avenue, Suite S-520, Rye Brook, NY 10573 (Attention: Jeffrey Brodsky).

**PLEASE TAKE FURTHER NOTICE** that if you do not timely file and serve a written response to the relief requested in the Omnibus Objection, the Bankruptcy Court may deem any opposition waived, treat the Omnibus Objection as conceded, and enter an

order granting the relief requested in the Omnibus Objection without further notice or

hearing.

Dated:  May 8, 2015
         New York, New York

                                        Respectfully Submitted,


                                        /s/ Norman S. Rosenbaum
                                        Norman S. Rosenbaum
                                        Jordan A. Wishnew
                                        Jessica J. Arett
                                        **MORRISON & FOERSTER LLP**
                                        250 West 55th Street
                                        New York, New York 10019
                                        Telephone:  (212) 468-8000
                                        Facsimile:  (212) 468-7900

                                        *Counsel for The ResCap Borrower*
                                        *Claims Trust*

**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, New York 10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett

*Counsel for The ResCap Borrower*
*Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------------ ) | | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| ------------------------------------------------------ ) | | |

**RESCAP BORROWER CLAIMS TRUST'S**
**EIGHTY-SEVENTH OMNIBUS OBJECTION TO CLAIMS**
**((I) NO LIABILITY BORROWER CLAIMS, (II) REDUCE AND ALLOW BORROWER**
**CLAIM, AND (III) REDESIGNATE, REDUCE AND ALLOW BORROWER CLAIM)**

---

**THIS OBJECTION SEEKS TO DISALLOW AND EXPUNGE OR MODIFY CERTAIN FILED PROOFS OF CLAIM.  CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES AND CLAIMS ON <u>EXHIBIT A</u>, <u>EXHIBIT B</u>, OR <u>EXHIBIT C</u> ATTACHED TO THE PROPOSED ORDER.**

**IF YOU HAVE QUESTIONS, PLEASE CONTACT THE RESCAP BORROWER CLAIMS TRUST'S COUNSEL, JORDAN A. WISHNEW, AT (212) 468-8000.**

---

# TABLE OF CONTENTS

**Page**

RELIEF REQUESTED ..........................................................................................................1

JURISDICTION .................................................................................................................3

BACKGROUND .................................................................................................................3

    General Case Background ...........................................................................................3

    Claims-related Background .........................................................................................4

THE NO LIABILITY BORROWER CLAIMS  SHOULD BE DISALLOWED AND
    EXPUNGED...........................................................................................................6

THE REDUCE AND ALLOW BORROWER CLAIM SHOULD BE MODIFIED...................16

THE REDESIGNATE, REDUCE AND ALLOW BORROWER CLAIM SHOULD BE
    MODIFIED.........................................................................................................16

NOTICE ...........................................................................................................................17

NO PRIOR REQUEST.......................................................................................................18

CONCLUSION ..................................................................................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Allen v. McCurry,
    449 U.S. 90 (1980) .................................................................................................. 12

Bremer v. Weeks,
    85 P.3d 150 (Haw. 2004) ...................................................................................... 12

Browning Mfg. v. Mims (In re Coastal Plains, Inc.),
    179 F.3d 197 (5th Cir. 1999) ................................................................................. 13

Burgos v. Hopkins,
    14 F.3d 787 (2d. Cir. 1994) ................................................................................... 12

Burka v. N.Y.C. Transit Auth.,
    32 F.3d 654 (2d. Cir. 1994) ................................................................................... 12

Chartschlaa v. Nationwide Mut. Ins. Co.,
    538 F.3d 116 (2d Cir. 2008) .................................................................................. 13

In re Adelphia Commc'ns Corp.,
    Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660 (Bankr. S.D.N.Y. Feb. 20, 2007) .......... 7

In re Best Payphones, Inc.,
    Case No. 01-15472 (SMB), 2002 WL 31767796 (Bankr. S.D.N.Y. Dec. 11, 2002) .............. 15

In re Oneida Ltd.,
    400 B.R. 384 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co. v.
    Oneida Ltd., No. 09-cv-2229 (DC), 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan 22,
    2010) ........................................................................................................................ 7

In re Rockefeller Ctr. Props.,
    272 B.R. 524 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v. Rockefeller Ctr. Props
    (In re Rockefeller Ctr. Props), 226 B.R. 52 (S.D.N.Y. 2001), aff'd sub nom., 46 Fed.
    Appx. 40 (2d Cir. 2002) ......................................................................................... 7

In re Worldcom, Inc.,
    Case No. 02-13533AJG, 2005 WL 3875191 (Bankr. S.D.N.Y. June 3, 2005) ...................... 14

Kremer v. Chem. Constr. Corp.,
    456 U.S. 461 (1982) .............................................................................................. 12

New Hampshire v. Maine,
    532 U.S. 742 (2001) .............................................................................................. 13

ny-1186481

# TABLE OF AUTHORITIES
(continued)

Page(s)

New York v. Sokol (In re Sokol),
    113 F.3d 303 (2d Cir. 1997) ................................................................................. 12

Ohio Dep't of Human Servs. v. Kozar,
    651 N.E. 2d 1039 (Ohio Ct. App. 1995) ............................................................... 12

Rosenshein v. Kleban,
    918 F. Supp. 98 (S.D.N.Y. 1996) ......................................................................... 13

Taylor v. Sturgell,
    553 U.S. 880 (2008) .............................................................................................. 12

Ticor Title Co. v. Stanion,
    157 P.3d 613 (Idaho 2007) .................................................................................... 12

## STATUTES

11 U.S.C. § 501(a) ........................................................................................................ 7

11 U.S.C. § 502(b)(1) ............................................................................................ 7, 14

11 U.S.C. § 521(1) ...................................................................................................... 13

11 U.S.C. § 1306 ......................................................................................................... 13

11 U.S.C. § 521(a)(1)(B)(i) ........................................................................................ 13

11 U.S.C. § 521(a)(1)(B)(iii) ..................................................................................... 13

28 U.S.C. § 1738 ......................................................................................................... 12

## OTHER AUTHORITIES

Bankruptcy Rule 3007(d) ........................................................................................ 5, 14

4 COLLIER ON BANKRUPTCY ¶ 502.02[3][f] (Alan N. Resnick & Henry J. Sommer
    eds., 16th ed. rev. 2015) ......................................................................................... 7

iii

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the Chapter 11 plan confirmed in the above captioned bankruptcy cases (the "Chapter 11 Cases"), as successor in interest to the above-captioned debtors (collectively, the "Debtors") with respect to Borrower Claim (defined below) matters, by and through its undersigned counsel, respectfully represents:

## RELIEF REQUESTED

1.      The Borrower Trust files this eighty-seventh omnibus objection to claims (the "Objection") pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and this Court's order approving procedures for the filing of omnibus objections to proofs of claim filed in these Chapter 11 Cases (the "Procedures Order") [Docket No. 3294], and seeks entry of an order (the "Proposed Order"), in a form substantially similar to that attached hereto as Exhibit 1, to disallow and expunge the claims listed on Exhibit A annexed to the Proposed Order and modify, as indicated on the respective exhibits, those claims listed on Exhibit B and Exhibit C[1] to the Proposed Order.  In support of this Objection, the Borrower Trust submits the Declaration of Kathy Priore, Associate Counsel for the ResCap Liquidating Trust (the "Priore Declaration," attached hereto as Exhibit 2), and the Declaration of Norman S. Rosenbaum of Morrison & Foerster LLP, counsel to the Borrower Trust (the "Rosenbaum Declaration," attached hereto as Exhibit 3).

2.      The Borrower Trust examined the proofs of claim identified on Exhibit A to the Proposed Order and determined that those proofs of claim (collectively, the "No Liability

---

[1] Claims listed on Exhibit A, Exhibit B, and Exhibit C are reflected in the same manner as they appear on the claims register maintained by KCC (defined herein).

ny-1186481

Borrower Claims") are not liabilities of the Debtors.  This determination was made after the

holders of the No Liability Borrower Claims were given an opportunity under the Procedures

Order to supply additional documentation to substantiate their respective claims.  Accordingly,

the Borrower Trust seeks entry of the Proposed Order disallowing and expunging the No

Liability Borrower Claims from the Claims Register.

3.    The Borrower Trust also examined the proof of claim identified on Exhibit

B to the Proposed Order and determined that the proof of claim listed thereon (the "Reduce and

Allow Borrower Claim") was filed in a greater amount than the amount for which the Debtors'

estates are liable under the terms of the Plan (defined herein).   The Borrower Trust seeks to

modify the Reduce and Allow Claim to the amount listed under "Modified Claim Amount" on

Exhibit B.

4.    The Borrower Trust also examined the proof of claim identified on Exhibit

C to the Proposed Order and determined that the proof of claim listed thereon (the "Redesignate,

Reduce and Allow Claim) was filed against the incorrect debtor in an amount that is greater than

the actual amount for which the Debtors' estates are liable.  The Borrower Trust seeks to (a)

modify the Redesignate, Reduce and Allow Claim by reducing it to the corresponding amount

set forth under the heading "Modified Claim Amount" on Exhibit C and (b) allow the

Redesignate, Reduce and Allow Claim against the Corresponding Debtor set forth under the

heading "Modified Debtor Name" on Exhibit C only to the extent of such modified amount.

5.    The proofs of claim identified on Exhibit A, Exhibit B, and Exhibit C

annexed to the Proposed Order solely relate to claims filed by current or former borrowers

(collectively, the "Borrower Claims" and each a "Borrower Claim").  As used herein, the term

"Borrower" means a person who is or was a mortgagor under a mortgage loan originated, serviced, and/or purchased or sold by one or more of the Debtors.[2]

6.      The Borrower Trust expressly reserves all rights to object on any other basis to any No Liability Borrower Claim or Reduce and Allow Borrower Claim as to which the Court does not grant the relief requested herein.

## JURISDICTION

7.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

*General Case Background*

8.      On April 11, 2012, the Office of the Comptroller of the Currency and the Federal Reserve issued an order (the "Consent Order") against the Debtors and other non-debtor servicers whereby, among other things, borrowers with foreclosure files within a two-year period from 2009 and 2010 were eligible to receive certain cash payments.

9.      On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code.  These Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

10.     On May 16, 2012, the United States Trustee for the Southern District of New York appointed a nine member official committee of unsecured creditors [Docket No. 102] (the "Creditors' Committee").

11.     On December 11, 2013, the Court entered the Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official

---

[2] The terms "Borrower" and "Borrower Claims" are identical to those utilized in the Procedures Order [Docket No. 3294].

ny-1186481

Committee of Unsecured Creditors (the "Confirmation Order") approving the terms of the Chapter 11 plan, as amended (the "Plan"), filed in these Chapter 11 Cases [Docket No. 6065]. On December 17, 2013, the effective date of the Plan occurred, and, among other things, the Borrower Trust was established [Docket No. 6137].

12.    The Plan provides for the creation and implementation of the Borrower Trust, which is established for the benefit of Borrowers who filed Borrower Claims to the extent such claims are ultimately allowed either through settlement with the Borrower Claims Trustee or pursuant to an Order of the Court.  See Plan, at Art. IV.F.  The Borrower Trust was established to, among other things, "(i) direct the processing, liquidation and payment of the Allowed Borrower Claims in accordance with the Plan, and the distribution procedures established under the Borrower Claims Trust Agreement, and (ii) preserve, hold, and manage the assets of the Borrower Claims Trust for use in satisfying Allowed Borrower Claims."  See id.

13.    In particular, the Plan provides that "If any Borrower Claim constitutes, in whole or in part, a Consent Order Borrower Claim, the Allowed amount of such Borrower Claim shall be reduced to the extent paid pursuant to the Consent Order or any settlement of the Debtors' obligations thereunder, without further order of the Bankruptcy Court."  See Plan, at Art. IV.F.6. The Plan defines "Consent Order Borrower Claims" as claims held by Borrowers arising from foreclosure actions that were pending at the time during the two-year window defined in the Consent Order.  See Plan, at Art. I.A.65.

*Claims-related Background*

14.    On May 16, 2012, the Court entered an order [Docket No. 96] appointing Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in these Chapter 11 Cases.   Among other things, KCC is authorized to (a) receive, maintain, and record and

4

otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain the official claims register for the Debtors (the "Claims Register").

15.    On August 29, 2012, this Court entered an order approving the Debtors' motion to establish procedures for filing proofs of claim in the Chapter 11 Cases [Docket No. 1309] (the "Bar Date Order"). The Bar Date Order established, among other things, (i) November 9, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline to file proofs of claim by virtually all creditors against the Debtors (the "General Bar Date") and prescribing the form and manner for filing proofs of claim; and (ii) November 30, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline for governmental units to file proofs of claim (the "Governmental Bar Date"). Bar Date Order ¶¶ 2, 3. On November 7, 2012, the Court entered an order extending the General Bar Date to November 16, 2012 at 5:00 p.m. (Prevailing Eastern Time) [Docket No. 2093]. The Governmental Bar Date was not extended.

16.    On March 21, 2013, the Court entered the Procedures Order, which authorizes the Debtors to, among other things, file omnibus objections to no more than 150 claims at a time, on various grounds, including those set forth in Bankruptcy Rule 3007(d) and those additional grounds set forth in the Procedures Order. See Procedures Order at 2-3.

17.    The Procedures Order includes specific protections for Borrowers and sets forth a process for the Debtors or any successor in interest to follow before objecting to certain categories of Borrower Claims (the "Borrower Claim Procedures"). The Borrower Claim Procedures provide, *inter alia*, that prior to objecting to Borrower Claims filed with no or insufficient documentation, the Debtors must send each such Borrower claimant a letter

requesting additional documentation in support of the purported claim (the "Request Letter").

See Procedures Order at 4.[3]

18.     Beginning in May of 2013, the Debtors sent Request Letters, substantially

in the form as those attached as Exhibit 4, to all of the Borrowers except one[4] who filed the No

Liability Borrower Claims.  The Request Letters state that the claimant must respond within

thirty (30) days (the "Response Deadline") with an explanation that states the legal and factual

reasons why the claimant believes they are owed money or are entitled to other relief from the

Debtors and the claimant must provide copies of any and all documentation that the claimant

believes supports the basis for its claim.  See Request Letters at 1.  The Request Letters further

state that if the claimant does not provide the requested explanation and supporting

documentation within 30 days, then the Debtors may file a formal objection to the claimant's

claim, seeking to have the claim disallowed and permanently expunged.  Id.

19.     The Response Deadline has passed, and the Debtors and the Borrower

Trust either did not receive any response to the Request Letters or received insufficient

information to establish a basis for liability with respect to the applicable No Liability Borrower

Claims.  See Priore Declaration at ¶ 5.

## THE NO LIABILITY BORROWER CLAIMS
## SHOULD BE DISALLOWED AND EXPUNGED

20.     Based upon its review of the No Liability Borrower Claims identified on

Exhibit A annexed to the Proposed Order, the Borrower Trust determined that they do not

---

[3] If the Borrower Trust's objection to a Borrower Claim is premised on certain non-substantive grounds, including that the Borrower's proof of claim was redundant of another claim filed by the same Borrower or the claim was incorrectly classified, then the Borrower Trust is not required to send a Request Letter to such Borrower before filing an objection to such Borrower's Claim.  See Procedures Order at 3.
[4] The Debtors did not send a Request Letter to the holder of claim no. 2006 because the basis for the objection to this claim is that the claim has been paid and satisfied, and as a result, a request letter was not necessary under the Borrower Claims Procedures.  See Procedures Order at 3.

ny-1186481

represent valid prepetition claims against the Debtors and should be expunged.[5]    If the No

Liability Borrower Claims are not disallowed and expunged, then the parties who filed these

proofs of claim may receive a wholly improper recovery to the detriment of other Borrowers

who hold valid claims.  See Priore Declaration ¶ 15.

21.    Section 501(a) of the Bankruptcy Code provides that "[a] creditor . . . may

file a proof of claim."  11 U.S.C. § 501(a).  "The proof of claim, if filed in accordance with

section 501 and the pertinent Bankruptcy Rules, constitutes *prima facie* evidence of the validity

and amount of the claim under Federal Rule of Bankruptcy 3001(f) and Code section 502(a)."  4

COLLIER ON BANKRUPTCY ¶ 502.02[3][f] (Alan N. Resnick & Henry J. Sommer eds., 16th

ed. rev. 2015) (citation omitted).  Section 502(b)(1) of the Bankruptcy Code provides, in relevant

part, that a claim may not be allowed to the extent that "such a claim is unenforceable against the

debtor and property of the debtor, under any agreement or applicable law . . . ." 11 U.S.C. §

502(b)(1).

22.    If an objection refuting at least one of the claim's essential allegations is

asserted, however, the claimant has the burden to demonstrate the validity of the claim.  See In re

Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co. v.

Oneida Ltd., No. 09-cv-2229 (DC), 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan 22, 2010); In re

Adelphia Commc'ns Corp., Case  No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr.

S.D.N.Y. Feb. 20, 2007); In re Rockefeller Ctr. Props., 272 B.R. 524, 539 (Bankr. S.D.N.Y.

2000), aff'd sub nom., NBC v. Rockefeller Ctr. Props (In re Rockefeller Ctr. Props), 226 B.R. 52

(S.D.N.Y. 2001), aff'd sub nom., 46 Fed. Appx. 40 (2d Cir. 2002).

---

[5] Additionally, some of the No Liability Borrower Claims are asserted against Residential Capital, LLC
(specifically, claim nos. 354, 355, 1551, and 2006), but the correct Debtor for these claims is GMAC Mortgage,
LLC.  Because the Objection seeks to disallow and expunge these claims from the Claims Register, for the sake of
simplicity, the Objection does not seek to redesignate these claims.  However, should the Objection not be granted,
the Borrower Trust reserves the right to seek to redesignate these claims in a future Objection.

ny-1186481

23.    The Debtors and the Borrower Trust diligently analyzed the No Liability Borrower Claims and the allegations set forth therein and examined the Debtors' books and records in order to assess the alleged liabilities asserted.  <u>See</u> Priore Declaration at ¶¶ 5-7.  In addition, the Debtors sent Request Letters to those claimants who filed No Liability Borrower Claims with insufficient supporting documentation to allow such claimants to provide additional support for their claims.  The holders of the No Liability Borrower Claims that received Request Letters either failed to respond to the letters or failed to provide sufficient information to substantiate their claims.  <u>See id</u>. at ¶ 5.

24.    The Borrower Trust's specific factual and/or legal reason(s) for objecting to the allowance of each No Liability Borrower Claim is set forth on <u>Exhibit A</u> to the Proposed Order under the heading titled "*No Liability Summaries*."  In general, the Borrower Trust's objection to each No Liability Borrower Claim falls under one or more of the following ten categories:

(i)    ***General No Liability***.  This category includes claims:
- asserting that the Debtors' charged amounts higher than was stated on the Claimant's HUD-1 statement when this allegation is incorrect;
- seeking to enforce equitable claims against the Debtors such as quiet title or dismissal of a foreclosure, where the Debtors no longer hold an interest in the property;
- That otherwise do not constitute a valid obligation of the Debtors (collectively, the "<u>General No Liability Claims</u>").

To assess the validity of this claim, the Borrower Trust reviewed the Debtors' books and records, including (a) the claimant's transaction history showing the payments the claimant has made and the Debtors' application of those payments to principal, interest, fees, and escrows, as applicable (the "<u>Loan Payment History</u>"), (b) the Debtors' records tracking the history of the servicing of the claimant's loan, including but not limited to documenting instances of i) communication with the claimant, ii) letters and notices sent by the Debtors to the claimant, and iii) the Debtors' efforts to foreclose, conduct loss mitigation efforts, inspect properties, pay taxes and insurance on behalf of the claimant, and other standard servicing activity (collectively, the "<u>Internal Servicing Notes</u>"), and (c) other records as applicable.  <u>See</u> Priore Declaration at ¶ 8(i).  Based on its review, the Borrower Trust has determined that the Debtors are not liable for the General No Liability Claim.  <u>See id</u>.

8

To substantiate this determination, the Borrower Trust is prepared to provide the Court and each claimant whose claim is identified as a General No Liability Claim on <u>Exhibit A</u> to the Proposed Order, upon their respective request, with copies of one or more[6] of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:

- Loan Payment History;
- Internal Servicing Notes currently accessible to the Borrower Trust;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust; or
- Other documents that are relevant to the reconciliation of the claim.[7]

(ii) ***Origination Issues***.  This category includes claims based on loan origination issues, which include, without limitation, claims relating to disputes regarding the loan application and closing process, disclosures, loan terms, rights of rescission or a purportedly defective title exam.  To assess the validity of these claims (the "<u>Origination Issues Claims</u>"), the Borrower Trust reviewed the Debtors' books and records, including the claimants' executed mortgage notes, to determine whether any Debtor was involved in the origination of the applicable loans, and if so, if the claim would be barred by the applicable statute of limitations.  <u>See</u> Priore Declaration at ¶ 8(ii).

Based on its review of the Debtors' books and records and its review of applicable state and federal law, the Borrower Trust determined that the Debtors are not liable for the Origination Issues Claims because either (1) no Debtor entity was involved in the origination of the applicable loans and vicarious liability cannot be imputed to any Debtor in its capacity as servicer or assignee of the loans,[8] or (2) the claim is barred by the applicable statute of limitations  <u>See</u> <u>id</u>.

To substantiate this determination, the Borrower Trust is prepared to provide the Court and each claimant whose claim is identified as an Origination Issues Claim on <u>Exhibit A</u> to the Proposed Order, upon their respective request, with copies of one or more of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:

- Internal Servicing Notes currently accessible to the Borrower Trust;
- Note and riders to the Note, if applicable;

---

[6] For the purpose of clarification, the Borrower Trust is not suggesting that the listed documents in the respective objection categories are relevant to every Claim; rather, the Borrower Trust will provide the claimant and the Court with copies of only those relevant documents presently in its possession that substantiate the stated reason(s) for disallowance.

[7] The production of documents by the Borrower Trust (to claimants under any of the stated objection categories) will be subject to all applicable privileges, including without limitation, attorney-client, and where necessary, will be subject to a mutually acceptable Confidentiality Agreement.

[8] As noted in <u>Exhibit A</u>, to the extent the claimant asserts statutory claims related to origination of the loan, the Borrower Trust reviewed the applicable federal and state statutes and determined that such claims against servicers or loan assignees carry no successor liability.  To the extent claimant asserts common-law claims, the Borrower Trust found no case precedent establishing assignee liability when a party is not involved with the origination of the loan, and the claimant did not provide any specific legal authority to substantiate its allegation.

9

- Mortgage/Deed of Trust;
- Origination File; or
- Other documents that are relevant to the reconciliation of the claim.

(iii) ***Escrow Issues***.  This category includes a claim based on the alleged improper application of escrow amounts (the "Escrow Issues Claim").  To assess the validity of this claim, the Borrower Trust examined the Debtors' books and records, including the Debtors' escrow receipts and payments, the annual escrow analysis sent to Borrowers and any Internal Servicing Notes and written communication between the Debtors and the applicable Borrower(s).

Based on its review, the Borrower Trust determined that the Debtors are not liable for the Escrow Issues Claim. See Priore Decl. at ¶ 8(iii). The Borrower Trust determined that the amount charged to the Claimant's escrow account for payment of the Claimant's property taxes was appropriate as the Claimant's deed of trust included taxes as an escrow item. The Borrower Trust also confirmed that the deed of trust permitted the Debtors to charge the Claimant for any shortage in the escrow account.   See id.

To substantiate this determination, the Borrower Trust is prepared to provide the Court and each claimant whose claim is identified as an Escrow Issues Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:

- Loan Payment History;
- Internal Servicing Notes currently accessible to the Borrower Trust;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Debtors' written communications to the claimant;
- Escrow Statement;
- Loan Modification Agreement, if applicable; or
- Other documents that are relevant to the reconciliation of the claim.

(iv) ***Wrongful Foreclosure***.  This category includes a claim based, either directly or indirectly, on allegations of wrongful foreclosure by the Debtors (the "Wrongful Foreclosure Claim").  To assess the validity of this claim, the Borrower Trust examined the Debtors' books and records to verify that the Debtors foreclosed properly and, where applicable, took the appropriate loss mitigation steps.  Specifically, the Borrower Trust reviewed Payment History, Internal Servicing Notes, as well as, where applicable, the claimants' loan modification applications, loan modification approval letters, loan modification denial letters, compliance with loan modifications (trial and/or permanent), compliance with any other payment plans (forbearance and repayment), short sale applications and history, investor guidelines and/or direction, breach letters, and/or foreclosure related documents.  Where a claimant asserted that he or she did not execute the mortgage note, the Borrower Trust compared the signatures on other executed documents in the claimant's file, as well as examining the Loan Payment History and any other information in the Debtors' possession.  Moreover, where a Wrongful Foreclosure Claim was based on issues related to a short sale, the Borrower Trust further reviewed the

10

Debtors' records to determine whether a short sale approval had been requested, and, if so and if such request was denied, whether the reason for denial was proper.[9]  See Priore Declaration at ¶ 8(iv).  Based on its review, the Borrower Trust determined that the Debtors are not liable for the Wrongful Foreclosure Claim.  See id.

To substantiate this determination, the Borrower Trust is prepared to provide the Court and each claimant whose claim is identified as a Wrongful Foreclosure Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:

- Loan Payment History;
- Internal Servicing Notes currently accessible to the Borrower Trust;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Loan Modification Agreement, if applicable;
- Debtors' written communications to Claimant, including the following, if applicable:
    - Denial Letters,
    - Missing Items Letters,
    - Loan Modification Offers,
    - Signed Modification Agreement(s),
    - Breach of Contract Notice, and
    - Trial, Forbearance, or Foreclosure Repayment Plan Letters;
- Escrow Statement, if applicable;
- Pooling and Servicing Agreements, if applicable; or
- Other documents that are relevant to the reconciliation of the claim.

(v) ***Res Judicata.*** This category includes claims related to litigation that have already been adjudicated (the "Res Judicata Claims").  The Borrower Trust diligently reviewed the case notes from the Debtors' internal electronic case management system and the Debtors' internal files, relating to the litigation, including relevant underlying documents such as the note, loan agreement and/or deed of trust (the "Litigation File").  The Debtors or the Liquidating Trust (on behalf of the Borrower Trust) as applicable, supplemented the Litigation File by reaching out to the outside counsel who previously handled the litigation for the Debtors to obtain a current update as to the status of the litigation, as well as copies of any relevant case dockets, complaints, answers, counterclaims, motions, responsive pleadings, judgments, orders, and any other relevant documents relating to the underlying litigation.  The allegations set forth in the Res Judicata Claims were compared to the information contained in the Litigation Files (as supplemented with information provided by outside counsel), as well as the Debtors' Books and Records.  See Priore Declaration at ¶ 8(v).

---

[9] Appropriate reasons for denying a short sale request include, without limitation, a claimant's failure to submit executed sale contracts, a claimant's failure to obtain approval from second lien holders and/or a claimant's short sale request did not comply with the investor's requirements.

11

The Doctrine of res judicata provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Burgos v. Hopkins, 14 F.3d 787, 789 (2d. Cir. 1994) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)). See also Bremer v. Weeks, 85 P.3d 150, 160 (Haw. 2004) (stating the rule in Hawaii); Ohio Dep't of Human Servs. v. Kozar, 651 N.E. 2d 1039, 1041 (Ohio Ct. App. 1995) (stating the rule in Ohio); Ticor Title Co. v. Stanion, 157 P.3d 613, 618 (Idaho 2007) (stating the rule in Idaho).  Moreover, when a judgment is issued by a state court, the preclusive effect of such determination "in a subsequent federal action is determined by the rules of the state where the prior action occurred . . . ." New York v. Sokol (In re Sokol), 113 F.3d 303, 306 (2d Cir. 1997) (citing 28 U.S.C. § 1738); see, e.g., Taylor v. Sturgell, 553 U.S. 880 (2008).  Therefore, "[i]n applying the doctrine of res judicata, [a court] must keep in mind that a state court judgment has the same preclusive effect in federal court as the judgment would have had in state court." Burka v. N.Y.C. Transit Auth., 32 F.3d 654, 657 (2d. Cir. 1994) (citation omitted); see, e.g., Kremer v. Chem. Constr. Corp., 456 U.S. 461 (1982).

The Res Judicata Claims are related to litigation that has already been adjudicated between the Claimant and the Debtors by a federal court, and the court dismissed the claimant's complaint with prejudice.  Copies of the relevant decisions are attached hereto as Exhibit 7-A through Exhibit 9.  The basis for the Res Judicata Claims are the same as the allegations made in the underlying litigations that were previously adjudicated on the merits by state or federal courts.

(vi)   ***Loan Modification***. This category includes claims based on loan modification issues (the "Loan Modification Claims"), which allege, among other things, that the Debtors (a) failed to provide a loan modification,[10] or (b) provided a loan modification, but the claimant believes the terms of the modification were not as favorable to the claimant as those to which claimant believed he or she was entitled.  To assess the validity of these claims, the Borrower Trust examined the Debtors' books and records to verify that the Debtors followed the applicable investor guidelines and policies regarding loan modifications.  Specifically, the Borrower Trust reviewed Internal Servicing Notes, Loan Payment History, and, where applicable, loan modification agreements, loan modification applications, loan modification denial letters, loan modification approval letters, the claimant's compliance with modifications (trial and/or permanent) and any instructions or guidelines provided by the investor for the claimant's loan.  See Priore Declaration at ¶ 8(vi).

Based on its review, the Borrower Trust determined that the Debtors are not liable for the Loan Modification Claims because: (a) in cases where a loan modification request was denied, the Debtors complied with the applicable investor guidelines and policies governing the loan modification process and (b) in the cases where the claimant obtained

---

[10] As a regular part of the Debtors' business practices, the Debtors offered mortgage loan modifications to Borrowers in financial distress, pursuant to certain guidelines established by the investors ("Traditional Modifications").  The Home Affordable Modification Program ("HAMP") is an administrative program that was implemented in April 2009 by the United States Treasury Department to help eligible homeowners with loan modifications on their home mortgage debt.  HAMP provided the Debtors with an additional type of loan modification (a "HAMP Modification") for assisting eligible Borrowers experiencing financial distress.

a loan modification, the claimant was not damaged by the loan modification assistance provided.  See id.

To substantiate this determination, the Borrower Trust is prepared to provide the Court and each claimant whose claim is identified as a Loan Modification Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:

- Loan Payment History;
- Internal Servicing Notes currently accessible to the Borrower Trust;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Loan Modification Agreement, if applicable;
- Investor guidelines, if applicable;
- Servicing agreement(s), if applicable;
- Workout Packages;
- Debtors' written communications to Claimant, including the following, if applicable:
    - Denial Letters,
    - Missing Items Letters,
    - Loan Modification Offers,
    - Signed Mod Agreement(s),
    - Breach of Contract Notice(s), and
    - Trial, Forbearance, or Foreclosure Repayment Plan Letters;
- Escrow Statement; or
- Other documents that are relevant to the reconciliation of the claim.

(vii) ***Judicial Estoppel and Standing***.  This category includes a claim (the "Judicial Estoppel Claim") that is barred from relief under the doctrine of judicial estoppel.  Judicial estoppel applies when (i) a party asserts a position in a proceeding, but thereafter assumes a contrary position, and (ii) such inconsistences create the inference the court has been misled.  New Hampshire v. Maine, 532 U.S. 742, 749 (2001).  Pursuant to 11 U.S.C. § 521(1), a debtor is required to disclose all of his/her actual or potential assets, which would include any known causes of action.  See 11 U.S.C. §§ 521(1), 1306; Chartschlaa v. Nationwide Mut. Ins. Co., 538 F.3d 116 (2d Cir. 2008) (citing 11 U.S.C. §§ 521(a)(1)(B)(i), (iii)); Rosenshein v. Kleban, 918 F. Supp. 98 (S.D.N.Y. 1996).  "[I]f the debtor has enough information … prior to confirmation to suggest that it may have a possible cause of action, then it is a 'known' cause of action such that it must be disclosed."  Browning Mfg. v. Mims (In re Coastal Plains, Inc.), 179 F.3d 197, 208 (5th Cir. 1999) (citations omitted).  Undisclosed assets automatically remain property of the estate, and as a result, even after discharge of the bankruptcy estate, the debtor lacks standing to pursue a claim that he failed to disclose.  See Rosenshein, 918 F. Supp. at 103.

This Court, following numerous other courts in this circuit, has applied the doctrine of judicial estoppel to disallow and expunge claims where the claimant failed to disclose the claim in their own bankruptcy proceeding.  See *Memorandum Opinion and Order*

*Sustaining Objection and Expunging Claim No. 4443 by Corla Jackson*, In re Residential
Capital, LLC, No. 12-12020 (MG) (Bankr. S.D.N.Y. Jan. 27, 2014) [Docket No. 6363],
*appeal dismissed*, Jackson v. ResCap Borrower Claims Trust, No. 14 cv. 2427 (S.D.N.Y.
Oct. 9, 2014) [Docket No. 18]. Similarly, the Claimant asserting a Judicial Estoppel
Claim failed to affirmatively assert the Judicial Estoppel Claim in their first bankruptcy
case, which has been closed. As a result, the Claimant effectively waived the right to
assert the Judicial Estoppel Claim and is estopped from bringing that same claim in the
Debtors' Chapter 11 cases.[11] Additionally, even if the Judicial Estoppel Claim was not
barred by judicial estoppel, the Claimants that filed the Judicial Estoppel Claim do not
have standing to pursue it because the Judicial Estoppel Claim is property of the
Claimants' bankruptcy estate. As a result, the Judicial Estoppel Claim is also barred for
lack of standing.

With respect to the Judicial Estoppel Claim, the Borrower Trust examined the proof of
claim in conjunction with public bankruptcy records and validated that:

> (a) the Claimant filed for individual bankruptcy protection and received a
> discharge,
> (b) the basis for claim comprising the Judicial Estoppel Claim involves
> assertions and alleged damages that occurred prior to Claimant's first
> individual bankruptcy filing,
> (c) the Claimant did not include the Judicial Estoppel Claim in the
> schedule of assets filed by Claimant in their  first bankruptcy case, and
> (d) the Claimant never raised such claim in any other proceeding during
> their individual bankruptcy case (e.g., an adversary proceeding). See
> Priore Declaration ¶ 8(vii).

(viii) **_Redundant_**. This category includes a claim (the "Redundant Borrower Claim") that is
identical to another claim filed on the Claims Register. See Priore Declaration ¶ 8(viii).
Pursuant to Bankruptcy Rule 3007(d), a debtor may object to claims and seek their
disallowance where such claims "duplicate other claims." Fed. R. Bankr. P. 3007(d)(1).
Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may
not be allowed to the extent that "such claim is unenforceable against the debtor and
property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1).
Accordingly, courts in the Southern District of New York routinely disallow and
expunge duplicative and/or redundant claims filed by the same creditor against the same
debtor. See, e.g., Order Granting the ResCap Liquidating Trust's Seventy-Second
Omnibus Objection to (A) Amended and Superseded Claims; (B) Late Filed Claims; and
(C) Duplicate Claims, In re Residential Capital, LLC, Case No. 12-12020 (MG) (Bankr.
S.D.N.Y. Sept. 30, 2014) [Docket No. 7595] (ordering the disallowance and
expungement of redundant claims identified by the Liquidating Trust in its seventy-
second omnibus claims objection); In re Worldcom, Inc., Case No. 02-13533AJG, 2005

---

[11] The Claimants filed two bankruptcies after the basis for the claim occurred, a chapter 13 filed in 2010 that was
later converted in to a chapter 7 that same year and a chapter 13 filed in 2012. The Claimants listed the claims
against the Debtors on their bankruptcy schedules in the second bankruptcy. While the Borrower Trust submits that
the alleged events giving rise to the Judicial Estoppel Claim occurred prior to the first bankruptcy, to the extent the
Court determines that the Judicial Estoppel Claim is based on events that occurred in between the two bankruptcies,
only the current Chapter 13 trustee has standing to bring the Judicial Estoppel Claim.

WL 3875191, at *8 (Bankr. S.D.N.Y. June 3, 2005) (expunging duplicate claim); In re Best Payphones, Inc., Case No. 01-15472 (SMB), 2002 WL 31767796, at *11 (Bankr. S.D.N.Y. Dec. 11, 2002) (expunging duplicate claim).

The Borrower Trust believes that it was not the claimant's intention in asserting the Redundant Borrower Claim to seek a double recovery against the Debtors' estates. Instead, the filing of the Redundant Borrower Claim appears to be a function of the claimant filing an additional proof of claim on account of the same obligation. See Priore Declaration ¶ 8(viii). Regardless of the claimant's reasons for filing the Redundant Borrower Claim, at most, only one claim against the Debtors' estates should potentially be allowed for the claimant.

(ix) **_Paid and Satisfied._** This category includes a claim (the "Paid and Satisfied Claim") that have been satisfied pursuant to the Consent Order. To assess the validity of this claim, the Borrower Trust examined the Debtors' Internal Servicing Notes to verify that the Debtors satisfied the amount owed to the Claimant. See Priore Declaration at ¶ 8(ix). The Borrower Trust determined that the Debtors are not liable for the Paid and Satisfied Claim because the Claimant received more in connection with the Consent Order than the asserted amount of her claim. See id.

To substantiate this determination, the Borrower Trust is prepared to provide the Court and the claimant whose claim is identified as a Paid and Satisfied Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of the internal servicing notes, which were prepared or kept by the Debtors in the course of their regularly conducted business activities.

(x) **_General Servicing Issues_**. This category includes a claim based on general servicing issues, including assertions that a Debtor provided incorrect information or reporting to the claimant (the "General Servicing Issues Claim"). To assess the validity of this claim, the Borrower Trust reviewed Internal Servicing Notes, Loan Payment History, letters between the Debtors and the Borrower, executed mortgage notes and deeds of trust, and other relevant documents. See Priore Declaration at ¶ 8(x).

Based on its review, the Borrower Trust determined that the General Servicing Issues Claim is not a valid obligation of the Debtors because: (a) the alleged events involving General Servicing Issues never took place and (b) the Debtor acted properly in servicing the loan, in accordance with the Debtors standard policies and procedures and the terms of the executed note and deed of trust. See id.

To substantiate this determination, the Borrower Trust is prepared to provide the Court and the claimant whose claim is identified as a General Servicing Issues Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more of the following types of documents, each of which were prepared or kept by the Debtors' in the course of their regularly conducted business activities:

- Loan Payment History;
- Internal Servicing Notes currently accessible to the Borrower Trust;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;

15

- Debtors' written communications to the claimant;
- Copies of lien releases; or
- Other documents that are relevant to the reconciliation of the claim.

25.    To prevent the claimants that filed the No Liability Borrower Claims from receiving improper recoveries to the detriment of other Borrowers holding valid claims, the Borrower Trust requests that the Court disallow and expunge in their entirety each of the No Liability Borrower Claims.

## THE REDUCE AND ALLOW BORROWER CLAIM SHOULD BE MODIFIED

26.    Based upon its review of the proofs of claim filed on the Claims Register, the Borrower Trust determined that the Reduce and Allow Borrower Claim  is a Consent Order Borrower Claim and therefore, under the terms of the Plan, should be reduced to the extent it was paid pursuant to the Consent Order.  An explanation of the payment made under the Consent Order to the holder of the Reduce and Allow Claim is described under the heading "*Reason for Modification.*"  See Priore Declaration ¶ 13.

27.    The amount listed on Exhibit B under the column heading "*Modified Claim Amount*" represent the claim amount reflected in the Debtors' books and records as of the Petition Date, less any amount already satisfied through the Consent Order.  See Priore Declaration ¶ 11.  The holder of the Reduce and Allow Claim should not be allowed to recover more than they are owed.  Accordingly, the Borrower Trust requests that the Court reduce the Reduce and Allow Claim to the amount listed on Exhibit B under the column heading "*Modified Claim Amount*" and allow such claim only to the extent of such modified amount.

## THE REDESIGNATE, REDUCE AND ALLOW BORROWER CLAIM SHOULD BE MODIFIED

28.    Based on its review of the proof of claim filed on the Claims Register, the Borrower Trust determined that the Redesignate, Reduce, and Allow Claim identified on Exhibit

16

C attached to the Proposed Order was filed against the incorrect Debtor and is a Consent Order

Borrower Claim and therefore, under the terms of the Plan, should be reduced to the extent it was

paid pursuant to the Consent Order.   An explanation of the payment made under the Consent

Order to the holder of the Redesignate, Reduce and Allow Claim is described under the heading

"*Reason for Modification.*"   See Priore Declaration ¶ 10.

29.    The amount listed on Exhibit C under the column heading "*Modified

Claim Amount*" represent the claim amount reflected in the Debtors' books and records as of the

Petition Date, less any amount already satisfied through the Consent Order.   See Priore

Declaration ¶ 11.  The Borrower Trust further determined based on its review of the claimant's

supporting documentation and the Debtors' books and records that the Redesignate, Reduce and

Allow Claim was filed against Debtor Executive Trustee Services when a different Debtor,

GMAC Mortgage, LLC, is liable for the claim in the reduced amount.  See id.  The holder of the

Redesignate, Reduce and Allow Claim should not be allowed to recover more than the value of

their claim, or to recover on a claim from the incorrect Debtor's estate.   Accordingly, in order to

properly reflect the actual value of this claim, the Borrower Trust requests that this Court reduce

the Redesignate, Reduce and Allow Claim to the Corresponding amount listed on Exhibit C

under the column heading "*Modified Claim Amount*" and allow the Redesignate, Reduce and

Allow Claim only to the extent of such modified amount and only against the corresponding

Debtor listed on Exhibit C under the column heading "*Modified Debtor Name.*"

## NOTICE

30.    The Borrower Trust has served notice of this Objection in accordance with

the Case Management Procedures entered on May 23, 2012 [Docket No. 141] and the Procedures

Order.  The Borrower Trust submits that no other or further notice need be provided.

ny-1186481

## NO PRIOR REQUEST

31.    No previous request for the relief sought herein as against the holders of

the No Liability Borrower Claims, the Reduce and Allow Borrower Claim, or the Redesignate,

Reduce and Allow Claim have been made by the Borrower Trust to this or any other court.

## CONCLUSION

WHEREFORE, the Borrower Trust respectfully requests that the Court enter an

order substantially in the form of the Proposed Order granting the relief requested herein and

granting such other relief as is just and proper.


Dated:  May 8, 2015
         New York, New York


                                     /s/ Norman S. Rosenbaum
                                     Norman S. Rosenbaum
                                     Jordan A. Wishnew
                                     Jessica J. Arett
                                     MORRISON & FOERSTER LLP
                                     250 West 55th Street
                                     New York, New York 10019
                                     Telephone:  (212) 468-8000
                                     Facsimile:  (212) 468-7900

                                     *Counsel for The ResCap Borrower
                                     Claims Trust*

## Exhibit 1

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

------------------------------------------------------------

### ORDER GRANTING RESCAP BORROWER CLAIMS TRUST'S EIGHTY-SEVENTH OMNIBUS OBJECTION TO CLAIMS ((I) NO LIABILITY BORROWER CLAIMS, (II) REDUCE AND ALLOW BORROWER CLAIM, AND (III) <u>REDESIGNATE, REDUCE AND ALLOW BORROWER CLAIM)</u>

Upon the eighty-seventh omnibus objection to claims (the "<u>Objection</u>")[1] of the ResCap Borrower Claims Trust (the "<u>Trust</u>"), established pursuant to the terms of the confirmed Plan filed in the above-referenced Chapter 11 cases, as successor in interest to the Debtors with regard to Borrower Claim matters, seeking entry of an order, pursuant to section 502(b) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rule 3007(d) of the Federal Rules of Bankruptcy Procedure, and this Court's order approving procedures for the filing of omnibus objections to proofs of claim [Docket No. 3294] (the "<u>Procedures Order</u>"), disallowing and expunging the No Liability Borrower Claims, reducing the Reduce and Allow Borrower Claim and redesignating and reducing the Redesignate, Reduce, and Allow Borrower Claim, all as more fully described in the Objection; and it appearing that this Court has jurisdiction to consider the Objection pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Objection and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

---

[1]    Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Objection.

the Objection having been provided, and it appearing that no other or further notice need be provided; upon consideration of the Objection and the *Declaration of Kathy Priore in Support of the ResCap Borrower Claims Trust's Eighty-Seventh Omnibus Objection to Claims ((I) No Liability Borrower Claims, (II) Reduce and Allow Borrower Claim, and (III) Redesignate, Reduce, and Allow Borrower Claim)* annexed thereto as Exhibit 2, and the *Declaration of Norman S. Rosenbaum in Support of the ResCap Borrower Claims Trust's Eighty-Seventh Omnibus Objection to Claims ((I) No Liability Borrower Claims, (II) Reduce and Allow Borrower Claim, and (III) Redesignate, Reduce, and Allow Borrower Claim)*, annexed thereto as Exhibit 3; and the Court having found and determined that the relief sought in the Objection is in the best interests of the Trust, the Trust's constituents, the Debtors, and other parties in interest and that the legal and factual bases set forth in the Objection establish just cause for the relief granted herein; and the Court having determined that the Objection complies with the Borrower Claim Procedures set forth in the Procedures Order; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Objection is granted to the extent provided herein; and it is further

ORDERED that, pursuant to section 502(b) of the Bankruptcy Code, the claims listed on Exhibit A annexed hereto (collectively, the "No Liability Borrower Claims") are disallowed and expunged with prejudice; and it is further

ORDERED that, pursuant to section 502(b) of the Bankruptcy Code, the claim listed on Exhibit B annexed hereto (the "Reduce Borrower Claim") is hereby reduced and allowed in the amount of $44,980.00; and it is further

ORDERED that, pursuant to section 502(b) of the Bankruptcy Code, the claim listed on Exhibit C (the "Redesignate, Reduce, and Allow Borrower Claim") is hereby redesignated as general unsecured claim in the amount of $25,000 against GMAC Mortgage, LLC; and it is further

ORDERED that Kurtzman Carson Consultants LLC, the Debtors' claims and noticing agent, is directed to disallow and expunge the No Liability Borrower Claims identified on the schedule attached as Exhibit A hereto so that such claims are no longer maintained on the Claims Register; and it is further

ORDERED that Kurtzman Carson Consultants LLC, the Debtors' claims and noticing agent, is directed to modify the Reduce and Allow Borrower Claim and the Redesignate, Reduce, and Allow Borrower Claim as set forth on the schedules attached as Exhibit B and Exhibit C hereto so that such claim is reflected on the Claims Register in a manner consistent with this Order; and it is further

ORDERED that the Trust is authorized and empowered to take all actions as may be necessary and appropriate to implement the terms of this Order; and it is further

ORDERED that notice of the Objection, as provided therein, shall be deemed good and sufficient notice of such objection, and the requirements of Bankruptcy Rule 3007(a), the Case Management Procedures entered on May 23, 2012 [Docket No. 141], the Procedures Order, and the Local Bankruptcy Rules of this Court are satisfied by such notice; and it is further

ORDERED that this Order has no res judicata, estoppel, or other effect on the validity, allowance, or disallowance of any claim not listed on Exhibit A, Exhibit B, or Exhibit C annexed to this Order, and the Trust's and any party in interest's right to object on any basis are

expressly reserved with respect to any such claim not listed on Exhibit A, Exhibit B, or Exhibit C

annexed hereto; and it is further

ORDERED that this Order shall be a final order with respect to each of the No

Liability Borrower Claims identified on Exhibit A, Reduce and Allow Borrower Claim identified

on Exhibit B, and Redesignate, Reduce, and Allow Borrower Claim identified on Exhibit C

annexed hereto, as if each such Claim had been individually objected to; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.


Dated: _____, 2015
           New York, New York



                                    _____
                                    THE HONORABLE MARTIN GLENN
                                    UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit A</u>**

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| 355 | Joanne Stanphill and John Stanphill c/o Kristin Crone, Esq.<br><br>1490 Stone Point Dr., Ste 100, Roseville, CA 95661<br><br>$490,600 General Unsecured<br><br>Residential Capital, LLC | Loan Modification Issues, Origination Issues, Standing, Judicial Estoppel | Claim relates to litigation filed by Claimants on February 2, 2012 in the Superior Court of CA, County of Los Angeles, Case No. 066431, which was removed to USDC, Central District of CA, Western Division - Los Angeles, Case No. 2:12-CV-03955.  The complaint is styled as a Mass Action filed against Debtors and non-Debtor Ally Financial Inc.   Complaint raises four causes of action:  1) Privity of Contract; 2) Rescission-Mistake-Void Agreement; 3) Negligence (origination), and; 4) Negligence (servicing).<br><br>Debtor GMAC Mortgage, LLC originated the loan on October 25, 2006.  GMACM transferred its interest when the loan was securitized on or about December 1, 2006 where Deutsche Bank Trust Company Americas was appointed as Trustee. Debtor GMAC Mortgage, LLC serviced the loan from origination until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.  At the time of transfer to Ocwen, the loan was due for October 1, 2011.<br><br>Debtor has no liability for Claimants' origination based claims because the claim is time-barred. The statute of limitations for a claim for rescission is four years.  See Cal. Civ. Proc. § 337(3).  Claimants obtained the loan in October 2006. Accordingly, the statute of limitations expired no later than October 2010, and Claimants filed suit in February 2012.  In addition, Claimants' claim for negligence in origination fails because it is also time barred. Negligence claims are subject to a two-year statute of limitations. See Cal. Code Civ. Proc., §§ 335.1, 339; see also | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Benun v. Superior Court, 123 Cal.App.4th 113, 125 (2004).<br><br>Debtors have no liability for Claimants' negligent servicing claims because in every instance, the Debtors acted in accordance with the Debtors' standard policies and procedures.  In support of Debtors' position that Debtors have no liability for allegations of loan modification issues, Debtors' loan servicing notes reflect the following chronology with respect to the account:<br><br>Claimants spoke with Debtors via phone on March 3, 2009.  Claimants requested to defer the March 2009 payment.  Debtors advised Claimants that it would not be able to defer the payment as deferral was not an option  provided by the investor of the loan but that Debtors can review Claimants' account for a repayment plan. Claimants stated that they will make the February and March 2009 payments by the end of March.<br><br>Claimants spoke with Debtors via phone on March 25, 2009. Claimants requested a payment to be deferred.  Debtors advised that it would not be able to defer as deferral is not an option provided by the investor of the Claimant's loan. Claimants stated they will call in to make the payment. Debtors mailed Claimants a workout package on March 26, 2009 to allow Claimants an opportunity to apply for a loan modification.<br><br>Claimants spoke with Debtors via phone on April 2, 2009.  Claimants stated that they mailed the March payment on April 1, 2009 and that they will make the April | |

2

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | payment on April 20, 2009.  Claimants stated that they are still waiting to receive the workout package.   The Debtors received a payment on April 13, 2009.<br><br>Claimants spoke with Debtors via phone on May 22, 2009.  Claimants called in requesting a workout package.  Debtors explained to Claimant how to access a workout package via the Debtors' website.  Debtors received a workout package from Claimants on June 15, 2009.<br><br>On July 13, 2009 Debtors set up a HAMP Trial Plan for Claimants.  Payments in the amount of $2,289.57 were due on the first of August, September, and October 2009.  Debtors mailed Claimants the HAMP Trial documents on July 17, 2009.<br><br>Claimants spoke with Debtors via phone on July 14, 2009.  Debtors advised Claimants that they were approved for a HAMP Trial Plan.  Claimants spoke with Debtors via phone on July 23, 2009 at which time Debtors advised Claimants that they needed to sign and send back the HAMP Trial agreement and the first payment of $2,289.57, which was due on August 1, 2009.<br><br>On July 28, 2009, Debtors received the signed HAMP Trial Plan from Claimants. The initial payment was received July 31, 2009.  Claimants spoke with Debtors via phone on September 16, 2009, at which time Debtors advised Claimants that the September 1, 2009 Trial Plan payment was late.  Claimants stated that the payment was mailed on Friday (September 11, 2009).  Debtors advised Claimants that the payment needs to be received as soon as possible to ensure trial plan is | |

3

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
|  |  |  | not cancelled.<br><br>The Debtors received a payment on September 21, 2009.   Claimants spoke with Debtors via phone on September 28, 2009, at which time Debtors advised Claimants that the next trial payment was due October 1, 2009.  Claimants again spoke with Debtors via phone on October 8, 2009, at which time Claimants stated that they will be mailing the last trial payment (the October 1, 2009 payment) on October 9, 2009.<br><br>Claimants spoke with Debtors via phone on October 20, 2009, at which time Debtors advised Claimants  that the HAMP Trial Plan had been completed and Debtors are currently reviewing Claimants' account for a permanent HAMP loan modification.<br><br>Claimants spoke with Debtors via phone on October 27, 2009. Debtors advised Claimants that their loan was still under review for a permanent HAMP loan modification.  On November 5, 2009, Debtors approved Claimants' loan for a permanent HAMP modification.  The HAMP terms would be effective as of December 1, 2009. The modified interest rate was 3.25% and the modification capitalized $9,338.67 of past due principal and interest.  Debtors mailed the HAMP permanent modification documents to Claimants on November 12, 2009, which stated the documents were due back by November 17, 2009.<br><br>Claimants spoke with Debtors via phone on November 16, 2009, at which time |  |

4

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
|  |  |  | Debtors advised Claimants that their loan had been approved for a permanent loan modification and that the terms would be effective as of December 1, 2009. Debtors advised that the permanent modification documents needed to be notarized, signed and returned.<br><br>Claimants spoke with Debtors via phone on November 23, 2009. Claimants stated that they will mail the modification documents after they are notarized by November 30, 2009 and will be make the initial payment by December 15, 2009.<br><br>Claimants spoke with Debtors via phone on December 4, 2009, at which time Claimants stated that they would mail the permanent modification documents that day.  Debtors received signed permanent HAMP modification documents from Claimants on December 8, 2009.<br><br>On December 10, 2009, Claimants spoke with Debtors via phone at which time Debtors advised Claimants that the signed HAMP permanent modification documents had been received.<br><br>Debtors were not able to execute the HAMP permanent modification on December 14, 2009 because the permanent modification documents were received after the effective date of December 1, 2009.  As a result, Debtors mailed updated HAMP permanent modification documents to Claimants on December 21, 2009.  On December 28, 2009, Claimants spoke with Debtors via phone, at which time Debtors advised Claimants that the new modification |  |

5

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | documents were mailed because the original permanent modification documents were received after the December 1st effective date.  Debtors advised Claimants that they needed to sign, notarize and mail the permanent modification documents back as soon as possible.<br><br>Claimant spoke with Debtors via phone on January 4, 2010, at which time Claimants stated that they had not received the documents.  As a result, Debtors updated the HAMP modification documents on January 7, 2010, updating the effective date to February 1, 2010.  The updated modification terms included an interest rate of 3.25% and capitalized amount of $14,741.13.  The capitalized amount increased to include additional payments because Claimants did not get original documents in before December 1, 2009.  Debtors remailed permanent modification documents to Claimant on January 12, 2010; tracking number 431861251077.<br><br>Claimants spoke with Debtors via phone on January 15, 2010 at which time Debtors advised Claimants of the terms of the HAMP modification and advised that Claimants needed to sign, notarize and return the documents.  Claimants stated that Debtors should receive the permanent modification documents by January 20, 2010.<br><br>Debtors received permanent modification documents from Claimants on January 20, 2010; however, the documents did not include a signed copy of the balloon | |

6

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | disclosure.  As a result, Debtors remailed the HAMP permanent modification documents to Claimants on January 22, 2010.<br><br>Claimants spoke with Debtors via phone on January 28, 2010. At that time, Claimants stated that they were not ready to sign the HAMP permanent modification documents.  Debtors advised Claimants that if the documents were not received, then the HAMP modification would not be executed.<br><br>Claimants spoke with Debtors via phone on February 3, 2010. Debtors advised Claimants that it is still waiting for signed the HAMP permanent modification documents to be received.  Claimants stated that they don't feel should need to re-sign and resend the documents.  Debtors advised Claimants that they needed to sign and mail the permanent modification documents for the modification to be executed.<br><br>Claimants spoke with Debtors via phone on February 4, 2010, at which time Claimants stated that they will not be able to sign the modification documents until Saturday (February 6, 2010).  Claimants stated that they were told by the Debtors' representative that they did not need to sign the balloon page, however, the Debtors' servicing notes do not reflect this.  Debtors advised Claimants that they needed to sign the document because there is a balloon payment for the capitalized amount on the modification.<br><br>Debtors received signed permanent modification from Claimants on February 8, | |

7

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
|  |  |  | 2010.  On March 1, 2010, Claimants spoke with Debtors via phone, at which time Claimants questioned a fee in the amount of $163.50.  Debtors advised Claimants that the fee was for a broker price opinion completed as well as property inspection fees.  The property inspection fees were for inspections in July, August, October, November, and December 2009 and January and February 2010.  The BPO was done in October 2009 because it was necessary when the Debtors were reviewing an account for a loan modification.<br><br>Debtors received notice that Claimants jointly filed Chapter 13 bankruptcy, case number 10-bk-54299, Bankruptcy Court, Northern District of California, on April 26, 2010.  On June 17, 2010, Debtors had to change the effective date of the original modification documents to December 10, 2009 due to an internal audit.<br><br>The Chapter 13 bankruptcy was converted to a Chapter 7 bankruptcy on July 16, 2010.  Debtors were granted relief from the automatic stay in Claimant's bankruptcy on October 4, 2010.  Claimants did not list any causes of action against the Debtors in their bankruptcy schedules.  A copy of the bankruptcy schedules is attached to the Objection as Exhibit 5-A.  Claimants were discharged on January 3, 2011, and Claimants did not reaffirm the debt owed on the loan. Claimants' Chapter 7 bankruptcy was closed on February 15, 2011.<br><br>Claimants spoke with Debtors via phone on January 11, 2011.  Claimants questioned why the account is showing that it was delinquent when they have |  |

8

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | been making monthly payments through the bankruptcy.  Debtors advised that payments post in the order of most delinquent to current month owing. After the call, Debtors mailed breach letter to Claimant on January 11, 2011 and another on February 2, 2011. Claimants spoke with Debtors via phone on February 11, 2011 at which time Claimants again questioned why the account was delinquent. Debtors advised Claimants that the November 2010 through January 2011 payments were still due when the December 2010 modification was executed. Claimant questioned how the payments were still due when the past due amount was capitalized.  Debtors advised that it will review the Claimants' file and call back.<br><br>On February 15, 2011, the Debtors called the Claimants back and advised the Claimants that while the loan modification was completed in February 2010, the last trial payment was completed in October 2009, leaving the account owing for November 2009 through January 2010 even after the modification was completed.  On February 16, 2011, the Debtors spoke with the Claimants again to explain how the capitalized amount was calculated, explaining that it was calculated due to $14,000 in delinquent interest due on the loan.<br><br>Claimants spoke with Debtors via phone on February 22, 2011 at which time Debtors advised that the January and February 2011 payments were still due on the account because the total amount capped as a result of the modification executed was only $9,338.67, which was not all of the payments owing at the | |

9

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | time.  This was because Debtors had to honor the December 10, 2009 signed HAMP permanent modification document, which was updated on June 18, 2010.<br><br>Debtors mailed a breach letter to Claimants on March 12, 2011. On March 12, 2011, Claimants spoke with Debtors via phone.  Claimants disputed the loan modification completed on the account and that they had mailed documents to Debtors supporting their dispute.  On March 14, 2011, Debtors received documents from Claimants disputing the account being delinquent.  The documents stated that Claimants feel their account should be current.  Debtors advised Claimants that it will mail a payment history to Claimants so Claimants can compare how the payments posted.  Debtors mailed the payment history to the Claimants on March 18, 2011 and also mailed a copy of the permanent modification to the Claimants on March 21, 2011.<br><br>Claimants again filed for Chapter 13 bankruptcy protection on August 17, 2012, Northern District of California Case No 12-bk-56131 and the plan was confirmed February 16, 2014.  The lawsuit against Debtors was listed in Schedule B of Claimants' schedules as an unliquidated claim.  Amended Schedule B was filed on July 30, 2013 and indicated, "Debtors (Claimants) no longer pursuing this lawsuit."<br><br>The Second and Third Amended Schedule B also indicated Debtors not pursuing lawsuit.  A copy of the bankruptcy schedules are attached ot the Objection as <u>Exhibit 5-B</u>.  Claimants also filed a Declaration Regarding Cause of Action Against | |

10

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | GMACM, on July 30, 2013, in which Claimants further stated they were no longer pursuing the cause of action against GMACM. A copy of the declaration is attached to the Objection as Exhibit 6. Claimants' Fourth Amended Plan was confirmed on February 26, 2014 and remains ongoing. As part of the fourth amended plan, the Claimants affirmed the debt owed to GMACM. If Claimants assert that they are still pursuing the claims from the lawsuit, because the lawsuit was filed prior to this bankruptcy being filed, the Claimants do not have standing to bring the claim, but rather the right belongs to their chapter 13 trustee.<br><br>Based on the facts and reasons stated above, the proof of claim does not give rise to liability for claims of privity of contract, rescission based on mistake, or negligence. | |
| 4091 | Joycelyn W. Unciano, pro se<br><br>COLEEN ETSUKO TOM & JOYCELYN WANDA UNCIANO VS GMAC MRTG LLC DAVID B ROSEN, ESQUIRE, KRISTINE WILSON, INDIVIDUALLY & IN ET AL | Res Judicata | Claimant attaches to her proof of claim litigation filed in the United States District Court for the District of Hawaii, CV 1:10-00653 (removed from Circuit Court of the First Circuit State of Hawaii, Case No. 10-1-2273-10). The district court dismissed the case with prejudice on May 25, 2011, and judgment was entered on August 3, 2011 denying Claimant's motion for reconsideration. A copy of the District Court's decision dismissing the case is attached to the Objection as Exhibit 7-A. Further, on December 6, 2011, the district court denied Claimant's Motion to Alter or Amend the August, 3, 2011 Order Dismissing Complaint with Prejudice. A copy of the District Court's decision denying the motion for reconsideration is | |

11

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | 91-590 Farrington Hwy 210-226 Kapolei, HI 96707<br><br>$1,500,000<br>General Unsecured<br><br>GMAC Mortgage, LLC | | attached to the Objection as Exhibit 7-B.<br><br>Claimant appealed the district court's order on December 8, 2011 to the United States Court of Appeals for the Ninth Circuit, DC No. Consolidated Appeals, No. 11-17905 and No. 11-17906.  The Ninth Circuit affirmed the decision of the district court on December 18, 2014. A copy of the Ninth Circuit's decision is attached to the Objection as Exhibit 7-C.  The Borrower Trust is not aware of any petition for certiorari that was filed with the United States Supreme Court. Claimant has another case pending in state court, however, the proof of claim is premised solely on the lawsuit in the federal district court.<br><br>Note: Claimant was inadvertently included in the form of order to the Debtors' fifty-first omnibus objection [Docket No. 6155], however, she was not included in the filed objection itself. | |
| 1551 | Meta Turner c/o Kristin Crone, Esq.<br><br>9075 Foothills Blvd., Suite 6 Roseville, CA 95747<br><br>$150,000 General Unsecured | Loan Modification Issues, Origination Issues | Claim relates to litigation filed by Claimants on February 2, 2012 in the Superior Court of CA, County of Los Angeles, Case No. 066431, removed to USDC, Central District of CA, Western Division - Los Angeles, Case No. 2:12-CV-03955.  Complaint is styled as a Mass Action filed against Debtors and non-Debtor Ally Financial Inc. Complaint raises four causes of action:  1) Privity of Contract; 2) Rescission-Mistake-Void Agreement; 3) Negligence (origination), and; 4) Negligence (servicing).<br><br>WMC Mortgage Corp originated the loan on August 2, 2006.  Debtor Residential | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | Residential Capital, LLC | | Funding Company, LLC purchased the loan from WMC Mortgage and transferred its interest when the loan was securitized on or about June 1, 2007 where Deutsche Bank Trust Company Americas was appointed as Trustee.  Debtor GMAC Mortgage, LLC serviced the loan from January 21, 2007 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.  At the time of transfer the loan was due for June 1, 2011.<br><br>Debtors have no liability for Claimant's origination-based claims because no Debtor originated the loan.  The loan was originated by WMC Mortgage Corp.  In addition, any claim for rescission is time-barred. The statute of limitations for a claim for rescission is four years. See Cal. Civ. Proc. § 337(3). Claimant obtained the loan in August 2006.  Accordingly, the statute of limitations expired in August 2010, and Claimant filed suit in February 2012, more than four years after she obtained her loan.  In addition, a claim for negligence in origination fails because no Debtor was involved in originating the loan, and because it is also time barred. Negligence claims are subject to a two-year statute of limitations. See Cal. Code Civ. Proc., §§ 335.1, 339; see also Benun v. Superior Court, 123 Cal.App.4th 113, 125 (2004).<br><br>Debtors have no liability for Claimant's loan modification claims because in every instance the Debtors acted in accordance with the Debtors' standard policies and procedures.  In support of Debtors' position that there is no liability for allegations of loan modification issues, Debtors' loan servicing records include the | |

13

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | following chronology with respect to the account:<br><br>Claimant spoke with Debtors via phone on September 25, 2009, at which time Claimant asked about the HAMP program.  Debtors advised that if Claimant applied for a HAMP modification, then an escrow would be added to account. Claimant stated she would like to have escrow added.  Debtors advised Claimant to access a workout package via Debtors' website.<br><br>Debtors received a workout package from Claimant on October 8, 2009.  Claimant spoke with Debtors via phone on October 20, 2009, at which time Debtors advised Claimant that the account has been escrowed and taxes and insurance will be paid by Debtors.<br><br>Debtors denied the loan for a HAMP modification on October 20, 2009 because Claimant's debt-to-income ratio ("DTI") was below 31%.  (Based on HAMP guidelines, DTI has to be above 31% to be eligible for HAMP.)  Debtors continued to review the account for traditional modification options.<br><br>Debtors denied Claimant's account for traditional modification on October 21, 2009 because the loan was current and the DTI was below 30% based on income of $5,993 per month provided by Claimant.  Debtors mailed a denial letter to Claimant on October 21, 2009.<br><br>On January 5, 2010, Debtors mailed a breach letter to Claimant. Debtors mailed | |

14

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | an Options to Avoid Foreclosure letter to Claimant on January 12, 2010 and an escrow waiver letter on January 15, 2010 because the loan did not qualify for a loan modification.<br><br>Debtors received a workout package from Claimant on January 22, 2010. Claimant spoke with Debtors via phone on January 25, 2010, at which time Debtors advised that the workout package was received and Debtors are reviewing the account modification options.<br><br>Claimant's authorized third party, Veronica Alvarado, spoke with Debtors via phone on January 28, 2010 and asked for update on the modification review. Debtors advised that the review was still in process.<br><br>On January 29, 2010, Debtors denied Claimant's account for a HAMP modification because Claimant's DTI was below 31%.  Debtors continued to review the account for traditional modification options. Debtors approved a traditional trial plan on February 9, 2010.  The trial plan required payments of $1,216.85 due on the first of March, April, and May 2010.  Debtors mailed the traditional trial plan agreement to Claimant on February 11, 2010.<br><br>Claimant's authorized third party, Veronica Alvarado, spoke with Debtors via phone on February 16, 2010, at which time Debtors advised Veronica that the traditional trial plan was approved. Debtors received signed traditional trial plan | |

15

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | documents from Claimant on February 24, 2010.<br><br>Claimant's authorized third party, Veronica Alvarado, spoke with Debtors via phone on March 1, 2010. Veronica asked if documents and payment were received and Debtors confirmed receipt. Debtors approved the loan for a traditional permanent modification on March 29, 2010 that would be effective with the June 1, 2010 payment. A contribution amount of $1,342 was due on May 1, 2010. The modification capitalized $4,404.55 in interest. The terms of the modification required the loan to be interest-only payments through May 1, 2015 at an interest rate of 6.5% (old interest rate was 8.75%). The payment would change to a P&I payment on June 1, 2015 with an interest rate of 6.5%.<br><br>Claimant spoke with Debtors via phone on March 30, 2010 at which time Debtors advised that a traditional permanent modification had been approved. Debtors advised Claimant of the contribution amount due. Claimant spoke with Debtors via phone on April 12, 2010, at which time Claimant stated she is waiting to receive the permanent modification documents. Debtors advised Claimant that it will work to quickly get the documents sent out. Debtors advised Claimant of the contribution amount due and that contribution needed to be sent via certified funds.<br><br>Debtors mailed traditional permanent modification documents to Claimant on April 20, 2010 and received signed traditional modification documents and a | |

16

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | contribution amount from Claimant on April 28, 2010.<br><br>Claimant spoke with Debtors via phone on February 7, 2011 and told Debtors she wanted to make additional payments toward escrow account but wasn't able to make payment online.  Debtors advised that the February 2011 payment had to post to the account before additional money can be applied to escrow.   The Debtors received the payment on February 15, 2011 and applied the payment to escrow.<br><br>Debtors attempted to contact Claimant once loan fell behind for June 1, 2011 however Claimants did not answer or return calls.  Debtors had not spoken to Claimant since February 8, 2011 and no payment had been received on account since May 16, 2011 which paid the May 1, 2011 payment.<br><br>Based on the facts and reasons stated above, the proof of claim does not give rise to liability for claims of privity of contract, rescission based on mistake, or negligence. | |
| 354 | Robert Kanagaki and Patricia Young c/o Kristin Crone, Esq.<br><br>1490 Stone Point Dr., Ste 100 | Loan Modification Issues, Origination Issues | Claim relates to litigation filed by Claimants on February 2, 2012 in the Superior Court of CA, County of Los Angeles, Case No. 066431, removed to USDC, Central District of CA, Western Division - Los Angeles, Case No. 2:12-CV-03955.  Complaint is styled as a Mass Action filed against Debtors and non-Debtor Ally Financial Inc.  Complaint raises four causes of action:  1) Privity of Contract; 2) Rescission-Mistake-Void Agreement; 3) Negligence (origination), and; 4) | |

17

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | Roseville, CA 95661<br><br>$636,200<br>General Unsecured<br><br>Residential Capital, LLC | | Negligence (servicing).<br><br>Debtor GMAC Mortgage, LLC originated the Home Equity Line of Credit on June 14, 2006.  GMAC Mortgage transferred its interest to non-Debtor Ally Bank on or about June 30, 2006.  GMAC Mortgage, LLC serviced the loan from origination until servicing transferred to Specialized Loan Servicing on October 1, 2009.   At the time of transfer the loan was current.<br><br>Debtor has no liability for Claimants' origination-based claims because the claim is time-barred. The statute of limitations for a claim for rescission is four years. <u>See</u> Cal. Civ. Proc. § 337(3). Claimant obtained the loan in June 2006.  Accordingly, the statute of limitations expired no later than 2010, and Claimant filed suit in February 2012, more than four years after they obtained their loans.  In addition, Claimant's claim for negligence in origination and negligence in servicing fails because it is also time-barred. Negligence claims are subject to a two-year statute of limitations. <u>See</u> Cal. Code Civ. Proc., §§ 335.1, 339; <u>see</u>  <u>also</u>  <u>Benun v. Superior Court</u>, 123 Cal.App.4th 113, 125 (2004).<br><br>Debtors have no liability for Claimants' loan modification claims because Debtor's records don't show any loss mitigation activity while loan was serviced by Debtors.  Debtors' records show:<br><br>Claimant spoke with Debtors via phone on January 14, 2008, at which time Claimants questioned why his payment had increased.  Debtors advised Claimants | |

18

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
|  |  |  | that their loan was a daily simple interest rate loan, which meant that the interest on their loan was calculated on a daily basis, such that their monthly payment could adjust depending on how many days had passed since their last payment.<br><br>Claimants' HELOC was frozen by Debtors on April 14, 2008 due to a decline in equity of the underlying real property. Claimants spoke with Debtors via phone at which time Debtors advised him of the HELOC freeze as well as the reason for the freeze.<br><br>On December 22, 2008, Claimants requested that Debtors mail him a copy of the loan payment history and mortgage deed.  Debtors mailed the requested information to Claimant on December 24, 2008.<br><br>Claimants submitted a subordination request to Debtors on March 25, 2009. Claimants spoke with Debtors on April 1, 2009, at which time Claimants asked when the next interest rate change would occur (the loan was an adjustable rate mortgage, so the interest rate would adjust periodically), and Debtors advised Claimants of the information requested.  On April 1, 2009, Debtors faxed a letter to Claimants' spouse, AnneMarie, requesting additional subordination information that was needed.<br><br>Claimant spoke with Debtors via phone on April 16, 2009, at which time Claimants inquired as to the status of his subordination request. Debtors advised Claimant that a letter was faxed to AnneMarie, Claimants' spouse, requesting the |  |

19

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | additional information needed; however, the information needed was not received.<br><br>Debtors mailed a "Goodbye" letter to Claimants on September 16, 2009 informing him of the service release occurring on October 1, 2009.<br><br>Based on the facts and reasons stated above, the proof of claim does not give rise to liability for claims of privity of contract, rescission based on mistake, or negligence. | |
| 4740 | Law Office of Pete W. Whaley<br><br>GMAC Mortgage v. Dorothy Clancy, et al.<br><br>1300 N. Main Street Williamstown, KY 41097<br><br>$400,000<br>General Unsecured<br><br>GMAC Mortgage, LLC | General Servicing Issues | Taylor, Bean & Whitaker Mortgage Corp. originated the loan on October 4, 2001. GMAC Mortgage purchased the loan from Taylor Bean and transferred its interest to Fannie Mae.  GMAC Mortgage LLC serviced the loan from March 1, 2002 until servicing transferred to GreenTree Servicing on February 1, 2013.<br><br>Claimants assert "Grant Circuit Court, Case No. 11-CI-396, GMAC v. Dorothy Clancy, et al." as basis for claim in box 2 of the proof of claim form.  Claimants attach their Answer to Complaint and Counterclaim and assert claims of breach of contract and intentional infliction of emotional distress on the basis that Debtors failed to provide Claimants with an accurate payoff statement, thereby causing Claimants to lose the short sale of their home to a prospective buyer who agreed to purchase the home.  Specifically, Claimants assert Debtors i) provided deficient payoff letters because they failed to include a "firm payoff and no per diem rate" from which Claimant could calculate a payoff, and the amounts were "greatly | |

20

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | inflated" by $3,110.15 from a payoff quote Claimant received just "thirteen days before." Claimants seeks unspecified damages arising from "irreparable harm" to their credit rating, attorney's fees and other costs defending the foreclosure action, and punitive damages in the amount of $400,000.<br><br>Debtors have no liability for the assertion that Debtors interfered with Claimant's ability to sell their property on the basis that Debtors' payoff quotes were untimely and deficient. All language and payoff estimates within the communications sent to Claimants were stated accurately. Furthermore, Debtors' alleged actions did not prevent Claimants from selling their property. Claimants' failure to accept the offer or to counteroffer was Claimants' own decision and does not create liability for Debtors. Additionally, as laid out below, Debtors provided Claimants with a valid payoff quote on July 25, 2011 from which Claimants could have reasonably assessed the feasibility of the $100,000 offer that expired August 11, 2011, or the possibility of a counter-offer. In short, Debtors' actions were proper, and Claimants have not demonstrated valid reasons why Claimants are entitled to any claim against the Debtors' estate.<br><br>Debtors' records show that on July 6, 2011, Claimants' loan was referred to foreclosure because Claimants were owing for April through July payments. Claimants allegedly received a contract to purchase their property ("Purchase Contract") from a third party on July 9, 2011. The Purchase Contract attached to the proof of claim is signed by the prospective buyers, but not Claimants, and | |

21

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | states "the date of Closing shall be on August 18, 2011 or before ("Anticipated Closing Date")." Debtors' records show that Claimants requested a payoff amount from Debtors on July 11, 2011. Debtors explained that they must contact the foreclosure attorney to receive a payoff quote and Debtors provided Claimants with the attorney's contact information.<br><br>On July 12, 2011, Debtors' foreclosure attorney sent a letter ("July Letter") to Claimants stating "Pursuant to the Fair Debt Collection Practices Act we are therefore required to provide you with the following information." The July Letter explained that Claimants' debt is owed to GMAC Mortgage, LLC and was $100,005.93 as of July 7, 2011. The July Letter also provides instructions and parameters for obtaining information about the identity of the "Original Creditor", how to dispute the validity of the debt or obtain a verification of debt. The July Letter also explains how to contact the foreclosure attorney. The July Letter is not a payoff quote, nor was it Debtors' intent that the letter serve as a payoff quote. In fact, nowhere in the July Letter do Debtors provide payment instructions or an itemization of balances due, which are standard pieces of information in Debtors' payoff quotes and payoff quotes provided by other servicers in the mortgage industry.<br><br>On July 13, 2011, Claimants spoke with Debtors via phone and requested the unpaid principal balance amount of their loan. Debtor advised the unpaid principal balance was $97,574.24, and explained that the unpaid principal balance | |

22

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | was not the amount necessary to pay off the loan in full.  Twelve days later on July 25, 2011, Debtors' foreclosure attorney sent Claimants a formal payoff quote ("July Payoff Quote") with a payoff amount of $103,116.80 that was good through August 11, 2011. The Payoff Quote included a full itemization of how the payoff amount was calculated.  Debtors' records show that Debtors' foreclosure attorney did not receive any subsequent payoff requests from Claimants from July 25, 2011 through August 18, 2011, the Anticipated Closing Date under the Purchase Contract.<br><br>Debtor has no liability for an alleged "inflated" payoff amount.  The amounts cited in the July Letter and July Payoff Quote were accurate as of the dates of those communications.  The $3,110.15 difference in the two communications -- $103,116.80 in the July Payoff Quote and $100,005.93 in the July Letter -- tie to account fees and charges, including foreclosure fees, which accrued or were estimated to accrue between July 8, 2011 and August 11, 2011.  Specifically, the July Payoff Quote includes the following items, which were not included in the amount sited in the July Letter: accrued interest for 35 days equaling $666.75; $1,968 in foreclosure fees/costs, late charges in amount of $151; recording charge of $13; property inspections totaling $54.25; and property preservation fees totaling $250.<br><br>Claimant contends that Debtor's payoff amounts provided to Claimant were deficient because they failed to include per diem amounts. Debtor has no liability | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | for failing to include per diem amounts in the payoff quotes because Kentucky statute and Federal Laws do not require Debtor to state the per diem amounts in a payoff quote.<br><br>As a result of the above, Claimants' allegations do not give rise to valid claims of breach of contract or intentional infliction of emotional distress. | |
| 3828 | Sylvia D Strupp vs Pioneer Title Company of ADA County an Idaho corporation dba Pioneer Lender Trustee Services et al<br><br>AHERIN RICE and ANEGON<br>1212 IDAHO STPO DRAWER 698<br>LEWISTON, ID 83501-0698<br><br>$540,000<br>Secured Claim<br>$39,893.95<br>General Unsecured Claim | Res Judicata | CLS Mortgage Corporation originated a loan to Claimant on March 7, 2007. Debtor Homecomings Financial purchased the loan from CLS Mortgage and transferred its interest to Residential Funding Company, LLC.  Residential Funding transferred its interest on or about May 1, 2007 when the loan was securitized and Deutsche Bank Trust Company Americas was appointed as trustee. Homecomings serviced the loan from March 7, 2007 until servicing transferred to GMAC Mortgage on July 1, 2009.  GMAC Mortgage serviced the loan until it was sold to a third party at foreclosure on January 4, 2011.<br><br>Claimant attaches to POC litigation styled as Styliva Strupp vs Pioneer Title Company of ADA County, MERS, GMAC Mortage, LLC (incorrectly identified as GMAC Mortgage Group, LLC), and Idaho Fish and Wildlife Foundation, Inc. filed in the District Court of the Second Judicial District of the State of Idaho for the County of Idaho, Case No. CV40758 filed on February 7, 2011 alleging breach of contract/misrepresentation.<br><br>Summary Judgment was granted in favor of all defendants, including the Debtors, | |

ny-1186031

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | GMAC Mortgage, LLC | | on November 29, 2011 and the complaint was dismissed.  A copy of the order granting summary judgment is attached to the Objection as <u>Exhibit 8-A</u>.  Claimant filed an appeal of the summary judgment dismissal to the Idaho Supreme Court on December 20, 2011, as Docket No. 39506-2012.  In Idaho, a judgment on appeal is considered a final judgment for purposes of res judicata.  <u>See</u> <u>In re Reader</u>, 183 B.R. 630, 633 (Bankr. D. Id. 1995) (<u>citing</u> <u>Gilbert v. State</u>, 809 P. 2d 1164 (Id. Ct. App. 1991)).<br><br>In the alternative, the Borrower Trust has been advised that a stipulation for dismissal with prejudice was filed by Claimant on November 5, 2014 as part of a settlement with other parties.  The Supreme Court ordered the dismissal of the appeal on November 13, 2014.  A copy of the order dismissing the appeal is attached to the Objection as <u>Exhibit 8-B</u>.  While Debtors were not part of the settlement, the settlement terms required that Claimant's proof of claim against Debtors be withdrawn.  The Borrower Trust provided Claimant with the form to withdraw the claim, but it was never returned.  Instead, the Borrower Trust received a motion from Claimant seeking to amend the complaint.  The Borrower Trust responded that because the appeal was dismissed, there is no complaint to amend.  The Claimant has provided no response and has not filed anything on the docket in this case or in the state court. | |

ny-1186031

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| 1684 | Jeffrey Alperin<br><br>Howard Rabin, P.C.<br>112 New South Road<br>Hicksville, NY 11801<br><br>Unliquidated<br><br>GMAC Mortgage, LLC | General No Liability | Claimant attaches to his proof of claim his answer to a foreclosure complaint styled as US Bank NA, as trustee vs Jeffrey Alperin, Joann Alperin, which was filed in the Supreme Court of the State of New York, County of Suffolk, Case No. 20576/2011 on September 6, 2011.  The Answer contains general defenses to the foreclosure action, did not assert any counterclaims and only sought dismissal of the foreclosure, not any monetary damages.<br><br>New Century Mortgage Corporation originated the loan on December 14, 2005. Debtor Residential Funding Company LLC purchased the loan from New Century and transferred its interest when the loan was securitized on or about February 1, 2006 when US Bank, NA was appointed as trustee.  Homecomings Financial serviced the loan from February 22, 2006 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009.  GMAC Mortgage serviced the loan until servicing transferred to Ocwen Loan Servicing on February 16, 2013.  At the time of transfer the loan was due for January 1, 2009.<br><br>No Debtor was a party to the foreclosure action when the Answer was filed, there were no counterclaims asserted, there was no specific facts alleging any wrongdoing of any Debtor and Claimant was not seeking any damages. | |
| 5720 | Scott James Leonhardt<br><br>824 N. Market Street, Suite 810 | Origination Issues, Escrow Issues, General | Gateway Funding Diversified Mortgage Services L/P originated the loan on December 6, 2010. Shortly after origination, Homecomings Financial, LLC purchased the loan from Gateway. Debtor GMAC Mortgage, LLC purchased the | |

ny-1186031

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
|  | Wilmington, DE 19805<br><br>$53,125.20<br>General Unsecured<br><br>GMAC Mortgage, LLC | No Liability | loan from Homecomings and transferred its interest to Freddie Mac on or around February 16, 2011. Debtor GMAC Mortgage LLC serviced the loan from January 20, 2011 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>In Claim No. 5720, Claimant asserts a claim for $53,125.20 which purportedly ties to additional escrow for "city taxes" Claimant is "forced to pay during the life of the mortgage" that were not disclosed to him on the HUD1 at origination. Claimant asserts that he relied on the HUD1 and believed the monthly payment of $1,835.65 would stay the same for the life of the loan. Instead, Claimant asserts Debtor wrongfully increased his payment to $2,202.98. Claimant asserts that while Debtor did not originate the loan, Debtor had a "duty to review the loan prior to purchasing it" from the originating lender.  Debtors sent Claimant a letter requesting additional information and documentation in support of claim; however, Claimant failed to respond.<br><br>Debtors have no liability for the assertion that the originator or its agents failed to notify Claimant of Claimant's city tax obligations and the impact of those tax obligations on Claimant's escrow responsibilities because no Debtor was involved in the origination of the loan. Debtors have no liability for the assertion that Debtors had a "duty to review the loan prior to purchasing it" because the assertion does not give rise to liability of Debtor or relief that Claimant can seek from Debtor.  Furthermore, Claimant's common-law allegations do not impute |  |

ny-1186031

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | assignee liability as to Debtors in their respective roles as servicers or investors of the loan.<br><br>Claimant also asserts that Debtors "profited" from the purported wrongful escrow increase, which is incorrect. All funds collected for escrow are remitted to the taxing authorities or an insurance carrier for the benefit of Claimant. Accordingly, Claimant has not demonstrated how they were damaged by Debtors' actions of collecting escrow funds and paying Claimant's taxes.<br><br>Notwithstanding the above, Debtors have no liability for requiring additional escrows for taxes because Claimant agreed to escrow for all property taxes. Per the terms of Claimant's mortgage, taxes are Escrow Items for which the Claimant is responsible to remit to Debtor. Section 3 of the Deed of Trust signed by the Claimant states "If there is a surplus of funds held in escrow... Lender shall account to Borrower for the excess funds...If there is a shortage of funds held in escrow... Lender shall notify Borrower... and borrower shall pay to Lender the amount necessary to make up the shortage... but in no more than 12 monthly payments."<br><br>Furthermore, the HUD-1 does not state that the total mortgage payment including taxes will not change for the life of the loan as the Claimant asserts in their proof of claim.  The HUD-1 states that the monthly payment for principal, interest and mortgage insurance cannot rise above $1,609.46. This amount does | |

28

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | not include Claimant's tax obligations. Additionally, the Good Faith Estimate signed by the Claimant shows that the monthly payment includes principal, interest and mortgage insurance ($1605.83 per month), and that an escrow account will be set up for payment of property taxes and other property related items in addition to the monthly payment amount.<br><br>At the time of transfer to Ocwen, the loan was current. | |
| 2006 | Maria Aljaksina<br><br>2971 Wagonwheel Troy, MI 48085<br><br>$213.46 General Unsecured<br><br>Residential Capital, LLC | Paid and Satisfied | On April 11, 2012, the Office of the Comptroller of the Currency and the Federal Reserve issued an order ("the Consent Order") against Debtors and other non-debtor servicers whereby borrowers with foreclosure files within a 2-year period from 2009 and 2010 were entitled to receive certain cash payments. On December 11, 2013, the Court entered the Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors approving the terms of the Chapter 11 plan, as amended (the "Plan") filed in the Chapter 11 Cases [Docket No. 6065]. On December 17, 2013, the effective date of the Plan occurred. The Plan defines "Consent Order Borrower Claims" as claims held by Borrowers arising from foreclosure actions that were pending at any time during the 2-year window defined in the Consent Order. Under Article IV.F.6 of the Plan (Distributions from the Borrower Claims Trust), "If any Borrower Claim constitutes, in whole or in part, a Consent Order Borrower Claim, the Allowed amount of such Borrower Claim shall be reduced to the extent paid pursuant to the Consent Order or any | |

29

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | settlement of the Debtors' obligations thereunder, without further order of the Bankruptcy Court."<br><br>In connection with the Consent Order, Claimant received a payment of $1,000. Accordingly, Debtor has no liability because Claimant's asserted damages of $213.46 were satisfied in full by virtue of Claimant's Consent Order payment. | |
| 4821 | Steven T. Biermann and Tracy Watson Biermann<br><br>Justin M. Smith, Esq. J.M. Smith Co., LPA 24400 Highpoint Road, Suite 7 Beachwood, OH 44122<br><br>$250,000 General Unsecured<br><br>GMAC Mortgage, LLC | Res Judicata, Wrongful Foreclosure | Loan was originated by Howard Hannah Mortgage Services on February 13, 2008.  Non-Debtor GMAC Bank purchased the loan from Howard.  Debtor GMAC Mortgage, LLC purchased the loan from GMAC Bank and transferred its interest to Fannie Mae on or about March 12, 2008.  Debtor GMAC Mortgage, LLC serviced the loan from February 13, 2008 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimants attach to the proof of claim an answer and counterclaim filed in the foreclosure action styled GMAC Mortgage vs Steven Biermann, Court of Common Pleas, Geaugo County, OH, Case No. 11 F 0776.  The counterclaim, filed August 31, 2011, contained causes of action for (1) fraud, (2) slander of title, (3) breach of contract, and (4) violation of the Ohio consumer sales practices act ("CSPA").  Debtor filed a Motion to Dismiss on September 28, 2011.  On April 30, 2012, counts 1 & 3 (fraud and breach of contract) were dismissed with prejudice.  A copy of the order dismissing counts 1 and 3 is attached to the Objection as Exhibit 9.  The remaining claims for slander of title and violation of | |

ny-1186031

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | the CSPA were stayed by Debtors' bankruptcy.<br><br>The counterclaims were all premised on the allegation that Mr. Jeffrey Stephan "robo-signed" the Assignment of Mortgage, as such, Claimants contend, without providing any evidence to substantiate the inaccuracy of any statement in the Assignment, the allegedly "false" Assignment of Mortgage constituted fraud and a breach of the Note and Mortgage, was a deceptive, unfair and/or unconscionable act in violation of the CSPA and, through its recording, constituted a slanderous statement on their property's chain of title. Claimants' blanket allegation does not amount to a prima facie valid claim for slander of title or violations of the CSPA. The assignment of mortgage, from MERS to GMAC Mortgage, executed on June 2, 2009 was done with proper authority. See MERS corporate resolution, attached to the Objection as Exhibit 10.<br><br>In addition, the Claimants' slander of title claim is also otherwise time-barred by the applicable one-year statute of limitations. See Ohio Revised Code § 2305.11(A) ("An action for . . . slander . . . shall be commenced within one year after the cause of action accrued . . . ."). The Ohio Supreme Court has specifically held that the one-year statute of limitations for "slander" applies to "slander of title" claims. See Buehrer v. Provident Mutual Life Ins. Co., 123 Ohio St. 264, 268 (1931) and Billingsley v. Townsend, 132 Ohio St. 603, 604-605 (1937).<br><br>Also, the CSPA is inapplicable to the assignment of the Claimants' mortgage. The | |

31

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | CSPA only prohibits certain acts in connection with a "consumer transaction." <u>See</u> Ohio Rev. Code §§ 1345.02(A), 1345.03(A).  The CSPA's definition of "consumer transaction" specifically exempts real estate transactions from its coverage.  <u>See</u> Ohio Rev. Code § 1345.01(A).  The Assignment of Mortgage is not itself a "consumer transaction."  The CSPA defines a "consumer transaction" as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things."  <u>See</u> Ohio Revised Code §1345.01(A).  The Biermanns do not allege (nor could they) that the Assignment of Mortgage at issue is a transaction that meets this definition.  Rather, the allegedly deficient execution of the Assignment of Mortgage is not a consumer transaction, because it is not "a sale, lease, assignment, award by chance, or other transfer" of anything "to an individual for purposes that are primarily personal, family, or household," as is required for the CSPA to apply.  Rather, the Assignment of Mortgage was from Howard Hanna, a commercial entity, to GMAC Mortgage, another commercial entity.  The original Mortgage and the assignment of the Biermann Mortgage are part and parcel of a real estate transaction:  Mr. Biermann voluntarily granted a mortgage interest in the real property as security for repayment of the loan.  And, in doing so, he expressly agreed that the Note and Mortgage could be assigned (see ¶ 20 of the Mortgage).  Therefore, the Assignment of Mortgage cannot form the basis for a CSPA claim. | |

32

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | In addition, only "suppliers" can be liable under the CSPA and, in this regard, the CSPA specifically exempts assignees like GMAC Mortgage from the definition of "supplier" in the context of the Biermanns' specific claims. Section 1345.01(C) of the CSPA provides in relevant part that "[i]f the consumer transaction is in connection with a residential mortgage, 'supplier' does not include an assignee or purchaser of the loan for value, except as otherwise provided in section 1345.091 of the Revised Code." Section 1345.091 provides:<br><br>No claim or defense under this chapter may be asserted by the attorney general or any consumer against an assignee or purchaser of a mortgage loan for value unless any one of the following applies:<br><br>(A) The violation was committed by the assignee or purchaser.<br>(B) The assignee or purchaser is affiliated by common control with the seller of the loan at the time of such assignment or purchase.<br><br>Based on the facts and reasons stated above, the proof of claim does not give rise to liability for claims of slander of title or violation of the OH consumer sales practices act. | |
| 761 | Law Offices of Sheldon J. Vann & Associates<br><br>GMAC Mortgage LLC v | Duplicate / Redundant Claim | Claim No. 761 is identical to surviving Claim No. 756 except that Claim No. 761 does not list a Debtor or Case Number on the proof of claim form. | |

ny-1186031

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | Gary Burden and Ayanna Burden 841 Prudential Dr 12th Fl Jacksonville, FL 32207<br><br>$150,000.00 General Unsecured<br><br>GMAC Mortgage, LLC | | | |
| 5642 | Julie A. Humphries 11221 McCree Rd Dallas, TX 75238<br><br>$134,800.00 Secured<br><br>GMAC Mortgage, LLC | General No Liability | Loan was originated by WR Starkey Mortgage, LLP on or about September 26, 2005.  Non-Debtor GMAC Bank purchased the loan from WR Starkey.  Debtor, GMAC Mortgage purchased the loan from GMAC Bank and transferred its interest to Fannie Mae on or about November 10, 2005.  GMAC Mortgage serviced the loan from October 12, 2005 until servicing transferred to GreenTree Loan Servicing on February 1, 2013.  As of the date of service transfer to GreenTree, the loan was due for March 1, 2010.<br><br>Claimant attaches to her proof of claim litigation filed against Debtor in the District Court of Dallas County, TX, 298th Judicial District, Case No. 11-00856 on or about January 26, 2011.  The lawsuit was brought to contest Debtor's right to foreclose on the property, asserting that Claimant did not sign the Note and therefore the lien on which the Note is based is invalid.  The lawsuit seeks to quiet | |

ny-1186031

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | title and an order terminating all rights of Debtor to collect on the Note.<br><br>Debtor has no liability for this claim because no Debtor has any continued interest in the property or the Note.  Any defenses or claims related to the property or enforcement/collection on the Note belong with the investor, Fannie Mae and current servicer GreenTree.  There was no claim for monetary damages brought in the complaint attached to the proof of claim. | |
| 297 | NDEX West LLC TS XXXXXXXXXX1737 Fremont Investment & Loan APN 134-421-026-3 Patrick De Jesus Title Order No 100725771<br><br>LSI Title Company/Agency Sales & Posting 3210 El Camino Real, Suite 200 Irvine, CA 92602<br><br>$.04<br>Secured Claim | General No Liability | Claimant's loan was originated by Non-Debtor Residential Mortgage Capital on January 5, 2005. Non-Debtor Impac Funding Corporation purchased the loan and transferred its interest when the loan was securitized on or about June 5, 2005 where Wells Fargo, NA was appointed trustee. Debtor GMAC Mortgage, LLC serviced the loan from July 22, 2015 until February 16, 2013 when the servicing transferred to Ocwen Loan Servicing, LLC. At the time of servicing transfer to Ocwen, Claimant was due for January 1, 2012 payment.<br><br>In the proof of claim, Claimant asserts a secured claim in the amount of $.04 and states "SEC Servicing Fee" as basis for claim. Claimant attaches a 1 page memorandum stating the claims are filed by a "Fedelina Roybal-de-Aguero 2008 Trust" ("Claimant").<br><br>Claimant does not provide evidence to substantiate the purported legal basis for asserting such a fee against the Debtors. Additionally, Debtor examined its servicing records and found no evidence of monies owing to Claimant, and found | |

ny-1186031

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
|  | GMACR Mortgage Products, LLC |  | no evidence connecting Claimant to a "SEC servicing fee".<br><br>Additionally, it should be noted that on June 3, 2013 the United States Bankruptcy Court Southern District of New York ruled that Claimant was permanently enjoined from filing "any new bankruptcy case or adversary proceeding in this and any other United States Bankruptcy Court, and permanently enjoined from filing any adversary proceeding or document (including proofs of claim) in any other bankruptcy case or aderversary proceeding without first obtaining leave to file from the United States Bankruptcy Judge presiding over such bankruptcy case or adversary proceeding, as applicable" (per case No. 12-11580 (SHL); Adv. Pro. No. 12-01901 (SHL); Doc 13, pag 12, section E). |  |
| 299 | NDEX West LLC TS XXXXXXXXXX1737 Fremont Investment & Loan APN 134-421-026-3 Patrick De Jesus Title Order No 100725771<br><br>LSI Title Company/Agency Sales & Posting 3210 El Camino Real, Suite 200 | General No Liability | Claimant's loan was originated by Non-Debtor Residential Mortgage Capital on January 5, 2005. Non-Debtor Impac Funding Corporation purchased the loan and transferred its interest when the loan was securitized on or about June 5, 2005 where Wells Fargo, NA was appointed trustee. Debtor GMAC Mortgage, LLC serviced the loan from July 22, 2015 until February 16, 2013 when the servicing transferred to Ocwen Loan Servicing, LLC. At the time of servicing transfer to Ocwen, Claimant was due for January 1, 2012 payment.<br><br>In the proof of claim, Claimant asserts a secured claim in the amount of $.04 and states "SEC Servicing Fee" as basis for claim. Claimant attaches a 1 page memorandum stating the claims are filed by a "Fedelina Roybal-de-Aguero 2008 |  |

36

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | Irvine, CA 92602<br><br>$.04<br>Secured Claim<br><br>HFN REO Sub II, LLC | | Trust" ("Claimant").<br><br>Claimant does not provide evidence to substantiate the purported legal basis for asserting such a fee against the Debtors. Additionally, Debtor examined its servicing records and found no evidence of monies owing to Claimant, and found no evidence connecting Claimant to a "SEC servicing fee".<br><br>Additionally, it should be noted that on June 3, 2013 the United States Bankruptcy Court Southern District of New York ruled that Claimant was permanently enjoined from filing "any new bankruptcy case or adversary proceeding in this and any other United States Bankruptcy Court, and permanenty enjoined from filing any adversary proceeding or document (including proofs of claim) in any other bankruptcy case or aderversary proceeding without first obtaining leave to file from the United States Bankruptcy Judge presiding over such bankruptcy case or adversary proceeding, as applicable" (per case No. 12-11580 (SHL); Adv. Pro. No. 12-01901 (SHL); Doc 13, pag 12, section E). | |
| 306 | NDEX West LLC TS XXXXXXXXXX1737 Fremont Investment & Loan APN 134-421-026-3 Patrick De Jesus Title Order No 100725771 | General No Liability | Claimant's loan was originated by Non-Debtor Residential Mortgage Capital on January 5, 2005. Non-Debtor Impac Funding Corporation purchased the loan and transferred its interest when the loan was securitized on or about June 5, 2005 where Wells Fargo, NA was appointed trustee. Debtor GMAC Mortgage, LLC serviced the loan from July 22, 2015 until February 16, 2013 when the servicing transferred to Ocwen Loan Servicing, LLC. At the time of servicing transfer to | |

37

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | LSI Title Company/Agency Sales & Posting 3210 El Camino Real, Suite 200 Irvine, CA 92602<br><br>$.04<br>Secured Claim<br><br>Executive Trustee Services, LLC | | Ocwen, Claimant was due for January 1, 2012 payment.<br><br>In the proof of claim, Claimant asserts a secured claim in the amount of $.04 and states "SEC Servicing Fee" as basis for claim. Claimant attaches a 1 page memorandum stating the claims are filed by a "Fedelina Roybal-de-Aguero 2008 Trust" ("Claimant").<br><br>Claimant does not provide evidence to substantiate the purported legal basis for asserting such a fee against the Debtors. Additionally, Debtor examined its servicing records and found no evidence of monies owing to Claimant, and found no evidence connecting Claimant to a "SEC servicing fee".<br><br>Additionally, it should be noted that on June 3, 2013 the United States Bankruptcy Court Southern District of New York ruled that Claimant was permanently enjoined from filing "any new bankruptcy case or adversary proceeding in this and any other United States Bankruptcy Court, and permanenty enjoined from filing any adversary proceeding or document (including proofs of claim) in any other bankruptcy case or aderversary proceeding without first obtaining leave to file from the United States Bankruptcy Judge presiding over such bankruptcy case or adversary proceeding, as applicable" (per case No. 12-11580 (SHL); Adv. Pro. No. 12-01901 (SHL); Doc 13, pag 12, section E). | |

ny-1186031

**<u>Exhibit B</u>**

ny-1186747

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)
EXHIBIT B
EIGHTY-SEVENTH OMNIBUS OBJECTION - REDUCE & ALLOW (BORROWER CLAIMS)

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | Asserted Debtor Name | Asserted Case Number | Reduced and Allowed Claim Amount | Modified Debtor Name | Modified Case Number | Reason for Reduction and Allowance of Claim |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | GMAC Mortgage LLC v Gary Burden and Ayanna Burden Law Offices of Sheldon J Vann and Associates 841 Prudential Drive12th Fl Jacksonville, FL 32207 | 756 | 09/25/2012 | $0.00 Administrative Priority $0.00 Administrative Secured $0.00 Secured $0.00 Priority $150,000.00 General Unsecured | GMAC Mortgage, LLC | 12-12032 | $0.00 Administrative Priority $0.00 Administrative Secured $0.00 Secured $0.00 Priority $25,000.00 General Unsecured | GMAC Mortgage, LLC | 12-12032 | On April 11, 201,2 the Office of the Comptroller of the Currency and the Federal Reserve issued an order ("the Consent Order") against Debtors and other non-debtor servicers whereby borrowers with foreclosure files within a 2-year period from 2009 and 2010 were entitled eligible to receive certain cash payments.  On December 11, 2013, the Court entered the Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors approving the terms of the Chapter 11 plan, as amended (the "Plan") filed in the Chapter 11 Cases [Docket No. 6065].  On December 17, 2013, the effective date of the Plan occurred.  The Plan defines "Consent Order Borrower Claims" as claims held by Borrowers arising from foreclosure actions that were pending at any time during the 2-year window defined in the Consent Order.  Under Article IV.F.6 of the Plan (Distributions from the Borrower Claims Trust), "If any Borrower Claim constitutes, in whole or in part, a Consent Order Borrower Claim, the Allowed amount of such Borrower Claim shall be reduced to the extent paid pursuant to the Consent Order or any settlement of the Debtors' obligations thereunder, without further order of the Bankruptcy Court." In connection with the Consent Order, Claimant received payment of $125,000.  As a result, the Borrower Trust seeks to reduce and allow Claim No. 756 in the amount of $25,000 against GMAC Mortgage, LLC, which is equal to Claimant's asserted claim of $150,000 less Claimant's Consent Order payment of $125,000. |

**<u>Exhibit C</u>**

ny-1186747

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)
EXHIBIT C
EIGHTY-SEVENTH OMNIBUS OBJECTION - REDESIGNATE, REDUCE & ALLOW (BORROWER CLAIMS)

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | | Asserted Debtor Name | Asserted Case Number | Reduced and Allowed Claim Amount | | Modified Debtor Name | Modified Case Number | Reason for Redesignation. Reason for Reduction and Allowance of Claim |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Early Case Resolution involving MARTIN JEORGE A AND ROBERT ALICEA Reade and Associates 1333 N Buffalo DriveSuite 210 Las Vegas, NV 89128 | 2399 | 11/05/2012 | $0.00 $0.00 $0.00 $0.00 $169,980.00 | Administrative Priority Administrative Secured Secured Priority General Unsecured | Executive Trustee Services, LLC | 12-12028 | $0.00 $0.00 $0.00 $0.00 $44,980.00 | Administrative Priority Administrative Secured Secured Priority General Unsecured | GMAC Mortgage, LLC | 12-12032 | Claimant improperly asserts a claim against Executive Trustee Services, LLC when GMAC Mortgage, LLC is the correct Debtor for the claims at issue in Claim No. 2399.

On April 11, 2012, the Office of the Comptroller of the Currency and the Federal Reserve issued an order ("the Consent Order") against Debtors and other non-debtor servicers whereby borrowers with foreclosure files within a 2-year period from 2009 and 2010 were eligible to receive certain cash payments.  On December 11, 2013, the Court entered the Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors approving the terms of the Chapter 11 plan, as amended (the "Plan") filed in the Chapter 11 Cases [Docket No. 6065].  On December 17, 2013, the effective date of the Plan occurred.  The Plan defines "Consent Order Borrower Claims" as claims held by Borrowers arising from foreclosure actions that were pending at any time during the 2-year window defined in the Consent Order.  Under Article IV.F.6 of the Plan (Distributions from the Borrower Claims Trust), "If any Borrower Claim constitutes, in whole or in part, a Consent Order Borrower Claim, the Allowed amount of such Borrower Claim shall be reduced to the extent paid pursuant to the Consent Order or any settlement of the Debtors' obligations thereunder, without further order of the Bankruptcy Court."
In connection with the Consent Order, Claimant received payment of $125,000.

As a result, the Borrower Trust seeks to reduce and allow Claim No. 2399 to a claim in the amount of $44,980 against GMAC Mortgage, LLC, which is equal to Claimant's asserted claim of $169,980 less Claimant's Consent Order payment of $125,000. |

**<u>Exhibit 2</u>**

**Priore Declaration**

ny-1186481

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ )
                                                                           )
In re:                                                              )      Case No. 12-12020 (MG)
                                                                           )
RESIDENTIAL CAPITAL, LLC, et al.,           )      Chapter 11
                                                                           )
                                        Debtors.               )      Jointly Administered
                                                                           )
------------------------------------------------------------ )

### DECLARATION OF KATHY PRIORE IN SUPPORT OF RESCAP BORROWER CLAIMS TRUST'S EIGHTY-SEVENTH OMNIBUS OBJECTION TO CLAIMS ((I) NO LIABILITY BORROWER CLAIMS, (II) REDUCE AND ALLOW BORROWER CLAIM, AND (III) REDESIGNATE, REDUCE AND ALLOW BORROWER CLAIM)

I, Kathy Priore, hereby declare as follows:

1.         I serve as Associate Counsel for the ResCap Liquidating Trust (the "Liquidating Trust"), established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] confirmed in the above-captioned Chapter 11 Cases.  During the Chapter 11 Cases, I served as Associate Counsel in the legal department of Residential Capital, LLC ("ResCap"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "Debtors").  On May 1, 2008, I began as in-house litigation counsel at ResCap.  Prior to my in-house litigation counsel position, I held various roles within the legal department at ResCap.

2.         In my role as Associate Counsel at ResCap, I was responsible for the management of litigation, including, among others, residential mortgage-related litigation.  In connection with ResCap's chapter 11 filing, I also assisted the Debtors and their professional advisors in connection with the administration of the chapter 11 cases, including the borrower litigation matters pending before this Court.  In my current position as Associate Counsel to the

Liquidating Trust, among my other duties, I continue to assist the Liquidating Trust and the Borrower Claims Trust (the "Borrower Trust") in connection with the claims reconciliation process.[1]  I am authorized to submit this declaration (the "Declaration") in support of the *ResCap Borrower Claims Trust's Eighty-Seventh Omnibus Objection to Claims ((I) No Liability Borrower Claims), (II) Reduce and Allow Borrower Claim, and (III) Redesignate, Reduce, and Allow Borrower Claim)* (the "Objection").[2]

3.     Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations, information learned from my review of relevant documents and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors, the Liquidating Trust, its professionals and consultants.  If I were called upon to testify, I could and would testify competently to the facts set forth in the Objection on that basis.

4.     In my capacity as Associate Counsel, I am intimately familiar with the claims reconciliation process in these Chapter 11 Cases with regard to Borrower Claims.  Except as otherwise indicated, all statements in this Declaration are based upon my familiarity with the Debtors' books and records, the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or my review of relevant documents.  I or my designee at my direction have reviewed and analyzed the proof of claim forms and supporting documentation, if any, filed by the claimants listed on Exhibit A, Exhibit B, and Exhibit C annexed to the Proposed

---

[1] The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

[2] Defined terms used but not defined herein shall have the meanings ascribed to such terms as set forth in the Objection.

Order.  Since the Plan became effective and the Borrower Trust was established, I, along with other members of the Liquidating Trust's management or other employees of the Liquidating Trust have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims, and determine the appropriate treatment of the same.  In connection with such review and analysis, where applicable, I or the Liquidating Trust personnel under my supervision, and the Liquidating Trust's and the Borrower Trust's professional advisors have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Debtors' books and records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (v) the Claims Register maintained in the Debtors' Chapter 11 Cases.

### The No-Liability Borrower Claims

5.    The Liquidating Trust, in support of the Borrower Trust, diligently evaluated any information provided by the claimants who filed the No Liability Borrower Claims, listed on Exhibit A to the Proposed Order.  In accordance with the Borrower Claim Procedures, the Debtors previously contacted those Borrowers who filed the No Liability Borrower Claims whose claims were filed with insufficient or no supporting documentation and requested that they provide additional information so that the Debtors could reconcile such claimants' filed claims with the Debtors' books and records.  Beginning in May of 2013, the Debtors sent Request Letters, substantially in the form as those attached at Exhibit 4 to the Objection, to all of the Borrowers that filed the No Liability Borrower Claims except one[3] requesting additional documentation in support of their respective claim.  The Borrowers who

---

[3] The Debtors' did not send a Request Letter the holder of claim no. 2006 because the basis for the objection to this claim is that the claim has been paid and satisfied, and as a result, a request letter was not necessary under the Borrower Claims Procedures.  See Claims Procedures Order at 3.

received the Request Letters either failed to respond to the Debtors' requests or failed to provide sufficient information to establish a basis for liability.

6.     At my direction and with my oversight, the Liquidating Trust, in support of the Borrower Trust, thoroughly reviewed the No Liability Borrower Claims listed on <u>Exhibit A</u> to the Proposed Order, together with information contained within the Debtors' books and records.

7.     These efforts led to the conclusion that there is no present liability due and owing to such claimants and the specific objections to the allowance of such claims are set forth on <u>Exhibit A</u> to the Proposed Order in the column titled *"No Liability Summaries."* The explanations for the requested disallowance of each claim set forth under the heading titled *"No Liability Summaries"* are incorporated by reference into this Declaration as if fully set forth herein.

8.     In general, the Borrower Trust's objection to each No Liability Borrower Claim falls under one or more of the following ten categories:

(i) ***General No Liability***.  This category includes claims:
- asserting that the Debtors' charged amounts higher than was stated on the Claimant's HUD-1 statement when this allegation is incorrect; or
- seeking to enforce equitable claims against the Debtors such as quiet title or dismissal of a foreclosure, where the Debtors no longer hold an interest in the property
- that otherwise do not constitute a valid obligations of the Debtors (collectively, the "<u>General No Liability Claims</u>").

To assess the validity of these claims, the Borrower Trust reviewed the Debtors' books and records, including (a) the claimant's transaction history showing the payments the claimant has made and the Debtors' application of those payments to principal, interest, fees, and escrows, as applicable (the "<u>Loan Payment History</u>"), (b) the Debtors' records tracking the history of the servicing of the claimant's loan, including but not limited to documenting instances of i) communication with the claimant, ii) letters and notices sent by the Debtors to the claimant, and iii) the Debtors' efforts to foreclose, conduct loss mitigation efforts, inspect properties, pay taxes and insurance on behalf of the claimant, and other standard servicing activity (collectively, the "<u>Internal Servicing Notes</u>"), and

4

(c) other records as applicable.  Based on its review, the Borrower Trust has determined that the Debtors are not liable for the General No Liability Claims.  <u>See</u> Objection at p. 8.

(ii) ***<u>Origination Issues</u>***.  This category includes claims based on loan origination issues, which include, without limitation, claims relating to disputes regarding the loan application and closing process, disclosures, loan terms, rights of rescission or a purportedly defective title exam (the "<u>Origination Issues Claims</u>").  To assess the validity of these claims the Borrower Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, including the claimants' executed mortgage notes and other documents that are specifically identified in the Objection, <u>see</u> Objection at p. 9, to determine whether any Debtor was involved in the origination of the applicable loans, and if so, if the claim would be barred by the applicable statute of limitations.

Based on this review and the Borrower Trust's review of applicable state and federal law, the Origination Issues Claims are not valid liabilities of the Debtors because either (1) no Debtor entity was involved in the origination of the applicable loans and vicarious liability cannot be imputed to any Debtor in its capacity as servicer or assignee of the loans, or (2) the claim is barred by the applicable statute of limitations.

(iii) ***<u>Escrow Issues</u>***.  This category includes a claim based on the alleged improper application of escrow amounts (the "<u>Escrow Issues Claim</u>").  To assess the validity of this claim, the Borrower Trust examined the Debtors' books and records, including the Debtors' escrow receipts and payments, the annual escrow analysis sent to Borrowers and any Internal Servicing Notes and written communication between the Debtors and the applicable Borrower(s).  <u>See</u> Objection at pp. 9-10.

Based on this review, the Escrow Issues Claims are not valid liabilities of the Debtors. The Borrower Trust determined that the amount charged to the Claimant's escrow account for payment of the Claimant's property taxes was appropriate as the Claimant's deed of trust included taxes as an escrow item. The Borrower Trust also confirmed that the deed of trust permitted the Debtors to charge the Claimant for any shortage in the escrow account.

(iv) ***<u>Wrongful Foreclosure</u>***.  This category includes a claim based, either directly or indirectly, on allegations of wrongful foreclosure by the Debtors (the "<u>Wrongful Foreclosure Claim</u>").  To assess the validity of this claim, the Borrower Trust examined the Debtors' books and records to verify that the Debtors foreclosed properly and, where applicable, took the appropriate loss mitigation steps.  Specifically, the Borrower Trust reviewed Payment History, Internal Servicing Notes, as well as, where applicable, the claimants' loan modification applications, loan modification approval letters, loan modification denial letters, compliance with loan modifications (trial and/or permanent), compliance with any other payment plans (forbearance and repayment), short sale applications and history, investor guidelines and/or direction, breach letters, and/or foreclosure related documents.  Where a claimant asserted that he or she did not execute the mortgage note, the Borrower Trust compared the signatures on other executed documents in the claimant's file, as well as examining the Loan Payment History and any other

5

information in the Debtors' possession.  Moreover, where a Wrongful Foreclosure Claim was based on issues related to a short sale, the Borrower Trust further reviewed the Debtors' records to determine whether a short sale approval had been requested, and, if so and if such request was denied, whether the reason for denial was proper.[4]  Based on its review, the Borrower Trust determined that the Debtors are not liable for the Wrongful Foreclosure Claim.  See Objection at pp. 10-11.

(v) **_Res Judicata._** This category includes claims related to litigation that have already been adjudicated (the "Res Judicata Claims").  The Borrower Trust diligently reviewed the case notes from the Debtors' internal electronic case management system and the Debtors' internal files, relating to the litigation, including relevant underlying documents such as the note, loan agreement and/or deed of trust (the "Litigation File").  The Debtors or the Liquidating Trust (on behalf of the Borrower Trust) as applicable, supplemented the Litigation File by reaching out to the outside counsel who previously handled the litigation for the Debtors to obtain a current update as to the status of the litigation, as well as copies of any relevant case dockets, complaints, answers, counterclaims, motions, responsive pleadings, judgments, orders, and any other relevant documents relating to the underlying litigation.  The allegations set forth in the Res Judicata Claims were compared to the information contained in the Litigation Files (as supplemented with information provided by outside counsel), as well as the Debtors' Books and Records.  See Objection at pp. 11-12.

(vi) **_Loan Modification_**. This category includes claims based on loan modification issues (the "Loan Modification Claims"), which allege, among other things, that the Debtors (a) failed to provide a loan modification,[5] or (b) provided a loan modification, but the claimant believes the terms of the modification were not as favorable to the claimant as those to which claimant believed he or she was entitled.  To assess the validity of these claims, the Borrower Trust examined the Debtors' books and records to verify that the Debtors followed the applicable investor guidelines and policies regarding loan modifications.  Specifically, the Borrower Trust reviewed Internal Servicing Notes, Loan Payment History, and, where applicable, loan modification agreements, loan modification applications, loan modification denial letters, loan modification approval letters, the claimant's compliance with modifications (trial and/or permanent) and any instructions or guidelines provided by the investor for the claimant's loan.  See Objection pp. 12-13.

Based on its review, the Borrower Trust determined that the Debtors are not liable for the Loan Modification Claims because: (a) in cases where a loan modification request was

---

[4] Appropriate reasons for denying a short sale request include, without limitation, a claimant's failure to submit executed sale contracts, a claimant's failure to obtain approval from second lien holders and/or a claimant's short sale request did not comply with the investor's requirements.

[5] As a regular part of the Debtors' business practices, the Debtors offered mortgage loan modifications to Borrowers in financial distress, pursuant to certain guidelines established by the investors ("Traditional Modifications").  The Home Affordable Modification Program ("HAMP") is an administrative program that was implemented in April 2009 by the United States Treasury Department to help eligible homeowners with loan modifications on their home mortgage debt.  HAMP provided the Debtors with an additional type of loan modification (a "HAMP Modification") for assisting eligible Borrowers experiencing financial distress.

ny-1186732

denied, the Debtors complied with the applicable investor guidelines and policies governing the loan modification process and (b) in the cases where the claimant obtained a loan modification, the claimant was not damaged by the loan modification assistance provided.

(vii) **_Judicial Estoppel and Standing_**.  This category includes a claim (the "Judicial Estoppel Claim") that is barred from relief under the doctrine of judicial estoppel.[6]  With respect to the Judicial Estoppel Claim, the Borrower Trust examined the proof of claim in conjunction with public bankruptcy records and validated that:

> (a) the Claimant filed for individual bankruptcy protection and received a discharge,
> (b) the basis for claim comprising the Judicial Estoppel Claim involves assertions and alleged damages that occurred prior to Claimant's first individual bankruptcy filing,
> (c) the Claimant did not include the Judicial Estoppel Claim in the schedule of assets filed by Claimant in their  first bankruptcy case, and
> (d) the Claimant never raised such claim in any other proceeding during their individual bankruptcy case (e.g., an adversary proceeding).  See Objection pp. 13-14.

(viii) **_Redundant_**.  This category includes a claim (the "Redundant Borrower Claim") that is identical to another claim filed on the Claims Register.  The Borrower Trust believes that it was not the claimant's intention in asserting the Redundant Borrower Claim to seek a double recovery against the Debtors' estates.  Instead, the filing of the Redundant Borrower Claim appears to be a function of the claimant filing an additional proof of claim on account of the same obligation.  Regardless of the claimant's reasons for filing the Redundant Borrower Claim, at most, only one claim against the Debtors' estates should potentially be allowed for the claimant.  See Objection p. 14.

(ix) **_Paid and Satisfied._**  This category includes a claim (the "Paid and Satisfied Claim") that have been satisfied pursuant to the Consent Order.  To assess the validity of this claim, the Borrower Trust examined the Debtors' Internal Servicing Notes to verify that the Debtors satisfied the amount owed to the Claimant.  The Borrower Trust determined that the Debtors are not liable for the Paid and Satisfied Claim because the Claimant received more in connection with the Consent Order than the asserted amount of her claim.  See Objection at pp. 14-15.

(x) **_General Servicing Issues_**.  This category includes a claim based on general servicing issues, including assertions that a Debtor provided incorrect information or reporting to the claimant (the "General Servicing Issues Claim").  To assess the validity of this claim,

---

[6] The Claimants filed two bankruptcies after the basis for the claim occurred, a chapter 13 filed in 2010 that was later converted in to a chapter 7 that same year and a chapter 13 filed in 2012.  The Claimants listed the claims against the Debtors on their bankruptcy schedules in the second bankruptcy.  While the Borrower Trust submits that the alleged events giving rise to the Judicial Estoppel Claim occurred prior to the first bankruptcy, to the extent the Court determines that the Judicial Estoppel Claim is based on events that occurred in between the two bankruptcies, only the current Chapter 13 trustee has standing to bring the Judicial Estoppel Claim.

the Borrower Trust reviewed Internal Servicing Notes, Loan Payment History, letters
between the Debtors and the Borrower, executed mortgage notes and deeds of trust, and
other relevant documents.

Based on its review, the Borrower Trust determined that the General Servicing Issues
Claim is not a valid obligation of the Debtors because: (a) the alleged events involving
General Servicing Issues never took place and (b) the Debtor acted properly in servicing
the loan, in accordance with the Debtors standard policies and procedures and the terms
of the executed note and deed of trust.  See Objection p. 15.

### The Reduce and Allow Borrower Claim

9.      At my direction and with my oversight, the Liquidating Trust, in support

of the Borrower Trust, reviewed the Reduce and Allow Borrower Claim listed on Exhibit B to

the Proposed Order, together with information contained within the Debtors' books and records.

10.      These efforts led to the conclusion that the Reduce and Allow Borrower

Claim is a Consent Order Borrower Claim and therefore, under the terms of the Plan, should be

reduced to the extant it was paid pursuant to the Consent Order.  An explanation of the payment

made under the Consent Order to the holder of the Reduce and Allow Claim is described under

the heading "*Reason for Modification.*"

11.      The amount listed on Exhibit B under the column heading "*Modified

Claim Amount*" represent the claim amount reflected in the Debtors' books and records as of the

Petition Date, less any amount already satisfied through the Consent Order.

### The Redesignate, Reduce, and Allow Borrower Claim

12.      At my direction and with my oversight, the Liquidating Trust, in support

of the Borrower Trust, reviewed the Redesignate, Reduce, and Allow Borrower Claim identified

on Exhibit C attached to the Proposed Order, together with information contained in the Debtors'

books and records.

13.    These efforts led to the conclusion that the Redesignate, Reduce, and Allow Borrower Claim was filed against the incorrect Debtor and is a Consent Order Borrower Claim, and therefore, under the terms of the Plan, should be reduced to the extent it was paid pursuant to the Consent Order.  An explanation of the payment made under the Consent Order to the holder of the Redesignate, Reduce and Allow Claim is described under the heading "*Reason for Modification.*"

14.    The amount listed on <u>Exhibit C</u> under the column heading "*Modified Claim Amount*" represent the claim amount reflected in the Debtors' books and records as of the Petition Date, less any amount already satisfied through the Consent Order.  The Borrower Trust further determined based on its review of the claimant's supporting documentation and the Debtors' books and records that the Redesignate, Reduce and Allow Claim was filed against Debtor Executive Trustee Services when a different Debtor, GMAC Mortgage, LLC, is liable for the claim in the reduced amount.

15.    If the No Liability Borrower Claims are not disallowed and expunged and the Reduce and Allow Borrower Claims and the Redesignate, Reduce, and Allow Borrower Claims are not modified as indicated on <u>Exhibit B</u> and <u>Exhibit C</u> to the Proposed Order, the parties asserting such claims may potentially receive an improper distribution on account of the asserted liabilities to the detriment of other Borrower claimants.

16.    Accordingly, based upon this review, and for the reasons set forth in the Objection and <u>Exhibit A</u>, <u>Exhibit B</u>, and <u>Exhibit C</u> to the Proposed Order, I have determined that each No Liability Borrower Claim, Redundant Borrower Claim, and Misclassified Borrower Claim that is the subject of the Objection should be afforded the proposed treatment described in the Objection.

9

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  May 8, 2015

 /s/ Kathy Priore
Kathy Priore
Associate Counsel for the ResCap
Liquidating Trust

10

## Exhibit 3

**Rosenbaum Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- )
                                                                 )
In re:                                                           )     Case No. 12-12020 (MG)
                                                                 )
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,                        )     Chapter 11
                                                                 )
                                        Debtors.                 )     Jointly Administered
                                                                 )
---------------------------------------------------------------- )

### DECLARATION OF NORMAN S. ROSENBAUM IN SUPPORT OF RESCAP BORROWER CLAIMS TRUST'S EIGHTY-SEVENTH OMNIBUS OBJECTION TO CLAIMS ((I) NO LIABILITY BORROWER CLAIMS, (II) REDUCE AND ALLOW BORROWER CLAIM, AND (III) REDESIGNATE, REDUCE, AND ALLOW BORROWER CLAIM)

Norman S. Rosenbaum, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury:

1.      I am a partner in the law firm of Morrison & Foerster LLP ("<u>M&F</u>").  M&F maintains offices for the practice of law, among other locations in the United States and worldwide, at 250 West 55th Street, New York, NY 10019.  I am an attorney duly admitted to practice before this Court and the courts of the State of New York.  By this Court's Order entered on July 16, 2012, M&F was retained as counsel to Residential Capital, LLC and its affiliated debtors (the "<u>Debtors</u>").  Following the Effective Date,[1] M&F has been retained as counsel to the ResCap Borrower Claims Trust (the "<u>Trust</u>").

2.      I submit this declaration in support of the Objection and in compliance with this Court's Order entered March 21, 2013, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1009, 3007 and 9019(b), approving (i) claim objection procedures; (ii)

---

[1]     Unless otherwise indicated herein, capitalized terms shall have the meanings ascribed to them in the *ResCap Borrower Claims Trust's Eighty-Seventh Omnibus Objection to Claims ((I) No Liability Borrower Claims, (II) Reduce and Allow Borrower Claim, and (III) Redesignate, Reduce, and Allow Borrower Claim)* (the "<u>Objection</u>")

Borrower Claim procedures; (iii) settlement procedures; and (iv) schedule amendment procedures [Docket No. 3294] (the "Claim Objection Procedures Order").

3.      It is my understanding that in connection with the filing of the Objection, prior to the Effective Date of the Plan, the Debtors complied with the Borrower Claim Procedures.  I have been advised by M&F attorneys under my supervision that, prior to the Plan's Effective Date, in accordance with the Claims Objection Procedures Order, the Debtors first reviewed a preliminary Borrower Claim List (as such term is defined in the Procedures Order), and then determined if such claims contradicted the information in the Debtors' books and records. Thereafter, the Debtors identified those claimants who should receive a Request Letter.

4.      To the best of my knowledge, the Debtors sent a Request Letter to those Borrowers that the Debtors and SilvermanAcampora LLP, Special Counsel to the Creditors' Committee, agreed should receive a Request Letter, with the Debtors providing copies of such letters to Special Counsel.  The Debtors sent a Request Letter to each Borrower that filed a No Liability Borrower Claim with the exception of one.  Because the Borrower Trust is objecting to that Borrower's claim on the basis that it has been satisfied during the Chapter 11 Cases, a Request Letter was not necessary under the Borrower Claims Procedures.

5.      To the best of my knowledge, prior to the filing of the Objection, the Debtors and the Trust have fully complied with all other applicable terms of the Claim Objection Procedures Order.[1]

---

[1] The Objection deviates from the Borrower Claim Procedures in that it is not supported by a declaration from Special Counsel.  As of the Effective Date of the Plan, the Creditors' Committee was dissolved (see Plan at Art.XIII.D.).  Because the Creditors' Committee was dissolved as of the Plan Effective Date (with the exception of certain limited duties provided for in the Plan), the Trust did not consult with Special Counsel prior to filing the Objection.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in New York, New York on May 8, 2015

/s/ Norman S. Rosenbaum
Norman S. Rosenbaum

3

## Exhibit 4

**Request Letters**

                                    MORRISON | FOERSTER

June 21, 2013

**Claim Number:** <mark>XXX</mark>

Dear Claimant:

You are receiving this letter because you or someone on your behalf filed a Proof of Claim form in the jointly-administered chapter 11 bankruptcy cases of Residential Capital, LLC ("ResCap"), GMAC Mortgage, LLC and other affiliated debtors and debtors in possession (collectively, the "Debtors") pending before the United States Bankruptcy Court for the Southern District of New York, Case No. 12-12020 (MG) (the "ResCap bankruptcy case"), and we need additional information from you regarding the claim(s) ("claim") you are asserting against one or more of the Debtors.

**The Information we Need From You Regarding Your Proof of Claim**:
We reviewed a copy of the Proof of Claim form and documents, if any, that you filed in the ResCap bankruptcy case. A copy of your Proof of Claim form is enclosed for your reference. After reviewing the Proof of Claim form and any documents you submitted, we have determined that you did not provide sufficient information to support your "Basis for Claim" and we do not have sufficient information to understand the calculations you used to determine the amount you claim to be owed. In order to evaluate your claim, we need to understand the specific reasons as to why you believe you are owed money or are entitled to other relief from one or more of the Debtors. Please reply using the attached form and provide a written explanation, with supporting documentation, and include a detailed explanation of how you calculated the amount of your claim.

**You Must Respond to this Letter by no Later Than July 22, 2013**:
In accordance with the Order of the Bankruptcy Court (Docket No. 3294, filed March 21, 2013), you **must** respond to this letter by no later than July 22, 2013 with an explanation stating the legal and factual reasons why you believe you are owed money or are entitled to other relief from one or more of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases). You **must** provide copies of any and all documentation that you believe supports the basis for and amount of your claim. A form is included with this letter to assist you in responding to our request for additional information.

**Consequences of Failing to Respond**:
If you do not provide the requested information regarding the basis for and amount of your claim and the supporting documentation by July 22, 2013, the Debtors may file a formal objection to your Proof of Claim on one or more bases, including that you failed to provide sufficient information and documentation to support your claim. If the Debtors file such an objection and it is successful, your claim may be disallowed and permanently expunged. If your claim is disallowed and expunged, you will not receive any payment for your claim and any other requests you may have made for non-monetary relief in your Proof of Claim will be denied. Therefore, it is very important that you respond by the date stated above with the requested information and documentation supporting the basis for and amount of your claim.

**<u>For Those With a Mortgage Loan Originated or Serviced by One of the Debtors</u>**:

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the loan number and property address that the loan relates to in the information and any documentation that you send us, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

**<u>Questions</u>**:

If you have any questions about this letter, or need help in providing the requested information and document(s), you should contact an attorney. You may also contact the Special Counsel to the Official Committee of Unsecured Creditors[1] with general questions (contact information provided below):

**SPECIAL COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Telephone: 866-259-5217
Website: http://silvermanacampora.com
E-mail address: rescapborrower@silvermanacampora.com

**<u>You must send the requested information and document(s) supporting your claim on or before the date provided in this letter to either;</u>**

       **(i)**     **<u>Claims.Management@gmacrescap.com</u>**; or
       **(ii)**    **Residential Capital, LLC**
               **P.O. Box 385220**
               **Bloomington, Minnesota 55438**

**<u>Please mark each document you send with the Claim Number referenced above.</u>**

Sincerely,

Claims Management
Residential Capital, LLC

---

[1] Please be advised that SilvermanAcampora LLP does not represent you individually and, therefore, cannot provide you with legal advice.

    MORRISON | FOERSTER

July 21, 2013

**Claim Number: XXX**

Dear Claimant:

You are receiving this letter because you or someone on your behalf filed a Proof of Claim form in the jointly-administered chapter 11 bankruptcy cases of Residential Capital, LLC ("ResCap"), GMAC Mortgage, LLC and other affiliated debtors and debtors in possession (collectively, the "Debtors") pending before the United States Bankruptcy Court for the Southern District of New York, Case No. 12-12020 (MG) (the "ResCap bankruptcy case"), and we need additional information from you regarding the claim(s) ("claim") you are asserting against one or more of the Debtors.

**The Information we Need From You Regarding Your Proof of Claim**:
We reviewed a copy of the Proof of Claim form and documents, if any, that you filed in the ResCap bankruptcy case. A copy of your Proof of Claim form is enclosed for your reference. After reviewing the Proof of Claim form and any documents you submitted, we have determined that you did not provide sufficient information regarding the claim amount. In order to evaluate your claim, we need you to reply using the attached form and provide a specific explanation of how you calculated the amount of your claim and also provide sufficient documentation to support the amount you have claimed.

**You Must Respond to this Letter by no Later Than July 22, 2013**:
In accordance with the Order of the Bankruptcy Court (Docket No. 3294, filed March 21, 2013), you **must** respond to this letter by no later than July 22, 2013 with an explanation stating the legal and factual reasons why you believe you are owed money or are entitled to other relief from one or more of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases). You **must** provide copies of any and all documentation that you believe supports the basis for and amount of your claim. A form is included with this letter to assist you in responding to our request.

**Consequences of Failing to Respond**:
If you do not provide the requested information regarding the basis for and amount of your claim and the supporting documentation by July 22, 2013, the Debtors may file a formal objection to your Proof of Claim on one or more bases, including that you failed to provide sufficient information and documentation to support your claim. If the Debtors file such an objection and it is successful, your claim may be disallowed and permanently expunged. If your claim is disallowed and expunged, you will not receive any payment for your claim and any other requests you may have made for non-monetary relief in your Proof of Claim will be denied. Therefore, it is very important that you respond by the date stated above with the requested information and documentation supporting the basis for and amount of your claim.

**For Those With a Mortgage Loan Originated or Serviced by One of the Debtors:**

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the loan number and property address that the loan relates to in the information and any documentation that you send us, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

**Questions**:
If you have any questions about this letter, or need help in providing the requested information and document(s), you should contact an attorney. You may also contact the Special Counsel to the Official Committee of Unsecured Creditors[1] with general questions (contact information provided below):

**SPECIAL COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Telephone: 866-259-5217
Website: http://silvermanacampora.com
E-mail address: rescapborrower@silvermanacampora.com


**You must send the requested information and document(s) supporting your claim on or before the date provided in this letter to either;**

      **(i)**     **Claims.Management@gmacrescap.com**; or
      **(ii)**    **Residential Capital, LLC**
               **P.O. Box 385220**
               **Bloomington, Minnesota 55438**


**Please mark each document you send with the Claim Number referenced above.**



Sincerely,

Claims Management
Residential Capital, LLC

---

[1] Please be advised that SilvermanAcampora LLP does not represent you individually and, therefore, cannot provide you with legal advice.

                    **MORRISON** | **FOERSTER**

June 21, 2013

**Claim Number: <mark>XXX</mark>**

Dear Claimant:

You are receiving this letter because you or someone on your behalf filed a Proof of Claim form in the jointly-administered chapter 11 bankruptcy cases of Residential Capital, LLC ("ResCap"), GMAC Mortgage, LLC and other affiliated debtors and debtors in possession (collectively, the "Debtors") pending before the United States Bankruptcy Court for the Southern District of New York, Case No. 12-12020 (MG) (the "ResCap bankruptcy case"), and we need additional information from you regarding the claim(s) ("claim") you are asserting against the Debtors.

**The Information we Need From You Regarding Your Proof of Claim**:
We reviewed a copy of the Proof of Claim form and documents that you filed in the ResCap bankruptcy case.  A copy of your Proof of Claim form is enclosed for your reference.  According to our records, you have filed a lawsuit against one or more of the Debtors.  Please reply using the attached form and let us know whether the basis for and amount of the claim contained in the Proof of Claim form are the same or different in any way from the claim you have asserted in your lawsuit against the Debtors.  Please ensure that you provide specific detail and support as to the basis for and amount of claim referenced in your Proof of Claim.  If your lawsuit has been dismissed or withdrawn, please provide a specific explanation as to why you believe that you are still owed money or entitled to other relief from one or more of the Debtors.

**You Must Respond to this Letter by no Later Than July 22, 2013**:
In accordance with the Order of the Bankruptcy Court (Docket No. 3294, filed March 21, 2013), you **must** respond to this letter by no later than July 22, 2013 with the requested information and an explanation stating the legal and factual reasons why you believe you are owed money or are entitled to other relief from one or more of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases). You **must** also provide copies of any and all documentation that you believe supports the basis for and amount of your claim.  A form is included with this letter to assist you in responding to our request for additional information.

**Consequences of Failing to Respond**:
If you do not provide the requested information regarding the basis for and amount of your claim and the supporting documentation by July 22, 2013, the Debtors may file a formal objection to your Proof of Claim on one or more bases, including that you failed to provide sufficient information and documentation to support your claim.  If the Debtors file such an objection and it is successful, your claim may be disallowed and permanently expunged.  If your claim is disallowed and expunged, you will not receive any payment for your claim and any other requests you may have made for non-monetary relief in your Proof of Claim will be denied.  Therefore, it is very important that you respond by the date stated above with the requested information and documentation supporting the basis for and amount of your claim.

**For Those With a Mortgage Loan Originated or Serviced by One of the Debtors**:
If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the loan number and property address that the loan relates to in the information and any documentation that you send us, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

**Questions**:
If you have any questions about this letter, or need help in providing the requested information and document(s), you should contact an attorney.  You may also contact the Special Counsel to the Official Committee of Unsecured Creditors[1] with general questions (contact information provided below):

**SPECIAL COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Telephone: 866-259-5217
Website: http://silvermanacampora.com
E-mail address: rescapborrower@silvermanacampora.com

**You must send the requested information and document(s) supporting your claim on or before the date provided in this letter to either;**

      (i)     **Claims.Management@gmacrescap.com; or**
      (ii)    **Residential Capital, LLC**
              **P.O. Box 385220**
              **Bloomington, Minnesota 55438**

**Please mark each document you send with the Claim Number referenced above.**

Sincerely,

Claims Management
Residential Capital, LLC

---

[1] Please be advised that SilvermanAcampora LLP does not represent you individually and, therefore, cannot provide you with legal advice.

          MORRISON | FOERSTER

Claim Number: XXXX

Dear Claimant:

You are receiving this letter because you or someone on your behalf filed a Proof of Claim form in the jointly-administered chapter 11 bankruptcy cases of Residential Capital, LLC ("ResCap"), GMAC Mortgage, LLC, and other affiliated debtors and debtors in possession (collectively, the "Debtors"), pending before the United States Bankruptcy Court for the Southern District of New York, Case No. 12-12020 (MG) (the "ResCap bankruptcy case") and we need additional information from you regarding the claim(s) you are asserting against the Debtors.

**The Information we Need From You Regarding Your Proof of Claim**:
We received and reviewed a copy of the Proof of Claim form filed on your behalf, and noticed that it did not have any supporting documents attached to it.  In order to evaluate your claim, we need to specifically understand why you believe you are owed money or are entitled to other relief from one or more of the Debtors.  Although you may have stated the factual or legal basis for your claim on the first page of the Proof of Claim form, you have not provided any documentation to support this claim.  Therefore, we need you to provide us with documents that support the basis for your asserted claim.  A copy of your Proof of Claim form is enclosed for your reference.

**You Must Respond to this Letter by no Later Than June 24, 2013**:
In accordance with the Order of the Bankruptcy Court (Docket No. 3294, filed March 21, 2013), you **must** respond to this letter by no later than June 24, 2013 with an explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one or more of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases), and you **must** provide copies of any and all documentation that you believe supports the basis for your claim.   Included with this letter is a form to assist you in responding to our request.

**Consequences of Failing to Respond**:
If you do not provide the supporting documentation by June 24, 2013, the Debtors may file a formal objection to your Proof of Claim on one or more bases, including the basis that you failed to provide sufficient information and documentation to support your claim, and your claim may be disallowed and permanently expunged.  If your claim is disallowed and expunged, you will not receive any payment for your claim and any other requests you may have made for non-monetary relief in your Proof of Claim will be denied.  Therefore, it is very important that you respond by the date stated above with the requested information and documentation supporting the basis for your claim.

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the loan number and property address that the loan relates to in the information and documentation that you send us, so that we can effectively search our records for information on your property and loan, and evaluate your claim(s).

**Questions**:

If you have any questions about this letter, or need help in providing the requested information and document(s), you should contact an attorney.  You may also contact the Special Counsel to the Official Committee of Unsecured Creditors[1] with questions (contact information provided below):

**SPECIAL COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Telephone: 866-259-5217
Website: http://silvermanacampora.com
E-mail address: rescapborrower@silvermanacampora.com

**You must send the requested information and document(s) supporting your claim(s) on or before the date provided in this letter to either:**

        **(i)**     **Claims.Management@gmacrescap.com; or**

        **(ii)**     **Residential Capital, LLC**
                    **P.O. Box 385220**
                    **Bloomington, Minnesota 55438**

**Please mark each piece of correspondence with the Claim Number referenced above.**

Sincerely,

Claims Management
Residential Capital, LLC

---

[1] Please be advised that SilvermanAcampora LLP does not represent you individually, and therefore, cannot provide you with legal advice.

**RESCAP**                     **MORRISON** | **FOERSTER**

**Claim Number:**

Dear Claimant:

You are receiving this letter because you or someone on your behalf filed a Proof of Claim form in the jointly-administered chapter 11 bankruptcy cases of Residential Capital, LLC ("ResCap"), GMAC Mortgage, LLC and other affiliated debtors and debtors in possession (collectively, the "Debtors") pending before the United States Bankruptcy Court for the Southern District of New York, Case No. 12-12020 (MG) (the "ResCap bankruptcy case") and we need additional information from you regarding the claims you are asserting against the Debtors.

**The Information we Need From You Regarding Your Proof of Claim**:
We received and reviewed a copy of the Proof of Claim form and document(s), if any, that you filed in the ResCap bankruptcy case.  A copy of your Proof of Claim form is enclosed for your reference.  In the process of reviewing the Proof of Claim form and the document(s), if any, you submitted, we noticed that you left the "Basis for Claim" field on the Proof of Claim form blank, or indicated that the basis for your claim is "unknown".  In order to evaluate your claim, we need to understand why you believe you are owed money or are entitled to other relief from one of the Debtors.

**You Must Respond to this Letter by no Later Than June 17, 2013**:
In accordance with the Order of the Bankruptcy Court (Docket No. 3294, filed March 21, 2013), you **must** respond to this letter by no later than June 17, 2013 with an explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and, you **must** provide copies of any and all documentation that you believe supports the basis for your claim.   Included with this letter is a form to assist you in responding to our request.

**Consequences of Failing to Respond**:
If you do not provide the basis for your claim and the supporting documentation by June 17, 2013, the Debtors may file a formal objection to your Proof of Claim on, among others, the basis that you failed to provide sufficient information and documentation to support your claim, and your claim may be disallowed and permanently expunged.  If your claim is disallowed and expunged, you will not receive any payment for your claim and any other requests you may have made for non-monetary relief in your Proof of Claim will be denied.  Therefore, it is very important that you respond by the date stated above with the requested information and documentation supporting the basis for your claim.

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the loan number and property address that the loan relates to in the information and documentation that you send us, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

**Questions**:

If you have any questions about this letter, or need help in providing the requested information and document(s), you should contact an attorney. You may also contact the Special Counsel to the Official Committee of Unsecured Creditors[1] (contact information provided below):

**SPECIAL COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Telephone: 866-259-5217
Website: http://silvermanacampora.com
E-mail address: rescapborrower@silvermanacampora.com

**You must send the requested information and document(s) supporting your claim on or before the date provided in this letter to either;**

(i)    **Claims.Management@gmacrescap.com, or**
(ii)    **Residential Capital, LLC**
         **P.O. Box 385220**
         **Bloomington, Minnesota 55438**

**Please mark each piece of correspondence with the Claim Number referenced above.**

Sincerely,

Claims Management
Residential Capital, LLC

---

[1] Please be advised that SilvermanAcampora LLP does not represent you individually and, therefore, cannot provide you with legal advice.

**Exhibit 5-A**

B1 (Official Form 1)(4/10)

# United States Bankruptcy Court
## Northern District of California

| **Voluntary Petition** |

| Name of Debtor (if individual, enter Last, First, Middle): | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| **Stanphill, John Charles** | **Stanphill, Joanne** |

| All Other Names used by the Debtor in the last 8 years (include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years (include married, maiden, and trade names): |
|---|---|
| | |

| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN (if more than one, state all): | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN (if more than one, state all): |
|---|---|
| **xxx-xx-4655** | **xxx-xx-1306** |

| Street Address of Debtor (No. and Street, City, and State): | Street Address of Joint Debtor (No. and Street, City, and State): |
|---|---|
| **17886 Berta Canyon** **Prunedale, CA** ZIP Code **93907** | **17886 Berta Canyon** **Prunedale, CA** ZIP Code **93907** |

| County of Residence or of the Principal Place of Business: | County of Residence or of the Principal Place of Business: |
|---|---|
| **Monterey** | **Monterey** |

| Mailing Address of Debtor (if different from street address): | Mailing Address of Joint Debtor (if different from street address): |
|---|---|
| ZIP Code | ZIP Code |

Location of Principal Assets of Business Debtor (if different from street address above):

---

**Type of Debtor**
(Form of Organization)
(Check one box)

- ■ Individual (includes Joint Debtors)
  *See Exhibit D on page 2 of this form.*
- ☐ Corporation (includes LLC and LLP)
- ☐ Partnership
- ☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.)

**Nature of Business**
(Check one box)

- ☐ Health Care Business
- ☐ Single Asset Real Estate as defined in 11 U.S.C. § 101 (51B)
- ☐ Railroad
- ☐ Stockbroker
- ☐ Commodity Broker
- ☐ Clearing Bank
- ☐ Other

**Tax-Exempt Entity**
(Check box, if applicable)

- ☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code).

**Chapter of Bankruptcy Code Under Which the Petition is Filed** (Check one box)

- ☐ Chapter 7
- ☐ Chapter 9
- ☐ Chapter 11
- ☐ Chapter 12
- ■ Chapter 13
- ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding
- ☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding

**Nature of Debts**
(Check one box)

- ■ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."
- ☐ Debts are primarily business debts.

---

**Filing Fee** (Check one box)

- ■ Full Filing Fee attached
- ☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.
- ☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B.

**Chapter 11 Debtors**

Check one box:
- ☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).
- ☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).

Check if:
- ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,343,300 *(amount subject to adjustment on 4/01/13 and every three years thereafter).*

Check all applicable boxes:
- ☐ A plan is being filed with this petition.
- ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

---

**Statistical/Administrative Information**

- ☐ Debtor estimates that funds will be available for distribution to unsecured creditors.
- ■ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

THIS SPACE IS FOR COURT USE ONLY

Estimated Number of Creditors

| ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | OVER 100,000 |

Estimated Assets

| ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

Estimated Liabilities

| ☐ | ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

| B1 (Official Form 1)(4/10) | Page 2 |

## Voluntary Petition

*(This page must be completed and filed in every case)*

**Name of Debtor(s):**
**Stanphill, John Charles**
**Stanphill, Joanne**

### All Prior Bankruptcy Cases Filed Within Last 8 Years (If more than two, attach additional sheet)

| Location Where Filed:  **- None -** | Case Number: | Date Filed: |
| Location Where Filed: | Case Number: | Date Filed: |

### Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor (If more than one, attach additional sheet)

| Name of Debtor: **- None -** | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

| **Exhibit A** | **Exhibit B** |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.) | (To be completed if debtor is an individual whose debts are primarily consumer debts.)<br><br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I delivered to the debtor the notice required by 11 U.S.C. §342(b). |
| ☐ Exhibit A is attached and made a part of this petition. | **X** **/s/ Matthew E. Williamson**　　　　**April 23, 2010**<br>Signature of Attorney for Debtor(s)　　　(Date)<br>**Matthew E. Williamson 184877** |

### Exhibit C

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

■ No.

### Exhibit D

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

■ Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

■ Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

### Information Regarding the Debtor - Venue
(Check any applicable box)

■ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

### Certification by a Debtor Who Resides as a Tenant of Residential Property
(Check all applicable boxes)

☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐ Debtor has included in this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐ Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

B1 (Official Form 1)(4/10)                                                                                                    Page 3

## Voluntary Petition

*(This page must be completed and filed in every case)*

Name of Debtor(s):
**Stanphill, John Charles**
**Stanphill, Joanne**

### Signatures

| Signature(s) of Debtor(s) (Individual/Joint) | Signature of a Foreign Representative |
|---|---|

I declare under penalty of perjury that the information provided in this petition is true and correct.
[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.
[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. §342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X **/s/ John Charles Stanphill**
Signature of Debtor  **John Charles Stanphill**

X **/s/ Joanne Stanphill**
Signature of Joint Debtor **Joanne Stanphill**

Telephone Number (If not represented by attorney)

**April 23, 2010**
Date

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11. United States Code. Certified copies of the documents required by 11 U.S.C. §1515 are attached.

☐ Pursuant to 11 U.S.C. §1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
Signature of Foreign Representative

_____
Printed Name of Foreign Representative

_____
Date

### Signature of Attorney*

X **/s/ Matthew E. Williamson**
Signature of Attorney for Debtor(s)

**Matthew E. Williamson 184877**
Printed Name of Attorney for Debtor(s)

**Law Offices of Matthew E. Williamson**
Firm Name
**490 Calle Principal**
**Monterey, CA 93940**

_____
Address

**(831) 657-0100**
Telephone Number

**April 23, 2010**
Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

### Signature of Non-Attorney Bankruptcy Petition Preparer

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social-Security number (If the bankrutpcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.)(Required by 11 U.S.C. § 110.)

_____
Address

X _____
_____
Date

Signature of Bankruptcy Petition Preparer or officer, principal, responsible person,or partner whose Social Security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both 11 U.S.C. §110; 18 U.S.C. §156.*

### Signature of Debtor (Corporation/Partnership)

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Authorized Individual

_____
Printed Name of Authorized Individual

_____
Title of Authorized Individual

_____
Date

B 1D (Official Form 1, Exhibit D) (12/09)

## United States Bankruptcy Court
### Northern District of California

In re    **John Charles Stanphill**
_____ **Joanne Stanphill** _____    Case No. _____
                                    Debtor(s)    Chapter    **13**

## EXHIBIT D - INDIVIDUAL DEBTOR'S STATEMENT OF COMPLIANCE WITH CREDIT COUNSELING REQUIREMENT

**Warning: You must be able to check truthfully one of the five statements regarding credit counseling listed below. If you cannot do so, you are not eligible to file a bankruptcy case, and the court can dismiss any case you do file. If that happens, you will lose whatever filing fee you paid, and your creditors will be able to resume collection activities against you. If your case is dismissed and you file another bankruptcy case later, you may be required to pay a second filing fee and you may have to take extra steps to stop creditors' collection activities.**

*Every individual debtor must file this Exhibit D. If a joint petition is filed, each spouse must complete and file a separate Exhibit D. Check one of the five statements below and attach any documents as directed.*

■ 1. Within the 180 days **before the filing of my bankruptcy case**, I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, and I have a certificate from the agency describing the services provided to me. *Attach a copy of the certificate and a copy of any debt repayment plan developed through the agency.*

☐ 2. Within the 180 days **before the filing of my bankruptcy case**, I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, but I do not have a certificate from the agency describing the services provided to me. *You must file a copy of a certificate from the agency describing the services provided to you and a copy of any debt repayment plan developed through the agency no later than 14 days after your bankruptcy case is filed.*

☐ 3. I certify that I requested credit counseling services from an approved agency but was unable to obtain the services during the seven days from the time I made my request, and the following exigent circumstances merit a temporary waiver of the credit counseling requirement so I can file my bankruptcy case now. *[Summarize exigent circumstances here.]* ____

**If your certification is satisfactory to the court, you must still obtain the credit counseling briefing within the first 30 days after you file your bankruptcy petition and promptly file a certificate from the agency that provided the counseling, together with a copy of any debt management plan developed through the agency. Failure to fulfill these requirements may result in dismissal of your case. Any extension of the 30-day deadline can be granted only for cause and is limited to a maximum of 15 days. Your case may also be dismissed if the court is not satisfied with your reasons for filing your bankruptcy case without first receiving a credit counseling briefing.**

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - bestcase.com                         Best Case Bankruptcy

B 1D (Official Form 1, Exhibit D) (12/09) - Cont.                                                                    Page 2

☐ 4. I am not required to receive a credit counseling briefing because of: *[Check the applicable statement.] [Must be accompanied by a motion for determination by the court.]*

     ☐ Incapacity. (Defined in 11 U.S.C. § 109(h)(4) as impaired by reason of mental illness or mental deficiency so as to be incapable of realizing and making rational decisions with respect to financial responsibilities.);

     ☐ Disability. (Defined in 11 U.S.C. § 109(h)(4) as physically impaired to the extent of being unable, after reasonable effort, to participate in a credit counseling briefing in person, by telephone, or through the Internet.);

     ☐ Active military duty in a military combat zone.

☐ 5. The United States trustee or bankruptcy administrator has determined that the credit counseling requirement of 11 U.S.C. § 109(h) does not apply in this district.

**I certify under penalty of perjury that the information provided above is true and correct.**

     Signature of Debtor:    **/s/ John Charles Stanphill**
                                 **John Charles Stanphill**

     Date:    **April 23, 2010**

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - bestcase.com                                    Best Case Bankruptcy

Certificate Number: 02910-CAN-CC-009702883

# CERTIFICATE OF COUNSELING

I CERTIFY that on January 25, 2010 , at 10:31 o'clock PM EST ,

John Stanphill received from

InCharge Education Foundation, Inc. ,

an agency approved pursuant to 11 U.S.C. § 111 to provide credit counseling in the

Northern District of California , an individual [or group] briefing that complied

with the provisions of 11 U.S.C. §§ 109(h) and 111.

A debt repayment plan was not prepared . If a debt repayment plan was prepared, a copy of

the debt repayment plan is attached to this certificate.

This counseling session was conducted by internet .


Date: January 25, 2010          By      /s/Lalyta Baksh

                                Name   Lalyta Baksh

                                Title   Certified Bankruptcy Counselor


* Individuals who wish to file a bankruptcy case under title 11 of the United States Bankruptcy
Code are required to file with the United States Bankruptcy Court a completed certificate of
counseling from the nonprofit budget and credit counseling agency that provided the individual
the counseling services and a copy of the debt repayment plan, if any, developed through the
credit counseling agency. *See* 11 U.S.C. §§ 109(h) and 521(b).

Certificate Number: 02910-CAN-CC-009702882

# CERTIFICATE OF COUNSELING

I CERTIFY that on January 25, 2010                    , at 10:31              o'clock PM EST                    ,

Joanne Stanphill                                              received from

InCharge Education Foundation, Inc.                                              ,

an agency approved pursuant to 11 U.S.C. § 111 to provide credit counseling in the

Northern District of California                    , an individual [or group] briefing that complied

with the provisions of 11 U.S.C. §§ 109(h) and 111.

A debt repayment plan was not prepared         . If a debt repayment plan was prepared, a copy of

the debt repayment plan is attached to this certificate.

This counseling session was conducted by internet                    .

Date: January 25, 2010                    By      /s/Lalyta Baksh                    

                                       Name   Lalyta Baksh                    

                                       Title    Certified Bankruptcy Counselor                    

* Individuals who wish to file a bankruptcy case under title 11 of the United States Bankruptcy
Code are required to file with the United States Bankruptcy Court a completed certificate of
counseling from the nonprofit budget and credit counseling agency that provided the individual
the counseling services and a copy of the debt repayment plan, if any, developed through the
credit counseling agency. See 11 U.S.C. §§ 109(h) and 521(b).

B 1D (Official Form 1, Exhibit D) (12/09)

## United States Bankruptcy Court
### Northern District of California

In re  **John Charles Stanphill**
      **Joanne Stanphill**

Case No. _____

Chapter **13**

Debtor(s)

## EXHIBIT D - INDIVIDUAL DEBTOR'S STATEMENT OF COMPLIANCE WITH
## CREDIT COUNSELING REQUIREMENT

**Warning: You must be able to check truthfully one of the five statements regarding credit counseling listed below. If you cannot do so, you are not eligible to file a bankruptcy case, and the court can dismiss any case you do file. If that happens, you will lose whatever filing fee you paid, and your creditors will be able to resume collection activities against you. If your case is dismissed and you file another bankruptcy case later, you may be required to pay a second filing fee and you may have to take extra steps to stop creditors' collection activities.**

*Every individual debtor must file this Exhibit D. If a joint petition is filed, each spouse must complete and file a separate Exhibit D. Check one of the five statements below and attach any documents as directed.*

■ 1. Within the 180 days **before the filing of my bankruptcy case**, I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, and I have a certificate from the agency describing the services provided to me. *Attach a copy of the certificate and a copy of any debt repayment plan developed through the agency.*

☐ 2. Within the 180 days **before the filing of my bankruptcy case**, I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, but I do not have a certificate from the agency describing the services provided to me. *You must file a copy of a certificate from the agency describing the services provided to you and a copy of any debt repayment plan developed through the agency no later than 14 days after your bankruptcy case is filed.*

☐ 3. I certify that I requested credit counseling services from an approved agency but was unable to obtain the services during the seven days from the time I made my request, and the following exigent circumstances merit a temporary waiver of the credit counseling requirement so I can file my bankruptcy case now. *[Summarize exigent circumstances here.]* _____

**If your certification is satisfactory to the court, you must still obtain the credit counseling briefing within the first 30 days after you file your bankruptcy petition and promptly file a certificate from the agency that provided the counseling, together with a copy of any debt management plan developed through the agency. Failure to fulfill these requirements may result in dismissal of your case. Any extension of the 30-day deadline can be granted only for cause and is limited to a maximum of 15 days. Your case may also be dismissed if the court is not satisfied with your reasons for filing your bankruptcy case without first receiving a credit counseling briefing.**

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - bestcase.com      Best Case Bankruptcy

B 1D (Official Form 1, Exhibit D) (12/09) - Cont.                                                                    Page 2

&#9633; 4. I am not required to receive a credit counseling briefing because of: *[Check the applicable statement.] [Must be accompanied by a motion for determination by the court.]*

    &#9633; Incapacity. (Defined in 11 U.S.C. § 109(h)(4) as impaired by reason of mental illness or mental deficiency so as to be incapable of realizing and making rational decisions with respect to financial responsibilities.);

    &#9633; Disability. (Defined in 11 U.S.C. § 109(h)(4) as physically impaired to the extent of being unable, after reasonable effort, to participate in a credit counseling briefing in person, by telephone, or through the Internet.);

    &#9633; Active military duty in a military combat zone.

&#9633; 5. The United States trustee or bankruptcy administrator has determined that the credit counseling requirement of 11 U.S.C. § 109(h) does not apply in this district.

**I certify under penalty of perjury that the information provided above is true and correct.**

Signature of Debtor:  **/s/ Joanne Stanphill**
                         **Joanne Stanphill**

Date:  **April 23, 2010**

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - bestcase.com                                    Best Case Bankruptcy

B6 Summary (Official Form 6 - Summary) (12/07)

# United States Bankruptcy Court
## Northern District of California

In re    **John Charles Stanphill,**              Case No. _____

         **Joanne Stanphill**

                                   ,      Chapter_____**13**

                          Debtors

# SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | 317,500.00 | | |
| B - Personal Property | Yes | 4 | 66,078.65 | | |
| C - Property Claimed as Exempt | Yes | 2 | | | |
| D - Creditors Holding Secured Claims | Yes | 2 | | 606,198.88 | |
| E - Creditors Holding Unsecured Priority Claims (Total of Claims on Schedule E) | Yes | 1 | | 0.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 4 | | 92,105.00 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | Yes | 1 | | | 5,876.74 |
| J - Current Expenditures of Individual Debtor(s) | Yes | 2 | | | 6,104.89 |
| Total Number of Sheets of ALL Schedules | | 19 | | | |
| | | Total Assets | 383,578.65 | | |
| | | | Total Liabilities | 698,303.88 | |

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com            Best Case Bankruptcy

Form 6 - Statistical Summary (12/07)

.

# United States Bankruptcy Court
## Northern District of California

In re  **John Charles Stanphill,**
**Joanne Stanphill**

Case No. _____

_____,

Debtors

Chapter _____ **13** _____

# STATISTICAL SUMMARY OF CERTAIN LIABILITIES AND RELATED DATA (28 U.S.C. § 159)

If you are an individual debtor whose debts are primarily consumer debts, as defined in § 101(8) of the Bankruptcy Code (11 U.S.C.§ 101(8)), filing a case under chapter 7, 11 or 13, you must report all information requested below.

☐  Check this box if you are an individual debtor whose debts are NOT primarily consumer debts. You are not required to report any information here.

**This information is for statistical purposes only under 28 U.S.C. § 159.**

**Summarize the following types of liabilities, as reported in the Schedules, and total them.**

| Type of Liability | Amount |
|---|---|
| Domestic Support Obligations (from Schedule E) | 0.00 |
| Taxes and Certain Other Debts Owed to Governmental Units (from Schedule E) | 0.00 |
| Claims for Death or Personal Injury While Debtor Was Intoxicated (from Schedule E) (whether disputed or undisputed) | 0.00 |
| Student Loan Obligations (from Schedule F) | 0.00 |
| Domestic Support, Separation Agreement, and Divorce Decree Obligations Not Reported on Schedule E | 0.00 |
| Obligations to Pension or Profit-Sharing, and Other Similar Obligations (from Schedule F) | 0.00 |
| TOTAL | 0.00 |

**State the following:**

| | |
|---|---|
| Average Income (from Schedule I, Line 16) | 5,876.74 |
| Average Expenses (from Schedule J, Line 18) | 6,104.89 |
| Current Monthly Income (from Form 22A Line 12; OR, Form 22B Line 11; OR, Form 22C Line 20 ) | 7,631.00 |

**State the following:**

| | | |
|---|---|---|
| 1. Total from Schedule D, "UNSECURED PORTION, IF ANY" column | | 266,732.00 |
| 2. Total from Schedule E, "AMOUNT ENTITLED TO PRIORITY" column | 0.00 | |
| 3. Total from Schedule E, "AMOUNT NOT ENTITLED TO PRIORITY, IF ANY" column | | 0.00 |
| 4. Total from Schedule F | | 92,105.00 |
| 5. Total of non-priority unsecured debt (sum of 1, 3, and 4) | | 358,837.00 |

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com

Best Case Bankruptcy

B6A (Official Form 6A) (12/07)

In re    **John Charles Stanphill,**                                      Case No. _____
           **Joanne Stanphill**
_____,
                                    Debtors
# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **Owner Occupied Residence 3 bed, 2 bath - 17886 Berta Cyn Road, Prunedale, CA 93907** | **Fee simple** | **C** | **310,000.00** | **573,378.00** |
| **Vacant Land - 0 Mercury Lane, Holiday Island, ".60" acres. Parcel # 320-00744-000 Subdivision: Unit 2 Holiday Island, Lot 15, Block 11** | | **C** | **7,500.00** | **0.00** |

|  |  |  |
|---|---|---|
| Sub-Total > | 317,500.00 | (Total of this page) |
| Total > | 317,500.00 | |

__0__ continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                                   Best Case Bankruptcy

B6B (Official Form 6B) (12/07)

.

In re **John Charles Stanphill,**                                         Case No. _____

       **Joanne Stanphill**

_____,

Debtors

## SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property."

If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| | Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|---|
| 1. | Cash on hand | X | | | |
| 2. | Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | Chase Checking & Savings Account - 240 Reservation Rd. Marina, CA X-2017 | C | 272.00 |
| | | | Citibank Checking 760 E. Lake Ave, Watsonville, CA 95076 X-1575 | C | 152.00 |
| | | | Santa Cruz Community Credit Union A#X-7243 Savings Account | C | 293.02 |
| 3. | Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. | Household goods and furnishings, including audio, video, and computer equipment. | | Stove, Refrigerator, Microwave, Cooking Utensils, Silverware and Cookware | C | 168.00 |
| | | | Living Room Furniture, Diving Room Furniture, Tables, Chairs, Television, VCR, DVD, Compact Discs | C | 175.00 |
| | | | Bedroom Furniture, Lamps Accessories | C | 160.00 |
| | | | Computer, printer, desk | C | 90.00 |
| | | | Lawnmower | C | 25.00 |
| | | | Yard Tools/Equipment | C | 25.00 |
| 5. | Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. | Wearing apparel. | | All clothing | C | 100.00 |
| 7. | Furs and jewelry. | | Jewelry/Watches | C | 20.00 |
| | | | Wedding Rings | C | 1,200.00 |

Sub-Total >  **2,680.02**
(Total of this page)

  **3**   continuation sheets attached to the Schedule of Personal Property

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                                         Best Case Bankruptcy

B6B (Official Form 6B) (12/07) - Cont.

In re    **John Charles Stanphill,**
         **Joanne Stanphill**

Case No. _____

_____ ,
                    Debtors

# SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 8. Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | | **Prudential Life Insurance Police on Husband** | C | **10,424.00** |
| | | **Prudential Life Insurance on Wife** | C | **9,273.63** |
| 10. Annuities. Itemize and name each issuer. | X | | | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | | **IRA Under Husband's Name** | C | **23,000.00** |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | | **Government Bonds** | C | **150.00** |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |

Sub-Total >    **42,847.63**
(Total of this page)

Sheet __1__ of __3__ continuation sheets attached
to the Schedule of Personal Property

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com    Best Case Bankruptcy

B6B (Official Form 6B) (12/07) - Cont.

In re    **John Charles Stanphill,**                                    Case No. _____
         **Joanne Stanphill**

_____,
                                    Debtors
## SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | **2006 Ford Five Hundred SE Sedan 4D 59,000 miles** | C | 7,025.00 |
| | | **2008 Ford F150 Super Cab 6 1/2' - 48,000 miles** | C | 13,525.00 |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |

Sub-Total >                                                20,550.00
(Total of this page)

Sheet __2__ of __3__ continuation sheets attached
to the Schedule of Personal Property

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - www.bestcase.com                                    Best Case Bankruptcy

**B6B (Official Form 6B) (12/07) - Cont.**

In re  **John Charles Stanphill,**                                    Case No. _____
       **Joanne Stanphill**
_____,
                         Debtors
## SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | | **TimeShare - Wyndham 7,000 points** | **C** | **1.00** |

| | | |
|---|---|---|
| | Sub-Total > | **1.00** |
| | (Total of this page) | |
| | Total > | **66,078.65** |

Sheet __3__ of __3__ continuation sheets attached
to the Schedule of Personal Property                                (Report also on Summary of Schedules)

Case: 10-54299    Doc# 1    Filed: 04/26/10    Entered: 04/26/10 17:33:20    Page 16 of
48

B6C (Official Form 6C) (4/10)

.

In re  **John Charles Stanphill,**                                      Case No. _____
       **Joanne Stanphill**
_____ ,
                    Debtors

## SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor claims the exemptions to which debtor is entitled under:    ☐ Check if debtor claims a homestead exemption that exceeds
(Check one box)                           $146,450. *(Amount subject to adjustment on 4/1/13, and every three years thereafter*
☐ 11 U.S.C. §522(b)(2)                              *with respect to cases commenced on or after the date of adjustment.)*
■ 11 U.S.C. §522(b)(3)

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| **Real Property** | | | |
| **Vacant Land - 0 Mercury Lane, Holiday Island, ".60" acres.  Parcel # 320-00744-000 Subdivision: Unit 2 Holiday Island, Lot 15, Block 11** | C.C.P. § 703.140(b)(5) | 7,500.00 | 7,500.00 |
| **Checking, Savings, or Other Financial Accounts, Certificates of Deposit** | | | |
| **Chase Checking & Savings Account - 240 Reservation Rd. Marina, CA X-2017** | C.C.P. § 703.140(b)(5) | 272.00 | 272.00 |
| **Citibank Checking 760 E. Lake Ave, Watsonville, CA 95076 X-1575** | C.C.P. § 703.140(b)(5) | 152.00 | 152.00 |
| **Santa Cruz Community Credit Union A#X-7243 Savings Account** | C.C.P. § 703.140(b)(5) | 293.02 | 293.02 |
| **Household Goods and Furnishings** | | | |
| **Stove, Refrigerator, Microwave, Cooking Utensils, Silverware and Cookware** | C.C.P. § 703.140(b)(3) | 168.00 | 168.00 |
| **Living Room Furniture, Diving Room Furniture, Tables, Chairs, Television, VCR, DVD, Compact Discs** | C.C.P. § 703.140(b)(3) | 175.00 | 175.00 |
| **Bedroom Furniture, Lamps Accessories** | C.C.P. § 703.140(b)(3) | 160.00 | 160.00 |
| **Computer, printer, desk** | C.C.P. § 703.140(b)(3) | 90.00 | 90.00 |
| **Lawnmower** | C.C.P. § 703.140(b)(3) | 25.00 | 25.00 |
| **Yard Tools/Equipment** | C.C.P. § 703.140(b)(3) | 25.00 | 25.00 |
| **Wearing Apparel** | | | |
| **All clothing** | C.C.P. § 703.140(b)(3) | 100.00 | 100.00 |
| **Furs and Jewelry** | | | |
| **Jewelry/Watches** | C.C.P. § 703.140(b)(4) | 20.00 | 20.00 |
| **Wedding Rings** | C.C.P. § 703.140(b)(4) | 1,200.00 | 1,200.00 |
| **Interests in Insurance Policies** | | | |
| **Prudential Life Insurance Police on Husband** | C.C.P. § 703.140(b)(7) | 6,050.75 | 10,424.00 |
| **Prudential Life Insurance on Wife** | C.C.P. § 703.140(b)(7) | 3,118.00 | 9,273.63 |
| **Interests in IRA, ERISA, Keogh, or Other Pension or Profit Sharing Plans** | | | |
| **IRA Under Husband's Name** | 11 U.S.C. § 522(b)(3)(C) | 23,000.00 | 23,000.00 |
| **Government & Corporate Bonds, Other Negotiable & Non-negotiable Inst.** | | | |
| **Government Bonds** | C.C.P. § 703.140(b)(5) | 150.00 | 150.00 |

   1   continuation sheets attached to Schedule of Property Claimed as Exempt

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                                      Best Case Bankruptcy

B6C (Official Form 6C) (4/10) -- Cont.

In re    **John Charles Stanphill,**              Case No. _____
          **Joanne Stanphill**

_____,
                 Debtors

# SCHEDULE C - PROPERTY CLAIMED AS EXEMPT
(Continuation Sheet)

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| **Automobiles, Trucks, Trailers, and Other Vehicles** | | | |
| **2008 Ford F150 Super Cab 6 1/2' - 48,000 miles** | **C.C.P. § 703.140(b)(2)** | **1,612.00** | **13,525.00** |
| | | | |
| **Other Personal Property of Any Kind Not Already Listed** | | | |
| **TimeShare - Wyndham 7,000 points** | **C.C.P. § 703.140(b)(5)** | **1.00** | **1.00** |

| | Total: | 44,111.77 | 66,553.65 |
|---|---|---|---|

Sheet ___**1**___ of ___**1**___ continuation sheets attached to the Schedule of Property Claimed as Exempt

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                                        Best Case Bankruptcy

B6D (Official Form 6D) (12/07)

In re    **John Charles Stanphill,**
           **Joanne Stanphill,**
                                                                                    Case No. _____

                                              Debtors

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community H / W / J / C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. **xxxx4013**<br><br>**Ford Cred**<br>**Po Box Box 542000**<br>**Omaha, NE 68154** | | C | Opened  4/05/08  Last Active  4/01/10<br><br>**Purchase Money Security**<br><br>**2008 Ford F150 Super Cab 6 1/2' - 48,000 miles** | | | | | |
| | | | Value $              **13,525.00** | | | | **11,913.00** | **0.00** |
| Account No. **xxxx6164**<br><br>**Ford Cred**<br>**Po Box Box 542000**<br>**Omaha, NE 68154** | | C | Opened  6/05/06  Last Active  4/01/10<br><br>**Purchase Money Security**<br><br>**2006 Ford Five Hundred SE Sedan 4D 59,000 miles** | | | | | |
| | | | Value $               **7,025.00** | | | | **10,379.00** | **3,354.00** |
| Account No. **xxxxx6700**<br><br>**Gmac Mortgage**<br>**Po Box 4622**<br>**Waterloo, IA 50704** | | C | Opened 10/30/06  Last Active  2/08/10<br><br>**Purchase Money Security - NON-RECOURSE**<br><br>**Owner Occupied Residence 3 bed, 2 bath - 17886 Berta Cyn Road, Prunedale, CA 93907** | | | | | |
| | | | Value $            **310,000.00** | | | | **523,652.00** | **213,652.00** |
| Account No. **x8072**<br><br>**Prudential**<br>**P.O. Box 7390**<br>**Philadelphia, PA 19176** | | C | Early 90's<br><br>**Non-Purchase Money Security**<br><br>**Prudential Life Insurance Police on Husband** | | | | | |
| | | | Value $             **10,424.00** | | | | **4,373.25** | **0.00** |
| __1__  continuation sheets attached | | | Subtotal<br>(Total of this page) | | | | **550,317.25** | **217,006.00** |

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                                                   Best Case Bankruptcy

B6D (Official Form 6D) (12/07) - Cont.

In re    **John Charles Stanphill,**                                                  Case No. _____
         **Joanne Stanphill**
_____,
                                    Debtors

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | C | | | | | | |
| Account No. **x-5859**<br><br>**Prudential**<br>**P.O. Box 7390**<br>**Philadelphia, PA 19176** | C | | | | Early 90's<br><br>**Non-Purchase Money Security**<br><br>**Prudential Life Insurance on Wife**<br><br>Value $              **9,273.63** | | | | **6,155.63** | **0.00** |
| Account No. **xxxxx5419**<br><br>**Specialized Loan Servi**<br>**8742 Lucent Blvd Ste 300**<br>**Highlands Ranch, CO 80129** | C | | | | Opened 10/20/06  Last Active 12/01/09<br><br>**Second Mortgage**<br><br>**Owner Occupied Residence 3 bed, 2 bath - 17886 Berta Cyn Road, Prunedale, CA 93907**<br>Value $           **310,000.00** | | | | **49,726.00** | **49,726.00** |
| Account No. **xxxx6139**<br><br>**Wyndham Rd**<br>**10750 W. Charleston Blvd.  Ste 130**<br>**Las Vegas, NV 89135** | C | | | | Opened 11/01/01  Last Active  5/01/06<br><br>**TimeShare - Wyndham 7,000 points**<br><br>Value $                   **1.00** | | | | **Unknown** | **Unknown** |
| Account No. | | | | | Value $ | | | | | |
| Account No. | | | | | Value $ | | | | | |

Sheet  **1**  of  **1**  continuation sheets attached to
Schedule of Creditors Holding Secured Claims

| | Subtotal<br>(Total of this page) | **55,881.63** | **49,726.00** |
|---|---|---|---|
| | Total<br>(Report on Summary of Schedules) | **606,198.88** | **266,732.00** |

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                                          Best Case Bankruptcy

B6E (Official Form 6E) (4/10)

In re    **John Charles Stanphill,**
**Joanne Stanphill**

Case No. _____

Debtors

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

Report the total of amounts not entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts not entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

■ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS** (Check the appropriate box(es) below if claims in that category are listed on the attached sheets)

☐ **Domestic support obligations**

Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**

Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**

Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $11,725* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Contributions to employee benefit plans**

Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐ **Certain farmers and fishermen**

Claims of certain farmers and fishermen, up to $5,775* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**

Claims of individuals up to $2,600* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(7).

☐ **Taxes and certain other debts owed to governmental units**

Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(8).

☐ **Commitments to maintain the capital of an insured depository institution**

Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507 (a)(9).

☐ **Claims for death or personal injury while debtor was intoxicated**

Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

*\* Amount subject to adjustment on 4/01/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment.*

**0** continuation sheets attached

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com
Best Case Bankruptcy

B6F (Official Form 6F) (12/07)

In re      **John Charles Stanphill,**                                          Case No. _____
           **Joanne Stanphill**
                                                                                                              ,
                                          Debtors

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐    Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H W J C | | | | | | | |
| Account No. xxxxxxxxxxxx7850<br><br>**American General Finan<br>Po Box 3251<br>Evansville, IN 47731** | | C | | | **Opened 12/20/06 Last Active 9/28/09<br>ChargeAccount** | | | | **2,650.00** |
| Account No. -xxxxxxxxxxxx0133<br><br>**Amex<br>Po Box 297871<br>Fort Lauderdale, FL 33329** | | W | | | **Opened 10/17/05 Last Active 1/01/09<br>ChargeAccount** | | | | **8,996.00** |
| Account No. 4561<br><br>**Bank Of America<br>Po Box 17054<br>Wilmington, DE 19850** | | W | | | **Opened 3/27/07 Last Active 10/29/09<br>ChargeAccount** | | | | **18,926.00** |
| Account No. xxxxxxx0681<br><br>**Cap One<br>Po Box 85520<br>Richmond, VA 23285** | | H | | | **Opened 12/02/04 Last Active 1/01/10<br>Credit card purchases** | | | | **889.00** |
| __3__ continuation sheets attached | | | | | Subtotal<br>(Total of this page) | | | | **31,461.00** |

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                                                                 S/N:43009-100407    Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re    **John Charles Stanphill,**                                    Case No. _____
         **Joanne Stanphill**
_____,
                        Debtors

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. **xxxxxxx5132** <br><br> **Capital One, N.A.** <br> **2730 Liberty Ave** <br> **Pittsburgh, PA 15222** | | H | **Opened  5/02/07  Last Active 12/01/09** <br> **Credit card purchases** | | | | **2,170.00** |
| Account No. <br><br> **Community Hospital of Monterey Peninsula** <br> **P.O. Box 39000 Dept 34028** <br> **San Francisco, CA 94139-0001** | | C | **On going for 3-4 Years** <br> **On going medical treatment for illness** | | | | **400.00** |
| Account No. **xxxxxxxx3965** <br><br> **Discover Fin Svcs Llc** <br> **Po Box 15316** <br> **Wilmington, DE 19850** | | W | **Opened 11/04/07  Last Active  3/16/09** <br> **ChargeAccount** | | | | **7,850.00** |
| Account No. **xxxxxxxx0000** <br><br> **Dsrm Nt Bk** <br> **7201 Canyon Dr** <br> **Amarillo, TX 79110** | | C | **Opened  5/01/98  Last Active  4/01/10** <br> **ChargeAccount** | | | | **383.00** |
| Account No. **xxxxxxxxxxx9691** <br><br> **Elan Financial Service** <br> **777 E Wisconsin Ave** <br> **Milwaukee, WI 53202** | | C | **Opened  6/01/06  Last Active 11/18/09** <br> **Credit card purchases** | | | | **8,979.00** |

Sheet no. _**1**_ of _**3**_ sheets attached to Schedule of                    Subtotal                **19,782.00**
Creditors Holding Unsecured Nonpriority Claims                            (Total of this page)

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                    Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re  **John Charles Stanphill,**
       **Joanne Stanphill,**
                                                                      Case No. _____
                              _____,
                                          Debtors

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W J C | | | | | | |
| Account No. **xxx xx x2719** <br><br> **Financial Solution Legal Center** <br> **711 Mission Ave. Ste 323** <br> **Oceanside, CA 92054** | C | | | **4/2009** <br> **Debt Consolidator** | X | X | X | **Unknown** |
| Account No. **x-2081** <br><br> **First Bank Card** <br> **P.O. Box 2557** <br> **Omaha, NE 68103-2557** | | W | | **3/2007 to 6/2009** <br> **Credit Card** | | | | **3,375.00** |
| Account No. **xxxxxxxxxxxx1612** <br><br> **Gemb/Ge Money Bank Low** <br> **Po Box 103065** <br> **Roswell, GA 30076** | | W | | **Opened  9/07/03  Last Active  5/01/09** <br> **ChargeAccount** | | | | **1,612.00** |
| Account No. **xxxxxxxxxxxx1657** <br><br> **Hsbc Bank** <br> **Po Box 5253** <br> **Carol Stream, IL 60197** | C | | | **Opened  9/17/97  Last Active  4/01/09** <br> **ChargeAccount** | | | | **17,329.00** |
| Account No. **xxxxxxx5252** <br><br> **Kohls/Chase** <br> **N56 W 17000 Ridgewood Dr** <br> **Menomonee Falls, WI 53051** | | W | | **Opened  5/20/06  Last Active  4/01/10** <br> **Credit card purchases** | | | | **420.00** |

Sheet no. __**2**___ of __**3**___ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)

**22,736.00**

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com
Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re    **John Charles Stanphill,**
            **Joanne Stanphill**                                                         Case No. _____

_____,
                                            Debtors

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No.<br><br>**Saint Louise Regional Hospital**<br>**9400 No Name Uno**<br>**Gilroy, CA 95020** | | C | **March 2010**<br>**Medical Bills** | | | | **800.00** |
| Account No. **xxxx3160**<br><br>**Santa Cruz Community C**<br>**324 Front St**<br>**Santa Cruz, CA 95060** | | C | **Opened 7/18/97 Last Active 2/01/10** | | | | **2,686.00** |
| Account No. **xxxxxxx7468**<br><br>**Wells Fargo Bank**<br>**Po Box 5445**<br>**Portland, OR 97228** | | W | **Opened 6/28/07 Last Active 4/01/09**<br>**ChargeAccount** | | | | **14,640.00** |
| Account No. | | | | | | | |
| Account No. | | | | | | | |

| | | |
|---|---|---|
| Sheet no. **3** of **3** sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims | Subtotal<br>(Total of this page) | **18,126.00** |
| | Total<br>(Report on Summary of Schedules) | **92,105.00** |

Husband, Wife, Joint, or Community

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com
Best Case Bankruptcy

B6G (Official Form 6G) (12/07)

.

In re    **John Charles Stanphill,**                                              Case No. _____
         **Joanne Stanphill**

_____,
                                        Debtors

# SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property.  Include any timeshare interests.  State nature of debtor's interest in contract, i.e., "Purchaser", "Agent", etc.  State whether debtor is the lessor or lessee of a lease.  Provide the names and complete mailing addresses of all other parties to each lease or contract described.  If a minor child is a party to one of the leases or contracts, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☐ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
|---|---|
| **Wyndham Rd**<br>**10750 W. Charleston Blvd.  Ste 130**<br>**Las Vegas, NV 89135** | **TimeShare** |

**0**

B6H (Official Form 6H) (12/07)

In re  **John Charles Stanphill,**                                    Case No. _____
       **Joanne Stanphill**
_____,
                                        Debtors

# SCHEDULE H - CODEBTORS

Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by debtor in the schedules of creditors. Include all guarantors and co-signers. If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the eight year period immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state, commonwealth, or territory. Include all names used by the nondebtor spouse during the eight years immediately preceding the commencement of this case. If a minor child is a codebtor or a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

■  Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|

**0**    ___  continuation sheets attached to Schedule of Codebtors

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                                        Best Case Bankruptcy

B6I (Official Form 6I) (12/07)

In re **John Charles Stanphill**
     **Joanne Stanphill**          Case No. _____
               Debtor(s)

## SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by every married debtor, whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. Do not state the name of any minor child. The average monthly income calculated on this form may differ from the current monthly income calculated on Form 22A, 22B, or 22C.

| Debtor's Marital Status: | DEPENDENTS OF DEBTOR AND SPOUSE | |
|---|---|---|
| **Married** | RELATIONSHIP(S): **None.** | AGE(S): |

| Employment: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | **Maintenance Supervisor** | **Secretary** |
| Name of Employer | **Firestone Business Park** | **Watsonville Plumbing, Inc.** |
| How long employed | **25 Years** | **7 Years 5 months** |
| Address of Employer | **340 El Camino Real South Salinas, CA 93901-4554** | **200 Rancho Brazil Ln Watsonville, CA 95076** |

| INCOME: (Estimate of average or projected monthly income at time case filed) | | DEBTOR | | SPOUSE |
|---|---|---|---|---|
| 1. Monthly gross wages, salary, and commissions  (Prorate if not paid monthly) | $ | 5,135.00 | $ | 2,496.00 |
| 2. Estimate monthly overtime | $ | 0.00 | $ | 0.00 |
| 3. SUBTOTAL | $ | 5,135.00 | $ | 2,496.00 |
| 4. LESS PAYROLL DEDUCTIONS | | | | |
|    a.  Payroll taxes and social security | $ | 1,036.49 | $ | 363.52 |
|    b.  Insurance | $ | 354.25 | $ | 0.00 |
|    c.  Union dues | $ | 0.00 | $ | 0.00 |
|    d.  Other (Specify): | $ | 0.00 | $ | 0.00 |
| | $ | 0.00 | $ | 0.00 |
| 5. SUBTOTAL OF PAYROLL DEDUCTIONS | $ | 1,390.74 | $ | 363.52 |
| 6. TOTAL NET MONTHLY TAKE HOME PAY | $ | 3,744.26 | $ | 2,132.48 |
| 7. Regular income from operation of business or profession or farm (Attach detailed statement) | $ | 0.00 | $ | 0.00 |
| 8. Income from real property | $ | 0.00 | $ | 0.00 |
| 9. Interest and dividends | $ | 0.00 | $ | 0.00 |
| 10. Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above | $ | 0.00 | $ | 0.00 |
| 11. Social security or government assistance (Specify): | $ | 0.00 | $ | 0.00 |
| | $ | 0.00 | $ | 0.00 |
| 12. Pension or retirement income | $ | 0.00 | $ | 0.00 |
| 13. Other monthly income (Specify): | $ | 0.00 | $ | 0.00 |
| | $ | 0.00 | $ | 0.00 |
| 14. SUBTOTAL OF LINES 7 THROUGH 13 | $ | 0.00 | $ | 0.00 |
| 15. AVERAGE MONTHLY INCOME (Add amounts shown on lines 6 and 14) | $ | 3,744.26 | $ | 2,132.48 |
| 16. COMBINED AVERAGE MONTHLY INCOME: (Combine column totals from line 15) | $ | 5,876.74 | | |

(Report also on Summary of Schedules and, if applicable, on Statistical Summary of Certain Liabilities and Related Data)

17. Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document:
    **Wife's income went down recently from 40 hours a week to 32 hours a week and not expected to increase due to slow down at employer (if anything, expected to decrease in the future).**

Case: 10-54299    Doc# 1    Filed: 04/26/10    Entered: 04/26/10 17:33:20    Page 28 of 48

B6J (Official Form 6J) (12/07)

In re    **John Charles Stanphill**
    **Joanne Stanphill**                                    Case No. _____
            Debtor(s)

## SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

Complete this schedule by estimating the average or projected monthly expenses of the debtor and the debtor's family at time case filed.  Prorate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate.  The average monthly expenses calculated on this form may differ from the deductions from income allowed on Form 22A or 22C.

☐    Check this box if a joint petition is filed and debtor's spouse maintains a separate household.  Complete a separate schedule of expenditures labeled "Spouse."

| | | |
|---|---|---:|
| 1. Rent or home mortgage payment (include lot rented for mobile home) | $ | 2,292.00 |
| a. Are real estate taxes included?    Yes ___    No **X** | | |
| b. Is property insurance included?    Yes ___    No **X** | | |
| 2. Utilities:    a. Electricity and heating fuel | $ | 175.00 |
|           b. Water and sewer | $ | 47.75 |
|           c. Telephone | $ | 44.75 |
|           d. Other  **Trash** | $ | 19.60 |
| 3. Home maintenance (repairs and upkeep) | $ | 100.00 |
| 4. Food | $ | 350.00 |
| 5. Clothing | $ | 65.00 |
| 6. Laundry and dry cleaning | $ | 8.00 |
| 7. Medical and dental expenses | $ | 288.00 |
| 8. Transportation (not including car payments) | $ | 450.00 |
| 9. Recreation, clubs and entertainment, newspapers, magazines, etc. | $ | 50.00 |
| 10. Charitable contributions | $ | 190.00 |
| 11. Insurance (not deducted from wages or included in home mortgage payments) | | |
|           a. Homeowner's or renter's | $ | 67.00 |
|           b. Life | $ | 0.00 |
|           c. Health | $ | 0.00 |
|           d. Auto | $ | 213.00 |
|           e. Other  **See Detailed Expense Attachment** | $ | 288.50 |
| 12. Taxes (not deducted from wages or included in home mortgage payments) | | |
|      (Specify)  **See Detailed Expense Attachment** | $ | 329.31 |
| 13. Installment payments: (In chapter 11, 12, and 13 cases, do not list payments to be included in the plan) | | |
|           a. Auto | $ | 693.00 |
|           b. Other  **Life Insurance Loan** | $ | 200.00 |
|           c. Other  **Time Share Maint** | $ | 38.34 |
| 14. Alimony, maintenance, and support paid to others | $ | 0.00 |
| 15. Payments for support of additional dependents not living at your home | $ | 0.00 |
| 16. Regular expenses from operation of business, profession, or farm (attach detailed statement) | $ | 0.00 |
| 17. Other  **See Detailed Expense Attachment** | $ | 195.64 |
| 18. AVERAGE MONTHLY EXPENSES (Total lines 1-17. Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.) | $ | 6,104.89 |

19. Describe any increase or decrease in expenditures reasonably anticipated to occur within the year following the filing of this document:

20. STATEMENT OF MONTHLY NET INCOME

| | | |
|---|---|---:|
| a.   Average monthly income from Line 15 of Schedule I | $ | 5,876.74 |
| b.   Average monthly expenses from Line 18 above | $ | 6,104.89 |
| c.   Monthly net income (a. minus b.) | $ | -228.15 |

B6J (Official Form 6J) (12/07)

In re    **John Charles Stanphill**
       **Joanne Stanphill**                 Case No. _____

                Debtor(s)

## SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)
### Detailed Expense Attachment

**Other Insurance Expenditures:**

| | | |
|---|---|---|
| Accident Insurance | $ | 5.50 |
| Life Insurance with living needs (long term disability) | $ | 283.00 |
| **Total Other Insurance Expenditures** | $ | **288.50** |

**Specific Tax Expenditures:**

| | | |
|---|---|---|
| Property Taxes for Home | $ | 255.34 |
| Property Taxes Arkansas Property | $ | 73.97 |
| **Total Tax Expenditures** | $ | **329.31** |

**Other Expenditures:**

| | | |
|---|---|---|
| Union Dues - not deducted | $ | 66.64 |
| Personal Care Items | $ | 65.00 |
| DMV Registration divided by 12 | $ | 64.00 |
| **Total Other Expenditures** | $ | **195.64** |

B6 Declaration (Official Form 6 - Declaration). (12/07)

### United States Bankruptcy Court
#### Northern District of California

In re   **John Charles Stanphill**
      **Joanne Stanphill**

Case No. _____

Chapter   **13**

Debtor(s)

## DECLARATION CONCERNING DEBTOR'S SCHEDULES

### DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of ___**21**___ sheets, and that they are true and correct to the best of my knowledge, information, and belief.

Date  **April 23, 2010**          Signature  **/s/ John Charles Stanphill**
                                    **John Charles Stanphill**
                                    Debtor

Date  **April 23, 2010**          Signature  **/s/ Joanne Stanphill**
                                      **Joanne Stanphill**
                                    Joint Debtor

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - bestcase.com          Best Case Bankruptcy

B7 (Official Form 7) (04/10)

## United States Bankruptcy Court
### Northern District of California

In re  **John Charles Stanphill**
**Joanne Stanphill**

Case No.

Debtor(s)

Chapter  **13**

## STATEMENT OF FINANCIAL AFFAIRS

    This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs.  To indicate payments, transfers and the like to minor children, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian."  Do not disclose the child's name.  See, 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

    Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. **If the answer to an applicable question is "None," mark the box labeled "None."** If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

*DEFINITIONS*

    *"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

    *"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

---

**1. Income from employment or operation of business**

None
☐

    State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding the filing of this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|
| **$17,780.03** | **Husband 2010 Year to Date -** |
| **$13,410.00** | **Wife Year to Date** |
| **$102,679.00** | **2009: Both Employment Income** |
| **$101,690.00** | **2008: Both Employment Income** |

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - www.bestcase.com

Best Case Bankruptcy

**2. Income other than from employment or operation of business**

None ■

State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the **two years** immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|

**3. Payments to creditors**

None ■

*Complete a. or b., as appropriate, and c.*

a.    *Individual or joint debtor(s) with primarily consumer debts.*  List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within **90 days** immediately preceding the commencement of this case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $600. Indicate with an (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

None ■

b.    *Debtor whose debts are not primarily consumer debts:* List each payment or other transfer to any creditor made within **90 days** immediately preceding the commencement of the case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $5,850*.  If the debtor is an individual, indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency.  (Married debtors filing under chapter 12 or chapter 13 must include payments and other transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS/ TRANSFERS | AMOUNT PAID OR VALUE OF TRANSFERS | AMOUNT STILL OWING |
|---|---|---|---|

None ■

c.    *All debtors:* List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

**4.  Suits and administrative proceedings, executions, garnishments and attachments**

None ☐

a. List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|
| **Discover Bank v. Joanne Stanphill  C# M103679** | **Breach of Contract** | **Monterey County Superior Court** | **Pending** |
| **American General v. Stanphill C#MSC 131292** | **Breach of Contract** | **Monterey County Superior Court** | **Judgment** |

None ■

b. Describe all property that has been attached, garnished or seized under any legal or equitable process within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

* Amount subject to adjustment on 4/01/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

3

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

**5. Repossessions, foreclosures and returns**

None ■ List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

**6. Assignments and receiverships**

None ■ a. Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
|---|---|---|

None ■ b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|---|

**7. Gifts**

None ■ List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
|---|---|---|---|

**8. Losses**

None ■ List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case **or since the commencement of this case.** (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
|---|---|---|

Software Copyright (c) 1996-2010 Best Case Solutions, Inc. - Evanston, IL - www.bestcase.com      Best Case Bankruptcy

4

**9. Payments related to debt counseling or bankruptcy**

None ☐    List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of the petition in bankruptcy within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYOR IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| Law Offices of Matthew E. Williamson 490 Calle Principal Monterey, CA 93940 | Feb 2, 2010 | 2000 towards attorney's fees, 274 for filing fee |

**10. Other transfers**

None ■    a.  List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
|---|---|---|

None ■    b.  List all property transferred by the debtor within **ten years** immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary.

| NAME OF TRUST OR OTHER DEVICE | DATE(S) OF TRANSFER(S) | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY OR DEBTOR'S INTEREST IN PROPERTY |
|---|---|---|

**11. Closed financial accounts**

None ☐    List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within **one year** immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE OF ACCOUNT, LAST FOUR DIGITS OF ACCOUNT NUMBER, AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
|---|---|---|
| Washington Mutual Check Account Watsonville, CA | $0 - Originally Great Western Bank | June or July 2009 |

**12. Safe deposit boxes**

None ■    List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
|---|---|---|---|

**13. Setoffs**

None ■    List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within **90 days** preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

5

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
|---|---|---|

**14.  Property held for another person**

None ■

List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
|---|---|---|

**15.  Prior address of debtor**

None ■

If the debtor has moved within **three years** immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

| ADDRESS | NAME USED | DATES OF OCCUPANCY |
|---|---|---|

**16. Spouses and Former Spouses**

None ■

If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within **eight years** immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME

**17. Environmental Information.**

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law.

None ■

a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law:

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None ■

b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None ■

c. List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

| NAME AND ADDRESS OF GOVERNMENTAL UNIT | DOCKET NUMBER | STATUS OR DISPOSITION |
|---|---|---|

Software Copyright (c) 1996-2010 Best Case Solutions, Inc. - Evanston, IL - www.bestcase.com                    Best Case Bankruptcy

6

**18 . Nature, location and name of business**

None
■

a. *If the debtor is an individual*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

*If the debtor is a partnership*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within **six years** immediately preceding the commencement of this case.

*If the debtor is a corporation*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

| NAME | LAST FOUR DIGITS OF SOCIAL-SECURITY OR OTHER INDIVIDUAL TAXPAYER-I.D. NO. (ITIN)/ COMPLETE EIN | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|------|------|------|------|------|

None
■

b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

| NAME | ADDRESS |
|------|---------|

The following questions are to be completed by every debtor that is a corporation or partnership and by any individual debtor who is or has been, within **six years** immediately preceding the commencement of this case, any of the following: an officer, director, managing executive, or owner of more than 5 percent of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership, a sole proprietor, or self-employed in a trade, profession, or other activity, either full- or part-time.

*(An individual or joint debtor should complete this portion of the statement **only** if the debtor is or has been in business, as defined above, within six years immediately preceding the commencement of this case. A debtor who has not been in business within those six years should go directly to the signature page.)*

**19. Books, records and financial statements**

None
■

a. List all bookkeepers and accountants who within **two years** immediately preceding the filing of this bankruptcy case kept or supervised the keeping of books of account and records of the debtor.

| NAME AND ADDRESS | DATES SERVICES RENDERED |
|------|------|

None
■

b. List all firms or individuals who within the **two years** immediately preceding the filing of this bankruptcy case have audited the books of account and records, or prepared a financial statement of the debtor.

| NAME | ADDRESS | DATES SERVICES RENDERED |
|------|------|------|

None
■

c. List all firms or individuals who at the time of the commencement of this case were in possession of the books of account and records of the debtor. If any of the books of account and records are not available, explain.

| NAME | ADDRESS |
|------|------|

None
■

d. List all financial institutions, creditors and other parties, including mercantile and trade agencies, to whom a financial statement was issued by the debtor within **two years** immediately preceding the commencement of this case.

| NAME AND ADDRESS | DATE ISSUED |
|------|------|

Software Copyright (c) 1996-2010 Best Case Solutions, Inc. - Evanston, IL - www.bestcase.com          Best Case Bankruptcy

7

**20. Inventories**

None ■    a. List the dates of the last two inventories taken of your property, the name of the person who supervised the taking of each inventory, and the dollar amount and basis of each inventory.

| DATE OF INVENTORY | INVENTORY SUPERVISOR | DOLLAR AMOUNT OF INVENTORY (Specify cost, market or other basis) |
| --- | --- | --- |

None ■    b. List the name and address of the person having possession of the records of each of the two inventories reported in a., above.

| DATE OF INVENTORY | NAME AND ADDRESSES OF CUSTODIAN OF INVENTORY RECORDS |
| --- | --- |

**21 . Current Partners, Officers, Directors and Shareholders**

None ■    a. If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership.

| NAME AND ADDRESS | NATURE OF INTEREST | PERCENTAGE OF INTEREST |
| --- | --- | --- |

None ■    b. If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns, controls, or holds 5 percent or more of the voting or equity securities of the corporation.

| NAME AND ADDRESS | TITLE | NATURE AND PERCENTAGE OF STOCK OWNERSHIP |
| --- | --- | --- |

**22 . Former partners, officers, directors and shareholders**

None ■    a. If the debtor is a partnership, list each member who withdrew from the partnership within **one year** immediately preceding the commencement of this case.

| NAME | ADDRESS | DATE OF WITHDRAWAL |
| --- | --- | --- |

None ■    b. If the debtor is a corporation, list all officers, or directors whose relationship with the corporation terminated within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS | TITLE | DATE OF TERMINATION |
| --- | --- | --- |

**23 . Withdrawals from a partnership or distributions by a corporation**

None ■    If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider, including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other perquisite during **one year** immediately preceding the commencement of this case.

| NAME & ADDRESS OF RECIPIENT, RELATIONSHIP TO DEBTOR | DATE AND PURPOSE OF WITHDRAWAL | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
| --- | --- | --- |

**24. Tax Consolidation Group.**

None ■    If the debtor is a corporation, list the name and federal taxpayer identification number of the parent corporation of any consolidated group for tax purposes of which the debtor has been a member at any time within **six years** immediately preceding the commencement of the case.

| NAME OF PARENT CORPORATION | TAXPAYER IDENTIFICATION NUMBER (EIN) |
| --- | --- |

8

**25. Pension Funds.**

None    If the debtor is not an individual, list the name and federal taxpayer-identification number of any pension fund to which the debtor, as an
☐       employer, has been responsible for contributing at any time within **six years** immediately preceding the commencement of the case.

NAME OF PENSION FUND                                                TAXPAYER IDENTIFICATION NUMBER (EIN)

### DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto
and that they are true and correct.

Date  **April 23, 2010**                          Signature  **/s/ John Charles Stanphill**
                                                              **John Charles Stanphill**
                                                              Debtor

Date  **April 23, 2010**                          Signature  **/s/ Joanne Stanphill**
                                                              **Joanne Stanphill**
                                                              Joint Debtor

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571*

Software Copyright (c) 1996-2010 Best Case Solutions, Inc. - Evanston, IL - www.bestcase.com                    Best Case Bankruptcy

**United States Bankruptcy Court**
**Northern District of California**

In re    **John Charles Stanphill**
        **Joanne Stanphill**                                    Case No. _____

_____    Chapter    **13**
                                    Debtor(s)

## STATEMENT PURSUANT TO RULE 2016(B)

The undersigned, pursuant to Rule 2016(b), Bankruptcy Rules, states that:

1.    The undersigned is the attorney for the debtor(s) in this case.

2.    The compensation paid or agreed to be paid by the debtor(s), to the undersigned is:
      a)    For legal services rendered or to be rendered in contemplation of and in
            connection with this case _____    $ _____ **4,900.00**
      b)    Prior to the filing of this statement, debtor(s) have paid _____    $ _____ **2,000.00**
      c)    The unpaid balance due and payable is _____    $ _____ **2,900.00**

3.    $ __**274.00**__ of the filing fee in this case has been paid.

4.    The Services rendered or to be rendered include the following:
      a.    Analysis of the financial situation, and rendering advice and assistance to the debtor(s) in determining
            whether to file a petition under title 11 of the United States Code.
      b.    Preparation and filing of the petition, schedules, statement of affairs and other documents required by the
            court.
      c.    Representation of the debtor(s) at the meeting of creditors.

5.    The source of payments made by the debtor(s) to the undersigned was from earnings, wages and compensation
      for services performed, and

6.    The source of payments to be made by the debtor(s) to the undersigned for the unpaid balance remaining, if any,
      will be from earnings, wages and compensation for services performed, and

7.    The undersigned has received no transfer, assignment or pledge of property from debtor(s) except the following
      for the value stated:

8.    The undersigned has not shared or agreed to share with any other entity, other than with members of
      undersigned's law firm, any compensation paid or to be paid except as follows:

Dated:   **April 23, 2010**_____            Respectfully submitted,

                                    **/s/ Matthew E. Williamson**_____
                                    Attorney for Debtor: **Matthew E. Williamson 184877**
                                    **Law Offices of Matthew E. Williamson**
                                    **490 Calle Principal**
                                    **Monterey, CA 93940**
                                    **(831) 657-0100**

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - bestcase.com                    Best Case Bankruptcy

B 201A (Form 201A) (12/09)

**WARNING: Effective December 1, 2009, the 15-day deadline to file schedules and certain other documents under Bankruptcy Rule 1007(c) is shortened to 14 days.  For further information, see note at bottom of page 2**

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA

### NOTICE TO CONSUMER DEBTOR(S) UNDER § 342(b)
### OF THE BANKRUPTCY CODE

In accordance with § 342(b) of the Bankruptcy Code, this notice to individuals with primarily consumer debts: (1) Describes briefly the services available from credit counseling services; (2) Describes briefly the purposes, benefits and costs of the four types of bankruptcy proceedings you may commence; and (3) Informs you about bankruptcy crimes and notifies you that the Attorney General may examine all information you supply in connection with a bankruptcy case.

You are cautioned that bankruptcy law is complicated and not easily described. Thus, you may wish to seek the advice of an attorney to learn of your rights and responsibilities should you decide to file a petition. Court employees cannot give you legal advice.

Notices from the bankruptcy court are sent to the mailing address you list on your bankruptcy petition.  In order to ensure that you receive information about events concerning your case, Bankruptcy Rule 4002 requires that you notify the court of any changes in your address.  If you are filing a **joint case** (a single bankruptcy case for two individuals married to each other), and each spouse lists the same mailing address on the bankruptcy petition, you and your spouse will generally receive a single copy of each notice mailed from the bankruptcy court in a jointly-addressed envelope, unless you file a statement with the court requesting that each spouse receive a separate copy of all notices.

### 1. Services Available from Credit Counseling Agencies

**With limited exceptions, § 109(h) of the Bankruptcy Code requires that all individual debtors who file for bankruptcy relief on or after October 17, 2005, receive a briefing that outlines the available opportunities for credit counseling and provides assistance in performing a budget analysis.** The briefing must be given within 180 days **before** the bankruptcy filing. The briefing may be provided individually or in a group (including briefings conducted by telephone or on the Internet) and must be provided by a nonprofit budget and credit counseling agency approved by the United States trustee or bankruptcy administrator. The clerk of the bankruptcy court has a list that you may consult of the approved budget and credit counseling agencies.  Each debtor in a joint case must complete the briefing.

**In addition, after filing a bankruptcy case, an individual debtor generally must complete a financial management instructional course before he or she can receive a discharge.** The clerk also has a list of approved financial management instructional courses.  Each debtor in a joint case must complete the course.

### 2. The Four Chapters of the Bankruptcy Code Available to Individual Consumer Debtors

**Chapter 7: Liquidation ($245 filing fee, $39 administrative fee, $15 trustee surcharge: Total Fee $299)**
Chapter 7 is designed for debtors in financial difficulty who do not have the ability to pay their existing debts. Debtors whose debts are primarily consumer debts are subject to a "means test" designed to determine whether the case should be permitted to proceed under chapter 7. If your income is greater than the median income for your state of residence and family size, in some cases, the United States trustee (or bankruptcy administrator), the trustee, or creditors have the right to file a motion requesting that the court dismiss your case under § 707(b) of the Code. It is up to the court to decide whether the case should be dismissed.
Under chapter 7, you may claim certain of your property as exempt under governing law. A trustee may have the right to take possession of and sell the remaining property that is not exempt and use the sale proceeds to pay your creditors.
The purpose of filing a chapter 7 case is to obtain a discharge of your existing debts. If, however, you are found to have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your discharge and, if it does, the purpose for which you filed the bankruptcy petition will be defeated.
Even if you receive a general discharge, some particular debts are not discharged under the law. Therefore, you may still be responsible for most taxes and student loans; debts incurred to pay nondischargeable taxes; domestic support and property settlement obligations; most fines, penalties, forfeitures, and criminal restitution obligations; certain debts which are not properly listed in your bankruptcy papers; and debts for death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs. Also, if a creditor can prove that a debt arose from fraud, breach of fiduciary duty, or theft, or from a willful and malicious injury, the bankruptcy court may determine that the debt is not discharged.

**Chapter 13: Repayment of All or Part of the Debts of an Individual with Regular Income ($235 filing fee, $39 administrative fee: Total fee $274)**

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - bestcase.com                                                          Best Case Bankruptcy

Form B 201A, Notice to Consumer Debtor(s)                                                                                                  Page 2

Chapter 13 is designed for individuals with regular income who would like to pay all or part of their debts in installments over a period of time. You are only eligible for chapter 13 if your debts do not exceed certain dollar amounts set forth in the Bankruptcy Code.

Under chapter 13, you must file with the court a plan to repay your creditors all or part of the money that you owe them, using your future earnings. The period allowed by the court to repay your debts may be three years or five years, depending upon your income and other factors. The court must approve your plan before it can take effect.

After completing the payments under your plan, your debts are generally discharged except for domestic support obligations; most student loans; certain taxes; most criminal fines and restitution obligations; certain debts which are not properly listed in your bankruptcy papers; certain debts for acts that caused death or personal injury; and certain long term secured obligations.

**Chapter 11: Reorganization ($1000 filing fee, $39 administrative fee: Total fee $1039)**

Chapter 11 is designed for the reorganization of a business but is also available to consumer debtors. Its provisions are quite complicated, and any decision by an individual to file a chapter 11 petition should be reviewed with an attorney.

**Chapter 12: Family Farmer or Fisherman ($200 filing fee, $39 administrative fee: Total fee $239)**

Chapter 12 is designed to permit family farmers and fishermen to repay their debts over a period of time from future earnings and is similar to chapter 13. The eligibility requirements are restrictive, limiting its use to those whose income arises primarily from a family-owned farm or commercial fishing operation.

**3. Bankruptcy Crimes and Availability of Bankruptcy Papers to Law Enforcement Officials**

A person who knowingly and fraudulently conceals assets or makes a false oath or statement under penalty of perjury, either orally or in writing, in connection with a bankruptcy case is subject to a fine, imprisonment, or both. All information supplied by a debtor in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the United States Trustee, the Office of the United States Attorney, and other components and employees of the Department of Justice.

**WARNING:** Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information regarding your creditors, assets, liabilities, income, expenses and general financial condition. Your bankruptcy case may be dismissed if this information is not filed with the court within the time deadlines set by the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the court.  The documents and the deadlines for filing them are listed on Form B200, which is posted at http://www.uscourts.gov/bkforms/bankruptcy_forms.html#procedure.

**Many filing deadlines change on December 1, 2009.  Of special note, 12 rules that set 15 days to act are amended to require action within 14 days, including Rule 1007(c), filing the initial case papers; Rule 3015(b), filing a chapter 13 plan; Rule 8009(a), filing appellate briefs; and Rules 1019, 1020, 2015, 2015.1, 2016, 4001, 4002, 6004, and 6007.**

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - bestcase.com                                                    Best Case Bankruptcy

B 201B (Form 201B) (12/09)

## United States Bankruptcy Court
### Northern District of California

In re    **John Charles Stanphill**
**Joanne Stanphill**                                          Case No. _____
_____
                              Debtor(s)          Chapter    __13__

## CERTIFICATION OF NOTICE TO CONSUMER DEBTOR(S)
## UNDER § 342(b) OF THE BANKRUPTCY CODE

### Certification of Debtor

I (We), the debtor(s), affirm that I (we) have received and read the attached notice, as required by § 342(b) of the Bankruptcy Code.

**John Charles Stanphill**
**Joanne Stanphill**                        X  **/s/ John Charles Stanphill**        **April 23, 2010**
_____           _____
Printed Name(s) of Debtor(s)                  Signature of Debtor                       Date

Case No. (if known) _____       X  **/s/ Joanne Stanphill**               **April 23, 2010**
                                            _____
                                              Signature of Joint Debtor (if any)        Date

---

**Instructions:** Attach a copy of Form B 201 A, Notice to Consumer Debtor(s) Under § 342(b) of the Bankruptcy Code.

Use this form to certify that the debtor has received the notice required by 11 U.S.C. § 342(b) **only** if the certification has **NOT** been made on the Voluntary Petition, Official Form B1.  Exhibit B on page 2 of Form B1 contains a certification by the debtor's attorney that the attorney has given the notice to the debtor.  The Declarations made by debtors and bankruptcy petition preparers on page 3 of Form B1 also include this certification.

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - bestcase.com                                    Best Case Bankruptcy

**United States Bankruptcy Court**
**Northern District of California**

In re   John Charles Stanphill
        Joanne Stanphill
                                    Case No. _____
                    Debtor(s)       Chapter   **13**

**CREDITOR MATRIX COVER SHEET**

I declare that the attached Creditor Mailing Matrix, consisting of __4__ sheets, contains the correct, complete and current names and addresses of all priority, secured and unsecured creditors listed in debtor's filing and that this matrix conforms with the Clerk's promulgated requirements.

Date:   **April 23, 2010**              **/s/ Matthew E. Williamson**
                                        Signature of Attorney
                                        **Matthew E. Williamson 184877**
                                        **Law Offices of Matthew E. Williamson**
                                        **490 Calle Principal**
                                        **Monterey, CA 93940**
                                        **(831) 657-0100**

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - bestcase.com        Best Case Bankruptcy

American General Finan
Po Box 3251
Evansville, IN 47731


American General Financial Services
415 Salinas St
Salinas, CA 93901


Amex
Po Box 297871
Fort Lauderdale, FL 33329


Atlantic Crd
P O Box 13386
Roanoke, VA 24033


Bank Of America
Po Box 17054
Wilmington, DE 19850


Cap One
Po Box 85520
Richmond, VA 23285


Capital One, N.A.
2730 Liberty Ave
Pittsburgh, PA 15222


Cardmember Service
P.O. Box 790408
Saint Louis, MO 63179-0408

```
Community Hospital of Monterey Peninsula
P.O. Box 39000 Dept 34028
San Francisco, CA 94139-0001


Discover Fin Svcs Llc
Po Box 15316
Wilmington, DE 19850


Dsrm Nt Bk
7201 Canyon Dr
Amarillo, TX 79110


Elan Financial Service
777 E Wisconsin Ave
Milwaukee, WI 53202


Financial Solution Legal Center
711 Mission Ave. Ste 323
Oceanside, CA 92054


First Bank Card
P.O. Box 2557
Omaha, NE 68103-2557


Ford Cred
Po Box Box 542000
Omaha, NE 68154


Gemb/Ge Money Bank Low
Po Box 103065
Roswell, GA 30076
```

Gmac Mortgage
Po Box 4622
Waterloo, IA 50704


Hsbc Bank
Po Box 5253
Carol Stream, IL 60197


John P. Frye PC
P.O. Box 13665
Roanoke, VA 24036-3665


Kohls/Chase
N56 W 17000 Ridgewood Dr
Menomonee Falls, WI 53051


Prudential
P.O. Box 7390
Philadelphia, PA 19176


Saint Louise Regional Hospital
9400 No Name Uno
Gilroy, CA 95020


Santa Cruz Community C
324 Front St
Santa Cruz, CA 95060


Specialized Loan Servi
8742 Lucent Blvd Ste 300
Highlands Ranch, CO 80129

Wells Fargo Bank
Po Box 5445
Portland, OR 97228


Wyndham Rd
10750 W. Charleston Blvd.  Ste 130
Las Vegas, NV 89135


Zwicker and Associates PC
80 Minuteman Road
Andover, MA 01810-1008

**Exhibit 5-B**

B6B (Official Form 6B) (12/07)

.

In re    **John Charles Stanphill,**                                    Case No.    **12-56131**
         **Joanne Stanphill**
                                          ,
                              Debtors

# SCHEDULE B - PERSONAL PROPERTY - AMENDED

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property."
If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| | Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|---|
| 1. | Cash on hand | X | | | |
| 2. | Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | Citibank Checking Account ...1575 | C | 350.00 |
| | | | Citibank Checking Account ...3641 | C | 51.83 |
| | | | Chase Checking Account ...5920 | C | 200.00 |
| | | | Chase Savings Account ... 8018 | C | 147.00 |
| | | | Central Coast Federal Credit Union ... 80 | C | 1,100.00 |
| | | | Central Coast Federal Credit Union Savings Account ...00 | C | 1,200.00 |
| 3. | Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. | Household goods and furnishings, including audio, video, and computer equipment. | | All Household Goods with no item valued at more than $100 Location: 17886 Berta Canyon Rd., Salinas CA 93907 | C | 5,396.00 |
| 5. | Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. | Wearing apparel. | | Clothing Location: 17886 Berta Canyon Rd., Salinas CA 93907 | C | 100.00 |
| 7. | Furs and jewelry. | | Wedding rings, Fine Jewelry, and Costume Jewelry Location: 17886 Berta Canyon Rd., Salinas CA 93907 | C | 2,625.00 |
| 8. | Firearms and sports, photographic, and other hobby equipment. | X | | | |

Sub-Total >              **11,169.83**
(Total of this page)

__3__    continuation sheets attached to the Schedule of Personal Property

B6B (Official Form 6B) (12/07) - Cont.

In re  **John Charles Stanphill,**                              Case No.  **12-56131**
      **Joanne Stanphill**

_____,
Debtors

# SCHEDULE B - PERSONAL PROPERTY - AMENDED
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | | **ADD Insurance through CSAA** | **C** | **1.00** |
| 10. Annuities. Itemize and name each issuer. | X | | | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | | **Stationary Engineers Local 39, Define Benefit Pension Plan** | **C** | **43,851.00** |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |

Sub-Total >        **43,852.00**
(Total of this page)

Sheet  **1**  of  **3**  continuation sheets attached
to the Schedule of Personal Property

Software Copyright (c) 1996-2013 - Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

B6B (Official Form 6B) (12/07) - Cont.

In re    **John Charles Stanphill,**            Case No.    __12-56131__
        **Joanne Stanphill**

                      Debtors

# SCHEDULE B - PERSONAL PROPERTY - AMENDED
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | **Pending Cause of Action against GMAC case no. CV 12-03955 SJO (MRWx) Debtors do not know if they will receive any money from the law suit. Debtors are no longer pursuing this lawsuit.** | C | 0.00 |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | **2006 Ford 500, 93k miles Location: 17886 Berta Canyon Rd., Salinas CA 93907** | C | 5,400.00 |
| | | **2008 Ford F-150 101,634 Miles Location: 17886 Berta Canyon Rd., Salinas CA 93907** | C | 10,500.00 |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |

                                              Sub-Total >      **15,900.00**
                                              (Total of this page)

Sheet __2__ of __3__ continuation sheets attached
to the Schedule of Personal Property

B6B (Official Form 6B) (12/07) - Cont.

In re  **John Charles Stanphill,**                                     Case No.   **12-56131**
       **Joanne Stanphill**

_____,
Debtors

## SCHEDULE B - PERSONAL PROPERTY - AMENDED
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

|  | |
|---|---|
| Sub-Total > | 0.00 |
| (Total of this page) | |
| Total > | 70,921.83 |

Sheet __3__ of __3__ continuation sheets attached
to the Schedule of Personal Property                    (Report also on Summary of Schedules)

Software Copyright (c) 1996-2013 - Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

**Central Coast Bankruptcy, Inc.**
**Jason Vogelpohl, Esq.**
532 Pajaro Street
Salinas, CA 93901
831.783.0260
831.783.0232 fax

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re:                                              Chapter 13
                                                    Case No.: 12-56131 CN

STANPHILL, John

STANPHILL, Joanne



_____ Debtor(s). _____

DEBTORS' DECLARATION OF AMENDED SCHEDULE B

We say and declare:

    We are the debtors herein. We make this Declaration that the information contained in the

amended Schedule B is accurate.

    We declare under penalty of perjury that the foregoing is true and correct to the best of
our knowledge. Executed

at Salinas, California.

___/s/ John Stanphill___
John Stanphill
Debtor
Date: ___10/31/2013_____

___/s/ Joanne Stanphill_____
Joanne Stanphill
Debtor
Date: ___10/31/2013_____

B6B (Official Form 6B) (12/07)

.

| In re | **John Charles Stanphill,** | | Case No. | **12-56131** |
| | **Joanne Stanphill** | | | |

Debtors

# SCHEDULE B - PERSONAL PROPERTY - AMENDED

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property."

If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 1. Cash on hand | X | | | |
| 2. Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **Citibank Checking Account ...1575** | C | 350.00 |
| | | **Citibank Checking Account ...3641** | C | 51.83 |
| | | **Chase Checking Account ...5920** | C | 200.00 |
| | | **Chase Savings Account ... 8018** | C | 147.00 |
| | | **Central Coast Federal Credit Union ... 80** | C | 1,100.00 |
| | | **Central Coast Federal Credit Union Savings Account ...00** | C | 1,200.00 |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. Household goods and furnishings, including audio, video, and computer equipment. | | **All Household Goods with no item valued at more than $100** Location: 17886 Berta Canyon Rd., Salinas CA 93907 | C | 5,396.00 |
| 5. Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. Wearing apparel. | | **Clothing** Location: 17886 Berta Canyon Rd., Salinas CA 93907 | C | 100.00 |
| 7. Furs and jewelry. | | **Wedding rings, Fine Jewelry, and Costume Jewelry** Location: 17886 Berta Canyon Rd., Salinas CA 93907 | C | 2,625.00 |
| 8. Firearms and sports, photographic, and other hobby equipment. | X | | | |

|  | Sub-Total > | 11,169.83 |
|  | (Total of this page) | |

__3__  continuation sheets attached to the Schedule of Personal Property

B6B (Official Form 6B) (12/07) - Cont.

In re   **John Charles Stanphill,**                              Case No.   **12-56131**
        **Joanne Stanphill**

                                                    Debtors

# SCHEDULE B - PERSONAL PROPERTY - AMENDED
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | | **ADD Insurance through CSAA** | **C** | **1.00** |
| 10. Annuities. Itemize and name each issuer. | X | | | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars.  (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | | **Stationary Engineers Local 39, Define Benefit Pension Plan** | **C** | **43,851.00** |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |

Sub-Total >     **43,852.00**
(Total of this page)

Sheet __1__ of __3__ continuation sheets attached
to the Schedule of Personal Property

Software Copyright (c) 1996-2013 - Best Case, LLC - www.bestcase.com                              Best Case Bankruptcy

B6B (Official Form 6B) (12/07) - Cont.

In re   **John Charles Stanphill,**
       **Joanne Stanphill**

Case No.   **12-56131**

_____,
Debtors

## SCHEDULE B - PERSONAL PROPERTY - AMENDED
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | **Pending Cause of Action against GMAC case no. CV 12-03955 SJO (MRWx) Debtors do not know if they will receive any money from the law suit. Debtors are no longer pursuing this lawsuit.** | C | 0.00 |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | **2006 Ford 500, 93k miles Location: 17886 Berta Canyon Rd., Salinas CA 93907** | C | 5,400.00 |
| | | **2008 Ford F-150 101,634 Miles Location: 17886 Berta Canyon Rd., Salinas CA 93907** | C | 10,500.00 |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |

Sub-Total >     **15,900.00**
(Total of this page)

Sheet __**2**__ of __**3**__ continuation sheets attached
to the Schedule of Personal Property

Software Copyright (c) 1996-2013 - Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

B6B (Official Form 6B) (12/07) - Cont.

In re  **John Charles Stanphill,**                                    Case No.    **12-56131**
       **Joanne Stanphill**

                                   Debtors
## SCHEDULE B - PERSONAL PROPERTY - AMENDED
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

Sub-Total >    **0.00**
(Total of this page)
Total >    **70,921.83**

Sheet __3__ of __3__ continuation sheets attached                              (Report also on Summary of Schedules)
to the Schedule of Personal Property

Software Copyright (c) 1996-2013 - Best Case, LLC - www.bestcase.com                              Best Case Bankruptcy

**<u>Exhibit 6</u>**

**Central Coast Bankruptcy**
**Jason Vogelpohl, Esq.**
532 Pajaro St.
Salinas, CA 93901
831.783.0260
831.783.0232 fax

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re:
STANPHILL, John                                    Case# 12-56131 CN
STANPHILL, Joanne                                  Ch. 13

_____ Debtor(s). _____

DEBTOR DECLARATION REGARDING CAUSE OF ACTION AGAINST GMAC

We say and declare:

   We are the debtor(s) herein. We make this Declaration to explain Point #3 of the Trustees

Second Amended Objection.

   We, John and Joanne Stanphill, declare that we are no longer pursuing the "Cause of

Action against GMAC" due to the fact that we decided to file our Chapter 13 Bankruptcy case

instead. We were trying to do a loan modification and GMAC seemed to not be cooperating with

us. We were working with our attorney Trevor Hensley and nothing seemed to be getting done.

By filing Chapter 13 we are going to pay back the arrears owed to GMAC through our Chapter

13 Plan and we no longer have to worry about a loan modification.

   We declare under penalty of perjury that the foregoing is true and correct. Executed on

July 26, 2013 at Salinas, California.


/s/ John Stanphill
JOHN STANPHILL
Debtor

/s/ Joanne Stanphill
JOANNE STANPHILL
Debtor

**Exhibit 7-A**

Case 2:12-md-02020-mg Doc 8592 Filed 05/08/15 Entered 05/08/15 17:05:13 Main Document
Case 1:10-cv-00653-SOM-BMK Document 73 Filed 05/28/11 Page 1 of 26 PageID #:
Pg 164 of 221
621

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| COLEEN ETSUKO TOM; and<br>JOYCELYN WANDA UNCIANO, | ) <br>) <br>) | CIV. NO. 10-00653 SOM/BMK |
| Plaintiffs, | ) <br>) | ORDER DISMISSING COMPLAINT |
| vs. | ) <br>) <br>) | |
| GMAC MORTGAGE, LLC, et al., | ) <br>) | |
| Defendants. | ) <br>) <br>) | |

ORDER DISMISSING COMPLAINT

I.        INTRODUCTION.

This case involves an alleged mortgage default that gave rise to a judicial foreclosure in state court. While that judicial foreclosure was pending, a nonjudicial foreclosure process was started and subsequently terminated. Plaintiff Coleen Etsuko Tom sues the current holder of her loan's note and mortgage, an employee of that company, and the company's attorney, claiming that the nonjudicial foreclosure was improper.

Defendants have filed motions to dismiss. See ECF Nos. 31 and 32. For the reasons set forth below, the court dismisses the First Amended Complaint without a hearing pursuant to Local Rule 7.2(d).

II.       BACKGROUND.

          In March 1995, Plaintiff Coleen Etsuko Tom (and her

late husband Wayne Noelani Tom)[1] received a loan from Western

Pacific Mortgage.  To secure the loan, Tom executed and delivered

to Western Pacific Mortgage a $160,000 note and a mortgage on her

property.  See First Amended Complaint ("FAC") ¶ 1, Dec. 13,

2010, ECF No. 26; Complaint in Wash. Mut. Bank, FA v. Tom, et al,

03-1-1029-05, May 15 2003, ECF No. 26-3 ("2003 State Court

Complaint").  Copies of the note and mortgage are attached to the

2003 State Court Complaint and submitted as part of the First

Amended Complaint filed here, ECF No. 26-3.  The mortgage was

recorded in the State of Hawaii Office of Assistant Registrar

("Land Court") as Document Number 2226366 and was noted on

Transfer Certificate Title ("TCT") 454,267, a canceled TCT that

was replaced by TCT 546,739.  See FAC ¶ 1.

          The court takes judicial notice of the execution on

December 1, 1999, by Wayne Noelani Tom and Coleen Etsuko Tom of a

Warranty Deed transferring their interest in the property

securing the loan to Joycelyn Wanda Unciano.  See Warranty Deed,

ECF No. 31-5 (recorded in the Land Court on Jan. 11, 2000, as

Doc. No. 2600790 and noted on TCT 546,739).

---

[1]Footnote 1 of the First Amended Complaint indicates that
Wayne Noelani Tom has passed away.

2

By May 15, 2003, the Toms' note and mortgage had been assigned to Washington Mutual Bank, FA. See 2003 State Court Complaint ¶ 13, ECF No. 26-3. The 2003 State Court Complaint alleges that the Toms failed to pay amounts due and owing under the note and mortgage. Id. ¶ 14. At some point, the Western Pacifica Mortgage loan was transferred from Washington Mutual Bank to Homecomings Financial Network, Inc. See FAC ¶¶ 10-11.

On October 6, 2006, Homecomings Financial Network, Inc., converted from a corporation to a limited liability company named Homecomings Financial, LLC. See Certificate of Conversion to Limited Liability Company, ECF No. 26-4. In September 2008, Homecomings Financial, LLC, petitioned the Land Court for an order allowing documents to be executed and filed in the name of Homecomings Financial, LLC, rather than its previous name of Homecomings Financial Network, Inc. Id. That petition was granted on September 10, 2008. Id.

On December 10, 2008, an order was entered in the state-court case that substituted Homecomings Financial, LLC, as plaintiff. See ECF No. 26-5.

The court takes judicial notice of the denial of Homecomings Financial, LLC's motion for summary judgment on the 2003 State Court Complaint on March 2, 2010. See ECF No. 55-1. Nothing in that order or in the record indicates why the motion was denied.

3

In August 2010, Homecomings Financial Network, Inc.,
through Kristine Wilson, its vice president, assigned the Toms'
mortgage to GMAC Mortgage, LLC.[2]  This assignment was recorded in
the Land Court as Document Number 3999824 and noted on TCT
546,739.  See ECF No. 26-1.  It is the court's understanding that
GMAC Mortgage, LLC, has not yet substituted itself as Plaintiff
in the state-court case.

On or about September 15, 2010, Wilson, as "Limited
Signing Officer" for GMAC Mortgage, sent Tom a "Notice of
Mortgagee's Intention to Foreclose Under Power of Sale."  See ECF
No. 26-2.  With the issuance of this notice, a state-court
judicial foreclosure proceeding by Homecomings Financial and a
nonjudicial foreclosure proceeding by GMAC Mortgage were
proceeding at the same time based on the same mortgage.
Plaintiffs allege that they received this notice on October 6,
2010.  See FAC ¶ 21.  The court takes judicial notice of the
rescission of the notice of nonjudicial foreclosure on November
8, 2010.  See ECF No. 34-4.

Unciano says that, on October 6, 2010, she spoke with
Defendant David Rosen, Esq., the attorney listed in the
nonjudicial foreclosure notice.  Unciano says that Rosen admitted

---

[2]The court takes judicial notice of a correction in the
assignor.  In March 2011, GMAC Mortgage, joined by Homecomings
Financial, LLC, petitioned the Land Court to correct the assignor
of the Toms' mortgage from Homecomings Financial Network, Inc.,
to Homecomings Financial, LLC.  The Land Court granted that
petition on March 2, 2011.  See ECF No. 58-2.

to her at that time that he was aware of the parallel state-court judicial foreclosure proceeding and that he stated, "I do not see how it affects my clients." See FAC ¶ 18.

On October 25, 2010, Plaintiffs filed the original complaint in this removed action in state court. See FAC ¶ 24. On October 27, 2010, the state-court judge granted an ex parte motion that temporarily restrained the nonjudicial foreclosure. See ECF No. 26-8. That order indicates that the state-court judge was concerned about the simultaneous judicial and nonjudicial foreclosures by "separate competing mortgagees, Homecomings Financial, LLC and GMAC Mortgage, LLC." Id. ¶ 14. The state-court judge was also concerned about Wilson's signing of the assignment of mortgage to GMAC on behalf of Homecomings Financial and later issuing of the notice of nonjudicial foreclosure on behalf of GMAC. Id. ¶ 15. Because the order was issued on an ex parte basis, Defendants did not have an opportunity to address the state-court judge's concerns before the order issued. Possibly, they are related companies.

Plaintiffs' original Complaint in this matter was removed to this court on November 9, 2010. See Notice of Removal of Civil Action, Nov. 9, 2010, ECF No. 1.

On November 17, 2010, the court held a telephone conference with the parties concerning a request by Plaintiffs to extend the ex parte temporary restraining order. Rosen informed

5

the court that the rescission of the notice of nonjudicial
foreclosure was in the process of being filed with the Land
Court.  Plaintiffs then withdrew their request to extend the <u>ex
parte</u> temporary restraining order with the court's agreement that
the request could be reactivated if Defendants took further
action to proceed with the nonjudicial foreclosure.  <u>See</u> FAC
¶ 32; Entering Proceeding, Nov. 17, 2010, ECF No. 12.  The notice
of rescission was actually filed with the Land Court on November
17, 2010.  <u>See</u> FAC ¶ 33; ECF No. 26-11.

Plaintiffs say that, at a December 6, 2010, scheduling
conference, Rosen told Plaintiffs that he had talked with counsel
in the state-court judicial proceedings before filing the
nonjudicial foreclosure and that they had agreed to the
nonjudicial foreclosure process.  <u>See</u> FAC ¶ 34.

III.    <u>ANALYSIS.</u>

The FAC asserts claims against 1) GMAC Mortgage, LLC,
the current holder of the note and mortgage, 2) David B. Rosen,
Esq., the attorney listed in GMAC's notice of nonjudicial
foreclosure, and 3) Kristine Wilson, the person who executed the
assignment of mortgage on behalf of Homecomings Financial to GMAC
Mortgage and the person who signed the notice of nonjudicial
foreclosure on behalf of GMAC Mortgage.

The FAC had also asserted claims against Cal-Western
Reconveyance Corporation, which allegedly assisted in the

nonjudicial foreclosure, Steven Iwamura, Esq., and his law firm,
Clay Chapman Iwamura Pulice & Nervell, the firm that represented
Homecoming Financial in the state-court judicial foreclosure
proceedings until recently.  Those claims have since been
dismissed with prejudice.  <u>See</u> Stipulation for Dismissal, May 11,
2011, ECF No. 71

>    A.    <u>Count I--Injunctive Relief.</u>

Count I seeks to enjoin GMAC Mortgage, Rosen, and
Wilson "from proceeding with their foreclosure under power of
sale . . . while this case is pending."  FAC ¶ 37.  The basis of
this argument is that Defendants should not be allowed to pursue
both a judicial foreclosure and a nonjudicial foreclosure at the
same time.

Defendants move to dismiss the injunctive relief claim
as moot, as the notice of nonjudicial foreclosure was rescinded
before the FAC was filed.  The court agrees that the request to
enjoin the nonjudicial foreclosure is moot and therefore
dismisses it.

Because mootness pertains to a federal court's subject
matter jurisdiction under Article III of the United States
Constitution, a motion to dismiss on mootness grounds is analyzed
under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  <u>See</u>
<u>White v. Lee</u>, 227 F.3d 1214, 1242 (9th Cir. 2000) (mootness is
jurisdictional).  A motion to dismiss for lack of subject matter

7

jurisdiction under Rule 12(b)(1) may either attack the
allegations of the complaint as insufficient to confer subject
matter jurisdiction on the court, or may attack the existence of
subject matter jurisdiction in fact. Thornhill Publ'g Co., Inc.
v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).
When the motion to dismiss attacks the allegations of the
complaint as insufficient to confer subject matter jurisdiction,
all allegations of material fact are taken as true and construed
in the light most favorable to the nonmoving party. Fed'n of
African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207
(9th Cir. 1996). When the motion to dismiss is a factual attack
on subject matter jurisdiction, however, no presumptive
truthfulness attaches to the plaintiff's allegations, and the
existence of disputed material facts will not preclude the trial
court from evaluating for itself the existence of subject matter
jurisdiction in fact. Thornhill, 594 F.2d at 733.
Defendants' motion to dismiss Count I is a facial attack on this
court's subject matter jurisdiction.

"[A] case is moot when the issues presented are no
longer 'live' or the parties lack a legally cognizable interest
in the outcome." County of Los Angeles v. Davis, 440 U.S. 625,
631 (1979) (quoting Powell v. McCormack, 395 U.S. 486, 496
(1969)). This court may dismiss a claim at any time based on

8

mootness.  See Hill v. Blind Indus. & Servs. of Maryland, 179
F.3d 754, 757 (9th Cir. 1999).

     A party claiming mootness has the heavy burden of
establishing that it is not conveniently stopping the complained-
of activity, only to resume once a suit is dismissed.  See
Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528
U.S. 167, 189 (2000).  Clearly dismissal in that context could
expose a plaintiff to the risk of having to run to court
repeatedly, only to be stymied each time as the defendant
voluntarily, but temporarily, ceases its actions.  See id. (if a
defendant's voluntary cessation of an allegedly unlawful practice
deprived a federal court of jurisdiction over a case, "the courts
would be compelled to leave the defendant free to return to his
old ways").

     It is precisely to avoid such a situation that the
Supreme Court has held that "a defendant's voluntary cessation of
a challenged practice does not deprive a court of its power to
determine the legality of that practice."  City of Mesquite v.
Alladin's Castle, Inc., 455 U.S. 283, 289 (1982).  It is true,
however, that "a case might become moot if subsequent events made
it absolutely clear that the allegedly wrongful behavior could
not reasonably be expected to recur."  United States v.
Concentrated Phosphate Exp. Ass'n, 393 U.S. 199, 203 (1968)
(quotation omitted).  "[T]he heavy burden of persuading the court
that the challenged conduct cannot reasonably be expected to

9

start up again lies with the party asserting mootness." <u>Laidlaw</u>,
528 U.S. at 189.

Defendants voluntarily stopped the nonjudicial
foreclosure proceedings after the original Complaint was filed
but before the FAC was filed.  Although Defendants reserved their
right to initiate a nonjudicial foreclosure in the future,
nothing in the record indicates that another nonjudicial
foreclosure proceeding can reasonably be expected to occur under
the circumstances presented here.  Defendants have already
abandoned their attempt to use the nonjudicial foreclosure
process while the state-court judicial foreclosure proceedings
are ongoing.  Under these circumstances, Count I is dismissed as
moot.

If Defendants initiate nonjudicial foreclosure
proceedings while the state-court foreclosure proceedings are
ongoing, Plaintiffs 1) may seek to reopen this case, if
necessary, 2) may seek expedited reconsideration of this part of
this order, and 3) may seek to enjoin the nonjudicial foreclosure
proceedings.  Plaintiffs may alternatively seek injunctive relief
based on claims still remaining in the case at that time.  Of
course, if the state-court judicial foreclosure proceedings are
terminated before another nonjudicial foreclosure is initiated,
the court will be faced with a different record.

To the extent Count I seeks attorneys' fees based on
sections 480-2 and 480-13 of the Hawaii Revised Statutes because

Plaintiffs convinced a state-court judge to issue an <u>ex parte</u>
temporary restraining order, that claim is also dismissed for the
reasons set forth below regarding the dismissal of the claims
asserted in Count III of the FAC.

    B.   <u>Count II--Declaratory Judgment.</u>

    1.  <u>Assignment of Mortgage.</u>

Plaintiffs seek a declaratory judgment that the
assignment of mortgage from Homecoming Financial to GMAC Mortgage
is invalid.  Defendants seek dismissal of that claim for
declaratory relief, arguing that the court should abstain under
<u>Brillhart v. Excess Ins. Co. of Am.</u>, 316 U.S. 491, 494 (1942).
This court agrees and declines to exercise jurisdiction over this
claim because the validity of the assignment of mortgage is at
the heart of the state-court judicial foreclosure proceeding.

The Declaratory Judgment Act states that "courts <u>may</u>
declare the rights and other legal relations of any interested
party seeking such declaration."  28 U.S.C. § 2201(a) (emphasis
added).  This court is therefore under no compulsion to exercise
its jurisdiction over Declaratory Judgment Act cases.  <u>See</u>
<u>Brillhart v. Excess Ins. Co. of Am.</u>, 316 U.S. 491, 494 (1942).
Rather, this court has discretion as to whether it will entertain
Declaratory Judgment Act cases.  <u>See</u> <u>Wilton v. Seven Falls Co.</u>,
515 U.S. 277, 288-89 (1995).

In <u>Brillhart</u>, the Supreme Court stated that it would
ordinarily

11

>           be uneconomical as well as vexatious for a
>           federal court to proceed in a declaratory
>           judgment suit where another suit is pending
>           in a state court presenting the same issues,
>           not governed by federal law, between the same
>           parties.  Gratuitous interference with the
>           orderly and comprehensive disposition of a
>           state court litigation should be avoided.

Brillhart, 316 U.S. at 495.  Brillhart set forth a nonexhaustive

list of factors district courts should consider in determining

whether to stay or dismiss a federal court Declaratory Judgment

Act case:

>           Where a district court is presented with a
>           claim such as was made here, it should
>           ascertain whether the questions in
>           controversy between the parties to the
>           federal suit, and which are not foreclosed
>           under the applicable substantive law, can
>           better be settled in the proceeding pending
>           in the state court.  This may entail inquiry
>           into the scope of the pending state court
>           proceeding and the nature of defenses open
>           there.  The federal court may have to
>           consider whether the claims of all parties in
>           interest can satisfactorily be adjudicated in
>           that proceeding, whether necessary parties
>           have been joined, whether such parties are
>           amenable to process in that proceeding, etc.

Id.

            In an en banc decision, the Ninth Circuit has stated

that this court "should avoid needless determination of state law

issues; it should discourage litigants from filing declaratory

actions as a means of forum shopping; and it should avoid

duplicative litigation."  Gov't Employees Ins. Co. v. Dizol, 133

F.3d 1220, 1225 (9th Cir. 1998) (en banc).  The Ninth Circuit

suggested other considerations for a court faced with the issue

                                    12

of whether to stay or dismiss a Declaratory Judgment Act case in
favor of a pending state-court proceeding: 1) whether the
declaratory action will settle all aspects of the
controversy; 2) whether the declaratory action will serve a
useful purpose in clarifying the legal relations at
issue; 3) whether the declaratory action is being sought merely
for the purposes of procedural fencing or to obtain a res
judicata advantage; 4) whether the use of a declaratory action
will result in entanglement between the federal and state court
systems; 5) the convenience of the parties, and 6) the
availability and relative convenience of other remedies.
Id. n.5.

    When there are parallel state proceedings, "there is a
presumption that the entire suit should be heard in state court."
Id. at 1225.  However, the existence of a state-court action does
not automatically bar a request for federal declaratory relief.
Id.

    In the present case, who owns the loan and who is the
proper plaintiff in the state-court foreclosure proceeding are
matters that the state court will necessarily have to determine
during the course of that action.  Whether GMAC Mortgage or
Homecoming Financial owns the loan is a matter that should be
decided by the state court in the foreclosure proceeding, not via
a declaratory judgment claim in this court.  See Brillhart, 316
U.S. at 495.  Even if this court were to decide whether the

13

assignment was valid, that would not settle all aspects of the
controversy concerning the right to foreclose on the property.
Although deciding whether the assignment is valid will serve a
useful purpose in clarifying the legal relations at issue, it
would also result in unnecessary entanglement between the federal
and state court systems and possibly litigation over the res
judicata effect of this court's decision.  Accordingly, and
because the convenience of litigating in state court and in this
court is the same, the court declines to exercise jurisdiction
over the declaratory judgment claim seeking to have the
assignment of the mortgage to GMAC Mortgage declared invalid.
See Dizol, 133 F.3d at 1225 n.5.

> 2.   Simultaneous Judicial and Nonjudicial
>      Foreclosure Proceedings.

Plaintiffs next ask the court to declare GMAC
Mortgage's notice of intent to conduct a nonjudicial foreclosure
proceeding invalid because a judicial foreclosure proceeding was
pending in state court at the time GMAC initiated the nonjudicial
foreclosure proceeding.  The court dismisses this claim on
mootness grounds.  As discussed above, GMAC has rescinded the
notice of nonjudicial foreclosure, making it unnecessary for this
court to determine whether a nonjudicial foreclosure may be
initiated while a judicial foreclosure is pending.

14

C.   Count III--Section 480-2 claims.

Section 480-2(a) of the Hawaii Revised Statutes

declares "unfair or deceptive acts or practices in the conduct of

any trade or commerce" to be unlawful.

Paragraph 66(a) of the FAC alleges that Wilson

committed an "unfair or deceptive act or practice" when she, as

vice president Homecomings Financial, executed the assignment of

mortgage to GMAC Mortgage while she was also an employee of GMAC

Mortgage.  This claim is dismissed pursuant to Rule 12(b)(6).

Under Rule 12(b)(6), review is generally limited to the

contents of the complaint.  Sprewell v. Golden State Warriors,

266 F.3d 979, 988 (9th Cir. 2001); Campanelli v. Bockrath, 100

F.3d 1476, 1479 (9th Cir. 1996).  If matters outside the

pleadings are considered, the Rule 12(b)(6) motion is treated as

one for summary judgment.  See Keams v. Tempe Tech. Inst., Inc.,

110 F.3d 44, 46 (9th Cir. 1997); Anderson v. Angelone, 86 F.3d

932, 934 (9th Cir. 1996).  However, courts may "consider certain

materials--documents attached to the complaint, documents

incorporated by reference in the complaint, or matters of

judicial notice--without converting the motion to dismiss into a

motion for summary judgment."  United States v. Ritchie, 342 F.3d

903, 908 (9th Cir. 2003).  Documents whose contents are alleged

in a complaint and whose authenticity are not questioned by any

party may also be considered in ruling on a Rule 12(b)(6) motion

to dismiss.  See Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir.

1994).  On a Rule 12(b)(6) motion to dismiss, all allegations of
material fact are taken as true and construed in the light most
favorable to the nonmoving party.  Fed'n of African Am.
Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir.
1996).  However, conclusory allegations of law, unwarranted
deductions of fact, and unreasonable inferences are insufficient
to defeat a motion to dismiss.  Sprewell, 266 F.3d at 988; Syntex
Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).
Additionally, the court need not accept as true allegations that
contradict matters properly subject to judicial notice or
allegations contradicting the exhibits attached to the complaint.
Sprewell, 266 F.3d at 988.  Dismissal under Rule 12(b)(6) may be
based on either: (1) lack of a cognizable legal theory, or
(2) insufficient facts under a cognizable legal theory.
Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir.
1988) (citing Robertson v. Dean Witter Reynolds, Inc., 749 F.2d
530, 533-34 (9th Cir. 1984)).

That Wilson may be vice president of Homecomings
Financial as well as an employee of GMAC Mortgage is, without
more, insufficient to be an unfair or deceptive act or practice.
People often hold positions in multiple companies.  Plaintiffs'
FAC therefore fails to meet the minimal pleading requirements of
Rule 8(a) of the Federal Rules of Civil Procedure.  Plaintiffs
were required to allege facts sufficient "to raise a right to
relief above the speculative level, on the assumption that all

the allegations in the complaint are true even if doubtful in
fact." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007))
(internal quotation marks omitted); accord Ashcroft v. Iqbal, 129
S. Ct. 1937, 1949 (2009) ("the pleading standard Rule 8 announces
does not require 'detailed factual allegations,' but it demands
more than an unadorned, the-defendant-unlawfully-harmed-me
accusation").  While "detailed factual allegations" were not
necessary, Plaintiffs were required to allege "more than labels
and conclusions, and a formulaic recitation of the elements of a
cause of action will not do." Twombly, 550 U.S. at 555.  The
complaint must "state a claim to relief that is plausible on its
face." Id. at 570.  "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged." Iqbal, 129 S. Ct. at 1949.  Here,
Plaintiffs alleged nothing more than a conclusion that Wilson's
status in two different companies was unfair and deceptive.
Without more factual detail, this claim is lacking.

          Plaintiffs also assert that GMAC Mortgage and Rosen
violated section 480-2 in connection with the notice of
nonjudicial foreclosure.  Specifically, Plaintiffs say that
section 480-2 was violated when the notice was recorded in the
Land Court, published in a newspaper, mailed to Plaintiffs, and
posted on the property.  Plaintiffs assert that initiating a

17

nonjudicial foreclosure is unfair when a judicial foreclosure is

pending.  This claim is dismissed because Plaintiffs identify no

legal authority that prohibited the initiation of a nonjudicial

foreclosure when a judicial foreclosure was pending.

Plaintiffs say that the state court's denial of

Homecoming Financial's motion for summary judgment indicates the

impropriety of the nonjudicial foreclosure process.  This court

is not persuaded.  The order denying Homecoming Financial's

motion for summary judgment provides no detail as to why the

motion was denied.  Accordingly, no reasonable inference that the

nonjudicial foreclosure process was improper can be drawn from

the simple denial of the motion.  For all this court knows, the

state court denied the motion because Homecomings Financial is no

longer the owner of the note and mortgage.

That the state-court judge issued an _ex parte_ temporary

restraining order is also insufficient to support a claim of

unfairness for purposes of section 480-2.  Defendants never had

an opportunity to explain what happened or to address the state-

court judge's concerns expressed in the _ex parte_ order.

At best, Plaintiffs cite section 667-37 of the Hawaii

Revised Statutes for support of their section 480-2 claim.

Section 667-37 states that the alternate power of sale

foreclosure process, sections 667-21 to 667-42, does not prohibit

the filing of an action for a judicial foreclosure of the

mortgage property so long as that action is filed before the nonjudicial foreclosure public sale is held.  The section further states, "While that circuit court foreclosure action is pending, the power of sale foreclosure process shall be stayed."  Section 667-37 is simply inapplicable to the current situation involving a nonjudicial foreclosure proceeding initiated after the judicial foreclosure proceeding.  Even if the court were to analogize the current situation to section 667-37, the issuance and publication of a notice of intent to conduct a nonjudicial foreclosure would not violate section 667-37, but instead call for a stay of either the judicial or nonjudicial proceedings.  Defendants' issuance of a notice of intent to proceed with a nonjudicial foreclosure is therefore not violative of section 480-2 under the circumstances presented here.

   D. <u>Count IV--Section 480D-3.</u>

   Plaintiffs next assert that Defendants GMAC Mortgage, Rosen, and Wilson violated section 480D-3(6) and (8) of the Hawaii Revised Statutes.  Those claims are also dismissed pursuant to Rule 12(b)(6).

   Section 480D-3(6) prohibits debt collectors from "threaten[ing] to sell or assign the <u>debt</u> with statements that, or implying that, the sale or assignment will cause the debtor to lose a defense or legal right as a result of the sale or assignment."  Haw. Rev. Stat. § 480D-3(6) (emphasis added).

Plaintiffs say that Defendants violated section 480D-3(6) when
they threatened to sell Plaintiffs' property through the
nonjudicial foreclosure sale.  Because selling Plaintiffs'
property through a nonjudicial foreclosure sale is not the same
as selling Plaintiffs' "debt," Plaintiffs fail to state a viable
violation of section 480D-3(6).

Section 480D-3(8) prohibits debt collectors from
"disclos[ing], publish[ing], or communicat[ing] any false and
material information relating to the indebtedness."  Plaintiffs
base their section 480D-3(8) claim on the notice of nonjudicial
foreclosure.  However, it is not at all clear how that notice
contained "false and material information relating to the
indebtedness."  To the extent Plaintiffs are basing this claim on
the argument that GMAC Mortgage does not actually own the loan
and therefore made a false statement in the notice by saying that
it did, the documents attached to the FAC belie that argument.
Plaintiffs have attached to the FAC a copy of the assignment of
mortgage to GMAC Mortgage.  Although the assigning company was a
predecessor of the company that should have assigned the loan to
GMAC Mortgage, that fact does not make the assignment
ineffective, especially given the documents that the court takes
judicial notice of that indicate that the assignment of Tom's
mortgage filed in the Land Court has been corrected to indicate
that Homecomings Financial, LLC, rather than Homecomings

20

Financial Network, Inc., assigned the mortgage to GMAC Mortgage.
<u>See</u> ECF 58-2.  Because Plaintiffs fail to allege facts supporting
their claim that the notice contained false and material
information relating to their indebtedness, their 480D-3(8) claim
fails to allege a viable claim and is dismissed.

     E.   <u>Count V--IIED.</u>

     Count V asserts a claim for intentional infliction of
emotional distress ("IIED") arising out of Defendants' assignment
of the mortgage to GMAC Mortgage and the initiation of
nonjudicial foreclosure proceedings.

     To prove IIED under Hawaii law, Plaintiffs must show:
"1) that the act allegedly causing the harm was intentional or
reckless, 2) that the act was outrageous, and 3) that the act
caused 4) extreme emotional distress to another."  <u>Hac v. Univ.
of Haw.</u>, 102 Haw. 92, 106-07, 73 P.3d 46, 60-61 (2003).
"Outrageous" conduct is that "exceeding all bounds usually
tolerated by decent society and which is of a nature especially
calculated to cause, and does cause, mental distress of a very
serious kind."  <u>Id.</u>, 102 Haw. at 106, 73 P.3d at 60.  By
contrast, "[t]he liability clearly does not extend to mere
insults, indignities, threats, annoyances, petty oppressions, or
other trivialities."  Restatement (Second) of Torts § 46, cmt. d
(1965).  It is for the court to decide, in the first instance,
whether the alleged actions may be considered unreasonable or

21

outrageous.  Young v. Allstate Ins. Co., 119 Haw. 403, 429, 198

P.3d 666, 692 (2008).

As discussed above, the FAC fails to allege

sufficiently "outrageous" conduct to support an IIED claim.  See

Twombly, 550 U.S. at 555.  Accordingly, the IIED claim is

dismissed.

F.    Counts VI and VII--Misrepresentation.

Plaintiffs assert that GMAC Mortgage and Wilson made a

fraudulent or negligent misrepresentation when the assignment of

mortgage to GMAC Mortgage listed Homecomings Financial Network,

Inc., as the assignor, rather than its successor-in-interest,

Homecomings Financial, LLC.  Plaintiffs then assert that GMAC

Mortgage, Rosen, and Wilson made a fraudulent or negligent

misrepresentation in the notice of intent to initiate the

nonjudicial foreclosure process because ownership of the loan was

not properly transferred to GMAC Mortgage.

One of the elements required to prove a fraudulent or

negligent misrepresentation is that Plaintiffs must show that

they detrimentally relied on false information conveyed by

Defendants.  See Fisher v. Grove Farm Co., 123 Haw. 82, 103, 230

P.3d 382, 403 (2009) ("In this jurisdiction, the elements of

fraud are: 1) false representations made by the defendant, 2)

with knowledge of their falsity (or without knowledge of their

truth or falsity), 3) in contemplation of plaintiff's reliance

22

upon them, and 4) plaintiff's detrimental reliance."); Ass'n of
Apartment Owners of Newtown Meadows v. Venture 15, Inc., 115 Haw.
232, 262, 167 P.3d 225, 255 (2007) (noting that reliance is a
necessary element for both intentional and negligent
misrepresentation claims). Although the FAC alleges reliance and
damages, no factual assertions support those bald allegations.
Accordingly, the court dismisses the misrepresentation claim for
failure to plead sufficient facts to demonstrate a plausible
claim. See Twombly, 550 U.S. at 555.

        G.    Count VIII-Abuse of Process.

        Plaintiffs assert abuse of process in Count VIII, but
fail to state a claim for abuse of process. Under Hawaii law, to
constitute an abuse of process, there must be "1) an ulterior
purpose and 2) a wil[l]ful act in the use of the process which is
not proper in the regular conduct of the proceeding." Young v.
Allstate Ins. Co., 119 Haw. 403, 412, 198 P.3d 666, 675 (2008)
(internal quotation marks omitted); Restatement (Second) of Torts
§ 682 (1977) ("One who uses a legal process, whether criminal or
civil, against another primarily to accomplish a purpose for
which it is not designed, is subject to liability to the other
for harm caused by the abuse of process."). The Hawaii Supreme
Court has stated that liability is imposed for abuse of process
"when the putative tortfeasor uses legal process 'primarily' for
an ulterior motive." Chung v. McCabe Hamilton & Renny Co., 109

Haw. 520, 529, 128 P.3d 833, 842 (2006) (emphasis added).  Hawaii

defines legal "process" as "encompass[ing] the entire range of

procedures incident to litigation."  Young, 119 Haw. at 412, 198

P.3d at 675 (internal quotation marks omitted).

     The nonjudicial foreclosure process does not involve

"legal process" because it occurs outside of the "range of

procedures incident to litigation," and instead involves actions

unrelated to court authority.  Plaintiffs therefore do not allege

a viable abuse of process claim arising out of the initiation of

nonjudicial foreclosure proceedings.  See Yanik v. Countrywide

Home Loans, Inc., 2010 WL 4256312, *6 (C.D. Cal. Oct. 18, 2010)

("Plaintiff fails to state a claim for abuse of process because

there is no allegation that any defendant misused a court

proceeding. Although it is not entirely clear from plaintiff's

complaint, the allegation appears to be that defendants initiated

a non-judicial foreclosure."); Smith v. Wachovia, 2009 WL

1948829, *5 (N.D. Cal. July 6, 2009) ("Plaintiff alleges

throughout the complaint that defendants have initiated a

non-judicial foreclosure process against plaintiff.  As defendant

is not alleged to have taken any action pursuant to court

authority, plaintiff has not stated a claim for abuse of

process.").

H.    Count IX--Civil Conspiracy.

Count IX of the FAC asserts a civil conspiracy.  To
prove a civil conspiracy, a claimant must establish "three
elements: (1) the formation of a conspiracy; (2) wrongful conduct
in furtherance of the conspiracy, i.e., an actionable claim based
upon deceit; and (3) damage."  See O'Phelan v. Lee Loy, 2011 WL
719053 (D. Haw. Feb. 18, 2011).  Civil conspiracy does not
constitute an independent claim for relief.  Id.  That is, it
derives from some other wrongful conduct.  Because all of
Plaintiffs' other claims have been dismissed, the court also
dismisses the claim for civil conspiracy.  See Sarmiento v. Bank
of New York Mellon, 2011 WL 884457, *5 (D. Haw. Mar. 10, 2011)
(holding that a cause of action for "civil conspiracy" is a
theory of potential liability that is derivative of other wrongs
and dismissing a civil conspiracy claim as other claims were
dismissed); Gamiao v. Bank of Am., 2011 WL 839757 (D. Haw. Mar.
4, 2011) (same); Rodenhurst v. Bank of Am., 2011 WL 768674 (D.
Haw. Feb. 23, 2011) (same).

IV.    CONCLUSION.

For the foregoing reasons, the court grants the motions
to dismiss the First Amended Complaint.  Because the court
dismisses the First Amended Complaint, there would be no purpose
served in addressing Defendants' requests to strike the
oppositions to their motions for untimeliness.  Those defense

25

requests are denied.  Plaintiffs are given leave to file a motion

seeking leave to file a proposed Second Amended Complaint that is

attached to the motion no later than June 24, 2011.  Any such

proposed Second Amended Complaint shall not incorporate by

reference anything in this case or in the state-court proceeding.

In other words, any proposed Second Amended Complaint must stand

as a complete document on its own.  If Plaintiffs fail to timely

file a motion seeking leave to file a proposed Second Amended

Complaint, the Clerk of Court shall automatically enter judgment

in favor of Defendants and close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 25, 2011.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Tom v. GMAC Mortgage, Civil No. 10-00653 SOM/BMK; ORDER DISMISSING COMPLAINT

**Exhibit 7-B**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| COLEEN ETSUKO TOM; and JOYCELYN WANDA UNCIANO, | ) ) ) | CIV. NO. 10-00653 SOM/BMK |
| Plaintiffs, | ) ) | ORDER DENYING MOTION FOR RECONSIDERATION |
| vs. | ) ) | |
| GMAC MORTGAGE, LLC, et al., | ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

ORDER DENYING MOTION FOR RECONSIDERATION

I.       INTRODUCTION.

        This case arises out of a mortgage loan transaction.
Western Pacific Mortgage originally made a loan to Plaintiff
Coleen Etsuko Tom and her husband.  That loan was assigned to
Washington Mutual Bank, FA., and then to Homecomings Financial
Network, Inc., which subsequently became Homecomings Financial,
LLC.  Homecomings Financial assigned the loan to GMAC Mortgage,
LLC.

        Tom and Plaintiff Joycelyn Wanda Unciano claimed that
GMAC (the current owner of the loan), Kristine Wilson (an
employee of GMAC and Homecomings Financial), and David B. Rosen
(GMAC's attorney), improperly instituted a nonjudicial
foreclosure proceeding while a judicial foreclosure proceeding
was pending.  Noting that Homecomings Financial was the named
plaintiff in the state-court foreclosure proceeding at the time

GMAC initiated the nonjudicial foreclosure proceeding, Plaintiffs assert that GMAC must not be the owner of the loan.

There is no dispute that, on June 15, 2011, the state court substituted GMAC as plaintiff in the judicial foreclosure proceeding. See ECF No. 75-2. That same minute order also appears to have granted summary judgment and an interlocutory decree of foreclosure in favor of GMAC. Id. On May 25, 2011, before entry of the state court's order granting summary judgment in favor of GMAC, this court dismissed the First Amended Complaint in this matter. See ECF No. 73.

On June 8, 2011, Plaintiffs moved for reconsideration of the dismissal of their First Amended Complaint. See ECF No. 74. Plaintiffs simply rehash the arguments previously made and demonstrate no reason for this court to reconsider its order. Accordingly, the motion for reconsideration is denied.

II.      ANALYSIS.

A "motion for reconsideration must accomplish two goals. First, a motion for reconsideration must demonstrate reasons why the court should reconsider its prior decision. Second, a motion for reconsideration must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Donaldson v. Liberty Mut. Ins. Co., 947 F. Supp. 429, 430 (D. Haw. 1996); accord Na Mamo O 'Aha 'Ino v. Galiher, 60 F. Supp. 2d 1058, 1059 (D. Haw. 1999) (citation

2

omitted).  Only three grounds justify reconsideration: (1) an
intervening change in controlling law; (2) the discovery of new
evidence not previously available; and (3) the need to correct
clear or manifest error in law or fact in order to prevent
manifest injustice.  See Navajo Nation v. Confederated Tribes &
Bands of the Yakima Indian Nation, 331 F.3d 1041, 1046 (9th Cir.
2003); Mustafa v. Clark County Sch. Dist., 157 F.3d 1169, 1178-79
(9th Cir. 1998); Brown v. Chinen, 2011 WL 809062, *3 (D. Haw.
Feb. 28. 2011).  "Whether or not to grant reconsideration is
committed to the sound discretion of the court."  Navajo Nation,
331 F.3d at 1046.

A.    Count II--Declaratory Judgment.

Plaintiffs' First Amended Complaint sought a
declaratory judgment that the assignment of mortgage from
Homecoming Financial to GMAC was invalid.  This court dismissed
that claim under Brillhart v. Excess Insurance Company of
America, 316 U.S. 491, 494 (1942), declining to exercise
jurisdiction over the claim because the validity of the
assignment of mortgage was at the heart of the state-court
judicial foreclosure proceeding.

Plaintiffs disagree that the validity of the assignment
of the loan was a central issue in the state-court judicial
foreclosure proceeding.  That disagreement, by itself, does not
justify reconsideration, especially when GMAC has been

3

substituted as the plaintiff in the state-court proceeding and appears to have been granted summary judgment and an interlocutory decree of foreclosure in that proceeding. See Mamea v. United States, 2011 WL 2160492, *4 (D. Haw. May 31, 2011) ("Mere disagreement with a previous order is an insufficient basis for reconsideration." (citation omitted)); Harrison v. United States, 2011 WL 1743738, *2 (D. Haw. May 6, 2011) ("Mere disagreement with a previous order is an insufficient basis for reconsideration, and reconsideration may not be based on evidence and legal arguments that could have been presented at the time of the challenged decision."). Plaintiffs' challenge to GMAC's right to enforce the loan documents should be or should have been made in the state-court action in which GMAC is now asserting those rights.

B.   Count III--Section 480-2 claims.

Paragraph 66(a) of the First Amended Complaint alleges that Wilson committed an "unfair or deceptive act or practice" in violation of section 480-2 of the Hawaii Revised Statutes when she, as vice president of Homecomings Financial, executed the assignment of mortgage to GMAC while she was also a GMAC employee. This court dismissed that claim, reasoning that Wilson's alleged status as a Homecomings Financial vice president and a GMAC employee was, without more, insufficient to constitute an unfair or deceptive act or practice. Plaintiffs alleged

4

nothing more than a conclusion that Wilson's status in two
different companies was unfair and deceptive.  Without more
factual detail, the claim was lacking.  See Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 555 (2007)) (internal quotation marks
omitted); accord Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

Plaintiffs seek reconsideration of the dismissal of
Count III, contending that this court erred, but providing no
support for that contention.  In essence, Plaintiffs simply
disagree with the court's analysis.  That disagreement does not
justify reconsideration of the order.  See Mamea, 2011 WL
2160492, *4; Harrison, 2011 WL 1743738, *2.  At best, Plaintiffs
argue that Defendants have submitted documents indicating that
Wilson was not holding positions in multiple companies at the
same time.  But that does not render actionable Plaintiffs'
contention that Wilson violated section 480-2 by holding multiple
positions in multiple companies.  Reconsideration is not
warranted under these circumstances.

C.   Count IV--Section 480D-3.

Plaintiffs seek reconsideration of the dismissal of
their claim under section 480D-3(8) of the Hawaii Revised
Statutes.  That section prohibits debt collectors from
"disclos[ing], publish[ing], or communicat[ing] any false and
material information relating to the indebtedness."  Plaintiffs
based their section 480D-3(8) claim on the notice of nonjudicial

5

foreclosure.  The court dismissed the claim, reasoning that it was not at all clear how that notice contained "false and material information relating to the indebtedness."  On reconsideration, Plaintiffs argue that the notice contained false and material information because it was signed by Wilson.  The fact that Wilson signed the notice does not, by itself, justify reconsideration, as it does not indicate "any false and material information relating to the indebtedness."  Plaintiffs simply fail to allege facts to support this claim.

   D. Count V--IIED.

   Count V asserts a claim for intentional infliction of emotional distress ("IIED") arising out of Defendants' assignment of the mortgage to GMAC and the initiation of nonjudicial foreclosure proceedings.  The court dismissed the IIED claim, reasoning that the First Amended Complaint failed to allege sufficiently outrageous conduct.  Plaintiffs' reconsideration motion simply disagrees with this court's reasoning.  Again, Plaintiffs' disagreement, by itself, does not justify reconsideration.  See Mamea, 2011 WL 2160492, *4; Harrison, 2011 WL 1743738, *2.

   E. Counts VI and VII--Misrepresentation.

   Plaintiffs assert that GMAC and Wilson made a fraudulent or negligent misrepresentation when the assignment of mortgage to GMAC listed Homecomings Financial Network, Inc., as

the assignor, rather than its successor-in-interest, Homecomings Financial, LLC. Plaintiffs then assert that GMAC, Rosen, and Wilson made a fraudulent or negligent misrepresentation in the notice of intent to initiate the nonjudicial foreclosure proceeding because ownership of the loan was not properly transferred to GMAC. This court dismissed the misrepresentation claims, ruling that Plaintiffs had failed to allege facts supporting detrimental reliance on the false information.

Plaintiffs seek reconsideration of the dismissal of the misrepresentation claims, arguing that, because they filed a motion for temporary restraining order, they "detrimentally relied" on the alleged misrepresentations. This makes no sense, as the motion was filed in the course of this lawsuit, while the alleged misrepresentation allegedly predated this action. The First Amended Complaint alleges that "Plaintiffs Tom and Unciano actually relied on Defendants['] false representations and have suffered actual damages." See First Amended Complaint ¶ 86, ECF No. 26. The First Amended Complaint also alleges that "Plaintiffs Tom and Unciano individually relied upon Defendants['] false misrepresentations." Id. ¶ 91. These allegations are conclusions that provide no notice to Defendants of the underlying facts.

Even taking Plaintiffs' argument at face value because paragraphs 24 and 25 of the First Amended Complaint do mention

the temporary restraining order, Plaintiffs fail to adequately allege detrimental reliance. The motion for temporary restraining order contested GMAC's right to enforce the loan, but the motion does not establish detrimental reliance on GMAC's statements. To the contrary, Plaintiffs' challenge to those statements in court (assuming that is the purported detrimental reliance) defeats their misrepresentation claims because the challenge establishes a lack of reliance.

The court notes that, although Plaintiffs allege "false statements," there is a state-court conclusion that the statements were not false. On June 15, 2011, the state court appears to have granted summary judgment and to have issued an interlocutory decree of foreclosure in favor of GMAC, indicating that, at least in the eyes of the state court, GMAC was properly assigned Tom's loan. See ECF No. 75-2.

F. <u>Count IX--Civil Conspiracy.</u>

This court dismissed the civil conspiracy claim asserted in the First Amended Complaint because that claim was derivative of the other dismissed claims. Plaintiffs seek reconsideration, arguing that, if the court reinstates any of their claims, their civil conspiracy claim should be reinstated as well. Because no other claim has been reinstated, Plaintiffs' civil conspiracy claim remains dismissed.

III.        CONCLUSION.

For the foregoing reasons, the court denies Plaintiffs'
motion for reconsideration.

In the order dismissing the First Amended Complaint,
Plaintiffs were given leave to file a motion seeking leave to
file a Second Amended Complaint no later than June 24, 2011.
Plaintiffs did not do so.  Because Plaintiffs may have been under
the mistaken assumption that their reconsideration motion tolled
that deadline, the court extends that deadline until July 25,
2011.  If Plaintiffs file a motion seeking leave to file a Second
Amended Complaint, they must attach the proposed Second Amended
Complaint to their motion.  They cannot incorporate by reference
any allegations in this case or in the state-court proceeding, as
any Second Amended Complaint must be a document complete in
itself.

Plaintiffs are reminded that this court cannot sit as
an appellate court over state-court decisions.  That is, if
summary judgment was granted in favor of GMAC, Plaintiffs may not
challenge any part of that decision through claims asserted in
this court.  Plaintiffs may indicate in their motion that, but
for the state court's summary judgment decision, they would
assert certain claims, but they should not assert claims that are
barred by the summary judgment decision entered in the state-
court foreclosure proceedings.  In other words, if the state
court has decided that GMAC is entitled to foreclose on its loan,

9

Plaintiffs may not argue to this court that GMAC is not entitled
to enforce the loan.  Any such claim would be an attempt to have
this court sit as an appellate court over the state-court
decision.

       If Plaintiffs fail to timely file a motion seeking
leave to file a Second Amended Complaint, the Clerk of Court
shall automatically enter judgment in favor of Defendants and
close this case.

       IT IS SO ORDERED.

       DATED: Honolulu, Hawaii, July 12, 2011.



       /s/ Susan Oki Mollway
       Susan Oki Mollway
       Chief United States District Judge

Tom v. GMAC Mortgage, Civil No. 10-00653 SOM/BMK; ORDER DENYING MOTION FOR
RECONSIDERATION.

**Exhibit 7-C**

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 18 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| COLEEN TOM; JOYCELYN W. UNCIANO, | Nos. 11-17905, 11-17906 |
| Plaintiffs - Appellants, | D.C. No. 1:10-cv-00653-SOM-BMK |
| v. | |
| GMAC MORTGAGE, LLC, a Delaware limited liability company; et al., | MEMORANDUM[*] |
| Defendants - Appellees. | |

Appeals from the United States District Court
for the District of Hawaii
Susan Oki Mollway, Chief Judge, Presiding

Submitted December 9, 2014[**]

Before:    WALLACE, LEAVY, and BYBEE Circuit Judges.

In these consolidated appeals, Coleen Tom and Joycelyn W. Unciano appeal

pro se from the district court's judgment dismissing their action arising out of

foreclosure proceedings.   We have jurisdiction under 28 U.S.C. § 1291.   We

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]      The panel unanimously concludes these cases are suitable for decision without oral argument.   *See* Fed. R. App. P. 34(a)(2).

review for an abuse of discretion the district court's decision whether to exercise

jurisdiction under the Declaratory Judgment Act. *Gov't Emps. Ins. Co. v. Dizol*,

133 F.3d 1220, 1225 (9th Cir. 1998) (en banc). We affirm.

The district court properly exercised its sound discretion not to exercise

jurisdiction over the declaratory judgment claim seeking to have the assignment of

the mortgage to GMAC Mortgage declared invalid, as the validity of the mortgage

was also at issue in the parallel state court judicial foreclosure proceedings. *See*

*Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942) ("Ordinarily it would

be uneconomical as well as vexatious for a federal court to proceed in a declaratory

judgment suit where another suit is pending in a state court presenting the same

issues, not governed by federal law, between the same parties."); *Gov't Emps. Ins.*

*Co.*, 133 F.3d at 1225 ("If there are parallel state proceedings involving the same

issues and parties pending at the time the federal declaratory action is filed, there is

a presumption that the entire suit should be heard in state court.").

The district court did not abuse its discretion by denying plaintiffs' motion

to remand and exercising supplemental jurisdiction over their state law claims after

the federal claim was withdrawn. *See United Nat'l Ins. Co. v. R & D Latex Corp.*,

242 F.3d 1102, 1111-12 (9th Cir. 2001) (setting forth standard of review for a

11-17906

district court's remand order); *Harrell v. 20th Century Ins. Co.*, 934 F.2d 203, 205

(9th Cir. 1991) (setting forth standard of review for a district court's decision to

adjudicate pendant state claims and discussing relevant factors).

The district court did not abuse its discretion by denying plaintiffs' motion

for reconsideration of the dismissal of their first amended complaint and motion to

alter or amend judgment because they failed to establish any basis for relief.   *See*

*Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1262-63

(9th Cir. 1993) (setting forth standard of review and grounds for reconsideration

under Fed. R. Civ. P. 59(e) and 60(b)).

We reject plaintiffs' contentions regarding leave to amend, staying the

action, and oral argument.

We do not consider matters not specifically and distinctly raised and argued

in the opening brief.   *See Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009)

(per curiam).

Defendants' motion for judicial notice, filed January 3, 2013, is denied as

unnecessary.

All requests contained in the parties' briefs are denied.

**AFFIRMED.**

11-17906

**<u>Exhibit 8-A</u>**

IDAHO COUNTY DISTRICT COURT
FILED
AT 1:48 O'CLOCK ___ .M.

RECEIVED

DEC - 1 2011

MOFFATT, THOMAS, BARRETT,
ROCK & FIELDS, CHTD.

NOV 2 9 2011

KATHY M. ACKERMAN
CLERK OF DISTRICT COURT
_____ DEPUTY

# IN THE DISTRICT COURT OF THE SECOND JUDICIAL DISTRICT
# OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF IDAHO

| | |
|---|---|
| SYLVIA D. STRUPP, a single person,<br><br>        Plaintiff,<br><br>    v.<br><br>PIONEER TITLE COMPANY OF ADA COUNTY, an Idaho Corporation, d/b/a PIONEER LENDER TRUSTEE SERVICES; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation; GMAC MORTGAGE GROUP, LLC, a Delaware LLC; and IDAHO FISH & WILDLIFE FOUNDATION, INC., an Idaho Corporation,<br><br>        Defendants.<br><br>_____<br><br>IDAHO FISH & WILDLIFE FOUNDATION INC.,<br>        Counterclaimant,<br><br>    v.<br><br>SYLVIA D. STRUPP, a single person,<br><br>        Counterdefendant. | **Case No. CV 2011-40758**<br><br>**SUMMARY JUDGMENT** |

SUMMARY JUDGMENT-1

Based upon the Court's findings of fact and conclusions of law filed contemporaneously with this Summary Judgment IT IS ORDERED that the defendants: PIONEER TITLE COMPANY OF ADA COUNTY, an Idaho Corporation, d/b/a PIONEER LENDER TRUSTEE SERVICES; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation; GMAC MORTGAGE GROUP, LLC, a Delaware LLC; and IDAHO FISH & WILDLIFE FOUNDATION, INC., an Idaho Corporation, have judgment against the plaintiff, Sylvia D. Strupp and the plaintiff's Complaint is DISMISSED.

IT IS FURTHER ORDERED that the defendant, IDAHO FISH & WILDLIFE FOUNDATION, Inc. have judgment on its counterclaim against the plaintiff, Sylvia D. Strupp.  IT IS ORDERED that Idaho Fish & Wildlife Foundation, Inc. is owner of and entitled to immediate possession of the real property located at 7348 Highway 95 South, Riggins, Idaho 83549, in Idaho County, State of Idaho, more particularly described as: Township 24 North, Range 1 East, Boise Meridian, Idaho County, Idaho, Section 28: All that part of the West 1,570 feet of the N ½ NE ¼ lying south and east of the center line of U.S. Highway 95 and north and west of the Little Salmon River, sometimes referred to as Idaho County Assessor's Tax Number 98.

So Ordered this 29+ day of November, 2011.

Michael J. Griffin
District Court Judge

SUMMARY JUDGMENT-2

**FAX COVER LETTER**
**DISTRICT COURT, IDAHO COUNTY**
**FAX # 208-983-2376**

PLEASE DELIVER THE FOLLOWING TO:

NAME:   JODY SCHUMAN   - 208· 385- 5384

RE:   STRUPP VS. PIONEER TITLE

DATE:   11/30/11   TIME:

NUMBER OF PAGES (INCLUDING COVER SHEET):   3

COMMENTS: PER OUR PHONE CONVERSATION I AM FAXING A COPY OF THE
SUMMARY JUDGMENT FILED NOVEMBER 29, 2011.  PLEASE LET THIS OFFICE
KNOW IF YOU STILL NEED TO PROCESS THE ORDER MODIFYING SCHEDULING
ORDER WE RECEIVED NOVEMBER 30, 2011.

*Thank you*
*Leigh*

If you do not receive all of the described material, please call
the District Court office at (208) 983-2776

IDAHO COUNTY DISTRICT COURT
FILED
AT 1:48 O'CLOCK P .M.

**NOV 2 9 2011**

KATHY M. ACKERMAN
CLERK OF DISTRICT COURT
BY _____ DEPUTY

DOCKETED

# IN THE DISTRICT COURT OF THE SECOND JUDICIAL DISTRICT
# OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF IDAHO

| | |
|---|---|
| SYLVIA D. STRUPP, a single person, ) | **Case No. CV 2011-40758** |
| ) | |
| Plaintiff, ) | **SUMMARY JUDGMENT** |
| ) | |
| v. ) | |
| ) | |
| PIONEER TITLE COMPANY OF ADA ) | |
| COUNTY, an Idaho Corporation, d/b/a ) | |
| PIONEER LENDER TRUSTEE SERVICES; ) | |
| MORTGAGE ELECTRONIC ) | |
| REGISTRATION SYSTEMS, INC., a ) | |
| Delaware Corporation; GMAC ) | |
| MORTGAGE GROUP, LLC, a Delaware ) | |
| LLC; and IDAHO FISH & WILDLIFE ) | |
| FOUNDATION, INC., an Idaho ) | |
| Corporation, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |
| ) | |
| IDAHO FISH & WILDLIFE FOUNDATION ) | |
| INC., ) | |
| Counterclaimant, ) | |
| ) | |
| v. ) | |
| ) | |
| SYLVIA D. STRUPP, a single person, ) | |
| ) | |
| Counterdefendant. ) | |

SUMMARY JUDGMENT-1

Nov. 30. 2011 12:51PM                       No. 2711   P. 3/3
12-12020-mg    Doc 8588    Filed 05/08/15    Entered 05/08/15 17:05:13    Main Document
Pg 210 of 221

Based upon the Court's findings of fact and conclusions of law filed contemporaneously with this Summary Judgment IT IS ORDERED that the defendants: PIONEER TITLE COMPANY OF ADA COUNTY, an Idaho Corporation, d/b/a PIONEER LENDER TRUSTEE SERVICES; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation; GMAC MORTGAGE GROUP, LLC, a Delaware LLC; and IDAHO FISH & WILDLIFE FOUNDATION, INC., an Idaho Corporation, have judgment against the plaintiff, Sylvia D. Strupp and the plaintiff's Complaint is DISMISSED.

IT IS FURTHER ORDERED that the defendant, IDAHO FISH & WILDLIFE FOUNDATION, Inc. have judgment on its counterclaim against the plaintiff, Sylvia D. Strupp. IT IS ORDERED that Idaho Fish & Wildlife Foundation, Inc. is owner of and entitled to immediate possession of the real property located at 7348 Highway 95 South, Riggins, Idaho 83549, in Idaho County, State of Idaho, more particularly described as: Township 24 North, Range 1 East, Boise Meridian, Idaho County, Idaho, Section 28: All that part of the West 1,570 feet of the N ½ NE ¼ lying south and east of the center line of U.S. Highway 95 and north and west of the Little Salmon River, sometimes referred to as Idaho County Assessor's Tax Number 98.

So Ordered this 29+ day of November, 2011.

Michael J. Griffin
District Court Judge

SUMMARY JUDGMENT-2

**Exhibit 8-B**

# In the Supreme Court of the State of Idaho

---

SYLVIA D. STRUPP, a single person,   )
                                      )
    Plaintiff-Counterdefendant-Appellant,   )   **REMITITTUR**
                                      )
v.                                    )   Supreme Court Docket No. 39506-2012
                                      )   Idaho County Docket No. 2011-40758
PIONEER TITLE COMPANY OF ADA          )
COUNTY, an Idaho corporation, d/b/a   )
PIONEER LENDER TRUST SERVICES;        )
MORTGAGE ELECTRONIC                   )
REGISTRATION SYSTEMS, INC., a         )
Delaware corporation; GMAC MORTGAGE   )
GROUP, LLC, a Delaware LLC;           )
                                      )
    Defendants-Respondents,           )
                                      )
and                                   )
                                      )
IDAHO FISH & WILDLIFE FOUNDATION,     )
INC., an Idaho corporation,           )
                                      )
    Defendant-Counterclaimant-        )
    Respondent.                       )

TO:    SECOND JUDICIAL DISTRICT, COUNTY OF IDAHO.

The Court having granted a STIPULATION TO DISMISS WITH PREJUDICE on November 12, 2014 and having entered an Order dismissing this appeal November 12, 2014; therefore,

IT IS HEREBY ORDERED that the appeal herein from the judgment of the district court be, and hereby is, DISMISSED; and,

IT IS FURTHER ORDERED that each party shall bear its own costs and attorney

fees.

DATED this __13__ day of November, 2014.

_Stephen Kayser_

Clerk of the Supreme Court
STATE OF IDAHO

cc:    Counsel of Record
        District Court Clerk
        District Judge

REMITITTUR – Docket No. 39506-2012

**Exhibit 9**



FILED
IN COMMON PLEAS COURT
2012 APR 30 PM 2: 20
DENISE M. KAMINSKI
CLERK OF COURTS
GEAUGA COUNTY

# IN THE COURT OF COMMON PLEAS
## GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| GMAC MORTGAGE LLC | : | CASE NO. 11F000776 |
| Plaintiff(s) | : | JUDGE FORREST W. BURT |
| -vs- | : | **JUDGMENT ENTRY** |
| STEVEN T BIERMANN, et al. | : | |
| Defendant(s) | : | |

This matter came on for consideration upon Plaintiff's Motion to Reactivate Case and upon Plaintiff's Motion to Dismiss the Counterclaim filed on behalf of Defendants Steven and Tracey Biermann.

Plaintiff's Motion to Reactivate Case is sustained.

Plaintiff's Motion to Dismiss Defendants' Counterclaim is sustained as to Counts One and Three of Defendants' Counterclaim. Counts One and Three of Defendants' Counterclaim are dismissed for failure to state a claim upon which relief may be granted.

_____
FORREST W. BURT, JUDGE

cc:    Ann Marie Johnson, Esq.
       Justin M. Smith, Esq.
       Bridey Matheney, APA

## Exhibit 10

## CORPORATE RESOLUTION

Be it Resolved that the attached list of candidates are employees of **GMAC Mortgage LLC,** a Member of Mortgage Electronic Registration Systems, Inc. (MERS), and are hereby appointed as assistant secretaries and vice presidents of MERS, and, as such, are authorized to**:**

(1) release the lien of any mortgage loan registered on the MERS System that is shown to be registered to the Member;

(2) assign the lien of any mortgage loan naming MERS as the mortgagee when the Member is also the current promissory note-holder, or if the mortgage loan is registered on the MERS System, is shown to be registered to the Member;

(3) execute any and all documents necessary to foreclose upon the property securing any mortgage loan registered on the MERS System that is shown to be registered to the Member, including but not limited to (a) substitution of trustee on Deeds of Trust, (b) Trustee's Deeds upon sale on behalf of MERS, (c) Affidavits of Non-military Status, (d) Affidavits of Judgment, (e) Affidavits of Debt, (f) quitclaim deeds, (g) Affidavits regarding lost promissory notes, and (h) endorsements of promissory notes to VA or HUD on behalf of MERS as a required part of the claims process;

(4) take any and all actions and execute all documents necessary to protect the interest of the Member, the beneficial owner of such mortgage loan, or MERS in any bankruptcy proceeding regarding a loan registered on the MERS System that is shown to be registered to the Member, including but not limited to:  (a) executing Proofs of Claim and Affidavits of Movant under 11 U.S.C. Sec. 501-502, Bankruptcy Rule 3001-3003, and applicable local bankruptcy rules, (b) entering a Notice of Appearance, (c) vote for a trustee of the estate of the debtor, (d) vote for a committee of creditors, (e) attend the meeting of creditors of the debtor, or any adjournment thereof, and vote on behalf of the Member, the beneficial owner of such mortgage loan, or MERS, on any question that may be lawfully submitted before creditors in such a meeting, (f) complete, execute, and return a ballot accepting or rejecting a plan, and (g) execute reaffirmation agreements;

(5) take any and all actions and execute all documents necessary to refinance, amend or modify any mortgage loan registered on the MERS System that is shown to be registered to the Member.

(6) endorse checks made payable to Mortgage Electronic Registration Systems, Inc. to the Member that are received by the Member for payment on any mortgage loan registered on the MERS System that is shown to be registered to the Member;

(7) take any such actions and execute such documents as may be necessary to fulfill the Member's servicing obligations to the beneficial owner of such mortgage loan (including mortgage loans that are removed from the MERS System as a result of the transfer thereof to a non-member of MERS).

I, William C. Hultman, being the Corporate Secretary of Mortgage Electronic Registration Systems, Inc., hereby certify that the foregoing is a true copy of a Resolution duly adopted by the Board of Directors of said corporation effective as of the **17th** day of **July, 2003**, which is in full force and effect on this date and does not conflict with the Certificate of Incorporation or By-Laws of said corporation.

_____

William C. Hultman, Secretary

**<u>Residential Funding Company LLC, HomeComings Financial LLC, GMAC</u>**
**<u>Mortgage LLC, GMAC Bank (Trustee 01), GMAC Bank Asset Management</u>**
**<u>Co</u>**
ORG ID 1000440, 1000474, 1000375, **1005726 and 1005727**
**<u>Mortgage Electronic Registration Systems, Inc.</u>**
**<u>Certifying Officers</u>**
**<u>Updated 04/29/2009</u>**







- STEPHAN, Jeffrey

