**Hearing Date: May 14, 2015 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
250 W. 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Erica J. Richards

*Counsel for The ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

# REPLY IN SUPPORT OF OBJECTION OF THE RESCAP BORROWER CLAIMS TRUST TO CLAIM NUMBERS 5610 AND 5612 FILED BY RICHARD D. RODE

ny-1186471

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The ResCap Borrower Claims Trust (the "Borrower Trust") hereby submits this reply (the "Reply") in support of the *Objection Of The ResCap Borrower Claims Trust To Claim Numbers 5610 And 5612 Filed By Richard D. Rode* [Docket No. 8452] (the "Objection")[1] seeking to disallow and expunge the Rode Claims. In support of the Reply, the Borrower Trust relies upon and incorporates by reference the supplemental declaration of Kathy Priore, Associate Counsel for The ResCap Liquidating Trust, annexed hereto as **Exhibit 1** (the "Supplemental Priore Declaration"). In further support of the Reply, the Borrower Trust respectfully represents as follows:

1. By the Objection, the Borrower Trust seeks to disallow the two Rode Claims, which assert a $1,262,000 claim (comprised of a $339,000 secured claim and a $923,000 unsecured claim) against each of Homecomings Financial, LLC ("Homecomings") and GMAC Mortgage, LLC ("GMACM") on the basis that the Debtors misapplied amounts held in Rode's escrow account and failed to honor the terms of a loan modification agreement. On April 30, 2015, Rode filed a response to the Objection [Docket No. 8561] (the "Response"). The Response fails to respond to the arguments raised in the Objection. Because the Objection challenged at least one essential element to each cause of action set forth in the Rode Claims and Rode has not submitted evidence or alleged facts that, even if taken as true, would rebut the Objection, the Objection should be granted and each of the Rode Claims should be disallowed in its entirety.

2. Rather than defend the Rode Claims, the Response raises, for the first time, various allegations that appear to relate primarily to a claim for attempted wrongful

---

[1] Capitalized terms used and not defined herein have the meanings ascribed to them in the Objection.

ny-1186471

foreclosure. Among other things, Rode alleges that the Debtors filed fraudulent documents in connection with a substitute trustee's sale and lacked standing to commence foreclosure proceedings due to defects in the chain of title. (Response at 5-6.) The Response also alleges that the Debtors violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (the "FDCPA"). (Response at 8.)

3. These claims are completely new, and constitute, in effect, an untimely and improper amendment to the Rode Claims. Pursuant to Article VIII.C of the Plan, a claim may not be amended without prior authorization of this Court or the Borrower Claims Trustee. See Plan at Art. VIII.C. Courts in this district apply a two-step inquiry in considering whether to allow a post-bar date amendment to a proof of claim: (i) whether the amendment "relates back" to a timely filed claim; and (ii) whether allowing the amendment would, among other things, unduly prejudice the opposing party.[2] The "relation back" inquiry considers whether the purported amendment to a proof of claim "1) corrects a defect of form in the original claim; 2) describes the original claim with greater particularity; or 3) pleads a new theory of recovery on the facts set forth in the original claim."[3] Where an amendment relates back to a timely filed claim, courts will then consider the following five equitable factors in determining whether to allow an amendment: "(1) undue prejudice to opposing party; (2) bad faith or dilatory behavior on the part of the claimant; (3) whether other creditors would receive a windfall were the amendment not allowed; (4) whether other claimants might be harmed or prejudiced; and (5) the justification for the inability to file the amended claim at the time the original claim was filed."[4]

---

[2]   Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.), 419 F.3d 115, 133 (2d Cir. 2005).

[3]   Id. (quoting In re McLean Indus., Inc., 121 B.R. 704, 708 (Bankr. S.D.N.Y. 1990)).

[4]   Integrated Res., Inc. v. Ameritrust Co. Nat'l Ass'n (In re Integrated Res., Inc.), 157 B.R. 66, 70 (S.D.N.Y. 1993) (citation omitted); see also In re Enron Corp., 419 F.3d at 133.

ny-1186471

The claims set forth in the Response do not satisfy the Midland test and, as a result, Rode should be barred from asserting them.

4.  The Debtors referred the Rode Loan to foreclosure in February 2010, more than a year before Rode commenced litigation against the Debtors in Texas, and two and a half years before the Rode Claims were filed. (Obj. at ¶¶ 34, 37.) However, Rode did not reference these wrongful foreclosure claims or assert any allegations related to fraudulent foreclosure documents in the Rode Claims. In addition, the Debtors solicited additional information regarding the Rode Claims by sending Request Letters in June 20, 2013. (Obj. at ¶ 11.) In response to the Request Letters, Rode sent in additional materials, none of which refer to the new claims and allegations set forth in the Response. (Obj. at ¶ 51.) Accordingly, the claims and allegations set forth in the Response do not relate back to the Rode Claims.

5.  Equitable considerations also weigh against allowing Rode to raise wholly new allegations and causes of action. Both the Debtors and the Borrower Trust have expended a significant amount of time researching and analyzing Rode's claims. Allowing Rode to raise new claims at this late date would unduly prejudice the Borrower Trust's efforts to efficiently reconcile Borrower Claims. Additionally, as explained above, Rode (and his counsel)[5] could have, or should have, become aware of these potential claims over five years ago, and Rode has been given ample opportunity to supplement his claims. Due to his inexplicable failure to previously put the Debtors on notice of these claims, Rode should be estopped from asserting them now.

6.  The newly asserted claims set forth in the Response also lack merit. To

---

[5]  The Response indicates that Rode is appearing in these bankruptcy cases *pro se*; however, Rode was represented by counsel in his state court litigation and, on May 5, 2015, the Borrower Trust was copied on correspondence from that counsel, Jeffrey H. Uzick, to Ocwen suggesting that Mr. Uzick is also representing Rode in connection with the Rode Claims. See **Exhibit 2**.

3
ny-1186471

the extent the claims being raised by Rode are intended as defenses to foreclosure proceedings currently pending against Rode in Texas, such defenses are properly asserted in those proceedings. The Debtors are not a party to those proceedings, and it is unclear how a number of these potential defenses to foreclosure (such as the unclean hands doctrine and improper reliance on customary procedure (Response at ¶¶ 14-16)) could give rise to monetary claims against the Debtors. The remainder of Rode's new claims are difficult to follow, but appear to be based on the following theories, each of which is deficient as a matter of law:

7. *Defective Assignment of Note*. The Response seems to argue that there was a defective assignment of the Note because the allonge was fraudulent and was not recorded, and therefore GMACM, acting as Deutsche Bank's agent, lacked standing to foreclose. (Response at 5.) The Note is a negotiable instrument within the meaning of the Uniform Commercial Code ("UCC"), as codified under Texas law pursuant to Title 1 of the Texas Business and Commerce Code.[6] See Note, Exhibit A to Priore Decl. [Docket No. 8452-3]. The maker of a mortgage note is obligated to pay the note to the "person entitled to enforce the instrument…." TEX. BUS. & COM. CODE ANN. § 3.412 (2014). The "person entitled to enforce" a negotiable mortgage note includes "(i) the holder of the instrument, [and] (ii) a nonholder in possession of the instrument who has the rights of a holder…." TEX. BUS. & COM. CODE ANN.

---

[6] A "negotiable instrument" is defined as:

an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:

   (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;

   (2) is payable on demand or at a definite time; and

   (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

TEX. BUS. & COM. CODE Ann. § 3.104(a) (2014).

4

ny-1186471

§ 3.301 (2014). Accordingly, to enforce a mortgage note against the borrower, a person must generally prove either that it is a "holder" or that it is a transferee with the rights of a holder. See TEX. BUS. & COM. CODE ANN. § 3.301 (2014).

8.  A negotiable mortgage note is transferred when it is "delivered" by a person other than the mortgagor for the purpose of giving the transferee the right to enforce the note. See EX. BUS. & COM. CODE ANN. § 3.203(a) (2014).[7] The "[t]ransfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument . . . ." EX. BUS. & COM. CODE ANN. § 3.203(b) (2014). The "negotiation" of a negotiable mortgage note that is payable to an identified person or entity (*i.e.*, the entity that originated the loan and whose name appears as the payee in the note) – "requires transfer of possession of the instrument and its indorsement by the holder."[8] T EX. BUS. & COM. CODE ANN. § 3.201(b) (2014). Here, the Note was properly indorsed[9] from the original holder, Southtrust Mortgage Corporation, to RFC, and then from RFC to Deutsche Bank, as evidenced by the allonge attached to the Note. See Note at 4. As a result, Deutsche Bank is the transferee of the Note.[10] There is no requirement under the UCC that an assignment of a negotiable instrument be recorded in order to be effective. Accordingly, Rode's arguments to the contrary fail.

---

[7]  "Delivery" of a mortgage note occurs when there has been a voluntary transfer of possession of the mortgage note. See EX. BUS. & COM. CODE ANN. § 1.201(b)(15) (2014).

[8]  The "holder" of a negotiable mortgage note is "the person in possession of [the mortgage note] that is payable either to bearer or to an identified person that is the person in possession." EX. BUS. & COM. CODE ANN. § 1.201(b)(21)(A) (2014).

[9]  The term "indorsement" is defined to include "a signature . . . that alone or accompanied by other words is made on an instrument for the purpose of . . . negotiating the instrument." EX. BUS. & COM. CODE ANN. § 3.204(a) (2014).

[10]  Deutsche Bank was also in possession of the Note at the time the Debtors referred the Rode Loan to foreclosure. Possession can be effected by an agent, nominee or designee, such as the designated custodian for the securitization trust. See UCC § 9-313 cmt. 3 (2014) ("if the collateral is in [the] possession of an agent of the secured party for the purposes of possessing on behalf of the secured party, and if the agent is not also an agent of the debtor, the secured party has taken actual possession"). Because Deutsche Bank was the transferee and in possession of the Note, it was entitled—acting through its designated agent, GMACM—to enforce the Note. See Priore Decl. at ¶ 7.

5
ny-1186471

9.  *Defective Assignment of Deed of Trust*.  The Response also seems to allege that there was a defective assignment of the Deed of Trust because the notice of assignment was fraudulent and was not recorded.  (Response at pp. 2, 5, 8-9.)  The Deed of Trust that secures Rode's obligations under the Note identifies Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary.  See Deed of Trust, Exhibit B to Priore Decl.  On April 16, 2010, MERS assigned the Deed of Trust to Deutsche Bank.  See Assignment of Deed of Trust, Exhibit C to Priore Decl.  An assignment of the Deed of Trust did not need to be filed in order to allow Deutsche Bank (through its agents), as the holder of the Note, to enforce the Note because the established common law rule in Texas is that "the mortgage follows the note."[11]  Accordingly, the assignment of the Deed of Trust by MERS to Deutsche Bank was valid, notwithstanding the fact that it was not recorded.  Further, Deutsche Bank, as the holder of the Note, and GMACM, as servicer, had standing to enforce the Note and Deed of Trust, notwithstanding the efficacy of the assignment.[12]

10.  *Attempted Wrongful Foreclosure*.  The foregoing allegations all seem to be intended to state a claim for wrongful foreclosure.[13]  However, the Debtors did not foreclose on the Rode Loan, did not dispossess Rode of the Property, and are no longer servicing the Rode

---

[11]  TEX. PROP. CODE ANN. §9.203(g) (2014); Kirby Lumber Corp. v. Williams, 230 F.2d 330, 333 (5th Cir. 1956) (applying Texas law) ("The rule is fully recognized . . . that a mortgage to secure a negotiable promissory note is merely an incident to the debt, and passes by assignment or transfer of the note." (citation omitted)).  See also J. McDonnell and J. Smith, Secured Transactions Under the Uniform Commercial Code, § 16.09[3][b] ("Article 9 makes it as plain as possible that the secured party need not record an assignment of mortgage, or anything else, in the real property records in order to perfect its rights in the mortgage.").

[12]  TEX. PROP. CODE ANN. § 51.002 (2014) (specifying procedures under which a mortgagee may conduct a foreclosure sale pursuant to a deed of trust); TEX. PROP. CODE ANN. § 51.0025 (2014) ("[A] mortgage servicer may administer the foreclosure of property under Section 51.002 …."); Lombardi v. Bank of Am., No. 3:13-cv-1464-0, 2014 WL 988541, at *7 (N.D. Tex. Mar. 13, 2014).

[13]  See Fowler v. U.S. Bank, N.A., 2 F. Supp. 3d 965, 986-87 (S.D. Tex. 2014) (noting, in a case where the borrower alleged that the notice of acceleration was sent by the wrong party and that the substitute trustee was improperly appointed, that "Plaintiffs appear to allege a cause of action for wrongful foreclosure, as these allegations potentially represent a defect in the foreclosure sale proceedings.").

6

Loan. See Obj. at ¶¶ 13, 34-36. As such, Rode's new allegations should be read to state a claim for <u>attempted</u> wrongful foreclosure. Texas does not recognize such a cause of action.[14]

11. The Borrower Trust acknowledges that the Notice of Substitute Trustee's Sale and the Notice of Acceleration of Maturity filed by the substitute trustee appear to contain errors.[15] Although these errors are troublesome, they are not relevant to Rode's wrongful foreclosure claims because the Debtors did not complete a foreclosure predicated on those documents.

12. *Fraud*. The Response further contends that the Debtors committed fraud by preparing and recording (or failing to record) certain mortgage documentation (Response at 2-3, 5-6, 8), but fails to explain with any specificity what about the documents is fraudulent. See Federal Rule of Civil Procedure ("FRCP") 9(b) (requiring claimant to "state with particularity the circumstances constituting fraud or mistake.").[16]

13. To the extent the new fraud claims raised in the Response are understood by the Court to be based on the errors in the Notice of Substitute Trustee's Sale and the Notice of Acceleration of Maturity described above, Rode's allegations still do not establish that each of

---

[14] See Smith v. J.P. Morgan Chase Bank, N.A., No. H-10-3730, 2010 WL 4622209, at *2 (S. D. Tex. Nov. 4, 2010) ("Under Texas law, even if a mortgage holder wrongfully attempts foreclosure, there is no claim for wrongful foreclosure if the mortgagor does not lose possession of the home; . . . [b]ecause recovery is based on the lack of possession of real property, individuals never losing possession cannot recover on a theory of wrongful foreclosure.") (citation omitted); see also Motten v. Chase Home Fin., 831 F.Supp.2d 988, 1007 (S.D. Tex. 2011); Biggers v. BAC Home Loans Servicing, LP, 767 F. Supp. 2d 725, 729 (N.D. Tex. 2011).

[15] Specifically, the Notice of Substitute Trustee's Sale lists GMACM as the mortgagee and identifies MERS, as nominee for Southtrust Mortgage, as the beneficiary under the Deed of Trust and the holder of the Note. See **Exhibit 3** hereto. Incongruously, the second page of the Notice of Substitute Trustee's Sale states that GMACM is the owner and holder of the Note, as well as the beneficiary under the Deed of Trust. In fact, at the time the Notice of Substitute Trustee's Sale and Notice of Acceleration of Maturity were issued, Deutsche Bank was the holder of the Note, and, because the Deed of Trust follows the Note, MERS was the beneficiary under the Deed of Trust in its capacity as nominee for Deutsche Bank. See Obj. at ¶ 12.

[16] Although "[claims] drafted by *pro se* [claimants] are to be construed liberally, [] they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with 'a fair understanding of what the [claimant] is complaining about and . . . whether there is a legal basis for recovery.'" Kimber v. GMAC Mortgage, LLC (In re Residential Capital, LLC), 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (ellipsis in original) (quoting Iwachiw v. New York City Bd. of Elections, 126 Fed. Appx. 27, 29 (2d Cir. 2005)).

7

Pg 9 of 12

the elements for fraud have been established. The elements of a cause of action for common law fraud by misrepresentation under Texas law are: (1) a material representation was made to a person; (2) the representation was false; (3) when the representation was made; (4) the speaker (i) knew that the representation was false, or (ii) made the representation recklessly without any knowledge of its truth and as a positive assertion; (5) the speaker made the representation with the intent that it should be acted upon by the person to whom the speaker made the representation; (6) the person to whom the representation was made acted in reliance upon the representation; and (7) the person to whom the representation was made suffered injury or damage.[17]

14. The errors in the Notice of Substitute Trustee's Sale and the Notice of Acceleration of Maturity were not material under Texas law because the documents substantially conformed to the requirements for a trustee's sale.[18] Additionally, as set forth above, GMACM had standing to foreclose so, to the extent such errors were material, GMACM could have simply filed corrected documents *if* the foreclosure had gone forward.[19] Moreover, Rode has not, and cannot, plead that he relied upon the errors. To the contrary, Rode has specifically alleged that he did not rely on those errors and questioned the correctness of the documents from the outset. (Response at p. 8.) Accordingly, the Response fails to adequately plead any claims for fraud.

---

[17] Stone v. Lawyers Title Ins. Corp., 554 S.W.2d 183, 185 (Tex. 1977).

[18] See, e.g., Hutson v. Sadler, 501 S.W.2d 728, 732 (Tex. Civ. App. Tyler 1973) (holding that a notice of trustee's sale was valid notwithstanding an error in the name of the owner and holder of the note where the notice "accurately set out the original debt, the names of the parties who made the debt by note and trust deed, the recordation of the deed of trust in the records of Nacogdoches County, and a description of the property."); TEX. PROP. CODE ANN. § 51.0075 (2014) (requiring only that "[t]he name and a street address for a trustee or substitute trustees shall be disclosed on the notice required by Section 51.002(b) [specifying requirements for a sale of real property of sale conferred by deed of trust]").

[19] The foreclosure was put on hold on April 20, 2010 while the account was reviewed for a loan modification (Obj. ¶ 35) and never restarted. Although the Borrower Trust was previously informed that Ocwen was seeking to foreclose (see Obj. ¶ 37), it now appears that Ocwen stopped foreclosure in November 2014. See Supp. Priore Decl., ¶ 5.

8
ny-1186471

15.  *Violations of the FDCPA*.  The Response also asserts that the Debtors violated section 1692g of the FDCPA by failing to properly respond to Rode's response to the Notice of Acceleration of Maturity.[20]  (Response at 3, 8.)  Attached as **Exhibit 3** is a copy of the complete Notice of Substitute Trustee's Sale, which contains all of the information required under section 1692g(a).  The letter attached to the Response is not a request for information within the meaning of section 1692g(b) because it does not request "the name and address of the original creditor," and a review of the Debtors' books and records failed to locate a written communication from Rode that falls within the scope of section 1692g(b).[21]  Furthermore, the FDCPA does not require a creditor to provide the information allegedly requested by Rode (presentation of the original Note with all assignments and allonges).  (Response at p. 8.)

16.  *Violation of UCC Article 9*.  The Response alleges that the Debtors violated section 9.5185(A)(2) of the Texas Business & Commerce Code by filing a fraudulent financial statement.  (Response at 3.)  That statute provides that "[a] person may not intentionally

---

[20]  15 U.S.C. § 1692g provides in relevant part:

(a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing –

    (1) the amount of the debt;

    (2) the name of the creditor to whom the debt is owed;

    (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

    (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

    (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b)  If the consumer notifies the debt collector in writing . . . that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

[21]  See Supp. Priore Decl., ¶ 4.

or knowingly present for filing or cause to be presented for filing a financing statement that the person knows . . . contains a material false statement." Presumably, Rode contends that the Notice of Substitute Trustee and/or Assignment of the Deed of Trust contained material false statements in violation of § 9.5185(A)(2), based on Rode's incorrect belief that, because MERS was not original holder of the Note, MERS was improperly identified as a beneficiary under the Deed of Trust. Under Texas law, MERS qualifies as a mortgagee.[22] Accordingly, ETS's preparation and recording of documents indicating that MERS held an interest in the Deed of Trust did not violate § 9.5185(A)(2).

17. *Violations of Securities Laws & Pooling and Servicing Agreements.* Rode contends that the Debtors violated the terms of their pooling and servicing agreements, and violated the Securities Act of 1933. (Obj. at ¶ 6.) Rode is not a party to (or a third-party beneficiary of) the Debtors' pooling and servicing agreements, nor is he a holder of securities issued by the Debtors. Accordingly, he lacks standing to raise claims on either of these bases.[23]

For the reasons set forth above and in the Objection, the Borrower Trust respectfully requests entry of an order, substantially in the form of Exhibit 3 attached to the Objection, (i) disallowing and expunging the Rode Claims with prejudice, and (ii) granting such other and further relief as is just and proper.

---

[22] Lombardi v. Bank of Am., 2014 WL 988541, at *7 ("A 'mortgagee' is 'the grantee, beneficiary, owner, or holder of a security instrument'; 'a book entry system'; or 'if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record.'" (citing TEX. PROP. CODE § 51.0001(4)(A)-(C)). Martins v. BAC Home Loan Servicing, LP, 722 F.3d 249, 255 (5th Cir. 2013) ("Because MERS is a book-entry system, it qualifies as a mortgagee.").

[23] See, e.g., S. Tex. Water Auth. v. Lomas, 223 S.W.3d 304, 306 (Tex. 2007) (as a general rule, "a non-party to a contract cannot enforce the contract unless she is an intended third-party beneficiary").

ny-1186471

Dated: May 12, 2015  
    New York, New York

/s/ Norman S. Rosenbaum  
Norman S. Rosenbaum  
Jordan A. Wishnew  
Erica J. Richards  
MORRISON & FOERSTER LLP  
250 W. 55th Street  
New York, New York 10019  
Telephone: (212) 468-8000  
Facsimile: (212) 468-7900

*Counsel for The ResCap Borrower Claims Trust*