```
UNITED STATES BANKRUPTCY COURT
 SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────────   )   NOT FOR PUBLICATION
In re:                                          )
                                                )   Case No. 12-12020 (MG)
RESIDENTIAL CAPITAL, LLC, et al.,               )
                                                )   Chapter 11
                              Debtors.          )
                                                )   Jointly Administered
─────────────────────────────────────────────
```

**MEMORANDUM OPINION AND ORDER SUSTAINING THE
RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO
CLAIM NO. 5067 FILED BY GWENDELL L. PHILPOT**

*A P P E A R A N C E S:*

MORRISON & FOERSTER LLP
*Attorneys for ResCap Borrower Claims Trust*
250 West 55th Street
New York, New York 10019
By:   Norman S. Rosenbaum, Esq.
      Jordan A. Wishnew, Esq.
      Erica J. Richards, Esq.

GWENDELL L. PHILPOT
*Pro Se*
407 Valley Drive
Attalla, Alabama 35954
By:   Gwendell L. Philpot

**MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE**

  Pending before the Court is the ResCap Borrower Claims Trust's (the "Trust") objection (the "Objection," ECF Doc. # 7760) to Claim Number 5067 (the "Claim," *id.* Ex. 1) filed by Gwendell L. Philpot ("Philpot").[1]  The Claim is based on the Debtors' allegedly wrongful foreclosure on Philpot's home, which Philpot contends was improperly commenced after the Debtors failed to recognize a payment he made through the Debtors' online payment system.

---

[1]   The Objection is supported by the declaration of Kathy Priore (the "Priore Declaration," ECF Doc. # 7760-3).

Philpot asserts that as a result of the Debtors' improper foreclosure, he lost the equity in his home and future income due to his inability to obtain a loan to fund a business start-up.

After receiving the Objection, Philpot served the Trust's counsel with a subpoena requesting documents purportedly relating to the Claim and the Objection; the Trust responded with a letter to the Court, dated February 3, 2015 (the "Trust's Letter," ECF Doc. # 8057), requesting that the scheduled March 31, 2015 hearing on the Objection (the "Hearing") be treated as a pretrial conference and that the Trust's compliance with the subpoena be stayed pending the outcome of the pretrial conference. (*See id.* at 2.) The Court entered an order (ECF Doc. # 8110) directing Philpot to respond to the Trust's Letter, indicating whether he consented to each of the Trust's requests. (*See id.* at 1.) Philpot responded by letter dated February 14, 2015 (ECF Doc. # 8139), indicating that he had no objection to the Trust's requests if the Trust would make certain stipulations of facts related to the Objection. (*See id.* at 1–2.) The Court subsequently entered an order (ECF Doc. # 8232), directing the Hearing to go forward as a pretrial conference and staying the Trust's compliance with Philpot's subpoena until the Hearing, at which time the Court would consider whether to direct the Trust to comply with the subpoena. (*See id.* at 1–2.)

Philpot then filed an opposition to the Objection (the "Opposition," ECF Doc. # 8302), and the Trust filed a reply (the "Reply," ECF Doc. # 8360). The Court held the Hearing on March 31, 2015. Philpot appeared without counsel. Before Hearing began, Philpot submitted additional materials, and he also said he had other materials he wanted to submit. (*See* Mar. 31, 2015 Hr'g Tr. 89:4–15, ECF Doc. # 8418.) While none of these additional materials were timely (either the ones submitted on March 31 or the additional materials Philpot wanted to submit), the Trust's counsel did not object so the Court agreed to permit the additional filings. At the

2

Hearing, upon the Court's request, the Trust's counsel also agreed to file these additional materials. (*See id.* 89:20–21.) The Court directed on the record that the matter would be deemed submitted when the additional materials were filed. (*See id.* 89:23–90:2.) The Trust's counsel filed Philpot's correction to his Opposition (the "Supplemental Opposition," ECF Doc. # 8408) and supplemental documents in support of his Opposition and Supplemental Opposition (the "Philpot Supplement," ECF Doc. # 8409). All of these materials have been considered by the Court in reaching its decision.

This Opinion **SUSTAINS** the Objection and **DISALLOWS** and **EXPUNGES** the Claim.

## I. BACKGROUND

### A. Philpot's Loan History

Philpot took out a $220,000.00 residential mortgage loan (the "Loan") with Debtor Homecomings Financial, LLC, formerly known as Homecomings Financial Network, Inc. ("Homecomings"), in December 2000. (Obj. ¶ 9.) The Loan was evidenced by a note (the "Note," Priore Decl. Ex. A), secured by a mortgage (the "Mortgage," *id.* Ex. B) encumbering real property located in Decatur, Alabama (the "Property").[2] (Obj. ¶ 9.) Debtor Residential Funding Corporation ("RFC") purchased the Loan from Homecomings and transferred the Loan to Bank One, N.A. ("Bank One") on March 1, 2001, in connection with the securitization of the Loan.[3] (*Id.*) MERS assigned the Mortgage to The Bank of New York Mellon Trust Company, N.A. ("BONY") on August 24, 2010 (the "BONY Assignment," Priore Decl. Ex. C).[4] (Obj. ¶ 9.)

---

[2]  The Mortgage identified Mortgage Electronic Registration Systems, Inc. ("MERS") as the mortgagee, acting solely as a nominee for the lender and its successors and assigns. (Priore Decl. Ex. B at 1.)

[3]  The Note was negotiated by endorsements from Homecomings to RFC, and from RFC to Bank One. (Priore Decl. Ex. A at 3.)

[4]  The BONY Assignment was recorded on August 30, 2010. (Priore Decl. Ex. C.)

3

Homecomings serviced the Loan from the origination date until July 1, 2009, when servicing was transferred to Debtor GMAC Mortgage, LLC ("GMACM"). (*Id.* ¶ 10.) GMACM serviced the Loan from July 1, 2009 until transferring servicing to non-debtor Ocwen Loan Servicing, LLC ("Ocwen") on February 16, 2013. (*Id.*)

According to the Trust, beginning in June 2007, Philpot's account became delinquent and has remained in arrears ever since. (*Id.* ¶ 11; *see* "Credit Reporting History," Priore Decl. Ex. E.) Homecomings advised Philpot that his Loan had been referred for foreclosure review in January 2008. (*See* "Servicing Notes," Priore Decl. Ex. D at 2.) Philpot advised Homecomings in January 2008 that he desired to catch up on his delinquent Loan payments and was attempting to sell the Property. (*See* Obj. ¶ 15; Priore Decl. Ex. D at 2–3.) Philpot was unsuccessful in his attempts to sell the Property. (*See* Obj. ¶ 15.)

Philpot contacted Homecomings on October 3, 2008 and reported that he made an online payment on September 30, 2008 (the "Disputed Payment"), including a speedpay fee, but that payment was not recognized by the Debtors. (*See id.* ¶ 12.) The Trust asserts that the Debtors reviewed Philpot's payment history and found no record of the Disputed Payment. (*Id.*) On October 3, 2008, Philpot also requested that he be allowed to make a replacement payment backdated to September 30, 2008; however, Homecomings informed him that it could not grant this request because its payment processing system did not allow backdating. (*See id.*)

On October 7, 2008, Philpot again contacted Homecomings, reiterating that he made the Disputed Payment online on September 30, 2008. (*See id.* ¶ 13.) Homecomings advised Philpot to contact his bank to determine whether the Disputed Payment had been deducted from his account. (*See id.*) Additionally, Homecomings advised Philpot that if he could obtain information regarding the date that the Disputed Payment was processed from his bank account,

4

he could contact Homecomings at a specific telephone number so further research regarding the Disputed Payment could be performed. (*See id.*)

On October 9, 2008, Philpot again contacted Homecomings and requested to make a payment backdated as of September 30, 2008. (*See id.* ¶ 14.) Homecomings again told Philpot that his payment could not be backdated; however, it advised Philpot that if a payment was made within a few days, his credit report could be amended to reflect that the payment was received within 60 days because of a voice recognition unit error. (*See id.*) According to the Trust, the Debtors did not receive any subsequent Loan payment from Philpot. (*Id.*)

On October 23, 2008, the Loan was referred to foreclosure due to Philpot's continued failure to make any payments on the Loan since August 2008. (*Id.* ¶ 15.) In December 2008, Philpot requested approval of a short sale, but the request was denied because the offered sale amount was in an insufficient amount. (*Id.*) On February 4, 2009, foreclosure was put on hold after Philpot and his wife (together, the "Philpots") filed a joint chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Alabama, Case No. 09-80380 (JAC) (the "Chapter 7 Case"). (*See id.* ¶¶ 15, 19.)

The Philpots' chapter 7 schedules of assets and liabilities listed the Property as an asset and did not list a claim against any Debtor. (Priore Decl. ¶ 19; *see id.* Ex. H, Sched. A.) On May 6, 2009, the Alabama bankruptcy court entered an order granting Homecomings relief from the automatic stay with respect to the Property. (Obj. ¶ 19; *see* Order, *In re Philpot*, Case No. 09-80380 (JAC) (Bankr. N.D. Ala. May 6, 2009), ECF Doc. # 37.) The Philpots received a bankruptcy discharge on May 21, 2009 (the "Discharge Order," Priore Decl. Ex. J). (Obj. ¶ 19.) After entry of the Discharge Order was entered, the Loan was again referred to foreclosure on May 22, 2009. (*See id.* ¶ 16.)

5

Philpot thereafter contacted the Debtors on several occasions to discuss loan modification options. (Obj. ¶ 18.) Philpot was initially approved for a traditional loan modification on August 27, 2009, but the loan modification was ultimately denied because Philpot allegedly did not timely submit information requested by the Debtors. (*Id.*; *see* Priore Decl. Ex. D at 16–18.) Philpot also attempted to obtain a Home Affordable Modification Program ("HAMP") loan modification, but it was denied because Philpot did not have sufficient income to meet HAMP requirements. (*See* Obj. ¶ 18; Priore Decl. Ex. D at 16–18.)

GMACM again referred the Loan to foreclosure on February 26, 2010, but the referral was closed on May 24, 2010 due to a pending repayment plan or other loan modification activity. (*See* Obj. ¶ 16.) Philpot was approved for traditional loan modifications on May 28, 2010 and on December 16, 2010; however, these loan modifications were ultimately denied because required loan modification documents were not executed and submitted to the Debtors by designated due dates. (*Id.* ¶ 18.) According to the Trust, despite the Debtors' numerous attempts to work with Philpot to avoid foreclosure, no loan modification was ever finalized and the Loan was once again referred to foreclosure on June 1, 2012. (*Id.*)

On February 16, 2013, servicing of the Loan was transferred from GMACM to Ocwen. (*Id.* ¶ 17.) The Property was ultimately sold to BONY at a foreclosure sale held on February 20, 2013 and, as of such date, the Property was placed into real estate owned status. (*Id.* ¶ 16; *see* "Foreclosure Deed," Priore Decl. Ex. F.) According to the Trust, four and a half years of Loan payments remained due and owing for the Loan at the time of the foreclosure sale. (Obj. ¶ 16.)

**B.     The Claim**

On November 15, 2012, Philpot timely filed the Claim as a $630,000.00 general unsecured claim against Debtor Residential Capital, LLC ("ResCap"). (*Id.* ¶ 20.) Of that

6

amount, $350,000 is attributed to Philpot's loss of equity in the Property, and $280,000 is attributed to loss of personal income based on Philpot's alleged inability to obtain a business loan for a new business start-up. (*See* Obj. Ex. 1 at 3.) According to Philpot, these losses are a result of the Debtors failure to correctly designate the Disputed Payment as a missed payment rather than a failure of the Debtors' payment processing system. (*See id.*)

On August 29, 2013, the Debtors filed an omnibus objection to claims (ECF Doc. # 4887) seeking to disallow and expunge various claims, including the Claim. (Obj. ¶ 21.) Philpot filed a response to the Debtors' prior claims objection on September 26, 2013 (ECF Doc. # 5233), and the Debtors filed a reply on December 13, 2013 (ECF Doc. # 6089). (Obj. ¶ 21 n.5.) On January 17, 2014, Philpot served the Debtors' counsel with a subpoena seeking documents regarding the Debtors' phone records in an effort to support the allegations made in the Claim. (*Id.*) On April 11, 2014, Philpot filed a sur-reply to the Debtors' reply (ECF Doc. # 6786). (*Id.*) On April 16, 2014, the Trust withdrew without prejudice the Debtors' omnibus objection solely with respect to the Claim (ECF Doc. # 6792), reserving all rights to object to the Claim on any basis in the future. (Obj. ¶ 22.)

### C.    The Objection

The Trust objects to the Claim on three grounds: (i) the Claim is not properly asserted against ResCap; (ii) the Claim is barred under judicial estoppel; and (iii) the Claim lacks merit. First, the Trust asserts that the Claim, which is asserted solely against ResCap, is not properly asserted against ResCap; the Claim concerns allegations wholly relating to Homecomings and GMACM, and Philpot provides no explanation for why ResCap is liable to Philpot. (*See id.* ¶¶ 26–28)

7

Second, the Trust contends that Philpot is judicially estopped from asserting the Claim because the Philpots' bankruptcy schedules did not list a claim against any Debtor. (*Id.* ¶ 29.) Nor did the Philpots raise any claims against the Debtors via an adversary proceeding or otherwise during the pendency of the Chapter 7 Case. (*Id.* ¶ 29.) According to the Trust, because the Philpots failed to assert any claims against the Debtors in their Chapter 7 Case, they are barred from asserting the Claim under the doctrine of judicial estoppel. (*Id.*)

Finally, the Trust argues that the Claim lacks merit. (*See id.* ¶ 46.) The Trust asserts that Philpot has not articulated the precise legal theory on which his Claim is based but argues that, in any event, the Claim fails to allege a breach of contract claim, negligence claim, or other tort claim. (*See id.* ¶¶ 38–45.) Accordingly, the Trust argues that the Claim should be disallowed and expunged in its entirety. (*Id.* ¶ 46.)

### D.  The Opposition

Philpot asserts that he entered into an agreement with the Debtors in 2007, pursuant to which Philpot was obligated not to be 60 days late in making Loan payments. (Opp. at 3.) According to Philpot, this agreement was entered into after Philpot experienced liquidity issues, resulting from Philpot's need to use personal funds to repair storm damage to the Property while he awaited payment of insurance proceeds that were not received until 2013. (*See id.* at 3–4.)

Philpot asserts that his Claim is based on losses suffered as a result of an error in the Debtors' payment processing system, which did not properly process his Disputed Payment. (*See id.* at 4.) According to Philpot, the Debtors refused to correct this error. (*Id.*) Philpot acknowledges that the Disputed Payment he made on September 30, 2008 was never properly presented to his bank account. (*See id.*) However, he argues that the Debtors are responsible for their payment processing system's error in not properly processing the Disputed Payment. (*See*

8

*id.* at 4–5.) Philpot asserts that the Debtors never attempted in good faith to review and verify their "pay-by-phone log records to verify [his] payment process of the night of September 30[], but instead only referenced [their] accounting ledger portion of their information technology system . . . ." (*Id.* at 6.) Philpot argues that his experience as a computer designer led him to understand that the Debtors' pay-by-phone system failed at the time he made the Disputed Payment, and an attorney with Legal Services of Alabama advised him not to make any payments on the Note until the Debtors corrected their payment processing failure. (*Id.* at 11.)

Philpot also asserts that the BONY Assignment was not recorded in Morgan County, Alabama and none of the Debtors were registered as foreign business entities in Alabama at the time the Debtors' payment processing system failed on September 30, 2008. (*Id.* at 8.) According to Philpot, the Debtors had no authority to operate within Alabama, including by servicing his Loan, after they withdrew their registration on October 10, 2006. (*See id.*) Philpot disputes the Trust's statements regarding the Debtors' loss mitigation efforts, arguing that he and his wife submitted all documents related to the HAMP review in a timely manner and met all requirements under HAMP, but "the Debtors constantly mismanaged [their] submissions using erroneous calculations related to [their] income and the monthly payment requirements." (*Id.* at 13.) Additionally, Philpot asserts that the Debtors consistently mismanaged their loss mitigation programs, including by selling the Property at a foreclosure sale on January 9, 2013, rather than on November 9, 2013, the date originally indicated by the Debtors. (*See id.* at 13–14.)

Philpot argues that he should not be judicially estopped from asserting the Claim because at the time he filed his Chapter 7 Case, he did not understand that he should schedule his claims against the Debtors as an asset of potentially any value. (*Id.* at 7.) Philpot states that his attorney in the Chapter 7 Case has since retired and closed his practice (*id.* at 14), but in any event,

9

Philpot had no knowledge that his claims against the Debtors "would have been considered a potential asset requiring [him] to list such as an asset, even though now value could be assessed at that time" (*id.* at 15).  Philpot characterizes his failure to schedule any claims against the Debtors in his Chapter 7 Case as a mistake.  (*See id.* at 20.)

### E.     The Reply

The Trust asserts that the parties do not dispute any material issues of fact.  (Reply ¶ 2.)  According to the Trust, Philpot admits in the Opposition that:  (i) he was in significant financial distress through no fault of the Debtors, ultimately resulting in Philpot becoming delinquent on his Loan payments before the events described in the Claim occurred; (ii) he ceased making Loan payments after August 2008; (iii) the Debtors never actually received the Disputed Payment allegedly made; and (iv) he had knowledge of potential claims against the Debtors at the time he filed the Chapter 7 Case, albeit he ascribed no value to such claims.  (*Id.*)  Philpot also allegedly limits his Claim to these events, all of which took place prior to the Chapter 7 Case.  (*Id.*)

The Trust argues that the various damages Philpot allegedly suffered as a result of the Debtors' actions are too speculative or attenuated, including damages relating to:  (i) his inability to obtain a loan from the Small Business Administration (the "SBA"); (ii) his alleged loss of potential future income with respect to a start-up that he could have formed if he had obtained a loan from the SBA; (iii) his Chapter 7 Case; and (iv) and the foreclosure.  (*Id.* ¶ 4.)  According to the Trust, Philpot cannot show that his inability to make a single Loan payment on September 30, 2008 was the proximate cause of his alleged misfortune.  (*Id.* ¶ 5.)  The Trust reiterates its argument that the Claim is barred by judicial estoppel.  (*Id.*)  Additionally, the Trust argues that the Debtors were authorized to service the Loan, notwithstanding Philpot's arguments to the

10

contrary (*id.* ¶ 18; *see id.* Ex. 1), and the Debtors are not liable for Philpot's unreimbursed costs incurred repairing the Property prior to foreclosure, to the extent Philpot seeks reimbursement of such costs for the first time in his Opposition (Reply ¶ 19).

### F.     Philpot's Supplemental Filings

The Supplemental Opposition corrects a typo made in one sentence in the Opposition. (*See* Supp. Opp. at 2.)  The Philpot Supplement consists of:  (1) a letter dated March 31, 2015 from Philpot to the Trust's counsel, summarizing documents enclosed in the Philpot Supplement; and (2) documents relating to (i) Philpot's 2008 credit report; (ii) Philpot's income in 2007 and 2008; (iii) correspondence among Philpot, his counsel, and the Debtors, purportedly indicating the Debtors' errors in processing loan modification requests and identifying issues with the BONY Assignment; (iv) a contractor invoice concerning restoration of the Property; (v) an insurance check for partial reimbursement of Philpot's expenses restoring the Property; and (vi) a spreadsheet prepared by Philpot summarizing the chronology of communications between Philpot and the Debtors from July 15, 2009 to May 19, 2010.  (*See generally* Philpot Supp.)  In the letter from Philpot to the Trust's counsel, Philpot states that the failure of the Debtors "Pay-By-Phone [system] on [September 30, 2008] and the subsequent refusal to correct the effort by the Debtors caused [his] financial collapse, and that failure is [his] sole contention in the Claim." (*Id.* at 2.)

## II.     DISCUSSION

### A.     Claims Objections

Correctly filed proofs of claim "constitute prima facie evidence of the validity and amount of the claim . . . .  To overcome this prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the

11

claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). By producing "evidence equal in force to the prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted). If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim." 4 COLLIER ON BANKRUPTCY ¶ 502.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

Federal pleading standards apply when assessing the validity of a proof of claim. *See, e.g.*, *In re Residential Capital, LLC*, 518 B.R. 720, 731 (Bankr. S.D.N.Y. 2014); *In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure." (citations omitted)). Accordingly, a claimant must allege "enough facts to state a claim for relief that is plausible on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and

plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). Plausibility "is not akin to a probability requirement," but rather requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation and internal quotation marks omitted). The court must accept all factual allegations as true, discounting legal conclusions clothed in factual garb. *See, e.g.*, *id.* at 677–78; *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true" (citing *Iqbal*, 556 U.S. at 678)). The court must then determine if these well-pleaded factual allegations state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). A claim that pleads only facts that are "merely consistent with a defendant's liability" does not meet the plausibility requirement. *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "The pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

Although "[claims] drafted by *pro se* [claimants] are to be construed liberally, [] they must nonetheless be supported by specific and detailed factual allegations sufficient to provide

the court and the defendant with 'a fair understanding of what the [claimant] is complaining about and . . . whether there is a legal basis for recovery.'" *Kimber v. GMAC Mortg., LLC (In re Residential Capital, LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (ellipsis in original) (quoting *Iwachiw v. N.Y.C. Bd. of Elections*, 126 F. App'x 27, 29 (2d Cir. 2005)).

### B.    The Claim Was Asserted Against the Wrong Debtor

The Trust argues that the Claim is not properly asserted against ResCap because all the events underlying the Claim involved GMACM and/or Homecomings. (*See* Obj. ¶¶ 26–28.) Philpot appears to suggest that his Claim asserted against ResCap sufficiently asserts a Claim against "the corporations owned in interest by ResCap which were operatives in the servicing of the Note and Mortgage . . . ." (Opp. at 17.) However, Philpot has offered no argument in support of this theory. To the extent that the Claim is asserted against ResCap, the Objection is **SUSTAINED**. *See In re Residential Capital, LLC*, No. 12-12020 (MG), 2014 WL 642585, at *6 (Bankr. S.D.N.Y. Feb. 19, 2014) (sustaining objection to claims filed against the wrong debtor entity, where claimant and claimant's counsel were aware of distinctness of different debtor entities). However, reading the Claim in the light most favorable to Philpot, a claimant appearing *pro se*, the Court considers whether the Claim states any claim against Homecomings or GMACM.

### C.    Judicial Estoppel

Philpot is precluded from asserting the Claim to the extent it is premised on causes of action accruing before February 3, 2009, the date on which the Philpots commenced their Chapter 7 Case. When a debtor files for bankruptcy protection, his or her assets, including legal and equitable interests, become property of the bankruptcy estate. *Rosenshein v. Kleban*, 918 F. Supp. 98, 102 (S.D.N.Y. 1996) (citing 11 U.S.C. § 541(a)(1)). "[E]very conceivable interest of

14

the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541," *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 112 (2d Cir. 2008) (per curiam) (alterations in original) (citation and internal quotation marks omitted), including "causes of action owned by the debtor or arising from property of the estate," *id.* (citing *Seward v. Devine*, 888 F.2d 957, 963 (2d Cir. 1989)). Accordingly, upon the commencement of a bankruptcy case, pre-petition claims belonging to the debtor become property of the estate. *See Seward*, 888 F.2d at 963.

Section 521(1) of the Bankruptcy Code requires a debtor to disclose all of his or her actual or potential assets, including any and all known causes of action. *See* 11 U.S.C. § 521(1); *Chartschlaa*, 538 F.3d at 122 ("Given the wide scope of § 541, the debtor's obligation to disclose *all* his interests at the commencement of a case is equally broad." (emphasis in original) (citing 11 U.S.C. §§ 521(a)(1)(B)(i), (iii))). "[I]f the debtor has enough information . . . prior to confirmation to suggest that it may have a possible cause of action, then it is a 'known' cause of action such that it must be disclosed." *Browning Mfg. v. Mims (In re Coastal Plains)*, 179 F.3d 197, 208 (5th Cir. 1999) (citations omitted). "Because full disclosure by debtors is essential to the proper functioning of the bankruptcy system, the Bankruptcy Code severely penalizes debtors who fail to disclose assets." *Chartschlaa*, 583 F.3d at 122.

To invoke judicial estoppel in the Second Circuit, "(1) the party against whom it is asserted must have advanced an inconsistent position in a prior proceeding, and (2) the inconsistent position must have been adopted by the court in some matter." *Peralta v. Vasquez*, 467 F.3d 98, 205 (2d Cir. 2006) (citations omitted); *accord Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 148 (2d Cir. 2005) (citations omitted). The doctrine of judicial estoppel requires "a true inconsistency between the statements in the two proceedings." *Simon v. Safelite Glass*

15

*Corp.*, 128 F.3d 68, 72–73 (2d Cir. 1997). "If the statements can be reconciled there is no occasion to apply an estoppel." *Id.* at 73 (citations omitted). Application of judicial estoppel should be limited "to situations where the risk of inconsistent results with its impact on judicial integrity is certain." *Id.* at 72 (citation omitted); *accord Uzdavines*, 418 F.3d at 14 (citation omitted).

While "[t]he circumstances under which the doctrine could be applied are far from clear," *Young v. U.S. Dep't of Justice*, 882 F.2d 633, 639 (2d Cir. 1989) (citations omitted), many courts in this circuit—including this Court—have applied judicial estoppel in the bankruptcy context to dismiss undisclosed claims. *See, e.g.*, *In re Residential Capital, LLC*, No. 12-12020 (MG), 2015 WL 588359, at *7–8 (Bankr. S.D.N.Y. Feb. 11, 2015); *In re Residential Capital, LLC*, 519 B.R. 890, 907 (Bankr. S.D.N.Y. 2014); *In re Residential Capital, LLC*, No. 12-12020 (MG), 2014 WL 301974, at *6–9 (Bankr. S.D.N.Y. Jan. 27, 2014), *aff'd*, 519 B.R. 606 (S.D.N.Y. 2014); *Coffaro v. Crespo*, 721 F. Supp. 2d 141, 145 (E.D.N.Y. 2010) ("In the bankruptcy context, judicial estoppel is commonly invoked in order 'to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy.'" (quoting *Negron v. Weiss*, No. 06-CV-1288 (CBA), 2006 WL 2792769, at *3 (E.D.N.Y. Sept. 27, 2006))); *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 58 (S.D.N.Y. 1999) (collecting cases); *Rosenshein*, 918 F. Supp. at 104 (collecting cases). Judicial estoppel does not apply where a party's first statement was the product of a "good faith mistake or an unintentional error." *Ibok v. Siac-Sector Inc.*, No. 05 Civ. 6584 (GBD) (GWG), 2011 WL 293757, at *7 (S.D.N.Y. Feb. 2, 2011) (citation and internal quotation marks omitted). Circuit courts that have considered a debtor's failure to disclose assets in a bankruptcy "have concluded that failure to disclose assets will only be deemed inadvertent or due to mistake when either the debtor has no knowledge of the claims

16

or no motive to conceal the claims." *Coffaro*, 721 F. Supp. 2d at 146 (collecting cases); *cf. D'Antignac v. Deere & Co.*, --- F. App'x ---, No. 14-10048, 2015 WL 1321570, at *3 (11th Cir. Mar. 25, 2015) (per curiam) (unpublished decision) ("The record shows that [claimant] knew of her claims against [defendant-appellee] while her bankruptcy was pending and that she had a motive to make the inconsistent statements—namely, that if she did not disclose the claims to the bankruptcy court, she could keep all the proceeds if she won her suit . . . ." (citations omitted)).

When Philpot filed his schedules of assets and liabilities in the Chapter 7 Case, he did not disclose any potential claims against the Debtors. (*See* Priore Decl. Ex. H.) The representations made on these schedules were accepted by the bankruptcy court as true statements, and supported granting the discharge order Philpot ultimately received in the Chapter 7 Case. Philpot had sufficient knowledge of the facts relating to the Disputed Payment at the time he filed bankruptcy schedules in his Chapter 7 Case, and he acknowledges that the Disputed Payment was the subject of a controversy between him and the Debtors at that time. (*See* Opp. at 14–15.) Philpot asserts that he "had no knowledge that such potential claim would have been considered a potential asset requiring [him] to list such as an asset . . . ." (*Id.* at 15.) Philpot was represented in his Chapter 7 Case by an attorney, Robert E. Long, Jr., and was advised by Long "that no equity could be determined for the then present value" of his Claim. (*Id.* at 14–15.) However, regardless of whether Long was at fault for failing to schedule Philpot's potential claims against the Debtor, the failure to schedule such claims or amend the schedules to list such claims cannot be considered inadvertent. *See Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1295 (11th Cir. 2003) ("Even if Barger's failure to disclose could be blamed on her attorney, the nondisclosure could not in any event be considered inadvertent. The failure to comply with the Bankruptcy Code's disclosure duty is 'inadvertent' only when a party either lacks knowledge of

the undisclosed claim or has no motive for their concealment." (citation omitted)). Philpot is estopped from bringing any claims relating to events occurring prior to February 3, 2009.[5] Thus, Philpot is estopped from bringing any claims relating to the Disputed Payment. Philpot admits that his Claim is based solely on the failure of the Debtors' payment processing system on September 30, 2008 and the Debtors' subsequent refusal to correct such error, "regardless of the actions [taken] by the Debtors after September 30, 2008 . . . ." (Philpot Supp. at 2.) Because the Claim is wholly based on events occurring prior to February 3, 2009, the Objection is **SUSTAINED**.

---

[5] Alternatively, Philpot lacks standing to bring any causes of action that accrued before he filed his Chapter 7 Case because such causes of action became property of his estate and were not abandoned; therefore they remained part of his estate. *See Rosenshein*, 918 F. Supp. at 103 ("[B]ecause an unscheduled claim remains the property of the bankruptcy estate, the debtor lacks standing to pursue the claims after emerging from bankruptcy, and the claims must be dismissed." (citations omitted)); *In re Residential Capital, LLC*, 523 B.R. 24, 38–39 (Bankr. S.D.N.Y. Dec. 22, 2014) (holding that claimant lacks standing to assert any claims accruing prior to her chapter 7 case, where chapter 7 trustee did not abandon these claims).

### III. CONCLUSION

For the reasons set forth above, the Objection is **SUSTAINED** in its entirety and the Claim is **DISALLOWED** and **EXPUNGED**.

**IT IS SO ORDERED.**

Dated:   May 15, 2015
         New York, New York

                                         *Martin Glenn*
                                         MARTIN GLENN
                                United States Bankruptcy Judge