**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: ) | |
| ) | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.*, ) | |
| ) | Chapter 11 |
| Debtors. ) | |
| ) | Jointly Administered |

**ORDER SUSTAINING RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM NUMBERS 2769 AND 2772 FILED BY ALVIN AND SANDRA LABOSTRIE**

Pending before the Court is the ResCap Borrower Claims Trust's (the "Trust") objection (the "Objection," ECF Doc. # 8459) to Claim Numbers 2769 (*see id.* Ex. 1) and 2772 (*see id.* Ex. 2) (Claim Numbers 2769 and 2772 together, the "Claims") filed by Alvin and Sandra LaBostrie (the "LaBostries" or "Claimants"). The Objection is supported by the declarations of Kathy Priore (the "Priore Decl.," *id.* Ex. 4), Rod Walz (the "Walz Decl.," *id.* Ex. 5), and Carl J. Palermo II (the "Palermo Decl.," *id.* Ex. 6). The Court held a hearing on the Objection on May 14, 2015 (the "Hearing") and took the Objection to the Claims under submission. The LaBostries did not file a response to the Objection or appear at the Hearing. As set forth below, the Objection to the LaBostries' Claims is **SUSTAINED**.

## I. BACKGROUND

### A. Relevant Loan History

The LaBostrie's son, Wayne Arnold, obtained a $755,000 home refinance loan (the "Loan") on December 16, 2006, by executing a note (the "Note," Priore Decl. Ex. A) in favor of GreenPoint Mortgage Funding, Inc. ("GreenPoint"). (*Id.* ¶ 12.) The Note includes GreenPoint's undated endorsement in blank. (Priore Decl. Ex. A.) The Note was secured by a deed of trust

(the "Deed of Trust," *id.* Ex. C),[1] encumbering property located at 1414-1416 ½ West 132nd Street, Gardena, California 90249 (the "Property"). (Obj. ¶ 12.) Mortgage Electronic Registration Systems, Inc. ("MERS") is the nominee for GreenPoint on the Deed of Trust and Marin Conveyancing Corp. is named as the trustee. (Priore Decl. Ex. C.) According to the Trust, on February 1, 2007, Debtor GMAC Mortgage LLC ("GMAC") entered into a Securitization Servicing Agreement for GreenPoint Mortgage Funding Trust 2007-AR1 ("GPMFT 2007-AR1"). GMACM began servicing the Loan on March 1, 2007. (Obj. ¶ 14 (citing Priore Decl. ¶ 6, Ex. D).) Servicing was later transferred to Ocwen Loan Servicing, LLC ("Ocwen") on February 16, 2013. (*Id.* ¶ 16 (citing Priore Decl. ¶ 7).)

On April 18, 2007, Arnold deeded 99% of his interest in the Property to the LaBostries, his mother and stepfather, and retained the remaining 1% interest. (*Id.* ¶ 15 (citing the "First Amended Complaint," Priore Decl. Ex. B ¶ 14).) The LaBostrie's took the interest in the Property subject to the existing Note and Deed of Trust with GreenPoint. (*Id.* (citing First Amended Compl. ¶ 15).) However, the La Bostrie's do not appear to have assumed any of Arnold's obligations under the Loan. (*Id.* ¶ 17 (citing Priore Decl. ¶ 8).)

The Loan went into default when neither Arnold nor the LaBostries made the Loan payment due on July 1, 2008. (*Id.* ¶ 18 (citing First Amended Compl. ¶ 15).) On October 9, 2008, MERS executed a substitution of trustee (the "Substitution"), substituting Debtor Executive Trustee Services, LLC d/b/a ETS Services, LLC ("ETS") as trustee under the Deed of Trust. (*Id.* ¶ 19 (citing Priore Decl. Ex. F).) Also on October 9, 2008, ETS executed a notice of default (the "Notice of Default," Priore Decl. Ex. H). The Substitution and Notice of Default were recorded on October 14, 2008. (*Id.* Exs. F, H.) Each of the LaBostries was served with the

---

[1]  The Deed of Trust was recorded on December 27, 2006. (*Id.*)

2

Notice of Default by first class mail and certified mail on November 5, 2008 at the Property address. (Obj. ¶¶ 20–21 (citing Walz Decl. ¶¶ 9–18; Priore Decl. ¶ 11, Ex. 1 at 2–3).)

On January 15, 2009, ETS executed and served Arnold a copy of a notice of trustee sale (the "Notice of Trustee Sale," Priore Decl. Ex. J). The Notice of Trustee Sale was recorded on January 16, 2009 and scheduled the trustee's sale for February 13, 2009. (*Id.*) Each of the LaBostries was served with the Notice of Trustee Sale by first class and certified mail on January 15, 2009. (Walz Decl. ¶¶ 19–31, Exs. K–V.)

One day before the scheduled trustee's sale, Arnold filed voluntary petitions for relief under chapter 7 and chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California (the "California Bankruptcy Court"). (Obj. ¶ 23 (citing Priore Decl. Exs. K–L); *id.* ¶ 23 n.4.) The chapter 13 case was dismissed on March 10 2009. (*Id.* ¶ 23 n.4.) The Deed of Trust was assigned to GMACM on July 13, 2009 (the "Assignment," Priore Decl. Ex. N), while Arnold's chapter 7 bankruptcy case was pending.[2] Ten days later, on July 23, 2009, Arnold received a chapter 7 discharge. (Obj. ¶ 23 (citing Priore Decl. Ex. L at 1, 5).)

On October 13, 2009, Arnold filed another chapter 13 petition, which was dismissed on November 30, 2009. (*Id.* ¶ 25 (citing Priore Decl. Ex. O).) Due to Arnold's bankruptcy filings, the trustee's sale of the Property was postponed and was ultimately conducted on January 13, 2010. (*Id.* ¶ 26 (citing Palermo Decl. ¶ 5; Priore Decl. ¶ 18, Exs. P–Q).) A trustee's deed upon sale (the "Trustee's Deed Upon Sale," Priore Decl. Ex. Q) was issued to the purchaser of the Property, U.S. Bank, N.A., as trustee of GPMFT 2007-AR1 ("U.S. Bank") (*id.*).

---

[2] The Assignment was recorded on August 19, 2009. (*Id.*)

3

B.    **The Unlawful Detainer and State Court Actions**

On May 14, 2010, U.S. Bank filed an unlawful detainer action against Mr. LaBostrie in the Superior Court of California, County of Los Angeles, Southwest District (the "Detainer Trial Court") seeking possession of the Property (the "Unlawful Detainer Action"). (Obj. ¶ 27 (citing Priore Decl. ¶ 19, Exs. R–S).) Mr. LaBostrie answered the complaint and a trial was held on June 22, 2010. (*Id.* ¶ 27.) At the trial, Mr. LaBostrie testified that he had filed a complaint against U.S. Bank seeking to set aside the foreclosure sale, alleging that the foreclosure sale was unlawful. (*Id.* ¶ 28 (citing Priore Decl. Ex. U at 2).) After the trial, the Detainer Trial Court entered judgment in favor of U.S. Bank for possession of the Property. (*Id.* (citing Priore Decl. Ex. T).)

Mr. LaBostrie appealed the judgment of the Detainer Trial Court to the appellate court (the "Appellate Court"). (*Id.* ¶ 29.) While the appeal was pending, the LaBostries submitted information regarding their finances to GMACM and GMACM considered the information to determine whether the LaBostries could qualify for a Loan modification (despite the foreclosure sale having occurred over a year before). (*Id.* ¶ 30 (citing Priore Decl. ¶ 21).) GMACM ultimately determined that the LaBostries had insufficient income and cash available to make modified payments under the Loan and therefore denied the Loan modification. (*Id.* (citing Priore Decl. ¶ 21).)

On November 23, 2010, while the appeal was still pending, the LaBostries filed a complaint (the "Complaint") against GMACM, U.S. Bank, MERS, and ETS (together the "Defendants") in the Superior Court of California, County of Los Angeles, Central District (the "State Court") (the "State Court Action"). (*Id.* ¶ 30 (citing Priore Decl. ¶ 22, Ex. V; First Amended Compl.).) On March 23, 2011, the Defendants filed a demurrer to the Complaint. (*Id.*

4

¶ 32 (citing Priore Decl. Ex. V at 7).) On April 28, 2011, the LaBostries filed their First Amended Complaint. (*Id.* ¶ 33 (citing Priore Decl. Ex. V at 7).) On May 2, 2011, the LaBostries filed a motion for summary judgment. (*Id.* ¶ 34 (citing Priore Decl. Ex. V at 7).)

On July 28, 2011, the Defendants' demurrer was overruled by the State Court. (*Id.* ¶ 36 (citing Priore Decl. Ex. V at 9). The next day, on July 29, 2011, the Appellate Court affirmed the judgment for possession entered by the Detainer Trial Court in the Unlawful Detainer Action. (*Id.* ¶ 29 (citing Priore Decl. ¶ 20, Ex. U).)

The State Court Action thereafter continued. The State Court denied the LaBostries' motion for summary judgment on September 6, 2011. (*Id.* ¶ 36 (citing Priore Decl. Ex. V at 9).) On October 18, 2011, the Defendants filed a motion for summary judgment or, alternatively, summary adjudication (the "Defendants' MSJ"). (*Id.* ¶ 37 (citing Priore Decl. Ex. V at 4).) On October 25, 2011, U.S. Bank filed a first amended cross-complaint against the LaBostries. The LaBostries' demurrer to that cross-complaint was overruled on November 30, 2011. (*Id.* ¶ 38 (citing Priore Decl. Ex. V at 4, 9).)

The Defendants' MSJ was originally scheduled for hearing on January 6, 2012, but was continued to February 6, 2012, with a trial, if necessary, scheduled for February 14, 2012. (*Id.* ¶ 39 (citing Priore Decl. ¶ 24).) The litigation was stayed, however, and the hearing did not take place because the LaBostries filed a chapter 7 petition on January 13, 2012. (*Id.* ¶ 39 (citing Priore Decl. ¶ 24, Ex. W at 1).)

The LaBostries obtained a chapter 7 discharge on May 7, 2012. (*Id.* ¶ 39 (citing Priore Decl ¶ 24, Ex. W at 1, 8).) The State Court Action did not move forward, however, because of the automatic stay imposed by the Debtors' bankruptcy filings on May 14, 2012. (*Id.* ¶ 40.)

5

**C.     The Claims**

On November 7, 2012, the LaBostries filed two general unsecured claims against GMACM (Claim Numbers 2769 and 2772), each seeking the return of property allegedly valued at $300,000, and each based on "wrongful foreclosure – LaBostrie v. GMAC pertaining to property at 1414 W 132nd St. Gardena, Ca 90249."  (*Id.* Exs. 1, 2.)

In response to the Debtors' request for further documentation supporting the Claims, the LaBostries responded with a letter dated July 17, 2013, enclosing copies of the proofs of claims and a case management statement submitted in the State Court Action by the Defendants.  (*Id.* Ex. 7.)  The letter states that the Claims are based on the State Court Action and "Falsifying Foreclose [sic] Documents, Illegal Foreclosure, Deprived of Property Rights, Harassment. Clouding of Title to Real Property and Fraud."  (*Id.*)

The First Amended Complaint—the operative complaint in the State Court Action—pleads causes of action for (1) wrongful foreclosure under sections 2924b and 2934a(b) of the California Civil Code and (2) unlawful, unfair, and deceptive business practices under section 17200 *et seq.* of the California Business and Professions Code.  (*See* First Amended Compl.) The First Amended Complaint also includes a request for declaratory relief, seeking a judgment voiding the foreclosure sale and rescinding the Trustee's Deed Upon Sale.  (*See id.*)

In support of the wrongful foreclosure claim, the LaBostries allege that the Defendants violated the California Civil Code' statutory mailing requirements in failing to properly serve them, as alleged successors in interest of the Loan, by certified mail and first class mail with the Notice of Default, the Substitution, and the Notice of Trustee's Sale.  (*Id.* ¶¶ 39–48.)

In support of the unfair and deceptive practices claim, the LaBostries assert that the Defendants violated California Penal Code section 115.5 and the Bankruptcy Code, by filing

6

false documents with the county recorder or improperly notarizing the documents with the intention of affecting title. (*Id.* ¶¶ 49–59.) The LaBostries allege six unlawful practices by the Defendants:

(1) ETS employees Rosalie Solano, who executed the Substitution as Assistant Secretary of MERS, and Dee C. Ortega, the notary, falsely alleged that they had the requisite authority to execute and notarize the Substitution and that MERS had the authority to substitute ETS as trustee in place of Marin Conveyance Corp. The LaBostries assert that any nominee in interest under the Deed of Trust that MERS held had been superseded and extinguished by assignment and transfer of the Note and Deed of Trust from GreenPoint to "Lehman Brothers, from Lehman Brothers to SASC, and from SASC" to U.S. Bank as trustee for GPMFT 2007-AR1. (*Id.* ¶ 52.)

(2) ETS employee Anabel Mardros fraudulently represented in preparing the Notice of Default that MERS was the beneficiary on the Loan and had authority to foreclose and use the Notice of Default, when in fact any nominee interest that MERS held under the Deed of Trust was again superseded and extinguished by the assignments. (*Id.*)

(3) ETS prepared a debt validation letter, fraudulently representing that MERS was the creditor, when in fact MERS never had any right, title, or interest in the Loan proceeds. The letter also listed incorrect figures for the amount the Loan was in default and the total amount due on the Loan. (*Id.*)

(4) GMACM employee Sandy Broughton fraudulently represented in executing the Assignment that MERS had authority to assign the Deed of Trust and the Note to GMACM on behalf of GreenPoint when GreenPoint no longer had an interest to convey.

7

Similarly, GMACM employee Thomas P. Strain as notary, was located in Pennsylvania while Broughton was in California and falsely declared under penalty of perjury under the law of California that Broughton had personally appeared before him and executed the Assignment. (*Id.*)

(5) GMACM fraudulently recorded the Assignment purporting to transfer all interest in the Deed of Trust and Note to itself in order to prevail on the motion for relief from stay on August 18, 2009 in the Arnold's bankruptcy. GMACM knew that GreenPoint no longer had an interest to convey, and any nominee interest that MERS held had been superseded and extinguished by the assignments of the Loan. (*Id.*)

(6) ETS employee Kathleen Gowen, as a limited signing officer, swore under penalty of perjury and caused to be recorded the Trustee's Deed Upon Sale, transferring the Property to U.S. Bank as trustee. The recorded deed indicated that Gowen had complied with all applicable statutory requirements of California including sending the Notice of Default and Notice of Trustee's Sale to each person entitled to notice, but U.S. Bank had not complied with the statutory requirements, all duties required by the Deed of Trust had not been extinguished, GMACM fraudulently recorded and assigned the Property to itself in August 2009, and U.S. Bank was not the beneficiary on the date of the sale on January 13, 2010. ETS employee Gisela A. Clark, as the notary of the Trustee's Deed Upon Sale, fraudulently represented that although Gowen signed the Trustee's Deed Upon Sale on January 13, 2010, she appeared on January 19, 2010 and executed the Trustee's Deed Upon Sale. (*Id.*)

Additionally, the LaBostries allege that the Defendants violated the California unfair and deceptive business practices statute because: (1) at the time the foreclosure sale was conducted,

8

the foreclosing party did not have proper documented ownership of the Note and Deed of Trust and did not have proper standing; (2) the foreclosure sale did not follow applicable federal and state laws; (3) the non-judicial foreclosure procedures were not properly followed including the calculation of the default period; (4) the amounts due were incorrect and the Defendants failed to comply with statutory notice periods; (5) the foreclosure sale occurred while the borrower requested a loan modification; and (6) the account was charged fees and penalties with notice periods. (*Id.* ¶ 53.)

### D. The Objection

The Trust seeks to disallow and expunge both of the LaBostries' Claims in their entirety on multiple grounds. First, the Trust argues that the Claims should be expunged because they seek equitable and declaratory relief, which are not appropriate under section 502(b) and/or are unattainable against the Debtors, which no longer have an interest in the Loan. (Obj. ¶¶ 44–47.) Second, the Trust argues that the Claims, to the extent they seek monetary relief, are barred by collateral estoppel based on the Appellate Court's judgment in the Unlawful Detainer Action. (*Id.* ¶¶ 49–59.)

The Trust then addresses the merits of the wrongful foreclosure claim and unfair and deceptive practices claim, as pled in the First Amended Complaint. As to the wrongful foreclosure claim, the Trust first argues that the undisputed facts establish that the foreclosure sale was lawful and GMACM complied with all statutory mailing obligations. (*Id.* ¶¶ 60–69.) The Trust argues that the Trustee's Deed Upon Sale contains a recital that GMACM complied with California statutory requirement, which constitutes prima facie evidence that such requirements have been met. (*Id.* ¶ 62.) The Trust also argues that despite the LaBostries' correct allegation that the Substitution was not served upon them, GMACM was under no

obligation to mail the Substitution under California Civil Code section 2934a(b) because the Substitution was recorded before the Notice of Default. (*Id.* ¶ 63 (citing CAL. CIV. CODE § 2934a(b); MILLER & STARR CAL. REAL ESTATE, 4 CAL. REAL. EST. § 10:9 (3d ed. 2013); Priore Decl. Exs. F, H).) The Trust also asserts that the Notice of Default and Notice of Trustee's Sale were mailed by certified and first class mail to each of the LaBostries in compliance with the statutory requirements; the Trust submits affidavits of service and proof of such mailings, which constitute a "conclusive" presumption of mailing as a matter of law under California law. (*Id.* ¶¶ 64–68 (citing Priore Decl. Exs. H, J; Walz Decl. Exs. A–X; CAL. CIV. CODE §§ 2924b(e), 2934b(c)(3), (e)).) The Trust further argues that it was under no obligation under California law to notify the LaBostries of the postponed sale dates; only a public declaration at the date and time last appointed for the sale to occur must be given and such public notice was provided by GMACM. (*Id.* ¶ 68 (citing CAL. CIV. CODE § 2924g(d); Priore Decl. Ex. P; Palermo Exs. A–J).) The Trust also argues that the LaBostries' allegations regarding MERS lack merit. (*Id.* ¶ 69.) According to the Trust, MERS was nominee beneficiary for GreenPoint, and also for its successors and assigns; no matter how many times the Loan was conveyed, MERS remained the nominee beneficiary of record and retained its ability to act on behalf of the lender's successors. (*Id.* (citing cases).) As to the wrongful foreclosure claim, the Trust argues that the LaBostries fail to demonstrate that the alleged imperfection in the foreclosure process was somehow prejudicial to their interests. (*Id.* ¶¶ 70–71 (citing *Fontenot v. Wells Fargo Bank, N.A.*, 129 Cal. Rptr. 3d 467, 480 (Ct. App. 2011); *Angell v. Sup. Ct. of San Bernardino Cnty.*, 86 Cal. Rptr. 2d 657, 663 (Ct. App. 1999)).)

As to the unfair and deceptive business practices claim, the Trust first argues that the LaBostries have no damages remedy under the statute because individuals may only obtain

restitution and injunctive relief. (*Id.* ¶ 73 (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937 (Cal. 2003); *Madrid v. Perot Sys. Corp.*, 30 Cal. Rptr. 3d 210, 219 (Cal. Ct. App. 2005)).) The Trust reiterates that an injunction is unavailable in the claims process, and even if it were available, no Debtor retains an interest in the Property. (*Id.* ¶ 74.) The Trust also argues that restitution is unavailable because the Debtors do not hold any property taken from the LaBostries that the LaBostries were entitled to keep. (*Id.* (citing *Day v. AT&T Corp.*, 74 Cal. Rptr. 2d 55, 64 (Ct. App. 1998)).) The Trust asserts that the LaBostries admit that (1) they were in default on the Loan payments, (2) they acquired the Property subject to the Deed of Trust, and (3) the default on the Loan was not cured before the foreclosure sale. (*Id.*) The Trust therefore asserts that the foreclosure sale was properly conducted. (*Id.*)

Second, the Trust argues that GMACM did not engage in any unlawful or fraudulent business practices as alleged by the LaBostries. (*Id.* ¶¶ 75–80.) The Trust asserts that neither the California Penal Code nor the Bankruptcy Code can serve as the foundation of the LaBostries' Claims under this theory of relief. (*Id.* ¶ 75.) The Trust argues that (1) section 115(a) of the California Penal Code, cited in the First Amended Complaint, does not provide a private right of action and therefore their derivative claim under section 17200 of the California Business and Professions Code must fail; (2) the challenge to the recording of the Substitution, Notice of Default, and Notice of Trustee's Sale cannot support a section 17200 claim as the recording of those documents are privileged acts under California Civil Code section 2924(d), which precludes any tort claim other than malicious prosecution based on certain actions taken under such California Civil Code section; and (3) there was nothing false in the recorded instruments. (*Id.* at 76–79.) According to the Trust, (1) Rosalie Solano was an assistant secretary of MERS, MERS had authority to substitute ETS as the trustee because MERS was the beneficiary of the

11

Deed of Trust, and in any event, ETS's authority to act as trustee is conclusively presumed by statute; (2) MERS was the beneficiary of the Deed of Trust when the Notice of Default was prepared; (3) the LaBostries attack the debt validation letter, but do not allege that any such letter was recorded in violation of the California Penal Code; (4) MERS had the authority to assign the Deed of Trust since it was the beneficiary of the Deed of Trust at the time the Assignment was prepared; and (5) the Trustee's Deed Upon Sale correctly provides a recital that the statutory mailing requirements were met, contrary to the LaBostries' arguments. (*Id.*)

The Trust further asserts that the LaBostries have no claim in connection with their son's bankruptcy case and the motion for relief from stay GMACM filed in that case. (*Id.* ¶ 80.) The Trust asserts that the LaBostries' argument is an improper collateral attack on a final judgment on the motion, which was entered after no opposition was filed to the motion. (*Id.*) Additionally, the Trust argues the LaBostries do not have standing to contest the stay relief motion since it was granted in their son's case, not in their case. (*Id.*)

The Trust also responds to the remaining allegations in support of the LaBostries' Claims, arguing that GMACM did not engage in any unfair business practices. (*Id.* ¶¶ 81–83.) The Trust provides the three possible definitions of unfair business practices under California law and argues that GMACM's conduct does not fall under any of them because GMACM did not violate public policy, engage in immoral behavior, or cause injury to the LaBostries. (*Id.*) The Trust reviews the actions leading up to the foreclosure sale, asserting that each step taken was lawful and in compliance with statutory requirements. (*Id.*) The Trust then asserts that the Claimants lack standing to raise this argument because they were not parties to the Loan and did not assume the liability under the Loan when they obtained an interest in the Property. (*Id.*)

## II.    DISCUSSION

Correctly filed proofs of claim "constitute prima facie evidence of the validity and amount of the claim . . . . To overcome this prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). By producing "evidence equal in force to the prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted). If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim." 4 COLLIER ON BANKRUPTCY ¶ 502.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

The Court finds and concludes that the Trust's Objection to the Claims shifted the burden to the LaBostries, who did not respond to the Objection, to establish the viability of their Claims. More specifically, the Court finds that the LaBostries' wrongful foreclosure cause of action and at least part of the unfair and deceptive business practices cause of action are barred by the doctrine of collateral estoppel. Application of collateral estoppel requires a party to prove "(1)

13

12-12020-mg    Doc 8625    Filed 05/18/15    Entered 05/18/15 10:32:17    Main Document
Pg 14 of 15

the issue necessarily decided in the previous proceeding is identical to the one that is sought to be relitigated; (2) the previous proceeding terminated with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party to or in privity with a party in the previous proceeding." *Syufy Enters. v. City of Oakland*, 128 Cal. Rptr. 2d 808, 816 (Ct. App. 2002) (citation omitted).  Under California law, the Appellate Courts' affirming of the Detainer Trial Court's judgment in the Unlawful Detainer Action is a final judgment on the merits with preclusive effect against claims brought in a subsequent lawsuit that are "directly connected with the conduct of the sale [of the relevant property]." *Vella v. Hudgins*, 572 P.2d 28, 30 (Cal. 1977) (citations omitted); *see also* CAL. R. CT. 8.888(a).  Although Ms. LaBostrie was technically not a party to the Unlawful Detainer Action, collateral estoppel similarly bars her assertion of claims "directly connected" to the sale of the Property because she is, and was at all relevant times, married to Mr. LaBostrie.  *See, e.g.*, *Mueller v. J.C. Penney Co.*, 219 Cal. Rptr. 272, 280 (Ct. App. 1985) (concluding that spouses are in privity with one another for purposes of collateral estoppel).  The Appellate Court's judgment indicates that U.S. Bank's witnesses testified that "a non-judicial foreclosure sale compliant with Civil Code section 2924 was held on January 13, 2010; and that [U.S. Bank] acquired title to the premises at said sale and later perfected its title."  (Priore Decl. Ex. U at 2.)  The Appellate Court further found that "[t]he record is simply devoid of any indication that the sale at which plaintiff acquired title was invalid in some respect."  (*Id.* at 4.)  Based on the Appellate Court's holding, the wrongful foreclosure cause of action asserted in the LaBostrie's First Amended Complaint clearly falls within the preclusive effect of the Appellate Court's judgment.  Each of the allegations that Defendants failed to comply with the non-judicial foreclosure statutory requirements is "directly connected

with the conduct of the sale." As such, the Trust's Objection to the LaBostries' wrongful foreclosure cause of action is **SUSTAINED**.

Similarly, to the extent the unfair and deceptive business practices cause of action is based on allegations "directly connected with the conduct of the sale" (*i.e.*, the LaBostries allege that the Defendants did not properly comply with certain of the non-judicial foreclosure statutory requirements prior to conducting the sale), the Objection to this cause of action is **SUSTAINED**. Nevertheless, to the extent the unfair and deceptive business practices claim alleges facts that are not "directly connected to the conduct of the sale,"[3] the Court **SUSTAINS** the Objection to the cause of action because such claim is limited to relief in the form of an injunction—which is improper here because the Debtors do not currently hold an interest in the Loan or the Property—or restitution—which is improper here because the Debtors do not possess any property that was previously possessed by the LaBostries that the LaBostries are now entitled to get back. *See Madrid*, 30 Cal. Rptr. 3d at 219.

### III.    CONCLUSION

For the foregoing reasons, the Court **SUSTAINS** the Objection to the LaBostries' Claims in their entirety and the Claims are hereby **DISALLOWED** and **EXPUNGED**.

**IT IS SO ORDERED.**

Dated:    May 18, 2015
         New York, New York

                                                      /s/Martin Glenn
                                                    MARTIN GLENN
                                              United States Bankruptcy Judge

---

[3]    Because the Objection is to the unfair and deceptive business practices cause of action is **SUSTAINED** in its entirety, the Court does not decide whether certain allegations made by the LaBostries in support of their unfair and deceptive business practices cause of action are or are not "directly connected with the conduct of the sale."