**Hearing Date and Time: June 4, 2015 at 2:00 p.m. (Prevailing Eastern Time)**

**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett

*Counsel for The ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**NOTICE OF THE DECLARATION OF LAUREN GRAHAM DELEHEY IN SUPPORT OF THE RESCAP BORROWER CLAIMS TRUST'S SEVENTY-SIXTH OMNIBUS OBJECTION (NO LIABILITY BORROWER CLAIMS) SOLELY AS IT RELATES TO PROOF OF CLAIM NO. 1083 FILED BY ELDA AND MARIA THOMPSON**

**PLEASE TAKE NOTICE** that the undersigned have filed the attached declaration of Lauren Graham Delehey (the "Declaration"), submitted in support of the *ResCap Borrower Claim's Trust's Seventy-Sixth Omnibus Objection (No Liability Borrower Claims)* (the "Objection") [Docket No. 7736] Solely As It Relates to Proof of Claim No. 1083 Filed by Elda and Maria Thompson (the "Claim"). The facts pertaining to the Claim set forth in the Declaration are the same as those that were set forth in the previous declarations [Docket Nos. 7936-2 and 7937-1] submitted by Kathy Priore in support of the Objection and the *ResCap Borrower Claims Trust's Omnibus Reply in*

ny-1188172

*Support of Its Seventy-Sixth Omnibus Objection to Clams (No Liability Borrower Claims) as to Claim Nos. 1083, 2055, and 3728* (the "Priore Declarations"). In preparing the Declaration, Ms. Delehey reviewed the Priore Declarations as well as the supporting documents and information in the Debtors' books and records.[1]

**PLEASE TAKE FURTHER NOTICE** that an evidentiary hearing on the Objection will take place on **June 4, 2015 at 2:00 p.m. (Prevailing Eastern Time)** before the Honorable Martin Glenn, at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408, Room 501.

Dated:  May 18, 2015
        New York, New York

                                                   Respectfully Submitted,

                                                   /s/ Norman S. Rosenbaum
                                                   Norman S. Rosenbaum
                                                   Jordan A. Wishnew
                                                   Jessica J. Arett
                                                   **MORRISON & FOERSTER LLP**
                                                   250 West 55th Street
                                                   New York, New York 10019
                                                   Telephone:  (212) 468-8000
                                                   Facsimile:  (212) 468-7900

                                                   *Counsel for The ResCap Borrower*
                                                   *Claims Trust*

---

[1] To avoid unnecessary duplication, the documents attached to the Priore Declarations [Docket Nos. 7936-2 and 7937-1], which were reviewed in preparing the Declaration, are not being re-attached to the Declaration.

ny-1188172

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DECLARATION OF LAUREN GRAHAM DELEHEY IN SUPPORT OF RESCAP BORROWER CLAIMS TRUST'S SEVENTY-SIXTH OMNIBUS OBJECTION (NO LIABILITY BORROWER CLAIMS) SOLELY AS IT RELATES TO PROOF OF CLAIM NO. 1083 FILED BY ELDA AND MARIA THOMPSON**

I, Lauren Graham Delehey, declare as follows:

1. I serve as Chief Litigation Counsel for the ResCap Liquidating Trust (the "Liquidating Trust") established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] in the above-captioned Chapter 11 Cases.[1] During the Chapter 11 Cases, I served as Chief Litigation Counsel in the legal department at Residential Capital, LLC ("ResCap"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "Debtors"). I joined ResCap on August 1, 2011 as in-house litigation counsel.

2. In my role as Chief Litigation Counsel at ResCap, I was responsible for the management of litigation including, among others, residential mortgage-related litigation. In connection with ResCap's chapter 11 filing, I also assisted the Debtors and their professional advisors in connection with the administration of the Chapter 11 Cases, including the borrower

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Objection (as defined below).

ny-1183095

litigation matters pending before this Court. In my current position as Chief Litigation Counsel to the Liquidating Trust, among my other duties, I continue to assist the Liquidating Trust and the Borrower Claims Trust (the "Borrower Trust") in connection with the claims reconciliation process.[2] I am authorized to submit this declaration (the "Declaration") in support of the ResCap Borrower Claims Trust's Objection (the "Objection") to Proof of Claim No. 1083 Filed by Elda and Maria Thompson (the "Thompson Claim").

3. In my current and former capacities as Chief Litigation Counsel to the Liquidating Trust and ResCap, I am intimately familiar with the Debtors' claims reconciliation process. Except as otherwise indicated, all statements in this Declaration are based on my familiarity with the Debtors' Books and Records (the "Books and Records"), as well as the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or my review of relevant documents. I or other Liquidating Trust personnel have reviewed and analyzed the proof of claim form and supporting documentation filed by the Thompsons. Since the Plan went effective and the Borrower Trust was established, I, along with other members of the Liquidating Trust have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims and determine the appropriate treatment of the same. In connection with such review and analysis, where applicable, I or other Liquidating Trust personnel, together with professional advisors, have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, (v) the official claims register maintained in the

---

[2] The Liquidating Trust and the Borrower Trust are parties to an Access and Cooperation Agreement, dated December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and to the Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

ny-1183095                                2

Debtors' Chapter 11 Cases, and/or (vi) documents and filings from other litigation matters involving particular claimants.

4. In connection with the Thompson Claim, the Liquidating Trust, on behalf of the Borrower Trust, reviewed the Thompsons' payment history, the Debtors' internal servicing notes, and the Debtors' other written communications to the Thompsons, including denial letters, interest rate adjustment letters, a modification agreement, and responses to written requests.

5. I am familiar with the records maintained by the Debtors' businesses, and am qualified by my position to identify those records and certify their authenticity. Except as otherwise noted below, each of the records attached to or accompanying this declaration (excluding court filings and other court-issued documents) were original records of the business or true and accurate duplicates thereof. In addition, these records (i) were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters, (ii) were kept in the course of a regularly conducted business activity, and (iii) were made by the business as part of its regular practice.

6. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations, information learned from my review of relevant documents and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors, the Liquidating Trust's and the Borrower Trust's professionals and consultants. If I were called upon to testify, I could and would testify competently to the facts set forth in the Objection on that basis.

7. The Debtors sent a Request Letter to the Thompsons requesting additional documentation in support of the Thompson Claim. The Request Letter states that the Thompsons must respond within 30 days with an explanation that states the legal and factual

reasons why they believe they are owed money or are entitled to other relief from the Debtors, and they must provide copies of any and all documentation that they believe supports the basis for their claim. The Request Letter further states that if the Thompsons do not provide the requested explanation and supporting documentation within 30 days, the Debtors may file a formal objection to the Thompson claim, seeking to have the claim disallowed and permanently expunged.

8. The Debtors received a response to the Request Letter from the Thompsons on September 26, 3013 (the "Diligence Response"), attached as Exhibit A to the Supplemental Declaration in support of the *ResCap Borrower Claims Trust's Omnibus Reply in Support of Its Seventy-Sixth Omnibus Objection to Claims (No-Liability Borrower Claims) As To Claims 1083, 2055, and 3728* [Docket No. 7967] (the "Reply"). However, the Diligence Response fails to allege bases for a claim against the Debtors' estates. Further, the Books and Records do not show any liability due and owing to the Thompsons.

9. According to the Debtors' books and records, non-Debtor Ameriquest Mortgage Company ("Ameriquest") originated a loan to the Thompsons on June 25, 2005 (the "Thompson Loan"), secured by a mortgage on property located at 137 Ellery Ave., Newark, NJ 07106 (the "Thompson Property"). See Thompson Note, attached to the Reply as Exhibit C, and Thompson Mortgage, attached to the Reply as Exhibit D.[3] The Thompson Loan was securitized in 2005 where U.S. Bank N.A. was named as Trustee for Citigroup Mortgage Loan Trust Inc. series 2005-09. See Assignment of Mortgage, attached to the Reply as Exhibit E.

10. GMACM serviced the Thompson Loan from October 20, 2005 until servicing was transferred to Ocwen Loan Servicing, LLC ("Ocwen") on February 16, 2013.

---

[3] This is the only copy of the Thompson Mortgage in the Books and Records.

ny-1183095                                    4

11. On October 16, November 7, and December 12, 2006 and on January 16, 2007, the Debtors received a payment from the Thompsons in the amount of $1,227.78. However, the Debtors received notification from the Thompsons' bank that there were insufficient funds to complete the payment, so the Debtors reversed the payments off the account.

12. On March 9, 2007, the Debtors returned a payment of $1,300 to the Thompsons because the payment was sent via a bill pay account and the account was restricted to certified funds because of the Thompsons previous nonsufficient fund payments returns.

13. On June 4, 2007, the Debtors mailed a breach letter to the Thompsons. On June 21, 2007, the Debtors returned to the Thompsons a payment in the amount of $1,227.78 because the Debtors' payment guidelines required a minimum of half the total amount due for a payment to be accepted, and the amount submitted was less than half the amount due.

14. On June 27, 2007, the Debtors reversed a $1,288.78 payment off the account because it received notification from the Thompsons' bank that there were insufficient funds to complete the payment.

15. On July 10, 2007, the Debtors referred the account to foreclosure because it was owing for the March through July 2007 payments.

16. On July 16, 2007, the Debtors received a payment from the Thompsons in the amount of $1,227.78, however, the payment was returned because it was not the full amount due, as required by the Debtors' payment guidelines because the account was in active foreclosure. The Debtors returned payments in the amount of $1,227.78 received on August 15 and September 14, 2007 for the same reason.

17. On September 21, 2007, the Debtors received a workout package from the Thompsons. Based on this information, the Debtors determined that the Thompsons qualified

for a twelve month repayment plan (the "Repayment Plan") which included a $4,000 down payment and a payment of $2,215 due on the 30th of each month starting in September 2007 and ending September 2008. The Debtors received a signed agreement from the Thompsons for the Repayment Plan on October 30, 2007. The Thompsons brought their account current through the Repayment Plan.

18. On November 25, 2008, the Debtors spoke with Maria Thompson, via phone. Maria wanted to know why the interest rate had increased from 5.75% to 6%. The Debtors advised her that the loan is an adjustable rate mortgage. Maria stated she would like a fixed rate mortgage and the Debtors advised her of the Direct Lending Department to discuss options. During this call, Maria also stated that she had not received a monthly account statement. Debtors advised Ms. Thompson that the December payment was due on the account and verified that the correct mailing address is on account. The Debtors then advised her that a monthly account statement was mailed on November 4, 2008 and faxed a copy to her.

19. On January 5, 2010, the Debtors received a workout package from the Thompsons. On January 7, 2010, the Debtors denied the account for a HAMP modification because the Thompsons did not provide any verifiable income. The Debtors attempted to contact the Thompsons on January 11, 2010 to inform them of the denial, however, there was no answer.

20. The Debtors received a payment in the amount of $1,227.78 from the Thompsons on January 7, 2010; however, the Debtors received notification from the Thompsons' bank that there were insufficient funds in the Thompsons' account and as a result the payment was reversed off of the Thompsons' account on January 20, 2010.

21. On May 5, 2010, the Debtors spoke with Maria Thompson via phone, at which time Ms. Thompson asked why there is a late payment on her credit report. The Debtors advised

her that her January payment was received 35 days after the due date. At that time, Ms. Thompson requested that the Debtors amend her credit report, and the Debtors informed her it would not amend because it believed the information was accurate. The Debtors informed Ms. Thompson that if she believes the information is incorrect she can dispute the credit report with the credit bureau.

22.     On May 14, 2010, the Debtors received a letter from Maria Thompson disputing the way payments were posted to her account. The Debtors responded by providing Ms. Thompson with a payment history and a copy of the Repayment Plan and advised her that the Debtors had to continue reporting the status of her account to credit reporting agencies because her account was still delinquent and there was no agreement to amend her credit report.

23.     The Debtors received another workout package on September 10, 2010, but the Thompson Loan was denied for a HAMP modification on October 6, 2010 because the package included information showing that the property was non-owner occupied.

24.     The Debtors received information from the Newark City Tax Department on September 24, 2010 that the Thompsons were behind on their 2009 property taxes. The Debtors paid the delinquent taxes and added an escrow to the account. The escrow account had been added as part of the loan modification process, as escrows were required whenever a modification review was initiated. The Debtors removed the escrow after the loan modification was denied on October 6, 2010, but the amount from the delinquent taxes still needed to be paid by the Thompsons.

25.     On October 2, 2010, the Debtors spoke with Maria Thompson via phone. At that time, Ms. Thompson questioned why the escrow account was added. The Debtors advised Ms. Thompson that the escrow was added as part of the loan modification process. The Debtors

mailed a letter to Ms. Thompson on October 11, 2010 informing her that the escrow account had been removed because her request for a loan modification was denied, but that there was a shortage that needed to be paid due to the delinquent taxes and that the Debtors would permit the Thompsons to spread the payment of this amount over a twelve month period.

26. On December 2, 2010, the Debtors mailed Ms. Thompson a copy of the Thompson Mortgage to demonstrate that it permitted escrow to be added to protect the Thompson Property. On December 3, 2010, the Debtors spoke with Maria Thompson via phone. Ms. Thompson disputed the escrow being added to the account, stating that the taxes and insurance had already been paid. The Debtors spoke to Ms. Thompson again on December 6, 2010, at which time Ms. Thompson stated that she does not believe she needs to pay the escrow balance. The Debtors informed Ms. Thompson that the account will not be escrowed in the future, but that she still needs to pay the amount due for the shortage. Ms. Thompson also disputed the foreclosure from 2007 and the Debtors advised that it will review her account.

27. The Debtors sent an email to the Thompsons on December 7, 2010 advising them of the dates that the delinquent taxes were paid by the Debtors and added to the account, and that once the escrow balance is brought to zero the escrow account would be removed.

28. The Debtors again spoke to Maria Thompson on December 11, 2010 via phone, at which time Ms. Thompson asked for an update on the foreclosure dispute. The Debtors informed Ms. Thompson that it needed more time to review the account. Ms. Thompson also informed the Debtors that she was disputing the escrow on the account. The Debtors advised Ms. Thompson that they needed to pay the negative escrow balance in order to close the escrow account.

29. On December 30, 2010, the Debtors spoke to the Thompsons via phone, at which time the Thompsons again stated they were disputing the escrow payments due on the account.

The Debtors again advised the Thompsons that the Thompson Mortgage allows the escrow account to be added if necessary and also advised that it will mail the Thompsons a copy of the mortgage deed, which the Debtors did on January 5, 2011.

30. The Debtors received a letter from the Thompsons on January 7, 2011 regarding the escrow being added to their account. The Debtors responded to this letter on January 14, 2011. See January 14, 2011 Letter, attached to the Reply as Exhibit F. The Debtors inadvertently attached a note (for an unrelated borrower) to the letter. See id.

31. On January 25, 2011, the Debtors spoke to Maria Thompson via phone, at which time Ms. Thompson stated that payments made to the Debtors in September through November 2007 were not posted to the account. The Debtors advised Ms. Thompson to send bank statements indicating that the payments were made.

32. On April 19, 2011, the Debtors received a qualified written request (the "QWR") from the Thompsons. The Debtors responded to the QWR on May 9, 2011, in which the Debtors provided copies of the Thompson Note, Thompson Mortgage, HUD, and payment history and advised the Thompsons of assignment information.

33. On July 7, 2011, the Debtors referred the Thompsons' account to foreclosure because it was owing for the April through July 2011 payments.

34. On July 11, 2011, the Debtors received a payment from the Thompsons in the amount of $1,227.78 but returned the payment because it was not enough to bring the loan current. On July 15, 2011, the Thompsons spoke with the Debtors via phone, at which time the Debtors advised the Thompsons of the reason for the returned payment.

35. On July 16, 2011, the Debtors spoke with the Thompsons via phone, at which time the Thompsons stated that a representative of the Debtors had come to the Thompson

ny-1183095                                          9

Property to do an inspection and that this qualified as harassment. The Debtors explained that the purpose of the inspection was to ensure that the property was occupied and being maintained.

36. On July 21, 2011, the Debtors received a payment in the amount of $1,227.78 but returned the payment because it was not enough to bring the account current. The Debtors returned payments in the same amount received on August 5, August 11, August 17, September 6, September 12, September 15, September 21, September 23, September 27, September 28, October 3, October 6, October 10, October 13, and October 17, 2011 as the amount was not enough to bring the account current.

37. On April 24, 2012, the Debtors mailed a workout package to the Thompsons in response to a request by their third party representative. However, the Debtors never received a completed workout package from the Thompsons.

38. The Debtors mailed ARM adjustable rate letters to the Thompsons on December 24, 2009, June 23, 2010, December 24, 2010, June 23, 2011, December 26, 2011, June 26, 2012, and December 24, 2012, informing her of adjustments to her interest rate.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 18, 2015

/s/ Lauren Graham Delehey
Lauren Graham Delehey
Chief Litigation Counsel for the
ResCap Liquidating Trust