# EXHIBIT 23

# EXHIBIT 23

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA - RENO DIVISION

-oOo-

PAMELA D. LONGONI, individually
and as Guardian Ad Litem for
LACEY LONGONI and JEAN M. GAGNON,

      Plaintiffs,

                          Case No. 3:10-cv-00297-LRH(VPC)

  vs.

GMAC MORTGAGE, LLC, a Delaware limited
liability company, EXECUTIVE TRUSTEE
SERVICES, LLC, a Delaware limited liability
company, RESIDENTIAL FUNDING COMPANY, LLC, a
Delaware limited liability company, f/k/a
RESIDENTIAL FUNDING CORPORATION, a Delaware
Corporation, RESIDENTIAL ASSET MORTGAGE
PRODUCTS, INC., a Delaware Corporation,
ILLEANNA PETERSON, KATHLEEN GOWEN,
individuals, et al.,

      Defendants.

---

DEPOSITION OF

PAMELA LONGONI

Thursday, November 10, 2011

Reno, Nevada

Reported by: Lesley A. Clarkson, CCR #182

Job No. 147415

1   BY MR. BASHFORD:
2       Q    Why would you not have mentioned the conversation
3   about being told you had to go into default when asking for
4   a loan modification?
5       A    I don't know.
6       Q    Your statement in here in the second paragraph
7   says -- well, let's go through the whole letter.
8           "Please accept this letter as a request for a loan
9   modification regarding the above-referenced account."
10          Now, you had already had one loan modification; is
11  that correct?
12      A    Yes.
13      Q    Did you go into default before that one?
14      A    I don't think so.
15      Q    You didn't miss any payments?
16      A    I don't think so.  I can't recall.
17      Q    In the second paragraph, "Mr. Gagnon is currently
18  working as a police officer with the state of Nevada
19  required to cover all areas the state.  In August 2008
20  Mr. Gagnon was relocated to Las Vegas, Nevada, where he is
21  currently working.  This relocation has resulted in having
22  Mr. Gagnon and Miss Longoni having to facilitate the costs
23  associated with paying for two households and living
24  expenses.  Considering the recent economic decline and the
25  news from Nevada's governor that all state of Nevada

```
 1   employees will be experiencing a six percent pay cut, our
 2   residence located at 5540 Twin Creeks Drive in Reno, Nevada,
 3   is at risk of falling behind in payments."
 4          Was that the reason that you understood why you
 5   were at risk of falling behind in payments?
 6       A    Well, that our income wasn't going to be what it
 7   was, so yeah, that we would be at risk of falling behind.  I
 8   don't believe that we had fallen behind at that time until
 9   we were instructed to do so.
10       Q    Following that it says, "In fact we were unable to
11   make the mortgage payment for December 2008."
12       A    Yes.
13       Q    You didn't mention there that you were told not to
14   make it?
15       A    No.
16       Q    Why would you not have mentioned that?
17          MR. BEKO:  Objection, asked and answered.  Don't
18   answer it again.
19          THE WITNESS:  Okay.
20   BY MR. BASHFORD:
21       Q    What do you mean by you were unable to make the
22   mortgage payment for December 2008?
23       A    I don't know what I was, what was in my head at
24   the time of writing this letter, but I'm just assuming that
25   we did not make that payment of December of 2008 as an
```

1  attempt to try to get into the modification program.

2    Q    Could you not afford to make the mortgage payment
3  in December 2008?

4    A    I don't think that was the case at that time.
5  Things were becoming difficult with two households.

6    Q    But am I correct here that you -- you said you
7  were not able to make the mortgage payment.  Was that true?

8    A    I thought I explained that.  I can't recall our
9  situation at that time.  I just know that I made a huge
10  effort with Homecomings to try to work out something.

11    Q    I understand all that.  But I'm asking about the
12  specific language where you said you were not able to make
13  the mortgage payment.

14    MR. BEKO:  Well, I'll object to your question as a
15  description of the word she used.  But nevertheless, the
16  content is the same.

17  BY MR. BASHFORD:

18    Q    That you were unable to make the mortgage payment.
19  Is that -- did you have the money to make the mortgage
20  payment?

21    A    I would assume yes, we did.  But it was three
22  years ago.  I don't know what the circumstances were.

23    Q    I'm curious.  If you had the money to make the
24  mortgage payment, why would you tell Homecomings that you
25  were unable to make the mortgage payment?

12-12020-mg    Doc 8654-23    Filed 05/22/15    Entered 05/22/15 14:51:11    Exhibit
Exhibit 23    Pg 6 of 9
PAMELA LONGONI - 11/10/2011

Page 67

```
 1                  (Exhibit 69 marked.)
 2   BY MR. BASHFORD:
 3       Q    I'm going to hand you what I'm marking as Exhibit
 4   69.
 5            MR. BASHFORD:  And for the record, there is an
 6   Exhibit 40, there's a copy of this with no Bates number.
 7   I'm entering this one because it has the Longoni Bates
 8   number on it.
 9   BY MR. BASHFORD:
10       Q    Are you familiar with this document?
11       A    (Reviewing document.)
12            I have a copy of this.
13       Q    Do you know when you first saw a copy of this?
14       A    When I lost my home.
15       Q    Okay.  And how did you obtain a copy of this?
16       A    I believe that in August of 2009, I can't recall
17   how I got the copy, but it was in August of 2009 that I saw
18   a copy of it.
19            MR. BEKO:  I'm sorry.  You re-marked this with a
20   new number, not as 40, right?
21            MR. BASHFORD:  No, it's 69.
22            MR. BEKO:  Okay.  Thanks.
23   BY MR. BASHFORD:
24       Q    I'm going to hand you what has previously been
25   marked as Exhibit 47.  And is that the correct address in
```

1   the center?
2       A   Yes.
3       Q   Okay.  Can you read that on the bottom right hand
4   where it says return to sender, unclaimed?
5       A   Uh-huh.  Yes.  Sorry.
6       Q   Did you at any time refuse to accept a certified
7   mail in March of 2009?
8       A   No.
9       Q   Did you leave unclaimed a certified mail?
10      A   No.
11      Q   So do you dispute that this letter was unclaimed?
12      A   I never received this, so I don't know how it
13  could have been claimed.
14          MR. BEKO:  Well -- could you read the question
15  back?
16              (Record read.)
17          MR. BEKO:  I think, I don't think we dispute that.
18  Yeah, we are not saying that that was claimed.  Is that what
19  you are asking?  Do we dispute if it was unclaimed?
20          MR. BASHFORD:  I asked her if she disputed that it
21  was unclaimed, and you are now defining what you two are
22  saying.
23          MR. BEKO:  Well, I'm just -- our position is that
24  it was not claimed.  So I'm not quite sure, your question is
25  kind of like a triple negative.  Do you dispute that.

12-12020-mg   Doc 8654-23   Filed 05/22/15   Entered 05/22/15 14:51:11   Exhibit
Exhibit 23   Pg 8 of 9
PAMELA LONGONI - 11/10/2011

Page 69

```
 1              MR. BASHFORD:  Do you dispute that this was
 2   unclaimed?  The post office marked it unclaimed.
 3              MR. BEKO:  No.
 4              THE WITNESS:  Yeah, I'm not saying that --
 5              MR. BASHFORD:  And I'd appreciate it if you
 6   wouldn't instruct your client how to answer.
 7              MR. BEKO:  Well, I understand that, but I'm not so
 8   sure she's answering question that you are presenting.
 9              THE WITNESS:  I'm confused.
10              MR. BEKO:  We don't dispute it's unclaimed.
11              MR. BASHFORD:  Again, I'm looking for her
12   testimony.
13              MR. BEKO:  Understood.
14   BY MR. BASHFORD:
15       Q    Do you dispute that this letter was unclaimed?
16       A    No.
17       Q    I'm going to hand you what I've marked as 45.
18              MR. BEKO:  Could I get a copy of 47?  Oh, you used
19   the old one.  Okay, gotcha.
20   BY MR. BASHFORD:
21       Q    Same thing, is that the correct address?
22       A    Yes.  It's the same.
23            Same one, right?
24              MR. BEKO:  No, it's not, it's different.
25   //
```

```
                    CERTIFICATE OF REPORTER
STATE OF NEVADA,        )
                        ) ss.
COUNTY OF WASHOE.       )


          I, LESLEY A. CLARKSON, Certified Court Reporter
for the State of Nevada, do hereby certify:
          That on Thursday, November 10, 2011, at the
offices of Erickson, Thorpe & Swainston, 99 West Arroyo
Street, Reno, Nevada, I was present and took stenotype notes
of the deposition of PAMELA LONGONI, who personally appeared
and was duly sworn by me, and thereafter transcribed the
same into typewriting as herein appears;
          That the foregoing transcript is a full, true and
correct transcript of my stenotype notes of said deposition.
          I further certify that I am not a relative or
employee of an attorney or counsel of any of the parties,
nor a relative or employee of an attorney or counsel
involved in said action, nor a person financially
interested in the action.
          Dated at Reno, Nevada, this 18th day of November,
2011.

                              [signature: Lesley A. Clarkson]
                              _____
                              Lesley A. Clarkson, CCR #182
```