David F. Garber, Esq.
Florida Bar No.: 0672386
DAVID F. GARBER, P.A.
2800 Davis Boulevard, Suite 211
Naples, Florida 34104
239.774.1400 Telephone
239.774.6687 Facsimile
davidfgarberpa@gmail.com
Attorney for Claimant, Barry Mack

**Hearing Date : June 10, 2015 at 10:00a.m.**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: ) | Case No.: 12-12020 )MG) |
| ) |  |
| RESIDENTIAL CAPITAL, LLC, et al. ) | Chapter 11 |
| ) |  |
| Debtors. ) | Jointly Administered |
| ) |  |

**CREDITOR BARRY MACK'S PRETRIAL MEMORANDUM**

# TABLE OF CONTENTS

**PRETRIAL MEMORANDUM**

| | | | |
|---|---|---|---|
| I. | The Macks' Claims | | 5-6 |
| II. | Discussion | | 6-9 |
| III. | GMACM Defenses | | |
| | A. | Summary | 9 |
| | B. | Analysis | 10-12 |

# **TABLE OF AUTHORITIES**

<u>CASES</u>

*Benner v. Bank of America, N.A.*  10
    917 F.Supp.2d 338 (E.D. Pa. 2013)

*Berneike v. Citimortgage, Inc.*  10
    708 F.3d 1141(10th Cir. 2013)

*Campbell v. State of Fla.*  12
    906 So.2d 293, 295 (Fla. Dist. Ct. App. 2005)

*Catalan v. GMAC Mortgage Corp.*  8, 10, 11, 12
    629 F.3d 676 (7th Cir. 2011)

*Hittle v. Residential Funding Corp.*  8
    No. 2:13-cv-353 (S.D. Ohio Aug. 5, 2014)

*Holt v. Brown's Repair Serv., Inc.*  12
    780 So.2d 180 (Fla. Dist. Ct. App. 2001)

*Justice v. Ocwen Loan Serv.*  11, 12
    No. 2:13-CV-165 (S.D. Ohio January 16, 2015)

*McLean v. GMAC Mortg.*  9
    595 F. Supp. 2d 1360 (S.D. Fla. 2009)

*Nash v. Green Tree Servicing, LLC*  10
    943 F. Supp.2d (E.D. Va. 2013)

*O'Toole v U.S. Secretary of Agric.*  7
    474 F. Supp.2d 1323, 1329 (Ct. Int'l Trade 2007)

*Roth v. Citimortgage, Inc.*  10, 11
    756 F.3d 178 (2d Cir. 2014)

*Schneider v. Bank of America, N.A.*  11
    No. 2:11-cv-2953-LKK-EFB PS (E.D. Cal. Mar. 25, 2013)

*State St. Bank and Trust Co. v. Badra*  12
    765 So.2d 251, 253 (Fla. Dist. Ct. App. 2000)

*Whittaker v. Wells Fargo Bank, N.A.*  6
    No. 12-CV-98-Orl-28GJK (M.D. Fla. Oct. 22, 2014)

**STATUTES**

12 U.S.C. §2605(e)                                                                            6, 7, 8, 12

**PRETRIAL MEMORANDUM**

COMES NOW Creditor, BARRY MACK, by and through the undersigned counsel, and files his Pretrial Memorandum pursuant to the Court's Order Establishing Procedures for Evidentiary Hearing Regarding Claim Number 386 filed by Barry Mack, as follows:

**I.   THE MACKS' CLAIMS**

This claim arose from actions that took place in the fall of 2009 involving claimants Barry Mack and Cheryl Mack.  At that time, GMACM was the servicer of a residential loan that the Mack's procured on their house in Naples, Florida.  GMACM caused a foreclosure to be filed against the Mack's while they were in the process of completing an application for HAMP relief to have their monthly payments lowered.  The Macks were not in default on their loan at that time, or any time subsequent.  GMACM caused a foreclosure action to be filed against the Macks in the name of the note holder, Deutsche Bank, in August of 2009 and which they later attempted to dismiss in September of 2009.  The foreclosure was not dismissed until December of 2009, by which time the Macks had filed a counterclaim which survived dismissal of the foreclosure by GMACM/Deutsche Bank, and had contracted to sell their house at a fire sale price believing that foreclosure was imminent.

On October 26, 2009 the Macks sent a letter to GMACM requesting help in having the foreclosure suit filed by Deutsche Bank dismissed.  Neither GMACM, nor Deutsche Bank, ever responded to the letter. On November 11, 2009, Mrs. Mack, under pressure from the foreclosure suit and the threat of losing their house, as well as the failure of all attempts to resolve the issues,

5

including the failure of GMACM to respond to her letter, attempted suicide by taking an overdose of sleeping medication and alcohol and was hospitalized for four days.

The Macks now bring a claim against the bankruptcy estate of GMACM under the provisions of 12 U.S.C. § 2605 (e), which requires real estate mortgage servicers to respond to certain requests (QWRs) or suffer civil consequences. In order to prevail on such a claim, the claimant must show the following:

    A.    The defendant was a servicer as defined by 12 U.S.C. §2605 (RESPA).

    B.    The defendant received a qualified written request from the plaintiff as defined in that statute.

    C.    The qualified written request pertained to servicing of a loan.

    D.    The defendant failed to respond adequately to the qualified written request.

    E.    The plaintiff is entitled to actual or statutory damages.

See, *Whittaker v. Wells Fargo Bank, N.A.*, No. 12-CV-98-Orl-28GJK (M.D. Fla. Oct. 22, 2014).

All these actions took place in Naples, Florida where the Macks resided and where the house on which the mortgage was placed was located.

## II. DISCUSSION

    A.    **The defendant was a servicer as defined by 12 U.S.C. §2605 (RESPA).** Evidence that GMAC was in fact a servicer as envisioned under RESPA will be shown from correspondence sent by GMACM to the Macks and, internal documents of GMACM including "purged loan notes". Further, by admissions by GMACM in this proceeding, in the pretrial order and elsewhere. Further evidence will be shown by the testimony of Barry Mack and the

deposition of Cheryl Mack. Therefore, GMACM was a servicer of the Mack loan as defined by 12 U.S.C. §2605(e).

B.     **The defendant received a qualified written request from the plaintiff as defined in that statute.** Claimants MACK will prove that they sent a qualified written request (QWR) to servicer GMACM in October of 2009 by producing a copy of the correspondence, by the testimony of Barry Mack, by the deposition of Cheryl Mack, and by the testimony of Jewel DeMore. While there is no evidence from GMACM's side that the letter was received, nevertheless the Macks will rely upon what has been referred to as the "mailbox rule". See, *O'Toole v U.S. Secretary of Agric.*, 474 F. Supp.2d 1323, 1329 (Ct. Int'l Trade 2007) (a presumption of receipt arises when correspondence is sent by ordinary U.S. mail). Therefore, GMACM is presumed to have received the October 26, 2009 letter from the Macks to GMACM.

C.     **The qualified written request pertained to servicing of a loan.** The evidence that the letter of October 26, 2009 from the Macks to GMACM related to the servicing of the loan is found in the letter itself which refers to the loan and identifies the loan. The content of the letter shows the continued frustration and anxiety of the Macks in being sued by Deutsche Bank, an entity unknown to them, for foreclosure on a loan for which they were current. This is further bolstered by referral to the purged loan notes produced in this proceeding and elsewhere by GMACM showing multiple telephone conversations between GMACM and the Macks over the lawsuit filed by Deutsche Bank, an entity then unknown to the Macks. This will further be bolstered by the deposition of Cheryl Mack and the testimony of Barry Mack and Jewel DeMore as to the letter and their telephone contacts with GMACM. The letter identified the Macks by name and by account number and since the letter complained of the foreclosure pending against them even though they were current on their loan by an entity unknown to them, Deutsche Bank,

7

it pertained to the servicing of this loan and met the requirements of 12 U.S.C. §2605(e)(1)(A) and (B) to be a QWR.

D. **The defendant failed to respond adequately to the qualified written request.**

The fact that GMACM failed to respond to the QWR will be shown by the testimony of Barry Mack and Jewel DeMore, the depositions of April 4, 2012 and November 16, 2011 of Cheryl Mack, the admissions of GMACM in the pretrial order of February 20, 2015, the notice of dismissal filed December 8, 2009 by GMACM/Deutsche Bank, the closing documents from the sale of the Mack's property on February 1, 2010, and a copy of the check ultimately reimbursing the Macks for the foreclosure charges assessed against them on the wrongful foreclosure. Mrs. Mack attempted suicide after her last attempt to derail the foreclosure by the Mack letter of October 26, 2009 produced no response from GMACM. GMACM was under a duty pursuant to 12 U.S.C. § 2605(e) to reasonably investigate and correct its mistake in filing the foreclosure. See, *Hittle v. Residential Funding Corp.*, No. 2:13-cv-353 (S.D. Ohio Aug. 5, 2014); and *Catalan v. GMAC Mortgage Corp.*, 629 F.3d 676 (7th Cir. 2011). GMACM's failure to reasonably investigate and correct the wrongful foreclosure as mandated by 12 USC §2506(e) was aggravated considering the numerous acknowledged earlier telephone calls to GMACM by the Macks and further by GMACM's insistence that DB was the prevailing party in the foreclosure, and that the Macks must pay the costs of foreclosure as the losing party before the mortgage would be released in the sale of the property on February 1, 2010.

E. The Macks will show they are entitled to actual damages upon the submission of the medical file of Cheryl Mack and Barry Mack, including those files from Dr. Lichi and his letter of December 1, 2009, as well as the deposition of Cheryl Mack, the testimony of Barry Mack, and the testimony of Jewel DeMore. Cheryl Mack's earlier condition of chronic renal

8

failure was seriously aggravated not only by the anxiety she felt by the failure of GMACM to respond to her October 26, 2009 letter, but by the overdose of Ambien and alcohol she took on November 10, 2009 upon GMACM's failure to respond to her letter of October 26, 2009, and led to serious and permanent increased renal injury.

Barry Mack was, as a direct consequence of GMACM's failure to respond to the October 26, 2009 letter to conduct a reasonable and appropriate investigation, directly and adversely affected by seeing his wife suffer from her suicide attempt of November 10, 2009 and her subsequent decline in health resulting in her enrollment in Hospice and ultimate death in 2013, not only caused his grief and anxiety, but also affected his health. The damages are recognized as actual damages envisioned under RESPA. See, *McLean v. GMAC Mortg.*, 595 F. Supp. 2d 1360 (S.D. Fla. 2009).

## II.    GMACM DEFENSES

### A.    SUMMARY

GMACM has alluded to several defenses by which they deny liability in this action. They can be identified as follows:

1.    The letter the Macks sent on October 26, 2009 was not addressed to the location designated by GMACM for receipt of QWRs.

2.    The Macks suffered little or no damage after December 26, 2009 (60 days after the letter was sent).

3.    The Macks claim now is barred by res judicata since the Macks already brought suit against Deutsche Bank for RESPA violations as a counterclaim to the foreclosure suit against them by Deutsche Bank in 2009.

B. ANALYSIS

1. **The letter the Macks sent on October 26, 2009 was not addressed to the location designated by GMACM for receipt of QWRs.** GMACM asserts that in order for the letter of October 26, 2009 to be considered a qualified written request, it must have been sent to the address designated by GMACM for receipt of such requests. GMACM will rely on copies of the monthly billing statements to the Macks to show they designated PO Box 1330 as the designated address to which all QWRs should be sent. They will cite to the cases of *Roth v. Citimortgage, Inc.*, 756 F.3d 178 (2d Cir. 2014) and *Berneike v. Citimortgage, Inc.*, 708 F.3d 1141(10th Cir. 2013) for support that a letter which might otherwise qualify as a qualified written request will not be deemed so unless it is sent to the correct address. Claimants MACK will counter this by citing the cases of *Benner v. Bank of America, N.A.*, 917 F.Supp.2d 338 (E.D. Pa. 2013) and *Nash v. Green Tree Servicing, LLC*, 943 F. Supp.2d (E.D. Va. 2013) which indicate that whether or not a letter should be considered a QWR upon being sent to an address designated by the servicer is a question of fact and that in this case, the letter they sent was to an address designated by GMACM for general inquiries, which was GMAC Mortgage, Attn: Customer Care, P.O. Box 4622,Waterloo Iowa 50704, whereas in the monthly billing statement to the Macks, GMAC stated any QWR must be sent to GMAC Mortgage, Attn: Customer Care, P.O. Box 1330, Waterloo, Iowa 50704, that the only deviation between the two addresses was the post office box number. The Macks do not know whether or not the mail from the two post office boxes is treated differently, but it is expected that the witness for GMACM will provide insight into this.

RESPA is a consumer-oriented protection statute *Catalan v. GMAC Mortgage Corp.*, 629 F.3d 676 (7th Cir. 2011). While regulations allow a servicer to designate an address for QWRs

to be sent to *Roth v. Citimortgage, Inc.*, 756 F.3d 178 (2d Cir. 2014), this requires a level of sophistication from the average homeowner as to what a QWR is and what the legal implications are for sending one. Such an interpretation might be justified for an attorney acting on behalf of a homeowner, but if applied to the homeowner himself, would effectively eliminate consideration of the statute as a consumer-oriented statute. The Macks sent their letter of October 26, 2009 not knowing what a QWR was. The homeowner is not required to intend to send a QWR, only that the communication meet the requirements of the statute. See, *Catalan*, 629 F.3d at 676. When GMACM failed to respond within 60 days, they became liable for all the Macks' "actual damages" ensuing after the October 26, 2009 QWR, even if before the 60-day response time. See, *Justice v. Ocwen Loan Serv.* No. 2:13-CV-165 (S.D. Ohio January 16, 2015); *Schneider v. Bank of America, N.A.*, No. 2:11-cv-2953-LKK-EFB PS (E.D. Cal. Mar. 25, 2013).

        2.      **The Macks suffered little or no damage after December 26, 2009 (60 days after the letter was sent).** GMACM will further defend by alleging the Macks suffered no damages before the statutory response date of 60 days from the date of the QWR of October 26, 2009, or after that date. This defense will be countered by the testimony of Barry Mack, and the deposition of Cheryl Mack, as well as the evidence showing through the closing statements from the sale of the Mack's house, the ultimate check payment to the Macks from GMACM reimbursing foreclosure costs, and the notice of dismissal that GMACM/Deutsche Bank maintained they were the prevailing party in the foreclosure suit, that they demanded to be paid for the cost of filing the suit, that they would not release the mortgage that they had on the Mack's Naples property at the time that it was sold in February 2010 unless they were paid that money, and the Macks were not refunded that money until 2012. GMACM was under a duty to

11

reasonably investigate the Macks' foreclosure complaint (*Justice v. Ocwen Loan Serv.* No. 2:13-CV-165 (S.D. Ohio January 16, 2015) and take corrective action (*Catalan*, 629 F.3d at 676). A failure to respond appropriately leaves GMACM liable for all actual damages incurred by the Macks after the QWR, even though occurring before the 60-day response time. *Justice v. Ocwen Loan Serv.* No. 2:13-CV-165 (S.D. Ohio January 16, 2015). Further, GMACM is not entitled to the "safe harbor" provisions of 12 U.S.C. § 2605(f) because it did not make whatever adjustments were necessary to correct the situation. *Catalan*, 629 F.3d at 676.

        3.     **The Macks claim now is barred by res judicata since the Macks already brought suit against Deutsche Bank for RESPA violations as a counterclaim to the foreclosure suit against them by Deutsche Bank in 2009.** GMACM will further defend by attempting to show the Court that this claim is precluded under the doctrine of res judicata. They will base their defense on the points of law raised in their Objection of April 9, 2014, and the Macks will respond with the law that it relied upon in defending against that claim in their response to GMACM's objection to the Mack's claim of May 2014. See, *Holt v. Brown's Repair Service, Inc.*, 780 So.2d 180 (Fla. Dist. Ct. App. 2001); *Campbell v. State of Fla.*, 906 So. 2d 293, 295 (Fla. Dist. Ct. App. 2004); *State St. Bank &. Trust Co. v. Badra*, 765 So. 2d 251, 254 (Fla. Dist. Ct. App. 2000). The Macks assert that only a servicer can be liable under RESPA. (See, *Pasillas v. Deutsche Bank Nat'l Trust Co., 5:12-CV-04123-LHK* (N.D. Cal. 2014)) and the action in Florida does not preclude this claim because Deutsche Bank was not a servicer, and was not sued for a violation of 12 U.S.C. § 2605(e) which imposes duties upon a receipt of a QWR.

      DATED this 27th day of May, 2015.

/s/ David F. Garber
David F. Garber, Esq.
Florida Bar No.: 0672386

DAVID F. GARBER, P.A.
2800 Davis Boulevard, Suite 211
Naples, Florida 34104
239.774.1400 Telephone
239.774.6687 Facsimile
davidfgarberpa@gmail.com
