RECEIVED

MAY 2 6 2015

U.S. BANKRUPTCY COURT, SDNY

Michael E. Boyd
5439 Soquel Drive
Soquel, CA 95073
Phone: (408) 891-9677
E-mail: michaelboyd@sbcglobal.net
*In Pro Per*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

# OPPOSITION OF BOYD TO RESCAP LIQUIDATING TRUST MOTION
# TO FURTHER EXTEND THE DATE BY WHICH OBJECTIONS TO
# CLAIMS MUST BE FILED AS TO BOYD CLAIM 960

On behalf of and as Trustee to my living trust estate, the Michael Boyd and Patricia Paramoure Living Trust, Michael Boyd, respectfully files this Answer in Opposition to the *ResCap Liquidating Trust* Motion to Further Extend the Date by Which Objections to Claims Must be Filed [Docket No. 8618]" as to further objections to his claim 960.

On May 14, 2015, the ResCap Liquidating Trust filed its Motion to Further Extend the Date by Which Objections to Claims Must be Filed (the "Motion"). The Motion states the basis of the extension request at 17 [page 9 to 10 Doc. 8618] "Both the Liquidating Trust and the Borrower Claims Trust require additional time to continue their claims reconciliation processes. The Liquidating Trust believes that extending the Claims Objection Deadline to March 15, 2016 will allow it and the Borrower Claims Trust to dedicate the necessary time and resources toward reviewing, objecting to, settling, satisfying, or otherwise resolving claims. *This extension should not prejudice claimants; to the contrary, creditors should ultimately receive greater distributions* if both the Liquidating Trust and the Borrower Claims Trust are given the opportunity to review, negotiate, and, where appropriate, seek to expunge or reduce those Claims that are improperly filed or unsubstantiated. During this extension, the Liquidating Trust and the Borrower Claims Trust will attempt to reach the consensual resolution of the Unresolved Claims, or, if necessary, seek to disallow certain Unresolved Claims." As to claimant this statement is clearly false.

1   Additionally the Debtors in this case are parties to a consent agreement with the federal
2   government Case 1:12-cv-00361-RMC Document 13 filed 04/04/12 that Plaintiff believes are
3   relevant to Claimant's claim here because according to the Affidavit of William J. Paatalo, whose
4   expert analysis states in regard to, ResCap's [Aka the Government's] proof of claims before this
5   bankruptcy Court, it states [see Affidavit of William J. Paatalo page 4 line 25 to page 5 line 11.]
6   "Furthermore, the Notes for each loan that were attached to the proof of claims during the Boyd
7   Bankruptcy (U.S. BK. Ct. No. Dist. CA – Case No. 11-61311-SLJ) do not contain endorsements
8   as required in the HVMLT 2007-4 Trust Agreement, as no endorsements appear on the 'face' of
9   either document. Dubious endorsements, one of which is illegible, are provided on blank sheets of
10  paper that have no connection to the notes. .. b. The Boyd debts, which appear in 'Bankruptcy'
11  status as of 10/14/2014 within the HVMLT 2007-4 Trust are not in default. All payments 'due' on
12  the debts are being timely paid to, and received by, the certificate holders /investors in the
13  HVMLT 2007-4 Trust during the pendency of the Boyd bankruptcy".

14
15
16  Document 13 states at page 250 Exhibit F-29 "(11) Notwithstanding any other term of this
17  Release, the following claims of the United States are specifically reserved and are not released: "
18  and at page 251 Exhibit F-30 "(e) Any and all claims whether legal or equitable, in connection
19  with investors or purchasers in or of securities or based on the sale, transfer or assignment of any
20  interest in a loan, mortgage, or security to, into, or for the benefit of a mortgage-backed security,
21  trust, special purpose entity, financial institution, investor, or other entity, including but not
22  limited to in the context of a mortgage securitization or whole loan sale to such entities
23  ("Securitization/Investment Claims"). Securitization/Investment Claims include, but are not
24  limited to, claims based on the following, all in connection with investors or purchasers in or of
25  securities or in connection with a sale, transfer, or assignment of any interest in loan, mortgage or
26  security to, into, or for the benefit of a mortgage-backed security, trust, special purpose entity,
27  financial institution, investor, or other entity:" Going to specifically identified reserved actions by
28  debtors at page 252 Exhibit F-31  to include "(v) Activities related to the executing, notarizing,
29  transferring or recording of mortgages; *the endorsement or transfer of a loan*; and the obtaining,
30  executing, notarizing, transferring or recording of assignments; (vi) Obtaining, securing,
31  updating, transferring, or *providing promissory notes or endorsements* of promissory notes
32  through allonges or otherwise;" Exhibit F is provided as a separate attachment herein that

-2-

Claimant ask be incorporated by reference herein. Base on the terms of the consent agreement it appears debtors are in breach of its terms specifically in Claimant's case regarding their Dubious endorsements.

After the Trust's second unsuccessful attempt to seek the court to sustain its objections to claimant's claims, it should be clear to this court that for the court to allow a third attempt as regards claimant is with extreme prejudice to claimant, and on that basis we object to the Trust's Motion for any further extensions as to my claim 960.

Wherefore Claimant 960 respectfully requests the extension Motion be denied as to Claimant.

/s/   Michael E. Boyd
Michael E. Boyd
5439 Soquel Drive
Soquel, CA 95073
Phone: (408) 891-9677
E-mail: michaelboyd@sbcglobal.net

DATED: May 23, 2015

### Affidavit of Michael Boyd

I affirm under penalty of perjury that the above is true and correct.  Executed on May 23, 2015 at Soquel, California.

/s/   Michael E. Boyd
Michael E. Boyd
5439 Soquel Drive
Soquel, CA 95073
Phone: (408) 891-9677
E-mail: michaelboyd@sbcglobal.net

# EXHIBIT G

# EXHIBIT F

**FEDERAL RELEASE**

This Federal Release ("Release") is entered into among the United States of America, its

agencies, and departments (collectively, "the United States"), acting through the United States

Department of Justice, and Ally Financial, Inc. (the "COMPANY") (hereafter the United States

and the COMPANY are collectively referred to as "the Parties"), through their authorized

representatives.

RECITALS

A.    The COMPANY is a Delaware corporation headquartered in Detroit, Michigan.

B.    The COMPANY is a financial holding and a bank holding company.  The

COMPANY, either through its own operations or through the operations of its affiliates and

subsidiaries, serves, and during the relevant period served: (1) as a participant in the Direct

Endorsement Lender program of the Federal Housing Administration (FHA) within the United

States Department of Housing and Urban Development (HUD); (2) as a mortgagee or servicer

for mortgages insured or guaranteed by federal mortgage programs administered by agencies that

include FHA, the United States Department of Veterans Affairs (VA), and the United States

Department of Agriculture Rural Development; (3) as a participating servicer in the Making

Home Affordable Program (MHA) (including MHA's component program, the Home Affordable

Modification Program (HAMP)) of the United States Department of the Treasury (Treasury) and

HUD, and as a participant in various state programs of the Housing Finance Agency Innovation

Fund for the Hardest Hit Housing Markets (HHF); and (4) as an entity that litigates single-family

residential mortgage issues in U.S. Bankruptcy Courts in capacities that include commencing and

pursuing or supporting litigation commenced against mortgagors and other debtors.

C.     The United States contends that it has certain civil claims based on conduct of the
COMPANY and its affiliated entities in servicing of mortgage loans (the "Covered Servicing
Conduct"). Such Covered Servicing Conduct encompasses all activities of the COMPANY, of
any affiliated entity during or prior to such time as it was an affiliated entity, and all of the
current or former officers, directors, employees and agents of any of the foregoing, directed
toward servicing (including subservicing and master servicing), whether for their own account or
for the account of others, of mortgage loans for single-family residential homeowners (which
includes loans secured by one- to four-family residential properties, whether used for investor or
consumer purposes), whether in the form of a mortgage, deed of trust or other security
instrument creating a lien upon such property or any other property described therein that secures
the related mortgage loan ("single-family residential mortgage loans") from and after the closing
of a borrower's mortgage loan and includes, but is not limited to, the following conduct:

(1)     Deficiencies in performing loan modification and other loss mitigation
activities, including extensions, forbearances, short sales and deeds in lieu of foreclosure, setting
the qualifying criteria for any of the foregoing and/or setting the terms and conditions for any of
the foregoing;

(2)     Deficiencies in foreclosing on single-family residential mortgage loans or
acquiring title in lieu of foreclosure, including the designation and identity of the foreclosing
party, the timing of foreclosures, transfer of legal or beneficial ownership to the mortgage loan
and/or the related servicing rights or obligations, the charging of any fees, the preparation,
contents, execution, notarization or presentation of any documents filed with or submitted to a

F-2

court or any government agency, or otherwise used as part of the foreclosure process (including, but not limited to, affidavits, declarations, certifications, substitutions of trustees, and assignments) and dual-tracking foreclosure and loan modification activities, and communications with borrowers in respect of foreclosure;

(3)     Other deficiencies in servicing single-family residential mortgage loans relating to:

(a)     Collections activity, including all contact with borrowers (e.g., telephone calls, letters, and in-person visits) in respect of such activities;

(b)     Practices relating to paying or failing to pay taxes (including property taxes), hazard insurance, forced-place insurance, and homeowner association dues or other items provided for in a mortgage loan escrow arrangement (including making or failing to make such payments), including obtaining or maintaining insurance and advancing funds to pay therefor and the creation and maintenance of such escrow accounts;

(c)     Use or supervision of vendors, agents and contract employees, and their activities in connection with creation and recording of assignments, servicing, foreclosure, and loss mitigation activities, including subservicers, foreclosure and bankruptcy attorneys, and other default service providers, and pursuit of claims against vendors and other third parties for failure of such third parties to comply with contractual or other obligations;

(d)     Activities related to the executing, notarizing, transferring or recording of mortgages; the obtaining, executing, notarizing, transferring or recording of

assignments; or activities related to the use of any mortgage registry system, including MERS, and including the transferring of mortgages or assignments using MERS;

(e)     Account statements, disclosures, and/or other communications to borrowers; unintentional reporting errors regarding activities that, but for this Paragraph, would be Covered Servicing Conduct, and unintentional remittance errors that are cured;

(f)     Maintenance and placement of loan-level and pool-level mortgage insurance and guarantees, hazard insurance, flood insurance, title insurance, and other insurance related to mortgage loans and related properties, including claims activity;

(g)     Handling and resolution of inquiries, disputes and complaints by or on behalf of borrowers and frequency and adequacy of communications with borrowers;

(h)     Securing, inspecting, repairing, maintaining, or preserving properties both before and after foreclosure or other acquisition of title;

(i)     Adequacy of staffing, training, systems and processes, including maintenance and security of access to records relating to servicing, foreclosure, bankruptcy, property sale and management and activities related or ancillary thereto;

(j)     Determinations in respect of the appropriate actions of obtaining value for mortgage loans, including whether to pursue foreclosure on properties, whether to assert or abandon liens and other claims and actions taken in respect thereof, and whether to pursue a loan modification or any particular loan modification or other form of loss mitigation;

(k)     Acceptance, rejection, application, or reporting of payments made on behalf of borrowers, including the assessment of any fees and placement of the payment(s) in a suspense account;

(l)     Obtaining, securing, updating, transferring, or providing promissory notes or endorsements of promissory notes through allonges or otherwise;

(m)     Licensing or registration of employees, agents, or contractors, or designation of employees as agents for another entity, through corporate resolutions or Powers of Attorney or otherwise;

(n)     Pursuing claims post foreclosure, including seeking deficiency judgments;

(o)     Eviction notices, registrations of vacant properties, and any activity relating to the sale or disposition of foreclosed or acquired properties (including Real Estate Owned properties), including management of such properties and proceedings related to such properties;

(p)     Executing, notarizing, or recording any documents related to the sale of acquired properties, including the warranty deeds and closing documents;

(q)     Custodial and trustee functions related to the Covered Servicing Conduct;

F-5

(r)    Quality control, quality assurance or compliance or audit testing or oversight related to the Covered Servicing Conduct; for avoidance of doubt, quality control or compliance reviews associated with the origination, sale, or securitization of mortgage loans does not constitute Covered Servicing Conduct;

(s)    Reporting, certification or registration requirements related to any of the Covered Servicing Conduct; and

(t)    Communications with borrowers with respect to the Covered Servicing Conduct.

(4)    Deficiencies in the COMPANY's or any of its affiliates' participation in and implementation of the Hardest Hit Fund Program and Making Home Affordable Program, including all of its component programs (e.g., HAMP, 2MP, HAFA, UP, PRA-HAMP, FHA-HAMP, FHA2LP, and RD-HAMP).

D.    The United States further contends that it has certain civil claims based on the conduct of the COMPANY and its affiliated entities in originating mortgage loans (the "Covered Origination Conduct"). Such Covered Origination Conduct consists of all activities of the COMPANY, of any affiliated entity during or prior to such time as it was an affiliated entity, and all of the current or former officers, directors, employees, and agents of any of the foregoing, directed toward directly or indirectly originating, assisting in the origination of, or purchasing single-family residential mortgage loans and excludes conduct occurring following the closing of

F-6

the borrower's mortgage loan that is otherwise covered as the Covered Servicing Conduct. Such Covered Origination Conduct includes, but is not limited to, the following conduct:

(1)    Submitting loans for insurance endorsement and claims for insurance benefits for FHA loans that the COMPANY or any affiliated entity during or prior to such time as it was an affiliated entity endorsed or underwrote as a participant in the FHA's Direct Endorsement Program that failed to meet any applicable underwriting requirements, including those set forth in the applicable version of the HUD Handbook 4155.1, as supplemented by relevant mortgagee letters, all as of the time of origination;

(2)    Submitting loans for insurance endorsement or claims for insurance benefits for FHA loans that the COMPANY or any affiliated entity during or prior to such time as it was an affiliated entity endorsed or underwrote as a participant in the FHA's Direct Endorsement Program while failing to implement applicable quality control measures; and

(3)    Other deficiencies in originating single-family residential mortgage loans relating to:

(a)    Processing, underwriting, closing, or funding of loans and the terms and conditions of such loans;

(b)    Approving or denying loan applications;

(c)    Pricing of loans, including the charging and splitting of any fee or discount points;

(d)    Recommendations of particular types of loan products, loan features or terms and conditions of any loan;

(e)    Valuing the properties used as collateral for such loans, including use of employee, independent and vendor management appraisers and alternative valuation methods such as AVMs and BPOs;

(f)    Use of vendors, including vendor management companies and other providers of real estate settlement services, whether affiliated or unaffiliated;

(g)    Payment of fees or other things of value in connection with the making or receiving of referrals of settlement and other services;

(h)    Conduct of any vendors used in connection with the origination of loans, including, but not limited to, closing agents, appraisers, real estate agents, title review, flood inspection, and mortgage brokers;

(i)    Drafting of loan documents and loan disclosures and the provision of such disclosures;

(j)    Obtaining and recording of collateral documents relating to loans, including, but not limited to, use of trustees or designees on mortgages or deeds of trust;

(k)    Advertising of loans and solicitation of borrowers;

(l)    Licensing, registration, qualifications or approvals of employees in connection with the Covered Origination Conduct; and

F-8

(m)   Quality control, quality assurance or compliance or audit testing or oversight related to the Covered Origination Conduct.

E.   The United States further contends that it has certain civil claims based on the COMPANY's servicing, including servicing by any affiliated entity during or prior to such time as it was an affiliated entity, and by any of the COMPANY's or such affiliated entities' current or former officers, directors, employees, and agents, of loans of borrowers in bankruptcy (the "Covered Bankruptcy Conduct"). Such Covered Bankruptcy Conduct includes, but is not limited to, the following conduct:

(1)   Deficiencies in servicing residential mortgage loans for borrowers in bankruptcy relating to:

(a)   The preparation, prosecution, documentation, substantiation, or filing of proofs of claim, motions seeking relief from the automatic stay, objections to plan confirmation, motions to dismiss bankruptcy cases, and affidavits, declarations, and other mortgage-related documents in bankruptcy courts;

(b)   Charging and timing of fees and expenses, including any fees or expenses assessed to the borrower due to delay while the bankruptcy court reviews a pending request for loan modification or delay by the Chapter 13 trustee to timely remit the borrower's payments;

(c)   Use or disclosure of escrow accounts, including any advances on borrower's behalf;

F-9

(d)     Account statements, disclosures, and/or other communications to

borrowers, including: (i) assessing, imposing, posting, or collecting fees and charges; (ii)

disclosure of fees and charges assessed, imposed or posted during the bankruptcy case; and (iii)

collection of undisclosed post-petition fees and charges after the borrower receives a discharge,

the COMPANY obtains relief from the automatic stay, or the bankruptcy case is dismissed;

(e)     Adequacy of staffing, training, systems, and processes relating to

administering and servicing loans for borrowers in bankruptcy;

(f)     Use or supervision of vendors and contract employees, including

Lender Processing Services, Inc., bankruptcy attorneys and other default service providers;

(g)     Pursuit of or failure to pursue claims against vendors and other

third parties for failure of such third parties to comply with contractual or other obligations; and

(h)     Handling and resolution of inquiries, disputes or complaints by or

on behalf of borrowers, and frequency and adequacy of communications with borrowers in

bankruptcy.

(2)     Deficiencies in accounting for, processing, approving and administering

loan modifications for borrowers in bankruptcy relating to:

(a)     Charging late fees or seeking arrearages while a trial period

modification plan or permanent loan modification plan is in place and borrower is timely making

payments under the terms of the loan modification plan;

F-10

      (b)    Seeking relief from the automatic stay when the COMPANY has approved a trial period or permanent loan modification plan and borrower is timely making payments under the terms of the loan modification plan; and

      (c)    Delays in approving or finalizing the documentation necessary to the approval of loan modifications for borrowers in bankruptcy.

F.    This Release is neither an admission of liability of the allegations of the Complaint or in cases settled pursuant to this Consent Judgment, nor a concession by the United States that its claims are not well-founded.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of the Consent Judgment, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

      (1)    The COMPANY and/or its affiliated entities shall pay or cause to be paid, for the purposes specified in the Consent Judgment, the amount specified in Paragraph 3 of the Consent Judgment ("Direct Payment Settlement Amount") by electronic funds transfer no later than seven days after the United States District Court for the District of Columbia enters the final non-appealable Consent Judgment (the "Effective Date of the Consent Judgment") pursuant to written instructions to be provided by the United States Department of Justice. The COMPANY and/or its affiliated entities shall also undertake, for the purposes specified in the Consent Judgment, certain consumer relief activities as set forth in Exhibit D to such Consent Judgment

and will be obligated to make certain payments (the "Consumer Relief Payments") in the event

that it does not or they do not complete the Consumer Relief Requirements set forth in Exhibit D

to the Consent Judgment. The releases contained in this Release shall become effective upon

payment of the Direct Payment Settlement Amount. The United States may declare this Release

null and void with respect to the United States if the COMPANY or its affiliated entities do not

make the Consumer Relief Payments required under this Consent Judgment and fails to cure

such non-payment within thirty days of written notice by the United States.

(2)

(a)    Subject to the exceptions in Paragraph 11 (concerning excluded

claims) below, the United States fully and finally releases the COMPANY and any current or

former affiliated entity (to the extent the COMPANY retains liabilities associated with such

former affiliated entity), and any of their respective successors or assigns, as well as any current

or former director, current or former officer, and current or former employee of any of the

foregoing, individually and collectively, from any civil or administrative claims the United States

has or may have, and from any civil or administrative remedies or penalties (expressly including

punitive or exemplary damages) it may seek or impose, based on the Covered Servicing Conduct

that has taken place as of 11:59 p.m., Eastern Standard Time, on February 8, 2012 (and, for the

avoidance of doubt, with respect to FHA-insured loans, whether or not a claim for mortgage

insurance benefits has been or is in the future submitted), under the Financial Institutions Reform,

Recovery, and Enforcement Act ("FIRREA"), the False Claims Act, the Racketeer Influenced and

Corrupt Organizations Act, the Real Estate Settlement Procedures Act, the Fair Credit Reporting

Act, the Fair Debt Collection Practices Act, the Truth in Lending Act, the Interstate Land Sales

Full Disclosure Act, 15 U.S.C. § 1691(d) ("Reason for Adverse Action") or § 1691(e)

("Appraisals"), sections 502 through 509 (15 U.S.C. § 6802-6809) of the Gramm-Leach Bliley

Act except for section 505 (15 U.S.C. § 6805) as it applies to section 501(b) (15 U.S.C. §

6801(b)), or that the Civil Division of the United States Department of Justice has actual and

present authority to assert and compromise pursuant to 28 C.F.R. § 0.45.

       (b)     Subject to the exceptions in Paragraph 11 (concerning excluded

claims) below, the United States fully and finally releases the COMPANY and any current or

former affiliated entity (to the extent the COMPANY retains liabilities associated with such

former affiliated entity), and any of their respective successors or assigns, as well as any current

or former director, current or former officer, or current or former employee of any of the

foregoing, individually and collectively, from any civil or administrative claims the United States

has or may have, and from any civil or administrative remedies or penalties (expressly including

punitive or exemplary damages) it may seek or impose, based on the Covered Origination

Conduct that has taken place as of 11:59 p.m., Eastern Standard Time, on February 8, 2012, under

the Real Estate Settlement Procedures Act, the Fair Credit Reporting Act, the Truth in Lending

Act, 15 U.S.C. § 1691(d) ("Reason for Adverse Action") or § 1691(e) ("Appraisals"), or the

Interstate Land Sales Full Disclosure Act.

       (c)     Subject to the exceptions in Paragraph 11 (concerning excluded

claims) below, the United States fully and finally releases the COMPANY and any current or

former affiliated entity (to the extent the COMPANY retains liability associated with such former

F-13

affiliated entity), and any of their respective successors or assigns, as well as any current or

former director, current or former officer, and current or former employee of any of the foregoing,

individually and collectively, from any civil or administrative claims the United States has or may

have, and from any civil or administrative remedies or penalties (expressly including punitive or

exemplary damages) it may seek to impose under FIRREA based on the Covered Origination

Conduct only to the extent that:

      (i)      such claim is (A) based upon false, misleading or

fraudulent representations  (or a scheme to defraud consisting solely of such a

false, misleading or fraudulent representation) made by the COMPANY or

affiliated entity as of 11:59 p.m., Eastern Standard Time, on February 8, 2012, to

a borrower in connection with the COMPANY's or affiliated entity's making of a

residential mortgage loan to such borrower; or (B) an action pursuant to 12 U.S.C.

§ 1833a(c)(2) in which the action is consisting solely of the allegation that the

COMPANY or one of its affiliated entities made a false statement or

misrepresentation (or engaged in a scheme to defraud based solely upon such a

false statement or misrepresentation) to the COMPANY or another affiliated

entity, as of 11:59 p.m., Eastern Standard Time, on February 8, 2012, in

connection with the COMPANY's or affiliated entity's making of a residential

mortgage loan to a borrower; and

      (ii)     (A) the only federally insured financial institution that was

affected by the statement or misrepresentation (or scheme), or by actions based

F-14

on, incorporating, or omitting the statement or misrepresentation (or scheme) was

the COMPANY or an affiliated entity; (B) the false statement or

misrepresentation (or scheme) was not made to, directed at, or part of a scheme to

defraud, any person or entity other than or in addition to the borrower and/or the

COMPANY or an affiliated entity, including, but not limited to, any other

financial institution (as defined in 18 U.S.C. § 20), investors, and governmental

entities; (C) the false statement or misrepresentation (or scheme), or actions based

on, incorporating, or omitting the statement or misrepresentation (or scheme) did

not harm any other financial institution (as defined in 18 U.S.C. § 20), investors,

governmental entities, or any other entities other than the COMPANY or an

affiliated entity; and (D) there was no material monetary effect on an agency of

the United States.

(3)

      (a)     Subject to the exceptions in Paragraph 11 (concerning excluded

claims) below, the United States Department of Housing and Urban Development fully and

finally releases the COMPANY and any current or former affiliated entity (to the extent the

COMPANY retains liabilities associated with such former affiliated entity), and any of their

respective successors or assigns, as well as any current or former director, current or former

officer, and current or former employee of any of the foregoing, individually and collectively,

from any civil or administrative claims it has or may have, and from any civil or administrative

remedies or penalties (expressly including punitive or exemplary damages) it may seek or impose,

F-15

based on the Covered Servicing Conduct with respect to FHA loans that has taken place as of

11:59 p.m., Eastern Standard Time, on February 8, 2012 (and, for the avoidance of doubt, with

respect to FHA-insured loans, whether or not a claim for mortgage insurance benefits has been or

is in the future submitted).  Notwithstanding the foregoing, in no instance shall this Release

relieve the COMPANY or any affiliated entity from the obligation to remedy, upon identification,

defects of title or such other problems caused by the acts or omissions of the COMPANY or any

affiliated entity that may preclude FHA from accepting assignment or paying a claim for which

FHA lacks statutory authority pursuant to 12 U.S.C. § 1707(a) and § 1710(a)(1)(B), in which case

FHA shall reconvey the property back to the COMPANY or the affiliated entity to remedy the

defect in title or such other problem and the COMPANY or the affiliated entity shall convey the

property back to FHA once the defect or problem is cured.  Further, nothing in this Release shall

relieve COMPANY or affiliated entity of any obligation to provide FHA with any and all

mortgage insurance premium payments that have been or should have been collected, plus

interest, if any.  Notwithstanding any other provision of this Release, FHA shall calculate the

payment of insurance benefits for any insured mortgage in accordance with its regulations.

       (b)     Subject to the exceptions in Paragraph 11 (concerning excluded

claims) below, the United States fully and finally releases the COMPANY and any current or

former affiliated entity (to the extent the COMPANY retains liabilities associated with such

former affiliated entity), and any of their respective successors or assigns, as well as any current

or former director, current or former officer, and current or former employee of any of the

foregoing, individually and collectively, from any civil or administrative claims it has or may

have and from any civil or administrative remedies or penalties (expressly including punitive or

F-16

exemplary damages) it may seek or impose under FIRREA, the False Claims Act, and the

Program Fraud Civil Remedies Act where the sole basis for such claim or claims is that the

COMPANY or any current or former affiliated entity (to the extent the COMPANY retains

liabilities associated with such former affiliated entity) or any of their respective successors or

assigns, submitted to HUD-FHA prior to 11:59 p.m., Eastern Standard Time, on February 8, 2012

a false or fraudulent annual certification that the mortgagee had "conform[ed] to all HUD-FHA

regulations necessary to maintain its HUD-FHA approval" (including, but not limited to, the

requirement that the mortgagee implement and maintain a quality control program that conforms

to HUD-FHA requirements), or "complied with and agree[d] to continue to comply with HUD-

FHA regulations, handbooks, Mortgagee Letters, Title I Letters, policies, and terms of any

agreements entered into with the Department under HUD's Direct Endorsement Program."  For

avoidance of doubt, this Paragraph means that the United States is barred from asserting that a

false annual certification renders the COMPANY or any current or former affiliated entity (to the

extent the COMPANY retains liabilities associated with such former affiliated entity) liable under

the False Claims Act and the other laws cited above for loans endorsed by the COMPANY or its

affiliated entity for FHA insurance during the period of time applicable to the annual certification

without regard to whether any such loans contain material violations of HUD-FHA requirements,

or that a false individual loan certification that "this mortgage is eligible for HUD mortgage

insurance under the Direct Endorsement program" renders the COMPANY or any current or

former affiliated entity (to the extent the COMPANY retains liabilities associated with such

former affiliated entity) liable under the False Claims Act for any individual loan that does not

contain a material violation of HUD-FHA requirements.  However, this Paragraph does not (i)

release, bar or otherwise preclude the right of the United States to pursue any civil or

administrative claims or remedies it has or may have, or release or preclude under res judicata or

collateral estoppel theories any civil or administrative remedies or penalties it may seek or

impose, against the COMPANY, any current or former affiliated entity (to the extent the

COMPANY retains liabilities associated with such former affiliated entity), and any of their

respective successors or assigns, for conduct with respect to the insurance of residential mortgage

loans that violates any laws, regulations or other HUD-FHA requirements applicable to the

insurance of residential mortgage loans by HUD, including, but not limited to, material violations

of any applicable HUD-FHA requirements with respect to an individual loan or loans, except if

and to the extent such claim, remedy or penalty is based solely on such entity's failure to provide

HUD with an accurate annual certification as described above; (ii) release or otherwise bar the

United States from introducing evidence of any alleged failure to comply with applicable HUD-

FHA requirements, including, but not limited to, sufficient quality control, underwriting or due

diligence programs, in any way (including, but not limited to, for the purpose of proving intent) in

connection with any claim that there was a material violation(s) of applicable HUD-FHA

requirements with respect to an individual loan or loans that would subject the COMPANY or an

affiliated entity to liability under the False Claims Act or any other federal statutory or common

law administrative or judicial claim; or (iii) permit the COMPANY or its affiliates to offset or

otherwise reduce any potential liability for such claims or remedies by any amount paid under the

Consent Judgment.  The parties agree that the issue of whether and to what extent the United

States may use statistical sampling of individual loans or similar techniques for calculating

damages or proving material violations of HUD-FHA underwriting requirements with respect to a

pool of loans is not addressed by the Consent Judgment and shall be governed by the law of the

relevant administrative or judicial forum of any future dispute. Notwithstanding the foregoing, in

no instance shall this Release relieve the COMPANY or any affiliated entity from the obligation

to remedy, upon identification, defects of title or such other problems caused by the acts or

omissions of the COMPANY or an affiliated entity that may preclude FHA from accepting

assignment or paying a claim for which FHA lacks statutory authority pursuant to 12 U.S.C. §

1707(a) and § 1710(a)(1)(B), in which case FHA shall reconvey the property back to the

COMPANY or affiliated entity to remedy the defect in title or such other problem and the

COMPANY or affiliated entity shall convey the property back to FHA once the defect or problem

is cured.

       (4)     Subject to the exceptions in Paragraph 11 (concerning excluded claims)

below, for loans that closed before 11:59 p.m., Eastern Standard Time, on February 8, 2012 and

are guaranteed by the Department of Veterans Affairs (VA), the United States fully and finally

releases the COMPANY and any current or former affiliated entity (to the extent the

COMPANY retains liabilities associated with such former affiliated entity), and any of their

respective successors or assigns, as well as any current or former director, current or former

officer, and current or former employee of any of the foregoing, individually and collectively,

from any civil or administrative claims it has or may have based on Covered Origination

Conduct that arises under FIRREA, the False Claims Act, or the Program Fraud Civil Remedies

Act to the extent that they are based on any failure by the COMPANY or any current or former

affiliated entity and any of their respective successors or assigns, as well as any current or former

director, current or former officer, and current or former employee of any of the foregoing,

individually and collectively, to conform to all VA regulations necessary to maintain the

authority of the COMPANY or any current or former affiliated entity to close VA-guaranteed

loans on an automatic basis.  Nothing in the foregoing shall be interpreted to release the right of

the United States to pursue any civil or administrative claims it has or may have, or to release

any civil or administrative remedies or penalties it may seek or impose, against the COMPANY,

any current or former affiliated entity (to the extent the COMPANY retains liabilities associated

with such former affiliated entity), and any of their respective successors or assigns, based on

Covered Origination Conduct that violates the laws or regulations applicable to the guaranty of

residential mortgage loans by VA with respect to any residential mortgage loan or loans, except

if and to the extent such claim, remedy or penalty is based on such entity's failure to provide VA

with an accurate general program compliance certification, to implement an effective quality

control plan, or to conform to all VA regulations necessary to maintain the authority of the

COMPANY or any current or former affiliated entity to close VA-guaranteed loans on an

automatic basis.

      (5)    Subject to the exceptions in Paragraph 11 (concerning excluded claims)

below, for loans that closed before 11:59 p.m., Eastern Standard Time, on February 8, 2012 and

are guaranteed by the Department of Agriculture (USDA), the United States fully and finally

releases the COMPANY and any current or former affiliated entity (to the extent the

COMPANY retains liabilities associated with such former affiliated entity), and any of their

respective successors or assigns, as well as any current or former director, current or former

officer, and current or former employee of any of the foregoing, individually and collectively,

from any civil or administrative claims it has or may have against the COMPANY and any of

their respective successors or assigns, as well as any current or former director, current or former

officer, and current or former employee of any of the foregoing, individually and collectively,

based on Covered Origination Conduct that arises under FIRREA, the False Claims Act, or the

Program Fraud Civil Remedies Act to the extent that they are based on statements made in the

COMPANY's or current or former affiliated entity's application for approved lender status in the

Single Family Housing Guaranteed Loan Program.  Nothing in the foregoing shall be interpreted

to release the right of the United States to pursue any civil or administrative claims it has or may

have, or to release any civil or administrative remedies or penalties it may seek or impose,

against the COMPANY, any current or former affiliated entity (to the extent the COMPANY

retains liabilities associated with such former affiliated entity), and any of their respective

successors or assigns, based on Covered Origination Conduct that violates the laws or

regulations applicable to the guaranty of residential mortgage loans by USDA with respect to any

residential mortgage loan or loans, except if and to the extent such claim, remedy or penalty is

based on such entity's failure to provide USDA with an accurate general program compliance

certification, to implement an effective quality control plan, or on statements made in the

COMPANY's or current or former affiliated entity's application for approved lender status in the

Single Family Housing Guaranteed Loan Program.

       (6)     Subject to the exceptions described in this Paragraph 6 and in Paragraph

11 (concerning excluded claims) below, the United States Department of the Treasury

("Treasury") fully and finally releases the COMPANY and any current or former affiliated entity

(to the extent the COMPANY retains liabilities associated with such former affiliated entity), and

any of their respective successors or assigns, as well as any current or former director, current or

former officer, and current or former employee of any of the foregoing, individually and

collectively, and will refrain from instituting, directing, or maintaining any civil or

administrative claims the Treasury has or may have, and from any civil remedies or penalties

(expressly including punitive or exemplary damages) it may seek or impose against the

COMPANY and any current or former affiliated entity (to the extent the COMPANY retains

liabilities associated with such former affiliated entity), and any of their respective successors or

assigns, as well as any current or former director, current or former officer, and current or former

employee of any of the foregoing, individually and collectively, based on the Covered Servicing

Conduct that has taken place as of 11:59 p.m., Eastern Standard Time, on February 8, 2012;

furthermore, as of February 8, 2012, Treasury is withholding Making Home Affordable servicer

incentive payments from the COMPANY or any current or former affiliated entity, and, upon the

immediately succeeding Making Home Affordable Program incentive payment date, Treasury

shall release and remit to the COMPANY and any current or former affiliated entity all

outstanding Making Home Affordable Program servicer incentive payments previously withheld

by Treasury. Notwithstanding the foregoing, Treasury, in connection with the Making Home

Affordable Program, reserves the right to continue to perform compliance reviews on the

COMPANY's Making Home Affordable Program activities occurring prior to February 8, 2012,

to require non-financial remedies with respect to such activities, and to publicly release servicer

assessments with respect thereto. If, as the result of any such compliance review occurring after

February 8, 2012, Treasury determines that the COMPANY or any of its affiliated entities have

not adequately corrected identified instances of noncompliance that occurred prior to the date

specified in the first sentence of this Paragraph and were communicated to COMPANY or any of

its affiliated entities by Treasury in a letter dated March 9, 2012, Treasury reserves the right to

adjust any Making Home Affordable Program incentive payments made or owed to the

COMPANY or any of its affiliated entities with respect to those identified instances of

noncompliance.  In addition, with respect to instances of noncompliance that occur after

February 8, 2012, Treasury reserves the right to exercise all available remedies, both financial

and non-financial, under the Making Home Affordable Program Commitment to Purchase

Financial Instrument and Servicer Participation Agreement, as amended, between Treasury and

COMPANY or any of its affiliated entities ("the SPA").

(7)    Subject to the exceptions in Paragraph 11 (concerning excluded claims)

below, the Bureau of Consumer Financial Protection ("CFPB") fully and finally releases the

COMPANY and any current or former affiliated entity (to the extent such COMPANY retains

liabilities associated with such former affiliated entity), and any of their respective successors or

assigns as well as any current or former director, current or former officer, and current or former

employee of any of the foregoing, individually and collectively, and will refrain from instituting,

directing, or maintaining any civil or administrative claims the CFPB has or may have, and from

any civil remedies or penalties (expressly including punitive or exemplary damages) it may seek

or impose against the COMPANY and any current or former affiliated entity (to the extent the

COMPANY retains liabilities associated with such former affiliated entity), and any of their

respective successors or assigns, as well as any current or former director, current or former

officer, or current or former employee of any of the foregoing, individually and collectively,

based on Covered Servicing Conduct or Covered Origination Conduct that has taken place prior

to July 21, 2011.  Notwithstanding the foregoing, the CFPB reserves the right to obtain

information related to conduct that occurred prior to July 21, 2011 under its authority granted by

Title X of the Dodd-Frank Wall Street Reform and Consumer Protection Act.

    (8)    Subject to the exceptions in Paragraph 11 (concerning excluded claims)

below, and conditioned upon the full payment of the Direct Payment Settlement Amount, the

Federal Trade Commission fully and finally releases the COMPANY and any current or former

affiliated entity (to the extent the COMPANY retains liabilities associated with such former

affiliated entity), and any of their respective successors or assigns, as well as any current or

former director, current or former officer, and current or former employee of any of the

foregoing, individually and collectively, from any civil or administrative claim the Federal Trade

Commission has or may have, or civil or administrative remedies or penalties (expressly

including punitive or exemplary damages) it may seek or impose, based on the Covered

Origination Conduct that has taken place as of 11:59 p.m., Eastern Standard Time, on February

8, 2012, or based on the Covered Servicing Conduct that has taken place as of 11:59 p.m.,

Eastern Standard Time, on February 8, 2012, provided, however, that nothing in this Paragraph

or Release shall be interpreted to release any liability to the Federal Trade Commission relating

to the Covered Servicing Conduct or Covered Origination Conduct of any affiliated entity that

the COMPANY has acquired on or after November 30, 2011, or, notwithstanding Section C.3.i

of this Release, any conduct or claims involving the privacy, security, or confidentiality of

consumer information.

    (9)    Subject to the exceptions in Paragraph 11 (concerning excluded claims)

below:

(a)    Upon the Effective Date of the Consent Judgment, the Executive

Office for United States Trustees ("EOUST") and the United States Trustees and Acting United

States Trustees for Regions 1 through 21 (collectively, with the EOUST, "the United States

Trustees") will consent to and agree to take such steps as may be reasonably necessary to fully

and finally withdraw or facilitate the dismissal with prejudice of pending objections and other

actions by the United States Trustees, including all related discovery requests, whether formal or

informal, and requests for examination under Fed. R. Bankr. P. 2004 (collectively, "the Discovery

Requests") and subpoenas or subpoenas duces tecum (collectively, "the Subpoenas"), directed to

or filed against the COMPANY, its affiliates, and employees and officers of the COMPANY and

its affiliates, pertaining to the COMPANY's or its affiliates' mortgage-related claims filed in a

bankruptcy case prior to 11:59 p.m., Eastern Standard Time, on February 8, 2012 and based on

the Covered Bankruptcy Conduct.  The United States Trustees further agree not to take any action

to obtain discovery from the COMPANY or any affiliated entity pursuant to any court order

granting such Discovery Requests or with respect to enforcing related Subpoenas pending as of

11:59 p.m., Eastern Standard Time, on February 8, 2012.  Upon the Effective Date of the Consent

Judgment, the United States Trustees further agree to take such steps as may be reasonably

necessary to fully and finally withdraw or facilitate the dismissal with prejudice of Discovery

Requests and Subpoenas directed to or filed against any other party where the discovery was

sought for the purpose of obtaining relief against the COMPANY, its affiliates, or employees and

officers of the COMPANY or its affiliates, and pertains to the COMPANY's or its affiliates'

mortgage-related claims filed in a bankruptcy case prior to 11:59 p.m., Eastern Standard Time, on

February 8, 2012 and based on the Covered Bankruptcy Conduct, except that nothing in this

Paragraph requires the United States Trustee to withdraw or facilitate the dismissal of Discovery

Requests and Subpoenas to the extent that relief against another party, other than the COMPANY,

its affiliates, or employees and officers of the COMPANY or its affiliates, is the purpose of such

discovery.

(b)    Upon the Effective Date of the Consent Judgment, the COMPANY

and its affiliated entities will consent to and agrees to take such steps as may be reasonably

necessary to fully and finally withdraw or facilitate the dismissal with prejudice of pending

adversary proceedings, contested matters, appeals, and other actions filed by the COMPANY or

its affiliated entities, including all Discovery Requests and Subpoenas directed to or filed against

any United States Trustee, relating to objections and other actions by the United States Trustees,

including Discovery Requests and Subpoenas, directed to or filed against the COMPANY, its

affiliated entities, or employees and officers of the COMPANY or its affiliated entities pertaining

to the COMPANY's or its affiliated entities' mortgage-related claims filed in a bankruptcy case

prior to 11:59 p.m., Eastern Standard Time, on February 8, 2012 and based on the Covered

Bankruptcy Conduct. The COMPANY and its affiliated entities further agree not to take any

action to obtain discovery from the United States Trustees pursuant to any court order granting

such Discovery Requests or with respect to enforcing related Subpoenas pending as of 11:59 p.m.,

Eastern Standard Time, on February 8, 2012.

(c)    The United States Trustees fully and finally release any claims,

and will refrain from instituting, directing or maintaining any action or participating in any action

by a third party (except that the United States Trustees may participate in an action to the extent

F-26

ordered by a court provided that the United States Trustees may not seek such a court order

formally or informally), against the COMPANY and any current or former affiliated entity (to the

extent the COMPANY retains liabilities associated with such former affiliated entity), and any of

their respective successors or assigns, as well as any current or former director, current or former

officer, and current or former employee of any of the foregoing, individually and collectively,

pertaining to the COMPANY's or its affiliated entities' mortgage-related claims filed in a

bankruptcy case prior to 11:59 p.m., Eastern Standard Time, on February 8, 2012 and based on

the Covered Bankruptcy Conduct.  The United States Trustees shall refrain from sharing

information obtained via the Discovery Requests and Subpoenas outside the federal government

(unless required to do so under applicable law or pursuant to a court order) in support of any

action, against the COMPANY, or any current or former affiliated entity (to the extent the

COMPANY retains liabilities associated with such former affiliated entity), and any of their

respective successors or assigns, as well as any current or former director, current or former

officer, and current or former employee of any of the foregoing, individually and collectively,

pertaining to the COMPANY's or its affiliates' mortgage-related claims filed in a bankruptcy case

prior to 11:59 p.m., Eastern Standard Time, on February 8, 2012 and based on the Covered

Bankruptcy Conduct.  Except as otherwise provided in the Enforcement Terms in Exhibit E of the

Consent Judgment, the United States Trustees further agree to refrain from seeking to invalidate

the COMPANY's or its affiliates' lien on residential real property, including in an adversary

proceeding pursuant to Fed. R. Bank. P. 7001(2) and 11 U.S.C. § 506, or to impose monetary

sanctions or other punitive relief against the COMPANY, and any current or former affiliated

entity (to the extent the COMPANY retains liabilities associated with such former affiliated

F-27

entity), and any of their respective successors or assigns, as well as any current or former director, current or former officer, and current or former employee of any of the foregoing, individually and collectively, pertaining to the COMPANY's or its affiliated entities' mortgage-related claims filed in a bankruptcy case after 11:59 p.m., Eastern Standard Time, on February 8, 2012 and based on the Covered Bankruptcy Conduct where the Covered Bankruptcy Conduct occurred before 11:59 p.m., Eastern Standard Time, on February 8, 2012.

(d)     Notwithstanding the foregoing, nothing in this Paragraph shall be construed to be (1) a waiver of any defenses or claims of the COMPANY, its affiliates, or employees and officers of the COMPANY or its affiliates, against any other party, or a dismissal of any pending adversary proceedings, contested matters, appeals, and other actions filed by the COMPANY, its affiliates, or employees and officers of the COMPANY or its affiliates, against any other party, wherein the United States Trustee is a party or otherwise involved; (2) a waiver of any defenses or claims of the United States Trustee against any other party, or a dismissal of any pending adversary proceedings, contested matters, appeals, and other actions filed by the United States Trustee against any other party wherein the COMPANY, its affiliates, or employees and officers of the COMPANY or its affiliates, is a party or otherwise involved; or (3) a waiver of, or restriction or prohibition on, the United States Trustees' ability, to the extent permitted by law, informally or formally, in individual bankruptcy cases, to seek a cure of material inaccuracies in the COMPANY's or its affiliates' mortgage-related claims filed in a bankruptcy case and based on the Covered Bankruptcy Conduct, but not to impose monetary sanctions or other punitive relief against the COMPANY or its affiliates in addition to such cure; provided, however, that this provision shall not constitute a waiver of, or restriction or prohibition on, the

F-28

COMPANY's or its affiliates' ability to dispute whether the United States Trustees have authority or ability to seek such a cure.

(10)    For the purposes of this Release, the term "affiliated entity" shall mean entities that are directly or indirectly controlled by, or control, or are under common control with, the COMPANY as of or prior to 11:59 p.m., Eastern Standard Time, on February 8, 2012. The term "control" with respect to an entity means the beneficial ownership (as defined in Rule 13d-3 promulgated under the Securities Exchange Act of 1934, as amended) of 50 percent or more of the voting interest in such entity.

(11)    Notwithstanding any other term of this Release, the following claims of the United States are specifically reserved and are not released:

(a)    Any liability arising under Title 26, United States Code (Internal Revenue Code);

(b)    Any liability of individuals (including current or former directors, officers, and employees of the COMPANY or any affiliated entity) who have received or receive in the future notification that they are the target of a criminal investigation (as defined in the United States Attorneys' Manual); have been or are indicted or charged; or have entered or in the future enter into a plea agreement, based on the Covered Servicing Conduct, the Covered Origination Conduct, and the Covered Bankruptcy Conduct (collectively, the "Covered Conduct");

(c)    Any criminal liability;

F-29

(d)     Any liability to the United States for any conduct other than the Covered Conduct, or any liability for any Covered Conduct that is not expressly released herein;

(e)     Any and all claims whether legal or equitable, in connection with investors or purchasers in or of securities or based on the sale, transfer or assignment of any interest in a loan, mortgage, or security to, into, or for the benefit of a mortgage-backed security, trust, special purpose entity, financial institution, investor, or other entity, including but not limited to in the context of a mortgage securitization or whole loan sale to such entities ("Securitization/Investment Claims").  Securitization/Investment Claims include, but are not limited to, claims based on the following, all in connection with investors or purchasers in or of securities or in connection with a sale, transfer, or assignment of any interest in loan, mortgage or security to, into, or for the benefit of a mortgage-backed security, trust, special purpose entity, financial institution, investor, or other entity:

(i)     The United States' capacity as an owner, purchaser, or holder of whole loans, securities, derivatives, or other similar investments, including without limitation, mortgage backed securities, collateralized debt obligations, or structured investment vehicles.

(ii)     The creation, formation, solicitation, marketing, assignment, transfer, valuation, appraisal, underwriting, offer, sale, substitution, of or issuance of any interest in such whole loans, mortgages, securities, derivatives, or other similar investments.

F-30

(iii)    Claims that the COMPANY or an affiliated entity made

false or misleading statements or omissions, or engaged in other misconduct in

connection with the sale, transfer or assignment of any interest in a loan,

mortgage, or security or in connection with investors or purchasers in or of such

loans, mortgages, or securities, including but not limited to conduct that affected a

federally insured financial institution or violated a legal duty to a mortgage-

backed security, trust, special purpose entity, financial institution, or investor

(including the United States), or governmental agency and/or that subjects the

COMPANY or an affiliated entity to a civil penalty or other remedy under 12

U.S.C. § 1833a.

(iv)    Representations, warranties, certifications, statements, or

claims made regarding such whole loans, securities, derivatives or other similar

investments, including representations, warranties, certifications or claims

regarding the eligibility, characteristics, or quality of mortgages or mortgagors;

(v)    Activities related to the executing, notarizing, transferring

or recording of mortgages; the endorsement or transfer of a loan; and the

obtaining, executing, notarizing, transferring or recording of assignments;

(vi)    Obtaining, securing, updating, transferring, or providing

promissory notes or endorsements of promissory notes through allonges or

otherwise;

F-31

        (vii)    Custodial and trustee functions;

        (viii)   Intentional or fraudulent failure to pay investors sums owed with respect to any security, derivatives, or similar investment;

        (ix)    Contractual covenants, agreements, obligations and legal duties to a mortgage-backed security, trust, special purpose entity, financial institution, investor, or other entity (including the United States);

        (x)    Covered Origination Conduct (except to the extent such conduct is released in Paragraphs 3.b, 4 or 5); and

        (xi)    Covered Servicing Conduct to the extent the COMPANY or any affiliated entity engaged in the Covered Servicing Conduct in question not in its capacity as servicer, subservicer or master servicer, but in its capacity as the originator of a mortgage loan or as seller, depositor, guarantor, sponsor, securitization trustee, securities underwriter, document custodian or any other capacity.

The exclusion set forth above in this Paragraph shall not apply to Securitization/Investment Claims based on the following conduct, and such claims are included in what is being released:

        Securitization/Investment Claims based on Covered Servicing Conduct by the COMPANY or any current or former affiliated entity where: (1) such conduct was performed by the COMPANY or any affiliated entity in its capacity as the loan

servicer, master servicer or subservicer, whether conducted for its own account or

pursuant to a third party servicing agreement or similar agreement, and not in its

capacity as loan originator, seller, depositor, guarantor, sponsor, securitization

trustee, securities underwriter, or any other capacity; and (2) such conduct was not

in connection with (x) the creation, formation, solicitation, marketing, sale,

assignment, transfer, offer, sale, substitution, underwriting, or issuance of any

interest in securities, derivatives or other similar investments or (y) the sale or

transfer of mortgage loans.  The claims addressed in this sub-paragraph include,

without limitation, Securitization and Investment Claims that the party seeking to

enforce a mortgage loan against a borrower and homeowner in respect of that

borrower's default did not have a documented enforceable interest in the

promissory note and mortgage or deed of trust under applicable state law or is

otherwise not a proper party to the foreclosure or bankruptcy action or claims

based on such party's attempts to obtain such a documented enforceable interest

or become such a proper party.

        (f)     Any liability arising under Section 8 of the Real Estate Settlement

Procedures Act, 12 U.S.C. § 2607, relating to private mortgage insurance, with respect to claims

brought by the CFPB;

        (g)     Except with respect to claims related to the delivery of initial or

annual privacy notices, requirements with respect to the communication of non-public personal

information to non-affiliated third parties, or other conduct required by Sections 502 through 509

of the Gramm-Leach-Bliley Act (15 U.S.C. §§ 6802-6809), any claims or conduct involving the obligation of a financial institution under Section 501(b) of the Gramm-Leach-Bliley Act (15 U.S.C. s. 6801(b)) and its implementing regulations to maintain administrative, technical, and physical information security safeguards;

(h)    Any liability arising under the Fair Housing Act; any provision of the Equal Credit Opportunity Act that is not expressly released in Paragraph 2 of this Release, including any provision prohibiting discriminatory conduct; the Home Mortgage Disclosure Act; or any other statute or law that prohibits discrimination of persons based on race, color, national origin, gender, disability, or any other protected status;

(i)    Administrative claims, proceedings, or actions brought by HUD against any current or former director, officer, or employee for suspension, debarment or exclusion from any HUD program;

(j)    Any liability arising under the federal environmental laws;

(k)    Any liability to or claims brought by (i) the Federal Housing Finance Agency; (ii) any Government Sponsored Enterprise, including the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation (except where the Government Sponsored Enterprise seeks to impose such liability or pursue such claims in its capacity as an administrator of the Making Home Affordable Program of Treasury); (iii) the Federal Deposit Insurance Corporation (whether in its capacity as a Corporation, Receiver, or Conservator); (iv) the Government National Mortgage Association ("Ginnie Mae") arising out of

F-34

COMPANY's contractual obligations related to serving as Master Subservicer on defaulted

Ginnie Mae portfolios, including claims for breach of such obligations; (v) the CFPB with respect

to claims within its authority as of the designated transfer date of July 21, 2011 that are not

expressly released in Paragraph 7; (vi) the National Credit Union Administration, whether in its

capacity as a Federal agency, Liquidating Agent, or Conservator; (vii) the Securities and

Exchange Commission; (viii) the Federal Reserve Board and its member institutions; (ix) Maiden

Lane LLC, Maiden Lane II LLC, Maiden Lane III LLC, entities that are consolidated for

accounting purposes on the financial statements of the Federal Reserve Bank of New York, and

the Federal Reserve Bank of New York; (x) the Office of the Comptroller of the Currency; (xi)

the USDA (except to the extent claims are released in Paragraph 5); (xii) the VA (except to the

extent claims are released in Paragraph 4); (xiii) the Commodity Futures Trading Commission;

and (xvi) the Inspectors General of such entities;

(l)    Any liability to the United States for the following claims or

conduct alleged against Ally Financial, Inc., or any of its current or former subsidiaries, affiliates,

officers, directors, employees or agents, including but not limited to Residential Capital, LLC,

GMAC Mortgage Corporation, GMAC Mortgage, LLC, and GMAC Inc., or any other entity or

person:

(i)    All claims or allegations based on any conduct alleged in

United States ex rel. [Under Seal] v. [Under Seal], 2:11-cv-00535-RLH-RJJ (D.

Nev.);

(ii)    All claims or allegations based on any conduct alleged in
United States ex rel. Szymoniak v. [Under Seal], Civ. No. 0:10-cv-01465 (D.S.C.)
or in United States ex rel. Szymoniak v. [Under Seal], Civ. No. 3:10-cv-575
(W.D.N.C.), except any such claims that are encompassed by the releases
described in paragraphs 2 to 9, above, and not otherwise reserved from these
releases in this agreement; and

(iii)    All claims or allegations based on any conduct alleged in
United States ex rel. Bibby et al. v. Wells Fargo Bank, National Association, Inc.
et al., C.A. No. 1:06-CV-0547-AT (N.D. Ga.);

(m)    Any action that may be taken by the appropriate Federal Banking
Agency (FBA), as defined in 12 U.S.C. § 1813(q), against COMPANY, any of its affiliated
entities, and/or any institution-affiliated party of COMPANY, as defined in 12 U.S.C. § 1813(u),
pursuant to 12 U.S.C. § 1818, and any action by the FBA to enforce the Consent Order issued
against the COMPANY by the FBA on April 13, 2011;

(n)    Any liability based upon obligations created by this Consent
Judgment;

(o)    The parties agree that notwithstanding any other provision of this
Release, the United States retains the right to investigate and sue the COMPANY and any
affiliated entity under FIRREA for any conduct, statements or omissions that are:

F-36

(i)     Made or undertaken in connection with either (a) the creation, formation, transfer, sale, conveyance, or securitization of mortgage-backed securities, derivatives, collateralized debt obligations and credit default swaps, or other similar securities or (b) the sale or transfer of mortgage loans;

(ii)     Made or undertaken by the COMPANY or an affiliated entity in its capacity as loan originator, seller, depositor, guarantor, sponsor, securitization trustee, securities underwriter, or any capacity other than as loan servicer, master servicer or subservicer, in connection with the origination (including Covered Origination Conduct), underwriting, due diligence, quality control, valuation, appraisal, pledging, substitution, recording, assignment, or securitization of mortgages, whole loans, mortgage-backed securities, derivatives, collateralized debt obligations and credit default swaps, or other similar securities (except to the extent such conduct is released in Paragraphs 2.c, 3.b, 4 or 5 and not excluded from this Release in Subsections (a)-(n) of this Paragraph 11);

(iii)     Made to or directed at federal governmental entities (except to the extent such conduct is released in Paragraphs 2.a, 3.a, 3.b, 4 or 5 and not excluded from this Release in Subsections (a)-(n) of this Paragraph 11); or

(iv)     Based on (A) the failure by the COMPANY or affiliated entity to pay investors or trustees any sums received by the COMPANY or affiliated entity and owed to the investors and trustees with respect to any security, derivatives, or similar investment; (B) the failure by the COMPANY or

F-37

affiliated entity to disclose that it failed to pay investors or trustees any sums received by the COMPANY or affiliated entity and owed to investors or trustees with respect to any security, derivatives, or similar investment; (C) the collection by the COMPANY or affiliated entity of money or other consideration from loan sellers with respect to loans that the COMPANY or an affiliated entity had sold to others or packaged into a security for sale to others; or (D) the failure by the COMPANY or affiliated entity to repurchase loans to the extent that it had a contractual obligation to repurchase.

The COMPANY and its affiliated entities agree that they have not been released from any liability under FIRREA for such conduct or statements. To the extent that this reservation of FIRREA claims is inconsistent with any other provision of this Release, the reservation of FIRREA claims shall control. This reservation of FIRREA Claims shall not be construed to otherwise limit any other claim that the United States has against the COMPANY or its affiliated entities, to alter the requirements of FIRREA, or to waive any defense available to the COMPANY or its affiliated entities under existing law.

(12)    For avoidance of doubt, this Release shall not preclude a claim by any private individual or entity for harm to that private individual or entity, except for a claim asserted by a private individual or entity under 31 U.S.C. § 3730(b) that is subject to this Release and not excluded by Paragraph 11.

(13)    The COMPANY and its affiliated entities waive and shall not assert any defenses they may have to any criminal prosecution or administrative action based on the

F-38

Covered Conduct that may be based in whole or in part on a contention that, under the Double

Jeopardy Clause in the Fifth Amendment of the Constitution or under the Excessive Fines Clause

in the Eighth Amendment of the Constitution, this Release bars a remedy sought in such criminal

prosecution or administrative action.  Nothing in this Paragraph or any other provision of this

Consent Judgment constitutes an agreement by the United States concerning the characterization

of the Federal Settlement Amount for purposes of Title 26, United States Code (Internal Revenue

Code).

(14)    The COMPANY and any current or former affiliated entity, as well as any

current or former director, current or former officer, or current or former employee of any of the

foregoing, but only to the extent that the COMPANY and any current or former affiliated entity

possesses the ability to release claims on behalf of such individuals or entities, fully and finally

releases the United States and its employees from any claims based on the Covered Conduct to

the extent, and only to the extent, that such individual or entity is released from claims based on

that Covered Conduct under Paragraphs 2 through 9 of this Release and such claim is not

excluded under Paragraph 11 of this Release (including, for the avoidance of doubt, claims by

the entities listed in Paragraph 11(k)), as well as claims under the Equal Access to Justice Act, 28

U.S.C. § 2412 based on the United States' investigation and prosecution of the foregoing

released claims.  Nothing herein is intended to release claims for mortgage insurance or

mortgage guaranty payments or claims for payment for goods and services, such as incentive

payments under HAMP.

(15)

F-39

(a)    Unallowable Costs Defined: All costs (as defined in the Federal
Acquisition Regulations, 48 C.F.R. § 31.205-47) incurred by or on behalf of the COMPANY and
any current or former affiliated entity (to the extent the COMPANY retains liabilities associated
with such former affiliated entity), any successor or assign, as well as any current or former
director, current or former officer, and current or former employee of any of the foregoing,
individually and collectively, in connection with:

(1)    the matters covered by the Consent Judgment;

(2)    the United States' audits and civil investigations of the
matters covered by the Consent Judgment;

(3)    the COMPANY's and its affiliated entities' investigation,
defense, and corrective actions undertaken in response to
the United States' audit(s) and civil investigation(s) in
connection with the matters covered by the Consent
Judgment (including attorney's fees);

(4)    the negotiation and performance of the Consent Judgment;
and

(5)    the payments made to the United States or others pursuant
to the Consent Judgment,

F-40

are unallowable costs for government contracting purposes

("Unallowable Costs").

(b)     Future Treatment of Unallowable Costs:  Unallowable Costs will

be separately determined and accounted for by the COMPANY and its affiliated entities, and the

COMPANY and its affiliated entities shall not charge such Unallowable Costs directly or

indirectly to any contract with the United States.

(c)     Treatment of Unallowable Costs Previously Submitted for

Payment: Within 90 days of the Effective Date of the Consent Judgment, the COMPANY and its

affiliated entities shall identify and repay by adjustment to future claims for payment or otherwise

any Unallowable Costs included in payments previously sought by the COMPANY or any of its

affiliated entities from the United States.  The COMPANY and its affiliated entities agree that the

United States, at a minimum, shall be entitled to recoup from any overpayment plus applicable

interest and penalties as a result of the inclusion of such Unallowable Costs on previously-

submitted requests for payment.  The United States reserves its rights to audit, examine, or re-

examine the COMPANY's or affiliated entities' books and records and to disagree with any

calculations submitted by the COMPANY or any of its affiliated entities regarding any

Unallowable Costs included in payments previously sought by the COMPANY or its affiliated

entities, or the effect of any such Unallowable Costs on the amount of such payments.

(16)     The COMPANY and its affiliated entities agree to cooperate fully and

truthfully with the United States' investigation of individuals and entities not released in this

Release.  Upon reasonable notice, the COMPANY shall encourage, and agrees not to impair, the

F-41

reasonable cooperation of its directors, officers and employees, and shall use its reasonable efforts to make available and encourage the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals.

(17)    This Release is intended to be and shall be for the benefit only of the Parties and entities and individuals identified in this Release, and no other party or entity shall have any rights or benefits hereunder.

(18)    Each party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Consent Judgment.

(19)    Each party and signatory to this Consent Judgment represents that it freely and voluntarily enters into the Consent Judgment without any degree of duress or compulsion.

(20)    This Release is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute arising out of matters covered by this Release is the United States District Court for the District of Columbia. For purposes of construing this Release, this Release shall be deemed to have been drafted by all the Parties and shall not, therefore, be construed against any party for that reason in any subsequent dispute.

(21)    The Consent Judgment constitutes the complete agreement between the Parties as to the matters addressed herein. The Consent Judgment may not be amended except by written consent of the Parties.

F-42

(22)    The undersigned represent and warrant that they are fully authorized to execute the Consent Judgment on behalf of the Parties indicated below.

(23)    The Consent Judgment may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Consent Judgment.

(24)    This Release is binding on, and inures to the benefit of, the COMPANY's and affiliated entities' successors, heirs, and assigns.

(25)    The Parties may disclose this Release, and information about this Release, to the public at their discretion.

(26)    Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Release.

(27)    Whenever the words "include," "includes," or "including" are used in this Release, they shall be deemed to be followed by the words "without limitation."