**Hearing Date:  July 16, 2015 at 10:00 a.m. (Prevailing Eastern Time)**
**Response Deadline: June 22, 2015 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
250 W. 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Erica J. Richards

*Counsel for The ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------------
|   |   |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | Chapter 11 |
| Debtors. | Jointly Administered |
-------------------------------------------------------------------------------

**OBJECTION OF THE RESCAP BORROWER CLAIMS TRUST**
**<u>TO CLAIM NUMBER 452 FILED BY JULIO PICHARDO</u>**

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................. 1

II.   JURISDICTION, VENUE AND STATUTORY PREDICATE ....................................... 3

III.  BACKGROUND ..................................................................................... 3

    A.    Chapter 11 Case Background............................................................. 3

        (i)    General Overview ................................................................. 3

        (ii)   Claim Specific Background ...................................................... 4

    B.    The Pichardo Loan ...................................................................... 5

    C.    The California Action .................................................................. 8

    D.    The Proof of Claim ..................................................................... 10

IV.   RELIEF REQUESTED .......................................................................... 11

V.    OBJECTION ...................................................................................... 11

    A.    Applicable Legal Standard............................................................. 11

    B.    The Proof of Claim Lacks Merit ...................................................... 13

        (i)    Claims Asserted in the Initial Complaint................................... 14

            a.    Violation of the FDCPA ................................................. 14

            b.    Negligent Misrepresentation......................................... 15

            c.    Violation of California Business & Professional Code
               § 17200 – Unfair Competition Law .............................. 17

            d.    Violation of California Business & Professional Code
               § 17500 – False Advertising Law ................................. 18

        (ii)   Claims Asserted in the First Amended Complaint ........................ 19

            a.    Breach of Contract ...................................................... 19

            b.    Breach of Covenant of Good Faith and Fair Dealing .............. 22

            c.    Negligence ............................................................... 24

            d.    Unjust Enrichment ..................................................... 25

            e.    Violation of California Business & Professional Code
               § 17200 – Unfair Competition Law .............................. 26

VI.   NOTICE............................................................................................. 27

VII.  CONCLUSION.................................................................................... 27

i

# TABLE OF CONTENTS

**Page**

EXHIBITS:

Exhibit 1 – Proof of Claim

Exhibit 2 – Priore Declaration

      Exhibit A – Note
      Exhibit B – Deed of Trust
      Exhibit C – Payment History
      Exhibit D – Letter dated March 6, 2009
      Exhibit E – Comment History
      Exhibit F – April 24, 2009 Workout Package
      Exhibit G – August 3, 2009 Breach Letter
      Exhibit H – June 11, 2009 Letter
      Exhibit I – July 10, 2009 Letter
      Exhibit J – March 20, 2012 Letter
      Exhibit K – August 5, 2009 Letter
      Exhibit L – August Agreement
      Exhibit M – Corrected Agreement
      Exhibit N – November 10, 2009 Letter
      Exhibit O – March 26, 2010 Letter
      Exhibit P – July 1, 2011 Letter
      Exhibit Q – Summary of Escrow Transactions
      Exhibit R – Initial Complaint
      Exhibit S – Notice of Bankruptcy and Suggestion of Automatic Stay
      Exhibit T – July 30, 2012 Letter
      Exhibit U – June 3, 2014 Letter
      Exhibit V – June 21, 2013 Letter
      Exhibit W – June 28, 2013 Letter

Exhibit 3 – Sham Declaration

      Exhibit A – First Amended Complaint
      Exhibit B – Notice of Bankruptcy and Suggestion of Automatic Stay
      Exhibit C – Demurrer to First Amended Complaint
      Exhibit D – Notice of Ruling
      Exhibit E – Second Amended Complaint
      Exhibit F – Demurrer to Second Amended Complaint
      Exhibit G – Minute Order
      Exhibit H – California Action Docket Report

Exhibit 4 – Proposed Order

TABLE OF AUTHORITIES

Page

## TABLE OF AUTHORITIES

Page(s)

CASES

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)............................................................................................12, 13

Bank of the West v. Superior Court,
    833 P.2d 545 (Cal. 1992) ................................................................................17, 26

Cary v. Los Angeles R. Co.,
    157 Cal. 599, 603 (Cal. 1910) ........................................................................ 24-25

Casault v. Fed. Nat'l Mortg. Ass'n,
    915 F. Supp. 2d 1113 (C.D. Cal. 2012) ...............................................................14

Chapman v. Skype Inc.,
    220 Cal. App. 4th 217, 231 (Cal. App. 2d Dist. 2013) .........................................16

Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,
    973 P.2d 527 (Cal. 1999) .....................................................................................17

Curley v. Wells Fargo & Co.,
    2014 U.S. Dist. LEXIS 30872 (N.D. Cal. Mar. 10, 2014)....................................23

Feinberg v. Bank of N.Y. (In re Feinberg),
    442 B.R. 215 (Bankr. S.D.N.Y. 2010).................................................................12

First Nationwide Savs. v. Perry,
    15 Cal. Rptr. 2d 173 (Cal. Ct. App. 1992) ...........................................................25

Fox v. Pollack,
    226 Cal. Rptr. 532 (Cal. Ct. App. 1986) ..............................................................15

In re DJK Residential LLC,
    416 B.R. 100 (Bankr. S.D.N.Y. 2009).................................................................12

In re Oneida Ltd.,
    400 B.R. 384 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co. v.
    Oneida, Ltd., No. 09-cv-2229, 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010) .........11

In re Residential Capital, LLC,
    518 B.R. 720 (Bankr. S.D.N.Y. 2014).................................................................12

# TABLE OF AUTHORITIES

**Page**

In re Rockefeller Ctr. Props.,
 272 B.R. 524 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v. Rockefeller Ctr.
 Props. (In re Rockefeller Ctr. Props), 266 B.R. 52 (S.D.N.Y. 2001), aff'd, 46 Fed.
 Appx. 40 (2d Cir. 2002) .........................................................................................11

Iwachiw v. New York City Bd. of Elections,
 126 Fed. Appx. 27 (2d Cir. 2005) ...........................................................................13

Kimber v. GMAC Mortgage, LLC (In re Residential Capital, LLC),
 489 B.R. 489 (Bankr. S.D.N.Y. 2013) .....................................................................13

Kiobel v. Royal Dutch Petroleum Co.,
 621 F.3d 111 (2d Cir. 2010), aff'd, 133 S. Ct. 1659 (2013) ....................................12

Korea Supply Co. v. Lockheed Martin Corp.,
 63 P.3d 937 (Cal. 2003) .....................................................................................17, 26

Lawrence v. Wells Fargo Bank, N.A.,
 No. C14-1272-PJH, 2014 U.S. Dist. LEXIS 81278 (N.D. Cal. June 13, 2014) ......23

McBride v. Boughton,
 20 Cal. Rptr. 3d 115 (Cal. Ct. App. 2004) ..........................................................25, 26

Nymark v. Heart Fed. Savs. & Loan Ass'n,
 283 Cal. Rptr. 53 (Cal. Ct. App. 1991) ....................................................................24

Otworth v. S. Pac. Trans. Co.,
 212 Cal. Rptr. 743 (Cal. Ct. App. 1985) ..................................................................19

Peterson Dev. Co. v. Torrey Pines Bank,
 284 Cal. Rptr. 367 (Cal. Ct. App. 1991) ..............................................................20, 23

Smith v. San Francisco,
 275 Cal. Rptr. 17 (Cal. Ct. App. 1990) ......................................................................3

Vaughn v. Air Line Pilots Ass'n, Int'l,
 604 F.3d 703 (2d Cir. 2010) .....................................................................................12

Woods v. Google, Inc.,
 889 F. Supp. 2d 1182 (N.D. Cal. 2012) ...................................................................23

STATUTES

11 U.S.C. § 502(a) ...................................................................................................11

15 U.S.C. § 1692a(6)(F)(iii) .....................................................................................14

iv

# TABLE OF AUTHORITIES

**Page**

CAL. BUS. & PROF. CODE ANN. § 17204 (2015) ............................................................26

CAL. BUS. PROF. CODE ANN. §§ 17200 (2015) ............................................................17

CAL. BUS. PROF. CODE ANN. § 17500 (2015) ............................................................18

CAL. CIV. CODE ANN. § 1565 (2015) ............................................................21

CAL. CIV. CODE ANN. § 1567 (2015) ............................................................21

CAL. CIV. CODE ANN. § 1568 (2015) ............................................................21

CAL. CIV. CODE ANN. § 1569 (2015) ............................................................21

CAL. CIV. CODE ANN. § 1570 (2015) ............................................................21

CAL. CIV. CODE ANN. § 1588 (2015) ............................................................22

CAL. CIV. CODE ANN. § 1589 (2015) ............................................................22

v

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the confirmed Chapter 11 plan in the above-captioned bankruptcy cases (the "Chapter 11 Cases") [Docket No. 6065], as successor in interest to the above-captioned debtors with respect to Borrower Claims (collectively, the "Debtors"), hereby submits this objection (the "Objection") seeking to disallow and expunge claim number 452 (the "Proof of Claim"), a copy of which is attached hereto as **Exhibit 1**, filed by Julio Pichardo ("Claimant"), pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In support of the Objection, the Borrower Trust relies upon and incorporates by reference the Declaration of Kathy Priore, Associate Counsel for The ResCap Liquidating Trust, annexed hereto as **Exhibit 2** (the "Priore Declaration"),[1] and the Declaration of Yaron Shaham, annexed hereto as **Exhibit 3** (the "Shaham Declaration"). In further support hereof, the Borrower Trust respectfully represents as follows:

## I.    PRELIMINARY STATEMENT

1.    The Proof of Claim asserts a $650,000 unsecured claim against GMAC Mortgage, LLC ("GMACM"). The Claimant alleges that GMACM failed to honor a loan modification agreement, harassed Claimant and threatened him with foreclosure even though his account was current, and mismanaged Claimant's account by misapplying funds and charging improper fees. Claimant further alleges that, as a result of such wrongful acts, his health

---

[1]    The ResCap Liquidating Trust and the Borrower Trust are parties to an Access and Cooperation Agreement, dated December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

ny-1179499

suffered.  Claimant's allegations are vague and conclusory, and are directly contradicted by the Debtors' books and records.  As such, they are not sufficient to support a finding of liability against GMACM.

2.      The Debtors' servicing records show that Claimant requested a loan modification from GMACM in 2009.  As part of that initial modification process, Claimant inquired about principal forgiveness.  GMACM consistently informed Claimant that no principal reduction would be granted, but that GMACM would instead defer a portion of the loan's principal.  Claimant was approved for a loan modification effective September 1, 2009 on very favorable terms.  Specifically, under the modified loan, $120,000 of principal was deferred, and the interest rate, which applied only to the remaining current principal loan balance of approximately $63,000, was reduced from 4% to 1%.  Shortly after execution, GMACM discovered that the initial modification agreement sent to Claimant erroneously failed to address the treatment of the $120,000 in deferred principal.  As a result of this material omission, the initial modification agreement did not reflect a meeting of the minds and did not constitute a binding contract.  Promptly after it discovered this material omission, GMACM notified Claimant of the error and sent him a corrected agreement, which incorporated a provision expressly providing for principal deferment.  That corrected agreement was executed by Claimant, notarized, and returned to GMACM, who countersigned it, thereby creating a valid, binding contract between the parties.

3.      Unhappy with the scope of the relief provided under the agreed-upon 2009 modification, Claimant renewed his efforts to obtain forgiveness of principal through another loan modification.  Despite repeated requests by Claimant, the Debtors determined he was ineligible for a further modification of the Loan.  In October 2010, nearly a year after his

ny-1179499

modification was granted and only after he was unable to obtain the desired principal forgiveness through a new modification, Claimant asserted for the first time that he was in fact provided with a principal reduction under the initial modification agreement and that GMACM had unilaterally changed the terms of the modification through the corrected agreement.  In an effort to evade the fact that he executed and notarized the corrected agreement, Claimant now alleges that he signed the agreement under duress; however, such allegations are not supported by the record.  This argument is nothing more than a transparent, last-ditch attempt to improperly extract a recovery from the Debtors' estates to which Claimant is not entitled.

4.       Based on the foregoing, the Borrower Trust has determined that Claimant does not hold a valid claim against GMACM.  Accordingly, the Proof of Claim should be disallowed and expunged.[2]

## II.       JURISDICTION, VENUE AND STATUTORY PREDICATE

5.       This Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007.

## III.       BACKGROUND

### A.       Chapter 11 Case Background

#### (i)                    General Overview

6.       On December 11, 2013, the Bankruptcy Court entered an *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "Confirmation Order") approving the

---

[2]       The Borrower Trust reserves all of its rights to object on any other basis to the Proof of Claim not set forth in this Objection, and to amend this Objection should any further bases come to light.

terms of the Chapter 11 plan, as amended (the "Plan"), filed in these Chapter 11 Cases [Docket No. 6065].[3]  On December 17, 2013, the Effective Date (as such term is defined in the Plan) occurred, and, among other things, the Borrower Trust and the ResCap Liquidating Trust were established [Docket No. 6137].

7.      The Plan provides for the creation and implementation of the Borrower Trust, which is established for the benefit of Borrowers who filed Borrower Claims (as such terms are defined in the Plan) to the extent such claims are ultimately allowed either through settlement or pursuant to an order of the Court. See Plan, Art. IV.F.  The Borrower Trust was established to, among other things, "(i) direct the processing, liquidation and payment of the Allowed Borrower Claims in accordance with the Plan, and the distribution procedures established under the Borrower Claims Trust Agreement, and (ii) preserve, hold, and manage the assets of the Borrower Claims Trust for use in satisfying the Allowed Borrower Claims." See id.

(ii)      **Claim Specific Background**

8.      On May 16, 2012, the Court entered an order [Docket No. 96] appointing Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in these Chapter 11 Cases.  Among other things, KCC is authorized to (a) receive, maintain, record, and otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain the official claims register for the Debtors (the "Claims Register").

9.      On August 29, 2012, this Court entered an order approving the Debtors' motion to establish procedures for filing proofs of claim in the Chapter 11 Cases [Docket No. 1309] (the "Bar Date Order").

---

[3]     Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

10.    On March 21, 2013, the Court entered an order (the "Procedures Order") [Docket No. 3294] approving, among other things, certain procedures to be applied in connection with objections to claims filed by current or former borrowers (collectively, the "Borrower Claims," and the procedures relating thereto, the "Borrower Claims Procedures").    The Procedures Order includes specific protections for borrowers and sets forth a process for the Debtors to follow before objecting to certain categories of Borrower Claims.    For example, the Borrower Claims Procedures require that, prior to objecting to certain categories of Borrower Claims, individual borrowers must be furnished with a letter requesting additional documentation in support of the purported claim (a "Request Letter").    (See Procedures Order at 4).

11.    On or about June 21, 2013, the Debtors sent Claimant a Request Letter. See Priore Decl. at ¶ 24.

12.    On or about June 28, 2013, Claimant returned a response to the Request Letter.    See Priore Decl. at ¶ 25.

**B.    The Pichardo Loan**

13.    Claimant is a borrower under a residential mortgage loan refinancing (the "Loan") that was originated by Home Star Mortgage Services, LLC (the "Lender"), on or about July 31, 2003.    See Priore Decl. at ¶ 6.    The Loan is evidenced by a note in the amount of $199,000.00 (the "Note"), which was secured by a deed of trust (the "Deed of Trust") on real property located at 1201 East Sudene Avenue, Fullerton, CA 92831 (the "Property").    Id.

14.    The Loan was transferred to HSBC Bank USA ("HSBC") as trustee when the Loan was securitized on or about January 1, 2004.    See Priore Decl. at ¶ 7.

15.    GMACM began servicing the Loan on or about November 3, 2003.    See Priore Decl. at ¶ 8.    GMACM transferred servicing to Ocwen Loan Servicing, LLC ("Ocwen")

5

on February 16, 2013 in connection with the Debtors' sale of their servicing platform, at which time the Loan account was current.  Id.

16.    In March 2009, Claimant requested a reduction in principal and interest payments on the Loan.  See Priore Decl. at ¶ 9.  He reiterated this request a number of times while his loan modification application remained pending.  Id.  Claimant was consistently advised that no principal forgiveness would be provided.  Id.

17.    On August 3, 2009, GMACM notified Claimant in writing that the Loan was in default, as the June 2009, July 2009 and August 2009 payments were overdue.  See Priore Decl. at ¶ 11.

18.    Claimant was approved for a permanent loan modification on July 31, 2009.  See Priore Decl. at ¶ 12.  Under the terms of the approved modification, the interest on the Loan was reduced from 4% to 1% and $120,000 of the principal balance was deferred, meaning that Claimant was to pay interest only on the current principal balance of $63,272.87, with the non-interest bearing principal deferment coming due when the Loan matured, was paid in full, or the Property was sold.  Id.  As a result of the modification, Claimant's monthly loan payments were reduced from approximately $1,550 to $622.53.  Id.  On or about August 8, 2009, Claimant entered into a Fixed Rate Loan Modification Agreement with GMACM (the "August Agreement"), which was effective as of September 1, 2009, and was intended to memorialize the terms of the approved modification.  Id.

19.    GMACM received the executed August Agreement from Claimant on August 10, 2009 and countersigned it on that date.  See Priore Decl. at ¶ 14.  On September 24, 2009, GMACM began to process the modification and determined that the loan modification needed to be reset.  Id.  Under the reset modification terms, the monthly principal and interest

6

payments increased by $0.77 from the original modification offer. <u>Id</u>. On September 28, 2009,

GMACM advised Claimant that the modification would need to be reset and further informed

Claimant on October 2, 2009 that GMACM would amend any negative reporting caused by the

reset once the new modification agreement was executed. <u>Id</u>.

20.     When GMACM began to process the reset modification it realized that the

August Agreement inadvertently failed to reference the amount of the principal balance

deferment. <u>See</u> Priore Decl. at ¶ 15. Specifically, the August Agreement refers only to the

current principal balance of $63,272.87 on which interest would continue to accrue, and was

completely silent regarding the treatment of the remaining $120,000 in deferred principal. <u>Id</u>. In

order to rectify this error, GMACM voided the August Agreement and sent Claimant corrected

loan modification documents on October 14 2009, with a return deadline of November 1, 2009.

<u>Id</u>. On October 27, 2009, Claimant advised that he had not received the corrected documents,

and, as a result, GMACM was required to reset the modification yet again. <u>Id</u>. All terms

remained the same except that the monthly principal and interest payments increased by $1.85

from the modification documents mailed on October 14, 2009.

21.     GMACM mailed corrected permanent modification documents to

Claimant on November 10, 2009. <u>See</u> Priore Decl. at ¶ 16. Claimant executed the corrected

documents on or about November 12, 2009, which were returned to GMACM on November 16,

2009, and became effective as of December 1, 2009 (the "<u>Corrected Agreement</u>"). <u>Id</u>. Under the

Corrected Agreement, Claimant's monthly payments were approximately $624.85. <u>Id</u>. Claimant

made timely payments under the Corrected Agreement until servicing was sold to Ocwen in

February 2013.

22.     Following entry into the Corrected Agreement, in March 2010, Claimant applied for a further loan modification.  <u>See</u> Priore Decl. at ¶ 17.  Despite having been previously advised that principal forgiveness could not be provided, Claimant renewed his request for cancellation of principal, which he pursued through numerous calls and letters to GMACM.  <u>See id</u>.; letter dated March 26, 2010; letter dated February 28, 2011; Comment History at pp. 66, 69, 70, 75, 81, 82, 83, 85, 86, 87, 89, 90, 92, 93, 94, 95, 112, 113, 116, 121, 140, 145.  GMACM ultimately determined that Claimant was ineligible for a further loan modification, including any principal reductions.  <u>See</u> Priore Decl. at ¶ 17.

### C.     The California Action

23.     On July 6, 2012, without leave of this Court, Claimant, represented by counsel, filed a complaint (the "<u>Initial</u> <u>Complaint</u>") commencing an action against GMACM in the Orange County Superior Court of California (the "<u>State Court</u>"), captioned <u>Julio Pichardo v. GMAC Mortgage; Does 1 to 10</u>, Case No. 30-2012-00581642-CU-CL-CJC (the "<u>California Action</u>").  <u>See</u> Priore Decl. at ¶ 21.  The Initial Complaint sought the imposition of monetary damages against GMACM.  <u>See</u> Initial Complaint, attached to Priore Decl. at <u>Exhibit R</u>, at 6-7.  Specifically, Claimant sought compensatory and punitive damages, restitution, and attorneys' fees for GMACM's alleged (a) violation of the Fair Debt Collection Practices Act ("<u>FDCPA</u>"); (b) negligent misrepresentation; and (c) unfair business practices and false advertising in violation of California Business and Professions Code sections 17200 and 17500, respectively.  Initial Complaint at 3-7.

24.     On July 30, 2012, the Debtors caused a notice of bankruptcy and suggestion of automatic stay to be served on Claimant's counsel in the California Action.  <u>See</u> Priore Decl. at ¶ 22.  In addition, the Debtors advised Claimant's counsel that the filing and

8

continued prosecution of certain claims set forth in the Initial Complaint violated the automatic stay by a letter dated July 30, 2012.  Id.[5]

25.    On February 24, 2014, Claimant filed a first amended complaint (the "First Amended Complaint"), which added Ocwen as a defendant and asserted claims for (a) breach of contract; (b) breach of covenant of good faith and fair dealing; (c) negligence; (d) unjust enrichment; and (e) violation of California Business and Professions Code section 17200.  See Sham Decl. at ¶ 3.

26.    On February 27, 2014, out of an abundance of caution, the Debtors filed another notice of bankruptcy and suggestion of automatic stay to be filed in the California Action.  See Sham Decl. at ¶ 4.

27.    On February 28, 2014, Ocwen filed a demurrer to the First Amended Complaint.  See  Sham Decl. at ¶ 5.

28.    On May 12, 2014, the State Court issued a ruling on Ocwen's demurrer to the First Amended Complaint, sustaining the demurrer with leave to amend as to the claim for negligence, sustaining the demurrer without leave to amend as to the claim for unjust enrichment, and overruling the demurrer with respect to all other causes of action.  See Sham Decl. at ¶ 6.

29.    On June 2, 2014, Claimant filed a second amended complaint against Ocwen (the "Second Amended Complaint"), which asserted claims for (a) breach of contract; (b) breach of covenant of good faith and fair dealing; (c) statutory relief; (d) violation of

---

[4]    On August 6, 2012, Claimant filed a motion with the Court seeking relief from the automatic stay to prosecute the California Action against GMACM.  See Docket No. 1026.  Following a hearing, the Court denied the motion on August 29, 2012.  [Docket No. 1307].

[5]    On August 6, 2012, Claimant filed a motion with the Court seeking relief from the automatic stay to prosecute the California Action against GMACM.  See Docket No. 1026.  Following a hearing, the Court denied the motion on August 29, 2012.  [Docket No. 1307].

9

California Business and Professions Code section 17200, and (e) injunctive relief.  <u>See</u> Shaham

Decl. at ¶ 7.  GMACM was removed as a named defendant, although the California Action was

never formally withdrawn with respect to GMACM.  <u>Id</u>.

30.    On June 3, 2014, counsel for the Liquidating Trust sent a letter advising

Claimant's new counsel that the continued prosecution of the California Action against GMACM

violated the automatic stay and requesting that GMACM be dismissed from the California

Action.  <u>See</u> Priore Decl. at ¶ 23.

31.    On June 10, 2014, Ocwen filed a demurer to the Second Amended

Complaint.  <u>See</u> Shaham Decl. at ¶ 8.

32.    On September 8, 2014, the State Court held a hearing on Ocwen's

demurrer to Claimant's Second Amended Complaint.  <u>See</u> Shaham Decl. at ¶ 9.  The State Court

held that Claimant met the minimum pleading standards for his claims for each of his claims

against Ocwen except those asserting statutory relief.  <u>Id</u>.

33.    The parties to the California Action attended mediation on April 21, 2015,

and it did not result in a settlement of the case.  <u>See</u> Shaham Decl. at ¶ 10.  The next scheduled

Court hearing in the California Action is set for June 1, 2015; specifically, an Alternative

Dispute Resolution Review Hearing.  <u>Id</u>.  At that time it is expected the Orange County Superior

Court will issue a trial date and other related dates and deadlines.  <u>Id</u>.

**D.    The Proof of Claim**

34.    On September 4, 2012, Claimant filed Claim No. 452 against GMACM in

the amount of $650,000.  <u>See</u> **Exhibit 1**.

35.    The Proof of Claim asserts that it is based on "Collection Practices –

Personal Injury."  <u>See id</u>.  In support, the Proof of Claim attaches only a copy of the Cease and

Desist Letter and an addendum referencing the California Action.

36.    In response to the Request Letter seeking additional information regarding the basis for the Proof of Claim, Claimant submitted a letter (the "Response Letter"), accompanied by a copy of the Initial Complaint, a page from a "Client Action Plan" that appears to have been prepared for Claimant by a debt counseling service, copies of various pleading filed by or in response to Claimant in these bankruptcy cases, and copies of correspondence sent by Claimant to the Debtors, Debtors' counsel, Ocwen and Wells Fargo.  See Exhibit W to Priore Decl.  The Response Letter and supporting materials refer vaguely to "improper collection calls", "mis-applied escrow payments," and improper notices of foreclosure or default, but do not specify the exact dates of such events or provide any documentary evidence that they occurred.

## IV.    RELIEF REQUESTED

37.    The Borrower Trust hereby files this Objection pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007, and seeks the entry of an order, substantially in the form annexed hereto as **Exhibit 4**, disallowing and expunging the Proof of Claim from the Claims Register because the allegations set forth in the Proof of Claim and supplemental materials submitted by Claimant do not establish any basis for liability of GMACM to Claimant.

## V.    OBJECTION

### A.    Applicable Legal Standard

38.    A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).  If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim.  See In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co. v. Oneida, Ltd., No. 09-cv-2229, 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010); In re Rockefeller Ctr. Props., 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v. Rockefeller Ctr. Props. (In re Rockefeller Ctr. Props), 266 B.R. 52 (S.D.N.Y. 2001), aff'd, 46

Fed. Appx. 40 (2d Cir. 2002). Moreover, section 502(b)(1) of the Bankruptcy Code provides, in

relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable

against the debtor and property of the debtor, under any agreement or applicable law…." 11

U.S.C. § 502(b)(1). Furthermore, the burden of persuasion is on the holder of a proof of claim to

establish a valid claim against a debtor. Feinberg v. Bank of N.Y. (In re Feinberg), 442 B.R.

215, 220-22 (Bankr. S.D.N.Y. 2010).

   39. Federal pleading standards apply when assessing the validity of a proof of

claim. See, e.g., In re Residential Capital, LLC, 518 B.R. 720, 731 (Bankr. S.D.N.Y. 2014); In

re DJK Residential LLC, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a

party has met their burden in connection with a proof of claim, bankruptcy courts have looked to

the pleading requirements set forth in the Federal Rules of Civil Procedure." (citations omitted)).

Accordingly, a claimant must allege "enough facts to state a claim for relief that is *plausible* on

its face." Vaughn v. Air Line Pilots Ass'n, Int'l, 604 F.3d 703, 709 (2d Cir. 2010) (citing

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)) (emphasis in original). "Where a complaint pleads

facts that are merely consistent with a defendant's liability, it stops short of the line between

possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 678 (citation and internal

quotation marks omitted). Plausibility "is not akin to a probability requirement," but rather

requires "more than a sheer possibility that a defendant has acted unlawfully." Id. (citation and

internal quotation marks omitted). The court must accept all factual allegations as true,

discounting legal conclusions clothed in factual garb. See, e.g., id. at 677-78; Kiobel v. Royal

Dutch Petroleum Co., 621 F.3d 111, 124 (2d Cir. 2010), aff'd, 133 S. Ct. 1659 (2013) (stating

that a court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint

to be true" (citing Iqbal, 556 U.S. at 678)).  The court must then determine if these well-pleaded

factual allegations state a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citation omitted).

40.    Although "[claims] drafted by pro se [claimants] are to be construed

liberally, [] they must nonetheless be supported by specific and detailed factual allegations

sufficient to provide the court and the defendant with 'a fair understanding of what the [claimant]

is complaining about and . . . whether there is a legal basis for recovery.'"  Kimber v. GMAC

Mortgage, LLC (In re Residential Capital, LLC), 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013)

(ellipsis in original) (quoting Iwachiw v. New York City Bd. of Elections, 126 Fed. Appx. 27, 29

(2d Cir. 2005)).

### B.    The Proof of Claim Lacks Merit

41.    Prior to filing this Objection, the Borrower Trust  conducted an exhaustive

examination of the Debtors' books and records to assess the allegations made in the Proof of

Claim, as supplemented, in an attempt to reconcile the Proof of Claim and Response Letter with

the information in the Debtors' books and records.  See Priore Decl. at ¶ 5.  Specifically, the

Borrower Trust reviewed, among other documents, the payment history with respect to the Loan,

the Debtors' internal servicing notes, and correspondence between Claimant and GMACM with

respect to the foregoing.  Id.  In addition, the Borrower Trust reviewed documents filed in

connection with the California Action.  Id.

42.    Based on the foregoing and as further supported by the Priore Declaration,

the Borrower Trust determined that the Debtors have no liability with respect to each of the

causes of action set forth in the Initial Complaint or the First Amended Complaint.  Accordingly,

for the reasons set forth below, the Borrower Trust requests that the Proof of Claim asserted

against GMACM be disallowed and expunged with prejudice.

**(i)       Claims Asserted in the Initial Complaint**

**a.       <u>Violation of the FDCPA</u>**

43.      Claimant has asserted a claim for violation of the FDCPA, based on allegations that GMACM employees harassed and abused Claimant in an effort to collect on the Loan.  <u>See</u> Initial Complaint at ¶¶ 19-28.  Claimant further alleges that such violations caused him to suffer severe emotional distress, including numerous hospitalizations.  <u>Id</u>.

44.      In the first instance, the FDCPA is inapplicable here.  For purposes of the FDCPA, the definition of "debt collector" contains an exemption for an entity, such as a mortgage servicer, that collects debts that were "not in default at the time [they were] obtained" by the entity.  15 U.S.C. § 1692a(6)(F)(iii).  GMACM began servicing the Loan in February 2004, shortly after inception, at which time the Loan was current.  <u>See</u> Priore Decl. at ¶ 8.  Therefore, GMACM is not a "debt collector" for purposes of the FDCPA, and accordingly, Claimants' claim for violation of the FDCPA fails.  <u>Casault v. Fed. Nat'l Mortg. Ass'n</u>, 915 F. Supp. 2d 1113, 1126 (C.D. Cal. 2012) ("FDCPA's definition of debt collector does not include the consumer's creditors, a mortgage serving company, or any assignee of the debt, *so long as the debt was not in default at the time it was assigned*.") (citation omitted)(emphasis in original).

45.      Moreover, the Debtors' books and records reflect that Claimant was current on his Loan payments at all times after entry into the Corrected Agreement on December 1, 2009 through the date servicing was transferred to Ocwen.  <u>See</u> Priore Decl. at ¶¶ 8, 16.  Claimant's Loan file does not contain copies of any correspondence stating that Claimant was in default or at risk of foreclosure except for two standard letters advising Claimant about potential options to avoid foreclosure dated June 2009 and July 2009, and a notice of default dated August 2009.  <u>See</u> Priore Decl. at ¶ 11.

14

46. Claimant's allegations that GMACM contacted him repeatedly to collect Loan payments that were not past due are not supported by any documentary evidence and are simply not credible. Indeed, the servicing notes related to the Loan reflect that, although there were indeed "numerous phone calls throughout 2011 and 2012," (Initial Complaint at ¶ 24), the vast majority of those calls were placed by Claimant to GMACM. See Priore Decl. at ¶ 20. During those calls, which were often made multiple times per week, Claimant raised a variety of issues, including requesting a further modification of his Loan and inquiring about possibility of receiving a settlement payment under the DOJ/AG Consent Order. See Priore Decl. at ¶ 20; Comment History at pp. 85-128 (highlighting various notations such as "b2 ci" or "b1 cld," which indicate that "borrower called" or 'borrower called in"). The outgoing calls placed by GMACM were largely placed to respond to Claimant's inquiries. Id. Thus, the Debtors' books and records show that, far from harassing Claimant, the Debtors were merely responding to Claimant's frequent and repeated requests for information.

### b.     Negligent Misrepresentation

47. Claimant has asserted a claim for negligent misrepresentation against GMACM, based on alleged statements by employees and agents of GMACM that Claimant's Loan was in default. See Initial Complaint at ¶¶ 29-37. The elements of negligent misrepresentation are: "(1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages." Fox v. Pollack, 226 Cal. Rptr. 532, 537 (Cal. Ct. App. 1986) (citation omitted). Claimant's claim for negligent misrepresentation fails because he has not adequately alleged facts that would support each of the requisite elements.

15

48.     First, as set forth above, Claimant has not credibly alleged with any

specificity that the information provided to Claimant by GMACM regarding the status of his

Loan was false.  See Chapman v. Skype Inc., 220 Cal. App. 4th 217, 231 (Cal. App. 2d Dist.

2013) (both negligent and intentional misrepresentation claims require particularized pleading

similar to that required for fraud claims).  Nor has Claimant demonstrated how he could have

reasonably relied on information that he was in default or that the Debtors would seek to

foreclose when he also allegedly responded to each such call that his Loan was current.  See

Initial Complaint at ¶ 21.

49.     Finally, Claimant cannot establish that the alleged damages he suffered

were a result of GMACM's conduct.  The only damage Claimant identifies (other than

unspecified monetary damages) is the deterioration of his health due to "severe emotional

distress," and the attendant medical expenses.[6]  See Initial Complaint at ¶¶ 28, 34.  However, as

early as April 2009—well before GMACM's wrongful acts are alleged to have occurred—

Claimant indicated to GMACM that he was already suffering from a litany of health problems

constituting total permanent disability, which included issues with his "heart, hip, hernias,

arthritis, migranes, [and] stress condition," and had resulted in multiple hospitalizations.  See

April 24, 2009 Workout Package, annexed to Priore Decl. as Exhibit F, at 4.  Because Claimant's

health problems pre-date any alleged wrong-doing by GMACM, Claimant cannot demonstrate

that GMACM is the proximate cause of those injuries.  To the contrary, GMACM worked with

Claimant to provide him with a loan modification that significantly reduced his monthly

---

[6]     The Borrower Trust reserves all rights to object to the amount of Claimant's damages should the Court find that
Claimant holds valid claims against the Debtors, including on the basis that Claimant is not entitled to damages
based on personal injuries under California law.

ny-1179499

payments, suggesting that, if anything, GMACM's actions may have had a positive impact on any stress Claimant suffered due to his financial obligations.

### c.    Violation of California Business & Professional Code § 17200 – Unfair Competition Law

50.    Claimant has asserted a claim for violations of section 17200 of the California Business & Professional Code, referred to as the "unfair competition law (the "UCL"). See Initial Complaint at ¶¶ 38-40.  Specifically, Claimant asserts that, GMACM's agents and employees falsely informed Claimant that his Loan was in default and that he was subject to foreclosure and criminal liability if he did not make additional payments and, as a result, GMACM engaged in unlawful, unfair and fraudulent business practices. Id. CAL. BUS. PROF. CODE ANN. §§ 17200 et seq. prohibits any person from engaging in unfair competition, which is defined to include "any unlawful, unfair or fraudulent business act or practice…."  The statute covers a wide range of conduct, embracing "anything that can properly be called a business practice and that at the same time is forbidden by law."  Korea Supply Co. v. Lockheed Martin Corp., 63 P.3d 937, 943 n.4 (Cal. 2003).  While the scope of conduct covered by the UCL is broad, its remedies are limited.  A UCL action is equitable in nature; damages cannot be recovered.  Id. at 943 (citing Bank of the West v. Superior Court, 833 P.2d 545 (Cal. 1992)). Under the UCL, "[p]revailing plaintiffs are generally limited to injunctive relief and restitution." Id. (citing Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 973 P.2d 527 (Cal. 1999)).  Thus, "[u]nder the UCL, an individual may recover profits unfairly obtained to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest."  Korea Supply Co. v. Lockheed Martin Corp., 63 P.3d at 947.

51.    As an initial matter, the Borrower Trust disputes Claimant's allegations that GMACM engaged in any conduct that could give rise to a violation of the UCL.  Moreover,

Claimant has not shown that he is entitled to any remedy available under the UCL. GMACM is

no longer servicing Claimant's Loan, so any request for injunctive relief is moot. With respect to

any request for restitution, Claimant alleges that GMACM requested "additional payments which

were not due," but nowhere in the Initial Complaint does he allege that he actually made any

such payments. <u>See</u> Initial Complaint at ¶ 40. Thus, Claimant has not alleged facts that would

support an award of restitution under the UCL. Accordingly, Claimant's claims for violations of

the UCL fail as a matter of law and should be disallowed.

### d.    Violation of California Business & Professional Code § 17500 – False Advertising Law

52.    Claimant has asserted a claim for violations of § 17500 of the California

Business & Professional Code, referred to as the false advertising law (the "<u>FAL</u>"), again based

on allegations that GMACM's agents and employees falsely told Claimant that his Loan was in

default and threatened him with foreclosure. <u>See</u> Initial Complaint at ¶¶ 41-43. The FAL

concerns false advertising practices, and provides in relevant part that:

> [I]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or <u>to perform services</u>, professional or otherwise, . . . <u>or to induce the public to enter into any obligation relating thereto</u>, to make or disseminate . . . <u>in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet</u>, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading….

CAL. BUS. PROF. CODE ANN. § 17500 (2015) (emphasis added).

53.    The FAL is simply inapplicable here. Claimant has not alleged that

GMACM's agent or employees were attempting to induce him to enter into any obligation to

receive services from GMACM via any advertising device or public statement. Rather, Claimant

has alleged that GMACM was already servicing his loan, but was doing so in an improper

manner. Accordingly, Claimant's FAL claim fails and should be disallowed.

(ii)         **Claims Asserted in the First Amended Complaint**

54.     Pursuant to Article VIII.C of the Plan, a claim may not be amended

without prior authorization of this Court or the Borrower Claims Trustee. <u>See</u> Plan at Art.

VIII.C. Claimant did not seek to amend his Proof of Claim following the filing of the First

Amended Complaint and the First Amended Complaint has not otherwise been submitted in

support of the Proof of Claim. Accordingly, the First Amended Complaint is not part of the

Proof of Claim, and the Borrower Trust need not address it here. Nonetheless, the Borrower

Trust has reviewed that pleading and, out of an abundance of caution and for the sake of

completeness, will address each of the claims and causes of action set forth therein. For the

reasons set forth below, each of the claims and causes of action asserted by Claimant against

GMACM in the First Amended Complaint also fail and should be disallowed.

a.         <u>**Breach of Contract**</u>

55.     Plaintiff has asserted a claim for breach of contract on the basis that

GMACM failed to honor the terms of the August Agreement. First Amended Complaint at

¶¶ 21-24. To state a cause of action for breach of contract, a plaintiff must plead (1) the

existence of a contract, (2) his performance of the contract or excuse for nonperformance, (3) the

defendant's breach, and (4) the resulting damage. <u>Otworth v. S. Pac. Trans. Co.</u>, 212 Cal. Rptr.

743, 747 (Cal. Ct. App. 1985). Claimant's breach of contract claim fails as a matter of law

because (1) he cannot demonstrate that the August Agreement is a valid contract, and (2) to the

extent the August Agreement was a valid contract, it was nonetheless superseded by the

Corrected Agreement.

19

56.    The Debtors' servicing records show that although Claimant requested a principal reduction, he was informed prior to receiving the August Agreement that he would not be receiving a principal reduction, but would instead be granted a principal deferment. Comment History at p. 43. Those records further show that GMACM explained that the deferred principal would remain outstanding and would need to be repaid if Claimant paid off or refinanced the Loan, and that Claimant indicated he understood. Id. The August Agreement did not reference the principal deferment, nor did it reference a reduction of principal—it was entirely silent (inadvertently) as to the treatment of the $120,000 of additional principal owed on the Loan at the time the agreement was drafted. Courts have held that, where a material term is omitted from a written instrument, no binding agreement could have been reached, and no enforceable contract is created. Peterson Dev. Co. v. Torrey Pines Bank, 284 Cal. Rptr. 367, 374 (Cal. Ct. App. 1991) (holding that, in the context of a loan commitment, "'[w]hen the commitment does not contain all of the essential terms . . . the prospective borrower cannot rely reasonably on the commitment, and the lender is not liable for either a breach of the contract or promissory estoppel.' The material terms of a loan include the identity of the lender and borrower, the amount of the loan, and the terms for repayment.") (internal citations omitted). The treatment of the $120,000 of additional principal was a material term of the modification (see Priore Decl. ¶ 12), and its omission from the August Agreement meant that Claimant could not, and did not, create a binding contract by executing the August Agreement.

57.    Even if the August Agreement did constitute a valid contract, it was nonetheless superseded by the Corrected Agreement, which was executed by Claimant and notarized, and contains an express statement that, together with the Note and Deed of Trust, it sets forth the entire understanding between the parties. See Corrected Agreement at 4.

58.    Claimant's belated allegations that he signed the Corrected Agreement under duress are unavailing.  Under California law, "[t]he consent of the parties to a contract must be:  (1) Free; (2) Mutual; and (3) Communicated by each to the other.  CAL. CIV. CODE ANN. § 1565 (2015).  An apparent consent is not real or free when obtained through: (1) duress; (2) menace; (3) fraud; (4) undue influence; or (5) mistake.  CAL. CIV. CODE ANN. § 1567 (2015). Consent is deemed to have been obtained through one of these methods only when it would not have been given had such cause not existed.  CAL. CIV. CODE ANN. § 1568 (2015).  Further, duress requires:  "(1) Unlawful confinement of the person of the party . . .; (2) Unlawful detention of the property of any such person; or, (3) Confinement of such person, lawful in form, but fraudulently obtained, or fraudulently made unjustly harassing or oppressive.  CAL. CIV. CODE ANN. § 1569 (2015).  Menace consists in a threat:  (1) of duress as specified in items 1 and 3 of the preceding sentence; (2) of unlawful and violent injury to the person or property of any such person; or (3) of injury to the character of any such person.  CAL. CIV. CODE ANN. § 1570 (2015).

59.    Claimant alleges that GMACM induced him to sign the Corrected Agreement by threatening him with foreclosure of his Property.  At the time the August Agreement was signed, Claimant was in default under the Loan.  Any statement by GMACM employees that GMACM could seek to foreclose if Claimant did not become current on his Loan (whether through loss mitigation efforts or some other means) was not a threat—it was merely a statement of GMACM right, in its capacity as servicer, to enforce the terms of the Deed of Trust. See Deed of Trust, ¶ 22 (providing that, in the event of a default by borrower that remains uncured, "Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other

remedies permitted by Applicable Law.").  Moreover, the Debtors' servicing records are clear

that Claimant was informed both prior to and after executing the August Agreement that he was

not receiving a principal reduction, and that Claimant wanted to move forward with a

modification.  Thus, the record shows that Claimant would have executed the Corrected

Agreement notwithstanding any "threat" by GMACM.  Accordingly, Claimant has not proffered

any specific evidence that his consent to the Corrected Agreement was not freely given.

60.    Furthermore, "[a] contract which is voidable solely for want of due

consent may be ratified by a subsequent consent.  CAL. CIV. CODE ANN. § 1588 (2015).  "A

voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the

obligations arising from it, so far as the facts are known, or ought to be known, to the person

accepting."  CAL. CIV. CODE ANN. § 1589 (2015).  Thus, assuming *arguendo* that Claimant did

initially consent to the Corrected Agreement because of perceived threats made by GMACM,

such that his consent obtained was through menace, he ratified the agreement by accepting the

benefit of the Corrected Agreement in the form of lower monthly Loan payments, and by making

those payments every month until servicing was transferred to Ocwen more than three years

later.

61.    For the reasons set forth above, Claimant's breach of contract claim

against GMACM fails as a matter of law, and should be disallowed.

b.    **Breach of Covenant of Good Faith and Fair Dealing**

62.    Plaintiff has asserted a claim for breach of covenant of good faith and fair

dealing on the basis that GMACM did not act in good faith when it allegedly "demanded" that

Claimant execute the Corrected Agreement to "unilaterally change the terms of the loan

modification from a principal forgiveness to a principal deferment."  First Amended Complaint,

annexed to Shaham Decl. as Exhibit A, at ¶¶ 25-30.  In order to sustain a claim under this cause

22

of action, a plaintiff must prove:  (1) the existence of a contractual relationship, (2) the existence

of an implied duty, (3) a breach of that duty, and (4) damages cause by the breach.  <u>Smith v. San</u>

<u>Francisco</u>, 275 Cal. Rptr. 17, 23 (Cal. Ct. App. 1990).  An underlying contract is required to state

a claim for breach of covenant of good faith and fair dealing.  <u>Peterson Dev. Co. v. Torrey Pines</u>

<u>Bank</u>, 284 Cal. Rptr. at 375.  As set forth above, the August Agreement did not constitute a

binding contract or, if it did, Claimant voluntarily entered into a contract superseding the August

Agreement.

63.    Nor was it a breach of any implied duty for GMACM to request that

Claimant cooperate in re-executing an agreement to correct a material omission in the document.

"The elements of a cause of action for breach of the implied covenant of good faith and fair

dealing are the same as the elements of a cause of action for breach of contract, except that

instead of showing that the defendant breached the contract, 'the plaintiff must show, in essence,

that defendant deprived the plaintiff of a benefit conferred by the contract in violation of the

parties' expectations at the time of contracting.'"  <u>Lawrence v. Wells Fargo Bank, N.A.</u>, No.

C14-1272-PJH, 2014 U.S. Dist. LEXIS 81278, at *26-27 (N.D. Cal. June 13, 2014) (citing

<u>Curley v. Wells Fargo & Co.</u>, 2014 U.S. Dist. LEXIS 30872, at *18 (N.D. Cal. Mar. 10, 2014);

<u>Woods v. Google, Inc.</u>, 889 F. Supp. 2d 1182, 1194 (N.D. Cal. 2012)).  Here, GMACM

requested that that Claimant execute a corrected agreement to ensure that the parties'

expectations at the time of contracting were <u>enforced</u>, not violated, by correcting the agreement

to prevent Claimant from being provided with an unintended windfall.

64.    Accordingly, Claimant cannot establish the existence of the first and third

elements necessary to sustain this claim, and it should be disallowed.

### c.  <u>Negligence</u>

65.    Claimant has asserted a claim for negligence on the basis that GMACM

failed to accurately calculate and credit payments made by Claimant, prepared and filed false

documents, and threatened foreclosure without having the legal authority to do so.  First

Amended Complaint at ¶¶ 31-34.  Claimant's negligence claim fails because he cannot show that

GMACM owed him a duty of care.  "The existence of a duty of care owed by a defendant to a

plaintiff is a prerequisite to establishing a claim for negligence."  <u>Nymark v. Heart Fed. Savs. &</u>

<u>Loan Ass'n</u>, 283 Cal. Rptr. 53, 56 (Cal. Ct. App. 1991).  With respect to lenders and their agents,

"as a general rule, a financial institution owes no duty of care to a borrower when the

institution's involvement in the loan transaction does not exceed the scope of its conventional

role as a mere lender of money. . . Liability to a borrower for negligence arises only when the

lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money

lender.'"  <u>Id</u>. at 56-57 (citations omitted).

66.    Claimant has alleged no facts suggesting that GMACM was anything

more than that of an agent of a mere money lender.  Accordingly, Claimant has failed to

establish that GMACM owed him a duty of care that could give rise to a claim for negligence.

67.    Moreover, Claimant has not identified with specificity any alleged

negligent acts by GMACM—the First Amended Complaint asserts only that he "received

statements from GMACM that he owed more money in undisclosed fees and costs" and that

GMACM threatened Claimant with foreclosure if he did not pay the additional fees and costs.

First Amended Complaint at ¶ 15.  He has not identified those fees and costs, has not

documented any threats of foreclosure, and has not identified any allegedly "prepared and filed

false documents."  These vague and unsupported allegations are insufficient to establish a claim

for negligence against GMACM.  <u>See</u>, <u>e.g.</u>, <u>Cary v. Los Angeles R. Co.</u>, 157 Cal. 599, 603 (Cal.

24

1910) ("While it is permissible to charge negligence in general terms, it is nevertheless necessary

to specify the particular act or acts alleged to have been negligently done.").  Moreover, the

Debtors' books and records show that the Debtors properly managed Claimant's account, and do

not reflect any misapplication of payments or charging of improper fees.  See Priore Decl. at

¶¶ 18, 19; Exhibit Q to the Priore Decl. (summary of transactions related to the Loan's escrow

account, from the date the Loan was acquired from Lender through the date servicing was

transferred to Ocwen); Exhibit C to the Priore Decl. (payment history for the Loan from the date

GMACM began servicing the Loan through February 16, 2013, when servicing was transferred

to Ocwen).

### d.    Unjust Enrichment

68.    Claimant has asserted a claim for unjust enrichment on the basis that

GMACM, through its allegedly wrongful acts, was unjustly enriched at Claimant's expense.

First Amended Complaint at ¶¶ 35-37.  This claim fails because unjust enrichment is not a

separate cause of action; rather, it is synonymous with restitution.  McBride v. Boughton, 20 Cal.

Rptr. 3d 115, 121 (Cal. Ct. App. 2004) ("Unjust enrichment is not a cause of action, however, or

even a remedy, but rather 'a general principle, underlying various legal doctrines and remedies' .

. . It is synonymous with restitution." (citation omitted)).  Significantly, the California Court

dismissed Claimant's unjust enrichment claim against Ocwen without leave to amend on this

basis.  See Exhibit D to Shaham Decl. at Exhibit 1, p. 2.

69.    A claim for restitution is only viable if one unjustly receives a benefit

from another.  First Nationwide Savs. v. Perry, 15 Cal. Rptr. 2d 173, 176 (Cal. Ct. App. 1992)

("The person receiving the benefit is required to make restitution only if the circumstances are

such that, as between the two individuals, it is unjust for the person to retain it.").  According to

the California Court of Appeal, restitution may be awarded "in lieu of breach of contract

damages" or where a defendant "obtained a benefit from the plaintiff by fraud, duress,

conversion, or similar conduct." McBride, 20 Cal. Rptr. 3d at 121-22.

70.      Claimant's First Amended Complaint fails to state any allegations that

would support an award of unjust enrichment.  His contractual allegations are incomplete, and he

has not alleged any specific benefit retained by GMACM.  Accordingly, Claimant has failed to

state any independently viable claim that could give rise to a claim for unjust enrichment.

### e.      Violation of California Business & Professional Code § 17200 – Unfair Competition Law

71.      Under the First Amended Complaint, Claimant has asserted a claim for

violations of the UCL based on additional allegations that, among other things, GMACM

assessed improper or excessive account fees, improperly characterized customers' accounts as

being late or in default, and improperly threatened customers' homes as being on the verge of

foreclosure.  See First Amended Complaint at ¶¶ 15, 41-44.

72.      Under the UCL, "unfair competition actions can be brought by a public

prosecutor or 'by any person acting for the interests of itself, its members or the general

public….'" CAL. BUS. & PROF. CODE ANN. § 17204 (2015)(citation omitted); Korea Supply Co.

v. Lockheed Martin Corp., 63 P.3d at 943.  However, Claimant's vague and conclusory

statements regarding GMACM's general business practices with respect to other borrowers are

not sufficient to satisfy the basic pleading standards with respect to a claim brought by Claimant

on behalf of the general public.

73.      With respect to claims for UCL violations brought by Claimant on his own

behalf, as set forth above, the Borrower Trust disputes that GMACM engaged in any wrongful

conduct with respect to Claimant's Loan.  Further, the only remedies available under the UCL

are injunctive relief and restitution.  Bank of the West v. Superior Court, 833 P.2d at 548.  Any

26

request for injunctive relief is moot as GMACM is no longer servicing Claimant's Loan.  With respect to restitution, Claimant's First Amended Complaint alleges that, at GMACM's demand, he made "irregular payments" on account of "undisclosed fees and costs."  See First Amended Complaint at ¶ 15.  However, Claimant does not identify or quantify any such fees and costs and, as set forth above, the Borrower Trust has found no evidence that any improper charges were applied to Claimant's account.  See Priore Decl. at ¶ 19.  Moreover, the payment history for the Loan reflects that, where Claimant remitted payments in excess of the monthly amounts due, the excess amounts were recorded as "curtailment" payments and applied to reduce the principal balance of Claimant's Loan pursuant to the terms of the Note.  Id.  Thus, any irregular payments made by Claimant inured to Claimant's benefit, and were not retained by GMACM for its own account.  Accordingly, in the absence of any evidence supporting Claimant's allegations, his claim against GMACM for violations of the UCL should be disallowed.

## VI.    NOTICE

74.    The Borrower Trust has provided notice of this Objection in accordance with the Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141], and the Procedures Order.

## VII.    CONCLUSION

WHEREFORE, the Borrower Trust respectfully requests entry of an order, substantially in the form of **Exhibit 4** attached hereto, (a) disallowing and expunging the Proof of Claim with prejudice, and (b) granting such other and further relief as is just and proper.

27

Dated:  June 1, 2015
   New York, New York

/s/  Norman S. Rosenbaum

Norman S. Rosenbaum
Jordan A. Wishnew
Erica J. Richards
MORRISON & FOERSTER LLP
250 W. 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for The ResCap Borrower Claims Trust*