**<u>Exhibit 2</u>**

**Priore Declaration**

12-12020-mg    Doc 8676-3    Filed 06/01/15    Entered 06/01/15 17:43:47    Exhibit 2
Pg 1 of 11

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------------------  )
                                                                                   )
In re:                                                                             )    Case No. 12-12020 (MG)
                                                                                   )
RESIDENTIAL CAPITAL, LLC, et al.,                                                  )    Chapter 11
                                                                                   )
           Debtors.                                                                )    Jointly Administered
--------------------------------------------------------------------------------  )

**DECLARATION OF KATHY PRIORE WITH RESPECT TO**
**OBJECTION OF THE RESCAP BORROWER CLAIMS TRUST**
**TO CLAIM NUMBER 452 FILED BY JULIO PICHARDO**

I, Kathy Priore, hereby declare as follows:

**A.      Declarant's Background and Qualifications**

1.      I serve as Associate Counsel for The ResCap Liquidating Trust (the "Liquidating Trust"), established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al., and the Official Committee of Unsecured Creditors* [Docket No. 6030] confirmed in the above-captioned chapter 11 cases (the "Chapter 11 Cases"). During the Chapter 11 Cases, I served as Associate Counsel in the legal department at Residential Capital, LLC ("ResCap"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "Debtors"). I joined ResCap on May 1, 2008 as in-house litigation counsel. Prior to my in-house litigation counsel position, I held various roles within the legal department at ResCap.

2.      In my role as Associate Counsel at ResCap, I was responsible for the management of residential mortgage-related litigation. In connection with ResCap's chapter 11 filing, I also assisted the Debtors and their professional advisors in connection with the administration of the Chapter 11 Cases, including the borrower litigation matters pending before

ny-1188685

this Court. In my current position as Associate Counsel to the Liquidating Trust, among my

other duties, I continue to assist the Liquidating Trust and Borrower Claims Trust (the "Borrower

Trust") in connection with the claims reconciliation process.[1]  I am authorized to submit this

Declaration with respect to the *Objection of the ResCap Borrower Claims Trust to Claim*

*Number 452 Filed By Julio Pichardo* (the "Objection").[2]

3.    In my current and former capacities as Associate Counsel to the

Liquidating Trust and ResCap, I am intimately familiar with the Debtors' claims reconciliation

process.  Except as otherwise indicated, all statements in this Declaration are based on my

familiarity with the Debtors' Books and Records (the "Books and Records"), as well as the

Debtors' schedules of assets and liabilities and statements of financial affairs filed in these

Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or

my review of relevant documents.  I, or other Liquidating Trust personnel, have reviewed and

analyzed the proof of claim form and supporting documentation filed by Claimant.  Since the

Plan went effective and the Borrower Trust was established, I, along with other members of the

Liquidating Trust, have consulted with the Borrower Trust to continue the claims reconciliation

process, analyze claims and determine the appropriate treatment of the same.  In connection with

such review and analysis, where applicable, I, or other Liquidating Trust personnel, together with

professional advisors, have reviewed (i) information supplied or verified by former personnel in

departments within the Debtors' various business units, (ii) the Books and Records, (iii) the

---

[1]    The ResCap Liquidating Trust and the ResCap Borrower Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the Books and Records held by the Liquidating Trust and the Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

[2]    Capitalized terms not defined herein shall have the meanings ascribed to them in the Objection.

ny-1188685

Schedules, (iv) other filed proofs of claim, and/or (v) the official claims register maintained in the Debtors' Chapter 11 Cases.

4.      Except as otherwise indicated, all facts set forth in this Declaration are based upon my familiarity with the Debtors' Books and Records, information learned from my review of relevant documents, and information I received through my discussions with other former members of the Debtors' management or other former employees of the Debtors and/or the Liquidating Trust's or Borrower Trust's professionals and consultants.  If I were called upon to testify, I could and would testify competently to the facts set forth in the Objection on that basis.

5.      The Liquidating Trust's personnel have examined the Proof of Claim and supplemental materials submitted by Claimant in support of the Proof of Claim, as well as the Debtors' Books and Records in order to (a) assess the allegations made in the Proof of Claim, and (b) verify that the Debtors followed the applicable guidelines and policies regarding loan modifications and escrow accounts with respect to the Proof of Claim.  Specifically, the Liquidating Trust reviewed, among other documents, the payment history with respect to the Loan, analyses of the escrow account associated with the Loan, the Debtors' internal servicing notes, and correspondence between Claimant and the Debtors with respect to the foregoing.  In addition, the Liquidating Trust reviewed documents filed in connection with the California Action.

**B.      The Pichardo Loan**

      **1.      Background**

6.      Claimant is a borrower under a residential mortgage loan refinancing (the "Loan") that was originated by Home Star Mortgage Services, LLC (the "Lender"), on or about

ny-1188685

July 31, 2003.  The Loan is evidenced by a note in the amount of $199,000.00 (the "Note"), which was secured by a deed of trust (the "Deed of Trust") on real property located at 1201 East Sudene Avenue, Fullerton, CA 92831 (the "Property").  Copies of the Note and Deed of Trust are annexed hereto as **Exhibits A** and **B**, respectively.

7.       The Loan was transferred to HSBC Bank USA ("HSBC") as trustee when the Loan was securitized on or about January 1, 2004.  See Note at 3.

8.       GMACM began servicing the Loan on or about November 3, 2003.  At the time GMACM began servicing the Loan, it was current.  See Payment History at 8, annexed hereto as **Exhibit C**.  GMACM transferred servicing to Ocwen Loan Servicing, LLC ("Ocwen") on February 16, 2013 in connection with the Debtors' sale of their servicing platform, at which time the Loan account was current.  See id. at 2.

   **2.       Loss Mitigation**

9.       In March 2009, Claimant requested a reduction in principal and interest payments on the Loan.  See letter dated March 6, 2009, annexed hereto as **Exhibit D**.  He reiterated this request a number of times while his loan modification application remained pending.  See Comment History, annexed hereto as **Exhibit E**, at 34, 35, 47.  Claimant was consistently advised that no principal forgiveness would be provided.  See id. at 35, 47.

10.      Beginning in April 2009, Claimant indicated to GMACM in his loan modification application materials that he was suffering from a litany of health problems constituting total permanent disability, which included issues with his "heart, hip, hernias, arthritis, migranes, [and] stress condition," and had resulted in multiple hospitalizations.  See April 24, 2009 Workout Package, annexed hereto as **Exhibit F**, at 4.

4

ny-1188685

11.     On August 3, 2009, GMACM notified Claimant in writing that the Loan was in default, as the June 2009, July 2009 and August 2009 payments were overdue.  See August 3, 2009 Breach Letter, annexed hereto as **Exhibit G**.  Claimant's Loan file contains no other correspondence stating that Claimant was in default or at risk of foreclosure except for two letters advising Claimant about potential options to avoid foreclosure dated June 2009 and July 2009.  See June and July 2009 letters, annexed hereto as **Exhibits H** and **I**, respectively.

12.     Claimant was approved for a permanent loan modification on July 31, 2009.  See Comment History at 43.  Under the terms of the approved modification, the interest on the Loan was reduced from 4% to 1% and $120,000 of the principal balance was deferred, meaning that Claimant was to pay interest only on the current principal balance of $63,272.87, with the non-interest bearing principal deferment coming due when the Loan matured, was paid in full, or the Property was sold.  See letter dated March 20, 2012, annexed hereto as **Exhibit J**; Comment History at 43, 46.  The treatment of the $120,000 of additional principal under the Loan was a material term of the modification.

13.     As a result of the modification, Claimant's monthly loan payments were reduced from approximately $1,550 to $622.53.  Compare Payment History at 4 with letter dated August 5, 2009, annexed hereto as **Exhibit K**.  On or about August 8, 2009, Claimant entered into a Fixed Rate Loan Modification Agreement with GMACM (the "August Agreement"), which was effective as of September 1, 2009, and was intended to memorialize the terms of the approved modification.  See August Agreement, annexed hereto as **Exhibit L**.

14.     GMACM received the executed August Agreement from Claimant on August 10, 2009 and countersigned it on that date.  See Comment History at 46; August Agreement.  On September 24, 20009, GMACM began to process the modification and

5

ny-1188685

determined that the loan modification needed to be reset. See Comment History at 48-49. Under the reset modification terms, the monthly principal and interest payments increased by $0.77 from the original modification offer. On September 28, 2009, GMACM advised Claimant that the modification would need to be reset and further informed Claimant on October 2, 2009 that GMACM would amend any negative reporting caused by the reset once the new modification agreement was executed. See Comment History at 50-51.

15.     When GMACM began to process the reset modification it realized that the August Agreement inadvertently failed to reference the amount of the principal balance deferment. See letter dated March 20, 2012; Comment History at 49. Specifically, the August Agreement refers only to the current principal balance of $63,272.87 on which interest would continue to accrue, and was completely silent regarding the treatment of the remaining $120,000 in deferred principal. See August Agreement. In order to rectify this error, GMACM voided the August Agreement and sent Claimant corrected loan modification documents on October 14 2009. See Comment History at 54. On October 27, 2009, Claimant advised that he had not received the corrected documents, and, as a result, GMACM was required to reset the modification yet again. See Comment History at 56. All terms remained the same except that the monthly principal and interest payments increased by $1.85 from the modification documents mailed on October 14, 2009. Id.

16.     GMACM mailed corrected permanent modification documents to Claimant on November 10, 2009. See Comment History at 58. Claimant executed the corrected documents on or about November 12, 2009, which were returned to GMACM on November 16, 2009 and became effective as of December 1, 2009 (the "Corrected Agreement"). See Comment History at 59; Corrected Agreement, annexed hereto as **Exhibit M**. Under the Corrected

6

Agreement, Claimant's monthly payments were approximately $624.85.  See letter dated November 10, 2009, annexed hereto as **Exhibit N**.  Claimant remained current on his Loan payments at all times after entry into the Corrected Agreement on December 1, 2009 through the date servicing was transferred to Ocwen.  See Payment History at 2-3.

17.     Following entry into the Corrected Agreement, in March 2010, Claimant applied for a further loan modification.  See letter dated March 26, 2010, annexed hereto as **Exhibit O**; Comment History at 65.  Despite having been previously advised that principal forgiveness could not be provided, Claimant renewed his request for cancellation of principal, which he pursued through numerous calls and letters to GMACM.  See letter dated March 26, 2010; letter dated July 1, 2011, annexed hereto as **Exhibit P**; Comment History at 66, 69, 70, 75, 81, 82, 83, 85, 86, 87, 89, 90, 92, 93, 94, 95, 112, 113, 116, 121, 140, 145.  GMACM ultimately determined that Claimant was ineligible for a further loan modification, including any principal reductions.  See Comment History at pp. 70, 85, 88, 92, 94, 117, 147.

**3.     Administration of the Loan and Escrow Account**

18.     Annexed hereto as **Exhibit Q** is a summary of transactions related to the Loan's escrow account, which was prepared based on the Debtors' Books and Records, and is a true and accurate summary of the information contained in those materials.  Based on the Liquidating Trust's review of the Debtors' relevant Books and Records, the Liquidating Trust has found no indications that there were any improprieties related to the handling of the Loan's escrow account.

19.     Annexed hereto as **Exhibit C** is a payment history for the Loan, which reflects all fees assessed against Claimant's account while GMACM serviced the Loan.  The codes for the fees set forth in the payment history are as follows:

7

| Code Number | Type |
|---|---|
| 003 | Insufficient Funds |
| 011 | Property Inspection |
| 028 | Payoff Statement |
| 164 | Broker's Price Opinion |
| 171 | Speedpay Fee (Payment by Phone) |

Based on the Liquidating Trust's review of the Debtors' relevant Books and Records, the Liquidating Trust has found no indications that there were any improprieties related to charging of fees with respect to the Loan.

20.    The servicing notes related to the Loan reflect that, although there were numerous phone calls between Claimant and GMACM throughout 2011 and 2012, the vast majority of those calls were placed by Claimant to GMACM.  See Comment History at 85-128 (highlighting various notations such as "b2 ci" or "b1 cld," which indicate that "borrower called" or 'borrower called in").  During those calls, which were often made multiple times per week, Claimant raised a variety of issues, including requesting a further modification of his Loan and inquiring about possibility of receiving a settlement payment under the DOJ/AG Consent Order. Id.

C.    **The California Action**

21.    On July 6, 2012, without leave of this Court, Claimant, represented by counsel, filed a complaint (the "Initial Complaint") commencing an action against GMACM in the Superior Court of California (the "State Court"), captioned Julio Pichardo v. GMAC

8

Mortgage; Does 1 to 10, Case No. CIV581642 (Ca. Sup.) (the "California Action"). See Initial

Complaint, annexed hereto as **Exhibit R**.

22.    On July 30, 2012, the Debtors caused a notice of bankruptcy and

suggestion of automatic stay to be served on Claimant's counsel in the California Action. See

Notice of Bankruptcy and Suggestions of Automatic Stay, annexed hereto as **Exhibit S**. In

addition, the Debtors advised Claimant's counsel that the filing and continued prosecution of

certain claims set forth in the Initial Complaint violated the automatic stay by a letter dated

July 30, 2012. See letter dated July 30, 2012, annexed hereto as **Exhibit T**.

23.    On June 3, 2014, counsel for the Liquidating Trust sent a letter advising

Claimant's new counsel that the continued prosecution of the California Action against GMACM

violated the automatic stay and requesting that GMACM be dismissed from the California

Action. See letter dated June 3, 2014, annexed hereto as **Exhibit U**.

### 5.    Borrower Claims Procedures

24.    Pursuant to the Borrower Claims Procedures, the Debtors sent Claimant a

Request Letter with respect to the Proof of Claim on or about June 21, 2013. See Request Letter,

annexed hereto as **Exhibit V**.

25.    On or about June 28, 2013, Claimant returned a response to the Request

Letter. See letter dated June 28, 2013, together with enclosures, annexed hereto as **Exhibit W**.

9

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Dated:  June 1, 2015

/s/ Kathy Priore
Kathy Priore
Associate Counsel for
The ResCap Liquidating Trust