## Exhibit A

**FILED**

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

**FEB 2 4 2014**

ALAN CARLSON, Clerk of the Court

BY:_____,DEPUTY

1  JULIO PICHARDO, In Pro Per
   1201 E. Sudene Ave.
2  Fullerton, California 92831
   Telephone No.: (714) 447-4207
3
4  Plaintiff Julio Pichardo, In Pro Per

5

6           IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

7         FOR THE COUNTY OF ORANGE – CENTRAL JUSTICE CENTER

8

9

10  JULIO PICHARDO, an individual,       )   Case No.: 30-2012-00581642-CU-CL-CJC
                                         )
11                Plaintiff,             )   **Case Assigned to:**
                                         )        **Honorable  Robert Moss**
12  vs.                                  )
                                         )   **Department  C 23**
13  GMAC MORTGAGE, DOES 1 to 10,         )
                                         )   **FIRST AMENDED COMPLAINT FOR:**
14                Defendant              )
                                         )   1.  **BREACH OF CONTRACT;**
15                                       )   2.  **BREACH OF COVENANT OF GOOD**
                                         )       **FAITH AND FAIR DEALING;**
16                                       )   3.  **NEGLIGENCE;**
                                         )   4.  **UNJUST ENRICHMENT; AND**
17                                       )   5.  **VIOLATION OF BUSINESS &**
                                         )       **PROFESSIONS CODE §17200**
18
19
20                                           **Complaint Filed: 07/08/2012**
                                             **Trial Date:  NONE**
21
22  _____

23

24  Plaintiff Julio Pichardo complains and alleges:

25              **GENERAL ALLEGATIONS**

26      1.      Plaintiff JULIO PICHARDO ("PICHARDO") is an adult over the age of 18 and

27  at all relevant times herein a resident of Orange County, California.

28

                    **FIRST AMENDED COMPLAINT**

                              **- 1 -**

2.     Plaintiff is informed and believes and based thereon alleges that Defendant GMAC MORTGAGE ("GMAC") is a residential lending service company authorized to do business in the State of California, including the County of Orange.  Plaintiff is further informed and believes and based thereon alleges that in May 2012, Defendant GMAC MORTGAGE entered into Chapter 11 Bankruptcy.

3.     Plaintiff is informed and believes and based thereon alleges that Defendant OCWEN LOAN SERVICING ("OWEN") sued herein as DOE 1 is a residential lending service company authorized to do business in the State of California, including the Count of Orange.  Plaintiff is further informed and believes and based thereon alleges that OCWEN LOAN SERVICING purchased the mortgage portfolio of Defendant GMAC MORTGAGE and serviced the loans of former GMAC customers, including Plaintiff.

4.     Plaintiff is ignorant of the true names and capacities of defendants sued as DOES 2 through 100, inclusive, and therefore sues these defendants by such fictitious names.  Plaintiff believes that each fictitiously sued defendant was in some way responsible for the acts alleged in the complaint.  Plaintiff will amend his complaint to allege the true names and capacities when ascertained.

## FACTUAL ALLEGATIONS

5.     Plaintiff is an individual with modest means and limited fixed income.

6.     In 1991 Plaintiff purchased the real property located at 1201 East Sudene Avenue, Fullerton, California 92831.

7.     On or about August 5, 2009, after months of negotiation and proof of financial hardship Plaintiff received preliminary approval from GMAC Mortgage for a loan modification

**FIRST AMENDED COMPLAINT**

- 2-

( hereinafter "FIXED RATE LOAN MODIFICATION AGREEMENT") for the subject

property. The FIXED RATE LOAN MODIFICATION AGREEMENT reduced Plaintiff's

monthly mortgage payment to $622.53. The FIXED RATE LOAN MODIFICATION

AGREEMENT also provided Plaintiff with $120,000 in principal forgiveness from $199,000 to

$63,272.87. The FIXED RATE LOAN MODIFICATION AGREEMENT stated:

> **Borrower acknowledges that as of the Effective Date, the amount payable under the Note and secured by the Security Instrument (the "Principal Balance") is Sixty Three Thousand Two Hundred Seventy Two Dollars and Eighty Seven Cents ($ 63,272,87). Borrower hereby renews and extends such indebtedness and promises to pay jointly and severally to the order of Lender the Principal Balance, consisting of the amounts(s) loaned to the Borrower by Lender and any accrued but unpaid interest capitalized to date.**

8.    In acceptance of the agreement, on August 8, 2009, Plaintiff executed and

notarized the FIXED RATE LOAN MODIFICATION AGREEMENT and returned it to GMAC

along with the required first payment. (A true and correct copy of the FIXED RATE LOAN

MODIFICATION AGREEMENT is attached as Exhibit "A".)

9.    On August 10, 2009, GMAC through its Limited Signing Officer, Kris M. Caya,

executed and notarized the FIXED RATE LOAN MODIFICATION AGREEMENT.

10.    In September 2009, despite having just reached a loan modification agreement

with GMAC, Plaintiff began to receive telephone calls from GMAC representatives stating that

Plaintiff was behind on his monthly mortgage payments and threatening him with foreclosure on

his home. These statements were false and GMAC knew they were false as Plaintiff had

maintained his mortgage account in current standing.

/ / /

**FIRST AMENDED COMPLAINT**
- 3-

11.   In November 2009, Plaintiff was admitted to the hospital for poor medical

condition.  While in the hospital, Plaintiff received a call from GMAC demanding another signed

"original" of the FIXED RATE LOAN MODIFICATION AGREEMENT, which GMAC had

already signed back in August 10, 2009.  When Plaintiff advised GMAC that he had a copy of

the August 2009 signed and notarized FIXED RATE LOAN MODIFICATION AGREEMENT,

GMAC rejected Plaintiff's offer and stated that they would overnight to Plaintiff a new

document for signature.  Plaintiff insisted that a new document did not need to be delivered

overnight, and in response GMAC threatened Plaintiff with foreclosure of his home if he did not

sign the new document to be overnight to Plaintiff.

12.   On or about November 10, 2009, Plaintiff received via overnight mail a document

which purported to be an original of the FIXED RATE LOAN MODIFICATION

AGREEMENT, but in fact, was a loan document that unilaterally modified the terms of the

August 2009 FIXED RATE LOAN MODIFICATION AGREEMENT.  The new document

unilaterally changed the terms of the unpaid principal balance on Plaintiff's mortgage from

principal forgiveness to principal deferment.  The new document entitled "FIXED RATE LOAN

MODIFICATION AGREEMENT WITH TERM EXTENSION, DEFERRED PRINCIPAL AND

DEBT FORGIVENESS" stated:

> **Borrower acknowledges that as of the Effective Date, the amount payable
> under the Note and Security Instrument (New Principal Balance is
> $63,272.87.  This represents a reduction in my old principal balance (the
> balance due prior to the date of this loan modification) by $120,000.00 (Total
> Deferred + Forgiven Principal) of which $0.00 is being forgiven in full and
> $120,000.00 is being deferred (the "Deferred Principal Balance") until the
> extended Term of my loan expired (the New Maturity Date or when I payoff
> my loan the time when I sell or transfer any interest in my home, refinance
> the loan, or when the last scheduled payment is due, and the Lender will be**

**FIRST AMENDED COMPLAINT**
- 4 -

**under no obligation to refinance my loan. Until I am required to pay off the
Deferred Principal Balance, I will be required to pay or make monthly
payments on the deferred amount.**

13.    At no time prior to Plaintiff's stay in the hospital and receipt of the November

loan modification documents did GMAC ever raise or discuss the option of principal deferment

with Plaintiff.  Under the threat of home foreclosure and faced with Plaintiff's immediate

medical emergency requiring hospitalization, Plaintiff reluctantly signed the document to save

his home.  On November 12, 2009, Plaintiff executed and notarized the FIXED RATE LOAN

MODIFICATION AGREEMENT WITH TERM EXTENSION, DEFERRED PRINCIPAL AND

DEBT FORGIVENESS.  (A true and correct copy of the FIXED RATE LOAN

MODIFICATION AGREEMENT WITH TERM EXTENSION, DEFERRED PRINCIPAL AND

DEBT FORGIVENESS is attached as Exhibit "B".)

14.    While continuing to threaten Plaintiff with foreclosure if he did not sign the

FIXED RATE LOAN MODIFICATION AGREEMENT WITH TERM EXTENSION,

DEFERRED PRINCIPAL AND DEBT FORGIVENESS, GMAC itself refused to sign the

agreement.

15.    Between November 2009 and 2012, Plaintiff continued to make the monthly

mortgage payments.  Despite Plaintiff's efforts to keep his mortgage account current, he

continually received statements from GMAC that he owed more money in undisclosed fees and

costs.  When Plaintiff would inquire about these fees and costs, GMAC would again threaten

Plaintiff with home foreclosure if he did not pay the additional fees and costs.  Out of fear that

Plaintiff would lose his home to foreclosure, Plaintiff continued to make the irregular payments

to GMAC despite the fact that Plaintiff lived on a fixed income and has limited means.

**FIRST AMENDED COMPLAINT**

16.    On or about July 6, 2012, Plaintiff filed a Complaint in the Orange County Superior Court for Violation of the Fair Debt Collections Practice Act, Negligent Misrepresentation, Violation of Business and Professions Code Section 17200 and Violation of Business and Professions Code Section 17500 against GMAC MORTGAGE.

17.    On or about February 7, 2013, Plaintiff received notice that GMAC transferred servicing of his mortgage from GMAC to OCWEN LOAN SERVICING LLC.  The notice further stated that "transfer of servicing does not affect any term or condition of the mortgage documents, other than those directly related to the servicing of your loan."  The principal balance Plaintiff owed on his mortgage loan was $54,101.68.

18.    Shortly after OCWEN began servicing of Plaintiff's mortgage, Plaintiff began receiving unsolicited letters purporting to state Plaintiff's request for additional loan modifications.  At no time did Plaintiff request another loan modification on the subject property as Plaintiff had already modified the mortgage loan back in August 2009.

19.    On or about April 12, 2013, Plaintiff received an unsolicited Loan Payoff Statement from OCWEN.  The Payoff Statement had a total due of $173781.77, with a deferred amount of $120,000.  This deferred principal amount was contrary to any term in the August 2009 FIXED RATE LOAN MODIFICATION AGREEMENT executed between Plaintiff and GMAC.

20.    As a direct and proximate result of Defendants' actions, Plaintiff has and continues to be harmed and threatened with foreclosure of his home.

/ / /

/ / /

**FIRST AMENDED COMPLAINT**

- 6-

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT
### (Against all Defendants)

21.    Plaintiff realleges paragraphs 1 through 20 and incorporates them herein by reference as though restated herein in full.

22.    Plaintiff's August 8, 2009, FIXED RATE LOAN MODIFICATION AGREEMENT sets forth the terms, including outstanding principal balance, date the monthly principal and interest payments that are due.

23.    Defendants refuse to accept Plaintiff's payment under the terms of the August 8, 2009, FIXED RATE LOAN MODIFICATION AGREEMENT and threatened to foreclose on Plaintiff's home.

24.    As a direct and proximate result of Defendants' breach, Plaintiff has suffered compensatory damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
## BREACH OF CONVENANT OF
## GOOD FAITH AND FAIR DEALING
### (Against All Defendants)

25.    Plaintiff realleges paragraphs 1 through 20 and 23 and incorporates them herein by reference as though restated herein in full.

26.    Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.  This implied covenant of good faith and fair dealing requires that no party will do anything that will do anything that will have the effect of impairing,

---

**FIRST AMENDED COMPLAINT**

- 7 -

destroying, or injuring the rights of the other party to receive the benefits of their agreement. The covenant implies that in all contacts each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose. This covenant protects the benefits of the contract that the parties reasonably contemplated when they entered into the agreement.

27.    The August 2009 FIXED RATE LOAN MODIFICATION AGREEMENT states that Plaintiff would enjoy the benefit of a loan modification with a new principal balance of $63,272.87.

28.    The Defendants did not act in good faith when they demanded that Plaintiff execute another "original" loan modification when in fact Defendants intended to unilaterally change the terms of the loan modification from a principal forgiveness to principal deferment.

29.    Defendants willfully breached the implied covenant of good faith and fair dealing with Plaintiff when Defendants threatened Plaintiff with foreclosure if he did not sign the November 2009 Loan Modification changing to the terms to principal deferment.

30.    As a direct and proximate result of Defendants' breach of this covenant, Plaintiff has suffered general and special damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### NEGLIGENCE
#### (Against All Defendants)

31.    Plaintiff realleges paragraphs 1 through 20 and incorporates them herein by reference as though restated herein in full.

32.    At all times relevant herein, Defendants, acting as Plaintiff's lender and loan servicer, had a duty to exercise reasonable care and skill maintain proper and accurate loan

---

**FIRST AMENDED COMPLAINT**
- 8 -

records and fulfill the other incidents attendant to the maintenance, accounting and servicing of loan records, including but not limited, accurate calculation and crediting of payments made by Plaintiff.

33.    In taking the actions alleged above, and in failing to take the actions as alleged above, Defendants breached their duty of care and skill to Plaintiff in the servicing of Plaintiff's loan by, among other things, failing to properly calculate and credit Plaintiff's payment, prepare and file false documents, threaten foreclosure without having the legal authority and proper documentation to do so.

34.    As a direct and proximate result of the negligence and carelessness of the Defendants as set forth above, Plaintiff has suffered general and special damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
## UNJUST ENRICHMENT
### (Against All Defendants)

35.    Plaintiff realleges paragraphs 1 through 20 and incorporates them herein by reference as though restated herein in full.

36.    By their wrongful acts and omissions, Defendants have been unjustly enriched at the expense of Plaintiff, and thus Plaintiff has been unjustly deprived.

37.    By reason of the foregoing, Plaintiff seeks restitution from the Defendants, and an order from the Court disgorging all profits, benefits and other compensation obtained from Defendants' wrongful conduct.

/ / /

---

**FIRST AMENDED COMPLAINT**

## FIFTH CAUSE OF ACTION

## VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200

### (Against All Defendants)

38.    Plaintiff realleges paragraphs 1 through 20 and 23 and incorporates them herein by reference as though restated herein in full.

39.    California Business and Professions Code Section 17200, et seq., prohibits acts of unfair competition, which means and includes any "unlawful, unfair or fraudulent business act or practice...."

40.    As more fully described above, the acts and practices of Defendants are likely to constitute an unlawful, unfair and fraudulent business practice. Defendants' conduct is ongoing and continues to this date.

41.    Specifically, Defendants engage in the deceptive business practices with respect to mortgage loan servicing, preparation and recordation of notes and security instruments, foreclosure of residential property and related matters by:

(a) Assessing improper or excessive account fees;

(b) Improperly characterizing customers' accounts as being late or in default;

(c) Improperly threatening customers' homes as on the verge of foreclosure proceedings;

(d) Misapplying or failing to apply customer payments;

(e)    Failing to provide adequate monthly statements to customers regarding the status of their accounts, payments owed, and/or basis for fees assessed;

/ / /

    (f)  Seeking to collect, and collecting, various improper fees, costs and charges,
that are either not legally due under the mortgage contract or California law,
or that are in excess of amounts legally due;

    (g)  Mishandling borrowers' mortgage payments and failing to timely or property
credit payments received, resulting in late charges, delinquencies or defaults;

    (h)  Treating borrowers as if in default on their loans even though the borrowers
have tendered timely and sufficient payments or have otherwise complied
with mortgage requirements or California law;

    (i)  Failing to disclose fees, costs and charges allowable under the mortgage
contact;

    (j)  Ignoring grace periods; and

    (k)  Executing and recording false and misleading documents.

42.    The foregoing acts and practices have caused substantial harm to California consumers.

43.    As a direct and proximate cause of the unlawful, unfair and fraudulent acts and practices of Defendants, Plaintiff and California consumers have suffered and will continue to suffer damages.

44.    By reason of the foregoing, Defendants have been unjustly enriched and should be required to disgorge their illicit profits and/or make restitution to Plaintiff and other California consumers who have been harmed, and/or be enjoined from continuing in such practices pursuant to California Business and Professions Code Sections 17203 and 17204.  Additionally,

**FIRST AMENDED COMPLAINT**

Plaintiff is therefore entitled to injunctive relief and attorneys' fees as available under California

Business and Professions Code Section 17200 and related sections.


### PRAYER FOR RELIEF


WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. For actual, compensatory and consequential damages in an amount to be proven at trial;

2. For restitution;

3. For injunctive relief;

4. For punitive damages;

5. For other cost of suit herein;

6. For attorneys' fees where permitted by law;

7. For such other and further relief as this Court deems just and proper.


DATE: February 24, 2014

Plaintiff Julio Pichardo, In Pro Per



**O C W E N** ®

*Ocwen Loan Servicing, LLC*
*PO Box 780*
*Waterloo IA 50704-0780*
HELPING HOMEOWNERS IS WHAT WE DO!™
OCWEN.MORTGAGEBANKSITE.COM

07/24/13


ROCIO PICHARDO
JULIO PICHARDO
1201 EAST SUDENE AVENUE

FULLERTON       CA 92831-4711



RE:     Account Number          ████9299
        Property Address        1201 EAST SUDENE AVENUE

                                FULLERTON       CA 92831-4711

Dear    ROCIO PICHARDO
        JULIO PICHARDO

Thank you for contacting us about your account. Enclosed is the information you
requested.

If you have any questions, we are here to help. Please call our office at 800-766-4622
(weekdays, 6:00 a.m. - 10:00 p.m. CT; Saturday, 9:00 a.m. - 1:00 p.m.).


Customer Care
Loan Servicing

Enclosure

2:01

8/5/2009

**GMAC Mortgage**

ROCIO PICHARDO
JULIO PICHARDO
1201 EAST SUDENE AVENUE
FULLERTON CA 92831-4711

Re: Account Number          ████9299
                            1201 EAST SUDENE AVENUE
                            FULLERTON CA 92831-4711

Dear ROCIO PICHARDO JULIO PICHARDO

**Congratulations! Your request for a loan modification has been approved subject to the following:**
    -Receipt of your contribution in the form of certified funds
    -Receipt of the signed and notarized loan modification agreement and any attachments
    -Receipt of clear title, if applicable

Highlights of the enclosed Loan Modification Agreement and instructions for completing and returning it are as follows:

- The contribution amount of $ 620.00 in the form of certified funds, is due in our office by September 1, 2009.
- The interest rate is 1.00000%.
- The first modified payment begins October 1, 2009.

| | |
|---|---|
| Principal and Interest | $ 247.96 |
| Escrow | $ 374.57 |
| **Total Payment** | **$622.53** |

Do NOT sign the enclosed Loan Modification Agreement unless you are in the presence of a notary. This document must be signed in the presence of a notary and (if applicable) other witnesses. All of the documents must be executed and the signatures must be exactly as the names are typed.

- The signed and notarized Loan Modification Agreement should be returned using the enclosed pre-paid overnight envelope.
- If any modification closing costs are more than projected, the difference will be assessed to the account.
- All miscellaneous fees and costs – excluding late charges – may not have been included in the loan modification and will remain outstanding.

The contribution and executed loan modification documents are due back by September 1, 2009. Please return to:

GMAC Mortgage, LLC
Attn: Loan Modification
3451 Hammond Avenue
Waterloo, IA 50702

IMPORTANT! The loan modification will not be complete until we receive all properly executed documents and the contribution amount. If the modification is not completed we will continue to enforce our lien. If the conditions outlined above are not satisfied the modification will be withdrawn.

If you have any questions regarding this modification offer, please contact a modification specialist directly at 1-800-799-9250 Monday – Thursday 8:00 AM to 7:00 PM, Friday 8:00 AM to 5:00 PM, Central Time.

Loan Modification Specialist
Enclosures

Record & Return To:

GMAC Mortgage, LLC
Attention: Loss Mitigation
3451 Hammond Avenue
Waterloo, IA 50702

————————————————[Space Above This Line For Recorder's Use]————————————————

# FIXED RATE LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement") made this September 1, 2009 ("Effective Date") between ROCIO PICHARDO    JULIO PICHARDO        ("Borrower") and GMAC Mortgage, LLC ("Lender"), amends and supplements that certain promissory note ("Note") dated July 31, 2003 in the original principal sum of One Hundred Ninety Nine Thousand Dollars and No Cents ($ 199,000.00)executed by Borrower. The Note is secured by a Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the same date as the Note, and if applicable, recorded on with Instrument Number in Book and/or Page Number of the real property records of ORANGE County, CA. Said Security Instrument covers the real and personal property described in such Security Instrument (the "Property") located at 1201 EAST SUDENE AVENUE   FULLERTON CA 92831-4711, which real property is more particularly described as follows:

### (Legal Description – Attach as Exhibit if Recording Agreement)

Borrower acknowledges that Lender is the legal holder and the owner of the Note and Security Instrument and further acknowledges that if Lender transfers the Note, as amended by this Agreement, the transferee shall be the "Lender" as defined in this Agreement.

Borrower has requested, and Lender has agreed, to extend or rearrange the time and manner of payment of the Note and to extend and carry forward the lien(s) on the Property whether or not created by the Security Instrument.

Now, therefore, in consideration of the mutual promises and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. Borrower acknowledges that as of the Effective Date, the amount payable under the Note and secured by the Security Instrument (the "Principal Balance") is Sixty Three Thousand Two Hundred Seventy Two Dollars and Eighty Seven Cents ($ 63,272.87). Borrower hereby renews and extends such indebtedness and promises to pay jointly and severally to the order of Lender the Principal Balance, consisting of the amount(s) loaned to Borrower by Lender and any accrued but unpaid interest capitalized to date.

2. Interest will be charged on the unpaid Principal Balance until the full amount of principal has been paid. Borrower will pay interest at the rate of 1.00000% per year from the Effective Date.

3. Borrower promises to make monthly principal and interest payments of $ 247.96, beginning on October 1, 2009, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on August 1, 2033 (the "Maturity Date"), Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date. Borrower will make such payments at 3451 Hammond Avenue, Waterloo, IA 50702 or at such other place as Lender may require. The amounts indicated in this paragraph do not include any required escrow payments for items such

as hazard insurance or property taxes; if such escrow payments are required the monthly payments will be higher and may change as the amounts required for escrow items change.

4. If Lender has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, Borrower will pay a late charge to Lender. The amount of the charge will be the late charge percentage provided for in the Note multiplied by the overdue payment of principal and interest required under this Agreement. Borrower will pay this late charge promptly but only once on each late payment. The late charge is not in lieu of any other remedy of Lender, including any default remedy.

5. It is the intention of the parties that all liens and security interests described in the Security Instrument are hereby renewed and extended (if the Maturity Date of the original Note has been changed) until the indebtedness evidenced by the Note and this Agreement has been fully paid. Lender and Borrower acknowledge and agree that such renewal, amendment, modification, rearrangement or extension (if applicable) shall in no manner affect or impair the Note or liens and security interests securing same, the purpose of this Agreement being simply to modify, amend rearrange or extend (if applicable) the time and the manner of payment of the Note and indebtedness evidenced thereby, and to carry forward all liens and security interests securing the Note, which are expressly acknowledged by Borrower to be valid and subsisting, and in full force and effect so as to fully secure the payment of the Note.

6. If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower. For purposes of this paragraph, "interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is transfer of title by Borrower at a future date to a purchaser.

7. As amended hereby, the provisions of the Note and Security Instrument shall continue in full force and effect, and the Borrower acknowledges and reaffirms Borrower's liability to Lender thereunder. In the event of any inconsistency between this Agreement and the terms of the Note and Security Instrument, this Agreement shall govern. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement, including but not limited to, in the case of the Borrower, the obligation to pay items such as taxes, insurance premiums or escrow items, as applicable. Any default by Borrower in the performance of its obligations herein contained shall constitute a default under the Note and Security Instrument, and shall allow Lender to exercise all of its remedies set forth in said Security Instrument.

8. Lender does not, by its execution of this Agreement, waive any rights it may have against any person not a party hereto. This Agreement may be executed in multiple counterparts, each of which shall constitute an original instrument, but all of which shall constitute one and the same Agreement. EACH OF THE BORROWER AND THE LENDER ACKNOWLEDGE THAT NO REPRESENTATIONS, AGREEMENTS OR PROMISES WERE MADE BY THE OTHER PARTY OR ANY OF ITS REPRESENTATIVES OTHER THAN THOSE REPRESENTATIONS, AGREEMENTS OR PROMISES SPECIFICALLY CONTAINED HEREIN. THIS AGREEMENT, AND THE NOTE AND SECURITY INSTRUMENT (AS AMENDED HEREBY) SETS FORTH

THE ENTIRE UNDERSTANDING BETWEEN THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES.

Executed effective as of the day and year first above written.

_ROCIO PICHARDO_
ROCIO PICHARDO

_Julio Richardo_
JULIO PICHARDO

---

**BORROWER ACKNOWLEDGMENT**

State of _California_
County of _Orange_

On this 8 day of _August_ 2009, before me, the undersigned, a Notary Public in and for said county and state, personally appeared ROCIO PICHARDO JULIO PICHARDO    personally known to me or identified to my satisfaction to be the person(s) who executed the within instrument, and they duly acknowledged that said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

Notary Public
My Commission Expires: May 24, 2011

GMAC Mortgage, LLC

By: _Kris M Caya_

Title: Limited Signing Officer

```
┌──────────────────────────────┐
│         BRIAN ARTEAGA          │
│      Commission # 1746903      │
│  Notary Public - California    │
│        Orange County           │
│  My Comm. Expires May 24, 2011 │
└──────────────────────────────┘
```

**LENDER ACKNOWLEDGMENT**

State of IOWA
County of BLACKHAWK

On this 10 day of _Aug_ 2009, before me, the undersigned, a Notary Public in and for said county and state, personally appeared KRIS M. CAYA, personally known to me or identified to my satisfaction to be the person who executed the within instrument as Limited Signing Officer of GMAC Mortgage, LLC, and they duly acknowledged that said instrument is the act and deed of said entity, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

Notary Public
My Commission Expires:

```
┌──────────────────────────────┐
│       BRETT BORCHERDING        │
│     COMMISSION NO. 757639      │
│      MY COMMISSION EXPIRES     │
│          March 23, 2012        │
└──────────────────────────────┘
```

**GMAC** Mortgage

11/10/2009

ROCIO PICHARDO
JULIO PICHARDO
1201 EAST SUDENE AVENUE
FULLERTON CA 92831-4711

Re: Account Number    ██████9299
1201 EAST SUDENE AVENUE
FULLERTON CA 92831-4711

Dear ROCIO PICHARDO JULIO PICHARDO

**Congratulations! Your request for a loan modification has been approved subject to the following:**
-Receipt of your contribution in the form of certified funds
-Receipt of the signed and notarized loan modification agreement and any attachments
-Receipt of clear title, if applicable

Highlights of the enclosed Loan Modification Agreement and instructions for completing and returning it are as follows:

- The contribution amount of $ 623.00 in the form of certified funds, is due in our office by November 23, 2009.
- The interest rate is 1.00000%.
- The first modified payment begins January 1, 2010.

| | |
|---|---|
| Principal and Interest | $ 250.28 |
| Escrow | $ 374.57 |
| **Total Payment** | **$624.85** |

Do NOT sign the enclosed Loan Modification Agreement unless you are in the presence of a notary. This document must be signed in the presence of a notary and (if applicable) other witnesses. All of the documents must be executed and the signatures must be exactly as the names are typed.
- The signed and notarized Loan Modification Agreement should be returned using the enclosed pre-paid overnight envelope.
- If any modification closing costs are more than projected, the difference will be assessed to the account.
- All miscellaneous fees and costs – excluding late charges – may not have been included in the loan modification and will remain outstanding.

The contribution and executed loan modification documents are due back by November 23, 2009. Please return to:

GMAC Mortgage, LLC
Attn: Loan Modification
3451 Hammond Avenue
Waterloo, IA 50702

IMPORTANT! The loan modification will not be complete until we receive all properly executed documents and the contribution amount. If the modification is not completed we will continue to enforce our lien. If the conditions outlined above are not satisfied the modification will be withdrawn.

If you have any questions regarding this modification offer, please contact a modification specialist directly at 1-800-799-9250 Monday – Thursday 8:00 AM to 7:00 PM, Friday 8:00 AM to 5:00 PM, Central Time.

Loan Modification Specialist
Enclosures
Record & Return To:

GMAC Mortgage, LLC
Attention: Loss Mitigation

FARP 11-10-2009 GMAC mail merge master.doc

3451 Hammond Avenue
Waterloo, IA 50702

————————————————[Space Above This Line For Recorder's Use]————————————————

# FIXED RATE LOAN MODIFICATION AGREEMENT WITH
# TERM EXTENSION, DEFERRED PRINCIPAL AND DEBT FORGIVENESS
### (Balloon \ Deferred Payment Disclosure Attached)

This Loan Modification Agreement ("Agreement") made this December 1, 2009
("Effective Date") between ROCIO PICHARDO    JULIO PICHARDO        ("Borrower") and
GMAC Mortgage, LLC the Lender/Servicer or agent for Lender/Servicer ("Lender"), amends and
supplements that certain promissory note ("Note") dated July 31, 2003 in the original principal sum of
One Hundred Ninety Nine Thousand Dollars and No Cents ($ 199,000.00)executed by Borrower. The
Note is secured by a Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated
the same date as the Note, and if applicable, recorded on  with Instrument Number  in Book  and/or Page
Number  of the real property records of ORANGE County, CA.  Said Security Instrument covers the real
and personal property described in such Security Instrument (the "Property") located at 1201 EAST
SUDENE AVENUE   FULLERTON CA 92831-4711, which real property is more particularly described
as follows:

### ( Legal Description if Applicable for Recoding Only )

Borrower acknowledges that Lender is the legal holder and the owner, or agent\servicer for the
legal holder and owner, of the Note and Security Instrument and further acknowledges that if Lender
transfers the Note, as amended by this Agreement, the transferee shall be the "Lender" as defined in this
Agreement.

Borrower has requested, and Lender has agreed, to extend or rearrange the time and manner of
payment of the Note and to extend and carry forward the lien(s) on the Property whether or not created by
the Security Instrument.

Borrower hereby renews and extends such indebtedness and promises to pay jointly and severally to
the order of "Lender" the Principal Balance, consisting of the amount(s) loaned to Borrower by "Lender"
and any accrued but unpaid interest capitalized to date as applicable, along with any other amounts that
may come due under the terms of the original Note and security Instrument.

Now, therefore, in consideration of the mutual promises and agreements contained herein, and other
good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and
intending to be legally bound, the parties hereto agree as follows (notwithstanding anything to the
contrary contained in the Note or Security Instrument):

1.      Borrower acknowledges that as of the Effective Date, the amount payable under the Note and
        Security Instrument (New Principal Balance) is $63,272.87. This represents a reduction in my old
        principal balance (the balance due prior to the date of this loan modification) by $120,000.00
        (Total Deferred + Forgiven Principal) of which $0.00 is being forgiven in full and $120,000.00 is
        being deferred (the "Deferred Principal Balance") until the extended Term of my loan expires (the
        New Maturity Date) or when I payoff my loan at the time when I sell or transfer any interest in my

home, refinance the loan, or when the last scheduled payment is due, and the Lender will be under
no obligation to refinance my loan. Until I am required to payoff the Deferred Principal Balance, I
will not be required to pay interest or make monthly payments on the deferred amount.

2.  Borrower will make monthly payments of principal and interest in the amount of 250.28 which will
    begin on January 1, 2010. Borrower's payment will be calculated based on the non-deferred
    principal balance, a fixed interest rate of 1.00000 per year and an extended term\amortization
    period of 284 months in new remaining term 284. Each monthly payment will be applied as of its
    scheduled due date, and it will be applied to interest before principal. The amounts indicated in this
    paragraph do not include any required escrow payments for items such as hazard insurance or
    property taxes; if such escrow payments are required the monthly payments will be higher and may
    change as the amounts required for escrow items change.

3.  If borrower pays an amount in excess of the required monthly payment of principal and
    interest, that amount will serve to reduce both the non-deferred principal balance and the remaining
    Term of the loan, but will not cause the monthly payment of principal and interest to be re-
    calculated.

4.  If on August 1, 2033 (the "New Maturity Date"), Borrower still owes any amounts under the Note
    and Security Instrument, including the "Deferred Principal Balance " as provided for in this
    Agreement, Borrower will pay the amounts in full on that date. Borrower will make such payments
    at 3451 Hammond Ave Waterloo, IA 50702 or at such other place as Lender may require.

5.  If "Lender" has not received the full amount of any monthly payment within the grace period
    provided for in the original Note or as otherwise provided for by law, Borrower will pay a late
    payment fee to "Lender" in an amount calculated based on the late charge percentage provided for
    in the original Note, or as otherwise provided for by law, and the monthly payment required under
    this Agreement, with a maximum as provided for in the Note, or otherwise provided by law.
    Borrower will pay this late charge promptly but only once on each late payment. The late charge is
    not in lieu of any other remedy of Lender, including any default remedy.

6.  It is the intention of the parties that all liens and security interests described in the Security
    Instrument are hereby renewed and extended (if the Maturity Date of the original Note has been
    extended) until the indebtedness, evidenced by the Note and this Agreement, has been fully paid.
    Lender and Borrower acknowledge and agree that such renewal, amendment, modification,
    rearrangement or extension (if applicable) shall in no manner affect or impair the Note or liens and
    security interests securing same, the purpose of this Agreement being simply to modify, amend
    rearrange or extend (if applicable) the time and the manner of payment of the Note and
    indebtedness evidenced thereby, and to carry forward all liens and security interests securing the
    Note, which are expressly acknowledged by Borrower to be valid and subsisting, and in full force
    and effect so as to fully secure the payment of the Note.

7.  If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a
    natural person and a beneficial interest in Borrower is sold or transferred) without "Lender's" prior
    written consent, "Lender" may, at its option, require immediate payment in full of all sums secured
    by the Security Instrument. However, this option shall not be exercised by "Lender" if prohibited
    by applicable law. In addition, if "Lender" exercises this option, "Lender" shall give Borrower all
    notice(s) that may be required by law before accelerating the debt after which, Lender shall give
    Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the
    date the notice is delivered or mailed within which Borrower must pay all sums secured by this
    Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period,
    Lender may invoke any remedies permitted by the Security Instrument.  For purposes of this

paragraph, "interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is transfer of title by Borrower at a future date to a purchaser.

8.   As amended hereby, the provisions of the Note and Security Instrument shall continue in full force and effect, and the Borrower acknowledges and reaffirms Borrower's liability to Lender thereunder. In the event of any inconsistency between this Agreement and the terms of the Note and Security Instrument, this Agreement shall govern. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement, including but not limited to, in the case of the Borrower, the obligation to pay items such as taxes, insurance premiums or escrow items, as applicable. Any default by Borrower in the performance of its obligations herein contained shall constitute a default under the Note and Security Instrument, and shall allow Lender to exercise all of its remedies set forth in said Security Instrument.

9.   Lender does not, by its execution of this Agreement, waive any rights it may have against any person not a party hereto. This Agreement may be executed in multiple counterparts, each of which shall constitute an original instrument, but all of which shall constitute one and the same Agreement.

EACH OF THE BORROWER AND THE LENDER ACKNOWLEDGE THAT NO REPRESENTATIONS, AGREEMENTS OR PROMISES WERE MADE BY THE OTHER PARTY OR ANY OF ITS REPRESENTATIVES OTHER THAN THOSE REPRESENTATIONS, AGREEMENTS OR PROMISES SPECIFICALLY CONTAINED HEREIN. THIS AGREEMENT, AND THE NOTE AND SECURITY INSTRUMENT (AS AMENDED HEREBY) SETS FORTH THE ENTIRE UNDERSTANDING BETWEEN THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES.

Executed effective as of the day and year first above written.

ROCIO PICHARDO

JULIO PICHARDO

BORROWER ACKNOWLEDGMENT


State of _California_
County of _Orange_

On this 12 day of November, 2009 before me, the undersigned, a Notary Public in and for said county and
state, personally appeared ROCIO PICHARDO JULIO PICHARDO  , personally known to me or
identified to my satisfaction to be the person(s) who executed the within instrument, and they duly
acknowledged that said instrument is their act and deed, and that they, being authorized to do so, executed
and delivered said instrument for the purposes therein contained.


Witness my hand and official seal.

BRIAN ARTEAGA
Commission # 1746903
Notary Public - California
Orange County
My Comm. Expires May 24, 2011

Notary Public
My Commission Expires: _May 24, 2011_

GMAC Mortgage, LLC

By: _____

Title: _____

## LENDER ACKNOWLEDGMENT

State of _____
County of _____

On this __ day of _____, ___, before me, the undersigned, a Notary Public in and for said county and state, personally appeared Kristi M. Caya, personally known to me or identified to my satisfaction to be the person who executed the within instrument as Limited Signing Officer of GMAC Mortgage, LLC GMAC Mortgage, LLC, and they duly acknowledged that said instrument is the act and deed of said entity, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

     Witness my hand and official seal.

                                            _____

                                            Notary Public
                                            My Commission Expires: _____

Date:    11/10/2009                          Loan# ■■■9299

Borrower's Name: ROCIO PICHARDO JULIO PICHARDO


Lender's Name and Address:  GMAC Mortgage, LLC
                            3451 Hammond Avenue
                            Waterloo, IA 50702

IMPORTANT INFORMATION ABOUT YOUR
LOAN MODIFICATION WHICH FEATURES A **DEFERRED** PAYMENT
Please Read Carefully

This disclosure describes the features of your loan modification.

How Is Your Interest Rate and Initial Payment Determined?

- According to your mortgage payment calculated for long-term affordability, your modified loan
  will now provide for a Deferred Payment.
- The amount of the initial monthly payment on your modified loan will be based on three factors:
  - (1) the interest rate reflected in the agreement;
  - (2) the "New Principal Balance" of the loan; and
  - (3) the remaining term and amortization periods of the loan.

Based on a scheduled of interest rate and payment adjustments, your monthly payment of principal
and interest will be calculated in order to repay the "non-deferred principal balance" by the end of the
Term of your loan. (the Maturity Date) Although your new scheduled monthly payments will pay down
your non-deferred principal balance, a payment for the entire amount of your "Deferred Principal
Balance" will be due when the Term of your loan expires or when you pay off the modified loan, which
will be when you sell or transfer an interest in your house, refinance the loan, or when the last scheduled
payment is due, and the Lender will be under no obligation to refinance your loan.

You will be notified in writing at least 90 but not more than 120 days before the date the deferred
principal payment is due.  This notice will be mailed to you at the most current mailing address you
supply and will contain information about the amount of the deferred principal, the date it is due and the
telephone number of the Lender's representative (or loan servicer's representative) available to answer
questions you may have about the notice.

AN AMOUNT OF YOUR UNPAID PRINCIPAL BALANCE HAS BEEN DEFRRED. AS A RESULT,
YOU WILL BE REQUIRED TO PAY FULL DEFERRED PRINCIPAL BALANCE WHEN THE
TERM OF YOUR LOAN EXPIRES (THE MATURITY DATE), OR WHEN YOU PAY OFF THE
MODIFIED LOAN, WHICH WILL BE WHEN YOU SELL OR TRANSFER AN INTEREST IN YOUR
HOUSE, REFINANCE THE LOAN, OR WHEN THE LAST SCHEDULED PAYMENT IS DUE.


THE LENDER HAS NO OBLIGATION TO REFINANCE THIS LOAN AT THE END OF ITS TERM.
THEREFORE, YOU MAY BE REQUIRED TO REPAY THE LOAN OUT OF ASSETS YOU OWN
OR YOU MAY HAVE TO FIND ANOTHER LENDER WILLING TO REFINANCE THE LOAN.

ASSUMING THIS LENDER OR ANOTHR LENDER REFINANCES THE LOAN AT MATURITY, YOU WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. YOU MAY ALSO HAVE TO PAY SOME OF ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

Example of **Deferred** Payment

- The payment amount due at loan maturity can change substantially based upon amount of the loan, interest rate, and any principal payments you choose to make before loan maturity, among other factors.

| Modified Loan Balance | $100,000 |
| Modified Balance That Does Not Accrue Interest (Deferred Amt.) | $25,000 |
| Loan Balance That Does Accrue Interest | $75,000 |
| Remaining Loan Term | 20 years |
| Deferred Principal Balance Due at Maturity | $ 25,000.00 |

In the example above, the outstanding **deferred loan balance of $25,000.00** would be due and payable at the end of 20 years.

This summary is intended for reference purposes only. Important information relating specifically to your loan modification will be contained in the loan modification documents, which alone will establish your rights and obligations under the loan modification plan. This disclosure does not address any other payments that may be required under the terms of your loan, for example, monthly escrow payments

THE PURPOSE OF THIS DISCLOSURE IS TO PROVIDE VARIOUS DETAILS ON THE TYPE OF LOAN MODIFICATION FOR WHICH YOU HAVE EXPRESSED INTEREST. THE DISCLOSURE DOES NOT CONSTITUTE A COMMITMENT ON THE PART OF THE LENDER TO MODIFIY YOUR LOAN.

Receipt of a copy of this Disclosure is hereby acknowledged.

11-12-09
_____
Date

11-12-09
_____
Date

_____
Date

_____
Date

ROCIO PICHARDO
_____

JULIO PICHARDO
_____

_____

_____

**PROOF OF SERVICE**

1

2    STATE OF CALIFORNIA        )
                               ) ss.
3    COUNTY OF ORANGE          )

4

5        I am a citizen of the United States and employed in the County of Orange.   I am over the age
of eighteen years and not a party to the within action.   My business address is, *1201 E. San Juan Ave*
6        *Fullerton CA 92831*
         On February 24, 2014, at *Santa Ana*, California, I served the foregoing document described as:

7                        **PLAINTIFF'S FRIST AMENDED COMPLAINT**

8    on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope
addressed as follows:
9                        **SEE ATTACHED SERVICE LIST**

10   _X_    **BY U.S. MAIL** I caused such envelope to be deposited in the mail, with postage thereon
             fully prepaid, at Orange, California.   [I am "readily familiar" with this law office's practice
11           of collection and processing correspondence for mailing.   It is deposited with the U.S. Postal
             Service on that same day in the ordinary course of business.   I am aware that on motion of
12           the party served, service is presumed invalid if the postal cancellation date or postage meter
             date is more than one (1) day after the date of deposit for mailing in the affidavit.]
13

14   __    **BY PERSONAL SERVICE** I personally delivered such envelope to the offices of the
            addressee.

15   __    **BY FEDERAL EXPRESS MAIL** I personally delivered such envelope on *** to a Federal
16          Express drop box or office in *Santa Ana* California, marked for delivery on *2/24/* , 2014.

17   __    **BY FACSIMILE** I transmitted a true copy of said document by facsimile machine, pursuant
            to Rule 2005.   The facsimile machine I used complied with Rule 2003(3) and no error was
18          reported by the machine.   Pursuant to Rule 2005(k), I caused the machine to print a
            transmission record of the transmission, a copy of which is attached to this declaration.   Said
19          fax transmission(s) was/were completed on the above date.

20       I declare under penalty of perjury under the laws of the State of California that the above is
true and correct and that this declaration was executed on February 24, 2014, at *Fullerton* California.

21

22                        *Rocio Pichardo*

23

24

25

26

---

**PROOF OF SERVICE ON PLAINTIFF'S FIRST AMENDED COMPLAINT**

1

<u>**SERVICE LIST**</u>

2

**Julio Pichardo . v. GMAC MORTAGE et al.**
**O.C.S.C. Case No: 30-2012-00581642-CU-CI-CJC**

3

4

**Attorneys for Defendants:**

5

Robert J. Gandy, Esq
Yaron Shaham, Esq.

6

Joe H. Tuffaha
SEVERSON & WERSON

7

A Professional Corporation
19100 Von Karman Ave., Suite 700

8

Irvine, CA 92612

9

John B. Sullivan, Esq
SEVERSON & WERSON

10

A Professional Corporation
One Embarcadero Center, Suite 2600

11

San Francisco, California 94111

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PROOF OF SERVICE ON PLAINTIFF'S FIRST AMENDED COMPLAINT