**Exhibit 3**

ASSIGNMENT AND ASSUMPTION AGREEMENT

ASSIGNMENT AND ASSUMPTION AGREEMENT, dated as of December 28, 2005, between Residential Funding Corporation, a Delaware corporation ("RFC") and Residential Asset Mortgage Products, Inc., a Delaware corporation (the "Company").

Recitals

A. RFC has entered into seller contracts ("Seller Contracts") with the seller/servicers.

B. The Company wishes to purchase from RFC certain Mortgage Loans (as hereinafter defined) originated pursuant to the Seller Contracts with respect thereto.

C. The Company, RFC, as master servicer, and U.S. Bank National Association, as trustee (the "Trustee"), are entering into a Pooling and Servicing Agreement dated as of December 1, 2005 (the "Pooling and Servicing Agreement"), pursuant to which the Trust proposes to issue Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EFC7 (the "Certificates") designated as Class A-I-1, Class A-I-2, Class A-I-3, Class A-I-4, Class A-II, Class SB, Class R-I and Class R-II Certificates representing beneficial ownership interests in a trust fund consisting primarily of a pool of mortgage loans identified in Exhibit G-1 and Exhibit G-2 to the Pooling and Servicing Agreement (the "Mortgage Loans").

D. In connection with the purchase of the Mortgage Loans, the Company will assign to or at the direction of RFC the Class SB, Class R-I and Class R-II Certificates (collectively, the "Retained Certificates").

E. In connection with the purchase of the Mortgage Loans and the issuance of the Certificates, RFC wishes to make certain representations and warranties to the Company and to assign certain of its rights under the Seller Contracts to the Company, and the Company wishes to assume certain of RFC's obligations under the Seller Contracts.

F. The Company and RFC intend that the conveyance by RFC to the Company of all its right, title and interest in and to the Mortgage Loans pursuant to this Agreement shall constitute a purchase and sale and not a loan.

NOW THEREFORE, in consideration of the recitals and the mutual promises herein and other good and valuable consideration, the parties agree as follows:

1. All capitalized terms used but not defined herein shall have the meanings assigned thereto in the Pooling and Servicing Agreement.

2. Concurrently with the execution and delivery hereof, RFC hereby assigns to the Company without recourse all of its right, title and interest in and to the Mortgage Loans, including all interest and principal received on or with respect to the Mortgage Loans after the Cut-off Date (other than payments of principal and interest due on the Mortgage Loans in December 2005). In consideration of such assignment, RFC will receive from the Company, in immediately available funds, an amount equal to $687,917,562.50 and the Retained Certificates. In connection with such assignment and at the Company's direction, RFC has in respect of each

5109325 05161514



REDACTED

RFC-002-000001

Mortgage Loan endorsed the related Mortgage Note (other than any Destroyed Mortgage Note) to the order of the Trustee and delivered an assignment of mortgage in recordable form to the Trustee or its agent. A Destroyed Mortgage Note means a Mortgage Note the original of which was permanently lost or destroyed.

The Company and RFC intend that the conveyance by RFC to the Company of all its right, title and interest in and to the Mortgage Loans pursuant to this Section 2 shall be, and shall be construed as, a sale of the Mortgage Loans by RFC to the Company. It is, further, not intended that such conveyance be deemed to be a pledge of the Mortgage Loans by RFC to the Company to secure a debt or other obligation of RFC. However, in the event that the Mortgage Loans are held to be property of RFC, or if for any reason this Agreement is held or deemed to create a security interest in the Mortgage Loans, then it is intended that (a) this Agreement shall also be deemed to be a security agreement within the meaning of Articles 8 and 9 of the Minnesota Uniform Commercial Code and the Uniform Commercial Code of any other applicable jurisdiction; (b) the conveyance provided for in this Section shall be deemed to be a grant by RFC to the Company of a security interest in all of RFC's right (including the power to convey title thereto), title and interest, whether now owned or hereafter acquired, in and to (A) the Mortgage Loans, including the Mortgage Notes, the Mortgages, any related insurance policies and all other documents in the related Mortgage Files, (B) all amounts payable pursuant to the Mortgage Loans in accordance with the terms thereof and (C) any and all general intangibles, payment intangibles, accounts, chattel paper, instruments, documents, money, deposit accounts, certificates of deposit, goods, letters of credit, advices of credit and investment property and other property of whatever kind or description now existing or hereafter acquired consisting of, arising from or relating to any of the foregoing, and all proceeds of the conversion, voluntary or involuntary, of the foregoing into cash, instruments, securities or other property, including, without limitation, all amounts from time to time held or invested in the Certificate Account or the Custodial Account, whether in the form of cash, instruments, securities or other property; (c) the possession by the Trustee, the Custodian or any other agent of the Trustee of Mortgage Notes or such other items of property as constitute instruments, money, negotiable documents or chattel paper shall be deemed to be "possession by the secured party", or possession by a purchaser or a person designated by him, for purposes of perfecting the security interest pursuant to the Minnesota Uniform Commercial Code and the Uniform Commercial Code of any other applicable jurisdiction (including, without limitation, Section 9-305, 8-313 or 8-321 thereof); and (d) notifications to persons holding such property, and acknowledgments, receipts or confirmations from persons holding such property, shall be deemed notifications to, or acknowledgments, receipts or confirmations from, financial intermediaries, bailees or agents (as applicable) of the Trustee for the purpose of perfecting such security interest under applicable law. RFC shall, to the extent consistent with this Agreement, take such reasonable actions as may be necessary to ensure that, if this Agreement were deemed to create a security interest in the Mortgage Loans and the other property described above, such security interest would be deemed to be a perfected security interest of first priority under applicable law and will be maintained as such throughout the term of this Agreement. Without limiting the generality of the foregoing, RFC shall prepare and deliver to the Company no less than 15 days prior to any filing date, and the Company shall file, or shall cause to be filed, at the expense of RFC, all filings necessary to maintain the effectiveness of any original filings necessary under the Uniform Commercial Code as in effect in any jurisdiction to perfect the Company's security interest in or lien on the Mortgage Loans including without limitation (x) continuation statements and (y) such other

REDACTED                                                                              RFC-002-000002

statements as may be occasioned by (1) any change of name of RFC or the Company, (2) any change of location of the state of formation, place of business or the chief executive office of RFC, or (3) any transfer of any interest of RFC in any Mortgage Loan.

3. Concurrently with the execution and delivery hereof, the Company hereby assigns to or at the direction of RFC without recourse all of its right, title and interest in and to the Retained Certificates as part of the consideration payable to RFC by the Company pursuant to this Agreement.

4. RFC represents and warrants to the Company, with respect to each Mortgage Loan that on the date of execution hereof (or, if otherwise specified below, as of the date so specified),

(a) The information set forth in the Mortgage Loan Schedule for such Mortgage Loans is true and correct in all material respects as of the date or dates respecting which such information is furnished;

(b) Each Mortgage Loan constitutes a qualified mortgage under Section 860G(a)(3)(A) of the Code and Treasury Regulations Section 1.860G-2(a)(1);

(c) Immediately prior to the conveyance of the Mortgage Loans to the Trustee, RFC had good title to, and was the sole owner of, each Mortgage Loan free and clear of any pledge, lien, encumbrance or security interest (other than rights to servicing and related compensation) and such conveyance validly transfers ownership of the Mortgage Loans to the Trustee free and clear of any pledge, lien, encumbrance or security interest;

(d) Each Mortgage Note constitutes a legal, valid and binding obligation of the Mortgagor enforceable in accordance with its terms except as limited by bankruptcy, insolvency or other similar laws affecting generally the enforcement of creditors' rights;

(e) To the best of RFC's knowledge as of the Cut-off Date, and except as noted in (h) below, there is no default, breach, violation or event of acceleration existing under the terms of any Mortgage Note or Mortgage and no event which, with notice and expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration under the terms of any Mortgage Note or Mortgage, and no such default, breach, violation or event of acceleration has been waived by RFC or by any other entity involved in servicing a Mortgage Loan;

(f) [RESERVED];

(g) The related Mortgagor is not currently in bankruptcy proceedings with respect to any of the Mortgage Loans;

(h) As of the Cut-Off Date, 0.1% of the Group I Loans, 0.1% of the Group II Loans, and 0.1% of the Mortgage Loans, respectively, are 30 to 59 days Delinquent in payment of principal and interest and none of the Mortgage Loans are 60 or more days Delinquent in payment of principal and interest;

REDACTED                                                                    RFC-002-000003

(i)   None of the Mortgage Loans are Buy-Down Mortgage Loans;

(j)   To the best of RFC's knowledge, there is no delinquent tax or assessment lien against any related Mortgaged Property;

(k)   No Mortgagor has any valid right of offset, defense or counterclaim as to the related Mortgage Note or Mortgage, except as may be provided under the Servicemembers Civil Relief Act;

(l)   No Mortgage Loan provides for payments that are subject to reduction by withholding taxes levied by any foreign (non-United States) sovereign government;

(m)   (1) The proceeds of each Mortgage Loan have been fully disbursed and (2) to the best of RFC's knowledge, there is no requirement for future advances thereunder and any and all requirements as to completion of any on-site or off-site improvements and as to disbursements of any escrow funds therefor (including any escrow funds held to make Monthly Payments pending completion of such improvements) have been complied with. All costs, fees and expenses incurred in making, closing or recording the Mortgage Loans were paid;

(n)   To the best of RFC's knowledge, with respect to each Mortgage Loan, there are no mechanics' liens or claims for work, labor or material affecting any Mortgaged Property which are or may be a lien prior to, or equal with, the lien of the related Mortgage, except such liens that are insured or indemnified against by a title insurance policy;

(o)   With respect to each Mortgage Loan, a policy of title insurance was effective as of the closing of each Mortgage Loan, is valid and binding, and remains in full force and effect, unless the Mortgaged Properties are located in the State of Iowa and an attorney's certificate has been provided;

(p)   Each Mortgaged Property is free of damage and in good repair, no notice of condemnation has been given with respect thereto and RFC knows of nothing involving any Mortgaged Property that could reasonably be expected to materially adversely affect the value or marketability of any Mortgaged Property;

(q)   Each Mortgage contains customary and enforceable provisions which render the rights and remedies of the holder adequate to realize the benefits of the security against the Mortgaged Property, including (i) in the case of a Mortgage that is a deed of trust, by trustee's sale, or (ii) by judicial foreclosure or, if applicable, non judicial foreclosure, and to the best of RFC's knowledge, there is no homestead or other exemption available to the Mortgagor that would interfere with such right to sell at a trustee's sale or right to foreclosure, subject in each case to applicable federal and state laws and judicial precedents with respect to bankruptcy and right of redemption;

(r)   To the best of RFC's knowledge, with respect to each Mortgage that is a deed of trust, a trustee duly qualified under applicable law to serve as such is properly named, designated and serving, and except in connection with a trustee's sale after

default by a Mortgagor, no fees or expenses are payable by the seller or RFC to the trustee under any Mortgage that is a deed of trust;

(s) If the improvements securing a Mortgage Loan are located in a federal designated special flood hazard area, flood insurance in the amount required under the Program Guide covers such Mortgaged Property (either by coverage under the federal flood insurance program or by coverage from private insurers);

(t) To the extent an appraisal was made on a Mortgage Loan, the appraisal was made by an appraiser who meets the minimum qualifications for appraisers as specified in the Program Guide;

(u) Each Mortgage Loan is covered by a standard hazard insurance policy;

(v) If any of the Mortgage Loans are secured by a leasehold interest, with respect to each leasehold interest: the use of leasehold estates for residential properties is an accepted practice in the area where the related Mortgaged Property is located; residential property in such area consisting of leasehold estates is readily marketable; the lease is recorded and no party is in any way in breach of any provision of such lease; the leasehold is in full force and effect and is not subject to any prior lien or encumbrance by which the leasehold could be terminated or subject to any charge or penalty (other than with respect to any junior lien Mortgage Loans); and the remaining term of the lease does not terminate less than ten years after the maturity date of such Mortgage Loan;

(w) To the best of RFC's knowledge, any escrow arrangements established with respect to any Mortgage Loan are in compliance with all applicable local, state and federal laws and are in compliance with the terms of the related Mortgage Note;

(x) None of the Mortgage Loans in the mortgage pool are loans that, under applicable state or local law in effect at the time of origination of the loan, are referred to as (1) "high-cost" or "covered" loans or (2) any other similar designation if the law imposes greater restrictions or additional legal liability for residential mortgage loans with high interest rates, points and/or fees;

(y) With respect to each Mortgage Loan, no borrower obtained a prepaid single-premium credit-life, credit disability, credit unemployment or credit property insurance policy in connection with the origination of the Mortgage Loan;

(z) None of the Mortgage Loans contain prepayment penalties that extend beyond three years after the date of origination;

(aa) None of the Mortgage Loans are covered by the Homeownership Act;

(bb) Each Mortgage Loan at the time it was made complied in all material respects with applicable local, state, and federal laws, including, but not limited to, all applicable anti-predatory lending laws;

(cc) No Mortgage Loan is a High Cost Loan or Covered Loan, as applicable (as such terms are defined in Appendix E of the Standard & Poor's Glossary For File Format For LEVELS® Version 5.6c Revised (attached hereto as Exhibit 1);

(dd) No Mortgage Loan was originated on or after October 1, 2002 and before March 7, 2003, which is secured by property located in the State of Georgia;

(ee) The Stated Principal Balance at origination for each Group II Loan that is secured by a single family property located in any state other than the States of Alaska or Hawaii did not exceed $359,650. The Stated Principal Balance at origination for each Group II Loan that is secured by a single family property located in the States of Hawaii or Alaska did not exceed $539,475. The Stated Principal Balance at origination for each Group II Loan that is secured by a two-, three-, or four- family property located in any state other than the States of Alaska or Hawaii did not exceed $460,400, $556,500 and $691,600, respectively. The Stated Principal Balance at origination for each Group II Loan that is secured by a two-, three- or four- family property located in the States of Hawaii or Alaska did not exceed $690,600, $834,750 and $1,037,400, respectively. Each Mortgage Loan is secured by Mortgaged Property located within the United States;

(ff) The information set forth in the Mortgage Loan Schedule with respect to prepayment penalties is complete, true and correct in all material respects at the date or dates on which such information is furnished respecting with such information is furnished, and each prepayment penalty is permissible and enforceable in accordance with its terms upon the mortgagor's full and voluntary principal prepayment under applicable law, except to the extent that: (1) the enforceability thereof may be limited by bankruptcy, insolvency, moratorium, receivership and other similar laws relating to creditors' rights; (2) the collectability thereof may be limited due to acceleration in connection with a foreclosure or other involuntary prepayment; or (3) subsequent changes in applicable law may limit or prohibit enforceability thereof under applicable law;

(gg) Each Mortgage Loan and prepayment penalty associated with the Mortgage Loan at origination complied in all material respects with applicable local, state and federal laws, including, without limitation, usury, equal credit opportunity, real estate settlement procedures, truth-in-lending and disclosure laws, and the consummation of the transactions contemplated hereby will not involve the violation of any such laws;

(hh) To the best of RFC's knowledge, the Subservicer for each Mortgage Loan has accurately and fully reported its borrower credit files to each of the Credit Repositories in a timely manner; and

(ii) With respect to any Group II Loan originated on or after August 1, 2004 and the underlying security, neither the related Mortgage nor the related Mortgage Note requires the Mortgagor to submit to arbitration to resolve any dispute arising out of or relating in any way to the mortgage loan transaction.

5109325 05161514                                6

REDACTED                                                                      RFC-002-000006

Upon discovery by RFC or upon notice from the Company or the Trustee of a breach of the foregoing representations and warranties in respect of any Mortgage Loan, or upon the occurrence of a Repurchase Event as described in Section 5 below, which materially and adversely affects the interests of any holders of the Certificates, the Insurer or the Company in such Mortgage Loan (notice of which shall be given to the Company by RFC, if it discovers the same), RFC shall, within 90 days after the earlier of its discovery or receipt of notice thereof, either cure such breach or Repurchase Event in all material respects or, except as otherwise provided in Section 2.04 of the Pooling and Servicing Agreement, either (i) purchase such Mortgage Loan from the Trustee or the Company, as the case may be, at a price equal to the Purchase Price for such Mortgage Loan or (ii) substitute a Qualified Substitute Mortgage Loan or Loans for such Mortgage Loan in the manner and subject to the limitations set forth in Section 2.04 of the Pooling and Servicing Agreement. Notwithstanding the foregoing, it is understood by the parties hereto that a breach of the representations and warranties made in any of clause (x), (y), (z), (aa), (bb), (cc), (dd), (ee), (ff), (gg), (hh), and (ii) of this Section 4 with respect to any Group II Loan will be deemed to materially and adversely affect the interests of the holders of the Class A-II Certificates in the related Group II Loans. If the breach of representation and warranty that gave rise to the obligation to repurchase or substitute a Mortgage Loan pursuant to this Section 4 was the representation and warranty set forth in clause (bb) of this Section 4, then RFC shall pay to the Trust Fund, concurrently with and in addition to the remedies provided in the preceding sentence, an amount equal to any liability, penalty or expense that was actually incurred and paid out of or on behalf of the Trust Fund, and that directly resulted from such breach, or if incurred and paid by the Trust Fund thereafter, concurrently with such payment. Notwithstanding the foregoing, RFC shall not be required to cure breaches, Repurchase Events or purchase or substitute for Mortgage Loans as provided above if the substance of such breach or Repurchase Event also constitutes fraud in the origination of the Mortgage Loan.

5. With respect to each Mortgage Loan, a repurchase event ("Repurchase Event") shall have occurred if one or both of the following occur: (A) it is discovered that, as of the date hereof, the related Mortgage was not a valid first lien (or second lien, with respect to junior lien Mortgage Loans) on the related Mortgaged Property subject only to (i) the lien of real property taxes and assessments not yet due and payable, (ii) covenants, conditions, and restrictions, rights of way, easements and other matters of public record as of the date of recording of such Mortgage and such other permissible title exceptions as are listed in the Program Guide, (iii) other matters to which like properties are commonly subject which do not materially adversely affect the value, use, enjoyment or marketability of the Mortgaged Property and (iv) with respect to junior lien Mortgage Loans, the senior mortgage loan thereon or (B) it is discovered that, as of the time of its origination and as of the date of execution hereof, the Mortgage Loan did not comply in all material respects with all applicable local, state and federal laws. In addition, with respect to any Mortgage Loan listed on the attached Schedule A with respect to which any document or documents constituting a part of the Mortgage File are missing or defective in any material respect, if such Mortgage Loan subsequently is in default and the enforcement thereof or of the related Mortgage is materially and adversely affected by the absence or defectiveness of any such document or documents, a Repurchase Event shall be deemed to have occurred and RFC will be obligated to repurchase or substitute for such Mortgage Loan in the manner set forth in Section 4 above.

REDACTED                                                                      RFC-002-000007

6. Concurrently with the execution and delivery hereof, RFC hereby assigns to the Company, and the Company hereby assumes, all of RFC's rights and obligations under the Seller Contracts with respect to the Mortgage Loans to be serviced under the Pooling and Servicing Agreement, insofar as such rights and obligations relate to (a) any representations and warranties regarding a Mortgage Loan made by a Seller under any Seller Contract and any remedies available under the Seller Contract for a breach of any such representations and warranties if (i) the substance of such breach also constitutes fraud in the origination of the Mortgage Loan or (ii) the representation and warranty relates to the absence of toxic materials or other environmental hazards that could affect the Mortgaged Property, or (b) the Seller's obligation to deliver to RFC the documents required to be contained in the Mortgage File and any rights and remedies available to RFC under the Seller Contract in respect of such obligation or in the event of a breach of such obligation; provided that, notwithstanding the assignment and assumption hereunder, RFC shall have the concurrent right to exercise remedies and pursue indemnification upon a breach by a Seller under any Seller Contract of any of its representations and warranties and RFC shall exercise reasonable efforts to enforce a Seller's obligation to purchase a Mortgage Loan from the Company in accordance with the time frame described in the Program Guide. If the Company or RFC asserts that it is not required to cure breaches or to purchase or substitute for Mortgage Loans under the Pooling and Servicing Agreement because the substance of the breach also constitutes fraud in the origination of any Mortgage Loan, then the substance of the related breach shall automatically be deemed to constitute fraud in the origination of a Mortgage Loan for purposes of clause (i) of this Section 6; provided, however, that if the related Seller provides RFC with reasonable evidence that the substance of such breach does not constitute fraud, then it shall no longer be deemed to constitute fraud in the origination of a Mortgage Loan for purposes of clause (i) of this Section 6.

7. This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective successors and assigns, and no other person shall have any right or obligation hereunder.

8. RFC, as master servicer under the Pooling and Servicing Agreement (the "Master Servicer"), shall not waive (or permit a sub-servicer to waive) any Prepayment Charge unless: (i) the enforceability thereof shall have been limited by bankruptcy, insolvency, moratorium, receivership and other similar laws relating to creditors' rights generally, (ii) the enforcement thereof is illegal, or any local, state or federal agency has threatened legal action if the prepayment penalty is enforced, (iii) the collectability thereof shall have been limited due to acceleration in connection with a foreclosure or other involuntary payment or (iv) such waiver is standard and customary in servicing similar Mortgage Loans and relates to a default or a reasonably foreseeable default and would, in the reasonable judgment of the Master Servicer, maximize recovery of total proceeds taking into account the value of such Prepayment Charge and the related Mortgage Loan. In no event will the Master Servicer waive a Prepayment Charge in connection with a refinancing of a Mortgage Loan that is not related to a default or a reasonably foreseeable default. If a Prepayment Charge is waived, but does not meet the standards described above, then the Master Servicer is required to pay the amount of such waived Prepayment Charge to the holder of the Class SB Certificates at the time that the amount prepaid on the related Mortgage Loan is required to be deposited into the Custodial Account. Notwithstanding any other provisions of this Agreement, any payments made by the Master

REDACTED                                                                        RFC-002-000008

Servicer in respect of any waived Prepayment Charges pursuant to this Section shall be deemed to be paid outside of the Trust Fund and not part of any REMIC.

9. This Agreement will be governed by and construed in accordance with the laws of the State of New York, without regard to the conflict of law principles thereof, other than Sections 5-1401 and 5-1402 of the New York General Obligations Law.

[SIGNATURES BEGIN ON FOLLOWING PAGE]

REDACTED

RFC-002-000009

IN WITNESS WHEREOF, the parties have entered into this Assignment and Assumption Agreement as of the date first above written.

RESIDENTIAL FUNDING CORPORATION

By: _____
Name: Pieter VanZyl
Title: Associate


RESIDENTIAL ASSET MORTGAGE
PRODUCTS, INC.

By: _____
Name: Joseph Orning
Title: Vice President

5109325 05161514

*Assignment and Assumption*
*Agreement – Series 2005-EFC7*

REDACTED                                    RFC-002-000010