**Hearing Date: June 4, 2015 at 10:00 A.M. (ET)**

MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett

*Counsel for the ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**RESCAP BORROWER CLAIMS TRUST'S REPLY IN SUPPORT OF ITS EIGHTY-FIFTH OMNIBUS OBJECTION TO CLAIMS ((I) NO-LIABILITY BORROWER CLAIMS, (II) REDUNDANT BORROWER CLAIMS, (III) MISCLASSIFIED BORROWER CLAIMS) AS TO CLAIM NO. 4966**

ny-1188437

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the Plan[1] filed in the above-captioned Chapter 11 Cases, as successor in interest to the above-captioned Debtors with respect to Borrower Claims, by and through its undersigned counsel, hereby submits this reply (the "Reply") and the Supplemental Declaration of David Cunningham, Director to the ResCap Liquidating Trust (the "Supplemental Declaration"), annexed hereto as Exhibit 1, to the response filed by Phenon Walker (the "Respondent") [Docket No. 8599] (the "Response") to the *ResCap Borrower Claims Trust's Eighty-Fifth Omnibus Objection to Claims ((I) No Liability Borrower Claims, (II) Redundant Borrower Claims, and (III) Misclassified Borrower Claims)* [Docket No. 8380] (the "Objection") and in further support of the Objection. The Borrower Trust respectfully states as follows:

**PRELIMINARY STATEMENT**

1.  The Borrower Trust examined the Response and the statements submitted in support thereof. For purposes of this Reply and the Objection, the Borrower Trust takes these statements at face value. If the Court is not prepared to rule on the Objection with respect to the Respondent, then the Borrower Trust reserves the right to take discovery from the Respondent.

2.  As described herein and in the Supplemental Declaration, the Borrower Trust thoroughly examined the Debtors' books and records that were prepared and kept in the course of their regularly conducted business activities (the "Books and Records") in an effort to validate the accuracy of the allegations made in the Response and the claim at issue, and for the reasons described herein, the Books and Records do not show any liability due and owing to the Respondent.

3.  Moreover, as the Objection shifted the burden of proof back to the Respondent, the Respondent must demonstrate a valid claim against the Debtors' estates by a preponderance

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Objection.

ny-1188437

of the evidence. For the reasons set forth in the Objection, this Reply, and the Supplemental Declaration, the Respondent has failed to provide any explanation as to why her claim is valid and should be allowed against the Debtors' estates. In the Response, the Respondent alleges that the Debtors did not transfer the full amount of insurance proceeds that were being held on her behalf when it transferred servicing of her loan in February of 2013, but she does not provide any evidence to support this allegation. Rather, the Respondent merely alleges that her current servicer, who acquired the loan from a non-Debtor party, does not currently hold the full amount of insurance proceeds that were disbursed to the Debtors by her insurance company. However, the amount held currently by her servicer is no indication of the amount that was transferred by the Debtors over two years ago, and the Respondent has provided nothing to support her allegation that the amount transferred by the Debtors was incorrect. Furthermore, the Debtors' books and records show that the full amount of insurance proceeds was transferred when it transferred servicing of the loan in February of 2013. Furthermore, the Respondent has failed to demonstrate any liability of the Debtors related to a dispute over one of her insurance claims because the Debtors were not involved in approving or denying insurance claims. Therefore, the Respondent has not met her burden of proof, and the relief sought in the Objection should be granted with respect to the Respondent.

## BACKGROUND

4. In connection with the claims reconciliation process, the Borrower Trust identified certain claims filed by Borrowers that it believed did not constitute valid liabilities of the Debtors (together, the "No Liability Borrower Claims"). See Supplemental Declaration ¶ 4.

5.    The Debtors sent Request Letters to certain Borrowers, including the Respondent, requesting additional documentation in support of the No Liability Borrower Claims.[2]  See Supplemental Declaration ¶ 5.[3]

6.    The Debtors did not receive a response to the Request Letter from the Respondent, and, as stated in the Objection, the Books and Records do not show any liability due and owing to the Respondent.  See Supplemental Declaration ¶ 6.

*Background Facts*

7.    On or around November 15, 2012, the Respondent filed a proof of claim against Debtor Residential Capital, LLC ("ResCap"), designated as Claim No. 4966 (the "Claim"), asserting a general unsecured claim for $18,950.20.  See Exhibit A to the Supplemental Declaration.  See Exhibit A to the proposed order to the Objection ("Exhibit A to the Objection").  The Claim was redesignated as a general unsecured claim against Debtor GMACM Mortgage, LLC ("GMACM") in the Court's *Order Granting Debtors' Thirty-Eighth Omnibus Objection to Claims (Wrong Debtor Borrower Claims)* [Docket No. 5898], entered on November 20, 2013.

8.    According to the Debtors' books and records, non-Debtor First National Bank of Arizona ("First National") originated a loan in the amount of $975,000 to the Respondent on April 28, 2003 (the "Loan"), secured by a deed of trust on property located at 13880 Edgewater Drive, Lakewood, OH 44107 (the "Property").  See Exhibit A to the Objection; see also Note,

---

[2] A Request Letter was sent to the Respondent on June 21, 2013.  See Supplemental Declaration n. 2.

[3] The Request Letters state that the claimant must respond within 30 days with an explanation that states the legal and factual reasons why the claimant believes he or she is owed money or is entitled to other relief from the Debtors, and the claimant must provide copies of any and all documentation that the claimant believes supports the basis for his or her claim. The Request Letters further state that if the claimant does not provide the requested explanation and supporting documentation within 30 days, the Debtors may file a formal objection to the claimant's claim, seeking to have the claim disallowed and permanently expunged.  See Supplemental Declaration ¶ 5.

3

attached to the Supplemental Declaration as <u>Exhibit B</u>, and Deed of Trust, attached to the Supplemental Declaration as <u>Exhibit C</u>.

9. Debtor Residential Funding Company ("<u>RFC</u>") purchased the loan from First National and transferred its interest when the loan was securitized on or about June 1, 2003 where JP Morgan Chase, N.A. ("<u>J.P Morgan</u>") was appointed as trustee. <u>See</u> <u>Exhibit A</u> to the Objection.

10. Homecomings serviced the loan from June 13, 2003 until servicing was transferred to GMACM on or about July 1, 2009. GMACM serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC ("<u>Ocwen</u>") on February 16, 2013. <u>See</u> <u>Exhibit A</u> to the Objection.

11. On August 24, 2011, the Property sustained wind damage. <u>See</u> August 30, 2012 letter to GMACM, attached to the Response as <u>Exhibit O-1</u>. The Respondent reported the claim to her insurance company on August 16, 2012. <u>See</u> <u>id</u>. The total estimated damage from the storm was $6,286.54, and the Debtors received an insurance payment of $3,185.93 on or around September 7, 2012. <u>See</u> <u>id</u>; <u>see also</u> Servicing Notes, attached to the Supplemental Declaration as <u>Exhibit D</u>. The Debtors placed the funds in escrow, as the Debtors' standard policies and procedures required the Respondent to submit a contract for repairs from the general contractor and obtain an inspection prior to the release of insurance proceeds. <u>See</u> <u>Exhibit A</u> to the Objection; <u>see also</u> letter from GMACM, attached to the Response as <u>Exhibit O-2</u>.

12. On October 4, 2011, the Property suffered vandalism. <u>See</u> September 6, 2012 letter to GMACM, attached to the Response as <u>Exhibit M-1</u>. The Respondent reported the claim to her insurance company on August 16, 2012. <u>See</u> <u>id</u>. The total estimated damage for this claim was $3,065.25, and the Debtors received an insurance payment of $1,333.10 on or around

September 14, 2012.  See id; see also Servicing Notes.  As with their receipt of the previous insurance funds, the Debtors placed the funds in escrow and waited for the necessary documentation from the Respondent before releasing the funds.  See Exhibit A to the Objection; see also letter from GMACM, attached to the Response as Exhibit M-2.

13. On August 9, 2012, the Property suffered water damage.  See August 6, 2014 letter to the Respondent, attached to the Response as Exhibit K-2.  The Respondent reported the claim to her insurance company on August 16, 2012.  See id.  The total estimated damage for this claim was $11,598.41, and the Debtors received a payment of $9,884.72 on or around September 19, 2012.  See id; see also Servicing Notes.  Once again, the Debtors placed the funds in escrow and waited for the necessary documentation from the Respondent in order to release the funds.  See Exhibit A to the Objection; see also letter from GMACM, attached to the Response as Exhibit K-1.

14. The Debtors attempted to contact the Respondent on October 16, 18, 19, 26, 29, and 30, 2012; November 26, 27, and 29 2012; December 31, 2012; and January 3, 18, and 30 2013 to inquire about the Respondent's status in obtaining a contract for the repairs for each instance of damage.  See Servicing Notes.  However, the Respondent neither answered nor returned these calls.  See id.

15. When servicing of the Loan was transferred to Ocwen, the Debtors also transferred the $14,403.75 in insurance proceeds that were being held in escrow.  See Servicing Notes.[4]

16. The Respondent filed a fourth insurance claim in September 2012 with a non-Debtor third party.  See Response ¶ 21.  A review of this claim was re-opened on October 15,

---

[4] The amount of the insurance proceeds transferred when servicing was transferred to Ocwen is shown as the "Unapplied" current balance on page 1 of the Servicing Notes.  See Supplemental Declaration ¶ 14.

5
ny-1188437

2012 and was still pending at the time servicing of the Loan was transferred to Ocwen. See Servicing Notes. The Debtors were not involved in the review of the claim, as reviews of insurance claims were conducted by a third party adjuster who was not affiliated with the Debtors. See Supplemental Declaration ¶ 12.

## REPLY

17.    A filed proof of claim is "deemed allowed, unless a party in interest … objects." 11 U.S.C. § 502(a). Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law…." 11 U.S.C. § 502(b)(1). As noted previously by the Court, objections have a shifting burden of proof. Pursuant to Federal Rule of Bankruptcy Procedure 3001(f), a claimant establishes a prima facie case against a debtor upon filing a proof of claim alleging facts sufficient to support the claim. The objecting party is thereafter required to produce evidence equal in force to that provided by the claimant to rebut the presumption of the claimant's prima facie case. In re Residential Capital, LLC, 507 B.R. 477, 490 (Bankr. S.D.N.Y. 2014). See also Allegheny Int'l, Inc. v. Snyder (In re Allegheny Int'l, Inc.), 954 F.2d 167, 173-74 (3d Cir. 1992).

18.    Once an objection refutes an essential allegation of the claim, the burden of persuasion is on the holder of a proof of claim to establish a valid claim against a debtor by a preponderance of the evidence. Residential Capital, 507 B.R at 490; Feinberg v. Bank of N.Y. (In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010); In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co. v. Oneida Ltd, No. 09-cv-2229 (DC), 2010 U.S. Dist. Lexis 6500 (S.D.N.Y. Jan. 22, 2010); In re Adelphia Commc'ns Corp., Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); In re Rockefeller Ctr. Props., 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000), aff'd sub nom.,

6

ny-1188437

NBC v. Rockefeller Ctr. Props. (In re Rockefeller Ctr. Props.), 266 B.R. 52 (S.D.N.Y. 2001), aff'd, 46 Fed. Appx. 40 (2d Cir. 2002).

19.  The Respondent admits that she did not provide the necessary paperwork to permit the Debtors to release the funds in her escrow account. See Response pp. 8-9. Rather, she asserts, without providing any evidentiary support, that the escrow funds were not transferred to Ocwen. See Response p. 7.

20.  The Respondent's allegation is premised on her assertion that her current servicer, Specialized Loan Servicing ("SLS"), does not have the entire amount of insurance proceeds in the escrow account it holds on her behalf. However, this allegation only relates to the amount of funds that are currently held by SLS. The allegation does not provide any persuasive evidence to contradict the Debtors' representations concerning the transfer of funds to Ocwen in February of 2013. As the Servicing Notes demonstrate, the entire amount of the insurance proceeds was transferred to Ocwen when servicing of the Loan was transferred. See ¶ 15 *supra*. If the Respondent's current servicer did not receive the full amount of funds from Ocwen, her claim is against Ocwen, not the Debtors.

21.  Additionally, the Respondent appears to allege that the Debtors are liable for the denial of an insurance claim she filed in September 2012; however, she does not explain or identify any alleged improper action by the Debtors. See Response ¶ 21. In addition, any decision to deny her insurance claim was made by a third party insurance adjuster, not a Debtor entity, as the Debtors were not involved in such decisions. See Supplemental Declaration ¶ 12. Rather, it was the Debtors' regular business practice to act as a conduit for the disbursement of insurance proceeds received on account of insurance claims related to the Property. See Supplemental Declaration ¶ 12. Thus, if the Respondent believes an insurance claim was

wrongfully denied, the claim is against the third party insurance adjuster, not the Debtors. As a result, the Respondent has failed to demonstrate by a preponderance of the evidence that she is owed any money by the Debtors, and therefore the Claim should be disallowed and expunged.

## CONCLUSION

22. WHEREFORE, the Borrower Trust respectfully submits that the relief requested in the Objection should be granted in its entirety.

Dated:   June 2, 2015         /s/ Norman S. Rosenbaum
       New York, New York         Norman S. Rosenbaum
                                          Jordan A. Wishnew
                                          Jessica J. Arett
                                          MORRISON & FOERSTER LLP
                                          250 West 55th Street
                                          New York, New York 10019
                                          Telephone: (212) 468-8000
                                          Facsimile: (212) 468-7900

*Counsel for the ResCap Borrower Claims Trust*