<u>**Exhibit 1**</u>

MORRISON | FOERSTER

250 WEST 55TH STREET
NEW YORK
NEW YORK 10019-9601

TELEPHONE:212.468.8000
FACSIMILE:212.468.7900

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BRUSSELS, DENVER,
HONG KONG, LONDON, LOS ANGELES,
NEW YORK, NORTHERN VIRGINIA,
PALO ALTO, SACRAMENTO, SAN DIEGO,
SAN FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

April 17, 2015

Writer's Direct Contact
+1 (212) 506.7341
NRosenbaum@mofo.com

<u>Via Express Mail</u>

Ronald P. Gillis
P.O. Box 380841
Murdock, FL 33938-0842

Re:    *In re Residential Capital LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y.) -
       Discovery Requested by Bankruptcy Court

Dear Mr. Gillis:

I write in connection with the direction of the Bankruptcy Court for the Southern District of
New York to provide you with certain discovery.

At the hearing on your *Amended Motion for Relief of Automatic Stay Regarding
"RFC" and "Homecomings Financial" to Persue [sic] Discovery* [Docket No. 7785] filed in
the Debtors' bankruptcy cases, the Bankruptcy Court directed the Liquidating Trust created
pursuant to the Debtors' chapter 11 plan to "undertake a search of electronic records for any
records that relate to the [you]." *See* Tr. H'ring at 44:15-16. The Court also directed the
Liquidating Trust to attempt to locate your loan file and any servicing notes. *See id.* 45:12-
21. The Court indicated, however, that searches of email correspondence was not necessary
at this juncture. *See id.* at 1-2.

As I indicated to you after the hearing, Debtor Residential Funding Company, LLC ("RFC")
acted only as the master servicer of your loan, and not the subservicer. This means that RFC
was not involved in the day-to-day monitoring of your loan. Consequently, RFC (and the
Liquidating Trust as its successor in interest) had access to only limited information
regarding your loan. The Liquidating Trust has searched the electronic records that it
believes were likely to contain information regarding your loan (excluding, at the Court's
direction, email records) utilizing both your name and your property's address, consistent
with the Court's direction.
Enclosed with this letter are copies of the following documents identified by the Liquidating
Trust:

  1. The Note relating to your loan;

ny-1181558

MORRISON | FOERSTER

Ronald P. Gillis
April 17, 2015
Page Two

2.  The loan file contained in RFC's records; and

3.  Certain documents related to affidavits prepared by Wells Fargo Bank, N.A. as
    subservicer of your loan in connection with the foreclosure proceeding relating to
    your property.

Additionally, as a courtesy we have enclosed certain documents relating to the creation of the
securitization trust into which your loan was transferred, including:

a.  Standard Terms of Pooling and Servicing Agreement, dated as of March 1,
    2006;

b.  Series Supplement, dated July 1, 2006; and

c.  Assignment and Assumption Agreement, dated July 28, 2006.

Additional information regarding the trust into which your loan was transferred is
voluminous, and may be found at http://www.sec.gov/cgi-bin/browse-
edgar?action=getcompany&CIK=0001366205&owner=exclude&count=40&hidefilings=0.

Reference is made to your *Non-Pleading Correspondence*, dated March 20, 2015 (the
"March 20 Correspondence") and your *Judicial Notice* [Docket No. 8367] filed in the above-
captioned chapter 11 cases of Residential Capital, LLC and its affiliated debtors (the
"Debtors") on March 27, 2015 (the "March 27 Correspondence"). In your March 20
Correspondence and March 27 Correspondence, you request certain specified information,
some of which may not be included within the scope of the information for which the Court
directed the Liquidating Trust to search. However, as described above, the enclosed
documents include all documents that the Liquidating Trust was able to locate in its search
for electronic records relating to you or your loan as expressly directed by the Court.

We also understand that you have not yet dismissed your pending action in the United States
District Court for the Middle District of Florida, Case No. 14-cv-418, as it relates to GMAC
Mortgage, LLC and Homecomings Financial, LLC. Consistent with the Court's direction in
the enclosed opinion, we request that you dismiss GMAC Mortgage, LLC and Homecomings
Financial, LLC from this action at your earliest convenience.

Very truly yours,

Norman S. Rosenbaum

ny-1181558

## AFFIDAVIT OF NOTE IN COURT POSSESSION

PERSONALLY appeared before me, __Omar Yusuf Qanyare__ (the "Affiant"), who, upon being duly sworn, states on his/her oath as follows:

1.    Affiant is a **Vice President Loan Documentation** employed by WELLS FARGO BANK, N.A. ("Wells Fargo"), Servicer.

2.    I am authorized to make this Affidavit on behalf of **WELLS FARGO BANK, N.A., SERVICING AGENT TO DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE FOR RESIDENTIAL ACCREDIT LOANS, INC., MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2006-QS8.** In the regular performance of my job functions, I am familiar with business records maintained by Wells Fargo for the purpose of servicing mortgage loans and I have personal knowledge of the operation of and the circumstances surrounding the preparation, maintenance, and retrieval of records in Wells Fargo's record keeping systems. These records (which include data compilations, electronically imaged documents, and others) are made at or near the time by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records, and are kept in the course of business activity conducted regularly by Wells Fargo. It is the regular practice of Wells Fargo's mortgage servicing business to make these records. I have acquired personal knowledge of all facts set forth in this affidavit by examining these business records.

3.    **RONALD P GILLIS** executed and delivered to **WACHOVIA MORTGAGE CORPORATION** a certain Note dated **MAY 1, 2006** in the original principal amount of **$146,150.00** with an interest rate of **6.875 %.** The Note was secured by a Mortgage executed by **RONALD P GILLIS**, the record owner of the property located at **21238 COACHMAN AVE, PORT CHARLOTTE, FLORIDA 33952** , dated **MAY 1, 2006**, and recorded on **MAY 05, 2006** in CHARLOTTE COUNTY, FLORIDA, in BOOK 2961 AND PAGE 416-433 OR, as INSTRUMENT # 1547619.

4.    Upon information and belief, on **JUNE 18, 2009, JAMES E. ALBERTELLI, PA,** Counsel for **DEUTSCHE BANK TRUST COMPANY AMERICAS AS TRUSTEE,** submitted the original Note with **THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR CHARLOTTE COUNTY, FLORIDA** in relation to

098-NTL-V2

**DEUTSCHE BANK TRUST COMPANY AMERICAS AS TRUSTEE** vs. **RONALD P. GILLIS, ET AL.** As of **APRIL 3, 2014, JAMES E. ALBERTELLI, PA** confirmed that the Court still has possession of the Note. A copy of the Note is attached to this affidavit.

098-NTL-V2

FURTHER AFFIANT SAYETH NAUGHT.

> **WELLS FARGO BANK, N.A., SERVICING AGENT TO DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE FOR RESIDENTIAL ACCREDIT LOANS, INC., MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2006-QS8**
>
> Sign: _____
>
> Name: **Omar Yusuf Qanyare**
>
> Company: **WELLS FARGO BANK, N.A.**
>
> Title: **Vice President Loan Documentation**
>
> Date: 04-10-14

State of Minnesota    )
County of Dakota      )

Sworn and subscribed to before me this ___10___ day of ___April___, 2014.

_____ (Signature)          (Stamp or Seal)

Kyle P. Blazovich

Name _____
Notary Public
My Commission expires: Jan 31, 2017

KYLE P. BLAZOVICH
NOTARY PUBLIC - MINNESOTA
My Commission Expires
January 31, 2017

> ~ index ne

CHARLOTTE COUNTY CLERK OF CIRCUIT COURT
OR BOOK 3654, PGS 1347-1348 2 pg(s)
INSTR # 2093516
Doc Type ASG, Recorded 05/04/2012 at 11:38 AM
Rec. Fee: $18.50
Cashiered By: MARGEC Doc. #:1

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

DEFAULT ASSIGNMENT
WELLS FARGO BANK, N.A.
MAC: X9999-018
PO BOX 1629
MINNEAPOLIS, MN  55440-9790

## CORPORATE ASSIGNMENT OF MORTGAGE

Charlotte, Florida
"GILLIS"

MERS #:                        1685  SIS #: 1-888-679-6377

Date of Assignment: April 30th, 2012
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WACHOVIA MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS at BOX 2026 FLINT MI 48501, 1901 E VOORHEES ST STE C, DANVILLE, IL 61834
Assignee: DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE FOR RALI 2006-QS8 at 1761 EAST SAINT ANDREW PLACE, SANTA ANA, CA  92705-4934
Executed By: RONALD P GILLIS  A SINGLE PERSON  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WACHOVIA MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS
Date of Mortgage:  05/01/2006  Recorded:  05/05/2006  In Book/Reel/Liber: 2981 Page/Folio: 416-433 as Instrument No.: 1547619  In the County of Charlotte, State of Florida.

Property Address: 21238 COACHMAN AVE, PORT CHARLOTTE, FL 33952

Legal: N/A

### CORRECTIVE ASSIGNMENT
*This assignment is being recorded to correct the scriveners error in the assignment recorded on July 15, 2009 as Instrument No. 1864249 in Book 3402, Page750-750, as that assignment listed the assignee name as "Deutsche Bank Trust Company Americas as Trustee" and should have listed the assignee as "Deutsche Bank Trust Company Americas, as Trustee for RALI 2006-QS8".

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $146,150.00 with interest, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

   TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WACHOVIA MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS
On  5/3/2012

By _____
     Ramesch Vardan
Assistant Secretary

2

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

STATE OF Minnesota
COUNTY OF Dakota

On 5/2/2012 , before me, _____ Taehoony Chin _____ a Notary Public in Dakota County in the
State of Minnesota, personally appeared _____ Ramesch Vardan. _____, Assistant Secretary,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

Taehoony Chin
Notary Expires: 01/31/2013

TAEHOONY CHIN
Notary Public
Minnesota
My Commission Expires January 31, 2013

(This area for notarial seal)

Prepared By: Yves Kenac, WELLS FARGO BANK, N.A. 2701 WELLS FARGO WAY, MAC X9999-018, MINNEAPOLIS, MN
55467-8000 1-866-234-8271

*index no*

Recording Requested By:
WELLS FARGO BANK, N.A.

CHARLOTTE COUNTY CLERK OF CIRCUIT COURT
OR BOOK 3654, PGS 1347-1348 2 pg(s)
INSTR # 2093516
Doc Type ASG, Recorded 05/04/2012 at 11:38 AM
Rec Fee $18.50
Cashiered By: MARGEC Doc #:1

When Recorded Return To:

DEFAULT ASSIGNMENT
WELLS FARGO BANK, N.A.
MAC: X9999-018
PO BOX 1629
MINNEAPOLIS, MN  55440-9790

## CORPORATE ASSIGNMENT OF MORTGAGE

Charlotte, Florida
"GILLIS"

MERS #: [ ] 1685  SIS #: 1-888-679-6377

Date of Assignment: April 30th, 2012
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WACHOVIA
MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS at BOX 2026 FLINT MI 48501, 1901 E
VOORHEES ST STE C., DANVILLE, IL 61834
Assignee: DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE FOR RALI 2006-QS8 at 1761 EAST
SAINT ANDREW PLACE, SANTA ANA, CA  92705-4934
Executed By: RONALD P GILLIS  A SINGLE PERSON  To. MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS NOMINEE FOR WACHOVIA MORTGAGE CORPORATION, ITS SUCCESSORS AND
ASSIGNS
Date of Mortgage: 05/01/2006 Recorded:  05/05/2006 In Book/Reel/Liber  2961 Page/Folio. 416-433 as Instrument
No.' 1547619  in the County of Charlotte, State of Florida.

Property Address: 21238 COACHMAN AVE, PORT CHARLOTTE, FL  33952

Legal:  N/A

### CORRECTIVE ASSIGNMENT

*This assignment is being recorded to correct the scriveners error in the assignment recorded on July 15, 2009 as
Instrument No 1864249 in Book 3402, Page750-750, as that assignment listed the assignee name as "Deutsche
Bank Trust Company Americas as Trustee" and should have listed the assignee as "Deutsche Bank Trust Company
Americas, as Trustee for RALI 2006-QS8".

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $146,150 00 with interest, secured thereby, with all moneys now owing
or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the
covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee,
the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WACHOVIA MORTGAGE
CORPORATION, ITS SUCCESSORS AND ASSIGNS
On  5/2/2012

By _____
     Ramesch Vardan.
Assistant Secretary

2

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

STATE OF Minnesota
COUNTY OF Dakota

On 5/2/2012 , before me, _____ Taehoony Chin _____ , a Notary Public in Dakota County in the
State of Minnesota, personally appeared _____ Rameech Vardan. _____ , Assistant Secretary,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____ Taehoony Chin _____
Notary Expires 01/31/2013

TAEHOONY CHIN
Notary Public
Minnesota
My Commission Expires January 31, 2013

(This area for notarial seal)

Prepared By:  Yves Kenao, WELLS FARGO BANK, N.A. 2701 WELLS FARGO WAY, MAC X9999-018, MINNEAPOLIS, MN
55467-8000 1-866-234-8271

# First American Title Insurance Company

## ALTA LOAN POLICY

Agent's File Number: SW06102                     Loan Policy Number: █████ 9218

### Schedule A, Continuation

Lot 3, Block 1422, PORT CHARLOTTE SUBDIVISION, Section 27, a Subdivision according to the plat thereof as recorded in Plat Book 5, Pages 20A thru 20F, of the Public Records of Charlotte County, Florida.

## ENVIRONMENTAL PROTECTION LIEN ENDORSEMENT
### ISSUED BY

# First American Title Insurance Company

Issuing Office File No.: SW06102                    Attached to Policy No.: 9218

The insurance afforded by this endorsement is only effective if the land is used or is to be used primarily for residential purposes.

The Company insures the insured against loss or damage sustained by reason of lack of priority of the lien of the insured mortgage over:

(a)    any environmental protection lien which, at Date of Policy, is recorded in those records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge, or filed in the records of the Clerk of the United States District Court for the District in which the land is located, except as set forth in Schedule B; or

(b)    any environmental protection lien provided for by any state statute in effect at Date of Policy, except environmental protection liens provided for by the following state statutes: None.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

This endorsement shall not be valid or binding unless signed by either a duly authorized officer or agent of the Company.

Issue Date: May 1, 2006

Title Partners of Southwest Florida LLC

By: _____
      Authorized Signatory

ALTA 8.1 Environmental Protection Lien Endorsement

# FLORIDA FORM 9 ENDORSEMENT
ISSUED BY
## First American Title Insurance Company

Issuing Office File No.: SW06102            Attached to Policy No.: ▢▢▢▢218

The Company insures the owner of the indebtedness secured by the insured mortgage against loss or damage sustained by reason of:

1. The existence at Date of Policy of any of the following:
   (a) Covenants, conditions or restrictions under which the lien of the mortgage referred to in Schedule A can be divested, subordinated or extinguished, or its validity, priority or enforceability impaired.
   (b) Unless expressly excepted in Schedule B:
      (1) There are no present violations on the land of any enforceable covenants, conditions or restrictions nor do any existing improvements on the land violate building setback lines shown on a plat of subdivision recorded or filed in the public records.
      (2) Any instrument referred to in Schedule B as containing covenants, conditions or restrictions on the land does not, in addition (i) establish an easement on the land; (ii) provide a lien for liquidated damages; (iii) provide for a private charge or assessment; (iv) provide for an option to purchase, a right of first refusal or the prior approval of a future purchaser or occupant.
      (3) There is no encroachment of existing improvements located on the land onto adjoining land, nor any encroachment onto the land of existing improvements located on adjoining land.
      (4) There is no encroachment of existing improvements located on the land onto that portion of the land subject to any easement excepted in Schedule B.
      (5) There are no notices of violation of covenants, conditions, and restrictions relating to environmental protection recorded or filed in the public records.
2. Any future violation on the land of an existing covenant, condition or restriction occurring prior to the acquisition of title to the estate or interest in the land, provided the violation results in:
   (a) Invalidity, loss of priority, or unenforceability of the lien of the insured mortgage; or,
   (b) Loss of title to the estate or interest in the land if the insured shall acquire title in satisfaction of the indebtedness secured by the insured mortgage.
3. Damage to existing improvements (excluding lawns, shrubbery or trees):
   (a) Which are located on or encroach upon that portion of the land subject to any easement excepted in Schedule B, which damage results from the exercise of the right to maintain the easement for the purpose for which it was granted or reserved.
   (b) Which results from the future exercise of any right to use the surface of the land for the extraction or development of minerals excepted from the description of the land or excepted in Schedule B.
4. Any final court order or judgment requiring the removal from any land adjoining the land of any encroachment excepted in Schedule B.
5. Any final court order or judgment denying the right to maintain any existing improvement on the land because of any violation of covenants, conditions or restrictions or building setback lines shown on a plat or subdivision recorded or filed in the public records.

Whenever in this endorsement the words "covenants, conditions or restrictions" appear, they shall not be deemed to refer to or include the terms, covenants, conditions or limitations contained in an instrument creating a lease.

As used in paragraphs 1 (b) (1) and 5 the phrase "covenants, conditions, or restrictions" shall not be deemed to refer to or include any covenants, conditions or restrictions relating to environmental protection.

This endorsement is made a part of the policy and is subject to all the terms and provisions thereof and any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

This endorsement shall not be valid or binding unless signed by either a duly authorized officer or representative of the Company.

Issue Date: May 1, 2006

**Title Partners of Southwest Florida LLC**

By: _Tracy J. Padgett_
       Authorized Signatory

Florida Form 9 Endorsement



FATIC 443

Policy No. **FA-36-** 1289218

# POLICY OF TITLE INSURANCE

ISSUED BY

## First American Title Insurance Company

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of the title;
4. Lack of a right of access to and from the land;
5. The invalidity or unenforceability of the lien of the insured mortgage upon the title;
6. The priority of any lien or encumbrance over the lien of the insured mortgage;
7. Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:
   (a) arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or
   (b) arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;
8. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

### First American Title Insurance Company

BY _Gary L. Kennett_     PRESIDENT

ATTEST _Mark R. Arneson_     SECRETARY

**ALTA Loan Policy (10/17/92) (With Florida Modifications)**

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land, (ii) the character, dimensions or location of any improvement now or hereafter erected on the land, (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:
   (a) created, suffered, assumed or agreed to by the insured claimant;
   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
   (c) resulting in no loss or damage to the insured claimant;
   (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material or the extent insurance is afforded herein as to assessments for street improvements under construction or completed at Date of Policy); or

   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending laws.

6. Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance

7. Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
   (i) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer, or
   (ii) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or
   (iii) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:
       (a) to timely record the instrument of transfer; or
       (b) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor

## CONDITIONS AND STIPULATIONS

### 1. DEFINITION OF TERMS.

The following terms when used in this policy mean:
(a) "insured": the insured named in Schedule A. The term "insured" also includes

(i) the owner of the indebtedness secured by the insured mortgage and each successor in ownership of the indebtedness except a successor who is an obligor under the provisions of Section 12(c) of these Conditions and Stipulations (reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor insured, unless the successor acquired the indebtedness as a purchaser for value without knowledge of the asserted defect, lien, encumbrance, adverse claim or other matter insured against by this policy as affecting title to the estate or interest in the land),

(ii) any governmental agency or governmental instrumentality which is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage, or any part thereof, whether named as an insured herein or not;

(iii) the parties designated in Section 2(a) of these Conditions and Stipulations.

(b) "insured claimant": an insured claiming loss or damage.
(c) "knowledge" or "known": actual knowledge, not constructive knowledge or notice which may be imputed to an insured by reason of the public records as defined in this policy or any other records which impart constructive notice of matters affecting the land.

(d) "land": the land described or referred to in Schedule (A), and improvements affixed thereto which by law constitute real property. The term "land" does not include any property beyond the lines of the area described or referred to in Schedule (A), nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the land is insured by this policy.

(e) "mortgage": mortgage, deed of trust, trust deed, or other security instrument.

(f) "public records": records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge. With respect to Section 1(a)(iv) of the Exclusions From Coverage, "public records" shall also include environmental protection liens filed in the records of the clerk of the United States district court for the district in which the land is located.

(g) "unmarketability of the title": an alleged or apparent matter affecting the title to the land, not excluded or excepted from coverage, which would entitle a purchaser of the estate or interest described in Schedule A or the insured mortgage to be released from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title.

### 2. CONTINUATION OF INSURANCE.

(a) After Acquisition of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of (i) an insured who acquires all or any part of the estate or interest in the land by foreclosure, trustee's sale, conveyance in lieu of foreclosure, or other legal manner which discharges the lien of the insured mortgage; (ii) a transferee of the estate or interest so acquired from an insured corporation, provided the transferee is the parent or wholly-owned subsidiary of the insured corporation, and their

obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act which in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured. If the Company is prejudiced by the failure of the insured to furnish the required cooperation, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

### 5. PROOF OF LOSS OR DAMAGE.

In addition to and after the notices required under Section 3 of these Conditions and Stipulations have been provided the Company, a proof of loss or damage signed and sworn to by the insured claimant shall be furnished to the Company within 90 days after the insured claimant shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the defect in, or lien or encumbrance on the title, or other matter insured against by this policy which constitutes the basis of loss or damage, and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the insured claimant to provide the required proof of loss or damage, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such proof of loss or damage.

In addition, the insured claimant may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Policy, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the insured claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the insured claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the insured claimant to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in this paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

### 6. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY.

In case of a claim under this policy, the Company shall have the following options:

(a) To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.
(i) to pay or tender payment of the amount of insurance under this policy together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company, up to the time of payment or tender of payment and

### 8. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY.

(a) All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the amount of the insurance pro tanto. However, any payments made prior to the acquisition of title to the estate or interest as provided in Section 2(a) of these Conditions and Stipulations shall not reduce pro tanto the amount of the insurance afforded under this policy except to the extent that the payments reduce the amount of the indebtedness secured by the insured mortgage.

(b) Payment in part by any person of the principal of the indebtedness, or any other obligation secured by the insured mortgage, or any voluntary partial satisfaction or release of the insured mortgage, to the extent of the payment, satisfaction or release, shall reduce the amount of insurance pro tanto. The amount of insurance may thereafter be increased by accruing interest and advances made to protect the lien of the insured mortgage and secured thereby, with interest thereon, provided in no event shall the amount of insurance be greater than the amount of insurance stated in Schedule A.

(c) Payment in full by any person or the voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company except as provided in Section 2(b) of these Conditions and Stipulations.

### 10. LIABILITY NONCUMULATIVE.

It the insured acquires title to the estate or interest in satisfaction of the indebtedness secured by the insured mortgage, or any part thereof, it is expressly understood that the amount of insurance under this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage to which exception is taken in Schedule B or which the insured has agreed, assumed, or taken subject, or which is hereafter executed by an insured and which is a charge or lien on the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy.

### 11. PAYMENT OF LOSS.

(a) No payment shall be made without producing this policy for endorsement of the payment unless the policy has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.

(b) When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within 30 days thereafter

### 12. SUBROGATION UPON PAYMENT OR SETTLEMENT.

(a) The Company's Right of Subrogation.
Whenever the Company shall have settled and paid a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant.

The Company shall be subrogated to and be entitled to all rights and remedies which the insured claimant would have had against any person or property in respect to the claim had this policy not been issued. If requested by the Company, the insured claimant shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The insured claimant shall permit the Company to sue, compromise or settle in the name of the insured claimant and to use the name of the insured claimant in any transaction or litigation

# First American Title Insurance Company

## ALTA LOAN POLICY

Agent's File Number: SW06102                           Loan Policy Number: ▉▉▉▉9218

### Schedule A

Date of Policy: **May 1, 2006 at 08:00:00 AM**          Amount of Insurance: **$146,150.00**
(or the date of recording of the insured
mortgage, whichever is later)

1. Name of Insured:

   **Wachovia Mortgage Corporation , Its successor and/or Assigns as their interests may appear**

2. The estate or interest in the land which is encumbered by the insured mortgage is:

   **Fee Simple**

3. Title to the estate or interest in the land is vested in:

   **Ronald P. Gillis**

4. The insured mortgage and assignments thereof, if any, are described as follows:

   Mortgage executed by Ronald P. Gillis, an unmarried man, in favor of Wachovia Mortgage
   Corporation in the original principal amount of $146,150.00 dated 05/01/2006 and recorded in the
   public records of Charlotte County, Florida.

5. The land referred to in this policy is described as follows:

   **See Schedule A Continuation Page for Legal Description**

Title Partners of Southwest Florida LLC

By: _Nancy F. Podgett_
   Authorized Signature

# First American Title Insurance Company

## ALTA LOAN POLICY

Agent's File Number: SW06102                              Loan Policy Number: ████ 9218

### Schedule A, Continuation

Lot 3, Block 1422, PORT CHARLOTTE SUBDIVISION, Section 27, a Subdivision according to the plat thereof as recorded in Plat Book 5, Pages 20A thru 20F, of the Public Records of Charlotte County, Florida.

# First American Title Insurance Company

## ALTA LOAN POLICY

Agent's File Number: SW06102                      Loan Policy Number: ████0218

### Schedule B

### Part 1

### EXCEPTIONS FROM COVERAGE

**This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:**

1. Any rights, interests, or claims of parties in possession of the land not shown by the public records.
2. Any rights, interests, or claims affecting the land which a correct survey would disclose and which are not shown by the public records.
3. Any lien for services, labor or materials in connection with improvements, repairs or renovations provided before, on, or after Date of Policy, not shown by the public records.
4. Any dispute as to the boundaries caused by a change in the location of any water body within or adjacent to the land prior to Date of Policy, and any adverse claim to all or part of the land that is, at Date of Policy, or was previously, under water.
5. Taxes or special assessments not shown as liens in the public records or in the records of the local tax collecting authority, at Date of Policy.
6. Any minerals or mineral rights leased, granted or retained by current or prior owners.

   NOTE: Items #1-#5 listed above are hereby deleted.

7. Taxes and assessments for the year 2006 and subsequent years, not yet due and payable.

8. Declaration of Covenants, Conditions, Restrictions and Easements, which contains provisions for a private charge or assessments, recorded in Book 47, Page 483 , but deleting any covenant, condition or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status or national origin to the extent such covenants, conditions or restrictions violate 42 USC 3604(c).

9. Restrictions, dedications, conditions, reservations, easements and other matters shown on the plat of PORT CHARLOTTE SUBDIVISION, as recorded in Plat Book 5, Page(s) 20A thru 20F, but deleting any covenant, condition or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status or national origin to the extent such covenants, conditions or restrictions violate 42 USC 3604(c).

# First American Title Insurance Company

## ALTA LOAN POLICY

Agent's File Number: SW06102

Loan Policy Number: ████ 9218

### Notices, Where Sent

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this policy and shall be addressed to the Company, Attention: Claims Department, 2076 Centre Pointe Boulevard, Tallahassee, Florida 32308-3752.

### Service, Quality and Availability

First American Title Insurance Company cares about its customers and their availability to obtain information and services on a convenient, timely and accurate basis. A qualified staff of service representatives is dedicated to serving you.

A toll-free number is available for your convenience in obtaining information about coverage and to provide assistance in resolving complaints: 1-800-929-7186. Office hours are from 8:30 a.m. through 5:30 p.m., Monday through Friday.

### 3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT.

### 4. DEFENSE AND PROSECUTION OF ACTIONS; DUTY OF INSURED CLAIMANT TO COOPERATE.

### 7. DETERMINATION AND EXTENT OF LIABILITY.

### 8. LIMITATION OF LIABILITY.

### 13. ARBITRATION.

### 14. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT.

### 15. SEVERABILITY.

### 16. NOTICES, WHERE SENT.



# FORECLOSURE HEADER SHEET

**WELLS FARGO | HOME MORTGAGE**

| | |
|---|---|
| **Borrower Name** | RONALD P GILLIS |
| **Loan Number** | ▮▮9168 |
| **Barcode: (Loan Number)** | ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ |

### FILE HISTORY

| From | Date | To |
|---|---|---|
| Check In/ Review: | | NE REQ. / COLFLRSH / ASSIGN. / HMEC |
| | | IMAGING / NOTE ENDORSEMENT ISSUE |
| | | |
| | | |
| | | |
| | | |

### Loan Status

| CHECK IN | REVIEW | |
|---|---|---|
| Assignment Team Requesting collateral file | ___ File Missing Note ( Send to SAVO) | |
| e-Note | ___ Note Endorsement loan (Send to NE Team) | |
| Open SLR Defi | | |
| Nevada Mediation Alert Comments (Notify WD) | | |

### Note Endorsement Team

| 4A: Endorsed to Blank | 4B: Endorsed Per Bene Vesting |
|---|---|
| 4C: Note Needs End State | 4D: Lost Note Affidavit Drafted |

Comments _____

### Note Endorsement Main Deficiency

| ☐ Satisfy | ☐ Error | ☐ Override |
|---|---|---|

### Lost Note Affidavit Team

| | | | |
|---|---|---|---|
| ⟋ | 4D Lost Note Affidavit or Lost Instrument Bond Prepared | ⟁ | Col. File Found **without** Note |
| | Check Review Order Defi (Special Routing Info) | | Col. File **not** found, Pocket Folder Needed |
| | 4D Prior Lender LNA Affidavit | ☒ | Active |
| | | | Pro-Active |

Comments _____

Updated: 11/25/13

8168
GILLIS

## INTEREST FIRST NOTE

May      1      , 2006                          **CHARLOTTE**          , **FLORIDA**
___[Date]___                                              [City]                    [State]

__21238 COACHMAN AVE__                      **PORT CHARLOTTE, FL  33952**
                                    [Property Address]

### 1.    BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $__146,150.00__    (this amount is called
"Principal"), plus interest, to the order of the Lender. The Lender is __WACHOVIA MORTGAGE CORPORATION__
_____ . I will make all payments under
this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

### 2.    INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of __6.875__   %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section
6(B) of this Note.

### 3.    PAYMENTS

(A)    Time and Place of Payments

I will make a payment every month. This payment will be for interest only for the first __120__    months, and then
will consist of principal and interest.

I will make my monthly payment on the __1st__ day of each month beginning on __July__    1 , 2006. I will
make these payments every month until I have paid all of the Principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and if the payment includes both
principal and interest it will be applied to interest before principal. If, on __June__    1    , 2036 , I still
owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at __1100 CORPORATE CENTER DRIVE    RALEIGH, NC 27607-5066__
or at a different place if required by the Note Holder.

(B)    Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $__837.32__                     for the first __120__    months
of this Note, and thereafter will be in the amount of U.S. $__1,122.16__             . The Note Holder will notify
me prior to the date of change in monthly payment.

### 4.    BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of principal only is known
as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate
a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use
my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal
amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the
Note Holder agrees in writing to those changes. However, if the partial Prepayment is made during the period when my monthly
payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my
payments consist only of interest as well as during the time that my payments consist of principal and interest. If the partial
Prepayment is made during the period when my payments consist of principal and interest, the amount of my monthly payment
will not decrease; however, the Principal and the interest required under this Note will be paid prior to the Maturity Date.

FLORIDA INTEREST FIRST FIXED RATE NOTE—Single Family—Fannie Mae UNIFORM INSTRUMENT      Form 3271.10   1/01
241422  (02/01)  [14221]                          Page 1 of 3                                      LCW

9168
GILLIS

**5.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)    Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of _____15_____ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000**% of my overdue payment of interest and/or principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B)    Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)    Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)    No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)    Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.    WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

FLORIDA INTEREST FIRST FIXED RATE NOTE—Single Family—Fannie Mae UNIFORM INSTRUMENT        Form 3271.10    1/01
241422  (02/01)  [14222]                          Page 2 of 3

LCW

9168
GILLIS

10.    **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

11.    **DOCUMENTARY TAX**

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ ( Seal)
RONALD P GILLIS                  - Borrower                                  -Borrower

_____ (Seal)        _____ (Seal)
                                 - Borrower                                  -Borrower

_____ (Seal)        _____ (Seal)
                                 -Borrower                                   -Borrower

_____ (Seal)        _____ (Seal)
                                 -Borrower                                   -Borrower

*[Sign Original Only]*

FLORIDA INTEREST FIRST FIXED RATE NOTE—Single Family—Fannie Mae UNIFORM INSTRUMENT          Form 3171.10  1/01
241422  (02/01)  (14223)                                 Page 3 of 3                        LCW