# MORRISON | FOERSTER

250 WEST 55TH STREET
NEW YORK, NY  10019-9601

TELEPHONE: 212.468.8000
FACSIMILE: 212.468.7900

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BRUSSELS, DENVER,
HONG KONG, LONDON, LOS ANGELES,
NEW YORK, NORTHERN VIRGINIA,
PALO ALTO, SACRAMENTO, SAN DIEGO,
SAN FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

June 4, 2015

Writer's Direct Contact
+1 (212) 506.7341
NRosenbaum@mofo.com

Via ECF

Honorable Judge Martin Glenn
One Bowling Green
New York, NY 10004-1408

Re:     *In re Residential Capital, LLC, et. al.*, Case No. 12-12020 – Request for Status
        Conference in Follow-up to Motion for Relief from Stay Filed by Ronald Gillis

Dear Judge Glenn:

As the Court is aware, we serve as counsel to The ResCap Liquidating Trust (the
"Liquidating Trust").  We write to request a status conference at the Court's earliest
convenience in connection with and by way of follow-up to the Court's March 18, 2015
memorandum opinion and order [Docket No. 8326] denying the *Amended Motion for Relief
of Automatic Stay Regarding "RFC" and Homecomings Financial" to Persue [sic]
Discovery* [Docket No. 7785 (the "Motion") filed by Ronald Gillis ("Movant").  Despite the
Liquidating Trust's full compliance with this Court's direction at the hearing on the Motion
and the Liquidating Trust's further efforts to engage with Movant to address his concerns,
Movant has now filed court papers alleging rule 11 violations and purporting to give 21
days' notice of a motion for sanctions.  Movant continues to press for additional documents –
which the Liquidating Trust has repeatedly informed Movant it does not have – despite the
recent dismissal **with prejudice** of the federal court action in connection with which he
previously sought discovery.  Movant's threats must cease, and the Liquidating Trust
requests a status conference on this matter.

At the hearing on the Motion, the Court indicated that it would deny the Motion, but directed
the Liquidating Trust to "undertake a search of electronic records for any records that relate
to the Gilleses." *See* Tr. H'ring at 44:15-16.  The Court also directed the Liquidating Trust to
attempt to locate the Gilleses' loan file and any servicing notes. *See id.* 45:12-21. The Court
indicated, however, that searches of email correspondence was not necessary at this juncture.
*See id.* at 1-2.  Finally, the Court directed the Liquidating Trust to file a status update,
indicating "whether [the Liquidating Trust] located documents and whether [it] provided
them to the Gillises." *See* Tr. H'ring at 46:16-19.

ny-1190145

MORRISON | FOERSTER

June 4, 2015
Page Two

Consistent with the Debtors' limited involvement with Movant's loan (Residential Funding
Company ("RFC") acted as the master servicer the loan), the Liquidating Trust noted at the
hearing and to Movant after the hearing that the other parties to the litigation were likely to
have better and more complete access to documents relevant to Movant's lawsuit pending in
the United States District Court for the Middle District of Florida, Case No. 14-00418 (the
"Federal Action"). Nonetheless, the Liquidating Trust agreed to undertake a search of its
electronic records and to produce records located through that search.

By correspondence dated April 17, 2015, the Liquidating Trust provided copies of the
documents that it located through its search of its electronic records. A copy of the
Liquidating Trust's April 17, 2015 correspondence is attached hereto as Exhibit 1.[1]

Dissatisfied with the Liquidating Trust's production, Movant responded by letter dated April
22, 2015, a copy of which is attached hereto as Exhibit 2. Movant's April 22, 2015
correspondence included as an exhibit a purported email communication between Movant
and an employee of Wachovia. The exhibit made reference to a "second lien."

Although the Liquidating Trust was unsure of the purported import of the email and
associated concerns expressed by Movant, the Liquidating Trust believed that perhaps
Movant was suggesting that he desired information regarding this "second lien."
Consequently, the Liquidating Trust undertook a further search of its electronic records to
ensure that it was not missing information regarding a second lien mortgage on the property.
The Liquidating Trust uncovered no records regarding any other loan and also did not
discover any further records regarding the loan for which RFC acted as master servicer. The
Liquidating Trust advised Movant of its further efforts and their results by correspondence
dated May 6, 2015, attached hereto as Exhibit 3. In its May 6, 2015 letter, the Liquidating
Trust requested additional information from Movant regarding the purported second lien (on
the belief that Movant was concerned with that lien) and indicated that upon receipt of that
information the Liquidating Trust would determine whether additional search efforts were
required.

On May 11, 2015, Movant filed a Status Update with the Court [Docket No. 8627] alleging
that the Liquidating Trust had ignored his request for a stipulation indicating that none of the
Debtors had any interest in the property. In fact, the Liquidating Trust did not ignore
Movant's request and, instead, had indicated in its May 6 letter that given the lack of clarity
in Movant's correspondence, the Liquidating Trust would need to better understand the facts
before it was in a position to consider the propriety of any such stipulation. *See* Exhibit 3 at

---

[1] The Liquidating Trust has included in Exhibit 1 documents that were identified through its review of the
Debtors' electronic records and produced to Movant, but has not included other documents that it produced to
Claimant, including voluminous agreements and other documents relating to the securitization trust into which
Movant's loan was securitized.

**MORRISON | FOERSTER**

June 4, 2015
Page Three

1-2. Movant followed-up his May 11 Status Update with a another letter to the Liquidating Trust, May 19, 2015 and attached hereto as Exhibit 4.

In an attempt to resolve Movant's purported concerns without the need for further Court intervention, the Liquidating Trust once again responded to Movant's inquiry and requested the additional information that had been previously requested but not provided. A copy of the Liquidating Trust's May 22, 2015 responsive correspondence is attached hereto as Exhibit 5.

Meanwhile, on May 21, 2015 the Federal Action was dismissed with prejudice. A copy of the Order dismissing the Federal Action is attached hereto as Exhibit 6.

On May 27, 2015, **despite the Federal Action having been dismissed with prejudice,** Movant sent to this Court his *Judicial Notice pursuant to FRCP* [Docket No. 8711]. Movant's judicial notice filing represented just the latest in a spate of unsupported threats, and notified the Court of his intent to file a motion for sanctions in twenty-one days.

The Liquidating Trust has fully complied with the Court's direction at the March 12, 2015 hearing and has continued to try to address Movant's concerns. The Liquidating Trust's efforts have been to no avail, and instead have been met with continuous and frivolous threats. The Liquidating Trust therefore requests that the Court set this matter for a status conference at the June 23, 2015 omnibus hearing currently scheduled in these chapter 11 cases.

Respectfully submitted,

/s/ Norman S. Rosenbaum
Norman S. Rosenbaum

cc: Ronald Gillis

MEMORANDUM ENDORSED.
IT IS SO ORDERED
A STATUS CONFERENCE IS SCHEDULED
FOR JUNE 23, 2015 AT 10:00 A.M.
DATED: JUNE 4, 2015.

___/s/Martin Glenn___
UNITED STATES BANKRUPTCY JUDGE

ny-1190145

**Exhibit 1**

MORRISON | FOERSTER

250 WEST 55TH STREET
NEW YORK
NEW YORK 10019-9601

TELEPHONE:212.468.8000
FACSIMILE:212.468.7900

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BRUSSELS, DENVER,
HONG KONG, LONDON, LOS ANGELES,
NEW YORK, NORTHERN VIRGINIA,
PALO ALTO, SACRAMENTO, SAN DIEGO,
SAN FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

April 17, 2015

Writer's Direct Contact
+1 (212) 506.7341
NRosenbaum@mofo.com

Via Express Mail

Ronald P. Gillis
P.O. Box 380841
Murdock, FL 33938-0842

Re:    *In re Residential Capital LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y.) -
       Discovery Requested by Bankruptcy Court

Dear Mr. Gillis:

I write in connection with the direction of the Bankruptcy Court for the Southern District of
New York to provide you with certain discovery.

At the hearing on your *Amended Motion for Relief of Automatic Stay Regarding
"RFC" and "Homecomings Financial" to Persue [sic] Discovery* [Docket No. 7785] filed in
the Debtors' bankruptcy cases, the Bankruptcy Court directed the Liquidating Trust created
pursuant to the Debtors' chapter 11 plan to "undertake a search of electronic records for any
records that relate to the [you]." *See* Tr. H'ring at 44:15-16. The Court also directed the
Liquidating Trust to attempt to locate your loan file and any servicing notes. *See id.* 45:12-
21. The Court indicated, however, that searches of email correspondence was not necessary
at this juncture. *See id.* at 1-2.

As I indicated to you after the hearing, Debtor Residential Funding Company, LLC ("RFC")
acted only as the master servicer of your loan, and not the subservicer. This means that RFC
was not involved in the day-to-day monitoring of your loan. Consequently, RFC (and the
Liquidating Trust as its successor in interest) had access to only limited information
regarding your loan. The Liquidating Trust has searched the electronic records that it
believes were likely to contain information regarding your loan (excluding, at the Court's
direction, email records) utilizing both your name and your property's address, consistent
with the Court's direction.
Enclosed with this letter are copies of the following documents identified by the Liquidating
Trust:

1. The Note relating to your loan;

MORRISON | FOERSTER

Ronald P. Gillis
April 17, 2015
Page Two

2. The loan file contained in RFC's records; and

3. Certain documents related to affidavits prepared by Wells Fargo Bank, N.A. as subservicer of your loan in connection with the foreclosure proceeding relating to your property.

Additionally, as a courtesy we have enclosed certain documents relating to the creation of the securitization trust into which your loan was transferred, including:

a. Standard Terms of Pooling and Servicing Agreement, dated as of March 1, 2006;

b. Series Supplement, dated July 1, 2006; and

c. Assignment and Assumption Agreement, dated July 28, 2006.

Additional information regarding the trust into which your loan was transferred is voluminous, and may be found at http://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=0001366205&owner=exclude&count=40&hidefilings=0.

Reference is made to your *Non-Pleading Correspondence*, dated March 20, 2015 (the "March 20 Correspondence") and your *Judicial Notice* [Docket No. 8367] filed in the above-captioned chapter 11 cases of Residential Capital, LLC and its affiliated debtors (the "Debtors") on March 27, 2015 (the "March 27 Correspondence"). In your March 20 Correspondence and March 27 Correspondence, you request certain specified information, some of which may not be included within the scope of the information for which the Court directed the Liquidating Trust to search. However, as described above, the enclosed documents include all documents that the Liquidating Trust was able to locate in its search for electronic records relating to you or your loan as expressly directed by the Court.

We also understand that you have not yet dismissed your pending action in the United States District Court for the Middle District of Florida, Case No. 14-cv-418, as it relates to GMAC Mortgage, LLC and Homecomings Financial, LLC. Consistent with the Court's direction in the enclosed opinion, we request that you dismiss GMAC Mortgage, LLC and Homecomings Financial, LLC from this action at your earliest convenience.

Very truly yours,

Norman S. Rosenbaum

ny-1181558

## AFFIDAVIT OF NOTE IN COURT POSSESSION

PERSONALLY appeared before me, **Omar Yusuf Qanyare** (the "Affiant"),
who, upon being duly sworn, states on his/her oath as follows:

1.      Affiant is a **Vice President Loan Documentation** employed by WELLS
FARGO BANK, N.A. ("Wells Fargo"), Servicer.

2.      I am authorized to make this Affidavit on behalf of **WELLS FARGO BANK,
N.A., SERVICING AGENT TO DEUTSCHE BANK TRUST COMPANY AMERICAS,
AS TRUSTEE FOR RESIDENTIAL ACCREDIT LOANS, INC., MORTGAGE ASSET-
BACKED PASS-THROUGH CERTIFICATES, SERIES 2006-QS8.** In the regular
performance of my job functions, I am familiar with business records maintained by Wells Fargo
for the purpose of servicing mortgage loans and I have personal knowledge of the operation of
and the circumstances surrounding the preparation, maintenance, and retrieval of records in
Wells Fargo's record keeping systems. These records (which include data compilations,
electronically imaged documents, and others) are made at or near the time by, or from
information provided by, persons with knowledge of the activity and transactions reflected in
such records, and are kept in the course of business activity conducted regularly by Wells Fargo.
It is the regular practice of Wells Fargo's mortgage servicing business to make these records. I
have acquired personal knowledge of all facts set forth in this affidavit by examining these
business records.

3.      **RONALD P GILLIS** executed and delivered to **WACHOVIA MORTGAGE
CORPORATION** a certain Note dated **MAY 1, 2006** in the original principal amount of
**$146,150.00** with an interest rate of **6.875 %.** The Note was secured by a Mortgage executed by
**RONALD P GILLIS,** the record owner of the property located at **21238 COACHMAN AVE,
PORT CHARLOTTE, FLORIDA 33952** , dated **MAY 1, 2006,** and recorded on **MAY 05,
2006** in CHARLOTTE COUNTY, FLORIDA, in BOOK 2961 AND PAGE 416-433 OR. as
INSTRUMENT # 1547619.

4.      Upon information and belief, on **JUNE 18, 2009, JAMES E. ALBERTELLI,
PA,** Counsel for **DEUTSCHE BANK TRUST COMPANY AMERICAS AS TRUSTEE,**
submitted the original Note with **THE CIRCUIT COURT OF THE TWENTIETH
JUDICIAL CIRCUIT IN AND FOR CHARLOTTE COUNTY, FLORIDA** in relation to

098-NTL-V2

**DEUTSCHE BANK TRUST COMPANY AMERICAS AS TRUSTEE** vs. **RONALD P. GILLIS, ET AL.** As of **APRIL 3, 2014, JAMES E. ALBERTELLI, PA** confirmed that the Court still has possession of the Note. A copy of the Note is attached to this affidavit.

098-NTL-V2

FURTHER AFFIANT SAYETH NAUGHT.

> **WELLS FARGO BANK, N.A., SERVICING
> AGENT TO DEUTSCHE BANK TRUST
> COMPANY AMERICAS, AS TRUSTEE FOR
> RESIDENTIAL ACCREDIT LOANS, INC.,
> MORTGAGE ASSET-BACKED PASS-
> THROUGH CERTIFICATES, SERIES 2006-
> QS8**
>
> Sign: _____
>
> Name:  **Omar Yusuf Qanyare**
>
> Company: WELLS FARGO BANK, N.A.
>
> Title: Vice President Loan Documentation
>
> Date: 04-10-14

State of Minnesota    )
County of Dakota      )

Sworn and subscribed to before me this ___10___ day of ___April___, 2014.

_____ (Signature)        (Stamp or Seal)
Kyle P. Blazovich

Name
Notary Public
My Commission expires: Jan 31, 2017

> KYLE P. BLAZOVICH
> NOTARY PUBLIC - MINNESOTA
> My Commission Expires
> January 31, 2017

098-NTL-V2

Recording Requested By:
WELLS FARGO BANK, N.A.

CHARLOTTE COUNTY CLERK OF CIRCUIT COURT
OR BOOK 3654, PGS 1347-1348  2 pg(s)
INSTR # 2093516
Doc Type ASG, Recorded 05/04/2012 at 11:38 AM
Rec. Fee: $18.50
Cashiered By: MARGEC Doc. #:1

When Recorded Return To:

DEFAULT ASSIGNMENT
WELLS FARGO BANK, N.A.
MAC: X9999-018
PO BOX 1629
MINNEAPOLIS, MN  55440-9790

## CORPORATE ASSIGNMENT OF MORTGAGE

Charlotte, Florida
"GILLIS"

MERS #: [redacted] 1685  SIS #: 1-888-679-6377

Date of Assignment: April 30th, 2012
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WACHOVIA
MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS at BOX 2026 FLINT MI 48501, 1901 E
VOORHEES ST STE C., DANVILLE, IL 61834
Assignee: DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE FOR RALI 2006-QS8 at 1761 EAST
SAINT ANDREW PLACE, SANTA ANA, CA 92705-4934
Executed By: RONALD P GILLIS  A SINGLE PERSON  To: MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS NOMINEE FOR WACHOVIA MORTGAGE CORPORATION, ITS SUCCESSORS AND
ASSIGNS
Date of Mortgage: 05/01/2006 Recorded: 05/05/2006 In Book/Reel/Liber: 2981 Page/Folio: 416-433 as Instrument
No.: 1547619 In the County of Charlotte, State of Florida.

Property Address: 21238 COACHMAN AVE, PORT CHARLOTTE, FL 33952

Legal: N/A

### CORRECTIVE ASSIGNMENT

*This assignment is being recorded to correct the scriveners error in the assignment recorded on July 15, 2009 as
Instrument No. 1864249 in Book 3402, Page750-750, as that assignment listed the assignee name as "Deutsche
Bank Trust Company Americas as Trustee" and should have listed the assignee as "Deutsche Bank Trust Company
Americas, as Trustee for RALI 2006-QS8".

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $146,150.00 with interest, secured thereby, with all moneys now owing
or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the
covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee,
the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WACHOVIA MORTGAGE
CORPORATION, ITS SUCCESSORS AND ASSIGNS
On 5/3/2012

By _____
     Ramesch Vardan
Assistant Secretary

2

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

STATE OF Minnesota
COUNTY OF Dakota

On 5/2/2012 , before me, **Taehoony Chin** a Notary Public in Dakota County in the
State of Minnesota, personally appeared **Ramesch Vardan** , Assistant Secretary,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

Taehoony Chin
Notary Expires: 01/31/2013

TAEHOONY CHIN
Notary Public
Minnesota
My Commission Expires January 31, 2013

(This area for notarial seal)

Prepared By: Yves Kenac, WELLS FARGO BANK, N.A. 2701 WELLS FARGO WAY, MAC X9999-018, MINNEAPOLIS, MN
55467-8000 1-856-234-8271

index no

CHARLOTTE COUNTY CLERK OF CIRCUIT COURT
OR BOOK 3654, PGS 1347-1348 2 Pg(s)
INSTR # 2093516
Doc Type ASG, Recorded 05/04/2012 at 11:38 AM
Rec Fee $18.50
Cashiered By: MARGEC Doc #:1

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

DEFAULT ASSIGNMENT
WELLS FARGO BANK, N.A.
MAC: X9999-018
PO BOX 1629
MINNEAPOLIS, MN 55440-9790

578

## CORPORATE ASSIGNMENT OF MORTGAGE

Charlotte, Florida
"GILLIS"

MERS #: ████████ 1685  SIS #: 1-888-679-6377

Date of Assignment: April 30th, 2012
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WACHOVIA
MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS at BOX 2026 FLINT MI 48501, 1901 E
VOORHEES ST STE C., DANVILLE, IL 61834
Assignee: DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE FOR RALI 2006-QS8 at 1761 EAST
SAINT ANDREW PLACE, SANTA ANA, CA 92705-4934
Executed By: RONALD P GILLIS  A SINGLE PERSON  To: MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS NOMINEE FOR WACHOVIA MORTGAGE CORPORATION, ITS SUCCESSORS AND
ASSIGNS
Date of Mortgage: 05/01/2006 Recorded: 05/05/2006 In Book/Reel/Liber: 2961 Page/Folio: 416-433 as Instrument
No.: 1547619 in the County of Charlotte, State of Florida.

Property Address: 21238 COACHMAN AVE, PORT CHARLOTTE, FL 33952

Legal: N/A
### CORRECTIVE ASSIGNMENT
*This assignment is being recorded to correct the scriveners error in the assignment recorded on July 15, 2009 as
Instrument No. 1864249 in Book 3402, Page750-750, as that assignment listed the assignee name as "Deutsche
Bank Trust Company Americas as Trustee" and should have listed the assignee as "Deutsche Bank Trust Company
Americas, as Trustee for RALI 2006-QS8".

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $146,150.00 with interest, secured thereby, with all moneys now owing
or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the
covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee,
the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WACHOVIA MORTGAGE
CORPORATION, ITS SUCCESSORS AND ASSIGNS
On  5/2/2012

By _____
      Ramesch Vardan.
Assistant Secretary

2

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

STATE OF Minnesota
COUNTY OF Dakota

On 5/2/2012 , before me, __Taehoony Chin__ , a Notary Public In Dakota County in the
State of Minnesota, personally appeared ___Ramesch Vardan.___ , Assistant Secretary,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

__Taehoony Chin__
Notary Expires 01/31/2013

```
TAEHOONY CHIN
Notary Public
Minnesota
My Commission Expires January 31, 2013
```

(This area for notarial seal)

Prepared By:  Yves Kenao, WELLS FARGO BANK, N.A. 2701 WELLS FARGO WAY, MAC X9999-018, MINNEAPOLIS, MN
55467-8000 1-866-234-8271

## First American Title Insurance Company

### ALTA LOAN POLICY

Agent's File Number: SW06102

Loan Policy Number: █████9218

#### Schedule A, Continuation

Lot 3, Block 1422, PORT CHARLOTTE SUBDIVISION, Section 27, a Subdivision according to the plat thereof as recorded in Plat Book 5, Pages 20A thru 20F, of the Public Records of Charlotte County, Florida.

## ENVIRONMENTAL PROTECTION LIEN ENDORSEMENT
### ISSUED BY

# First American Title Insurance Company

Issuing Office File No.: SW06102                    Attached to Policy No.: 9218

The insurance afforded by this endorsement is only effective if the land is used or is to be used primarily for residential purposes.

The Company insures the insured against loss or damage sustained by reason of lack of priority of the lien of the insured mortgage over:

(a)    any environmental protection lien which, at Date of Policy, is recorded in those records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge, or filed in the records of the Clerk of the United States District Court for the District in which the land is located, except as set forth in Schedule B; or

(b)    any environmental protection lien provided for by any state statute in effect at Date of Policy, except environmental protection liens provided for by the following state statutes: None.

       This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

       This endorsement shall not be valid or binding unless signed by either a duly authorized officer or agent of the Company.

Issue Date: May 1, 2006

Title Partners of Southwest Florida LLC

By: _____
            Authorized Signatory

ALTA 8.1 Environmental Protection Lien Endorsement

# FLORIDA FORM 9 ENDORSEMENT
### ISSUED BY
## First American Title Insurance Company

Issuing Office File No.: SW06102                                Attached to Policy No.: ▮▮▮▮0218

The Company insures the owner of the indebtedness secured by the insured mortgage against loss or damage sustained by reason of:

1.  The existence at Date of Policy of any of the following:
    (a)   Covenants, conditions or restrictions under which the lien of the mortgage referred to in Schedule A can be divested, subordinated or extinguished, or its validity, priority or enforceability impaired.
    (b)   Unless expressly excepted in Schedule B:
        (1)   There are no present violations on the land of any enforceable covenants, conditions or restrictions nor do any existing improvements on the land violate building setback lines shown on a plat of subdivision recorded or filed in the public records.
        (2)   Any instrument referred to in Schedule B as containing covenants, conditions or restrictions on the land does not, in addition (i) establish an easement on the land; (ii) provide a lien for liquidated damages; (iii) provide for a private charge or assessment; (iv) provide for an option to purchase, a right of first refusal or the prior approval of a future purchaser or occupant.
        (3)   There is no encroachment of existing improvements located on the land onto adjoining land, nor any encroachment onto the land of existing improvements located on adjoining land.
        (4)   There is no encroachment of existing improvements located on the land onto that portion of the land subject to any easement excepted in Schedule B.
        (5)   There are no notices of violation of covenants, conditions, and restrictions relating to environmental protection recorded or filed in the public records.

2.  Any future violation on the land of an existing covenant, condition or restriction occurring prior to the acquisition of title to the estate or interest in the land, provided the violation results in:
    (a)   Invalidity, loss of priority, or unenforceability of the lien of the insured mortgage; or,
    (b)   Loss of title to the estate or interest in the land if the insured shall acquire title in satisfaction of the indebtedness secured by the insured mortgage.

3.  Damage to existing improvements (excluding lawns, shrubbery or trees);
    (a)   Which are located on or encroach upon that portion of the land subject to any easement excepted in Schedule B, which damage results from the exercise of the right to maintain the easement for the purpose for which it was granted or reserved.
    (b)   Which results from the future exercise of any right to use the surface of the land for the extraction or development of minerals excepted from the description of the land or excepted in Schedule B.

4.  Any final court order or judgment requiring the removal from any land adjoining the land of any encroachment excepted in Schedule B.

5.  Any final court order or judgment denying the right to maintain any existing improvement on the land because of any violation of covenants, conditions or restrictions or building setback lines shown on a plat or subdivision recorded or filed in the public records.

Whenever in this endorsement the words "covenants, conditions or restrictions" appear, they shall not be deemed to refer to or include the terms, covenants, conditions or limitations contained in an instrument creating a lease.

As used in paragraphs 1 (b) (1) and 5 the phrase "covenants, conditions, or restrictions" shall not be deemed to refer to or include any covenants, conditions or restrictions relating to environmental protection.

This endorsement is made a part of the policy and is subject to all the terms and provisions thereof and any prior endorsements thereto.  Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

This endorsement shall not be valid or binding unless signed by either a duly authorized officer or representative of the Company.

Issue Date: May 1, 2006

**Title Partners of Southwest Florida LLC**

By: _Tracy J. Padgett_
        Authorized Signatory

Florida Form 9 Endorsement



Policy No. **FA-36-**1289218

# POLICY OF TITLE INSURANCE

ISSUED BY

## First American Title Insurance Company

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of the title;
4. Lack of a right of access to and from the land;
5. The invalidity or unenforceability of the lien of the insured mortgage upon the title;
6. The priority of any lien or encumbrance over the lien of the insured mortgage;
7. Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:
   (a) arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or
   (b) arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;
8. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

First American Title Insurance Company

BY _Gary L. Kermott_ PRESIDENT

ATTEST _Mark R. Arneson_ SECRETARY

ALTA Loan Policy (10/17/92) (With Florida Modifications)

# EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge

3. Defects, liens, encumbrances, adverse claims or other matters:
   (a) created, suffered, assumed or agreed to by the insured claimant;
   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
   (c) resulting in no loss or damage to the insured claimant;
   (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material or the extent insurance is afforded herein as to assessments for street improvements under construction or completed at Date of Policy); or

   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials) over the lien of the insured mortgage arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance

7. Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on
   (i) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer, or
   (ii) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or
   (iii) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:
       (a) to timely record the instrument of transfer, or
       (b) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor

# CONDITIONS AND STIPULATIONS

## 1. DEFINITION OF TERMS.

The following terms when used in this policy mean:
(a) "insured": the insured named in Schedule A. The term "insured" also includes ...

## 2. CONTINUATION OF INSURANCE.

(a) After Acquisition of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of (i) an insured who acquires all or any part of the estate or interest in the land by foreclosure, trustee's sale, conveyance in lieu of foreclosure, or other legal manner which discharges the lien of the insured mortgage; (ii) a transferee of the estate or interest so acquired from an insured corporation, provided the transferee is the parent or wholly-owned subsidiary of the insured corporation, and their ...

## 3. PROOF OF LOSS OR DAMAGE.

## 5. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY.

## 8. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY.

## 10. LIABILITY NONCUMULATIVE.

## 11. PAYMENT OF LOSS.

## 12. SUBROGATION UPON PAYMENT OR SETTLEMENT.

# First American Title Insurance Company

## ALTA LOAN POLICY

Agent's File Number: SW06102                          Loan Policy Number: ▮▮▮9218

### Schedule A

Date of Policy: May 1, 2006 at 08:00:00 AM          Amount of Insurance: $146,150.00
            (or the date of recording of the insured
            mortgage, whichever is later)

1.   Name of Insured:

     **Wachovia Mortgage Corporation , Its successor and/or Assigns as their interests may appear**

2.   The estate or interest in the land which is encumbered by the insured mortgage is:

     **Fee Simple**

3.   Title to the estate or interest in the land is vested in:

     **Ronald P. Gillis**

4.   The insured mortgage and assignments thereof, if any, are described as follows:

     Mortgage executed by Ronald P. Gillis, an unmarried man, in favor of Wachovia Mortgage
     Corporation in the original principal amount of $146,150.00 dated 05/01/2006 and recorded in the
     public records of Charlotte County, Florida.

5.   The land referred to in this policy is described as follows:

              **See Schedule A Continuation Page for Legal Description**

Title Partners of Southwest Florida LLC

By: _____
          Authorized Signature

# First American Title Insurance Company

## ALTA LOAN POLICY

Agent's File Number: SW06102                    Loan Policy Number: ████ 9218

### Schedule A, Continuation

Lot 3, Block 1422, PORT CHARLOTTE SUBDIVISION, Section 27, a Subdivision according to the plat thereof as recorded in Plat Book 5, Pages 20A thru 20F, of the Public Records of Charlotte County, Florida.

# First American Title Insurance Company

## ALTA LOAN POLICY

Agent's File Number: SW06102

Loan Policy Number: ███████0218

### Schedule B

### Part I

### EXCEPTIONS FROM COVERAGE

**This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:**

1. Any rights, interests, or claims of parties in possession of the land not shown by the public records.
2. Any rights, interests, or claims affecting the land which a correct survey would disclose and which are not shown by the public records.
3. Any lien for services, labor or materials in connection with improvements, repairs or renovations provided before, on, or after Date of Policy, not shown by the public records.
4. Any dispute as to the boundaries caused by a change in the location of any water body within or adjacent to the land prior to Date of Policy, and any adverse claim to all or part of the land that is, at Date of Policy, or was previously, under water.
5. Taxes or special assessments not shown as liens in the public records or in the records of the local tax collecting authority, at Date of Policy.
6. Any minerals or mineral rights leased, granted or retained by current or prior owners.

   NOTE: Items #1-#5 listed above are hereby deleted.

7. Taxes and assessments for the year 2006 and subsequent years, not yet due and payable.

8. Declaration of Covenants, Conditions, Restrictions and Easements, which contains provisions for a private charge or assessments, recorded in Book 47, Page 483 , but deleting any covenant, condition or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status or national origin to the extent such covenants, conditions or restrictions violate 42 USC 3604(c).

9. Restrictions, dedications, conditions, reservations, easements and other matters shown on the plat of PORT CHARLOTTE SUBDIVISION, as recorded in Plat Book 5, Page(s) 20A thru 20F, but deleting any covenant, condition or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status or national origin to the extent such covenants, conditions or restrictions violate 42 USC 3604(c).

# First American Title Insurance Company

## ALTA LOAN POLICY

Agent's File Number: SW06102

Loan Policy Number: ████ 9218

### Notices, Where Sent

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this policy and shall be addressed to the Company, Attention: Claims Department, 2076 Centre Pointe Boulevard, Tallahassee, Florida 32309-3752.

### Service, Quality and Availability

First American Title Insurance Company cares about its customers and their availability to obtain information and services on a convenient, timely and accurate basis. A qualified staff of service representatives is dedicated to serving you.

A toll-free number is available for your convenience in obtaining information about coverage and to provide assistance in resolving complaints: 1-800-929-7186. Office hours are from 8:30 a.m. through 5:30 p.m., Monday through Friday.

corporate successors or operation of law and not by purchase, subject to any rights or defenses the Company may have against any predecessor in interest; and (iii) any governmental agency or governmental instrumentality which acquires all or any part of the estate or interest pursuant to a contract of insurance or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage.

(b) After Conveyance of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of an insured only so long as the insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from the insured, or only so long as the insured shall have liability by reason of covenants of warranty made by the insured in any transfer or conveyance of the estate or interest. This policy shall not continue in force in favor of any purchaser from the insured of either (i) an estate or interest in the land, or (ii) an indebtedness secured by a purchase money mortgage given to the insured.

(c) Amount of Insurance. The amount of insurance after the acquisition or after the conveyance shall in neither event exceed the least of:

(i) the amount of Insurance stated in Schedule A;
(ii) the amount of principal of the indebtedness secured by the insured mortgage as of Date of Policy, interest thereon, expenses of foreclosure, amounts advanced pursuant to the insured mortgage to assure compliance with laws or to protect the lien of the insured mortgage prior to the time of acquisition of the estate or interest in the land and secured thereby and reasonable amounts expended to prevent deterioration of improvements, but reduced by the amount of all payments made; or
(iii) the amount paid by any governmental agency or governmental instrumentality, if the agency or instrumentality is the insured claimant, in the acquisition of the estate or interest in satisfaction of its insurance contract or guaranty.

**3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT.**

The insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 4(b) below, (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest or the lien of the insured mortgage, as insured, and which might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if title to the estate or interest or the lien of the insured mortgage, as insured, is rejected as unmarketable. If prompt notice shall not be given to the Company, then as to the insured all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any insured under this policy unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

**4. DEFENSE AND PROSECUTION OF ACTIONS; DUTY OF INSURED CLAIMANT TO COOPERATE.**

(a) Upon written request by the insured and subject to the options contained in Section 6 of these Conditions and Stipulations, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.

(b) The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If the Company shall exercise its rights under this paragraph, it shall do so diligently.

(c) Whenever the Company shall have brought an action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

(d) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding, the insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of the insured for this purpose. Whenever requested by the Company, the insured, at the Company's expense, shall give the Company all reasonable aid (i) in any action or proceeding, securing evidence,

which the Company is obligated to pay for
(a) to purchase the indebtedness secured by the insured mortgage for the amount owing thereon together with any costs, attorneys' fees, and expenses incurred by the insured claimant which were authorized by the Company up to the time of purchase and which the Company is obligated to pay.

If the Company offers to purchase the indebtedness as herein provided, the owner of the indebtedness shall transfer, assign, and convey the indebtedness and the insured mortgage, together with any collateral security, to the Company upon payment therefor.

Upon the exercise by the Company of either of the options provided for in paragraphs a (i) or (ii), all liability and obligations to the insured under this policy, other than to make the payment required in these paragraphs, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, and the policy shall be surrendered to the Company for cancellation.

(b) To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant.
(i) to pay or otherwise settle with other parties for or in the name of an insured claimant any claim insured against under this policy, together with any costs, attorneys' fees, and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay; or
(ii) to pay or otherwise settle with the insured claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in paragraphs b(i) or (ii), the Company's obligations to the insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

**7. DETERMINATION AND EXTENT OF LIABILITY.**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

(a) The liability of the Company under this policy shall not exceed the least of

(i) the amount of insurance stated in Schedule A, or, if applicable, the amount of insurance as defined in Section 2 (c) of these Conditions and Stipulations;
(ii) the amount of the unpaid principal indebtedness secured by the insured mortgage as herein or provided under Section 8 of these Conditions and Stipulations or as reduced under Section 9 of these Conditions and Stipulations, at the time the loss or damage insured against by this policy occurs, together with interest thereon; or
(iii) the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

(b) In the event the insured has acquired the estate or interest in the manner described in Section 2(a) of these Conditions and Stipulations or has conveyed the title, then the liability of the Company shall continue as set forth in Section 7(a) of these Conditions and Stipulations.

(c) The Company will pay only those costs, attorneys' fees, and expenses incurred in accordance with Section 4 of these Conditions and Stipulations.

**8. LIMITATION OF LIABILITY.**

(a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, or otherwise establishes the lien of the insured mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured.

(c) The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

(d) The Company shall not be liable for
(i) any indebtedness created subsequent to Date of Policy except for advances made to protect the lien of the insured mortgage and secured thereby and reasonable amounts expended to prevent deterioration of improvements, or
(ii) construction loan advances made subsequent to Date of Policy, except construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the land which at Date of Policy were secured by the insured mortgage and which the insured was and continued to be obligated to advance at and after Date of Policy

involving these rights or remedies.

If a payment on account of a claim does not fully cover the loss of the insured claimant, the Company shall be subrogated to all rights and remedies of the insured claimant after the insured claimant shall have recovered its principal, interest, and costs of collection.

(b) The Insured's Rights and Limitations.
Notwithstanding the foregoing, the owner of the indebtedness secured by the insured mortgage, provided the priority of the lien of the insured mortgage or its enforceability is not affected, may release or substitute the personal liability of any debtor or guarantor, or extend or otherwise modify the terms of payment, or release a portion of the estate or interest from the lien of the insured mortgage, or release any collateral security for the indebtedness.

When the permitted acts of the insured claimant occur and the insured has knowledge of any claim of title or interest adverse to the title to the estate or interest or the priority or enforceability of the lien of the insured mortgage, as insured, the Company shall be required to pay only that part of any losses insured against by this policy which shall exceed the amount, if any, lost to the Company by reason of the impairment by the insured claimant of the Company's right of subrogation.

(c) The Company's Rights Against Non-Insured Obligors.
The Company's right of subrogation against non-insured obligors shall exist and shall include, without limitation, the rights of the insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments which provide for subrogation rights by reason of this policy.

The Company's right of subrogation shall not be avoided by acquisition of the insured mortgage by an obligor (except an obligor described in Section 1(a)(ii) of these Conditions and Stipulations) who acquires the insured mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond and the obligor will not be an insured under this policy, notwithstanding Section 1(a)(i) of these Conditions and Stipulations.

**13. ARBITRATION.**

Unless prohibited by applicable law, arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association may be demanded if agreed to by both the Company and the insured. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the land is located permit a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the Rules may be obtained from the Company upon request.

**14. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT.**

(a) This policy together with all endorsements, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the lien of the insured mortgage or of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy.

(c) No amendment of or endorsement to this policy can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

**15. SEVERABILITY.**

In the event any provision of this policy is held invalid or unenforceable under applicable law, the policy is deemed not to include that provision and all other provisions shall remain in full force and effect.

**16. NOTICES, WHERE SENT.**

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this policy and shall be addressed to the Company, Attention: Claims Department, 1 First American Way, Santa Ana, California 92707



## FORECLOSURE HEADER SHEET

**WELLS FARGO | HOME MORTGAGE**

**Borrower Name**  RONALD P GILLIS

**Loan Number**  ████ 9168

**Barcode: (Loan Number)**  |||||||||||||||||||||||||||||

### FILE HISTORY

| From | Date | To |
|------|------|------|
| Check In/ Review: | | NE REQ. / COLFLRSH / ASSIGN./ HMEC |
| | | IMAGING / NOTE ENDORSEMENT ISSUE |
| | | |
| | | |
| | | |
| | | |

### Loan Status

| CHECK IN | REVIEW | |
|----------|--------|--|
| Assignment Team Requesting collateral file | ____ File Missing Note ( Send to SAVO) | |
| e-Note | ____ Note Endorsement Loan (Send to NE Team) | |
| Open SLR Defi | | |
| Nevada Mediation Alert Comments (Notify WD) | | |

### Note Endorsement Team

| 4A: Endorsed to Blank | 4B: Endorsed Per Bene Vesting |
|----------------------|-------------------------------|
| 4C: Note Needs End State | 4D: Lost Note Affidavit Drafted |

Comments _____

| Note Endorsement Main Deficiency | | |
|---|---|---|
| ☐ Satisfy | ☐ Error | ☐ Override |

### Lost Note Affidavit Team

| | | | |
|--|--|--|--|
| ⟋ | 4D Lost Note Affidavit or Lost Instrument Bond Prepared | 𝒳 | Col. File Found **without** Note |
| | Check Review Order Defi  (Special Routing Info) | | Col. File **not** found, Pocket Folder Needed |
| | 4D Prior Lender LNA Affidavit | ⋈ | Active |
| | | | Pro-Active |

Comments _____

Updated: 11/25/13



8168
GILLIS

## INTEREST FIRST NOTE

| May | 1 | 2006 | CHARLOTTE | , | FLORIDA |
|---|---|---|---|---|---|
| [Date] | | | [City] | | [State] |

21238 COACHMAN AVE      PORT CHARLOTTE, FL 33952

[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ __146,150.00__ (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is __WACHOVIA MORTGAGE CORPORATION__ . I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of __6.875__ %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment every month. This payment will be for interest only for the first __120__ months, and then will consist of principal and interest.

I will make my monthly payment on the __1st__ day of each month beginning on __July__ __1__ , __2006__. I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and if the payment includes both principal and interest it will be applied to interest before principal. If, on __June__ __1__ , __2036__ , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at __1100 CORPORATE CENTER DRIVE RALEIGH, NC 27607-5066__ or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ __837.32__ for the first __120__ months of this Note, and thereafter will be in the amount of U.S. $ __1,122.16__ . The Note Holder will notify me prior to the date of change in monthly payment.

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. However, if the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest as well as during the time that my payments consist of principal and interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, the amount of my monthly payment will not decrease; however, the Principal and the interest required under this Note will be paid prior to the Maturity Date.

FLORIDA INTEREST FIRST FIXED RATE NOTE—Single Family—Fannie Mae UNIFORM INSTRUMENT     **Form 3271.10 1/01**
241422 (02/01) |14221|      Page 1 of 3      **LCW**


9168
GILLIS

### 5.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

### 6.   BORROWER'S FAILURE TO PAY AS REQUIRED

#### (A)   Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of _____15_____ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of interest and/or principal and interest. I will pay this late charge promptly but only once on each late payment.

#### (B)   Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

#### (C)   Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

#### (D)   No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

#### (E)   Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 7.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 9.   WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

FLORIDA INTEREST FIRST FIXED RATE NOTE—Single Family—Fannie Mae UNIFORM INSTRUMENT           Form 3271.10   1/01
241422  (02/01)  [14222]                                              Page 2 of 3

LCW


GILLIS

10.    UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

11.    DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ ( Seal)
RONALD P GILLIS                - Borrower                                  -Borrower

_____ (Seal)        _____ (Seal)
                                   - Borrower                                  -Borrower

_____ (Seal)        _____ (Seal)
                                   -Borrower                                  -Borrower

_____ (Seal)        _____ (Seal)
                                   -Borrower                                  -Borrower

*[Sign Original Only]*

**Exhibit 2**

UNITED STATE BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: | CASE NO 12-12020 |
| RESIDENTIAL CAPITAL, LLC, ET AL., | CHAPTER 11 |
| DEBTORS | |

---

## NON-PLEADING CORRESPONDENCE

Mr Rosebaum:

As a follow-up to the information you sent, and a message I left with your assistant, thank you for the information you recently sent. However, this is still short of what was ordered by the court, as there should be information in your records regarding Homecomings Financial claim to have lent me money in May 2006. Further, it appears Homecomings Financial did the underwriting yet no information pertaining to this underwriting or "lending money" were included in the information you recently sent to me. Since Homecomings Financial appears to have lent the money as well as did the underwriting of this purported "loan", combined with the fact that at some point in time, I will need to complete a quiet title action to fix the title problems associated with my property caused by the actions of the attorneys at Albertelli Law. I also want you to send me a stipulation agreement that neither GMAC-RFC Master Servicer (or whatever their correct name is, that is the only name disclosed to me) as well as Homecomings Financial have no interest in me or my property for any purported loan. Also, I need to know when and to whom Homecomings Financial claims to have sold their interest in my property or this purported "loan." Since the record indicates Homecomings Financial appears to claim to have lent me money, yet is not suing for foreclosure, they should have no problems or concerns giving me this information of who they may have given this purported instrument to after claiming to have lent me the money. Please provide this additional information to me on or before the close of business Friday May 8, 2015 or I will request another hearing before Judge Glenn.

Also, on a side note, you may want to be aware, I am preparing a notice to Judge Glenn and the NY BK Court regarding an additional attempt to commit bankruptcy fraud as the entities in the state foreclosure case are attempting to transfer this purported mortgage to another GMAC entity, Residential Accredited Loans Inc, which to the best of my knowledge, has also been liquidated in the GMAC Bankruptcy.



/s/ Ronald Gillis

Ronald Gillis
P O Box 380842
Murdock, FL 33938-0842          2282

1 of 1



From:  [REDACTED] @wachovia.com
Sent:  Thu 4/13/06 11:10 AM
To:  ronald gillis
Cc:  [REDACTED] @wachovia.com

Thank you. I forwarded the information to Homecomings as soon as I received it. I have provided information to them as well that these are the only payments you have made on this brand new loan. If I do not hear anything from them by 2pm today, I will follow up with a phone call on status. Every lender has a system they work within. And conditions are reviewed in the order received. Because this loan is brokered, it is not a Wachovia U/W I can address. I have requested RUSH assistance from the processor at Homecomings in light of the circumstances and I will contact you as soon as I have something to report.

Please understand I am trying my best to assist you. The Title Company (your closing agent) handles the payoffs on your loan. Therefore, without this information disclosed on your credit report or your application I had no way of knowing this lien existed. I had requested information as to whom your title and insurance was with on several occasions. I did not receive this information from you, through Jason until 3/23 and ordered the title request immediately. I did not receive a copy of your title search from the title company, which did disclose the 2nd loan until 4/3, which is the same day that you sent me an email which included the subordination agreement in attachment form. This second lien was a complete surprise to me. Had it been listed as a liability on the application to begin with, I would have questioned it not appearing on the credit report and addressed this issue immediately by requesting a payment history long ago. I believe we all want to achieve the same goal, which is to close your loan. I empathize that you have experienced frustration and want to work to make your final closing experience as positive as possible. Again, thank you for your patience.

Kindly,

**Exhibit 3**

MORRISON | FOERSTER

250 West 55th Street
New York
New York 10019-9601

Telephone: 212.468.8000
Facsimile: 212.468.7900

www.mofo.com

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BRUSSELS, DENVER,
HONG KONG, LONDON, LOS ANGELES,
NEW YORK, NORTHERN VIRGINIA,
PALO ALTO, SACRAMENTO, SAN DIEGO,
SAN FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

May 6, 2015

Writer's Direct Contact
+1 (212) 506.7341
NRosenbaum@mofo.com

<u>Via Express Mail</u>

Ronald P. Gillis
P.O. Box 380841
Murdock, FL 33938-0842

Re:   *In re Residential Capital LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y.) -
Discovery Requested by Bankruptcy Court

Dear Mr. Gillis:

This letter is in response to your facsimile dated April 22, 2015.

In your correspondence, you indicated that Homecomings Financial, LLC claimed to have
provided a loan to you in 2006. The ResCap Liquidating Trust, as successor in interest to
each of the Debtors in the above-captioned cases, is not aware of and has not uncovered
documents relating to any such loan. Additionally, based upon the Note and title insurance
report enclosed with my April 17, 2015 letter to you, the Liquidating Trust understands that
the loan involved in the pending foreclosure proceeding in the Circuit Court of the Twentieth
Judicial Circuit in and for Charlotte County, Florida (Case No. 08-252-CA) and your lawsuit
in the Middle District of Florida (Case No. 14-cv-418) was underwritten and provided by
Wachovia Mortgage Corporation, on or about May 1, 2006, in the original principal amount
of $146,150, for property located at 21238 Coachman Avenue, Fort Charlotte, Florida. As
indicated in my April 17, 2015 letter, this loan was securitized into the RALI Series 2006-
QS8 Trust, and Residential Funding Company, LLC acted as Master Servicer until February
of 2013 when the master servicing rights were transferred to Ocwen Loan Servicing, LLC.

Finally, in your correspondence you included a screen shot of an email apparently sent to you
by a Wachovia employee. That email references a "2nd loan" on the property that was
identified through a title search. If you believe that a second mortgage loan exists covering
your property and it is this second loan to which you refer in your correspondence (i.e., a
loan purportedly underwritten by Homecomings Financial), please forward a copy of the title
search showing the second mortgage loan. The Liquidating Trust will review the title search
and determine whether any follow-up search of its records is appropriate. Once we clarify
this matter, we will also be in a position to consider your request in your April 22 facsimile

ny-1185542

MORRISON  FOERSTER

Ronald P. Gillis
May 6, 2015
Page Two

for a stipulation.  However, given the lack of clarity at this juncture, we are not currently in a
position to provide the stipulation you request.

Very truly yours,

Norman S. Rosenbaum

**Exhibit 4**

UNITED STATE BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE: | ) |
|  | ) CASE NO 12-12020 |
|  | ) |
| RESIDENTIAL CAPITAL, LLC, ET AL., ) | CHAPTER 11 |
|  | ) |
| DEBTORS ) | ) |

## NON-PLEADING CORRESPONDENCE

Mr Rosenbaum,

I did not receive anything from you regarding Homecomings Financial or Residential Funding Corporation by the close of business May 18, 2015. Do you have something headed to me in the mail, as the email I sent pertained to Homecomings Financial purporting to do the underwriting in the same purported mortgage that is the subject matter of the foreclosure as well as you can see the comments about Wachovia brokering (NOT lending) this purported mortgage and Homecomings Financial purporting to be the lender. Further, RFC claims by way of the purported endorsement, and should have had information pertaining to them purporting to "own" this purported mortgage at some point in time. These are relevant and pertinent information you failed to produce and would be part of the verbal orders of Judge Glenn, and at this point in time, you appear to be in violation of his order. Please let me know what additional information you have sent and when I can expect to receive it.

Thank you!

Respectfully,

/s/ Ronald P Gillis

Ronald P Gillis      May 19, 2015
P O Box 380842
Murdock, FL 33938
████2282

**Exhibit 5**

MORRISON | FOERSTER

250 WEST 55TH STREET
NEW YORK
NEW YORK 10019-9601

TELEPHONE: 212.468.8000
FACSIMILE: 212.468.7900

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BRUSSELS, DENVER,
HONG KONG, LONDON, LOS ANGELES,
NEW YORK, NORTHERN VIRGINIA,
PALO ALTO, SACRAMENTO, SAN DIEGO,
SAN FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

May 22, 2015

Writer's Direct Contact
+1 (212) 506.7341
NRosenbaum@mofo.com

Via Express Mail

Ronald P. Gillis
P.O. Box 380841
Murdock, FL 33938-0842

Re:   *In re Residential Capital LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y.) -
      Discovery Requested by Bankruptcy Court

Dear Mr. Gillis:

This letter is in response to your facsimile dated May 19, 2015.

As we indicated in our May 6, 2015 responsive correspondence, the Liquidating Trust's review of the Debtors' business records uncovered only one loan on the property located at 21238 Coachman Avenue, Fort Charlotte, Florida (the "Property"), which was underwritten and provided by Wachovia Mortgage Corporation, on or about May 1, 2006, in the original principal amount of $146,150.

Your April 22, 2015 letter and the attachments thereto reference a purported "second lien" on the Property. As indicated in our May 6, 2015 letter, if you provide a copy of the title report referenced in the screen shot of the email sent to you by Peggy Kerwin of Wachovia on April 13, 2006 or any other document containing information sufficient to identify the purported "second lien", the Liquidating Trust will review that information and may be able to identify additional information regarding the other purported loan relating to the Property. Without this information, however, the Liquidating Trust has been able to identify only one loan relating to the Property and, consistent and in full compliance with the Court's directive, the Liquidating Trust has provided you with all documents it has identified through its search of the Debtors' business records.

Very truly yours,

Norman S. Rosenbaum

ny-1188943

**Exhibit 6**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RONALD P. GILLIS,

          Plaintiff,

v.                                Case No:  2:14-cv-418-FtM-38DNF

DEUTSCHE BANK TRUST
COMPANY AMERICAS, GMAC-RFC
MASTER SERVICING,
HOMECOMINGS FINANCIAL, ERIN
MAE ROSE QUINN and ANDREW
LEE FIVECOAT,

          Defendants.

_____/

### ORDER[1]

    This matter comes before the Court on Defendants Andrew Lee Fivecoat and Erin Mae Rose Quinn's Motion to Dismiss Plaintiff's Amended Complaint (Doc. #93) and Defendant Deutsche Bank Trust Company Americas' Motion to Dismiss Plaintiff's Amended Complaint (Doc. #94) filed on April 28, 2015, and May 1, 2015, respectively. Plaintiff Ronald P. Gillis failed to file a response to either Motion. The matter is now ripe for review.

### Background

    Defendant Deutsche Bank Trust Company Americas ("DBTCA") is a New York Corporation with its principal place of business in New York. (Doc. #92 at 4). Defendants

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the Court has no agreements with any of these third parties or their Web sites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

Andrew Lee Fivecoat ("Fivecoat") and Erin Mae Rose Quinn ("Quinn") are Florida residents who served as counsel for DBTCA in previous litigation.  ([Doc. #92 at 5](#)). Plaintiff is a Florida resident who previously engaged in litigation with Defendants.  ([Doc. #92 at 1-4](#)).  In 2008, DBTCA filed a state-court foreclosure action against Plaintiff, seeking to recover on a note assigned to it and secured by Plaintiff's residence.  ([Doc. #92 at 2](#)).  Throughout the state-court litigation, Plaintiff avers that, through the acts of its counsel, Fivecoat and Quinn, DBTCA committed various frauds on the state court.  ([Doc. #92 at 2-4](#)).  These acts include repeatedly misidentifying itself, filing false documents, and failing to identify the mortgage-backed trust that purports to own the mortgage that it sought to foreclose on.  ([Doc. #92 at 2-4](#)).

Plaintiff believes that this conduct illustrates, among other things, that Defendants are operating a "criminal enterprise to illegally enrich themselves through the extortion of legal fees and the sale of ill-gotten real estate assets to which they are not entitled. . . ." ([Doc. #92 at 3](#)).  To that end, Plaintiff filed an Amended Complaint asserting nine counts total, including three counts against all Defendants for violations of the Fair Debt Collection Practices Act ("FDCPA"), [15 U.S.C. § 1962](#) *et seq.* (Counts 1-3); three counts against Defendants Fivecoat and Quinn for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), [18 U.S.C. § 1962](#) *et seq.* (Counts 6-8); one count against Defendant DBTCA for a violation of RICO (Count 4); and two counts against all Defendants for a violation of RICO (Counts 5 and 9).  ([Doc. #92 at 5-11](#)).  In response, Defendant DBTCA and Defendants Fivecoat and Quinn filed Motions to Dismiss. ([Doc. #94](#); [Doc. #93](#)).  The Court will address both Motions in this Order.

**Legal Standard**

In deciding a Rule 12(b)(6) motion to dismiss, the Court limits its consideration to well-pleaded factual allegations, documents central to, or referenced in, the complaint, and matters judicially noticed. *La Grasta v. First Union Sec., Inc.,* 358 F.3d 840, 845 (11th Cir. 2004). The Court must accept all factual allegations in a plaintiff's complaint as true and take them in the light most favorable to the plaintiff. *Pielage v. McConnell,* 516 F.3d 1282, 1284 (11th Cir.2008). Conclusory allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (discussing a Rule 12(b)(6) dismissal); *Marsh v. Butler County, Ala.,* 268 F.3d 1014, 1036 n. 16 (11th Cir. 2001).

The Court employs the *Twombly–Iqbal* plausibility standard when reviewing a complaint subject to a motion to dismiss. *Randall v. Scott,* 610 F.3d 701, 708, n. 2 (11th Cir. 2010). A claim is plausible if the plaintiff alleges facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Marsh,* 268 F.3d at 1036 n. 16. Thus, "the-defendant-unlawfully harmed me accusation" is insufficient. *Iqbal,* 556 U.S. 662, 677, 129 S.Ct. 1937, 173 L.Ed.2d 868. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal modifications omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

Because Plaintiff is proceeding *pro se*, the Court construes his complaint more liberally than had it been drafted by an attorney.  *See* Powell v. Lennon, 914 F.2d 1459, 1463 (11th Cir.1990).

### Discussion

There are two Motions to Dismiss pending before the Court. Defendant DBTCA seeks dismissal of Plaintiff's Amended Complaint on the basis that Plaintiff failed to correct the deficiencies that the Court identified when it dismissed his original Complaint. Namely, Plaintiff's FDCPA claims lack sufficient grounds and Plaintiff's RICO claims fail to possess the specificity required by Fed. R. Civ. P. 9(b).  (Doc. #94 at 4-16).  Similarly, Defendants Fivecoat and Quinn seek a dismissal of Plaintiff's Amended Complaint on many of the same grounds as their original Motion to Dismiss.   Those grounds include that Plaintiff's FDCPA claims fail as a matter of law; Plaintiff fails to allege any acts that violate the FDCPA; Plaintiff fails to state a cause of action under RICO; and the litigation privilege bars all of Plaintiff's claims.  (Doc. #93 at 4-21).   The Court will address Defendants' Motions on a count-by-count basis.

*Violations of the FDCPA (Counts 1-3):*

To assert a violation of the FDCPA, Plaintiff must allege that (1) he has been the object of collection activity arising from consumer debt, (2) Defendants are debt collectors as defined by the FDCPA, and (3) Defendants have engaged in an act or omission prohibited by the FDCPA.  *Salazar v. MFP, Inc.*, 847 F.Supp.2d 1329, 1331 (M.D. Fla. 2012) (internal quotations and citations omitted).   As illustrated below, each of Plaintiff's counts asserting FDCPA violations lack one or more of these requisite elements.

4

In Counts 2 and 3, Plaintiff alleges that Defendants violated the FDCPA by making "false, deceptive, and misleading representations concerning their standings to sue Plaintiff and their interest in the debt." (Doc. #92 at 5-8). But this allegation, even if true, fails to constitute a *prima facie* FDCPA violation. As the Eleventh Circuit has explained, the "enforcement of a security interest through the foreclosure process is not debt collection for the purposes of [the FDCPA]." *Warren v. Countrywide Home Loans, Inc., 342 F. App'x 458 (11th Cir. 2009)*; *see also Dunavant v. Sirote & Permutt, P.C.,* --- F. App'x ----, No. 14-13314, 2015 WL 525536, at *1 (11th Cir. Feb. 9, 2015). By focusing solely on Defendants' actions in the state-court foreclosure action, Plaintiff fails to allege a requisite element in Counts 2 and 3 – that he was the object of debt collection activity. And without such an allegation, Plaintiff fails to allege a *prima facie* FDCPA violation. Because of this, Counts 2 and 3 must be dismissed.

Count 1 fairs no better. While Counts 2 and 3 fail to allege the first requisite element, Count 1 fails to allege the second and third requisite elements. That is, there are no allegations that Defendants are debt collectors as defined by the FDCPA or that they engaged in an act or omission prohibited by the FDCPA. Instead, Count 1 consists of two sentences. The first sentence notes that Plaintiff received four "demand letters" prior to the state-court foreclosure action. (Doc. #92 at 5). The second sentence describes how Defendants' filings in the state-court proceedings sought not only "the foreclosure of the security agreement[,] but also a 'deficiency judgment' and 'fees, costs[,] and attorney's fees.'" (Doc. #92 at 5). Clearly, these two sentences are not enough to allege a *prima facie* FDCPA violation. As such, Count 1 must be dismissed.

*Violations of RICO (Counts 4-9):*

The federal civil RICO statute, § 1962(c), makes it illegal "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282 (11th Cir. 2006) (citations and quotations omitted). To assert a federal civil RICO claim, a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Id.* Moreover, when the alleged conduct is an act of fraud, the plaintiff must also meet the heightened pleading requirement set out in Fed. R. Civ. P. 9(b). The Eleventh Circuit held that, in the RICO context, Rule 9(b) requires the plaintiff to allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiff[]; and (4) what the defendants gained by the alleged fraud." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (citations and quotations omitted).

Previously, the Court warned Plaintiff that if he wished to replead his RICO claims, he must do so in accordance with the pleading standards set out in *Williams*, 465 F.3d 1277. (Doc. #90 at 9). Unfortunately, Plaintiff did not heed these instructions, and instead repeated the same pleading errors in his Amended Complaint. Once again, Plaintiff continually references "forged documents," "misrepresentations," and "fraud." (Doc. #92 at 8-11). And once again, there is no information regarding the precise misrepresentations or the precise forged documents; there is no information regarding the time or place these forged documents or misrepresentations were presented; there is

6

no information regarding how these alleged forged documents or misrepresentations misled Plaintiff; and there is no information regarding what Defendants gained by the alleged fraud. (*See* Doc. #92 at 8-11). Without providing additional factual details in the Amended Complaint that meet Rule 9(b)'s heightened pleading standard, Plaintiff's RICO claims must be dismissed, again.

### *Future Amendments Would be Futile*

Because Plaintiff is proceeding *pro se*, the Court was lenient in its previous dismissal order, granting him leave to file the Amended Complaint. (Doc. #90 at 9). In fact, the Court even directed Plaintiff's attention to case law that would assist him in meeting the pleading standards that are required to survive a motion to dismiss. (Doc. #90 at 9). It is unfortunate that Plaintiff ignored this assistance, hastily refiling nearly the exact same allegations, with minimal additions and alterations. The Court is not inclined to let Plaintiff repeat these errors for a third time, and finds that future amendments would be futile.

Accordingly, it is now

**ORDERED:**

1. Defendants Andrew Lee Fivecoat and Erin Mae Rose Quinn's Motion to Dismiss Plaintiff's Amended Complaint (Doc. #93) is **GRANTED.**

2. Defendant Deutsche Bank Trust Company Americas' Motion to Dismiss Plaintiff's Amended Complaint (Doc. #94) is **GRANTED**.

3. Plaintiff Robert Gillis' Amended Complaint (Doc. #92) is **DISMISSED with prejudice.**

4. The Clerk of the Court is directed to terminate all pending motions and deadlines, and close this case.  All other pending Motions are **DENIED as moot**.

**DONE** and **ORDERED** in Fort Myers, Florida, this 21st day of May, 2015.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record