April 30, 2015

The Honorable Martin Glenn
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004-1408



Re: Francine Silver letter dated April 27, 2015: docket #8552

Dear Judge Glenn,

I am writing in support of Francine Silver. While reviewing the docket to ensure that my Designation of Record on Appeal was recorded, I notice Ms. Silver's letter dated April 27, 2015 [Docket 8552]. I was shocked to see that your Court is pretending to act as though it is ignorant of the fact that Ms. Nikole Shelton was stripped of her Notary duties. She was barred for life in the state of PA. (copy attached p11 of19)

The Massachusetts Deed of Registrar submitted an affidavit in my case. (copy attached) I will continue to prosecute my appeal as the presence of Ms. Shelton in the chain of title document clearly is evidence of fraud.

As per the Amicus Curie brief filed by California Attorney General Kamala Harris, California homeowners have the right to challenge wrongful foreclosures. (copy attached)

Residential Capital's objection are devoid of merit and any party who claims to have witnessed Ms. Shelton perform her duties should be investigated for perjury. I am presently in Baltimore, Maryland which is in a State of Emergency. The people of this nation are sick of the broken, corrupted judicial system. Your continued support of lies is unconscionable.

Respectfully and With Hope,

Karen M. Rozier

Attachment 1

 **pennsylvania**
**DEPARTMENT OF STATE**

# DISCIPLINARY ACTIONS
March 2012

Secretary of the Commonwealth Carol Aichele announced that 120 disciplinary actions have been taken by the Bureau of Professional and Occupational Affairs' 29 professional-licensing boards, the Bureau of Charitable Organizations and the Division of Legislation and Notaries of the Bureau of Commission, Elections and Legislation:

**PA Board of Accountancy**
**PA Architects Licensure Board**
**PA Board of Auctioneer Examiners**
**PA Board of Barber Examiners**
**PA Board of Certified Real Estate Appraisers**
**Bureau of Charitable Organizations**
**PA Board of Chiropractic**
**PA Board of Cosmetology**
**PA Board of Dentistry**
**PA Board of Professional Engineers, Land Surveyors and Geologists**
**PA Board of Funeral Directors**
**PA Board of Landscape Architects**
**PA Board of Medicine**
**Navigation Commission for the Delaware River and its Navigable Tributaries**
**Secretary of the Commonwealth – Notaries Public**
**PA Board of Nursing**
**PA Board of Examiners of Nursing Home Administrators**
**PA Board of Occupational Therapy Education and Licensure**
**PA Board of Optometry**
**PA Board of Osteopathic Medicine**
**PA Board of Pharmacy**
**PA Board of Physical Therapy**
**PA Board of Podiatry**
**PA Board of Psychology**
**Real Estate Commission**
**PA Board of Speech-Language and Hearing Examiners**
**PA Board of Social Workers, Marriage and Family Therapists and Professional Counselors**
**PA Board of Vehicle Manufacturers, Dealers and Salespersons**
**PA Board of Veterinary Medicine**

Note: The new state boards of Crane Operators and Massage Therapy are developing regulations and licensing procedures and have not yet begun disciplinary processes.

# Actions by County

The specific actions listed below were taken against individuals or firms in these counties:

| County | # of Actions | County | # of Actions |
|---|---|---|---|
| Adams | 0 | Lackawanna | 4 |
| Allegheny | 14 | Lancaster | 4 |
| Armstrong | 1 | Lawrence | 0 |
| Beaver | 0 | Lebanon | 2 |
| Bedford | 0 | Lehigh | 0 |
| Berks | 5 | Luzerne | 4 |
| Blair | 1 | Lycoming | 1 |
| Bradford | 0 | McKean | 0 |
| Bucks | 7 | Mercer | 1 |
| Butler | 2 | Mifflin | 0 |
| Cambria | 1 | Monroe | 1 |
| Cameron | 0 | Montgomery | 6 |
| Carbon | 0 | Montour | 0 |
| Centre | 0 | Northampton | 2 |
| Chester | 3 | Northumberland | 1 |
| Clarion | 0 | Perry | 0 |
| Clearfield | 2 | Philadelphia | 21 |
| Clinton | 0 | Pike | 0 |
| Columbia | 0 | Potter | 0 |
| Crawford | 1 | Schuylkill | 0 |
| Cumberland | 0 | Snyder | 0 |
| Dauphin | 8 | Somerset | 1 |
| Delaware | 3 | Sullivan | 0 |
| Elk | 0 | Susquehanna | 0 |
| Erie | 1 | Tioga | 0 |
| Fayette | 1 | Union | 0 |
| Forest | 0 | Venango | 0 |
| Franklin | 1 | Warren | 0 |
| Fulton | 0 | Washington | 0 |
| Greene | 0 | Wayne | 1 |
| Huntingdon | 0 | Westmoreland | 2 |
| Indiana | 0 | Wyoming | 0 |
| Jefferson | 1 | York | 3 |
| Juniata | 0 | **Total in-State actions** | **106** |
| | | | |
| Actions taken against professionals with non-PA addresses | | | 14 |
| **Total** | | | **120** |

## PA Board of Accountancy
No disciplinary actions taken.

## PA Architects Licensure Board
No disciplinary actions taken.

## PA Board of Auctioneer Examiners
No disciplinary actions taken.

## PA Board of Barber Examiners
No disciplinary actions taken.

## PA Board of Certified Real Estate Appraisers
No disciplinary actions taken.

## Bureau of Charitable Organizations
No disciplinary actions taken.

## PA Board of Chiropractic
No disciplinary actions taken.

## PA Board of Cosmetology

**Allegheny County**

Biotique Esthetics, Inc., t/d/b/a La Biotique, license no. CZ117512, of Monroeville, Allegheny County, was levied a civil penalty of $500 for practicing without a license. (10/20/11)

Danielle N. Kemp, license no. CO274039, of West Mifflin, Allegheny County, was suspended pursuant to the Order of the Court of Common Pleas of Allegheny County dated October 25, 2011, which the court issued under section 4355 of the Domestic Relations Code. The suspension is effective immediately. (11/17/11)

Elite Nails Spa, license no. CY194534, of Monroeville, Allegheny County, had its license suspended for nonpayment of a previously imposed civil penalty. (10/27/11)

An Van Le t/d/b/a Queen Nails, license no. CY097308L, of Wilkinsburg, Allegheny County, was assessed a $2,100 civil penalty for practicing the profession of nail technology in a grossly incompetent or unethical manner and failing to maintain her salon in a safe, orderly, and sanitary condition. (12/12/11)

Robert Griffith, license no. CO125551L, of Pittsburgh, Allegheny County, had his license suspended for nonpayment of a previously imposed civil penalty. (11/16/11)

Xpresspa, license nos. CY194287 and CZ116741, of Pittsburgh, Allegheny County, was ordered to pay a civil penalty in the amount of $500 and the costs of investigation in the amount of $65.72 because it used part of its salon for a purpose other than nail technology and esthetics. (03/12/12)

Calvin N. Beck, license nos. CB104481L and CT016711L, of Pittsburgh, Allegheny County, was ordered to pay a civil penalty of $750 because while t/d/b/a C Styles Unisex Hair STD he provided cosmetology services in a salon that was not currently licensed. (03/12/12)

## Berks County

Mary's Nail, license nos. CY194837 and CZ116730 of Reading, Berks County, was ordered to pay a civil penalty in the amount of $350 and costs of investigation in the amount of $21.96 because it failed to possess a wet sanitizer, failed to clean and maintain pedicure spas in a sanitary condition at all time, and failed to clean and maintain manicuring tools in a sanitary condition at all times. (03/12/12)

Wilson Torres t/d/b/a Nukara Beauty Salon, license no. CB121141 and CO275530, of Kutztown, Berks County was ordered to pay a civil penalty of $2,250, a default judgment of $420, and costs of investigation of $32.29 because Ms. Torres, while t/d/b/a Nukara Beauty Salon, employed unlicensed individuals after having done so previously and the salon failed to have the owner or a designated licensee on the premises at the time of the inspection. (03/12/12)

Hason Tran, license no. CY194580 and CZ117069, of Wyomissing, Berks County, was ordered to pay a civil penalty of $1,750 and costs of investigation of $28.52 because Tran, while doing business as LA Nails, practiced nail technology in a grossly incompetent or unethical manner as a result of two metal rasps and a liquid, nail enhancement product containing methyl methacrylate monomer being found within the nail technology salon. (03/12/12)

## Bucks County

Nails by Lana, license no. CY094024L of Yardley, Bucks County, was ordered to pay a civil penalty of $1,000 and costs of investigation of $34 because it operated as an esthetician salon without a license to do so. (03/12/12)

## Butler County

Beverly Shisler Purvis, license no. CO121194L, of Evans City, Butler County, was ordered to pay a civil penalty in the amount of $500 and costs of investigation in the amount of $61.48 because she practiced cosmetology on a lapsed license from February 1, 2011 through March 4, 2011 (03/12/12)

## Cambria County

Trung T. Nguyen t/d/b/a PA Nails, license nos. CY192721 and CZ115692, of Chester Springs, Cambria County, was assessed a $3,250 civil penalty for failing to meet minimum equipment standards and failing to maintain salon in a safe, orderly and sanitary condition at all times. (11/06/11)

## Chester County

Cuticle Corner Nail and Spa, license nos. CY194653 & CZ116251 of Berwyn, Chester County, was ordered to pay a civil penalty in the amount of $2,000 and costs of investigation in the amount of $89.28 because it, as a nail technology salon, failed to maintain tools that come into contact with clients in a sanitary condition at all times, failed to maintain a complete first aid kit, acted with gross incompetency or dishonest or unethical practices by allowing an employee to perform services outside the scope of the employee's license, failed to require an employee to display the employee's license in a conspicuous place or have the wall license in the employee's possession in the salon, and, as an esthetician salon, failed to maintain a complete first aid kit, failed to have a wet sanitizer, failed to maintain tools that come into contact with clients in a sanitary condition at all times, failed to dispose of trash in a covered waste container, and failed to keep clean cloth towels in a closed cabinet. (03/12/12)

Salon Seven, license no. CB109259 of West Chester, Chester County, was ordered to pay a civil penalty in the amount of $500 because it practiced the profession in a grossly incompetent or unethical manner through the possession of a metal rasp. (03/12/12)

## Dauphin County

Fakhri Zomorodi, unlicensed, of Harrisburg, Dauphin County, was assessed a $500 civil penalty for practicing eyebrow threading without a license. (12/12/11)

Jashonda Adhikari, unlicensed, of Harrisburg, Dauphin County, was assessed a civil penalty of $500 for performing eyebrow threading without a license. (12/12/11)

Zubair Sardar, t/d/b/a La Biotique, unlicensed, of Harrisburg, Dauphin County, was assessed a $500 civil penalty for practicing eyebrow threading without a license. (12/13/11)

Rukmina Luitel, unlicensed, of Harrisburg, Dauphin County, was assessed a $500 civil penalty for practicing eyebrow threading without a license. (12/12/11)

## Lancaster County

Tuyen Kim Ho, t/d/b/a Nail Bar, license no. CY194783, of Lancaster, Lancaster County, was assessed a $750 civil penalty for failing to meet minimum equipment standards and failing to maintain salon in a safe, orderly and sanitary condition at all times. (11/08/11)

## Lebanon County

Anh Mai Nguyen, t/d/b/a Regal Nails, license no. CY108236, of Lebanon, Lebanon County, was levied a civil penalty of $1,000 for failing to sanitize four pedi-spas and maintain equipment in a sanitary condition at all times. (10/13/11)

T Nails, license no. CY195200 of Palmyra, Lebanon County, was ordered to pay a civil penalty in the amount of $1,650 and costs of investigation in the amount of $29.28 because it practiced cosmetology in a grossly incompetent and/or unethical manner through the use of metal rasp tools, having an unlabeled container of an acrylic liquid in the salon, and failing to have a first aid kit. (03/12/12)

## Luzerne County

Sports Page, license no. CB115530, of Forty Fort, Luzerne County, had its license suspended for nonpayment of a previously imposed civil penalty. (10/24/11)

## Lycoming County

Ramona L. Clinger, t/d/b/a Ramona's Hair Styling, license no. CB107167, of Jersey Shore, Lycoming County, was assessed a $400 civil penalty for failing to meet minimum equipment standards and failing to maintain salon in a safe, orderly and sanitary condition at all times. (11/08/11)

## Mercer County

Jaclyn M. Myers, license no. CO258599, of Grove City, Mercer County, had her license suspended for nonpayment of a previously imposed civil penalty. (10/27/11)

## Montgomery County

May Seng Yang, license no. CQ113504, of Plymouth Meeting, Montgomery County, was suspended pursuant to the Order of the Court of Common Pleas of Philadelphia County dated November 15, 2011,

which the court issued under section 4355 of the Domestic Relations Code. The suspension is effective immediately. (12/15/11)

Mee Hee Lee, license no. CQ112655 of Flourtown, Montgomery County, was ordered to pay a civil penalty of $2,350 and costs of investigation of $71 because Lee practiced nail technology in a grossly incompetent or unethical manner. (03/12/12)

## Philadelphia County

David Van Phan, license no. CL184414, of Philadelphia, Philadelphia County, was suspended pursuant to the Order of the Court of Common Pleas of Philadelphia County dated October 12, 2011, which the court issued under section 4355 of the Domestic Relations Code. The suspension is effective immediately. (11/17/11)

Gai Thi Bui, license no. CL179133, of Philadelphia, Philadelphia County, was suspended for failing to pay a previously imposed civil penalty. (11/16/11)

Gina M. Ortiz, license no. CO261191, of Philadelphia, Philadelphia County, had her license suspended for nonpayment of a previously imposed civil penalty. (11/03/11)

Helen Nails, license no. CY194479 of Philadelphia, Philadelphia County, had its license suspended for nonpayment of a previously imposed civil penalty. (10/27/11)

Hoa Thi Nguyen, license no. CL018311L, of Philadelphia, Philadelphia County, had her license suspended for nonpayment of a previously imposed civil penalty. (11/04/11)

Hoa T Nguyen, individually and Hot Nails Salon, license no. CY194629, of Philadelphia, Philadelphia County was suspended for a period of 30 days and assessed a civil penalty of $500 for gross incompetence or unethical practice. (11/14/11)

Nguyet T. Nguyen, t/d/b/a Lisa's Nails, license no. CY105851L, of Philadelphia, Philadelphia County, was assessed a $500 civil penalty for maintaining a place for the practice of hair braiding without a license and failing to maintain salon in a safe condition at all times. (12/07/11)

Loan Kim Pham, license no. CO261540, of Philadelphia, Philadelphia County, was suspended for failing to pay a previously imposed civil penalty. (10/28/11)

Margaret C. Hayes, license no. CO193495L, of Philadelphia, Philadelphia County, was suspended for failing to pay a previously imposed civil penalty. (11/03/11)

Sabrina Jean, license no. CO231400L, of Philadelphia, Philadelphia County, had her license suspended for nonpayment of a previously imposed civil penalty. (11/04/11)

Steven Nguyen t/d/b/a Contempo Nails and Hair, license number CB097942L, of Philadelphia, Philadelphia County, was levied a civil penalty of $800 in that his salon employed an unlicensed employee to perform cosmetology services, his salon failed to have a closed container for the storage of clean towels, his salon failed to have a closed container for the storage of soiled towels, his salon failed to keep clean towels in a closed cabinet, and his salon failed to keep soiled towels in a closed cabinet. (12/09/11)

Thanh T. Tran, license no. CL180114 of Philadelphia, Philadelphia County, had his license suspended for nonpayment of a previously imposed civil penalty. (10/27/11)

Pearl Mabel Gosnell, license no. CO158396L, of Philadelphia, Philadelphia County, permanently and voluntarily surrendered her license and she was ordered to cease and desist the practice of the profession because she was convicted of four felonies while licensed as a cosmetologist. (03/12/12)

**York County**
Athena Trang Nguyen, t/d/b/a Europe Nails, license no. CZ116124, of Hanover, York County, was assessed a $1,850 civil penalty for aiding or abetting the unlicensed practice of nail technology, failing to meet minimum equipment standards and failing to maintain salon in a safe, orderly and sanitary condition at all times. (12/07/11)

**Out of State**
Keith Hall of Montclair, New Jersey, was ordered to pay a civil penalty of $2,000 because he failed to pay a previously imposed civil penalty and practiced cosmetology without a license. He last practiced in Lackawanna County. (12/07/11)

## PA Board of Dentistry

**Allegheny County**
Anthony Louis Monteleone, II, license no. DS024810L, of Pittsburgh, Allegheny County, was temporarily suspended, pending a hearing, on the grounds that his continued practice within the Commonwealth may be an immediate and clear danger to the public health and safety. (03/12/12)

**Crawford County**
John M. Mohr, license nos. DS012237L and DN012237A of Union City, Crawford County, agreed to the permanent voluntary surrender of his dental license along with any other authorizations to practice the profession issued by the board because he engaged in unprofessional conduct by failing to conform to the accepted standards of care in the practice of dentistry in the Commonwealth of Pennsylvania. (03/09/12)

**Montgomery County**
Jon L. Richter, license nos. DS017231L and DN017231A of Merion Station, Montgomery County, was ordered to pay a civil penalty of $4,000 and was suspended for no less than one year, stayed in favor of probation for no less than one year, subject to terms and conditions as set forth in the agreement, because he assigned duties to an expanded function dental assistant that an expanded function dental assistant is not authorized to perform. (03/09/12)

## PA Board of Professional Engineers, Land Surveyors and Geologists

No disciplinary actions taken.

## PA Board of Funeral Directors

### Bucks County
Joseph Michael McGhee, license no. FD013250L of Chalfont, Bucks County, was ordered to pay a civil penalty in the amount of $1,000 and his license shall be suspended for no less than one year but stayed immediately in favor of probation subject to terms and conditions, because he was convicted of a crime involving moral turpitude in this or any other state or federal court or pled guilty or nolo contendere to any such offense. (03/07/12)

### Philadelphia County
Vincent H. Fletcher, Jr., license no. FD011306L and Wayne R. Fletcher, license no. FD011177L, of Philadelphia, Philadelphia County, shall pay the costs of investigation in the amount of $750 and agree to the permanent voluntary surrender of their licenses to practice funeral directing and to surrender any and all property rights in renewing and/or reactivating their licenses at any time in the future because they failed to deposit in escrow or transfer in trust to a banking institution the entire amount of monies received under a prepaid contract for funeral services or merchandise. (03/07/12)

## PA Board of Landscape Architects
No disciplinary actions taken.

## PA Board of Medicine

### Allegheny County
Shaun Michael Wisniewski, license no. YM013322 of Wexford, Allegheny County, was ordered to pay a civil penalty in the amount of $500 because he unlawfully held himself out to the public as a respiratory therapist or practiced or offered to practice respiratory therapy without holding a valid, current license. (02/28/12)

Kim Louise Moscatiello, license no. YM010198 of Cheswick, Allegheny County, permanently and voluntarily surrendered her license because she violated a lawful order of the board previously entered by the board in a disciplinary proceeding. (02/28/12)

### Philadelphia County
Swaminathan Rathnakumar, license no. MD038570L, of Philadelphia, Philadelphia County, was indefinitely suspended and automatically stayed in favor of three years probation subject to certain terms and conditions because he failed to practice the profession with reasonable skill and safety by reason of addiction. (02/28/12)

### Out of State
Alan David Mendelsohn, license no. MD034956E of Hollywood, Florida, was ordered to pay a civil penalty of $10,000 because he had disciplinary action taken by a proper licensing authority of another state. (02/28/12)

Frankie Allen Puckett, license no. MD426102 of Huntingdon, West Virginia, is indefinitely suspended for no less than five years, such suspension to be immediately stayed in favor of no less than five years of

probation subject to certain terms and conditions, because he had disciplinary action taken by a proper licensing authority of another state. (02/28/12)

Antonio Silva, license no. MD042762E of Binghamton, New York, permanently and voluntarily surrendered his license because he had disciplinary action taken by a proper licensing authority of another state against his license to practice the profession. (02/28/12)

Scott Adam Boden, license no. MD426352 of West Hartford, Connecticut, was ordered to pay a civil penalty of $2,500 and a public reprimand was placed on his record with the board because he had disciplinary action taken by a proper licensing authority of another state. (02/28/12)

Duk Kyoon Choi, license no. MD037684L of Elmira, New York, had his license indefinitely and actively suspended until such time as the board grants the reinstatement of his license to practice as a medical physician and surgeon because he is unable to practice the profession with reasonable skill and safety to patients by reason of illness, addiction to drugs or alcohol, or is mentally incompetent. (02/28/12)

Robert L. Yarwood, license no. MD052492L, of Fitchburg, Massachusetts, permanently and voluntarily surrendered his license because he pled guilty to a crime of moral turpitude. (02/28/12)


## Navigation Commission for the Delaware River and its Navigable Tributaries
No disciplinary actions taken.


## Secretary of the Commonwealth – Notaries Public

### Allegheny County
Gertrude E. McCrory, notary commission no. 1106833, of Pittsburgh, Allegheny County, agreed to permanently and voluntarily surrender her notary commission because she failed to keep and maintain custody and control of an accurate chronological register of all official notary acts done by virtue of her office, in that she failed to enter the amount of fees collected for the service in her notary register. (02/22/12)

Daniel R. DeCecco, notary commission no. 1191907, of Russellton, Allegheny County, agreed to the permanent and voluntary surrender of his notary commission because he notarized an incomplete document and therefore failed to be familiar with the duties and responsibilities of a notary public. (03/07/12)

Scott J. Yoder, notary commission no. 1219225, of Pittsburgh, Allegheny County, agreed to the permanent and voluntary surrender of his notary commission because he failed to require the personal appearance of the person executing the instrument and he failed to be familiar with the duties and responsibilities of a notary public. (03/07/12)

### Berks County
Kimberly J. McGrath, notary commission no. 1107933, of Monocacy Station, Berks County, was suspended for a minimum period of three months, such suspension to be immediately stayed in favor of probation subject to certain terms and conditions, ordered to take and successfully complete a six-hour

notary practice and procedure course, and ordered to pay civil penalty and assessment fees in the total amount of $650 because upon appointment and prior to entering into the duties of office of notary public, she failed to take and subscribe the constitutional oath of office and give a surety bond, payable to the Commonwealth, to be recorded and then filed with the Secretary of the Commonwealth. (02/22/12)

## Bucks County
Jeffrey A. Bennett, notary commission no. 1010239, of Doylestown, Bucks County, agreed to the permanent and voluntary surrender of his notary commission because he pled guilty to a felony or lesser offense incompatible with the duties of a notary public, and failed to be of good character, integrity and ability. (02/22/12)

Lisa M. DeLaurentis, notary commission no. 1037507, of Perkasie, Bucks County, agreed to the permanent and voluntary surrender of her notary commission because she failed to know through personal knowledge or have satisfactory evidence that the person appearing before the notary is the person described in and who is executing the instrument, failed to maintain an accurate chronological register of all official acts by that notary done by virtue of that notary's office and failed to be familiar with the duties and responsibilities of a notary public. (02/27/12)

## Clearfield County
Candice J. Alvetro, notary commission no. 120417, of Dubois, Clearfield County, agreed to the permanent and voluntary surrender of her notary commission because she pled guilty to a felony or lesser offense incompatible with the duties of a notary public, is not familiar with the duties and responsibilities of a notary public, and failed to be of good character, integrity and ability. (02/22/12)

## Dauphin County
Linda M. Beezub, notary commission no. 1009273, of Harrisburg, Dauphin County, was suspended for six months, ordered to successfully compete a six-hour of notary practice and procedure course, and ordered to pay a civil penalty in the amount of $250 because she failed to keep and maintain custody and control of an accurate chronological register of all official acts by that notary done by virtue of that notary's office, and she failed to be familiar with the duties and responsibilities of a notary public. (02/22/12)

Kelly P. Roberts, notary commission no. 1138919, of Harrisburg, Dauphin County, was suspended for a period of three months, such suspension immediately stayed in favor of probation, ordered to successfully complete a six-hour notary practice and procedure course, and pay a civil penalty in the amount of $500 and probation assessment fees in the amount of $150 because she failed to be familiar with the duties and responsibilities of a notary public. (03/07/12)

Nicole L. Lipscomb, notary commission no. 1044097, of Harrisburg, Dauphin County, was suspended for a period of three months, such suspension immediately stayed in favor of probation, subject to certain terms and conditions, successfully complete a six-hour notary practice and procedure course, and pay a civil penalty in the amount of $250 and probation assessment fees in the amount of $150 because she failed to, upon appointment and prior to entering into the duties of office of notary public, take and subscribe the constitutional oath of office and give a surety bond, payable to the Commonwealth, to be recorded and then filed with the Secretary of the Commonwealth, and used a notary public seal while not a notary public thereby impersonating a notary public. (03/07/12)

## Delaware County

Tammi Torbik, notary commission no. 1167756, of Wayne, Delaware County, was suspended for a period of twelve months, such suspension immediately stayed in favor of probation subject to certain terms and conditions, ordered to successfully complete a six-hour notary practice and procedure course, and pay a civil penalty and probation assessment fees totaling $1,100 because she failed keep and maintain custody and control of her seal and failed to be familiar with the duties and responsibilities of a notary public. (03/07/12)

## Erie County
Jeanie Kesselring, notary commission no. 1212389, of Union City, Erie County, agreed to the permanent and voluntary surrender of her notary commission because she pled guilty to a felony or lesser offense incompatible with the duties of a notary public, and failed to be of good character, integrity and ability. (02/22/12)

## Franklin County
Juan C. Lemus, notary commission no. 1212200, of Chambersburg, Franklin County, was suspended for a period of six months, such suspension to be immediately stayed in favor of probation subject to certain terms and conditions, ordered to take and successfully complete a six-hour notary practice and procedure course approved by the Secretary, and ordered to pay probation assessment fees in the amount of $300 because he failed to give a certified copy of the register in the notary's office to any person applying for same. (02/22/12)

## Lancaster County
Crystal Consylman, notary commission no. 1239496, of Lancaster, Lancaster County, agreed to the permanent and voluntary suspension of her notary commission no. 1239496 because she pled guilty to theft by failure to make the requisite disposition of funds. (02/22/12)

## Luzerne County
Denise A. Martin, notary commission no. 1193063, of West Pittston, Luzerne County, was suspended for a minimum of twelve months, ordered to pay a civil penalty of $500 and a probation assessment of $300, and ordered to attend a six-hour notary practice and procedure class because she failed to know through personal knowledge or have satisfactory evidence that the person appearing before her was the person described in and who was executing the instrument and failed to keep and maintain custody and control of an accurate chronological register of all official acts by virtue of her office, and when required, give a certified copy of the register in the notary's office to any person applying for same. After six months of active suspension, the remaining period of suspension will be stayed in favor of probation subject to the Secretary's terms and conditions. (02/22/12)

## Montgomery County
Nikole Shelton, notary commission no. 1189483, of Fort Washington, Montgomery County permanently and voluntarily surrendered her notary commission because she failed to be familiar with the duties of a notary public; failed to log notarial acts as required; and on at least one occasion she failed to require a personal appearance as required. (02/22/12)

Kristopher Bonocore, notary commission no. 1228536, of Norristown, Montgomery County, was suspended for a minimum period of nine months, with such suspension immediately stayed in favor of probation subject to certain terms and conditions; ordered to attend and successfully complete a six-hour notary practice and procedure course; and pay a civil penalty and probation assessment totaling $950 because he failed to take and subscribe the constitutional oath of office and record his signature and bond

in the appropriate Recorder of Deeds office, used a notary seal while not a notary public thereby impersonating a notary public, failed to keep and maintain custody and control of an accurate chronological register of all official acts done by virtue of his office, and failed to be familiar with the duties and responsibilities of a notary public. (03/07/12)

Grace E. Carr of Horsham, Montgomery County was disciplined and agreed to the voluntary and permanent surrender of her notary commission no. 1023808, because she failed to keep and maintain custody and control of an accurate chronological register of all official acts done by virtue of his office, and she failed to be familiar with the duties and responsibilities of a notary public. (04/03/2012)

### Philadelphia County
Shaquita M. Jones, notary commission no. 1199116, of Philadelphia, Philadelphia County, was suspended for a period of three months, such suspension to be immediately stayed in favor of probation, successfully complete a six-hour notary practice and procedure course, and pay a civil penalty in the amount of $500 and pay probation assessment fees in the amount of $150 because she failed to, upon appointment and prior to entering into the duties of office of notary public, take and subscribe the constitutional oath of office and give a surety bond, payable to the Commonwealth, to be recorded and then filed with the Secretary of the Commonwealth. (03/07/12)

Cheryl Fetko, notary commission no. 1049475, of Philadelphia, Philadelphia County, agreed to the suspension of her notary commission for a period of three months, such suspension immediately stayed in favor of probation, subject to certain terms and conditions, successfully complete a six-hour notary practice and procedure course, and pay a civil penalty of $100 and probation assessment fees in the amount of $150 because she failed to maintain an accurate chronological register of all official acts by that notary done by virtue of that notary's office. (03/07/12)

Rose Mary Muldoon, notary commission no. 1221178, of Philadelphia, Philadelphia County, agreed to the permanent and voluntary surrender of her notary commission because she failed to, upon appointment and prior to entering into the duties of office of notary public, take and subscribe the constitutional oath of office and give a surety bond, payable to the Commonwealth, to be recorded and then filed with the Secretary of the Commonwealth, and used a notary public seal while not a notary public thereby impersonating a notary public. (03/07/12)

### Somerset County
Cynthia A. Bowers, notary commission no. 1015134, of Somerset, Somerset County, agreed to the suspension of her notary commission for a period of six months, such suspension to be immediately stayed in favor of probation, ordered to pay a civil penalty in the amount of $250 and probation assessment fees in the amount of $300, and to attend and successfully complete a six-hour notary practice and procedure course because she failed to keep and maintain an accurate chronological register of all official acts by that notary done by virtue of that notary's office. (02/27/12)

# PA Board of Nursing

### Allegheny County

Tammy Jo Vasquez, license no. PN253115L, of White Oak, Allegheny County, had a public reprimand placed on her permanent disciplinary record with the board and agreed to the permanent and voluntary surrendered her license because she was convicted of multiple felonies. (02/27/12)

## Armstrong County
Cheryl Walker Dayen, license no. RN291697L, of North Apollo, Armstrong County, voluntarily surrendered her professional nursing license and nurse practitioner certification because she is unable to practice the profession with reasonable skill and safety to patients by reason of dependence on drugs or alcohol unless she is monitored by PHMP. (02/27/12)

## Blair County
Angela N. Nicklow, license no. PN276130, of Altoona, Blair County, had her license suspended for a period of three years, such suspension immediately stayed in favor of three years probation, subject to certain terms and conditions, on the grounds that she is unable to practice the profession with reasonable skill and safety to patients by reason of mental or physical illness or condition or physiological dependence upon alcohol, hallucinogenic or narcotic drugs or other drugs which tend to impair judgment or coordination. (02/27/12)

## Bucks County
Erin Michelle Quinn, license no. RN588686, of Langhorne, Bucks County, was actively suspended for a minimum period of three years, retroactive to June 8, 2011, until such time as she applies for and receives approval from the board for reinstatement to active status, subject to terms and conditions as set forth in the agreement, because she is unable to practice professional nursing with reasonable skill and safety to patients by reason of mental or physical illness or condition or physiological or psychological dependence upon alcohol, hallucinogenic or narcotic drugs or other drugs which tend to impair judgment and coordination and was convicted of a misdemeanor violation of the Drug Act. (02/27/12)

William J Golt, Jr, license no. RN289207L, of Levittown, Bucks County, was indefinitely suspended for no less than five years, with such suspension stayed immediately in favor of no less than five years probation subject to the board's terms and conditions, because he is unable to practice the profession with reasonable skill and safety to patients by reason of mental or physical illness or condition or physiological or psychological dependence upon alcohol, hallucinogenic or narcotic drugs or other drugs which tend to impair judgment or coordination. (02/27/12)

## Chester County
Eleanor Phipps Rice, license no. RN275946L of Coatesville, Chester County, had her license suspended for no less than three years, retroactive to September 13, 2010, based on findings that she violated the terms of a previously issued board order. (12/20/11)

## Clearfield County
Jill M. Butler, license no. PN262783, of Clearfield, Clearfield County was revoked because she pled guilty to a crime of moral turpitude in the courts of the Commonwealth. (11/02/10)

## Delaware County
Elizabethann Marie Ward, license no. RN565977L, of Havertown, Delaware County, was indefinitely suspended for no less than three years, and after three months of active suspension, if requirements are met, the active suspension will be stayed immediately in favor of no less than five years probation subject to the board's terms and conditions, because she is unable to practice the profession with reasonable skill

and safety to patients by reason of mental or physical illness or condition or physiological or psychological dependence upon alcohol, hallucinogenic or narcotic drugs or other drugs which tend to impair judgment or coordination. (01/23/12)

## Lackawanna County
Ginger Lou Maczuga, license nos. PN273477 and RN609386, of Moosic, Lackawanna County, was suspended for no less than one year and after 15 days of active suspension and application to the board said suspension shall be stayed in favor of probation subject to terms and conditions as set forth in the agreement, because she was guilty of unprofessional conduct or such conduct as to require a suspension or revocation in the public interest. (02/27/12)

Sandra Vansickle Jayne, license no. RN264774L, certification no. SP007063, and prescriptive authority no. 004548, of Clarks Summit, Lackawanna County, paid a civil penalty of $1,000 because she failed to meet the continuing education requirements for the biennial renewal period.    (02-27-12)

## Lancaster County
Carol L. Topolewski, license no. PN151926L, of New Providence, Lancaster, had her license suspended for no less than three years retroactive to June 8, 2011 based on findings that she failed to comply with an agreement that she entered into with the Commonwealth. (08/15/11)

## Luzerne County
Angela Evans Coolbaugh, license no. PN257174L, of Miners Mill, Luzerne County, was indefinitely suspended for no less than three years, with such suspension immediately stayed in favor of no less than three years of probation, subject to the board's terms and conditions, because she is addicted to alcohol or is addicted to hallucinogenic or narcotic drugs or other drugs which tend to impair judgment or coordination or has become mentally incompetent, and has violated a lawful disciplinary order of the board.  (02/27/12)

## Montgomery County
Brett E. Heselpoth, license no. RN549595, of Lafayette Hill, Montgomery County was suspended for three years retroactive to May 24, 2011 based on his conviction of a felony under the Drug Act and a misdemeanor. (08/31/11)

## Northampton County
Jason W. Richie, license no. RN524862L, of Bath, Northampton County, had her nursing license suspended for at least three years retroactive to July 21, 2011, based on findings that she violated the terms of her Voluntary Recovery Program consent agreement. (09/01/11)

## Northumberland County
Jennifer Jeffery, license no. PN254650L, of Mt. Carmel, Northumberland County, was indefinitely suspended because she is unable to practice nursing with reasonable skill and safety to patients by reason of addiction to alcohol or addiction to hallucinogenic or narcotic drugs or other drugs which tend to impair judgment or coordination. (12/01/11)

## Philadelphia County
Amy Foster Hunter, license no. RN523574L, of Philadelphia, Philadelphia County had her license suspended for no less than three years retroactive to February 17, 2011, based on her failure to comply with a consent agreement previously entered into with the Commonwealth. (12/20/11)

Arthur Stewart, license no. RN284161L, of Philadelphia, Philadelphia County was indefinitely suspended for no less than three years with said suspension immediately stayed in favor of no less than three years of probation because he is unable to practice the profession with reasonable skill and safety to patients by reason of mental or physical illness or condition or physiological or psychological dependence upon alcohol, hallucinogenic or narcotic drugs or other drugs, which tend to impair judgment or coordination. (02/27/12)

**Out of State**
Linda Christine Phelan, license no. RN575811, of Farmington, New York, was suspended for a period of no less than three years because she is unable to practice professional nursing with reasonable skill and safety to patients by reason of mental or physiological or psychological dependence upon alcohol, hallucinogenic or narcotic drugs or other drugs which tend to impair judgment or coordination and was convicted of a crime of moral turpitude in a court of competent jurisdiction of another state. (02/27/12)

Laura Michelle Magsamen, license no. RN562643, of Churchville, Maryland, was ordered to pay a civil penalty of $1,000 and had a public reprimand placed on her permanent board record because she practiced nursing while her license was lapsed. (02/27/12)

## PA Board of Examiners of Nursing Home Administrators
No disciplinary actions taken.

## PA Board of Occupational Therapy Education and Licensure
No disciplinary actions taken.

## PA Board of Optometry
No disciplinary actions taken.

## PA Board of Osteopathic Medicine

## PA Board of Pharmacy

**Out of State**
Rafael Robles-Ortiz, license no. RP037052R, of Fort Worth, Texas, was placed on probation for no less than five years, retroactive to June 19, 2008, and a public reprimand placed on his permanent disciplinary record because he had a final disciplinary order entered against his license in another state. (02/21/12)

Victor Chingdu Egbulefu, license no. RP440949, of Richmond, Texas, was placed on probation for no less than five years, retroactive to February 8, 2011, and a public reprimand placed on his permanent disciplinary record because had disciplinary action taken against him in another state. (02/21/12)

## PA Board of Physical Therapy
No disciplinary actions taken.

## PA Board of Podiatry
No disciplinary actions taken.

## PA Board of Psychology

## Real Estate Commission

### Delaware County
Luther Claude, license no. RS272781 of Lansdowne, Delaware County, was ordered to pay a civil penalty in the amount of $250 and a public reprimand was placed on his permanent disciplinary record with the commission because he failed to provide the complainant with written disclosure of any financial interest in Precise & Quality Construction prior to the complainant entering the construction contract, as required by a commission regulation. (02/22/12)

### Westmoreland County
Chelsey K. Rock, license no. RS290451, of Wexford, Westmoreland County, had a reprimand placed on her commission record and was ordered to pay a civil penalty of $1,400 because she failed to complete fourteen clock hours of continuing education in timely and acceptable courses for the biennial reporting period of June 1, 2006 through May 31, 2008 and failed to provide accurate information in an application and/or in the statements and papers that accompany the application to the Real Estate Commission. (02/22/12)

### Out of State
Steven B. Wolgin, unlicensed, of Tenafly, NJ, was ordered to pay a civil penalty of $1,000 and to cease and desist from performing appraisals of real estate property in Pennsylvania unless properly issued a certificate or license from Pennsylvania because he performed a real estate appraisal in a non-federally related transaction without holding an appropriate, current and valid certificate to perform real estate appraisals and he held himself out as a real estate appraiser or appraiser trainee without current and valid certificate or license from Pennsylvania. (03/08/12)

## PA Board of Speech-Language and Hearing Examiners
No disciplinary actions taken.

## PA Board of Social Workers, Marriage and Family Therapists and Professional Counselors

## PA Board of Vehicle Manufacturers, Dealers and Salespersons

### Berks County
A to Z Motors, license no. VD013245L of Shoemakersville, Berks County, was ordered to pay a civil penalty of $700 because they failed to maintain all licenses current and posted, failed to have a single landline telephone in the name of the dealership, and failed to properly maintain business records. (03/06/12)

### Bucks County
Edward W. Langel, Co., license no. VD000115A of Feasterville Trevose, Bucks County, was ordered to pay a civil penalty of $800 because it failed to produce business records when an authorized agent of the

board reasonably requested it produce business records, failed to have a business identity separate from other businesses owned or operated by the dealer, failed to have a single business line telephone located within the permanent enclosed building used for business and listed under the dealership's licensed name, and failed to post its regular business hours in a conspicuous place for the visiting public.    (03/06/12)

## Butler County

Allegheny Auto Sales, license no. VD021311L of Butler, Butler County, was ordered to pay a civil penalty of $2,000 because they failed to pay taxes or fees collected for the Commonwealth and sold vehicles without possessing a franchise agreement. (03/06/12)

## Dauphin County

Colonial Auto Care Sales & Service, license no. VD028554 of Harrisburg, Dauphin County, was ordered to pay a civil penalty of $1,000 because they failed to surrender a salesperson's license within ten days of the termination of his employment with them and failed to submit the required paperwork to PennDOT on the purchase of a vehicle within 20 days of the purchase. (03/06/12)

## Fayette County

Joe Ross and Son Auto Sales, license number VD011117L, of Dunbar, Fayette County, was issued a $800 civil penalty for violations related to its dealership facility and for engaging in conduct in connection with the sale of vehicles which clearly demonstrates unprofessional conduct or incompetency to operate as a licensee. (11/09/11)

## Jefferson County

Kelly Chrysler Jeep Dodge, license no. VD026245 of Brookville, Jefferson County, was ordered to pay a civil penalty of $750 because they failed to surrender the license of a terminated employee within ten days and failed to produce a title for a displayed vehicle for sale. (03/06/12)

## Lackawanna County

Kevin S. Prasi, license no. MV189267 of Clarks Summit, Lackawanna County, permanently and voluntarily surrendered his license to practice as a vehicle salesperson in the Commonwealth of Pennsylvania because he pled guilty, entered a plea of nolo contendere or was found guilty in a court of competent jurisdiction in this or any other state or federal jurisdiction of forgery, embezzlement, obtaining money under pretenses, extortion, conspiracy to defraud, bribery, odometer tampering or any other crime involving moral turpitude within five years prior to the application for or issuance of a license or while his current license was in force. (03/06/12)

Main Stream Auto Inc, license no. VD022993L, James Krupovich, license no. MV164278L, and Eric Krupovich, license no. MV164276L, of Eynon, Lackawanna County, were ordered to pay a $4,000 civil penalty, jointly and severally, and placed the licenses VD022993L, MV164278L, and MV164276L on probationary status until such time as they provide proof satisfactory to the board that they have completed their criminal probation and have paid in full all fines, costs, and fees related to the criminal proceedings because they pled guilty to crimes involving moral turpitude. (02/07/12)

## Lancaster County

Crystal Consylman, license no. MV218945 of Lancaster, Lancaster County, permanently and voluntarily surrendered her license to practice as a vehicle salesperson in the Commonwealth of Pennsylvania because she plead guilty, entered a plea of nolo contendere or was found guilty in a court of competent jurisdiction in this or any other state or federal jurisdiction of forgery, embezzlement, obtaining money

under false pretenses, extortion, conspiracy to defraud, bribery, odometer tampering or any other crime involving moral turpitude, within five years prior to the application for or issuance of a license or while her current license was in force   (03/06/12)

## Luzerne County
Wyoming Homes, inc., license no. VD025277 of Wilkes-Barre, Luzerne County, PA, agreed to pay a civil penalty of $6,000 because the establishment demonstrated unprofessional conduct with regard to the sale of six manufactured homes. (03/06/12)

## Monroe County
Autotrader LLC, license no. VD028123 of Tobyhanna, Monroe County, was ordered to pay a civil penalty of $300 and costs of investigation of $60.46 because it failed to keep all licenses current and posted, failed to have a single landline telephone in the name of the dealership, and failed to have a private office. (03/06/12)

## Northampton County
Jerome T. Alexander, license no. MV214869 of Easton, Northampton County, had a public reprimand placed on his permanent disciplinary record with the board and permanently and voluntarily surrendered his license to practice as a vehicle salesperson in the Commonwealth of Pennsylvania because he pled guilty, entered a plea of nolo contendere or was found guilty in a court of competent jurisdiction in this or any other state or federal jurisdiction of forgery, embezzlement, obtaining money under false pretenses, extortion, conspiracy to defraud, bribery, odometer tampering or any other crime involving moral turpitude; and was convicted of a felony. (03/06/12)

## Philadelphia County
Alter R. Evans, vehicle salesperson license no. MV191969, of Philadelphia, Philadelphia County, had his license revoked based upon his criminal conviction for felony crimes of moral turpitude. (11/09/11)

## Wayne County
Charles Allen Strait, Jr., of Hawley, Wayne County, was granted a probationary license as a vehicle salesperson for a period of five years based on his felony convictions. (11/16/11)

## Westmoreland County
Frank Chain, of Mt. Pleasant, Westmoreland County, was granted a probationary license as a vehicle salesperson to run concurrent with his criminal probation based on his multiple criminal convictions. (12/12/11)

## York County
Derek Helwig, of Hellam, York County, was granted a probationary license as vehicle salesperson for a period of at least 1 year based on his felony and misdemeanor convictions. (8/15/11)

Corey D. Kilgore, of Felton, York County, was granted a probationary license as a vehicle salesperson, to run concurrent with his criminal probation based on his felony and misdemeanor conviction. (11/18/11)

## Out of State
Gary Cordell Patterson, of Fairmont, West Virginia, was denied licensure as a vehicle salesperson, based upon his criminal convictions. (12/30/11)

Joseph R. Kostack, license no. MV155250L, of Woolwich Township, NJ, permanently and voluntarily surrendered his license because he pled guilty to crimes of moral turpitude while holding an active license. (03/06/12)

## PA Board of Veterinary Medicine
No disciplinary actions taken.


### Return to First Page


***A complete list of sanctions is available online at***
***www.dos.state.pa.us.***

**###**

Affachment 2

Search Web    Hi, Karen

INBOX     CONTACTS     CALENDAR                              Trending Now on Yahoo!

: (67)                       **RE: CustomerSupportRequest**
Conversations

**Drafts (6)**

**Sent**

**Spam (110)**                                              *Commonwealth of*
                                                           *Massachusetts*
**Trash**

**FOLDERS**               JOHN L. O'BRIEN, JR.      Southern Essex District Registry of Deeds
                             Register of Deeds                  Shetland Park
Appeals Court            Phone: 978-542-1704            45 Congress Street
                           Fax: 978-542-1706                   Suite 4100
Appeals Support From ...        email:              Salem, Massachusetts 01970
**Bank of America Case (7)**
                            website:
**Boy Scouts (12)**
                                                  "How May We Help You!"
**DBILT BK (5)**

**efiling RECEIPTS (27)**     Good Morning Karen,

Kasenow and Nate          We will absolutely send you this affidavit.  Please allow a few days to process your request. This
                          affidavit will be forwarded to the address indicated below.  Have a good day!!
**Organo Gold (4)**

Ortega                    Pam Wood-Customer Service
                          Disclaimer: The information contained in this email should not be construed as legal advice or a legal opinion. The information
**Pam Raland (15)**       is intended for general informational purposes only.

**Sent pictures (20)**

**MESSENGER**

**APPLICATIONS**
                          JOHN L. O'BRIEN, JR.
                          Register of Deeds
                          Phone: 978-542-1704
                          Fax: 978-542-1706
                          email: southernessexcustomerservice@sec.state.ma.us
                          website: www.salemdeeds.com
                          Commonwealth of Massachusetts

                          Southern Essex District Registry of Deeds
                          Shetland Park
                          45 Congress Street
                          Suite 4100
                          Salem, Massachusetts 01970

                          "How May We Help You!"
                          Disclaimer: The information contained in this email should not be construed as legal advice or a legal
                          opinion.  The information is intended for general informational purposes only.


                          ----Original Message----
                          From:              [                    ]
                          Sent: Sunday, May 26, 2013 10:03 PM
                          To: Customer Service; John O'Brien; Harvey, Kevin
                          Subject: CustomerSupportRequest

                          Customer name: Karen Rozier

                          Email: rozier.karen@yahoo.com

                          Phone: (714) 512-5740

                          Mailing address: 7957 Dahlia Circle Buena Park, CA 90620

                          Subect Address:
                          7957 Dahlia Circle Buena Park, CA

                          How do I get an affidavit that Nikole Shelton is a robo-signer? I have been suing GMACM, MERS, Bank
                          of America, US Bank and ResCap for 5+ years. I have repeatedly offered my version of evidence that
                          Ms. Shelton is a robo-signer but one of my friends suggested I contact you since she is on your list.

V2 p125

## AFFIDAVIT OF JOHN L. O'BRIEN, REGISTER OF DEEDS
## SOUTHERN ESSEX DISTRICT

1. I, John L. O'Brien, Register of the Southern Essex District Registry of Deeds, do hereby swear or aver as follows:

2. As of June 2011 it has been my policy as follows:

   a. IF THERE ARE VARIATIONS OF AN ALLEGED ROBO-SIGNER ON RECORD AT MY REGISTRY – I require that all documents sent for recording that are executed by that alleged robo-signer, be independently verified by an affidavit that the signature is in fact the signature of the named individual, prior to recording. (See Exhibit B attached hereto).

   b. IF THERE ARE NO VARIATIONS OF AN ALLEGED ROBO or SURROGATE SIGNER ON RECORD AT MY REGISTRY – I record the documents and forward them to the Massachusetts Attorney General's Office for review and possible violation of a Crime Against Property, specifically MGL Chapter 266, Section 35A (b) (4).

3. I have instituted this policy based on the opinion of our forensic analyst, Marie McDonnell of McDonnell Property Analytics who has provided me with a list of robo and surrogate signers.

   McDonnell defines a "robo-signer" as: *The person on a legal document processing assembly line whose only task is to sign previously prepared documents affecting title to real property in a robotic-like fashion without reading the documents or verifying the facts contained therein by reviewing primary source evidence. The robo-signer's mission is to expedite the documents' recordation in the public land records or in court proceedings. Additionally, robo-signers regularly fail to establish or simply do not have the authority to execute these documents on behalf of the legal title holder or principal on whose behalf they purport to act.*

   McDonnell defines a "surrogate signer" as: *A person who signs a legal document on behalf of and in the name of another without reading it or understanding the document's contents; surrogate-signers are not authorized to execute these documents on behalf of the legal title holder or principal on whose behalf they purport to act.*

4. I am aware that NIKOLE SHELTON is an alleged robo or surrogate signer.

Signed this 28th day of May 2013, under the pains and penalties of perjury.

John L. O'Brien, Register

V2p124

/

Attachment 3

# In the Supreme Court of the State of California

TSVETANA YVANOVA,

**Plaintiff and Appellant,**

v.

**NEW CENTURY MORTGAGE CORPORATION, OCWEN LOAN SERVICING, LLC, WESTERN PROGRESSIVE, LLC, and DEUTSCHE BANK NATIONAL TRUST COMPANY, et al,**

**Defendant-Respondent.**

Case No. S218973

Second Appellate District, Division One, Case No. B247188
Los Angeles County Superior Court, Case No. LC097218
Honorable Russell Kussman, Judge

## AMICUS BRIEF OF THE ATTORNEY GENERAL IN SUPPORT OF PLAINTIFF AND APPELLANT TSVETANA YVANOVA

KAMALA D. HARRIS
Attorney General of California
NICKLAS A. AKERS
Senior Assistant Attorney General
MICHELE VAN GELDEREN
Supervising Deputy Attorney General
SANNA R. SINGER
Deputy Attorney General
State Bar No. 228627
  110 West A Street, Suite 1100
  San Diego, CA 92101
  P.O. Box 85266
  San Diego, CA 92186-5266
  Telephone: (619) 645-2111
  Fax: (619) 645-2012
  Email: Sanna.Singer@doj.ca.gov
*Attorneys for Amicus Curiae
the Attorney General of California*

# TABLE OF CONTENTS

                                                                    Page

INTRODUCTION ................................................................... 1

STATEMENT OF INTEREST ..................................................... 2

ARGUMENT ........................................................................ 3

   I.     CALIFORNIA HAS A STRONG PUBLIC POLICY
        IN FAVOR OF PROTECTING HOMEOWNERS
        FROM WRONGFUL FORECLOSURE ............................... 3

        A.   California's Foreclosure Statutes Strike a
             Careful Balance Between Efficiency in
             Foreclosure and Homeowner Protection ..................... 4

        B.   The Recent Enactment of the HBOR Reflects a
             Legislative Intent to Protect Homeowners
             Against Abusive Practices, Including
             Foreclosures by the Wrong Party ............................... 5

   II.    A HOMEOWNER MAY BRING A CAUSE OF
        ACTION FOR WRONGFUL FORECLOSURE ON
        THE BASIS THAT THE ASSIGNMENT OF DEBT
        IS INVALID ....................................................... 7

        A.   The Foreclosing Party's Lack of Authority Is a
             Proper Basis on which the Homeowner May
             Challenge a Foreclosure .......................................... 7

        B.   Because a Void Assignment Deprives a
             Foreclosing Party of the Authority to Foreclose,
             a Homeowner May Bring a Wrongful
             Foreclosure Action on That Basis ........................... 10

        C.   A Homeowner Is Harmed When an Entity
             Without The Authority To Do So Forecloses on
             Her Home .......................................................... 14

        D.   Permitting Wrongful Foreclosure Actions to
             Challenge Invalid Assignments is Sound Policy ...... 17

CONCLUSION ..................................................................... 19

# TABLE OF AUTHORITIES

Page

CASES

*Anderson v. Heart Federal Sav. & Loan Assn.*
(1989) 208 Cal.App.3d 202 ..................................................................... 8

*Bailey v. Wells Fargo Bank*
(D. Mass Bankr. 2012) 468 B.R. 464 ...................................................... 12

*Ball v. Bank of New York*
(W.D. Mo. 2013) 2012 WL 6645695 ........................................................ 12

*Bank of Am. v. La Jolla Group II*
(2005) 129 Cal.App.4th 706 ...................................................................... 8

*Bank of America Assn. v. Reidy*
(1940) 15 Cal.2d 243 ................................................................................ 16

*Barrionuevo v. Chase Bank*
(N.D. Cal. 2012) 885 F.Supp.2d 964 ..................................................... 8, 9

*Caulfield v. Sanders*
(1861) 17 Cal. 569 .................................................................................... 13

*Chavez v. IndyMac Mortgage Services*
(2013) 219 Cal.App.4th 1052 ................................................................ 7, 8

*Cosajay v. Mortgage Electronic Registration Systems*
(D.R.I. 2013) 980 F.Supp.2d 238 ........................................................... 12

*Crist v. House & Osmonson, Inc.*
(1936) 7 Cal.2d 556 .................................................................................. 17

*Culhane v. Aurora Loan Services of Nebraska*
(1st Cir. 2013) 708 F.3d 282 ...................................................... 12, 14, 15

*Dimock v. Emerald Properties LLC*
(2000) 81 Cal.App.4th 868 ................................................................... 9, 18

*Fontenot v. Wells Fargo Bank, N.A.*
(2011) 198 Cal.App.4th 256 ..................................................... 11, 15, 16

*Glaski v. Bank of America*
    (2013) 218 Cal.App.4th 1079 ...................................................... 8, 10, 11

*Gomes v. Countrywide Home Loans, Inc.*
    (2011) 192 Cal.App.4th 1149 ...................................................... 18

*Herrera v. Federal Nat. Mortgage Assn.*
    (2012) 205 Cal.App.4th 1495 ...................................................... 11, 16

*In re Elmore*
    (Bkrtcy. C.D. Cal. 2014) 94 B.R. 670 ........................................ 8

*Jenkins v. JP Morgan Chase Bank*
    (2013) 216 Cal.App.4th 497 ........................................................ 19

*Kan v. Guild Mortgage Co.*
    (2014) 230 Cal.App.4th 736 ........................................................ 19

*Knapp. v. Doherty*
    (2004) 123 Cal.App.4th 76 .......................................................... 14, 16

*Koufos v. U.S. Bank*
    (D. Mass 2013) 939 F.Supp.2d 40 .............................................. 12

*Livonia Properties v. 12840-12976 Farmington Road*
    (6th Cir. 2010) 2010 WL 4275305 .............................................. 12

*Lo v. Jensen*
    (2001) 88 Cal.App.4th 1093 ........................................................ 16

*Lona v. Citibank, N.A.*
    (2011) 202 Cal.App.4th 89 .......................................................... 7

*Lueras v. BAC Home Loans Servicing, LP*
    (2013) 221 Cal.App.4th 49 .......................................................... 15

*Melendrez v. D & I Investment, Inc.*
    (2005) 127 Cal.App.4th 1238 ...................................................... 16

*Miller v. Cote*
    (1982) Cal.App.3d 888, 894 ........................................................ 5

*Moeller v. Lien*
    (1994) 25 Cal.App.4th 822 .......................................................... 4

*Munger v. Moore*
(1970) 11 Cal.App.3d 1 ............................................................... 7

*Pfeifer v. Countrywide Home Loans*
(2012) 211 Cal.App.4th 1250 ..................................................... 8

*Rajamin v. Deutsche Bank*
(2nd Cir. 2014) 757 F.3d 79 ....................................................... 12

*Reinagel v. Deutsche Bank*
(5th Cir. 2013) 735 F.3d 220 ..................................................... 12

*Rufini v. CitiMortgage, Inc.*
(2014) 227 Cal.App.4th 299 ....................................................... 15

*Santens v. Los Angeles Finance Co.*
(1949) 91 Cal.App.2d 197 .......................................................... 9

*Seidell v. Tuxedo Land Company*
(1932) 216 Cal 165 ............................................................. 13, 14

*Siliga v. Mortgage Electronic Registration Systems, Inc.*
(2013) 219 Cal.App.4th 75 ......................................................... 19

*Vournas v. Fidelity Nat. Tit. Ins.*
(1999) 73 Cal.App.4th 668 .......................................................... 9

*Wilson v. HSBC Mortgage Services, Inc.*
(1st Cir. 2014) 744 F.3d 1 ......................................................... 12

**STATUTES**

Business & Profession Code

§ 17204 ................................................................................................ 15

Civil Code

§ 882.020(a) ....................................................................................... 18
§ 2903 ................................................................................................... 5
§ 2905 ................................................................................................... 5
§ 2920 ................................................................................................... 4
§ 2923.3 ................................................................................................ 5
§ 2923.5, subd. (a)(2) ......................................................................... 5
§ 2923.6 ................................................................................................ 5
§ 2923.7 ................................................................................................ 5
§ 2923.55 .............................................................................................. 6
§ 2923.55(b) ......................................................................................... 6
§ 2924 ............................................................................................ 4, 9
§ 2924(a) .............................................................................................. 5
§ 2924(a)(6) ......................................................................................... 6
§ 2924.12 .............................................................................................. 5
§ 2924.17 .............................................................................................. 5
§ 2924c ................................................................................................. 5
§ 2934a ............................................................................................... 18
§ 2936 ................................................................................................... 9
§§ 2939-2941 ....................................................................................... 8

**COURT RULES**

California Rules of Court, rule 8.520(f) ............................................. 3

**OTHER AUTHORITIES**

4 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 10:1 ................. 8

4 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 10:254 .......... 14

Buchwalter, Cause of Action in Tort for Wrongful
    Foreclosure of Residential Mortgage, 52 Causes of Action
    Second (2012) 119, § 2 ................................................................. 4

Senate Rules Committee Conference Report No. 1 on
    Assembly Bill No. 278 (2011-2012 Reg. Session) June 26,
    2012, pp. 23-24 ............................................................................. 6

## INTRODUCTION

This case presents the question of whether, in a wrongful foreclosure action, a homeowner may bring suit on the basis that the foreclosing party lacked the power to foreclose because it did not own the homeowner's debt. In this case, Plaintiff alleges that the foreclosing party did not own Plaintiff's debt because one or more of the assignments of her debt were void. Thus, while Plaintiff owed a debt to someone, she did not owe it to the entity that foreclosed on her home. A homeowner is entitled to bring such a claim, just as she may protect herself against the wrongful invasion of her property interests in any other context.

Permitting a homeowner to assert a wrongful foreclosure claim on this basis is consistent with public policy, existing law, and recent legislative enactments designed to protect homeowners from abuses in the mortgage industry. Homeownership is one of the central goals of our state policymakers for good reason; it brings with it economic and social stability, and a better chance at succeeding in life for our children. Once homeownership is achieved, it must not be taken away lightly. To that end, California's non-judicial foreclosure statutes are designed to carefully balance creditors' rights to an efficient remedy for default against homeowners' rights against unlawful foreclosures.

One of the basic tenets of foreclosure law is that the foreclosing party must have an ownership interest in the debt securing the home that is to be foreclosed upon. There is no reason to depart from this fundamental premise where foreclosure proceeds non-judicially. Whether the correct party is foreclosing is not a technicality. A homeowner experiences real harm when a party with no interest in the debt forecloses because the homeowner has lost her home to the wrong party and is deprived of the opportunity to explore options with the true debt owner. It is impossible to

know whether that homeowner could have avoided foreclosure if the wrong party had not foreclosed; in other words, it matters who owns the debt.

Recognizing wrongful foreclosure actions to challenge foreclosures by the wrong party, such as those resulting from allegedly void debt assignments, is sound policy because it empowers homeowners to protect themselves against "fast and loose" foreclosure practices, incentivizes the mortgage industry to exercise due diligence in the foreclosure process, and helps avoid the confusion and unfairness that would result from more than one party having the power to foreclose. A contrary rule would lead to a legally untenable situation, i.e. that *anyone* can foreclose on a homeowner because *someone* has the right to foreclose.

## STATEMENT OF INTEREST

The Attorney General, as the State's chief law enforcement officer, has responsibility to enforce state law, including laws related to homeowner protection. During California's recent housing bubble and subsequent burst, many mortgage industry abuses came to light, including irresponsible lending practices, careless or negligent review of homeowner records prior to initiating foreclosures (i.e., "robosigning"), and other procedural shortcuts. In addition, the frenetic pace at which debt was assigned from one lender to another caused confusion regarding which entity a homeowner should be working with to make payments, modify her loan, or discuss other options to avoid foreclosure. "Dual-tracking," or the practice of one arm of a bank negotiating a loan modification with a borrower while another arm simultaneously proceeded to foreclosure, was unfortunately commonplace.

The California Department of Justice, in cooperation with other state and federal agencies, made important inroads against these abuses through its participation in the National Mortgage Settlement (NMS) with five of the nation's largest mortgage service providers. The NMS cracked down

on practices like dual-tracking and required banks to provide a single point of contact for borrowers. In addition, the Attorney General supported California's own 2012 legislation, the Homeowner Bill of Rights (HBOR), which included similar provisions and afforded further protections for Californians.

Private wrongful foreclosure actions are a critical supplement to state enforcement of homeowner protection laws, helping to check misconduct in the mortgage industry. Attorney General Kamala D. Harris submits this *amicus curiae* brief pursuant to California Rules of Court, rule 8.520(f), presenting additional arguments, not raised by the parties, explaining why homeowners may challenge whether the entity purporting to foreclose is the true holder of the debt.

**ARGUMENT**

## I. CALIFORNIA HAS A STRONG PUBLIC POLICY IN FAVOR OF PROTECTING HOMEOWNERS FROM WRONGFUL FORECLOSURE

Protecting homeownership is a significant state interest. The public benefits of homeownership are far-reaching and well-known; they include promoting socio-economic mobility, fueling California's economy, ensuring stable home environments for residents, curbing urban blight, and promoting children's health and safety, among others. (See generally R. Cohen, Center for Housing Policy, Insights from Housing Policy Research: The Impacts of Affordable Housing on Health: A Research Summary (May 2011).) California law provides critical protections to homeowners to help achieve these important policy goals.

### A. California's Foreclosure Statutes Strike a Careful Balance Between Efficiency in Foreclosure and Homeowner Protection

California's non-judicial foreclosure statutes (Civ. Code, § 2920 et seq.)[1] reflect a carefully crafted balance between creating an efficient foreclosure process and shielding homeowners from overzealous or improper foreclosures. California courts have recognized that the purpose behind California's non-judicial foreclosure statutes is three-fold: (1) to provide the creditor with a quick, inexpensive, and efficient remedy against the debtor; (2) to protect the debtor against the wrongful loss of his or her property; and (3) to ensure that a properly conducted sale is final and conclusive as to a bona fide purchaser. (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830.)

With respect to the first goal—an efficient remedy for creditors—non-judicial foreclosures provide banks with a clear and expeditious process for obtaining the security on their loans in the case of borrower default. Under these statutes, the foreclosing party (i.e., the lender or its agent) initiates private proceedings directly against the borrower without the need for judicial oversight. (§ 2924 et seq.) Non-judicial foreclosure tends to be a more efficient and less expensive process than judicial foreclosure because there is no court involvement, neither an appraisal nor judicial valuation is required, and the debtor has no post-sale right of redemption. (Buchwalter, *Cause of Action in Tort for Wrongful Foreclosure of Residential Mortgage* (2012) 52 Causes of Action 2d 119, § 2.)

At the same time, the non-judicial foreclosure laws provide an array of safeguards to help ensure that a borrower does not wrongly lose his or her home. For example, the statutes impose detailed noticing and service

---

[1] All further references are to the Civil Code unless otherwise noted.

requirements, which if not strictly followed, result in a voidable foreclosure sale. (§ 2923.3 et seq.; *Miller v. Cote* (1982) Cal.App.3d 888, 894 ["a trustee's sale based on a statutorily deficient notice of default is invalid"].) In addition, homeowners are afforded multiple opportunities in which to cure a default. The owner of the debt, or his agent, must give the homeowner: (1) a three-month waiting period after the notice of default (§ 2924(a)); (2) another opportunity to bring loans current during a five-day reinstatement period prior to sale (§ 2924c); and (3) the right to invoke the "equity of redemption" or total payoff prior to sale, which gives the homeowner one final chance to avoid foreclosure (§§ 2903, 2905). In addition, prior to foreclosure, the owner of the debt or its agent must have contacted the homeowner to discuss loan modification options. (§ 2923.5, subd. (a)(2)). In other words, once homeownership is established, the non-judicial foreclosure statutes ensure that a homeowner will have every reasonable opportunity to preserve it.

**B.    The Recent Enactment of the HBOR Reflects a Legislative Intent to Protect Homeowners Against Abusive Practices, Including Foreclosures by the Wrong Party**

As noted above, the HBOR was California's attempt to address a range of misconduct in the mortgage industry. HBOR imposed numerous protections for the homeowner, including: (1) a restriction on "dual-track" foreclosure, which prohibits mortgage servicers from advancing the foreclosure process when a loan modification in underway (§ 2923.6); (2) a requirement that lending institutions provide a single point of contact for the homeowner (§ 2923.7); (3) a requirement that loan servicers have reviewed "competent and reliable evidence" of default prior to initiating foreclosure, i.e., an anti-robosigning protection (§ 2924.17); and (4) a private right of action for plaintiffs seeking to enforce certain protections within the act (§ 2924.12).

The HBOR also enacted two reforms aimed at ensuring that only the proper party may foreclose on a mortgage or deed of trust. Newly added Civil Code section 2923.55 requires large lending institutions, prior to recording a notice of default, to provide a written notice to homeowners allowing them to request a copy of the original promissory note and any applicable assignments. (§ 2923.55(b).) In addition, newly added Civil Code section 2924(a)(6) provides that a foreclosing party must be the "holder of the beneficial interest" in the debt:

> No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest.

Read together, these sections confirm the Legislature's intent to ensure that the party foreclosing on a homeowner is the "holder" of the debt and can demonstrate proof of ownership if called upon to do so.[2]

While the HBOR reforms may have taken effect only recently, the provisions regarding debt ownership codify existing law. In California, it has always been the rule that only a debt owner or its agent has authority to foreclose, as discussed more fully below.

---

[2] The problem of entities foreclosing without authority to do so was before the Legislature when it enacted these sections. (See, e.g., Sen. Rules Com. Conference Rep. No. 1 on Assembly Bill No. 278 (2011-2012 Reg. Session) June 26, 2012, pp. 23-24 [bank personnel testified about foreclosures initiated by parties without legal authority].)

## II.  A HOMEOWNER MAY BRING A CAUSE OF ACTION FOR WRONGFUL FORECLOSURE ON THE BASIS THAT THE ASSIGNMENT OF DEBT IS INVALID

Consistent with the public policy in favor of preserving homeownership, a plaintiff can properly bring a wrongful foreclosure action based on the allegation that the foreclosing party does not own the debt, i.e., the mortgage or the beneficial interest in the deed of trust. Contrary to Defendants' view, a plaintiff, even one in default, suffers real harm when a party without the right to do so forecloses on her home. Accordingly, a homeowner may bring a wrongful foreclosure action on the basis that the wrong party has foreclosed, whether due to an invalid assignment of the debt or for any other reason.

### A.  The Foreclosing Party's Lack of Authority Is a Proper Basis on which the Homeowner May Challenge a Foreclosure

A wrongful foreclosure action is a common law tort claim; it is an equitable action to set aside a foreclosure sale, or an action for damages resulting from the sale, on the basis that the foreclosure was improper. (See, e.g., *Munger v. Moore* (1970) 11 Cal.App.3d 1, 7-8.) The elements of a wrongful foreclosure claim are: (1) the defendant caused an illegal, fraudulent, or willfully oppressive sale of the property pursuant to a mortgage or deed of trust; (2) plaintiff suffered prejudice or harm; and (3) plaintiff tendered the amount of the secured indebtedness or is excused from tendering. (*Chavez v. IndyMac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1062; *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112.)[3]

---

[3] Tender is typically excused in cases where: (1) the underlying debt is void, (2) the foreclosure or trustee's deed is void on its face, (3) a counterclaim offsets the amount due, (4) specific circumstances make it

(continued...)

A foreclosure may be "wrongful" for a number of reasons. For
instance, the foreclosing entity may have failed to strictly comply with the
notice or procedural requirements imposed by California's non-judicial
foreclosure statutes or by the terms of the deed of trust. (See, e.g.,
*Anderson v. Heart Federal Sav. & Loan Assn.* (1989) 208 Cal.App.3d 202,
211; *Pfeifer v. Countrywide Home Loans* (2012) 211 Cal.App.4th 1250,
1267). It might also be wrongful because the plaintiff is not actually in
default. (See, e.g., *Bank of Am. v. La Jolla Group II* (2005) 129
Cal.App.4th 706, 712.)

Another example—and the one relevant to this case—is that the
foreclosure may be wrongful because it was initiated by a party without the
lawful right to do so. (See, e.g., *Glaski v. Bank of America* (2013) 218
Cal.App.4th 1079, 1094; *Barrionuevo v. Chase Bank* (N.D. Cal. 2012) 885
F.Supp.2d 964, 972.) To legally foreclose on a person's home, the
foreclosing party must be the true owner of the debt securing the property
in question. A mortgage or deed of trust creates a lien on the secured
property; this lien is contractual in nature but is also a property right.
(4 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 10:1, p. 25; see also *In re
Elmore* (Bkrtcy. C.D. Cal. 2014) 94 B.R. 670, 676 [creditor has a
contractual right to foreclose, also known as a lien, which is a property
right].) Thus, the execution of a mortgage or deed of trust reflects a
transfer of some of the "bundle of rights" that a homeowner has in his or
her property, and a homeowner receives a reconveyance of those rights
when he or she pays off the loan. (§§ 2939-2941.) Prior to reconveyance,

---

(...continued)
inequitable to enforce the debt, or (5) the foreclosure has not yet occurred.
(*Chavez, supra,* 219 Cal.App.4th at p. 1062.)

only those having ownership in the mortgage or deed of trust may exercise the rights flowing under it, including the right to foreclose.[4]

This basic principle—that only a true debt owner or its agent has lawful authority to foreclose—has been long recognized in California law. (See, e.g., *Santens v. Los Angeles Finance Co.* (1949) 91 Cal.App.2d 197, 202 ["the trust deed is a mere incident of the debt and could only be foreclosed by the owner of the note;" *Dimock v. Emerald Properties LLC* (2000) 81 Cal.App.4th 868, 875 [interpreting non-judicial foreclosure statutes to codify existing law prior to 1935, which permits only the recorded trustee to foreclose at a given time].) This flows from the concept that the debt (i.e., a promissory note) and the security interest (i.e., a mortgage or deed of trust) are interconnected instruments that function and move together. (§ 2936 ["[t]he assignment of a debt secured by a mortgage carries with it the security"].)

Because the mortgage or deed of trust secures the debt, only the debt owner (or the debt owner's agents) can enforce it. (See § 2924 [foreclosure process may be initiated by "the trustee, mortgagee, or beneficiary, or any of their authorized agents"].) Thus, a non-debt-owner acts "wrongfully" when it forecloses on a deed of trust to which it is not the beneficiary, and a plaintiff can bring a wrongful foreclosure action challenging that conduct. (See, e.g., *Barrionuevo, supra*, 885 F.Supp.2d at p. 972 [plaintiff may

---

[4] The rule that only the debt owner has the power to foreclose is not diminished by the California statutory scheme permitting a deed of trust model as opposed to a traditional mortgage. Under the deed of trust model, the debt owner retains the power to foreclose as the deed of trust's beneficiary. The trustee merely acts at the debt owner's direction. The trustee is not a "true trustee" and owes no fiduciary obligations; he or she merely acts as an agent for the debt owner-beneficiary. (*Vournas v. Fidelity Nat. Tit. Ins.* (1999) 73 Cal.App.4th 668, 677.)

"properly assert that only the 'true owner' or 'beneficial holder' of a Deed
of Trust can bring to completion a nonjudicial foreclosure under California
law"];) *Glaski, supra*, 218 Cal.App.4th at p. 1094 [agreeing with
*Barrionuevo*'s assessment of California law but requiring that facts
regarding a lack of debt ownership be pled with some specificity].)

> **B.    Because a Void Assignment Deprives a Foreclosing
> Party of the Authority To Foreclose, a Homeowner
> May Bring a Wrongful Foreclosure Action on That
> Basis**

A defect in the chain of title that renders a debt assignment void is one
way in which a foreclosing party may lack the lawful authority to foreclose.
One California appellate decision has directly addressed whether a
wrongful foreclosure plaintiff may assert the foreclosing party's lack of
power to foreclose in the specific context of allegedly void assignments,
and found in favor of the plaintiff. In *Glaski v. Bank of America, supra*,
218 Cal.App.4th 1079, the court held that a wrongful foreclosure plaintiff
had standing to challenge an assignment of his debt that was allegedly
"void" as opposed to merely voidable. (*Id.* at p. 1097.) *Glaski* recognized
the allegation that an assignment was void as a subset of the claim that the
party attempting to foreclose must have the power to do so; that power
flows from being the true owner of the debt.

Thus, the *Glaski* court correctly characterized plaintiff's claim as
based on "the theory that a foreclosure was wrongful *because it was
initiated by a nonholder of the deed of trust*" (italics added), which the
court acknowledged has also been phrased as (1) the foreclosing party
lacking standing to foreclose, or (2) a break in the chain of title. (*Glaski,
supra*, 218 Cal.App.4th at p. 1093.) In such a case, the court found that the
plaintiff's status as non-party to the contract was not determinative; rather,
the plaintiff's ability to challenge the foreclosure turned on the nature of the
assignment:

> 'Where an assignment is merely voidable at the election of the
> assignor, third parties, and particularly the obligor,
> cannot...successfully challenge the validity or effectiveness of
> the transfer [citing 7 Cal.Jur.3d (2012) Assignments, § 43,
> p. 70].' This statement implies that a borrower can challenge an
> assignment of his or her note and deed of trust if the defect
> asserted would *void* the assignment.

(*Id.* at pp. 1094-1095, original italics.) In other words, *Glaski* concluded

that a homeowner does have standing to challenge an assignment that is

allegedly void, as opposed to merely voidable, because it would invalidate

the transfer regardless of whether or not the parties to the assignment

elected to challenge it.[5]

In a factually analogous case, the First Circuit further explained the

reasoning for finding that a wrongful foreclosure plaintiff has standing to

challenge an allegedly void assignment:

> The underlying reasoning behind this distinction is
> straightforward. A homeowner in Massachusetts—even when
> not a party to or third party beneficiary of a mortgage
> assignment—has standing to challenge the assignment as void
> because success on the merits would prove the purported
> assignee is not, in fact, the mortgagee and therefore lacks any
> right to foreclose on the mortgage. [Citations] ...

> That same homeowner, though, lacks standing to claim the
> assignment is voidable because the assignee still would have
> received legal title vis-à-vis the homeowner. Thus, even
> successfully proving that the assignment was voidable would not

---

[5] Some cases have held that a wrongful foreclosure plaintiff must
allege not only the reason why the foreclosing party lacks authority, but
also that there is no other possible theory under which the party had the
right to foreclose. These cases appear to impose a heightened pleading
requirement on plaintiffs, contrary to the general rule requiring only notice
pleading. (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th
256, 272; *Herrera v. Federal Nat. Mortgage Assn.* (2012) 205 Cal.App.4th
1495, 1505.)

affect the rights as between those two parties or provide the homeowner with a defense to the foreclosure action.

(*Wilson v. HSBC Mortgage Services, Inc.* (1st Cir. 2014) 744 F.3d 1, 9.) As the *Wilson* court discussed, if the assignment is merely voidable, the aggrieved parties to the assignment can undo the transaction at their option. An additional step—beyond the homeowner's control—is needed to invalidate the assignment and subsequent foreclosure. In contrast, a finding that an assignment is void results in the foreclosing entity lacking the power to foreclose. A homeowner is permitted to challenge the foreclosure on that basis, just as she can challenge any foreclosure on the ground that the foreclosing entity does not own the debt. (See also *Reinagel v. Deutsche Bank* (5th Cir. 2013) 735 F.3d 220, 225 [following the majority rule in Texas that the debtor may defend against an assignee's collection "on any ground which renders the assignment void"].)[6]

Because the voidness of an assignment negates ownership of the debt, a wrongful foreclosure plaintiff is not required to demonstrate privity of contract with the assignor and assignee. Defendants in this case take the position that a homeowner lacks standing to bring a wrongful foreclosure suit on the basis of an allegedly void debt assignment because the homeowner is not a party or privy to the contract assigning her debt from

---

[6] Federal cases addressing this issue have gone in both directions. In addition to *Wilson* and *Reinagel*, federal cases finding that a homeowner has standing in this context include: *Culhane v. Aurora Loan Services of Nebraska* (1st Cir. 2013) 708 F.3d 282; *Cosajay v. Mortgage Electronic Registration Systems* (D.R.I. 2013) 980 F.Supp.2d 238; *Koufos v. U.S. Bank* (D. Mass 2013) 939 F.Supp.2d 40; *Ball v. Bank of New York* (W.D. Mo. 2013) 2012 WL 6645695; and *Bailey v. Wells Fargo Bank* (D. Mass Bankr. 2012) 468 B.R. 464. Federal cases finding that a homeowner lacks standing include: *Rajamin v. Deutsche Bank* (2nd Cir. 2014) 757 F.3d 79, 86; and *Livonia Properties v. 12840-12976 Farmington Road* (6th Cir. 2010) 2010 WL 4275305.

one lending institution to another, and so cannot enforce that contract. (See Respondents' Answer Brief on the Merits (RB), p. 23, citing *Martinez v. Socoma Cos*. (1974) 11 Cal.3d 394, 400 [interpreting California law to exclude "*enforcement of a contract* by persons who are only incidentally or remotely benefitted by it," italics added].) A wrongful foreclosure plaintiff, however, is not attempting to enforce the obligations of the debt assignment contract. A tort claim for wrongful foreclosure is not a breach-of-contract action, and therefore privity has no place in the analysis. Rather, the voidness of a contract (i.e., the assignment) is the predicate fact on which the plaintiff asserts that the foreclosing party lacked the power to foreclose.

The two California Supreme Court cases on which Defendants rely in support of their theory that a homeowner may not challenge an invalid debt assignment are inapposite. Defendants cite to *Caulfield v. Sanders* (1861) 17 Cal. 569, for the proposition that a "debtor could not challenge an assignee's demand for payment by alleging that the assignment was unauthorized and lacked consideration, and was thus void." (RB, p. 24.) Not only is the *Caulfield* decision not a wrongful foreclosure case (it concerned a debt for printing and advertising services), but it does not involve a claim that the collecting party did not own the debt when it attempted to collect on it. Rather, the debtor asserted that the debt was assigned after collection commenced, and then only for nominal consideration without the consent of all partners of the firm selling the debt. (*Caulfield, supra*, 17 Cal. 569 at p. 572.) The Court concluded that these facts alone would not excuse the debtor from liability, but the Court did not suggest that the result would have been the same in the case of a void assignment (in fact, the word "void" does not appear in the decision) or that a non-creditor could demand payment at any given time. (See *ibid*.) The other cited case, *Seidell v. Tuxedo Land Company* (1932) 216 Cal 165, simply holds that an assignment is presumed authorized when made by the

prior owner or prior owner's agent, and when the debtor offers no evidence
to the contrary. (*Id.* at p. 165.)

In sum, a wrongful foreclosure plaintiff may assert that an assignment
of her mortgage or deed of trust is void, even though she is not a party to
the assignment contract, because, if true, the result would be that the party
attempting to foreclose on her lacks authority to do so.

## C.    A Homeowner Is Harmed When an Entity Without the Authority To Do So Forecloses on Her Home

A homeowner may challenge a void assignment because he or she is
harmed anytime an entity without the lawful authority to foreclose does so.
In order to state a claim for wrongful foreclosure, California courts have
traditionally required that a plaintiff demonstrate "prejudice," or a causal
link between the wrongful misconduct and resulting harm. (*Knapp. v.
Doherty* (2004) 123 Cal.App.4th 76, 86; 4 Miller & Starr, Cal. Real Estate
(3d ed. 2000) § 10:254, p. 989-990.)  When a non-debt holder forecloses, a
homeowner is harmed because she has lost her home to an entity with no
legal right to take it.  If not for the void assignment, the incorrect party
would not have pursued a wrongful foreclosure.  Therefore the void
assignment is the "but for" cause of the homeowner's injury and all she is
required to allege.

The First Circuit's decision in *Culhane v. Aurora Loan Services of
Nebraska* (1st Cir. 2013) 708 F.3d 282 is on point.  There, the court held
that the plaintiff had properly alleged a causal link between the assignment
in question and her injuries, even though she was behind in her payments:

> [T]here is a direct causal connection between the challenged
> action and the identified harm.  The action challenged here
> relates to [entity's] right to foreclose by virtue of the assignment
> from MERS.  The identified harm—the foreclosure—can be
> traced directly to [entity's] exercise of the authority purportedly
> delegated by the assignment.

(*Id.* at pp. 289-290; see also *Lueras v. BAC Home Loans Servicing, LP*
(2013) 221 Cal.App.4th 49, 82-83 [finding causal connection between
bank's deceptive practices and homeowner's foreclosure even though
homeowner could not otherwise demonstrate ability to pay debt].) The
critical issue is not the plaintiff's ability to pay; rather, the issue is whether
the defendant's conduct resulted in the plaintiff's harm, i.e., a foreclosure
that was wrongful because it was initiated by the wrong party.

Moreover, the identity of the party having authority to foreclose on a
homeowner matters. For example, if an invalid assignment had not
occurred, the original lender may have exercised more leniency with missed
payments or worked out a loan modification plan with the homeowner.
And as described above, foreclosures have moved at an unprecedented pace
in recent years. It is possible that another lender would have engaged in a
slower process that would have given the homeowner more time to improve
his financial situation or seek other alternatives to avoid foreclosure. (See
*Rufini v. CitiMortgage, Inc.* (2014) 227 Cal.App.4th 299, 311 [finding
actual injury under Bus. & Prof. Code, § 17204 because plaintiff lost "the
opportunity to pursue other means of avoiding foreclosure" due to
defendants' allegedly deceptive practices].) Although a plaintiff need not
allege such facts (which would, in many cases, be difficult if not impossible
for the plaintiff to do without knowing the inner-workings of various
banking institutions), these examples demonstrate that being foreclosed on
by the wrong party can result in tangible harm.

Cases reaching the contrary result overlook this harm by incorrectly
focusing on the plaintiff's ability to have avoided *any* foreclosure. For
example, in *Fontenot, supra*, 198 Cal.App.4th at p. 272, the court found
that the plaintiff had failed to demonstrate prejudice resulting from an
allegedly improper transfer of her debt because the plaintiff: (1) conceded
she was in default; (2) did not allege that the transfer interfered with her

ability to pay her debt; and (3) did not allege that the original lender would have refrained from foreclosure. (*Fontenot, supra*, 198 Cal.App.4th at p. 272.) Similarly, in *Herrera*, the court found that the plaintiffs could not demonstrate prejudice where they had agreed to assignments of their debt, had defaulted on their loan, and did not tender payment or cure the default. (*Herrera, supra*, 205 Cal.App.4th at p. 1508.) In essence, *Fontenot* and *Herrera* interpret "prejudice" narrowly to mean that the plaintiff must demonstrate that she could have avoided *any* foreclosure. These cases ignore the fact that whether a plaintiff had the financial means to avoid the instant wrongful foreclosure has nothing to do whether she could have avoided foreclosure in another context; and because the wrongful foreclosure occurred, the plaintiff can never know.

The cases that *Fontenot* and *Herrera* cite to in support of this narrow interpretation of prejudice are cited out of context. For instance, *Fontenot* cites to *Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, in which the court simply found that plaintiffs could not demonstrate wrongful foreclosure from a low bid price alone, but also had to "prove a prejudicial irregularity." (*Id.* at p. 1258.) Another cited case, *Knapp. v. Doherty, supra,* 123 Cal.App.4th at p. 86, held that plaintiffs were not "prejudiced" by a notice of default that was sent earlier than statutorily required, and that therefore there was no "material" triable issue of fact. Finally, *Lo v. Jensen* (2001) 88 Cal.App.4th 1093, 1097-1098, merely stands for the proposition that a foreclosure sale could be set aside in the case of fraudulent collusion among bidders; the word "prejudice" does not appear in the decision.[7] None of these cases suggest that a homeowner

---

[7] The cases cited in Defendants' brief (RB, p. 33) are similarly inapposite—in fact, even further off point—and shed no light on the matter of prejudice. In *Bank of America Assn. v. Reidy* (1940) 15 Cal.2d 243, 248,

(continued...)

should be required to show that she could have avoided foreclosure under any circumstances.

### D.    Permitting Wrongful Foreclosure Actions to Challenge Invalid Assignments is Sound Policy

Allowing homeowners to sue for wrongful foreclosure based on allegations that the foreclosing entity lacks an ownership interest in the mortgage or deed of trust is sound public policy. As noted above, public enforcement tools, while a critical part of protecting homeowners, are not sufficient to address the far-reaching abuses that occurred in the wake of the housing bubble burst. In addition, because there is no court oversight in a non-judicial foreclosure, it is important for there to be a way to challenge irregularities in that process. Empowering homeowners—who have the most at stake and the most to lose—with the ability to challenge improper loan assignments and other defects is the most direct way to accomplish that goal. Moreover, permitting such a cause of action would incentivize lending institutions to employ due diligence with respect to ensuring proper assignments and confirming who currently holds a loan.

A contrary rule, i.e., one that that would prohibit homeowners from bringing suit against entities that foreclose without the lawful authority to do so, would lead to incongruous results. Under Defendants' conception of the proper rule, a defaulting homeowner would have no ability to challenge

---

(...continued)
the Court declined to set aside a sale at the behest of a junior lien holder based on alleged fraud in the bidding process when the seller had acted legally; there is no discussion of "standing" or "prejudice" anywhere in the decision. *Crist v. House & Osmonson, Inc.* (1936) 7 Cal.2d 556, 559-560, involved a quiet title action, which held that a seller could not set aside a sale to bona fide purchaser based on a slightly inaccurate property description that prejudiced no one but the buyer. These cases have no relevance to the elements of a wrongful foreclosure action brought by a homeowner.

a foreclosure by one bank simply because *another bank* has the right to take her home. Thus, under this view, if a third party claimed a right of occupancy or access premised on a lease or easement that a homeowner granted to someone else, the homeowner could not bring a trespass or eviction action against the third party because the homeowner had granted lease or easement rights to *someone*. This would be an absurd result.

At the same time, if more than one party claimed the power to foreclose at any given time, the practical effect would be to put the homeowner in jeopardy of being foreclosed upon by multiple parties.[8] As one Court of Appeal put it in an analogous context, "there simply cannot be at any given time more than one person with the power to conduct a sale under a deed of trust." (*Dimock v. Emerald Properties LLC, supra*, 81 Cal.App.4th at p. 875 [interpreting § 2934a].) A contrary result "would create inestimable levels of confusion, chaos and litigation." (*Ibid.*) For this important reason, and the others described above, only the true debt owner or its agents has the power to foreclose.

Any potential concerns about permitting homeowners to preemptively challenge a would-be foreclosing party's authority prior to the initiation of foreclosure proceedings are not present in the instant case and others like it, which take place after a foreclosure has occurred. (See, e.g., *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1154-57 [holding that borrower could not bring a pre-foreclosure action to

---

[8] The risk of foreclosure by a party that does not presently own a debt is compounded by the long term of many home loans, and by the lengthy statute of limitations for foreclosure on a deed of trust, which may extend for up to 60 years. (See § 882.020(a).) This is not to suggest that the right to foreclose may not rightfully pass from one entity to another, but that the sale and re-sale of loans over a lengthy period of time increase the risk of error and confusion, and underscore the importance of providing homeowners with a right to challenge unlawful foreclosures.

determine whether the owner of a note had authorized its nominee to initiate foreclosure proceedings because, *inter alia*, homeowner did not have right to demand proof of authority to undertake a foreclosure]; *Jenkins v. JP Morgan Chase Bank* (2013) 216 Cal.App.4th 497, 511 [homeowner did not have standing to challenge a foreclosing party's lack of authority in a declaratory relief action, expressing concern with creating a "preemptive" cause of action that would allow homeowners to demand proof of authority prior to the initiation of foreclosure];[9] see also *Kan v. Guild Mortgage Co.* (2014) 230 Cal.App.4th 736 [acknowledging the distinction between pre-foreclosure and post-foreclosure cases]; but see *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 82 [defining action as "preemptive" when notice of sale was recorded but the sale had not yet taken place, and when plaintiff's claims were non-specific].)

Because the wrongful foreclosure claims at issue in this case do not involve preemptive challenges, there is no similar policy concern about thwarting creditors' ability to efficiently foreclose on their security, and therefore the general rule holds: a homeowner can bring a wrongful foreclosure action on the basis that the foreclosing party lacks the power to foreclose because it does not own the debt.

---

[9] The *Jenkins* court found, contrary to *Glaksi*, that the plaintiff lacked standing to allege non-compliance with a PSA because the plaintiff was neither a party to, or third-party beneficiary of, the PSA. But since the Jenkins court had already held the plaintiff's claim was prohibited as a preemptive action, the finding regarding standing was dicta. (*Jenkins, supra*, 216 Cal.App.4th at pp. 513-14.)

## CONCLUSION

The Court should hold that homeowners may bring a wrongful foreclosure action on the basis that the party foreclosing on them lacks the power to foreclose because they do not own the debt, either due to an allegedly void assignment or for any other legally cognizable reason.

Dated: April 17, 2015            Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
NICKLAS A. AKERS
Senior Assistant Attorney General
MICHELE VAN GELDEREN
Supervising Deputy Attorney General


SANNA R. SINGER
Deputy Attorney General
*Attorneys for Amicus Curiae*
*the Attorney General of California*

SD2014513048
71067129.doc

## CERTIFICATE OF COMPLIANCE

I certify that the attached **AMICUS BRIEF OF THE ATTORNEY GENERAL IN SUPPORT OF PLAINTIFF AND APPELLANT TSVETANA YVANOVA** uses a 13 point Times New Roman font and contains 5,982 words.

Dated:  April 17, 2015

KAMALA D. HARRIS
Attorney General of California

SANNA R. SINGER
Deputy Attorney General
*Attorneys for Amicus Curiae*
*the Attorney General of California*

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **Tsvetana Yvanova v. New Century Mortgage Corporation et al**
Case No.:      **S218973**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

On <u>April 17, 2015,</u> I served the attached **AMICUS BRIEF OF THE ATTORNEY GENERAL IN SUPPORT OF PLAINTIFF AND APPELLANT TSVETANA YVANOVA** by placing a true copy thereof enclosed in a sealed envelope in the internal mail collection system at the Office of the Attorney General at 110 West A Street, Suite 1100, P.O. Box 85266, San Diego, CA 92186-5266, addressed as follows:

Richard L. Antognini
LAW OFFICES OF RICHARD L
ANTOGNINI
819 I Street
Lincoln, CA 95648
*Attorneys for Plaintiff and Appellant*

Eric D. Houser
Robert W. Norman, Jr.
HOUSER & ALLISON, APC
3780 Kilroy Airport Way, Suite 130
Long Beach, CA 90806
*Attorneys for Defendants/Respondents*

K. Lee Marshall
Nafiz Cekirge
Andrea N. Winternitz
Sarah Samuelson
BRYAN CAVE LLP
560 Mission Street, Ste. 2500
San Francisco, CA 94105
*Attorneys for Defendants/Respondents*

California Court of Appeal
Second Appellate District- Division One
Ronald Reagan State Building
300 South Spring Street
2nd Floor, North Tower, Rm. 2217
Los Angeles, CA 90013

Los Angeles County Superior Court
Attn: Hon. Russell S. Kussman
6230 Sylmar Avenue
Van Nuys, CA 91401

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on April 17, 2015, at San Diego, California.

_____
Charlette Sheppard
Declarant

_____
Signature

SD2014513048 / 71067138.doc