Exhibit 1

Balfe & Holland, P.C.
135 Pinelawn Road, Suite 125 North
Melville, New York 11747

**Hearing Date and Time:**
**September 8, 2014, 10:00 a.m.**

UNITED STATE BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------

|                                   |   |                                |
|-----------------------------------|---|--------------------------------|
| In re:                            | ) | Case No. 12-12020 (MG)         |
|                                   | ) |                                |
| RESIDENTIAL CAPITAL, LLC et al.   | ) | Chapter 11                     |
|                                   | ) |                                |
| Debtor,                           | ) | Jointly Administered           |

-------------------------------------------------------

### NOTICE OF MOTION FOR RELIEF FROM AUTOMATIC STAY

**PLEASE TAKE NOTICE THAT** HSBC BANK USA, N.A. AS TRUSTEE FOR THE REGISTERED HOLDERS OF ACE SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2005-HE3, ASSET BACKED PASS-THROUGH CERTIFICATES (hereinafter "HSBC") will move this Court at a hearing on the motion to be held before the Hon. Martin Glenn, United States Bankruptcy Judge, at the United State Bankruptcy Court for the Southern District of New York located at One Bowling Green, Room 501, New York, NY 10004 on the 8th day of September, 2014 for an Order granting HSBC relief from the automatic stay pursuant to 11 U.S.C. §362(d)(1) and (2) in order to resume litigation pending in the Supreme Court of the State of New York, County of Kings.

**PLEASE TAKE FURTHER NOTICE** that unless a written objection to the Motion is filed with this Court and the undersigned in the manner prescribed by the Court in its Case Management Order filed May 23, 2012 (Document No. 141) on or before September 1, 2014, the Court may grant the relief requested in the Motion without the need for a formal hearing.

Dated: Melville, New York
        August 15, 2014

Yours, Etc.

BALFE & HOLLAND, P.C.

By:        /s/   *Lee E. Riger*
           Lee E. Riger (LR 1459)
           135 Pinelawn Road, Suite 125 North
           Melville, NY 11747
           (631) 501-1000
           lriger@balfeholland.com

*Attorneys for HSBC*

TO:     Howard W. Rachlin, Esq.
        Attorney for Lucienne Lombard
        112-41 Queens Boulevard, Suite 201
        Forest Hills, NY 11375

        Anna M. Hershenberg, Esq.
        Herrick Feinstein, LLP
        Attorneys for Chicago Title Insurance Company
        and Decision 200 Real Estate Services, Inc.
        2 Park Avenue
        New York, NY 10016

        Evan W. Bolla, Esq.
        Furman Kornfeld & Brennan
        Attorneys for Benjamin Jacob Turner
        61 Broadway, 26th Fl.
        New York, NY 10006

        Matthew R. Jaeger, Esq.
        L'Abbate Balkin Colavita & Contini, LLP
        Attorneys for Atara Hirsch-Twersky
        1001 Franklin Avenue, 3rd Fl.
        Garden City, NY 11530

        Linda S. Charet, Esq.
        Federal Deposit Insurance Corporation
        New York Legal Services Office
        Attorneys for Federal Deposit Insurance Corporation,
        receiver for First National Bank of Nevada
        350 Fifth Avenue, Suite 1200
        New York, NY 10118

        Allan I. Young, Esq.
        Porzio Bromberg and Newman, P.C.
        Attorneys for First National Bank of Nevada
        156 West 56th Street
        New York, NY 10019

        Schuyler B. Kraus, Esq.
        Hinshaw & Culbertson, LLP
        Attorneys for Defendant
        Residential Funding Corporation
        800 Third Avenue, 13th Fl.
        New York, NY 10022

Office of the United States Trustee for the Southern District of New York
33 Whitehall Street, 21st Fl.
New York, NY 10004
Attn:  Tracy Hope Davis, Esq., tracy.davis2@usdoj.gov
       Brian Matsumoto, Esq., brian.matsumoto@usdoj.gov
       Linda Riffkin, Esq., linda.riffkin@usdoj.gov

United State Department of Justice
Eric H. Holder, Attorney General
950 Pennsylvania Avenue NW
Washington, DC 20530
askdoj@usdoj.com

New York State Office of the Attorney General
The Capitol
Albany, NY 12224-0341
Attn:  Nancy Lord, Esq., nancy.lord@oag.state.ny.us
       Enid Stuart, Esq., enid.stuart@oag.state.ny.us

United State Attorney for the Southern District of New York
Civil Division
86 Chambers St., 3rd Fl.
New York, NY 10007
Attn:  Joseph Cordaro, Esq., joseph.cordaro@usdoj.gov

Residential Capital, LLC
1177 Avenue of the Americas
New York, NY 10036
Attn:  Tammy Hamzehpour, tammy.hamzehpour@gmacrescap.com

Morrison & Foerster LLP
*Attorneys for Debtor*
1290 Avenue of the Americas
New York, NY
Attn:  Larren M. Nashelsky, Esq., lnashelsky@mofo.com
       Gary S. Lee, Esq., glee@mofo.com
       Lorenzo Marinuzzi, Esq., lmarinuzzi@mofo.com

Kramer Levin Naftalis & Frankel LLP
*Attorneys for Creditors' Committee*
1177 Avenue of the Americas
New York, NY 10036
Attn:   Kenneth H. Eckstein, Esq., keckstein@kramerlevin.com
        Thomas Moers Mayer, Esq., tmayer@kramerlevin.com
        Douglas H. Mannal, Esq., dmannal@kramerlevin.com
        Jeffrey Trachtman, Esq., jtrachtman@kramerlevin.com

Citibank, N.A.
390 Greenwich Street, 6th Floor
New York, NY 10013
Attn:   Bobbie Theivakurnaran, bobbie.theivakurnaran@citi.com

Kirkland & Ellis
*Attorneys for Ally Financial Inc.*
601 Lexington Avenue
New York, NY 10022
Attn:   Richard Cieri, Esq., richard.cieri@kirkland.com
        Stephen E. Hessler, Esq., stephen.hessler@kirkland.com
        William B. Solomon, william.b.solomon@ally.com
        Timothy Devine, timothy.devine@ally.com
        projectrodeo@kirkland.com

Deutsche Bank Trust Company Americas
25 DeForest Avenue
Summit, NJ 07901
Attn:   Kevin Vargas, kevin.vargas@db.com

The Bank of New York Mellon
Asset Backed Securities Group
101 Barclay Street, 4W
New York, NY 10286

Kelley Drye & Warren LLP
*Attorneys for U.S. Bank, N.A.*
101 Park Avenue
New York, NY 10178
Attn:   James S. Carr, Esq. and Eric R. Wilson, Esq.
        kdwbankruptcydepartment@kelleydrye.com

Skadden Arps Slate Meagher & Flom LLP
*Attorneys for Barclays Bank PLC*
4 Time Square
New York, NY 10036
Attn:    Jonathan H. Hofer, Esq., jhofer@skadden.com
         Ken Ziman, Esq., ken.ziman@skadden.com
         Sarah M. Ward, Esq., sarah.ward@skadden.com
         Suzanne D.T. Lovett, Esq., suzanne.lovett@skadden.com

Fannie Mae
1835 Market St., Suite 2300
Philadelphia, PA 19103
Attn:    Peter McGonigle, peter.mcgonigle@fanniemae.com

Internal Revenue Service
Centralized Insolvency Operations
PO Box 7346
Philadelphia, PA 19101

United State Securities and Exchange Commission
3 World Financial Center, Suite 400
New York, NY 10281
Attn:    George S. Canellos, Regional Director,
         secbankruptcy@sec.gov; newyork@sec.gov; bankruptcynoticeschr@sec.gov

Nationstar Mortgage, LLC
350 Highland Drive
Lewisville, TX 75067
Attn:    General Counsel

Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019
Attn:    Jessica C.K. Boelter, Esq., jboelter@sidley.com
         Alex Rovira, Esq., arovira@sidley.com

UNITED STATE BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------

In re:                                      )
                                            )
RESIDENTIAL CAPITAL, LLC et al.             )      Case No. 12-12020 (MG)
                                            )      Chapter 11
                            Debtor,         )      Jointly Administered

------------------------------------------------------

## AFFIRMATION IN SUPPORT OF MOTION
## FOR RELIEF FROM AUTOMATIC STAY

HSBC BANK USA, N.A. AS TRUSTEE FOR THE REGISTERED HOLDERS OF ACE

SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2005-HE3, ASSET BACKED

PASS-THROUGH CERTIFICATES (hereinafter "HSBC") by and through its undersigned counsel,

respectfully moves this Court for an Order, pursuant to 11 U.S.C. §362(b)(1) and (2) and Rule

4001(a)(1) of the Federal Rules of Bankruptcy Procedure for an order lifting the automatic stay with

respect to action presently pending in the Supreme Court of the State of New York, Kings County

for which Residential Funding Company, LLC f/k/a Residential Funding Corporation is a named

Defendant.

Lee E. Riger, an attorney duly admitted to practice before this Court hereby affirms the

following to be true under penalty of perjury:

### FACTUAL BACKGROUND

1.    On January 26, 2004, Lucienne Lombard ("Lombard") participated in a closing

whereby title to real property described as Block 5231, Lot 70 within Kings County, New York,

more commonly known as 499 East 29th Street, Brooklyn, NY (the "Premises") was conveyed to

Farhaad Yacoob ("Yacoob").

2.    A mortgage ("Mortgage #1") was given by Yacoob to Berkshire Financial Group

("Berkshire").

3.      Berkshire subsequently assigned Mortgage #1 to the First National Bank of Nevada (now in receivership under the authority of FDIC) which assigned the mortgage to Residential Funding Corporation (the "Debtor"). A copy of Mortgage #1 and the subsequent assignments to First National Bank of Nevada and Debtor are annexed hereto as **Exhibit "A"**.

4.      On February 15, 2005, Yacoob refinanced the Premises by giving a mortgage to Finance America, LLC ("Mortgage #2"). Finance America subsequently assigned Mortgage #2 to HSBC. A copy of Mortgage #2 and the assignment to HSBC are annexed hereto as **Exhibit "B"**.

5.      HSBC is the present holder of Mortgage #2.

6.      Debtor has no present interest in the Premises. Debtor has not had any interest in the Premises since July 30, 2005 when the mortgage it had held was satisfied. A copy of the satisfaction of mortgage is annexed hereto as **Exhibit "C"**.

7.      Lombard commenced an action (the "State Court Action") on or about November 28, 2005 alleging that Yacoob and various other individuals and entities conspired to take title to the Premises from Lombard in order to drain its equity. Lombard also named Berkshire, First National Bank of Nevada, Debtor, Finance America and HSBC as Defendants. A copy of the Third Amended Verified Complaint dated May 8, 2007 is annexed hereto as **Exhibit "D"**.[1] The present caption of the action currently pending in Supreme Court, Kings County appears as:

---

[1] The 120+ pages of exhibits have been removed from the copy provided to the Court as they are voluminous and of no relevance to the present motion.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-------------------------------------------------------------------------------x

LUCIENNE LOMBARD,

                     Plaintiff,

      -against-

FARHAAD YACOOB, NADIA YACOOB, GUARANTEED HOME
MORTGAGE COMPANY INC., BERKSHIRE FINANCIAL
GROUP, INC., FEDERAL DEPOSIT INSURANCE              Index No. 36016/05
CORPORATION, as receiver for FIRST NATIONAL BANK OF
NEVADA, RESIDENTIAL FUNDING CORPORATION,
BENJAMIN JACOB TURNER, ATARA HIRSCH-TWERSKY,
JONATHAN J. MASON-KINSEY, CHICAGO TITLE INSURANCE
COMPANY, DECISION 2000 REAL ESTATE SERVICES, INC.,
AUGUSTA UWECHUE, SPAULDING PROPERTIES INC.,
FINANCE AMERICA, LLC, MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. as nominee for FINANCE
AMERICA, LLC, and HSBC BANK USA, N.A. AS TRUSTEE FOR
THE REGISTERED HOLDERS OF ACE SECURITIES CORP.
HOME EQUITY LOAN TRUST, SERIES 2005-HE3, ASSET
BACKED PASS-THROUGH CERTIFICATES,

                    Defendants.

-------------------------------------------------------------------------------x

      8.      It appears Debtor was named as a Defendant in the State Court Action solely in its

capacity as a one-time holder of a mortgage securing the Premises.

      9.      In fact, the only cause of action asserted against Debtor is for a declaratory judgment

declaring the mortgage held by Debtor (which has long since been satisfied) to be determined to be

*void ab initio*. See Exhibit "D".

      10.      Since the mortgage held by Debtor was satisfied during a subsequent refinance, any

relief sought against Debtor is moot.

      11.      Lombard has made no claims that Debtor was involved in any fraudulent contact.

12.     In the State Court Action, Yacoob defaulted and an order was entered declaring the deed from Lombard to Yacoob *void ab initio*. A copy of the Court's order is annexed hereto as **Exhibit "E"**. As such, the mortgage presently held by HSBC, of which Yacoob was the mortgagor, is incapable of being foreclosed upon. Therefore, HSBC has no alternative but to seek equitable remedies such as, *inter alia*, equitable subrogation.

13.     On or about May 14, 2012, Debtor served notice in the State Court Action of the Automatic Stay. See **Exhibit "F"**.

14.     HSBC moves now so that it may prosecute its claims in the State Court Action.

15.     HSBC has no remedy other than to seek relief from the stay in this Court in order to pursue its equitable claims. HSBC had previously moved to sever Lombard's claims against the Debtor, but the State Court denied HSBC's motion due to the existence of the automatic stay. A copy of the Court's Order dated February 20, 2014 is annexed hereto as **Exhibit "G"**.

16.     Lombard remains in the Premises mortgage free. Mortgages for which Lombard had been the mortgagor were satisfied at the time of the allegedly fraudulent closing. See **Exhibit "H"**. HSBC is unable to foreclosure upon its mortgage.

17.     HSBC must been given the opportunity to pursue its remedies in State Court.

18.     It is clear that Debtor's present involvement in the State Court Action in nominal.

<u>JURISDICTION AND VENUE</u>

19.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(G).

20.     Venue is proper in this District pursuant to 28 U.S.C. §§1408(2) and 1409.

## ARGUMENT

21.    11 U.S.C. §362(d)(1) provides that the Court shall grant relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest."

22.    In determining whether a stay may be lifted to permit litigation to continue against the debtor in another Court, Courts have used factors articulated in In re Sonnax Indus., Inc., 907 F.2d 1280, 1286, (2nd Cir. 1990).  See also U.S. Bank Trust Nat'l Ass'n v. AMR Corp., 730 F.3d 88 (2nd Cir. 2013); SunCal Cmtys. I LLC v. Lehman Commer. Paper, Inc., 402 Fed. Appx. 634 (2nd Cir. 2012); Case v. United States, 384 Fed. Appx. 43 (2nd Cir. 2010).

23.    The Sonnax factors include: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests [**19] of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms. 907 F.2d at 1286.

a.    Factor No. 1. Lifting of the stay would allow for complete resolution of the issues of HSBC's concerning as it would allow the State Court Action to resume in full.

b.    Factor No. 2. The State Court Action has <u>no connection</u> with the Bankruptcy as no affirmative relief as sought against the Debtor. Prosecution of the State Court Action would in no way interfere with the administration of the Bankruptcy Action.

c.    Factor No. 3. The State Court action does <u>not</u> involve the debtor as a fiduciary.

d.    Factor No. 4. The establishment of a special tribunal is inapplicable to the circumstances herein.

e.    Factor No. 5. The undersigned is unaware as to whether Debtor's insurer has assumed Debtor's defense. However, no claims for damages have been made against Debtor, merely a claim in equity, which has been granted by the Court and is therefore moot.

f.    Factor No. 6. The action primarily concerns parties other than the Debtor.

g.    Factor No. 7. The State Court Action is *not* in a forum which would prejudice any party either geographically or substantively.

h.    Factor No. 8. There is *no* claim against Debtor in the State Court Action for damages and therefore no danger of a resultant judgment.

i.    Factor No. 9. Movant's success herein would *not* result in a judicial lien against the Debtor.

j.    Factor No. 10. The interests of judicial economy strongly favor the granting of the instant motion. The State Court Action was filed in 2005. Discovery has not yet even begun because of numerous stays resulting from receiverships, bankruptcies, appeals and other procedural delays. As the State Court Action concerns a fraud allegation of the longer that the State Court Action is stayed, the smaller the chance that there will be of obtaining witnesses who will be able to recollect and testify as to the factual circumstances surrounding the State Court Action.

k.    Factor No. 11. The parties are not ready for trial in the State Court Action.

l.    Factor No. 12. The impact of the stay upon HSBC, has and continues to be burdensome as the holder of a presently unforceable mortgage. Presumably other parties are burdened by the stay as they wish to vindicate their positions and since the passage of time threatens to dissipate the testimonial and documentary evidence. No party is harmed by the lifting of the stay. The Debtor would not be harmed by the lifting of the stay. No party would be prejudiced by lifting of the stay.

24.    Since the State Court Action concerns real property which Debtor is alleged to have an interest 11 U.S.C. §362(d)(2) may also apply.

25.    11 U.S.C. §362(d)(2) provides:

*"On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under [11 U.S.C.§362(a)], such as by terminating, annulling, modifying, or conditioning such stay with respect to a stay of an act against property under [11 U.S.C.§362(a)], if (A) the debtor does not have an equity interest in such property; and (B) such property is not necessary to an effective reorganization."*

26.    It is clear that Debtor has no equity interest in the Premises. Debtor has made no claims to any equity interest in the Premises.

27.    In fact, in order to successfully defeat a motion made pursuant to §362(d)(2) the party opposing the motion must "not merely show that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in prospect. <u>Pegasus Agency v. Grammatikakis</u>, 101 F.3d 882, 884 (2nd Cir. 1996) *citing* <u>United States Sav. Ass'n v. Timbers of Inwood Forest Assocs.</u>, 484 U.S. 365, 375-376 (1988).

28.    It is clear that the Premises is not necessary to effect Debtor's reorganization.

29.    HSBC's motion should be granted and the automatic stay should be lifted for the purposes of allowing the State Court Action to proceed.

30.    11 U.S.C. §362(d)(2) provides a mandate rather than discretionary authority. The language provides that the Court "shall" grant the appropriate relief, not that it "may" lift the stay.

WHEREFORE, HSBC respectfully requests that this Court enter an Order lifting the stay pursuant to 11 U.S.C. §362(d)(1) & (2) in order for the State Court Action to resume and for all other and further relief that this Court deems just and proper.

Dated: Melville, New York
      August 15, 2014

Respectfully submitted,

BALFE & HOLLAND, P.C.

By:       /s/  Lee E. Riger
           Lee E. Riger (LR 1459)
           135 Pinelawn Road, Suite 125 North
           Melville, NY 11747
           (631) 501-1000
           lriger@balfeholland.com

           *Attorneys for HSBC*

**Exhibit A**



2004020902485002001EB832

## RECORDING AND ENDORSEMENT COVER PAGE

| | | PAGE 1 OF 20 |
|---|---|---|
| **Document ID:** 2004020902485002 | Document Date: 01-26-2004 | |
| **Document Type:** MORTGAGE | | Preparation Date: 02-09-2004 |
| **Document Page Count:** 19 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| DECISION 2000 REAL ESTATE SERVICES INC. AGENT OF CHICAGO TITLE INSURANCE COMPANY 169 ROANOKE AVENUE RIVERHEAD, NY 11901 631-208-9003 | DECISION 2000 REAL ESTATE SERVICES INC. AGENT OF CHICAGO TITLE INSURANCE COMPANY 169 ROANOKE AVENUE RIVERHEAD, NY 11901 631-208-9003 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 5231 | 70  Entire Lot | | 499 EAST 29TH |

Property Type: DWELLING ONLY - 3 FAMILY

### CROSS REFERENCE DATA

CRFN_____ or Document ID_____ or _____ Year_____ Reel____ Page_____ or File Number_____

### PARTIES

| MORTGAGER/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| FARHAAD YACOOB 104-72 109TH STREET RICHMOND HILL, NY 11419 | BERKSHIRE FINANCIAL GROUP, INC. 585 NORTH GANNON AVENUE STATEN ISLAND, NY 10314 |

### FEES AND TAXES

| Mortgage | | | | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 348,500.00 | Recording Fee: $ | 132.00 |
| Taxable Mortgage Amount: | $ | 348,500.00 | Affidavit Fee: $ | 0.00 |
| Exemption: | | | NYC Real Property Transfer Tax Filing Fee: | |
| TAXES: County (Basic): | $ | 1,742.50 | $ | 0.00 |
| City (Additional): | $ | 3,485.00 | NYS Real Estate Transfer Tax: | |
| Spec (Additional): | $ | 0.00 | $ | 0.00 |
| TASF: | $ | 871.25 | | |
| MTA: | $ | 871.25 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 6,970.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed    11-26-2004 15:42

City Register File No.(CRFN):
2004000731603

*Annette M Hill*

***City Register Official Signature***

After Recording Return To:
FIRST NATIONAL BANK OF ARIZONA, N.A.

17600 NORTH PERIMETER DRIVE
SCOTTSDALE, AZ 85255-

---

[Space Above This Line For Recording Data]

YACOOB
LOAN #: 2673
CASE #:
FIN #: 16/8231/70/5

# MORTGAGE

## WORDS USED OFTEN IN THIS DOCUMENT

(A) "Security Instrument." This document, which is dated  JANUARY 26, 2004                together
with all Riders to this document, will be called the "Security Instrument."
(B) "Borrower."   FARHAAD   YACOOB

whose address is   , ,

sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "Lender."   BERKSHIRE FINANCIAL GROUP, INC.

will be called "Lender." Lender is a corporation or association which exists under the laws of
NEW YORK                              . Lender's address is   585 NORTH GANNON AVENUE,
STATEN ISLAND, NY 10314
(D) "Note." The note signed by Borrower and dated   JANUARY 26, 2004        will be called the "Note."
The Note shows that I owe Lender
THREE HUNDRED FORTY-EIGHT THOUSAND FIVE HUNDRED AND 00/100
Dollars (U.S.$   348,500.00            ) plus interest and other amounts that may be payable. I have
promised to pay this debt in Periodic Payments and to pay the debt in full by   FEBRUARY 1, 2034

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                  Form 3033 1/01
R3033NY.VTX  9/26/2002              (Page 1 of 15 pages)

(E) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."

(F) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(H) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider           ☐ Second Home Rider
☐ Balloon Rider              ☐ Planned Unit Development Rider   ☐ Biweekly Payment Rider
☒ 1-4 Family Rider           ☒ Other(s) [specify]   PREPAYMENT RIDER

(I) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(J) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(K) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(M) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in, Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(N) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(P) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

    (A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

    (B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

    (C) Keep all of my other promises and agreements under this Security Instrument and the Note.

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                Form 3033 1/01
DOCIIKT.vtx  3/14/2003                        (Page 2 of 15 pages)

**DESCRIPTION OF THE PROPERTY**

I give Lender rights in the Property described in (A) through (G) below:
(A) The Property which is located at    **439 EAST 29TH STREET**
                                        [Street]
**BROOKLYN**                                           , New York    **11226**
     [City, Town or Village]                                       [Zip Code]
This Property is in    **KINGS**                          County. It has the following legal description:
**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.**

*The premises are improved or to be improved by a one or two family residence or dwelling only.*

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;
(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"
(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;
(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;
(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and
(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:
    **1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    Form 3033 1/01
MERS    9/26/2003                          (Page 3 of 15 pages)

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.** I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
MODIFIED Ver  3/24/2003                    (Page 6 of 15 pages)                    Form 3833 1/01

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations. Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Escrow Funds. Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4. Borrower's Obligation to Pay Charges, Assessments And Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3033 1/01
MERS Hom.vrx  9/26/2002                                                    (Page 5 of 15 pages)

writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforce d, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use o f the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument.

Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30- day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a) Maintenance and Protection of the Property. I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If Insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b) Lender's Inspection of Property. Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
DOCUKY.VXX  9/16/2003                    (Page 7 of 15 pages)                    Form 3033 1/01

12-12020-mg    Doc 8758-1    Filed 06/15/15    Entered 06/15/15 16:37:47    Exhibit 1
Pg 24 of 159
12-12020-mg    Doc 7392-1    Filed 08/18/14    Entered 08/18/14 15:15:52    Exhibit
Pg 10 of 27

in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I will not give up the rights that I have as a tenant on the Property. I will not cancel or terminate my lease and I will not change or amend that lease unless Lender agrees in writing to the change or amendment. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT              Form 3033 1/01
DOCUKT  VER 8/26/2000                  *(Page 8 of 15 pages)*

Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. Agreements About Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

12. Continuation of Borrower's Obligations And of Lender's Rights.

(a) Borrower's Obligations. Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3033 1/01
3033NY.vre  9/26/2002                    (Page 9 of 15 pages)

(b) **Lender's Rights.** Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3033 1/01
DOCUKY13                            *(Page 10 of 13 pages)*
DOCUKY13.VTX  5/26/2003

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. I will be given one copy of the Note and of this Security Instrument.

18. Agreements about Lender's Rights If the Property Is Sold or Transferred. Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make these payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued. Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance. The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a

reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21. **Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. Those substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

22. **Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

☐ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3033 1/01
9/26/2002
(Page 13 of 15 pages)

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through
13 of this Security Instrument and in any Rider signed by me and recorded with it.

_Forhad MauB_          01-26-04

- BORROWER - FARHAD YACKOB - DATE -

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
MORTGAGE Vmx  9/26/2001              (Page 14 of 13 pages)              Form 3033 1/01

[Space Below This Line For Acknowledgment]

**STATE OF** New York                    County of KINGS

On the 26th day of JANUARY                in the year 2004                before me, the undersigned, a notary public in and for said state, personally appeared

FARHAAD YACOOB

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that                executed the same in capacity(ies), and that by                signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

AUGUSTA UWECHUE
Notary Public, State Of New York
No. 01AU6059596
Qualified In Queens County
Commission Exp May 29, 2007

## 1-4 FAMILY RIDER

(Assignment of Rents)

VACDOR
LOAN NO.: 2673

THIS 1-4 FAMILY RIDER is made this 26TH    day of    JANUARY, 2004
, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust
or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to BERKSHIRE FINANCIAL GROUP INC.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located
at: 499 EAST 29TH STREET BROOKLYN, NY 11226

[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In
addition to the Property described in Security Instrument, the following items now or hereafter
attached to the Property to the extent they are fixtures are added to the Property description, and
shall also constitute the Property covered by the Security Instrument: building materials,
appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or
intended to be used in connection with the Property, including, but not limited to, those for the
purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire
prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath
tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals,
washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and
curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which,
including replacements and additions thereto, shall be deemed to be and remain a part of the
Property covered by the Security Instrument. All of the foregoing together with the Property
described in the Security Instrument (or the leasehold estate if the Security Instrument is on a
leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3170 1/01
DOC18441
DOC18441.VTX    10/14/2003    (page    1 of 3 pages)

2573

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time

MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3170 1/01
DOCUB4A2
DOCUB4A3.VTX    10/10/2002    (page  2 of 3 pages)

2673

when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

*Forhaad Yamab*     01-26-04
- BORROWER - FARHAAD YACOOB - DATE -

MULTISTATE 1-4 FAMILY RIDER.-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3170 1/01
DOCUMAS
BICH44A3.VTX   28/26/2003                          *(page 3 of 3 pages)*

# DECISION 2000 REAL ESTATE SERVICES INC.

### SCHEDULE A CONTINUED

Title No.04-04-4360

All that certain plot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

Beginning at a point on the easterly side of East 29th Street distant 660 feet northerly from the corner formed by the intersection of the easterly side of East 29th Street with the northerly side of Farragut Road (Avenue F);

Running thence easterly and parallel with Farragut Road (Avenue F), 100.00 feet to the centre line of the block;

Thence northerly along the centre line of the block and parallel with East 29th Street, 40.00 feet;

Thence westerly and parallel with Farragut Road (Avenue F), 100.00 feet to the easterly side of East 29th Street;

Thence southerly along the easterly side of East 29th Street, 40.00 feet to the point or place of Beginning.

For Information Only:  Section 16  Block 5231  Lot 70

*Representing Chicago Title Insurance Company*

## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2005112101205001001EA831

### RECORDING AND ENDORSEMENT COVER PAGE        PAGE 1 OF 4

| | |
|---|---|
| Document ID: 2005112101205001 | Document Date: 11-08-2005 |
| Document Type: ASSIGNMENT, MORTGAGE | Preparation Date: 11-21-2005 |
| Document Page Count: 3 | |

| PRESENTER: | RETURN TO: |
|---|---|
| PEELLE MANAGEMENT CORPORATION<br>P. O. BOX 1710<br>CAMPBELL, CA  95009-1710<br>408-866-6868 | PEELLE MANAGEMENT CORPORATION<br>P. O. BOX 1710<br>CAMPBELL, CA  95009-1710<br>408-866-6868 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 5231 | 70 | Entire Lot | 499 EAST 29 STREET |

Property Type: DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

CRFN: 2004000731603

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| BERKSHIRE FINANCIAL GROUP INC<br>585 NORTH GANNON AVE<br>STATEN ISLAND, NY  10314 | FIRST NATIONAL BANK OF NEVADA<br>1665 WEST ALAMEDA DR<br>TEMPE, AZ  85282 |

### FEES AND TAXES

| Mortgage | | | | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | Recording Fee: $ | 52.00 |
| Taxable Mortgage Amount: | $ | 0.00 | Affidavit Fee: $ | 0.00 |
| Exemption: | | | NYC Real Property Transfer Tax Filing Fee: | |
| TAXES: County (Basic): | $ | 0.00 | $ | 0.00 |
| City (Additional): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| Spec (Additional): | $ | 0.00 | $ | 0.00 |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed        11-30-2005 14:29
City Register File No.(CRFN):
                       2005000663096

*Annette M Hill*

*City Register Official Signature*

After Recording Return To:
**PEELLE MANAGEMENT CORPORATION**
ASSIGNMENT JOB-890884  90816
P.O. BOX 1710
CAMPBELL, CA 95009-1710
1-408-866-8868

Prepared By:
Dianne Sneed

## ASSIGNMENT OF MORTGAGE

Loan # 2673

9177714

KNOWN ALL MEN BY THESE PRESENTS That **BERKSHIRE FINANCIAL GROUP, INC.**

As Mortgagee under that certain MORTGAGE executed by
**FARHADD YACOOB**

Whose address is **499 EAST 29TH STREET, BROOKLYN, NY 11226**

as mortgagor (s) on the 26th day of January, 2004, and recorded on the 26th day of November, 2004 under filing # 2004000731603 of the Records of KINGS County, State of New York, given to secure the payment of a promissory note for the sum of THREE HUNDRED FORTY-EIGHT THOUSAND FIVE HUNDRED AND 00/100 Dollars ($ 348,500.00) and interest has endorsed said note and does hereby ASSIGN AND TRANSFER to FIRST NATIONAL BANK OF NEVADA whose address is 1665 WEST ALAMEDA DR., TEMPE, AZ 85282
all right, title and interest in said note and all rights accrued under said Mortgage and all indebtedness secured thereby. The said Mortgage described herein affects the premises commonly known and designated as:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

Section  16          Block 5231          Lot  70

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

IN WITNESS WHEREOF said BERKSHIRE FINANCIAL GROUP INC.

Has caused this instrument to be signed by its    IRENE GENOVESE   and

attested by its corporate seal this ____8____ day of _November_, 2005 A.D.

By: _____
    Irene Genovese

State of New York
County of Kings

On the ___8___ day of _November_ in the year _2005_ before me, the undersigned, a

notary public in and for said state, personally appeared: **IRENE GENOVESE**

personally known to me or proved to me on the basis of satisfactory evidence to be the individual (s) whose name (s) is (are) subscribed to the within instrument and his/her/their capacity (ies), and that by his/her/their signature(s) on the instrument, the individual (s) acted, executed the instrument.

_____
Notary Public
MY COMMISSION EXPIRES:

JANICE B. AXELROD
Notary Public, State of New York
Qualified in Kings County
No. 01A...
Certificate ...
Commiss on Exp... County ...2006

EXHIBIT "A"

All that certain plot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

Beginning at a point on the easterly side of East 29th Street distant 660 feet northerly from the corner formed by the intersection of the easterly side of East 29th Street with the northerly side of Farragut Road (Avenue F);

Running thence easterly and parallel with Farragut Road (Avenue F), 100.00 feet to the centre line of the block;

Thence northerly along the centre line of the block and parallel with East 29th Street, 40.00 feet;

Thence westerly and parallel with Farragut Road (Avenue F), 100.00 feet to the easterly side of East 29th Street;

Thence southerly along the easterly side of East 29th Street, 40.00 feet to the point or place of Beginning.

For Information Only:  Section 16  Block 5231  Lot 70

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2005060901243001001E5A19

## RECORDING AND ENDORSEMENT COVER PAGE    PAGE 1 OF 2

| | | |
|---|---|---|
| Document ID: 2005060901243001 | Document Date: 03-04-2005 | Preparation Date: 06-09-2005 |
| Document Type: ASSIGNMENT, MORTGAGE | | |
| Document Page Count: 1 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| PEELLE MANAGEMENT CORPORATION<br>P. O. BOX 30014<br>RENO, NV 89502-3014<br>775-827-9600 | PEELLE MANAGEMENT CORPORATION<br>P. O. BOX 30014<br>RENO, NV 89502-3014<br>775-827-9600 |

### PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BROOKLYN | 5231 | 70 | Entire Lot | | 499 EAST 29 STREET |
| | Property Type: DWELLING ONLY - 1 FAMILY | | | | |

### CROSS REFERENCE DATA

CRFN: 2004000731603

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| FIRST NATIONAL BANK OF NEVADA<br>ONE MERIDIAN CROSSINGS #100<br>MPLS, MN 55423 | RESIDENTIAL FUNDING CORPORATION<br>8400 NORMANDALE LAKE BLVD STE 600<br>MINNEAPOLIS, MN 55437 |

### FEES AND TAXES

| Mortgage | | | | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | Recording Fee: $ | 42.00 |
| Taxable Mortgage Amount: | $ | 0.00 | Affidavit Fee: $ | 0.00 |
| Exemption: | | | NYC Real Property Transfer Tax Filing Fee: | |
| TAXES: County (Basic): | $ | 0.00 | $ | 0.00 |
| City (Additional): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| Spec (Additional): | $ | 0.00 | $ | 0.00 |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK
Recorded/Filed        06-14-2005 17:19
City Register File No.(CRFN):
**2005000344429**

*Annette M Hill*

*City Register Official Signature*

After Recording Return To:
**PEELLE MANAGEMENT CORPORATION**
ASSIGNMENT JOB #90616
P.O. BOX 30014
RENO, NV 89520-3014
(775) 827-9600 EXT. 247

## Assignment of Mortgage

For Good and Valuable Consideration, the sufficiency of which is hereby acknowledged, the undersigned,
**FIRST NATIONAL BANK OF NEVADA (Assignor)**
ONE MERIDIAN CROSSINGS
#100
Mpls, MN 55423
by these presents does convey, grant, assign, transfer and set over the described Mortgage dated 01/28/04
FROM-: FARHAAD YACOOB
in the amount of $348500.00 in the State of NY, County of Kings, Clerk's office
as Inst. 20040209024850
together with certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon to:
**RESIDENTIAL FUNDING CORPORATION (Assignee)**
8400 NORMANDALE LAKE BLVD., STE 600, MINNEAPOLIS, MN 55437

Address: 499 E 29th St Brooklyn, Ny 11226

Block: 5231
Lot: 70

This Assignment is not subject to the requirements of Section 275 of the Real Property law, because it is an assignment within the secondary mortgage market.
IN WITNESS WHEREOF the undersigned corporation has caused this instrument to be executed
by its proper officer who was duly authorized by a resolution of its board of directors.
Dated: 03/04/2005
FIRST NATIONAL BANK OF NEVADA

By: _____
Bea Wolnoski
Vice President

THIS ASSIGNMENT IS NOT SUBJECT TO
THE REQUIREMENTS OF SECTION 275 OF
THE REAL PROPERTY LAW BECAUSE IT
IS AN ASSIGNMENT WITHIN THE SEC-
ONDARY MORTGAGE MARKET.

State of: Arizona
County of: Maricopa
On 3/9/05  , before me, the undersigned, a Notary Public, in and for said State, personally appeared
Bea Wolnoski personally known to me or proved to me on the basis of satisfactory evidence to be
the individual whose name is subscribed to the within written instrument and acknowledged to me that
he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the
individual, or the person upon behalf of which the individual acted, executed the instrument, and that such
individual made such appearance before the undersigned in the state of Arizona County of Maricopa

_____
Michele A. Lieberman
Notary:
My Commission Expires 6/15/06

OFFICIAL SEAL
MICHELE A. LIEBERMAN
NOTARY PUBLIC-ARIZONA
MARICOPA COUNTY
My Comm. Expires June 15, 2006

Prepared by: Wendy Wallace, P.O. Box 30014, Reno, NV 89520-8618
SellId: N67 HFN LN#: 0437617152 FINAL SA.finalNY rfc616 90616 T 030405 31-047 NY Kings 3

**Exhibit B**

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2005033001933001010E16C5

## RECORDING AND ENDORSEMENT COVER PAGE                PAGE 1 OF 27

| | | |
|---|---|---|
| Document ID: 2005033001933001 | Document Date: 02-15-2005 | |
| Document Type: MORTGAGE | | Preparation Date: 12-27-2005 |
| Document Page Count: 26 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| DECISION 2000 REAL ESTATE SERVICES INC. | DECISION 2000 REAL ESTATE SERVICES INC. |
| AGENT OF CHICAGO TITLE INSURANCE | AGENT OF CHICAGO TITLE INSURANCE |
| COMPANY | COMPANY |
| 169 ROANOKE AVENUE | 169 ROANOKE AVENUE |
| RIVERHEAD, NY  11901 | RIVERHEAD, NY  11901 |
| 631-208-9003 | 631-208-9003 |

### PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BROOKLYN | 5231 | 70 | Entire Lot | | 499 EAST 29 STREET |
| | Property Type: | 1- 2 FAM WITH ATTCH GAR /OR VACANT LAND | | | |

### CROSS REFERENCE DATA

CRFN_____  or  Document ID_____  or  _____ Year_____ Reel ___ Page_____  or  File Number_____

### PARTIES

| MORTGAGER/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| FARHAAD YACOOB | MORTGAGE ELECTRONIC REGISTRATION |
| 104-72 109TH ST. SOUTH | SYSTEMS, INC. |
| RICHMOND HILL, NY  11419-2408 | NO # MAIN STREET, P.O. BOX 2026 |
| | FLINT, MI 48501-2026 |

### FEES AND TAXES

| Mortgage | | | Recording Fee: $ | 167.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 450,000.00 | Affidavit Fee:  $ | 0.00 |
| Taxable Mortgage Amount: | $ | 450,000.00 | NYC Real Property Transfer Tax Filing  Fee: | |
| Exemption: | | | $ | 0.00 |
| TAXES:  County (Basic): | $ | 2,250.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 4,500.00 | | |
| Spec (Additional): | $ | 0.00 | $ | 0.00 |
| TASF: | $ | 1,125.00 | | |
| MTA: | $ | 1,100.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 8,975.00 | | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed        01-04-2006 14:29
City Register File No.(CRFN):
        2006000003967

*Annette M Hill*

***City Register Official Signature***

05-04-4958

Return To:    Finance America, LLC
              P.O. BOX 16637
              Irvine, Ca. 92623-6637


Prepared By:  Julia L Greenfield
              16802 Aston Street
              Irvine, CA 92606

--------------------[Space Above This Line For Recording Data]--------------------

# MORTGAGE MIN 100052300413298141

## WORDS USED OFTEN IN THIS DOCUMENT

(A) "Security Instrument." This document, which is dated        FEBRUARY  15, 2005
together with all Riders to this document, will be called the "Security Instrument."

(B) "Borrower."

        FARHAAD YACOOB



whose address is
        104-72 109TH ST SOUTH RICHMOND HILL NY 11419-2408
sometimes will be called "Borrower" and sometimes simply "I" or "me."

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and
existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint,
MI 48501-2026, tel. (888) 679-MERS. FOR PURPOSES OF RECORDING THIS MORTGAGE,
MERS IS THE MORTGAGEE OF RECORD.

(D) "Lender."

        Finance America, LLC

will be called "Lender." Lender is a corporation or association which exists under the laws of
    Delaware                         . Lender's address is
16802 Aston Street, Irvine, CA 92606


NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3033 1/01

-6A(NY) (0005).02
Page 1 of 17                    Initials:
VMP MORTGAGE FORMS - (800)521-7291

MAAW

## DECISION 2000 REAL ESTATE SERVICES INC.

### SCHEDULE A CONTINUED

Title No.05-04-4958

All that certain plot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

Beginning at a point on the easterly side of East 29th Street distant 660 feet northerly from the corner formed by the intersection of the easterly side of East 29th Street with the northerly side of Farragut Road (Avenue F);

Running thence easterly and parallel with Farragut Road (Avenue F), 100.00 feet to the centre line of the block;

Thence northerly along the centre line of the block and parallel with East 29th Street, 40.00 feet;

Thence westerly and parallel with Farragut Road (Avenue F), 100.00 feet to the easterly side of East 29th Street;

Thence southerly along the easterly side of East 29th Street, 40.00 feet to the point or place of Beginning.

For Information Only:  Block 5231  Lot 70

*Representing Chicago Title Insurance Company*

(E) "Note." The note signed by Borrower and dated    FEBRUARY 15, 2005    , will be called the "Note." The Note shows that I owe Lender    FOUR HUNDRED FIFTY THOUSAND AND NO/100

Dollars (U.S. $    450,000.00    ) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by    MARCH 01, 2035

(F) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."

(G) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(I) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] Legal Desc. |

(J) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(K) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(L) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(N) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(O) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(Q) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**DESCRIPTION OF THE PROPERTY**

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at ‹

499 East 24th Street                                           [Street]
BROOKLYN                    [City, Town or Village], New York 1226    [Zip Code].

This Property is in                    KINGS                    County. It has the following legal description:

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

-6A(NY) (0005).02                    Page 3 of 17                    Initials:                    Form 3033 1/01

MAEH

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

### 3. Monthly Payments For Taxes And Insurance.

#### (a) Borrower's Obligations.

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Escrow Funds.**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security

-6A(NY) (0005).02                    Page 6 of 17          Initials:          Form 3033 1/01

MAJP

Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period

that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7. **Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a) **Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b) **Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in the Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance

12-12020-mg    Doc 8758-1    Filed 06/15/15    Entered 06/15/15 16:37:47    Exhibit 1
Pg 54 of 159
12-12020-mg    Doc 7392-2    Filed 08/18/14    Entered 08/18/14 15:15:52    Exhibit
Pg 13 of 34

coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. **Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in

value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to

delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If

Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."**

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another

Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

☒ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

**BY SIGNING BELOW, I** accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____

_____ (Seal)
FARHAAD YACOOB                              -Borrower

_____    _____ (Seal)
                                                              -Borrower

_____ (Seal)    _____ (Seal)
-Borrower                                            -Borrower

_____ (Seal)    _____ (Seal)
-Borrower                                            -Borrower

_____ (Seal)    _____ (Seal)
-Borrower                                            -Borrower

**STATE OF NEW YORK,**                    NASSAU                    County ss:

On the 15ᵗʰ day of FEB 2005 before me, the undersigned, a notary public in and for said state, personally appeared

FARHAAD YACOOB

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

AUGUSTA UWECHUE
Notary Public, State Of New York
No. 01AU5055596
Qualified in Queens County
Commission Exp May 29, 2007

Tax Map Information:

Return To:
Finance America, LLC
P.O. Box 16637
Irvine, Ca 92623-6637

# 1-4 FAMILY RIDER
### (Assignment of Rents)

MIN  100052300413298141

THIS 1-4 FAMILY RIDER is made this          15th  day of          FEBRUARY , 2005 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to
Finance America, LLC

(the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:

499 EAST 29TH ST, BROOKLYN, NY 11226.
[Property Address]

1-4 FAMILY COVENANTS.  In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.  In addition to
the Property described in the Security Instrument, the following items now or hereafter attached to the
Property to the extent they are fixtures are added to the Property description, and shall also constitute the
Property covered by the Security Instrument: building materials, appliances and goods of every nature
whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the
Property, including, but not limited to, those for the purposes of supplying or distributing heating,
cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and
access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves,
refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens,
blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings,
all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the
Property covered by the Security Instrument. All of the foregoing together with the Property described in
the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to
in this 1-4 Family Rider and the Security Instrument as the "Property."

MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Initials:
Page 1 of 4
57R (0008)    VMP MORTGAGE FORMS - (800)521-7291    Form 3170 1/01

MCAW

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii)

57R (0008)                           Page 2 of 4                    Initials: _____    Form 3170 1/01

MCAX

Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

57R (0005)                    Page 3 of 4                    Initials:                    Form 3170 1/01

MCAY

**BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.**

_____ (Seal)                     _____ (Seal)
FARHAAD  YACOOB            -Borrower                                                          -Borrower


_____ (Seal)                     _____ (Seal)
                          -Borrower                                                          -Borrower


_____ (Seal)                     _____ (Seal)
                          -Borrower                                                          -Borrower


_____ (Seal)                     _____ (Seal)
                          -Borrower                                                          -Borrower


-57R (0008)                       Page 4 of 4                       Form 3170 1/01


MCAZ

RETURN RECORDED DOC TO:
Finance America, LLC
P.O. Box 16637
Irvine, Ca 92623-6637

MIN  100052300413298141

# ADJUSTABLE RATE RIDER
### (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this     15th   day of FEBRUARY , 2005    , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to
Finance America, LLC

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

499 EAST 29TH ST, BROOKLYN, NY 11226
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of     8.745          %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates
The interest rate I will pay may change on the first day of   MARCH  01, 2007       , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

MULTISTATE ADJUSTABLE RATE RIDER (LIBOR Index) - Single Family - Freddie Mac UNIFORM INSTRUMENT

-815R (0008)             Form 3192 1/01
Page 1 of 4              Initials
VMP MORTGAGE FORMS - (800)521-7291

MGMW

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX AND 50/100                                    percentage points (          6.500          %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.745          % or less than          8.745          %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 14.745          %.    My interest rate will never be lower than the initial interest rate stated in Paragraph A of this Rider.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

-816R (0008)                          Page 2 of 4              Initials:              Form 3192 1/01

MGMX

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

815R (0006)                          Page 3 of 4                    Initials:                    Form 3182 1/01

MGMY

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
FARHAAD  YACOOB              -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                                      -Borrower

815R  (0008)                        Page 4 of 4                        Form 3192 1/01

MGMZ

## AFFIDAVIT UNDER SECTION 255 TAX LAW

STATE OF NEW YORK )
                    ) ss.
COUNTY OF SUFFOLK)

        Betty Deist, being duly sworn deposes and says that she represents the

Title Company for the owner and holder of the hereinafter described mortgage, and is familiar

with the facts set forth herein.

That a certain mortgage was made by Farhaad Yacoob To Berkshire Financial Group, Inc., which mortgage was dated 1/26/04 and filed in the The New York City Register's Office, Kings County in CRFN #2004000731603 to secure the principal sum of $348,500.00 upon which $348,500.00 was advanced and upon which mortgage tax in the sum of $6,945.25 was paid.

That the aforesaid mortgage was fully paid off and satisfied at a closing on February 15, 2003.

A new mortgage was made by Farhaad Yacoob to "MERS" Mortgage Electronic Registration Systems, Inc. which mortgage was dated 2/15/05 and being recorded simultaneously herewith to secure the principal sum of $450,000.00 upon which a mortgage tax is being paid in the sum of $8975.00.

WHEREOF, deponent respectfully requests in light of the fact that the prior mortgage was duly paid off and satisfied and that the City of New York accept the new mortgage for recording at the lower tax rate pursuant to the provisions of Section 255, Article II of the Tax Law.

                         _Betty Deist_
                               Betty Deist

Sworn to before me this
29th day of November, 2005

_Ronald C. Kanka_
     Notary Public

       **Notary Public State of New York**
           **Ronald C. Kanka**
        **Qualified in Suffolk County**
           **No. 01KA7153235**
     **My Commission Expires 2/28/ 07**

AFFIDAVIT UNDER SECTION 255 TAX LAW

STATE OF NEW YORK )
                                    ) ss.
COUNTY OF SUFFOLK)

          Betty Deist, being duly sworn deposes and says that she represents the

Title Company for the owner and holder of the hereinafter described mortgage, and is familiar

with the facts set forth herein.

That a certain mortgage was made by Farhaad Yacoob To Berkshire Financial Group, Inc.,
which mortgage was dated 1/26/04 and filed in the The New York City Register's Office, Kings
County in CRFN #2004000731603 to secure the principal sum of $348,500.00 upon which
$348,500.00 was advanced and upon which mortgage tax in the sum of $6,945.25 was paid.

That the aforesaid mortgage was fully paid off and satisfied at a closing on February 15, 2003.

A new mortgage was made by Farhaad Yacoob to "MERS" Mortgage Electronic Registration
Systems, Inc. which mortgage was dated 2/15/05 and being recorded simultaneously herewith to
secure the principal sum of $450,000.00 upon which a mortgage tax is being paid in the sum of
$8975.00.

WHEREOF, deponent respectfully requests in light of the fact that the prior mortgage was duly
paid off and satisfied and that the City of New York accept the new mortgage for recording at the
lower tax rate pursuant to the provisions of Section 255, Article II of the Tax Law.

                                         _____
                                            Betty Deist

Sworn to before me this
29th day of November, 2005

_____
          Notary Public

**Notary Public State of New York**
**Ronald C. Kanka**
**Qualified in Suffolk County**
**No. 01KA7153235**
My Commission Expires 2/28/ 07

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2006060802104001001E4667

## RECORDING AND ENDORSEMENT COVER PAGE

**PAGE 1 OF 3**

**Document ID:** 2006060802104001     Document Date: 07-30-2005
**Document Type:** ASSIGNMENT, MORTGAGE                                   Preparation Date: 06-08-2006
**Document Page Count:** 2

| PRESENTER: | RETURN TO: |
|---|---|
| PETER T. ROACH AND ASSOCIATES, P.C. | PETER T. ROACH AND ASSOCIATES, P.C. |
| 100 JERICHO QUADRANGLE, SUITE 215 | 100 JERICHO QUADRANGLE, SUITE 215 |
| JERICHO, NY 11753 | JERICHO, NY 11753 |
| 516-938-3100 | 516-938-3100 |

### PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BROOKLYN | 5231 | 70 | Entire Lot | | 499 EAST 29 STREET |

**Property Type:** DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

CRFN: 2006000003967

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. | HSBC BANK USA, N.A. AS TRUSTEE FOR THE REGISTERED |
| 1665 PALM BEACH LAKES BLVD | 1661 WORTHINGTON ROAD, SUITE 100 |
| WEST PALM BEACH, FL 33401 | WEST PALM BEACH, FL 33409 |

### FEES AND TAXES

| Mortgage | | | | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | Recording Fee: $ | 47.00 | |
| Taxable Mortgage Amount: | $ | 0.00 | Affidavit Fee: $ | 0.00 | |
| Exemption: | | | NYC Real Property Transfer Tax Filing Fee: | | |
| TAXES: County (Basic): | $ | 0.00 | | $ | 0.00 |
| City (Additional): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| Spec (Additional): | $ | 0.00 | | $ | 0.00 |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed          06-15-2006 14:19
City Register File No.(CRFN):
                        2006000338144

*Janette M Hill*

**City Register Official Signature**

Prepared by: Cesar A. Vega
Ocwen Loan Servicing, LLC
1661 Worthington Road, Suite 100
West Palm Beach, Florida, 33409
Loan Number: 41329814
Attorney Code:

## ASSIGNMENT OF MORTGAGE
## NEW YORK

This ASSIGNMENT OF MORTGAGE is made and entered into as of this 30th day of July 2005, from **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,** whose address is ★★★ its successors and assigns, as nominee for FINANCE AMERICA, LLC. its successors and assigns, ("Assignor) to **HSBC Bank USA, N.A., as Trustee for the registered holders of ACE Securities Corp. Home Equity Loan Trust, Series 2005-HE3, Asset Backed Pass-Through Certificates** whose address is c/o Ocwen Loan Servicing, LLC, 1661 Worthington Road, Suite 100, West Palm Beach, Florida, 33409, all its rights, title and interest in and to a certain mortgage duly recorded in the Office of the County Recorder of **KINGS** County, State of **NEW YORK**, as follows:

Borrower: FARHAAD YACOOB ★★★ *1665 PALM BEACH LAKES BLVD, WEST PALM BEACH, FL 3340*
Lender: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FINANCE AMERICA, LLC.
OPB: $450,000.00
Document Date: February 15, 2005
Date Recorded: 11/04/06
Instrument Number: 2006000003967
Book/Volume/Docket/Liber/Reel:
Page/Folio:
Property Address: 499 EAST 29TH, BROOKLYN, NY 11226
Property described as follows:
DISTRICT:            SECTION:            BLOCK: *5231*    LOT: *70*
*FOR A COMPLETE LEGAL DESCRIPTION SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.*

TOGETHER with the bond or note(s) or obligation(s) described or referred to, in said mortgage and the moneys due and to grow due thereon, with the interest and attorney's fees and all other charges, TO HAVE AND TO HOLD the same unto the Assignee and to the successors, legal representatives and assigns of the Assignee forever.

If this loan is secured by an interest in a cooperative Apartment, Assignor hereby assigns all of its right, title and interest in and to the Assignment of Lease and Stock Power executed by the borrower(s) in conjunction with the loan.

This Assignment is not subject to the requirement of section two hundred seventy-five (275) of the Real Property Law because it is an assignment within the secondary mortgage market.

This Assignment is made without warranty, express or implied, and without recourse to the Assignor in any event whatsoever.
Dated: July 30th, 2005.

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

BY _____

NAME: Paul Neff

TITLE: Vice President

STATE OF FLORIDA              }
                                           } SS.
COUNTY OF PALM BEACH    }

On the 30th day of July in the year 2005, before me, the undersigned, personally appeared Paul Neff, of 1661 Worthington Road, Suite 100, West Palm Beach, Florida, 33409, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, that by his signature on the instrument, the individual(s) or person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in the county of Palm Beach, State of Florida.

Witness my hand and official seal.

_____
Notary - State of Florida

MIN: 100052300413298141

Notary Public State of Florida
Noemi Morales
My Commission DD478664
Expires 10/05/2009

MERS Ph.#:  (888) 679 – 6377

Loan Number: 41329814

# EXHIBIT "A"

Title No.04-04-4915

All that certain plot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York bounded and described as follows:

Beginning at a point on the easterly side of East 92nd St. distant 359 feet southerly from the corner formed by the intersection of the easterly side of East 92nd St. with the southerly side of East New York Ave.;

Running thence easterly at right angles to the easterly side of East 92nd St. and part of the distance through a party wall, 100 feet;

Thence southerly parallel with the easterly side of East 92nd St., 4 feet 7 1/4 inches to a farm line;

Thence southerly along said farm line and at an angle of 147 degrees 5 minutes 36 seconds with the last mentioned course. 13 feet 6 3/4 inches;

Thence westerly at right angles to the easterly side of East 92nd St., 92 feet 7 1/2 inches to the easterly side of 92nd St.;

Thence northerly along the easterly side of 92nd St., 16 feet to the point or place of Beginning.

For Information Only: Section 15  Block 4595  Lot 108

**Exhibit C**

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2005112101223001001EE2A8

## RECORDING AND ENDORSEMENT COVER PAGE

| | | |
|---|---|---|
| **Document ID:** 2005112101223001 | Document Date: 11-21-2005 | **PAGE 1 OF 2** |
| **Document Type:** SATISFACTION OF MORTGAGE | | Preparation Date: 11-21-2005 |
| **Document Page Count:** 1 | | |

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| PEELLE MANAGEMENT CORPORATION<br>P. O. BOX 1710<br>CAMPBELL, CA 95009-1710<br>408-866-6868 | PEELLE MANAGEMENT CORPORATION<br>P. O. BOX 1710<br>CAMPBELL, CA 95009-1710<br>408-866-6868 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 5231 | 70 | Entire Lot | 499 EAST 29 STREET |

Property Type: DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

CRFN: 2004000731603

### PARTIES

| **MORTGAGER/BORROWER:** | **MORTGAGEE/LENDER:** |
|---|---|
| FARHAAD YACOOB | RESIDENTIAL FUNDING CORPORATION |

### FEES AND TAXES

| Mortgage | | | |
|---|---|---|---|
| Mortgage Amount: | $ 0.00 | Recording Fee: $ | 42.00 |
| Taxable Mortgage Amount: | $ 0.00 | Affidavit Fee: $ | 0.00 |
| Exemption: | | NYC Real Property Transfer Tax Filing Fee: | |
| TAXES: County (Basic): | $ 0.00 | $ | 0.00 |
| City (Additional): | $ 0.00 | NYS Real Estate Transfer Tax: | |
| Spec (Additional): | $ 0.00 | $ | 0.00 |
| TASF: | $ 0.00 | | |
| MTA: | $ 0.00 | |
| NYCTA: | $ 0.00 | |
| Additional MRT: | $ 0.00 | |
| TOTAL: | $ 0.00 | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed          11-30-2005 14:27

City Register File No.(CRFN):

2005000663073

*Annette M Hill*

*City Register Official Signature*

RECORDING REQUESTED BY / RETURN TO:
Peelle Management Corporation
P.O. Box 30014, Reno, NV 89520-9818

## Satisfaction Of Mortgage

WHEREAS the indebtedness secured by the mortgage described below has been fully paid and satisfied,
Residential Funding Corporation,
2711 North Haskell Avenue, Dallas, TX 75204
owner and holder of the debt, hereby declares that the lien of said mortgage is forever discharged and satisfied.
Original Mortgagee: BERKSHIRE FINANCIAL GROUP INC
Original Mortgagor: FARHAAD YACOOB
Recorded in Kings County, New York, on 11/26/04 as Inst. # 2004000731603
Section: Block: 5231 Lot: 70 Tax ID: 05231 0070
Property address: 499 E 29th St Brooklyn, Ny 11226
Date of mortgage: 01/26/04 Amount of mortgage: $348500.00
                    THIS SATISFACTION INCLUDES THE FOLLOWING:
Assignment recorded concurrently From: BERKSHIRE FINANCIAL GROUP INC To: FIRST NATIONAL BANK OF NEVADA
Assignment FROM: FIRST NATIONAL BANK OF NEVADA TO: RESIDENTIAL FUNDING CORPORATION
Recorded 08/14/05 Inst# 2005000344429
DATE OF SATISFACTION: 02/16/05

NOW THEREFORE, the recorder or clerk of said county is hereby instructed to record this instrument and to
satisfy and discharge the mortgage in accordance with the regulations of said state and county.
DATED: 11/21/2005
Residential Funding Corporation
   2711 North Haskell Avenue, Dallas, TX 75204

By: _____
      Norm Harrison
      Vice President

State of California
County of Santa Clara
On 11/21/2005, before me, the undersigned, a Notary Public, in and for said State, personally appeared
Norm Harrison personally known to me or proved to me on the basis of satisfactory evidence to be
the individual whose name is subscribed to the within written instrument and acknowledged to me that
he executed the same in his authorized capacity, and that by his signature on the instrument the
individual, or the person upon behalf of which the individual acted, executed the instrument, and that such
individual made such appearance before the undersigned in the county of Santa Clara, California.

Notary: Paula Ward
My Commission Expires: 01/11/06

PAULA WARD
COMM. 1336184
NOTARY PUBLIC - CALIFORNIA
SANTA CLARA COUNTY
My Comm. Expires JAN. 11, 2006

Prepared by: E. N. Harrison, Peelle Management Corporation, 4680 Langley Lane, Suite #5, Reno, NV 89502
LN# 0437817152 Investor LN# 9177714 P.I.F.: 02/16/05
TEST RECON.m 90816 Ch:00 Inv#15 id1 03/29/05 10:13:46 31-047 NY Kings 9230:35 1

**Exhibit D**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-----------------------------------------------------------------x

LUCIENNE LOMBARD,                                    Index No.: 36016/05

                              Plaintiff,

        -against-

FARHAAD YACOOB, NADIA YACOOB, GUARANTEED        **THIRD**
HOME MORTGAGE COMPANY INC., BERKSHIRE           **VERIFIED**
FINANCIAL GROUP, INC., FIRST NATIONAL BANK OF   **AMENDED**
NEVADA, RESIDENTIAL FUNDING CORPORATION,        **COMPLAINT**
BENJAMIN JACOB TURNER, ATARA HIRSCH-TWERSKY,
JONATHAN J. MASON-KINSEY, CHICAGO
TITLE INSURANCE COMPANY, DECISION 2000 REAL
ESTATE SERVICES, INC., AUGUSTA UWECHUE,
SPAULDING PROPERTIES INC., FINANCE AMERICA, LLC,
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC. as nominee for FINANCE AMERICA, LLC, and HSBC
BANK USA, N.A., AS TRUSTEE FOR THE REGISTERED
HOLDERS OF ACE SECURITIES CORP. HOME EQUITY
LOAN TRUST, SERIES 2005-HE3, ASSET BACKED
PASS-THROUGH CERTIFICATES,

                              Defendants.

-----------------------------------------------------------------x

        Plaintiff LUCIENNE LOMBARD, by her attorney, Howard W. Rachlin, Esq., for

her third verified amended complaint against Defendants FARHAAD YACOOB, NADIA

YACOOB, GUARANTEED HOME MORTGAGE COMPANY INC., BERKSHIRE

FINANCIAL GROUP, INC., FIRST NATIONAL BANK OF NEVADA, RESIDENTIAL

FUNDING CORPORATION, BENJAMIN JACOB TURNER, ATARA HIRSCH-

TWERSKY, JONATHAN J. MASON-KINSEY, CHICAGO TITLE INSURANCE

COMPANY, DECISION 2000 REAL ESTATE SERVICES, INC., AUGUSTA

UWECHUE, SPAULDING PROPERTIES INC., FINANCE AMERICA, LLC and

EXHIBIT A

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as nominee for FINANCE AMERICA, LLC, and upon information and belief, alleges as follows:

## PARTIES

1.    At all times hereinafter mentioned, LUCIENNE LOMBARD ("Plaintiff") was and still is a resident of the State of New York, County of Kings.

2.    At all times hereinafter mentioned, Defendant FARHAAD YACOOB was and still is a resident of the State of New York, County of Queens.

3.    At all times hereinafter mentioned, Defendant NADIA YACOOB was and still is a resident of the State of New York, County of Queens.

4.    At all times hereinafter mentioned, Defendant GUARANTEED HOME MORTGAGE COMPANY INC. was and still is a corporation organized and existing under the laws of the State of New York.

5.    Defendant GUARANTEED HOME MORTGAGE COMPANY INC. has its principal place of business in the County of Westchester, State of New York.

6.    At all times hereinafter mentioned, Defendant BERKSHIRE FINANCIAL GROUP, INC. was and still is a corporation organized and existing under the laws of the State of New York.

7.    Defendant BERKSHIRE FINANCIAL GROUP, INC. has its principal place of business in the County of Richmond, State of New York.

8.    At all times hereinafter mentioned, Defendant FIRST NATIONAL BANK OF NEVADA was and still is a chartered bank.

9.    Defendant FIRST NATIONAL BANK OF NEVADA conducts business in the State of New York.

10.    At all times hereinafter mentioned, Defendant RESIDENTIAL FUNDING CORPORATION was and still is a corporation organized and existing under the laws of the State of Delaware.

11.    Defendant RESIDENTIAL FUNDING CORPORATION has its principal place of business in the County of Hennepin, State of Minnesota.

12.    Defendant RESIDENTIAL FUNDING CORPORATION conducts business in the State of New York.

13.    At all times hereinafter mentioned, Defendant BENJAMIN JACOB TURNER was and still is an attorney, licensed to practice law in the State of New York and maintains his principal office in the County of Kings, State of New York.

14.    At all times hereinafter mentioned, Defendant ATARA HIRSCH-TWERSKY was and still is an attorney, licensed to practice law in the State of New York and maintains her principal office in the County of Kings, State of New York.

15    At all times hereinafter mentioned, Defendant JONATHAN G. MASON-KINSEY was and still is an attorney, licensed to practice law in the State of New York and maintains his principal office in the County of Kings, State of New York.

16.    At all times hereinafter mentioned, Defendant CHICAGO TITLE INSURANCE COMPANY was and still is a foreign insurance company organized and existing under the Insurance Laws of the State of Illinois and authorized to do business in the State of New York.

17.    Defendant CHICAGO TITLE INSURANCE COMPANY conducts business in the State of New York.

18.    At all times hereinafter mentioned, Defendant DECISION 2000 REAL

ESTATE SERVICES, INC. was and still is a corporation organized and existing under

the laws of the State of New York.

19.    Defendant DECISION 2000 REAL ESTATE SERVICES, INC. has its

principal place of business in the County of Suffolk, State of New York.

20.    At all times hereinafter mentioned, Defendant AUGUSTA UWECHUE was

and still is a resident of the State of New York, County of Queens.

21.    At all times hereinafter mentioned, Defendant AUGUSTA UWECHUE was

an employee, agent or otherwise authorized to act on behalf of Defendant DECISION

2000 REAL ESTATE SERVICES, INC. and/or Defendant CHICAGO TITLE

INSURANCE COMPANY.

22.    At all times hereinafter mentioned, Defendant SPAULDING

PROPERTIES, INC. was and still is a corporation organized and existing under the laws

of the State of New York.

23.    Defendant SPAULDING PROPERTIES, INC. has its principal place of

business in the County of Suffolk, State of New York.

24.    At all times hereinafter mentioned, Defendant FINANCE AMERICA, LLC is

a foreign corporation organized and existing under the laws of the State of Delaware

and was authorized to do business in the State of New York.

25.    At all times hereinafter mentioned, Defendant FINANCE AMERICA, LLC

conducted business in the State of New York.

26.    At all times hereinafter mentioned, Defendant MORTGAGE ELECTRONIC

REGISTRATION SYSTEMS, INC. was and still is a foreign corporation organized and

existing under the laws of the State of Delaware and is authorized to do business in the State of New York.

27.    At all times hereinafter mentioned, Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. conducted business in the State of New York.

28.    At all times hereinafter mentioned, Defendant HSBC BANK USA, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF ACE SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2005-HE3, ASSET BACKED PASS-THROUGH CERTIFICATES was and still is a state chartered bank.

29.    At all times hereinafter mentioned, Defendant HSBC BANK USA, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF ACE SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2005-HE3, ASSET BACKED PASS-THROUGH CERTIFICATES conducted business in the State of New York.

## BACKGROUND

30.    Prior to January 26, 2004, Plaintiff was the owner in fee of the following described premises:

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings City and State of New York, bounded and described as follows:

BEGINNING at a point on the easterly side of East 29th Street distant 660 feet northerly from the corner formed by the intersection of the easterly side of East 29th Street with the northerly side of Avenue F;

running thence easterly and parallel with Avenue F, 100 feet to the centre line of the block;

thence northerly along the centre line of the block and parallel with East 29th Street, 40 feet;

thence westerly and parallel with Avenue F, 100 feet to the easterly side of East 29the Street;

thence southerly along the easterly side of East 29th Street, 40 feet to the point or place of BEGINNING

Avenue F is also known as Farragut Road.

Said premises also being known as and by street number 499 East 29th Street, Brooklyn, New York (the "Premises").

31.    At all times hereinafter mentioned, Plaintiff has occupied the first floor apartment of the Premises, a tenant occupied a portion of the second floor apartment of the Premises but has since vacated same, and Plaintiff's son occupied the other portion of the second floor apartment and, since the tenant has vacated same, Plaintiff's son currently occupies the entire second floor apartment of the Premises.

32.    At all times hereinafter mentioned, Plaintiff had been collecting rent from the tenant occupying a portion of the second floor of the Premises prior to such tenant vacating same.

33.    In December of 2003, Defendant NADIA YACOOB, who represented that she was an employee and/or agent of Defendant GUARANTEED HOME MORTGAGE COMPANY, INC., contacted Plaintiff by telephone as a cold call, represented herself as a mortgage broker and offered to act as Plaintiff's broker in the refinance of the mortgage on the Plaintiff's Premises.

34.    Said Defendant represented that she could obtain a mortgage for Plaintiff which would be large enough so as to satisfy Plaintiff's current mortgage on the Premises with Ocwen Federal Bank FSB and to use the remaining proceeds to make improvements to the Premises.

35.    Plaintiff, unsatisfied with her current mortgage lender Ocwen Federal Bank FSB, being under a threat of foreclosure decided to refinance the mortgage.

36.    On January 26, 2004, Plaintiff was telephoned by Defendant NADIA
YACOOB and was told to come to said Defendant's office, located at 4701-4703
Avenue N, Brooklyn, New York at or about 6:00 PM for the refinance.

37.    Upon arriving at the office of Defendants NADIA YACOOB and
GUARANTEED HOME MORTGAGE COMPANY, INC., Plaintiff was driven to the
address known as 2800 Kings Highway, Brooklyn, New York, where she was introduced
for the first time to Defendant BENJAMIN JACOB TURNER.

38.    At said closing Plaintiff was told that Defendant BENJAMIN JACOB
TURNER was an attorney purportedly there to represent her in the underlying refinance
transaction.

39.    Plaintiff never spoke to Defendant BENJAMIN JACOB TURNER prior to
said January 26, 2004 closing.

40.    At the closing which started on the same date at or about 7PM and held at
2800 Kings Highway, Brooklyn, New York, Plaintiff executed a number of documents,
which Defendants NADIA YACOOB, GUARANTEED HOME MORTGAGE COMPANY
INC. and BENJAMIN JACOB TURNER represented were the necessary documents to
complete the refinancing however such documents were not explained by said
Defendants to Plaintiff.

41.    Plaintiff started feeling uncomfortable as she did not understand what she
was signing and no one ever explained to her what she was signing.

42.    After such signing, Plaintiff noticed that Defendant FARHAAD YACOOB
was also signing documents at the closing.

43.    Plaintiff did not understand why a person she does not know should be signing any documents at the refinance closing of her Premises.

44.    Accordingly, Plaintiff inquired from Defendants NADIA YACOOB and GUARANTEED HOME MORTGAGE COMPANY INC. as to who was the person signing the documents and why he was signing them.

45.    Defendant NADIA YACOOB and GUARANTEED HOME MORTGAGE COMPANY INC. represented the signer as her husband Defendant FARHAAD YACOOB and said that he was signing the documents to help Plaintiff obtain the mortgage.

46.    Plaintiff became suspicious that the mortgage broker's husband was present and was signing documents.

47.    Accordingly, Plaintiff announced that she was not going through with the transaction, stopped the closing, took copies of some documents and left at approximately 10PM, thinking that the transaction was not completed.

48.    Plaintiff, having no legal, real estate or mortgage expertise or experience and being an immigrant who does not fully comprehend writings in English, was under the impression that the mortgage refinance transaction was never completed and she has been and remained, at all times, the lawful owner of the Premises.

49.    Defendant NADIA YACOOB knew that the day following the closing, Plaintiff was returning to her native country, Haiti for approximately two months.

50.    Upon Plaintiff's return from Haiti in March of 2004, Plaintiff telephoned Defendant NADIA YACOOB, who told Plaintiff that the mortgage refinance transaction

was completed after Plaintiff had left the closing and then Defendant NADIA YACOOB hung up on Plaintiff.

51.    Thereafter, Plaintiff telephoned Defendant BENJAMIN JACOB TURNER and inquired regarding the whereabouts of the net proceeds from the mortgage refinance.

52.    Defendant BENJAMIN JACOB TURNER did not provide any definitive response to Plaintiff.

53.    In or about May 2005, Plaintiff received a letter at Plaintiff's address from an insurance company regarding "landlords insurance", which letter was addressed to FARHAAD YACOOB.

54.    It was not until Plaintiff received this letter, that she became aware that on January 26, 2004 she had conveyed the Premises to Defendant FARHAAD YACOOB without having the intention to do so or knowledge that she had done so.

55.    On or about October 28, 2005, your deponent received a Notice of Petition and Petition, indicating that Defendant FARHAAD YACOOB commenced a holdover proceeding against Plaintiff in the Civil Court of the City of New York, County of Kings, Index No. 98592-2005, seeking to evict Plaintiff from the Premises and alleging that Defendant had leased the Premises to Plaintiff pursuant to an oral rental agreement, that the said lease expired on September 30, 2005 and that Plaintiff defaulted in paying

rent for the Premises from June 2004 through October 2005, in the total amount of $63,010.50.[1]

56.   Thereafter Plaintiff learned, the following, among other things:

(a)   that on January 26, 2004, Plaintiff had executed a deed for the Premises, whereby the Premises were fraudulently conveyed to Defendant FARHAAD YACOOB. The deed was recorded on November 26, 2004. A copy of said deed is annexed hereto as Exhibit A;

(b)   that, a Contract of Sale had never been executed prior to said conveyance;

(c)   that Defendant FARHAAD YACOOB, as mortgagor, and BERKSHIRE FINANCIAL GROUP, INC., as mortgagee, entered into an agreement, by which the latter granted the former a mortgage secured by the Premises, in the principal amount of $348,500.00. Said mortgage was recorded on November 26, 2004. A copy of said mortgage is annexed hereto as Exhibit B;

(d)   that, Defendant BERKSHIRE FINANCIAL GROUP, INC. assigned said mortgage to Defendant FIRST NATIONAL BANK OF NEVADA, which assignment was recorded on November 30, 2005. A copy of said assignment is annexed hereto as Exhibit C. Thereafter, on March 9, 2005, Defendant FIRST NATIONAL BANK OF NEVADA further assigned said mortgage to RESIDENTIAL FUNDING CORPORATION, which assignment was recorded on June 14, 2005. A copy of said assignment is annexed hereto as Exhibit D.

(e)   that on February 15, 2005, Defendant FARHAAD YACOOB, as mortgagor, and Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as a nominee for FINANCE AMERICA, LLC, as mortgagee, entered into an agreement, by which the latter granted the former a mortgage secured by the Premises, in the principal amount of $450,000.00. Said mortgage was recorded on January 4, 2006. A copy of said mortgage is annexed hereto as Exhibit E;

(f)   that on July 30, 2005, Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as a nominee for FINANCE AMERICA, LLC, as mortgagee, assigned the said mortgage to Defendant HSBC BANK USA, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF ACE SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2005-HE3, ASSET BACKED PASS-THROUGH

---

[1]   During the closing, which took place on January 26, 2004, Plaintiff and Defendant FARHAAD YACOOB executed an agreement, according to which Plaintiff retained "the right to live rent free in the premises for one year from the date of closing." Accordingly, even if Defendant FARHAAD YACOOB was the lawful owner of the Premises, which he is not, the said agreement, in and of itself, defeats his claim alleging rent arrears from June 2004 through and including January 2005.

CERTIFICATES, which assignment was recorded on June 15, 2006. A copy of the said assignment is annexed hereto as Exhibit F.

(g)    that Plaintiff's mortgage payable to Ocwen Federal Bank FSB was discharged on February 10, 2004 and the said discharge was recorded on July 4, 2004.

(h)  that according to the transfer documents and HUD-1 statement, Plaintiff has sold the Premises to Defendant FARHAAD YACOOB for $410,000.00, the net proceeds of which were never paid to Plaintiff although said documents indicated otherwise.

(i)    that the HUD-1 statement has a number of unexplained items. A copy of HUD-1 executed at the closing is annexed hereto as Exhibit G. For example,

    i.    "seller's concession" of $6,970.00;

    ii.    a payoff to "Citibank" of $42,000.00;

    iii.    "net proceeds" to Plaintiff of $117,949.37, which Plaintiff never received;

    iv.    seller's broker commissions in the amount of $24,000.00 payable to Defendant SPAULDING PROPERTIES INC. even though there was no sale insofar as Plaintiff did not understand that a sale of her home had taken place and Plaintiff never received any proceeds of any such alleged sale; and

    v.    a "loan origination fee" of Defendant BERKSHIRE FINANCIAL GROUP INC. in the amount of $17,425.00 and other fees payable to said defendant.

(j)    that among the documents executed at the closing, there was an agreement whereby Plaintiff could reacquire the Premises from Defendant FARHAAD YACOOB within a year of the closing date for the amount of the liens on the Premises (which was the new mortgage of $348,500.00 plus title charges, brokerage fees, purchaser's bank charges and other purchaser's charges, which amounted, according to the HUD-1, to $35,514.38) although Plaintiff's payoff on her mortgage with Ocwen Federal Bank FSB was only $207,484.59. Defendants NADIA YACOOB, GUARANTEED HOME MORTGAGE COMPANY, INC. and FARHAAD YACOOB knew or should have known that Plaintiff, being unable to pay off a mortgage in the principal amount of $125,000.00, on which there was a purported amount due of $207,484.59 to Ocwen Federal Bank FSB who had as a result commenced a foreclosure proceeding against Plaintiff, she certainly could not raise $348,500.00 plus expenses within one year to repurchase the Premises, making the agreement as to Plaintiff's right to repurchase the Premises practically impossible to effectuate. A copy of such agreement is annexed hereto as Exhibit H.

(k)    that the mortgage payoff letter received from Ocwen Federal Bank FSB apparently misrepresented the actual payoff due. In fact, Ocwen Federal Bank FSB is currently a Defendant in a class action suit commenced against it, where

plaintiffs therein allege, among other things, that the bank engaged in fraudulent consumer practices, such as overcharging borrowers bogus service, late and escrow fees. See In re: Ocwen Federal Bank FSB Mortgage Servicing Litigation, MDL No. 1604, Case No. 04 C 2714 (District Court for the Northern District of Illinois).

57.    Defendant ATARA HIRSCH-TWERSKY as attorney for Defendant BERKSHIRE FINANCIAL GROUP INC. and as the settlement agent designated on the HUD-1, acknowledged on said document that all the statements made therein were true and correct.

58.    Defendant JONATHAN J. MASON-KINSEY represented Defendant FARHAAD YACOOB at the closing of the Premises on January 26, 2004.

59.    Defendant AUGUSTA UWECHUE is an employee, agent or otherwise authorized to act on behalf of Defendant DECISION 2000 REAL ESTATE SERVICES, INC. who acted as agent for Defendant CHICAGO TITLE INSURANCE COMPANY.

60.    Defendants AUGUSTA UWECHUE, DECISION 2000 REAL ESTATE SERVICES, INC. and/or CHICAGO TITLE INSURANCE COMPANY delivered the above described deed and the mortgage then held by Defendant BERKSHIRE FINANCIAL GROUP, INC., among other documents, for recording to the New York City Register.

61.    Defendant SPAULDING PROPERTIES INC. received real estate brokerage commissions from the above-described transaction although no sale of the Premises was intended by Plaintiff, said Defendant was never retained by Plaintiff and said Defendant was not the procuring cause of said purported sale.

### AS AND FOR A FIRST CAUSE OF ACTION:
### Actual and Constructive fraud and collusion:
### against Defendants FARHAAD YACOOB, NADIA YACOOB
### and GUARANTEED HOME MORTGAGE COMPANY INC.

62.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 61 of this complaint as if more fully set forth herein at length.

63.    Defendants NADIA YACOOB, individually and as an agent and/or employee of GUARANTEED HOME MORTGAGE COMPANY INC., as Plaintiff's mortgage broker and in concert with FARHAAD YACOOB, represented to Plaintiff that they would help her refinance the mortgage on the Premises.

64.    As Plaintiff's mortgage broker, Defendants NADIA YACOOB, individually and as an agent and/or employee of GUARANTEED HOME MORTGAGE COMPANY INC., acted in fiduciary or confidential capacity with regards to the refinancing of the Plaintiff's mortgage on the Premises.

65.    At the time said representation was made, Defendants NADIA YACOOB, individually and as an agent and/or employee of GUARANTEED HOME MORTGAGE COMPANY INC., and FARHAAD YACOOB knew that said representation was false when they made it and that they never intended to help Plaintiff refinance the mortgage on the Premises, but instead, that they intended to convey the Premises to FARHAAD YACOOB.

66.    Notwithstanding such knowledge, Defendants NADIA YACOB, individually and as an agent and/or employee of GUARANTEED HOME MORTGAGE COMPANY INC. and FARHAAD YACOOB made various material misrepresentations to Plaintiff,

13

among which were the misrepresentations that the mortgage on the Premises will be refinanced and that Defendant FARHAAD YACOOB was signing documents at the closing to help Plaintiff in the refinancing.

67.    Such material misrepresentations were made by Defendants NADIA YACOOB, individually and as an agent and/or employee of GUARANTEED HOME MORTGAGE COMPANY INC., and FARHAAD YACOOB with intent of deceiving Plaintiff and inducing her into signing the documents she did not understand, so that she would convey the Premises to Defendant FARHAAD YACOOB.

68.    Plaintiff reasonably relied on these material misrepresentations and was induced thereby to sign the documents which she did not understand, which conveyed the Premises to FARHAAD YACOOB.

69.    Defendants NADIA YACOOB, individually and as an agent and/or employee of GUARANTEED HOME MORTGAGE COMPANY INC., and FARHAAD YACOOB induced Plaintiff into believing that the documents she was signing were necessary to complete the refinance of her mortgage on the Premises, while the documents were being signed for the purpose of effectively conveying the Premises to Defendant FARHAAD YACOOB without the intention of refinancing Plaintiff's mortgage on the Premises.

70.    Plaintiff would not have signed any of the documents at the closing, had she known of the Defendants NADIA YACOOB's, GUARANTEED HOME MORTGAGE COMPANY INC.'s and FARHAAD YACOOB's intentions of conveying the Premises to FARHAAD YACOOB.

71.    Once Plaintiff became suspicious that the broker's husband, Defendant FARHAAD YACOOB was signing the documents at the closing, she stopped the closing and walked out thinking it was never completed.

72.    Plaintiff never received any of the net proceeds from the transaction.

73.    Plaintiff did not learn of the conveyance and Defendants NADIA YACOOB's, GUARANTEED HOME MORTGAGE COMPANY INC.'s and FARHAAD YACOOB's true intentions until she received a letter to the address of the Premises from an insurance company, entitled "landlords insurance" and addressed to Defendant FARHAAD YACOOB.

74.    Moreover, as more fully described above, Defendant FARHAAD YACCOOB encumbered the Premises with a mortgage with Defendant BERKSHIRE FINANCIAL GROUP, INC., who assigned said mortgage to Defendant FIRST NATIONAL BANK OF NEVADA who further assigned it to Defendant RESIDENTIAL FUNDING CORPORATION. See Exhibits B, C and D.

75.    Thereafter, Defendant FARHAAD YACOOB gained even further financial benefit from the fraudulent transaction by entering into an agreement on February 15, 2005, by which he refinanced the Premises, whereby the mortgage with Defendant RESIDENTIAL FUNDING CORPORATION was discharged and a new mortgage was taken on the Premises with Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as a nominee for FINANCE AMERICA, LLC, in the principal amount of $450,000.00. Said mortgage, however, was not recorded until January 4, 2006. See Exhibit E;

76.    As a result of the foregoing, a judgment should be rendered in favor of Plaintiff and against Defendant FARHAAD YACOOB:

(a)    declaring the deed conveying title to the Premises from the Plaintiff to defendant FARHAAD YACOOB fraudulent and declaring said deed null and void *ab initio* and of no effect, and

(b)    directing the City Register of the City of New York, County of Kings, to mark its records in accordance with the foregoing so as to cancel the aforesaid deed as a matter of record; or,

(c)    in the alternative, directing Defendant FARHAAD YACOOB to re-convey the Premises back to Plaintiff free of the above described mortgage in the amount of $450,000.00 and to execute all other documents necessary to effectuate the foregoing, including but not limited to, execution of a bargain and sale deed with covenants against grantor's acts and transfer documents, or,

(d)    in the alternative, appointing Plaintiff as receiver of the Premises for the purposes of making such re-conveyance; and

(e)    awarding plaintiff all expenses of such re-conveyance.

## AS AND FOR A SECOND CAUSE OF ACTION
### Constructive Trust
### against Defendants NADIA YACOOB, GUARANTEED HOME MORTGAGE COMPANY INC. and FARHAAD YACOOB

77.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 76 of this complaint as if more fully set forth herein at length.

78.    As Plaintiff's mortgage broker, Defendants NADIA YACOOB, acting individually and as an agent and/or employee of GUARANTEED HOME MORTGAGE

COMPANY INC., acted in fiduciary or confidential capacity with regards to the refinancing of the Plaintiff's mortgage on the Premises.

79.    Plaintiff relied upon the representation made by Defendants NADIA YACOOB, acting individually and as an agent and/or employee of GUARANTEED HOME MORTGAGE COMPANY INC., in concert with FARHAAD YACOOB, that Defendant NADIA YACOOB and GUARANTEED HOME MORTGAGE COMPANY INC. would help Plaintiff refinance her mortgage on the Premises.

80.    Plaintiff relied upon the confidential relationship between Plaintiff and Defendants NADIA YACOOB and GUARANTEED HOME MORTGAGE COMPANY INC. in executing the documents at the closing.

81.    Plaintiff never intended to transfer her property either to Defendant FARHAAD YACOOB or otherwise, and only transferred it as a result of Defendants NADIA YACOOB's, GUARANTEED HOME MORTGAGE COMPANY INC.'s and FARHAAD YACOOB's misrepresentations.

82.    The actions of Defendants NADIA YACOOB, GUARANTEED HOME MORTGAGE COMPANY INC. and FARHAAD YACOOB, inducing Plaintiff to convey the Premises to FARHAAD YACOOB are fraudulent and in direct violation of the trust created by the confidential relationship between Plaintiff and Defendants NADIA YACOOB and GUARANTEED HOME MORTGAGE COMPANY INC.

83.    Defendant FARHAAD YACOOB would be unjustly enriched if the aforementioned deed were not declared a nullity or if the Premises are not reconveyed to Plaintiff pursuant to the constructive trust created by virtue of the confidential relationship created between Plaintiff and Defendants NADIA YACOOB and

GUARANTEED HOME MORTGAGE COMPANY INC. and the fraud perpetrated against Plaintiff as a result.

84.    Plaintiff has no adequate remedy at law.

85.    As a result of the foregoing, Plaintiff requests and prays that a judgment be rendered impressing constructive trust upon Premises for the benefit of the Plaintiff:

(a) declaring the deed conveying title to the Premises from Plaintiff to Defendant FARHAAD YACOOB fraudulent and declaring said deed null and void *ab initio* and of no effect; and

(b)    directing the City Register of the City of New York, County of Kings, to mark its records in accordance with the foregoing so as to cancel the aforesaid deed as a matter of record; or,

(c)    in the alternative, directing Defendant FARHAAD YACOOB to re-convey the Premises back to Plaintiff free of the above-described mortgage in the amount of $450,000.00 and to execute all other documents necessary to effectuate the foregoing, including but not limited to, execution of a bargain and sale deed with covenants against grantor's acts and transfer documents, or,

(d)    in the alternative, appointing Plaintiff as receiver of the Premises for the purposes of making such re-conveyance and,

(e)    any expenses of such re-conveyance.

## AS AND FOR THIRD CAUSE OF ACTION
### Declaratory Judgment:
### against FARHAAD YACOOB,
### BERKSHIRE FINANCIAL GROUP, INC.,
### FIRST NATIONAL BANK OF NEVADA, RESIDENTIAL
### FUNDING CORPORAITON, FINANCE AMERICA, LLC,
### MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as nominee for
### FINANCE AMERICA, LLC and HSBC BANK USA, N.A., AS TRUSTEE FOR
### THE REGISTERED HOLDERS OF ACE SECURITIES CORP. HOME EQUITY LOAN
### TRUST, SERIES 2005-HE3, ASSET BACKED PASS-THROUGH CERTIFICATES

86.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 85 of this complaint as if more fully set forth herein at length.

87.    As a result of a conveyance of the Premises to Defendant FARHAAD YACOOB being fraudulent, such conveyance should be set aside as void *ab initio*.

88.    In addition, Defendant FARHAAD YACOOB executed a mortgage on the Premises in favor of Defendant BERKSHIRE FINANCIAL GROUP, INC. upon the fraudulent conveyance thereof.

89.    As Defendant FAHAAD YACOOB held title as a result of the above-described fraudulent conduct, the mortgage given by BERKSHIRE FINANCIAL GROUP, INC. was used by Defendants FARHAAD YACOOB and NADIA YACOOB in the perpetration of such fraud and should likewise be set a side as void *ab initio*.

90.    Defendants NADIA YACOOB and GUARANTEED HOME MORTAGE COMPANY INC., acted as the mortgage broker and/or agent of BERKSHIRE FINANCIAL GROUP, INC. at said closing at which Defendant ATARA HIRSH-TWERSKY acted as BERKSHIRE FINANCIAL GROUP, INC.'s attorney and/or settlement agent.

91.    Defendant BERKSHIRE FINANCIAL GROUP, INC. knew or should have known that the closing had not been completed, that Plaintiff never received the consideration set forth in the transfer documents and HUD-1 for executing said deed and conveying the Premises to Defendant FARHAAD YACOOB and that Plaintiff did not intend to transfer title to the Premises nor did Plaintiff receive the net mortgage proceeds for the mortgage loan made by Defendant BERKSHIRE FINANCIAL GROUP, INC.

92.    Defendant BERKSHIRE FINANCIAL GROUP, INC. then assigned said mortgage to FIRST NATIONAL BANK OF NEVADA who thereafter assigned said mortgage to RESIDENTIAL FUNDING CORPORATION, which mortgage was thereafter refinanced and a new mortgage was given to FINANCE AMERICA, LLC. and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., acting as a nominee for FINANCE AMERICA, LLC, which mortgage was subsequently assigned to Defendant HSBC BANK USA, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF ACE SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2005-HE3, ASSET BACKED PASS-THROUGH CERTIFICATES. However, the Notice of Pendency of this proceeding was filed with the Kings County Clerk on November 25, 2005. Accordingly, all assignors, assignees and mortgagees of the Premises who were not previously on notice of the fraud perpetrated on the Plaintiff were on notice of the fraud perpetrated on the Plaintiff and of this matter as of November 25, 2005. Consequently, such assignors, assignees and mortgagees of the Premises were also on notice of this Court's Order dated November 25, 2005, enjoining certain defendants from, *inter alia*, transferring or assigning any mortgages on the Premises.

20

93.   By reason of the foregoing, a judgment should be granted that said mortgages given by FARHAAD YACOOB be declared null and void *ab initio* and, accordingly directing that said mortgages and the assignments thereof be discharged of record by the City Register of the City of New York, Kings County, as against BERKSHIRE FINANCIAL GROUP, FIRST NATIONAL BANK OF NEVADA, RESIDENTIAL FUNDING CORPORATION, FINANCE AMERICA, LLC, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as nominee for FINANCE AMERICA, LLC, and HSBC BANK USA, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF ACE SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2005-HE3, ASSET BACKED PASS-THROUGH CERTIFICATES.

### AS AND FOR A FOURTH CAUSE OF ACTION
#### against Defendants
#### FARHAAD YACOOB, NADIA YACOOB,
#### GUARANTEED HOME MORTGAGE COMPANY INC., BENJAMIN
#### JACOB TURNER, JONATHAN J. MASON-KINSEY and AUGUSTA UWECHUE

94.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 93 of this complaint as if more fully set forth herein at length.

95.   Defendants FARHAAD YACOOB, NADIA YACOOB, GUARANTEED HOME MORTGAGE COMPANY INC. together with Defendant BENJAMIN JACOB TURNER, as Plaintiff's purported attorney at the closing on January 26, 2004, Defendant JONATHAN J. MASON-KINSEY, as Defendant FARHAAD YACOOB's attorney at said closing, and/or AUGUSTA UWECHUE submitted the deed conveying the Premises to FARHAAD YACOOB and the above-described mortgage for recordation, although said Defendants knew or should have known that the closing was

never completed, that Plaintiff never received the consideration set forth in the transfer documents and HUD-1 for executing said deed and conveying the Premises to Defendant FARHAAD YACOOB and that Plaintiff did not intend to transfer title to the Premises nor did Plaintiff receive the net mortgage proceeds for the mortgage loan made by Defendant BERKSHIRE FINANCIAL GROUP, INC.

96.     Despite such actual or constructive knowledge, said Defendants caused the deed and the above-described mortgage to be recorded with the New York City Register, and/or submitted for recordation the documents reflecting and/or based upon numerous material misrepresentations.

97.     Plaintiff has been damaged in the amount to be determined by this Court.

98.     As a result of the foregoing, a judgment should be rendered in favor of Plaintiff and against said Defendants in the amount to be determined by this Court.

### AS AND FOR A FIFTH CAUSE OF ACTION
### Conversion:
### against Defendants FARHAAD YACOOB and NADIA YACOOB

99.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 98 of this complaint as if more fully set forth herein at length.

100.    By a deed executed on January 26, 2004, the Premises were fraudulently conveyed to Defendant FARHAAD YACOOB.

101.    Defendant FARHAAD YACOOB converted the Premises to his own use by acting as the lawful owner thereof and interfering with Plaintiff's lawful ownership interest in the Premises, by he and Defendant NADIA YACOOB causing the Premises to be fraudulently conveyed to FARHAAD YACOOB without the payment of the full

consideration set forth in the transfer documents, by placing the mortgage of Defendant

BERKSHIRE FINANCIAL GROUP, INC. thereon and not delivering the net mortgage

proceeds to Plaintiff.

102.   Accordingly, Plaintiff sustained damages in the amount to be determined

by this Court.

103.   As a result of the foregoing, a judgment should be rendered in favor of

Plaintiff and against Defendant FARHAAD YACOOB and NADIA YACOOB in the

amount to be determined by this Court.

### AS AND FOR A SIXTH CAUSE OF ACTION
### Unjust Enrichment – against Defendants
### FARHAAD YACOOB and NADIA YACOOB

104.   Plaintiff repeats, reiterates and realleges each and every allegation

contained in paragraphs 1 through 103 of this complaint as if more fully set forth herein

at length.

105.   By inducing Plaintiff to sign the documents at the closing, fraudulently

conveying the Premises to Defendant FARHAAD YACOOB, Defendants FARHAAD

YACOOB and NADIA YACOOB were enriched by the fair market value of the Premises

less any encumbrances thereon.

106.   Accordingly, said Defendants were unjustly enriched at the expense of

Plaintiff.

107.   Defendants FARHAAD YACOOB and NADIA YACOOB should not obtain

the benefit of the conveyance of the Premises to him, since such conveyance was

obtained by fraud, perpetrated by Defendants FARHAAD YACOOB and NADIA

YACOOB.

108.   Plaintiff has been damaged in an amount to be determined by the Court.

109.   As a result of the foregoing, a judgment should be rendered in favor of Plaintiff and against Defendants FARHAAD YACOOB and NADIA YACOOB in an amount to be determined by the Court

## AS AND FOR A SEVENTH CAUSE OF ACTION
### Unjust Enrichment:
against FARHAAD YACOOB, NADIA YACOOB,
GUARANTEED HOME MORTGAGE COMPANY INC.,
BENJAMIN JACOB TURNER, JONATHAN J. MASON-KINSEY,
AUGUSTA UWECHUE, SPAULDING PROPERTIES INC.

110.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 109 of this complaint as if more fully set forth herein at length.

111.   As a result of the fraudulent conveyance of the Premises to FARHAAD YACOOB, all Defendants have been unjustly enriched at Plaintiff's expense.

112.   Defendant FARHAAD YACOOB has been enriched in the amount of equitable interest he maintains on the Premises as of-the-record owner thereof, in an amount to be determined by the Court.

113.   Defendant NADIA YACOOB has been enriched as Defendant FARHAAD YACOOB's lawful spouse and as an agent and/or employee of GUARANTEED HOME MORTGAGE COMPANY INC. in the amount of the monies she received as a result of the fraudulent conveyance of the Premises, said sum to be determined by this Court.

114.   Defendant GUARANTEED MORTAGE COMPANY INC. was enriched as the principal of NADIA YACOOB or otherwise, in the amount of the monies it received as a result of the fraudulent conveyance of the Premises, said sum to be determined by this Court.

24

115.   Defendant BENJAMIN JACOB TURNER, Esq. was enriched in the amount of legal fees and other monies he received, allegedly, as a result of representing Plaintiff in the refinance transaction and/or at the closing on January 26, 2004, said sum to be determined by this Court.

116.   Defendant JONATHAN J. MASON-KINSEY, Esq. was enriched in the amount of legal fees and other monies he received, allegedly, as a result of representing Defendant FARHAAD YACOOB in the refinance transaction or at the closing on January 26, 2004, said sum to be determined by this Court.

117.   Defendant AUGUSTA UWECHUE was enriched in the amount of monies she received as representative and/or agent of Defendant DECISION 2000 REAL ESTATE SERVICES, INC. as a result of the closing on January 26, 2004, said sum to be determined by this Court.

118.   Defendant SPAULDING PROPERTIES INC. was enriched in the amount of $24,000 and other monies it received, allegedly, as Seller's broker, as a result of the closing on January 26, 2004.

119.   The said Defendants should not obtain the benefit of the conveyance of the Premises, which was procured by fraud committed by Defendants FARHAAD YACOOB, NADIA YACOOB and/or GUARANTEED HOME MORTGAGE COMPANY INC. and Plaintiff should not be responsible for the monies Defendants received, directly or indirectly, as a result of such conveyance.

120.   Plaintiff has been damaged in the amount to be determined by this Court.

121.   As a result of the foregoing, a judgment should be rendered in favor of Plaintiff and against the Defendants FARHAAD YACOOB, NADIA YACOOB,

25

12-12020-mg   Doc 8758-1   Filed 06/15/15   Entered 06/15/15 16:37:47   Exhibit 1
Pg 105 of 159
12-12020-mg   Doc 7392-4   Filed 08/18/14   Entered 08/18/14 15:15:52   Exhibit
Pg 27 of 60

GUARANTEED HOME MORTGAGE COMPANY INC., BENJAMIN JACOB TURNER, JONATHAN J. MASON-KINSEY, AUGUSTA UWECHUE and SPAULDING PROPERTIES INC. in an amount to be determined by this Court.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
#### Negligence;
#### Against Defendant BENJAMIN JACOB TURNER

122.  Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 121 of this complaint as if more fully set forth herein at length.

123.  Upon information and belief, Defendant BENJAMIN JACOB TURNER represented Plaintiff's interests at the closing on January 26, 2004.

124.  As such, Defendant BENJAMIN JACOB TURNER owed Plaintiff a duty of care that an attorney owes to his or her client.

125.  Defendant BENJAMIN JACOB TURNER violated his duty of care to Plaintiff by inadequately, incompetently and negligently representing the interests of Plaintiff in the refinance transaction insofar as (a) Plaintiff's mortgage on the Premises was never refinanced; (b) Plaintiff never received the net proceeds from the refinance or, for that matter, the conveyance of the Premises to FARHAAD YACOOB; (c) Defendant BENJAMIN JACOB TURNER never accurately described to Plaintiff the documents that she was signing at the closing on January 26, 2004, which had the unintended effect of conveying the Premises to Defendant FARHAAD YACOOB; (d) Defendant BENJAMIN JACOB TURNER caused the deed conveying the Premises to Defendant FARHAAD YACOOB be recorded even though Plaintiff stopped the closing and expressed her intention to Defendant BENJAMIN JACOB TURNER that she did not

26

GUARANTEED HOME MORTGAGE COMPANY INC., BENJAMIN JACOB TURNER,

JONATHAN  J.  MASON-KINSEY,  AUGUSTA  UWECHUE  and  SPAULDING

PROPERTIES INC. in an amount to be determined by this Court.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### Negligence:
### Against Defendant BENJAMIN JACOB TURNER

122.   Plaintiff repeats, reiterates and realleges each and every allegation

contained in paragraphs 1 through 121 of this complaint as if more fully set forth herein

at length.

123.   Upon information and belief, Defendant BENJAMIN JACOB TURNER

represented Plaintiff's interests at the closing on January 26, 2004.

124.   As such, Defendant BENJAMIN JACOB TURNER owed Plaintiff a duty of

care that an attorney owes to his or her client.

125.   Defendant BENJAMIN JACOB TURNER violated his duty of care to

Plaintiff by inadequately, incompetently and negligently representing the interests of

Plaintiff in the refinance transaction insofar as (a) Plaintiff's mortgage on the Premises

was never refinanced; (b) Plaintiff never received the net proceeds from the refinance

or, for that matter, the conveyance of the Premises to FARHAAD YACOOB; (c)

Defendant BENJAMIN JACOB TURNER never accurately described to Plaintiff the

documents that she was signing at the closing on January 26, 2004, which had the

unintended effect of conveying the Premises to Defendant FARHAAD YACOOB; (d)

Defendant BENJAMIN JACOB TURNER caused the deed conveying the Premises to

Defendant FARHAAD YACOOB be recorded even though Plaintiff stopped the closing

and expressed her intention to Defendant BENJAMIN JACOB TURNER that she did not

wish to go ahead with the closing; and (e) was otherwise negligent in representing Plaintiff.

126.    But for Defendant BENJAMIN JACOB TURNER's above described actions, Plaintiff would not have conveyed the Premises to Defendant FARHAAD YACOOB and would have further avoided the damages arising from such conveyance, including the legal fees and expenses of this action.

127.    Based on the foregoing, a judgment should be rendered against Defendant BENJAMIN JACOB TURNER and in favor of Plaintiff, in an amount to be determined by this Court.

## AS AND FOR A NINTH CAUSE OF ACTION
## against Defendant ATARA HIRSCH-TWERSKY

This cause of action was dismissed pursuant to Order of this Court dated September 12, 2006.

## AS AND FOR A TENTH CAUSE OF ACTION
## against Defendant SPAULDING PROPERTIES, INC.

128.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 127 of this complaint as if more fully set forth herein at length.

129.    Plaintiff never retained Defendant SPAULDING PROPERTIES, INC. as her real estate broker.

130.    Defendant SPAULDING PROPERTIES, INC. was not the procuring cause for the purported sale.

131.    Defendant SPAULDING PROPERTIES, INC. received $24,000.00 as a result of the purported sale of the Premises.

132.   However, no sale of the Premises has taken place, as Plaintiff never received the consideration for such alleged sale set forth in the transfer documents and HUD-1.

133.   Accordingly, Defendant SPAULDING PROPERTIES INC. is not entitled for a broker's fee of $24,000.00, which it received at the closing on January 26, 2004.

134.   Plaintiff has been damaged in the amount of $24,000.00.

135.   As a result of the foregoing, a judgment should be rendered in favor of Plaintiff and against said Defendant in the amount of $24,000.00.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
### Usury:
### against Defendant FARHAAD YACOOB

136.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 135 of this complaint as if more fully set forth herein at length.

137.   Among the documents executed at the closing on January 26, 2004, there was an agreement whereby Plaintiff could reacquire the Premises from Defendant FARHAAD YACOOB within a year of the closing date for the amount of the liens on the Premises, which was the new mortgage of $348,500.00 plus title charges, brokerage fees, purchaser's bank charges and other purchaser's charges which amounted to $35,514.38. See Exhibit G (HUD-1) and Exhibit H (the agreement, dated January 26, 2004), between Plaintiff and Defendant FARHAAD YACOOB.

138.   However, Plaintiff's payoff on her mortgage with Ocwen Federal Bank FSB was only $207,484.59.

139.   This amounts to an effective rate of interest of at least 80%, per annum, which is usurious.

140.   Based on the foregoing, the judgment should be rendered against Defendant FARHAAD YACOOB in an amount to be determined by this Court.

### AS AND FOR A TWELFTH CAUSE OF ACTION
#### Unconscionability:
#### against Defendant FARHAAD YACOOB

141.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 140 of this complaint as if more fully set forth herein at length.

142.   As more fully set forth in the preceding paragraphs, among the documents executed at the closing on January 26, 2004, there was an agreement, whereby Plaintiff could reacquire the Premises from Defendant FARHAAD YACOOB within a year of the closing date for the amount of the liens on the Premises, which was the new mortgage of $348,500.00 plus title charges, brokerage fees, purchaser's bank charges and other purchaser's charges amounting to $35,514.38.

143.   Plaintiff did not have a meaningful choice as to whether to sign the agreement or to negotiate its terms, since Defendant NADIA YACOOB represented to her that the agreement, like the other documents signed at the closing, were necessary to refinance the mortgage on the Premises.

144.   The agreement, however, is unenforceable due to the unconscionability of the above described terms, since Plaintiff is effectively incapable of complying with these terms, as she was unable to pay off a mortgage in the principal amount of $125,000.00, on which there was a purported amount due of $207,484.59 to Ocwen

Federal Bank FSB who had as a result commenced a foreclosure proceeding against Plaintiff.

145.    Certainly, Plaintiff could not raise $348,500.00 plus expenses within one year to repurchase the Premises.

146.    Based on the foregoing, a judgment should be rendered against Defendant FARHAAD YACOOB in the amount to be determined by this Court.

### AS AND FOR A THIRTEENTH CAUSE OF ACTION
### Punitive damages;
### against NADIA YACOOB, FARHAAD
### YACOOB, GUARANTEED HOME MORTGAGE
### COMPANY INC., and SPAULDING PROPERTIES, INC.

147.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 146 of this complaint as if more fully set forth herein at length.

148.    The above described actions of Defendants FARHAAD YACOOB and NADIA YACOOB, individually and as an agent and/or employee of GUARANTEED HOME MORTGAGE COMPANY, INC., perpetrating fraud against Plaintiff and resulting in fraudulent conveyance of property, and thereafter, refinancing the mortgage to gain further financial advantage from the fraudulent transaction, involve such a high degree of moral turpitude as to support the award of punitive damages against them.

149.    Further, Defendant SPAULDING PROPERTIES INC. knew of, substantially assisted in, and gained financially from the fraud perpetrated against Plaintiff, thereby justifying the award of punitive damages against such defendants.

150.    Based on the foregoing, a judgment should be rendered against Defendants FARHAAD YACOOB, NADIA YACOOB, GUARANTEED HOME

MORTGAGE COMPANY, INC., and SPAULDING PROPERTIES INC. awarding Plaintiff punitive damages in an amount to be determined by this Court.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION
### Permanent Injunction:
### Against Defendants FARHAAD YACOOB and
### HSBC BANK USA, N.A., AS TRUSTEE FOR THE REGISTERED
### HOLDERS OF ACE SECURITIES CORP. HOME EQUITY LOAN TRUST,
### SERIES 2005-HE3, ASSET BACKED PASS-THROUGH CERTIFICATES

151.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 150 of this complaint as if more fully set forth herein at length.

152.   By reason of the foregoing Defendants FARHAAD YACOOB and HSBC BANK USA, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF ACE SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2005-HE3, ASSET BACKED PASS-THROUGH CERTIFICATES should be permanently enjoined from:

(a)   prosecuting a holdover proceeding pending before the Civil Court of the City of New York, County of Kings, against the Plaintiff, L&T Index No. 98592-2005, and instituting or maintaining any other summary or other proceeding to evict or remove Plaintiff, members of Plaintiff's family or any other occupant from possession of the Premises known as 499 East 29th Street, Brooklyn, New York, a/k/a Block 5231 Lot 70;

(b)   entering into any contracts and/or agreements involving the Premises, offering for sale, selling, transferring, assigning, or in any way conveying the Premises to any person or entity other than Plaintiff;

(c)   executing or recording any deed transferring title to the above described premises to any person or entity other than Plaintiff;

(d)    selling, transferring, assigning, in any way conveying or foreclosing any existing mortgage or other encumbrance against the Premises;

(e)    executing, creating or recording any mortgage or other encumbrance affecting said Premises or any interest of any of the Defendants therein; and

(f)    entering into a lease with or permitting any person or entity other than Plaintiff to take possession of the said premises or collecting any rent from the 2nd floor tenant at the Premises on the grounds that the said acts of Defendants, if committed, will result in the immediate and irreparable harm, injury, loss and damage to Plaintiff.

153.    A permanent injunction so enjoining Defendants FARHAAD YACOOB and HSBC BANK USA, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF ACE SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2005-HE3, ASSET BACKED PASS-THROUGH CERTIFICATES is necessary to protect Plaintiff's ownership interest in the Premises since Plaintiff has no adequate remedy at law as a money judgment will not adequately compensate Plaintiff for the wrongs committed by Defendants.

154.    Based on the foregoing, a judgment should be rendered against Defendants FARHAAD YACOOB and HSBC BANK USA, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF ACE SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2005-HE3, ASSET BACKED PASS-THROUGH CERTIFICATES, enjoining them as described above.

### AS AND FOR A FIFTEENTH CAUSE OF ACTION
#### Attorney's fees;
#### against Defendants FARHAAD YACOOB, NADIA YACOOB
#### and GUARANTEED HOME MORTGAGE COMPANY, INC.

155.  Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 154 of this complaint as if more fully set forth herein at length.

156.  Defendants FARHAAD YACOOB, NADIA YACOOB and GUARANTEED HOME MORTGAGE COMPANY INC. are liable for Plaintiff's attorney's fees paid or incurred in connection with this proceeding, since Defendants underlying actions were not only in bad faith, but were culpable and dishonest and amounted to actual fraud.

157.  As a result of the foregoing, a judgment should be rendered in favor of Plaintiff and against said Defendants awarding Plaintiff reasonable attorney's fees.

### AS AND FOR A SIXTEENTH CAUSE OF ACTION
#### Attorney's Fees:
#### against Defendants BENJAMIN JACOB TURNER,
#### AUGUSTA UWECHUE, SPAULDING PROPERTIES INC.

158.  Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 157 of this complaint as if more fully set forth herein at length.

159.  By reason of the foregoing, Defendants BENJAMIN JACOB TURNER, JONATHAN J. MASON-KINSEY, AUGUSTA UWECHUE and SPAULDING PROPERTIES INC. are liable for Plaintiff's attorney's fees paid or incurred in connection with this proceeding.

160.  As a result of the foregoing, a judgment should be rendered in favor of Plaintiff and against said Defendants awarding Plaintiff reasonable attorney's fees.

## AS AND FOR A SEVENTEENTH CAUSE OF ACTION
### against Defendants FINANCE AMERICA, LLC,
### MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
### as nominee for FINANCE AMERICA, LLC and HSBC BANK,
### USA N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF ACE
### SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2005-HE3,
### ASSET BACKED PASS-THROUGH CERTIFICATES

161.  Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 160 of this complaint as if more fully set forth herein at length.

162.  After Defendant FARHAAD YACOOB caused the fraudulent conveyance of the Premises to him, he executed a mortgage on the Premises in favor of Defendant FINANCE AMERICA, LLC and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. acting as its nominee.

163.  As Defendant FAHAAD YACOOB held title as a result of the above-described fraudulent conduct, the mortgage given by FINANCE AMERICA, LLC and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. acting as its nominee, and thereafter assigned to HSBC BANK, USA N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF ACE SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2005-HE3, ASSET BACKED PASS-THROUGH CERTIFICATES, was used by Defendants FARHAAD YACOOB and NADIA YACOOB in the perpetration of such fraud and should likewise be set a side as void *ab initio*.

164.  By reason of the foregoing, a judgment should be granted that said mortgage given by FARHAAD YACOOB be declared null and void *ab initio* and, accordingly directing that said mortgage and assignment thereof be discharged of record by the City Register of the City of New York, Kings County, as against FINANCE

AMERICA, LLC, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. acting as its nominee, and HSBC BANK, USA N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF ACE SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2005-HE3, ASSET BACKED PASS-THROUGH CERTIFICATES.

## AS AND FOR A EIGHTEENTH CAUSE OF ACTION
### against Defendant FARHAAD YACOOB

165.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 164 of this complaint as if more fully set forth herein at length.

166.   After Defendant FARHAAD YACOOB's fraudulent conveyance of the Premises and encumbering the Premises with the first mortgage given to BERKSHIRE FINANCIAL GROUP, INC., the said defendant gave a mortgage on the Premises in favor of FINANCE AMERICA, LLC and MORTGAGE ELETRONIC REGISTRATION SYSTEMS, INC. as its nominee.

167.   By doing so, Defendant FARHAAD YACOOB has further decreased the equity in the Premises and has fraudulently utilized the proceeds of said mortgage to further his wrongful purposes.

168.   As a result of the foregoing, the judgment should be rendered against Defendant FARHAAD YACOOB in an amount to be determined by this Court.

## AS AND FOR A NINTEENTH CAUSE OF ACTION
### Fraud and collusion
### against BERKSHIRE FINANCIAL GROUP, INC.,
### ATARA HIRSCH-TWERSKY, JONATHAN J. MASON-KINSEY,
### CHICAGO TITLE INSURANCE COMPANY, DECISION 2000 REAL ESTATE
### SERVICES, INC., AUGUSTA UWECHUE and SPAULDING PROPERTIES INC.

169.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 168 of this complaint as if more fully set forth herein at length.

170.   Defendants BERKSHIRE FINANCIAL GROUP, INC., ATARA HIRSCH-TWERSKY, JONATHAN J. MASON-KINSEY, CHICAGO TITLE INSURANCE COMPANY, DECISION 2000 REAL ESTATE SERVICES, INC., AUGUSTA UWECHUE and SPAULDING PROPERTIES INC., individually and in concert with each other, by their actions, represented to Plaintiff that she was to receive the proceeds of the refinance of the subject Premises.

171.   Defendant BERKSHIRE FINANCIAL GROUP, INC. is the original mortgagee who loaned Defendant FARHAAD YACOOB the sum of $348,500.00 which was secured by a first mortgage on the Premises so as to effectuate the fraudulent sale of the Premises to him.

172.   In addition, according to the records of the City Register of the City of New York, the said Defendant BERKSHIRE FINANCIAL GROUP, INC. had financed at least three other real property purchases for Defendant FARHAAD YACOOB or Defendant NADIA YACOOB in the period of 2002 through 2004. Copies of the mortgages and cover pages for the recorded mortgages are annexed hereto as Exhibits I, J and K, respectively.

173.   Defendant BERKSHIRE FINANCIAL GROUP, INC. was represented at the subject closing by Defendant ATARA HIRCSH-TWERSKY who was present in that capacity and in the capacity of the closing agent at the closing.

174.   As such, Defendants BERKSHIRE FINANCIAL GROUP, INC. and ATARA HIRCSH-TWERSKY had knowledge of the circumstances of the closing in question.

175.   Further, as mortgagee bank's attorney and closing agent, Defendant ATARA HIRSCH-TWERSKY was responsible for disbursing the mortgage funds at the closing and she executed the HUD-1 at the closing, representing that the subject HUD-1 statement is the statement "that [she] has prepared is a true and accurate account of this transaction" and that she "caused or will cause the funds to be disbursed in accordance with this statement". See Exhibit G.

176.   It was thus Defendant ATARA HIRSCH-TWERSKY in her capacity as the attorney for BERKSHIRE FINANCIAL GROUP, INC. (the mortgagee bank) and as closing agent who should have caused the mortgage proceeds to be disbursed in accordance with the HUD-1 statement.

177.   According to the HUD-1, Plaintiff sold the subject premises to Defendant FARHAAD YACOOB for $410,000.00 with $117,949.37 in net proceeds due Plaintiff. Plaintiff, however, never received such proceeds.

178.   Thus, Defendant ATARA HIRSCH-TWERSKY on behalf of Defendant BERKSHIRE FINANCIAL GROUP, INC. and as closing agent misrepresented to Plaintiff that Plaintiff was to receive $117,949.37 as the net proceeds at the closing. See Exhibit G.

179. At the time such representation was made, Defendant ATARA HIRSCH-TWERSKY and Defendant BERKSHIRE FINANCIAL GROUP, INC., knew that the said representation was false when they made it and that Plaintiff was never to receive the said proceeds and that, indeed, no refinance would take place because the Premises was to be fraudulently transferred to Defendant FARHAAD YACOOB.

180. Further, by acknowledging the HUD-1, Defendant ATARA HIRSCH-TWERSKY represented to Plaintiff that the proceeds were disbursed pursuant thereto at the time when she knew that the proceeds were never so disbursed to Plaintiff and were never going to be so disbursed.

181. Such representation could not have been made for any reason other than to induce Plaintiff into signing the documents at the closing and Plaintiff was so induced.

182. Defendant ATARA HIRSCH-TWERSKY was the primary facilitator of the subject fraudulent transaction because if she had not executed the HUD-1 Defendant BERSKHIRE FINANCIAL GROUP, INC. would not have funded the mortgage which enabled Defendant FARHAAD YACOOB to defraud Plaintiff.

183. Defendant BERKSHIRE FINANCIAL GROUP, INC. was also a primary catalyst of the fraud perpetrated on the Plaintiff, which fraud would not have been completed if the mortgage had not been given to Defendant FARHAAD YACOOB.

184. Defendant AUGUSTA UWECHUE was an employee, agent or otherwise authorized to act on behalf of Defendants DECISION 2000 REAL ESTATE SERVICES, INC. and CHICAGO TITLE INSURANCE COMPANY, and was present at the closing in those capacities and as a closer.

185. In addition, upon information and belief, and according to the records of the City Register of the City of New York, Defendants DECISION 2000 REAL ESTATE SERVICES, INC. and CHICAGO TITLE INSURANCE COMPANY presented and recorded documents with the City Register of the State of New York, with respect to at least two other home purchases for Defendant FARHAAD YACOOB or Defendant NADIA YACOOB in during 2003 and 2004 in which Defendant AUGUSTA UWECHUE was the title closer. Copies of the mortgage and the cover pages for the recorded mortgages are annexed hereto as Exhibits J and K, respectively.

186. Defendants AUGUSTA UWECHUE, CHICAGO TITLE INSURANCE COMPANY and DECISION 2000 REAL ESTATE SERVICES, INC., individually and in concert with each other and other defendants herein, misrepresented to Plaintiff that the transaction in question and the services each of such defendants performed in connection therewith were for the purpose of refinancing the first mortgage held by Ocwen Federal on the Premises even though, contrary to such misrepresentations, the property was transferred to Defendant FARHAAD YACOOB.

187. At the time such representation was made, the said defendants knew that the said representation was false when they made it.

188. Further, Defendants AUGUSTA UWECHUE, CHICAGO TITLE INSURANCE COMPANY and DECISION 2000 REAL ESTATE SERVICES, INC. caused the fraudulent deed and mortgage to be recorded in the Office of the City Register of the City of New York even though they knew that Plaintiff stopped the closing refusing to go forward with the refinance transaction.

189.  Defendants AUGUSTA UWECHUE, CHICAGO TITLE INSURANCE COMPANY and DECISION 2000 REAL ESTATE SERVICES, INC. were the primary catalysts of the subject fraudulent transaction because the fraud would not have been completed had the said defendants not insured the title to the subject Premises.

190.  Defendant JONATHAN J. MASON-KINSEY represented Defendant FARHAAD YACOOB at the subject closing where Plaintiff was defrauded out of the Premises.

191.  At the closing, the said defendant JONATHAN J. MASON-KINSEY misrepresented to Plaintiff that she was to receive the proceeds of what Plaintiff thought was the refinancing of her property.

192.  Defendant JONATHAN J. MASON-KINSEY knew that Plaintiff would never receive such proceeds and that Defendant FARHAAD YACOOB was planning to and did defraud Plaintiff out of her property.

193.  Defendant SPAULDING PROPERTIES INC. is a purported real estate broker who, according to HUD-1, received $24,000.00 in commissions.

194.  Defendant SPAULDING PROPERTIES INC. misrepresented that it acted as the seller's (i.e. Plaintiff's) real estate broker, even though Plaintiff never hired the said defendant to act as such and never intended to sell the subject property.

195.  All of the above misrepresentations were made by said respective defendants with intent of deceiving Plaintiff and inducing her into signing the documents she did not understand so that she would convey the Premises to Defendant FARHAAD YACOOB, from which ALL of the said respective defendants benefited financially.

196.  Plaintiff reasonably relied on such representations and was induced thereby to sign the documents which she did not understand, which conveyed the Premises to Defendant FARHAAD YACOOB.

197.  Plaintiff would not have signed any of the documents at the closing, had she known of the said defendants' intentions of furthering the fraudulent conveyance of the Premises to Defendant FARHAAD YACOOB.

198.  Plaintiff never received ANY of the proceeds from the transaction.

199.  Plaintiff did not learn of the fraudulent conveyance and of the said defendants' true intentions until she received a letter to the address of the Premises from an insurance company, entitled "landlords insurance" and addressed to Defendant FARHAAD YACOOB and the consequences of the closing were explained to her by an attorney she had hired to represent her in this proceeding.

200.  As a result of the fraud and collusion by said Defendants, Plaintiff was defrauded of the Premises, her equity therein and the proceeds of the mortgage which Plaintiff believed she was refinancing with Defendant BERKSHIRE FINANCIAL GROUP, INC.

201.  Additionally, Plaintiff's attorney was contacted by Kevin Golding, Esq., an attorney representing a former homeowner with respect to commencing an action as a result of a similar but not identical transaction, which occurred within two weeks of the subject closing.  The said transaction apparently involved the majority of the same parties named as defendants in this proceeding, including Defendant BERKSHIRE FINANCIAL GROUP, INC. as the original mortgagee, Defendant ATARA HIRSCH-TWERSKY as Defendant BERKSHIRE FINANCIAL GROUP, INC.'s attorney and

closing agent; Defendant SPAULDING PROPERTIES, INC. as the purported seller's

broker; Defendant FIRST NATIONAL BANK OF NEVADA as assignee of the said

mortgage; Defendant AUGUSTA UWECHUE as the title closer at the closing, and

Defendant JONATHAL J. MASON-KINSEY as the seller's purported attorney. A copy of

the HUD-1 from such unrelated transaction is annexed hereto as Exhibit L. The

premises which are the subject of that transaction were ultimately transferred to Keith

Spaulding, the principal of Defendant SPAULDING PROPERTIES, INC., the purported

seller's broker.

202. As a result of the foregoing, a judgment should be rendered in favor of

Plaintiff and against Defendants BERKSHIRE FINANCIAL GROUP, INC., ATARA

HIRSCH-TWERSKY, JONATHAN J. MASON-KINSEY, CHICAGO TITLE INSURANCE

COMPANY, DECISION 2000 REAL ESTATE SERVICES, INC., AUGUSTA UWECHUE

and SPAULDING PROPERTIES INC. in an amount to be determined by this Court.

### AS AND FOR A TWENTIETH CAUSE OF ACTION
#### Aiding and Abetting Fraud
#### against BERKSHIRE FINANCIAL GROUP, INC.,
#### ATARA HIRSCH-TWERSKY, JONATHAN J. MASON-KINSEY,
#### CHICAGO TITLE INSURANCE COMPANY, DECISION 2000 REAL ESTATE
#### SERVICES, INC., AUGUSTA UWECHUE and SPAULDING PROPERTIES INC.

203. Plaintiff repeats, reiterates and realleges each and every allegation

contained in paragraphs 1 through 202 of this complaint as if more fully set forth herein

at length.

204. As more fully set forth in the preceding paragraphs, Defendants

FARHAAD YACOOB and NADIA YACOOB defrauded Plaintiff out of her property.

205. Defendants ATARA HIRSCH-TWERSKY representing BERKSHIRE

FINANCIAL GROUP, INC., and Defendant AUGUSTA UWECHUE representing

CHICAGO TITLE INSURANCE COMPANY and DECISION 2000 REAL ESTATE

SERVICES, INC., were both present at the closing and have knowledge of the fraud

perpetrated by Defendant FARHAAD YACOOB at the closing.

206.  Accordingly, the said defendants have knowledge of the fact that Plaintiff

never received ANY proceeds of the transaction.

207.  Further, the said defendants, individually and in concert with each other,

aided and abetted Defendants FARHAAD YACOOB and NADIA YACOOB by providing

substantial assistance to the said defendants in accomplishing the fraudulent

conveyance of the Premises to Defendant FARHAAD YACOOB, with the intention of

advancing such assistance.

208.  Indeed, each of the said defendants, ATARA HIRSCH-TWERSKY,

BERKSHIRE FINANCIAL GROUP, INC., AUGUSTA UWECHUE, CHICAGO TITLE

INSURANCE COMPANY and DECISION 2000 REAL ESTATE SERVICES, INC.

participated in the fraudulent transaction, and had a substantial role with respect to

same.

209.  Defendant  ATARA  HIRSCH-TWERSKY  represented  Defendant

BERKSHIRE FINANCIAL GROUP, INC. and acted as a closing agent at the closing

and, as such, substantially assisted Defendant FARHAAD YACOOB in the fraudulent

conveyance.

210.  As the mortgagee bank's attorney and closing agent, she was responsible

for the disbursement of funds at the closing. As a result, she knew that Plaintiff never

received any proceeds at the closing or otherwise.

211.    Defendant BERKSHIRE FINANCIAL GROUP, INC. provided financing to Defendant FARHAAD YACOOB to enable him to accomplish the fraudulent transaction and, as such substantially assisted Defendant FARHAAD YACOOB in the fraudulent conveyance. In addition, the said defendant had financed Defendant FARHAAD YACOOB's other real property purchases as well. See Exhibits I, J and K. Moreover, Defendant BERKSHIRE FINANCIAL GROUP, INC. knew that no funds were disbursed at the closing since they were present at the closing by their attorney Defendant ATARA HIRSCH-TWERSKY.

212.    Defendant AUGUSTA UWECHUE represented CHICAGO TITLE INSURANCE COMPANY and/or DECISION 2000 REAL ESTATE SERVICES, INC., acted as a title closer at the subject closing and, as such substantially assisted Defendant FARHAAD YACOOB in the fraudulent conveyance. Indeed, Defendants CHICAGO TITLE INSURANCE COMPANY and/or DECISION 2000 REAL ESTATE SERVICES, INC. acted as the title insurer and its agent, respectively, and AUGUSTA UWECHUE as their representative and title closer and said Defendants presented and recorded in the Office of the City Register of the City of New York with respect to Defendant FARHAAD YACOOB's or NADIA YACOOB's other home purchases.

213.    Defendants CHICAGO TITLE INSURANCE COMPANY and DECISION 2000 REAL ESTATE SERVICES, INC. provided title insurance and acted as title closer for FARHAAD YACOOB. Said defendants caused title to the Premises to be insured in the name of Defendant FARHAAD YACOOB and the mortgage held by Defendant BERKSHIRE FINANCIAL GROUP, INC. encumbering the Premises to be insured.

44

214. In addition, Defendants CHICAGO TITLE INSURANCE COMPANY and DECISION 2000 REAL ESTATE SERVICES, INC. recorded in the Office of the City Register of the City of New York the documents with respect to the subject fraudulent conveyance, including the deed and the mortgage. As such the said defendants substantially assisted Defendant FARHAAD YACOOB in the fraudulent conveyance.

215. Defendant JONATHAN J. MASON-KINSEY is an attorney who represented Defendant FARHAAD YACOOB at the subject closing and, as such, substantially assisted Defendant FARHAAD YACOOB in accomplishing the said fraudulent transfer.

216. Defendant SPAULDING PROPERTIES INC. a purported seller's real estate broker, received, according to HUD-1, $24,000.00 in commissions even though the seller, i.e. Plaintiff never retained such defendant as her broker. As such, Defendant SPAULDING PROPERTIES INC. substantially assisted Defendant FARHAAD YACOOB in accomplishing the said fraudulent transfer.

217. As a result of the foregoing, a judgment should be rendered in favor of Plaintiff and against Defendants BERKSHIRE FINANCIAL GROUP, INC., ATARA HIRSCH-TWERSKY, JONATHAN J. MASON-KINSEY, CHICAGO TITLE INSURANCE COMPANY, DECISION 2000 REAL ESTATE SERVICES, INC., AUGUSTA UWECHUE and SPAULDING PROPERTIES INC., in the amount to be determined by this Court.

### AS AND FOR A TWENTY FIRST CAUSE OF ACTION
### Against ATARA HIRSCH-TWERSKY, JONATHAN J.
### MASON-KINSEY, AUGUSTA UWECHUE and SPAULDING PROPERTIES INC.

218.  Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 217 of this complaint as if more fully set forth herein at length.

219.  Defendants ATARA HIRSCH-TWERSKY, JONATHAN J. MASON-KINSEY, AUGUSTA UWECHUE and SPAULDING PROPERTIES INC. each wrongfully converted Plaintiff's equity in the Premises by receiving fees and proceeds as a result of the closing and the purported sale and mortgaging of the Premises.

220.  If it was not for the said defendants services rendered for the purposes of accomplishing the purported sale of the Premises and the mortgaging of the Premises, Plaintiff would not have been defrauded out of same.

221.  As a result of the foregoing, a judgment should be rendered in favor of Plaintiff and against Defendants ATARA HIRSCH-TWERSKY, JONATHAN J. MASON-KINSEY, and SPAULDING PROPERTIES INC., in the amount to be determined by this Court.

### AS AND FOR A TWENTY SECOND CAUSE OF ACTION
### Aiding and Abetting Conversion
### against ATARA HIRSCH-TWERSKY, JONATHAN J.
### MASON-KINSEY, AUGUSTA UWECHUE and SPAULDING PROPERTIES INC.

222.  Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 221 of this complaint as if more fully set forth herein at length.

223.  As more fully set forth in the preceding paragraphs, Defendants FARHAAD YACOOB and NADIA YACOOB wrongfully converted the Premises to

Defendant FARHAAD YACOOB's own use by acting as the lawful owner thereof and interfering with Plaintiff's lawful ownership interest in the Premises, by causing the Premises to be fraudulently conveyed to Defendant FARHAAD YACOOB, without the payment of the full consideration set forth in the transfer documents, and by placing the mortgage of Defendant BERKSHIRE FINANCIAL GROUP, INC. thereon and not delivering the net mortgage proceeds to Plaintiff.

224. Defendants ATARA HIRSCH-TWERSKY, JONATHAN J. MASON-KINSEY, AUGUSTA UWECHUE and SPAULDING PROPERTIES INC., individually and in concert with each other, knew of such wrongful conversion at the time it was being accomplished.

225. Defendants ATARA HIRSCH-TWERSKY, JONATHAN J. MASON-KINSEY, AUGUSTA UWECHUE and SPAULDING PROPERTIES INC., individually and in concert with each other, provided substantial assistance to Defendants FARHAAD YACOOB and NADIA YACOOB in accomplishing such wrongful conversion of the Premises to Defendant FARHAAD YACOOB, with the intention of advancing same.

226. Defendant ATARA HIRSCH-TWERSKY acted as Defendant BERKSHIRE FINANCIAL GROUP, INC.'s attorney and a closing agent at the closing for the subject Premises, and, as such, substantially assisted Defendant FARHAAD YACOOB in accomplishing the said wrongful conversion.

227. Defendant JONATHAN J. MASON-KINSEY is an attorney who represented Defendant FARHAAD YACOOB at the subject closing and, as such, substantially assisted Defendant FARHAAD YACOOB in accomplishing the said wrongful conversion.

228.  As such, substantially assisted the said defendant in accomplishing the said wrongful conversion.

229.  Defendant AUGUSTA UWECHUE was the title closer at the subject closing and, as such, substantially assisted Defendant FARHAAD YACOOB in accomplishing the said wrongful conversion.

230.  Defendant SPAULDING PROPERTIES INC. was a purported seller's real estate broker who, according to HUD-1, received $24,000 in commissions, and as such, substantially assisted Defendant FARHAAD YACOOB in accomplishing the said wrongful conversion.

231.  As a result of the foregoing, a judgment should be rendered in favor of Plaintiff and against Defendants ATARA HIRSCH-TWERSKY, JONATHAN J. MASON-KINSEY, AUGUSTA UWECHUE and SPAULDING PROPERTIES INC., in the amount to be determined by this Court.

## AS AND FOR A TWENTY THIRD CAUSE OF ACTION against BERKSHIRE FINANCIAL GROUP, INC., FIRST NATIONAL BANK OF NEVADA and RESIDENTIAL FUNDING CORPORATION

232.  Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 231 of this complaint as if more fully set forth herein at length.

233.  As a result of the foregoing, in the event that the Court determines that the current existing mortgage dated February 15, 2005 and recorded on January 4, 2006 made by Defendant FARHAAD YACOOB, as mortgagor, to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as nominee for FINANCE AMERICA, LLC, as mortgagee, and currently held of record by Defendant HSBC BANK USA, N.A.

AS TRUSTEE FOR THE REGISTERED HOLDERS OF ACE SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2005-HE3, ASSET BACKED PASS-THROUGH CERTIFICATES should not be voided *ab initio*, then, in addition to all other damages demanded herein, judgment should be rendered in favor of Plaintiff against Defendants BERKSHIRE FINANCIAL GROUP, INC., FIRST NATIONAL BANK OF NEVADA and RESIDENTIAL FUNDING CORPORATION directing said Defendants to disgorge any and all monies said Defendants received pursuant to or as a result of that certain mortgage given by Defendant FARHAAD YACOOB, as mortgagor, to Defendant BERKSHIRE FINANCIAL GROUP, INC., as mortgagee, dated January 26, 2004 and recorded on November 26, 2004, which mortgage was thereafter assigned to Defendant FIRST NATIONAL BANK OF NEVADA and thereafter further assigned to Defendant RESIDENTIAL FUNDING CORPORATION including, but not limited to any monies received in payment of principal and/or interest due under said mortgage, loan origination fee, application fee, underwriting fee, processing fee, document preparation fee or otherwise or as a result of the assignment of said mortgage and any monies received in partial or full satisfaction of said mortgage including from the proceeds of the aforesaid current existing mortgage and to pay all such monies to the holder of the aforesaid current existing mortgage in payment of the remaining principal balance and all accrued interest thereon.

WHEREFORE, Plaintiff prays for a judgment of this Court,

(1) On the first cause of action, against Defendants FARHAAD YACOOB, NADIA YACOOB and GUARANTEED HOME MORTGAGE COMPANY INC.:

(a)    declaring the deed conveying title to the Premises from the Plaintiff to defendant FARHAAD YACOOB fraudulent and declaring said deed null and void *ab initio* and of no effect, and

(b)    directing the City Register of the City of New York, County of Kings, to mark its records in accordance with the foregoing so as to cancel the aforesaid deed as a matter of record; or,

(c)    in the alternative, directing Defendant FARHAAD YACOOB to re-convey the Premises back to Plaintiff free of the above described mortgage in the amount of $450,000.00 and to execute all other documents necessary to effectuate the foregoing, including but not limited to, execution of a bargain and sale deed with covenants against grantor's acts and transfer documents, or,

(d)    in the alternative, appointing Plaintiff as receiver of the Premises for the purposes of making such re-conveyance; and

(e)    awarding plaintiff all expenses of such re-conveyance.

(2)    On the second cause of action against Defendants NADIA YACOOB, GUARANTEED HOME MORTGAGE COMPANY INC. and FARHAAD YACOOB:

(a) declaring the deed conveying title to the Premises from Plaintiff to Defendant FARHAAD YACOOB fraudulent and declaring said deed null and void *ab initio* and of no effect, and

(b)    directing the City Register of the City of New York, County of Kings, to mark its records in accordance with the foregoing so as to cancel the aforesaid deed as a matter of record; or,

(c)    In the alternative, directing Defendant FARHAAD YACOOB to re-conyey the Premises back to Plaintiff free of the above-described mortgage in the amount of $450,000.00 and to execute all other documents necessary to effectuate the foregoing, including but not limited to, execution of a bargain and sale deed with covenants against grantor's acts and transfer documents, or,

(d)    In the alternative, appointing Plaintiff as receiver of the Premises for the purposes of making such re-conveyance and,

(e)    any expenses of such re-conveyance.

(3)    On the third cause of action against Defendants FARHAAD YACOOB, BERKSHIRE FINANCIAL GROUP, INC., FIRST NATIONAL BANK OF NEVADA, RESIDENTIAL FUNDING CORPORATION, FINANCE AMERICA, LLC, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as nominee for FINANCE AMERICA, LLC, and HSBC BANK, USA N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF ACE SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2005-HE3, ASSET BACKED PASS-THROUGH CERTIFICATES, declaring the deed to Defendant FARHAAD YACOOB as null and void *ab initio* and declaring the mortgage given to Defendant BERKSHIRE FINANCIAL GROUP, INC. assigned to FIRST NATIONAL BANK OF NEVADA, and thereafter assigned to RESIDENTIAL FUNDING CORPORATION, and thereafter refinanced, to be null and void *ab initio* and declaring the mortgage given to FINANCE AMERICA, LLC and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as nominee FINANCE AMERICA, LLC, which was thereafter assigned to HSBC BANK, USA N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF ACE SECURITIES CORP. HOME

EQUITY LOAN TRUST, SERIES 2005-HE3, ASSET BACKED PASS-THROUGH CERTIFICATES, to be null and void *ab initio* and directing that said mortgages and the assignments thereof be discharged of record by the City Register of the City of New York, Kings County.

(4)    On the fourth cause of action against Defendants FARHAAD YACOOB, NADIA YACOOB, GUARANTEED HOME MORTGAGE COMPANY INC., BENJAMIN JACOB TURNER, JONATHAN J. MASON-KINSEY, and AGUSTA UWECHUE, in an amount to be determined by this Court.

(5)    On the fifth cause of action against Defendants FARHAAD YACOOB and NADIA YACOOB in an amount to be determined by this Court.

(6)    On the sixth cause of action against Defendants FARHAAD YACOOB and NADIA YACOOB in an amount to be determined by this Court.

(7)    On the seventh cause of action against Defendants FARHAAD YACOOB, NADIA YACOOB, GUARANTEED HOME MORTGAGE COMPANY INC., BENJAMIN JACOB TURNER, JONATHAN J. MASON-KINSEY, AUGUSTA UWECHUE and SPAULDING PROPERTIES INC., in an amount to be determined by this Court.

(8)    On the eighth cause of action against Defendant BENJAMIN JACOB TURNER in an amount to be determined by this Court.

(10) On the tenth cause of action against Defendant SPAULDING PROPERTIES, INC. in the amount of $24,000.00 with interest from January 26, 2004.

(11)  On the eleventh cause of action against Defendant FARHAAD YACOOB, in an amount to be determined by this Court.

(12)    On the twelfth cause of action against Defendant FARHAAD YACOOB, in an amount to be determined by this Court.

(13)    On the thirteenth cause of action against Defendants NADIA YACOOB, FARHAAD YACOOB, GUARANTEED HOME MORTGAGE COMPANY INC. and SPAULDING PROPERTIES INC., in an amount to be determined by this Court.

(14)    On the fourteenth cause of action against Defendants FARHAAD YACOOB and HSBC BANK, USA N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF ACE SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2005-HE3, ASSET BACKED PASS-THROUGH CERTIFICATES, permanently enjoining said defendants from:

(a)    prosecuting a holdover proceeding pending before the Civil Court of the City of New York, County of Kings, against the Plaintiff, L&T Index No. 98592-2005, and instituting or maintaining any other summary or other proceeding to evict or remove Plaintiff, members of Plaintiff's family or any other occupant from possession of the Premises known as 499 East 29th Street, Brooklyn, New York, a/k/a Block 5231 Lot 70;

(b)    entering into any contracts and/or agreements involving the Premises, offering for sale, selling, transferring, assigning, or in any way conveying the Premises to any person or entity other than Plaintiff;

(c)    executing or recording any deed transferring title to the above described premises to any person or entity other than Plaintiff;

(d)    selling, transferring, assigning, in any way conveying or foreclosing any existing mortgage or other encumbrance against the Premises;

(e) executing, creating or recording any mortgage or other encumbrance affecting said Premises or any interest of any of the Defendants therein; and

(f) entering into a lease with or permitting any person or entity other than Plaintiff to take possession of the said premises or collecting any rent from the 2nd floor tenant at the Premises on the grounds that the said acts of Defendants, if committed, will result in the immediate and irreparable harm, injury, loss and damage to Plaintiff.

(15) On the fifteenth cause of action against Defendants FARHAAD YACOOB, NADIA YACOOB and GUARANTEED HOME MORTGAGE COMPANY, INC., awarding Plaintiff attorneys fees incurred in connection with this proceeding;

(16) On the sixteenth cause of action against BENJAMIN JACOB TURNER, JONATHAN J. MASON-KINSEY, AUGUSTA UWECHUE and SPAULDING PROPERTIES INC., awarding Plaintiff reasonable attorneys fees incurred in connection with this proceeding;

(17) On the seventeenth cause of action against Defendants FINANCE AMERICA, LLC, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as nominee for FINANCE AMERICA, LLC, and HSBC BANK, USA N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF ACE SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2005-HE3, ASSET BACKED PASS-THROUGH CERTIFICATES, granting a judgment declaring a mortgage given and assigned by the above entities to Defendant FARHAAD YACOOB as null and void *ab initio* and, accordingly, directing that said mortgage and assignment be discharged of record by

the City Register of the City of New York, Kings County, as against Defendants FINANCE AMERICA, LLC, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as nominee for FINANCE AMERICA, LLC, and HSBC BANK, USA N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF ACE SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2005-HE3, ASSET BACKED PASS-THROUGH CERTIFICATES.

(18)   On the eighteenth cause of action against Defendant FARHAAD YACOOB in an amount to be determined by this Court;

(19)   On the nineteenth cause of action against BERKSHIRE FINANCIAL GROUP, INC., ATARA HIRSCH-TWERSKY, JONATHAN J. MASON-KINSEY, CHICAGO TITLE INSURANCE COMPANY, DECISION 2000 REAL ESTATE SERVICES, INC., AUGUSTA UWECHUE and SPAULDING PROPERTIES INC. in an amount to be determined by this Court;

(20)   On the twentieth cause of action against BERKSHIRE FINANCIAL GROUP, INC., ATARA HIRSCH-TWERSKY, JONATHAN J. MASON-KINSEY, CHICAGO TITLE INSURANCE COMPANY, DECISION 2000 REAL ESTATE SERVICES, INC., AUGUSTA UWECHUE and SPAULDING PROPERTIES INC. in an amount to be determined by this Court;

(21)   On the twenty first cause of action against ATARA HIRSCH-TWERSKY, JONATHAN J. MASON-KINSEY, AUGUSTA UWECHUE and SPAULDING PROPERTIES INC. in an amount to be determined by this Court;

(22)   On the twenty second cause of action against ATARA HIRSCH-TWERSKY, JONATHAN J. MASON-KINSEY, AUGUSTA UWECHUE and SPAULDING PROPERTIES INC. in an amount to be determined by this Court;

(23)   On the twenty third cause of action against Defendant BERKSHIRE FINANCIAL GROUP, INC., FIRST NATIONAL BANK OF NEVADA and RESIDENTIAL FUNDING CORPORATION directing said Defendants to disgorge any and all monies said Defendants received pursuant to or as a result of that certain mortgage given by Defendant FARHAAD YACOOB, as mortgagor, to Defendant BERKSHIRE FINANCIAL GROUP, INC., as mortgagee, dated January 26, 2004 and recorded on November 26, 2004, which mortgage was thereafter assigned to Defendant FIRST NATIONAL BANK OF NEVADA and thereafter further assigned to Defendant RESIDENTIAL FUNDING CORPORATION including but not limited to any monies received in payment of principal and/or interest due under said mortgage, loan origination fee, application fee, underwriting fee, processing fee, document preparation fee or otherwise or as a result of the assignment of said mortgage and any monies received in partial or full satisfaction of said mortgage including from the proceeds of the current existing mortgage dated February 15, 2005 and recorded on January 4, 2006 made by Defendant FARHAAD YACOOB, as mortgagor, to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as nominee for FINANCE AMERICA, LLC, as mortgagee and currently held of record by HSBC BANK USA, N.A. AS TRUSTEE FOR THE REGISTERED HOLDERS OF ACE SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2005-HE3, ASSET BACKED PASS-THROUGH CERTIFICATES and

to pay all such monies to the holder of the aforesaid current existing mortgage in

payment of the remaining principal balance and all accrued interest thereon; and

(24)   for such further relief as this Court may deem just and proper.

Dated: New York, New York
       May 8, 2007

Yours, etc.

HOWARD W. RACHLIN, ESQ.
Attorney for the Plaintiff
11 Park Place, Suite 816
New York, New York 10007
(212) 964-2552

## ATTORNEY'S VERIFICATION

The undersigned, duly admitted to the practice of law in the State of New York, affirms under the penalty of perjury that the undersigned is the attorney for plaintiff LUCIENNE LOMBARD in the within action; that the undersigned has read the foregoing Third Amended Complaint and knows the contents thereof; and that the undersigned believes those contents to be true, based upon personal knowledge and books, papers and records supplied by the foregoing parties and in possession of said attorney.

The reason this verification is made by the undersigned and not by plaintiff LUCIENNE LOMBARD is that said plaintiff is not in the county wherein the aforesaid attorney maintains his office.

Dated: New York, New York
       May 8, 2007

HOWARD W. RACHLIN

**Exhibit E**

PRESENT:

    HON. DIANA A. JOHNSON,

                          Justice.

         _February_ _____, 2008

-----------------------------------------------------------x

LUCIENNE LOMBARD,
                                    Index No.:
                                    36016/05

                         Plaintiff,

        -against-

FARHAAD YACOOB, NADIA YACOOB, GUARANTEED      ORDER
HOME MORTGAGE COMPANY INC., BERKSHIRE
FINANCIAL GROUP, INC., FIRST NATIONAL BANK OF
NEVADA, RESIDENTIAL FUNDING CORPORATION,
BENJAMIN JACOB TURNER, ATARA HIRSCH-TWERSKY,
JONATHAN J. MASON-KINSEY, CHICAGO TITLE
INSURANCE COMPANY, DECISION 2000 REAL
ESTATE SERVICES, INC., AUGUSTA UWECHUE,
SPAULDING PROPERTIES INC., FINANCE AMERICA,
LLC and MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., as Nominee for FINANCE AMERICA, LLC,

                         Defendants.

-----------------------------------------------------------x

    Plaintiff, LUCIENNE LOMBARD, by her attorney, Howard W. Rachlin,

Esq., having duly moved for an order granting a default judgment to Plaintiff

against Defendants FARHAAD YACOOB, NADIA YACOOB, JONATHAN J.

MASON-KINSEY, AUGUSTA UWECHUE and SPAULDING PROPERTIES INC.

upon the ground that time of the Defendants to answer herein has expired and

                    Exhibit E

come on to be heard;

NOW, upon reading and filing the Notice of Cross-Motion for a Default Judgment dated September 11, 2006, the Affidavit of LUCIENNE LOMBARD, sworn to on the 11th day of September, 2006, the Affirmation of Howard W. Rachlin, Esq. dated September 11, 2006 in support of the motion, the Affirmation of A. Michael Furman, Esq. dated September 14, 2006, attorney for Defendant BENJAMIN JACOB TURNER, in partial opposition thereto and the Affirmation of Howard W. Rachlin, Esq. dated September 19, 2006 in reply thereto, and none of the above-named defaulting Defendants having opposed said Cross-Motion for a Default Judgment; and after due deliberation having been held thereon and the Court having made and filed a Decision and Order dated November 3, 2006, directing to settle order as provided;

NOW, upon motion of Howard W. Rachlin, attorney for Plaintiff, it is

ORDERED, that the Plaintiff's motion for a default judgment against Defendants FARHAAD YACOOB, NADIA YACOOB, JONATHAN J. MASON-KINSEY, AUGUSTA UWECHUE and SPAULDING PROPERTIES INC. be, and the same is, hereby granted for the relief contained in the original complaint; and it is further

ORDERED that the deed dated January, 26, 2004 transferring the premises known as 499 East 29th Street, Brooklyn, New York a/k/a Block 5231, Lot 70, (the "Premises") from Plaintiff LUCIENNE LOMBARD to Defendant FARHAAD YACOOB recorded in the Office of the City Register of the City of

2

New York, Kings County, on November 26, 2004 and given City Register file number 2004000731602 is hereby declared fraudulent, null and void and of no effect; and it is further

ORDERED, that the aforesaid deed dated January, 26, 2004 transferring the premises known as 499 East 29th Street, Brooklyn, New York a/k/a Block 5231, Lot 70; (the "Premises") from Plaintiff LUCIENNE LOMBARD to Defendant FARHAAD YACOOB recorded in the Office of the City Register of the City of New York, Kings County, on November 26, 2004 and given City Register file number 2004000731602 is hereby cancelled and the City Register is hereby directed to cancel said deed of record; and it is further

ORDERED, that the mortgage given by Defendant FARHAAD YACOOB to Defendant BERKSHIRE FINANCIAL GROUP, INC. dated January 26, 2004 and recorded in the Office of the City Register of the City of New York, Kings County on November 26, 2006 in City Register File No. (CRFN) 2004000731603, which mortgage was thereafter assigned to FIRST NATIONAL BANK OF NEVADA by assignment dated November 8, 2005 and recorded in the Office of the City Register of the City of New York, Kings County on November 30, 2005 in City Register File Number (CRFN) 2005000663096, which mortgage was thereafter further assigned to RESIDENTIAL FUNDING CORPORATION by assignment dated March 4, 2005 and recorded in the Office of the City Register of the City of New York, Kings County on June 14, 2005 in City Register File Number (CRFN) 2005000344429, is hereby declared null and void and of no effect; and it is further

3

ORDERED, that Defendant FARHAAD YACOOB is permanently enjoined from:

(a)    prosecuting a holdover proceeding pending before the Civil Court of the City of New York, County of Kings, against the Plaintiff, L&T Index No. 98592-2005, and instituting or maintaining any other summary or other proceeding to evict or remove Plaintiff, members of Plaintiff's family or any other occupant from possession of the Premises known as 499 East 29th Street, Brooklyn, New York, a/k/a Block 5231 Lot 70;

(b)    entering into any contracts and/or agreements involving the Premises, offering for sale, selling, transferring, assigning, or in any way conveying the Premises to any person or entity other than Plaintiff;

(c)    executing or recording any deed transferring title to the above described premises to any person or entity other than Plaintiff;

(d)    selling, transferring, assigning, in any way conveying or foreclosing any existing mortgage or other encumbrance against the Premises;

(e)    executing, creating or recording any mortgage or other encumbrance affecting said Premises or any interest of any of the Defendants therein; and

(f)    entering into a lease with or permitting any person or entity other than Plaintiff to take possession of the said premises or collecting any rent from the 2nd floor tenant at the Premises on the grounds that the said acts of Defendants, if committed, will result in the immediate and irreparable harm, injury, loss and damage to Plaintiff; and it is further



4

ORDERED, that upon the filing of a Note of Issue, the Clerk shall place this case on the calendar for an assessment of damages under the 4th, 5th, 6th, 7th, 11th, 12th and 13th causes of action against the defaulting Defendants FARHAAD YACOOB, NADIA YACOOB, JONATHAN J. MASON-KINSEY, AUGUSTA UWECHUE and SPAULDING PROPERTIES INC. and for a determination of attorney's fees under the 15th and 16th causes of action; and it is further

ORDERED, that the Clerk is hereby directed to enter judgment against Defendant SPAULDING PROPERTIES INC. on the 10th cause of action in the amount of $24,000.00 with interest from January 26, 2004 together with costs and disbursements of this action.

E N T E R :

_____
J. S. C.

HON. DIANA A. JOHNSON
JUSTICE N.Y.S. SUPREME COURT

MAR 2 2 2007

5

**Exhibit F**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

————————————————————————X

LUCIENNE LOMBARD,                                    Index No. 36016-05

                              Plaintiffs,

              -against-                               **NOTICE OF
                                                     BANKRUPTCY AND
                                                     EFFECT OF
FARHAAD YACOOB, NADIA YACOOB, GUARANTEED              AUTOMATIC STAY**
HOME MORTGAGE COMPANY INC., BERKSHIRE
FINANCIAL GROUP, INC., FIRST NATIONAL BANK OF
NEVADA, RESIDENTIAL FUNDING CORPORATION,
BENJAMIN JACOB TURNER, ATARA HIRSCH-TWERSKY,
JONATHAN J. MASON-KINSEY, CHICAGO TITLE
INSURANCE COMPANY, DECISION 2000 REAL ESTATE
SERVICES, INC., AUGUSTA UWECHUE, SPAULDING
PROPERTIES INC., FINANCE AMERICA, LLC and
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
as nominee for FINANCE AMERICA, LLC, and HSBC BANK
USA, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS
OF ACE SECURITIES CORP. HOME EQUITY LOAN TRUST,
SERIES 2005-HE3, ASSET BACKED PASS-THROUGH
CERTIFICATES,

                              Defendants.

————————————————————————X

          Defendant and debtor, Residential Funding Company, LLC f/k/a Residential

Funding Corporation ("RFC" or "Debtor"), by and through its undersigned counsel, in

accordance and consistent with section 362(a) of the United States Bankruptcy Code, 11 U.S.C.

§§ 101 *et seq.* (the "Bankruptcy Code"), respectfully submit this Notice of Bankruptcy and

Effect of Automatic Stay, and states as follows:

          1.       On May 14, 2012 (the "Petition Date"), the Debtor and certain of its affiliates

filed voluntary petitions (the "Petitions") under Chapter 11 of Title 11 of the Bankruptcy Code

in the United States Bankruptcy Court for the Southern District of New York, One Bowling

Green, New York, NY 10004-1408 (the "Bankruptcy Code"). The Debtors' cases are jointly

administered under the Chapter 11 Case for the Debtor Residential Capital, LLC, et al., and is indexed as case number 12-12020.

2.      The "automatic stay" is codified in section 362 of the Bankruptcy Code.  Section 362(a), *inter alia*, operates as an automatic stay of: (i) the commencement or continuation of a "judicial, administrative, or other action or proceeding" against the Debtor (11 U.S.C. § 362(a)(1)); (ii) acts to "obtain possession of property" of the Debtors' estates (11 U.S.C. § 362(a)(3)); and (iii) acts to "collect, assess, or recover a claim" against the Debtor arising prior to the Petition Date (11 U.S.C. § 362(a)(6)).

3.      The above-captioned action constitutes a "judicial, administrative, or other action or proceeding" against the Debtor, an act to obtain possession of the Debtor's property, and/or an act to collect or recover on a claim against the Debtor.

4.      Accordingly, the above-captioned lawsuit should be stayed pursuant to 11 U.S.C. § 362(a).

5.      Any action taken by the Plaintiff against the Debtor without obtaining relief from the automatic stay from the Bankruptcy Court may be void *ab initio* and may result in finding of contempt against Plaintiff by the Bankruptcy Court.  The Debtor reserves and retains all of its statutory rights to seek relief in Bankruptcy Court from any action, judgment, order, or ruling entered in violation of the Automatic Stay.

HINSHAW & CULBERTSON LLP

By:

Schuyler Kraus
780 Third Avenue, 4th Floor
New York, New York 10017
(212) 471-6204
*Attorneys for RFC*

ny-1041222

130349438v1 0874950

04/28/2014  14:43 2122272087                    CHILDASHENOL KLIEBER                    #5178 P.008/013

12-12020-mg     Doc 8758-1      Filed 06/15/15     Entered 06/15/15 16:37:47      Exhibit 1
12-12020-mg     Doc 7392-6      Filed 08/18/14     Entered 08/18/14 15:15:52      Exhibit
                                          Pg 4 of 6

TO:

Howard W. Rachlin, Esq.
11 Park Place, Suite 816
New York, New York 10007
*Attorneys for Plaintiff*

Christopher K. Sowers, Esq.
Christopher K. Sowers, P.C.
907 Fulton Street, 2nd Floor
Brooklyn, New York 11238
Attorneys for FARHAAD YACOOB

NADIA YACOOB
104-72 109th Street
Richmond Hill, NY 11419

Carole R. Bernstein, Esq.
Law Offices of Carole R. Bernstein
41 Maple Avenue North
Westport, CT 06880
*Attorney for Defendant Guaranteed Home Mortgage Company Inc.*

Marie Gannon, Esq.
108 Corporate Park Drive, Suite 301
White Plains, New York 10604
*Attorney for Defendant Guaranteed Home Mortgage Company Inc.*

Goldberg and Weinberger, LLP
630 Third Avenue, 18th Floor
New York, NY 10017
Attorneys for Defendant GUARANTEED HOME MORTGAGE CO., INC.

A. Michael Furman, Esq.
Furman, Kornfeld & Brennan LLP
545 Fifth Avenue, 4th Floor
New York, NY 10017
Attorneys for Defendant BENJAMIN JACOB TURNER

William T. McCaffrey, Esq.
L'Abbate, Balkan, Colavita & Contini, L.L.P.
1001 Franklin Avenue, Third Floor
Garden City, NY 11530
Attorneys for Defendant ATARA HIRSCH-TWERSKY

ny-1041222

130349438v1 0874950

JONATHAN J. MASON-KINSEY
55 Washington Street, Suite 655
Brooklyn, NY 11201

Umana Oton, Esq.
165 4th Avenue, 1st Floor
Brooklyn, NY 11217
Attorneys for Defendant AUGUSTA UWECHUE

Michael B. Cheatham, Esq.
161 Livingston Street
Brooklyn, New York 11201
Attorneys for Defendant Farhaad Yacood, Nadia Yacoob and SPAULDING PROPERTIES,
INC.

Gregg Tabakin, Esq.
Fein, Such, Kahn & Shepard, PC
7 Century Drive, Suite 201
Parsippany, NJ 07054
Attorneys for Defendant FINANCE AMERICA, LLC

Lisa A. Coppola, Esq.
Rupp, Baase, Pfalzgraf, Cunningham & Coppola, LLC
1600 Liberty Building
Buffalo, New York 14202
Attorneys for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

Kevin Balfe, Esq.
Balfe & Holland, OC
135 Pinelawn Road, Suite 125 North
Melville, NY 11747
*Attorneys for* HSBC BANK USA, N.A.
As Trustee for the Registered Holders of Ace Securities Corp. Home Equity Loan Trust, Series
2005-HE3, Asset Backed Pass-Through Certificates

Porzio Bromberg & Newman, P.C.
156 West 56th Street, Suite 803
New York, New York 10019-3800
Attorneys for Defendant First National Bank of Nevada

Herrick Feinstein LLP
2 Park Avenue
New York, New York 10016
*Attorneys for Defendants Chicago Title Insurance Company and
Decision 2000 Real Estate Services, Inc.*

ny-1041222

130349438v1  0874950

Law office of Frank V. Carone
747 Chestnut Ridge Road, Suite 200
Chestnut Ridge, New York 10977
*Attorney for Defendants Berkshire Financial Group, Inc.*

Linda S. Charet, Esq.
Federal Deposit Insurance Corporation New York Legal Services Office
350 Fifth Avenue, Suite 1200
New York, New York 10118
Attorney for Defendant Federal Deposit Insurance Corporation in its capacity
As Receiver of First National Bank of Nevada

Furman Kornfeld & Brennan LLP
61 Broadway, 26th Floor
New York, New York 10006
Attorney for Defendant Benjamin Jacob Turner

ny-1041222

13034943v1 0874950

12-12020-mg    Doc 7392-7    Filed 08/18/14    Entered 08/18/14 15:15:52    Exhibit
Pg 1 of 2

**Exhibit G**

> At an I.A.S. Trial Term, Part 8 of the Supreme
> Court of the State of New York, held in and for the
> County of Kings, at the Courthouse, located at
> Civic Center, Borough of Brooklyn, City and State
> of New York, on the 2o day of Feb. 2014

P R E S E N T :

Hon. MARTIN M. SOLOMON

Justice

_____

LUCIENNE LOMBARD,                     Cal. No. 38

                          Plaintiff(s)    Index No. 36016/05

- against -

FARHARD YACOOB ET. al.

                          Defendant(s)
_____

| The following papers numbered 1 to    read on this motion | Papers Numbered |
|---|---|
| Notice of Motion - Order to Show Cause and Affidavits (Affirmations) Annexed | |
| Answering Affidavit (Affirmation) | |
| Reply Affidavit (Affirmation) | |
| Affidavit (Affirmation) | |
| Pleadings - Exhibits | |
| Stipulations - Minutes | |
| Filed Papers | |

Defendant HSBC's motion to sever
plaintiff's action against defendant
Residential Funding Corporation is denied

For Clerks use only

MG___
MD___
Motion Seq. #

_____

EJV-rev 11-04

                                              J.S.C.

                          MARTIN M. SOLOMON J.S.C.

**Exhibit H**



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2004020902485003001E780F

## RECORDING AND ENDORSEMENT COVER PAGE    PAGE 1 OF 3

| | |
|---|---|
| Document ID: **2004020902485003** | Document Date: 01-26-2004 |
| Document Type: **SATISFACTION OF MORTGAGE** | Preparation Date: 02-09-2004 |
| Document Page Count: 2 | |

| PRESENTER: | RETURN TO: |
|---|---|
| DECISION 2000 REAL ESTATE SERVICES INC. | DECISION 2000 REAL ESTATE SERVICES INC. |
| AGENT OF CHICAGO TITLE INSURANCE | AGENT OF CHICAGO TITLE INSURANCE |
| COMPANY | COMPANY |
| 169 ROANOKE AVENUE | 169 ROANOKE AVENUE |
| RIVERHEAD, NY  11901 | RIVERHEAD, NY  11901 |
| 631-208-9003 | 631-208-9003 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 5231 | 70 | Entire Lot | 499 EAST 29TH |

Property Type: DWELLING ONLY - 3 FAMILY

### CROSS REFERENCE DATA

BROOKLYN  Year: 1990    Reel: 2628    Page: 597

### PARTIES

| MORTGAGER/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| LUCIENNE LOMBARD | JOHN TURIS |

### FEES AND TAXES

| Mortgage | | | | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | Recording Fee: $ | 47.00 |
| Taxable Mortgage Amount: | $ | 0.00 | Affidavit Fee:  $ | 0.00 |
| Exemption: | | | NYC Real Property Transfer Tax Filing  Fee: | |
| TAXES:  County (Basic): | $ | 0.00 | $ | 0.00 |
| City (Additional): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| Spec (Additional): | $ | 0.00 | $ | 0.00 |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional  MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed            11-26-2004 15:42

City Register File No.(CRFN):

2004000731604

*City Register Official Signature*

*Consult Your Lawyer Before Signing This Instrument - This Instrument Should Be Used By Lawyers Only*

**Know All Men By These Presents:**
that
John Turis
having an address at 4710 Avenue N, Brooklyn, New York

**Do Hereby Certify** that the following mortgage **Is Paid**, and do hereby consent that the same be discharged of record.

Mortgage dated the    11ᵗʰ  Day of  May 1990,  made by

Lucienne Lombard

to
John Turis
In the principle sum of $   1,500.00   And recorded on the 26ᵗʰ Day of October 1990

in Liber/Reel    2628  Of Section          Of    Mortgages, Page 597,

in the office of  Registrar of the County of Kings, Of the Borough of Brooklyn, City and State of New York

Which mortgage has not been assigned of record.

Dated the    26ᵗʰ   Day of January  2004

**In the Presence of :**

X

X

X

Section 3321 of the Real Property Law expressly provides  who must execute this certificate of discharge in specific cases and also provides, among other things (1) no certificate shall purport to discharge more than one mortgage,( except that mortgages affected by instruments of consolidation, spreader, modification or correction may be included in one certificate if the instruments set forth in detail in separate paragraphs); (2) if the mortgage has been assigned, in whole or in part, the certificate shall set forth : (a) the date of each assignment in the chain of title of the person or persons signing the certificate, (b) the names of the assignor and assignee,(c) the interest assigned, and (d) if the assignment has been recorded, the book and page where it has been recorded or the serial number of such record, or (e) if the assignment is being recorded simultaneously with the certificate of discharge, the certificate of discharge shall so state, and (f) if the mortgage has not been assigned of record, the certificate shall so state;(3) if the mortgage is held by a fiduciary, including an executor or administrator, the certificate of discharge shall cite the name of the court and the venue of the proceedings in which the appointment was made or which the order or decree vesting him with such title or authority was entered.

TO BE USED WHEN THE ACKNOWLEDGMENT IS MADE IN STATE OF NEW YORK

State of New York, County of __KINGS__                                                    ss.

On the __1st__ Day of __January__ in the year __2005__ Before me the undersigned, personally appeared __John Tinis__ Personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacities, and that by his/her/their signatures on the document the individual(s) or the person upon whose behalf of which the individual acted, executed the instrument

_Karen Williams_                                              Karen Williams
(Signature and office of individual taking acknowledgment)         Notary Public, State of New York
                                                              Qualified in Richmond County
                                                              #01WI6044221
                                                              Commission Expires 7-3-06

State of New York, County of                                                    ss.

On the     Day of     in the year     Before me the undersigned, personally appeared     Personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacities, and that by his/her/their signatures on the document the individual(s) or the person upon whose behalf of which the individual acted, executed the instrument

_____
(Signature and office of individual taking acknowledgment)


Title No: __OH-04-4360__

Section: 16
Block: 5231
Lot: 70
County or Town: KINGS
Street Address: 499 E 29th STREET
Record and Return to:

LUCIENNE LOMBARD
499 E 29th STREET
BROOKLYN NY 11210

Reserve this space for recording of

## NYC DEPARTMENT OF FINANCE
### OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2004032400170001001E503D

### RECORDING AND ENDORSEMENT COVER PAGE

PAGE 1 OF 3

| | |
|---|---|
| **Document ID:** 2004032400170001 | **Document Date:** 02-10-2004 |
| **Document Type:** SATISFACTION OF MORTGAGE | **Preparation Date:** 03-24-2004 |
| **Document Page Count:** 1 | |

| PRESENTER: | RETURN TO: |
|---|---|
| FINANCIAL DIMENSIONS INC. | FINANCIAL DIMENSIONS INC. |
| 1400 LEBANON CHURCH RD. | 1400 LEBANON CHURCH RD. |
| RECORDING DEPARTMENT | RECORDING DEPARTMENT |
| PITTSBURGH, PA  15236 | PITTSBURGH, PA  15236 |
| 800-858-9808 | 800-858-9808 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 5231 | 70 | Entire Lot | 499 EAST 29 STREET |

Property Type: DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

BROOKLYN  Year: 1986   Reel: 1863   Page: 1175

### PARTIES

| MORTGAGER/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| GUSTAVE LOMBARD | CITIBANK, N.A. |

x   Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage | | | | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | Recording Fee: $ | 42.00 |
| Taxable Mortgage Amount: | $ | 0.00 | Affidavit Fee:  $ | 0.00 |
| Exemption: | | | NYC Real Property Transfer Tax Filing Fee: | |
| TAXES:  County (Basic): | $ | 0.00 | $ | 0.00 |
| City (Additional): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| Spec (Additional): | $ | 0.00 | $ | 0.00 |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed          07-04-2004 02:58
City Register File No.(CRFN):
2004000385647

*Rochelle Patrick*

**City Register Official Signature**



| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|
| | 2004032400170001001C52BD |

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | | PAGE 2 OF 3 |
|---|---|---|
| **Document ID:** 2004032400170001 | **Document Date:** 02-10-2004 | **Preparation Date:** 03-24-2004 |
| **Document Type:** SATISFACTION OF MORTGAGE | | |

**PARTIES**

**MORTGAGER/BORROWER:**
LUCIENNE LOMBARD

**MORTGAGER/BORROWER:**
JEANINE BRUNACHE

Prepared By: REAGAN HENRIQUES
Ocwen Federal Bank FSB
1665 Palm Beach Lakes Blvd.
The Forum, Suite 105
West Palm Beach, Florida 33401
Loan Number: 2858322 0304

When Recorded Mail To:
Financial Dimensions, Inc.
1400 Lebanon Church Road
Pittsburgh, PA 15236

134020

## NEW YORK DISCHARGE OF MORTGAGE

Ocwen Federal Bank FSB, a federal savings bank, having its principal office at 1665 Palm Beach Lakes Blvd. The Forum, Suite 105, West Palm Beach, Florida 33401, does hereby certify that a certain indenture of mortgage made by GUSTAVE LOMBARD, LUCIENNE LOMBARD AND JEANINE BRUNACHE payable to CITIBANK,N.A., in the amount of $ 125,000.00 dated JULY 28, 1986, recorded on AUGUST 15, 1986 in KINGS  County as instrument number 043886 in Book 1863  at Page 1175 is paid and does hereby consent that the same be discharged of record.

Said Mortgage was assigned by instrument dated MAY 29, 1997, by CITIBANK, N.A. to OCWEN FEDERAL BANK FSB and recorded on SEPTEMBER 29, 1997 in Book 4030  at Page 495 as Instrument Number 58047

Section 16 VOL. 5 Block 5231   Lot 70
Street Address: 499 EAST 29TH STREET, BROOKLYN, NEW YORK
LEGAL DESCRIPTION:
ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the easterly side of East 29th Street distant 660 feet northerly from the corner formed by the intersection of the easterly side of East 29th Street and the northerly side of Avenue F; running

THENCE easterly parallel with Avenue F 100 feet to the center line of the block;

THENCE northerly along the center line of block parallel with East 29th Street 40 feet;

THENCE westerly parallel with Avenue F 100 feet to the easterly side of East 29th Street;

THENCE southerly along the easterly side of East 29th Street 40 feet to the point or place of BEGINNING.

IN WITNESS WHEREOF, the mortgagee has caused its corporate seal to be hereunto affixed, and these presents to be signed by its duly authorized officer on FEBRUARY 10, 2004

Ocwen Federal Bank FSB

BY:
NAME:  Brian S. Vanscoy
TITLE:   Servicing Officer

STATE OF FLORIDA            }
COUNTY OF PALM BEACH    }
On FEBRUARY 10, 2004 , before me, the undersigned Notary Public, personally appeared Brian S. Vanscoy, of 1665 Palm Beach Lakes Blvd., West Palm Beach, Florida  33401, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, that by his signature on the instrument, the individual(s) or person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in the county of Palm Beach, State of Florida.

Witness my hand and official seal.

Johnna Miller
My Commission DD273765
Expires December 09, 2007

Notary – State of Florida – County of Palm Beach

1