| | |
|---|---|
| MORRISON & FOERSTER LLP<br>Todd M. Goren<br>Jamie A. Levitt<br>250 West 55th Street<br>New York, New York 10019<br>Telephone:    (212) 468-8000<br>Facsimile:    (212) 468-7900 | CLIFFORD CHANCE US LLP<br>Jennifer C. DeMarco<br>31 West 52nd Street<br>New York, New York 10019<br>Telephone:    (212) 878-8000<br>Facsimile:    (212) 878-8375 |
| *Counsel for The ResCap Liquidating Trust* | *Counsel for Ocwen Loan Servicing, LLC* |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------
                                                                    )
In re:                                                            )    Case No. 12-12020 (MG)
                                                                    )
RESIDENTIAL CAPTIAL, LLC, et al.        )    Chapter 11
                                                                    )
                                           Debtors.       )    Jointly Administered
                                                                    )
------------------------------------------------------

# JOINT STATEMENT OF STIPULATED AND UNDISPUTED FACTS

The ResCap Liquidating Trust (the "Trust"), established pursuant to the terms of the Plan (as defined below) confirmed in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), as successor-in-interest to the Debtors (as defined below), and Ocwen Loan Servicing, LLC ("Ocwen," and together with the Trust, the "Parties") submit this Joint Statement of Stipulated and Undisputed Facts pursuant to the Order of this Court, dated June 1, 2015 (Docket No. 8673). The Parties stipulate to the following facts, and agree to the authenticity of the documents annexed hereto as exhibits, solely for the purpose of asserting their respective positions on the issue of whether Ocwen may revise the indemnification claim with respect to Servicing Advances asserted against the Debtors' estates pursuant to the APA, through the Revised Claim Notice (as such terms are defined below). The Parties' stipulation as to the following facts and

ny-1188802

documents annexed hereto does not constitute an admission by either Party that any particular fact or document is material or relevant for the purposes of the Court's adjudication of the issues surrounding the Servicing Advances Claim (as defined below) or that those facts and documents would be admissible at any evidentiary hearing. Any other pleading or document referenced herein and filed on the docket for the Chapter 11 Cases is fully incorporated by reference.

## STATEMENT OF FACTS

1. On May 14, 2012 (the "Petition Date"), each of the debtors in the Chapter 11 Cases (collectively, the "Debtors") filed a voluntary petition in this Court for relief under chapter 11 of title 11 of the United States Code.

2. Ocwen purchased the Debtors' mortgage servicing platform and other servicing-related assets pursuant to an Asset Purchase Agreement dated November 2, 2012, as amended from time to time (the "APA"). A copy of the APA is attached hereto as Exhibit A. The sale to Ocwen closed on February 15, 2013.

3. Section 11.1(a) of the APA provides that each Seller under the APA agreed to indemnify, among others, Ocwen from any and all Losses incurred by such party "in connection with or arising from any breach of any Core Representations or the inaccuracy of any Core Representations…"[1] APA § 11.1(a).

4. Section 11.1(b) of the APA provides that:

> the indemnification obligations provided for in Section 11.1(a) shall terminate on the earlier of one year after the Closing Date and the entry of a Final Order closing the Bankruptcy Case (the "Termination Date") (and no claims shall be made by any Purchaser Group Member under Section 11.1(a) after the Termination Date), except that the indemnification by Sellers shall continue as to any Loss of which any Purchaser Group Member has notified ResCap in accordance with the requirements of Section 11.2 on or prior to the Termination Date, as to which the obligation of Sellers shall continue until the liability of Sellers shall have been determined pursuant to this Article XI, and Sellers shall

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the APA.

2

ny-1188802

have reimbursed all Purchaser Group Members for the full amount of such Losses in accordance with this Article XI.

APA § 11.1(b).

5.     Section 11.2(a) of the APA provides that any party seeking indemnification under the section shall give to the relevant indemnifying parties "a notice (a "Claim Notice") describing in reasonable detail the facts giving rise to any claim for indemnification hereunder and shall include in such Claim Notice (if then known) the amount or the method of computation of the amount of such claim…." APA § 11.2(a).

6.     On December 11, 2013, the Court entered the *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* approving the terms of the chapter 11 plan, as amended (the "Plan"), filed in the Chapter 11 Cases [Docket No. 6065] (the "Confirmation Order"). On December 17, 2013, the effective date of the Plan occurred and, among other things, the Trust was established [Docket No. 6137].

7.     The Plan provided for the treatment of certain types of claims, including administrative expense claims, and set January 16, 2014 as the bar date by which administrative expense claims were required to be asserted against the estates (see Plan, Art.V.A.1).

8.     Paragraph 31 of the Confirmation Order states, in pertinent part:

Notwithstanding anything to the contrary in the Plan, on the Effective Date, the Ocwen APA . . . shall vest in the Liquidating Trust in accordance with the Plan and the Ocwen Sale Order. The Liquidating Trust shall assume and perform any and all rights, benefits, duties and obligations of the Debtors under the Ocwen APA and the Ocwen Sale Order in accordance with their terms, and such rights, benefits, duties and obligations shall not be deemed to have been released or discharged by the occurrence of the Effective Date, by any provisions of the Plan (including, but not limited to, the provisions of Article IX of the Plan), or otherwise. Nothing in the Plan Documents or this Confirmation Order shall, or shall be deemed or construed to, alter, change, modify or amend the terms and provisions of the Ocwen APA and Ocwen's, the Debtors', and the Liquidating Trust's rights, as applicable, thereunder, which rights shall continue in full force

3

and effect and be enforceable following the Effective Date in accordance with the terms thereof. For the avoidance of doubt, Ocwen shall not be required to file an Administrative Claim to preserve its rights or Claims arising after the Effective Date from or related to the Ocwen APA.

9. On January 16, 2014, Ocwen filed requests for payment of administrative expense claims [Docket Nos. 6296 and 6297] (collectively, the "Administrative Claim Requests"). The Administrative Claim Request contained no reference to Servicing Advances but did assert a contingent unliquidated claim for any breaches of the APA and reserved rights to enforce the APA, including for any breaches of Section 4.9 (Mortgage Servicing Portfolio; Servicing Agreements; the Business) thereof.

10. On February 14, 2014, within the time period specified in Section 11.1(b) of the APA, Ocwen sent a letter to the Trust providing notice of various asserted indemnification claims (the "Initial Claim Notice"), relating to alleged breaches of the Core Representations including an alleged breach of Section 4.9 (Mortgage Servicing Portfolio; Servicing Agreements; the Business) of the APA relating to Servicing Advances (the "Servicing Advances Claim"). In the Initial Claim Notice, Ocwen asserted that it incurred "Losses currently estimated in the amount of at least $2,211,962.17 in connection with certain Servicing Advances that were conveyed to Ocwen pursuant to the APA." The notice alleged that the representations in Section 4.9 of the APA were breached because the applicable Servicing Advances were not valid and subsisting amounts and were not legal, valid and binding reimbursement rights. The Initial Claim Notice attached Exhibit A listing the applicable Servicing Advances. A copy of the Initial Claim Notice is attached hereto as Exhibit B.[2]

---

[2] Due to the voluminous size of Exhibit A to the Initial Claim Notice, which includes potentially private and confidential information, the Parties are not making Exhibit A publicly available on the docket but are rather providing a copy of such document to the Court for its review and consideration. Exhibit A to the Initial Claim Notice shall be deemed part of Exhibit B attached to this Joint Statement of Undisputed Facts and included in its entirety as part of the record of these proceedings.

4

ny-1188802

11. On May 21, 2014, the Trust emailed Ocwen, requesting additional information in connection with the Servicing Advances Claim. A copy of this email is attached hereto as Exhibit C.

12. On June 4, 2014, Ocwen responded to the Trust's May 21, 2014 email to inform the Trust that Ocwen was working on responses to the Trust's requests for information relating to Ocwen's asserted indemnification claims and administrative expense claims, including, but not limited to, the Servicing Advances Claim. A copy of this email is attached hereto as Exhibit D.

13. On August 20, 2014, the Trust emailed a letter to Ocwen setting forth the Trust's positions on Ocwen's asserted indemnification claims and administrative expense claims, including Ocwen's claim related to the Debtors' alleged breach of Section 4.9 (Mortgage Servicing Portfolio; Servicing Agreements; the Business) of the APA as to certain Servicing Advances. The Trust requested additional detail regarding (i) why each advance had been deemed uncollectible and (ii) how the purported uncollectibility rendered the Debtors in breach of a specific Core Representation of the APA.

14. The Parties also exchanged various communications, by email and telephone, relating to the Initial claim Notice including regarding the Servicing Advances Claim. On or about February 11, 2015, Ocwen and the Trust participated in a conference call regarding the Initial Claim Notice and the Administrative Claim Request at which time the Trust again requested detail on a loan by loan basis of each alleged Servicing Advance Claim asserted in the Initial Claim Notice.

15. Ocwen committed to performing a review to provide additional detail on a loan by loan basis as to why the Servicing Advances were alleged to be not legal, valid and binding reimbursement rights.

16. On February 13, 2015, the Trust filed an objection to the Administrative Claim Requests with respect to certain of the remaining claims not previously withdrawn by Ocwen [Docket No. 8129], and sought to object to the Servicing Advances Claim in connection therewith. On March 13, 2015, Ocwen filed a response to the objection [Docket No. 8301], pursuant to which Ocwen withdrew all of its remaining administrative claims other than and claim referred to as the "Secure Axcess claim." In its response, Ocwen also argued that the Servicing Advances Claim, which was contained in the Initial Claim Notice under the APA, was not included in or part of its Administrative Claim Requests and not properly adjudicated pursuant to the administrative claim process. On April 3, 2015, the Trust filed its reply in support of its objection [Docket No. 8421] in which it continued to argue that the Servicing Advances Claim was properly before the Court.

17. On March 25, 2015, the Trust emailed Ocwen a letter requesting the release of undisputed funds from the Indemnity Escrow Account. A copy of this letter is attached hereto as Exhibit E.[3]

18. On April 29, 2015, Ocwen sent to the Trust a revised claim notice (the "Revised Claim Notice"), in which it withdrew the Secure Axcess claim and, as a result of an extensive review of Servicing Advances on a loan by loan basis, asserted Losses in connection with Servicing Advances in the amount of $12,054,975.55 as set forth in more detail in the Revised

---

[3] Exhibit E only includes the March 25, 2015 letter, without attachments.

Claim Notice including on Exhibit A to the Revised Claim Notice.[4]  A copy of the Revised Claim Notice is attached hereto as Exhibit F.[5]

19.  Exhibit A to the Revised Claim Notice included 12 loans that were included in Exhibit A to the Initial Claim Notice.  In the Revised Claim Notice, the remainder of the asserted Losses for breach of representation with respect to allegedly unrecoverable Servicing Advances consists of loans not identified in Exhibit A to the Initial Claim Notice.  The alleged Losses set forth in the Revised Claim Notice with respect to the 12 loans were $63,691.94.  The Parties are continuing to reconcile the amount of alleged Servicing Advances with respect to these 12 loans in the Initial Claim Notice.  A list of the 12 loans together with the total amount of alleged Servicing Advances claimed in the Revised Claim Notice with respect to such loans is attached hereto as Exhibit G.

[*Remainder of Page Intentionally Left Blank*]

---

[4] The Liquidating Trust disputes whether amounts set forth on Exhibit A to the Initial Claim Notice and the Revised Claim Notice, respectively, are comprised solely of Servicing Advances as defined in the APA. Nothing herein shall be deemed to constitute an admission that such amounts constitute Servicing Advances, and the Parties fully reserve their respective rights to address this issue and all related issues in any subsequently filed submissions to the Court.

[5] Due to the voluminous size of Exhibit A to the Revised Claim Notice, which includes potentially private and confidential information, the Parties are not making Exhibit A publicly available on the docket but are rather providing a copy of such document to the Court for its review and consideration. Exhibit A to the Revised Claim Notice shall be deemed part of Exhibit F attached to this Joint Statement of Undisputed Facts and included in its entirety as part of the record of these proceedings.

Dated: June 16, 2015
   New York, New York

| | |
|---|---|
| /s/ Todd M. Goren | /s/ Jennifer C. DeMarco |
| Todd M. Goren | Jennifer C. DeMarco |
| Jamie A. Levitt | CLIFFORD CHANCE US LLP |
| MORRISON & FOERSTER LLP | 31 West 52nd Street |
| 250 West 55th Street | New York, New York 10019 |
| New York, New York 10019 | Telephone: (212) 878-8000 |
| Telephone: (212) 468-8000 | Facsimile: (212) 878-8375 |
| Facsimile: (212) 468-7900 | |
| *Counsel for The ResCap Liquidating Trust* | *Counsel for Ocwen Loan Servicing, LLC* |