**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | **NOT FOR PUBLICATION** |
|  | ) |  |
|  | ) | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | ) |  |
|  | ) | Chapter 11 |
| Debtors. | ) |  |
|  | ) | Jointly Administered |

**MEMORANDUM OPINION AND ORDER SUSTAINING THE
RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO
CLAIM NUMBER 61 FILED BY FRANCINE SILVER**

*A P P E A R A N C E S :*

MORRISON & FOERSTER LLP
*Attorneys for ResCap Borrower Claims Trust*
250 West 55th Street
New York, New York 10019
By:    Norman S. Rosenbaum, Esq.
       Jordan A. Wishnew, Esq.
       Meryl L. Rothchild, Esq.

FRANCINE SILVER
*Pro Se*
8613 Franklin Avenue
Los Angeles, California 90069
By:    Francine Silver

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the ResCap Borrower Claims Trust's (the "Trust") objection

(the "Objection," ECF Doc. # 8019) to Claim Number 61 (the "Claim," *id.* Ex. 1) filed by

Francine Silver ("Silver").[1]  The Claim is based on causes of action that Silver previously

asserted against Debtor GMAC Mortgage, LLC ("GMACM") in California actions filed before

---

[1]    The Objection is supported by the declarations of Kathy Priore (the "Priore Declaration," *id.* Ex. 3),
Jacqueline Keeley (the "Keeley Declaration," *id.* Ex. 4), David M. Liu (the "Liu Declaration," *id.* Ex. 5), and
Norman S. Rosenbaum (the "Rosenbaum Declaration," *id.* Ex. 6).

GMACM filed for bankruptcy. The Claim asserts wrongful foreclosure and unjust enrichment causes of action against GMACM, premised on GMACM's allegedly wrongful foreclosure on Silver's home. Silver challenges GMACM's standing to foreclose based on an allegedly forged assignment of her deed of trust. Silver filed an opposition to the Objection (the "Opposition," ECF Doc. # 8114), and the Trust filed a reply (the "Reply," ECF Doc. # 8167).[2] Silver filed a surreply challenging the accuracy of the statements made in the Priore Supplemental Declaration (the "Silver Surreply," ECF Doc. # 8192).

The Court held a hearing on the Objection on February 25, 2015; Silver did not appear at the hearing in person or by telephone. As discussed below, Silver alleged in her previously-pending chapter 7 bankruptcy case in California and in a separate California Superior Court wrongful foreclosure action—and again repeated here—that GMACM forged an assignment of deed of trust that provided the basis for GMACM to seek to foreclose on Silver's property. The California bankruptcy judge and the Superior Court judge both concluded, based on a comparison of signatures on several different documents, that Silver raised questions whether documents were forged by GMACM, such that GMACM was enjoined from completing foreclosure. Neither court resolved the alleged forgery issue. At the February 25, 2015 hearing in this Court, the Court concluded that it would not rule on the Trust's Objection without first conducting a limited evidentiary hearing on the validity of the assignment—in short, the Court wanted to see and hear the testimony of Jacqueline Keeley, whose name and purported signature appears on the relevant documents. The Court scheduled and held the evidentiary hearing on April 16, 2015 (the "Limited Evidentiary Hearing"). Despite receiving proper notice, Silver did

---

[2]      The Reply is supported by the supplemental declaration of Kathy Priore (the "Priore Supplemental Declaration," ECF Doc. # 8165-1).

not appear at the Limited Evidentiary Hearing in person or by telephone.[3]  At the conclusion of

the Limited Evidentiary Hearing, the Court took the matter under submission.

Based on the uncontroverted evidence presented at the Limited Evidentiary Hearing, and

the papers submitted in support of the Objection, the Court finds that no forgery occurred in

preparing, signing or notarizing of the assignment of the deed of trust.  Therefore, the Trust's

Objection to Silver's Claim is **SUSTAINED**.

## I.   BACKGROUND

### A.   Facts[4]

Silver obtained a $1,300,000 refinance loan (the "Loan") from Nationwide Lending

Group ("Nationwide") in March 2006, evidenced by a note (the "Note," Priore Decl. Ex. 3-A at

2–10) secured by a deed of trust (the "Deed of Trust," *id.* at 11–31) encumbering real property

located in Los Angeles, California (the "Property").  (Obj. ¶ 15.)  The Deed of Trust identified

Land America Commonwealth ("LAC") as trustee and Mortgage Electronic Registration

Systems, Inc. ("MERS") as the beneficiary.[5]  (*Id.*)  The Loan was securitized into a securitization

trust (the "Securitization Trust") with U.S. Bank National Association ("U.S. Bank") as Trustee.[6]

---

[3]     Although Silver did not attend the Limited Evidentiary Hearing, she subsequently filed supplemental
papers challenging the credibility of the Trust's witness at the hearing.  (*See* ECF Doc. ## 8508, 8525, 8552, 8725.)
Additionally, Karen Rozier, a claimant whose claim has been disallowed by the Court (*see* ECF Doc. # 7909), filed
a letter in support of Silver (*see* ECF Doc. # 8722).  The Court will not consider these untimely and inappropriate
supplemental filings.  Silver had an opportunity to cross examine the Trust's witness at the Limited Evidentiary
Hearing but she did not attend the hearing.

[4]     The Court makes the following findings of fact pursuant to FED. R. BANKR. P. 7052.

[5]     The Deed of Trust was recorded in the Los Angeles County Recorder's Office on March 23, 2006.  (*See*
Priore Decl. Ex. 3-A at 11.)

[6]     The Note was negotiated from Nationwide to GreenPoint via an allonge dated March 18, 2006.  (*See* Priore
Decl. Ex. 3-A at 9.)  GreenPoint endorsed the Note in blank.  (*See id.* at 10.)

(*Id.*)  GreenPoint Mortgage Funding, Inc. ("GreenPoint") initially serviced the loans in the

Securitization Trust.  (*Id.*)  GMACM succeeded GreenPoint as servicer in December 2006.  (*Id.*)

On July 5, 2011, MERS assigned the Deed of Trust to GMACM (the "GMACM

Assignment," Keeley Decl. Ex. 4-A).[7]  (Obj. ¶ 16.)  The GMACM Assignment was executed on

behalf of MERS by Jacqueline Keeley ("Keeley") in her capacity as "Assistant Secretary."  (*Id.*;

*see* Keeley Decl. Ex. 4-A at 3.)  Keeley was an employee of GMACM, but she was also properly

appointed as an Assistant Secretary of MERS.  (*See* Apr. 16, 2015 Hr'g Tr. 13:22–14:20, ECF

Doc. # 8535.)  According to the Trust, the GMACM Assignment assigned GMACM the right to

take legal measures to enforce the terms of the Note but did not transfer ownership of the Loan to

GMACM.  (Obj. ¶ 16.)  On July 6, 2011, GMACM executed a Substitution of Trustee (the "ETS

Substitution," Keeley Decl. Ex. 4-B), appointing Debtor Executive Trustee Services, LLC

("ETS") as Substitute Trustee under the Deed of Trust.[8]  (Obj. ¶ 17; *see* Keeley Decl. Ex. 4-B at

3.)  The ETS Substitution was executed on behalf of GMACM by Keeley in her capacity as

"Authorized Officer."  (*See* Keeley Decl. Ex. 4-B at 3.)

Silver failed to make nine consecutive Loan payments totaling $58,595.72 as of July 21,

2011.  (*See* Obj. ¶ 18.)  As a result of Silver's delinquency, ETS issued a Notice of Default on

July 21, 2011 (the "Notice of Default," Priore Decl. Ex. 3-B), commencing foreclosure on the

Property.[9]  (*See* Obj. ¶ 18; Priore Decl. Ex. 3-B at 3.)  In October 2011, Silver was served with a

---

[7]        The GMACM Assignment was recorded in the Los Angeles County Recorder's Office on July 13, 2011.
(*See* Keeley Decl. Ex. 4-A at 2.)

[8]        The ETS Substitution was recorded in the Los Angeles County Recorder's Office on July 22, 2011.  (*See*
Keeley Decl. Ex. 4-B at 2.)

[9]        The Notice of Default was recorded in the Los Angeles County Recorder's Office on July 22, 2011.  (*See*
*id.* at 2.)

Notice of Trustee's Sale (the "2011 Notice of Sale," Priore Decl. Ex. 3-C), which scheduled a foreclosure sale on November 21, 2011.[10]  (Obj. ¶ 19; *see* Priore Decl. Ex. 3-C at 2.)  The scheduled foreclosure sale was halted after Silver filed a voluntary chapter 7 bankruptcy petition (the "Silver Chapter 7 Case") in the United States Bankruptcy Court for the Central District of California (the "California Bankruptcy Court") on November 14, 2011.  (*See* Obj. ¶¶ 19, 22; *id.* Ex. 7.)  GMACM filed a motion for relief from the automatic stay in the Silver Chapter 7 Case, alleging that its interest in the Property was not adequately protected (Obj. ¶ 23; *see id.* Ex. 8); Silver opposed GMACM's lift stay motion on the basis that GMACM lacked standing to foreclose (Obj. ¶ 23; *see id.* Ex. 9).  On February 29, 2012, after a hearing, the California Bankruptcy Court entered an order denying GMACM's motion for relief from the automatic stay, finding that GMACM could not establish it had standing to foreclose at the time the motion was filed because the authenticity of the signature on the GMACM Assignment was dubious. (Obj. ¶ 23; *see id.* Ex. 10.)

On March 6, 2012, Silver amended her schedule of assets to include an adversary proceeding complaint (the "Adversary Proceeding Complaint," *id.* Ex. 12) she filed on the same date against GMACM, seeking to quiet title to the Property.  (Obj. ¶ 24.)  The Adversary Proceeding Complaint alleged that the GMACM Assignment was invalid because the beneficiaries of the Note and Deed of Trust did not specifically authorize MERS to assign any interest in those instruments.  (*Id.*)  The Adversary Proceeding Complaint also challenged the validity of the GMACM Assignment and the ETS Substitution on the basis that Keeley's signature on each of the documents was forged.  (*See id.*)  While the Adversary Proceeding

---

[10]    The 2011 Notice of Sale was recorded in the Los Angeles County Recorder's Office on October 24, 2011. (*See id.* at 2.)

Complaint alleged that GMACM wrongfully foreclosed on the Property, Silver did not include claims for money damages or penalties in the Adversary Proceeding Complaint.  (*See id.*)

The California Bankruptcy Court issued Silver a discharge (the "Silver Discharge Order," *id.* Ex. 11) on March 6, 2012 (Obj. ¶ 24), and the Silver Chapter 7 Case was closed on May 23, 2012 (*id.* ¶ 25).  GMACM filed a notice of its bankruptcy in the Silver Chapter 7 Case on May 31, 2012.  (*Id.* ¶ 26; *see id.* Ex. 14.)

On August 6, 2012, GMACM filed a motion to dismiss the Adversary Proceeding Complaint, asserting that:  (i) the California Bankruptcy Court lacked subject matter jurisdiction over the action as a result of the Discharge Order and the closing of the Silver Chapter 7 Case; and (ii) the Adversary Proceeding Complaint should be dismissed for failure to state a claim. (Obj. ¶ 27; *see id.* Ex. 15.)  Silver filed an opposition to the motion to dismiss.  (Obj. ¶ 27; *see id.* Ex. 16.)  On September 12, 2012, the California Bankruptcy Court entered a final order granting GMACM's motion to dismiss, overruling Silver's opposition, and dismissing the Adversary Proceeding Complaint without prejudice and without leave to amend.  (Obj. ¶ 27; *see id.* Ex. 17.)

On September 17, 2012, Silver filed a complaint (the "Complaint," Liu Decl. Ex. 5-A) in the Superior Court of the State of California, County of Los Angeles (the "Superior Court"), asserting a wrongful foreclosure cause of action against GMACM (the "Wrongful Foreclosure Action").  (*See* Obj. ¶ 28.)  The Complaint alleged that GMACM lacked standing to foreclose on the Property and sought:  (i) a declaration that GMACM's Notice of Default is void and that GMACM has no right, title, or interest in the Property; and (ii) injunctive relief temporarily and permanently enjoining GMACM and its successors and assigns from taking further foreclosure actions against the Property.  (*Id.*; *see* Compl. at 7.)  GMACM did not file a notice of bankruptcy

in the Wrongful Foreclosure Action because the Complaint did not allege claims for monetary damages against GMACM.  (Obj. ¶ 28.)

In October 2012, Silver was served with a second Notice of Trustee's Sale (the "2012 Notice of Sale," Priore Decl. Ex. 3-D), which scheduled a foreclosure sale on November 5, 2012.[11]  (*See* Obj. ¶ 19; *see* Priore Decl. Ex. 3-D at 2.)  To halt the scheduled foreclosure sale, Silver filed a motion in the Wrongful Foreclosure Action seeking a preliminary injunction (the "Preliminary Injunction Motion," Liu Decl. Ex. 5-B).  (Obj. ¶ 29; *see* Liu Decl. Ex. 5-B.)  The parties unsuccessfully tried to settle the case. (*Id.*)

On June 25, 2013, Silver amended her Complaint (the "First Amended Complaint," Liu Decl. Ex. 5-C) to name Ocwen as a defendant and assert a claim under the California Fair Debt Collection Practices Act (the "CFDCPA") against Ocwen.  (Obj. ¶ 30; *see* Liu Decl. Ex. 5-C.) The First Amended Complaint also sought declaratory and injunctive relief against GMACM, as well as attorney's fees against Ocwen on the CFDCPA claim.  (*Id.*)  According to the Trust, because Silver's claims alleged in the First Amended Complaint were proceeding under the supplemental servicing order entered by this Court (the "Supplemental Servicing Order," ECF Doc. # 774), Ocwen conducted all of the litigation activity involving GMACM in the Wrongful Foreclosure Action after Ocwen became servicer of the Loan.  (Obj. ¶ 30.)  In August 2013, Silver served GMACM with discovery requests, including interrogatories and requests for admissions.  (*Id.* ¶ 31.)  GMACM responded to these requests, maintaining that there were no improprieties concerning the GMACM Assignment or the ETS Substitution.  (*Id.* ¶ 32.)

---

[11]     The 2012 Notice of Sale was recorded in the Los Angeles County Recorder's Office on October 5, 2012. (*See id.* at 2.)

On April 16, 2014, Silver amended the First Amended Complaint (the "Second Amended

Complaint," Liu Decl. Ex. 5-F), reiterating the allegations against GMACM in the First

Amended Complaint and challenging GMACM's right to foreclose based on alleged

securitization issues and an invalid assignment of the Deed of Trust.  (Obj. ¶ 33; *see* Liu Decl.

Ex. 5-F.)  Specifically, the Second Amended Complaint reiterates Silver's allegations that the

GMACM Assignment and the ETS Substitution are invalid because Keeley's signatures are

different on the two documents, and therefore, at least one such signature was forged.  (*See id.*)

GMACM filed an objection to the Preliminary Injunction Motion on May 12, 2014.  (*Id.*

¶ 34; *see* Liu Decl. Ex. 5-G.)  On May 21, 2014, GMACM filed a demurrer to the Second

Amended Complaint, asserting that:  (i) the Second Amended Complaint is not sufficiently

pleaded; (ii) Silver lacks standing to challenge the securitization of the Deed of Trust; and

(iii) Silver has failed to show the Deed of Trust was not assigned or that she suffered prejudice as

a result of any improper assignment.[12]  (Obj. ¶ 35 n.8; *see* Liu Decl. Ex. 5-I.)  At a hearing on

May 23, 2014, the Superior Court granted the Preliminary Injunction Motion, finding that the

signatures on the GMACM Assignment and the ETS Substitution may have been made by

different individuals.  (*See* Obj. ¶ 34; Liu Decl. Ex. 5-H.)

**B.      The Claim**

On June 4, 2012, Silver timely filed a $3,000,000 general unsecured claim against Debtor

Residential Capital, LLC ("ResCap"), citing "[m]ortgage litigation fraud, [and] unjust

enrichment" as the bases for her Claim.  (Obj. ¶ 37; *see id.* Ex. 1 at 2.)  The Claim was

---

[12]      GMACM's demurrer to the Second Amended Complaint was overruled on May 14, 2015.  *See*
http://www.lacourt.org/casesummary/ui/ (search "SC118412" for "Case Number" and search "Santa Monica
Courthouse" for "Filing Courthouse"; then follow "Search" hyperlink).

redesignated as a claim against GMACM on November 20, 2013.  (*See* ECF Doc. # 5898.)

Silver attaches to her proof of claim:  (i) her Adversary Proceeding Complaint; (ii) her

opposition to GMACM's motion for relief from the automatic stay filed in the Silver Chapter 7

Case; (iii) her voluntary chapter 7 petition and schedules filed in the Silver Chapter 7 Case; and

(iv) copies of her Loan documents, including the Note and Deed of Trust.  (Obj. ¶ 37; *see id.*

Ex. 1 at 3–133.)  Silver seeks to quiet title to the Property against GMACM and to enjoin

GMACM and its agents, successors, and assigns from any further foreclosure actions against the

Property.  (Obj. ¶ 37.)

On June 21, 2013, the Debtors mailed Silver a letter (the "Request Letter," Priore Decl.

Ex. 3-F), seeking additional information and documentation in support of her Claim.  (Obj. ¶ 39.)

On July 9, 2013, Silver submitted a response to the Request Letter, enclosing the following

documents:  (i) a copy of her Loan payment history; (ii) the First Amended Complaint;

(iii) exhibits to the Preliminary Injunction Motion filed in the Wrongful Foreclosure Action; and

(iv) a forensic audit report completed on the Loan.  (*Id.* ¶ 40; *see* Priore Decl. Ex. 3-G.)

### C.    Silver's Prior Motions and Appeals

On March 7, 2014, Silver filed the *Pro Se Motion by Francine Silver for Payment of*

*Claim #61* (the "Motion for Payment," ECF Doc. ## 6639, 6690).  By the Motion for Payment,

Silver argued that her Claim is an "Allowed Claim" under the Debtors' confirmed chapter 11

plan (the "Plan," ECF Doc. # 6065-1) because the Debtors did not object to the Claim before the

Plan became effective (the "Effective Date").  (Obj. ¶ 42.)  On March 26, 2014, the Court

entered an order denying the Motion for Payment, (the "Payment Order," ECF Doc. # 6706),

finding that "[b]ecause her Claim is still subject to objection and has not been deemed allowed,

Silver is not presently entitled to any distribution.  (*See id.* at 3.)  On April 9, 2014, Silver filed a

motion for reconsideration of the Payment Order, (ECF Doc. # 6774), which was also denied by

the Court on April 24, 2014 (the "Reconsideration Order," ECF Doc. # 6818, and together with

the Payment Order, the "Silver Orders"). (Obj. ¶ 43.)

On April 24, 2014, Silver filed a notice of appeal of the Silver Orders in the United States

District Court for the Southern District of New York (the "District Court"). (*Id.* ¶ 44.) Silver

filed her brief in support of the appeal on June 2, 2014 (the "Appeal Brief," *id.* Ex. 18). (Obj.

¶ 44.) On June 5, 2014, Silver filed a motion in the District Court seeking to certify the appeal to

the United States Court of Appeals for the Second Circuit (the "Second Circuit"), and the Trust

filed a brief in opposition to this motion on June 20, 2014. (*Id.* ¶ 46.)

On June 19, 2014, Silver filed a motion for default judgment in the District Court,

asserting that the Trust missed its deadline to respond to the Appeal Brief. (*Id.* ¶ 47.) The Trust

filed a letter in opposition to this motion, and Silver filed a letter in response. (*Id.*) On July 9,

2014, the District Court entered an order (the "District Court Order," *id.* Ex. 25), denying

Silver's motion for default judgment and denying her motion for direct appeal to the Second

Circuit. (Obj. ¶ 48.) The Trust ultimately filed its memorandum of law in response to the

Appeal Brief within the allowed period of time. (*Id.*)

On July 23, 2014, Silver filed an appeal of the District Court Order in the Second Circuit.

(*Id.* ¶ 49.) She filed her opening brief in connection with this appeal on September 4, 2014 and

then filed a motion for default judgment on November 6, 2014, claiming that the Trust failed to

timely respond to her appellate brief. (*Id.*) On November 17, 2014, the Trust filed a combined

motion to dismiss the appeal and response to Silver's motion for default judgment. (*Id.*) Silver

filed an opposition to the Trust's motion, and the Trust filed a reply. (*Id.*) On January 28, 2015,

the Second Circuit dismissed the appeal and denied Silver's motion for default judgment as moot

because a final order had not been issued by the District Court.  *See Silver v. ResCap Borrower Claims Trust*, Case No. 14-2664 (2d Cir. Jan. 28, 2015) (ECF Doc. ## 33, 34).[13]

Silver filed a second motion for default judgment in the District Court on December 24, 2014, alleging that the Trust did not timely file the requisite documents in response to her Appeal Brief.  (*Id.* ¶ 50.)  The Trust filed an opposition to this motion, and Silver filed a reply.  (*Id.*)  The District Court entered an order denying Silver's second motion for default judgment on March 13, 2015.  *See Silver v. ResCap Borrower Claims Trust*, Case No. 1:14-cv-03630 (GBD) (S.D.N.Y. Mar. 13, 2015) (ECF Doc. # 34).[14]

### D.    The Objection

The Trust argues that Silver's Claim should be disallowed and expunged because her wrongful foreclosure, fraud, and unjust enrichment causes of action are meritless.  (*Id.* ¶¶ 55–74.)  Additionally, the Trust contends that Silver fails to establish that she suffered any damages as a result of the Debtors' actions, let alone the $3 million asserted in the Claim.  (*Id.* ¶ 75.)

According to the Trust, Silver's wrongful foreclosure claim fails because:  (i) Silver lacks standing to challenge GMACM's foreclosure under California law; (ii) GMACM had a beneficial interest in the Note and the right to foreclose on the Property; and (iii) Silver cannot quiet title to the Property because she has not discharged her obligations on the Loan and, in any event, her quiet title action is moot against the Debtors because no Debtor currently holds an interest in the Property.  (*Id.* ¶¶ 55–69).  The Trust argues that Silver's fraud claim lacks merit because she has not sufficiently alleged that GMACM engaged in fraudulent conduct or

---

[13]    Silver filed a petition for writ of certiorari with the United States Supreme Court on April 27, 2015.  *See Silver v. ResCap Borrower Claims Trust*, Case No. 14-9948 (2015) (ECF Doc. # 1).

[14]    Silver filed an appeal of this order with the Second Circuit on March 16, 2015.

established how she was damaged by GMACM's actions.  (*Id.* ¶¶ 70–72.)  Finally, the Trust

contends that Silver's unjust enrichment claim fails where, as here, contract agreements define

the parties' respective rights.  (*Id.* ¶ 73.)  Moreover, Silver has not adequately alleged how

GMACM was unjustly enriched at her expense, since she stopped making payments on her Loan

in 2011 and has continued to live in her Property.  (*Id.* ¶ 74.)

> ### E.    The Opposition

Silver argues that the Trust should be prevented from asserting the Objection under the

"unclean hands" doctrine.  (Opp. at 30.)  She asserts that the Debtors' unethical actions are

evidenced by their over-billing practices, refusal to comply with the terms of the Loan, and

reliance on the fraudulent signatures of Jacqueline Keeley, the authenticity of which the

California Bankruptcy Court and the Superior Court found to be in doubt.  (*Id.*)  Accordingly,

Silver contends, the Trust's evidence "should not be taken at face value and under the unclean

hands doctrine it should be ignored in [its] entirety."  (*Id.* at 32.)

Silver also argues that her Claim satisfies the pleading standards of the applicable Federal

Rules of Civil Procedure (the "FRCP") because she set forth a "short and plain statement" of her

Claim (*id.* at 35), and she specifically alleged fraud "by the purported Keeley signatures, forensic

loan audit, and all the evidence contained in the proof of claim including [the] finding of [f]raud

by [the California Bankruptcy Court]" (*id.* at 36).  Furthermore, the documentation she submitted

in response to the Debtors' Request Letter adequately supports her Claim.  (*Id.* at 43–45.)

Silver further argues that her Claim was deemed allowed under the Plan and should have

already been paid.  (*See id.* at 36–43.)  Silver contends that the Debtors' failure to respond to her

Motion for Payment, which set forth a similar argument, operates as a wavier of the Trust's

ability to object to her Claim.  (*See id.* at 45–48.)  According to Silver, "[i]t is now too late for

[the] Debtors to argue points conceded by their failure to respond. The [C]laim is deemed allowed and can no longer be objected to under . . . the [P]lan." (*Id.* at 48.)

Silver contends that the quiet title action is not for this Court to determine because the Wrongful Foreclosure Action is pending. (*Id.* at 48.) She asserts that she does not seek non-monetary relief against any Debtor, but rather seeks monetary damages against GMACM because it was not the correct party to collect her Loan payments, "forced [her] into bankruptcy," and ruined her livelihood as a real estate investor "because her credit and reputation have been destroyed." (*Id.* at 64.)

Finally, Silver argues that she has adequately pleaded her wrongful foreclosure and unjust enrichment causes of action. (*See id.* at 52–62.) With respect to wrongful foreclosure, she asserts that GMACM never owned rights to service her Loan because the GMACM Assignment was fraudulently executed; she also argues that the GMACM Assignment is invalid under the terms of the applicable pooling and servicing agreement governing the Securitization Trust. (*See id.* at 52–56.) Silver further claims that GMACM was unjustly enriched at her expense because "GMAC[M] misrepresented itself and the [L]oan terms in order to obtain $300,000 in mortgage payments it turns out they had no right to collect in the first place." (*Id.* at 62.) Additionally, she asserts that GMACM was unjustly enriched by the consideration it received from assigning her Deed of Trust to U.S. Bank. (*Id.*)

### F.    The Reply

The Trust contends that Silver has failed to meet her burden of supporting her Claim with sufficient evidence. (Reply ¶ 7–17.) According to the Trust, Silver makes various conclusory allegations regarding GMACM's improper billing practices that are not supported by the documents on which she relies. (*Id.* ¶ 9.) For instance, the Trust asserts that Silver relies on a

letter she wrote to GMACM in May 2011 to support her allegation of overbilling, in which

Silver states that her Loan was supposed to have an interest-only option until May 2011 that was

suspended by GMACM without due cause.  (*Id.*)  However, according to a letter GMACM wrote

to Silver in June 2011, GMACM directed Silver's attention to the relevant portion of her Note,

which provided that "[o]n the 5th change date and on each succeeding 5th Payment Change Date

thereafter, [she] will begin paying the Full Payment as [her] monthly payment until [her]

monthly payment changes again."  (*Id.* ¶ 10 (internal quotation marks omitted) (quoting Note

¶ 3(G)).)  The Trust also argues that Silver has not supported her allegations that GMACM

"forced" her into bankruptcy or committed any errors that impacted her credit or livelihood and,

therefore, she fails to support her Claim for $3 million in damages.  (*See id.* ¶¶ 12, 14–15, 17.)

Moreover, the Trust asserts that even if GMACM was not authorized to service her Loan—

which the Trust maintains is not the case—"Silver fails to articulate a link between that theory

and the alleged harm Silver suffered, since she acknowledged that she was obligated to pay her

mortgage."  (*Id.* ¶ 16.)

According to the Trust, Silver also does not adequately respond to its challenges to the

merits of the Claim set forth in the Objection.  (*Id.* ¶ 18.)  The Trust filed the Keeley Declaration

in support of the Objection, in which Keeley, the signor of the documents alleged to be

fraudulently executed, stated under penalty of perjury that she had authority to, and did in fact,

execute the GMACM Assignment and the ETS Substitution.  (*Id.* ¶ 19.)  Silver does not offer

any evidence to establish that the statements made in the Keeley Declaration were inaccurate but

instead speculates that Keeley "does not exist" and reiterates arguments concerning

discrepancies between the signatures on the GMACM Assignment and the ETS Substitution.

(*See id.*)  The Trust further argues that Silver has failed to establish that she has standing to

14

challenge the securitization of the Loan because she has not adequately shown that she is a party to, or beneficiary of, the applicable pooling and servicing agreement of the Securitization Trust. (*Id.* ¶ 20.)  Finally, the Trust asserts that Silver's argument regarding the allowance and payment of her Claim has already been disposed of by the Court in the Silver Orders.[15]  (*See id.* ¶¶ 22–23.)

### G.    The Limited Evidentiary Hearing

At the preliminary hearing on the Objection, the Court scheduled the Limited Evidentiary Hearing in light of the fact that the California Bankruptcy Court and the Superior Court expressed concerns that the GMACM Assignment and/or the ETS Substitution may have been forged (although neither court held an evidentiary hearing to address that contention).  (*See* Feb. 25, 2015 Hr'g Tr. 52:9–14, ECF Doc. # 8368.)  Specifically, the Court scheduled the Limited Evidentiary Hearing to hear Keeley's testimony on the validity of the GMACM Assignment and the ETS Substitution.  (*See id.* at 52:14–19.)

The Trust called Keeley as its witness at the Limited Evidentiary Hearing.  (*See* Apr. 16, 2015 Hr'g Tr. 10:14–15.)  Keeley testified under oath that she was an authorized signatory of GMACM and MERS at the time she executed the GMACM Assignment and the ETS Substitution.  (*See id.* at 13:22–14:20, 19:20–20:1.)  She testified that she personally signed the GMACM Assignment on behalf of MERS on the same day it was dated and identified her signature on the GMACM Assignment as her own.  (*See id.* at 20:2:–12, 21:19–22:4.)  In response to the Court's inquiry, Keeley also testified that the GMACM Assignment was notarized by Mary Lynch, a GMACM employee who worked in the same office as Keeley and

---

[15]      For the same reasons set forth in the Silver Orders (*see* ECF Doc. ## 6706, 6818), the Court concludes that Silver's argument that her Claim has been deemed allowed under the Plan is without merit.

would often notarize documents signed by Keeley.  (*See id.* at 22:18–23:20.)  Keeley also

identified the ETS Substitution as a document she executed on behalf of GMACM.  (*See id.* at

24:1–25:21.)  She testified that she personally signed the ETS Substitution on behalf of

GMACM on the same day it was dated.  (*See id.* at 25:10–24.)  She also testified that the ETS

Substitution was notarized by Nicole Shelton, another GMACM employee who worked in the

same office as Keeley and would often notarize documents signed by Keeley.  (*See id.* at 26:4–

17.)  Keeley testified that her signatures on documents she executes are not always identical in

appearance and acknowledged that her signature on the GMACM Assignment appeared slightly

different from her signature on the ETS Substitution.  (*See id.* at 27:17–24.)  Nonetheless, she

unequivocally stated that her actual signature appears on each document.  (*See id.* at 28:4–6.)

The Court finds that Keeley's testimony was truthful and persuasive.  The Court

expressly finds that Keeley signed each of these documents and her signature was notarized by

other GMACM employees in the same office who knew Keeley and regularly notarized

documents with Keeley's signature.

## II.   <u>DISCUSSION</u>

### A.   **Claims Objections**

Correctly filed proofs of claim "constitute prima facie evidence of the validity and

amount of the claim . . . .  To overcome this prima facie evidence, an objecting party must come

forth with evidence which, if believed, would refute at least one of the allegations essential to the

claim."  *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000).  By

producing "evidence equal in force to the prima facie case," an objector can negate a claim's

presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a

preponderance of the evidence that under applicable law the claim should be allowed."  *Creamer*

*v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS),

2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted).  If the

objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of

its amount, the claimant need offer no further proof of the merits of the claim."  4 COLLIER ON

BANKRUPTCY ¶ 502.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014).

        Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if

"unenforceable against the debtor and property of the debtor, under any agreement or applicable

law."  11 U.S.C. § 502(b)(1).  To determine whether a claim is allowable by law, bankruptcy

courts look to "applicable nonbankruptcy law."  *In re W.R. Grace & Co.*, 346 B.R. 672, 674

(Bankr. D. Del. 2006).

        Federal pleading standards apply when assessing the validity of a proof of claim.  *See,*

*e.g.*, *In re Residential Capital, LLC*, 518 B.R. 720, 731 (Bankr. S.D.N.Y. 2014); *In re DJK*

*Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party

has met their burden in connection with a proof of claim, bankruptcy courts have looked to the

pleading requirements set forth in the Federal Rules of Civil Procedure." (citations omitted)).

Accordingly, a claimant must allege "enough facts to state a claim for relief that is plausible on

its face."  *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Where a complaint pleads facts that are merely

consistent with a defendant's liability, it stops short of the line between possibility and

plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 678 (citation and internal quotation

marks omitted).  Plausibility "is not akin to a probability requirement," but rather requires "more

than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citation and internal

quotation marks omitted).  The court must accept all factual allegations as true, discounting legal

conclusions clothed in factual garb. *See, e.g.*, *id.* at 677–78; *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true" (citing *Iqbal*, 556 U.S. at 678)). The court must then determine if these well-pleaded factual allegations state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). A claim that pleads only facts that are "merely consistent with a defendant's liability" does not meet the plausibility requirement. *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "The pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

To support claims grounded in fraud, FRCP 9(b) requires the claimant to "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). FRCP 9(b) is grounded in the purpose "to protect the defending party's reputation, to discourage meritless accusations, and to provide detailed notice of fraud claims to defending parties." *Silverman v. Arctrade Capital, Inc. (In re Arctrade Fin. Techs. Ltd.)*, 337 B.R. 791, 801 (Bankr. S.D.N.Y. 2005) (internal quotation marks and citation omitted).

Although "[claims] drafted by *pro se* [claimants] are to be construed liberally, [] they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with 'a fair understanding of what the [claimant] is complaining about and . . . whether there is a legal basis for recovery.'" *Kimber v. GMAC Mortg., LLC (In re Residential Capital, LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (ellipsis in original) (quoting *Iwachiw v. N.Y.C. Bd. of Elections*, 126 F. App'x 27, 29 (2d Cir. 2005)).

Silver's Claim for damages against GMACM is properly pending in this Court and must be determined as part of the claims allowance process. None of the Debtors currently services Silver's Loan; and none of the Debtors is seeking to foreclose on her Property. Neither the California Bankruptcy Court in the now-closed Silver Chapter 7 Case, nor the Superior Court in the Wrongful Foreclosure Action, resolved the issue central to Silver's Claim for damages filed in these chapter 11 bankruptcy cases—whether the GMACM Assignment was forged. As explained in this Opinion, the Court has found and concluded that the GMACM Assignment was properly prepared, signed by Keeley, notarized and then filed.

### B.    Wrongful Foreclosure

A claim for wrongful foreclosure in California requires a plaintiff to allege that

> (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering.

*Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1145 (N.D. Cal. 2013) (citations omitted). "A sale of real property is illegal if the trustee did not have the power to foreclose under the deed of trust." *Kilpatrick v. U.S. Bank, N.A.*, No. 12–CV–1740 W (NLS), 2013 WL

4525571, at *3 (S.D. Cal. Aug. 26, 2013) (citing CAL. CIV. CODE § 2924(a)(1); *Gomes v. Countrywide Home Loans, Inc.*, 121 Cal. Rptr. 3d 819, 824 (Ct. App. 2011)).

The Trust submitted documentation establishing the validity of the Debtors' authority to commence foreclosure on the Property, including the Note, the Deed of Trust, the GMACM Assignment, the ETS Substitution, the Notice of Default, the 2011 Notice of Sale, and the 2012 Notice of Sale. "Under California law, there is no requirement for the production of an original promissory note prior to initiation of a nonjudicial foreclosure. Therefore, the absence of an original promissory note in a nonjudicial foreclosure does not render a foreclosure invalid." *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1186 (N.D. Cal. 2009) (internal citations omitted). The nonjudicial foreclosure process is instead "commenced by the recording of a notice of default and election to sell by the trustee." *Rivac v. Ndex W. LLC*, No. C 13-1417 (PJH), 2013 WL 6662762, at *6 (N.D. Cal. Dec. 17, 2013) (citation and internal quotation marks omitted). "Under California Civil Code section 2924(b)(4), a 'person authorized to record the notice of default or the notice of sale' includes 'an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee.'" *Halajian v. Deutsche Bank Nat'l Trust Co.*, No. 1:12-CV-00814 (AWI) (GSA), 2013 WL 593671, at *5 (E.D. Cal. Feb. 14, 2013).

First, MERS, the initial beneficiary of the Deed of Trust (*see* Priore Decl. Ex. 3-A at 12), assigned GMACM "all beneficial interest under" the Deed of Trust via the GMACM Assignment (*see* Keeley Decl. Ex. 4-A at 3). Second, GMACM, as beneficiary of the Deed of Trust, had the authority to appoint ETS as Substitute Trustee of the Deed of Trust pursuant to the ETS Substitution, which was executed on July 6, 2011 and recorded on July 22, 2011 (*see* Priore Decl. Ex. X). *See In re Residential Capital, LLC*, 523 B.R. 24, 43 (Bankr. S.D.N.Y. 2014)

(citing *Cedano v. Aurora Loan Servs., LLC (In re Cedano)*, 470 B.R. 522, 532 (9th Cir. B.A.P.

2012) (holding that beneficiary of deed of trust had authority to appoint substitute trustee).

Section 2934a(a)(1)(A) of the California Civil Code provides in relevant part:

> The trustee under a trust deed upon real property . . . may be
> substituted by the recording in the county in which the property is
> located of a substitution executed and acknowledged by . . . all of
> the beneficiaries under the trust deed, or their successors in
> interest, and the substitution shall be effective notwithstanding any
> contrary provision in any trust deed executed on or after January 1,
> 1968 . . . .

CAL. CIV. CODE § 2934a(a)(1)(A).  Under California law, a substitution of trustee is only

required to be executed, not recorded, before a notice of default is recorded.  *In re Cedano*, 470

B.R. at 532 ("[T]here is no requirement that [a] Substitution of Trustee be recorded, only that it

be executed." (citing CAL. CIV. CODE § 2924(b)(4); *Padayachi v. IndyMac Bank*, No. C 09-5545

(JF), 2010 WL 4367221, at *3 (N.D. Cal. Oct. 28, 2010))); *see also Myers v. Encore Credit*, No.

CIV S-11-1714 (KJM), 2012 WL 4511033, at *13 (E.D. Cal. Sept. 30, 2012) (citation omitted).

Here, the ETS Substitution was recorded before the Notice of Default was recorded, as reflected

by the recorded document numbers provided by the Los Angeles County Recorder's Office.

(*Compare* Keeley Decl. Ex. 4-B (Doc. No. 20110981264), *with* Priore Decl. Ex. 3-B (Doc. No.

11-981265).)  Additionally, ETS had the authority to record the 2011 Notice of Sale and the

2012 Notice of Sale pursuant to the ETS Substitution.  *See* CAL. CIV. CODE § 2934a(d) ("A

trustee named in a recorded substitution of trustee shall be deemed to be authorized to act as the

trustee under the mortgage or deed of trust for all purposes from the date the substitution is

executed by the mortgagee, beneficiaries, or by their authorized agents.").

   Silver challenges the validity of the GMACM Assignment and the ETS Substitution,

arguing that discrepancies between Keeley's signature on the two documents casts doubt as to

their authenticity.  The California Bankruptcy Court and the Superior Court both found that the

signatures on the GMACM Assignment and the ETS Substitution raised questions as to their

authenticity.  (*See* Liu Decl. Ex. 5-C at 15 ("THE COURT: . . . "So I think there's sufficient

doubt about the veracity of the documents and I would have to conclude that either somebody

was forging signatures, or this is a blatant example of robo-signing.") (excerpt of transcript of

hearing on GMACM's lift stay motion filed in the Chapter 7 Case); Liu Decl. Ex. 5-H at 8 ("The

matter having been argued and evidence having been presented to the Court by both parties, the

Court finds that there is substantial evidence that one or more documents on which defendants

rely for their claims are fraudulent or contain fraudulent signatures.") (order granting preliminary

injunction).)  However, Keeley testified under oath at the Limited Evidentiary Hearing that in

July 2011:  (i) she was authorized to execute assignments of deeds of trusts and substitutions of

trustees on behalf of MERS (*see* Apr. 16, 2015 Hr'g Tr. 13:22–15:14); (ii) she was authorized to

execute substitutions of trustees on behalf of GMACM (*see id.* at 25:19–21); (iii) she personally

signed the GMACM Assignment and the ETS Substitution on the day each document was dated

before a notary (*see id.* at 20:2–23:20, 24:5–17); and (iv) Keeley's signatures on the two

documents were notarized by other GMACM employees located in the same office as Keeley,

and each of those individuals often attested to Keeley's signature (*see id.* at 22:21–23:20, 26:4–

17).  (*See also* Keeley Decl. ¶¶ 6–7, 9–10; *see id.* Exs. 4-A, 4-B.)  Silver did not appear at the

Limited Evidentiary Hearing and cross examine Keeley despite having an opportunity to do so.

Accordingly, the Trust has met its burden of establishing that GMACM had standing to

foreclose on the Property and properly proceeded to do so under California law, and Silver has

not put forth sufficient evidence supportive of her wrongful foreclosure cause of action in

response.  The Trust thereby rebutted the prima facie validity of Silver's proof of claim, shifting

the burden to Silver to prove by a preponderance of the evidence that her Claim should be

allowed.  Silver failed to do so.  The Objection is therefore **SUSTAINED** as to Silver's wrongful

foreclosure cause of action.

### C.    Unjust Enrichment

"[T]he equitable remedy of restitution when unjust enrichment has occurred 'is an

obligation (not a true contract) created by the law without regard to the intention of the parties,

and is designed to restore the aggrieved party to his or her former position by return of the thing

or its equivalent in money.'"  *Martin v. Litton Loan Servicing LP*, No. 2:12-cv-00970 (MCE)

(EFB), 2013 WL 211133, at *11 (E.D. Cal. Jan. 16, 2013) (citation omitted).  As the *Martin*

court observed:

> [A]n individual may be required to make restitution if he is
> unjustly enriched at the expense of another.  A person is enriched
> if he receives a benefit at another's expense.  The term 'benefit'
> 'denotes any form of advantage.' . . .  Even when a person has
> received a benefit from another, he is required to make restitution
> 'only if the circumstances of its receipt or retention are such that,
> as between the two persons, it is unjust for him to retain it.'

*Id.* (quoting *F.D.I.C. v. Dintino*, 84 Cal. Rptr. 3d 38, 49 (Ct. App. 2008)).

Silver alleges that GMACM was unjustly enriched to the extent it collected Loan

payments it was not entitled to collect because the GMACM Assignment was invalid; however,

GMACM's role as servicer of the Loan was not dependent on the validity of the GMACM

Assignment.  The Trust asserts that GMACM was designated as successor servicer to GreenPoint

in December 2006, years before the GMACM Assignment was ever made.  (Priore Decl. ¶¶ 4–

5.)  While Silver asserts that GMACM engaged in overbilling practices by failing to account for

the Note's interest-only payment option (*see* Opp. at 5–6), letters from GMACM to Silver

provide that the interest-only payment option would not be available where the interest-only

payment is less than the minimum payment amount (*see* Liu Decl. Ex. 5-B at 41).  Since Silver

does not adequately allege that GMACM was not entitled to service her Loan, which she

admitted she has an obligation to repay (Opp. at 63), the Objection is **SUSTAINED** as to

Silver's unjust enrichment cause of action.

### III.    CONCLUSION

For the reasons set forth above, the Objection is **SUSTAINED** in its entirety and the

Claim is **DISALLOWED** and **EXPUNGED**.

**IT IS SO ORDERED.**

Dated:    June 24, 2015
          New York, New York

_Martin Glenn_
MARTIN GLENN
United States Bankruptcy Judge