**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

---

### ORDER GRANTING RESCAP BORROWER CLAIMS TRUST'S EIGHTY-SEVENTH OMNIBUS OBJECTION TO CLAIMS ((I) NO LIABILITY BORROWER CLAIMS, (II) REDUCE AND ALLOW BORROWER CLAIM, AND (III) REDESIGNATE, REDUCE AND ALLOW BORROWER CLAIM)

Upon the eighty-seventh omnibus objection to claims (the "Objection")[1] of the ResCap Borrower Claims Trust (the "Trust"), established pursuant to the terms of the confirmed Plan filed in the above-referenced Chapter 11 cases, as successor in interest to the Debtors with regard to Borrower Claim matters, seeking entry of an order, pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007(d) of the Federal Rules of Bankruptcy Procedure, and this Court's order approving procedures for the filing of omnibus objections to proofs of claim [Docket No. 3294] (the "Procedures Order"), disallowing and expunging the No Liability Borrower Claims, reducing the Reduce and Allow Borrower Claim and redesignating and reducing the Redesignate, Reduce, and Allow Borrower Claim, all as more fully described in the Objection; and it appearing that this Court has jurisdiction to consider the Objection pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Objection and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

---

[1]    Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Objection.

the Objection having been provided, and it appearing that no other or further notice need be

provided; upon consideration of the Objection and the *Declaration of Kathy Priore in Support of*

*the ResCap Borrower Claims Trust's Eighty-Seventh Omnibus Objection to Claims ((I) No*

*Liability Borrower Claims, (II) Reduce and Allow Borrower Claim, and (III) Redesignate,*

*Reduce, and Allow Borrower Claim)* annexed thereto as <u>Exhibit 2</u>, and the *Declaration of*

*Norman S. Rosenbaum in Support of the ResCap Borrower Claims Trust's Eighty-Seventh*

*Omnibus Objection to Claims ((I) No Liability Borrower Claims, (II) Reduce and Allow*

*Borrower Claim, and (III) Redesignate, Reduce, and Allow Borrower Claim)*, annexed thereto as

<u>Exhibit 3</u>; and the Court having found and determined that the relief sought in the Objection is in

the best interests of the Trust, the Trust's constituents, the Debtors, and other parties in interest

and that the legal and factual bases set forth in the Objection establish just cause for the relief

granted herein; and the Court having determined that the Objection complies with the Borrower

Claim Procedures set forth in the Procedures Order; and after due deliberation and sufficient

cause appearing therefor, it is

ORDERED that the relief requested in the Objection is granted to the extent

provided herein; and it is further

ORDERED that pursuant to section 502(b) of the Bankruptcy Code, the claims

listed on <u>Exhibit A</u> annexed hereto (collectively, the "<u>No Liability Borrower Claims</u>") are

disallowed and expunged with prejudice; and it is further

ORDERED that pursuant to section 502(b) of the Bankruptcy Code, the claim

listed on <u>Exhibit B</u> annexed hereto (the "<u>Reduce Borrower Claim</u>") is hereby reduced and

allowed as provided for on <u>Exhibit B</u>; and it is further

ORDERED that pursuant to section 502(b) of the Bankruptcy Code, the claim listed on Exhibit C (the "Redesignate, Reduce, and Allow Borrower Claim") is hereby redesignated, reduced and allowed as set forth on Exhibit C; and it is further

ORDERED that Kurtzman Carson Consultants LLC, the Debtors' claims and noticing agent, is directed to disallow and expunge the No Liability Borrower Claims identified on the schedule attached as Exhibit A hereto so that such claims are no longer maintained on the Claims Register; and it is further

ORDERED that Kurtzman Carson Consultants LLC, the Debtors' claims and noticing agent, is directed to modify the Reduce and Allow Borrower Claim and the Redesignate, Reduce, and Allow Borrower Claim as set forth on the schedules attached as Exhibit B and Exhibit C hereto so that such claims are reflected on the Claims Register in a manner consistent with this Order; and it is further

ORDERED that the Trust is authorized and empowered to take all actions as may be necessary and appropriate to implement the terms of this Order; and it is further

ORDERED that notice of the Objection, as provided therein, shall be deemed good and sufficient notice of such objection, and the requirements of Bankruptcy Rule 3007(a), the Case Management Procedures entered on May 23, 2012 [Docket No. 141], the Procedures Order, and the Local Bankruptcy Rules of this Court are satisfied by such notice; and it is further

ORDERED that this Order has no res judicata, estoppel, or other effect on the validity, allowance, or disallowance of any claim not listed on Exhibit A, Exhibit B, or Exhibit C annexed to this Order, and the Trust's and any party in interest's right to object on any basis are expressly reserved with respect to any such claim not listed on Exhibit A, Exhibit B, or Exhibit C annexed hereto; and it is further

ORDERED that this Order shall be a final order with respect to each of the No Liability Borrower Claims identified on Exhibit A, Reduce and Allow Borrower Claim identified on Exhibit B, and Redesignate, Reduce, and Allow Borrower Claim identified on Exhibit C annexed hereto, as if each such Claim had been individually objected to; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: June 24, 2015
        New York, New York

                                        _____/s/Martin Glenn_____
                                        MARTIN GLENN
                                        United States Bankruptcy Judge

## Exhibit A

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| 355 | Joanne Stanphill and John Stanphill c/o Kristin Crone, Esq.<br><br>1490 Stone Point Dr., Ste 100, Roseville, CA 95661<br><br>$490,600 General Unsecured<br><br>Residential Capital, LLC | Loan Modification Issues, Origination Issues, Standing, Judicial Estoppel | Claim relates to litigation filed by Claimants on February 2, 2012 in the Superior Court of CA, County of Los Angeles, Case No. 066431, which was removed to USDC, Central District of CA, Western Division - Los Angeles, Case No. 2:12-CV-03955.  The complaint is styled as a Mass Action filed against Debtors and non-Debtor Ally Financial Inc.   Complaint raises four causes of action:  1) Privity of Contract; 2) Rescission-Mistake-Void Agreement; 3) Negligence (origination), and; 4) Negligence (servicing).<br><br>Debtor GMAC Mortgage, LLC originated the loan on October 25, 2006.  GMACM transferred its interest when the loan was securitized on or about December 1, 2006 where Deutsche Bank Trust Company Americas was appointed as Trustee. Debtor GMAC Mortgage, LLC serviced the loan from origination until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.  At the time of transfer to Ocwen, the loan was due for October 1, 2011.<br><br>Debtor has no liability for Claimants' origination based claims because the claim is time-barred. The statute of limitations for a claim for rescission is four years.  See Cal. Civ. Proc. § 337(3).  Claimants obtained the loan in October 2006. Accordingly, the statute of limitations expired no later than October 2010, and Claimants filed suit in February 2012.  In addition, Claimants' claim for negligence in origination fails because it is also time barred. Negligence claims are subject to a two-year statute of limitations. See Cal. Code Civ. Proc., §§ 335.1, 339; see also | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Benun v. Superior Court, 123 Cal.App.4th 113, 125 (2004).<br><br>Debtors have no liability for Claimants' negligent servicing claims because in every instance, the Debtors acted in accordance with the Debtors' standard policies and procedures.  In support of Debtors' position that Debtors have no liability for allegations of loan modification issues, Debtors' loan servicing notes reflect the following chronology with respect to the account:<br><br>Claimants spoke with Debtors via phone on March 3, 2009.  Claimants requested to defer the March 2009 payment.  Debtors advised Claimants that it would not be able to defer the payment as deferral was not an option  provided by the investor of the loan but that Debtors can review Claimants' account for a repayment plan. Claimants stated that they will make the February and March 2009 payments by the end of March.<br><br>Claimants spoke with Debtors via phone on March 25, 2009. Claimants requested a payment to be deferred.  Debtors advised that it would not be able to defer as deferral is not an option provided by the investor of the Claimant's loan.  Claimants stated they will call in to make the payment. Debtors mailed Claimants a workout package on March 26, 2009 to allow Claimants an opportunity to apply for a loan modification.<br><br>Claimants spoke with Debtors via phone on April 2, 2009.  Claimants stated that they mailed the March payment on April 1, 2009 and that they will make the April | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | payment on April 20, 2009. Claimants stated that they are still waiting to receive the workout package. The Debtors received a payment on April 13, 2009.<br><br>Claimants spoke with Debtors via phone on May 22, 2009. Claimants called in requesting a workout package. Debtors explained to Claimant how to access a workout package via the Debtors' website. Debtors received a workout package from Claimants on June 15, 2009.<br><br>On July 13, 2009 Debtors set up a HAMP Trial Plan for Claimants. Payments in the amount of $2,289.57 were due on the first of August, September, and October 2009. Debtors mailed Claimants the HAMP Trial documents on July 17, 2009.<br><br>Claimants spoke with Debtors via phone on July 14, 2009. Debtors advised Claimants that they were approved for a HAMP Trial Plan. Claimants spoke with Debtors via phone on July 23, 2009 at which time Debtors advised Claimants that they needed to sign and send back the HAMP Trial agreement and the first payment of $2,289.57, which was due on August 1, 2009.<br><br>On July 28, 2009, Debtors received the signed HAMP Trial Plan from Claimants. The initial payment was received July 31, 2009. Claimants spoke with Debtors via phone on September 16, 2009, at which time Debtors advised Claimants that the September 1, 2009 Trial Plan payment was late. Claimants stated that the payment was mailed on Friday (September 11, 2009). Debtors advised Claimants that the payment needs to be received as soon as possible to ensure trial plan is | |

3

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | not cancelled.<br><br>The Debtors received a payment on September 21, 2009.  Claimants spoke with Debtors via phone on September 28, 2009, at which time Debtors advised Claimants that the next trial payment was due October 1, 2009.  Claimants again spoke with Debtors via phone on October 8, 2009, at which time Claimants stated that they will be mailing the last trial payment (the October 1, 2009 payment) on October 9, 2009.<br><br>Claimants spoke with Debtors via phone on October 20, 2009, at which time Debtors advised Claimants  that the HAMP Trial Plan had been completed and Debtors are currently reviewing Claimants' account for a permanent HAMP loan modification.<br><br>Claimants spoke with Debtors via phone on October 27, 2009. Debtors advised Claimants that their loan was still under review for a permanent HAMP loan modification.  On November 5, 2009, Debtors approved Claimants' loan for a permanent HAMP modification.  The HAMP terms would be effective as of December 1, 2009. The modified interest rate was 3.25% and the modification capitalized $9,338.67 of past due principal and interest.  Debtors mailed the HAMP permanent modification documents to Claimants on November 12, 2009, which stated the documents were due back by November 17, 2009.<br><br>Claimants spoke with Debtors via phone on November 16, 2009, at which time | |

ny-1186031

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Debtors advised Claimants that their loan had been approved for a permanent loan modification and that the terms would be effective as of December 1, 2009. Debtors advised that the permanent modification documents needed to be notarized, signed and returned.<br><br>Claimants spoke with Debtors via phone on November 23, 2009. Claimants stated that they will mail the modification documents after they are notarized by November 30, 2009 and will be make the initial payment by December 15, 2009.<br><br>Claimants spoke with Debtors via phone on December 4, 2009, at which time Claimants stated that they would mail the permanent modification documents that day.  Debtors received signed permanent HAMP modification documents from Claimants on December 8, 2009.<br><br>On December 10, 2009, Claimants spoke with Debtors via phone at which time Debtors advised Claimants that the signed HAMP permanent modification documents had been received.<br><br>Debtors were not able to execute the HAMP permanent modification on December 14, 2009 because the permanent modification documents were received after the effective date of December 1, 2009.  As a result, Debtors mailed updated HAMP permanent modification documents to Claimants on December 21, 2009.  On December 28, 2009, Claimants spoke with Debtors via phone, at which time Debtors advised Claimants that the new modification | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | documents were mailed because the original permanent modification documents were received after the December 1st effective date. Debtors advised Claimants that they needed to sign, notarize and mail the permanent modification documents back as soon as possible.<br><br>Claimant spoke with Debtors via phone on January 4, 2010, at which time Claimants stated that they had not received the documents. As a result, Debtors updated the HAMP modification documents on January 7, 2010, updating the effective date to February 1, 2010. The updated modification terms included an interest rate of 3.25% and capitalized amount of $14,741.13. The capitalized amount increased to include additional payments because Claimants did not get original documents in before December 1, 2009. Debtors remailed permanent modification documents to Claimant on January 12, 2010; tracking number 431861251077.<br><br>Claimants spoke with Debtors via phone on January 15, 2010 at which time Debtors advised Claimants of the terms of the HAMP modification and advised that Claimants needed to sign, notarize and return the documents. Claimants stated that Debtors should receive the permanent modification documents by January 20, 2010.<br><br>Debtors received permanent modification documents from Claimants on January 20, 2010; however, the documents did not include a signed copy of the balloon | |

6

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | disclosure.  As a result, Debtors remailed the HAMP permanent modification documents to Claimants on January 22, 2010.<br><br>Claimants spoke with Debtors via phone on January 28, 2010. At that time, Claimants stated that they were not ready to sign the HAMP permanent modification documents.  Debtors advised Claimants that if the documents were not received, then the HAMP modification would not be executed.<br><br>Claimants spoke with Debtors via phone on February 3, 2010. Debtors advised Claimants that it is still waiting for signed the HAMP permanent modification documents to be received.  Claimants stated that they don't feel should need to re-sign and resend the documents.  Debtors advised Claimants that they needed to sign and mail the permanent modification documents for the modification to be executed.<br><br>Claimants spoke with Debtors via phone on February 4, 2010, at which time Claimants stated that they will not be able to sign the modification documents until Saturday (February 6, 2010).  Claimants stated that they were told by the Debtors' representative that they did not need to sign the balloon page, however, the Debtors' servicing notes do not reflect this.  Debtors advised Claimants that they needed to sign the document because there is a balloon payment for the capitalized amount on the modification.<br><br>Debtors received signed permanent modification from Claimants on February 8, | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | 2010.  On March 1, 2010, Claimants spoke with Debtors via phone, at which time Claimants questioned a fee in the amount of $163.50.  Debtors advised Claimants that the fee was for a broker price opinion completed as well as property inspection fees.  The property inspection fees were for inspections in July, August, October, November, and December 2009 and January and February 2010.  The BPO was done in October 2009 because it was necessary when the Debtors were reviewing an account for a loan modification.<br><br>Debtors received notice that Claimants jointly filed Chapter 13 bankruptcy, case number 10-bk-54299, Bankruptcy Court, Northern District of California, on April 26, 2010.  On June 17, 2010, Debtors had to change the effective date of the original modification documents to December 10, 2009 due to an internal audit.<br><br>The Chapter 13 bankruptcy was converted to a Chapter 7 bankruptcy on July 16, 2010.  Debtors were granted relief from the automatic stay in Claimant's bankruptcy on October 4, 2010.  Claimants did not list any causes of action against the Debtors in their bankruptcy schedules.  A copy of the bankruptcy schedules is attached to the Objection as Exhibit 5-A.  Claimants were discharged on January 3, 2011, and Claimants did not reaffirm the debt owed on the loan.  Claimants' Chapter 7 bankruptcy was closed on February 15, 2011.<br><br>Claimants spoke with Debtors via phone on January 11, 2011.  Claimants questioned why the account is showing that it was delinquent when they have | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
|  |  |  | been making monthly payments through the bankruptcy.  Debtors advised that payments post in the order of most delinquent to current month owing. After the call, Debtors mailed breach letter to Claimant on January 11, 2011 and another on February 2, 2011. Claimants spoke with Debtors via phone on February 11, 2011 at which time Claimants again questioned why the account was delinquent. Debtors advised Claimants that the November 2010 through January 2011 payments were still due when the December 2010 modification was executed. Claimant questioned how the payments were still due when the past due amount was capitalized.  Debtors advised that it will review the Claimants' file and call back.<br><br>On February 15, 2011, the Debtors called the Claimants back and advised the Claimants that while the loan modification was completed in February 2010, the last trial payment was completed in October 2009, leaving the account owing for November 2009 through January 2010 even after the modification was completed.  On February 16, 2011, the Debtors spoke with the Claimants again to explain how the capitalized amount was calculated, explaining that it was calculated due to $14,000 in delinquent interest due on the loan.<br><br>Claimants spoke with Debtors via phone on February 22, 2011 at which time Debtors advised that the January and February 2011 payments were still due on the account because the total amount capped as a result of the modification executed was only $9,338.67, which was not all of the payments owing at the |  |

9

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | time. This was because Debtors had to honor the December 10, 2009 signed HAMP permanent modification document, which was updated on June 18, 2010.<br><br>Debtors mailed a breach letter to Claimants on March 12, 2011. On March 12, 2011, Claimants spoke with Debtors via phone. Claimants disputed the loan modification completed on the account and that they had mailed documents to Debtors supporting their dispute. On March 14, 2011, Debtors received documents from Claimants disputing the account being delinquent. The documents stated that Claimants feel their account should be current. Debtors advised Claimants that it will mail a payment history to Claimants so Claimants can compare how the payments posted. Debtors mailed the payment history to the Claimants on March 18, 2011 and also mailed a copy of the permanent modification to the Claimants on March 21, 2011.<br><br>Claimants again filed for Chapter 13 bankruptcy protection on August 17, 2012, Northern District of California Case No 12-bk-56131 and the plan was confirmed February 16, 2014. The lawsuit against Debtors was listed in Schedule B of Claimants' schedules as an unliquidated claim. Amended Schedule B was filed on July 30, 2013 and indicated, "Debtors (Claimants) no longer pursuing this lawsuit."<br><br>The Second and Third Amended Schedule B also indicated Debtors not pursuing lawsuit. A copy of the bankruptcy schedules are attached ot the Objection as <u>Exhibit 5-B</u>. Claimants also filed a Declaration Regarding Cause of Action Against | |

10

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | GMACM, on July 30, 2013, in which Claimants further stated they were no longer pursuing the cause of action against GMACM. A copy of the declaration is attached to the Objection as <u>Exhibit 6</u>. Claimants' Fourth Amended Plan was confirmed on February 26, 2014 and remains ongoing. As part of the fourth amended plan, the Claimants affirmed the debt owed to GMACM. If Claimants assert that they are still pursuing the claims from the lawsuit, because the lawsuit was filed prior to this bankruptcy being filed, the Claimants do not have standing to bring the claim, but rather the right belongs to their chapter 13 trustee.<br><br>Based on the facts and reasons stated above, the proof of claim does not give rise to liability for claims of privity of contract, rescission based on mistake, or negligence. | |
| 1551 | Meta Turner c/o Kristin Crone, Esq.<br><br>9075 Foothills Blvd., Suite 6 Roseville, CA 95747<br><br>$150,000 General Unsecured<br><br>Residential Capital, | Loan Modification Issues, Origination Issues | Claim relates to litigation filed by Claimants on February 2, 2012 in the Superior Court of CA, County of Los Angeles, Case No. 066431, removed to USDC, Central District of CA, Western Division - Los Angeles, Case No. 2:12-CV-03955. Complaint is styled as a Mass Action filed against Debtors and non-Debtor Ally Financial Inc. Complaint raises four causes of action: 1) Privity of Contract; 2) Rescission-Mistake-Void Agreement; 3) Negligence (origination), and; 4) Negligence (servicing).<br><br>WMC Mortgage Corp originated the loan on August 2, 2006. Debtor Residential Funding Company, LLC purchased the loan from WMC Mortgage and transferred | |

| Claim No(s). | Name and Address  Claim Amount  Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
|  | LLC |  | its interest when the loan was securitized on or about June 1, 2007 where Deutsche Bank Trust Company Americas was appointed as Trustee.  Debtor GMAC Mortgage, LLC serviced the loan from January 21, 2007 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.  At the time of transfer the loan was due for June 1, 2011.

Debtors have no liability for Claimant's origination-based claims because no Debtor originated the loan.  The loan was originated by WMC Mortgage Corp.  In addition, any claim for rescission is time-barred. The statute of limitations for a claim for rescission is four years. See Cal. Civ. Proc. § 337(3). Claimant obtained the loan in August 2006.  Accordingly, the statute of limitations expired in August 2010, and Claimant filed suit in February 2012, more than four years after she obtained her loan.  In addition, a claim for negligence in origination fails because no Debtor was involved in originating the loan, and because it is also time barred. Negligence claims are subject to a two-year statute of limitations. See Cal. Code Civ. Proc., §§ 335.1, 339; see also Benun v. Superior Court, 123 Cal.App.4th 113, 125 (2004).

Debtors have no liability for Claimant's loan modification claims because in every instance the Debtors acted in accordance with the Debtors' standard policies and procedures.  In support of Debtors' position that there is no liability for allegations of loan modification issues, Debtors' loan servicing records include the |  |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | following chronology with respect to the account:<br><br>Claimant spoke with Debtors via phone on September 25, 2009, at which time Claimant asked about the HAMP program.  Debtors advised that if Claimant applied for a HAMP modification, then an escrow would be added to account.  Claimant stated she would like to have escrow added.  Debtors advised Claimant to access a workout package via Debtors' website.<br><br>Debtors received a workout package from Claimant on October 8, 2009.  Claimant spoke with Debtors via phone on October 20, 2009, at which time Debtors advised Claimant that the account has been escrowed and taxes and insurance will be paid by Debtors.<br><br>Debtors denied the loan for a HAMP modification on October 20, 2009 because Claimant's debt-to-income ratio ("DTI") was below 31%.  (Based on HAMP guidelines, DTI has to be above 31% to be eligible for HAMP.)  Debtors continued to review the account for traditional modification options.<br><br>Debtors denied Claimant's account for traditional modification on October 21, 2009 because the loan was current and the DTI was below 30% based on income of $5,993 per month provided by Claimant.  Debtors mailed a denial letter to Claimant on October 21, 2009.<br><br>On January 5, 2010, Debtors mailed a breach letter to Claimant. Debtors mailed | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | an Options to Avoid Foreclosure letter to Claimant on January 12, 2010 and an escrow waiver letter on January 15, 2010 because the loan did not qualify for a loan modification.<br><br>Debtors received a workout package from Claimant on January 22, 2010. Claimant spoke with Debtors via phone on January 25, 2010, at which time Debtors advised that the workout package was received and Debtors are reviewing the account modification options.<br><br>Claimant's authorized third party, Veronica Alvarado, spoke with Debtors via phone on January 28, 2010 and asked for update on the modification review. Debtors advised that the review was still in process.<br><br>On January 29, 2010, Debtors denied Claimant's account for a HAMP modification because Claimant's DTI was below 31%.  Debtors continued to review the account for traditional modification options. Debtors approved a traditional trial plan on February 9, 2010.  The trial plan required payments of $1,216.85 due on the first of March, April, and May 2010.  Debtors mailed the traditional trial plan agreement to Claimant on February 11, 2010.<br><br>Claimant's authorized third party, Veronica Alvarado, spoke with Debtors via phone on February 16, 2010, at which time Debtors advised Veronica that the traditional trial plan was approved. Debtors received signed traditional trial plan | |

ny-1186031

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | documents from Claimant on February 24, 2010.<br><br>Claimant's authorized third party, Veronica Alvarado, spoke with Debtors via phone on March 1, 2010. Veronica asked if documents and payment were received and Debtors confirmed receipt.  Debtors approved the loan for a traditional permanent modification on March 29, 2010 that would be effective with the June 1, 2010 payment.  A contribution amount of $1,342 was due on May 1, 2010.  The modification capitalized $4,404.55 in interest. The terms of the modification required the loan to be interest-only payments through May 1, 2015 at an interest rate of 6.5% (old interest rate was 8.75%).  The payment would change to a P&I payment on June 1, 2015 with an interest rate of 6.5%.<br><br>Claimant spoke with Debtors via phone on March 30, 2010 at which time Debtors advised that a traditional permanent modification had been approved.  Debtors advised Claimant of the contribution amount due. Claimant spoke with Debtors via phone on April 12, 2010, at which time Claimant stated she is waiting to receive the permanent modification documents.  Debtors advised Claimant that it will work to quickly get the documents sent out.  Debtors advised Claimant of the contribution amount due and that contribution needed to be sent via certified funds.<br><br>Debtors mailed traditional permanent modification documents to Claimant on April 20, 2010 and received signed traditional modification documents and a | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | contribution amount from Claimant on April 28, 2010.<br><br>Claimant spoke with Debtors via phone on February 7, 2011 and told Debtors she wanted to make additional payments toward escrow account but wasn't able to make payment online.  Debtors advised that the February 2011 payment had to post to the account before additional money can be applied to escrow.   The Debtors received the payment on February 15, 2011 and applied the payment to escrow.<br><br>Debtors attempted to contact Claimant once loan fell behind for June 1, 2011 however Claimants did not answer or return calls.  Debtors had not spoken to Claimant since February 8, 2011 and no payment had been received on account since May 16, 2011 which paid the May 1, 2011 payment.<br><br>Based on the facts and reasons stated above, the proof of claim does not give rise to liability for claims of privity of contract, rescission based on mistake, or negligence. | |
| 354 | Robert Kanagaki and Patricia Young c/o Kristin Crone, Esq.<br><br>1490 Stone Point Dr., Ste 100 | Loan Modification Issues, Origination Issues | Claim relates to litigation filed by Claimants on February 2, 2012 in the Superior Court of CA, County of Los Angeles, Case No. 066431, removed to USDC, Central District of CA, Western Division - Los Angeles, Case No. 2:12-CV-03955.  Complaint is styled as a Mass Action filed against Debtors and non-Debtor Ally Financial Inc. Complaint raises four causes of action:  1) Privity of Contract; 2) Rescission-Mistake-Void Agreement; 3) Negligence (origination), and; 4) | |

ny-1186031

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | Roseville, CA 95661<br><br>$636,200<br>General Unsecured<br><br>Residential Capital, LLC | | Negligence (servicing).<br><br>Debtor GMAC Mortgage, LLC originated the Home Equity Line of Credit on June 14, 2006.  GMAC Mortgage transferred its interest to non-Debtor Ally Bank on or about June 30, 2006.  GMAC Mortgage, LLC serviced the loan from origination until servicing transferred to Specialized Loan Servicing on October 1, 2009.  At the time of transfer the loan was current.<br><br>Debtor has no liability for Claimants' origination-based claims because the claim is time-barred. The statute of limitations for a claim for rescission is four years. See Cal. Civ. Proc. § 337(3). Claimant obtained the loan in June 2006.  Accordingly, the statute of limitations expired no later than 2010, and Claimant filed suit in February 2012, more than four years after they obtained their loans.  In addition, Claimant's claim for negligence in origination and negligence in servicing fails because it is also time-barred. Negligence claims are subject to a two-year statute of limitations. See Cal. Code Civ. Proc., §§ 335.1, 339; see  also  Benun v. Superior Court, 123 Cal.App.4th 113, 125 (2004).<br><br>Debtors have no liability for Claimants' loan modification claims because Debtor's records don't show any loss mitigation activity while loan was serviced by Debtors.  Debtors' records show:<br><br>Claimant spoke with Debtors via phone on January 14, 2008, at which time Claimants questioned why his payment had increased.  Debtors advised Claimants | |

17

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | that their loan was a daily simple interest rate loan, which meant that the interest on their loan was calculated on a daily basis, such that their monthly payment could adjust depending on how many days had passed since their last payment.<br><br>Claimants' HELOC was frozen by Debtors on April 14, 2008 due to a decline in equity of the underlying real property. Claimants spoke with Debtors via phone at which time Debtors advised him of the HELOC freeze as well as the reason for the freeze.<br><br>On December 22, 2008, Claimants requested that Debtors mail him a copy of the loan payment history and mortgage deed.  Debtors mailed the requested information to Claimant on December 24, 2008.<br><br>Claimants submitted a subordination request to Debtors on March 25, 2009. Claimants spoke with Debtors on April 1, 2009, at which time Claimants asked when the next interest rate change would occur (the loan was an adjustable rate mortgage, so the interest rate would adjust periodically), and Debtors advised Claimants of the information requested.  On April 1, 2009, Debtors faxed a letter to Claimants' spouse, AnneMarie, requesting additional subordination information that was needed.<br><br>Claimant spoke with Debtors via phone on April 16, 2009, at which time Claimants inquired as to the status of his subordination request. Debtors advised Claimant that a letter was faxed to AnneMarie, Claimants' spouse, requesting the | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | additional information needed; however, the information needed was not received.<br><br>Debtors mailed a "Goodbye" letter to Claimants on September 16, 2009 informing him of the service release occurring on October 1, 2009.<br><br>Based on the facts and reasons stated above, the proof of claim does not give rise to liability for claims of privity of contract, rescission based on mistake, or negligence. | |
| 4740 | Law Office of Pete W. Whaley<br><br>GMAC Mortgage v. Dorothy Clancy, et al.<br><br>1300 N. Main Street Williamstown, KY 41097<br><br>$400,000<br>General Unsecured<br><br>GMAC Mortgage, LLC | General Servicing Issues | Taylor, Bean & Whitaker Mortgage Corp. originated the loan on October 4, 2001. GMAC Mortgage purchased the loan from Taylor Bean and transferred its interest to Fannie Mae.  GMAC Mortgage LLC serviced the loan from March 1, 2002 until servicing transferred to GreenTree Servicing on February 1, 2013.<br><br>Claimants assert "Grant Circuit Court, Case No. 11-CI-396, GMAC v. Dorothy Clancy, et al." as basis for claim in box 2 of the proof of claim form.  Claimants attach their Answer to Complaint and Counterclaim and assert claims of breach of contract and intentional infliction of emotional distress on the basis that Debtors failed to provide Claimants with an accurate payoff statement, thereby causing Claimants to lose the short sale of their home to a prospective buyer who agreed to purchase the home.  Specifically, Claimants assert Debtors i) provided deficient payoff letters because they failed to include a "firm payoff and no per diem rate" from which Claimant could calculate a payoff, and the amounts were "greatly | |

ny-1186031

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
|  |  |  | inflated" by $3,110.15 from a payoff quote Claimant received just "thirteen days before."  Claimants seeks unspecified damages arising from "irreparable harm" to their credit rating, attorney's fees and other costs defending the foreclosure action, and punitive damages in the amount of $400,000.<br><br>Debtors have no liability for the assertion that Debtors interfered with Claimant's ability to sell their property on the basis that Debtors' payoff quotes were untimely and deficient.  All language and payoff estimates within the communications sent to Claimants were stated accurately.  Furthermore, Debtors' alleged actions did not prevent Claimants from selling their property. Claimants' failure to accept the offer or to counteroffer was Claimants' own decision and does not create liability for Debtors.  Additionally, as laid out below, Debtors provided Claimants with a valid payoff quote on July 25, 2011 from which Claimants could have reasonably assessed the feasibility of the $100,000 offer that expired August 11, 2011, or the possibility of a counter-offer.  In short, Debtors' actions were proper, and Claimants have not demonstrated valid reasons why Claimants are entitled to any claim against the Debtors' estate.<br><br>Debtors' records show that on July 6, 2011, Claimants' loan was referred to foreclosure because Claimants were owing for April through July payments. Claimants allegedly received a contract to purchase their property ("Purchase Contract") from a third party on July 9, 2011.  The Purchase Contract attached to the proof of claim is signed by the prospective buyers, but not Claimants, and |  |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | states "the date of Closing shall be on August 18, 2011 or before ("Anticipated Closing Date")."  Debtors' records show that Claimants requested a payoff amount from Debtors on July 11, 2011. Debtors explained that they must contact the foreclosure attorney to receive a payoff quote and Debtors provided Claimants with the attorney's contact information.<br><br>On July 12, 2011, Debtors' foreclosure attorney sent a letter ("July Letter") to Claimants stating "Pursuant to the Fair Debt Collection Practices Act we are therefore required to provide you with the following information."  The July Letter explained that Claimants' debt is owed to GMAC Mortgage, LLC and was $100,005.93 as of July 7, 2011.  The July Letter also provides instructions and parameters for obtaining information about the identity of the "Original Creditor", how to dispute the validity of the debt or obtain a verification of debt. The July Letter also explains how to contact the foreclosure attorney.  The July Letter is not a payoff quote, nor was it Debtors' intent that the letter serve as a payoff quote.  In fact, nowhere in the July Letter do Debtors provide payment instructions or an itemization of balances due, which are standard pieces of information in Debtors' payoff quotes and payoff quotes provided by other servicers in the mortgage industry.<br><br>On July 13, 2011, Claimants spoke with Debtors via phone and requested the unpaid principal balance amount of their loan.  Debtor advised the unpaid principal balance was $97,574.24, and explained that the unpaid principal balance | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | was not the amount necessary to pay off the loan in full. Twelve days later on July 25, 2011, Debtors' foreclosure attorney sent Claimants a formal payoff quote ("July Payoff Quote") with a payoff amount of $103,116.80 that was good through August 11, 2011. The Payoff Quote included a full itemization of how the payoff amount was calculated. Debtors' records show that Debtors' foreclosure attorney did not receive any subsequent payoff requests from Claimants from July 25, 2011 through August 18, 2011, the Anticipated Closing Date under the Purchase Contract.<br><br>Debtor has no liability for an alleged "inflated" payoff amount. The amounts cited in the July Letter and July Payoff Quote were accurate as of the dates of those communications. The $3,110.15 difference in the two communications -- $103,116.80 in the July Payoff Quote and $100,005.93 in the July Letter -- tie to account fees and charges, including foreclosure fees, which accrued or were estimated to accrue between July 8, 2011 and August 11, 2011. Specifically, the July Payoff Quote includes the following items, which were not included in the amount sited in the July Letter: accrued interest for 35 days equaling $666.75; $1,968 in foreclosure fees/costs, late charges in amount of $151; recording charge of $13; property inspections totaling $54.25; and property preservation fees totaling $250.<br><br>Claimant contends that Debtor's payoff amounts provided to Claimant were deficient because they failed to include per diem amounts. Debtor has no liability | |

ny-1186031

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | for failing to include per diem amounts in the payoff quotes because Kentucky statute and Federal Laws do not require Debtor to state the per diem amounts in a payoff quote.<br><br>As a result of the above, Claimants' allegations do not give rise to valid claims of breach of contract or intentional infliction of emotional distress. | |
| 3828 | Sylvia D Strupp vs Pioneer Title Company of ADA County an Idaho corporation dba Pioneer Lender Trustee Services et al<br><br>AHERIN RICE and ANEGON<br>1212 IDAHO STPO DRAWER 698 LEWISTON, ID 83501-0698<br><br>$540,000 Secured Claim $39,893.95 General Unsecured Claim | Res Judicata | CLS Mortgage Corporation originated a loan to Claimant on March 7, 2007. Debtor Homecomings Financial purchased the loan from CLS Mortgage and transferred its interest to Residential Funding Company, LLC.  Residential Funding transferred its interest on or about May 1, 2007 when the loan was securitized and Deutsche Bank Trust Company Americas was appointed as trustee. Homecomings serviced the loan from March 7, 2007 until servicing transferred to GMAC Mortgage on July 1, 2009.  GMAC Mortgage serviced the loan until it was sold to a third party at foreclosure on January 4, 2011.<br><br>Claimant attaches to POC litigation styled as Styliva Strupp vs Pioneer Title Company of ADA County, MERS, GMAC Mortage, LLC (incorrectly identified as GMAC Mortgage Group, LLC), and Idaho Fish and Wildlife Foundation, Inc. filed in the District Court of the Second Judicial District of the State of Idaho for the County of Idaho, Case No. CV40758 filed on February 7, 2011 alleging breach of contract/misrepresentation.<br><br>Summary Judgment was granted in favor of all defendants, including the Debtors, | |

ny-1186031

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | GMAC Mortgage, LLC | | on November 29, 2011 and the complaint was dismissed.  A copy of the order granting summary judgment is attached to the Objection as Exhibit 8-A.  Claimant filed an appeal of the summary judgment dismissal to the Idaho Supreme Court on December 20, 2011, as Docket No.  39506-2012.  In Idaho, a judgment on appeal is considered a final judgment for purposes of res judicata.  See In re Reader, 183 B.R. 630, 633 (Bankr. D. Id. 1995) (citing Gilbert v. State, 809 P. 2d 1164 (Id. Ct. App. 1991)).<br><br>In the alternative, the Borrower Trust has been advised that a stipulation for dismissal with prejudice was filed by Claimant on November 5, 2014 as part of a settlement with other parties.  The Supreme Court ordered the dismissal of the appeal on November 13, 2014.  A copy of the order dismissing the appeal is attached to the Objection as Exhibit 8-B.  While Debtors were not part of the settlement, the settlement terms required that Claimant's proof of claim against Debtors be withdrawn.  The Borrower Trust provided Claimant with the form to withdraw the claim, but it was never returned.  Instead, the Borrower Trust received a motion from Claimant seeking to amend the complaint.  The Borrower Trust responded that because the appeal was dismissed, there is no complaint to amend.  The Claimant has provided no response and has not filed anything on the docket in this case or in the state court. | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| 1684 | Jeffrey Alperin<br><br>Howard Rabin, P.C.<br>112 New South Road<br>Hicksville, NY 11801<br><br>Unliquidated<br><br>GMAC Mortgage, LLC | General No Liability | Claimant attaches to his proof of claim his answer to a foreclosure complaint styled as US Bank NA, as trustee vs Jeffrey Alperin, Joann Alperin, which was filed in the Supreme Court of the State of New York, County of Suffolk, Case No. 20576/2011 on September 6, 2011.  The Answer contains general defenses to the foreclosure action, did not assert any counterclaims and only sought dismissal of the foreclosure, not any monetary damages.<br><br>New Century Mortgage Corporation originated the loan on December 14, 2005. Debtor Residential Funding Company LLC purchased the loan from New Century and transferred its interest when the loan was securitized on or about February 1, 2006 when US Bank, NA was appointed as trustee.  Homecomings Financial serviced the loan from February 22, 2006 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009.  GMAC Mortgage serviced the loan until servicing transferred to Ocwen Loan Servicing on February 16, 2013.  At the time of transfer the loan was due for January 1, 2009.<br><br>No Debtor was a party to the foreclosure action when the Answer was filed, there were no counterclaims asserted, there was no specific facts alleging any wrongdoing of any Debtor and Claimant was not seeking any damages. | |
| 2006 | Maria Aljaksina<br><br>2971 Wagonwheel<br>Troy, MI 48085 | Paid and Satisfied | On April 11, 2012, the Office of the Comptroller of the Currency and the Federal Reserve issued an order ("the Consent Order") against Debtors and other non-debtor servicers whereby borrowers with foreclosure files within a 2-year | |

25

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | $213.46<br>General Unsecured<br><br>Residential Capital, LLC | | period from 2009 and 2010 were entitled to receive certain cash payments.  On December 11, 2013, the Court entered the Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors approving the terms of the Chapter 11 plan, as amended (the "Plan") filed in the Chapter 11 Cases [Docket No. 6065].  On December 17, 2013, the effective date of the Plan occurred.  The Plan defines "Consent Order Borrower Claims" as claims held by Borrowers arising from foreclosure actions that were pending at any time during the 2-year window defined in the Consent Order.  Under Article IV.F.6 of the Plan (Distributions from the Borrower Claims Trust), "If any Borrower Claim constitutes, in whole or in part, a Consent Order Borrower Claim, the Allowed amount of such Borrower Claim shall be reduced to the extent paid pursuant to the Consent Order or any settlement of the Debtors' obligations thereunder, without further order of the Bankruptcy Court."<br><br>In connection with the Consent Order, Claimant received a payment of $1,000.  Accordingly, Debtor has no liability because Claimant's asserted damages of $213.46 were satisfied in full by virtue of Claimant's Consent Order payment. | |
| 4821 | Steven T. Biermann and Tracy Watson Biermann | Res Judicata, Wrongful Foreclosure | Loan was originated by Howard Hannah Mortgage Services on February 13, 2008.  Non-Debtor GMAC Bank purchased the loan from Howard.  Debtor GMAC Mortgage, LLC purchased the loan from GMAC Bank and transferred its interest to Fannie Mae on or about March 12, 2008.  Debtor GMAC Mortgage, LLC serviced | |

26

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | Justin M. Smith, Esq. J.M. Smith Co., LPA 24400 Highpoint Road, Suite 7 Beachwood, OH 44122<br><br>$250,000 General Unsecured<br><br>GMAC Mortgage, LLC | | the loan from February 13, 2008 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimants attach to the proof of claim an answer and counterclaim filed in the foreclosure action styled GMAC Mortgage vs Steven Biermann, Court of Common Pleas, Geaugo County, OH, Case No. 11 F 0776.  The counterclaim, filed August 31, 2011, contained causes of action for (1) fraud, (2) slander of title, (3) breach of contract, and (4) violation of the Ohio consumer sales practices act ("CSPA").  Debtor filed a Motion to Dismiss on September 28, 2011.  On April 30, 2012, counts 1 & 3 (fraud and breach of contract) were dismissed with prejudice.  A copy of the order dismissing counts 1 and 3 is attached to the Objection as Exhibit 9.  The remaining claims for slander of title and violation of the CSPA were stayed by Debtors' bankruptcy.<br><br>The counterclaims were all premised on the allegation that Mr. Jeffrey Stephan "robo-signed" the Assignment of Mortgage, as such, Claimants contend, without providing any evidence to substantiate the inaccuracy of any statement in the Assignment, the allegedly "false" Assignment of Mortgage constituted fraud and a breach of the Note and Mortgage, was a deceptive, unfair and/or unconscionable act in violation of the CSPA and, through its recording, constituted a slanderous statement on their property's chain of title.  Claimants' blanket allegation does not amount to a prima facie valid claim for slander of title or violations of the CSPA.  The assignment of mortgage, from MERS to GMAC Mortgage, executed on | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | June 2, 2009 was done with proper authority.  <u>See</u> MERS corporate resolution, attached to the Objection as <u>Exhibit 10</u>.<br><br>In addition, the Claimants' slander of title claim is also otherwise time-barred by the applicable one-year statute of limitations.  <u>See</u> Ohio Revised Code § 2305.11(A) ("An action for . . . slander . . . shall be commenced within one year after the cause of action accrued . . . .").  The Ohio Supreme Court has specifically held that the one-year statute of limitations for "slander" applies to "slander of title" claims.  <u>See</u> <u>Buehrer v. Provident Mutual Life Ins. Co.</u>, 123 Ohio St. 264, 268 (1931) and <u>Billingsley v. Townsend</u>, 132 Ohio St. 603, 604-605 (1937).<br><br>Also, the CSPA is inapplicable to the assignment of the Claimants' mortgage.  The CSPA only prohibits certain acts in connection with a "consumer transaction."  <u>See</u> Ohio Rev. Code §§ 1345.02(A), 1345.03(A).  The CSPA's definition of "consumer transaction" specifically exempts real estate transactions from its coverage.  <u>See</u> Ohio Rev. Code § 1345.01(A).  The Assignment of Mortgage is not itself a "consumer transaction."  The CSPA defines a "consumer transaction" as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things."  <u>See</u> Ohio Revised Code §1345.01(A).  The Biermanns do not allege (nor could they) that the Assignment of Mortgage at issue is a transaction that meets this definition.  Rather, the allegedly deficient execution of | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | the Assignment of Mortgage is not a consumer transaction, because it is not "a sale, lease, assignment, award by chance, or other transfer" of anything "to an individual for purposes that are primarily personal, family, or household," as is required for the CSPA to apply.  Rather, the Assignment of Mortgage was from Howard Hanna, a commercial entity, to GMAC Mortgage, another commercial entity.  The original Mortgage and the assignment of the Biermann Mortgage are part and parcel of a real estate transaction:  Mr. Biermann voluntarily granted a mortgage interest in the real property as security for repayment of the loan.  And, in doing so, he expressly agreed that the Note and Mortgage could be assigned (see ¶ 20 of the Mortgage).  Therefore, the Assignment of Mortgage cannot form the basis for a CSPA claim.<br><br>In addition,  only "suppliers" can be liable under the CSPA and, in this regard, the CSPA specifically exempts assignees like GMAC Mortgage from the definition of "supplier" in the context of the Biermanns' specific claims.  Section 1345.01(C) of the CSPA provides in relevant part that "[i]f the consumer transaction is in connection with a residential mortgage, 'supplier' does not include an assignee or purchaser of the loan for value, except as otherwise provided in section 1345.091 of the Revised Code." Section 1345.091 provides:<br><br>No claim or defense under this chapter may be asserted by the attorney general or any consumer against an assignee or purchaser of a mortgage loan for value | |

29

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | unless any one of the following applies:<br><br>(A) The violation was committed by the assignee or purchaser.<br>(B) The assignee or purchaser is affiliated by common control with the seller of the loan at the time of such assignment or purchase.<br><br>Based on the facts and reasons stated above, the proof of claim does not give rise to liability for claims of slander of title or violation of the OH consumer sales practices act. | |
| 761 | Law Offices of Sheldon J. Vann & Associates<br><br>GMAC Mortgage LLC v Gary Burden and Ayanna Burden<br>841 Prudential Dr<br>12th Fl<br>Jacksonville, FL 32207<br><br>$150,000.00<br>General Unsecured<br><br>GMAC Mortgage, LLC | Duplicate / Redundant Claim | Claim No. 761 is identical to surviving Claim No. 756 except that Claim No. 761 does not list a Debtor or Case Number on the proof of claim form. | |

30

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| 5642 | Julie A. Humphries<br>11221 McCree Rd<br>Dallas, TX 75238<br><br>$134,800.00<br>Secured<br><br>GMAC Mortgage, LLC | General No Liability | Loan was originated by WR Starkey Mortgage, LLP on or about September 26, 2005.  Non-Debtor GMAC Bank purchased the loan from WR Starkey.  Debtor, GMAC Mortgage purchased the loan from GMAC Bank and transferred its interest to Fannie Mae on or about November 10, 2005.  GMAC Mortgage serviced the loan from October 12, 2005 until servicing transferred to GreenTree Loan Servicing on February 1, 2013.  As of the date of service transfer to GreenTree, the loan was due for March 1, 2010.<br><br>Claimant attaches to her proof of claim litigation filed against Debtor in the District Court of Dallas County, TX, 298th Judicial District, Case No. 11-00856 on or about January 26, 2011.  The lawsuit was brought to contest Debtor's right to foreclose on the property, asserting that Claimant did not sign the Note and therefore the lien on which the Note is based is invalid.  The lawsuit seeks to quiet title and an order terminating all rights of Debtor to collect on the Note.<br><br>Debtor has no liability for this claim because no Debtor has any continued interest in the property or the Note.  Any defenses or claims related to the property or enforcement/collection on the Note belong with the investor, Fannie Mae and current servicer GreenTree.  There was no claim for monetary damages brought in the complaint attached to the proof of claim. | |
| 297 | NDEX West LLC TS<br>XXXXXXXXXX1737<br>Fremont Investment & | General No Liability | Claimant's loan was originated by Non-Debtor Residential Mortgage Capital on January 5, 2005. Non-Debtor Impac Funding Corporation purchased the loan and | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | Loan APN 134-421-026-3 Patrick De Jesus Title Order No 100725771<br><br>LSI Title Company/Agency Sales & Posting 3210 El Camino Real, Suite 200 Irvine, CA 92602<br><br>$.04 Secured Claim<br><br>GMACR Mortgage Products, LLC | | transferred its interest when the loan was securitized on or about June 5, 2005 where Wells Fargo, NA was appointed trustee. Debtor GMAC Mortgage, LLC serviced the loan from July 22, 2015 until February 16, 2013 when the servicing transferred to Ocwen Loan Servicing, LLC. At the time of servicing transfer to Ocwen, Claimant was due for January 1, 2012 payment.<br><br>In the proof of claim, Claimant asserts a secured claim in the amount of $.04 and states "SEC Servicing Fee" as basis for claim. Claimant attaches a 1 page memorandum stating the claims are filed by a "Fedelina Roybal-de-Aguero 2008 Trust" ("Claimant").<br><br>Claimant does not provide evidence to substantiate the purported legal basis for asserting such a fee against the Debtors. Additionally, Debtor examined its servicing records and found no evidence of monies owing to Claimant, and found no evidence connecting Claimant to a "SEC servicing fee".<br><br>Additionally, it should be noted that on June 3, 2013 the United States Bankruptcy Court Southern District of New York ruled that Claimant was permanently enjoined from filing "any new bankruptcy case or adversary proceeding in this and any other United States Bankruptcy Court, and permanenty enjoined from filing any adversary proceeding or document (including proofs of claim) in any other bankruptcy case or aderversary proceeding without first obtaining leave to file from the United States Bankruptcy Judge presiding over such bankruptcy case | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | or adversary proceeding, as applicable" (per case No. 12-11580 (SHL); Adv. Pro. No. 12-01901 (SHL); Doc 13, pag 12, section E). | |
| 299 | NDEX West LLC TS XXXXXXXXXX1737 Fremont Investment & Loan APN 134-421-026-3 Patrick De Jesus Title Order No 100725771<br><br>LSI Title Company/Agency Sales & Posting 3210 El Camino Real, Suite 200 Irvine, CA 92602<br><br>$.04 Secured Claim<br><br>HFN REO Sub II, LLC | General No Liability | Claimant's loan was originated by Non-Debtor Residential Mortgage Capital on January 5, 2005. Non-Debtor Impac Funding Corporation purchased the loan and transferred its interest when the loan was securitized on or about June 5, 2005 where Wells Fargo, NA was appointed trustee. Debtor GMAC Mortgage, LLC serviced the loan from July 22, 2015 until February 16, 2013 when the servicing transferred to Ocwen Loan Servicing, LLC. At the time of servicing transfer to Ocwen, Claimant was due for January 1, 2012 payment.<br><br>In the proof of claim, Claimant asserts a secured claim in the amount of $.04 and states "SEC Servicing Fee" as basis for claim. Claimant attaches a 1 page memorandum stating the claims are filed by a "Fedelina Roybal-de-Aguero 2008 Trust" ("Claimant").<br><br>Claimant does not provide evidence to substantiate the purported legal basis for asserting such a fee against the Debtors. Additionally, Debtor examined its servicing records and found no evidence of monies owing to Claimant, and found no evidence connecting Claimant to a "SEC servicing fee".<br><br>Additionally, it should be noted that on June 3, 2013 the United States Bankruptcy Court Southern District of New York ruled that Claimant was permanently enjoined from filing "any new bankruptcy case or adversary proceeding in this | |

| Claim No(s). | Name and Address / Claim Amount / Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | and any other United States Bankruptcy Court, and permanenty enjoined from filing any adversary proceeding or document (including proofs of claim) in any other bankruptcy case or aderversary proceeding without first obtaining leave to file from the United States Bankruptcy Judge presiding over such bankruptcy case or adversary proceeding, as applicable" (per case No. 12-11580 (SHL); Adv. Pro. No. 12-01901 (SHL); Doc 13, pag 12, section E). | |
| 306 | NDEX West LLC TS XXXXXXXXX1737 Fremont Investment & Loan APN 134-421-026-3 Patrick De Jesus Title Order No 100725771

LSI Title Company/Agency Sales & Posting 3210 El Camino Real, Suite 200 Irvine, CA 92602

$.04 Secured Claim | General No Liability | Claimant's loan was originated by Non-Debtor Residential Mortgage Capital on January 5, 2005. Non-Debtor Impac Funding Corporation purchased the loan and transferred its interest when the loan was securitized on or about June 5, 2005 where Wells Fargo, NA was appointed trustee. Debtor GMAC Mortgage, LLC serviced the loan from July 22, 2015 until February 16, 2013 when the servicing transferred to Ocwen Loan Servicing, LLC. At the time of servicing transfer to Ocwen, Claimant was due for January 1, 2012 payment.

In the proof of claim, Claimant asserts a secured claim in the amount of $.04 and states "SEC Servicing Fee" as basis for claim. Claimant attaches a 1 page memorandum stating the claims are filed by a "Fedelina Roybal-de-Aguero 2008 Trust" ("Claimant").

Claimant does not provide evidence to substantiate the purported legal basis for asserting such a fee against the Debtors. Additionally, Debtor examined its servicing records and found no evidence of monies owing to Claimant, and found | |

34

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | Executive Trustee Services, LLC | | no evidence connecting Claimant to a "SEC servicing fee".<br><br>Additionally, it should be noted that on June 3, 2013 the United States Bankruptcy Court Southern District of New York ruled that Claimant was permanently enjoined from filing "any new bankruptcy case or adversary proceeding in this and any other United States Bankruptcy Court, and permanenty enjoined from filing any adversary proceeding or document (including proofs of claim) in any other bankruptcy case or aderversary proceeding without first obtaining leave to file from the United States Bankruptcy Judge presiding over such bankruptcy case or adversary proceeding, as applicable" (per case No. 12-11580 (SHL); Adv. Pro. No. 12-01901 (SHL); Doc 13, pag 12, section E). | |

35

**Exhibit B**

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)
EXHIBIT B
EIGHTY-SEVENTH OMNIBUS OBJECTION - REDUCE & ALLOW (BORROWER CLAIMS)

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | Asserted Debtor Name | Asserted Case Number | Reduced and Allowed Claim Amount | Modified Debtor Name | Modified Case Number | Reason for Reduction and Allowance of Claim |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | GMAC Mortgage LLC v Gary Burden and Ayanna Burden Law Offices of Sheldon J Vann and Associates 841 Prudential Drive12th Fl Jacksonville, FL 32207 | 756 | 09/25/2012 | $0.00 Administrative Priority $0.00 Administrative Secured $0.00 Secured $0.00 Priority $150,000.00 General Unsecured | GMAC Mortgage, LLC | 12-12032 | $0.00 Administrative Priority $0.00 Administrative Secured $0.00 Secured $0.00 Priority $25,000.00 General Unsecured | GMAC Mortgage, LLC | 12-12032 | On April 11, 201,2 the Office of the Comptroller of the Currency and the Federal Reserve issued an order ("the Consent Order") against Debtors and other non-debtor servicers whereby borrowers with foreclosure files within a 2-year period from 2009 and 2010 were entitled eligible to receive certain cash payments.  On December 11, 2013, the Court entered the Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors approving the terms of the Chapter 11 plan, as amended (the "Plan") filed in the Chapter 11 Cases [Docket No. 6065].  On December 17, 2013, the effective date of the Plan occurred.  The Plan defines "Consent Order Borrower Claims" as claims held by Borrowers arising from foreclosure actions that were pending at any time during the 2-year window defined in the Consent Order.  Under Article IV.F.6 of the Plan (Distributions from the Borrower Claims Trust), "if any Borrower Claim constitutes, in whole or in part, a Consent Order Borrower Claim, the Allowed amount of such Borrower Claim shall be reduced to the extent paid pursuant to the Consent Order or any settlement of the Debtors' obligations thereunder, without further order of the Bankruptcy Court."

In connection with the Consent Order, Claimant received payment of $125,000.  As a result, the Borrower Trust seeks to reduce and allow Claim No. 756 in the amount of $25,000 against GMAC Mortgage, LLC, which is equal to Claimant's asserted claim of $150,000 less Claimant's Consent Order payment of $125,000. |

**Exhibit C**

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)
EXHIBIT C
EIGHTY-SEVENTH OMNIBUS OBJECTION - REDESIGNATE, REDUCE & ALLOW (BORROWER CLAIMS)

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | Asserted Debtor Name | Asserted Case Number | Reduced and Allowed Claim Amount | Modified Debtor Name | Modified Case Number | Reason for Redesignation. Reason for Reduction and Allowance of Claim |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Early Case Resolution involving MARTIN JEORGE A AND ROBERT ALICEA Reade and Associates 1333 N Buffalo DriveSuite 210 Las Vegas, NV 89128 | 2399 | 11/05/2012 | $0.00 Administrative Priority $0.00 Administrative Secured $0.00 Secured $0.00 Priority $169,980.00 General Unsecured | Executive Trustee Services, LLC | 12-12028 | $0.00 Administrative Priority $0.00 Administrative Secured $0.00 Secured $0.00 Priority $44,980.00 General Unsecured | GMAC Mortgage, LLC | 12-12032 | Claimant improperly asserts a claim against Executive Trustee Services, LLC when GMAC Mortgage, LLC is the correct Debtor for the claims at issue in Claim No. 2399.

On April 11, 2012, the Office of the Comptroller of the Currency and the Federal Reserve issued an order ("the Consent Order") against Debtors and other non-debtor servicers whereby borrowers with foreclosure files within a 2-year period from 2009 and 2010 were eligible to receive certain cash payments.  On December 11, 2013, the Court entered the Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors approving the terms of the Chapter 11 plan, as amended (the "Plan") filed in the Chapter 11 Cases [Docket No. 6065].  On December 17, 2013, the effective date of the Plan occurred.  The Plan defines "Consent Order Borrower Claims" as claims held by Borrowers arising from foreclosure actions that were pending at any time during the 2-year window defined in the Consent Order.  Under Article IV.F.6 of the Plan (Distributions from the Borrower Claims Trust), "If any Borrower Claim constitutes, in whole or in part, a Consent Order Borrower Claim, the Allowed amount of such Borrower Claim shall be reduced to the extent paid pursuant to the Consent Order or any settlement of the Debtors' obligations thereunder, without further order of the Bankruptcy Court."
In connection with the Consent Order, Claimant received payment of $125,000.

As a result, the Borrower Trust seeks to reduce and allow Claim No. 2399 to a claim in the amount of $44,980 against GMAC Mortgage, LLC, which is equal to Claimant's asserted claim of $169,980 less Claimant's Consent Order payment of $125,000. |