**Hearing Date: 7/16/15 @ 10 a.m.**
**Response Deadline: 6/26/15**

**SCOTT JAMES LEONHARDT (PRO SE)**
2111 Fairfield Place
Wilmington, DE 19805
Telephone: 302-650-7540

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPTIAL, LLC, *et al.*, | Case No. 12-12020-MG |
| Debtors. | (Jointly Administered) |
| | **Re: Dkt. No. 8588** |

**SCOTT LEONHARDT'S RESPONSE**
**TO RESCAP BORROWER CLAIMS TRUST'S EIGHTY-SEVENTH**
**OMNIBUS OBJECTION TO CLAIMS**

I, Scott J. Leonhardt ("Leonhardt"), appearing *pro se*[1], hereby submit this response to the *Rescap Borrower Claims Trust's Eighty-Seventh Omnibus Objection to Claims* [Dkt. No. 8588] (the "Objection")[2] and, in support thereof, state as follows:

**PRELIMINARY STATEMENT**

1.     On December 6, 2010, I refinanced the mortgage on my home. The sole reason I refinanced, and incurred the fees in doing so, was to lower my monthly mortgage payment. Lender promised that my monthly mortgage payment would be $1,835.65, inclusive of all escrowed property taxes, as reflected on my signed HUD-1. A copy of the HUD-1 is attached hereto as **Exhibit A.** I would not have closed on the loan if the monthly payment listed on the

---

[1] I am a Delaware barred attorney and previously was admitted to this Court *pro hac vice* on an unrelated matter. For the avoidance of doubt, my firm has no involvement in this action, and I am representing myself *pro se*.
[2] For the convenience of the Court and parties in interest, capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Objection.

HUD-1 was materially higher than $1,835.65. The loan then was sold to Debtor GMAC Mortgage, LLC ("GMAC"). Approximately one year after acquiring the loan, GMAC discovered that the HUD-1 was wrong, and based on this error, demanded, under threat of foreclosure, that I pay a $2,202.98 instead of $1,835.65 per month. A copy of the letter is attached hereto as **Exhibit B**.

2.  The issue before the Court is who should bear the risk of loss in the event the HUD-1 is wrong? The lender is involved in numerous refinances for primary residences; this was my first one. I relied on the lender and professionals to ensure my HUD-1 was accurate. Lender, not me, is the one who should bear the risk of loss for mistakes in the HUD-1.

3.  My claim is based on, *inter alia*, GMAC's breach of and tortuous interference with my contract, a HUD-1. I come to this Court seeking only the benefit of my bargain, my *expectation* damages.

4.  Alternatively, if the Court determines that the HUD-1 is not a contract, then under promissory estoppel, I am entitled to my *reliance* damages. I never would have agreed to refinance my property if the increased monthly mortgage payments that I am now being charged were properly disclosed on the HUD-1.

## BACKGROUND

5.  On or around December 6, 2010, I refinanced the mortgage on my personal residence through Gateway Funding Diversified Mortgage Services L/P. At closing, I was presented with a HUD-1 that disclosed my monthly mortgage payment, *inclusive* of property taxes. See **Exhibit A**. This was the key document in my decision on whether to close on the loan, because it listed what was most important to me, the total amount I would need to pay each month. The other documents executed at closing, i.e. the Mortgage and Note, do not disclose

the escrow amounts. While those documents do provide that I must pay taxes into escrow, they do not state what those escrow amounts are. The HUD-1 does not conflict with and can be completely harmonized with all the closing documents.

6. The loan closed, and I paid as agreed. The loan then was purchased by GMAC. GMAC thereafter purportedly transferred the loan to Freddie Mac but remained as the servicer.

7. GMAC waited approximately 1 year to perform an escrow analysis. GMAC's escrow analysis revealed the monthly payment, inclusive of property taxes, listed on HUD-1 did not include Wilmington city taxes. Consequently, an insufficient amount was being escrowed. The documentation, attached to my proof of claim, shows this was not due to an *increase* in property taxes, but rather the *omission* of city taxes on the HUD-1.

8. As a result of the failure to include Wilmington city property taxes on the HUD-1 and to escrow them, my monthly payment increased by $400 for the 1st year and by approximately $147.57 for the remaining 28 years.

9. Upon receiving the escrow letter, I immediately contacted GMAC. I asked them to adhere to the HUD-1, which I relied on. GMAC refused. I also requested that they lower the interest rate, PMI payment or suggest another solution to make the increase more manageable. GMAC flatly refused all concessions and offered no assistance.

10. GMAC thereafter filed for bankruptcy, and on November 7, 2011, I timely filed my proof of claim. A copy of the Proof of Claim is attached hereto as **Exhibit C**.

11. I thereafter received a letter from GMAC seeking additional information, which I responded to. A copy of the response is attached hereto as **Exhibit D**. In that response, I invited the Debtors to have an informal dialogue to see if the claim could be consensually resolved.

12. I then inquired about the status of claim on July 8, 2011, March 5, 2012, March 20, 2012, and March 25, 2012. See **Exhibit E**. In their responses, the Debtors stated they would contact me regarding the status of my claim. *Id.* The Debtors never called.

13. I also reviewed the docket, and specifically, the schedules to the eighty six (86) omnibus claims objections.

14. On May 8, 2015, over three years since my last communication with the Debtors, and without prior warning, the Borrower Trust filed the Objection.

15. This is my response.

## RESPONSE

***The Proposed Order Attached to the Objection Contains a Patently False Finding That I did not Respond to the Debtors' Letter Requesting Additional Information***

16. The requested factual finding in the proposed order attached to the Objection that "Debtors sent Claimant a letter requesting additional information and documentation in support of claim; however, Claimant failed to respond" is patently false and belied by the record. See **Exhibit E.** Indeed, I was served with the objection via email and the only way the claims agent had my email address was from my response to the Borrower Trust's letter.

17. This statement, now appearing on the public docket, accuses me of being unresponsive and negligent, and paints me in a bad light before the Court. It simply is untrue. Even if the Court expunges my claim, I respectfully request that the order be revised to delete any language that is untrue, suggests I was unresponsive and should expressly state that I fully responded.

***The Objection Fails to Rebut the Claim's Presumption of Validity***

18. A claimant must allege facts sufficient to support a legal basis for the claim. If the assertions in the filed claim meet this standard of sufficiency, the claim is *prima facie* valid

4

pursuant to Bankruptcy Rule 3001(f). *In re Int'l Wireless Communications Holdings, Inc.*, 257 B.R. 739, 742 (Bankr. D. Del. 2001). "In other words, a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward." *In re Allegheny Int'l, Inc. et al.*, 954 F.2d 167, 173 (3d Cir. 1992). To prevail and subsequently shift the burden back to the claimant, the objector must affirmatively produce evidence equal in force to the prima facie case to counter the creditor's claim. *VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 636 (3d Cir. 2007); see also *Smith v. Sprayberry Square Holdings, Inc. (In re Smith)*, 249 B.R. 328, 333 (Bankr. S.D. Ga. 2000) ("affirmative proof must be offered to overcome the presumed validity of the claim."). "A mere objection by the debtor, therefore, does not end the inquiry. Once the claimant has established its prima facie case, the burden of going forward then shifts to the debtor to produce evidence sufficient to negate the prima facie validity of the filed claim." *Riverbank, Inc. v. Make Meat Corp. (In re Make Meat Corp.)*, 1999 WL 178788, at *3 (Bankr. S.D.N.Y. Mar. 31, 1999).

19. Claim #5720 is *prima facie* valid. The conclusory objections by the Borrower Trust have no evidentiary weight and are insufficient to rebut this presumption.

***The Proof of Claim Asserts Viable Causes of Action with Cognizable Damages***

20. The remainder of the Objection, asserts, without legal or evidentiary support, that the proof of claim fails to assert a viable cause of action.

21. The legal theories/damages asserted in the proof of claim, which are *prima facie* valid, are more fully articulated below.

***GMAC is Liable for Breach of Contract and/or Tortious Interference with Contract***

22. The HUD-1 states, "You have an additional monthly escrow payment of $229.82 that results in a total initial monthly amount owed of $1,835.65. This includes principal, interest,

5

a mortgage insurance and any items check below." The box "Property taxes" is then checked below. By its plain and ordinary terms, the HUD-1 states that the monthly mortgage payment, inclusive of property taxes, is $1,835.65.

23. The determination of whether the HUD-1 is a contract, and its enforceability is governed by Delaware law, the state in which the property is located. *Hill v. Hill*, 262 A.2d 661, 663 (Del. Ch.) aff'd, 269 A.2d 212 (Del. 1970).

24. To constitute a contract under Delaware law, the parties must intend that the contract would bind them, the terms of the contract be sufficiently definite, and the parties exchange legal consideration. *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010). The HUD-1 satisfies each and every one of these elements. The parties intended to be bound; in exchange for the loan, I would pay $1,835.65 per month, which is inclusive of all property taxes. The terms are sufficiently definite; the HUD-1 is quite detailed. Consideration was exchanged; the loan amount in exchange for the promise to pay it back. Consequently, the HUD-1 is a contract under Delaware law. Courts have found that a HUD-1 contains all the essential terms of a contract. *Ten Eighty Five (1085) Whalley Ave., LLC v. Ten Eighty Three (1083) Whalley Ave., LLC*, No. NNHCV126027785S, 2014 WL 3715025, at *3 (Conn. Super. Ct. June 23, 2014) ("Accordingly, the HUD–1 settlement statement contains all the essential terms to the contract."); *see also Bushbeck v. Chicago Title Ins. Co.*, 632 F. Supp. 2d 1036, 1039-40 (W.D. Wash. 2008) (holding that a cause of action based on breach of a HUD-1 as a contract was sufficiently plead to survive a motion for judgment on pleadings) ("Here, the [HUD-1] has been provided by the parties and . . . identifies the parties, contains a promise, identifies the actions undertaken in escrow and recites the fee paid . . . as consideration. . . . This is enough at this

6

stage to survive a motion for judgment on the pleadings."). I note, however, there is some contrary authority holding that a HUD-1 is not a contract.

25. Sending the letter demanding payment for more than the amounts required by the HUD-1 was a breach of contract. The lender agreed I would pay X, but then demanded more. As a result, I am entitled to expectation damages – the level of damages that will put me in the same financial position as if the contract was never breached.

26. Alternatively, GMAC tortuously interfered with the contract. The elements for a tortious interference cause of action are (i) a contract, (ii) about which defendant knew, (iii) an intentional act that is a significant factor in causing the breach of such contract, (iv) without justification, and (v) which causes injury. *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 992 (Del. Ch. 1987). All of these elements have been meet: (1) the HUD-1 is a contract – see *supra;* (2) defendant, as successor to the counterparty to the HUD-1, knew or should have known about it; (3) GMAC's letter and demand for payment for amounts beyond what was identified in the HUD-1 is a significant factor in causing the breach of the HUD-1; (4) there was no justification for this behavior; and (5) as a result of this action, I am forced to pay $53,125.50 beyond the amount identified in the HUD-1.

***Alternatively, Under Promissory Estoppel, GMAC is Liable for Reliance Damages***

27. In the alternative, if the HUD-1 does not satisfy any technical requirements to be a contract, I should be able to recover my reliance damages under promissory estoppel. The elements of a promissory estoppel cause of action are: (i) a promise was made; (ii) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee; (iii) the promisee reasonably relied on the promise and took action to his detriment;

7

and (iv) such promise is binding because injustice can be avoided only by enforcement of the promise. *Harmon v. State, Delaware Harness Racing Comm'n*, 62 A.3d 1198, 1201 (Del. 2013).

28. All of these elements are satisfied: (1) Gateway, as predecessor in interest to GMAC, made a promise regarding the amounts owed for taxes; (2) based on that promise, it could be reasonably expected I would close on the loan; (3) I reasonably relied on this promise to my detriment; and (4) the promise is binding because enforcing it can avoid an injustice.

29. As discussed *supra,* I relied on the HUD-1 to my detriment, i.e. closing on the loan.

## **CONCLUSION**

30. I should receive the benefit of my bargain; a monthly mortgage payment of $1,835. In accordance with hornbook law, the proof of claim calculates my expectation damages down to the penny. Alternatively, I am entitled to my reliance damages under promissory estoppel.

31. Based on the foregoing, I respectfully request that the Court deem my claim an allowed general unsecured claim in the amount of $53,125.20, and grant such other and further relief as the Court deems just and proper.

Dated: June 25, 2015
Wilmington, Delaware

Respectfully submitted,

*/s/ Scott J. Leonhardt*
Scott J. Leonhardt (*pro se*)
2111 Fairfield Place
Wilmington, DE 19805
Telephone: (302) 650-7540
leonhardt@teamrosner.com