**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| | ) **NOT FOR PUBLICATION** |
| In re: | ) |
| | ) Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | ) |
| | ) Chapter 11 |
| Debtors. | ) |
| | ) Jointly Administered |

**MEMORANDUM OPINION AND ORDER SUSTAINING IN PART
AND OVERRULING IN PART THE RESCAP LIQUIDATING TRUST AND
THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM
NOS. 112, 114, 416, AND 417 FILED BY ERLINDA ABIBAS ANIEL,
FERMIN SOLIS ANIEL, AND MARC JASON ANIEL**

*A P P E A R A N C E S :*

MORRISON & FOERSTER LLP
*Attorneys for ResCap Borrower Claims Trust*
250 West 55th Street
New York, New York 10019
By:     Norman S. Rosenbaum, Esq.
          Jordan A. Wishnew, Esq.
          Jessica J. Arett, Esq.

ERLINDA ABIBAS ANIEL, FERMIN SOLIS ANIEL,
MARC JASON ANIEL
*Pro Se*
75 Tobin Clark Drive
Hillsborough, California 94010
By:     Erlinda Abibas Aniel

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

        Pending before the Court is the ResCap Liquidating Trust's (the "Liquidating Trust") and

the ResCap Borrower Claims Trust's (the "Borrower Trust" and, together with the Liquidating

Trust, the "Trusts") objection (the "Objection," ECF Doc. # 8237) to (i) Claim Numbers 112 and

114 (the "Estiva Claims," ECF Doc. # 8237-4) filed by Erlinda Abibas Aniel ("Erlinda Aniel"),

and (ii) Claim Numbers 416 and 417 (the "Aniel Claims," ECF Doc. # 8237-5, and together with

the Estiva Claims, the "Claims") filed by Erlinda Aniel, Fermin Solis Aniel, and Marc Jason

Aniel (collectively, the "Aniels").[1]  The Claims are based on a litany of state and federal causes

of action the Aniels previously asserted against Debtors GMAC Mortgage, LLC ("GMACM")

and Executive Trustee Services, LLC ("ETS") in two separate actions commenced in California

courts, which actions arose from the Debtors' foreclosure on two separate properties allegedly

owned by the Aniels (the "Estiva Property" and the "Aniel Property," respectively).  As set forth

more fully below, the Court holds that the Aniels fail to state a claim for many of these causes of

action; however, factual issues preclude the resolution of several of their claims with respect to

the Aniel Property at this time.  Specifically, the Court concludes that an evidentiary hearing is

required to resolve the Aniels' claims premised on an allegedly invalid assignment to GMACM

of the deed of trust encumbering the Aniel Property.  With respect to the Aniel Property, the

Aniels' causes of action for wrongful foreclosure, fraudulent concealment, violations of

California's Unfair Competition Law, CAL. BUS. & PROF. CODE §§ 17200 *et seq.* (the "UCL"),

declaratory relief, and to set aside the trustee's sale all hinge on whether the signatory of the

assignment had authority to execute the assignment.

Erlinda Aniel filed an opposition to the Objection on behalf of the Aniels (the

"Opposition," ECF Doc. # 8370), and the Trust filed a reply (the "Reply," ECF Doc. # 8472).[2]

The Court held a hearing on the Objection on April 16, 2015; Erlinda Aniel appeared on behalf

---

[1]      The Objection is supported by the declarations of Kathy Priore (the "Priore Declaration," ECF Doc.
# 8237-2) and Norman S. Rosenbaum (the "Rosenbaum Declaration," ECF Doc. # 8237-45).

[2]      The Reply is supported by the supplemental declaration of Kathy Priore (the "Priore Supp.," ECF Doc.
# 8475-1).

of the Aniels by telephone.  The Court took the matter under submission.  This Opinion sustains

in part and overrules in part the Trust's Objection to the Aniels' Claims.

## I.    <u>BACKGROUND</u>

### A.    **The Estiva Property**

Raul and Corazon Estiva (together, the "Estivas") obtained a $1,000,000 loan (the

"Estiva Loan") from non-debtor MortgageIT, Inc. ("MortgageIT") in March 2007.  (Obj. ¶ 15.)

The Estiva Loan was evidenced by a note (the "Estiva Note," Priore Decl. Ex. D) secured by a

deed of trust (the "Estiva DOT," Priore Decl. Ex. E) encumbering the Estiva Property located at

801 Foothill Drive, San Mateo, California 94402.  (Obj. ¶ 15.)  The Estiva DOT named

Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary.  (*Id.*; *see* Priore

Decl. Ex. E at 3.)  None of the Aniels were identified in the Estiva DOT or the Estiva Note.  (*See*

Obj. ¶ 15; *see* Priore Decl. Exs. D, E.)

The Estiva Loan was transferred to HSBC Bank U.S.A. ("HSBC"), as Trustee for DALT

2007-AO3, on May 1, 2007.[3]  (Obj. ¶ 16.)  MERS assigned the Estiva DOT to HSBC pursuant to

an assignment executed on May 26, 2009 (the "Estiva Assignment," Priore Decl. Ex. F).[4]  (*See*

Obj. ¶ 16; Priore Decl. Ex. F at 2.)  GMACM was the subservicer of the Estiva Loan from March

2007 until March 10, 2011, when the Estiva Property was sold at a foreclosure sale.  (*See* Obj.

¶ 16.)

By December 2008, the Estivas had not made a payment on the Estiva Loan since

September 8, 2008.  (*See* Obj. ¶ 17.)  On December 15, 2008, MERS executed a Substitution of

---

[3]        The Estiva Note was negotiated from MortgageIT to HSBC.  (*See* Priore Decl. Ex. D at 7.)

[4]        The Estiva Assignment was recorded on July 16, 2009.  (*See id.* at 2.)

Trustee (the "2008 Estiva Substitution," Priore Decl. Ex. H), appointing ETS as substitute trustee under the Estiva DOT.[5]  (*See* Obj. ¶ 17; Priore Decl. Ex. H at 2.)  As a result of the Estivas' delinquency, ETS issued a Notice of Default on December 15, 2008 (the "2008 Estiva NOD," Priore Decl. Ex. G).[6]  (*See* Obj. ¶ 17; Priore Decl. Ex. G at 3.)  Because the Estivas failed to cure their default under the Estiva Loan, ETS issued a Notice of Trustee's Sale on March 18, 2009 (the "2009 Estiva NOS," Priore Decl. Ex. I), which scheduled a foreclosure sale on April 13, 2009.[7]  (*See* Obj. ¶ 17; Priore Decl. Ex. I at 2.)  The scheduled foreclosure sale was continued upon the Estivas' request for a loan modification; however, the Estivas never submitted a completed loan modification application.  (*See* Obj. ¶ 17.)

On February 25, 2009, Erlinda and Fermin Aniel (together, the "Aniel Debtors") filed a chapter 11 bankruptcy petition (the "Aniel Chapter 11 Case") in the United States Bankruptcy Court for the Northern District of California (the "California Bankruptcy Court").  (*Id.* ¶ 18.)  On their amended schedules, the Aniel Debtors listed a 50% interest in the Estiva Property.  (*Id.*)  On August 4, 2010, the Aniel Chapter 11 Case was converted to a case under chapter 7 of the Bankruptcy Code (the "Aniel Chapter 7 Case").  (*Id.*)  On November 2, 2010, the California Bankruptcy Court entered an order (the "Abandonment Order," Priore Decl. Ex. M), authorizing the chapter 7 trustee to abandon certain assets to the Aniel Debtors, including their purported interest in the Estiva Property.  (*See* Obj. ¶ 18; Priore Decl. Ex. M at 2–3.)  The California

---

[5]    The 2008 Estiva Substitution was recorded on December 17, 2008 as document number 2008-135230.  (*See id.* at 2.)

[6]    The 2008 Estiva NOD was recorded on December 17, 2008 as document number 2008-135231.  (*See id.* at 2.)

[7]    The 2009 Estiva NOS was recorded on March 20, 2009.  (*See id.* at 2.)

Bankruptcy Court granted the Aniel Debtors a discharge on December 2, 2010 (the "Aniel

Discharge Order," Priore Decl. Ex. L).  (*See* Obj. ¶ 18; Priore Decl. Ex. L at 2.)

ETS issued a second Notice of Trustee's Sale on December 28, 2010 (the "2010 Estiva

NOS," Priore Decl. Ex. N), which scheduled a foreclosure sale on January 27, 2011.[8]  (*See* Obj.

¶ 19; Priore Decl. Ex. N at 2–3.)  However, the scheduled foreclosure sale was postponed and

continued to February 9, 2011.  (Obj. ¶ 19.)

On February 2, 2011, Erlinda and Fermin Aniel (the "Estiva Plaintiffs") filed a verified

complaint (the "Estiva Complaint," Priore Decl. Ex. A at 10–33) in the Superior Court of the

State of California, County of San Mateo (the "Superior Court"), asserting causes of action under

California state law against a number of defendants, including GMACM, ETS, HSBC, and

MERS (collectively, the "Estiva Defendants") (the "Estiva Action").  (*See* Obj. ¶ 20; Priore Decl.

Ex. A at 10–14.)  The Estiva Complaint alleged the following causes of action against the Estiva

Defendants:  (i) violation of the Rosenthal Fair Debt Collection Practices Act, CAL. CIV. CODE

§§ 1788 *et seq.* (the "Rosenthal Act"); (ii) fraud (misrepresentation); (iii) wrongful foreclosure;

(iv) violation of the UCL; (v) injunctive relief; and (vi) quiet title.  (*See* Priore Decl. Ex. A at 5.)

On February 3, 2011, Corazon Estiva executed a grant deed (the "Estiva Grant Deed," Priore

Decl. Ex. P), granting Erlinda and Fermin Aniel each a 1% interest in the Estiva Property.[9]  (*See*

Obj. ¶ 21; Priore Decl. Ex. P at 2.)  On March 7, 2011, the Estiva Defendants filed a demurrer to

the Estiva Complaint on the grounds that the Estiva Plaintiffs lacked standing and failed to

sufficiently plead their alleged causes of action.  (*See* Obj. ¶ 22.)

---

[8]     The 2010 Estiva NOS was recorded on December 31, 2010.  (*See id.* at 2.)

[9]     The Estiva Grant Deed was also recorded on February 3, 2011.  (*See id.* at 2.)

The Estiva Property was sold to HSBC at a foreclosure sale on March 10, 2011.  (*See id.*

¶ 23.)  On April 11, 2011, ETS executed a Trustee's Deed (the "Estiva Trustee Deed," Priore

Decl. Ex. Q) granting the Estiva Property to HSBC.[10]  (*See* Obj. ¶ 23; Priore Decl. Ex. Q at 2–4.)

On June 8, 2011, the Superior Court entered an order (the "Estiva Order," Priore Decl.

Ex. S), sustaining the Estiva Defendants' demurrer without leave to amend as to all causes of

action on the basis that the Estiva Plaintiffs lacked standing because they were not borrowers

under the Estiva Loan.  (*See* Obj. ¶ 24; Priore Decl. Ex. S at 5–6.)  The Estiva Plaintiffs appealed

the Estiva Order on February 2, 2012; however, the appeal was stayed by the Debtors' chapter 11

cases on May 14, 2012.  (*See* Obj. ¶ 25.)

### B.    The Aniel Property

Erlinda Aniel obtained a $2,000,000 refinance loan (the "Aniel Loan") from MortgageIT

on June 4, 2007.  (*Id.* ¶ 26.)  The Aniel Loan was evidenced by a note (the "Aniel Note," Priore

Decl. Ex. T) secured by a deed of trust (the "Aniel DOT," Priore Decl. Ex. U) encumbering the

Aniel Property located at 75 Tobin Clark Drive, Hillsborough, California.[11]  (Obj. ¶ 26.)  The

Aniel DOT identified MERS as the beneficiary.  (*See* Priore Decl. Ex. U at 3.)

On July 1, 2007, the Aniel Loan was transferred to HSBC Bank U.S.A. ("HSBC Bank"),

as Trustee for DALT 2007-AO5.[12]  (Obj. ¶ 27.)  MERS assigned the Aniel DOT to HSBC Bank

pursuant to an assignment executed on August 24, 2009 (the "2009 Aniel Assignment," Priore

---

[10]    The Estiva Trustee Deed was recorded on April 21, 2011.  (*See id.* at 2.)

[11]    The Aniel DOT was executed by each of the Aniels.  (*See* Priore Decl. Ex. U at 15, 20.)

[12]    The Aniel Note was negotiated from MortgageIT to blank.  (*See* Priore Decl. Ex. T at 7.)

Decl. Ex. V).[13]  (*See* Obj. ¶ 27; Priore Decl. Ex. V at 2.)  GMACM was the subservicer of the

Aniel Loan from June 4, 2007 until February 16, 2013, when servicing rights were transferred to

non-debtor Ocwen Financial Corporation ("Ocwen").  (*See* Obj. ¶ 27.)

By September 2008, the Aniels had not made a payment on the Aniel Loan since June 17,

2008.  (*See id.* ¶ 29.)  On September 25, 2008, MERS executed a Substitution of Trustee (the

"2008 Aniel Substitution," Priore Decl. Ex. X), appointing ETS as substitute trustee under the

Aniel DOT.[14]  (*See* Obj. ¶ 29; Priore Decl. Ex. X at 2.)  As a result of the Aniels' delinquency,

ETS issued a Notice of Default on September 25, 2008 (the "2008 Aniel NOD," Priore Decl. Ex.

Y).[15]  (*See* Obj. ¶ 29; Priore Decl. Ex. Y at 2–3.)

On November 3, 2008, the Aniels' authorized third party called GMACM and requested

a workout package for a potential loan modification.  (*See* Obj. ¶ 30; "Aniel Servicing Notes,"

Priore Decl. Ex. Z at 12.)  GMACM received a short sale package from the Aniels on November

19, 2008.  (Obj. ¶ 30.)  On December 8, 2008, the Aniels' authorized representative called

GMACM to inquire as to the status of the loan modification review; GMACM advised the

Aniels' representative that the Aniel Loan was under review for a short sale.  (*See id.*; Priore

Decl. Ex. Z at 12.)  On December 17, 2008, the Aniels' representative informed GMACM that

the Aniels would like to be considered for a loan modification.  (*See* Obj. ¶ 30; Priore Decl. Ex.

Z at 11.)

---

[13]      The 2009 Aniel Assignment was recorded on September 21, 2009.  (*See id.* at 2.)

[14]      The 2008 Aniel Substitution was recorded on September 29, 2008 as document number 2008-108476.  (*See id.* at 2.)

[15]      The 2008 Aniel NOD was recorded on September 29, 2008 as document number 2008-108477.  (*See id.* at 2.)

Because the Aniels failed to cure their default under the Aniel Loan, ETS issued a Notice of Trustee's Sale on December 30, 2008 (the "2008 Aniel NOS," Priore Decl. Ex. AA), which scheduled a foreclosure sale on January 26, 2009.[16]  (*See* Obj. ¶ 31; Priore Decl. Ex. AA at 2.) GMACM received a workout package from the Aniels on January 16, 2009; because the workout package was incomplete, the Debtors mailed the Aniels a letter informing them of the outstanding items on the same date.  (*See* Obj. ¶ 32; Priore Decl. Ex. Z at 10.)  The Debtors did not receive a completed workout package from the Aniels.  (Obj. ¶ 32; *see generally* Priore Decl. Ex. Z.)  On January 19, 2009, GMACM advised the Aniels' representative that GMACM could not approve the Aniel Loan for modification because the Aniels' financial information indicated that they were overextended by $4,460.94 per month.  (Obj. ¶ 32; *see* Priore Decl. Ex. Z at 10.)

The Aniel Chapter 11 Case was filed in February 2009 and converted to the Aniel Chapter 7 Case in August 2010.  (*See* Obj. ¶ 33.)  On November 2, 2010, the Aniel Property was abandoned to the Aniel Debtors pursuant to the Abandonment Order.  (*See id.*; Priore Decl. Ex. M at 2–3.)

HSBC Bank assigned the Aniel DOT to GMACM pursuant to an assignment executed on February 1, 2011 (the "2011 Aniel Assignment," Priore Decl. Ex. CC, and together with the 2009 Aniel Assignment, the "Aniel Assignments").[17]  (*See* Obj. ¶ 34; Priore Decl. Ex. CC at 2.) On June 27, 2011, ETS issued a Notice of Rescission of the 2008 Aniel NOD (the "2011 Aniel NOR," Priore Decl. Ex. DD), rescinding the 2008 Aniel NOD because it was too old to be

---

[16]    The 2008 Estiva NOS was recorded on January 2, 2009.  (*See id.* at 2.)

[17]    The 2011 Aniel Assignment was recorded on February 9, 2011.  (*See id.* at 2.)

valid.[18]  (*See* Obj. ¶ 34; Priore Decl. Ex. DD at 2.)  GMACM attempted to call the Aniels on

August 17, 18, and 19, 2011 because the Aniel Loan remained delinquent; however, GMACM

was unable to reach the Aniels, and the Aniels did not contact GMACM.  (*See* Obj. ¶ 35; Priore

Decl. Ex. Z at 9.)

On October 11, 2011, GMACM sent the Aniels a letter (the "October 11 Letter," Priore

Decl. Ex. EE), which provided phone numbers for GMACM's loss mitigation department and

the Department of Housing and Urban Development ("HUD") and a link to GMACM's website

for further information regarding options to avoid foreclosure.  (Obj. ¶ 36; *see* Priore Decl. Ex.

EE at 2–3.)  After receiving no response from the Aniels, GMACM attempted to call the Aniels

six additional times on January 25, 26, and 30, 2012 in order to assess the Aniels' financial

situation and explore options to avoid foreclosure; however, there was no answer each time

GMACM attempted to contact the Aniels.  (*See* Obj. ¶ 36.)  The Debtors sent the Aniels another

letter on February 14, 2012 (the "February 14 Letter," Priore Decl. Ex. FF), which provided the

same information set forth in the October 11 Letter.  (Obj. ¶ 36.)  The Debtors' books and

records do not indicate that either the October 11 Letter or the February 14 Letter was returned

as undeliverable.  (*Id.*)

On April 5, 2012, GMACM executed a Substitution of Trustee (the "2012 Aniel

Substitution," Priore Decl. Ex. GG), appointing ETS as substitute trustee under the Aniel DOT

(the 2008 Aniel Substitution and the 2012 Aniel Substitution together, the "Aniel

Substitutions").[19]  (*See* Obj. ¶ 36; Priore Decl. Ex. GG at 2.)  In light of the fact that the Aniels

---

[18]      The 2011 Aniel NOR was recorded on July 1, 2011.  (*See id.* at 2.)

[19]      The 2012 Aniel Substitution was recorded on April 27, 2012 as document number 2012-058860.  (*See id.* at
2.)

had not made a payment on the Aniel Loan since June 2008, ETS issued a Notice of Default on

April 21, 2012 (the "2012 Aniel NOD," Priore Decl. Ex. HH).[20]  (*See* Obj. ¶¶ 36–37; Priore

Decl. Ex. HH at 2–3.)  On May 10, 2012, the Aniels sent GMACM a letter requesting that

GMACM validate their debt (the "Debt Validation Request").  (Obj. ¶ 38.)  GMACM received

the Debt Validation Request on May 17, 2012; that same day GMACM sent the Aniels a letter

acknowledging the Debt Validation Request (the "Debt Validation Acknowledgement," Priore

Decl. Ex. JJ).  (Obj. ¶ 38; *see* Priore Decl. Ex. JJ.)  On June 8, 2012, GMACM sent the Aniels a

letter responding to the Debt Validation Request (the "Debt Validation Response," Priore Decl.

Ex. KK).  (Obj. ¶ 38; *see* Priore Decl. Ex. KK.)  Because the Aniels failed to cure their default

under the Aniel Loan, ETS issued a Notice of Trustee's Sale on July 27, 2012 (the "2012 Aniel

NOS," Priore Decl. Ex. II), which scheduled a foreclosure sale on August 27, 2012.[21]  (*See* Obj.

¶ 37; Priore Decl. Ex. II at 2–3.)

On August 9, 2012, the Aniels filed a complaint (the "Aniel Complaint," Priore Decl.

Ex. B at 9–87) in the United States District Court for the Northern District of California (the

"District Court'), asserting federal and state law causes of action against a number of defendants,

including GMACM and ETS (the "Aniel Defendants") (the "Aniel Action").  (*See* Obj. ¶ 39;

Priore Decl. Ex. B at 10–13.)  The Aniel Complaint alleged the following causes of action

against the Aniel Defendants:  (i) wrongful foreclosure, including violations of sections 2923.5

and 2924 of the California Civil Code; (ii) violation of the Fair Debt Collection Practices Act, 15

U.S.C. § 1692 *et seq.* (the "FDCPA"); (iii) violation of section 6 of the Real Estate Settlement

---

[20]     The 2012 Aniel NOD was recorded on April 27, 2012 as document number 2012-058861.  (*See id.* at 2.)

[21]     The 2012 Aniel NOS was recorded on August 1, 2012.  (*See id.* at 2.)

Practices Act, 12 U.S.C. § 2605 ("RESPA"); (iv) an action to set aside and cancel the trustee's

sale; (v) declaratory relief; (vi) quiet title; (vii) fraudulent concealment; (viii) violation of the

Rosenthal Act; and (ix) violation of the UCL. (*See* Priore Decl. Ex. B at 5.)

On August 15, 2012, the Aniels filed an *ex parte* application for a temporary restraining

order to halt the trustee's sale (the "TRO Application"). (Obj. ¶ 40.) On August 28, 2012, the

Aniel Defendants filed a notice of bankruptcy in the Aniel Action. (*Id.* ¶ 39.) The Aniel

Defendants filed an opposition to the TRO Application on September 11, 2012. (*Id.* ¶ 40.) On

September 26, 2012, the District Court entered an order (the "District Court Order," Priore Decl.

Ex. MM), denying the TRO Application on the grounds that the Aniels were not likely to

succeed on the merits and did not raise serious questions going to the merits. (Obj. ¶ 40; *see*

Priore Decl. Ex. MM at 13–14.) On October 15, 2012, the Debtors filed an answer to the Aniel

Complaint. (Obj. ¶ 39.) According to the Trusts, a foreclosure sale has not yet been completed

on the Aniel Property and, upon information and belief, the Aniels remain in the Aniel Property.

(*Id.* ¶ 40.)

### C.    The Claims

On June 9, 2012, Erlinda Aniel timely filed the Estiva Claims, asserting a $10,000

general unsecured claim and a $1,075,000 secured claim against ETS and GMACM separately.

(*See* Priore Decl. Ex. A at 3, 125.) The Estiva Claims are premised on the causes of action

asserted against ETS and GMACM in the Estiva Action, and the Estiva Complaint is attached to

each proof of claim. (*See id.* at 10–33, 132–55.) According to the Estiva Complaint, the "very

core of the complaint is the execution of the assignment of deed [of trust] by Jeffrey Stephan,

who is an infamous robo-signer." (*See id.* at 6.) Also attached to each Estiva Claim is: (1) a

transcript of a deposition of Jeffrey Stephan, taken December 10, 2009 (*see id.* at 35–103, 157–

225); (2) a copy of the Estiva Assignment (*see id.* at 105, 227); and (3) a copy of the Estiva

Plaintiffs' appeal brief filed with respect to their appeal of the Estiva Order (*see id.* at 108–23,

230–45).

On August 20, 2012, the Aniels timely filed the Aniel Claims, asserting unliquidated

claims against each of ETS and GMACM. (*See* Priore Decl. Ex. B at 3, 89.) The Aniel Claims

are premised on the causes of action asserted against ETS and GMACM in the Aniel Action, and

the Aniel Complaint is attached to each proof of claim. (*See id.* at 9–87, 95–173.)

### D.     The Objection

The Trusts argue that the Estiva Claims lack merit for several reasons. First, the Aniels

lack standing to assert the Estiva Claims because the Aniels were never borrowers under the

Estiva Note or Estiva DOT and the Aniels did not acquire any interest in the Estiva Property

until over two years after the non-judicial foreclosure process commenced with respect to the

Estiva Property. (*See* Obj. ¶ 41.) The Trusts assert that the Aniels lack standing to contest the

validity of the Estiva Property foreclosure and, because all of the causes of action asserted in the

Estiva Action "are implicitly tied to the foreclosure," the Aniels also lack standing to bring the

Estiva Claims. (*Id.* ¶ 42.) Second, the Trusts argue that the Estiva Claims fail to the extent they

rely on the incorrect allegations that HSBC was not the owner of the Estiva Loan and that ETS

was not properly appointed as substitute trustee of the Estiva DOT. (*See id.* ¶¶ 45–51.)

According to the Trusts, the Estiva Note was properly endorsed from MortgageIT to HSBC,

HSBC was the owner of the Estiva Loan at the time foreclosure proceedings were commenced,

and GMACM, as subservicer for HSBC, had standing to initiate foreclosure proceedings. (*Id.*

¶ 46.) The fact that the Estiva Assignment was not recorded until 2009 does not affect the

validity of the Estiva Property foreclosure because the Estiva Note was transferred to HSBC in

May 2007 and, under California law, a deed of trust follows the note it secures. (*See id.*) The

Estiva Assignment is valid notwithstanding the Aniels' allegations that it was signed by an

alleged robo-signer, Jeffrey Stephan ("Stephan"), because such allegations are conclusory and

lack factual support. (*See id.* ¶ 47.) Additionally, the Aniels incorrectly assert that ETS was not

properly appointed as substitute trustee under the Estiva DOT when it filed the 2008 Estiva

NOD; in fact, ETS was properly appointed as substitute trustee under the Estiva DOT pursuant to

the 2008 Estiva Substitution. (*See id.* ¶ 50.) Finally, the Trusts argue that the Aniels fail to state

a claim for any of the causes of action underlying the Estiva Claims. (*See id.* ¶¶ 52–72.)

The Trusts also argue that the Aniel Claims fail for several reasons. First, the Trusts

argue that the Aniel Claims fail to the extent they rely on the incorrect allegations that HSBC

Bank was not the owner of the Aniel Loan, that ETS was not properly appointed as substitute

trustee under the Aniel DOT, or that the 2009 Aniel Assignment is invalid because it was

recorded after the purported closing date of the DALT 2007-AO5 securitization trust. (*See id.*

¶ 73.) According to the Trusts:  (i) the Aniel Note was properly endorsed from MortgageIT to

blank; (ii) HSBC Bank, as the holder of the Aniel Note, was the owner of the Aniel Loan at the

time foreclosure proceedings were commenced; and (iii) GMACM, as subservicer for HSBC

Bank, had standing to initiate foreclosure proceedings on the Aniel Property. (*See id.* ¶ 74.) The

2009 Aniel Assignment is valid notwithstanding the Aniels' allegations that it was signed by an

alleged robo-signer, Janine Yamoah ("Yamoah"), because such allegations are conclusory and

lack factual support. (*See id.* ¶ 75.) The Trusts further argue that the Aniels lack standing to

raise issues related to the securitization of the Aniel Loan because they were not parties to, or

beneficiaries of, the pooling and servicing agreement (the "PSA") governing the DALT 2007-

AO5 securitization trust. (*See id.* ¶ 76.) The Trusts also contend that the Aniels incorrectly

assert that ETS was not properly appointed as substitute trustee under the Aniel DOT when it

filed the 2008 Aniel NOD; in fact, ETS was properly appointed as substitute trustee under the

Aniel DOT pursuant to the 2008 Aniel Substitution.  (*See id.* ¶ 77.)  Finally, the Trusts contend

that the Aniels fail to state a claim for any of the causes of action underlying the Aniel Claims.

(*See id.* ¶¶ 79–101.)

### E.    The Opposition

The Aniels argue that the Trusts have not rebutted the prima facie validity of the Aniel

Claims.  (*See* Opp. ¶ 7.)  First, the Aniels contend that the Trusts have not demonstrated that

HSBC Bank was the owner of the Aniel Loan at the time the Debtors initiated foreclosure

proceedings, as the Trusts rely solely on the Priore Declaration to support their allegation that the

Aniel Loan was transferred to HSBC Bank on July 1, 2007 but provide no documentary evidence

of this transfer.  (*Id.* ¶ 39.)  Second, the Aniels assert that the Debtors could not foreclose on the

Aniel Property without any legal, equitable, or enforceable interest in the Aniel Note, which the

Trusts allege was owned by HSBC Bank at the time of foreclosure.  (*Id.* ¶ 41.)  According to the

Aniels, the Trusts have not submitted any evidence that the Aniel Loan was ever properly

securitized, and the 2009 Aniel Assignment was executed after the closing date of the DALT

2007-AO5 securitization trust, which gives rise to a plausible inference that the 2009 Aniel

Assignment was fabricated.  (*See id.* ¶¶ 42–43.)  The Aniels contest the validity of the Aniel

Assignments, arguing that the Trusts have not established that Yamoah was authorized to

execute the 2009 Aniel Assignment and was not a robo-signer, or that Mira Smoot ("Smoot")

was authorized to execute the 2011 Aniel Assignment.  (*See id.* ¶¶ 46–48.)  The Aniels argue that

they have standing to challenge the validity of the Aniel Assignments under *Glaski v. Bank of*

*America*, 160 Cal. Rptr. 3d 449 (Ct. App. 2013).  (*See id.* ¶ 44 (citing *Glaski*, 160 Cal. Rptr. 3d at 452).)

The Aniels also argue that the Trusts have not rebutted the prima facie validity of the Estiva Claims.  (*See id.* ¶ 7.)  First, the Aniels assert that the Debtors have not and cannot rebut the presumption that the Aniels have standing to assert the Estiva Claims.  (*See id.* ¶¶ 66–67.)  At the time the Aniels filed the Aniel Chapter 11 Case, they disclosed a 50% interest in the Estiva Property on their schedules.  (*Id.* ¶ 67.)  Despite having notice and an opportunity to challenge the Aniels' alleged ownership interest in the Estiva Property in the California Bankruptcy Court, the Debtors never challenged the Aniels' standing prior to entry of the Abandonment Order and, therefore, are barred from doing so now.  (*See id.*)  Second, the Aniels contend that the Trusts have not established that the Estiva Loan was transferred to HSBC in May 2007 because the Trusts have not supported this assertion with sufficient documentary evidence.  (*See id.* ¶ 70.)  Additionally, the Aniels assert that the Estiva Assignment is invalid because its signatory, Stephan, lacked personal knowledge of its contents.  (*See id.* ¶ 71.)  Finally, the Aniels assert that they suffered damages as result of the Estiva Property foreclosure because they held a 50% interest in the Estiva Property.  (*See id.* ¶¶ 68–69.)  The Aniels contend that they are limited to seek money damages with respect to the Estiva Claims because the Estiva Property foreclosure mooted their quiet title claim and claim for injunctive relief.[22]  (*See id.* ¶ 78.)

---

[22]    Because the Aniels admit that their claims for injunctive relief and quiet title are mooted by the Estiva Property foreclosure, the Objection is **SUSTAINED** to the extent the Estiva Claims seek such relief with respect to the Estiva Property.

### F.    The Reply

The Trusts advance three arguments in their Reply.  First, the Trusts note that the Aniels'

reliance on *Glaski* to support their allegation that they have standing to contest the validity of the

Aniel Assignments or the Estiva Assignment is misplaced because "*Glaski* is an outlier and has

been soundly rejected by California courts as being inconsistent with California's foreclosure

jurisprudence."  (*Id.* ¶ 6 (citing *In re Residential Capital, LLC*, No. 12-12020 (MG), 2013 WL

8701997, at *5 (Bankr. S.D.N.Y. June 24, 2013)).)  Rather, the breadth of applicable case law

stands for the proposition that "in California . . . a borrower does not have standing to challenge

a foreclosure based on issues with the assignment of the deed of trust or the securitization of a

loan."  (*Id.* (citing Obj. ¶ 49).)  Additionally, the Trusts assert that the Aniels' allegations of

robo-signing are not supported by any relevant evidence.  (*Id.* ¶ 7.)  The only evidence offered by

the Aniels to support their allegation that the Estiva Assignment was robo-signed is a transcript

of a deposition of Stephan from another case.  (*Id.*)  As to the Aniels' assertion that the 2011

Aniel Assignment is void because Smoot did not have authority to execute such document, the

Trusts argue that Smoot did in fact have authority to execute the 2011 Aniel Assignment

pursuant to a power of attorney that HSBC Bank granted to GMACM (the "HSBC Bank Power

of Attorney," Priore Supp. Ex. A).  (Reply ¶ 8; *see* Priore Supp. Ex. A.)  Second, the Trusts

contend that the Aniels have not met their burden of proving the validity of the Estiva Claims

because:  (i) the Aniels lack standing to challenge the Estiva Property foreclosure (*see* Reply

¶¶ 10–11); and (ii) the Aniels fail to state a claim under the UCL because they have failed to

establish any wrongdoing of the Debtors with respect to the Estiva Loan (*see id.* ¶ 12.).  Finally,

the Trusts argue that the Aniels have not established the validity of the Aniel Claims because

they fail to state a claim for any of the causes of action underlying the Aniel Claims.  (*See id.*

¶¶ 13–31).

## II.    DISCUSSION

### A.    Claims Objections

Correctly filed proofs of claim "constitute prima facie evidence of the validity and

amount of the claim . . . .  To overcome this prima facie evidence, an objecting party must come

forth with evidence which, if believed, would refute at least one of the allegations essential to the

claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000).  By

producing "evidence equal in force to the prima facie case," an objector can negate a claim's

presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a

preponderance of the evidence that under applicable law the claim should be allowed." *Creamer*

*v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS),

2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted).  If the

objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of

its amount, the claimant need offer no further proof of the merits of the claim."  4 COLLIER ON

BANKRUPTCY ¶ 502.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if

"unenforceable against the debtor and property of the debtor, under any agreement or applicable

law."  11 U.S.C. § 502(b)(1).  To determine whether a claim is allowable by law, bankruptcy

courts look to "applicable nonbankruptcy law."  *In re W.R. Grace & Co.*, 346 B.R. 672, 674

(Bankr. D. Del. 2006).

Federal pleading standards apply when assessing the validity of a proof of claim.  *See,*

*e.g.*, *In re Residential Capital, LLC*, 518 B.R. 720, 731 (Bankr. S.D.N.Y. 2014); *In re DJK*

*Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party

has met their burden in connection with a proof of claim, bankruptcy courts have looked to the

pleading requirements set forth in the Federal Rules of Civil Procedure." (citations omitted)).

Accordingly, a claimant must allege "enough facts to state a claim for relief that is plausible on

its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Where a complaint pleads facts that are merely

consistent with a defendant's liability, it stops short of the line between possibility and

plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and internal quotation

marks omitted).  Plausibility "is not akin to a probability requirement," but rather requires "more

than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation and internal

quotation marks omitted).  The court must accept all factual allegations as true, discounting legal

conclusions clothed in factual garb.  *See, e.g.*, *id.* at 677–78; *Kiobel v. Royal Dutch Petroleum

Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded,

nonconclusory factual allegations in the complaint to be true" (citing *Iqbal*, 556 U.S. at 678)).

The court must then determine if these well-pleaded factual allegations state a "plausible claim

for relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task

that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

(citation omitted).  A claim is plausible when the factual allegations permit "the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation

omitted).  A claim that pleads only facts that are "merely consistent with a defendant's liability"

does not meet the plausibility requirement. *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 557 (2007)).  "A pleading that offers labels and conclusions or a formulaic recitation of

the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal

quotation marks omitted).  "Threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." *Id.* (citation omitted).  "The pleadings must

create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l

Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

To support claims grounded in fraud, Federal Rule of Civil Procedure ("FRCP") 9(b)

requires the claimant to "state with particularity the circumstances constituting fraud or mistake."

FED. R. CIV. P. 9(b).  FRCP 9(b) is grounded in the purpose "to protect the defending party's

reputation, to discourage meritless accusations, and to provide detailed notice of fraud claims to

defending parties." *Silverman v. Arctrade Capital, Inc. (In re Arctrade Fin. Techs. Ltd.)*, 337

B.R. 791, 801 (Bankr. S.D.N.Y. 2005) (internal quotation marks and citation omitted).

Although "[claims] drafted by *pro se* [claimants] are to be construed liberally, [] they

must nonetheless be supported by specific and detailed factual allegations sufficient to provide

the court and the defendant with 'a fair understanding of what the [claimant] is complaining

about and . . . whether there is a legal basis for recovery.'" *Kimber v. GMAC Mortg., LLC (In re

Residential Capital, LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (ellipsis in original)

(quoting *Iwachiw v. N.Y.C. Bd. of Elections*, 126 F. App'x 27, 29 (2d Cir. 2005)).

### B.    The Estiva Claims

#### 1.    Wrongful Foreclosure

The Aniels lack standing to challenge the validity of the Estiva Property foreclosure.

Federal courts are limited to adjudicating "cases" and "controversies" under Article III of the

United States Constitution. *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009).  The

standing doctrine "requires federal courts to satisfy themselves that the plaintiff has alleged such

a personal stake in the outcome of the controversy as to warrant his invocation of federal-court

jurisdiction." *Id.* at 493 (emphasis omitted) (citation and internal quotation marks omitted). "In order to establish standing, the plaintiff must demonstrate (1) an injury in fact, which is defined as a concrete and particularized invasion of a legally protected interest; (2) causation which is fairly traceable between the alleged injury in fact and alleged conduct of the defendant; and (3) redressability." *Anolik v. Bank of Am. Home Loans*, No. 2:11-cv-00406 (MCE), 2011 WL 1549291, at *3 (E.D. Cal. Apr. 21, 2011) (citing *Spring Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273–74 (2008)).

In *Anolik*, the court held that a plaintiff lacked standing to challenge the validity of non-judicial foreclosure proceedings taken with respect to certain real property because the plaintiff was not the borrower under the applicable deed of trust and had not formally assumed the borrower's obligations under the applicable loan despite making payments on the loan. *See id.* at *3. Although the plaintiff recorded his interest in the subject property in the form of a grant deed, the court noted that the grant deed was not recorded until several months after foreclosure proceedings were commenced by a notice of default and, therefore, the plaintiff lacked standing to challenge the foreclosure. *See id.* In reaching its holding, the court noted that were it "to permit [p]laintiff's now-asserted interest in the property to subvert the foreclosure proceedings, its ruling would amount to permitting any third party to halt foreclosure proceedings simply by claiming that it made some payment on the loan and did not thereafter receive the requisite procedure/notice attendant to foreclosure." *Id.*

The Aniels assert that they held an interest in the Estiva Property under the Estiva Grant Deed and a 50% interest in the Estiva Property "as agreed upon with the Estivas." (Opp. Ex. 1 ¶ 13.) However, they have not submitted any written agreement evidencing their 50% interest in the Estiva Property, nor have they alleged that they assumed the Estiva Loan. To the contrary,

the Aniels admit that their names were not on the Estiva DOT but state that they made regular

payments on the Estiva Loan to GMACM.  (*See* Priore Decl. Ex. A at 18.)  Additionally, as in

*Anolik*, the Estiva Grant Deed was not recorded until February 3, 2011, several years after the

foreclosure process was commenced upon the issuance of the 2008 Estiva NOD and several

months after the 2010 Estiva NOS was recorded.  Accordingly, the Aniels lack standing to

challenge the Estiva Property foreclosure.  The Objection to the Estiva Claims is **SUSTAINED**

as to the Aniels' wrongful foreclosure cause of action.

2.    *The Rosenthal Act*

The Aniels argue that the Debtors violated the Rosenthal Act by making false, deceptive,

and misleading statements in their attempts to collect payments on the Estiva Loan, including by:

(i) misrepresenting the identity of the owner of the Estiva Loan; (ii) claiming an interest in the

Estiva DOT through a fraudulent assignment; (iii) submitting the fraudulent Estiva Assignment;

(iv) asserting an inflated amount owed on the Estiva Loan, including false charges;

(v) attempting to foreclose on the Estiva Property without proper chain of title; and (vi) making a

misleading statement that ETS was the Trustee of the Estiva DOT.  (Priore Decl. Ex. A at 21–

22.)  The Trusts argue that the Aniels cannot state a claim under the Rosenthal Act because they

are not, and have never been, borrowers under the Estiva Note.  (Obj. ¶ 54.)  Additionally, the

Trusts argue that the Aniels fail to state a claim for violations of the Rosenthal Act because such

claim is based on alleged actions that do not constitute debt collection activities under the

Rosenthal Act.  (*See id.* ¶ 55.)

"The Rosenthal Act protects consumers from debt collection practices for 'consumer

debts,' created through transactions in which 'property, services or money is acquired on

credit . . . primarily for personal, family, or household purposes.'"  *Pittman v. Barclays Capital

Real Estate, Inc.*, No. 09 CV 0241 (JM), 2009 WL 1108889, at *3 (S.D. Cal. Apr. 24, 2009)

(quoting CAL. CIV. CODE § 1788.2(e)–(f)).  The Rosenthal Act also incorporates the provisions

of the FDCPA.  *Colbert v. Sage Point Lender Servs., LLC*, No. 1:14-cv-01626 (JLT), 2014 WL

7409291, at *4 (E.D. Cal. Dec. 30, 2014) (citing CAL. CIV. CODE § 1788.17).  Accordingly,

conduct that violates the FDCPA constitutes a violation of the Rosenthal Act as well.  *Id.*

(citations omitted).

Foreclosure on property pursuant to a deed of trust does not constitute debt collection

within the meaning of the Rosenthal Act.  *Valenzuela v. Wells Fargo Bank Nat'l Ass'n*, No. CV

F 13-1620 (LJO), 2014 WL 309438, at *17 (E.D. Cal. Jan. 28, 2014) (citations omitted); *accord*

*Collins v. Power Default Servs., Inc.*, No. 09-4838 (SC), 2010 WL 234902, at *3 (N.D. Cal. Jan.

14, 2010) ("The law is clear that foreclosing on a deed of trust does not invoke the statutory

protections of the [Rosenthal Act]." (collecting cases)).  While some courts have held that a

residential mortgage loan does not constitute a "consumer debt" within the meaning of the

Rosenthal Act, *see Tirabassi v. Chase Home Fin., LLC*, No. CV 14-08790 (BRO), 2015 WL

1402016, at *9 (C.D. Cal. Mar. 24, 2015) (collecting cases), their reasoning has been based "on

other decisions holding that foreclosure sales do not constitute 'debt collections' within the

meaning of the Rosenthal Act," *id.* (citing *Lopez v. Am Solutions, LLC*, 5:13-cv-01689 (CVW),

2014 WL 1272773, at *3 (C.D. Cal. Mar. 3, 2014)).  Recognizing the distinction between

foreclosure activities and debt collection activities, however, several courts have held that

"residential mortgage loans are not categorically excluded from the Rosenthal Act."  *Id.* at *10;

*see Lopez*, 2014 WL 1272773, at *3 ("[L]ike the FDCPA, the Rosenthal Act does not

categorically bar all claims based on a debt collector's communications in connection with a debt

secured by a residential mortgage loan."); *Walters v. Fidelity Mortg. of Cal.*, 730 F. Supp. 2d

1185, 1203 (E.D. Cal. 2010) ("[P]laintiff's claim arises out of debt collection activities beyond

the scope of the ordinary foreclosure process, and consequently, a remedy may be available

under the [Rosenthal Act]." (citation omitted)).

As set forth above, the Aniels lack standing to challenge foreclosure of the Estiva

Property and, therefore, they cannot state a claim under the Rosenthal Act for actions taken in

connection with foreclosure. Additionally, the Aniels do not adequately allege actions taken by

the Debtors in violation of the Rosenthal Act, as they simply allege legal conclusions in support

of their Rosenthal Act claim. *See Colbert*, 2014 WL 7409291, at *5 (dismissing Rosenthal Act

claim with leave to amend where plaintiff failed to allege "which [d]efendant contacted her and

when, who falsely stated the amount of [the] debt and when, how the debt was increased, or what

'unfair and unconscionable means' were used in the course of debt collection"). The Aniels do

not make sufficient factual allegations in support of their Rosenthal Act claim. *See Jacobson v.*

*Balboa Arms Drive Trust No. 5402 HSBC Fin. Tr.*, No. 10-CV-2195 (JM), 2011 WL 3328487, at

*8 (S.D. Cal. Aug. 1, 2011) (dismissing Rosenthal Act claim without prejudice as to defendant

who held beneficial interest in deed of trust at relevant time where none of the complaint's

"vague statements recite any facts that would give [d]efendants fair notice of what . . . the claim

is and the grounds upon which it rests"). Accordingly, the Objection to the Estiva Claims is

**SUSTAINED** as to the Aniels' Rosenthal Act cause of action.

### 3.    Fraud

The Aniels argue that the Debtors made false representations of material facts to the

Aniels, including by: (i) misrepresenting the identity of the owner of the Estiva Loan; (ii) filing

a Notice of Trustee's Sale without filing a Notice of Default; and (iii) stating that ETS was the

Trustee under the Estiva DOT without recording a Substitution of Trustee. (Priore Decl. Ex. A

at 22–24.) The Aniels assert that their reliance on these misrepresentations "cause[d] the debt to

rise on their property" (*id.* at 23) and allowed ETS to continue with foreclosure (*id.* at 24).

23

Additionally, the Aniels allege they relied on these misrepresentations when they filed the Aniel

Chapter 11 Case in order to stop foreclosure on the Estiva Property, and such misrepresentations

hampered their reorganization efforts.  (*Id.*)  The Trusts argue that the Aniels' fraud claim fails

because:  (1) the Debtors did not misrepresent HSBC as the true owner of the Estiva Loan (Obj.

¶ 57); (2) ETS recorded the 2008 Estiva NOD prior to recording any Notice of Trustee's Sale (*id.*

¶ 59); and (3) the Aniels fail to specifically allege how the Debtors interfered with the Aniels'

reorganization efforts (*id.* ¶ 57).

To state a claim for fraud under California law, a plaintiff must allege:  "(1) a knowingly

false representation by the defendant; (2) an intent to deceive or induce reliance; (3) justifiable

reliance by the plaintiff; and (4) resulting damages.'"  *Hasso v. Hapke*, 173 Cal. Rptr. 3d 356,

373 (Ct. App. 2014) (quoting *Serv. by Medallion, Inc. v. Clorox Co.*, 52 Cal. Rptr. 2d 650, 655

(Ct. App. 1996)).  A plaintiff must specifically plead every element of a fraud cause of action

with particularity.  *Serv. by Medallion, Inc.*, 52 Cal. Rptr. 2d at 655 (citation omitted); *see also*

FED. R. CIV. P. 9(b).

The Trusts rebut the Aniels' allegations that ETS improperly filed foreclosure notices by

submitting the 2008 Estiva Substitution, the 2008 Estiva NOD, and the 2009 Estiva NOS.

Although the 2008 Estiva Substitution and the 2008 Estiva NOD were each executed on

December 15, 2008 and recorded on December 17, 2008, the recorded document numbers

provided by the San Mateo County Recorder's Office indicate that the 2008 Estiva Substitution

was recorded before the 2008 Estiva NOD was recorded.  (*Compare* Priore Decl. Ex. H (Doc.

No. 2008-135230), *with* Priore Decl. Ex. G (Doc. No. 2008-135231).)  Additionally, the 2009

Estiva NOS was executed on March 18, 2009 and recorded on March 20, 2009, after the 2008

24

Estiva NOD was recorded.  (*See* Priore Decl. Ex. I.)  In response, the Aniels have not provided

any evidence supporting their allegations of fraud with respect to these notices filed by ETS.

Additionally, the Aniels fail to sufficiently plead a claim for fraud with specificity.  The

Aniels do not allege specific facts demonstrating their justifiable reliance on any alleged

misrepresentations, particularly since they were not parties to the Estiva Note or Estiva DOT.

The Estiva Complaint alleges that Pite Duncan, LLP ("Pite Duncan") was HSBC's counsel in the

foreclosure proceeding (Priore Decl. Ex. A at 12), and that Pite Duncan "committed 'fraud upon

the court' by filing an objection to [the Aniels'] reorganization plan by stating that HSBC is the

secured creditor when there [wa]s no evidence to prove th[at] HSBC was the secured creditor"

(*id.* at 23).  However, the Aniels do not specifically allege that GMACM or ETS made any

misrepresentations in connection with the Aniel Chapter 11 Case or the Aniel Chapter 7 Case

and, in any event, the Aniels have not adequately alleged how their reorganization efforts were

harmed by any of the purported misrepresentations.  Rather, the Aniels merely assert that they

could not properly reorganize the Estiva Property because they could not locate the actual owner

of the Estiva Loan.  (*See* Opp. ¶ 77.)  The Objection to the Estiva Claims is therefore

**SUSTAINED** as to the fraud cause of action.

### 4.    *The UCL*

The Aniels predicate their UCL cause of action on the same allegations underlying the

other causes of action asserted in the Estiva Action.  (*See* Priore Decl. Ex. A at 26.)

Additionally, the Aniels argue that the Debtors violated the UCL by (1) recording the Estiva

Assignment, which was robo-signed by Stephan (Opp. ¶ 76); and (2) concealing HSBC as the

owner of the Estiva Loan until foreclosure proceedings were initiated (*id.*).

The UCL prohibits "unfair competition," which includes "any unlawful, unfair or

fraudulent business act or practice . . . ."  CAL. BUS. & PROF. CODE § 17200.  Because the UCL

refers to unlawful, unfair, or fraudulent business acts or practices in the disjunctive, a claim for

violation of the UCL may be based on any of these independent theories of relief.  *See Birdsong*

*v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009) ("Each prong of the UCL is a separate and

distinct theory of liability." (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir.

2009))).  A claim brought under the UCL may also be based on the violation of another law.

*Leonel v. Am. Airlines, Inc.*, 400 F.3d 702, 714 (9th Cir. 2005) ("Under the statute, '[u]nfair

competition encompasses anything that can properly be called a business practice which at the

same time is forbidden by law.'" (quoting *Wilkinson v. Times Mirror Corp.*, 264 Cal. Rptr. 194,

206 (Ct. App. 1989))).  "By proscribing 'any unlawful' business practice, section 17200

'borrows' violations of other laws and treats them as unlawful practices that the unfair

competition law makes independently actionable."  *Chabner v. United of Omaha Life Ins. Co.*,

225 F.3d 1042, 1048 (9th Cir. 2000) (quoting *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,

973 P.2d 527, 539–40 (Cal. 1999)).  However, a defense to the predicate unlawful act is a

defense to the alleged violation of the UCL.  *People v. Duz-Mor Diagnostic Lab., Inc.*, 80 Cal.

Rptr. 2d 419, 432 (Ct. App. 1998) ("[T]he [UCL] requires a violation of law, and . . . a defense to

the underlying offense is a defense under the [UCL]." (citation omitted)); *Cel-Tech'*, 973 P.2d at

562 ("A plaintiff may . . . not plead around an absolute bar to relief' simply by recasting the

cause of action as one for unfair competition." (citation and internal quotation marks omitted));

*see also In re Residential Capital, LLC*, 518 B.R. at 739.

Because the Aniels fail to state a claim for any of the other causes of action asserted in

the Estiva Action, they must allege that the Debtors' actions constituted unfair or fraudulent

business practices.  An act or practice is "unfair" within the meaning of the UCL if it is "one that

either offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or

substantially injurious to consumers." *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th

Cir. 2008) (citation and internal quotation marks omitted). "A business practice is 'fraudulent'

within the meaning of Section 17200 if 'members of the public are likely to be deceived.'" *Bias

v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 934 (N.D. Cal. 2013) (quoting *Comm. on Children's

Television v. Gen. Foods Corp.*, 673 P.2d 660, 668 (Cal. 1983), *superseded by statute on other

grounds*, 2004 Cal. Legis. Serv. Prop. 64 (West 2004)). "The fraudulent practice 'may be based

on representations to the public which are untrue, and also those which may be accurate on some

level, but will nonetheless tend to mislead or deceive. . . . A perfectly true statement couched in

such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose

other relevant information, is actionable under the UCL.'" *Id.* (quoting *Klein v. Chevron U.S.A.,

Inc.*, 137 Cal. Rptr. 3d 293, 324 (Ct. App. 2012)).

The Aniels do not identify any actions taken by the Debtors that offend public policy or

are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. Nor

do they specifically allege that the Debtors engaged in fraudulent business practices. As set forth

above, the Aniels lack standing to challenge the Estiva Property foreclosure and, as a result, lack

standing to assert a UCL claim for the Debtors' actions in connection with foreclosure. To

establish standing to bring a UCL action, a plaintiff must "(1) establish a loss or deprivation of

money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that

the economic injury was the result of, i.e., *caused by*, the unfair business practice or false

advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 246 P.3d 877,

885 (Cal. 2011) (emphasis in original). While the Aniels assert that the Debtors recorded the

allegedly robo-signed Estiva Assignment (*see* Opp. ¶ 77), they cannot establish economic injury

caused by this allegedly unfair business practice because they lack standing to challenge the

Debtors' foreclosure on the Estiva Property.  Accordingly, the Objection to the Estiva Claims is

**SUSTAINED** as to the Aniels' UCL cause of action.

### C.    The Aniel Claims

#### 1.    *Wrongful Foreclosure*

The Aniels premise their wrongful foreclosure cause of action on the following

allegations:  (i) the Debtors lacked standing to foreclose on the Aniel Property because the Aniel

Note and Aniel DOT were not transferred to the DALT 2007-AO5 securitization trust before the

closing date for such trust; (ii) the Debtors engaged robo-signers to execute foreclosure

documents, including the Aniel Assignments and the Aniel Substitutions, and therefore such

documents are invalid; (iii) the Debtors failed to respond to the Aniels' Debt Validation Request;

(iv) GMACM violated section 2923.5 of the California Civil Code; and (v) ETS violated section

2934a(b) of the California Civil Code.  (*See* Priore Decl. Ex. B at 17–27.)  The Trusts argue that

they have submitted documentary evidence sufficient to rebut the prima facie validity of the

Aniels' allegations that:  (1) HSBC Bank was not the owner of the Aniel Loan at the time

foreclosure was commenced and, therefore, GMACM lacked standing to initiate foreclosure

proceedings on behalf of HSBC Bank; (2) the 2009 Aniel Assignment was executed by a robo-

signer with no authority to execute the document; and (3) the Aniel Substitutions were improper.

(*See* Obj. ¶¶ 73–77.)  Additionally, the Trusts contend that the Debtors complied with sections

2923.5 and 2924 of the California Civil Code by attempting to engage in loss mitigation efforts

with the Aniels before commencing foreclosure proceedings (*see id.* ¶¶ 82–84) and the Debtors

complied with statutory requirements in responding to the Debt Validation Request (*see id.*

¶ 81).

Because the evidence submitted by the Trusts does not establish the validity of the 2011

Aniel Assignment as a matter of law, the Court concludes that an evidentiary hearing is required

to resolve the Objection to the Aniels' wrongful foreclosure claim. The Objection to the Aniel

Claims is therefore **OVERRULED** without prejudice as to the Aniels' wrongful foreclosure

cause of action.

        a.    <u>The Aniels Lack Standing to Challenge Securitization of the Aniel
Loan</u>

California courts are divided on whether a mortgage borrower has standing to challenge

the securitization of his loan. *See Johnson v. HSBC Bank USA, Nat'l Ass'n*, No. 3:11-cv-2091

(JM), 2012 WL 928433, at *2 (S.D. Cal. Mar. 19, 2012) (collecting cases). However, "[t]he

majority position is that plaintiffs lack standing to challenge noncompliance with a PSA in

securitization unless they are parties to the PSA or third party beneficiaries of the PSA."

*Shkolnikov v. JPMorgan Chase Bank*, No. 12-03996 (JCS), 2012 WL 6553988, at *13 (N.D. Cal.

Dec. 14, 2012) (citations omitted); *see Sandri v. Capital One, N.A. (In re Sandri)*, 501 B.R. 369,

374 (Bankr. N.D. Cal. 2013) ("A majority of district courts in California have held that

borrowers do not have standing to challenge the assignment of a loan because borrowers are not

party to the assignment agreement." (citations omitted)); *but see Glaski*, 160 Cal. Rptr. 3d at 463

(holding that plaintiff's "factual allegations regarding postclosing date attempts to transfer his

deed of trust into the [securitization trust] are sufficient to state a basis for concluding the

attempted transfers were void"); *Vogan v. Wells Fargo Bank, N.A.*, No. 2:11-CV-02098 (JAM),

2011 WL 5826016, at *7 (E.D. Cal. Nov. 17, 2011) (denying motion to dismiss plaintiffs' UCL

claim, finding that "[p]laintiffs alleged that the recorded assignment was executed well after the

closing date of the [securitization trust] to which it was allegedly sold, giving rise to a plausible

inference that at least some part of the recorded assignment was fabricated").

In *Glaski*, the California Court of Appeal reversed the trial court's judgment dismissing

the plaintiff's causes of action relating to a nonjudicial foreclosure, holding that the plaintiff

asserted a "cognizable claim for wrongful foreclosure under the theory that the entity invoking

the power of sale . . . was not the holder of the [plaintiff's] deed of trust." 160 Cal. Rptr. 3d at

463. The court concluded that the plaintiff's "factual allegations regarding postclosing date

attempts to transfer his deed of trust into the [securitization trust] are sufficient to state a basis for

concluding the attempted transfers were void," *id.* at 462–63, because New York law, which

governed the securitization trusts, treats such transfer attempts as void, rather than merely

voidable, *see id.* (citing N.Y. EST. POWERS & TRUSTS § 7–2.4).

However, the Second Circuit's decision in *Rajamin v. Deutsche Bank National Trust

Company*, 757 F.3d 79 (2d Cir. 2014), casts doubt on the validity of the *Glaski* holding. In

*Rajamin*, the Second Circuit affirmed the district court's judgment of dismissal with respect to

mortgage borrowers' claims asserted against certain securitization trusts on the ground that the

borrowers lacked standing to assert claims relating to securitization of their loans. *See Rajamin*,

757 F.3d at 81. On appeal, the borrowers argued that attempted transfers of their loans to the

securitization trusts in contravention of the terms of the applicable PSAs rendered such transfers

void under section 7–2.4 of New York Estates, Powers and Trusts Law (the "EPTL"). *See id.* at

87 (citing N.Y. EST. POWERS & TRUSTS § 7–2.4). The Second Circuit rejected this argument,

holding that the borrowers, "as nonparties to those contracts, lack standing to assert any

nonperformance of those contracts," *id.* at 88, and, as non-beneficiaries of the securitization

trusts, lack standing to enforce the terms of the trusts, *id.* (citation omitted). The Second Circuit

noted that "even if [borrowers] had standing to make an argument based on EPTL § 7–2.4, on

the theory that a mortgagor has standing to challenge[] a mortgage assignment as invalid,

ineffective, or void, the weight of New York authority is contrary to [borrowers]' contention that

any failure to comply with the terms of the PSA rendered defendants' acquisition of [borrowers]'

loans and mortgages void as a matter of trust law." *Id.* (internal citations and quotation marks

omitted). The *Rajamin* court considered and rejected the *Glaski* court's interpretation of EPTL

section 7–2.4, concluding that because "unauthorized acts of a trustee may be ratified by the

trust's beneficiaries, such acts are not void but voidable; and that under New York law such acts

are voidable only at the instance of a trust beneficiary or a person acting in his behalf." *Id.* at 90.

The Second Circuit's decision in *Rajamin*, resolving an issue of New York law in the absence of

controlling authority by the New York Court of Appeals, is binding precedent on this Court.

Additionally, a majority of California courts hold that third parties who are not

beneficiaries of a securitization trust lack standing to challenge loan securitization.  *See Jenkins*

*v. JP Morgan Chase Bank, N.A.*, 165 Cal. Rptr. 3d 912, 927 (Ct. App. 2013) ("As an unrelated

third party to the alleged securitization, and any other subsequent transfers of the beneficial

interest under the promissory note, [the plaintiff] lacks standing to enforce any agreements,

including the investment trust's pooling and servicing agreement, relating to such transactions."

(citation omitted)); *Subramani v. Wells Fargo Bank N.A.*, No. C 13-1605 (SC), 2013 WL

5913789, at *3 (N.D. Cal. Oct. 31, 2013) ("[A]bsent guidance from the Ninth Circuit or the

California Supreme Court, the Court follows *Jenkins*, which appears to state the majority rule.");

*Newman v. Bank of N.Y. Mellon*, No. 1:12-CV-1629 (AWI), 2013 WL 5603316, at *3 n.2 (E.D.

Cal. Oct. 11, 2013) (declining to extend *Glaski*, noting that "*Glaski* is in a clear minority on the

issue").  Because the Aniels have not alleged that they are parties to, or beneficiaries of, the PSA

governing the DALT 2007-AO5 securitization trust, they lack standing to challenge the

securitization of the Aniel Loan.  The Objection to the Aniel Claims is **SUSTAINED** to the

extent such Claims are premised on the allegedly improper securitization of the Estiva Loan.

      **b.**    <u>Whether the Debtors Had the Power to Foreclose under the Aniel DOT</u>

A claim for wrongful foreclosure in California requires a plaintiff to allege:

> (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering.

*Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1145 (N.D. Cal. 2013) (citations omitted). "A sale of real property is illegal if the trustee did not have the power to foreclose under the deed of trust." *Kilpatrick v. U.S. Bank, N.A.*, No. 12–CV–1740 W (NLS), 2013 WL 4525571, at *3 (S.D. Cal. Aug. 26, 2013) (citing CAL. CIV. CODE § 2924(a)(1); *Gomes v. Countrywide Home Loans, Inc.*, 121 Cal. Rptr. 3d 819, 824 (Ct. App. 2011)).

"Under California law, there is no requirement for the production of an original promissory note prior to initiation of a nonjudicial foreclosure. Therefore, the absence of an original promissory note in a nonjudicial foreclosure does not render a foreclosure invalid." *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 117, 1186 (N.D. Cal. 2009) (internal citations omitted). The nonjudicial foreclosure process is instead "commenced by the recording of a notice of default and election to sell by the trustee." *Rivac v. Ndex W. LLC*, No. C 13-1417 (PJH), 2013 WL 6662762, at *6 (N.D. Cal. Dec. 17, 2013) (citation and internal quotation marks omitted). "Under California Civil Code section 2924(b)(4), a 'person authorized to record the notice of default or the notice of sale' includes 'an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee.'" *Halajian v. Deutsche Bank Nat'l Trust Co.*, No. 1:12-CV-00814 (AWI) (GSA), 2013 WL 593671, at *5 (E.D. Cal. Feb. 14, 2013).

The documents submitted by the Trusts establish that ETS had the authority to issue the

2008 Aniel NOD and the 2009 Aniel NOS.  MERS, as beneficiary of the Aniel DOT, had the

authority to appoint ETS as Substitute Trustee under the Aniel DOT pursuant to the 2008 Aniel

Substitution, which was executed on September 25, 2008 and recorded on September 29, 2008.

(*See* Priore Decl. Ex. X.)  *See In re Residential Capital, LLC*, 523 B.R. 24, 43 (Bankr. S.D.N.Y.

2014) (citing *Cedano v. Aurora Loan Servs., LLC (In re Cedano)*, 470 B.R. 522, 532 (9th Cir.

B.A.P. 2012) (holding that beneficiary of deed of trust had authority to appoint substitute

trustee).  Section 2934a(a)(1)(A) of the California Civil Code provides in relevant part:

> The trustee under a trust deed . . . may be substituted by the
> recording in the county in which the property is located of a
> substitution executed and acknowledged by . . . all of the
> beneficiaries under the trust deed, or their successors in
> interest . . . .

CAL. CIV. CODE § 2934a(a)(1)(A).  Under California law, a Substitution of Trustee is only

required to be executed, not recorded, before a notice of default is recorded.  *In re Cedano*, 470

B.R. at 532 ("[T]here is no requirement that [a] Substitution of Trustee be recorded, only that it

be executed." (citing CAL. CIV. CODE § 2924(b)(4); *Padayachi v. IndyMac Bank*, No. C 09-5545

(JF), 2010 WL 4367221, at *3 (N.D. Cal. Oct. 28, 2010))).  Consistent with this requirement, the

2008 Aniel Substitution was executed and recorded before the 2008 Aniel NOD was recorded, as

reflected by the document numbers provided by the San Mateo County Recorder's Office.

(*Compare* Priore Decl. Ex. X (Doc. No. 2008-108476), *with* Priore Decl. Ex. Y (Doc. No. 2008-

108477).)  Pursuant to the 2008 Aniel Substitution, ETS had the authority to issue the 2008 Aniel

NOD and the 2009 Aniel NOS.  *See* CAL. CIV. CODE § 2934a(d) ("A trustee named in a recorded

substitution of trustee shall be deemed to be authorized to act as the trustee under the mortgage

or deed of trust for all purposes from the date the substitution is executed by the mortgagee, beneficiaries, or by their authorized agents.").

The Aniels argue that the Aniel Assignments are invalid because they were robo-signed (*see* Priore Decl. Ex. B at 26–27.), but the Trusts contend that such allegations are conclusory and lack factual support (Obj. ¶ 75). According to the Trusts, the Aniels have provided no reason why Yamoah lacked authority to sign the 2009 Aniel Assignment on behalf of MERS (*see id.*), and the Trusts submit a MERS corporate resolution, dated April 29, 2009, appointing Yamoah as vice president of MERS (*see* Priore Decl. Ex. NN). The Trusts also assert that Smoot was granted authority to execute the 2011 Aniel Assignment on behalf of HSBC Bank pursuant to the "HSBC Bank Power of Attorney". (*See* Reply ¶ 8; Priore Supp. Ex. A.) However, the Trusts have not submitted evidence conclusively establishing the validity of the 2011 Aniel Assignment. The HSBC Bank Power of Attorney was executed in June 2013 (*see* Priore Supp. Ex. A), more than two years after Smoot executed the 2011 Aniel Assignment in February 2011 (*see* Priore Decl. Ex. CC). At the hearing the Trust stated that the PSA governing the DALT 2007-AO5 securitization trust granted Smoot authority to execute the 2011 Aniel Assignment (*see* Hr'g Tr. 102:24–103:4, Apr. 16, 2015, ECF Doc. # 8534); however, the Trust has not submitted this PSA or otherwise provided evidence establishing Smoot's authority to execute the 2011 Aniel Assignment on behalf of HSBC Bank. Whether Smoot indeed had authority to execute the 2011 Aniel Assignment is a contested matter. Thus, the Objection to the Aniel Claims is **OVERRULED** without prejudice as to the wrongful foreclosure cause of action.

### 2.    *The FDCPA*

The FDCPA "prohibits a 'debt collector' from making false or misleading representations and from engaging in various abusive and unfair practices." *Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1198 (C.D. Cal. 2008). "To state a claim for violation of the FDCPA, a plaintiff

must allege that the defendant is a 'debt collector' collecting a 'debt.'"  *Ines v. Countrywide Home Loans, Inc.*, No. 08cv1267 (WQH), 2008 WL 4791863, at *2 (S.D. Cal. Nov. 3, 2008) (citation omitted).  A "debt collector" is defined under the FDCPA as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6). Notably, the definition of debt collector does not include:

> any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

*Id.* § 1692a(6)(F).

"Mortgage servicers . . . are not 'debt collectors' within the meaning of the FDCPA." *Hernandez v. Green Tree Servicing LLC*, No. 2:14-cv-01438 (CAS), 2014 WL 2586932, at *2 (C.D. Cal. June 9, 2014) (citation omitted); *accord Arostegui v. Bank of Am.*, No. C 13-60009 (PJH), 2014 WL 1230762, at *6 (N.D. Cal. Mar. 21, 2014) ("Nationstar, as a loan servicer, is not a 'debt collector' and the servicing of plaintiff's loan is not 'debt collection.'" (citations omitted)).  Indeed, "the FDCPA's definition of debt collector does not include the consumer's creditors, a mortgage servicing company, or any assignee of the debt, so long as the debt was not in default at the time it was assigned."  *Katz v. Aurora Loan Servs., LLC*, No. 11-cv-1806 (IEG), 2012 WL 78399, at *2 (S.D. Cal. Jan. 10, 2012) (emphasis omitted) (citation and internal quotation marks omitted).  Additionally, "the overwhelming majority of courts within the Ninth Circuit have concluded that nonjudicial foreclosures do not constitute debt collection under the

FDCPA." *Pratap v. Wells Fargo Bank, N.A.*, No. 12-cv-06378 (MEJ), 2014 WL 3884413, at *9 (N.D. Cal. Aug. 7, 2014) (citing *Ligon v. JP Morgan Case Bank*, No. C 11-2504 (MEJ), 2011 WL 2550836, at *3 (N.D. Cal. June 27, 2011) (collecting cases)).

According to the Trusts, GMACM was acting as subservicer of the Aniel Loan before the Aniels defaulted on their loan in September 2008 and, accordingly, is not a "debt collector" as defined under the FDCPA. (Obj. ¶ 87.) The Aniels argue that the 2011 Aniel Assignment granted GMACM beneficial interest in the Aniel DOT and therefore GMACM is a debt collector under the FDCPA. (Opp. ¶ 52.) In response, the Trusts argue that this argument elevates form over substance; GMACM always acted as subservicer of the Aniel Loan and never assumed the role of owner of the Aniel Loan, and "[t]he legislative history of the FDCPA is clear that the law was not intended to apply to loan servicers, but rather to debt collectors that acquire their interest in the loan after the loan has defaulted." (Reply ¶ 16 (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1986) (referencing legislative history of FDCPA)).) Moreover, the Trusts contend that the FDCPA would not apply to the Debtors if they acquired ownership of the Aniel Loan because they "would no longer have been collecting a debt 'owed to another.'" (*Id.* ¶ 17 (citations omitted).)

The Aniels' arguments present a Morton's Fork:[23] Either GMACM serviced the Aniel Loan and is thereby not a debt collector under the FDCPA, *see Hernandez*, 2014 WL 2586932, at *2, or GMACM is not a debt collector because it obtained a beneficial interest in the Aniel DOT and collected loan payments on its own behalf, *see Pratap*, 2014 WL 3884413, at *9

---

[23]    A "Morton's Fork" is "a practical dilemma, [especially] one in which both of the choices or alternatives available disadvantage or discredit the chooser." *United States v. Johnson*, 482 F. App'x 137, 145 n.14 (6th Cir. 2012) (quoting Oxford English Dictionary (online ed., March 2012)).

("Wells Fargo is not a 'debt collector' within the meaning of the FDCPA because it was

attempting to collect its own debt." (citations omitted)).  Under either scenario, the Aniels have

not alleged that the Debtors are debt collectors as defined in the FDCPA and, consequently, the

Objection to the Aniel Claims is **SUSTAINED** to the extent they are premised on violations of

the FDCPA.

        *3.*     *RESPA*

       The Aniels contend that the Debtors violated RESPA by failing to acknowledge receipt

of their Debt Validation Request within five days of receipt.  (Priore Decl. Ex. B at 30.)

According to the Trusts, the Debtors received the Debt Validation Request on May 17, 2012 and

mailed the Aniels the Debt Validation Acknowledgement that same day.  (Obj. ¶ 38.)  The Trusts

argue that "[a] rebuttable presumption that an addressee received a mailed notice arises when the

mailing party submits sufficient evidence to demonstrate the notice was properly addressed and

mailed."  (Reply ¶ 19 (quoting *In re WorldCom, Inc.*, No. 02-13533 (AJG), 2005 WL 3875192,

at *3 (Bankr. S.D.N.Y. Oct. 27, 2005)).)  Because the Aniels have merely denied receipt of the

Debtors' responses to the Debt Validation Request and have offered no evidence to rebut the

presumption of receipt, the Trusts argue that the Aniels have failed to allege a RESPA claim.

(*Id.* ¶ 20.)

       Section 6(e) of RESPA provides that a borrower may submit a qualified written request

("QWR") to its loan servicer for "information relating to the servicing" of its loan.  12 U.S.C.

§ 2605(e)(1)(A).  The statute defines a QWR as

> a written correspondence, other than notice on a payment coupon
> or other payment medium supplied by the servicer, that—(i)
> includes, or otherwise enables the servicer to identify, the name
> and account of the borrower; and (ii) includes a statement of the
> reasons for the belief of the borrower, to the extent applicable, that
> the account is in error or provides sufficient detail to the servicer
> regarding other information sought by the borrower.

*Id.* § 2605(e)(1)(B).  Upon receipt of a QWR "for information relating to the servicing of such

loan, the servicer shall provide a written response acknowledging receipt . . . within 5 days

(excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken

within such period." *Id.* § 2605(e)(1)(A).  Additionally, the servicer has 30 days after receipt of

a QWR (excluding legal public holidays, Saturdays, and Sundays) to correct any errors identified

by the borrower or, after conducting an investigation, provide the borrower with a written

response setting forth why the servicer believes that its determination regarding the borrower's

account is correct or why the servicer cannot obtain the information requested by the borrower.

*Id.* § 2605(e)(2).  Failure to comply with any provision of section 6 of RESPA subjects a servicer

to liability for "actual damages to the borrower as a result of the failure." *Id.* § 2605(f)(1).

"It is well settled that 'proof that a letter properly directed was placed in a post office

creates a presumption that it reached its destination . . . .'" *Hogarth v. N.Y.C. Health & Hosps.

Corp.*, No. 97 Civ. 0625 (DAB), 2000 WL 375242, at *4 (S.D.N.Y. Apr. 12, 2000) (quoting

*Hagner v. United States*, 52 S. Ct. 417, 419 (1932)).  "Proof of mailing may be established either

by offering testimony of the person who actually mailed the letter or by showing that it was the

regular office practice and procedure to mail such a letter." *Mount Vernon Fire Ins. Co. v. E.

Side Renaissance Assocs.*, 893 F. Supp. 242, 245 (S.D.N.Y. 1995) (citations omitted).  The

presumption that a mailing was received is rebuttable by offering contrary evidence. *Hogarth*,

2000 WL 375242, at *4 (citations omitted).  However, "[t]he mere denial of receipt does not

rebut that presumption.  There must be–in addition to denial of receipt–some proof that the

regular office practice was not followed or was carelessly executed so the presumption that

notice was mailed becomes unreasonable." *Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 817 (2d

Cir. 1985) (citation omitted).

The Debt Validation Acknowledgement is dated May 17, 2012, the same date on which the Debtors received the Debt Validation Request, and is addressed to Erlinda Aniel at the Aniel Property address.  (*See* Priore Decl. Ex. JJ.)  The Debt Validation Acknowledgement indicates that GMAM is researching the Aniels' request and will respond within 30 calendar days.  (*See id.*)  The Debt Validation Response is dated June 8, 2012, within 30 calendar days of the Debt Validation Request, and is addressed to Erlinda Aniel at the Aniel Property address.  (*See id.* Ex. KK.)  The Debt Validation Response sets forth various responses to each of the inquiries made in the Debt Validation Request.  (*See id.*)

The Supplemental Priore Declaration sets forth that "[i]n accordance with the Debtors' regular course of business, shortly after an employee of the Debtors addressed a letter and placed it in the outgoing USPS mail, the employee would make a note in the Debtors' servicing notes that the letter had been sent."  (Priore Supp. ¶ 8.)  The "Aniel Servicing Notes "indicate that the Debt Validation Acknowledgement was sent to the Aniels on May 18, 2012, one day after the Debtors received the Debt Validation Request.  (*See id.* at 4.)  The Aniel Servicing Notes also indicate that the Debt Validation Response was sent to the Aniels on June 8, 2012, less than 30 days after the Debtors received the Debt Validation Request.  (*See id.* at 3.)  The Aniels have not submitted any evidence to rebut the presumption that the Debt Validation Acknowledgement or the Debt Validation Response was received by the Aniels.  Accordingly, the Objection to the Aniel Claims is **SUSTAINED** as to the RESPA claim.

### 4.    *Set Aside Trustee's Sale / Declaratory Relief*

The Aniels also seek to set aside the trustee's sale of the Aniel Property on the same grounds asserted in their wrongful foreclosure cause of action.  (*See* Priore Decl. Ex. B at 31– 34.)  The Aniels further assert that they are entitled to set aside the trustee's sale and obtain

declaratory relief because their debt owed under the Aniel Loan is fully satisfied and therefore the Debtors cannot enforce the Aniel DOT.  (*See id.* at 31–35.)

As set forth above, the Aniels' wrongful foreclosure cause of action cannot be resolved at this time.  As a result, to the extent the Aniels' seek to set aside the trustee's sale of the Aniel Property or obtain declaratory relief based on their allegation that the 2011 Aniel Assignment was improperly executed, they may proceed on that basis.  However, they may not seek to set aside the trustee's sale or obtain declaratory relief on the basis that their obligations under the Aniel Loan are fully satisfied.  While the Discharge Order entered in the Aniel Chapter 7 Case discharges the Aniels' personal liability on the Aniel Loan, it does not extinguish the lien securing the Aniel Loan.  *See U.S. Bank Nat'l Ass'n v. Friedrichs*, 924 F. Supp. 2d 1179, 1187 (S.D. Cal. 2013) (stating that a chapter 7 bankruptcy discharge only extinguishes the debtor's personal liability and the "creditor's right to foreclose on a mortgage survives the bankruptcy"); *In re Wilson*, 492 B.R. 691, 696 (Bankr. S.D.N.Y. 2013) ("Therefore, section 524(a)(2) acts only as a bar to the "'commencement or continuation'" of acts or actions to collect a discharged debt "'as a personal liability.'"  This provision does not prevent foreclosure of a lien on property.").

Accordingly, the Objection to the Aniel Claims is **OVERRULED without prejudice** as to the Aniels' causes of action to set aside the trustee's sale and for declaratory relief to the extent such causes of action are premised on the allegedly invalid 2011 Aniel Assignment.  The Objection to the Aniel Claims is **SUSTAINED** to the extent the Aniels seek to set aside the trustee's sale or obtain declaratory relief on the basis that their obligations under the Aniel Loan were fully satisfied pursuant to the Discharge Order.

5.    *Quiet Title*

Section 760.020 of the California Code of Civil Procedure provides that a party may establish title to real property against adverse claims by bringing an action to quiet title.  CAL.

40

CIV. PROC. CODE § 760.020(a); *see In re Residential Capital, LLC*, 518 B.R. at 738. To quiet

title in California, a plaintiff "must allege: "(1) a description of the property in question; (2) the

basis for plaintiff's title; and (3) the adverse claims to plaintiff's title." *Nissim v. Wells Fargo*

*Bank, N.A.*, No. C 12-1201 (CW), 2013 WL 1411505, at *5 (N.D. Cal. Apr. 8, 2013) (citations

and internal quotation marks omitted); *see also* CAL. CIV. PROC. CODE § 761.020. "In order to

satisfy the second requirement, [a] plaintiff must allege that he has discharged his debt,

regardless to whom it is owed." *Ananiev v. Aurora Loan Servs., LLC*, No. C 12-2275 (SI), 2012

WL 2838689, at *4 (N.D. Cal. July 10, 2012) (citations omitted).

The Trusts contend that the Aniels' quiet title claim fails because the Debtors do not

have, nor have they ever had, any interest in the Aniel Note. (Obj. ¶ 93.) Accordingly, the

Trusts assert that the Aniels cannot support any allegation that the Debtors hold or have held any

adverse claim to title of the Aniel Property. (*Id.*) Moreover, the Aniels' quiet title action fails,

the Trusts argue, because they have not alleged tender of the amount due under the Aniel Loan or

established that their obligations under the Aniel DOT have been satisfied. (*Id.*) According to

the Aniels, GMACM's beneficial interest in the Aniel DOT establishes that GMACM held a

claim to title of the Aniel Property adverse to the Aniels because the Aniel Note and the Aniel

DOT are inseparable. (Opp. ¶ 54.) Additionally, the Aniels argue that tender is not required

where it would be inequitable to do so, specifically where, as here, they challenge the validity of

the underlying debt because tender would constitute an affirmation of such debt. (*See id.* ¶¶ 56–

59.)

Generally, "under California law, a borrower may not assert a quiet title action against a

mortgagee without first paying the outstanding debt on the property." *Rockridge Trust*, 985 F.

Supp. 2d at 1158 (citations omitted); *accord Monreal v. GMAC Mortg., LLC*, 948 F. Supp. 2d

1069, 1079 (S.D. Cal. 2013) (citations omitted).  However, "the tender rule is not absolute and a

tender may not be required where it would be inequitable to do so."  *Sacchi v. Mortg. Elec.*

*Registration Sys., Inc.*, No. CV 11-1658 (AHM), 2011 WL 2533029, at *10 (C.D. Cal. June 24,

2011) (alteration omitted) (citation and internal quotation marks omitted).  Specifically, tender is

not required in an action challenging the validity of an underlying debt "since it would constitute

an affirmative of the debt."  *Onofrio v. Rice*, 64 Cal. Rptr. 2d 74, 80 (Ct. App. 1997) (citation

and internal quotation marks omitted).

    The Aniels dispute the validity of their debt owed under the Aniel Loan, asserting that:

(i) the Discharge Order relieved them of their obligations on the Aniel Loan (*see* Opp. ¶ 19); and

(ii) the debt was cancelled after the Aniel Loan was improperly securitized (*see id.* ¶ 59).  As set

forth above, the Aniels lack standing to challenge securitization of the Aniel Loan, and therefore

alleged irregularities in securitization cannot relieve them of their obligation to comply with the

tender rule.  Additionally, as set forth above, the Discharge Order relieved the Aniels from

personal liability on the Aniel Loan but did not affect the validity of the lien securing the Aniel

Property.  The Aniels therefore may not rely on the Discharge Order to excuse their compliance

with the tender rule.  *See McDonald v. IndyMac Mortg. Servs.*, No. C 12-4610 (MMC), 2013

WL 2252105, at *6 (N.D. Cal. May 22, 2013) (holding that plaintiffs' failure to plead tender of

debt discharged in bankruptcy precluded their ability to quiet title).  Since the Aniels have not

alleged their "meaningful ability or willingness to tender [their] indebtedness," *Hamilton v. Bank

of Blue Valley*, 746 F. Supp. 2d 1160, 1179 (E.D. Cal. 2010), the Objection to the Aniel Claims

is **SUSTAINED** to the extent the Aniels seek to quiet title to the Aniel Property.

### 6.    *Fraudulent Concealment*

    In order to state a claim for fraudulent concealment under California law, a plaintiff must

allege the following:  (1) the defendant concealed or suppressed a material fact; (2) the defendant

was under a duty to disclose such fact to the plaintiff; (3) the plaintiff was unaware of the fact

and would have acted differently if the fact was known to him; and (5) damages as a result of the

alleged concealment or suppression. *Bank of Am. Corp. v. Super. Ct.*, 130 Cal. Rptr. 3d 504,

509–10 (Ct. App. 2011) (citations omitted). Additionally, "[i]n order to establish fraudulent

concealment, the complaint must show (1) when the fraud was discovered; (2) the circumstances

under which the fraud was discovered; and (3) that the plaintiff was not at fault for failing to

discover it or had no actual or presumptive knowledge of facts to put him on inquiry." *Migliori

v. Boeing N. Am., Inc.*, 114 F. Supp. 2d 976, 983 (C.D. Cal. 2000) (citing *Bernson v. Browning-

Ferris Indus. of Cal., Inc.*, 873 P.2d 613, 615 (Cal. 1994)).

The Aniels argue that the Defendants knew that they lacked a cognizable interest in the

Aniel Loan yet misled the Aniels "about the status of their debt, attempt to collect the debt, and

[efforts] to foreclose the property." (Priore Decl. Ex. B at 36.) According to the Aniels, ETS

refused to provide an accounting of the debt owed under the Aniel Loan, refused to disclose the

address and location of the holder of the Aniel Loan, and filed notices of default and attempted to

collect payments on the Aniel Loan with knowledge that GMACM and HSBC Bank lacked a

cognizable interest in the Aniel Loan. (*See id.* at 37.) The Aniels also assert that GMACM

attempted to collect payments on the Aniel Loan knowing that HSBC Bank lacked an interest in

the Aniel Loan. (*Id.*) They further assert that GMACM told the Aniels that it had authority to

approve the Aniels for a loan modification if they stopped making payments on the Aniel Loan

knowing that it lacked such authority because HSBC Bank had no interest in the Aniel Loan.

(*Id.*) Finally, the Aniels premise their fraudulent concealment claim on the Debtors' alleged

failure to respond to their Debt Validation Request. (*See* Opp. ¶ 61.)

According to the Trusts, the Aniels fail to state a claim for fraudulent concealment because the Aniels have not established that the Debtors concealed any material fact related to the owner of the Aniel Loan, GMACM's authority to modify the Aniel Loan, or the Debtors' authority to foreclose on the Aniel Loan.  (Obj. ¶ 96.)  Additionally, the Trusts contend that the Aniels failed to rebut the presumption that the Aniels received the Debt Validation Acknowledgment and the Debt Validation Response and, therefore, cannot premise their fraudulent concealment claim on the Debtors' alleged failure to respond to the Debt Validation Request.  (*See id.* ¶¶ 94, 97.)

To the extent that the Aniels' fraudulent conveyance cause of action is based on the Debtors' alleged failure to respond to the Debt Validation Request, the Aniels fail to state a claim for the same reasons their RESPA claim fails.  However, the Aniels may have a viable fraudulent concealment claim based on their allegation that the 2011 Aniel Assignment was not validly executed.  The Aniel Complaint alleges that GMACM "continues to purport . . . that GMAC[M] is a [b]eneficiary entitled to foreclose on the [P]roperty."  (Priore Decl. Ex. B at 37.) The Aniel Complaint also alleges that Smoot had no authority to execute the 2011 Aniel Assignment (*see id.* at 21), and therefore the Debtors lacked the authority to foreclose on the Aniel Property (*see id.* at 26).  The Aniels assert that ETS knew that GMACM lacked a legal interest in the Aniel Note and Aniel DOT yet proceeded to foreclose on the Property.  (*See id.* at 37.)  As a proximate result of the Debtors' alleged fraudulent concealment of their inability to validly foreclose on the Aniel Property, the Aniels suffered and will continue to suffer damages. (*See id.* at 37–38.)  These allegations, construed liberally, state a claim for fraudulent concealment.  As a result, the Objection to the Aniel Claims is **OVERRULED** without prejudice as to the Aniels' fraudulent concealment cause of action.

7.    *The Rosenthal Act*

The Aniels assert that the Debtors violated the Rosenthal Act by:  (a) misrepresenting the identity of the owner of the Aniel Loan; (b) ETS falsely claiming that the Aniels owed $856,811.25 to GMACM; (c) submitting and recording fraudulent foreclosure documents; (d) falsifying the amount due under the Aniel Loan and refusing to explain the charges on the Aniels' account; and (e) attempting to foreclose on the Aniel Property without proper chain of title.  (*See* Priore Decl. Ex. B at 38–40.)  The Trusts contend that the Aniels' allegations are identical to the allegations underlying the Aniels' other asserted causes of action and fail for the same reasons.  (Obj. ¶ 98.)  The Trusts also assert that the Debtors foreclosure actions do not constitute debt collection activities under the Rosenthal Act and, furthermore, ETS's actions taken in connection with foreclosure are privileged under section 47 of the California Civil Code. (*See id.* ¶ 98–99.)

The Aniels do not adequately allege actions taken by the Debtors in violation of the Rosenthal Act, as they simply allege legal conclusions in support of their Rosenthal Act claim. *See Colbert*, 2014 WL 7409291, at *5 (dismissing Rosenthal Act claim with leave to amend where plaintiff failed to allege "which [d]efendant contacted her and when, who falsely stated the amount of [the] debt and when, how the debt was increased, or what 'unfair and unconscionable means' were used in the course of debt collection").  To the extent the Aniels' Rosenthal Act claim is based on the Debtors' foreclosure actions, they do not fall within the ambit of the Rosenthal Act.  *See Valenzuela*, 2014 WL 309438, at *17.  To the extent the Aniels' Rosenthal Act claim is premised on debt collection efforts taken outside the normal foreclosure process, the Aniels do not make sufficient factual allegations in support of their Rosenthal Act claim.  *See Jacobson*, 2011 WL 3328487, at *8'‴".  Thus, the Court **SUSTAINS** the Objection to the Aniel Claims to the extent they are premised on violations of the Rosenthal Act.

45

8.    *The UCL*

As already discussed in reference to the Estiva Claims, *see* Section II.B.4, *supra*, the

UCL prohibits "unfair competition," which includes "any unlawful, unfair or fraudulent business

act or practice . . . ." CAL. BUS. & PROF. CODE § 17200.  A claim based on a violation of the UCL

may be brought under any of the above prongs, may be based on the violation of another law,

and "encompasses anything that can properly be called a business practice which at the same

time is forbidden by law.'"  *Chabner*, 225 F.3d at 1042; *see also Birdsong v. Apple, Inc.*, 590

F.3d at 959; *Leonel v. Am. Airlines, Inc.*, 400 F.3d at 714;  *In re Residential Capital, LLC*,  518

B.R. at 739.

Because the Aniels state a claim for wrongful foreclosure and fraudulent concealment, as

set forth above, their UCL claim may proceed to the extent it is based on these theories.

However, the Aniel Complaint does not identify any other actions on the part of the Debtors that

are unfair or fraudulent within the meaning of the UCL.  *See McDonald*, 543 F.3d at 506

(defining "unfair" practices); *Bias*, 942 F. Supp. 2d at 934 (defining "fraudulent" practices).

While the Aniels assert that the Debtors indicated that they would have to be in default in order

to be approved for a loan modification (*see* Opp. ¶ 64), they do not specifically allege facts to

support this allegation.  *See* FED. R. CIV. P. 9(b).  For the above reasons, the Objection to the

Aniel Claims is **OVERRULED** without prejudice to the extent the Aniels' UCL claim is based

on the allegations underlying their surviving wrongful foreclosure and fraudulent concealment

claims.  The Objection to the Aniel Claims is **SUSTAINED** to the extent the UCL claim is based

on the Aniels' other allegations.

### III.    <u>CONCLUSION</u>

For the reasons set forth above, the Objection is **SUSTAINED** in part and

**OVERRULED** in part.  The Objection to the Estiva Claims is **SUSTAINED** and the Estiva

Claims are hereby **DISALLOWED** and **EXPUNGED** in their entirety.  The Objection to the

Aniel Claims is **OVERRULED** without prejudice as to the Aniels' causes of action premised on

the invalidity of the 2011 Aniel Assignment, including their wrongful foreclosure, set aside the

trustee's sale, declaratory relief, fraudulent concealment, and UCL causes of action.  The

Objection to the Aniel Claims is **SUSTAINED** as to all other causes of action.

The Trusts' counsel shall confer with the Aniels within fourteen (14) days from the date

of this Opinion to discuss possible settlement of the remaining issues in this dispute.  The parties

shall also confer regarding the scheduling of any discovery and an evidentiary hearing, as well as

further briefing before trial.  Following such conference, counsel shall promptly file a status

letter advising the Court of the proposed schedule.  The Trusts' counsel shall also schedule this

matter for a further status conference during the next available omnibus hearing date; the Aniels

may participate in the status conference by telephone.  The Court will enter a scheduling order

following that conference.


**IT IS SO ORDERED.**

Dated:    June 30, 2015
          New York, New York


_____*Martin Glenn*_____
MARTIN GLENN
United States Bankruptcy Judge

47