**UNITED STATES BANKRUPTCY COURT**
<u>**SOUTHERN DISTRICT OF NEW YORK**</u>

|  |  |
|---|---|
| In re: | ) |
|  | ) |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | ) |
|  | ) |
| Debtors. | ) |
|  | ) |

**NOT FOR PUBLICATION**

Case No. 12-12020 (MG)

Chapter 11

Jointly Administered

**MEMORANDUM OPINION AND ORDER SUSTAINING IN PART AND
OVERRULING IN PART THE RESCAP BORROWER CLAIMS TRUST'S
SEVENTY-SIXTH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY
BORROWER CLAIMS) AS TO CLAIM NUMBER 1083 FILED BY
<u>MARIA M. AND ELDA THOMPSON</u>**

*A P P E A R A N C E S:*

MORRISON & FOERSTER LLP
*Attorneys for ResCap Borrower Claims Trust*
250 West 55th Street
New York, New York 10019
By:    Norman S. Rosenbaum, Esq.
       Jordan A. Wishnew, Esq.
       Jessica J. Arett, Esq.

MARIA M. THOMPSON
*Pro Se*
29 General Lane
Willingboro, New Jersey 08046
By:    Maria M. Thompson

ELDA THOMPSON
*Pro Se*
137 Ellery Avenue
Newark, New Jersey 07106-3501
By:    Elda Thompson

**MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE**

A mother and daughter, Maria M. Thompson ("Maria Thompson") and Elda Thompson

(together with Maria Thompson, the "Thompsons"), filed Claim Number 1083 (the "Claim,"

ECF Doc. # 7967-3) against Debtor GMAC Mortgage, LLC ("GMACM"), the entity that

serviced their mortgage loan from October 2005 through February 2013.[1]  During that time, a

foreclosure action was filed in 2007, a repayment agreement curing the prior default was entered

into and completed in 2008, and the Thompsons ran into a handful of difficulties in meeting their

monthly loan payments and property taxes from 2009 through 2011.  The Thompsons' Claim

boils down to two main theories of relief:  (1) breach of contract based on improper servicing

conduct and wrongful initiation of foreclosure proceedings; and (2) violations of certain New

Jersey statutes relating to mortgage loans.

The ResCap Borrower Claims Trust (the "Trust"), a successor in interest to the Debtors,

filed an objection (the "Objection," ECF Doc. # 7736) to the Thompsons' Claim, asserting that

the Thompsons fail to state a viable claim for relief against GMACM.[2]  As set forth below, the

objection to the Thompsons' Claim is **SUSTAINED** in large part, but is **OVERRULED** to the

extent the Thompsons allege that GMACM improperly charged them interest.

## I.    BACKGROUND

### A.    The Thompsons' Loan History

JP Morgan Chase Bank, N.A. ("JP Morgan") originated a loan to the Thompsons in 2005,

secured by a mortgage recorded on May 12, 2005, encumbering real property located at 137

Ellery Avenue, Newark, New Jersey 07106 (the "Property").  (*See* Claim at 11–12.)  As

---

[1]    As explained below, the Claim was originally filed against Debtor Residential Capital, LLC ("ResCap") but was reclassified as a claim against GMACM by this Court's order.  (*See* ECF Doc. # 5895.)

[2]    The Objection is supported by the declarations of Kathy Priore ("Priore Decl.," ECF Doc. # 7736-3) and Norman S. Rosenbaum (ECF Doc. # 7736-4).  The Thompsons filed an opposition to the Objection (the "Opposition," ECF Doc. # 7862), and the Trust filed a reply (the "Reply," ECF Doc. # 7967), supported by a supplemental declaration of Ms. Priore (the "Priore Supp.," ECF Doc. # 7967-1).

explained below, the JP Morgan loan was repaid in full and this mortgage was released when the

Thompsons obtained a new loan from Ameriquest Mortgage Company ("Ameriquest").

On June 25, 2005, the Thompsons obtained a new loan from Ameriquest (the "Loan"),

evidenced by a promissory note (the "Note," Priore Supp. Ex. C) secured by a mortgage (the

"Mortgage," *id.* Ex. D) on the Property.  On July 5, 2005, the Loan was securitized.  (Obj. Ex. 1-

A at 7.)  The Note was transferred to GMACM, evidenced by Ameriquest's endorsement in

blank (*see id.* Ex. C; Reply ¶ 8), and the Mortgage was assigned to U.S. Bank N.A. ("U.S.

Bank") as trustee for the securitization trust, Citigroup Mortgage Loan Trust Inc. series 2005-09

("Citigroup") (*see* "Assignment of Mortgage," Priore Supp. Ex. E).  GMACM serviced the Loan

from October 20, 2005 until servicing was transferred to Ocwen Loan Servicing, LLC

("Ocwen") on February 16, 2013.  (Obj. Ex. 1-A at 7; Reply ¶ 8.)

With their proof of claim and Opposition, the Thompsons submitted a July 13, 2005 letter

addressed to Maria Thompson from Reconveyance Services of Chase Home Finance LLC,

providing that "Chase has received the funds to pay off [the Thompsons'] mortgage loan

referenced above. . . .  This letter will serve as proof that the above referenced loan is paid in

full."  (Claim at 10; Opp. Ex. A.)  The Thompsons also submitted a copy of the JP Morgan

mortgage, which includes a stamp indicating that the loan was "Cancelled of Record" on August

16, 2005.  (Claim at 11; Opp. Ex. B.)  The Thompsons allege that this letter and the stamp on the

mortgage are proof that they paid off their Loan in full and did not owe any obligations after

August 16, 2005.  (Opp. at 2.)  By contrast, the Trust alleges that the proceeds of the Ameriquest

Loan were used to pay off the prior JP Morgan loan; the Ameriquest Loan was *not* paid off and

the Thompsons agreed to perform certain obligations pursuant to that Loan.  (Reply ¶ 44.)

3

With respect to the Ameriquest Loan, the Trust alleges in its Objection that GMACM's servicing records show that the account first fell behind on October 16, 2006 when the Thompsons sent a payment by check with insufficient funds.[3]  (Obj. Ex. 1-A. at 9–10.)  The Thompsons' attempted payments on November 7, 2006 and January 16, 2007 were also returned to the Thompsons due to insufficient funds.  (*Id.* at 10.)  According to the Trust, GMACM's company policy required GMACM to place a restriction on an account once three payments were returned due to insufficient funds.  (*Id.*)  The Thompsons' account was restricted after the return of the January 2007 payment, requiring that payments thereafter be made only via certified funds.  (*Id.*)

The Trust alleges that although the Thompsons made their March 2007 payment that would have brought the account current again, the payment was ultimately returned because it was not provided in certified funds in accordance with the account's restriction.  (*Id.* at 10–11.)  The Thompsons then failed to make their payments in April and May 2007, causing the account to fall delinquent.  (*Id.* at 10.)

As a result of the delinquency, GMACM mailed the Thompsons a breach letter on June 5, 2007.  (*Id.* at 11.)  Despite receiving a payment from the Thompsons on June 21, 2007, GMACM returned the payment to the Thompsons because the Thompsons only submitted one of the three payments due on the account.  (*Id.*)  According to GMACM's guidelines in effect at the time, the Thompsons were required to pay a minimum of half of the total amount due in order for the payment to be accepted.  (*Id.*)  GMACM received a larger payment from the Thompsons on June

---

[3]       By insufficient funds, the Trust indicates that this meant that the Debtors received a payment from the Thompsons for the monthly amount due, but the Debtors then received notification from the Thompsons' bank that there were insufficient funds in the Thompsons' bank account to complete the payment.  (Obj. Ex. 1-A at 11.)

22, 2007, but this payment was also returned, this time because the bank notified GMACM that the Thompsons did not have sufficient funds in their bank account to satisfy the check. (*Id.*)

On July 10, 2007, the Thompsons' account was referred to foreclosure as the Thompsons failed to make their payments for March through July 2007. (*Id.*) GMACM received a payment from the Thompsons on July 16, 2007, which was returned to the Thompsons because it was only sufficient to pay for one of the five payments due on the account. (*Id.*) GMACM's guidelines at the time required the borrower of an account in active foreclosure to pay the total amount due, including foreclosure fees, in order for payments to be accepted. (*Id.*) The Thompsons' attempted payments on August 15 and September 14, 2007 were similarly returned. (*Id.*)

GMACM received workout information from the Thompsons on September 21, 2007. (*Id.* at 12.) GMACM determined that the Thompsons qualified for a 12-month repayment plan with a $4000 down payment and payment of $2215 due on the 30th of each month starting in September 2007 and ending in September 2008. (*Id.*) GMACM received the Thompsons' executed repayment plan agreement on October 30, 2007 (the "Repayment Agreement," EH Ex. BT-8).[4] (Obj. Ex. 1-A at 12.) Pursuant to this Repayment Agreement, the Thompsons successfully brought their Loan account current. (*Id.*)

On November 25, 2008, after the Repayment Agreeement was completed, Maria Thompson spoke with GMACM on the phone and asked why the interest rate on the Loan had increased from 5.75% to 6%. (*Id.* at 11.) GMACM advised her that the Loan is an adjustable rate mortgage. (*Id.*) Maria Thompson stated that she wanted a fixed rate mortgage and

---

[4]    All references to "EH Ex. BT-__" are to the Trust's exhibits admitted into evidence during the evidentiary hearing explained in more detail below.

GMACM advised her to contact the Direct Lending Department to discuss her options. (*Id.*)

Maria Thompson also stated that she had not received a monthly account statement that month.

(*Id.*) GMACM advised her that the December 2008 payment was due on the account and

verified the Thompsons' mailing address. (*Id.*) GMACM also advised her that the monthly

account statement was mailed to the correct address on November 4, 2008; GMACM then faxed

a copy of the account statement to Maria Thompson. (*Id.*)

On January 5, 2010, GMACM received a workout package from the Thompsons

requesting a loan modification. (*Id.*) On January 7, 2010, GMACM denied the loan

modification because there was no verifiable income to support the modification. (*Id.*) On the

same day, GMACM received a payment from the Thompsons, which was subsequently returned

to the Thompsons due to insufficient funds. (*Id.*) On January 11, 2010, GMACM attempted to

contact the Thompsons via telephone to advise them that the loan modification was denied, but

no one answered. (*Id.*)

On May 5, 2010, Maria Thompson called GMACM to ask why her credit bureau reported

a late payment. (*Id.* at 12–13.) GMACM advised her that they received the January 2010

payment 35 days after its due date. (*Id.* at 13.) Maria Thompson indicated that she wanted the

credit report amended, but GMACM advised that it would not amend the credit report because it

believed the information reported to be accurate. (*Id.*) GMACM further advised that if she

insisted that the information reported was incorrect, she could dispute the credit report with the

credit bureau. (*Id.*)

On May 14, 2010, GMACM received a letter from Maria Thompson disputing how the

Thompsons' Loan payments were posted. (*Id.*) GMACM responded by providing Maria

Thompson with the payment history for the Loan and a copy of the 12-month Repayment

Agreement from 2007 and 2008.  (*Id.*)  GMACM also advised the Thompsons that the credit

reporting of the delinquency of their Loan account had to continue because the account remained

delinquent and there was no agreement to amend the credit report.  (*Id.*)

On September 10, 2010, GMACM received another workout package from the

Thompsons requesting a loan modification.  (*Id.*)  On September 24, 2010, GMACM obtained

information from the Newark City Tax Department that the Thompsons were behind in paying

the third and fourth installments of their 2009 property taxes as well as the first and second

installments of 2010.  (*Id.*)  GMACM paid the delinquent taxes and therefore added an escrow to

the Thompsons' Loan account.  (*Id.*)  Maria Thompson called GMACM on October 2, 2010

inquiring why the escrow account was added to the Loan account.  (*Id.*)  GMACM advised her

that the escrow account was added as part of the loan modification process.  (*Id.*)  The requested

loan modification was ultimately denied on October 6, 2010 because the financial package

GMACM received included information that the Property was non-owner occupied.  (*Id.*)

GMACM sent the Thompsons a letter advising them of the denial on October 7, 2010.  (*Id.*)

Five days later, on October 12, 2010, GMACM mailed the Thompsons another letter informing

them that the escrow account was removed from the account because the loan modification had

been denied.  (*Id.* at 13–14.)  The letter further advised that there was a shortage that needed to

be paid for the delinquent taxes and that amount would be spread over a 12-month period for the

Thompsons to pay back.  (*Id.* at 14.)

On December 2, 2010, GMACM mailed the Thompsons a copy of the Mortgage,

demonstrating that the escrow was allowed to be added to protect the property (i.e., for payment

of past due property taxes).  (*Id.*)  On December 3, 2010, Maria Thompson called GMACM,

asserting that the escrow should not have been added to the Loan account because the

Thompsons had already made the tax and insurance payments; she further stated that the

foreclosure initiated on the account was illegal.  (*Id.*)  On December 6, 2010, GMACM again

spoke with Maria Thompson via telephone, at which time Maria Thompson stated that she did

not have to pay the negative escrow balance on the account.  (*Id.*)  GMACM advised her that the

account would not be escrowed in the future, but that she still needed to pay the shortage due as a

result of the prior escrow period.  (*Id.*)  In the same conversation, Maria Thompson disputed the

foreclosure that was commenced on the Property in 2007.  (*Id.*)  GMACM responded that it

would review her account.  (*Id.*)  On December 7, 2010, GMACM emailed the Thompsons

advising them that GMACM paid delinquent taxes on September 24, 2010 for taxes due for the

third and fourth installments of 2009 and the first, second, and third installments of 2010.  (*Id.*)

The email further advised that once the escrow balance was brought to zero, the escrow account

would be removed.  (*Id.*)

On December 11, 2010, the Thompsons called GMACM requesting an update on the

foreclosure dispute.  (*Id.*)  GMACM advised that it needed more time to review the account.

(*Id.*)  The Thompsons also stated that they continued to dispute the escrow on the account.  (*Id.*)

GMACM responded that the escrow account was not illegal and that the Thompsons needed to

pay the negative escrow balance to close out the escrow on the Loan account.  (*Id.*)

On December 30, 2010, the Thompsons called GMACM, again disputing the escrow

payments due on the account.  (*Id.*)  GMACM advised the Thompsons that the Mortgage allows

the escrow account to be added if necessary and advised that it would mail a copy of the

Mortgage to them for their review.  (*Id.* at 15.)  On January 5, 2011, GMACM mailed the

Thompsons a copy of the Mortgage.  (*Id.*)

On January 14, 2011, GMACM mistakenly sent the Thompsons a copy of a note that had no relation to them or their Property; the note was sent in response to a letter received by GMACM from the Thompsons on January 7, 2011.  (*Id.* at 8.)

On January, 25, 2011, the Thompsons called GMACM and stated that the payments made to GMACM in September through November 2007 were not posted to the account, but they stated their bank records show that the checks cleared at the bank.  (*Id.* at 15.)  GMACM requested that the Thompsons send the bank statements to validate GMACM's records.  (*Id.*)

On April 19, 2011, GMACM received a letter from the Thompsons, which the Trust agrees was a qualified written request (the "QWR") pursuant to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq*.  (*Id.*)  GMACM replied to the QWR on May 9, 2011, providing copies of the Note, documents of the Department of Housing and Urban Development, the Mortgage, and the payment history for the Loan.  (*Id.*)  Although it did not provide a copy of the Assignment of Mortgage, GMACM's response advised of the assignment.  (*Id.*)

From April through July 2011, the Trust alleges that the Thompsons failed to make their monthly Loan payments and as a result, GMACM referred the account to foreclosure on July 7, 2011.  (*Id.*)  The Thompsons made a payment on July 11, 2011, but GMACM returned the payment because it was insufficient in amount to bring the Loan account current.  (*Id.*)  On July 15, 2011, the Thompsons called to inquire about the returned payment, at which time GMACM advised that the Loan account was in active foreclosure.  (*Id.*)

On July 16, 2011, the Thompsons called GMACM and stated that a representative of GMACM came to their Property to do an inspection, which they considered harassment.  (*Id.*)  GMACM explained that the purpose of property inspections is to ensure that the Property is

occupied and being maintained.  (*Id.*)  GMACM mailed a copy of the Note, as per the

Thompsons' request, on July 19, 2011.  (*Id.*)  The Thompsons submitted another Loan payment

on July 21, 2011, but GMACM again returned the payment because it was insufficient in amount

to bring the account current.  (*Id.*)

At some point in the second half of 2011,[5] GMACM received a letter from the

Thompsons with documentation of tax payments made and requesting that GMACM send a

response to their attorney.  (*Id.* at 15–16.)  GMACM mailed the attorney prior responsive letters

it had sent to the Thompsons as well as the tax authorities' complaint and indicated that these

issues have been addressed and will not continue to be addressed any further.  (*Id.* at 16.)

GMACM advised that the tax receipts sent by the Thompsons reflect taxes paid in 2007 and

2008, but that GMACM paid taxes for 2009 and 2010.  (*Id.*)

GMACM returned payments from the Thompsons received on August 5, August 11,

August 17, September 6, September 12, September 15, September 21, September 23,  September

27, September 28, October 3, October 10, October 13, and October 17, 2011 because the

individual payments were not sufficient to bring the account current, which was required due to

the account's status in active foreclosure.  (*Id.*)

On April 20, 2012, GMACM spoke with Alex Ramos, a third-party authorized by the

Thompsons to speak on their behalf.  (*Id.*)  Ramos asked if the account was under review for a

loan modification.  (*Id.*)  GMACM indicated that the account was not under such review and was

in active foreclosure.  (*Id.*)  Ramos advised GMACM that the Thompsons would like to be

considered for a loan modification, but GMACM indicated that to do so the Thompsons would

---

[5]    The Trust does not provide an exact date or a copy of the letter.

need to complete a workout package for review.  (*Id.*)  On April 24, 2012, GMACM mailed a

workout package to the Thompsons for them to complete.  (*Id.*)

On February 16, 2013, GMACM transferred the servicing of the Loan to Ocwen.  (*Id.*)

At that time, GMACM had not received a completed workout package from the Thompsons.

(*Id.*)

### B.    The Claim

The Thompsons timely filed their Claim on October 9, 2012, asserting a secured claim in

the amount of $158,336.03 and a general unsecured claim in the amount of $500,000 against

ResCap.  (*See* Claim at 1.)  The Claim was reclassified as a general unsecured claim in the

amount of $658,336 against GMACM by way of this Court's order.  (*See* ECF Doc. # 5895.)

The Thompsons listed "breach of contract" as the basis for their Claim on their proof of claim

and attached a letter indicating that Elda Thompson "made the following payments to

GMAC[M] from August 2005 through September 2011, in which month GMAC[M] began to

deny accepting mortgage payments, for a grand total of $158,336,23; therefore, GMAC[M] owes

me $158,336.23."  (*See id.* at 1–2.)  The Thompsons also attached the following documents to

their proof of claim:  (1) a forensic review report prepared by the Foreclosure Law Center; (2)

the July 13, 2005 letter from Chase Home Finance LLC to Maria Thompson allegedly

evidencing the "[f]ull [p]ayment of [the Thompsons'] mortgage;" (3) a copy of the JP Morgan

mortgage with the stamp "Cancelled of Record" dated August 16, 2005; (4) a copy of the

Ameriquest Mortgage with handwritten notes; and (5) copies of certain pages of the Ameriquest

Note.  (*Id.* at 3–15.)

The Debtors requested additional information in support of the Thompsons' Claim; the

Thompsons response (the "Diligence Response," Priore Supp. Ex. A) is largely identical to the

Opposition.  (*Compare* Diligence Response at 4–104, *with* Opp. 1–13 & Exs.)  The Diligence

Response and the Opposition include several documents and provide arguments about the

relevancy of each in support of the Claim.  The following is a brief summary of the documents,

grouped based on the Thompsons' arguments.

First, the Thompsons attach copies of the July 13, 2005 letter from Chase Home Finance

LLC and the JP Morgan mortgage that were attached to the Claim.  (Opp. at 1, Exs. A–B.)  The

Thompsons highlight that these documents evidence that the JP Morgan loan was paid in full "by

Ameriquest" and the loan was cancelled on August 16, 2005.  (Opp. at 2.)  The Thompsons also

attach the foreclosure complaint (the "Complaint," EH Ex. BT-6) filed against them in 2007 and

the Repayment Agreement, asserting that these documents are based on the JP Morgan loan that

was paid in full and cancelled on August 16, 2005.  (*Id.* at 9, Exs. G–H.)  According to the

Thompsons, the Complaint was therefore filed illegally and the Repayment Agreement is, in

turn, based on the illegal foreclosure.  (*Id.*)  Relatedly, the Thompsons attach a copy of a letter

dated August 9, 2013 that the Thompsons received from Ocwen, which indicates that GMACM

serviced the loan from October 2005 through February 2013 and that Ocwen obtained servicing

rights as of February 16, 2013.  (*Id.* at 9–10, Exs. I–K.)  The letter states:  "Our records confirm

as of July 7, 2011 the loan was referred to foreclosure" and advised that the Thompsons should

contact Zucker, Goldberg & Ackerman to discuss the foreclosure.  (*Id.*)  The Thompsons allege

that they did contact the law firm and that the firm "denied knowledge of Ocwen and added that

a foreclosure was not filed nor enforced" on the Property "presently or in the past."  (*Id.*)  Again,

the Thompsons allege that the letter relates to the JP Morgan loan that was paid in full and

subsequently cancelled; as such, the Thompsons argue that GMACM improperly relies on

documents relating to the JP Morgan loan in an effort to make up for the lack of sufficient documentation of the Ameriquest Loan. (*Id.*)

Second, the Thompsons attach copies of the Mortgage and Assignment of Mortgage, asserting that the documents include handwritten notes evidencing that the documents have been altered. (*Id.* at 2, Exs. C, F.) The Thompsons assert that because of the alterations, the Assignment of Mortgage is "illegal [and] unacceptable as proof of GMAC[M's] ownership" of their Loan; the Thompsons similarly assert that the Mortgage is "illegal proof [and] not a valid document." (*Id.*) Third, the Thompsons provide a copy of someone else's mortgage, which GMACM mistakenly sent to the Thompsons; the Thompsons argue that "GMAC Mortgage needs to explain why the mortgage loan of [the other individuals] Identifier in Ogden, UT is the exact number of" the Thompsons' Loan. (*Id.* at 2, Ex. D.) Fourth, the Thompsons provide another copy of the forensic review report prepared by the Foreclosure Law Center. (*Id.* at 2, Ex. E.) According to the Thompsons, this report "shows the mortgage loan on said property did not pass the state regulations and that GMAC was also charging a higher interest rate than what is stated on the billing statements." (*Id.*) The Thompsons also assert that the report finds GMACM violated five different New Jersey state law regulations. (*Id.* at 3–9 (citing and discussing N.J. ADMIN. CODE § 3:1-16.2; *id.* § 3:15-9.2; N.J. REV. STAT. § 17:11C-28; *id.* § 46:10B-50).)

Finally, the Thompsons attach a copy of a quitclaim deed, dated June 10, 2005, in which Maria Thompson transfers the Property from herself to herself and Elda Thompson as joint tenants. (*Id.* at 10, Ex. L.) The Thompsons allege that the deed was recorded on August 16, 2005 and did not become "valid" until that date. (*Id.* at 10.) The Thompsons further assert that "[i]f GMAC[M] has a valid mortgage loan on [the Property], Elda M. Thompson's name should not appear as joint tenant in October 2005." (*Id.* at 10.)

Using these documents, the Thompsons appear to base their Claim (and Opposition) on the following primary assertions: (1) GMACM altered the original Mortgage and Assignment of Mortgage documents; (2) GMACM sent the Thompsons a copy of the wrong note; (3) GMACM violated various provisions of New Jersey state law with respect to the origination of the Loan and the foreclosure steps taken with respect to the Loan; (4) GMACM charged an interest rate that was different from what was stated on the monthly mortgage statements; (5) GMACM pursued an "illegal" foreclosure despite the fact that the JP Morgan loan was paid in full and cancelled on August 16, 2005; and (6) GMACM wrongfully returned payments the Thompsons made toward their Loan.  (*See generally id.*)

### C.    The Objection

Through the Objection, the Trust seeks to disallow and expunge the Claim in its entirety, asserting that GMACM is not liable to the Thompsons under any basis or theory of relief alleged in the Claim.  First, the Trust addresses several of the Thompsons' allegations which relate to their argument that the foreclosure was wrongful.  The Trust argues that the Thompsons fail to demonstrate that the Mortgage is "illegal" (and therefore show GMACM lacked standing to foreclose) due to the purported alterations on the document; the stamp highlighted by the Thompsons is not a valid basis for invalidating the mortgage and is an "office-use" stamp related to processing or handling of the Mortgage in connection with the 2007 foreclosure action.  (Obj. Ex. 1-A at 7.)  The Trust also disputes the Thompsons' assertion that the foreclosure was "illegal" in light of the purported paid off loan and August 16, 2005 cancellation.  (*Id.* at 9.) According to the Trust, the foreclosure related solely to the Ameriquest Loan, not the JP Morgan loan.  (*Id.*)  While the Trust acknowledges that the JP Morgan loan was indeed paid in full and cancelled, as the Thompsons allege, the Trust explains that the Ameriquest Loan proceeds were

used to pay off the JP Morgan loan, and the Ameriquest Loan thereafter was the effective loan.
(*Id.*)  Moreover, the Trust denies that GMACM is guilty of wrongful foreclosure, asserting that at
all relevant times GMACM abided by the terms of the Note and Mortgage, the Thompsons were
in default on their Loan obligations, GMACM took authorized steps to initiate foreclosure, and
GMACM engaged in reasonable loss mitigation efforts with the Thompsons.  (*Id.* at 10.)

Second, the Trust asserts that the Thompsons' allegations with respect to violations of
New Jersey law boil down to two assertions:  (1) GMACM charged the Thompsons fees that
were not permitted by the New Jersey Licensed Lender Act (the "LLA"); and (2) GMACM
violated a provision of the Save New Jersey Homes Act of 2008, by failing to provide the
Thompsons with a six month period of forbearance before proceeding with foreclosure.  (*Id.* at
8.)  According to the Trust, the first of these allegations fails because the fees at issue relate to
the origination of the Loan; GMACM was not involved in the Loan's origination.  (*Id.*)  The
Trust further asserts that the LLA does not provide a private right of action for borrowers.  (*Id.*)
As to the second allegation, the Trust argues that the law at issue has been inoperative since July
2, 2011 and therefore could not provide a valid legal basis for the Claim filed in October 2012.
(*Id.* at 8–9.)  The Trust also points out that the foreclosure action was filed in 2007, while the law
the Thompsons cite to only became effective as of July 2009.  (*Id.* at 9.)

Third, the Trust contends that the Thompsons' allegations relating to interest rates are
incorrect because GMACM correctly charged, collected, and applied payments in accordance
with the terms of the Note and Mortgage, which consisted of an adjustable rate mortgage.  (*Id.* at
9.)  The Trust further asserts that letters regarding the adjustable rate nature of the Loan were
sent to the Thompsons on December 24, 2009, June 23, 2010, December 24, 2010, June 23,
2011, December 26, 2011, June 26, 2012, and December 24, 2012.  (*Id.*)

Fourth, the Trust similarly addresses the Thompsons allegation that the Debtors refused to accept payments sent by the Thompsons between August 2005 through September 2011, by showing that GMACM's payment history for the Loan reflects that payments made during this time period (while GMACM serviced the Loan) were correctly applied to the Loan account. (*Id.* at 9–10.) Payments that were returned to the Thompsons during that time period were returned for legitimate reasons, including (1) insufficient funds to satisfy the amount due in the Thompsons' bank account from which the monthly payments were drawn, and (2) the Thompsons' failure to submit loan payments using certified funds when a restriction requiring such funds was placed on the account pursuant to GMACM's guidelines. (*Id.* at 10.)

Finally, the Trust further contends that the Thompsons fail to show how they were damaged by receiving the wrong note in January 2011. (*Id.* at 8.) The Trust asserts that the loan number of the other inviduals' note and the Thompsons' Loan number are in fact different. (*Id.*)

### D.    Procedural History

The Court held a hearing on the Objection on January 14, 2015 (the "Hearing"). At the Hearing, the parties disputed whether the Thompsons made certain monthly loan payments. (Jan. 14, 2015 Hrg. Tr. at 26:10–27:22, 31:8–33:4, ECF Doc. # 8021.) The Trust represented that the Thompsons had attempted to make payments during 2007 and 2008 that were rejected by GMACM because, for example, the Thompsons' bank notified GMACM that the bank account from which the funds were to be drawn contained insufficient funds. (*See id.* at 39:25–40:9; *see also* Obj. Ex. 1-A at 9–10.) The Thompsons represented that they made the payments and that no payments were returned due to insufficient funds. (*See* Jan. 14, 2015 Hrg. Tr. at 31:8–33:4.) The Thompsons also asserted that they had bank records at home showing that they made their monthly Loan payments in full and not one was returned in 2007 and 2008. (*Id.*) At the

conclusion of the Hearing, in an effort to resolve the disputed factual issue, the Court adjourned

the Objection to a date to be determined and directed that the Trust send a representative to the

Thompsons' home to review their documents and the bank records that allegedly showed that the

Thompsons made their Loan payments.  (*Id.* at 40:8–44:19.)

        When the parties could not agree on a schedule for a meeting, the Court entered an order

requiring that the parties meet before March 31, 2015, or return to Court on that date, at which

time the Thompsons would present their alleged evidence of payment.  (*See* ECF Doc. # 8269.)

The parties met before March 31, 2015, but the Trust requested a status conference be held on

that date.  (*See* ECF Doc. # 8343.)  The Court held a conference on March 31, during which the

parties indicated that they were unable to resolve the payment dispute.  (Mar. 31, 2015 Hrg. Tr.

at 18:3–19:11, 19:19–23:13, ECF Doc. # 8418.)  The Court therefore scheduled an evidentiary

hearing for April 20, 2015.  (*Id.* at 23:14–20.)  The April 20 hearing date was adjourned,

however, at Elda Thompson's request, citing health reasons.  (*See* ECF Doc. # 8479.)  The Court

held the evidentiary hearing on June 4, 2015 (the "Evidentiary Hearing"), limited to the issue

whether the Thompsons made monthly loan payments from January 2007 through August 2007,

when the foreclosure Complaint was filed at the instruction of GMACM.  (*See* June 4, 2015 Hrg.

Tr. at 7:13–8:2, ECF Doc. # 8755.)  Each party presented evidence to the Court with respect to

this issue that covered the period beginning in the end of 2006 and continuing through 2008.

Two witnesses testified at the Evidentiary Hearing:  (1) Lauren Graham Delehey for the Trust;

and (2) Maria Thompson for the Thompsons.  Both sides submitted exhibits, some of which were

admitted in evidence.  At the conclusion of the Evidentiary Hearing, the Court took the matter

under submission.

### E.    Findings of Fact Based on the Evidentiary Hearing[6]

Pursuant to the terms of the Loan, the Thompsons were obligated to pay $1,227.78 each

month.[7]  (*See* EH Ex. BT-A ¶¶ 11–13; *see also* EH Ex. BT-1 at 16.)  The Thompsons were

current on their payment obligations through September 2006; their first set-back arose in

October 2006.  (*See* EH Ex. BT-1 at 15–16.)  The Thompsons submitted payments in the amount

of $1,227.78 on October 16, November 7, again on November 7, November 15, December 13,

and December 14, 2006.  (*See id.* at 14–15.)  Of these payments:  (i) the October 16 payment was

returned on October 24, 2006 due to insufficient funds (codified as "PR1" in the Loan's payment

history), leaving the account current only through September 1, 2006 (*see id.* at 15); (ii) the first

November 7, 2006 payment brought the account current as of October 1, 2006 (*see id.*); (iii) the

second November 7 payment, which would have brought the account current to November 1,

2007, was returned on November 9, 2006 because it was a "duplicate payment" (*see id.*; *see also*

*id.* at 159), leaving the account current only as of October 1, 2006 (*see id.* at 15); (iv) the

November 15 payment was returned on November 20, 2006 due to insufficient funds, leaving the

account current through October 1, 2006 (*see id.*); (v) the December 13 payment was applied to

the Loan account, leaving the account current through November 1, 2006 (*see id.*); and (vi) the

December 14, 2006 payment was applied to the account, leaving the account current through

December 1, 2006 (*see id.* at 14–15).

The Thompsons also made a $1,227.78 payment on January 16, 2007 that was returned

on January 25, 2007 due to insufficient funds.  (*See id.* at 14, 157.)  GMACM's payment history

---

[6]    The following recitation of facts in this section of the Opinion represents the Court's findings of fact pursuant to Federal Rule of Bankruptcy Procedure 7052  based on the evidence presented at the Evidentiary Hearing.

[7]    Some of the entries in the Loan's payment history indicate that the Thompsons submitted payments in the amount of $1,227.77 that were accepted by GMACM.  (*See* EH Ex. BT-1 at 16.)

records indicate that a second payment was reversed on the same date due to insufficient funds,

leaving the account current only as of November 1, 2006, but the servicing notes and Ms.

Delehey's testimony do not clarify the date this reversed payment was made by the Thompsons.

(*See id.* at 14, 157.)  The Thompsons subsequently made two payments in February 2007: . (1) a

$1400 payment on February 2, 2007, which brought the account current through January 1,

2007; and (2) a $1,227.78 payment on February 20, 2007, which brought the account current

through February 1, 2007.  (*Id.* at 14.)  The Thompsons made their last timely payment on March

23, 2007, which was applied and brought the account current through March 1, 2007.  (*Id.* at 13.)

GMACM's payment history shows that no payments were received from the Thompsons

between the March 23, 2007 payment and a subsequent June 20, 2007 payment in the amount of

$1,227.78.  (*Id.; see also* June 4, 2015 Tr. at 38:5–7.)  At the Evidentiary Hearing, Maria

Thompson testified that she does not have any evidence demonstrating that she or Elda

Thompson made any other Loan payments in March, April, or May 2007.  (June 4, 2015 Hrg. Tr.

at 108:14–110:21.)

Consistent with GMACM's policy to send a borrower a letter when there are two

payments due, GMACM sent a letter to the Thompsons on May 11, 2007 (*see id.* at 38:5–42:15),

stating:  "Your account is in default under the terms of the mortgage.  The mortgage payments of

$2455.54 for the months of 04/01/07 through 5/01/07, are past due" (the "May 2007 Default

Letter," EH Ex. BT-2).  The May 2007 Default Letter also provides:  "Your account could be

referred to foreclosure if the default is not resolved.  We would like to discuss possible loss

mitigation options, which may be available to you to resolve the delinquency and avoid

foreclosure."  (*Id.* at 1.)  It further provides definitions of potential options, including

"REPAYMENT PLAN," "LOAN MODIFICATION," "SHORT SALE," and "DEED IN LIEU OF FORECLOSURE." (*Id.* at 1–2.)

If a loan delinquency is not resolved after GMACM sends a letter in the form of the May 2007 Default Letter, GMACM sends a notice of intent to foreclose, also known as a breach letter. (June 4, 2015 Hrg. Tr. at 42:19–24.) On June 5, 2007, GMACM mailed the Thompsons a breach letter, dated June 4, 2007 (the "Breach Letter," EH Ex. BT-3; *see also* EH Ex. BT-1 at 155). The Breach Letter stated that the Thompsons failed to make payments for the months of April, May, and June 2007 and owed a total of $3,817.32 for missed payments, accrued late charges, and other fees. (EH Ex. Bt-3 at 1.) The Breach Letter states that the Thompsons "may cure [their] default by paying the aforesaid amount plus any additional monthly payments and late charges which fall due during this period, by bank check or certified funds so it is received on or before 7/04/07 . . . ." (*Id.* at 1.) The Breach Letter further states: "[e]ven if a foreclosure is started, you may reinstate your account until a judgment in foreclosure is entered." (*Id.* at 2.)

In June 2007, after receiving the Breach Letter, the Thompsons fell further behind on their Loan payments. The June 20, 2007 payment was returned on June 21 because the payment received was only enough to cover one month's payment when the account was delinquent for three months. (EH Ex. BT-1 at 13, 155.) This returned payment resulted in the account remaining current only through March 1, 2007. (*Id.* at 13.) On June 26, 2007, the prior February 22, 2007 payment was reversed and returned to the Thompsons due to insufficient funds, leaving the account current only through February 1, 2007. (*Id.* at 13, 155.)

GMACM sent the Thompsons another letter on July 4, 2007 (the "July 2007 Letter," EH Ex. BT-4), due to the Thompsons' failure to reinstate the account by this date in accordance with the Breach Letter. The July 2007 Letter states: "You were previously notified of your default

and the demand for reinstatement on the above account. [¶] Because you have failed to reinstate, your account may be sent to an attorney to initiate foreclosure action." (*Id.*)  The letter further states:  "If you wish to discuss possible alternatives to avoid the foreclosure action, please contact us . . . ." (*Id.*)

The Thompsons' Loan account was referred by GMACM to counsel to pursue foreclosure on July 11, 2007.  (*See* EH Ex. BT-5 at 46, Entry # 202.)  The Thompsons attempted to make a Loan payment in the amount of $1,227.78 on July 13, 2007, but this payment was rejected and returned to the Thompsons because it only satisfied one of the five outstanding monthly payments; the account therefore remained current only through February 1, 2007.  (EH Ex. BT-1 at 13, 152.)  Zucker, Goldberg & Ackerman, the foreclosure counsel retained by GMACM, filed the foreclosure Complaint (*see* EH Ex. BT-6) on behalf of Citigroup against the Thompsons on August 3, 2007 in the Superior Court of New Jersey, Chancery Division, Essex County (*see* EH Ex. BT-5 at 42, Entry # 185).

The Thompsons again attempted to make a payment on August 13, 2007, but this payment was not applied to the account because it was not sufficient to cover outstanding arrears and was ultimately returned to the Thompsons due to insufficient funds on August 23, 2007. (*See* EH Ex. BT-1 at 12–13, 145, 148.)  Maria Thompson mailed GMACM a letter dated August 31, 2007 (the "August 2007 Letter," EH Ex. BT-7),[8] which GMACM references in its September 10, 2007 servicing notes (*id.* at 144).  In the letter, Maria Thompson writes:

> Elda had paid the mortgage at 137 Ellery Avenue, Newark NJ
> since 1998.  She confronted the inability to make mortgage

---

[8]    The August 2007 Letter is executed by both Maria and Elda Thompson and includes a stamp of a notary public below the Thompsons' signatures.  (*Id.*)  In her testimony during the Evidentiary Hearing, Maria Thompson acknowledged that the letter contains her signature, but she disputed having executed the letter before a notary public.  (June 4, 2015 Hrg. Tr. at 95: 8–98:8.)  Whether her signature was notarized is irrelevant to the dispute between the parties.

> payments in April 2007, when Macy's, her former employer,
> delayed her disability payments. Nonetheless, due to Elda's health
> although Elda would still be responsible for the mortgage payment,
> I, Maria M. Thompson, would be designated to administer her
> Social Security income and the payment of all her debts.
> Therefore, we would like to change Elda's mailing address . . . .

(EH Ex. BT-7 at 1.)

The Thompsons attempted to make a payment in the amount of $1,227.78 on September

13, 2007, but this payment was rejected and returned on September 14, 2007 because it only

satisfied one of the eight outstanding monthly payments. (EH Ex. BT-1 at 12, 143.) On

September 21, 2007, GMACM was contacted by Bob Thomas ("Thomas"), an authorized third-

party on behalf of the Thompsons, regarding a short sale request. (*Id.* at 143.) GMACM

received financial information in support of the request and discussed loss mitigation options

with Thomas over the course of the next month. (*See id.* at 139–143.) Ultimately, the

Thompsons were approved for the foreclosure Repayment Agreement (*see* EH Ex. BT-8"),

requiring the Thompsons to make an initial $4000 payment by October 31, 2007 and subsequent

monthly payments of $2,215.45 at the end of each month through September 30, 2008 (*id.* at 5).

GMACM and the Thompsons executed the Repayment Agreement on October 30, 2007. (*See*

EH Ex. BT-9.)

The parties agree that the Thompsons made all of the payments required by the

Repayment Agreement. (*See* EH Ex. BT-1 at 9–11.) These payments resulted in the

Thompsons' Loan account becoming current through September 1, 2008, thereby curing the

Thompsons' 2007 default retroactively. (*See id.*)

The Thompsons only submitted one exhibit, which was admitted into evidence at the Evidentiary Hearing.  (*See* "Exhibit 2," EH Ex. T-2 at 8.)[9]  Maria Thompson testified that page eight of this exhibit was mailed to the Thompsons by GMACM at the Thompsons' request, but it is unclear when the document was sent or received.  (*Id.*)  The document is entitled "2007 DETAIL BY TRANSACTION" and contains a chart with several rows and columns.  (*Id.*)  At the Evidentiary Hearing, the Thompsons argued that Exhibit 2 demonstrates that they were never in default in 2007 prior to GMACM's initiation of foreclosure proceedings because the "LAST PAID" column indicates that monthly payments were paid in January, February, March, April, May, June, and July 2007.  (*Id.*)  But the testimony of the Trust's witness, Lauren Delehey, however, made it clear that the Thompsons' Exhibit 2 corresponds directly with the Trust's Exhibit BT-1, or payment history for the Thompson's Loan.  Exhibit 2 illustrates the effect of the Thompsons' Repayment Plan.  While the "LAST PAID" column appears at first glance to indicate that the Thompsons "paid" during those first seven months in 2007, the column directly to the right entitled "POST DATE" shows that the actual payments were made and/or posted on October 30, November 29, and December 26, 2007.  (*Id.*)  The later 2007 payments relate back and were applied to cure the default on the Loan for the months of January through July 2007.  (*Id.*)  The Court therefore finds and concludes that Exhibit 2 does not demonstrate that the Thompsons made payments in April or May 2007, nor does it demonstrate that the Thompsons made payments in June, July, August, or September 2007 that should have been applied to the Loan account to bring it current.  Contrary to the Thompsons' argument that GMACM accepted

---

[9]    All citations to "EH Ex. T-2" refer to the one page of the Thompsons' exhibit that was admitted into evidence at the Evidentiary Hearing.

and deposited the Thompsons' payments, the Court finds that GMACM returned payments to the Thompsons because the payments were insufficient.[10]

## II.    DISCUSSION

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

Federal pleading standards apply when assessing the validity of a proof of claim. *See, e.g.*, *In re Residential Capital, LLC*, 518 B.R. 720, 731 (Bankr. S.D.N.Y. 2014); *In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure." (citations omitted)). Accordingly, the Thompsons must allege "enough facts to state a claim for relief that is plausible on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). Plausibility "is not akin to a probability requirement," but rather requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation and internal

---

[10]    During the Thompsons' cross-examination of Ms. Delehey, it became apparent that Ms. Delehey did not have personal knowledge sufficient to explain each entry in GMACM's payment history, including certain entries labeled "UFU" that affect the principal balance of the account. (*See, e.g.*, June 4, 2015 Hrg. Tr. at 64:17–69:18.) While the cross-examination called into question Ms. Delehey's ability to testify as to the Loan's payment history, the Court finds that Ms. Delehey was able to testify to the payment history and servicing notes from March through July 2007 because during that time period the "UFU" entries do not affect the principal balance, as other (perhaps accounting) entries directly correlate and counteract the "UFU" entries. (*See* EH Ex. BT-1 at 13–14, 148–57.)

quotation marks omitted). The court must accept all factual allegations as true, discounting legal

conclusions clothed in factual garb. *See, e.g.*, *id.* at 677–78; *Kiobel v. Royal Dutch Petroleum

Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded,

nonconclusory factual allegations in the complaint to be true" (citing *Iqbal*, 556 U.S. at 678)).

The court must then determine if these well-pleaded factual allegations state a "plausible claim

for relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task

that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

(citation omitted). A claim is plausible when the factual allegations permit "the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation

omitted). A claim that pleads only facts that are "merely consistent with a defendant's liability"

does not meet the plausibility requirement. *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 557 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of

the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal

quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." *Id.* (citation omitted). "The pleadings must

create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l

Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

Here, the Thompsons' Claim is premised primarily on two theories of relief: breach of

contract[11] and violations of New Jersey statutory law. In support of their Claim, the Thompsons

---

[11]    The Thompsons state in their proof of claim that their Claim is based on "breach of contract," but they also
allege in their Diligence Response and Opposition that GMACM wrongfully filed a foreclosure Complaint against
them. Under New Jersey law, it is unclear whether a claim for wrongful foreclosure, alleging lack of standing for
instance, may be asserted outside of the foreclosure action itself. *See, e.g.*, *Pashko v. Bank of Am. N.A.*, No. 14-3649
(ES), 2015 WL 778715, at *3 (D. N.J. Feb. 23, 2015) (dismissing complaint under the entire controversy doctrine
that alleges wrongful foreclosure "in connection with the Loan that [the plaintiffs] argue does not exist" because the

(Footnote continues on next page.)

raise several different factual allegations, including the allegations made by the Thompsons that they made and GMACM accepted and credited certain payments in 2007 prior to the filing of the foreclosure Complaint.  The Evidentiary Hearing held by the Court and described above specifically related to the Thompsons' allegations that they made and GMACM accepted these payments.

The Court addresses each of the Thompsons' theories of relief below and, in turn, each of the Thompsons' allegations in support.  The Court finds and concludes that the Trust adequately shifted the burden to the Thompsons and the Thompsons failed to meet their burden to establish the viability of their Claim in their Opposition, at the Hearing, and at the Evidentiary Hearing, except to the extent the Thompsons allege that GMACM improperly charged them interest.  As such, the Objection to the Claim is **SUSTAINED** in part and **OVERRULED** in part.

### A.    Breach of Contract

The Thompsons argue that GMACM breached the terms of the Note and Mortgage in several ways.  Some of the allegations relate to the 2007 foreclosure action and whether it was properly initiated, including that:  (1) the Thompsons were not in default on their Loan payment obligations at the time the foreclosure Complaint was filed; (2) the Mortgage and Assignment of Mortgage were altered and are invalid, and therefore are insufficient to establish GMACM's standing to foreclose; and (3) the Loan was paid in full and cancelled as of August 16, 2005, and therefore there was no valid loan upon which GMACM could foreclose.  Other allegations the

---

(Footnote continued from previous page.)

"claims arise from the existence of the Loan and [the Bank's] rights thereunder," which are "germane to the foreclosure action").  The Trust did not raise this argument in its Objection.  Nevertheless, the allegations relating to the purported wrongful foreclosure also could be construed as supporting a breach of contract claim (i.e. the Thompsons allege that GMACM breached the Note and Mortgage in filing a foreclosure Complaint against the Thompsons when they were not in default).  For purposes of this Opinion, the Court will assume that the cause of action may be asserted, but will address the wrongful foreclosure allegations under the Court's analysis of the Thompsons' potential breach of contract cause of action.

Thompsons make relate to GMACM's handling or servicing of the Loan, including that:  (1)

GMACM wrongfully returned payments the Thompsons made from August 2005 through

September 2011; (2) GMACM sent the Thompsons the wrong note in January 2011, which

allegedly has the same "Identifier" number as the Thompsons' Note; (3) GMACM wrongfully

set up an escrow on their Loan account for property taxes when the Thompsons had been current

on such payments; and (4) GMACM improperly charged and applied interest to the Loan

account.

     *1.*     *The Thompsons' Wrongful Foreclosure-Related Arguments Fail*

With respect to the three allegations relating to the 2007 foreclosure, the Court finds that

not one establishes a basis for a viable cause of action.  First, the Thompsons fail to demonstrate

that they were current on their Loan obligations in 2007 when the Complaint was filed on August

3, 2007.  (*See* EH Ex. BT-1 at 13; EH Ex. BT-2; EH Ex. BT-3; EH Ex. BT-6.)  Based on the

evidence presented by the Trust and the Thompsons at the Evidentiary Hearing, it is clear that

the Thompsons failed to make their monthly Loan payments in April, May, and June 2007.  (*See*

EH Ex. BT-1 at 13; EH Ex. BT-2; EH Ex. BT-3.)  The evidence also demonstrates that the

Thompsons' attempted payments in June, July, and August were returned by GMACM due to

insufficient funds in the Thompsons' bank account or because the payments were insufficient in

amount to bring the account current.  (*See* EH Ex. BT-1 at 12–13, 145, 148, 152, 155.)  Although

the Thompsons argued at the Hearing on the Objection that they had bank records showing that

they made the requisite monthly payments before the foreclosure Complaint was filed, the

Thompsons failed to provide such evidence at the Evidentiary Hearing.  Rather, the only

evidence that the Thompsons presented was a document illustrating the effect of their

Repayment Agreement.  (*See* EH Ex. T-2 at 8.)  The fact that the payments the Thompsons made

at the end of 2007 and throughout 2008 were applied retroactively to cure their default in the

beginning of 2007 does not mean that the Thompsons timely made their payments before the

Complaint was filed in August 2007.  Thus, the Objection to the Claim to the extent it is based

on the Thompsons' unsubstantiated argument that they were current when the foreclosure action

was filed is **SUSTAINED**.

Second, the Thompsons' altered documents argument lacks merit.  The Thompsons point

to several handwritten notes on the Assignment of Mortgage—lines crossing out Ameriquest's

address, the stamp of a law firm's address, and the redaction of the Loan number—as purported

alterations.  (Opp. at 1 (citing *id.* Ex. C).)  The Thompsons also argue that the Mortgage was

altered, pointing to similar handwritten notes and stamps.  (*Id.* at 9 (citing *id.* Ex. F).)  The Trust

contends that the Thompsons have not identified any actual alterations to the underlying

documents and that the stamp is merely for regular office-use in processing the Mortgage in

connection with the 2007 foreclosure action.  (Obj. Ex. 1-A at 7; Reply ¶ 38.)  The Court finds

and concludes that none of the alterations alone or as a group constitute an alteration rendering

either the Mortgage or Assignment of Mortgage void.  An asserted alteration that purportedly

renders a document void should "suggest[] more than one plausible interpretation of the parties'

intent."  *See Adams Assocs., L.L.C. v. Eastern Sav. Bank, FSB*, Appeal from No. L-135-11, 2013

WL 2476356, at *1 (N.J. Super. Ct. App. Div. June 11, 2013) (reversing and remanding trial

court's grant of summary judgment with regard to the meaning of a mortgage estoppel certificate

and other related documents that memorialized the parties' transaction).  The handwritten notes

and stamps on the Assignment of Mortgage and Mortgage about which the Thompsons complain

do not plausibly suggest a different interpretation of the parties' intent in entering into the

agreements.  Further, the purported alterations do not materially alter any term of the agreements

the documents memorialize.  The Objection to the Claim on this basis is therefore **SUSTAINED**.

Third, the Thompsons' theory that the Loan was paid in full and cancelled as of August 16, 2005 and therefore cannot be a valid Loan upon which GMACM could have relied upon in filing the foreclosure Complaint is frivolous.  The evidence establishes that the Ameriquest Loan was never paid in full; rather, the Ameriquest Loan refinanced and replaced the JP Morgan loan—the Ameriquest Loan proceeds were used to pay off the JP Morgan mortgage loan, which was properly cancelled.  (*See* Priore Supp. Ex. C; Opp. Ex. B.)  The fact that the original loan with JP Morgan was paid in full and cancelled does not affect the Thompsons' obligations pursuant to the Ameriquest Loan, nor does it affect GMACM's standing to bring the foreclosure action against the Thompsons based on the Ameriquest Loan.  Any argument the Thompsons have asserted with respect to the Loan being paid in full and cancelled is consequently dismissed and the Objection to the Claim to the extent it is based on such arguments is **SUSTAINED**.

2.     *The Thompson's Servicing-Related Arguments All Fail But One*

Three of the Thompsons' four contentions that GMACM improperly serviced their Loan are also unsupported.  First, the Thompsons are incorrect that GMACM wrongfully returned Loan payments the Thompsons made from August 2005 through September 2011.  GMACM was not involved with the Thompsons' Loan until October 2005; thus, any allegedly wrongful return of payments before October 2005 could not be the fault of GMACM.  (*See* Obj. Ex. 1-A at 9–10; Opp. Exs. I–K.)  Moreover, for every payment that was returned between October 2005 and September 2011, the Trust has provided a valid reason that the Thompsons have failed to sufficiently refute.  These reasons include:  (1) insufficient funds in the Thompsons' bank account to satisfy the amount attempted to be paid; (2) the payment was not made in certified funds when the account was restricted to such funds and the Thompsons were advised of such restriction; and (3) the payment was only sufficient to satisfy one monthly payment, when the Thompsons were advised that an amount greater than one monthly payment would need to be

made due to the Thompsons' outstanding default.  The Thompsons have not demonstrated that

any of these reasons is unlawful.  Consequently, the Objection to the Claim on this basis is

**SUSTAINED**.

Second, the Thompsons fail to demonstrate that they have been injured by receiving a

copy of the wrong note from GMACM in January 2011.  Upon a comparison of the Thompsons'

Note and the other note that was mistakenly sent to the Thompsons, the "Loan Number" listed on

the Thompsons' Note is different than the "Loan Number" listed on the other note.  (*Compare*

Priore Supp. Ex. C, *with* Opp. Ex. D.)  While it is unclear whether the "Identifier" numbers listed

at the top left corner of the notes are the same because the Trust has redacted the number on the

Thompsons' Note, (*compare* Priore Supp. Ex. C, *with* Opp. Ex. D), the Thompsons do not

explain why having the same "Identifier" number would be harmful to them, when the "Loan

Numbers" are clearly unique.  Thus, the Objection to the Claim grounded in this theory is

**SUSTAINED**.

Third, the Thompsons have not established that GMACM improperly set up an escrow on

their Loan account for property taxes.  The documentary evidence establishes that the Trust set

up the escrow account in September 2010 as part of the loan modification process, triggered by

GMACM's receipt of a workout package from the Thompsons.  (Obj. Ex. 1-A at 13.)

Additionally, GMACM received notice from the Newark City Tax Department that the

Thompsons failed to pay their property taxes for the third and fourth installments of 2009 and the

first and second installments of 2010.  (*Id.*)  As a result of this notice, GMACM paid the

delinquent taxes and charged the paid amount to the Thompsons' escrow.  (*Id.*)  Once the loan

modification was denied, the requirement to escrow amounts for taxes and insurance was

cancelled, but the Thompsons were still responsible for paying back the four property tax

installments GMACM paid on their behalf.  (*Id.* at 13–14.)  The Thompsons argue that they were

current in their quarterly property tax payments, but they have failed to provide any evidence in

support.  As a result of the Thompsons having failed to meet their burden, the Objection to the

Thompsons' escrow-related argument is **SUSTAINED**.

As to the Thompsons' remaining allegation that GMACM charged them a higher interest

rate than what was stated on the billing statements, the Objection is **OVERRULED**.  The

Thompsons argue that their monthly principal and interest payments were $1,227.71 and that the

annual interest rate was 5.990% with a margin of 2.75%.  (Opp. at 3–4.)  The Thompsons

presented a "forensic review report" that  indicates the annual percentage rate actually charged

was 6.6554% (rather than 5.990%) and the margin was 2.75%.  (*Id.*)  The Trust responds that the

Thompsons' Mortgage is an adjustable rate mortgage and that GMACM "correctly charged,

collected and applied payments in accordance with" the Note, Mortgage, and letters reflecting

the adjustable interest rate terms that were sent to the Thompsons in June and December each

year from 2009 through 2012.  (Obj. Ex. 1-A at 9.)  The Trust, however, has failed to provide the

Court with copies of these letters.

The Thompsons' Note expressly provides that it "CONTAINS PROVISIONS

ALLOWING FOR CHANGES IN [THE] INTEREST RATE AND [THE] MONTHLY

PAYMENT.  THIS NOTE LIMITS THE AMOUNT [THE] INTEREST RATE CAN CHANGE

AT ANY ONE TIME AND THE MAXIMUM RATE [THE THOMPSONS] MUST PAY,"

(Priore Supp. Ex. C).  The original interest rate under the Note was 5.990% and the initial

monthly payment was $1,227.77 (*id.* at 1).  Under the Note, 2.75% would be added to the current

index rate in order to calculate the Thompsons' new interest rate before each date the interest rate

would be changed.  (*Id.*)  The 6.6554% figure listed in the forensic review report is within the

range (5.990% to 7.990%) that GMACM was authorized to charge on the Loan under the Note.

But without copies of the letters notifying the Thompsons of the change in their interest rate,

there are disputed issues of fact whether GMACM properly calculated, applied, and charged

interest on the Thompsons' Loan account.  As such, the Trust has not met its burden of proof

and, to that extent only, the Objection is **OVERRULED without prejudice**.

### B.    Violations of New Jersey State Law

The Thompsons submitted the forensic review report by The Foreclosure Law Center in

support of their argument that GMACM violated New Jersey statutory law.  The report purports

to be an audit of the Thompsons' Loan and indicates that there are potential violations of the

following New Jersey laws relating to the Loan:  (1) the provision of the LLA that prohibits third

party fees in a first lien loan if paid to the lender instead of a third party provider, N.J. ADMIN.

CODE § 3:1-16.2; (2) the provision of the LLA that prohibits a settlement or closing fee from

being charged to a borrower, N.J. REV. STAT. 17:11C-28; N.J. ADMIN. CODE § 3:15-9.2; (3) the

provision of the LLA that limits the amount of the additional service fee for recording a

cancellation of a mortgage to $25.00, N.J. ADMIN. CODE § 3:1-16.2(a)(3); and (4) the provisions

of the New Jersey Mortgage Stabilization and Relief Act, requiring a lender to grant a borrower a

six month forbearance period to pursue a loan workout, modification, refinancing, or other

alternative through mediation sponsored by the Administrative Office of the Courts, N.J. REV.

STAT. 46:10B-50.

The allegations in the forensic report do not give rise to a viable cause of action against

GMACM under New Jersey law.  The first three purported violations of New Jersey law rely on

provisions of the LLA, which was revised and renamed the New Jersey Consumer Licensing Act

(the "NJCLA") in 2009.  The act does not create a private right of action for borrowers.  *See*

*Veras v. LVNV Funding, LLC*, No. 13-1745 (RBK/JS), 2014 WL 1050512, at *7–9 (D. N.J. Mar. 17, 2014) (holding that NJCLA is the successor to LLA and does not expressly or impliedly provide a private right of action to borrowers).  Consequently, the LLA, and its successor statute, cannot form a basis for the Thompsons' Claim.

Additionally, the provision of the New Jersey Mortgage Stabilization and Relief Act on which the Thompsons rely was not effective until July 2, 2009 and expired two years after it was enacted.  *See* N.J. REV. STAT. § 46:10B-50.  The Thompsons did not file the Claim until 2012, after this law became inoperative.  Moreover, the forbearance period required by the statute would have been triggered by the 2007 foreclosure process, which occurred two years before the enactment of the provision.

Thus, the Objection to the Claim to the extent it is based on these New Jersey statutory provisions is **SUSTAINED**.

### III.    CONCLUSION

For the foregoing reasons, the Objection to the Thompsons' Claim is **SUSTAINED** in part and **OVERRULED** in part.


**IT IS SO ORDERED.**

Dated:    July 1, 2015
          New York, New York


_____*Martin Glenn*_____
MARTIN GLENN
United States Bankruptcy Judge