**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett

*Counsel for The ResCap Borrower
Claims Trust*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- )
                                                           )
In re:                                                     )    Case No. 12-12020 (MG)
                                                           )
RESIDENTIAL CAPITAL, LLC, et al.,                          )    Chapter 11
                                                           )
                                    Debtors.               )    Jointly Administered
                                                           )
---------------------------------------------------------- )

**RESCAP BORROWER CLAIMS TRUST'S
PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**I.    STATEMENT OF PROPOSED FINDINGS OF FACT**

14.    On November 20, 2008, non-Debtor Norwich Commercial Group, Inc., d/b/a Norcom Mortgage ("Norcom") originated a loan to Todd Silber ("Mr. Silber" or the "Claimant") the Claimant in the amount of $236,823 (the "Loan"). See Note, Objection [Docket No. 7979] Exhibit C. The Loan is an FHA Loan. See id.

15.    The Loan is evidenced by a note (the "Note") to Norwich Commercial Group, Inc., executed by Mr. Silber on November 20, 2008. See Note.

16.    To secure the payment of the Note, Mr. Silber executed to Mortgage Electronic Registration Systems, Inc., as nominee for Norwich Commercial Group, Inc., a Mortgage dated December 20, 2008 (the "Mortgage") on the property located at 73 Farnham Road, South Windsor, CT 06074 (the "Property"). See Mortgage, Objection Exhibit D.

1

17. Under the terms of the Note, Mr. Silber agreed to make monthly principal and interest payments on the Loan beginning on January 1, 2009 in the amount of $1,496.88. See Note.

18. Under the terms of the Note, Mr. Silber agreed that he would be in default of the Loan if he failed to pay in full any monthly payment. See Note.

19. Debtor GMAC Mortgage, LLC ("GMACM" or the "Debtors") serviced the loan from the time it was originated on November 20, 2008 until servicing of the Loan was transferred to Ocwen Loan Servicing, LLC on February 16, 2013. See Servicing Notes, Reply [Docket No. 8160] Exhibit A.

**FHA HAMP Guidelines**

20. In order to be considered income for purposes of a HAMP loan modification review, guidelines for FHA-insured loans (the "FHA HAMP Guidelines") require that unemployment income must be documented with reasonable assurance of its continuance for at least twelve months. See FHA HAMP Guidelines, a true and correct copy of which is attached hereto as Exhibit 1, Questions and Answers, at 12.

21. FHA HAMP Guidelines state that "acceptable documentation [to support unemployment income] includes letters, exhibits, or benefits statements from the provider that states the amount, frequency and duration of the benefit." See FHA HAMP Guidelines, Questions and Answers, at 12.

22. FHA HAMP Guidelines required that a borrower's back end debt-to-income ratio (the ratio of their household expenses to their household income), be less than 55%. See FHA HAMP Guidelines Attachment.

2

23. There is no specific FHA HAMP Guideline that specifies what amounts should and should not be included when providing a third party with the amount necessary to reinstate a loan. <u>See</u> FHA HAMP Guidelines.

**<u>The December 2009 Workout Package</u>**

24. Mr. Silber did not make the monthly payments due on the Loan on November 1, 2009 and December 1, 2009. <u>See</u> Servicing Notes, at 7 of 286.

25. Mr. Silber submitted a workout package to the Debtors for modification review on December 18, 2009 (the "<u>December 2009 Workout Package</u>"). <u>See</u> December 2009 Workout Package, a true and correct copy of which is attached hereto as Exhibit 2.

26. Mr. Silber submitted additional workout documents on December 23, 2009 and January 12, 2010. <u>See</u> Additional Workout Documents, a true and correct copy of which is attached hereto as Exhibit 3.

27. The December 2009 Workout Package and additional workout documents only contained evidence that the Claimant's unemployment income would last for 20 weeks. <u>See</u> 2009 Workout Package and Additional Workout Documents.

28. The December 2009 Workout Package and Additional Workout Documents did not contain information demonstrating that Mr. Silber would receive unemployment benefits for at least twelve months. <u>See</u> December 2009 Workout Package and Additional Workout Documents.

29. Even though the Debtors did not receive the necessary documentation of unemployment information, on January 13, 2010, the Debtors reviewed the Claimant's account for a FHA HAMP modification based on the assumption that Mr. Silber's unemployment benefits would last for at least twelve months. The Debtors determined that Mr. Silber did not qualify for a FHA HAMP modification because his back end debt-to-income ratio was 73%,

3

higher than what was permitted under the FHA HAMP Guidelines.  <u>See</u> April 30 Letter, Objection Exhibit K; <u>see also</u> Servicing Notes, at 275 of 286.

30. GMACM informed Mr. Silber of the modification denial via letter on January 13, 2010.  <u>See</u> January 13 Denial Letter a true and correct copy of which is attached hereto as Exhibit 4.

**The January 2010 Workout Package**

31. The Claimant submitted a workout package for modification review on January 29, 2010 (the "<u>January 2010 Workout Package</u>").  <u>See</u> January 2010 Workout Package, Objection Exhibit H.

32. The January 2010 Workout Package contained a letter demonstrating 15 weeks of unemployment income, as well as a written statement by the Claimant that asserted that his unemployment benefits would be extended to one year.  <u>See</u> January 2010 Workout Package.

33. The January 2010 Workout Package did not contain the necessary documentation under the FHA HAMP Guidelines demonstrating that Mr. Silber would receive unemployment benefits for at least twelve months.  <u>See</u> January 2010 Workout Package.

34. On February 9, 2010, a representative of GMACM advised the Claimant via phone that he needed to provide an award letter from the state unemployment agency that included an end date of benefits in order for modification review to continue.  <u>See</u> Servicing Notes, at 271 of 286.

35. On February 11, 2010, GMACM sent a letter to the Claimant informing him of the missing documents needed for modification review.  <u>See</u> Servicing Notes, at 270 of 286.

36. On or around February 15, 2010, the Claimant submitted information from the Massachusetts Division of Unemployment (the "February 15 Unemployment Information"). See February 15 Unemployment Information, Objection Exhibit I.

37. The February 15 Unemployment Information demonstrated that the Claimant's unemployment income would last for 29 weeks. See February 15 Unemployment Information.

38. The February 15 Unemployment Information includes statements from the Claimant referencing other programs of his unemployment that he claimed he would be eligible for but does not provide any third-party documentation indicating that he qualified for or would receive benefits under the alleged programs. See February 15 Unemployment Information.

39. The January 2010 Workout Package and the February 15 Unemployment Information did not contain the necessary documentation under the FHA HAMP guidelines to demonstrate that the Claimant's unemployment income would last for at least 12 months. See January 2010 Workout Package and February 15 Unemployment Information.

40. On February 25, 2010, GMACM denied the Claimant for a loan modification because there was not sufficient documentation that his unemployment income would continue for the required amount of time. See Servicing Notes, at 269 of 286.

41. GMACM informed the Claimant of the denial of the loan modification via phone on March 1, 2010. See Servicing Notes, at 268-69 of 286.

42. On or around March 1, 2010, the Claimant contacted the Debtors via phone to inquire why his request for a loan modification had been denied. The Debtors informed him that his unemployment income could not be considered because he did not provide documentation that such income would last for the required time period. See Servicing Notes, at 268 of 286.

5

43. On or around March 8, 2010, the Claimant contacted the Debtors via phone and advised them that he received an extension of 17 weeks for unemployment, followed by another twenty. See Servicing Notes at 268 of 286.

44. Based on this new information, the Debtors opened up another modification review. See Servicing Notes, at 268 of 286.

45. On or around March 15, 2010, even though the Debtors had not received a confirmation of the unemployment extension, the Debtors reviewed the account for a modification based on the unemployment income provided verbally by the Claimant. See Servicing Notes at 267 of 286.

46. Based on the unemployment benefits of $3,542.50, Claimant's projected back end debt-to-income ratio was 65%, which exceeded the FHA HAMP guidelines. See April 30 Letter.

47. On March 15, 2010, the Debtors sent a letter to the Claimant informing him of the reason for the denial. See March 2010 Denial Letter, a true and correct copy of which attached hereto as Exhibit 5.

**The April 2010 Workout Package**

48. On or around April 2, 2010, the Claimant spoke with the Debtors over the phone and told them he had a tenant moving in that would provide $500 a month in rental income. See Servicing Notes at 261 of 286.

49. During the phone call on April 2, 2010, a representative of GMACM advised the Claimant that he could submit a new financial workout package with updated financials and the lease agreement and then he could be re-reviewed for a modification. See Servicing Notes at 261 of 286.

6

50. During the phone call on April 2, 2010, a representative of GMACM advised the Claimant that he needed to provide documentation evidencing that his unemployment income would last for at least nine months. See Servicing Notes at 261 of 286.

51. On or around April 5, 2010, the Claimant submitted a third workout package (the "April 2010 Workout Package") for modification review. See April 2010 Workout Package, Objection Exhibit J.

52. On or around April 7, 2010, the Claimant spoke with the Debtors over the phone, at which time the Debtors informed him that his unemployment income could not be used because the documentation he provided showed that it was ending in October 2010. See Servicing Notes, at 258 of 286.

53. The April 2010 Workout Package did not include any letter, exhibit, or benefit statement from an unemployment provider stating the amount, frequency, and duration of the Claimant's unemployment benefits. See April 2010 Workout Package. The April 2010 Workout Package did include a rental agreement that indicated Mr. Silber would receive $500 a month in rental income. See Rental Agreement at 8 of the April 2010 Workout Package.

54. Pursuant to HAMP Guidelines, only 75% of rental income could be taken into account, with the other 25% considered vacancy loss and maintenance expense. See HAMP Guidelines at 8, Objection Exhibit T.

55. Based on an income of $375, the Debtors denied Mr. Silber's loan modification request on April 12, 2010 because he had insufficient income. See Servicing Notes at 257 of 286.

**Forbearance Plan**

56. On April 30, 2010, GMACM mailed a letter to the Claimant advising him of the bases for the modification denials, and stating that he should contact the Debtors if he is

7

interested in a six month forbearance plan (the "Forbearance Plan") that would permit him to make payments of $995.40 (half the contractual payment amount). See April 30 Letter.

57. On May 10, 2010, the Claimant spoke with the Debtors via phone and stated his interest in the Forbearance Plan. See Servicing Notes at 263 of 286. During the call, the Debtors advised the Claimant that a new workout package would need to be received during the period of the Forbearance Plan and that if the loan was not approved for a permanent modification, then normal foreclosure proceedings would continue. See Servicing Notes at 263 of 286.

58. On May 10, 2010, the account was approved for a Forbearance Plan. See Servicing Notes at 253 of 286. The Forbearance Plan allowed the Claimant to make reduced payments for up to six months. See id. The Forbearance Plan agreement was mailed to the Claimant and approved, thereby allowing the Claimant to make payments on the first of the month from June 1, through November 1, 2010. See id at 253-54 of 286. On May 23, 2010, the Claimant signed the Forbearance Plan agreement and returned the agreement to GMACM. See id.

59. The Claimant made all of the payments under the Forbearance Plan, but did not submit a workout package during the period of the Forbearance Plan, as required. See Servicing Notes at 5-7 of 286.

**Email to Justin Chambers**

60. On December 8, 2010, GMACM received an email from Justin Chambers, Assistant Attorney General of the state of Connecticut (the "AAG") regarding a complaint his office received from Mr. Silber that GMACM was not assisting him in his pursuit of a loan modification. See Servicing Notes, at 210 of 286.

61. A representative of GMACM responded to the AAG via email (the "Email"), stating that Mr. Silber's unemployment income could not be utilized when reviewing an account for a loan modification. See Email, Silber Response Exhibit E.

**The January 2011 Workout Package**

62. On or around January 3, 2011, the Claimant submitted a fourth workout package for modification review (the "January 2011 Workout Package"). See January 2011 Workout Package, Objection Exhibit L.

63. The January 2011 did not include any letter, exhibit, or benefit statement from an unemployment provider stating the amount, frequency, and duration of the Claimant's unemployment benefits. See January 2011 Workout Package.

64. On January 14, 2011, a traditional modification was denied due to insufficient income. See Servicing Notes, at 193 of 286.

65. On or around January 19, 2011, an FHA HAMP modification was denied due to insufficient income. See January 19 Denial Letter, Reply Exhibit D.

**The Information Provided to CHFA**

66. The Emergency Homeowners' Loan Program ("EHLP") provides federal funds for eligible homeowners to pay mortgage arrearages, delinquent taxes, homeowners insurance, condominium fees and foreclosure related legal fees, as well as assist with monthly mortgage payments for up to 24 months. See EHLP Overview for CHFA website, a true and correct copy of which is attached hereto as Exhibit 6.

67. On or around August 22, 2011, the Debtors received authorization from the state for the EHLP and as a result reviewed the Claimant's account in order to provide a reinstatement quote to CHFA. See Servicing Notes, at 96-97 of 286.

68. On August 25, 2011, GMACM provided the Connecticut Housing Finance Authority ("CHFA") with a quote for the amount needed to reinstate the loan in order to qualify the Claimant for the EHLP. See Servicing Notes, at 94 of 286.

69. The Debtors provided CHFA with a reinstatement quote of $43,736.80 (the "Quote"). See Servicing Notes at 95 of 286. The Quote included 20 past due payments of $1,990.80 each, the payment due for September 1, 2011 ($1,990.80), inspection fees of $112.50, advances of $1,577.30, and outstanding foreclosure advances of $1,991.00, as well as a deduction for an unapplied credit on the account of $1,750.80, for a total of $43,736.80. See Servicing Notes at 94 of 286.

70. On or around September 28, 2011, the Claimant's application under the EHLP was denied. See Servicing Notes, at 91 of 286.

## II. CONCLUSIONS OF LAW

### A. Breach of Contract

59. To state a cause of action for breach of contract in Connecticut, the plaintiff must show: "the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." See Tatum v. Oberg, 650 F. Supp. 2d 185, 192 (D. Conn. 2009) (citing Rosato v. Mascardo, 844 A.2d 893, 897 (Conn. App. Ct. 2004)).

60. Because Mr. Silber never provided GMACM with any acceptable documentation, as defined by the FHA HAMP Guidelines, that his unemployment income would last for at least twelve months, GMACM did not violate the FHA HAMP Guidelines when it did not consider the Claimant's unemployment income when reviewing his account for a loan modification.

61. The Quote was proper under the terms of the EHLP, and therefore the Claimant cannot assert that GMACM breached a contract with the Claimant when providing this figure to CHFA.

62. Since the FHA HAMP Guidelines are silent regarding reporting of reinstatement information to state agencies, the Claimant's allegations that GMACM reported inaccurate information to CHFA fails to assert a breach of a contract between GMACM and the Claimant

63. Claimant's breach of contract claim fails as a matter of law.

B. **Breach of the Implied Covenant of Good Faith and Fair Dealing**

64. Under Connecticut law, to state a cause of action for breach of the implied covenant of good faith and fair dealing, the Claimant must prove:

> First, that the plaintiff and the defendant were parties to a contract under which the plaintiff reasonably expected to receive certain benefits; second, that the defendant engaged in conduct that injured the plaintiff's right to receive some or all of those benefits; and third, that when committing the acts by which it injured the plaintiff's right to receive benefits he reasonably expected to receive under the contract, the defendant acted in bad faith.

Franco v. Yale Univ., 238 F. Supp. 2d 449, 455 (D. Conn. 2002), aff'd, 80 Fed. Appx. 707 (2d Cir. 2003) (citing, Fairfield Fin. Mortg. Grp., Inc. v. Salzar, Case No. CV00339752S, 2002 WL 1009809, at *3 (Conn. Super. Ct. Apr. 23, 2002).

65. Since GMACM denied the Claimant's requests for a loan modifications because the Claimant did not meet the FHA HAMP Guidelines, the Claimant cannot show that he reasonably expected to receive the benefit of a loan modification.

66. The Quote was proper under the terms of the EHLP, and therefore the Claimant cannot assert that providing this figure to CHFA deprived him of a benefit he reasonably expected to receive.

11

67. Claimant's causes of action for GMACM's alleged breach of the implied covenant of good faith and fair dealing fails as a matter of law.

**C.   Connecticut Unfair Trade Practices Act**

68. Under Connecticut law, in determining whether a practice violates the Connecticut Unfair Trade Practices Act (CUTPA), courts look at: "

> (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise-in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other business persons].

Willow Springs Condominium Ass'n, Inc. v. Seventh BRT Dev. Corp., 717 A.2d 77, 99-100 (Conn. 1998) (citation omitted).

69. GMACM followed FHA HAMP guidelines when determining that Mr. Silber was not eligible for a loan modification, and as a result did not commit a deceptive practice under the CUTPA.

70. The Quote was proper under the terms of the EHLP, and therefore the Debtors did not violate the CUTPA when it provided the Quote.

71. The Claimant's CUTPA claim fails as a matter of law.

**D.   Negligent Misrepresentation**

72. To state a cause of action for negligent misrepresentation under Connecticut law, the claimant must establish "(1) that the [debtor] made a misrepresentation of fact (2) that the [debtor] knew or should have known was false, and (3) that the [claimant] reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result." Coppola Constr. Co. v. Hoffmane Enters. Ltd. P'Ship, 38 A.3d 215, 218 (Conn. Ct. App. 2012) (citation omitted), aff'd, 71 A.3d 480.

73. Mr. Silber has not demonstrated that he relied on the statement made by the Representative to Assistant Attorney General Chambers regarding the use of unemployment income in determining eligibility for a loan modification.

74. Furthermore, the Claimant has not demonstrated that he suffered pecuniary harm as a result of the alleged misrepresentation.

75. The Quote was proper under the terms of the EHLP, and therefore the Claimant cannot assert that providing this figure to CHFA was a misrepresentation.

76. Claimant's negligent misrepresentation claim fails as a matter of law.

Dated:  July 1, 2015
        New York, New York

/s/ Norman S. Rosenbaum
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the ResCap Borrower Claims Trust*