**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) )  Chapter 11 |
| RESCAP LIQUIDATING TRUST MORTGAGE PURCHASE LITIGATION | )  Case No. 12-12020 (MG) )  Jointly Administered |
| *This document relates to*: | )  Adv. Proc. No. 14-07900 (MG) |
| RESIDENTIAL FUNDING CO. v. HSBC MORTG. CORP. (USA), Adv. Proc. No. 14-01915 (MG) | ) ) ) |
| RESIDENTIAL FUNDING CO. v. UBS REAL ESTATE SECS., INC., Adv. Proc. No. 14-01926 (MG) | ) ) ) ) |
| RESCAP LIQUIDATING TRUST v. SUMMIT FIN. MORTG. LLC, Adv. Proc. No. 14-01996 (MG) | ) ) ) |
| RESCAP LIQUIDATING TRUST v. MORTG. INVESTORS GRP., INC., Adv. Proc. No. 14-02004 (MG) | ) ) ) ) |
| RESIDENTIAL FUNDING CO. v. SUNTRUST MORTG. INC., Adv. Proc. No. 13-1820 (MG) | ) |

**ALLY FINANCIAL, INC.'S OBJECTION AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO MODIFY ORDER APPOINTING MEDIATOR**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ....................................................................................................................3

ARGUMENT .........................................................................................................................6

     1.     The Motion's Request for Undefined, Blanket Relief Is Facially Deficient. ..........6

     2.     The Unidentified Mediation Materials Are Not "Critical" to the Pending
           Action.......................................................................................................................7

     3.     Defendants Must Seek the Requested Information from Non-Confidential
           Sources..................................................................................................................12

     4.     Modification of the Mediation Order Will Undermine Future Bankruptcy
           Mediations.............................................................................................................14

CONCLUSION....................................................................................................................18

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Bradfield v. Mid-Continent Cas. Co.*,
  15 F. Supp. 3d 1253 (M.D. Fla. 2014) ............................................................. 13, 18

*Conoco Inc. v. Boh Brothers Construction Co.*,
  191 F.R.D. 107 (W.D. La. 1988).......................................................................... 12, 13

*Cooper v. Meridian Yachts, Ltd.*,
  No. 06-61630-CIV, 2008 WL 2229552 (S.D. Fla. May 28, 2008) ........................... 13

*Dandong v. Pinnacle Performance Ltd.*,
  No. 10 Civ. 8086(LBS), 2012 WL 4793870 (S.D.N.Y. Oct. 9, 2012)............................. passim

*DH Holdings Corp. v. Marconi Corp. PLC*,
  809 N.Y.S.2d 404 (Sup. Ct. 2005) ......................................................................... 13

*First Fid. Bancorporation v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*,
  No. CIV. A. 90-1866, 1992 WL 55742 (E.D. Pa. Mar. 13, 1992) ........................... 13

*Franklin United Methodist Home, Inc. v. Lancaster Pollard & Co.*,
  909 F. Supp. 2d 1037 (S.D. Ind. 2012) ................................................................. 12

*In re RFC and ResCap Liquidating Trust Litig.*,
  No. 13-cv-3451 (D. Minn.) ...................................................................................... 5

*In re Teligent Services, Inc.*,
  No. 09 CIV. 09674 (PKC), 2010 WL 2034509 (S.D.N.Y. May 13, 2010)................................ 9

*In re Teligent, Inc.*,
  417 B.R. 197 (Bankr. S.D.N.Y. 2009) ............................................................... passim

*In re Teligent, Inc.*,
  640 F.3d 53 (2d Cir. 2011) ............................................................................... passim

*Lake Utopia Paper Ltd. v. Connelly Containers, Inc.*,
  608 F.2d 928 (2d Cir. 1979) .................................................................................. 16

*SEC v. TheStreet.com*,
  273 F.3d 222 (2d Cir. 2001) .................................................................................. 18

*Torain v. Clear Channel Broad., Inc.*,
  651 F. Supp. 2d 125 (S.D.N.Y. 2009) ..................................................................... 8

**Rules**

Fed. R. Bankr. P. 9013 ............................................................................................................. 7

Ally Financial, Inc. ("AFI") submits this objection (the "Objection") in opposition to Defendants' Motion to Modify Order Appointing Mediator [ECF No. 85] (the "Motion") and Defendants' Memorandum of Law in Support of Their Motion to Modify Order Appointing Mediator [ECF No. 86] (the "Memorandum").

## PRELIMINARY STATEMENT

The Motion seeks the modification of the 2012 Mediation Order in order to permit discovery of confidential mediation communications concerning the global settlement of the Chapter 11 bankruptcy of Residential Capital, LLC ("ResCap"), which ultimately resulted in the resolution of billions of dollars of claims against the debtors and others. (Findings of Fact, Case No. 12-12020 (MG) [ECF No. 6066] ¶¶ 1, 71, 75–77 (the "Findings of Fact").) To arrive at the settlement, numerous entities participated in mediation (the "Mediation") ordered by this Court. (*See* Order Appointing Mediator, Case No. 12-12020 (MG) [ECF No. 2519] (the "December 26, 2012 Order").) This Court's December 26, 2012 Order established that any "discussions among any of the Mediation Parties," any "mediation statements and any other documents or information provided to the Mediator or the Mediation Parties in the course of the mediation," and "correspondence, draft resolutions, offers, and counteroffers produced for or as a result of the mediation" would be "strictly confidential" and would "not be admissible for any purpose in any judicial or administrative proceeding…." (Dec. 26, 2012 Order ¶ 4.) The proponents of the Motion (collectively, "Defendants")—non-parties to the underlying bankruptcy proceeding—now seek to undermine the purpose and effect of the December 26, 2012 Order by destroying the wall of confidentiality this Court established.

The Court should deny this request. *First*, the Motion is facially deficient, as Defendants fail to identify their requested relief. Defendants ask the Court to "modify its [December 26, 2012] Order to allow discovery of the Chapter 11 parties' settlement communication." (Mem.

25; *see also id.* 11.)  But Defendants fail to explain *how* the Court should modify the December 26, 2012 Order, and their request is, in any event, untethered to the specific facts of the case. The burden is on a litigant to identify the specific relief sought, not for the Court to fashion relief out of thin air.  For this reason alone, Defendants' Motion should be denied.

*Second*, having failed to define the specific relief they seek, Defendants also fail to show how the requested materials—vaguely described as "communications" and the "documentary record"—are ***critical*** to the defense of the pending indemnification actions.  Yet this is the demanding standard that has been reiterated by decisions in the Bankruptcy Court and the District Court for the Southern District of New York and affirmed by the Second Circuit.  At best, Defendants argue that communications between numerous parties about potential settlement would be informative or relevant.  That is not sufficient to overcome the "very high bar" required to modify a mediation order.  *Dandong v. Pinnacle Performance Ltd.*, No. 10 Civ. 8086(LBS), 2012 WL 4793870, at *5 (S.D.N.Y. Oct. 9, 2012).

*Third*, Defendants have failed to show that they have taken efforts to obtain documents and information they claim to need—for instance, by seeking material that is "otherwise available and not subject to a separate confidentiality agreement," as the December 26, 2012 Order clearly contemplates.  (Dec. 26, 2012 Order ¶ 4.)  As an initial matter, it is unclear how public information on the settlement—much of which is contained in prior orders of this Court— is not sufficient to litigate the reasonableness of the settlement.  Further, there was substantial discovery and evidence in these matters that addressed the reasonableness of the settlements that is not precluded by the Mediation Order.  In confirming the Debtors' Chapter 11 plan, and the settlements incorporated therein, the Court held a five-day hearing, admitted over 900 exhibits into evidence, received written testimony from thirty-one witnesses, and received substantial

deposition designations.  (*Id.* at ¶ 6.)  Against this background, Defendants' request for a blanket

unsealing of confidential communications is not appropriate.  Mere convenience to Defendants

(or their apparent desire to go on a fishing expedition) does not justify this extraordinary request.

*Fourth*, Defendants' request ignores the serious implications for the timely and efficient

resolution of future bankruptcy proceedings.  Dozens of individuals and entities participated in

the Mediation on the express condition their discussions would be confidential.  If participants in

the negotiations had known that litigants would gain access to their discussions in a future civil

action, the mediation would not have been as successful.  As the Second Circuit has emphasized,

"if protective orders have no presumptive entitlement to remain in force, parties would resort less

often to the judicial system for fear that such orders would be readily set aside in the future."  *In

re Teligent, Inc.*, 640 F.3d 53, 59 (2d Cir. 2011) [hereinafter, "*Teligent* III"] (citation and internal

quotation marks omitted).  A decision unsealing confidential communications would place future

bankruptcy mediations at risk, and courts will likely be called on to adjudicate costly disputes

that are no longer settled in mediation.  The Court should not countenance Defendants' fishing

expedition and should not modify the December 26, 2012 Order on which the ResCap Chapter

11 Mediation participants relied.

## **BACKGROUND**

This matter arises out of the Chapter 11 bankruptcy of ResCap and its direct and indirect

subsidiaries (collectively, the "Debtors"), against which creditors had asserted hundreds of

billions of dollars of claims.  (Findings of Fact ¶¶ 1, 224 (citations omitted).)  The Debtors and

their affiliates "were one of the largest mortgage servicers in the United States, with

approximately two million servicing accounts."  (*Id.* ¶ 266.)  As a result, the bankruptcy became

one of the most complex in recent times.

3

This Court recognized the potential for lengthy and costly proceedings early in the process, and at a September 27, 2012 hearing stated:

> [U]ntil the parties, the constituencies, begin speaking with each other, the difficult issues aren't going to move forward. There are a lot of difficult issues. … [O]ther than attempting to jump start the process, I think that I don't see any reason for further status reports to me on it at this stage. *The process will work best if it can occur confidentially between the parties.* … The only thing I want to be sure of is, is that there is a regular dialog going on with the constituencies. If that's happening, then it should happen without my involvement.

(Tr. of Sept. 27, 2012 Hr'g, Case No. 12-12020 (MG) [ECF No. 1650] 19:11–20:11 ("Sept. 27, 2012 Hr'g") (emphasis added).)

While the Court later approved the Debtors' sale of their mortgage servicing businesses and many of the estates' whole loan portfolios, the Official Committee of Unsecured Creditors (the "Committee") and the Debtors tried and failed to fashion a consensus on the terms of a Chapter 11 plan. (Findings of Fact ¶ 4.) Recognizing the need for focused discussions among the interested parties, the Debtors and other interested parties asked the Court to appoint a mediator. (*Id.*) The Court appointed Judge James M. Peck, and the ensuing Mediation spanned five months and involved over twenty different creditors or creditor groups, including AFI and the Committee. (*See id.* ¶¶ 1, 71, 75–77.) "As part of the Mediation, the Court put strict confidentiality protections in place, which precluded the parties from disclosing the substance of any of the negotiations." (*Id.* ¶ 73 (citations omitted); *see also* Dec. 26, 2012 Order). The purpose of this procedure was to allow "the parties to meet in a confidential forum, and to articulate and present their respective positions and interests." (Findings of Fact ¶ 74 (citation omitted).) "A substantial number of parties engaged in that process, many of which had divergent and competing interests and agendas…. That process allowed the various parties to

4

meet in a confidential forum and, under Judge Peck's guidance, to present their respective positions and interests." (*Id.* ¶ 231 (citations omitted).)

Relying on the December 26, 2012 Order's confidentiality provisions, the parties successfully negotiated a settlement of a large portion of the claims, which was supported by a majority of the creditor constituencies; the Court was required to conduct a trial only on limited issues and objections. (*See id.* ¶¶ 1, 5–6.)  After further mediation, an additional settlement was reached with certain objectors. (*See id.* ¶ 7.)  The Court confirmed the Debtors' Chapter 11 plan on December 11, 2013. (Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors, Case No. 12-12020 (MG) [ECF No. 6065].)

Following confirmation, the ResCap Liquidating Trust brought lawsuits against trusts of residential mortgage-backed securities ("RMBS") seeking indemnification based on contractual agreements these parties had entered into. (*See generally* Mem. 1.)  Defendants in these actions sought discovery of, among other items, Mediation materials.[1]  (*See, e.g.*, Mem. Exhs. [ECF No. 87], Ex. CC ¶ 92.)  But as the Court has previously recognized, "[t]he communications and analyses relating to negotiations conducted during the Plan Mediation are confidential pursuant to the Mediation Order and cannot be disclosed in detail." (Findings of Fact ¶ 121.)  By their Motion, Defendants seek to destroy the wall of confidentiality on which AFI and other non-parties to the indemnification actions relied when exchanging confidential information.

---

[1]    While it is not the subject of the Motion, AFI has been served with a subpoena seeking the production of broad categories of documents protected by the Mediation Order. *See In re RFC and ResCap Liquidating Trust Litig.*, No. 13-cv-3451 (D. Minn.).

## **ARGUMENT**

Defendants' Motion is layered with argument but missing the keystone: it is clear that Defendants want *something*, but it is wholly unclear what the Court is to do with this plea for relief.  As a result of this open-ended request, Defendants do not (and cannot) show the extraordinary circumstances or compelling needs justifying the unsealing of confidential Mediation materials.  Furthermore, many of the items sought are otherwise available, yet Defendants do not indicate they have exhausted alternative means to obtain the information. And the Motion altogether ignores the serious implications of Defendants' requested relief for future bankruptcy settlements.  For each of these reasons, Defendants' Motion should be denied.

**1.      The Motion's Request for Undefined, Blanket Relief Is Facially Deficient.**

Defendants' request appears to seek to unseal *every* discussion, *every* document, and *all* information about the confidential Mediation.  The Memorandum indicates Defendants seek "the subject matter and content of the communications exchanged in the settlement negotiations" (Mem. 12), vaguely adding this includes "information known to the Debtors at the time of the Global Settlement" (*id.* 13); the "documentary record" (*id.* 14, 15); the "Chapter 11 parties' subjective beliefs regarding settlement" (*id.* 15); and "settlement communications" (*id.* 16 (footnote call number omitted)).[2]  Such blanket relief from a Bankruptcy Court's confidentiality order is highly improper, as the Second Circuit has recognized.  *See Teligent* III, 640 F.3d at 59 ("K&L Gates has sought a blanket lift of the confidentiality provisions in the Protective Orders.…  However, K&L Gates failed to demonstrate a special or compelling need for *all* mediation communications.") (emphasis in original) (citations omitted).

---

[2]    The only materials identified with specificity are work product of Duff & Phelps, which Defendants assert the RMBS trustees retained "to help them identify and quantify their RMBS claims…." (Mem. 13.)  However, it appears Defendants already possess much of the information contained in Duff & Phelps' work product.  (*See id.* 13 (citing Mem., Ex. DD).)  Regardless, for the reasons stated *infra*, Defendants fail to indicate why such information is critical, as opposed to merely "highly relevant" to their action.  (*Id.* 14.)

Nonetheless, even if Defendants seek only a subset of the Mediation materials, they give the Court no guidance on how to carry out its task.  The Memorandum seeks an order to "allow discovery" (*id.* 25; *see also id.* 11 (requesting Court "to permit discovery of settlement communications")) but does not set out how the Court is supposed to modify the December 26, 2012 Order at all.  As such, the Motion fails to comply with the Federal Rules of Bankruptcy Procedure, which require that a motion "shall state with particularity the grounds therefor, and shall set forth the relief or order sought."  FED. R. BANKR. P. 9013.  The "relief or order sought" in the present Motion is so vague as to be incomprehensible, and AFI and the other entities affected by the requested relief therefore can hardly be expected to address Defendants' contentions head on.  As such, because Defendants do not adequately detail the relief they seek, their Motion should be denied on this ground alone.

> **2.      The Unidentified Mediation Materials Are Not "Critical" to the Pending Action.**

Defendants cannot show that any Mediation materials would be critical, not just relevant, to the indemnification actions.  As regards bankruptcy proceedings, a "party seeking disclosure of confidential mediation communications must demonstrate (1) a special need for the confidential material, (2) resulting unfairness from a lack of discovery, and (3) that the need for the evidence outweighs the interest in maintaining confidentiality."  *Teligent* III, 640 F.3d at 58 (citations omitted).  This standard is "consistent with the standard governing modification of protective orders entered under Federal Rule of Civil Procedure 26(c).…  [O]nce a protective order has been entered and relied upon, it can only be modified if an extraordinary circumstance or compelling need warrants the requested modification."  *Id.* at 59 (internal citations and

quotation marks omitted).[3]  To satisfy this burden, the "party seeking discovery of confidential

mediation communications must show more than *mere relevance to a pending action*. Instead, it

must demonstrate a special need and resulting unfairness, *i.e.*, that the evidence is critical, not

otherwise available, and the need for the evidence outweighs the interest in maintaining

confidentiality."  *In re Teligent, Inc.*, 417 B.R. 197, 208 (Bankr. S.D.N.Y. 2009), *aff'd*, No. 09-

Civ. 09674 (PKC), 2010 WL 2034509 (S.D.N.Y. May 13, 2010), *aff'd*, 640 F.3d 53 (2d Cir.

2011)  [hereinafter, "*Teligent I*"] (emphasis added).

       While Defendants frequently refer to the Mediation materials as "relevant" or "highly

relevant" (*e.g.,* Mem. 3), this argument misses the point: the question is whether keeping the

material confidential *prevents* Defendants from defending the action.   A plaintiff in an

indemnification action must show "how [the indemnitee] determined the amount for the

Settlement Payment, and, thus, how that amount is reasonable…."  *Torain v. Clear Channel

Broad., Inc.*, 651 F. Supp. 2d 125, 155 (S.D.N.Y. 2009) (footnote call number omitted).[4]  Of

course, the settlement amounts and much about the process leading up to those settlements has

been previously litigated and is publicly available.  Despite this, and despite that Defendants

appear to already have collected evidence bearing on the reasonableness of the settlements,

Defendants believe they deserve open-box discovery.  Yet Defendants fail to indicate how

additional evidence would be used to prevail in the indemnification actions, let alone that it is

"critical" to their defense.

---

[3]    "[B]ecause the *In re Teligent* test is virtually the same as the test for modifying a protective order, the 'special
       need' required by the *In re Teligent* test must be like the 'compelling need' required to modify a protective
       order."  *Dandong v. Pinnacle Performance Ltd.*, No. 10 CIV. 8086 LBS, 2012 WL 4793870, at *4 (S.D.N.Y.
       Oct. 9, 2012).

[4]    While *Torain* applies Texas substantive law*, see id.* at 149, Defendants rely upon it in the Memorandum.  (*See*
       Mem. 12.)

8

Underscoring the unprecedented nature of their request, the *only* binding authority that Defendants cite concerning the unsealing of settlement discussions in a bankruptcy proceeding *declined to permit release*.  In fact, the confidentiality of bankruptcy settlement discussions was affirmed in three separate instances—by then-Chief Judge Stuart M. Bernstein of United States Bankruptcy Court in *Teligent* I; by U.S. District Judge P. Kevin Castel in *In re Teligent Services, Inc.*, No. 09 CIV. 09674 (PKC), 2010 WL 2034509 (S.D.N.Y. May 13, 2010), *aff'd*, 640 F.3d 53 (2d Cir. 2011); and by a unanimous three-judge panel of the Second Circuit in *Teligent* III (collectively, the "*Teligent* Cases").

Defendants' assertion that the *Teligent* Cases are distinguishable—relegated to a footnote (Mem. 16–17 n.4)—misses the mark.  In the *Teligent* Cases, the law firm K&L Gates LLP ("K&L") attempted to modify a Bankruptcy Court's confidentiality order to obtain discovery for pending malpractice litigation.  K&L had defended a client in an adversary proceeding brought by the unsecured claims representative, Savage, seeking money owed to the client's former employer.  After a failed mediation, the client lost at trial, fired K&L, and with new counsel sought to attack the judgment.  After a 2008 mediation, Savage and the client settled for $6 million.  As part of the settlement, the client agreed to sue K&L for malpractice and provide a portion of the proceeds to Savage.  In defending the malpractice action, K&L sought communications from the mediations.

In *Teligent* I, the Court specifically stated the "[m]ediations communications may be relevant to some of the issues in the" pending malpractice action.  417 B.R. at 208.  The Court also noted the requested "communications may illuminate [the client's] reason for settling, and how the parties arrived at the Agreed Valuation of $16 million…." *Id.*  However, the court determined the law firm had not demonstrated that its **need** for the evidence outweighed the

interest in maintaining confidentiality.  *Id.* at 208.  Judge Bernstein explained that "[m]ediation plays a critical role in the resolution of lawsuits" and "[m]ediation requires confidentiality to promote the candor critical to its success." *Id.* at 205–06.  Judge Bernstein further explained that the moving party simply sought "blanket relief" from the confidentiality limitations and failed to explain why the requested evidence was "critical" to the defense of the matter.  *Id.* at 207–08.  Similarly, the confidential Mediation materials may relate to the reasons for settling and the amount of settlement; as in the *Teligent* Cases, however, they are are not critical to the indemnification actions because other evidence is available to Defendants.

Courts in this District abide by the strict standard established in the *Teligent* Cases.  In *Dandong*, which applied *Teligent* III, Plaintiffs brought a fraud action based on credit derivative notes the defendants had created.  *See* 2012 WL 4793870, at *1; *see also Dandong v. Pinnacle Performance Ltd.*, No. 10 Civ. 8086(LBS), 2011 WL 5170293, at *1 (S.D.N.Y. Oct. 31, 2011), *aff'd in part*, *Lam Yeen Leng v. Pinnacle Performance Ltd.*, 474 F. App'x 819 (2d Cir. 2012). The defendants sought statements that the plaintiffs had made during confidential mediation negotiations about their reasons for investing in the notes and the material on which they relied, *Dandong*, 2012 WL 4793870, at *2 (footnote call number and citation omitted), evidence that is highly relevant in an action for fraud.  The evidence would have been used to impeach the plaintiffs' evidence at trial—as the Bankruptcy Judge noted, the statements "relate to the very issue that's going on here."  *Id.* (alteration, citation, and internal quotation marks omitted). Nevertheless, the District Court determined the Bankruptcy Court erred by permitting discovery of the confidential settlement discussions, calling the decision "contrary to law." *Id.* at *5.  The District Court found no special need for the materials, as it was not extraordinary "when

10

plaintiffs enter mediation against some of all possible defendants, and the remaining defendants want to use material from that mediation to impeach plaintiffs." *Id.* at *6.

*Dandong* is on all fours with this case. Defendants are alleged to have been creditors to ResCap in the bankruptcy proceedings; yet the mere fact that mediation did not involve "all possible" creditors does not eviscerate the rationale underlying the confidentiality of mediation. *Id.* As stated *infra*, Defendants appear to have found other information necessary for defending this action (*see, e.g.,* Mem. 18 (describing "Plaintiff's limited production")), and they may be able to obtain more through other avenues they have failed to exhaust. Accordingly, much of what they seek amounts to impeachment evidence, which could contradict the testimony of participants in the ResCap settlement. But Defendants' desire to accumulate impeachment evidence regarding the propriety of the settlement is insufficient to overcome the need for confidentiality in mediation. *See Dandong*, 2012 WL 4793870, at *5.

Notably, the *Teligent* Cases refused to permit modification of the confidentiality provisions even though the plaintiff in the malpractice action waived any mediation privilege and agreed not to assert the privilege to withhold documents. *Teligent* I, 417 B.R. at 204 (citation omitted). In fact, the *only* decision Defendants cite that modifies a Bankruptcy Court's confidentiality order was predicated in part upon "the fact that both mediating parties sought to be served by the orders … do not oppose modification of the orders…." *Franklin United Methodist Home, Inc. v. Lancaster Pollard & Co.*, 909 F. Supp. 2d 1037, 1045 (S.D. Ind. 2012) (footnote call number omitted). Not only is *Franklin United Methodist Home* nonbinding authority from an Indiana District Court, but it involves an *opposite* situation: In the present controversy, the Mediation parties, from whom discovery is sought, strongly object to the modification of the December 26, 2012 Order. (*See* Mem. 11 (citing third-party objections).)

Defendants also cite numerous decisions outside the bankruptcy context in which courts have permitted unsealing of mediation communications. (*See, e.g., id*. 14.) Even assuming these cases are applicable in this context—and, as will be described *infra*, unique considerations underlie the confidentiality of bankruptcy mediations—they are factually distinguishable. For instance, while Defendants argue one case, *Conoco Inc. v. Boh Brothers Construction Co*., held "the indemnitor was entitled to discovery of communications from the indemnitee's mediation" (Mem. 14), in fact the decision *never mentions any mediation*. *See generally* 191 F.R.D. 107 (W.D. La. 1998). Furthermore, as there was no mediation, there was no confidentiality order about the mediation. *See generally id*. Instead, the Court was confronted with a question of attorney-client privilege and work-product protections—issues not raised by Defendants. (*See generally* Mem.)[5]

### 3.    Defendants Must Seek the Requested Information from Non-Confidential Sources.

The Motion seeks the extraordinary step of unsealing confidential Mediation materials, yet fails to indicate how Defendants have taken steps to obtain the information regarding the settlement through other means—which courts routinely require. As the Bankruptcy Court noted in *Teligent* I, a litigant "can obtain the evidence it says the Mediations communications may clarify through other means if the communications are not otherwise privileged," and noted the law firm could have asked the plaintiff "why he chose to settle rather than pursue his post-trial motions, and how he arrived at the Agreed Valuation without breaching the confidentiality provisions in the Mediation Orders." 417 B.R. at 208.

---

[5]    Other cited cases are inapplicable for similar reasons. *See DH Holdings Corp. v. Marconi Corp. PLC*, 809 N.Y.S.2d 404, 405 (Sup. Ct. 2005) (no court-ordered mediation or mediation order; party sought privileged and work-product documents); *see also First Fid. Bancorporation v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*., No. CIV. A. 90-1866, 1992 WL 55742, at *2 (E.D. Pa. Mar. 13, 1992) (no court-ordered mediation); *Bradfield v. Mid-Continent Cas. Co*., 15 F. Supp. 3d 1253, 1256–57 (M.D. Fla. 2014) (same); *Cooper v. Meridian Yachts, Ltd*., No. 06-61630-CIV, 2008 WL 2229552, at *10 (S.D. Fla. May 28, 2008) (same).

Defendants assert they need the confidential materials to prove the reasonableness of "the allocation of the settlement to each Defendant" in the pending indemnification actions. (Mem. 13.) Yet much of the publicly available documentation relates to the allocation of settlements, including the amounts creditors would receive. (*See, e.g.,* Notice of Debtors' Motion for an Order Under Bankruptcy Code Sections 105(a) and 363(b)…, Case No. 12-12020 (MG) [ECF No. 3814-1].)[6]

Even for materials not in the public record, as in the *Teligent* Cases, much of what Defendants seek may be available from depositions and written discovery from key players. Notably, this discovery need not conflict with the December 26, 2012 Order, if it does not entail recounting the confidential discussions among the parties; anything provided to Judge Peck or the Mediation parties; or correspondence, draft resolutions, offers, and counteroffers produced for or as a result of the Mediation. (*See* Dec. 26, 2012 Order ¶ 4.) Defendants provide no indication they have attempted, or will attempt, to take this less drastic method of defending the action, and accordingly have failed to indicate a special need for the requested modification.

Furthermore, extensive documentation bearing on the settlement of the ResCap bankruptcy was introduced in multiple hearings and two trials in this Court. For instance, the Phase I trial lasted six days and included written testimony from thirteen witnesses and the admission of more than 700 exhibits. (Findings of Fact ¶ 306.) At a five-day hearing on plan confirmation and Phase II trial issues in November 2013, the Court admitted into evidence the written direct testimony of 31 witnesses, and afterwards the parties submitted more than 900 exhibits that the Court admitted into evidence. (*Id.*)

---

[6]  It is not clear why participants' views of one another's negotiating positions can be relevant given that the final settlement is the only one that was approved.

Much more documentation concerning the allocation of the settlements is available in the public record.  Crucially, it is not the burden of AFI—or any party to the Mediation—to identify what evidence exists.  Instead, Defendants have the obligation to affirmatively show the evidence would not otherwise be available.  *See Teligent* III, 640 F.3d at 59 (noting the "strong presumption against the modification of a protective order") (citation and internal quotation marks omitted).  As Defendants have not explained the efforts, if any, they have taken to obtain this information before filing their Motion, they have failed to meet their burden of proving the information is otherwise unavailable.

### 4.    Modification of the Mediation Order Will Undermine Future Bankruptcy Mediations.

Courts have long recognized that the confidentiality of mediations promotes candid discussions that speed settlements.  This Court recognized the importance of confidential discussions for this specific, complex case as well, noting that "until the parties, the constituencies, begin speaking with each other, the difficult issues aren't going to move forward.… The process will work best if it can occur confidentially between the parties.… (Sept. 27, 2012 Hr'g 19:11–20:6.)   The Court further noted the confidentiality provision of the December 26, 2012 Order was meant to allow "the parties to meet in a confidential forum, and to articulate and present their respective positions and interests."  (Findings of Fact ¶ 74 (citation omitted).)

The parties to the Mediation also recognized the need for confidentiality, many emphasizing that confidentiality was required in order to participate in the Mediation.  (*See, e.g.,* Limited Objection of the Steering Committee Group …, Case No. 12-12020 (MG) [ECF No. 2400] ¶ 7 ("Confidential information provided to the Mediator should, at a minimum, be provided to all parties that have entered or agree to be bound by confidentiality agreements.

Alternatively, the order approving the Mediation Order can expressly order confidential treatment of any information shared in the mediation."); Debtors' Omnibus Reply …, Case No. 12-12020 (MG) [ECF No. 2447] 3.)  As the Court stated at a December 20, 2012 hearing, "I think mediation is most useful when information is freely shared among the principal parties to the mediation.  When that can't always be done, you can certainly provide information for the mediator's-eyes-only.  *It's preferable when it's shared more broadly*."  (Tr. of Dec. 20, 2012 Hr'g, Case No. 12-12020 (MG) [ECF No. 2523] 67:17–21 (emphasis added).)

Defendants adopt a myopic view of the purpose of the confidentiality provision of the December 26, 2012 Order.  Specifically, Defendants assert that "two of the public policy considerations underlying the confidentiality of mediation communications" are not implicated by the Motion because the mediator remains protected from discovery and the parties' mediation statements are not being improperly used against them in the case in which they were made. (Mem. 19.)  This argument fails to consider the broader effects modifying the confidentiality of the Mediation proceedings would have on future mediations in other bankruptcy proceedings.  If this process had lacked the confidentiality protections in place, many parties likely would have failed to participate or would have failed to divulge sensitive information in the discussions.  As the Second Circuit has recognized, confidentiality in mediation "proceedings promotes the free flow of information that may result in the settlement of a dispute."  *Teligent* III, 640 F.3d at 57 (citation and internal quotation marks omitted).  "Were courts to cavalierly set aside confidentiality restrictions on disclosure of communications made in the context of mediation, parties might be less frank and forthcoming during the mediation process or might even limit their use of mediation altogether."  *Id.* at 59–60.[7]  The failure of settlement negotiations would

---

[7]    As the Second Circuit has commented about its Civil Appeals Management Plan, "If participants cannot rely on the confidential treatment of everything that transpires during these sessions then counsel of necessity will feel

have led to contentious, lengthy litigation with many more parties—a consideration Defendants fail to address in their Motion.

These protections do not end when the mediation is over.  As Judge Bernstein explained in *Teligent* I, "the need for confidentiality does not terminate automatically when the litigation has concluded."  417 B.R. at 209.  Here, the Mediation parties certainly believed those protections would continue.  And that the protections would continue was a critical part of the parties' willingness to participate: unlike a typical settlement mediation, the Debtors' Chapter 11 plan contemplated continued litigation, disputes, and government investigations.

In their brief, Defendants argue the Mediation parties should not have relied on the confidentiality provisions of the December 26, 2012 Order because the Court retained the right to modify its provisions later.  (*See* Mem. 20 ("Where a litigant could not reasonably have relied on the continuation of a protective order, a court may properly permit modification of the order. … That is particularly true here, where the Mediation Order itself reflected the Court's ability to modify it.") (brackets, citations, and internal quotation marks omitted).)  This is a specious argument.  And it is one that has been squarely rejected by the courts.  *Teligent* I, 417 B.R. at 209 n.5 ("K&L argues that Savage had no basis to rely on the confidentiality provisions of the Teligent Mediation Order because it expressly provided that the Court could order 'otherwise.' The latter phrase merely recognized the Court's inherent power to lift or limit confidentiality in appropriate circumstances, a power that existed even if the Teligent Mediation Order did not

---

constrained to conduct themselves in a cautious, tight-lipped, non-committal manner more suitable to poker players in a high-stakes game than to adversaries attempting to arrive at a just resolution of a civil dispute. This atmosphere if allowed to exist would surely destroy the effectiveness of a program which has led to settlements…." *Lake Utopia Paper Ltd. v. Connelly Containers, Inc.*, 608 F.2d 928, 930 (2d Cir. 1979).

provide for it.  If K&L were right, no one could ever rely on the confidentiality of mediation communications.")[8]

As the court in *Teligent I* noted, parties in a confidential mediation "rel[y] on the promise of confidentiality to speak candidly."  *Id.* at 209 (footnote call number omitted).  A "compelling reason to discourage modification of protective orders in civil cases is to encourage testimony in pre-trial discovery proceedings and to promote the settlement of disputes.  It is, moreover, presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied."  *SEC v. TheStreet.com*, 273 F.3d 222, 230 (2d Cir. 2001).  For that reason, "[w]hen courts in our circuit determine that a party has relied on a protective order, it is very difficult for movants to modify that order."  *Dandong*, 2012 WL 4793870, at *5 (footnote call number omitted).

---

[8]   While Defendants cite authorities in which courts unsealed mediation communications, many of these involved fewer participants than were involved in the Mediation; as such, those courts were confronted with a situation in which many fewer parties relied on the order.  *See, e.g., Bradfield v. Mid-Continent Cas. Co*., 15 F. Supp. 3d 1253, 1255 (M.D. Fla. 2014) (noting three parties participated in settlement).

17

Given that the parties indisputably relied on the December 26, 2012 Order, Defendants have not come close to meeting their burden with their vague request, especially considering their lack of diligence and the vital interests underlying confidentiality in mediation discussions.

## CONCLUSION

For the foregoing reasons, AFI respectfully requests that the Court deny the Motion.

Respectfully submitted,

Dated:  July 2, 2015

/s/ *Ray C. Schrock*

Ray C. Schrock
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, N.Y. 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Jeffrey S. Powell
Daniel T. Donovan
Jason R. Parish
KIRKLAND & ELLIS LLP
655 15th Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*Counsel to Ally Financial, Inc.*