Hearing Date: July 30, 2015
Reply Deadline: July 20, 2015

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>RESIDENTIAL CAPITAL, LLC, *et al.*,<br><br>Debtors. | Case No. 12-12020 (MG) (Ch. 11)<br>(Jointly Administered) |
| In re:<br><br>RESCAP LIQUIDATING TRUST<br>MORTGAGE PURCHASE LITIGATION | Adv. Proc. No. 14-07900 (MG) |
| *This document relates to:*<br><br>Residential Funding Co. v. HSBC Mortg. Corp.<br>(USA), Adv. Proc. No. 14-01915 (MG)<br><br>Residential Funding Co. v. UBS Real Estate<br>Secs., Inc., Adv. Proc. No. 14-01926 (MG)<br><br>ResCap Liquidating Trust v. Summit Fin.<br>Mortg. LLC, Adv. Proc. No. 14-01996 (MG)<br><br>ResCap Liquidating Trust v. Mortg. Investors<br>Grp., Inc., Adv. Proc. No. 14-02004 (MG)<br><br>Residential Funding Co. v. SunTrust Mortg. Inc.,<br>Adv. Proc. No. 13-1820 (MG) | |

**RESPONSE OF THE RESCAP LIQUIDATING TRUST AND RESIDENTIAL FUNDING**
**CO. TO DEFENDANTS' MOTION TO MODIFY ORDER APPOINTING MEDIATOR**

# CONTENTS

Page

PRELIMINARY STATEMENT ................................................................1

ARGUMENT .................................................................................3

I.    DEFENDANTS HAVE NOT SHOWN A SPECIAL NEED TO MODIFY THE
      ORDER ...............................................................................4

      A.    Plaintiffs Cannot Unilaterally "Waive" The Mediation Order Or General
            Order ..........................................................................4

      B.    Plaintiffs' Indemnity Claim Does Not Put Mediation Communications At
            Issue ..........................................................................7

      C.    Allocation Issues Can Be Assessed Without Lifting The Order ...........14

      D.    RFC's Good Faith In Settling Can Be Assessed Without Lifting The Order ........15

II.   THE STATUS QUO IS FAIR TO PLAINTIFFS, DEFENDANTS, AND THE
      DOZENS OF MEDIATION PARTICIPANTS INCLUDING JUDGE PECK.................17

III.  MAINTAINING CONFIDENTIALITY OF THE MEDIATION OUTWEIGHS
      DEFENDANTS' PURPORTED NEED TO LIFT THE ORDER ...................................21

CONCLUSION.................................................................................25

# TABLE OF AUTHORITIES

**Page**

## Cases

*Alton M. Johnson Co. v. M.A.I. Co.*,
    463 N.W.2d 277 (Minn. 1990) ................................................................11

*In re An-Tze Cheng*,
    308 B.R. 448 (B.A.P. 9th Cir. 2004) .......................................................15

*Atlantic Richfield Co. v. Interstate Oil Transp. Co.*,
    784 F.2d 106 (2d Cir. 1986) ...................................................................20

*Bovis Lend Lease, LMB, Inc. v. Seasons Contracting Corp.*,
    No. 00 CIV. 9212 (DF), 2002 WL 31729693 (S.D.N.Y. Dec. 5, 2002) ..................17

*Bradfield v. Mid-Continent Cas. Co.*,
    15 F. Supp. 3d 1253 (M.D. Fla. 2014) ....................................................10

*Burlington N. & Santa Fe Ry. Co. v. Han*,
    No. 14-CV-69-CVE-PJC, 2015 WL 401744 (N.D. Okla. Jan. 28, 2015) ...........22

*Concerned Citizens of Belle Haven v. Belle Haven Club*,
    No. 3:99-CV-1467, 2002 WL 32124959 (D. Conn. Oct. 25, 2002) ................22

*Connell v. Bernstein-Macaulay, Inc.*,
    407 F. Supp. 420 (S.D.N.Y. 1976) ...........................................................7

*Conoco Inc. v. Boh Brothers Constr. Co.*,
    191 F.R.D. 107 (W.D. La. 1998) (Defs.' Br. 14) ......................................10

*Cooper v. Meridian Yachts, Ltd.*,
    No. 06-61630-C 2008 WL 2229552 (S.D. Fla. May 28, 2008) (Defs. Br. 14) .......10

*DH Holdings Corp. v. Marconi Corp. PLC*,
    809 N.Y.S.2d 404 (N.Y. Sup. Ct. 2005) (Defs.' Br. 14) ...........................10

*Dandong v. Pinnacle Performance Ltd.*,
    No. 10 CIV. 8086 LBS, 2012 WL 4793870 (S.D.N.Y. Oct. 9, 2012) ...........4, 6

*Deutsche Bank Trust Co. of Ams. v. Tri-Links Inv. Trust*,
    837 N.Y.S.2d 15 (App. Div. 2007) .......................................................7, 13

*FDIC v. Ernst & Ernst*,
    677 F.2d 230 (2d Cir. 1982) ...................................................................4

*First Fidelity Bancorp. v. National Union Fire Insurance Co. of Pittsburgh*,
    Civ. A. No. 90-1866, 1992 WL 55742 (E.D. Pa. Mar. 13, 1992) ...............10

*In re Innkeepers USA Trust*,
    442 B.R. 227 (Bankr. S.D.N.Y. 2010) ...................................................15

*Iridium India Telecom Ltd. v. Motorola, Inc.*,
165 F. App'x 878 (2d Cir. 2005) .................................................................4

*Jackson Nat'l Life Ins. Co. v. Workman Sec. Corp.*,
803 F. Supp. 2d 1006 (D. Minn. 2011)) (emphasis added ...................................11

*Lake Utopia Paper Ltd. v. Connelly Containers, Inc.*,
608 F.2d 928 (2d Cir. 1979)................................................................22

*Lamar Advertising of South Dakota, Inc. v. Kay*,
267 F.R.D. 568 (D.S.D. 2010) ..............................................................10

*In the Matter of Rehabilitation of Fin. Gty. Ins. Co.*,
No. 401265/12 (N.Y. Sup. Aug 16, 2013) ...................................................12

*Metro. Life Ins. Co. v. Aetna Cas. & Sur. Co.*,
730 A.2d 51 (Conn. 1999) ...................................................................9

*NLRB v. Joseph Macaluso, Inc.*,
618 F.2d 51 (9th Cir. 1980) .................................................................23

*New Jersey Carpenters Health Fund v. Residential Capital, LLC*,
Civ. No. 08-8781-HB (S.D.N.Y. Oct. 7, 2013) ..............................................11

*OneBeacon Insurance Co. v. Forman Int'l, Ltd.*,
No. 04 CIV. 2271 (RWS), 2006 WL 3771010 (S.D.N.Y. Dec. 15, 2006) ......................8

*PETCO Animal Supplies Stores, Inc. v. Ins. Co. of N. Am.*,
*No. CIV. 10-682 SRN/JSM, 2011 WL 2490298 (D. Minn. June 10, 2011)* .........8, 11, 18

*In re Residential Capital LLC*,
480 B.R. 550 (Bankr. S.D.N.Y. 2012)........................................................18

*Residential Funding Co. v. UBS Real Estate Secs., Inc.*,
Adv. Proc. No. 14-01926 (MG) ...............................................................13

*Savage & Assocs., P.C. v. K&L Gates LLP (In re Teligent, Inc.)*,
640 F.3d 53 (2d Cir. 2011).................................................................3, 20

*In re SunCruz Casinos, LLC*,
298 B.R. 821 (Bankr. S.D. Fla. 2003) ......................................................15

*In re Teligent, Inc.*,
417 B.R. 197 (Bankr. S.D.N.Y. 2009), *aff'd, Teligent*,
2010 WL 2034509, *aff'd, Teligent*, 640 F.3d 53 .................................9, 10, 16, 21

*In re Teligent Servs., Inc.*,
No. 09 CIV. 09674 (PKC), 2010 WL 2034509 (S.D.N.Y. May 13, 2010) ............4, 5, 13, 16

*In re Tribune Co.*,
464 B.R. 126 (Bankr. D. Del.) ..........................................................17, 22

*UnitedHealth Group Inc. v. Columbia Casualty Co.*,
47 F. Supp. 3d. 863 (D. Minn. 2014) (8th Cir. Jan. 14, 2015).........................14, 15

*Vetter v. Subotnik*,
    844 F. Supp. 1352 (D. Minn. 1992)..............................................................................11, 18

## Statutes

5 U.S.C. § 574(b)-(c) ...............................................................................................................4

Fed. R. Civ. P. 26(b)(1)............................................................................................................25

## Miscellaneous

*Protecting Confidentiality in Mediation*, 98 Harv. L. Rev. 441, 445 (1984)................................22

The ResCap Liquidating Trust and Residential Funding Co. (collectively, "Plaintiffs"), in their capacities as parties to the above-listed bankruptcy case and Plaintiffs in the above-listed adversary proceedings, respectfully submit this Response To Defendants' Motion to Modify Order Appointing Mediator.

## PRELIMINARY STATEMENT

The Mediation Order entered by this Court granted an assurance of confidentiality to dozens of participants in one of the most complex bankruptcy mediations in recent history. To overcome that assurance of confidentiality under Second Circuit caselaw, Defendants must show a "special need" (akin to "extraordinary circumstances") that outweighs the interest in protecting confidentiality in mediations. Defendants have not done so.

Defendants' brief suggests that this motion presents a simple issue affecting only Plaintiffs and the Defendants in these five adversary proceedings. That is mistaken. An assurance of confidentiality is critical to mediation because it encourages full disclosure, candor, and forthright discussions free from the fear that something said in the mediation might later be dredged up out of context. Here, the dozens of participants in RFC's bankruptcy case, as well as Judge Peck as mediator, were entitled to rely upon the assurance of confidentiality in the Mediation Order. If Defendants' arguments were accepted, those parties, and others in future mediations throughout the District and the country, would think twice about participating in future mediations in the manner and spirit necessary for mediations to succeed.

Against these important policy concerns, Defendants' primary contention is that Plaintiffs put confidential communications at issue merely by bringing an indemnity claim, and thereby purportedly putting the "reasonableness of the Global Settlement" at issue. Defendants' argument is incorrect for several reasons.

*First*, neither Plaintiffs, nor any of the dozens of other mediation participants, nor even the mediator himself, can unilaterally waive (by implication or otherwise) the confidentiality requirements that this Court imposed, in the Mediation Order, for the benefit of all participants in the mediation.

*Second*, even if Plaintiffs could unilaterally and impliedly waive the protections of the Mediation Order, they have not done so.  Courts have overwhelmingly held that merely bringing an indemnity claim and putting the reasonableness of a settlement at issue does not put settlement communications, attorney-client communications, or the like, at issue.  Defendants' argument contradicts controlling Second Circuit authority, and their brief fails to cite a single case to the contrary in the context of confidential mediation communications.  Indeed, this Court was able to assess the reasonableness of the Global Settlement at Plan Confirmation based on the same extensive record that is being been made available to Defendants here, without ever invading mediation confidentiality.  The Court has also consistently denied prior requests to lift mediation privilege, notwithstanding arguments similar to those Defendants assert here.

*Third*, Defendants' argument appears to falsely assume that the reasonableness of the Global Settlement, for purposes of Plaintiffs' indemnity claim, should be measured by the *subjective* expressions of the mediation participants and Judge Peck.  That is incorrect.  Courts applying New York and Minnesota law have overwhelmingly held that the test is objective, and have considered facts bearing on liability, damages, and the risks of going to trial.  Defendants' brief fails to address the mountains of documents Plaintiffs have produced (and are still producing) on these precise issues, including the entire record before this Court when it evaluated the Global Settlement's reasonableness, as well as voluminous additional materials that allow Defendants to examine the claims, defenses, and damages aspects of the underlying

2

claims against RFC.  Indeed, although this Court instructed Defendants to wait and see what they received in Plaintiffs' productions before bringing this Motion, and Defendants indicated they would do so,[1] Defendants' brief fails to explain why those materials are not sufficient.

*Fourth*, Defendants' reliance on the Committee's objection to the pre-petition Original RMBS Settlement is misguided.  The scope and terms of the Original RMBS Settlement differed substantially from those in the ultimate Global Settlement.  The original settlement is of limited relevance here for the additional reasons that it was not governed by a mediation order, and did not implicate the confidentiality interests of dozens of participants, including Judge Peck.  Any arguments made in opposition to the Original RMBS Settlement can, in any event, be made again here by Defendants on the basis of the existing record.

## ARGUMENT

It is undisputed that this Court's orders preclude any of the dozens of mediation participants, including Judge Peck, from disclosing mediation materials.  *See* General Order M-390 ("Any statements made by the mediator, by the parties or by others during the mediation process shall not divulged . . . to the court or to any third party."); Mediation Order, Defs.' Br. Ex. B (confidential mediation material "shall be strictly confidential and shall not be admissible for any purpose in any judicial or administrative proceeding . . . and no person . . . shall in any way disclose [such material] to any non-party or to any court").  Thus, as Defendants acknowledge, this motion may be granted only if Defendants show "(1) a special need for the confidential material, (2) resulting unfairness from a lack of discovery, and (3) that the need for the evidence outweighs the interest in maintaining confidentiality."  Defs.' Br. 11-12 (quoting *Savage & Assocs., P.C. v. K&L Gates LLP* (*In re Teligent, Inc.*), 640 F.3d 53, 58 (2d Cir. 2011)

---

[1]  *See* H'rg. Tr. at 32:14-25, Case No. 14-07900 (Bankr. S.D.N.Y. April 30, 2015), ECF 82.

("*Teligent*")); *accord Iridium India Telecom Ltd. v. Motorola, Inc.*, 165 F. App'x 878, 880 (2d

Cir. 2005) (affirming denial of motion to modify protective order because the movant had not

shown "a compelling need or extraordinary circumstances").  Defendants fail to satisfy any, let

alone all, of these three requirements.

## I.   DEFENDANTS HAVE NOT SHOWN A SPECIAL NEED TO MODIFY THE ORDER

The "special need" requirement adopted by the Second Circuit in *Teligent* erects a

"strong" and "very high bar" to disclosure of confidential mediation materials.  *Dandong v.*

*Pinnacle Performance Ltd.*, No. 10 CIV. 8086 LBS, 2012 WL 4793870, at *5 (S.D.N.Y. Oct. 9,

2012).  The requirement derives from the "exceptional circumstances" test imposed by federal

statute as a precondition to disclosure of materials generated during federal agency mediations.

*Teligent*, 640 F.3d at 58-59 (citing 5 U.S.C. § 574(b)-(c)).  The "exceptional circumstances"

must be truly exceptional: "harm to health or public safety," an actual violation of law resulting

from nondisclosure, or similar forms of "manifest injustice."  *Id.*; *see also id.* at 59 ("[O]nce a

protective order has been entered and relied upon, 'it can only be modified if an 'extraordinary

circumstance' or 'compelling need' warrants the requested modification.'" (quoting *FDIC v.*

*Ernst & Ernst*, 677 F.2d 230 (2d Cir. 1982))); *Dandong*, 2012 WL 4793870, at *5 ("The Second

Circuit's analogy to this presumption [of confidentiality] shows that they wanted a strong

standard.").

### A.   Plaintiffs Cannot Unilaterally "Waive" The Mediation Order Or General Order

Defendants first try to meet the "very high bar" of the "special need" requirement by

asserting that Plaintiffs waived the confidentiality provisions of the Mediation Order and General

Order simply by bringing a claim for indemnity, and thereby purportedly putting the

reasonableness of the Global Settlement "at issue."  Defs.' Br. 12-14.  This is mistaken.  Those

4

Orders did not grant Plaintiffs, or any of the dozens of other mediation participants, or even

Judge Peck as mediator, a personal confidentiality privilege that they have the unilateral right to

waive.  To the contrary, the Orders gave *every* mediation participant, including the mediator, an

assurance of confidentiality *notwithstanding* any purported future "waiver" by others.  *See In re*

*Teligent Servs., Inc.*, No. 09 CIV. 09674 (PKC), 2010 WL 2034509, at *7 (S.D.N.Y. May 13,

2010) ("The confidentiality restrictions in the Mediation Orders benefited both parties and

waiver by Mandl alone was insufficient to permit disclosure. . . .").  Were that not so, each

mediation participant could unilaterally waive the confidentiality protections accorded to every

other—a particularly perverse outcome here, because it would grant each mediation participant a

veto over the assurance of confidentiality this Court accorded to *dozens* of others, including

Judge Peck.  As this Court has explained, "[t]he parties . . . did not make a voluntary decision to

protect from discovery their confidential negotiations during the mediation overseen by Judge

Peck.  The mediation order . . . eliminated any choice in the matter . . . .  General Order M-390

imposes a similar prohibition."  Hr'g. Tr. at 15-16, Case No. 12-12020, (Bankr. S.D.N.Y. Aug.

14, 2013), ECF 4686.

The issue of waiver is significant not only to Plaintiffs, Defendants, the dozens of

mediation participants, and Judge Peck, but also, more broadly, to other judges, mediators, and

litigants across the District and elsewhere.   Indeed, the District's decision to implement

mediation confidentiality by default, as stated in the General Order, reflects a determination that

confidentiality is significant not only because it facilitates disclosure and settlement in specific

mediations, but also because it enables judges and mediators to credibly assure litigants in future

unrelated actions that statements made during mediation will remain confidential.  *Teligent*

supports the same conclusion.  *See Teligent*, 640 F.3d at 57-58 ("[Confidentiality] promotes the

free flow of information that may result in the settlement of a dispute and protect[s] the integrity

of alternative dispute resolution generally. . . .”); *Dandong*, 2012 WL 4793870, at *5 (“[T]he

[*Teligent*] opinion’s policy rationale is the promotion of the confidentiality of mediation, [which]

favors a high threshold to overturn a presumption of confidentiality . . . .”).

In recognition of the foregoing, this Court has consistently rejected attempts to lift the

Mediation Order and General Order as relevant here.  When certain junior secured noteholders

sought to lift mediation confidentiality as part of a challenge to the Global Settlement, this Court

refused to do so, noting that it was “a clearer case than the reliance on advice of counsel because

[the District’s] general order with respect to mediation makes it clear, it can’t be disclosed

period; full stop.”  Hr’g Tr. at 34:6-10, Case No. 12-12020 (Bankr. S.D.N.Y. July 15, 2013),

ECF 4275; *see id.* (“This seems an utter waste of time to me.”).  The Court rebuffed a second

attempt to lift mediation confidentiality during a challenge to the FGIC Settlement:  “What you

want to do is break into the mediation and find out everything that happened in a confidential

mediation.  That you’re not going to do.”  H’rg Tr. at 26:9-11, Case No. 12-12020 (Bankr.

S.D.N.Y. July 25, 2013), ECF 4380.  And the Court reached the same conclusion a third time at

the Confirmation Hearing, during which it noted the “long history [of litigants] inquiring about

the substance of what was discussed in the mediation,” before again reconfirming the Court’s

prior holdings:

> I’ve been absolutely consistent in my rulings, which is that the mediation
> privilege applies to whatever was discussed during the mediation . . . . [Y]ou can
> ask your questions, they’re going to wind up with objections and they’re going to
> wind up with me sustaining it.

Hr’g. Tr. at 85-86, Case No. 12-12020 (Bankr. S.D.N.Y. Nov. 20, 2013), ECF 5972; *see also*

Findings of Fact, at ¶ 121, *id.*, ECF 6066 (“The communications and analyses relating to

negotiations conducted during the Plan Mediation are confidential pursuant to the Mediation

Order and cannot be disclosed in detail.").

The Court made it a point to notify Defendants of the foregoing holdings. *See* H'rg. Tr.

at 31-32, Case No. 14-07900 (Bankr. S.D.N.Y. April 30, 2015), ECF 82 ("The JSNs wanted

discovery about things that happened in the mediation. . . .  I was pretty rigorous in enforcing the

mediation privilege and not permitting any discovery that would be—I thought was protected by

the mediation privilege.")  Yet Defendants fail to address or acknowledge this Court's prior

holdings at all, save in a throwaway single-sentence footnote buried at the back of their brief.

Defs.' Br. 23 n.8.  Defendants' sole contention in that footnote—that this Court's prior holdings

are purportedly distinguishable because they did not involve an indemnification claim—is

unsupported, unexplained, and indeed inexplicable.  If this Court repeatedly held mediation

materials not discoverable for the purpose of challenging the reasonableness and *bona fides* of

the bankruptcy settlement, then certainly it is Defendants' burden to explain why the same

outcome should not apply to the reasonableness challenges Defendants gesture at now.  *But see*

*infra* at pp. 13-14 (quoting statements by counsel concerning their intention *not* to assert such

challenges).  Nothing in Defendants' opening brief attempts to provide such an explanation,

apparently reflecting a calculated decision by Defendants not to do so.

### B.    Plaintiffs' Indemnity Claim Does Not Put Mediation Communications At Issue

Even if Plaintiffs *could* unilaterally waive confidentiality (they cannot, as discussed

above), they have not done so.  Contrary to Defendants' assertion, Plaintiffs have not put

mediation communications "directly at issue" simply because the reasonableness of the Global

Settlement is purportedly an element of an indemnity claim.  Defs.' Br. 12.  The mere assertion

of a claim does not waive privilege.  *See Connell v. Bernstein-Macaulay, Inc.*, 407 F. Supp. 420,

422 (S.D.N.Y. 1976) ("[I]f the mere bringing of a lawsuit waived the privilege, it would have little meaningful existence."); *Deutsche Bank Trust Co. of Ams. v. Tri-Links Inv. Trust*, 837 N.Y.S.2d 15, 25 (App. Div. 2007) ("[Indemnitee's] commencement of this indemnity action does not, in itself, imply an 'at issue' waiver of the protection of the attorney-client privilege or the work-product doctrine for documents or witness testimony concerning the defense and settlement of the [underlying] action.").

Similarly, the mere fact that privileged "communications are relevant does not place them at issue." *PETCO Animal Supplies Stores, Inc. v. Ins. Co. of N. Am.*, No. CIV. 10-682 SRN/JSM, 2011 WL 2490298, at *23 (D. Minn. June 10, 2011); *see also Tri-Links*, 837 N.Y.S.2d at 23 ("[T]hat a privileged communication contains information relevant to issues the parties are litigating does not, without more, place the contents of the privileged communication itself 'at issue' in the lawsuit; if that were the case, a privilege would have little effect.  Rather, 'at issue' waiver occurs 'when the party has asserted a claim or defense *that he intends to prove by use of the privileged materials*.'" (emphasis added) (citation omitted)).

Defendants' argument was rejected in *OneBeacon Insurance Co. v. Forman International, Ltd.*, in the context of attorney-client privilege.  There, an indemnitor asserted that "because the 'reasonableness' of [indemnitee's] settlement is at issue, it [was] entitled to discover documents which may expose the underlying motives of [indemnitee] in settling the claim."  No. 04 CIV. 2271 (RWS), 2006 WL 3771010, at *10 (S.D.N.Y. Dec. 15, 2006).  The court disagreed:

> Although "reasonableness" is an element of indemnification, the test of reasonableness applies not to the fact of liability but only to the amount that may be paid by way of settlement of such liability.  The reasonableness of a settlement generally rests on the size of the possible recovery and the degree of probability of the claimant's success.  The content of any legal advice would therefore not necessarily be at issue in determining the reasonableness of any settlement.

*Id.*; *see also PETCO*, 2011 WL 2490298, at *23 ("Accordingly, although the reasonableness of the settlements is directly at issue, the exact communications between the plaintiff and its attorneys regarding the decision to settle, which would aid only in a subjective determination, are not at issue." (quoting *Metro. Life Ins. Co. v. Aetna Cas. & Sur. Co.*, 730 A.2d 51, 56 (Conn. 1999))).  So too here.

Defendants cite not a single case finding a "special" or "compelling" need for confidential mediation materials (let alone one in this Circuit) simply because the reasonableness of a settlement was at issue.  Any such suggestion would be impossible to square with the Second Circuit's controlling decision in *Teligent*.  As here, *Teligent* involved a mediation that gave rise to a settlement agreement, which subsequently led to claims asserted against a non-settling party.  *See In re Teligent, Inc.*, 417 B.R. 197, 201 (Bankr. S.D.N.Y. 2009), *aff'd*, *Teligent*, 2010 WL 2034509, *aff'd*, *Teligent*, 640 F.3d 53 (emphasis added).  And as here, the non-settling party (the defendant) in *Teligent* sought disclosure of the confidential mediation discussions on the basis that the discussions were relevant to its defense of the action.  *Id.* at 204. The Bankruptcy Court rejected that attempt, holding that: the defendant had failed to show a "compelling need"; that the defendant could obtain evidence relevant to its defenses by other means; and that whatever need defendant had was outweighed by "the important interest in protecting the confidentiality of the Mediation communications."  *Id.* at 208-09.  The Second Circuit affirmed.  Each of these holdings applies with equal force here.[2]

---

[2]    Defendants' attempt (Defs. Br. 16-17 n.4.) to distinguish the facts in *Teligent* is unavailing. Contrary to Defendants' assertion, the Second Circuit did not hold that the settlement discussions were "not relevant" to the issues raised by the defendant in *Teligent*.  In fact, the Bankruptcy Court in *Teligent* noted that "[a]lthough the Mediations communications may be relevant to some of the issues in the DC Action, [defendant] has not explained satisfactorily why they are *critically needed*."  *In re Teligent*, 417 B.R. at 208.  The same is true here: Defendants can, at best, show the bare relevance of mediation communications (even that is dubious under the

Defendants' cases are inapposite.  For example, *Conoco Inc. v. Boh Brothers Construction Co.*, 191 F.R.D. 107, 119 (W.D. La. 1998) (Defs.' Br. 14), did not discuss the "special need" requirement at all, because it involved a claim of attorney-client privilege, not a confidentiality order in mediation.  No court has ever cited *Conoco* in the context of mediation confidentiality, let alone to establish a "special need" under the Second Circuit's standard in *Teligent*.  Likewise, *DH Holdings Corp. v. Marconi Corp. PLC*, 809 N.Y.S.2d 404 (N.Y. Sup. Ct. 2005) (Defs.' Br. 14), *First Fidelity Bancorp. v. National Union Fire Insurance Co. of Pittsburgh*, Civ. A. No. 90-1866, 1992 WL 55742, at *2 (E.D. Pa. Mar. 13, 1992) (Defs.' Br. 15), and *Cooper v. Meridian Yachts, Ltd.*, No. 06-61630-CIV, 2008 WL 2229552 (S.D. Fla. May 28, 2008) (Defs. Br. 14), involved communications purportedly protected by the attorney-client privilege, and thus did not analyze the test in *Teligent*.[3]  Defendants' reliance on *Bradfield v. Mid-Continent Casualty Co.*, 15 F. Supp. 3d 1253, 1254 (M.D. Fla. 2014) (Defs. Br. 14) is also misplaced.  Unlike here, there was no indication that there was a mediation order, or district-wide order, mandating confidentiality, and the mediation at issue involved just three parties.  To the extent the court in *Bradfield* held that plaintiffs had put the content of mediation materials "at

---

relevant objective test), but Defendants fail to establish a "critical" need.  Defendants fail to explain why the fact that trial had occurred in *Teligent* and "payment was less than the judgment" is pertinent to the Second Circuit's test.  Moreover, there is no distinction between *Teligent* and this case with respect to the strong interest in maintaining confidentiality: in both cases, "confidentiality [was] a critical component of th[e] process," and the parties "relied on the promise of confidentiality to speak candidly."  *Id.* at 206, 209.

[3]    The same is true of *Lamar Advertising of South Dakota, Inc. v. Kay*, 267 F.R.D. 568, 575 (D.S.D. 2010).  Moreover, in *Lamar*, the court held that the attorney-client privilege did not apply at all because, among other things, "[a]t the time the claims file was initially assembled, there was no 'client.'  The [original plaintiffs] had not filed suit, and [the insured] had not retained counsel to defend its interests.  Secondly, at the time the claims file was assembled, there were no confidential communications made with the purpose of facilitating legal services." *Id.*

issue," that portion of the decision is contradicted by well-established New York and Minnesota law. *See supra* pp. 7-8.

Although unsupported by caselaw, Defendants' argument appears to assume that a settlement's reasonableness is tested subjectively. That is incorrect. Defendants themselves acknowledge that in assessing the reasonableness of a settlement that is the subject of an indemnity claim, "[w]hat is reasonable and prudent involves a consideration of the facts bearing on the *liability and damage* aspects of plaintiff's claims, as well as the risks of going to trial." Defs.' Br. 12 (quoting *Jackson Nat'l Life Ins. Co. v. Workman Sec. Corp.*, 803 F. Supp. 2d 1006, 1012 (D. Minn. 2011)) (emphasis added). That is an objective, not a subjective, test. *PETCO*, 2011 WL 2490298, at *24 ("The test for reasonableness of [an insurance] settlement is objective. Under this objective standard, *[a party's] subjective beliefs or opinions about the settlement are irrelevant*." (emphasis added)). Under the objective test, courts have held that relevant evidence may include "verdicts in comparable cases, the likelihood of favorable or unfavorable rulings on legal defenses and evidentiary issues if the . . . action had been tried, and other factors of forensic significance." *Alton M. Johnson Co. v. M.A.I. Co.*, 463 N.W.2d 277, 279 (Minn. 1990); *see also Vetter v. Subotnik*, 844 F. Supp. 1352, 1355 (D. Minn. 1992) ("Because the test is objective, the Court does not ask whether the defendant believed the settlement to be reasonable at the time he entered into it. Instead, the Court . . . determines whether a reasonably prudent person would have settled under the circumstances.").

Defendants have not explained why they have a "special need" for confidential mediation materials to challenge reasonableness under this objective standard. Any such suggestion is of course belied by this Court's ability to rule on the reasonableness of the Global Settlement without access to mediation materials. *See* Confirmation Order at 34, Case No. 12-12020, ECF

6065.[4]  Defendants have not argued that the factors relevant to this Court's analysis substantially

differ from those relevant to Plaintiffs' indemnity claim.[5]

If the previously-produced materials were sufficient for this Court to assess

reasonableness, why are they insufficient for Defendants now?  Plaintiffs have produced written

testimony, exhibits, briefing, proofs of claim, and settlement agreements that were before the

Court at confirmation, and are in the process of producing related hearing transcripts, comprising

the entire record on which this Court previously relied.  Declaration of Jennifer A.L. Battle ¶ 3.

That is not all.   As to **claims** at issue, Plaintiffs have produced pre-petition pleadings,

depositions, expert reports, and document productions (*Id.* ¶ 6); as to **securitizations** at issue,

Plaintiffs are in the process of producing closing binders and other materials (*Id.* ¶¶ 5-7) ; and as

to **loans** at issue, Plaintiffs have produced massive quantities of documents (or pointed

Defendants to publicly-available data) including Ocwen Vision Investor reporting data with

losses by loan for RMBS Trusts, loan tapes (at issuance) for each RMBS Trust, loan files for at-

issue loans, and the Seller Contracts and RFC Client Guide for each Defendant.  *Id.* at ¶ 7.

Dozens of third parties are in the process of producing huge quantities of additional information,

---

[4]    Although in somewhat different contexts, two other courts were also able to assess the
reasonableness of parts of the Global Settlement without invading mediation confidentiality.  *See*
Order and Final Judgment, at ¶ 7, *New Jersey Carpenters Health Fund v. Residential Capital,
LLC*, Civ. No. 08-8781-HB (S.D.N.Y. Oct. 7, 2013), ECF 265 (approving settlement and finding
it "in all respects, fair, reasonable and adequate, and in the best interests of the Settlement Class
Members," and "the result of arm's length negotiations");  Order, *In the Matter of Rehabilitation
of Fin. Gty. Ins. Co.*, No. 401265/12 (N.Y. Sup. Aug 16, 2013) (approving settlement agreement
and finding that RMBS Trustees "acted in good faith and without negligence in entering into the
Settlement Agreement).

[5]    This Court found the Global Settlement reasonable after considering the following factors:
(1) balance between litigation's possibility of success and the settlement's future benefits; (2) the
likelihood of complex and protracted litigation; (3) the paramount interest of creditors, including
the degree to which creditors support the proposed settlement; (4) whether other parties in
interest support the settlement; (5) the competency of counsel; (6) the nature of releases of
officers and directors; and (7) the extent to which the settlement was the products of arms-length
bargaining. *Id.* at 21.

and Defendants apparently intend to depose all or some of them. *See* Battle Decl. Ex. A. Still other materials relating to the bankruptcy case and its resolution are public record and available on the docket in the main bankruptcy case. Even this sample of what has been produced to Defendants allows them to examine the causes of action, defenses, and damages in the underlying litigation, without confidential mediation materials. *See, e.g.*, *Tri-Links*, 837 N.Y.S.2d at 24 ("[T]he . . . mass of non-privileged material provides a more-than-ample basis for the parties to litigate the reasonableness—an objective standard—of [indemnitee's] decision to settle the [underlying] action rather than take the risk of going to trial . . . .").

Finally, Defendants' current contention that they have a "special need" for mediation materials is inconsistent with the prior statements of several of them, on the record, that the reasonableness of the Global Settlement will not be significantly at issue in these litigations. Defendant UBS, in seeking to withdraw the bankruptcy reference, asserted: "This case has nothing to do with RFC's bankruptcy case and ***this Court's prior settlement approval does not have any connection to the merits here***." *RFC v. UBS*, Adv. Proc. No. 14-01926, ECF 22 at 9. Similarly, in connection with its motion to withdraw the reference, Defendant SunTrust was asked whether it "anticipat[ed] that [it would] challenge the reasonableness of the settlement." Hr'g Tr. 35:6-7, No. 14-cv-6015 (RA) (S.D.N.Y. Feb. 13, 2015), ECF No. 34. SunTrust responded "I don't think so," and, while noting that it could not "plan strategy two years out," further stated "***I don't think reasonableness will come in***. . . . I don't see myself trying to go and revisit the bankruptcy plan." *Id.* 35:8-14 (emphasis added). Similarly, counsel to Summit, in the course of representing Greenpoint, stated at a hearing on a motion to withdraw the reference: "The heart of the case is whether or not the loans breach or don't breach. There may be a limited extent to which we're challenging the reasonableness [of the settlement], for

example, certain claims that they settled that were time-barred before they settled them, so we believe it was unreasonable for them to have paid on the time-barred claims." Hr'g Tr. 10:8-13, No. 14-cv-5452 (PKC) (S.D.N.Y. Sept. 17, 2014), ECF 28. It is difficult to square these statements with Defendants' purported "critical" and "special" need for confidential mediation materials.

### C.    Allocation Issues Can Be Assessed Without Lifting The Order

Defendants' argument that Plaintiffs have "placed directly at issue how the Global Settlement was allocated" (Defs. Br. 12) is also baseless. As is apparent from the proofs of claim, settlement agreements, and other Plan-related documents, the Global Settlements were not allocated as among individual correspondent lenders. Portions of the settlements were allocated to RFC, GMAC Mortgage, and ResCap as the three primary Debtor entities at issue, and the allowed claim associated with the RMBS Trust Institutional Investor settlement was eventually distributed to each of the RMBS Trusts. Those matters are public record. Defendants give no reason (nor could they) that the confidential mediation materials they seek are likely to shed any light on an allocation that did not occur. Nor do Defendants cite authority holding that there is a "special need" for confidential mediation materials to allocate settlement liabilities among indemnitors such as Defendants and the other originators that contributed loans to the RMBS Trusts at issue.

Defendants rely primarily upon *UnitedHealth Group Inc. v. Columbia Casualty Co.*, 47 F. Supp. 3d. 863 (D. Minn. 2014), *appeal docketed*, No. 15-1076 (8th Cir. Jan. 14, 2015)). In *UnitedHealth*, the court was called upon to determine whether a jury would have enough evidence to allocate a settlement between two lawsuits that were settled together, where only one of those lawsuits had been insured by the defendant (an insurer). *Id.* at 873. The court in *UnitedHealth* did not address whether to lift mediation confidentiality, which was not an issue

there.  Nor did it hold that the plaintiff indemnitee had waived any privilege, or that the assertion

of an indemnity claim justifies invading privilege.  It actually held precisely the opposite—that

even though privileged materials concerning subjective intent might be relevant in certain

instances, a plaintiff is nonetheless "entitled to make [the] choice" not to waive privilege.

*UnitedHealth*, 47 F. Supp. at 889 (emphasis added).  *UnitedHealth* thus supports denial of this

motion.  Even if the confidential mediation materials Defendants seek were relevant to the

allocation issue, that is not enough.  Under *Teligent*, Defendants must show a critical need.  *In re*

*Teligent, Inc.*, 417 B.R. at 208 (The "party seeking discovery of confidential mediation

communications must show more than mere relevance to a pending action. Instead, it must

demonstrate a special need and resulting unfairness, *i.e.*, that the evidence is critical, not

otherwise available, and the need for the evidence outweighs the interest in maintaining

confidentiality." ).  Defendants fail to meet that burden.

### D.    RFC's Good Faith In Settling Can Be Assessed Without Lifting The Order

Defendants also assert a "special need" for confidential mediation communications

because RFC purportedly did "not have a full-fledged stake in the consideration paid," and

where "an indemnitee has little of its own funds at stake and is funding the settlement with an

indemnitor's checkbook, there is no reason to presume an indemnitee's good faith."  Defs.' Br.

15.  Under Defendants' theory, the *bona fides* of every court-approved settlement by a trustee or

debtor-in-possession in a bankruptcy case would be questioned more than a settlement by a

private litigant.  In fact, RFC, as debtor-in-possession, had *more* than just a financial stake in the

settlement.  It had fiduciary duties to the estate, including "all of its creditors and equity security

holders."  *In re SunCruz Casinos, LLC*, 298 B.R. 821, 829 (Bankr. S.D. Fla. 2003).  That the

Plan released RFC from *personal* liability (Defs.' Br. 16) is irrelevant.  RFC's duty was "to

maximize the value of the estate," *In re Innkeepers USA Trust*, 442 B.R. 227, 235 (Bankr.

15

S.D.N.Y. 2010), and, to "object to claims [as necessary] in order to maximize payment by the estate on legitimate claims." *In re An-Tze Cheng*, 308 B.R. 448, 454 (B.A.P. 9th Cir. 2004).[6]

Equally important, RFC's principal creditors, as well as the Creditors' Committee, were parties to the Global Settlement and participated directly and extensively in the mediation. The creditors and their Committee had the same interest in making the "overpayment" arguments that Defendants discuss in their brief here. Indeed, the Committee objected to the Original RMBS Settlement (Defs.' Br. 4), on that ground and others, and all parties to the mediation were fully aware of its arguments and supporting evidence. Subsequently, a group of junior secured noteholders also challenged the reasonableness of the Global Settlement, and following litigation and additional mediation, their objection was resolved as well. *Id.* at 6-7. Defendants' assertion (Defs.' Br. 16) that the Global Settlement was reached without the benefit of an "adversarial presentation" is simply false.

Moreover, as with the issue of reasonableness, this Court was able to hold, *without* access to confidential mediation materials, that "[t]he Global Settlement, and each of the settlements embodied within the Global Settlement, is a result of good faith arm's-length negotiations." Confirmation Order 21, Case No. 12-12020, ECF 6065. Defendants offer no specific basis to suspect that this Court erred. A bald assertion of the theoretical possibility of bad faith is not an "exceptional circumstance" sufficient to satisfy the "very high bar" of demonstrating a "special need" under *Teligent*. The court in *Tri-Links* so held in the context of attorney-client privilege:

> The good faith requirement does not . . . give [indemnitor] warrant to invade [indemnitee's] attorney-client privilege. To reiterate, [indemnitee] has not placed

---

[6] Defendants' assertion that RFC has made "*de minimis*" payments in the Global Settlement (Defs.' Br. 15) not only ignores RFC's fiduciary duties, but also is misleading. The Liquidating Trust, as successor to RFC, has made substantial distributions to creditors, totaling more than $2.1 billion to date. *See* ResCap Liquidating Trust, Distribution Information, *available at* http://rescapliquidatingtrust.com/DistributionInformation.aspx.

its attorneys' legal advice or work product at issue, and the reasonableness of its settlement with WMI can be determined on the basis of the extensive non-privileged documentary record already available. Furthermore, [indemnitor] does not suggest any specific grounds to suspect that Bankers Trust entered into the settlement in bad faith, or (assuming grounds for such suspicion existed) to believe that invasion of the attorney-client privilege would be the only way to lay bare such suspected bad faith. ***If the privilege could be deemed waived by nothing more than the theoretical possibility of an issue concerning the settlement's good faith*** (and that is all that [indemnitor] offers), ***a similar waiver would have to be implied in every case in which the bad faith of the plaintiff would constitute a defense.*** A result that would lead to a finding of waiver in such a large number of cases is disfavored.

837 N.Y.S.2d at 25-26 (footnote omitted).[7]  The same is true here.

## II.  THE STATUS QUO IS FAIR TO PLAINTIFFS, DEFENDANTS, AND THE DOZENS OF MEDIATION PARTICIPANTS INCLUDING JUDGE PECK

In discussing the purported "unfairness" of this Court's mediation order, Defendants begin by reiterating their assertion that Plaintiffs placed the Global Settlement's reasonableness at issue. That is incorrect, as explained above, and there is no unfairness; even if Plaintiffs could impliedly waive confidentiality of the mediation (which they cannot), they have not put confidential mediation material at issue. *See supra* § I.B. Defendants' other argument (Defs. Br. 17), that they need documents regarding purportedly "substantial questions concerning the settlement," is equally mistaken.

The most fundamental problem with Defendants' argument is that it rests on so-called "substantial questions" that the Committee raised in opposition to the *Original* RMBS Settlement *but that were fully resolved in the Global Settlement*. The Committee's concerns were largely

---

[7]  *Cf. Bovis Lend Lease, LMB, Inc. v. Seasons Contracting Corp.*, No. 00 CIV. 9212 (DF), 2002 WL 31729693, at *17 (S.D.N.Y. Dec. 5, 2002) ("To the extent AIG is arguing that Tudor has waived privilege by injecting into this case the issue of its good faith, this argument also fails. Other than merely seeking reimbursement from AIG for the cost of its settlement . . .Tudor has not raised any issue in this case that would, in fairness, require disclosure of its privileged communications with counsel regarding the defense of its insured. Rather, *AIG* has apparently raised the issue of Tudor's alleged bad faith as a *defense* to Tudor's counterclaim for reimbursement.").

borne out of the fact that the Original RMBS Settlement was a private pre-petition settlement.

The concerns raised by the Committee and others were then litigated and mediated in an effort

that generated the Global Settlement, which the Committee itself approved as fiduciary to

unsecured creditors.  *See In re Tribune Co.*, 464 B.R. 126, 156 (Bankr. D. Del.) ("[T]he Creditor

Committee's participation in the settlement negotiations is highly relevant when considering

whether the DCL Plan Settlements were negotiated in good faith."), *on reconsideration*, 464

B.R. 208 (Bankr. D. Del. 2011); *see also In re Residential Capital LLC*, 480 B.R. 550, 559

(Bankr. S.D.N.Y. 2012) ("It is well settled that statutory unsecured creditors committees owe a

fiduciary duty to the entire class of creditors represented by such committee and are required to

place the collective interest of the class they represent above their own personal stake in the

bankruptcy case.").  The Committee's concerns, which were raised and resolved, are irrelevant

here.

In parroting several of the Committee's concerns regarding the Original RMBS

Settlement (Defs.' Br. 17), Defendants never explain why these concerns (a) raise questions

about the Global Settlement or (b) cannot be explored with the mountain of non-mediation

materials provided to Defendants.  .  For example, Defendants assert that the Global Settlement

may have failed to account for potential defenses such as loss causation, statutes of limitations,

and election of remedies, which, if meritorious, could in their view have reduced RFC's liability.

*Id.*  Nothing prevents Defendants from making that argument now, as to the Global Settlement,

with the heaps of materials Plaintiffs and others have produced.  Indeed, Defendants' quotation

from the Committee's objection to the Original RMBS Settlement omits the Committee's

assertion that its counsel "conducted extensive legal research" and "concluded that the Trusts'

claims are subject to a number of strong potential defenses."  Defs.' Br. Ex. H 4-5.  Defendants

18

are free to conduct the same legal research now and litigate whatever conclusions they reach.[8]

They are likewise free to analyze the expert reports offered in support of the Global Settlement,

which are publicly available (*see e.g.*, Sillman Direct, Case No. 12-12020, ECF 5703; Lipps

Direct, Case No. 12-12020, ECF 5701), and challenge the methodologies and conclusions

therein, just as the Committee did. *See, e.g.*, Defs.' Br. Ex. H at 4, 23-29.  The same is true as to

the remainder of Defendants' similar arguments.  *Id.*

In a *non sequitor* argument, Defendants assert that Plaintiffs should produce mediation

communications concerning the Global Settlement because the Debtors produced certain

settlement communications to the Committee concerning the Original RMBS Settlement.  Defs.'

Br. 17-18.  This is mistaken for the simple reason that this Court had not entered a mediation

order as to the pre-petition negotiation that gave rise to the Original RMBS Settlement.  Nor did

the Original RMBS Settlement, which was negotiated by a relatively small group, implicate the

confidentiality interests of dozens of mediation participants or a mediator, as here.  In any event

the Original RMBS Settlement was negotiated in a significantly different context than the Global

Settlement—there was no bankruptcy petition, no mediation, no Mediation Order, no Committee

oversight, no involvement by other parties in interest, no neutral court-appointed Chief

Restructuring Officer representing the Debtors,[9] no oversight by Judge Peck, and no involvement

---

[8]    Courts have also relied on expert legal testimony to assess causes of action, defenses, and
damages in examining the reasonableness of a settlement.  *See, e.g.*, *PETCO*, 2011 WL 2490298,
at *8 (noting that "[c]ourts have also relied on the opinions of attorneys retained as experts to
support or defeat" the reasonableness of a settlement); *see also Vetter*, 844 F. Supp. at 1355
(observing that in determining whether an insurance settlement is objectively reasonable, "the
Court is entitled to consider not only customary evidence on liability and damages but also other
evidence, such as expert opinion of trial lawyers evaluating the customary evidence" (quotation
marks omitted)).

[9]    This Court appointed Lewis Kruger, a neutral third party, to serve as the Debtors' Chief
Restructuring Officer.  *See* Order Granting Debtors' Motion For An Order Authorizing The
Debtors To Appoint Lewis Kruger As Chief Restructuring Officer, Case No. 12-12020 (Bankr.

or review by this Court.  The Committee's objection to the Original RMBS Settlement does not create a "special need" for production of confidential documents concerning the Global Settlement.

Finally, Defendants assert it would be "particularly unfair" to keep mediation materials confidential because Plaintiffs purportedly have not alleged they provided notice to Defendants of the settlements, and Defendants did not participate in the underlying proceedings or negotiations.  Defs.' Br. at 19 (citing *Atl. Richfield Co. v. Interstate Oil Transp. Co.*, 784 F.2d 106, 115 (2d Cir. 1986)).  First, Defendants' reliance on *Atlantic Richfield* is misplaced.  In *Atlantic Richfield*, the court addressed a federal common law claim of equitable indemnity, and found that the indemnitee had not given adequate notice to its supposed indemnitor.  *Id.* at 113. Here, Plaintiffs are bringing contractual indemnity claims, and the Client Guide expressly provides that Plaintiffs did *not* need to give notice or tender defense.  *See, e.g.*, Client Guide § A212 ("[RFC] is not required to give Client notice of any litigation or governmental proceeding that may trigger indemnification obligations. . . . .  GMAC-RFC has the right to control any litigation or governmental proceeding related to a Loan, including but not limited to choosing defense counsel and making settlement decisions.").  Moreover, Plaintiffs expect to prove that Defendants had or were not entitled to notice of the underlying claims and the Global Settlement for other reasons—for example, at least three Defendants were served with the Plan and Confirmation Order, and none objected.[10]  In any event, Defendants cite no authority for the

---

S.D.N.Y. March 5, 2013), ECF 3103.  Mr. Kruger was granted the power to "direct the Debtors' respective management teams and professionals in connection with the Debtors' efforts to negotiate and settle the Claims against the Debtors . . . ."  *See* Amendment No. 1. To Engagement Letter, *id.*, ECF 3074-1.

[10]    HSBC, SunTrust, and UBS were all served with the Plan and Confirmation Order, *see* Aff. of Service, Case No. 12-1202, ECF No. 5196.  Plaintiffs reserve the right to assert that these

proposition that a lack of notice somehow alters the objective nature of the test of a settlement's reasonableness.   Nor do Defendants explain why a purported absence of notice provides a "special need" for mediation communications.

In short, the only "unfairness" associated with this motion is that which would result from disclosure of communications that dozens of mediation participants and Judge Peck exchanged during a mediation that this Court assured them would remain confidential.

## III.   MAINTAINING CONFIDENTIALITY OF THE MEDIATION OUTWEIGHS DEFENDANTS' PURPORTED NEED TO LIFT THE ORDER

Even if Defendants had demonstrated "exceptional circumstances" sufficient to satisfy the "very high bar" of the special need requirement (they have not), they have not demonstrated that their need outweighs the compelling interest in maintaining mediation confidentiality.

Defendants argue that confidentiality concerns are minimal here because they (1) are not seeking discovery from the mediator directly; and (2) do not seek to use the mediation materials in the case in which the mediation occurred.   Defs.' Br. 19-21.   Defendants cite no authority supporting their view that these are the only important policy interests at issue, and ignore perhaps the most important interest of all:   As the Second Circuit observed in *Teligent*, the assurance of confidentiality "promotes the free flow of information that may result in the settlement of a dispute and protecting the integrity of alternative dispute resolution generally . . . ."   640 F.3d at 57-58.   Protecting confidentiality in mediations is not only about protecting the mediator and the parties in the particular case in which the mediation took place, but also about encouraging participants in future mediations to negotiate in the necessary spirit. *See, e.g.*, *In re Teligent, Inc.*, 417 B.R. at 206 ("The parties must trust that their disclosures, both

---

Defendants (and others) are barred from challenging the reasonableness of the Global Settlement.

oral and written, during mediation will remain confidential and that their candor will be protected."); *Concerned Citizens of Belle Haven v. Belle Haven Club*, No. CIV. 3:99CV1467 (AHN), 2002 WL 32124959, at *5 (D. Conn. Oct. 25, 2002) ("The success of mediation depends, in part, on the ability of the parties to freely and openly discuss the relevant issues. Accordingly, confidentiality is a critical component of this process."); Hr'g Tr. at 67:15-19, Case No. 12-12020 (Bankr. S.D.N.Y. Dec. 20, 2012), ECF 2523 ("[F]or about a year before I came on the bench, I was doing mediation.  And one of the things that's very common—I think mediation is most useful when information is freely shared among the principal parties to the mediation.").[11]

Defendants also ignore that they are seeking confidential materials from and involving dozens of mediation parties other than Plaintiffs.  Defs.' Br. 11, 25.  As the Second Circuit explained, "if participants cannot rely on the confidential treatment of everything that transpires during [mediation] sessions then counsel of necessity will feel constrained to conduct themselves in *a cautious, tight-lipped, non-committal manner more suitable to poker players in a high-stakes game* than to adversaries attempting to arrive at just resolution of a civil dispute."  *Lake Utopia Paper Ltd. v. Connelly Containers, Inc.*, 608 F.2d 928, 930 (2d Cir. 1979) (emphasis added); *see also Burlington N. & Santa Fe Ry. Co. v. Han*, No. 14-CV-69-CVE-PJC, 2015 WL 401744, at *5 (N.D. Okla. Jan. 28, 2015) ("Parties would hardly be encouraged to settle lawsuits

---

[11]    *See also Tribune*, 464 B.R. at 157 ("Mediations are confidential by custom and under local rule.  Later assessment of the quality of the mediation, by whomever conducted—absent some identifiable impropriety (and the record here reflects none)—is antithetical to the purpose and atmosphere intended to be created to enable parties to engage in such discussions.  Parties, subject to the rules of mediation and the mediator, must be positioned to participate in settlement discussions uninhibited by the possibility that evidentiary consequences may ensue, whether mediation is wholly or partially successful, or fails to result in any settlement.").

if they understood that their 'confidential' negotiations were not confidential at all."). [12]
Defendants fail to address the strong interests of the dozens of third parties at issue, or Judge
Peck.  Indeed, Defendants initially filed this motion only in their specific adversary proceedings
before later filing a paper in the bankruptcy case to give "notice" to the dozens of third-party
mediation participants that thousands of their confidential documents might be disclosed.

Defendants also contend there is little need to be concerned about confidentiality here
because they are not seeking materials directly from Judge Peck.  That is wrong.  *First*,
Defendants ignore that their effort to invade the confidentiality of the mediation directly
implicates Judge Peck and the mediation process he oversaw, regardless of whether they seek
discovery directly from him.  *Second*, Defendants cite no authority for their assertion that the
interest in protecting confidentiality is somehow lessened because Defendants do not seek
materials directly from the mediator. [13]  *Third*, in any event, Defendants may in fact be seeking
communications to and from Judge Peck.  Defendants have requested "[a]ll Documents relating
to the Mediation" and "[a]ll Communications with any party in the Chapter 11 Cases."  Defs.'
Br. Ex. C, Requests 91-92.  These requests are so broad that it is unclear whether Defendants are

---

[12]    *See also* Note, *Protecting Confidentiality in Mediation*, 98 HARV. L. REV. 441, 445
(1984) ("To assess the possibilities of settlement fully, however, the mediator must understand
the 'motives and possibly even bona fides of the conduct of each party'; in other words, he must
be apprised of the parties' real positions and interests.  The efficacy of this factfinding process
depends on the mediator's ability to ensure the confidentiality of communications made to him.
Mediation demands, moreover, that the parties feel free to be frank not only with the mediator
but also with each other. . . .  Agreement may be impossible if the mediator cannot overcome the
parties' wariness about confiding in each other during these sessions.  Accordingly, effective
mediation demands that the parties be privileged not to testify about communications they have
made to each other in the course of mediation." (footnotes omitted)).

[13]    Instead, Defendants cite a single case upholding the NLRB's revocation of a subpoena to
a mediator, and holding that the "preservation of an effective system of labor mediation"
outweighed the benefits of testimony by a mediator regarding the proceedings he oversaw.
Defs.' Br. 19 (citing *NLRB v. Joseph Macaluso, Inc.*, 618 F.2d 51, 56 (9th Cir. 1980)).  Nothing
in *Joseph Macaluso* indicates that other confidentiality interests are not important in the context
of mediation; the case does not even address the issue.

seeking from Plaintiffs (or other parties) communications between the parties and Judge Peck. In the unlikely event Defendants could find a way to obtain discovery concerning the mediation even while somehow carving out communications to and from the mediator himself, the result would be equally problematic because it would generate a misleading partial record of what the parties to the mediation said, with no ability for Plaintiffs to cross-examine in light of the full context. Communications made during complex settlement negotiations, like negotiating positions, must be understood in light of the circumstances—not on the basis of a swiss-cheese record likely to be beset by extensive omissions and redactions for privilege, and as to which the central participant, Judge Peck himself, will be absent.

Similarly unavailing is Defendants' argument that Plaintiffs cannot reasonably have relied upon the Mediation Order's protections. Defs.' Br. 20. *First*, Defendants again assert that Plaintiffs put the mediation at issue. They are again incorrect. *See supra* § I.B. *Second*, Defendants argue that Plaintiffs should not have relied upon the Mediation Order because the Order, by its terms, is subject to change. Defs.' Br. 20. Of course, every court is always free to modify its own orders—yet parties can and indeed must act in compliance with those orders and in reliance upon them. *Third*, Defendants' sole focus on *Plaintiffs'* reliance again ignores the reliance interests of dozens of other mediation participants, including Judge Peck.

Finally, Defendants' assertion that any confidentiality issues can be remedied by a Protective Order (Defs.' Br. 21) is misguided. If a protective order were sufficient, this Court could have simply entered one to begin with, and there would have been no need for the Mediation Order at all. That is not what happened, including because it was deemed important for the mediation participants and Judge Peck to have the Court's assurance that the mediation would remain confidential. If mediation communications are nonetheless disclosed, this Court's

assurance of confidentiality will have been violated and the credibility of courts and mediators in facilitating future mediations will be undermined.    And, of course, it is not just the five Defendants in these actions who are seeking these materials, as Defendants suggest, but rather *the more than 60 others* in Plaintiffs' similar actions pending in Minnesota,[14] who are coordinating with Defendants on this motion.[15]

## CONCLUSION

Because Defendants have not satisfied their burden, their motion should be denied.

---

[14]    *See, e.g.*, Battle Decl. Ex. B, May 1, 2015 Ahmad Letter to Alden, Case No. 13-3451 (D. Minn.) ("As you know, defendants in both Minnesota and New York ('Defendants') requested production of all documents concerning each of the settlements for which Plaintiffs seek indemnification including the Global Settlement in RFC's bankruptcy. . . .  If the Mediation Order issued by Judge Glenn is modified Defendants will expect Plaintiffs to propose custodians and search terms that are calculated to yield responsive documents . . . ."); *see also* Status Conf. and Motions Hearing, Transcript at 42-44, Case No. 13-3451 (D. Minn May 28, 2015), ECF 504 ("[W]e [Defendants] are asking him to modify the order essentially to allow us to have access to the documents.").

[15]    Defendants' various disagreements with Plaintiffs' other objections to document requests (Defs. Br. 22-25) do not belong in a motion to lift mediation privilege, but rather should at most be addressed in a motion to compel following a meaningful meet and confer process (which has not occurred).  Accordingly, Plaintiffs do not address these arguments here, except to note that Defendants' requests, as they currently stand, likely would require Plaintiffs to collect, review, redact, privilege-log, and produce massive quantities of documents, many of which are attorney-client and work product privileged, or subject to admissibility limitations under Federal Rule of Evidence 408 .

Dated:  New York, New York
       July 2, 2015

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

By : /s/ Isaac Nesser
Peter E. Calamari
Isaac Nesser

CARPENTER LIPPS & LELAND LLP
Jeffrey A. Lipps (*pro hac vice*)
Jennifer A.L. Battle (*pro hac vice*)
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Telephone:  (614) 365-4100
Facsimile:  (614) 365-9145
lipps@CarpenterLipps.com
battle@CarpenterLipps.com

David Elsberg
Matthew Scheck
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000
Facsimile:  (212) 849-7100
PeterCalamari@quinnemanuel.com
IsaacNesser@quinnemanuel.com
DavidElsberg@quinnemanuel.com
MatthewScheck@quinnemanuel.com

MORRISON & FOERSTER LLP
Todd M. Goren
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

KRAMER LEVIN NAFTALIS &
FRANKEL LLP
Kenneth H. Eckstein
Douglas H. Mannal
Philip Bentley
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel to the Rescap Liquidating Trust And Residential Funding Co.*