1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 12-12020-mg

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  RESIDENTIAL CAPITAL, LLC, et al.,

9

10              Debtors.

11

12  - - - - - - - - - - - - - - - - - - - -x

13

14              United States Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              June 23, 2015

19              10:06 AM

20

21  B E F O R E:

22  HON. MARTIN GLENN

23  U.S. BANKRUPTCY JUDGE

24

25

1

2  (Doc. No. 7785) Status Conference in Follow-Up to Motion for

3  Relief from Stay Filed by Ronald Gillis.

4

5  Doc #8588, 8746, 8767 Hearing RE:  Eighty-Seventh Omnibus

6  Objection to Claims (I) No-Liability Borrower Claims, (II)

7  Reduce and Allow Borrower Claims, (III) Redesignate, Reduce and

8  Allow Borrower Claims.  (Related Document(s) 8588, 8746)

9

10  (CC:  Doc. No. 8502, 8727) Adjourned Hearing RE:  ResCap

11  Borrower Claims Trust's Objection to Amended Claim No. 4445

12  Filed by Alan Moss Filed by Norman Scott Rosenbaum on Behalf of

13  ResCap Borrower Claims Trust.

14

15  (Doc. No. 8567, 8566, 7552, 8127, 8334, 8502) Hearing Regarding

16  Discovery Dispute between Alan Moss and the ResCap Liquidating

17  Trust.

18

19

20  Transcribed by:  Aliza Chodoff

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

```
 1
 2   A P P E A R A N C E S :
 3   MORRISON & FOERSTER LLP
 4        Attorneys for ResCap Borrower Claims Trust
 5        250 West 55th Street
 6        New York, NY 10019
 7
 8   BY:   JORDAN A. WISHNEW, ESQ.
 9        NORMAN S. ROSENBAUM, ESQ.
10
11
12   ALSO PRESENT:
13        RONALD GILLIS, Party Pro Se (TELEPHONICALLY)
14        JOYCELYN W. UNCIANO, Party Pro Se (TELEPHONICALLY)
15        ALAN I. MOSS, Party Pro Se (TELEPHONICALLY)
16
17
18
19
20
21
22
23
24
25
```

1                    P R O C E E D I N G S

2              THE COURT:  All right, please be seated.  We're here

3    in Residential Capital, number 12-12020.  Mr. Rosenbaum?

4              MR. ROSENBAUM:  Good morning, Your Honor.  Norm

5    Rosenbaum for the ResCap Liquidating Trust.  Your Honor, the

6    first matter on the agenda is at page 10.  It's Roman numeral

7    (III); it's the status conference on the amended motion for

8    relief from automatic stay by Mr. Gillis.  I believe Mr. Gillis

9    is on the phone.

10             THE COURT:  Okay, Mr. Gillis, are you on the phone?

11             MR. GILLIS:  Yes, sir, this is Ron Gillis.

12             THE COURT:  Thank you very much.

13             Go ahead, Mr. Rosenbaum.

14             MR. ROSENBAUM:  As Your Honor may recall, this matter

15   came about because of a motion for relief from the automatic

16   stay that Mr. Gillis filed.  It was opposed by the debtors.

17   Your Honor, heard the motion at a hearing on March 12th,

18   following which Your Honor entered an order dated April 24th

19   denying the motion.

20             At the hearing on the motion, Your Honor directed the

21   Liquidating Trust to search its files and produce documents to

22   Mr. Gillis related to his loan.  Following the hearing, Your

23   Honor, we undertook -- the ResCap Liquidating Trust undertook a

24   review of its electronic records.  They have methods for doing

25   so.  They use the borrower name, address, loan number.  As we

1   had advised both Mr. Gillis and the Court, Residential Funding

2   Company only acted as master servicer here, so our information

3   would be limited.

4           We produced all the documentation that we could locate

5   in our files to Mr. Gillis, and thereafter filed a status

6   report with the Court, as directed at the hearing on the

7   matter.

8           Thereafter, what ensued was a series of correspondence

9   between Morrison & Foerster and Mr. Gillis.  I think Mr. Gillis

10  had issues about the completeness of the production.  There was

11  some confusion about potentially another mortgage being an

12  issue, and that was the subject of the correspondence as well.

13          Eventually, Mr. Gillis filed a pleading indicating he

14  was raising Rule 11 issues, and we asked for this status

15  conference.  We believe that we have, as directed, diligently

16  reviewed the files and produced everything we could locate.

17  Again, it's a limited forum of documents.

18          I would note that Mr. Gillis is requesting this

19  information in connection with a pending federal lawsuit that

20  was dismissed.  We provided a copy of that order to Your Honor.

21  I don't know if Mr. Gillis has appealed that order or not.

22          THE COURT:  Anything else, Mr. Rosenbaum?

23          MR. ROSENBAUM:  No, Your Honor.

24          THE COURT:  Mr. Gillis.

25          MR. GILLIS:  Good morning, Your Honor.  Yes, this Ron

1  Gillis.  Most of what he said there was correct.  However, as
2  he did say, I am saying that he clearly is not producing all
3  the information.

4         One of the documents that was produced in the state
5  case was a purported note which has endorsements to and from
6  Residential Funding Corporation.  Mr. Rosenbaum produced no
7  documentation of the purchase and sale of said document.

8         In addition to that, there is a pending motion, again,
9  in the state court, to transfer this to a Residential Credit
10  Loan Bank entity, which again, is part of your case up there in
11  the bankruptcy court.  And I have researched your case as best
12  I could, and I could not find any listing where they show this
13  as an asset or pending litigation.  And again, if they're
14  transferring this supposed asset to the trust, which would be
15  in your bankruptcy, that should have -- documentation of that
16  should have been produced as well.

17         I produced e-mails.  And Mr. Rosenbaum is trying to
18  state that it was confusing regarding the e-mails.  I can
19  assure you that the e-mails were pertaining to this same case,
20  same issue.  However, I would also add to that, that if this
21  was another loan, which it is not -- but if it was -- the
22  e-mails discuss underwriting and such, and none of that was
23  produced by him either.  So again, whether he's deliberately
24  withholding or somebody else is withholding, either instance is
25  not acceptable.

1          I also have one --

2          THE COURT:  Mr. Gillis --

3          MR. GILLIS:  -- I don't know if you --

4          THE COURT:  -- Mr. Gillis --

5          MR. GILLIS:  Yes.

6          THE COURT:  -- you cannot simply allege that someone

7    has purposely withheld documents.  Do you have any basis -- I

8    mean, you've gotten documents from them.  You believe that the

9    documents produced are incomplete.

10          MR. GILLIS:  Right.

11          THE COURT:  But you cannot simply allege wrongdoing on

12   the part of an attorney unless -- do you have something to back

13   that up?

14          MR. GILLIS:  Well, as I submitted the -- my own status

15   update, the note and mortgage submitted in the foreclosure case

16   has endorsements to and from Residential Funding Corporation.

17   And Mr. Rosenbaum produced no such documentation.  I don't know

18   that he's doing it, but it's either him or GMAC.

19          THE COURT:  All right, go ahead, Mr. Gillis.

20          MR. GILLIS:  I also had a question that in

21   the -- there should have been a repudiation order.  I couldn't

22   find it in your records.  But if it was, I would imagine it

23   would have been done in 2012.  One of the documents he produced

24   to me states this Omar Yussef Kanyar (ph.) on 4/10 of '14 is

25   supposedly acting on behalf of Residential Credit Loans as

1    a -- I'm not sure exactly what his capacity is -- but if the

2    repudiation agreement was, in fact, done in 2012, it's

3    inappropriate to be exercising such documents on behalf of an

4    entity that was liquidated in December 11, 2013.

5            THE COURT:  Mr. Rosenbaum, do you want to respond?

6            MR. ROSENBAUM:  Well, Your Honor --

7            THE COURT:  First, can you address the issue -- Mr.

8    Gillis indicates that there previously was provided or filed a

9    note with various endorsements on it, and he said you'd not

10   produced any documents for any of that.  Can you address that?

11           MR. ROSENBAUM:  Sure, Your Honor.  My underst -- well,

12   I believe that the note with the endorsements on it was

13   produced either in the federal action or in the state

14   foreclosure action.  It would have been produced by one of the

15   parties to that action.  From what Mr. Gillis provided us, it

16   clearly provides the endorsement of RFC.  RFC acquired and

17   securitized the loan.  We provided the securitization documents

18   to Mr. Gillis as part of our production.

19           We did not have a copy of the endorsed note in

20   ResCap's files.

21           THE COURT:  Do you have an explanation for that?

22           MR. ROSENBAUM:  Well, the explanation I was told was

23   that what we would have is a copy of the origination file which

24   wouldn't have the endorsed note.  The endorsed note would

25   be -- the original endorsed note with the endorsements would be

1  in the -- the original would be with the custodian.  Apparently

2  it was, because it was produced in the litigation.

3          We, again, searched our records.  I think we requested

4  at least twice, possibly three times, to go back and check for

5  anything else that could possibly be there when we started to

6  have this correspondence with Mr. Gillis.  And we don't have a

7  copy or any other documentation relating to those endorsements.

8  We don't deny that the loan was endorsed, we just don't have

9  that copy.

10          MR. GILLIS:  Your Honor, if it was endorsed, that

11  means they should have taken ownership and paid something for

12  it, and then when they sold it, there should be something

13  selling it.

14          THE COURT:  It doesn't necessarily mean that, Mr.

15  Gillis.

16          MR. GILLIS:  I'm sorry?

17          THE COURT:  It doesn't necessarily mean that, Mr.

18  Gillis.  You're making a leap -- an assumption that isn't

19  necessarily accurate.

20          MR. GILLIS:  Well -- well, they still never produced

21  anything --

22          THE COURT:  Can you explain, Mr. Rosenbaum --

23          MR. GILLIS:  -- regarding that --

24          THE COURT:  Stop.

25          Mr. Rosenbaum, can you explain, was there

 1   consideration paid or received in connection with the

 2   endorsements to the note?

 3          MR. ROSENBAUM:  I believe there is the securitization

 4   process acting as the -- acting in that capacity and as a

 5   serve -- and as part of that process, I think, they received --

 6          THE COURT:  All right, let me --

 7          MR. ROSENBAUM:  -- RFC as master servicer receives

 8   fees as part of the process.  We're not denying that the note

 9   was endorsed, we just don't have a copy in our -- we weren't

10   able to locate that copy in our files.  This goes back to 2006.

11   And as we've indicated before, we weren't the servicer of this

12   loan.

13          THE COURT:  Okay.  All right.  Let me ask, does either

14   side wish to file an additional memorandum of law addressing

15   the issues raised by the amended motion for relief from the

16   automatic stay before the Court decides the matter?  Mr.

17   Rosenbaum?

18          MR. ROSENBAUM:  No, Your Honor.

19          THE COURT:  Mr. Gillis?

20          MR. GILLIS:  I'm sorry, what was that?

21          THE COURT:  My question is, do you wish to file an

22   additional memorandum of law addressing the issues in your

23   amended motion for relief from the automatic stay, before the

24   Court goes ahead and decides the matter?  I'm not deciding it

25   from the bench today, but I want to know whether -- I mean,

1    I've got this long list of stuff that's been exchanged and

2    issues that each of you have raised today, and before I go

3    ahead and decide the matter, I want to know whether you wish to

4    file an additional memorandum of law?

5              MR. GILLIS:  Did Mr. Rosenbaum state he would be?

6              THE COURT:  He said he would not.  He said he did not

7    wish to.

8              MR. GILLIS:  Okay, then I will leave it at that, then,

9    as well.

10             THE COURT:  Okay.  So what I'm going to do is take the

11   matter under submission.  The matter will be decided based on

12   those filings that have taken place until now, and an order

13   will issue in due course.

14             MR. ROSENBAUM:  Thank you, Your Honor.

15             THE COURT:  All right?  Thank you very much, Mr.

16   Gillis.

17             MR. GILLIS:  Thank you.

18             THE COURT:  All right, Mr. Gillis, you're welcome to

19   stay on the phone or excuse yourself; whichever you prefer.

20             MR. ROSENBAUM:  I'll cede the podium --

21             MR. GILLIS:  I'm going to --

22             MR. ROSENBAUM: -- to Mr. Wishnew, Your Honor.

23             MR. GILLIS: -- go on with my day, thank you very much.

24             THE COURT:  Okay, Mr. Gillis.  Thank you very much.

25             Let me just make a note before you --

1      (Pause)

2          THE COURT:  All right, Mr. Wishnew.

3          MR. WISHNEW:  Thank you, Your Honor.  Good morning.

4   Jordan Wishnew, Morrison & Foerster for the ResCap Borrower

5   Claims Trust.

6          Your Honor, the next matter on today's agenda is under

7   Roman numeral (IV) on page 11.  It is the ResCap Borrower

8   Claims Trust's eighty-seventh omnibus objection to claims,

9   concerning no liability borrower claims, a reduce and allow

10  borrower claim, and a redesignate, reduce and allow borrower

11  claim.

12         Your Honor, there are seventeen claims at issue in

13  this omnibus objection.  We have adjourned one matter:  That is

14  the claim of Scott Leonhardt, claim number 5720 to the omnibus

15  hearing on July 16th.  There has been one response filed by

16  Joycelyn Unciano.  I believe she is on the phone today.

17         THE COURT:  All right, Ms. Unciano, are you on the

18  phone?

19         MS. UNCIANO:  Yes, good morning, Your Honor.

20         THE COURT:  Good morning.

21         MS. UNCIANO:  Yes, Joycelyn Unciano here.

22         THE COURT:  Okay, all right.  Go ahead, Mr. Wishnew.

23         And Ms. Unciano, I'll give you a chance to address the

24  Court after Mr. Rosenbaum (sic) is done, okay?

25         MS. UNCIANO:  Okay, thank you.

1          THE COURT:  Go ahead.

2          MR. WISHNEW:  And so through -- putting aside those

3    two claims, Your Honor, we seek to expunge thirteen uncontested

4    no-liability claims and reduce and allow one claim, and then

5    redesignate, reduce and allow another claim.  For the

6    reasons -- besides for our correspondence with Mr. Leonhardt

7    and Ms. Unciano, we've received no other responses to the

8    claims set forth for today.

9          THE COURT:  All right, let me deal with it to this

10   extent.

11          So pending before the Court is the ResCap Borrower

12   Claims Trust's eighty-seventh omnibus objection to claims.

13   It's filed as ECF docket number 8588.  And the objection is

14   supported by the declarations of Kathy Priore, which is Exhibit

15   2 to the objection, and Norman Rosenbaum, which is Exhibit 3 to

16   the objection.

17          The objection is sustained with respect to all of the

18   claims except for Unciano and -- remind me -- the one that

19   you're adjourning.

20          MR. WISHNEW:  Scott James Leonhardt, claim 5720.

21          THE COURT:  Okay.  So the objection is sustained as to

22   all of the others.  You can present a separate order sustaining

23   those objections for the reasons set forth in the papers.  The

24   Court's reviewed it and finds the objection is well taken.

25          MR. WISHNEW:  Thank you very much, Your Honor.

1           THE COURT:  Okay.  So let's move on.  Let's deal with

2    the Unciano claim.

3           MR. WISHNEW:  Absolutely, Your Honor.

4           THE COURT:  Okay?

5           MR. WISHNEW:  Your Honor, the basis for the Borrower

6    Trust seeking to disallow Ms. Unciano's claim is res judicata.

7    Attached to Ms. Unciano's claim is a pre-petition federal

8    lawsuit in which she brought a variety of different claims

9    against the debtors.  That matter has been fully litigated

10   through the federal courts.  It was originally in the federal

11   district courts; it was then -- she then sought a motion for

12   reconsideration that was denied.  And then she took the appeal

13   up to the Ninth Circuit.  That was also denied, Your Honor.

14          It is our -- since -- we believe the facts really are

15   fairly straightforward.  She attached the underlying complaint.

16   The complaint was fully litigated.  She can't come before this

17   Court and try and relitigate matters that have already been

18   fully adjudicated by other courts.

19          THE COURT:  Let me just see -- ask you a couple of

20   questions.  Do you agree, Mr. Wishnew, that Ms. Unciano's

21   claims were all Hawaii state law claims?

22          MR. WISHNEW:  I believe, for the most part, that's

23   correct, Your Honor.

24          THE COURT:  Here's the reason I'm asking.  You assert

25   that res judicata applies here --

1           MR. WISHNEW:  Um-hum.

2           THE COURT:  -- and to the extent that the claims

3    asserted are Hawaii state law claims --

4           MR. WISHNEW:  Um-hum.

5           THE COURT:  -- do you agree that the Court would look

6    to the law of Hawaii, state law of Hawaii for the application

7    of res judicata?

8           MR. WISHNEW:  I would agree, Your Honor.

9           THE COURT:  All right.  So let me ask again; point out

10   if I'm wrong.  It seemed to me that the claims that are

11   asserted are Hawaii state law claims; are there any federal

12   claims that were asserted?

13          MR. WISHNEW:  One moment, Your Honor, I just wanted to

14   look back to the --

15          THE COURT:  Because my understanding is the first

16   amended complaint asserted causes of action for injunctive

17   relief, declaratory judgment, unfair and deceptive trade

18   practices, violation of the Hawaii Debt Collection Act,

19   intentional infliction of emotional distress, fraudulent

20   misrepresentation, negligent misrepresentation, abuse of

21   process and civil conspiracy.

22          MR. WISHNEW:  That is correct, Your Honor.  I'm

23   looking --

24          THE COURT:  And those all seem to be Hawaii state law

25   claims.

1          MR. WISHNEW:  I would agree with you, Your Honor.

2          THE COURT:  All right.  At the end of the day, I'm not

3   sure whether or not it would make a difference, but to the

4   extent that they're Hawaii state law claims, the Court would

5   apply the Hawaii rules with respect to res judicata, even

6   though it was a federal court that adjudicated the claims,

7   correct?

8          MR. WISHNEW:  That's correct, Your Honor.

9          THE COURT:  Okay.  And as I understand your position,

10  you believe that these claims were fully adjudicated in the

11  district court, Ms. Unciano appealed, the district court

12  decision was affirmed on appeal, no further appellate review

13  was sought.

14         MR. WISHNEW:  Correct, Your Honor.

15         THE COURT:  Okay.  So what effect, if any, does the

16  decision -- the -- I guess it's the Hawaii Land Court have?

17         MR. WISHNEW:  Your Honor, I don't believe it has any

18  effect here.

19         THE COURT:  Tell me why.

20         MR. WISHNEW:  Because the fact of the matter is it

21  was -- the decision of the Hawaii Land Court relates to a

22  separate litigation.  So there was a -- from a procedural

23  standpoint, there was a foreclosure proceeding started in 2003.

24  There was a nonjudicial foreclosure proceeding started in 2010,

25  and quickly dismissed three months later.  The Land Court

 1   decision is a part of the pre-existing state judicial

 2   foreclosure proceeding.  What is at issue in the claim is the

 3   affirmative claims of Ms. Unciano against the debtors in a

 4   federal court of action.  And the fact of the matter is, to the

 5   extent Ms. Unciano had similar issues, she could have raised

 6   those issues through the federal court action.  That matter has

 7   already been addressed, so there really is no way to try and

 8   reopen it to bring in the Land Court decision.

 9            THE COURT:  So on June 30th, 2014, the Hawaii

10   Intermediate Court of Appeals issued an order vacating the Land

11   Court order and determining that there was a dispute whether

12   GMACM is a valid owner of the mortgage, is that correct?

13            MR. WISHNEW:  Correct, Your Honor.

14            THE COURT:  So is -- when was the Ninth Circuit's

15   decision affirming the district court?

16            MR. WISHNEW:  One moment, Your Honor.

17            THE COURT:  I guess I can answer my own question:

18   December 18th, 2014.

19            MR. WISHNEW:  Yeah, that's in paragraph 14 of our

20   reply --

21            THE COURT:  Right.

22            MR. WISHNEW:  -- on docket 8767.

23            THE COURT:  So the most recent order is the Ninth

24   Circuit's decision affirming the district court?

25            MR. WISHNEW:  Yes, Your Honor.

1      THE COURT:  Did the district court decide whether GMAC
2  was the owner of the mortgage?

3      MR. WISHNEW:  No, Your Honor.  I think that was the
4  subject of the declaratory judgment count in the district court
5  action.  And my recollection is that the district court
6  abstained on that point because there was a simultaneous state
7  court action.  So that state court action, to my knowledge, is
8  still open.  Ms. Unciano still has her rights, but those rights
9  are not preserved.  The fact -- I'm sorry; let me take that
10  back.  Ms. Unciano does not assert any monetary counterclaims
11  against GMAC or against any debtor in the state court action,
12  and she hasn't preserved any such claims through a proof of
13  claim either.

14      THE COURT:  Okay.  All right.  Anything else you want
15  to add?

16      MR. WISHNEW:  Nothing, Your Honor.

17      THE COURT:  Ms. Unciano, go ahead.

18      MS. UNCIANO:  Oh, yes, good morning, Your Honor.
19  First I wanted to set out the conflict in the paperwork that I
20  had submitted in my objection.  And as far as Mr.
21  Rosenbaum -- that was him that was speaking?

22      THE COURT:  It's actually Mr. Wishnew who was arguing,
23  but that's okay.

24      MS. UNCIANO:  Oh, okay.  Sorry.

25      THE COURT:  No, that's okay.

1         MS. UNCIANO:  Anyhow, he mentioned that --

2         THE COURT:  It's one of his colleagues.

3         MS. UNCIANO:  I'm sorry, pardon?

4         THE COURT:  It's one of his -- Mr. Rosenbaum's

5    colleagues.  Mr. Rosenbaum is in the courtroom as well.

6         MS. UNCIANO:  Oh, okay.

7         THE COURT:  But go ahead.

8         MS. UNCIANO:  Okay.  Okay.  He did mention that the

9    judge abstained from a declaratory judgment as far as wanting

10   to rule on whether or not the assignment of mortgage to GMAC

11   was valid.  But what they did was, GMAC, they went into the

12   Land Court, they had made a correction because they had the

13   wrong person -- the wrong lender.  I'm sorry.  Anyhow, GMAC

14   proceeded as the mortgagee of an alleged mortgage that they did

15   not hold in the nonjudicial.  And then in the judicial side,

16   they proceeded, by way of Land Court, by doing a correction to

17   correct the invalid assignment, which is still invalid.  And

18   that matter has been vacated by the Land Court in the State of

19   Hawaii, in the ICA.

20        THE COURT:  May I ask you this?

21        MS. UNCIANO:  So I feel --

22        THE COURT:  Why doesn't --

23        MS. UNCIANO:  Um-hum.

24        THE COURT:  Why doesn't the decision of the federal

25   district court, affirmed by the Ninth Circuit, bar your damages

1  claim here because of res judicata?

2          MS. UNCIANO:  They didn't adjust the assignment of

3  mortgage.  What happened was I did send them a notice of the

4  ICA's ruling on the disposition as well as the judgment, but

5  they didn't take that into consideration at all and ruled

6  against -- against us anyway in the Ninth Circuit.  They still

7  think that was the State of Hawaii ICA decision.

8          But I'm confused.  I know that if someone takes --

9  tries to take something from me and I know that they shouldn't,

10  and they try to take it from me, I can call the police.  I can

11  put in -- I can put in a report that says, hey, this guy's

12  trying to steal something from me.  They'll go and investigate

13  and see if it's valid and they'll arrest that person if it is a

14  criminal act.

15          In this case, there's a judicial proceeding which I

16  have been filing that all of a sudden GMAC comes in, they try

17  to take it by way of nonjudicial.  They forced me into circuit

18  court again to file another complaint to stop the auction one

19  day before it was about to happen or a few days before it was

20  about to happen.  If I hadn't done that, they would have taken

21  the property.

22          THE COURT:  May I ask you this?

23          MS. UNCIANO:  But what the --

24          THE COURT:  Are you still in possession of the

25  property?

1    MS. UNCIANO:  Yes, I am now, because of the lien, yes.

2    THE COURT:  Okay.  And is --

3    MS. UNCIANO:  But I had to leave the property for

4  about a year.

5    THE COURT:  Is there -- is anyone seeking to foreclose

6  on the mortgage on the property now?

7    MS. UNCIANO:  Not at this time, no.  But you know, I

8  had to -- I had to move my family out; we were out for over a

9  year -- well, about a year.  We had to pay for storage costs.

10  We had to pay for a moving fee.  We had to pay for rent.

11  Anyway, it was -- it was astronomical, all the things that we

12  had to go through.  I mean, if someone steals something and

13  they attempted to steal in a criminal court, you attempt to

14  steal it and you find that you did try to steal it, it's a

15  criminal offense.

16    THE COURT:  May I ask --

17    MS. UNCIANO:  Here --

18    THE COURT:  -- you this?  What were you seeking to

19  recover in your action in the district court?  You were seeking

20  to recover damages, am I correct?

21    MS. UNCIANO:  Yes.  You know -- yes -- yes, damages.

22  Because of what had happened in the federal court and in the

23  circuit court, they succeeded in taking the property, and it

24  was ruled against them.  So they not only did it once to me;

25  they did it twice to me.  And I -- I'm really confused.  How

1  can this happen?

2          THE COURT:  Mr. Rosenbaum, let -- excuse me -- Mr.

3  Wishnew, do you agree that whatever I decide with respect to

4  the Unciano damages claim does not preclude her from asserting

5  a defense of -- with respect to the issue that the Land

6  Court -- that the appellate court and the state court decided?

7  Now, if --

8          MR. WISHNEW:  Yes --

9          THE COURT:  -- a foreclosure action proceeds --

10          MR. WISHNEW:  Yes, Your Honor, I think that's

11  consistent with our supplemental servicing order --

12          THE COURT:  Okay.

13          MR. WISHNEW:  -- in this case as well.

14          THE COURT:  Okay.  So the only issue before me is

15  whether Ms. Unciano's damages claim against, now, the trust is

16  barred by res judicata.  It does not -- if I rule in the

17  trust's favor, sustain the objection on the basis of res

18  judicata, you agree that it does not prevent or preclude Ms.

19  Unciano from asserting a defense to foreclosure, either an

20  affirmative claim that she asserts to enjoin any future

21  foreclosure; she's still permitted to do that?

22          MR. WISHNEW:  Yes, Your Honor.

23          THE COURT:  Okay.

24          MR. WISHNEW:  I believe the action would be prosecuted

25  by the current servicer, which is not any of the debtors at

1  this point in time.

2          THE COURT:  Okay.  All right.  Anything else you want

3  to add, Ms. Unciano?

4          MS. UNCIANO:  I couldn't hear what he said.  I'm

5  sorry.

6          THE COURT:  Okay.  Mr. Wishnew, in substance, he

7  agreed that -- and I'm not ruling from the bench, but if I were

8  to sustain the trust's objection to your damages claim, it

9  would not prevent you from asserting your arguments as a

10 defense to any foreclosure, either because you bring an action

11 to enjoin foreclosure, if they try to go the nonjudicial

12 foreclosure route, or otherwise.  In other words, my decision

13 on your damages claims, if it's based on res judicata from the

14 district court decision affirmed by the Ninth Circuit, doesn't

15 prevent you from asserting your same arguments that you've

16 already raised in the Land Court.  That's the -- you agree with

17 that, Mr. Wishnew?  That's the substance of what --

18         MR. WISHNEW:  Correct, Your Honor.

19         THE COURT:  Okay.  Is there anything you wish to add,

20 Ms. Unciano?

21         MS. UNCIANO:  Well, I can't think right now.

22         THE COURT:  All right.

23         MS. UNCIANO:  But maybe what you're saying is that

24 if -- if I wanted to -- if a foreclosure case comes forward, is

25 what you're saying, that it doesn't prevent me from raising

1  these issues?

2           THE COURT:  That's correct.

3           MS. UNCIANO:  In the foreclosure proceeding?

4           THE COURT:  Yeah.  All I have before me is the issue

5  of whether you can recover damages against the -- from the

6  trust.

7           MS. UNCIANO:  Right.

8           THE COURT:  You previously litigated that in the

9  district court action, and you lost there.

10          MS. UNCIANO:  Right.

11          THE COURT:  You appealed, and the decision of the

12 district court was affirmed.

13          MS. UNCIANO:  Um-hum.

14          THE COURT:  The trust argues that that requires this

15 Court to apply res judicata and bar your damages claim.  I just

16 wanted to confirm with the trust's lawyer that it does not

17 affect an equitable argument that you would assert --

18          MS. UNCIANO:  All right.

19          THE COURT:  -- as a defense to any foreclosure, either

20 because you'd bring an action to enjoin foreclosure or -- okay?

21 That was the point I was trying to clarify with the trust

22 because the trust is -- none of the debtors service your loans,

23 so if someone's going to try to foreclose, it isn't going to be

24 GMAC or the debtors.

25          MS. UNCIANO:  All right.

1        THE COURT:  It would be the current servicer.

2        MS. UNCIANO:  Um-hum.

3        THE COURT:  Okay.  I'm going to take the matter --

4        MS. UNCIANO:  So the second part would --

5        THE COURT:  I'm going to take the matter under

6    submission and we'll render a decision in due course.

7        Thank you very much, Ms. Unciano.

8        MS. UNCIANO:  Thank you.

9        THE COURT:  Okay.

10       MS. UNCIANO:  Thank you.

11       THE COURT:  All right, Mr. Wishnew?

12       MR. WISHNEW:  Thank you, Your Honor.  The next and

13   last matter on today's agenda is item 2 on page 12, the ResCap

14   Borrower Claims Trust objection to amended claim number 4445,

15   filed by Alan Moss.  And Mr. Moss is on the phone today.

16       All right.  Mr. Moss, are you on the phone?

17       MR. MOSS:  I am, Your Honor.

18       THE COURT:  Okay.  Go ahead, Mr. Wishnew.

19       MR. WISHNEW:  Thank you, Your Honor.  Your Honor, Mr.

20   Moss' original claim was expunged without prejudice.  That was

21   an order from the Court at docket number 8127.  Your Honor

22   provided Mr. Moss with the opportunity to cure his pleading

23   deficiencies.  He filed his amended claim.  The borrower trust

24   then filed its objection on April 15th.  Mr. Moss filed his

25   response on June 3rd, at docket 8727.  The borrower trust filed

1  its reply on June 18th, 2015.

2          Your Honor, there really is one issue that's before

3  the Court today, and the question is, is has Mr. Moss' amended

4  claim sufficiently pled actual malice so as to -- or actual

5  malice by Executive Trustee Services so as to take it out of

6  the immunity exception or the privilege exception given to

7  trustees in California when addressing and servicing deeds of

8  trust.

9          It's our position that he has not alleged sufficient

10 substantive facts but really only alleged conclusory

11 allegations that are unsubstantiated.  And given the fact that

12 he's not met his pleading burden, we'd ask that, similar to the

13 Court's prior ruling, this claim be expunged, but this time

14 with prejudice.

15         THE COURT:  And your position is that Rule 9(b)

16 applies to a pleading of actual malice?

17         MR. WISHNEW:  Yes, Your Honor, yes.

18         THE COURT:  Let me see if I have any questions for

19 you.

20         All right.  Let me hear from Mr. Moss.

21         Go ahead, Mr. Moss.

22         MR. MOSS:  Excuse me.  Thank you, Your Honor.  I

23 believe I have met my burden.  I've alleged malice, and in two

24 different ways.  Firstly, by default.  I believe that it is

25 uncontroverted that I pled malice and that the amended claim of

1  the original claim is based on the complaint that I filed in

2  San Mateo Superior Court here in California.  And the

3  allegations of that complaint have to be taken as true

4  because --

5          THE COURT:  Mr. Moss -- Mr. Moss, let me -- I

6  understand your argument about the default, but -- and I'm not

7  deciding it from the bench, but I want you to assume that

8  you're unsuccessful in your argument about default.  No default

9  judgment was actually entered.  And so I understand the

10  argument you're making; I'm not ruling on it now.  But for

11  purposes of this discussion, I want you to assume that the

12  trust is not barred by virtue of the California proceeding.

13  Tell me why do you believe that your amended claim sufficiently

14  pleads actual malice.

15          MR. MOSS:  All right.  Because we -- well, if we

16  forget about the default and --

17          THE COURT:  Yes, for the sake of this discussion,

18  forget about the default.  No default judgment was ever

19  entered, Mr. Moss.

20          MR. MOSS:  Okay.  But I want to make sure that the

21  Court --

22          THE COURT:  Mr. Moss, tell me why you believe the

23  amended claim adequately pleads actual malice.  What's in the

24  amended claim that you believe satisfies the pleading

25  requirements for pleading actual malice?

1      MR. MOSS:  Because that -- the standard for actual

2  malice is two prongs, and one of those prongs is that they had

3  no reasonable grounds for believing in the truth of what they

4  published.  And in this case, as I have alleged in the amended

5  complaint, it is absolutely clear they had no grounds for any

6  belief.  They took no action.  They did no inquiry.  They did

7  no due diligence.  And it's clear under California law that

8  they have at least some obligation to ascertain that they had

9  the authority to move forward.  And they didn't do anything.

10      And that's abundantly clear if, for no other reason,

11  from the fact that the trust had advanced no evidence, no

12  allegations, no anything that ETS did anything.  They didn't

13  make a phone call.  They didn't go online.  They could have

14  ascertained whether or not they had authority in about two

15  minutes, the same way I did:  by going online and looking at

16  just the recorded documents.  And they haven't done it for five

17  years.  And they -- they haven't done it for five years.  They

18  could have done it initially.  They were substituted in as

19  trustee -- or purportedly substituted in as trustee, I should

20  say, by an entity that nobody has ever even heard of, let alone

21  can be traced.

22      And under the recorded documents, they -- there was no

23  authority from this entity -- it wasn't ResCap that did it, it

24  wasn't GMAC that did it.  It was something called TCIF that

25  weren't going to become the beneficiary for more than a year

1   after they purported to substitute in ETS as the

2   beneficiary -- as -- I'm sorry, as the trustee.  So my position

3   is -- and I have alleged it, and I think adequately so, if I

4   may say so -- that a trustee in California is not a true

5   trustee, but he has absolute duty and obligations to both

6   parties, both to the beneficiary and to the trustor, my

7   pos -- I was the trustor.  And they did nothing.  They did

8   zero.  They absolutely violated that duty.

9           They didn't make one inquiry.  They didn't do

10  anything.  They stonewalled forever.  They didn't ask for a

11  subpoena.  They did nothing.  Absolutely nothing.  And they did

12  it with someone -- I mean, I don't know what their argument --

13  I have no idea what they based it on or didn't base it on or

14  anything.  What I do know and what is public, which is the only

15  thing I can know right now, is that they took no action.  They

16  did nothing.

17          THE COURT:  Let me ask you this, Mr. Moss.

18          MR. MOSS:  And that, I believe, meets the second prong

19  of Kachlon because they could not have a reasonable belief,

20  because they couldn't have any belief.

21          THE COURT:  So Kachlon -- Kachlon, which is Kachlon v.

22  Markowitz, 85 Cal.Rptr.3d 532.  It's a Court of Appeals

23  2008 -- California Court of Appeals 2008, said that mere

24  negligence in making a sufficient inquiry into the facts on

25  which a publication was based is not sufficient to sustain a

1  claim for actual malice.  You -- what authority -- so that's

2  the -- the trust relies on that.  I can't find -- you didn't

3  allege -- you didn't argue specific authority to support your

4  argument that the trust had an affirmative duty to investigate

5  the chain of title.  So what -- other than Kachlon, is

6  there -- do you have a case that supports your argument?

7       MR. MOSS:  I think I do, Your Honor.

8       THE COURT:  Well, tell me what it is.

9       MR. MOSS:  All right.  Just give me -- if you'll just

10  give me a minute.

11       I mean, in the first place, Kachlon is --provides that

12  standard.  But in Kachlon, the trustee was actually legally

13  appointed.  It wasn't an issue in the case.

14       THE COURT:  Yes, I understand --

15       MR. MOSS:  So the holding that --

16       THE COURT:  -- your -- you try to distinguish -- you

17  make the argument that somehow this is different because -- you

18  try to place a burden on ETS to investigate the chain of title.

19  To me, your argument is not consistent with Kachlon.  In

20  Kachlon, the Court also said, after being presented with

21  documentation showing that the underlying debt had been paid,

22  the trustee took no further action to enforce the foreclosure.

23  Nothing remotely suggests that the trustee acted with malice.

24       I -- what I'm having trouble with is seeing what the

25  legal basis for your argument that ETS had an affirmative duty

1  to go beyond what it did and how the absence of making the

2  investigation is sufficient to support a claim for actual

3  malice.  Negligence doesn't suffice for you to be able to state

4  your affirmative claim.  Actual malice is what's required, and

5  I don't see what -- what's the authority you're relying on to

6  support your claim?  I mean, additionally, Ogilvie v. Select

7  Portfolio Servicing, 2012 WL 3010986, Northern District

8  California, July 23rd, 2012, it upheld -- it determined that

9  the plaintiff had not adequately pled malice by alleging that

10  "Defendants acted in malice and reckless disregard for the

11  truth when they formulated false documents."

12         That wasn't a sufficient allegation.  I don't see how

13  you've done anything more than what's been rejected by courts

14  in other cases, and you have no cases that support your

15  position.  Do you have a case that supports your position?

16         MR. MOSS:  Well, there is an -- there is not a case

17  that I could find where an illegally substituted trustee, as a

18  basic fact of the case, was -- as opposed to Kachlon -- where

19  it was -- where the Court held that that was -- it didn't make

20  malice.  I mean --

21         THE COURT:  Okay, I understand your argument.

22  Anything else you want to add?

23         MR. MOSS:  Well, there's nothing I want to add on that

24  point, no.

25         THE COURT:  Well, that seems to be the central --

1              MR. MOSS:  I just --

2              THE COURT:  -- point of what this --

3              MR. MOSS:  I guess I would --

4              THE COURT:  -- what this is about.  You were

5    given -- I granted you leave to amend, you amended, and the

6    issue is whether your amended claim sufficiently states a

7    claim.  I take it you don't disagree that under applicable law

8    the issue is whether you've adequately pled actual malice.  Do

9    you agree with that?  That's the standard in --

10             MR. MOSS:  Well, I --

11             THE COURT:  -- the California law.

12             MR. MOSS:  -- I agree that I have to plead -- I have

13   to claim malice.

14             THE COURT:  You have to --

15             MR. MOSS:  I have to do that --

16             THE COURT:  -- plead actual malice.  That's what

17   California substantive law requires for you to properly state a

18   claim.  The issue before me today is whether your

19   amen -- because I granted you leave to amend.  And the issue is

20   whether the amended claim adequately states actual malice.  The

21   trust argues no, and you're arguing yes.  That's what I have to

22   decide.  Do you agree?

23             MR. MOSS:  I agree within the parameters of

24   what -- what's in my response, which includes the default,

25   which I think it cannot be disputed now that I have pled actual

1    malice.

2              THE COURT:  All right.  I --

3              MR. MOSS:  And even if --

4              THE COURT:  All right.  I'm going to take --

5              MR. MOSS:  -- I've --

6              THE COURT:  I've heard enough.  I'm taking the matter

7    under submission.  Thank you very much.

8              MR. WISHNEW:  Thank you, Your Honor.  That --

9              THE COURT:  All right.  That's it for the agenda?

10             MR. WISHNEW:  That's it for today's agenda.

11             THE COURT:  All right.  We're going to take your

12   recess until 11 o'clock on the calendar.

13             MR. MOSS:  Your Honor?

14             THE COURT:  No, the hearing is over.

15             You can disconnect the phone.

16             MR. MOSS:  Well --

17             THE COURT:  Hold on.  We do have one other issue.

18             I'm sorry; there is a discovery dispute in Moss.

19             MR. MOSS:  Thank you.

20             THE COURT:  Mr. Moss, Mr. -- do you want to address

21   the issue of discovery?

22             MR. WISHNEW:  Sure.

23             MR. MOSS:  I do.

24             THE COURT:  Go ahead.

25             MR. MOSS:  I appreciate the opportunity.

1          THE COURT:  Go ahead.

2          MR. MOSS:  I -- the trust has put forward to the Court

3    evidence that is only contained in the records of ResCap.  They

4    have no provided any evidence from the file to the ETS, and I

5    think it is fundamentally unfair that that is the case.  This

6    action is against ETS, and if I have a claim, it is against

7    ETS.

8          THE COURT:  Well, you don't get to do discovery to

9    determine whether you have a claim.  You have to properly state

10   a claim to be able to get discovery.  I permitted you to get

11   some discovery, but the standard is not -- you don't get to

12   take your discovery and then decide whether you can properly

13   state a claim.

14          Mr. Wishnew, you want to address the issue?

15          MR. MOSS:  I'm --

16          MR. WISHNEW:  I think Your Honor has pretty much

17   stated our position that you don't get discovery to be able to

18   plead a good claim.  And frankly, the matter is Mr. Moss had

19   the opportunity to proffer facts to substantiate actual malice.

20   He hasn't done that.  He isn't going to take -- only if Your

21   Honor feels that he's made that pleading, then he can get

22   discovery.

23          THE COURT:  All right.  The matter's taken under

24   submission.

25          This hearing is adjourned.

1             You can disconnect the telephone.

2             All right.  We'll -- the Court will resume at 11 a.m.

3        (Whereupon these proceedings were concluded at 10:51 AM)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

12-12020-mg   Doc 8838   Filed 07/06/15   Entered 07/06/15 09:57:18   &lt;b&gt;(Please Disregard)&lt;/b&gt;Main Document   Pg 36 of 37

36

1

2                              **I N D E X**

3

4                              RULINGS

5                                                    PAGE      LINE

6   The ResCap Borrower Claims Trust's               13        17

7   eighty-seventh omnibus objection to claims

8   is sustained as to all claims other than

9   Leonhardt and Unciano

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N

I, Aliza Chodoff, certify that the foregoing transcript is a true and accurate record of the proceedings.

_____

ALIZA CHODOFF

AAERT Certified Electronic Transcriber CET**D-634

eScribers

700 West 192nd Street, Suite #607

New York, NY 10040

Date:  June 24, 2015