# Exhibit 1

## Proposed Order

NITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------
                                                )
In re:                                          )    Case No. 12-12020 (MG)
                                                )
RESIDENTIAL CAPITAL, LLC, et al.,               )    Chapter 11
                                                )
                              Debtors.          )    Jointly Administered
------------------------------------------------------------  )

## ORDER GRANTING RESCAP BORROWER CLAIMS TRUST'S EIGHTY-EIGHTH OMNIBUS OBJECTION TO CLAIMS ((I) NO LIABILITY BORROWER CLAIMS, AND (II) REDUCE AND ALLOW BORROWER CLAIMS)

Upon the eighty-eighth omnibus objection to claims (the "Objection")[1] of the

ResCap Borrower Claims Trust (the "Trust"), established pursuant to the terms of the confirmed

Plan filed in the above-referenced Chapter 11 cases, as successor in interest to the Debtors with

regard to Borrower Claim matters, seeking entry of an order, pursuant to section 502(b) of title

11 of the United States Code (the "Bankruptcy Code"), Rule 3007(d) of the Federal Rules of

Bankruptcy Procedure, and this Court's order approving procedures for the filing of omnibus

objections to proofs of claim [Docket No. 3294] (the "Procedures Order"), disallowing and

expunging the No Liability Borrower Claims and reducing the Reduce and Allow Borrower

Claims, all as more fully described in the Objection; and it appearing that this Court has

jurisdiction to consider the Objection pursuant to 28 U.S.C. §§ 157 and 1334; and consideration

of the Objection and the relief requested therein being a core proceeding pursuant to 28 U.S.C. §

157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

due and proper notice of the Objection having been provided, and it appearing that no other or

further notice need be provided; upon consideration of the Objection and the *Declaration of*

---

[1]    Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Objection.

*Kathy Priore in Support of the ResCap Borrower Claims Trust's Eighty-Eighth Omnibus Objection to Claims ((I) No Liability Borrower Claims and (II) Reduce and Allow Borrower Claims)* annexed thereto as <u>Exhibit 2</u>, and the *Declaration of Norman S. Rosenbaum in Support of the ResCap Borrower Claims Trust's Eighty-Eighth Omnibus Objection to Claims ((I) No Liability Borrower Claims and (II) Reduce and Allow Borrower Claims)*, annexed thereto as <u>Exhibit 3</u>; and the Court having found and determined that the relief sought in the Objection is in the best interests of the Trust, the Trust's constituents, the Debtors, and other parties in interest and that the legal and factual bases set forth in the Objection establish just cause for the relief granted herein; and the Court having determined that the Objection complies with the Borrower Claim Procedures set forth in the Procedures Order; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Objection is granted to the extent provided herein; and it is further

ORDERED that pursuant to section 502(b) of the Bankruptcy Code, the claims listed on <u>Exhibit A</u> annexed hereto (collectively, the "<u>No Liability Borrower Claims</u>") are disallowed and expunged with prejudice; and it is further

ORDERED that pursuant to section 502(b) of the Bankruptcy Code, the claims listed on <u>Exhibit B</u> annexed hereto (the "<u>Reduce and Allow Borrower Claim</u>") are hereby reduced and allowed as provided for on <u>Exhibit B</u>; and it is further

ORDERED that Kurtzman Carson Consultants LLC, the Debtors' claims and noticing agent, is directed to disallow and expunge the No Liability Borrower Claims identified on the schedule attached as <u>Exhibit A</u> hereto so that such claims are no longer maintained on the Claims Register; and it is further

ny-1194981

ORDERED that Kurtzman Carson Consultants LLC, the Debtors' claims and noticing agent, is directed to modify the Reduce and Allow Borrower Claims as set forth on the schedule attached as Exhibit B hereto so that such claims are reflected on the Claims Register in a manner consistent with this Order; and it is further

ORDERED that the Trust is authorized and empowered to take all actions as may be necessary and appropriate to implement the terms of this Order; and it is further

ORDERED that notice of the Objection, as provided therein, shall be deemed good and sufficient notice of such objection, and the requirements of Bankruptcy Rule 3007(a), the Case Management Procedures entered on May 23, 2012 [Docket No. 141], the Procedures Order, and the Local Bankruptcy Rules of this Court are satisfied by such notice; and it is further

ORDERED that this Order has no res judicata, estoppel, or other effect on the validity, allowance, or disallowance of any claim not listed on Exhibit A or Exhibit B annexed to this Order, and the Trust's and any party in interest's right to object on any basis are expressly reserved with respect to any such claim not listed on Exhibit A or Exhibit B annexed hereto; and it is further

ORDERED that this Order shall be a final order with respect to each of the No Liability Borrower Claims identified on Exhibit A and Reduce and Allow Borrower Claims identified on Exhibit B annexed hereto, as if each such Claim had been individually objected to; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

ny-1194981

Dated: _____, 2015
          New York, New York


                              _____

                              THE HONORABLE MARTIN GLENN
                              UNITED STATES BANKRUPTCY JUDGE

**Exhibit A**

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| 4782 | Donald R Eaton<br><br>Hood & Lay, LLC<br>1117 22nd Street South, Ste. 101<br>Birmingham, AL 35205<br><br>Unliquidated<br><br>GMAC Mortgage, LLC | General No Liability | Claimant's loan was originated by Debtor GMAC Mortgage Corporation on January 2, 2002.  The loan was transferred to Fannie Mae. GMAC Mortgage serviced the loan from origination until the foreclosure in April 2010. Claimant's proof of claim, in box 3a references litigation filed by Fannie Mae - "FNMA vs Donald R. Eaton".  Debtors' records indicate this reference is to a pending eviction action filed by Fannie Mae ("FNMA") on May 19, 2010.  Claimant provided no additional information as to the basis of his claim against any Debtor.<br><br>Debtors' records indicate a foreclosure deed was issued to GMAC Mortgage on or about April 28, 2010.  A Warranty Deed was then issued from GMAC Mortgage to Fannie Mae on April 29, 2010.  No Debtor is a party to the eviction action, and the Claimant has not filed any third party claims against GMAC Mortgage in this eviction action.  Debtors have no interest and no involvement in the property, and there is no stated basis for a claim against the Debtors. | |
| 4618 | Antonio Navarrete<br><br>3570 Manresa Drive Madera, CA 93637<br><br>Unliquidated<br><br>GMAC Mortgage, LLC | Origination Issues Loan Modification Issues Wrongful Foreclosure | Mountain States Mortgage Centers Inc. originated the loan on October 24, 2009. Non-debtor Ally Bank purchased the loan from Mountain States Mortgage. Debtor GMAC Mortgage, LLC purchased the loan from Ally Bank. Debtor GMAC Mortgage LLC serviced the loan from October 24, 2009 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>In an attachment to the proof of claim, Claimant asserts claims for i) fraudulent inducement of the loan origination, and ii) loan modification fraud, and iii) | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | wrongful foreclosure on the basis that the Debtor purportedly lacked standing to foreclose. Claimant asserts that Debtors' aforementioned conduct amounts to a violation of California Business & Professions Code §17200. With respect to Claimant's origination-based claims, Claimant asserts Debtor "provided Claimant with a loan that was more than they could qualify for knowing that Claimants would default on the loan" and "inflated property values and entered fraudulent financial information on the loan application without Claimants' knowledge." With respect to loan modification claims, Claimant asserts that Debtors promised Claimant would "qualify for a loan modification" with lower monthly payments provided Claimant submitted financial documentation, and that Debtors wrongfully commenced foreclosure while Claimant was being considered for modification. With respect to Claimant's wrongful foreclosure and lack-of-standings claims, Claimant asserts that Debtors "forged assignments" and engaged in "robo-signing" in an effort to foreclose on the property. Claimant seeks unspecified damages arising from "damage to their credit rating, mortgage payments made to Debtors throughout the course of the loan, emotional distress and punitive damages." On June 21, 2013, Debtors sent to Claimant a letter requesting additional information and documentation in support of the claim; however, Claimant failed to respond.<br><br>Debtors have no liability for any of Claimant's origination-based claims because no Debtor was involved in the origination of Claimant's loan. Claimant's loan was | |

2

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | originated by Mountain States Mortgage Centers Inc.<br><br>Debtors have no liability for Claimant's loan modification claims because in every instance, the Debtors acted in accordance with applicable guidelines and Debtors' standard business practices. The Borrower Trust reviewed Debtors' records and found no evidence that Debtors promised Claimant a loan modification. Furthermore, the Borrower Trust found no instances where Debtors wrongfully commenced foreclosure while Debtors reviewed Claimant for loan modification options. On the contrary, Debtors' records show Debtors accommodated Claimant by postponing foreclosure sale on several occasions to give Claimant opportunities to apply for loan modification. Debtors' records show the following chronology in support of the Borrower Trust's bases for objection:<br><br>Claimant spoke with Debtors via phone on January 3, 2011 and requested a deferment of payment.  Debtor advised that this was not an option on the loan. Debtors offered a repayment plan, however Claimant stated they could not afford the proposed repayment plan payments. Debtors advised Claimant that they could apply for a traditional loan modification, and that Claimant did not qualify for HAMP modification because Claimant's loan originated after January 1, 2009.<br><br>Debtors advised Claimant to obtain workout package from website to apply for loan modification. Debtors received a complete workout package from Claimant on February 1, 2011. Debtors mailed a denial letter to Claimant on February 15, | |

3

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | 2011 because Claimant did not meet imminent default requirements (requiring the hardship that caused the default be long term rather than temporary). Claimant did not meet imminent default requirements because the reason for Claimant's default was loss of job in December 2010, and Claimant had since obtained a new job.<br><br>Claimant spoke with Debtors via phone on February 28, 2011.  Claimant requested a payment arrangement to be set up on the account.   Debtors verbally took Claimant's financial information and setup a six month repayment plan with the first payment due March 4, 2011. Claimant spoke with Debtors via phone on April 5, 2011, at which time the Claimant advised the Debtor that he made a short payment online under the repayment plan and called to make the remaining needed payment. Claimant brought the account current through the repayment plan leaving the account due for September 1, 2011 payment.<br><br>Debtors mailed a traditional workout package to Claimant on February 1, 2012, as the account was owing for the January and February 2012 payments. Debtors also mailed an FHA Options Letter to Claimant on February 13, 2012 because the account owed for January and February 2012 payments. Claimant's authorized third party, Tina Johnson from Resource Law Center, spoke with Debtors via phone on February 28, 2012. Debtors advised Ms. Johnson of Claimant's option to apply for loan modification and advised of fax number where Claimant should send the completed workout package. Debtors mailed Claimant a breach letter on | |

4

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | March 6, 2012 as the account was owing for the January through March 2012 payments. Debtors received a workout package from Claimant on March 8, 2012. The account was denied a traditional modification due to insufficient income, and a denial letter was mailed to Claimant on March 28, 2012.<br><br>Claimant's authorized third party, Tina Johnson from Resource Law Center, spoke with Debtors via phone on April 4, 2012. Debtors advised Ms. Johnson of the modification denial and during the call, a repayment plan was setup for Claimant to help him bring the account current. A copy of the repayment plan was mailed to Claimant on April 6, 2012.  Claimant did not make the payment due April 9, 2012 and the repayment plan was cancelled on April 12, 2012. The account was referred to foreclosure on April 18, 2012 because the account was owing for the January through April 2012 payments and because there were no active arrangements or agreement to bring the account current.<br><br>Claimant spoke with Debtors via phone on June 5, 2012. Debtors advised Claimant that the account was in active foreclosure and advised him of options to pursue a modification. Debtors advised Claimant that he could obtain workout package through Debtors' website. Claimant spoke with Debtors via phone on July 5, 2012. During the call, Claimant stated that he is working with an attorney to apply for a loan modification. On August 16, 2012, Debtors scheduled  a foreclosure sale for September 17, 2012. | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Claimant's authorized third party, Tina Johnson from Resource Law Center, spoke with Debtors via phone on September 12, 2012. Ms. Johnson requested a postponement of foreclosure sale to allow time for modification review.  Debtors advised her that a complete workout package needs to be received seven business days prior to sale in order to postpone the foreclosure sale.  Debtors advised that Claimant could fax in the workout package immediately and Debtors would review; however, there was no guarantee the foreclosure sale would be postponed. Debtors received a workout package for modification review on September 12, 2012. Debtors submitted a request to the loan investor, FHA, to postpone the foreclosure sale for 30 days on September 13, 2012 which was approved, thereby moving the foreclosure sale to October 17, 2012.<br><br>The account was denied a traditional loan modification on September 27, 2012 due to Claimant's income being insufficient to support a modification. The account was approved for an FHA HAMP Trial plan on October 2, 2012. Claimant spoke with Debtors via phone on October 2, 2012. Debtors advised Claimant of approved FHA HAMP trial plan with the first payment due on November 1, 2012 in the amount of $1,420.83. Debtors advised Claimant that the FHA HAMP trial agreement with terms had been mailed out already. Debtors postponed the foreclosure sale to December 6, 2012 to allow time for Claimant to provide a trial payment.<br><br>Claimant spoke with Debtors via phone on October 16, 2012. Debtors advised | |

6

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Claimant of the trial plan and that the trial payment was due. Debtors received a signed Trial plan agreement as well as the first trial plan payment on November 13, 2012. Claimant spoke with Debtors via phone on November 15, 2012. Claimant advised that the trial plan payment may be returned for insufficient funds. Debtors advised Claimant that the funds had not been returned as of the call.<br><br>On December 5, 2012, Debtors postponed the foreclosure sale to January 10, 2013 as Claimant was current on the trial plan. Debtors received second trial plan payment on December 12, 2012.  Debtors were notified by Claimant's bank on December 26, 2012 that the payment made December 12, 2012 was being returned for insufficient funds. A letter was mailed to Claimant on December 27, 2012 informing Claimant of the returned payment. The account was denied for a FHA HAMP modification and the trial plan was cancelled on January 3, 2013 due to a replacement payment for the trial plan not being received.<br><br>On January 11, 2013, Debtors postponed the foreclosure sale to February 17, 2013 as required by California State Law which requires Debtors to allow Claimant an opportunity to appeal the denial reason. Claimant spoke with Debtors via phone on January 14, 2013. Debtors advised that the payment was returned due to insufficient funds in his bank account. Claimant spoke with Debtors via phone on January 17, 2013, at which time Debtors advised Claimant of the cancellation of the trial plan due to the payment being returned in December. Debtors advised | |

ny-1192931

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Claimant that he could reapply for a modification, but that Claimant may not qualify for a modification because Claimant is now more than a year delinquent.  Debtors advised Claimant that Claimant may qualify if Claimant has a large down payment to put toward a loan modification. Debtors also advised Claimant of the "Hardest Hit Funds" program available through his state (i.e., California).<br><br>Debtors received a new workout package from Claimant on January 23, 2013. Debtors denied traditional loan modification on February 1, 2013 due to Claimant having insufficient income to support a loan modification. Debtors mailed a denial letter to Claimant on February 4, 2013. The loan was transferred to Ocwen Loan Servicing on February 16, 2013.<br><br>Debtors have no liability for Claimant's assertion that Debtor lacked standing to foreclose because the assertion is incorrect. Debtors' records show the loan was originated on October 24, 2009 by Mountain States Mortgage Centers Inc.  Debtors immediately began servicing the loan on the date of origination. Per the recorded Assignment dated April 23, 2012, "all beneficial interest under that certain Deed of Trust…together with Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust" was transferred to GMAC Mortgage. The note shows proper endorsements from Mountains States Mortgage Centers Inc. to non-Debtor Ally Bank; from Ally Bank to GMAC Mortgage, LLC, and from GMAC Mortgage, LLC to blank.  Debtors acted | |

8

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | appropriately and were within their right to refer the account to foreclosure because the Claimant was significantly past due on their account. Debtors referred Claimant's account to foreclosure April 19, 2012 as the account owed for January through April 2012 payments on the loan. Notwithstanding the fact that Debtors had standing to foreclose, Claimant does not appear to have damages arising from these allegations because a foreclosure sale was never held on the account while Debtors serviced the loan. Debtors' records show Debtors postponed the foreclosure sale while the account was being reviewed for loan modification options in order to give Claimant the opportunity to save the property from foreclosure sale.  The loan was transferred to Ocwen Loan Servicing on February 16, 2013 while in active foreclosure but a foreclosure sale had not been held on the property.  At the time the loan was transferred to Ocwen, a foreclosure sale had not occurred.<br><br>As a result of the above, the Claimant's assertions do not give rise to a violation of California Business & Professions Code §17200. | |
| 4492 | Betty Harvey<br><br>PO Box 27<br>Apple Valley, CA 92307<br><br>Unliquidated | Escrow Issues, General no liability | GMAC Mortgage Corporation DBA ditech originated the loan on August 24, 2004. Debtor GMAC Mortgage transferred its interest to Fannie Mae on or about October 18, 2004. Debtor GMAC Mortgage LLC serviced the loan from August 24, 2004 until servicing transferred to GreenTree Servicing on February 1, 2013.<br><br>Claimant does not state a basis for the claim in box 2 of the proof of claim form. In a letter attached to the proof of claim, Claimant asserts that in 2011, the | |

9

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | GMAC Mortgage, LLC | | Debtors improperly required escrows for a flood insurance policy that Debtors wrongfully placed on the account.  Claimant asserts that she already had her own flood insurance at the time Debtors acquired the new policy. Claimant does not state a claim amount on the proof of claim form or in the attached letter. On June 21, 2013, Debtors sent a letter to Claimant requesting additional information and documentation in support of the claim and claim amount; however, Claimant failed to respond.<br><br>Debtors have no liability to Claimant because Debtors were within their rights to place flood insurance on the account, because Claimant failed to demonstrate that she was maintaining flood insurance on her home. Section 5 of the mortgage states, "Borrower shall keep the improvements now and existing or hereafter erected on the Property insured against loss by fire, hazards including within the term 'extended coverage' and any other hazards including but not limited to earthquakes and floods, for which the Lender requires insurance.....If Borrower fails to maintain any coverages mentioned above, Lender may obtain insurance coverage".  Debtors' records show that when Claimant provided proof to Debtors of Claimant's self-obtained flood coverage, Debtors cancelled Debtors' policy and refunded Claimant for all amounts tied to coverage overlap, or $280.72 of the $354.32 charged under Debtors' policy.<br><br>More specifically, Debtors' records reflect that Debtors sent a letter to Claimant | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | on August 22, 2011, requesting that the Claimant provide proof his flood insurance policy within 45 days. Debtors sent a follow-up letter to Claimant on September 21, 2011. Debtors placed flood insurance on the account on October 7, 2011 in the amount of $354.32, which provided insurance coverage from August 3, 2011 to August 3, 2012. On October 11, 2011, Debtors sent Claimant a letter notifying Claimant that Debtors had placed a new policy on the account. Debtors' records show that on December 27, 2011, Claimant requested a refund and provided proof of insurance. As a result, on January 3, 2012, Debtors sent Claimant a letter notifying Claimant that the policy the Debtors placed on the account was cancelled. Debtors refunded Claimant for all amounts tied to coverage overlap, or $280.72 of the $354.32 charged under Debtors' policy. To make up for the $73.60 shortfall, on February 3, 2012, Claimant remitted an additional $73.60 along with her regular principal and interest mortgage payment. Debtors' records show Debtors misapplied $67.47 of the $73.60 to Claimant's principal balance instead of to escrow, and then required Claimant to remit an additional $6.13 per month for 11 months in addition to their monthly principal and interest payment to cover the shortfall. Although Debtors acknowledge misapplying the $67.47, Claimant was not damaged by the error because Claimant received the benefit of the $67.47 with a reduction to their principal balance owed on the loan.<br><br>At the time Claimant's account was service-released to Greentree on February 1, | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | 2013, the account had a positive escrow balance of $0.04. | |
| 3682 | Carolyn E. Woodridge and Iris Woodridge<br><br>1235 Van Buren Street, N.W. Washington DC 20012<br><br>Unliquidated<br><br>GMAC Mortgage, LLC | Interest Rate and Fees Collected, General Servicing Issues, Escrow Issues, | Home Unity Corporation of Maryland originated the loan on November 15, 1985. The loan was ultimately sold to Freddie Mac. Debtor GMAC Mortgage LLC serviced the loan from October 21, 1996 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimants assert "Mortgage Note" as basis for claim in box 2 of the proof of claim form. Claimants attach a letter to the Office of the Attorney General dated May 5, 2011, in which Claimants assert Debtors i) mishandled the application of Claimants' payments since 2003, and wrongfully refused Claimants' March, April and May 2011 payments, and ii) mishandled the return of certain escrow funds in connection with an incorrect property tax billing required by "the DC Tax office", Claimant's local property tax authority, and iii) has not adjusted their rate in accordance with the terms of their note, thereby wrongfully forcing Claimants to pay more than is required. Claimants assert they should not have been charged any late fees "because we have not been late every single month since 2003." On June 21, 2013, Debtors sent Claimants a letter requesting additional information and documentation in support of the claim; however, Claimants failed to respond.<br><br>Debtors have no liability for any of the claims that purportedly accrued prior to May 14, 2009 -- three years prior to Debtors' petition date -- because those breach of contract claims and are barred by the statute of limitations. Claimants' | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | property securing the mortgage at issue resides in the District of Columbia. The statute of limitations for the District of Columbia is 3 years for written and oral contracts (D.C. Code § 12-301 et seq).<br><br>Specifically, Claimants' assertion that Debtors mishandled certain escrow funds in connection with an incorrect property tax bill required by "the DC Tax Office" is barred by the statute of limitations. Debtors' records show the escrow activity at issue occurred in 2003 and 2004. In 2003, the Washington D.C. tax office issued to Debtor an incorrect tax bill in the amount of $23,492.07, an amount that was roughly $20,000 too high.  As reference, Claimant's property taxes were roughly $2,800 a year.  In accordance with Debtors' standard business practices, Debtors paid the taxes as billed by the taxing authority, and charged the amount to Claimants' escrow account. Debtors' records show that the error in billing was remedied in full on June 30, 2004 (the "Correction Date") after Debtors had collected tax refunds proceeds and applied the funds to Claimants' loan and escrow account. Notwithstanding Debtors' statute of limitations defense, Debtors have no liability because Claimant has failed to show how Debtors' actions amount to a mishandling of the tax refunds and the application of those funds to Claimants' account.<br><br>Debtors have no liability for the assertion that the Debtors purportedly mishandled Claimants' payments "since 2003" because the assertion is incorrect. Furthermore, all claims arising from payments that accrued prior to May 14, 2009 | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | are barred by the statute of limitations. Debtors' records show that following the application of refund proceeds to Claimants' account on the Correction Date (June 30, 2004) the account was due for the May and June 2004 payments.  Claimants made two payments in July 2004, which covered the payments due May and June 2004, but the July payment remained unpaid.  Thereafter, Claimants consistently made monthly payments and the account remained one month behind through October 2009.  Claimants did not make a payment in November 2009, and beginning in December 2009, the account became two months behind.  Claimants made two payments in June 2010.  The account was then one month behind in July, August and September 2010.  Claimants did not make a payment in October 2010.  Thereafter, the account was two months behind.  The last payment received from Claimants was in February 2011 for the payment due December 2010.<br><br>Debtors have no liability for the assertion that Debtors wrongfully billed late fees because in every instance Debtors' charged late fees Claimants were past due and Debtors were within their rights under section 7 of the mortgage note to charge Claimants late fees. To the extent Claimant's assertion involves late fees that accrued prior to May 14, 2009, Debtors have no liability because the claims are barred by the statute of limitations.<br><br>Debtors have no liability for the assertion that Debtors did not adjust their rate in accordance with the terms of Claimants' note, thereby charging Claimants more | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | than is required because the assertion is incorrect, and Claimants have proffered no evidence in support of the same. To the extent Claimants' assertion involves the interest rate charged to the account prior to May 14, 2009, Debtors have no liability because the claims are barred by the statute of limitations. Notwithstanding the above, the Borrower Trust reviewed the relevant books and records from 2007 to 2012 and found no instances where Debtors charged the incorrect interest rate. Claimants have an adjustable rate loan. Debtors' records show that rate change letters were sent to Claimants annually in October for the years 2007 to 2012, pursuant to section 4F of the adjustable rate rider and section 3C of the Addendum to the adjusted rate rider in the mortgage deed. The rate change letter sent to Claimants dated October 23, 2007 correctly shows the monthly principal and interest payment was to be decreased from $1,048.05 to $1,019.90. The Rate change letter sent to Claimants dated October 23, 2008 correctly shows the monthly principal and interest payment further decreased from $1,019.90 to $955.11. The rate change letter sent to Claimants dated October 23, 2009 correctly shows the monthly principal and Interest payment decreased even further from $955.11 to $934.62. Finally, the rate change letters sent to Claimants dated October 25, 2010; October 24, 2011 and October 23, 2012 correctly show the monthly principal and interest remained the same at $934.62.<br><br>At the time of transfer to Ocwen, Claimants were owing for March 2011 payment. | |

15

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| 3894 | Joyce C Canger<br><br>385 Hillside Ave<br>Allendale, NJ 07401<br><br>Unliquidated | Judicial Estoppel, Loan Modification Issues, General Servicing Issues | Ally Captial Corp. f/k/a GMAC Bank originated the loan on October 13, 2009. Debtor GMAC Mortgage LLC serviced the loan from October 13, 2009 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013. Debtor GMAC Mortgage purchased the loan from non-Debtor GMAC Bank and transferred its interest on or about November 16, 2009 to Freddie Mac.<br><br>Claimant does not state a basis for claim or a claim amount on the proof of claim form.  Claimant attaches a copy of an email dated November 8, 2012 to the proof of claim, in which Claimant asserts that Debtor GMAC Mortgage LLC  i) provided Claimant with a refinance loan (the "Refinance Loan") in October 2008 "with no benefit to consumer", which rendered Claimant ineligible for a HAMP modification, and ii)  incorrectly accounted for certain of Claimant's payments and rejected a certain payment in 2009. Claimant demands that Debtors "remove the charges added…to my mortgage and re-qualify me for HAMP… (and) correct my information on my credit report." On June 21, 2013, Debtors sent to Claimant a letter requesting additional information and documentation in support of the claim. Claimant responded by letter on July 22, 2013, and asserts that the Refinance Loan is "a violation of Section C46:10B-254.b. of the New Jersey Home Ownership Security Act of 2002" because it provided "no reasonable tangible benefit" to Claimant. Claimant reiterates that the Refinance Loan prevented Claimant from receiving a HAMP modification because it "placed me outside the permitted qualification dates." In the letter, Claimant asserts damages "in excess | |

16

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | of $55,000 plus costs, reasonable attorney's fees, and any punitive damages that may be awarded."<br><br>Debtors have no liability for Claimant's assertion that Debtors violated "Section C.46:10B-254.b. of the New Jersey Home Ownership Security Act of 2002" on the basis that Debtors provided no "reasonable tangible net benefit" when Debtors originated the loan in October 2009 because Claimant did not identify this claim in Claimants' personal bankruptcy, and therefore, is estopped from asserting the claim against the Debtors. Debtors' records and research show i) Claimant filed a petition for chapter 7 bankruptcy protection on July 30, 2010 (District of New Jersey, Case 10-33295) and received an order of joint discharge October 29, 2010. Claimant's schedules filed in their chapter 7 case do not show any liquidated, unliquidated or contingent claims against any of the Debtors that are consistent with the allegations in the Claimant's proof of claim, and all of the allegations and issues of fact regarding the origination of Claimant's loan occurred prior to the Claimant's chapter 7 petition date and subsequent discharge.  A copy of the Claimant's schedules and order of discharge are attached to the Objection as Exhibit 5-A and Exhibit 5-B, respectively.<br><br>Debtors have no liability for the assertion that Debtors mishandled certain payments and credit reporting in 2009 because in all instances, other than those referenced below from September to November 2010, Debtors handled | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | payments and credit reporting appropriately and in accordance with Debtors' standard business practices. In the instances where Debtors made errors between September and November 2010, Debtors corrected the errors at issue, and therefore, Claimant did not sustain damages.  The loan at issue was originated in October 2009. Claimant states the issues occurred after their first attempts at modification in "2009"; however, Debtors believe that Claimant intended to write "2010" because that is the year when the relevant events occurred. Debtors' servicing records reflect the mortgage loan fell behind when the February 1, 2010 payment was not received within the month it was due. The account remained a month delinquent thereafter for several months. Debtors received a payment on March 11, 2010, which satisfied the payment due February 1, 2010. Debtors placed a hold on credit reporting from March 12, 2010 to May 10, 2010 to allow time for Claimant to apply for loan modification options.  Debtors received a payment on  April 6, 2010, which satisfied the payment due March 1, 2010, and there was no negative reporting to the credit bureaus. Debtors received a payment on May 3, 2010, which satisfied the payment due April 1, 2010 payment, and again, there was no negative reporting to the credit bureaus. Debtors received a payment on June 10, 2010, which satisfied the payment due May 1, 2010, and Debtors reported the account 30 days delinquent to the credit bureaus on June 18, 2010, as it was the Debtors' regular business practice to provide a report to the credit bureaus once a month. The account was reported 30 days delinquent to the credit bureaus again on July 9, 2010.  Debtors received a | |

18

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | payment on July 13, 2010, which satisfied the payment due June 1, 2010. The fact that the account was a month behind would have been reflected on the Claimant's monthly billing statement.<br><br>Debtors were notified on August 3, 2010 that Claimant had filed a Chapter 7 petition (D.N.J., Case 10-33295) on July 30, 2010.  The account was reported 30 days delinquent to the credit bureaus on August 13, 2010.  Debtors received a payment on August 19, 2010, which satisfied the payment due July 1, 2010. The account was reported 30 days delinquent to the credit bureaus on September 10, 2010. On September 17, 2010, Debtors received a payment of $3,490.25, which was incorrectly applied by Debtors with $2,737.77 going to principal and the remaining  applied to $752.48 fees due. As detailed further in the chronology below, Debtors corrected the error on November 19, 2010. Debtors' motion for stay relief in Claimant's bankruptcy was granted on September 23, 2010. Claimant spoke with Debtors on October 7, 2010 and a workout package was mailed to Claimant on October 8, 2010 and a hold was put on credit bureau reporting from October 8, 2010 through December 16, 2010 to allow Claimant time to apply for a loan modification. Debtors did not receive a payment from Claimant in October 2010. The loan was referred to foreclosure on October 29, 2010 as the account owed August through October 2010 payments. A payment was received on November 1, 2010, personal check #126 in amount of $4,000; however this payment was returned due to the account being in active foreclosure and the | |

19

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | amount was not enough to reinstate the account.<br><br>Claimant spoke with the Debtors on November 18, 2010 and discussed the incorrect payment application on September 17, 2010. On November 19, 2010, Debtors credited Claimant's account with satisfying the August 1, 2010 with an effective date of September 17, 2010, the date the payment application error occurred, and removed the referral to foreclosure from Claimant's account since the foreclosure only occurred due to the payment being incorrectly applied. The servicing notes on November 18, 2010 show that Debtors wrote-off the foreclosure fees from Claimant's account and amended the negative credit reporting that related to Debtors' error.  Debtors received payments on December 9, 2010, which satisfied the September 1, 2010 payment and October 1, 2010 payments due; however, the account was still owing for the November 1, 2010 and December 1, 2010 payments.<br><br>Debtors have no liability for any assertion that Debtors improperly denied Claimant for a HAMP modification because Claimant did not qualify at the times Claimant applied for modifications. Specifically, Claimant's loan was originated in October 2009, which is after the December 31, 2008 cutoff-date mandated under HAMP. If it is Claimant's contention that Debtors should have given Claimant a modification in lieu of the Refinance Loan, or informed Claimant at origination that Claimant would be ineligible for a HAMP modification of the Refinance Loan, | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | then Debtors have no liability because Claimant did not request a modification prior to the origination of the Refinance Loan, and Claimant would not have qualified for any modification because Claimant's account was current leading up to and at the time of origination of the Refinance Loan. Furthermore, while Claimant contends he was wrongfully prevented from obtaining a HAMP modification, it should be noted that Debtors provided Claimant with a traditional loan modification in June 2012, which benefitted Claimant by bringing the account current when it was due for January through May 2012 payments, reducing the interest rate from 5.875% to 5.0%, and reducing the principal and interest payment from $2,466.71 to $2,011.29.<br><br>In support of the above, Debtors' records show the following chronology of events:<br><br>Debtors began reviewing the account for loan modification on December 23, 2010 when the first workout package was received. Claimant was denied a HAMP modification on December 27, 2010, because the loan was originated after December 31, 2008. On December 30, 2010, Debtors mailed a letter to Claimant requesting missing items so that Debtors could continue to review the account for traditional loan modification options. The loan was denied a traditional loan modification on February 17, 2011 due to insufficient income. Debtors began a second review for loan modification on December 23, 2011 when a new workout | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | package was received. Claimant was denied a HAMP modification on December 28, 2011 due to the origination date being after December 31, 2008. The account was approved for a traditional trial plan on January 24, 2012. Claimant completed the trial plan, and Debtors mailed permanent traditional modification documents to Claimant on May 18, 2012. Debtors received signed permanent modification documents on June 4, 2012 and the traditional modification was updated to the account.  At the time the loan was transferred to Ocwen, the account was due for the February 2013 payment.<br><br>For all the reasons stated above, Claimant's assertions do not give rise to a valid claim for damages, including punitive damages. | |
| 3503 | Mohammed K. Ghods & Heidi M. Ghods<br><br>2100 North Broadway Santa Ana, CA 92705<br><br>Unliquidated<br><br>GMAC Mortgage, LLC | Standing Issues, Escrow Issues | DiTech Funding Corporation originated the loan on September 9, 1998. Debtor GMAC Mortgage acquired the loan from DiTech Funding Corporation and transferred its interest to Freddie Mac. Debtor GMAC Mortgage LLC serviced the loan from October 29, 1998 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimants assert "GMAC's failure to credit funds to account" as basis for claim in box 2 of the proof of claim form. Claimants attach a letter asserting "GMAC Mortgage erroneously placed property insurance on a property that was not owned by the borrowers at the relevant times and upon which GMAC had no security interest. Borrowers  brought the error to GMAC's attention repeatedly | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | and were promised a correction would be made. GMAC demanded that payments had to be made as billed to avoid adverse credit reporting and collection action. Borrowers made the payments as demanded under protest. No correction has yet to be made. No payoff statements have be sent as demanded. Borrowers believe excess monthly payments must be retroactively applied to reduce the principal balance accordingly."<br><br>On December 17, 2014, Debtors sent Claimant a letter requesting additional information and documentation in support of the claim. On January 13, 2015, Claimants responded stating, "Our claim is for misapplication of the payments we were forced to pay for improperly issued lender placed hazard insurance on a mortgage during a time frame when no insurable interest on the property existed. The lender did not record and the property was sold therefore there was no property to insure." The letter includes an itemization of amounts from 2004 to 2012 totaling $15,045 that Claimant says were collected by Debtors and "should have been applied to the principal of the loan."<br><br>Debtors have no liability for the assertion that Debtors did not have the right to acquire property insurance on the account on the basis that Debtors lacked standing (or an "insurable interest" or "security interest" in the property). Debtors acquired the loan from DiTech Funding on October 29, 1998. Public records show an assignment of mortgage from Ditech Funding to GMAC | |

23

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Mortgage was executed on September 25, 1998, and recorded in Orange County on February 22, 1999. As the owner and servicer of the loan, GMAC Mortgage had proper standing to acquire lender-placed insurance on the account.<br><br>The Debtors' records reflect the following related to the lender place insurance: the insurance was added to the account on October 25, 2004. Claimant spoke with the Debtors via phone on September 8, 2009, at which time Claimant stated that he pays his own insurance, however, the Debtors' records do not reflect that proof of such insurance was provided. On June 17, 2010, the Debtors mailed a letter to Claimant advising him that property insurance is currently due on the account. There is nothing in the Debtors' records to suggest proof of insurance was ever provided by the Claimant to the Debtors. | |
| 5300 | Kechia L. Island<br><br>1741 Malcom Street Shreveport, LA 71108<br><br>Unliquidated<br><br>GMAC Mortgage, LLC | Escrow Issues, General No Liability | NF Investments Inc. originated the loan on October 21, 1998. Debtor Residential Funding Corporation purchased the loan from NF Investments and transferred its interest on or about June 1, 2005 to Banco Popular North America. Debtor Homecomings Financial serviced the loan from May 7, 2002 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage LLC serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimant asserts "Error in Escrow Analysis Statement which resulted in escrow surplus not being sent to the mortgage holder" as basis for claim in box 2 of the | |

ny-1192931

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | proof of claim form. Claimant attaches a letter detailing the escrow activity at issue, which allegedly occurred between January 2001 and February 2002. Claimant asserts that the incorrect escrow balance was transferred to Homecomings in May 2002.<br><br>Debtors have no liability for the servicing and escrow activity from January 2000 to February 2002 because Claimant's claims are barred by the statute of limitations. Claimant's property resides in Louisiana. Per Louisiana. civil code § 3492 et seq., the statute of limitations for written and verbal contracts is 10 years. Claimant's allegations arise from issues that purportedly occurred between "January 2000 and February 2002". Accordingly, Claimant's claims became time-barred after February 2012. In addition, Debtor's bankruptcy filing in May 2012 did not toll Claimant's claims. Moreover, Debtors did not service Claimant's loan prior to May 2002, so the Debtors cannot be responsible for actions taken by another servicer.<br><br>To the extent Claimant asserts Debtors mishandled Claimant's escrow account after May 2002, Debtors have no liability because in every instance, the Debtors handled Claimant's escrow account appropriately and all refunds due to Claimant arising from escrow surpluses were returned to Claimant in accordance with the terms of the mortgage. Debtors' records show Debtors sent Claimant an Escrow Account Disclosure Statement for the year 2003 that correctly showed a surplus of $476.65. Debtors' payment history, as well as Claimant's December 2002 | |

25

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | mortgage statement, shows that Claimant received a refund of $476.65 on November 12, 2002. Thereafter, Debtors' records show Debtors correctly issued escrow refunds on April 6, 2004, January 5, 2009, January 6, 2011 and January 23, 2012 in the amounts of $161.94, $10.34, $68.08, and $7.74, respectively. | |
| 4729 | Randall J. Perry<br><br>44 Union Avenue<br>PO Box 108<br>Rutherford, NJ 07070<br><br>Unliquidated<br><br>GMAC Mortgage, LLC | Judicial Estoppel | Debtor Homecomings Financial Network Inc. originated the loan on April 7, 2003. Debtor Residential Funding Company purchased the loan from Homecomings and transferred its interest when the loan was securitized on or about May 1, 2003 where Deutsche Bank Trust Company Americas was appointed as trustee. Debtor Homecomings Financial serviced the loan from April 7, 2003 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage, LLC serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimant asserts "foreclosure answer with affirmative defenses. Modification not provided (see attached) Passaic County Superior NJ Docket F-053410-10" as basis for claim in box 2 of the proof of claim form. Claimant attaches an Answer with Affirmative Defenses filed on January 27, 2011 in connection with a foreclosure case brought by non-Debtor Deutsche Bank Trust Company Americas as Trustee vs Claimant. In the filing, Claimant alleges i) "improper and untimely initiation of foreclosure process…" because Claimant was in process of securing a loan modification, and ii) Plaintiff failed to serve Claimant with proper Notice of Intent to Foreclose, and iii) general unspecified claims for fraud and negligence. | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Claimant also attaches to the proof of claim a) a letter dated August 4, 2011 from Claimant to GMAC Mortgage, in which Claimant states that GMAC Mortgage promised Claimant a permanent HAMP modification, and b) a letter from GMAC Mortgage to Claimant dated July 19, 2011, in which Debtor states "our records confirm you have completed the trial modification and have been approved for a permanent modification through the government's Making Home Affordable program."<br><br>Debtor has no liability for Claimant's assertions because Claimants failed to preserve his claims in his personal bankruptcy, and therefore, is estopped from asserting the claim against the Debtors. Debtor's records and research show Claimant filed a petition for chapter 7 bankruptcy protection on December 19, 2011 (D.N.J., Case 11-45836) and received an order of discharge August 22, 2014. A copy of the discharge order is attached to the Objection as Exhibit 6-A. Claimant's schedules filed in his chapter 7 case do not show any liquidated, unliquidated or contingent claims against any of the Debtors that are consistent with the allegations in the Claimant's proof of claim, and all of the allegations and issues of fact regarding Claimant's wrongful foreclosure and loan modification claims occurred prior to the Claimant's chapter 7 petition date and subsequent discharge.  A copy of the Claimant's schedules are attached to the Objection as Exhibit 6-B. | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| 6890 | Robert H and Lynda A. Ferguson<br><br>N85 W14931 Mac Arthur Drive Menomonee Falls, WI 53051<br>Unliquidated<br><br>GMAC Mortgage, LLC | Interest Rate and Fees Collected, Origination Issues, Servicing Issues | Wisconsin Mortgage Corporation originated the loan on July 26, 2002.  Debtor GMAC Mortgage purchased the loan from Wisconsin Mortgage Corporation and transferred its interest to Fannie Mae.  Debtor GMAC Mortgage LLC serviced the loan from August 20, 2002 until servicing transferred to GreenTree Servicing on February 1, 2013.<br><br>Claimants attach a letter to proof of claim form for Claim No. 6890 asserting that Debtors overcharged interest on Claimants' account in the amount of $11,383.90 on the basis that the interest rate they received in a refinance of their loan in 2013 (at 3.875%) was "almost half" the rate they had with Debtors (6.625%). Claimant also asserts Debtors "encouraged" Claimant "to be over two (2) months delinquent" with their mortgage payments.  In December 2014, Debtors sent Claimant a letter requesting additional information and documentation in support of the claim; however, Claimant did not respond.<br><br>Debtors have no liability for Claimant's assertion of charging too high of an interest rate because at all times Debtors collected payments from Claimant in amounts that were consistent with the amounts required under the terms of the mortgage. Debtors have no responsibility for the interest rate charged under the note because Debtors were not involved in the origination of the note. Claimants signed a fixed rate note with Wisconsin Mortgage Corporation on July 26, 2002. | |

ny-1192931

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
|  |  |  | Debtors have no liability for the assertion that Debtors were obligated to "negotiate a lower rate" because at no time were Debtors obligated to offer or negotiate a lower rate for the benefit of the Claimants, and Claimants have not proffered any evidence of Debtors' obligation to do so.<br><br>Debtors have no liability for the assertion that Debtors "encouraged" Claimants "to be over two (2) months delinquent," because Debtors found no evidence to support this assertion, and Claimants do not proffer any specific evidence to substantiate the allegation.<br><br>At the time of the servicing transfer to GreenTree on February 1, 2013, Claimants' account was due for February 1, 2013. |  |
| 2579 | Sharen Mumtaaj<br><br>8811 Glenwood Drive Brooklyn, NY 11236<br><br>Unliquidated<br><br>Ditech, LLC | General No Liability, Interest Rate and Fees Collected, Origination Issues | GMAC Mortgage Corporation DBA ditech originated the loan on May 23, 2001. Debtor GMAC Mortgage transferred its interest to Fannie Mae. Debtor GMAC Mortgage LLC serviced the loan from May 23, 2001 until servicing transferred to GreenTree Servicing on February 1, 2013.<br><br>Claimant asserts "Personal Injuries (Robo Signer) RESPA, TILA, HOEPA" as basis for claim in box 2 of the proof of claim form. No documentation or explanation was attached to the proof of claim. On May 24, 2013, Debtor sent a letter to Claimant requesting additional documentation and information in support of the claim. On June 25, 2013, Claimant responded by letter and asserts "Removal of automatic stay to start lawsuit vs Debtor in Federal Court for credit damage; charge fees and |  |

29

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | interests on mortgage loans - excessive high loan payments which make borrower enter into default." Claimant provided no additional documentation or explanation in the response letter.<br><br>Debtors have no liability for purported violations of RESPA, TILA, and HOEPA because the assertions are vague and conclusory, and Claimant has proffered no evidence of Debtor's wrongdoing or how Claimant was damaged.<br><br>Debtors have no liability for the assertion of robo-signing because Debtors have no evidence of robo-signing in connection with Claimant's loan and Claimant has not proffered evidence of the same.<br><br>Debtors have no liability for the assertions involving fees because Claimant has not provided any evidence that Claimant was damaged by this assertion. In the instance where Debtors made an error applying a payment, Debtors remedied the issue in full by reversing the related late fees and the negative reporting with the credit bureaus. Debtors' records show Debtors had inadvertently applied one of two payments Claimant made in January 2007 to Claimant's escrow account instead of to Claimant's loan balance. The error caused Debtors to charge late fees and report Claimant as late on their mortgage to the credit bureaus during the period between December 2006 and August 2007.  Debtors' records show Debtors remedied the error by correctly applying the January 2007 payment to the loan balance instead of to escrows, removing the late fees on the account and | |

30

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | taking steps with the credit bureaus to remove the negative reporting from December 2006 to August 2007.<br><br>Debtors have no liability for any assertion involving "interest charged to Claimant's account" or "excessive payments" because Debtors' records show that in every instance Debtors correctly charged and collected interest and payments that are consistent with the terms of the note and mortgage executed by Claimant. To the extent Claimant asserts that the payments and interest rate required on the loan are excessive, Debtors have no liability because this origination-based claim is barred by the statute of limitations. Claimant agreed to the terms of the loan when Claimant executed the note and mortgage on May 23, 2001. Claimant's property, which secures Claimant's performance under the note, resides in New York. The statute of limitations for written and oral contracts in New York is 6 years (N.Y. Civ. Prac. Laws & Rules § 201 et seq), and expired in 2007.<br><br>Claimant's account was current at the time of transfer to GreenTree on February 1, 2013 servicing transfer to GreenTree. | |
| 4643 | Thomas A. Ensley and Marion D. Ensley<br><br>PO Box 43563<br>Cleveland, OH 44143 | Judicial Estoppel | GMAC Mortgage Corporation DBA ditech originated the loan on August 4, 2004. Debtor GMAC Mortgage Corporation transferred its interest on or about September 22, 2004 to Freddie Mac. Debtor GMAC Mortgage LLC serviced the loan from August 4, 2004 until servicing transferred to Ocwen Loan Servicing, LLC | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | Unliquidated<br><br>GMAC Mortgage, LLC | | on February 16, 2013.<br><br>Claimants assert "mortgage note" as the basis for the claim in box 2 of the proof of claim form.  Claimants attach a letter dated November 8, 2012 stating "We are requesting that you retroactively reconcile our mortgage account to reflect the agreed upon interest rate of 3.57%."<br><br>On June 21, 2013, Debtors mailed to Claimants a letter requesting additional information and documentation in support of the claim. On July 26, 2013, Claimants responded by letter alleging Debtors i) wrongfully increased Claimants' escrow payments and generally mishandled Claimants' escrow account in 2009, and ii) "manipulated" Claimants to accept a loan modification on March 19, 2010 that did not include the agreed upon terms with "NACA".  Specifically, Claimants allege they were promised by a third party they would have a fixed interest rate of 3.75%. Claimants seek a refund for the amount they overpaid in interest, and an amount equal to the "equity due." Claimants also requests an "award of title to our property."<br><br>Debtors have no liability for Claimants' assertions because Claimants failed to preserve their claims in their personal bankruptcy, and are now estopped from asserting the claim against the Debtors. Debtors' records and research show Claimants filed a chapter 7 bankruptcy protection on May 18, 2010 (N.D. Ohio, | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Case 10-14759) and received an order of joint discharge August 24, 2010. Claimant's bankruptcy schedules do not show any liquidated, unliquidated or contingent claims against any of the Debtors that are consistent with the allegations in the Claimant's proofs of claim, and all of the allegations and issues of fact regarding Claimant's escrow and loan modification claims occurred prior to the Claimant's chapter 7 petition date and subsequent discharge. Copies of the claimant's schedules and discharge order are attached to the Objection as Exhibit 7-A and Exhibit 7-B, respectively. | |
| 4577 | Thomas J Butler<br><br>1042 Banbury Court Napa, CA 94559<br><br>Unliquidated<br><br>GMAC Mortgage, LLC | Origination Issues, Standing Issues, Loan Modification Issues, Wrongful Foreclosure | New Century Mortgage Corporation originated the loan on May 21, 2004. New Century transferred its interest to a non-Debtor when the loan was securitized on or about July 1, 2004 where Deutsche Bank National Trust Company was appointed as Trustee. Debtor GMAC Mortgage LLC serviced the loan from September 3, 2004 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>In an attachment to the proof of claim titled "Brief in Support of Proof of Claim", Claimant asserts claims for i) fraudulent inducement of the loan origination, and ii) loan modification fraud, and iii) wrongful foreclosure on the basis that the Debtors allegedly lacked standing to foreclose. Claimant asserts that Debtors' aforementioned conduct amounts to a violation of California Business & Professions Code §17200. With respect to Claimant's origination-based claims, | |

ny-1192931

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Claimant asserts Debtors "provided Claimant with a loan that was more than they could qualify for knowing that Claimants would default on the loan" and "inflated property values and entered fraudulent financial information on the loan application without Claimants' knowledge". With respect to loan modification claims, Claimant asserts that Debtors promised Claimant would "qualify for a loan modification" with lower monthly payments provided Claimant submitted financial documentation, and that Debtors wrongfully commenced foreclosure while Claimant was being considered for modification. With respect to Claimant's wrongful foreclosure and lack-of-standing claims, Claimant asserts that Debtors "forged assignments" and engaged in "robo-signing" in an effort to foreclose on the property. Claimant seeks unspecified damages arising from "damage to their credit rating, mortgage payments made to Debtors throughout the course of the loan, emotional distress and punitive damages."<br>On June 21, 2013, Debtors sent to Claimant a letter requesting additional information and documentation in support of the claim. Claimant responded by letter on July 29, 2013; however, the response included only the same attachments filed with the proof of claim.<br><br>Debtors have no liability for any of Claimant's origination-based claims because no Debtor was involved in the origination of Claimant's loan. Claimant's loan was originated by New Century Mortgage Corporation. | |

ny-1192931

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Debtors have no liability for Claimant's loan modification claims because in every instance, the Debtors acted in accordance with applicable guidelines and Debtors' standard business practices, and Claimant received a loan modification from Debtors that was accurate, fair and agreed-upon by Claimant. Furthermore, Debtors found no instances where Debtors wrongfully commenced foreclosure while Debtors reviewed Claimant for loan modification options. Debtors' records show Claimant was approved for a permanent loan modification on December 11, 2012 bringing April through December, 2012 payments current. This modification was requested by the Claimant, and the terms were consistent with what the Claimant was eligible to receive based on the workout package submitted by Claimant and the modification guidelines at the time. Debtors found no evidence that Claimant disputed the terms of their modification. Further, the modification reduced the Claimant's principal and interest rate from $2,697 a month to $1,206.13 a month and reduced the interest rate from 5.5% to 3.5%.<br><br>Debtors have no liability for Claimant's assertion that Debtors lacked standing to foreclose because the account was never referred to foreclosure while the Debtors serviced the loan. According to Debtors' servicing records, the Debtors mailed breach letters to Claimant on October 18, 2012, November 13, 2012, and December 12, 2012 stating the loan could begin foreclosure if the account wasn't brought current. Claimant was able to bring the account current through a permanent loan modification on December 11, 2012 that prevented the loan | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | from ever beginning the foreclosure process.<br><br>As a result of the above, the Claimant's assertions do not give rise to a violation of California Business & Professions Code §17200. | |
| 2421 | Thomas Manning<br><br>PO Box 7212<br>Portland, ME 04112<br><br>Unliquidated<br><br>GMAC Mortgage, LLC | Loan Modification Issues, General Servicing Issues | Mortgage Lenders Network Inc. originated the loan on August 2, 2005. Debtor Residential Funding Company purchased the loan from Mortgage Lenders and transferred its interest when the loan was securitized on or about September 1, 2009 where US Bank, NA was appointed as trustee. Debtor Homecomings Financial serviced the loan from September 14, 2005 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage LLC serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimant asserts "Counterclaims in mortgage foreclosure action pending in Cumberland County District Court, Maine, Docket No. RE-11-20" as basis for claim in box 2 of the proof of claim form. Claimant does not attach any documentation or provide any additional explanation for the basis for claim or for Claimant's unspecified damages. On May 24, 2013, Debtor sent Claimant a letter requesting additional documentation and information in support of the claim. On June 26, 2013, Claimant responded by letter asserting claims for wrongful denial of loan modification. Specifically, Claimant asserts i) Debtor wrongfully denied Claimant a | |

36

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
|  |  |  | modification "when I qualified under the applicable program rules", and ii) Debtor broke its promises to "extend the modification process…until I received my permanent modification", and iii) Debtors wrongfully cancelled Claimant's trial plan and placed Claimant's account in foreclosure after breaking Debtors' promise that it would accept Claimant's November 2009 trial modification payment if it was received by December 3, 2009, and iv) Debtors were negligent in evaluating Claimant for modifications in 2010 and 2011 because Debtors lost Claimant's financial packages or requested documents and information that Debtors already had in its possession.  Claimant states that Debtors' actions caused several damages, including "$25,000 to $35,000 in legal fees defending the foreclosure process" which are ongoing, unspecified lost "work opportunities" due to stress, unspecified amounts arising from damage to Claimant's credit score.<br><br>Debtors have no liability for Claimant's assertion that Debtors wrongfully denied Claimant a modification "when I qualified under the applicable program rules" because in every instance Debtors acted in accordance with the applicable guidelines, the instructions provided by the investor of Claimant's loan, and Debtor's standard business practices. Debtors' records show that in the instances Debtors denied Claimant for a modification, Debtors denied Claimant on the basis that Claimant either i) failed to provide the requisite documentation in order to be considered for a modification, or ii) Claimant's debt-to-income ratio was well below the 31% required in order to be considered for HAMP modification, or iii) |  |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | the investor of the loan instructed Debtors to deny the modification.<br><br>Debtors have no liability for Claimant's assertion that Debtors wrongfully cancelled Claimant's "trial plan" and broke its promises to "extend the modification process…until I received my permanent modification" because Debtors' records do not show that Debtors agreed to extend the modification process until a permanent modification was received by Claimant, and at no time was a permanent modification guaranteed or promised.<br><br>If it is Claimant's contention that Debtors wrongfully cancelled and failed to extend Claimant's Repayment Plan ("Repay Plan") in 2009, Debtors have no liability because Claimant did not meet the criteria necessary to extend the Repay Plan. Debtors' records show Claimant entered into the Repay Plan on or about June 1, 2009. The Repay Plan was not a trial modification nor a commitment by Debtors to modify Claimant's loan in the event Claimant performed in accordance with the Repay Plan. The purpose of the Repay Plan was to give Claimant time to apply and be considered for a loan modification. Under the Repay Plan, Debtors forbeared from exercising its rights to foreclose during the term of the Repay Plan provided Claimant made certain payments. The terms of the Repay Plan called for payments of $2,227.07 due on July 23, August 23, September 23, October 23, and November 23, with a final balloon payment due on December 23 in amount of $105,076.62. | |

| Claim No(s). | Name and Address  Claim Amount  Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Debtor mailed a follow up letter to Claimant on August 27, 2009 requesting the missing items needed for the loan modification review, including an additional recent paystub, profit and loss statement for business, proof of rental income, a signed copy of the current lease agreement for rental and the last two months of bank statements or rent checks showing tenant has been paying rent.  Debtors advised Claimant on November 20 and December 2, 2009 that the Repay Plan would not be extended if Claimant failed to provide the missing documents requested by Debtors in connection with Claimant's request for review for a loan modification.  Debtors' records show that Claimant failed to provide those missing documents to Debtors.  Claimant also failed to make the final payment required under the Repay Plan.  As a result, Debtors sent a letter to Claimant on January 7, 2010 stating the Repay Plan was cancelled due to the final payment not being received by the payment due date as specified in the Repay Plan agreement.  In response to a letter Debtor received from Claimant on January 11, 2010, Debtors' servicing notes show that Debtors sent a letter to Claimant on January 22, 2010 stating the loan modification review was cancelled due to Claimant not making the Repay Plan  payment due November 23, 2009. The date of the missed payment referenced in the letter was incorrect and should have referenced the December 23, 2009 payment.  While the Borrower Trust acknowledges there was a mistake regarding  the date of the missed payment cited in the letter, this inadvertent error does not give rise to liability of Debtors. It also noteworthy that Claimant was ineligible for further loan modification | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | review because Claimant had failed to provide the missing items referenced in the August 27, 2009 letter and in several subsequent discussions by phone between Claimant and Debtors.<br><br>Debtor has no liability for Claimant's assertion that Debtors broke its promise that it would accept Claimant's November 2009 "trial modification payment" if it was received by December 3, 2009 because the assertion is incorrect. Debtors' records show Claimant spoke with Debtors via phone on November 20, 2009. Claimant stated they would not be able to make their Repay Plan payment that was due on November 23, 2009 because Claimant was travelling out of the country for work. As an accommodation to Claimant, Debtors advised that they would extend the due date of the payment due November 23, 2009 to December 3, 2009. Debtors' records show Debtors applied the Repay Plan payment made December 3, 2009 to Claimant's account as agreed.<br><br>Debtors have no liability for Claimant's assertion that Debtors were negligent in evaluating Claimant for modifications in 2010 and 2011 on the basis that Debtors lost Claimant's financial packages or requested documents and information that Debtors already had in its possession because the assertion is incorrect, and Claimant has failed to demonstrate how this assertion gives rise to any liability of Debtors. Debtors' records show the following chronology with respect to the proper handling of the loan modification process in 2010 and 2011: | |

ny-1192931

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Debtors mailed a workout package to Claimant after the January 2010 modification denial to allow Claimant the opportunity to reapply for a loan modification. Debtors have no record of Claimant ever submitting a workout package to Debtors or requesting a modification review in 2010. In connection with Claimant's default, Debtor and Claimant participated in a mediation hearing on June 10, 2011.<br><br>Debtor received a workout package shortly after, however, the package was missing items. As a result, on June 20, 2011, Debtors mailed a 30-Day Missing Items letter to Claimant because the workout package was not complete. Claimant spoke with Debtors via phone on June 23, 2011. Debtors advised Claimant of the missing documents needed for loan modification review. Claimant stated that they were aware of the missing documents because he received the letter. Claimant spoke with Debtors via phone on July 6, 2011. Debtor advised Claimant of missing items needed for loan modification review to continue. Debtors received an additional document on July 8, 2011; however, there were still documents that were missing that were necessary to advance Claimant's account for modification. Claimant spoke with Debtors via phone on July 13, 2011. Debtors advised Claimant of the remaining missing items needed for loan modification review. Debtors received an additional document for loan modification review on July 14, 2011, however, there were still documents that were missing that were necessary to advance Claimant's account for modification. Debtors mailed to Claimant a 15-Day Missing Items letter to | |

41

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Claimant on July 22, 2011. Claimant spoke with Debtors via phone on July 27, 2011. Debtors advised Claimant that the last fax with workout documents was received, but that there was still information missing. Debtors received an additional document on July 28, 2011; however, there were still documents that were missing that were necessary to advance Claimant's account for modification. Debtors received an additional document on August 4, 2011, at which point Debtors began reviewing the account for loan modification options. Claimant spoke with Debtors via phone on August 9, 2011. Debtor advised the account is under review for loan modification and if they were approved for and completed a trial modification, then they would be approved for a permanent modification.<br><br>On August 12, 2011, Debtors reviewed income information received from Claimant and concluded Claimant had not provided the required 3-month profit and loss statement. Debtors also needed clarification as to whether Claimant owned or partially owned 4 restaurants and how he received paystubs from those restaurants.  Debtors mailed Claimant a 30-Day Missing Items letter on August 15, 2011 to request the missing profit and loss information. Claimant spoke with Debtors via phone on August 23, 2011. Debtors advised of missing information needed for loan modification review. Debtors mailed Claimant a 15-Day Missing Items letter on September 16, 2011. Claimant spoke with Debtors via phone on September 27, 2011. Debtors advised of missing documents needed for loan modification review and advised missing documents needed to be received by | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | October 1, 2011. Claimant asked if a trial plan can be setup, and Debtors advised a trial plan could not be setup until a complete package was received. Debtors received a profit and loss statement on September 29, 2011; however, the amounts had not been accurately calculated, and the reported income required Claimant to send in paystubs to corroborate the amounts reported in the profit and loss statement. The account was denied a trial modification on October 3, 2011 due to Claimant not submitting all missing items needed within the time period allotted. Claimant was able to reapply for a loan modification review.<br><br>Claimant spoke with Debtors via phone on October 14, 2011. Claimant stated that the profit and loss statement was calculated correctly. Debtors advised that it will reopen loan modification review. Debtors reviewed the profit and loss statement on October 17, 2011 and concluded the loan modification review would not be reopened as there was a $1,000 discrepancy in the profit and loss statement. Claimant spoke with Debtors via phone on October 17, 2011. Debtors advised Claimant that the profit and loss still showed incorrect calculations, but that Claimant could send Debtors a corrected document. Claimant stated again that the calculations were accurate. Debtors advised that they would review and call back regarding the discrepancy in the profit and loss statement. Debtors attempted to contact Claimant via phone on October 21, 2011 regarding the profit and loss statement, but Claimant did not answer. Debtors left a voice message requesting that Claimant call Debtors back. Debtors did not receive a call | |

43

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | back.<br><br>Debtors attempted to contact Claimant via phone on October 24, 2011 regarding the loan modification review and profit and loss statement, but this time, the Debtors discovered Claimant's phone line was disconnected. Claimant spoke with Debtors via phone on October 26, 2011. Debtors advised of reason for prior loan modification denial. Claimant requested loan modification review to be reopened again. Debtors advised that Debtors could not reopen modification review until Claimant submitted a new workout package.<br><br>Claimant spoke with Debtors via phone on November 8, 2011. Claimant stated a new workout package was faxed in on November 7, 2011. Debtors advised that no package had been received. Debtors received a new workout package from Claimant on November 10, 2011 and Debtors confirmed receipt by phone on the same day. Debtors advised that if there are any documents missing, then Claimant would receive a letter and timeframe for documents to be submitted. Debtors mailed a 30 Day Missing Items letter to Claimant on November 16, 2011 as the profit and loss statement did not state to whom the salaries and wages were paid to in July, August and September 2011.<br><br>Claimant spoke with Debtors via phone on November 28, 2011. Debtors advised of missing documents needed for loan modification review. Debtors advised that Debtors needed updated documents by December 15, 2011 or Claimant will need | |

44

ny-1192931

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
|  |  |  | to resubmit a full new workout package. Debtors received additional documents for loan modification review on December 15, 2011.  Debtors determined the profit and loss document  was not complete.  Specifically, the amount specified for salary and wages was not itemized correctly, and Claimant failed to report Claimant's profit before taxes. Debtors mailed to Claimant a 15 Day Missing Items Letter on December 19, 2011. Claimant spoke with Debtors via phone on December 29, 2011. Debtors advised Claimant of issues with the profit and loss document received and advised that the document needed to be received by January 3, 2012.  Claimant spoke to Debtors via phone on January 9, 2012. Claimant called Debtors to see if the document allegedly faxed in on December 30, 2011 was received, and Debtors advised that no fax had been received. Debtors stated that Claimant could refax to Debtors' urgent fax number.<br><br>Debtors received additional document for loan modification review on January 10, 2012. Claimant spoke with Debtors via phone on January 10, 2012. Claimant asked if the documents were received. Debtors advised that the document was received and is under review to see if the document fulfills what is needed for loan modification review. Debtors determined on January 11, 2012 the workout package was complete; however, after reviewing the profit and loss statement Debtors concluded on January 13, 2012 that the profit and loss statement reported the September income incorrectly with respect to each of Claimant's businesses. Debtors mailed a 30 Day Missing Items Letter to Claimant on January 17, 2012 as Claimant needed to update the profit and loss statements. Claimant |  |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | spoke with Debtors via phone on February 7, 2012. Debtors advised Claimant of the issue with the profit and loss statement.  Claimant stated there are not two companies and will send updated information explaining profit and loss. Debtors received additional documents on February 15, 2012. Claimant spoke with Debtors via phone on February 15, 2012. Debtors advised Claimant that the documents were received and were currently being reviewed.<br><br>Debtors reviewed the account for a HAMP modification on February 22, 2012; however Claimant did not qualify because Claimant's debt-to-income ratio of 21% was below 31%, the minimum required for a HAMP modification. Debtors continued to review the loan for a traditional loan modification.  The account was denied for a traditional loan modification on March 6, 2012 due to the investor of the loan denying the request to modify the loan. Debtors sent a denial letter to Claimant on March 7, 2012 stating "we service your loan on behalf of an investor or group of investors that has not given us the authority to modify your loan." Claimant spoke with Debtors via phone on March 7, 2012. Debtors advised Claimant of the reason for the denial of the loan modification. Debtors advised the Claimant that he can resubmit a new workout package.<br><br>Thereafter, there was no further loan modification activity on the account. At the time of transfer to Ocwen in February 2013, the account was owing for February 1, 2008 payment and no foreclosure had been completed. | |

46

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| 5620 | Paul Giard<br><br>3 Main Road<br>Colrain, MA 01340<br><br>$95,939<br>General Unsecured<br><br>GMAC Mortgage, LLC | Wrongful Foreclosure, Escrow Issues, Standing Issues, General Servicing Issues | New Century Mortgage Corporation originated the loan on September 15, 2003. Debtor Residential Funding Company purchased the loan from New Century Mortgage Corporation and transferred its interest when the loan was securitized on or about November 1, 2003 where JP Morgan Chase Bank, NA was appointed as Trustee. Debtor Homecomings Financial serviced the loan from November 20, 2003 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage LLC serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimant asserts "Fraudulent Foreclosure on 5 Main Road, Colrain MA on 2-6-2012" as basis for claim in box 2 of the proof of claim form. Claimant writes "equitable remedy/void foreclosure" as the claim amount in box 1 of the proof of claim form. Claimant attaches to the proof of claim i) a letter dated December 1, 2011 from Debtors notifying Claimant that the lender-placed insurance policy was cancelled on October 5, 2011, and ii) an escrow analysis prepared by Debtors for Claimant dated July 21, 2011 showing an escrow shortage of $5,204.94, and iii) a list of additional bases for the claim, including "erroneous and improper escrow accounting figures; Failure to remedy these amount prior to foreclosure; Improper notice to foreclose. This lone [sic] did not have escrow payments, tax and insurance payments paid directly by borrower."<br><br>On June 21, 2013, Debtors sent Claimant a letter requesting additional information and documentation in support of the claim. Claimant responded on | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
|  |  |  | July 26, 2013 stating "I still own this property. This foreclosure was unfair and deceptive practice of the mortgagor. Breach of escrow contract; Failure to follow state laws. This was an invalid foreclosure and should be returned to me less losses (sic). The mortgagor refused to give me a full and proper final figure to be paid prior to foreclosure sale. I want my property returned to me!" Claimant attaches to letter a copy of a check with a note that reads "this is my insurance that I was making payments on."<br><br>Debtors have no liability for Claimant's assertions involving wrongful foreclosure because in every instance Debtors commenced a foreclosure process, Claimant was significantly past due on his account and Debtors were within its rights to foreclose.<br><br>Debtors' records show that Debtors referred the loan for foreclosure on September 12, 2009. At the time of the referral, the loan was due for May 1, 2009. On September 28, 2009, Claimant inquired about a repayment plan, and Debtors approved and set up a repayment plan for Claimant on February 2, 2010. On June 16, 2010, Debtors closed the foreclosure file, and Claimant completed the repayment plan shortly after on July 19, 2010.  On December 8, 2010, Debtors referred the account to foreclosure again because the account was past due and owing for September 1, 2010 payment.  A foreclosure sale date was set for April 21, 2011. Claimant called Debtors on April 7, 2011 requesting another repayment plan. Debtors stated this was not a possible option because the loan was in active |  |

48

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | foreclosure, but that Claimant could submit a workout package and be reviewed for loan modification options. On that call, Debtors referred Claimant to the website where he could obtain the workout package application. Claimant never submitted a workout package.<br><br>Claimant spoke with Debtors via phone again on April 15, 2011. Claimant stated that he will be able to reinstate the account; however, he will not have money prior to a foreclosure sale date. Debtors advised Claimant to submit proof of the funds available so postponement request could be considered. Claimant spoke with Debtors on April 19, 2011 and Debtors advised Claimant that Claimant should contact the foreclosure attorney for reinstatement figures and to discuss the possibility of a repayment plan. Claimant requested reinstatement figures from Debtors' attorney on April 19, 2011, and Claimant reinstated their loan on April 20, 2011 with the required payment of $23,708.83.<br><br>Claimant fell behind on payments again, and Debtors sent Claimant a breach letter on July 4, 2011. Debtors referred Claimant's account to foreclosure a third time on August 9, 2011 because the account was past due and owing for May 1, 2011 payment. A foreclosure sale date was scheduled for January 23, 2012.<br><br>On January 20, 2012, Claimant requested reinstatement figures.  Debtors advised Claimant that he needed to contact the foreclosure attorney to obtain reinstatement figures.  On that same day, Debtors postponed the scheduled | |

49

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | foreclosure sale from January 23, 2012 to February 6, 2012.  Reinstatement figures were provided to Claimant by Debtors' attorney on January 23, 2012 and January 25, 2012.  On February 3, 2012 Claimant called and requested a repayment plan.  Debtors advised to call the foreclosure attorney to ask for repayment plan options. Claimant called Debtors again on February 6, 2012, advising he had $6,000 for a down payment and that he wanted a repayment plan.  Debtors again advised Claimant to contact the foreclosure attorney directly to inquire about options.  No agreement or arrangements were made to postpone the foreclosure, reinstate the account, or bring the account current, and the foreclosure sale was held on February 6, 2012.<br><br>Debtors' records show Debtors had standing to foreclose in each instance it commenced foreclosure steps. Debtors initiated foreclosure process on behalf of the investor. The note was properly endorsed to Bank of New York Mellon Trust Company, as successor to JP Morgan Chase, and the mortgage was properly assigned from the originator to Bank of New York Mellon Trust Company, as successor to JP Morgan Chase.<br><br>Debtors have no liability for Claimant's assertion that Claimant was not provided with proper notice in connection with the foreclosure of Claimant's property. Debtors' records show Debtors sent Claimant a breach letter on July 4, 2011 indicating that Claimant was owing for May 2011 payment. Additionally, Debtors' records show Claimant was properly served on November 3, 2011 with the | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | foreclosure complaint.<br><br>Debtors have no liability for any of Claimant's escrow account-related assertions because in every instance involving escrows, Debtors acted appropriately and in accordance with the terms of the mortgage and Debtors' standard business practices. Specifically, Debtors were within their rights to require escrows on Claimant's account because Claimant became delinquent on his own property taxes and failed to prove he had maintained any insurance on his property. The escrow waiver signed by Claimant at origination states "please note that any borrower who is delinquent in payment of their real estate taxes, hazard and/or flood insurance premiums, may be required by the lender to pay impounds." Section 3 of the mortgage states "If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay such amount, Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3." Furthermore, Debtors have no liability for these escrow-related assertions because Claimant has not demonstrated how he was damaged. Specifically, in the instances where Claimant was able to show Debtors that they had his own insurance coverage, Debtors refunded Claimant all amounts pertaining to the periods where there was proven overlap between Claimant's | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | insurance coverage and Debtors' lender-placed coverage.<br><br>Relevant Events involving Claimant's Escrow Account:<br><br>Debtors' records show that in October 2009 Debtors discovered that Claimant was delinquent on his property taxes.  To protect its interest in the property, on October 7, 2009, Debtors paid Claimant's property taxes, and on the same day, Debtors updated the account to require escrows for taxes. Thereafter, Debtors paid Claimant's property taxes and accounted for the transactions in Claimant's escrow account.<br><br>In September 2009, Debtors were notified by Claimant's insurance carrier of a lapse in property insurance. On September 20, 2009, Debtors sent Claimant a letter requesting proof of insurance; however, Claimant failed to respond.  On November 4, 2009, Debtors sent Claimant a second letter requesting proof of insurance; however, Claimant failed to respond. As a result, Debtors obtained a property insurance policy for the account on December 22, 2009. Debtors sent Claimant a Letter of Placement the next day on December 23, 2009 notifying Claimant that the lender-placed policy had been added to the account. The lender-placed policy had a cost of $4,355.00 and was effective for the period of September 18, 2009 to September 18, 2010. Debtors' records show the policy renewed at a cost of $3,553.00 with coverage for the period of Sept 18, 2010 to September 18, 2011; and the policy renewed again at a cost of $2,138.00 with | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
|  |  |  | coverage for the period of September 18, 2011 to September 18, 2012. Debtors sent out Renewal Notice Letters on August 19, 2010 and August 21, 2011 and Renewal Placement Letters on September 22, 2010 and September 23, 2011, respectively. Debtors' records show Claimant called on November 30, 2011 and provided proof of approval for a new insurance policy with Massachusetts Property with coverage for the period October 5, 2011 to October 5, 2012. As a result, on December 1, 2011, Debtors sent a letter to Claimant notifying Claimant that Debtors cancelled the lender-placed policy effective October 5, 2011. On the same date, Debtors issued a payment of $1,881.00 from Claimant's escrow account to Claimant's new insurance carrier. Finally, on December 8, 2011, Debtors issued a refund to Claimant's escrow account in the amount of $2,039.00 in connection with the coverage overlap under the cancelled lender-placed policy.<br><br>A foreclosure sale was held on April 6, 2012, and the account was in REO at the time of transfer to Ocwen. |  |
| 2125 | G. Robert Beebe<br>1329 Avalon Dr.<br>Acton, MA 01720<br><br>$80,645.13<br>General Unsecured | Paid and Satisfied, Escrow Issues | GMAC Mortgage Corporation originated the loan on April 21, 2003. Debtor GMAC Mortgage transferred its interest to Fannie Mae. Debtor GMAC Mortgage LLC serviced the loan from April 21, 2003 until loan was paid in full on October 18, 2012.<br><br>Claimant asserts "repair fund for water damage to 2418 NW Woodrose Dr. Portland OR. State Farm Insurance payment, GMAC Loan 0545336307 - Paid in |  |

53

| Claim No(s). | Name and Address Claim Amount Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Full. House sold 10/12/12" as basis for claim in box 2 of the proof of claim form. Claimant attaches a letter dated March 26, 2010 from Debtors to Claimant in which Debtors reminds Claimant that Claimant has not submitted the required forms to Debtors regarding Claimant's insurance claim. Claimant also attaches a letter from State Farm Insurance to Claimant in which State Farm Insurance details the allowance of a claim payment of $80,645.13, which is the asserted amount of Claim No. 2125. No other explanation or documentation accompanies the proof of claim.<br><br>On June 21, 2013, Debtors sent a letter to Claimant requesting additional information and documentation in support of the claim. On July 22, 2013, Claimant responded by letter asserting "This money is what was leftover after initial remediation expenses after our house was flooded in 12/2009. The house was sold in as-is condition in 10/2012 at a reduced price because the repairs were not performed. The mortgage was paid in full at the time of the sale, so this money needs to go back to me." Claimant attaches a letter dated November 2, 2012 from Debtors to Claimant stating Claimant's loan is paid in full. The letter attaches a refund check made to Claimant in the amount of $1,903.00.<br><br>Debtors have no liability for Claimant's assertion that Debtors failed to provide Claimant with insurance proceeds in the amount of $80,645.13 because Debtors remitted $83,090.68 to Claimant on January 9, 2013, which included all insurance proceeds due to Claimant. The Borrower Trust found no other evidence of monies | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | owing to Claimant. Accordingly, Claim No. 2125 has been paid and satisfied. Additionally, Debtors have no liability because Debtors handled the processing of Claimant's insurance claim appropriately and in accordance with Debtors' standard procedures.<br><br>Debtors' records show Claimant made Debtors aware of the flooding damage on December 14, 2009. On January 13, 2010, Claimant called in to get information on getting an insurance check indorsed. By June 7, 2010, Debtors had received from the insurance carrier two checks totaling $92,742.76 ($12,097.63 and $80,645.13, respectively); however, the checks erroneously included Wells Fargo Bank as a payee.<br><br>On June 9, 2010, Debtors obtained a letter from Wells Fargo stating that they had no interest in the insurance funds. Debtors coordinated with State Farm Insurance to cancel the checks and reissue new ones with Claimant and Debtors named as payees on the checks, which Debtors received and placed in a suspense account on August 31, 2010.  Consistent with Debtors' standard policies and procedures, Debtors placed the funds on hold for release because the Claimant's account was in an active foreclosure status and reported as vacant. On September 1, 2010, Debtors approved an exception to the hold and released $17,697.72 to repair and cleanup certain water damage. Debtors' records show the $17,697.72 check was sent back to Debtors, and Debtors resent the check to Claimant again on September 14, 2010. On October 5, 2010, Debtors spoke with Claimant by phone and Claimant acknowledged the house is in foreclosure and that they are not making repairs. Claimant made no subsequent requests for draws. Claimant paid the loan in full on October 18, 2012. On January 9, 2013, | |

| Claim No(s). | Name and Address / Claim Amount / Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Debtors disbursed a check to Claimant in the amount of $83,090.68, which included the balance of the insurance proceeds held by Debtors and other funds leftover in the Claimant's account that were unrelated to the insurance proceeds. Debtors' records show Claimant cashed the $83,090.68 check on or about February 25, 2013. | |
| 960 | MICHAEL E BOYD v GMAC MORTGAGE LLC MERS INC<br><br>5439 SOQUEL DR SOQUEL, CA 95073<br><br>$186,000 Secured Claim<br><br>GMAC Mortgage, LLC | Res Judicata | Debtors' involvement with Claimant's loans was limited to servicer of the loans. The loan on Soquel Dr. was originated by Plaza Home Mortgage Inc. in January 2007. Debtor GMAC Mortgage serviced the Soquel Dr. loan from April 10, 2007 until servicing transferred to Ocwen Loan Servicing LLC on February 16, 2013. The loan on Lakebird Dr. was originated by Plaza Home Mortgage Inc.  GMAC Mortgage serviced the Lakebird Dr. loan from March 13, 2007 until servicing transferred to Ocwen Loan Servicing LLC on February 16, 2013.<br><br>On the proof of claim, Claimant listed as the basis for the claim "mortgage notes (2 each) U.S. District Court Northern District CA case # 11-cv-5018."<br>On September 11, 2011, Claimant filed litigation in USDC, Northern District of CA, Case No 5:11-CV-05018, for "unconscionability contract and adhesion to real property." The claims in the complaint were to invalidate/contest the liens on the property that were being serviced by the Debtors. The case was dismissed with prejudice on August 22, 2012 by Order Granting Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. Claimant appealed the District Court's decision to the U.S. Court of Appeals for the Ninth Circuit, Case No 12-17434. The | |

56

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
|  |  |  | Ninth Circuit affirmed the district court's order dismissing the case on August 22, 2014. On September 4, 2014, Claimant filed a Petition for Panel Rehearing with the U.S. Court of Appeals for the Ninth Circuit.  On December 22, 2014, the Ninth Circuit denied Claimant's Petition for Rehearing and further indicated it would not entertain any further filings in this case.  On March 20, 2015, Claimant filed a petition for a writ of certiorari to the U.S. Supreme Court.  On May 26, 2015, the U.S. Supreme Court denied Claimant's petition for a writ of certiorari.   A copy of the decision is attached to the Objection as Exhibit 8.<br><br>As a result, all appeals have been exhausted, and res judicata applies to preclude Claimant from relitigating issues through the proof of claim that have been finally decided. |  |
| 5065 | Wayne Davenport Re 7637 Sierra Paseo Lane<br><br>c/o Mark L. Jackson, Esq<br>Vannah and Vannah<br>400 S 4th St 6th Floor<br>Las Vegas, NV 89101<br><br>$253,800<br>General Unsecured | Res Judicata, Origination Issues | Claimant's loan was originated by Silver State Financial Services Inc. on or about September 22, 2006.  Debtor GMAC Mortgage, LLC serviced the loan from November 28, 2008 until servicing transferred to Ocwen Loan Servicing LLC on February 16, 2013.<br><br>In response to a request for more information, Claimant attaches litigation filed in the District Court, Clark County Nevada, Case No. A09-597768 on or about August 24, 2009 against Debtor GMAC Mortgage and others, including causes of action for breach of contract, breach of covenant of good faith and fair dealing, fraud, deceptive trade practices, conspiracy, racketeering.  On May 14, 2010, Debtors' |  |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
|  | GMAC Mortgage, LLC | | Motion to Dismiss was granted with prejudice.  In addition, Debtors filed a motion to recover attorney's fees in the amount of $20,016.00, which was granted on July 29, 2010.<br><br>On August 18, 2010, Claimant filed an appeal with the Supreme Court of the State of Nevada, Case No. 56697.  On September 25, 2013, the Nevada Supreme Court issued its order affirming dismissal of all claims except for civil conspiracy, which was remanded to the District Court.  On  May 22, 2015, the District Court entered an ordergranting the parties' stipulation to dismiss the case with prejudice.  A copy of the order is attached to the Objection as Exhibit 9.<br><br>* Claim was mistakenly included in the order dated December 19, 2013 expunging the claim. | |
| 5064 | Wayne Davenport Re 2101 Palm Canyon Court<br><br>c/o Mark L. Jackson, Esq<br>Vannah and Vannah 400 S 4th St 6th Floor Las Vegas, NV 89101<br><br>$510,000 | Res Judicata | Claimant's second lien loan was originated by Aegis Wholesale Corporation on or about October 13, 2006.  Debtor Homecomings Financial serviced the loan until it was serviced transferred to Onyx Financial Group, LLC on April 10, 2008.<br><br>In response to a request for more information, Claimant attaches litigation filed in the District Court, Clark County Nevada, Case No. A09-597774 on or about August 24, 2009 against Debtor Homecomings Financial and others, including causes of action for fraud, misrepresentation, negligence, emotional distress, conspiracy, racketeering.  On March 10, 2010 Summary Judgment was granted dismissing the | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | General Unsecured<br><br>Homecomings Financial, LLC | | case as to Debtors and others.   On June 25, 2010 Claimant filed an appeal with the Supreme Court of the State of Nevada, Case No. 56322.  On March 31, 2014 the Supreme Court issued its order affirming dismissal of all claims except for civil conspiracy, which was remanded to the District Court.  On  May 22, 2015 the District Court entered an order dismissing the case with prejudice by stipulation filed by Claimant.  A copy of the order is attached to the Objection as Exhibit 9.<br><br>The claim for civil conspiracy was premised on a fraud committed by Homecomings regarding the closings of the loan.  However, the Supreme Court found the fraud claims were properly dismissed.  Further, Homecomings was not involved in the origination of the loan.<br><br>* Claim was mistakenly included in the order dated December 19, 2013 expunging the claim. | |
| 3839 | Concepcion L. Morado<br><br>5701 W. Hazelwood St Phoenix, AZ 85031<br><br>$65,076.00<br>General Unsecured | Judicial Estoppel, Escrow Issues<br><br>Judicial Estoppel | IMORTGAGE.COM, Inc. originated the loan on May 21, 2009. Debtor GMAC Mortgage, LLC purchased the loan from IMortgage and transferred its interest on or about August 25, 2009 to Fannie Mae.  Debtor GMAC Mortgage, LLC serviced the loan from May 21, 2009 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimant asserts "mortgage note" as basis for claim in box 2 of the proof of claim | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | GMAC Mortgage, LLC | | form. Claimant attaches a Fixed Rate Loan Modification Agreement dated May 1, 2010. Claimant provides no additional information or documentation in support of the claim. On June 21, 2013, Debtors mailed to Claimant a letter requesting additional information and documentation in support of the claim. On July 22, 2013, Claimant responded by letter and asserts claims for "predatory loan modification, wrongful force-placed insurance, and escrow misconduct".<br><br>Debtors have no liability for Claimant's assertion of "predatory loan modification" because Claimant failed to preserve this claim in Claimant's personal bankruptcy, and therefore, is estopped from asserting the claim against the Debtors. Debtors' records and research show i) Claimant filed a chapter 7 bankruptcy petition in December 2010 (D. Arizona, Case 10-40323) and received an order of discharge April 5, 2011. Claimant's schedules filed in their chapter 7 case do not show any liquidated, unliquidated or contingent claims against any of the Debtors that are consistent with the allegations in the Claimant's proofs of claim, and all of the allegations and issues of fact regarding the execution of Claimant's loan modification occurred on or before the Claimant's chapter 7 petition date and subsequent discharge. Copies of the Claimant's schedules and discharge order are attached to the Objection as Exhibit 10-A and Exhibit 10-B, respectively.<br><br>Debtors have no liability for Claimant's assertion of "wrongful force-placed insurance," because the Debtors were within their rights under the mortgage to | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | obtain lender-placed insurance on Claimant's account in 2011.  Claimant failed to demonstrate that they had their own insurance coverage. Specifically, section 5, paragraph 3  of the mortgage states "If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage at the Lenders option and Borrowers expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore such coverage shall cover Lender, but might or might not protect the Borrower, Borrower's equity in the Property, against any risk, hazard or liability and might be greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amount shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest upon notice from the Lender to Borrower requesting payment." Debtors' records show the following chronology with respect to the lender-placed policy:<br><br>Debtors received notice of non-renewal of Claimant's Allstate Insurance Policy #916304582, effective May 21, 2011. Debtors sent a letter to Claimant on May 22, 2011 requesting proof of property insurance; however, Claimant failed to respond. Debtors sent a second letter to Claimant requesting proof of insurance on July 6, 2011, but again Claimant failed to respond. Debtors obtained property insurance for the account on August 22, 2011, and sent notice to Claimant of the | |

61

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | same in a letter on August 24, 2011. The policy had an annual cost of $749.00 with a period of coverage from May 21, 2011 to May 21, 2012. Debtors sent a pre-renewal notice to Claimant on April 8, 2012 and a Renewal Notice to Claimant on April 23, 2012. Debtors renewed the lender-placed policy at a cost of $749.00 with coverage for the period May 21, 2012 to May 21, 2013. On June 11, 2012 Claimant provided proof of insurance under Allstate Policy #816512257 with coverage commencing May 21, 2011. As a result, Debtors cancelled the lender placed policies effective for the period May 21, 2011 and May 21, 2012. Debtors sent two Cancellation Letters to Claimant notifying Claimant of the same. Debtors issued an insurance refund to Claimant's escrow account in the amount of $1498.00 on June 12, 2012.<br><br>Debtors have no liability for Claimant's assertions of "escrow misconduct" because Claimant's assertion is vague, conclusory and without support. Furthermore, Debtors found no instance of Debtors' handling Claimant's escrow account or any actions that would give rise to liability. | |
| 5072 | VALENCIA B JOHNSON AND<br><br>1610 MARTIN AVE BIRMINGHAM, AL 35208 | Judicial Estoppel | EquiFirst Corporation originated the loan on June 3, 2005. Debtor Residential Funding Company, LLC purchased the loan from Equifirst and transferred its interest when the loan was securitized on or about August 1, 2005 where US Bank, NA was appointed as trustee. Debtor Homecomings Financial serviced the loan from August 12, 2005 until servicing transferred to GMAC Mortgage, LLC on | |

ny-1192931

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | $25,000<br>General Unsecured<br><br>GMAC Mortgage, LLC | | or about July 1, 2009. GMAC Mortgage LLC serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimant asserts "amount of interest and late fees added to my balance. No amount was forgiven" as basis for claim in box 2 of the proof of claim form. In a letter attached the proof of claim, Claimant asserts several loan modification-related claims stemming from events that took place between 2009 and 2011.  Debtors have no liability for Claimant's assertions because Claimant failed to preserve this claim in Claimant's personal bankruptcy, and therefore, is estopped from asserting the claim against the Debtors. Debtors' records and research show Claimant filed a chapter 7 bankruptcy petition on August 3, 2012 (N.D. Ala., Case 12-03683) and received an order of discharge November 14, 2012.  In addition, Claimant's schedules filed in the chapter 7 case do not show any liquidated, unliquidated or contingent claims against any of the Debtors that are consistent with the allegations in the Claimant's proofs of claim, and all of the allegations and issues of fact regarding loan modification activity on Claimant's loan occurred prior to the Claimant's chapter 7 petition date and subsequent discharge.  Copies of the Claimant's schedules and discharge order are attached to the Objection as Exhibit 11-A and Exhibit 11—B, respectively. | |
| 5510 | Rachida Maz<br><br>141 Warren St.<br>Revere, MA 02150 | Judicial Estoppel | Gateway Funding Diversified Mortgage Services originated the loan on May 10, 2004. Debtor GMAC Mortgage, LLC purchased the loan from Gateway and transferred its interest to Freddie Mac on or about June 16, 2004.  Debtor GMAC | |

63

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | $10,000 Secured Claim $2,600 Priority Claim<br><br>GMAC Mortgage, LLC | | Mortgage LLC serviced the loan from May 27, 2004 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimant asserts "GMAC Mortgage LLC dealt with my modification application unfairly and not in accordance with HAMP guidelines" as basis for claim in box 2 of the proof of claim form.  Claimant's allegations involve loan modification-related events from December 2010 and March 2011.<br><br>Debtors have no liability for Claimant's assertions because Claimant did not preserve this claim in Claimant's personal bankruptcy, and therefore, is estopped from asserting the claim against the Debtors. Debtors' records and research show Claimant filed a chapter 7 bankruptcy petition on June 6, 2011 (D. Mass., Case 11-15427) and received an order of joint discharge September 7, 2011. Claimant's schedules filed in her chapter 7 case do not show any liquidated, unliquidated or contingent claims against any of the Debtors that are consistent with the allegations in the Claimant's proofs of claim, and all of the allegations and issues of fact regarding Claimant's efforts to obtain a loan modification occurred prior to the Claimant's chapter 7 petition date and subsequent discharge.  Copies of the Claimant's schedules and discharge order are attached to the Objection as Exhibit 12-A and Exhibit 12-B, respectively. | |

**<u>Exhibit B</u>**

ny-1194981

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

EXHIBIT B

EIGHTY-EIGHTH OMNIBUS OBJECTION - REDUCE & ALLOW (BORROWER CLAIMS)

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reduced and Allowed Claim Amount | Modified Debtor Name and Case Number | Reason for Reduction and Allowance of Claim |
|---|---|---|---|---|---|---|---|---|
| 1 | Rebecca K. Stewart 18307 Powhatan Court Gaithersburg, MD 20877 | 1577 | 10/23/12 | Unliquidated | GMAC Mortgage, LLC<br><br>Case Number 12-12032 | $988.40 General Unsecured Claim | GMAC Mortgage, LLC<br><br>Case Number 12-12032 | Claimant asserts that Debtors wrongfully increased Claimant's escrow for taxes in 2012 to account for a projected escrow shortage of $988.40. Claimant request overage." On June 21, 2013, Debtors sent Claimant a letter requesting information and documentation in support of the claim. On July 16, 2013, Debtors respo assertions in the proof of claim, and seeking damages for "the full $988.40 I paid GMAC Mortgage…At the very least, I expect compensation for the difference b bill - $3,049.14 – and the attached most recent year's tax bill - $2,516.69 – which is $532.45." |
| 2 | Richard A. & Carrie E. Sobleskey 703 E. Shaw Charlotte, MI 48813 | 3770 | 11/08/12 | $85,000 General Unsecured Claim | GMAC Mortgage, LLC<br><br>Case Number 12-12032 | $4,000 General Unsecured Claim | GMAC Mortgage, LLC<br><br>Case Number 12-12032 | Providence Mortgage Company originated the loan on October 22, 2007. Non-Debtor GMAC Bank purchased the loan from Providence Mortgage Company and Mac on or about November 21, 2007. Debtor GMAC Mortgage LLC serviced the loan from October 22, 2007 until the property went to REO sale October 31, 201<br><br>Claimant left blank the basis for claim in box 2 of the proof of claim form, and provided no attachments to the proof of claim. On May 20, 2013, Debtors sent Cla information and documentation in support of the claim. On June 18, 2013, Claimant responded by letter stating the claim involves three different mortgages fo including a mortgage secured by property at 715 S Cochran, Charlotte, Michigan (the "Cochran Loan"), a mortgage secured by property at 3836 E Saginaw, Gran and a mortgage secured by property at 703 E Shaw, Charlotte, MI (the "Shaw Loan"). Claimant asserts that when the Saginaw Loan was paid off, Debtors incurre fees that Debtors had promised they would waive. Claimant asserts that Debtors wrongfully denied Claimant a short sale of the property securing the Cochran judgment for over $3,000 that to date has not been collected." Claimant provides no other explanation or documentation in support of the claim.<br><br>Debtors have no liability for Claimant's assertion that Debtors wrongfully charged Claimant $600 in fees that the Debtors allegedly agreed to waive in connectio records show no evidence of Debtors agreeing to waive any fees, and the Claimant provides no evidence of such a waiver. Furthermore, the payoff of Claimant' in fees. Debtors' records show the payoff amount included $458.58 in late fees, which were partially offset by a credit of $80.93.<br><br>If it is Claimant's assertion that Debtors wrongfully charged Claimant for fees that Debtors allegedly agreed to waive in connection with the Shaw property, Deb Claimant did not meet the conditions required to obtain the fee reversal offered to Claimant. Debtors' records show that in a letter sent to Claimant dated Augu late fees of $392.28 if Claimant made a payment that brought the loan current by August 31, 2011. Claimant failed to bring the account current by August 31, 20 asked Debtors about the previous offer, and Debtors advised that the offer had expired August 31, 2011. Debtors' records show Claimant brought the account c<br><br>Debtors have no liability for Claimant's assertion that Debtors wrongfully denied Claimant's short sale of the property. Debtors' records show Claimant called De short sale on March 1, 2011 and Debtors provided information about the process. Claimant's loan was referred to foreclosure on March 7, 2011, as the loan was 6, 2011, Claimant sent a fax of a listing agreement and broker contract to Debtors, and Debtors commenced a review on April 11, 2011. Debtors received a shor 2011 in the amount of $27,000. On the same day, Debtors told Claimant that only a full market value offer, or $33,000 (as determined by a broker-price opinion with investor Freddie Mac's instructions. To accommodate Claimant's efforts to pursue a sale of the property, Debtors postponed the foreclosure sale from Jur additional sale offers were ever presented to Debtors after June 1, 2011. The foreclosure sale took place on August 4, 2011; however, because there was a 6-m foreclosure sale, Debtors did not close the opportunity for short sale review. Debtors' records show that on September 7, 2011 Claimant advised that he would contribution to cover a shortfall in any potential sale of the property. Then, on September 15, 2011, Claimant accepted and executed the Agreement for Deed a (the "Cash for Keys Agreement") to terminate and waive the redemption period, surrender and vacate the property to Debtors by September 21, 2011, in excha Claimant .<br><br>Debtors have no liability for Claimant's assertion that Debtors owe Claimant "over $3,000" in connection with a "court judgment" because Debtors have found funds in connection with a purported judgment.<br><br>However, in connection with the Cash for Keys Agreement, Debtors were unable to locate accounting records confirming that Debtors paid Claimant $4,000 per Accordingly, Debtors' eighty-eighth omnibus objection seeks to reduce and allow Claim No. 3770 in the amount of a $4,000 general unsecured claim against De |