UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

| | |
|---|---|
| THE LAW OFFICES OF DAVID J. STERN, P.A., | ) ) ) ) |
| Plaintiff, | ) ) Case No.: 11-CV-61526 ) |
| vs. | ) **DEFENDANT'S ANSWER** ) **WITH COUNTERCLAIM** |
| GMAC MORTGAGE, LLC, | ) ) |
| Defendant. | ) ) |

**ANSWER AND COUNTERCLAIMS OF DEFENDANT**

Defendant GMAC Mortgage, LLC ("GMACM"), by its undersigned attorneys, for its Answer to Plaintiff's Complaint in this action, hereby states the following:

**Jurisdiction and Venue**

1. Paragraph 1 of the Complaint states a legal conclusion to which no response is required, but to the extent a response may be required, GMACM admits that this Court has jurisdiction over the controversy.

2. Admitted.

3. Admitted.

4. GMACM admits that it is subject to jurisdiction in Florida, including because it engages in certain business activities in Florida, but GMACM denies that "it breached a contract in this State by failing to perform acts required by contract to be performed in the State," as alleged in Paragraph 4 of the Complaint.

5. Paragraph 5 of the Complaint states a legal conclusion to which no response is required, but to the extent a response may be required, GMACM admits that venue is proper in this District.

6. Paragraph 6 of the Complaint states a legal conclusion to which no response is required. GMACM is otherwise unaware of the "conditions precedent" as alleged by Plaintiff in paragraph 6 and can not admit or deny such allegations.

7. With respect to the allegations contained in paragraph 7 of the Complaint, GMACM realleges paragraphs 1 through 6 above.

8. GMACM admits that it hired DJSPA to provide various legal services to GMACM pursuant to a Master Services Agreement, Statements of Work and Change Orders, as amended, all of which speak for themselves.

9. Denied.

10. Denied.

11. The Complaint omits paragraph 11.

12. The Complaint omits paragraph 12.

13. With respect to the allegations contained in paragraph 13 of the Complaint, GMACM realleges paragraphs 1 through 12 above.

14. Denied.

15. With respect to the allegations contained in paragraph 15 of the Complaint, GMACM realleges paragraphs 1 through 14 above.

16. GMACM admits that it has had business transactions with DJSPA. GMACM otherwise denies the allegations of paragraph 16.

17. Denied.

2

18.  Denied.

### DEFENSES

### First Defense

1. Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### Second Defense

2. Plaintiff has failed to mitigate its damages.

### Third Defense

3. Plaintiff's claims are barred by the applicable statute of limitations.

### Fourth Defense

4. Plaintiff has failed to join indispensable parties to this action.

### Fifth Defense

5. Plaintiff's claims are barred and/or limited by Plaintiff's own material breach of its professional and contractual duties to GMACM.

### Sixth Defense

6. The monetary relief sought by Plaintiff is unavailable to the extent that GMACM is entitled to set off and/or recoup monies from Plaintiff, including but not limited to, sums that exceed any amounts which Plaintiff might otherwise be entitled to recover.

### Seventh Defense

7. Plaintiff is barred from recovery on the grounds of waiver, estoppels, laches, unclean hands and unjust enrichment.

### Eighth Defense

8. The alleged "account" attached to the Complaint as Exhibit A does not satisfy the legal requirements of an open account.

### Ninth Defense

9. Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to perform the services and/or costs referenced in the alleged "account" attached to the Complaint as Exhibit A in accordance with the terms and conditions of the parties' contract.

### Tenth Defense

10. Defendant is entitled to a set-off for any monies paid to Plaintiff by third parties with respect to the services and/or costs that Plaintiff seeks to recover herein.

### Eleventh Defense

11. Plaintiff's claims are barred, at least in part, because the Plaintiff has already received the compensation due and owing regarding at least certain of the files at issue.

## COUNTERCLAIMS BY DEFENDANT

For its Counterclaims against Plaintiff, Defendant GMACM hereby states the following:

1. Defendant GMACM asserts these Counterclaims to redress Plaintiff's breach of contract and Plaintiff's wrongful conduct including Plaintiff's failure to meet the minimum standard of professional care in the performance of legal services to and/or on behalf of GMACM, which has resulted in substantial damage to GMACM.

2. The Court has original jurisdiction over Defendant's Counterclaims pursuant to 28 U.S.C. § 1332.

### Jurisdiction and Venue

3. At all relevant times, Defendant-Counterplaintiff GMACM has been a Delaware limited liability company with its principal place of business in Pennsylvania. No member of Defendant is a citizen of Florida.

4. At all relevant times, Plaintiff-Counterdefendant the Law Offices of David J. Stern, P.A. ("DJSPA") has been a professional association formed under the laws of the State of Florida, consisting of one or more persons licensed to practice law in the State and maintaining its principal place of business at 900 S. Pine Island Road, Plantation, Florida 33324.

5. At all relevant times, DJSPA held itself out as specializing in handling residential mortgage foreclosures, bankruptcy, evictions, the sale of real estate owned ("REO") properties by foreclosing lenders, and foreclosure-related complex litigation in the State of Florida.

6. At all relevant times, David J. Stern ("Stern") has been an attorney duly licensed to practice law in the State of Florida and the principal or owner of DJSPA.

7. In or about 2007, GMACM hired DJSPA to provide legal services of the kind described in paragraph 5 above.

8. Pursuant to the parties' attorney-client relationship, DJSPA executed a Master Services Agreement and Statement of Work which was amended and modified from time-to-time.

9. During the period from about 2007 until November 2010, DJSPA performed legal work on behalf of GMACM. At relevant times, nonlegal support services for the legal work provided by DJSPA to GMACM was performed by one or more separately-incorporated entities in which David Stern held a substantial interest and/or over which David Stern maintained substantial control. Such nonlegal work was done at the direction and under the oversight of DJSPA.

### Disclosures of Plaintiff's Practices Failing to Meet the
### Minimum Standard of Care

10. On or about August 4, 2010, Mother Jones, a nonprofit news organization that styles itself as specializing in investigative, political and social justice reporting, published an

article written entitled "Fannie and Freddie's Foreclosure Barons." The Mother Jones article was highly critical of DJSPA's practices in handling mortgage foreclosures in Florida and reported on allegations that DJSPA was backdating assignment of mortgage documents in foreclosure cases and allegedly "lying to the court."

11. The Mother Jones article quoted a written ruling by a Pasco County judge, who, "upon discovering that [DJSPA] had fudged an assignment of mortgage in a case before her court . . . dismissed the case with prejudice" in March 2010, stating in her written ruling that "'[t]he execution date and notorial date'" on the document "'were fraudulently backdated, in a purposeful, intentional effort to mislead the defendant and this court.'"

12. The Mother Jones article described a deposition under oath, taken by a foreclosure defense firm on May 20, 2009 of Cheryl Samons, whom the article described as DJSPA's "top deputy." According to the article, Ms. Samons was allegedly confronted during this deposition with a number of "backdated documents," which "looked like a pattern," but which the witness allegedly described as "just a mistake."

13. Since in or about 1994, Cheryl Samons has been employed by DJSPA as operations manager, reporting directly to Stern. Ms. Samons has also served as operations manager during relevant periods for DJSPA's processing division and/or for DJS Processing, LLC, a corporate entity created by DJSPA and/or Stern to provide non-legal services required to process foreclosure files and ancillary services for DJSPA.

14. On or about August 10, 2010, following the Mother Jones article, Florida Attorney General Bill McCollum announced that his office had launched an investigation into allegations of unfair and deceptive actions by DJSPA regarding its handling of foreclosure cases in the State of Florida. Upon information and belief, this investigation is ongoing.

6

15. On or about September 4, 2010, the New York Times published a comprehensive article on the unprecedented number of home mortgage delinquencies and foreclosures being handled in the State of Florida. It reported that according to "analysts and lawyers involved in the process" some law firms representing banks were engaged in "questionable practices" and specifically referenced DJSPA and the fact that it was being investigated by the Florida Attorney General.

16. Public reports emerged during this same time frame of additional deposition testimony that had been elicited from current or former employees of DJSPA, witnesses that were questioned under oath by foreclosure defense attorneys or by the Florida Attorney General's office as part of its investigation. This deposition testimony raised additional concerns about the foreclosure-related practices engaged in by DJSPA.

17. Transcripts became publicly-available of the deposition testimony taken under oath of certain present or former employees of DJSPA. In these depositions, the witnesses described foreclosure-related practices by Stern and/or DJSPA, which, as described, involved acts of professional malpractice and/or breaches of professional duties owed by attorneys subject to the Rules for Professional Conduct for Florida Lawyers.

18. The sworn deposition testimony of these witnesses contained accusations against DJSPA and/or Stern that included, among other accusations, the following:

   (i) causing and/or permitting DJSPA's employees to execute, witness and/or notarize assignments of mortgage that were back-dated;

   (ii) causing and/or permitting DJSPA's employees to witness and/or notarize assignments of mortgages, affidavits of indebtedness and/or other affidavits on a daily basis prior to and without actually witnessing execution of the document by the person whose signature was to be witnessed and/or notarized;

(iii) causing and/or permitting DJSPA's employees to prepare and execute affidavits of indebtedness for submission to the foreclosure court that failed to follow appropriate professional practices and procedures;

(iv) causing and/or permitting DJSPA's employees to sign the name of another person on foreclosure-related documents without any indication of that fact on the documents;

(v) charging clients such as GMACM substantial fees and costs for legal services that DJSPA knew or should have known fell below the minimum standard of professional care owed by DJSPA.

19. Upon information and belief, Stern himself has admitted that allegations made about DJSPA's improper procedures are true.

20. In light of the on-going investigations by the Florida Attorney General, as well as other events and information, GMACM contacted DJSPA and conducted an on-site review of many of GMACM's files maintained by DJSPA.

21. On or about November 16, 2010, GMACM terminated its relationship with DJSPA and sought to recover its files from DJSPA.

22. DJSPA refused to release any files to GMACM until GMACM placed funds allegedly owed to DJSPA into escrow. In order to obtain its files as quickly as possible, GMACM agreed to this arrangement, without conceding that any amounts were owed to DJSPA.

23. Since recovering its files from GMACM, GMACM has expended significant time and money transitioning files to other law firms. Upon information and belief, GMACM has expended over $1.5 million in order to recover and transition files previously handled by DJSPA.

24. Because of its concern over the allegations and evidence of unprofessional practices followed by DJSPA, GMACM directed these newly-assigned law firms to review the recovered files and to take appropriate steps to attempt to remedy errors committed by DJSPA, as well as re-initiating foreclosure proceedings, in whole or part, due to concerns over the

8

documents previously filed by DJSPA.

25. GMACM has since learned that DJSPA committed gross malpractice in the handling of GMACM matters. For example, in one foreclosure matter assigned to DJSPA for handling, DJSPA failed to communicate to GMACM that counterclaims had been brought. Indeed, DJSPA neglected to put forward any defense to such counterclaims, with the result that a default judgment was entered on or about May 5, 2011 for over $450,000. DJSPA's conduct in this and other instances has been wanton or reckless.

26. By reason of the foregoing, GMACM has incurred, and may continue to incur in the future, substantial costs attributable to the following: (i) costs associated with conducting its review of DJSPA's files, policies and practices; (ii) costs associated with the need to seize numerous files previously maintained and handled by DJSPA; and (iii) costs associated with having newly-assigned law firms to conduct a review of the

recovered files seized from DJSPA and to correct errors and re-initiate foreclosure proceedings as appropriate.

27. By reason of the foregoing, GMACM has also incurred, and may continue to incur in the future, substantial additional costs attributable to the following: (i) the cost of paying duplicative legal fees and court costs to the newly-assigned law firms for handling the files from DJSPA; (ii) the time value cost of money lost due to any additional delays in prosecuting the files from DJSPA; and (iii) the cost of foreclosure-related fees and costs previously incurred and paid on the recovered files when handled by DJSPA.

## COUNT I
### (Legal Malpractice)

28. GMACM repeats and realleges the allegations of paragraphs 1 – 27 of this Counterclaim as if fully set forth herein.

9

29. During the relevant period, an attorney-client relationship existed between DJSPA and GMACM.

30. DJSPA, including its attorneys individually, owed a duty of professional care to GMACM with respect to the legal services provided by DJSPA, including the duty to comply with all applicable Rules Regulating the Florida Bar, including: (1) the duty to control the law firm's workload so that each matter can be handled for the client adequately and within the accepted standard of professional care for a law firm in the State of Florida in accordance with Florida Bar Rule 4-1.3; (2) the duty to take reasonable measures to ensure that non-lawyer conduct is compatible with professional obligations of the lawyer in accordance with Florida Bar Rule 4-5.3; (3) the duty to keep a client reasonably informed and to explain a matter to the client to the extent reasonably necessary for the client to make informed decisions about the lawyer's professional handling of the client's matters in accordance with Florida Bar Rule 4-1.4; (4) the duty to deal honestly with third parties when acting on behalf of the client in accordance with Florida Bar Rule 4-4.1; and (5) the duty not to engage in conduct otherwise involving dishonesty or misrepresentation in accordance with Florida Bar Rule 4-8.4.

31. DJSPA negligently, recklessly and/or wantonly breached its professional duties owing to GMACM by, among other things:

(i) causing and/or permitting DJSPA's employees to execute, witness and/or notarize assignments of mortgage that were back-dated;

(ii) causing and/or permitting DJSPA's employees to witness and/or notarize assignments of mortgages, affidavits of indebtedness and/or other affidavits on a daily basis prior to and without actually witnessing execution of the document by the person whose signature was to be witnessed and/or notarized;

(iii) causing and/or permitting DJSPA's employees to prepare and execute affidavits of indebtedness for submission to the foreclosure court that failed to follow appropriate professional practices and procedures;

10

    (iv)    causing and/or permitting DJSPA's employees to sign the name of another person on various foreclosure-related documents without any indication of that fact on the documents;

    (v)    charging GMACM substantial fees and costs for legal services that DJSPA knew or should have known was not in accordance with the terms and conditions of its agreement with GMACM and that fell below the minimum standard of professional care owed by DJSPA to GMACM;

    (vi)    providing legal work on behalf of GMACM as to various files assigned to DJSPA that fell below the applicable standard of care; and

    (vii)    committing acts or omissions that have subjected GMACM to claims, losses and liabilities of third-parties.

32. As a result of the DJSPA's breach of its professional duties to GMACM, GMACM has suffered, and may continue to suffer in the future, substantial damages in an amount to be determined, but believed to be well in excess of $75,000 not including interest or costs.

## COUNT II
### (Defendants' Breach of Contract)

33. GMACM repeats and realleges the allegations of paragraphs 1 – 32 of this Counterclaim as if fully set forth herein.

34. By reason of the Master Services Agreement ("MSA") and Statement of Work, as subsequently modified and amended, a valid contract existed between and among the DJSPA and GMACM. Among other things, pursuant to the contract between DJSPA and GMACM, DJSPA - - which is designated as "Company" in the MSA agreed as follows:

    6.1    Company represents and warrants that the Services will be performed in a diligent and workmanlike manner in accordance with good industry practices, by individuals of suitable training and skill.

    6.2    Company represents and warrants that the Services and all Deliverables provided under this Agreement shall comply with and function in accordance with the requirements set forth in this

Agreement and the Statement of Work.

6.4 Company represents and warrants that Company's actions and performance of the Services are and will be in full compliance with all applicable federal, state, and local requirements, including but not limited to, federal banking laws, federal consumer protection and privacy laws; all applicable state laws and regulations; any valid and effective order (including regulatory orders), verdict, judgment, consent decree or agreement.

6.6 Company represents and warrants that it has, and will maintain throughout the Term of this Agreement, all licenses, franchises, permits, authorizations and approvals materially necessary for the lawful conduct of its business.

8.8 Company shall take appropriate measures to select, supervise and monitor the personnel performing Services. Company shall maintain current employment eligibility verification records, including necessary certification and documentation and insurance for its employees performing Services hereunder. Company will not conduct disciplinary actions with respect to Company personnel while on Client's premises, including but not limited to terminating employment of Company personnel.

13.2 **Indemnification.** Each party (each an "Indemnitor") shall, at its own expense, defend, indemnify and hold harmless the other party and its employees, officers, directors, licensees, representatives, attorneys, parents, subsidiaries, successors, assigns and agents (each of the foregoing an "Indemnitee") from and against any and all liabilities, claims, actions, losses, costs and expenses (including, without limitation, reasonable attorneys' fees and disbursements) relating to or arising out of any third-party claims(s) for bodily injury to or death of any person or for damage, loss or destruction of tangible real property or tangible personal property caused by the negligent acts or omissions, recklessness or willful misconduct of Indemnitor and its employees, agents, and representatives. The Indemnitor will defend Indemnitee against such claims at Indemnitor's sole expense and pay all court awarded damages relating to such claims. The Indemnitee agrees to notify the Indemnitor in a timely manner in writing of the claim, and grant Indemnitor the right to control the defense and disposition of such claims provided that no settlement requiring any financial payment from Indemnitee or admission of liability by Indemnitee shall be made without Indemnitee's prior written approval.

35. DJSPA breached its material contractual obligations owed to GMACM by, among other things:

(i) causing and/or permitting DJSPA's employees to execute, witness and/or notarize assignments of mortgage that were back-dated;

(ii) causing and/or permitting DJSPA's employees to witness and/or notarize assignments of mortgages, affidavits of indebtedness and/or other affidavits on a daily basis prior to and without actually witnessing execution of the document by the person whose signature was to be witnessed and/or notarized;

(iii) causing and/or permitting DJSPA's employees to prepare and execute affidavits of indebtedness for submission to the foreclosure court that failed to follow appropriate professional practices and procedures;

(iv) causing and/or permitting DJSPA's employees to sign the name of another person on various foreclosure-related documents without any indication of that fact on the documents;

(v) charging GMACM substantial fees and costs for legal services that DJSPA knew or should have known fell below the minimum standard of professional care owed by DJSPA to GMACM;

(vi) providing legal work on behalf of GMACM as to various files assigned to DJSPA that fell below the applicable standard of care; and

(vii) committing acts or omissions that have subjected GMACM to claims, losses and liabilities of third-parties.

36. As a result of DJSPA's breach of its material contractual obligations to GMACM, GMACM has suffered, and may in the future continue to suffer, substantial damages in an amount to be determined, but believed to be well in excess of $75,000 not including interest or costs.

## COUNT III
### (Defendants' Breach of Fiduciary Duty)

37. GMACM repeats and realleges the allegations of paragraphs 1 – 36 of this Counterclaim as if fully set forth herein.

38. As a result of the attorney-client relationship that existed between DJSPA and GMACM, DJSPA further owed a fiduciary duty to act in the interest of and for the benefit of GMACM.

39. DJSPA breached its fiduciary duty to GMACM by, among other things:

   (i) causing and/or permitting DJSPA's employees to execute, witness and/or notarize assignments of mortgage that were back-dated;

   (ii) causing and/or permitting DJSPA's employees to witness and/or notarize assignments of mortgages, affidavits of indebtedness and/or other affidavits on a daily basis prior to and without actually witnessing execution of the document by the person whose signature was to be witnessed and/or notarized;

   (iii) causing and/or permitting DJSPA's employees to prepare and execute affidavits of indebtedness for submission to the foreclosure court that failed to follow appropriate professional practices and procedures;

   (iv) causing and/or permitting DJSPA's employees to sign the name of another person on various foreclosure-related documents without any indication of that fact on the documents;

   (v) charging GMACM substantial fees and costs for legal services that DJSPA knew or should have known fell below the minimum standard of professional care owed by DJSPA to GMACM; and

   (vi) providing legal work on behalf of GMACM as to various files assigned to DJSPA that fell below the applicable standard of care.

   (vii) failing to handle the matters assigned to DJSPA with honesty, forthrightness, loyalty and fidelity.

40. As a result of DJSPA's breach of its fiduciary duty to GMACM, GMACM has suffered, and may continue to suffer in the future, substantial damages in an amount to be determined, but believed to be well in excess of $75,000 not including interest or costs.

14

## COUNT IV
### (Florida's Deceptive and Unfair Trade and Practices Act)

41. GMACM repeats and realleges the allegations of paragraphs 1 – 40 of the Counterclaim as if fully set forth herein.

42. This cause of action is brought by GMACM for DJSPA's violations of the Florida Deceptive and Unfair Trade Practices Act, Florida Stat. § 501.201, et seq.

43. GMACM is a "person" entitled under Florida Stat. § 501.211(2) to recover actual damages, plus attorney's fees and court costs, for a loss suffered as a result of the DJSPA's violation of the Florida Deceptive and Unfair Trade Practices Act.

44. At relevant times, DJSPA committed unconscionable acts or practices and/or unfair or deceptive acts or practices in the conduct of their trade or commerce in violation of Florida Stat. § 501.204(1).

45. DJSPA's unconscionable acts or practices and/or unfair or deceptive acts or practices in the conduct of their trade or commerce include, among other things, the following:

>   (i) on numerous occasions during the relevant time period, DJSPA charged GMACM substantial fees and costs for legal services that DJSPA knew or should have known fell below the minimum standard of professional care owed by the DJSPA to GMACM; and
>
>   (ii) DJSPA committed reckless or wanton acts of misconduct in the handling of legal matters entrusted to DJSPA by GMACM.

46. As a direct result of the foregoing practices and acts committed by the DJSPA in violation of Florida Stat. § 501.204(1), GMACM has suffered a substantial loss in an amount to be determined, but believed to be well in excess of $75,000 not including interest or costs.

15

47. By reason of the foregoing, GMACM is entitled to recover its actual damages from DJSPA, plus its court costs and attorneys' fees, pursuant to Florida Stat. § 501.211(2).

## COUNT V
### (Misrepresentation/Suppression)

48. GMACM repeats and realleges the allegations of paragraphs 1 – 47 of this Counterclaim as if fully set forth herein.

49. On numerous occasions during the existence of the attorney-client relationship between DJSPA and GMACM, DJSPA submitted to GMACM invoices, each of which purported to accurately state DJSPA's legal fees and expenses incurred to perform the work in a competent, professional manner.

50. In each instance, DJSPA submitted the invoices with the intent that GMACM would reimburse DJSPA for the legal fees and expenses set forth in the invoices.

51. In many instances, DJSPA submitted invoices that contained descriptions of work not actually performed, work that had previously been paid for, and work that had previously been rejected as unnecessary, untimely or excessive, in an effort to obtain payment that DJSPA knew or should have know was improper. Such invoicing was therefore false and deceptive.

52. DJSPA was at least negligent in making the representations contained in each of these invoices.

53. DJSPA submitted these invoices intending that GMACM would rely upon the representation that was false.

54. DJSPA reasonably or justifiably relied upon these false representations contained in the invoices, making payment that should not have been made.

55. DJSPA further had a duty to disclose material information to GMACM, including information relating to the legal work DJSPA was responsible for handling on behalf of

16

GMACM.

56. DJSPA failed to disclose such material information to GMACM which has subjected GMACM to claims, losses and liabilities.

57. As a proximate result of DJSPA's misrepresentations and/or suppressions, GMACM has suffered and/or will suffer substantial damages in an amount to be determined, but believed to be well in excess of $75,000 not including interest or costs.

**WHEREFORE**, GMACM respectfully requests the following relief:

1) With respect to DJSPA's claims, judgment in GMACM's favor dismissing the claims with prejudice, together with GMACM's costs and disbursements;

2) With respect to GMACM's Counterclaims, a judgment awarding compensatory and punitive damages in favor of GMACM and against DJSPA, together with such pre-judgment and post-judgment interest as may be awarded according to law, GMACM's attorney's fees, and GMACM's costs and disbursements; and

3) Such other and further relief as may be just and proper.

DATED this the 15th day of July, 2011.

/s/D. Brian O'Dell
D. Brian O'Dell (Florida Bar No. 0659665)
Ann T. Taylor (Florida Bar No. 37228)
**Bradley Arant Boult Cummings LLP**
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
bodell@babc.com
ataylor@babc.com

        Christian W. Hancock (Florida Bar No. 0643521)
        Nicholas J. Voelker (Florida Bar No. 88876)
        Bank of America Corporate Center
        100 N. Tryon Street, Suite 2690
        Charlotte, NC 28202
        Telephone: (704) 332-8842
        Facsimile: (704) 332-8858
        chancock@babc.com
        nvoelker@babc.com

        *ATTORNEYS FOR DEFENDANT GMAC MORTGAGE, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served the above and foregoing on:

Jeffrey A. Tew
Matias R. Dorta
Tew Cardenas, LLP
The Four Seasons Tower
1441 Brickwell Avenue, 15th Floor
Miami, FL 33131-3407
305-536-1112
jt@tewlaw.com
mrd@tewlaw.com

by placing a copy of same in the United States Mail, first-class postage prepaid and addressed to his regular mailing address, on this 15th day of July, 2011.

        /s/ D. Brian O'Dell
        OF COUNSEL