12-12020-mg   Doc 8860-25   Filed 07/08/15   Entered 07/08/15 16:45:57   Exhibit
Exhibit 13 - Excerpt G. Kidner Depo.   Pg 1 of 5

1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION


Case No. 0:11-CV 60626


- - - - - - - - - - - - - - x
The Law Offices of          :
David J. Stern, P.A.        :
Plaintiff/Counter Defendant, :
                            :
vs.                         :
                            :
Federal Home Loan           :
Mortgage Corp.,             :
Defendant/Counter Plaintiff :
                            :
- - - - - - - - - - - - - - x


VIDEO DEPOSITION OF GRAHAM H. KIDNER

McLean, Virginia

Wednesday, August 22, 2012

10:00 a.m.

12-12020-mg    Doc 8860-25    Filed 07/08/15    Entered 07/08/15 16:45:57    Exhibit
Exhibit 13 - Excerpt G. Kidner Depo.    Pg 2 of 5

140

1    activities to foreclose people's homes until

2    they could satisfy themselves and report to us

3    that they could rely on untainted documentation

4    amongst other things.  There were several

5    letters.

6           He said more than that, but

7    essentially we told specific servicers that

8    they could not proceed on foreclosures on

9    Freddie Mac files until they had satisfied both

10   themselves and us that they could proceed

11   lawfully and relying on accurate and untainted

12   documentation.

13          And after the number of servicers who

14   reported or there were reports about them

15   having similar problems began to grow Freddie

16   Mac issued general directions to all servicers

17   along similar lines.

18      Q    Why?

19      A    Because we didn't want servicers

20   pursuing foreclosures against borrowers relying

21   on improper documentation and other

22   improprieties caused by servicers.

23      Q    **Why did you provide the servicers the**

24   **opportunity to correct affidavits that were**

25   **filed robo signed affidavits?**

12-12020-mg   Doc 8860-25   Filed 07/08/15   Entered 07/08/15 16:45:57   Exhibit
Exhibit 13 - Excerpt G. Kidner Depo.   Pg 3 of 5

141

1    A    I am not sure we provided the

2    opportunity to correct necessarily.  We

3    recognized, I think, that foreclosures had to

4    -- well, foreclosures were necessary to do

5    because borrowers had failed to pay their

6    mortgages would have to proceed in any event.

7         What we didn't want to have happen is

8    that those would proceed relying on tainted

9    documentation and other improprieties so we

10   recognized the need no continue with

11   foreclosure activity in those cases where that

12   was the appropriate course of action, but we

13   didn't want to have happen is that those

14   foreclosure activities would continue to

15   proceed or would proceed relying on false

16   inappropriate documentation and other improper

17   practices.

18   **Q    Were these servicers supposed to**

19   **correct those affidavits that were robo signed**

20   **or were inadequate?**

21   A    We didn't get into the details with

22   servicers of what exactly they were supposed to

23   do.  These were issues that were not simply in

24   Florida.

25        These were issues that were across a

12-12020-mg   Doc 8860-25   Filed 07/08/15   Entered 07/08/15 16:45:57   Exhibit
Exhibit 13 - Excerpt G. Kidner Depo.   Pg 4 of 5

142

1    the country.  There were improper documents,

2    improper practices in foreclosures across the

3    country.

4         We did not know the details

5    necessarily of what exactly all of those

6    problems were and where all of those files

7    were.  We did not dictate while specific

8    actions they had to take or not to take.

9         It was up to the servicers to ensure

10   that the actions they took that meant at the

11   end of the day that any foreclosure that they

12   proceeded to complete will be completed

13   correctly.

14        **Q    Did you ever hear of any affidavits**

15   **being executed by Jeffrey Steffan in connection**

16   **with GMAC acting as is service?**

17        A    Yes.

18        **Q    What do you know about that?**

19        A    I know that there was some, that that

20   was the GMAC employee.  He was the first

21   servicer that broke cover so to speak on the

22   robo signing issue and we learned of that

23   through -- I don't recall exactly how we

24   learned of it, but we learned of it -- Oh, we

25   learned of it from one of our designated

12-12020-mg   Doc 8860-25   Filed 07/08/15   Entered 07/08/15 16:45:57   Exhibit
Exhibit 13 - Excerpt G. Kidner Depo.   Pg 5 of 5

143

```
1   counsel law firms.
2        Q    Was there any direction given by
3   Freddie Mac to GMAC with regard to those
4   affidavits?
5        A    There was a letter written to GMAC
6   with regard to them proceeding on Freddie Mac
7   files relying on improper and tainted
8   documentation amongst other things.
9             They didn't to my knowledge
10  specifically reference Jeffrey Steffan, but it
11  referenced a series of alleged improper
12  activities that GMAC may have been relying on
13  in order to prosecute foreclosure actions.
14       Q    Did Freddie Mac tell GMAC to correct
15  those problems?
16       A    I am not sure that Freddie Mac
17  exactly told them to correct the problem.
18  Again, Freddie Mac told GMAC, and this is from
19  memory that they could not proceed to prosecute
20  foreclosure actions relying on any tainted
21  documentation or improper practices.
22       Q    Why didn't Freddie Mac terminate
23  GMAC?
24       A    I don't know.  That is not an area
25  that I had any involvement with.  I am not
```