**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| Residential Capital, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

### AMENDED DECLARATION OF DAVID J. STERN

I, David J. Stern, make this declaration under 28 U.S.C. § 1746, and hereby declare as follows:

1. I am over the age of eighteen years old, and the facts set forth in this Declaration are based upon my personal knowledge and my review of the relevant books and records of the Law Offices of David J. Stern, P.A. If I were called upon to testify, I could and would testify competently as follows:

2. During the relevant time period, I was an attorney and the sole shareholder and President of the Law Offices of David J. Stern, P.A. ("DJSPA"). DJSPA is a Florida law firm that, until 2011, provided legal services to banks and other financial institutions in residential foreclosure related legal proceedings.

3. In or about 1995, DJSPA began representing GMAC Mortgage, LLC ("GMAC") in residential foreclosure related legal proceedings in Florida. Subsequently, in 2007, DJSPA entered into a formal contractual agreement with GMAC, the Master Services Agreement and related Statements of Work (collectively the "MSA"), which was modified from time to time and which provided the terms by which DJSPA would provide legal services and costs for the benefit of GMAC, and conversely, the terms pursuant to which GMAC would compensate and

1

reimburse DJSPA for the legal services and costs incurred on its behalf. A copy of the MSA is attached hereto as Exhibit 1.

4. From the period from 1995 through 2010, DJSPA successfully handled tens of thousands of foreclosure cases for GMAC.

5. In January 2010, a public company, DJSP Enterprises, Inc. ("DJSP"), was formed to provide, through subsidiaries, processing and non-legal services for residential mortgage foreclosure related legal matters handled by DJSPA on behalf of its clients, including GMAC. Prior to 2010, non-legal services and processing on client files, including GMAC, were provided directly by DJSPA.

6. For uncontested residential foreclosure cases and related work, DJSPA worked on a flat-fee basis for each GMAC file, and the amount of the fee generally varied from $1,300.00 to $1,450.00 per file, depending on which institution owned the underlying note and mortgage. The legal work was performed, and billed, in increments from the time the foreclosure file was referred to DJSPA, through the entry of final judgment, in accordance with guidelines established by Fannie Mae and Freddie Mac. The flat fee included all legal services rendered, exclusive of out of pocket costs incurred by DJSPA, which would be billed and reimbursed separately. The first invoice from DJSPA to GMAC would generally include: a) half of the flat-fee for preparation of the foreclosure complaint and related documents; b) filing fee (the specific amount varied by county); c) service of process fees (generally $45.00 per defendant); and d) title work costs. Additional fees for bankruptcy cases, contested/litigated foreclosure cases, reinstatements by delinquent borrowers, and publishing costs would be billed on a case-by-case basis as incurred.

2

7. In connection with the handling of a foreclosure matter, DJSPA would rely on GMAC, as the client and loan servicer, to provide it with relevant information and documentation such as assignments of mortgage, verification of the amounts owed by the borrower, and in connection with court filings, sworn documents such as affidavits of indebtedness, which were based exclusively upon the knowledge of the client such as GMAC.

8. In late 2009 and early 2010, it was revealed that a GMAC officer, Jeffrey Stephan, and other GMAC personnel, had prepared and executed tens of thousands of fraudulent affidavits which were subsequently filed in foreclosure proceedings across the country, including Florida. A copy of the transcript of the deposition of Jeffrey Stephan, dated December 10, 2009, in the lawsuit styled *GMAC Mortgage, LLC v. Ann M. Neu et al.*, Case No. 50-2008 CA 040805 XXXX MB, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, is attached hereto as Exhibit 2.

9. Upon learning of GMAC's misconduct, DJSPA conducted an internal review of its GMAC foreclosure files and determined that, unbeknownst to DJSPA, GMAC had supplied it with over 4,000 fraudulent affidavits which were unwittingly filed by DJSPA in connection with GMAC foreclosure cases during the period of June 2008 through July 2010. Myself, and others at DJSPA, had numerous conversations with high-level executives and legal counsel at GMAC, including but not limited to, David Cunningham, Linda Walton and Joseph A. Pensabene, concerning the myriad of problems caused by GMAC's submission of fraudulent affidavits in connection with foreclosure lawsuits in Florida.

10. Contemporaneously, the Florida Attorney General's Office announced in August 2010, that it had commenced an investigation of DJSPA and other foreclosure law firms in

Florida regarding the handling of foreclosure cases. Additionally, various news articles critical of DJSPA were published in the late summer and early fall of 2010, including an article appearing in *Mother Jones* magazine.

11.  In the late summer and early fall of 2010, I had a series of conversations with several high-level officers and legal counsel at GMAC, including but not limited to, David Cunningham, Linda Walton and Joseph A. Pensabene, regarding the facts and circumstances surrounding the announced Attorney General investigation, as well as the negative publicity surrounding DJSPA. Additionally, we discussed in great detail the creation of DJSP Enterprises, Inc., and its role in providing processing and non-legal services to DJSPA's clients, including GMAC. During these same conversations with high-ranking GMAC personnel, the issue of how to deal with the fraudulent affidavits supplied by GMAC in thousands for foreclosure cases filed by DJSPA on behalf of GMAC was discussed at length.

12.  Ultimately, in September 2010, I traveled to GMAC's headquarters in Fort Washington, Pennsylvania, to meet personally with Joseph Pensabene, Executive Vice President and Chief Servicing Officer at GMAC ResCap. During this meeting, and after a comprehensive discussion of all the material issues between the parties, including but not limited to, GMAC's creation and submission of fraudulent affidavits, the services provided by DJSP Enterprises, Inc., on GMAC foreclosure cases, and the negative publicity surrounding DJSPA, Mr. Pensabene and I entered into a new contract between DJSPA and GMAC, pursuant to which DJSPA was hired by GMAC to assist it in preparing and filing corrected affidavits in the foreclosure lawsuits in which fraudulent affidavits had been previously supplied by GMAC (the "Curative Agreement"). Copies of the letter to Joseph A. Pensabene dated September 27, 2010, and response letter to David J. Stern, are attached hereto as Composite Exhibit 3. Additionally, the parties agreed that

4

the relationship between DJSPA and GMAC would continue going forward, and that upon completion of the work contemplated under the Curative Agreement - which was a separate and distinct contract from the MSA with different terms concerning scope of work and payment - GMAC would resume sending foreclosure cases to DJSPA at the customary volume that it had in prior years. *See* Ex. 3.

13.     The Curative Agreement provided for a set schedule of flat fee payments from GMAC to DJSPA for various services provided depending on the procedural status of the underlying foreclosure lawsuit in which a corrective affidavit was required to be filed. *See* Ex. 3 at p. 2. The Curative Agreement was intended by the parties to be a separate and distinct contract from the MSA, and was expressly agreed to by GMAC ResCap with full knowledge of the following facts: (1) the creation of DJSP Enterprises, Inc., in January 2010, and that DJSP Enterprises, Inc., previously provided, and would continue to provide, processing and non-legal services to DJSPA in its handling of GMAC foreclosure cases; (2) the Florida Attorney General had commenced an investigation into the foreclosure practices of DJSPA; and (3) the existence of numerous news and magazine articles and reports criticizing the foreclosure practices of DJSPA.

14.     Pursuant to the Curative Agreement, and shortly after my meeting with Mr. Pensabene, myself and others DJSPA personnel began working closely with GMAC and its personnel and counsel, including high-level executives such as Mr. Pensabene, David Cunningham and Linda Walton, to start the process of curing the thousands of fraudulent affidavits which had been produced by GMAC. To that end, an entire section of the offices at DJSPA was set aside solely for the purpose of identifying, creating and preparing new affidavits pursuant to the Curative Agreement, and significant resources and personnel were devoted by

5

DJSPA to this project. From late September through mid-November 2010, DJSPA personnel worked extensively with representatives of GMAC to prepare new affidavits for use in thousands of GMAC foreclosure cases in Florida.

15.     According to the books and records of DJSPA, at the time GMAC terminated its relationship with DJSPA on or about November 16, 2010, DJSPA had provided over $2.9 million dollars in legal services for the benefit of GMAC under the Curative Agreement. Additionally, according to the books and records of DJSPA, as of the date of termination, DJSPA was owed approximately $3.1 million dollars for legal services performed and out of pocket expenses incurred by DJSPA on behalf of GMAC under the MSA.

16.     GMAC has failed to pay DJSPA for the legal services and out of pocket costs incurred by DJSPA on behalf of GMAC pursuant to the Curative Agreement and the MSA. Consequently, DJSPA filed suit against GMAC in Florida to recover the sums due and owing, which are reflected in the corresponding invoices attached to DJSPA's Complaint against GMAC, which was filed on or about June 6, 2011, and subsequently removed to United States District Court for the Southern District of Florida. A copy of the Complaint is attached hereto as Exhibit 4.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed this 9th day of July, 2015.

_____
David J. Stern