Consor & Associates

Reporting and Transcription, Inc.

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
CASE NO. 50 2008 CA 040805XXXX MB

GMAC MORTGAGE, LLC,

        Plaintiff,

-vs-

ANN M NEU A/K/A ANN MICHELLE
PEREZ; DOUGLAS WILLIAM NEU;
UNKNOWN TENANT (S) IN
POSSESSION OF THE SUBJECT
PROPERTY,
        Defendants.

---

DEPOSITION OF JEFFREY STEPHAN

Thursday, December 10, 2009
1:00 p.m. - 2:30 p.m.

Consor & Associates
1655 Palm Beach Lakes Blvd., Ste. 500
West Palm Beach, Florida 33401

Reported By:
Jamie Reynolds Bentley, Court Reporter
Notary Public, State of Florida
Consor & Associates
1655 Palm Beach Lakes Blvd., Suite 500
West Palm Beach, Florida 33401
(561)682-0905

Prisor & Associates
Reporting and Transcription, Inc.

```
 1    APPEARANCES:

 2    On behalf of the Plaintiff:

 3         ALEJANDRA ARROYAVE, ESQ.

           Lapin & Leichtling

 4         225 Alahamra Circle

           Suite 800

 5         Coral Gables, Florida 33134

           (305) 569-4100

 6

 7

 8    On behalf of the Defendant:

 9         CHRISTOPHER IMMEL, ESQ.

           Ice Legal, P.A.

10         1975 Sansbury's Way

           Suite 104

11         West Palm Beach, Florida 33411

           (561) 798-5658

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Elisor & Associates

Reporting and Transcription, Inc.

```
                                                        Page 3
 1                              -   -   -
 2                           I N D E X
 3                              -   -   -
 4
 5   WITNESS:          DIRECT    CROSS     REDIRECT   RECROSS
 6   JEFFREY STEPHAN
     BY MR. IMMEL              4                        54
 7
     JEFFREY STEPHAN
 8   BY MS. ARROYAVE                51
 9
10                              -   -   -
11                         E X H I B I T S
12                              -   -   -
13
     NUMBER                              PAGE
14
15   DEFENDANT'S   EX. A             17
     DEFENDANT'S   EX. B             24
16   DEFENDANT'S   EX. C             26
     DEFENDANT'S   EX. D             30
17   DEFENDANT'S   EX. E             32
     DEFENDANT'S   EX. F             33
18   DEFENDANT'S   EX. G             37
     DEFENDANT'S   EX. H             37
19   DEFENDANT'S   EX  I             38
     DEFENDANT'S   EX. J             40
20   DEFENDANT'S   EX. K             41
     DEFENDANT'S   EX. L             44
21   DEFENDANT'S   EX. M             46
     DEFENDANT'S EX.   N             49
22
23
24
25
```

Page 4

1                      P R O C E E D I N G S

2                              -  -  -

3              Deposition taken before Jamie Reynolds Bentley, Court

4      Reporter and Notary Public in and for the State of Florida

5      at Large, in the above cause.

6                              -  -  -

7                    THE COURT REPORTER: Do you swear or affirm that

8              the testimony you are about to give will be the truth,

9              the whole truth and nothing but the truth?

10                   THE WITNESS:  I do.

11     Thereupon,

12                         (JEFFREY STEPHAN)

13     having been first duly sworn or affirmed, was examined

14     and testified as follows:

15                        DIRECT EXAMINATION

16     BY MR. IMMEL:

17          Q.    All right.  We are here on GMAC Mortgage, LLC

18     versus Neu.  This is the deposition of Jeffrey Stephan.

19     I'm sure your attorney has gone over things with you a

20     little bit.  But if you could just keep one thing in

21     mind, to answer, not to simply nod your head or anything

22     like that.  We need for your answers to be clear for the

23     court reporter that way.

24          A.    Yes.

25          Q.    Could you please state your name for the

Sensor & Associates
Reporting and Transcription, Inc.

1      record.

2            A.    My name is Jeffrey Stephan.

3            Q.    Okay.  And who do you work for?

4            A.    GMAC, LLC.

5            Q.    And is there a difference between GMAC, LLC

6      and GMAC Mortgage, LLC?

7            A.    GMAC, LLC -- I'm trying to think of the word

8      to use -- the most recent name.

9            Q.    Okay.

10           A.    It's GMCA Mortgage Corporation.

11           Q.    Okay.

12           A.    I'm not sure how you would word that.

13           Q.    Okay.  So are they -- does GMAC, LLC -- now

14     has that basically taken over these other entities --

15           A.    Yes.

16           Q.    -- that formerly existed?

17           A.    Yes.

18           Q.    So these entities no longer currently exist?

19           A.    Right.

20           Q.    Okay.  And how long then have you been

21     employed by GMAC, LLC?

22           A.    Five years.

23           Q.    Okay.  And prior to that, it was GMAC Mortgage

24     and GMAC Corporation?

25           A.    That was as the whole five years.

Prisor & Associates
Reporting and Transcription, Inc.

Page 6

1     Q.   Oh, okay.

2     A.   Yes.

3     Q.   As the whole five years.  And what is your

4  title?

5     A.   I'm a team leader in the foreclosure

6  department.

7     Q.   Okay.  And what are your responsibilities?

8     A.   I am the team lead of the document execution

9  unit.

10     Q.   Okay.

11     A.   And also the service transfer unit.

12     Q.   And so what type of documents do you

13  ordinarily execute?

14     A.   I execute on a daily basis assignments of

15  mortgage, affidavits of any type that might be needed,

16  deeds.  Any type of the document that would need a

17  signature of an officer of GMAC.

18     Q.   Okay.  And who do you report to?

19     A.   I report to Margie Kwiatanowski.

20     Q.   Could you spell that?

21     A.   Yes.  It's K-W-I-A-T-A-N-O-W-S-K-I.

22     Q.   Okay.  And approximately how many employees

23  does GMAC Mortgage, LLC have?

24     A.   I couldn't guess.  I don't know.

25     Q.   Sure.  Okay.  And as part of your

Sensor & Associates
Reporting and Transcription, Inc.

Page 7

1    responsibilities, you execute assignments as a vice

2    president of MERS?

3        A.   Yes, that's correct.

4        Q.   And in executing affidavits as a vice

5    president, do you receive any compensation from MERS?

6        A.   No.

7        Q.   Have you had any training from MERS?

8        A.   No.

9        Q.   Okay.   How many documents would you say you

10   sign on an average week as far as executing affidavits

11   and things of that nature?

12       A.   It's very tough to estimate that to be honest

13   with you.

14       Q.   In a given month, would that be easier to say

15   --

16       A.   I would say --

17       Q.   -- one hundred, 500?

18       A.   -- in a month, my team brings to me

19   approximately, I'd say a round number of 10,000.   That's

20   just an estimate, of course.

21       Q.   Okay.   And so, 10,000 your team brings to you.

22   How many people do you oversee?

23       A.   A team of 13 people.

24       Q.   Okay.   Now, would these people be given the

25   duties of actually preparing the documents that you

Prisor & Associates
Reporting and Transcription, Inc.

Page 8

1    ultimately sign and execute?

2         A.    They would review the document that is given

3    to them through our computer systems.

4         Q.    Okay.

5         A.    So they don't actually prepare it per se.

6    They review it for the accuracy of what type of entity

7    I'm signing as.

8         Q.    Okay.  How many different entities do you sign

9    as?

10              MS. ARROYAVE:  Objection:  Form.

11   BY MR. IMMEL:

12        Q.    Can you name what entities you sign --

13        A.    I sign presently as MERS.

14        Q.    Okay.

15        A.    And under MERS as vice president or an

16   assistant secretary.  Also, I sign for GMAC Mortgage.

17   And to be honest with you, it's too many entities for me

18   to actually quote under GMAC.  But it is as a limited

19   signing officer.

20        Q.    Okay.  And earlier you stated that right now

21   it's GMAC, LLC.

22        A.    Uh-huh.

23        Q.    You do still currently sign documents as GMAC

24   Mortgage, LLC?

25        A.    Yes, I do.

Grisor & Associates
Reporting and Transcription, Inc.

1       Q.    Okay.  And also as a corporation --

2       A.    Yes.

3       Q.    -- and some of the others that we've seen your

4    signature on?

5       A.    Yes, I do.

6       Q.    Okay.  Where then does the information that

7    goes into the system that your team reviews --

8       A.    Yes.

9       Q.    -- where does that information come from?

10      A.    The process that we use is -- and this is to

11   my knowledge -- a file is referred to a foreclosure

12   attorney stating exactly what entity would be needed

13   through the referral unit.  And at that point, the

14   attorney receives the file to proceed with the

15   foreclosure.  That foreclosure name is generated upon

16   GMAC supplying it on the referral.  I'm not 100 percent

17   sure of what that process is.

18      Q.    Okay.

19      A.    The documentation, as you stated, that you're

20   asking about, is given to us after the attorney has been

21   instructed on what name to foreclose in.

22      Q.    And who instructs the attorney as to what name

23   to foreclose it in?

24      A.    It comes to our referral unit.  Which is

25   another process to my knowledge.

Prisor & Associates

Reporting and Transcription, Inc.

Page 10

1          Q.   Okay.   Approximately, if 10,000 are signed in

2     a given month, you know, on an average, how long would

3     you say you spend executing each one and actually

4     signing?

5          A.   It's tough to say.

6          Q.   Okay.   Would it be accurate to say that when

7     these documents have been presented to you by your team

8     --

9          A.   Uh-huh.

10         Q.   -- you take the face value that they are --

11    they have been checked by your team?

12         A.   That would be a correct statement, yes.

13         Q.   So these documents wouldn't be actually

14    executed on your own personal knowledge?

15         A.   Right.

16         Q.   It would be based on knowledge that came

17    through --

18         A.   Right.

19         Q.   -- the chain --

20         A.   I'm sorry.

21              MS. ARROYAVE:   Can I interrupt just for a

22         second?   I just want to make sure that he finishes

23         his question before you answer.

24              THE WITNESS:   Sure.   Sorry.

25

SASSOR & ASSOCIATES
Reporting and Transcription, Inc.

Page 11

1    BY MR. IMMEL:

2          Q.    Yes, yes, that's true, too.

3                So the information that your team obtains

4    isn't based on their personal knowledge either, it's

5    located within the computer networks?

6                MS. ARROYAVE:   Objection:  Form.

7    BY MR. IMMEL:

8          Q.    The information on the documents that you

9    execute is stored within your data base?

10         A.    No, somewhere else.

11         Q.    No.  Okay.  The information then is that --

12   your team, they get that from a computer network that

13   you have, correct?

14         A.    No.

15         Q.    Where does your team get that information?

16         A.    That information is first given to the

17   attorney to foreclose under which name as needed.  If we

18   are stating some type of assignment, for example, the

19   attorney, to my knowledge, and I'm not 100 percent sure

20   of their process because I don't work for the attorney,

21   they would do a title check to verify what name the lien

22   is presently in.

23         Q.    Okay.

24         A.    At that point is when it would initial if an

25   assignment would be needed or not.

Prisor & Associates
Reporting and Transcription, Inc.

Page 12

1          Q.    So at the direction of the attorney, your team

2    creates these documents and then you execute them?

3                MS. ARROYAVE:   Objection:   Form.

4    BY MR. IMMEL:

5          Q.    So your team executes documents at the request

6    of attorneys?

7                MS. ARROYAVE:   Objecting:   Form.   You can

8          still answer it if you understand the question.

9    BY MR. IMMEL:

10         Q.    Do you understand what I'm asking?

11         A.    Yes, I understand what you're asking.   My team

12   does not create any documents.

13         Q.    These documents are then sent from the

14   attorney?

15         A.    Yes.

16         Q.    Okay.   And you're -- so then the team that you

17   oversee --

18         A.    Uh-huh.

19         Q.    -- simply reviews them for accuracy?

20         A.    That's correct.

21         Q.    Okay.   And how do they verify the information

22   is accurate?

23         A.    They do not go into the system and verify the

24   information as accurate.   We are relying on our attorney

25   network to ensure that they are asking for the correct

Grisor & Associates

Reporting and Transcription, Inc.

Page 13

1      information.

2           Q.    So the attorney creates these documents and

3      you are relying that the attorney is correct?

4           A.    Yes.

5                 MS. ARROYAVE:  Objection:  Form.

6      BY MR. IMMEL:

7           Q.    Okay.  And then they are required to be

8      notarized.  Are they notarized in your office?

9           A.    Yes.

10          Q.    Is the notary present with you or is it down

11     the hall?

12          A.    The notary is in the same department.

13          Q.    Same department.  Okay.  Are they physically

14     present when you (sic) notarize this -- or when they

15     notarize and then you execute it?

16          A.    No, they are not physically present.  But I

17     will -- I do deliver them to the notary.

18          Q.    All right.

19          A.    And I wait for them to notarize it to hand

20     them back to my team.

21          Q.    Okay.  All right.  What department then?  You

22     said your department?

23          A.    Right.

24          Q.    And as part of their job responsibilities,

25     would notarizing be their sole responsibility, or do

Page 14

1   they have other responsibilities?

2        A.   They have other responsibilities.

3        Q.   Are any of the members of your team, people

4   that also notarize documents that you execute?

5        A.   Yes.

6        Q.   Yes.  Okay.  Is there a job requirement that

7   certain employees become notaries?

8        A.   I don't know.

9        Q.   Okay.  And what type of -- what level of a

10  type of employee would it typically be that is a notary?

11       A.   I don't know that either.

12       Q.   All right.  Does the company pay for the

13  process of becoming a notary or the renewal fees?

14       A.   Yes.

15       Q.   Okay.  If a notary feels that they are being

16  asked to notarize something that's done improperly, is

17  there a process which they can, you know, raise that to

18  anybody's attention?

19       A.   I honestly don't know.

20       Q.   You are not sure.  Do you notarize any

21  assignments of mortgage or other documents yourself?

22       A.   No.

23       Q.   Are you a notary?

24       A.   No.

25       Q.   How are witnesses ordinarily chosen?

Page 15

1              MS. ARROYAVE:   Object:   Form.

2              Chosen for what?

3       BY MR. IMMEL:

4          Q.   The witnesses to, say, the assignments of the

5       mortgage, and the witnesses of things that you execute.

6          A.   They are just chosen randomly.

7          Q.   Chosen randomly.  Okay.  Approximately how

8       many days a week do you spend executing assignments,

9       affidavits, and the various documents that you execute?

10         A.   Five.

11         Q.   Five.  Okay.  Are there any specific days

12      where it's one day these types of documents, this type

13      of documents, or can it be just a mix?

14         A.   It's a mix.

15         Q.   Okay.  Approximately how many documents would

16      you say are presented to you by your team at a given

17      time?  Is it one at a time, or ten at a time?

18         A.   It is done in bulk.

19         Q.   Done in bulk.

20         A.   I could not quote you the exact number.

21         Q.   Okay.  Going back to the signing officer as

22      Mortgage Electronic Registration Systems, you said that

23      you are -- you sign as both vice president and as an

24      assistant secretary?

25         A.   That is correct.

Page 16

1          Q.   Is there any basis for one -- you sign as one

2     versus the other?

3          A.   The majority of the time I sign as a vice

4     president.  Most times we do not need an assistant

5     secretary, unless they are asking for a second signature

6     on any type of an affidavit or assignment.

7          Q.   Okay.  And, again, you are not paid by MERS.

8     Do you hold any other responsibilities with MERS that

9     would be consistent with having the title of a vice

10    president?

11         A.   No.

12         Q.   No.  Okay.  So you don't attend any board

13    meetings for MERS?

14         A.   No.

15         Q.   You don't report to the secretary of MERS or

16    any other people at MERS?

17         A.   No.

18         Q.   How did you become a MERS representative?  Did

19    you request to be a vice president of MERS?

20         A.   I received the responsibility as being the

21    team lead for document executing.  It was assigned to me

22    by our legal area.

23         Q.   Okay.  All right.  So your responsibilities as

24    a vice president of MERS to execute the assignments is

25    really your job perspective, or an aspect of your job at

Grisor & Associates

Reporting and Transcription, Inc.

Page 17

1    GMAC Mortgage, LLC or GMAC, LLC?

2         A.    That is correct.

3         Q.    Okay.  And you've never been to any MERS

4    offices or their headquarters?

5         A.    No.

6         Q.    Are you aware of why you were given the title

7    of vice president versus assistant secretary or...

8         A.    No, I'm not aware of that.

9         Q.    Okay.  All right.  I have here the assignment

10   of mortgage which you executed in this case.

11        A.    Okay.

12              MR. IMMEL:  I'll enter that as Exhibit A.

13              (Defendant's Exhibit Letter A  was marked for

14        identification.)

15              MR. IMMEL:  I have a copy for you, as well.

16              THE WITNESS:  Thank you.

17   BY MR. IMMEL:

18        Q.    In the top left-hand corner it says, Record

19   and return to offices of Marshall C. Watson.

20              Based on your earlier statements, it's

21   accurate to say that attorneys at Marshall C. Watson

22   created the information on this document?

23              MS. ARROYAVE:  Objection:  Form.

24              THE WITNESS:  That would be correct.

25

Page 18

1    BY MR. IMMEL:

2         Q.   Okay.  And who -- so an attorney chose the

3    date of the 4th day of March, 2009.

4              Can you tell me the date actually.  Whether

5    that's the 3rd or the 5th of March.

6         A.   To me it seems to be the 5th.

7         Q.   Okay.

8         A.   Actually, excuse me, let me change that.  It

9    would have to be the 3rd, because the notary did it on

10   the 4th.

11        Q.   Okay.  And that is your signature on this

12   document?

13        A.   That is correct.

14        Q.   Okay.  Is it commonplace then for the notary

15   to notarize a document the day after you've apparently

16   executed it?

17             MS. ARROYAVE:  Objection:  Form.

18             THE WITNESS:  I would say, yes, it would be

19        common.

20   BY MR. IMMEL:

21        Q.   Okay.  So typically when you hand these off to

22   the notary, and then they kind of catch up?

23        A.   Uh-huh.  Yes.

24        Q.   Okay.  The witnesses, Heather Reinhart, do you

25   know her personally?

Prisor & Associates
Reporting and Transcription, Inc.

Page 19

| | | |
|---|---|---|
| 1 | A. | Yes, she is one of my employees. |
| 2 | Q. | Is she on your team? |
| 3 | A. | Yes. |
| 4 | Q. | Is it possible that she would have been one of |

5     the people who reviewed this for accuracy?

6          A.    That is possible.

7          Q.    And the other person appears to be Tyra

8     Wilks --

9          A.    Wilson.

10         Q.    Tyra Wilson.   Okay.   Is she also a member of

11    your team?

12         A.    Yes.

13         Q.    And you know her personally, as well?

14         A.    Yes.

15         Q.    The notary, Susan Turner, is she a member of

16    your team?

17         A.    No, she is not.

18         Q.    Do you know her personally?

19         A.    Yes.

20         Q.    It says here that you personally appeared

21    before her on the 4th day of March.   Is it possible that

22    you executed then on the 3rd, and handed it to her and

23    then you weren't personally in front of her at the time

24    she notarized this?

25         A.    I don't know.   I can't recollect.

Page 20

1            Q.   All right.  And how did you determine on this

2       to execute it to GMAC Mortgage, LLC?

3                 MS. ARROYAVE:  Objection:  Form.

4                 THE WITNESS:  I'm not sure if I understand the

5            question.

6       BY MR. IMMEL:

7            Q.   Okay.  Did you have any say in the creation of

8       who MERS would assign this to?

9            A.   No.

10           Q.   No.  Your attorney, the Law Office of Marshall

11      C. Watson, determined that?

12           A.   No.

13           Q.   No.

14           A.   That is, as I stated earlier, when the

15      foreclosure referral goes out, the referral unit

16      determines what entity they should be foreclosing on.

17           Q.   Okay.  And the foreclosure referral unit that

18      you speak of, is that part of your department?

19           A.   Yes.

20           Q.   Okay.  So would they have records that they

21      are able to refer to to determine who the new mortgagee

22      should be according to these assignments?

23           A.   Yes.

24           Q.   And who -- do you have a name of any person

25      that keeps those documents?

Page 21

1          A.    The team lead for that would be Brenda.

2          Q.    Brenda?

3          A.    Her last name is Staehle, S-T-A-E-H-L-E.

4          Q.    Okay.

5          A.    I think that's the way it's spelled.

6          Q.    Can you tell me -- you really don't have any

7     knowledge or information as to who should be the

8     mortgagee?  According to this document, you take it for

9     face value; is that correct?

10               MS. ARROYAVE:  Objection:  Form.

11               THE WITNESS:  Can you explain that further?

12    BY MR. IMMEL:

13         Q.    You take it for face value that GMAC Mortgage,

14    LLC is expected to be the mortgagee?

15               MS. ARROYAVE:  Objection:  Form.

16    BY MR. IMMEL:

17         Q.    Who would have information who -- who MERS

18    should assign this to?  Would it be you or Brenda

19    Staehle?

20         A.    Brenda Staehle would be the individual or her

21    team to refer the files, and they determine what name

22    should be foreclosing in.

23         Q.    Okay.  So everything from that point on is

24    based on the presumption that her team has ascertained

25    those things to be correct?

Page 22

1          A.    That is correct.

2                MS. ARROYAVE:  Objection:  Form.

3    BY MR. IMMEL:

4          Q.    All right.  Okay.  So on March 5th, 2009,

5    you're not aware --

6          A.    I believe it's the 3rd.

7          Q.    March 3rd.  I'm sorry.  March 3rd, 2009,

8    you're not aware of any physical transfer of the

9    mortgage?

10         A.    Can you rephrase that?  I'm not following.

11         Q.    Are you aware of any reason why the assignment

12   of mortgage had to be executed on March 5th, 2009 -- or

13   the 3rd, 2009?  I'm sorry.

14         A.    We have a process that's set up with our

15   attorney network.  And Marshall Watson is in that

16   attorney network.  The file is referred to them with a

17   certain name to proceed with the foreclosure in.  They

18   will pull title.  And whatever they see title is in, in

19   order to proceed in the proper name, they need to get an

20   assignment.  In this instance it's MERS to GMAC.

21         Q.    Okay.  Are the assignments supposed to be

22   completed prior to the filing of the foreclosure

23   lawsuit?

24                MS. ARROYAVE:  Objection:  Form.

25

Grison & Associates

Reporting and Transcription, Inc.

Page 23

1    BY MR. IMMEL:

2        Q.   Are you aware if it's a company policy at

3    least?

4        A.   I don't know.

5        Q.   Okay.  So as this assignment of mortgage, on

6    the face of it, transfers from Mortgage Electronic

7    Registration Systems as nominee for Mortgage Investors

8    Corporation to GMAC Mortgage, LLC on March 3rd, 2009,

9    would it be accurate to say that prior to that, this

10   assignment, Mortgage Electronic Registration Systems was

11   the mortgagee?

12       A.   No.

13       Q.   No.  Okay.  Why would that not be accurate to

14   say?

15       A.   Mortgage Electronic Registration, to my

16   knowledge, is an origination entity to allow the passing

17   of assignments through performing loans to make it more

18   easier, I guess you would say, to transfer amongst

19   different companies.  MERS does not own loans.

20       Q.   They wouldn't own the loan.  But they would

21   own the mortgage; is that correct?

22              MS. ARROYAVE:  Objection:  Form.

23              THE WITNESS:  It's not correct, no.

24   BY MR. IMMEL:

25       Q.   No.  So they are the named mortgagee, so that

Amber & Associates
Reporting and Transcription, Inc.

Page 24

1    when the note is passed from entity to entity it doesn't

2    have to be rerecorded?

3         A.    That is to my knowledge, yes.

4         Q.    All right.  On this it also says that MERS is

5    assigning the mortgage together with the note.  I don't

6    know if you see that line there.  It's right there

7    (indicating).

8              As you just stated, MERS has no interest in

9    the note ever; is that correct?

10        A.    I honestly don't know.

11        Q.    Oh, okay.  As far as you're aware --

12        A.    Yes.

13        Q.    -- MERS doesn't --

14        A.    As far as I'm aware.  (Witness nods head.)

15        Q.    Okay.  Are you aware of whether that's common

16   language to exist in the assignments that you execute?

17        A.    I honestly don't know.

18        Q.    You're not sure.  Okay.  All right.

19              MR. IMMEL:  And I have a copy of the first

20        page of the mortgage here.  Which I'll enter as

21        ExhibitB.

22              (Defendant's Exhibit Letter B was marked for

23        identification.)

24   BY MR. IMMEL:

25        Q.    If you will notice it says that the mortgagee

Page 25

1    according to the mortgage is Mortgage Electronic

2    Registration Systems.

3         I believe it's right down there (indicating).

4    A.    I disagree with that interpretation.

5         MS. ARROYAVE:  Was there a question?

6         MR. IMMEL:  Yes.

7         MS. ARROYAVE:  What was the question?

8    BY MR. IMMEL:

9    Q.    According to the mortgage, it says that MERS

10   is the mortgagee?

11   A.    My interpretation, it says right in the same

12   paragraph, it says they are a nominee for the lender or

13   the lender successors.

14   Q.    Right.  Okay.  They are the mortgagee as

15   nominee --

16   A.    Uh-huh.

17   Q.    --  for the lenders?

18   A.    Yes.

19   Q.    Okay.  But they are a different entity from

20   the lender and lender successors and things?

21   A.    Yes.

22   Q.    Okay.  What does nominee in that regards mean?

23   A.    I don't know.

24   Q.    Okay.  We can move on from there.

25        I have here -- which I'll enter as Exhibit

Page 26

1    C -- some discovery that we received from MERS.

2            (Defendant's Exhibit Letter C was marked for

3        identification.)

4    BY MR. IMMEL:

5        Q.    And if you will turn to the second page.  It

6    is the document entitled, Min Summary.

7            And have you ever seen these records before?

8        A.    No, I have not.

9        Q.    So in executing the assignments of mortgage on

10   behalf of MERS, do you consult any of MERS' records?

11       A.    No.

12       Q.    And you are not able to tell me what any of

13   these entries would then mean?  This is the first time

14   you have seen this type of information?

15       A.    In this format, yes.

16       Q.    Okay.  Have you seen this type of information

17   in other formats?

18       A.    Some of it.  I understand what they mean as

19   far as the acronyms in there.

20       Q.    Okay.  Based on your understanding, the

21   investor says -- the investor is identified as

22   Government National Mortgage Association - Ginnie Mae.

23   What does the word "investor" mean in MERS' acronym?

24   Are you aware?

25       A.    I'm not sure how I can explain it.  GMAC would

Page 27

1    be the holder and the owner of the mortgage.  GMAC would

2    be the investor who is in the organization that

3    contributed the fund.  That's really the only way I can

4    explain the relationship of an investor and servicer.

5        Q.   Okay.

6        A.   But that's only to my knowledge.  I mean, I

7    don't work in that fashion.

8        Q.   Okay.  So the servicer is supposed to take on

9    the day-to-day activities of administering the mortgage

10   of loan and collecting payments and so forth?

11       A.   That would be correct.

12       Q.   And they do that on behalf of the investor who

13   loaned the monies?

14       A.   Yes.

15       Q.   Okay.  And any monies that are received from

16   the servicers, would they really be for the investor

17   then to pay him back the loan?

18       A.   I don't know.

19       Q.   Okay.  And as custodian, also, that would mean

20   that they are in possession of the mortgage file,

21   essentially, the note and any other applicable

22   documents?

23       A.   That's correct.

24       Q.   Okay.  All right.  Where it has the pool

25   number and it is blacked out.  Do you know what the pool

1      number refers to?

2            A.    No, I don't.

3            Q.    No.   Okay.   And what about the investor loan

4      number?

5            A.    Yes, I understand what that is.

6            Q.    And what would that relate to?

7            A.    Every investor would have their own loan

8      number.  The same as GMAC would have their own loan

9      number to classify the different files.

10           Q.    Okay.   And are you aware of how a mortgage

11     that has been securitized, a mortgage note that's been

12     securitized, would be reflected on something like this,

13     on this summary?

14           A.    I am not familiar.

15           Q.    You are not familiar.   Okay.   Are you aware of

16     anyone at GMAC Mortgage, LLC that has access to these

17     MERS documents and records?

18           A.    No, I'm not.

19           Q.    You are not aware.   Okay.   Are you aware of

20     anybody at GMAC that would have a responsibility to

21     update the MERS documentation?

22           A.    No.

23           Q.    Okay.   So the various individuals at GMAC that

24     execute assignments on behalf of MERS have no

25     responsibility to update the MERS' system that they had

Page 29

1      actually done those assignments or anything like that?

2          A.    That would be correct.

3          Q.    Okay.  Are you aware then of how the MERS'

4      system is updated?

5          A.    No.

6          Q.    Okay.  As a vice president, do you owe a

7      fiduciary duty to the original lender to ensure that the

8      mortgage is assigned to the proper entity?

9              MS. ARROYAVE:   Objection: Form.

10             THE WITNESS:   I actually don't understand your

11         question.

12     BY MR. IMMEL:

13         Q.    Do you own any duty to the -- when you assign

14     these mortgages, you execute them as -- for MERS as

15     nominee for a particular entity, correct?

16         A.    That would be correct.

17         Q.    Do you owe any responsibility then to that

18     particular entity that MERS is nominee for to ensure

19     that the mortgage is transferred to the new correct

20     entity?

21         A.    I don't know.

22         Q.    Okay.  All right.

23             MR. IMMEL:   I have the corporate resolution

24         here.  Which I'll enter it as Exhibit D.

25

Page 30

1              (Defendant's Exhibit Letter D was marked for

2         identification.)

3     BY MR. IMMEL:

4         Q.    Have you seen this document before?

5         A.    Yes, I have.

6         Q.    When was the first time you saw it?

7         A.    I'm sorry, I can't say.  I don't recollect.

8         Q.    You're not sure.  Is it fair to say it was

9     quite a while ago?

10        A.    Yes.

11        Q.    Did you have any role in creating it or

12    negotiating it?

13        A.    No, I did not.

14        Q.    No.  Okay.  The first paragraph says that you

15    are authorized to assign a lien of any mortgage loan

16    registered on the MERS register to the member.

17             Who would be the member according to this?

18    Would that be GMAC Mortgage, LLC?

19        A.    I don't know.

20        Q.    Okay.  Assign the lien, in paragraph 2, of any

21    mortgage loan naming MERS as the mortgagee when the

22    member is also the current promissory note-holder, or if

23    the mortgage loan is registered on the MERS system, is

24    shown to be registered to the member.

25             When you are assigning liens, you already

12-12020-mg   Doc 88[illegible]   Filed 07/09/15   Entered 07/09/15 13:39:14   Exhibit
Exhibit [illegible] Stephen Depo Transcript   Pg 21 of 69
Ghisor & Associates
Reporting and Transcription, Inc.

Page 31

```
 1    stated that you don't consult with any of the MERS

 2    records to determine whether or not it's registered to

 3    who -- whoever?

 4              MS. ARROYAVE:  Objection:  Form.  Asked and

 5         answered.  Mischaracterization of prior testimony.

 6    BY MR. IMMEL:

 7         Q.   Okay.  You don't consult MERS system when

 8    assigned these liens?

 9         A.   Yes.

10              MS. ARROYAVE:  Asked and answered.

11    BY MR. IMMEL:

12         Q.   All right.  Okay.  But is it fair to say that

13    you don't ascertain whether the member is the current

14    promissory note-holder when you assign the lien?

15         A.   That would be correct.

16         Q.   And you also don't know if the mortgage loan

17    is registered on the MERS system?

18         A.   We are relying on our attorney network when

19    they check the title --

20         Q.   Okay.

21         A.   -- to verify what title it is presently in.

22    If it is MERS, we would sign for MERS.

23         Q.   Okay.

24              MR. IMMEL:  Exhibit E.

25
```

Grisor & Associates
Reporting and Transcription, Inc.

Page 32

1              (Defendant's Exhibit Letter E was marked for

2         identification.)

3    BY MR. IMMEL:

4         Q.   Here is the GMAC Mortgage, LLC certificate of

5    assistant secretary.  Here you go.

6              And you are considered a limited signing

7    officer giving you basically the same responsibility as

8    a junior officer?

9              MS. ARROYAVE:  Objection:  Form.

10             THE WITNESS:  I don't know if that's a correct

11        statement.

12   BY MR. IMMEL:

13        Q.   Okay.  Are you familiar with this document?

14        A.   I have a copy of this document.  Which to my

15   recollection means that next to my name it gives me the

16   authority to sign for GMAC and its entities as a limited

17   signing officer.

18        Q.   Okay.  In this case, you also filed an

19   affidavit of lost original document?

20             MS. ARROYAVE:  Objection:  Form.

21   BY MR. IMMEL:

22        Q.   Okay.  And you executed this document.  Is

23   this your signature?  Here is a copy of it.

24             MR. IMMEL:  I'll enter this as Exhibit F, I

25        believe.

Crisor & Associates
Reporting and Transcription, Inc.

Page 33

1              (Defendant's Exhibit Letter F was marked for

2          identification.)

3              THE WITNESS:  Yes, that is my signature.

4     BY MR. IMMEL:

5          Q.    Okay.  And you signed this affidavit claiming

6     that at the time plaintiff was not presently in custody

7     or control of plaintiff or any of plaintiff's agents,

8     and that would be the note that was not in your -- their

9     custody or control?

10         A.    Yes.  Once again, we have a process in place

11    where if our attorney needs an original document, they

12    open up a request in our system.  At that time, we have

13    another unit -- which is not located in Pennsylvania

14    where I am located -- contact custodians, contact their

15    own records, go to different investors.  They do not do

16    an affidavit of this fashion unless they've exhausted

17    all efforts.

18         Q.    Okay.  Would it be fair to say that you're not

19    involved in any of those efforts?

20         A.    That is fair to say.

21         Q.    Okay.  Why then do they ask you to execute the

22    affidavit of lost document -- lost original document?

23         A.    They asked me to execute this for the

24    foreclosure department.  Because after conversations

25    between the attorney and this other department, they

Page 34

1    determine that it is not available.  I am the

2    foreclosure team lead that handles document execution.

3         Q.   Okay.  So would it be accurate to say that the

4    department that actually searches for the lost note

5    would have a better understanding of why it's lost and

6    where the search occurred?

7         A.   That is a fair statement.

8         Q.   Okay.  It says that the copy of said note

9    attached to the complaint is a true and correct and

10   substantial copy of the lost or destroyed note.

11        Do you review any documents before executing

12   the affidavits of lost original documents?

13        A.   No, I do not.  I review this.  Let me change

14   this.  Excuse me.  I do review this.  However, I do not

15   review any documents.  I rely, once again, on my

16   attorney network who is requesting the document, and

17   communications between the departments to determine if

18   it's -- if a lost affidavit is needed.

19        Q.   Okay.  So the portion that sets claims in

20   paragraph 1:  Affiant has custody and personal knowledge

21   of the account pertaining the original mortgage loan

22   instruments.  Affiant has actual and personal knowledge

23   of the facts stated herein and is authorized to make

24   this affidavit.  Would that be accurate?

25        A.   Yes, that is accurate.

Prisor & Associates
Reporting and Transcription, Inc.

Page 35

1              Q.    You being the affiant have custody and

2       personal knowledge of the account pertaining to the

3       original mortgage loan instruments?

4                   MS. ARROYAVE:  Object to the form.  Go ahead.

5                   THE WITNESS:  I do not have the specific

6              knowledge to this one account.  But I understand

7              what the other department does in general to try to

8              locate these documents.

9       BY MR. IMMEL:

10             Q.    Okay.  All right.  And so in this particular

11      case, the -- there was no note attached to the

12      complaint.  You would have no way of ascertaining that

13      because you don't actually review?

14             A.    That, once again, is determined by our

15      attorneys' office.

16             Q.    Okay.  I'm going to just -- I have a

17      substantial copy of the complaint.  And just to show

18      that there is no note attached to it, that was the

19      original filing of the complaint.

20                   You have never reviewed that, nor do you

21      review any other note to determine whether it is, in

22      fact, a true, correct and substantial copy of the lost

23      or destroyed note?

24                   MS. ARROYAVE:  Objection:  Form.

25                   THE WITNESS:  Can you rephrase that for me?  I

Reporting and Transcription, Inc.

Page 36

1        don't completely follow what you are saying.

2    BY MR. IMMEL:

3        Q.    When you execute the affidavit of lost

4    original document, and make the claim that you've seen a

5    copy of the note that is attached and that's a

6    substantial copy, you really have no basis for making

7    that claim.

8            THE WITNESS:    I'm still not following.

9            MS. ARROYAVE:    Objection:    Form.

10   BY MR. IMMEL:

11       Q.    When the complaint in this case was filed,

12   there was no note attached to the complaint, correct?

13       A.    From what you have just handed to me, there is

14   no note.

15       Q.    Okay.    Based on what I've provided you.

16       A.    Yes.

17       Q.    Do you normally review notes to make sure that

18   they are a true copy of the lost note?

19           MS. ARROYAVE:    Objection:    Form.

20           THE WITNESS:    That is -- no, I do not.    It is

21           not in my position.

22   BY MR. IMMEL:

23       Q.    It's not in your position.

24           MR. IMMEL:    All right.    I guess I can enter

25           this a Exhibit G.

Page 37

1              (Defendant's Exhibit Letter G was marked for

2          identification.)

3    BY MR. IMMEL:

4          Q.    And going back, just for a second, to the lost

5    note affidavit.  That is your signature?

6          A.    Yes, that's correct.

7          Q.    And your understanding is that the attorney

8    representing -- from your network drafts this?

9          A.    That is correct.

10         Q.    Okay.

11              MR. IMMEL:  This is going to be Exhibit H.

12              (Defendant's Exhibit Letter H was marked for

13          identification.)

14   BY MR. IMMEL:

15         Q.    This is a copy of the note filed after the

16   complaint in this case.  I don't have the notice of

17   filing page.

18              Have you ever seen this document before?

19         A.    I have seen these documents.  I have not seen

20   this document.

21         Q.    Okay.  And this wouldn't have been the

22   document that you reviewed in executing the lost note

23   affidavit?

24         A.    No.  We do not -- once again, we do not review

25   the note.  Our attorney determines that the note is not

**Crisor & Associates**
Reporting and Transcription, Inc.

Page 38

1       available through our processes.

2              Q.    Okay.

3                    MR. IMMEL:   This would be Exhibit I.

4                    (Defendant's Exhibit Letter I was marked for

5              identification.)

6       BY MR. IMMEL:

7              Q.    This is the newly found note.   Here.   And as

8       you can see, if you could compare the two notes, one has

9       a couple of additional endorsements.   Whereas, the

10      previous one did not.   Is that correct?

11             A.    That is what I observe here, yes.

12             Q.    Okay.   In the review of the two notes and the

13      endorsements that are on them, have you seen this type

14      of situation before where one note that's been filed in

15      the case is partially endorsed and the other is a more

16      complete record of endorsements?

17             A.    No, I have not.

18             Q.    In following along the endorsements, can you

19      determine who was the last owner of the note prior to

20      your companies?

21             A.    I'm sorry.   Can you rephrase that for me?

22             Q.    Can you determine who GMAC Mortgage, LLC has

23      acquired the mortgage note from?

24             A.    The first endorsement I see here has a date.

25      It says, Mortgage Investor Corporation.   It's signed on

Page 39

1    February 27th, I believe, that's 2002.

2         Q.   All right.  And they were the original lender.

3    And then, as you can see, there is another endorsement

4    there to, I believe, GMAC Mortgage Corporation.  And

5    there is also one GMAC Bank.  Correct?

6         A.   That is correct according to the observation

7    that I see on this document.

8         Q.   So would you need an assignment from -- why do

9    you assign the MERS -- as a vice president of MERS, why

10   do you assign the MERS -- I'm sorry.  Let me start over

11   there.

12            Why do you execute the assignment of mortgage

13   on behalf of MERS as nominee for the original lender and

14   not the last lender?

15            MS. ARROYAVE:  Objection:  Form.

16            THE WITNESS:  Because as you stated, it's an

17        assignment of mortgage.  It's not an assignment of

18        note.

19   BY MR. IMMEL:

20        Q.   Right.

21        A.   That's the only way I can answer that.  The

22   mortgage itself, which we've both reviewed, states that

23   it's MERS as a nominee for Mortgage Investor

24   Corporation.

25        Q.   Okay.  So would you agree then that as the

Page 40

1    note was transferred through these endorsements to new

2    note-holders and owners that MERS remained the

3    mortgagee?

4              MS. ARROYAVE:  Objection:  Form.

5              THE WITNESS:  I wouldn't have that knowledge.

6    BY MR. IMMEL:

7         Q.   Okay.  It's your understanding that MERS does

8    not assign the mortgage every time the note is

9    transferred; is that correct?

10             MS. ARROYAVE:  Objection:  Form.

11             THE WITNESS:  I wouldn't have that knowledge

12        either.

13   BY MR. IMMEL:

14        Q.   Okay.  All right.  Do you know who would have

15   that knowledge?

16        A.   No, I do not.

17        Q.   Okay.  All right.

18             MR. IMMEL:  And we have here defendant's

19        request for production regarding the Jeffrey

20        Stephan documents.  That will be Exhibit J.

21             (Defendant's Exhibit Letter J was marked for

22        identification.)

23   BY MR. IMMEL:

24        Q.   Have you seen that document before?

25        A.   I have not seen this document until recently

12-12020-mg    Doc 8???    Filed 07/09/15    Entered 07/09/15 13:39:14    Exhibit
Exhibit ??? Stephan Depo Transcript ??? Pt 41 of 69

Reporting and Transcription, Inc.

Page 41

1    when I found out that I was coming here.

2           Q.    Okay.   And also we have the response to the

3    request for production regarding the Jeffrey Stephan

4    document.

5           MR. IMMEL:   That will be marked as Exhibit K.

6           (Defendant's Exhibit Letter K was marked for

7           identification.)

8    BY MR. IMMEL:

9           Q.    I'm going to direct you to paragraph 5 where

10   there has been an objection based on our request for all

11   MERS system documents, records, computer data, or other

12   MERS information reviewed by Jeffrey Stephan prior to

13   executing the assignment of mortgage filed in this case

14   to determine the proper SNE.

15          It's been objected to as vague and ambiguous

16   and improperly presumes that plaintiff has custody or

17   control over any MERS system documents.

18          As a MERS vice president, you don't have

19   access to any MERS system documents?

20          A.    No, I do not.

21          Q.    Okay.

22          A.    I do not work for MERS.

23          Q.    Okay.   And so you don't actually review any

24   documents prior to executing the assignment of mortgage?

25          MS. ARROYAVE:   Asked and answered.

12-12020-mg   Doc 8[...]   Filed 07/09/15   Entered 07/09/15 13:39:14   Exhibit
Exhibit [...] Stephen [...] Depo Transcript   Pg 42 of 69

Reporting and Transcription, Inc.

1    BY MR. IMMEL:

2         Q.    Okay.  And are there any -- do you receive any

3    letters, e-mails, or other correspondence from other

4    departments that have given you any instruction on any

5    of the documents which you execute?

6         A.    No.

7         Q.    No.  And in paragraphs -- request No. 7, as

8    far as the search for the lost note, you didn't actually

9    partake in that search.  So you are not aware of any of

10   the locations searched, other than by other people?

11        A.    That's correct.

12        Q.    Do you know who those people would be that

13   searched for the note?

14        A.    There is a team that's in our Minnesota

15   office.  I am not familiar with who would actually

16   search for the said document.

17        Q.    What is the name of that team?  Do you know

18   the name of that team?

19        A.    I don't have a formal name for them.  I call

20   them document control.  But that's my own name for them.

21        Q.    Okay.  All right.  You said that the attorneys

22   representing you prior in this case only ask you to

23   execute the lost note affidavit after a substantial

24   effort has occurred?

25              MS. ARROYAVE:  Objection.  That goes into the

Page 43

1          attorney-client privilege.

2     BY MR. IMMEL:

3          Q.    As far as you understand, a substantial search

4     for the lost note has already occurred by various people

5     within your team, other teams within GMAC at the request

6     of the attorneys?

7          A.    Within GMAC the lost note affidavit or lost

8     instrument affidavit would not be executed until

9     everything has been exhausted.

10         Q.    Okay.  Is it common for a lost note affidavit

11    to be executed and then later the note to be found?

12         A.    I don't know.

13         Q.    You're not sure.  Okay.  Earlier you were

14    mentioning that now you work for GMAC, LLC; is that

15    correct?

16         A.    That is correct.

17         Q.    And you still execute documents as GMAC

18    Mortgage, LLC limited signing officers, as well?

19         A.    That's the same thing you just stated.

20         Q.    Right.  One they dropped the name -- the

21    mortgage from the name, and one they haven't; is that

22    correct?

23         A.    No.

24         Q.    No.

25         A.    One they dropped corporation and changed it to

Grison & Associates

Reporting and Transcription, Inc.

Page 44

1      LLC.

2           Q.   Oh, okay.

3           A.   They became a limited liability company.

4      That's what LLC stands for.

5           Q.   Okay.  You said that there was an -- initially

6      there was a referral from the referral department to the

7      attorneys?

8           A.   That would be correct.

9           Q.   Do you ever review any of those documents in

10     your duties as executing these other documents?

11          A.   No.

12          Q.   So I'm going to turn to the -- this is the

13     note of authenticity ownership interrogatories limited

14     answers.  Here you are.

15               MR. IMMEL:  That will be Exhibit L.

16               (Defendant's Exhibit Letter L was marked for

17               identification.)

18     BY MR. IMMEL:

19          Q.   Do you know, I think, it is Juan A. Aquirre?

20          A.   I do not know him.  But I am familiar with his

21     name.

22          Q.   Okay.  Are you familiar with his duties?  He's

23     a senior litigation analyst.

24          A.   Yes.

25          Q.   Do you know if he's a senior litigation

Grissom & Associates
Reporting and Transcription, Inc.

Page 45

1    analyst for GMAC Mortgage, LLC, or are there other

2    entities that he works for?

3          A.    I honestly do not know.

4          Q.    Okay.  Would he be part of the document team

5    in Minnesota that may find a note?

6          A.    No.

7          Q.    No.  Okay.  Would he be somebody, do you know,

8    if in his duties he's somebody that searches for lost

9    documents?

10         A.    No.

11         Q.    Okay.

12               MS. ARROYAVE:  Is that, no, you don't know?

13               THE WITNESS:  No.  He does not do that.

14   BY MR. IMMEL:

15         Q.    He doesn't do that.  Do you know what his

16   duties are?

17         A.    As it states here, he is a senior litigation

18   analyst.  I'm not sure of what his exact

19   responsibilities would be.

20         Q.    Okay.  But searching for lost documents

21   wouldn't be one of his responsibilities, more than

22   likely?

23         A.    No, it would not be.

24         Q.    Okay.  And here are plaintiff's amended

25   answers.  Okay.

1              MR. IMMEL:  I'll mark it as Exhibit M.

2              (Defendant's Exhibit Letter M was marked for

3          identification.)

4     BY MR. IMMEL:

5          Q.   It asks to identify all persons and/or

6     entities who are the current beneficial owners of, or

7     who have a beneficial or equitable interest in the

8     promissory note.  And Federal National Mortgage

9     Association has been identified, Fannie Mae.

10             Are you aware -- and then if you look at No.

11    3, it says, Please identify all person and/or entities

12    who are current legal owners of, or who have legal

13    interest in the promissory note.

14         A.   I don't have the same affidavit you have.

15         Q.   Okay.  Defendant's note.  Do you have the

16    mortgage loan?

17         A.   That's the mortgage loan.

18         Q.   Okay.

19             MS. ARROYAVE:  What has been introduced?  Has

20         this set of interrogatory been --

21             MR. IMMEL:  Yes.

22             MS. ARROYAVE:  But not the other?

23             MR. IMMEL:  No.  This was also entered,

24         correct?

25             THE COURT REPORTER:  I think it was the last

Page 47

1        one.

2        BY MR. IMMEL:

3            Q.   So if you look at paragraphs 2 and 3, can you

4        explain to me why Fannie Mae would have the beneficial

5        or equitable interest in the promissory note, based on

6        your understanding?

7                    MS. ARROYAVE:   Objection.   It calls for a

8                legal conclusion.

9                    THE WITNESS:   No, I can't.

10       BY MR. IMMEL:

11           Q.   And earlier when we discussed the MERS

12       documentation where Ginnie Mae was identified as the

13       investor, would it be fair to say that the beneficial or

14       equitable interest would actually lie with the person

15       who made the loan?

16                   MS. ARROYAVE:   Objection.   It calls for a

17               legal conclusion.

18                   THE WITNESS:   I don't have that knowledge.

19       BY MR. IMMEL:

20           Q.   Okay.   And based on the MERS documentation

21       that I presented to you earlier, where the investor was

22       identified as Ginnie Mae.   In paragraph 5 here, they are

23       identifying Fannie Mae as the investor.

24                   Do you have any understanding of -- as to why

25       those two things would --

Page 48

1       A.    No, I don't.

2       Q.    -- there would be a discrepancy there?  Okay.

3   All right.

4             And going back to the mortgage loan ownership

5   and the interrogatories one more time.  Can you explain

6   why one entity would have the beneficial interest and

7   another entity would have a legal interest --

8             MS. ARROYAVE:  Objection.  It calls for a

9             legal conclusion.

10  BY MR. IMMEL:

11      Q.    -- based on your company's protocols?

12      A.    I don't have that knowledge.

13      Q.    Okay.  GMAC Mortgage owns some loans and

14  services other; is that correct?

15      A.    To my knowledge that would be a correct

16  statement.

17      Q.    Okay.  Do they -- and then in other instances,

18  they both own loan and service the loan?

19      A.    That would be a fair statement.

20      Q.    Okay.  Is it possible that GMAC Mortgage is

21  the servicer for this loan and another entity -- whether

22  it be Fannie Mae, Ginnie Mae, or any other entity --

23  perhaps is the owner and GMAC is just the servicer?

24      A.    That's possible.  But I'm not familiar enough

25  to say yes or no.

Page 49

1              Q.    Okay.  All right.  I'm just going to go over

2       the notice of taking the deposition duces tecum.

3                    (Defendant's Exhibit Letter N was marked for

4              identification.)

5       BY MR. IMMEL:

6              Q.    All right.  This is -- and just for the

7       record, Exhibit A, if you would turn to that.  This is a

8       list of the documents that we requested that you bring.

9       A request for production.  And you provided some of them

10      earlier.

11                   I just wanted to go over it and see if you

12      brought any of these documents today, or if you were

13      just relying on what was produced in the request for

14      production.  Okay?

15                   The deponent's most recent curriculum vitae?

16             A.    I didn't feel I needed to bring that.  That's

17      personal.

18             Q.    Okay.  You actually provided the corporate

19      resolution for MERS and for GMAC.  You presented the

20      list of certifying officers.  And the MERS system

21      documents records, you already stated that you don't

22      have any access.

23                   Your team brings you the documents.  And you

24      don't receive any direct communication from the

25      attorneys that draft them?

Grison & Associates
Reporting and Transcription, Inc.

Page 50

1          A.     The only type of communication I would receive

2      from an attorney is if a document is late in being

3      returned.

4          Q.     Okay.  All right.  And it would be fair to say

5      that your primary responsibility is to create and

6      execute these documents, not to actually do any of the

7      underlying duties of ascertaining specific knowledge or

8      information about them, correct?

9              MS. ARROYAVE:  Objection:  Form.  Asked and

10             answered.

11             THE WITNESS:  And the answer to that would be,

12             no.

13             MR. IMMEL:  All right.  I think that's most of

14             it.  Just let me have on second to review, but I

15             think that's most of it.  All right.  I think that

16             should do it for today.

17             Thank you very much for traveling here.

18             MS. ARROYAVE:  I have a few questions.

19             MR. IMMEL:  Yeah.  I'm sorry about that.

20             MS. ARROYAVE:  You can't have all of the fun.

21      Can I look at the exhibits?

22                   CROSS (JEFFREY STEPHAN)

23      BY MS. ARROYAVE:

24          Q.     I'm going to show you what has been previously

25      marked as Defendant's Exhibit C to your deposition.

Page 51

1             Do you have any knowledge of how this document

2    is created?

3         A.   No.

4         Q.   Do you have any knowledge as to whether the

5    information in this document is accurate?

6         A.   No.

7         Q.   Do you know how this is prepared?

8         A.   No.

9         Q.   Okay.  Let me show you what has been

10   previously marked as Defendant's Exhibit A to your

11   deposition.  It is the assignment of mortgage.

12            The information that is used to prepare this

13   mortgage is kept in GMAC Mortgages' business records; is

14   that correct?

15        A.   Yes.

16        Q.   And these business records from where this

17   information came from were created by persons in GMAC

18   Mortgage, employees of GMAC Mortgage, right?

19        A.   Yes.

20        Q.   And the information was entered into the

21   computer system by these GMAC Mortgage employees at the

22   time that they became aware of the information?

23        A.   Yes.

24        Q.   And they had a business duty to enter the

25   information into the computer system; is that correct?

Prisor & Associates
Reporting and Transcription, Inc.

Page 52

1        A.    Yes.

2        Q.    And this information, these business records

3   are kept within the course and scope of GMAC's regularly

4   conducted business activities; is that correct?

5        A.    I'm going to say yes.

6        Q.    Okay.  I'm going to show you what has been

7   previously marked as Defendant's Exhibit F to your

8   deposition.  And it's the affidavit of lost original

9   document.

10            Is the information you used to prepare this

11  lost original document kept in GMAC Mortgages' business

12  records?

13       A.    I don't understand the question.

14       Q.    Okay.  The information in the lost original

15  document, is that -- GMAC Mortgage is the owner and

16  holder of the note, correct?

17       A.    Yes.

18       Q.    Is that information kept within the course and

19  scope of GMAC's business records?

20       A.    Yes.

21       Q.    And the information in GMAC's business records

22  are entered by persons with knowledge of the information

23  that GMAC is the owner of the note?

24            MR. IMMEL:  Objection:  Leading.

25            THE WITNESS:  Can you rephrase it?  I'm not

Page 53

1          sure if I follow what you are saying.

2      BY MS. ARROYAVE:

3          Q.   The business records that GMAC has regarding

4      whether it is the original -- whether it is the owner of

5      the note, was entered by persons that have personal

6      knowledge of whether GMAC is the owner of the note; is

7      that correct?

8          A.   I honestly don't know.  I do not work in those

9      departments.

10         Q.   Okay.

11              MS. ARROYAVE:  I have nothing further.

12                   REDIRECT (JEFFREY STEPHAN)

13     BY MR. IMMEL:

14         Q.   I would just ask:  The assignment of the

15     mortgage and the information on it, this is not created

16     by anyone at -- this specific document isn't actually

17     created by a member or a worker for GMAC Mortgage, it is

18     actually created by the attorney?

19         A.   Yes.

20         Q.   Okay.  So the attorney would have to be

21     relying on business records of GMAC Mortgage in forming

22     this?

23         A.   That would be correct.

24         Q.   Okay.  And as to the lost note, this too is

25     created by the attorney, correct?

Grisol & Associates

Reporting and Transcription, Inc.

```
 1        A.   That is correct.

 2        Q.   Okay.

 3             MR. IMMEL:  All right.  That does it.

 4             MS. ARROYAVE:  That's it.

 5             MR. IMMEL:  All right.  Thank you.

 6             MS. ARROYAVE:  We will read.

 7             THE COURT REPORTER:  Okay.

 8             (Witness excused.)

 9             (Deposition was concluded.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**Ensor & Associates**

Reporting and Transcription, Inc.

Page 55

1                    CERTIFICATE OF OATH

2       THE STATE OF FLORIDA

3       COUNTY OF PALM BEACH

4

5

6            I, the undersigned authority, certify that Jeffrey

7       Stephan personally appeared before me and was duly

8       sworn.  Dated the 10th day of December, 2009.

9

10           Dated this 22nd day of December, 2009.

11

12

13           Jamie Reynolds Bentley

14

         Jamie Reynolds Bentley, Court Reporter

15       Notary Public - State of Florida

         My Commission Expires:  7/20/2013

16       My Commission No.:  DD 453053

17

18

19

20

21

22

23

24

25

Prisor & Associates

Reporting and Transcription, Inc.

```
 1                    C E R T I F I C A T E
 2      THE STATE OF FLORIDA
 3      COUNTY OF PALM BEACH
 4
 5           I, Jamie Reynolds Bentley, Court Reporter and
        Notary Public in and for the State of Florida at
 6      large, do hereby certify that I was authorized to
        and did report said deposition in stenotype; and
 7      that the foregoing pages are a true and correct
        transcription of my shorthand notes of said
 8      deposition.
 9           I further certify that said deposition was
        taken at the time and place hereinabove set forth
10      and that the taking of said deposition was commenced
        and completed as hereinabove set out.
11
             I further certify that I am not attorney or
12      counsel of any of the parties, nor am I a relative
        or employee of any attorney or counsel of party
13      connected with the action, nor am I financially
        interested in the action.
14
             The foregoing certification of this transcript
15      does not apply to any reproduction of the same by
        any means unless under the direct control and/or
16      direction of the certifying reporter.
17           Dated this 22nd day of December, 2009.
18
19
20      _____
             Jamie Reynolds Bentley, Court Reporter
21
22
23
24
25
```

```
                                                      Page 57
 1      DATE:       December 31, 2009
 2      TO:         Jeffrey Stephan
 3      IN RE:      GMAC Mortgage, LLC vs Ann M. Neu, Michelle Perez,
        Douglas William
 4
        CASE NO.:   50 2008 CA 040805XXXX   MB
 5
 6           Please take notice that on Thursday, the 10th
        of December, 2009, you gave your deposition in the
        above-referred matter.  At that time, you did not
 7      waive signature.  It is now necessary that you sign
        your deposition.
 8           Please call our office at the below-listed
        number to schedule an appointment between the hours
 9      of 9:00 a.m. and 4:30 p.m., Monday through Friday,
        at the Consor & Associates office located nearest
10      you.
             If you do not read and sign the deposition
11      within a reasonable time, the original, which has
        already been forwarded to the ordering attorney, may
12      be filed with the Clerk of the Court.  If you wish
        to waive your signature, sign your name in the blank
13      at the bottom of this letter and return it to us.
14                          Very truly yours,
15
16           _____
17                          Jamie Reynolds Bentley, Court Reporter
                            Consor & Associates
18                          1655 Palm Beach Lakes Blvd., Suite 500
                            West Palm Beach, Florida 33401
19
20      I do hereby waive my signature.
21      _____
22      Jeffrey Stephan
23      I do hereby waive my signature:
24      Cc:  Via transcript:  Chrisopher Immel,Esquire
25      File copy
```

Crisor & Associates
Reporting and Transcription, Inc.

```
 1                  C E R T I F I C A T E

 2                      -   -   -

 3       THE STATE OF FLORIDA

 4       COUNTY OF PALM BEACH

 5            I hereby certify that I have read the foregoing

 6       deposition by me given, and that the statements

 7       contained herein are true and correct to the best of

 8       my knowledge and belief, with the exception of any

 9       corrections or notations made on the errata sheet,

10       if one was executed.

11

12            Dated this _____ day of _____,

13       2009.

14

15

16

17

18       _____

19       JEFFREY STEPHAN

20

21

22

23

24

25
```

Ph
̃sor & Associates
Reporting and Transcription, Inc.

```
                                                         Page 59
 1                    E R R A T A   S H E E T
 2    IN RE: GMAC MORTGAGE, LLC VS ANN M. NEU, MICHELLE PEREZ,
      DOUGLAS WILLIAM
 3    CR: JAMIE REYNOLDS BENTLEY
      DEPOSITION OF: JEFFREY STEPHAN
 4    TAKEN: 12/10/09
 5
 6        DO NOT WRITE ON TRANSCRIPT - ENTER CHANGES HERE
 7    PAGE #  LINE #   CHANGE              REASON

 8    _____

 9    _____

10    _____

11    _____

12    _____

13    _____
14    _____
15    _____
16    _____
17    _____
18    Please forward the original signed errata sheet to this
      office so that copies may be distributed to all parties.
19
      Under penalty of perjury, I declare that I have read my
20    deposition and that it is true and correct subject to any
      changes in form or substance entered here.
21
22    DATE: _____
23
24    SIGNATURE OF DEPONENT:_____
25
```

Sensor & Associates
Reporting and Transcription, Inc.

**A**
able 20:21 26:12
above-referred
  57:6
access 28:16
  41:19 49:22
account 34:21
  35:2,6
accuracy 8:6
  12:19 19:5
accurate 10:6
  12:22,24 17:21
  23:9,13 34:3
  34:24,25 51:5
acquired 38:23
acronym 26:23
acronyms 26:19
action 56:13,13
activities 27:9
  52:4
actual 34:22
additional 38:9
administering
  27:9
affiant 34:20,22
  35:1
affidavit 16:6
  32:19 33:5,16
  33:22 34:18,24
  36:3 37:5,23
  42:23 43:7,8
  43:10 46:14
  52:8
affidavits 6:15
  7:4,10 15:9
  34:12
affirm 4:7
affirmed 4:13
agents 33:7
ago 30:9
agree 39:25
ahead 35:4
Alahamra 2:4
ALEJANDRA

2:3
allow 23:16
ambiguous
  41:15
amended 45:24
analyst 44:23
  45:1,18
and/or 46:5,11
  56:15
Ann 1:8,8 57:3
  59:2
answer 4:21
  10:23 12:8
  39:21 50:11
answered 31:5
  31:10 41:25
  50:10
answers 4:22
  44:14 45:25
anybody 28:20
anybody's 14:18
apparently
  18:15
APPEARAN...
  2:1
appeared 19:20
  55:7
appears 19:7
applicable 27:21
apply 56:15
appointment
  57:8
approximately
  6:22 7:19 10:1
  15:7,15
Aquirre 44:19
area 16:22
ARROYAVE
  2:3 3:8 8:10
  10:21 11:6
  12:3,7 13:5
  15:1 17:23
  18:17 20:3
  21:10,15 22:2
  22:24 23:22

25:5,7 29:9
31:4,10 32:9
32:20 35:4,24
36:9,19 39:15
40:4,10 41:25
42:25 45:12
46:19,22 47:7
47:16 48:8
50:9,18,20,23
53:2,11 54:4,6
ascertain 31:13
ascertained
  21:24
ascertaining
  35:12 50:7
asked 14:16
  31:4,10 33:23
  41:25 50:9
asking 9:20
  12:10,11,21
  16:5
asks 46:5
aspect 16:25
assign 20:8
  21:18 29:13
  30:15,20 31:14
  39:9,10 40:8
assigned 16:21
  29:8 31:8
assigning 24:5
  30:25
assignment
  11:18,25 16:6
  17:9 22:11,20
  23:5,10 39:8
  39:12,17,17
  41:13,24 51:11
  53:14
assignments
  6:14 7:1 14:21
  15:4,8 16:24
  20:22 22:21
  23:17 24:16
  26:9 28:24
  29:1

assistant 8:16
  15:24 16:4
  17:7 32:5
Associates 1:17
  1:22 57:9,17
Association
  26:22 46:9
attached 34:9
  35:11,18 36:5
  36:12
attend 16:12
attention 14:18
attorney 4:19
  9:12,14,20,22
  11:17,19,20
  12:1,14,24
  13:2,3 18:2
  20:10 22:15,16
  31:18 33:11,25
  34:16 37:7,25
  50:2 53:18,20
  53:25 56:11,12
  57:11
attorneys 12:6
  17:21 35:15
  42:21 43:6
  44:7 49:25
attorney-client
  43:1
authenticity
  44:13
authority 32:16
  55:6
authorized
  30:15 34:23
  56:6
available 34:1
  38:1
average 7:10
  10:2
aware 17:6,8
  22:5,8,11 23:2
  24:11,14,15
  26:24 28:10,15
  28:19,19 29:3

42:9 46:10
51:22
a.m 57:9
A/K/A 1:8

**B**
B 3:11,15 24:22
back 13:20
  15:21 27:17
  37:4 48:4
Bank 39:5
base 11:9
based 10:16
  11:4 17:20
  21:24 26:20
  36:15 41:10
  47:5,20 48:11
basically 5:14
  32:7
basis 6:14 16:1
  36:6
Beach 1:1,17,18
  1:23,23 2:11
  55:3 56:3
  57:18,18 58:4
becoming 14:13
behalf 2:2,8
  26:10 27:12
  28:24 39:13
belief 58:8
believe 22:6
  25:3 32:25
  39:1,4
below-listed
  57:8
beneficial 46:6,7
  47:4,13 48:6
Bentley 1:21 4:3
  55:14 56:5,20
  57:17 59:3
best 58:7
better 34:5
bit 4:20
blacked 27:25
blank 57:12

Censor & Associates
Reporting and Transcription, Inc.

**Blvd** 1:17,23
  57:18
**board** 16:12
**bottom** 57:13
**Brenda** 21:1,2
  21:18,20
**bring** 49:8,16
**brings** 7:18,21
  49:23
**brought** 49:12
**bulk** 15:18,19
**business** 51:13
  51:16,24 52:2
  52:4,11,19,21
  53:3,21

**C**
C 3:16 4:1 17:19
  17:21 20:11
  26:1,2 50:25
  56:1,1 58:1,1
**CA** 1:2 57:4
**call** 42:19 57:8
**calls** 47:7,16
  48:8
**case** 1:2 17:10
  32:18 35:11
  36:11 37:16
  38:15 41:13
  42:22 57:4
**catch** 18:22
**cause** 4:5
**Ce** 57:24
**certain** 14:7
  22:17
**certificate** 32:4
  55:1
**certification**
  56:14
**certify** 55:6 56:6
  56:9,11 58:5
**certifying** 49:20
  56:16
**chain** 10:19
**change** 18:8

34:13 59:7
**changed** 43:25
**changes** 59:6,20
**check** 11:21
  31:19
**checked** 10:11
**chose** 18:2
**chosen** 14:25
  15:2,6,7
**Chrisopher**
  57:24
**CHRISTOPH...**
  2:9
**Circle** 2:4
**CIRCUIT** 1:1,1
**claim** 36:4,7
**claiming** 33:5
**claims** 34:19
**classify** 28:9
**clear** 4:22
**Clerk** 57:12
**collecting** 27:10
**come** 9:9
**comes** 9:24
**coming** 41:1
**commenced**
  56:10
**Commission**
  55:15,16
**common** 18:19
  24:15 43:10
**commonplace**
  18:14
**communication**
  49:24 50:1
**communicatio...**
  34:17
**companies**
  23:19 38:20
**company** 14:12
  23:2 44:3
**company's**
  48:11
**compare** 38:8
**compensation**

7:5
**complaint** 34:9
  35:12,17,19
  36:11,12 37:16
**complete** 38:16
**completed** 22:22
  56:10
**completely** 36:1
**computer** 8:3
  11:5,12 41:11
  51:21,25
**concluded** 54:9
**conclusion** 47:8
  47:17 48:9
**conducted** 52:4
**connected** 56:13
**considered** 32:6
**consistent** 16:9
**Consor** 1:17,22
  57:9,17
**consult** 26:10
  31:1,7
**contact** 33:14,14
**contained** 58:7
**contributed**
  27:3
**control** 33:7,9
  41:17 42:20
  56:15
**conversations**
  33:24
**copies** 59:18
**copy** 17:15
  24:19 32:14,23
  34:8,10 35:17
  35:22 36:5,6
  36:18 37:15
  57:25
**Coral** 2:5
**corner** 17:18
**corporate** 29:23
  49:18
**corporation**
  5:10,24 9:1
  23:8 38:25

39:4,24 43:25
**correct** 7:3
  10:12 11:13
  12:20,25 13:3
  15:25 17:2,24
  18:13 21:9,25
  22:1 23:21,23
  24:9 27:11,23
  29:2,15,16,19
  31:15 32:10
  34:9 35:22
  36:12 37:6,9
  38:10 39:5,6
  40:9 42:11
  43:15,16,22
  44:8 46:24
  48:14,15 50:8
  51:14,25 52:4
  52:16 53:7,23
  53:25 54:1
  56:7 58:7
  59:20
**corrections** 58:9
**correspondence**
  42:3
**counsel** 56:12,12
**COUNTY** 1:1
  55:3 56:3 58:4
**couple** 38:9
**course** 7:20 52:3
  52:18
**court** 1:1,21 4:3
  4:7,23 46:25
  54:7 55:14
  56:5,20 57:12
  57:17
**CR** 59:3
**create** 12:12
  50:5
**created** 17:22
  51:2,17 53:15
  53:17,18,25
**creates** 12:2
  13:2
**creating** 30:11

**creation** 20:7
**CROSS** 3:5
  50:22
**current** 30:22
  31:13 46:6,12
**currently** 5:18
  8:23
**curriculum**
  49:15
**custodian** 27:19
**custodians**
  33:14
**custody** 33:6,9
  34:20 35:1
  41:16

**D**
D 3:2,16 4:1
  29:24 30:1
**daily** 6:14
**data** 11:9 41:11
**date** 18:3,4
  38:24 57:1
  59:22
**Dated** 55:8,10
  56:17 58:12
**day** 15:12 18:3
  18:15 19:21
  55:8,10 56:17
  58:12
**days** 15:8,11
**day-to-day** 27:9
**DD** 55:16
**December** 1:14
  55:8,10 56:17
  57:1,6
**declare** 59:19
**deeds** 6:16
**Defendant** 2:8
**Defendants** 1:11
**defendant's**
  3:15,15,16,16
  3:17,17,18,18
  3:19,19,20,20
  3:21,21 17:13

24:22 26:2
30:1 32:1 33:1
37:1,12 38:4
40:18,21 41:6
44:16 46:2,15
49:3 50:25
51:10 52:7
**deliver** 13:17
**department** 6:6
13:12,13,21,22
20:18 33:24,25
34:4 35:7 44:6
**departments**
34:17 42:4
53:9
**DEPONENT**
59:24
**deponent's**
49:15
**deposition** 1:12
4:3,18 49:2
50:25 51:11
52:8 54:9 56:6
56:8,9,10 57:6
57:7,10 58:6
59:3,20
**destroyed** 34:10
35:23
**determine** 20:1
20:21 21:21
31:2 34:1,17
35:21 38:19,22
41:14
**determined**
20:11 35:14
**determines**
20:16 37:25
**difference** 5:5
**different** 8:8
23:19 25:19
28:9 33:15
**direct** 3:5 4:15
41:9 49:24
56:15
**direction** 12:1

56:16
**disagree** 25:4
**discovery** 26:1
**discrepancy**
48:2
**discussed** 47:11
**distributed**
59:18
**document** 6:8
6:16 8:2 16:21
17:22 18:12,15
21:8 26:6 30:4
32:13,14,19,24
33:11,22,22
34:2,16 36:4
37:18,20,22
39:7 40:24,25
41:4 42:16,20
45:4 50:2 51:1
51:5 52:9,11
52:15 53:16
**documentation**
9:19 28:21
47:12,20
**documents** 6:12
7:9,25 8:23
10:7,13 11:8
12:2,5,12,13
13:2 14:4,21
15:9,12,13,15
20:25 27:22
28:17 34:11,12
34:15 35:8
37:19 40:20
41:11,17,19,24
42:5 43:17
44:9,10 45:9
45:20 49:8,12
49:21,23 50:6
**Douglas** 1:8
57:3 59:2
**draft** 49:25
**drafts** 37:8
**dropped** 43:20
43:25

**duces** 49:2
**duly** 4:13 55:7
**duties** 7:25
44:10,22 45:8
45:16 50:7
**duty** 29:7,13
51:24

**E**

**E** 3:2,11,17 4:1
4:1 31:24 32:1
56:1,1 58:1,1
59:1,1,1
**earlier** 8:20
17:20 20:14
43:13 47:11,21
49:10
**easier** 7:14
23:18
**effort** 42:24
**efforts** 33:17,19
**either** 11:4
14:11 40:12
**Electronic** 15:22
23:6,10,15
25:1
**employed** 5:21
**employee** 14:10
56:12
**employees** 6:22
14:7 19:1
51:18,21
**endorsed** 38:15
**endorsement**
38:24 39:3
**endorsements**
38:9,13,16,18
40:1
**ensure** 12:25
29:7,18
**enter** 17:12
24:20 25:25
29:24 32:24
36:24 51:24
59:6

**entered** 46:23
51:20 52:22
53:5 59:20
**entities** 5:14,18
8:8,12,17
32:16 45:2
46:6,11
**entitled** 26:6
**entity** 8:6 9:12
20:16 23:16
24:1,1 25:19
29:8,15,18,20
48:6,7,21,22
**entries** 26:13
**equitable** 46:7
47:5,14
**errata** 58:9
59:18
**ESQ** 2:3,9
**essentially** 27:21
**estimate** 7:12,20
**EX** 3:15,15,16
3:16,17,17,18
3:18,19,19,20
3:20,21,21
**exact** 15:20
45:18
**exactly** 9:12
**EXAMINATI...**
4:15
**examined** 4:13
**example** 11:18
**exception** 58:8
**excuse** 18:8
34:14
**excused** 54:8
**execute** 6:13,14
7:1 8:1 11:9
12:2 13:15
14:4 15:5,9
16:24 20:2
24:16 28:24
29:14 33:21,23
36:3 39:12
42:5,23 43:17

50:6
**executed** 10:14
17:10 18:16
19:22 22:12
32:22 43:8,11
58:10
**executes** 12:5
**executing** 7:4,10
10:3 15:8
16:21 26:9
34:11 37:22
41:13,24 44:10
**execution** 6:8
34:2
**exhausted** 33:16
43:9
**Exhibit** 17:12,13
24:22 25:25
26:2 29:24
30:1 31:24
32:1,24 33:1
36:25 37:1,11
37:12 38:3,4
40:20,21 41:5
41:6 44:15,16
46:1,2 49:3,7
50:25 51:10
52:7
**ExhibitB** 24:21
**exhibits** 50:21
**exist** 5:18 24:16
**existed** 5:16
**expected** 21:14
**Expires** 55:15
**explain** 21:11
26:25 27:4
47:4 48:5
**e-mails** 42:3

**F**

**F** 3:17 32:24
33:1 52:7 56:1
58:1
**face** 10:10 21:9
21:13 23:6

fact 35:22
facts 34:23
fair 30:8 31:12
  33:18,20 34:7
  47:13 48:19
  50:4
familiar 28:14
  28:15 32:13
  42:15 44:20,22
  48:24
Fannie 46:9
  47:4,23 48:22
far 7:10 24:11
  24:14 26:19
  42:8 43:3
fashion 27:7
  33:16
February 39:1
Federal 46:8
feel 49:16
feels 14:15
fees 14:13
fiduciary 29:7
FIFTEENTH
  1:1
file 9:11,14
  22:16 27:20
  57:25
filed 32:18 36:11
  37:15 38:14
  41:13 57:12
files 21:21 28:9
filing 22:22
  35:19 37:17
financially
  56:13
find 45:5
finishes 10:22
first 4:13 11:16
  24:19 26:13
  30:6,14 38:24
five 5:22,25 6:3
  15:10,11
Florida 1:1,18
  1:22,23 2:5,11

4:4 55:2,15
  56:2,5 57:18
  58:3
follow 36:1 53:1
following 22:10
  36:8 38:18
follows 4:14
foreclose 9:21
  9:23 11:17
foreclosing
  20:16 21:22
foreclosure 6:5
  9:11,15,15
  20:15,17 22:17
  22:22 33:24
  34:2
foregoing 56:7
  56:14 58:5
form 8:10 11:6
  12:3,7 13:5
  15:1 17:23
  18:17 20:3
  21:10,15 22:2
  22:24 23:22
  29:9 31:4 32:9
  32:20 35:4,24
  36:9,19 39:15
  40:4,10 50:9
  59:20
formal 42:19
format 26:15
formats 26:17
formerly 5:16
forming 53:21
forth 27:10 56:9
forward 59:18
forwarded
  57:11
found 38:7 41:1
  43:11
Friday 57:9
front 19:23
fun 50:20
fund 27:3
further 21:11

53:11 56:9,11
—————
      G
G 3:18 4:1 36:25
  37:1
Gables 2:5
general 35:7
generated 9:15
Ginnie 26:22
  47:12,22 48:22
give 4:8
given 7:14,24
  8:2 9:20 10:2
  11:16 15:16
  17:6 42:4 58:6
gives 32:15
giving 32:7
GMAC 1:3 4:17
  5:4,5,6,7,13,21
  5:23,24 6:17
  6:23 8:16,18
  8:21,23 9:16
  17:1,1 20:2
  21:13 22:20
  23:8 26:25
  27:1 28:8,16
  28:20,23 30:18
  32:4,16 38:22
  39:4,5 43:5,7
  43:14,17 45:1
  48:13,20,23
  49:19 51:13,17
  51:18,21 52:11
  52:15,23 53:3
  53:6,17,21
  57:3 59:2
GMAC's 52:3
  52:19,21
GMCA 5:10
go 12:23 32:5
  33:15 35:4
  49:1,11
goes 9:7 20:15
  42:25
going 15:21

35:16 37:4,11
  41:9 44:12
  48:4 49:1
  50:24 52:5,6
Government
  26:22
guess 6:24 23:18
  36:24
—————
      H
H 3:11,18 37:11
  37:12 59:1
hall 13:11
hand 13:19
  18:21
handed 19:22
  36:13
handles 34:2
head 4:21 24:14
headquarters
  17:4
Heather 18:24
hereinabove
  56:9,10
hold 16:8
holder 27:1
  52:16
honest 7:12 8:17
honestly 14:19
  24:10,17 45:3
  53:8
hours 57:8
hundred 7:17
—————
      I
Ice 2:9
identification
  17:14 24:23
  26:3 30:2 32:2
  33:2 37:2,13
  38:5 40:22
  41:7 44:17
  46:3 49:4
identified 26:21
  46:9 47:12,22

identify 46:5,11
identifying
  47:23
IMMEL 2:9 3:6
  4:16 8:11 11:1
  11:7 12:4,9
  13:6 15:3
  17:12,15,17
  18:1,20 20:6
  21:12,16 22:3
  23:1,24 24:19
  24:24 25:6,8
  26:4 29:12,23
  30:3 31:6,11
  31:24 32:3,12
  32:21,24 33:4
  35:9 36:2,10
  36:22,24 37:3
  37:11,14 38:3
  38:6 39:19
  40:6,13,18,23
  41:5,8 42:1
  43:2 44:15,18
  45:14 46:1,4
  46:21,23 47:2
  47:10,19 48:10
  49:5 50:13,19
  52:24 53:13
  54:3,5
Immel,Esquire
  57:24
improperly
  14:16 41:16
indicating 24:7
  25:3
individual 21:20
individuals
  28:23
information 9:6
  9:9 11:3,8,11
  11:15,16 12:21
  12:24 13:1
  17:22 21:7,17
  26:14,16 41:12
  50:8 51:5,12

12-12020-mg    Doc 8802-2    Filed 07/09/15    Entered 07/09/15 13:39:14    Exhibit
Exhibit ... Stephan Depo Transcript - Pg 64 of 69

Censor & Associates
Reporting and Transcription, Inc.

Page 64

51:17,20,22,25
52:2,10,14,18
52:21,22 53:15
**initial** 11:24
**initially** 44:5
**instance** 22:20
**instances** 48:17
**instructed** 9:21
**instruction** 42:4
**instructs** 9:22
**instrument** 43:8
**instruments**
  34:22 35:3
**interest** 24:8
  46:7,13 47:5
  47:14 48:6,7
**interested** 56:13
**interpretation**
  25:4,11
**interrogatories**
  44:13 48:5
**interrogatory**
  46:20
**interrupt** 10:21
**introduced**
  46:19
**investor** 26:21
  26:21,23 27:2
  27:4,12,16
  28:3,7 38:25
  39:23 47:13,21
  47:23
**investors** 23:7
  33:15
**involved** 33:19

—————— **J** ——————
**J** 3:19 40:20,21
**Jamie** 1:21 4:3
  55:14 56:5,20
  57:17 59:3
**Jeffrey** 1:12 3:6
  3:7 4:12,18 5:2
  40:19 41:3,12
  50:22 53:12

55:6 57:2,22
58:19 59:3
**job** 13:24 14:6
  16:25,25
**Juan** 44:19
**JUDICIAL** 1:1
**junior** 32:8

—————— **K** ——————
**K** 3:20 41:5,6
**keep** 4:20
**keeps** 20:25
**kept** 51:13 52:3
  52:11,18
**kind** 12:17
**know** 6:24 10:2
  14:8,11,17,19
  18:25 19:13,18
  19:25 23:4
  24:6,10,17
  25:23 27:18,25
  29:21 30:19
  31:16 32:10
  40:14 42:12,17
  43:12 44:19,20
  44:25 45:3,7
  45:12,15 51:7
  53:8
**knowledge** 9:11
  9:25 10:14,16
  11:4,19 21:7
  23:16 24:3
  27:6 34:20,22
  35:2,6 40:5,11
  40:15 47:18
  48:12,15 50:7
  51:1,4 52:22
  53:6 58:8
**Kwiatanowski**
  6:19
**K-W-I-A-T-A...**
  6:21

—————— **L** ——————
**L** 3:20 44:15,16

**Lakes** 1:17,23
  57:18
**language** 24:16
**Lapin** 2:3
**large** 4:5 56:6
**late** 50:2
**Law** 20:10
**lawsuit** 22:23
**lead** 6:8 16:21
  21:1 34:2
**leader** 6:5
**Leading** 52:24
**left-hand** 17:18
**legal** 2:9 16:22
  46:12,12 47:8
  47:17 48:7,9
**Leichtling** 2:3
**lender** 25:12,13
  25:20,20 29:7
  39:2,13,14
**lenders** 25:17
**letter** 17:13
  24:22 26:2
  30:1 32:1 33:1
  37:1,12 38:4
  40:21 41:6
  44:16 46:2
  49:3 57:13
**letters** 42:3
**level** 14:9
**liability** 44:3
**lie** 47:14
**lien** 11:21 30:15
  30:20 31:14
**liens** 30:25 31:8
**limited** 8:18
  32:6,16 43:18
  44:3,13
**line** 24:6 59:7
**list** 49:8,20
**litigation** 44:23
  44:25 45:17
**little** 4:20
**LLC** 1:3 4:17
  5:4,5,6,7,13,21

6:23 8:21,24
17:1,1 20:2
21:14 23:8
28:16 30:18
32:4 38:22
43:14,18 44:1
44:4 45:1 57:3
59:2
**loan** 23:20 27:10
  27:17 28:3,7,8
  30:15,21,23
  31:16 34:21
  35:3 46:16,17
  47:15 48:4,18
  48:18,21
**loaned** 27:13
**loans** 23:17,19
  48:13
**locate** 35:8
**located** 11:5
  33:13,14 57:9
**locations** 42:10
**long** 5:20 10:2
**longer** 5:18
**look** 46:10 47:3
  50:21
**lost** 32:19 33:22
  33:22 34:4,5
  34:10,12,18
  35:22 36:3,18
  37:4,22 42:8
  42:23 43:4,7,7
  43:10 45:8,20
  52:8,11,14
  53:24

—————— **M** ——————
**M** 1:8 3:21 46:1
  46:2 57:3 59:2
**Mae** 26:22 46:9
  47:4,12,22,23
  48:22,22
**majority** 16:3
**making** 36:6
**March** 18:3,5

19:21 22:4,7,7
22:12 23:8
**Margie** 6:19
**mark** 46:1
**marked** 17:13
  24:22 26:2
  30:1 32:1 33:1
  37:1,12 38:4
  40:21 41:5,6
  44:16 46:2
  49:3 50:25
  51:10 52:7
**Marshall** 17:19
  17:21 20:10
  22:15
**matter** 57:6
**MB** 1:2 57:4
**mean** 25:22
  26:13,18,23
  27:6,19
**means** 32:15
  56:15
**meetings** 16:13
**member** 19:10
  19:15 30:16,17
  30:22,24 31:13
  53:17
**members** 14:3
**mentioning**
  43:14
**MERS** 7:2,5,7
  8:13,15 16:7,8
  16:13,15,16,18
  16:19,24 17:3
  20:8 21:17
  22:20 23:19
  24:4,8,13 25:9
  26:1,10,10,23
  28:17,21,24,25
  29:3,14,18
  30:16,21,23
  31:1,7,17,22
  31:22 39:9,9
  39:10,13,23
  40:2,7 41:11

12-12020-mg  Doc 8862-3  Filed 07/09/15  Entered 07/09/15 13:39:14  Exhibit
Exhibit  Stephan Debo Transcript  Pg 65 of 69
Censor & Associates
Reporting and Transcription, Inc.

Page  65

41:12,17,18,19
41:22 47:11,20
49:19,20
**Michelle** 1:8
57:3 59:2
**Min** 26:6
**mind** 4:21
**Minnesota**
42:14 45:5
**Mischaracteri...**
31:5
**mix** 15:13,14
**Monday** 57:9
**monies** 27:13,15
**month** 7:14,18
10:2
**mortgage** 1:3
4:17 5:6,10,23
6:15,23 8:16
8:24 14:21
15:5,22 17:1
17:10 20:2
21:13 22:9,12
23:5,6,7,8,10
23:15,21 24:5
24:20 25:1,1,9
26:9,22 27:1,9
27:20 28:10,11
28:16 29:8,19
30:15,18,21,23
31:16 32:4
34:21 35:3
38:22,23,25
39:4,12,17,22
39:23 40:8
41:13,24 43:18
43:21 45:1
46:8,16,17
48:4,13,20
51:11,13,18,18
51:21 52:15
53:15,17,21
57:3 59:2
**mortgagee**
20:21 21:8,14

23:11,25 24:25
25:10,14 30:21
40:3
**mortgages**
29:14 51:13
52:11
**move** 25:24

### N

**N** 3:2,21 4:1
49:3
**name** 4:25 5:2,8
8:12 9:15,21
9:22 11:17,21
20:24 21:3,21
22:17,19 32:15
42:17,18,19,20
43:20,21 44:21
57:12
**named** 23:25
**naming** 30:21
**National** 26:22
46:8
**nature** 7:11
**nearest** 57:9
**necessary** 57:7
**need** 4:22 6:16
16:4 22:19
39:8
**needed** 6:15
9:12 11:17,25
34:18 49:16
**needs** 33:11
**negotiating**
30:12
**network** 11:12
12:25 22:15,16
31:18 34:16
37:8
**networks** 11:5
**Neu** 1:8,8 4:18
57:3 59:2
**never** 17:3 35:20
**new** 20:21 29:19
40:1

**newly** 38:7
**nod** 4:21
**nods** 24:14
**nominee** 23:7
25:12,15,22
29:15,18 39:13
39:23
**normally** 36:17
**notaries** 14:7
**notarize** 13:14
13:15,19 14:4
14:16,20 18:15
**notarized** 13:8,8
19:24
**notarizing** 13:25
**notary** 1:22 4:4
13:10,12,17
14:10,13,15,23
18:9,14,22
19:15 55:15
56:5
**notations** 58:9
**note** 24:1,5,9
27:21 28:11
33:8 34:4,8,10
35:11,18,21,23
36:5,12,14,18
37:5,15,22,25
37:25 38:7,14
38:19,23 39:18
40:1,8 42:8,13
42:23 43:4,7
43:10,11 44:13
45:5 46:8,13
46:15 47:5
52:16,23 53:5
53:6,24
**notes** 36:17 38:8
38:12 56:7
**note-holder**
30:22 31:14
**note-holders**
40:2
**notice** 24:25
37:16 49:2

57:5
**number** 3:13
7:19 15:20
27:25 28:1,4,8
28:9 57:8

### O

**O** 4:1
**OATH** 55:1
**Object** 15:1 35:4
**objected** 41:15
**Objecting** 12:7
**objection** 8:10
11:6 12:3 13:5
17:23 18:17
20:3 21:10,15
22:2,24 23:22
29:9 31:4 32:9
32:20 35:24
36:9,19 39:15
40:4,10 41:10
42:25 47:7,16
48:8 50:9
52:24
**observation**
39:6
**observe** 38:11
**obtains** 11:3
**occurred** 34:6
42:24 43:4
**office** 13:8 20:10
35:15 42:15
57:8,9 59:18
**officer** 6:17 8:19
15:21 32:7,8
32:17
**officers** 43:18
49:20
**offices** 17:4,19
**Oh** 6:1 24:11
44:2
**okay** 5:3,9,11,13
5:20,23 6:1,7
6:10,18,22,25
7:9,21,24 8:4,8

8:14,20 9:1,6
9:18 10:1,6
11:11,23 12:16
12:21 13:7,13
13:21 14:6,9
14:15 15:7,11
15:15,21 16:7
16:12,23 17:3
17:9,11 18:2,7
18:11,14,21,24
19:10 20:7,17
20:20 21:4,23
22:4,21 23:5
23:13 24:11,15
24:18 25:14,19
25:22,24 26:16
26:20 27:5,8
27:15,19,24
28:3,10,15,19
28:23 29:3,6
29:22 30:14,20
31:7,12,20,23
32:13,18,22
33:5,18,21
34:3,8,19
35:10,16 36:15
37:10,21 38:2
38:12 39:25
40:7,14,17
41:2,21,23
42:2,21 43:10
43:13 44:2,5
44:22 45:4,7
45:11,20,24,25
46:15,18 47:20
48:2,13,17,20
49:1,14,18
50:4 51:9 52:6
52:14 53:10,20
53:24 54:2,7
**once** 33:10
34:15 35:14
37:24
**open** 33:12
**order** 22:19

Sensor & Associates
Reporting and Transcription, Inc.

ordering 57:11
ordinarily 6:13
  14:25
organization
  27:2
original 29:7
  32:19 33:11,22
  34:12,21 35:3
  35:19 36:4
  39:2,13 52:8
  52:11,14 53:4
  57:11 59:18
origination
  23:16
oversee 7:22
  12:17
owe 29:6,17
owner 27:1
  38:19 48:23
  52:15,23 53:4
  53:6
owners 40:2
  46:6,12
ownership
  44:13 48:4
owns 48:13

**P**

P 4:1
page 3:13 24:20
  26:5 37:17
  59:7
pages 56:7
paid 16:7
Palm 1:1,17,18
  1:23,23 2:11
  55:3 56:3
  57:18,18 58:4
paragraph
  25:12 30:14,20
  34:20 41:9
  47:22
paragraphs
  42:7 47:3
part 6:25 13:24

20:18 45:4
partake 42:9
partially 38:15
particular 29:15
  29:18 35:10
parties 56:12
  59:18
party 56:12
passed 24:1
passing 23:16
pay 14:12 27:17
payments 27:10
penalty 59:19
Pennsylvania
  33:13
people 7:22,23
  7:24 14:3
  16:16 19:5
  42:10,12 43:4
percent 9:16
  11:19
Perez 1:8 57:3
  59:2
performing
  23:17
perjury 59:19
person 19:7
  20:24 46:11
  47:14
personal 10:14
  11:4 34:20,22
  35:2 49:17
  53:5
personally
  18:25 19:13,18
  19:20,23 55:7
persons 46:5
  51:17 52:22
  53:5
perspective
  16:25
pertaining
  34:21 35:2
physical 22:8
physically 13:13

13:16
place 33:10 56:9
plaintiff 1:4 2:2
  33:6,7 41:16
plaintiff's 33:7
  45:24
please 4:25
  46:11 57:5,8
  59:18
point 9:13 11:24
  21:23
policy 23:2
pool 27:24,25
portion 34:19
position 36:21
  36:23
possession 1:9
  27:20
possible 19:4,6
  19:21 48:20,24
prepare 8:5
  51:12 52:10
prepared 51:7
preparing 7:25
present 13:10,14
  13:16
presented 10:7
  15:16 47:21
  49:19
presently 8:13
  11:22 31:21
  33:6
president 7:2,5
  8:15 15:23
  16:4,10,19,24
  17:7 29:6 39:9
  41:18
presumes 41:16
presumption
  21:24
previous 38:10
previously
  50:24 51:10
  52:7
primary 50:5

prior 5:23 22:22
  23:9 31:5
  38:19 41:12,24
  42:22
privilege 43:1
proceed 9:14
  22:17,19
process 9:10,17
  9:25 11:20
  14:13,17 22:14
  33:10
processes 38:1
produced 49:13
production
  40:19 41:3
  49:9,14
promissory
  30:22 31:14
  46:8,13 47:5
proper 22:19
  29:8 41:14
PROPERTY
  1:10
protocols 48:11
provided 36:15
  49:9,18
Public 1:22 4:4
  55:15 56:5
pull 22:18
P.A 2:9
p.m 1:14,14 57:9

**Q**

question 10:23
  12:8 20:5 25:5
  25:7 29:11
  52:13
questions 50:18
quite 30:9
quote 8:18 15:20

**R**

R 4:1 56:1 58:1
  59:1,1
raise 14:17

randomly 15:6,7
read 54:6 57:10
  58:5 59:19
really 16:25
  21:6 27:3,16
  36:6
reason 22:11
  59:7
reasonable
  57:11
receive 7:5 42:2
  49:24 50:1
received 16:20
  26:1 27:15
receives 9:14
recollect 19:25
  30:7
recollection
  32:15
record 5:1 17:18
  38:16 49:7
records 20:20
  26:7,10 28:17
  31:2 33:15
  41:11 49:21
  51:13,16 52:2
  52:12,19,21
  53:3,21
RECROSS 3:5
REDIRECT 3:5
  53:12
refer 20:21
  21:21
referral 9:13,16
  9:24 20:15,15
  20:17 44:6,6
referred 9:11
  22:16
refers 28:1
reflected 28:12
regarding 40:19
  41:3 53:3
regards 25:22
register 30:16
registered 30:16

30:23,24 31:2
31:17
**Registration**
15:22 23:7,10
23:15 25:2
regularly 52:3
Reinhart 18:24
relate 28:6
relationship
27:4
relative 56:12
rely 34:15
relying 12:24
13:3 31:18
49:13 53:21
remained 40:2
renewal 14:13
rephrase 22:10
35:25 38:21
52:25
report 6:18,19
16:15 56:6
**Reported** 1:21
reporter 1:21
4:4,7,23 46:25
54:7 55:14
56:5,16,20
57:17
representative
16:18
representing
37:8 42:22
reproduction
56:15
request 12:5
16:19 33:12
40:19 41:3,10
42:7 43:5 49:9
49:13
requested 49:8
requesting
34:16
required 13:7
requirement
14:6

rerecorded 24:2
resolution 29:23
49:19
response 41:2
responsibilities
6:7 7:1 13:24
14:1,2 16:8,23
45:19,21
responsibility
13:25 16:20
28:20,25 29:17
32:7 50:5
return 17:19
57:13
returned 50:3
review 8:2,6
34:11,13,14,15
35:13,21 36:17
37:24 38:12
41:23 44:9
50:14
reviewed 19:5
35:20 37:22
39:22 41:12
reviews 9:7
12:19
Reynolds 1:21
4:3 55:14 56:5
56:20 57:17
59:3
right 4:17 5:19
8:20 10:15,18
13:18,21,23
14:12 16:23
17:9 20:1 22:4
24:4,6,18 25:3
25:11,14 27:24
29:22 31:12
35:10 36:24
39:2,20 40:14
40:17 42:21
43:20 48:3
49:1,6 50:4,13
50:15 51:18
54:3,5

role 30:11
round 7:19

───────── S ─────────
S 1:9 3:11 4:1
59:1
Sansbury's 2:10
saw 30:6
saying 36:1 53:1
says 17:18 19:20
24:4,25 25:9
25:11,12 26:21
30:14 34:8
38:25 46:11
schedule 57:8
scope 52:3,19
se 8:5
search 34:6 42:8
42:9,16 43:3
searched 42:10
42:13
searches 34:4
45:8
searching 45:20
second 10:22
16:5 26:5 37:4
50:14
secretary 8:16
15:24 16:5,15
17:7 32:5
securitized
28:11,12
see 22:18 24:6
38:8,24 39:3,7
49:11
seen 9:3 26:7,14
26:16 30:4
36:4 37:18,19
37:19 38:13
40:24,25
senior 44:23,25
45:17
sent 12:13
service 6:11
48:18

servicer 27:4,8
48:21,23
servicers 27:16
services 48:14
set 22:14 46:20
56:9,10
sets 34:19
sheet 58:9 59:18
shorthand 56:7
show 35:17
50:24 51:9
52:6
shown 30:24
sic 13:14
sign 7:10 8:1,8
8:12,13,16,23
15:23 16:1,3
31:22 32:16
57:7,10,12
signature 6:17
9:4 16:5 18:11
32:23 33:3
37:5 57:7,12
57:20,23 59:24
signed 10:1 33:5
38:25 59:18
signing 8:7,19
10:4 15:21
32:6,17 43:18
simply 4:21
12:19
situation 38:14
SNE 41:14
sole 13:25
somebody 45:7
45:8
sorry 10:20,24
22:7,13 30:7
38:21 39:10
50:19
speak 20:18
specific 15:11
35:5 50:7
53:16
spell 6:20

spelled 21:5
spend 10:3 15:8
Staehle 21:3,19
21:20
stands 44:4
start 39:10
state 1:22 4:4,25
55:2,15 56:2,5
58:3
stated 8:20 9:19
20:14 24:8
31:1 34:23
39:16 43:19
49:21
statement 10:12
32:11 34:7
48:16,19
statements
17:20 58:6
states 39:22
45:17
stating 9:12
11:18
Ste 1:17
stenotype 56:6
Stephan 1:12
3:6,7 4:12,18
5:2 40:20 41:3
41:12 50:22
53:12 55:7
57:2,22 58:19
59:3
stored 11:9
subject 1:9
59:20
substance 59:20
substantial
34:10 35:17,22
36:6 42:23
43:3
successors 25:13
25:20
Suite 1:23 2:4
2:10 57:18
summary 26:6

Gensor & Associates
Reporting and Transcription, Inc.

Page 68

28:13
supplying 9:16
supposed 22:21
  27:8
sure 4:19 5:12
  6:25 9:17
  10:22,24 11:19
  14:20 20:4
  24:18 26:25
  30:8 36:17
  43:13 45:18
  53:1
Susan 19:15
swear 4:7
sworn 4:13 55:8
system 9:7 12:23
  28:25 29:4
  30:23 31:7,17
  33:12 41:11,17
  41:19 49:20
  51:21,25
systems 8:3
  15:22 23:7,10
  25:2
S-T-A-E-H-L-E
  21:3

**T**

T 3:11 56:1,1
  58:1,1 59:1,1
take 10:10 21:8
  21:13 27:8
  57:5
taken 4:3 5:14
  56:9 59:4
team 6:5,8 7:18
  7:21,23 9:7
  10:7,11 11:3
  11:12,15 12:1
  12:5,11,16
  13:20 14:3
  15:16 16:21
  19:2,11,16
  21:1,21,24
  34:2 42:14,17

42:18 43:5
  45:4 49:23
teams 43:5
tecum 49:2
tell 18:4 21:6
  26:12
ten 15:17
TENANT 1:9
testified 4:14
testimony 4:8
  31:5
Thank 17:16
  50:17 54:5
thing 4:20 43:19
things 4:19 7:11
  15:5 21:25
  25:20 47:25
think 5:7 21:5
  44:19 46:25
  50:13,15,15
Thursday 1:14
  57:5
time 15:17,17,17
  16:3 19:23
  26:13 30:6
  33:6,12 40:8
  48:5 51:22
  56:9 57:6,11
times 16:4
title 6:4 11:21
  16:9 17:6
  22:18,18 31:19
  31:21
today 49:12
  50:16
top 17:18
tough 7:12 10:5
training 7:7
transcript 56:14
  57:24 59:6
transcription
  56:7
transfer 6:11
  22:8 23:18
transferred

29:19 40:1,9
transfers 23:6
traveling 50:17
true 11:2 34:9
  35:22 36:18
  56:7 58:7
  59:20
truly 57:14
truth 4:8,9,9
try 35:7
trying 5:7
turn 26:5 44:12
  49:7
Turner 19:15
two 38:8,12
  47:25
type 6:12,15,16
  8:6 11:18 14:9
  14:10 15:12
  16:6 26:14,16
  38:13 50:1
types 15:12
typically 14:10
  18:21
Tyra 19:7,10

**U**

Uh-huh 8:22
  10:9 12:18
  18:23 25:16
ultimately 8:1
underlying 50:7
undersigned
  55:6
understand 12:8
  12:10,11 20:4
  26:18 28:5
  29:10 35:6
  43:3 52:13
understanding
  26:20 34:5
  37:7 40:7 47:6
  47:24
unit 6:9,11 9:13
  9:24 20:15,17

33:13
UNKNOWN
  1:9
update 28:21,25
updated 29:4
use 5:8 9:10

**V**

vague 41:15
value 10:10 21:9
  21:13
various 15:9
  28:23 43:4
verify 11:21
  12:21,23 31:21
versus 4:18 16:2
  17:7
vice 7:1,4 8:15
  15:23 16:3,9
  16:19,24 17:7
  29:6 39:9
  41:18
vitae 49:15
vs 1:6 57:3 59:2

**W**

wait 13:19
waive 57:7,12
  57:20,23
want 10:22
wanted 49:11
Watson 17:19
  17:21 20:11
  22:15
way 2:10 4:23
  21:5 27:3
  35:12 39:21
week 7:10 15:8
weren't 19:23
West 1:18,23
  2:11 57:18
we've 9:3 39:22
Wilks 19:8
William 1:8
  57:3 59:2

Wilson 19:9,10
wish 57:12
Witness 3:5 4:10
  10:24 17:16,24
  18:18 20:4
  21:11 23:23
  24:14 29:10
  32:10 33:3
  35:5,25 36:8
  36:20 39:16
  40:5,11 45:13
  47:9,18 50:11
  52:25 54:8
witnesses 14:25
  15:4,5 18:24
word 5:7,12
  26:23
work 5:3 11:20
  27:7 41:22
  43:14 53:8
worker 53:17
works 45:2
wouldn't 10:13
  23:20 37:21
  40:5,11 45:21
WRITE 59:6

**X**

X 3:2,11

**Y**

Yeah 50:19
years 5:22,25
  6:3

**0**

040805XXXX
  1:2 57:4

**1**

1 34:20
1:00 1:14
10 1:14
10th 55:8 57:5
10,000 7:19,21

```
   10:1
100 9:16 11:19
104 2:10
12/10/09 59:4
13 7:23
1655 1:17,23
   57:18
17 3:15
1975 2:10

        2
2 30:20 47:3
2:30 1:14
2002 39:1
2008 1:2 57:4
2009 1:14 18:3
   22:4,7,12,13
   23:8 55:8,10
   56:17 57:1,6
   58:13
22nd 55:10
   56:17
225 2:4
24 3:15
26 3:16
27th 39:1

        3
3 46:11 47:3
3rd 18:5,9 19:22
   22:6,7,7,13
   23:8
30 3:16
305 2:5
31 57:1
32 3:17
33 3:17
33134 2:5
33401 1:18,23
   57:18
33411 2:11
37 3:18,18
38 3:19

        4
```

```
4 3:6
4th 18:3,10
   19:21
4:30 57:9
40 3:19
41 3:20
44 3:20
453053 55:16
46 3:21
49 3:21

        5
5 41:9 47:22
5th 18:5,6 22:4
   22:12
50 1:2 57:4
500 1:17,23 7:17
   57:18
51 3:8
54 3:6
561 2:11
561)682-0905
   1:24
569-4100 2:5

        7
7 42:7
7/20/2013 55:15
798-5658 2:11

        8
800 2:4

        9
9:00 57:9
```