**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| Residential Capital, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

### AMENDED DECLARATION OF JEFFREY A. TEW

I, Jeffrey A. Tew, make this declaration under 28 U.S.C. § 1746, and hereby declare as follows:

1. I am an attorney with the law firm Rennert Vogel Mandler & Rodriguez, P.A. and I have served as outside counsel for the Law Offices of David J. Stern, P.A. ("DJSPA"), for approximately 15 years.

2. I am licensed to practice law in the State of Florida. I have been practicing law in the State of Florida for more than 40 years, and I have no record of discipline with the State Bar of Florida or any state or federal bar.

3. I am over the age of eighteen years old.

4. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the litigation between GMAC and DJSPA, and related issues concerning legal services provided by DJSPA on behalf of GMAC Mortgage, LLC ("GMAC"). If I were called to testify, I could and would testify competently as follows:

5. Based on multiple news reports publicly available on the internet, in late 2009 and early 2010, it was revealed that GMAC personnel produced tens of thousands of fraudulent affidavits over a period of several years which were submitted in foreclosure lawsuits across the

1

country, leading to GMAC imposing a moratorium on foreclosure lawsuits in 23 states, including Florida. Copies of this information are attached as follows:

    a.    Robbie Whelan, *GMAC Spotlight on 'Robo-Signer,'* Wall Street Journal (September 22, 2010) http://www.wsj.com/articles/SB10001424052748703399404575506303831235126. A copy of this article is attached hereto as Exhibit 1.

    b.    Brady Dennis, *'Robo-signer' played quiet role in huge number of foreclosures,'* Washington Post (September 22, 2010), http://www.washingtonpost.com/wp-dyn/content/article/2010/09/22/AR2010092206262.html. A copy of this article is attached hereto as Exhibit 2.

    c.    Alain Sherter, *'How Ally Financial "Robo-Signed" People's Homes Away,'* CBS News (September 22, 2010), http://www.cbsnews.com/news/how-ally-financial-robo-signed-peoples-homes-away. A copy of this article is attached hereto as Exhibit 3.

    d.    David Streitfeld, *'GMAC Halts Foreclosures in 23 States for Review,'* NY Times (September 20, 2010), http://www.nytimes.com/2010/09/21/business/21mortgage.html. A copy of this article is attached hereto as Exhibit 4.

6.    Additionally, on December 15, 2010, U.S. Congressman Henry C. "Hank" Johnson, Jr. (D-GA), referred to GMAC officer, Jeffrey Stephan, as the "master robo-signer" while chairing Congressional Judicial Committee Hearings on Foreclosure, and other witnesses at the hearing described GMAC's fraudulent practices in creating and filing fraudulent affidavits (*i.e.*, "robo-signing"). A copy of the transcript of the Hearing Before the H. Comm. on the Judiciary, 111th Cong., (2010), is attached hereto as Exhibit 5.[1]

---

[1] *Foreclosed Justice: Causes and Effects of the Foreclosure Crisis: Hearing Before the H. Comm. on the Judiciary*, 111th Cong., pp. 64-65;74 (2010) (statement of U.S. Congressman Henry C. "Hank" Johnson, Jr. (D-GA), Member, H. Comm. on the Judiciary). http://www.gpo.gov/fdsys/pkg/CHRG-111hhrg62935/html/CHRG-111hhrg62935.htm.

7. As a consequence of GMAC's fraudulent conduct in connection with residential foreclosures, on April 13, 2011, it and its affiliates entered into a Consent Order with the Federal Reserve and FDIC in the case styled, *In the Matter of Ally Financial, Inc., v. Ally Bank, Residential Capital, LLC and GMAC Mortgage, LLC*, FRB Docket No. 11-020-B-HC, 11-020-B-DEO, FDIC-11-123b, United States of America Before the Board of Governors of the Federal Reserve System, Washington, D.C., and Federal Deposit Insurance Corporation, Washington, D.C. A copy of the April 13, 2011 Consent Order is attached hereto as Exhibit 6.

8. On February 9, 2012, the United States Department of Justice announced that a $25 billion dollar settlement had been reached between the U.S. Government and State Attorneys General and the five largest mortgages servicers, including GMAC, to address mortgage loan servicing and foreclosure abuses. A copy of the February 9, 2012, news release form the U.S. Dept. of Justice is attached hereto as Exhibit 7.[2]

9. Pursuant to its settlement with the U.S. Government and the State Attorneys General, GMAC agreed to pay hundreds of millions of dollars in direct payments and loan modifications to borrowers in connection with its fraudulent practices in the servicing of residential mortgages across the United States, including Florida. A copy of the Consent Judgment entered into by Residential Capital, LLC, Ally Financial, Inc., and GMAC Mortgage, LLC, in the case styled *United States of America et al., v. Bank of America Corp.*, Case No.12-cv-00361, in the United States District Court for the District of Columbia, is attached hereto as Exhibit 8.

10. Following GMAC's voluntary termination of DJSPA on or about November 16, 2010, the parties entered into an Escrow Agreement, which provided that DJSPA would release

---

[2] http://www.justice.gov/opa/pr/federal-government-and-state-attorneys-general-reach-25-billion-agreement-five-largest.

3

its attorney's retaining lien and transfer GMAC's files to successor counsel on the condition GMAC's counsel, Bradley Arant Boult Cummings, LLP ("BABC"), would serve as escrow agent and hold $3 million dollars in escrow while the parties reconciled the unpaid legal fees and costs owed to DJSPA by GMAC. After assisting GMAC with the transfer of its files to successor counsel, DJSPA sent GMAC a letter on or about February 25, 2011, demanding payment in the amount of $6,161,483.70, for the unpaid legal services provided and out-of-pocket costs incurred by DJSPA on behalf of GMAC. A copy of the Escrow Agreement is attached hereto as Exhibit 9.

11. After GMAC failed to pay DJSPA for the legal fees and costs it incurred on behalf of GMAC, DJSPA filed a lawsuit against GMAC on or about June 6, 2011, seeking damages in the amount of $6,161,483.70 (the "Complaint"), for the unpaid fees and costs. The case was styled *Law Offices of David J. Stern, P.A. v. GMAC Mortgage, LLC*, Case No. 11-12801 CACE (05) and was commenced in the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida.

12. In the Complaint, DJSPA asserted causes of action against GMAC for (1) breach of contract, (2) open account and (3) account stated. Attached as Exhibit A to the Complaint is a spreadsheet containing the invoices reflecting the legal fees and costs due and owing for the legal services and out of pocket costs incurred by DJSPA on behalf of GMAC.

13. Subsequently, GMAC removed the lawsuit to the United States District Court for the Southern District of Florida (the "District Court Action"). GMAC did not move to dismiss the Complaint for failure to state a claim, but rather filed an Answer and Counterclaims against DJSPA. A copy of GMAC's Answer and Counterclaim is attached hereto as Exhibit 10. In its Answer and Counterclaims in the District Court Action, GMAC asserts several identical

4

affirmative defenses and counterclaims raised by GMAC in *Rescap Liquidating Trust's Objection to Proofs of Claim Nos. 5272 and 7464 filed by the Law Offices of David J. Stern, P.A.*, in this action ( the "Objection").

14.     Specifically, GMAC's Answer and Counterclaims allege, *inter alia*, that DJSA's claims are barred due to its own breach of contract, that GMAC is entitled set-off/recoupment, and that it is entitled to damages against DJSPA for its alleged breach of contract and legal malpractice. *See* Exhibit 10 at pp. 3-14.

15.     DJSPA responded to GMAC's Answer and Counterclaims by filing its own Answer and Affirmative Defenses, which denied GMAC's counterclaims, and asserted numerous affirmative defenses, including but not limited to, comparative negligence on the part of GMAC, failure to mitigate damages, waiver and estoppel, and the doctrine of unclean hands. A copy of DJSPA's Answer and Affirmative Defenses to GMAC's Counterclaim in this District Court Action is attached hereto as Exhibit 11.

16.     Contemporaneous with the District Court Action, DJSPA was also involved in litigation with the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") regarding their failure to pay for DJSPA's legal services and costs in connection with foreclosure lawsuits in which Fannie Mae and Freddie Mac were the owner of the underlying note and mortgage. A portion of the legal services and costs at issue in the GMAC District Court Action involved notes and mortgages owned by Fannie Mae and Freddie Mac. The parties subsequently entered into stipulations which provided that any loans at issue in the District Court Action that were owned by Fannie Mae or Freddie Mac would be severed from the District Court Action and transferred to the individual actions between DJSPA and Fannie Mae and Freddie Mac (with the exception of those cases which DJSPA was

hired to remediate under the Curative Agreement, which remained at issue in the District Court Action). *See* Orders Approving Stipulation to Sever Freddie Mac Loan Related Claim for Adjudication in Pending Federal Court Action and Joint Stipulation on the Arbitration of Fannie Mae Loans entered in the District Court Action, attached hereto as Exhibit 12.

17.    Additionally, in DJSPA's lawsuit against Freddie Mac, the following sworn deposition testimony was given by the former Managing Associate General Counsel of Freddie Mac concerning GMAC's fraudulent conduct relating to robo-signing, and the delay it caused in the prosecution of GMAC foreclosure lawsuits involving Freddie Mac owned loans across the country:

> A:    ... essentially we told specific servicers that they could not proceed on foreclosures on Freddie Mac files until they had satisfied both themselves and us that they could proceed lawfully and relying on accurate and untainted documentation....
>
> Q:    Why?
>
> A:    Because we didn't want servicers pursuing foreclosures against borrowers relying on improper documentation and other improprieties caused by servicers.
>
> Q:    Why did you provide the servicers the opportunity to correct affidavits that were filed robo signed affidavits?
>
> A:    I am not sure we provided the opportunity to correct necessarily. We recognized, I think, that foreclosures were necessary to do because borrowers had failed to pay their mortgages would have to proceed in any event. What we didn't want to have happen is that those would proceed relying on tainted documentation and other improprieties so we recognized the need no (sic) continue with foreclosure activity in those cases where that was the appropriate course of action, but we didn't want to have happen is that those foreclosure activities would continue to proceed relying on false inappropriate documentation and other improper practices...
>
> Q:    Did you ever hear of any affidavits being executed by Jeffrey Stephan in connection with GMAC acting as its service (sic)?
>
> A:    Yes.

6

> Q: What do you know about that?
>
> A: I know that there was some, that that was the GMAC employee. He was the first servicer that broke cover so to speak on the robo signing issue and we learned of that through – I don't recall exactly how we learned of it, but we learned of it- Oh, we learned of it from one of our designated counsel law firms.
>
> Q: Was there any direction given by Freddie Mac to GMAC with regard to those affidavits?
>
> A: There was a letter written to GMAC with regard to them proceeding on Freddie Mac files relying on improper and tainted documentation amongst other things. They didn't to my knowledge specifically reference Jeffrey Steffan (sic), but it referenced a series of allege improper activities that GMAC may have been relying on in order to prosecute foreclosure actions.
>
> Q: Did Freddie Mac tell GMAC to correct those problems?
>
> A: I am not sure that Freddie Mac exactly told them to correct the problem. Again, Freddie Mac told GMAC, and this is from memory that they could not proceed to prosecute foreclosure action relying on any tainted documentation or improper practices...

A copy of the relevant portion of the deposition of Graham H. Kidner, dated August 22, 2012, in the case styled, *Law Offices of David J. Stern, P.A. v. Federal Home Loan Mortgage Corp.*, Case No. 11-CV-60626, in the United States District Court for the Southern District of Florida, is attached hereto as Exhibit 13.

18. The process of identifying and severing the Fannie Mae and Freddie Mac loans from the District Court Action was lengthy and time consuming for the parties' counsel, and consequently, the parties engaged in a very limited amount of pre-trial discovery, including no depositions being conducted by witnesses for either party, prior to the District Court Action being stayed by the District Court in May 2012 upon GMAC's filing a Suggestion of

7

Bankruptcy. *See Order Staying Case Upon Suggestion of Bankruptcy* attached hereto as Exhibit 14.

19. After the bankruptcy stay took effect in the District Court Action, Proof of Claim No. 5275 was filed on behalf of DJSPA in the bankruptcy on or about November 16, 2012, in the amount of $6,161,483.70, and is based upon DJSPA's claims asserted in its Complaint in the District Court Action. On May 12, 2014, Proof of Claim No. 7464 (collectively "Proof of Claim") was filed to update the contact information of undersigned counsel as DJSPA's authorized agent. *See* Copies of Proofs of Claims Nos. 5275 and 7464 (without exhibits)[3], attached hereto as Exhibit 15. On April 27, 2015, the Liquidating Trust filed its Objection to DJSPA's Proof of Claim. [D.E. 8531].

20. In support of its argument that DJSPA allegedly committed legal malpractice, GMAC has attached the Declaration of John W. Smith T ("Smith Declaration"), who is an attorney at the law firm of Bradley Arant Boult Cummings, LP. *See* Objection at Exhibit 2-B. Out of the tens of thousands of foreclosure cases that DJSPA handled on behalf of GMAC over a period of approximately 16 years, Mr. Smith's Declaration sets forth a total of nine foreclosure lawsuits in which it is alleged that DJSPA committed error or misconduct which resulted in damages to GMAC and its successor entities. *See* Smith Declaration at ¶ 14.

21. As demonstrated by relevant pleading in several of the foreclosure lawsuits cited in the Smith Declaration, and as previously asserted by DJSPA in its Answer and Affirmative Defenses to Counterclaim in the District Court Action, any alleged damages incurred by GMAC

---

[3] A copy of the operative Complaint in the District Court Action, with exhibits, which was attached as an exhibit to Proof of Claim No. 5275, is attached to the Declaration of David J. Stern as Exhibit 4. Additionally, GMAC is also providing copies of DJSPA's Proof of Claim to the Court as a separate exhibit. *See* Objection at Exhibit 3.

8

in these referenced cases were caused by misconduct and/or negligence on the part of GMAC – not DJSPA. *See* Exhibit 11 at pp. 4-6.

22.    Specifically, the Objection and the Smith Declaration cite extensively to purported malpractice on the part of DJSPA in the foreclosure lawsuit styled *Deutsche Bank Trust Co. Americas as Trustee for RALI 2007QS3 v. Barry F. Mack, et al.*, Case No. 09-7336-CA, 20th Judicial Circuit in and for Collier County, Florida. *See* Objection at ¶ 63; Smith Declaration at ¶ 14(a). However, notwithstanding GMAC's claims that DJPSA committed errors in the foreclosure lawsuit after it was filed, as the trial court in the *Mack* case found in the Final Order on Plaintiff's Motion to Set Aside Final Judgment and Set New Trial, it was the wrongful actions of GMAC – not DJSPA – that were the cause of the damages incurred by the borrowers, as GMAC admitted that it had wrongfully initiated foreclosure proceedings against the borrowers, and thus was found liable for damages in the amount of $296,920.05 for slander of title, because the borrowers were, in fact, not in default of their mortgage, to wit:

> Defendants MACK did properly plead slander of title in that the publication of the lis pendens and the lawsuit alleging that they had failed to pay their mortgage in accordance with its terms led to third parties being reluctant to deal with them in their efforts to sell the property and pay off their loan, and significantly depressed its value. ***The foreclosure was not warranted because Defendants MACK in fact made their payments timely and servicer GMAC conceded that it mistakenly filed the foreclosure action without justification.***

*See* Exhibit W to Smith Declaration at ¶ 3 (ii) and (iii).

23.    Similarly, the Smith Declaration cites to the lawsuit styled *GMAC Mortgage, LLC v. Christopher Contreras*, Case No. 2010-2868-CA, in the Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Florida, as another purported example of alleged malpractice on the part of DJSPA. However, as is the case in the *Mack* foreclosure, the counterclaims of the borrower in *Contreras*, were based primarily upon the misconduct of

9

GMAC, in this instance an allegedly fraudulent assignment of mortgage and affidavit in support of summary judgment signed by GMAC officer Jeffrey Stephan, who, as noted above, came to be widely known as the "master robo-signer." *See* Class Action Amended Counterclaim and Cross Complaint in the case styled *GMAC Mortgage, LLC v. Christopher Contreras*, Case No. 2010-2868-CA, in the Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Florida, at ¶¶ 16-17, a copy of which is attached hereto as Exhibit 16.[4]

24. Accordingly, as illustrated by the *Mack* and *Contreras* cases, even without the benefit of substantive pre-trial discovery, DJSPA is able to proffer competent evidence demonstrating that in at least two of the nine foreclosure cases cited in the Smith Declaration as purported instances of DJSPA malpractice, that it was the misconduct of GMAC—not DJSPA—that is the proximate cause of any purported damages sustained by GMAC in connection with such matters.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed this 9th day of July 2015.

_____
Jeffrey A. Tew

---

[4] On June 5, 2012, all claims against DJSPA in the *Contreras* case were dismissed with prejudice. *See* Order of Dismissal with Prejudice dated June 5, 2012, attached hereto as Exhibit 17.