12-12020-mg    Doc 8862-26    Filed 07/09/15    Entered 07/09/15 13:39:14    Exhibit
Exhibit 13 - Excerpt G. Kidner Depo.    Pg 1 of 5

1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION


Case No. 0:11-CV 60626


- - - - - - - - - - - - - - - x

The Law Offices of                  :

David J. Stern, P.A.                :

Plaintiff/Counter Defendant,  :

                                    :

vs.                                 :

                                    :

Federal Home Loan                   :

Mortgage Corp.,                     :

Defendant/Counter Plaintiff   :

                                    :

- - - - - - - - - - - - - - - x


VIDEO DEPOSITION OF GRAHAM H. KIDNER

McLean, Virginia

Wednesday, August 22, 2012

10:00 a.m.

12-12020-mg   Doc 8862-26   Filed 07/09/15   Entered 07/09/15 13:39:14   Exhibit
Exhibit 13 - Excerpt G. Kidner Depo.   Pg 2 of 5

140

1   activities to foreclose people's homes until
2   they could satisfy themselves and report to us
3   that they could rely on untainted documentation
4   amongst other things.  There were several
5   letters.
6          He said more than that, but
7   essentially we told specific servicers that
8   they could not proceed on foreclosures on
9   Freddie Mac files until they had satisfied both
10  themselves and us that they could proceed
11  lawfully and relying on accurate and untainted
12  documentation.
13         And after the number of servicers who
14  reported or there were reports about them
15  having similar problems began to grow Freddie
16  Mac issued general directions to all servicers
17  along similar lines.
18       Q    Why?
19       A    Because we didn't want servicers
20  pursuing foreclosures against borrowers relying
21  on improper documentation and other
22  improprieties caused by servicers.
23       Q    **Why did you provide the servicers the**
24  **opportunity to correct affidavits that were**
25  **filed robo signed affidavits?**

12-12020-mg    Doc 8862-26    Filed 07/09/15    Entered 07/09/15 13:39:14    Exhibit
Exhibit 13 - Excerpt G. Kidner Depo.    Pg 3 of 5

141

1    A    I am not sure we provided the
2    opportunity to correct necessarily.  We
3    recognized, I think, that foreclosures had to
4    -- well, foreclosures were necessary to do
5    because borrowers had failed to pay their
6    mortgages would have to proceed in any event.
7         What we didn't want to have happen is
8    that those would proceed relying on tainted
9    documentation and other improprieties so we
10   recognized the need no continue with
11   foreclosure activity in those cases where that
12   was the appropriate course of action, but we
13   didn't want to have happen is that those
14   foreclosure activities would continue to
15   proceed or would proceed relying on false
16   inappropriate documentation and other improper
17   practices.
18   Q    **Were these servicers supposed to**
19   **correct those affidavits that were robo signed**
20   **or were inadequate?**
21   A    We didn't get into the details with
22   servicers of what exactly they were supposed to
23   do.  These were issues that were not simply in
24   Florida.
25        These were issues that were across a

12-12020-mg   Doc 8862-26   Filed 07/09/15   Entered 07/09/15 13:39:14   Exhibit
Exhibit 13 - Excerpt G. Kidner Depo.   Pg 4 of 5

142

1   the country.  There were improper documents,
2   improper practices in foreclosures across the
3   country.
4           We did not know the details
5   necessarily of what exactly all of those
6   problems were and where all of those files
7   were.  We did not dictate while specific
8   actions they had to take or not to take.
9           It was up to the servicers to ensure
10  that the actions they took that meant at the
11  end of the day that any foreclosure that they
12  proceeded to complete will be completed
13  correctly.
14      Q   Did you ever hear of any affidavits
15  being executed by Jeffrey Steffan in connection
16  with GMAC acting as is service?
17      A   Yes.
18      Q   What do you know about that?
19      A   I know that there was some, that that
20  was the GMAC employee.  He was the first
21  servicer that broke cover so to speak on the
22  robo signing issue and we learned of that
23  through -- I don't recall exactly how we
24  learned of it, but we learned of it -- Oh, we
25  learned of it from one of our designated

12-12020-mg    Doc 8862-26    Filed 07/09/15    Entered 07/09/15 13:39:14    Exhibit
Exhibit 13 - Excerpt G. Kidner Depo.    Pg 5 of 5

143

```
 1   counsel law firms.
 2       Q    Was there any direction given by
 3   Freddie Mac to GMAC with regard to those
 4   affidavits?
 5       A    There was a letter written to GMAC
 6   with regard to them proceeding on Freddie Mac
 7   files relying on improper and tainted
 8   documentation amongst other things.
 9            They didn't to my knowledge
10   specifically reference Jeffrey Steffan, but it
11   referenced a series of alleged improper
12   activities that GMAC may have been relying on
13   in order to prosecute foreclosure actions.
14       Q    Did Freddie Mac tell GMAC to correct
15   those problems?
16       A    I am not sure that Freddie Mac
17   exactly told them to correct the problem.
18   Again, Freddie Mac told GMAC, and this is from
19   memory that they could not proceed to prosecute
20   foreclosure actions relying on any tainted
21   documentation or improper practices.
22       Q    Why didn't Freddie Mac terminate
23   GMAC?
24       A    I don't know.  That is not an area
25   that I had any involvement with.  I am not
```