Hearing Date: July 16, 2015 at 10:00 a.m. (Prevailing Eastern Time)

MORRISON & FOERSTER LLP
250 W. 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Erica J. Richards

*Counsel for The ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**REPLY IN SUPPORT OF OBJECTION OF THE RESCAP BORROWER CLAIMS TRUST TO CLAIM NUMBER 452 FILED BY JULIO PICHARDO**

ny-1193505

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The ResCap Borrower Claims Trust (the "Borrower Trust") established pursuant to the terms of the confirmed Chapter 11 plan filed in the above-captioned bankruptcy cases (the "Chapter 11 Cases") [Docket No. 6065], as successor in interest to the above-captioned debtors (collectively, the "Debtors") with respect to Borrower Claims, hereby submits this reply (the "Reply") in further support of the *Objection Of The ResCap Borrower Claims Trust To Claim Number 452 Filed by Julio Pichardo* [Docket No. 8676] (the "Objection")[1] seeking to disallow and expunge claim number 452 (the "Proof of Claim") filed by Julio Pichardo ("Claimant"). In support of the Reply, the Borrower Trust respectfully represents as follows:

**Reply**

1.  By the Objection, the Borrower Trust seeks to disallow the Proof of Claim, which asserts a $650,000.00 unsecured claim against GMAC Mortgage, LLC ("GMACM"), on the basis that the Proof of Claim fails to state a valid claim against the Debtors. On June 8, 2015, Claimant filed a response to the Objection [Docket No. 8745] (the "Response"). Additionally, on June 15, 2015, Claimant filed a proof of service [Docket No. 8798] (the "Proof of Service"), which indicates that Claimant intends to participate in the July 16, 2015 hearing (the "Initial Claim Hearing") telephonically and requests relief from the automatic stay to pursue claims against the Debtors. On June 23, 2015, Claimant submitted an additional response to the Objection, which has not yet been docketed (the "Supplemental Response").[2]

---

[1] Capitalized terms used and not defined herein have the meanings ascribed to them in the Objection.

[2] The Supplemental Response was submitted after the June 22, 2015 deadline to file a response to the Objection, and accordingly, the Court may disregard it as untimely. In any event, nothing in the Supplemental Response addresses the substantive arguments raised in the Objection, nor does the Supplemental Response raise any material issues of disputed fact. To the contrary, the Supplemental Response is consistent with the Borrower Trust's position that Claimant generally remained current on his loan payments and no efforts to foreclose on Claimant's loan were ever undertaken by the Debtors.

ny-1193505

2. The Response fails to respond to or rebut the arguments set forth in the Objection in any meaningful way, and instead states Claimant's intent to make his arguments at the Initial Claim Hearing, which he requests be treated as an evidentiary hearing. The Response consists of a single page that simply restates the conclusory allegations set forth in Claimant's prior submissions in support of the Proof of Claim. The Response is supplemented by nearly two hundred pages of documents, the vast majority of which were already attached to the Objection or relate to Claimant's claims against Ocwen, a non-Debtor. The documents attached to the Response raise two new allegations relating the Claimant's claims against the Debtors that require a reply, as set forth below.

**A.    The Corrected Agreement Is Binding, Notwithstanding GMACM's Failure to Provide Claimant with a Countersigned Copy**

3. The Response attaches pleadings filed in the California Action asserting that the Corrected Agreement was never countersigned by GMACM and implying that the Corrected Agreement is therefore invalid. See, e.g., Response at page 149 of 199. The Liquidating Trust has been unable to locate a countersigned copy of the Corrected Agreement in the Debtors' books and records. Notwithstanding that fact, both GMACM and Claimant agreed to be bound by the terms of the Corrected Agreement through their respective conduct. On November 11, 2009, GMACM informed Claimant that it had received and processed the Corrected Agreement. See Comment History, annexed as Exhibit E to Priore Decl., at 59-60. Thereafter, GMACM continually administered Claimant's loan in accordance with the terms of the Corrected Agreement by charging Claimant a reduced monthly payment amount of approximately $624. See Payment History, annexed as Exhibit C to Priore Decl., at 3-4. Claimant also ratified the Corrected Agreement by accepting its benefits in the form of making reduced loan payments for over five and a half years, which ratification continued through the date servicing of Claimant's

2

ny-1193505

loan was transferred to Ocwen.  See Payment History, annexed as Exhibit C to Priore Decl., at 3-4.

4.  California courts have recognized that every contract requires mutual assent of the parties, "which may be manifested by conduct as well as by words." Russell v. Union Oil Co., 86 Cal. Rptr. 424, 427 (Cal. Ct. App. 1970).  See also Standard Iron Works v. Globe Jewelry & Loan, Inc., 330 P.2d 271, 277 (Cal. Ct. App. 1958) ("The conduct of an offeree may constitute acceptance."); Beatty v. Oakland Sheet Metal Supply Co., 244 P.2d 25, 30 (Cal. Ct. App. 1952) ("The receipt and acceptance by one party of a paper signed by the other, and purporting to embody all the terms of a contract between the two, binds the acceptor, as well as the signer, to the terms of the paper." (citation omitted).  In other words, the failure of a party to countersign a contract does not render the contract invalid where that party nonetheless performs under the terms of the contract.  Here, both GMACM and Claimant manifested their acceptance of the Corrected Agreement by performing in accordance with its terms, and, as a result, Claimant is now estopped from denying the validity of that contract, which he signed, on the basis that GMACM failed to accept it.[3]

**B.    Claimant's Allegations That GMACM Attempted to Forcibly Subordinate Liens in Favor of Claimant's Family Members Are Without Merit**

5.  Claimant's pleadings in the California Action allege that GMACM attempted to forcibly subordinate existing senior priority security interests in the Property held by certain of Claimant's relatives.  See, e.g., Response at page 149 of 199.  These claims are utterly without

---

[3]  Furthermore, as set forth in the Objection, the August Agreement was not a valid contract.  See Objection at ¶¶ 55-56.  Accordingly, if the Court were to find that the Corrected Agreement was not valid even though GMACM and Claimant both performed in accordance with its terms until the servicing rights with respect to Claimant's loan were sold to Ocwen, then Claimant is potentially liable to Ocwen in its capacity as current servicer on behalf of the owner of the loan for the aggregate difference in monthly payments that he would have made under his original loan terms (approximately $1,550.00) (see Priore Decl. at ¶ 13) and those made under the modification (approximately $624) (see Priore Decl. at ¶ 15), which difference totals more than $60,000 to date.

3

ny-1193505

merit.  As an initial matter, Claimant lacks standing to raise claims regarding the relative priority of security interests on the Property, because priority involves only the respective rights of secured parties to the Property; Claimant's legal rights with respect to the Property are not implicated.  See, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (standing requires, among other things, injury in fact, meaning an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical).  Furthermore, the relative priority of liens on the Property is not currently in dispute and will not be ripe for adjudication until such time as a secured party seeks to enforce its lien on the Property through a foreclosure on the Property.

6.      These claims are also not supported by the record.  The Loan was originated on or about July 31, 2003 and the security interest securing the Loan was granted contemporaneously and recorded on August 7, 2003.  See Objection at ¶ 13; Deed of Trust, annexed as Exhibit B to Priore Decl.  Attached as Exhibit X hereto is a copy of the title insurance policy and title report that was prepared at the time the Loan was originated.  It indicates that there were no senior recorded security interests against the Property when the Loan was originated.  Indeed, the only recorded deed of trust in favor of Claimant's relatives attached to the Response was recorded on November 30, 2004, *after* the Deed of Trust securing the Loan was recorded.  See Response at page 39 of 199 (Deed of Trust in favor of Rebecca Pichardo); id. at page 187 of 199 (same).  Thus, the record shows that there were no senior security interests in favor of Claimant's relatives against the Property at the time the Loan was originated.  Nor is there any evidence in the record that Home Star Mortgage Services, LLC, as the Lender of the Loan, or GMACM, as the servicer for the Loan, had knowledge of any prior existing but unrecorded security interest against the Property.

7.  Lastly, the relative priority of any existing liens on the Property is dictated by California statute.[4] Assuming *arguendo* that certain of Claimant's relatives do hold security interests against the Property senior to those securing the Loan (which, as set forth above, does not appear to be the case), GMACM could not have altered the priority of such liens absent consent of the other affected secured parties and any attempts to do so would have no legal effect. O'Neil v. Gen. Sec. Corp., 5 Cal. Rptr. 2d 712, 719 (Cal. Ct. App. 1992) ("[S]ecurity and priority rights in the encumbered property held by third parties have independent status, are entitled to independent protections, and cannot be defeated by unilateral waivers between the debtor and other creditors."). Contrary to Claimant's assertions, neither the August Agreement nor the Corrected Agreement makes any reference to the priority or subordination of any other liens. See August Agreement, annexed as Exhibit L to Priore Decl.; Corrected Agreement, annexed as Exhibit M to Priore Decl. Rather, both the August Agreement and the Corrected Agreement provide only that any liens securing payment of the Loan remained in effect. See August Agreement, annexed as Exhibit L to Priore Decl. at 1; Corrected Agreement, annexed as Exhibit M to Priore Decl. at 1. Accordingly, any allegations by Claimant related to the relative priority of liens on the Property fail to state a claim and should be disregarded by the Court.

---

[4] California is a race-notice jurisdiction. In other words, California law creates a first in time rule that prioritizes liens based on their time of creation, but allows a subsequently created lien to take priority over an earlier created lien if: (i) the earlier lien was not recorded; (ii) the later lien holder was without notice of the earlier lien; (iii) the later lien holder gave value for the lien; and (iv) the later lien was recorded first. See Cal. Civ. Code § 2897 ("Other things being equal, different liens upon the same property have priority according to the time of their creation. . . ."); Cal. Civ. Code § 1214 ("Every conveyance of real property or an estate for years therein, other than a lease for a term not exceeding one year, is void as against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded, and as against any judgment affecting the title, unless the conveyance shall have been duly recorded prior to the record of notice of action.").

5

ny-1193505

**C.    The Initial Claim Hearing on the Objection Should Not Be Treated as an Evidentiary Hearing**

8.    In addition, the Borrower Trust opposes Claimant's request that the Initial Claim Hearing be treated as an evidentiary hearing. It would be an inefficient use of the time and resources of both the Court and the Borrower Trust to conduct an evidentiary hearing before the Court has ruled on the Objection, which argues, among other things, that the Proof of Claim fails to state valid claims against the estates as a matter of law. See, e.g., Objection at ¶ 44 (FDCPA claims should be dismissed because statute is inapplicable); ¶¶ 48-49 (negligent misrepresentation claims should be dismissed because, *inter alia*, Claimant has not plead claims with the requisite specificity); ¶ 51 (claims for violation of the UCL should be dismissed because Claimant has not shown he is entitled to remedies available under the statute); ¶ 53 (FAL claims should be dismissed because statute is inapplicable); ¶ 56 (breach of contract claims should be dismissed because the August Agreement omitted material terms and was therefore not a valid contract and Claimant ratified the Corrected Agreement through subsequent conduct); ¶ 62 (claims for breach of covenant of good faith and fair dealing should be dismissed because the August Agreement was not a valid contract); ¶ 65 (negligence claim should be dismissed because GMACM did not owe Claimant a duty of care); ¶ 68 (unjust enrichment claim should be dismissed because it is a remedy, not an independent cause of action). Thus, to the extent the Court grants the Objection with respect to some or all of the claims detailed in the Proof of Claim on this basis, no evidentiary proceedings with respect to those dismissed claims will be required. Further, it would be prejudicial to the Borrower Trust to be required to participate in an evidentiary hearing until Claimant has actually presented his arguments rebutting the Objection so that the Borrower Trust can adequately understand what material facts are in

6

ny-1193505

dispute, if any, and both parties are able to take discovery on those issues.[5]  Claimant's request is also contrary to the Court's general practice of requiring claimants to appear at evidentiary proceedings in person, which serves a number of important purposes, including ensuring that the Court is able to fully evaluate the credibility and demeanor of any witnesses, and reducing the risk of prejudice or miscommunication resulting from a party's inability to examine the opposition face to face.

**D.     Claimant's Request for Stay Relief Should Be Denied**

9.      Finally, Claimant's belated request for stay relief set forth in the Proof of Service fails to address any of the relevant factors required to be considered by the Court under <u>Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)</u>, 907 F.2d 1280, 1285-1287 (2d Cir. 1990).  Notably, on August 6, 2012, Claimant filed a motion with the Court seeking relief from the automatic stay to prosecute the California Action against GMACM (the "<u>Stay Relief Motion</u>") [Docket No. 1026].  The Debtors filed an objection to the Stay Relief Motion on August 22, 2012 [Docket No. 1233] (the "<u>Stay Relief Objection</u>"), which the Borrower Trust hereby incorporates into the Reply by reference.  Following a hearing, the Court entered an order denying the Stay Relief Motion on August 29, 2012 [Docket No. 1307].  The Proof of Service fails to set forth any facts that would warrant reversing the Court's prior order denying stay relief.  Because Claimant has failed to carry his burden to demonstrate that good cause exists for lifting the stay, <u>Sonnax</u>, 907 F.2d at 1285, the Court should deny this request.  See <u>Capital Commc'ns Fed. Credit Union v. Boodrow (In re Boodrow)</u>, 126 F.3d 43, 48 (2d Cir. 1997) ("We have emphasized that a bankruptcy court should deny relief from the stay if the

---

[5]   To the extent the Court grants Claimant's request to treat the July 16, 2015 hearing as an evidentiary hearing, the Borrower Trust reserves all rights to object to the admissibility of any evidence submitted by Claimant in support of his claim on any basis.

7
ny-1193505

movant fails to make an initial showing of cause.") (citation and internal quotation marks omitted).

## Conclusion

10. For the reasons set forth above and in the Objection, the Borrower Trust respectfully requests entry of an order, substantially in the form of Exhibit 4 attached to the Objection, (i) disallowing and expunging the Proof of Claim with prejudice, and (ii) granting such other and further relief as is just and proper.

Dated: July 13, 2015  
      New York, New York

/s/ Norman S. Rosenbaum  
Norman S. Rosenbaum  
Jordan A. Wishnew  
Erica J. Richards  
MORRISON & FOERSTER LLP  
250 W. 55th Street  
New York, New York 10019  
Telephone: (212) 468-8000  
Facsimile: (212) 468-7900  

*Counsel for The ResCap Borrower Claims Trust*