MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Todd M. Goren
Jamie A. Levitt
Erica J. Richards
Meryl L. Rothchild

*Counsel to the ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**THE RESCAP LIQUIDATING TRUST'S REPLY IN FURTHER SUPPORT OF ITS
MEMORANDUM OF LAW IN SUPPORT OF ITS OBJECTION TO
OCWEN LOAN SERVICING, LLC'S REVISED CLAIM NOTICE
<u>CONCERNING THE SERVICING ADVANCES CLAIMS</u>**

ny-1195378

The ResCap Liquidating Trust (the "Trust"), established pursuant to the terms of the Plan[1] in the above-captioned Chapter 11 Cases, by and through its undersigned counsel, hereby submits this reply to the response filed by Ocwen Loan Servicing, LLC ("Ocwen") [Docket No. 8865] (the "Response") to *The ResCap Liquidating Trust's Memorandum of Law in Support of Its Objection of Ocwen Loan Servicing, LLC's Revised Claim Notice Concerning the Servicing Advances Claim* [Docket No. 8771] (the "Objection") in further support of the Objection. The Trust respectfully states as follows:

## REPLY

1. Ocwen's attempted amendment of the Servicing Advances Claim as made through the Revised Claim Notice is time-barred and would impermissibly expand Ocwen's rights under the APA. The parties bargained for a one-year limit on Ocwen's ability to assert any claims for breach of a Core Representation. Ocwen now attempts to deprive the Trust of the benefit of that bargain by relying on a vague reservation of rights and a misinterpretation of the APA in support of its position that it is permitted to assert new claims for breach of a Core Representation after the one-year deadline.

2. Under the express language of the APA, the Sellers made representations to the Purchaser as to **each** individual Servicing Advance. To the extent Ocwen asserted a breach of these representations as to any Servicing Advance, it was required to identify each such advance in its Claim Notice. Ocwen understood this requirement, as evidenced by the Initial Claim Notice, which asserted claims with respect to specifically identified Servicing Advances. Under the plain terms of the APA, any asset that Ocwen failed to identify as suffering an alleged Loss in the Initial Claim Notice can no longer be the subject of a claim by Ocwen.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Objection (as defined herein).

1

3. Ocwen's Revised Claim Notice is not, as Ocwen claims, a simple revision to the Losses identified in the Initial Claim Notice. Rather, it is an attempt to assert new claims after the Termination Date for thousands of *additional* Servicing Advances. Thus, even if Ocwen could amend the Servicing Advances Claim by avoiding the Second Circuit's rules governing proper amendments to administrative claims—which, due to its election to file a broad administrative claim, it cannot—the amendment as it relates to all Servicing Advances that were not identified in the Initial Claim Notice is untimely under the APA.

4. Ocwen's attempt to resuscitate its new Servicing Advance Claims through reliance on a reservation of rights in the Initial Claim Notice fares no better. Of course, Ocwen cannot reserve a right it does not have (i.e., a right to assert new claims after the Termination Date), and thus, Ocwen's purported reservation of rights in the Initial Claim Notice cannot save Ocwen from failing to timely assert indemnification claims against the Trust.

5. Finally, Ocwen's attempt in the Response to further reserve its rights to assert new and different claims under the APA to recover the allegedly defective Servicing Advances must also fail. To the extent Ocwen has theories that it believes entitle it to recovery with respect to such Servicing Advances, it was obligated to raise those theories now. Notwithstanding Ocwen's failure to support its vague assertions of potential additional claims against the Trust, the APA is clear that Ocwen's sole remedy with respect to an alleged breach of a Core Representation is through a Claim Notice issued pursuant to Article XI of the APA. Thus, any additional claims Ocwen believes it may have are also barred.

6. Accordingly, the Trust seeks the entry of an order (the "Proposed Order"), in the form attached hereto as Exhibit 1, disallowing Ocwen's amended Servicing Advances Claim except as such amendment relates to the twelve loans included on both the Initial Claim Notice

2

ny-1195378

and the Revised Claim Notice, and prohibiting Ocwen from asserting any additional claims related to Servicing Advances on the basis that such claims are likewise barred.

## I. THE APA BARS OCWEN FROM ASSERTING CLAIMS AS TO NEW SERVICING ADVANCES

### A. Ocwen Was Required to Identify Each Servicing Advance Subject to a Claim in the Initial Claim Notice

7. Ocwen's Initial Claim Notice asserted claims for breach of the Servicing Advances "Core Representation" set forth in Section 4.9 of the APA in connection with specifically identified loans. Ocwen contends that nothing in the APA prohibits it from amending or supplementing the Initial Claim Notice after the Termination Date to assert additional claims for breach of the Servicing Advances representation related to other loans. *See* Response ¶ 24. In support of its position, Ocwen reads the APA to provide for a single representation covering all Servicing Advances, such that such an assertion of a breach of the representation as to **any** individual Servicing Advance would permit Ocwen to assert breaches as to **all** Servicing Advances transferred to Ocwen under the APA in perpetuity. *Id.* ¶ 25. This interpretation should be rejected by the Court because it is contrary to the express language of the representation itself, conflicts with other provisions of the APA, and would defeat the intent of the parties in agreeing to the Termination Date.

8. The APA expressly provides that each Servicing Advance is a separate asset as to which the Trust made a separate representation. Specifically, section 4.9 of the APA provides that "*[e]ach* Servicing Advance is a valid and subsisting amount owing to Seller . . . and is a legal valid and binding reimbursement right." APA § 4.9(c) (emphasis added). *See also id.* § 1.1 (defining Servicing Advances to be the aggregate amount outstanding with respect to **each** loan). In interpreting contracts, courts are to give meaning to every word or phrase in a contract. *See, e.g., JA Apparel Corp. v. Aboud*, No. 07-CV-7787, 2008 WL 2329533, at *9 (S.D.N.Y. June 5,

3

ny-1195378

2008), *vacated and remanded*, 591 F. Supp. 2d 306 (2d Cir. 2009) (explaining that "pursuant to a long-standing and unassailable rule of contract interpretation, the Court is required to give meaning to every term in the Agreement."). Black's Law Dictionary defines "each" as: "A distributive adjective pronoun, which denotes or refers to *every one* of the persons or things mentioned; *every one* of two or more persons or things, composing the whole, *separately considered*."[2] Oxford English Dictionary similarly defines "each" as: "Every (*individual* of a number) *regarded or treated separately*."[3] In the context of the APA, the use of the word "each" clearly identifies "Servicing Advances" as individual assets relating to individual loans, where separately identifiable rights—and potential claims—attach to each respective asset. Ocwen's interpretation of the APA reads section 4.9(c) no differently than if it referred to "all Servicing Advances" instead of "each Servicing Advance." The specific use of the word "each" must be given meaning.

9. Even if Ocwen's understanding is correct—namely, that a breach as to any Servicing Advance amounts to a breach of the entire Core Representation covering all Servicing Advances—this does not allow Ocwen to escape the fact that the Debtors made a representation as to *each* Servicing Advance. Under Article XI of the APA, in order to assert a timely indemnification claim, Ocwen was required to identify each Servicing Advance that it believed was the subject of a Loss *in reasonable detail* as of the Termination Date. Specifically, the APA makes clear that Ocwen is permitted to assert an indemnification claim as to an alleged breach of a "Core Representation" only to the extent it provided notice of such claim by the Termination Date. *See* APA § 11.6 (providing, among other things, that Core Representations—which include

---

[2] Black's Law Dictionary 455 (5th ed. 1979) (emphasis added).

[3] Each Definition, oed.com, *available at* http://www.oed.com/view/Entry/58924?redirectedFrom=each& (last visited July 13, 2015) (emphasis added).

4

ny-1195378

representations relating to Servicing Advances—survive for one year past the Closing Date, as provided in Section 11.1(b)). The APA further requires that any notice identify claims and Losses associated with such claims "in reasonable detail," including providing the dollar amount (or method of computation) of Losses associated with each claim as of the Termination Date, if then known. *See id*. §§ 11.1, 11.2; SoF ¶ 5. To the extent Ocwen failed to identify a Loss in reasonable detail in the Initial Claim Notice, its right to assert such a Loss has expired. Ocwen plainly understood this requirement, because Ocwen complied with it by providing a schedule of the individual Servicing Advances it asserts breached the Sellers' representations in the Initial Claim Notice. Losses with respect to Servicing Advances not included in the Initial Claim Notice were clearly not identified "in reasonable detail" and cannot now be the subject of indemnification claims by Ocwen.

10. The Debtors bargained to indemnify Ocwen only for claims brought within one year of the Closing Date—not claims brought after the Termination Date, let alone ***over two years*** after the Closing Date. Ocwen's interpretation of the APA should be rejected because it would deprive the Trust of the benefit of this bargain and would render the provisions of Article XI of the APA superfluous, defeating the finality the Termination Date was intended to impose.[4] *See Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 580 (2d Cir. 2006) (stating that, under New York law, courts must enforce contract provisions clearly expressing the parties' intent); *see also Innophos, Inc. v. Rhodia, S.A.*, 882 N.E.2d 389, 392 (N.Y. 2008) (stating that, under New York law, "the fundamental, neutral precept of contract interpretation is that

---

[4] Ocwen argues that the Trust, upon receipt of the Initial Claim Notice, never responded that Ocwen was prohibited from amending its Initial Claim Notice. *See* Response ¶ 24. At no time did the Trust believe that Ocwen had the right to amend anything but the ***existing*** claims as alleged in the Initial Claim Notice. Notwithstanding Ocwen's statements to the contrary, the Trust informed Ocwen of this position in a letter it sent to Ocwen, dated August 20, 2014, relating to, among other things, the Servicing Advances Claim. *See* SoF ¶ 13; letter dated August 20, 2014, attached hereto as Exhibit 2, at 2.

agreements are construed in accordance with the parties' intent, and that the best evidence of what parties to a written agreement intend is what they say in their writing.") (citation and internal citations omitted).

11. Accordingly, the Trust's interpretation of the APA—which requires Ocwen to have identified with specificity the individual Servicing Advance as to which the Debtors are alleged to have breached the applicable representation in a Claim Notice as of the Termination Date in order to preserve an indemnification claim with respect to such Servicing Advance—is the clear intent of the APA and bars any amendment of the Initial Claim Notice that adds new Servicing Advances.

**B.    The APA Does Not Permit Ocwen's Amendment of the Servicing Advances Claim**

12. Analyzing the Revised Claim Notice under the applicable APA provisions plainly demonstrates that Ocwen's amendment of the Servicing Advances Claim is improper. The APA contemplates that a permitted amendment may be to "the amount or the method of computation of the amount of such claim" if such amount of method of computation is not known as of the Termination Date. *See* APA § 11.2(a). Thus, while amendments could result in the revision of alleged Losses as to claims specifically identified in a Claim Notice, such amendments are limited to Losses already specified by the Termination Date. The Trust is ***not*** arguing that the APA prohibits Ocwen from amending the dollar amount of alleged Losses associated with the Servicing Advance Claims already identified as of the Termination Date (i.e., Losses associated with the twelve loans identified in both the Initial Claim Notice and the Revised Claim Notice). The Trust maintains only that the APA does not permit Ocwen to "amend" its Claim Notice to add claims for newly identified Servicing Advances that were not detailed in the Initial Claim Notice. *See id.*

6

ny-1195378

### C. Ocwen's Purported Reservation of Rights in the Initial Claim Notice Cannot Expand Its Rights Under the APA

13. Ocwen argues that general language in the Initial Claim Notice purporting to reserve its rights to amend each of the specified claims also gave it the open-ended right to identify additional Servicing Advances giving rise to indemnification claims. Ocwen's reliance on the reservation of rights is misplaced, however, because a party cannot reserve a right it does not have. *See, e.g., Winshall v. Viacom Int'l Inc.*, C.A. No. 6074-CS, 2012 WL 6200271, at *8 (Del. Ch. Dec. 12, 2012) (finding claim raised in purchaser's indemnification claim notice letter, sent nearly three months after the 18-month claim notification period had elapsed, was time-barred and "placeholder" language in notice letter "in which it reserved its rights to 'seek indemnification for any other claims or matters . . . by other third parties' . . . constitute[d] a unilateral rewriting of the contract and [was] impermissible."). For the reasons discussed above, Ocwen may have the ability under the APA to reserve rights to amend claims with respect to assets it actually identified in the Initial Claim Notice, but it cannot reserve the right to assert additional indemnification claims after the Termination Date as it is now attempting to do. Such a reservation would impermissibly expand Ocwen's rights under the APA by allowing it to circumvent the express provisions of the APA requiring that it identify all claims for breach of a Core Representation in reasonable detail by the Termination Date.

14. Further, Ocwen's arguments that the estates would "reap a windfall" if Ocwen is prevented from asserting its full claim for alleged breaches by the Sellers are without merit. *See* Response ¶ 30. Ocwen agreed to limit its right to seek indemnification to only those claims it identified in reasonable detail by the Termination Date, which was factored into the Purchase Price it paid for the Debtors' assets. Ocwen's failure to timely identify the full universe of

7

potential indemnification claims is no one's fault but its own, as the relevant accounts and records were in Ocwen's sole custody and control.

## II. APPLICABLE SECOND CIRCUIT PRECEDENT LIKEWISE BARS OCWEN'S AMENDMENT TO THE SERVICING ADVANCES CLAIM

15. Ocwen asserts that the Trust improperly conflates Ocwen's Administrative Claim Requests with its "unrelated" indemnification claims listed in the Initial Claim Notice. *See* Response ¶ 31. This argument disregards the plain language of Ocwen's Administrative Claim Request, which contains an extremely broad claim for alleged breaches of the APA that clearly incorporates the Servicing Advances Claim. *See* Administrative Claim Request [Docket No. 6297] ¶ 28 ("assert[ing] a contingent Administrative Claim in an unliquidated amount for any and all amounts with respect to breaches of the Ocwen APA," including a reservation of its right to enforce any breaches of Section 4.9 (Mortgage Servicing Portfolio; Servicing Agreements; the Business) against the "Indemnity Escrowed Funds"); SoF ¶ 9; *see also* Initial Claim Notice ¶ 2.b. (asserting a breach of the APA relating to the Servicing Advances); SoF ¶ 10. Therefore, Ocwen's filing of the Administrative Claim Request subjected these indemnification claims to the administrative claims reconciliation process and the related standards governing such claims, which include the Second Circuit's rules regarding when the amendment of administrative expense claims is permissible.

16. The Second Circuit requires courts to engage in a two-step inquiry to determine whether to allow a post-bar date amendment of an administrative expense claim. *See Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 133 (2d Cir. 2005) ("[T]he court must subject post bar date amendments to careful scrutiny to assure that there was no attempt to file a new claim under the guise of [an] amendment.") (internal citation and quotation omitted). The initial inquiry concerns whether the amendment "relates back" to a timely

8

filed claim, where a court considers factors such as whether the claimant corrects a defect in form, describes the claim with greater particularity, or pleads a new theory of recovery based on the facts set forth in the original claim. *See id.* If the "relation back" test is satisfied, the court examines equitable considerations to allowing the amendment, including, among other things, whether the amendment would unduly prejudice the opposing party and whether the late-filing claimant can justify its delay. *Id.*

17. Based on these standards, Ocwen's attempt to amend the Servicing Advances Claim through the Revised Claim Notice is, at best, only proper as to its modification of the alleged Losses associated with the twelve loans that were also included in the Initial Claim Notice. To the extent the amendment purports to add claims related to thousands of newly identified Servicing Advances, it fails the "relation back" inquiry, as these new advances neither correct a defect in form, nor describe the original list of alleged Servicing Advances with greater particularity, nor plead a new and valid theory of recovery on the Servicing Advances Claim.

18. Since Ocwen's amendment fails the "relation back" test, the Court need not address any equitable considerations. However, even if the Court were to address such considerations, they would weigh heavily in the Trust's favor. Ocwen argues that the Trust will suffer no prejudice should Ocwen be permitted to litigate all newly identified Servicing Advances in the Revised Claim Notice, on the basis that there has not yet been any litigation with respect to the demand for indemnity with respect to the Servicing Advances, and, as a result, there would be no back-tracking or duplication required by the Trust in reconciling the claims. *See* Response ¶ 32. This argument is simply incorrect—the parties have fully briefed the Trust's objection to Ocwen's administrative claims, including the Servicing Advances Claim. *See* Objection ¶¶ 42, 47. That process began over five months ago. Requiring the Trust to now begin the review and objection process in connection with thousands of new indemnification claims ***would unquestionably*** result

9

in additional expense, litigation costs, and delay, all due to Ocwen's dilatory behavior. Moreover, the Trust is prejudiced by being unable to access the undisputed escrowed funds currently residing in the Indemnity Escrow Account.[5]

19. Likewise, Ocwen cannot justify its delay. Ocwen had all of the information necessary to conduct a full review of the Servicing Advances prior to the Termination Date as required by the APA. The Trust should not have to bear the consequences of Ocwen's failure to perform such a review. Accordingly, Ocwen's amendment of its Administrative Claim Request is improper and barred under applicable Second Circuit law governing the amendment of administrative expense claims.[6]

### III. OCWEN IS NOT PERMITTED TO BRING ANY ADDITIONAL CLAIMS AGAINST THE TRUST

20. In the Response, Ocwen purportedly reserves the right to assert additional bases under which it can pursue claims related to the Servicing Advances Claim against the Trust, including under theories based on breach of contract or unjust enrichment. *See* Response n.4. This reservation is ineffective for two reasons. First, pursuant to the *Stipulation and Order Between the ResCap Liquidating Trust and Ocwen Loan Servicing, LLC Regarding the Servicing Advances Dispute* [Docket No. 8673] (the "Stipulation"), Ocwen was required to address in its

---

[5] *See* APA § 11.4 ("If at any time after the Termination Date the amount of the Indemnity Escrowed Funds then held by the Indemnity Escrow Agent exceeds the sum of any amounts subject to Outstanding Claims, ResCap and Purchaser shall execute and deliver a certificate requesting the Indemnity Escrow Agent to deliver such excess amount to Sellers . . . ."). Accordingly, contrary to Ocwen's contention (*see* Response n.10), these various forms of prejudice that would befall the Trust, which stem from Ocwen's unreasonable and unjustified delay (as discussed herein), should preclude Ocwen's amendment of the Servicing Advances Claim.

[6] Ocwen asserts that the Trust has not established, nor does the SoF support, any element of the Trust's equitable estoppel claim. *See* SoF ¶ 33. The Trust disagrees because: (i) Ocwen's withholding from the Trust, until **over two years** post-Closing Date, Ocwen's intention to add new Servicing Advances to the Servicing Advances Claim while the parties completed briefing on the Trust's objection to the Administrative Claim Requests and Initial Claim Notice amounts to a concealment of material facts; (ii) Ocwen intended for the Trust to rely on the claims information submitted as of the Termination Date for the Trust's purpose of analyzing the validity of such claims; and (iii) Ocwen possessed all information required to include all alleged Servicing Advances in its Initial Claim Notice, which provided additional detail to its Administrative Claim Request, but failed to do so.

Response all claims related to whether Ocwen has the right to revise the Servicing Advances Claim through the Revised Claim Notice. Specifically, the Stipulation provided that the first phase of litigating the Servicing Advances Claim required that the parties address the issues raised by the Revised Claim Notice; the parties reserved their respective rights to later address the merits of the Servicing Advances Claim as necessary. *See* Stipulation at 3-4. If Ocwen believed that other claims (either under the APA or on equitable grounds) supported its revision of the Initial Claim Notice, it should have asserted such theories in its Response, as part of the first phase of these proceedings. Ocwen failed to explain those theories and is now barred from doing so in the future.

21. Regardless of what additional theories for recovery Ocwen believes it may have, any other claims are barred under the clear terms of the APA. Pursuant to Section 11.7 of the APA, the ***sole and exclusive remedy*** for any breach of a Core Representation is through the indemnification mechanism provided in Article XI of the APA. *See* APA § 11.7. Section 11.7 makes clear that this limitation is intended to cover any claim related to such an alleged breach, "whether under this Agreement or arising under common law or any other Law. . . ." *Id.* Thus, other claims for breach of contract or unjust enrichment that relate to an alleged breach of a Core Representation (as Ocwen acknowledges any such claims would) are expressly barred by the APA.

WHEREFORE, the Trust respectfully submits that the relief requested in the Objection should be sustained in its entirety, and that the Court enter the Proposed Order and any other relief it deems just.

| | |
|---|---|
| Dated: July 23, 2015 | /s/ Todd M. Goren<br>Todd M. Goren<br>Jamie A. Levitt<br>Erica J. Richards<br>Meryl L. Rothchild<br>MORRISON & FOERSTER LLP<br>250 West 55th Street<br>New York, New York 10019<br>Telephone:  (212) 468-8000<br>Facsimile:  (212) 468-7900<br><br>*Counsel to the ResCap Liquidating Trust* |