MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew

BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
John W. Smith T (admitted *pro hac vice*)

*Counsel for the ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |

**RESCAP LIQUIDATING TRUST'S REPLY TO THE RESPONSE IN OPPOSITION TO OBJECTION TO PROOFS OF CLAIM NOS. 5275 AND 7464 FILED BY THE LAW OFFICES OF DAVID J. STERN, P.A.**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT .......... 1
REPLY .......... 2
A. DJSPA Does Not Dispute That It Committed Material Breaches Of The MSA .......... 2
B. DJSPA Does Not Dispute That Delaware Law Recognizes The First Material Breach Doctrine Or That The Breaches Committed By DJSPA Were In Fact Material .......... 3
C. Section 240 Of The Restatement Does Not Save DJSPA's Claims .......... 4
D. GMACM Did Not Waive The Material Breaches Of DJSPA .......... 6
E. The Parties Entered Into One Contract – The MSA – Which Governed The Parties' Entire Relationship, Including The Curative Work .......... 8
F. Declarations Submitted In Support Of The Objection Should Be Considered By The Court .......... 11
G. Transfer Fees Are Properly Recoverable From DJSPA .......... 12
H. GMACM'S Counterclaims Are Properly Included In The Claims Objection .......... 13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abdallah v. Caribbean Sec. Agency*,
557 F.2d 61 (3rd Cir. 1977) .......... 4

*Aeroglobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*,
871 A.2d 428 (Del. 2005) .......... 7

*Berkowitz v. Delaire Country Club, Inc.*,
126 So. 3d 1215 .......... 8

*Brandin v. Gottlieb*,
Civ. A. 14819, 2000 WL 1005954 (Del. Ch. July 13, 2000) .......... 4

*Conley v. Dan-Webforming Int'l A/S (Ltd.)*,
1992 WL 401628 (D. Del. Dec. 29, 1992) .......... 4

*Dick Baker Home Improvements, Inc.*, *v. Anderson*,
C.A. No. 01-01-075, 2003 WL 22931395 (Del. Co. Pl. May 10, 2003) .......... 5, 6

*Falcon Steel v. Weber Eng'g*,
517 A.2d 281 (1986) .......... 10

*Heather Constr., Inc. v. Gangi,*
1987 WL 8215 (Del. Super. Mar. 16, 1987), *modified by*, 1987 WL 8880 (Del. Super. Ct. Mar. 31, 1987) .......... 6

*ID Biomed. Corp. v. TM Techs., Inc.*,
Civ. A. No. 13269, 1995 WL 130743 (Del. Ch. Mar. 16, 1995) .......... 6

*Interior Design Concepts, Inc.*, *v. Curtin*,
473 So. 2d 1374 (Fla. Dist. Ct. App. 1985) .......... 6

*Klaassen v. Allegro Dev. Corp.*,
106 A.3d 1035 (Del. 2014) .......... 6

*Lowe v. Bennett*,
Civ. A. No. 94A-05-001, 1994 WL 750378 (Del. Sept. 22, 1994) .......... 5

*Orenstein v. Kahn*,
119 A. 444 (Del. 1922) .......... 5

*Osborn ex rel. Osborn v. Kemp*,
991 A.2d 1153 (Del. 2010) .......... 11

*Phillip Servcs. Corp. v. Luntz (In re Phillip Servcs. (Del.), Inc.)*,
284 B.R. 541(Bankr. D. Del. 2002), *aff'd*, 303 B.R. 574 (D. Del. 2003)....8

*Realty Growth Investors v. Council of Unit Owners*,
453 A.2d 450 (Del. 1982)....7, 8

*Salamone v. Gorman*,
106 A.3d 354 (Del. 2014)....8

*Star States Dev. Co. v. CLK, Inc.*,
C.A. No. 93L-08-048, 1994 WL 233954 (Del. Super. Ct. May 10, 1994)....10

*Winans v. Weber*,
979 So. 2d 269 (Fla. Dist. Ct. App. 2007)....8

**OTHER AUTHORITIES**

43 Am. Jur. Proof of Facts 2d 523 (1985)....5

Fed. R. Evid. 801 & 802....7

Restatement (Second) of Contracts § 240....4, 5

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

The ResCap Liquidating Trust (the "Liquidating Trust"), established pursuant to the terms of the Chapter 11 plan confirmed in the above captioned bankruptcy cases (the "Chapter 11 Cases") [Docket No. 6065], as successor in interest to the above captioned debtors (collectively, the "Debtors"), hereby submits this Reply (the "Reply") to Claimant Law Offices of David J. Stern, P.A.'s Response in Opposition to Rescap Liquidating Trust's Objection to Proofs of Claim Nos. 5275 and 7464 Filed by The Law Offices of David J. Stern, P.A. ("DJSPA") [Doc. 8857, hereinafter, the "Response"].

**PRELIMINARY STATEMENT**

The primary legal issue presented by the Objection is whether DJSPA's material breaches of its services contract with GMAC Mortgage, LLC ("GMACM") preclude it from now seeking millions of dollars for legal services allegedly provided pursuant to that very contract. DJSPA presents two arguments in opposition to this legal issue; however, through the Response, DJSPA neither denies that it breached the Master Services Agreement ("MSA"), nor contests that the breaches themselves were each material. Rather, DJSPA seeks to recover for the "value" of its services *in spite of* its admitted breaches.

In an effort to avoid defending its multiple breaches of the MSA, DJSPA argues that its contract with GMACM was divisible into "thousands" of individual contracts for services – a theory that finds no basis in Delaware law. DJSPA further contends that a significant portion of its services were provided pursuant to a brand new contract for "curative work" that was completely distinct from the MSA, even though the MSA, by its express terms, was intended to govern the parties' ongoing relationship. As discussed herein, neither argument warrants allowance of the Claims. The Court can and should dispose of this matter in its entirety by

recognizing the now-admitted fact that DJSPA materially breached its obligations under the MSA and therefore, is not permitted to recover from GMACM through an allowed claim against the Liquidating Trust.

## REPLY

A. DJSPA Does Not Dispute That It Committed Material Breaches Of The MSA

1. The Response submitted by DJSPA presents several legal arguments against application of the First Material Breach doctrine to DJSPA's breach of contract claims, but DJSPA does not contest (a) that it did in fact breach the MSA between DJSPA and GMACM, or (b) that the breaches were each *material*.[1]

2. In its Objection, the Liquidating Trust sets forth numerous material breaches committed by DJSPA during the course of its work for GMACM, starting not long after the MSA was agreed to and continuing through November 2010, when GMACM discovered the breaches and terminated that MSA. These material breaches are described in ¶¶ 47-65 (pp. 20-29) of the Objection and include:

- The investigation into widespread improprieties and unethical practices at DJSPA by the Florida State Bar (which resulted in the dissolution of DJSPA and disbarment and other sanctions against several of its attorneys), which breached ¶ 6.8 of the MSA;
- DJSPA's removal from the approved attorney network list of FHLMC and FNMA, which breached ¶ 6.6 of the MSA;
- Failure to provide competent legal services and comply with good industry practices, which breached ¶ 6.1 of the MSA;
- Failure to provide training and oversight to DJSPA personnel assigned to handle matters for GMACM, which breached ¶ 6.1 and ¶ 8.8 of the MSA;

[1] Stern's sworn Declaration, submitted in support of the Response, offers no rebuttal to the proof submitted by the Objection outlining the material breaches committed by his firm (and him personally). Indeed, as noted in n. 2 *infra*, Stern ***admits*** to certain breaches.

- Assigning obligations to non-DJSPA entities without GMACM's "*prior written approval*," which breached ¶ 18.1 of the MSA;[2] and

- Utilizing foreign-based entities to provide services that should have been performed by DJSPA, which breached ¶ 8.1 of the MSA.

3. Rather than attempt to deny the misconduct that constitutes the various breaches under the MSA, DJSPA suggests to the Court that it should focus instead on affidavits executed by a former GMACM employee that led to the need for the curative work. (Response, at pp. 3-4, 23-25; Stern Decl., Ex. 2, at pp. 5-13). DJSPA's attempts to focus on Jeffrey Stephan and to paint GMACM in as negative a light as possible are entirely irrelevant to the substantive arguments raised in the Objection. That is, while the need to correct thousands of affidavits is a matter of public record, it certainly has no bearing on whether there was a separate and distinct agreement between the parties for DJSPA to assist with affidavit corrections. Moreover, whatever actions precipitated the need for corrective affidavits also has no effect on DJSPA's lack of performance and failure to comply with the MSA.

B. <u>DJSPA Does Not Dispute That Delaware Law Recognizes The First Material Breach Doctrine Or That The Breaches Committed By DJSPA Were In Fact Material</u>

4. DJSPA acknowledges the First Material Breach Doctrine in its Response. (Response, at p. 15). DJSPA also does not contest that the breaches committed by DJSPA satisfy the requirements for materiality set forth in the Objection. (*See* Objection, at ¶ 44 (p. 19)) (citing *BioLife Solutions, Inc. v. Endocare, Inc.*, 838 A.2d 268, 278 (Del. Ch. 2003)).

---

[2] In his Declaration, Stern admits that DJSP Enterprises, Inc. "was formed to provide, through subsidiaries, processing and non-legal services" that otherwise would have been provided by DJSPA to GMACM and other DJSPA clients. (Doc. 8862-1 ("<u>Stern Decl.</u>"), at ¶ 5; *see also* Response, at p. 4). He also admits to the formal investigation into his firm's misconduct. (Stern Decl., at ¶ 11). DJSPA tries to sweep these material breaches aside by contending that Stern "discussed" them with GMACM during a meeting about the curative work. (Stern Decl., at ¶ 11). DJSPA further argues that GMACM waived these two material breaches by continuing thereafter to work with DJSPA. (Response, at p. 19; Stern Decl., at ¶¶ 11 & 13). As more fully set out below, there are several problems with this argument, including that there was never any written waiver as to any breaches. (*See* MSA, at ¶ 18.1).

C. Section 240 Of The Restatement Does Not Save DJSPA's Claims

5. Rather than discuss the application of the First Material Breach doctrine under controlling Delaware case law,[3] DJSPA argues that the doctrine does not bar its recovery in this instance because the services provided by DJSPA were distinctly divisible, entitling it to recover for each mini-contract that DJSPA says it performed. That is, DJSPA surmises that it and GMACM entered into and performed "thousands" of individual contracts, one for each loan file assigned to DJSPA for handling. (Response, at pp. 15-19). By extension, then, DJSPA argues that GMACM must pay for each "pre-defined" legal service, even if DJSPA was in material breach of the governing MSA. (Response, at pp. 15-17). This theory finds no support in applicable Delaware case law.

6. DJSPA attempts to rely on the Restatement (Second) of Contracts § 240 in support of its claim for payment. However, this section has never been applied by a Delaware court to reward a party's partial performance in the face of the same party's prior material breach,[4] and there is no reason to expect a Delaware court would break new ground and apply § 240 to the contractual relationship between DJSPA and GMACM. In fact, for § 240 to even apply, the contract must be deemed "divisible" or "severable." Restatement (Second) of Contracts § 240 cmt. b.

---

[3] The Response does not address any of the Delaware cases applying the First Material Breach Doctrine that are cited by the Liquidating Trust in its Objection. (Objection, at ¶¶ 41-46 (pp. 18-20)).

[4] The most that the Response says about § 240 in Delaware is that it has been cited in three opinions. In the first, *Brandin v. Gottlieb*, Civ. A. 14819, 2000 WL 1005954, at *21 (Del. Ch. July 13, 2000), the Delaware Chancery Court quotes § 240 in a footnote without any discussion or application. DJSPA also cites *Conley v. Dan-Webforming Int'l A/S (Ltd.)*, 1992 WL 401628 (D. Del. Dec. 29, 1992), but this decision cites § 240 (among other authorities) for the statement that "[f]or plaintiffs to recover any damages under Delaware law, they must first show 'freedom from fault with respect to performance of dependent promises, counterpromises, or conditions precedent.'" *Id*. at *22 (citation omitted). That is, if anything, *Conley* supports the position of the Liquidating Trust. Lastly, DJSPA cites *Abdallah v. Caribbean Sec. Agency*, 557 F.2d 61 (3rd Cir. 1977), which references a *draft* of § 240 for the proposition that an ambiguous contract could possibly be clarified by parol evidence at trial. *Id*. at 65. In sum, none of the cases cited in the Response involved a party utilizing § 240 to avoid responsibility for having committed a material breach of a contract.

7. Delaware case law holds that an ongoing services contract of the type between DJSPA and GMACM is not susceptible to divisibility even though the services themselves can be segregated into finite projects. *See Lowe v. Bennett*, Civ. A. No. 94A-05-001, 1994 WL 750378, at *2 (Del. Sept. 22, 1994) (rejecting argument that a lawn service entered into a contract to provide maintenance services to a customer was divisible). The Delaware court in *Lowe* held that "the parties intended for the agreement to be an entire contract . . . [e]ven though the type and amount of services provided varied from month to month, [because] the parties generally had an overall agreement as to what work was to be done." *Id.,* at *3*; see also Orenstein v. Kahn*, 119 A. 444, 446 (Del. 1922) (holding that "[i]f there be a single assent to a whole transaction involving several things or several kinds of property, a contract is always entire[;] [i]f, however, there be a separate assent to each of the several things involved, it is always divisible.").

8. Likewise, and discussed further below, it is clear that DJSPA and GMACM intended the MSA to be a non-divisible contract governing their entire relationship. There was a single assent to the governing document (i.e., the MSA), which contemplates that the DJSPA firm would be receiving and completing legal assignments on an ongoing basis. *See also* 43 Am. Jur. Proof of Facts 2d 523 at § 1 (1985) ("As a general rule, partial performance of an entire and indivisible contract by one of the parties does not entitle him to performance of the contract by the other or to a recovery against the other on the contract or on the basis of quantum meruit.")

9. In addition, for DJSPA to recover on its part performance theory, it must prove that it in fact provided the services on each divisible transaction, as well as the reasonable value for each such service. *See Heather Constr., Inc. v. Gangi,* 1987 WL 8215, at *3 (Del. Super. Mar. 16, 1987), *modified by*, 1987 WL 8880 (Del. Super. Ct. Mar. 31, 1987); *Dick Baker Home*

*Improvements, Inc.*, *v. Anderson*, C.A. No. 01-01-075, 2003 WL 22931395 (Del. Co. Pl. May 10, 2003); *see also Interior Design Concepts, Inc.*, *v. Curtin*, 473 So. 2d 1374, 1376 (Fla. Dist. Ct. App. 1985). Aside from not pleading such a claim, all that DJSPA has done (and will be able to do) is produce thousands of pages of invoices and allege, generally, that it has not be paid.[5]

10. Even assuming *arguendo* that § 240 could be applied such that each loan file and the corresponding payment obligation were "agreed equivalents," DJSPA's breaches are so egregious that they apply to all of the constituent projects. As discussed in the Objection, the breaches committed by DJSPA were material, meaning the breach affects the "essence" of the parties' relationship, not some minor aspect. (Objection, at ¶¶ 41-65 (pp. 18-28)). DJSPA does not contest this conclusion in its Response. DJSPA's multiple breaches of the MSA – the fact that it was the subject of a formal investigation (which resulted in its dissolution), that it lost the ability to prosecute foreclosures on government-backed loans, that it repeatedly failed to provide competent legal services and instead, relied on personnel who had not been adequately trained or supervised, and that it utilized unauthorized entities to provide many of the services – cannot be divorced from the thousands of individual projects DJSPA was assigned to handle.

D. <u>GMACM Did Not Waive The Material Breaches Of DJSPA</u>

11. DJSPA argues alternatively that its material breaches of the MSA were waived by GMACM (*see* Response, at pp. 17-19), but DJSPA provides no proof to support its position. "Waiver is the voluntary and intentional relinquishment of a known right[,]" which requires that

[5] In this regard, DJSPA is actually appealing to equity, arguing that application of the First Material Breach doctrine would result in unjust enrichment and that DJSPA should be permitted to recover quantum meruit. (Response, at pp. 17 & 20). However, DJSPA did not plead claims for unjust enrichment or quantum meruit in its complaint. Further, since there is a contract governing the parties' relationship, DJSPA "cannot seek recovery under an unjust enrichment theory [since] a contract 'is the measure of [the] plaintiff's right.'" *ID Biomed. Corp. v. TM Techs., Inc.*, Civ. A. No. 13269, 1995 WL 130743, at *15 (Del. Ch. Mar. 16, 1995) (citing *Wood v. Coastal States Gas Corp.*, 401 A.2d 932, 942 (Del. 1979). Finally, "[a] fundamental principal of [Delaware] law is that 'he who seeks equity must do equity.'" *Klaassen v. Allegro Dev. Corp.*, 106 A.3d 1035, 1046 (Del. 2014). This requirement clearly disqualifies DJSPA from seeking equitable relief under the circumstances.

the waiving party have "knowledge of all material facts" affecting its decision to waive. *Realty Growth Investors v. Council of Unit Owners*, 453 A.2d 450, 456 (Del. 1982) (citations omitted). The "standards for proving waiver under Delaware law are quite exacting," as the "facts relied upon to prove waiver must be unequivocal." *Aeroglobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 444 (Del. 2005) (citations omitted). DJSPA does not remotely meet this exacting standard.

12. The language of the MSA – ignored by DJSPA in its Response – eviscerates DJSPA's argument, and provides, in pertinent part, as follows:

> 21.2 **No Waiver:** No delay or omission by either party to exercise any right or power it has under this Agreement shall impair or be construed as a waiver of such right or power. A waiver by any party of any breach or covenant shall not be construed to be a waiver of any succeeding breach or any other covenant. All waivers must be signed by the party waiving the rights.

(*See also* MSA, at ¶ 21.3) (providing that "waiver" is not valid "unless in writing and signed")). DJSPA provides no evidence of a written waiver because there was none.

13. DJSPA's only support for its waiver argument stems from Stern's Declaration alleging that Stern mentioned *two* of the material breaches to GMACM during discussions about the curative work. (Stern Decl. at ¶ 5).[6] Simply mentioning that the firm was the target of a formal investigation and that his firm had utilized a separate entity to provide services does not constitute an affirmative and unequivocal assent by GMACM to waive its rights (and certainly not a written one). Nor does it address the other material breaches which DJSPA committed.[7]

---

[6] This testimony is inadmissible hearsay, *see* Fed. R. Evid. 801 & 802, but the two material breaches allegedly discussed were the formal investigation into DJSPA and DJSPA's use of DJSP Enterprises to provide services to GMACM. (Stern Decl., at ¶ 11).

[7] DJSPA does not cite any controlling Delaware law for its waiver theory, relying instead on *Williston* and cases from New York and Florida. (Response, at p. 18 n.17-18). Yet none of these authorities involved a contractual requirement that any waiver be in writing, nor did they involve numerous material breaches, over and above the one (Cont.'d)

E. The Parties Entered Into One Contract – The MSA – Which Governed The Parties' Entire Relationship, Including The Curative Work

14. DJSPA attempts to carve out a significant portion of its prepetition work under the MSA, and suggests that such services were provided to GMACM pursuant to a new contract that was completely "separate and distinct" from the MSA. (Response, at pp. 19-21). This argument is contrary to applicable Delaware law and unsupported by the record evidence, including the language of the MSA and the language of correspondence between GMACM and DJSPA, which DJSPA now says comprise "the Curative Agreement."[8]

15. Under Delaware law, the contracting parties' intentions "determine whether two separately executed documents are in reality one agreement." *Phillip Servcs. Corp. v. Luntz (In re Phillip Servcs. (Del.), Inc.)*, 284 B.R. 541, 546 (Bankr. D. Del. 2002), *aff'd*, 303 B.R. 574 (D. Del. 2003).[9] The parties' intention is best revealed in the language of any written agreement between them. *Salamone v. Gorman*, 106 A.3d 354, 368 (Del. 2014) ("Under standard rules of contract interpretation, a court must determine the intent of the parties from the language of the contract.") (citation omitted).[10]

16. The plain language of the MSA demonstrates that it provided a global framework for the parties' entire and ongoing relationship, stating:

---

allegedly brought to the attention of the party accused of waiving. That is, even if Stern's hearsay declaration is accepted as true, knowledge of two breaches does not constitute the "knowledge of all material facts" required for waiver. *Compare Winans v. Weber*, 979 So. 2d 269, 274 (Fla. Dist. Ct. App. 2007), *with Realty Growth*, 453 A.2d at 456.

[8] "Curative Agreement" is a reference term used by Stern in his Declaration; it was not a term ever used by the parties. (*See* Stern Decl., at ¶ 12).

[9] *See also Berkowitz v. Delaire Country Club, Inc.*, 126 So. 3d 1215, 1220 (Fla. Dist. Ct. App. 2012) ("Where an agreement comprises more than one document, the documents should be considered together in interpreting the parties' agreement.")

[10] Nowhere in its Response does DJSPA reference the language of the MSA when arguing about what the parties intended.

> it is the intention of the parties to establish this Agreement to govern the respective rights, duties, and obligations of the parties . . . [which s]hall be performed in accordance with the [MSA].

(MSA, at p. 1). Stern himself describes the MSA similarly, stating that the MSA "provided the terms by which DJSPA would provide legal services and costs for the benefit of GMAC…." (Stern Decl., at ¶ 3). The MSA was broad in its scope, and allowed the parties to provide for the precise nature of particular Services to be provided through "Projects" that would be described in supplemental writings. The MSA described "Projects" as follows:

> **Project:** During the Term (as defined herein), Client or Company may identify services that Company can provide to the Client ("Project(s)"). Each Project may include provisions of services ("Services") and/or delivery of certain products or other items ("Deliverables"). Each Project will be described, *along with any terms and conditions that are additional to the terms and conditions of this Agreement*, in a Statement of Work, which may contain specifications, schedules, milestones, payments, or any other terms and conditions mutually agreed upon by the parties. *The terms and conditions of this Agreement shall be applicable to each Project and are incorporated by reference into each Statement of Work.*

(MSA, at ¶ 1) (emphasis added). In other words, to the extent it can be described as distinct, the "curative work" was one of the Projects identified by the parties to be performed pursuant to the MSA, and the correspondence between the parties exchanged in the fall of 2010 reduced specific terms applicable to the project work to writing, as the MSA expressly contemplated would happen. (*See* MSA, at ¶ 1).

17. The MSA provides that important terms and conditions such as pricing and completion dates – which might be unique to each Project – could not and therefore would not be defined in the MSA but would be "set forth" in subsequent writings. (MSA, at ¶¶ 1 & 2.1). Such terms and conditions would be "additional to the terms and conditions of" the MSA that "shall be applicable to each Project." (MSA, at ¶ 1). Consistent with this, the only terms and

conditions addressed in the parties' correspondence describing the curative work plan are the pricing, the process for billing this work, and a schedule. (Stern Decl., Ex. 3).[11]

18. A key and undisputed fact overlooked by DJSPA is that *each* of the affidavits that needed to be corrected had been provided in connection with loan files assigned to be handled by DJSPA pursuant to the MSA. DJSPA's correspondence to GMACM makes this point abundantly clear, noting that the work was needed "to correct the foreclosure files our office currently has that may have a potentially defective affidavit." (Stern Decl., Ex. 3). By contrast, there is no reference in the written correspondence exchanged by the parties that would suggest the curative work constituted a new and distinct contract, totally separate from the MSA. (*Id.*). It is therefore undisputed that the curative work – which largely involved the submission of "corrective pleadings in the pending cases" *(Id.*, at p. 1) – was an extension of services assigned pursuant to the MSA and which required additional pricing, invoicing and scheduling specifications.

19. In order to accept DJSPA's argument that there was a "separate and distinct" Curative Agreement, the Court would need to find that DJSPA and GMACM negotiated a master agreement that set forth duties and obligations touching on every aspect of the parties' relationship, operated under this master agreement on every Project for four years, and then suddenly decided to abandon the certainty and protection the master agreement gave both parties for one isolated assignment. Such an interpretation would defeat the purpose of the MSA and conflict with DJSPA and GMACM's course of dealing over several years. *See Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1160 (Del. 2010) ("[r]esults which vitiate the purpose or reduce

---

[11] It does not matter that the correspondences do not expressly refer to the MSA. *See Star States Dev. Co. v. CLK, Inc.*, C.A. No. 93L-08-048, 1994 WL 233954, at *4-5 (Del. Super. Ct. May 10, 1994) (applying *Falcon Steel v. Weber Eng'g*, 517 A.2d 281, 286 (1986).

terms of the contract to an absurdity should be avoided.") (citing *Gore v. Beren*, 867 P.2d 330, 337 (Kan. 1994)).

20. Even if DJSPA's argument is accepted, and the curative work is deemed a new agreement, the First Material Breach doctrine still applies to bar DJSPA's recovery. It cannot be denied that the curative work called for legal services to be provided by DJSPA. DJSPA states that it was required to utilize "an entire section of its offices" utilizing numerous DJSPA personnel to handle the project. (Response, at p. 6). Many of these corrective affidavits would have to be submitted on FHLMC and FNMA loans. However, DJSPA does not dispute that it failed to provide competent legal services untainted by formal investigation, that its personnel were improperly trained and poorly supervised, or that it was disqualified from working on FHLMC and FNMA matters. Consequently, DJSPA's claim for payment for curative work, even to the extent it may have been provided pursuant to a new contract as DJSPA contends (Response, at pp. 20-21), is also defeated by the material breach defense.

F. <u>Declarations Submitted In Support Of The Objection Should Be Considered By The Court.</u>

21. DJSPA argues that the Liquidating Trust fails to put forth competent evidence to shift the evidentiary burden back to DJSPA because Mr. Cunningham's declaration is based on hearsay, opinion, information, and belief. (Response, at pp. 11-14).[12] DJSPA cherry picks specific phrasing from Mr. Cunningham's declaration and fails to provide the Court with the full text of the first and most relevant sentence in paragraph two of the declaration – "Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations, information learned from my review of relevant documents and information I have received from my discussions with other former members of the Debtors'

[12] DJSPA's evidentiary objection is ironic in that it relies heavily on hearsay. (*See* Stern Decl., at ¶ 11).

management or other former employees of the Debtors, the Liquidating Trust, its professionals and consultants." (Objection Ex. 2-A (Cunningham Declaration), at ¶ 2). In other words, Mr. Cunningham's personal knowledge of the facts set forth in his declaration was developed through a variety of sources and he is prepared to testify competently to each of those items set forth in the declaration. Therefore, it is entirely proper for the Court to consider all of the statements in Mr. Cunningham's declaration.

22. After alleging that Mr. Cunningham's declaration is deficient, DJSPA then faults Mr. Cunningham for providing his first-hand view as to the quality (or lack thereof) of the legal services provided by Mr. Stern and DJSPA. Mr. Cunningham's observation is certainly an admissible fact, and it would be inappropriate for the Court to not consider this fact in its analysis of the Objection.

G. Transfer Fees Are Properly Recoverable From DJSPA

23. In an effort to try and limit the potential claims to be set off against any allowed claim, DJSPA boldly suggests that the transfer fees GMACM incurred in order to transfer files managed by DJSPA to other law firms were not foreseeable damages contemplated by the parties upon executing the MSA and/or Curative Agreement. (Response, at p. 26). It is entirely disingenuous for a law firm to try and argue that when it is fired by its client because of its malfeasance, that the law firm should not expect its client to incur the cost to transfer its files to a new law firm. Recognizing the absurdity of its position, DJSPA acknowledges that the MSA specifically provided that DJSPA would provide Termination Services to GMACM. (Response, at p. 26). Accordingly, the Liquidating Trust asserts that such transfer fee damages flow naturally from the termination of the services contract and clearly fall within the Termination Services that DJSPA must provide (and compensate) to GMACM.

H. GMACM'S Counterclaims Are Properly Included In The Claims Objection

24. Contrary to DJSPA's suggestion (Response, at p. 29), GMACM is not seeking any affirmative relief against DJSPA. Rather, in the context of objecting to the allowance of DJSPA's filed claim, the Liquidating Trust identifies counterclaims that, if proven, will reduce the allowed amount of DJSPA's claim. Accordingly, a separate adversary proceeding is not required, because the Court can resolve, in an efficient and expeditious manner, GMACM's counterclaims at the same time it determines the allowance of DJSPA's claim.

Dated: July 28, 2015

/s/ Jordan A. Wishnew

Norman S. Rosenbaum
Jordan A. Wishnew
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*- And -*

John W. Smith T
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8000
Facsimile: (205) 521-8800

*Counsel for the ResCap Liquidating Trust*