**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Chapter 11 |
| Debtors. | Jointly Administered |

**NOTICE OF MOTION OF THE RESCAP LIQUIDATING TRUST FOR
AN ORDER ENFORCING PLAN INJUNCTION AND CONFIRMATION ORDER**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On July 31, 2015, the ResCap Liquidating Trust (the "**Trust**"), as successor to Residential Funding Company, LLC, filed the attached Motion of the ResCap Liquidating Trust for an Order Enforcing Plan Injunction And Confirmation Order Against Decision One Mortgage Company, LLC, PHH Mortgage Corp., Honor Bank f/k/a The Honor State Bank, and Sierra Pacific Mortgage Company, Inc. (the "**Motion**").

A hearing to consider the Motion shall be held before the Honorable Martin Glenn, United States Bankruptcy Judge, in Room 501 of the United States Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York, New York, 10004, on **August 20, 2015 at 10:00 a.m.** (prevailing Eastern Time).

Any objections to the Motion must be made in writing, filed with the Court (with a copy to Chambers) and served in accordance with the Order Under Bankruptcy Code Sections 102(1), 105(a) and 105(d), Bankruptcy Rules 1015(c), 2002(m), and 9007, and Local Bankruptcy Rule 2002-2 Establishing Certain Notice, Case Management and Administrative Procedures [ECF 141] (the "**Case Management Order**"), and served upon the Special Service List, as that term is

defined in the Case Management Order, so as to be actually received no later than **August 10 at 4:00 p.m.** (prevailing Eastern Time).

If no objections to the Motion are timely filed and served on or before the Objection Deadline, the Trust may submit to the Bankruptcy Court an order substantially in the form of the proposed order attached to the Motion as Exhibit 1.

A copy of the Motion may be obtained or viewed for a fee via PACER at www.pacer.gov or (without charge) on the Debtors' restructuring website at www.kccllc.net/rescap.

Dated:  July 31, 2015              QUINN EMANUEL URQUHART
                                     & SULLIVAN, LLP

                                 By:    _/s/ Isaac Nesser_____
                                     Peter E. Calamari
                                     David L. Elsberg
                                     Isaac Nesser
                                     Matthew Scheck
                                     51 Madison Avenue, 22nd Floor
                                     New York, New York  10010
                                     Telephone:  (212) 849-7000
                                     Facsimile:  (212) 849-7100
                                     PeterCalamari@quinnemanuel.com
                                     DavidElsberg@quinnemanuel.com
                                     IsaacNesser@quinnemanuel.com
                                     MatthewScheck@quinnemanuel.com

                                     CARPENTER LIPPS & LELAND LLP
                                     Jeffrey A. Lipps (admitted *pro hac vice*)
                                     Jennifer A.L. Battle
                                     1540 Broadway, Suite 3710
                                     New York, New York  10036
                                     Telephone:  (212) 837-1100
                                     Facsimile:  (212) 837-1108
                                     lipps@CarpenterLipps.com
                                     battle@CarpenterLipps.com

                                     *Counsel for the ResCap Liquidating Trust*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Chapter 11 |
| Debtors. | Jointly Administered |

## MOTION OF THE RESCAP LIQUIDATING TRUST FOR
## AN ORDER ENFORCING PLAN INJUNCTION AND CONFIRMATION ORDER

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND .....................................................................................................................2

      A.    RFC's Prepetition Contracts With The Claimants...................................................2

      B.    RFC's Bankruptcy Filing And The Claimants' Notice Of The Bar Date
           And Plan Injunction .........................................................................................4

      C.    The Minnesota Actions And The Claimants' Counterclaims .................................9

RELIEF REQUESTED..........................................................................................................11

ARGUMENT .......................................................................................................................12

I.      THIS COURT IS THE PROPER FORUM TO ENFORCE THE PLAN
       INJUNCTION...........................................................................................................12

II.     THE COUNTERCLAIMS ASSERT PREPETITION CLAIMS THAT ARE
       BARRED BY THE DISCHARGE AND PLAN INJUNCTION ......................................13

III.    THE COURT SHOULD IMPOSE APPROPRIATE MONETARY RELIEF ..................18

NOTICE..............................................................................................................................19

CONCLUSION....................................................................................................................19

# TABLE OF AUTHORITIES

**Page**

<u>Cases</u>

*In re Affeldt,*
    164 B.R. 628 (Bankr. D. Minn. 1994), *aff'd*, 60 F.3d 1292 (8th Cir. 1995)............................15

*In re Calpine Corp.,*
    No. 05-60200 (BRL), 2007 WL 4326738 (S.D.N.Y. Nov. 21, 2007) .....................................17

*In re Charter Communications,*
    No. 09-11435, 2010 WL 502764 (Bankr. S.D.N.Y. Feb. 8, 2010).........................................13

*In re Chateaugay Corp.,*
    944 F.2d 997 (2d Cir. 1991).................................................................................................15

*In re Chateaugay Corp.,*
    102 B.R. 335 (Bankr. S.D.N.Y. 1989) ...................................................................................17

*In re Dornier Aviation (N. Am.), Inc.,*
    No. 02-82003-SSM, 2002 WL 31999222 (Bankr. E.D. Va. Dec. 18, 2002)...........................15

*In re Drexel Burnham Lambert Grp., Inc.,*
    138 B.R. 687 (Bankr. S.D.N.Y. 1992)...................................................................................14

*In re Eagle Bus Mfg., Inc.,*
    62 F.3d 730 (5th Cir. 1995) .................................................................................................16

*In re Haemmerle,*
    529 B.R. 17 (Bankr. E.D.N.Y. 2015).....................................................................................18

*In re Kings Terrace Nursing Home & Health Related Facility,*
    184 B.R. 200 (S.D.N.Y. 1995)..............................................................................................15

*In re Manville Forest Prods. Corp.,*
    209 F.3d 125 (2d Cir. 2000).................................................................................................14

*In re Manville Forest Prods. Corp.,*
    225 B.R. 862 (Bankr. S.D.N.Y. 1998), *aff'd,* 209 F.3d 125 (2d Cir. 2000) .....................14, 16

*Pearl-Phil GMT (Far E.) Ltd. v. Caldor Corp.,*
    266 B.R. 575 (S.D.N.Y. 2001)...............................................................................13, 14, 15, 16

*Pension Benefit Guarantee Corp. v. LTV Corp.,*
    87 B.R. 779 (S.D.N.Y. 1988).................................................................................................14

*In re Petrie,*
    304 F.3d 223 (2d Cir. 2002)............................................................................................. 12-13

*In re Residential Capital, LLC,*
    508 B.R. 838 (Bankr. S.D.N.Y. 2014).......................................................................2, 17, 18

*In re Residential Capital, LLC*,
  No. 12-12020 (MG), 2015 WL 2256683 (Bankr. S.D.N.Y. May 11, 2015) ..........................16

*In re Riodizio, Inc.*,
  204 B.R. 417 (Bankr. S.D.N.Y. 1997) ..................................................................................14

*In re Szenes*,
  515 B.R. 1 (Bankr. E.D.N.Y. 2014) ......................................................................................19

*Travelers Indem. Co. v. Bailey*,
  557 U.S. 137 (2009) ..............................................................................................................13

## Statutes and Rules

11 U.S.C. § 101(5) ............................................................................................5, 8, 14, 16

11 U.S.C. § 102(1) ..........................................................................................................19

11 U.S.C. § 105(a) ....................................................................................................12, 19

11 U.S.C. § 105(d) ..........................................................................................................19

11 U.S.C. § 524 ...............................................................................................................12

11 U.S.C. § 1141 .........................................................................................................7, 12

28 U.S.C. § 157 ...............................................................................................................12

28 U.S.C. § 1334 .............................................................................................................12

28 U.S.C. § 1408 .............................................................................................................12

28 U.S.C. § 1409 .............................................................................................................12

Fed. Bankruptcy Rule 1015(c) ........................................................................................19

Fed. Bankruptcy Rule 2002(m) .......................................................................................19

Fed. Bankruptcy Rule 3020(d) ........................................................................................12

Fed. Bankruptcy Rule 9007 .............................................................................................19

Local Bankruptcy Rule 2002-2 ........................................................................................19

Minn. R. Civ. P. 3.01 ........................................................................................................9

## Other Authorities

H.R. Rep. No. 95-595 (1977)............................................................................................14

The ResCap Liquidating Trust (the "**Trust**"), as successor to Residential Funding Company, LLC ("**RFC**"), requests that this Court enter an order, substantially in the form annexed hereto as **Exhibit 1** (the "**Enforcement Order**"), enforcing the injunction provisions of the Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, *et al*. and the Official Committee of Unsecured Creditors [ECF 6065-1] (the "**Plan**"), and the Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital LLC, *et al*. and the Official Committee of Unsecured Creditors (the "**Confirmation Order**") [ECF 6065], to prohibit Decision One Mortgage Company, LLC ("**Decision One**"), PHH Mortgage Corp. ("**PHH**"), Honor Bank f/k/a The Honor State Bank ("**Honor Bank**"), and Sierra Pacific Mortgage Company, Inc. ("**Sierra Pacific**") (collectively, the "**Claimants**") from continuing to prosecute claims against RFC or the Trust.  In support of this motion, the Trust respectfully represents as follows:

## PRELIMINARY STATEMENT

This is a motion to enforce the discharge and injunction provisions of the Plan and Confirmation Order as against four counterclaims that Claimants filed and are prosecuting against RFC and the Trust in Minnesota District Court.  The counterclaims seek damages against RFC and the Trust purportedly arising out of prepetition contracts executed well before RFC filed for bankruptcy.  The law is clear: contractual claims arising out of prepetition contracts are prepetition claims, regardless of when the alleged breach occurred.  To preserve claims on prepetition contracts, Claimants were required to file timely proofs of claim in these chapter 11 cases asserting their rights.  Notwithstanding notice of RFC's bankruptcy filing; the deadline for filing proofs of claim; the motion for approval of the disclosure statement; and the confirmation hearing, Claimants Decision One, Honor Bank, and Sierra Pacific did not file any proof of claim.

Claimant PHH filed a proof of claim, but limited it to categories of claims that are not being asserted in its counterclaim.

Because Claimants failed to file timely proofs of claim covering the counterclaims they now assert, their counterclaims are barred by the Plan and Confirmation Order, which discharged all prepetition claims and enjoin any holder of such claims from prosecuting or asserting them against RFC or the Trust. As it has previously done in these cases, this Court should issue an order barring the pursuit of discharged counterclaims in another forum. *See In re Residential Capital, LLC*, 508 B.R. 838, 851 (Bankr. S.D.N.Y. 2014) (enjoining plaintiff from pursuing claims against certain Debtors in state court).

Well in advance of filing this Motion, the Trust informed Claimants that the counterclaims were pending in violation of the Plan and Confirmation Order, and told Claimants of the well-established Second Circuit law on the scope of prepetition claims that forms the basis for this motion. Claimants nonetheless have refused to withdraw the counterclaims, forcing the Trust to bring this motion. Accordingly, the Trust also seeks enforcement of Article IX.I of the Plan, which states that "[a]ny person injured by any willful violation of this injunction shall be entitled to recover actual damages, including costs and attorneys' fees and, in appropriate circumstances, may recover punitive damages from the willful violator."[1]

## BACKGROUND

### A.    RFC's Prepetition Contracts With The Claimants

RFC purchased mortgage loans from each of the Claimants pursuant to contracts (the "**Prepetition Contracts**") dated well before RFC filed its bankruptcy petition.

---

[1]    This motion does not address affirmative defenses Claimants have raised or intend to raise against RFC or the Trust.

Specifically, RFC purchased mortgage loans from Decision One under at least three Correspondent Client Agreements:  one dated January 8, 1999, one dated March 10, 1999, and one dated June 12, 2000 (including amendments and addenda, the "**Decision One Contracts**"). *See* Am. Compl. Ex. A, *RFC v. Decision One*, No. 14-cv-1737 (D. Minn. filed Aug. 25, 2014), ECF 19-1.  The most recent amendment to the Decision One Contracts was dated March 11, 2004.  *Id.*

RFC purchased mortgage loans from Honor Bank under at least two Client Contracts: one dated November 16, 2001, and another dated April 29, 2002 (the "**Honor Bank Contracts**").  *See* Am. Compl. Ex. A, *Trust v. Honor Bank*, No. 14-cv-3942 (D. Minn. filed Apr. 17, 2015), ECF 52-1.

RFC purchased mortgage loans from PHH and its predecessor Cendant Mortgage under at least two contracts (the "**PHH Contracts**"):  a Client Contract dated May 13, 1998 (the "**PHH Client Contract**") between RFC and Cendant Mortgage; and a Mortgage Loan Flow Purchase, Sale & Servicing Agreement dated September 1, 2006 (the "**PHH Flow Agreement**") between RFC and PHH.  *See* Am. Compl. Ex. A, *Trust v. PHH*, No. 14-cv-4701 (D. Minn. filed Apr. 17, 2015), ECF 51-1.

RFC purchased mortgage loans from Sierra Pacific under at least three contracts:  a Seller/Servicer contract dated March 31, 1997, a Client Contract dated March 8, 2001, and another Client Contract dated March 13, 2002 (including amendments and addenda, the "**Sierra Pacific Contracts**").  *See* Am. Compl. Ex. A, *RFC v. Sierra Pacific*, No. 13-cv-3511 (D. Minn. filed May 23, 2014), ECF 75-1.  RFC and Sierra Pacific entered into an amendment to the Sierra Pacific Contracts on April 17, 2002.  *Id.*  RFC and Sierra Pacific also entered into two settlement agreements relating to certain loans sold to RFC by Sierra Pacific, one dated December 19, 2007,

and one dated March 10, 2008 (the "**Sierra Pacific Settlement Agreements**").  *See* Am. Answer at 27, 29 ¶¶ 17, 21, *RFC v. Sierra Pacific*, No. 13-cv-3511 (D. Minn.), ECF 100.

      **B.**     **RFC's Bankruptcy Filing And The Claimants' Notice Of The Bar Date And Plan Injunction**

The Debtors, including RFC, commenced these chapter 11 cases on May 14, 2012 (the "**Petition Date**").  The Debtors' claims and noticing agent served Claimants with notice of RFC's bankruptcy filing on or before June 4, 2012 at their respective addresses as listed on the Creditor Matrix.  *See Affidavit of Service of Melissa Loomis Regarding Notice of Chapter 11 Bankruptcy Cases, Meeting of Creditors, and Deadlines*, Ex. C. p. 1389, Case No. 12-12020 (S.D.N.Y. Bankr.), ECF 336-3 (listing Decision One on the Creditor Matrix); p. 2390, ECF 336-4 (listing Honor State Bank, predecessor to Honor Bank); p. 4236, ECF 336-5 (listing PHH); p. 4974, ECF 336-6 (listing Sierra Pacific).

On August 29, 2012, the Court entered its *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [ECF 1309], setting November 9, 2012 as the deadline for non-governmental entities to file proofs of claim against the Debtors.  The Court subsequently extended the Bar Date to November 16, 2012 (the "**Bar Date**").  *See Order Extending Deadline for Filing Proofs of Claim* [ECF 2093].

Claimants were served with notice of the Bar Date on or before September 7, 2012.  *See Affidavit of Service of Clarissa D. Cu Regarding Notice of Deadlines for Filing Proofs of Claim*, Ex. I, p. 2728, *id.*, ECF 1412-3 (listing Decision One); pp. 1639, 8485, ECF 1412-2, 1412-9 (listing PHH); p. 4695, ECF 1412-5 (Honor Bank); p. 9986, ECF No. 1412-10 (listing Sierra Pacific).  The notice stated:

> You MUST file a proof of claim to vote on a Chapter 11 plan filed by the Debtors or to share in distributions from the Debtors' bankruptcy estates if you have a claim that arose before the filing of the Debtors' Chapter 11 petitions on the Petition Date and it is not one of the types of claims described in section 4 below.

4

Claims based on acts or omissions of the Debtors that occurred before the Petition Date must be filed on or before the applicable Bar Date, even if such claims are not now fixed, liquidated or certain or did not mature or become fixed, liquidated or certain before the Petition Date.

Under section 101(5) of the Bankruptcy Code and as used in this Notice, the word "claim" means: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

Bar Date Notice, ECF 1412, Ex. G § 1.

The Bar Date Notice also warned that any holder of a claim that was required to file a proof of claim but failed to do so would be barred from ever asserting that claim against the Debtors, their successors, or their estates:

**ANY HOLDER OF A CLAIM THAT IS NOT EXCEPTED FROM THE REQUIREMENTS OF THE BAR DATE ORDER, AS DESCRIBED IN SECTION 4 ABOVE, AND THAT FAILS TO TIMELY FILE A PROOF OF CLAIM IN THE APPROPRIATE FORM WILL BE FOREVER BARRED, ESTOPPED AND ENJOINED FROM ASSERTING SUCH CLAIM AGAINST THE DEBTORS, THEIR SUCCESSORS, THEIR CHAPTER 11 ESTATES AND THEIR RESPECTIVE PROPERTY OR FILING A PROOF OF CLAIM WITH RESPECT TO SUCH CLAIM, FROM VOTING ON ANY PLAN OF REORGANIZATION FILED IN THESE CASES AND FROM PARTICIPATING IN ANY DISTRIBUTION IN THE DEBTORS' CASES ON ACCOUNT OF SUCH CLAIM OR RECEIVING FURTHER NOTICES REGARDING SUCH CLAIM.**

*Id.* at § 6.

A review of the Claims Register reveals that neither Decision One nor Honor Bank nor Sierra Pacific filed a proof of claim against RFC or any of the Debtors.  *See* Declaration of Matthew R. Scheck (the "**Scheck Decl.**") ¶ 2.  PHH filed a proof of claim on November 12, 2012, seeking $6.288 million relating to mortgage loans it had sold but to which it retained servicing rights, including $2.314 million under the PHH Flow Agreement and $73,949.94 under

the PHH Client Contract.  *See* Scheck Decl. ¶ 3, Ex. A, Proof of Claim No. 4462.  That proof of

claim sought three specific categories of servicing related claims:  "(1) Amounts owed to PHH

from principal and interest advances as of April 2012; (2) Amounts owed to PHH to recover

corporate advances balance as of April 2012; and (3) Amounts owed to PHH from escrow

advances as of April 2012."  *Id.* at Addendum pp. 1-4.  Nothing in Proof of Claim No. 4462

asserted any other rights, including any other rights arising out of the PHH Contracts.  On

September 18, 2013, PHH amended its proof of claim, reducing its asserted claim under the PHH

Contracts to $167,759.11.  *See* Scheck Decl. ¶ 4, Ex. B, Proof of Claim No. 7173.[2]

On or before July 12, 2013, Claimants were served with notice of the Plan proponents'

motion seeking approval of a disclosure statement in connection with the Plan [ECF 4189].  *See*

*Affidavit of Service of Clarissa D. Cu.*, Ex. F, p. 1390, ECF 4285-3 (listing Decision One);

p. 2407, ECF 4285-5 (listing Honor Bank); p. 4332, ECF 4285-7 (listing PHH); p. 5091, ECF

4285-8 (listing Sierra Pacific).  That notice disclosed the discharge and injunction provisions of

the proposed Plan:

> ARTICLE IX OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND
> INJUNCTION PROVISIONS, AND ARTICLE IX CONTAINS A THIRD
> PARTY RELEASE.  THUS, YOU ARE ADVISED TO REVIEW AND
> CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT
> BE AFFECTED THEREUNDER.

ECF 4189 ¶ 4.  In addition, the proposed Disclosure Statement disclosed that the Debtors or the

Liquidating Trust might pursue claims against the Claimants:

> "Unless any Causes of Action against an Entity are expressly waived,
> relinquished, exculpated, released, compromised, or settled in the Plan (including
> pursuant to the Plan Support Agreement), or by a Final Order, in accordance with

---

[2]    PHH's first proof of claim (No. 4462) was subsequently expunged as superseded.  *See*
*Order Granting Debtors' Fifty-Third Omnibus Objection To Claims (Amended And Superseded
Claims)*, Ex. A p. 2, ECF 6238.

section 1123(b) of the Bankruptcy Code, . . . the Liquidating Trust with respect to
all other Causes of Action, shall retain and may enforce all rights to commence
and pursue, as appropriate, any and all Causes of Action of the Debtors or the
Debtors' Estates, . . . ."

Proposed Disclosure Statement [ECF 4157] p. 111.

The Claimants were each served with a notice of the confirmation hearing on the Plan on

August 29, 2013. *See Affidavit of Service*, Ex. L, p. 1472, Case No. 12-12020, ECF 5196-4

(listing Decision One); p. 2548, ECF 5196-5 (listing Honor Bank); p. 5394, ECF 5196-8 (listing

Sierra Pacific); Ex. A, p. 6, *id.*, ECF 5196-1 (listing PHH). Because, as just noted, PHH had

filed a proof of claim, PHH also received a solicitation CD-ROM and an unsecured ballot,

among other materials. *Id.*, pp. 3-4, ECF 5196.

None of the Claimants objected to confirmation of the Plan, and the Court entered the

Confirmation Order on December 11, 2013. *See* Conf. Order, ECF 6065.

The effective date of the Plan occurred on December 17, 2013 (the "**_Effective Date_**").

*See Notice of Entry of Confirmation Order Confirming the Second Amended Joint Chapter 11*

*Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured*

*Creditors and Occurrence of Effective Date* [ECF 6137].

The Plan and Confirmation Order provide for a discharge (the "**_Discharge_**") of claims

arising prior to the Effective Date:

- The rights afforded herein and the treatment of all Claims and Equity Interests
herein shall be in exchange for and in complete satisfaction and release of all
Claims of any nature whatsoever, including any interest accrued on such
Claims from and after the Petition Date, against the Debtors, the Liquidating
Trust, or any of their respective assets or properties arising prior to the
Effective Date. (Plan Art.IX.K.)

- [E]ach holder . . . of a Claim against or Equity Interest in a Debtor shall be
deemed to have forever waived, released and discharged the Debtors, to the
fullest extent permitted by section 1141 of the Bankruptcy Code, of and from
any and all Claims, Equity Interests, rights and liabilities that arose prior to
the Effective Date . . . . (Conf. Order ¶ 42)

7

The Plan and Confirmation Order adopt the definition of the term "claim" set forth in section 101(5) of the Bankruptcy Code (Plan Art. I.A.53), which defines "claim" as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5).

To enforce the Discharge, the Plan and Confirmation Order also contain injunction provisions (the "**Plan Injunction**"):

- Except as otherwise provided in the Confirmation Order or herein and in accordance with Article IX.E hereof, all Entities . . . who have held, hold or may hold Claims, Equity Interests, Causes of Action or liabilities that constitute Released Claims, are permanently enjoined and precluded, from and after the effective date of the Plan, from: (a) commencing or continuing in any manner or action or other proceeding of any kind against any Released Party whether directly, derivatively or otherwise, on account of or in connection with or with respect to any Released Claims . . . (b) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any Released Party on account of or in connection with or with respect to any Released Claims . . .    and (e) commencing or continuing in any manner or action or other proceeding of any kind against any Released Party on account of or in connection with or with respect to any Released Claims . . . .[3]  (Plan Art. IX.I).

- Except as otherwise expressly specified in the Plan, after the Effective Date, any holder of such Claim or Equity Interest shall be precluded from asserting against the Debtors, the Liquidating Trust, or any of their respective assets or properties, any other or further Claim based on any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before the entry of the Confirmation Order.  (Plan Art.IX.K).

- [A]ll such holders shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any discharged Claim against or terminated Equity Interest in the Debtors.  (Conf. Order ¶ 42).

---

[3]    The term "Released Claims" is in turn defined to include "liabilities that . . . have been discharged . . . pursuant to the Plan." Plan Art. I.A.242.  The term "Released Party" includes the Trust.  Plan Art. I.A.243.

### C.    The Minnesota Actions And The Claimants' Counterclaims

Pursuant to the Confirmation Order and Plan, the Trust was vested with broad authority over the post-confirmation liquidation and distribution of certain of the Debtors' assets, and was deemed substituted as the party to any litigation in which the Debtors were a party. *See generally* Confirmation Order ¶¶ 26, 30, 34, 48; Plan Art. VI. Accordingly, the Trust is pursuing claims against several of RFC's correspondent lenders, including the Claimants, in federal and state court in Minnesota and before this Court.

Between December 14, 2013 and May 13, 2014, RFC commenced actions against each of the Claimants for breach of contract and contractual indemnification under the Prepetition Contracts:

- RFC filed a complaint against Sierra Pacific in Minnesota District Court on December 14, 2013. *See* Compl., *RFC v. Sierra Pacific*, No. 13-cv-3511 (D. Minn.), ECF 1.

- RFC served a Summons and Complaint on Decision One on December 17, 2013, thereby commencing an action in Minnesota state court. *See* Affidavits of Service, *RFC v. Decision One*, No. 14-cv-1737 (D. Minn. filed June 2, 2014), ECF 1-1 at 87-89; *see also* Minn. R. Civ. P. 3.01 (action commenced by service). The action was later removed to Minnesota District Court.[4]

- The Trust commenced adversary proceedings in this Court against Honor Bank and PHH on May 13, 2014.[5] These two actions were subsequently transferred to Minnesota District Court. *Trust v. PHH*, 518 B.R. 259, 264 (S.D.N.Y. 2014); Stipulation and Order, *Trust v. Honor Bank*, No. 14-cv-5415 (S.D.N.Y.), ECF 26.

Thereafter, Claimants filed their Counterclaims:

- Sierra Pacific filed a counterclaim on August 16, 2014, alleging that RFC and the Trust breached covenants not to sue contained in the Sierra Pacific Contracts and the Sierra

---

[4]    *See* Notice of Bankruptcy-Related Removal, *RFC v. Decision One*, No. 14-cv-1737 (D. Minn.), ECF 1.

[5]    *See* Compl., *Trust v. Honor Bank*, Adv. Proc. No. 14-ap-2000 (Bankr. S.D.N.Y.), ECF 1; Compl., *Trust v. PHH*, Adv. Proc. No. 14-ap-2008 (Bankr. S.D.N.Y.), ECF 1.

Pacific Settlement Agreements.[6]  The counterclaim alleges that as a result of the alleged breaches, "Sierra has been damaged in multiple ways, including but not limited to incurring attorneys' fees, paying for (and losing the use of) employee and management time and other company resources responding to and establishing the breaches, and in other ways."[7]  RFC and the Trust answered Sierra Pacific's counterclaim on October 14, 2014, and pleaded as one of its affirmative defenses that the counterclaim was "barred in whole or in part by virtue of RFC's discharge from bankruptcy, and by the terms and conditions of the Second Amended Joint Chapter 11 Plan as confirmed by the Southern District of New York Bankruptcy Court and the related Liquidating Trust Agreement."[8]

- Decision One filed a counterclaim against RFC on June 25, 2015 alleging (1) Decision One "is entitled to recover its reasonable attorneys' fees and other costs incurred in this action" under a "prevailing party" clause in the Decision One Contracts; and (2) Decision One is entitled to damages, including attorneys' fees and costs in defending RFC's claims, because RFC purportedly breached the Decision One Contracts by failing to give Decision One notice and an opportunity to cure defaults before RFC filed its lawsuit against Decision One.[9]

- PHH filed a counterclaim on June 26, 2015, alleging that RFC and the Trust: (1) breached the forum selection clause of the PHH Client Contract; (2) were required to notify PHH of breaches of the PHH Flow Agreement, and did not; (3) were required to give PHH an opportunity to cure breaches of the PHH Flow Agreement, and did not; and (4) breached the implied covenant of good faith and fair dealing in both contracts in the three foregoing ways.  As damages for the alleged breaches, PHH seeks to recover its attorneys' fees associated with transferring the action to the District of Minnesota, and its attorneys' fees and "company resources" associated with "responding to and establishing" the alleged breaches of the PHH Flow Agreement.[10]

- On July 16, 2015, Honor Bank filed a counterclaim alleging that RFC and the Trust: (1) breached the forum selection clauses of the Honor Bank Contracts; (2) were required to notify Honor Bank of breaches of the Honor Bank Contracts, and did not; (3) were required to give Honor Bank an opportunity to make a substitution for, or repurchase, any allegedly defective mortgage loans, and did not; and (4) breached the implied covenant of good faith and fair dealing in both contracts in the three foregoing ways.  As damages for

---

[6]    *See* Answer, *RFC v. Sierra Pacific*, No. 13-cv-3511 (D. Minn.), ECF 88; Am. Answer at 29 ¶ 24, *id.*, ECF 100.

[7]    *Id.* at p. 29, ¶ 25.

[8]    RFC and Trust Answer to Counterclaim, at 9, *id.*, ECF 103.

[9]    Answer, *RFC v. Decision One*, at 31-33 ¶¶ 1, 7-9, 10-11, *In re RFC & Trust Litig.*, No. 13-cv-3451 (D. Minn.), ECF 570.

[10]    Answer, *Trust v. PHH*, at 27-29 ¶¶ 23-30, 34, *In re RFC & Trust Litig.*, No. 13-cv-3451 (D. Minn.), ECF 574.

these alleged breaches, Honor Bank seeks to recover its attorney's fees associated with transferring the action to the District of Minnesota, and its attorney's fees and "bank resources" associated with "responding to and establishing" the alleged breaches.[11]

Between July 16 and July 20, 2015, counsel for the Trust informed counsel for each of the Claimants that their Counterclaims arise from prepetition contracts, and were not the subject of any proofs of claim filed in these chapter 11 cases, such that RFC's (and the Trust's) liability for the Counterclaims was discharged by the Plan and Confirmation Order. *See* Scheck Decl. ¶¶ 5-8, Exs. C-F. Counsel also requested that the Claimants withdraw their Counterclaims, and informed Claimants that continued prosecution of the Counterclaims violates the Discharge and Plan Injunction, and exposes Claimants to sanctions. *Id.*

The parties began meeting and conferring on the issue immediately and, pursuant to stipulations with the Claimants, the deadline for RFC and the Trust to answer or otherwise respond to Decision One's, PHH's, and Honor Bank's Counterclaims has been adjourned to September 9, 2015, at the earliest to allow the Trust to file, and this Court to rule on, this Motion without the need for duplicative motion practice in Minnesota District Court. *See* Order Extending Rule 12 Deadlines, Case No. 13-3451 (D. Minn. Jul. 23, 2015), ECF 661; Order Extending Rule 12 Deadlines, *id.*, ECF 652; Order Extending Rule 12 deadlines, *id.*, ECF 671. Each of the Claimants has refused to withdraw its Counterclaim.

## RELIEF REQUESTED

The Counterclaims are squarely within the Discharge and Plan Injunction. Accordingly, the Trust files this Motion with the Court—which is the most appropriate venue for litigating the scope of the Discharge and Plan Injunction—seeking entry of an order enjoining Claimants from

---

[11]    Answer, *Trust v. Honor Bank*, at 32-34 ¶¶ 28-35, 40, *In re RFC & Trust Litig.*, No. 13-cv-3451 (D. Minn.), ECF 629.*Id.* at 34 ¶ 40.

continuing to pursue the Counterclaims, and awarding appropriate relief under Article IX.I of the

Plan, which specifies that "[a]ny person injured by any willful violation of this injunction shall

be entitled to recover actual damages, including costs and attorneys' fees and, in appropriate

circumstances, may recover punitive damages from the willful violator."

## ARGUMENT

This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, and

Article XII of the Plan.  This motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A),

(B), and (O).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The

statutory predicates for the relief requested herein are sections 105(a), 524, and 1141 of the

Bankruptcy Code and Rule 3020(d) of the Federal Bankruptcy Rules.

## I.    THIS COURT IS THE PROPER FORUM TO ENFORCE THE PLAN INJUNCTION

As an initial matter, this Court is the appropriate forum to enforce the Discharge and Plan

Injunction.  Pursuant to Article XII of the Plan, the Court retained "exclusive jurisdiction over all

matters arising out of, or related to, the Chapter 11 Cases and the Plan . . . including

jurisdiction . . . to hear and determine any matter, case, controversy, suit, dispute, or Causes of

Action:    (i) regarding the existence, nature, and scope of the releases, injunctions, and

exculpation provided under the Plan, and (ii) enter such orders as may be necessary appropriate

to implement such releases, injunctions, and other provisions."  A determination as to whether

the Counterclaims are prepetition claims that were discharged and enjoined by the Plan and

Confirmation Order is plainly a matter "regarding the existence, nature, and scope" of the

Discharge and Plan Injunction.

The foregoing provision of the Plan is in keeping with the law in the Second Circuit that

a "bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders,

particularly when disputes arise over a bankruptcy plan of reorganization." *In re Petrie*, 304 F.3d 223, 230 (2d Cir. 2002). Consistent with this principle, it is well settled that a bankruptcy court has jurisdiction to interpret and enforce its own prior orders, including as to plan injunctions. *See, e.g.*, *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("The Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders."); *see also In re Charter Commc'ns*, No. 09-11435, 2010 WL 502764, at *4 (Bankr. S.D.N.Y. Feb. 8, 2010) (holding that the Bankruptcy Court, rather than the District Court in Arkansas, was the proper forum in which to litigate the scope of the plan injunction and third party release, stating that "[i]t is difficult to identify judicial acts that are any more critical to the orderly functioning of the bankruptcy process or more closely tethered to core bankruptcy jurisdiction").

This Court is intimately familiar with the facts and circumstances related to confirmation of the Plan, including the notice provided to creditors in connection with confirmation, as well as the facts and circumstances related to approval of the Discharge and Plan Injunction. At a status conference in Minnesota District Court for the consolidated actions, the Trust informed Judge Nelson that it would be filing this motion in this Court. Neither Judge Nelson nor the Claimants objected. *See* Scheck Decl. ¶ 9, Ex. G. Accordingly, the Trust is properly seeking enforcement of the Plan and Confirmation order from this Court.

## II.    THE COUNTERCLAIMS ASSERT PREPETITION CLAIMS THAT ARE BARRED BY THE DISCHARGE AND PLAN INJUNCTION

Claimants' Counterclaims arise out of contracts dated well before the Petition Date. *See supra* pp. 2-4. Because the Counterclaims assert contractual claims that arise from prepetition contracts, those claims are prepetition claims subject to the Discharge and Plan Injunction. *See Pearl-Phil GMT (Far E.) Ltd. v. Caldor Corp.*, 266 B.R. 575, 582 (S.D.N.Y. 2001) ("[T]he clear weight of case law in this Circuit . . . recognizes that contract-based bankruptcy claims arise at

the time the contract is executed."). In *Caldor*, a vendor for the debtor argued that its claim for a debtor's breaches of certain purchase orders "arose" when the debtor breached those orders. *Id.* at 580. The court disagreed, holding that, in line with well-established precedent in the Second Circuit, the vendor's claim arose as a contingent claim at the time the parties entered the underlying contract. *Id.* at 581-82. Similarly, in *In re Manville Forest Products. Corp.*, the Second Circuit held that an indemnity claim arose prepetition "upon the signing of the indemnity agreements" and not postpetition, when the indemnitee incurred liability. 209 F.3d 125, 129-30 (2d Cir. 2000). In so holding, the Second Circuit reasoned that "[t]he fact that the contingency . . . materialized post-petition does not transmogrify the claim into a post-petition claim, but merely means that the contingent claim moved closer to becoming liquidated upon the happening of that contingency." *Id.* at 129; *see also In re Riodizio, Inc.*, 204 B.R. 417, 424 n.6 (Bankr. S.D.N.Y. 1997) ("The postpetition breach of a prepetition contract gives rise only to a prepetition claim."); *In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 687, 696 n.12 (Bankr. S.D.N.Y. 1992) ("Where the debtors' obligations stem from contractual liability, even a post-petition breach will be treated as a prepetition liability where the contract was executed prepetition.") (quotation marks omitted); *Pension Ben. Guarantee Corp. v. LTV Corp.*, 87 B.R. 779, 796 (S.D.N.Y. 1988) (same).

The foregoing holdings are based upon the broad definition of the word "claim" in section 101(5) of the Bankruptcy Code, which includes contingent and unmatured claims. *See In re Manville Forest Prods. Corp.*, 225 B.R. 862, 865 (Bankr. S.D.N.Y. 1998) ("In explaining the intended definition of 'claim' under the Code, the House and Senate Reports provide '[b]y this broadest possible definition [of claim] . . . all legal obligations of the debtor, no matter how

14

remote or contingent, will be able to be dealt with in the bankruptcy case.'" (quoting H.R. Rep. No. 95–595, at 309 (1977))), *aff'd*, 209 F.3d 125 (2d Cir. 2000).[12]

Accordingly, Claimants' contractual claims constituted contingent prepetition claims as of the date the contracts were executed. "In the context of contract claims, the Code's inclusion of 'unmatured' and 'contingent' claims is usually said to refer to obligations that will become due upon the happening of a future event that was within the actual or presumed contemplation of the parties at the time the original relationship between the parties was created." *In re Chateaugay Corp.*, 944 F.2d 997, 1004 (2d Cir. 1991). As the District Court in *Caldor* held, "[c]ertainly the possibility of a future breach is within the presumed contemplation of the contracting parties." 266 B.R. at 580-81; *see also id.* ("'It is within the fair contemplation of the parties entering into a contract that the other party may breach it . . . . Thus a contingent claim arises at that point in time, although it may never mature.'").

Because Claimants' contractual claims arose when the contracts were executed (prepetition), it is irrelevant that Claimants allege RFC breached the contracts postpetition. *See supra* pp. 13-14; *In re Dornier Aviation (N. Am.), Inc.*, No. 02-82003-SSM, 2002 WL 31999222, at *7 (Bankr. E.D. Va. Dec. 18, 2002) ("The claim of a creditor arising under a prepetition contract is simply a general unsecured claim in the bankruptcy case even if the time for performance—and hence, the breach—occurs post-petition."); *In re Affeldt*, 164 B.R. 628, 630-31 (Bankr. D. Minn. 1994) ("[T]he obligation to pay post-petition assessments arising out of a

---

[12]    This broad definition "performs a vital role in the reorganization process by requiring, in conjunction with the bar date, that all those with a potential call on the debtor's assets, provided the call in at least some circumstances could give rise to a suit for payment come before the reorganization court so that those demands can be allowed or disallowed and their priority and dischargeability determined." *In re Kings Terrace Nursing Home & Health Related Facility*, 184 B.R. 200, 204 (S.D.N.Y. 1995) (internal citations omitted).

pre-petition contract is discharged because it is a contingent, unmatured liability that falls within the broad definition of 'claim.' As such, it is irrelevant when the actual payment comes due."), *aff'd*, 60 F.3d 1292 (8th Cir. 1995).

Moreover, it is irrelevant whether Claimants had actionable breach of contract claims against RFC under applicable state law as of the Petition Date. *See Caldor Corp.*, 266 B.R. at 581 ("Even though non-bankruptcy law may not recognize a claim absent a breach, the Bankruptcy Code, as discussed above, employs a broader approach. Thus, under the Code, a right to payment need not be currently enforceable in order to constitute a claim."); *Manville*, 225 B.R. at 866 ("Because contingent and unmatured rights of payment are 'claims' under the Code, it is possible that a right to payment that is not yet enforceable at the time of the filing of the petition under non-bankruptcy law, may be defined as a claim within section 101(5)(A) of the Code.").

As noted above, Debtors notified Claimants of the requirement that they file a proof of claim on or before the Bar Date (*see supra* pp. 4-5), and that if they failed to do so, they would be enjoined from asserting the claim against "the Debtors [including RFC], their Chapter 11 estates, their successors [including the Trust] and their respective property . . . ." *Supra* p. 5 (citing Bar Date Notice § 6). Notwithstanding this clear notice, Claimants (other than PHH) did not file a proof of claim at all.[13] Although PHH filed two proofs of claim (one that amended and

---

[13]    In the parties' meet and confer sessions regarding this Motion, Sierra Pacific has asserted that the address listed in the Creditor Matrix is not its correct address. As this Court has held in these chapter 11 cases, mailing notice to a party's last known address satisfies due process. *In re Residential Capital, LLC*, No. 12-12020 (MG), 2015 WL 2256683, at *8 (Bankr. S.D.N.Y. May 11, 2015) (creditor's "due process rights were not violated because the Debtors provided her reasonable notice of the Administrative Claims Bar Date by mailing the Administrative Claims Bar Date Notice to [her attorney's] last known address"); *see also In re Eagle Bus Mfg., Inc.*, 62 F.3d 730, 736 (5th Cir. 1995) ("Mailing a notice by First Class U.S. Mail to the last known

superseded the other), those proofs of claim asserted particular claims arising out of the PHH

Contracts (*see supra* pp. 5-6), and did not assert or preserve any other claims. Accordingly, PHH

did not file a timely proof of claim covering the claims it now asserts in its Counterclaim. *See In*

*re Calpine Corp.*, No. 05-60200 (BRL), 2007 WL 4326738, at *3 (S.D.N.Y. Nov. 21, 2007)

(holding that original proofs of claim "did not mention the Noteholders' conversion rights or any

alleged breach of those rights," and thus did not encompass those claims, which were time-

barred).

Claimants also were notified of the date of the hearing on confirmation of the Plan, as

well as the discharge and injunction provisions in the Plan, which unequivocally bar the

Counterclaims. *See supra* pp. 6-8; *see also In re Chateaugay Corp.*, 102 B.R. 335, 356 (Bankr.

S.D.N.Y. 1989) (holding that a claim "will be discharged upon the confirmation of . . . a plan"

where it arises "under a pre-petition [contract] . . . regardless of whether the triggering or

disqualifying event or termination occurs pre-petition or post-petition").

This Court, in these chapter 11 cases, has previously enjoined a creditor's attempt to sue

certain of the Debtors in another forum, after that creditor failed to timely file a proof of claim.

---

address of a creditor satisfies due process because it is 'reasonably calculated' to inform the
creditor of the bar date for filing proofs of claim.").

A review of publically available information reveals that Sierra Pacific remained at the
address listed in the Creditor Matrix (50 Iron Point Cir., Ste. 200, Folsom, CA 95630), *see* ECF
336-6, p. 4974, until after the notice of Debtors' bankruptcy filing was mailed to Sierra Pacific at
that address in June 2012. *Id.*; Scheck Decl. ¶¶ 10-11, Exs. H-I. This Court has held in these
chapter 11 cases that if a creditor changes addresses after receiving notice of the bankruptcy
filing and does not inform the Debtors, the Court, or the Claims Agent, it is the creditor, not the
Debtors, that is responsible for failure to receive subsequent notices. *ResCap*, 2015 WL
2256683, at *8; *see also Eagle Bus*, 62 F.3d at 736 ("The creditor is responsible for notifying the
debtor, trustee, or the court of any changes in her mailing address to guarantee that she be given
reasonable notice."). Accordingly, Sierra Pacific's argument should be rejected. In addition, the
Debtors provided publication notice of the bar date. *See Amended Affidavit of Publication*, ECF
1660. Copies of the notices were also available on the website of the Debtors' Claims and
Noticing Agent, Kurtzman Carson Consultants, LLC, and on PACER.

*In re Residential Capital, LLC*, 508 B.R. 838, 847 (Bankr. S.D.N.Y. 2014) ("A review of the Amended Counterclaim makes clear that Mustafanos seeks to sidestep the confirmed chapter 11 Plan to pursue his claim in another forum. If Mustafanos had a claim, he should have timely filed it in these bankruptcy cases; he did not do so, and it is too late to do so now. Any unasserted claims Mustafanos had against the Debtors' estate were discharged pursuant to the Plan."). The result should be no different here. Indeed, unlike Mustafanos, Claimants here did not even seek relief from the automatic stay in this Court to continue to pursue counterclaims in another forum, they simply proceeded to prosecute those claims.

Claimants also did not object to the Plan, and are thus barred from collaterally attacking the discharge and injunction provisions of the Plan and Confirmation Order. *See In re Residential Capital, LLC*, 508 B.R. at 846-47 ("Confirmation of a plan operates as a final judgment for *res judicata* purposes. Under the doctrine [of *res judicata*], questions concerning the treatment of any creditor under the plan, discharge of liabilities, or disposition of property, may no longer be raised after plan confirmation. These issues must be raised in the context of objections to confirmation of the plan." (citation omitted)).

## III.    THE COURT SHOULD IMPOSE APPROPRIATE MONETARY RELIEF

Article IX.I of the Plan states that "[a]ny person injured by any willful violation of this injunction shall be entitled to recover actual damages, including costs and attorneys' fees and, in appropriate circumstances, may recover punitive damages from the willful violator." To be "willful," a creditor need only have "intended the actions that violated the discharge injunction"; a "specific intent to violate the debtor's discharge" is not required. *In re Haemmerle*, 529 B.R. 17, 29 (Bankr. E.D.N.Y. 2015). Here, Claimants intentionally filed their Counterclaims against RFC and the Trust. Because the Counterclaims violate the discharge injunction, Claimants acted willfully in filing them. Moreover, Claimants acted in bad faith by filing their Counterclaims

despite having received notice of, among other things, the Bar Date and the Plan confirmation hearing. Certainly, Claimants acted willfully by refusing to withdraw the Counterclaims even after counsel for the Trust provided them with the specific Plan and Confirmation Order provisions that bar the Counterclaims, and warned them of their exposure to sanctions.[14] Accordingly, the Court should award appropriate monetary relief, including attorneys' fees and costs associated with bringing this motion.

## NOTICE

Pursuant to the Order Under Bankruptcy Code Sections 102(1), 105(a) and 105(d), Bankruptcy Rules 1015(c), 2002(m) and 9007 and Local Bankruptcy Rule 2002-2 Establishing Certain Notice, Case Management and Administrative Procedures [ECF 141] (the "**Case Management Order**"), entered on May 23, 2012, notice of this Motion has been given to the parties identified on the Special Service List and the General Service List (as such terms are defined in the Case Management Order), and Claimants' counsel. The Trust submits that no further notice of the Motion is necessary.

## CONCLUSION

For the foregoing reasons, the Court should (1) enjoin Claimants from continued prosecution of the Counterclaims; (2) award appropriate monetary relief pursuant to Article IX.I of the Plan; and (3) impose such other and further relief as the Court deems just and proper.

---

[14] *Cf. In re Szenes*, 515 B.R. 1, 7 (Bankr. E.D.N.Y. 2014) (awarding attorneys' fees and punitive damages because the creditor "willfully disobeyed the Court's Discharge Order and in doing so, acted in bad faith" by sending a collection letter despite having received actual notice of the debtor's discharge, and by sending a second collection letter after receiving a demand that it stop all collection activity in light of the discharge).

Dated:  July 31, 2015

QUINN EMANUEL URQUHART
   & SULLIVAN, LLP

By: ___*/s/ Isaac Nesser*_____
     Peter E. Calamari
     David L. Elsberg
     Isaac Nesser
     Matthew Scheck
     51 Madison Avenue, 22nd Floor
     New York, New York  10010
     Telephone:  (212) 849-7000
     Facsimile:  (212) 849-7100
     PeterCalamari@quinnemanuel.com
     DavidElsberg@quinnemanuel.com
     IsaacNesser@quinnemanuel.com
     MatthewScheck@quinnemanuel.com

     CARPENTER LIPPS & LELAND LLP
     Jeffrey A. Lipps (admitted *pro hac vice*)
     Jennifer A.L. Battle
     1540 Broadway, Suite 3710
     New York, New York  10036
     Telephone:  (212) 837-1100
     Facsimile:  (212) 837-1108
     lipps@CarpenterLipps.com
     battle@CarpenterLipps.com

     *Counsel for the ResCap Liquidating Trust*

20

## Exhibit 1

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Chapter 11 |
| Debtors. | Jointly Administered |

**[PROPOSED] ORDER GRANTING MOTION OF
THE RESCAP LIQUIDATING TRUST FOR AN ORDER
ENFORCING PLAN INJUNCTION AND CONFIRMATION ORDER**

Upon consideration of the motion (the "**Motion**")[15] of the Liquidating Trust for entry of an order enforcing the discharge and injunction provisions of the Second Amended Joint Chapter 11 Plan Proposed By Residential Capital, LLC, *et al.* and the Official Committee Of Unsecured Creditors (the "**Plan**"), and the Order Confirming Second Amended Joint Chapter 11 Plan Proposed By Residential Capital, LLC *et al.* and the Official Committee Of Unsecured Creditors (the "**Confirmation Order**"); and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and Article XII of the Plan; and it appearing that venue of these chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this proceeding on the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b); and sufficient notice of the Motion having been given; and it appearing that no other or further notice need be provided; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates and their creditors; and after due deliberation and sufficient cause appearing therefor,

---

[15] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is GRANTED to the extent set forth below.

2.      All objections to the Motion or the relief requested therein, if any, that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits.

3.      Decision One Mortgage Company, LLC, PHH Mortgage Corp., Honor Bank f/k/a The Honor State Bank, and Sierra Pacific Mortgage Company, Inc. (collectively, the "**Claimants**") are hereby enjoined from the continued prosecution of their counterclaims pending in the United States District Court for the District of Minnesota in the consolidated action *In re RFC & ResCap Liquidating Trust Litigation*, No. 13-cv-3451 (D. Minn.).

4.      The Trust is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order, including seeking sanctions against Claimants for failure to abide by this Order or the discharge and injunction provisions of the Plan and Confirmation Order.

5.      Notwithstanding the possible applicability of Bankruptcy Rules 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

6.      This Court shall retain jurisdiction with respect to all matters arising or related to the implementation of this Order.

Dated: _____, 2015

                             _____
                             THE HONORABLE MARTIN GLENN
                             UNITED STATES BANKRUPTCY JUDGE