**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
|  | ) | **NOT FOR PUBLICATION** |
| In re: | ) | |
|  | ) | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al*., | ) | |
|  | ) | Chapter 11 |
|  | ) | |
| Debtors. | ) | |
|  | ) | Jointly Administered |

**MEMORANDUM OPINION AND ORDER (I) SUSTAINING IN PART AND OVERRULING IN PART THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM NUMBER 452 FILED BY JULIO PICHARDO AND (II) DENYING JULIO PICHARDO'S MOTION TO LIFT THE AUTOMATIC STAY**

*A P P E A R A N C E S :*

MORRISON & FOERSTER LLP
*Attorneys for ResCap Borrower Claims Trust*
250 West 55th Street
New York, New York 10019
By:    Norman S. Rosenbaum, Esq.
       Jordan A. Wishnew, Esq.
       Erica J. Richards, Esq.

JULIO PICHARDO
*Pro Se*
120 E. Sudene Avenue
Fullerton, California 92831
By:    Julio Pichardo

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Julio Pichardo ("Pichardo") filed Claim Number 452 (the "Claim," Obj. Ex. 1) against

Debtor GMAC Mortgage, LLC ("GMACM") in the above-captioned chapter 11 bankruptcy

cases.  GMACM serviced Pichardo's loan from November 2003 through February 2013.

Pichardo's Claim arises out of, among other things, a purported agreement between GMACM

and Pichardo to modify Pichardo's then-existing loan terms.  After the parties entered into the

modification agreement, GMACM realized it mistakenly omitted what its successor in interest,

the ResCap Borrower Claims Trust (the "Trust"), argues is a material term.  GMACM contacted

Pichardo, advised him of the mistake, and told him he had to execute a corrected modification

agreement fixing the error.  Pichardo alleges that he originally did not want to sign the corrected

agreement, but ultimately executed it because GMACM threatened to foreclose on his home if he

did not.

The Trust objects to Pichardo's Claim, asserting that Pichardo has failed to establish a

viable claim for relief.[1]  At this stage of the pleadings, Pichardo has alleged a plausible claim that

he signed the corrected modification agreement under duress from GMACM.  As discussed

below, the Court **SUSTAINS** in part and **OVERRULES** in part the Objection to Pichardo's

Claim.  To the extent the Objection is overruled, it is overruled without prejudice; the remaining

portions of the Claim involve disputed issues of fact that cannot be resolved on the current

record.  Unless the parties are able to resolve the remaining portions of Pichardo's Claim, an

evidentiary hearing will be required.

---

[1]       The Trust's objection (the "Objection," ECF Doc. # 8676) to Pichardo's Claim is supported by the
declarations of Kathy Priore (the "Priore Decl.," Obj. Ex. 2) and Yaron Shaham (the "Shaham Decl.," Obj. Ex. 3),
an attorney with the Trust's local California counsel, Severson & Werson ("S&W").  Responses to the Objection
were due on June 22, 2015.  (*See* Obj. at 1.)  Pichardo filed an opposition (the "Opposition," ECF Doc. # 8745) to
the Objection on June 8, 2015, which does not respond to the Trust's substantive arguments raised in its Objection,
but rather requests an evidentiary hearing on the Objection in lieu of a non-evidentiary hearing on July 15, 2015 and
attaches what appear to be his filings in a prior action filed in California state court.
        On June 15, 2015, Pichardo filed a proof of service that included a statement that Pichardo intends to
appear at the hearing on the Objection telephonically and requests "RELIEF FROM STAY RULING TO PURSUE
FRAUDULENT CLAIM AGAINST DEBTORS RULINGS TO BE FRAUDULENT ON ACQUIRED LOAN."
(*See* "Lift Stay Motion," ECF Doc. # 8798 at 1.)  After the response deadline on June 29, 2015 (though the
document is dated June 23, 2015), Pichardo filed a supplemental opposition to the Objection (the "Supp. Opp.,"
ECF Doc. # 8878).
        On July 13, 2015, the Trust filed a reply in support of its Objection (the "Reply," ECF Doc. # 8876),
addressing the Opposition and Lift Stay Motion, and arguing that the untimely Supplemental Opposition should not
be considered by the Court.  Since Pichardo failed to pay the filing fee for his Lift Stay Motion, the Court will not
consider the requested relief and **DENIES** the Lift Stay Motion without prejudice.

# I.    **BACKGROUND**

## A.    **Pichardo's Loan History**

Non-debtor Home Star Mortgage Services, LLC ("Home Star") originated a residential

mortgage loan refinancing (the "Loan") to Pichardo on July 31, 2003.  (Obj. ¶ 13 (citing Priore

Decl. ¶ 6).)  The Loan is evidenced by a $199,000.00 note (the "Note," Priore Decl. Ex. A)

secured by a deed of trust (the "Deed of Trust," *id.* Ex. B) encumbering real property located at

1202 East Sudene Avenue, Fullerton, California 92831 (the "Property").  (Obj. ¶ 13 (citing

Priore Decl. ¶ 6).)  The Deed of Trust lists Mortgage Electronic Registration Systems, Inc.

("MERS") as the "beneficiary" for Home Star, the "Lender."  (Deed of Trust at 2–3.)  The Note

was transferred, by way of an explicit endorsement, to HSBC Bank USA ("HSBC") as trustee;

this transfer occurred, according to the Trust, when the Loan was securitized on January 1, 2004.

(*See* Note at 4; Obj. ¶ 14 (citing Priore Decl. ¶ 7).)  GMACM serviced the Loan from November

3, 2003 until February 16, 2013, when servicing was transferred to non-debtor Ocwen Loan

Servicing, LLC ("Ocwen").  (Obj. ¶ 15 (citing Priore Decl. ¶ 8).)

In March 2009 and multiple times thereafter while loan modification applications were

pending (see below), Pichardo requested a reduction in principal and interest payments on the

Loan.  (*Id.* ¶ 16 (citing Priore Decl. ¶ 9).)  GMACM repeatedly advised Pichardo that no

principal forgiveness would be provided.  (*Id.*)

Based on the Loan payment history (the "Payment History," Priore Decl. Ex. C),

Pichardo made timely payments on January 8, February 9, March 6, and April 13, 2009, each in

the amount of $1,584.50 (*see id.* at 4).  Once the April 13, 2009 payment was applied to the

account, Pichardo was current on his payments through April 1, 2009.  (*Id.*)  Pichardo then failed

to make Loan payments due on May 1 and June 1, 2009.  (*Id.*)  The next "PAYMENT" entries in

the Payment History were made on June 24, 2009 in the amounts of $776.35 and $832.00, but these payments did not affect the "current through" date of the Loan; the Trust does not explain why, nor does it explain the purpose of these payments. (*Id.*) A July 14, 2009 entry in the Payment History, listed as a "Comment" with no money applied or deducted from the Loan account balance, shows that Pichardo became current through May 1, 2009. (*Id.*)

On July 10, 2009, GMACM sent Pichardo a letter (the "July 10, 2009 Letter," Opp. at 44) advising him that his Loan account was in default because he failed to make the June and July 2009 payments (*id.*). The letter further states: "If you are already working with the Loss Mitigation department on a special forbearance or other foreclosure prevention alternatives, this letter does not apply to you." (*Id.*)

On July 31, 2009, Pichardo's Loan was approved for a permanent loan modification: $120,000 of the principal balance was supposed to be deferred, the interest rate was reduced from 4% to 1% and applied only to the remaining principal balance of $63,272.87, with the non-interest bearing principal deferment coming due when the Loan matured, was paid in full, or the Property was sold. (*Id.* ¶ 18 (citing Priore Decl. ¶ 12).) Pichardo's monthly payments were reduced from $1,550 to $622.53. (*Id.*)

On August 3, 2009, before this modification became effective, GMACM sent Pichardo a letter stating that the Loan was in default because his June, July, and August 2009 payments were overdue (the "August 3, 2009 Breach Letter," Priore Decl. Ex. G). (Obj. ¶ 17 (citing Priore Decl. ¶ 11).) The letter further states:

> Unless we receive full payment of all past-due amounts, we will accelerate the maturity of the loan, declare the obligation due and payable without further demand, and begin foreclosure proceedings. This could result in the loss of your property. You have the right to assert or defend the non-existence of a default and you may have other rights under state law.

4

(*Id.* at 2.)

On August 8, 2009, Pichardo entered into the modification agreement with GMACM (the "August Agreement," Priore Decl. Ex. L), effective as of September 1, 2009, and intended to memorialize the terms of the approved permanent loan modification. (Obj. ¶ 18 (citing Priore Decl. ¶ 12.) GMACM received the signed copy of the August Agreement from Pichardo on August 10, 2009. (*Id.* ¶ 19 (citing Priore Decl. ¶ 14).) The Trust alleges that it countersigned the agreement on that date, but it cannot find a copy of the actual countersigned document. (*Id.*)

On August 12, 2009, Pichardo made a $620.00 payment that was applied to the account, but did not affect the "current through" date. (Payment History at 4.) The Loan remained current only through May 1, 2009. (*Id.*) Pichardo made a $622.53 payment on September 3, 2009, after the August Agreement memorializing the loan modification is alleged to have become effective. (*Id.*; Obj. ¶ 18 (citing Priore Decl. ¶ 12).) This September 3 payment, however, did not affect the "current through" date; the Loan remained current only through May 1, 2009. (*Id.*)

On September 24, 2009, GMACM began to process the modification and determined that the loan modification needed to be "reset." (*Id.*) Under the reset terms, the monthly principal and interest payments increased by $0.77 from the originally approved modification. (*Id.*) On September 28, 2009, GMACM advised Pichardo that the modification would need to be reset and further informed him on October 2, 2009 that GMACM would amend any negative reporting caused by the reset once the new modification agreement was executed. (*Id.*)

On October 6, 2009, Pichardo made a $622.53 payment; it was applied to his Loan account balance, but did not affect the "current through" date. (Payment History at 4.)

When GMACM began to process the reset of the modification, it noticed that the August Agreement did not reference the amount of the deferred principal balance. (*Id.* ¶ 20 (citing Priore Decl. ¶ 15).) The August Agreement refers only to the current non-deferred principal balance of $63,272.87 on which interest would continue to accrue; it did not address the treatment of the remaining $120,000.00 balance of deferred principal. (*Id.*) GMACM sought to cure this error in the August Agreement, sending Pichardo corrected loan modification documentation on October 14, 2009. (*Id.*) The return deadline was November 1, 2009. (*Id.*) On October 27, 2009, Pichardo advised GMACM that he had not received the corrected documents; as a result, GMACM was required to reset the modification again. (*Id.*) With this reset of the modification, all terms remained the same except that the monthly principal and interest payments increased by $1.85 from the modification documents sent to Pichardo on October 14, 2009. (*Id.*) This second reset modification was mailed to Pichardo on November 10, 2009. (*Id.* ¶ 21 (citing Priore Decl. ¶ 16); *see also* Priore Decl. Ex. N.)

Pichardo executed the corrected documents on November 12, 2009, returned them to GMACM on November 16, 2009, and the corrected modification agreement thereafter became effective on December 1, 2009 (the "Corrected Agreement," Priore Decl. Ex. M). (Obj. ¶ 21 (citing Priore Decl. ¶ 16).) Under the Corrected Agreement, Pichardo was required to make $624.85 monthly payments. (*Id.*) On November 18, 2009, an entry in the Payment History indicates that $120,000.00 was applied to the principal balance of the Loan account, bringing the Loan account balance down to $63,272.87. (Payment History at 4.) On November 20, 2009, another Payment History entry indicates that the Loan became current through December 1, 2009; payments consistent with the terms of the Corrected Agreement were made monthly

6

thereafter and were applied to the account balance affecting the "current through" date. (*See id.*

at 2–4.)

Pichardo made timely payments under the Corrected Agreement until servicing was sold

to Ocwen in February 2013. (*Id.*) But in March 2010, Pichardo applied for a further loan

modification, renewing his request for cancellation of principal via numerous calls and letters to

GMACM. (*Id.* ¶ 22 (citing the "March 26, 2010 Letter," Priore Decl. Ex. O, and the "Comment

History," *id.* Ex. E at 66, 69, 70, 81, 82, 83, 85, 86, 87, 89, 90, 92, 93, 94, 95, 112, 113, 116, 121,

140, 145).) GMACM ultimately determined that Pichardo was ineligible for a further loan

modification, including any principal reductions, meaning that the Corrected Agreement

allegedly remained in effect through the date upon which Ocwen took over servicing of the

Loan. (*Id.* (citing Priore Decl. ¶ 17).)

### B.    Litigation History

Without leave of this Court, Pichardo, represented by counsel, filed a complaint (the

"Initial Complaint," Priore Decl. Ex. R) (the "California Action") against GMACM in the

Orange County Superior Court of California (the "California State Court"). (Obj. ¶ 23 (citing

Priore Decl. ¶ 21).) The Initial Complaint sought compensatory damages, punitive damages,

restitution, and attorneys' fees for GMACM's alleged violation of the Fair Debt Collection

Practices Act (the "FDCPA"), negligent misrepresentation, and unfair business practices and

false advertising in violation of California Business Code sections 17200 and 17500. (*See* Initial

Comp. at 3–7).)

On July 30, 2012, the Debtors filed a notice of bankruptcy and suggestion of automatic

stay, serving Pichardo's counsel in the California Action (the "Notice of Bankruptcy," Priore

Decl. Ex. S). (Obj. ¶ 24 (citing Priore Decl. ¶ 22).) The Debtors also sent Pichardo's counsel a

letter advising that the filing and continued prosecution of certain claims alleged in the Initial Complaint violated the automatic stay (the "July 30, 2012 Letter," Priore Decl. Ex. T).  (Obj. ¶ 24 (citing Priore Decl. ¶ 22).)

On August 6, 2012, Pichardo filed a motion to lift the stay in this Court, seeking to prosecute the California Action against GMACM.  (*See* ECF Doc. # 1026.)  On August 29, 2012, this Court denied the motion.  (*See* ECF Doc. # 1307.)

On February 24, 2014, Pichardo filed a first amended complaint (the "First Amended Complaint," Shaham Decl. Ex. A), adding Ocwen as a defendant and asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, negligence, unjust enrichment, and violation of the California Business and Profession Code section 17200.  (*See generally* First Am. Compl.)  On February 28, 2014, Ocwen filed a demurrer to the First Amended Complaint (the "First Demurrer," Shaham Decl. Ex. C).  On May 12, 2014, the California State Court sustained the First Demurrer with leave to amend the negligence claim, sustained the First Demurrer without leave to amend the claim for unjust enrichment, and overruled the First Demurrer as to all other causes of action (the "First Demurrer Ruling," Shaham Decl. Ex. D).

On June 2, 2014, Pichardo filed a second amended complaint against Ocwen (the "Second Amended Complaint," Shaham Decl. Ex. E), asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, statutory relief, violation of California Business and Professions Code section 17200, and requesting injunctive relief. GMACM was removed as a named defendant from the Second Amended Complaint, but the California Action was not formally withdrawn as to GMACM.  (Obj. ¶ 29 (citing Priore Decl. ¶ 7).)

On June 3, 2014, the ResCap Liquidating Trust's counsel sent a letter to Pichardo's new counsel in the California Action, advising counsel that the continued prosecution of the California Action against GMACM violated the automatic stay; the letter requested that GMACM be dismissed from the California Action (the "June 3, 2014 Letter," Priore Decl. Ex. U).

On June 10, 2014, Ocwen filed a demurrer to the Second Amended Complaint (the "Second Demurrer," Shaham Decl. Ex. F). The California State Court ultimately held that Pichardo met the pleading requirements for each of his claims against Ocwen, except those asserting statutory relief (the "Second Demurrer Ruling," Shaham Decl. Ex. G). A hearing on a pending summary judgment motion is scheduled for September 8, 2015.

C.    **The Claim**

Pichardo timely filed the Claim on September 4, 2012, asserting a general unsecured claim against GMACM in the amount of $650,000. (*See* Claim.) The stated basis for the Claim is "COLLECTION PRACTICES – PERSONAL INJURY." (*Id.* at 1.) The Claim attaches a document referring to the California Action, and a copy of the July 30, 2012 Letter to his counsel stating that the prosecution of the case violated the automatic stay. (*See id.* at 4–6.)

The Trust sent Pichardo a letter on June 21, 2013 requesting additional information supporting his Claim. (Obj. ¶ 36; Priore Decl. Ex. V.) Pichardo responded by letter (the "Response Letter," Priore Decl. Ex. W), attaching a copy of the Initial Complaint, a page from a "Client Action Plan" that may have been prepared by a debt counseling service, various pleadings filed by or in response to Pichardo in these chapter 11 proceedings, and correspondence sent by Pichardo to the Debtors, Debtors' counsel, Ocwen, and Wells Fargo. The Response Letter refers to "improper collection calls," "mis-applied escrow payments," and

improper notices of foreclosure or default.  (*See generally id.*)  No documentary evidence

supporting these allegations was provided.  (*See id.*)

### D.    The Objection

The Trust assumes for purposes of the Objection that the Claim is based on the

allegations in the Initial Complaint.  The Trust also addresses the causes of action asserted in the

First Amended Complaint.  The Trust does not address the causes of action in the Second

Amended Complaint because GMACM is not listed as a defendant in that complaint.

The causes of action in the Initial Complaint include:  (1) violation of the FDCPA; (2)

negligent misrepresentation; (3) violation of California Business and Professional Code § 17200

(the "Unfair Competition Law" or "UCL"); and (4) violation of California Business and

Professional Code section 17500 (the "False Advertising Law" or "FAL").  First, the Trust

argues that the FDCPA claim fails because:  (i) GMACM is not a "debt collector" under the

statute; (ii) GMACM's books and records demonstrate that Pichardo was current on his Loan

payments after the Corrective Agreement was signed until servicing was transferred to Ocwen;

and (iii) the allegedly repeated calls from GMACM were largely in response to calls Pichardo

made to GMACM.  (*Id.* ¶¶ 44–46.)  Second, the Trust asserts that Pichardo fails to satisfy the

elements of his negligent misrepresentation claim because:  (1) Pichardo does not adequately

demonstrate that the information GMACM provided to Pichardo about the status of his Loan was

false; (2) Pichardo has not demonstrated how he relied on information that he was in default or

that GMACM would pursue foreclosure when he also responded to such information that his

Loan was current; and (3) Pichardo fails to show that his alleged "severe emotional distress" and

medical expenses were proximately caused by GMACM's conduct.  (*Id.* ¶¶ 47–49.)  Third, the

Trust contends that Pichardo cannot establish a  claim for violation of the UCL because such a

claim is limited to restitution and/or injunctive relief. (*Id.* at 50–51.) According to the Trust, Pichardo cannot obtain restitution damages—although Pichardo alleges that GMACM requested additional payments that were not due, Pichardo fails to allege that he actually made any additional payments. Additionally, the Trust asserts that Pichardo is not entitled to injunctive relief because GMACM is no longer involved with his Loan. (*Id.*) Finally, the Trust argues that the FAL claim fails because the law is inapplicable; Pichardo has not alleged that GMACM attempted to induce him to enter into any obligation to receive services from GMACM via any advertising device or public statement. Instead, Pichardo relies on allegations that GMACM was already servicing his Loan but did so in an improper manner—allegations that do not give rise to a FAL claim. (*Id.* ¶¶ 52–53.)

The causes of action asserted in the First Amended Complaint against GMACM are as follows: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) negligence; (4) unjust enrichment; and (5) violation of the UCL. First, the Trust argues that the breach of contract claim is deficient because: (i) Pichardo cannot show that the August Agreement is a valid contract; and (ii) to the extent the August Agreement was a valid contract, it was superseded by the Corrected Agreement. (*Id.* ¶¶ 55–61.) Second, the Trust asserts that the breach of the implied covenant of good faith and fair dealing claim fails because the August Agreement does not constitute a binding contract, and even if it did, Pichardo voluntarily entered into a contract superseding the August Agreement. (*Id.* ¶¶ 62–63.) The Trust further argues that GMACM's request that Pichardo execute the Corrected Agreement also cannot constitute a breach of the covenant of good faith and fair dealing because the purpose of the Corrected Agreement was to enforce the original expectations of the parties, not to violate them. (*Id.* ¶ 63.) Third, with respect to the negligence cause of action, the Trust asserts that Pichardo cannot

establish that GMACM owed him a duty of care on which to base this claim. (*Id.* ¶¶ 65–66.)

Moreover, the Trust argues that the negligence claim is based on insufficient and unsupported

allegations of negligent acts that are inadequate to support such a claim. (*Id.* ¶ 67.) Fourth, the

Trust refutes the validity of Pichardo's unjust enrichment claim by arguing first that the

California State Court dismissed this claim against Ocwen without leave to amend, and second

that Pichardo fails to establish he is entitled to restitution, as required for such a claim. (*Id.* ¶¶

68–70.) Fifth, the Trust addresses Pichardo's renewed UCL claim, asserting again that Pichardo

is unable to establish entitlement to injunctive relief or restitution. (*Id.* ¶¶ 71–72.) The Trust

further argues that any alleged "improper payments" were not retained by GMACM for its

benefit; rather, any payments received were applied to Pichardo's account for his own benefit.

(*Id.* ¶ 73.)

### E.    Pichardo's Filings

Pichardo made three filings after the Objection was filed. First, Pichardo filed his

Opposition, requesting that the hearing on the Objection be an evidentiary hearing. (*See

generally* Opp.) Pichardo also asserts: (1) his medical condition was aggravated by GMACM's

actions (i.e. foreclosure threats, demand for undue payments, escrow payments, etc.) such that he

was hospitalized, as set forth in a medical report he attaches; (2) when he directed GMACM to

the August Agreement's principal reduction, GMACM proceeded to demand an unsolicited

payoff; (3) an unclear allegation that the carried liens provision of one of the contracts imposed

fees that were not due; (4) GMACM placed the Loan in default when no payment was due. (*Id.*

at 2.) Pichardo attaches to the Opposition several documents filed in the underlying California

Action. (*See generally id.*) Some documents indicate that the Corrected Agreement was never

countersigned by GMACM, implying that the Corrected Agreement is invalid. (*See id.* at 149.)

He also alleges that GMACM attempted to forcibly subordinate existing senior priority security interests in the Property held by certain of Pichardo's relatives.  (*Id.*)

Second, Pichardo subsequently filed a proof of service and Lift Stay Motion.  (*See generally* Lift Stay Motion.)  He did not pay a filing fee for the Lift Stay Motion, nor did he submit any brief or argument supporting the motion.[2]  (*See generally id.*)

Lastly, Pichardo filed the Supplemental Opposition, which purports to attach evidence that he made his first modification payment to GMACM in June 2009.  (*See* Supp. Opp. at 1–2.) According to Pichardo, the mailing receipts demonstrate that he never missed a payment and should not have been considered to be in default in August 2009.  (*Id.* at 2.)

### F.    The Reply

The Trust first addresses the validity of the Corrected Assignment, put into question by Pichardo's assertion that it was never countersigned by GMACM.  (Reply ¶ 3.)  According to the Trust, the ResCap Liquidating Trust could not locate a copy of the countersigned Corrected Agreement.  (*Id.*)  Nevertheless, the Trust argues that the Corrected Agreement remains valid because GMACM informed Pichardo that it had received and processed the Corrected Agreement on November 11, 2009.  (*Id.*)  Additionally, Pichardo made payments pursuant to the Corrected Assignment for over five and a half years and GMACM accepted such reduced payments, constituting ratification of the Corrected Agreement.  (*Id.*)

As to allegations regarding the priority of liens on the Property, the Trust argues that Pichardo lacks standing to challenge the priority of any liens because he himself does not have a security interest in the Property.  (*Id.* ¶ 5.)  The Trust also argues that at the time the Loan was

---

[2]     As indicated above, because Pichardo failed to pay the filing fee for his Lift Stay Motion, the Court will not consider the requested relief and **DENIES** the Lift Stay Motion without prejudice.

originated there is no evidence of pre-existing security interests on the Property. (*Id.* ¶ 6 (citing

Reply Ex. X).) The Trust further points out that the only recorded deed of trust in favor of

Pichardo's relatives attached to the Opposition was recorded on November 30, 2004, after the

Deed of Trust securing the Loan was recorded; therefore, the relative's security interest is

subordinate to the Deed of Trust. (*Id.* (citing Response at 187).) The Trust further argues that

the August Agreement and Corrected Agreement do not actually seek to subordinate any other

liens but rather state that any other liens remained in effect. (*Id.* ¶ 7.)

The Trust then argues that the hearing on the Objection should not be treated as an

evidentiary hearing. (*Id.* ¶ 8.) The Trust further asserts that the Lift Stay Motion should be

denied because Pichardo fails to address the relevant factors to lift the automatic stay. (*Id.* ¶ 9.)

## II.    DISCUSSION

### A.    Claims Objections

Correctly filed proofs of claim "constitute prima facie evidence of the validity and

amount of the claim . . . .  To overcome this prima facie evidence, an objecting party must come

forth with evidence which, if believed, would refute at least one of the allegations essential to the

claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). By

producing "evidence equal in force to the prima facie case," an objector can negate a claim's

presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a

preponderance of the evidence that under applicable law the claim should be allowed." *Creamer*

*v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS),

2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted). If the

objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of

its amount, the claimant need offer no further proof of the merits of the claim." 4 COLLIER ON

BANKRUPTCY ¶ 502.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if

"unenforceable against the debtor and property of the debtor, under any agreement or applicable

law." 11 U.S.C. § 502(b)(1).  To determine whether a claim is allowable by law, bankruptcy

courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674

(Bankr. D. Del. 2006).

Federal pleading standards apply when assessing the validity of a proof of claim. *See,

e.g.*, *In re Residential Capital, LLC*, 518 B.R. 720, 731 (Bankr. S.D.N.Y. 2014); *In re DJK

Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party

has met their burden in connection with a proof of claim, bankruptcy courts have looked to the

pleading requirements set forth in the Federal Rules of Civil Procedure." (citations omitted)).

Accordingly, Pichardo must allege "enough facts to state a claim for relief that is plausible on its

face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009)).  "Where a complaint pleads facts that are merely consistent

with a defendant's liability, it stops short of the line between possibility and plausibility of

entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted).

Plausibility "is not akin to a probability requirement," but rather requires "more than a sheer

possibility that a defendant has acted unlawfully." *Id.* (citation and internal quotation marks

omitted).  The court must accept all factual allegations as true, discounting legal conclusions

clothed in factual garb. *See, e.g.*, *id.* at 677–78; *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d

111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory

factual allegations in the complaint to be true" (citing *Iqbal*, 556 U.S. at 678)).  The court must

then determine if these well-pleaded factual allegations state a "plausible claim for relief." *Iqbal*,

556 U.S. at 679 (citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task

that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

(citation omitted).  A claim is plausible when the factual allegations permit "the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation

omitted).  A claim that pleads only facts that are "merely consistent with a defendant's liability"

does not meet the plausibility requirement.  *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 557 (2007)).  "A pleading that offers labels and conclusions or a formulaic recitation of

the elements of a cause of action will not do."  *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal

quotation marks omitted).  "Threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice."  *Id.* (citation omitted).  "The pleadings must

create the possibility of a right to relief that is more than speculative."  *Spool v. World Child Int'l

Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

The Court does not resolve whether Pichardo's Claim is based on either the Initial

Complaint or the First Amended Complaint, but rather addresses the causes of actions asserted in

each below.

### B.    The Initial Complaint

#### 1.    *Violation of the FDCPA*

Pichardo bases his FDCPA claim on allegedly repetitive phone calls GMACM made to

him throughout 2011 and 2012, during which GMACM representatives advised Pichardo that he

was in default on his Loan and that GMACM intended to foreclose on his Property.  (Initial

Compl. ¶¶ 20–28.)  Pichardo further alleges that in response to Pichardo's assertions that he

remained current on his Loan, GMACM representatives stated that he was past due, "using

verbally abusive language, including threats of criminal liability and obscene and profane

language." (*Id.* ¶¶ 21–22.)

Although the FDCPA "makes it unlawful for debt collectors to use abusive tactics while

collecting debts for others," GMACM is not a "debt collector" subject to the statute in these

circumstances. *See Whittle v. Wells Fargo Bank, N.A.*, No. CV F 10-0429 LJO GSA, 2010 WL

1444532, at *9 (E.D. Cal. Apr. 9, 2010). A "debt collector" is "any person . . . who regularly

collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." 15

U.S.C. § 1692a(6). This definition does not include entities seeking to collect a debt "to the

extent such activity . . . concerns a debt which was not in default at the time it was obtained by

such person." 15 U.S.C. § 1692a(6)(F). The legislative history of the FDCPA indicates

"conclusively that a debt collector does not include the consumer's creditors, a mortgage

servicing company, or an assignee of a debt, as long as the debt was not in default at the time it

was assigned." *See Whittle*, 2010 WL 1444532, at *9 (citation omitted). GMACM began

servicing the Loan in February 2004; the alleged default, if any, on the Loan did not occur until

2009. Thus, GMACM cannot be construed as a "debt collector," and the Objection to this cause

of action is **SUSTAINED**.

### 2.     *Negligent Misrepresentation*

Under California law, to adequately plead a negligent misrepresentation claim, the

plaintiff must allege: "(1) a misrepresentation of a past or existing material fact, (2) without

reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the

fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to

whom the misrepresentation was directed, and (5) damages." *Fox v. Pollack*, 226 Cal. Rptr. 532,

537 (Cal. Ct. App. 1986) (citation omitted).

Pichardo bases his negligent misrepresentation claim on the July 10, 2009 Letter, the

August 3, 2009 Breach Letter, and unspecified telephone conversations between himself and

GMACM representatives.  Each of the letters states that Pichardo was in default on his Loan by

failing to make his June and July 2009 payments; the August 3, 2009 Breach Letter also states

that Pichardo failed to make his August 2009 payment.  The return receipts attached to

Pichardo's Supplemental Opposition demonstrate that Pichardo made payments to GMACM in

June and July 2009; the Trust does not dispute this fact.[3]  As a result, the issue whether Pichardo

was in default in June and July 2009 is in dispute.  If Pichardo was not in default, then the July

10, 2009 Letter and August, 3, 2009 Breach Letter, both stating that Pichardo failed to make the

June and July Loan payments, included false representations.  There are further disputed issues

of fact such as whether Pichardo reasonably relied on those false representations and whether he

was consequently damaged.[4]  In light of these disputed issues of fact, the Court **OVERRULES**

the Objection to this cause of action.

### 3.    Violation of the UCL

California's UCL prohibits "unfair competition," which includes "any unlawful, unfair or

fraudulent business act or practice . . . ."  CAL. BUS. & PROF. CODE § 17200.  A claim based on a

violation of the UCL may be brought under any of the above prongs.  *See Birdsong v. Apple,*

*Inc.*, 590 F.3d 955, 959 (9th Cir. 2009) ("Each prong of the UCL is a separate and distinct theory

of liability." (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009))).  A UCL

claim may also be based on the violation of another law.  *Leonel v. Am. Airlines, Inc.*, 400 F.3d

---

[3]    At the hearing on the Objection, the Trust agreed that the Supplemental Opposition demonstrates that Pichardo made Loan payments in June and July 2009.  (*See* July 16, 2015 Hrg. Tr. 14:22–15:7, ECF Doc. # 8940.)

[4]    The Trust also agreed at the hearing that a plaintiff's pre-existing medical condition does not necessarily preclude a plaintiff from recovering for an exacerbation of that condition, meaning that Pichardo's claimed damages are in dispute.  (July 16 Hrg. Tr. at 10:18–11:17.)

702, 714 (9th Cir. 2005) ("Under the statute, '[u]nfair competition encompasses anything that

can properly be called a business practice which at the same time is forbidden by law.'" (quoting

*Wilkinson v. Times Mirror Corp.*, 264 Cal. Rptr. 194, 206 (Ct. App. 1989))).  "By proscribing

'any unlawful' business practice, section 17200 'borrows' violations of other laws and treats

them as unlawful practices that the unfair competition law makes independently actionable."

*Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000) (quoting *Cel-*

*Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539–40 (Cal. 1999)).

      The Initial Complaint alleges that GMACM violated the UCL by falsely informing

Pichardo that his Loan was in default and subject to foreclosure and that Pichardo would be

subject to criminal liability if he did not make additional payments which were not due.  (Initial

Compl. ¶¶ 38–40.)  The Trust bases its Objection to this cause of action solely on Pichardo's

failure to demonstrate an entitlement to damages.  (Obj. ¶ 51.)  According to the Trust, the UCL

only provides for injunctive relief or restitution; Pichardo cannot obtain injunctive relief because

GMACM is no longer involved with his Loan and Pichardo is not entitled to restitution because

the purported "additional payments which were not due" have not been alleged to have been

actually made by Pichardo.  (*Id.*)

      "While the scope of conduct covered by the UCL is broad, its remedies are limited."

*Korea Supply Co. v. Lockheed Martin Corp.*, 131 Cal. Rptr. 29, 37 (2003) (citation omitted).

Monetary damages are not recoverable because this statute is equitable in nature; only injunctive

relief and restitution are available remedies.  *See id.* (citations omitted).

      To the extent Pichardo seeks injunctive relief, the Objection to the UCL claim alleged in

the Initial Complaint is **SUSTAINED**.  GMACM no longer retains an interest in the Loan and

therefore any awarded injunctive relief would be futile.

To the extent Pichardo seeks restitution, the Objection to the UCL claim is

**OVERRULED** without prejudice.  The Trust asserts that Pichardo has failed to demonstrate that

he made "additional payments" to ward off criminal liability in accordance with alleged

misrepresentations made by GMACM.  (Obj. ¶ 51.)  Pichardo's Payment History, however,

indicates that Pichardo made payments in different amounts on June 24, August 12, September 3,

October 6, October 14, and November 17, 2009.  (Payment History at 3–4.)  Not one of these

payments affected the "current through" date.  (*See id.*)  The Trust has not provided any

explanation for these payment entries in the Payment History; in fact, the Trust does not even

cite to the Payment History in its Objection.  As such, there are disputed issues of fact why these

payments were made, what these payments were for, and why these payments did not help bring

the account current.  There is also a disputed issue of fact whether Pichardo would be entitled to

restitution in light of the payments he made.

4.    *Violation of the FAL*

The last cause of action asserted in the Initial Complaint is a violation of the FAL.

(Initial Compl. ¶¶ 41–43.)  The FAL provides:

> It is unlawful for any person, firm, corporation or association, or
> any employee thereof with intent directly or indirectly to dispose
> of real or personal property or to perform services, professional or
> otherwise, or anything of any nature whatsoever or to induce the
> public to enter into any obligation relating thereto, to make or
> disseminate or cause to be made or disseminated before the public
> in this state, or to make or disseminate or cause to be made or
> disseminated from this state before the public in any state, in any
> newspaper or other publication, or any advertising device, or by
> public outcry or proclamation, or in any other manner or means
> whatever, including over the Internet, any statement, concerning
> that real or personal property or those services, professional or
> otherwise, or concerning any circumstance or matter of fact
> connected with the proposed performance or disposition thereof,
> which is untrue or misleading, and which is known, or which by
> the exercise of reasonable care should be known, to be untrue or
> misleading, or for any person, firm, or corporation to so make or

> disseminate or cause to be so made or disseminated any such
> statement as part of a plan or scheme with the intent not to sell that
> personal property or those services, professional or otherwise, so
> advertised at the price stated therein, or as so advertised. . . .

CAL. BUS. & PROF. CODE § 17500 (2015).  Courts recognize that "[t]he [FAL] makes it unlawful

to induce the public to enter into any obligation through the dissemination of untrue or

misleading statements."  *Avila v. Lease Fin. Grp., LLC*, No. 11 Civ. 8125(KBF), 2012 WL

3165408, at *8 (S.D.N.Y. July 31, 2012) (internal quotation marks omitted) (quoting *Lam v.

Gen. Mills, Inc.*, No. 11-5056, 2012 WL 1656731, at *4 (N.D. Cal. May 10, 2012) (emphasis

added) (citing CAL. BUS. & PROF. CODE § 17500)).  A plaintiff alleging a violation of the FAL

must therefore allege that the alleged statements were "(1) widely disseminated to the public . . .

(2) for the purpose of influencing consumers to purchases [sic] goods or services . . . ."  *Id.*

(internal quotation marks omitted) (quoting *In re Jamster Mktg. Litig.*, MDL 1751, 2009 WL

1456632, at *9 (S.D. Cal. May 22, 2009).

The Initial Complaint alleges that GMACM violated the FAL by "making or

disseminating untrue or misleading statements, or by causing untrue or misleading statements to

be made or disseminated, in or from California."  (*Id.* ¶ 42.)  According to the Initial Complaint,

the misstatements include the numerous threatening phone calls Pichardo received from

GMACM throughout 2011 and 2012, during which GMACM advised Pichardo that he was in

default, that GMACM was going to foreclose on the Property, and that Pichardo would be

subject to criminal liability if he did not make additional payments.  (*Id.*)  These allegations only

amount to misstatements GMACM purportedly made to Pichardo regarding the status of his

Loan; not widely disseminated statements or statements made for the purpose of influencing

customers to purchase any goods or services.  Pichardo's allegations are therefore insufficient to

give rise to a cause of action under the FAL and the Objection to this claim is **SUSTAINED**.

### C.    The First Amended Complaint

#### 1.    Breach of Contract

"California law requires four elements to [demonstrate the] form[ation of] a valid contract: 1) parties capable of contracting; 2) their mutual consent; 3) a lawful object; and 4) sufficient consideration." *Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co.*, 520 F. Supp. 2d 1184, 1193 (C.D. Cal. 2007) (citing CAL. CIV. CODE §§ 1550, 1565). To state a claim for breach of contract, a plaintiff must allege: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011) (citing *Reichert v. Gen. Ins. Co.*, 442 P.2d 377, 381 (Cal. 1968) (en banc)).

Pichardo's breach of contract cause of action is based on the August Agreement, which GMACM allegedly breached by refusing to accept payment under the terms of such agreement. (First Am. Compl. ¶¶ 21–24.) The Trust argues that Pichardo's breach of contract cause of action fails because he cannot establish that the August Agreement is a valid contract. (Obj. ¶ 55.) Specifically, the Trust asserts that the August Agreement is not a valid contract because it omitted a material term—the treatment of the additional $120,000.00 balance of deferred principal owed on the Loan at the time the agreement was drafted. (*Id.* ¶ 56.) While Pichardo requested a reduction of principal, he was informed that he would be offered a principal deferment, not reduction, before receiving the August Agreement. (*Id.*) The Trust further argues that even if the August Agreement were a valid contract, it was superseded by the Corrected Agreement and therefore cannot form the basis of Pichardo's breach of contract claim. (*Id.* ¶ 55.)

a.    The August Agreement

Analyzing the validity of the August Agreement first, the Court concludes that the

August Agreement satisfies the requirements to be a valid and binding contract between

GMACM and Pichardo.  The Trust's primary argument against the validity of the August

Agreement is that it lacked the parties' mutual consent to its terms; namely, the treatment of the

deferred principal in the amount of $120,000.00.  (*See* Obj. ¶ 56.)  A contract is not formed

absent the parties' mutual consent or assent.  *Meyer v. Benko*, 127 Cal. Rptr. 846, 848 (Ct. App.

1976) (citing CAL. CIV. CODE §§ 1550, 1565).  In other words, the parties must agree "upon the

same thing in the same sense."  CAL. CIV. CODE § 1580; *see Banner Entm't, Inc. v. Super. Ct.

(Alchemy Filmworks, Inc.)*, 72 Cal. Rptr. 2d 598, 603 (Ct. App. 1998) ("California law is clear

that there is no contract until there has been a meeting of the minds on *all* material points."

(citations omitted)).  "The existence of mutual consent is determined by objective rather than

subjective criteria, the test being what the outward manifestations of consent would lead a

reasonable person to believe."  *Meyer*, 127 Cal. Rptr. at 848 (citation omitted).  Absent evidence

establishing that the parties' expressed their mutual assent to the same operative terms, "there is

no mutual consent to contract and no contract formation."  *Weddington Prods., Inc. v. Flick*, 71

Cal. Rptr. 265, 277 (Ct. App. 1998) (citing CAL. CIV. CODE §§ 1550, 1565, 1580).  "A proposal

cannot be accepted so as to form a contract unless the terms of the contract are reasonably

certain."  *Id.* (citation and internal quotation marks omitted); *Ladas v. Cal. State Auto. Ass'n*, 23

Cal. Rptr. 810, 814 (Ct. App. 1993) ("Under basic contract law an offer must be sufficiently

definite, or must call for such definite terms in the acceptance that the performance promised is

reasonably certain." (citation and internal quotation marks omitted)).  A contract is void where it

is so indefinite that the parties' intention with respect to material terms cannot be ascertained.

*Ladas*, 23 Cal. Rptr. at 814 (citing *Cal. Lettuce Growers v. Union Sugar Co.*, 289 P.2d 785, 789

(Cal. 1955) (en banc); CAL. CIV. CODE § 1598).

According to the Trust, under *Peterson Development Company v. Torrey Pines Bank*, 284

Cal. Rptr. 367 (Ct. App. 1991), the treatment of deferred principal, the term at issue with respect

to the August Agreement's validity, constitutes a material term of any loan modification

agreement.  (Obj. ¶ 56 (citing *Peterson*, 284 Cal. Rptr. at 374).)  In *Peterson*, the California

Court of Appeal affirmed a grant of summary judgment to the defendant on a claim for breach of

a loan commitment letter, holding that the subject loan commitment was not a valid contract.

*See Peterson*, 284 Cal. Rptr. at 374–75.  The court observed that "[t]he material terms of a loan

include the identity of the lender and borrower, the amount of the loan, and the terms for

repayment."  *Id.* at 374 (citation omitted).  In holding that the loan commitment letter did not

constitute an enforceable contract, the court found that the material contract terms were too

broadly defined "to be capable of being made certain . . . ."  *Id.*  According to the Trust, the

August Agreement did not contain a material term because it neither referenced the principal

deferment nor referenced any reduction of principal.  (*See* Obj. ¶ 56.)

*Peterson* is distinguishable from the instant case because the material terms of the August

Agreement are not indefinite on their face.  First, the August Agreement identifies the lender as

GMACM and the borrower as Pichardo (and his wife).  (*See* August Agmt. at 1.)  Second, the

August Agreement recites that it "amends and supplements" the Note in the original principal

amount of $190,000.00 (*id.*), and it sets forth that, as of its effective date, "the amount payable

under the Note" is $63,272.87, "consisting of the amount(s) loaned to [Pichardo] by [the Lender]

and any accrued but unpaid interest capitalized to date" (*id.* ¶ 1).  Third, the August Agreement

provides for the calculation of interest and the amount of Pichardo's monthly payments of

principal and interest.  (*See id.* ¶¶ 2–3.)  Nothing in the four corners of the August Agreement

suggests that there is any unaccounted for principal.

Moreover, the August Agreement expressly provides the following integration clause in

capital letters:  "THIS AGREEMENT, AND THE NOTE AND SECURITY INSTRUMENT

(AS AMENDED HEREBY) SETS FORTH THE ENTIRE UNDERSTANDING BETWEEN

THE PARTIES.  THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE

PARTIES."  (*Id.* ¶ 8.)  Because the August Agreement was fully integrated, the Trust cannot rely

on parol evidence to establish that the agreement failed to appropriately deal with the treatment

of deferred principal.  *See Casa Herrera, Inc. v. Beydoun*, 83 P.3d 497, 503 (Cal. 2004) ("[The

parol evidence] rule . . . bars consideration of extrinsic evidence of prior or contemporaneous

negotiations or agreements at variance with the written agreement.").  Accordingly, the August

Agreement is not, as a matter of law, an invalid contract, as the Trust contends.  The issue still

remains, of course, whether the August Agreement was superseded by the Corrected Agreement.

### b.    The Corrected Agreement

The Trust argues that even if the August Agreement is a valid contract, the August

Agreement cannot form the basis of Pichardo's breach of contract claim because the August

Agreement was superseded by the Corrected Agreement.  (*See* Obj. ¶ 57.)  According to the

Trust, Pichardo executed the Corrected Agreement before a notary, and the Corrected Agreement

expressly provides that, together with the Note and Deed of Trust, it sets forth the parties' entire

agreement.  (*Id.*)  Pichardo argues that the Corrected Agreement is not enforceable for two

reasons:  (1) the Corrected Agreement was never countersigned by GMACM; and (2) Pichardo

originally refused to sign the Corrected Agreement, but ultimately relented under duress after

GMACM threatened to foreclose.  (*See* Opp. at 6–7.)

The validity of the Corrected Agreement does not turn on whether GMACM countersigned it; nor does the plausibility of Pichardo's breach of contract claim. First, Pichardo's breach of contract claim is based on GMACM's purported breach of the August Agreement, not the Corrected Agreement. Second, under California's Statute of Frauds, Pichardo can only demonstrate that the terms of the Corrected Agreement were *unenforceable*, rather than enforceable and able to be breached, against GMACM through GMACM's failure to countersign. Under California law, mortgages, deeds of trusts, and modifications of such contracts are subject to the Statute of Frauds. CAL. CIV. CODE §§ 1624, 2922; *Secrest v. Sec. Nat'l Mortg. Loan Tr. 2002-2*, 84 Cal. Rptr. 3d 275, 282 (Ct. App. 2008) ("An agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds." (citing CAL. CIV. CODE § 1698(a)); *see also* CAL. CIV. CODE § 1698(b) ("A contract in writing may be modified by an oral agreement to the extent that the oral agreement is executed by the parties."). To be enforceable, a contract subject to the Statute of Frauds must be in writing and signed by the "party to be charged," or "the party to be charged in court with the performance of the obligation, i.e., the *defendant* in the action brought to enforce the contract." *Uloa v. McMillin Real Estate & Mortg., Inc.*, 57 Cal. Rptr. 3d 1, 5 (Ct. App. 2007) (emphasis in original) (citations omitted). "[T]he fact that a party to a contract has not signed the written document invalidates it only with regard to the statute of frauds and enforcing the agreement against that particular party." *Far W. Servs., Inc. v. Livingston*, 203 Cal. Rptr. 486, 491 (Ct. App. 1984).

With respect to Pichardo's second argument, the Court finds disputed issues of fact whether Pichardo agreed to sign the Corrected Agreement under duress, putting the validity and superseding effect of the Corrected Agreement into question. Under California law, a contract party may rescind the contract if his consent "was given by mistake, or obtained through duress,

menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom

he rescinds, or of any other party to the contract jointly interested with such party." CAL. CIV.

CODE § 1689; *see id.* § 1567 (providing that a contract party's apparent consent is not freely

given when obtained through duress, menace, fraud, undue influence, or mistake). "Duress

consists in unlawful confinement of another's person, or relatives, or property, which causes him

to consent to a transaction through fear." *Odorizzi v. Bloomfield Sch. Dist.*, 54 Cal. Rptr. 533,

538 (Ct. App. 1966) (citing CAL. CIV. CODE § 1569). Menace consists of a threat of duress,

injury to a person's character, or "unlawful and violent injury to the person or property of any

such person . . . ." CAL. CIV. CODE § 1570. "The action or threat in duress or menace must be

unlawful, and a threat to take legal action is not unlawful unless the party making the threat

knows the falsity of his claim." *Odorizzi*, 54 Cal. Rptr. at 538 (citation omitted). While

threatening to take legal action to foreclose on a mortgage generally does not constitute menace,

such a threat may constitute menace if the party making the threat knows it has no legal basis to

foreclose. *See Leeper v. Beltrami*, 347 P.2d 12, 18–19 (Cal. 1959) (en banc) (citations omitted).

Here, Pichardo asserts that he only signed the Corrected Agreement because GMACM

told him that if he did not sign the Corrected Agreement, GMACM would foreclose on his

Property. (*See* July 16, 2015 Hrg. Tr. at 41:22–42:24.) As indicated above, there are disputed

issues of fact whether Pichardo was indeed in default on his Loan, giving GMACM a valid legal

basis to foreclose. Consequently, there are disputed issues of fact whether GMACM's threat to

foreclose on the Property unless Pichardo signed the Corrected Agreement constituted duress and

whether such duress and the parties' conduct after signing the Corrected Agreement render the

Corrected Agreement void. *See United States v. Mednansky*, No. 10cv1307 (LAB), 2011 WL

844956, at *4 (S.D. Cal. Mar. 8, 2011) (holding that a contract entered into through the use of

"menace" "would merely render the contract voidable by prompt disaffirmance, not void and

subject to challenge years later" (citing *Barnette v. Wells Fargo Nev. Nat'l Bank of San

Francisco*, 270 U.S. 438, 444 (1926))).  Due to these disputed issues of fact, the Court cannot

resolve Pichardo's breach of contract claim as a matter of law and thus **OVERRULES** without

prejudice the Trust's Objection to Pichardo's breach of contract claim.

       2.       *Breach of the Implied Covenant of Good Faith and Fair Dealing*

Pichardo's claim for breach of the implied covenant of good faith and fair dealing is

based on his allegations that GMACM did not act in good faith when it:  (i) "unilaterally

change[d] the terms of the loan modification from a principal forgiveness [agreement] to [a]

principal deferment [agreement]" (First Am. Compl. ¶ 28); and (ii) "threatened [Pichardo] with

foreclosure if he did not sign the [Corrected Agreement] changing the terms to principal

deferment" (*id.* ¶ 29).  The Trust argues that an underlying contract is required to state a claim

for breach of the implied covenant of good faith and fair dealing, and the August Agreement did

not constitute a binding contract.  (Obj. ¶ 62.)  Additionally, the Trust contends that GMACM

did not breach any implied duty in requesting that Pichardo cooperate in executing the Corrected

Agreement to "ensure that the parties' expectations at the time of contracting were enforced, not

violated, by correcting the agreement to prevent [Pichardo] from being provided with an

unintended windfall."  (*Id.* ¶ 63.)

"In California, the factual elements necessary to establish a breach of the covenant of

good faith and fair dealing are:  (1) the parties entered into a contract; (2) the plaintiff fulfilled

his obligations under the contract; (3) any conditions precedent to the defendant's performance

occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of

the contract; and (5) the plaintiff was harmed by the defendant's conduct."  *Rosenfield v.

JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010) (citation omitted).

Specifically, "[a] plaintiff must show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities." *Woods v. Google, Inc.*, 889 F. Supp. 2d 1882, 1194 (N.D. Cal. 2012).

As discussed above, Pichardo alleged facts establishing that the August Agreement is a valid agreement.  He also alleged that he made all of his payments under the August Agreement (and under the Corrected Agreement), that GMACM was obligated to perform under the August Agreement, that GMACM unfairly interfered with his rights to receive the benefits of the August Agreement by threatening foreclosure if he did not sign the Corrected Agreement, and that he was harmed as a result.  While the Trust asserts that GMACM was simply trying to correct its mistake in executing the August Agreement, the Trust does not deny that GMACM took action to alter Pichardo's rights under the August Agreement, as much as those rights are challenged now.  Altogether, Pichardo has alleged sufficient facts in support of his breach of the implied covenant of good faith and fair dealing claim and the Trust's Objection to this Claim is therefore **OVERRULED** without prejudice.

### 3.    *Negligence*

Pichardo asserts that GMACM is liable for negligence because it breached its duty to exercise reasonable care and skill in servicing his Loan by "failing to properly calculate and credit [his] payment, prepar[ing] and fil[ing] false documents, [and] threaten[ing] foreclosure without having the legal authority and proper documentation to do so."  (First Am. Compl. ¶ 33.) The Trust argues that Pichardo fails to state a claim for negligence because:  (i) he cannot show that GMACM owed him a duty of care (Obj. ¶ 65); and (ii) he has not specifically identified any allegedly negligent acts taken by GMACM (*id.* ¶ 67).

Under California law, a negligence claim consists of three elements:  "(a) a legal duty to use due care; (b) a breach of such legal duty; [and] (c) the breach as the proximate or legal cause of the resulting injury."  *Ladd v. Cnty. of San Mateo*, 911 P.2d 496, 498 (Cal. 1996) (alterations and internal quotation marks omitted).  "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence."  *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 283 Cal. Rptr. 53, 56 (Ct. App. 1991) (quoting *Beauchamp v. Los Gatos Golf Course*, 77 Cal. Rptr. 914 (Ct. App. 1969)).  Generally, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."  *Id.* at 56–57 (citing cases).  However, California courts lack consensus regarding whether a financial institution owes a borrower a duty of care when a loan modification is involved.  *See, e.g.*, *Segura v. Wells Fargo Bank, N.A.*, No. CV-14-04195, 2014 WL 4798890, at *12 (C.D. Cal. Sept. 26, 2014) ("The existence of a duty of care owed by financial institutions in the process of considering borrowers for a loan modification . . . is an unsettled issue."); *Armstrong v. Chevy Chase Bank, FSB*, No. 5:11-cv-05664 (EJD), 2012 WL 4747165, at *4 (N.D. Cal. Oct. 3, 2012) (observing that several courts "have characterized a loan modification as a traditional money lending activity," and finding that "the minority of cases which hold otherwise . . . are unpersuasive") (internal citations and quotation marks omitted).

California courts examine and balance the following factors to determine whether a duty of care exists between a financial institution and a borrower:  "[1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's

conduct, and [6] the policy of preventing future harm." *Nymark*, 283 Cal. Rptr. at 58 (citing

cases).  The California Court of Appeal has held that these factors "do not support imposition of

a common law duty to offer or approve a loan modification" or other foreclosure alternatives.

*Lueras v. BAC Home Loans Servicing, LP*, 163 Cal. Rptr. 3d 804, 820 (Ct. App. 2013).  Instead,

the lending institutions' "rights, duties, and obligations in [offering, considering, or approving

loan modifications and exploring foreclosure alternatives] [a]re set forth in the note and deed of

trust, the [parties' forbearance agreement], federal and state statutes and regulations, and the

directives and announcement of the United States Department of Treasury and Fannie Mae." *Id.*

at 820–21.  A plaintiff's negligence claim against a lending institution will not stand where the

plaintiff fails to demonstrate that his or her default in paying the monthly loan payments was a

result of, or exacerbated by, the defendant's conduct. *Id.* at 820–21 ("If the modification was

necessary due to the borrower's inability to repay the loan, the borrower's harm, suffered from

denial of a loan modification, would not be closely connected to the lenders conduct.  If the

lender did not place the borrower in a position creating a need for a loan modification, then no

moral blame would be attached to the lender's conduct.").

Pichardo's allegations are similar to the allegations made by the plaintiff and rejected by

the court in *Lueras*. *See id.* ("[Plaintiff's] allegations that [defendants] owed him duties to

follow through on their own agreements, to comply with consumer protection laws and to stop

foreclosure sales that were unlawful fail to state a cause of action for negligence because such

duties, if any, are imposed by the loan documents and the [parties' forbearance agreement],

statutes and regulations.  If [the defendants] failed to follow through on those agreements, then

[plaintiff's] remedy lies in breach of contract not negligence.").  Moreover, Pichardo has failed

to demonstrate that GMACM acted outside of its "conventional role" as a loan servicer such that

the *Nymark* factors would support a finding that GMACM owed a duty of care to Pichardo.

Thus, the Trust's Objection to Pichardo's negligence cause of action is **SUSTAINED**.

### 4.    *Unjust Enrichment*

Pichardo asserts that GMACM has been unjustly enriched by its "wrongful acts and omissions" at his expense.  (First Am. Compl. ¶ 36.)  The Trust argues that Pichardo's unjust enrichment claim fails because there is no independent cause of action for unjust enrichment under California law and, in any event, Pichardo "has not alleged any specific benefit retained by GMACM."  (Obj. ¶ 70.)

The Trust is correct:  Unjust enrichment is not an independent cause of action under California law.  *See, e.g.*, *McBride v. Boughton*, 20 Cal. Rptr. 115, 121 (Ct. App. 2004) ("Unjust enrichment is not a cause of action, . . . or even a remedy, but rather a general principle, underlying various legal doctrines and remedies." (citation and internal quotation marks omitted)); *Melchior v. New Lines Prods., Inc.*, 131 Cal. Rptr. 347, 357 (Ct. App. 2003) ("[T]here is no cause of action in California for unjust enrichment.").  Consequently, the Trust's Objection to Pichardo's unjust enrichment claim is **SUSTAINED**.

### 5.    *Violation of the UCL*

In his First Amended Complaint, Pichardo asserts a more robust UCL claim than he did in his Initial Complaint.  Pichardo alleges that GMACM engaged in deceptive business practices by, among other things:  (i) assessing improper fees; (ii) improperly characterizing borrowers as being late or in default; (iii) improperly threatening foreclosure proceedings; (iv) misapplying borrower payments; (v) failing to provide borrowers adequate monthly statements; (vi) failing to disclose certain fees, costs, and charges; (vii) ignoring grace periods; and (viii) executing and recording false and misleading documents.  (First Am. Compl. ¶ 41.)  The Trust acknowledges that an individual can bring a cause of action under the UCL on behalf of members of the general

public, but argues that Pichardo's "vague and conclusory statements regarding GMACM's general business practices with respect to other borrowers are not sufficient to satisfy the basic pleading standards with respect to a claim brought . . . on behalf of the general public." (Obj. ¶ 72.) Additionally, the Trust argues that Pichardo fails to state a claim for violation of the UCL with respect to actions specific to him because his payment history indicates no evidence of improper charges or misapplied payments. (*See id.* ¶ 73.)

An act or practice is "unfair" within the meaning of the UCL if it is "one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008) (citation and internal quotation marks omitted). "A business practice is 'fraudulent' within the meaning of Section 17200 if 'members of the public are likely to be deceived.'" *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 934 (N.D. Cal. 2013) (quoting *Comm. on Children's Television v. Gen. Foods Corp.*, 673 P.2d 660, 668 (Cal. 1983), *superseded by statute on other grounds*, 2004 Cal. Legis. Serv. Prop. 64 (West 2004)). "The fraudulent practice 'may be based on representations to the public which are untrue, and also those which may be accurate on some level, but will nonetheless tend to mislead or deceive. . . . A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under the UCL.'" *Id.* (quoting *Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293, 324 (Ct. App. 2012)).

Pichardo has alleged that he was coerced into executing the Corrected Agreement under the pretense that GMACM would foreclose on his Property at a time when he was allegedly not in default on his Loan obligations. This allegation, if true, may constitute an unfair or fraudulent

business practice within the meaning of the UCL.  In light of this disputed issue of fact, the

Objection to Pichardo's UCL claim is **OVERRULED** without prejudice.

### III.   CONCLUSION

For the foregoing reasons, the Trust's Objection to Pichardo's Claim is **SUSTAINED** in

part and **OVERRULED** in part.  To the extent the Objection to Pichardo's Claim is overruled, it

is overruled without prejudice.

The Court **ORDERS** that the parties meet and confer and provide a status letter to the

Court no later than September 4, 2015, advising whether they are able to resolve the Claim, and

if not, proposing a schedule for discovery, if necessary, and for an evidentiary hearing.

**IT IS SO ORDERED.**

Dated:   August 4, 2015
        New York, New York

_Martin Glenn_
MARTIN GLENN
United States Bankruptcy Judge