THOMAS P. BEKO, ESQ. (SBN 01250)
ERICKSON, THORPE & SWAINSTON, LTD.
99 W. Arroyo Street
Post Office Box 3559
Reno, NV 89505
Ph: (775) 786-3930; Fax: (775) 786-4160
*Attorneys for Claimants Pamela D. Longoni,
Lacey Longoni and Jean M. Gagnon*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |
| _____/ | |

**CORRECTED MOTION FOR PARTIAL RECONSIDERATION OF ORDER SUSTAINING IN PART AND OVERRULING IN PART THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM NUMBERS 2291, 2294, 2295, AND 2357 FILED BY PAMELA D. LONGONI AND JEAN GAGNON**

COME NOW, Claimants PAMELA D. LONGONI, individually and as the Guardian Ad Litem for LACEY LONGONI, and JEAN M. GAGNON (Claimants), by and through their attorneys, ERICKSON, THORPE & SWAINSTON, LTD., and Thomas P. Beko, Esq., and hereby move this Court for an order reconsidering that part of this Court's Memorandum Opinion and Order Sustaining in Part and Overruling in Part the Rescap Borrower's Claims Trust's Objection to Claims Numbers 2291, 2294, 2295 and 2357 which found that the debtors had standing to pursue a foreclosure upon the Claimants' home.

The basis for this motion is that with regard to the Claimants' wrongful foreclosure claims, each claim is entirely dependent upon the Debtors having standing to pursue the foreclosure action. The Claimants allege that the Debtors lacked that standing. In its Memorandum Opinion, this Court concluded that the Debtors did, in fact, have standing to pursue foreclosure and based thereupon sustained the Debtors' Objection as to some of the claims. However, when reaching this decision, this Court overlooked GMACM's own critical documents which prove unequivocally that GMACM neither possessed nor held the legal\

rights to the underlying Promissory Note and/or Deed of Trust when it instituted the 2009 foreclosure. As such, under Nevada law, the entire foreclosure was unlawful. Because this critical error affects each of the claims asserted by the Claimants, this Court's ruling, to the extent that it sustained the Debtors' Objection, should be reconsidered and reversed.

## I. Summary of the Underlying Claims and this Court Ruling:

The facts underlying this matter were carefully detailed by this Court in its Memorandum Opinion and thus they will not be repeated here. The most salient of those fact is that on September 29, 2005, the Claimants executed a promissory note (the "Note") in favor of Equifirst Corporation ("Equifirst"), which was secured by a deed of trust (the "Deed of Trust"), and together they constituted the loan (the "Loan"). *See, Memorandum Opinion, pp. 3-4.* In 2006 through 2008, the Claimants experienced problems making the payments, and on February 19, 2009, GMACM referred the matter to ETS to commence foreclosure proceedings. *See, Memorandum p. 5.*

Between the original signing of the promissory note and deed of trust in September of 2009 and the subsequent foreclosure in 2009, this Court found the following facts to be true:

> In December 2005, the Loan was placed into a securitization trust, with Debtor Residential Funding Corporation ("RFC") acting as the master servicer. (Id. ¶ 7; see Reply Ex. 2 (master servicing agreement).) The assignment and assumption agreement, dated December 28, 2005 (the "Assignment and Assumption Agreement," Reply Ex. 3), indicates that: (1) RFC was the master servicer, (2) Debtor Residential Asset Mortgage Products, Inc. ("RAMP") purchased the Loan among other mortgage loans pursuant to RFC's master servicing contracts, and (3) U.S. Bank National Association ("US Bank") was the trustee for the securitization trust into which RAMP deposited the purchased loans. (Id.) The pooling and servicing agreement (the "PSA", Reply Ex. 2) provided that the original Note, Deed of Trust (which is registered on the MERS system), and any relevant assignment and assumption agreement (presumably the Assignment and Assumption Agreement) were to be assigned by the "Depositor" (here, RAMP) to US Bank, as trustee for the underlying securitization trust (id.). Debtor Homecomings Financial, LLC ("Homecomings"), and later GMACM, acted as sub-servicer of the Loan beginning in 2005 and continuing until 2013. (Obj. ¶ 7.)

Memorandum Opinion and Order, Doc. #8825, p. 4.

In summary these facts were that approximately three months after the Claimants signed the loan documents, the "Loan" was purchased by Residential Asset Mortgage Products, Inc. ("RAMP"), that the Note, and Deed of Trust (which is registered on the MERS system) were to be assigned to US Bank as trustee, that Residential Funding Corporation ("RFC") acted as the master servicer of the loan, and finally that later GMACM acted as sub-servicer of the Loan beginning in 2005, and continuing until 2013. As support for these conclusions, this Court referred to two exhibits produced by the debtors: the master service agreement (Reply Ex. 2), the Assignment and Assumption Agreement (Reply Ex. 3), and the Debtors' wholly unsupported Objection (¶ 7).

Based upon these facts, this Court concluded that GMACM did, in fact, have standing to pursue the 2009 foreclosure and thereby sustained the Debtors' Objection to several of the Claimants' underlying causes of action. *See, Memorandum Opinion, pp. 20-21.* In reaching this decision, this Court overlooked one critical and entirely dispositive piece of evidence, and that is a Loan Modification Agreement that the Claimants signed on November 5, 2007, which expressly and explicitly states that a wholly unrelated entity, Homecomings Financial, LLC, was the legal holder and the owner of the promissory note and the deed of trust. *See, attached Exhibit 1.* In this regard, the Adjustable Rate Loan Modification Agreement began by first stating that Homecomings Financial, LLC was the Lender on the modified promissory note which was secured by a deed of trust, and which it described as the "Security Instrument." The loan modification agreement then explicitly provided that :

> Borrower acknowledges that **Lender is the legal holder and the owner of the Note and Security Instrument** and further acknowledges that if Lender transfers the Note, as amended by this Agreement, the transferee shall be the "Lender" as defined in this Agreement. (Emphasis added).

Based upon this clear and unmistakable language, the promissory note and deed of trust were neither owned nor possessed by Residential Asset Mortgage Products, Inc. ("RAMP"), nor held by U.S. Bank as a trustee for that entity as claimed by the Debtors.

-3-

Thus, this Court quite errantly relied upon the representations of the Debtors' counsel when this Court concluded that GMACM had standing to pursue the 2009 foreclosure.

It should not go unnoticed by this Court that in their Response to this Objection, the Claimants raised this argument along with an argument that the documents which the Debtors proffered failed to support their claims. However, the Debtors did nothing more than supply this Court with copies of a Pooling and Servicing Agreement (Reply Ex. 2), and Assignment and Assumption of Agreement (Reply Ex. 3) without ever describing any language within these agreements which show that the Claimants' loan was the subject of either of these agreements. Far more critically, the Debtors offered this Court absolutely no explanation whatsoever of how these **2005** documents could invalidate or supersede the Adjustable Rate Loan Modification Agreement which explicitly described Homcomings Financial, LLC as both the holder and legal owner of both the promissory note and deed of trust securing the Claimants' home.

Despite these obvious flaws, this Court apparently accepted as true the arguments proffered by the Debtors that there was a chain of title (and possession) from the original lender to GMACM, and later to ETS. In doing so, this Court completely ignored the Adjustable Rate Loan Modification Agreement. This Court might also take note of the fact that when the Debtors first filed their Objection on March 24, 2015, they themselves attached this Adjustable Rate Loan Modification Agreement and referenced it in the body of their Objection. *See, Objection, ¶ 16, and attached Exhibit 5.*[1] This Objection was stricken by this Court due to its length. However, when the Debtors filed their amended Objection, they completely omitted any reference to this Agreement, and removed it as an exhibit. They did so, of course, because they had seen the Claimants' arguments relative to this issue and knew there was no way they could defeat the argument.

The Claimants submit that the Debtors have completely failed to prove that they ever had standing to pursue any foreclosure upon the property, and therefore each of the

---

[1] Exhibit 1 hereto, is actually a copy of the Debtors' original Exhibit 5.

Claimants' claims for relief would be valid.

## II. Reconsideration of this Court's Memorandum Opinion is fully warranted:

Pursuant to 11 USCA § 502(j) of the Bankruptcy Code, "[a] claim that has been allowed or disallowed may be reconsidered for cause.... " Moreover, this same Code provision allows that the "reconsidered claim may be allowed or disallowed according to the equities of the case." *Id.*

The Bankruptcy Rules mirror similar effect. Fed. R. Bankr. P. 3008 provides that "[a] party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate." Further, this courts' local rules pertaining to reconsideration allow discretion for oral argument and further impose notice and hearing requirements to interested parties before any previous action may be vacated or modified. U.S. Bankr. Ct. Rules S.D.N.Y., LBR 3008-1.

Such motions for reconsideration may be analyzed under the standards enunciated in Fed. R. Civ. P. 59 or 60, made applicable to bankruptcy proceedings by Fed. R. Bankr. 9023 and 9024. *In re PT-1 Communications, Inc.*, 412 B.R. 85, 89 (Bankr. E.D.N.Y. 2009). Though neither the Bankruptcy Code nor rules define the meaning of "for cause" as that term appears in 11 USCA § 502(j), procedural rules set forth in Fed. R. Civ. P. Rule 59 and 60 help coalesce reconsideration standards and bring meaning to "for cause" within the bankruptcy context. *In re Southwest Florida Telecommunications, Inc.,* 234 B.R. 137, 142 (Bankr. M.D.Fla. 1998). Here, a purported error in the recent ruling pertaining to the standing of a party is at issue and is contended, and hence the reconsideration sought may be best analogized as a "mistake" as reflected in Fed. R. Civ. P. 60(b)(1). *See, United Airlines, Inc. v. Brien,* 588 F. 3d 158, 175 (2nd Cir. 2009)(Rule 60(b)(1) is "available for a district court to correct legal errors by the court.").

But, as reflected in the multitudinous ways and means allowing for reconsideration of orders, the bankruptcy court's discretion in whether to reconsider claims is "virtually plenary." *In re Enron Corp.*, 352 B.R. 363, 367 (Bankr. S.D.N.Y. 2006). Moreover, the time limitations present in Rules 59 and 60 are not applied in the Bankruptcy "motion for

reconsideration" context. "Reconsideration of both allowed and disallowed claims may occur at any time before a case is closed, but in such reconsideration the court must weigh the extent and reasonableness of any delay, or prejudice to any party in interest, the effect on efficient court administration and the moving party's good faith." *In re Holland*, 374 B.R. 409, 427 (Bankr. D. Mass. 2007).

The undersigned is fully aware that this Court has been faced with innumerable arguments that the Debtors lacked standing to pursue foreclosure claims. In response to those arguments, the Debtors have likely demonstrated to this Court that subsequent transactions have passed the Loan documents to other entities, where they were authorized to commence a lawful foreclosure. Based upon those repeated representations, this Court likely relied upon these previous representations and therefore assumed that the Debtors had actually made that showing in this case. However, as set forth above, that showing was never made by the Debtors in this case.

In this case, it is completely irrefutable that after 2005, Homecomings Financial is the entity which entered into what amounts to the promissory note. The claimants as "Borrowers" were forced to declare and acknowledge that Homecomings Financial, LLC was both the "holder" and "owner" of the promissory note and the deed of trust. If the Debtors had evidence that they were lawfully entitled to pursue foreclosure upon the Claimants' home they certainly never provided this Court with evidence of that fact. Without proof of those underlying fundament rights, the Debtors could not possibly prove to this Court that their foreclosure was lawful.

Based upon the foregoing, this Court should reverse its previous decision which granted, in part, the Debtors' Objection.

DATED this 14th day of August, 2015.

ERICKSON, THORPE & SWAINSTON, LTD.

By /s/ Thomas P. Beko
THOMAS P. BEKO, ESQ.
*Attorneys for Claimants*
*Pamela D. Longoni, Lacey Longoni*
*and Jean M. Gagnon*

## INDEX TO EXHIBITS

## MOTION FOR PARTIAL RECONSIDERATION OF ORDER SUSTAINING IN PART AND OVERRULING IN PART THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM NUMBERS 2291, 2294, 2295, AND 2357 FILED BY PAMELA D. LONGONI AND JEAN GAGNON

Exhibit 1:    Adjustable Rate Loan Modification Agreement