THOMAS P. BEKO, ESQ. (SBN 01250)
ERICKSON, THORPE & SWAINSTON, LTD.
99 W. Arroyo Street
Post Office Box 3559
Reno, NV 89505
Ph: (775) 786-3930; Fax: (775) 786-4160
*Attorneys for Claimants Pamela D. Longoni,
Lacey Longoni and Jean M. Gagnon*

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |
| _____/ | |

**LONGONI CLAIMANTS' BRIEF CONCERNING TREATMENT OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM AS PER CASE MANAGEMENT AND SCHEDULING ORDER OF JULY 16, 2015**

COME NOW, Claimants PAMELA D. LONGONI, individually and as the Guardian Ad Litem for LACEY LONGONI, and JEAN M. GAGNON (Claimants), by and through their attorneys, ERICKSON, THORPE & SWAINSTON, LTD., and Thomas P. Beko, Esq., and pursuant to the requirements of § 4 of the Case Management and Scheduling Order entered July 16, 2015 (Doc. # 8903) hereby submit the following brief delineating Claimants' objection to any putative decision of this Bankruptcy Court over the outstanding Intentional Infliction of Emotional Distress claim levied against Debtor Residential Capital, LLC, by Claimants. Instead, Claimants request that this court abstain from submitting any proposed finding concerning the claim under 28 U.S.C. § 157(c)(1), and instead allow the claim to find its course back to U.S. District Court for the District of Nevada, pursuant to 28 U.S.C. § 157(b)(5) or 157(d).

///

///

///

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

This Court is by now intimately familiar with the facts of this matter, which therefore will not be reiterated here in depth. For purposes of brief summation, Claimants had a civil action pending against Debtors within the U.S. District Court for the District of Nevada based on an alleged wrongful foreclosure of Claimants' family home. Debtors maintain they held the mortgage and note over such property, but this is disputed. One of the causes of action within that Nevada suit sounded in the common law tort of intentional infliction of emotional distress (hereinafter "IIED"). Following Debtor's filing for bankruptcy protection within the Southern District of New York, the IIED claim has apparently followed the Debtor into the auspices of the Bankruptcy Court. Per the Case Management and Scheduling Order of July 16, 2015, the Bankruptcy Court instructed:

> 4. The Parties do not mutually consent to the jurisdiction of this Court under 28 U.S.C. § 157(b)(5) and will need to brief whether the Court can decide the Intentional Infliction of Emotional Distress claim. The Parties shall submit their respective briefs on the issue no later than August 14, 2015.

*Id.*, Doc. # 8903, pp. 1-2.

Based on the following authorities and argument, Claimants now request that the Bankruptcy court abstain from any proposed findings on the IIED claim, and instead allow the U.S. District Court for the Southern District of New York to decide that such claim be tried in the U.S. District Court for the District in which the claim arose, *i.e.*, the federal court in Nevada.

**I.    THE BANKRUPTCY COURT LACKS THE AUTHORITY UNDER ARTICLE III OF THE U.S. CONSTITUTION TO ENTER A FINAL JUDGMENT ON CLAIMANTS' INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM.**

Any IIED claim pending against a debtor in bankruptcy court necessarily implicates the holding of *Stern v. Marshall*, 131 S.Ct. 2594,__U.S. __ (2011) and the application of 28 U.S.C. § 157, which the *Marshall* decision interpreted. In *Marshall*, a widow brought an adversary proceeding in her Chapter 11 bankruptcy case to recover for her stepson's alleged

tortious interference with her expectancy of an inheritance or gift from her deceased husband. At issue was the bankruptcy court's ability to render a final judgment on the estate's counterclaim against the stepson. Since "counterclaims by the estate against persons filing claims against the estate" were specifically listed as a form of "core proceeding" under 28 U.S.C. § 157(b)(1) & (b)(2)(C), the statute itself undoubted imbued the bankruptcy court with the authority to enter a final judgment on the widow's tortious interference claim. *Marshall, supra*, 131 S.Ct. at 2604-05.

But alas, the analysis of the Court did not stop there. It then went on to find that the reach of 28 U.S.C. § 157 delved beyond the parameters allowed by the Constitution. The high court looked beyond the characterization of the tort claim offered by the statute, which sought to frame all counterclaims as "core proceedings" justiciable by the bankruptcy court. Instead the Court reasoned that since this particular counterclaim arose under state common law between two private parties, it therefore did not flow from the federal statutory scheme and was not a matter of public right, and moreover would not necessarily be resolved by the process of ruling on the stepson's proof of claim in the bankruptcy proceedings. 131 S. Ct. at 2608-13. As such, the bankruptcy court lacked authority under Article III of the Constitution to enter final judgment on the widow's counterclaim. *Id.*

The bankruptcy judge here too is empowered to determine what is, and is not, a "core proceeding" over which such court has authority to render a final judgment. *See*, 28 U.S.C. § 157(b)(3). Unliquidated personal injury torts are not core proceedings. *See*, 28 U.S.C. § 157(b)(2)(B). Moreover, the district court in which the bankruptcy case is pending is afforded the discretion to order that "personal injury tort" claims be tried in either the district court in which the bankruptcy case is pending, or the district court in which the claim arose. *See,* 28 U.S.C. § 157(b)(5).

IIED claims based on wrongful foreclosure are based on actions taken outside the bankruptcy context, and are thus treated as non-core claim over which the bankruptcy court has no authority to render a final judgment, absent consent. *In re Paulson*, 2012 WL 5177950, **4-5 (D. Oregon April 26, 2012)(treating IIED claim as such and citing 28 U.S.C.

1  § 157(b)(2) and *Marshall*); *see accord, In re DiMare*, 462 B.R. 283, 309 and fn. 136(D.
2  Mass. 2011)(emotional distress claim is a personal injury tort over which bankruptcy court
3  has no jurisdiction); *In re Dallas Roadster, Ltd.*, 2013 WL 5758632, *3 and fn.1 (E.D. Tex.
4  Sept. 27, 2013)(treating IIED claim as personal injury tort expressly excluded from automatic
5  referral to the bankruptcy court under 28 U.S.C. § 157(b)(5)).

6  As recognized in Case Management and Scheduling Order (Doc. #8903, p.1), the
7  parties do not consent to jurisdiction under 28 U.S.C.§ 157(b)(5).  The court has further
8  asked for briefing on whether it may decide the IIED claim.  (Doc. 8903, pp. 1-2.)  In sum,
9  it is the claimants' position and their request that the bankruptcy court abstain from deciding
10 the issue, or even hearing the issue and submitting proposed findings under 28 U.S.C. §
11 157(c)(1), and instead allow (or rather permit the federal U.S. District Court for New York
12 to allow) the U.S. District Court in Nevada to hear (and finally decide) the IIED claim.

13 Having perceived the question sought to be addressed by the court in the Case
14 Management and Scheduling Order, and having attempted to answer the same, claimants
15 must admit in candor a certain confusion, should the bankruptcy court agree with their
16 arguments, on how to actually bring about the transfer of this IIED claim back before the
17 U.S. Dist. Ct. in Nevada.  *See, e.g.*, concepts of remand under 28 U.S. C. § 1452(b) and Fed.
18 R. Bankr.P. 9027; discretionary and mandatory abstention per 28 U.S.C. § 1334(c)(1) and
19 (c)(2); or "withdrawal of the reference" under 28 U.S.C. § 157(b)(5) and 157(d).

20 But regardless, it is the Claimants' position that the federal district court in Nevada is
21 in the best position to decide the IIED claim.  The claim arose there.  The pertinent events
22 occurred there.  That Nevada court is familiar with the practices of lenders in the area (due
23 to a veritable tidal wave of similar claims).  Forcing Nevada Claimants to submit to trial in
24 the Southern District of New York is inherently inequitable.  And Nevada has the interest
25 in stemming any abuses it perceives for the local citizenry by way of compensatory and
26 punitive awards.  Moreover, that Nevada court (though federal) has entertained substantial
27 briefing on the claimant's IIED claim by way of substantive attack in the form of a motion
28 to dismiss for failure to state a claim, and has already determined the conduct alleged is

sufficiently extreme and outrageous so as to state a viable claim. *See, Longoni v. GMAC Mort., LLC,* 2010 WL 5186091, pp. 5-6 (D. Nev. Dec. 14, 2010). Claimants ask that the bankruptcy court allow the U.S. District Court in Nevada to render final judgment on the IIED claim or to facilitate that end, since it is apparently the U.S. District Court for the Southern District of New York which will decide where the claim is tried. *See,* 28 U.S.C. § 157(b)(5).

**CONCLUSION**

Claimants' IIED claim is a non-core proceeding and an unliquidated personal injury tort claim. *See*, 28 U.S.C. § 157(b)(2)(B) and 157(b)(5). Though the bankruptcy court is empowered to submit proposed findings on the IIED claim, Article III of the United States Constitution prevents the bankruptcy court from entering final judgment on the claim. *Marshall, supra* and 28 U.S.C. § 157(c)(1). Claimants request that the bankruptcy judge abstain from hearing the matter or submitting proposed findings, and instead allow the U.S. District Court for the Southern District of New York to determine whether it, or the U.S. District Court for the District of Nevada, will hear the claim, pursuant to 28 U.S.C. § 157(b)(5).

DATED this 14th day of August, 2015.

                ERICKSON, THORPE & SWAINSTON, LTD.

                By   /s/ Thomas P. Beko
                     THOMAS P. BEKO, ESQ.
                     *Attorneys for Claimants*
                     *Pamela D. Longoni, Lacey Longoni*
                     *and Jean M. Gagnon*