

4330.1 REV-5

CHAPTER 7.  DELINQUENCIES/DEFAULTS/
MORTGAGE COLLECTION ACTIVITIES/INITIATION OF FORECLOSURE

7-1 COLLECTION ACTIVITIES (24 CFR 203.600).  The purpose of all collection
efforts is to bring a delinquent mortgage current in as short a time
as possible, to avoid foreclosures to the extent possible, and to
minimize losses.  HUD does not expect to see a delinquent mortgage
foreclosed if there is a reasonable chance of saving the mortgage.
Servicers will determine the most effective form of contact with
specific mortgagors during the various stages of delinquency.  A
successful servicing strategy treats each delinquent mortgagor
individually; and, based on the circumstances involved, custom tailors
a foreclosure prevention workout plan that will be successful in
curing the delinquency and preventing a foreclosure.

It is particularly important to address a "one-payment" delinquency
immediately to prevent it from becoming more serious.  An early
determination of the reason for the delinquency gives the servicer and
the mortgagor time to arrange an acceptable method for curing it.
Prompt action is required at all stages after a delinquency has
occurred.

Mortgagee staff should also review each loan in default to determine
which available foreclosure avoidance (loss mitigation/loss
management) strategy is appropriate.  An extended temporary
forbearance is often enough to cure a default; however, at other
times, permanent solutions such as a loan modification, deed-in-lieu
of foreclosure, refinance, or sale of the mortgage are appropriate.

At a minimum, the servicer's collection procedures must provide for
each of the procedures discussed in this Chapter.  (See Appendix 17,
Flow Chart on Mortgagee Delinquency Activities.)

7-2  DEFINITIONS.

    A. Payment Due Date.  Payments on insured mortgages are always due
       on the first day of the month.

    B. Number Of Days In A Month.  All months are considered as having
       30 days.

    C. Delinquent Account.  When a payment is not made on or before its
       due date, the account is considered

        delinquent.  It remains delinquent as long as one payment remains

② 

due but unpaid.

> NOTE: If the unpaid installment on an account that is delinquent is received before the date of default, the account is again considered current.

D. Default (24 CFR 203.466). When a mortgagor fails to perform under any covenant of the mortgage and the failure continues for 30 days.

E. Date Of Default (24 CFR 203.331). The date of default shall be considered as 30 days after:

1. the first uncorrected failure to perform any obligation under the mortgage; or

2. the first failure to make a monthly payment which subsequent payments by the mortgagor are insufficient to cover when applied to the overdue monthly payment in the order in which they become due (also, see Paragraph 8-3A).

EXAMPLE: February 1 - last paid installment.
March 1 - date first failure to perform.
April 1 - date of default.

7-3 CAUSES OF DEFAULT. The true causes of default may be difficult to identify as they are not always apparent to the servicer. The reasons for default that surface most frequently are poor money management, over-extended obligations, loss of income, loss of employment, illness and/or a lack of concern or understanding of the mortgage obligation.

The professional servicer recognizes that these are most likely manifestations of more basic problems that are the actual causes of default. In communicating with mortgagors, the servicer should make a real effort to determine the root cause of default and work with the mortgagor, HUD-approved counseling agencies, and HUD Field Offices in correcting the default by attacking the underlying reason. Some basic causes of default are discussed below.

A. Social Problems. Social or psychological problems can create or compound defaults. Marital difficulties, substance abuse, and excessive gambling are among the

---

---

more common social causes of default. One of the questions that must be asked is whether the financial problems were caused by the marital problems or were the marital problems the cause of the financial problems? As mortgage servicers are not expected to be social counselors, problems of this nature are more properly left to professional counseling agencies. The servicer

is expected, however, to make a concerted effort to help the
mortgagor resolve his/her financial problems and to be aware of
HUD-approved counseling agencies and other local community
agencies to which mortgagors can be referred.  Upon request, HUD
Field Offices will provide lists of local HUD-approved counseling
agencies.

B.Illness Or Injury.  Illness or injury that produces temporary
loss of income and/or temporary increases in expenses which cause
defaults offer an opportunity for the servicer to be of
significant assistance to the mortgagor.  The relief provisions
discussed in Chapter 8 are of special importance in these
situations.

C.Unemployment.  Temporary unemployment or irregular employment
does not necessarily have to lead to foreclosure.  These
mortgagors may be helped by the mortgagee extending forbearance
relief as described in Chapter 8.  Irregular employment is
frequently associated with seasonal workers.  The mortgagee may
help by explaining the need for strict budgeting to make funds
available for expenses coming due in slack employment periods.
Should the servicer's basic efforts not be enough, these
mortgagors are prime candidates for professional counseling.

7-4MORTGAGEE COLLECTION ATTITUDE (24 CFR 203.600).  Mortgagee personnel
must be aware of the psychological differences and varying life styles
among mortgagors.  Servicing practices that are effective with one
mortgagor may not be effective with another.  When the mortgagee made
the decision to make the mortgage loan, provided it was insurable by
HUD or when acquiring the servicing of a mortgage from another
mortgagee, at that time it committed itself to assume the added costs
and effort required to service those mortgages in accordance with HUD
guidelines should they become delinquent.

---

7-39/94

    4330.1 REV-5

---

7-5  DELINQUENCY CONTROL.

A.Identification.  The servicer must have, on an organized basis, a
means of identifying delinquent mortgages and their payment
status daily.

B.Availability of Information.  The information provided by this
system must be provided to collection staff on a current basis,
wherever they are located, so that they can initiate and follow
up on collection activities.

C.Documentation.  The servicer should be prepared to provide
documentation in support of its claims relative to collection
activities.  The record must incorporate everything relative to
those collection activities.  These collection records must be

retained for a minimum of 3 years after the filing of a claim as
the mortgagee could be required to produce documentation to
support its claim.

7-6 STAFFING (24 CFR 202.12(b)).  A successful collection department is
one that incorporates both understanding and flexibility into its
operations.  There is no substitute tor human judgment in servicing,
and the function must not be relegated to automated systems or encased
in a rigid system.  24 CFR 202.12(b) requires the mortgagee to "employ
trained personnel competent to perform their assigned
responsibilities, including . . . servicing and collection activities,
and adequate staff and facilities to . . . . service mortgages . . .
. "

     A.Qualifications.  Collection personnel shall be qualified to
evaluate delinquent accounts in relation to the circumstances of
the mortgagor so that they can make sound decisions regarding the
possibility of avoiding foreclosure.

     B.Knowledge.  The collection staff shall be familiar with HUD
regulations and with the temporary relief measures available to
mortgagors.

     C.Accessibility (24 CFR 203.604).  The staff shall be accessible to
delinquent mortgagors for personal interviews when distance does
not preclude such interviews, or for extended telephone
interviews at no expense to the mortgagor when long distances are
involved.  A

---

9/94 7-4

4330.1 REV-5

---

     personal interview (or a reasonable attempt to arrange one) is
required before 3 full monthly payments are due but unpaid,
except in the following situations:

          1.there is no office of either the mortgagee or the servicer
(including production offices) within 200 miles of the
property;

          2.the mortgagor does not live in the property;

          3.the mortgagor has clearly indicated that he/or she will not
cooperate; or

          4.a realistic repayment plan has been agreed to by mail or
telephone and payments under the plan are current.

     D.Counseling.  The collection staff shall know the identity and
location of HUD-approved counseling agencies and other community
agencies that can serve the mortgagor, treat the causes of
default, and help the mortgagor bring his/her mortgage current.



7-7COLLECTION TECHNIQUES (24 CFR 203.600). Mortgagees shall take prompt
action to collect amounts due from mortgagors to minimize the number
of accounts in a delinquent or default status. Contact is the most
effective collection tool. It is essential that it be attempted as
early as possible in the delinquency. Acceptable contacting
techniques are discussed below.

        A.Letters And Automatic Notices. Computer-prepared cards and
preprinted form letters are sometimes effective, particularly
with occasional delinquents. If form letters are used, controls
should be established to avoid sending the same letter repeatedly
to the same mortgagor. Personal letters, however, are the
preferred approach than form letters. Send individual letters
after the 20th day of delinquency.

        B.Telephone Calls. Telephone calls are highly effective and the
simplest form of direct communication with the mortgagor.
Successful telephone interviews will generally preclude the need
for a personal interview. All pertinent information developed
during the interview must be fully documented in the collection
records. Mortgagees must commence telephone contacts by the 17th
days of the delinquency and complete them by the end of

---

7-59/94

    4330.1 REV-5

---

        the month. Earlier contact--between the 7th and 10th days of the
delinquency--may be warranted for habitual delinquents.

        When conducting telephone interviews it is important to be both
firm and courteous. Schedule contacts with delinquent
mortgagors, when possible, for a time most appropriate for
productive discussion. Interviewers should:

                1.emphasize the importance of making payments as they come
due;

                2.determine the causes of the delinquency;

                3.get the mortgagor's commitment to bring the mortgage current
as soon as possible. Establish a specific reinstatement
date or a date on which an acceptable payment will be made;

                4.when appropriate, remind the mortgagor of the provisions of
the mortgage and the methods of legal recourse available to
the servicer;

                NOTE:Empty threats are not appropriate. The
interviewer should not point out the possibility
of foreclosure unless there is a real probability
that the mortgagee will start foreclosure if



payment is not made promptly.

     5.either put repayment plans in writing or make sure they are fully documented; and

     NOTE:Unpaid mortgage interest will not be allowed in any insurance settlement unless the agreement complies with all requirements of 24 CFR 203.614.

     6.follow up promptly if the mortgagor agrees to a payment schedule and the payments are not made.

     NOTE:If a payment is promised on the tenth, for example, there should be another call to that mortgagor on the eleventh if the payment has not been received.  The servicer is responsible for following up promptly on missed payments.

---

9/947-6

4330.1 REV-5

---

     C.Face-to-Face/Personal Interviews (24 CFR 203.604).  There must be either a face-to-face interview or a "reasonable effort" (also see Paragraph 7-7C2) to arrange one before three full monthly payments are due and unpaid.  (No later than the 62nd day of delinquency.)  See Chapter 9 for Property Inspection requirements.

     Additional face-to-face interviews with the mortgagor may be necessary, and a servicer should use its judgment in making this determination.

     NOTE:With regard to shared equity mortgages, only the mortgagor living in the property must be interviewed face-to-face.  However, the non-occupant mortgagor must be advised of the meeting and encouraged to attend as the delinquency will also affect him/her.

     1.Purpose of Interview.  This requirement is intended to emphasize the importance of face-to-face visits in reducing the incidence of foreclosure.  A meeting with the mortgagor by a mortgagee employee can often determine the cause of the default, obtain financial information; establish a repayment schedule and prevent foreclosure by influencing the payment habits of mortgagors.  HUD does not require that mortgagees maintain an office in a location in order to originate and/or service mortgages.  However, it is a good servicing practice to maintain an office (whether a servicing or production office) in areas reasonably accessible to the properties that are the security for the company's mortgage loans.



2.Definition of "Reasonable Effort" (24 CFR 203.604(d)).  As
cited in Paragraph 7-7C, above, a "reasonable effort" to
arrange a face-to-face interview is considered to include
the following actions on the part of the mortgagee:

*              a.   at least one letter sent to the mortgagor at the
property address, sent by Certificate of Mail or by
Certified Mail, to which the mortgagor either refuses
to accept or which he/she does not respond.  In the
case of chronic delinquents, if a mortgagee sends a
letter requesting a face-to-face interview and then

---

7-79/94

   4330.1 REV-5

---

                   determines that repeated mailings would not be
fruitful, additional letters need not be sent if one
has been sent in the preceding six months, unless full
reinstatement takes place.  In the event of a new
default, mortgagee are required to re-send the letter,
even if six months have not elapsed; and              *

                   b.at least one visit to the property (unless the
distance
is over 200 miles) for which at least one of the
reasons for the visit must be to conduct an interview
with the mortgagor.

                   3.Interviewer's Authority.  The employee representing the
mortgagee at these interviews needs to have the authority to
propose and accept reasonable repayment plans and/or limit
their actions to the realm of that authority.  The interview
has little value if the mortgagee's representative must take
proposals back to a superior for a decision.

                   NOTE:Where a mortgagee's representative exceeds his/her
authority by agreeing to a repayment plan at the
time of the interview, the fact that he
overstepped his/her authority is not sufficient
justification for the mortgagee not accept
repayment plan agreed to by the mortgagee's
representative.

                   4.When Face-To-Face Interviews Are Not Required (24 CFR
203.604(c)).  Exceptions to the "face-to-face interview
rule" cited in the preceding paragraph are when:

                   a.the mortgagor does not live in the mortgaged property;

                   b.there is no office (or branch office) of the mortgagee
or servicer within 200 miles of the mortgaged property;

c.the mortgagor will not cooperate; or

d.if an agreement has been reached on a repayment plan
by
mail (or telephone) and payments under the plan are
current or are less than thirty days delinquent.

---

9/947-8

4330.1 REV-5

---

D.Use Of Attorneys To Collect Past Due Accounts.

Attorneys may be used for the collection of past due amounts, but
their services in this capacity are not considered legal services
and their fees may not be passed on to mortgagors or to HUD in a
claim for mortgage insurance benefits.

NOTE:Attorneys' fees that may be passed on are discussed in
Chapter 4, Paragraph 4-8 of this Handbook.

E.Delinquency Counseling.  When normal collection techniques are
not effective, the mortgagee should consider enlisting the help
of homeownership counseling by a HUD-approved housing counseling
agency.  (See Appendix 18 for further information on this
subject.)

F.Prevention Of Chronic Delinquency.  Effective default servicing
must recognize the connection between chronic delinquency,
subsequent default, and eventual foreclosure.  To minimize
foreclosures, the servicer's collection program must include a
plan of action in accordance with HUD guidelines.  These
guidelines are specifically designed to encourage promptness and
discourage chronic delinquency.

Mortgage provisions are to be applied with flexibility (not
arbitrarily) based on the merits of individual circumstances if
they are to serve as an effective tool to decrease the
probability of foreclosure.  Decisions must be made by people,
not automated machines.  Automatic decisions and operating
practices, such as routinely returning payments at the lock-box
processing stage, must be eliminated.  The "human element" must
be invoked into making decisions concerning the servicing of
mortgages in, but not necessarily limited to, the following
areas:

1.the enforcement of the late charge provisions of the
mortgage is discussed in detail in Paragraph 4-2; and

2.the return of partial payments when they are not preceded by
satisfactory arrangements to pay amounts past due, subject
to the restrictions imposed by Paragraph 7-9;

7-99/94

4330.1 REV-5

NOTE:If this tool is to remain effective, it should be used only at the following times:

a.when it is evident that it will be effective as a collection tool to teach the mortgagor to make future payments on time; or

b.when the mortgagee has already made its decision to foreclose.

G.Avoiding Foreclosure Pamphlet:  (24 CFR 203.602)  The HUD-426-H pamphlet (Appendix 19) must be sent at the following times:

1.send the cover letter as provided in Appendix 19.

2.the cover letter and the pamphlet must be mailed to each homeowner whose mortgage is delinquent no later than the end of the second month of any delinquency; (send the pamphlet by the 32nd day, but no later than the 60th day of delinquency).

3.if an account is brought current and then again becomes delinquent, the pamphlet and cover letter must be sent again unless the beginning of the new delinquency occurs less than 6 months after the pamphlet was last mailed.

The HUD-426-H pamphlet can be purchased from the Government Printing Office (GPO) or, can be reproduced by the mortgagee.  To order copies from the GPO, mortgagees may contact GPO at (202) 783-3238 or write to the following address:

Government Printing Office
Superintendent of Documents
North Capital and H Streets, NW
Washington, DC  20402

In addition, the HUD-426-H pamphlet can be purchased at GPO bookstores throughout the U.S.  (See APPENDIX 19(A) for the U.S. Government Bookstore locations.)  The following information will assist mortgagees in ordering the pamphlet:

HUD-426-H, Stock Number - 023-000-00784-3

9/947-10

4330.1 REV-5

⑩

Mortgagees may reproduce the pamphlet at the mortgagee's expense; however, the contents may not be changed in any way.

NOTE:HUD believes the information in this pamphlet and cover letter is important and should be sent in the initial stages of delinquency (the 32nd day of delinquency) as an early effort to save mortgages from being foreclosed upon.

H.Housing Counseling.  Section 106 of the Housing and Urban Development Act of 1968 as amended (12 U.S.C.  1701x) provides that:

1.All mortgagees that service conventional mortgage loans and loans insured by the Department of Housing and Urban Development (HUD) (home loans) are subject to homeownership counseling notification requirements.  A mortgagee must notify a homeowner who fails to pay any amount due under a home loan by the date the amount is due, of the availability of homeownership counseling.  The notification must be made within 45 days from the date the payment was due, unless the homeowner pays the amount overdue before the expiration of the 45-day period.

2.The mortgagee must provide the homeowner with notification of the availability of any homeownership counseling it offers and either:

a.availability of homeownership counseling provided by HUD-approved non-profit organizations that serve the homeowner's residential area or

b.the HUD toll-free telephone number (1-800-569-4287) through which the homeowner can obtain a list of the counseling organizations.

EXCEPTIONS:  This requirement does not apply to loans:

3.Guaranteed by the Department of Veterans Affairs (DVA) and Farmers Home Administration (FHA) or

4.For which the amount overdue is paid before the expiration of the 45-day period.

7-119/94

4330.1 REV-5

NOTE:Mortgagees may provide the notification with any



collection letter as long as the information is
provided within 45 days of the delinquency.

In addition to the 45-day notification, mortgagees must
provide the housing counseling agency list or the HUD
toll-free telephone number with the HUD Assignment
Program Letters No. 1 (which can be sent by the 61st
day of delinquency) and 3.

7-8 DEFAULT REPORTING-SINGLE FAMILY DEFAULT MONITORING SYSTEM (SFDMS) (24
CFR 203.332, 203.356 and 203.468).

        A. Purpose.  Prompt and accurate reporting by mortgagees is
extremely important in providing HUD with an up-to-date account
of the status and trends of HUD-insured mortgages.  This
reporting serves an indicator of the effectiveness of origination
and servicing activities, and the potential risk to the insurance
funds.  Social Security Numbers of mortgagors with mortgages 90
or more days delinquent are entered in HUD's Credit Alert
Interactive Voice Response System (CAIVRS) (See HUD Handbook
4155.1 REV-4, dated January 1992, Mortgage Credit Analysis for
Mortgage Insurance on One-to-Four Family Properties, for
additional information), which is used to determine mortgagor
eligibility for HUD-insured mortgages.

        NOTE: When an entire report is rejected (due to absence of
critical information or when data is inaccurate) the
regulatory reporting requirement for that period (i.e.,
monthly has not been made by the mortgagee.

        B. How To Submit Reports.  Mortgagees are required to report the
status of all FHA Single Family mortgages that are 90 or more
days delinquent.  This is accomplished by submission of Form
HUD-92068-A (via magnetic tape, cartridge or paper as appropriate
for the number of delinquent mortgages).  The report is due to
HUD by the fifth working day of each month.

        The SFDMS will accept reports submitted by magnetic tape or hard
copy.  However, mortgagees reporting more than 10 delinquent
mortgages per month should submit their Form HUD-92068-A data via
magnetic tape or cartridge.

_____

9/94 7-12

4330.1 REV-5

_____

        Mortgagees changing their reporting process from paper to
magnetic tape or cartridge may submit a "test tape".  Such tapes
should be clearly marked "TEST TAPE FOR HUD 92068A" and should
include the company's name, address and the name and phone number
of a contact person.  All test tapes are to be submitted to the
following address.

Department of Housing and Urban Development Computer Management Division, Room 4135 451 7th Street, SW, Washington, DC 20410

A mortgagee's loan servicing department must coordinate with the appropriate ADP staff or service bureau to ensure that the data submitted is accurate and is not duplicated.

C.Reporting Requirements.

The Form HUD-92068-A was revised for simplicity and mortgagees were to begin using the revised format effective with the reporting period ending January 31, 1994.  All other versions of the form are obsolete.

Mortgagees shall use Form HUD-92068-A, Monthly Delinquent Loan Report, to report the status on all mortgages that are 90 or more days delinquent.  A copy of the Form and Keypunch requirements (for producing magnetic tape or cartridge) are provided in Appendices 20 and 20A.  Mortgagees may photocopy the copy of the Form provided in Appendix 20.

1.Content and Due Date of Report.  This form reports the status of all mortgages which are 90 days or more delinquent.  The report must reflect the status of each mortgage as of the last day of the month, and must be submitted (mailed) by the close of business on the fifth working day of the following month.  For example, when the January 1 installment has not been paid by March 31, the mortgagee must report that mortgage for the month ending March 31.  The report must be submitted no later than the fifth working day of April.

Each mortgage that is 90 or more days delinquent at the end of each reporting period must continue to be reported on a monthly basis, with its status

---

7-139/94

4330.1 REV-5

---

code updated, as appropriate, until its status has been reported in Block 16a as terminated, cured or deleted.

2.Instructions for Completing Form.  Detailed instructions for completing the form are printed directly on the front of the form.  See Appendix 20 for the latest version of the HUD-92068-A.

3.Where to submit Reports.

a.Magnetic tapes/cartridges.  Forward all SFDMS data submitted via magnetic tapes/cartridges to the Department's tape library at the following address:

U. S. Department of Housing and Urban
                    Development
c/o Martin Marietta Data Systems
4701 Forbes Boulevard
Lanham, MD  20706
ATTN:  HIIPS Tape Library
(301) 306-8002

          b.Hard copy (paper reports):  Forward all paper reports
for keypunching, to HUD Headquarters at the following
address:

U. S. Department of Housing and Urban
                    Development
Computer Management Division
451 Seventh Street, SW, Room 4135
Washington, DC  20410-8000
ATTN:  HIIPS Tape Library
(301) 306-8002

          NOTE:All tapes/cartridges must include an external label
with the following information:

Mortgagee name and address
Mortgagee's contact person and phone number
HUD assigned 10-digit mortgagee ID number
Tape Control Number issued by the lender's tape
                    Library
HUD Form Number of the original documents
Total number of records on the tape

9/947-14

4330.1 REV-5

          D.Reporting Accuracy.  A mortgagee must submit an accurate SFDMS
report.  All the information is important--some is so critical
that, if that data is inaccurate or missing, all the report on
that mortgage or even the entire monthly report is automatically
rejected by the SFDMS.

          a.Quality Control.  A mortgagee's quality control system must
ensure that:

          1.the reporting staff is properly trained;

          2.servicing and foreclosure staff is aware of reporting
requirements and of cases reported; and

          3.report format and content are checked for errors by
trained staff, whether it is prepared manually or by an
automated system.

b.Information To Be Checked.  The latest revision of the form includes several items that were previously not reported. It is essential that all information provided be checked to ensure that the Report is complete and accurate.  Items which are new or otherwise have caused mortgagees problems in reporting are listed in Appendix 20D along with a brief discussion for each item.

E.The Monthly Error Report:

An error report has been developed and will be provided to all mortgagees.  The error report is for the mortgagee's benefit and does not require any additional data to be submitted to HUD.  It is provided as an informational tool to be used by mortgagees in their prudent servicing of FHA-insured single family mortgages.

a.When will the Monthly Error Report be available?

The first monthly error report was available for the reporting period ending April 30, 1994.  The monthly error reports are generated when HUD completes the update processing of all HUD-92068A forms submitted by mortgagees each month.  Mortgagees should allow approximately 25 to 28 working days for receipt.

---

7-159/94

4330.1 REV-5

---

b.Where will the error report be sent?

HUD will send the monthly error report to the address that the mortgagee provides in blocks 1, 2a, 2b, 2c and 2d of Form HUD-92068A.  If these fields are incomplete or are left blank, the error report will be sent to the mortgagee at the home office mailing address last reported to the Office of Lender Activities (only if a valid ten digit HUD ID was provided).  At this time, there is no provision to provide duplicate copies of the error report or to send the error report to a different address.

c.If there are no errors, will the mortgagee receive any notification?

A report will be prepared for all properly completed Forms HUD-92068A received.  If there are no errors, a line item will still appear on the report to confirm that Form HUD-92068-A was received; and to show the mortgage status of the case after the transaction was processed.

However, if the mortgagee provides an incorrect ten-digit HUD ID in block 7, the error report will not be sent,

because the servicing mortgagee could not be properly identified.

d. How will the reports be structured?

The report will provide the mortgagee's loan number, FHA Case number, mortgagor's name, mortgagor's Social Security number and the respective code designating the type of error. Please refer to Appendix 20B for a sample report.

e. What will be identified on the error reports?

Identified in the header region of Appendix 20B is a listing of the error codes. Please refer to Appendix 20C for a brief description of each type of error and a recommendation for correction.

F. Electronic Data Interchange Update

HUD has begun accepting Form HUD-92068-A via Electronic Data Interchange (EDI) and will soon begin adding

---

9/947-16

4330.1 REV-5

---

additional lenders to the program. Ultimately, HUD expects to expand the EDI program to all lenders servicing FHA mortgages. HUD's Trading Partner Coordinator will be in contact with those mortgagees who have already submitted a mortgage profile and attended the EDI Orientation seminar to prepare for implementation scheduling.

As a reminder, before any lender may participate, a Mortgagee Profile Survey must be completed and returned to HUD. Copies may be requested from the Office of Information Policies and Systems at (202) 708-0306. You may also request a Mortgagee Profile Survey from HUD's Trading Partner Coordinator who may be reached toll-free at 1-(800) EDI-4-HUD [1-(800) 334-4483].

HUD has compiled an Implementation Guide to fully explain how the EDI program will function, including how, and what is required of lenders to participate in this program. The guide will be made available, at a scheduled EDI orientation, to each lender that has previously completed the Mortgagee Profile Survey and has expressed an interest in EDI. All mortgagees that have previously received their Implementation Guides will receive periodic updates as revisions are made to the Guide.

7-9 PARTIAL PAYMENTS (24 CFR 203.556). For the purpose of this Chapter, a "partial payment" is a payment of any amount less than the full amount due under the mortgage at the time the payment is tendered, including late charges and amounts advanced by the mortgagee on behalf of the

mortgagor (such as for the payment of taxes). When the mortgage is insured under Section 235, the "full amount due under the mortgage" is considered to be the full amount due from the mortgagor only. (See Chapter 10, Paragraph 10-23A.)

A.Acceptance Of Partial Payments. The mortgagee shall accept any partial payment and either apply it to the mortgagor's account or identify it with the mortgagor's account and hold it in a trust account pending disposition except as discussed in Paragraphs 7-9B and 7-10.

When partial payments held for disposition aggregate a full monthly installment (after deduction of amounts due the mortgagee for such things as late charges and refunds of mortgagee advances), they shall be applied

---

7-179/94

4330.1 REV-5

---

to the mortgagor's account, thus advancing the date of the oldest unpaid installment but not the date on which the account first became delinquent.

NOTE:While the date of default is advanced by the application of partial payments aggregating full monthly installments, the date on which the delinquency began remains constant unless the account is subsequently brought completely current.

B.When Return Of Partial Payments Is Permitted.

1.If the mortgage is not in default, any partial payment may be returned to the mortgagor with a letter of explanation.

2.Mortgages In Default. If the mortgage is in default, except as provided in Paragraph 7-10, a partial payment may be returned to the mortgagor with a letter of explanation only under the following circumstances:

a.when the payment represents less than half of the full amount then due;

b.when the payment is less than the amount agreed to in an oral or written forbearance plan;

c.when the property is occupied by a rent-paying tenant and the rents are not being applied to the mortgage payments;

d.when foreclosure has been started, as defined in Paragraph 7-12;

e.when the following conditions have occurred and it is
14 days or more after the mortgagee has mailed the
mortgagor a statement of the full amount due, including
late charges, which advises that it intends to refuse
to accept future partial payments (See Paragraph 4-2H):

(1)four or more full monthly installments are
due but
unpaid, or

---

9/947-18

4330.1 REV-5

---

(2)a delinquency of any amount has continued for
at
least six months since the account first became
delinquent.

7-10WHEN PARTIAL PAYMENTS RULES ON A DEFAULTED MORTGAGE NEED NOT BE
ENFORCED.  The rules cited in Paragraph 7-9 are not intended to
provide mortgagors with an opportunity to evade their obligations,
but, rather, to assist owner-occupants who are actually having
temporary problems in making their payments.  Two possible exceptions
in which the rules cited in Paragraph 7-9 on accepting partial
payments on a defaulted mortgage need not be enforced are:

A.Where the mortgagor has demonstrated a general disregard for the
obligations created by the mortgage contract (i.e., a situation
where the account has been delinquent for up to 6 months on at
least two consecutive occasions, been reinstated, then reverts
back to a delinquent status which continues for 6 additional
months).

B.Where speculators attempt to take advantage of these requirements
(i.e., persons or companies that have assumed insured mortgages
intending to rent or resell the properties).

In these and similar situations, the mortgagee should
fully document its records.  When the mortgagee has
reason to suspect that the mortgagor is receiving
rental income from the mortgaged property and it is not
being applied to the mortgage and that the mortgagor
may be doing the same thing with other mortgages
(HUD-insured or others), the mortgagee should report this,
with all supporting information, to the nearest office
of the Federal Bureau of Investigation (FBI).  These
mortgagors may be guilty of violations of Section 912
of the Housing and Urban Development Act of 1970
(equity skimming) and subject to severe criminal
penalties.

*

7-11  FORECLOSURE AVOIDANCE.  Mortgagee staff should also review

each loan in default to determine which available
foreclosure avoidance strategy is appropriate.  An extended
temporary forbearance is often enough to cure a default,
however, at other times, permanent solutions such as a loan
modification, pre-foreclosure sale, deed-in-lieu of
foreclosure, refinance, or sale of the mortgage are
appropriate.

7-199/94

4330.1 REV-5

A.Loss Mitigation.  Finding alternatives to foreclosure is a
positive action which benefits both lenders and mortgagors.  HUD
expects lenders to utilize loss mitigation measures whenever
appropriate.  Workout options are more cost effective than
foreclosures.  Therefore, lenders should concentrate on loss
mitigation and develop workout offers.  When mortgagors are
unwilling to cooperate with these efforts, it is often due to
lack of financial hardship or a repeated history of defaults and
foreclosures.

B.Break-Even probability.  Lenders may want to consider developing
break-even probabilities.  A break-even probability tells how
many workout offers must succeed in order for the total cost of
all workouts (successes and failures) to equal the cost of
immediate foreclosure on the mortgages.

1.If the mortgagor's success probability exceeds the
break-even level, then it is financially prudent for the
lender to offer the mortgagors a workout.

2.The key to success in workout attempts lies in the abilities
of workout specialists to categorize defaulted mortgagors
within groups according to their perceived chances of
success.

C.Refinances of Delinquent Mortgages.  HUD expects mortgagees to
actively intervene with mortgagors in an attempt to cure
delinquent mortgages.  HUD recognizes that there are situations
where mortgagors more than two months behind in their payments
could cure their delinquency if they could refinance that
mortgage and also return any arrearage on the mortgage.  HUD will
permit mortgagees to refinance these mortgages.

1.Under this program, the mortgagee must provide an amount
equal to one month's mortgage payment Principal Interest
Taxes and Insurance (PITI) of the mortgage being refinanced.

2.For detailed information and instruction regarding the
refinances, refer to Mortgagee Letter 94-30, dated June 28,
1994, (Refinances of Delinquent Mortgages--Special

Instructions).
*

---

9/947-20

4330.1 REV-5

---

7-12REVIEW BEFORE FORECLOSURE DECISION (24 CFR 203.606). Mortgagees must
assure that servicing files fully document that all servicing
requirements have been followed and steps have been taken to save a
mortgage prior to making a decision to foreclose. All actions taken
with respect to collection, forbearance, or other actions alternative
to foreclosure must be fully documented.

     A.Management Review. The servicing mortgagee must have a system in
place for management review of forbearance, assignment program
procedures, deed-in-lieu, and foreclosure recommendations.
Mortgagees must develop a form or checklist to document that they
have reviewed the loan to assure that appropriate management and
loss mitigation (loss management) decisions were made with
respect to the mortgage.

     1.The Servicer's Foreclosure Committee must decide to
foreclose. Mortgagees must develop a form or checklist to
document that they have reviewed the loan for foreclosure.
The decision to foreclose must be signed by a supervisor
higher than the person submitting the mortgage for
foreclosure.

     NOTE:If at "any time" (before or after the Foreclosure
Committee Review) there is a possibility that a
loan can be salvaged and an assignment or
foreclosure avoided, then HUD expects mortgagees
to continue to service the loan and to work with
the mortgagors.

     2.This review and decision must take place before HUD Letters
Number 2 or 3 of the Assignment Program are sent (see
Paragraph 8-7C).

     3.The servicing mortgagee must obtain the mortgage holder's
approval of its decision to foreclose. This approval must
be in hand prior to sending HUD Letters Number 2 or 3.
[Must be obtained (actually received) by the servicer in
sufficient time to be sent in with the Assignment Processing
package to the local HUD Field Office.] (See Paragraph
8-7A1b.)

---

7-219/94

4330.1 REV-5

NOTE:  A written blanket approval is acceptable to HUD.

        4.The management review must also include a review of the
staff's assignment program decisions to assure that HUD's
assignment procedures have been followed and that the
mortgagee recommendations to HUD are appropriate.
Mortgagees must develop a form or checklist to document that
they have reviewed the loan to assure that the proper
Assignment procedures were followed.  This form or
checksheet must be signed by an authorized official to be
sent with the Assignment Processing Package to the local HUD
Field Office.  (See Paragraph 8-7A1b Page 8-13.)

        NOTE:The mortgagee may use either one or two checklists.
However, if the mortgagee chooses to use one checklist,
the checklist must clearly indicate that it serves two
purposes.  The first part of the checklist reviews the
servicing of the account prior to the approval of
foreclosure, and the second part reviews the
mortgagee's decision concerning whether or not to
recommend assignment of the case to HUD, and the
reasons.  Separate supervisory signatures and dates
must also be indicated.

        B.Notification Of Other Parties To The Mortgage.  HUD requires that
all co-mortgagors be advised of a default in an attempt to avoid
foreclosure.  Although state law prevails with respect to
notifying co-signers, HUD considers it prudent servicing that a
notification of default be sent to co-signers so they may have
the opportunity to salvage the mortgage.

        C.Omitted Actions.  If the mortgagee discovers from its Management
Review that actions have been omitted, the supervisor must refer
the case back to its servicing personnel for additional
servicing.  Steps must be taken to assure elimination of future
deviations from accepted operating procedures.

        D.Timing.  There are both minimum and maximum time periods
governing the beginning of foreclosure.  A failure to begin
foreclosure within the maximum permissible time will result in
curtailment of debenture interest in any subsequent claim for
mortgage insurance benefits.  To begin foreclosure before waiting
the minimum times required may result in the imposition of
administrative sanctions by the Mortgagee Review Board.

9/947-22

4330.1 REV-5

        1.Maximum Times To Begin Foreclosure (24 CFR 203.355).

Foreclosure must begin (or a deed-in-lieu of foreclosure must be accepted) within the following time frames:

*
     a. within nine months from the date of default
         (24 CFR 203.355); or
*

     b.the mortgagee is prevented by law from beginning foreclosure earlier within 60 days after it becomes legally able to do so (24 CFR 203.355(c)).

     NOTE:See Chapter 9 for Time Limits and additional foreclosure requirements.

     2.Minimum Time To Begin Foreclosure (24 CFR 203.606). With the exception of the three items listed below, foreclosure may not begin unless at least three full monthly installments under the mortgage are due but unpaid. (See Chapter 8-7 for procedures with respect to the Assignment Program.) If the mortgagor is making no payments whatsoever, foreclosure may begin on the day after the due date of the third unpaid installment. If the mortgagor is making partial payments, all such payments must be applied, and foreclosure may begin only on the day after three full monthly installments are due but unpaid. The three exceptions to this rule are as follows:

     a.when the mortgagee determines that the property has been abandoned or has been vacant for more than 60 days;

     b.when, after having been advised of the options available for relief, the mortgagor has clearly stated in writing that he/she has no intention of making the delinquent payments; and

     c.when the mortgaged property is not the mortgagor's principal residence and the mortgagor owns two or more properties occupied by tenants who are paying rent, but the rental income from the property under review is not being applied to the mortgage on that property.

---

7-239/94

 4330.1 REV-5

---

7-13OFFERS OF REINSTATEMENT. Foreclosure may not be started if the mortgagor has tendered, in a lump sum, sufficient funds to reinstate the account, with the exception of accrued late charges, even if the mortgagee chooses to refuse to accept the mortgagor's offer.

7-14WHEN REINSTATEMENT MUST BE PERMITTED AFTER FORECLOSURE BEGINS (24 CFR 203.608). The mortgagee shall permit reinstatement of a mortgage at

any time (even after foreclosure begins) if the mortgagor tenders in a lump sum the following:

    A. all amounts required to bring the account current, including foreclosure costs and reasonable attorney's fees and expenses properly associated with the foreclosure action; and

    B. the full amount to cover any sums advanced by the mortgagee on behalf of the mortgagor for any purpose (such as the payment of taxes).

7-15 WHEN REINSTATEMENT DOES NOT HAVE TO BE PERMITTED ONCE FORECLOSURE HAS BEGUN (24 CFR 203.608). The mortgagee may refuse reinstatement if:

    A. the mortgagee has accepted reinstatement after having begun foreclosure within two years immediately before the beginning of the current action;

    B. the reinstatement will preclude foreclosure in the event of a subsequent default; or

    C. the reinstatement will adversely affect the priority of the mortgage lien.

7-16  INSPECTION AND PRESERVATION OF PROPERTIES (24 CFR 203.377). Properties securing mortgages that are delinquent or in default impose added servicing responsibilities. Failure to meet those responsibilities can result in significant reductions in amounts included in the settlement of claims for mortgage insurance benefits. For detailed requirements and actions outstanding with respect to claims see Chapter 9 and outstanding Claims Instructions.

*

7-17  DELINQUENCY AND FORECLOSURE RATIOS. In analyzing your collection department's effectiveness, it is suggested that Management continuously review the Delinquency,

---

9/94 7-24

4330.1 REV-5

---

Foreclosure, deed-in-lieu and Cure Rates of the servicing portfolio. The data should be reviewed relative to geography, demographics, comparisons relative to other lending institutions, etc. to determine policies and procedures that comply with HUD's servicing requirements.

*

---