July 30, 2009                                                    **MORTGAGEE LETTER 2009-23**

TO:          ALL APPROVED MORTGAGEES

SUBJECT:     Making Home Affordable Program:
             FHA's Home Affordable Modification Loss Mitigation Option

On May 20, 2009, the President signed the "Helping Families Save Their Homes Act of 2009." This new law provides the Federal Housing Administration (FHA) with additional loss mitigation authority to assist FHA mortgagors under the Making Home Affordable Program (MHA). The MHA Program is designed to help homeowners retain their homes and to prevent the destructive impact of foreclosures on families and communities.

One key component of MHA provides homeowners the opportunity to reduce their mortgage payments by the use of a loan modification through the Home Affordable Modification Program. When initially introduced to the public, MHA excluded FHA insured mortgages, stating that FHA would develop its own standalone program. This Mortgagee Letter announces a new FHA Loss Mitigation option, the FHA-Home Affordable Modification Program (FHA-HAMP). FHA-HAMP will provide homeowners in default a greater opportunity to reduce their mortgage payments to a sustainable level. This Mortgagee Letter is effective August 15, 2009.

**Basic Program Guidelines**

The new FHA-HAMP authority will allow the use of a partial claim up to 30 percent of the unpaid principal balance as of the date of default combined with a loan modification. The objective of FHA-HAMP is to assist FHA mortgagors who are in default to modify their mortgage to an affordable payment. According to Mortgagee Letter 2000-05 and subsequent guidance, disposition options (pre-foreclosure sales and deeds-in lieu of foreclosure) are available immediately upon default, if the cause of the default is incurable, i.e. the borrower has no realistic opportunity to replace the lost income or reduce expenses sufficiently to meet the mortgage obligation.

To confirm if the mortgagor is capable of making the new FHA-HAMP payment, the mortgagor must successfully complete a trial payment plan. The trial payment plan shall be for a three month period and the mortgagor must make each scheduled payment on time. The mortgagor's monthly payment required during the trial payment plan must be the amount of the future modified mortgage payment. The Mortgagee must service the mortgage during the trial period in the same manner as it would service a mortgage in forbearance. If the mortgagor does not successfully complete the trial payment plan by making the three payments on time, the mortgagor is no longer eligible for FHA-HAMP. Prior to proceeding to foreclosure, the Mortgagee must re-examine and re-evaluate the borrower's financial condition and confirm that none of FHA's other Loss Mitigation options could assist the mortgagor.

The attachment to this Mortgage Letter supplements program guidelines for FHA-HAMP, including a requirement that the servicer obtain an executed Hardship Affidavit (available at https://www.hmpadmin.com/portal/docs/hamp_borrower/hamphardshipaffidavit.pdf) from every mortgagor and co-mortgagor seeking an FHA-HAMP. FHA-HAMP is a permanent addition to



HUD's Loss Mitigation Program as of the date of this Mortgagee Letter.

## Debt to Income Ratios

To be eligible under FHA-HAMP, the front end debt to income ratio must be as close as possible, but not less than, 31 percent. This ratio is defined as the total monthly mortgage payment (PITI) for the modified mortgage divided by the mortgagor's gross monthly income (the "Front End Ratio"). The back end debt to income ratio must not exceed 55 percent and is defined as the total monthly mortgage payment plus all recurring monthly debt divided by the mortgagor's gross monthly income (the "Back End Ratio"). Please refer to the sections in the Attachment regarding Underwriting – Front End and Back End Debt to Income Ratios.

## Calculation of Maximum Partial Claim Amount under FHA-HAMP

The maximum partial claim amount under FHA-HAMP consists of the sum of (i) arrearages, (ii) legal fees and foreclosure costs related to a canceled foreclosure action and (iii) principal reduction. Arrearages that may be included in the partial claim shall not exceed 12 months of PITI. The maximum partial claim amount under FHA-HAMP is 30 percent of the outstanding principal balance as of the date of default. The principal deferment on the modified mortgage is determined by multiplying the outstanding principal balance by 30 percent and then reducing that amount by arrearages advanced to cure the default for up to 12 months PITI, and any foreclosure costs incurred to that point subject to the requirements provided in Mortgagee Letter 2008-21. The principal deferment amount for a specific case shall be limited to such an amount that will bring the mortgagor(s) total monthly mortgage payment to 31 percent of gross monthly income.

### Example

Mortgagor had a reduction of income and is delinquent 3 full mortgage payments. The unpaid principal balance on the mortgage on the date of default is $150,000 and the monthly payment is $1,220 (consisting of P&I of $920 and escrows, including MIP, of $300). The financial analysis reveals that the mortgagor's gross monthly income is $3,500 and the total monthly other recurring debt payments are $800.

In order to fulfill the 31% Front End Ratio requirement, the mortgagor(s) total monthly mortgage payment would have to be reduced to $1,085 ($3,500 x 31%). Therefore, P&I would have to be reduced to $785 ($1,085 total monthly mortgage payment less $300 escrow and MIP). Assuming that the loan modification will have an interest rate of 6% and a P&I of $785, the new mortgage amount would have to be $130,931, resulting in a principal reduction of $19,069 ($150,000 unpaid principal balance less $130,931). In this example, the mortgagor's Back End ratio is 53.9% ($1,885/$3,500), which satisfies the 55% Back End Ratio limitation.

In this example, the maximum principal deferment is $41,340 (30% of $150,000, less the $3,660 delinquency, or $45,000 - $3,660). However, based on their gross income, mortgagor is eligible only for a principal deferment of $19,069 plus $3,660 arrearages (which would include any foreclosure costs incurred to that point, in accord with Mortgagee Letter 2008-21) for the total Partial Claim of $22,729.

## Requirements to Use FHA-HAMP

FHA-HAMP can be utilized only if the mortgagor(s) does not qualify for current loss

mitigation home retention options (priority order FHA Special Forbearance, Loan Modification and Partial Claim) under existing guidelines (ML 2008-21, 2003-19, 2002-17, 2000-05). To qualify for the FHA-HAMP program, Mortgagees must evaluate the defaulted mortgage for loss mitigation actions using the aforementioned priority order. According to Mortgagee Letter 2000-05 and subsequent guidance, disposition options (pre-foreclosure sales and deeds-in lieu of foreclosure) are available immediately upon default, if the cause of the default is incurable, i.e. the borrower has no realistic opportunity to replace the lost income or reduce expenses sufficiently to meet the mortgage obligation.

If the mortgagor does not successfully execute the loan modification, the mortgagor is no longer eligible for FHA-HAMP. In such cases, per 24 CFR 203.355, the Mortgagee must re-evaluate the mortgagor's eligibility for the other appropriate loss mitigation actions prior to commencing or continuing a foreclosure.

**Mortgagee Incentives**

Mortgagees that utilize FHA-HAMP are eligible to receive incentive payments. Mortgagees utilizing this initiative will be allowed to first file for a partial claim (to bring the loan current and defer principal where appropriate), followed by a loan modification claim (claim type 32). Under FHA-HAMP, the Mortgagee may receive an incentive fee of up to $1,250. This total includes $500 for the partial claim and $750 for the loan modification. Mortgagees may also claim up to $250 for reimbursement for a title search and/or recording fees.

**Partial Claim Filing and Document Delivery**

Mortgagees must file a claim for insurance benefits for the partial claim within the 60-day timeframe stated in ML 2003-19 to receive incentive fees for the FHA-HAMP loss mitigation action. Any previous outstanding partial claim(s) must be subordinated and the mortgage company must provide HUD's Secretary-Held servicing contractor (see 'Remittance' below) with a subordination agreement to request subordination.

**Monitoring**

FHA will monitor Mortgagees for compliance with the terms of this Mortgagee Letter and will take administrative actions, including sanctions and penalties, against all parties for non-compliance.

**Remittance**

Please note that all provisions described in the aforementioned existing guidelines, such as Repayment Terms, Option Failure and Disclosures apply also, except as specifically changed under FHA-HAMP.

Mortgagees must forward all required documentation, including subordination requests, and advise all parties to send any payments for the Partial Claims to HUD's Secretary-Held Assets Servicing Contractor which is currently located at:


C&L Service Corp. / Morris-Griffin Corp.
2488 East 81st Street, Suite 700
Tulsa, Oklahoma 74137

| | | | |
|---|---|---|---|
| Toll Free Phone: | (866) 377-8667 | Toll Free Fax: | (866) 249-0626 |
| Local: | (918) 551-5300 | Local Fax: | (918) 551-5399 |

Current information about the Secretary-Held Assets Servicing Contractor is located at:
http://www.hud.gov/offices/hsg/sfh/nsc/fmaddr.cfm

**Information Collection Requirement**

The information collection requirements contained in this document have been approved by
the Office of Management and Budget (OMB) under the Paperwork Reduction Act of 1995 (44
U.S.C. 3501-3520) and assigned OMB control numbers 2502-0060, 2502-0523, 2502-0429, and
1505-0216. In accordance with the Paperwork Reduction Act, HUD may not conduct or sponsor,
and a person is not required to respond to, a collection of information unless the collection displays
a currently valid OMB Control Number.

Any questions regarding this Mortgagee Letter may be directed to HUD's National
Servicing Center (NSC) at 888-297-8685 or hsg-lossmit@hud.gov. Persons with hearing or speech
impairments may reach this number via TDD/TTY by calling 1-877-TDD-2HUD (1-877-833-
2483).

Sincerely,

David H. Stevens
Assistant Secretary for Housing –
Federal Housing Commissioner

Attachment – Guidelines for FHA-HAMP



| Guidance | FHA-Home Affordable Modification Program |
|---|---|
| **Eligibility – Mortgagee** | The Servicer of the modified FHA-HAMP mortgage must be FHA-Approved. |
| **Eligibility – Mortgagors** | The current mortgagor(s) on the existing FHA-insured single family mortgage must be identical to the mortgagor(s) on the HAMP mortgage, except as provided below.<br><br>All changes in ownership due to death or divorce of the current owners must be supported by legal documentation.<br><br>The existing FHA-insured mortgage is in default, but is not more than 12 full mortgage payments past due. A default is defined as 1 payment past due more than 30 days. For default calculation purposes, all months are determined to have 30 days. For example, a mortgage due for the July payment is in default on August 1st.<br><br>The mortgagor(s) must be an owner occupant, have sufficient resources to make the payment on the HAMP mortgage and continue to occupy the home.<br><br>A new mortgagor may be added to the HAMP mortgage, provided at least one existing mortgagor(s) is retained.<br><br>The mortgagor must not have intentionally defaulted on their existing mortgage. (Note: Intentionally defaulted means the mortgagor had available funds that could pay their mortgage and other debts without hardship, but failed to pay). |
| **Eligibility – Existing Mortgage** | Must be a FHA-insured single family mortgage (1-4 units).<br><br>Mortgages previously modified under HAMP are ineligible.<br><br>There is no net present value (NPV) test for eligibility. |
| **Eligibility – Maximum Mortgage Amounts** | Not applicable. |
| **Eligibility – Modified Mortgage** | The existing FHA-insured mortgage must be re-amortized to a 30-year fixed rate mortgage, and must be modified in compliance with all FHA Mortgage Modification requirements, except those specifically modified under the FHA-HAMP program. |
| **Property Eligibility** | The property securing the FHA-insured property must be the mortgagor's primary and only residence; and only single family (1 to 4 unit) properties are eligible. |
| **Interest Rate – Modified New Mortgage** | The interest rate must be fixed and meet the guidelines in Mortgagee Letter 2008-21. |
| **Current Loan to Value** | None. |

| Requirements Mortgage | |
|---|---|
| **Loan Purpose** | FHA-HAMP mortgages are required to have a lower monthly principal and interest payment than the unmodified FHA-insured mortgage and are made without an appraisal.<br><br>All existing subordinate financing must be subordinated to maintain the first lien priority of the HAMP mortgage. For more information, please see ML 2003-19. |
| **Credit History** | No minimum credit score required. (Credit report is only used to verify recurring debts.) |
| **Seasoning Requirements on the Existing Mortgage** | The first payment due date must be at least 12 months in the past, and at least 4 full mortgage payments must have been paid. |
| **Property Valuation** | No appraisal required. |
| **Trial Modification** | The Mortgagee must place the mortgagor(s) under a trial modification payment plan for the modified mortgage payment prior to completing the FHA-HAMP. The mortgagor(s) must have made the first three consecutive trial monthly mortgage payments on time before the FHA-HAMP can be completed, and a partial claim filed. |
| **Documentation Requirements** | The Mortgagee must obtain the following additional documentation:<br><br>To be considered for any of the loss mitigation options, the mortgagor must provide detailed financial information to the Mortgagee.<br><br>Every borrower and co-borrower must sign a hardship affidavit attesting to and describing the hardship. The document to be used is available for download at: https://www.hmpadmin.com/portal/docs/hamp_borrower/hamphardshipaffidavit.pdf<br><br>The Department has no objection to situations where a cooperative mortgagor provides complete financial information either written or during a telephone interview. Regardless of how the mortgagor's financial information was secured, the Mortgagee must independently verify the financial information by obtaining a credit report (the credit report is not used for credit qualification but Mortgagees are to use for determining indebtedness), and any other forms of verification the Mortgagee deems appropriate. |

| | |
|---|---|
| **Underwriting Requirements - General** | No Credit Alert Interactive Voice Response System (CAIVRS) review is required, but HUD's Limited Denial of Participation (LDP) and General Services Administration (GSA) exclusion lists are still required checks for all mortgagors.<br><br>FHA-HAMP processing and underwriting instructions are described below.<br><br>• Where the mortgage is in default and no more than 12 full payments delinquent the Mortgagee combines a partial claim for up to 12 months of arrearages, foreclosure costs, and principal reduction with a modification.<br><br>• Except for the new maximum partial claim amount calculation, the partial claim must meet the requirements of Mortgagee Letters 2000-05, 2003-19 and 2008-21.<br><br>The mortgagor may not be charged any additional costs for receiving this loss mitigation workout option. On a cancelled foreclosure, Mortgagees are reminded that all such costs must reflect work actually completed to the date of the foreclosure cancellation and the attorney fees may not be in excess of the fees that HUD has identified as customary and reasonable for claim purposes.<br><br>The financial analysis, Hardship Affidavit, and documentation supporting the decision to provide partial claim relief must be maintained in the mortgagee's claim review file. |
| **Loss Mitigation – Priority Order** | FHA-HAMP can only be utilized if the mortgagor(s) does not qualify for current loss mitigation home retention options (FHA Special Forbearance, Loan Modification and Partial Claim) under existing guidelines (ML 2008-21, 2003-19, 2002-17, 2000-05). To qualify for the FHA-HAMP, Mortgagees must utilize its loss mitigation actions using the aforementioned priority order. |
| **Underwriting – Monthly Gross Income** | The mortgagor's Monthly Gross Income amount before any payroll deductions includes wages and salaries, overtime pay, commissions, fees, tips, bonuses, housing allowances, other compensation for personal services, Social Security payments, including Social Security received by adults on behalf of minors or by minors intended for their own support, annuities, insurance policies, retirement funds, pensions, disability or death benefits, unemployment benefits, rental income and other income. |
| **Underwriting – Front End Debt to Income Ratio** | Front-End ratio is the ratio of PITI to Monthly Gross Income. PITI is defined as principal, interest, taxes and insurance.<br><br>The Front-End ratio must be as close as possible to, but not less than, 31%. |
| **Underwriting - Back End Debt to Income Ratio** | The Back-End ratio is the ratio of the mortgagor's total recurring monthly debts (such as Front-End PITI, payments on all installment debts, monthly payments on all junior liens, alimony, car lease payments, aggregate negative net rental income from all investment properties owned, and monthly mortgage payments for second homes) to the mortgagor's Monthly Gross Income. This ratio must not exceed 55%.<br><br>The Mortgagee must validate monthly installment, revolving debt and secondary mortgage debt by pulling a credit report for each mortgagor or a joint report for a married couple. The Mortgagee must also consider information obtained from the mortgagor orally or in writing concerning incremental monthly obligations. |

| | |
|---|---|
| **Underwriting – Subordinate Financing** | Subordinate liens are not included in the Front-End ratio, but they are included in the Back-End ratio. |
| **Underwriting – Upfront Mortgage Insurance Premium** | Not applicable. |
| **Underwriting – Annual Premium** | Remains the same. |
| **Underwriting - Calculation of Maximum Partial Claim Amount** | The maximum one-time only principal reduction on the modification is determined by multiplying the outstanding principal balance of the existing mortgage as of the date of default by 30 percent reduced by (i) arrearage amounts advanced to cure the default for up to 12 months PITI and (ii) allowable foreclosure costs. However, the actual principal reduction amount for a specific case shall be limited to such amount that will bring the mortgagor(s) PITI to an amount not to exceed 31 percent of gross monthly income. Whether or not there are previous Partial Claims for a given case number, the arrearage component of this and any previous Partial Claims cannot exceed the equivalent of 12 months PITI and allowable foreclosure costs. This 12 month PITI maximum is NOT affected by any payments that may have been made to reduce the partial claim mortgage balance. |
| **Partial Claim Guidelines** | No interest will accrue on the partial claim. The payment of the partial claim is not due until (i) the maturity of the HAMP mortgage, (ii) a sale of the property, or (iii) a pay-off or refinancing of the HAMP mortgage. |
| **In Foreclosure Process** | To ensure that a mortgagor currently in the process of foreclosure has the opportunity to apply, Mortgagees shall not proceed with the foreclosure sale until the mortgagor has been evaluated for the program and, if eligible, an offer to participate in the FHA-HAMP has been made. In the event that the mortgagor does not participate in FHA-HAMP, the Mortgagee must consider the priority order, outlined in "Requirements to Use FHA-HAMP" section of this Mortgagee Letter, prior to proceeding to foreclosure. |
| **90 days Past Due** | Ninety day past due mortgages must have been considered for all loss mitigation programs prior to being referred to foreclosure. |
| **Escrows** | Mortgagees are required to escrow for mortgagors' real estate taxes and mortgage-related insurance payments. |
| **Unpaid Late Fees Waived** | The Mortgagee will waive all late fees. |
| **Credit Report** | The Mortgagee will cover the cost of the credit report. |
| **Mortgagee Incentives** | Under FHA-HAMP, the Mortgagee may receive an incentive fee of up to $1,250. This total includes $500 for the partial claim and $750 for the loan modification. To receive the incentive payments, the Partial Claim and Loan Modification must meet the requirements of Mortgagee Letters 2008-21, 2003-19, 2002-17, 2000-05, and comply with instructions and |

|  | requirements in this Mortgagee Letter and Attachment. Mortgagees may also claim up to $250 for reimbursement of title search and/or recording fees. |
|---|---|
| **Mortgagor Cash Contribution** | The Mortgagee may not require the mortgagor to contribute cash. |
| **Disclosure** | When promoting or describing FHA mortgage options Mortgagees should provide mortgagors with information designed to help them understand the mortgage terms that are being offered. Mortgagees also must provide mortgagors with clear and understandable written information about the terms, costs, and risks of the mortgage in a timely manner to enable mortgagors to make informed decisions.<br><br>FHA requires Mortgagees to comply with any disclosure or notice requirements applicable under FHA regulations and state or federal law. |
| **Fair Lending** | Mortgagees under this program must comply with the Equal Credit Opportunity Act and the Fair Housing Act, which prohibit discrimination on a prohibited basis in connection with mortgage transactions. FHA mortgage programs are subject to the fair lending laws, and Mortgagees should ensure that they do not treat a mortgagor less favorably than other mortgagors on grounds such as race, religion, national origin, sex, marital or familial status (i.e., families with children under age 18 and pregnant women), age, disability, or receipt of public assistance income in connection with any loan modification. These laws also prohibit redlining. |
| **Consumer Inquiries and Complaints** | Mortgagees should have procedures and systems in place to be able to respond to inquiries and complaints relating to loan modifications. Mortgagees should ensure that such inquiries and complaints are provided fair consideration, and timely and appropriate responses and resolution. |
| **Case/Mortgage Documentation** | Mortgagees will be required to maintain records of key data points for verification/compliance reviews, in accordance with Handbook 4000.2 Rev-3, Paragraph 5-8and Handbook 4155.2, Paragraph 8.B.7.c. Servicing files must be retained for a minimum of the life of the mortgage plus three years, per Handbook 4330.1 Rev-5, paragraph 1-3 E. These documents may include, but are not limited to, mortgagor eligibility, Hardship Affidavit, and qualification and underwriting.<br><br>Mortgagors will be required to provide declarations under penalty of perjury attesting to the truth of the information that they have provided to the Mortgagee to allow the Mortgagee to determine the mortgagor's eligibility for entry into the FHA–HAMP program. |
| **Anti-Fraud Measures** | Measures to prevent and detect fraud, such as documentation and audit requirements are described in Handbook 4060.1, Rev-2.<br><br>Participating Mortgagees and Mortgagees/investors are not required to modify the mortgage if there is reasonable evidence indicating the mortgagor submitted false or misleading information or otherwise engaged in fraud in connection with the modification. Mortgagees should employ reasonable policies and/or procedures to identify fraud in the modification process. |

| Data Collection | Mortgagees will continue to be required to collect and transmit mortgagor and property data in order to ensure compliance with the program as well as to measure its effectiveness. Data elements may include data needed to perform underwriting analysis and mortgage terms, and loan level data in order to establish loans for processing during the trial period, to record modification details, and monthly loan activity reports. |



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC 20410-8000

ASSISTANT SECRETARY FOR HOUSING-
FEDERAL HOUSING COMMISSIONER

### Questions and Answers:  ML 09-23 / FHA-Home Affordable Modification Program, and subsequent guidance

The following questions were received via hsg-lossmit@hud.gov and will be updated periodically.

## A.    Basic Program Guidelines

1) FHA-HAMP does not solve for homeowners who are current on their mortgage, but claim imminent default, correct?  FHA-HAMP requires that a homeowner be past due at least 1 installment, due to a valid reason for default (and not intentional default).

> *No. Mortgagee Letter 10-04, dated 01/22/2010, states in part, "...In order for an FHA-insured loan that is at risk of imminent default to qualify for modification under FHA-HAMP, the borrower must first successfully participate in a four-month trial modification period...."*

2) Can you advise the effective date, and where to find online training?

> *Per ML 2009-23, it is August 15, 2009. Please register and take online training at https://eclass.hud-nsctraining.com .*

3) GNMA recently updated their buy-out procedures, but is still only allowing buy-out at the 91st day of delinquency.  If a homeowner is not 91 days delinquent or greater after the trial period, how can we complete the modification/partial claim piece if the loan is in a GNMA pool?

> *GNMA All Participants Memo 09-14 states in part, "...Issuers will be permitted to repurchase FHA loans from Ginnie Mae pools if a borrower has been approved to participate in FHA's trial modification program and the loan has been in a state of continuous default for more than 90 days, as of the date of repurchase." If the mortgage is in default, and three trial modification payments - which are less than the full unmodified mortgage payment - are made successfully, then the mortgage will have been in a state of continuous default for more than 90 days.  If the mortgage is not delinquent, the trial period must be 4 months, as stated in ML 10-04. Therefore, any loan approved to participate in the HAMP program where any portion of any single payment is delinquent for 90 days meets the Ginnie Mae requirement and can be repurchased on the 91 day to execute the modification.*

4) In general, when an issue is not addressed, can we follow HMP rules?

## Questions and Answers:  ML 09-23 / FHA-Home Affordable Modification Program, and subsequent guidance

The following questions were received via hsg-lossmit@hud.gov and will be posted as submitted.

*No.  FHA-HAMP applies only to FHA insured mortgages.  Consequently, when an issue is not specifically addressed, ML 09-23 refers servicers to other mortgagee letters for FHA modification and FHA Partial Claim guidance.*

5)  Are servicers required to specifically reference the FHA-HAMP in the FHA homeownership counseling letter or can the letter just reference modifications generally as being an alternative to foreclosure?

*FHA-HAMP does not make changes to the Housing Counseling Notification requirement as set out in Mortgagee Letter 02-12.  The lender may choose to send out additional solicitations to the borrowers advising them of FHA-HAMP.*

### B.    Debt to Income Ratios

*No questions at this time.  Refer to sections Z and AA*

### C.    Calculation of Maximum Partial Claim Amount Under FHA-HAMP

1)  From what I'm reading it looks like we are just combining the Partial Claim and Loan Modification options in order to do a Principal Balance reduction. When we are preparing the figures for the customer are we basically doing loan modification figures to calculate the total due (including interest, overdrawn escrow, escrow replenishment and attorney fees) and then do we just do a Partial Claim for the total debt + principal balance forbearance in order to reduce the amount owed on the first lien by the customer?

*See the example in the ML 09-23 on page 2. The borrower is limited to 12 months PITI for delinquent payments. If a buy down is needed to meet the 31% front end DTI ratio requirement, the amount up to 30% of the outstanding principal balance as of the date of default is deferred using a Partial Claim (inclusive of delinquent payments and legal costs), then a loan modification of the remaining principal balance amortized over 30 years .and an interest rate reduction, as applicable, is executed.*

### D.    Requirements to Use FHA-HAMP

1)  What if the homeowner fails the trial payment, but does not complete the modification/PC piece of FHA-HAMP - can they be re-evaluated at a later date?

*If the borrower fails the trial modification, they should be considered for standard loss mitigation options, excluding FHA-HAMP.*

### Questions and Answers: ML 09-23 / FHA-Home Affordable Modification Program, and subsequent guidance

The following questions were received via hsg-lossmit@hud.gov and will be posted as submitted.

2)  What if the homeowner fails to send documents back, and never enters the trial period - can they be re-evaluated for FHA-HAMP at a later date?

   *Yes.*

3)  Do we have to have to launch a separate HAMP Spoliation Campaign As of right now we solicit all borrowers for LM Assistance at the 50, 95, 105, 125 date of delinquency. Our collections department tries to call the customer up until the date of foreclosure sale.

   *No, FHA is not prescribing each lender's HAMP solicitation campaign.*

4)  If a customer has ignored all LM Spoliations and Collection Attempts does this imply that the customer is not interested in LM Assistance and we can start Foreclosure? If a customer has applied for LM Assistance we should not be starting foreclosure until we have reviewed the financial package in order to determine if the customer would qualify for assistance, correct?

   *Loss Mitigation is based on the borrower cooperating and providing the requested information. If a lender is in the Loss Mitigation review process they should be aware of the first legal deadline (FLD).If the lender needs additional time to complete the review, they should submit an extension of time request through EVARS (FHA's online extensions and variances submission system) prior to the FLD. Under ML 2000-05, General Program Requirements, Section L, if the lender approves a borrower for a loss mitigation option, documents it in their servicing notes and reports it to Single Family Default Monitoring System (SFDMS) but is unable to compete it prior to the expiration of the FLD date, the lender is entitled to a 90 day extension of the FLD. Enter the expiration date of this automatic extension to Form HUD-27011, Part A, block 19, when filing a disposition claim (e.g., conveyance, preforeclosure, etc.).*

5)  Based on the questions asked in #4, should the same logic be applied to customers who are currently facing a Foreclosure Sale?

   *It depends on whether or not the borrower has provided information to the lender to review for Loss Mitigation. Lenders are required to review for Loss Mitigation through the whole default cycle including foreclosure. Likewise, they must take into consideration FLD and request an extension - if needed -- through EVARS, especially in start/stop states.*

6)  Should we foreclose on a borrower who has not responded to LM Solicitations and avoided collection attempts?

## Questions and Answers:  ML 09-23 / FHA-Home Affordable Modification Program, and subsequent guidance

The following questions were received via hsg-lossmit@hud.gov and will be posted as submitted.

> *The borrower must cooperate and provide the requested financial information needed to perform a review for Loss Mitigation.*

7) Do we need to mail a separate HAMP Solicitation to the customers facing a foreclosure sale?

> *The lender must determine if the borrower is eligible for a FHA HAMP prior to foreclosure.  It is up to the lender to determine how it best meets this requirement.*

8) Will HUD allow private investors (such as FNMA RMIC, Truman Capital, CalHFA, etc) to "trump" HUD rules and avoid participation in FHA-HAMP?  Currently, some investors prohibit term extensions (required by FHA-HAMP), or wish to provide approval prior to loss mitigation execution.  Others, such as CalHFA do not allow modifications on their FHA loan types.

> *No.  Lenders must follow FHA loss mitigation guidelines.  FHA will monitor program participants and take administrative actions for non-compliance when required.*

9) Will HUD utilize any standard documentation for the modification/partial claim portion of FHA-HAMP?  I saw that HUD requires the use of the standard Reason for Default affidavit, but was not sure whether any standardized loss mitigation docs were to be utilized.

> *No, HUD does not require standard documentation for modifications and Partial Claims.  Lenders should continue to use the documents they use now for modifications and Partial Claims.*

10) Can you validate the 'waterfall' review under FHA-HAMP?  This would be utilized only after the homeowner was deemed not to qualify for the HUD standard loss mitigation waterfall of SFB > Modification > Partial Claim.

> *Yes, that is correct.  ML 09-23 defines the priority order for loss mitigation home retention options under Requirements to Use FHA-HAMP.*

11) Do we need to review all loans in our pre-sale inventory that have already been declined for a workout (Referred but the property has not yet been taken to sale).  Or is HUD going to establish a cutoff period to determine what, if any loans, will need to be reviewed for FHA-HAMP and what will that cutoff period be?

> *The ML goes into effect 8/15/09 and requires lenders to review everything for the FHA-HAMP prior to foreclosure sale.  Lenders can submit an*

## Questions and Answers: ML 09-23 / FHA-Home Affordable Modification Program, and subsequent guidance

The following questions were received via hsg-lossmit@hud.gov and will be posted as submitted.

> extension of time request to FHA through EVARS and request additional time to review for FHA-HAMP.

12) Does the FHA-HAMP list delinquency requirements? I saw that loans with delinquency of 91 days or greater must be run through the standard HUD waterfall (SFB, Mod, PC). Does this mean that if we can complete one of those options, we cannot review for FHA-HAMP?

> *Yes, the borrower has to be one full payment past due and placed in a 3-month trial plan, or if current, placed in a 4-month trial modification for the modified mortgage payment.*

> *Borrowers who do not qualify for standard loss mitigation options must be reviewed for FHA-HAMP.*

13) What if we can solve for the delinquency using one of the "standard" options, but this does not solve for 31% payment-to-income ratio? Do we proceed with FHA-HAMP review, or solve using a "standard" HUD option?

> *Lenders are required to use standard loss mitigation first.*

14) Are the borrowers eligible for the HAMP program at day 31? Traditional modifications are at 61 days and partial claims are at 91 days for eligibility, which makes me think that anything less than 60 days delinquent would either be looked at for a Special Forbearance or the HAMP program. Is that correct?

> *Yes, the borrower has to be one full payment past due or placed in a trial modification for the modified mortgage payment.*

15) Is this program mandatory? Are we required to solicit borrowers who may qualify?

> *Yes. The evaluation of FHA borrowers for loss mitigation is mandatory. The loss mitigation priority order, as defined on page 3 of the attachment to ML 09-23 states that FHA-HAMP can be utilized only if the mortgagor(s) does not qualify for current home retention options.*

### E.   Mortgagee Incentives

1) From my understanding the customer will have to sign a loan modification agreement and a Partial Claim Subordinate Note and Mortgage?

> *Yes.*

### Questions and Answers: ML 09-23 / FHA-Home Affordable Modification Program, and subsequent guidance

The following questions were received via hsg-lossmit@hud.gov and will be posted as submitted.

2) Do we use the traditional documents or are there new specific documents that HUD would require?

> *Lender would continue to use the same documents as they are currently using.*

3) If we are to use the traditional documents do the same rules apply for the Partial Claim and Loan Mod, from the way I am reading the guidelines it says we are to follow the current mortgagee letters, but I just wanted to clarify?

> *Yes, that is correct.*

### F.    Partial Claim Filing and Document Delivery

1) Confirm that the Partial Claim amount would be set up as a 0% 2nd lien that would be assigned to FHA. Investor/Chase would be paid claim amount at time of mod. Also confirm that the loans so modified can be re-delivered.

> *Yes, the subordinate lien is non-interest bearing and there is no lien priority. Mortgagees will file insurance benefits for this Partial Claim in the same manner as a traditional partial claim; See GNMA APM 09-14 (referenced above) for more information about re-pooling.*

2) Are there any special claims instructions?

> *In addition to the requirement that the Partial Claim be filed and paid prior to the filing of the loan modification claim (see Page 3, Mortgagee Incentives), Mortgagee Letter 09-39 includes claims instructions.*

3) Regarding the repayment of the Partial Claim - what is the responsibility of the Servicer to FHA when a payoff is requested on the first lien?   Is the Servicer responsible for notifying the Held Assets Servicing Contractor?

> *The requirements of ML 03-19, section K, are not changed by ML 09-23.*

4) Is the Servicer responsible for maintaining the amount of the non interest bearing partial claim and including it with any payoff statements?

> *No, see ML 2003-19*

### G.    Monitoring

> *No questions at this time.*

### H.    Remittance

## Questions and Answers:  ML 09-23 / FHA-Home Affordable Modification Program, and subsequent guidance

The following questions were received via hsg-lossmit@hud.gov and will be posted as submitted.

*No questions at this time.*

### I.    SFDMS Reporting

1)  Will HUD have special coding (for month-end delinquency reporting) for FHA-HAMP?  If not, should we use the existing codes for partial payments, modifications, partial claims, etc?

*Additional codes were announced October 9, 2009 via <u>Mortgagee Letter 09-39</u>.*

### J.    Eligibility – Mortgagors

1)  Under FHA - HAMP is the homeowner is disqualified if they have moved out of the residence and are leasing it out because they can't sell it?

*If the property is non- owner occupied, it is not eligible.   If the owner moves back into the property and provides documentation it is now their primary residence, the borrower would be eligible provided they met all other requirements.*

2)  Can an FHA-HAMP be offered to a borrower in active bankruptcy? A borrower previously discharged?

*Yes, lender would need to check with their legal counsel and may also need to obtain Bankruptcy Court approval.*

### K.    Eligibility – Existing Mortgage

*No questions at this time.*

### L.    Eligibility – Maximum Mortgage Amounts

*No questions at this time.*

### M.    Eligibility –Modified Mortgage

1)  The existing FHA-insured mortgage must be re-amortized to a 30-year fixed rate mortgage, and must be modified in compliance with all FHA Mortgage Modification requirements, except those specifically modified under the FHA-HAMP program.

   a. We appreciate this tool but wish that a 40 year fixed rate mortgage could be

### Questions and Answers:  ML 09-23 / FHA-Home Affordable Modification Program, and subsequent guidance

The following questions were received via hsg-lossmit@hud.gov and will be posted as submitted.

made available to provide more relief for our at-risk borrowers.

*The program was designed to align with GNMA pooling requirements. Consequently, at this time, only 30 year terms are allowed.*

b. As a state housing finance agency using mortgage revenue bond financing, we can't change the term of our loans to extend beyond the term originally stated in the bond offering.

*If state bond requirements prohibit re-amortization to 30 years, lender needs to document their servicing file with the reason borrower was not approved for FHA-HAMP.*

c. If re-amortizing the loan to 30 years extends the new maturity date by more than 10 years, can the loan still be modified under the FHA-HAMP?

*Yes, ML 09-23 requires all loans be re-amortized to 30 years.*

2) A servicer must comply with all FHA Mortgage Modification requirements – previous and new requirements for the FHA-HAMP.  In previous requirements the borrower needed to be seriously delinquent before certain treatments could be provided.  For example, a borrower must be 120 days delinquent or > before a Partial Claim can be used.  Also – incentives are not paid to the servicer if the borrower is not at least 90 days delinquent at the time of modification.  Given the current housing market and economic environment, we believe these two requirements should be removed and allow servicers to be incented to work with borrowers earlier in the delinquency and provide relief sooner.  Our analysis would prove the earlier the intervention the more often a solution can be found and the more successful the customer is at maintaining the new payment.

*Yes, the borrower has to be one full payment past due and placed in a 3 month trial plan, or current and placed in a 4-month trial modification for the modified mortgage payment.  The purpose of the evaluation for other loss mitigation options is that a lender may determine that a borrower has a temporary disruption of income, which may be overcome by standard loss mitigation retention tools.  In those situations, the lender may choose to utilize a formal forbearance or repayment plan until the borrower is eligible for formal loss mitigation tools.*

### N.  Property Eligibility

1) The FHA-insured property must be the mortgagor's primary residence.  This is fully understandable – but the statement goes on to say that it must be their ONLY residence. Are we to interpret the borrower cannot own a second home to qualify?

### Questions and Answers: ML 09-23 / FHA-Home Affordable Modification Program, and subsequent guidance

The following questions were received via hsg-lossmit@hud.gov and will be posted as submitted.

> *No. The purpose of that statement was that the borrower is eligible for loss mitigation assistance on only one owner-occupied house subject to FHA insurance.*

**O.    Interest Rate – Modified New Mortgage**

1) To determine the rate do we just use the GNMA Coupon rate for the month the Trial Period is approved and then once they complete the trial we just finalize the loan mod?

> *HUD does not set interest rates; the same rules apply the FHA-HAMP modifications as on standard Loan Modifications (see ML 08-21 and 09-35).*

**P.    Current Loan to Value Requirements Mortgage**

> *No questions at this time.*

**Q.    Loan Purpose**

1) If a customer has had a previous Partial Claim and have used the 12 month PITI allowance are they ineligible for an HAMP or is this amount just capitalized in with a loan mod and would have to be paid back during the life if the first lien modified mortgage?

> *A lifetime of 12 months PITI is the maximum allowance. If they have already used it then they would not be eligible for the FHA-HAMP.*

2) Clarify whether there is a minimum requirement for lowering of monthly payment.

> *HUD has not set a minimum reduction; however, the new mortgage payment must be reduced to be as close as possible to 31% of the gross monthly income.*

3) Guidelines state that all existing subordinate financing must be subordinated again to maintain the first lien priority of the HAMP mortgage. We would suggest that a new subordination agreement would not be needed if the capitalization/partial claim is < $15,000.

> *First-lien status must be maintained. See Mortgagee Letter 2000-05, Page 22, Section G. Lien Status – these requirements have not changed.*

**R.    Credit History**

## Questions and Answers: ML 09-23 / FHA-Home Affordable Modification Program, and subsequent guidance

The following questions were received via hsg-lossmit@hud.gov and will be posted as submitted.

*No questions at this time.*

**S.   Seasoning Requirements on the Existing Mortgage**

1)  If the mortgage under review for FHA-HAMP is an FHA Streamline refinance, does the 12 month age and 4 payment requirement apply?

> *No, however, HUD's automated claim processing system (A43C) will suspend the claim in order to determine the age of the prior FHA mortgage. We strongly recommend that the prior FHA case number be entered into the Comments section of the claim.*

2)  Does seasoning include the trial period?

> *No*

**T.   Property Valuation**

> *No questions at this time.*

**U.   Trial Modification**

1)  During the Trial Period when we are collecting the estimated mortgage payment, does the due date have to move three times on the mortgage or do the funds just have to post to suspense? If this is allowed does this rule apply to the traditional Loan Modification requests where the customer is being required to demonstrate the ability to make the new estimated payment.

> *Since the trial modification payments are to be in the amount of the modified mortgage payment (see attachment page 2), the lender would post them to a suspense account tied to the borrower and track that 3 payments (or 4 payments for current loans) were made. This does not constitute a change to a Type II SFB that is referred to in the last part of the question.*

2)  During the Trial Period do we following the Forbearance Default Guidelines that were described in ML 02-17: the customer has missed two installments and has not made contact with us, the home was abandoned, and the borrower informs us they are not going to fulfill the terms of the plan.

> *Yes, this would constitute option failure as described in ML 02-17.*

3)  To clarify, no matter what circumstances that occurred, if a borrower breaks the Trial Plan Arrangements they are not eligible for another HAMP?

21

**Questions and Answers:  ML 09-23 / FHA-Home Affordable Modification Program,
and subsequent guidance**

The following questions were received via hsg-lossmit@hud.gov and will be posted as submitted.

> *Correct.*

4)  Does the trial payment plan end at the time of the first untimely payment? Is there a grace period for these payments?

> *The trial modification payments must be made within 15 days of the installment due date.*

5)  Clarify how to determine that the trial mod payments have been made on time."

> *Each of the three (or 4, if applicable) trial modification payments must be made within 15 days of the installment due date.*

## V.   Documentation Requirements

1)  When collecting the Home Affordable Affidavit can we send this document with the Trial Plan Forbearance or do we have to send this in a separate LM Solicitation?

> *The borrower must complete and return this document with the financial information since it explains the reason for the hardship. The lender would not be able to approve a borrower without this document. Trial modification is then sent out after approval.*

2)  Will HUD require that we validate the homeowner's proof of income prior to sending FHA-HAMP documents to the homeowner?   This pertains to the issue that we solved recently, where HUD does not recognize a "pre-qualified" modification, and we changed our process to ensure that the homeowner is financially approved prior to sending documents.

> *Yes, although the lender can take information verbally as most do now, they still have the requirement to verify the information before FHA-HAMP or any loss mitigation option can be approved, and before sending the FHA-HAMP documents to the homeowner.*

## W.   Underwriting Requirements – General

1)  What is the GSA exclusion list and HUD's LDP - where are they published?

> *The GSA exclusion list provides information on parties that are excluded from receiving Federal contracts, certain subcontracts, and certain Federal financial and nonfinancial assistance and benefits – see https://www.epls.gov/ ,HUD's Limited Denial of Participation (LDP) is an action taken by HUD which excludes a party from further participation in a HUD program - see http://www.hud.gov/offices/enforce/ecldp.cfm*

### Questions and Answers: ML 09-23 / FHA-Home Affordable Modification Program, and subsequent guidance

The following questions were received via hsg-lossmit@hud.gov and will be posted as submitted.

**X.    Loss Mitigation – Priority Order**

*No questions at this time.*

**Y.    Underwriting – Monthly Gross Income**

1)  Are customers who unemployed but are collecting unemployment benefits and meet the other requirements for the HMP Eligible for this workout? If so is there a time restriction to the time when this workout is approved to the day when the benefits would run out? For example, the customer is unemployed but will receive unemployment benefits for the next 12 months and can provide proof of this? If this is allowed are we allowed to approve traditional loan modifications and partial claims using the same logic?

> *See ML 09-23's Attachment for income guidelines and ML 2000-05 for the financial analysis guidelines.*

2)  Does PITI include HOA fees as in HMP program?

> *Yes.*

3)  How long must unemployment benefits last to be considered income?

> *Unemployment income must be documented with reasonable assurance of its continuance for at least 12 months.*

4)  What is acceptable documentation to support alimony, child support or unemployment income?

> *If the borrower elects to use **alimony or child support income** to qualify, acceptable documentation includes photocopies of the divorce decree, separation agreement or other type of legal written agreement or court decree that provides for the payment of alimony or child support and states the amount of the award and the period of time over which it will be received.  **Servicers must determine that the income will continue for at least 12 months**.  The borrower must present proof of full, regular and timely payment, such as deposit slips, bank statements or signed federal income tax returns.*

> *If the borrower has other **income** such as **unemployment**, acceptable documentation includes letters, exhibits, or benefits statement from the provider that states the amount, frequency and duration of the benefit.   The servicer must obtain copies of signed federal income tax returns, IRS W-2*

### Questions and Answers: ML 09-23 / FHA-Home Affordable Modification Program, and subsequent guidance

The following questions were received via hsg-lossmit@hud.gov and will be posted as submitted.

*forms, or copies of the two most recent bank statements.*

**Z.    Underwriting – Front End Debt to Income Ratio**

    1)  Does the target 31% DTI pertain to the payment calculation at the time of the qualification for the trial plan OR the final calculation of the HAMP plan following the accrual of additional past due amounts?

> *The lender should try to get as close to the 31% DTI as possible at both the trial modification period and the final HAMP, understanding that there will be some variance due to rounding and since the trial payment is an estimate.*

**AA.    Underwriting - Back End Debt to Income Ratio**

    1)  When calculating the back end ratio, what does HUD consider incremental monthly obligations? Does this mean all monthly obligations including Food and Housing Costs?

> *No, food housing, and utilities are excluded. Obligations to be included in the ratio are the credit report trade line items, and other items as stated on page 3 of the attachment to the HAMP ML.*

    2)  For debt-to-income requirements, does FHA-HAMP require that we utilize only what is on the credit report to calculate the homeowner's back-end ratio? Or will HUD require that we use the standard financial calculation and review all homeowner monthly expenses? The FNMA/FHLMC MHA program utilizes only the debts that are listed on the credit report.

> *Trade lines on the credit report can be used for verification, however, the servicer must also consider information obtained from the mortgagor orally or in writing concerning incremental monthly obligations (see the attachment to ML 09-23).*

> *Per HUD Handbook 4155.1, Paragraph 2-12, The borrower's liabilities include all installment loans, revolving charge accounts, real estate loans, alimony, child support, and all other continuing obligations. In computing the debt-to-income ratios, the lender must include the monthly housing expense and all other additional recurring charges extending ten months or more, including payments on installment accounts, child support or separate maintenance payments, revolving accounts and alimony, etc. Debts lasting less than ten months must be counted if the amount of the debt affects the borrower's ability to make the mortgage payment during the months immediately after loan closing; this is especially true if the borrower will have limited or no cash assets after loan closing.*

12-12020-mg    Doc 9025-5    Filed 08/17/15    Entered 08/17/15 17:09:27    Exhibit 44
Pg 24 of 28
12-12020-mg    Doc 8828-1    Filed 07/01/15    Entered 07/01/15 18:20:06    ~~Exhibit 1~~
Pg 25 of 29

(24)

### Questions and Answers:  ML 09-23 / FHA-Home Affordable Modification Program, and subsequent guidance

The following questions were received via hsg-lossmit@hud.gov and will be posted as submitted.

*The following additional information deals with revolving accounts and alimony payments:*

- *Revolving Accounts. If the account shown on the credit report has an outstanding balance, monthly payments for qualifying purposes must be calculated at the greater of 5 percent of the balance or $10 (unless the account shows a specific minimum monthly payment).*

- *Alimony. Because of the tax consequences of alimony payments, the lender may choose to treat the monthly alimony obligation as a reduction from the borrower's gross income in calculating qualifying ratios, rather than as a monthly obligation.*

3) The backend ratio cannot exceed 55%. Our interpretation is the FHA-HAMP will not be given if this condition exists. We would agree a backend ratio of 55% or greater does add risk to the sustainability of the modification but would also suggest we work with the borrower to get support in restructuring all of their debt through a HUD-approved counselor. The borrower could be given the opportunity to complete their trial modification payments while seeking counseling and restructuring of their other debt. This allows the borrower time and supplemental cash assistance during the three months.

   *As specified in ML 09-23, the Back End Ratio must not exceed 55%. If the Back End Ratio exceeds 55%, the FHA-HAMP cannot be offered to the mortgagor. The Department encourages mortgagees to work with borrowers to seek counseling to get support in restructuring their entire debt. However, when the mortgagee evaluates the borrower's eligibility for the FHA-HAMP, the Back End Ratio must not exceed 55%.*

4) If a borrower eliminates debt in Chapter 7 to meet the 55 ratio requirement, would they be eligible for servicing (post discharge) alternatives including HAMP whether or not they reaffirmed the mortgage?

   *Yes, please refer to Mortgagee Letter 08-32 and consult with your legal counsel.*

### BB.  Underwriting – Subordinate Financing

   *No questions at this time.*

### CC.  Underwriting – Upfront Mortgage Insurance Premium

1) Does the first mortgage principal reduction provided the borrower under HAMP trigger the 78% threshold under which MIP could be terminated?

## Questions and Answers: ML 09-23 / FHA-Home Affordable Modification Program, and subsequent guidance

The following questions were received via hsg-lossmit@hud.gov and will be posted as submitted.

> *No, because the borrower has simply bifurcated their total mortgage debt into two instruments. See also Section J of ML 2000-05, which states in part that monthly MIP payments must be calculated on the original insurance amount.*

**DD. Underwriting – Annual Premium**

> *No questions at this time.*

**EE. Underwriting - Calculation of Maximum Partial Claim Amount**

1) Are we allowed to include all escrow shortages and amounts to fund escrow in the HAMP?

> *Yes.*

2) If so, should we run an updated escrow analysis prior to preparing the final modifications?

> *Yes.*

3) If we do this, what happens if the customer does not meet the required ratios to complete the loan modification. (This would occur in a case where the customer had Forced Placed Taxes or Insurance during the trial period)

> *The borrower has to meet the 31/55 ratios. If not, , the borrower would have to be evaluated for standard loss mitigation options.*

4) We fully understand the Partial Claim may not exceed the equivalent of 12 months PITI and allowable foreclosure costs, but need further clarification if we would be allowed to capitalize any remaining arrearage if this limit was hit and the borrower needed to capitalize the remaining to become current.

> *The FHA-HAMP Partial Claim is the sum of three amounts, not to exceed 30% of the outstanding principal balance.*
>
> *1. Arrearages not to exceed 12 months PITI; this includes existing partial claims*
> >   *a. A partial claim(including under FHA-HAMP) would be limited to 4 months PITI today if a previous partial claim had already been granted for 8 months PITI.*
> *2. Allowable Legal Fees and Foreclosure Costs related to the cancelled, incomplete foreclosure action.*
> *3. Remaining Amounts to Principal Reduction (up to an amount*

### Questions and Answers: ML 09-23 / FHA-Home Affordable Modification Program, and subsequent guidance

The following questions were received via hsg-lossmit@hud.gov and will be posted as submitted.

> *necessary to achieve the 31% front-end debt to income ratio),*

> *Just as for the regular partial claim, no additional arrearage exceeding the maximum of 12 months PITI can be included in that portion of the FHA-HAMP Partial Claim total.*

#### FF.  Partial Claim Guidelines

> *No questions at this time.*

#### GG.  90 days Past Due or In Foreclosure

1) *For loans in the foreclosure process - PRIOR to first legal being filed - will there be an automatic 90-day extension to review these loans for FHA-HAMP?  Does this include loans in the foreclosure process prior to 8/15/09?*

> *Lenders would be granted an automatic 90 day extension under 24 CFR 203.355 for owner occupied properties to review for HAMP.  As appropriate, enter the expiration date of this automatic extension to Form HUD-27011, Part A, block 19, when filing a disposition claim (e.g., conveyance, preforeclosure, etc.).*

2) For loans currently in our foreclosure process - AFTER the first legal has been filed - will HUD give servicers an extension for reasonable diligence to postpone sales and review files again for FHA-HAMP?

> *Yes, when lenders exceed the reasonable diligence time frames they are required to document their servicing files and explain on their claim the reason for exceeding time frames.*

3) Can the loan be in foreclosure at the time of the loss mitigation review or does Foreclosure have to be put on hold?

> *It is the same process as standard loss mitigation- complete the loss mitigation review and, if approved, cancel the foreclosure.*

4) If the loan is put on hold for review and ultimately foreclosure resumes, what percentage of the original foreclosure fees and costs are claimable?

> *It is the standard percentage of up to 75% of foreclosure costs.*

#### HH.  Escrows

> *No questions at this time.*

### Questions and Answers:  ML 09-23 / FHA-Home Affordable Modification Program, and subsequent guidance

The following questions were received via hsg-lossmit@hud.gov and will be posted as submitted.

**II.    Unpaid Late Fees Waived**

*No questions at this time.*

**JJ.    Credit Report**

1)  For current borrowers who have eminent default, are we suppose to block credit and report them current during the trial plan?

    *No, report them as usual.*

2)  When the homeowner enters the 3 month Trial period should credit reporting be blocked?

    *No, report them based on compliance with the contractual due date.*

**KK.    Mortgagee Incentives**

*No questions at this time.*

**LL.    Mortgagor Cash Contribution**

1)  The mortgage is 14 months delinquent.  Could we capitalize the extra 2 months into the modification so that we comply with the 12 month PITI delinquency cap?

    *No, the extra 2 months delinquency can neither be capitalized into the modification, nor can it be a different component in the Partial Claim mortgage.  The borrower would need to pay down the delinquency on the first mortgage to be within the 12 month cap –a mortgage payment is not a cash contribution.*

2)  If the borrower does not contribute for costs associated with the Loan Modification, are we allowed to include those in the Partial Claim?

    *Per ML 08-21, HUD allows for certain costs such as attorney fees and costs to be included in a PC, late charges are not allowed.*

**MM. Disclosure**

*No questions at this time.*

**NN.    Fair Lending**

*No questions at this time.*

## Questions and Answers: ML 09-23 / FHA-Home Affordable Modification Program, and subsequent guidance

The following questions were received via hsg-lossmit@hud.gov and will be posted as submitted.

### OO.  Consumer Inquiries and Complaints

*No questions at this time.*

### PP.  Case/Mortgage Documentation

*No questions at this time.*

### QQ.  Anti-Fraud Measures

*No questions at this time.*

### RR.  Data Collection

*No questions at this time.*

| Revision History | |
|---|---|
| 08/12/2009 | Initial Publication |
| 08/14/2009 | New sections J and K added, all subsequent sections re-lettered. New questions/answers: F2, J1, S1, S2, Y4, Z1, CC1, JJ2, LL1, Revisions to answers: AA1 and AA2 |
| 10/28/2009 | New questions/answers: A5, F3, F4, J2, J3, W1, LL2 Modified questions/answers: A2, D15, EE4(1)(a) Revisions to answers: A1, F2, I1, O1, V2 Reorganization: Z1 moved to AA4, M1 became M1a, b &c |
| 01/22/2010 | Revision to answer: A1 |
| 01/28/2010 | Revision to answers: A3, D12, M2, U1, U5 Modified question/answer: U5 |