**Hearing Date: August 20, 2015 at 10:00 A.M. (ET)**

MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett

*Counsel for the ResCap Borrower Claims Trust*
*and the ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------
|  |  ) |  |
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
------------------------------------------------------------

**RESCAP BORROWER CLAIMS TRUST'S OMNIBUS REPLY IN SUPPORT OF ITS EIGHTY-EIGHTH OMNIBUS OBJECTION TO CLAIMS ((I) NO LIABILITY BORROWER CLAIMS AND (II) REDUCE AND ALLOW BORROWER CLAIMS) AS TO CLAIM NOS. 960 AND 3503 AND THE RESCAP LIQUIDATING TRUST'S OBJECTION TO MICHAEL BOYD'S MOTION FOR RELIEF FROM THE <u>AUTOMATIC STAY</u>**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ...........................................................................................................................2

    *Background Facts*...................................................................................................................4

    A.    Boyd Claim...........................................................................................................4

    B.    Ghods Claim .........................................................................................................7

REPLY ..........................................................................................................................................9

    A.    Boyd Claim.........................................................................................................10

        1.    The Boyd Claim should be disallowed and expunged because it is barred by the doctrine of res judicata. ......................................................10

        2.    The Lift Stay Motion Should Be Denied...................................................12

    B.    Ghods Claim .......................................................................................................15

CONCLUSION ............................................................................................................................16

ny-1199720

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Allegheny Int'l, Inc. v. Snyder (In re Allegheny Int'l, Inc.),
   954 F.2d 167 (3d Cir. 1992) ................................................................................. 9

Bell v. Bd. of Supervisors, Cnty. of Monterey,
   990 F.2d 1255 (9th Cir. 1993) ............................................................................. 10

Capital Commc'ns Fed. Credit Union v. Boodrow (In re Boodrow),
   126 F.3d 43 (2d Cir. 1997) ............................................................................ 13, 14

Cornelison v. Kornbluth,
   542 P.2d 981 (Cal. 1975) .............................................................................. 15, 16

Feinberg v. Bank of N.Y. (In re Feinberg),
   442 B.R. 215 (Bankr. S.D.N.Y. 2010) .................................................................. 9

Gomes v. Countrywide Home Loans, Inc.,
   121 Cal. Rptr. 3d 819 (Cal. Ct. App. 2011) ....................................................... 4, 5

In re Adelphia Commc'ns Corp.,
   Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660 (Bankr. S.D.N.Y. Feb. 20, 2007) ........ 10

In re Asia Global Crossing, Ltd.,
   324 B.R. 503 (Bankr. S.D.N.Y. 2005) ................................................................ 11

In re Leibowitz,
   147 B.R. 341 (Bankr. S.D.N.Y. 1992) ................................................................ 14

In re Oneida Ltd.,
   400 B.R. 384 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co. v.
   Oneida Ltd., No. 09-cv-2229 (DC, 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22,
   2010) .............................................................................................................. 9, 10

In re Residential Capital, LLC,
   501 B.R. 624 (Bankr. S.D.N.Y. 2013) ................................................................ 12

In re Residential Capital, LLC,
   507 B.R. 477 (Bankr. S.D.N.Y. 2014) .................................................................. 9

In re Rockefeller Ctr. Props.,
   272 B.R. 524 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v. Rockefeller Ctr.
   Props. (In re Rockefeller Ctr. Props.), 266 B.R. 52 (S.D.N.Y. 2001), aff'd, 46 Fed.
   Appx. 40 (2d Cir. 2002) ...................................................................................... 10

Lawrence v. Motors Liquidation Co. (In re Motors Liquidation Co.),
   Case. No. 10 Civ. 36 (RJH), 2010 WL 4966018 (S.D.N.Y. Nov. 8, 2010) ............ 14

ii

Mazzeo v. Lenhart (In re Mazzeo),
    167 F.3d 139 (2d Cir. 1999) ................................................................................................. 13

Midatlantic Nat'l Bank v. N.J. Dep't of Envt'l. Prot.,
    474 U.S. 494 (1986) ............................................................................................................. 12

Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.),
    419 F.3d 115 (2d Cir. 2005) ................................................................................................ 11

Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.),
    980 F.2d 110 (2d Cir. 1992) ................................................................................................ 12

Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.),
    907 F.2d 1280 (2d Cir. 1990) .......................................................................................... 13, 14

STATUTES

11 U.S.C. § 502(a) ......................................................................................................................... 9

11 U.S.C. § 502(b) ......................................................................................................................... 9

11 U.S.C. § 362(d)(1) ................................................................................................................... 13

The ResCap Borrower Claims Trust (the "<u>Borrower Trust</u>"), established pursuant

to the terms of the Plan[1] filed in the above-captioned Chapter 11 Cases, as successor in interest to

the above-captioned Debtors with respect to Borrower Claims, by and through their undersigned

counsel, hereby submits this reply (the "<u>Reply</u>") and the Supplemental Declaration of Kathy

Priore, Associate Counsel to the ResCap Liquidating Trust (the "<u>Supplemental Declaration</u>"),

annexed hereto as <u>Exhibit 1</u> to the responses filed by Michael E. Boyd ("<u>Mr. Boyd</u>") [Docket

Nos. 8974 and 8977] (together, the "<u>Boyd Response</u>") and Mohammed K. Ghods and Heidi M.

Ghods (the "<u>Ghods</u>" and with Mr. Boyd, the "<u>Respondents</u>") [Docket No. 9000] (the "<u>Ghods</u>

<u>Response</u>" and with the Boyd Response, the "<u>Responses</u>") to the *ResCap Borrower Claims*

*Trust's Eighty-Eighth Omnibus Objection to Claims (I) No Liability Borrower Claims and (II)*

*Reduce and Allow Borrower Claims)* [Docket No. 8859] (the "<u>Objection</u>").   Additionally, the

ResCap Liquidating Trust (the "<u>Liquidating Trust</u>" and with the Borrower Trust, the "<u>Trusts</u>")

submits this response to the *Letter Re: Requesting Relief From Automatic Stay Filed By Michael*

*Boyd* [Docket No. 8988] (the "<u>Lift Stay Motion</u>").[2] The Trusts respectfully state as follows:

## **PRELIMINARY STATEMENT**

1.     The Borrower Trust examined the Responses and the statements submitted in

support thereof.   For purposes of this Reply and the Objection, the Borrower Trust takes these

statements at face value.   If the Court is not prepared to rule on the Objection with respect to the

Respondents, then the Borrower Trust reserves the right to take discovery from the Respondents.

2.     As described herein and in the Supplemental Declaration, the Borrower Trust

thoroughly examined the Debtors' books and records that were prepared and kept in the course

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Objection.
[2] The Borrower Trust also received a response from Kechia L. Island, [Docket No. 9001]. The objection solely as to
Ms. Island's claim has been withdrawn.

of their regularly conducted business activities (the "Books and Records") in an effort to validate

the accuracy of the allegations made in the Responses and the claims at issue, and for the reasons

described herein, the Books and Records do not show any liability due and owing to any of the

Respondents.

3.    Moreover, as the Objection shifted the burden of proof back to the Respondents,

the Respondents must demonstrate a valid claim against the Debtors' estates by a preponderance

of the evidence.    For the reasons set forth in the Objection, this Reply, and the Supplemental

Declaration, the Respondents have failed to provide any explanation as to why their respective

claims are valid and should be allowed against the Debtors' estates.    For example, Mr. Boyd has

failed to put forward a reason why his claim should not be barred by the doctrine of res judicata.

The claim is predicated on a lawsuit that has been dismissed pursuant to a final judgment of an

appellate court and Mr. Boyd's petition for a writ of certiorari to the U.S Supreme Court has

been denied.    In addition, Mr. Boyd's request to lift the automatic stay should be denied because

a new lawsuit against the Debtors' estates twenty months after the Plan became effective would

be futile given the broad discharge provided for in the Plan.    The Ghods have failed to assert a

valid claim against the Debtors' estates because they have not demonstrated why they should be

excused from fulfilling their contractual obligations to the Debtors.    Therefore, the Respondents

have failed to meet their burden of proof, and the relief sought in the Objection should be granted

with respect to each of the Respondents.

## **BACKGROUND**

4.    In connection with the claims reconciliation process, the Borrower Trust

identified certain claims filed by Borrowers that it believed did not constitute valid liabilities of

the Debtors (together, the "No Liability Borrower Claims").    See Supplemental Declaration ¶ 5.

2

5.      The Debtors sent Request Letters to certain Borrowers, including all of the Respondents, requesting additional documentation in support of the No Liability Borrower Claims.[3]  See Supplemental Declaration ¶ 6.  The Request Letters state that the claimant must respond within 30 days with an explanation that states the legal and factual reasons why the claimant believes he or she is owed money or is entitled to other relief from the Debtors, and the claimant must provide copies of any and all documentation that the claimant believes supports the basis for his or her claim.  The Request Letters further state that if the claimant does not provide the requested explanation and supporting documentation within 30 days, the Debtors may file a formal objection to the claimant's claim, seeking to have the claim disallowed and permanently expunged.  See Supplemental Declaration ¶ 6.

6.      The Debtors received responses to the Request Letters from the Respondents[4] (the "Diligence Responses"), copies of which are attached to the Supplemental Declaration as Exhibit A. However, the Diligence Responses fail to allege bases for claims against the Debtors' estates.  Further, as stated in the Objection, the Books and Records do not show any liability due and owing to the Respondents.  See Supplemental Declaration ¶ 7.

7.      On August 29, 2012, this Court entered an order approving the Debtors' motion to establish procedures for filing proofs of claim in the Chapter 11 Cases [Docket No. 1309] (the "Bar Date Order").    The  Bar  Date  Order  established,  among  other  things, November 9, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline to file proofs of claim by virtually all creditors against the Debtors (the "General Bar Date").  Bar Date Order ¶¶ 2, 3.

---

[3] A Request Letter was sent to Mr. Boyd on July 21, 2013 and to the Ghods on December 17, 2014.  See Supplemental Declaration n. 3.

[4] The Debtors received a Diligence Response from Mr. Boyd on July 23, 2013 and from the Ghods on January 13, 2015.  See Supplemental Declaration n. 4.

ny-1199720

On November 7, 2012, the Court entered an order extending the General Bar Date to November 16, 2012 at 5:00 p.m. (Prevailing Eastern Time) [Docket No. 2093].

8.      On December 11, 2013, the Court entered the *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* approving the terms of the Chapter 11 plan, as amended (the "<u>Plan</u>"), filed in these Chapter 11 Cases [Docket No. 6065]. On December 17, 2013, the effective date of the Plan occurred (the "<u>Effective Date</u>"), and, among other things, the Trusts were established [Docket No. 6137].

### *Background Facts*

#### A.    **Boyd Claim**

9.      On or around October 4, 2012, Mr. Boyd filed a proof of claim against Debtor GMAC Mortgage, LLC ("<u>GMACM</u>"), designated as Claim No. 960 (the "<u>Boyd Claim</u>"), asserting a secured claim for $186,000.00.  See <u>Exhibit B</u> to the Supplemental Declaration.

10.     According to the Debtors' books and records, non-Debtor Plaza Home Mortgage, Inc. ("<u>Plaza</u>") originated a loan in the amount of $647,000.00 to Mr. Boyd on January 16, 2007 (the "<u>Soquel Loan</u>"), secured by a mortgage on property located at 5439 Soquel Drive, Soquel, CA 95073 (the "<u>Soquel Property</u>").  See Soquel Note, attached to the Supplemental Declaration as <u>Exhibit C</u>, and Soquel Deed of Trust, attached to the Supplemental Declaration as <u>Exhibit D</u>. Plaza originated a second loan to Mr. Boyd on December 22, 2006 (the "<u>Lakebird Loan</u>," and collectively with the Soquel Loan, the "<u>Loans</u>"), secured by a mortgage on property located at 1090-1092 Lakebird Drive, Sunnyvale, CA 94089 (the "<u>Lakebird Property</u>").  See Lakebird Note, attached to the Supplemental Declaration as <u>Exhibit E</u>, and Lakebird Deed of Trust, attached to the Supplemental Declaration as <u>Exhibit F</u>.  No Debtor ever owned either of the Loans.  See <u>Exhibit A</u> to the proposed order to the Objection ("<u>Exhibit A to the Objection</u>").

4

11.     GMACM serviced the Soquel Loan from April 10, 2007 until servicing was transferred to Ocwen Loan Servicing, LLC ("Ocwen") on February 16, 2013.  GMACM serviced the Lakebird Loan from March 13, 2007 until servicing was transferred to Ocwen on February 16, 2013.  See Exhibit A to the Objection.

12.     At the time servicing of the Soquel Loan was transferred to Ocwen, it was due for the November 1, 2011 payment.  See Supplemental Declaration ¶ 11.   On February 9, 2011, the Soquel Loan was referred to foreclosure.   See id.   On March 1, 2011, ETS Services, LLC ("ETS"), acting as beneficiary for GMACM, recorded a notice of default.  See Soquel Notice of Default, attached to the Supplemental Declaration as Exhibit G.

13.     The Lakebird Loan was due for the April 1, 2011 payment when servicing was transferred to Ocwen. See Supplemental Declaration ¶ 12.   On August 9, 2011, the Lakebird Loan was referred to foreclosure.   See id.   On September 14, 2011, ETS recorded a notice of default.  See Lakebird Notice of Default, attached to the Supplemental Declaration as Exhibit H.

14.     On October 11, 2011, Mr. Boyd filed a complaint in the United States District Court for the Northern District of California (the "District Court"), Case No. 5:11-CV-05018, for "unconscionability to contract and adhesion to real property" (the "2011 Complaint").   See District Court Docket, attached hereto as Exhibit 2.[5]   The District Court dismissed the 2011 Complaint without prejudice on December 6, 2011.   See id.   Mr. Boyd filed an amended complaint on May 22, 2012 (the "Amended Complaint").   See Exhibit 3 to attached hereto. The claims in the Amended Complaint were to invalidate/contest the liens on the Soquel and Lakebird Properties with regard to the mortgage loans.[6]

---

[5] The District Court had diversity jurisdiction over the case.
[6] The Amended Complaint alleged that Mr. Boyd had unencumbered title to the Properties because the deeds of trust were reconveyed to him.  See Amended Complaint at p. 16. The Debtors argued that the reconveyances that Mr. Boyd referenced in the Amended Complaint paid off older loans that were not related to the Soquel or Lakebird

ny-1199720

15.     The case was dismissed with prejudice on August 22, 2012 by an Order Granting Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (the "District Court Order"). A copy of the District Court Order is attached hereto as Exhibit 4.   The United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit") affirmed the district court's order dismissing the case on August 22, 2014 (the "Appellate Court Order").   A copy of the Appellate Court Order is attached hereto as Exhibit 5.[7]

16.     On September 4, 2014, Mr. Boyd petitioned for a panel rehearing (the "Panel Petition").   See Court of Appeals Docket, attached to hereto as Exhibit 6.   On December 23, 2014, the Ninth Circuit entered an order denying Mr. Boyd's Panel Petition and further indicated it would not entertain any further filings in the case. See Panel Order, attached hereto as Exhibit 7.[8]

17.     On January 30, 2015, Mr. Boyd filed a letter with the Court [Docket No. 8065] stating that his claims were against the U.S. Treasury Department and attached a claim that was filed against the Treasury Department.

18.     On March 20, 2015, Mr. Boyd filed a petition for a writ of certiorari with the United States Supreme Court (the "Supreme Court").   See Petition for Writ of Certiorari,

---

Loans.  Therefore, neither reconveyance released Mr. Boyd's obligations under the Soquel or Lakebird Loans.  Mr. Boyd also argued that MERS did not have authority to enforce and assign the Soquel deed of trust, and therefore could not assign the interest in the Soquel deed of trust to the Debtors.  See Amended Complaint, at 19. The Debtors argued that California law clearly states that MERS has the authority to both enforce and assign deeds of trust.  See Gomes v. Countrywide Home Loans, Inc., 121 Cal. Rptr. 3d 819, 826-827 (Cal. Ct. App. 2011) (finding that MERS has authority enforce and assign deeds of trust where it is named as a beneficiary in a deed of trust).  Finally, Mr. Boyd alleges that because the property was part of a joint living trust, he did not have authority to execute the loan agreements.  See Amended Complaint at 19.  In its motion to dismiss, the Debtors argued that Mr. Boyd was the trustee of the joint living trust at the time the loan documents were executed. See Amended Complaint at 10.
[7] All activity in the case that occurred after February 16, 2013 was managed by Ocwen.
[8]  The Debtors previously objected to the Boyd Claim as part of the *ResCap Borrower Claims Trust's Eighty-Second Omnibus Objection to Claims (No Liability Borrower Claims)* [Docket No. 8042] (the "Eighty-Second Omnibus Objection").  The Court overruled the Eight-Second Omnibus Objection without prejudice as it related to the Boyd Claim [Docket No. 8420], finding that res judicata could not be applied until the Supreme Court ruled on Mr. Boyd's Petition for Writ of Certiorari.

attached hereto as <u>Exhibit 8</u>.  On May 26, 2015, the Supreme Court denied Mr. Boyd's petition

for a writ of certiorari.  <u>See</u> Supreme Court Denial, attached to the Objection as <u>Exhibit 8</u>.

19.     On July 29, 2015, in direct contravention of the automatic stay, Mr. Boyd filed a

complaint (the "<u>2015 Complaint</u>') against GMACM and other non-Debtor entities.  <u>See</u> 2015

Complaint, attached to the Boyd Response as Attachment 1.  Mr. Boyd dismissed the 2015

Complaint as against GMACM on August 4, 2015.  <u>See</u> Notice of Voluntary Dismissal, attached

to the Lift Stay Motion.

20.     Also on August 4, 2015, Mr. Boyd filed the Lift Stay Motion requesting that the

automatic stay be lifted to permit him to pursue the 2015 Complaint.

**B.     Ghods Claim**

21.     On or around November 7, 2012, the Ghods filed a proof of claim against Debtor

Residential Capital, LLC, designated as Claim No. 3503 (the "<u>Ghods Claim</u>"), asserting a

general unsecured claim in in an amount of $60,000.  <u>See</u> <u>Exhibit I</u> to the Supplemental

Declaration.  The Ghods Claim was reclassified as a general unsecured claim against GMACM

pursuant to the Court's *Supplemental Order Granting Debtors' Thirty-Eighth Omnibus*

*Objection to Claims (Wrong Debtor Borrower Claims)* [Docket No. 5898], entered November

20, 2013.

22.     According to the Debtors' books and records, non-Debtor DiTech Funding

Corporation ("<u>DiTech</u>") originated a loan to the Ghods on September 9, 1998 (the "<u>Ghods</u>

<u>Loan</u>"), secured by a deed of trust (the "<u>Ghods Deed of Trust</u>") on 12752 Keith Place, Tustin

Area, California 92780 (the "<u>Ghods Property</u>"), which was recorded on September 25, 1998.

<u>See</u> Ghods Note, attached to the Supplemental Declaration as <u>Exhibit J</u>, and Ghods Deed of

Trust, attached to the Supplemental Declaration as <u>Exhibit K</u>.

ny-1199720

23.     GMACM purchased the Ghods Loan from DiTech, which was memorialized by an assignment dated September 25, 1998 and recorded on February 22, 1999.  See Ghods Assignment, attached to the Supplemental Declaration as Exhibit L.  GMACM then transferred its interest to Freddie Mac.  See Exhibit A to the Objection.  GMACM serviced the loan from October 29, 1998 until servicing was transferred to Ocwen Loan Servicing, LLC ("Ocwen") on February 16, 2013.  See id.  At the time the Ghods Loan was transferred to Ocwen, the Ghods' account was current and owing for the March 1, 2013 payment.  See Ghods Servicing Notes, attached to the Supplemental Declaration as Exhibit M.

24.     According to the Ghods Response, the Ghods sold their interest in the Ghods Property some time prior to October 2004 (the "Alleged Sale").  See Ghods Response at 3.  The Ghods did not inform the Debtors of the Alleged Sale until on or around May 2010.  See Supplemental Declaration ¶ 18.

25.     On October 25, 2004, lender placed insurance was added to the Ghods' account because the Ghods did not provide evidence that the Ghods Property was insured, as required by the Deed of Trust.  See Ghods Servicing Notes.  The insurance was added to the Ghods' account annually as the Ghods never provided proof of insurance.  See id.

26.     Notwithstanding the purported conveyance of their interest in the Ghods Property, the Ghods continued to make their monthly payment, which included the amount added to their escrow account for the insurance coverage.  See id.

27.     On May 21, 2010, the Ghods inquired about the escrow account on the Ghods Loan, asserting that they were not responsible for the insurance because they no longer owned the Ghods Property.  See Ghods Servicing Notes.  GMACM advised the Ghods that they had violated the terms of the Deed of Trust by selling the Ghods Property without going through a

8

formal assumption process. See id. The Ghods stated that they would provide the Debtors with a

copy of the deed evidencing the Alleged Sale, but nothing was ever provided. See id.

28.    On or around May 27, 2010, the Debtors sent a package to the Ghods to complete

assumption of the Ghods Loan but nothing was ever returned. See Ghods Servicing Notes.

29.    On June 18, 2010, the Debtors sent the Ghods a letter informing them that as the

mortgagors reflected on the account, they are responsible for providing proof of homeowners

insurance until the loan is paid in full. See June 18 Letter, attached to the Ghods Response; see

also Supplemental Declaration ¶ 20.

## **REPLY**

30.    A filed proof of claim is "deemed allowed, unless a party in interest … objects."

11 U.S.C. § 502(a). Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a

claim may not be allowed to the extent that "such claim is unenforceable against the debtor and

property of the debtor, under any agreement or applicable law…." 11 U.S.C. § 502(b)(1). As

noted previously by the Court, claims objections have a shifting burden of proof. Pursuant to

Federal Rule of Bankruptcy Procedure 3001(f), a claimant establishes a prima facie case against

a debtor upon filing a proof of claim alleging facts sufficient to support the claim. The objecting

party is thereafter required to produce evidence equal in force to that provided by the claimant to

rebut the presumption of the claimant's prima facie case. In re Residential Capital, LLC, 507

B.R. 477, 490 (Bankr. S.D.N.Y. 2014). See also Allegheny Int'l, Inc. v. Snyder (In re Allegheny

Int'l, Inc.), 954 F.2d 167, 173-74 (3d Cir. 1992).

31.    Once an objection refutes an essential allegation of the claim, the burden of

persuasion is on the holder of a proof of claim to establish a valid claim against a debtor by a

preponderance of the evidence. Residential Capital, 507 B.R at 490; Feinberg v. Bank of N.Y.

(In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010); In re Oneida Ltd., 400 B.R. 384,

9

389 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co. v. Oneida Ltd., No. 09-cv-2229 (DC), 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010); In re Adelphia Commc'ns Corp., Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); In re Rockefeller Ctr. Props., 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v. Rockefeller Ctr. Props. (In re Rockefeller Ctr. Props.), 266 B.R. 52 (S.D.N.Y. 2001), aff'd, 46 Fed. Appx. 40 (2d Cir. 2002).

### A.    Boyd Claim

#### 1.    The Boyd Claim should be disallowed and expunged because it is barred by the doctrine of res judicata.

32.    In the Boyd Response, Mr. Boyd asserts that even though the Ninth Circuit affirmed the dismissal of his lawsuit against the Debtors (which is the basis for his claim) and the Supreme Court denied his petition for a writ of certiorari, res judicata does not prevent him from asserting his claim because he still has a pending lawsuit against the Treasury Department, as well as the potential lawsuit as set forth in the 2015 Complaint.

33.    The doctrine of res judicata provides that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.  See Bell v. Bd. of Supervisors, Cnty. of Monterey, 990 F.2d 1255 (9th Cir. 1993) (stating the rule in California).

34.    As an initial matter, the 2015 Complaint, that was filed in direction contravention of the automatic stay and therefore void, has in any event been dismissed and therefore Mr. Boyd currently has no litigation against the Debtors.  Furthermore, even if the Court were to permit the automatic stay to be lifted, which it should not, as discussed below,  the filing of the 2015 Complaint does not affect the finality of the District Court Decision, as it is not an appeal of the Ninth Circuit's decision.  In addition, Mr. Boyd has not put forward any evidence to suggest that

10

the entry of a final order in the District Court is stayed pending the outcome of his lawsuit against the Treasury Department.  As a result, Mr. Boyd has failed to demonstrate why the dismissal of his lawsuit against the Debtors, which forms the basis of the Boyd Claim, does not bar the Boyd Claim under the doctrine of res judicata.

35.    If it is Mr. Boyd's contention that the 2015 Complaint establishes a new basis for the Boyd Claim, this argument fails for numerous reasons.  As noted above, the basis of the Boyd Claim is not the 2015 Complaint, but rather the Amended Complaint, and thus the attempt to add the 2015 Complaint as a new basis for the Boyd Claim is an improper and untimely amendment of a claim.  When a bar date has passed, and a creditor seeks to file an amended proof of claim, "[t]he decision to allow the amendment of the claim is committed to the discretion of the bankruptcy judge." In re Asia Global Crossing, Ltd., 324 B.R. 503, 507 (Bankr. S.D.N.Y. 2005).  In the Second Circuit, courts may only allow a late amended proof of claim when there was an "assertion of a similar claim or demand evidencing an intention to hold the estate liable." Midland Cogeneration Venture Ltd. P'ship v. Enron Corp., (In re Enron Corp.), 419 F.3d 115, 133 (2d Cir. 2005) (quoting Integrated Res., Inc. v. Ameritrust Co. N.A. (In re Integrated Res., Inc.), 157 B.R. 66, 70 (S.D.N.Y. 1993). See also this Court's *Memorandum Opinion and Order Sustaining the ResCap Borrower Claims Trust's Objection to Claim No. 5282 of Michelle Lawson* [Docket No. 7328].

36.    The basis for the Boyd Claim is the Amended Complaint, which has been dismissed with prejudice.  Thus, in order to avoid the res judicata effect of the District Court Order, the 2015 Complaint would need to assert issues that were not and could not have been raised in the Amended Complaint.  This necessarily means that the 2015 Complaint, if not barred

by the doctrine of res judicata, was not similar to the Amended Complaint and therefore is an improper amendment to the Boyd Claim.

37.    Furthermore, the Plan states "Any and all proofs of claim filed after the applicable Bar Date shall be deemed disallowed, discharged, released, and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and holders of such Claims may not receive any distributions on account of such Claims, unless such late proof of claim is deemed timely filed by a final order of the Bankruptcy Court.  Plan Art. VIII.B.  Thus, since the 2015 Complaint was asserted after the Bar Date, any alleged liability of the Debtors in connection with the 2015 Complaint has been discharged upon the Effective Date of the Plan.  As a result, Mr. Boyd has not demonstrated that the 2015 Complaint should prevent the Boyd Claim from being disallowed and expunged on the basis that it is barred by the doctrine of res judicata.

**2.    The Lift Stay Motion Should Be Denied.**

38.    While Mr. Boyd dismissed the 2015 Complaint as to GMACM, he filed the Lift Stay Motion requesting that the Court lift the automatic stay imposed in these Chapter 11 cases to permit him to pursue the 2015 Complaint.

39.    The automatic stay affords "one of the fundamental debtor protections provided by the bankruptcy laws."  Midatlantic Nat'l Bank v. N.J. Dep't of Envt'l. Prot., 474 U.S. 494, 503 (1986) (citation and internal quotation marks omitted).  The automatic stay also furthers the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court."  Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.), 980 F.2d 110, 117 (2d Cir. 1992); In re Residential Capital, LLC, 501 B.R. 624, 644 (Bankr. S.D.N.Y. 2013).

40.     Section 362(d)(1) of the Bankruptcy Code provides that a court may grant relief from the automatic stay for "cause."  See 11 U.S.C. § 362(d)(1).  In the context of stayed prepetition litigation, the Second Circuit has outlined the following 12-factor test (each a "Sonnax Factor") to determine whether good cause exists to lift the stay to allow the litigation to proceed:

> (1) whether relief would result in a partial or complete resolution of the issues;
> (2) lack of any connection with or interference with the bankruptcy case;
> (3) whether the other proceeding involves the debtor as a fiduciary;
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
> (5) whether the debtor's insurer has assumed full responsibility for defending [the action];
> (6) whether the action primarily involves third parties;
> (7) whether litigation in another forum would prejudice the interests of other creditors;
> (8) whether the judgment claim arising from the other action is subject to equitable subordination;
> (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
> (10) the interests of judicial economy and the expeditious and economical resolution of litigation;
> (11) whether the parties are ready for trial in the other proceeding; and
> (12) the impact of the stay on the parties and the balance of harms.

Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1286 (2d Cir. 1990); see also Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 143 (2d Cir. 1999).  In a given case, however, not all of the factors will be relevant, and the court may disregard irrelevant factors.  See Mazzeo, 167 F.3d at 143.

41.     The moving party bears the initial burden to demonstrate, using the relevant Sonnax factors, that good cause exists for lifting the stay.[9]  The movant's burden is especially heavy if it is an unsecured creditor.  "The general rule is that claims that are not viewed as

---

[9] See Sonnax, 907 F.2d at 1285; Capital Commc'ns Fed. Credit Union v. Boodrow (In re Boodrow), 126 F.3d 43, 48 (2d Cir. 1997) ("We have emphasized that a bankruptcy court should deny relief from the stay if the movant fails to make an initial showing of cause."  (citation and quotation omitted)).

13

secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief."[10]

42.     Not only has Mr. Boyd failed to identify the Sonnax factors in the Lift Stay Motion, he also fails to provide **any** justification for granting relief from the automatic stay.  He simply asks for the Court's "permission to pursue my four causes of action I filed against GMAC since my claims against them are ongoing and prepetition." See Lift Stay Motion at 1.  However, as discussed herein, Mr. Boyd provides no basis upon which the Court may conclude that "cause" exists for the relief requested and such relief would be futile.

43.     The Liquidating Trust respectfully requests that the Court deny the Motion based solely on Mr. Boyd's failure to provide any legal or factual bases upon which relief from the stay may be granted, as demonstrated above.  See In re Boodrow, 126 F.3d at 48 ("We have emphasized that a bankruptcy court should deny relief from the stay if the movant fails to make an initial showing of cause." (quotation omitted)).

44.     Additionally, cause cannot exist for the lifting of the automatic stay to permit Mr. Boyd to pursue the 2015 Complaint because it would be an act of futility.  See *Memorandum Opinion and Order Denying Motion to Lift the Automatic Stay and Enforcing Release of Claims Against Ally Financial Inc.* [Docket No. 6806] at 14 (holding that because the asserted claims are barred and discharged by the Plan, the claimant cannot establish cause to lift the stab cause litigating those claims in any forum would be futile).  As discussed in ¶ 35 *supra*, the 2015 Complaint is an improper amendment to the Boyd Claim and therefore any alleged liability of the Debtors' estates was discharged through the Plan.  Thus the Court should not lift the

---

[10] In re Leibowitz, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992); see also Lawrence v. Motors Liquidation Co. (In re Motors Liquidation Co.), Case. No. 10 Civ. 36 (RJH), 2010 WL 4966018, at *4 (S.D.N.Y. Nov. 8, 2010).

ny-1199720

automatic stay because any litigation of the 2015 Complaint would be a pointless and costly exercise.

### B. Ghods Claim

45.    The Ghods Claim is premised on the assertion that the Ghods should not have been charged for lender placed insurance on the Ghods Property.  This is premised on two theories: (1) the Debtors did not hold a secured interest in the Ghods Property, and (2) the Ghods were not responsible for maintaining insurance because the Ghods Property was sold to a third party.  See Ghods Response at 2-3.

46.    The Ghods assert that the Debtors did not hold a secured interest in the Property because "no mortgage was ever recorded."  See Ghods Response at 2-3.  However, the Deed of Trust was recorded on September 25, 1998 with the Clerk of Orange County California.  See Deed of Trust.  Further, the Assignment, which transferred the Deed of Trust to GMACM, was recorded on February 22, 1999.  See Assignment.  Thus, because the Loan was properly secured by a recorded Deed of Trust, the Debtors, as servicer, had the right to enforce the terms of the Deed of Trust.

47.    If the Ghods contend that the lien on the Ghods Property secured by the Deed of Trust was somehow extinguished when the Ghods sold the Ghods Property without informing GMACM, then the Ghods must identify the applicable legal principle to support their position, because nothing in either the Note or Deed of Trust or any law in California supports this argument.  Any alleged transfer of the Ghods Property would have also included a transfer of the security interest in the Ghods Property, and the Debtors would have maintained any rights under the Deed of Trust to enforce the security interest if the Ghods defaulted on the Ghods Loan.  See e.g. Cornelison v. Kornbluth, 542 P.2d 981, 985 (Cal. 1975) ("Upon the transfer of real property

covered by a mortgage or deed of trust as security for an indebtedness, the property remains subject to the secured indebtedness…")

48.     The Ghods' second theory – that they were not responsible for the insurance that was charged to them because they no longer owned the Ghods Property, is equally meritless. Again, the Ghods do not identify applicable California law that holds that  an alleged sale relieves the property owner of his contractual obligations under the Note and Deed of Trust.  The Deed of Trust requires the Ghods, as borrowers under the Ghods Loan, to maintain insurance on the Ghods Property, and if they failed to do so, the Lender, through GMACM as servicer, was permitted to place insurance on the Ghods Property to protect its rights.  See Deed of Trust, sections 5 and 7.  That the Ghods allegedly sold the Ghods Property without notice or consent to the Debtors does not relieve them of their contractual obligations to make sure that the Ghods Property, as the security for the Ghods Loan, was properly insured.  See e.g. Cornelison, 542 P.2d at 985 (holding that the grantor rather than grantee of property secured by a deed of trust is responsible for performing the obligations under the deed of trust unless he agrees to pay the indebtedness).  Thus, the Ghods have failed to demonstrate a valid claim against the Debtors' estates.

## CONCLUSION

49.     WHEREFORE, the (i) Borrower Trust respectfully submits that the relief requests in the Objection should be granted in its entirety and (ii) the Liquidating Trust requests that the Lift Stay Motion be denied.

ny-1199720

Dated:   August 17, 2015
      New York, New York

/s/ Norman S. Rosenbaum
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the ResCap Borrower Claims Trust*

17