**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **NOT FOR PUBLICATION** |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Case No. 12-12020 (MG) |
| Debtors. | Chapter 11 |
| | Jointly Administered |

**MEMORANDUM OPINION AND ORDER SUSTAINING THE
RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO
AMENDED CLAIM NO. 4445 FILED BY ALAN MOSS**

*A P P E A R A N C E S:*

MORRISON & FOERSTER LLP
*Attorneys for ResCap Borrower Claims Trust*
250 West 55th Street
New York, New York 10019
By:   Norman S. Rosenbaum, Esq.
       Jordan A. Wishnew, Esq.
       Jessica J. Arett, Esq.

ALAN MOSS
*Pro Se*
P.O. Box. 721
Moss Beach, California 94038
By:   Alan Moss

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the ResCap Borrower Claims Trust's (the "Trust") objection (the "Objection," ECF Doc. # 8502) to Amended Claim Number 4445 (the "Amended Claim," ECF Doc. # 8334) filed by Alan Moss ("Moss").[1] The Amended Claim is based on a California state court action that Moss filed against Debtor Executive Trustee Services, LLC ("ETS") before ETS filed for bankruptcy. The Amended Claim asserts causes of action sounding in negligence, fraud, and intentional infliction of emotional distress based on ETS filing allegedly

---

[1] The Objection is supported by the declaration of Kathy Priore (the "Priore Decl.," ECF Doc. # 8502-3).

improper notices pursuant to California's non-judicial foreclosure scheme in connection with a foreclosure on Moss's home. More specifically, Moss alleges that the substitution of trustee appointing ETS as substitute trustee was invalid because the entity substituting ETS as trustee had not yet acquired rights under the applicable deed of trust when it executed the substitution. Acting on the basis of the substitution, ETS filed notices of default that ultimately resulted in the non-judicial foreclosure sale of Moss's property. The sale was later vacated and Moss remains in possession of the property. As explained below, California law provides a qualified privilege for acts of a trustee unless the trustee acted with malice. The issue here is therefore whether Moss's Amended Claim adequately pleads malice.

The Trust previously objected to Moss's original claim—Claim Number 4445 (the "Claim")—as part of the *ResCap Borrower Claims Trust's Seventy-Fifth Omnibus Objection to Claims (No Liability Borrower Claims)* (the "Prior Objection," ECF Doc. # 7552). On February 13, 2015, the Court entered an order (the "Prior Order," ECF Doc. # 8127) sustaining the Prior Objection without prejudice and providing Moss leave to amend his Claim within 30 days. (*See id.*) Moss filed his Amended Claim on March 16, 2015. (*See generally* Am. Claim.)

After the Trust filed its Objection to the Amended Claim, Moss filed an opposition to the Objection (the "Opposition," ECF Doc. # 8727), and the Trust filed a reply (the "Reply," ECF Doc. # 8766). The Court held a hearing on the Objection on June 23, 2015; Moss appeared by telephone. At the conclusion of the hearing, the Court took the matter under submission.

As set forth below, the Court holds that California's qualified common interest privilege applies to the notices issued by ETS because Moss fails to allege facts supporting a reasonable inference that ETS acted with malice. Therefore, the Objection is **SUSTAINED** and the Amended Claim is **DISALLOWED** and **EXPUNGED**.

## I.  BACKGROUND

### A.  Facts

Moss obtained a $612,500 loan (the "Loan") from non-debtor CJ Mortgage, Inc. ("CJM") on June 22, 2005. (Obj. ¶ 19.) The Loan was evidenced by a note (the "Note," Priore Decl. Ex. C) secured by a deed of trust (the "Deed of Trust," Priore Decl. Ex. D) encumbering real property located in Moss Beach, California (the "Property"). (Obj. ¶ 19.) The Deed of Trust identified CJM as the lender and Alliance Title ("Alliance") as the beneficiary. (*See* Priore Decl. Ex. D.)

CJM assigned the Deed of Trust to non-debtor Option One Mortgage Corp. ("Option One") pursuant to an assignment dated June 27, 2005 (the "Option One Assignment," Priore Decl. Ex. E).[2]  (Obj. ¶ 19; *see* Priore Decl. Ex. E at 2–4.) Option One subsequently assigned the Deed of Trust to non-debtor TCIF, LLC ("TCIF") pursuant to an assignment dated September 15, 2007 (the "TCIF Assignment," Priore Decl. Ex. F).[3]  (Obj. ¶ 19; *see* Priore Decl. Ex. F at 2.) TCIF later assigned the Deed of Trust to non-debtor Bank of New York Trust Company ("BONY") pursuant to an assignment dated April 29, 2008 (the "BONY Assignment," Priore Decl. Ex. G).[4]  (Obj. ¶ 19; *see* Priore Decl. Ex. G at 2.) Debtor GMAC Mortgage, LLC ("GMACM") serviced the Loan from March 14, 2006 until servicing was transferred to Ocwen Loan Servicing, LLC ("Ocwen") on February 16, 2006. (Obj. ¶ 20.)

---

[2]  The Option One Assignment was recorded on April 4, 2007. (*See id.* at 2.) The Note was negotiated from CJM to Option One. (*See* Priore Decl. Ex. C at 7.)

[3]  The TCIF Assignment was recorded on June 16, 2008 as document number 2008-069108. (*See id.* at 2.) The Note was negotiated from Option One to blank. (*See* Priore Decl. Ex. C at 8.)

[4]  The BONY Assignment was recorded on June 16, 2008 as document number 2008-069109. (*See id.* at 2.)

The Loan was referred to foreclosure on June 16, 2006 because the Loan was due and owing for the April 2006 payment. (Obj. ¶ 22.) Non-debtor TCIF REO2, LLC ("TCIF") appointed ETS as substitute trustee under the Deed of Trust pursuant to a substitution of trustee dated September 21, 2006 (the "ETS Substitution," Priore Decl. Ex. H).[5] (Obj. ¶ 21; *see* Priore Decl. Ex. H at 2–3.) However, as the chronology above shows, TCIF did not *receive* an assignment of the Deed of Trust until September 15, 2007; so it does not appear that TCIF could substitute ETS as trustee one year earlier in September 2006. ETS commenced non-judicial foreclosure proceedings by issuing a Notice of Default (the "2006 NOD"), recorded on June 20, 2006. (Obj. ¶ 23; *see* Priore Decl. Ex. I at 2.) On May 4, 2007, ETS issued a Notice of Rescission of the 2006 NOD (the "2007 NOR," Priore Decl. Ex. I).[6] (*See id.* at 2.)

The Loan was again referred to foreclosure on September 17, 2007 because the Loan was due and owing for the July 2007 payment. (Obj. ¶ 24.) ETS recommenced non-judicial foreclosure proceedings by issuing a Notice of Default (the "2007 NOD") on September 17, 2007.[7] (*Id.* ¶ 25; *see* Priore Decl. Ex. A at 11.) While TCIF had received an assignment of the deed of trust before ETS issued the 2007 NOD, TCIF had not issued a corrected substitution of trustee appointing ETS as substitute trustee. ETS recorded a Notice of Trustee's Sale on May 19, 2008 (the "2008 NOS"). (*See* Priore Decl. Ex. A at 8.)

On June 11, 2008, Moss contacted GMACM to request a loan modification. (Obj. ¶ 26.) GMACM offered Moss a six-month foreclosure repayment plan requiring Moss to make a

---

[5] The ETS Substitution was recorded on November 10, 2006. (*See id.* at 2.)

[6] The 2007 NOR was recorded on May 17, 2007. (*See id.* at 2.) The 2007 NOR references the 2006 NOD. (*See id.*)

[7] The 2007 NOD was recorded on September 18, 2007. (Obj. ¶ 25; *see* Priore Decl. Ex. K at 2.) The Trust did not submit a copy of the 2007 NOD.

4

$50,000 down payment and six monthly payments of $6,740.78 each. (*Id.*) Moss accepted the terms of the repayment plan and made the $50,000 down payment. (*Id.*) As a result, GMACM cancelled the foreclosure sale scheduled for June 13, 2008. (*See id.*)

GMACM mailed Moss a copy of the repayment plan agreement on June 13, 2008. (*Id.* ¶ 27; *see* Priore Decl. Ex. M.) GMACM never received an executed copy of the agreement from Moss. (Obj. ¶ 27.) Additionally, Moss did not make the $6,740.48 July 12, 2008 plan payment. (*See id.*) Consequently, GMACM recommenced foreclosure on July 18, 2008. (*See id.*) On August 21, 2008, GMACM received a $6,000 personal check from Moss; however, GMACM returned the check to Moss because it was not timely and was in an insufficient amount. (*See id.*)

On May 7, 2009, ETS conducted a trustee sale and BONY acquired title to the Property. (*Id.* ¶ 28.) On May 12, 2009, ETS executed a Trustee's Deed Upon Sale (the "Trustee Deed"), granting BONY title to the Property. (*See* Priore Decl. Ex. N at 2–3.) According to the Trust, ETS conducted the foreclosure sale in error due to a failure to timely communicate conditions that would have warranted a cancellation of the foreclosure. (Obj. ¶ 28 n.4.)

On July 22, 2009, Moss filed a complaint (the "BONY Complaint," Prior Opp. Ex. 2) in the Superior Court of California, County of San Mateo (the "Superior Court"), alleging state law causes of action against BONY (the "BONY Action"). (*See* Obj. ¶ 29; *see generally* BONY Compl.) The BONY Complaint alleged the following causes of action: (i) to set aside the trustee sale; (ii) fraud; (iii) quiet title; and (iv) declaratory relief. (*See* BONY Compl. ¶¶ 9–24.)

On May 5, 2011, Moss filed a complaint (the "ETS Complaint," Priore Decl. Ex. A at 4–17) in the Superior Court, asserting state law causes of action against ETS (the "ETS Action"). (*See* Obj. ¶ 30; *see generally* ETS Compl.) The ETS Complaint alleged the following causes of

5

action against ETS for issuing the 2007 NOD, the 2008 NOS, and the Trustee Deed (together, the "Notices"): (i) negligence; (ii) fraud; and (iii) intentional infliction of emotional distress ("IIED"). (*See* Obj. ¶ 30; *see generally* ETS Compl.) ETS did not enter an appearance in the ETS Action, and the Superior Court entered a default on June 17, 2011. (Obj. ¶ 30.) ETS filed a motion to set aside the default on April 4, 2012; however, the motion was not heard before the imposition of the automatic stay in the Debtors' chapter 11 cases. (*Id.*) No default judgment against ETS was entered in the ETS Action. (*Id.*)

On September 13, 2012, ETS issued a Notice of Rescission of the Trustee Deed (the "2012 NOR, Priore Decl. Ex. N).[8] (Obj. ¶ 28; *see* Priore Decl. Ex. N at 2–3.) ETS also issued a Notice of Rescission of the 2007 NOD on January 9, 2013 (the "2013 NOR," Priore Decl. Ex. K).[9] (Obj. ¶ 28; *see* Priore Decl. Ex. K at 2–3.) The Trust asserts that Moss continues to hold title to the Property subject to the Note and Deed of Trust. (Obj. ¶ 28.) In November 2013, BONY and Moss settled, resulting in the dismissal with prejudice of the BONY Action.[10] (Obj. ¶ 31.)

B.    **Procedural History**

On November 7, 2012, Moss timely filed a $750,000 general unsecured claim against ETS. (*See id.* ¶ 10.) Following briefing and a hearing, the Court entered the Prior Order on February 13, 2015, finding that the Claim failed to allege that ETS acted with a lack of good faith and with actual malice, but giving Moss 30 days to amend the Claim. (*See* ECF Doc. # 8127.) Moss filed a motion for reconsideration (the "Reconsideration Motion," (ECF Doc.

---

[8]    The 2012 NOR was recorded on September 18, 2012. (*See id.* at 2.) The 2012 NOR references the Trustee Deed. (*See id.* at 2–3.)

[9]    The 2013 NOR was recorded on August 19, 2013. (*See id.* at 2.) The 2013 NOR references the 2007 NOD. (*See id.*)

[10]   According to the Trust, the terms of the settlement are subject to a confidentiality provision. (Obj. ¶ 31.)

6

# 8225) on March 2, 2015, which the Court denied on April 7, 2015 (the "Reconsideration Order," ECF Doc. # 8439).

Moss filed the Amended Claim on March 16, 2015. (*See* ECF Doc. # 8334.) The Amended Claim, like the Claim, is based on the causes of action Moss alleged in the ETS Action. (*See* Am. Claim at 2.) On April 15, 2015, the Trust filed the Objection. Moss filed the Opposition on June 3, 2015, and the Trust filed its Reply on June 18, 2015. The Court held a hearing on the Objection on June 23, 2015 and took the matter under submission. On June 24, 2015, Moss filed a letter directing the Court's attention to authority he failed to reference at the hearing.

### C. The Objection

First, the Trust argues that, contrary to Moss's assertion, the fact that a default was entered against ETS in the ETS Action does not bar the Trust from objecting to the Amended Claim. (*See* Obj. ¶ 32.) According to the Trust, Moss acknowledges that the Superior Court never entered a default judgment against ETS in the ETS Action. (*See id.* (citing Am. Claim at 3).) Because no default judgment was entered in the ETS Action, the default does not have preclusive effect. (*See id.* ¶ 33.)

Second, the Trust argues that ETS cannot be liable for any of the causes of action underlying the Amended Claim because they are all based on ETS issuing and recording the Notices, and the Notices constitute privileged communications under California law. (*See id.* ¶ 34.) This privilege does not extend to notices published with actual malice; however, according to the Trust, the Amended Claim fails adequately to allege that ETS acted with actual malice in recording the Notices. (*See id.* ¶¶ 35–37.)

7

Third, the Trust contends that even if ETS's actions were not privileged, Moss fails to state a claim for any of the causes of action asserted in the Amended Claim. (*See id.* ¶ 38.) The Trust maintains that Moss fails to state a claim for negligence because he cannot show that ETS owed him a duty or that Moss was damaged as a result of ETS's actions. (*See id.* ¶¶ 40–45.) Similarly, Moss has not alleged a claim for fraud because he cannot establish any compensable damages resulting from ETS's actions. (*See id.* ¶¶ 46–47.) Finally, the Trust asserts that Moss fails to state a claim for IIED. (*See id.* ¶¶ 48–49.)

### D.   The Opposition

Moss argues that an entry of default curtails the defaulting party's right to contest the default and has the effect of an admission of the material allegations in the complaint and, therefore, all of the material allegations in the ETS Complaint should be accepted as true and cannot be challenged by the Trust. (*See* Opp. at 2–9.) Without conceding that he is required to allege that ETS acted with malice to establish his Claim, Moss asserts that the default entered against ETS in the ETS Action conclusively establishes malice on the part of ETS because the ETS Complaint alleges that ETS's conduct was malicious. (*See id.* at 10–11 (citing ETS Compl. ¶¶ 44–50, 56, 59–61, 62).)

Alternatively, Moss asserts that he has adequately alleged that ETS acted with malice by pleading that ETS had no reasonable grounds to believe that the published Notices were truthful and that its actions were warranted or legal. (*See id.* at 11–13.) According to Moss, ETS was obligated to determine if it had the legal authority to act as substitute trustee under the Deed of Trust, which it failed to do. (*See id.* at 11–12.) Because the documents clearly establish that the ETS Substitution was improper, Moss argues, ETS lacked reasonable grounds to assume it had legal authority to act as substitute trustee. (*See id.* at 12.) ETS's malice is further established,

8

Moss contends, by the fact that ETS did not rescind the Notices for more than four years after receiving notice of its improper appointment as substitute trustee upon the commencement of the BONY Action. (*See id.* at 15–16.) Finally, Moss argues that he has alleged facts sufficient to state a claim for negligence, fraud, and IIED. (*See id.* at 17–33.)

### E.     The Reply

The Trust reiterates that entry of a default has no preclusive effect where no default judgment has been entered. (*See* Reply ¶ 8.) Additionally, the limits on ETS's right to contest the entry of default in the ETS Action are not relevant here because ETS is seeking to resolve the Amended Claim in bankruptcy, not appear in the ETS Action. (*Id.* ¶ 9.) The Trust argues that the Amended Claim sets forth conclusory, unsubstantiated allegations of ETS's knowledge at the time it issued the Notices and therefore fails to adequately allege malice on the part of ETS. (*See id.* ¶¶ 10–11.) Further, ETS's failure to rescind the Notices once Moss filed the BONY Action is not sufficiently indicative of malice because the BONY Action was filed after ETS had completed its role as substitute trustee under the Deed of Trust. (*See id.* ¶ 12.) Finally, the Trust reiterates that Moss has otherwise failed to state a claim for negligence, fraud, and IIED. (*See id.* ¶¶ 14–20.)

## II.     DISCUSSION

### A.     Claims Objections

Correctly filed proofs of claim "constitute prima facie evidence of the validity and amount of the claim . . . . To overcome this prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). By producing "evidence equal in force to the prima facie case," an objector can negate a claim's

9

presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Tr. (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013). If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim." 4 COLLIER ON BANKRUPTCY ¶ 502.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

Federal pleading standards apply when assessing the validity of a proof of claim. *See, e.g.*, *In re Residential Capital, LLC*, 518 B.R. 720, 731 (Bankr. S.D.N.Y. 2014); *In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure." (citations omitted)). Accordingly, a claimant must allege "enough facts to state a claim for relief that is plausible on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation omitted). Plausibility "is not akin to a probability requirement," but rather requires "more than a sheer possibility that a

10

defendant has acted unlawfully." *Id.* (citation omitted). The court must accept all factual allegations as true, discounting legal conclusions clothed in factual garb. *See, e.g.*, *id.* at 677–78; *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true" (citing *Iqbal*, 556 U.S. at 678)). The court must then determine if these well-pleaded factual allegations state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). A claim that pleads only facts that are "merely consistent with a defendant's liability" does not meet the plausibility requirement. *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "The pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

To support claims grounded in fraud, Federal Rule of Civil Procedure ("FRCP") 9(b) requires the claimant to "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). FRCP 9(b) is grounded in the purpose "to protect the defending party's reputation, to discourage meritless accusations, and to provide detailed notice of fraud claims to

defending parties." *Silverman v. Arctrade Capital, Inc. (In re Arctrade Fin. Techs. Ltd.)*, 337 B.R. 791, 801 (Bankr. S.D.N.Y. 2005) (citation omitted).

Although "[claims] drafted by *pro se* [claimants] are to be construed liberally, [] they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with 'a fair understanding of what the [claimant] is complaining about and . . . whether there is a legal basis for recovery.'" *Kimber v. GMAC Mortg., LLC (In re Residential Capital, LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (ellipsis in original) (quoting *Iwachiw v. New York City Bd. of Elections*, 126 F. App'x 27, 29 (2d Cir. 2005)).

### B. Legal Effect of Entry of Default

The Superior Court's entry of default against ETS in the ETS Action does not have preclusive effect. Under California law, "[a] clerk's entry of default possesses none of the characteristics of a preclusive judgment. It is not final; it is not on the merits; it does not decide anything; it results from no litigation of any issue. Indeed it does not adjudicate anything; it is not a judicial act." *Ferraro v. Camarlinghi*, 75 Cal. Rptr. 3d 19, 39 (Ct. App. 2008). Moss admits that no default judgment has been entered in the ETS Action. (*See* Am. Claim at 3.) Accordingly, no final judgment with preclusive effect has been entered in the ETS Action. *See Taa v. Bosque (In re Bosque)*, No. 10-62444 (ASW), 2013 WL 795243, at *4 (Bankr. N.D. Cal. Mar. 4, 2013) (refusing to give preclusive effect to purported default judgment where "there [wa]s nothing showing that a default judgment was entered by any judge, or that the default judgment became a final judgment").

### C. The Amended Claim Fails to State a Claim for Relief

Section 2924 of the California Civil Code sets forth the requirements for initiating the nonjudicial foreclosure process. *See generally* CAL. CIV. CODE § 2924. The nonjudicial

foreclosure process is commenced when a trustee, mortgagee, or beneficiary, or any of their authorized agents files a Notice of Default. *Rockridge Tr. v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1145 (N.D. Cal. 2013) (quoting CAL. CIV. CODE § 2924(a)(1)). Section 2924(a)(6) of the California Civil Code provides:

> No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest.

CAL. CIV. CODE § 2924(a)(1). However, subsections (b) and (d) of section 2924 provide that the California Civil Code section 47 common interest privilege applies to a trustee's performance of its statutorily required duties. *Rubio v. U.S. Bank N.A.*, No. C 13-05752 (LB), 2014 WL 1318631, at *5 (N.D. Cal. Apr. 1, 2014) ("To the extent that [p]laintiff challenges [defendant]'s recording of statutorily-required notices or performing statutorily-required foreclosure procedures, they are privileged communications under the qualified common-interest privilege of California Civil Code § 47."); *Kachlon v. Markowitz*, 85 Cal. Rptr. 3d 532, 553 (Ct. App. 2008) (holding that California Civil Code section 2924 makes the common interest privilege of California Civil Code section 47 "applicable to statutory, nonjudicial foreclosure procedures"); *see* CAL. CIV. CODE § 2924(b) ("In performing acts required by this article, the trustee shall incur no liability for any good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and the amount of the default under the secured obligation, deed of trust, or mortgage."); *Id.* § 2924(d) (providing that privileged communications include "[t]he mailing, publication, and delivery of notices as required by this section" and "[p]erformance of the procedures set forth in this article").

13

Section 47 of the California Civil Code "creates a qualified privilege for any communications made 'without malice, to a person interested therein.'" *Rubio*, 2014 WL 1318631, at *5 (quoting CAL. CIV. CODE § 47(c)). "This privilege applies to all torts other than malicious prosecution." *Id.* (citing *Edwards v. Centex Real Estate Corp.*, 61 Cal. Rptr. 2d 518, 526 (Ct. App. 1997); *see Kachlon*, 85 Cal. Rptr. 3d at 343–44 (affirming trial court's judgment dismissing slander of title and negligence claims asserted against trustee, where there was no evidence that the trustee acted with malice); *see also Perez v. Wells Fargo Bank, N.A.*, No. C-11-02279 (JCS), 2011 WL 3809808, at *12–13 (N.D. Cal. Aug. 29, 2011) (dismissing state law tort claims asserted against trustee for its actions taken in foreclosing on plaintiffs' property, because the "[p]laintiffs d[id] not allege that [the trustee] acted with malice or that it did not rely in good faith on the information that was provided to it by [the lender]"). In order to adequately allege that section 47's common interest privilege does not apply to notices published by a trustee pursuant to section 2924, a plaintiff must allege that the trustee acted with "actual malice, meaning 'that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights.'" *Rubio*, 2014 WL 1318631, at *11 (quoting *Kachlon*, 85 Cal. Rptr. 3d at 547). "[M]ere negligence in making a sufficient inquiry into the facts on which the statement was based does [not], of itself, relinquish the privilege." *Kachlon*, 85 Cal. Rptr. 3d at 554. (alterations in original) (citation and internal quotation marks omitted). Additionally, "[m]ere inadvertence or forgetfulness, or careless blundering, is no evidence of malice." *Id.* (citation and internal quotation marks omitted).

Moss argues that a plaintiff need not allege a trustee acted with malice where, as here, the trustee was not properly appointed. (*See* Opp. at 13–16.) The Trust contends that this argument

14

is contradicted by the holding in *Bergman v. Bank of America*, No. C-13-00741 (JCS), 2013 WL 5863057, at *20 (N.D. Cal. Oct. 20, 2013), and the Court's rejection of this argument in its denial of Moss's Reconsideration Motion.[11]  (Reply ¶ 10.)  The Trust is correct.

In *Bergman*, the plaintiffs asserted a slander of title claim against a substitute trustee, alleging that the common interest privilege did not extend to the notices because the trustee "acted with malice and a reckless disregard for the truth by recording [the notices] when it was not validly the trustee . . . ." 2013 WL 5863057, at *20.  The plaintiffs asserted that the trustee lacked authority to act as trustee because the applicable substitution of trustee was robo-signed and the entity appointing the trustee was not the beneficiary under the applicable deed of trust at the time the substitution of trustee was executed.  *See id.*  The court dismissed the slander of title claim against the trustee with leave to amend, holding that the plaintiffs did not "plausibly allege[] that [the trustee] was aware, or should have been aware, that it was not validly the trustee when it recorded these documents." *Id.*  In reaching this conclusion, the court found that the plaintiffs' robo-signing theory lacked merit and they did not plead "facts to suggest that [the trustee] should have been able to discover [the entity appointing the trustee]'s alleged lack of authority." *Id.*  After amending their complaint, the court dismissed the plaintiffs' amended slander of title claim against the trustee without leave to amend, finding that the plaintiffs' amended complaint failed to "present any meaningful new arguments or facts." *Bergman v. Bank of America, N.A.*, No. 13-cv-00741 (JCS), 2014 WL 265577, at *6 (N.D. Cal. Jan. 22, 2014).  Here, as in the *Bergman* decisions, the dispositive issue in determining whether privilege

---

[11]   In his Reconsideration Motion, Moss argued that the Court erroneously relied on *Kachlon* and *Perez v. Wells Fargo Bank, N.A.*, 929 F. Supp. 2d 988 (N.D. Cal. 2013) in sustaining the Prior Objection.  (*See* Reconsideration Order at 2.)  According to Moss, the trustee in each of those cases was assumed to have been lawfully appointed and, therefore, the cases were inapposite.  (*See id.*)  The Court has already considered and rejected this argument in the Reconsideration Motion.  (*See id.* at 4–5.)

15

extends to notices published by a trustee is not whether the trustee was validly appointed, but rather whether the trustee acted with malice in publishing the notices.

In the ETS Complaint, Moss alleges that ETS was not properly appointed as substitute trustee of the Deed of Trust and thus had no legal authority to issue the Notices and perform foreclosure activities. (*See* ETS Compl. at 6–8.) The ETS Substitution was allegedly invalid because TCIF executed the substitution when it was not the beneficiary under the Deed of Trust. (*See id.* at 7.) Because ETS did not legally acquire the authority to act as substitute trustee, it could not lawfully publish the Notices. (*See id.*)

In the Amended Claim, Moss alleges that "ETS lacked reasonable grounds for believing that it had the power to issue any requisite notices, or in the truth of the information contained in the notices it issued and therefore acted in reckless disregard of the rights of [Moss]." (Am. Claim at 8.) Moss asserts that ETS received no communications from any entity demonstrating that it was legally appointed as substitute trustee and ETS did not research recorded documents to determine whether it was legally appointed as substitute trustee despite having a duty to do so. (*See id.* at 6.) According to Moss, ETS acted in reckless disregard of his rights from the initiation of the BONY Action through the present time because it never possessed information indicating that it had properly been appointed substitute trustee, and despite being placed on notice that it lacked authority to act as substitute trustee upon the commencement of the BONY Action, ETS "failed to take any steps or to make any inquiry regarding whether it had been properly appointed and substituted." (*Id.* at 8–9.) Moss also alleges that GMACM and ETS were engaged in the practice of "foster[ing] foreclosures by any means necessary, including [by] fraudulent[ly] notariz[ing] . . . . documentations, in order to finalize foreclosures, even by methods and means that did not comport with state law" (*id.* at 8), and "[t]he fact that ETS

16

allowed itself to act as trustee, notwithstanding any basis for believing that it was duly appointed, is another example of this pattern and practice" (*id.*).

The Court concludes that these allegations do not give rise to the reasonable inference that ETS lacked reasonable grounds for belief in the truth of the Notices and therefore acted in reckless disregard of Moss's rights. *See Kachlon*, 85 Cal. Rptr. 3d at 547. First, Moss asserts that ETS was under an obligation to research the Loan's chain of title to ascertain whether it was properly appointed as substitute trustee (*see* Am. Claim at 8–9); however, he has submitted no authority supporting the proposition that a trustee must affirmatively confirm its legal authority before publishing statutorily required notices. Additionally, the existence of such an obligation does not comport with the standard for establishing malice. To allege malice on the part of ETS, Moss must allege that ETS lacked *reasonable* grounds to believe that the Notices were true at the time they were published; a trustee does not act with malice in publishing notices unless it first confirms the truth of their contents. *See Kachlon*, 85 Cal. Rptr. 3d at 554 (noting that malice is not established by "[m]ere negligence in making a sufficient inquiry into the facts on which" a publication was based).

Second, all of the Notices were published *before* Moss filed the BONY Action. The commencement of the BONY Action could not have provided ETS notice that it lacked authority to publish the Notices because they had already been issued by that time. While ETS did not rescind the Notices for several years after the BONY Action was filed, it also did not take any other affirmative actions in further support of the foreclosure proceeding; indeed, the foreclosure sale was a *fait accompli* by the time the BONY Action was commenced. *See id.* at 554 ("After being presented with documentation showing that the underlying debt had been paid, [the trustee] took no further action to enforce the foreclosure. Nothing remotely suggests that [the

17

trustee] acted with malice."). Finally, Moss's allegations imply that GMACM and ETS operated a scheme designed to foster foreclosures and this scheme occasionally involved the fraudulent execution of loan documents. (*See* Am. Claim at 8.) However, this alleged scheme is speculative and tenuously related to Moss's Loan at best. The amorphous allegation that GMACM and ETS fraudulently notarized documents is insufficient to plead malice. *See Ogilvie v. Select Portfolio Servicing*, No. 12-CV-001654 (DMR), 2012 WL 3010986, at *4 (N.D. Cal. July 23, 2012) (holding that plaintiff did not adequately plead malice by alleging that "[d]efendants acted in malice and reckless disregard for the truth when they formulated false documents").

Moss has not met his burden of pleading that the Notices were not privileged communications by failing to adequately allege facts establishing that ETS acted with malice in issuing them. Because ETS's allegedly wrongful conduct in issuing the Notices is a necessary condition to liability for each cause of action asserted in the Amended Claim, Moss fails to state a plausible claim for relief as to any cause of action. Therefore, the Trust's Objection is **SUSTAINED**.

### III.    CONCLUSION

For the reasons set forth above, the Objection is **SUSTAINED** in its entirety and the Amended Claim is **DISALLOWED** and **EXPUNGED**.

**IT IS SO ORDERED.**

Dated: August 24, 2015
      New York, New York

                                                ___*Martin Glenn*___
                                                MARTIN GLENN
                                    United States Bankruptcy Judge