1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   - - - - - - - - - - - - - - - - - - -x

4   In the Matters of:                    Lead Case No.

5   RESIDENTIAL CAPITAL, LLC, et al.,     12-12020-mg

6              Debtors.

7   - - - - - - - - - - - - - - - - - - -x

8   RESCAP LIQUIDATING TRUST,

9                  Plaintiff,             Adv. Pro. No.

10             - against -                14-01967-mg

11  ISGN FULFILLMENT SERVICES, INC.,

12                 Defendant.

13  - - - - - - - - - - - - - - - - - - -x

14  RESCAP LIQUIDATING TRUST,

15                  Plaintiff,            Adv. Pro. No.

16             - against -                14-01968-mg

17  ISGN SOLUTIONS, INC.,

18                 Defendant.

19  - - - - - - - - - - - - - - - - - - -x

20

21

22

23

24

25

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16                  United States Bankruptcy Court

17                  One Bowling Green

18                  New York, New York

19                  August 20, 2015

20                  10:05 AM

21

22    B E F O R E:

23    HON. MARTIN GLENN

24    U.S. BANKRUPTCY JUDGE

25

1

2    Status Conference regarding Gosselin matter.

3

4    Status Conference RE:  Objection to  Claim(s) Filed by Alvin

5    and Sandra LaBostrie.

6

7    (CC: Doc# 8315, 8528, 8551) Status Conference RE: ResCap

8    Borrower Claims Trusts Objection to Proof of Claim No. 725.

9

10   (CC: Doc# 8859, 8864) ResCap Borrower Claims Trusts Eighty-

11   Eighth Omnibus Objection to Claims ((I) No Liability Borrower

12   Claims and (II) Reduce and Allow Borrower Claims).

13

14   Adversary proceeding: 14-01967-mg Rescap Liquidating Trust v.

15   ISGN Fulfillment Services, Inc.

16   Status Conference

17

18   Adversary proceeding: 14-01968-mg Rescap Liquidating Trust v.

19   ISGN Solutions, Inc.

20   Status Conference

21

22

23

24

25

4

1

2  A P P E A R A N C E S :

3  MORRISON & FOERSTER LLP

4        Attorneys ResCap Liquidating Trust

5        And ResCap Borrower Claims Trust

6        250 West 55th Street

7        New York, NY 10019

8

9  BY:   JORDAN A. WISHNEW, ESQ.

10

11

12 LAW OFFICE OF LAIRD HEAL

13        Attorney for Gosselin

14        120 Chandler Street

15        Worcester, MA 01609

16

17 BY:   LAIRD J. HEAL, ESQ. (TELEPHONICALLY)

18

19

20

21

22

23

24

25

1

2  THOMAS MARGOLIS ATTORNEY AT LAW

3          Attorney for William Futrell

4          125 East Charles Street

5          Suite 214

6          Muncie, IN 47305

7

8  BY:    THOMAS MARGOLIS, ESQ. (TELEPHONICALLY)

9

10

11  MOHAMMED GHODS, ESQ.

12          Creditor, Pro Se (TELEPHONICALLY)

13

14

15

16

17

18

19

20  Transcribed by:   Penina Wolicki

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

**RESIDENTIAL CAPITAL, LLC, ET AL.**

6

| | |
|---|---|
| 1 | P R O C E E D I N G S |
| 2 | THE COURT:  Please be seated.  We're here in |
| 3 | Residential Capital, number 12-12020. |
| 4 | MR. WISHNEW:  Good morning, Your Honor. |
| 5 | THE COURT:  Mr. Wishnew. |
| 6 | MR. WISHNEW:  Jordan Wishnew, Morrison & Foerster, for |
| 7 | the ResCap Borrower Claims Trust, and with regards to Mr. |
| 8 | Boyd's stay relief motion, the ResCap Liquidating Trust. |
| 9 | THE COURT:  I'm having a little trouble hearing you. |
| 10 | MR. WISHNEW:  I'm sorry, Your Honor. |
| 11 | THE COURT:  Go ahead. |
| 12 | MR. WISHNEW:  Jordan Wishnew, Morrison & Foerster -- |
| 13 | THE COURT:  That part I heard. |
| 14 | MR. WISHNEW:  -- okay, for the ResCap Borrower Claims |
| 15 | Trust, and at it concerns the stay relief motion filed by Mr. |
| 16 | Michael Boyd, the ResCap Liquidating Trust. |
| 17 | THE COURT:  Okay, go ahead. |
| 18 | MR. WISHNEW:  Your Honor, the first -- |
| 19 | THE COURT:  Mr. Boyd, are you on the phone? |
| 20 | MR. WISHNEW:  The first set of matters going -- |
| 21 | THE COURT:  Hold on a second.  Is Boyd on the phone? |
| 22 | No. |
| 23 | Go ahead. |
| 24 | MR. WISHNEW:  Thank you, Your Honor.  The first set of |
| 25 | matters going forward this morning are status conferences on |

1    page 8 of the agenda.  There are three status conferences.  The

2    first one concerns the claim of Rhonda Gosselin.

3              THE COURT:  Yes.

4              MR. WISHNEW:  I believe her counsel, Laird Heal, is on

5    the phone.

6              THE COURT:  Mr. Heal, are you on the phone?

7              MR. HEAL:  Good morning, Your Honor.  This is Laird

8    Heal.

9              THE COURT:  Good morning.

10             MR. WISHNEW:  Your Honor, briefly.  The Court had

11   issued an order on April 21st sustaining in part and overruling

12   in part, without prejudice, the Borrower Claims Trust's

13   objection to claim number 3862.  There was subsequently a

14   motion for partial reconsideration which the Court also

15   granted.  There are, I believe, three outstanding elements of

16   Ms. Gosselin's claim that remain outstanding.

17             Unfortunately, to date, we've not been able to --

18   despite our numerous requests -- get any sort of estimated

19   damages or proposed settlement from Ms. Gosselin to try and

20   engage in discussions.  So we've put this status conference on

21   today's calendar in order to move forward, set a scheduling

22   order, and bring this to an evidentiary hearing.

23             THE COURT:  Okay.  Yes?

24             MR. WISHNEW:  What we propose, Your Honor -- and this

25   was put into a letter that chambers received yesterday as part

**RESIDENTIAL CAPITAL, LLC, ET AL.**

8

1  of a status letter, and it's also -- these dates have been

2  shared with Mr. Heal, to which we've not received any response

3  yet.  But our proposal is discovery be completed no later than

4  October 2nd, 2015.  An evidentiary hearing would be scheduled

5  at a date convenient for the Court, approximately one month

6  after the completion of discovery.  Two weeks prior to the

7  scheduled evidentiary hearing, the parties shall file with the

8  Court pre-trial memoranda and findings of fact and conclusions

9  of law.  And one week prior to the scheduled evidentiary

10  hearing, the parties would provide the Court and the opposing

11  party with pre-marked exhibits to be used during trial.

12          THE COURT:  Mr. Heal, did you receive a copy of that

13  letter?

14          MR. HEAL:  Yes, we did.  And I spoke with the counsel

15  for ResCap.  And this is, in all respects, what we agree to do.

16          THE COURT:  Okay.  We'll proceed on that basis, then.

17  What I would like you to do -- I guess -- I saw the letter; I

18  forgot to bring it out.  I did see the letter.  And rather than

19  having you do a separate order --

20          MR. WISHNEW:  Okay.

21          THE COURT:  -- we'll just endorse the letter.  Those

22  dates -- I'm so ordering that those dates are the applicable

23  dates.  We'll proceed in that fashion.

24          Mr. Heal, where are you located?

25          MR. HEAL:  I'm in Worcester, Massachusetts.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

9

1          THE COURT:  Okay.  All right.  So we'll try and make

2     sure we find a date for an evidentiary hearing that works for

3     you.

4          What I think we ought to do, counsel, is that after

5     discovery is closed, the two of you ought to discuss how many

6     witnesses you expect each side to call and how long a hearing

7     do you estimate will be required.

8          MR. WISHNEW:  Okay.

9          THE COURT:  I didn't go back and look at the prior

10    opinion, either the original opinion or on reconsideration

11    before coming out.  My sense is that the issues -- the factual

12    issues are fairly narrow.

13         MR. WISHNEW:  Yes, Your Honor.

14         THE COURT:  And Mr. Heal, what I usually try to do

15    when we have an evidentiary hearing, is unless somebody

16    persuades me that credibility is at the heart of all of the

17    issues, I usually want written direct testimony in the form of

18    a declaration with the declarant in court for cross-

19    examination.  And so Mr. Wishnew can tell you, because he's

20    familiar with how we've done some of these others, I would ask

21    that when we get -- once you reach the close of fact discovery,

22    see if the two of you can agree on submitting -- how many

23    witnesses, submitting direct testimony in written narrative

24    form by sworn declaration with the declarants in court.  See

25    if -- to the extent you can agree on exhibits, usually that

**RESIDENTIAL CAPITAL, LLC, ET AL.**

10

1    isn't so much of an issue.  Usually you're able to stipulate as

2    to authenticity and usually as to relevance.  And see how --

3    the extent to which you can streamline what evidentiary hearing

4    is required.

5            And then you and Mr. Wishnew can talk about possible

6    dates, when I have a better sense of how much time you think

7    you'll need.  We'll try to accommodate a schedule that'll work

8    for both of you.

9            I don't permit any witness examination by telephone.

10    So whatever witnesses are called have to be present in court.

11    Okay?

12            MR. HEAL:  It's Laird Heal.  Thank you very much, Your

13    Honor.

14            THE COURT:  Okay.  Anything else before we go on to

15    the next matter, Mr. Wishnew, on this?

16            MR. WISHNEW:  No, Your Honor.

17            THE COURT:  All right.  Thanks very much, Mr. Heal.

18    You can be excused if you want; you can stay on if you wish.

19            MR. HEAL:  This is Laird Heal.  Thank you very much,

20    Your Honor.

21            THE COURT:  Okay.  All right.  Go ahead, Mr. Wishnew.

22            MR. WISHNEW:  Thank you, Your Honor.  The next matter

23    is on the bottom of page 8 continuing on to page 9, the ResCap

24    Borrower Claims Trust's objection as to claim 725 filed by

25    William J. Futrell.  Like the last matter, this too is a status

**RESIDENTIAL CAPITAL, LLC, ET AL.**

11

1    conference.  I believe on the phone is Thomas Margolis, Mr.

2    Futrell's counsel.

3              MR. MARGOLIS:  Correct.

4              THE COURT:  Okay, Mr. Margolis.

5              MR. WISHNEW:  Your Honor --

6              THE COURT:  Go ahead, Mr. Wishnew.

7              MR. WISHNEW:  -- similar to the prior matter -- well,

8    let me rephrase that.  The parties have had discussions since

9    the Court issued its opinion sustaining in part and overruling

10   in part the Borrowers Trust's objection to the claim filed by

11   William Futrell.  And while Mr. Margolis has provided some

12   damages calculations to us, we have a fundamental concern about

13   the causation or the nexus between the damages and the actual

14   disputed QWRs that remain really the only open issue between

15   the parties at this point in time.

16             Long story short, Your Honor, we've not been able to

17   consensually resolve the matter yet, so we'd like to move

18   forward towards an evidentiary hearing in that regards.

19             We did provide Mr. Margolis with a proposed form of

20   scheduling order.  I'll run through that quickly, Your Honor.

21   All fact discovery would be completed no later than October

22   3rd.  Expert discovery, if needed, would be no later than

23   forty-five days after the close of factual discovery.  And

24   the -- let's see -- I'm just trying to think of appropriate

25   dates, Your Honor.  That would really be it, Your Honor, in

**RESIDENTIAL CAPITAL, LLC, ET AL.**

12

1    terms of hard dates.  And then we'd follow Your Honor's

2    guidance in terms of scheduling an evidentiary hearing.

3         THE COURT:  Right.  Well, I'm also going to require a

4    pre-trial order --

5         MR. WISHNEW:  Yes.

6         THE COURT:  -- joint pre-trial conference order using

7    the template.

8         Mr. Margolis, if you look at my -- at the Court's

9    Website under my chambers rules, you'll see the template that I

10    use for joint pre-trial conference orders.  While this is not

11    an adversary proceeding, it's a contested matter, and I use

12    that same form for most contested matters as well.  So you'll

13    see what's required by looking there.

14         MR. WISHNEW:  Your Honor --

15         MR. MARGOLIS:  Okay.

16         MR. WISHNEW:  -- I would just add for the record, that

17    the form of proposed case management and scheduling order we

18    did provide to Mr. Futrell was Your Honor's form order.

19         THE COURT:  Yes, right.

20         MR. WISHNEW:  So --

21         THE COURT:  And if you know, Mr. Margolis, the

22    template for case management and scheduling orders is also on

23    the Website, so --

24         Mr. Margolis have you had a chance to consider -- I

25    take it Mr. Wishnew gave you these proposed dates before?

**RESIDENTIAL CAPITAL, LLC, ET AL.**

13

1        MR. MARGOLIS:  I will tell you that I am learning as

2    we go.  At this moment -- anyway, yeah, I'm learning as we go

3    with many of this.

4        THE COURT:  I don't understand what you mean by that.

5        MR. MARGOLIS:  Okay.  Okay.  It's a learning process

6    for me as far as what the Court has just indicated on any

7    template.  And just -- and just moving this matter along.

8        THE COURT:  Okay.  We need to get this scheduled.

9        MR. WISHNEW:  Yeah.

10       THE COURT:  What I'm going to ask you to do, Mr.

11   Wishnew, is to speak with Mr. Margolis in the next couple of

12   days.  Perhaps you could either e-mail him copies of the -- and

13   maybe you've already done this -- of the scheduling order --

14   draft scheduling order you've done.

15       MR. WISHNEW:  Yes, we did fax -- Mr. Margolis doesn't

16   have an e-mail address, so we've been communicating --

17       THE COURT:  Okay.

18       MR. WISHNEW:  -- by facsimile.

19       THE COURT:  Do you have e-mail, Mr. Margolis?

20       MR. MARGOLIS:  I do.

21       MR. WISHNEW:  Okay.  So the two of you ought to speak.

22   I think it's a lot easier communicating by e-mails than with

23   fax machines.  So speak -- you ought to speak today, if

24   possible, with Mr. Wishnew, give him your e-mail address, so

25   that you can communicate by e-mail.  Maybe you can e-mail what

**RESIDENTIAL CAPITAL, LLC, ET AL.**

14

1    you've already faxed to him, Mr. Wishnew, with the proposed

2    dates.

3            MR. WISHNEW:  Yes, Your Honor.

4            THE COURT:  I try to move these things along pretty

5    quickly, Mr. Margolis.  So see if the two of you can work out

6    the schedule.  If you can, submit it as a proposed order --

7    scheduling order to me.  If you can't agree, let me know and

8    we'll have another telephone conference.  You won't have to

9    come down, Mr. Wishnew.  We're not going to wait for the next

10   omnibus hearing date to do that.

11           MR. WISHNEW:  Very good, Your Honor.

12           THE COURT:  Does that work for you, Mr. Margolis?

13           MR. MARGOLIS:  Yes.

14           THE COURT:  All right.  And just so you know, once

15   fact discovery is closed -- and I'm not sure this is going to

16   be a matter for expert discovery -- once discovery is closed,

17   you'll get an evidentiary hearing pretty quickly.  It won't be

18   months, it'll be weeks.  Okay?  And the two of you ought to

19   discuss how many -- you may have heard my prior conversation

20   with Mr. Heal -- how many witnesses; what's your estimate of

21   time.  I usually require direct testimony in declaration form

22   if it's of somebody who you can control, so that you can get a

23   declaration, with the witness available in court for live

24   cross-examination.  And that's generally how we proceed to try

25   and streamline the amount of time required for the evidentiary

**RESIDENTIAL CAPITAL, LLC, ET AL.**

15

1    hearings.

2            Okay, so the two of you, why don't you discuss it, see

3    if you can work out the schedule.  If so, Mr. Wishnew, I'll

4    submit it and indicate that the two of you have agreed on a

5    schedule, and we'll go from there.

6            The last piece, as to the date for the hearing, I

7    won't give you right off the bat.  We'll wait until you get

8    your discovery done, okay?

9            MR. WISHNEW:  Very good, Your Honor.

10            MR. MARGOLIS:  Okay.

11            THE COURT:  All right, thanks very much.  You're

12    excused if you wish to be.  You can stay on the phone if you

13    want to.

14            MR. MARGOLIS:  Thank you, Judge.

15            THE COURT:  Okay.

16            MR. WISHNEW:  Your Honor, the last status conference

17    today is dealing with the Borrower Claims Trust's objection to

18    proofs of claim 2769 and 2772 filed by Alvin and Sandra

19    LaBostrie.  This was a matter previously adjourned.  There was

20    a --

21            THE COURT:  All right.  Are the LaBostries on the

22    phone?  Anybody appearing for the LaBostries?

23            Go ahead.

24            MR. WISHNEW:  Your Honor, this was put on as a status

25    conference because the response that the LaBostries submitted

**RESIDENTIAL CAPITAL, LLC, ET AL.**

16

1    in connection with the Borrowers Trust's claims objection

2    amounted to basically, we need more time; we're still looking

3    for counsel.  And this was docketed at 8999.

4            Your Honor, this is one of the -- this is a matter

5    where originally the Borrowers Trust filed the objection.  It

6    went uncontested.

7            THE COURT:  I'm aware of that.

8            MR. WISHNEW:  Okay.

9            THE COURT:  I'm aware of this.  So --

10           MR. WISHNEW:  We just wanted to move it to the next

11   available hearing, subject to --

12           THE COURT:  Well --

13           MR. WISHNEW:  -- as soon as --

14           THE COURT:  -- go ahead and remind me now.  I want

15   make sure I'm not confusing it with another one.

16           MR. WISHNEW:  Sure, Your Honor.

17           THE COURT:  The history is?

18           MR. WISHNEW:  The history is, Your Honor, we filed the

19   claims objection, served it.  It was -- the matter was

20   uncontested.  The Court granted the objection.  We subsequently

21   heard from Mr. LaBostrie saying he never got service of it.

22   While we believe our service was proper, we agreed to put it

23   back on the calendar --

24           THE COURT:  Right.

25           MR. WISHNEW:  -- and allow him to respond.  He then

**RESIDENTIAL CAPITAL, LLC, ET AL.**

17

1    submitted -- the only response he submitted was docket 8999

2    where he said -- where doesn't address any of the substantive

3    allegations or contest any of the facts.  He simply just says

4    we're still looking for counsel.  And so out of fairness,

5    rather than move forward on a substantive basis today, we put

6    it on for a status conference and are looking for guidance from

7    Your Honor as to how quickly we can get this back on the

8    calendar so we can resolve this matter.

9           THE COURT:  What are the omnibus hearing dates in

10   September or October?

11          MR. WISHNEW:  I think the only one we have in

12   September, Your Honor, is September 3rd, which --

13          THE COURT:  That's too soon.

14          MR. WISHNEW:  Yeah.  So the --

15          THE COURT:  What --

16          MR. WISHNEW:  -- I think the first one in October is

17   the first or second week in October, Your Honor.

18          THE COURT:  All right.  Schedule this for the October

19   omnibus hearing date.  Please provide notice directly to the

20   LaBostries now that the Court has set it for that date, and it

21   will not be adjourned.

22          MR. WISHNEW:  Thank you, Your Honor.

23          THE COURT:  And --

24          MR. WISHNEW:  I guess one other question, Your Honor,

25   is --

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1      THE COURT:  And likewise, any response -- substantive

2  response from the LaBostries, the deadline should be set two

3  weeks before the hearing, and any reply one week before the

4  hearing.

5      MR. WISHNEW:  Understood, Your Honor.

6      THE COURT:  Okay?

7      MR. WISHNEW:  Yes, Your Honor.  That brings us to the

8  last matter on today's calendar, Your Honor, which is the

9  claims objection.  This is at agenda -- or under section 3 on

10  page 10 of today's agenda.  It's the ResCap Borrower Claims

11  Trust eighty-eighth omnibus objection.

12      And Your Honor, through the eighty-eighth -- I'm

13  sorry.  The eighty-eighth objection was filed at docket number

14  8859 on July 8th.  Through this objection, the Borrowers Trust

15  seeks to expunge twenty proofs of claim that do not represent

16  valid pre-petition claims against the debtors.  The Borrowers

17  Trust thoroughly examined the debtors' books and records in an

18  effort to validate the accuracy of the allegation made in the

19  responses and the claims at issue, and determined the books and

20  records do not show any liability due and owing to the

21  respondents.

22      Responses to the objections were due on August 7th.

23  The Borrowers Trust received three responses to the objection.

24  The Borrowers Trust is addressing two of those responses today,

25  claim number 960 filed by Michael Boyd -- his responses were

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    docketed at 8974 and 8977; and claim 3503 filed by Mohammed

2    Ghods and Heidi Ghods, docket number 9000.  The Borrowers --

3            THE COURT:  All right, let me ask, is anyone -- is Mr.

4    Boyd or anyone else appearing for Mr. Boyd?

5            MR. GHODS:  Hello, Your -- oh, Mr. Boyd?  I'm sorry.

6            THE COURT:  Okay.  And I'm sorry, the Ghods was the

7    other one?

8            MR. WISHNEW:  Yes, Your Honor.

9            THE COURT:  Is anyone appearing for the Ghods?

10           MR. GHODS:  Yes.  Good morning, Your Honor.  Mohammed

11   Ghods for the Ghods' claim.

12           THE COURT:  Okay, I'm sorry, if I mispronounced your

13   name.

14           MR. GHODS:  No problem, at all.

15           THE COURT:  Let's -- so those are the only two that

16   are contested?

17           MR. WISHNEW:  Those are the only two, Your Honor.

18           THE COURT:  Let's deal with Boyd first.  So go ahead.

19           MR. WISHNEW:  Sure.

20           THE COURT:  First, Mr. Wishnew, I'll hear from you.

21   And then I'll hear from Mr. Boyd.

22           MR. WISHNEW:  Thank you, Your Honor.  Your Honor, with

23   regards to Mr. Boyd, this is a claim that derives from pre-

24   petition litigation.  And the matter has gone fully through the

25   appeals process.  There were --

**RESIDENTIAL CAPITAL, LLC, ET AL.**

20

1        THE COURT:  Yes.  This is the one where the -- you

2  twice before objected to the claim on res judicata grounds.

3        MR. WISHNEW:  That's correct, Your Honor.

4        THE COURT:  The first time the motion was denied

5  without prejudice, because Mr. Boyd had filed a petition for

6  rehearing in the Ninth Circuit, and under applicable Ninth --

7  under applicable California law -- because they're state court

8  claims --

9        MR. WISHNEW:  State court claims.

10        THE COURT:  -- state law claims, the California rule

11  in res judicata is that it must be a final judgment, and no

12  appeals --

13        MR. WISHNEW:  Correct, Your Honor.

14        THE COURT:  -- pending.  And so I denied the first

15  one.

16        MR. WISHNEW:  Right.

17        THE COURT:  Then you made another motion -- another

18  objection.  And I denied without prejudice that second time,

19  because Mr. Boyd had filed a petition for writ of certiorari

20  and it had not yet been acted on.  And I believe in -- was it

21  in March that the Supreme Court denied certiorari?

22        MR. WISHNEW:  It was --

23        THE COURT:  Maybe that's the wrong date.

24        MR. WISHNEW:  -- May 26th, Your Honor.

25        THE COURT:  I'm sorry, what's the date again?

**RESIDENTIAL CAPITAL, LLC, ET AL.**

21

1          MR. WISHNEW:  He petition -- Mr. Boyd petitioned for

2     certiorari March 20th.

3          THE COURT:  Yeah, and then --

4          MR. WISHNEW:  It was denied May 26th.

5          THE COURT:  Okay.  So May 26th the Supreme Court

6     denied cert.  Okay.  So in the prior April opinion which was

7     when the cert petition had been filed --

8          MR. WISHNEW:  Right.

9          THE COURT:  -- I laid out what the law is on res

10    judicata.  And your argument is that cert's denied, final

11    judgment, res judicata applies, and the claim should be

12    expunged on the basis of res judicata.  Correct?

13         MR. WISHNEW:  Exactly, Your Honor.  Yes.

14         THE COURT:  Mr. Boyd has also asked that the stay be

15    lifted?

16         MR. WISHNEW:  So Mr. Boyd, I believe in late July of

17    this year, filed a complaint against the U.S. Treasury and GMAC

18    Mortgage, and in connection with that complaint, has sought

19    stay relief.  Now, we advised him prior to today's hearing that

20    trying to pursue any action like that against GMAC Mortgage was

21    in direct violation of the plan injunction and confirmation

22    order, and asked for it to be dismissed.

23         I think -- and I'll let Mr. Boyd confirm -- he has

24    dismissed it as to GMAC Mortgage, so that might moot his stay

25    relief motion, but I'll let Mr. Boyd address that point.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

22

1          THE COURT:  Okay.  Because it was my understanding

2   that -- and he can correct me -- but my understanding was the

3   complaint was dismissed against GMAC, but it was unclear to me

4   whether by the stay relief motion, he was seeking to reinstate

5   the claim against GMAC.  But --

6          MR. WISHNEW:  Correct, Your Honor.

7          THE COURT:  All right.  Let me hear from Mr. Boyd.  I

8   think I have a pretty good idea.  I remember -- I looked

9   yesterday and went through the papers so --

10          MR. WISHNEW:  Sure.

11          THE COURT:  -- I'm quite aware of the background.  Mr.

12  Boyd?  Mr. Boyd?  It's your chance to respond.

13          COURTCALL OPERATOR:  Pardon me, Your Honor.  This is

14  this CourtCall operator.  His line is still connected.

15          THE COURT:  Okay.  Mr. Boyd, this is your chance.

16  I've been informed that you're still connected to the hearing,

17  you previously made your appearance.  Do you wish to be heard

18  now?

19          I'm taking the matter under submission on the basis of

20  the papers that have been filed, and I'll enter an appropriate

21  decision or order.

22          MR. WISHNEW:  Thank you, Your Honor.  So that brings

23  us to the last matter, which is the claim of Mr. and Mrs.

24  Ghods.  I apologize for mispronouncing the claimants' name

25  earlier.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

23

1        Your Honor, this claim deals with -- essentially, Mr.

2   Ghods has asserted that there was not a secured interest that

3   GMAC Mortgage was protecting when it placed property insurance

4   on the underlying property.  In response to that point, in our

5   reply, we have provided both the recorded deed of trust

6   originally with Ditech, as well as the assignment of that deed

7   of trust to -- from Ditech to GMAC Mortgage.

8        In addition, Mr. Ghods has asserted that given his

9   sale of the property in 2004, that he wasn't responsible for

10  maintaining insurance on the property, since he no longer owned

11  it.  However, he has put forth nothing through either case law

12  or anything contrary to the terms of the deed of trust to

13  suggest that either he has the ability to absolve himself of

14  the responsibilities under the deed of trust or that GMAC

15  Mortgage acted improperly in any way.

16       So it is our position that GMAC Mortgage's actions

17  were proper and that there is no valid basis for a claim

18  against GMAC Mortgage at this point in time.

19       THE COURT:  All right, Mr. Ghods, do you want to be

20  heard?

21       MR. GHODS:  Thank you, Your Honor.  The problem I have

22  is that most of the arguments that are being made here are

23  launched off the reply.  And I got the reply just a couple days

24  ago.  And I did see that the deed of trust has been included in

25  the supplemental declaration that was submitted.  That deed of

**RESIDENTIAL CAPITAL, LLC, ET AL.**

24

1    trust has been missing in action for years.  It's the first

2    time I've seen it in as many years as I've dealt with this

3    issue.

4          I would like to get an opportunity to brief this.  I

5    think there's a factual issue, because obviously the

6    supplemental declaration is not by anyone who has personal

7    knowledge of these things, and statements are made that I can

8    tell the Court, since I'm also the claimant here, they're just

9    outright false in terms of when the notice was given to GMAC

10   and whether a package allegedly was sent.  There was no such

11   package sent.

12         So there is some factual disputes here.  But I would

13   like to get it resolved, because this is a snake that keeps on

14   living that shouldn't be living.  At some point, I guess,

15   someone has to make a decision on it.  It's absurd to have to

16   procure insurance for a property that's not owned.  And I think

17   there is a "due on sale" clause law out there that deals with

18   these issues when the lender decides, despite knowledge, to not

19   call the collateral.

20         I am -- I've seen the deed of trust now, and that was

21   missing, obviously.  So that's not the argument that is going

22   to be further beaten into the ground.  They have produced a

23   deed of trust.  But as to the remainder, I think there is

24   substantial factual issues and a different legal picture you

25   have to look at.  So I'm requesting an opportunity to file a

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    further brief and some additional comments for you to consider

2    in light of their reply.  And if you find there's a factual

3    dispute, I guess we'll have to have something more.  But if

4    that's sufficient for you to make a ruling as a matter of law,

5    then let's do so with the full picture.

6          THE COURT:  What do you believe are the factual

7    issues?

8          MR. GHODS:  Well, in terms of when the lender or

9    servicer was put on notice of the sale.  What happened, Your

10   Honor, is the title company here could not find any evidence of

11   these deeds of trust.  So it was presumed that it was an

12   unsecured loan because of failure to record.  This package

13   that's been submitted to you with the reply is the first time

14   the deed of trust has appeared.

15         So the reason that they weren't paid out of the escrow

16   from the sale is because they did not appear on the record.  We

17   made the payments, my wife and I, because we believed it was an

18   unsecured loan, so that nobody has reneged on payments.

19         So the issue became this placement of forced insurance

20   on the property.  And we advised the lender that it was -- the

21   property had been sold, and they didn't have a -- we didn't

22   have an ability to insure it and they didn't have an ability,

23   or they could call it, and they decided not to call it,

24   apparently.  And they've continued to charge his force placed

25   insurance.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

26

1        So I want to address those issues a little bit more in

2    light of the supplemental declaration that's been filed in

3    reply.  Thank you, Your Honor.

4            THE COURT:  Mr. Wishnew?

5            MR. WISHNEW:  Your Honor, it seems a bit strange to me

6    that --

7            THE COURT:  Was the deed of trust recorded?

8            MR. WISHNEW:  Yes, Your Honor.

9            THE COURT:  When was it recorded?

10           MR. WISHNEW:  The deed of trust was recorded in 1998.

11   And the assignment of deed of trust from Ditech to GMAC

12   Mortgage, was recorded in 1999.  So they could have gone to the

13   public records and --

14           THE COURT:  Yeah, I don't know who searched for it,

15   Mr. Ghods, but there -- if you had somebody search for it and

16   they didn't find it, that's not their problem.

17           MR. WISHNEW:  Also --

18           MR. GHODS:  No, I realize that, Your Honor.  I

19   personally wasn't the -- it wasn't my search.  I searched

20   subsequently and I couldn't find it.  It was the title company.

21   And I forget who it was.  It was -- if it wasn't First

22   American, it was one of the big ones.  And they could not find

23   any evidence for whatever reason.  I have -- I could not

24   explain that to you.

25           But then the conversation -- and as I said, I'm

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    getting past that point, because they have what -- they have

2    produced what appears to be a recorded document.  And so I'm

3    not interested in trying to quibble with something that seems

4    to be, at least, you know, proper on its face.

5            But what I have an issue is the notice to the lender

6    and the issue of what they were going to do once they were

7    aware of the sale.  Because at that point, our position -- my

8    wife and I -- was that we were making the payments, and but

9    there was no need for insurance.  And I think this is where the

10   dispute is.

11           THE COURT:  But Mr. Ghods --

12           MR. GHODS:  Their position was --

13           THE COURT:  -- Mr. Ghods --

14           MR. GHODS:  -- there is --

15           THE COURT:  -- the law is pretty clear that if that

16   deed of trust is recorded and remains of record, it's valid and

17   enforceable.  Whether somebody called it or not called it,

18   their rights are not waived by -- it's pretty unusual that

19   somebody would sell the property without -- that a buyer would

20   want to be -- would get clear title and want a lien release.

21   But assuming -- and there also are provisions about giving the

22   lender notice of sale.  But you don't seem to be disputing now

23   that there was a valid recorded deed of trust still in place.

24           You continued to make payments.  I don't think you did

25   it out of the goodness of your heart.  I don't know what the

**RESIDENTIAL CAPITAL, LLC, ET AL.**

28

1   terms of your sale were.

2        MR. GHODS:  Well --

3        THE COURT:  But here's what I'm going to do.  You're

4   correct that it was presented with a supplemental declaration

5   with the reply, and you've not had an opportunity to respond to

6   that.  I'm going to give you two weeks from today to file any

7   further response.  And I'll give the Trust one week from the

8   time you receive Mr. Ghods' supplemental filing for any

9   additional filing.  At that point, the matter will be taken

10  under submission without further hearing, unless I specifically

11  call for it.

12       MR. GHODS:  Yes.  If I -- now that I have your ear,

13  may I have it for one more second?

14       THE COURT:  Sure.

15       MR. GHODS:  In light of your last comments, Your

16  Honor?

17       THE COURT:  Yes, go ahead.

18       MR. GHODS:  The payments were not made out of the

19  goodness of my heart.  It was made out of what I believed was a

20  clear obligation under the note to make those payments.  And we

21  have dutifully paid them.

22       The dispute here is -- and I think it's strange that

23  counsel said and I think Your Honor mentioned that what has

24  happened here is the title company gave the green light for the

25  sale and there's been several subsequent sales.  So the issues

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1  that have come up -- I'll address them in the brief -- but I

2  think it is unique and it does require a little bit of careful

3  attention, because the lender here, with a deed of trust,

4  presumably, if they were going to take action today, they're

5  going to have to take a foreclosure action, if there was a

6  breach of the note.  Assume that for a second.  They're --

7            THE COURT:  The only issue --

8            MR. GHODS:  -- going to have to --

9            THE COURT:  -- Mr. Ghods?

10           MR. GHODS:  I beg your pardon.

11           THE COURT:  The only issue before me is whether you

12  have a valid claim.  Whether title to the property is clouded

13  in some fashion is not my problem.  What I have is a claim that

14  you have filed against the estate and the Trust's objection to

15  the claim.  There appears to be -- I'm not deciding it now --

16  there appears to be a contractual obligation in the mortgage

17  that there be insurance and gives them the right to place

18  insurance if you don't provide the evidence of insurance.

19           They indicated that that's the basis for their placing

20  the insurance.  I'm going to give you the two weeks to file any

21  further papers.  Mr. Wishnew will have one week from the time

22  that you submit your supplemental response.  And then the

23  matter will be taken under submission unless the Court decides

24  that another hearing is required, in which case we'll give you

25  notice of it.  Okay?

**RESIDENTIAL CAPITAL, LLC, ET AL.**

30

1          MR. GHODS:  Yeah, thank you very much, Your Honor.

2     Appreciate it.

3          THE COURT:  All right.  Thank you very much.

4          MR. GHODS:  Okay.

5          MR. WISHNEW:  Your Honor, that addresses the two

6     contested matters.  There was a third response we received that

7     was resolved consensually.  So based on the record before the

8     Court and the submissions, we'd ask that the balance of the

9     omnibus claims objection be granted.

10         THE COURT:  And it is.

11         MR. WISHNEW:  Thank you, Your Honor.

12         THE COURT:  So the Court has reviewed the eighty-

13    eighth omnibus objection to borrower claims.  It appears as ECF

14    docket number 8859.  By the objection, the Trust seeks to

15    disallow and expunge twenty claims on the basis that the claims

16    are not based on liabilities of the debtors, and reduced two

17    claims and allow each claim in a modified reduced amount.

18         The oppositions to the objection were filed by Mr.

19    Boyd, who we've heard from; from Mohammed and Heidi Ghods, who

20    we've heard from; Kechia Island --

21         MR. WISHNEW:  That was the claim resolved

22    consensually, Your Honor.

23         THE COURT:  All right.  So Island has been resolved.

24    As to the remainder of the claims, the Court has reviewed the

25    objection.  The objection is well taken.  The objection is

**RESIDENTIAL CAPITAL, LLC, ET AL.**

31

1  sustained.  And obviously I'm not resolving today -- the Boyd

2  claim is under submission, the Court is going to enter a

3  decision or order with respect to Boyd.  And as to the Ghods,

4  I've set forth the additional opportunity for the Ghods and the

5  Trust to submit supplemental filings.

6          MR. WISHNEW:  Would Your Honor prefer or like that we

7  incorporate those submission deadlines into the form of order

8  for the eighty-eighth --

9          THE COURT:  No, I think we're clear --

10          MR. WISHNEW:  Okay.

11          THE COURT:  -- on that.  So the form of the order

12  should deal with everything other than the Ghods and Boyd.

13          MR. WISHNEW:  Yeah.

14          THE COURT:  Okay?

15          MR. WISHNEW:  Yeah, very well, Your Honor.

16          THE COURT:  All right.  Thank you very much, Mr.

17  Wishnew.

18          MR. WISHNEW:  Thank you for your time.

19          THE COURT:  All right, we're adjourned.

20      (Whereupon these proceedings were concluded at 10:37 AM)

21

22

23

24

25

32

1

2                            I N D E X

3

4                            RULINGS

5                                          PAGE      LINE

6   Letter scheduling order re Gosselin claim is    8        22

7   approved by the Court.

8   Trust's eighty-eighth objection to claims is   30        25

9   sustained as to the uncontested and resolved

10  claims.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

33

1

2                           C E R T I F I C A T I O N

3

4    I, Penina Wolicki, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9

10   _____

11

12   PENINA WOLICKI

13   AAERT Certified Electronic Transcriber CET**D-569

14

15   eScribers

16   700 West 192nd Street, Suite #607

17   New York, NY 10040

18

19   Date:  August 21, 2015

20

21

22

23

24

25