**12-UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

In re:

RESIDENTIAL CAPITAL, LLC, *et al.*,

                            Debtors.

Case No. 12-12020 (MG)

Jointly Administered

## ORDER DENYING MOTION FOR PARTIAL RECONSIDERATION FILED BY PAMELA D. LONGONI AND JEAN GAGNON

Pending before the Court is a motion for partial reconsideration (the "Motion," ECF Doc. # 9012) filed by Pamela D. Longoni ("Longoni"), individually and as the *guardian ad litem* for Lacey Longoni, and Jean M. Gagnon ("Gagnon," and together with Longoni and Lacey Longoni, the "Claimants"). The Claimants ask the Court to reconsider its ruling regarding standing in its memorandum opinion and order (the "Opinion," ECF Doc. # 8825) sustaining in part and overruling in part the ResCap Borrower Claims Trust's (the "Trust") objection (the "Objection," ECF Doc. # 8530)[1] to the Claimants' claims, claim numbers 2291, 2294, 2295, and 2357 (the "Claims"). For the reasons explained below, the Motion is **DENIED**.

The facts giving rise to the Claimants' Claims are discussed in the Opinion at length, and familiarity with those facts is assumed here. Relevant to the issue of standing, the Court previously recited the following facts:

> On September 29, 2005, the Claimants executed a promissory note (the "Note") in favor of Equifirst Corporation ("Equifirst") secured by a deed of trust (the "Deed of Trust," and together with the Note, the "Loan") on real property located at 5540 Twin Creeks Drive, Reno, Nevada (the "Property"). (Obj. ¶ 7 (citing Simmons Decl. Ex. 1).) The Deed of Trust, though dated September 29, 2005, was

---

[1] The Objection is supported by the declaration of Avery Simmons (the "Simmons Decl.," Obj. Ex. 3), an associate attorney with the law firm of Bradley Arant Boult Cummings, LLP. The Claimants filed an opposition (the "Opposition," ECF Doc. # 8654) to the Objection. The Trust thereafter filed a reply (the "Reply," ECF Doc. # 8682). The Court held a hearing on the Objection on June 4, 2015 (the "Hearing") and took the matter under submission.

> executed and notarized on October 3, 2005. (*Id.* ¶ 7 n.6.) It indicates that Equifirst is the "Lender," Mortgage Electronic Registration Systems, Inc. ("MERS") is the "nominee" for the Lender and its successors and assigns as well as the "beneficiary," and First Centennial Title Company of Nevada is the "Trustee." (Simmons Decl. Ex. 1 at 1–2.) In December 2005, the Loan was placed into a securitization trust, with Debtor Residential Funding Corporation ("RFC") acting as the master servicer. (*Id.* ¶ 7; see Reply Ex. 2 (master servicing agreement).) The assignment and assumption agreement, dated December 28, 2005 (the "Assignment and Assumption Agreement," Reply Ex. 3), indicates that: (1) RFC was the master servicer, (2) Debtor Residential Asset Mortgage Products, Inc. ("RAMP") purchased the Loan among other mortgage loans pursuant to RFC's master servicing contracts, and (3) U.S. Bank National Association ("US Bank") was the trustee for the securitization trust into which RAMP deposited the purchased loans. (*Id.*) The pooling and servicing agreement (the "PSA", Reply Ex. 2) provided that the original Note, Deed of Trust (which is registered on the MERS system), and any relevant assignment and assumption agreement (presumably the Assignment and Assumption Agreement) were to be assigned by the "Depositor" (here, RAMP) to US Bank, as trustee for the underlying securitization trust (*id.*). Debtor Homecomings Financial, LLC ("Homecomings"), and later [Debtor GMAC Mortgage. LLC ("GMACM"], acted as sub-servicer of the Loan beginning in 2005 and continuing until 2013. (Obj. ¶ 7.)

(Opinion at 4–5.) The Court further found that (1) Debtor Executive Trustee Services, LLC ("ETS"), as the agent for the beneficiary of the Deed of Trust issued a notice of default (the "Notice of Default," Simmons Decl. Ex. 6) on January 1, 2009; (2) GMACM referred the matter to ETS to commence foreclosure proceedings on February 19, 2009; (3) ETS formally recorded the Notice of Default on February 26, 2009; (4) as a result of loan modification review processes in 2009, the foreclosure proceedings, commenced by the issuance of the Notice of Default, were stayed up until July 15, 2009; and (5) a foreclosure sale was ultimately conducted on August 14, 2009. (Opinion at 5–14 (citations omitted).)

2

Based on these facts, the Court sustained the Objection with respect to the Claimants' standing argument, which was previously focused upon the theory that the Note and Deed of Trust had been "split" due to the designation of MERS as the nominee and beneficiary under the Deed of Trust and that the split was never cured by the reunion of the Note and Deed of Trust in the foreclosing entity prior to the initiation of the foreclosure proceedings against the Claimants' property. (*Id.* at 20–21 (citing Opp. ¶¶ 14–15 (citing *Edelstein v. Bank of N.Y. Mellon*, 286 P.3d 249 (Nev. 2012))).)

The Claimants now move for partial reconsideration of this standing ruling, arguing that the Court overlooked the Claimants' loan modification agreement (the "2007 Modification Agreement," Motion Ex. A; *see also* Opp. Ex. 3) executed by Longoni, Gagnon, and a representative of Homecomings in November 2007. (Motion at 3–5.) The Claimants emphasize that the 2007 Modification Agreement provides that Homecomings was the "Lender" and that it was "the legal holder and the owner of the Note and Security Instrument . . . ." (*Id.* at 3 (citing *id.* Ex. A).) According to the Claimants, in light of this language, the Note and Deed of Trust "were neither owned nor possessed by [RAMP], nor held by U.S. Bank as a trustee for that entity . . . ." (*Id.* at 3.) The Claimants argue that the 2005 documents, which include the PSA and Assignment and Assumption Agreement, should not be read to invalidate or supersede the 2007 Modification Agreement, "which explicitly described [Homecomings] as both the holder and legal owner of both the promissory note and deed of trust securing the Claimants' home." (*Id.* at 4.) The Claimants further assert that the Court erroneously relied on the 2005 documents and the Debtors' purportedly unsubstantiated arguments in making its ruling regarding standing and should therefore revisit the Opinion. (*Id.*)

3

Rule 9023 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule") incorporates Rule 59 of the Federal Rules of Civil Procedure ("FRCP"), which regulates motions for amendment of a judgment. Additionally, Bankruptcy Rule 9024 incorporates FRCP 60, which establishes the grounds for granting relief from a final order. More specifically, Bankruptcy Rule 9024 provides that a court may grant relief from an order for a clerical mistake or for "mistake, inadvertence, surprise, excusable neglect," newly-discovered evidence, fraud, misrepresentation, misconduct, where the order is void or has been satisfied, released, or discharged or "is no longer equitable, or for any other reason that justifies relief" from the order. FED. R. CIV. P. 60(a), (b).

Under these rules allowing for reconsideration, "[a] court may reconsider an earlier decision when a party can point to 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *In re Miller*, 2008 Bankr. LEXIS 3631, at *3, Case No. 07-13481 (Bankr. S.D.N.Y. Feb. 28, 2008) (citing *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004)). "Generally, motions for reconsideration are not granted unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Key Mech. Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111, 123 (2d Cir. 2003) (internal quotation marks and citation omitted). A motion may not be used "to enable a party to complete presenting his case after the court has ruled against him." *Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995). Motions for reconsideration are "generally not favored and [are] properly granted only upon a showing of exceptional circumstances." *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004) (citation omitted).

4

The Claimants' Motion fails to identify adequate grounds for relief under either FRCP 59 or 60 because the Motion does not identify any legal authority for the relief requested, intervening change in law, or newly available evidence that was not available to the Claimants before the Court ruled. Rather, the Motion relies entirely on the Claimants' assertion that this Court erred by overlooking the 2007 Modification Agreement. The Court reviewed and considered the 2007 Modification Agreement in issuing its Opinion, though the agreement is not expressly addressed. In any event, the Court finds that the 2007 Modification Agreement does not affect the Court's standing ruling.

In the Prior Opinion, this Court held that under Nevada law, a note and deed of trust may be deemed to have been "split" if MERS is designated as the nominee for the lender and as beneficiary under the Deed of Trust, but that such a split may be cured by a written instrument establishing that the Note and Deed of Trust have been reunited. (Opinion at 21 (citing *Edelstein*, 286 P.3d at 256–61).) The Court further held that the PSA and Assignment and Assumption Agreement constituted sufficient written instruments establishing the reunification of the Note and Deed of Trust in the year 2005. (*Id.*) The fact that the 2007 Modification Agreement provides that Homecomings is the holder of both the Note and Deed of Trust supports the notion that the two documents were reunited.

To the extent the Claimants assert that GMACM, which directed ETS to commence foreclosure, did not have the requisite standing because Homecomings was the holder and owner of the Note and Deed of Trust, as provided for in the 2007 Modification Agreement, the Court is not persuaded to change its prior ruling. In the Prior Opinion, the Court did not hold as a matter of law that GMACM, or ETS, had standing to initiate foreclosure proceedings. Rather, in addition to its holding that the Claimants' arguments regarding a "split" between the Note and

5

Deed of Trust failed, the Court concluded that under Nevada law, "'parties initiating foreclosure proceedings are not required to prove standing to foreclose in a court of law before initiating the foreclosure process.'" (*Id.* at 20–21 (quoting *Hakimi v. Bank of N.Y. Mellon*, No. 2:14-CV-2215, 2015 WL 2097872, at *5 (D. Nev. May 5, 2015) (citation omitted); *id.* (holding that Nevada Revised Statute section 170.080, the law governing non-judicial foreclosure, "does not require a lender to produce the original note or prove its status as a real party in interest, holder in due course, current holder of the note, nominee of the current holder of the note, or any other synonymous status as a prerequisite to non-judicial foreclosure proceedings." (citations omitted)).) The Claimants' emphasis upon standing is futile; whether or not GMACM had standing, such standing was not required to initiate foreclosure and therefore cannot give rise to a viable wrongful foreclosure claim.

For the foregoing reasons, the Claimants' Motion is **DENIED**, except to the extent that this Order clarifies the Court's prior Opinion.

**IT IS SO ORDERED.**

Dated:   August 25, 2015
         New York, New York

                                           ____/s/Martin Glenn_____
                                              MARTIN GLENN
                                          United States Bankruptcy Judge