## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re:<br><br>RESIDENTIAL CAPITAL, LLC, *et al.*,<br><br>Debtors | Case No. 12-12020 (MG)<br><br>Chapter 11<br><br>Jointly Administered |

## OBJECTION OF DECISION ONE MORTGAGE CO., LLC
## TO MOTION OF THE RESCAP LIQUIDATING TRUST FOR
## AN ORDER ENFORCING PLAN INJUNCTION AND CONFIRMATION ORDER

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...........................................................................................1

BACKGROUND ..................................................................................................................2

ARGUMENT ........................................................................................................................4

I.  RFC MAY NOT ESCAPE ITS OWN OBLIGATIONS UNDER CONTRACTS
    IT SEEKS TO ENFORCE. ........................................................................................4

II. DECISION ONE'S COUNTERCLAIM DID NOT ARISE PRIOR TO THE
    PLAN'S EFFECTIVE DATE. ....................................................................................9

CONCLUSION ...................................................................................................................14

# **TABLE OF AUTHORITIES**

### **CASES**

*Affeldt v. Westbrooke Condo Ass'n (In re Affeldt)*, 164 B.R. 628 (Bankr. D. Minn. 1994), *aff'd*, 60 F.3d 1292 (8th Cir. 1995) ................................................................. 13

*Boeing N.A. v. Ybarra, Inc. (In re Ybarra)*, 424 F.3d 1018 (9th Cir. 2005) ........................... 2, 7, 8

*Cohen v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 138 B.R. 687 (Bankr. S.D.N.Y. 1992) ................................................................. 12

*E. Air Lines, Inc. v. Ins. Co. (In re Ionosphere Clubs, Inc.)*, 85 F.3d 992 (2d Cir. 1996) ......................................................................................................................... 6

*In re Chateaugay Corp.*, 102 B.R. 335 (Bankr. S.D.N.Y. 1989) ........................................... 13

*In re Dornier Aviation (N.Am.), Inc.*, Nos. 02-82003-SSM, -82004, 2002 WL 31999222 (Bankr. E.D. Va. Dec. 18, 2002) ............................................................... 13

*In re Lear Corp.*, No. 09-14326 (ALG), 2012 WL 443951 (S.D.N.Y. Feb. 10, 2012) ......................................................................................................................... 10

*In re Residential Capital, LLC*, 508 B.R. 838 (Bankr. S.D.N.Y. 2014) ................................. 5

*In re Ruben*, 774 F.3d 1138 (7th Cir. 2014) ......................................................................... 5, 8

*In re Velo Holdings Inc.*, 501 B.R. 188 (Bankr. S.D.N.Y. 2013) ........................................... 10

*In re Vill. Rathskeller, Inc.*, 147 B.R. 665 (Bankr. S.D.N.Y. 1992) ....................................... 5

*Maple Forest Condo Ass'n v. Spencer (In re Spencer)*, 457 B.R. 601 (E.D. Mich. 2011) ............................................................................................................ 2, 11, 12

*Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re Momentum Mfg Corp.)*, 25 F.3d 1132 (2d Cir. 1994) ................................................................................... 6

*O'Loghlin v. County of Orange*, 229 F.3d 871 (9th Cir. 2000) .............................................. 10

*Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.)*, 209 F.3d 125 (2d Cir. 2000) ........................................................................................... 12

*Pearl-Phil GMT (Far E.) Ltd. v. Calpor Corp.*, 266 B.R. 575 (Bankr. S.D.N.Y. 2001) ......................................................................................................................... 12

*Pension Ben. Guar. Corp. v. LTV Corp. (In re Chateaugay Corp.)*, 87 B.R. 779 (S.D.N.Y. 1988), *aff'd*, 875 F.2d 1008 (2d Cir. 1989) .............................................. 12

*Riverwood Int'l Corp. v. Olin Corp. (In re Manville Forest Prods. Corp.)*, 225
    B.R. 862 (Bankr. S.D.N.Y. 1998) ..................................................................................12

*Shure v. State of Vermont ex rel. Vermont Industrial Development Authority (In re
    Sure-Snap Corp.)*, 983 F.2d 1015 (11th Cir. 1993) .................................................8, 11

*Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525 (9th Cir. 1998) ............................... *passim*

*United States v. LTV Corp. (In re Chateaugay Corp.)*, 944 F.2d 997 (2d Cir.
    1991) .............................................................................................................................12

*Wuthrich v. Amer Sports Winter & Outdoor Co.*, No. C-14-0871 EMC, 2015 WL
    1503424 (N.D. Cal. Apr. 1, 2015) ................................................................................12

## OTHER AUTHORITIES

11 U.S.C. § 101(5) ..................................................................................................................9

3 *Collier on Bankruptcy* § 365.03[3], at 365-28 (Alan N. Resnick & Henry I.
    Sommer, eds. 16th ed. 2015) .........................................................................................5

## PRELIMINARY STATEMENT

RFC sued Decision One six days after this Court entered its Order (the "Confirmation Order," Ch. 11 ECF Doc. # 6065) confirming the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "Plan," Ch. 11 ECF Doc. # 6065-1).[1] RFC bases its post-discharge lawsuits on "Seller Contracts" pursuant to which Defendants allegedly sold loans to RFC. In addition to denying liability and asserting defenses, Decision One counterclaimed against RFC based on the fact that RFC's post-discharge lawsuit breached the same Seller Contracts, because RFC failed to provide Decision One an opportunity to repurchase or cure the affected loans, as was required by a specially-negotiated Addendum to the Seller Contracts between Decision One and RFC. In addition, Decision One alleged that, under the terms of these Seller Contracts, if Decision One is the prevailing party, it is entitled to recover its reasonable attorneys' fees and other costs incurred in the action.

The Trust's Motion is based on the incredible proposition that RFC may sue Decision One after bankruptcy discharge for breach of contract, but that Decision One is barred from asserting against RFC provisions of the very same contract that RFC breached post-discharge by suing Decision One. In other words, the Trust asserts that the confirmed Plan preserved only part of RFC's contract with Decision One, immunizing RFC for its voluntary, post-discharge violations of the same contract. That is not the law.

The Trust's heads-I-win-tails-you-lose position is fundamentally unfair, would completely rewrite the parties' contract and, not surprisingly, is directly at odds with well-developed bankruptcy jurisprudence for at least two reasons. *First*, when a debtor, after

---

[1] References to documents filed in the Chapter 11 proceeding, Case No. 12–12020, are notated as "Ch. 11 ECF Doc. # XX."

1

discharge, voluntarily chooses to "return to the fray and to use the contract as a weapon," it is well-settled that the counterparty may rely on and invoke provisions of that same contract in response. *Boeing N.A. v. Ybarra, Inc. (In re Ybarra)*, 424 F.3d 1018, 1023 (9th Cir. 2005) (internal quotation marks omitted). It is "'perfectly just, and within the purposes of bankruptcy, to allow the same weapon to be used against'" the debtor after discharge. *Id.* (quoting *Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525, 533 (9th Cir. 1998)). *Second*, Decision One's counterclaim asserts a claim that arose post-confirmation and, thus, was not discharged by the Plan or barred by the Plan Injunction.[2] The Trust's Motion ignores a basic precept of bankruptcy law that, "[w]here a right to payment after the bankruptcy filing remains solely within the power of the debtor to avoid, the right to payment does not arise from the pre-petition agreement." *Maple Forest Condo Ass'n v. Spencer (In re Spencer)*, 457 B.R. 601, 613 (E.D. Mich. 2011). For both of these reasons, the Trust's Motion as against Decision One should be denied.

## BACKGROUND

On December 17, 2013, after its discharge in bankruptcy, RFC initiated litigation against Decision One by asserting claims for breach of contractual representations and warranties and for indemnification.[3] RFC based both claims on three Seller Contracts attached as Exhibit A to the First Amended Complaint (the "Seller Contracts"). Ahmad Decl., Ex. A (First Am. Compl., *Residential Funding Co., LLC v. Decision One Mortg. Co. LLC*, No. 14-1737, ECF Doc. # 19 (Aug. 25, 2014) ("Am. Compl.")) ¶ 18; *id.*, Ex. B (Am. Compl. Ex. A).

---

[2] *See* Motion of the ResCap Liquidating Trust for an Order Enforcing Plan Injunction and Confirmation Order ("Motion"), Ch. 11 ECF Doc. # 8947, at 7–8 (text of Discharge and Plan Injunction).

[3] This Court entered its Confirmation Order on December 11, 2013. Mot. at 7. RFC's initial Complaint against Decision One was served on December 17, 2013. *Id.* at 9.

2

These Seller Contracts, however, also contained a provision that *RFC itself breached* when it filed its post-discharge lawsuit. Specifically, each Seller Contract contained a unique contractual Addendum specially negotiated between RFC and Decision One that prohibited RFC from suing Decision One unless RFC complied with certain conditions precedent to filing suit. Each Addendum stated: "GMAC/RFC *shall not* exercise any other rights and remedies against or with respect to [Decision One] or any affected Loan *unless and until* [Decision One] *has first been afforded* the opportunity to cure or repurchase [any] affected Loan, as provided in Section 8.A.1 above." Ahmad Decl., Ex. B (Am. Compl. Ex. A) at 12 (1/8/1999 Addendum) (emphases added); *id.* at 23 (3/10/1999 Addendum) (emphases added); *id.* at 33 (6/12/2000 Addendum) (emphases added). Thus, under the Seller Contracts RFC seeks to enforce, RFC was required to give Decision One "the opportunity to cure or repurchase" any loan before exercising any right or remedy with respect to that loan. This provision is unique; we are unaware of this particular contract provision in any other contract in the scores of lawsuits that RFC has filed against correspondent lenders. In its counterclaim, Decision One alleges that RFC breached the Seller Contracts post-discharge by filing suit and seeking to exercise rights and remedies against Decision One and its loans without first giving Decision One the contractually-required opportunity to cure or repurchase the loans. RFC's post-discharge lawsuit breached the very contracts on which it has sued Decision One.

In addition, Section 12.g of each Seller Contract appended to the Amended Complaint states: "If any legal action or other proceeding is brought for the enforcement of any provision of this Agreement, or because of an alleged dispute, breach, default or misrepresentation in connection with any of the provisions of this Agreement, the prevailing party or parties shall be entitled to reasonable attorneys' fees and other costs incurred in that action or proceeding."

3

Ahmad Decl., Ex. B (Am. Compl. Ex. A) at 10; *id.* at 22; *id.* at 32.  Decision One alleges that, under the terms of the contracts on which RFC has sued, if Decision One is the prevailing party, it is entitled to recover its reasonable attorneys' fees and other costs incurred in the action. Decision One is entitled to these fees and costs regardless of whether its request is styled a counterclaim or defense under the contracts.

The contract provisions Decision One seeks to enforce were material to the parties' Agreement.[4]  Decision One specifically and separately negotiated with RFC the contractual right to have an opportunity to cure any problem with any loan or repurchase the loan before RFC exercised any right or remedy against Decision One.  RFC's lawsuit against Decision One breached that specially negotiated contract right.

To justify RFC's breach, the Trust argues that RFC may enforce Decision One's obligations under the Seller Contracts, including an allegedly "continuing" obligation, but that Decision One is barred from asserting claims based on the very same contracts for RFC's post-discharge breaches.  That highly inequitable position is contrary to well-settled bankruptcy law.

## ARGUMENT

**I.    RFC MAY NOT ESCAPE ITS OWN OBLIGATIONS UNDER CONTRACTS IT SEEKS TO ENFORCE.**

It is black-letter bankruptcy law that, when a discharged debtor chooses "to return to the fray and to use the contract as a weapon," "[i]t is perfectly just, and within the purposes of bankruptcy, to allow the same weapon to be used against him." *Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525, 533 (9th Cir. 1998).  "The balance must be struck so that post-

---

[4] *See* Ahmad Decl., Ex. C (Answer and Counterclaim of Defendant Decision One Mortgage Co., LLC to Am. Compl., *In re: RFC and ResCap Liquidating Trust Litig.*, No. 13-cv-03451 (SRN/JJK/HB), ECF Doc. # 570 (June 25, 2015) ("Counterclaim")) ¶ 4.

4

bankruptcy acts on the part of the debtor cannot be undertaken with impunity." *In re Ruben*, 774 F.3d 1138, 1141 (7th Cir. 2014).[5]

To hold otherwise would ignore basic principles of contract law. The parties bargained for and agreed to include in the Seller Contracts the provisions Decision One invokes. *See* Ahmad Decl., Ex. C (Counterclaim), ¶ 5. Those provisions were material to the parties' Agreement. *See id.* ¶ 4. Although contracting parties assume the risk that a counterparty will file for bankruptcy, they do not assume the risk that bankruptcy will allow the counterparty to rewrite a contract in a completely one-sided manner, enabling the counterparty to enforce some contract provisions after bankruptcy in direct violation of other contract provisions.[6]

With respect to executory contracts, for example, it is hornbook law that "[a]n executory contract may not be assumed in part and rejected in part" by a debtor. 3 *Collier on Bankruptcy* § 365.03[3], at 365-28 (Alan N. Resnick & Henry I. Sommer, eds. 16th ed. 2015). "The trustee must either assume the entire contract, *cum onere*, or reject the entire contract, shedding obligations as well as benefits." *Id.* (footnote omitted). Just as an executory contract is assumed "in the same shape as it existed prior to bankruptcy, with all of its benefits and burdens," *In re Vill. Rathskeller, Inc.*, 147 B.R. 665, 671 (Bankr. S.D.N.Y. 1992), so, too, RFC here cannot "retain the favorable features of a contract and reject the unfavorable ones," *id.*

---

[5] The Trust asserts that this Court has "previously . . . issue[d] an order barring the pursuing of discharged counterclaims in another forum." Mot. at 2 (citing *In re Residential Capital, LLC*, 508 B.R. 838, 851 (Bankr. S.D.N.Y. 2014)). This Court's prior rulings, however, do not address the present and very different situation, where a debtor has filed suit after discharge, the counterclaim arises after discharge as a result of the debtor filing suit, and the counterclaim asserts a breach of the very same contract on which the debtor has sued. *See, e.g., In re Residential Capital, LLC*, 508 B.R. 838 (Bankr. S.D.N.Y. 2014) (barring counterclaim based on *pre*-petition misconduct in action *initiated by non-debtor*).

[6] The Seller Contracts also barred any modification unless mutually agreed to in writing. Ahmad Decl., Ex. B (Compl. Ex. A) at 9 (§ 12(e)) (1/8/1999 Agreement); *id.* at 21 (§ 12(e)) (3/10/1999 Agreement); *id.* at 31 (§ 12(e)) (6/12/2000 Agreement).

Nor does the Plan permit such behavior. Although the Plan provides that the Trust "shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtors or the Debtors' Estates, whether arising before or after the Petition Date," Plan, art. IV.S, the Plan does not permit RFC or the Trust, post-discharge, to cherry-pick the favorable provisions of contracts it seeks to enforce and confer immunity from all remaining provisions breached by its post-discharge actions.[7] Basic principles of equity bar RFC from seeking to enforce Decision One's contractual obligations, including allegedly "continuing" obligations, without consideration of RFC's own obligations under those same contracts. As the Second Circuit has held, "equitable estoppel principles may be applied by the court to deny the debtor permission to escape its obligation[s] to perform the contract it assumed." *E. Air Lines, Inc. v. Ins. Co. (In re Ionosphere Clubs, Inc.)*, 85 F.3d 992, 1000 (2d Cir. 1996). "Based on equitable principles, once a party accepts the proceeds and benefits of a contract, that party is estopped from renouncing the burdens the contract places upon him." *Id.* at 999–1000 (internal quotation marks omitted).[8] It would be wholly inequitable to allow RFC to sue for breach of contract after discharge and, at the same time, allow it to claim that it has been discharged from its own post-discharge breaches of that very same contract.

---

[7] Contrary to RFC's argument, Mot. at 18, res judicata does not bar the counterclaim where, as here, Decision One does not seek to challenge collaterally any discharge or injunction provisions of the Plan or Confirmation Order. Rather, these provisions do not reach Decision One's counterclaim and RFC's voluntary, post-discharge conduct.

[8] The Second Circuit has "repeatedly emphasized the importance of the bankruptcy court's equitable power." *Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re Momentum Mfg Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994). "[B]ankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process." *Id.* "Section 105(a) of the Code provides that '[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code].'" *Id.* (first alteration in original) (citation omitted).

Courts regularly apply these principles to allow post-confirmation claims for attorneys' fees and costs against a discharged debtor for its post-discharge conduct, which is the relief Decision One seeks in its counterclaim. "[C]laims for attorney fees and costs incurred post-petition are not discharged where post-petition, the debtor voluntarily commences litigation or otherwise voluntarily returns to the fray." *Ybarra*, 424 F.3d at 1026 (alterations and internal quotation marks omitted). "Even if a cause of action arose pre-petition, the discharge shield cannot be used as a sword that enables a debtor to undertake risk-free litigation at others' expense." *Id.* "If the debtor chooses to enjoy his fresh start by pursuing pre-petition claims which have been exempted, he must do so at the risk of incurring the post-petition costs involved in his acts." *Id*. at 1024 (internal quotation marks omitted).

The Court of Appeals' decision in *Siegel v. Federal Home Loan Mortgage* illustrates this common sense legal precept. In *Siegel*, a debtor sued a non-debtor, summary judgment was granted in favor of the non-debtor after discharge, and the non-debtor sought its attorney's fees incurred in defending against the debtor's claims based on a pre-petition contract allowing for attorney's fees. 143 F.3d at 528, 532. The debtor argued, to no avail, that the post-discharge claim was a contingent claim that had been discharged because "it could not take effect unless [the debtor] did something." *Id*. at 532. The Ninth Circuit disagreed, finding that the award of fees against the debtor had *not* been discharged. The Court of Appeals explained that "[n]o doubt the future is always contingent, but that does not mean that a bankrupt is discharged regarding everything he might do in the future." *Id.* The debtor's "decision to pursue a whole new course of litigation made him subject to the strictures of the attorney's fee provision" in the parties' pre-discharge contract. *Id.* at 534. While "bankruptcy [] protect[s] [a debtor] from the results of his past acts, including attorney's fees associated with those acts, it did not give him

7

carte blanche to go out and commence new litigation about the contract without consequences." *Id.* When a debtor post-discharge "chose to return to the fray and to use the contract as a weapon," it "is perfectly just, and within the purposes of the bankruptcy law, to allow the same weapon to be used against him." *Id.* at 533. "[A]ny right to avoid the attorney's fees provision of his contract fell short of protecting [the debtor] when he voluntarily undertook this post-bankruptcy action." *Id.* at 534.

Other Courts of Appeals have reached the same result based on the same principles. For example, in *In re Ruben*, 774 F.3d 1138 (7th Cir. 2014), the Seventh Circuit held that a claim for an arbitrator's expenses arose post-petition, as "the assessment was a result of [the debtor's] freely chosen decision to participate in the arbitration." *Id.* at 1140. "'[E]ven if a cause of action arose pre-petition, the discharge shield cannot be used as a sword that enables a debtor to undertake risk-free post-petition litigation at others' expense.'" *Id.* at 1141 (brackets omitted) (quoting *Ybarra*, 424 F.3d at 1026).

In *Shure v. State of Vermont ex rel. Vermont Industrial Development Authority (In re Sure-Snap Corp.)*, 983 F.2d 1015 (11th Cir. 1993), the Eleventh Circuit similarly held that the costs of defending against a post-confirmation appeal initiated by a debtor were not discharged, because "[b]ankruptcy was intended to protect the debtor from the continuing costs of pre-bankruptcy acts but not to insulate the debtor from the costs of post-bankruptcy acts." *Id.* at 1018 (internal quotation marks omitted). The attorney's fees sought by the non-debtor "pursuant to the Agreement arose *after* confirmation as a direct result of [the debtor's] voluntary act of appealing the underlying adversary proceeding." *Id.* at 1019 (internal quotation marks omitted).

These basic principles fully apply to the post-discharge litigation initiated by RFC. It is black-letter law that RFC's bankruptcy, Plan confirmation, and discharge do not immunize it

8

from its own *post*-discharge actions, including actions taken in violation of provisions of the Seller Contracts RFC itself seeks to enforce post-discharge.  Here, RFC voluntarily chose after Plan confirmation "to return to the fray and to use [its] contract as a weapon" by commencing a wave of litigation against scores of correspondent lenders, including Decision One.  *Siegel*, 143 F.3d at 533.  It turns out that, among the scores of cookie-cutter lawsuits RFC rushed to file, Decision One had a unique, specially-negotiated contract that in fact barred RFC from exercising any "rights and remedies" "unless and until" Decision One "has first been afforded the opportunity to cure or repurchase [any] affected Loan."  Ahmad Decl., Ex. B (Compl. Ex. A) at 12 (1/8/1999 Addendum); *id.* at 23 (3/10/1999 Addendum); *id.* at 33 (6/12/2000 Addendum).  Decision One not only has a right to defend against RFC's claims based on RFC's prior material breach and failure to satisfy conditions precedent, but it is "perfectly just" and "within the purposes of bankruptcy" for Decision One to assert a counterclaim based on actions RFC took after discharge that violated the very same contracts on which RFC itself has sued.  *Siegel*, 143 F.3d at 533.  Tellingly, the Trust cites no case addressing this circumstance.  Multiple Courts of Appeals have affirmed the right of a counterparty, such as Decision One, to file a counterclaim in these circumstances, including specifically for the fees and costs incurred from the debtor's post-discharge conduct.  The Trust neither attempts to address nor even cites these cases its Motion.

## II.    DECISION ONE'S COUNTERCLAIM DID NOT ARISE PRIOR TO THE PLAN'S EFFECTIVE DATE.

The Trust's Motion should be denied for a second, independent reason:  Decision One's counterclaim did not arise prior to the Plan's Effective Date and, therefore, was not discharged.

The Plan and Confirmation Order provide for the discharge of "claims," as defined by Section 101(5) of the Bankruptcy Code, arising prior to the Plan's Effective Date.  Mot. at 7–8. The Trust argues that, because Decision One's counterclaim "assert[s] contractual claims that

9

arise from prepetition contracts," it is a "prepetition claim[] subject to the Discharge and Plan Injunction." *Id*. at 13. That assertion misleadingly oversimplifies matters, as not all claims arising from prepetition contracts arise "prior to the Effective Date."

In order for a claim for payment to be discharged by the Plan,[9] it must arise *prior* to the Effective Date.[10] RFC's bankruptcy does not discharge it from its own *post*-confirmation breaches of contract. Although "[b]ankruptcy policy affords debtors a fresh start," "a debtor is responsible for the consequences of its actions *after it emerges from [C]hapter 11*." *In re Lear Corp.*, No. 09-14326 (ALG), 2012 WL 443951, at *10 (S.D.N.Y. Feb. 10, 2012) (emphasis added). "[I]f bankruptcy law discharges a liability, but the debtor takes *new action and incurs a similar liability after receiving its discharge*, there may be no entitlement to an injunction against prosecution of the latter." *Id.* (emphasis added); *see also In re Velo Holdings Inc.*, 501 B.R. 188, 193 (Bankr. S.D.N.Y. 2013) (Glenn, J.) (claims for post-confirmation conduct not discharged). As one Court of Appeals observed, "[a] suit for illegal conduct occurring after discharge threatens neither the letter nor the spirit of the bankruptcy laws. A 'fresh start' means only that; it does not mean a continuing license to violate the law." *O'Loghlin v. County of Orange*, 229 F.3d 871, 875 (9th Cir. 2000). The contract breach Decision One asserts arises from RFC's actions *after* Plan confirmation, when RFC chose to sue Decision One in breach of its alleged

---

[9] Decision One's counterclaim that RFC breached the specially-negotiated Addenda seeks to enforce Decision One's contractual right not to be sued "unless and until" it "has first been afforded the opportunity to cure or repurchase [any] affected Loan." Ahmad Decl., Ex. B (Compl. Ex. A) at 12 (1/8/1999 Addendum); *id.* at 23 (3/10/1999 Addendum); *id.* at 33 (6/12/2000 Addendum). Decision One seeks its attorney's fees and costs caused by RFC's post-discharge breach of contract and as the prevailing party under the contract.

[10] The Plan became effective on December 17, 2013. Mot. at 7. That same day, RFC served Decision One with its initial Complaint. *Id.* at 9.

contracts with Decision One. Consistent with the above cases, Decision One's counterclaim constitutes a claim that did not arise prior to the Effective Date, and it is not discharged.

The Trust seeks to avoid that result by arguing that Decision One's claims are contingent claims that arose pre-petition, asserting *ipse dixit* that "Claimants' contractual claims constituted contingent prepetition claims as of the date the contracts were executed." Mot. at 15. That conclusory assertion, however, ignores both law and logic.

Decision One's counterclaim is not a contingent claim discharged by Plan confirmation where, as here, the claim is based on the debtor's own conduct after discharge, and not on events or actions of a third-party. A claim is *not* contingent when it depends on the debtor's own post-discharge actions. *Siegel*, 143 F.3d at 532. "No doubt the future is always contingent, but that does not mean that a bankrupt is discharged regarding everything he might do in the future." *Id.* "Where a right to payment after the bankruptcy filing remains solely within the power of the debtor to avoid, the right to payment *does not arise from the pre-petition agreement*." *In re Spencer*, 457 B.R. at 613 (emphasis added); *see also, e.g.*, *In re Sure-Snap*, 983 F.2d at 1019 (attorney's fees non-debtor sought "pursuant to the Agreement arose *after* confirmation as a direct result of [the debtor's] voluntary act of appealing the underlying adversary proceeding").

In *In re Spencer*, for example, the Court considered whether post-petition assessments of condominium fees constituted dischargeable pre-petition debts. The Court recognized that "[a] claim may be contingent or unmatured yet remain a claim for purposes of bankruptcy law." 457 B.R. at 606. It explained, however, that "the obligation to pay assessments . . . *arises post-petition* where it lies wholly within the power of the debtor to avoid the obligation *after* the petition date." *Id.* at 613 (first emphasis added). For contingent obligations to be discharged, "the uncertain future event must occur with some probability beyond the control of the debtor to

determine—it must be 'extrinsic.'" *Id.* "A supposed right to payment that can be avoided solely by discretionary action of the debtor is no right at all; it is merely illusory." *Id.* Thus, "[w]here a right to payment after the bankruptcy filing remains solely within the power of the debtor to avoid, the right to payment does not arise from the pre-petition agreement." *Id.*;[11] *see also Wuthrich v. Amer Sports Winter & Outdoor Co.*, No. C-14-0871 EMC, 2015 WL 1503424, at *5-6 (N.D. Cal. Apr. 1, 2015) (finding claim for payment of outstanding invoices did not constitute pre-petition contingent claim subject to discharge when "the contingency of the claim . . . did not turn on events or actions of a third party" but, instead, "turned on [the debtor's] volitional conduct . . . to incur liability . . . after the bankruptcies").[12] The Trust's Motion ignores these basic principles.

---

[11] Even cases the Trust cites acknowledge that a claim arises *post*-petition and is not discharged where "the claim arose upon the post-petition conduct of the debtor, not the creditor." *Pension Ben. Guar. Corp. v. LTV Corp. (In re Chateaugay Corp.)*, 87 B.R. 779, 798 n.14 (S.D.N.Y. 1988) (collecting cases) (cited approvingly by the Trust, Mot. at 14), *aff'd*, 875 F.2d 1008 (2d Cir. 1989). That is the case here, where RFC's own action in filing suit against Decision One after discharge breached the contracts on which it sued.

[12] The Trust cites no case holding that a pre-petition contingent claim exists where the contingency turns on the debtor's own volitional conduct after discharge. Rather, each case the Trust cites involved either (1) a contingency that turned on events or actions of a third-party, or (2) a contingency that was triggered by a debtor's conduct before discharge. *See, e.g., Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.)*, 209 F.3d 125 (2d Cir. 2000) (considering debtor's obligation to indemnify triggered by site remediation mandated by third-party Louisiana Department of Environmental Quality); *United States v. LTV Corp. (In re Chateaugay Corp.)*, 944 F.2d 997 (2d Cir. 1991) (considering response costs incurred by third-party EPA under CERCLA); *Pension Ben. Guar. Corp. v. LTV Corp. (In re Chateaugay Corp.)*, 87 B.R. 779 (S.D.N.Y. 1988) (considering debtor's obligation for termination liability payments and payments for due and unpaid minimum funding contributions triggered by debtor's termination of plans before discharge); *Pearl-Phil GMT (Far E.) Ltd. v. Calpor Corp.*, 266 B.R. 575 (Bankr. S.D.N.Y. 2001) (considering whether debtor's cancellation of purchase orders before discharge gave rise to administrative expense); *Riverwood Int'l Corp. v. Olin Corp. (In re Manville Forest Prods. Corp.)*, 225 B.R. 862 (Bankr. S.D.N.Y. 1998) (considering debtor's obligation to indemnify triggered by site remediation demanded by third-party Louisiana Department of Environmental Quality); *Cohen v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 138 B.R. 687 (Bankr. S.D.N.Y. 1992) (considering debtor's obligation to make severance payments triggered by debtor's termination of employee

12

The results and reasoning in the above cases make sense. As the Courts of Appeals have explained, public policy compels discharge when a contingency turns on the actions of a third-party. If a debtor is not discharged from such contingencies, "[the] very real threat [of liability] would stay with him and remain a millstone around his economic neck as he attempted a fresh start" such that "[t]he very purpose of bankruptcy proceedings would be cut away." *Siegel*, 143 F.3d at 533. This rationale does not apply, however, where, as here, the contingency materializes based on the debtor's own voluntary actions after discharge. Here, RFC was "freed from the untoward effects of contracts [it] had entered into;" its creditors "could not pursue [it] further, nor could anyone else." *Id.* By its own post-discharge actions, however, RFC affirmatively "chose to return to the fray and to use the contract as a weapon." *Id.* No bankruptcy purpose is served by not "allow[ing] the same weapon to be used against [RFC]." *Id.*

RFC's voluntary actions after discharge gave rise to Decision One's counterclaim; the counterclaim arose only after discharge; and the counterclaim is not subject to discharge or the Plan Injunction as a pre-petition claim.[13]

---

before discharge); *In re Chateaugay Corp.*, 102 B.R. 335 (Bankr. S.D.N.Y. 1989) (considering debtor's obligation to indemnify for failure to confer transferred tax benefits when there was no covenant whereby the debtor agreed to refrain from activities which give rise to indemnity loss); *In re Dornier Aviation (N.Am.), Inc.*, Nos. 02-82003-SSM, -82004, 2002 WL 31999222 (Bankr. E.D. Va. Dec. 18, 2002) (considering whether debtor's obligation to make severance payments, triggered by debtor's termination of employee before discharge, constituted an administrative expense); *Affeldt v. Westbrooke Condo Ass'n (In re Affeldt)*, 164 B.R. 628, 631 (Bankr. D. Minn. 1994) (considering debtor's obligation to pay post-petition condominium assessments where "Debtor did not reside on the property post-petition and it is therefore unlikely that he is responsible for the assessments"), *aff'd*, 60 F.3d 1292 (8th Cir. 1995).

[13] The Trust's request for monetary relief for bringing this Motion is baseless. As set forth above, Decision One's counterclaim is fully justified for at least two independent reasons, and the Trust's Motion neither addresses the case law and legal principles underlying these rationales nor cites a case involving the circumstances presented. Moreover, whether pled as a defense or counterclaim, the gravamen of Decision One's claim will remain: RFC committed a prior material breach of the same contract it seeks to enforce and failed to satisfy clear conditions precedent, entitling Decision One not only to judgment, but to attorney's fees and costs as the

## CONCLUSION

For the foregoing reasons, Decision One respectfully requests that the Court deny the Trust's Motion for an Order Enforcing Plan Injunction and Confirmation Order as against Decision One.[14]

Dated: August 31, 2015,                    Respectfully submitted,

*/s/ Matthew V. Johnson*
David S. Blatt (*pro hac vice*)
R. Hackney Wiegmann (*pro hac vice*)
Matthew V. Johnson (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone:    (202) 434-5000
Facsimile:    (202) 434-5029
dblatt@wc.com
hwiegmann@wc.com
mjohnson@wc.com

*Counsel for Defendant Decision One Mortgage Company, LLC*

---

prevailing party under the contracts in suit. The Trust's Motion as to Decision One is not only meritless, but it will have no effect on the legal arguments that will be made or the evidence that will be adduced. Indeed, the Motion only underscores how, with respect to Decision One, RFC's cookie-cutter litigation strategy depends on ignoring individualized, case-specific defenses that are outcome-dispositive.

[14] Decision One hereby joins in any other argument asserted by any of the other Defendants, to the extent applicable, in response to the Trust's Motion.

**NOTICE**

Pursuant to the Order Under Bankruptcy Code Sections 102(1), 105(a) and 105(d), Bankruptcy Rules 1015(c), 2002(m) and 9007 and Local Bankruptcy Rule 2002-2 Establishing Certain Notice, Case Management and Administrative Procedures, Ch. 11 ECF Doc. # 141 (the "Case Management Order"), entered on May 23, 2012, notice of this Objection has been given to the parties identified on the Special Service List and the General Service List (as such terms are defined in the Case Management Order), and Claimants' counsel. Decision One submits that no further notice of the Objection is necessary.