**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Case No.: 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Chapter 11 |
| Debtors. | Jointly Administered |

**HONOR BANK'S OBJECTION TO MOTION
BY THE RESCAP LIQUIDATING TRUST FOR
AN ORDER ENFORCING PLAN INJUNCTION
AND CONFIRMATION ORDER**

## **TABLE OF CONTENTS**

**Page**

HONOR BANK PRELIMINARY STATEMENT …….….………..………….………1

HONOR BANK BACKGROUND ……………….….….……………..…………2

LEGAL ARGUMENT ……………….……………………………….…………….5

RLT'S LEGAL ARGUMENT WILL LEAD TO ABSURD RESULTS ….…………....7

JOINDER IN DECISION ONE'S/PHH's OPPOSITIONS TO MOTION
TO ENJOIN ……………….……………………………………………………....8

CONCLUSION ……………….…………………………………………….....…8

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*In re All Media Properties, Inc.,* 5 B.R. 126,133 (Bkrtcy. S.D. Tex. 1980)
   aff'd mem. 646 F.2d 193 (5th Cir.) ……………………………………………..…...7

*In re Chateaugay* at 1004 …………………………………………….................7

*In re Dornier Aviation,* 2002 WL 31999222 (Bkrtcy. E.D. Va. 2002) ……………........6

*In re Johns Manville Forest Products Corp.* at 128-129 ……………..……….……….....7

*In re Manville Forest Products Corp.,* 209 F3d 125, 128, 129 (2nd Cir. 2000) …………..6

*In re National Gypsum Co.,* 139 B.R. 397, 404 (N.D. Tex. 1992) ………………………..6

*LTV Steel Co. v. Shalala*, 53 F.3d 478, 497 (2nd Cir.) 1995) ………………………………6

*Martinez v. USAA Federal Savings Bank, et al.*, Case No. 14-16349 ………………...…8

**HONOR BANK PRELIMINARY STATEMENT**

ResCap Liquidating Trust ("RLT") sued The Honor State Bank, now known as Honor Bank ("Honor") on May 13, 2014, by filing a Complaint against Honor in the United States Bankruptcy Court for the Southern District of New York ("SDNY"). RLT based its post confirmation lawsuit on alleged breaches of Client Contracts and Client Guides which governed a multitude of loans sold by Honor to GMAC/RFC up to, and including, 2007. The Complaint was subsequently amended on July 24, 2014.

The case was subsequently transferred to the District of Minnesota in June 2015. Honor Bank subsequently submitted an answer and asserted counterclaims against RLT asserting that RLT had breached the terms and conditions of the Client Contracts and the Client Guides. More specifically, Honor asserted that RLT had failed to initiate its lawsuit against Honor in the state of Minnesota, as mandated by the Client Contracts, and that RLT had failed to abide by the terms and conditions of the underlying Client Guides which required RLT to provide Honor with notice of a repurchase demand which would be followed by either one of three events: (a) Honor could agree to repurchase a loan file on terms mutually acceptable to Honor and RLT; (b) Honor could offer to provide a substitute loan in place of the repurchase loan; or (c) Honor could file an appeal requesting reconsideration of the repurchase demand in the first instance. RLT filed its lawsuit prior to any of the foregoing being offered or noticed to Honor.

Pursuant to the RLT's theory of this case, it is permitted to commence any action it sees fit to maintain against Honor, but Honor is prohibited from asserting any claims (or counterclaims) arising under the very same Client Contracts and the Client Guides upon

1

which RLT relies due to the alleged injunction language contained in the order confirming the Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, at al. and the Official Committee of Unsecured Creditors (*In re Residential Cap., LLC,* 12-12020 (MG), ECF No. 6065 (S.D.N.Y.). RLT fails to provide support for its position being taken on this motion, fails to identify what claim Honor may have had when the underlying bankruptcy case was filed, and fails to account for the ridiculous results had Honor filed a "contingent/unliquidated" proof of claim as suggested by RLT.

## HONOR BANK BACKGROUND

Honor and GMAC/RFC (now subsumed by RLT) entered into a Client Contract dated November 16, 2001, and then again on April 29, 2002 (collectively "Contract"). Stewart Decl., Ex. 1.

From time to time, Honor sold loans to GMAC/RFC, pursuant to the Contract and other agreements between Honor and RFC, including, but not limited to Client Guides, exceptions, underwriting programs developed by GMAC/RFC, variances, and other conditions as may have been negotiated from time to time during the parties' relationship.

RFC, and subsequently RLT, had a duty to pursue claims, controversies, and disputes arising under, or related to, the Contract only in the state of Minnesota.

In pertinent part, the Contract provides at paragraph 12:

> The parties submit to the jurisdiction of any state or federal court located in Hennepin County, Minnesota, and the parties irrevocably agree that all claims may be heard or determined in such state or federal court. The parties waive the defense of an inconvenient forum and any other substantive or procedural rights or remedies it may have in any such forum. The parties further agree that a final judgment in any action between the parties shall be conclusive and may be

2

>enforced in any other jurisdiction than that set forth above. The parties further agree not to institute any legal actions or proceedings against the other party . . . arising out of or relating to this Contract in any Court other than as hereinabove specified in this paragraph 12.

Stewart Decl., Ex. 1 at page 3, ¶12.

Honor and RFC also operated under Client Guides, which were amended from time to time, throughout the parties' ongoing business relationship. For one example of a Client Guide see Stewart Decl. at Ex.2.

The Client Guide, as that term has been used in RLT's Amended Complaint, and as collectively used in Honor's Amended Counterclaim, required GMAC/RFC to provide Honor with prompt notice and the opportunity to respond to any purported mortgage loan defects and/or alleged breaches arising under the Client Guide in the form of either a repurchase, substituted loan, or filing an appeal of RLT's initial notice of alleged breach.

Pursuant to the Client Guide, Section A210 (titled "Repurchase Obligations") Honor Bank and GMAC/RFC were obligated as follows:

>**(A) Repurchase Obligations**
>
>If GMAC-RFC determines that an **Event of Default** has occurred with respect to a specific Loan, the Client agrees to repurchase the Loan and its servicing (if the Loan was sold servicing released) within 30 days of receiving a repurchase letter or other written notification from GMAC-RFC.

RFC also agreed at Section A210 (F) (titled "Substitution") to the following:

>**(F) Substitution**
>
>Instead of requiring the Client to repurchase a Loan as provided above, GMAC-RFC, at its discretion, may allow the Client to Substitute another Loan satisfactory to GMAC-RFC in place of the

3

> original Loan, within 10 days notification by GMAC-RFC, unless otherwise notified. . . .
>
> Unless permitted a greater period of time to cure as set forth in Section 2.04, [Honor] shall have a period of 60 days from the earlier of either discovery by or receipt of written notice from [RFC] to [Honor] of any breach of any of the representations and warranties contained in Sections 3.01, 3.02 or 3.03 that materially and adversely affects the interest of [RFC] . . . If such breach can ultimately be cured but is not reasonably expected to be cured within the 60 day period (other than an early payment default), then [Honor] shall have such additional time, if any, as is reasonably determined by [RFC] to cure such breach provided that the Mortgage Loan affected by such breach is not in default, [Honor] has commenced curing or correcting such breach and is diligently pursuing same.

Pursuant the Client Guide RFC further agreed at Section A210 (H) (titled "Notice and Appeal") that:

> The Client may appeal GMAC-RFC's decision by providing any additional information or documentation it believes may affect GMAC-RFC's determination. . . .
>
> Such information and documentation must be received within 30 days after the Client's receipt of a repurchase letter or similar written notification from GMAC-RFC. GMAC-RFC will review all appeals and advise the Client in writing of the appeal decision. GMAC-RFC will in its sole discretion determine the validity of any appeal filed by the Client. If GMAC-RFC's decision remains firm following an appeal, the Client shall repurchase the Loan and its servicing (if the Loan was sold servicing released) within 10 days of notification by GMAC-RFC, in writing, that the appeal has been denied.
>
> . . . terminate all rights and obligations of [Honor] under this Agreement[.]

Stewart Decl., Ex. 2 at pp. 29 and 33, Sec. A, F, and H. The provisions cited above, constituted material terms and conditions of the parties' agreements.

4

RLT's Complaint was premised in part upon loans that were originated and sold pursuant to the terms and conditions of the Contract and in part upon loans subject to the Client Guide.

On July 24, 2014, Plaintiff filed its Amended Complaint in the SDNY. ECF Doc. No. 21.

After the initial Complaint and the Amended Complaint were improperly filed in the SDNY, in apposite of the mandatory forum-selection clause cited above, Honor joined in a motion, together with other similarly situated defendants that had been sued by RLT in the SDNY, and filed a motion to withdraw the bankrupcy reference and for the transfer of the case to the proper venue, which was in the State of Minnesota.

In spite of the strict mandates set forth in the Contract governing venue for claims, controversies, actions, and disputes arising thereunder in the state of Minnesota, Plaintiff initially strenuously opposed the motion, even though initiating the action in the SDNY was a clear breach of the Contract. Plaintiff subsequently relented and stipulated to transfer this case to the District of Minnesota.

Honor thereafter filed its answer to the Second Amended Complaint and asserted affirmative counterclaims against RLT arising from its failure to abide by the terms and conditions of the Client Contract and Client Guide.

## LEGAL ARGUMENT

**Honor did not possess a claim that would have entitled it to file a proof of claim**

RLT asserts that Honor should have filed a contingent claim with this Court because "Claimants' contractual claims constituted contingent prepetition claims as of the date the

5

contracts were executed." This presupposes that Honor had a "claim" to assert at the time the bankruptcy was filed. Under any definition of "claim" Honor had none on the petition date. Honor had no claim until May 13, 2014, well after the claims period had expired and after confirmation of the Debtor's plan. A claim has been broadly defined as "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *In re Dornier Aviation,* 2002 WL 31999222 (Bkrtcy. E.D. Va. 2002), citing 11 U.S.C. Sec. 101(5). "A valid pre-petition claim requires two elements. *See LTV Steel Co. v. Shalala, (In re Chateaugay Corp.),* 53 F.3d 478, 497 (2nd Cir.) 1995). First the claimant must possess a right to payment. Second, that right must have arisen prior to the filing of the bankruptcy petition." *In re Manville Forest Products Corp.,* 209 F3d 125, 128 (2nd Cir. 2000). A claim arises pre-petition if "the relationship between the debtor and the creditor contained all of the elements necessary to give rise to a legal obligation-'a right to payment'-under the relevant non-bankruptcy law." *In re National Gypsum Co.,* 139 B.R. 397, 404 (N.D. Tex. 1992); *In re Manville Forest Products Corp.,* at 129.

As stressed in the preceding cases, at the heart of a cognizable claim is a right to payment. Honor had no right to payment from either RLT (as successor to GMAC/RFC) at the time the underlying bankruptcy case was filed, when the claims bar date occurred, or at any time prior to confirmation of the operative Plan. Honor's claim did not exist until May 13, 2014 when RLT breached the Client Contract and filed suit in the SDNY.

Moreover, "contingent claims refer to obligations that will become due upon the happening of a future event that was within the actual contemplation of the parties at the

6

time the original relationship between the parties was created." *In re Chateaugay* at 1004; *In re Johns Manville Forest Products Corp.* at 128-129; see also *In re All Media Properties, Inc.,* 5 B.R. 126,133 (Bkrtcy. S.D. Tex. 1980) aff'd mem. 646 F.2d 193 (5th Cir.). Certainly at the time the parties entered into their relationship Honor could not have contemplated that RLT would breach the underlying contracts at some unknowable time in the future or that RLT would initiate an action somewhere other than the state of Minnesota.

**RLT's legal argument will lead to absurd results**

Had Honor filed a claim, as suggested by RLT in its motion, the following scenario would have played out: (a) Honor files a proof of claim with the SDNY Bankruptcy Court in a timely fashion; (b) the proof of claim asserts no claim amount because there is no right to payment at this time; (c) the proof of claim cannot describe the alleged debt because there is no accrual of liability at this time; (d) the Debtor objects to the proof of claim given that there is no claim amount nor can Honor delineate the basis for the claim other than RLT might at some unknown time in the future breach the underlying Client Guide and Client Contract; and (e) the claim is dismissed and Honor hopefully avoids being sanctioned by the Court.

RLT's arguments could lead to other incongruous results. RLT could liquidate loans and foreclose mortgages with impunity while violating federal and state consumer protection laws throughout the process. Homeowners might have claims for wrongful foreclosures and could initiate claims against each and every party originating, selling, buying, and servicing the underlying note and mortgage. Under RLT's logic, no party could assert a claim against it, regardless of its reckless behavior, including the homeowner (who

7

should have filed a proof of claim in the event RLT at some unknown time in the future might violate state and federal laws or otherwise proceed with a wrongful foreclosure) or the originator, servicer, broker, or seller. (See *Martinez v. USAA Federal Savings Bank, et al.*, Case No. 14-16349 for an example of the multitude of parties sued by the homeowner). The plan injunction should not be enforced as suggested by RLT in this motion.

### Joinder in Decision One's/PHH's Oppositions to Motion to Enjoin

In order to avoid overlapping and repetitive legal arguments raised by other parties opposing this motion Honor incorporates herein by reference Decision One's objections that: (a) RLT may not escape its own obligations under contracts it seeks to enforce; and (b) RLT's motion should be denied because the objecting parties' counterclaims did not arise prior to confirmation of the plan, and PHH's objection that the motion should be denied because pleading in the alternative is consistent with the civil rules.

### CONCLUSION

Pursuant to the foregoing arguments RLT/RFC's Motion for an Order Enforcing the Plan Injunction and Confirmation Order as against Honor Bank should be denied.

Respectfully submitted,

ANASTASI JELLUM, P.A.

/s/T. Chris Stewart
T. Chris Stewart *(pro hac vice)*
14985 60th Street North
Stillwater, MN  55082
Telephone: (651) 439-2951
Facsimile: (651) 439-1417
tchris@aj-law.com

8

ALWARD FISHER
RICE ROWE & GRAF PLC
Susan Jill Rice (*pro hac vice*)
202 East State Street. Suite 100
Traverse City, Michigan 49684
Telephone: (231) 346-5400
Facsimile: (231) 941-9679
jrice@nmichlaw.com

ATTORNEYS FOR DEFENDANT,
HONOR BANK

9