# Exhibit 10

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: RFC and ResCap Liquidating Trust Litigation | Court File No. 13-cv-3451 (SRN/JJK/HB) |
| *This document relates to:*<br><br>ResCap Liquidating Trust v. PHH Mortgage Corp., No. 14-cv-4701 (JRT) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT PHH MORTGAGE CORPORATION'S MOTION TO DISMISS**

Plaintiff ResCap Liquidating Trust (the "Trust"), as successor to Residential Funding Company, LLC ("RFC"), respectfully submits this memorandum of law in opposition to Defendant PHH Mortgage Corporation's ("PHH") Motion to Dismiss Plaintiff's First Amended Complaint ("FAC").[1]

## PRELIMINARY STATEMENT

PHH's motion makes three flawed arguments. *First*, PHH argues that the FAC's allegations of breaches of RFC's "Client Guide" cannot support Plaintiff's claims under the parties' "Flow Agreement." PHH misapprehends Plaintiff's claims: The FAC pleads breaches of the Flow Agreement under the terms of the Flow Agreement itself. *Second*, PHH argues that the FAC does not plead satisfaction of a condition precedent. PHH's argument contradicts Federal Rule of Civil Procedure 9(c) and has been rejected by every court to consider it. *Third*, PHH argues that the FAC does not attach a contract governing the parties' transactions prior to May 13, 1998. But Plaintiff had no obligation to attach a copy of the contract—which the FAC embraces in any event—and has provided a copy with this opposition, eliminating conceivable issue. PHH's motion should be denied.

## BACKGROUND

From April 24, 1994 to September 27, 2006, PHH sold RFC over 3,500 mortgage loans with a combined principal balance of more than $945 million. FAC ¶ 4; *see id.* Exs. C-1, C-2 (listing dates). Three contracts governed these transactions.

---

[1] Citations to the FAC and accompanying exhibits are to *Trust v. PHH*, No. 14-cv-4701 (D. Minn. filed Apr. 17, 2015), ECF No. 51.

1

*The 1993 Seller/Servicer Contract*

  *First*, the parties executed a Seller/Servicer Contract on or about November 22, 1993. A copy of that contract, which has been produced to PHH in discovery, is attached as Exhibit A to the accompanying Declaration of Isaac Nesser ("Nesser Decl.").[2] The Seller/Servicer Contract expressly incorporates the "representations, warranties and covenants" in RFC's Seller Guide. *See* Nesser Decl. Ex. A §§ 1, 3.b. A copy of the Seller Guide effective December 1, 1993 is attached as Exhibit C to the Nesser Declaration. The Seller/Servicer Contract, through the incorporated Seller Guide, sets forth specific representations, warranties, and covenants regarding the quality and characteristics of the loans PHH sold to RFC, including, for example, that each loan was "of investment quality" and had been "prudently originated." Nesser Decl. Ex. C § 251(s). The Seller Guide also establishes that it is an "Event of Seller Default" if PHH, the borrower, "or any other person or entity involved in the Loan transaction or in the underwriting or documentation thereof … has made any false representation and/or has failed to provide information that is true, complete and accurate in connection with such transaction, whether or not [PHH] was a party to or had knowledge of such

---

  [2]  The Seller/Servicer Contract is signed by RFC and "PHH US Mortgage Corporation," which is one of PHH's many previous names. *See* Nesser Decl. Ex B (New Jersey Department of Treasury certificate of good standing listing PHH Mortgage Corporation's previous and alternate names as of September 19, 2007); *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) ("[On] a Rule 12(b)(6) motion, courts additionally consider … items subject to judicial notice [and] matters of public record …."); *see also, e.g.*, *Williams v. Gyrus ACMI, LP*, 2014 WL 4771667, at *3 (N.D. Cal. Sept. 24, 2014) (holding that a state-issued certificate of good standing for a business "is a public record" properly given judicial notice).

2

misrepresentation or incorrect information." *Id.* § 260(3)-(4). Between April 24, 1994 and May 13, 1998, PHH sold RFC at least 1,684 loans. *See* Mem. of Law in Support of PHH's Mot. to Dismiss ("Br.") 4; FAC Exs. C-1, C-2.

***The 1998 Client Contract***

*Second*, on or about May 13, 1998, the parties executed a Client Contract, a copy of which is attached as pages 2-4 of Exhibit A to the FAC.[3] Aside from the name, the Client Contract is substantially identical to the Seller/Servicer Contract. *Compare* FAC Ex. A at 2-4, *with* Nesser Decl. Ex. A. Like the Seller/Servicer Contract, the Client Contract expressly incorporates into its terms the "representations, warranties and covenants" set forth in RFC's Client Guide. FAC Ex. A at 2-3 (Client Contract §§ 1, 3.b). A copy of the March 13, 2006 edition of the Client Guide, and exemplary excerpts of other relevant editions of the Client Guide, are attached as Exhibits B-1 through B-31 to the FAC. *See* FAC ¶ 18. The Client Guide is substantially similar to its predecessor the Seller Guide, and likewise sets forth specific representations, warranties, and covenants regarding the loans PHH sold to RFC, including, for example, that each loan was "of investment quality" and had been "prudently originated," and that "[a]ll information relating to each Loan … [was] true, complete and accurate." *See* FAC Ex. B § A202(A), (T). *Compare generally id.*, *with* Nesser Decl. Ex. C. Other examples of representations, warranties, and covenants that PHH made in the Client Guide are quoted

---

[3] The Client Contract is signed by RFC and "Cendant Mortgage," which PHH acknowledges is one of its previous names. *See* Br. 3; *see also supra* note 2.

3

in paragraph 24 of the FAC. Between May 13, 1998 and September 1, 2006, PHH sold RFC at least 1,352 loans. *See* Br. 4; FAC Exs. C-1, C-2.

*The 2006 Flow Agreement*

*Third*, the parties executed a Mortgage Loan Flow Purchase, Sale & Servicing Agreement ("Flow Agreement") on or about September 1, 2006, a copy of which is attached as pages 14-127 of Exhibit A to the FAC. Unlike the Seller/Servicer Contract and the Client Contract, each of which relies on an incorporated Guide to set forth "representations, warranties and covenants" regarding the loans PHH sold to RFC, the Flow Agreement *itself* contains such representations, warranties, and covenants. *See, e.g.*, FAC Ex. A at 43-54 (Flow Agreement § 3.03).[4] Examples of the Flow Agreement's representations, warranties and covenants are quoted in paragraph 25 of the FAC, including that "[n]o error or omission, misrepresentation, negligence or fraud in respect of [each] Mortgage Loan has taken place on the part of any Person in connection with [its] origination," and that "all information" provided by PHH to RFC regarding each loan was "true, correct and complete in all material respects." FAC ¶ 25(c) (quoting Flow Agreement § 3.03(10)). Between September 1, 2006 and September 27, 2006, PHH sold RFC at least 514 loans. *See* Br. 4; FAC Exs. C-1, C-2.

---

[4] The Flow Agreement incorporates provisions of PHH's Investor Manual (the "PHH Guide"). *See* FAC Ex. A at 20 (Flow Agreement Preliminary Statement ¶ 3) (referencing "applicable provisions of the current PHH Guide"); *id.* at 49 (Flow Agreement § 3.03(27)) (representing and warranting that each subject loan "was underwritten in accordance with the PHH Guide"). A copy of the PHH Guide dated March 9, 2007 is attached as Exhibit D to the Nesser Declaration. The PHH Guide bears the name "PHH Mortgage Services," which is one of PHH's alternate names. *See supra* note 2.

4

RFC later suffered enormous liabilities and losses as a result of PHH's pervasive breaches of the representations, warranties, and covenants it made to RFC, for which Plaintiff is now seeking breach of contract damages and contractual indemnification. *See* FAC ¶¶ 37-80. PHH has joined two other motions to dismiss brought by subsets of the defendants in this consolidated proceeding. *See* ECF Nos. 265 (joining Decision One Mortgage Company, LLC's Motion to Dismiss), 266 (Transfer Defendants' Collective Motion to Dismiss). Those motions should be denied for the reasons stated in Plaintiff's separately-filed oppositions and at the related hearing. *See* ECF Nos. 223 (opposing Decision One's motion), 351 (opposing Transfer Defendants' motion), 359 (transcript of oral argument on Decision One's motion). PHH has independently filed this third motion to dismiss to raise additional issues pertaining solely to PHH.

## ARGUMENT

PHH argues that portions of Plaintiff's claims should be dismissed for three reasons, each of which rests on a supposed contradiction between the allegations in the FAC and the exhibits attached thereto. No such contradictions exist. Moreover, "all reasonable inferences" are to be construed "in favor of the plaintiff" on a Rule 12 motion. *Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013). PHH's attempt to write defects into the FAC should be rejected and its motion denied.

5

## I. THE COMPLAINT STATES ACTIONABLE CLAIMS AS TO LOANS SOLD ON OR AFTER SEPTEMBER 1, 2006

### A. The Flow Agreement Claims Do Not Depend On The Client Guide

PHH first argues that Plaintiff's claims should be dismissed as to at least 514 loans sold on or after September 1, 2006. PHH bases this argument on the mistaken belief that Plaintiff's claims under the *Flow Agreement* rely on the FAC's allegations concerning the *Client Guide*.[5] Br. 3, 10-11. PHH contends that the Flow Agreement cannot incorporate the Client Guide because it incorporates the PHH Guide instead. *Id.* But Plaintiff's claims under the Flow Agreement are fully supported by allegations of breaches *of the Flow Agreement*, not of the Client Guide or the PHH Guide.

For example, the FAC spends nearly two single-spaced pages quoting eight specific representations and warranties PHH made in the Flow Agreement, including that there was no "error or omission, misrepresentation, negligence or fraud" in connection with the origination of each loan; that all information PHH provided to RFC about the loans was "true, correct and complete;" and that each loan was originated in compliance with applicable "federal, state or local law." FAC ¶ 25(b)-(c) (quoting Flow Agreement § 3.03(9)-(10)). The FAC further specifically and separately identifies provisions of the Flow Agreement—as distinct from the Client Guide—that define an "event of default" (¶ 27 (quoting Flow Agreement § 10.01(2)), provide for the survival of PHH's

---

[5] PHH has not established that all loans it sold to RFC on or after September 1, 2006 were sold pursuant to the Flow Agreement. Indeed, PHH appears to actively *avoid* making any affirmative statement to that effect. *See, e.g.*, Br. 4 ("Approximately 514 of the mortgage loans … were acquired on or after September 1, 2006, the date of the Flow Agreement ….").

6

representations and warranties (¶ 29 (quoting Flow Agreement § 3.04)), and establish Plaintiff's remedies for PHH's breaches (¶¶ 30, 32 (quoting Flow Agreement § 9.01)).

The FAC then pleads breaches of the Flow Agreement, including for example the results of Plaintiff's analysis of PHH's loans with respect to certain of PHH's representations and warranties, using an automated-valuation model ("AVM"):

- "[Plaintiff's] AVM review centered on three of PHH's core appraisal representations: (i) the market value of the mortgaged premises is at least equal to the appraised value stated in the loan appraisal (Client Guide A202(T), *Flow Agreement 3.03(28)*); (ii) no fraud or misrepresentation by the appraiser occurred in the origination of the loans and all information and documents provided to RFC in connection with the loans are complete and accurate (Client Guide A202(KK), *Flow Agreement 3.03(10)*); and (iii) all data provided by PHH to RFC relating to any loan are true and complete (Client Guide A202(A), *Flow Agreement 3.03(1)*)." *Id.* ¶ 42 (emphasis added).

- "[The review's] findings establish breaches of at least the following representations: … *(1), (28), and (10) of Section 3.03 of the Flow Agreement*, which provide that all information delivered with respect to each loan was true[,] correct and accurate, that the fair market value of the property was greater than the appraisal, and that there was no fraud or misrepresentation on the part of any appraiser. The AVM review demonstrates that defects are pervasive throughout the pool of loans PHH sold to RFC." *Id.* ¶ 44 (emphasis added).

The FAC also reports the results of Plaintiff's analysis of the owner-occupancy status of the properties securing the loans, which revealed additional breaches of specific Flow Agreement representations and warranties. *Id.* ¶ 45-47 (quoting Flow Agreement § 3.03(1), (10), (28)). Additionally, the FAC provides specific illustrative examples of loans that were found to have breached PHH's representations and warranties in the Flow Agreement. FAC ¶ 52(a) (detailing how Loan No. 10945407 breached Flow Agreement § 3.03(1), (10), and (28)); *id.* ¶ 52(c) (detailing how Loan No. 10945719 breached Flow

7

Agreement § 3.03(1), (1)). Finally, the FAC contains broad allegations of PHH's pervasive breaches of the parties' "Agreement," defined to include the Flow Agreement. *See, e.g.*, *id.* ¶ 39 ("PHH materially breached its extensive contractual representations and warranties by delivering loans that … did not meet the representations and warranties made as to those loans …."); *id.* ¶ 85 ("Defendant materially breached its representations and warranties to RFC inasmuch as the mortgage loans materially did not comply with the representations and warranties."); *see also id.* ¶¶ 55-80 (cataloguing RFC's losses and liabilities incurred as a result of PHH's breaches).

Against all of the complaint's specific allegations of breaches of the Flow Agreement, PHH points to a paragraph in the complaint that defines the Client Contract, Client Guide, and Flow Agreement collectively as the parties' "Agreement" and alleges that those documents collectively "set the standards" to which the loans "were expected to adhere." *See id.* ¶ 18. Contrary to PHH's characterization, that definition does not allege that the Flow Agreement incorporates the Client Guide; it merely establishes that the standards applicable to any loan can be found within the identified documents, defined collectively for ease of reference. The fact that the Flow Agreement incorporates the PHH Investor Manual ("PHH Guide") does not conflict with any allegation in the complaint.[6] *See* Br. 10-11.

---

[6] Because the FAC pleads breaches of the Flow Agreement irrespective of either the PHH Guide or the Client Guide, PHH's cited authorities are inapposite. For example, in *Bohan v. Honeywell International, Inc.*, the Court held that the plaintiffs' stock option plan paid out only if Honeywell merged with General Electric, and not merely upon shareholder approval of the merger, as plaintiffs argued. 2002 WL 31767786, at *2 (D.

8

PHH further mistakenly protests that Plaintiff did not "plead a breach of any provisions of the PHH Guide." Br. 11. Plaintiff need not plead any breach of the PHH Guide, because—as discussed at length above—the Flow Agreement itself sets forth the terms upon which Plaintiff is suing, as the FAC makes plain. To the extent PHH's breaches of the Flow Agreement implicate the PHH Guide, the FAC necessarily pleads breaches of the PHH Guide in conjunction with the Flow Agreement. Whether PHH *also* breached independently actionable provisions of the PHH Guide is irrelevant.

PHH also notes "Plaintiff did not append any version of the PHH Guide to its Amended Complaint." Br. 11. This too is irrelevant. Even if Plaintiff were somehow required to plead breaches of the PHH Guide, "there is no requirement that the pleader attach a copy of the writing on which his claim for relief or defense is based." 5A Charles A. Wright et al., Fed. Prac. & Proc. § 1327 & n.6 (3d ed. 2014) (collecting cases); *see, e.g.*, *Cmty. Med. Ctr. Healthcare Sys. v. Ovation Pharm., Inc.*, 2009 WL 3336110, at *1 (D. Minn. Oct. 15, 2009) (considering assignment referenced in but not attached to complaint in denying motion to dismiss). In any event, the Flow Agreement *is* attached to the FAC, and PHH itself argues that the Flow Agreement "expressly

---

Minn. Dec. 9, 2002) (cited throughout PHH's brief as "*Badgerow v. Honeywell*"). Because it was an undisputed matter of public record that Honeywell and General Electric did not merge, the court dismissed the plaintiffs' claim seeking the payout. *Id.* at *1-2 & n.3; *see also Amidax Trading Corp.*, 671 F.3d 140, 145-47 (2d Cir. 2011) (plaintiff's "allegation that [defendant]'s entire database was handed over to the government" was not plausible because the exhibits to the complaint contradicted it, save only "a single conclusory statement from an anonymous source") (cited at Br. 6-7). Similarly, the bankruptcy plan in *In re President Casinos, Inc.*, neither obligated nor authorized the trustee to manage other entities' performance, thus negating the plaintiff's claim to the contrary. 502 B.R. 841, 849-50 (Bankr. E.D. Mo. 2013) (cited at Br. 10).

9

adopts" and "incorporate[s]" the PHH Guide. Br. 10-11; *see Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (pleadings include "exhibits attached to the complaint" and "matters incorporated by reference or integral to the claim") (cited at Br. 10). The PHH Guide should therefore be considered part of the FAC.

### B. The Complaint Sufficiently Pleads Compliance With Any Condition Precedent

PHH next argues that Plaintiff did not plead it provided PHH with notice and an opportunity to cure breaches of the Flow Agreement, which PHH contends Plaintiff was required to do as a condition precedent to suit. Br. 3, 11-12. This is mistaken.

*First*, the FAC expressly alleges that "RFC at all times performed all of its obligations to PHH, if any, under the Agreement, and *all conditions precedent …, if any, have been satisfied*." FAC ¶ 36 (emphasis added); *accord id.* ¶ 84. PHH contends that Plaintiff's pleading obligation "cannot be met by [its] unsupported conclusory assertion of satisfaction" (Br. 3), but that is incorrect: Federal Rule of Civil Procedure 9(c) states that "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed." This Court, like every other court that has considered the issue in Plaintiff's similar actions, has held identical allegations sufficient. *See, e.g.*, *RFC v. Acad. Mortg. Corp.*, 2014 WL 5860566, at *10 (D. Minn. Nov. 12, 2014) (Nelson, J.) ("RFC's general allegation that it 'complied with all conditions precedent, if any, and all of its obligations under the Agreement' is adequate."); *RFC v. Mortg. Outlet, Inc.*, 2014 WL 4954645, at *7 (D. Minn. Oct. 1, 2014); *RFC v. Broadview*

10

*Mortg. Corp.*, 2014 WL 4104819, at *8 (D. Minn. Aug. 19, 2014); *RFC v. Gateway Bank, F.S.B.*, 2014 WL 3952321, at *9 (D. Minn. Aug. 13, 2014); *RFC v. Mortg. Access Corp.*, 2014 WL 3577403, at *4 (D. Minn. July 21, 2014); *In re ResCap Liquidating Trust Mortg. Purchase Litig.*, 524 B.R. 563, 584 & n.18 (Bankr. S.D.N.Y. 2015).

*Second*, under controlling New York law,[7] "the failure of a plaintiff to comply with conditions precedent *is an affirmative defense*." *Endovasc, Ltd. v. J.P. Turner & Co.*, 169 F. App'x 655, 657 (2d Cir. 2006) (emphasis added); *see First Union Nat'l Bank v. Pictet Overseas Trust Corp., Ltd.*, 477 F.3d 616, 621-22 (8th Cir. 2007) ("Whether the [issue] is an affirmative defense is a question of [relevant] state law."). Because "the *defendant* must plead and prove" an affirmative defense, "the possible existence of [an affirmative] defense is not ordinarily a ground for Rule 12(b)(6) dismissal." *RFC v. First Mortg. Corp.*, 2014 WL 7229267, at *1 (D. Minn. Aug. 1, 2014) (denying motion to dismiss); *see also, e.g.*, *United Res. Recovery Corp. v. Ramko Venture Mgmt., Inc.*, 584 F. Supp. 2d 645, 647 (S.D.N.Y. 2008) ("'[U]nder New York law, the failure of a plaintiff to comply with conditions precedent is an affirmative defense.' Thus, [counterclaimant] is under no obligation to affirmatively plead compliance with conditions precedent." (quoting *Endovasc*, 169 F. App'x at 657)). Accordingly, although Plaintiff's allegation that all conditions precedent, if any, were satisfied is sufficient under Federal Rule of Civil Procedure 9(c), Plaintiff was under no obligation to plead the satisfaction of conditions precedent under the Flow Agreement *at all*.

---

[7] The Flow Agreement is governed by New York law. *See* FAC Ex. A at 89 (Flow Agreement § 12.02).

11

*Third*, in any event, the Flow Agreement provision PHH cites is not even a condition precedent to Plaintiff's claims, but at most "simply a promise."[8] *Ace Sec. Home Equity Loan Trust, Series 2007-HE3 v. DB Structured Prods., Inc.*, 2014 WL 1116758, at *15 (S.D.N.Y. Mar. 20, 2014) (holding that a notice provision was not a condition precedent to repurchase of mortgage loans under New York law). "Under New York law, a contractual duty will not be construed as a condition precedent absent clear language showing that the parties intended to make it a condition." *Toyomenka Pac. Petrol., Inc. v. Hess Oil Virgin Islands Corp.*, 771 F. Supp. 63, 67 (S.D.N.Y. 1991). When the parties to the Flow Agreement desired to establish a condition precedent, they did so explicitly. *See, e.g.*, FAC Ex. A at 59 (Flow Agreement § 4.02) ("Conditions Precedent to Closing"). The provision PHH relies on, however, contains no such language. *See id.* at 86 (Flow Agreement § 10.01(2)) (establishing an "Event of Default" upon "any failure … to perform in any material respect any of the covenants or agreements … which continues unremedied for a period of 30 days after the date on which written notice … shall have been given" (quoted at Br. 11)). Indeed, PHH points to no provision in the Flow Agreement that specifically limits Plaintiff's right to sue for

---

[8] PHH suggests that Plaintiff cannot plead both that it had no obligation to provide notice and opportunity to cure and that, in the alternative, Plaintiff fulfilled any such obligation that existed. Br. 12. That is wrong. *See* Fed R. Civ. P. 8(d)(2) ("If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."), (3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); *see also, e.g.*, *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1130 (8th Cir. 2002) ("Whitney did not make his complaint any more or less plausible by electing to plead in the alternative that (1) he was denied ownership, and (2) he actually is an owner … but is being denied proof and benefits of that ownership.").

12

breach of contract and contractual indemnification unless it first provided notice. *See Assured Guar. Mun. Corp. v. Flagstar Bank, F.S.B.*, 2011 WL 5335566, at *7 (S.D.N.Y. Sept. 8, 2011) ("[N]otably absent … is any indication that the parties intended this 'notice and opportunity to cure' process to be the exclusive means by which [Plaintiff] may enforce its rights under the [contract].") (applying New York law).

## II. THE COMPLAINT STATES ACTIONABLE CLAIMS AS TO LOANS SOLD BEFORE MAY 13, 1998

PHH argues that Plaintiff's claims under the Client Contract should be dismissed as to loans sold before May 13, 1998 because Plaintiff has not provided any contract that could govern sales during that time period. Br. 2, 8-9. This is misguided.

As previously explained, Plaintiff is not required to attach *any* writings to its complaint. *See supra* pp.9-10. Moreover, on a Rule 12 motion, "[i]n addition to the allegations in the amended complaint, [courts] also may consider materials that are necessarily embraced by the pleadings." *Varga v. U.S. Bank N.A.*, 764 F.3d 833, 838 (8th Cir. 2014) (quotation omitted). It is well settled that "[t]he contracts upon which [a] claim rests … are evidently embraced by the pleadings." *Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014); *see also Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) ("In a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss."). Accordingly, the Court may properly consider the Seller/Servicer Contract, which is embraced by the FAC and on which the FAC rests in part. To avoid further controversy, Plaintiff has submitted that contract herewith. *See* Nesser Decl. Ex. A; *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4

13

(8th Cir. 2003) (considering contracts submitted by third-party plaintiff "at and after the hearing" on third-party defendant's motion to dismiss); *Missouri v. Coeur d'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999) (materials submitted in "opposition to the motion" that "do not contradict the complaint may be considered by a court in deciding a Rule 12(b)(6) motion"). The existence of the Seller/Servicer Contract, now before the Court, eliminates any basis for PHH's argument.

In any event, "[t]o state a claim for breach of contract" under Minnesota law,[9] a plaintiff need only "allege that a contract existed and that [the defendant] breached one of the terms of the contract." *Mandel v. Americana Cmty. Bank*, 2004 WL 117563, at *1 (Minn. Ct. App. Jan. 27, 2004). Here, PHH acknowledges that Exhibits C-1 and C-2 to the FAC list loans that PHH sold to RFC before May 13, 1998. Br. 9. PHH was therefore on notice of the subject matter, relevant time period, and counterparty, and thus should have been well aware which contracts it signed were at issue.[10] The FAC also repeatedly alleges terms and breaches of the Client Contract and Client Guide. *See, e.g.*, FAC ¶¶ 20, 23-24, 27-34, 37-54. As explained above at pages 2-3, the Seller/Servicer Contract and the Seller Guide are substantially identical to the Client Contract and the Client Guide, respectively. PHH was therefore on notice of the specific contractual terms

---

[9] Both the Seller/Servicer Contract and the Client Contract are governed by Minnesota law. *See* Nesser Decl. Ex. A ¶ 10; FAC Ex. A at 4 (Client Contract ¶ 10).

[10] PHH's attempt to construe paragraph 17 of the FAC as "expressly aver[ring] that the 'course' of the parties['] relationship began on May 13, 1998" should therefore be rejected. Br. 8. Even if paragraph 17 did make that allegation, the dates in Exhibits C-1 and C-2 should control, as PHH itself argues. *See* Br. 6 ("[A]ny factual allegations that are contradicted by exhibits attached to a complaint should not be accepted as true.").

14

applicable to the loans it sold RFC prior to May 13, 1998, as well as how it breached those terms.  The FAC therefore alleges all that is required to state a claim for breach of contract under applicable Minnesota law.[11]

## CONCLUSION

Defendant PHH Mortgage's Motion to Dismiss should be denied.

Dated:  April 21, 2015                    FELHABER LARSON

                                           By:   *s/ Jessica J. Nelson*
                                                 Donald G. Heeman, #286023
                                                 Jessica J. Nelson, #347358
                                                 220 South Sixth Street, Suite 2200
                                                 Minneapolis, MN  55402-4504
                                                 Telephone:  (612) 339-6321
                                                 Facsimile:  (612) 338-0535
                                                 dheeman@felhaber.com
                                                 jnelson@felhaber.com

---

[11] In the alternative, Plaintiff requests leave to amend to attach the prior contract. *See* Fed. R. Civ. P. 15(a)(2) (leave to be "freely give[n]"); *Prudential Ins. Co. of Am. v. Metrowide Grp.*, 2009 WL , at *4 (D. Minn. July 16, 2009) (Nelson, J.) (granting leave to amend to, *inter alia*, "attach copies of the contracts at issue").  Because any purported deficiency would be cured in this fashion, PHH's futility argument (Br. 8) is baseless. *See Moody v. Vozel*, 771 F.3d 1093, 1096 (8th Cir. 2014) ("Denial of a motion for leave to amend on the basis of futility 'means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6).'").

15

QUINN EMANUEL
URQUHART & SULLIVAN, LLP
Peter E. Calamari (admitted *pro hac vice*)
Isaac Nesser (admitted *pro hac vice*)
David Elsberg (admitted *pro hac vice*)
Anthony P. Alden (admitted *pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
PeterCalamari@quinnemanuel.com
IsaacNesser@quinnemanuel.com
DavidElsberg@quinnemanuel.com
AnthonyAlden@quinnemanuel.com

CARPENTER LIPPS & LELAND LLP
Jeffrey A. Lipps (admitted *pro hac vice*)
Jennifer A.L. Battle (admitted *pro hac vice*)
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Telephone: (614) 365-4100
Facsimile: (614) 365-9145
lipps@CarpenterLipps.com
battle@CarpenterLipps.com

ATTORNEYS FOR PLAINTIFF
RESCAP LIQUIDATING TRUST

16