Hearing Date:  October 8, 2015 at 10:00 a.m.
Objection Deadline:  August 31, 2015
Reply Deadline:  October 1, 2015

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Case No.:  12-12020 (MG) |
| Debtors. | Jointly Administered |

**SIERRA PACIFIC MORTGAGE COMPANY, INC.'S OBJECTION TO MOTION OF THE RESCAP LIQUIDATING TRUST FOR AN ORDER ENFORCING PLAN INJUNCTION AND CONFIRMATION ORDER**

COZEN O'CONNOR
Frederick E. Schmidt, Jr.
277 Park Avenue
New York, NY  10172
(212) 883-4900
(646) 588-1552
eschmidt@cozen.com

-and-

JENKINS KAYAYAN LLP
*pro hac vice pending*
Jonathan M. Jenkins
444 S. Flower St., Ste 1530
Los Angeles, CA 90071
(310) 984-6800
jjenkins@jklitigators.com

*Attorneys for Sierra Pacific Mortgage Company, Inc.*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................1

FACTUAL BACKGROUND ......................................................................................................2

ARGUMENT ................................................................................................................................5

    I.   SIERRA'S CLAIMS WERE POST-EFFECTIVE DATE CLAIMS ............................5

    II.  THE DEBTORS AND TRUST WERE NOT DISCHARGED .....................................10

# TABLE OF AUTHORITIES

                                                                                                            **Page(s)**

**Cases**

*Abercrombie v. Hayden Corp. (In re Abercrombie)*,
    139 F.3d 755 (9th Cir. 1998) ..................................................................................................8

*In re Amigoni*,
    109 B.R. 341, 343 (Bankr. N.D. Ill. 1989) ............................................................................12

*Bell v. Ruben*,
    No. 12 C 8311, 2013 WL 6211743 (N.D. Ill., Nov. 26, 2013) ...............................................9

*In re Bennett*,
    No. 09-36637, 2012 WL 2562418 (Bankr. S.D. Tex., June 28, 2012) ....................................9

*Big Yank Corp. v. Liberty Mutual Ins. Co. (In re Water Valley Finishing, Inc.)*,
    139 F.3d 325 (2d Cir. 1998)................................................................................................8, 9

*Boeing North American, Inc. v. Ybarra (In re Ybarra)*,
    424 F.3d 1018 (9th Cir. 2005) ................................................................................................7

*In re Chateaugay Corp.*,
    112 B.R. 513, 521 (S.D.N.Y. 1990).......................................................................................5

*DePaolo v. United States (In re DePaolo)*,
    45 F.3d 373 (10th Cir. 1995) ................................................................................................12

*Dutcher v. Reorganized Pettibone Corp.*,
    193 B.R. 667 (S.D.N.Y. 1996).............................................................................................11

*Educ. Credit Mgmt. Corp. v. Loving (In re Loving)*,
    269 B.R. 655 (Bankr. D. Ind. 2001).....................................................................................12

*Epstein v. Official Committee of Unsecured Creditors of the Estate of Piper Aircraft (In re Piper Aircraft)*,
    58 F.3d 1573 (11th Cir. 1995) ................................................................................................5

*Grynberg v. United States of America (In re Grynberg)*,
    986 F.2d 367 (10th Cir. 1993) ..............................................................................................12

*In re Hadden*,
    57 B.R. 187, 190 (Bankr. W.D. Wis. 1986)...........................................................................6

*In re Jensen*,
    995 F.2 925 (9th Cir. 1993) ....................................................................................................5


12-12020-mg    Doc 9086    Filed 08/31/15    Entered 08/31/15 17:15:40    Main Document
Pg 4 of 17

*Johnson v. Home State Bank*,
   501 U.S. 78, 83, 111 S.Ct. 2150, 2153, 115 L.Ed.2d 66 (1991) .................................................7

*Kadjevich v. Kadjevich (In re Kadjevich)*,
   220 F.3d 1016 (9th Cir. 2000) ...................................................................................................8

*Kinney v. I.R.S. (In re Video Gaming, Inc.)*,
   123 B.R. 889 (Bankr. D. Nev. 1991) .......................................................................................12

*Maple Forest Condominium Ass'n v. Spencer (In re Spencer)*,
   457 B.R. 601 (E.D. Mich. 2011) ................................................................................................9

*MMM Healthcare Inc. v. Quesada (In re Quesada)*,
   Bankruptcy No. 13-02057 BKT ...............................................................................................12

*Pharaoh's Palace, Inc. v. Foster (In re Foster)*,
   No. 02-12221, 02-1116 at *4 (Bankr. M.D. La., Oct. 22, 2003) ..............................................12

*Siegel v. Federal Home Loan Mortgage Corporation*,
   143 F.3d 525 (9th Cir. 1998) ............................................................................................6, 7, 8

*Sure-Snap Corp. v. State of Vermont (In re Sure-Snap Corp.)*,
   983 F.2d 1015 (11th Cir. 1993) .................................................................................................6

*Teamsters Pension Trust Fund of Philadelphia v. Malone Realty Co.*,
   82 B.R. 346 (E.D. Penn. 1988) ............................................................................................1, 11

*Texaco Inc. v. Board of Commissioners for the LaFourche Basin Levee District*,
   254 B.R. 536 (Bankr. S.D.N.Y. 2000) .......................................................................................9

*United States v. LTV Steel Co. (In re Chateaugay Corp.)*,
   944 F.2d 997 (2nd Cir. 1991) ....................................................................................................5

*United States v. Wood (In re Wood)*,
   240 B.R. 609 (C.D. Cal. 1999) ................................................................................................12

*In re Wood Family Interests, Ltd.*,
   135 B.R. 407 (Bankr. D. Colo. 1989) ......................................................................................11

**Statutes**

11 U.S.C. 1141(d)(2) and 523 ..........................................................................................................12

11 U.S.C. § 1141(d)(3) ........................................................................................................2, 10, 11

Section 727(a) of the Bankruptcy Code ..........................................................................................11

section 1141 of the Bankruptcy Code ...................................................................................2, 10, 11

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>RESIDENTIAL CAPITAL, LLC, *et al.*,<br><br>                         Debtors. | Chapter 11<br><br>Case No.: 12-12020 (MG)<br><br>Jointly Administered |

**SIERRA PACIFIC MORTGAGE COMPANY, INC.'S OBJECTION TO
MOTION OF THE RESCAP LIQUIDATING TRUST FOR AN ORDER
ENFORCING PLAN INJUNCTION AND CONFIRMATION ORDER**

Sierra Pacific Mortgage Company, Inc. ("Sierra"), by its counsel, Cozen O'Connor and JENKINS KAYAYAN LLP[1], as and for its objection (the "Objection") to the *Motion of the ResCap Liquidating Trust for an Order Enforcing Plan Injunction and Confirmation Order* [ECF No. 8947] (the "Motion"), respectfully asserts as follows:

**INTRODUCTION**

1. The ResCap Liquidating Trust (the "Trust") argues in the Motion that Sierra's counterclaims are run-of-the-mill prepetition claims that were discharged and subject to a plan injunction. The Trust is wrong.

2. The Trust's own actions brought about the counterclaims when it voluntarily chose to throw its hat in the litigation ring by filing, post-confirmation, a First Amended Complaint ("FAC") in a Minnesota federal action (the "Minnesota Action") – knowing full well that the pleading violated broad releases and covenants not to sue previously granted by the Trust's predecessor-in-interest, Residential Funding Company, LLC ("RFC").[2]

3. Sierra's counterclaims are based primarily upon attorneys' fees and costs incurred post-confirmation in the Minnesota Action and are entirely different than the types of claims that

---

[1] Substantially simultaneously herewith, Cozen O'Connor shall move for the *pro hac vice* admission of Jonathan M. Jenkins of JENKINS KAYAYAN LLP.
[2] RFC and its related debtors are hereafter referred to as the "Debtors."

1

the Court has previously found enjoined by the Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors (Attached as Appendix 1 to confirmation order at ECF 6065-1) (the "Plan").

4.  What makes Sierra's counterclaims different is that they were caused by the Trust's *deliberate and knowing post-confirmation wrongful acts*. Sierra warned the Trust in advance that filing the FAC would blatantly violate RFC's prior settlement agreements with Sierra. Courts have found that when a debtor knowingly and deliberately commences litigation after having received a bankruptcy discharge, it cannot escape liability for attorneys' fees arising from that litigation on the basis that the claim was discharged in bankruptcy.

5.  Not only are Sierra's counterclaims different, but *the Trust knows* they are different – it told the Court in the Minnesota Action that the Trust likely had sufficient funds to pay an award of attorneys' fees should Sierra prevail on the settlement agreements. And unlike the other counterclaims at issue here, prior to bringing this Motion, the Trust answered Sierra's counterclaims and actively litigated them for *11 months* (conceding along the way that at least *85%* of the loans in the Minnesota Action were, in fact, released).

6.  In addition, paragraph 42 of the Court's order confirming the Plan [ECF 6065] (the "Confirmation Order") expressly limited the discharge of claims against the Debtors to the "extent permitted by section 1141 of the Bankruptcy Code." Because the Plan was a corporate liquidating plan, 11 U.S.C. § 1141(d)(3) prohibited any discharge of the Debtors. Accordingly, even assuming, *arguendo*, that Sierra's counterclaims were pre-petition dischargeable claims, they would not have been discharged pursuant to the Plan and Confirmation Order.

7.  Accordingly, the Trust's Motion should be denied in its entirety.

**FACTUAL BACKGROUND**

8.  RFC sued Sierra on December 14, 2013 in Minnesota federal court. The initial complaint did not identify any specific mortgages on which RFC purported to sue. However, on

February 28, 2014, RFC filed a motion seeking leave to file a First Amended Complaint ("FAC") that, for the first time, identified some of the specific loans on which RFC based its lawsuit.

9. Sierra opposed the motion because the FAC, among other things, violated releases and covenants not to sue contained in three prior settlement agreements between the parties – all of which expressly reference on the first page the "Client Contract dated March 13, 2002," cited in the Motion (at p. 3), on which RFC based its FAC. (*See* pp. 2-6 and 18 to Sierra's Opposition, attached as **Exhibit 1**). The Trust was clearly on notice that it was about to unilaterally violate the same set of contractual obligations on which the FAC sought to hold Sierra liable.

10. For example, one settlement agreement, effective December 19, 2007 (the "December 2007 Settlement"), released a number of specific loans (identified by loan number), as well as all loans involving "a borrower who has made the first twelve consecutive payments due GMAC-RFC within the month mandated by the contract" (hereinafter, the "First Year Payment Release") (See December 2007 Settlement, section 2(b), attached as **Exhibit 2**). The parties promised not to "bring against the other party any other suits or actions, however denominated concerning any claim, demand, liability or cause of action that is the subject of this Agreement." (*Id.*, section 3.) There was also a prevailing party attorneys' fees provision. (*Id.*, section 6.)

11. At oral argument on March 24, 2014, when questioned by the Magistrate Judge, the Trust acknowledged Sierra's affirmative rights under the settlement agreements – and conceded they are anything but common pre-petition dischargeable claims. Trust counsel Peter Calamari stated: "I understand that there could be claims that, if we pursue them, that might be subject to an attorney's fees to a prevailing party." (*See* pg. 25, lines 15-17 of March 24, 2014 hearing transcript, attached as **Exhibit 3**). Mr. Calamari further advised the Minnesota Court

that the Trust likely had sufficient funds to cover any attorneys' fees award to Sierra. (*See Id*. pg. 25, lines 19 – 25; pg. 26, lines 1 – 8). The Court subsequently granted RFC's Motion.

12. RFC then made a number of changes to the FAC prior to filing it on May 23, 2014. (See May 23, 2014 Email from RFC Counsel Donald Heeman (with excerpts from attached redline), attached as **Exhibit 4**). However, none of those changes attempted to remove from the FAC any of the released loans or released categories of loans.

13. Sierra counterclaimed against RFC and the Trust on August 16, 2014, alleging breach of the release and covenant not to sue provisions contained in the December 2007 Settlement (Exhibit 2) and in a settlement agreement dated March 10, 2008 (the "March 2008 Settlement," attached as **Exhibit 5**). RFC and the Trust answered on September 9, 2014. Sierra filed its Amended Counterclaim on September 30, 2014 (attached as **Exhibit 6**), which RFC and the Trust answered on October 14, 2014.

14. Sierra propounded discovery on its counterclaims to ascertain how many loan borrowers had timely made the first year of loan payments (thus releasing those loans pursuant to the First Year Payment Release) – and filed a Motion to Compel on this and other matters on October 29, 2014. Ultimately:
- Under the FAC, the Trust claimed that Sierra was liable on 3,492 loans. (See the Trust's "Appendix B," served on Sierra in the Minnesota Action, attached as **Exhibit 7**);
- The Trust subsequently conceded that the First Year Payment Release released, at a minimum, more than 2,900 of those loans – all but 517;
- Additional loans appeared to be released for other reasons, and on April 14, 2014, the Court in the Minnesota Action entered a stipulated order limiting discovery to just *502 of the original 3,492 loans* (attached as **Exhibit 8**).

15. In other words, Sierra's counterclaim proved highly meritorious: at least *85%* of the loans for which the FAC sought recovery were released by prior settlement agreements with Sierra. Establishing these facts took months of litigation and caused Sierra to incur significant attorneys' fees. Yet, not until July 20, 2015 – more than *11 months* after Sierra filed its

4

counterclaims – did the Trust first threaten to seek relief on the basis that the counterclaim had been discharged. (See email attached as Exhibit F to Scheck Declaration, ECF 8948-6).

## ARGUMENT

### I. SIERRA'S CLAIMS WERE POST-EFFECTIVE DATE CLAIMS

16. The lynchpin to the Trust's argument that Sierra's claims were discharged and subject to the Plan injunction is the notion that the claims arose pre-petition and that Sierra did not file a proof of claim with respect to those claims.

17. Thus, the key issue is *when* Sierra's counterclaims arose. The Trust argues that the claim arose pre-petition when the parties entered into two settlement agreements (Exhibits 2 and 5) containing the subject releases and covenants not to sue. However, Sierra's claims arose *after* the Effective Date and, therefore, they are not subject to the Plan injunction.

18. Like several other Circuit Courts of Appeals, the Second Circuit uses the "relationship/fair contemplation" approach to determine whether a pre-petition contingent claim existed.[3] The leading case on this issue in this Circuit is *United States v. LTV Steel Co. (In re Chateaugay Corp.)*, 944 F.2d 997 (2nd Cir. 1991), which held that "before a contingent claim can be discharged, it must result from pre-petition conduct fairly giving rise to that contingent claim." *Id.* at 1005 (quoting Judge Sprizzo's decision at *In re Chateaugay Corp.*, 112 B.R. 513, 521 (S.D.N.Y. 1990)).

19. The Eleventh Circuit also utilized the "relationship/fair contemplation" approach in *Epstein v. Official Committee of Unsecured Creditors of the Estate of Piper Aircraft (In re Piper Aircraft)*, 58 F.3d 1573 (11th Cir. 1995), as did the Ninth Circuit in *In re Jensen*, 995 F.2 925 (9th Cir. 1993).

---

[3] Notably, however, the Second Circuit has not applied this test in a case where, as here, the allegedly discharged claim arose out of the voluntary, wrongful post-petition conduct of the debtor.

20. Here, there was clearly a prepetition contractual relationship between Sierra and the Debtors. The focus, accordingly, rests on the lack of "pre-petition conduct fairly giving rise to [any] contingent claim." Sierra respectfully submits that such conduct was lacking here.

21. Several courts utilizing the relationship/fair contemplation approach have found that where the claim arises out of the debtor's *post-discharge voluntary conduct*, no contingent claim existed pre-petition. For example, in *Sure-Snap Corp. v. State of Vermont (In re Sure-Snap Corp.)*, 983 F.2d 1015 (11th Cir. 1993), the debtor voluntarily prosecuted a post-confirmation appeal of an earlier adverse decision from the bankruptcy court. The creditor prevailed on appeal, entitling it to attorneys' fees and costs under its pre-petition agreement with the debtor. *Id.* at 1017. The district court denied the creditor's request for fees and costs on the ground that confirmation of the debtor's plan extinguished the creditor's right to attorneys' fees and costs. *Id*.

22. On appeal, the Eleventh Circuit reversed the district court, finding that:

> [t]he confirmation of Sure-Snap's Chapter 11 plan *discharged its pre-confirmation* liabilities *under the Agreement*. The attorney fees Bradford [the creditor] seeks were incurred by Bradford in defending a *post-confirmation* appeal initiated by Sure-Snap. Sure-Snap voluntarily continued to litigate the validity of the Agreement after confirmation of its Chapter 11 plan. Bradford had no choice but to defend. By choosing to appeal the validity of the Agreement after confirmation, Sure-Snap did so at the risk of incurring post-confirmation costs involved in its act. "[B]ankruptcy was intended to protect the debtor from the continuing costs of pre-bankruptcy acts but not to insulate the debtor from the costs of post-bankruptcy acts."

*Id.* at 1018 (*quoting In re Hadden*, 57 B.R. 187, 190 (Bankr. W.D. Wis. 1986)) (emphasis in original).

23. Similarly, the Ninth Circuit has found discharge inapplicable where a debtor voluntarily commences or re-institutes litigation following its discharge. *Siegel v. Federal Home Loan Mortgage Corporation*, 143 F.3d 525 (9th Cir. 1998) considered whether a lender's

6

contractual rights to attorney's fees incurred post-petition, based upon a prepetition cause of action, constituted a discharged prepetition contingent claim. There, the debtor brought a post-petition action against the creditor in state court in which the creditor prevailed (*Id.* at 528), and the prepetition deeds of trust provided for recovery of the creditor's attorney's fees. *Id.* at 531.

24. The *Siegel* Court first disposed of the debtor's argument that the discharge eliminated the attorney's fees provisions from the prepetition documents. Citing *Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S.Ct. 2150, 2153, 115 L.Ed.2d 66 (1991), the court found that "a discharge in bankruptcy does not end a party's obligation, but merely prevents one method of collection. Thus, [the debtor's] discharge in bankruptcy did not extinguish the contractual attorney's fee provision." *Id.* at 531 (citations omitted).

25. In rejecting the debtor's argument that the attorney's fees claim constituted a prepetition contingent claim, the *Siegel* Court found:

> This is a case where the debtor, Siegel, had been freed from the untoward effects of contracts he had entered into. Freddie Mac [the creditor] could not pursue him further, nor could anyone else. He, however, chose to return to the fray and to use the contract as a weapon. It is perfectly just, and within the purposes of bankruptcy, to allow the same weapon to be used against him.
>
> * * *
>
> Siegel's decision to pursue a whole new course of litigation made him subject to the strictures of the attorney's fee provision. In other words, while his bankruptcy did protect him from the results of his past acts, including attorney's fees associated with those acts, it did not give him carte blanche to go out and commence new litigation about the contract without consequence.

*Id.*, at 533-34.

26. The Ninth Circuit reaffirmed *Siegel* in *Boeing North American, Inc. v. Ybarra (In re Ybarra)*, 424 F.3d 1018 (9th Cir. 2005). There, the debtor, after having filed for bankruptcy protection, continued state court litigation against a creditor that she had commenced prior to

7

filing her bankruptcy petition. The creditor prevailed and sought to collect the portion of the fees and costs incurred postpetition. *Id.* at 1019. The bankruptcy court ruled for the creditor, and the debtor appealed to the Bankruptcy Appellate Panel of the Ninth Circuit ("BAP") which, in a divided opinion, reversed. The creditor appealed to the Ninth Circuit Court of Appeals, which reversed the BAP and reaffirmed its holdings in *Siegel*:

> [W]e reaffirm that claims for attorney fees and costs incurred post-petition are not discharged where post-petition, the debtor voluntarily commences litigation or otherwise voluntarily "return[s] to the fray." Whether attorney fees and costs incurred through the continued prosecution of litigation initiated pre-petition may be discharged depends on whether the debtor has taken the affirmative post-petition action to litigate a prepetition claim and has thereby risked the liability of these litigation expenses…
>
> In this case, after petitioning for bankruptcy, Ybarra petitioned the bankruptcy court to exempt the state suit against Rockwell, and then appealed the bankruptcy court's denial of this exemption to the BAP and this court. On remand, Ybarra chose to pursue the state case rather than accepting Rockwell's $17,500 settlement offer. Ybarra actively persuaded the state court to set aside the dismissal. We conclude that by affirmatively reviving the state suit, Ybarra "returned to the fray." Thus, under *Siegel*, Rockwell's claim for attorney fees and costs incurred post-petition was not discharged in the bankruptcy.[4]

27.     The Second Circuit has also determined that a post-confirmation award of attorney's fees in pre-petition litigation may not constitute a pre-petition contingent claim. In *Big Yank Corp. v. Liberty Mutual Ins. Co. (In re Water Valley Finishing, Inc.)*, 139 F.3d 325, 328-29 (2d Cir. 1998), the Second Circuit found that a *sua sponte* post-confirmation award of attorney's fees in pre-petition litigation was not a contingent pre-petition claim. The Court

---

[4] The BAP majority relied on two cases, *Abercrombie v. Hayden Corp. (In re Abercrombie)*, 139 F.3d 755 (9th Cir. 1998) and *Kadjevich v. Kadjevich (In re Kadjevich)*, 220 F.3d 1016 (9th Cir. 2000), which held that claims for post-petition attorney fees could not be granted administrative expense priority. *Id.* at 1021. In reversing the BAP, the Ninth Circuit held that administrative priority deals with the distribution of estate funds, whereas discharge involves post-discharge personal liability. Accordingly, the analysis of whether the attorney's fees liability is a contingent claim is different. *Id.* at 1025. Thus, "[e]ven if a cause of action arose pre-petition, the discharge shield cannot be used as a sword that enables a debtor to undertake risk-free litigation at others' expense." *Id.* at 1026.

reasoned that the award was outside the reasonable contemplation of the parties despite a pre-petition statement by the trial court "that it would look to the unsuccessful party to pay attorneys' fees." Id., at 328.

28. Other courts have also held that a debtor cannot escape post-confirmation liabilities where, as here, it voluntarily commenced or continued litigation post-petition. *See Bell v. Ruben*, No. 12 C 8311, 2013 WL 6211743 at *10 (N.D. Ill., Nov. 26, 2013) ("The focus is on why and how the debtor incurred the post-petition debt. Here, [the creditor] pursued her claims in the bankruptcy; [the debtor] voluntarily chose to throw his hat in the Arbitration ring with his former law firm and partners *after* the discharge order. Thus, the obligation at issue here accrued because of a superseding cause – i.e., [the debtor's] decision to pursue Arbitration – not because of [the creditor's] original claims"); *Maple Forest Condominium Ass'n v. Spencer (In re Spencer)*, 457 B.R. 601, 613 (E.D. Mich. 2011) ("Where a right to payment after the bankruptcy filing remains solely within the power of the debtor to avoid, the right to payment does not arise from the pre-petition agreement"); *In re Bennett*, No. 09-36637, 2012 WL 2562418 at *6 (Bankr. S.D. Tex., June 28, 2012) ("to the extent the fees are contingent on the acts of the *debtor*, they are not a contingent claim within the meaning of § 101(5)(A), and they are not a claim against the estate as of the petition date"); *see also Texaco Inc. v. Board of Commissioners for the LaFourche Basin Levee District*, 254 B.R. 536 (Bankr. S.D.N.Y. 2000) ("Simply stated, the basic rule is that claims arising after confirmation from a contractual relationship are not barred by a confirmation order. It is only where the liability asserted in a claim is based upon a breach of contract that occurred before confirmation that the claim must be filed in the bankruptcy. Potential claims for liabilities for breach of obligations which might occur after confirmation cannot be filed before confirmation even if they could be anticipated").

29. What all of the foregoing cases have in common is their refusal to allow a debtor, such as the Trust here, to voluntarily pursue a post-discharge course of conduct which gives rise

9

to claims – whether based on prepetition contract or statute – and escape liability for those claims based on a previous bankruptcy discharge. Sierra respectfully submits that this Court should likewise deny the Trust's attempt to escape the consequences of its own post-confirmation actions in filing the FAC in blatant disregard of releases and covenants not to sue.

30. The Trust recognized, as far back as March, 2014, that its decision to file the FAC came with a risk that it may have to pay attorney's fees to Sierra – a decision that was the Trust's alone to make, and which the Trust had every opportunity to avoid. Prior to the FAC's filing, the Trust: (a) was on notice the FAC would violate the settlement agreements; (b) acknowledged to the Court in the Minnesota Action the potential exposure to an award of attorneys' fees; (c) had the opportunity to revise the FAC to eliminate the problem (and *did* revise the FAC, but not in any way that diminished the violation); and (d) deliberately and unilaterally filed the FAC anyway. The Trust made a conscious and voluntary post-confirmation decision to violate the same set of contractual obligations on which it seeks to hold Sierra liable in the Minnesota Action.

31. It should not now utilize this Court to escape that risk.[5]

## II. THE DEBTORS AND TRUST WERE NOT DISCHARGED

32. The Motion must also be denied because the Debtors did not receive a discharge.

33. The Confirmation Order provides that the Debtors received a discharge but limited any discharge *to the extent allowed under section 1141 of the Bankruptcy Code*. (*See* Confirmation Order ¶ 42).

34. Section 1141(d)(3) states as follows:

> (3) The confirmation of a plan does not discharge a debtor if –
>
>     (A)    the plan provides for the liquidation of all or substantially all of the property of the estate

---

[5] Sierra incorporated herein the additional analysis and case citations contained in the Objection of Decision One.

>   (B) the debtor does not engage in business after consummation of the plan; and
>
>   (C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.

11 U.S.C. § 1141(d)(3).

35. Section 727(a) of the Bankruptcy Code denies a discharge if "the debtor is not an individual." 11 U.S.C. § 727(a). Thus, a debtor is not entitled to a discharge if it is not an individual, the plan provides for the liquidation of all or substantially all of the estate property, and the debtor does not engage in business post-confirmation. *See e.g. Dutcher v. Reorganized Pettibone Corp.*, 193 B.R. 667, 668 (S.D.N.Y. 1996) ("[c]onfirmation of a plan discharges a corporation of all its debts unless it is a liquidating plan"); *Teamsters Pension Trust Fund of Philadelphia v. Malone Realty Co.*, 82 B.R. 346, 349 (E.D. Penn. 1988) (corporate or partnership debtor that is "both liquidating and discontinuing its business does not receive a discharge when its plan is confirmed"; accordingly, automatic stay dissolved and discharge *denied* "no later than the moment of confirmation"); *In re Wood Family Interests, Ltd.*, 135 B.R. 407, 410 (Bankr. D. Colo. 1989) (section 1141(d)(3) "and the case law interpreting it are clear that a discharge is not available to corporate or partnership debtors who propose a liquidating plan of reorganization.")

36. Here, the Debtors were unquestionably not individuals, the Plan provided for the immediate transfer of all, or substantially all, of the estates' assets to the Trust, and the Debtors did not continue to engage in business after the Effective Date.[6] Accordingly, RFC was not entitled to a discharge under section 1141(d)(3) of the Bankruptcy Code.

37. The Confirmation Order recognized that fact and, accordingly, limited the discharge to the extent that section 1141 allowed. However, section 1141(d)(3) does not permit

---

[6] In fact, the Liquidating Trust Agreement requires the Trust to "wind down the affairs of, and dissolve the Debtors and their subsidiaries, including the Non-Debtor Subsidiaries" [ECF 6064-1, Section 2.2(c)], and mandates that "no part of the Liquidating Trust Assets shall be caused by the Liquidating Trust Board to be used or disposed of in furtherance of any trade or business" [*Id.*, Section 7.1(b).]

11

any discharge. Accordingly, Sierra's counterclaims, even were they deemed pre-petition contingent claims, were not discharged.

38. Because Sierra's counterclaims were not discharged, its failure to file a proof of claim asserting such claims is of no moment. *See Grynberg v. United States of America (In re Grynberg)*, 986 F.2d 367, 370 (10th Cir. 1993) ("failure to file a proof of claim before the bar date simply precludes a creditor from participating in the voting or distribution from the debtor's estate"); *MMM Healthcare Inc. v. Quesada (In re Quesada)*, Bankruptcy No. 13-02057 BKT, Adv. Proc. No. 13-00174 BKT, 2014 WL 1329264 (Bankr. D. P.R., April 1, 2014) (finding that the failure to file a proof of claim does not affect its right to file a complaint for nondischargeability of the debt); *Pharaoh's Palace, Inc. v. Foster (In re Foster)*, No. 02-12221, 02-1116 at *4 (Bankr. M.D. La., Oct. 22, 2003) ("[a] claim can be nondischargeable even if the creditor has not filed a proof of claim in the record of a case"); *Kinney v. I.R.S. (In re Video Gaming, Inc.)*, 123 B.R. 889, 891 (Bankr. D. Nev. 1991) ("the failure of the IRS to file a proof of claim for the pre-petition 100% penalty taxes does not render its claim dischargeable").

39. Since Sierra's counterclaims were nondischargeable, it was free to pursue those claims outside of the bankruptcy process. *See DePaolo v. United States (In re DePaolo)*, 45 F.3d 373, 375 (10th Cir. 1995) ("[t]he party to whom [a nondischargeable] debt is owed is entitled after confirmation to enforce his or her rights as they would exist outside of bankruptcy") (*quoting In re Amigoni*, 109 B.R. 341, 343 (Bankr. N.D. Ill. 1989); *In re Grynberg*, 986 F.2d at 370 ("like any other holder of a nondischargeable debt, the IRS is also free to pursue the debtor outside bankruptcy"); *Educ. Credit Mgmt. Corp. v. Loving (In re Loving)*, 269 B.R. 655, 662 (Bankr. D. Ind. 2001) ("[n]either the bankruptcy rules nor the proof of claim bar date prevents a creditors holding a nondischargeable debt who has not filed a proof of claim from collecting outside of bankruptcy"); *United States v. Wood (In re Wood)*, 240 B.R. 609, 610 (C.D. Cal.

12

1999) ("the taxes were a nondischargeable debt under 11 U.S.C. 1141(d)(2) and 523, and thus could have been collected outside the plan").

WHEREFORE, for the reasons set forth above, Sierra respectfully requests that the Court deny the Motion in its entirety and grant such other and further relief as it deems just and proper.

Dated:  New York, New York
       August 31, 2015

COZEN O'CONNOR

By: */s/ Frederick E. Schmidt, Jr.*
    Frederick E. Schmidt, Jr.
277 Park Avenue
New York, NY  10172
(212) 883-4900
(646) 588-1552
eschmidt@cozen.com

-and-

JENKINS KAYAYAN LLP
*pro hac vice pending*
Jonathan M. Jenkins
444 S. Flower St., Ste 1530
Los Angeles, CA 90071
(310) 984-6800
jjenkins@jklitigators.com

*Attorneys for Sierra Pacific Mortgage Company, Inc.*