# EXHIBIT 3

```
 1                    UNITED STATES DISTRICT COURT
                          DISTRICT OF MINNESOTA
 2

 3     ------------------------------------------------------------
                                      )
       Residential Funding Company,   )   File No. 13-CV-3511
 4     LLC,                           )            (RHK/FLN)
                                      )
 5              Plaintiff,            )
                                      )   Minneapolis, Minnesota
 6     vs.                            )   March 24, 2014
                                      )   9:36 a.m.
 7     Sierra Pacific Mortgage        )
       Company, Inc.,                 )   DIGITAL AUDIO
 8                                    )   RECORDING TRANSCRIPT
                Defendant.            )
 9     ------------------------------------------------------------

10            BEFORE THE HONORABLE FRANKLIN L. NOEL
          UNITED STATES DISTRICT COURT MAGISTRATE JUDGE
11                       (MOTIONS HEARING)

12     APPEARANCES
         For the Plaintiff:        FELHABER LARSON FENLON & VOGT PA
13                                 DONALD G. HEEMAN, ESQ.
                                   220 South Sixth Street
14                                 Suite 2200
                                   Minneapolis, Minnesota
15                                 55402-4504

16                                 QUINN EMANUEL URQUHART &
                                   SULLIVAN, LLP
17                                 PETER E. CALAMARI, ESQ.
                                   51 Madison Avenue
18                                 22nd Floor
                                   New York, New York 10010
19
         For the Defendant:        JENKINS LLP
20                                 JONATHAN M. JENKINS, ESQ.
                                   8075 West Third Street
21                                 Suite 407
                                   Los Angeles, California 90048
22
                                   LAPP LIBRA THOMSON STOEBNER &
23                                 PUSCH, CHARTER
                                   AMY L. SCHWARTZ, ESQ.
24                                 120 South Sixth Street
                                   Suite 2500
25                                 Minneapolis, Minnesota 55402
```

2

```
 1        Transcribed By:            CARLA R. BEBAULT, RMR, CRR, FCRR
                                     316 North Robert Street
 2                                   Suite 146 U.S. Courthouse
                                     Saint Paul, Minnesota 55101
 3

 4

 5
            Proceedings recorded by digital audio recording;
 6      transcript produced by computer.

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

**P R O C E E D I N G S**

**IN OPEN COURT**

1

2

3

4      THE COURT:  Okay.  This is Residential Funding

5  versus Sierra Pacific Mortgage Company, Inc.  Let's get

6  everybody's appearance on the record.  For the Plaintiff.

7      MR. HEEMAN:  Good morning, your Honor.  Donald

8  Heeman, Felhaber Larson.  And with me is Peter Calamari from

9  Quinn Emanuel Urquhart & Sullivan appearing pro hac vice,

10  and Mr. Calamari will be arguing today.

11      THE COURT:  Okay.  For the Defendant.

12      MR. JENKINS:  Good morning, your Honor.  Jonathan

13  Jenkins, Jenkins, LLC, on behalf of Sierra Pacific Mortgage,

14  Incorporated.  And with me is Mr. Richard Thomson of Lapp,

15  Libra, Thomson.

16      THE COURT:  Okay.  We're here for a hearing on the

17  Plaintiff's Motion to File a First Amended Complaint.

18  Mr. Calamari, you're up.

19      MR. CALAMARI:  Thank you, your Honor, and good

20  morning.  Thank you especially for letting me appear here.

21      This is a straightforward application to amend a

22  complaint.  Rule 15 provides that amendments should be

23  freely granted when the interests of justice so require.

24  The application comes pre answer, pre a Rule 16 scheduling

25  conference, pre any adjudication on the merits of the

1    original complaint.  Unlike some of the cases cited by

2    Defendants in their opposition papers, the First Amended

3    Complaint -- it is the First Amended Complaint.  It is not a

4    series of amended complaints which have been dismissed and

5    attempts to cure problems that a court has identified in an

6    original complaint.  There's been no adjudication on the

7    merits of the original complaint.  Defendant's opposition

8    papers don't even bother to address the standards for

9    amended --

10           THE COURT:  Let me ask you this because you may be

11   aware this isn't the only case we have with your client.

12           MR. CALAMARI:  I am aware, your Honor.

13           THE COURT:  What generated the perceived need to

14   amend the complaint and is this something we're gonna see in

15   the multitude of other cases that we have?

16           MR. CALAMARI:  Your Honor, the answer to your

17   second question is yes.  There will be amended complaints in

18   the other cases to reflect a more robust complaint in each

19   case with more specific information.  That's not to say that

20   we think the first complaints wouldn't have withstood a

21   Motion to Dismiss, but a Motion to Dismiss had been filed

22   and the Motion to Dismiss raised issues about the pleadings

23   and we tried to address those issues.

24           THE COURT:  So this is in response to the Motion

25   to Dismiss to attempt to avoid that?

1          MR. CALAMARI:  Correct.  Well, again, your Honor,

2     it is trying to make the Motion to Dismiss utterly and

3     completely irrelevant.

4          THE COURT:  Okay.

5          MR. CALAMARI:  We think the original complaints

6     would have certainly satisfied the *Twombly* standards for a

7     breach of contract and a breach of indemnity obligation

8     agreement, which is the two issues raised here.  No fraud is

9     alleged in these complaints so there's no specificity

10    requirement.  It's a very straightforward pleading

11    requirement.  But because a Motion to Dismiss was made and

12    it complained about lack of detail, the subsequent

13    complaints provide substantially more detail on the nature

14    of the breaches than the original complaints provided.

15         THE COURT:  Okay.  And on the -- so is this the

16    first of many or are we just one of many that we're right in

17    the middle of?  Because all of these cases are staying, as I

18    understand it, with the individual judges, at least for now.

19    Have other judges in this district addressed a motion like

20    this to amend in response to a Motion to Dismiss or is this

21    the first of many?

22         MR. CALAMARI:  This is the first.  We don't think

23    there will be many because other defendants have just

24    consented to the amended complaint.  Some have asked us to

25    amend the complaint before they draft a Motion to Dismiss.

1    There are a few other complaints where there is a Motion to

2    Dismiss and an amended complaint has been filed and those

3    Defendants have in effect said they'd like to go ahead with

4    their Motion to Dismiss even in the face of the amended

5    complaint.  And we have asserted some opposition to that on

6    the grounds that the amended complaint moots out the

7    original complaint.  But this is the first hearing on this

8    particular issue.

9         THE COURT:  Okay.  And how do you address -- so

10   then going to the substance of the merits, as I understand

11   it the Defendants say you still haven't identified a single

12   loan that was nonconforming and therefore you're entitled to

13   any compensation.

14        MR. CALAMARI:  I think this is one of the big

15   fallacies in their papers.  If you look at paragraph 42 to

16   the complaint, paragraph 42 to the complaint identifies some

17   16 -- I can check the complaint for the exact number, but --

18   sorry I left it over here.  It identifies quite a number

19   of -- I can give you the exact number -- yeah, I believe

20   it's 16 separate loans, individual loans that have defects

21   in them.  It specifies the loan number.  It gives you the

22   nature of the defect.  It provides information about why the

23   defect is material.  To say that we haven't identified a

24   specific loan is simply wrong.  There's just no -- no basis

25   for that claim.

1    Equally they don't really admit -- while they make

2    that bold statement, what they really say is a few of these

3    loans might be subject to settlement agreements.  And that's

4    the bulk of their papers which don't belong on a motion --

5    opposition for a Motion for Leave to Amend.  They make

6    summary judgment type arguments.  They say, well, a couple

7    of those loans might be subject to settlement agreements.

8    Well, that's an issue to be determined after they

9    put in an answer and they raise a defense, and then that can

10   be looked at.  The settlement agreements clearly don't cover

11   all of the loans in question.

12   THE COURT:  Do we know if any of the 16 specifics

13   that are listed in paragraph 42 are governed by settlement

14   agreements or don't we know?

15   MR. CALAMARI:  To my knowledge, three or four of

16   them might be covered by settlement agreements but the words

17   in those settlement agreements are sufficiently ambiguous to

18   make it unclear as to whether there is a release of the

19   particular indemnification claims here.  But we also make

20   quite clear in the complaint that we are not seeking to

21   recover on any loans that were repurchased by Sierra.  And

22   so even if one or two of these examples is covered by a

23   settlement agreement, the complaint makes clear that we are

24   not seeking to recover for those particular loans.

25   Now, it's important to understand, your Honor,

1    these cases not only in this court but there are cases on

2    repurchase claims all over the country.  Some of those cases

3    have been tried, some of those cases are settled, many of

4    them are still in -- winding their way through the courts.

5    And virtually every single one of those cases has recognized

6    that the volume of loans is simply too big to allow for

7    either pleading or proving that every one individual loan

8    that breached was a breach.  All of the courts that have

9    looked at these issues have resorted to a sampling approach.

10   That is, take a statistically normal sample.  See if -- you

11   use 400 loans or a hundred loans, if 40 of them are

12   materially a breach, then you could assume that across the

13   whole pool 40 percent would be a material breach.  So no

14   court has required pleading and proving defect in every

15   single defective loan.

16          But, again, we're getting to -- getting further

17   down the road.  All we have here is whether or not we should

18   have leave to amend the complaint.  We don't even in theory

19   have to establish that a complaint states a claim on this

20   motion.  The -- that is yet to be decided.  All we really

21   need to show is that it's plausible.  And at this point it's

22   more than plausible.  This is -- the detailing provided in

23   the amended complaint is very straightforward.  These are

24   simple claims, and we think that the motion should be

25   granted.

1          THE COURT:  Okay.

2          MR. CALAMARI:  I would make one other point.

3   There is a case, *Streambend*, that we cited in our papers and

4   the Defendants have endorsed.  In that complaint -- in that

5   case there was initially a state court proceeding.  The

6   state court proceeding went to judgment.  The disappointed

7   party in that proceeding commenced a federal court

8   proceeding, filed a complaint, then filed an amendment as of

9   right.  Then when that complaint was dismissed, made a

10  motion for leave to file an additional complaint.  That

11  motion was granted.  When that complaint was dismissed, made

12  a motion to file a third amended complaint.  That motion was

13  granted in part.

14          The court didn't finally dismiss the case and

15  refused further amendment until the Motion for the Fourth

16  Amended Complaint, after three previous active adjudications

17  on the merits of the complaints.  And so, your Honor, to me,

18  this is a motion that ought to be granted and we should have

19  no further argument on it.  Thank you.

20          THE COURT:  Okay.  It's our practice to let the

21  other side argue, just because.

22          MR. CALAMARI:  I apologize.

23          THE COURT:  All right.  Go ahead.

24          MR. JENKINS:  Thank you, your Honor, and may it

25  please the Court:

1          This, your Honor, is the First Amended Complaint

2     that RFC seeks leave to file.  It is 549 pages long; 96

3     percent of it consists entirely of exhibits.  Sierra

4     contends that, particularly in light of the fact that this

5     is the First Amended Complaint of many that is about to hit

6     this Court's docket, that the Court should deny RFC leave to

7     amend for three reasons:  Futility, bad faith, and undue

8     prejudice.

9          First, however, I would like to briefly address

10    certain arguments that both were and were not made in both

11    RFC's reply brief and in Mr. Calamari's oral presentation,

12    the first which was nowhere addressed.  Now, Exhibit C to

13    this complaint is a 195-page list of 9,000 loans that Sierra

14    sold to RFC over a period ranging from the year 2000 all the

15    way through September 2007.

16         Now, we don't know precisely or in any sense of

17    the word how many of these loans or which loans RFC contends

18    to be defective.  We know that it is something of a moving

19    target.  In the original complaint RFC said that dozens of

20    Sierra loans were allegedly defective.  In the proposed

21    First Amended Complaint they now have said that that number

22    is in the hundreds.  And on page 5 of RFC's reply they are

23    now contending that Sierra sold thousands of defective loans

24    to RFC and now it faces hundreds of millions of dollars in

25    liability as a result.

1          THE COURT:  But isn't that why God invented

2     discovery?

3          MR. JENKINS:  Well, in theory yes.  But under

4     *Twombly-Iqbal* the doors of discovery don't get opened until

5     Plaintiff has first proved that they actually have a

6     meritorious case.  And the issue here is --

7          THE COURT:  That's kind of an overstatement of

8     *Iqbal.*  They have to allege a plausible claim, correct?

9          MR. JENKINS:  Plausible being the key word.

10          THE COURT:  Right.

11          MR. JENKINS:  Now here, Exhibit C, as I mentioned,

12     the last loan, the latest loan on this list, was purchased

13     by Sierra in September 2007.  Minnesota has a six-year

14     statute of limitations.  This action was filed on December

15     14th, 2013.  So we go back six years to December 14th, 2007,

16     every single loan on this list is time barred.  And we cite

17     in our brief the *Enervations* case which makes clear that

18     under Minnesota law a breach of contract accrues for statute

19     of limitation purposes upon the moment of breach, in this

20     case when the loan was sold, regardless of whether or not

21     damages have yet to occur and do not occur until some future

22     point in time.

23          Now, neither the original complaint, the amended

24     complaint, or even the reply brief which doesn't even

25     address our statute of limitations argument, nothing is said

1    regarding potential invocation of any sort of tolling on the

2    statute of limitations.  So we now have a claim that appears

3    to be completely facially time barred, and that was the

4    exact basis in the *Streambend* decision which was very

5    recent, I think January 28th, 2014, for denying leave to

6    amend on the basis that all of the claims asserted were

7    facially time barred.

8              Now, moving onto --

9              THE COURT:  Let me interrupt there.  What's in

10   Exhibit A and B?  In other words, are all of the claims --

11   is it your contention that Exhibit C is all of the loans

12   that are the subject of this complaint and therefore the

13   entire complaint is time barred or just those that are

14   referenced in Exhibit C?

15             MR. JENKINS:  Well, it would appear that they have

16   attached a list of 9,000 loans and they have represented in

17   the FAC that these are the loans on which RFC -- it's a

18   little unclear.  They said these are -- this is the universe

19   of loans that was sold.  They haven't identified, you know,

20   other than dozens/hundreds/thousands, how many of them they

21   allege to be defective.  But the fact of the matter is it

22   doesn't matter if any of them are defective because they are

23   all timed out under the statute of limitation.

24             THE COURT:  Okay.  And Exhibits A and B are not

25   lists of more recent loans?

13

1           MR. JENKINS:  No, your Honor.  Exhibit A is a

2    nine-page list of the contractual agreement between Sierra

3    and RFC.

4           Exhibits B-1 through B-15 consists of 513 pages of

5    excerpts from various unspecified versions of the Client

6    Guide applicable from various times from who knows when to

7    who else knows when.

8           And I would like to say a few words about these

9    example loans that RFC has offered in his proposed FAC.  And

10   first I would like to go to paragraph 17 which discusses --

11   really the only place that discusses them at all -- the 500

12   plus pages in Exhibits B-1 through B-15.  "The complete

13   versions" -- and I'm reading the second sentence of

14   paragraph 17.  "The complete versions of the Client Guide

15   are known to the parties and are too voluminous to attach in

16   their entirety:  The omitted portions of the client guides

17   do not affect the obligations set forth in this amended

18   complaint."

19          Not true, your Honor.  If you could turn to page

20   15, paragraph 42 a, b and c.  They are just the first three

21   of the example loans that RFC has provided, at least four of

22   which we already know have been expressly released and RFC

23   has not even offered to remove those loans from this list.

24          Now, Exhibit A talks about a loan that was

25   allegedly deficient that was originated by RFC.  And in the

14

1    fourth line in paragraph 42 a says:  "RFC's Client Guide

2    prohibited the sale to RFC of second lien loans under these

3    circumstances because of the obvious risk posed by negative

4    amortizing first liens."

5         Well, if you look through -- again, I'm going to

6    ask your Honor to take my word on this -- if you look

7    through Exhibits B-1 through B-15 there's absolutely nothing

8    about the standards for when or when not RFC will accept a

9    second lien mortgage that is inferior to a first that

10   negatively amortized.  Now the one place that that would be,

11   if you look at the index to Exhibit B-1, second lien, that's

12   a home equity loan, it should be somewhere in 6G.  And now

13   I'm looking at page 9 to Document 49-3, which sets out the

14   RFC's Home Equity Loan Program.

15        So in the first instance the statement that B-1

16   through B-15 contains all of the relevant provisions and

17   that no immaterial or irrelevant provision is not included

18   is just completely wrong.  The larger point for

19   *Iqbal-Twombly* purposes is that, okay, yes, they list some

20   loans and they list some problems that the loans purportedly

21   have, and they say, Oh, these problems were material.  But

22   nowhere, not once, do they actually go back to the actual

23   contractual obligations and even try to say, okay, in this

24   -- for example, the sale of RFC of negative lien loans under

25   these circumstances because of the obvious risk posed by

1    negative amortizing first liens.  Nowhere, not once, in any

2    of these I think 17 examples do they give an actual

3    provision that was actually breached.

4            And we think we know why that's so. It's because

5    they are -- RFC does not actually have the ability to go out

6    and find its loan files or search through electronic loan-

7    level data.  They are using the information that was used by

8    the Plaintiffs in the securitized mortgage litigation cases

9    filed against RFC by, among other lawyers, Mr. Calamari

10   himself.  And so they are not actually doing their own work.

11   They are recycling the work of Plaintiff's lawyers, but that

12   work involved an entirely different set of representations

13   and warranties.

14           So they are not quite sure based on this limited

15   data which provisions of the client guides for RFC that any

16   of these loans actually violated.  And under *Iqbal-Twombly*

17   maybe they don't have to do it dozens or hundreds or

18   thousands of times, however many loans are at issue, but

19   they ought to be able to do it at least once and they don't.

20           And in fact if you look at loan B, paragraph 42 b

21   in the FAC, it says:  "Sierra Pacific had indeed failed to

22   verify the borrower's assets as was required by the Client

23   Guide."  Well, where is that provision?  I have no idea even

24   just looking at the table of contents, but certainly nothing

25   in Exhibits B-1 through B-15 says anything about the

1    requirement of correspondent lender to verify the borrower's

2    assets.  Maybe it's in some other part of the manual, but I

3    don't know.  And the First Amended Complaint says that

4    anything that's not in here is not relevant.  That's clearly

5    not the case.

6         Same thing with 42 c.  It turns out that Sierra

7    Pacific had never supplied any documentation of the

8    borrower's purported business and searches of various city

9    and state business records revealed no record whatsoever of

10   the borrower's business.

11        Well, okay.  But again, what provision did that

12   breach specifically?  Because, again, there's nothing in

13   this 513 page or 15 Exhibit Bs that speaks to an obligation

14   for Sierra Pacific or any other correspondent lender to

15   supply any documentation.  So none of these examples

16   actually get by *Iqbal-Twombly* because they still don't tell

17   us what provision was actually breached.  They missed that

18   critical step.  And they contradict the language of earlier

19   in the First Amended Complaint that Exhibit Bs are all you

20   need to define the source of the obligation for all of the

21   loans at issue in this case.  And their example loans show

22   that that is not truly the case.

23        I would like to say a few words about the release

24   agreements, and we've identified three of them.  And those

25   release agreements create problems for RFC and in particular

1    this First Amended Complaint on three levels.

2           Now, first, the three that we've attached, the big

3    one is the December 17, 2007 agreement.  And it lists 29

4    loans that are expressly released for all time.  There are

5    covenants not to sue.  There are express releases of any and

6    all claims and any and all rights moving forward.  And yet

7    these loans are listed in Exhibit C and RFC actually uses

8    four of them as their example loans.

9           And that in and of itself is a violation of the

10   settlement agreement.  There's no dispute as to authenticity

11   of these settlement agreements.  And cases have held that

12   the Court may look beyond the realm of the pleadings to

13   documents embraced by the pleadings.  That's the *Johnson v*

14   *Homecoming*s decision that we cite.  *Enervations* also stands

15   for that proposition.  *Streambend* itself actually looked at

16   a reported document from the public assessor to determine

17   that all of the Defendants' proposed claims in the Amended

18   Complaint were time barred.

19          So -- and more concerning is the fact that for all

20   of these loans, and all of these settlement agreements, we

21   have a prevailing party attorney's fees provision which

22   shows sort of the fundamental problem here.  No solvent

23   Plaintiff would actually bring claims predicated on these 39

24   loans or any of the others covered by this settlement

25   agreement because there would be a severe financial risk in

1     doing so.  But in this case, we have a bankruptcy debtor

2     that sort of lacks the typical motivations to play by the

3     rules.  They have no downside.  They have no exposure to

4     counterclaims for attorney's fees or prevailing party

5     attorney's fees, judgments, and they are in liquidation.

6     They have absolutely no future.  They have no skin in the

7     game.  So they have absolutely nothing to lose by taking an

8     outside swing at Sierra and 75 plus other correspondent

9     lenders and hoping that they get lucky.

10          The second problem with the releases and covenants

11    not to sue is that, well, yes, they are in fact expressly

12    suing for continuing liability on loans that were previously

13    repurchased.  And in fact if you look at paragraph 5 of the

14    First Amended Complaint in which RFC is talking about

15    repurchased loans, the very last sentence reads:  "Even

16    those loans Sierra Pacific repurchased have continued to

17    contribute to RFC's losses and liabilities, and the parties'

18    agreement expressly provides that RFC may pursue additional

19    recoveries stemming from those loans."  Well, no, they can't

20    under this settlement agreement which releases and covenants

21    not to sue with respect to those loans.

22          Furthermore, paragraph 43 of the proposed First

23    Amended Complaint says again, last sentence, "While Sierra

24    Pacific has over the parties' course of dealing repurchased

25    some individual loans, thereby acknowledging it sold

1    defective loans to RFC," which is not true because every

2    settlement agreement also contained a disclaimer of

3    wrongdoing provision that applied to both parties, "it has

4    in no way fully compensated RFC for the breaches or

5    representations or warranties or the losses stemming from

6    the universe of defective loans Sierra Pacific sold to RFC

7    over time."

8            Now, they say in their reply brief closure

9    provision that seems to suggest that no, we're not in fact

10   suing for liability on previously repurchased loans.  If you

11   look at paragraph 33 of the proposed FAC, which is the

12   provision they quote, they say, Well, additionally, prior to

13   the commencement of this lawsuit, Sierra Pacific previously

14   conceded that certain of its loans to RFC were materially

15   defective.  In that regard, Sierra Pacific has already paid

16   substantial sums to RFC to cover those defects.  In this

17   action RFC is not seeking to recover on those loans."

18           I don't know what loans those are, your Honor.

19   Because, as I said, every settlement agreement contained a

20   non-liability and no admission of wrongdoing provision.  So

21   when they talk about Sierra Pacific having previously

22   conceded that certain of its loans to RFC were materially

23   defective, not a clue what loans they are.  But they are

24   certainly none of the loans in the settlement agreements at

25   issue because the parties agree that there was no admission

1    of fault with respect to any of those loans.

2            Now, the last and probably the most significant

3    problem posed by the one particular settlement agreement,

4    the December 19th, 2007 settlement, which again came after

5    every single loan listed in Exhibit C, all 9,000 of them.

6    And in that provision in return for payment of one million

7    dollars, RFC agreed to retroactively release Sierra from any

8    continuing liability on any loan that subsequently turned

9    out RFC discovered that they believed it was materially

10   defective.

11           Unless -- and there are two exceptions but this is

12   the one I want to focus on now -- unless RFC can show that

13   the loan went bad within one year.  The borrower didn't make

14   12 consecutive monthly payments.  As long as the loan didn't

15   go bad within one year, Sierra is released from any and all

16   liability on any of these loans.

17           Now, Sierra sold these loans to RFC.  We don't

18   have the borrower payment information.  And according to

19   attorney Jeff Lipps, who was RFC's counsel in the bankruptcy

20   action and testified several times, one instance we provided

21   in our opposition papers, that RFC doesn't have access to

22   the -- a great deal of the loan-level electronic data that

23   they would need in order to make a determination whether or

24   not a loan went bad within the first year.

25           And, you know, therefore, we're going to be facing

1      a lot of claims and we're going to have to expend a lot of

2      time and a lot of attorney's fees to establish the -- and

3      this I think, your Honor, is one aspect of undue prejudice.

4      You know, a regular solvent litigant would go do its

5      homework and fire up these systems and make sure that

6      whatever loans it was suing on did not violate a prior

7      release with an attorney's fees provision.  And yet RFC's

8      attitude --

9              THE COURT:  Let me make sure -- I think I

10     understand your position but let me make sure I'm clear on

11     the overall strategy.  So if we deny their Motion to Amend,

12     the hearing on your Motion to Dismiss the original complaint

13     will go forward.  You anticipate prevailing, and this case

14     is over?

15             MR. JENKINS:  Ideally that would be nice.  I am a

16     realist, your Honor, and I recognize that your Honor has

17     extremely broad discretion here.  I don't know that a death

18     knell is necessarily the appropriate result.  RFC does, I

19     think -- the case can be made that they have a right to go

20     back, to do their homework, to figure out whether or not

21     they have claims that aren't time barred, that aren't

22     released.  They can allege with the level of specificity

23     required by *Iqbal-Twombly*.  But it is not this complaint,

24     your Honor.

25             So --

1              THE COURT:  So the scenario I just posited would

2     be your best case.  The more realistic is that we deny the

3     motion but they go back and make another Motion to Amend

4     with a different amended complaint that more specifically

5     identifies which loans they contend are defective.

6              MR. JENKINS:  And eliminates the ones that

7     patently violate the statute of limitations and that aren't

8     covered by the release.

9              THE COURT:  And the releases.

10             MR. JENKINS:  And that in fact one of the

11    decisions -- I won't get into it.  But, yeah, I think in

12    essence a denial of leave to amend without prejudice.  If,

13    say, this one, this document, not here, not today, not this

14    court.  But if you go back and if you think you can do

15    another one and if you think that you can pass muster,

16    frankly, under Rule 11 in doing so, then I suppose I have to

17    concede that they would deserve another shot.

18             But this complaint has too many problems and it

19    would be unfair and unduly prejudicial to Sierra to have to

20    defend claims that are clearly meritless when at the end of

21    the day it's contracted for a remedy to recover attorney's

22    fees or counterclaim for breach of a covenant not to sue.

23    It's just something that's not going to work against a

24    bankrupt debtor.

25             THE COURT:  Okay.  Thank you.

```
 1              MR. JENKINS:  Thank you.

 2              THE COURT:  Anything else?

 3              MR. CALAMARI:  Just very quickly, your Honor.

 4         The statute of limitations issue, what we didn't

 5    hear is the fact that when the RFC entity went into

 6    bankruptcy it tolls the statute of limitations.  And

 7    therefore, with regard to the breach of contract claims, the

 8    statute of limitations stopped running, if you will, in

 9    2011.

10         Equally, the indemnity claims, which are the

11    principal claims asserted here, indemnity for losses that

12    RFC had to pay out to creditors, the statute of limitations

13    does not begin to run on those claims until the indemnity --

14    the obligation for which you seek indemnity is fulfilled.

15         And so the -- if they want to raise a defense of

16    statute of limitations they can do so.  If they want to make

17    a Motion to Dismiss based on statute of limitations

18    grounds --

19              THE COURT:  Well, let me ask you this.  Is this

20    the complaint you think you're gonna prevail on?  In other

21    words, as I understand it there's still going to probably

22    be -- if I grant your motion.

23              MR. CALAMARI:  Um-hum.

24              THE COURT:  It sounds to me like they are going to

25    make a Motion to Dismiss it making all these same arguments
```

```
 1    again.

 2              MR. CALAMARI:  Um-hum.

 3              THE COURT:  Is it -- you're confident that this

 4    complaint will survive a Motion to Dismiss, correct?

 5              MR. CALAMARI:  We are very confident that the

 6    complaint will survive the Motion to Dismiss.  If your Honor

 7    is suggesting that leave to amend would be granted but we

 8    should take into account what we've heard in argument and

 9    put in an amended complaint to the extent we think we

10    should --

11              THE COURT:  I'm not suggesting anything.  I'm

12    asking questions.

13              MR. CALAMARI:  Okay.  Well, yes, we are very

14    confident that this complaint would survive a Motion to

15    Dismiss and we would -- we would --

16              THE COURT:  And if it doesn't, if a Motion to

17    Dismiss is granted, what happens next?  Would there be yet a

18    new amended complaint or a request to amend the complaint or

19    file a new lawsuit or are we gonna be done at that point?

20              MR. CALAMARI:  I can't say what would happen next.

21    Obviously it would depend on the grounds that the Court,

22    assuming it didn't sustain the complaint, assuming the Court

23    dismissed the complaint on some grounds, if the grounds were

24    curable, I certainly would think we would ask for leave to

25    cure those grounds.  That would not be unusual.  In the
```

```
 1    course of litigation, the complaint is supposed to provide

 2    notice of claims.  It's not supposed to be a document that

 3    outlines an entire case.  However, you know, again, if the

 4    grounds could not be cured, that that -- that the Court

 5    cited, then more than likely it would result in an appeal

 6    rather than yet another attempt to amend.

 7              THE COURT:  And what about the contention that

 8    your client is not constrained by the usual economic

 9    constraints by reason of the fact that it's an estate in

10    bankruptcy?

11              MR. CALAMARI:  I think that's rhetoric for an

12    argument here.  There is a liquidating trust, ResCap, which

13    took over responsibility for these claims.  The trust is

14    funded.  I understand our obligations under Rule 11.  We

15    take them very seriously.  I understand that there could be

16    claims that, if we pursue them, that might be subject to an

17    attorney's fees to a prevailing party.  I don't have any

18    reason to believe --

19              THE COURT:  Is that trust sufficiently funded to

20    provide payment of attorney's fees if they are the

21    prevailing party?

22              MR. CALAMARI:  Yeah, I believe that it is.  I

23    don't want to -- to make a statement on the record in court

24    that I don't know absolutely certainly, but I believe the

25    trust is more than sufficiently funded to make an award of
```

1   attorney's fees.  The trust has got substantial funding.

2   It's paid out billions of dollars in claims, and it has

3   numerous claims to administer.  There is a reserve.  I'd

4   imagine the reserve is a public number but I did not

5   represent the trust in the bankruptcy and I don't know the

6   numbers.  But that is certainly, to me, a red herring here.

7   I can't imagine that there is not sufficient money to cover

8   an attorney's fees award if that were to happen.

9                THE COURT:  Okay.  All right.

10               MR. JENKINS:  May I respond briefly, your Honor?

11  Just two points.

12               THE COURT:  30 seconds.

13               Were you done, Mr. Calamari?

14               MR. CALAMARI:  Yes, unless you had other

15  questions.

16               THE COURT:  No, that was it.  Thank you.

17               MR. JENKINS:  Two quick points, your Honor.

18               Bankruptcy tolling.  We actually dispute that

19  bankruptcy tolling would apply because that particular

20  federal statute applies only to claims brought by a trustee

21  or a debtor in possession.  Upon plan confirmation on

22  December 17th, RFC was no longer a debtor in possession.  So

23  we don't think that provision applies.

24               But more appropriately for the pleadings analysis,

25  it's not in the pleadings.  They didn't even address our

1    statute of limitation argument in their reply brief.  So

2    it's -- any contention that there may be some tolling

3    mechanism at work here, not in the complaint, not in the

4    First Amended Complaint, not in their reply brief.  So if

5    they want tolling, the rule is they need --

6           THE COURT:  Yeah, but isn't the statute of

7    limitations a defense?  You plead that in your answer.  You

8    say this claim should be dis -- or a Motion to Dismiss, it

9    should be dismissed because statute has expired.  Or a

10   defense to it in answer to paragraphs 1 through 40 whatever,

11   we contend that statute of limitations has expired.

12          MR. JENKINS:  We do cite several cases in our

13   papers, in our opposition, the *Enervations* case and the

14   *Streambend* case, that say when the claims in a complaint are

15   clearly and facially time barred, that -- and there's no

16   factual allegation that would support the application of

17   equitable tolling, then the claim is properly dismissed on

18   the 12(b)(6) motion, and on some occasions Rule 11 sanctions

19   have been imposed.

20          The final issue, your Honor, goes to the issue of

21   indemnification and Mr. Calamari's characterization of when

22   the statute of limitation accrues.  If all of the

23   indemnification claims are predicated on breaches of

24   representations and warranties, there are no cases outside

25   the context of an insured's duty to indemnify that say that

1    indemnification claims accrue only upon the incurment [sic]

2    of a judgment or settlement that gives rise to

3    indemnification.

4          So the statute of limitation for both claims, both

5    of which are predicated in breach of contract, are the same.

6    And with that I thank your Honor for his time.

7          THE COURT:  Okay.  Thank you all for coming.

8    Thank you for enduring our Minnesota winter, even though

9    it's spring.  I'll take the matter under advisement, issue

10   an order shortly, and we are in recess or do we start the

11   other one at 10:00 and we're now 20 minutes late?  So we're

12   in recess.

13         MR. CALAMARI:  Thank you, your Honor.

14         MR. JENKINS:  Thank you, your Honor.

15         (Court adjourned at 10:21 a.m.)

16                       *     *     *

17

18         I, Carla R. Bebault, certify that the foregoing is

19   a correct transcript from the digital audio recording of

20   proceedings in the above-entitled matter, transcribed to the

21   best of my skill and ability.

22

23         Certified by:   s/Carla R. Bebault
                           Carla Bebault, RMR, CRR, FCRR

24

25