# EXHIBIT 6

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

|  |  |
|---|---|
| RESIDENTIAL FUNDING COMPANY, LLC, <br><br> Plaintiff, <br><br> v. <br><br> SIERRA PACIFIC MORTGAGE COMPANY, INC., <br><br> Defendant. <br> _____ <br> SIERRA PACIFIC MORTGAGE COMPANY, INC., <br><br> Counterclaimant, <br><br> v. <br><br> RESIDENTIAL FUNDING COMPANY, LLC, and RESCAP LIQUIDATING TRUST, <br><br> Counterdefendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Case No. 0:13-cv-03511-RHK-FLN

**SIERRA PACIFIC MORTGAGE COMPANY, INC.'S AMENDED ANSWER TO FIRST AMENDED COMPLAINT OF RESIDENTIAL FUNDING COMPANY, LLC AND COUNTERCLAIMS**

**DEMAND FOR JURY TRIAL**

Sierra Pacific Mortgage Company, Inc. ("Sierra") submits its amended Answer to Residential Funding Company, LLC's ("RFC") First Amended Complaint ("FAC") and Counterclaims as follows:

## ANSWER

## NATURE OF ACTION

1.     Sierra admits that RFC was in the business of, among other things, acquiring and securitizing residential mortgage loans (together with multiple other affiliated entities) at times prior to its bankruptcy in May 2012.

2.     Sierra admits that RFC acquired mortgage loans from hundreds of different originators, including its own affiliated entities and other bankruptcy Debtors.  Sierra lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, and on that basis, denies them.

3.     Sierra admits that it sold mortgage loans to RFC.  Sierra lacks knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph, and on that basis denies them.

4.     Sierra lacks knowledge and information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

5.     Sierra denies having any liability in connection with any loan sold to RFC, denies that any Sierra loans breached any representations or warranties or were otherwise defective, and denies that "repurchasing" or "otherwise compensating RFC" with respect to any loan constituted an acknowledgement that such loan "contained material defects." Sierra admits that RFC is attempting to "pursue additional recoveries" on loans

previously released, in violation of its contractual promise not to do so.  Sierra denies the remaining allegations.

6.    Sierra denies that it ever failed to honor any contractual representations and warranties owed to RFC.  Sierra admits that RFC and numerous of its affiliates, including many of the other bankruptcy Debtors, were sued by numerous entities for, among other things, tortious and negligent misconduct including securities fraud, misrepresentation, negligence, and loan servicing violations.  Sierra lacks knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph, and on that basis denies them.

7.    Sierra admits that RFC and 50 of its affiliated entities filed for bankruptcy in May 2012.  Sierra admits that RFC and numerous of its affiliates, including many of the other bankruptcy Debtors, were sued by numerous entities for, among other things, tortious and negligent misconduct including securities fraud, misrepresentation, negligence, and loan servicing violations.  Sierra lacks knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph, and on that basis denies them.

8.    Sierra denies that it ever sold RFC defective loans, and denies liability to RFC on any other basis.  Sierra admits that bankruptcy proofs of claim were filed against RFC and many of the other bankruptcy Debtors for, among other things, tortious and negligent misconduct including securities fraud, misrepresentation, negligence, and loan servicing violations.  Sierra lacks knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph, and on that basis

denies them.

9.      Sierra admits that there were 51 separate bankruptcy Debtors and 51 separate bankruptcy actions, administrated jointly for administrative purposes only. Sierra lacks knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph, and on that basis denies them.

10.     Sierra denies each and every allegation contained in the paragraph.

11.     Sierra states that the FAC speaks for itself, and that RFC seeks recovery on loans previously released, in violation of its contractual promise not to do so.  Sierra denies that it is liable to RFC for any reason or that RFC has incurred any liabilities or expenses due in any way to Sierra, and denies each and every remaining allegation contained in the paragraph.

## PARTIES

12.     Sierra admits, on information and belief, that the Rescap Liquidating Trust (the "Trust") is, among other things, a publicly-traded Delaware statutory trust, RFC's successor in interest, and controls RFC.  Sierra admits that RFC contends that it is a Delaware limited liability company with its principal place of business in Minneapolis, Minnesota.  Sierra lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and on that basis denies them.

13.     Sierra admits the allegations.

## JURISDICTION AND VENUE

14.     Sierra admits, on information and belief, that this Court has subject matter

jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  Sierra denies that this action arises under Title 11 or arises in the Debtors' bankruptcy proceedings.  Sierra lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and on that basis denies them.

15.    Sierra admits that the parties have contractually agreed that Minnesota is the exclusive venue.  Sierra lacks knowledge and information sufficient to form a belief as to the truth of any remaining allegations contained in this paragraph, and on that basis denies them.

**FACTUAL BACKGROUND**

16.    Sierra states that Exhibit A to the FAC consists of multiple separate contractual agreements, none of which, individually or collectively, fully describe the parties' contractual relationship at any point in time.  Sierra admits that it sold mortgage loans to RFC.  Sierra lacks knowledge and information sufficient to form a belief as to the truth of any remaining allegations contained in this paragraph, and on that basis denies them.

17.    Sierra states that the exhibits to the FAC speak for themselves.  Sierra denies that the "complete versions" of the Client Guide are available or accessible to Sierra, or that the omitted portions of the Client Guides do not affect that obligations alleged in the FAC.  Sierra denies that the Contract and Client Guide collectively accurately describe the contractual relationship between the parties.  Sierra lacks knowledge and information sufficient to form a belief as to the truth of any remaining allegations contained in this paragraph, and on that basis denies them.

18.    Sierra presently lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph, and on that basis denies them.

19.    Sierra admits that it originated and performed underwriting and closing functions with respect to certain mortgages.  Sierra denies that it was understood between the parties that "RFC would generally not be re-underwriting the loan" and, on information and belief, RFC, other Debtors, and other entities involved in the mortgage securitization process routinely utilized third-party auditors to conduct loan quality due diligence by re-underwriting batches of individual loans.  Sierra lacks knowledge and information sufficient to form a belief as to the truth of any remaining allegations contained in this paragraph, and on that basis denies them.

20.    Sierra denies that it was "well aware" of what RFC did with the loans after sale.  On information and belief, numerous other affiliated entities and Debtors were involved in the loan securitization process.  Sierra lacks knowledge and information sufficient to form a belief as to the truth of any remaining allegations contained in this paragraph, and on that basis denies them.

21.    Sierra denies that it was "well aware" of what RFC did with the loans after sale.  Sierra lacks knowledge and information sufficient to form a belief as to the truth of any remaining allegations contained in this paragraph, and on that basis denies them.

22.    Sierra asserts that the full and complete versions of the Client Guides speak for themselves.  Sierra admits knowing generally that RFC resold and serviced loans, and denies any remaining allegations.

23.     Sierra states that Exhibit A to the FAC and the full and complete versions of the Client Guides – which changed frequently – speak for themselves.  Sierra admits that, to the extent it made any representations and warranties to RFC, they were on a loan-by-loan basis.  Sierra denies any remaining allegations.

24.     Sierra denies the allegations.

25.     Sierra states that the full and complete versions of the Client Guides – which changed frequently – speak for themselves, and denies the allegations.

26.     Sierra states that the full and complete versions of the Client Guides – which changed frequently – speak for themselves, and denies the allegations.

27.     Sierra states that the full and complete versions of the Client Guides – which changed frequently – speak for themselves, and denies the allegations.

28.     Sierra admits that RFC can only seek loan-level remedies with respect to any allegation of breach.  Sierra states that the full and complete versions of the Client Guides – which changed frequently – speak for themselves, and denies the remaining allegations.

29.     Sierra states that Exhibit A to the FAC, the full and complete versions of the Client Guides (which changed frequently), and *Residential Funding Co., LLC v. Terrace Mortg. Co.*, 725 F.3d 910 (8th Cir. 2013) speak for themselves, and denies the allegations.

30.     Sierra states that the full and complete versions of the Client Guides – which changed frequently – speak for themselves, and denies the allegations.

31.     Sierra states that the full and complete versions of the Client Guides –

which changed frequently – speak for themselves, and denies the allegations.

32.    Sierra states that the full and complete versions of the Client Guides – which changed frequently – speak for themselves, and denies the allegations.

33.    Sierra denies that it has ever conceded selling RFC "materially defective loans" and that it has paid RFC "substantial sums" to cover loan defects.   Sierra states that it previously paid sums to obtain releases and promises not to ever sue or take any legal action whatsoever, however denominated, with respect to particular loans, promises that the FAC violates.

34.    Sierra denies the allegations.

## Defendants Materially Breached Numerous Loan-Level Representations and Warranties.

35.    Sierra lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in this paragraph, and on that basis denies them.

36.    Sierra denies violating any representations or warranties to RFC.  Sierra lacks knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph, and on that basis denies them.

37.    Sierra denies the allegations.

38.    Sierra lacks knowledge and information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

39.    Sierra lacks knowledge and information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

40.    Sierra denies that it violated any version of the Client Guide or breached

any representations or warranties to RFC. Sierra lacks knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph, and on that basis denies them.

41.    Sierra denies the allegations.

42.    Sierra denies that it violated any version of the Client Guide or breached any representations or warranties to RFC. Sierra states that the FAC violates RFC's releases and promises not to ever sue or take any legal action whatsoever, however denominated, with respect to particular loan. Sierra lacks knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph, and on that basis denies them.

43.    Sierra denies that it ever breached any representations or warranties made to RFC, sold RFC any defective loans, or caused RFC any loss. Sierra denies ever "acknowledging it sold defective loans to RFC." Sierra states that it previously paid sums to obtain releases and promises not to ever sue or take any legal action whatsoever, however denominated, with respect to particular loans, promises that the FAC violates. Sierra denies any remaining allegations.

44.    Sierra denies the allegations.

**RFC's Liabilities and Losses Stemming from Defendants' Breaches**

45.    Sierra denies the allegations.

46.    Sierra denies that any of the loans it sold RFC were defective or ever caused RFC to sustain any liability. Sierra lacks knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph,

and on that basis denies them.

47.   Sierra denies that any of the loans it sold RFC were defective or caused RFC to sustain any liability.   Sierra denies the remaining allegations to the extent they reference or relate to loans that Sierra sold to RFC.   Sierra lacks knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph, and on that basis denies them.

48.   Sierra denies that any of the loans it sold RFC were defective.   Sierra lacks knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph, and on that basis denies them.

49.   Sierra lacks knowledge and information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

50.   Sierra lacks knowledge and information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

51.   Sierra lacks knowledge and information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

52.   Sierra denies that any of the loans it sold RFC were defective.   Sierra lacks knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph, and on that basis denies them.

53.   Sierra denies that any of the loans it sold RFC were defective or caused RFC any loss.   Sierra lacks knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph, and on that basis denies them.

54.     Sierra denies that any of the loans it sold RFC were defective or caused
RFC any loss.  Sierra lacks knowledge and information sufficient to form a belief about
the truth of the remaining allegations contained in this paragraph, and on that basis denies
them.

55.     Sierra lacks knowledge and information sufficient to form a belief about the
truth of the allegations contained in this paragraph, and on that basis denies them.

56.     Sierra denies that any of the loans it sold RFC were defective or caused
RFC any loss.  Sierra lacks knowledge and information sufficient to form a belief about
the truth of the remaining allegations contained in this paragraph, and on that basis denies
them.

57.     Sierra denies that any of the loans it sold RFC were defective or caused
RFC any loss.  Sierra lacks knowledge and information sufficient to form a belief about
the truth of the remaining allegations contained in this paragraph, and on that basis denies
them.

58.     Sierra denies that any of the loans it sold RFC were defective or caused
RFC any loss.  Sierra lacks knowledge and information sufficient to form a belief about
the truth of the remaining allegations contained in this paragraph, and on that basis denies
them.

59.     Sierra denies the allegations to the extent they purport to contend or imply
that RFC did not receive any due diligence reports regarding the quality of loans in its
securitization pools until October 2008.  Sierra lacks knowledge and information
sufficient to form a belief about the truth of the remaining allegations contained in this

paragraph, and on that basis denies them.

60.    Sierra denies that any of the loans it sold RFC were defective or caused RFC any loss.  Sierra lacks knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph, and on that basis denies them.

61.    Sierra denies that any of the loans it sold RFC were defective or caused RFC any loss.  Sierra lacks knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph, and on that basis denies them.

62.    Sierra lacks knowledge and information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

63.    Sierra denies that any of the loans it sold RFC were defective or caused RFC any loss.  Sierra states that the First Amended Complaint in *New Jersey Carpenters et al. v. Residential Capital, LLC et al.*, Case No. 08-cv-08781 (HB) (S.D.N.Y.) speaks for itself.  Sierra lacks knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph, and on that basis denies them.

64.    Sierra denies that any of the loans it sold RFC were defective or caused RFC any loss.   Sierra denies the allegations to the extent they purport to contend or imply that correspondent lenders were RFC's only source of "mortgage loan data" or that RFC did not receive pre-securitization due diligence reports regarding mortgages comprising its loan pools.  Sierra states that the First Amended Complaint in *New Jersey*

*Carpenters et al. v. Residential Capital, LLC et al.*, Case No. 08-cv-08781 (HB) (S.D.N.Y.) speaks for itself.  Sierra lacks knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph, and on that basis denies them.

65.     Sierra denies that any of the loans it sold RFC were defective or caused RFC any loss.  Sierra lacks knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph, and on that basis denies them.

66.     Sierra lacks knowledge and information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

67.     Sierra admits that RFC and numerous of its affiliates, including many of the other bankruptcy Debtors, were sued by numerous entities for, among other things, tortious and negligent misconduct including securities fraud, misrepresentation, negligence, and loan servicing violations.  Sierra lacks knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph, and on that basis denies them.

68.     Sierra lacks knowledge and information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

69.     Sierra denies that any of the loans it sold RFC were defective or caused RFC any loss.  Sierra lacks knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph, and on that basis denies them.

70.     Sierra denies that any of the loans it sold RFC were defective or caused RFC any loss.  Sierra lacks knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph, and on that basis denies them.

71.     Sierra admits that in May 2012, 51 separate bankruptcy petitions were filed by RFC and 50 other related bankruptcy Debtors, and that the 51 separate bankruptcy actions were administrated jointly for administrative purposes only.   Sierra lacks knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph, and on that basis denies them.

72.     Sierra admits that many proofs of claim were filed against multiple Debtors by numerous entities for, among other things, tortious and negligent misconduct including securities fraud, misrepresentation, negligence, and loan servicing violations. Sierra admits that a small percentage of the proofs of claim referenced in this paragraph were filed against RFC.   Sierra denies that any of the loans it sold RFC were defective or caused RFC any loss.  Sierra lacks knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph, and on that basis denies them.

73.      Sierra lacks knowledge and information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

74.     Sierra denies that any of the loans it sold RFC were defective, caused RFC any loss, and that Sierra breached any representations or warranties made to RFC.  Sierra states that many proofs of claim were filed against multiple Debtors by numerous entities

14

for, among other things, tortious and negligent misconduct including securities fraud, misrepresentation, negligence, and loan servicing violations.  Only a small percentage of the proofs of claim identified in paragraph 72 were filed against RFC and/or based on breaches of representations or warranties made *by RFC*.  Sierra denies the allegations regarding RFC's alleged "reliance" on Sierra and other correspondent lenders, as they purport to incorrectly contend or imply that: (a) correspondent lenders were RFC's only source of "mortgage loan data"; (b) RFC did not receive pre-securitization due diligence reports regarding mortgages comprising its loan pools; and/or (c) Debtor securitization pools were not comprised of large numbers of loans originated and underwritten by other Debtor entities.

75.     Sierra states that the allegations of this paragraph are vague, as they appear to conflate multiple Debtors, proceedings, claimants, and unspecified "disputed issues."  Accordingly, Sierra lacks knowledge and information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

76.     Sierra states that the referenced "Findings of Fact" speak for themselves.  Sierra admits that this action was filed post-Plan confirmation on or about December 14, 2013, and that the Plan's "effective date" was on or about December 17, 2013.  Sierra states that the Plan speaks for itself, and that the allegation "RFC's RMBS-related liabilities became fixed through the confirmation of the Plan" is vague, misleading, and a legal conclusion to which no response is required; to the extent any response is required, Sierra denies the allegation.  Sierra lacks knowledge and information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis

15

denies them.

77.     Sierra denies that it has any contractual obligation to indemnify RFC for
anything.  Sierra denies that it breached any representations and warranties made to RFC.
Sierra denies that it sold RFC any defective loans.   Even assuming hypothetically that
Sierra *had* ever breached a representation or warranty made to RFC, Sierra denies that it
would even then be liable for any "portion" of the "global settlement" or RFC's other
alleged "liabilities and losses."   Sierra lacks knowledge and information sufficient to
form a belief about the truth of the allegations contained in this paragraph, and on that
basis denies them.

## COUNT ONE
## (BREACH OF CONTRACT)

78.     Sierra incorporates, as though fully set forth herein, each of its responses to
all of the preceding paragraphs.

79.     Sierra admits that it sold loans to RFC.   Sierra states that the actual
contractual documents, which changed over time, speak for themselves, and the term
"Agreement" is vague and misleading.  Sierra denies the remaining allegations.

80.     Sierra states that the complete versions of the Contracts, the Client Guides,
and other contractual documents speak for themselves.

81.     Sierra denies the allegations.

82.     Sierra states that RFC amended its original complaint in response to
Sierra's original Motion to Dismiss by adding the terms "materially breached" and
"materially," clarifying that RFC is only alleging liability for material breaches of

representations and warranties.  Sierra denies the allegations.

83.     Sierra states that RFC amended its original complaint in response to Sierra's original Motion to Dismiss by adding the term "material," clarifying that RFC alleges that only material breaches constituted "Events of Default."  Sierra denies the allegations.

84.     Sierra states that RFC amended its original complaint in response to Sierra's original Motion to Dismiss by adding the terms "material" and "materially" clarifying that RFC is only alleging liability for material breaches of representations and warranties.  Sierra denies the allegations.

85.     Sierra denies the allegations, and denies that it is liable to RFC in any amount.

### COUNT TWO
### (INDEMNIFICATION)

86.      Sierra incorporates, as though fully set forth herein, each of its responses to all of the preceding paragraphs.  Sierra alleges that "Indemnification" is not proper as a separate count, but is merely another (duplicative) remedy potentially available with respect to RFC's count for breach of contract.

87.     Sierra states that RFC amended its original complaint in response to Sierra's original Motion to Dismiss by adding the terms "material defects" and "materially defective," clarifying that RFC is only alleging liability for material contractual breaches of representations and warranties.  Sierra denies the allegations.

88.     Sierra denies that it breached any contractual obligations to RFC.  Sierra

denies that RFC has incurred any "liabilities, losses and damages, including attorneys' fees and costs" for which Sierra is liable. Sierra denies any remaining allegations.

89.     Sierra denies the allegations, and denies that it is liable to RFC in any amount.

## AFFIRMATIVE AND OTHER DEFENSES

Without taking on any burden of proof on any matter for which the burden rests on RFC, and without waiver of any defenses that Sierra is not required to plead at this time or not presently aware of, Sierra asserts the following defenses to the FAC:

### FIRST AFFIRMATIVE DEFENSE

The allegations of the FAC fail to state a cause of action for which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Even should it ultimately be adjudicated that Sierra is liable to RFC for some amount, such amount must be fully setoff, fully or partially, by RFC's liability for breach of promises not to sue contained in prior settlement agreements between the parties, as well as for recovery from collateral sources.

### THIRD AFFIRMATIVE DEFENSE

RFC has waived its claims and/or is estopped from asserting its claims by, among other things, having learned of alleged contractual breaches through pre-securitization due diligence or other means, and doing nothing, to Sierra's prejudice and detriment.

### FOURTH AFFIRMATIVE DEFENSE

RFC has expressly released and/or waived some or all of its alleged claims against

Sierra, and entered into an accord and satisfaction/novation with respect to some or all of its alleged rights to relief, by previously entering into settlement agreements with Sierra.

## FIFTH AFFIRMATIVE DEFENSE

RFC is barred by the equitable doctrine of unclean hands from recovering on some or all of the alleged claims against Sierra by reason of RFC's own inequitable actions, conduct and/or omissions, including but not limited to securities fraud, misrepresentation, willful and wanton negligence, and/or loan servicing violations, as well as acquiring loans from Sierra with the knowledge and intent that RFC and/or its affiliated entities would use them for such unlawful purposes.

## SIXTH AFFIRMATIVE DEFENSE

The applicable statutes of limitations governing, among other things, written contractual obligations, have expired with respect to some or all of the asserted claims.

## SEVENTH AFFIRMATIVE DEFENSE

Should it ultimately be adjudicated that Sierra breached any contractual obligation to RFC, such breach or breaches were not material.

## EIGHTH AFFIRMATIVE DEFENSE

RFC is barred from recovery on some or all of its claims, and/or Sierra is excused form any alleged nonperformance, on account of RFC's own breach of or failure to perform its own contractual obligations and covenants by, among other things, violating releases and promises not to sue contained in prior settlement agreements with Sierra, failing to provide Sierra with written notice and/or a right to appeal with respect to any alleged contractual breaches, and/or failing ever to declare any "Event of Default."

19

## NINTH AFFIRMATIVE DEFENSE

RFC's claims are barred, in whole or in part, by RFC's breaches of the covenant of good faith and fair dealing including, among other things, failing to timely notify Sierra of any alleges defaults or breaches and/or provide a right to appeal, failing to exercise fair and reasonable discretion in alleging defaults or breaches, and/or voluntarily paying sums or incurring liabilities in excess of RFC's actual obligations, if any.

## TENTH AFFIRMATIVE DEFENSE

The doctrine of acquiescence bars RFC's alleged indemnification rights due to RFC's inaction in the face of a dangerous condition.

## ELEVENTH AFFIRMATIVE DEFENSE

RFC knowingly assumed the risk of the damages or injuries alleged in the FAC.

## TWELFTH AFFIRMATIVE DEFENSE

RFC is barred from recovering its alleged damages from Sierra (or such recovery must be reduced) to the extent RFC failed to mitigate or reasonably attempt to mitigate its damages, and/or was comparatively at fault. In particular, without limitation, RFC: (1) paid sums and/or incurred liabilities larger than fair, reasonable, or necessary; (2) otherwise failed to take commercially reasonable and diligent efforts to avoid or minimize its alleged losses; (3) "waived in" and failed to remove problem loans, identified during due diligence, from its loan pools and instead failed to notify and/or misled investors; and (4) committed or participated in unlawful misconduct with respect to investors, and borrowers whose loans RFC serviced.

## THIRTEENTH AFFIRMATIVE DEFENSE

RFC's alleged right to indemnification is barred to the extent of its own willful and/or wanton negligence.

## FOURTEENTH AFFIRMATIVE DEFENSE

RFC's claims are barred by the doctrine of judicial estoppel because RFC previously successfully prevailed in other proceedings, or obtained a more advantageous outcome, by taking factual or legal positions contrary to or inconsistent with the theories it presently advances.  Such positions included, among others, that: (a) the Debtor loan pools did not contain loans with underwriting defects; (b) lawsuits against the Debtors were based not on inherent "defects" in the pooled loans, but misrepresentations about the underwriting standards that applied to those loans; (c) key evidence and data regarding the loans was unavailable or unduly burdensome to access; and (d) RFC's losses were attributable not to defective loans from correspondent lenders, but factors such as (i) the burdens of litigation; (ii) a widespread economic meltdown; and (iii) the pursuant of high-risk mortgages that increased the risk of borrower default.

## FIFTEENTH AFFIRMATIVE DEFENSE

RFC lacks standing to assert its claims because it assigned its rights, title and interest in those claims to third parties when it re-sold the loans on which it is suing, and RFC is not the real party in interest.

## SIXTEENTH AFFIRMATIVE DEFENSE

RFC's claims are barred in whole or in part by the doctrine of laches.

## SEVENTEENTH AFFIRMATIVE DEFENSE

RFC's claims are barred because any alleged damages were the result of alternative/superseding/intervening causes over which Sierra had no control, such as the actions or omissions of third parties and/or RFC's own agents, employees, or affiliates, market forces, and RFC's pursuit of high-risk mortgages.

## EIGHTEENTH AFFIRMATIVE DEFENSE

RFC may not recover its claimed damages in this action because they are speculative, vague, based on guesswork and conjecture, and would be impossible to ascertain or allocate in a fair, lawful, and just manner.

## NINETEENTH AFFIRMATIVE DEFENSE

RFC's claims are barred because it failed to comply with one or more contractual conditions precedent to bringing this lawsuit.

## TWENTIETH AFFIRMATIVE DEFENSE

The relief sought by RFC is barred, in whole or in part, by RFC's failure to join indispensable parties necessary to a full, fair, and final adjudication.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

The basis of RFC's claims and alleged damages against Sierra violate the due process clause of the U.S. Constitution.

## RESERVATION OF RIGHTS/OTHER DEFENSES

Sierra has not completed its investigation and discovery regarding the FAC and the claims asserted by RFC therein.  Sierra still has little idea which loans are at issue, or what representations and warranties they allegedly breached.  Sierra reserves the right to

assert additional affirmative defenses (or modify and/or supplement existing affirmative defenses) as supported by information or facts obtained through discovery or other means during this case.

WHEREFORE, Sierra prays for judgment as follows:

1.    That RFC takes nothing by its FAC;

2.    That the FAC against Sierra be dismissed with prejudice;

3.    That Sierra be awarded its costs and reasonable attorney's fees incurred defending this suit;

4.    That any relief in favor of RFC be offset by relief owed Sierra; and

5.    That Sierra be awarded any other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Sierra hereby demands a jury trial on all issues raised in the FAC.

## COUNTERCLAIM

## PARTIES

1.    Counterdefendant RFC is a Delaware limited liability company with its principal place of business in Minneapolis, Minnesota.  To the extent it has any real continued existence, it is a citizen of Minnesota and Delaware.  On information and belief, RFC currently exists solely to serve as the plaintiff in this case and other correspondent lender cases.  On information and belief, RFC has no assets or operations, is controlled and dominated by the Trust, and observes no corporate formalities.  Thus, Sierra would likely have little or no ability to either take discovery or recover from RFC

should Sierra prevail on its counterclaim at trial.

2.     On information and belief (and as alleged in the FAC), counterdefendant ResCap Liquidating Trust, a Delaware statutory trust (the "ResCap Trust") is the successor in interest to RFC; therefore, ResCap Trust is the true holder of the contractual rights, obligations, and claims alleged in both the FAC and this Counterclaim. The presence of RFC in this action, but not ResCap Trust, would serve only to insulate the real party in interest and unnecessarily thwart Sierra's ability to bring and prosecute this compulsory counterclaim. RFC's continued presence in this action rather than the real party in interest would only perpetrate injustice.

3.     ResCap Trust is a publicly traded statutory trust organized under the laws of Delaware. Delaware law permits a statutory trust to sue and be sued in its own name, but also requires the appointment of a trustee. The designated trustee for ResCap Trust is Wilmington Trust, N.A. ("Wilmington"), a national banking association.

4.     The U.S. Circuit Court of Appeals for the Eighth Circuit has determined that the citizenship of a national bank is determined by the location of its main office. On information and belief – and according to the websites for both the Office of the Comptroller of the Currency (Wilmington's primary federal regulator) and the Federal Deposit Insurance Corporation – Wilmington's main office is located at Rodney Square North, 1100 North Market Street, Wilmington, DE 19890. Thus, Wilmington is a citizen of Delaware only.

5.     The ResCap Trust therefore has citizenship only in Delaware, as it is organized under Delaware law and its trustee is a citizen of Delaware and nowhere else.

6.      Therefore, ResCap Trust is subject to service of process, and its presence does not deprive the Court of subject matter jurisdiction. Without ResCap Trust's presence in this action as the real party in interest, the Court would be unable to accord complete relief among the existing parties.  In fact, Sierra would be unable to obtain any relief, or in all likelihood even prosecute its claims.

7.      Counterclaimant Sierra is a corporation organized under the laws of California.  It is a mortgage company with offices in many states, but its principal place of business and nexus of operations is located in Folsom, California.  It is a citizen of California only.

## JURISDICTION AND VENUE

8.      This Court has subject jurisdiction over this matter pursuant to, *inter alia*, 28 U.S.C. §§ 1332 and 1367(a).  As described herein, this counterclaim and the claims presented by the FAC are so closely related that they form part of the same case or controversy.

9.      RFC is already the nominative plaintiff designated by the FAC.  As its successor, ResCap Trust is the real party in interest and subject to the personal jurisdiction of this Court.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events complained of herein – namely, the filing of the FAC in this courthouse on May 23, 2014 – occurred in this judicial district. As was recently litigated in this Court, the parties contractually agreed to Minnesota as the exclusive venue regarding the FAC, which indirectly references the settlement agreements (already familiar to the Court), on which Sierra bases its counterclaim; these

agreements are expressly governed by Minnesota law.

10.    This counterclaim is compulsory under F.R.C.P. Rule 13(a).    Sierra presently has the counterclaim against RFC, which arises out of the same transactions and occurrences that are the subject matter of the FAC.    It was RFC's very act of filing the FAC, under the direction and control of ResCap Trust as successor and the real party in interest, that gave rise to Sierra's counterclaim.

## FACTUAL BACKGROUND

11.    Sierra and RFC had a contractual correspondent lender relationship between 2000 to 2007, in which Sierra would sell RFC mortgage loans one at a time.

12.    Occasionally, RFC would request that Sierra repurchase certain mortgages, and the parties would bargain over such factors as which loans, on what terms, and for how much.

13.    Sierra and RFC entered into three binding and enforceable written settlement agreements in 2007 and 2008 (attached as Exhibits 1-3).    In all three settlements, RFC expressly released Sierra from any and all future liability with respect to particular loans – including loans on which the FAC now expressly sues and/or seeks additional and further relief.

14.    The first two agreements (Exhibits 1 & 2) included in Paragraph 3 express contractual promises that neither party would ever "*bring against the other party any other suits or actions, however denominated concerning any claim, demand, liability or cause of action that is the subject of this Agreement*."    (Emphasis added.)

15.    In the third and final settlement (Exhibit 3), which cost Sierra just a fraction

26

of the amounts it had paid for each of the first two settlements, RFC insisted on removing the promise not to sue. This demonstrates the great weight, significance, and materiality that the parties gave to the promises not to sue in the first two settlements. Recent events, in fact, have showed precisely why Sierra valued such provisions so highly, and the importance of according them the weight, authority, and enforceable effect that the parties clearly intended them to have.

16.    On May 23, 2014, RFC (controlled by the ResCap Trust, and through counsel it shares with the ResCap Trust) filed the FAC, changing the nature of the liability theory against Sierra and vastly expanding by an order of magnitude the overall quantity of Sierra loans allegedly at issue ("hundreds" (¶ 40) rather than "dozens"). The FAC for the first time purports to sue on loans that RFC previously released and promised not to sue on by: (a) seeking "additional recoveries" with respect to "loans Sierra Pacific repurchased," which the FAC counts among the "universe" of defective loans it is suing on (FAC, ¶¶ 5, 43); (b) specifically listing as "examples" of defective loans certain loans expressly released (¶¶ 42, 53); and (c) asserting that Sierra's prior repurchases were "concessions" that those loans were defective (¶¶ 5, 43), although all three settlements contain disclaimers of wrongdoing – making clear that RFC and the ResCap Trust have no intention of honoring the settlements.

17.    Moreover, on December 19, 2007, Sierra and RFC entered into the first settlement agreement ("December 19, 2007 Settlement") (Exhibit 1), which provided Sierra with broad-spanning retroactive releases and promises not to sue with respect to any allegedly defective loan sold to RFC, prior to December 19, 2007, that met at least

one of the following two criteria: (1) the borrower timely made the first 12 monthly loan

payments; or (2) the only "Event of Default" identified was "the overstatement of stated

income by the borrower(s)."

18.    Specifically, Section 2(b) of the December 19, 2007 Settlement provides:

> ...GMAC-RFC for itself, its present and past representatives, heirs,
> executors, administrators, successors, assigns, family, partners, employees,
> agents, and attorneys *will fully and forever release and discharge Client*...
> from all claims, demands, torts, damages, obligations, liabilities, costs,
> *expenses, rights of action, or causes of action arising out of the Subject
> Loans, and arising out of the Additional Loans*, but only where **the
> Additional Loans involve a borrower who has made the first twelve
> consecutive payments due GMAC-RFC within the month mandated by
> the contract, or (ii) where the overstatement of stated income by the
> borrower(s) is identified as the only Event of Default** of the GMAC-RFC
> Client Guide ("Client Guide").

(Exhibit 1, p. 3, emphasis added.)   The December 19 Settlement defined "Additional

Loans" as any loans:

> ...sold to GMAC-RFC on or before the effective date of this Agreement,
> which may be in breach of one or more Events of Default, as described in
> the Client Guide but which have not been identified as of the date of this
> Agreement...

(*Id*., p.1.)

19.    In addition, Section 3 of the December 19, 2007 Settlement contained an

express promise not to sue: the parties promised not to "*bring against the other party any

other suits or actions, however denominated concerning any claim, demand, liability or

cause of action that is the subject of this Agreement*." (*Id*., emphasis added.)

20.    The releases and covenants not to sue also apply to 29 specifically-

identified repurchased loans – all of which RFC now purports to sue on by seeking

"additional recoveries" with respect to "loans Sierra Pacific repurchased..." (FAC, ¶¶ 5, 43.)

21.    Similarly, on March 10, 2008, the parties entered into a settlement agreement ("March 10, 2008 Settlement") resolving seven loans, that contained releases and covenants not to sue virtually identical to those in the December 19, 2007 Settlement. (Exhibit 2.)  Among the expressly released loans were three of the "example" loans cited in the FAC: (1) Loan ID # 11208459 (FAC, ¶ 42(k)); (2) Loan ID # 11208467 (*Id.*, ¶ 42(l)); and (3) Loan ID # 11301585 (*Id.*, ¶ 42(n)).

## COUNT I

### (Breach of Contract - Settlement Agreement)

22.    Sierra incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

23.    The December 19, 2007 Settlement and the March 10, 2008 Settlement were and remain binding and enforceable, including the promises not to sue (Exhibits 1 and 2, ¶ 3).

24.    As described herein, RFC and the ResCap Trust violated the promises not to sue by filing the FAC.

25.    As a proximate result of these breaches, Sierra has been damaged in multiple ways, including but not limited to incurring attorneys' fees, paying for (and losing the use of) employee and management time and other company resources responding to and establishing the breaches, and in other ways.  The amount of damages sustained is in an amount according to proof at trial but not less than $75,000.

## PRAYER FOR RELIEF

WHEREFORE, based on the foregoing, Sierra respectfully requests that this Court:

1.     For general and specific damages against RFC and the ResCap Trust according to proof at time of trial;

2.     For attorneys' fees and costs according to proof;

3.     For interest as allowed by law; and

4.     For such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Sierra hereby demands a jury trial for all issues herein.

Dated: September 30, 2014                 Respectfully Submitted,


/s/ Jonathan M. Jenkins_____
Jonathan M. Jenkins
Admitted *pro hac vice*
Lara Kayayan
Admitted *pro hac vice*
JENKINS LLP
8075 West Third St., Suite 407
Los Angeles, California 90048
Telephone: (310) 984-6800
Fax: (310) 984-6840
jjenkins@jmjenkinslaw.com
lkayayan@jmjenkinslaw.com


Richard T. Thomson (#109538)
Amy L. Schwartz (#0339350)
Lapp, Libra, Thomson, Stoebner & Push,
    Chartered
120 South Sixth Street, Suite 2500
Minneapolis, MN 55402
Telephone: (612) 338-5815
Fax: (612) 338-6651
rthomson@lapplibra.com
aschwartz@lapplibra.com


Counsel for Defendant Sierra Pacific
Mortgage Company, Inc.