**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | **FOR PUBLICATION** |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**AMENDED MEMORANDUM OPINION AND ORDER GRANTING MOTIONS FOR
PARTIAL RECONSIDERATION OF THE OPINION SUSTAINING IN PART AND
OVERRULING IN PART THE RESCAP LIQUIDATING TRUST'S
OBJECTION TO CLAIMS FILED BY DUNCAN K. ROBERTSON**

*A P P E A R A N C E S:*

MORRISON & FOERSTER LLP
*Attorneys for ResCap Liquidating Trust*
250 West 55th Street
New York, New York 10019
By:   Norman S. Rosenbaum, Esq.
        Jordan A. Wishnew, Esq.
        Erica J. Richards, Esq.

DUNCAN K. ROBERTSON
*Pro Se*
3520 SE Harold Court
Portland, Oregon 97202
By:   Duncan K. Robertson

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court are motions for partial reconsideration (the "Motions") filed by Duncan K. Robertson ("Robertson") (the "Robertson Motion," ECF Doc. # 8598) and the ResCap Liquidating Trust (the "Trust") (the "Trust Motion," ECF Doc. # 8604). The Trust previously filed an objection to Robertson's claims (the "Claim Objection," ECF Doc. # 8072),[1] and after a hearing on the Claim Objection, the Court issued an opinion sustaining in part and

---

[1] The Claim Objection is supported by the declaration of Kathy Priore (the "Priore Decl.," ECF Doc. # 8072-7).

overruling in part the Claim Objection (the "Opinion," ECF Doc. # 8533). *See In re Residential Capital, LLC*, 531 B.R. 1 (Bankr. S.D.N.Y. 2015). Now Robertson and the Trust each seek partial reconsideration of the Opinion, arguing that certain rulings the Court made were premised on clear errors. Each party filed a response to the other party's Motion. (*See* "Trust Response," ECF Doc. # 8917; "Robertson Response," ECF Doc. # 8951.) For the reasons explained below, both Motions are **GRANTED**. Based on reconsideration, the Claim Objection to the two remaining causes of action is **SUSTAINED** and Claim Numbers 2385, 2386, 2387, 2388, and 2389 are **EXPUNGED**.

## I. BACKGROUND

### A. Loan History

On November 1, 1999, Linda Nicholls took out a residential mortgage loan (the "First Priority Loan") from non-debtor Old Kent Mortgage Company d/b/a National Pacific Mortgage ("Old Kent"). (Obj. ¶ 8.) The First Priority Loan is evidenced by a note (the "Note," Priore Decl. Ex. A) secured by a deed of trust (the "First Priority DOT," *id.* Ex. B) encumbering real property located in Seattle, Washington (the "Property"). (Obj. ¶ 8.) The First Priority DOT named N.P. Financial Corporation ("N.P. Financial") as trustee and was recorded on November 15, 1999. (First Priority DOT at 2–3.)

Debtor Residential Funding Company, LLC ("RFC") purchased the First Priority Loan from Old Kent and subsequently securitized it, with Bank One National Association ("Bank One") as trustee. (*See id.* ¶ 9.) On January 20, 2000, Old Kent assigned the First Priority DOT to Bank One (the "Bank One Assignment," Priore Decl. Ex. C).[2] (Obj. ¶ 10.) In 2004, Bank

---

[2] The Bank One Assignment was recorded on August 3, 2000. (Obj. ¶ 10.)

2

One merged into JPMorgan Chase Bank, National Association ("JPM") and JPM thereby became Bank One's successor in interest to the First Priority Loan. (*See id.*)

On January 5, 2006, Nicholls granted a second priority deed of trust on the Property (the "Second Priority DOT") to secure an $82,000 second priority loan Robertson extended to Nicholls.[3] (*See* Obj. ¶ 20; Priore Decl. Ex. 1-A at 63.) Robertson acknowledges that the Property was subject to the previously recorded First Priority DOT at the time the Second Priority DOT was recorded. (Obj. ¶ 20.)

On October 1, 2006, the Bank of New York Trust Company, N.A. ("BONY") succeeded JPM's interest as trustee of the First Priority DOT and owner of the First Priority Loan after JPM exchanged its trustee business with BONY. (*Id.* ¶ 11.) On February 17, 2007, BONY appointed First American Title Insurance Company ("First American") as successor trustee of the First Priority DOT (the "First American Appointment," Priore Decl. Ex. D).[4] (Obj. ¶ 12.)

Robertson became the owner of the Property subject to the First Priority DOT after foreclosing on the Second Priority DOT and successfully credit bidding at a trustee's sale held on September 26, 2008. (*Id.* ¶ 20.) On October 3, 2008, Robertson was issued a trustee's deed, which was recorded on October 7, 2008. (*Id.*) Robertson never executed an assumption of the Note. (*Id.*)

In January 2009, Bank One, the beneficiary of the First Priority DOT, caused the trustee to initiate a non-judicial foreclosure as a result of Nicholls's default.[5] (*Id.* ¶ 13.) On January 9,

---

[3]   The Second Priority DOT was recorded on January 6, 2006. (Priore Decl. Ex. 1-A at 63.)

[4]   The First American Appointment was recorded on February 23, 2007. (*See id.* at 2.)

[5]   According to the Trust, the beneficiary of record for the First Priority DOT at this time was Bank One, notwithstanding the prior merger of Bank One into JPM, and JPM's subsequent transfer of its interest in the First Priority Loan to BONY. (*Id.* ¶ 13 n.4.)

3

2009, First American executed a notice of trustee's sale (the "Notice of Sale," Priore Decl. Ex. E) scheduling a sale for April 17, 2009;[6] however, the trustee's sale was continued until June 12, 2009. (Obj. ¶ 13.) On May 7, 2009, Nicholls filed for bankruptcy, thereby staying the trustee's sale. (*Id.* ¶ 14.)

On February 16, 2010, Debtor Residential Funding Real Estate Holdings, LLC ("RFREH") appointed LSI Title Agency ("LSI") as successor trustee under the First Priority DOT (the "LSI Appointment," Priore Decl. Ex. F).[7] (Obj. ¶ 15.) On July 28, 2010, JPM assigned its interest in the First Priority DOT to RFREH (the "RFREH Assignment," Priore Decl. Ex. G).[8] (*Id.* ¶ 16.) On July 13, 2012, the RFREH Assignment was corrected to indicate Bank of New York Mellon, N.A. (formerly BONY), not JPM, as assignor, and RFC, not RFREH, as the assignee (the "RFC Corrected Assignment," Priore Decl. Ex. H).[9] (Obj. ¶ 16.) RFC transferred its interest in the First Priority Loan to 21st Century Mortgage Corporation ("21st Century") on January 30, 2013. (*Id.* ¶ 17.) On July 9, 2013, RFC assigned the First Priority DOT to 21st Century (the "21st Century Assignment," Priore Decl. Ex. I).[10] (Obj. ¶ 17.)

Debtor Homecomings Financial, LLC ("Homecomings") serviced the First Priority Loan from September 22, 2000 until it transferred the servicing rights to Debtor GMAC Mortgage, LLC ("GMACM") on July 1, 2009. (*Id.* ¶ 18.) GMACM serviced the First Priority Loan until it transferred the servicing rights to non-debtor Ocwen Loan Servicing, LLC ("Ocwen") on

---

[6]  The Notice of Sale was recorded on January 12, 2009. (*See id.*)

[7]  The LSI Appointment was recorded on February 17, 2010. (*See id.*)

[8]  The RFREH Assignment was recorded on August 12, 2010. (*See id.*)

[9]  The RFC Corrected Assignment was recorded on July 27, 2012. (*See id.*)

[10] The 21st Century Assignment was recorded on July 23, 2013. (*See id.*)

4

February 16, 2013.  (*Id.*)  No Debtor foreclosed on the First Priority DOT before servicing was transferred to Ocwen.  (*Id.* ¶ 19.)

### B. Procedural History

On May 14, 2012, the Debtors filed petitions for relief under chapter 11 of the Bankruptcy Code.  (*See* ECF Doc. # 1.)  On June 5, 2012, Robertson filed an action (the "Robertson Action") in Washington state court (the "State Court") asserting various state law causes of action against Debtors GMACM, Executive Trustee Services, LLC ("ETS"), RFREH, RFC, and Homecomings (collectively, the "Debtor Defendants") as well as other non-debtor defendants (the "Non-Debtor Defendants," and together with the Debtor Defendants, the "Defendants").  (*See* Opinion at 5.)  In his underlying complaint (the "Complaint," Priore Decl. Ex. 1-A), Robertson asserted causes of action against the Debtor Defendants for:  (1) wrongful foreclosure; (2) quiet title; (3) trespass; (4) misrepresentation; (5) fraud and deception; (6) conspiracy; (7) intentional and negligent infliction of emotional distress; (8) violation of the Washington Criminal Profiteering Act (the "Profiteering Act"); and (9) violations of the Washington Consumer Protection Act (the "WCPA").  (*Id.* at 5.)

The Robertson Action was stayed against the Debtor Defendants for all claims except for his wrongful foreclosure and quiet title causes of action; Robertson was permitted to proceed on those claims under the Supplemental Servicing Order (ECF Doc. # 774).  (Opinion at 5.)  On November 15, 2012, the Robertson Action was removed to the United States District Court for the Western District of Washington (the "District Court").  (*Id.* at 6.)  Ocwen took over the defense of the claims against the Debtor Defendants after servicing of the First Priority Loan was transferred to Ocwen in February 2013.  (*Id.*)

5

On June 27, 2013, the Debtor Defendants filed a motion for summary judgment of Robertson's wrongful foreclosure and quiet title causes of action and a joinder in the Non-Debtor Defendants' motion for summary judgment of the other causes of action. (*See id.* at 6; Priore Decl. Ex. M.) The District Court granted the Defendants' motions for summary judgment on November 14, 2013. (*See* Opinion at 6; "Summary Judgment Order," Priore Decl. Ex. N.) On August 11, 2014, Robertson filed a notice of appeal of the Summary Judgment Order, which remains pending in the United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit"). (*See* Opinion at 6; Priore Decl. Ex. O; Trust Response at 7.) On August 20, 2014, the District Court entered a final judgment dismissing all claims against the Non-Debtor Defendants with prejudice. (*See* Opinion at 6.)

Robertson filed Claim Numbers 2385, 2386, 2387, 2388, and 2389 (the "Claims") in the Debtors' bankruptcy cases, asserting an aggregate amount of $772,277 against the Debtor Defendants based on the causes of action alleged in the Robertson Action. (*See id.* at 6–7.) The Trust filed its Claim Objection: Robertson filed an opposition to the Claim Objection (the "Claim Response," ECF Doc. # 8238); and the Trust filed a reply (ECF Doc. # 8279). On March 12, 2015, the Court held a hearing on the Claim Objection and took the matter under submission.[11]

On April 28, 2015, the Court entered the Opinion. The Opinion sustained the Claim Objection as to the declaratory judgment, quiet title, intentional and negligent infliction of emotional distress, Profiteering Act, and conspiracy causes of action against all Debtor Defendants (*see* Opinion at 15–16, 27–29, 32), and the fraud and WCPA claims against GMACM, Homecomings, and RFC (*see id.* at 23, 31). The Court overruled the Claim Objection

---

[11] Robertson appeared at the hearing by telephone.

6

without prejudice as to the following claims: (1) trespass against Homecomings alleged to have occurred on May 24, 2010 (*see id.* at 19); (2) fraud against RFREH and ETS for their preparation and execution of the LSI Appointment, and for ETS's alleged misrepresentations that GMACM was the holder of the Note (*see id.* at 23–25); and (3) violation of the WCPA against RFREH and ETS in connection with their preparation and execution of the LSI Appointment (*see id.* at 30–31).

    C.    **The Robertson Motion**

Robertson argues that reconsideration of the Opinion is warranted for a number of reasons. First, Robertson asserts that "[a] foundational basis of all of [his] claims against [the] Debtors Defendants is his assertion that the [First Priority DOT] was void ab initio." (Robertson Motion at 2 (emphasis omitted).) According to Robertson, the First Priority DOT is invalid because Nicholls, the borrower under the First Priority Loan and grantor under the First Priority DOT, did not obtain legal title to the Property until she was granted a warranty deed to the Property on November 5, 1999 (the "Warranty Deed," Trust Response Ex. A)—four days after the First Priority DOT was executed. (*See* Robertson Motion at 2, 4 n.4; Claim Response Ex. 3 ¶¶ 1.5, 1.7.) Robertson contends that the Trust waived its right to argue otherwise by failing to respond to this argument. (*See id.* at 2–3.) Additionally, Robertson argues that the Court erred in ruling on the Claim Objection without addressing his argument that the First Priority DOT is invalid. (*See id.* at 3–4.)

Additionally, Robertson seeks reconsideration of the Court's rulings sustaining the Claim Objection as to the following causes of action: (1) conspiracy; (2) intentional infliction of emotional distress ("IIED"); (3) fraud against Homecomings; and (4) violations of the WCPA against GMACM. (*See id.* at 4–5.) First, Robertson argues that the Court erred by not applying

7

the correct legal standard of malice in sustaining the Claim Objection to his conspiracy and IIED claims. (*See id.*) Second, Robertson contends that the Court erred in holding that the Complaint did not allege false statements made by Homecomings. (*See id.* at 5.) According to Robertson, the Court overlooked his allegation that Homecomings stated that it would provide him with a payoff statement, which "was false and followed by attempted foreclosures with no notice to [him]." (*Id.* (citing Compl. ¶¶ 5.11–5.15, 5.20–5.27).) Finally, Robertson argues that the Court erred in sustaining the Claim Objection as to the WCPA claim against GMACM because he alleged that the RFREH Assignment was prepared and executed at GMACM by Thomas Strain ("Strain"), "a known employee of GMAC[M], putting GMAC[M] on both sides of the assignment." (*Id.* (quoting Compl. ¶ 5.67).)

Robertson further requests that the Court stay further adjudication of the Claim Objection pending the Ninth Circuit's resolution of his appeal of the Summary Judgment Order (*see id.* at 6), and should the Ninth Circuit fail to remand the Robertson Action to the State Court, Robertson states that he will request leave to amend his Complaint to comply with federal pleading standards (*see id.*).

The Trust responds to each of Robertson's arguments. First, the Trust argues that reconsideration is not warranted on the basis that the Court did not address Robertson's argument that the First Priority DOT is invalid because: (1) Robertson fails to establish that the Court committed clear error in implicitly rejecting this argument (Trust Response at 2); (2) Robertson lacks standing to attack the validity of the First Priority DOT because he is not a party to, or third-party beneficiary of, the First Priority DOT (*see id.* at 3); and (3) the District Court previously considered and rejected this argument in the Summary Judgment Order (*see id.* at 2–3). Additionally, the Trust contends that it did not waive its right to challenge Robertson's

8

argument that the First Priority DOT is invalid because the arguments made in the Claim Objection implicitly opposed Robertson's argument and the Trust expressly reserved its rights to object to the Claims on any other basis. (*See id.* at 3 n.2.)

Second, the Trust contends that Robertson has not demonstrated a basis for reconsideration of the Opinion sustaining the Claim Objection to his causes of action for conspiracy, IIED, fraud against Homecomings, and violation of the WCPA against GMACM. According to the Trust, the Court dismissed Robertson's IIED and conspiracy claims "on grounds that were independent of [his] arguments that the Debtors acted wrongfully and with intent, [and therefore] reconsideration . . . on that point would not alter the Court's decision with respect to those claims . . . ." (*Id.* at 5.) The Trust argues that Robertson's allegation that Homecomings falsely promised to provide him with a payoff letter would not alter the Court's ruling dismissing the fraud claim against Homecomings because "[a]n unfulfilled promise to take some action in the future does not qualify as a misrepresentation." (*Id.* (citation omitted).) The Trust further argues that Robertson fails to establish grounds for reconsideration of the Court's dismissal of his WCPA claim against GMACM because the RFREH Assignment was executed by Strain on behalf of, and in his capacity as an agent of, JPM, and "Robertson does not allege any facts that would support an inference that Mr. Strain was not acting in such a capacity or that the separate corporate identities of GMACM and RFREH should be disregarded." (*Id.* at 6.)

Finally, the Trust contends that the Court should deny Robertson's request for leave to amend and request for a stay pending resolution of his appeal of the Summary Judgment Order. (*See id.* at 7–9.) The Trust argues that amendment would be futile as to the dismissed claims. (*Id.* at 7.) Additionally, the Trust argues that Robertson has failed to establish grounds for a stay pending appeal. (*See id.* at 7–9.).

9

### D.     The Trust Motion

The Trust requests reconsideration of the Court's overruling of the Claim Objection to Robertson's fraud and WCPA claims against RFREH and ETS.  (*See* Trust Motion at 1–4.) According to the Trust, these rulings were based on three clear errors that would dispose of these claims.  (*Id.* at 2.)  First, the Trust argues that the Court failed to rule on the Trust's argument that Robertson lacks "standing to assert any claims against the Debtor Defendants based on errors in instruments . . . to which Robertson is neither a party nor a beneficiary."  (*Id.*)  Second, the Trust contends that Robertson failed to adequately plead every element of fraud against RFREH and ETS.  (*Id.* at 3.)  According to the Trust, "Robertson did not adequately allege that: (1) the Debtor Defendants intended that he act based on representations they made, (2) he was entitled to rely on the LSI Appointment and statements by ETS regarding the identity of the holder of the Note, and (3) he relied upon the LSI Appointment for the truth of the statements therein."  (*Id.*)  Third, the Trust argues that the Court erred in concluding that Robertson stated a claim for violations of the WCPA for two reasons:  (i) the Court held that Robertson presumptively stated a claim under the WCPA, relying on *Bain v. Metropolitan Mortgage Group, Incorporated*, 285 P.3d 34 (Wash. 2012), but the *Bain* presumption only applies to a borrower, not a third-party like Robertson; and (ii) "Robertson failed to allege any causal connection between misstatements in the LSI Appointment and his purported injuries."  (*Id.* at 3.)

In response, Robertson asserts that "[a]s the undisputed owner of the property being assaulted, [he] is clearly a party in interest with standing to protect his property."  (Robertson Response at 4 (citation omitted).)  Additionally, Robertson alleges that he adequately pleaded his fraud and WCPA claims because:  (1) instruments filed by the Debtor Defendants evidence their

10

intent that he rely on the truth of their contents; (2) he had a "right to rely" on the accuracy of instruments recorded by the Debtor Defendants; and (3) his allegations of reliance suffice. (*See id.* at 4–9.)

## II.    DISCUSSION

### A.    Standard for Reconsideration

Under section 502(j) of the Bankruptcy Code, "[a] claim that has been allowed or disallowed may be reconsidered for cause." 11 U.S.C. § 502(j). The Bankruptcy Code does not define "cause," but when deciding a motion under section 502(j), the court should:

> [a]pply the same analysis that it would to a motion under Fed. R. Bankr. P. 9023 (incorporating Fed. R. Civ. P. 59) or Fed. R. Bankr. P. 9024 (incorporating Fed. R. Civ. P. 60), depending on whether the movant . . . sought reconsideration within [fourteen] days after the entry of the order disallowing the claim, or did so only later.

*In re Terrestar Networks, Inc.*, No. 10–15446 (SHL), 2013 WL 781613, at *2 (Feb. 28, 2013) (collecting cases). Rule 9023 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") incorporates Federal Rule of Civil Procedure ("FRCP") 59, which allows a party to move to alter or amend a judgment. *See* FED. R. BANKR. P. 9023; FED. R. CIV. P. 59. Bankruptcy Rule 9024 incorporates FRCP 60, which authorizes relief from a final order under certain circumstances. *See* FED. R. BANKR. P. 9024; FED. R. CIV. P. 60(b).

In order to establish grounds for reconsideration, a "movant must show that the court overlooked controlling decisions or factual matters that might materially have influenced its earlier decision." *In re Asia Global Crossing, Ltd.*, 332 B.R. 520, 524 (Bankr. S.D.N.Y. 2005); *see also Adams v. United States*, 686 F. Supp. 417, 418 (S.D.N.Y. 1988) ("The only proper ground on which a party may move to reargue an unambiguous order is that the court overlooked matters or controlling decisions which, had they been considered, might reasonably have altered

11

the result reached by the court."). Reconsideration is not appropriate unless the movant has demonstrated an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (citation omitted). A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking 'a second bite of the apple.'" *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998) (discussing reconsideration under FRCP 59). Parties cannot use a motion for reconsideration to advance new facts or arguments and may not submit affidavits or new material. *Asia Global Crossing*, 332 B.R. at 524; *accord Pereira v. Aetna Cas. & Sur. Co. (In re Payroll Express Corp.)*, 216 B.R. 713, 716 (S.D.N.Y. 1997). "The standard for granting motions to reargue is strict in order to dissuade repetitive arguments on issues that have already been considered fully by the court." *Adams*, 686 F. Supp. at 418; *see also Family Golf Ctrs., Inc. v. Acushnet Co. (In re Randall's Island Family Golf Ctrs., Inc.)*, 290 B.R. 55, 61 (Bankr. S.D.N.Y. 2003).

The Court concludes that Robertson and the Trust have each established grounds for reconsideration of the Opinion. The Opinion did not address Robertson's argument that the First Priority DOT is void *ab initio*, an issue that might have materially influenced the Court's rulings. Additionally, the Opinion did not resolve the Trust's argument that Robertson lacks standing to assert claims based on allegations concerning instruments to which he is not a party or beneficiary—an issue dispositive of Robertson's surviving fraud and WCPA claims. Accordingly, the Court **GRANTS** the Motions to address whether: (1) the First Priority DOT is void; and (2) Robertson lacks standing to assert his fraud and WCPA claims against RFREH and ETS.

12

For the reasons discussed below, the Court reconsiders its rulings in the Opinion and concludes that: (i) Robertson has standing to challenge the validity of the First Priority DOT but he has not established that it is void *ab initio*; and (ii) Robertson lacks standing to assert his fraud and WCPA claims against RFREH and ETS based on instruments to which he is neither a party nor a beneficiary. Consequently, the Claim Objection is **SUSTAINED** as to Robertson's surviving fraud and WCPA claims.

### B.    The First Priority DOT Is Not Void *Ab Initio*

The Trust argues that Robertson lacks standing to challenge the First Priority DOT because he is not a party to, or third party beneficiary of, the contract. (Trust Response at 4.) The Court disagrees.

Federal courts are limited to adjudicating "cases" and "controversies" under Article III of the United States Constitution. *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009). As a result, a plaintiff must establish that he or she has standing. *See Raines v. Byrd*, 521 U.S. 811, 818 (1997) ("One element of the case-or-controversy requirement is that appellees, based on their complaint, must establish that they have standing to sue." (citation omitted)). "Standing under Article III of the Constitution requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010) (citing *Horne v. Flores*, 557 U.S. 433, 445 (2009)). The standing doctrine "requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction." *Summers*, 555 U.S. at 493 (emphasis omitted) (citation omitted). Essentially, the standing doctrine requires federal courts to determine "whether the plaintiff is the proper party to bring th[e] suit . . . ." *Raines*, 521 U.S. at 818 (citation omitted).

13

Robertson, as the undisputed holder of a perfected junior lien on the Property, has standing to challenge the validity of the First Priority DOT because he has a concrete pecuniary interest in whether the lien secured by the First Priority DOT is valid. If the First Priority DOT is void *ab initio*, Robertson has the only valid lien on the Property and the Debtors lack a legal basis to take actions against the Property and make representations about the validity of the senior lien secured by the First Priority DOT.

Nevertheless, Robertson fails to establish that the First Priority DOT is void *ab initio* because it was executed by Nicholls before she obtained title to the Property through the Warranty Deed. It is true that the Warranty Deed is dated November 5, 1999, after the First Priority DOT was executed on November 1, 1999. (*See* Warranty Deed at 2; First Priority DOT at 2.) However, the Warranty Deed recites that the Property was transferred to Nicholls from the estate of Thelma Louise Kent pursuant to a probate court order dated October 11, 1999. (*See* Warranty Deed at 2.) Under Washington state law, a decedent's title to real property "vest[s] immediately in his or her heirs or devisees, subject to his or her debts, family allowance, expenses of administration, and any other charges for which such real estate is liable under existing laws." WASH. REV. CODE ANN. § 11.04.250 (West 2010); *see State v. Super. Ct. of Wash. for Walla Walla Cnty.*, 230 P.434, 435 (Wash. 1924) ("The title to the real estate in controversy vested immediately by virtue of the will . . . and no deed or order of distribution was required to pass or perfect the title."). Therefore, Nicholls had title to the Property at the time she executed the First Priority DOT in favor of N.P. Financial. Indeed, the District Court came to this same conclusion in dismissing Robertson's declaratory judgment claim against the Defendants. (*See* Summary Judgment Order at 8 ("Nicholls acquired her ownership in the

14

[P]roperty immediately upon the death of her mother and before executing the [First Priority DOT].").)

### C. Robertson Lacks Standing to Assert the Fraud and WCPA Claims

While Robertson has standing to challenge the validity of the First Priority DOT, he does not have standing to attack the validity of the RFREH Assignment or the LSI Appointment. Several courts in the Ninth Circuit, including Washington federal courts, have held that "a borrower lacks standing to challenge an allegedly fraudulent assignment of a deed of trust and/or an appointment of a successor trustee." *Brodie v. Nw. Tr. Servs., Inc.*, No. 12-CV-0469 (TOR), 2012 WL 6192723, at *2 (E.D. Wash. Dec. 12, 2012) (collecting cases); *accord Cagle v. Abacus Mortg., Inc.*, No. 2:13-cv-02157 (RSM), 2014 WL 4402136, at *5 (W.D. Wash. Sept. 5, 2014); *Zhong v. Quality Loan Serv. Corp. of Wash.*, No. C13-0814 (JLR), 2013 WL 5530583, at *3 (W.D. Wash. Oct. 7, 2013) (citations omitted); *Ukpoma v. U.S. Bank Nat'l Ass'n*, No. 12-CV-0184 (TOR), 2013 WL 1934172, at *4 (E.D. Wash. May 9, 2013) (citations omitted); *see also Javaheri v. JPMorgan Chase Bank, N.A.*, No. 2:10-cv-08185 (ODW), 2012 WL 3426278, at *6 (C.D. Cal. Aug. 13, 2012) (holding that mortgage borrower lacked standing to assert claims based on alleged robo-signing of substitution of trustee, noting that "[t]he foreclosure would occur regardless of what entity was named as trustee, and so [plaintiff] suffered no injury as a result of th[e] substitution" (citation omitted)). These courts reason that any improprieties in an assignment of deed of trust or appointment of successor trustee cannot injure a borrower because the borrower is neither a party to nor a beneficiary of such instruments. *See Brodie*, 2012 WL 6192723, at *3 (observing that alleged robo-signing of assignment of deed of trust and appointment of successor trustee "had no bearing whatsoever upon Plaintiff's obligation to make her mortgage payments").

15

It stands to reason that if a borrower lacks standing to challenge alleged irregularities in an assignment of his deed of trust, a non-party to the deed of trust also lacks standing. Accordingly, Robertson, a non-party to the First Priority DOT and Note, does not have standing to assert claims based on the RFREH Assignment or the LSI Appointment. Robertson's fraud claim against ETS similarly fails to the extent it depends on his allegation that ETS misrepresented GMACM's status as holder of the Note because he has not established that he had a right to rely upon a representation concerning a loan document to which he is neither a party nor a beneficiary.[12]  *See Stiley v. Block*, 925 P.2d 194, 204 (Wash. 1996) (en banc) (holding that a plaintiff must establish nine elements to state a claim for fraud, including his "right to rely upon" a "representation of an existing fact"). In light of the foregoing, the Claim Objection is **SUSTAINED** as to Robertson's fraud and WCPA claims.

### D.   Robertson's Remaining Arguments

Robertson has failed to establish any clear error justifying reconsideration of the Court's rulings sustaining the Claim Objection as to the IIED and conspiracy claims, or the fraud claim against Homecomings. First, the Court sustained the Claim Objection to Robertson's IIED and conspiracy claims on several bases, none of which would be materially altered by applying the legal standard of malice that Robertson contends is correct.[13] Second, Homecomings's allegedly broken promise to provide Robertson with a payoff statement does not materially alter the Court's conclusion that Robertson failed to state a fraud claim against Homecomings because

---

[12]   For the same reason, Robertson's arguments concerning Strain's alleged execution of the RFREH Assignment on behalf of GMACM do not warrant reconsideration of the Opinion.

[13]   The Court held that Robertson failed to: (1) adequately plead that any of the Debtor Defendants engaged in sufficiently outrageous conduct to support his IIED claim (*see* Opinion at 26–27); (2) meet his burden of responding to the Trust's arguments rebutting the prima facie validity of the IIED claim (*see id.* at 27); and (3) adequately plead that any of the Debtor Defendants entered into an agreement to support his conspiracy claim (*see id.* at 31–32).

such a promise is not a representation of an existing fact, a required element of a fraud claim. *See Nyquist v. Foster*, 268 P.2d 442, 445 (Wash. 1954) ("Where the fulfillment or satisfaction of the thing represented depends upon a promised performance of a future act, or upon the occurrence of a future event, or upon particular future use, or future requirements of the representee, then the representation is not of an existing fact."). Finally, Robertson's requests for leave to amend and for a stay pending appeal are not appropriately raised in a motion for reconsideration.

### III.   CONCLUSION

For the above reasons, the Motions are **GRANTED** and the Claim Objection to Robertson's fraud and WCPA claims against RFREH and ETS is **SUSTAINED**.

**IT IS SO ORDERED.**

Dated: September 4, 2015
       New York, New York

                                         *Martin Glenn*
                                         MARTIN GLENN
                                         United States Bankruptcy Judge