UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

RESIDENTIAL CAPITAL, LLC, *et al.*,

Debtors.

FOR PUBLICATION

Case No. 12-12020 (MG)

(Jointly Administered)

**AMENDED MEMORANDUM OPINION AND ORDER UPHOLDING BANKRUPTCY COURT AUTHORITY TO TRY THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CAUSE OF ACTION ASSERTED IN CLAIMS FILED BY PAMELA D. LONGONI AND JEAN GAGNON**

*A P P E A R A N C E S:*

MORRISON & FOERSTER LLP
*Attorneys for ResCap Borrower Claims Trust*
250 West 55th Street
New York, New York 10019
By:   Norman S. Rosenbaum, Esq.
       Jordan A. Wishnew, Esq.
       Jessica J. Arett, Esq.

BRADLEY ARANT BOULT CUMMINGS LLP
*Attorneys for ResCap Liquidating Trust*
100 N. Tryon Street
Suite 2690
Charlotte, North Carolina 28202
By:   Christian W. Hancock, Esq.
       Avery A. Simmons, Esq.

ERICKSON, THORPE & SWAINSTON, LTD.
*Attorneys for Pamela D. Longoni, Lacey Longoni, and Jean M. Gagnon*
99 W. Arroyo Street
P.O. Box 3559
Reno, Nevada 89505
By:   Thomas P. Beko, Esq.

**MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE**

The Court must decide whether it can hear and determine (*i.e.*, enter final judgment) the

emotional distress claim included among the remaining claims in this contested matter. If the

emotional distress claim is a "personal injury tort" under section 157(b)(5) of title 28 of the United States Code, absent consent (which has been withheld), only a district court may try the claim and enter final judgment. There is no controlling law in this Circuit on what is a personal injury tort. Lower courts have used different approaches to resolving the question. As explained below, the Court concludes that the emotional distress claim in this matter is not a personal injury tort; therefore, this Court can finally resolve the claim.

## I. BACKGROUND

### A. Prior Proceedings

An earlier memorandum opinion and order (the "Prior Opinion," ECF Doc. # 8825) sustained in part and overruled in part the ResCap Borrower Claims Trust's (the "Trust") objection (the "Objection," ECF Doc. # 8530) to Claim Numbers 2291, 2294, 2295, and 2357 (the "Claims") filed by Pamela D. Longoni ("Longoni"), individually and as *guardian ad litem* for Lacey Longoni, and Jean M. Gagnon ("Gagnon," and together with Longoni and Lacey Longoni, the "Claimants").[1] The Prior Opinion overruled the Trust's Objection to causes of action for fraud, negligence (to the extent the original cause of action asserted negligent misrepresentation and negligent infliction of emotional distress),[2] intentional infliction of emotional distress ("IIED"), and promissory estoppel.

After issuing the Prior Opinion, the Court raised the issue whether section 157(b)(5) of title 28 of the United States Code, which entitles a party to a personal injury tort or wrongful

---

[1] The Prior Opinion can be found at *In re Residential Capital, LLC*, Case No. 12-12020 (MG), 2015 WL 4066261 (Bankr. S.D.N.Y. July 1, 2015). Familiarity with the Prior Opinion is assumed.

[2] The negligence claim included allegations of negligent infliction of emotional distress. It is not clear whether the Claimants intended to plead a separate claim for negligent infliction of emotional distress, or to seek emotional distress damages on their negligence claim. The Prior Opinion overruled, in part, the objection to the negligence claim. Nevada law appears to recognize a claim for negligent infliction of emotional distress, but with a heavier burden for a plaintiff to recover on the claim. This Opinion will refer to a single intentional infliction of emotional distress claim; the result here would be the same for a negligent infliction of emotional distress claim.

2

death claim to demand a trial of such claim in a district court, applies to the Claimants' emotional distress claim. If applicable, the emotional distress claim may not be tried in this Court unless the parties consent. This Court directed the Claimants and the Trust to advise whether they consent; if any party to the claim did not consent, the parties were directed to brief whether section 157(b)(5) applies to the emotional distress claim. (*See* Case Management and Scheduling Order (the "CMSO"), ECF Doc. # 8903 ¶ 4 (requiring the parties to brief the issue whether this Court can finally adjudicate the Claimants' surviving intentional infliction of emotional distress claim (the "IIED Claim")).) The parties did not mutually consent and therefore they briefed the issue. (*See* "Trust's Brief" or "Trust Br.," ECF Doc. # 9014; "Claimants' Brief" or "Cl. Br.," ECF Doc. # 9016.)

      **B.**      **The Claims**

In April 2010, the Claimants filed a complaint in Nevada state court against Debtors GMAC Mortgage, LLC ("GMACM"), Executive Trustee Services, LLC ("ETS"), Residential Funding Corporation ("RFC"), and Residential Asset Mortgage Products, Inc. ("RAMP"), as well as against other non-debtor individuals and entities (the "Nevada Action"). (Obj. ¶ 5.) The defendants removed the case to the United States District Court for the District of Nevada (the "Nevada District Court"). (*Id.*) The lawsuit alleged that GMACM wrongfully foreclosed on the Claimants' home after agreeing to approve a permanent loan modification and to halt the foreclosure while the parties discussed the proposed modification. The foreclosure was completed despite the alleged agreement. The original complaint included the following causes of action: (1) violation of Nevada Revised Statutes sections 107.080, 107.085, 107.086, 107.087, and 107.090; (2) violation of Nevada Revised Statutes section 205.372; (3) fraud and misrepresentation; (4) negligence and negligent misrepresentation; (5) breach of contract;

(6) tortious breach of the implied covenant of good faith and fair dealing; (7) breach of the covenant of quiet title; (8) IIED; (9) promissory estoppel; and (10) concert of actions. (*Id.*) The Nevada District Court granted in part and denied in part the defendants' motion to dismiss. *See Longoni v. GMAC Mortg., LLC*, No. 3:10-CV-0297-LRH-VPC, 2010 WL 5186091, at *2 (D. Nev. Dec. 14, 2010). The court dismissed the breach of the covenant of quiet title and tortious breach of the implied covenant of good faith and fair dealing causes of action; the other eight causes of action survived. *See generally id.* The Debtors' bankruptcy stayed the Nevada Action; the case was ultimately administratively closed. (Obj. ¶ 5.)

The Claims filed here incorporate the causes of action asserted in the Nevada Action. (*See* Obj. Ex. 1.) The Prior Opinion disallowed and expunged some of these causes of action, but the fraud, negligence (negligent misrepresentation and negligent infliction of emotional distress), IIED, and promissory estoppel claims remain.

### C.     The IIED Claim

The IIED Claim stems from the allegedly wrongful foreclosure. The operative complaint in the Nevada Action included the following allegations: "foreclosure and wrongful ousting of the plaintiffs from the family home was an invasion of property owners' rights which occurred under circumstances of malice, willfulness, wantonness, and inhumanity"; the "defendants' . . . wrongful acts and foreclosure were a willful use of power with the expectation to humiliate and distress the mortgagors and plaintiffs"; and "the defendants engaged in conduct that they knew, or should have known and expected, would cause the plaintiffs to suffer and which did, in fact, cause the plaintiffs to suffer severe and mental and emotional pain, grief, sorrow, anger, worry, and anxiety." (Obj. Ex. 4 ¶¶ 173–176.) The complaint requested at least $10,000 in general

4

damages, at least $10,000 in exemplary and punitive damages, and costs and attorneys' fees. (*Id.* ¶¶ 175–177.)

The Claimants supported their Opposition to the Objection to the IIED Claim with Pamela Longoni's affidavit that addresses the physical manifestations of the emotional distress to herself and her daughter. (Opp. ¶ 68.) The affidavit states:

> 38. I expressed to all GMACM representatives that losing my home was such an emotional and life changing event. My children grew up in that home. I had improved that home greatly, and I was comfortable in my neighborhood. My daughter, Lacey, who was 13 at the time this foreclosure took place, suffered tremendously. She was forced out of her neighborhood and left the kids she grew up with. She was forced to ride a new school bus from our new rental house, and did not know any kids on the bus. She didn't have anyone to walk home with as there were no kids in our new neighborhood.
>
> 39. We relied tremendously on the neighbors across the street on Twin Creeks. She was a stay at home mom, and me, being a single mom, relied greatly on her to assist with Lacey after school. Our daughters were very close friends. Their friendship involved sleepovers, holiday events, and extracurricular activities together. We often attended summertime BBQ's and holiday events together. We shared activities as families and helped each other with transportation for our kids.
>
> 40. It was devastating to lose my house. It caused a great deal of emotional distress. I had never planned on living anywhere else. However, since this time, I have lived in 4 other places, which has caused a lot of financial and continued emotional distress, as nothing has felt quite like "home."
>
> 41. After I learned of the foreclosure, I lost 13 pounds in a less than two weeks. I was forced to take prescription medications just to stop the emotional breakdowns. I was embarrassed and humiliated that this had taken place. I had a hard time concentrating at work. I cried all the time. I felt so guilty for my daughter, Lacey, who had been displaced from her childhood home. I remember, while attempting to pack all of 15 years of belongings, and I was just exhausted, and I was wrapping up the day of packing. I had left several belongings in my driveway and after sheer exhaustion from the day, I covered those items with a

5

> tarp and believed they would be safe, as I knew my neighbors and neighborhood.
>
> 42. The following morning, I went out to get my things and continue packing. I realized that sometime during the night, my belongings had been picked through, and several items were missing. I ran to the side of the house, and vomited.

(*Id.* Ex. 9 ¶¶ 38–42.)

The Prior Opinion overruled the Trust's Objection to the IIED Claim; the Nevada District Court had previously denied the defendants' motion to dismiss that claim. (Prior Opinion at 34–35 & n.15 (citing Opp. ¶¶ 67–68 (citing *id.* Ex. 9 ¶¶ 38–42)).) The Court also overruled the Trust's argument about the requirement for physical manifestations of emotional distress—at this stage of the pleadings, the Court concluded, Claimants provided sufficient allegations of physical manifestations. (*Id.*) The Court overruled the Objection to the negligence claim insofar as it asserted a negligent infliction of emotional distress claim because the Trust did not address the cause of action in its Objection, thereby failing to meet its initial burden. (*Id.* at 31 & n.14.)

### D. The Parties' Arguments

The parties disagree whether the IIED Claim is a "personal injury tort" under section 157(b)(5). The Trust argues that the IIED Claim is not a personal injury tort because it alleges no physical trauma or bodily injury—it is based on secondary emotional or mental anguish purportedly caused by the failed mortgage contractual relationship. (Trust Br. ¶¶ 4–7.) Without allegations that the Claimants suffered real psychiatric impairment beyond shame and humiliation, the Trust argues, the IIED Claim is not a personal injury tort that cannot be finally adjudicated by a bankruptcy court. (*Id.*) Alternatively, the Trust asserts that even if the IIED Claim is construed as a personal injury tort, the IIED Claim should remain before this Court because it is not the gravamen of the Claimants' Claims. (*Id.* ¶¶ 8–11.)

The Claimants contend that this Court cannot properly exercise jurisdiction over their IIED Claim. (Cl. Br. at 2–5.) According to the Claimants, IIED claims based on wrongful foreclosure are "non-core" claims under *Stern v. Marshall*, 131 S. Ct. 2594 (2011), and bankruptcy courts do not have authority to render a final judgment on such claims absent the parties' consent. (*Id.* at 3–4.) The Claimants further request that this Court abstain from deciding the IIED Claim and instead allow the United States District Court for the Southern District of New York (the "SDNY District Court") to determine where the IIED Claim should be finally adjudicated—in the SDNY District Court or, their preferred venue, in the Nevada District Court. (*Id.* at 4–5.)

## II.    DISCUSSION

Bankruptcy courts have jurisdiction over cases "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334. "The manner in which a bankruptcy judge may act on a . . . matter[,] depends on the type of proceeding involved." *Stern* , 131 S. Ct. at 2603. Bankruptcy courts "may hear and enter final judgments" in all "core" proceedings, which are generally considered proceedings that either "aris[e] under title 11" or "aris[e] in a case under title 11." *Id.* (quoting 28 U.S.C. § 157(b)(1)). Section 157(b)(2) provides a non-exhaustive list of "core" proceedings. These include the "allowance or disallowance of claims against the estate . . . and estimation of claims or interests for the purposes of confirming a plan . . . but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11." 28 U.S.C. § 157(b)(2)(B).

For matters involving personal injury tort or wrongful death claims, a bankruptcy court's authority is different. Section 157(b)(5) requires the district court to "order that personal injury

7

tort or wrongful death claims shall be tried in the district in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending." *Id.* § 157(b)(5). The Supreme Court has held—though most overlook this particular holding—that section 157(b)(5) is *not* jurisdictional and the parties may consent to the trial of personal injury and wrongful death claims in the bankruptcy court. *Stern*, 131 S. Ct. at 2606 ("We need not determine what constitutes a 'personal injury tort' in this case because we agree with Vickie that § 157(b)(5) is not jurisdictional, and that Pierce consented to the Bankruptcy Court's resolution of his defamation claim."). Here, consent was not provided, so the Court must decide whether the Claimants' IIED Claim is a personal injury tort for purposes of section 157(b)(5).

The Bankruptcy Code does not define the term "personal injury tort." The Second Circuit has not addressed the issue. Lower courts in this Circuit and elsewhere have adopted different approaches to determine whether a particular claim is a personal injury tort for purposes of section 157(b)(5). *See Stranz v. Ice Cream Liquidation, Inc. (In re Ice Cream Liquidation, Inc.)*, 281 B.R. 154, 160 (Bankr. D. Conn. 2002) (citing cases). Three approaches have been used.

Some courts adopt the "narrow view," characterizing a personal injury tort claim as "a tort [claim] with[] trauma or bodily injury." *Id.* at 160 (citing *In re Atron Inc. of Mich.*, 172 B.R. 541, 544–45 (Bankr. W.D. Mich. 1994); *Perino v. Cohen (In re Cohen)*, 107 B.R. 453, 455 (S.D.N.Y. 1989)); *Vinci v. Town of Carmel (In re Vinci)*, 108 B.R. 439, 442 (Bankr. S.D.N.Y. 1989); *In re Sheehan Mem'l Hosp.*, 377 B.R. 63, 68 (Bankr. W.D.N.Y. 2007). A court following this "narrow view" considers whether the claim is a personal injury tort "in the traditional, plain

meaning sense of those words, such as a slip and fall, or a psychiatric impairment beyond mere shame and humiliation." *In re Cohen*, 107 B.R. at 455.

Other courts adopt a "broader view," holding that the term "personal injury tort" "embraces a broad category of private or civil wrongs or injuries for which a court provides a remedy in the form of an action for damages, and includes damage to an individual's person and any invasion of personal rights, such as libel, slander and mental suffering." *Boyer v. Balanoff (In re Boyer)*, 93 B.R. 313, 317–18 (Bankr. N.D.N.Y. 1988); *Leathem v. Von Volkmar (In re Von Volkmar)*, 217 B.R. 561, 565 (Bankr. N.D. Ill. 1998); *see also Thomas v. Adams (In re Gary Brew Enters. Ltd.)*, 198 B.R. 616, 619–20 (Bankr. S.D. Cal. 1996) (holding that claim under section 1983 of the Civil Rights Act constituted a personal injury tort claim because section 1983 confers "a general remedy for injuries to personal rights").

Still other courts adopt a middle or hybrid view. Where a claim appears to be a "'personal injury tort claim' under the 'broader' view but has earmarks of a financial, business or property tort claim, or a contract claim, the court reserves the right to resolve the 'personal injury tort claim' issue by (among other things) a more searching analysis of the complaint." *In re Ice Cream Liquidation, Inc.*, 281 B.R. at 161 (concluding that a sexual harassment claim brought against a debtor's successor entity was a personal injury tort under section 157(b)(5), and finding that the availability of equitable relief and damages sufficiently distinguished the claim "from other workplace claims which might constitute financial, business or property tort claims (or even contract claims)"); *Adelson v. Smith (In re Smith)*, 389 B.R. 902, 908–13 (Bankr. D. Nev. 2008) (applying hybrid view and concluding that libel claim under Nevada law is a personal injury tort, but plaintiff consented to bankruptcy court adjudication of claim); *see also In re Sheehan Mem'l Hosp.*, 377 B.R. at 68 (recognizing the "middle view that weighs the personal

9

nature of the injury against characteristics involving financial, business, property or contract rights").

Courts have reached different results under section 157(b)(5) for emotional distress claims (whether negligent or intentional). Some courts have held, without analysis or explanation, that the bankruptcy court does not have subject matter jurisdiction to adjudicate the emotional distress claim under section 157(b)(5).[3] *DiMare v. Ameriquest Mortg. Co. (In re DiMare)*, 462 B.R. 283, 309 (Bankr. D. Mass. 2011) ("While I agree with [the defendant's] contention that the Debtor has failed to satisfy the applicable standard for either [negligent or intentional infliction of emotional distress], the infliction of emotional distress pled as an independent cause of action is a personal injury tort claim over which the bankruptcy court has no jurisdiction. Accordingly, Count VII must be dismissed."); *Laudani v. Tribeca Lending Corp. (In re Laudani)*, 401 B.R. 9, 42 (Bankr. D. Mass. 2009) ("[T]his Court is without jurisdiction to hear a tort claim for intentional infliction of emotional distress. Accordingly, the Court shall enter an order granting summary judgment with respect to Count XII."); *Lentz v. Bureau of Med. Econ. (In re Lentz)*, 405 B.R. 893, 899–900 (Bankr. N.D. Ohio 2009) ("Additionally under Count III, the Plaintiff seeks damages for her alleged mental anguish and emotional distress which are personal injury matters. Personal injury matters are not subject to the bankruptcy court's jurisdiction. . . . Consequently, for lack of subject matter jurisdiction, Count II is hereby dismissed."); *Texas Capital Bank, N.A. v. Dallas Roadster, Ltd. (In re Dallas Roadster, Ltd.)*, Nos. 11-43725, 11-43726, Adv. Proc. No. 13-4033, 2013 WL 5758632, at *3 & n.1 (Bankr. E.D. Tex. Sept. 27, 2013) ("In addition, certain of [the] counterclaims may be personal injury torts

---

[3] Many of the cases discussed in the text are off-the-mark to the extent they hold that the bankruptcy court does not have subject matter jurisdiction over claims against the estate for personal injury tort or wrongful death claims—*Stern v. Marshall* makes that point clearly. Even though the court has jurisdiction, section 157(b)(5) may require trial in the district court.

which are expressly excluded from the automatic referral to the Bankruptcy Court—and thus are already in the District Court." (indicating that the counterclaims consist of IIED and "defamation/business disparagement" causes of action)); *see also Paulson v. Arbaugh (In re Paulson)*, No. 09-32439-RLD7, Adv. Proc. No. 11-03309-RLD, 2012 WL 5177950, at *4 (Bankr. D. Or. Apr. 26, 2012) ("Because the conspiracy and IIED claims neither arise under title 11 nor arise in a case under title 11, at best they can be considered to be related to a case under title 11, and therefore non-core. It is undisputed that without the consent of the parties I have no authority to enter a final judgment in a non-core matter.").

Some courts have found it unnecessary to settle on one single approach for determining whether an emotional distress claim involves a personal injury tort, focusing instead on the "gravamen"[4] of the claim. The bankruptcy court in *In re Thomas*, 211 B.R. 838, 841–42 (Bankr. D.S.C. 1997) declined to adopt either the broad or narrow view of a personal injury tort, finding that the emotional distress claim in that case was a personal injury tort under either view. The court acknowledged that, for both the "narrow" and the "broader" views, "the question is whether the emotional trauma is the gravamen of the complaint or merely an element of damages." *Id.* at 841. Because the emotional distress claim in that case was the gravamen of the claim, and because the reference had not been withdrawn to the district court, the bankruptcy court granted the claimant's motion to lift the automatic stay, permitting the claim to proceed in state court. *Id.* at 842.

The court's analysis in *Thomas* and in other cases points strongly towards analyzing the context and central focus of the claims—if an IIED claim is the tail wagging the dog, section

---

[4] As will be seen, a number of courts have focused on the gravamen of the claim. Black's Law Dictionary defines "gravamen" as "[t]he substantial point or essence of a claim, grievance or complaint." BLACK'S LAW DICTIONARY (10th ed. 2014).

11

157(b)(5) should not require dislodging the claim from bankruptcy court resolution of a portion of a claim asserted against a debtor. If the IIED claim is the gravamen of the claim, as the South Carolina bankruptcy court found in *Thomas*, section 157(b)(5) does not permit the bankruptcy court to try the claim absent consent. But when the context and central focus of the claim is not about physical injury or emotional distress, the claim should remain in the bankruptcy court.

Other courts have also focused on the context and central focus of the claims. Like the court in *Thomas*, the district court in *Lang v. Lang (In re Lang)*, 166 B.R. 964, 966–67 (D. Utah 1994) looked at the context and central focus of the claims and concluded that the claims should remain in the bankruptcy court. The court denied a motion to withdraw the reference, concluding that the bankruptcy court retained jurisdiction over the IIED claim. *See id.* at 966–67. The plaintiff's claims were "fundamentally allegations of fraud"; his emotional distress claim was "intimately connected to his claims of fraud"; and as such, the emotional distress claim was "too tangential" to warrant "withdrawal of the entire matter solely on the basis of the emotional distress claim" and withdrawing the emotional distress claim on its own was "impractical and inefficient." *Id.* at 967. Any other result would make it too easy for a claimant to get out of bankruptcy court.

Concern about permitting a claimant too easily to escape bankruptcy court adjudication of claims against a debtor by pleading an emotional distress claim (along with other claims) has led other courts to be cautious about concluding that section 157(b)(5) applies. In *Bertholet v. Harman*, 126 B.R. 413, 415–16 (Bankr. D. N.H. 1991), the court adopted the "narrow view" of a personal injury tort, finding that the emotional distress claim did "not rise to the level of 'psychiatric impairment' caused by willful conduct." The court further found that the emotional distress claim was "minor" and "incidental" to the complaint, and even if the court adopted the

"broader view," section 157(b)(5) would not be implicated. *Id.* "[T]he better rule is that if a mental distress claim does not involve physical injury, then only if the claim is the gravamen of the complaint would § 157(b)(5) be invoked. Otherwise, . . . jurisdiction would too easily be lost from this court . . . ." *Id.* ("As a practical matter, it makes sense that claims for minor emotional distress not the focus of a complaint not be transferred to the district court.").

The courts' concerns in *Lang* and *Bertholet* highlight the problem where IIED claims are tacked onto bankruptcy claims when the gravamen of the claim—as is true here—focuses on a contractual relationship, alleged economic injury, or conduct arising from mortgage foreclosure. The Claimants here are not the first borrowers in the ResCap bankruptcy cases to assert an IIED claim along with a plethora of other common law and statutory claims arising from what are fundamentally residential mortgage foreclosure disputes. *See, e.g.*, *In re Residential Capital, LLC*, 531 B.R. 1, 20–21 (Bankr. S.D.N.Y. 2015) (dismissing emotional distress claim under Washington law for conduct relating to foreclosure); *In re Residential Capital, LLC*, 529 B.R. 806, 818 (Bankr. S.D.N.Y. 2015) (dismissing emotional distress claim under Massachusetts law because claimant failed to allege physical harm manifested by objective symptomology); *In re Residential Capital, LLC*, No. 12-12020 (MG), 2015 WL 4747860, at *14–15 (Bankr. S.D.N.Y. Aug. 4, 2015) (dismissing negligence claim under California law seeking damages, among other things, for severe emotional distress); *In re Residential Capital, LLC*, No. 12-12020 (MG), 2015 WL 3952688, at *4 (Bankr. S.D.N.Y. June 26, 2015) (applying res judicata and dismissing IIED claim under Hawaii law for conduct relating to foreclosure); *In re Residential Capital, LLC*, No. 12-12020 (MG), 2015 WL 2229234, at *9 (Bankr. S.D.N.Y. May 8, 2015) (dismissing emotional distress claim under Texas law for conduct relating to foreclosure); *In re Residential Capital,*

*LLC*, No. 12-12020 (MG), 2015 WL 1087746, at *3 (Bankr. S.D.N.Y. Mar. 9, 2015) (dismissing emotional distress claim under Connecticut law for conduct relating to foreclosure).

Each ResCap borrower asserting an emotional distress claim should have his or her claim evaluated separately to determine whether it states a claim under applicable state law. But the issue whether the state law claim is a personal injury tort under federal bankruptcy law, such that a bankruptcy court may not enter a final judgment absent consent, is a separate question controlled by federal law. The Claimants' IIED Claim here survived the Trust's Objection to the Claims, but that ruling does not control whether this Court may hear and finally determine the IIED Claim along with the Claimants' other surviving causes of action.

Efficient, prompt, consistent resolution of objections to bankruptcy claims is important—no ResCap borrower claimant with an allowed claim has received a distribution yet from the Trust, as the claims allowance process continues to resolve numerous contested claims. Requiring each ResCap borrower's emotional distress claim to be resolved in a district court can only further slow the claims allowance process and the making of distributions to claimants with allowed claims. These concerns, of course, cannot control the correct determination of what is a personal injury tort under section 157(b)(5), but courts should not be blind to the consequences of a ruling on the application of the statutory term "personal injury tort"—*context matters*.

With that, the Court turns to the primary issue before it: whether the Claimants' IIED Claim is a personal injury tort for purposes of section 157(b)(5). The Court concludes that the hybrid approach is most appropriately applied in determining whether the Claimants' IIED Claim is a personal injury tort under section 157(b)(5). In this contested matter, however, whether the hybrid or narrow approach is followed, the result would be the same—the Claimants' IIED Claim is not a personal injury tort.

The Claimants' assert their IIED Claim pursuant to Nevada law.  Under Nevada law, courts identify the following elements of an IIED claim:  "(1) extreme or outrageous conduct on the part of the defendants; (2) intent to cause emotional distress or reckless disregard for causing emotional distress; (3) that the plaintiff actually suffered extreme or severe emotional distress; and (4) causation."  *Franchise Tax Bd. of State of Cal. v. Hyatt*, 335 P.3d 125, 147 (Nev. 2014) (citation omitted).  Nevada courts apply a sliding scale approach such that "[t]he less extreme the outrage, the more appropriate it is to require evidence of physical injury or illness from the emotional distress."  *Id.* at 148 (citation omitted).  A plaintiff asserting an IIED claim "need not suffer physical harm to recover . . . , especially when the outrageousness of defendants' conduct affords sufficient assurance that the mental damages are genuine.  Carl Tobias, *Intentional Infliction of Mental Distress in Nevada*, 2 NEV. L.J. 59, 67–68 (2002).  Some Nevada Supreme Court cases appear to suggest "that plaintiffs, who did not experience physical impacts, must prove severe emotional distress by showing physical injury or physical illness."  *Id.* (citations omitted).  However, such holdings appear to be primarily for claims of negligent infliction of emotional distress, and the only high court decision involving IIED appears to have "imposed an exceptionally high standard, which few other jurisdictions presently apply and which lacks scientific substantiation."  *Id.* (citations omitted).

This Court refused to dismiss the Claimants' IIED Claim under Nevada law, finding that their allegations of physical manifestations of the emotional distress were sufficient to overcome the Trust's Objection based on the pleadings.  But the allegations, including of the physical manifestations, do not rise to the level of "trauma or bodily harm," *In re Ice Cream Liquidation, Inc.*, 281 B.R. at 160 (citation omitted), nor do they rise to the level of the "traditional, plain-meaning sense" of a "personal injury tort," *In re Cohen*, 107 B.R. at 455.  The allegations in the

15

Claimants' complaint and in the Longoni affidavit rise to the level of "shame and humiliation," but not more. *Id.* The Court does not wish to understate the seriousness of the IIED Claim in this matter; the Claimants may prevail on the claim, but they will have to do so in this Court.

Under the hybrid view, the Claimants' IIED Claim does not fall within section 157(b)(5). Like many other ResCap borrower claimants, the Claimants' IIED Claim unquestionably stems from allegedly flawed mortgage foreclosure and loss mitigation processes. The IIED Claim therefore arises primarily out of financial, contract, or property tort claims triggering this Courts "more searching analysis" of the Claimants' allegations. *See In re Ice Cream Liquidation, Inc.*, 281 B.R. at 160. In this case, the analysis leads to the determination that the IIED Claim—based on allegations of wrongful foreclosure, denial of loan modifications, and false representations—is not, by its "nature," a "personal injury tort." *Id.*

### III.    CONCLUSION

For the foregoing reasons, the Court concludes that the Claimants' IIED Claim is not a personal injury tort for purposes of section 157(b)(5). As a result, the IIED Claim will remain in this Court for final adjudication.

**IT IS SO ORDERED.**

Dated:  September 4, 2015
         New York, New York

                                             ___*Martin Glenn*___
                                             MARTIN GLENN
                                             United States Bankruptcy Judge