**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: ) | **NOT FOR PUBLICATION** |
| ) | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.*, ) |  |
| ) | Chapter 11 |
| Debtors. ) |  |
| ) | (Jointly Administered) |

**MEMORANDUM OPINION AND ORDER SUSTAINING THE RESCAP BORROWER
CLAIMS TRUST'S OBJECTION TO CLAIM NOS. 3910 AND 4085
FILED BY PHILIP AND SYLIVA EMIABATA**

*A P P E A R A N C E S:*

MORRISON & FOERSTER LLP
*Attorneys for the ResCap Borrower Claims Trust*
250 West 55th Street
New York, New York 10019
By:    Norman S. Rosenbaum, Esq.
       Jordan A. Wishnew, Esq.
       Jessica J. Arett, Esq.

PHILIP AND SYLVIA EMIABATA
*Pro Se*
508 Evening Grosbeak Drive
Pflugerville, Texas 78660
By:    Philip and Sylvia Emiabata

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

The ResCap Borrower Claims Trust (the "Trust") objected (the "Objection," ECF Doc. # 8042)[1] to Claim Numbers 3910 and 4085 (the "Claims," Cunningham Decl. Ex. B) filed by Philip and Sylvia Emiabata (the "Emiabatas"). The Claims relate to the Emiabatas' mortgage loan secured by real property located in the state of Texas and are generally grounded in fraud,

---

[1] The Trust's Objection to the Emiabatas' Claims was originally included in the Trust's eighty second omnibus objection to claims. Later, the Trust filed a supplemental objection (the "Supplemental Objection," ECF Doc. # 8810), supported by the declaration of David Cunningham (the "Cunningham Declaration," Supp. Obj. Ex. 1).

breach of contract, and unfair and deceptive trade practices. The Objection asserts that the Claims should be disallowed and expunged because the Emiabatas fail to state a viable claim for relief.

The Court held a hearing on the Objection on September 3, 2015; Philip Emiabata appeared by telephone. Immediately following the hearing, the Court entered an order sustaining the Objection to the Claims in its entirety, and indicating that a written opinion explaining the Court's decision would follow. (*See* ECF Doc. # 9104.) This is that Opinion.

## I.    BACKGROUND

### A.    The Emiabatas' Loan History

Non-debtor Home Loan Corporation ("Home Loan") originated a $247,400 loan (the "Loan") to the Emiabatas on August 29, 2002, evidenced by a note (the "Note," Cunningham Decl. Ex. C), secured by a deed of trust (the "Deed of Trust," *id.* Ex. D), encumbering real property located at 508 Evening Grosbeak Drive, Pflugerville, Texas 78660 (the "Property"). (Obj. Ex. 1-A at 12.) As reflected in two separate endorsements on the Note, Debtor Residential Funding Company, LLC ("RFC") purchased the Loan from Home Loan, but then transferred its interest in the Loan when the Loan was securitized on March 1, 2003, at which time JP Morgan Chase Bank, NA was appointed as trustee for the securitization trust. (Note at 5.) Debtor Homecomings Financial, LLC ("Homecomings") serviced the Loan from January 29, 2003 until servicing was transferred to Debtor GMAC Mortgage, LLC ("GMACM") on July 1, 2009. (Obj. Ex. 1-A at 12–13.) GMACM serviced the Loan from July 1, 2009 through February 16, 2013, when servicing was transferred to non-debtor Ocwen Loan Servicing, LLC ("Ocwen"). (*Id.*)

At the time Homecomings obtained the servicing rights in January 2003, the Emiabatas were only required to escrow funds for taxes—they were not required to escrow funds for property insurance premiums, which the Emiabatas were responsible for paying themselves,

2

although they were required to keep insurance in force. (*Id.* at 22; Supp. Obj. ¶ 11 (citing Cunningham Decl. ¶ 10).) Homecomings was not provided with proof of insurance coverage at the time it began servicing the Loan. (Obj. Ex. 1-A at 22.) As a result, throughout 2003 and much of 2004, Homecomings requested proof of property insurance directly from the Emiabatas. (*Id.* at 22–23 (citations omitted); Supp. Obj. ¶¶ 11–12 (citations omitted).) The Emiabatas failed to provide Homecomings proof of property insurance until September 4, 2004, despite multiple communications between the parties. (Obj. Ex. 1-A at 22–23 (citations omitted); Supp. Obj. ¶¶ 11–12 (citations omitted).) Because of the Emiabatas' failure to provide proof of insurance, Homecomings obtained lender-placed property insurance as early as July 24, 2003; this insurance was cancelled on October 6, 2004, soon after the Emiabatas finally provided proof of the insurance policy. (Obj. Ex. 1-A at 22–23 (citations omitted); Supp. Obj. ¶¶ 11–12 (citations omitted).) Homecomings charged the Emiabatas' escrow account for the cost of the lender-placed insurance for the period of July 24, 2003 through October 6, 2004, the time during which the Emiabatas failed to provide proof of their insurance. (Obj. Ex. 1-A at 22–23 (citations omitted); Supp. Obj. ¶¶ 11–12 (citations omitted).)

The Emiabatas did not make their monthly Loan payments from February 2004 through May 2005, and they ultimately filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code (the "First Chapter 13 Case"). (Obj. Ex. 1-A at 13; Cunningham Decl. Exs. G–H; Supp. Obj. ¶ 13 (citing the "Payment History," Cunningham Decl. Ex. F; Cunningham Decl. Ex. H)). Pursuant to consent orders, the Emiabatas made 45 payments toward the Loan during their First Chapter 13 Case. (*See* Cunningham Decl. Exs. H–J, L–M; Supp. Obj. ¶¶ 15–18 (citations omitted); Obj. Ex. 1-A at 18–19; *see also* Payment History.) The Debtors' books and records reflect that $64,199.83 in payments were made to the Emiabatas' Loan account from

3

June 21, 2005 to September 15, 2007; the payments were applied to the oldest delinquent payment first, beginning with the February 2004 payment. (Supp. Obj. ¶ 18 (citing Payment History; Cunningham Decl. Ex. M).) Despite these payments, the Emiabatas did not become current on their Loan; the First Chapter 13 Case was dismissed on September 17, 2007, before the Emiabatas could finish performing under their chapter 13 plan. (Obj. Ex. 1-A at 15; *see also* Cunningham Decl. Ex. L.) The Emiabatas only became current on Loan payments through September 2005. (Supp. Obj. ¶ 19 (citing Payment History at 12).)

On September 28, 2007, after the First Chapter 13 Case was dismissed, Homecomings mailed the Emiabatas a breach letter advising them that they were in default. (Obj. Ex. 1-A at 14–15.) From the date of that letter until loan servicing was transferred to Ocwen, the Emiabatas disputed the delinquency on their account—they asserted that they made payments from 2005 through 2007 that brought their account current and that they provided "proof" of such payments to Homecomings on multiple occasions. According to the Trust, the Emiabatas' payments in 2005 through 2007 were made during the Emiabatas' First Chapter 13 Case but were insufficient to bring the account completely current. Homecomings examined the "proof" provided by the Emiabatas and compared the payments to the amounts due, as reflected in the Debtors' books and records. That reconciliation of payments demonstrates a significant payment deficiency.

While the dispute regarding Homecomings' application of the Emiabatas' payments remained ongoing, Homecomings, and later GMACM, engaged in loss mitigation negotiations with the Emiabatas. These negotiations resulted in four loss mitigation attempts that were ultimately either cancelled or never fully came to fruition.

First, Homecomings approved the Emiabatas' Loan for a traditional permanent loan modification on November 2, 2007 (the "November 2007 Modification"). (*Id.*) The November

4

2007 Modification required, among other things, that the Emiabatas make an initial contribution payment in certified funds. (*Id.* at 15.) The Emiabatas made the initial contribution payment but failed to make it in certified funds. (*Id.*; Supp. Obj. ¶ 21 (citing the "Servicing Notes," Cunningham Decl. Ex. E at 44).) Consequently, Homecomings cancelled the November 2007 Modification on December 5, 2007. (Obj. Ex. 1-A at 15–16; Servicing Notes at 43.)

Second, Homecomings approved the Emiabatas' Loan for a new loan modification on December 5, 2007 (the "December 2007 Modification")—the date on which the November 2007 Modification was cancelled. (Obj. Ex. 1-A at 16; Servicing Notes at 43.) The December 2007 Modification was ultimately denied by Homecomings on February 5, 2008 because the Emiabatas failed to return the signed modification documentation and pay the required initial contribution. (Obj. Ex. 1-A at 16; Servicing Notes at 42.)

Third, Homecomings set up a temporary repayment plan on the Emiabatas' Loan account on May 23, 2008 (the "2008 Repayment Plan," Cunningham Decl. Ex. N). The purpose of this repayment plan was to allow time for Homecomings to review the Emiabatas' dispute regarding the delinquency of their account. (Obj. Ex. 1-A at 17; Servicing Notes at 36.) The 2008 Repayment Plan was cancelled by Homecomings on July 17, 2008 because the Emiabatas failed to provide their first of two required payments under the plan in certified funds. (Obj. Ex. 1-A at 17; Servicing Notes at 36; Cunningham Decl. Ex. O.) Homecomings later accepted payments from the Emiabatas on July 17 and August 4, 2008 because the Emiabatas claimed their initially insufficient payment was due to their bank's error; but the Emiabatas never provided proof of the error. (Supp. Obj. ¶ 26 (citing Cunningham Decl. ¶ 25).)

Fourth, after GMACM obtained the servicing rights to the Loan, GMACM set up a forbearance plan on November 9, 2009 to allow the Emiabatas to complete and submit a workout

5

package for another loan modification review (the "2009 Forbearance Plan," Cunningham Decl. Ex. S). (Servicing Notes at 15.) The Emiabatas submitted a complete workout package on December 16, 2009 (the "December 2009 Workout Package," Cunningham Decl. Ex. T). GMACM requested missing documentation from the Emiabatas in March and May 2010, but the Emiabatas did not send in the needed information, resulting in another rejection of a loan modification. (Obj. Ex. 1-A at 21; Supp. Obj. ¶ 34; Cunningham Decl. ¶ 34.)

During the period of 2008 through 2010, the Emiabatas made twelve payments on the Loan totaling $30,271.12. (*See* Payment History.) The last payment made on October 26, 2010 brought the account current as of December 2005. (*Id.*) From 2008 through 2013, Homecomings and later GMACM referred the Property for foreclosure and scheduled foreclosure sales on more than one occasion. (*See* Obj. Ex. 1-A at 16, 18, 21; Servicing Notes at 7, 28, 41.) Each time the foreclosure sale or foreclosure process was placed on hold because either (1) the servicer needed time to undertake an examination of the Emiabatas' submitted debt dispute (*see* Servicing Notes at 37–38; Obj. Ex. 1-A at 19); (2) the Emiabatas filed a chapter 13 bankruptcy case (of which they filed three in addition to the First Chapter 13 Case) (*see* Obj. Ex. 1-A at 19–21; Supp. Obj. ¶ 31 (citing Cunningham Decl. Ex. Q); *id.* (citing Servicing Notes); Servicing Notes at 17; Cunningham Decl. Exs. R, X); or (3) the servicer engaged in reviewing the Emiabatas' Loan for a loan modification or other loss mitigation option (*see* Obj. Ex. 1-A at 17, 20–21; Supp. Obj. ¶ 34; Cunningham Decl. ¶ 34). When servicing of the Emiabatas' Loan was transferred to Ocwen in February 2013, there was no active foreclosure pending on the Property; but the Emiabatas' Loan account was current only through February 2006. (Cunningham Decl. ¶ 38.)

**B.     The Claims**

The Emiabatas timely filed their Claims on November 9, 2012.  The first claim, Claim Number 3910, asserts a general unsecured claim in the amount of $228,928.28 and a secured claim in the amount of $271,071.72 against Debtor Residential Capital, LLC ("ResCap").  (*See* Claims at 2–5.)  The second claim, Claim Number 4085, asserts a general unsecured claim and a secured claim in the same amounts against GMACM.  (*See id.* at 6–9.)  For both Claims, the Emiabatas state that the "claim arises out of the property based at 508 Evening," reference "Case # 11 CV-11885 at US District Court of Massachusetts Boston Division" (the "Massachusetts Action"), and attach a handwritten note stating:  "Suit or claim creditor have against debtor on the property.  And the injury sustained for not crediting the account properly, the land where the property is situated on, and their various foreclosure actions."  (*See generally* Claims.)  The Massachusetts Action complaint (the "Complaint," Cunningham Decl. Ex. U) was filed against Homecomings and GMACM on October 25, 2011 in the United States District Court for the Eastern District of Massachusetts (the "Massachusetts District Court").  The defendants moved to dismiss the Complaint but no ruling was ever made as the case was stayed because of the Debtors' bankruptcy filing.  The Massachusetts Action was closed on January 30, 2015 upon a finding that the issues could be resolved in this Court.  (*Id.* Ex. V.)

The Claims incorporate by reference the Complaint filed in the Massachusetts Action.  The Complaint alleges:  (1) "deceptive trade practices, fraud, non-disclosure;" (2) one of the Debtors gave the Emiabatas a "sub-prime" loan when they wanted a different loan; (3) the Debtors broke their promise that the Loan would convert to a 30-year fixed rate loan after one year; (4) the Debtors failed to properly credit the Emiabatas' account with payments made by the Emiabatas; (5) in 2010, the Debtors failed to provide the Emiabatas with a Form 1099 despite the

7

Emiabatas' requests; (6) the Debtors mishandled the Emiabatas' escrow account and wrongfully required escrow for insurance when the Emiabatas were paying their own insurance; (7) the Emiabatas did not receive title to all of the land they were supposed to acquire, presumably in connection with their Loan; (8) wrongful foreclosure; and (9) wrongful denial of loan modifications. (Obj. Ex. 1-A at 13–14; *see generally* Compl.)

The Trust requested that the Emiabatas provide more information supporting their Claims; the Emiabatas submitted a letter (the "Diligence Response," Cunningham Decl. Ex. A), referencing the Massachusetts Action again and alleging "deceptive trade practices, various fraudulent foreclosures," damage to their credit, wrongful refusal to give credit for payments, and that "creditor was not given exactly the acreage of the land which creditors paid for." (*See id.*)

## C. Procedural History

After the Objection was originally filed in January 2015, the Emiabatas did not submit a response and, on April 1, 2015, the Court sustained the Objection to the Emiabatas' Claims. (*See* ECF Doc. # 8400.) Subsequently, the Emiabatas advised the Court that the Objection was served at the incorrect address and they therefore did not receive proper notice. (*See* ECF Doc. # 8563.) The Court entered an order vacating the prior order sustaining the Objection as to the Emiabatas' Claims and directed the Trust to re-serve the Objection. (*Id.*) The Trust re-served the Emiabatas and noticed the Objection to the Claims for a hearing on June 23, 2015. (*See* ECF Doc. # 8568.) The Emiabatas filed a timely opposition to the Objection (the "Opposition," ECF Doc. # 8726). The Trust then filed its Supplemental Objection.

The Emiabatas then filed two motions: one to compel discovery (the "Motion to Compel," ECF Doc. # 8821) and the other to extend their time to respond to the Supplemental

8

Objection in order to conduct the requested discovery (the "Motion to Extend," ECF Doc. # 8822). The Court denied the motions as premature and moot, respectively. (*See* ECF Doc. # 8854.)

The hearing on the Objection was adjourned from July 30, 2015 to September 3, 2015 on consent of the parties. (*See* ECF Doc. # 8911.) The Emiabatas filed a response to the Supplemental Objection on August 20, 2015 (the "Supplemental Opposition," ECF Doc. # 9049). On August 26, 2015, the Emiabatas also filed the *Expedited Motion for Conference/ Clarity of Issue of Discovery and Interrogatories; and Adjournment of Omnibus Objection Hearing to December 3, 2015 on Claims Nos. 3910 & 4085 – Philip Emiabata and Sylvia Emiabata* (the "Motion for Conference," ECF Doc. # 9065). The following day the Court entered an order denying the Motion for Conference, ordering that the hearing on the Objection go forward as scheduled on September 3, 2015 (the "Conference Order," ECF Doc. # 9066). The Trust thereafter filed a supplemental reply in support of its Objection and Supplemental Objection (the "Supplemental Reply," ECF Doc. # 9069).

On September 2, 2015, the Emiabatas filed a notice of appeal (the "Appeal," ECF Doc. # 9110) of the Conference Order as well as a motion to stay the resolution of the Objection pending the outcome of their Appeal (the "Motion to Stay," ECF Doc. # 9102).[2] The Motion to Stay is hereby **DENIED**. The Court will address the merits of the Emiabatas' Claims.

Familiarity with the parties' arguments in the Objection, Opposition, Supplemental Objection, Supplemental Opposition, and Supplemental Reply is assumed.

---

[2] The Emiabatas also filed a motion for relief from the stay. (ECF Doc. # 9103.) The Emiabatas have not paid the filing fee for this motion and the Court therefore does not consider it in this Opinion.

9

## II.     DISCUSSION

### A.     Claims Objections

Correctly filed proofs of claim "constitute prima facie evidence of the validity and amount of the claim . . . .  To overcome this prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim."  *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000).  By producing "evidence equal in force to the prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed."  *Creamer v. Motors Liquidation Co. GUC Tr. (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013).  If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim."  4 COLLIER ON BANKRUPTCY ¶ 502.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law."  11 U.S.C. § 502(b)(1).  To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law."  *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

Although "[claims] drafted by *pro se* [claimants] are to be construed liberally, [] they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with 'a fair understanding of what the [claimant] is complaining about and . . . whether there is a legal basis for recovery.'"  *Kimber v. GMAC Mortg., LLC (In re*

10

*Residential Capital, LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (ellipsis in original) (quoting *Iwachiw v. New York City Bd. of Elections*, 126 F. App'x 27, 29 (2d Cir. 2005)).

The Court finds and concludes that the Trust adequately shifted the burden of proof to the Emiabatas by way of its Objection and Supplemental Objection and that the Emiabatas thereafter failed to satisfy their burden in establishing the viability of their Claims. The specific factual allegations and legal arguments raised by the parties are addressed below. The Objection to the Emiabatas' Claims is **SUSTAINED** in its entirety.

### B.     Wrongful Foreclosure

The Emiabatas base their Claims in part on a cause of action for wrongful foreclosure. The Trust asserts that this cause of action fails because the Debtors at all relevant times followed the terms of the Note, Deed of Trust, and applicable law.

Under Texas law, the elements of a wrongful foreclosure claim include: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. Ct. App. 2008). "A party who has lost property through a wrongful foreclosure is entitled to either the property or its value, but not both." *Durkay v. Madco Oil Co.*, 862 S.W.2d 14, 21 (Tex. Ct. App. 1993) (citing cases). Based on these elements, a foreclosure sale has to actually occur in order to give rise to a wrongful foreclosure claim—otherwise no property has been "los[t]." *See id.* When GMACM transferred servicing rights of the Emiabatas' Loan to Ocwen, a non-debtor, no foreclosure sale had been conducted. Thus, the Emiabatas' wrongful foreclosure claim fails to state a viable claim for relief and the Objection is **SUSTAINED** as to this cause of action.

11

### C.     Loan Origination Allegations

The Emiabatas make a handful of allegations in support of their Claims that relate to the origination of their Loan: (1) the Debtors provided the Emiabatas with a "sub-prime" loan when the Emiabatas wanted a different type of loan; (2) the Debtors broke their promise that the Loan would convert to a 30-year fixed rate loan after one year; and (3) the Emiabatas did not receive title to all of the land they were supposed to acquire, presumably in connection with their Loan. The Trust correctly argues that the Debtors were not involved in the origination of the Emiabatas' Loan because the originating lender was Home Loan. Without involvement, the Debtors cannot be liable for any claims arising out of the origination. As such, the Court **SUSTAINS** the Objection to the Claims relating to the origination of their Loan.

### D.     Allegedly Misapplied Payments

The Emiabatas assert, as they did throughout their relationship with the Debtors, that payments they made toward their Loan account were misapplied by the Debtors. The Trust provides evidence that the payments of which the Emiabatas have provided proof were payments they made during their First Chapter 13 Case in 2005 through September 2007.

Under Texas law, breach of contract, fraud, and deceptive trade practices claims are subject to a four year statute of limitations. TEX. CIV. PRAC. & REM. CODE ANN. § 16.004 (2014); TEX. BUS. & COMM. CODE § 17.565 (2015). The Massachusetts Action was filed on October 25, 2011, more than four years after the Emiabatas made these allegedly misapplied Loan payments. Thus, any allegations relating to payments made or misapplied four years prior to that date are time-barred and not actionable. The Emiabatas have not put forth any allegations or evidence demonstrating that payments were misapplied after October 25, 2007. The Court

therefore **SUSTAINS** the Objection to the Claims as they relate to allegations of misapplied payments.

        **E.**    **Insurance Escrow**

The Emiabatas allege that during 2003 and 2004, the Debtors improperly placed insurance on the Property and charged the costs of such extra insurance to their escrow account when they already had property insurance for which they were paying.  The Trust argues that the placement of the insurance on the Property was not wrongful because the Emiabatas failed to promptly provide proof of their property insurance when Homecomings requested it, the lender-placed insurance was immediately cancelled upon the eventual receipt of proof, and the only charges the Emiabatas incurred were for coverage during the months for which no proof of the Emiabatas' insurance was provided.  The Trust further asserts that any claim arising out of the insurance escrow allegation is time-barred.

The Court **SUSTAINS** the Objection to the Claims to the extent they are based on Homecomings' placement of insurance on the Property.  First, any breach of contract, fraud, or deceptive trade practices claim, which again would be subject to a four year statute of limitations, is time-barred as these insurance-related allegations arose in 2003 and 2004.  Second, the Trust has put forth sufficient evidence that the placement of insurance on the Property was proper and due to the Emiabatas' failure to provide proof of insurance.  This evidence is sufficient to shift the burden to the Emiabatas; in response, the Emiabatas have provided no evidence or argument establishing the viability of their allegations.

        **F.**    **Alleged Wrongful Denial of Loan Modifications**

The Emiabatas also allege that the Debtors wrongfully denied them loan modifications, but they do not specify why or how those denials were wrongful.  The Trust argues that the

Debtors followed the guidelines of the Loan's investor and of the government and denied the loan modifications due to the Emiabatas' failures to comply with certain terms of initially agreed-upon modifications.

The Objection to the Claims as they relate to the denial of loan modifications is **SUSTAINED**. The Trust has provided sufficient evidence establishing that the Debtors approved the Emiabatas for more than one loan modification over the course of their relationships with the Emiabatas and that the modifications were ultimately cancelled due to the fault of the Emiabatas. For example, one loan modification was cancelled because the Emiabatas failed to make their initial contribution payment in certified funds, as expressly required in the loan modification agreement. The Emiabatas have failed to put forth any evidence or argument establishing that their Claims of wrongful denials of loan modifications are viable, thereby failing to meet their burden.

### G. The Form 1099

Lastly, the Emiabatas allege that the Debtors failed to provide them with a copy of a "1099 form" in 2010. The Trust asserts that the Debtors' books and records do not reveal that any cancellation of debt was ever made with respect to the Emiabatas' Loan (and the Emiabatas do not allege any cancellation of debt), nor is there any entry reflecting that the Emiabatas made a request for such a form.

Form 1099 is filed with the Internal Revenue Service by a financial entity to cancel a debt of $600 or more owed to it by a debtor. *See Form 1099-C, Cancellation of Debt*, Internal Revenue Service, http://www.irs.gov/uac/Form-1099-C,-Cancellation-of-Debt (last visited September 3, 2015). The Trust provided sufficient evidence establishing that there was no cancellation of debt, which in turn establishes that no Form 1099 would have needed to be

14

produced or provided to the Emiabatas. Therefore, the Court **SUSTAINS** the Objection to the Claims as they relate to the purported failure to provide a Form 1099.

### III.    CONCLUSION

For the above reasons, the Objection is **SUSTAINED** in its entirety and the Claims are **DISALLOWED** and **EXPUNGED.**

Dated:  September 4, 2015
       New York, New York

                              *____Martin Glenn_____*
                                  MARTIN GLENN
                            United States Bankruptcy Judge