Hearing Date and Time: August 20, 2015 at 10:00 a.m. (Prevailing Eastern Time)

SUBMITTED AS COURT ORDERED POST-HEARING BRIEF

CLAIMANTS
2100 N. Broadway, Suite 210
Santa Ana, C A92706
Telephone: (714) 558-8580
Facsimile: (714) 558-8579
Email: mghods@ghodslaw.com

Claimants for Mohammed K. Ghods and Heidi Ghods

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| In re: | Case No. 12-12020 (MG) |
|---|---|
| RESIDENTIAL CAPITAL, LLC, et al., Debtors. | Chapter 11 |
| | Jointly Administered |

## CLAIMANTS SUPPLEMENTAL OPPOSITION TO OBJECTION TO CLAIM NUMBER 3503

Claimants Mohammed K. Ghods and Heidi M. Ghods hereby further respond to and oppose the Debtor's objection to their claim identified as Claim No. 3503.

In it Reply Papers the Debtor produced a copy of the subject note ("Note") and for the first time a recorded copy of the subject deed of trust ("Deed of Trust"). At the hearing the Court agreed that the submissions with the Reply Papers warranted further briefing and graciously granted leave for the Claimants to file this Supplemental Opposition.

### I.    INTRODUCTION

As will be shown below, the Debtor's Reply Papers actually confirm the validity of the Claim 3503 and require that the Debtor's objections be overruled as they lack legal merit and factual disputes remain in any event.

As an initial evidentiary matter, the Debtor has submitted declarations of persons without actual knowledge of facts. Claimants object to the inadmissible, incompetent and incomplete evidence. In particular, Claimants object to Declaration of Kathy Priore dated August 17, 2015, submitted with the Debtor's Reply and more specifically to paragraphs 16 through 20 as the Declarant lacks personal knowledge and is presenting impermissible opinions and statements that are not supported by the vague references to the Debtor's alleged business records. Claimants dispute the unfounded assertions. The Debtor has failed to present a proper and

1

complete evidentiary foundation to carry its burden in this proceeding that it had the right to charge the borrowers for forced placed insurance and that it did so lawfully.

With respect to the merits, the central point of the Debtor's argument is articulated in its Reply as follows:

> The Deed of Trust requires Ghods, as borrowers under the Ghods Loan, to maintain insurance on Ghods Property, and if they failed to do so, **the Lender, through GMACM as servicer**, was permitted to place insurance on the Ghods Property to protect its rights. See Deed of Trust section 5 and 7. [Emphasis Added]

See Reply Paragraph 48, Page 16.

The above represents an admission that the Debtor itself had no right to place insurance and charge the borrowers. Instead, the Debtor is trying to coattail its position as "servicer" on the Lender's rights. Yet, the Debtor has not provided any authority for its position and has presented any evidence that the "Lender" had the requisite right to charge the borrowers for forced placed insurance. Indeed, the Note and Deed of Trust relied upon by the Debtor do not give the "Lender" the right to charge the borrowers for forced placed insurance. This fact is implicitly acknowledged by the Debtor in the above quoted section that states the lender was permitted to place insurance but says nothing about the alleged right to charge the borrowers for it.

In any event, the Objection should be overruled for at least the following reasons:

1. **THE DEBTOR LACKED STANDING TO IMPOSE FORCED PLACED INSURANCE AND CHARGE THE DEBTOR FOR SAME.** The Debtor's position is that the "**the Lender, through GMACM as servicer**, was permitted to place insurance" Reply Paragraph 48, Page 16. There is no evidence that the "Lender" FREDDIE MAC ever decided to impose forced placed insurance. As will be shown below, under the Deed of Trust only the Lender had the right to place insurance. More importantly, even the Lender did not have a right to charge the borrower under the specific language of the Deed of Trust at issue in this case.

2. **THE NOTE AND DEED OF TRUST DO NOT AUTHORIZE THE LENDER TO OBTAIN INSURANCE AT BORROWER'S EXPENSE.** As further discussed below the lender (let alone the Debtor as servicer) had no right to charge borrowers for a voluntary and optional purchase of single interest Forced Placed Insurance (also known as Collateral Protection Insurance or Lender Placed Insurance).

3. **FACTUAL ISSUES REMAIN REGARDING THE DEBTOR'S COMPLIANCE WITH THE LAW REGARDING ESCROW AND PLACEMENT OF FORCED PLACED INSURANCE.** In addition to the absence of authority to charge the borrowers for Forced Placed Insurance; the

2

Debtor, as a servicer, was obliged to comply with the mandates of 12 U.S. Code § 2605 and related regulations. The Debtor has totally failed to establish by admissible evidence that it complied with such requirements and factual issues remain in this regard.

The bottom line is that the Claimants have a valid claim for being wrongfully charged for forced placed collateral protection insurance. This is not a case of speculative damages. Claimants were forced to pay the sums demanded under the duress of adverse credit reporting if payment demanded for insurance was not made. Claimants notified the Debtor of the transfer and the Debtor decided not to accelerate the loan and accepted the payments of the principal and interest. The Claimants could not obtain insurance for the Property that had been sold to others. Borrowers paid the sums demanded for insurance under protest. The Debtor did not have a right to impose charges for its purchase of insurance and in any event factual issues remain as to whether the Debtor complied with its legal obligations with respect to forced placed insurance and funds collected in escrow for same. The Debtor's Objection should be overruled.

## II. LEGAL ARGUMENT

### A. THE DEBTOR AS A LOAN SERVICER LACKED AUTHORITY UNDER THE NOTE AND DEED OF TRUST TO CHARGE THE BORROWERS FOR INSURANCE IT PURCHASED.

A servicer who does not have the requisite authority to act with respect to imposition of Forced Placed Insurance may be liable to the borrower for damages. *Casey v. Citibank, NA*, 915 F. Supp. 2d 255 - Dist. Court, ND New York 2013. The District Court in *Casey* observed:

> There is nothing in the loan agreement that explicitly grants the loan servicer, CitiMortgage, the authority to set and change the amount of flood insurance required under the loan. Instead, the plain language of the contract gives this authority to the "Lender." *See id.* ¶ 5. The term "Lender" is defined in the agreement as "REAL ESTATE MORTGAGE NETWORK, INC." *Id.* ¶ C. The "Loan Servicer" is treated as a separate entity in the agreement. *See id.* ¶ 20. Making all reasonable inferences in Skinner's favor for purposes of this motion to dismiss, Fannie Mae assumed the role of Lender when it purchased Skinner's mortgage from Real Estate Mortgage Network, Inc.

*Id.* P. 263

Here, the Note and Deed of Trust, submitted as Exhibits "J" and "K" to the Reply, do not grant any authority to the Debtor to place insurance and charge the borrowers for it. The subject Deed of Trust identifies the "Loan Servicer" as a separate entity from the lender and only mentions its authority to collect monthly payments. The specific language states:

> **19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. **A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument.** There also may be one or more changes of the Loan Servicer unrelated to a

3

sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

As the Court may recall the Debtor's reply states:

> The Deed of Trust requires Ghods, as borrowers under the Ghods Loan, to maintain insurance on Ghods Property, and if they failed to do so, the Lender, **through GMACM as servicer**, was permitted to place insurance on the Ghods Property to protect its rights. See Deed of Trust section 5 and 7. [Emphasis Added]

See Reply Paragraph 48, Page 16.

The Deed of Trust does not support the statement that the servicer had any right to place insurance, let alone charge the borrowers for it. The Debtor's mere reference to paragraphs 5 and 7 of Deed of Trust do not provide the requisite authority. The word "servicer' appears nowhere in paragraphs 5 and 7. The specific language of Paragraph 5 vests the authority and voluntary discretion to acquire insurance solely in the "Lender" by stating "**If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.**" The precise language of Paragraph 7 is discussed in the next section and does not allow the Lender (or its servicer) to charge forced placed insurance expenses to the borrowers. There is simply no authority for the Debtor to have charged the Claimants the premiums for its voluntary placement of Forced Placed Insurance.

As recognized by the District Court in *Casey*, the Debtor, as a loan servicer, lacked the authority and thus standing to obtain insurance let alone charge the Claimants for same. The Debtor is liable to the Claimants for its unauthorized actions. This ground is sufficient to overrule the objection in its entirety.

> **B.    THE DEBTOR ALL BUT CONCEDES THAT THE LANGUAGE OF THE NOTE AND DEED OF TRUST DOES NOT ALLOW CHARGING THE BORROWERS FOR COLLATERAL PROTECTION INSURANCE.**

Turning once again to the Debtor's central argument, it is obvious that the Debtor omitted discussion of the actual language of the Note and Deed of Trust to establish the obligation of the Claimants to pay for the Forced Placed Insurance procured by the Debtor. The exact words used by the Debtor are the following:

> The Deed of Trust requires Ghods, as borrowers under the Ghods Loan, to maintain insurance on Ghods Property, and if they failed to do so, the Lender, through GMACM as servicer, was permitted to place insurance on the Ghods Property to protect its rights. See Deed of Trust section 5 and 7.

4

See Reply Paragraph 48, Page 16.

    Missing from the Debtor's statement is any reference to the borrower's obligation to pay if the insurance placed by the Lender.

    The two paragraphs 5 & 7 from the Deed of Trust are merely identified but are not discussed. As discussed below, they do not support what the Debtor position in any way. However, before discussing the details of the two paragraphs, Claimants would like to draw the Court's attention to a 2014 decision of the Second Circuit Court of Appeal involving the Debtor which recited the typical language in loan documents that in other cases have allowed lenders to pass the forced placed insurance charges to borrowers. The pertinent portion of the opinion states:

> Plaintiffs' residential properties in Texas, New Hampshire, and New York were financed with mortgage loans serviced by GMAC. Plaintiffs each signed a loan agreement requiring hazard insurance on the mortgaged property and warning that the lender would be entitled to purchase LPI if hazard insurance was not maintained. Plaintiff Landon Rothstein's agreement was typical:
>
>> Borrower shall keep . . . the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards . . . for which Lender requires insurance. . . . If Borrower fails to maintain any of the coverages described above, **Lender may obtain insurance coverage, at Lender's option and Borrower's expense**. . . . [S]uch coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. . . . Second Am. Compl. ¶ 48 (emphasis omitted).

[Emphasis Added]

*Rothstein v. Balboa Insurance Co. & GMAC Mortgage LLC*, Docket No. (2nd Cir, 14-2250-cv, July 22, 2015) Page 6.

    No such language appears in the Note and Deed of Trust in this case.

    Paragraph 5 of the Deed of Trust is set forth in full below with the only pertinent section highlighted:

> **5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. **If Borrower fails to maintain coverage described above, Lender may, at**

5

**Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.**

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

Paragraph 5 on its face does not state that the Forced Placed Insurance will be obtained at the borrower's expense.

Paragraph 7 of the Deed of Trust states:

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so. Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Paragraph 7on its face does not state that the Forced Placed Insurance will be obtained at the borrower's expense.

Unlike the typical language in other loan documents that was acknowledged by the Second Circuit, Paragraphs 7 upon which the Debtor relies does not provide the Debtor with the right to **obtain Collateral Protection Insurance coverage at Lender's option and Borrower's expense**. While the lender had a right to procure such insurance, it had to do so at its own expense.

Paragraph 7 is entitled "**Protection of Lender's Rights in the Property**". Insurance is not even mentioned. It specifically states that the "Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property." The intent is highlighted by the specific examples used such as "paying any sums secured by a lien which has priority over this Security Instrument" or "entering on the Property to make repairs".

In practical effect, this clause is dealing with the lender's ability to protect the physical preservation of the value of property. For example, in one case the United States Court of Appeals for the Sixth Circuit relied on a clause similar to Paragraph 7 while considering the constitutional and tort claims that a borrower who had defaulted on her mortgage loan and was not living in her property brought against the City for entering the property and removing several cats from the premises. This was an action to protect the value of the property. The Sixth Circuit explained that the employees of the city had the authority to enter the property because they acted upon the lender's right to "'do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property' . . . includ[ing] 'entering onto the property to make repairs'" under the terms of the borrower's mortgage agreement. The Sixth Circuit endorsed the district court's conclusion that "'[w]hen [the borrower] signed her mortgage, which included the property preservation provisions; she expressly assumed the risk that, if it became necessary to preserve the property, the bank might permit its agents and others to enter the house to effectuate that purpose.'" *Farinacci v. City of Garfield Heights*, No. 10-3516, 2012 WL 386368 at *1 (6th Cir. Feb. 7, 2012).

Furthermore, as a matter of law a secured lender has no rights in the property of its borrower but has a non-possessory lien the title to the mortgaged property, while the mortgagor still holds both legal and equitable title as well as possession. In this case, the subject loan was made in California and the property is also located in California. Under California law, as stated by the California Supreme Court "In practical effect, if not in legal parlance, a deed of trust is a lien on the property." (Monterey S. P. Partnership v. W. L. Bangham, Inc. (1989) 49 Cal.3d 454, 460; see also 4 Miller & Starr, Cal. Real Estate (3d ed. 2013) § 10:2, p. 10-21.)

Not too long ago, the Honorable Elizabeth S. Stong of the United States Bankruptcy Court discussed the law in New York on the same issues and observed:

> Under the lien theory, a mortgage creates a lien but does not transfer title to the mortgagee. (Citations Omitted)
>
> This theory replaced the earlier common law "title" theory, under which a mortgage was viewed as "a legal conveyance of the fee to the mortgagee." (Citations Omitted) (explaining that "[e]arly in the 19th century the courts of New York came to recognize

7

that a more accurate appraisal of the mortgagor-mortgagee relationship was that of debtor-creditor"). (Citations Omitted) (Stating that "[t]he common law doctrine that the mortgagee held title thereto . . . has long been abolished"). ...

*In re: Chapter 11 South Side House, LLC,* Case No. 09-43576, Memorandum Decision on the Status and Application of the Post-petition Rents Generated by the Debtor's Property, Pages 14-15 (United States Bankruptcy Court Eastern District of New York 2012)

In simple terms, the Lender in this case was merely a lien holder and had no interest in the property at issue. The relationship is a creditor-debtor relationship. While the language of Paragraph 7 allowed the Lender to do certain things such as entering the property to preserve its physical qualities or paying off other liens and pass on such charges to the borrowers, it did not permit charging the borrowers for the cost of Forced Place Insurance. The Deed of Trust does not contain the typical language that allows a lender to obtain Insurance at Lender's option and Borrower's expense. The contract cannot be rewritten and as written does not allow the Lender, let alone the Debtor as a servicer, to pass on such charges to the Claimants.

### C. THE DEBTOR FAILED TO RESPOND TO THE CLAIMANTS WRITTEN LETTERS AS REQUIRED BY LAW AND THE OBJECTION DOES NOT ADDRESS ITS VIOLATION OF SECTION 6(E) OF RESPA.

Section 6(e) of RESPA provides that a borrower may submit a written request to a loan servicer for "information relating to the servicing" of its loan. 12 U.S.C. § 2605(e)(1)(A). Upon receipt of such writing, the servicer must provide a written response acknowledging receipt within 5 days unless the action requested is taken in that time frame. *Id.* Additionally, the servicer has 30 days to correct any errors identified by the borrower or, after conducting an investigation, provide the borrower with a written response setting forth why the servicer believes that its determination regarding the borrower's account is correct or why the servicer cannot obtain the information requested by the borrower. *Id.* 2605(e)(2). Failure to comply with any provision of section 6 subjects a servicer to liability for "actual damages to the borrower as a result of the failure" and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." *Id.* § 2605(f)(1).

Attached to the Claimants proof of Claim is a letter dated June 8, 2010. On June 18, 2010, a response was sent by the Debtor which stated "We have also forwarded your correspondence to our Assumptions Department. A response regarding transfer of the property will be sent under separate cover. No response was ever provided. The Debtor has not established its compliance at this stage of the proceedings. Accordingly, the Debtors failure to properly respond to the issues raised by the Debtor implicates its statutory liability which the Debtor has not addressed in its Objection.

It is established that properly filed proofs of claim "constitute prima facie evidence of the validity and amount of the claim . . . . To overcome this prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly),* 245 B.R. 768, 773 (2d Cir. B.A.P. 2000).

      Here, the Debtor has provided no evidence to establish its compliance with the applicable laws in connection with responding to the Claimants written inquiry as well as lawful placement of Forced Placed Insurance.

## III. CONCLUSION

      Based on the foregoing, Claimants respectfully request the Objection to Claim No. 3503 be overruled.

Dated: September 2, 2015
       Santa Ana, CA

CLAIMANTS

By: _____
    Mohammed K. Ghods

By: _____
    Heidi M. Ghods

PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

On September 2, 2015, I served the foregoing document described as:

CLAIMANTS SUPPLEMENTAL OPPOSITION TO OBJECTION TO CLAIM NUMBER 3503

on the interested parties in this action:

**SEE SERVICE LIST BELOW**

as stated below:

☒ BY EMAIL: As follows: I caused the documents to be sent to the persons at the e-mail addresses, as last given or submitted on any document which he or she has filed in the case, listed on the attached service list. I did not receive, within reasonable time after transmission, any electronic message or other indication that the transmission was unsuccessful.

☒ BY FACSIMILE: I caused such document(s) to be transmitted by facsimile transmission from a facsimile transmission machine, at Santa Ana, California, with the telephone number (714) 558-8579 to the parties below. The facsimile transmission was reported as complete without error by a transmission report, issued by the facsimile transmission machine upon which the transmission was made.

Linda A. Riffkin
Brian S. Masumoto
Office of the United States Trustee for the Southern District of New York
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014
F: (212) 668-2255

I declare under penalty of perjury under the laws of the United States of America that foregoing is true and correct and was executed on September 2, 2015, at Santa Ana, California.

_____
Ruth Lopez

10

## SERVICE LIST

| | |
|---|---|
| Norman S. Rosebaum<br>Jordan A. Wishnew<br>Jessica J. Arett<br>Morrison & Foerster LLP<br>250 W. 55th Street<br>New York, NY 10019<br>nrosenbaum@mofo.com<br>jwishnew@mofo.com<br>jarett@mofo.com<br>Counsel for ResCap Borrower Claims Trust | Daniel J. Flanigan<br>Polsinelli PLAINTIFFS' COUNSEL<br>900 Third Avenue, 21st Floor<br>New York, NY 10022<br>dflanigan@polsinelli.com<br>The ResCap Borrower Claims Trust |
| Jeffrey Brodsky<br>Quest Turnaround Advisors<br>800 Westchester Avenue, Suite S-250<br>Rye Brook, NY 10573<br>jbrodsky@qtadvisors.com<br>The ResCap Liquidating Trust | |