1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 12-12020-mg

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  RESIDENTIAL CAPITAL, LLC, et al.,

9

10             Debtors.

11

12  - - - - - - - - - - - - - - - - - - - -x

13

14             United States Bankruptcy Court

15             One Bowling Green

16             New York, New York

17

18             September 3, 2015

19             10:05 AM

20

21  B E F O R E:

22  HON. MARTIN GLENN

23  U.S. BANKRUPTCY JUDGE

24

25

1

2   Doc# 9059, 8971 Status Conference Regarding (I) The Memorandum

3   Opinion And Order (I) Sustaining In Part And Overruling In Part

4   The ResCap Borrower Claims Trust's Objection To Claim No. 452

5   Filed By Julio Pichardo And (II) Denying Julio Pichardo's

6   Motion To Lift The Automatic Stay.

7

8   (CC: Doc# 8810, 8812) (PTBS: Doc# 8568) Hearing RE: The ResCap

9   Borrower Claims Trust's Eighty-Second Omnibus Objection to

10  Claims (No Liability Borrower Claims) Solely as it Relates to

11  the Claims Filed by Philip Emiabata and Sylvia Emiabata (Claim

12  nos. 3910 and 4085).  Going Forward Solely as it Relates to the

13  Claims Filed by Philip Emiabata and Sylvia Emiabata (Claim nos.

14  3910 and 4085).

15

16

17

18

19

20  Transcribed by:  Penina Wolicki

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

3

```
1
2   A P P E A R A N C E S :
3   MORRISON & FOERSTER LLP
4        Attorneys for The ResCap Borrower Claims Trust
5        250 West 55th Street
6        New York, NY 10019
7
8   BY:   JORDAN A. WISHNEW, ESQ.
9
10
11  PHILIP EMIABATA
12       Pro Se (Telephonically)
13
14
15  JULIO PICHARDO
16       Pro Se (Telephonically)
17
18
19
20
21
22
23
24
25
```

RESIDENTIAL CAPITAL, LLC, ET AL.                          4

1                      P R O C E E D I N G S

2              THE CLERK:  All rise.

3              THE COURT:  Please be seated.  We're here in

4    Residential Capital, number 12-12020.  Mr. Wishnew?

5              MR. WISHNEW:  Good morning, Your Honor.  Jordan

6    Wishnew, Morrison & Foerster, for the ResCap Borrower Claims

7    Trust.  Your Honor, there are two matters on today's calendar.

8    The first is a status conference concerning the claim objection

9    to claim number 452 by Mr. Julio Pichardo.  I believe Mr.

10   Pichardo is on the phone today.

11             THE COURT:  Mr. Pichardo, are you on the phone?

12             MR. PICHARDO:  Yes, Your Honor.  Good morning.

13             THE COURT:  Good morning.

14             MR. PICHARDO:  I'm on CourtCall.

15             THE COURT:  Thank you.

16             Mr. Wishnew, go ahead.

17             MR. PICHARDO:  And I wish to address the order first,

18   if I'm allowed?

19             THE COURT:  No, I'm going to allow Mr. Wishnew to

20   speak first and then I'll allow you to speak.  Okay?

21             MR. PICHARDO:  Thank you.  Thank you.

22             THE COURT:  Go ahead.  Go ahead, Mr. Wishnew.

23             MR. WISHNEW:  Thank you, Your Honor.

24             Your Honor, with regards to this matter, the Court

25   issued its memorandum opinion and order granting in part -- or

1   sustaining in part and overruling in part, the Borrower Claims

2   Trust's objection to the claim.

3          The objection was based on two sets of complaints, an

4   initial complaint and a first amended complaint, that Mr.

5   Pichardo previously filed against GMAC Mortgage.  Between them,

6   there were approximately nine counts.  Your Honor sustained our

7   objection as to four of those counts that concerned the

8   violation of the Fair Debt Collection Practices act, as well as

9   a violation of the False Advertising Law in California.  There

10  was also a sustaining of our objection to the negligence claim

11  as well as an unjust enrichment claim.

12         What remains, Your Honor, were claims relating to

13  breach of contract, breach of implied covenant of good faith

14  and fair dealing, negligent misrepresentation, and violation of

15  the California Business and Professional (sic) Code, Section

16  17200, or the UCL, the Unfair Competition Law.

17         Subsequent to the order being -- the memorandum

18  opinion and order being issued, the Borrower Claims Trust did

19  reach out to Mr. Pichardo to try and begin negotiations.  It

20  was during those discussions that we got the impression from

21  Mr. Pichardo that he believed he -- there was a finding of

22  liability in his favor and that we were responsible -- or there

23  was a definitive claim against us.

24         We tried to explain to him that simply Your Honor

25  found that there were disputed issues of fact concerning --

1          MR. EMIABATA:  Excuse me, Your Honor.  Objection, Your

2    Honor.

3          THE COURT:  Mr. Pichardo you have to remain quiet

4    until Mr. Wishnew has finished.

5          MR. EMIABATA:  It's just me, Mr. Emiabata, Your Honor.

6    I'm here representing myself.  I'm came on the (indiscernible)

7    of my case.

8          THE COURT:  That's not Mr. Pichardo speaking.  This

9    is --

10         MR. PICHARDO:  No.

11         MR. EMIABATA:  No, this is Mr. Emiabata.  I'm

12   calling -- I'm responding on the case number -- on my claim

13   about 3910, that's --

14         THE COURT:  Mr. Emiabata, I will get to your case --

15         MR. EMIABATA:  Yes, sir.  Yes, Your Honor.

16         THE COURT:  Mr. Emiabata, be quiet.  I will get to the

17   hearing on your case.  It is next on the calendar.  It is not

18   the first matter.  So remain quiet on the phone or you will be

19   cut off.  Do you understand?  Do you understand?

20         MR. EMIABATA:  I do understand.  (Indiscernible) phone

21   and I'm paying for the hour.  So if this isn't my case, then I

22   will call the clerk to put me on the hearing when my case

23   called.  That's what I'm thinking.

24         THE COURT:  Mr. Emiabata.  Mr. Emiabata, if you want

25   to be heard by this Court, remain quiet.  As soon as I finish

1    with the first item on the calendar, your case will be called.

2    If you hang up, you will not be heard.  Okay?  We go in the

3    order in which the calendar is set.  Yours is second on the

4    calendar, not first.

5              MR. EMIABATA:  Okay, Your Honor.  Thank you, Your

6    Honor.

7              THE COURT:  Mr. Pichardo's case is first.  If you wish

8    to stay on the phone, you need to be quiet until I call your

9    case, or I will have you disconnected.  Do you understand?

10             MR. EMIABATA:  You can do what you want to do, Your

11   Honor.  It's your court.

12             THE COURT:  Be quiet.  Go ahead, Mr. Wishnew.

13             MR. EMIABATA:  You're welcome.

14             MR. WISHNEW:  Thank you, Your Honor.  So during the

15   discussions that we were having with Mr. Pichardo, we were

16   getting the impression that he believed that there was a

17   definitive finding of liability against the Borrower Claims

18   Trust.  We stated to him that based upon the wording of the

19   memorandum opinion and order, there were simply disputed issues

20   of fact concerning the unresolved elements of his claim.

21             Your Honor, at the same time that this matter was

22   proceeding, Mr. Pichardo is also litigating against Ocwen in

23   California.  There is currently pending a summary judgment

24   motion filed by Ocwen.  And there is essentially an overlap of

25   the unresolved causes of action before Your Honor with the

1    matters that are going forward on summary judgment.

2           And what I mean by that is, the remaining claims in

3    this court, I think, can be fairly described as contract-based

4    claims and fraud-based claims.  The contract-based claims would

5    be the breach of contract and the breach of implied covenant of

6    good faith and fair dealing.  The fraud-based claims would be

7    negligent misrepresentation and the violation of the Unfair

8    Competition Law.

9           With regards to the contract-based claims, if the

10   matter were to go forward in California on that matter, we

11   could -- it would essentially resolve those claims and we would

12   only have to deal in this court with the fraud-based claims,

13   the negligent misrepresentation and the UCL claim.

14          What I mean by that, Your Honor, is that if Ocwen wins

15   on its summary judgment motion, then Ocwen -- I'm sorry, if Mr.

16   Pichardo wins and defeats the summary judgment motion, then

17   Ocwen will have to provide the remedy to him, because Ocwen is

18   currently servicing the mortgage --

19          THE COURT:  Well, if Pichardo -- are there cross

20   motions for summary judgment?

21          MR. PICHARDO:  Your Honor, this matter has been

22   originated by GMAC, the debtors.  The action on Ocwen is

23   limited from the time that Ocwen took over this loan.  So the

24   gentleman objecting to this issue do want to ward off the

25   negligent --

1          THE COURT:  Mr. Pichardo --

2          MR. PICHARDO:  -- issue in the --

3          THE COURT:  -- Mr. Pichardo?

4          MR. PICHARDO:  Yes.

5          THE COURT:  Let Mr. Wishnew finish and then I'll give

6   you a chance to argue.

7          My question, Mr. Wishnew, I mean, is if Ocwen made a

8   motion for summary judgment, and the motion's denied, it

9   doesn't determine the issues.  It just denies summary judgment.

10  Are there cross motions or just Ocwen's motion?

11         MR. WISHNEW:  My belief -- my understanding is it's

12  just Ocwen's motion.

13         THE COURT:  Okay.  So and even if it's granted and

14  there's an appeal -- I don't know whether -- what court is it

15  pending in?

16         MR. WISHNEW:  It is pending, Your Honor -- one

17  moment -- it's in the Superior Court of the State of

18  California, Orange County.

19         THE COURT:  Okay.  So --

20         MR. WISHNEW:  Before the Honorable Frederick Aguirre.

21         THE COURT:  Whatever the ruling of the California

22  Superior Court is on a summary judgment motion, it's not going

23  to be dispositive of what's here.  It'll be -- whether it's

24  immediately appealable or not, I don't know.  That's not for me

25  to decide.  But it isn't going to resolve anything before me.

1      But go ahead.

2          MR. WISHNEW:  Well, I guess our thinking was, Your

3  Honor, to the extent that there -- it would resolve -- to the

4  extent that Mr. Pichardo was to ultimately succeed with -- in

5  his litigation with Ocwen, and the August agreement is found to

6  be valid, then Ocwen, as current servicer, is the one to have

7  to honor, implement, and enforce the August agreement, and

8  thereby provides Mr. Pichardo with the remedy he's ultimately

9  looking for.

10         THE COURT:  He's seeking damages here.  And that's the

11 only remedy he can seek in this court, is a damages remedy.  If

12 he's entitled to damages, if he prevails and he establishes

13 damages, he'll get it -- he'll have an allowed claim.

14         I can't -- I'm not going to sit -- so if summary

15 judgment is granted in Ocwen's favor, and there's an appeal, it

16 could be a very considerable time before that appeal is

17 resolved.  If the motion for summary judgment is denied, my

18 understanding about the docket -- Superior Court docket in

19 Orange County is it could be years before the matter is

20 resolved.  I'm not waiting years.  We're moving forward here.

21         MR. WISHNEW:  Understood, Your Honor.

22         MR. PICHARDO:  May I, Your Honor?

23         THE COURT:  Let me see if Mr. Wishnew wants to add

24 anything else.

25         MR. PICHARDO:  Oh, okay.

RESIDENTIAL CAPITAL, LLC, ET AL.                    11

1        MR. WISHNEW:  Sure.

2        THE COURT:  And you're acknowledging that Mr.

3   Pichardo's negligent misrepresentation and California Business

4   Professions Code 17200 claim will remain, whatever happens in

5   the Orange County Superior Court.

6        MR. WISHNEW:  That's correct, Your Honor.

7        THE COURT:  Okay.

8        MR. WISHNEW:  And so we would push forward and try and

9   reengage with Mr. Pichardo on settlement.  And ultimately, if

10   that doesn't succeed, move forward towards an evidentiary

11   hearing and any related discovery.  Our thinking --

12        THE COURT:  We're not bifurcating the issues

13   respecting Mr. Pichardo's claim.

14        MR. WISHNEW:  Okay.

15        THE COURT:  Four causes of action survived the Trust's

16   objection to the claim.  Unless the matter is resolved by

17   settlement, it's my intention to move forward expeditiously

18   with any evidentiary hearing that's required, briefing, et

19   cetera, to resolve the claims.

20        If Mr. Pichardo prevails here and establishes damages,

21   he'll get an award.  If he doesn't, he won't.  But I'm not

22   going to proceed with the negligent misrepresentation and

23   California Business and Professions Code 17200 claims and leave

24   the other two aside for an uncertain future, and then me have

25   to revisit them.  So this is going to get done here in one

RESIDENTIAL CAPITAL, LLC, ET AL.                          12

1    setting.

2            MR. WISHNEW:  Okay.  And just so the record's clear,

3    and hopefully Mr. Pichardo understands this, I would like to

4    think that the Borrowers Trust was correct when we represented

5    to Mr. Pichardo that Your Honor's prior opinion and order did

6    not find --

7            THE COURT:  Well, I want to hear from Mr. Pichardo

8    before I make --

9            MR. WISHNEW:  Okay.

10            THE COURT:  -- any comments about that.

11            MR. WISHNEW:  Okay.

12            THE COURT:  Anything else you want to add, Mr.

13    Wishnew?

14            MR. WISHNEW:  That's it, Your Honor.

15            THE COURT:  Mr. Pichardo, it's your turn.  Go ahead.

16            MR. PICHARDO:  Your Honor, when contacting -- being

17    contacted by the Trust's attorney, the first thing they wanted

18    to say to me is, well, everything here was sustained.  I said,

19    no, wait a minute.  There were findings that you are negligent

20    for misconduct and several others.  And there are five points

21    that you were overruled on.

22            So the first issue I said is, are you representing

23    Ocwen?  They said, no.  Are you speaking for Ocwen?  No.  So I

24    said okay, then we could probably start negotiating based upon

25    the judge's overruling of the points that I presented and that

1  I -- that I was able to have from the Court.

2          And then there was a wrangling about, oh, no, we think

3  that all of this is disputed facts.  And I said no, there was a

4  number of issues which were requested from you to answer that

5  there were no disputes on.  And those issues, I presented to

6  them, and the problem -- this is where they said okay, we're

7  going to try to see what we can do.

8          For three -- for all this time, since this ruling was

9  made, I sent them even other evidence of -- of times I was

10  admitted at the hospital for -- the costs and everything.  And

11  I've been waiting, and no one responds.  So I said based on

12  their -- on their observation that probably

13  everything -- according to them everything is -- was sustained,

14  I said no, it wasn't.  And number two that there are issues

15  that were not disputed, and you requested a response from the

16  counsel on those issues.

17          And I said those issues were very clearly stated.

18  There was no dispute of negligent misrepresentation, and the

19  Trust has not denied the fact that it took action to alter my

20  rights under the contract agreement.

21          And also, I said the Trust asserted that -- that I

22  didn't make additional payments to ward off criminal liability.

23  And I pointed those out to them.  Probably, they didn't like

24  it.  But I said look, I cannot explain to you or go against the

25  ruling.  That is not -- not the issue why we're talking.  We're

1    talking to see if we can come to a settlement.  But we're not

2    going to question the judge's rulings.  They're very clear.

3           And this is what they were bringing to me.  And I said

4    no, this was -- there were some sustained, but the main issues

5    on this -- on this claim were overruled.  And there are things

6    that were not disputed.  So I addressed that with the -- with

7    the Trust.  And apparently -- they apparently did not -- didn't

8    have a clear understanding.

9           And I said there is an issue also about a contract

10   which, Your Honor, I've been dealing for eighty-eight months,

11   and forty-five of those months were with this debtor.  They put

12   me in this -- in this juncture.  This agreement was brought

13   up -- my agreement, our ResCap agreement was brought up in

14   according with agreement of both parties.  And everything was

15   placed in writing.  And then they tried to change this.  And

16   they're trying to address Ocwen.  And I said, but you said to

17   me that Ocwen is not part of this.  And since it's not, then I

18   have to address Ocwen here.

19          But that, as you mentioned, Your Honor, it's

20   another -- it's something else.  Because Ocwen is

21   saying -- they just sent me a threatening letter saying even if

22   you go by Judge's -- Judge Glenn's ruling, we -- you are to

23   assume the responsibility.  In other words, they're telling me

24   to face the music with them, because your ruling will not

25   be -- will not be valid.

RESIDENTIAL CAPITAL, LLC, ET AL.                    15

1        And I said wait a minute.  Then I have to get this

2   valid agreement enforced before anything happens.  And that's

3   why I requested the order, Your Honor.

4        THE COURT:  All right, thanks, Mr. Pichardo.

5        Let me see.  I don't give advisory opinions, but I do

6   want to make a couple of points.  When the issues came before

7   me on the Trust's objection to your claims, and I entered a

8   written opinion resolving the claims, the objection -- the

9   Trust's objection to certain of the claims was sustained, and

10  as to the others, as to four of them, they were overruled.

11       But that doesn't -- I do want to be clear about this.

12  In ruling on a claim objection, I didn't make any factual

13  findings.  So if the matter goes forward with respect to the

14  four remaining claims:  breach of contract, breach of implied

15  covenant, negligent misrepresentation, California Business and

16  Professions Code 17200, you're going to have the burden of

17  proof at trial on all four -- of proving the facts to support

18  your allegations as to all four the claims.

19       An opinion sustaining in part and overruling in part

20  claim objections does not include findings of fact.  It

21  essentially is the equivalent of a motion to dismiss, if you

22  were in the state superior court.  There's apparently a summary

23  judgment pending.  That does involve factual findings.

24       MR. PICHARDO:  Um-hum.

25       THE COURT:  But my ruling so far in this case doesn't

1    involve any factual findings.  If this matter --

2            MR. PICHARDO:  I understand, Your Honor.

3            THE COURT:  -- if this matter -- let me just finish.

4    If this matter proceeds to trial, which I'm certainly fully

5    prepared to have it do, it'll proceed to trial on all four of

6    your claims.  You'll have the burden of proving the facts to

7    support each of those claims.  The Trust will have an

8    opportunity to rebut the facts, assert any defenses it believes

9    it properly can.  They'll have to come in with proof.

10           So the next stage here, if it gets to that, is an

11   evidentiary hearing, where you'll have to prove facts; they'll

12   have to prove facts.  Okay?

13           MR. PICHARDO:  Right.

14           THE COURT:  But my ruling so far -- don't

15   misunderstand -- is not -- I didn't find that you had

16   established each of those remaining claims or any of those

17   remaining claims.  I found that you had properly stated a

18   claim.  In applying the standards for claim objections, I found

19   that the Trust had not satisfactorily rebutted at least one

20   essential element of each of those four state law claims.

21           So what you and -- I don't get in -- before I have to

22   be the trier of fact, Mr. Pichardo, I don't get involved in

23   settlement negotiations, because if it goes to trial --

24           MR. PICHARDO:  I understand; I understand.

25           THE COURT:  -- I have to make findings for

1    either -- hear the evidence and make factual findings.

2             MR. PICHARDO:  Yes.

3             THE COURT:  I'm certainly prepared to do that if I

4    have to.  Hopefully you're aware, most matters end in

5    settlement.  And I guess what I've usually found from when I

6    practiced law and the almost nine years on the bench, the best

7    settlements are ones that neither side is a hundred percent

8    happy.

9             MR. PICHARDO:  Um-hum.

10            THE COURT:  But I don't force anybody to settle.

11            MR. PICHARDO:  Right, right.

12            THE COURT:  I can't force the Trust to settle with

13   you, and I can't force you to settle with the Trust.

14            MR. PICHARDO:  I understand, Your Honor.

15            THE COURT:  All I can say is that you and the

16   Trust -- you know, you ought to try your best to settle it.  If

17   you can't, well, then let's get the case ready for trial.  I

18   try to move these things along as quickly as possible.

19            MR. PICHARDO:  Right, right.

20            THE COURT:  That's what we need to do.

21            MR. PICHARDO:  I have a question, Your Honor.

22            THE COURT:  Yeah, go ahead.

23            MR. PICHARDO:  On page 23, your ruling says that the

24   validity of the August agreement, the Court concludes that the

25   August agreement satisfies the requirements of a valid binding

1  contract between GMAC and Pichardo.  I was just simply

2  addressing that with the Trust, because that is a fact.  And

3  that the Trust is barred from extrinsic evidence rule, which

4  you also ruled upon because there are no contract formation and

5  there is fraud issues of the Statute of Frauds which applies

6  here.

7          So you have concluded that the August agreement,

8  according to this decision at 23, satisfied the agreement to be

9  a valid contract between GMAC and Pichardo.

10          THE COURT:  But that doesn't --

11          MR. PICHARDO:  I find some other --

12          THE COURT:  -- Mr. Pichardo, my ruling doesn't

13  preclude the Trust from asserting whatever defenses it wishes

14  to assert.

15          MR. PICHARDO:  I understand that.

16          THE COURT:  I'm not prejudging that.  Look, you came

17  out on the right side -- from your standpoint, you came out on

18  the right side of that issue.  You argued you had a valid and

19  binding contract; they argued you didn't.  Looking at the four

20  corners of the agreement, I concluded you'd properly stated a

21  claim for breach of that contract.  Okay?

22          And if we go to trial, you'll put your evidence in and

23  they'll put their evidence in, and I'll have to ultimately

24  decide the issues.

25          So I think what you and Mr. Wishnew need to do is you

RESIDENTIAL CAPITAL, LLC, ET AL.                    19

1  ought to talk about what, if any, discovery each side wishes to

2  take, how long it's going to take to do that, when you

3  believe -- when each side believes this matter will be ready

4  for trial.  I try to set trials as quickly as possible, once a

5  case is ready for trial.

6          It's unquestionably difficult for parties without

7  lawyers to proceed, because I require -- but the law permits,

8  and that's fine; I have no problem about it.  But there'll have

9  to be a pre-trial conference order.  You'll have to list all

10  your exhibits, et cetera.  But --

11          MR. PICHARDO:  Right.

12          THE COURT:  -- so the next step, you and Mr. Wishnew

13  ought to have a further discussion.  If you want -- if the two

14  of you can reach a settlement, that's fine.  If you can't,

15  let's get this case ready for trial, and we'll do it.  You'll

16  get your day in court.

17          MR. PICHARDO:  Right.  And that's what I've been

18  waiting on.  But there's nothing and no response from them on

19  that, Your Honor.  That's what I've been waiting since you

20  issued this ruling and since our last conversation which we

21  came to it.

22          So for this month-and-a-half, I've been waiting.  And

23  I even sent e-mails sending a response, so can you require a

24  response --

25          THE COURT:  I don't know what you're waiting --

1           MR. PICHARDO:  -- from the counsel, then?

2           THE COURT:  Look, here's -- from where I'm -- from my

3  perspective, I encourage you to continue settlement

4  discussions.

5           MR. PICHARDO:  Right; right.

6           THE COURT:  But -- but -- the big "but" is, you've got

7  to move forward to get ready for trial.

8           MR. PICHARDO:  Right,; right.

9           THE COURT:  Doing -- they're not mutually

10 exclusive -- let me make clear.  And hopefully you'll reach a

11 settlement that you're satisfied with.  If not, you'll get

12 your -- the trial, okay?

13          MR. PICHARDO:  Right.  Great.

14          THE COURT:  That's what's going to happen.

15          MR. PICHARDO:  I understand, Your Honor.

16          THE COURT:  All right.  So talk to Mr. Wishnew.  Mr.

17 Wishnew, see if we can get a scheduling order --

18          MR. WISHNEW:  Yep.

19          THE COURT:  -- done reasonably quickly.

20          MR. WISHNEW:  Yes, Your Honor.

21          THE COURT:  Okay?

22          MR. WISHNEW:  Yep.

23          THE COURT:  I would like to get this matter, if

24 necessary, to trial.  Okay?  And I'm not going to wait to see

25 what happens in Orange County --

RESIDENTIAL CAPITAL, LLC, ET AL.                    21

1           MR. WISHNEW:  Understood.

2           THE COURT:  -- because it's not going to be

3    dispositive of the issues here.  Okay?

4           Thanks, Mr. Pichardo.

5           MR. PICHARDO:  Thank you, Your Honor.

6           THE COURT:  Okay.  So you can remain on the phone or

7    not.  It's up to you.  Okay?

8           MR. PICHARDO:  No, I'm going to wait until the counsel

9    will contact me either by e-mail or by phone.

10          THE COURT:  Okay.

11          MR. PICHARDO:  I did wait, like I said, six weeks of

12   waiting.  But I guess I'm going to wait and see if they --

13          THE COURT:  He'll be --

14          MR. EMIABATA:  -- when they call me.

15          THE COURT:  Mr. Wishnew will be in touch with you

16   promptly.

17          MR. PICHARDO:  Thank you.  Thank you.

18          THE COURT:  Correct, Mr. Wishnew?

19          MR. WISHNEW:  Yes, Your Honor.

20          THE COURT:  Okay, thanks very much, Mr. Pichardo.

21          MR. PICHARDO:  Thank you.  Bye-bye.

22          THE COURT:  All right, the next matter, Mr. Wishnew.

23          MR. WISHNEW:  Thank you, Your Honor.  The next and

24   last matter is item under subheading -- I'm sorry -- under

25   section 2, claims objections, the ResCap Borrowers Claims Trust

RESIDENTIAL CAPITAL, LLC, ET AL.                    22

1    eighty-second omnibus objection to claims.  The only claim

2    going forward today relates to the claims of Mr. and Mrs.

3    Emiabata, claim numbers 3910 and 4085.

4              THE COURT:  All right.  Mr. Emiabata, you're on the

5    phone?

6              MR. EMIABATA:  Yes, Your Honor.

7              THE COURT:  Okay.  Go ahead, Mr. Wishnew.

8              MR. WISHNEW:  Thank you, Your Honor.

9              Your Honor, the Borrower Claims Trust originally filed

10   the objection in January, and there was an order entered

11   expunging the Emiabatas' claims.  That was at docket number

12   8402.  The Emiabatas filed a motion for reconsideration at

13   docket number 8545 stating they did not receive a copy of our

14   objection.  The Borrower Trust agreed to withdraw the order and

15   reserve the objection on the Emiabatas.  The Emiabatas filed a

16   response on June 3rd, 2015 at docket number 8726.

17             On June 26th of this year, the Borrower Trust filed a

18   reply and supplemental objection to address one issue not

19   raised in the original objection and permitted the Emiabatas to

20   respond to that additional issue.

21             The Emiabatas responded on August 20th, 2015.  That

22   was at docket number 9049.  And the Borrower Trust filed a

23   brief reply last week at docket number 9069.

24             Your Honor, through the eighty-second omnibus

25   objection, the Borrower Trust seeks to expunge these two proofs

1   of claim because there is no evidence of specific wrongdoing by

2   the debtors.  The Borrower Trust thoroughly examined the

3   debtors' books and records in an effort to validate the

4   accuracy of the allegations made in the underlying complaint,

5   and determined that there's no liability due and owing.

6           In support of the objection and the reply and

7   supplemental objection, the Borrower Trust submitted a

8   supplemental declaration by David Cunningham, director of

9   regulatory and compliance for the ResCap Liquidating Trust.

10  Mr. Cunningham is on the phone today and available to answer

11  any questions the Court might have for him.

12          Your Honor, for the reasons set forth in the objection

13  and the reply, the Emiabatas have not demonstrated any

14  liability of the debtors related to the origination or

15  servicing of their loan that would give rise to a claim.  Their

16  origination claim fails because the debtors were not involved

17  in the origination of this loan.  The servicing claims also

18  fail because the allegations of misapplied payments, improper

19  denial of loan modifications, and improper escrow charges, are

20  not supported by any evidence or specific allegations to

21  demonstrate any wrongdoing.

22          Accordingly, it is the Borrower Trust's position the

23  Emiabatas did not sufficiently meet their burden by

24  demonstrating by a preponderance of the evidence, a valid claim

25  on these bases against the debtors.

RESIDENTIAL CAPITAL, LLC, ET AL.                              24

1        As noted in the reply, in addition to the previously

2   mentioned reasons, many of the allegations are also barred by

3   statute of limitations, specifically a four-year statute of

4   limitations for fraud and breach of contract, which would bar a

5   claim for any alleged wrongdoing that occurred prior to October

6   25th, 2007, as the complaint that was filed against GMAC

7   Mortgage was filed on October 25th, 2011.

8        The objection -- the original objection did not

9   include the statute of limitations argument, so this was made

10  as part of the supplemental objection, and the Emiabatas were

11  given a chance to respond.  The Emiabatas have not put forth

12  any reason that the statute of limitations should not apply,

13  and therefore have failed to demonstrate that they can recover

14  for any alleged wrongdoing that preceded October 25th, 2007.

15       In short, Your Honor, for the reasons set forth in the

16  reply and supplemental objection, the Borrower Trust would ask

17  that the Court expunge these two claims.

18       THE COURT:  Let me ask you this, Mr. Wishnew.  The

19  Emiabatas allege that the trust misapplied payments they made.

20       MR. WISHNEW:  Correct, Your Honor.

21       THE COURT:  And am I correct that the Trust concedes

22  that at least one payment that the Emiabatas made was

23  misapplied?

24       MR. WISHNEW:  One moment, Your Honor.

25       THE COURT:  And my question really is, when was that

1    payment made?

2            MR. WISHNEW:  Sure.

3        (Pause)

4            THE COURT:  If you look at the proposed order you've

5    submitted --

6            MR. WISHNEW:  Yes, Your Honor.

7            THE COURT:  -- at pages 18 and 19?

8            MR. WISHNEW:  Um-hum.

9            MR. EMIABATA:  Judge -- Your Honor, can I talk here?

10           THE COURT:  No, just wait, Mr. Emiabata.  I'll give

11   you a chance to make your entire argument.

12       (Pause)

13           THE COURT:  If you look, Mr. Wishnew --

14           MR. WISHNEW:  Yes, Your Honor.

15           THE COURT:  -- in your binder, behind Exhibit 1 is the

16   proposed order granting the Trust's omnibus objection.  And if

17   you look at page 23 of 46 --

18           MR. EMIABATA:  Excuse, Your Honor, I'm really -- the

19   reason I'm raising this issue is because --

20           THE COURT:  Mr. Emiabata, please do not interrupt.  I

21   will give you chance to make your argument.

22           MR. EMIABATA:  Because I'm concerned that the -- I'm

23   concerned that the -- we have the evidence for you; we are

24   looking at the evidence in this court.  He wasn't going to have

25   it.  That is why --

1              THE COURT:  Mr. Emiabata -- Mr. Emiabata.

2              MR. EMIABATA:  Yes, Your Honor?

3              THE COURT:  If you interrupt I will have you cut off.

4              MR. EMIABATA:  You can (indiscernible).

5              THE COURT:  Be quiet until you're called on.  It is

6    not your turn to speak.

7              MR. EMIABATA:  I'm aware -- okay, Your Honor.

8              THE COURT:  Mr. Wishnew --

9              MR. EMIABATA:  (Indiscernible) all this paper.

10             THE COURT:  Mr. Emiabata --

11             MR. EMIABATA:  Yes, Your Honor?

12             THE COURT:  -- this is the last warning.

13             Mr. Wishnew, page 23 of 46, the last paragraph on the

14   page, the last sentence on that page:  "Debtors confirmed all

15   payments listed except one had been received.  Debtors also

16   confirmed that the payments received were correctly applied to

17   the account.  Note the payments received."  I'm not sure that

18   that indicates a misapplication.  Just a second, Mr. Wishnew.

19             MR. WISHNEW:  Sure.

20             THE COURT:  I may have misread that paragraph.

21             MR. WISHNEW:  Okay, Your Honor.  Because I do know

22   that as part of the supplemental declaration --

23             THE COURT:  Yes.

24             MR. WISHNEW:  -- of Mr. Cunningham, we did put in

25   Exhibit M which talks about the reconciliation of payments

 1   between June 21st, 2005 and September 15th, 2007.

 2            THE COURT:  Okay.

 3            MR. WISHNEW:  And that is intended to reconcile the

 4   application of payments reflected in our books and records

 5   against the list of payments that the allegation of

 6   misapplication is made.  And that list of payments is found at

 7   Exhibit P, as part of the correspondence that the claimants put

 8   in.  Specifically, it's at page -- the claimants' list, the

 9   evidence of payment, is at Exhibit P as in Peter --

10            THE COURT:  Yes.

11            MR. WISHNEW:  -- page 15 of 16.

12            THE COURT:  Let me get there.

13            MR. WISHNEW:  At docket number 8810.

14            THE COURT:  Okay, yes, I'm there.

15            MR. WISHNEW:  Okay.  So that list of payments is then

16   reconciled in Exhibit M which the Borrower Trust prepared and

17   talks about how the payments were applied to the earliest past-

18   due payment.  And so how -- in essence, because the Chapter 13

19   plan was not completed --

20            THE COURT:  Right.

21            MR. WISHNEW:  -- the account was not brought current.

22   There were certainly payments made and there were payments

23   applied.  But because it was not fully performed under, it was

24   not brought current as of 2007.

25            THE COURT:  Okay.  And I think I may have misread --

RESIDENTIAL CAPITAL, LLC, ET AL.                              28

1              MR. WISHNEW:  Okay.

2              THE COURT:  -- the exhibits, because now that I look

3     more carefully, it seems to me that there is no acknowledgement

4     about one payment being misapplied.  In fact, you reconciled

5     the payments that were made.

6              MR. WISHNEW:  Exactly, Your Honor.

7              THE COURT:  Okay.

8              MR. WISHNEW:  Yes.

9              THE COURT:  Thank you very much.

10             MR. WISHNEW:  No problem.

11             THE COURT:  All right, Mr. Emiabata, it's your turn to

12    argue.

13             MR. EMIABATA:  Your Honor, my wife is part of

14    this -- part of this issue, but she went to the hospital,

15    because she had the eye problem, and yesterday she went to

16    specialist.  They were looking at her eye; they think she might

17    (indiscernible), I don't know.  But she went back tonight

18    because she was having pain.  So I'm the only one here to

19    answer these questions, because she's still on the -- in the

20    hospital.  Then -- (indiscernible) diagnosed her eye problem.

21    She went yesterday -- she went today with both of the problem

22    in the eye, and then she -- yesterday night, and she

23    went -- she went up to the hospital.

24             So she's -- she's there but anyway, and she's up, but

25    I don't see how we can go on, because yesterday she went to the

RESIDENTIAL CAPITAL, LLC, ET AL.                    29

1   specialist.  They want to follow that.  She had involved with

2   her eye.  (Indiscernible).  They put something on her -- they

3   put something on her eye.  And actually it's (indiscernible)

4   both of her eyes.

5           So she -- I just want somebody to take up to the

6   hospital in case we're going home.  I don't know how this case

7   will continue when she's not here.

8           THE COURT:  Mr. Emiabata, do you wish to address the

9   arguments that the Trust has made for why your claims should be

10  expunged?  If so, please now is the time to do so.

11          MR. EMIABATA:  Judge, okay, but my whole case is the

12  argument the Trust made, yeah, that they -- they claim there

13  were no wrongdoing.  The reason they claim they were no

14  wrongdoing is that they were (indiscernible).  There was a lot

15  of wrongdoing because we instituted a suit against them in in

16  the district court; we told the bankruptcy with

17  (indiscernible).  And issue was raised in the bankruptcy -- the

18  district court, it showed bad faith, (indiscernible),

19  wrongdoing on the payments.

20          So they didn't do a tracking.  When -- what the Court

21  should be aware, the district court called the case on the

22  (indiscernible) that this court will resolve all those legal

23  issue and the material facts; we said that in the district

24  court.

25          So when they decide to go with this omnibus claim,

1  they said there was issue of wrongdoing.  We're aware there was

2  issue of payment, and we immediately (indiscernible) record, I

3  would be able to point out if this issue were truth.  And I'd

4  be able to figure out all the documents we have if this awarded

5  by the  (indiscernible) is true.  But nobody said they need

6  discovery from them, and I've got (indiscernible).

7          Even this court now, you can tell what they're doing;

8  this court (indiscernible) difficulties to reconcile what about

9  the payment they said that they applied to this payment we made

10 when we were in bankruptcy Chapter 13.  There were a lot of

11 issues that rise.  Payment, that issue, we did tell this Court

12 that (indiscernible) is barred.  Yes, he's been barred.  We

13 need evidence to see whether this is true or not true.  And

14 that is why we have this call:  we needed discovery to find out

15 whether this is true or not true so that we can reconcile what

16 document we have.

17          So that issue is not settled (indiscernible) this

18 court.  We settle the issue with how we raised within district

19 court on (indiscernible) tracking, and (indiscernible) we went

20 on Chapter 13 with this mortgage.  We've not given us adequate

21 (indiscernible).  So I don't know this (indiscernible) have we

22 given discovery and see the paper that's (indiscernible)

23 according to them.

24          They claim here they have all this evidence, they told

25 they'd call me with telephone, (indiscernible) say it was by

 1   fax.  They know I give this card; which fax they used, which
 2   number they used, or where they made the call to.  And the most
 3   issue we are -- we are having is whereby we are appealing the
 4   decision of that -- of the (indiscernible) hearing.  We
 5   appealed the court.  We asked this Court to -- to
 6   (indiscernible) issue we have and that is omnibus.

 7           One of things that said, there was an issue -- there
 8   was an order you -- you -- order this Court made.  According to
 9   the order, you said it's (indiscernible) amended to be
10   (indiscernible) argue or say that they -- that we were not sell
11   the -- the it was sent to the wrong address.

12           We do not (indiscernible).  We were not the one that
13   asked the court, Judge, to send it to the wrong address.  It
14   was the -- the (indiscernible) argument after you cleared that
15   and that they sent this paperwork to the wrong address.  But
16   the order you remark that we are the one that told the Court
17   that we -- the document was sent to the wrong address.  And
18   that document, we (indiscernible) this to prepare this issue.

19           We thought we go on with this omnibus which you denied
20   us, and hence we appeal that decision to the district court as
21   appeal to them, it shouldn't have the file with you.

22           So I know we're pretty much with you.  I think
23   that being (indiscernible), we then ask the Court to look at
24   docket 102 -- 9102.  We put that -- we put it in yesterday also
25   for you to say actually, or to resolve with clarity of this

1  issue from the district court.

2          So we don't know why the case go on today

3  (indiscernible) the court, with the judge.  My wife -- my wife

4  if (indiscernible) had been sick.  I did tell you that's

5  (indiscernible); that is why I decide to call in to -- to read

6  my objection because there's two issue -- there's two

7  areas -- motion presented in this court.  One motion of

8  (indiscernible) rejection and the second one of the stay of

9  action which is docketed 9102, and the other one is at 9103.

10 That is -- is the order of the removal of -- for you to remove

11 the automatic stay from that, so that we can take our case back

12 to the district court.

13          Because everything equal, the issue here is very

14 simple.  We have a case against these people in the district

15 court to -- the case was laying there for many years.  They

16 never do (indiscernible).  They wait on bankruptcy.  So the

17 district court of (indiscernible) did schedule the result in

18 this bankruptcy court.

19          Then we wonder how can this court resolve this issue

20 when the -- when the material -- the legal issue and material

21 facts were not resolved in the district court, and in this

22 court they won't be -- they do not dismiss the case; they

23 resolve it.  The (indiscernible) this court will be -- resolve

24 the issue.

25          We are wondering how this Court will resolve

1   this -- resolve the facts about (indiscernible).  These are

2   contracts for (indiscernible) who are tracking which we related

3   in the district court.  But the Court here (indiscernible)

4   issue was after the reason appealed to the district court.

5   What about issue of advantage?  What about issue of

6   (indiscernible) tracking?  What about issue about rule -- the

7   original rule?  What about the live issues?

8            So there are a lot of issue, so we are wonder

9   why -- that's why we ask that this Court should report

10  (indiscernible), that this Court should (indiscernible) the

11  legality of this case.  So we are wondering why the Court go

12  ahead and want to hear this omnibus today.

13           And I said  that my wife's not here and this is part

14  of the -- part of the claim succeed.  And we put a lot already

15  into our considered position of that it was appealed, and it's

16  docketed in your court and if Your Honor resolve those issues

17  and want to go ahead on them, hear this case.  And if we insist

18  on that we needed discovery from them before -- before we can

19  (indiscernible) do our full case.

20           In this case, we don't have no discovery.  They are

21  claiming they (indiscernible).  And there's no evidence

22  to -- to extract the authenticity of those -- every redaction.

23  They are (indiscernible) you can see that the court is there

24  (indiscernible) to fight even, or to try.

25           We are claiming that they do wrongdoing, yet they

1   claim they don't do wrongdoing.  We ask for documents to prove

2   that we are doing the wrongdoing.  (Indiscernible) tell the

3   court I'm just submit everything.  Okay, we don't do

4   wrongdoing.  Well, no, they -- that letter say they didn't do

5   wrongdoing, yes.  But we want evidence from them to show -- to

6   prove it, because I know they did the wrongdoing in this with

7   the (indiscernible) payment.

8          Are we talking about privilege?  We pay them -- we're

9   once (indiscernible) see the -- receive from them, they

10  received the (indiscernible) petition.  How did -- how did it

11  apply the whole (indiscernible) went bankrupt in about two

12  years.  (Indiscernible).  It doesn't make no sense.  And if you

13  look at the -- the -- what you call it -- the evidence

14  (indiscernible) control it.  But one side it said they assume

15  the call was with telephone, when they didn't give the court

16  (indiscernible) that anybody called.  They didn't give the

17  court (indiscernible).  Everything was just they're making

18  talk.  And that's why we want evidence by this Court.

19         We then -- we then we will be able to put on a full

20  defense in this -- in this hearing.  Now we'll have that fight.

21  We don't have nothing to defend it with.  But we want this

22  Court -- we want evidence for us to prove that they -- the

23  evidence of them that they did us wrongdoing.  They cannot just

24  say they didn't do us wrongdoing.  We want a paper from them.

25  When they give us -- when they give you the evidence, when they

1    give us what we asked for, then we can -- we can work

2    out -- put on a true defense.  We are (indiscernible).  We are

3    Americans.

4              (Indiscernible) we are the ones that sued them.  They

5    didn't sue us.  And the case was (indiscernible).  It was only

6    closed because the court believed that this Court would be able

7    to resolve it.  But then my question I make to this Court:  how

8    will this Court resolve this issue of material fact -- issues

9    of legal and material facts which are not resolved in the

10   district court?

11             And that is what I answer (sic) this Court -- that is

12   what I ask this Court, shall I (indiscernible) by the case is

13   stayed until after this issue is resolved.  Because

14   where -- (indiscernible) that's to recover all the -- our

15   money.

16             One hand they say they own it; one hand they say they

17   are not originator of the loan.  We have evidence that says

18   they did.  We (indiscernible) evidence.  That (indiscernible)

19   where we did (indiscernible) because this issue is not as

20   prepared in the district court.  And it's not (indiscernible)

21   closed.

22             So again, Your Honor, how will we resolve the issue

23   that was not discussed in the district court, wasn't

24   (indiscernible) on the assumption that this Court would resolve

25   it without all the discovery?  How do we -- how can we resolve

RESIDENTIAL CAPITAL, LLC, ET AL.                    36

1    those issues, Your Honor?

2            THE COURT:  Anything else you wish to argue, Mr.

3    Emiabata?

4            MR. EMIABATA:  No, Your Honor, not really.

5            THE COURT:  All right.  The Trust's objection to

6    claims 3910 and 4085 is sustained, and the claims are expunged.

7    And order will be entered forthwith.  An opinion will be issued

8    explaining -- further explaining the basis for the Court's

9    ruling.

10           Does that conclude the calendar for today?

11           MR. WISHNEW:  It does, Your Honor.

12           THE COURT:  All right, we're adjourned.

13           MR. WISHNEW:  Thank you very much for your time.  Have

14   a good Labor Day.

15       (Whereupon these proceedings were concluded at 10:51 AM)

16

17

18

19

20

21

22

23

24

25

1

2                                    I N D E X

3

4                                    RULINGS

5                                                       PAGE    LINE

6   The Trust's objection to claims 3910 and 4085 36        5

7   is sustained, and the claims are expunged

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                         C E R T I F I C A T I O N

3

4    I, Penina Wolicki, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9

10

11    _____

12    PENINA WOLICKI

13    AAERT Certified Electronic Transcriber CET**D-569

14

15    eScribers

16    700 West 192nd Street, Suite #607

17    New York, NY 10040

18

19    Date:  September 4, 2015

20

21

22

23

24

25