## <u>Exhibit 1</u>

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |

---------------------------------------------------------------

### ORDER GRANTING RESCAP BORROWER CLAIMS TRUST'S EIGHTY-NINTH OMNIBUS OBJECTION TO CLAIMS ((I) NO LIABILITY BORROWER CLAIMS, AND (II) REDUCE AND ALLOW BORROWER CLAIMS)

Upon the eighty-ninth omnibus objection to claims (the "Objection")[1] of the

ResCap Borrower Claims Trust (the "Trust"), established pursuant to the terms of the confirmed

Plan filed in the above-referenced Chapter 11 cases, as successor in interest to the Debtors with

regard to Borrower Claim matters, seeking entry of an order, pursuant to section 502(b) of title

11 of the United States Code (the "Bankruptcy Code"), Rule 3007(d) of the Federal Rules of

Bankruptcy Procedure, and this Court's order approving procedures for the filing of omnibus

objections to proofs of claim [Docket No. 3294] (the "Procedures Order"), disallowing and

expunging the No Liability Borrower Claims and reducing the Reduce and Allow Borrower

Claims, all as more fully described in the Objection; and it appearing that this Court has

jurisdiction to consider the Objection pursuant to 28 U.S.C. §§ 157 and 1334; and consideration

of the Objection and the relief requested therein being a core proceeding pursuant to 28 U.S.C. §

157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

due and proper notice of the Objection having been provided, and it appearing that no other or

further notice need be provided; upon consideration of the Objection and the *Declaration of*

---

[1]    Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Objection.

*Kathy Priore in Support of the ResCap Borrower Claims Trust's Eighty-Ninth Omnibus Objection to Claims ((I) No Liability Borrower Claims and (II) Reduce and Allow Borrower Claims)* annexed thereto as Exhibit 2, and the *Declaration of Norman S. Rosenbaum in Support of the ResCap Borrower Claims Trust's Eighty-Ninth Omnibus Objection to Claims ((I) No Liability Borrower Claims and (II) Reduce and Allow Borrower Claims)*, annexed thereto as Exhibit 3; and the Court having found and determined that the relief sought in the Objection is in the best interests of the Trust, the Trust's constituents, the Debtors, and other parties in interest and that the legal and factual bases set forth in the Objection establish just cause for the relief granted herein; and the Court having determined that the Objection complies with the Borrower Claim Procedures set forth in the Procedures Order; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Objection is granted to the extent provided herein; and it is further

ORDERED that pursuant to section 502(b) of the Bankruptcy Code, the claims listed on Exhibit A annexed hereto (collectively, the "No Liability Borrower Claims") are disallowed and expunged with prejudice; and it is further

ORDERED that pursuant to section 502(b) of the Bankruptcy Code, the claims listed on Exhibit B annexed hereto (the "Reduce and Allow Borrower Claims") are hereby reduced and allowed as provided for on Exhibit B; and it is further

ORDERED that Kurtzman Carson Consultants LLC, the Debtors' claims and noticing agent, is directed to disallow and expunge the No Liability Borrower Claims identified on the schedule attached as Exhibit A hereto so that such claims are no longer maintained on the Claims Register; and it is further

2

ORDERED that Kurtzman Carson Consultants LLC, the Debtors' claims and noticing agent, is directed to modify the Reduce and Allow Borrower Claims as set forth on the schedule attached as <u>Exhibit B</u> hereto so that such claims are reflected on the Claims Register in a manner consistent with this Order; and it is further

ORDERED that the Trust is authorized and empowered to take all actions as may be necessary and appropriate to implement the terms of this Order; and it is further

ORDERED that notice of the Objection, as provided therein, shall be deemed good and sufficient notice of such objection, and the requirements of Bankruptcy Rule 3007(a), the Case Management Procedures entered on May 23, 2012 [Docket No. 141], the Procedures Order, and the Local Bankruptcy Rules of this Court are satisfied by such notice; and it is further

ORDERED that this Order has no res judicata, estoppel, or other effect on the validity, allowance, or disallowance of any claim not listed on <u>Exhibit A</u> or <u>Exhibit B</u> annexed to this Order, and the Trust's and any party in interest's right to object on any basis are expressly reserved with respect to any such claim not listed on <u>Exhibit A</u> or <u>Exhibit B</u> annexed hereto; and it is further

ORDERED that this Order shall be a final order with respect to each of the No Liability Borrower Claims identified on <u>Exhibit A</u> and Reduce and Allow Borrower Claims identified on <u>Exhibit B</u> annexed hereto, as if each such Claim had been individually objected to; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

ny-1203740

Dated: _____, 2015
        New York, New York


_____

THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

ny-1203740

## Exhibit A

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| 1516 and 1517 | Jovany Munoz<br><br>585 East 16th Street Apt 6D, Brooklyn NY 11226<br><br>$70,000<br>General Unsecured<br><br>Homecomings Financial, LLC and GMACM Mortgage, LLC | General Servicing Issues | Equifirst Mortgage Corporation originated the loan on June 30, 2006. Debtor Residential Funding Company purchased the loan from Equifirst and transferred its interest when the loan was securitized on or about August 1, 2006, and US Bank, NA was appointed as trustee. Debtor Homecomings Financial serviced the loan from August 11, 2006 until servicing transferred to Debtor GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage LLC serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>In a letter attached to the proof of claim, Claimant asserts Debtors acted with "intent to defraud" when Debtors purportedly mishandled Claimant's short sale requests from 2007 to 2010 and forced Claimant to sell his property at a loss in 2010.  Claimant's damages of $70,000 purportedly represent the equity decline from 2007 to the date Claimant's property was sold in 2010, plus unspecified "penalties" and "damaged credit."<br><br>Debtors have no liability because Claimant has not proffered any evidence to substantiate his assertion that Debtors forced Claimant to sell his property in 2010. On the contrary, Debtors' records show that Claimant and Claimant's agents actively pursued and requested approval from the Debtors for the 2010 short sale.<br><br>Debtors have no liability for any of Claimant's assertions involving the purported mishandling of Claimant's short sale requests because in every instance, Debtors | 8 |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | acted appropriately and within Debtors' standard policies and procedures and the applicable investor guidelines. Short sales were not able to move forward because Claimant's title on the property was not clear. Debtors repeatedly offered a secondary option to help clear title, which Claimant did not accept.<br><br>Debtors' records show the following chronology of events:<br><br>On April 8, 2008, Claimant spoke with Debtors via phone and stated he would like to sell his home as soon as possible through a short sale. Debtors advised Claimant to contact Debtors when he has an offer so that offer can be reviewed. Claimant spoke with Debtors via phone on April 21, 2008, at which time Claimant inquired what amount would be acceptable for a short sale offer to be approved. Debtors advised him that all offers will be reviewed to determine if they can be accepted.<br><br>Debtors received a short sale package from Claimant on May 1, 2008; however, the package did not contain an offer to purchase the property. Debtors contacted Claimant's authorized third party, Spiro, via phone on May 8, 2008 to advise that the short sale offer of $90,000 had been received that day and would be reviewed once Debtors obtained a BPO estimating the value of the property. Debtors contacted Claimant's authorized third party, Spiro, via phone on May 13, 2008. Debtors advised that, pursuant to Debtors' business practices, an offer of | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | $105,000 was needed because the BPO received on May 9, 2008 showed a property value of $105,000.<br><br>Debtors spoke with Claimant's authorized third party, Spiro, via phone on May 15, 2008. Spiro advised that the potential buyers had walked away, but that Claimant has two other potential offers for the property. Debtors advised Claimant that Debtors will need the short sale offer, HUD-1, and buyer's pre-approval in order to consider a short sale. Debtors received a new package on May 27, 2008 with an offer of $102,000. In accordance with the investor's guidelines, Debtors submitted the request for short sale approval to the investor, which provided for net proceeds to the investor of $91,062.78 after commissions and fees. The investor approved the short sale on May 28, 2008 with an estimated closing date set for June 18, 2008. Claimant spoke with Debtors via phone on June 12, 2008, at which time, Claimant stated there is a utility lien against the property. Debtors advised Claimant to contact the utility company to see if a payment arrangement can be made. Claimant spoke with Debtors via phone on June 30, 2008. Claimant stated the amount owed for utility lien is $7,500. Debtors suggested that Claimant should seek a higher offer to sell property in order to satisfy the lien.<br><br>Debtors spoke with Claimant's authorized third party, Spiro, via phone on July 1, 2008. Spiro stated he wanted to negotiate the utility lien on the property. Debtors advised that they would pay a maximum of $1,500.  Debtors advised Spiro to try | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | to get approval from the utility lienholder to accept $1,500 in satisfaction of the lien.<br><br>Claimant spoke with Debtors via phone on July 3, 2008, at which time Claimant stated the lien is actually a tax lien, not a utility lien. Debtors advised Claimant to fax a copy of title showing the liens. Claimant spoke with Debtors via phone on July 10, 2008, at which time Claimant stated the city will not negotiate the amount due in tax liens against the property. Debtors advised Claimant to fax in the bill. Debtors received a copy of school real estate tax liens on July 11, 2008. Claimant spoke with Debtors via phone on July 14, 2008. Debtors advised Claimant that Debtors' research shows over $12,200 due in taxes from 2006 and 2007. Debtors advised Claimant that he can sign a promissory note with Debtors whereby Claimant could borrow the funds from the Debtor's that were necessary to pay off the lien. The note called for payments of $203.33 for 60 months to pay back the tax liens. Claimant stated he will be out of country for the next three years, and he was not willing to sign the new note and borrow the funds. Debtors advised that if Claimant is not willing to sign, then Claimant will need to increase the sales price to an amount sufficient to cover the lien.<br><br>On July 15, 2008, Debtors resubmitted to investor the short sale offer with taxes included as part of the closing costs. The investor approved the short sale offer of $102,000 with minimum net proceeds of $88,290.36 to investor. Claimant spoke | |

4

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | with Debtors via phone on July 16, 2008. During the call, Debtors advised the short sale has been approved.  The Debtors also sent a letter informing Claimant of the approval that same day. Claimant spoke with Debtors via phone on August 12, 2008. During the call, Debtors advised promissory note to pay for the delinquent taxes was sent to Claimant's realtor, with the sale scheduled to close on August 16, 2008. Claimant stated that he wanted to sell property but not to the current buyer and the sale did not go forward.<br><br>Debtors received a new offer for $115,000 on September 23, 2008. Consistent with Debtors' standard business practices, a new internal BPO had to be ordered as the one on the account was more than 120 days old (making it outdated). Debtors spoke with Claimant's authorized third party, Spiro, via phone on October 29, 2008. Spiro stated the buyer had walked away and there was no longer an offer for the property.<br><br>Debtors spoke with Karen Pooley with the city of Allentown via phone on February 3, 2009. Ms. Pooley stated the property is on the blighted property list and the city is interested in purchasing the property rather than pursuing eminent domain. Debtors advised the city that it would need to submit short sale documents and that Debtors would need to obtain a new BPO. Debtors also advised Ms. Pooley that they need to contact Claimant to obtain authorization to speak with Debtors about the account. Debtors received authorization for Ms. | |

| Claim No(s). | Name and Address Claim Amount Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Pooley to speak with them on February 9, 2009. Ms. Pooley spoke with Debtors via phone on March 18, 2009, at which time she stated she had just received keys from Claimant, and that once she has looked inside the property, she will make an offer to purchase the property. Debtors received an offer in the amount of $74,500 from Ms. Pooley on May 19, 2009. The offer would net $63,480.84 in proceeds to the investor and the BPO value of the property was $77,900.  Debtors submitted the offer to investor on May 19, 2009 and the offer was accepted by the investor on the same day.  On May 20, 2009, Debtors advised Ms. Pooley that an approval letter for short sale had been faxed to Ms. Pooley.  Ms. Pooley acknowledged that there are title issues that need to be resolved. Ms. Pooley spoke with Debtors via phone on June 22, 2009. Ms. Pooley questioned when the closing for the short sale would take place. Debtors advised there are delinquent liens against the property that need to be cleared (taxes in an amount of $9,305.47 and sewer/water in an amount of $859.19) and a closing date would be set once liens cleared. The short sale was terminated on July 17, 2009 due to the sale not closing.

Debtors mailed a letter to Claimant on October 14, 2009 offering a Deed in Lieu for the property with the incentive of receiving $1,000 once vacated. Claimant spoke with Debtors via phone on October 21, 2009. Debtors advised Claimant that his credit would be affected if Deed in Lieu accepted and that the Deed in Lieu would not be executed until the title issues are clear. | |

6

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Claimant spoke with Debtors via phone on October 22, 2009, at which time Claimant asked about his options. Debtors advised him of both deed in lieu and short sale options.  Debtors advised him that if he is interested in a short sale, then he can list the property with a realtor.<br><br>Ms. Pooley spoke with Debtors via phone on December 14, 2009 and requested that the short sale process continue. Debtors advised her to send in all short sale documents. Debtors received a short sale workout package on December 16, 2009. Debtors had to wait on a new interior BPO to be received in order to proceed with a review.  The new interior BPO was received on January 27, 2010. The short sale offer was approved on February 3, 2010 due to the offer amount being above the fair market value of the property. Claimant spoke with Debtors via phone on February 11, 2010, at which time Debtors advised the short sale had been approved. The anticipated closing date for the short sale was set for March 31, 2010 with net proceeds to be applied to the account in an amount of $58,998.66; however, the short sale did not take place on March 31, 2010. Debtors mailed a letter to Claimant on April 1, 2010 approving an adjusted net proceeds amount of $57,426.05 as long as the short sale closed by April 16, 2010. Debtors received an updated HUD-1 document on April 5, 2010 reflecting a change in the net proceeds for the short sale. The short sale was finalized and closed on April 5, 2010. | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| 1651 | Justin Gordon<br><br>1 Wharf Drive, Groveland MA 01334<br><br>$62,000<br>General Unsecured<br><br>GMAC Mortgage, LLC | Escrow Issues, Loan Modification Issues, General Servicing Issues | Powder House Mortgage Company Inc. originated claimant's loan on May 16, 2007. Non-Debtor GMAC Bank purchased the loan from Powder House.  Debtor GMAC Mortgage purchased the loan from GMAC Bank and transferred its interest on or about June 17, 2007 to Fannie Mae. Debtor GMAC Mortgage LLC serviced the loan from May 21, 2007 until servicing transferred to GreenTree Servicing on February 1, 2013.<br><br>In Claim No. 1651, Claimant asserts the following causes of action:<br><br>1) Debtors violated Massachusetts Bank Codes 93A, Chapter 183C, Section 16 by "encouraging default."<br>2) Debtors violated Massachusetts Bank Codes 93A, Chapter 183C, Section 17b (2) ii by making a "bona fide error" with the Claimant's escrow account, thereby requiring Debtors to "change the terms of the loan in a manner beneficial to the borrower." Specifically, Claimant asserts that Debtors committed two errors. The first alleged error involved Debtors making an "insufficient payment to my insurance company" of $17 in 2008, which caused Claimant to pay an incorrect monthly escrow and to accumulate a shortage in Claimant's escrow amount. The second alleged error involved Debtors making "an insurance payment to an incorrect account number" and denying "knowledge of or need for a missing $881.00 insurance check" (collectively, the "Escrow Claims").<br>3) Debtors wrongfully denied Claimants these loan modification requests three | 8, 9, 10, 11, 12 |

8

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | times, and Debtors "illegally benefits from final, granted, loan modification with over $50,000 in collectable mortgage payments" (collectively, the "Loan Modification Claims").<br>4) Debtor "illegally damaged my credit rating resulting in loosening credit availability, loosening credit cost savings opportunities resulting in financial injury" (the "Credit Rating Claims").<br><br>Debtors have no liability for Claimant's Escrow Claims because the factual assertions are not true and Claimant has not proffered evidence of the same. In the one instance that Debtor acknowledges a mistake, Debtors' records show Claimant received the benefit of an escrow refund that the Claimant should not have received, and Debtors took appropriate steps to recoup the funds by charging the appropriate amounts to Claimant's escrow account and corresponding monthly mortgage payment.<br><br>The Debtors records reflect the following:<br><br>On July 1, 2008, Debtors issued an insurance premium payment on behalf of Claimant to Citizen's Insurance Company of America (the "Insurance Company") (check number 1666432, policy number XX-60) in the amount of $881 for property insurance covering the period from July 14, 2008 through July 14, 2009. Claimant contacted Debtors via phone stating the Insurance Company had not | |

9

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | received the premium payment. Debtors researched the issue and confirmed that the payment to the Insurance Company had been cashed on July 14, 2008. To close out the matter, Debtors sent a front and back copy of the cancelled check to the Insurance Company. Claimant followed up with Debtors stating the payment had been applied to an incorrect policy number. During the phone conversation, Claimant authorized Debtors to issue another payment to the insurance company via overnight mail to prevent the policy from being cancelled. This was completed on August 15, 2008 with check number 1719898 in amount of $881 for the same policy number. Debtors' insurance department contacted the Insurance Company regarding the policy and Debtors were advised that Insurance Company had received duplicate payments of $881 for Claimant's policy, and that they sent a refund of $881 by mail directly to Claimant on September 3, 2008. Debtors have no record of Claimant returning the refund check to Debtors. Accordingly, both $881 premium payments were properly billed to Claimant's escrow account and contributed to the escrow shortage reported in the escrow analysis completed on December 8, 2008.  Claimant spoke with Debtor via phone on December 15, 2008 and stated that the escrow analysis was calculated incorrectly. Claimant spoke with Debtors via phone on January 5, 2009 and stated that the extra payment of $881 was sent back to Debtors in September 2008. Debtors advised Claimant those funds were never received.  The Debtors' books and records do not reflect the funds ever being received. | |

10

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | In the escrow analysis completed in March 2008, Debtors inadvertently calculated the insurance premium at $17 instead of the correct amount of $881.  This error caused Debtors to incorrectly report in the escrow analysis an escrow surplus of $563.82, a new monthly mortgage payment effective May 1, 2008 of $1,324.88, inclusive of $251.88 in monthly escrows.  The Debtors' servicing notes indicate the new monthly escrow payment of $251.88 was based on one-twelfth of the sum of $3,005.66 in property taxes and $17 in homeowner's insurance premiums, or $3,022.66. The Borrower Trust acknowledge that the $17 in annual insurance premiums used in the escrow analysis to calculate the monthly escrow payment was incorrect and should have been based on the actual annual insurance premium of $881.  The Debtors' records do not indicate that Claimant ever contacted Debtors via phone or letter questioning the decrease in the monthly escrow payment amount, the amount used for the homeowner's insurance premium in the escrow analysis, or the corresponding escrow surplus check that was sent to Claimant in December 2008 in amount of $563.82, which Claimant cashed.<br><br>Debtors completed a new escrow analysis on December 8, 2008 with a payment change effective February 1, 2009. The new escrow analysis correctly reported a shortage of $2,311.62 and a new monthly mortgage payment of $1,593.10. The escrow shortage incorporated, among other properly calculated items, the correction to the annual insurance premium from the $17 to $881 (accounting for | |

11

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | $864 of the shortage), the duplicate insurance premium payment paid on August 15, 2008 in amount of $881, and the $563.82 escrow refund issued to Claimant in December 2008.<br><br>Debtors have no liability for Claimant's Loan Modification Claims because in every instance that Claimant was denied a loan modification, Claimant did not meet the relevant modification criteria.  Debtors handled the modification and loss mitigation process in accordance with Debtors' standard business practices and the applicable investor or HAMP guidelines. Furthermore, Claimant's assertion that the modification he received was "illegal" is a conclusory allegation that is not supported by any evidence or facts. On the contrary, the loan modification Claimant executed was proper, provided a tangible benefit to the Claimant, and was consistent with modification guidelines of the investor.<br><br>In support of the basis for objection, Debtors' records show the following chronology of events:<br><br>Debtors received a workout package from Claimant on June 13, 2009. Claimant spoke with Debtors via phone on June 30, 2009 and Debtors advised a complete workout package had been received and the account was under review for a loan modification. Debtors denied Claimant's account for a HAMP modification on July 15, 2009 due to Claimant not reporting any valid income, and a denial letter was | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
|  |  |  | mailed to Claimant on July 16, 2009.<br><br>Debtors mailed a breach letter to Claimant on October 8, 2009. Claimant spoke with Debtors via phone on October 20, 2009, at which time Debtors advised that Debtors would mail a workout package to Claimant to complete and send in for loan modification review.  Debtors mailed a workout package to Claimant on October 21, 2009. Claimant spoke with Debtors via phone on November 23, 2009, at which time Claimant stated he did not receive the workout package that was mailed in October. Debtors advised that they would re-mail a workout package to Claimant to complete and send in for modification review. Debtors mailed a new workout package to Claimant on November 24, 2009; however, Claimant failed to remit a completed workout package.<br><br>Debtors mailed a breach letter to Claimant on May 3, 2010, June 1, 2010, July 1, 2010, August 3, 2010, August 31, 2010, October 1, 2010, November 2, 2010, December 1, 2010, January 3, 2011, February 1, 2011, March 3, 2011, April 5, 2011, and May 3, 2011. The account was referred to foreclosure on June 6, 2011 because the account was owing for the March 2011 through June 2011 payments. Debtors received a workout package from Claimant on June 13, 2011. Debtors reviewed the workout package and determined on June 20, 2011 that the workout package was complete. Based on the information in the workout package, Debtors calculated Claimant's monthly gross income to be $916.  This |  |

13

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
|  |  |  | amount came from the Profit and Loss Statement provided by Claimant in the workout package. On June 23, 2011 Debtors denied Claimant for a HAMP modification because Claimant's Debt-to-Income ratio was 155.96%, which demonstrated Claimant's inability to afford his property. Debtors mailed a denial letter to Claimant on June 24, 2011.<br><br>Claimant spoke with Debtors via phone on July 11, 2011, at which time Debtors advised that the account was denied for a loan modification and that Home Affordable Foreclosure Alternatives  information (short sale) was sent to Claimant on July 6, 2011. Debtors attempted to contact Claimant on July 20, 2011 to provide EHLP information to Claimant; however, there was no answer, so Debtors left a message.<br><br>Debtors received a workout package from Claimant on September 19, 2011. A 30 Day Missing Items letter was mailed to Claimant on September 20, 2011 because the expenses on the profit and loss form were not calculated correctly and could not be reconciled. Claimant corresponded with Debtors via email on September 22, 2011 as well as via phone and was advised of the need for an updated profit and loss statement.  Debtors received a revised profit and loss statement from Claimant on September 23, 2011 and continued to review for a loan modification.<br><br>Based on the information in the workout package, Debtors calculated Claimant's |  |

14

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | monthly gross income at $6,133.50. This amount came from the profit and loss statement provided by Claimant. The account was denied a HAMP modification due to the front end Debt-to-Income ratio being below 31% (DTI was calculated at 25%). The loan was moved on to traditional modification review. Claimant spoke with Debtors via phone on September 29, 2011, at which time Debtors advised that the account was denied for HAMP due to DTI being under 31% and also advised Claimant the account is still under review for traditional modification options. Debtors approved a traditional trial plan on October 20, 2011 with payments of $1,354.26 due the first of December, January, and February. Claimant spoke with Debtors via phone on October 21, 2011. Debtors attempted to advise Claimant that a trial plan had been approved; however, Claimant did not want to discuss. Debtors emailed Claimant terms of the trial plan on October 25, 2011.<br><br>Debtors received signed trial plan documents from Claimant on December 6, 2011 and the first payment due for the trial plan was received on the same day. Claimant completed the traditional trial plan on February 1, 2012 and the account was approved for a permanent traditional loan modification on February 16, 2012. The traditional modification terms included an interest rate of 4.625%, a principle, interest, taxes, insurance, and association fees (PITIA) payment amount of $1,335.89; an extension of the loan term from 360 to 480 months, and a new unpaid principal balance of $177,446.96. Prior to the modification, the terms of | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
|  |  |  | the loan included an interest rate of 6.125%, a monthly payment (PITIA) of $1,460.24, and a principal balance of $166,355.88 (the principal balance increased due to the interest and fees that accured during the delinquency).  The modification would be effective with the March 1, 2012 payment. Debtors mailed the traditional permanent modification documents to Claimant on February 20, 2012. Claimant spoke with Debtors via phone on February 29, 2012. Debtors explained terms of the traditional loan modification. Claimant stated that the permanent modification documents were received on February 23, 2012. Claimant spoke with Debtors via phone on March 19, 2012. Claimant was dissatisfied with the modification terms. Debtors advised that the terms were in line with Fannie Mae guidelines, and that the permanent modification is optional and Claimant is not required to execute it. Debtors received the signed permanent modification documents from Claimant on March 30, 2012.<br><br>Debtors have no liability for Claimant's credit-reporting claims because Debtors found no evidence that Debtors incorrectly reported information about Claimant's account to the credit bureaus. |  |
| 2360 | Peter H. Jennings<br><br>8200 SW 11 Ct<br>North Lauderdale, FL 33068 | General Servicing Issues | USAA Federal Savings Bank originated the loan on March 29, 2010. GMAC Bank purchased the loan from USAA.  GMAC Mortgage, LLC subsequently purchased the loan.  GMAC Mortgage LLC sub-serviced the loan from March 29, 2010 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimant asserts "mortgage note" as basis for claim in box 2 of the proof of claim | 8 |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | $50,766.02<br>General Unsecured<br><br>GMAC Mortgage, LLC | | form. Claimant attaches a letter dated September 24, 2012 addressed to Debtors in which Claimant asserts i) Debtors told Claimant "to not make a payment in February and to vacate the property" before the short sale that was purportedly scheduled to close in January 2012, and ii) Debtors failed to inform Claimant that he was obligated to continue making payments under the note after the short sale did not close. Claimant asserts unspecified damages related to Debtors' reporting to the credit bureaus of the aforementioned payments he missed. On June 21, 2013, Debtors sent Claimant a letter requesting additional information in support of the claim; however, Claimant did not respond.<br><br>Debtors have no liability for Claimant's assertion that he was instructed to stop making payments while waiting for closing on his short sale. Claimant has not proffered any supporting evidence. Debtors have no liability for Claimant's assertion that Debtors failed to notify Claimant that he needed to continue to make payments under the note because the Debtors' records show Debtors continued to send Claimant monthly mortgage account statements reflecting the payments that were due.<br><br>To the extent Claimant asserts Debtors mishandled Claimant's short sale, Debtors have no liability because Debtors' records show that in every instance Debtors acted consistent within Debtors' standard practices. Specifically, Debtors' records reflect that the short sale offer received in January 2012 took longer to approve because Claimant's realtor delayed in following up with Debtors' counter offer of | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | $588,000 (the BPO value of the property) which Debtors provided to Claimant on February 3, 2012.<br><br>Debtors' records reflect the following chronology of events:<br><br>Claimant spoke with Debtors via phone on September 7, 2011, at which time Claimant stated that he wants to sell his property because he has been ordered to serve his military service in another state. Debtors sent a short sale workout package to Claimant. Debtors received a short sale workout package from Claimant on October 21, 2011.  Claimant spoke with Debtors via phone on October 24, 2011. Debtors advised Claimant of missing information needed in the short sale package. Debtors received additional information for short sale workout package on October 26, 2011. Claimant spoke with Debtors via phone on October 28, 2011, at which time Debtors advised that Claimant's realtor needed to be added to Debtors' system, Equator, in order to proceed with any short sale. Debtors advised Claimant that notices have been sent to the realtor to sign up on Equator.<br><br>Claimant spoke with Debtors via phone on November 3, 2011, at which time Debtors asked Claimant about the payment due on account and Claimant advised the payment would be made before the grace period expires. Debtors also advised Claimant of missing information needed for the short sale review.<br><br>Debtors received additional information for short sale review on November 3, | |

18

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | 2011. Debtors sent an email to Claimant's realtor on November 23, 2011. Debtors advised the realtor to counter the $550,000 purchase offer with a counteroffer of $588,000, which was based on the appraised value of property. Debtors also advised that if the buyer increases their offer, Debtors will need a signed Addendum and HUD-1 with both buyers "and sellers" closing costs included. Debtors also advised that they need a copy of buyer and seller's realtor license. Claimant spoke with Debtors via phone on November 28, 2011, at which time Debtors advised that Claimant's realtor was informed of Debtors' counter offer. Debtors sent an email to the realtor through the Equator system on December 5, 2011. Debtors advised the realtor that a short sale has to yield at least $518,300 to be approved after all closing costs are paid, otherwise it will be declined.<br><br>Claimant spoke with Debtors via phone on December 6, 2011, at which time Claimant stated a new offer has been received for the property and the new amount will be uploaded through Equator. Claimant's authorized third party and realtor,  Lana Evers, spoke with Debtors via phone on December 7, 2011, and Ms. Evers advised Debtors that she has another offer on the property in the amount of $575,000. Debtors advised that Claimant needs to counter that offer at $588,000. Debtors also emailed the realtor through Equator on December 7, 2011 advising realtor to counter offer at $588,000. Claimant spoke with Debtors via phone on December 13, 2011, at which time Claimant stated he is not interested in starting the short sale process until January 2012. Claimant stated he will submit an offer on January 15, 2012 with hopes of closing by March 1, 2012. | |

ny-1200545

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Debtors advised that it can take 60 days for a short sale review process so Claimant may want to submit the offer now.<br><br>Claimant spoke with Debtors via phone on January 11, 2012, at which time Claimant stated that he has an offer on the property. Debtors advised that Claimant should have the realtor submit information to Debtors for review. Claimant spoke with Debtors via phone on January 18, 2012, and asked if a new offer was received. Debtors advised the information was received on January 17, 2012.  Debtors emailed the realtor through Equator on February 3, 2012, advising the realtor to counter the offer with $588,000. Debtors advised that if the buyer increases their offer, the Debtors will need a signed Addendum and HUD-1 with both buyers "and sellers" closing costs included.<br><br>Claimant spoke with Debtors via phone on February 8, 2012. Claimant advised that he has an offer for the property. Debtors advised of the minimum counteroffer required and that it can take up to 60 days to review the account. Claimant spoke with Debtors via phone on March 9, 2012, at which time Debtors advised that an offer was received for a short sale. Claimant stated he thought there had been a closing date set for March 1, 2012. Debtors' records on March 12, 2012 show that Claimant's realtor had not uploaded the required documentation in the Equator system. Debtors attempted to contact Claimant via phone on March 13 and 16, 2012; however, there was no answer from Claimant and a message was left for Claimant to call Debtors. Claimant spoke with Debtors | |

ny-1200545

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | via phone on March 21, 2012. Claimant asked if there is a closing date. Debtors advised offer documents received from Claimant's realtor and they were being reviewed. Claimant stated that he needs a decision by April 1, 2012 or the buyer will walk.  Claimant spoke with Debtors via phone on March 26, 2012, and Debtors advised Claimant that the realtor needed to counteroffer at $588,000, but the realtor has not responded regarding the counter offer. Claimant spoke with Debtors via phone on April 3, 2012, and stated that if the offer is not approved by the time buyers are back from vacation, then they will walk. Debtors advised the offer is under review.  Debtors approved the short sale on April 12, 2012, and the short sale closed on May 11, 2012 with net proceeds of $530,430 to the investor. | |
| 2102 | Mr. Larry Sipes<br><br>413 30-1/4 Rd. Grand Junction, CO 81504<br><br>$55,634.91 General Unsecured Claim | Escrow Issues, General Servicing Issues | Homecomings Financial Network, Inc. originated the loan on March 22, 2005. Debtor Residential Funding Company purchased the loan from Homecomings and transferred its interest on or about April 1, 2005 at which time US Bank, NA was appointed as trustee. Debtor GMAC Mortgage LLC serviced the loan from March 22, 2005 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimant asserts "GMAC Mortgage is holding (in trust for Larry Sipes) insurance funds paid by Allstate insurance on a homeowner's claim for loss" as basis for | 9, 10 |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
|  |  |  | claim in box 2 of the proof of claim form.<br><br>Debtors have no liability because i) Claimant has failed to state a basis for claim that gives rise to liability of any Debtors, and ii) all of the insurance proceeds at issue held by Debtor were transferred to the new servicer, Ocwen, on February 16, 2013.  To the extent Claimant asserts that Debtors mishandled Claimant's insurance proceeds, Debtors have no liability because in every instance, Debtors handled the insurance proceeds in accordance with Debtors' standard business practices. Specifically, Debtors' records show Debtors did not release the proceeds because Claimant failed to provide the requisite information to Debtors in order for those funds to be released.<br><br>In support of Debtors' bases for objection, Debtors' records show the following chronology of events:<br><br>On August 8, 2011, Allstate Insurance (the "Insurance Company") called Debtors to report that a fire loss had occurred on Claimant's property on March 20, 2010. The Insurance Company advised that the claim had been denied as to the Claimant; however, they would pay under the policy to the lienholders. Debtors advised that the Insurance Company would receive a call back from Debtors within 72 business hours. On August 28, 2011, Debtors called the Insurance Company. The Insurance Company's agent explained that the Claimant's claim was denied because it was determined that the fire was intentionally set, and the |  |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Insurance Company would pay the mortgage company.<br><br>On September 20, 2011, Debtors received an insurance claim check in the amount of $55,634.91, made payable to GMAC and Vectra Bank, the second lienholder. On October 4, 2011, Debtors sent the claim check in the amount of $55,634.91 to Vectra Bank for endorsement. On October 17, 2011, Debtors received the fully endorsed claim check in the amount of $55,634.91 from Vectra Bank, and deposited the funds. On October 25, 2011, Debtors spoke with Claimant, who stated that he was suing the insurance carrier and was waiting for the courts. On November 8, 2011, Bruce, the Claimant's attorney, called in to advise he was sending a third party authorization form in order for Debtors to speak with their office in regards to the claim. The attorney advised that the Claimant may want to use the insurance proceeds to pay down the mortgage, but he wasn't sure.<br><br>Between November 9, 2011 and February 7, 2012, Debtors received several copies of correspondence from Claimant's attorney. One of those letters advised that the Claimant denies the allegations made by the Insurance Company that he was responsible for the fire damage and requested that Debtors withhold any assumption of its rights under the mortgage to the insurance proceeds pending resolution to Claimant's dispute with the Insurance Company.<br><br>On February 10, 2012, Debtors received correspondence from Claimant's attorney inquiring as to what documents would need to be submitted if the | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Claimant were to propose to demolish the existing structure and replace it with a modular home. Claimant's attorney attached to the letter a copy of the insurance estimate for the proposed demolition and modular home.  On February 17, 2012, Debtors called the Claimant's attorney's office and a voice message was left advising of all documents needed in order to submit a request to replace the existing structure with a modular home. On March 20, 2012, Debtors received correspondence from the attorney, including the completed Homeowner's Statement and a purchase agreement to place a modular home on the property. On April 2, 2012, Debtors called Claimant's attorney and left a voice message requesting that the contract be signed by the contractor. Debtors also called and requested a status of the litigation between the Claimant and the Insurance Company. On April 3, 2012, the Claimant's attorney called in and advised that the litigation was still being worked on. He also advised that the Claimant had found a new modular home and so the information submitted was now obsolete. Debtors advised Claimant's attorney to submit the new purchase agreement. The attorney stated they would not send to Debtors the new purchase agreement until they were advised if the exception would be approved. The attorney advised Debtors that he did not want to send the purchase agreement or a signed work contract because it would require Claimant to put down a deposit without knowing if Debtors would approve the modular home. Claimant's attorney requested a call back from a manager. Debtors left Claimant's attorney a voice message advising that the new purchase agreement would be required in order to submit the | |

| Claim No(s). | Name and Address  Claim Amount  Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | request for approval.  In connection with the transfer of the loan servicing to Ocwen on February 16, 2013, Debtors transferred the insurance proceeds to Ocwen in the amount of $55,760.87. | |
| 4404 | Steven and Rhonda McVay  PO Box 1254 1311 Central Ave Hot Springs, AR 71901  $115,000 General Unsecured  Residential Capital, LLC | General No Liability | Debtor Homecomings Financial Network originated the loan on March 18, 2004. Debtor Residential Funding Company purchased the loan from Homecomings and transferred its interest when the loan was securitized on or about April 1, 2004 where JP Morgan Chase was appointed as trustee.   Homecomings serviced the loan from origination until servicing transferred to GMAC Mortgage on or about July 1, 2009.  GMAC Mortgage serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.  On information and belief, Ocwen has since service transferred the loan to Specialized Loan Servicing, LLC.  Claimants attach to the proof of claim foreclosure litigation filed by Homecomings, on behalf of Bank of New York Mellon Trust Company, as trustee (successor to JP Morgan Chase) ("BONY") against Claimants, in which Claimant filed a counter-claim against BONY.  The counter-claim was filed on October 30, 2012 in the Circuit Court of Grant County, Arkansas, Case No. 27CV-12-97-2.  The counter-claim includes claims for breach of contract, violations of the FDCPA and emotional distress.  After servicing of Claimants' loan transferred to Ocwen in | 7 |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | February 2013, BONY filed a Motion for Summary Judgment on July 26, 2013. Claimant filed a response on August 19, 2013. The Court issued an order on March 20, 2014 dismissing the cause of action for emotional distress, but denying the motion as to the causes of action in the counterclaim for breach of contract and violations of the FDCPA.<br><br>No Debtor is a party to the foreclosure action and there are no 3rd party claims against GMAC Mortgage in this foreclosure action. The litigation is now being completely managed by the current servicer, Specialized Loan Servicing. Debtors have no interest and no involvement in the property. | |
| 3553 | Thomas D Gammino v Mortgage Electronic Registration Systems Alias GMAC Mortgage LLC and RALI 2005QA7 Alias<br><br>JOHN B ENNIS ATTORNEY AT LAW 1200 RESERVOIR AVE Cranston, RI 02920<br><br>$25,000 General Unsecured | Wrongful Foreclosure | Loan was originated by Dream House Mortgage Corporation on February 8, 2005. Debtor Residential Funding Company purchased the loan from Dream House Mortgage and transferred its interest when the loan was securitized on or about June 1, 2005 where Deutsche Bank Trust Company Americas was appointed as trustee. Debtor GMAC Mortgage serviced the loan from February 22, 2005 until servicing was transferred to Ocwen Loan Servicing, LLC on February 16, 2013. At the time of transfer to Ocwen, the account was due for September 1, 2011.<br><br>Claimant attaches to his proof of claim litigation filed against Debtor GMAC Mortgage, MERS and RALI 2005QA7 (incorrectly listed as RAIL 2005QA7) in the U.S. District Court for the District of Rhode Island, Case No. CA12-335M on May 4, 2012. The complaint includes counts for declaratory relief, injunctive relief and to quiet title and related damages. There are no specific evidence of damages, | 10, 11 |

26

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | GMAC Mortgage, LLC | | rather the relief sought states "Plaintiff be awarded compensatory and punitive damages, attorney's fees and costs against all Defendants jointly and severally for wrongful foreclosure and for creating fraudulent documents."  The basis of the complaint is that defendants lack standing to foreclose and that only the "lender," in this case Dream House Mortgage, has the power to foreclose.<br><br>Debtors have no liability for Claimant's wrongful foreclosure allegations because Claimant's account was referred to foreclosure (but not commenced) on December 9, 2011.  At the time of the referral the loan was due for September 1, 2011. The mortgage was assigned from MERS to Deutsche Bank on February 21, 2012.  The assignment was executed by Yvonne Boyd as assistant secretary for MERS.  Ms. Boyd has authority under a MERS Corporate Resolution effective December 22, 2011.<br><br>Claimant alleges that the notice he received from foreclosure counsel (and attached as an exhibit to the complaint) on December 23, 2011 is a Notice of Default and because it pre-dates the assignment of mortgage to Deutsche Bank any foreclosure proceeding is invalid.  The notice being referred to is not a Notice of Default under R.I.G.L. § 34-27-3.1 and therefore the statute is not applicable.  Further, the first foreclosure publication by Deutsche Bank, as investor for the loan, wasn't completed until March 16, 2012 (after the recording of the assignment of mortgage). The foreclosure file was then placed on hold on | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | May 7, 2012 due to litigation filed by Claimant.<br><br>On March 29, 2014, Claimant voluntarily dismissed the litigation as to all defendants without prejudice.  Debtors have no interest in this property or any foreclosure proceedings on the property. | |
| 4687 | Billy & Janet Spencer<br><br>c/o J Edwin McDonnell<br>SCLS<br>148 E Main St<br>Spartanburg, SC 29306<br><br>$40,000<br>General Unsecured<br><br>GMAC Mortgage, LLC | Origination Issues | Quicken Loans Inc. originated the loan on June 6, 2008.   Non-Debtor GMAC Bank purchased the loan from Quicken.  Debtor GMAC Mortgage purchased the loan from GMAC Bank and transferred its interest to GNMA on or about July 28, 2008. GMAC Mortgage serviced the loan from June 6, 2008 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimant attaches to the proof of claim litigation filed in the Court of Common Pleas, State of South Carolina, Case No. 2011-CP-11-274.  The litigation involved an answer, counterclaim and third party complaint (against Quicken Loans) to a foreclosure action filed by Debtor GMAC Mortgage against Claimant and others. Claimant's counterclaims were filed on or about June 3, 2011.  The counterclaims allege causes of action for violations of the SCCA Sec. 37-10-102 for allegedly failing to provide an attorney an insurance preference form at closing.  Debtor GMAC Mortgage was not the lender on the loan or in any way involved in the closing of Claimant's loan.  In addition, Ocwen was substituted as party plaintiff to the foreclosure action on October 24, 2014. | 8, 9 |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Based on the facts and reasons stated above, the proof of claim does not give rise to liability by any Debtor for these origination-based claims. | |
| 1369 | Jeffrey and Misty Keefer<br><br>Jennifer S. Wagner Mountain State Justice, Inc. 1031 Quarrier St, Suite 200 Charleston, WV 25301<br><br>$74,900 General Unsecured<br><br>GMAC Mortgage, LLC | Dismissed With Prejudice | Quicken Loans originated the loan on January 17, 2008.  Debtor GMAC Mortgage, LLC purchased the loan from Quicken and transferred its interest to Fannie Mae. GMAC Mortgage serviced the loan from February 4, 2008 until servicing was transferred to GreenTree Servicing, LLC on February 1, 2013.<br><br>Claimant attaches to the proof of claim litigation filed in the Circuit Court of Kanawha County, West Virginia as Case No. 12-C-1950 filed September 27, 2012 against Federal National Mortgage Association ("Fannie Mae") alleging misrepresentation and unconscionable conduct, breach of contract, estoppel, negligence, illegal fees and request for declaratory relief.  The allegations relate to an alleged loan modification issue.  No debtor was a party to this litigation.<br><br>On September 8, 2014, Claimant and Fannie Mae entered in to a settlement agreement.  The settlement agreement included a dismissal of the litigation with prejudice as well as a release of GMAC Mortgage (as prior servicer) of any and all claims related to the allegations asserted in the litigation or the loan.  Debtors have no liability for Claimant's claims raised in the litigation against Fannie Mae, which is the basis of the proof of claim. | 13 |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| 2556 | Christopher D. Goetter<br><br>1812 General Pershing St., Apt. E<br>New Orleans, LA 70115<br><br>$77,000<br>General Unsecured<br><br>GMAC Mortgage, LLC | General Servicing Issues, Wrongful Foreclosure | Gershman Investment Corp originated the loan on August 11, 2010. Non-Debtor Ally Bank purchased the loan from Gershman. Debtor GMAC Mortgage purchased the loan from Ally Bank. Debtor GMAC Mortgage LLC also serviced the loan from August 11, 2010 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimant asserts "gave false information on several payment dates and the foreclosure date which resulted in premature foreclosure of the property" as basis for claim in box 2 of the proof of claim form. On June 21, 2013, Debtors mailed to Claimant a letter requesting additional information and documentation in support of the claim. On July 8, 2013, Claimant responded by letter (the "Letter Response") asserting "I believe I am entitled to the selling price of the home I purchased due to false information and premature foreclosure proceedings. I was given continual false information, was locked out of my account and was unable to make online payments while being told my house was going to foreclosure on the wrong date as informed by GMAC representative. Not even asking for fair market value." Claimant attaches a copy of discharge papers from the Army Reserves (discharged date April 24, 2011) and another document stating the effective date of his discharge was May 10, 2011.<br><br>Debtors have no liability for Claimant's assertion that Debtors "prematurely" initiated foreclosure proceedings. In every instance, Debtors' actions with respect to the foreclosure were proper and in accordance with the terms of the note and | 8, 10, 11 |

30

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | mortgage. Additionally, the dates and amounts cited in Debtors' communications regarding amounts past due were accurately reported in those communications. Claimant provides no specific evidence of the alleged false information provided by the Debtors.  Debtors found no evidence that Claimant was locked out of his account online, and therefore unable to make the payments that were due.<br><br>Debtors' records reflect the following chronology of events:<br><br>On April 11, 2011, Debtors mailed to Claimant an Options to Avoid Foreclosure letter stating that the loan was past due and owing for the March and April 2011 payments. On May 2, 2011, Debtors mailed to Claimant a breach letter stating that the loan was due for the March through May 2011 payments. On June 1, 2011, Debtors mailed to Claimant a Pre-Referral to Foreclosure letter stating that the loan is in an advanced state of delinquency and that loss of property or credit damage could occur as a result of non-payment. Debtors referred the loan for foreclosure on June 10, 2011. At the time of the referral, the loan was owing for the March 2011 payment.<br><br>Per the discharge papers provided by Claimant in the Letter Response, the foreclosure referral occurred 30 days after his honorable discharge from the Army Reserves. Debtors confirmed the Claimant's Non Active Military Status on June 1, 2011.  Claimant spoke with Debtors on June 14, 2011 via phone, and was informed that the loan had been referred to foreclosure on June 9, 2011. | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Claimant was provided the foreclosure attorney's name and phone number, as well as the total amount due, including foreclosure fees and costs. Claimant called Debtors on July 7, 2011 to see if a modification was an option.  Claimant was informed that a traditional modification may still be possible. Debtors attempted to contact Claimant by phone without success on the following days preceding the foreclosure sale in an attempt to discuss possible options to help the claimant keep the property:   July 13, 14, 15, 19, 20, 21, 22, 25, 26, 27; and August 2, 10, 12, 15, 17, 22, 23, 24, 25, and 31. A foreclosure sale was held on September 8, 2011. | |
| 4121 | Billy Ray Carroll<br><br>2158 Grove Ct<br>Mobile, AL 36605<br><br>$80,000<br>General Unsecured<br><br>Homecomings Financial, LLC | Wrongful Foreclosure, General Servicing Issues | Mortgage Outlet, Inc. originated the loan on April 22, 2003. Debtor Residential Funding Company purchased the loan from Mortgage Outlet and transferred its interest when the loan was securitized on or about August 1, 2003 where JP Morgan Chase Bank was appointed as trustee. Debtor Homecomings Financial serviced the loan from July 1, 2003 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage LLC serviced the loan until a foreclosure was sale held April 2, 2010.<br><br>Claimant asserts "Rent, Storage, Mortgage, Note" as basis for claim in box 2 of the proof of claim form. Claimant provides no additional information or documentation in support of the claim. Debtors sent a letter to Claimant on May | 8, 9, 10, 11 |

32

| Claim No(s). | Name and Address  Claim Amount  Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | 20, 2013 requesting additional information. On June 5, 2013, Claimant sent Debtors a response asserting "Fraudulent Foreclosure. Never received notice of proceedings. Independent review board is reviewing the case… Had to file for bankruptcy resulting in bad credit report." Claimant attaches copies of several documents, including Claimant's deed, bank statements from 2009 and 2010, and his last mortgage statement. Claimant provides no other explanation or documentation in support of the claim.  Debtors have no liability for assertions of "fraudulent foreclosure" because Debtors' records show Claimant was significantly past due at all times during the foreclosure process, and Debtors provided all required notices to the Claimant. The state of Alabama is a Non-Judicial Foreclosure state, so no litigation or filings were performed in connection with the foreclosure. Debtors were required, however, to give notice of the foreclosure via publication in the newspaper, which Debtors completed. In addition, Debtors sent Claimant a Notice of Acceleration to Claimant via US Mail Service.  Below is the chronology of relevant events in support of Debtors' basis for objection:  Debtors sent Claimant a breach letter on August 3, 2009. At the time, the letter was sent the loan was due for the July 1, 2009 payment. Debtors subsequently sent Claimant an Options to Avoid Foreclosure letter on August 11, 2009. The | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | loan was referred to Foreclosure on September 25, 2009. At the time of the referral, the loan was past due and owing for the July 1, 2009 payment. On October 9, 2009 Debtors sent Claimant a Notice of Acceleration. This Notice advised Claimant that foreclosure date was set for November 16, 2009. Claimant called on October 10, 2009 and stated that he has made all of his payments on time since July, and stated he will send in all receipts; however, Claimant never provided this evidence to Debtors. Then, on October 13, 2009, Claimant told Debtors by phone that he lost a good paying job, is making less money, and would like to do a loan modification. Claimant was approved for a repayment plan on October 13, 2009, and the foreclosure process was closed on October 27, 2009.<br><br>The Debtors' Servicing Notes show that the Claimant did not make the December 2009 payment on time and a letter advising the cancellation of the plan was sent to the Claimant on January 4, 2010. Debtors also sent Claimant a Breach Letter on December 29, 2009. A new Repayment Plan was set up on January 5, 2010. The terms of the new repayment plan specifically state that "...If at any time you fail to comply with any of the above described conditions and requirements, file bankruptcy, or remit a check with non-sufficient funds, this agreement will be considered null and void. The efforts to accelerate the debt will be resumed, and the foreclosure process will proceed without further notice of demand to you." The terms called for a payment of $721.00 by January 5, 2010, and the following payment due by February 5, 2010, with no grace period allowed. The January payment was not received, and the plan was cancelled by the Debtors. A | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | cancellation letter was sent to Claimant on January 29, 2010. Debtors referred the account for foreclosure on February 4, 2010. The Foreclosure Attorney sent Claimant a Notice of Acceleration on February 25, 2010. That notice states that the foreclosure would occur on April 2, 2010. The Publication of the Sale was placed in the Mobile-Register Press on March 1, 2010; March 8, 2010 and March 15, 2010 as required by law.<br><br>On March 25, 2010, Debtors' foreclosure attorney sent correspondence to Claimant in connection with a conversation with the Claimant on March 5, 2010. The letter i) explained that Debtors' foreclosure attorney represented the Debtors in the foreclosure; ii) stated the amount the loan was due for; iii) requested evidence if Claimant disagrees with any payment or status information in the letter; iv) stated that the repay plan that was started in January was cancelled due to non-payment; and v) stated the total amount due by April 1, 2010 to avoid the foreclosure sale. The letter correspondence also included a copy of the note; mortgage; payment history with transaction codes. Claimant failed to make arrangements to bring the account current, and the foreclosure sale took place on April 2, 2010.<br><br>On April 8, 2010, Debtors received correspondence from Debtors' foreclosure attorney advising that Claimant's spouse sent copies of Western Union receipts after the sale on April 2, 2010. Debtors reviewed the records and found no evidence of payments that had not already been properly applied to the account | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | or that should have been applied to the account and prevented the foreclosure from taking place. | |
| 5659 | Arthea Walsh<br><br>Attorney Daniel C. Burns<br>Burns & Nguyen, LLC<br>154 Hemingway Avenue<br>East Haven, CT 6512<br><br>$94,200<br>General Unsecured<br><br>GMAC Mortgage, LLC | General No Liability; Loan Modification Issues; Origination Issues | Southern Pacific Funding Corporation originated the loan on March 3, 1997. Debtor GMAC Mortgage LLC sub-serviced the loan from August 1, 2003 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimant asserts "foreclosure defense-invalid note and mortgage due to lack of capacity" as basis for claim in box 2 of the proof of claim form. On June 21, 2013, Debtors sent Claimant a letter requesting additional information and documentation in support of claim. Claimant responded on July 22, 2013 asserting "Claimant disputes the validity of the note and mortgage based on capacity to enter a contract." Claimant appears to assert claims for the "value of the loan, plus costs and reasonable attorney fees."<br><br>Debtors have no liability for Claimant's assertion that the note and mortgage are invalid on the basis that Claimant did not have the "capacity" to enter into the contract because no Debtor was involved in the origination of the loan. Southern Pacific Funding Corporation originated the loan on March 3, 1997, and Debtor did not begin servicing the loan until August 1, 2003.<br><br>If it is Claimant's assertion that Claimant's loan modification executed on March 19, 2004 is not valid on the basis that Claimant lacked the capacity to enter into | 7, 8, 9, 11, 12 |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | the contract, Debtors have no liability because Claimant has not proffered the legal or factual basis to support this assertion. The assertion is also challenged by the fact that Claimant was represented by attorney David Friedman throughout the prior litigation and eventual modification process, who presumably acted in good faith for the benefit of Claimant and would have likely known of any competency issue of Claimant.<br><br>Debtors' records show the primary purpose of the settlement and modification agreement was to resolve the events that occurred at origination of the loan by Southern Pacific Funding Corporation. In Civil Suit No. 3:98 CV 00357, Arthea J. Walsh v. Wells Fargo Bank Minnesota, N.A., Trustee (dated November 1, 2002), Claimant asserted that she attempted to exercise her right to rescind the credit transaction on March 3, 4, 5, and/or 6, 1997 by sending Southern Pacific one or more notices of rescission of the credit transaction that took place. On March 7, 1997, Southern Pacific allegedly failed and/or refused to rescind the credit transaction causing the mortgage on Claimant's property to be recorded.<br><br>Claimant's own attorney acknowledged that the above mentioned issue was resolved under the modification. Claimant's records provided in the proof of claim include a letter from Claimant's attorney to Debtors' attorney, Peter Olson, dated April 6, 2004. In the letter, Claimant's attorney acknowledges that the prior litigation issues were resolved on March 19, 2004 through an executed settlement agreement and a modification of the note and mortgage. The | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | executed documents were acknowledged by the Commissioner of the Superior Court on the same day.<br><br>The settlement agreement and modification of Claimant's loan provided material benefit to the Claimant. The agreement states "the balance due on the note and mortgage, including principal, accrued interest, late charges, fees and payments of any kind made on behalf of Walsh, escrow advances and all other charges, shall be reduced to and shall total $50,000 effective October 21, 2003; the note shall be converted from an adjustable rate note to a fixed rate note bearing interest at the rate of 6.125%, with interest accruing commencing on October 21, 2003; the maturity date of the note shall be extended to October 1, 2035; the note shall be modified to provide that payments shall not begin until November 1, 2005 (almost 20 months after the date of the settlement agreement was signed); and the note shall be modified to delete any requirement of a prepayment penalty." Debtors' records show Debtors abided by all of the terms of this settlement.<br><br>Debtors' records show Claimant did not make a payment on the original mortgage note for the first eight years after origination. Claimant's first payment made on the account was on October 27, 2005 when a payment of $340.59 was received. The amount received was not enough to post toward the November 1, 2005 payment due as the amount received only covered the principal and interest amount of the payment. Claimant's mortgage payment also included escrows in the amount of $223.04. The monthly payment included escrow because Debtors | |

ny-1200545

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | had paid certain of Claimant's property insurance premiums when Debtors received no evidence that Claimant had paid them on her own.  Claimant was informed via letter dated March 24, 2005 of this, and that her new mortgage payment as of November 1, 2005 was $563.61.<br><br>The addition of the escrow account was made in accordance with the terms of page 3, Section 5 of the modified note, which was completed as a part of the settlement agreement executed by Claimant on March 19, 2004. This states "All other terms and conditions of the mortgage and note shall remain the same and in full force and effect." except as specifically amended above." Additionally, section 5 on page 2 of the Mortgage Deed gives Debtors the right to obtain property insurance and charge the cost to Claimant's escrow account.  Claimant continued making payments of $340.59 on November 14, 2005 (November 2005 payment posted on this day with $117.55 being applied to additional principal), December 30, 2005, January 23, 2006 (December 2005 payment was posted on this day with remaining $240.06 going into suspense bucket), February 27, 2006, March 16, 2006 (January 2006 payment was posted on this day), and December 5, 2006.<br><br>Debtors mailed a breach letter to Claimant on March 18, 2008 because the account owed for August 1, 2006 through March 1, 2008 payments. Debtors did not receive payment, workout package, or any other arrangement to solve the delinquency, which resulted in the account being referred to foreclosure on April | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | 21, 2008 due to the account owing for August 1, 2006 through April 1, 2008. As of the transfer of servicing to Ocwen, the loan was in active foreclosure but a sale had not been completed. | |
| 4475 | Annette Appelzoller<br><br>8132 Lowd Ave EL Paso, TX 79907<br><br>$66,266.34 General Unsecured<br><br>Residential Capital, LLC | Interest Rate and Fees Collected | Debtor Homecomings Financial LLC originated the loan on May 23, 2008. Debtor GMAC Mortgage purchased from Homecomings and transferred its interest to Fannie Mae on or about June 10, 2008. Debtor Homecomings Financial serviced the loan from May 23, 2008 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage LLC serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimant asserts "Mortgage Loan" as basis for claim in box 2 of the proof of claim form. Claimant asserts a claim for $7,500.00 in box 1 of the proof of claim form, and a secured claim for $66,266.34 in box 4 of the proof of claim form. Claimant attaches to the proof of claim a third party solicitation addressed to Claimant, which states that Claimant may be entitled to a refund by his mortgage lender for up to $7,500 because they may have been overcharged. Claimant also attached a copy of Claimant's October 2012 Monthly Account Statement, a copy of Claimant's homeowner's insurance policy and a copy of a "2012 Notice of Appraised Value" from Claimant's taxing authority.<br><br>Debtors have no liability for Claimant's assertion of overcharges because Claimant has proffered no evidence in support of the claim and Debtors found no evidence | 11, 12 |

40

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
|  |  |  | that Debtors charged any incorrect fees to the account. Debtors' records show Claimant was never in default on her account, and that no attorney fees, inspection or BPO fees were ever charged to the account. Furthermore, Debtors have no record of Claimant ever disputing amounts charged to their account. At the time of the servicing transfer to Ocwen Loan Servicing on February 16, 2013, the loan was due for February 2, 2013. |  |

41

## Exhibit B

ny-1203740

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)

EXHIBIT B

EIGHTY-NINTH OMNIBUS OBJECTION - REDUCE & ALLOW (BORROWER CLAIMS)

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reduced and Allowed Claim Amount | Modified Debtor Name and Case Number | Reason for Reduction and Allowance of Claim |
|---|---|---|---|---|---|---|---|---|
| 1 | Robert Kenneth Harris<br>909 Patton St<br>Westwego, LA 70094 | 1687 | 10/26/2012 | $0.00 Administrative Priority<br><br>$0.00 Administrative Secured<br><br>$45,999.45 Secured<br><br>$0.00 Priority<br><br>$0.00 General Unsecured | GMAC Mortgage, LLC<br><br>Case Number 12-12032 | $0.00 Administrative Priority<br><br>$0.00 Administrative Secured<br><br>$0.00 Secured<br><br>$0.00 Priority<br><br>$2,216.21 General Unsecured | GMAC Mortgage, LLC<br><br>Case Number 12-12032 | Debtors' eighty-ninth omnibus objection seeks to reduce and allow Claim No. 1687 to a general unsecured claim in the amount of $2,216.21 against GMAC Mortgage, LLC.<br><br>Claimant asserts "Mortgage/Note" as basis for claim in box 2 of the proof of claim form.  Claimant attaches to the claim  a March 2012 Mortgage Account Statement. Debtors sent Claimant a letter requesting additional information and documentation in support of claim on May 20, 2013. Claimant responded on June 24, 2013 asserting "GMAC claims that I didn't make any mortgage payments from October 2010 thru March 2011. Here is my proof where attempts were made to pay the mortgage payments, but were returned for no reasons. Claim amount is $2,154. 08 plus postage $62.13 = Total Claim $2216.21."<br><br>Home Loan Center, Inc. d/b/a LendingTree Loans originated the loan on March 2, 2006.  Debtor Homecomings Financial serviced the loan from April 17, 2006 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage LLC serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013. |
| 2 | Robert Kenneth Harris<br>909 Patton St<br>Westwego, LA 70094 | 1689 | 10/26/2012 | $0.00 Administrative Priority<br><br>$0.00 Administrative Secured<br><br>$108,609.46 Secured<br><br>$0.00 Priority<br><br>$0.00 General Unsecured | GMAC Mortgage, LLC<br><br>Case Number 12-12032 | $0.00 Administrative Priority<br><br>$0.00 Administrative Secured<br><br>$0.00 Secured<br><br>$0.00 Priority<br><br>$6,183.62 General Unsecured | GMAC Mortgage, LLC<br><br>Case Number 12-12032 | Debtors' eighty-ninth omnibus objection seeks to reduce and allow Claim No. 1689 in the amount of a $6,183.62 general unsecured claim against Debtor GMAC Mortgage, LLC.<br><br>Aegis Mortgage Corporation d/b/a UC Lending originated the loan on March 29, 2002.  Debtor Homecomings Financial serviced the loan from May 31, 2002 until servicing transferred to GMAC Mortgage, LLC on or about (July 1, 2009). GMAC Mortgage LLC serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimant asserts "Mortgage/Note" as basis for claim in box 2 of the proof of claim form.  Claimant attaches to the proof of claim  a March 2012 Mortgage Account Statement.  On May 20, 2013, Debtors sent to Claimant a letter requesting additional information and documentation in support of claim. Claimant responded on  June 24, 2013 asserting "GMAC claimed they paid my property taxes in 2009. I paid my own tax, which was due by [12/31/09]. They set up an escrow account for me. When I didn't pay the new mortgage payment they they retain Mr Dean Morris whom began Foreclosure proceedings. It costs me $7365.63 to have my property reinstated [proof will be mailed at a later date]. Claim amount due $6133.62 plus postage $50.00 = Total Claim $6183.62." |
| 3 | JOHNNY H MADDOX<br>165 IMOGENE STREET<br>PRATTVILLE, AL 36067 | 786 | 09/27/2012 | $0.00 Administrative Priority<br><br>$0.00 Administrative Secured<br><br>Unliquidated Secured<br><br>$0.00 Priority<br><br>Unliquidated General Unsecured | GMAC Mortgage, LLC<br><br>Case Number 12-12032 | $0.00 Administrative Priority<br><br>$0.00 Administrative Secured<br><br>$0.00 Secured<br><br>$0.00 Priority<br><br>$1,243.21 General Unsecured | GMAC Mortgage, LLC<br><br>Case Number 12-12032 | Debtors' eighty-ninth omnibus objection seeks to reduce and allow Claim No. 786 in the amount of a $1,243.21 general unsecured claim against Debtor GMAC Mortgage, LLC.<br><br>Claimant asserts "Balance Owed Equity Line GMAC Home Mortgage" as basis for claim in box 2 of the proof of claim form.  The asserted amount of the claim as stated on the face of the proof of claim form is "$1,200 (approx)". Claimant attaches to the proof of claim a letter asserting Debtors froze his account without notice, and that he wants access to the remaining balance of "$900-$1,200".  On June 21, 2013, Debtors sent to Claimant a letter requesting additional information and documentation in support of claim. Claimant responded on  July 22, 2013 claiming that he wants the remaining undrawn balance of his line; however, Claimant does not specify how much that is.<br><br>Debtors' records show Claimant had a heloc with a  $83,000 draw limit. At the time Debtors' froze the line in May 2012, Claimant's unpaid principal balance was $81,756.79, or $1,243.21 less than the $83,000 draw limit. Accordingly, Debtors seek to reduce & allow Claim No. 786 in the amount of a $1,243.21 general unsecured claim against Debtor GMAC Mortgage, LLC.<br><br>Quiken Loans Inc. originated the loan on December 10, 2003.  Debtor GMAC Mortgage LLC serviced the loan from January 14, 2004 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013. |
| 4 | BERT M EDWARDS<br>ATT AT LAW<br>119 S 7TH ST FL 2<br>LOUISVILLE, KY 40202 | 679 | 09/24/2012 | $0.00 Administrative Priority<br>$0.00 Administrative Secured<br>$0.00 Secured<br>$0.00 Priority<br>$5,985.74 General Unsecured | GMAC Mortgage, LLC<br><br>Case Number 12-12032 | $0.00 Administrative Priority<br>$0.00 Administrative Secured<br>$0.00 Secured<br>$0.00 Priority<br>$2,685.34 General Unsecured | GMAC Mortgage, LLC<br><br>Case Number 12-12032 | Debtors' eighty-ninth omnibus objection seeks to reduce and allow Claim No. 679 in the amount of a $2,685.34 general unsecured claim against Debtor GMAC Mortgage, LLC.<br><br>Claimant asserts "failure to promptly and properly process a tendered payoff" as basis for claim in box 2 of the proof of claim form.  Claimant's claim amount is asserted at $5,985.74. On June 21, 2013, Debtors sent to Claimant a letter requesting additional information and documentation in support of claim. Claimant responded on  July 23, 2013 asserting "the balance due me now on this claim is $2,685.34." |