**Hearing Date: November 18, 2015 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: October 16, 2015 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
250 West 55th St.
New York, NY 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett

*Counsel for the ResCap Borrower Claims
Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------- )
In re:                                                          )    Case No. 12-12020 (MG)
                                                                )
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,                        )    Chapter 11
                                                                )
                                    Debtors.                    )    Jointly Administered
                                                                )
--------------------------------------------------------------- )

**RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM NOS. 3734 AND
3735 FILED BY JACQUELYN O. WIELAND, TTE OF MARSHELL O. CULTON REV.
<u>LIVING TRUST</u>**

# TABLE OF CONTENTS

                                                                                    **Page**

PRELIMINARY STATEMENT ............................................................................................1

JURISDICTION, VENUE, AND STATUTORY PREDICATE ....................................................2

BACKGROUND ...........................................................................................................3

RELIEF REQUESTED .....................................................................................................4

OBJECTION ................................................................................................................5

ARGUMENT ..............................................................................................................10

    Breach of Contract.........................................................................................10

    Fraud/Intentional Misrepresentation .................................................................13

    Negligent Misrepresentation ............................................................................15

    Wrongful Foreclosure .....................................................................................16

    Claims Against ETS ........................................................................................18

    Punitive Damages Claims.................................................................................19

CONCLUSION ............................................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

3W s.a.m. tout bois v. Rocklin Forest Prods., Inc.,
    No. 2:10-cv-01070-MCE-KJN, 2011 WL 489735 (E.D. Cal. Feb. 7, 2011) ......................... 15

Aguinaldo v. Ocwen Loan Servicing, LLC,
    No. 5:12-cv-01393-EJD, 2012 WL 3835080 (N.D. Cal. Sept. 4, 2012) .......................... 14, 15

Anderson v. Deloitte & Touche LLP,
    66 Cal. Rptr. 2d 512 (Cal. Ct. App. 1997) ............................................................... 13

CDF Firefighters v. Maldonado,
    70 Cal. Rptr. 3d 667 (Cal. Ct. App. 5th Dist. 2008) ..................................................... 11

Comm. on Children's Television, Inc. v. Gen. Foods Corp.,
    673 P. 2d 660 (Cal. 1983) ......................................................................................... 13

Conrad v. Bank of Am. Nat'l Trust & Savs. Ass'n,
    53 Cal. Rptr. 2d 336 (Cal. Ct. App. 1996) ............................................................... 13

Feinberg v. Bank of N.Y. (In re Feinberg),
    442 B.R. 215 (Bankr. S.D.N.Y. 2010) ...................................................................... 5

Knapp v. Doherty,
    20 Cal. Rptr. 3d 1 (Cal. Ct. App. 2004) .................................................................... 17

Kachlon v. Markowitz,
    85 Cal. Rptr. 3d 532 (Cal. Ct. App. 2008) .......................................................... 18, 19

Lazar v. Super. Ct. of Los Angeles Cty.,
    909 P.2d 981 (Cal. 1996) ......................................................................................... 14

Miles v. Deutsche Bank Nat'l Trust Co.,
    186 Cal. Rptr. 3d 625 (Cal. Ct. App. 2015) ............................................................. 17

Praetorian Ins. Co. v. Dunnion Law Firm,
    No. F066590, 2014 WL 811488 (Cal. Ct. App. Mar. 3, 2014) ................................. 15

Rockridge Trust v. Wells Fargo, N.A.,
    985 F. Supp. 2d 1110 (N.D. Cal. 2013) .................................................................... 17

Rubio v. JPMorgan Chase Bank, N.A.,
    No. B243639, 2013 WL 6529325 (Cal. Ct. App. Dec. 13, 2013) ............................. 16

ii

Secrest v. Sec. Nat'l Mortg. Loan Trust 2002-2,
    84 Cal. Rptr. 3d 275 (Cal. Ct. App. 2008)......................................................11, 12

Tarmann v. State Farm Mut. Auto. Ins. Co.,
    2 Cal. Rptr. 2d 861 (Cal. Ct. App. 1991).............................................................14

Thrifty Payless, Inc. v. Americana at Brand, LLC,
    160 Cal. Rptr. 3d 718 (Cal. Ct. App. 2013).........................................................15

Union Planters Bank, N.A. v. Gavel,
    2002 WL 975675 (E.D. La. May 9, 2002) .............................................................7

Vuki v. Super. Ct. of Orange Cty.,
    117 Cal. Rptr. 3d 86 (Cal. Ct. App. 2010)...........................................................17

Wells Fargo Bank, N.A. v. Clark,
    NO. 6: 11-cv-06248-HO,2012 WL 4794156 (D. Or. Oct. 5, 2012) ......................7

Wilhelm v. Pray, Price, Williams & Russell,
    231 Cal. Rptr. 355 (Cal. Ct. App. 1986)..............................................................13

STATUTES

11 U.S.C. 502(b)(1) ...............................................................................................5

11 U.S.C. §502(a) ...................................................................................................5

15 U.S.C. § 6802 .....................................................................................................7

Cal. Civ. Code § 1624(a)(3) ............................................................................11, 13

Cal. Civ. Code § 2922 ...........................................................................................11

Cal. Civ. Code § 2924(d).......................................................................................18

OTHER AUTHORITIES

12 C.F.R. 1016.3(e)(1) ............................................................................................7

12 C.F.R. 1016.15(a)(2)(v).......................................................................................7

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the Chapter 11 plan confirmed in the above captioned bankruptcy cases (the "Chapter 11 Cases") [Docket No. 6065], as successor in interest to the above captioned debtors (collectively, the "Debtors") with respect to Borrower Claims (as defined below), hereby submits this objection (the "Objection") seeking to disallow and expunge, without leave to amend, (i) proof of claim no. 3734 (the "ETS Claim") filed by Jacquelyn O. Wieland, TTE of Marshell O. Culton Rev. Living Trust (the "Claimant") against Debtor Executive Trustee Services, LLC ("ETS") for $1,566,415.00 and (ii) proof of claim no. 3735 (the "GMACM Claim", and with the ETS Claim, the "Claims") filed by the Claimant against Debtor GMAC Mortgage, LLC ("GMACM") for $1,566,415.00  pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), on the grounds that the Claims fail to state a basis for liability against the Debtors.[1]  The Borrower Trust seeks entry of an order substantially in the form annexed hereto as Exhibit 1 (the "Proposed Order") granting the requested relief.  In support of the Objection, the Borrower Trust submits the declaration of Sara Lathrop, Senior Claims Analyst for the Borrower Trust, attached hereto as Exhibit 2 ("Lathrop Decl.").

## PRELIMINARY STATEMENT

1.    The Borrower Trust examined the Claims and the statements and exhibits submitted in support thereof.  Copies of the Claims are attached hereto as Exhibit 3. The asserted basis for the Debtors' liability is litigation filed in the Superior Court of

---

[1]    The Borrower Trust reserves all of its rights to object on any other basis to the Claim not set forth in this Objection, and the Borrower Trust reserves all of its rights to amend this Objection should any further bases come to light.

California, Los Angeles County, Case No. GC-048550 (the "Lawsuit"), asserting causes of

action against GMACM, ETS, and other non-Debtor parties for breach of contract, fraud,

intentional misrepresentation, negligent misrepresentation, and wrongful foreclosure.  The

Borrower Trust conducted an exhaustive examination of the Debtors' books and records to

assess the allegations made in the Claim and the Diligence Response (defined herein), and

determined that the Claimant's allegations of liability are without merit.

       2.      The Claimant's causes of action fail because, even if assumed to be

true, the allegations in the Lawsuit cannot support the causes of action asserted under

California law.  For example, the Claimant's breach of contract cause of action is barred by

the statute of frauds because the alleged contract was not memorialized in writing and

signed by the parties.  Similarly, the Claimant's fraud claim fails because the allegations of

intent are conclusory and not supported by any specific factual allegations.  Furthermore,

the allegations made by the Claimant involve a purported promise by the Debtors to perform

a future action, and therefore cannot support a claim for negligent misrepresentation.

Finally, the Claimant's wrongful foreclosure claim fails because California law does not

allow for a private right of action for the alleged procedural defect.  As a result, the Claims

fail to assert valid prepetition claims against the Debtors' estates and should be disallowed

and expunged.

## JURISDICTION, VENUE, AND STATUTORY PREDICATE

       3.      This Court has jurisdiction over this Objection under 28 U.S.C.

§ 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before

this Court under 28 U.S.C. §§ 1408 and 1409.

       4.      The statutory predicates for the relief requested herein are section

502(b) of the Bankruptcy Code and Bankruptcy Rule 3007(a).

ny-1200763

## BACKGROUND

5.    On May 14, 2012, each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code.  These Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

6.    On May 16, 2012, the Court entered an order [Docket No. 96] appointing Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in these Chapter 11 Cases.  Among other things, KCC is authorized to (a) receive, maintain, and record and otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain the official claims register for the Debtors (the "Claims Register").

7.    On November 8, 2012, the Claimant filed the Claims.  See Claims.

8.    On March 21, 2013, this Court entered an order approving procedures for the filing of objections to proofs of claim filed in these Chapter 11 Cases [Docket No. 3294] (the "Procedures Order").  The Procedures Order includes specific protections for Borrowers[2] and sets forth a process for the Debtors to follow before objecting to certain categories of Borrower Claims (the "Borrower Claim Procedures").

9.    The Debtors sent Request Letters to certain Borrowers, including the Claimant, requesting additional documentation in support of their claims.  See Lathrop Decl. ¶ 4.  The Request Letters state that the claimant must respond within 30 days with an explanation that states the legal and factual reasons why the claimant believes he is owed money or is entitled to other relief from the Debtors, and the claimant must provide copies of any and all documentation that the claimant believes supports the basis for his claim. The Request Letters further state that if the claimant does not provide the requested

---

[2]    As used herein, the terms "Borrower" and "Borrower Claims" have the meanings ascribed to them in the Plan (defined below).

3

explanation and supporting documentation within 30 days, the Debtors may file a formal

objection to the claimant's claim, seeking to have the claim disallowed and permanently

expunged.  A Request Letter was sent to the Claimant and the Debtors received a response

(the "Diligence Response") on July 22, 2013, a copy of which is attached to the Lathrop

Decl. as Exhibit A.

            10.    On December 11, 2013, the Court entered the *Order Confirming*

*Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the*

*Official Committee of Unsecured Creditors* (the "Confirmation Order") approving the terms

of the Chapter 11 plan, as amended (the "Plan"), filed in these Chapter 11 cases [Docket No.

6065]. On December 17, 2013, the Effective Date (as defined in the Plan) of the Plan

occurred [Docket No. 6137].

            11.    The Plan provides for the creation and implementation of the Borrower

Trust, which is established for the benefit of Borrowers who filed claims to the extent such

claims are ultimately allowed either through settlement or pursuant to an Order of the Court.

See Plan, Art. IV.F. The Borrower Trust was established to, among other things, "(i) direct

the processing, liquidation and payment of the Allowed Borrower Claims in accordance

with the Plan, and the distribution procedures established under the Borrower Claims Trust

Agreement, and (ii) preserve, hold, and manage the assets of the Borrower Claims Trust for

use in satisfying the Allowed Borrower Claims."  See id.

## RELIEF REQUESTED

            12.    The Borrower Trust files this Objection, pursuant to Bankruptcy Code

section 502(b) and Bankruptcy Rule 3007, and seeks entry of an order, substantially in the

form annexed hereto as Exhibit 1, disallowing and expunging the Claim with prejudice from

the Claims Register.

<center>4</center>

**OBJECTION**

13.     A filed proof of claim is "deemed allowed, unless a party in interest …

objects."  11 U.S.C. §502(a).  Section 502(b)(1) of the Bankruptcy Code provides, in

relevant part, that a claim may not be allowed to the extent that "such claim is

unenforceable against the debtor and property of the debtor, under any agreement or

applicable law…." 11 U.S.C. 502(b)(1).  Furthermore, the burden of persuasion once an

objection refutes an essential allegation of the claim is on the holder of a proof of claim to

establish a valid claim against a debtor by a preponderance of the evidence.  Feinberg v.

Bank of N.Y. (In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010).

**BACKGROUND FACTS**

14.     On April 30, 2007, non-Debtor MortgageIT, Inc. ("MortgageIT")

originated a loan  (the "Loan") to Marshall O. Culton ("Culton"), evidenced by a note (the

"Note") and secured by a deed of trust (the "Deed of Trust") on property located at 830

West Orange Grove Ave., Arcadia, CA 91006 (the "Property"). Copies of the Note and the

Deed of Trust are attached to the Lathrop Decl. as Exhibit B and Exhibit C, respectively. On

or around July 1, 2007, the Loan was transferred to HSBC Bank USA, National Association,

as Trustee ("HSBC").  See Lathrop Decl. ¶ 5.

15.     GMACM subserviced the Loan for HSBC from May 11, 2007 until the

foreclosure of the Property on January 29, 2010.  See Lathrop Decl. ¶ 6 .  On March 31,

2009, ETS recorded a Substitution of Trustee (the "Substitution of Trustee").  See

Substitution of Trustee, attached to the Lathrop Decl. as Exhibit D.

16.     Culton defaulted on the loan when she failed to make the September

2008 payment.  See Servicing Notes, attached to the Lathrop Decl. as Exhibit E.  The

5

ny-1200763

Property was referred to foreclosure on March 23, 2009 as the account was owing for the

November 2008 through March 2009 payments.  See id.  On March 31, 2009, after the

Substitution of Trustee was recorded, ETS recorded a Notice of Default and Election To

Sell Under Deed of Trust (the "Notice of Default").  See Notice of Default, attached to the

Lathrop Decl. as Exhibit F.

17.    On July 2, 2009, the Debtors recorded a Notice of Trustee's Sale,

setting the date of the foreclosure sale for July 27, 2009 (the "Notice of Sale" and with the

Notice of Default, the "Notices").  See Notice of Sale, attached to the Lathrop Decl. as

Exhibit G.

18.    On July 10, 2009, Culton spoke with the Debtors via phone and

discussed setting up a six month forbearance plan.  See Servicing Notes at 30 of 53.  On

July 15, 2009, after confirming that Culton could afford the forbearance payments, the

Debtors set up the six month forbearance plan (the "Forbearance Plan") on Culton's

account.  See id at 28.  The monthly payment under the Forbearance plan was $3,353.89,

compared to Culton's regular monthly payment of $3,605.43.  See Forbearance Plan

Agreement, attached to the Lathrop Decl. as Exhibit H.

19.    On September 17, 2009, Culton spoke with the Debtors via phone and

advised that she would like the Forbearance Plan to be converted to a HAMP Plan.  See

Servicing Notes at 23.  The Debtors approved Culton for a HAMP Trial Plan (the "HAMP

Trial Plan"), and Culton executed the related documents that same day.  See HAMP Trial

Plan, attached hereto as Exhibit I.  The HAMP Trial Plan stated that Culton would make

payments of $2,790 by the 26th day of September, October, November, and December 2009.

ny-1200763

See id.  The HAMP Trial Plan also stated that there is no grace period during the agreement.

See id.  Once the HAMP Trial Plan was completed, the Debtors would review the account

for a permanent HAMP modification.[3]  See Lathrop Decl. ¶ 10.

20.    The Debtors received payments pursuant to the HAMP Trial Plan on

September 22, 2009, October 22, 2009, and November 24, 2009.  See Servicing Notes at 2

of 53.

21.    On December 10, 2009, the Debtors received a call from Robert

Wieland who advised that Culton had passed away in November and that the Claimant was

the executrix of her estate.  See Servicing Notes at 21 of 53.  The Debtors advised Mr.

Wieland that executorship documents and a death certificate needed to be sent to the

Debtors' assumptions department.[4]  See id.

22.    On December 29, 2009, the Debtors received a death certificate but did

not receive the executorship documents.  See id.

---

[3] Because the HAMP program was still new at this time, the Debtors' systems were not yet capable of setting up trial plans.  As a result, the Debtors would provide borrowers with a plan that included a balloon payment, but the borrower would not have been expected to make the payment.  Rather, once the four trial payments were completed, the account would be reviewed for a permanent modification.  See Lathrop Decl. n. 3.

[4] The Gramm-Leach-Bliley Act (the "GLBA"), a federal privacy law, prevents the disclosure of private account information to unauthorized third parties.  See 15 U.S.C. § 6802; see also Wells Fargo Bank, N.A. v. Clark, NO. 6: 11-cv-06248-HO, 2012 WL 4794156, at *3 (D. Or. Oct. 5, 2012) ("A financial institution is legally prohibited from disclosing nonpublic personal information to a non-affiliated third party."); Union Planters Bank, N.A. v. Gavel, 2002 WL 975675, *2 (E.D. La. May 9, 2002) ("The GLBA clearly prohibits the disclosure of non-public information to third parties unless the consumer is given the opportunity, before the time that information is disclosed, to direct that the information not be disclosed to said third party.")  While the GLBA does permit disclosure directly to a consumer, defined to include an individual's legal representative (such as an executor of an estate), see 12 C.F.R. 1016.3(e)(1), a financial institution would first need to confirm that the third party claiming to be an executor is actually the executor of the estate.  Additionally, while the GLBA permits disclosure "[t]o persons acting in a fiduciary or representative capacity on behalf of the customer," see 12 C.F.R. 1016.15(a)(2)(v), a financial institution would also have to confirm the third party's representative status.  Thus, it was the Debtors' policy to require proof of a third party's status to act in a representative capacity for a borrower.  In accordance with this policy, the Debtors required that Mr. Wieland provide proof that he was an authorized party on the account before their representatives could provide account information to him.  See Lathrop Decl. n. 4.

23.     On January 8, 2010, the HAMP Trial Plan was cancelled because the
Debtors did not receive the payment due on December 26, 2009.  <u>See</u> Servicing Notes at 20
of 53.  As a result, the Debtors resumed the foreclosure process.  <u>See</u> <u>id</u>.

24.     On January 13, 2010, the Debtors spoke with Robert Wieland via
phone, at which time the Debtors again advised Mr. Wieland that he needed to provide
executorship papers identifying the person who was the authorized representative of the
Culton estate, and that until such paperwork was received, the Debtors were not authorized
to discuss the account with any third party.  <u>See</u> <u>id</u>. at 19 of 53.

25.     On January 18, 2010, the Debtors again spoke to Mr. Wieland via
phone, at which time Mr. Wieland stated he is trying to become authorized on the account.
<u>See</u> Servicing Notes at 18 of 53.  During the phone call, the Debtors once again advised Mr.
Wieland that the Debtors required a proof of executorship or a notarized will in order to
authorize him on the Culton account.  <u>See</u> <u>id</u>.

26.     The Debtors spoke to Mr. Wieland via phone again on January 26,
2010, at which time Mr. Wieland asked about possible arrangements to stop the foreclosure
sale.  <u>See</u> Servicing Notes at 16 of 53.  During that call, the Debtors again advised him that
they could not discuss the account with him because he was not an authorized party on the
account and that he would need to send in executorship papers.  <u>See</u> <u>id</u>.

27.     There is nothing in the Debtors' books and records to indicate that the
Debtors promised Mr. Wieland that foreclosure activity would be suspended, nor could the
Debtors have discussed such a topic with Mr. Wieland because he was not an authorized
party on the account.  <u>See</u> Lathrop Decl. ¶ 17.

8

28.     On January 28, 2010, the Property was sold in a foreclosure sale to a third party for $1,071,000.  See Trustee's Deed Upon Sale, attached to the Lathrop Decl. as Exhibit J.  At the time of the foreclosure sale, the account was owing for the February 2009 through January 2010 payments and the unpaid debt was $1,084,755.27.[5]  See Claims Balance, attached to the Lathrop Decl. as Exhibit K.

29.     On January 29, February 2, and February 9, 2010, the Debtors received calls from Mr. Wieland, Diane Monzeta, and Jacqueline Wieland, respectively, each asking to discuss the account.  See Servicing Notes at 8-12 of 53.  On each occasion, the Debtors informed the person calling that executorship paperwork needed to be submitted before the Debtors could discuss the account.  See id.

30.     On June 11, 2010, the Debtors received a copy of Culton's will naming Jacqueline Wieland as Culton's personal representative.[6]  See Servicing Notes at 6 of 53.

31.     On December 7, 2011, the Claimant filed a complaint against GMACM and ETS and non-Debtor Mortgage Electronic Research Services ("MERS") in the State Court.  See State Court Docket, attached to the Lathrop Decl. as Exhibit L.  The Claimant filed an amended complaint on March 7, 2012. On May 24, 2012, the Debtors filed a notice of bankruptcy in the State Court, staying all causes of action against the Debtors.  See State Court Docket.

---

[5] The total amount owed included a loan balance of $1,003,905.30, principal and interest advances of $49,218.32, an escrow balance of $28,516.92, and other fees and advances totaling $3,114.73.  See Claims Balance.
[6] Personal Representative is an umbrella term under the California Probate Code that includes executors of estates. Cal. Probate Code Section 20-88.50(a).

9

32.    The Claimant filed a second amended complaint on July 5, 2012 (the "Second Amended Complaint").  In the Second Amended Complaint, the Claimant asserted causes of action against GMACM, MERS, HSBC and Deutsche Bank AG ("Deutsche") for breach of contract, fraud, intentional misrepresentation and negligent misrepresentation and against GMACM, ETS, MERS, HSBC, and Deutsche for wrongful foreclosure.  See Second Amended Complaint, attached to the Proofs of Claim.

33.    On December 3, 2012, the Claimant improperly filed a third amended complaint (the "Third Amended Complaint") without leave from the State Court.  See State Court Docket.  The Third Amended Complaint asserted a cause of action for breach of contract against GMACM, MortgageIT, Deutsche, HSBC, and MERS and causes of action for fraud, intentional misrepresentation, and negligent misrepresentation against GMACM, MortgageIT, Deutsche, HSBC, MERS, and ETS.  See Third Amended Complaint, attached to the Diligence Response.[7]

34.    On March 7, 2013, the State Court entered a judgment of dismissal with prejudice on all counts against MERS, HSBC, and Deutsche.  See Judgment of Dismissal, attached hereto as Exhibit 4.

## **ARGUMENT**

*Breach of Contract*

35.    The Claimant has pled a cause of action described as a breach of a written contract that is premised on the cancellation of the HAMP Trial Plan after GMACM allegedly promised to suspend its foreclosure activity.  See Second Amended Complaint ¶

---

[7] Because the causes of action in the Second Amended Complaint and the Third Amended Complaint are different, the Borrower Trust will address all of the allegations made in both complaints.

ny-1200763

46; Third Amended Complaint ¶ 59.  However, in reality, the Claimant is actually asserting

a cause of action for breach of an alleged <u>oral</u> agreement to modify the HAMP Trial Plan, as

she is asserting that the Debtors' representative made an oral promise not to foreclose on the

Property even if the Claimant did not perform under the HAMP Trial Plan.

36.    "A cause of action for breach of contract requires proof of the

following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for

nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the

breach."  <u>CDF Firefighters v. Maldonado</u>, 70 Cal. Rptr. 3d 667, 679 (Cal. Ct. App. 5th Dist.

2008).  In accordance with the statute of frauds, an agreement for the sale of real property or

an interest in real property must be in writing and signed by the party to be charged or by

the party's agent.  <u>See</u> Cal. Civ. Code § 1624(a)(3) (stating the statute of frauds); <u>see</u> <u>also</u>

Cal. Civ. Code § 2922 (a "mortgage can be created, renewed, or extended, only by writing

executed with the formalities required in the case of a grant of real property.").

37.    "An agreement to modify a contract that is subject to the statute of

frauds is also subject to the statute of frauds…."  <u>Secrest v. Sec. Nat'l Mortg. Loan Trust</u>

<u>2002-2</u>, 84 Cal. Rptr. 3d 275, 282 (Cal. Ct. App. 2008).  Thus, "an agreement by which a

lender agreed to forbear from exercising the right of foreclosure under a deed of trust

securing an interest in real property comes within the statute of frauds."  <u>Id</u>. at 277.  In

<u>Secrest</u>, a case with facts very similar to the allegations made by the Claimant, the plaintiff

entered into a loan forbearance agreement with their lender.  <u>See</u> <u>Secrest</u>, 84 Cal. Rptr. 3d at

279.  When the plaintiffs defaulted on the forbearance agreement, the plaintiffs signed

another forbearance agreement.  <u>Id</u>.  At the time of the second forbearance agreement, the

lender's representative told the plaintiffs that he "would immediately stop all collection

11

efforts," among other things. However, the lender never signed the second forbearance agreement, and the court determined that it was not an enforceable contract under the statute of frauds.  Id.

38.    Here, the Claimant alleges that GMACM breached a contract (the oral agreement not to foreclose) when it cancelled the HAMP Trial Plan and initiated the foreclosure process.  To the extent the Claimant asserts that the cancellation of the HAMP Trial Plan was a breach of the HAMP Trial Plan, this allegation is incorrect, as there was nothing in the HAMP Trial Plan that prevented the Debtors from cancelling it and continuing with foreclosure if payments under the HAMP Trial Plan were not made.  The initiation of foreclosure also cannot be the basis for a breach of the alleged oral agreement because such a promise would be a modification to the Note and Deed of Trust, it is not enforceable under the statute of frauds unless it is written and executed by both parties.  The Claimant never alleges that the purported promise not to foreclose was ever memorialized in writing and signed by GMACM.  Therefore, the breach of contract cause of action fails for the same reasons as in Secrest.

39.    In fact, the Claimant has provided even less evidence of this alleged "contract" than was provided in Secrest, because in Secrest the plaintiff provided the court with an unexecuted version of the agreement.  Here, the Claimant has provided nothing to support her allegation of the alleged oral promise, which is not supported by the Debtors' books and records.[8]  Nevertheless, even assuming the allegations regarding the alleged oral promise are true (which they are not), the law in California is clear that a breach of contract

---

[8] Additionally, such a promise would have violated the Debtors' obligations to preserve the private account information because the Claimant and Mr. Wieland were not authorized third parties.

ny-1200763

cause of action cannot be premised on an oral promise if such a contract is unenforceable

under the statute of frauds.  See Cal. Civ. Code § 1624(a)(3).  As a result, the Claimant's

breach of contract cause of action must fail.

*Fraud/Intentional Misrepresentation*

       40.     The Claimant also asserts causes of action for fraud and intentional

misrepresentation based on GMACM's alleged promise not to foreclose.  Fraud and

intentional misrepresentation encompass only one cause of action under California law, and

thus the Borrower Trust treats these causes of action as one and the same.  "The elements of

intentional misrepresentation, or actual fraud, are (1) misrepresentation (false

representation, concealment or nondisclosure); (2)  knowledge of falsity (scienter),

(3)  intent to defraud (i.e., to induce reliance); (4)  justifiable reliance; and (5) resulting

damage."  Anderson v. Deloitte & Touche LLP, 66 Cal. Rptr. 2d 512, 515 (Cal. Ct. App.

1997) (citation omitted).  A fraud charge is easily made, but less often properly

substantiated.  Conrad v. Bank of Am. Nat'l Trust & Savs. Ass'n, 53 Cal. Rptr. 2d 336, 351

(Cal. Ct. App. 1996).

       41.     Fraud claims are not subject to the general liberal construction policy

for pleading.  Wilhelm v. Pray, Price, Williams & Russell, 231 Cal. Rptr. 355, 358 (Cal. Ct.

App. 1986) ("allegations in a fraud action need not be liberally construed . . . [i]t is bad for

courts to allow and lawyers to use vague but artful fraud pleading simply to get a foot in the

courtroom door.") (citation omitted).  This is because fraud allegations "involve a serious

attack on character, and fairness to the defendant demands that he should receive the fullest

possible details of the charge to prepare his defense."  Comm. on Children's Television,

Inc. v. Gen. Foods Corp., 673 P. 2d 660, 672 (Cal. 1983).  It is well-settled that fraud must

be pled with specificity.  <u>Lazar v. Super. Ct. of Los Angeles Cty.</u>, 909 P.2d 981, 989 (Cal.

1996).  Fraud allegations must describe the misrepresentations in detail, and allege "facts

that show how, when, where, to whom, and by what means the representations were

tendered."  <u>Id</u>.  (citation omitted).

42.     When a party asserts a fraud claim against a corporate entity, such as

GMACM or ETS, it must allege the individual(s)' names that made such misrepresentations,

their authority to speak for the corporation, to whom they spoke, what they said or wrote,

and when it was said or written.  <u>Tarmann v. State Farm Mut. Auto. Ins. Co.</u>, 2 Cal. Rptr. 2d

861, 862 (Cal. Ct. App. 1991) (holding that where plaintiff does not allege the name of the

corporate agent that made the alleged misrepresentations, the plaintiff did not state a claim

for fraud).  Here, the Claimant merely alleges the date of the purported conversations, but

she does not allege the name of the individual that supposedly made said

misrepresentations.  Thus, the Claimant has failed to allege a sufficient fraud claim under

the pleading requirements for fraud.

43.     Further, "[b]roken promises may be actionable as fraud, but the

plaintiff must allege with specificity that the promisor did not intend to perform at the time

the promise was made."  <u>Aguinaldo v. Ocwen Loan Servicing, LLC</u>, No. 5:12-cv-01393-

EJD, 2012 WL 3835080, at *5 (N.D. Cal. Sept. 4, 2012).  Here, the Claimant makes

conclusory allegations that "[w]hen Defendant GMAC made these representations to

Plaintiff, GMAC knew them to be false and made these representations with the intention to

deceive and defraud Plaintiff and to induce Plaintiff to act in reliance on these

representations in the manner hereafter alleged."  <u>See</u> Second Amended Complaint ¶ 59,

Third Amended Complaint ¶ 74-75.  Courts have held that where plaintiffs do not

14

*specifically show* why they believe that a company or its employees did not intend to perform the alleged promise, such allegations are insufficient to meet the heightened pleading standards. See Aguinaldo, 2012 WL 3835080, at *5-6 (holding that conclusive statements that a loan servicer knew its promise not to foreclose was not true and was made with an intent to deceive was not sufficient to meet the pleading standard for fraud); 3W s.a.m. tout bois v. Rocklin Forest Prods, Inc., No. 2:10-cv-01070-MCE-KJN, 2011 WL 489735, at *4 (E.D. Cal. Feb. 7, 2011) ("A conclusory statement without specific facts pled to show why Plaintiff believed Defendant intended never to pay for the goods does not satisfy the heightened pleading requirement.") Thus, because the Claimant does not provide any factual support for the conclusory allegation that the Debtors intended to deceive her, she has not met the heightened pleading standard for asserting a cause of action for fraud.

*Negligent Misrepresentation*

44.    The Claimant also asserts a cause of action for negligent misrepresentation. The elements of a cause of action for negligent misrepresentation are (1) the misrepresentation of **past or existing** material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage. See Thrifty Payless, Inc. v. Americana at Brand, LLC, 160 Cal. Rptr. 3d 718, 725 (Cal. Ct. App. 2013). Because a negligent misrepresentation claim requires an allegation of a misrepresentation of existing fact, courts have held that a negligent misrepresentation claim premised on an alleged false promise is not actionable. See Praetorian Ins. Co. v. Dunnion Law Firm, No. F066590, 2014 WL 811488, at *8 (Cal. Ct. App. Mar. 3, 2014) (holding that a promise to use the proceeds of the defendant's settlement to pay off the plaintiff's lien

could not be a negligent misrepresentation because it involved an allegedly fraudulent

promise); Rubio v. JPMorgan Chase Bank, N.A., No. B243639, 2013 WL 6529325, at *3

(Cal. Ct. App. Dec. 13, 2013) ("Although a false promise to perform in the future can be the

basis of an *intentional* misrepresentation claim, it cannot support a claim for *negligent*

misrepresentation.")

45.    Here, the Claimant alleges that, **prior** to becoming delinquent on the

HAMP Trial Plan, a representative of GMACM purportedly told Mr. Wieland that GMACM

would not proceed with foreclosure while the Claimant and GMACM determined how to

proceed after Culton's death.  See Third Amended Complaint ¶ 34.  Thus, because the

account was not in default at the time of the alleged misrepresentation, a promise not to

foreclose would not be a misrepresentation of a past or existing material fact, but rather a

future promise.   As a result, the Claimant cannot state a cause of action for negligent

misrepresentation.

*Wrongful Foreclosure*

46.    In the Second Amended Complaint, the Claimant asserts a cause of

action for wrongful foreclosure premised on two theories: (1) the Notice of Default did not

comply with Cal. Civ. Code § 2923.52 and (2) the sale price at the trustee sale was

inadequate.[9]  See Second Amended Complaint ¶¶ 66-75.  The Claimant cannot recover

under either of these theories.

47.    Cal. Civ. Code § 2923.52 was instituted by the California legislature in

2008 in response to the foreclosure crisis.  However, courts in California have held that

---

[9] The Third Amended Complaint does not include a wrongful foreclosure count.

ny-1200763

§2923.52 did not create a private right of action.  See Rockridge Trust v. Wells Fargo, N.A.,

985 F. Supp. 2d 1110, 1154 (N.D. Cal. 2013) ("Former § 2923.52 did not create a private

right of action."); Vuki v. Super. Ct. of Orange Cty., 117 Cal. Rptr. 3d 86, 87 (Cal. Ct. App.

2010) (holding that § 2923.52 does not provide for a private right of action because

enforcement of the statute is committed to the relevant commissioner).  Thus, as a private

litigant, the Claimant cannot assert a cause of action for wrongful foreclosure premised on a

violation of Cal. Civ. Code § 2923.52.

      48.    The Claimant's second theory of wrongful foreclosure - that the sale

price was insufficient - is not grounds for a cause of action of wrongful foreclosure.  In

California, the "elements of a cause of action for wrongful foreclosure track the elements of

an equitable cause of action to set aside a foreclosure sale."  See Miles v. Deutsche Bank

Nat'l Trust Co., 186 Cal. Rptr. 3d 625, 636 (Cal. Ct. App. 2015).  Courts in California have

held that "a great disparity between the foreclosure price and the value of the property, by

itself, is insufficient to set aside the sale.  Inadequate price, even coupled with procedural

irregularity, does not automatically render a trustee's sale subject to attack."  Knapp v.

Doherty, 20 Cal. Rptr. 3d 1, 14 (Cal. Ct. App. 2004) (internal citation omitted).  In Knapp,

the court held that plaintiff's allegations of inadequate sale price, coupled with providing

sale notice too early, was not sufficient to set aside a foreclosure sale, as there was no

evidence that the "premature service of the notice of sale had any impact whatsoever on the

ultimate sale price."  See id.  The facts in this case are identical to Knapp, as the only

procedural irregularity alleged by the Claimant is that the notice of sale was provided to her

prematurely.  The Claimant has not alleged how she was prejudiced by this alleged

procedural error.  Thus, the Claimant has failed to assert a cause of action for wrongful foreclosure.

*Claims Against ETS*

49.    In addition to asserting the above causes of action against GMACM, the Claimant also asserts causes of action against ETS for wrongful foreclosure (in the Second Amended Complaint) and fraud, intentional misrepresentation, and negligent misrepresentation (in the Third Amended Complaint).  See ¶ 33 *supra*.  These causes of action are premised on the same allegations as those made against GMACM. However, in addition to failing to state a cause of action for fraud, intentional and negligent misrepresentation, and wrongful foreclosure for the reasons stated above, the Claimant's claim against ETS also fail because ETS' actions in filing the Notices are privileged under Cal. Civ. Code § 2924(d), and the fraud/misrepresentation causes of action do not assert a misrepresentation made by ETS.

50.    Non-judicial foreclosure documents are considered privileged under California Law.  See Cal. Civ. Code § 2924(d); see also *Memorandum Opinion and Order Sustaining the ResCap Borrower Claims Trust's Objection to Amended Claim No. 4445 Filed by Alan Moss* at 13-14, In re Residential Capital, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Aug. 24, 2015) [Docket No. 9052] (citing Kachlon v. Markowitz, 85 Cal. Rptr. 3d 532, 545 (Cal. Ct. App. 2008)).  The only exception to this privilege is when documents are published with actual malice, meaning "that the publication was motivated by hatred or ill will towards the plaintiff *or* a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard for the

18

ny-1200763

plaintiff's rights." See Kachlon v. Markowitz, 85 Cal. Rptr. 3d at 547 (internal quotations omitted).    Here, the Claimant has neither alleged that ETS acted with malice nor that it was aware of the alleged procedural deficiencies with the foreclosure sale or the alleged promise made by GMACM's representative.    As a result, ETS' actions as substitute trustee were privileged, and the claim against ETS should be disallowed and expunged.

51.    Additionally, the fraud/misrepresentation claims should also be expunged because none of those claims assert that ETS ever made any misrepresentation to the Claimant, or even interacted with the Claimant.    Thus, in addition to the reasons stated above, the Claimant's fraud/misrepresentation claims should be disallowed and expunged for failure to allege any wrongful action by ETS.

*Punitive Damages Claims*

52.    The Claims include $500,000 in asserted punitive damages. As this court has noted, an award of punitive damages in this case would not punish GMACM, but would merely reduce recoveries by other Borrowers with allowed claims. See *Memorandum Opinion and Order Determining the Amount of Allowed Claim of Frank and Christina Reed*, In re Residential Capital, LLC, Case No. 12-12020 (Bankr. S.D.N.Y. Oct. 6, 2014), [Docket No. 7619]; *Order Sustaining in Part and Overruling in Part ResCap Borrower Claims Trust's Objection to Claim Number 2397 Filed by John Satterwhite*, In re Residential Capital, LLC, Case No. 12-12020 (Bankr. S.D.N.Y. Apr. 7, 2016) [Docket No. 8432]. As a result, an award of punitive damages would harm the other borrowers in this case, making such an award inappropriate.    Therefore, the Court should not award punitive damages to the Claimant.

ny-1200763

## **CONCLUSION**

WHEREFORE, the Borrower Trust respectfully requests entry of the Proposed

Order granting the relief requested herein and such other and further relief as this Court may

deem proper.


Dated:  September 25, 2015
         New York, New York

<div style="margin-left:40%">

/s/  Norman S. Rosenbaum
_____
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett
MORRISON & FOERSTER LLP
250 West 55th St.
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900


*Counsel for the ResCap Borrower Claims Trust*

</div>

ny-1200763