1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 12-12020-mg

5   - - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7

8   RESIDENTIAL CAPITAL, LLC, et al.,

9

10              Debtors.

11

12   - - - - - - - - - - - - - - - - - - - - -x

13

14              United States Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              September 21, 2015

19              10:02 AM

20

21   B E F O R E:

22   HON. MARTIN GLENN

23   U.S. BANKRUPTCY JUDGE

24

25

1

2  Doc# 9147 Status Conference on ResCap Borrower Claims Trust's

3  Sixty-Ninth Omnibus Objection to Claims (No Liability Borrower

4  Claims) Solely as it Relates to the Claim Filed by Maurice

5  Sharpe.

6

7  Status Conference RE:  Claims of Elda and Maria Thompson.

8  Trial Set for 11/04/15 at 2:00 PM.

9

10  Status Conference Regarding Claims of Kristin Karmazyn.

11

12  Doc# 8819 Case Management and Scheduling Conference Regarding

13  Matters Involving the Trust and Duncan K. Robertson.

14  Telephonic Final Pre-Trial Conference Set for 11/4/2015 at 5:00

15  PM.  Trial Set for 11/09/2015 and 11/10/2015, Starting at 9:00

16  AM on Both Dates.

17

18

19

20  Transcribed by:  Aliza Chodoff

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

1

2  A P P E A R A N C E S :

3  MORRISON & FOERSTER LLP

4       Attorneys for the ResCap Borrower Claims Trust

5       250 West 55th Street

6       New York, NY 10019

7

8  BY:   JORDAN A. WISHNEW, ESQ.

9       ADAM LEWIS, ESQ. (TELEPHONICALLY)

10

11

12  ALDRIDGE PITE, LLP

13       Attorneys for ResCap Borrower Claims Trust

14       2 North Central Avenue

15       Suite 1135

16       Phoenix, AZ 85004

17

18  BY:   LAUREL I. HANDLEY, ESQ. (TELEPHONICALLY)

19

20

21

22

23

24

25

1

2   KENNETH M. LEWIS, ESQ.

3           Attorneys for Maurice Sharpe

4           120 Bloomingdale Road

5           Suite 100

6           White Plains, NY 10605

7

8   BY:   KENNETH M. LEWIS, ESQ.

9

10

11   DAVID J. WINTERON & ASSOCIATES, LTD.

12           Attorneys for Maurice Sharpe

13           1140 N Town Center Drive

14           Suite 120

15           Las Vegas, NV 89144

16

17   BY:   DAVID J. WINTERTON, ESQ. (TELEPHONICALLY)

18

19

20   ALSO PRESENT:

21           KRISTIN E. KARMAZYN, Party Pro Se (TELEPHONICALLY)

22           DUNCAN K. ROBERTSON, Party Pro Se (TELEPHONICALLY)

23           ELDA THOMPSON, Party Pro Se (TELEPHONICALLY)

24

25

1                    P R O C E E D I N G S

2           THE COURT:  All right.  Please be seated.  All right.

3   We're here in Residential Capital, number 12-12020.

4           Mr. Wishnew?

5           MR. WISHNEW:  Good morning, Your Honor.  Jordan --

6           THE COURT:  Good morning.

7           MR. WISHNEW:  -- Wishnew.

8           MS. HANDLEY:  Yes?

9           MR. WISHNEW:  Good morning, Your Honor.  Jordan

10  Wishnew of Morrison & Foerster for the ResCap Borrower Claims

11  Trust.

12          Your Honor, today's agenda

13  constitute this --  consists of four status conferences on some

14  outstanding claims objections both for the ResCap Borrower

15  Claims Trust and one dealing with the ResCap Liquidating Trust.

16          The first conference going forward today deals with

17  the claim of Maurice Sharpe, claim number 2079 being held by

18  the ResCap Borrower Claims Trust, and this dates back to the

19  Borrower Claims Trust's sixty-ninth omnibus objection.  I'll

20  let counsel for Mr. Sharpe be heard.

21          THE COURT:  All right.

22          MR. LEWIS:  Good morning, Your Honor.  Kenneth Lewis,

23  counsel for Mr. Sharpe.

24          THE COURT:  All right.  Is Colorado counsel or,

25  what -- Nevada counsel?

RESIDENTIAL CAPITAL, LLC, et al.                    6

1           MR. WISHNEW:  Your Honor.

2           MR. LEWIS:  Nevada counsel is on the phone as well.

3           THE COURT:  Could you identify yourself, please?

4           MS. HANDLEY:  Good morning, Your Honor.  This is

5    Laurel Handley with Aldridge Pite for the ResCap Borrower

6    Claims Trust.

7           THE COURT:  All right.  Anybody else on the phone?

8           MR. LEWIS:  I was told Mr. Winterton phoned in.

9           THE COURT:  Mr. Winterton, are you on the phone?

10          MR. WINTERTON:  Hello?

11          THE COURT:  Yes.

12          MR. WINTERTON:  Hello?

13          THE COURT:  Yes.  Can you hear us?

14          MR. WINTERTON:  Yes, I can.

15          THE COURT:  Please identify yourself.

16          MR. WINTERTON:  Yes, David Winterton on behalf of

17   Maurice Sharpe.

18          THE COURT:  Thank you, Mr. Winterton.

19          Okay.  Mr. Wishnew?

20          MR. WISHNEW:  Thank you, Your Honor.  Your Honor,

21   briefly, over the past few months, the Borrower Claims Trust

22   and Mr. Sharpe's counsel have tried -- or have been in

23   discussions concerning a possible settlement.  At this point,

24   notwithstanding those discussions, we have not been able to

25   reach a consensual resolution of this claim.  And so we have

1   worked with counsel to prepare a proposed case management and

2   scheduling order for Your Honor's consideration, which was

3   provided to chambers late last week.  If you like, I can go

4   through the terms.

5           THE COURT:  No, I have that.  I've gone through it.

6   I'm largely in agreement.  There are some -- a few changes that

7   I'm going to make to it.  It's just -- some of it is just to

8   put dates to --

9           MR. WISHNEW:  Sure.

10          THE COURT:  -- the time periods.

11          MR. WISHNEW:  Yeah.

12          THE COURT:  So if you have copies with you, in

13  paragraph 3, the fact discovery cutoff, it's going to be

14  changed to "on or before January 19th, 2016."  That's the 120

15  days.  Frankly, if we weren't getting into the holiday season,

16  I would have shortened the time.  But because of the holidays,

17  Thanksgiving and then the Christmas holiday, I left the 120

18  days.  So that's going to be changed to January 19th.

19          In paragraph 8, the date for the joint pre-trial

20  conference order, it's going to -- instead of "within thirty

21  days after the date of the close of fact discovery," it's going

22  to be "on or before February 18th, 2016."  That's essentially

23  the time period.  I haven't shortened the time.

24          For the final pre-trial conference, February 25, 2016,

25  at 10 a.m.  And then I am adding a new paragraph 11.  What's

1  now paragraph 11 will be paragraph 12, and the addition is

2  going to be the following:  "The trial in this matter is

3  scheduled to begin on March 7, 2016, at 9 a.m. and shall

4  continue day to day until completed.  The Court anticipates

5  imposing time limits on the length of the trial during the

6  final pre-trial conference."

7          So Mr. Lewis and Mr. Winterton, it's been my practice

8  in trials lasting more than two days to do so-called timed

9  trials, where I set the total time for trial, divide it between

10 the parties.  I usually make that decision at the final pre-

11 trial conference.  You ought to talk about it among yourselves,

12 because you may be able to come to an agreement.  It's

13 obviously premature now, because I don't know how many

14 witnesses you still have discovery to do.  I generally require

15 that for any witness within the control of a party, that direct

16 testimony be in written narrative form, declaration under oath,

17 with the declarant in court for cross-examination.

18         The only exceptions I will make to that usually are

19 in -- sometimes in denial of discharge adversary proceedings

20 where credibility is the crucial issue, these kinds of claims

21 in ResCap have not really -- don't usually fall into that

22 category.  So we get the written direct testimony in advance,

23 filed in advance, the declarant in court for cross-examination.

24 With depositions I require designations and counterdesignations

25 and objections in advance.  So with both the written narrative,

1  with declarations and depositions -- and I don't permit entire

2  depositions to be designated.  It has to be by page and line

3  number.  You just can't just dump entire deposition transcripts

4  in.

5          When I take the bench for the trial, I will have read

6  the direct testimony and the depositions so we can proceed

7  expeditiously.  What I would ask you to do -- and I understand

8  the issues here -- focus on the alleged forgery of the

9  refinance, and then under the UCC, whether -- I'm shorthanding

10 this -- whether Mr. Sharpe ratified the alleged refinanced note

11 by use of proceeds.  I'm obviously shorthanding that.  My prior

12 opinion addresses it in some greater length.

13         So when you prepare for trial, you ought -- before the

14 pre-trial conference, you really need to talk about what

15 witnesses are going to testify live, who's going to be

16 presented by deposition, who's going to be presented with

17 written direct and cross-examination.  I'll ask you -- ask

18 counsel to give me a pre -- their best view of the length of

19 the trial, and I probably will impose time limits.  I have to

20 say in every case in which I have imposed the limits, I think

21 I've done it fairly.  And counsel in every case have finished

22 in less time than I've allocated.  What it tends to do, though,

23 is focus the attention of what do I really need to put in at

24 the trial.

25         So I'm just kind of alerting you to that now.

1          Mr. Wishnew, do I have -- have you e-mailed this -- do

2     I have a copy of this proposed --

3          MR. WISHNEW:  I believe so.

4          THE COURT:  -- case management order?

5          MR. WISHNEW:  It's e-mailed to chambers, so --

6          THE COURT:  Okay.

7          MR. WISHNEW:  -- yeah.  If not, I can do it when I get

8     back to the court -- when I get back to the office.

9          THE COURT:  All right.  So we've completed -- almost

10    completed the transition in law clerks --

11         MR. WISHNEW:  Yes.

12         THE COURT:  -- this week.  Sean Mitchell started

13    today.

14         MR. WISHNEW:  Welcome.

15         THE COURT:  Mariloly Orozco started last week.  I'm

16    actually going to have a third clerk part of the time.

17    Actually, Joe Jones, who is the ECRO, who's been working in the

18    clerk's office, is going to be a third clerk --

19         MR. WISHNEW:  Oh, excellent.

20         THE COURT:  -- for Judge Morris and myself.

21         MR. WISHNEW:  Okay.

22         THE COURT:  He won't start as a clerk until October

23    1st, but -- so things that you may have sent to --

24         MR. WISHNEW:  That's fine.  I can resend it when I get

25    back to the office.

1      THE COURT:  You can check with Mariloly.  We may have

2  it.  My outgoing clerks left things in good shape when they

3  left.  So -- but with that, I've kept the schedule pretty much

4  what you all agreed to.

5      Let me ask you, Mr. Lewis or Mr. Winterton, is there

6  anything you want to add at this point?

7      MR. LEWIS:  If I could, Your Honor.

8      THE COURT:  Go ahead.

9      MR. LEWIS:  And we had discussed this last week.

10  Since our last hearing before Your Honor, on April 16th, I've

11  continued to reach out to counsel to see if we can't resolve

12  this, certainly along the lines that we started to discuss at

13  that last hearing by, in essence, taking the agreed to value of

14  the property and deducting from that the first mortgage that

15  was refinanced, and anything that may have benefited Mr.

16  Sharpe, et cetera, et cetera.

17      Unfortunately, I haven't -- while Mr. Wishnew has been

18  responsive to me and has certainly returned my dozen e-mails

19  and phone calls, unfortunately it wasn't until last week when

20  chambers reached out to Mr. Wishnew about getting a status

21  conference and, in turn, Ms. Handley scheduled Mr. Sharpe's

22  deposition, that was the first time -- when we had a call last

23  week, that for the first time they were able to articulate why

24  they disagreed with my analysis.

25      So it's been very frustrating to us.  I mean, this is

1   an unsecured claim.  I believe, just from a dollar perspective,

2   we're not that far off.  We've already spent -- and certainly,

3   the trust has spent more than, I believe, this claim is worth

4   just on the issue of preclusion and failure to state a claim

5   issue.  So I would ask Your Honor -- I don't know if you

6   typically do this -- perhaps Your Honor could assist us in

7   seeing if we can't have a settlement discussion with Your

8   Honor.

9           I realize you'd be trying it.  But given the dollars

10  involved, I just think that now that they want to do

11  depositions, I mean, we're spending more money than this case

12  is worth.  And I have certainly even before April 16th tried to

13  resolve it.  And again, after Your Honor's twenty-eight-page

14  decision, have again tried to resolve it and just haven't

15  gotten anywhere.

16          THE COURT:  Well, let me say a couple of things.  I

17  don't -- do you want to respond first, Mr. Wishnew?

18          MR. WISHNEW:  Sure, Your Honor.  Certainly,

19  Mr. -- I'll agree with Mr. Lewis that he has been proactive in

20  trying to resolve this, and we've responded based upon what the

21  Borrower Trust believes the claim is worth.  I won't debate --

22          THE COURT:  Yeah, I don't want to get into dollars

23  and --

24          MR. WISHNEW:  No.  Right.  I won't talk dollars and

25  cents.  I don't want to debate his characterization as to what

RESIDENTIAL CAPITAL, LLC, et al.                    13

1    the costs are to the Borrower Trust or not.  I'm not going to

2    into the Borrower's Trust arrangement with its respective

3    counsel.  I'll just say that there's a philosophical difference

4    as to what we think the merits of the claim are.  And so

5    notwithstanding the fact that, yes, this is an unsecured claim

6    and, yes, it's receiving fractional dollars on the final claim

7    amount, the Borrower's Trust is not willing, at this point, to

8    get to the number where Mr. Sharpe is at.  And so that's why

9    we've reached an impasse at this point.

10          THE COURT:  Let me -- I want to address this issue

11   about -- Mr. Lewis, I won't mediate because I have to be the

12   trier of fact.  With that said, I -- there's experienced

13   counsel on both sides, and I think -- I'm not sure how much

14   help a mediator could be in the circumstances.  But I just

15   won't do it because I've got to be the trier of fact.

16          MR. LEWIS:  Okay.

17          THE COURT:  And I appreciate -- even if the parties

18   were willing to agree that the Court could do it.  Look,

19   I'm -- each of the status conferences, each case management

20   conference we're having today are in matters in which the Court

21   has overruled in part -- in whole or in part the Trust's

22   objection.  And unless resolved by settlement, each of these is

23   going to go to trial.  And I'm very concerned about the cost to

24   the Trust of having to go to trial in these matters, and I'm

25   very mindful of the burden and expense on the claimants.

1    Some -- Mr. Sharpe's represented by counsel; others are pro se.

2           And there's no question that because these are

3    unsecured claims, ultimately prevailing, you're getting very

4    diluted dollars back.  I can't change that as to those facts.

5    What I would ask you both to do is -- have you scheduled Mr.

6    Sharpe's deposition at this point?

7           MR. LEWIS:  I know they had -- --

8           THE COURT:  Mr. Winterson, have you --

9           MR. WINTERTON:  -- counsel had discussed it.

10          THE COURT:  -- scheduled the deposition?

11          MR. WINTERTON:  Not yet.  They have approached us and

12   we were going to schedule it after this conference.

13          THE COURT:  Okay.  Frankly, I think you ought to do

14   the depositions sooner rather than later.  And with that in

15   hand -- and I understand there's expense from both sides in

16   doing that.  I mean, you can take one more crack at trying to

17   settle it before the deposition.  But otherwise, take the

18   deposition and then see whether you can settle it.

19          Look, if you go to trial, that's a lot of work from

20   both sides.  I mean, I require complete pre-trial conference

21   order.  It's -- the template for it is on the court web site.

22   But it requires work, but if I have to go ahead and try it, I'm

23   going to go ahead and try it.  That's why I'm giving you -- I

24   left your schedule intact.  If it wasn't for the holidays, I

25   would have shortened the amount of time for fact discovery.

RESIDENTIAL CAPITAL, LLC, et al.                    15

1    But I've given you a trial date.  You all know what you're

2    shooting against.

3              So if we -- let me see if we have the -- a Word

4    version of it.  We'll put these changes in --

5              MR. WISHNEW:  Excellent.

6              THE COURT:  -- and enter it.

7              Mr. Lewis, Mr. Winterton, talk to Mr. Wishnew.  See if

8    you -- if you get it resolved, please send me a status

9    letter --

10             MR. WISHNEW:  Absolutely.

11             THE COURT:  -- to that effect, if you have an

12   agreement in principle, even if it's not documented yet.

13   So -- because I'm starting to schedule these in rapid

14   succession, some even earlier than this trial date.  Here,

15   there are fact -- the prior opinion indicated there are clear

16   factual issues and that discovery's appropriate.  In some of

17   the others that have come up, I'm not sure that that's

18   necessarily the case.  Okay?

19             MR. LEWIS:  Thank you very much --

20             MR. WISHNEW:  Thank you, Your Honor.

21             MR. LEWIS:  -- Your Honor.

22             THE COURT:  Mr. Winterton, thank you for --

23             MR. WINTERTON:  Thank you.

24             THE COURT:  -- participating by phone?

25             MS. HANDLEY:  Thank you, Your Honor.

RESIDENTIAL CAPITAL, LLC, et al.                    16

1           THE COURT:  And Ms. Handley as well.

2           Okay?  And Mr. Lewis --

3           MR. LEWIS:  Thank you.

4           THE COURT:  -- thank you.

5           MR. WINTERTON:  Thank you.

6           MR. LEWIS:  Can I be excused?

7           THE COURT:  Yeah, you're excused.

8           MR. LEWIS:  Thank you, Your Honor.

9           THE COURT:  Okay.  What's next, Mr. Wishnew?

10          MR. WISHNEW:  Next, Your Honor, is the two status

11 conferences related to the Borrower Claims Trust's seventy-six

12 omnibus objection: the two claims that are concerning the claim

13 of Maria and Elda Thompson, claim 1083, and the claim of

14 Kristin Karmazyn, claim 2055.

15          I'd like to take the Thompson matter first, and I

16 think --

17          THE COURT:  Sure, let's --

18          MR. WISHNEW:  -- Ms. Thompson's on the phone.

19          THE COURT:  Ms. Thompson, are you on the phone?

20          MS. THOMPSON:  Yes.

21          THE COURT:  Thank you very much.

22          Go ahead, Mr. Wishnew?

23          MR. WISHNEW:  Thank you, Your Honor.  Your Honor

24 issued -- this matter went to an evidentiary hearing

25 previously.  Your Honor issued a decision on July 1st, 2015, at

RESIDENTIAL CAPITAL, LLC, et al.                    17

1    docket number 8823.  There was one issue that the Court

2    overruled without prejudice.  Otherwise, the Court sustained

3    our Claims Trust objection on all matters within the filed

4    claim.  The one unresolved element of the claim dealt with the

5    rate of interest being charged to Ms. Thompson while her loan

6    was being serviced by GMAC Mortgage.

7           Subsequent to the decision being issued, the Borrower

8    Claims Trust reached out to Ms. Thompson under FRE 408,

9    extended an offer that we believe compensated her for the

10   alleged differential in the interest rates over the time of the

11   loan, represented that obviously that would be the allowed

12   claim.  She had receive the pro rata distribution that all

13   unsecured claimants will receive, and that claim -- I'm sorry,

14   that offer was declined by Ms. Thompson.

15          At this point in time, we believe that we have -- the

16   Borrower Claims Trust has the related or the relevant interest

17   rate change letters that were not otherwise produced during the

18   evidentiary hearing to demonstrate that GMAC Mortgage properly

19   noticed the Thompsons of the interest rate change and that

20   there is no liability here.  We'd be willing to put in a

21   declaration or submit a very brief objection on that point,

22   allow Ms. Thompson to respond in kind, and let the Court take

23   it under advisement, or proceed in -- whichever the Court

24   believes is the most efficient manner at this point in time.

25          THE COURT:  Ms. Thompson?

RESIDENTIAL CAPITAL, LLC, et al.                          18

1          MS. THOMPSON:  Yes?

2          THE COURT:  Go ahead.  Do you have a response?

3          MS. THOMPSON:  Well, my response is back when we did

4     the approval evidence, I did not realize that Ocwen Servicing

5     was actually involved in my case back in 2007.  To me, I

6     thought that Ocwen was separate from GMAC, and it had nothing

7     to do with GMAC.  But by investigating and doing some research

8     on who actually we were speaking to when we were getting all

9     our information, especially the one about the amounts that were

10    paid and when the payments were paid, it came back to being

11    Ocwen.  So I'm kind of confused as Ocwen supposedly bought the

12    loan back in 2012 or 2013, or why were they appointed in 2007,

13    because I thought we were only dealing with GMAC and not

14    involved with Ocwen.

15         And according to some of the business articles and

16    back references that I went to, Ocwen was actually involved

17    with GMAC as owner of GMAC as the third party, which we were

18    trying to find out from day one who the third party was.  And

19    it turned out to be Ocwen.  So I am kind of -- I need to do

20    some more research to see why Ocwen was involved then.  Were

21    they part of the loan, or -- then?  Because then the

22    bankruptcy, to me, doesn't make sense if they're actually owned

23    by another company.  Another company was actually the third

24    party.

25         THE COURT:  Ms. Thompson, in the opinion that I issued

1  previously, at pages 31 and 32 of the opinion, I dealt with

2  your claim that GMAC had improperly raised the interest rate --

3          MS. THOMPSON:  No, I saw that.

4          THE COURT:  Let me -- don't interrupt, please.  Don't

5  interrupt.

6          Part of your claim was that GMAC charged a higher

7  interest rate than was stated on the billing statements, and

8  the Trust objected to that portion of the claim.  The rest of

9  your claim -- the objection was sustained.  But with respect to

10  the portion of your claim that alleged that GMAC charged a

11  higher interest rate than was permitted, I overruled it.  This

12  is at pages 31 and 32 of the opinion.  And to paraphrase from

13  the opinion, the Thompsons argued that their monthly principal

14  and interest payments were $1,227.71, and that the annual

15  interest rate was 5.99 percent, with a margin of 2.75 percent.

16          The Thompsons presented a forensic review report that

17  indicates that the annual percentage rate actually charged was

18  6.6554 percent rather than 5.99 percent, and the margin was

19  2.75 percent.  The Trust responded that the Thompson mortgage

20  is an adjustable rate mortgage and that GMACM correctly

21  charged, collected, and applied payments in accordant with the

22  note, mortgage, and letters reflecting the adjustable interest

23  rate terms that were sent to the Thompsons in June and December

24  of each year, from 2009 through 2012.

25          The Trust, however, has failed to provide the Court

RESIDENTIAL CAPITAL, LLC, et al.                    20

1   with copies of these letters.  The opinion goes on to quote

2   from the note, which was an adjustable rate note.  And the

3   Trust argued that the increase in the interest rate was

4   permitted and consistent with the provisions of the adjustable

5   rate note.  But then I said on page 32, "But without copies of

6   the letter notifying the Thompsons of the change in their

7   interest rate, there are disputed issues of fact whether GMACM

8   properly calculated, applied, and charged interest on the

9   Thompsons' loan account.  As such, the Trust has not met its

10  burden of proof, and, to that extent only, the objection is

11  overruled without prejudice."

12          So that's where things stand after my opinion in the

13  case.  With respect to Ocwen, Ocwen never owned the loan.

14  Ocwen -- after the bankruptcy was filed, Ocwen purchased the

15  mortgage loan servicing platform from GMAC.  They never owned

16  the loan, but they assumed the responsibilities for servicing

17  most of the loans that GMAC had been servicing.  So that's

18  Ocwen's connection.  The allegations that you made in your

19  proof of claim was while GMAC was servicing your loan, they

20  improperly raised the interest rate.

21          Mr. Wishnew has indicated that the Trust has the

22  documents that I found were missing at the time I wrote the

23  opinion, and they want to proceed with their objection to that

24  claim.  It's a pretty straightforward matter.  What -- one of

25  two -- Ms. Thompson, if -- let me ask you this, Mr. Wishnew.

1    Have you provided the Thompsons with copies of those documents?

2          MR. WISHNEW:  I have to go back to my records and

3    check.  If I haven't, we certainly can do it in very short

4    order.

5          THE COURT:  Well, here's what I'm going to do.  This

6    is -- this matter needs to get resolved.  This is pretty

7    straightforward.  All other aspects of the Thompson

8    claim -- the objection has been sustained.  This one portion

9    remains.  I certainly take it seriously whether the Trust

10   properly raised the interest rate from 5.99 percent to 6.6554

11   percent -- 6.6554 percent.  And the answer to that question is

12   going to be controlled by the documents.  The Trust indicates

13   that it gave the required notices to the Thompsons.

14         I can't answer, Ms. Thompson, whether you have any

15   ongoing disputes with Ocwen about their servicing of the loan.

16   If you do, that's not before this Court.  I don't deal with

17   claims against Ocwen.  I don't know whether you're in

18   communication --

19         MS. THOMPSON:  My --

20         THE COURT:  -- with Ocwen.

21         MS. THOMPSON:  No, I'm getting the information from

22   the proof of evidence that they demonstrated back in -- when we

23   went into court showing the evidence.  The -- one of the

24   evidence that they gave was that Ocwen was actually talking to

25   us about the loan, when it was under discussions of which date

RESIDENTIAL CAPITAL, LLC, et al.                    22

1  they sent the information, it was under Ocwen.  And nowhere in

2  those papers that they sent for approval of evidence, they

3  could show that it was GMAC.  They all recognize Ocwen as part

4  of the loan, so that's where my misunderstanding is, because

5  back in 2007 it was supposed to be GMAC that we were talking to

6  on the phone.

7          But according to their own records that they sent us,

8  it was Ocwen that was responding to us back in 2007.  So you

9  can understand where the confusion comes from.

10          Hello?

11          THE COURT:  Yeah, I'm here.  I'm looking at my

12  calendar.  Just bear with me a minute, Ms. Thompson.

13          MS. THOMPSON:  Oh.

14      (Pause)

15          MS. THOMPSON:  It was under Exhibit BT, number 5.

16          THE COURT:  All right.  Just bear with me a minute.

17  I'm making some notes here.

18          MS. THOMPSON:  Okay.

19      (Pause)

20          THE COURT:  Well.  I'm going to do the following.  I'm

21  going to enter a scheduling order requiring the Trust to submit

22  any evidence on which it relies on, a declaration, and any

23  exhibits -- the declarations need to authenticate whatever

24  documents are provided -- by October 7th -- Wednesday, October

25  7th, at 5 p.m.

RESIDENTIAL CAPITAL, LLC, et al.                              23

1    The Thompsons may submit written responses, if any, by

2  Wednesday, October 25th at 5 o'clock.  We're going to conduct a

3  trial limited to the issues about the correct interest rate on

4  Wednesday, November 4th at 2 p.m.

5    Ms. Thompson, after you get the evidence from the

6  Trust, on or before October 7th, I encourage you to speak with

7  Mr. Wishnew or his colleagues to see whether, at least as to

8  this issue of the interest rate that GMAC charged, that was the

9  increase in rates, whether you wish to drop that portion of

10  your claim.  I'm not telling you to do that.  I'm just saying

11  you should confer with Mr. Wishnew to see whether you can

12  resolve it.  Mr. Wishnew says the Trust has found the documents

13  it needs to establish that it correctly raised your interest

14  rate.

15    Mr. Wishnew, your declarant needs to be present in

16  court for cross-examination at the trial on November 4th at 2

17  o'clock.  That's a ResCap omnibus hearing date in the morning.

18    MR. WISHNEW:  Okay.

19    THE COURT:  And we'll do the trial, if necessary, in

20  the afternoon.

21    Ms. Thompson --

22    MS. THOMPSON:  Yes.

23    THE COURT:  -- if you have any evidence you're going

24  to offer in opposition, make sure you have it ready --

25    MS. THOMPSON:  I will.

1          THE COURT:  -- your testimony, whatever, on November

2     4th.  Okay?  The issue is quite a narrow one.  But since I

3     previously found the Trust had not provided that evidence at

4     the time of the claim objection, we've got to bring this to a

5     final conclusion.  So if that portion of the claim is not

6     withdrawn, we'll go to trial on November 4th, and I'll enter an

7     order with these dates.  Make sure you serve a copy by mail on

8     the Thompsons, okay?

9          MR. WISHNEW:  Will do, Your Honor.

10         THE COURT:  Ms. Thompson, thank you very much.  Is

11    there anything you want to add, at this point?

12         MS. THOMPSON:  No.  I just want to make sure that we

13    get loan interest, everything that was discussed in the

14    forensic order.  And also about the -- the exhibit that all the

15    evidence that they demonstrated that Ocwen was the one that we

16    were responding to back in 2007.

17         MR. WISHNEW:  Your Honor, that last point is not at

18    issue right now.

19         THE COURT:  It's not.  Ms. Thompson, I'm just telling

20    you, the only issue that we're having a trial on is the issue

21    identified on pages --

22         MR. WISHNEW:  31 and 32.

23         THE COURT:  -- 31 and 32 of the prior opinion.  You

24    have that opinion.  It deals solely with -- it was the portion

25    beginning near the top, first full paragraph on page 31 where I

RESIDENTIAL CAPITAL, LLC, et al.                    25

1    overruled the Trust's objection, to the portion of your

2    statement relating to the higher interest rate they charged.

3    That's the only issue that's going to be subject to the trial.

4              MS. THOMPSON:  Okay.

5              THE COURT:  I'm not going to permit evidence or

6    argument with respect to any of the other issues that I

7    previously resolved.  Okay?

8              MS. THOMPSON:  Okay.

9              THE COURT:  All right.  If necessary, I'll see you on

10   November 4th at 2 o'clock for the trial.  Thank you very much,

11   Ms. Thompson.

12             MS. THOMPSON:  Okay.

13             THE COURT:  Okay.

14             MR. WISHNEW:  Thank you, Your Honor.

15             THE COURT:  All right, next.

16             MR. WISHNEW:  That brings us to the contested claim,

17   claim number 2055, filed by Kristin Karmazyn.  I believe Ms.

18   Karmazyn is on the phone.

19             THE COURT:  Ms. Karmazyn, are you on the phone?

20             MS. KARMAZYN:  Yes, sir.

21             THE COURT:  Okay.  If you can, just speak up a little

22   bit, okay?

23             MS. KARMAZYN:  Okay.

24             THE COURT:  Okay, Mr. Wishnew?

25             MR. WISHNEW:  Thanks, Your Honor.  Your Honor, after

RESIDENTIAL CAPITAL, LLC, et al.                    26

1   Your Honor had issued a prior decision on this claim, we

2   reached out to counsel for Ms. Karmazyn, and since then I'm not

3   sure if Ms. Karmazyn is still represented by the same counsel

4   who she was dealing with previously -- it was a gentlemen by

5   the name of Matthew out in Colorado -- or whether she's

6   retaining different counsel.

7        So communications have been a bit spotty since after

8   we had reached out to him asking for evidence of damages as

9   well as proof of delivery of the payment associated with the

10  second repayment plan, we never got anything.  And in

11  subsequent follow-up, it seemed like she might -- Ms. Karmazyn

12  might be changing counsel.

13       So we're here today to try and, I guess, reset; figure

14  out where Ms. Karmazyn is in terms of retaining counsel; and

15  whether she's able to provide us with the documents to

16  substantiate timely deliverance of the payment prior to the

17  foreclosure; and if not, then move forward toward an

18  evidentiary hearing.

19       THE COURT:  I'll let Ms. Karmazyn speak in a minute.

20  On July 23rd, 2015, a letter from Ms. Karmazyn to the Court was

21  filed on ECF.  And she indicated that she wanted the

22  evidentiary hearing scheduled, and she indicated in the letter

23  that she was in the process of interviewing and choosing New

24  York counsel to represent her.  She asked that she get thirty-

25  days' notice of a trial date.

1        And so I've read that, Ms. Karmazyn.  I've also looked
2    back at the prior opinion that I entered.  So this was the
3    opinion overruling the ResCap Borrower Claims Trust's objection
4    to claim number 2055 filed by Michael and Kristin Karmazyn.
5    That opinion is dated April 1, 2015.
6        At page 10 of the opinion, I think it focused at the
7    heart of the factual dispute that remains.  I'll paraphrase
8    what the opinion says.  That the Karmazyns' supplement raises
9    issues of fact whether Karmazyn properly made the initial
10   installment required under the second foreclosure plan and
11   whether the debtors' rejection of such payment and foreclosure
12   of the property subjects them to liability on the claim.
13       The second foreclosure plan sets forth that
14   foreclosure proceedings will be suspended but not terminated if
15   the debtors receive the executed second foreclosure plan
16   agreement and the initial installment in the amount of
17   $1,244.65 no later than monthly.  It goes on from there.  I'll
18   stop reading there.
19       Skipping a little, it says, "The Trust does not argue
20   that the Karmazyns' payment was not timely received, instead
21   asserting that the debtors returned such payment because it was
22   in an insufficient amount.  However, this payment was allegedly
23   made in the exact amount specified in the second foreclosure
24   plan.  Whether the debtors' refusal to accept this payment
25   followed by the foreclosure on October 7, 2009 may give rise to

1  liability to the Karmazyns, requires factual determinations
2  that cannot be made at this point.
3          "While the parties have not addressed the legal
4  theories on which liability could be based, it appears that
5  Karmazyn may state a claim for breach for contract of the
6  second foreclosure plan and perhaps on other grounds as well."
7          So that's just -- obviously the opinion itself speaks
8  for itself.  But I went back to review it to see what are the
9  issues that are likely to need to be tried.
10         Ms. Karmazyn, while I'm going to give you a chance to
11  respond, I'm obviously interested in whether you've been able
12  to obtain counsel, at this point?
13         MS. KARMAZYN:  As of this moment, this morning, I have
14  not signed with the two counsels that have proposed to take my
15  case.  I'm struggling a little bit with that, because they want
16  to go -- they're more interested in the second part of this
17  case than they are the original case, which at this point, I
18  might just sign and let them both go for it.
19         What I'd like to point out is, the counsel of the
20  Trust never reached out to me.  I called them first.  Because
21  at this point, I just want this over.  And the reason that the
22  talks stopped with the counsel is because they came up with
23  some accusations that for six years I've never been there.
24  One, they never received the payment, which everybody -- that
25  was never issued for six years; and then secondly, they made

1  the accusation that I didn't make any payments for two years,

2  2008 and 2009, which has never been the issue.

3          So at that point, the talks just stopped.  I mean, you

4  know, unfortunately, every accusation they make costs me money,

5  and I don't have it.  And it's ridiculous.  So I just want -- I

6  want a trial.

7          THE COURT:  Okay.  So here's what I'm going to do, Ms.

8  Karmazyn.  Obviously, if you have counsel, that's great.

9          MS. KARMAZYN:  Um-hum.

10          THE COURT:  And if you don't, you could certainly

11  proceed to trial without counsel.  It's obviously difficult for

12  borrowers who are not lawyers to represent themselves.  But

13  I've been doing trials for them.  But it's difficult.  There's

14  no question about it.

15          Your letter asks that you have at least thirty days'

16  notice of trial.  What I'm going to do is the following.  I'm

17  going to enter a scheduling order providing that any fact

18  discovery concludes on or before 5 o'clock November 20th, 2015.

19  So I set that long enough that if you get counsel and they want

20  to take some discovery, you're going to need to move quickly

21  with respect to counsel, or without counsel; if you're going to

22  take discovery, go ahead and do it.

23          I'm going to schedule the trial for January 5 and 6,

24  2016.  So you have -- that's a Tuesday and Wednesday after the

25  New Year's break.  I'm going to give you one other date.  Hang

1  on.  I'm going to require, Mr. Wishnew, a joint pre-trial

2  conference order on or before 5 p.m. December 11th.  And that's

3  a few weeks after the cutoff of fact discovery.

4          MR. WISHNEW:  Okay.

5          THE COURT:  I don't want to get into the midst of what

6  settlement discussions you've had, but from the April 1st

7  opinion, Mr. Wishnew, the portions that I paraphrased at page

8  10, it certainly describes what I thought were the issues that

9  have to be resolved.  And Ms. Karmazyn seems to be saying that

10  the Trust has raised other issues with her.

11          I mean, I know there were disputes about whether the

12  Karmazyns' payments under the forbearance plans, the

13  foreclosure plans, whether those payments were credited or not.

14  But it seems to me -- and I know that Ms. Karmazyn had disputed

15  whether the Karmazyns had received notice of foreclosure dates,

16  of the loan modification agreements, first foreclosure plan,

17  second foreclosure plan.  You came back in the supplement and

18  actually attached copies that the Karmazyns had countersigned.

19          MR. WISHNEW:  Um-hum.

20          THE COURT:  You know, Ms. Karmazyn, it seemed to me

21  that really the operative document is the second foreclosure

22  plan, because you signed it, GMAC signed it.  And the dispute

23  then was, okay, there was a contract between you and GMAC; it

24  required certain things on your part; it required certain

25  things on their part.  And the factual dispute seems to be

1    whether you made the payments that were required to be made,

2    whether the Trust improperly rejected the payments, if you made

3    them.

4              I'm not trying to foreclose you from the arguments

5    that you want to make at trial, but it just -- when I went back

6    to review this, that really does seem to be the focus of the

7    dispute between you, whether -- there was a dispute -- I use

8    this term a little loosely, because the Trust's writings that

9    they've submitted, I think, made it clear that the payments

10   that you made had to be in certified funds; that personal

11   checks weren't acceptable.  This has come up quite a bit, Ms.

12   Karmazyn in many other matters.

13             I can just tell you, the Trust is on solid ground when

14   they insisted that any payments be in certified funds and if

15   they returned the payments to you if they weren't.  Okay?

16             But what happened -- what did or didn't happen under

17   the earlier agreements that you reached with GMAC, seems to me

18   to be supplanted by what happened under the second foreclosure

19   plan.  You say that they improperly refused to accept the

20   payments and went ahead with the foreclosure on October 7th,

21   2009.  They say they acted properly.

22             But so I'm going to enter a scheduling order.  I'm

23   giving you -- because I know -- because you said in your letter

24   you're trying to obtain counsel, again, I've allowed a little

25   longer period of time than I might otherwise do.  I want to

1  give you a chance, if you can get counsel, you need to get

2  counsel and --

3          MS. KARMAZYN:  Well, and you don't have to -- you

4  don't have to put it off anymore.  I have my two proposals on

5  the table.  That was in July.  So I'm ready to go.  I'll sign

6  and they can go for whatever they want to go to.

7          THE COURT:  Do you want to go earlier than January?

8          MS. KARMAZYN:  Yes.

9          THE COURT:  I'll give you an earlier --

10         MS. KARMAZYN:  Let's do it.

11         THE COURT:  I'm sorry.

12         MS. KARMAZYN:  Let's do it.  You can -- I'm good.

13 That was in July.  I already have the proposals from the two

14 firms.  So we'll just go ahead and sign today.

15         THE COURT:  Okay.  I'll give you the -- I'm going to

16 go with these dates.  November 20th is the conclusion of fact

17 discovery; January 5th and 6th is the trial dates.

18         MS. KARMAZYN:  Okay.

19         THE COURT:  December 11th for a joint pre-trial

20 conference order.  You can tell your counsel, if they're not

21 aware of it, that on our court's public Web site, under my

22 chambers rules -- actually, Mr. Wishnew, send Ms. Karmazyn the

23 template for the joint pre-trial conference order so she can

24 give it to her counsel?

25         MR. WISHNEW:  Very good.

RESIDENTIAL CAPITAL, LLC, et al.                    33

1              THE COURT:  Okay.

2              MR. WISHNEW:  And if I can ask that as soon as she

3    actually engages counsel, if they could reach out to me?

4              THE COURT:  Yes.  So would you do that, Ms. Karmazyn?

5    If you're going to -- as soon as you've retained counsel, they

6    should make an appearance, and they ought to talk with Mr.

7    Wishnew about whether this is going to be resolved, and if not,

8    they can coordinate just exactly how the trial's going to go.

9    Okay?

10             MS. KARMAZYN:  Absolutely.  And we have some new

11   evidence that we got last week from the Arapahoe County

12   Assessor for the first modification in 2009 that was filed by

13   everybody.  That will just show everything.  So --

14             THE COURT:  Okay.

15             MS. KARMAZYN:  -- I'll send that to him too.

16             THE COURT:  That's fine.  Okay?

17             MS. KARMAZYN:  Okay.  All right.

18             THE COURT:  All right, thanks very much, Ms. Karmazyn.

19             MS. KARMAZYN:  Thank you.

20             THE COURT:  Okay.

21             MR. WISHNEW:  Thank you, Your Honor.  That brings us

22   to the last matter on for today's calendar.

23             Page 5 of the agenda, the objection of the ResCap

24   Liquidating Trust to claim numbers 2385, 2386, 2387, 2388, and

25   2389, filed by Duncan K. Robertson.

1            I will turn the so-called podium over to my colleague,

2    Adam Lewis, who will be conducting this telephonically.  And I

3    believe Mr. Robertson is also on the phone.

4            THE COURT:  Mr. Robertson, are you on the phone?

5            MR. ROBERTSON:  I'm on, Your Honor.

6            THE COURT:  Okay.  Mr. Lewis, are you on the phone?

7            MR. A. LEWIS:  I am, Your Honor.  And I appreciate

8    your letting me appear by phone.

9            THE COURT:  Okay, go ahead, Mr. Lewis.

10            MR. A. LEWIS:  Your Honor, the case is in a little bit

11    of disarray as a result of some recent developments.  The Court

12    may recall that previously the Court entered a scheduling order

13    which set the termination of fact discovery as September 4th,

14    expert discovery as October 8th, joint pre-trial statement for

15    the 19th of October, and trial for the 26th and 27th of

16    October.

17            On the 4th of September, the Court ruled on the motion

18    to reconsider and denied Mr. Robertson's motion and granted

19    ours, and wrote that the claim was expunged and dismissed.

20            THE COURT:  Yeah, let me just stop you there, Mr.

21    Lewis.

22            MR. A. LEWIS:  Yeah.

23            THE COURT:  That was clearly -- so that appears like

24    in the first paragraph.  When you get to the end of the

25    opinion, though, I think it made clear that what I did was

1  grant the motions for reconsideration, did what I did, but what

2  was not clear -- and the September 17th order, I think,

3  clarifies it -- I will acknowledge that the first paragraph was

4  an error in saying that the claims were expunged, because what

5  clearly remains is the trespass claim.  And that's what needs

6  to get resolved in the trespass claim.

7       MR. A. LEWIS:  Yes, Your Honor.  We don't -- we

8  understand that.  But on the 4th, I think there was a fair

9  amount of confusion.  Mr. Robertson actually filed or served us

10  with a notice of appeal --

11       THE COURT:  It never got filed.  Let me put it that

12  way.

13       MR. A. LEWIS:  Yes, so I see, Your Honor.  I

14  appreciate that.  But the point is, that he thought what we

15  thought.  And then he also filed a motion at the same time to

16  get some clarification.

17       THE COURT:  Right.

18       MR. A. LEWIS:  The point being, not that we think the

19  case is gone, but that the case is obviously on somewhat

20  different terms than it was when the Court set the pre-trial

21  order, the calendar.  And the result has been some confusion

22  over discovery.

23       There's also one other problem that we were working

24  out with Mr. Robertson separately.  The Court may recall that

25  when it ruled on the original objection, it rejected Mr.

1    Robertson's claims for trespass prior to a date in May of 2009,

2    because of the statute of limitations.  And that left one

3    trespass claim.

4            The Court's ruling appeared to set that trespass claim

5    as against Homecomings, when, in fact, GMAC had replaced

6    Homecomings as the servicer.  Mr. Robertson noticed that, had

7    in mind a procedure for trying to fix that problem.  We

8    suggested an alternative procedure where we would stipulate to

9    the replacement of Homecomings as a defendant with GMAC.  That

10   stipulation arrived signed in our offices on the 4th, the same

11   day that the Court issued its ruling on the motions to

12   reconsider.  So it never got filed.

13           THE COURT:  Okay.

14           MR. A. LEWIS:  But we still think and I'm sure Mr.

15   Robertson enthusiastically agrees that the real correct

16   defendant, now, for the one remaining trespass claim in 2010,

17   is not Homecomings, which should be out of the case altogether,

18   along with the other defendants, but instead against GMAC.

19           We're I suppose, prepared to resubmit the stipulation,

20   or if the Court prefers to draft its own order basically

21   substituting in GMAC for Homecomings on the one remaining

22   trespass claim, which is the only remaining claim altogether,

23   that would be just fine with us too.

24           We were about to serve Mr. Robertson with our

25   discovery responses, which were due on the 4th as well, as were

1  his.  He served us with his when he sent over his stipulation.

2  We were just tweaking a couple of things and needed to get

3  the -- one of the clients to sign our responses to

4  interrogatories when the order on the motion to reconsider was

5  issued.  And so we just held off.

6          Our responses were to a lot of discovery that is no

7  longer relevant to this case because it concerned the other

8  claims against RFREH, concerned claims against Homecomings,

9  which really aren't against Homecomings, and so on.  So Mr.

10  Robertson's discovery is aimed at Homecomings with respect to

11  the trespass claims, and it should be aimed at GMAC.

12          We're thinking that it might be useful if the Court

13  reset the schedule a little bit.  And I'm just going to throw

14  out some potential dates here, just as a place to start.  I

15  think both parties need to revise their discovery requests to

16  line up with the current status of the case, which is that

17  there's only one claim, and it's the trespass claim against

18  GMAC, whereas when the discovery requests were sent out, they

19  concerned many additional claims, and they also concerned

20  Homecomings as the trespass defendant instead of GMAC.

21          We think we can revise ours within ten days.  It

22  shouldn't be that difficult.  I imagine Mr. Robertson can do so

23  as well, his request.  And then we could, I think, respond to

24  his revised requests within ten days of that.  And we imagine

25  Mr. Robertson could do the same thing.

RESIDENTIAL CAPITAL, LLC, et al.                    38

1        And then we'd need a little bit of additional time in

2   case we decided after seeing what the responses were, we wanted

3   to take his deposition.

4        The bottom line is, we're not so sure that the current

5   calendar works, given what transpired during early September,

6   and we're thinking it needs to be adjusted a little bit in

7   order to accommodate the developments that began around

8   September 4th.

9        THE COURT:  Okay, Mr. Robertson --

10       MR. A. LEWIS:  That's kind of the bottom line.  And I

11  don't think I have anything to add at this moment.  I'm more

12  than happy to answer questions.

13       THE COURT:  Mr. Robertson?

14       MR. ROBERTSON:  Yes, Your Honor.  I do have one point

15  that I disagree with, with respect to what counsel said.  And

16  that is this entire thing has been a learning experience for

17  me, not only of course, how to deal with court matters, but

18  also just the facts of the case.

19       It was very revealing when there was a declaration of

20  Kathy Priore, Exhibit Q was submitted as a previous exhibit in

21  this matter.  And it detailed the incidents of trespass and

22  exactly what they did and the dates they did it.  And that was

23  previously not known.  And so at that point, it became clear

24  that actually, one of the most serious trespass violations

25  occurred in June of 2009, which was -- this is within the

1  statute of limitations.  It was Homecomings in the driver's

2  seat at that point.

3         And so I am very reluctant to say just let's dismiss

4  Homecomings and not worry about -- and put everything over to

5  GMAC.  If GMAC wants to assume the liability that Homecomings

6  had, I don't object to that.  And if we can get this settled in

7  an immediate matter, I'm all for that too.

8         But I don't particularly follow on the discovery

9  thing.  So discovery was due.  I submitted mine, and simply

10  deleted the questions that directly dealt with the other

11  claims.  And I don't see why the Trust could not do the same if

12  they say they've got it all ready to go, just delete those

13  items that pertain particularly to the other claims and submit

14  it.

15         MR. A. LEWIS:  Your Honor, if I may?  It's Adam Lewis.

16         A couple of things in response to that.  First of all,

17  Mr. Robertson mentioned settlement.  He's been telling us for

18  quite some time now he's going to send us a settlement

19  proposal.  We haven't seen it yet.  And we're more than happy

20  to respond to it if and when we see it.  I suspect he needs to

21  reconsider, to some extent, what he might have otherwise

22  proposed or was thinking of proposing, because the claims are

23  so much narrower than they were before September 4th.

24         The second point is, in terms of what Mr. Robertson's

25  discovery looked like, he didn't just simply delete things.  He

1    answered some stuff, he didn't answer some other stuff.  And
2    once again, in the current state of things, the only claim
3    remaining is not even against Homecomings, it's against GMAC,
4    and we need to fix that in the way the claims are set out.

5           The notion that Mr. Robertson first learned about the
6    Homecomings claims and hasn't had a chance to do anything about
7    alleged possible claims against Homecomings in the gap period
8    doesn't fly, because he saw Ms. Priore's declaration in our
9    objection.  And so when he got around to filing his response,
10   he was on notice if he thought there were some claims there.
11   Nothing has happened since then.

12          And then finally, Your Honor, I think it's appropriate
13   here to eliminate the notion that Mr. Robertson is proceeding
14   pro se and is learning a lot about legal proceedings.  Mr.
15   Robertson has been conferring with counsel right along.  Indeed
16   he admitted that in response to certain interrogatories that we
17   asked him specifically, are you conferring with counsel, and if
18   so, about what?

19          And his responses were yes, and getting advice and
20   consultations and having them review and help him with drafting
21   the various pleadings that have been filed in this court.  So
22   he's been -- indeed if you look at his e-mails with us, he's
23   copying counsel on those e-mails.  So Mr. Robertson is not
24   really pro se here.

25          THE COURT:  Am I supposed to fault him for that, Mr.

RESIDENTIAL CAPITAL, LLC, et al.                    41

1   Lewis?

2          MR. A. LEWIS:  No, Your Honor.  But -- I have no

3   objection to his consulting with counsel.  But the notion that

4   he's proceeding pro se, I think, is just misleading.

5          THE COURT:  Let me deal with a couple of things.

6          MR. A. LEWIS:  Yeah.

7          THE COURT:  First, with respect to the issue of

8   whether the claim is against Homecomings or against GMAC, Mr.

9   Robertson said that -- so as things stand now, the claim is

10  asserted against Homecomings.  He said that based on Exhibit Q

11  to the Priore declaration, he believes there's evidence that

12  supports a June 2009 trespass that is within the statute of

13  limitations and that Homecomings was the servicer at the time.

14         I'm obviously not resolving factual disputes.  But if

15  Mr. Robertson believes that he's able to provide evidence that

16  Homecomings is liable for an improper trespass in June 2009, a

17  period within the statute of limitations, for which Homecomings

18  was the servicer, he can certainly go ahead and assert the

19  claim.

20         With respect to -- what was the date, Mr. Lewis, when

21  GMAC succeeded Homecomings as a servicer?

22         MR. A. LEWIS:  I don't have that handy, Your Honor.

23  But it was sometime in 2010, I think.

24         THE COURT:  Okay.

25         MR. ROBERTSON:  No, I believe it was July 1st, 2009.

1          THE COURT:  Look, let me just stop you there.  Okay?

2          So Mr. Lewis, there've been quite a few claims that

3    may have had the wrong debtor asserted -- Homecomings or GMAC,

4    depending on when GMAC succeeded Homecomings as a servicer.

5    And I think in all of those instances, they've all be resolved

6    by an agreement that the claim could be asserted against GMAC

7    if it had been asserted against Homecomings.

8          So here's what I -- first off, I agree that with the

9    changes to the scope of this dispute arising from the

10   reconsideration opinion and then most recently the September

11   17th clarification order, that the schedule needs to be

12   adjusted.  That's appropriate.

13         I would direct you, Mr. Lewis, to speak with Mr.

14   Robertson to see whether you can stipulate as to which portion

15   of a claim is asserted against Homecomings, if in fact he

16   believes in good faith that there was a June 2009 trespass that

17   he can prove -- improper trespass that he can prove that's

18   within the statute of limitations when Homecomings was the

19   servicer.  He's entitled to proceed on that.

20         And if the later trespass is allegedly when GMAC was

21   servicer, so you ought to be able to resolve -- I would hope

22   that you can at least resolve which portion of the claim is

23   against which debtor entities.  Okay?  And do that by

24   stipulation, and submit it.

25         With respect to the discovery issues, there's no

RESIDENTIAL CAPITAL, LLC, et al.                    43

1   question that the opinion on reconsideration substantially

2   narrowed the claims that remain in the case.  Trespass is the

3   only thing that remains.  And the deadline for -- I'm not

4   reopening discovery.  If the existing discovery that's gone

5   back and forth needs to be revised, so I'll certainly agree to

6   extend that deadline -- not to serve new discovery, but to

7   resolve the issues as to the previously exchanged

8   discovery -- just bear with me a second, okay?

9          Okay.  I want all discovery completed by Monday,

10  October 5 at 5 p.m.  So sort out which portions of what you've

11  served are operative, and which not.  And if you haven't served

12  them yet, that's your deadline, Mr. Lewis.  Okay?

13         MR. A. LEWIS:  Yes, Your Honor.  Is there any

14  additional time for taking depositions, if we want one?

15         THE COURT:  Well, what have you been waiting for?  You

16  could have taken -- no, there is no more time for taking

17  depositions.  That you should have -- if you were going to take

18  a deposition you should have done it by now.  There's no reason

19  for that to be extended.

20         So that October 5 deadline is just for the written

21  discovery previously exchanged.  That's the deadline for

22  providing the responses.  Okay.

23         How much time do you want after that October 5 date to

24  complete a joint pre-trial conference order?  Mr. Lewis?

25         MR. A. LEWIS:  I think a couple of weeks?

RESIDENTIAL CAPITAL, LLC, et al.                    44

1              THE COURT:  Mr. Robertson?

2              MR. ROBERTSON:  That's fine.  I'd just as soon move

3    forward as quickly as possible.

4              THE COURT:  Okay.  Monday, October 19th at 5 o'clock

5    is the deadline for submitting a joint pre-trial conference

6    order.

7              And Mr. Robertson, the court's Web site, under my

8    chambers rules -- actually, Mr. Lewis, send Mr. Robertson the

9    template --

10             MR. A. LEWIS:  Yes.

11             THE COURT:  -- for the joint pre-trial conference

12   order so he doesn't --

13             MR. A. LEWIS:  We'll work with him on that, Your

14   Honor.

15             THE COURT:  Okay.  And let's get that done.

16   Obviously, the October 26th and October 27th trial date is

17   vacated.  Bear with me again.  I'm looking at my calendars.

18        (Pause)

19             THE COURT:  Can you both be ready for trial November

20   9th and 10th?

21             MR. A. LEWIS:  Yes, Your Honor, we can.

22             THE COURT:  Mr. Robertson?

23             MR. ROBERTSON:  Yes.  Yes.

24             THE COURT:  Okay.  So the trial will be November 9th

25   and 10th beginning at 9 a.m. each day.

1        Mr. Robertson, in the joint pre-trial conference

2   order, you have to list all of the witnesses that you intend to

3   call.

4        MR. A. LEWIS:  Your Honor, do you think it would be

5   helpful if I sent Mr. Robertson a copy of the Mack pre-trial

6   order, as just a sample?

7        THE COURT:  That's fine if you want to do that.  I

8   have no problem.

9        MR. A. LEWIS:  Sure.

10        THE COURT:  It'll show him what --

11        So Mr. Robertson, what I try and do in these

12   trials -- and I'm only going to allow -- I mean, the issues

13   where it's trespass, whether it's one trespass, two trespasses,

14   are fairly narrow issues.  So I am limiting it to the two days.

15   I think that's probably longer than is probably required.  But

16   I'm scheduling those two days.

17        I'd like to have a final pre-trial conference -- just

18   bear with me again.  Let me look.  We'll have a telephone final

19   pre-trial conference November 4th at 5 o'clock.

20        Mr. Robertson, you understand, I assume, that you know

21   that for trial you have to physically be present in court.  I

22   don't allow witnesses to testify or any examination of

23   witnesses over the telephone.  So in scheduling the trial for

24   November 9th and 10th, you have to be here for that.

25        MR. ROBERTSON:  I understand.

1       THE COURT:  The November 4th pre-trial conference, you

2   can be by telephone, both of you.  You're both -- neither of

3   you are in New York, so we'll do that by telephone.  Okay?

4       MR. ROBERTSON:  All right.

5       THE COURT:  And Mr. Lewis --

6       MR. ROBERTSON:  I do have a couple of questions.

7       THE COURT:  -- I'm sorry, I was going to say, Mr.

8   Lewis, see if you can get this settled.  If you can't, we'll go

9   to trial.  Okay, Mr. Lewis:

10      MR. A. LEWIS:  Yes, Your Honor, just so may I ask --

11      THE COURT:  Mr. Robertson --

12      MR. A. LEWIS:  -- the Court one additional question?

13      THE COURT:  Yes.

14      MR. A. LEWIS:  From the Court's comments about the

15  trespass issues, I take it that the Court would grant a motion

16  by Mr. Robertson to amend his claim to include those if he made

17  one?  That's --

18      THE COURT:  Yes.  Yes, I would.

19      MR. A. LEWIS:  Okay.

20      THE COURT:  Let's get this done on the merits.  Okay?

21      MR. A. LEWIS:  All right.

22      MR. ROBERTSON:  All right.  Just one question.  The

23  other is I do want to comment on that the pro se thing.  I have

24  drafted all of the submissions to the court.  I have had no

25  assistance from counsel on that.  I do copy counsel, and I ask

1  them to review it and ask them if I made any major blunders in
2  what I've written.  And also, as the Court is well aware, this
3  case is also before two other venues at the present time.  And
4  I'm represented in those by that counsel.  So of course they
5  need to know what's going on here.  And so that's why they're
6  copied on virtually everything that goes.

7          THE COURT:  Okay.  Mr. Robertson, the only thing I'm
8  not -- you could proceed without a lawyer here.  You
9  don't -- your lawyer is where, in California?

10          MR. ROBERTSON:  No, in Washington.

11          THE COURT:  Oh, I'm sorry.  In Washington.  You know,
12  it's very easy for an out-of-state lawyer to be admitted to
13  appear in this case.  You don't need to have local counsel
14  appear.  I'm not telling you what you should or shouldn't do.
15  But if the concern was that you had to have a New York lawyer,
16  you don't.  The lawyer would have to be here.  He'd have to
17  file an application for admission pro hac vice, is what it's
18  called.  He has to pay the fee to appear.  But I have plenty
19  out-of-state counsel, particularly in the ResCap case, who've
20  appeared.

21          So but it's your decision whether to proceed with
22  counsel or without counsel.  We just need to move forward and
23  get this done.

24          MR. ROBERTSON:  Yes.

25          THE COURT:  So I'm going to enter an order today just

RESIDENTIAL CAPITAL, LLC, et al.                    48

1   with the October 5 deadline for fact discovery, October 19th at

2   5 o'clock for the joint pre-trial conference order; November

3   4th at 5 o'clock for telephonic pre-trial conference; and trial

4   November 9th and 10th, beginning at 9 a.m. each day.  Okay?

5           MR. ROBERTSON:  Okay.  I did have one other question

6   based upon Your Honor's comment at the beginning of this.  I

7   did go ahead -- just because I did not know how soon I would

8   hear back from the Court with regard to the clarification -- I

9   did go ahead and file a notice of appeal.  And I heard

10  something about that has not been accepted or something?

11          THE COURT:  It didn't get filed.  I don't think you

12  sent it to the court.  At least --

13          MR. ROBERTSON:  What?

14          THE COURT:  -- it's not on the -- put it this way, it

15  wasn't any decision on my part not to permit you to file a

16  notice of appeal.

17          We got a copy, I think, from Morrison & Foerster, is

18  where my chambers saw it from.  It hadn't been filed.  We got

19  your motion for clarification, and I acted on it quite

20  promptly.  You were quite correct --

21          MR. ROBERTSON:  Yes.

22          THE COURT:  -- that the trespass claim survived.  And

23  whether you attempt to go forward with an appeal or not, I'm

24  not getting in the midst of.  We're going forward with the

25  trial of the trespass claim.  I don't believe that if

1   you're -- if you're desiring to appeal any other aspect of my

2   decision, I'm not going to give you legal advice, I'll just

3   alert you that there's a provision of 28 U.S.C. Section 158

4   which is the section on appeals, that unless you're appealing

5   from a final order of the court, which because my orders that

6   I've entered so far do not entirely dispose of your claim, a

7   portion of the trespass claim remains, what ordinarily is

8   required, if somebody wishes to appeal everything -- the other

9   portions -- they have to seek leave to appeal from the district

10  court.

11          I'm not giving you legal advice, I'm just --

12          MR. ROBERTSON:  Okay.

13          THE COURT:  -- my view is that you'll do whatever you

14  think you need to do.  We're going forward on the schedule

15  we've laid out today with respect to the trespass claims.

16  Okay?

17          MR. ROBERTSON:  Okay.

18          THE COURT:  Let me --

19          MR. ROBERTSON:  I'm very concerned --

20          THE COURT:  -- the only thing I didn't give you a date

21  for, Mr. Lewis, was trying to work out the stipulation with

22  respect to against what entities and which claims remain.  When

23  do you think you -- does that October 5 day work for you on

24  that as well, Mr. Lewis?

25          MR. A. LEWIS:  Yes, it certainly does.

1          THE COURT:  And Mr. Robertson, you understand?  Is

2    that okay?

3          MR. ROBERTSON:  Yes.  And basically that we're not

4    expanding discovery, we're just going with what --

5          THE COURT:  No, the stipulation really -- this is the

6    point about who the defendants remain, whether it's Homecomings

7    or GMAC.

8          MR. ROBERTSON:  Yes.

9          THE COURT:  I gather there was a draft of a

10   stipulation that didn't get signed.  That situation -- you'll

11   have to talk to Mr. Lewis and see whether you can work that

12   out, okay?

13         MR. ROBERTSON:  All right.

14         MR. A. LEWIS:  I'm sure we can, Your Honor.

15         THE COURT:  Okay?  All right.  Thanks very much, both

16   of you.

17         MR. ROBERTSON:  Thank you.

18         MR. A. LEWIS:  Thank you, Your Honor.

19         THE COURT:  Okay.

20         MR. WISHNEW:  Your Honor, I believe that's the end of

21   today's calendar.

22         THE COURT:  Okay.  While we're still here, I think

23   that you were in touch with Stephanie Gowel (ph.), within the

24   last week or two.

25         MR. WISHNEW:  Yes.

1           THE COURT:  I need to get an update on where we are.

2  There are a number of matters where the Court's prior rulings

3  have been to sustain in part and overrule in part --

4           MR. WISHNEW:  Right.

5           THE COURT:  -- objections.  And some of these

6  matters -- we had a bunch of them today --

7           MR. WISHNEW:  Right.

8           THE COURT:  -- they're getting scheduled.

9           In addition, I don't know whether Stephanie raised

10 with you -- I don't know how many more claims remain to be

11 resolved, either -- how many you expect there'll be further

12 claims objections.  Your deadline has not come yet.

13          MR. WISHNEW:  Sure.

14          THE COURT:  But I'd like to get an update on where we

15 are.

16          MR. WISHNEW:  Sure; sure.

17          THE COURT:  And so what I'd like is a status letter

18 filed on ECF.

19          MR. WISHNEW:  Yeah.

20          THE COURT:  I mean, as to the ones -- I know which are

21 the ones that we're -- that are hanging out there after a

22 decision overruling in part the objections.

23          MR. WISHNEW:  Right.

24          THE COURT:  You ought to cover those in the letter.

25 But I need to know more generally --

RESIDENTIAL CAPITAL, LLC, et al.                    52

1          MR. WISHNEW:  Okay.

2          THE COURT:  -- what -- because the one effort that you

3    made to have a claim reserve set --

4          MR. WISHNEW:  Right.

5          THE COURT:  -- was unsuccessful.  I don't know in --

6          MR. WISHNEW:  Right.

7          THE COURT:  Can you give me a sense of how many more

8    claims there are that we have to deal with?

9          MR. WISHNEW:  Let me try and broad-stroke it.  So if

10   you were to -- there's, I think it's -- I want to say it's

11   about 110 to 120 claims that would fall into the convenience

12   class bucket, claims with a face amount of less than, I think,

13   30,000 dollars.  Those, I believe, will get -- I don't believe

14   we'll have to bring those to the Court.

15          There are claims -- there are I think less than a

16   handful of unliquidated claims.  And we would have to bring --

17          THE COURT:  Less than five unliquidated claims?

18          MR. WISHNEW:  I believe, Your Honor.  I believe that's

19   correct, Your Honor.  I mean --

20          THE COURT:  Fewer than five?

21          MR. WISHNEW:  I'm sorry?

22          THE COURT:  Fewer than five?

23          MR. WISHNEW:  I believe so, Your Honor.  Yes.  We want

24   to address those.

25          Let's see.  There are, I'd say, a couple of dozen

RESIDENTIAL CAPITAL, LLC, et al.                    53

1   claims that are liquidated that are currently under review and

2   might be brought before the Court.  And at the same time,

3   there's also an effort being made by the Borrower Trust to

4   reach out and try and consensually resolve other claims.

5        I don't have a total count in front of me, but I can

6   say that where we were, I think it was in June of 2014, when we

7   brought the claim reserve motion and where we are now, is very

8   different, very far advanced.  And so we're not -- I don't

9   think there should be a significant amount more of one-off

10  objections.

11       I would say there would be less than a dozen one-off

12  objections that would be filed, and perhaps, again, less than a

13  handful, fewer than five, omnibus claim objections that would

14  be filed to try and bring this process to a close.

15       THE COURT:  How much time do you want to do a status

16  letter?

17       MR. WISHNEW:  I would say -- if we're on the 21st,

18  Your Honor -- the end of the week of, I think, October

19  5th -- so October 9th, Your Honor?

20       THE COURT:  Okay, that's fine.  5 o'clock October 9th.

21  I'm not going to enter an order to that effect, but I expect

22  you to have that --

23       MR. WISHNEW:  Sure.

24       THE COURT:  We have an omnibus hearing date for

25  October 15th.

1          MR. WISHNEW:  Okay.

2          THE COURT:  So if you get your letter in by October

3     9th --

4          MR. WISHNEW:  Yeah.

5          THE COURT:  -- we can discuss it.

6          MR. WISHNEW:  Okay.

7          THE COURT:  You ought to make sure you --

8          MR. WISHNEW:  I can put it on the agenda.

9          THE COURT:  -- put it on the agenda --

10          MR. WISHNEW:  Yes.

11          THE COURT:  -- for the 15th.

12          MR. WISHNEW:  Very good.

13          THE COURT:  Status -- so that anybody out there who --

14          MR. WISHNEW:  Sure.

15          THE COURT:  File your letter of the status report on

16     the docket.

17          MR. WISHNEW:  Yes.

18          THE COURT:  So everybody's who's getting it will see

19     it.

20          MR. WISHNEW:  Okay.

21          THE COURT:  And then put it on the agenda --

22          MR. WISHNEW:  Okay.

23          THE COURT:  -- for the 15th.

24          MR. WISHNEW:  Very good.

25          THE COURT:  So we could talk about it.

RESIDENTIAL CAPITAL, LLC, et al.                    55

1         MR. WISHNEW:  Absolutely.

2         THE COURT:  Okay?

3         MR. WISHNEW:  Thank you.

4         THE COURT:  Thank you very much.  All right.  We're

5    adjourned.

6         MR. WISHNEW:  Thank you for your time.

7      (Whereupon these proceedings were concluded at 11:19 AM)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                      C E R T I F I C A T I O N

3

4    I, Aliza Chodoff, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9

10   _____

11   ALIZA CHODOFF

12   AAERT Certified Electronic Transcriber CET**D-634

13

14   eScribers

15   700 West 192nd Street, Suite #607

16   New York, NY 10040

17

18   Date:  September 22, 2015

19

20

21

22

23

24

25