**Hearing Date:  October 8, 2015**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Chapter 11 |
| Debtors. | Jointly Administered |

## OMNIBUS REPLY BRIEF IN SUPPORT OF
## THE RESCAP LIQUIDATING TRUST'S MOTION FOR AN
## ORDER ENFORCING PLAN INJUNCTION AND CONFIRMATION ORDER

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................1

I.   THE COUNTERCLAIMS ASSERT PREPETITION CLAIMS THAT ARE
     BARRED BY THE BAR DATE ORDER, PLAN INJUNCTION, AND
     DISCHARGE................................................................................................3

     A.   The Bar Date Order, Plan, And Confirmation Order Prohibit The
          Assertion Of Prepetition Claims Outside Of The Claims Resolution
          Process ...............................................................................................3

     B.   The Counterclaims Are Prepetition Claims, And Thus Are Barred By The
          Bar Date Order, Plan, And Confirmation Order .......................................3

II.  SIERRA'S ARGUMENT THAT RFC DID NOT RECEIVE A DISCHARGE
     IGNORES THE BAR DATE ORDER AND PLAN INJUNCTION, AND IS
     FORECLOSED BY THIS COURT'S DECISIONS AND RES JUDICATA..................11

III. THE PREPETITION CONTRACTS WERE NOT ASSUMED AND DID NOT
     "RIDE THROUGH" THE BANKRUPTCY ....................................................14

IV.  CLAIMANTS' REMAINING ARGUMENTS SHOULD BE REJECTED ...................16

     A.   This Court Is The Proper Forum To Enforce The Plan Injunction .......................16

     B.   Sierra Has Not Been Prejudiced By The Filing Of This Motion..........................17

     C.   Claimants Would Not Have Been Sanctioned For Filing Timely Proofs Of
          Claim...............................................................................................18

CONCLUSION......................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page**

<u>Cases</u>

*In re All Media Properties, Inc.,*
    5 B.R. 126 (Bankr.S.D.Tex. 1980) ...................................................................6

*In re AppliedTheory Corp.,*
    312 B.R. 225 (Bankr. S.D.N.Y. 2004)...............................................................6

*In re Bradlees Stores, Inc.,*
    No. 02 Civ. 0896(WHP), 2003 WL 76990 (S.D.N.Y. Jan. 9, 2003)
    *aff'd,* 78 F. App'x 166 (2d Cir. 2003).................................................................4

*Big Yank Corp. v. Liberty Mut. Fire Ins. Co. (In re Water Valley Finishing, Inc.),*
    139 F.3d 325 (2d Cir. 1998).................................................................... 6, 8-9

*Boeing North American, Inc. v. Ybarra (In re Ybarra),*
    424 F.3d 1018 (9th Cir. 2005) ...........................................................................9

*In re Caldor, Inc.-NY,*
    240 B.R. 180 (Bankr. S.D.N.Y. 1999)...............................................................6

*In re Chateaugay Corp.,*
    944 F.2d 997 (2d Cir. 1991)..........................................................................4, 6

*In re Drexel Burnham Lambert Grp., Inc.,*
    138 B.R. 687 (Bankr. S.D.N.Y. 1992).............................................................5-6

*Dutcher v. Reorganized Pettibone Corp.,*
    193 B.R. 667 (S.D.N.Y. 1996).........................................................................12

*In re Indu Craft Inc.,*
    No. 97-44958-RDD, 2011 WL 2619501 (Bankr. S.D.N.Y. July 1, 2011),
    *aff'd,* 2012 WL 3070387 (S.D.N.Y. July 27, 2012),
    *aff'd,* 580 F. App'x 33 (2d Cir. 2014)......................................................... 13-14

*In re Lear Corp.,*
    No. 09-14326 (ALG), 2012 WL 443951 (Bankr. S.D.N.Y. Feb 10, 2012)...........................7

*In re Manville Forest Prods. Corp.,*
    225 B.R. 862 (Bankr. S.D.N.Y. 1998), *aff'd* 209 F.3d 125 (2d Cir. 2000). .............................5

*Mazzeo v. United States (In re Mazzeo),*
    131 F.3d 295 (2d Cir. 1997)...............................................................................6

*O'Loghlin v. Cnty. of Orange,*
    229 F.3d 871 (9th Cir. 2000) .............................................................................8

*Ogle v. Fid. & Deposit Co. of Maryland,*
    586 F.3d 143 (2d Cir. 2009).......................................................................10-11

*In re Old Carco LLC*,
424 B.R. 650 (Bankr. S.D.N.Y. 2010),
*aff'd*, 2010 WL 4455648 (S.D.N.Y. Nov. 2, 2010) .................................................6

*In re Onecast Media, Inc.*,
439 F.3d 558 (9th Cir. 2006) ...............................................................................14

*Pearl-Phil GMT (Far E.) Ltd. v. Caldor Corp.*,
266 B.R. 575 (S.D.N.Y. 2001) ................................................................. 4, 5, 6-7

*In re Radio-Keith-Orpheum Corp.*,
106 F.2d 22 (2d Cir. 1939) ...................................................................................8

*In re Residential Capital, LLC*,
508 B.R. 838 (Bankr. S.D.N.Y. 2014) .....................................................3, 12, 16

*In re Residential Capital, LLC*,
2015 WL 1281960 (Bankr. S.D.N.Y. Mar. 18, 2015) ........................................12

*In re Riodizio, Inc.*,
204 B.R. 417 (Bankr. S.D.N.Y. 1997) ..................................................................6

*Schweitzer v. Consol. Rail Corp.*,
758 F.2d 936 (3d Cir. 1985) .................................................................................8

*In re Shenandoah Realty Partners, L.P.*,
248 B.R. 505 (W.D. Va. 2000) ...........................................................................14

*Siegel v. Federal Home Loan Mortgage Corp.*,
143 F.3d 525 (9th Cir. 1998) ...................................................................... 9-10, 11

*In re Sure-Snap Corp.*,
983 F.2d 1015 (11th Cir. 1993) ..........................................................................10

*Teamsters Pension Trust Fund of Philadelphia v. Malone Realty Co.*,
82 B.R. 346 (E.D. Penn. 1988) ...........................................................................12

*In re Texaco Inc.*,
No. 10-CV-8151 (CS), 2011 WL 4526538 (S.D.N.Y. Sept. 28, 2011)
*aff'd*, 505 F. App'x 77 (2d Cir. 2012) ..................................................................4

*Texaco Inc. v. Board of Commissioners*,
254 B.R. 536 (Bankr. S.D.N.Y. 2000) ...............................................................16

*Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*,
549 U.S. 443 (2007) ...........................................................................................11

*Travelers Indem. Co. v. Bailey*,
557 U.S. 137 (2009) ...........................................................................................13

*United Student Aid Funds, Inc. v. Espinosa*,
559 U.S. 260 (2010) ...........................................................................................13

*In re Velo Holdings Inc.*,
   501 B.R. 188 (Bankr. S.D.N.Y. 2013) .................................................................. 7-8

*In re Wheeling-Pittsburgh Steel Corp.*,
   108 B.R. 82 (Bankr. W.D. Pa. 1989) ..................................................................17

*In re Wood Family Interests, Ltd.*,
   135 B.R. 407 (Bankr. D. Colo. 1989) ..................................................................12

## **Statutes and Rules**

11 U.S.C. § 101(5) ..............................................................................................4

11 U.S.C. § 502(b)(1) ...................................................................................10, 18

11 U.S.C. § 1141 ........................................................................................ 11, 13-14

Fed. R. Bankr. P. 3008 .......................................................................................18

Fed. R. Civ. P. 8(d)(2) .........................................................................................15

## **Legislative History**

H.R. Rep. No. 95-595 ..........................................................................................5

## **Treatises**

8 *Collier On Bankruptcy* ¶ 1141.02 (16th ed. rev. 2013) .............................................13

## PRELIMINARY STATEMENT

Claimants' affirmative Counterclaims against RFC and the Liquidating Trust seek to collect monetary damages based upon prepetition contracts that were not assumed under RFC's Plan.[1] Accordingly, the Counterclaims are barred by the Bar Date Order, Plan, and Confirmation Order.

Claimants do not dispute the following facts:

- Claimants were parties to Prepetition Contracts with RFC (Mot. 2-4);

- Claimants received notice of RFC's bankruptcy filing (Mot. 4);

- Claimants received the Bar Date Notice, which warned them that "[a]ny holder of a claim . . . that fails to timely file a proof of claim in the appropriate form will be forever barred, estopped and enjoined from asserting such claim against the Debtors, their successors, their chapter 11 estates and their respective property . . . ." (Mot. 4-5 (quoting Bar Date Notice § 6); *see also* Bar Date Order ¶ 11);

- Claimants failed to file proofs of claim asserting any of the claims set forth in their Counterclaims, whether as matured, contingent, or otherwise (*see* Mot. 5-6); to this date, Claimants have not sought permission to file late proofs of claim;

- Claimants received notice of the confirmation hearing on the Plan (Mot. 7);

- Claimants did not object to confirmation or otherwise attempt to reserve their rights to assert claims after the bar date and confirmation of the Plan (Mot. 7);

- the Plan was confirmed and has become effective (Mot. 7);

- Claimants did not appeal the Confirmation Order, which is now a final, non-appealable order;

- the Plan and Confirmation Order provided for a discharge of and injunction against all claims against the Debtors "that arose prior to the Effective Date," and enjoined any holder of such a claim from asserting it against "the Debtors, the Liquidating Trust, or any of their respective assets or properties" (Mot. 7-8);

---

[1]    Capitalized terms used but not defined herein have the meanings ascribed to them in the Trust's opening brief, ECF No. 8947 (the "Motion" or "Mot.").

- The Plan and Confirmation Order also barred any unfiled claims, and enjoined all parties who failed to file a proof of claim from asserting such claims against RFC and the Trust:

> Except as otherwise expressly specified in the Plan, after the Effective Date, any holder of such Claim or Equity Interest shall be precluded from asserting against the Debtors, the Liquidating Trust, or any of their respective assets or properties, any other or further Claim based on any document, instrument, act, omission, transaction or other activity of any kind or nature that occurred before the entry of the Confirmation Order. (Confirmation Order ¶43; *see also* Plan Art. IX.K);

> [A]ny and all proofs of claim filed after the applicable Bar Date shall be deemed disallowed, discharged, released, and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and holders of such Claims may not receive any distributions on account of such Claims, unless such late proof of claim is deemed timely filed by a final order of the Bankruptcy Court. (Plan Art. VIII.B);

- Claimants are now seeking to assert the Counterclaims, which assert purely contractual claims under the Prepetition Contracts. (Mot. 9-11).

Given these undisputed facts, and clear precedent in this District, the Counterclaims are barred by the discharge and injunction provisions of the Plan, Confirmation Order, and Bar Date Order. Claimants' arguments to the contrary should be rejected, and the Court should enjoin Claimants from continuing to prosecute affirmative claims against RFC or the Trust for monetary recovery at the expense of the creditors who complied with the Bar Date Order and have allowed claims. As RFC and the Trust stated in their opening brief (Mot. 2, n.1), and as described in Section III below, this motion is not seeking to impair Claimants' ability to assert any viable setoff or recoupment defenses under the Prepetition Contracts.

2

I.    **THE COUNTERCLAIMS ASSERT PREPETITION CLAIMS THAT ARE
      BARRED BY THE BAR DATE ORDER, PLAN INJUNCTION, AND
      DISCHARGE**

   A.  **The Bar Date Order, Plan, And Confirmation Order Prohibit The Assertion Of
       Prepetition Claims Outside Of The Claims Resolution Process**

As in nearly every large chapter 11 case, the Debtors established an orderly process by
which creditors could assert their claims against the Debtors.  The Debtors obtained this Court's
approval of notice procedures, a noticing and claims agent, and a Bar Date Order.  The Debtors
also advised creditors that failure to timely file a proof of claim would bar any recovery on that
claim, including in the Bar Date Order and the Plan.  *See supra* pp. 1-2.

RFC's Plan provided for the ratable treatment of creditors who filed proofs of claim and
whose claims otherwise were allowed.  Among other things, creditors received interests in the
Liquidating Trust, which is pursuing claims on their behalf.  It is through the Plan—and the Plan
only—that prepetition creditors can recover on account of their claims.  The Bar Date Order,
Plan, and Confirmation Order otherwise discharged and enjoined any claims "that arose prior to
the Effective Date."  *See* Mot. 7-8 (quoting Conf. Order ¶ 42 and Plan Art. IX.K.).  As this Court
already held as to RFC's plan, a creditor who " is asserting a right of payment . . . is a holder of a
'Claim' pursuant to the Plan and the Bankruptcy Code . . . .  If [creditor] had a claim, he should
have timely filed it in these bankruptcy cases; he did not do so, and it is too late to do so now.
Any unasserted claims [creditor] had against the Debtors' estate were discharged pursuant to the
Plan." *In re Residential Capital, LLC*, 508 B.R. 838, 847 (Bankr. S.D.N.Y. 2014).

   B.  **The Counterclaims Are Prepetition Claims, And Thus Are Barred By The Bar
       Date Order, Plan, And Confirmation Order**

Claimants cannot dispute that the Bar Date Order, Plan, and Confirmation Order are
binding on them and expressly bar any claims arising prior to the Effective Date.  Rather,
Claimants attempt to evade the effect of those documents by contending that the Counterclaims

3

did not arise until after the Plan's Effective Date. *See* Sierra Opp. 5-10; Decision One Opp. 9-13. Claimants are wrong. The Counterclaims assert purely contractual claims arising out of contracts that were executed long before the petition date. As such, the Counterclaims are "claims" not only as defined in section 101(5) of the Bankruptcy Code, but also under the Bar Date Order, Plan, and Confirmation Order, which adopt the Bankruptcy Code's definition. *See* Plan Art. I.A(53).

The definition of "claim" in the Bankruptcy Code expressly includes "contingent," "unmatured," and "unliquidated" claims, making clear that the term includes both present and future rights to payment. *See* 11 U.S.C. § 101(5). As set forth in the Motion, contingent and unmatured contract claims include "'obligations that will become due upon the happening of a future event that was within the actual or presumed contemplation of the parties at the time the original relationship between the parties was created.'" Mot. 15 (quoting *In re Chateaugay Corp.*, 944 F.2d 997, 1004 (2d Cir. 1991)).

Under the law of this Circuit, the moment the parties executed the Prepetition Contracts, they each had a cognizable claim under the Bankruptcy Code in the form of a right to payment contingent upon the other party breaching the contract. *See* Mot. 13-16 (collecting cases); *In re Bradlees Stores, Inc.*, No. 02 Civ. 0896(WHP), 2003 WL 76990, at *3 (S.D.N.Y. Jan. 9, 2003) *aff'd*, 78 F. App'x 166 (2d Cir. 2003) ("[T]he Second Circuit recognizes that contract-based bankruptcy claims are deemed to arise at the time the contract is executed, and therefore a post-petition breach of a pre-petition contract gives rise solely to a pre-petition claim."); *In re Texaco Inc.*, No. 10-CV-8151 (CS), 2011 WL 4526538, at *4 (S.D.N.Y. Sept. 28, 2011) *aff'd.*, 505 F. App'x 77 (2d Cir. 2012) ("Contract claims arise upon execution of an agreement."); *Pearl-Phil GMT (Far E.) Ltd. v. Caldor Corp.*, 266 B.R. 575, 582 (S.D.N.Y. 2001) ("The Bankruptcy

4

Court's conclusion is supported by the clear weight of case law in this Circuit which recognizes that contract-based bankruptcy claims arise at the time the contract is executed.  For example, courts consistently hold that a post-petition breach of a pre-petition contract gives rise only to a pre-petition claim."); *id.* at 580-81 ("It is within the fair contemplation of the parties entering into a contract that the other party may breach it . . . . Thus, a contingent claim arises at that point in time, although it may never mature." (internal quotation marks and citation omitted)).

Notwithstanding this clear Second Circuit law, Claimants argue that their claims did not arise until they matured or the contingencies occurred (*i.e.*, when RFC and the Trust purportedly breached the Prepetition Contracts by commencing litigation against Claimants).  Claimants' argument improperly reads the words "contingent," "unmatured," and "unliquidated" out of the definition of "claim" in the Bankruptcy Code, and would undermine Congress's intent in utilizing the "broadest possible definition" so that "all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case."  *In re Manville Forest Prods. Corp.*, 225 B.R. 862, 865 (Bankr. S.D.N.Y. 1998) (quoting H.R. Rep. No. 95-595, at 309 (1977)), *aff'd* 209 F.3d 125 (2d Cir. 2000).

Claimants further argue that their Counterclaims should not be barred by the Bar Date Order and Plan confirmation because the Counterclaims are "based on the debtor's own conduct after the discharge, and not on events or actions of a third-party."  *See* Decision One Opp. 11.  But there is no rule that where the contingency or triggering event is an alleged postpetition breach by the debtor, the claim is somehow transformed into a postpetition claim.  As just noted, the law in the Second Circuit is the exact opposite:  "Where the debtors' obligations stem from contractual liability, even a post-petition breach will be treated as a prepetition liability where the contract was executed prepetition."  *In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 687,

5

695 n. 12 (Bankr. S.D.N.Y. 1992) (quotation marks and citation omitted); *In re Riodizio, Inc.*,

204 B.R. 417, 424 n. 6 (Bankr. S.D.N.Y. 1997) ("The postpetition breach of a prepetition

contract gives rise only to a prepetition claim."); *In re AppliedTheory Corp.*, 312 B.R. 225, 245

(Bankr. S.D.N.Y. 2004) ("It is basic bankruptcy law that a pre-petition promise to satisfy an

obligation upon the happening of a later condition is not transmogrified into a post-petition

obligation when the condition is satisfied post-petition.  Instead, it is simply a pre-petition

contingent claim.").[2]  Claimants' argument that the contingency must be "extrinsic" for the claim

to constitute a contingent prepetition claim finds no support in the Bankruptcy Code, and has

been explicitly rejected in this District:

> Pearl next argues that a contingent claim cannot exist unless the
> contingency is extrinsic to the contract.  Pearl purports to cull this requirement
> from language in [*Mazzeo v. United States (In re Mazzeo)*, 131 F.3d 295, 303 (2d
> Cir. 1997)], and *In re All Media Properties, Inc.,* 5 B.R. 126, 133 (Bankr.S.D.Tex.
> 1980) . . . .  However, the term "extrinsic" was not relevant to the holding of those
> cases and was never defined.  In fact, other cases in this Circuit do not mention
> the term at all, but rather define contingent claims as obligations that become due
> upon the happening of a future event.  *See Big Yank Corp. v. Liberty Mut. Fire
> Ins. Co. (In re Water Valley Finishing, Inc.),* 139 F.3d 325, 328 (2d Cir. 1998)
> ("Under contract law, an 'unmatured' or 'contingent' claim refer[s] to obligations
> that will become due upon the happening of a future event that was 'within the
> actual or presumed contemplation of the parties at the time the original
> relationship was created.'"); *see also In re Chateaugay,* 944 F.2d at 1004 (same).
> As discussed above, a potential future breach was within Pearl's contemplation at
> the time the purchase orders were executed.  The Bankruptcy Court therefore did
> not err when it determined that Pearl had a contingent claim that arose at the time
> it entered into the purchase orders, and that would have remained contingent until
> performance or breach.  [*In re Caldor, Inc.-NY*, 240 B.R. 180, 191-92 (Bankr.
> S.D.N.Y. 1999)].

---

[2]  *See also In re Old Carco LLC*, 424 B.R. 650, 660 (Bankr. S.D.N.Y. 2010), *aff'd*, 2010 WL
4455648 (S.D.N.Y. Nov. 2, 2010) ("[Creditor] had a pre-petition contractual relationship with
the Debtors and its claim stems from the breach of the very contracts that engendered that
relationship.  Although the due date for payment of the Repurchase Obligations may occur post-
petition, the obligations stem from a pre-petition relationship . . . .  [Creditor's] claim . . . is a
general unsecured claim, similar to that of other claimants who have claims against the Debtors
arising from the breach of a pre-petition contract.").

*Caldor*, 266 B.R. at 582.

Claimants' cited authority is distinguishable and inapposite. Claimants cite several cases that involved non-contractual claims that arose solely out of postpetition conduct. For example, in *In re Lear Corp.*, No. 09–14326 (ALG), 2012 WL 443951 (Bankr. S.D.N.Y. Feb 10, 2012) (Decision One Opp. 10), the court held that the discharge and plan injunction barred antitrust class action plaintiffs from "commencing or continuing the prosecution of claims based on conduct by the Reorganized Debtors that occurred before the Effective Date." *Id.* at *11. But the court also held that the reorganized debtor was "not entitled to an injunction barring the Antitrust Plaintiffs from amending their complaints in the antitrust actions to rely on post-Effective Date conduct as a predicate to liability . . . ." *Id*. Thus, in *Lear*, the antitrust claims that were allowed to proceed arose not from a prepetition contract, but from post-effective date conduct that violated a statute. The class plaintiffs had no contractual relationship to the debtor in *Lear* prior to or after the bankruptcy.

Claimants' reliance on *In re Velo Holdings Inc.*, 501 B.R. 188, 193 (Bankr. S.D.N.Y. 2013), is similarly misplaced. In *Velo*, this Court held that the Arkansas Attorney General would not be violating the discharge and injunction provisions of the plan or confirmation order if it sought to impose a fine or file a claim against the reorganized debtors "solely for deceptive practices occurring *after* Plan Confirmation . . . ." *Id.* at 193 (emphasis in original). This Court also noted that "claims arising from post-confirmation illegal conduct are not subject to discharge if they are new, independent acts . . . ." *Id.* at 194. Here, unlike in *Velo*, the claims arise purely out of prepetition contracts; they are not independent of the prepetition relationships.

7

This Court's holding in *Velo* is not inconsistent with this Circuit's law that claims arising from prepetition contracts are prepetition claims, regardless of when the alleged breach occurred.[3]

For purposes of determining when a claim arose, courts recognize the distinction between a claim arising from a prepetition contractual relationship and a tort or statutory claim arising out of postpetition conduct. *See, e.g.*, *Schweitzer v. Consol. Rail Corp.*, 758 F.2d 936, 943 (3d Cir. 1985) ("One who contracts with a debtor prior to reorganization bargains for a legal relationship with that debtor, relying on the debtor's pre-reorganization solvency. We agree that such a person should not be 'entitled to stand aloof' and avoid the consequences of the bankruptcy proceedings. In contrast, a tort plaintiff cannot in any reasonable way be said to have bargained for his cause of action.") (quoting *In re Radio-Keith-Orpheum Corp.*, 106 F.2d 22, 26 (2d Cir. 1939) (internal citation omitted)). Here, Claimants made a decision to "stand aloof" and not file proofs of claim against RFC to preserve their rights under the Prepetition Contracts, despite having received ample notice of the deadline to do so. Regardless of whether Claimants did so to try to evade this Court's jurisdiction (or for any other reason), they are now barred from pursuing claims against RFC and the Trust arising out of those contracts.

Claimants also rely heavily on a series of cases addressing whether claims for attorney's fees incurred in postpetition litigation are discharged prepetition claims. *See* Decision One Opp. 11-12; Sierra Opp. 6-9. Only one of those cases, *Big Yank Corp. v. Liberty Mutual Insurance Co.*, 139 F.3d 325 (2d Cir. 1998) (cited in Sierra Opp. 8-9), is from within this Circuit. In *Big*

---

[3]   Decision One's reliance on *O'Loghlin v. Cnty. of Orange*, 229 F.3d 871 (9th Cir. 2000), is similarly misplaced. In *O'Loghlin*, the Ninth Circuit held that the plaintiff's claim against Orange County (which had obtained a discharge in bankruptcy) for post-discharge violations of the Americans With Disabilities Act was not discharged to the extent the violations were "sufficiently independent of the pre-discharge violations." *Id.* at 876. That case says nothing about claims arising from a prepetition contractual relationship.

*Yank*, the Second Circuit found that attorney's fees awarded post-confirmation as *sanctions for bad faith conduct* by the debtor had not been discharged, because the sanctions order was not "within the parties' contemplation before the bankruptcy plan was confirmed." *Id.* at 327.  In so holding, the Second Circuit noted that "[t]his case does not fall under contract law." *Id.* at 328.  Accordingly, that holding is inapposite here, where the claim for attorney's fees did not arise from a post-confirmation sanctions award that the parties did not contemplate, but rather from a prepetition contract, the potential breach of which was within the actual or presumed contemplation of the parties as a matter of law.[4]

Claimants' reliance on the Ninth Circuit's decision in *Siegel v. Federal Home Loan Mortgage Corp.*, 143 F.3d 525 (9th Cir. 1998), is also misplaced.  *See, e.g.*, Decision One Opp. 7-8; Sierra Opp. 8.  In *Siegel*, Freddie Mac filed timely proofs of claim asserting and preserving its rights under two mortgages. *Id.* at 528.  The debtor deliberately ignored these proofs of claim (which were later allowed), waited until he had obtained his discharge, and then "return[ed] to the fray" to pursue his separate state court litigation against Freddie Mac for his own benefit. *Id.* at 531, 533.  The Ninth Circuit rejected his attempt, holding that the debtor was improperly attempting to collaterally attack the allowance of Freddie Mac's claims, to which he had failed to object.  The Ninth Circuit thus held the debtor's state court action barred by *res judicata*, and affirmed an award of attorney's fees to Freddie Mac for having to defend the state court action. *Id.*  In so holding, the Ninth Circuit criticized the debtor's conduct as an improper attempt to end run the claims process, observing that his "failure to object [to the proofs of claim] and his

---

[4]    Claimants' reliance on *Boeing North American, Inc. v. Ybarra* (*In re Ybarra*), 424 F.3d 1018 (9th Cir. 2005) (Sierra Opp. 7-8), is misplaced for the same reason.  There, attorney's fees *awarded pursuant to a California statute* (not a prepetition contract) were not discharged where those fees arose from the former debtor's post-petition litigation. *Id.* at 1020-21.

choosing to file [the state court] action even before his bankruptcy closed was an interesting tactic by which he hoped to accomplish a discharge of his obligations to Freddie Mac (and others), while keeping his own claims against it." *See also id.* at 531 ("[W]e, with all due respect, conclude that it is better to see the debtor's attack for what it is—an attempt to undercut the order of a bankruptcy court, deemed or otherwise, which allowed a creditor's claims and achieved finality for the debtor and the creditor by granting the former's discharge and release and by barring the latter from further pursuit of the claims.").

Those concerns are irrelevant here, and thus *Siegel* is inapposite. First, unlike in *Siegel*, here neither RFC nor the Liquidating Trust have had the opportunity to object to the Claimants' claims in this Court, for the simple reason that the Claimants failed to file any. Moreover, the Liquidating Trust is not pursuing claims against the Claimants for its own personal benefit, but rather for the RFC bankruptcy estate and its creditors who filed timely proofs of claim. In contrast to *Siegel*, there is nothing unfair or improper in doing so. The Trust is carrying out its responsibilities for the benefit of creditors pursuant to a confirmed Plan and Confirmation Order to which Claimants failed to object. If the Claimants wished to assert claims against the RFC estate or the Trust, including for attorneys' fees, they had ample opportunity to do so by filing timely proofs of claim and/or objecting to confirmation of the Plan. They did neither.[5]

Nothing in *Siegel* (or Claimants' other authorities) alters the clear law in this Circuit that claims arising from prepetition contracts are prepetition claims subject to the Bar Date Order, Plan, and Confirmation Order. *See supra* § I.B; *Ogle v. Fid. & Deposit Co. of Maryland*, 586

---

[5]    Claimants reliance on *In re Sure-Snap Corp.*, 983 F.2d 1015, 1018 (11th Cir. 1993) (Decision One Opp. 8-9; Sierra Opp. 6) is misplaced for the same reasons. As in *Siegel*, the reorganized debtor in *Sure-Snap* pursued post-confirmation litigation *for its own benefit* after receiving a discharge. *Id.* at 1018. And, as in *Siegel*, the issues raised by the debtor had already been resolved by the Bankruptcy Court. *See id.*

F.3d 143, 147 (2d Cir. 2009) ("Accordingly, we hold that an unsecured claim for post-petition

fees, authorized by a valid pre-petition contract, is allowable under section 502(b) and is deemed

to have arisen pre-petition."); *see also Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*,

549 U.S. 443, 446 (2007) (holding that creditor was entitled to file a protective proof of claim for

postpetition attorney's fees that it might incur, as part of its *prepetition* claim).

It is thus not surprising that this holding in *Siegel* has never been cited by a court in this

Circuit. And, *Siegel* (and Claimants' other "attorney's fee" cases) only addressed the discharge

pursuant to a plan and the Bankruptcy Code. Those cases did not involve or address injunctive

provisions  such as those in the Bar Date Order, Plan, and Confirmation Order here, which bar

the Counterclaims separate and apart from the discharge. *See supra* p. 2 (citing Confirmation

Order ¶ 43; Plan Art. VIII.B).[6]

## II. SIERRA'S ARGUMENT THAT RFC DID NOT RECEIVE A DISCHARGE IGNORES THE BAR DATE ORDER AND PLAN INJUNCTION, AND IS FORECLOSED BY THIS COURT'S DECISIONS AND RES JUDICATA

Sierra argues that its Counterclaims are not barred because RFC purportedly did not

receive a discharge. *See* Sierra Opp. 10-13. Sierra argues that the Confirmation Order provides

a discharge "to the extent allowed under section 1141 of the Bankruptcy Code," and section

---

[6]    Even if this Court were to find that the Counterclaims were not discharged, those claims could only be asserted against RFC, not the Trust. The Plan and Confirmation order make clear that the Trust is only responsible to make distributions to creditors that have Allowed Claims. *See* Plan Arts. VI, VII; Confirmation Order ¶ 21 ("The Liquidating Trust . . . shall have no liability other than as set forth in the applicable trust agreement, and shall have no other obligations other than to carry out the purpose and obligations of the respective Plan Trust in accordance with their terms."). In order to hold an Allowed Claim, a creditor must either have filed a proof of claim pursuant to the Bar Date Order or otherwise have had its claim allowed by this Court. Plan Art. I.11. Claimants have done neither. In accordance with section 1141(c) of the Bankruptcy Code, the Trust otherwise took all of its assets (including the causes of action against Claimants) free and clear of any other obligations or liabilities. *See* Plan Art. VI.C; Confirmation Order ¶ 25.

1141(d)(3) prohibits the discharge of a liquidating business. *Id.* 10-11. Thus, according to Sierra, RFC did not receive a discharge of any liabilities. Sierra is mistaken.

First, even if this Court were to find that RFC did not receive a discharge under the Confirmation Order and section 1141, the Counterclaims are still barred by the independent injunction provisions of the Bar Date Order, Plan, and Confirmation Order, which bar all unfiled claims arising before the Effective Date. *See supra* p. 2 (citing Confirmation Order ¶ 43; Plan Art. VIII.B).

Moreover, this Court has already held that the Plan and Confirmation Order discharged and otherwise protected the Debtors, including RFC, from all claims that were not the subject of timely proofs of claim. *See In re Residential Capital, LLC*, 508 B.R. 838, 847 (Bankr. S.D.N.Y. 2014) ("Any unasserted claims [creditor] had against the Debtors' estate were discharged pursuant to the Plan."); *see also In re Residential Capital, LLC*, 2015 WL 1281960, at *4 (Bankr. S.D.N.Y. Mar. 18, 2015) ("[T]he confirmed plan discharged any liability that the Debtors may have had to [Creditor]. The relief he seeks from RFC and Homecomings in the Federal Action is precluded under the Plan.").[7] There is no reason to depart from these decisions.

This Court has also held that confirmation of the Plan is *res judicata* as to, among other issues, the discharge of liabilities. Thus, Claimants are barred from attacking the discharge and injunctions under the Bar Date Order, Plan, and Confirmation Order. *See Residential Capital,*

---

[7]    Sierra's cases (Sierra Opp. 11) are irrelevant; none involved a successful collateral attack on the discharge and injunction provisions of a bar date order or a plan *after* confirmation. *See Dutcher v. Reorganized Pettibone Corp.*, 193 B.R. 667 (S.D.N.Y. 1996) (holding that discharge applied, and thus refusing to strike discharge as an affirmative defense in litigation against former debtor); *Teamsters Pension Trust Fund of Philadelphia v. Malone Realty Co.*, 82 B.R. 346 (E.D. Penn. 1988) (defendants, former debtors, conceded they had not received a discharge); *In re Wood Family Interests, Ltd.*, 135 B.R. 407 (Bankr. D. Colo. 1989) (denying confirmation in part because creditor objected to discharge provisions of plan).

508 B.R. at 846-47 ("Confirmation of a plan operates as a final judgment for *res judicata* purposes. Under the doctrine of *res judicata*, questions concerning the treatment of any creditor under the plan, discharge of liabilities, or disposition of property, may no longer be raised after plan confirmation.") (internal quotation marks and citation omitted). The Plan is binding "upon a broad list of entities once it is confirmed," including "every entity that holds a claim against or interest in the debtor even though a holder of a claim or interest is not scheduled, has not filed a claim, does not receive a distribution under the plan or is not entitled to retain an interest under such plan." *Id.* (quoting 8 *Collier On Bankruptcy* ¶ 1141.02 (16th ed. rev. 2013)).

It is undisputed that Claimants received notice of the bankruptcy filing, the Bar Date, the Plan, the confirmation hearing, and the Confirmation Order, and that Claimants did not file a proof of claim, object to confirmation, or otherwise seek to modify or appeal the Plan or Confirmation Order. *See* Mot 4-8. As such, the Bar Date Order, Plan, and Confirmation Order are binding on Claimants, and they are barred from collaterally attacking the discharge and injunction provisions. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152 (2009) (holding that *res judicata* prevented collateral attack of confirmation order even where the bankruptcy court might not have had subject matter jurisdiction to issue third-party injunction contained in order); *see also United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 273–75 (2010) (confirmation order that may have been legally erroneous was still binding on creditor that had notice of order and did not object or file timely appeal).

Finally, Sierra's section 1141 argument was rejected by Judge Drain in *Indu Craft*, which held that the incorporation of section 1141 into the discharge provisions of a confirmation order involving a liquidating debtor did not negate the very same discharge that the order had granted. *In re Indu Craft Inc.*, No. 97-44958-RDD, 2011 WL 2619501, at *6-7 (Bankr. S.D.N.Y. July 1,

2011), *aff'd*, 2012 WL 3070387 (S.D.N.Y. July 27, 2012), *aff'd,* 580 F. App'x 33 (2d Cir. 2014). As with Sierra, a creditor in *Indu Craft* argued that "the Confirmation Order itself incorporated section 1141 and, therefore, was limited by section 1141(d)(3)." *Id.* at *6. Thus, the creditor argued, "notwithstanding the Order's provision that the debtor is going to receive a discharge, it really didn't mean it—instead, the real meaning of the Confirmation Order is that the debtor will receive a discharge except that it won't receive a discharge because the discharge is only pursuant to 1141." *Id.* Judge Drain rejected this argument, holding that it would make no sense for the confirmation order to at once grant a discharge and then deny it, and despite referencing section 1141, "[t]here was no suggestion that the parties intended to incorporate section [1141](d)(3) into the plan or the Confirmation Order." *Id.* at *7. Moreover, "even if [the court] did not have authority to grant a discharge, [the] Confirmation Order was final, not subject to appeal and *res judicata* and the plan could not be modified." *Id.* The same is true here. There would be no reason for the Confirmation Order to simultaneously grant and deny a discharge, the Confirmation Order does not reference section 1141(d)(3), and there is no indication the parties intended to nullify the discharge by implicitly incorporating section 1141(d)(3).[8]

## III.    THE PREPETITION CONTRACTS WERE NOT ASSUMED AND DID NOT "RIDE THROUGH" THE BANKRUPTCY

Claimants argue that RFC cannot "retain the favorable features of a contract and reject the unfavorable ones." *See* Decision One Opp. 5. RFC and the Trust are doing no such thing. RFC had causes of action against Claimants arising out of the Prepetition Contracts that were expressly preserved in the Plan and Confirmation Order. *See* Confirmation Order ¶ 49; Plan Art.

---

[8]    Even if the Confirmation order had not included a discharge, section 1141(c) authorizes a plan to provide for the disposition of property free and clear of any claims such as the ones being asserted by Claimants. *See In re Shenandoah Realty Partners, L.P.*, 248 B.R. 505, 513 (W.D. Va. 2000). Here the Plan does exactly that. *See* Plan Art. VI.C.

I(A)(50).[9]  To the extent Claimants had affirmative claims against RFC arising out of those same contracts, the Bar Date Order and RFC's status as a chapter 11 debtor required Claimants to file proofs of claim to preserve those claims.  The same requirement applied to all creditors of RFC.  Claimants should not be in a better position than any other creditor (*i.e.* excused from filing a proof of claim) simply because RFC and the Trust have sued Claimants.

Moreover, as the Trust acknowledged in its opening brief (Mot. 2, n. 1), Claimants' affirmative defenses of setoff and recoupment are fully preserved to the extent they are viable.  The Trust is not seeking to enjoin Claimants from asserting those defenses.  Rather, the Trust is seeking to enforce the provisions in the Bar Date Order, Plan, and Confirmation Order, which preclude *affirmative* recoveries by these creditors who failed to file proofs of claim.[10]

Claimants' argument that the Trust cannot "cherry-pick" favorable provisions of the Prepetition Contracts not only mischaracterizes the Trust's motion to enforce, but also erroneously relies on law applicable to the assumption of executory contracts.  *See* Decision One Opp. 5-6.  That law is irrelevant here.  To the extent the Prepetition Contracts are executory (which the Trust does not concede), they were not assumed, and thus were expressly rejected pursuant to the Plan.  *See* Plan Art. V.A ("[E]ach Executory Contract and Unexpired Lease not previously assumed shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date . . ."); *see* Notice of Filing of Complete Assumption Schedule Constituting Exhibit 1 of the Plan Supplement, ECF No. 6035 (not listing

---

[9]  *Cf. In re Onecast Media, Inc.*, 439 F.3d 558, 563 (9th Cir. 2006) (holding that rejection of executory contract does not bar debtor's claims or defenses as to that contract).

[10]  PHH argues that its assertion of its breach of contract claims as affirmative counterclaims is proper because it is allowed to plead defenses and claims in the alternative.  PHH Opp. 7 (citing Fed. R. Civ. P. 8(d)(2)).  But that has no bearing on whether PHH's Counterclaim is barred by the Bar Date Order, Plan, and Confirmation Order.

any of the Prepetition Contracts).  Claimants do not argue otherwise.  Moreover, Claimants did

not file claims for rejection damages, despite receiving notice of the rejection claims bar date.

*See* Confirmation Order ¶ 50(d); Plan Art. V.A.

Similarly, the Prepetition Contracts did not "ride through" RFC's bankruptcy.  Thus,

Sierra's reliance on *Texaco Inc. v. Board of Commissioners*, 254 B.R. 536 (Bankr. S.D.N.Y.

2000) (Sierra Opp. 9) is misplaced.  There, the court held "that claims arising after confirmation

from a contractual relationship are not barred by a confirmation order."  *Id.* at 559.  The court

also held, however, that the contracts at issue had been neither rejected nor assumed, and thus

"passe[d] through the bankruptcy unaffected by it, just the same as if the contract or lease had

been assumed under Section 365."  *Id.* at 558.  In those circumstances a party cannot choose

which provisions to assume.  But as just described, those are not the circumstances here.  Even if

the Prepetition Contracts were executory, they were rejected.

## IV.    CLAIMANTS' REMAINING ARGUMENTS SHOULD BE REJECTED

### A.  This Court Is The Proper Forum To Enforce The Plan Injunction

PHH argues that by filing the Motion here, rather than in the Minnesota District Court,

the Trust violated the Client Contract and Judge Koeltl's order withdrawing the reference as to

the Trust's action against PHH (PHH Opp. 5).  Not so.  *First*, under the Plan, this Court retained

"exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the

Plan . . . including . . . (i) regarding the existence, nature, and scope of the releases, injunctions,

and exculpation provided under the Plan, and (ii) [to] enter such orders as may be necessary or

appropriate to implement such releases, injunctions, and other provisions."  Plan Art. XII; *see

also* Confirmation Order ¶ 66.  *Second*, it is well settled that this Court has jurisdiction to

interpret and enforce the discharge and injunction provisions in the Confirmation Order.  *See

Residential Capital*, 508 B.R. at 849 ("[W]here a motion seeks to prevent the prosecution of

16

causes of action expressly prohibited by the confirmation order, it would be difficult to identify judicial acts that are any more critical to the orderly functioning of the bankruptcy process or more closely tethered to core bankruptcy jurisdiction.") (internal quotation marks and citation omitted). *Third*, Judge Koeltl's order transferred RFC's action against PHH to Minnesota, it did not transfer core bankruptcy motions, including motions to enforce the Bar Date Order and Plan. *Cf. In re Wheeling-Pittsburgh Steel Corp.*, 108 B.R. 82, 85 (Bankr. W.D. Pa. 1989) ("Public policy and inconvenience require us to deny enforcement of Blue Cross's forum selection clause. Public policy favors centralization of bankruptcy proceedings in the bankruptcy court where the case is pending. A disputed claim is a core matter to be heard by the bankruptcy court despite a forum selection clause." (internal citations omitted)). Indeed, Judge Koeltl's order was issued long before PHH asserted its Counterclaims in violation of the Bar Date Order, Plan, and Confirmation Order, and thus Judge Koeltl did not consider that issue. *Fourth*, as noted in the Motion, the Trust informed Judge Nelson that it would be bringing the Motion here. Judge Nelson did not raise any concerns, and Claimants did not object. Mot. 13.

### B. Sierra Has Not Been Prejudiced By The Filing Of This Motion

Sierra asserts that because it filed its Counterclaims in September 2014, it has incurred significant attorney's fees pursuing the Counterclaims, and thus has been harmed by the filing of this Motion now. Sierra Opp. 4. Sierra's supposed injury is illusory. RFC and the Trust answered Sierra's Counterclaims on October 14, 2014, and pleaded as an affirmative defense that the Counterclaims were barred by RFC's discharge, Plan, and Liquidating Trust Agreement. *See* Mot. 10. Sierra knew this 11 months ago, but failed to withdraw its Counterclaims.

Moreover, Sierra asserted an affirmative defense of setoff for the same breaches underlying its counterclaims. *See* Am. Answer, *RFC v. Sierra Pacific*, No. 13-cv-3511 (D. Minn.), at p. 18 (Second Affirmative Defense), ECF No. 100. As noted above, the Trust is not

seeking to bar Claimants from asserting viable affirmative defenses of setoff and recoupment. *See supra* p. 2; *see also* Mot. 2 n. 1.  Thus, Sierra would have been litigating the same purported breaches and taking the same discovery regardless of whether the Motion was filed.

### C.  Claimants Would Not Have Been Sanctioned For Filing Timely Proofs Of Claim

Honor Bank speculates that if it had filed a proof of claim asserting its rights under the Prepetition Contracts, it may have been "sanctioned by the Court," and its claim would have been objected to and disallowed.  *See* Honor Bank Opp. 7.  Honor Bank provides no support for this, nor can it.  The Bar Date Notice states that a proof of claim must be filed for any right to payment, "whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, [or] unmatured . . . ."  Bar Date Notice, ECF No. 1412, Ex. G § 1.  Under Honor Bank's theory, any creditor asserting a contingent or unmatured claim would be subject to sanctions.  That makes no sense, and is directly contrary to the Bankruptcy Code's definition of "claim."

Nor would a timely filed proof of claim be subject to disallowance based on the mere fact that it was contingent or unmatured.  *See* Honor Bank Opp. 7.  The Bankruptcy Code expressly provides that a claim's status as contingent or unmatured is *not* a valid basis on which to object to that claim.  *See* 11 U.S.C. § 502(b)(1) (providing that a court shall allow a claim "except to the extent that . . . such claim is unenforceable . . . for a reason *other than because such claim is contingent or unmatured*." (emphasis added)).  Accordingly, Honor Bank's argument that timely filing a proof of claim would not have made a difference is incorreect.

### CONCLUSION

For the foregoing reasons, the Court should (1) enjoin Claimants from continued prosecution of the Counterclaims; (2) award appropriate monetary relief pursuant to Article IX.I of the Plan; and (3) impose such other and further relief as the Court deems just and proper.

18

Dated:  October 1, 2015

QUINN EMANUEL URQUHART
  & SULLIVAN, LLP

By:    /s/ Isaac Nesser  
    Peter E. Calamari
    David L. Elsberg
    Isaac Nesser
    Matthew Scheck
    51 Madison Avenue, 22nd Floor
    New York, New York  10010
    Telephone:  (212) 849-7000
    Facsimile:  (212) 849-7100
    PeterCalamari@quinnemanuel.com
    DavidElsberg@quinnemanuel.com
    IsaacNesser@quinnemanuel.com
    MatthewScheck@quinnemanuel.com

CARPENTER LIPPS & LELAND LLP
Jeffrey A. Lipps (admitted *pro hac vice*)
Jennifer A.L. Battle
1540 Broadway, Suite 3710
New York, New York  10036
Telephone:  (212) 837-1100
Facsimile:  (212) 837-1108
lipps@CarpenterLipps.com
battle@CarpenterLipps.com

*Counsel for the ResCap Liquidating Trust*

19