**Addendum to be added on the court date scheduled Hearing Date and Time: November 03, 2015 at 2:00 p.m. (Prevailing Eastern Time) by Overnight delivery to all the Parties involved.**

Elda Mercedes Thompson
137 Ellery Avenue
Newark, NJ 07106-3501
Tel. #973.687.4117
Fax. #609.531.6075

Maria Mercedes Thompson
29 General Lane
Willingboro, New Jersey 08046
Telephone: (609) 531-6075
Facsimile: (609) 531-6075
Cellular: (973) 687-4117

Richie Lim
Morrison| Forester
250 West 55th Street
New York, NY 10019-9601
Tel. # 212.468.8000
Fax. # 212.468.7900

Hon. Martin Glenn, USBJ
United States Bankruptcy
Southern District of New York
One bowling green
New York, New York 10004-1408

RECEIVED
OCT - 6 2015
U.S. BANKRUPTCY COURT, SDNY

## UNITED STATES BANKCRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| In re: | Case No. 12-12020 (MG) |
|---|---|
| RESIDENTIAL CAPITAL, LLC, et. at. | Chapter 11 |
| Debtors | Jointly Administered |

1

**THIS IS ADDENDUM WHICH REFERS TO THE ADDENDUM SENT TO THE UNITED STATES BANKCRUPTCY COURT ON SEPTEMBER 17, 2015. IT SUPPORTS THE DECLARATION OF EVIDENCE AGAINST GMACM, THE MORTGAGEE, THROUGHOUT THE GIVEN STATEMENT, COMMITING FRAUD WHEN IMPLETED THE MORTGAGE LOAN DOCUMENT INTEREST ON THE RESIDENCE, 137 ELLERY AVENUE NEWARK, NEW JERSEY 07106-3501, OF 5.990 %, ACTUALLY COLLECTING 6.6540 % ON EACH PAYMENT. IT IS NOTED THAT THE MORTGAGE LOAN DOCUMENT IN QUESTION THAT WAS NEVER LEGALLY REGISTERED WITH ESSEX COUNTY REGISTER, HALL OF RECORDS, ROOM 130, 465 MARTIN LUTHER KING, JR. BLVD NEWARK, NEW JERSEY. AND FINALLY THE EXHIBIT A THROUGH M WILL DEMONSTRATE THE ERROR.**

**CLAIM NO. 1083 FILLED BY ELDA AND MARIA THOMPSON**

***PLEASE TAKE NOTICE*** that GMAC did not properly registered the mortgage documents properly as stated in the ***Assignments of Mortgage (or Deed of Trust)***, an assignment transfers all of the interest the initial mortgagee had underneath the mortgage (or deed of trust) to the latest bank/mortgage company. Usually, the mortgage (or deed of trust) is recorded right away once the mortgagors sign it and the interest being charged is the same as the calculated interest.

***AS PER OUR AGREEMENT,*** Elda and Maria Thompson, are submitting the additional evidence of "Basis for Claim", sufficient information for the complete understanding the calculations used to determine the amount claimed to be owed.

**Dated:** September 30, 2015
   New Jersey

Respectively Submitted,

                                              Elda M Thompson
                                              Maria M Thompson
                                              29 General Lane
                                              Willingboro, New Jersey 08046
                                              Telephone: (609) 531-6075
                                              Facsimile:  (609) 531-6075
                                              Cellular:     (973) 687-4117

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEWYORK

In re:                                                    Case No. 12-12020 (MG)

RESIDENTIAL CAPITAL, LLC, et al.                          Chapter 11

                        Debtors.

**THE FOLLOWING EVIDENTIARY ITEMS LISTED BELOW, ARE THE ITEMS BEIGN PRESENTED IN THE EVIDENTIARY HEARING AS SOLELY RELATES TO THE FRAUD COMMITTED BY GMAC BACK IN JULY 2005 OF PROOF FOR <u>CLAIM NO. 1083 FILED BY ELDA AND MARIA THOMPSON</u>**

## DISCOVERY

**1. *TRUTH IN LENDING*,** The Federal Truth in Lending Act involves mortgage mortgagees, just like GMACM to stipulate a comprehensive report concerning the credit transactions to the mortgagors, Elda and Maria Thompson. TILA also imposes liability on the mortgagee, GMACM, once they fall short in providing the document data truthfully or in the essential form. Likewise, the liability for a mortgagee's, GMACM, error that may possibly permit from beginning to end to an assignee, consequently causing the consumer of the mortgage loan document accountable of the errors made via the preceding remortgage loan corporation.

Statutory liability under TILA will frequently occur once the lender, meaning Elda and Maria Thompson. In a particular action under Section 3, the evaluation of the damages that could possibly include the following actual damages, statutory damages and attorneys' fees as well.

**2. *HIGH-RATE REVIEW*,** short of Current Rate Set and Current Rate lock dates, the System expends the Current Rate Locks Dates the same as the ***"dates the interest***

***rate is set*** " to establish the NJ Subprime Mortgage starting point. Meanwhile both dates are absent from this mortgage loan document, the System expended the Document Sign Date. This may perhaps influence the consistency of the New Jersey High-Risk/Subprime Mortgage threshold outcomes. (N.J. Rev. 46: 10B-50)

"High Risk Mortgage" represents the initial mortgage loan document that has one or more of the succeeding features, is initially an interest only mortgage loan document with a potential interest reset rate, at that moment has a reset mortgage interest rate that escalates the original interest rate through two or additional percentage points and encloses a payment ***"option plan"*** or a ***"pick a payment"*** strategy and holds a negative ***"paying off"*** timetable, which is a subprime mortgage loan document, which entails a ***"consumer credit transaction"***, ensured through the consumer's primary private residence, with an annual percentage rate that surpasses the standard ***"prime offer rate"*** for an equivalent contract, to the same degree, the date the interest rate is set, through 1.5 or additional percentage points for mortgage loan document locked through an initial lien on a private residence, or through 3.5 or additional percentage points for the mortgage loan document locked through a secondary lien on a private residence; includes an law or regulation installment fine; or is a high price tag on the mortgage loan document as expressed in Section 3 of the "New Jersey Home Ownership Security Act of 2002," P.L.2003, c.64 (C.46:10B-24).

**3. *N.J. Stat. § 31:1-1,*** "Contract rate; rate on mortgages on dwellings and other loans; computation of interest or discount; determination of rates

(a) Except as herein and otherwise provided by law, no person shall, upon contract, take, directly or indirectly for loan of any money, wares, merchandise, goods and chattels, above the value of $ 6.00 for the forbearance of $ 100.00 for a year, or when there is a written contract specifying a rate of interest, no person shall take above the value of $ 16.00 for the forbearance of $ 100.00 for a year."

**4. *N.J. Stat. § 31:1-3,*** "Forfeiture of all interest; deduction from recovery
In all actions to enforce any note, bill, bond, mortgage, contract, covenant, conveyance,

or assurance, for the payment or delivery of any money, wares, merchandise, goods, or chattels lent, and on which a higher rate of interest shall be reserved or taken than was or is allowed by the law of the place where the contract was made or is to be performed, the amount or value actually lent, without interest or costs of the action, may be recovered, and no more. If any premium or illegal interest shall have been paid to the lender, the sum or sums so paid shall be deducted from the amount that may be due as aforesaid, and recovery had for the balance only."

http://loansandlending.uslegal.com/interest/new-jersey-interest-rate-laws/#sthash.E3PwZo9w.dpuf

*The following Exhibits will answer the request of evidence:*

***Exhibit A-*** It is the statement for January 01, 2009, reflecting the payment from December 31, 2008. The interest that is on the statement is 5.990% not 6.6540%.

***EXHIBIT B-*** It is the statement for August 01, 2009, reflecting the payment from July 08, 2009. The interest that is on the statement is 5.990% not 6.6540%.

***EXHIBIT C-*** It is the statement for June 23, 2010, reflecting the payment from August 08, 2010. The interest that is on the statement is 5.990% not 6.6540%.

***EXHIBIT D-*** It is the statement for February 23, 2011, reflecting the payment from postdate of July 10, 2008 to August 01, 2010. The interest that is on the statement is 5.990% not 6.6540%.

***EXHIBIT E-*** It is the statement for February 23, 2011, reflecting the payment from postdate of February 11, 2009 to February 01, 2009. The interest that is on the statement is 5.990% not 6.6540%.

***EXHIBIT F-*** It is the statement for March 01, 2011, reflecting the payment from April 12, 2011. The interest that is on the statement is 5.990% not 6.6540%.

***EXHIBIT G-*** It is the statement for April 12, 2011, reflecting the payment from April 01, 2011. The interest that is on the statement is 5.990% not 6.6540%.

***EXHIBIT H-*** It is the statement for April 01, 2011, reflecting the payment from November 01, 2013. The interest that is on the statement is 5.990% not 6.6540%.

***EXHIBIT I-*** It is the statement for July 17, 2014, reflecting the payment from February 01, 2015. The interest that is on the statement is 5.990% not 6.6540%.

***EXHIBIT J-*** It is the statement for August 18, 2014, reflecting the payment from February 01, 2015. The interest that is on the statement is 5.990% not 6.6540%.

***EXHIBIT K-*** It is the statement for March 16, 2015, reflecting the payment from postdate of July 10, 2008 to August 01, 2010. The interest that is on the statement is 5.990% not 6.6540%.

***EXHIBIT L-*** Forensic Audit on 137-139 Ellery Avenue Newark, New Jersey 07106-3501 property; the Forensic Audit on the given address demonstrates the mortgage documentation on said property which did not pass the state regulations and that GMAC was also charging a higher interest rate than what is stated on the billing statements. GMAC has an APR of 5.99000 % with a P & I payment $1227.71, the margin is 2.75000 %. The Forensic Audit has a disclosed APR of 6.6554 % and a calculated APR of 6.6554 %, with a difference of 0.0014 %. According to the Forensic Audit the APR is 6.6554 % and the margin is 2.75000 %.

In addition, the review also includes an analysis of the significant information in the mortgage documentation agreements to evaluate the conformity with the specific characteristics of the Consumer Protection Laws relating to the GMAC mortgage lending company which includes the Truth-In-Lending, the anti-predatory lending and the pertinent Federal and State Consumer Protection Laws and Regulations.

The Forensic Audit review details demonstrating the following five regulations of the mortgage documentation were violated by the lending company Ameriquest then kept and transferred to GMAC.

1. The New Jersey Lenders Act which forbids third party fees in a first lien loan if disbursed to the mortgagee as an alternative of a third party contributor.

***N.J.A.C. 3:1-16.2*** it delineates as assurance fee as....."A fee, exclusive of Third Party Fees, levied by a lender as a deliberation for binding the Lender to create a loan in Agreement with the standings and circumstances of its commitment and allocated on or after acquiescence of the commitment.... The Volume of several commitment fees intends to be judiciously linked to its resolution and may be established upon a proportion of the principal sum of the loan or the sum funded."

2- The New Jersey Licensed lenders Act (***N.J. REV. State 17:11C-28; N.J. ADC 3:15-9.2***) does not consent Settlement or Closing Fee (***Fee ID: 51***) to be charged to the Borrower in New Jersey.

***N.J. Stat. Ann. 17:11C-23*** (West, WESTLAW through 2004). The resolved of the statue is to limit the fees licensed Lenders may charge indispensable to the commencement, handling and closing of a mortgage loan transaction. Gulkowsky v. Equity One Inc., ***821 A.2d 485, 513 (N.J. Super. 20030***, revised on other sediments, ***848 A.2d 747 (N.J. 2004)***; in executing the decree, the New Jersey Department of Banking states a commitment fee as abide by:
"Commitment fee: Defined as a fee, exclusive of third-party fees, imposed by a lender as consideration binding the tender to make a loan in accordance with the terms and conditions of its commitment and payable on or after acceptance of the commitment, except a lock-in fee charged pursuant to (a) 5 below, the amount of any commitment fee shall be reasonably related to its purpose and may be based upon a percentage of the principal amount of the loan or the amount financed."

***Section 22 of P.L. 1996, c.157 (C.17:11C-22) is amended to read to as follows:***
a.      No individual intend to use the word "mortgage" or comparable words in several marketing, signs, letterheads, cards, or like substance which incline to characterize that the individual organizes the first mortgage loans except that an individual is licensed to act as a mortgage banker or mortgage broker underneath this act, or is released from licensing beneath section 4 of this act. No individual licensed under this act will be granted a license in a name holding such texts as "insured," "bonded," "guaranteed,"

"secured" and the like. Nonetheless the prearrangements of section 18 of ***P.L. 1948, c.67 (C.17:9A-18)*** or any other law to the mortgage broker or mortgage advocate may use the terminologies "mortgage banker" (or), "mortgage broker," or " mortgage solicitor," correspondingly, as part of the licensee's name.

**b.** No mortgage banker or mortgage broker shall, in relationship with or accompanying the creating of a first mortgage loan, entail or allow the mortgage implement or bond or note to be satiated in subsequently it has remained contracted, except blank spaces connecting to documenting.

**c.** No mortgage baker or broker shall charge or precisely straight or circuitously from the mortgagor or any other individual's fees, commissions or charges not sanctioned by this act.

**d.** No individual shall obtain any commission, bonus or fee in joining with positioning or commencing a first mortgage loan for a borrower except if that individual is licensed or exempt from licensure by way of a mortgage banker or mortgage broker, except that a [recorded] licensed mortgage advocate may receive a commission, bonus, or fee from his/her employer.

**e.** No individual or licensee sanctioned to act as a mortgage banker or mortgage broker shall compensate any commission, bonus, or fee to any individual not licensed or not exempt under the endowments of this act in joining with positioning with positioning for or starting a mortgage loan for a borrower, except that a [recorded] licensed mortgage advocate may be paid a bonus, commission or fee by his employer.

**f.** No individual shall acquire or make an effort to get a license by deception or falsification.

**g.** No mortgage banker or broker shall distort, evade, or suppress the nature of any physical precise of any transaction to which the mortgage banker or broker is a party.

**h.** No mortgage banker or mortgage broker shall neglect to disburse the funds in agreement with the mortgage banker's or broker's contracts, without then well-arranged by the commissioner or a court of this State or of the United States.

**i.** No mortgage banker or mortgage broker shall fall deprived of respectable cause to account or transport to any individual assets, money, or thing of value, which is not to the mortgage banker's or broker's property, or which the mortgage banker or broker is not in law or equity permitted to retain under the State of Affairs, at the time which has remained agreed upon, or is mandatory by law or, in the nonappearance of a fixed time, upon mandate of the individual titled to such accounting and delivery.

**j.** No individual or licensee shall neglect to position an escrow, instantaneously upon receiving, any money, fund, deposit, check or draft commended to him/her via any individual distributing with him her as a mortgage banker or mortgage broker, in a way approved by the commissioner, to deposit the assets in a trust or escrow account retained by him/her with a financial institution the deposits of which remain insured by the Federal Deposit Insurance Corporation or [the Federal Savings and Loan Insurance Corporation] its predecessor, in which the funds shall be reserved pending the expenditure thereof is appropriately sanctioned.

**k.** If a mortgage banker or mortgage broker that provides loans continuously to a closing agent for the determination of closing and shall not fail:
- (1) To present a certified check, cashier's check, teller's check or bank check for the proceeds of the first mortgage loan
- (2) To arrange an electronic fund transfer for the continues of the loan
- (3) To deliver for payment by cash to the closing agent at a judicious time and position prior to the time of the mortgage closing transaction.

The closing agent shall deposit the loan continues in a trust or escrow account, which shall not be commingled with the agent's own funds, and shall distribute the loan ensues upon the closing or settlement in arrangement with the settlement forms. Nonentity controlled in this subsection K. shall necessitate a mortgage banker or mortgage broker

9

to exploit a closing agent, nor avert the mortgage from the account of the mortgage banker or mortgage broker from straightforwardly distributing loan ensues from the account of the mortgage banker or mortgage broker to the mortgagor and other individuals authorized to obtain expenditures from the reimbursement if a closing agent is not used. Nothing controlled in this subsection k. avert the individual or licensee from evaluating a judicious charge as set forth by directive by the commissioner to replicate the supplementary expenditure to the individual or licensee for the issuance of a certified, cashier's, teller's, or bank check or positioning an electronic fund transfer. That judicious charge shall be fully revealed at the request or at or preceding to the issuance of the loan commitment, a "bank check" indicates a transferable savings and loan connotation on itself or on its account in alternative state or federally commissioned bank, savings bank or savings and loan connotation liability business in this State. A "teller's check" entails draft drawn by a bank on additional bank, or allocated at or through a bank.

3- The New Jersey Licensed Lenders Act (*N.J. Revised State 17:11C-28:N.J. ADC3:15-9.2*) does not permit Settlement or closing fee (*Fee ID: 51*) to be charged to the Borrower in New Jersey State.

Subchapter 9 administrates allowable fees to be charged by mortgage bankers, communicator mortgage bankers and mortgage brokers. *N.J.A.C. 3:15-9.1(a)* is projected to be obliterated, as the subsection is duplicative of what is controlled in the stability of the subchapter.

*N.J.A.C. 3:15-9.2(b),* which prohibits secondary Lenders from accumulating interest beforehand it is earned, is projected to be obliterated. The Department regulated that an Act does not proscribe this procedure as to secondary Lenders.

4- The New Jersey Licensed Lender's limits the quantity of the additional Service fee for recording a cancellation of a mortgage to $25,000 (*N.J. ADC 3:1-16.2(a) (3)*)

***N.J.A.C. 3:116.2 (a) (3)***, Subchapter 16 standardizes the fees, charges, and requirements associated with submissions for closed-end residential mortgage loans secured by first liens. The precise, rules set the necessities for the loan applications, lock-in agreements, and commitments, and define the allowable fees. Changes are projected in ***N.J.A.C. 3:1-16.1*** and ***16.3*** to imitate withdraw of the Mortgage Banker and Brokers Act, N.J.S.A.17:11B-1 et seq. and its substitute by the Licensed Lender Act, ***N.J.S.A. 17:11B-1 et seq.*** and its substitute by the Licensed Lenders Act, ***N.J.S.A. 17:11C-1 et seq.*** and the transformed terminologies from that constitutional substitution. Moreover, language variations to simplify the rule are projected at ***N.J.A.C. 3:1-16.2.***

**5-** This Mortgage Agreement Loan, a High Risk Mortgage Loan. Under the New Jersey Mortgage Stabilization and Relief Act upon satisfying a foreclosure complaint on or after April 1, 2009, the Lender's requirement contribution of the Borrower a six-month-period of forbearance to follow a loan without, modification, refinancing, or other alternative through reflection subsidized by the Administrative office of the Courts, throughout the patience period the loan's interest rate cannot increase the foreclosure. **(*N.J.REV. Stat. 46: 10B-50*)**

***46:10B-50.*** Six-month forbearance period before foreclosure; classifications.

***EXHIBIT M-***The proposed Claim(s) to be reclassified and Redesignate from Residential Capital, LLC, et al

***IN CONCLUSION***, The documentation enclosed clearly proof that GMAC, not only did not own a mortgage on 137-139 Ellery Avenue, Newark, NJ 07106-3501 in October 2005, but failed to provide a clear, original, and legal documents of the mortgage loan it claimed possess since October 2005.

Regarding the understanding of the calculations used to determine the amount GMAC owed Elda M Thompson, is stated as the current mortgage has an APR of 5.99000 % with a P & I payment $1227.71, the margin is 2.75000 %. The Forensic Audit

demonstrates a disclosed APR of 6.6554 % and a calculated APR of 6.6554 %, with a difference of 0.0014 %. According to the Forensic Audit the APR is 6.6554 % and the margin is 2.75000 %.

Elda M. Thompson
137 Ellery Avenue
Newark, NJ 07106-3501
Tel. # 973.687.4117
Fax. # 609.531.6075


Maria M. Thompson
29 General Lane
Willingboro, NJ 08046-
Telephone: (609) 531-6075
Cellular: (973) 687-4117
boricuaprelda@msn.com