**Hearing Date: November 18, 2015 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: November 4, 2015 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
James A. Newton

BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203-2119
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
Keith S. Anderson – *admitted pro hac vice*

*Counsel for the ResCap Borrower Claims Trust*

*Litigation Counsel for the ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------------ ) | | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| ------------------------------------------------------ ) | | |

**RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM**
**NO. 2130 FILED BY FREDERIC L. EDQUID AND LESLEY H. EDQUID**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

JURISDICTION, VENUE, AND STATUTORY PREDICATE ..................................2

BACKGROUND ........................................................................................................2

    A.    General Overview..........................................................................................2

    B.    Claim Specific Background............................................................................3

          1.    Origination of the Loan .....................................................................3

          2.    Frederic Edquid's Guardsman Status ...............................................4

          3.    Claimants' Default and the Resulting Foreclosure Sale....................5

          4.    The District Court Action .................................................................6

RELIEF REQUESTED ...............................................................................................7

OBJECTION ...............................................................................................................8

    A.    Interpretation and Application of the SCRA .................................................8

    B.    Claimants Cannot Assert a Private Right of Action Under the SCRA..................9

    C.    Even if a Private Right of Action Had Existed Under SCRA, SCRA Did Not Protect Claimants at the Time of GMAC Mortgage's Allegedly Improper Actions ........................................................................................12

          1.    The Notice of Trustee's Sale was Not Filed Until After Edquid's Statutory Period of Protection Ended .......................................12

          2.    Recording of a Notice of Trustee's Sale is Not Prohibited by SCRA Section 533(c) ...............................................................15

    D.    GMACM Mortgage Did Not "Retaliate" Against Edquid for Invoking His SCRA Rights, and Claimants Have No Viable Cause of Action Under 50 U.S.C. Appx. § 518 ..................................................................................19

    E.    Claimants Have No Viable RESPA Claim Because None of the Referenced Correspondence Constitute Qualified Written Requests...................21

NOTICE ....................................................................................................................26

CONCLUSION ..........................................................................................................26

## **EXHIBITS**

Exhibit 1 – Proof of Claim
Exhibit 2 – Proposed Order
Exhibit 3 – Declaration of Sara Lathrop
Exhibit 4 – Declaration of Keith S. Anderson

# TABLE OF CONTENTS

(continued)

**Page**

Exhibit 5 – District Court Action Docket Sheet

Exhibit 6 - Excerpts of HERA Statute

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Banaszak v. CitiMortgage, Inc.*,
   No. 13-CV-13710, 2014 WL 4489496 (E.D. Mich. Apr. 10, 2014) .......................................20

*Barrows v. Boles*,
   687 A.2d 979 (N.H. 1996)............................................................................................................18

*Bates v. JPMorgan Chase Bank, N.A.*,
   768 F.3d 1126 (11th Cir. 2014) ..................................................................................................25

*Berneike v. CitiMortgage, Inc.,*
   708 F.3d 1141 (10th Cir. 2013) ..................................................................................................23

*Bowen v. Georgetown Univ. Hosp.*,
   488 U.S. 204 (1988) ....................................................................................................................14

*Bowlds v. Gen. Motors Mfg. Div. of Gen. Motors Corp.*,
   411 F.3d 808 (7th Cir. 2005) .........................................................................................................9

*Brewster v. Sun Trust Mortg., Inc.*,
   742 F.3d 876 (9th Cir. 2014) ....................................................................................16, 17, 18, 19

*Case v. St. Mary's Bank*,
   63 A.3d 1209 (N.H. 2013) ...........................................................................................................18

*Centurion v. Holder*,
   755 F.3d 115 (2d Cir. 2014) .................................................................................................10, 11

*Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*,
   No. 12 Civ. 6074 (RJS), 2013 WL 5549643 (S.D.N.Y. Sept. 26, 2013) ...................................8

*De Luna v. Farris*,
   841 F.2d 312 (9th Cir. 1988) ......................................................................................................14

*E. Enters. v. Apfel*,
   524 U.S. 498 (1998) ....................................................................................................................14

*Giri v. HSBC Bank USA*,
   No. 2:14-CV-00901-RCJ-PAL, 2015 WL 247811 (D. Nev. Jan. 20, 2015)...............10, 11, 20

*Goldsmith v. LBM Fin., LLC (In re Loucheschi LLC)*,
   496 B.R. 41 (Bankr. D. Mass. 2013) ..........................................................................................18

*Gordon v. Pete's Auto Serv. of Denbigh, Inc.*,
    637 F.3d 454 (4th Cir. 2011) ................................................................... 11

*Hurley v. Deutsche Bank Trust Co. Am.*,
    No. 08-cv-361, 2009 WL 701006 (W.D. Mich. Mar. 13, 2009) ............................. 10

*Jensen v. Quality Loan Serv. Corp.*,
    702 F. Supp. 2d 1183 (E.D. Cal. 2010) ....................................................... 24

*Jimenez v. Miami-Dade Cnty.*,
    No. 11-23131-Civ., 2013 WL 214673 (S.D. Fla. Jan. 18, 2013) ............................. 9

*Koenig v. Waukesha State Bank*,
    No. 0S-C-255, 2006 WL 2334841 (E.D. Wisc. Aug. 10, 2006) ...................... 19, 21

*Landgraf v. USI Film Prods*,
    511 U.S. 244 (1994) ................................................................... 10, 11

*Lattimore v. Wells Fargo Bank, N.A.*,
    590 Fed. Appx. 912 (11th Cir. 2014) ......................................................... 22

*McGinley v. Centr. Mortg. Co. (In re McGinley)*,
    490 B.R. 723 (Bankr. D. Md. 2013) ........................................................... 24

*Murphy v. Bank of America*,
    No. 2:12-CV-2520-VEH, 2012 WL 5954144 (N.D. Ala. Nov. 28, 2012) ................. 21

*Newton v. Bank of McKenney*,
    No. 3:11-CV-493 (JAG), 2012 WL 1752407 (E.D. Va. May 16, 2012) ............... 9, 16

*Rodriguez v. American Express*,
    No. CF-F-03-5949-AWI-LJO, 2006 WL 908613 (E.D. Cal. Apr. 7, 2006) ............. 21

*Roth v. CitiMortgage, Inc.*,
    756 F.3d (2d Cir. 2014) ................................................................... 23, 24

*Sherman v. Novak (In re Reilly)*,
    245 B.R. 768 (B.A.P. 2d Cir. 2000), *aff'd*, 242 F.3d 367 (2d Cir. 2000) ................. 8

*Sipe v. Countrywide Bank*,
    690 F. Supp. 2d 1141 (E.D. Cal. 2010) ....................................................... 24

*Sweet v. Sheahan*,
    235 F.3d 80 (2d Cir. 2000) ................................................................... 14

*Willhoit v. SunTrust Mortg., Inc.*,
    No. 12–cv–8386, 2013 WL 1111823 (N.D. Ill. Mar 18, 2013) ............................. 9

ii

## STATUTES

11 U.S.C. § 502(b)(1) ................................................................................................. 8

12 U.S.C. 2605(i)(3) ............................................................................................. 22, 24

12 U.S.C. § 2605(e)(1)(A) ........................................................................................ 24

12 U.S.C. § 2605(e)(1)(A)-(B) ................................................................................. 22

12 U.S.C. § 2605(e)(1)(B) ........................................................................................ 21

12 U.S.C. § 2605(e)(1)(B)(ii) ................................................................................... 25

12 U.S.C. § 2605(e)(1)(B) and (e)(2) ...................................................................... 23

12 U.S.C. § 2605(e)(B) ............................................................................................. 22

50 U.S.C. Appx. § 502(2) ........................................................................................... 8

50 U.S.C. Appx. § 518(3) .......................................................................................... 20

50 U.S.C.A. § 533(a), (c) ........................................................................................... 13

50 U.S.C. Appx. § 533(c) ..................................................................................... 14, 15

50 U.S.C.A. § 533(d) ................................................................................................... 9

50 U.S.C. Appx. § 511(2)(A)(ii) ................................................................................ 4

Cal. Civ. Code § 2924c (2015) .................................................................................. 19

Mass Gen. Laws ch. 244, §§ 1, 2 (2015) .................................................................. 18

Pub. L. 111-275 .......................................................................................................... 10

Pub. L. 110-289, Div. B, Title II, § 2203(a), 122 Stat. 2849 .................................... 13

Pub. L. 112-154, Title VII, § 710(b), (c) 126 Stat. 1208 ........................................... 13

U.S.C.A. § 597a ......................................................................................................... 10

## OTHER AUTHORITIES

Debtors' National Mortgage Settlement Consent Judgment, *available at*
    https://d9klfgibkcquc.cloudfront.net/Consent_Judgment_Ally-4-11-12.pdf ......... 16

Dodd–Frank Wall Street Reform and Consumer Protection Act, Pub. L. 111–203 §
    1463(c), 124 Stat. 1376, 2184 (2010) .................................................................. 23

ny-1207727

DMDC database, *available at*
https://www.dmdc.osd.mil/appj/scra/scraHome.do ................................................................. 5

Memorandum Opinion and order Sustaining the ResCap Borrower Claims Trust's
Objection to Proof of Claim No. 386 Filed by Barry and Cheryl Mack,
*In re Residential Capital, LLC*, No. 12-12020 (MG) (Bankr. S.D.N.Y. Aug. 4, 2015)
[Docket No. 8969] ................................................................................................................ 22

iv

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

The ResCap Borrower Claims Trust (the "<u>Borrower Trust</u>"), established pursuant

to the terms of the Chapter 11 plan confirmed in the above-captioned chapter 11 cases (the

"<u>Chapter 11 Cases</u>") [Docket No. 6065], as amended, (the "<u>Plan</u>") as successor in interest to the

above captioned debtors (collectively, the "<u>Debtors</u>") with regard to Borrower Claims (as

defined below), hereby submits this objection (the "<u>Objection</u>") seeking to disallow and

expunge, without leave to amend, proof of claim number 2130 (the "<u>Claim</u>")[1] filed Frederic L.

Edquid ("<u>Edquid</u>") and Lesley H. Edquid (together with Edquid, the "<u>Claimants</u>") against Debtor

GMAC Mortgage, LLC ("<u>GMAC Mortgage</u>") in the amount of $802,158.19, pursuant to section

502(b) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 3007(a) of the

Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), on the grounds that the Claim

fails to state a basis for liability against the Debtors.[2]  The Borrower Trust seeks entry of an order

substantially in the form annexed hereto as <u>Exhibit 2</u> (the "<u>Proposed Order</u>") granting the

requested relief.  In support of the Objection, the Borrower Trust submits the Declaration of Sara

Lathrop, Senior Claims Analyst for the Borrower Trust (the "<u>Lathrop Declaration</u>"), attached

hereto as <u>Exhibit 3</u>, and the Declaration of Keith S. Anderson (the "<u>Anderson Declaration</u>"),

attached hereto as <u>Exhibit 4</u>.

### PRELIMINARY STATEMENT[3]

1.      The Claimants contend that GMAC Mortgage foreclosed prior to the

expiration of a statutorily mandated protection period under the SCRA.  Claimants' SCRA

---

[1] A copy of the Claim is attached hereto as <u>Exhibit 1</u>.
[2] The Borrower Trust reserves all of its rights to object to the Claim on any basis not set forth in this Objection, and the Borrower Trust reserves all of its rights to amend this Objection should any further bases for objection come to light.
[3] Capitalized terms used in this Preliminary Statement shall have the definitions ascribed to such terms herein.

claim fails for at least three reasons. First, no private right of action existed under the

applicable provision of the SCRA until almost two years after the foreclosure at issue in this

case. Second, the amendment to the SCRA that extended the statutory protection period

from 90 days to nine months also did not become effective until after Claimant's SCRA

protections had expired. The amendment, therefore, may not be applied retroactively in the

absence of express Congressional intent to the contrary – an express intent not present here.

Finally, a Notice of Trustee's sale is not a "foreclosure," and the Borrower Trust is unaware

of any case holding to the contrary. For each these reasons, Claimants' primary SCRA

claim must fail and, as described further below, the Claim should be disallowed and

expunged in its entirety.

## JURISDICTION, VENUE, AND STATUTORY PREDICATE

2.      This Court has jurisdiction over this Objection under 28 U.S.C. § 1334. This

matter is a core proceeding under 28 U.S.C. § 157(b). Venue is proper before this Court

under 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are section 502(b) of

the Bankruptcy Code and Bankruptcy Rule 3007(a).

## BACKGROUND

**A.      General Overview**

4.      On May 14, 2012, each of the Debtors filed a voluntary petition in this Court

for relief under chapter 11 of the Bankruptcy Code. These Chapter 11 Cases are being

jointly administered pursuant to Bankruptcy Rule 1015(b).

5.      On May 16, 2012, the Court entered an order [Docket No. 96] appointing

Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in these

Chapter 11 Cases. Among other things, KCC is authorized to (a) receive, maintain, and

ny-1207727

12-12020-mg    Doc 9253    Filed 10/14/15    Entered 10/14/15 14:13:44    Main Document
Pg 10 of 33

record and otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain the official claims register for the Debtors (the "Claims Register").

6.       On November 2, 2012, the Claimants filed the Claim.

7.       On March 21, 2013, this Court entered an order approving procedures for the filing of objections to proofs of claim filed in these Chapter 11 Cases [Docket No. 3294] (the "Procedures Order").  The Procedures Order includes specific protections for Borrowers[4] and set forth a process for the Debtors to follow before objecting to certain categories of Borrower Claims (the "Borrower Claim Procedures").

8.       On December 11, 2013, the Court entered an *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* [Docket No. 6065] (the "Confirmation Order") approving the terms of the Plan.   The Plan provides for the creation and implementation of the Borrower Trust, which is established to, among other things, "(i) direct the processing, liquidation and payment of the Allowed Borrower Claims in accordance with the Plan, and the distribution procedures established under the Borrower Claims Trust Agreement, and (ii) preserve, hold, and manage the assets of the Borrower Claims Trust for use in satisfying the Allowed Borrower Claims."  *See* Plan, Art. IV.F.  On December 17, 2013, the Effective Date (as defined in the Plan) of the Plan occurred [Docket No. 6137].

## B.    Claim Specific Background

### 1.       Origination of the Loan

9.       On April 7, 2005, Claimants executed a Promissory Note and Deed of Trust (collectively, the "Loan") secured by property commonly known as 5465 West Bandtail

---

[4] As used herein, the terms "Borrower" and "Borrower Claims" have the meanings ascribed to them in the Plan (defined below).

Court, Marana, Arizona 85653 (the "Property").  Compl., ¶ 18;[5] Lathrop Decl., Exhibits A

and B (Note and Deed of Trust, respectively).  GMAC Mortgage acted as the loan servicer

on the Loan from virtually the loan's inception.  Anderson Decl., Exhibit A (Deposition of

Claimant Fredric L. Edquid, hereinafter "Edquid Dep.," p. 40).

### 2.    Frederic Edquid's Guardsman Status

10.    In 2001, Frederic Edquid became a commissioned officer of the Arizona

National Guard.  Edquid Dep., 15.  As a member of the Arizona National Guard, Edquid

served the Adjutant General of the State of Arizona, but is not on federal active duty orders.

Edquid Dep., 21, 22, 23, 29, 62-63.  At all times prior to Claimants commencing the District

Court Action (defined below), Edquid was also a member of the Army's Air Guard Reserve

("AGR"), which is considered a component of the Arizona National Guard.  Edquid Dep.,

22-23, 31-32.

11.    On May 1, 2006, Edquid was mobilized in support of Operation Enduring

Freedom, and entered federal active duty on Title 10 orders.  Edquid Dep., 43-44.

Beginning on May 1, 2006, Edquid departed for training and then a 730-day deployment.

Edquid Dep., 44-45.  While on Active Duty orders under Title 10 of the United States Code,

Edquid was protected under the Servicemember's Civil Relief Act, 50 U.S.C. Appx.  § 501

– 596 ("SCRA").  However, Edquid clearly acknowledged during his deposition in

connection with the District Court Action that as a National Guardsman, he received SCRA

protection *only* while on Active Duty orders under Title 10 of the United States Code.

Edquid Dep. pp. 24:1 – 24:13; *see also* 50 U.S.C. Appx. § 511(2)(A)(ii).

---

[5] A copy of the Complaint filed by Claimants in the District Court Action (defined below) is annexed to the Claim.

12.     By all accounts, Edquid's active duty tour ended in March 2008.  While
Edquid could not recall during his deposition the exact date on which his active duty tour
ended, he indicated in his deposition that the end date of his active duty tour was March 15
or 16, 2008.  Edquid Dep., 34.  Claimants' Complaint in the District Court Action, on the
other hand, states that Edquid "was released from active military duty on March 31, 2008."
Compl., ¶ 24.

13.     Finally, the Department of Defense's Defense Manpower Data Center
("DMDC") Website, the official Department of Defense source to ascertain the active duty
status of individuals for evaluation of SCRA protection, indicated that Edquid's federal
active duty tour officially ended on March 14, 2008.[6]  *See* Edquid Dep., 80:19 – 82:13.
Indeed, when asked during his deposition, Edquid acknowledged that he believed that the
DMDC printout with which he was presented was accurate and that his active duty military
service ended on or about March 14, 2008.  *Id.*

**3.      Claimants' Default and the Resulting Foreclosure Sale**

14.     Claimants' Loan payments were current until September 2007.  Edquid Dep.,
57.  During the fall of 2008, months after Edquid returned from active duty and nearly a
year after Claimants had become delinquent on their loan, Claimants received multiple
notices that their loan account was in default.  *See* Lathrop Decl., Exhibits C – D (Notices of
Default); Edquid Dep., 73, 75.

15.     On November 18, 2008, GMAC Mortgage recorded a Notice of Sale with
respect to the Loan in the Tucson Recorder's Office.  Compl., ¶ 25; Lathrop Decl., Exhibit E

---

[6] The DMDC database can be accessed at https://www.dmdc.osd.mil/appj/scra/scraHome.do.

ny-1207727

(Notice of Trustee's Sale); Edquid Dep. 77.  On February 20, 2009, a foreclosure sale for the Property was held.  Compl., ¶ 29; Edquid Dep., 79.

16.       On or about March 11, 2009, GMAC Mortgage voluntarily rescinded the foreclosure sale, Compl., ¶ 42; Edquid Dep., 92-94; Lathrop Decl. ¶ 6, and in March or April 2009, Claimants were put on a repayment plan to cure their delinquency.  Edquid Dep., 97 – 99.  Claimants became current on the Loan in July 2009, thereafter continuing to make payments on their Loan, and Claimants were current as of the date of transfer of servicing of their Loan to Ocwen Loan Servicing on February 15, 2013.  *See* Edquid Dep., 68, 99; Lathrop Decl. ¶ 6.

    **4.       The District Court Action**

17.       On May 25, 2011, more than two years after GMAC Mortgage had voluntarily rescinded the foreclosure sale of Claimants' property and provided them with a repayment plan to assist them in becoming current on the Loan, Claimants initiated an action (the "District Court Action") against GMAC Mortgage and Debtor Executive Trustee Services, LLC ("ETS") by filing a Complaint in the United States District Court for the District of Arizona, Case No. 11-311 (TCC) (CKJ).  The Complaint contained three Causes of Action.

18.       The gravamen of the first Cause of Action contained in the Complaint was that the initiation of the foreclosure process by the recording of the Notice of Trustee's sale on November 18, 2008 violated 50 U.S.C. Appx. § 533(c).  Compl. ¶¶ 26, 52-53; Edquid Dep. 79.

19.       Claimants' second Cause of Action alleged that GMAC Mortgage violated Section 518 of the SCRA by reporting credit information to credit reporting agencies. Compl., ¶ 61-63.  When asked what evidence he had in support of the allegation that GMAC Mortgage violated Section 518 of the SCRA by retaliating against Edquid for invoking his

6

SCRA rights, Claimants stated, "I don't believe that GMAC put a negative [credit] report on there just because I was a soldier," but that GMAC Mortgage's actions were done because they "did not understand" the SCRA.  Edquid Dep., 134 – 135:12; 136:19 – 137:2.

Claimants further specifically stated:

> Q: Okay.  And I understand your testimony that you're alleging that many errors were made.  But my question is: Did GMAC do that because you invoked your SCRA rights?
> A: I can't say specifically because I invoked my SCRA rights.  I cannot say that specifically.

Edquid Dep., 192:24 – 193:3.

20.    Claimants' third Cause of Action alleges that GMAC Mortgage failed to comply with 12 U.S.C. § 2605, the Real Estate Settlement and Procedures Act ("RESPA"). Claimants alleged that five different documents that were sent to GMAC Mortgage constituted Qualified Written Requests.  The Borrower Trust believes that these five communications include letters dated April 6, 2006, February 19, 2009, February 25, 2009, March 3, 2009, and a fax cover sheet addressing only credit reporting dated August 11, 2010.  Edquid Dep. 137-38; Anderson Decl., Exhibits B – F.  On March 11, 2009, GMAC Mortgage provided a written response to Claimants regarding Edquid's SCRA protection. See Lathrop Decl., Exhibit G.

21.    On July 25, 2011, GMAC Mortgage and ETS filed an answer in the District Court Action.  See Exhibit 5 (Copy of Docket Sheet for District Court Action).

22.    The District Court Action was subsequently stayed as a result of the filing of these Chapter 11 Cases.

## RELIEF REQUESTED

23.    The Borrower Trust files this Objection, pursuant to Bankruptcy Code section 502(b) and Bankruptcy Rule 3007, and seeks entry of the Proposed Order, disallowing the

7

Claim in its entirety with prejudice, and directing the expungement of the Claim from the

Claims Register.

## OBJECTION

24.    Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a

claim may not be allowed to the extent that "such claim is unenforceable against the debtor

and property of the debtor, under any agreement or applicable law . . . ."  11 U.S.C.

§ 502(b)(1).

25.    A properly executed and filed proof of claim constitutes prima facie evidence

of the validity of the claim . . . .  To overcome this prima facie evidence, the objecting party

must come forth with evidence which, if believed, would refute at least one of the

allegations essential to the claim."  *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773

(B.A.P. 2d Cir. 2000) (citations omitted), *aff'd*, 242 F.3d 367 (2d Cir. 2000).  By producing

"evidence equal in force to the prima facie case," an objector can negate a claim's

presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a

preponderance of the evidence that under applicable law the claim should be allowed."

*Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ.

6074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (citation omitted).

26.    Here, the Complaint in the District Court Action (upon which the Claimants

rely, exclusively, in support of their Claim) fails to state any viable claim against GMAC

Mortgage as a matter of law.  Consequently, the Claim should be disallowed and expunged.

## A.    Interpretation and Application of the SCRA

27.    The SCRA's purpose is "to provide for the temporary suspension of judicial

and administrative proceedings and transactions that may adversely affect the civil rights of

servicemembers during their military service."  50 U.S.C. Appx. § 502(2).  Although it is

8

generally understood that the SCRA is to be "liberally construed" to benefit

servicemembers, such "liberal interpretation does not allow the Court to insert language that

does not exist, or to ignore language that does." *Newton v. Bank of McKenney*, No. 3:11-

CV-493 (JAG), 2012 WL 1752407, at *6 (E.D. Va. May 16, 2012). Multiple courts have

rejected attempts to expand the SCRA beyond the clear dictates of the statutory language

itself. *See Bowlds v. Gen. Motors Mfg. Div. of Gen. Motors Corp.*, 411 F.3d 808, 812 (7th

Cir. 2005) ("even though these cases have implored courts to construe certain veterans'

statutes liberally, they do not instruct courts to create rights out of whole cloth.");

*Willhoit v. SunTrust Mortg., Inc.*, No. 12–cv–8386, 2013 WL 1111823, at *3 (N.D. Ill. Mar

18, 2013) (rejecting Claimants argument that conduct violated the "intent and essence of the

SCRA" when all conduct complied with the requirements of Section 521 of the

SCRA)(citation omitted); *Jimenez v. Miami-Dade Cnty.*, No. 11-23131-Civ., 2013 WL

214673, at *3 (S.D. Fla. Jan. 18, 2013) ("Although the Court must liberally construe the

SCRA, extending § 531 [of the SCRA] to embrace the condemnation proceedings would

require judicial legislation, which the Court cannot do"). Here, Claimants attempt to make

the SCRA say something it does not say, and their unfounded reading should be rejected.

**B.**      **Claimants Cannot Assert a Private Right of Action Under the SCRA**

28.      Claimants allege that GMAC Mortgage's filing of a Notice of Trustee's Sale

with respect to the Property in November 2008 constituted a violation of SCRA section

533(c) giving rise to damages. However, as of the date of the recording of the Notice of

Trustee's Sale involved in this case, no private right of action existed under the SCRA

permitting an individual to seek damages. At that time, SCRA section 533(d)(1) provided

that a violation of section 533(c) constituted a misdemeanor, enforceable by law

enforcement authorities. *See* 50 U.S.C. Appx. § 533(d).

9

29.    Presently, Section 597a of the SCRA provides persons aggrieved by a

violation of the SCRA, including SCRA section 533(c), with a private right of action.

50 App. U.S.C.A. § 597a.  However, SCRA section 597a did not become effective until

October 13, 2010; nearly two years after the November 2008 recording of a Notice of

Trustee's Sale that Claimants allege violated the SCRA.  *See* Pub. L. 111-275, at § 303

(enacted on October 13, 2010).

30.    Section 597a does not apply retroactively to create a private right of action

where none existed at the time the challenged actions were taken.  *See Giri v. HSBC Bank

USA*, No. 2:14-CV-00901-RCJ-PAL, 2015 WL 247811, at *3-4 (D. Nev. Jan. 20, 2015).[7]  In

*Giri*, the plaintiff ("Giri") was on active duty from January 13, 2009 until November 5,

2012.  *See Giri v. HSBC Bank USA*, 2015 WL 247811, at *1.  On May 7, 2009, defendant

HSBC Bank USA ("HSBC") foreclosed upon Giri's property while he remained on active

duty.  Giri commenced an action against HSBC, contending that the foreclosure violated

section 533(c) of the SCRA.  The *Giri* court, applying a three-step inquiry set forth by the

United States Supreme Court in *Landgraf v. USI Film Prods.*,[8] concluded that the October

2010 amendment to the SCRA that created a private right of action for violation of SCRA

section 533(c) did not apply retroactively to create a private right of action for the May

2009 foreclosure.  *See* Giri at *3-4.

31.    In the Second Circuit, a "threshold question" under *Landgraf* is whether

Congress expressly provided that the statute should apply retroactively.  *Centurion v.

Holder*, 755 F.3d 115, 121 (2d Cir. 2014) (citing *Landgraf* at 280).  If Congress was express

---

[7] *But see Hurley v. Deutsche Bank Trust Co. Am.*, No. 08-cv-361, 2009 WL 701006, at *4 (W.D. Mich. Mar. 13, 2009).
[8] 511 U.S. 244 (1994).

in its intent, then no further inquiry is needed.  *Centurion v. Holder*, 755 F.3d at 121.

Otherwise, a court must consider "whether the new provision attaches new legal

consequences to events completed before its enactment."  *Id.* (quoting *Landgraf*, 511 U.S. at

269-70).

32.    SCRA section 597a should not be applied retroactively to create a private

right of civil action under section 533(c) arising from actions occurring prior to its

enactment.  First, Congress did not clearly express its intent that the statute should apply

retroactively.  *See Gordon v. Pete's Auto Serv. of Denbigh, Inc.*, 637 F.3d 454, 458-59 (4th

Cir. 2011); *Giri*, 2015 WL 247811, at *4.

33.    Additionally, retroactive application of SCRA section 597a is impermissible

because it attaches new legal consequences to events completed before its enactment by

"increas[ing] a party's liability for past conduct."  *See Giri*, at *4 (quoting *Landgraf*,

511 U.S. at 270, 280).  In *Giri*, the court concluded that 597a attached a new legal

consequence (civil liability) for mortgage holders foreclosing upon property while a

borrower was on active duty.  *See Giri*, at *id.*  In this regard, the *Giri* court noted that no

other provision of Nevada law appeared to provide for the same level of liability prior to the

enactment of SCRA section 597a.  *See id.*

34.    In the District Court Action, Claimants contended only that the SCRA created

a bar to the foreclosure, and did not allege that the foreclosure otherwise was impermissible

under Arizona law.  Since a properly conducted foreclosure cannot give rise to civil liability

under Arizona law, retroactive application of section 597a would create a new and

unexpected legal consequence for GMAC Mortgage on account of conduct that occurred

well prior to the enactment of SCRA section 597a (even assuming *arguendo* that the

ny-1207727

recording of a Notice of Trustee's Sale could violate SCRA section 533(c)).  Consequently, in this case as in *Giri*, retroactive application of section 597a is impermissible and Claimants' first Cause of Action fails to state a valid claim.  The Claim should therefore be disallowed to the extent that it asserts liability based on a private civil cause of action under SCRA.

**C.    Even if a Private Right of Action Had Existed Under SCRA, SCRA Did Not Protect Claimants at the Time of GMAC Mortgage's Allegedly Improper Actions**

35.    Claimants allege that actions "initiating" the foreclosure process that occurred in November 2008 with the recording of a Notice of Trustee's Sale document constituted a violation of the SCRA.  Compl., ¶ 52-53; Edquid Dep. 179.  Even if a private right of action existed under SCRA at the time of the filing of the Notice of Trustee's Sale and subsequent foreclosure, the SCRA only protected Claimants from foreclosure for the 90 days following termination of Edquid's active duty service on March 14, 2008.  Edquid Dep. 80-83.  As a result, the recording of a Notice of Trustee's Sale in November 2008 did not violate the SCRA section 533(c).

**1.    The Notice of Trustee's Sale was Not Filed Until After Edquid's Statutory Period of Protection Ended**

36.    Claimants are incorrect when they contend that they were protected from the initiation of nonjudicial foreclosure proceedings until December 31, 2008.  Compl., ¶ 52.  In fact, Edquid was only protected until approximately June 14, 2008.  Prior to the amendment to SCRA Section 533 that became effective on July 30, 2008, Section 533 of the SCRA stated:

**(a)    Mortgage as security**

This section applies only to an obligation on real or personal property owned by a servicemember that –

1)      originated before the period of the servicemember's military service and for which the servicemember is still obligated; and

2)      is secured by a mortgage, trust deed, or other security in the nature of a mortgage.

…

**(c) Sale or foreclosure**

A **sale or foreclosure, or seizure of property** for a breach of an obligation described in subsection (a) shall not be valid if made during, **or within 90 days after**, the period of the servicemember's military service except –

1)      upon a court order granted before such *sale, foreclosure, or seizure* with a return made and approved by the court; or

2)      if made pursuant to an agreement as provided in section 107 . . . .

50 U.S.C.A. § 533(a), (c) (emphasis added).

37.      Under PL 110-289, as of July 30, 2008, the period of protection under

50 U.S.C. Appx. § 533, was extended from 90 days to nine (9) months. *See* "Housing and

Economic Recovery Act of 2008," dated July 30, 2008, an excerpt of which is attached

hereto as Exhibit 6, at § 2203(a)(1), (c)(1). PL 110-289, 122 Stat. 2654 was part of the

Housing and Economic Recovery Act of 2008 and extended the period of protection until

nine (9) months after the termination of active duty. Section 2203(c) of the amendment

states, "[t]he amendment made by subsection (a) shall take effect on the date of enactment

of this Act." PL 110-289 was passed on January 4, 2008, and was enacted on July 30, 2008.

*See* Pub. L. 110-289, Div. B, Title II, § 2203(a), 122 Stat. 2849.[9]

38.      Here, the applicable version of the SCRA provided that eligible

servicemembers were protected against foreclosure or sale for a period covering their active

---

[9] Since February 6, 2013, the period of protection has been extended to 12 months after release from active duty.
*See* Pub. L. 112-154, Title VII, § 710(b), (c) 126 Stat. 1208.

13

duty tour, <u>plus 90 days</u>.  50 U.S.C. Appx. § 533(c) (prior to PL 110-289).  It is undisputed

that Edquid terminated his active duty service on March 14, 2008.  Under the version of

SCRA section 533 in effect at the time of his termination from active duty, Edquid's period

of protection only extended for a period of 90 days from March 14, 2008, or until

approximately June 14, 2008.  At that point, Edquid's eligibility for SCRA protection had

"vested" and was fully terminated.  The amendment increasing the period of protection to

nine months did not go into effect until July 30, 2008 – over a month after Edquid's SCRA

protections had ceased.[10]  Consequently, Edquid was not protected by the SCRA in

November 2008 when the alleged violation of "initiating" the non-judicial foreclosure

process began.

    39.    The amendment extending coverage to nine months did not retroactively

apply to Claimants.  Under federal law, amendments to federal statutes are prospective in

application unless otherwise specified by the legislature.  *E. Enters. v. Apfel*, 524 U.S. 498,

532, (1998) ("Retroactivity is generally disfavored in the law, in accordance with

"fundamental notions of justice" that have been recognized throughout history.") (citations

omitted); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("[r]etroactivity is

not favored in the law.  Thus, congressional enactments and administrative rules will not be

construed to have retroactive effect unless their language requires this result."); *Sweet v.

Sheahan*, 235 F.3d 80, 88-89 (2d Cir. 2000); *De Luna v. Farris*, 841 F.2d 312, 314 (9th Cir.

1988) ("Statutes are presumed to have only prospective effect and will be given retroactive

effect only if there is affirmative legislative direction to do so.").

---

[10] Edquid agreed that the 90 day to nine-month extension did not go into effect until July 2008.  *See* Edquid Dep.,
87-88.

12-12020-mg    Doc 9253    Filed 10/14/15    Entered 10/14/15 14:13:44    Main Document
Pg 22 of 33

40.     Here, Congress did not expressly give retroactive effect to the 2009 amendment to SCRA section 533 and, thus, it must only be applied prospectively. Accordingly, servicemembers whose protection terminated before the statute went into effect on July 30, 2008, are not protected by the amendment that extended coverage to nine months.  Edquid's 90-day protection period ended on June 14, 2008, more than a month prior to the date on which PL 110-289 went into effect.

### 2.     Recording of a Notice of Trustee's Sale is Not Prohibited by SCRA Section 533(c)

41.     Even if the longer nine month protection period had applied in this case, GMAC Mortgage did not violate SCRA section 533(c).  SCRA section 533(c) prohibits a "sale, foreclosure, or seizure of property" within the statutory period of protection without first obtaining a court order authorizing the otherwise prohibited action.  No "sale, foreclosure, or seizure of property" occurred during the statutory period in this case, whether such period was 90 days or nine months.  50 U.S.C. Appx. § 533(c).  It is undisputed that the sale and associated foreclosure occurred on February 20, 2009 – beyond both the 90 day and nine-month period of protection.  *See* Edquid Dep., 82:17 – 83:1. Moreover, the Property was never seized from Claimants, as the nonjudicial sale was rescinded in March 2009 and Claimants were provided with a repayment plan to bring them current on their loan.  Consequently, Claimants are forced to contend that the filing of the Notice of Trustee's Sale violated SCRA section 533(c).  Filing of a Notice of Trustee's Sale, however, is not a "sale, foreclosure, or seizure of property" and does not contravene the clear mandate of SCRA section 533(c).

42.     The procedures utilized by the Department of Justice in connection with the Debtors' mandatory SCRA foreclosure review process support the conclusion that the

15
ny-1207727

recording of a Notice of Trustee's Sale is not a violation of SCRA section 533(c).  Pursuant to the Debtors' Consent Judgment in connection with the National Mortgage Settlement,[11] the Debtors agreed to undertake a review of "all **completed foreclosures** from January 1, 2006 to the present to evaluate whether the **completed foreclosures** were in compliance with Sections 533 and 521 of the SCRA."  Consent Judgment, <u>Exhibit H</u>, at II.a. (emphasis added).  Thus, even under the mandatory foreclosure review process dictated by the Department of Justice, the filing of the Notice of Trustee's Sale would not have been deemed a violation of the SCRA giving rise to a right of remediation unless the foreclosure sale had also occurred prior to the expiration of the statutory protection period.  Instead, based on the terms of the expansive settlement and foreclosure review procedures designed by Department of Justice, it appears that even the Department of Justice did not view the filing of a notice of trustee's sale as a "foreclosure" for purposes of SCRA section 533(c). Like the Department of Justice, the Court should not "insert language that does not exist [in SCRA] . . . .,"  *Newton v. Bank of McKenney*, 2012 WL 1752407, at *6, and should refrain from adding the filing of a Notice of Trustee's Sale to the list of prohibited actions contained in SCRA section 533(c).

43.    One circuit court has suggested that the use of the term "foreclosure" in SCRA section 533(c) prohibits a much broader swath of conduct; however, the decision is not binding on this court and its reasoning should be rejected.  *See Brewster v. Sun Trust Mortg., Inc*., 742 F.3d 876 (9th Cir. 2014).  In *Brewster*, a servicemember alleged that his mortgage servicer violated SCRA by continuing attempts to collect fees associated with a prior servicer's notice of default.  The *Brewster* court agreed, reading the term "foreclosure"

---

[11]  A copy of the Debtors' National Mortgage Settlement Consent Judgment is available at <u>https://d9klfgibkcquc.cloudfront.net/Consent_Judgment_Ally-4-11-12.pdf</u>.

in 50 U.S.C. App. § 533(c) broadly to include the imposition of fees associated with a potential foreclosure sale. *See Brewster*, 742 F.3d at 879.

44.    The *Brewster* court based its decision that the servicer had violated the SCRA on two incorrect lines of reasoning. First, the court reasoned that the statute refers to "foreclosure 'proceedings'" and the phrase foreclosure proceeding describes a process, not a single act. *See id.* Second, the court reasoned that since SCRA section 533(c) prohibits not only a foreclosure, but also a "sale" or "seizure," the term foreclosure must mean something other than just the sale or seizure of property. *See id.*

45.    Each of the rationales set forth in *Brewster* is flawed and easily dismissed. First, the *Brewster* court inexplicably attempts to interpret the meaning of the phrase "foreclosure proceeding," but that phrase does not appear in section 533(c). Instead, section 533(c) refers only to a "foreclosure" and it is the separate subsection 533*(b)* (addressing stays of judicial foreclosure proceedings during a servicemember's active duty tour) that refers to "foreclosure proceedings." *See Brewster*, 742 F.3d at 879 (citing to the use of the phrase "foreclosure proceeding" in 50 U.S.C. App. § 533(b), which was not involved in that case). This significant difference in language, ignored by the *Brewster* court, strongly suggests that the court should have reached the opposite conclusion, and that section 533(c) precludes *only* a foreclosure, and not any other elements or actions incident to a foreclosure proceeding.

46.    Second, the *Brewster* court incorrectly focused exclusively on California foreclosure law in connection with determining the meaning of the term foreclosure in the SCRA – a federal statute of broad application. While a mortgagor's interest in property may be "foreclosed" upon the occurrence of a non-judicial sale under a deed of trust (*see*

*Brewster*, 742 F.3d at 879) – thus potentially making the use of the term "foreclosure" and

"sale" appear redundant – that is not necessarily the case in all states.  By way of example,

in Massachusetts, in addition to a typical nonjudicial foreclosure by sale, a foreclosure may

also be effectuated by means of peaceable entry and possession for a period of time.  Mass

Gen. Laws ch. 244, §§ 1, 2 (2015); *Goldsmith v. LBM Fin., LLC* (*In re Loucheschi LLC*),

496 B.R. 41, 46 (Bankr. D. Mass. 2013).  Similarly, under New Hampshire law, a

nonjudicial foreclosure may occur by possession (*see Case v. St. Mary's Bank*, 63 A.3d

1209, 1215 (N.H. 2013) (citing N.H.R.S.A. § 479:19)), and even if a mortgagee does pursue

a foreclosure in New Hampshire by means of a nonjudicial sale, the sale itself does not

extinguish (i.e., foreclose) the mortgagor's title.  Instead, title passes only upon the

recording of the deed of title obtained at the nonjudicial sale.  *See Barrows v. Boles*, 687

A.2d 979, 988 (N.H. 1996) (citing N.H.R.S.A. § 479:26 II (now 479:26 III)).  As these state

foreclosure procedures demonstrate, states have a myriad of means for effectuating a

foreclosure.  Far from being redundant or intending that the term "foreclosure" encompass

some actions that may be required prior to – but do not effectuate – a foreclosure, sale or

seizure of property, SCRA section 533(c) was intended to ensure that all means of

foreclosures, sales, and seizures in all states were prohibited during the relevant period of

protection.  By focusing narrowly on California law, the *Brewster* court incorrectly

concluded that, in the absence of the term "foreclosure" encompassing pre-sale actions,

inclusion of both "foreclosure" and "sale" in SCRA section 533(c) was redundant.

47.    Moreover, under the *Brewster* court's reasoning, any step along the path to a

foreclosure sale – including, for instance, informing a borrower that its payment is late or

that the mortgage loan is in default – would fall within the scope of a "foreclosure"

18

prohibited by SCRA section 533(c).  The *Brewster* court defined "foreclosure" by reference

to California Civil Code section 2924 *et. seq.* (*see Brewster*, 742 F.3d at 879), but did not

provide any basis or test by which to delineate whether an action taken in accordance with

these provisions of the California Civil Code is part of the "foreclosure."  Presumably, then,

any action required by California Civil Code section 2924 *et. seq.* could be encompassed

within the term "foreclosure," including, for example, the simple recording and sending to

the borrower of a notice of default.  *See* Cal. Civ. Code § 2924c (2015).  If this had been the

intent of the SCRA, then section 533(c) could easily have prohibited any action in

connection with a default, but SCRA does not so limit the mortgage holder or servicer's

actions.  *See, e.g., Koenig v. Waukesha State Bank*, No. 0S-C-255, 2006 WL 2334841, at *7

(E.D. Wisc. Aug. 10, 2006) (creditor permitted to report negative credit events during the

period of default).  Instead, SCRA prohibits the sale, foreclosure or seizure of property

within the statutorily protected period, none of which occurred in this case.  For this reason

as well, Claimants' allegations of a violation of SCRA section 533(c) fail.

**D.    GMACM Mortgage Did Not "Retaliate" Against Edquid for Invoking His SCRA Rights, and Claimants Have No Viable Cause of Action Under 50 U.S.C. Appx. § 518**

48.    Section 518 of the SCRA only prohibits lenders from discriminating or

retaliating against a servicemember and does not prohibit standard credit reporting of

payment or non-payment on a loan.  Claimants have no viable cause of action under this

section.

49.    In order to be entitled to any relief, Claimants need to establish (1) an

application to a court for relief under the SCRA *and* (2) retaliation or discrimination by the

19

creditor based on that application.[12]  Section 518 is premised on the fact that certain sections

of the SCRA provide servicemembers with the right to apply for a stay, postponement, or

suspension from a payment.  The "application" described in section 518 is an actual

application to a court for relief under the SCRA.  There is no evidence to suggest that

Claimants ever applied to any court for this form of SCRA relief, and therefore, the

Claimants fail to state a plausible claim under section 518 for that reason alone.

50.      Further, even if the failure to actually apply to a court for relief were

overlooked, section 518 provides only that an entity cannot retaliate or discriminate against

a servicemember for invoking her or his SCRA rights.  Section 518 does not prohibit credit

reporting as to the borrower's payment obligations during any ordered stay; rather, it only

prohibits reporting of the request for the stay.  Multiple courts examining this section of the

SCRA have held that it is only an anti-retaliation provision.  *See Giri v. HSBC Bank USA*,

2015 WL 247811, at *3 (granting 12(c) motion as it related to section 518 claim because

section 518 is an "anti-retaliation provision" and plaintiff had not alleged any request for a

stay, postponement or suspension in the payment of any obligation or any retaliation by the

defendant); *Banaszak v. CitiMortgage, Inc.*, No. 13-CV-13710, 2014 WL 4489496, at *6

(E.D. Mich. Apr. 10, 2014) (granting 12(b)(6) dismissal of § 518 claim because § 518 is an

"anti-retaliation provision" and any actions taken by the creditor were not taken "because

---

[12] 50 U.S.C. Appx. § 518 states, in relevant part:

> Application by a servicemember for, or receipt by a servicemember of, a stay, postponement,
> or suspension pursuant to this Act [sections 501 to 515 and 516 to 597b of this Appendix] in
> the payment of a tax, fine, penalty, insurance premium, or other civil obligation or liability
> of that servicemember shall not itself (without regard to other considerations) provide the
> basis for any of the following:
> …
>  (3) An adverse report relating to the creditworthiness of the servicemember by or to a
> person engaged in the practice of assembling or evaluating consumer credit information.

of" or "solely because of" claimants' application for a stay); *Murphy v. Bank of America*,
No. 2:12-CV-2520-VEH, 2012 WL 5954144, at *3-4 (N.D. Ala. Nov. 28, 2012) ("the court
concludes [§ 518] is an anti-retaliation provision."); *Rodriguez v. American Express*, No.
CF-F-03-5949-AWI-LJO, 2006 WL 908613, at *7 (E.D. Cal. Apr. 7, 2006) ("SCRA . . .
prohibits the issuance of a negative credit report that is based solely on [the] fact that the
servicemember availed him or herself of the benefits of the SCRA.  That is, the provisions
of section 518 protect the servicemember from retaliatory credit reports or negative credit
reports that are not based on actual information reflecting credit problems."); *Koenig v.
Waukesha State Bank*, 2006 WL 2334841, at *7, (an entity cannot report a request for the
stay, but can report that borrower failed to meet his obligations during the stay period).

51.    Edquid admitted that he has no evidence to contend that he was retaliated
against or discriminated against in connection with the Loan.  Edquid Dep., 134 – 135:12;
136:19 – 137:2; 192-93.  Claimants' Complaint alleges that GMAC Mortgage reported an
"illegal nonjudicial foreclosure to the credit reporting agencies" and then cites to
section 518(3).  Compl., ¶¶ 61-62.  The reporting of late payments and any foreclosure
simply does not violate section 518 of the SCRA as the cases cited above hold.  In order to
be entitled to any relief, Claimants need to establish (1) an application to a court for relief
under the SCRA *and* (2) retaliation or discrimination by the creditor based on that
application.  Claimants have shown neither item and, consequently, their section 518 claim
fails.

**E.    Claimants Have No Viable RESPA Claim Because None of the Referenced
Correspondence Constitute Qualified Written Requests**

52.    Pursuant to RESPA, loan servicers are required to respond to any "qualified
written request" ("QWR") from a borrower.  *See* 12 U.S.C. § 2605(e)(1)(B) (outlining the

21

requirements for an inquiry to constitute a QWR).  Claimants allege that on "numerous

occasions" they sent QWRs to GMAC Mortgage demanding that Edquid's rights under the

SCRA be protected and that charges assessed be refunded.  Compl., ¶ 66.  During discovery

in the District Court Action, Claimants produced five correspondence that appear to form

the basis for their allegations.  *See* Anderson Decl., <u>Exhibits B</u> – <u>F</u>.

53.     For a communication from a borrower to constitute a qualified written

request, the request must: (a) be a written correspondence, other than notice on a payment

coupon or other payment medium supplied by the servicer, (b) include, or otherwise enable

the servicer to identify the name and account of the borrower, and (c) include a statement of

the reasons for the belief of the borrower, to the extent applicable, that the account is in

error or provide sufficient detail to the servicer regarding other information sought by the

borrower.  12 U.S.C. § 2605(e)(B); *see also Memorandum Opinion and order Sustaining the

ResCap Borrower Claims Trust's Objection to Proof of Claim No. 386 Filed by Barry and

Cheryl Mack*, at 13, *In re Residential Capital, LLC*, No. 12-12020 (MG) (Bankr. S.D.N.Y.

Aug. 4, 2015) [Docket No. 8969] (the "<u>Mack Opinion</u>").  Additionally, under the express

terms of the statute, in order to qualify as a QWR, correspondence must be requesting

information related to the *servicing* of the loan.  12 U.S.C. § 2605(e)(1)(A)-(B).  "The term

'servicing' means receiving any scheduled periodic payments from a borrower pursuant to

the terms of any loan, including amounts for escrow accounts described in section [2609 of

this title], and making the payments of principal and interest and such other payments with

respect to the amounts received from the borrower as may be required pursuant to the terms

of the loan."  12 U.S.C. § 2605(i)(3); *Lattimore v. Wells Fargo Bank, N.A.*, 590 Fed. Appx.

912, 914 (11th Cir. 2014).  Moreover, "if a servicer establishes a designated QWR address,

then the borrower *must* deliver its request to that office in order for the inquiry to be a

'qualified written request.'"  *Roth v. CitiMortgage, Inc.*, 756 F.3d at 178, 181(2d Cir. 2014)

(quoting Real Estate Settlement Procedures Act, Section 6, Transfer of Servicing of

Mortgage Loans (Regulation X), 59 Fed. Reg. 65,442, 65,446 (Dec. 19, 1994) (internal

quotations omitted)); *accord* Mack Opinion at 14-18.

54.     Once a sufficient QWR is received, the loan servicer is required to provide a

written response acknowledging receipt within 20 days.  12 U.S.C. § 2605(e)(1)(A).

Additionally within 60 days of receipt, the loan servicer must provide a notification of

correction or a written explanation, along with a name and telephone number for further

assistance.  12 U.S.C. § 2605(e)(1)(B) and (e)(2).[13]

55.     As noted above, Claimants appear to allege that five different documents that

were sent to GMAC Mortgage constituted QWRs.  *See* Anderson Decl., Exhibits B – F

(purported QWRs).  None of these documents, however, constitute valid QWRs under

RESPA.  Most importantly, none of the letters provide any indication that they were sent to

the Debtors' designated QWR address, which appears on the back of each monthly

mortgage statement.  *See* Lathrop Decl., Exhibits F (sample monthly mortgage statement).

Instead, four of the documents appear to have been faxed to GMAC Mortgage.  *See*

Anderson Decl., Exhibit B, at ¶ 1; Exhibit C, at ¶ 1; Exhibit D (although listing a Dallas

address, the top of the correspondence reflects that it was sent "Via Facsimile Only");

---

[13] The time periods and certain other provisions of RESPA were amended by the Dodd–Frank Wall Street Reform and Consumer Protection Act, Pub. L. 111–203 § 1463(c), 124 Stat. 1376, 2184 (2010) (the "Dodd-Frank Act"). However, the provisions of the Dodd-Frank Act amending RESPA did not become effective until the Consumer Financial Protection Bureau assumed responsibility for administering RESPA, promulgated and proposed rules under RESPA, and those rules became final and effective on January 10, 2014.  *See Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1145 n.3 (10th Cir. 2013) (describing the timeline leading up to the effectiveness of the Dodd-Frank Act's amendments to RESPA); *accord Roth v. CitiMortgage Inc.*, 756 F.3d at 182 n.3 (noting that the shortened timeframes specified in the Dodd-Frank Act amendments to RESPA applied "[a]s of January 10, 2014….").

Exhibit E.  The other correspondence appears to have been sent via fax and to addresses in

California, but **not** to the Debtors' designated QWR address in Waterloo, Iowa.  *Compare*

Anderson Decl., Exhibit F, at 5-6 *with See* Lathrop Decl., Exhibits F at 2.  Since none of the

correspondences were directed to the appropriate designated QWR address, none of them

"trigger[ed] [GMAC Mortgage's] duties under RESPA," and they cannot form the basis for

a claim under RESPA.  *See Roth v. CitiMortgage*, 756 F.3d at 182 (citation omitted).

56.    Claimants' inquiries also do not qualify as QWRs for several other,

independent reasons.  First, the correspondence from Claimants to GMAC Mortgage related

only to SCRA foreclosure protections rather than presenting any inquiry related to payments

or servicing of the loan, and the document relating to credit reporting (Anderson Decl.,

Exhibit F) does not pertain to servicing either.  *See* 12 U.S.C. § 2605(i)(3) (defining

"servicing").  Claimants cannot bootstrap a RESPA claim that is premised entirely on his

allegations under the SCRA.  *See McGinley v. Centr. Mortg. Co. (In re McGinley)*, 490 B.R.

723, 728-29 (Bankr. D. Md. 2013) (concluding that correspondence seeking holder in due

course status and affidavit for generally accepted accounting principles "has nothing to do

with servicing a loan" and dismissing RESPA claim); (*Jensen v. Quality Loan Serv. Corp.*,

702 F. Supp. 2d 1183, 1196 (E.D. Cal. 2010) (dismissing § 2605(e) claim for failure to

allege inquires related to servicing); *Sipe v. Countrywide Bank*, 690 F. Supp. 2d 1141, 1154

(E.D. Cal. 2010) (holding that a demand for rescission of the loan agreement does not relate

to servicing under § 2605(e)).

57.    Second, the inquiry from Lieutenant Colonel Paul Forshey is not an inquiry

"from the borrower" or an agent of the borrower, which is required to trigger a servicer's

obligations under RESPA.  *See* 12 U.S.C. § 2605(e)(1)(A) (requiring response to QWR

24

"from the borrower (or an agent of the borrower)"; Anderson Decl., <u>Exhibit E</u>, at 1
(indicating that Lieutenant Colonel Forshey "d[id] not represent Mr. Edquid in this matter"
and was "not Mr. Equid's attorney for the underlying matter," but instead "represent[ed] the
Arizona National Guard"). For this reason as well, the March 3, 2009 correspondence was
not a viable QWR and Claimants' RESPA claim fails.

58.    Finally, even if any of Claimants' correspondence were considered to be valid
QWRs, GMAC Mortgage did respond. The five communications were dated April 6, 2006,
February 19, 2009, February 25, 2009, March 3, 2009 and August 11, 2010. *See* Anderson
Decl., <u>Exhibits B</u> – <u>F</u>. Claimants conceded in their Complaint that the Debtors responded to
their April 2006 inquiry (*see* Compl., ¶ 22) and their August 11, 2010 (*see* Compl., ¶ 44),
and the February and March 2009 communications were timely responded to by GMAC
Mortgage on March 11, 2009. *See* Lathrop Decl., ¶ 6, <u>Exhibit G</u>. Although Claimants may
take issue with the substance of the March 11, 2009 response (*see* Compl., ¶ 41) it was
sufficient under RESPA that a response was provided. *See Bates v. JPMorgan Chase Bank,
N.A.*, 768 F.3d 1126, 1135 (11th Cir. 2014) (where loan servicer provided reasons that the
*servicer believed* the account of the borrower was correct, there was no RESPA violation).
Moreover, to the extent that the correspondence could be read as communications informing
the Debtors that "the account [wa]s in error" as a result of the foreclosure sale (*see*
12 U.S.C. § 2605(e)(1)(B)(ii)), the "error" was rectified within 20 days of the Debtors
receipt of the February and March correspondence when, on March 11, 2009, the
foreclosure sale was rescinded.

59.    For the foregoing reason, Claimants' RESPA claim also fails.

## NOTICE

60.     The Borrower Trust has provided notice of this Objection in accordance with

the Case Management Order, approved by this Court on May 23, 2012 [Docket No. 141],

and the Procedures Order.

## CONCLUSION

WHEREFORE, the Borrower Trust respectfully requests entry of the Proposed

Order, substantially in the form attached hereto as <u>Exhibit 2</u>.

Dated: October 14, 2015
        New York, New York

/s/Norman S. Rosenbaum

Norman S. Rosenbaum
Jordan A. Wishnew
James A. Newton
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the ResCap Borrower Claims Trust*

- and –

Keith S. Anderson – *admitted pro hac vice*
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203-2119
Telephone: (205) 521-8000
Facsimile: (205) 521-8800

*Litigation Counsel for the ResCap Borrower
Claims Trust*

26

ny-1207727