MARK A. NIALIS, ESQ., SBN 89923
WILDISH & NIALIS
500 North State College Boulevard, Suite 1200
Orange, California 92868
Tel: (714) 634-8001 / Fax: (714) 634-3869
email: mnialis@wildishandnialis.com

Counsel for Claimant/Creditor, ROBERT WIELAND,
as Successor Trustee of THE MARSHELL O. CULTON
REVOCABLE LIVING TRUST DATED
APRIL 28, 2005, and as Successor in Interest
of Marshell O. Culton

**UNITED STATE BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Case No.: 12-12-02020 (MG) |
| | ) |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | ) Chapter 11 |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

**OPPOSITION FILED BY ROBERT WIELAND, TTE OF THE
MARSHELL O. CULTON REV. LIVING TRUST TO THE RESCAP
BORROWER CLAIMS TRUST'S OBJECTION TO CLAIMS 3724 AND 3735;
DECLARATION OF ROBERT WIELAND**

**Hearing:  November 18, 2015 at 10:00 a.m.  Room 501**

**<u>TABLE OF CONTENTS</u>**

I.     INTRODUCTION..................................................................................... 2

A.    Preliminary Matters................................................................................... 2

B.    Additional Procedural Issues. .................................................................. 3

II.   THE PROOF OF CLAIM STATES A CLAIM FOR RELIEF......................................... 5

1.    The Claimant sets forth a claim for wrongful foreclosure based on fraud and promissory estoppel.  Under California law the promise may be oral, and it is not barred by the parol evidence rule, nor is it barred by the statute of frauds, nor any by other substantive or procedural rule............................................................. 5

2.    The Debtors are wrong that California law bars parol evidence from supporting the elements of Claimant's case, the statute of frauds, notwithstanding. ......................... 11

3.    The alleged vagueness in the pleading of the fraud allegation in the complaint does not bar recovery in this case.  In any event, fraud is clearly plead.. ...................... 12

4.    Aceves v. U.S. Bank, cited above, allows a private right of action for breach of promissory estoppel and for fraud, and allows the recovery of damages. ....................... 14

5.    The Debtors conducted the January 28, 2010 foreclosure sale without recording or publishing any notice. Furthermore, they deliberately stonewalled the Claimant and kept the existence of this new foreclosure date a secret from Claimant. This deliberate concealment was wrongful, outrageous, and results in liability. The defense that federal "privacy" laws prevented them from warning the Claimant of the foreclosure date is false...................................................................................... 15

(1)    Servicing or processing a financial product or service that a consumer requests or authorizes........................................................................................ 17

6.    The argument that  ETS  is immunized from liability because the recordings of the foreclosure documents are allegedly privileged under Civil Code § 2924d is without merit............................................................................................................ 17

III.  THERE IS A CONFLICT IN THE TESTIMONY WHICH MUST RESOLVED IN AN EVIDENTIARY HEARING ........................................................................... 19

IV.  COMPUTATION OF THE CLAIM (DAMAGES)............................................. 20

SUMMARY OF CLAIM AND INTEREST CALCULATION. ....................................... 20

i

V.    CONCLUSION. ........................................................................................................... 21

# TABLE OF AUTHORITIES

<u>STATE CASES</u>

Aceves v. U.S. Bank.
(2011) 192 Cal.App.4th, 218. ................................................................................................. 8, 9

Advanced Choices, Inc. v. State Dept. of Health Services
(2010) 182 Cal.App.4th 1661. ................................................................................................. 9

Pfeifer v. Countrywide Home Loans
(2012) 211 Cal.App.4th 1250. ................................................................................................. 14

Raedeke v. Gibraltar Sav. & Loan Assn.
(1974) 10 Cal.3d 665.. .............................................................................................................. 10

Riverisland Cold Storage, Inc. v Fresno-Madera Prod. Credit Ass'n
(2013) 55 Cal.4th 1169. ............................................................................................................ 11

Simons v.  County of Kern
234 Cal.App.2d 370 (1965). ..................................................................................................... 13

Stansfield v. Starkey
(1990) 220 Cal.App.3d 59. ....................................................................................................... 14

Toscano v. Greene Music
(2004) 124 Cal.App.4th 685. ................................................................................................... 20

<u>STATE STATUTES</u>

California Civil Code, section 2924c. ....................................................................................... 16

California Civil Code, section 2924d....................................................................................... 17

California Civil Code, section 2924f. ....................................................................................... 16

California Civil Code, section 47............................................................................................... 17

California Code of Civil Procedure, section 452. .................................................................... 13

California Code of Civil Procedure, section 473. .................................................................... 13

FEDERAL STATUTES

11 USC § 362. ................................................................................................................. 21

12 C.F.R. §1610(14). ..................................................................................................... 16

12 C.F.R. §1610(15)(7)(i). ............................................................................................ 16

12 C.F.R. §1610(15)(a)2(v). .......................................................................................... 16

12 C.F.R.§ 1610 (15)7(ii). ............................................................................................. 16

MARK A. NIALIS, ESQ., SBN 89923
WILDISH & NIALIS
500 North State College Boulevard, Suite 1200
Orange, California 92868
Tel: (714) 634-8001 / Fax: (714) 634-3869
email:  mnialis@wildishandnialis.com

Counsel for Claimant/Creditor, ROBERT WIELAND,
as Successor Trustee of THE MARSHELL O. CULTON
REVOCABLE LIVING TRUST DATED
APRIL 28, 2005, and as Successor in Interest
of Marshell O. Culton

**UNITED STATE BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Case No.: 12-12-02020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | Chapter 11 |
| Debtors. | Jointly Administered |

**OPPOSITION FILED BY ROBERT WIELAND, TTE OF THE
MARSHELL O. CULTON REV. LIVING TRUST TO THE RESCAP
BORROWER CLAIMS TRUST'S  OBJECTION TO CLAIMS 3724 AND 3735;
DECLARATION OF ROBERT WIELAND**

**Hearing:   November 18, 2015 at 10:00 a.m.   Room 501**

**COMES NOW** the Claimant, ROBERT WIELAND, as Successor Trustee of THE

MARSHELL O. CULTON REVOCABLE LIVING TRUST DATED APRIL 28, 2005 Trustee

of the Marshell O. Culton Revocable Living Trust Dated April 28, 2005, and as Successor In

Interest of Marshell O. Culton ("<u>Claimant or Creditor</u>"), and opposes the ResCap Borrower

Claims Trust's ("Debtor") objections to the above referenced claims as follows:

1

## I. INTRODUCTION

### A.    Preliminary Matters

The claim of Robert Wieland, successor trustee (replacing Jacqueline O. Wieland, who is deceased) as Trustee of the Marshell O. Culton ("Culton") Revocable Living Trust Dated April 28, 2005, and as Successor In Interest of Marshell O. Culton ("Claimant"), arises from the wrongful foreclosure by GMAC Mortgage, LLC ("GMAC") and Executive Trustee Services, LLC dba ETS Services LLC ("ETS") of real property located at 830 West Orange Grove Avenue, Arcadia, CA 91006 ("Subject Property"). Culton (the mother of Jacquelyn O. Culton) purchased the Subject Property on October 16, 2002. On July 12, 2005, the Subject Property was transferred, by way of a Trust Transfer Deed, to The Marshell O. Culton Revocable Living Trust Dated April 28, 2005, ("Culton Trust"), which was recorded with the Los Angeles County Recorder's Office as Instrument No. 051641340. On April 25, 2007, in order to refinance the Subject Property, Culton executed a Quitclaim Deed transferring the Subject Property from the Culton Trust to herself, an unmarried woman, and recorded this deed in the County of Los Angeles as Instrument No. 20071113043 on May 8, 2007. Culton encumbered the Subject Property with a Note secured by a First Deed of Trust in the amount of $970,000.00 ("DOT Note") dated April 30, 2007, which was recorded in the Los Angeles County Recorder's Office on May 8, 2007 as Instrument No. 20071113044 which is in a first priority position for the Subject Property.

On March 31, 2009, a Notice of Default and Election to Sell Under Deed of Trust ("NOD") was recorded by ETS against the Subject Property indicating that as of March 27, 2009, Culton was in default in the amount of $25,886.23. The NOD was recorded with the Los Angeles County Recorder's Office as Instrument No. 20090459490. Thereafter, on July 2, 2009,

2

a Notice of Trustee's Sale ("NTS") was recorded against the Subject Property.  The Lathrop

Declaration admits that the foreclosure sale was noticed for July 27, 2009.  Lathrop Declaration

Paragraph 8.  The NTS was recorded with the Los Angeles County Recorder's Office as

Instrument No. 20090999746.   Subsequent to the recordation of the NOD and NTS, Culton and

GMAC exchanged communications concerning a foreclosure repayment plan and agreement.

On September 17, 2009, Culton, for the benefit of the real property and to cure the default in the

NOD and NTS, entered into a "Foreclosure Repayment Agreement," ("FRA") with GMAC,

which FRA served as a modification of the DOT Note.  Payments were made by Culton, and

GMAC accepted Culton's payments, under the DOT Note pursuant to the FRA up to November

2009.

On November 5, 2009, Culton died.[1]   Jacqueline Wieland was the Successor Trustee of

the Culton Trust, the sole beneficiary of the Subject Property.  On November 15, 2009, after

Culton passed away, Claimant remitted a payment pursuant to the Foreclosure Repayment

Agreement, which GMAC accepted, under the DOT Note.  GMAC accepted the payment

remitted by Jacqueline Wieland  in both her capacities as Successor Trustee and as Successor in

Interest to Culton.

The facts giving rise to liability on this claim will be explained in Section II, *infra*.

**B.    Additional Procedural Issues**

The Claims contain the allegations regarding the wrongful conduct by the Debtors.

---

[1]    The Los Angeles County Probate Court in Case No. GP016044 issued an order, *nunc pro tunc*, that the Subject Property is deemed property of the Culton Trust at the time of Culton's death on November 5, 2009.  At the date of the death the record title to the Subject Property was still in the name of Culton as an unmarried woman. Culton inadvertently failed to transfer the Subject Property back into the Culton Trust after completing the April 2007 refinance on the Subject Property.  The Subject Property the court ruled was actually owned by the Culton Trust because the language in the Culton Trust Instrument is sufficient to create a trust in the property.

Attached to the Claims was the Second Amended Complaint[2]. There is now a Third Amended

Complaint, and for simplicity, its allegations are quoted herein, as it replaces the Second

Amended Complaint.   The Third Amended Complaint is attached to Debtor's Objection, as

Exhibit A to the Lathrop Declaration.   It was submitted in request to an inquiry by the Debtor on

June 21, 2013, asking if there were any changes to the claim.  On July 15, 2013, Counsel for

Claimant (Mark Nialis)  provided the Debtors with the Third Amended Complaint and advised

Debtor that the calculation of damages (claim) remained unchanged.   See, Lathrop Declaration,

Exhibit A, which includes Rescap's inquiry letter, Mr. Nialis's responsive letter, and the Third

Amended Complaint.

On December 7, 2011, Claimant filed an action naming GMAC and ETS as defendants

on causes of action for breach of contract, fraud, intentional misrepresentation, negligent

misrepresentation and wrongful foreclosure against the Subject Property in the Superior Court of

the State of California, Los Angeles County *Jacquelyn Wieland, Trustee of the Marshell O.

Culton Revocable Living Trust, dated April 28, 2005 v. GMAC Mortgage, LLC, et al.*, Case No.

GC048550) ("LASC Civil Action").   This litigation has been stayed by the automatic stay per

11 U.S.C. Section 362 *et al.* as to the Debtors only.

Claimant, through her counsel, on November 8, 2012, filed Proof of Claim No. 3734 in

Case No. 12-2028 (MG) *In re Executive Trust Services, LLC* ("Claim 3734") and Proof of Claim

No. 3735 in Case No. 12-2032 (MG) *In re GMAC Mortgage, LLC* ("Claim 3735").

---

[2]        The Third Amended Complaint was filed (due to litigation by parties not in bankruptcy).  The core
allegations  of facts against the Debtors as to the wrongful conduct are materially the same, however, the paragraph
numbering is different, and some of the verbiage is different.

4

## II.  THE PROOF OF CLAIM STATES A CLAIM FOR RELIEF

1.       **The Claimant sets forth a claim for wrongful foreclosure based on fraud and promissory estoppel.  Under California law the promise may be oral, and it is not barred by the parol evidence rule, nor is it barred by the statute of frauds, nor any by other substantive or procedural rule.**

The Third Amended Complaint alleges:

*33.       Plaintiff alleges that on or about November 15, 2009,* **after** *CULTON passed away,  Plaintiff and her husband Robert Wieland remitted a payment pursuant to the Foreclosure Repayment Agreement, which GMAC accepted on behalf of and for the benefit of the BENEFICIARIES under the Subject First Deed of Trust.*

*34.       Plaintiff, as Successor Trustee and as Successor In Interest, promptly notified Defendant GMAC of her mother's death. On or about 12/10/09 at 2:07 p.m., Plaintiff and her husband Robert Wieland called GMAC's Mortgage Loan Servicing Customer Care Department at (866) 725-0782.  Defendant GMAC, by and through its representative whose identity is known to GMAC, orally directed Plaintiff and Robert Wieland not to make any payments under the Foreclosure Repayment Agreement.* **Further, Defendant GMAC, by and through its representative whose identity is known to GMAC, made an express promise to Plaintiff that GMAC would suspend all foreclosure activity concerning the Subject Property and that GMAC would continue to work with Plaintiff and her husband**

5

*while GMAC determined how to proceed after CULTON's death.*

*(A true and correct copy of Robert Wieland's phone records*

*showing telephone calls made to GMAC Mortgage Loan Servicing*

*Customer Care Department* *at (866) 725-0782 on 12/10/09 and*

*1/13/11 is attached hereto as Exhibit "I.")*

35.     *Pursuant to the express agreement with GMAC,*

*Plaintiff did not make the monthly payment for December 2009* **in**

**reliance upon the statements of GMAC's Loan Servicing Customer**

**Care representative** *whose identity is known to GMAC.*

36.     *On or about December 22, 2009, Robert Wieland*

*thereafter provided Defendant GMAC with a copy of CULTON's*

*death certificate, as requested by GMAC.*

37.     *Defendant GMAC failed to note in their records that*

*CULTON had passed away and continued to direct communications*

*to her, despite receiving a copy of Marshell O Culton's death*

*certificate.*

38.     *On or about January 8, 2010, Defendant GMAC sent*

*a letter to CULTON stating that the repayment plan previously*

*established at her request was canceled because "the payment was*

*not received by the payment date as specified in the* ***signed***

***repayment agreement****." [Emphasis Added] This letter was sent over*

*two months after CULTON passed away and over two weeks after*

*Robert Wieland provided a copy of CULTON's death certificate, as*

6

requested by Defendant GMAC. (A true and correct copy of GMAC's letter dated 1/8/10 indirectly admitting the Foreclosure Repayment Agreement between GMAC and CULTON was executed and binding against GMAC is attached hereto as Exhibit "I" and incorporated by reference as though fully set forth herein.)

40.      Plaintiff is informed and believes and thereon alleges that on January 28, 2010, Defendant ETS, acting in concert of action with each and every Defendant, conducted a wrongful foreclosure against the Subject Property by way of a Trustee Sale without any further notice to Plaintiff.

41.      **Had Plaintiff not detrimentally relied on GMAC's representations, Plaintiff would have fully tendered that amount which was in foreclosure at that time**, which would have been the payments Plaintiff withheld in reliance on GMAC's representations.

42.      On or about February 5, 2010, Defendant ETS recorded a Trustee's Deed Upon Sale from ETS to Grandana LLC/Lava rock Investments, LLC which was recorded with the Los Angeles County Recorder's Office as Instrument No. 20100170064. (A true and correct copy of which is attached hereto as Exhibit "K.")

43.      Plaintiff is informed and believes and thereon alleges that twenty days later, on or about February 26, 2010, a Grant Deed was recorded from  Grandana LLC/Lava Rock Investments, LLC to

7

Grandana LLC, Lava Rock Investments, Mansour Meisami and Manzar Meisami, Husband and Wife and E&A LLC, which was recorded with the Los Angeles County Recorder's Office as Instrument No. 20100263451.  (A true and correct copy of which is attached hereto as Exhibit "L.")

44.    Plaintiff is informed and believes and thereon alleges that on or about February 26, 2010, t**he Subject Property was quickly re-sold without improvements for approximately $1,500,000.  A Grant Deed was recorded from Grandana LLC, Lava Rock Investments, Mansour Meisami and Manzar Meisami, Husband and Wife and E&A LLC to David Robert Kruse and Linda Faye Kruse Co-Trustees of the David and Linda Kruse Community Property Trust, under trust dated 6/26/03, which was recorded with the Los Angeles County Recorder's Office as Instrument No. 20100263451.  (A true and correct copy of which is attached hereto as Exhibit "M.")**

California law validates this claim, based on a promise which misleads a borrower, or causes a borrower to change his or her position to his or her detriment .  See, **Aceves v. U.S. Bank.,** 192 Cal.App. 4th, 218 (2011).

The court stated the requirements for a cause of action for promissory estoppel:

"'The elements of a promissory estoppel claim are "**(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both**

8

> *reasonable and foreseeable; and (4) the party asserting the estoppel*
>
> *must be injured by his reliance."* . . . *(Advanced Choices, Inc. v.*
>
> *State Dept. of Health Services (2010) 182 Cal.App.4th 1661, 1672.)*
>
> *... the promise must, in addition, be 'clear and unambiguous in its*
>
> *terms'.  citation omitted.)  "To be enforceable, a promise need only*
>
> *be definite enough that a court can determine the scope of the duty[,]*
>
> *and the limits of performance must be sufficiently defined to provide*
>
> *a rational basis for the assessment of damages.  . . . It is only where*
>
> *'"a supposed 'contract' does not provide a basis for determining*
>
> *what obligations the parties have agreed to, and hence does not make*
>
> *possible a determination of whether those agreed obligations have*
>
> *been breached, [that] there is no contract....[T]hat a promise is*
>
> *conditional does not render it unenforceable or ambiguous."  (Ibid.)*

In **Aceves**, *supra,*  U.S. Bank promised to negotiate a repayment plan if the homeowner voluntarily left the protection of the bankruptcy court.  The homeowner relied on the promise, the bank then breached its promise by refusing to negotiate and by selling the property at foreclosure.  Held, this constituted a cause of action for damages for wrongful foreclosure.

The **Aceves** court addressed another question, namely whether the promise not to foreclose required separate consideration.  The court held that it did not.  The court reasoned as follows:

> *U.S. Bank argues that an oral promise to postpone either a*
>
> *loan payment or a foreclosure is unenforceable. ..[I]n the absence of*

9

consideration, a gratuitous oral promise to postpone a sale of property pursuant to the terms of a trust deed ordinarily would be unenforceable The same holds true for an oral promise to allow the postponement of mortgage payments.) **However, '. . . the doctrine of promissory estoppel is used to provide a substitute for the consideration which ordinarily is required to create an enforceable promise. . . .** "The purpose of this doctrine is to make a promise binding, under certain circumstances, w**ithout consideration in the usual sense of something bargained for and given in exchange**. . . ."' (Raedeke, supra, 10 Cal.3d at p. 672.) '"**Under this doctrine a promisor is bound when he should reasonably expect a substantial change of position, either by act or forbearance, in reliance on his promise, if injustice can be avoided only by its enforcement.** . . (cites omitted). In 1976, a new section 1698 was enacted which states in part: 'A contract in writing may be modified by a contract in writing . . . **[or] by an oral agreement to the extent that the oral agreement is executed by the parties. . . . Nothing in this section precludes in an appropriate case the application of rules of law concerning estoppel** . (cites omitted)

There is another issue regarding detrimental reliance. The Wielands made a previous payment on the property after Culton died. Claimant had the ability to pay the mortgage, but were told not to pay it. Causation, reliance, and injury are clear: Claimant would have made the payments, if it were not for the statements by Debtors not to pay.

10

As for the requirement that reliance be "reasonable", the Claimant observes that the instructions not to pay were unambiguous.  The clear instruction given to Wieland not to pay is itself  sufficient justification for reliance.   The reason given by Debtor was plausible, namely that Culton's death created a change in circumstances and a requirement that the matter go to the assumption department of the lender.  The idea that foreclosure was being postponed until the legal status of the estate could be determined is neither outrageous nor unbelievable.

> **2.       The Debtors are wrong that California law bars parol evidence from supporting the elements of Claimant's case, the statute of frauds, notwithstanding.**

In light of the admission of parol evidence, the result is also to eliminate the bar of the statute of frauds.

The Debtors fail to consider important California law which allows oral statements in cases where they might otherwise be barred.

The California supreme court has relaxed the parol evidence rule in a case arising from lending workout negotiations, holding that in cases alleging fraudulent inducement or promissory fraud, **the court may admit parol evidence, even if it is contrary to written contract terms**. See, **Riverisland Cold Storage, Inc. v Fresno-Madera Prod. Credit Ass'n** (2013) 55 C4th 1169, which also ruled that even though a secured lender ordinarily does not have fiduciary or quasi-fiduciary duties with respect to a borrower, lender liability may arise from post default negotiations or circumstances that create a duty of care or obligate the lender in a contract created by promissory estoppel.

In other words, a lender who advises a homeowner not to make a payment is bound by principles of promissory estoppel.   This acts an an exception to the statute of frauds.   The

11

Debtors cannot rely on the technicalities of the statute of frauds to save them.

The Debtors state in Paragraph 35 of their Objection that the Claimant is asserting breach of an "oral" agreement not to foreclose. **So what if it's oral?  It is still enforceable under California law.**

Also, the Debtors will have difficulty asserting the sanctity of the written agreement, insofar as the Debtors themselves are relying on oral agreements.  For example, the terms of the HARP agreement are not  only oral, they flatly contradict the written terms!

Here is the Lathrop Declaration--See, page 5 footnote 3.  *"Because the HAMP program was still new  the Debtor's systems were not yet capable of setting up trial plans.  As a result, the Debtors would have provided a plan that included a balloon payment, **but the borrower would not have been expected to make the balloon payment."***

So much for the clear, unambiguous construction of written instruments demanded by Debtors.

**3.      The alleged vagueness in the pleading of the fraud allegation in the complaint does not bar recovery in this case.  In any event, fraud is clearly plead.**

The Debtors want to have their cake and eat it too.  They allege rules of pleading, that require fraud be pleaded specifically, but they omit other California rules and practices that fraud allegations may be supplemented in discovery, or by the amendment of pleadings.

In making this argument, the Debtors are asking the **bankruptcy court to dismiss a fraud allegation on California procedural grounds, that the Debtors could not get a California superior court judge to dismiss.**  We are no longer trying the California case, as it has been stayed as against the Debtors for years.   We are now in the realm of claims litigation.

12

This court should not be involved in second guessing the finer points of California demurrer practice.   Like in the federal system,  pleadings in California are subject to the rule of liberal amendments and of liberal construction of pleadings. **Simons v.  County of Kern**, 234 Cal App. 2d 370 (1965) See, eg C.C.P. § 473 *et seq.*   In California, pleadings may be amended to conform to proof, even after trial. C.C.P. § 452 states that: *"In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties."*

However, the vagaries of California code pleading no longer apply, because the procedural rules in evaluating this claim  are determined by federal rules of Bankruptcy Procedure, the Local Bankruptcy Rules and General Orders.  The matter is to be determined on California substantive law, not California procedural laws.

The Debtors cannot claim surprise as to the nature of the fraud allegation.   Debtors have also had the opportunity to take discovery in the state action, or in connection with this claims litigation,   and the have declined to do so.  The Debtors have not quoted any language in the Third or Second Amended Complaint that they wanted stricken, on the grounds of improper pleading under California law.   It should be emphasized that were a California court to have ruled on demurrer for ambiguity (similar to a federal 12(e) motion for a more definite statement) that the fraud was inadequately pleaded, then Claimant would have been given liberal opportunities to amend, and to provide a more definite statement.

Claimant has given Debtors all the information which he had regarding the circumstances and identity of the person with whom he spoke.   This information is actually quite specific, and Debtor cannot claim that the allegations are "conclusory,"  as they state the sum and substance of the conversation, and the date, and phone number called.   Actually, the Debtors know the

13

identity of the person who spoke to Mr. Wieland.  The Servicing notes attached to the Lathrop

Declaration state who spoke to Mr. Wieland or, at a minimum, typed the notations in the

computer system.

Let us apply even a relatively strict requirement for the pleading of fraud, or

misrepresentation,  that is, "pleading facts which show how, when, where, to whom, and by what

means the representations were tendered." ***Stansfield v. Starkey*** (1990) 220 Cal.App.3d 59, 73;

By that standard, the Bankruptcy Court has substantial facts which satisfy this state court

standard.  But again, we are not bound by California procedural technicalities.

**4.      Aceves v. U.S. Bank, cited above,  allows a private right of action for breach of**

**promissory estoppel and for fraud, and allows the recovery of damages**.

This refutes the Debtor's claim that there is no private right of action, and the Claim

should be disallowed.  Objection Paragraph 47, Page 16.

The lack of a private right of action, as alleged only applies to one specific procedural

defect, namely failure to "meet and confer." requirements under Federal Mortgage Regulations.

There is no claim by Claimant regarding a violation of the "meet and confer"

requirements.  Moreover, Debtor's can't claim that there are no such remedies for wrongful

foreclosure in California.  The lack of private cause of action is inapplicable here.  Please note

that both the fraud and the wrongful foreclosure statutes provide for private rights of action.

*Pfeifer v Countrywide Home Loans* (2012) 211 CA4th 1250, applies only to  violations of

the "meet and confer" statutes, as set forth in federal regulations.

14

5.       **The Debtors conducted the January 28, 2010 foreclosure sale without recording or publishing any notice. Furthermore, they deliberately stonewalled the Claimant and kept the existence of this new foreclosure date a secret from Claimant. This deliberate concealment was wrongful, outrageous, and results in liability. The defense that federal "privacy" laws prevented them from warning the Claimant of the foreclosure date is false.**

The Lathrop declaration reveals that the Debtor's knew that foreclosure had been ordered and was days away, yet gave no hint of this fact to Mr. Wieland, despite his numerous pleas for information and to discuss the account.  See Lathrop Declaration paragraphs 12 through 18. The Debtors cannot rely on any purported right of "privacy", for a variety of reasons; **First, foreclosures in California are public events.**  The Notice of Election to Sell Under Deed of Trust is Recorded and published, as is the Notice of Sale.   See Civil Code § 2924f.   The Debtors had a right to publish the new sale date, **indeed, they could have advertised the foreclosure date on TV or radio!**   If the Debtor's position is sustained, then it's possible for a lender to let everyone in the world  know of the foreclosure date, including all sorts of insiders, speculators and other investors,  and  at the same time to conceal that fact from the person with the most interest in the property, the borrower or representative.  Foreclosure notices are recorded in the county recorders office, published in newspapers,  and foreclosures are public auctions, often on the steps of the courthouse.  Indeed, California law foreclosure policy is to allow maximum exposure of the property.  The junior lien holders are entitled to notice as well, under Civil Code § 2924c therefore, there is no "right of privacy" which permitted Debtors to conceal the foreclosure sale.   Also, the Debtors admit receiving actual notice of  Culton's death on December 10, 2009 and received the death certificate on December 29th, 2009.  Therefore,

15

they knew that Culton couldn't protect her interest, yet they deliberately sent notices to her

(January 8, 2010) (See, Exhibit I to ThirdAmended Complaint) and ignored the individual who

contacted them on behalf of the estate.

The Debtors incorrectly state that their hands were tied, and they could not alert Claimant

to the pending foreclosure, or any particulars, because he didn't prove his status as executor.

They claim to protected by federal law, specifically,  12 C.F.R. §1610(15)(a)2(v).  The

regulation states that the Debtors can disclose to a fiduciary or representative.   They admit they

could disclose, but they wanted proof, satisfactory to them.  But there is no rule cited which

describe such proof being required.

But, most importantly, the Debtors have omitted other, critical regulations which either

mandated or allow disclosure of the foreclosure information.  For example, the Regulations

permit disclosure under 12 C.F.R. §1610(15)(7)(i).  **To comply with Federal, state, or local

laws, rules and other applicable legal requirements;**  As stated, California law makes

foreclosure information public. The date and time of sale, the  amount to reinstate, whether a

balance is due, and what provisions can be made to cure the default are also public information

under California law.  This information is available on demand, for example to bidders and to

junior lien holders   See, Civil Code § 2924c and 2924f.  Moreover, authorization to disclose

exists under 12 C.F.R.§ 1610 (15)7(ii) **To protect against or prevent actual or potential

fraud, unauthorized transactions, claims, or other liability;**  This means that because the

Debtors advised Claimant not to pay,  they needed, at a minimum to warn Claimant of the

foreclosure, to avoid fraud or liability to claimant.

Moreover, 12 C.F.R. §1610(14) states that there is a broad exception to the privacy

protections, namely situations wherein institutions may **disclose nonpublic personal**

16

**information as necessary to effect, administer, or enforce a transaction that a consumer requests or authorizes, or in connection with:**

> **(1)    Servicing or processing a financial product or service that a consumer requests or authorizes;**

Here, the product is the trust deed  and  the promissory note on which the borrower owes. This foreclosure is certainly "enforcing" a transaction, namely the repayment of the  loan of the borrower.

In summary, the Debtors had ample opportunity, and indeed had a duty under California law to disclose the foreclosure date, the amount due, reinstatement, and all other material parts of the foreclosure process, **regardless of whether they received a copy of the will or trust.** Federal regulations didn't prevent the disclosure, and in fact, the regulations specifically authorize release of information to comply with state law under **sections that didn't require Claimant to produce any documents.**  The federal privacy laws don't prevent disclosure of information to comply with state law or a state procedure like foreclosure.

**6.    The argument that  ETS  is immunized from liability because the recordings of the foreclosure documents are allegedly privileged under Civil Code § 2924d is without merit.**  (Objection, paragraphs 49, 50 pg. 18)

Civil Code § 2924d states that "all of the following constitute privileged communications pursuant to section 47..."  Civil Code § 47 provides a qualified privileged from libel and slander claims. Therefore,  Civil Code § 2924d means only that the filing  foreclosure documents and communications regarding the administration of the foreclosure  cannot give rise to libel and slander allegations. This is a "qualified privilege"  This means, there is no immunity for intentional, or malicious wrongs.    There is no immunity from liability based on fraud, wrongful

17

foreclosure, promissory estoppel etc.    There are no libel nor slander claims in this case, hence, the assertion of privilege is irrelevant in this case.

There is another point.  Debtor GMAC's actions were malicious as well.  The Debtor knew that it had the duty not to foreclose.  It deliberately ignored the duty.  It held a secret foreclosure, without notifying the borrower's representative.  Although in possession of the Culton death certificate, they mailed documents addressed to her.  Although  they had picked out a foreclosure date and time, they withheld that information from her.  In their January 8th, 2010 letter GMAC  said only that the "default proceedings will resume".  **The letter did not state that the property would be sold by foreclosure on January 28, 2010.**  The letter gave no hint that the property would be summarily sold without notice in 20 days.   Therefore, the letter was itself deliberately misleading as to the facts.  Note how GMAC speaks in its Objection so piously of its need to protect the borrowers privacy. Yet, when  GMAC addressed a letter directly to the deceased Culton (the original borrower) GMAC saw no need to tell her about the foreclosure!

ETS has no claim to privilege.  ETS worked hand and glove with GMAC, and was not independent.

ETS did not give any notice of the foreclosure, and its conduct was intentional and malicious.  ETS acted with reckless disregard of the rights of Culton and Culton's representative when it held what was in effect, a secret foreclosure.  ETS has produced no evidence that it provided notice to anyone about the  foreclosure which they conducted on January 28th. 2010. Therefore, ETS had actual knowledge that neither the borrower, nor  any potential bidders  had any warning as to the new foreclosure date.    ETS therefore acted maliciously and recklessly. They are therefore liable with GMAC for the wrongful conduct.  In fact, no new notice of trustees sale was recorded, prepared, published, nor mailed.   This was fraudulent as against the

18

borrower and Claimant.

## III.   THERE IS A CONFLICT IN THE TESTIMONY WHICH MUST

## RESOLVED IN AN EVIDENTIARY HEARING

There is a clear conflict between the parties as to critical facts;  Claimant states

unequivocally that Robert Wieland was told explicitly not to make payments until the status of

the estate was sorted out.  And, based on that statement, he did  not make the December

payment.   Debtors state that their records  indicate nothing about a promise to suspend

foreclosure.   Note,  Debtors don't deny the allegation, they merely state that they have no record

of such a conversation in their servicing notes.  Lathrop Declaration Paragraph 27, Pg. 8.   In the

event that the court does not consider the evidence sufficient for judgment for Claimant, then it

is requested that the matter be set for hearing.  Claimant observes that the Lathrop Declaration is

the only factual evidence introduced by Debtors, and Lathrop's sole competency to testify  is that

she has reviewed the Debtor's records and is reporting their contents.  She has no first hand

knowledge of any of the facts contained in the records.  She cannot testify whether the records

are truthful, nor can she testify as to whether they are complete.  These records are cryptic, and

she cannot testify as to whether these records omit important facts, or are self serving.   The

records produced by Lathrop, particularly the servicing notes, indicate that no notice of the

January 28, 2010 foreclosure was ever given to Claimant, Wieland, or ever even sent to the

deceased Culton's home.  In fact, those who made those notes were emphatic that no information

of any kind was given out.   Indeed, even as the Debtors knew that the property was to be

foreclosed on January 28th, on January 26th, they stonewalled Mr. Wieland and ignored his

attempts to resolve the matter.   See, Lathrop Declaration, Paragraphs 23, 24, 25, 26, 27.  The

Declaration is also consistent with the statement that no  Notice of Trustee's Sale showing the

19

continued January 28, 2010 foreclosure date was ever recorded or published.

## IV.  COMPUTATION OF THE CLAIM (DAMAGES)

As was stated in **Aceves,** *supra***,** the measure of damages are contractual. Quoting from the decision.

> *Finally, a promissory estoppel claim generally entitles a plaintiff to the damages available on a breach of contract claim. (See Toscano v. Greene Music* (2004) 124 Cal.App.4th 685, 692–693.)

In this case, the contractual measure of damages would be value of the property lost, minus the mortgage.  Here proof of the loss is clear enough.   The Debtors credit bid the property at the foreclosure sale.  The credit bid was set forth on the face of the  Trustee's Deed Upon Sale (Exhibit K to Third Amended Complaint) in the amount of $1,078,874.00.  The property was resold the next month for $1,500,000.   The property was worth, in fair market value, the sum of $2,000,000 at the time of the foreclosure.   See statements under oath by Claimant.  This valuation comes from the owner (successor in interest) and constitutes competent evidence.  Debtors have said nothing in their Objection challenging this valuation.    The valuation of the claim is set forth in the addendum to the claims.   For the court's convenience, the information is repeated here.

### *SUMMARY OF CLAIM AND INTEREST CALCULATION*

*The Claimant has sued the debtor on a variety of causes of action in the Superior Court of the State of California, Los Angeles County,  in the case of  **Jacquelyn Wieland, Trustee of the Marshell O. Culton Revocable Living Trust, dated April 28, 2005 v. GMAC Mortgage, LLC et al.** Case No.  GC048550.  Attached as documentary evidence of the claim is the Second Amended Complaint in this case, which constitutes a  detailed pleading of the facts underlying this claim, and*

*further contains exhibits demonstrating the validity of the claim against the debtor.   The filing of the Chapter 11 petition herein has stopped the litigation as to the debtor, pursuant to 11 USC § 362 **et seq.**  This claim is filed in lieu of litigation as to the debtor.   Although multiple parties are listed in the lawsuit,  the debtor who is named herein as the subject of this claim is substantively liable for the entire amount of damages set forth below.  The amount of the claim is computed as follows:*

| | | |
|---|---|---|
| *Damages based on loss of the real property, as of January 28 2010, wrongfully caused by debtor's acts and omissions as plead in the  complaint, and which are applicable as to all causes of action* | | |
| *FMV Value of real property:* | *2,000,000.00* | |
| *Less Mortgage:* | *1,078.00* | *922,000.00* |
| *Attorneys fees to May 14, 2012, Chapter 11 filing date plead and recoverable  as per the complaint* | | *25,187.00* |
| *Interest from Jan. 28, 2010 to  May 14, 2012* | | *119,228.00* |
| *Interest Calculation:*<br>      *10% is the statutory legal interest rate in Calif.*<br>      *litigation, from foreclosure date to date of Chapter*<br>      *11 filing.  Property loss, less mortgage is*<br>      *$922,000@10% simple interest= $92,200 per*<br>      *year,or $7683.33/month, or $252.60/day.* | | |
| *Punitive Damages, as plead  and recoverable in the complaint.* | | *500,000.00* |
| **TOTAL:** | | **$1,566,415.00** |

A note on the question of punitive damages.  These damages are justly due to because of the absolute callousness and willful disregard of the basic rights of the Claimant.  In this case, punitive damages are also "compensatory", as that term is understood in common understanding.  The bankruptcy court has equitable grounds to award them in this case.

## V. CONCLUSION

WHEREFORE, Robert Wieland, as Trustee of the Marshell O. Culton Revocable Living

Trust Dated April 28, 2005, and as Successor In Interest of Marshell O. Culton, respectfully

requests that Debtor's Objection be DENIED, and the claim described herein be allowed as filed,

and such other relief is granted.

Dated:   October 15, 2015

Respectfully submitted,

/s/        Mark A. Nialis

By:_____

Mark A. Nialis
NIALIS LAW GROUP, APLC
500 N. State College Blvd,. Ste. 1200
Orange, CA 92868
Tel: (714) 634-8001
Fax:(714) 634-3869
Email:   Mnialis@NialisLaw.com

*Counsel for Claimant/Creditor, ROBERT
WIELAND, as Trustee of THE MARSHELL O.
CULTON REVOCABLE LIVING TRUST DATED
APRIL 28, 2005, and as Successor In Interest  of
Marshell O. Culton*

## <u>DECLARATION OF ROBERT WIELAND</u>

I, ROBERT WIELAND, declare:

I am the Successor Trustee of The Marshell O. Culton Revocable Living Trust Dated April 28, 2005 (the "<u>Culton Trust</u>"), the Successor-in-Interest of Jacqueline O. Wieland, deceased ("<u>Initial Claimant</u>"), and am the subsequent and current Claimant of this Claim.  All matters in this declaration are true of my own knowledge and, if called upon to do so, I could and would competently testify as to the truth and validity of the matters contained here.

I have reviewed carefully the **OPPOSITION FILED BY ROBERT WIELAND, TTE OF THE MARSHALL O. CULTON REV. LIVING TRUST TO THE RESCAP BORROWER CLAIMS TRUST'S  OBJECTION TO CLAIMS 3724 AND 3735.**

I state the facts contained therein, particularly the facts set forth in the Third Amended Complaint, and in the Claims aforesaid, are true, correct, and accurate.  I adopt as true the statements of fact therein from my personal knowledge.   Specifically, I have actual, personal, first hand knowledge of the facts relating to contacts with the Debtors GMAC and ETS, as I was present for all such phone calls.  I adopt the facts therein as my testimony.   All documents attached to the Third Amended Complaint are true, accurate and complete.  I am familiar with and state that the facts contained in claims 3724 and 3735, are true, accurate, and complete.

I declare under penalty of perjury, under the laws of the  United States that the foregoing is true and correct and that this Declaration was executed on October __15__, 2015, at __Austin, Tex. 78758_____,

/s/ _____
ROBERT WIELAND
Declarant

23

10/15/2015  12:50    5124437704    SAVE THIRD POSTAL    PAGE    02

RECEIVED  10/14/2015 06:35

## DECLARATION OF ROBERT WIELAND

I, ROBERT WIELAND, declare:

I am the Successor Trustee of The Marshell O. Culton Revocable Living Trust Dated April 28, 2005 (the "Culton Trust"), the Successor-in-Interest of Jacqueline O. Wieland, deceased ("Initial Claimant"), and am the subsequent and current Claimant of this Claim. All matters in this declaration are true of my own knowledge and, if called upon to do so, I could and would competently testify as to the truth and validity of the matters contained here.

I have reviewed carefully the OPPOSITION FILED BY ROBERT WIELAND, TTE OF THE MARSHALL O. CULTON REV. LIVING TRUST TO THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIMS 3724 AND 3735.

I state the facts contained therein, particularly the facts set forth in the Third Amended Complaint, and in the Claims aforesaid, are true, correct, and accurate.  I adopt as true the statements of fact therein from my personal knowledge.  Specifically, I have actual, personal, first hand knowledge of the facts relating to contacts with the Debtors GMAC and ETS, as I was present for all such phone calls.  I adopt the facts therein as my testimony.  All documents attached to the Third Amended Complaint are true, accurate and complete.  I am familiar with and state that the facts contained in claims 3724 and 3735, are true, accurate, and complete.

I declare under penalty of perjury, under the laws of the United States that the foregoing is true and correct and that this Declaration was executed on October 15, 2015, at

_AUSTIN, TEX, 78758_

ROBERT WIELAND
Declarant

23

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 15, 2015, a copy of the OPPOSITION  AND
DECLARATION by ROBERT WIELAND, Trustee of THE MARSHELL O. CULTON
REVOCABLE LIVING TRUST DATED APRIL 28, 2005, and as Successor In Interest of
Marshell O. Culton] TO NOTICE OF THE RESCAP BORROWER CLAIMS TRUST'S
OBJECTION TO CLAIM NOS 3734 AND 3735, etc. was served upon the following parties
either electronically or by first class postage prepaid, or by Messenger, as specified:

### By Federal Express

Chambers of the Honorable Martin Glenn
United States Bankruptcy Court
For the Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004-1408

### By Electronic Service

Counsel to the ResCap Borrower Claims Trust

Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104
Attn: Norman S. Rosenbaum, Jordan A. Wishnew, and Jessica J. Arett
Email: Nrosenbaum@mofo.com; Jwishnew@mofo.com; Jarett@mofo.com

Office of the United States Trustee for the Southern District of New York

Office of the United States Trustee
U.S. Federal Office Building
Attn: Linda A. Riffkin and Brian S. Masumoto
201 Varick Street, Suite 1006
New York, NY 10014
Email: Brian.Masumoto@usdoj.gov; Linda.Riffkin@usdoj.gov

24

The ResCap Borrower Claims Trust

Polsinelli, PC
Attn: Daniel J. Flanigan
900 Third Avenue, 21st Floor
New York, NY 10022
Email: dflanigan@polsinelli.com

The ResCap Liquidating Trust

Quest Turnaround Advisors
Attn: Jeffrey Brodsky
800 Westchester Avenue, Suite S-520
Rye Brook, NY 10573
Email: jbrodsky@qtadvisors.com

/s/ Patti Martinez
Legal Secretary
Mark A. Nialis
NIALIS LAW GROUP, APLC
500 N. State College Blvd,. Ste. 1200
Orange, CA 92868
Tel:    (714) 634-8001
Fax:    (714) 634-3869
Email: Mnialis@NialisLaw.com



ORIGIN ID:APVA    (714) 634-8001
PATTI MARTINEZ
NAU'S LAW GROUP
500 NORTH STATE COLLEGE BOULEVARD
SUITE 1200
ORANGE, CA 92868
UNITED STATES US

TO HON. ROBERT E. GERBER
U.S. BANKRUPTCY COURT
ONE BOWLING GREEN
CHAMBERS OF JUDGE
NEW YORK NY 10004
(212) 668-2870

INV:
PO:
DEPT:

REF: FILE NUMBER 5005

TRK# 7747 4901 5221    0201

FRI - 16 OCT 8:00A
FIRST OVERNIGHT

X1 SXYA

10004
NY-US
EWR

SHIP DATE: 15OCT15
ACTWGT: 1.0 LB
CAD: 90554130/NET3670

BILL SENDER

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

## Patti Martinez

| | |
|---|---|
| **From:** | Patti Martinez |
| **Sent:** | Thursday, October 15, 2015 11:26 AM |
| **To:** | nrosenbaum@mofo.com; jwishnew@mofo.com; jarett@mofo.com; brian.masumoto@usdoj.gov; linda.riffkin@usdoj.gov; dflanigan@polsinelli.com; jbrodsky@qtadvisors.com |
| **Subject:** | In re Residential Capital; Case No. 12-12-02020 (MG); Eservice of Opposition to Rescap Objection to Claims 3724 and 3725; NLG File No. 5005 |
| **Attachments:** | OppositionObj.Claim.pdf |
| **Importance:** | High |

The following document is being E-served.  A hard copy will NOT follow by mail.

**OPPOSITION FILED BY ROBERT WIELAND, TTE OF THE MARSHELL O. CULTON REV. LIVING TRUST TO THE RESCAP BORROWER CLAIMS TRUST'S  OBJECTION TO CLAIMS 3724 AND 3735; DECLARATION OF ROBERT WIELAND**



*Patti Martinez*, *Legal Secretary*
500 N. State College Blvd., Ste. 1200
Orange, CA 92868
T: 714.634.8001 / F: 714.634.3869
Email: PMartinez@NialisLaw.com



🌲 **Please consider the environment before printing this email.  Thank you.**

THE INFORMATION CONTAINED IN THE E-MAIL IS PROTECTED BY THE ATTORNEY-CLIENT AND/OR ATTORNEY/WORK-PRODUCT PRIVILEGES AND MAY BE CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL NAMED ABOVE, AND THE PRIVILEGES AND CONFIDENTIALITY ARE NOT WAIVED BY VIRTUE OF THIS HAVING BEEN SENT BY E-MAIL. IF THE PERSON ACTUALLY RECEIVING THIS E-MAIL OR ANY OTHER READER OF THE E-MAIL IS NOT THE NAMED RECIPIENT, ANY USE, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE OR REPLY EMAIL AND DESTROY THE ORIGINAL MESSAGE. THANK YOU.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing or recommending to another party any transaction or matter addressed herein.