1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 12-12020-mg

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


RESIDENTIAL CAPITAL, LLC, et al.,


        Debtors.


- - - - - - - - - - - - - - - - - - - -x


        United States Bankruptcy Court

        One Bowling Green

        New York, New York


        October 15, 2015

        10:08 AM


B E F O R E:

HON. MARTIN GLENN

U.S. BANKRUPTCY JUDGE

1

2   Status Conference Regarding Trust's Objection to Claim Number

3   452 Filed by Julio Pichardo.

4

5   (Doc# 8452) Case Management Conference Regarding Claims Numbers

6   5610, 5612 Filed by Richard D. Rode.

7

8   (Doc# 9124, 8315) Case Management and Scheduling Conference

9   Regarding Claim No. 725 Filed by William J. Futrell.

10

11  Status Conference Regarding UCL Claim (Tia Smith).

12

13  Status Conference Regarding Claim of Rhonda Gosselin.

14

15  Conference Regarding Status Letter Filed on October 9th at

16  5:00 PM.

17

18

19

20  Transcribed by:  David Rutt

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

1

2    A P P E A R A N C E S:

3    MORRISON & FOERSTER

4        Attorneys for ResCap Borrower Claims Trust

5        250 West 55th Street

6        New York, NY 10019

7

8    BY:   JORDAN A. WISHNEW, ESQ.

9        ERICA J. RICHARDS, ESQ.

10        JAMES A. NEWTON, ESQ.

11

12

13    POLSINELLI PC

14        Attorneys for ResCap Borrower Claims Trust

15        900 Third Avenue

16        21st Floor

17        New York, NY 10022

18

19    BY:   DAN FLANIGAN, ESQ.

20

21

22

23

24

25

4

1

2    WALTERS BENDER STROHBEHN & VAUGHAN, P.C.

3            Attorneys for ResCap Borrower Claims Trust

4            1100 Main Street

5            Suite 2500

6            Kansas City, MO 64105

7

8    BY:    ROY F. WALTERS, ESQ. (TELEPHONICALLY)

9

10

11    THOMAS MARGOLIS, ATTORNEY AT LAW

12            Attorney for William J. Futrell

13            125 E. Charles Street

14            Suite 214

15            Muncie, IN 47305

16

17    BY:    THOMAS MARGOLIS, ESQ. (TELEPHONICALLY)

18

19

20    ALSO APPEARING (TELEPHONICALLY AND IN PROPRIA PERSONA):

21            JULIO PICHARDO

22            RICH RODE

23            TIA D. SMITH

24

25

RESIDENTIAL CAPITAL, LLC, et al.                                    5

1                    P R O C E E D I N G S

2           THE COURT:  All right, please be seated.  We're here

3     in Residential Capital, number 12-12020.

4           MS. RICHARDS: Good morning, Your Honor.  Erica

5     Richards of Morrison & Foerster, appearing on behalf of the

6     ResCap Borrower Claims Trust.

7           THE COURT:  Good morning.

8           MS. RICHARDS:  Do you have a copy of the agenda --

9           THE COURT:  I do.

10          MS. RICHARDS:  -- with you?  Okay.  So the first

11    matter going forward today begins on bottom of page 8 of the

12    agenda, and that is a case-management conference on the

13    Borrower Trust's objection to proof of claim number 452 filed

14    by Mr. Julio Pichardo.  I understand that Mr. Pichardo is on

15    the phone.

16          THE COURT:  Mr. Pichardo, are you on the phone?

17          MR. PICHARDO:  Yes, Your Honor.  Good morning.

18          THE COURT:  Good morning, Mr. Pichardo.

19          MR. PICHARDO:  Julio Pichardo.  Yes.

20          THE COURT:  Go ahead.

21          MS. RICHARDS:  As Your Honor may recall, on August 4th

22    you entered an opinion and order sustaining in part, and

23    overruling without prejudice in part, the trust's objection to

24    Mr. Pichardo's claims.

25          THE COURT:  Right.

1          MS. RICHARDS:  On September 21st you held a status

2   conference with the parties, for the purpose of clarifying that

3   order and its effect, and you issued a scheduling order

4   directing the parties to meet and confer regarding the schedule

5   going forward.  We have done that.  On October 9th we filed a

6   status report advising the Court where the matter stands.  At

7   this point that status report is still current.  The parties

8   are continuing to engage in settlement discussions, but at this

9   point the matter is not resolved.

10         In the meantime, we prepared a scheduling order based

11  on the Court's template and provided it to Mr. Pichardo; we

12  took into account the Court's instruction that we be

13  considerate of Mr. Pichardo's health issues.

14         THE COURT:  Yes.

15         MR. PICHARDO:  There are also intervening holidays

16  coming up.  So we haven't heard from Mr. -- Mr. Pichardo has

17  not indicated that he objects to the schedule we set, which

18  would provide for sixty days for fact discovery.  If entered

19  today, that would put the close of fact discovery at December

20  14th.  We propose forty-five days for expert discovery.  And in

21  this case we understand Mr. Pichardo intends to submit medical

22  evidence, so we believe an expert might be required here.  That

23  would put the close of expert discovery at around January 28th.

24  And then we propose thirty days to prepare the joint pretrial

25  order, which would be due, then, around February 29th.  So we

1   would be seeking a trial in March, depending on the Court's

2   schedule.

3            THE COURT:  Mr. Pichardo, let me hear from you.

4            MR. PICHARDO:  Your Honor, I had received something

5   from counsel but they're all blank dates.  I'm just waiting on

6   the response from them, because they said they were going to

7   respond early this week concerning the settlement proposal;

8   I've been waiting on that.  And I have no dates or anything;

9   all is in blank until now that I hear it from counsel.

10           My proposal was simply just on the three percent of a

11  claim amount.  And I also had a question to Your Honor

12  concerning the distribution, because apparently they suggested

13  a onetime payment if I reduced this further to barely under two

14  percent of the claim amount.  And should it be considered, the

15  request that I'm making for settlement amount, it would be on

16  the distribution and that there has been no distribution on

17  this case whatsoever.  And I was concerned and I had a question

18  to Court (sic) whether there has been distribution in these

19  cases.

20           THE COURT:  Well, I can tell you this:  there has not

21  been a distribution to the borrower claimants --

22           MR. PICHARDO:  Okay.

23           THE COURT:  -- and that's because the -- there's a

24  fixed amount available for all borrower claimants with allowed

25  claims, and there are still -- while the number of unresolved

RESIDENTIAL CAPITAL, LLC, et al.                                    8

1   claims is substantially decreased, they're still not all

2   resolved.  So there has not been a distribution yet.  I can't

3   tell you when a distribution would be made.

4           I guess my observation would be the following:  I do

5   want to enter a scheduling order and move this matter along to

6   trial, if that's what is going to be required.  It's

7   important --

8           MR. PICHARDO:  Right.

9           THE COURT:  -- not only for you but it's important for

10  all other borrower claimants as well --

11          MR. PICHARDO:  Right.

12          THE COURT:  -- that the amount of allowed claims be

13  fixed, preferably by settlement but, if not by settlement, then

14  by trial.

15          MR. PICHARDO:  Right.

16          THE COURT:  And because I have to be the trier of fact

17  if the matter goes to trial, I don't get involved in settlement

18  discussions between the trust and borrowers --

19          MR. PICHARDO:  I understand.

20          THE COURT:  -- okay, because if I -- I just can't do

21  that, because --

22          MR. PICHARDO:  Right.

23          THE COURT:  -- if it goes to trial, I've got to

24  decide -- I've got to decide, based on the facts and the law,

25  who prevails and, if you prevail, how much.

RESIDENTIAL CAPITAL, LLC, et al.                                9

1          MR. PICHARDO:  Right.

2          THE COURT:  So let me ask you -- Ms. Richards has

3    proposed sixty days for fact discovery.  Based on my prior

4    decision, it seems to me that the factual issues between you

5    and the trust are fairly narrow in that sixty days is

6    sufficient time to do that.  If you're going to put in medical

7    testimony, that would be expert testimony.  The forty-five days

8    is the period of time that I usually permit, in all cases, for

9    expert discovery and then thirty days thereafter for a joint

10   pretrial-conference order.

11         Whenever I have a trial, Mr. Pichardo --

12         MR. PICHARDO:  Um-hum.

13         THE COURT:  -- I require the parties, whether it's

14   pro se or with a lawyer, to prepare a joint pretrial-conference

15   order.  Ms. Richards can send you -- I have a form that I use

16   for those; it appears --

17         MR. PICHARDO:  Okay.

18         THE COURT:  -- on the Court's Web site, under my

19   chambers' rules, but I'll ask Ms. Richards to arrange to get

20   you a copy.  I don't know whether they have your e-mail

21   address.  They do.

22         MR. PICHARDO:  Yes, they do.

23         THE COURT:  She's shaking (sic) yes.

24         She can e-mail you a copy so you'll understand what

25   has to go into a pretrial-conference order.

1      MR. PICHARDO:  Okay.

2      THE COURT:  May I ask, do you have a problem with the

3  sixty days for fact discovery, forty-five days for expert

4  discovery, and thirty --

5      MR. PICHARDO:  No, I don't, Your --

6      THE COURT:  Okay.

7      MR. PICHARDO:  -- Your Honor.

8      THE COURT:  So I'll enter that order.  Let me look at

9  my calendar and try and see what trial dates are available, and

10  I will at least tentatively schedule that as well.

11     (Pause)

12     THE COURT:  Just bear with me a minute; I have to look

13  at two different calendars.

14     (Pause)

15     THE COURT:  Ms. Richards, based on what you know about

16  this claim at this point, do you have an estimate of how long

17  you think it will take, the trial?

18     MS. RICHARDS:  Think it will depend a little bit on

19  how the evidence comes in.

20     THE COURT:  I'm sure, but --

21     MS. RICHARDS:  I'm hopeful two days should be plenty

22  of time.

23     THE COURT:  Okay.  I'm going to tentatively set the

24  trial for March 10 and 11, 2016.

25     Mr. Pichardo, that's a Thursday and a Friday.

1              MR. PICHARDO:  Okay.

2              THE COURT:  And, Mr. Pichardo, remind me where you

3    live.

4              MR. PICHARDO:  In California.

5              THE COURT:  Yeah.  So I want to be clear that for

6    trial I try -- whenever we have these hearings like this, I try

7    to do by telephone so that -- either for lawyers or for parties

8    who are outside the New York Metropolitan area, that they can

9    participate by phone.  But for trials, you actually -- you have

10   to be here.

11             MR. PICHARDO:  Okay.

12             THE COURT:  We can't do trials by telephone.

13             MR. PICHARDO:  I understand.  I will be present, or my

14   counsel --

15             THE COURT:  Okay.

16             MR. PICHARDO:  -- or representative.  I will advise

17   when this happens.

18             THE COURT:  So, Ms. Richards, prepare a proposed --

19   prepare a case-management and scheduling order in the usual

20   form, make sure Mr. Pichardo gets a copy of it with the dates

21   that you've given.  Put the actual date, as opposed to the

22   sixty days, forty-five days, et cetera.  It'll get entered

23   today if I receive it today.

24             MS. RICHARDS:  Great.  We will do that, Your Honor.

25             THE COURT:  And put those trial dates of March 10 and

 1    11, 2016.

 2              And look, Mr. Pichardo, I hope you're able to get this

 3    resolved by settlement.

 4              MR. PICHARDO:  I am trying my best, Your Honor.

 5              THE COURT:  Okay.

 6              MR. PICHARDO:  I have come to very reasonable and

 7    to -- very close to what they've --

 8              THE COURT:  Okay.

 9              MR. PICHARDO:  -- suggested, but I was awaiting a

10    response because they wanted to get a response from their

11    client.

12              THE COURT:  That's fine.

13              MR. PICHARDO:  I did not get it.

14              THE COURT:  That's fine.

15              MR. PICHARDO:  So I needed to get a response.

16              THE COURT:  Okay.  You'll talk with him further and

17    hopefully you'll get it resolved; if not, we'll go forward and

18    have a trial.  Be mindful --

19              MR. PICHARDO:  Right.

20              THE COURT:  Be mindful of the discovery period if

21    you're going to try and take any discovery, okay?

22              MR. PICHARDO:  Sure.

23              THE COURT:  Okay, thanks very much, Mr. Pichardo.

24              MR. PICHARDO:  I appreciate it.  Thank you.

25              THE COURT:  Okay.  You're excused.  You can remain on

RESIDENTIAL CAPITAL, LLC, et al.                    13

1    the phone if you wish, but you can also disconnect if you wish.

2              MR. PICHARDO:  Okay.  Thank you.

3              THE COURT:  Okay.

4              MR. PICHARDO:  Take care, now --

5              THE COURT:  Thanks very much.

6              MR. PICHARDO:  -- to everyone.

7              THE COURT:  Thanks, Ms. Richards.

8              MS. RICHARDS:  Thank you, Your Honor.  That brings us

9    to the next item on the agenda, which is item 5 found on page

10   10, and that is a case-management conference on the Borrower

11   Claims Trust's objection to two proofs of claim filed by

12   Richard Rode.  I understand Mr. Rode is also on the phone

13   today.

14             THE COURT:  Mr. Rode, are you on the phone?

15             MR. RODE:  Yes, Your Honor, I am.

16             THE COURT:  Good morning.  Good morning.

17             MR. RODE:  Good morning.

18             THE COURT:  All right, Ms. Richards, go ahead.

19             MS. RICHARDS:  Sure.  Your Honor will recall that on

20   May 14th, 2015 you held a hearing on the trust's objection to

21   Mr. Rode's proofs of claim.  Following that hearing, I directed

22   the parties to meet and confer regarding potential settlement.

23   We did so at length, but ultimately those discussions were

24   unproductive.  And on July 13th the Borrower Trust filed a

25   letter requesting that you go ahead and enter judgment.  You

1    entered a memorandum opinion and order on September 2nd, which

2    directed us to schedule today's case-management conference.

3                THE COURT:  All right.  Let me just --

4                MS. RICHARDS:  I would also note, Your Honor, that

5    yesterday Mr. Rode filed some -- he'll have the opportunity to

6    tell you, but he filed on the docket a notice of attention

7    (sic) -- intention to appear telephonically today, and his

8    intention to retain counsel.

9                THE COURT:  Okay.  Go ahead, Mr. Rode; let me hear

10   from you at this point.

11               MR. RODE:  Yes.  I -- we have been in negotiations but

12   it really has not been very productive at all.  I did receive a

13   notice from Ms. Richards on the 13th with an offer, and -- I'm

14   sorry, it may have been a couple days before that.  But I still

15   would like to pursue a settlement in this case, as you had

16   recommended, but at this point I felt like we weren't even

17   close and that, if I needed to, I needed to retain an attorney

18   to at least do the negotiating for me.

19               THE COURT:  And have you retained an attorney at this

20   point?

21               MR. RODE:  Yes, I have.

22               THE COURT:  Okay.  Has he or she made an appearance in

23   the case at this point?

24               MR. RODE:  No, I -- that's one of the reasons that I

25   wanted to appear today was to recommend that I be able to at

1    least put this off until maybe the next amicus hearing in

2    November, in order to, number one, be able to settle this

3    beforehand or, number two, be able to update and have my lawyer

4    present whatever filing she needs to file with the New York

5    court.

6              THE COURT:  Ms. Richards, remind me what the issues

7    that remain open -- because I sustained in part and overruled

8    in part the trustee's objection.

9              MS. RICHARDS:  You did, Your Honor.  The objection was

10   sustained in all respects except with respect to Mr. Rode's

11   claim for breach of contract.

12             THE COURT:  What I'm going to do, I will put this off

13   to the next -- do we have a date in November?  I don't know

14   what --

15             MS. RICHARDS:  November 18th is the next --

16             MR. RODE:  I believe it's the 18th.

17             THE COURT:  Okay.  So let's put it off.  We'll

18   continue this matter until the 18th.

19             But, Mr. Rode, you need to have your counsel get in

20   touch with Ms. Richards.  I certainly encourage you to continue

21   to try and pursue settlement but, if that's unsuccessful, we

22   got to go ahead and schedule -- come up with a -- you ought

23   to -- your counsel needs to confirm with Ms. Richards about a

24   scheduling order, so --

25             MR. RODE:  Yes, Your Honor.

1      THE COURT:  -- with any dates that need to be included

2   in it.  If your counsel speaks with Ms. Richards, I'm sure she

3   can let him know my usual form scheduling order, which does

4   appear on the court Web site in any event.  And we'll try and

5   come up with a schedule so we can get this resolved; I'm sure

6   you want to do that, and then the trust needs to do that as

7   well.

8      MR. RODE:  Absolutely.  And yes, I will make sure that

9   he contacts her within the next two days.

10      THE COURT:  Thank you very much.

11      That satisfactory, Ms. Richards?

12      MS. RICHARDS:  It is.  Thank you, Your Honor.

13      THE COURT:  Okay.

14      Thanks, Mr. Rode.  You can remain on, or you're

15   excused if you wish.

16      MR. RODE:  Thank you, Your Honor.  Bye.

17      MR. NEWTON:  Good morning, Your Honor.  James Newton

18   of Morrison & Foerster, on behalf of the ResCap Borrower Claims

19   Trust.

20      THE COURT:  Good morning, Mr. Newton.

21      MR. NEWTON:  Good morning.  The next item on the

22   agenda is a status conference relating to the Borrower Trust's

23   objection to proof of claim number 725, filed by William

24   Futrell.  I believe Mr. Futrell's counsel, Mr. Margolis, is on

25   the phone.

RESIDENTIAL CAPITAL, LLC, et al.                    17

1           THE COURT:  Mr. Margolis --

2           MR. MARGOLIS:  Yes.

3           THE COURT:  -- are you on the phone?

4           MR. MARGOLIS:  Yes.

5           THE COURT:  Thank --

6           MR. MARGOLIS:  Yes.  Thank you.

7           THE COURT:  Okay.  Thank you very much.

8           Go ahead, Mr. Newton.

9           MR. NEWTON:  Your Honor, you issued a memorandum

10   opinion and order in connection with the Borrower Trust's

11   objection to Mr. Futrell's claim, on July 14, 2015; that's

12   docket number 8887.  The memorandum opinion and order sustained

13   the Borrower Trust's objection as to all claims asserted in

14   Mr. Futrell's proof of claim.  Aside from RESPA-qualified

15   written-request claims relating to five purported qualified

16   written requests --

17           THE COURT:  Yes, October 30th, 2009, October 31st,

18   2009, November 13th, 2009, December 2009, October 23rd, 2011.

19           MR. NEWTON:  Correct.  And we were here last for a

20   status conference on August 20th, and thereafter Your Honor

21   entered a case-management scheduling order on September 9,

22   2015; it's docket number 9124.  Consistent with that case-

23   management order, we've spoken with Mr. Margolis, and the

24   parties have agreed that no expert testimony will be required

25   in connection with this matter.

1          THE COURT:  Okay.

2          MR. NEWTON:  And the parties have also served and

3    responded to discovery during the fact-discovery period, which

4    was set to expire on October 12th, 2015.

5          Your Honor, with respect to the Borrower Trust

6    discovery requests, we served document requests,

7    interrogatories, and requests for admissions on Mr. Futrell's

8    counsel on September 10, 2015, and received responses to our

9    discovery requests.  Mr. Margolis also filed a motion seeking

10   to limit the scope of the Borrower Trust's discovery requests.

11   We spoke with Mr. Margolis last week and understand that he

12   does not intend to pursue that motion at this time.  We'd asked

13   him to withdraw the motion, given the close of discovery and

14   his intention not to pursue the motion, but I believe it is

15   still pending on the docket.

16         THE COURT:  Okay, Mr. Margolis, you want to address

17   that?

18         MR. MARGOLIS:  At this point I concur with what

19   counsel are saying and I guess I would make the oral motion

20   that it be withdrawn.

21         THE COURT:  Okay, it's withdrawn.  Thank you very

22   much, Mr. Margolis.

23         MR. NEWTON:  Your Honor, we also received documents

24   responsive to some, but not all, of our document requests.

25   Mr. Margolis has informed me that he's still attempting to

RESIDENTIAL CAPITAL, LLC, et al.                    19

1   locate responsive documents, despite the close of fact

2   discovery earlier this week.

3          THE COURT:  You know, sometimes there's always a few

4   straggling documents that sometimes -- as long as a good-faith

5   effort is made to get them and it doesn't happen on the eve of

6   any trial, I'll leave it to you to work it out.

7          MR. NEWTON:  Right.  Your Honor, Mr. Futrell also

8   served a request for admissions on the Borrower Trust, dated

9   September 22nd; we served responses to those earlier this week,

10  as well, ahead of the close of fact discovery.

11          Your Honor, we will continue to work out the

12  discovery -- the document issues with Mr. Margolis, but we do

13  remain a little concerned given the impending deadline to

14  submit a pretrial order in this matter, which is currently

15  scheduled for November 12th.  While Your Honor's form of

16  pretrial order limits the use of exhibits that aren't disclosed

17  in that order, we want to make sure that we have the documents,

18  with ample time --

19          THE COURT:  Yes.

20          MR. NEWTON:  -- in order to work with Mr. Margolis.

21          THE COURT:  Well, what's the category -- what

22  documents are you still waiting for?

23          MR. NEWTON:  So there are some causation issues and

24  various categories of alleged damages that are going to be the

25  focal point of any evidentiary hearing.  With respect to the

RESIDENTIAL CAPITAL, LLC, et al.                    20

1   causation issues, we received very few documents related to

2   those issues.  And with respect to the categories of alleged

3   damages, there are certain categories where we received no

4   documents relating to --

5          THE COURT:  Well, sometimes there are no documents,

6   but there isn't always a document for everything, Mr. Newton.

7          MR. NEWTON:  Understood.  And if that's the case, then

8   that's fine.

9          THE COURT:  I think what --

10          Mr. Margolis, the one thing I can absolutely assure

11  you of, you won't get to use any document that you haven't

12  produced.  And you need to make a very diligent effort to

13  assemble whatever documents exist.  But you simply are not

14  going to get to use a document that you haven't produced in

15  response to a proper request.

16          MR. MARGOLIS:  I understand that, Judge, and at this

17  point what I can represent to the Court is that a request was

18  made to the holder of the documents and they haven't indicated

19  there are documents at this time.  So -- but I've asked.

20          THE COURT:  Okay.  So, please be diligent in trying to

21  get it and --

22          MR. MARGOLIS:  Yes.

23          THE COURT:  My goal is that both sides in a trial have

24  a fair opportunity to present their claims and defenses, nobody

25  holds back anything in discovery, and the pretrial order really

1  needs to be thoroughly completed, list all exhibits for each

2  side, define what the issues are that are going to be tried,

3  et cetera, because it's the most efficient way for me to go

4  ahead and conduct a trial.

5          Mr. Newton, push ahead.  I mean, you ought to be able

6  to prepare a draft of a pretrial order even if there are a

7  couple of issues that sort of are hanging, until you get

8  confirmation whether there are or are not documents.

9          MR. NEWTON:  We agree, Your Honor, and we will --

10         THE COURT:  How long a trial do you anticipate?

11         MR. NEWTON:  I haven't spoken with Mr. Margolis about

12  that.  We were conferring a few minutes earlier.  I expect

13  probably a day.

14         THE COURT:  Mr. Margolis, do you agree with that?

15         MR. MARGOLIS:  I would agree.

16         THE COURT:  Okay.  Where are you located,

17  Mr. Margolis?

18         MR. MARGOLIS:  In Indiana.

19         THE COURT:  Okay.  Let me see if I can come up with a

20  tentative trial date.  The bankruptcy courts, along with the

21  district courts, had the vanishing trial, but I suddenly find

22  myself with quite a full trial schedule.  But for a one-day

23  trial, I want to see whether -- see what we can come up with.

24      (Pause)

25         THE COURT:  Tuesday, January 26, 2016.  I scheduled it

1  for a Tuesday, Mr. Margolis, so -- I mean, I'm available on the

2  25th, on a Monday, but I assume you -- so you don't have to

3  travel on the weekend.

4          MR. MARGOLIS:  Okay.

5          THE COURT:  Would you be available on January 26;

6  Tuesday the 26th?

7          MR. MARGOLIS:  If I have to be, yes.

8          THE COURT:  Okay.  Well, that's the trial date.  My

9  courtroom deputy will schedule it.  You ought to continue to

10 try and see whether you can reach a settlement with the trust;

11 obviously if you do, either you or Mr. Newton or both will

12 inform the Court.  My trial dates are getting scarce at this

13 point and I'm trying to fill as much as possible, as soon as

14 possible.

15         So that'll be the trial date.  I'm not going to enter

16 a separate order now.  Include that in the joint pretrial

17 conference order.  We will put on the Court's calendar that as

18 the trial date, okay?

19         MR. NEWTON:  Okay.  We will do that.

20         THE COURT:  And --

21         MR. MARGOLIS:  Yes.  Thank you.

22         THE COURT:  Mr. Margolis -- I'm sure Mr. Newton can

23 explain this if he hasn't -- typically what I try to have done

24 is that the direct testimony of any witness within the control

25 of either side be presented by written declaration, with the

1   declarant in court and available for cross-examination.  The

2   exception's, if one side or the other insists that the other

3   side's witness give live testimony, I'll consider it.  That

4   usually only happens in denial of discharge, adversary

5   proceedings, quite frankly, where credibility is sort of the

6   central issue.

7          I find, one, it speeds the trial.  It also, frankly,

8   helps counsel, because they know exactly what they're going to

9   cross-examine in court, because they know what the testimony

10  is; they don't have to wait to hear it.

11         So you should talk with Mr. Newton about that.  And if

12  you both agree on that, agree on the date on which the direct

13  testimony, declarations'll be exchanged between the parties in

14  advance of trial and with the Court.  Where there's direct

15  testimony in declaration form, I have always read it before the

16  trial begins.  So you would offer the testimony of your witness

17  at trial, for whom I have the declaration, and then the witness

18  would take the witness stand for cross-examination.  So that's

19  generally how I try to conduct trials.  It provides better

20  certainty to each side, what's the testimony going to be, how

21  do I deal with -- then of course you can have a redirect; I

22  don't preclude that.  But you know exactly what you're going to

23  cross-examine.

24         So, talk with Mr. Newton about that.  It helps --

25  particularly with a one-day trial, it helps speed the trial

1   along.  And I will -- if the parties want, I will hear short

2   opening statements and then closing argument.  And I do -- I'm

3   sure Mr. Newton can tell you, I do want pretrial memoranda of

4   law that set out the likely testimony and the elements of the

5   claims and defenses.  Okay?

6               MR. MARGOLIS:  Yes.

7               THE COURT:  Thanks very much, Mr. Margolis.

8               Anything else on this one, Mr. Newton?

9               MR. NEWTON:  No, Your Honor.

10              THE COURT:  Mr. Margolis, anything you want to add?

11              MR. MARGOLIS:  Nothing else.

12              THE COURT:  Okay.  All right, you're excused or you

13  can stay on; it's up to you.

14              MR. NEWTON:  Cede the podium to Mr. --

15              MR. MARGOLIS:  Thank you, Judge.

16              THE COURT:  Okay.  Thanks very much.

17              MR. WISHNEW:  Good morning, Your Honor.

18              THE COURT:  Good morning.

19              MR. WISHNEW:  Jordan Wishnew, Morrison & Foerster, for

20  the ResCap Borrower Claims Trust.

21              Next on today's agenda is item 7 on page 11, the

22  status conference concerning the ResCap Borrower Claims Trust's

23  sixty-ninth omnibus objection as it relates to four claims

24  filed by Ms. Tia Smith, claim numbers 3889, 4129, 4134 and

25  4139.  I believe Ms. Smith is on the phone.

1          THE COURT:  Ms. Smith, are you on the phone?

2          MS. SMITH:  Yes, Your Honor, I am.  Good morning.

3          THE COURT:  Good morning, Ms. Smith.

4          Go ahead, Mr. Wishnew.

5          MR. WISHNEW:  Thank you, Your Honor.  Your Honor,

6   originally the Court entered a memorandum opinion and order

7   sustaining in part and overruling in part the Borrower Claims

8   Trust's objection, on October 1st, 2014.  That objection and

9   the Court's memorandum opinion sustained substantially all of

10  the trust's objections, with the exception of the cause of

11  action related to California's Unfair Competition Law.

12          THE COURT:  Right.  The allegation was that Ms. Smith

13  was told by a Homecomings employee to skip payments.

14          MR. WISHNEW:  Exactly, Your Honor.

15          THE COURT:  Right.

16          MR. WISHNEW:  Ms. Smith sought reconsideration of the

17  Court's opinion.  The Court entered its order denying the

18  motion for reconsideration, on November 24th, 2014.  Ms. Smith

19  then appealed the matter to the Southern District of New York.

20          THE COURT:  And Judge Sullivan dismissed the appeal --

21          MR. WISHNEW:  As --

22          THE COURT:  -- because it was an interlocutory order.

23          MR. WISHNEW:  Exactly, Your Honor.

24          THE COURT:  Right.

25          MR. WISHNEW:  So to try and move this matter forward

1    as it relates to the UCL claim, we ask that it be put back on

2    today's agenda, to allow the parties to address the matter and

3    try and work out the most expeditious way for bringing this to

4    a conclusion.

5              THE COURT:  Right.  Is there any discovery that the

6    trust wishes to take?

7              MR. WISHNEW:  Yes, Your Honor.  We would like to take

8    evidence -- or take discovery of Ms. Smith as to the proof she

9    has to substantiate her allegations that there was a

10   representation made by the Homecomings employee back in 2007.

11             THE COURT:  How much time do you believe you need for

12   discovery?

13             MR. WISHNEW:  I would say no more than sixty days,

14   Your Honor.

15             THE COURT:  All right.

16             Ms. Smith, what discovery do you wish to take?

17             MS. SMITH:  I'm not quite certain, Your Honor.  I

18   haven't had an opportunity to research exactly what I'm going

19   to need.  I am in pro per and I'm actually dealing with three

20   other actions related to this matter, so I'm kind of

21   overwhelmed right now.  But I just got notice from the

22   attorney, I guess on Friday, that this hearing was taking

23   place, so I haven't really had a chance to gather all the --

24   everything, what I need.

25             THE COURT:  Okay.  So the issue, as I understand --

1   the factual issue, as I understand it, and this was covered at

2   page 27 of the opinion, that "[i]n November 2007, a Homecomings

3   employee allegedly instructed Smith to skip making mortgage

4   payments in order to qualify for a loan modification.  This

5   practice, if true, would likely deceive consumers because it

6   would lead them to believe that a necessary condition for

7   obtaining a loan modification is to default on their mortgages.

8   The Trust maintains that Smith never received this advice from

9   a Homecomings employee.  Indeed, the Trust submitted its

10  servicing notes to support its assertion that there is no

11  evidence that a call between Smith and Homecomings took place

12  in November 2007.  The Court concludes there are disputed

13  issues of fact whether Smith was instructed that she has to

14  default on her loan to qualify for a loan modification.  That

15  cannot be resolved without an evidentiary hearing."

16          So that's the issue as to which -- it's a fairly

17  narrow issue of fact --

18          MR. WISHNEW:  Correct, Your Honor.

19          THE COURT:  -- as to which the Court concluded that I

20  need an evidentiary hearing, Ms. Smith.

21          So, Mr. Wishnew, you've served discovery, is that what

22  you're telling me?

23          MR. WISHNEW:  We did not yet serve discovery, Your

24  Honor.

25          THE COURT:  When are you going to serve your

1   discovery?

2         MR. WISHNEW:  We can probably serve it within a week.

3         THE COURT:  Okay.  All right, Mr. Wishnew, prepare a

4   scheduling order setting sixty days for fact discovery.  This

5   doesn't strike me as the kind of case where an expert is going

6   to be needed.

7         MR. WISHNEW:  No, Your Honor.

8         THE COURT:  Okay.  Provide sixty days for fact

9   discovery, thirty days for preparation of a joint pretrial-

10   conference order.  And this also strikes me as a one-day trial;

11   it's a fairly narrow factual issue.

12         MR. WISHNEW:  I agree, Your Honor.

13         THE COURT:  I think that, assuming that the

14   Homecomings employee made the representations that Ms. Smith

15   said, there'll also be the issue of damages that'll have to be

16   addressed.

17         MR. WISHNEW:  Correct, Your Honor.

18         THE COURT:  And I want to be sure that --

19         Ms. Smith, I assume that the trust is going to want to

20   get some discovery from you regarding the damages that you

21   believe you've suffered as a result.  What I will do is I'm

22   going to hold off in scheduling a trial date at this point but,

23   Ms. Smith, I try as best as I can to schedule trials quite

24   promptly.  So with sixty days for fact discovery --

25         Make sure the dates fall on a weekday, because I think

1    sixty days falls on a weekend.

2            MR. WISHNEW:  Okay.

3            THE COURT:  The pretrial order is going to be due

4    roughly around January 13th.  You'll figure out the dates and

5    talk to Ms. Smith about it so she clearly understands what the

6    dates are.

7            MR. WISHNEW:  Yep.

8            THE COURT:  I would expect, Ms. Smith, that --

9    Ms. Smith, you live in California?

10           MS. SMITH:  I do, Your Honor.

11           THE COURT:  Okay.  Well, I'm going to tentatively

12    schedule a trial for Tuesday, February 9th, 2016.

13           MR. WISHNEW:  Okay.

14           THE COURT:  It'll give you time to plan, Ms. Smith.

15    And you may have heard me tell the lawyer in the last case that

16    you have to be here for trial; you can't do it by telephone.

17    So I've scheduled it on a Tuesday to allow you to travel on

18    Monday if that's what you choose to do, rather than over the

19    weekend.

20           MS. SMITH:  That's a point.

21           THE COURT:  But you'll talk to Mr. Wishnew or one of

22    his colleagues.  And I encourage you to continue to try and

23    discuss settlement.  And frequently the best settlements are

24    one that neither side is entirely happy with.  I don't get

25    involved in settlement because, if it goes to trial, I have to

1    be the one to decide the facts and apply the law.  So I won't

2    get involved in the settlement discussions.  But I encourage

3    you to do that.

4            So, Mr. Wishnew, provide the Court with a scheduling

5    order that has sixty days for fact discovery, no period for

6    expert discovery, thirty days for preparing a joint pretrial-

7    conference order, and trial scheduled for Tuesday, February 9th

8    of 2016, beginning at 9 a.m.

9            MR. WISHNEW:  Will do, Your Honor.

10           THE COURT:  Okay.  Thank you very much, Ms. Smith.

11   You have any other questions or anything you want to raise?

12           MS. SMITH:  No, Your Honor.  Thank you.

13           THE COURT:  Thank you very much.  You're excused or

14   you can remain on; whichever you choose.

15           MS. SMITH:  Thank you.

16           THE COURT:  Okay.

17           MR. WISHNEW:  Thank you, Your Honor.  Next matter is

18   item 8 on page 13 of today's agenda, concerning the Borrower

19   Claims Trust's objection to that of -- to claim 3862 filed by

20   Rhonda Gosselin.  And the reason this conference was scheduled

21   for today --

22           THE COURT:  Is Ms. Gosselin on the phone?

23           Ms. Gosselin, are you on the phone?

24           Go ahead, Mr. Wishnew.

25           MR. WISHNEW:  Thank you, Your Honor.  This matter was

1   put on today's calendar because we were before Your Honor

2   previously and there was a scheduling order set for --

3                THE COURT:  Ms. Gosselin got notice of this hearing?

4                MR. WISHNEW:  Yes.

5                THE COURT:  Okay.

6                MR. WISHNEW:  But at the same time, we also received

7   notice, within the past week or so, that her attorney, Lehr

8   Heele (ph.) --

9                THE COURT:  Yes.

10               MR. WISHNEW:  -- has been placed on disability

11  inactive status in the Commonwealth of Massachusetts.  So,

12  right now we have a bit of a pickle in that Ms. Gosselin's

13  represented by counsel but counsel is now technically inactive

14  and cannot represent her in this matter; and that, I

15  understand, is effective as of September 9th, 2015.

16               So we had discovery out to Mr. Heele on Ms. Gosselin's

17  behalf; that discovery went -- we did not get any responses to

18  that discovery.  We're obviously eager to move forward but we

19  recognize that -- with Mr. Heele's disability, that we have to

20  kind of reengage Ms. Gosselin at this point and work through

21  it.

22               THE COURT:  Have you been able to speak with

23  Mr. Heele?

24               MR. WISHNEW:  Only by e-mail, Your Honor, and that's

25  been periodic at best.

1              THE COURT:  Obviously he's still representing

2    Ms. Gosselin, so you can't communicate with her directly

3    without his consent.

4              MR. WISHNEW:  Yeah, I'll note for the record, Your

5    Honor, that the notice we did receive from the Board of Bar

6    Overseers of the Supreme Court.  Supreme Judicial Court for the

7    Commonwealth of Massachusetts says that "[you] are hereby

8    advised I have been placed on disability inactive status in the

9    Commonwealth of Massachusetts and consequently am disqualified

10   from acting as an attorney after September 9, 2015, the

11   effective date of disability."

12             I also am being told in real time that he filed a

13   withdrawal today of his appearance.  So I think we could

14   probably reach out to Ms. Gosselin --

15             THE COURT:  If he's filed a --

16             MR. WISHNEW:  -- at this point.

17             THE COURT:  -- withdrawal of his appearance, you can,

18   in my view, talk directly with Ms. Gosselin.  Be sensitive to

19   the fact that she's had an attorney until now; and --

20             MR. WISHNEW:  Absolutely.

21             THE COURT:  -- I'm sure you will be; I don't have

22   any --

23             MR. WISHNEW:  Absolutely.

24             THE COURT:  -- question about that.

25             MR. WISHNEW:  Yeah.

1        THE COURT:  I think you need to reach out to her and

2    we need to find a way to move the matter forward, in fairness

3    to her.  It's not her doing that Mr. Heele is in inactive

4    status because of disability.

5        MR. WISHNEW:  Yep.

6        THE COURT:  So let's put this on the November --

7        MR. WISHNEW:  Okay.

8        THE COURT:  -- calendar.  Make sure that she's aware

9    that she needs to appear by telephone.

10       MR. WISHNEW:  Very good.

11       THE COURT:  And you ought to encourage her -- I don't

12   know, have there been settlement talks in this matter?

13       MR. WISHNEW:  We did not make affirmative offers;

14   rather, based upon the narrow scope of contested issues, we

15   invited Mr. Heele to provide us with a settlement offer, and

16   served discovery seeking damages that'll be proven.  Those

17   discovery -- I mean, have not been responded to and we've not

18   got an affirmative number at this point.  So we've made efforts

19   but we haven't gotten responses.

20       THE COURT:  Okay.  I guess what I would ask you to do

21   before we get to the November date, if you have an update on

22   the status --

23       MR. WISHNEW:  Sure.

24       THE COURT:  -- send the Court a status letter that

25   describes it without -- you don't have to go into too much

RESIDENTIAL CAPITAL, LLC, et al.                    34

1  detail, but I just want a sense of what's happening.

2            MR. WISHNEW:  Absolutely, Your Honor.

3            THE COURT:  Okay?

4            MR. WISHNEW:  Um-hum.

5            THE COURT:  Thanks very much.

6            MR. WISHNEW:  Very well.  Last matter on today's

7  calendar, Your Honor, is basically an overall status report

8  from the Borrower Claims Trust.

9            THE COURT:  Right.

10           MR. WISHNEW:  This is item 9 on page 14.  On October

11 9th our office docketed a status letter at docket number 9243.

12           THE COURT:  And I very much appreciated receiving it.

13           MR. WISHNEW:  You're very welcome, Your Honor.  I can

14 just give a very -- give a little bit more color --

15           THE COURT:  Yeah, please.

16           MR. WISHNEW:  -- beyond what's in the letter.  So as

17 Your Honor will see, we've made significant progress over the

18 past two years.  At this point in time there are approximately

19 232 remaining claims, roughly half of which are convenience-

20 class claims, which are in the face amount of less than 30,000

21 dollars.  As noted in footnote 1 to our letter, at this time

22 the Borrower Trust does not anticipate contesting these claims

23 but reserves the right to.

24           Of the 118 nonconvenience claims, the Borrower Trust

25 is pursuing multiple fronts to bring these claims to a rapid

1    conclusion.  Twenty-one of those claims are currently subject

2    to omnibus 89, which'll be heard on November 18th.  Twenty-five

3    of the 118 claims are the subject of previously filed

4    objections that are not entirely resolved, some of which my

5    colleagues and I have addressed this morning, others of which

6    are currently scheduled for discovery and trial dates.

7            Approximately forty claims are being actively pursued

8    by the Borrower Trust through a settlement-letter campaign.  Of

9    those forty, at least twenty percent have been resolved thus

10   far.  Ten claims are subject to additional objections that will

11   be filed in the next few weeks by the Borrower Claims Trust.

12   And as it relates to the remaining claims, those are continuing

13   to be evaluated.

14           The Borrower Trust remains cautiously optimistic that

15   it'll make a distribution to holders of allowed claims in the

16   first quarter of 2016; this will depend in large part on the

17   outstanding claims at that point in time and the feasibility of

18   reserving for claims, including those claims on appeal, of

19   which, as I note in the letter, at least twelve claimants have

20   sought appeals of the Court's order expunging their claims in

21   their entirety.

22           So, Your Honor, obviously we've made continued and

23   substantial progress.  We are very focused on moving forward

24   expeditiously, bringing this matter to a conclusion as quickly

25   as possible, and sending distributions out at the earliest

1  possible time.

2          At this point if Your Honor has any questions, I'm

3  happy to answer them.

4          THE COURT:  I've scheduled trials in a bunch of those;

5  I don't know the number -- I didn't go back to figure out the

6  number.  But that's sort of what's happening now.

7          MR. WISHNEW:  Yeah.

8          THE COURT:  And you'll excuse me for putting it this

9  way, but you sort of dealt with the low-hanging fruit early on

10 that got harder as we worked through them.

11         MR. WISHNEW:  That's a fair statement, Your Honor.

12 It's a fair statement.

13         THE COURT:  And, so, many of the contested claims have

14 required considerable amount of work, obviously by your office

15 but also by the Court, then, to resolve them.  I actually had

16 reason to look recently and see that in those matters where I'd

17 written opinions, I've had to decide the law of twenty-six

18 states.

19         MR. WISHNEW:  I can only say, Your Honor, the efforts

20 of your chambers and your clerks over the past two years has

21 been extraordinary, and we are much appreciative for the

22 dedication --

23         THE COURT:  I'm not looking for --

24         MR. WISHNEW:  No, I know you're not, Your --

25         THE COURT:  Thanks, but it's been -- actually, I knew

1    there was a lot of state law that we had looked at but, when I

2    saw it was twenty-six -- and of course, states like California

3    and Florida had multiple claims in each of those states.   In

4    any event, it's been a lot.   I don't know whether -- hopefully

5    there won't be any more different states that I have to deal

6    with.   Maybe there will be.   But we'll move forward.

7            I guess -- I think I'd observed at the prior hearing,

8    when I asked for the status report, that obviously -- once

9    previously I denied the trust's motion to establish a claim

10   reserve, and it was because there were so many unresolved

11   claims at that point.   And you sort of -- I'm saying "you", but

12   your --

13           MR. WISHNEW:  Yes.   Understand.

14           THE COURT:  -- your office sort of pointed to how many

15   successful claim objections you'd had, but that's kind of

16   the -- that was kind of the low-hanging fruit; those were easy

17   to get rid of.

18           But I'm not averse at some point to hearing another

19   claims-reserve motion, provided that it makes a reasonable

20   effort to set the figure of the reserves.

21           MR. WISHNEW:  Understood, Your Honor.

22           THE COURT:  I'm not suggesting you ought to do that

23   motion in the next month or so, but you can -- look, I'm sure

24   your goal -- my goal is I would like the borrowers to

25   receive -- with allowed claims, to receive distributions --

RESIDENTIAL CAPITAL, LLC, et al.                    38

1           MR. WISHNEW:  Absolutely.

2           THE COURT:  -- sooner rather than later, but it's

3   just -- it's not your fault that they've gotten complicated.

4           MR. WISHNEW:  I mean -- yeah.  Exactly.  I mean, where

5   we started out with 3,000 claims, we're down to at this point

6   the nonconvenience claims of 118.  So it's the last three to

7   four percent of the borrower claims that are honestly the most

8   challenging; and of those, we're still trying to only bring the

9   most contested and the ones where we're just too far apart with

10  the claimant; those are the ones that we will bring to Your

11  Honor.  If we think there's a chance at settlement, we're going

12  to pursue it.  But if we just think that the claimant is not

13  pursuing -- is not being reasonable in their position and we're

14  assessing the likelihood of their success at a much lesser

15  degree than what they're valuing the claim, we have no choice

16  but to bring it before Your Honor.

17          THE COURT:  You happen to know what the status of the

18  twelve appeals are?

19          MR. WISHNEW:  Most of them --

20          THE COURT:  I keep getting -- when an order gets

21  entered in the district court in --

22          MR. WISHNEW:  Yes.

23          THE COURT:  -- in one of my cases, I do receive an --

24          MR. WISHNEW:  Yes.

25          THE COURT:  -- ECF notice about it.  But I haven't

RESIDENTIAL CAPITAL, LLC, et al.                    39

1   kept close tabs on it.  So I don't know how many of them -- how

2   many of the appeals are fully briefed in the district court.

3           MR. WISHNEW:  Some of them are fully briefed and we're

4   awaiting either a decision from the court or a request for oral

5   argument.  I'd say four to five of them are recently filed and

6   so we're waiting for the appellant to put in their initial

7   brief.  So they're at different stages at this point in time.

8           THE COURT:  Okay.  All right, anything else for today?

9           MR. WISHNEW:  That's it, Your Honor.

10          THE COURT:  Thanks very much.

11          MR. WISHNEW:  Thanks so much for your time.

12          THE COURT:  Thank you, Ms. Richards.

13          Mr. Newton, thank you.

14          Thank you.

15      (Whereupon these proceedings were concluded at 10:56 AM)

16

17

18

19

20

21

22

23

24

25

1

2                                     C E R T I F I C A T I O N

3

4        I, David Rutt, certify that the foregoing transcript is a true

5        and accurate record of the proceedings.

6

7

8

9

10

11       _____

12       DAVID RUTT

13       AAERT Certified Electronic Transcriber CET**D 635

14

15       eScribers

16       700 West 192nd Street, Suite #607

17       New York, NY 10040

18

19       Date:  October 16, 2015

20

21

22

23

24

25