**Hearing Date: December 16, 2015 at 10:00 a.m. (Prevailing Eastern Time)**
**Response Deadline: November 16, 2015 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett

*Counsel for the ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ------------------------------------------- ) | |
| In re: ) | Case No. 12-12020 (MG) |
| ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, ) | Chapter 11 |
| ) | |
| Debtors. ) | Jointly Administered |
| ------------------------------------------------------- ) | |

**NOTICE OF RESCAP BORROWER CLAIMS TRUST'S**
**OBJECTION TO CLAIM NOS. 4757, 4758, 4762, AND 4764**
**FILED BY PATRICIA MCNERNEY AND SUSAN GRAY**

**PLEASE TAKE NOTICE** that the undersigned has filed the attached *ResCap*

*Borrower Claims Trust's Objection to Claim Nos. 4757, 4758, 4762 and 4764 Filed by*

*Patricia McNerney and Susan Gray* (the "**Objection**").

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Objection will take

place on **December 16, 2015 at 10:00 a.m. (Prevailing Eastern Time)** before the

Honorable Martin Glenn, at the United States Bankruptcy Court for the Southern District

of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New

York 10004-1408, Room 501 (the "**Bankruptcy Court**").

**PLEASE TAKE FURTHER NOTICE** that responses, if any, to the Objection must be made in writing, conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Notice, Case Management, and Administrative Procedures approved by the Bankruptcy Court [Docket No. 141], be filed electronically by registered users of the Bankruptcy Court's electronic case filing system, and be served, so as to be received no later than **November 16, 2015 at 4:00 p.m. (Prevailing Eastern Time)**, upon (a) the Chambers of the Honorable Martin Glenn, United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408; (b) counsel to the ResCap Borrower Claims Trust, Morrison & Foerster LLP, 250 West 55th Street, New York, NY 10019 (Attention: Norman S. Rosenbaum, Jordan A. Wishnew and Jessica J. Arett); (c) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014 (Attention: Linda A. Riffkin and Brian S. Masumoto); (d) The ResCap Liquidating Trust, Quest Turnaround Advisors, 800 Westchester Avenue, Suite S-520, Rye Brook, NY 10573 (Attention: Jeffrey Brodsky); (e) The ResCap Borrower Claims Trust, Polsinelli PC, 900 Third Avenue, 21st Floor, New York, NY 10022 (Attention:  Daniel J. Flanigan); and (f) Susan Marie Gray, 22255 Center Ridge Road, Suite 201, Rocky River, Ohio 44116.

**PLEASE TAKE FURTHER NOTICE** that if you do not timely file and serve a written response to the relief requested in the Objection, the Bankruptcy Court may deem any opposition waived, treat the Objection as conceded, and enter an order granting the relief requested in the Objection without further notice or hearing.

2

Dated:    October 23, 2015
          New York, New York

/s/ Norman S. Rosenbaum

Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the ResCap Borrower Claims Trust*

**Hearing Date: December 16, 2015 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: November 16, 2015 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER  LLP
250 W. 55th Street
New York, New York 10019
Telephone:     (212) 468-8000
Facsimile:     (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett

*Counsel for the ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------------------------- ) | | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| ------------------------------------------------------------------- ) | | |

**RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM NOS. 4757, 4758, 4762, AND 4764, FILED BY PATRICIA MCNERNEY AND SUSAN GRAY**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................... 2

JURISDICTION, VENUE, AND STATUTORY PREDICATE ................................. 3

BACKGROUND ...................................................................................... 3

RELIEF REQUESTED............................................................................... 5

OBJECTION............................................................................................ 5

    A.    Background Facts ......................................................................... 5

        1.    Loan Origination and Servicing.................................................. 5

        2.    Foreclosure Actions ................................................................. 9

            a.    First Foreclosure Action .............................................. 9

            b.    Second Foreclosure Action........................................... 11

        3.    Waste and Condemnation of the Property ................................. 12

    B.    Legal Argument ........................................................................ 13

        4.    OMC Was Not Homecomings Agent Under Ohio Law ........................ 13

        5.    McNerney's Breach of Fiduciary Duty Claims Fails as a Matter of
            Law ...................................................................................... 17

        6.    McNerney's Negligence Claims Fail as a Matter of Law....................... 18

        7.    McNerney's Fraud on the Court Claim Fails as a Matter of Law .......... 19

        8.    McNerney's Ohio Consumer Sales Practices Act Claim Fails as a
            Matter of Law ........................................................................ 21

        9.    McNerney's TILA Claim Fails as a Matter of Law................................ 23

        10.    McNerney's RESPA Claim Fails as a Matter of Law ............................ 27

        11.    McNerney's Ohio Mortgage Broker Act ("OMBA") Claim Fails as
            a Matter of Law...................................................................... 28

        12.    McNerney's Failure to Engage in Loss Mitigation Claim Fails as a
            Matter of Law ........................................................................ 28

        13.    McNerney's Fraud Claim Fails as a Matter of Law ................................ 29

        14.    McNerney's Civil Conspiracy Claim Fails as a Matter of Law............... 31

        15.    McNerney's Unconscionability Claim Fails as a Matter of Law ........... 33

        16.    McNerney's Breach of Privacy Claim Fails as a Matter of Law............. 35

        17.    Gray's Claim For Attorney's Fees Fails as a Matter of Law.................. 39

NOTICE................................................................................................. 40

CONCLUSION......................................................................................... 40

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*425 Beecher, L.L.C. v. Unizan Bank, N.A.,*
  927 N.E. 2d 46 (Ohio Ct. App. 2010) ....................................................................................19

*Anderson, Inc. v. Consolidated, Inc.,*
  185 F. Supp. 2d 833 (N.D. Ohio 2002), aff'd, 348 F.3d 496 (6th Cir. 2006) .........................30

*Anderson v. Barclay's Capital Real Estate, Inc.,*
  989 N.E.2d 997 (Ohio 2013) ...................................................................................................22

*Anderson v. Delta Funding Corp.,*
  316 F. Supp. 2d 554 (N.D. Ohio 2004) .............................................................................24, 25

*Anderson v. Smith,*
  964 N.E.2d 468 (Ohio Ct. App. 2011) ....................................................................................20

*Anthony v. Wonnell,*
  No. 91AP-995, 1992 WL 230583 (Ohio Ct. App. Apr. 7, 1992) ............................................38

*Boomshine v. Lifetime Capital, Inc.,*
  App. No. 22179, 2008 App. Ohio LEXIS 7 (Ohio Ct. App. Jan. 4, 2008) ........................31, 32

*Brainard v. American Skandia Life Assurance Corp.,*
  432 F.3d 655 (6th Cir. 2005) ............................................................................................14, 15

*Brown v. Liberty Clubs, Inc.,*
  543 N.E.2d 783 (Ohio 1989) ...................................................................................................21

*Burnett v. New York Central Railroad Co.,*
  380 U.S. 424 (1965) ...........................................................................................................26, 27

*Cheap Escape Co. v. Crystal Windows & Doors Corp.,*
  No. 93739, 2010 WL 4018693 (Ohio Ct. App. Oct. 14, 2010) ........................................33, 34

*Chevrolet v. Calhoun,*
  No. 03AP-816, 2004 WL 397140 (Ohio Ct. App. Mar. 4, 2004) ............................................14

*Collins v. National City Bank,*
  2003 Ohio App. LEXIS 6230 (Ohio Ct. App. Dec. 19, 2003) .................................................32

*Damon's Missouri, Inc., v. Davis,*
  590 N.E.3d 254 ........................................................................................................................16

DeBrosse v. Jamison,
No. 91-CA-26, 1992 WL 5851 (Ohio Ct. App. Jan. 14, 1992)................................................20

Delman v. City of Cleveland Heights,
534 N.E.2d 835 (Ohio 1989)................................................................................30

Deutsche Bank National Trust Co. v. Pevarski,
932 N.E.2d 887 (Ohio Ct. App. 2010)....................................................................34

Dice v. Akron, Canton & Youngstown Railroad Co.,
98 N.E.2d 301 (Ohio 1951)................................................................................31

Evans v. Chambers Funeral Homes,
No. 89900, 2008 WL 2766173 (Ohio Ct. App. July 17, 2008) ...............................................17

Feinberg v. Bank of New York (In re Feinberg),
442 B.R. 215 (Bankr. S.D.N.Y. 2010)......................................................................5

Ford v. New Century Mortgage Corp.,
797 F. Supp. 2d 862 (N.D. Ohio 2011).........................................................26, 30, 31

Forsyth v. Hall,
No. 16024, 1997 WL 165432 (Ohio Ct. App. Mar. 14, 1997) ...............................................20

Gibson v. City Yellow Cab Co.,
C.A. No. 20167, 2001 Ohio App. LEXIS 518 (Feb. 14, 2001) ...............................................32

Glazer v. Chase Home Financial, L.L.C.,
No. 99875 2013 WL 7869273 (Ohio Ct. App. Dec. 19, 2013).........................................21, 22

Gosden v. Louis,
687 N.E.2d 481 (Ohio Ct. App. 1996)....................................................................32

Hanlin v. Ohio Builders and Remodelers, Inc.,
212 F. Supp. 2d 752 (S.D. Ohio 2002) ..................................................................21

Harwood v. BPJ Investments Co.,
No. 91832, 2009 Ohio App. LEXIS 19191 (Ohio Ct. App. May 14, 2009)...........................32

Housh v. Perth,
133 N.E.2d 340 (Ohio 1956)................................................................................39

In re National Century Financial Enterprises, Inc.,
504 F. Supp. 2d 287 (S.D. Ohio 2007) ..................................................................32

Jackson v. Playboy Enterprises, Inc.,
574 F. Supp. 10 (S.D. Ohio 1983) ........................................................................38

iii

Keating v. America's Wholesale Lender,
    No. 11-CV-593, 2011 WL 2471732 (N.D. Ohio June 21, 2011) ...........................................28

Killilea v. Sears, Roebuck & Co.,
    499 N.E.2d 1291 (Ohio Ct. App. 1985)...................................................................................37

Large v. Conesco Financial Servicing Corp.,
    292 F.3d 49 (1st Cir. 2002)......................................................................................................24

Master Consolidated Corp. v. BancOhio National Bank,
    575 N.E.2d 817 (Ohio 1991).....................................................................................................14

McCauley v. PDS Dental Laboratory, Inc.,
    No. 90086, 2008 WL 2350892 (Ohio Ct. App. June 1, 2008).................................................32

McNeely v. Ross Correctional Institute,
    No. 06-AP-280, 2006 WL 2949014 (Oh. Ct. App. Oct. 17, 2006)....................................25, 26

Mills v. Best Western Springdale,
    No. 08AP-1022, 2009 WL 1710765 (Ohio Ct. App. June 18, 2009) .......................................18

Morrison v. Brookstone Mortgage Co.,
    415 F. Supp. 2d 801 (S.D. Ohio 2005) ...................................................................................27

Morrow v. Reminger & Reminger Co. LPA,
    915 N.E.2d 696 (Ohio Ct. App. 2009)....................................................................................20

Muze v. Mayfield,
    573 N.E.2d 1078 (Ohio 1991)..................................................................................................40

Needham v. Provident Bank,
    675 N.E.2d 514 (Ohio Ct. App. 1996) ..............................................................................17, 18

Nichols v. Schwendeman,
    No. 07AP-433, 2007 WL 4305718 (Ohio Ct. App. Dec. 11, 2007) ........................................29

Price v. EquiFirst Corp.,
    No. 08-CV-1860, 2009 WL 917950 (N.D. Ohio Apr. 1, 2009).........................................19, 27

Provident Bank v. Adriatic, Inc.,
    No. CA2005-12-108, 2005 WL 2840741 (Ohio Ct. App. Oct. 31, 2005) ...................18, 19, 31

Quintile v. Medina County,
    No. 1:07-cv-2413, 2008 WL 2484173 (N.D. Ohio June 17, 2008) .........................................37

Roe ex rel. Roe v. Heap,
    No. 03AP-586, 2004 WL 1109849 (Ohio Ct. App. May 11, 2004) ............................36, 38, 39

Schmidt v. State Aerial Farm Statistics, Inc.,
    403 N.E.2d 1026 (Oh. Ct. App. 1978) ..................................................................20

State ex rel. Franklin County v. Guilbert,
    83 N.E. 80 (Ohio 1907) ..............................................................................39, 40

Sustin v. Fee,
    431 N.E.2d 992 (Ohio 1982) ..............................................................................36

Sutliff v. County Savings and Loan Co.,
    533 F. Supp. 1307 (N.D. Ohio 1982) ..................................................................23

Textron Financial Corp.,
    684 N.E.2d 1261 (Ohio Ct. App. 1996) ..............................................................30

UBS Real Estate Securities, Inc., v. Teague,
    945 N.E.2d 573 (Ohio Ct. App. 2010) ................................................................28

Wells Fargo Bank, N.A. v. Favino,
    No. 1:10 CV 571, 2011 WL 1256771 (N.D. Ohio Mar. 31, 2011) ........................17

Wells Fargo Bank v. Jordan, N.A.,
    No. 91675, 2009 WL 625560 (Ohio Ct. App. Mar 12, 2009) ................................10

Wilborn v. Bank One Corp.,
    906 N.E.2d 396 (Ohio 2009) ..............................................................................39

Yoder v. Ingersoll-Rand Co.,
    172 F.3d 51 (6th Cir. 1998) ................................................................................38

York v. General Electric Co.,
    759 N.E. 2d 865 (Ohio Ct. App. 2001) ................................................................38

**STATUTES**

11 U.S.C. 502(b)(1) .......................................................................................3, 5

11 U.S.C. §502(a) .............................................................................................5

12 U.S.C. § 2603 ..............................................................................................27

12 U.S.C. § 2605(f) ..........................................................................................40

12 U.S.C. § 2607 ..............................................................................................27

12 U.S.C. § 2614 ..............................................................................................27

15 U.S.C. § 1635(a) ..........................................................................................24

v

15 U.S.C. § 1640(e) ..........................................................................................23, 40

28 U.S.C. § 157(b) .........................................................................................................3

28 U.S.C. § 1334 ............................................................................................................3

28 U.S.C. §§ 1408 and 1409 ........................................................................................3

O.R.C. § 1322.11 .........................................................................................................40

Ohio Rev. Code Ann. § 1322.01(G) ..........................................................................28

Ohio Rev. Code Ann. §§ 1345.02(a), 1345.03(A)....................................................21

Ohio Rev. Code Ann. § 1345.09(F)............................................................................40

Ohio Rev. Code Ann. § 1345.10(C) ...........................................................................22

Ohio Rev. Code Ann. § 1345.031...............................................................................22

## OTHER AUTHORITIES

12 C.F.R. § 226.15(a)(3)..............................................................................................24

Bankruptcy Rule 1015(b)...............................................................................................3

Bankruptcy Rule 3007 ...............................................................................................3, 5

Restatement (Second) of Torts § 652B (1977) ..........................................................38

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

    The ResCap Borrower Claims Trust (the "Borrower Trust") established pursuant

to the terms of the Chapter 11 plan (the "Plan") confirmed in the above captioned bankruptcy

cases (the "Chapter 11 Cases") [Docket No. 6065], successor in interest to the above captioned

debtors (collectively, the "Debtors") with regard to Borrower Claims (as defined below), hereby

submits this objection (the "Objection") seeking to disallow and expunge, without leave to

amend, (i) proofs of claim numbers 4762 and 4764 (the "McNerney Claims") filed by Patricia

McNerney ("McNerney") against Homecomings Financial, LLC ("Homecomings") and GMAC

Mortgage, LLC ("GMACM"), respectively, each for $600,000, and (ii) proofs of claim numbers

4757 and 4758 (the "Gray Claims" and with the McNerney Claims, the "Claims") filed by Susan

Marie Gray, Attorney at Law ("Gray" and with McNerney, the "Claimants") against

Homecomings and GMACM, respectively, each for $122,481.59, pursuant to section 502(b) of

title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007(a) of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), on the grounds that the Claims fail to

state a basis for liability against the Debtors.[1]  The Borrower Trust seeks entry of an order

substantially in the form annexed hereto as Exhibit 1 (the "Proposed Order") granting the

requested relief.  In support of the Objection, the Borrower Trust submits the declaration of Sara

Lathrop, Senior Claims Analyst for the ResCap Borrower Claims Trust (the "Lathrop

Declaration"), attached hereto as Exhibit 2, and the declaration of David A. Wallace, Co-Counsel

to the ResCap Liquidating Trust (the "Wallace Declaration"), attached hereto as Exhibit 3.

---

[1] The Borrower Trust reserves all of its rights to object on any other basis to the Claims not set forth in this
Objection, and the Trust reserves all of its rights to amend this Objection should any further bases come to light.

## PRELIMINARY STATEMENT

1.       The Borrower Trust examined the Claims and the statements and exhibits submitted in support thereof.  The asserted basis for the Claims is counterclaims filed against the Debtors in a foreclosure action that the Debtors initiated against McNerney but has since been dismissed, and a request for attorney's fees that are purportedly owed to Gray on account of defending the foreclosure action and prosecuting the counterclaims.  The Borrower Trust conducted an exhaustive examination of the Debtors' books and records to assess the allegations made in the Claims and determined that the Claimants' allegations of liability are without merit.

2.       The Claimants have failed to sufficiently allege how the Debtors' actions give rise to liability for the stated causes of action.  Specifically, the claims for negligence, fraud, breach of fiduciary duty, and violation of the Ohio Mortgage Broker Act ("OMBA") relate to actions of the Claimants' broker, a non-Debtor entity.  Moreover, the Claimants' claims for violation of the Truth in Lending Act ("TILA"), the Real Estate Settlement Procedures Act ("RESPA"), and the Ohio Consumer Sales Practices Act (the "CSPA") are barred by the relevant statutes of limitation.  The Claimants' "fraud on the court" claim fails because such an allegation cannot give rise to a civil action under Ohio law. Additionally, McNerney's unconscionability claim fails because she not demonstrated that the loan provided to her was both procedurally and substantively unconscionable, and her breach of privacy claim fails because McNerney's allegations neither demonstrate the disclosure of private information nor a wrongful intrusion on her seclusion.  Additionally, McNerney's civil conspiracy claim fails because she has not demonstrated that there was any agreement between McNerney's broker and the Debtors to commit any wrongful act.

2

Finally, because all of McNerney's causes of action fail, Gray's claims for attorney's fees based on said causes of action must also fail. Accordingly, for the reasons discussed herein and in the Lathrop and Wallace Declarations, the relief sought in the Objection should be granted with respect to the Claims.

## JURISDICTION, VENUE, AND STATUTORY PREDICATE

3.      This Court has jurisdiction over this Objection under 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

4.      The statutory predicates for the relief requested herein are section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007(a).

## BACKGROUND

5.      On May 14, 2012, each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code. These Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

6.      On May 16, 2012, the Court entered an order [Docket No. 96] appointing Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in these Chapter 11 Cases. Among other things, KCC is authorized to (a) receive, maintain, and record and otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain the official claims register for the Debtors (the "Claims Register").

7.      On November 14, 2012, the Claimants filed the claims. See Proofs of Claim, attached hereto as Exhibit 4.

3

8.      On March 21, 2013, this Court entered an order approving procedures for the filing of objections to proofs of claim filed in these Chapter 11 Cases [Docket No. 3294] (the "Procedures Order").  The Procedures Order includes specific protections for Borrowers[2] and sets forth a process for the Debtors to follow before objecting to certain categories of Borrower Claims (the "Borrower Claim Procedures").

9.      The Debtors sent Request Letters to certain Borrowers, including the Claimants, requesting additional documentation in support of their claims.  See Lathrop Declaration ¶ 4.  The Request Letters state that the claimant must respond within 30 days with an explanation that states the legal and factual reasons why the claimant believes he is owed money or is entitled to other relief from the Debtors, and the claimant must provide copies of any and all documentation that the claimant believes supports the basis for his claim.  The Request Letters further state that if the claimant does not provide the requested explanation and supporting documentation within 30 days, the Debtors may file a formal objection to the claimant's claim, seeking to have the claim disallowed and permanently expunged.  A Request Letter was sent to the Claimants and the Borrower Trust received responses on July 11 and July 13, 2013, which are attached to the Lathrop Declaration as Exhibit A.  See Lathrop Declaration ¶ 6.

10.      On December 11, 2013, the Court entered the Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors approving the terms of the Chapter 11 plan, as amended (the "Plan"), filed in these Chapter 11 Cases [Docket No. 6065]. On December 17,

---

[2] As used herein, the terms "Borrower" and "Borrower Claims" have the meanings ascribed to them in the Plan (defined below).

2013, the effective date of the Plan occurred (the "Effective Date"), and, among other

things, the Borrower Trust was established [Docket No. 6137].

## RELIEF REQUESTED

11.    The Borrower Trust files this Objection, pursuant to Bankruptcy Code

section 502(b) and Bankruptcy Rule 3007, and seeks entry of an order, substantially in the

form annexed hereto as Exhibit 1, disallowing and expunging the Claims with prejudice

from the Claims Register in their entirety.

## OBJECTION

12.    A filed proof of claim is "deemed allowed, unless a party in interest …

objects." 11 U.S.C. §502(a).  Section 502(b)(1) of the Bankruptcy Code provides, in

relevant part, that a claim may not be allowed to the extent that "such claim is

unenforceable against the debtor and property of the debtor, under any agreement or

applicable law…." 11 U.S.C. 502(b)(1).  Furthermore, the burden of persuasion once an

objection refutes an essential allegation of the claim is on the holder of a proof of claim to

establish a valid claim against a debtor by a preponderance of the evidence.  Feinberg v.

Bank of N.Y. (In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010).

### A.    Background Facts

#### 1.    Loan Origination and Servicing

13.    On December 27, 2002, McNerney obtained a loan from

Homecomings (the "Loan") in the amount of $108,000, evidenced by a note (the "Note")

and secured by a mortgage (the "Mortgage") on property located at 1241 Thoreau Road,

Lakewood, OH 44107 (the "Property"). Copies of the Note and the Mortgage are attached to

the Lathrop Declaration as Exhibit B and Exhibit C, respectively. The Mortgage named

Homecomings as the Lender and Mortgage Electronic Registration Systems, Inc. ("MERS")

as the mortgagee and nominee for Homecomings and Homecomings' successors and

assigns. See Mortgage. The Note and Mortgage were subsequently assigned and transferred

to GMACM on December 31, 2007. See Affidavit of Juan Aguirre, attached to the Lathrop

Declaration as Exhibit D, at ¶ 5. The Note and Mortgage were again assigned and

transferred from GMACM back to Homecomings on October 14, 2008, with a corrective

assignment filed on October 29, 2008 to amend the date of the notary's signature. See id, at

¶ 6.

       14.    Homecomings serviced the Loan from December 27, 2002 until

servicing was transferred to GMACM on January 1, 2003. See Servicing Transfer Letter,

attached to the Lathrop Declaration as Exhibit E. GMACM serviced the Loan until

servicing was transferred to Ocwen Loan Servicing on February 16, 2013. See Lathrop

Declaration ¶ 6.

       15.    The Loan refinanced a prior loan (the "Household Loan") that

McNerney and her then husband had with Household Realty Corporation. See Trial

Transcript, attached to the Wallace Declaration as Exhibit A, at 64. McNerney's monthly

principal and interest payment on the Household Loan was $985 and McNerney paid taxes

and insurance separately in the amount of $261.81, for a total monthly payment of

$1,245.81. See District Court Counterclaims, attached to the Wallace Declaration as Exhibit

I, at ¶ 66. The interest rate on the Household Loan was 13%. See id. McNerney and her

husband divorced, and McNerney was required to refinance the Household Loan as part of her obligations under the divorce decree. See Trial Transcript at 227-28.

16.     McNerney retained a local mortgage broker, Ohio Mortgage Company, Inc. d/b/a OMC Lending ("OMC") to work on her behalf to obtain the Loan. See Trial Transcript at 196-97. OMC assisted in the preparation of McNerney's loan application (the "Application") and submitted the Application to Homecomings. McNerney signed the Application under penalty of perjury on December 27, 2002, acknowledging that the information in the Application was true and correct. See Application, attached to the Lathrop Declaration as Exhibit F. OMC was not an agent of Homecomings. In fact the Broker Agreement between OMC and Homecomings provided that OMC was an independent contractor and was not the agent of Homecomings. See Broker Lender Agreement, attached to the Lathrop Declaration as Exhibit G. Prior to signing the loan documents, Homecomings and McNerney had no contact with each other, and McNerney was not aware that Homecomings had any involvement with the Loan prior to the closing. See Trial Transcript, at 203, 275.

17.     Homecomings received the Application from OMC and analyzed the information provided in the Application through an automated underwriting program. From this analysis, Homecomings determined that McNerney had a loan to income ratio of 34% and a debt to income ratio of 46%, both of which were within the approved ratios.[3] See Uniform Underwriting and Transmittal Summary, attached to the Lathrop Declaration as Exhibit H.

---

[3] McNerney alleges that the calculation of her income improperly included child support for all three of her children because two of her children were close to turning 19, the age when the divorce decree no longer required the payment of child support for those children. However, the application signed by McNerney includes this income. See Lathrop Declaration ¶ 8.

18.     At the time of the closing of the Loan, Homecomings provided McNerney, among other documents, with a Truth in Lending Statement (the "TIL Statement"), a Notice of the Right to Cancel (the "Notice of Right to Cancel"), a HUD-1 Settlement Statement (the "Settlement Statement"), a First Payment Notice (the "First Payment Notice") and a disclosure regarding private mortgage insurance (the "PMI Disclosure").[4] See TIL Disclosure, Notice of Right to Cancel, Settlement Statement, First Payment Notice, and PMI Disclosure, attached to the Lathrop Declaration as Exhibit I, Exhibit J, Exhibit K, Exhibit L, and Exhibit M, respectively.

19.     The Loan paid off the Household Loan in the amount of $98,349.94, as well as satisfying both past due taxes in the amount of $5,847.18 and credit card debt in the amount of $4,533.16. See Settlement Statement.    The principal and interest portion of the monthly payment under the Loan was $792.47. See First Payment Notice. The escrow portion of the monthly payment for real estate taxes was $230.81 and the escrow portion of the monthly payment for property insurance was $31. See id. The loan also required private mortgage insurance, to be paid through monthly payments of $178.20 until the Loan reached a loan to value ratio of 80%. See PMI Disclosure. Therefore, the total monthly payment under the Loan was $1,232.28. The interest rate on the loan was 8%. See Note.

20.     Thus, even with PMI insurance, which would eventually cease once the loan to value ratio fell below 80%, McNerney's monthly payment was less than her monthly payment with the Household loan, as was her interest rate. Furthermore, through the Loan McNerney paid off unpaid taxes and high interest credit card debt, thus reducing

---

[4] McNerney alleges that she was provided different versions of these disclosures during origination. It was common practice that multiple versions of these documents would be generated during the application process, as the terms of the loan were subject to change until they were fixed at origination. See Lathrop Declaration ¶ 10. The documents attached as Exhibits I – M are the final versions provided to McNerney.

the total amount she would have had to pay each month to satisfy all of her debt.  See Lathrop Declaration ¶ 11.

### 2.    Foreclosure Actions

#### a.    First Foreclosure Action

21.    In November 2003, MERS filed a foreclosure action (the "First Foreclosure Action") in the Cuyahoga Court of Common Pleas (the "State Court") against McNerney because McNerney's account was owing for the June 1, 2003 payment.  See First Foreclosure Action Complaint, attached to the Wallace Declaration as Exhibit D. McNerney filed an answer on June 16, 2004 asserting affirmative defenses and counterclaims against MERS/Homecomings.  See State Court Docket, attached to the Wallace Declaration as Exhibit E.  On November 6, 2006, McNerney filed an amended answer and counterclaims (the "Amended State Court Counterclaims").[5]  See Amended State Court Counterclaims, attached to the Wallace Declaration as Exhibit F.  At this time, she also filed a third-party complaint asserting causes of action against OMC and GMACM. See id.

22.    During the period when the Loan was in default, the Debtors periodically had property inspections performed (generally on a monthly basis) to determine whether the Property was vacant or occupied.  See List of Property Inspections, attached to the Lathrop Declaration as Exhibit N.  These inspections were performed by third party

---

[5] The Amended State Court Counterclaims, which were the operative counterclaims in the First Foreclosure Action, included counts against the Debtors for: (1) violation of TILA; (2) Violation of RESPA; (3) Improvident Lending; (4) Breach of Fiduciary Duty; (5) Negligence and Gross Negligence; (6) Negligent and Intentional Misrepresentation; (7) Unconsiounability; (8) Civil Conspiracy; (9) Violation of the OMBA; and (10) Failure to Engage in Loss Mitigation.

contractors, who would drive by the Property and sometimes take pictures to document the inspection.  See Lathrop Declaration  14.

23.      As stated above, the Note and Mortgage were assigned and transferred to GMACM on December 31, 2007.  See Affidavit of Juan Aguirre at ¶ 5.  On January 31, 2008, GMACM was substituted as plaintiff.  See State Court Docket.  The Note and Mortgage were assigned and transferred from GMACM back to Homecomings on October 14, 2008, with a corrective assignment filed on October 29, 2008 to amend the date of the notary's signature.  See Affidavit of Juan Aguirre at ¶ 6.  On November 4, 2008, Homecomings was substituted as plaintiff for GMACM.  See State Court Docket.

24.      After several years of discovery and motion practice, the State Court held a bench trial in December 2008.  After the conclusion of the bench trial but before the State Court entered a decision, the Eighth District Court of Appeals in Ohio ruled in Wells Fargo Bank v. Jordan, N.A., No. 91675, 2009 WL 625560 (Ohio Ct. App. Mar 12, 2009), that to establish standing to sue in a state court foreclosure case, a plaintiff must demonstrate that at the time the case was filed, it was both the mortgagee or assignee of the mortgage **and** the holder of the note.  As a result, the State Court ordered Homecomings to provide evidence that the initial plaintiff, MERS, was the holder of the Note at the time the First Foreclosure Action was filed.  When no evidence was submitted, the State Court dismissed the case without prejudice (the "State Court Decision") on September 14, 2009. See State Court Decision, attached to the Wallace Declaration as Exhibit G.

25.      McNerney filed an appeal of the State Court Decision challenging the without prejudice dismissal. On December 11, 2009, the Eighth District Court of Appeals dismissed her appeal (the "Appellate Court Decision").  See State Court Docket.  The Ohio

10

Supreme Court declined jurisdiction to hear a further appeal of the Appellate Court

Decision.  See State Court Docket.

### b.    Second Foreclosure Action

26.    Homecomings refiled the foreclosure action (the "Second Foreclosure

Action") in the United States District Court for the Northern District of Ohio (the "District

Court"), case no. 09-CV-2383, on October 14, 2009.  See District Court Docket, attached to

the Wallace Declaration as Exhibit H.  McNerney filed a motion to dismiss the Second

Foreclosure Action on January 18, 2010 for lack of standing to sue, which the District Court

denied on September 24, 2010. See District Court Docket.

27.    On January 23, 2011, McNerney filed an answer and counterclaims

asserting the same claims that she asserted in the State Court Action as well as claims

against Homecomings for violation of the Ohio Consumer Sales Practices Act, breach of

privacy, and a new count for civil conspiracy.  See District Court Counterclaims, attached to

the Wallace Declaration as Exhibit I.

28.    On September 28, 2011, Homecomings filed a motion for judgment on

the pleadings and a motion for summary judgment, to which McNerney responded with

memoranda in opposition (the "Judgment on the Pleadings Opposition" and the "Summary

Judgment Opposition", respectively).  See District Court Docket; see also Judgement on the

Pleadings Opposition and Summary Judgment Opposition, attached to the Wallace

Declaration as Exhibit K.   On August 7, 2012 Homecomings filed a Notice of Bankruptcy

in the District Court, and as a result the District Court did not issue a ruling on either of

these motions, instead issuing an Order on August 8, 2012 staying the case because of the

commencement of the Chapter 11 bankruptcy.  See District Court Docket.

### 3.    Waste and Condemnation of the Property

29.    In November 2010, after the Second Foreclosure Action had been filed, the Debtors discovered that the City of Lakewood had condemned the house located on the Property.  See Inspection Report and Lakewood City Correction Reports, attached to the Wallace Declaration as Exhibit L and Exhibit N, respectively.  Upon further research, the Debtors learned that McNerney had not lived in the Property for some time and had allowed the inside of the house to deteriorate making it uninhabitable.  See id; see also Wallace Declaration ¶ 17; see also Property Preservation Report, attached to the Wallace Declaration as Exhibit M.  As a result, the collateral securing the Loan was rendered worthless. See id.

30.    After learning of the condition of the Property, Homecomings, again through counsel, was contacted by a local civic group, Lakewood Alive, which was interested in facilitating the restoration of the Property, which was located in an historic and architecturally significant area of Lakewood, Ohio. Lakewood Alive requested that Homecomings release its lien on the Property to allow the house and the Property to be donated to the Cuyahoga County Land Reutilization Corporation ("Local Land Bank") to allow for restoration and rehabilitation and to avoid demolition.  See Wallace Declaration ¶ 18.  In December 2010, Homecomings' counsel contacted Gray to discuss a possible lien release that would resolve the case, but Gray did not respond.  See December 1, 2010 Letter, attached to the Wallace Declaration as Exhibit O.  Homecomings then filed an emergency motion for a settlement conference because the demolition of the house appeared imminent, and there had been no indication McNerney would agree to deed the Property to the Local Land Bank.  See District Court Docket, attached to the Wallace Declaration as Exhibit H.

The settlement conference conducted by the District Court was unsuccessful. <u>See</u> Wallace Declaration ¶ 18.

32. Homecomings, through counsel, later learned that McNerney had agreed to deed the property to the Local Land Bank, at the request of Lakewood Alive and the deed was executed on April 19, 2011 and recorded on May 11, 2011. <u>See</u> Transfer Deed, attached to the Wallace Declaration as <u>Exhibit P</u>.  After McNerney deeded the Property Homecomings executed a Certificate of Release to release its lien on July 22, 2011, so the donation, restoration and rehabilitation of the Property could occur.  <u>See</u> Lien Release, attached to the Wallace Declaration as <u>Exhibit Q</u>; Transfer Deed.  The Certificate of Release was recorded on July 22, 2011.  <u>See</u> Lien Release.

32. The Loan was identified as being eligible for extinguishment under the terms of a nationwide settlement entered into by GMACM.  <u>See</u> Wallace Declaration ¶ 20. As a result, Homecomings offered to extinguish the debt owed by McNerney, McNerney accepted, and Homecomings moved to dismiss the Foreclosure-related claims in the Second Foreclosure Action.  <u>See id</u>.  The District Court granted the motion to dismiss on August 7, 2013.  <u>See</u> Aug. 7, 2013 District Court Order, attached to the Wallace Declaration as <u>Exhibit R</u>.  As a result, only the District Court Counterclaims remained pending for decision by the District Court.

**B.    Legal Argument**

**4.    OMC Was Not Homecomings Agent Under Ohio Law**

33. In the District Court Counterclaims, McNerney attempts to hold Homecomings liable for the allegedly improper acts of OMC, asserting that OMC was an

agent of Homecomings.  See e.g. District Court Counterclaims at 169.  However, OMC was

not an agent of Homecomings, but rather worked directly on behalf of McNerney.

34.    Under Ohio law, agency may be established under several theories,

none of which are satisfied here.  "Actual agency occurs where there is a consensual

relationship between the agent and principal."  Chevrolet v. Calhoun, No. 03AP-816, 2004

WL 397140, at *2 (Ohio Ct. App. Mar. 4, 2004).  "Such actual agency may be informally

created and the assent of the parties thereto may be either express or implied."  Brainard v.

Am. Skandia Life Assurance Corp., 432 F.3d 655, 661 (6th Cir. 2005) (applying Ohio law)

(citations omitted).  To establish apparent agency, the evidence must reflect "1) that the

principal held the agent out to the public as possessing sufficient authority to embrace the

particular act in question, or knowingly permitted him to act as having such authority, and

(2) that the person dealing with the agent knew of the facts and acting good faith had reason

to believe and did believe that the agent possessed the necessary authority."  Master Consol.

Corp. v. BancOhio Nat'l Bank, 575 N.E.2d 817, 822 (Ohio 1991).  "[A] court's focus during

an inquiry into the existence of apparent authority must be on the acts of the principal and

whether those actions manifested a conveyance of authority to the agent."  Brainard, 432

F.3d at 663. Likewise, "[a]n implied agency must be based on facts for which the principal

is responsible and to be such as to imply an intention to create an agency…."  Chevrolet v.

Calhoun, 2004 WL 397140, at *3.

35.    Here, there is no actual agency relationship between Homecomings

and OMC because the Broker/Lender Agreement explicitly provides that there is no agency

14

relationship in connection with the origination of loans.[6]  See Broker Lender Agreement.  In

Brainard, the United States Court of Appeals for the Sixth Circuit held that, under Ohio law,

where a contract is explicit regarding the extent of an agency relationship, the actual

authority is limited by the language in the contract.  Brainard, 432 F.3d at 662 (noting that

where a contract expressly limited an agency relationship to the selling of contracts, there

was no authority granted to offer investment advice).  As a result, there could not have been

any actual agency between Homecomings and OMC.

       36.     In the Judgement on the Pleadings Opposition, McNerney attempted to

argue that there is either an apparent or implied agency between OMC and Homecomings.

See Judgment on the Pleadings Opposition at 6-7.  However, McNerney cannot establish an

apparent agency relationship between OMC and Homecomings.  The only act McNerney

alleges to support her apparent or implied agency claim is an act attributed to OMC, not to

Homecomings. Specifically, McNerney alleges OMC entered the data into the underwriting

program (the equivalent of submitting a loan application) and OMC presented the

documents to McNerney with Homecomings name on them.  See Opposition to Judgment on

the Pleadings at 5-6.  Furthermore, at trial, McNerney testified that she did not have any

contact with Homecomings prior to the closing and that she did not even know

Homecomings was involved in the loan prior to being advised by OMC that she needed to

bring funds to the closing.  See Trial Transcript at 203, 275.  Since there was no contact

between Homecomings and McNerney, it is impossible to conclude that Homecomings did

anything to indicate to McNerney that OMC was working as its agent, and as a result,

---

[6] The agreement states: Broker/Lender shall conduct all business with Homecomings as a non-exclusive
independent contractor, and not as an agent, partner or affiliate of Homecomings, and shall not use Homecomings'
name in any advertising, without Homecomings express written consent.  See Broker Lender Agreement.

ny-1184032

McNerney cannot establish an apparent or implied agency relationship between the broker and the lender.

37.    Further, in other situations involving "brokers", Ohio courts have held that such brokers are not agents of the companies with which they do business.  In <u>Damon's Missouri, Inc., v. Davis</u>, 590 N.E.3d 254, 258 (Ohio 1992), the Ohio Supreme Court held that an insurance company is not liable for the actions of the plaintiff's insurance agent, where the insurance agent was acting solely on behalf of the identified insurer rather than as the authorized representative of a particular insurance company. The court distinguished between an insurance agent, who "acts solely on behalf of the identified insurer," and an insurance broker, who is "customarily not held out as the authorized representative of one particular insurance company," holding that "the distinction lies in the **broker** being able to place the coverage with any insurer selected by the potential insured or himself, in the absence of a selection."  <u>See</u> <u>id</u>. (emphasis added) (citing omitted).  Like the broker in <u>Damon's Missouri</u>, OMC was not held out as an exclusive agent or representative of Homecomings, but rather was the agent or representative of McNerney in her quest for a loan refinance mandated by her divorce decree.  In fact, McNerney's broker, in her deposition, testified that OMC was dealing with hundreds of lenders at the time it originated McNerney's loan.  <u>See</u> Deposition of Nancy George, at 17, attached to the Wallace Declaration as <u>Exhibit B</u>.  As a result, OMC was not Homecomings agent under Ohio law, and all of the claims that are premised on Homecomings' liability for the actions of OMC must fail.

**5.      McNerney's Breach of Fiduciary Duty Claims Fails as a Matter of Law**

38.      McNerney asserts claims for breach of fiduciary duty against the

Debtors, both for its alleged acts and for the alleged acts of OMC.  See District Court

Counterclaims, ¶¶ 168-179, 270-79.  The allegations related to OMC's actions fail because

they are premised on the allegation that OMC was Homecomings' agent, which as discussed

in ¶¶ 33-37 *supra*, is not true.  The claims related to Homecomings' actions also fail

because Homecomings did not owe a fiduciary duty to McNerney under Ohio law.

39.      To establish a claim for breach of fiduciary duty, a plaintiff must prove

"(1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the

duty; and (3) an injury resulting proximately therefrom."  Evans v. Chambers Funeral

Homes, No. 89900, 2008 WL 2766173, at *3 (Ohio Ct. App. July 17, 2008) (citation

omitted).  "The elements of an action for breach of fiduciary duty are similar to those for

ordinary negligence, with the difference being a need to establish that the duty arose out of a

fiduciary relationship."  Id (citation omitted).

40.      Ohio courts have held that a lender does not owe a fiduciary duty to a

borrower.

> Generally, the relationship between a creditor and debtor is not a fiduciary one,
> but is one governed by freedom of contract. A fiduciary relationship exists when a
> "special confidence and trust is reposed in the integrity and fidelity … acquired
> by virtue of this special trust."  Such a relationship arises out of an informal
> relationship where "both parties understand that a special trust or confidence has
> been reposed."

Needham v. Provident Bank, 675 N.E.2d 514, 521 (Ohio Ct. App. 1996) (internal citations

omitted); see also Wells Fargo Bank, N.A. v. Favino, No. 1:10 CV 571, 2011 WL 1256771,

at *14 (N.D. Ohio Mar. 31, 2011) ("The relationship of debtor and creditor without more is

not a fiduciary relationship" and "a bank and its customers stand at arm's length in

17

negotiating terms and conditions of a loan.") (citation omitted)  "[A] fiduciary relationship cannot be unilaterally created by one party in the creditor/debtor relationship.  Rather, the debtor asserting such a relationship must demonstrate that the creditor understood that the debtor was placing special trust or confidence in the relationship." Needham, 675 N.E.2d at 522 (citations omitted).

      41.    Here, none of McNerney's allegations or the evidence demonstrate an understanding by both Homecomings and McNerney that a special trust and confidence was reposed in Homecomings.  As noted previously, McNerney did not have any contact with Homecomings and did not know of Homecomings' involvement in the loan prior to the closing date.  As a result, there could not have been an understanding by both Homecomings and McNerney of a special relationship outside that of a typical lender-borrower in which Homecomings agreed to act in McNerney's best interest. Thus, McNerney's causes of action for breach of fiduciary duty must fail as a matter of law.

### 6.    McNerney's Negligence Claims Fail as a Matter of Law

      42.    McNerney alleges a claim for negligence premised on Homecomings alleged failure to exercise reasonable care "in the loan processing process." See District Court Counterclaims ¶ 180-187.  To establish a claim for negligence, a party must demonstrate "(1) the existence of a duty from [the defendant] to [the plaintiff], (2) breach of that duty, and (3) damages proximately resulting from the breach." See Mills v. Best Western Springdale, No. 08AP-1022, 2009 WL 1710765, at *3 (Ohio Ct. App. June 18, 2009).  "The tort of negligence requires the existence of a duty of care.  … Whether a duty exists in any particular case is a question of law." Provident Bank v. Adriatic, Inc., No. CA2005-12-108, 2005 WL 2840741 (Ohio Ct. App. Oct. 31, 2005) (citations omitted).

43.    Ohio courts have held that lenders do not owe borrowers a duty of care.  See Adriatic, 2005 WL 2840741, at *4 (holding that a lender did not owe a borrower a duty of care in the context of negotiating a loan agreement); 425 Beecher, L.L.C. v. Unizan Bank, N.A., 927 N.E. 2d 46, 59 (Ohio Ct. App. 2010) (holding that a bank does not owe a duty of care to its customers outside of its contractual obligations).  Homecomings dealt with McNerney at arms-length during the loan process and had no contact with McNerney prior to closing the Loan.  See ¶ 16 *supra*.  As a result, McNerney cannot show that Homecomings, as her lender, owed her a duty of care.  Furthermore, McNerney does not assert how Homecomings breached its alleged duty of care.  Rather, she resorts to proffering conclusory allegations that "Homecomings failed to exercise reasonable care in the processing of the transaction."

44.    McNerney also brings a claim for "Improvident Lending" which appears to be essentially identical to her negligence claim.  See Counterclaims ¶ 160-67.  In addition to the arguments presented against her negligence claim, McNerney cannot support a claim for improvident lending because such a claim is not recognized under Ohio law.  See Price v. EquiFirst Corp., No. 08-CV-1860, 2009 WL 917950, at *8 (N.D. Ohio Apr. 1, 2009) (holding that a claim for improvident lending is not recognized under Ohio law).  As a result, McNerney has failed to support her cause of action for negligence.

### 7.    McNerney's Fraud on the Court Claim Fails as a Matter of Law

45.    McNerney asserts a cause of action for fraud on the court that is predicated on allegations that the Debtors filed fraudulent assignments and affidavits in the First Foreclosure Action claiming that MERS was the owner of the Note when in fact Homecomings was always the holder of the Note.

46.    Allegations of fraud on the court do not give rise to a civil action.  See Anderson v. Smith, 964 N.E.2d 468, 473 (Ohio Ct. App. 2011) ("While perjury, subornation of perjury, and conspiracy to commit perjury are punishable under criminal statutes, they may not, for public policy reasons, form the basis of a civil lawsuit. … Given that the appellant could not have filed a civil claim seeking to recover damages for suborning perjury, it is consistent to conclude that he may not file an independent contempt action seeking sanctions for the same alleged act.") (citations omitted) (this rule of law is based on the witness immunity rule).  This is based on the witness immunity rule, which holds that "judges, counsel, parties, and witnesses are absolutely immune from civil suits for remarks made during the course of and relevant to a judicial proceeding.  Additionally, the statements of witnesses are privileged and cannot be a basis for a subsequent civil action." DeBrosse v. Jamison, No. 91-CA-26, 1992 WL 5851, at *2 (Ohio Ct. App. Jan. 14, 1992) (citations omitted); see also Schmidt v. State Aerial Farm Statistics, Inc., 403 N.E.2d 1026, 1027 (Oh. Ct. App. 1978) ("[T]here is a very well established rule that no action lies to recover damages caused by perjury, false swearing, subornation of perjury, or an attempt to suborn perjury, whether committed in the course of, or in connection with, a civil action or a criminal prosecution, regardless of whether the perjurer was a party to, or a witness in, the action or proceedings.").  Such immunity includes affidavits and other court filings.  See, e.g., Forsyth v. Hall, No. 16024, 1997 WL 165432 (Ohio Ct. App. Mar. 14, 1997) (holding that witness immunity applies to allegations of false statements made by affidavit); Morrow v. Reminger & Reminger Co. LPA, 915 N.E.2d 696, 705 (Ohio Ct. App. 2009) (holding that the witness immunity rule applies to bar fraud claims based on affidavit, deposition, and

20

trial testimony, and arguments contained in pleadings, motions, briefs, and other court

filings).

47.     Since McNerney's fraud on the court claim is entirely premised on

allegations of false statements made in the First Foreclosure Action by parties to the action,

she cannot bring a civil claim for damages premised on these allegations.

### 8.    McNerney's Ohio Consumer Sales Practices Act Claim Fails as a Matter of Law

48.     McNerney also asserts a cause of action for violation of the Ohio

Consumer Sales Practices Act ("CSPA"). See District Court Counterclaims, ¶¶ 280-87, 308-

16, 322-31.  However, this cause of action fails because the Loan is not subject to the

CSPA.  The CSPA prohibits certain acts in connection with "consumer transactions."  See

Ohio Rev. Code Ann. §§ 1345.02(a), 1345.03(A) (LexisNexis 2015).  At the time this loan

was originated, the law in Ohio was that pure real estate transactions are not consumer

transactions and therefore not subject to the CSPA.  See Brown v. Liberty Clubs, Inc., 543

N.E.2d 783, 785 (Ohio 1989) ("All parties correctly agree that the Consumer Act has no

application in a "pure" real estate transaction.")[7]  The granting of a mortgage is considered a

pure real estate transaction and is not subject to the CSPA.  See Hanlin v. Ohio Builders and

Remodelers, Inc., 212 F. Supp. 2d 752, 757 (S.D. Ohio 2002) (granting summary judgment

to a lender on the borrower's CSPA claims because the loan was a pure real estate

transaction).   In this case, the "transaction" between Homecomings and McNerney was the

---

[7] In 2007, the CSPA was amended so that "consumer transactions" includes "transactions in connection with
residential mortgages between loan officers, mortgage brokers or nonbank mortgage lenders and their customers."
However, this amendment was not in place when Loan was originated in 2002.  See Glazer v. Chase Home Fin.,
L.L.C., No. 99875 2013 WL 7869273, at *11 (Ohio Ct. App. Dec. 19, 2013) (noting that the provision would not
apply to allegations regarding a mortgage or events that happened before 2007).  Thus, whether Homecomings was
or was not a "nonbank mortgage lender" is immaterial.

21

signing of the note and the conveyance of the mortgage, and therefore it was a "pure real estate transaction" and not subject to the CSPA.

49.    Additionally, because McNerney asserted her claim for violation of the CSPA as part of the District Court Counterclaims, the cause of action is barred by the statute of limitations.  The CSPA is subject to a two year statute of limitations.  See Ohio Rev. Code Ann. § 1345.10(C) (LexisNexis 2015) ("An action under § 1345.01 to 1345.13 of the Revised Code may not be brought more than two years after the occurrence of the violation which is the subject of the suit….")  Since the violation allegedly occurred when the Loan was originated on December 27, 2002, the statute of limitations expired long before the District Court Counterclaims were filed in 2011.

50.    McNerney also states that the demand for attorney's fees in the complaint filed in the Second Foreclosure Action constitutes a violation of the CSPA.  See District Court Counterclaims ¶¶ 328-30. However, the provision to which McNerney is likely referring to does not apply because it was enacted after the origination of the Loan. See Ohio Rev. Code Ann. § 1345.031 (LexisNexis 2015) (effective January 1, 2007). Additionally, the Ohio Supreme Court has held that mortgage servicing, including the initiation of a foreclosure process, is also not a commercial transaction and that mortgage servicers are not "suppliers" under the CSPA and therefore are not subject to the statute. See Anderson v. Barclay's Capital Real Estate, Inc., 989 N.E.2d 997, 1001 (Ohio 2013) ("[T]ransactions between mortgage-service providers and homeowners are not 'consumer transactions' within the meaning of the CSPA because there is no 'transfer of an item of goods, a service, a franchise, or an intangible, to an individual.'" (citation omitted)); Glazer, 2013 WL 7869273, at *11 (citing Anderson and holding that the CSPA does not apply to

22

allegations of misrepresentations in a foreclosure complaint concerning the ownership of a

note and mortgage because there is no alleged commercial transaction and the servicer is not

a supplier as defined by the statute).  Further, the complaint filed in the Second Foreclosure

Action states that Homecomings requests costs and attorney's fees only to the extent

allowed by law.  Therefore, the request could not have violated the CSPA because the

request was conditional and does not include attorney's fees that are not permitted under the

law.  As a result, McNerney's attempt to base her CSPA claim on the Complaint in the

Second Foreclosure Action has no merit.

### 9.     McNerney's TILA Claim Fails as a Matter of Law

*The TILA Claim for Alleged Inaccurate Disclosure*

51.    The District Court Counterclaims include a cause of action for

violation of TILA, premised on allegations that Homecomings failed to provide her with the

necessary and accurate disclosures required by TILA.  <u>See</u> District Court Counterclaims ¶¶

126-42.  Based on these allegations, McNerney seeks statutory and actual damages, as well

as rescission of the loan against Homecomings.  <u>See</u> District Court Counterclaims, ¶¶ 126-

51.

52.    Claims brought under TILA for actual or statutory damages must be

brought within one year from the date of occurrence of the violation.  <u>See</u> 15 U.S.C. §

1640(e).  For purposes of TILA, "a violation occurs on the date of the transaction and the

limitation period begins to run at that time.  There is no continuing violation of the statute."

<u>See</u> <u>Sutliff v. County Savs. and Loan Co.</u>, 533 F. Supp. 1307, 1310 (N.D. Ohio 1982).

Since McNerney's allegations relate to the disclosures required to be provided at the

origination of her loan, the statute of limitations began to run at the time of origination,

December 23, 2002.  As a result, the statute of limitations period ran on December 27, 2003,

prior to the counterclaims first being raised in either the First or Second Foreclosure Action.

53.     McNerney also argues that she has a TILA rescission claim, alleging

she was not provided with the disclosures that TILA requires to be provided at the time of

origination.  Under TILA, a borrower typically has three business days to rescind a

transaction.  15 U.S.C. § 1635(a).  If the lender fails to provide certain TILA disclosures,

the rescission period is extended, but only to the maximum of "3 years after the occurrence

giving rise to the right of rescission, or upon transfer of all of the consumer's interest in the

property, or upon sale of the property, whichever occurs first."  See 12 C.F.R. §

226.15(a)(3).  Thus, McNerney's ability to rescind the Loan expired as of April 19, 2011

when she transferred her interest in the Property.

### The TILA Claim for Alleged Failure to Rescind

54.     McNerney further alleges that Homecomings' failure to rescind her

loan after she supposedly exercised her right to rescind on June 16, 2004 by filing the

Amended Counterclaims was a violation of TILA.  See Amended Counterclaims at 17-18.

However, McNerney has not established circumstances that would warrant the extension of

her rescission period, as she has not provided any evidence that any material disclosures

were not provided or were inaccurate.

55.     Moreover, "[rescission under TILA is not automatic where a lender or

creditor disputes the borrower's or obligor's purported claim of rescission."  Anderson v.

Delta Funding Corp., 316 F. Supp. 2d 554, 563 (N.D. Ohio 2004); see also Large v.

Conesco Fin. Servicing Corp., 292 F.3d 49, 55 (1st Cir. 2002) ("If the TILA language …

created an exception to this well established rule of law, a borrower could rescind a

24

transaction without any statutory justification simply by alleging that the statutory

requirements for rescission had not been met.  That is an untenable proposition.")  "When a

lender disputes a borrower's purported right to rescind, the decision maker must decide

whether conditions for rescission have been met." Anderson, 316 F. Supp. at 563 (citation

omitted).  Until such a determination has been made, a borrower has only advanced a claim

seeking rescission.  See id.

> 56.    Here, no judicial determination has been made regarding rescission of

the Loan.  No such determination can be made due to the extinguishment of the Note and

transfer of the Property.  The Debtors disputed McNerney's entitlement to rescission and

McNerney never tendered the rescission amount or otherwise met the statutory requirements

for rescission.

> 57.    Additionally, McNerney's TILA claim premised on a purported failure

to rescind is also barred by the statute of limitations.  McNerney did not assert a claim for

violation of TILA based on failure to rescind until she filed her Amended State Court

Counterclaims in November 2006, more than a year after Homecomings would purportedly

have been required to rescind the transaction under McNerney's theory.  As a result,

McNerney's claim for damages under TILA for failure to rescind the transaction is barred

by the one year statute of limitations.

### *Statute of Limitations For TILA Claims Are Not Tolled*

> 58.    Furthermore, because TILA is a federal cause of action, McNerney

cannot rely on the Ohio savings statute to toll the statute of limitations after the dismissal of

the First Foreclosure Action without prejudice.  McNeely v. Ross Corr. Inst., No. 06-AP-

280, 2006 WL 2949014, at *2 (Oh. Ct. App. Oct. 17, 2006) ("A state savings statute cannot
save a federal claim that contains a specific statute of limitations period.").  Thus, even if
for some reason the statute of limitations had not run at the time McNerney filed her
Amended Counterclaims, it certainly had run by the time McNerney filed the District Court
Counterclaims.[8]

59.    McNerney's argument that the statute of limitations for her damages
claim was equitably tolled due to the First Foreclosure Action has no merit.  McNerney
relies on <u>Burnett v. New York Cent. R.R. Co.</u>, 380 U.S. 424, 424 (1965); however, in that
case, the plaintiff refiled his claim eight days after the dismissal of his case in state court.
Federal courts in Ohio have held that equitable tolling only applies where the party bringing
the claim alleges and can show: "(1) that she has been pursuing her rights diligently, and (2)
that some extraordinary circumstance stood in her way and prevented timely filing."  <u>See</u>
<u>Ford v. New Century Mortg. Corp.</u>, 797 F. Supp. 2d 862, 868 (N.D. Ohio 2011) (citation
omitted).

60.    Here, McNerney did not pursue her rights diligently and therefore
cannot demonstrate that equitable tolling should apply.  Even though there was a pending
action filed by Homecomings (to which she untimely responded), McNerney waited nearly
nine months after the Ohio Supreme Court declined jurisdiction, to file counterclaims that
were nearly identical to the counterclaims that were previously filed.  While some delay in
filing the counterclaims might have been reasonable, McNerney provides no justification for
why she failed to act on her claims for the nine months after the decision from the Ohio
Supreme Court.  McNerney's inexplicable nine-month delay stands in stark comparison to

---

[8] The state savings statute could potentially be applied to the state law claims that McNerney asserts.

the eight-day period in <u>Burnett</u>.  Additionally, McNerney has alleged no extraordinary

circumstance that prevented her from timely filing.  As a result, equitable tolling should not

be applied, and McNerney's TILA claims are barred by the statute of limitations.

**10.    McNerney's RESPA Claim Fails as a Matter of Law**

61.    McNerney asserts that Homecomings violated the Real Estate

Settlement Procedures Act ("<u>RESPA</u>") by failing to provide settlement statements and good

faith estimates, and by paying OMC a yield spread premium.  <u>See</u> District Court

Counterclaims ¶¶ 152-59.

62.    The requirements for providing settlement statements and good faith

estimates fall under 12 U.S.C. § 2603.  Courts have held that there is no private right of

action under this section.  <u>See</u> <u>Morrison v. Brookstone Mortgage Co.</u>, 415 F. Supp. 2d 801,

806 (S.D. Ohio 2005) (holding that § 2603 does not include a remedy for a private cause of

action); <u>Price v. Equifirst Corp.</u>, No. 1:08-cv-1860, 2009 WL 917950, at *5 (N.D. Ohio Apr.

1, 2009) (same).  As a result, McNerney's claims under this section of RESPA must fail.

63.    McNerney's RESPA claim premised on the alleged payment of yield

spread premiums fails because it is barred by the statute of limitations.  12 U.S.C. § 2607

sets forth the statutory prohibitions against payments of certain "kickbacks" by lenders in

connection with loan transactions.  A claim under § 2607 is governed by the limitations

period in § 2614, which provides for a statute of limitation of one year in the case of a

violation of § 2607.  12 U.S.C. § 2614.  Accordingly, a claim under § 2607 must be filed

within one year of the alleged violation.

64.    Here, the alleged violation occurred at the closing of the loan on

December 27, 2002.  As a result, the statute of limitations expired on December 27, 2003,

more than six months before McNerney first brought the counterclaim in the First

Foreclosure Action, and nearly eight years before McNerney brought the counterclaim in

the Second Foreclosure Action.  As with McNerney's TILA claim, there is no basis for

equitably tolling the statute of limitations.  Thus, the claim for violating RESPA must also

fail.

**11.    McNerney's Ohio Mortgage Broker Act ("OMBA") Claim Fails as a Matter of Law**

65.    McNerney asserts that Homecomings is liable for violating the

OMBA.  See District Court Counterclaims ¶¶ 213-31.  However, the OMBA only applies to

mortgage brokers.  Mortgage lenders are not subject to the act.  See Ohio Rev. Code Ann. §

1322.01(G) (LexisNexis 2015) (defining "mortgage broker"); see also Keating v. America's

Wholesale Lender, No. 11-CV-593, 2011 WL 2471732, at *2 (N.D. Ohio June 21, 2011)

("Under the OMBA, the lender is not a "mortgage broker" for purposes of the act.")

66.    McNerney attempts to argue that Homecomings is liable for OMC's

violation of the OMBA because OMC is its agent.  However, as discussed in ¶¶ 33-37

supra, OMC was not Homecomings agent and Homecomings cannot be liable for OMC's

alleged violations of the OMBA.

**12.    McNerney's Failure to Engage in Loss Mitigation Claim Fails as a Matter of Law**

67.    McNerney asserts that Homecomings had a duty to engage in loss

mitigation efforts with her as a borrower in default.  See District Court Counterclaims ¶ 232.

However, under Ohio law, there is no such duty, as loss mitigation is always at the

discretion of the lender.  See UBS Real Estate Secs., Inc., v. Teague, 945 N.E.2d 573, 576,

77 (Ohio Ct. App. 2010) (loss mitigation is always at the pleasure of the lender).  As a

result, there was no requirement that Homecomings, as a lender, engage in loss mitigation

prior to filing a foreclosure action.

68.    In addition, McNerney admits in the Opposition to Judgment on the

Pleadings that this cause of action is moot and should be dismissed because Homecomings

is no longer seeking to foreclose on the property.  See Judgment on the Pleadings

Opposition, at 12.

### 13.    McNerney's Fraud Claim Fails as a Matter of Law

69.    McNerney asserts counterclaims for fraud, intentional

misrepresentation, and negligent misrepresentation.  These claims are premised on

allegations that OMC, and Homecomings through OMC, misrepresented to McNerney that

she qualified for the Loan, as well as the monthly payment under the Loan.  See

Counterclaims ¶¶ 188-203, 235-69.

70.    The elements for intentional misrepresentation in Ohio are:

(a) a representation, or where there is a duty to disclose, a concealment of a
fact; (b) which is material to the transaction at hand; (c) made falsely, with
knowledge of its falsity, or with such utter disregard and recklessness as to
whether it is true or false that knowledge may be inferred; (d) with the intent
of misleading another into relying upon it; (e) justifiable reliance upon the
representation; and (f) a resulting injury proximately caused by the reliance.

See Nichols v. Schwendeman, No. 07AP-433, 2007 WL 4305718, at *7, (Ohio Ct. App.

Dec. 11, 2007).  To successfully assert a negligent misrepresentation claim, McNerney must

establish that Homecomings, "in the course of [its] business, profession or employment, or

in any other transaction in which [it] has a pecuniary interest, supplies false information for

the guidance of others in their business transactions, is subject to liability for pecuniary loss

caused to them by their justifiable reliance upon the information, if he fails to exercise

reasonable care or competence in obtaining or communicating the information." <u>Delman v. City of Cleveland Heights</u>, 534 N.E.2d 835, 838 (Ohio 1989) (citation omitted, emphasis in original). "A defendant only can be liable for <u>affirmatively</u> supplying false information or making a misrepresentation of fact under a negligent cause of action." <u>Anderson, Inc. v. Consol, Inc.</u>, 185 F. Supp. 2d 833, 845 (N.D. Ohio 2002), aff'd, 348 F.3d 496 (6th Cir. 2006) (citing <u>Textron Fin. Corp.</u>, 684 N.E.2d 1261 (Ohio Ct. App. 1996) (emphasis added). "A core requirement in a claim for negligent misrepresentation is a special relationship under which the defendant supplied the information to the plaintiff for the latter's guidance in its business transaction." <u>Ford v. New Century Mortg. Corp.</u>, 797 F. Supp. 2d at 872 (citation omitted).

71. All of the allegations made to support McNerney's fraud, intentional misrepresentation, and negligent misrepresentation claims relate to purported actions by OMC. As discussed in ¶¶ 33-37 *supra*, OMC was not acting as Homecomings agent and therefore OMC's actions cannot create liability for the Debtors' estates. McNerney clearly stated during her testimony that she had no contact with Homecomings prior to the closing of the loan, and therefore Homecomings could not have made any misrepresentations to her. <u>See</u> Trial Transcript at 203, 275.

72. Furthermore, McNerney's claim for negligent misrepresentation must fail because there was no "special relationship" between McNerney and Homecomings to support such a claim. "A bank and its customers stand at arm's length in negotiating terms and conditions of a loan. This sort of relationship does not, by itself, give rise to the existence of a duty necessary to maintain a negligent misrepresentation claim." <u>Ford</u>, 797

30

F. Supp. 2d at 873.  Moreover, McNerney only alleges the existence of a creditor-debtor

relationship, so there can be no claim for negligent misrepresentation.

73.     To the extent McNerney is alleging that the loan documents contained

different terms than the terms she was promised by OMC, Ohio law does not recognize a

fraud claim under such circumstances.  See Provident Bank v. Adriatic, Inc., 2005 WL

2840741, at *3 (holding that a fraud claim fails as a matter of law because "A person of

ordinary mind cannot say that he was misled into signing a paper which was different from

what he intended to sign when he could have known the truth by merely looking when he

signed." (citing Dice v. Akron, Canton & Youngstown R.R. Co., 98 N.E.2d 301 (Ohio

1951).  Additionally, as discussed above, Homecomings cannot have liability for any

purported promise of different terms made by OMC because OMC was not Homecomings

agent.  As a result, McNerney has failed to support her claims for fraud, intentional

misrepresentation, or negligent misrepresentation.

**14.    McNerney's Civil Conspiracy Claim Fails as a Matter of Law**

74.     McNerney asserts three claims for civil conspiracy, of which two

relate to the actions of the Debtors and OMC during the origination of the Loan.  See

District Court Counterclaims ¶¶ 207-12, 288-92.  The third claim relates to alleged

fraudulent conduct of the Debtors prior to the State Court Action.  Id. At ¶¶ 303-17.

75.     "To establish a claim for civil conspiracy, a plaintiff must prove: (1) a

malicious combination; (2) involving two or more persons; (3) causing injury to person or

property; and (4) the existence of an unlawful act independent from the conspiracy itself."

Boomshine v. Lifetime Capital, Inc., App. No. 22179, 2008 App. Ohio LEXIS 7, at *9

(Ohio Ct. App. Jan. 4, 2008) (citations omitted).  Courts have held that "[t]he malice portion

of the tort is 'that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another." Id. (quoting Gibson v. City Yellow Cab Co., C.A. No. 20167, 2001 Ohio App. LEXIS 518 (Feb. 14, 2001)). Further, "[a]n underlying unlawful act is required before a claim for civil conspiracy necessarily fails." McCauley v. PDS Dental Lab., Inc., No. 90086, 2008 WL 2350892, at *5 (Ohio Ct. App. June 1, 2008) (citing Gosden v. Louis, 687 N.E.2d 481, (Ohio Ct. App. 1996)). In order to establish the malice prong for a civil conspiracy claim, a plaintiff must establish that there is an "actual agreement to participate in wrongful activity." Collins v. Nat'l City Bank, 2003 Ohio App. LEXIS 6230, at *12 (Ohio Ct. App. Dec. 19, 2003). No civil conspiracy can be based on a negligence claim. Harwood v. BPJ Invs. Co., No. 91832, 2009 Ohio App. LEXIS 19191, at *9 (Ohio Ct. App. May 14, 2009).

76.    The first two civil conspiracy claims are premised on breach of fiduciary duty, fraud, intentional misrepresentation, and negligent misrepresentation. See District Court Counterclaims ¶¶ 208, 209, 290. All of the allegations underlying the civil conspiracy claim relate to OMC's actions  Thus, even assuming that OMC acted wrongly with regard to the Loan, McNerney must sufficiently allege that Homecomings had an agreement to participate in OMC's purported wrongful activity. While McNerney alleges that Homecomings and OMC "acted in concert" the only allegation made to support this alleged agreement is that Homecomings knew when it reviewed the Claimant's loan application that it contained incorrect information. See Opposition to Motion for Summary Judgment at 16. Courts in Ohio have held that a mere allegation of a "meeting of the minds" is not sufficient to indicate a common understanding between the parties. See In re Nat'l Century Fin. Enters, Inc., 504 F. Supp. 2d 287, 329 (S.D. Ohio 2007) (holding that

allegations that outside directors gave a blind seal of approval to audits by an accounting

firm, without alleging an agreement to enter into a malicious combination to injure the

plaintiff, were not sufficient to support a claim for civil conspiracy). Additionally, even

though McNerney had the opportunity to participate in extensive discovery and proffer

testimony during the previous trial, McNerney cannot point to any actual evidence to

support her allegation that an agreement existed. Thus, McNerney fails to demonstrate that

Homecomings had an actual agreement with OMC to participate in OMC's alleged wrongful

activity.

77.    In addition, the civil conspiracy premised on the Debtors' actions in

filing various documents in the First Foreclosure Action fails because, as discussed in ¶¶ 45-

47 *supra*, it is barred by the witness immunity doctrine. As a result, McNerney's claims for

civil conspiracy must fail as a matter of law.

### 15.    McNerney's Unconscionability Claim Fails as a Matter of Law

78.    McNerney also alleges that the Loan was unconscionable. <u>See</u> District

Court Counterclaims ¶¶ 204-06. "Unconscionability is generally recognized to include an

absence of meaningful choice on the part of one of the parties to a contract, combined with

contract terms that are unreasonably favorable to the other party." <u>See</u> <u>Cheap Escape Co. v.

Crystal Windows & Doors Corp.</u>, No. 93739, 2010 WL 4018693, at *2 (Ohio Ct. App. Oct.

14, 2010). In order to prevail on a claim for unconscionability, the plaintiff must

demonstrate that the loan was both procedurally and substantively unconscionable. <u>See</u> <u>id</u>.

79.    Substantive unconscionability turns on whether the actual terms of the

agreement are unfair and unreasonable. <u>Id</u>. Here, it is clear that there was no substantive

unconscionability. The loan was an arms-length transaction involving a standard loan

33

document and standard loan terms.  In fact, the loan actually lowered McNerney's monthly payment and paid off her past due taxes and high interest credit card debts.  See ¶ 20 *supra*. In Deutsche Bank Nat'l Trust Co. v. Pevarski, the court held that a loan refinance was not substantively unconscionable (even though the interest rate increased) where the monthly payment after the refinance decreased and the refinance assisted the borrower in paying down high interest unsecured debt.  See Deutsche Bank Nat'l Trust Co. v. Pevarski, 932 N.E.2d 887, 898 (Ohio Ct. App. 2010).

80.    In this case, the Loan provided McNerney with a lower monthly payment that included her escrowed taxes and insurance and paid off other unsecured debt, just like in Pevarski.  Furthermore, unlike in Pevarski, McNerney's interest rate actually decreased. Therefore, as a matter of law, the contract was not substantively unconscionable.

81.    Additionally, McNerney has not demonstrated that the Loan was procedurally unconscionable.   As an Ohio court noted in Cheap Escape Co., Inc. v. Crystal Windows & Doors Corp.:

> Procedural unconscionability involves the circumstances surrounding the execution of the contract between the two parties and occurs where no voluntary meeting of the minds was possible.  In determining procedural unconscionability, a court should consider factors bearing on the relative bargaining position of the contracting parties – including age, education, intelligence, business acumen, and experience in similar transactions.

Cheap Escape, 2010 WL 4018693, at *3 (citations omitted).

82.    McNerney was neither an unsophisticated party nor in an inferior bargaining position at the time the loan was originated.  McNerney had a high school degree and worked as a librarian.  See Trial Transcript p. 189; Deposition of Patricia McNerney, at p. 6, attached to the Wallace Declaration as Exhibit C.  In her deposition and at trial,

ny-1184032

McNerney said that she understood that she was signing a note borrowing $108,000 and agreeing to pay it back, that her monthly payment was $1,232.48, that if she did not pay she would be default, and that the lender could require her to pay the full amount if she was in default.  Trial Transcript at 204-05; McNerney Deposition at 22-24. She also testified in her deposition that she understood that the mortgage she signed was a security instrument and allowed the lender to foreclose if she did not make her payments.  Id at 28-29.  She also stated that because of her divorce she needed to refinance the mortgage on her house and that she also wished to lower her payments and escrow her taxes.  Trial Transcript at 182-186.  She also testified that she knew that she received the notice of the right to cancel, which indicated that she had three days from the origination to cancel the transaction if she wished to.  Id at 193.  These undisputed facts show that McNerney was not an unsophisticated, uneducated party in an inferior bargaining position.  As a result, McNerney cannot demonstrate that the loan was either procedurally or substantively unconscionable.

### 16.    McNerney's Breach of Privacy Claim Fails as a Matter of Law

83.    McNerney also asserts a claim for breach of privacy, alleging that Homecomings and GMACM's conduct "in sending agents to Ms. McNerney's home to harass and intimidate her and her family in the presence of hearing of neighbors, without Ms. McNerney's authorization or consent is a violation of Ms. McNerney's right to privacy."  See District Court Counterclaims ¶¶ 317-21.  These allegations likely refer to inspections of the Property conducted by third party contractors, which, as noted in ¶ 22 *supra* were conducted periodically (generally on a monthly basis) while McNerney was in default of the Loan.

35

84.     The facts alleged to support this counterclaim include: (1)
"Throughout the foreclosure proceeding, and even after its dismissal by the court, agents of
Homecomings came to the home of Ms. McNerney and publically [sic] humiliated her and
her children"; (2) "The agents came by in cars to take pictures"; and (3) "The agents got out
of the car and came onto the property and called out to the family and heckled them while
the family was visiting together on their front balcony, calling out in loud voices that the
family should stand and wave and smile for the cameras."  Id. at ¶¶ 104-06.  These factual
allegations do not support a plausible claim for breach of privacy under Ohio law.

85.     In Sustin v. Fee, the Ohio Supreme Court recognized three theories for
the tort of invasion of privacy, holding that "[a]n actionable invasion of the right of privacy
is the unwarranted appropriation or exploitation of one's personality, the publicizing of
one's private affairs with which the public has no legitimate concern, or the wrongful
intrusion into one's private activities in such a manner as to outrage or cause mental
suffering, shame or humiliation to a person of ordinary sensibilities."  Sustin v. Fee, 431
N.E.2d 992, 993 (Ohio 1982).  Thus, in Ohio, "[t]he right of privacy is the right of a person
to be let alone, to be free from unwarranted dissemination and/or publication of information
about a plaintiff.  Roe ex rel. Roe v. Heap, No. 03AP-586, 2004 WL 1109849, at *12 (Ohio
Ct. App. May 11, 2004) (citation omitted).

86.     In the Opposition to Judgment on the Pleadings, McNerney asserts that
she has causes of action under the second and third theories: (1) the publicizing of one's
private affairs with which the public has no legitimate concern and (2) the wrongful
intrusion into one's private activities in such a manner as to outrage or cause mental
suffering, shame or humiliation to a person of ordinary sensibilities.  See Opposition to

36

Judgment on the Pleadings at 6. However, McNerney cannot satisfy the elements of the

breach of privacy tort under either of these theories.

87.    In order to establish a claim for publication of another's private affairs,

five elements must be plead:

> (1) There must be publicity; the disclosure of a public nature, not private. "Publicity" means communicating the matter to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge as opposed to 'publication' as that term of art is used in connection with the liability for defamation as meaning any communication by the defendant to a third person. (2) The facts disclosed must be concerning the private life of an individual, not his public life. (3) The matter publicized must be one which would be highly offensive and objectionable to a reasonable person of ordinary sensibilities. (4) The publication must have been made intentionally, not negligently. (5) The matter publicized must not be a legitimate concern to the public.

Quintile v. Medina Cty, No. 1:07-cv-2413, 2008 WL 2484173, at *9 (N.D. Ohio June 17,

2008), (citing Killilea v. Sears, Roebuck & Co., 499 N.E.2d 1291, 1294-95 (Ohio Ct. App.

1985)).

88.    Here, there is no allegation of a disclosure of any private information

relating to McNerney.   All that is alleged is that agents told McNerney's family to "stand

up and smile for the cameras."  If true, such a statement may be in poor taste, but it does not

disclose any private information of McNerney's.

89.    Furthermore, even assuming private information was disclosed, which

it was not, McNerney cannot establish that publication occurred.  The alleged publication

involved a few of her neighbors purportedly overhearing the statements of Homecoming's

representatives.  This is not sufficient to establish that anything was disclosed to "the public

at large" which is required to support the cause of action.  See Quintile (statements made to

other employees was not sufficient to establish that they were made to the public at large.");

Anthony v. Wonnell, No. 91AP-995, 1992 WL 230583, at *7 (Ohio Ct. App. Apr. 7, 1992)

(finding that the distribution of a report to spectators in a court room did not constitute

publication); Yoder v. Ingersoll-Rand Co., 172 F.3d 51 (6th Cir. 1998) (holding that

disclosure to a small group of people does not qualify as "the public at large."). As a result,

McNerney cannot support a cause of action for breach of privacy under the publicizing of

private affairs theory.

90.     McNerney also cannot support her breach of privacy claim under a

wrongful intrusion theory, as the alleged actions occurred when she was in a public place.

See, York v. Gen. Elec. Co., 759 N.E. 2d 865, 858 (Ohio Ct. App. 2001) (no wrongful

intrusion where unauthorized video recordings were taken of plaintiff while he was on his

porch and in his yard because these are public rather than private areas.) see also Jackson v.

Playboy Enters, Inc., 574 F. Supp. 10, 12-13 (S.D. Ohio 1983) ("[T]he defendant is subject

to liability … only when he has intruded into a private place, or has otherwise invaded a

private seclusion.") (quoting Restatement (Second) of Torts § 652B, comment c (1977)).

Here, as in York, the alleged intrusion also occurred while McNerney was on her front

porch in public view, and therefore is not an intrusion upon her in a private place.

91.     Additionally, a wrongful intrusion theory requires a showing of an

intentional intrusion "upon the solitude or seclusion of another or his private affairs or

concerns… if the intrusion would be highly offensive to a reasonable person." Roe ex rel.

Roe v. Heap, 2004 WL 1109849 at *18 (citation omitted). "The intrusion must be wrongful,

as well as done in a manner as to outrage or cause mental suffering, shame or humiliation to

a person of ordinary sensibilities." Id. For the intrusion to be wrongful, it must "shock the

38

ordinary person to the point of emotional distress." Id. (citation omitted) The allegations

made by McNerney do not meet this standard.

92.    The case that McNerney relies on for this prong, Housch v. Perth, is

completely different from the allegations here. See Housh v. Perth, 133 N.E.2d 340, 344

(Ohio 1956).   In Housh, the defendant engaged in extremely egregious conduct in order to

collect on a debt, including calling the plaintiff every day for three weeks, sometimes late at

night and sometimes at her place of employment. See id. The defendant also informed the

plaintiff's employer of the debt, putting her position in jeopardy. See id. Here, the alleged

wrongful activity involved a singular occurrence, and therefore cannot constitute "systemic

harassment" like the allegations in Housh.

93.    For these reasons, the Borrower Trust submits that the Claimants have

failed to demonstrate any liability of the Debtors' estates related to the Loan, and as a result,

claim numbers 4762 and 4764 should be disallowed and expunged.

### 17.    Gray's Claim For Attorney's Fees Fails as a Matter of Law

94.    McNerney's attorney, Susan Gray, also filed claims for the attorney's

fees incurred because of the Debtors' litigation with McNerney.  Ohio adheres to the

"American rule" with respect to recovery of attorney's fees, meaning a prevailing party in a

civil action may not recover its attorney fees. Wilborn v. Bank One Corp., 906 N.E.2d 396,

400 (Ohio 2009).  Although prevailing parties can recover costs, under Ohio law, costs have

traditionally been defined as "the statutory fees to which officers, witness, jurors and others

are entitled for their services on an action or prosecution and which the statutes authorize to

be taxed and included in the judgment or sentence." State ex rel. Franklin Cty. v. Guilbert,

39

83 N.E. 80, 81 (Ohio 1907). However, "attorney fees are not included as "costs" unless specified by statute." See Muze v. Mayfield, 573 N.E.2d 1078, 1079 (Ohio 1991).

95.    Courts may award attorney's fees when a statute or contract specifically provides for the award of attorney's fees.  McNerney's four statutory causes of action, violations of the CSPA, TILA, RESPA, and OMBA, permit recovery of attorney's fees, but only if the party bringing the cause of action prevails.  See Ohio Rev. Code Ann. § 1345.09(F) (LEXISNEXIS 2015) (stating the rule under the CSPA); 12 U.S.C. § 2605(f) (stating the rule under RESPA); 15 U.S.C. § 1640(e) (stating the rule under TILA); O.R.C. § 1322.11(stating the rule under the OMBA).  Since the Borrower Trust has demonstrated that McNerney cannot succeed on any of these causes of action, Gray's claim for attorney's fees must also be denied.

## NOTICE

96.    The Borrower Trust has provided notice of this Objection in accordance with the Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141] and the Procedures Order.

## CONCLUSION

WHEREFORE, the Borrower Trust respectfully requests entry of the Proposed Order granting the relief requested herein and such other and further relief as this Court may deem proper.

ny-1184032

Dated:   October 23, 2015
        New York, New York

                                      /s/  Norman S. Rosenbaum
                                      Norman S. Rosenbaum
                                      Jordan A. Wishnew
                                      Jessica J. Arett
                                      MORRISON & FOERSTER LLP
                                      250 West 55th St.
                                      New York, New York 10019
                                      Telephone: (212) 468-8000
                                      Facsimile: (212) 468-7900

                                      *Counsel for the ResCap Borrower Claims Trust*