## Exhibit 2

**Lathrop Declaration**

ny-1184032

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━ )
                                          )
In re:                                    )    Case No. 12-12020 (MG)
                                          )
RESIDENTIAL CAPITAL, LLC, et al.,         )    Chapter 11
                                          )
                      Debtors.            )    Jointly Administered
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━ )

**DECLARATION OF SARA LATHROP IN SUPPORT OF THE RESCAP BORROWER**
**CLAIMS TRUST'S OBJECTION TO CLAIM NOS. 4757, 4758, 4762, AND 4764, FILED**
**BY PATRICIA MCNERNEY AND SUSAN GRAY**

I, Sara Lathrop, hereby declare as follows:

1.    I serve as Senior Claims Analyst for the ResCap Borrower Claims Trust

(the "Borrower Trust"), established pursuant to the terms of the *Second Amended Joint Chapter*

*11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured*

*Creditors* [Docket No. 6030] confirmed in the above-captioned Chapter 11 Cases.  During the

Chapter 11 Cases, I served as Regulatory Compliance Manager and Loss Mitigation Manager in

the loan servicing department of Residential Capital, LLC ("ResCap"), a limited liability

company organized under the laws of the state of Delaware and the parent of the other debtors in

the above-captioned Chapter 11 Cases (collectively, the "Debtors").  I have been employed by

affiliates of ResCap since June 2006.  I began my association with ResCap in 2006 working as

an associate in the Default Division of the loan servicing operation of GMAC Mortgage, LLC

("GMACM").  In 2008, I became a Default Quality Control Specialist, a position that I held until

I became a Supervisor in the Default Division in 2009.  In 2011, I then became a Supervisor in

the Loss Mitigation Division of GMACM's loan servicing operation, and in February 2012, I

became a Manager in that division.  In this role, I oversaw GMACM associates in their efforts to

1

provide borrowers with loss mitigation options and assisted in the development of GMACM's loss mitigation policies. In January of 2013, I became the Regulatory Compliance Manager for ResCap. I became Senior Claims Analyst for ResCap in July 2013 and continued this role with the ResCap Liquidating Trust (the "Liquidating Trust") in December 2013. In my current position as Senior Claims Analyst to the Borrower Trust, among my other duties, I continue to assist the Borrower Trust in connection with the claims reconciliation process.[1] I am authorized to submit this declaration (the "Declaration") in support of the *ResCap Borrower Claims Trust's Objection To Claim Nos. 4757, 4758, 4762, and 4764, Filed By Patricia McNerney and Susan Gray* (the "Objection").[2]

2.      Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations, information learned from my review of relevant documents and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors, the Liquidating Trust, and the Borrower Trust's professionals and consultants. If I were called upon to testify, I could and would testify competently to the facts set forth in the Objection on that basis.

3.      In my current and former capacities as Senior Claims Analyst and Loss Mitigation Manager to the Borrower Trust, the Liquidating Trust, and ResCap, I am intimately familiar with the Debtors' claims reconciliation process. Except as otherwise indicated, all statements in this Declaration are based upon my familiarity with the Debtors' Books and Records kept in the course of their regularly conducted business activities (the "Books and

---

[1] The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.
[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Objection.

Records"), as well as the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or my review of relevant documents.  I or other Liquidating Trust personnel have reviewed and analyzed the proof of claim forms and supporting documentation filed by the Claimants.  Since the Plan went effective and the Borrower Trust was established, I, along with other members of the Liquidating Trust have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims, and determine the appropriate treatment of the same.  In connection with such review and analysis, where applicable, I or other Liquidating Trust personnel, together with professional advisors, have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (vi) the official claims register maintained in the Debtors' Chapter 11 Cases.

4.      The Debtors have taken steps in these Chapter 11 Cases to afford Borrowers who have filed proofs of claim additional protections, as set forth in the Borrower Claim Procedures approved by the Procedures Order.  A Request Letter was sent to the Claimant and the Debtors received responses on July 11 and July 13, 2013, which are attached hereto as Exhibit A.

5.      On December 27, 2002, McNerney obtained a loan from Homecomings (the "Loan") in the amount of $108,000, evidenced by a note (the "Note") and secured by a mortgage (the "Mortgage") on property located at 1241 Thoreau Road, Lakewood, OH 44107 (the "Property"). Copies of the Note and the Mortgage are attached hereto as Exhibit B and Exhibit C, respectively.  The Mortgage named Homecomings as the Lender and Mortgage Electronic Registration Systems, Inc. ("MERS") as the mortgagee and nominee for

3

Homecomings and Homecomings' successors and assigns.  See Mortgage. The Note and

Mortgage were subsequently assigned and transferred to GMACM on December 31, 2007.  See

Affidavit of Juan Aguirre, attached hereto as Exhibit D, at ¶ 5.  The Note and Mortgage were

again assigned and transferred from GMACM back to Homecomings on October 14, 2008, with

a corrective assignment filed on October 29, 2008 to amend the date of the notary's signature.

See id, at ¶ 6.

6.      Homecomings serviced the Loan from December 27, 2002 until servicing

was transferred to GMACM on January 1, 2003.  See Servicing Transfer Letter, attached hereto

as Exhibit E.  GMACM serviced the loan until February 16, 2013.

7.      McNerney signed a loan application (the "Application") under penalty of

perjury on December 27, 2002, acknowledging that the information in the Application was true

and correct.  See Application, attached hereto as Exhibit F.  Ohio Mortgage Company, Inc. d/b/a

OMC Lending ("OMC'), McNerney's agent, was not an agent of Homecomings.  In fact the

Broker Agreement between OMC and Homecomings provided that OMC was an independent

contractor and was not the agent of Homecomings. See Broker Lender Agreement, attached

hereto as Exhibit G.

8.      Homecomings received the Application from OMC and analyzed the

information provided in the Application through an automated underwriting program.  From this

analysis, Homecomings determined that McNerney had a loan to income ratio of 34% and a debt

to income ratio of 46%, both of which were within the approved ratios.  See Uniform

Underwriting and Transmittal Summary, attached hereto as Exhibit H.

9.      At the time of the closing of the Loan, Homecomings provided McNerney,

among other documents, with a Truth in Lending Statement (the "TIL Statement"), a Notice of

4

the Right to Cancel (the "Notice of Right to Cancel"), a HUD-1 Settlement Statement (the

"Settlement Statement"), a First Payment Notice (the "First Payment Notice") and a disclosure

regarding private mortgage insurance (the "PMI Disclosure").[3]  See TIL Disclosure, Notice of

Right to Cancel, Settlement Statement, First Payment Notice, and PMI Disclosure, attached

hereto as Exhibit I, Exhibit J, Exhibit K, Exhibit L, and Exhibit M, respectively.

       10.     The Loan paid off the Household Loan in the amount of $98,349.94, as

well as satisfying both past due taxes in the amount of $5,847.18 and credit card debt in the

amount of $4,533.16.  See Settlement Statement.   The principal and interest portion of the

monthly payment under the Loan was $792.47.  See First Payment Notice.  The escrow portion

of the monthly payment for real estate taxes was $230.81 and the escrow portion of the monthly

payment for property insurance was $31.  See id.  The loan also required private mortgage

insurance, to be paid through monthly payments of $178.20 until the Loan reached a loan to

value ratio of 80%.  See PMI Disclosure.  Therefore, the total monthly payment under the Loan

was $1,232.28.  The interest rate on the loan was 8%.  See Note.

       11.     Thus, even with PMI insurance, which would eventually cease once the

loan to value ratio fell below 80%, McNerney's monthly payment was less than her monthly

payment with the Household loan, as was her interest rate.  Furthermore, through the Loan

McNerney paid off unpaid taxes and high interest credit card debt, thus reducing the total amount

she would have to pay each month to satisfy all of her debt.

       12.     During the period when the Loan was in default, the Debtors periodically

had property inspections performed (generally on a monthly basis) to determine whether the

---

[3] McNerney alleges that she was provided different versions of these disclosures during origination.  It was common practice that multiple versions of these documents would be generated during the application process, as the terms of the loan were subject to change until they were fixed at origination. The documents attached as Exhibits I - M are the final versions provided to McNerney.

ny-1204293

Property was vacant or occupied.  See List of Property Inspections, attached hereto as Exhibit N.

These inspections were performed by third party contractors, who would drive by the Property

and sometimes take pictures to document the inspection.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Dated:  October 23, 2015

/s/  Sara Lathrop
Sara Lathrop
Senior Claims Analyst for ResCap
Liquidating Trust

6

**Exhibit A**

# RESCAP

MORRISON | FOERSTER

## Claim Information

| Claim Number | 4757 |
|---|---|

| **Basis of Claim** | This is a claim for attorney fees as part of damages for violation of the Truth in Lending Act, 15 U.S.C. Secs.. 1601 et. seq. specifically 1640. This is a claim separate from Ms. McNerney's related claims 4762 and 4764 because in Ohio attorney fee claims under fee shifting statutes belong to the attorney, not the client. Claims are against both Homecomings and GMAC because Homecomings as the loan originator violated truth in lending in the loan origination. GMAC as servicer violated truth in lending when it refused to acknowledge McNerney's rescission of the transaction and refused to follow the rescission obligations set forth in 15 U.S.C. Sec. 1635(b). All information set forth in connection with the statement of the basis for the claims in claims numbered 4762 and 4764 are incorporated herein by this reference. The fees were earned in defending two foreclosure lawsuits, one all the way through trial and post trial briefing, the other through extensive pleading and motion practice, as well as settlement endeavors and representation with the land bank as the property was transferred. |
|---|---|
| Explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and, you **must** provide copies of any and all documentation that you believe supports the basis for your claim. | |

**If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the following loan information, so that we can effectively search our records for information on your property and loan, and evaluate your claim.**

| Loan Number: ██████993-9  See Note attached |
|---|
| Address of property related to the above loan number: 1241 Thoreau Road |

| City: Lakewood | State: Ohio | ZIP Code: 44107 |
|---|---|---|

**Additional resources may be found at  -  http://www.kccllc.net/rescap**

Residential Capital, LLC    P.O. Box 385220  Bloomington, MN  55438

Claim Number: 4757
Susan Marie Gray, Attorney at Law
Type: POC

001KC0002_59050-3_domestic_272/000287/001147

# ResCap

MORRISON | FOERSTER

## Claim Information

| Claim Number | ~~XXXXXXX----------~~  4758 |
|---|---|
|  | 4757 |

| **Basis of Claim** |  |
|---|---|
| Explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and, you **must** provide copies of any and all documentation that you believe supports the basis for your claim. | This is a claim for attorney fees as part of damages for violation of the Truth in Lending Act, 15 U.S.C. Secs.. 1601 et. seq. specifically 1640. This is a claim separate from Ms. McNerney's related claims 4762 and 4764 because in Ohio attorney fee claims under fee shifting statutes belong to the attorney, not the client.  Claims are against both Homecomings and GMAC because Homecomings as the loan originator violated truth in lending in the loan origination.  GMAC as servicer violated truth in lending when it refused to acknowledge McNerney's rescission of the transaction and refused to follow the rescission obligations set forth in 15 U.S.C. Sec. 1635(b).  All information set forth in connection with the statement of the basis for the claims in claims numbered 4762 and 4764 are incorporated herein by this reference.  The fees were earned in defending two foreclosure lawsuits, one all the way through trial and post trial briefing, the other through extensive pleading and motion practice, as well as settlement endeavors and representation with the land bank as the property was transferred. |

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the following loan information, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

| **Loan Number:** ▮▮▮▮993-9  See Note attached |
|---|
| Address of property related to the above loan number: 1241 Thoreau Road |

| City: Lakewood | State: Ohio | ZIP Code: 44107 |
|---|---|---|

Additional resources may be found at - http://www.kccllc.net/rescap

Residential Capital, LLC    P.O. Box 385220  Bloomington, MN  55438

Claim Number: 4757
Susan Marie Gray, Attorney at Law
Type: POC

001KC0002_59050-3_domestic_272/000287/001147

# ResCap

### MORRISON | FOERSTER

## Claim Information

| Claim Number | 4762 |
|---|---|
| **Basis of Claim**<br><br>Explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and, you must provide copies of any and all documentation that you believe supports the basis for your claim. | Homecomings originated this loan for sale to FNMA. Homecomings data into the desktop underwriter which it knew to be false. (See Trial Exhibit LLL attached). It closed the loan on January 3, 2003 and presented disclosures and closing documents dated December 27, 2002, so the right to cancel under Truth in Lending expired before even being delivered. Because of first payment default the loan was not sold to FNMA Nevertheless, in the foreclosure (Docket enclosed) it filed repeated false documents asserting different plaintiffs all of whom claimed to be the owner and holder of the note even though at trial (transcript attached) it admitted that it had the loan all that time. After pleadings, discovery, summary judgment, 3 substitutions of plaintiff, continuances, trial, and post trial briefing, it failed to comply with a court order to prove that the complaint was filed in the name of the real party in interest and so the court dismissed the case without prejudice. It refiled in federal court and later moved to dismiss. Counterclaims are pending in the federal case. |

**If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the following loan information, so that we can effectively search our records for information on your property and loan, and evaluate your claim.**

| Loan Number:<br> ███993-9     See Noted Attached. |
|---|
| **Address of property related to the above loan number:**<br>  1241 Thoreau Road, |

| City: | State: | ZIP Code: |
|---|---|---|
|  Lakewood |  Ohio |  44107 |

**Additional resources may be found at -  http://www.kccllc.net/rescap**

Residential Capital, LLC    P.O. Box 385220  Bloomington, MN  55438

Claim Number: 476
Patricia J. McNeme
Type: PO

# RESCAP

MORRISON | FOERSTER

## Claim Information

| Claim Number | 4764 |
|---|---|

| **Basis of Claim** | Homecomings originated this loan for sale to FNMA.  Homecomings entered |
|---|---|
| Explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and, you must provide copies of any and all documentation that you believe supports the basis for your claim. | data into the desktop underwriter which it knew to be false.(See Trial Exhibit LLL attached).  It closed the loan on January 3, 2003 and presented disclosures and closing documents dated December 27, 2002, so the right to cancel under Truth in Lending expired before even being delivered. Because of the first payment default the loan was not sold to FNMA. Nevertheless, in the foreclosure (Docket enclosed) it filed repeated false documents asserting different plaintiffs all of whom claimed to be the owner and holder of the note even though at trial (transcript attached) it admitted that it had the loan all that time.  After pleadings, discovery, summary judgment, 3 substitutions of plaintiff, continuances, trial, and post trial briefing, it failed to comply with a court order to prove that the complaint was filed in the name of the real party in interest and so the court dismissed the case without prejudice.  Homecomings refiled in federal court and later moved to dismiss. Counterclaims are pending in the federal case. |

**If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the following loan information, so that we can effectively search our records for information on your property and loan, and evaluate your claim.**

| Loan Number:     ███████993-9          See Note Attached |
|---|
| Address of property related to the above loan number:    1241 Thoreau Road |

| City:    Lakewood | State:    Ohio | ZIP Code:    44107 |
|---|---|---|

**Additional resources may be found at - http://www.kccllc.net/rescap**

Residential Capital, LLC    P.O. Box 385220  Bloomington, MN  55438

Claim Number: 4764
Patricia J. McNerney
Type: POC

**<u>Exhibit B</u>**

# NOTE

DECEMBER 27TH, 2002              BROOKLYN                        OHIO
          [Date]                                   [City]                            [State]

1241 THOREAU ROAD, LAKEWOOD, OH 44107

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 108,000.00        (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is    HOMECOMINGS FINANCIAL NETWORK, INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     8.0000      %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  FIRST  day of each month beginning on  FEBRUARY 1ST, 2003 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JANUARY 1ST, 2033      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   27725 STANSBURY BLVD, SUITE 375, FARMINGTON HILLS, MI 48334                                  or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $          792.47   .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP-5N (0207)          Form 3200 1/01

VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 3            Initials _PJM_          MFCD6054 - (11/02) / 041-571993-9





### 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

### 6. BORROWER'S FAILURE TO PAY AS REQUIRED

#### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of     15          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      5.00             % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

#### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

#### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

#### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

#### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.



## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Patricia Joanne McNerney_ (Seal)          _____ (Seal)
PATRICIA JOANNE MCNERNEY          -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                        -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                        -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                        -Borrower                                        -Borrower

WITHOUT RECOURSE
PAY TO THE ORDER OF
   GMAC MORTGAGE CORPORATION                              *[Sign Original Only]*
_____

_Karen Schiefert_ (signature)
KAREN SCHIEFERT
ASSISTANT SECRETARY
HOMECOMINGS FINANCIAL NETWORK INC.
A DELAWARE CORPORATION          Page 3 of 3                              Form 3200 1/01

VMP® -5N (0207)
MFCD6054 - (11/02) / 041-571993-9

**Exhibit C**

Return To:
HOMECOMINGS FINANCIAL NETWORK, INC
ONE MERIDIAN CROSSING, STE 100
MINNEAPOLIS, MN 55423
Loan Number: ████993-9

CUYAHOGA COUNTY RECORDER
PATRICK J. OMALLEY
MORT 01/06/2003 11:04:42 AM
200301060120

——————————[Space Above This Line For Recording Data]——————————

# MORTGAGE

MIN ████████9391

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated    DECEMBER 27TH, 2002
together with all Riders to this document.
**(B) "Borrower"** is
PATRICIA JOANNE MCNERNEY, A SINGLE WOMAN

*AKA PATRICIA JOANNE KELLICKER*

Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee
under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

OHIO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS                Form 3036  1/01
MFOH7770 (9/02)  /  041-571993-9
VMP® -6A(OH) (0201)
Page 1 of 15                    Initials: *PJM*
VMP MORTGAGE FORMS - (800)521-7291


3145547

**(D) "Lender"** is  HOMECOMINGS FINANCIAL NETWORK, INC.

Lender is a  CORPORATION
organized and existing under the laws of  DELAWARE
Lender's address is  27725 STANSBURY BLVD, SUITE 375
FARMINGTON HILLS, MI 48334

**(E) "Note"** means the promissory note signed by Borrower and dated DECEMBER 27TH, 2002
The Note states that Borrower owes Lender  ONE HUNDRED EIGHT THOUSAND AND NO/100
Dollars
(U.S. $  108,000.00      ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than JANUARY 1ST, 2033

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

MFOH7770 (9/02) / 041-571993-9

VMP®-6A(OH) (0201)          Page 2 of 15       Initials          Form 3036  1/01

CUYAHOGA COUNTY RECORDER
200301060120   PAGE 2 of 16

**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the COUNTY                                    of  CUYAHOGA                                     :

        [Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]

Legal description attached hereto and made a part hereof

Parcel ID Number:  312-28-084                    which currently has the address of
1241 THOREAU ROAD                                                              [Street]
LAKEWOOD                              [City], Ohio      44107      [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

MFOH7770 (9/02) / 041-571993-9                    Initials: DMM
VMP -6A(OH) (0201)                  Page 3 of 15                    Form 3036  1/01

File No:201546

## EXHIBIT A - LEGAL DESCRIPTION

Situated in the City of Lakewood, County of Cuyahoga and State of Ohio:

And known as being Sublot No. 35 in the J.A. Zangerle Subdivision of part of original Rockport Township Section No. 21, as shown by the recorded plat in Volume 34 of Maps, Page 7 of the Cuyahoga County Records, and being 50 feet front on the easterly side of Thoreau Road and extending back of equal width 140 18/100 feet deep, as appears by said plat, be the same more or less, but subject to all legal highways.

1241 Thoreau Road, Lakewood, OH 44107

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

**CUYAHOGA COUNTY RECORDER**

**200301060120   PAGE 5 of 16**

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

 
CUYAHOGA COUNTY RECORDER
200301060120   PAGE 6 of 16

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

 

CUYAHOGA COUNTY RECORDER
PAGE 7 of 18
200301060120

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

MFOH7770 (9/02) / 041-571993-9

VMP®-6A(OH) (0201)                    Page 8 of 15          Initials:           Form 3036  1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

MFOH7770 (9/02) / 041-571993-9

VMP -6A(OH) (0201)     Initial's: _PM_     Page 9 of 15     Form 3036   1/01

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

MFOH7770 (9/02) / 041-571993-9

-6A(OH) (0201)                    Page 10 of 15    Initials: pm    Form 3036   1/01

CUYAHOGA COUNTY RECORDER
200301080120   PAGE 11 of 16


**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Certain Other Advances.** In addition to any other sum secured hereby, this Security Instrument shall also secure the unpaid principal balance of, plus accrued interest on, any amount of money loaned, advanced or paid by Lender to or for the account and benefit of Borrower, after this Security Instrument is delivered to and filed with the Recorder's Office, _____
County, Ohio, for recording. Lender may make such advances in order to pay any real estate taxes and assessments, insurance premiums plus all other costs and expenses incurred in connection with the operation, protection or preservation of the Property, including to cure Borrower's defaults by making any such payments which Borrower should have paid as provided in this Security Instrument, it being intended by this Section 24 to acknowledge, affirm and comply with the provision of Section 5301.233 of the Revised Code of Ohio.

CUYAHOGA COUNTY RECORDER
200301060120    PAGE 14 of 18


BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_Theresa L. Dempsey_

_Patricia Joanne McNerney_ (Seal)
PATRICIA JOANNE MCNERNEY    -Borrower

_Beata Trzaska_
BEATA TRZASKA                                    _____ (Seal)
                                                                          -Borrower

_____ (Seal)        _____ (Seal)
-Borrower                                               -Borrower

_____ (Seal)        _____ (Seal)
-Borrower                                               -Borrower

_____ (Seal)        _____ (Seal)
-Borrower                                               -Borrower

MFOH7770 (9/02) / 041-571993-9

VMP-6A(OH) (0201)              Page 14 of 15              Form 3036   1/01

**STATE OF OHIO,**                                        County ss: Cuyahoga

This instrument was acknowledged before me this 27TH DECEMBER of 2002                    by

PATRICIA JOANNE MCNERNEY, A SINGLE WOMAN

My Commission Expires: 9-11-07

_____
Notary Public

THERESA L.
DEMPSEY
NOTARY PUBLIC
STATE OF OHIO
Recorded in
Cuyahoga Cty.
My Comm. Exp. 9/11/07

This instrument was prepared by
HomeComings Financial Network
27725 Stansbury Blvd, Suite 375
Farmington Hills, MI 48334

**Exhibit D**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HOMECOMINGS FINANCIAL, LLC, | ) | CASE NO. |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE |
| v. | ) | |
| | ) | |
| PATRICIA J. MCNERNEY, *et al.*, | ) | **AFFIDAVIT OF JUAN AGUIRRE** |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| STATE OF TEXAS | ) | |
| | ) | SS: |
| COUNTY OF DALLAS | ) | |

Juan Aguirre, being first duly sworn in accordance with law, deposes and states as follows:

1.     This affidavit is submitted in support of the Complaint filed on behalf of Homecomings Financial, LLC, *f/k/a* Homecomings Financial Network, Inc. ("Homecomings") in the above-captioned matter.

2.     I am currently a Senior Litigation Analyst for Homecomings.  I have served in that position since May 2008.  I have personal knowledge of the information and matters set forth herein based on my role as a Senior Litigation Analyst.

3.     Homecomings owns and holds a promissory note (the "Note") secured by a mortgage (the "Mortgage") on property located at 1241 Thoreau Road in Lakewood, Ohio, 44107, and owned by Defendant Patricia J. McNerney *a/k/a* Patricia Joanne Kellicker ("Defendant").  *See* copies of the Note and Mortgage executed by Defendant, attached hereto as Exhibits A-1 and A-2, respectively.

4.     Defendant originally executed the Note and Mortgage in favor of Homecomings, including the recognition that Mortgage Electronic Registration Systems, Inc. would serve as nominee of Homecomings for the Mortgage.

5.     The Note and Mortgage were subsequently assigned and transferred to GMAC Mortgage, LLC, on December 31, 2007. *See* Assignment of Note & Mortgage, attached hereto as Exhibit A-3.

6.     The Note and Mortgage were again assigned and transferred from GMAC Mortgage, LLC, back to Homecomings, on October 14, 2008. A corrective Assignment was filed on October 29, 2008, to amend the date of the notary's signature. *See* Corrective Assignment of Note & Mortgage, attached hereto as Exhibit A-4.

7.     Accordingly, the current holder and owner of the Note and Mortgage is Homecomings.

8.     Throughout the life of the Note and Mortgage, GMAC Mortgage, LLC (fka GMAC Mortgage, Inc.) served as the servicer of Defendant's Note and Mortgage.

9.     Defendant's loan account is due for July 2003 and all succeeding payments, as reflected by Defendant's payment history. A copy of Defendant's payment history is attached hereto as Exhibit A-5.

10.     Because of Defendant's failure to make the payments required of her, as of October 1, 2009, Homecomings is owed $205,532.83, which amount includes outstanding principal in the amount of $107,632.79, plus interest thereon (calculated up to, but not including, October 31, 2009), outstanding escrow and impound funds, outstanding late charges, and other fees and costs, all of which continue to accrue. A copy of the payoff statement through October 31, 2009 is attached hereto as Exhibit A-6.

FURTHER, AFFIANT SAYETH NAUGHT

_Juan Aguirre_

SWORN TO BEFORE ME and subscribed in my presence this 14 day of October, 2009.

CASEDRAL LAJUAN ADAMS
MY COMMISSION EXPIRES
June 1, 2013

Casedral Lajuan Adams
NOTARY PUBLIC



9939

# NOTE

DECEMBER 27TH, 2002        BROOKLYN            OHIO
      [Date]                 [City]              [State]

1241 THOREAU ROAD, LAKEWOOD, OH 44107

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 108,000.00       (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is    HOMECOMINGS FINANCIAL NETWORK, INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    8.0000    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the FIRST day of each month beginning on FEBRUARY 1ST, 2003 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JANUARY 1ST, 2033 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 27725 STANSBURY BLVD, SUITE 375, FARMINGTON HILLS,
MI 48334                        or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $       792.47 .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**MULTISTATE FIXED RATE NOTE**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**

-5N (0207)       **Form 3200 1/01**
    VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3       Initials _PJM_       MFCD6054 - (11/02) / 041-571993-9



PLAINTIFFS 0003

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

PLAINTIFFS 0004

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Patricia Joanne McNerney_ (Seal)
PATRICIA JOANNE MCNERNEY   -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

WITHOUT RECOURSE
PAY TO THE ORDER OF
GMAC MORTGAGE CORPORATION

*[Sign Original Only]*

_Karen Schiefert_
KAREN SCHIEFERT
ASSISTANT SECRETARY
HOMECOMINGS FINANCIAL NETWORK INC.
A DELAWARE CORPORATION    Page 3 of 3

-5N (0207)                                                Form 3200 1/01
MFCD6054 - (11/02) / 041-571993-9

PLAINTIFFS 0005

Return To:
HOMECOMINGS FINANCIAL NETWORK, INC
ONE MERIDIAN CROSSING, STE 100
MINNEAPOLIS, MN 55423
Loan Number: ████993-9

CUYAHOGA COUNTY RECORDER
PATRICK J. OMALLEY
MORT 01/06/2003 11:04:42 AM
**200301060120**

────────[Space Above This Line For Recording Data]────────

# MORTGAGE

MIN ████████9391

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated   DECEMBER 27TH, 2002
together with all Riders to this document.
**(B) "Borrower"** is
PATRICIA JOANNE MCNERNEY, A SINGLE WOMAN

*AKA PATRICIA JOANNE KELLICKER*

Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

OHIO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS         Form 3036  1/01
MFOH7770 (9/02) / 041-571993-9
®
-6A(OH) (0201)
Page 1 of 15         Initials *pm*
VMP MORTGAGE FORMS - (800)521-7291

PLAINTIFFS 0029

3145547



(D) "Lender" is  HOMECOMINGS FINANCIAL NETWORK, INC.

Lender is a  CORPORATION
organized and existing under the laws of  DELAWARE
Lender's address is  27725 STANSBURY BLVD, SUITE 375
FARMINGTON HILLS, MI 48334
(E) "Note" means the promissory note signed by Borrower and dated DECEMBER 27TH, 2002
The Note states that Borrower owes Lender  ONE HUNDRED EIGHT THOUSAND AND NO/100

Dollars

(U.S. $  108,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than JANUARY 1ST, 2033           .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

MFOH7770 (9/02) / 041-571993-9
-6A(OH) (0201)                                 Page 2 of 15                    Initials _____              Form 3036  1/01

PLAINTIFFS 0030

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the
COUNTY                                        of CUYAHOGA                                        :
　　　　[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]
Legal description attached hereto and made a part hereof

Parcel ID Number:  312-28-084                    which currently has the address of
1241 THOREAU ROAD                                                              ,          [Street]
LAKEWOOD                                          [City], Ohio          44107      [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

MFOH7770 (9/02) / 041-571993-9
VMP-6A(OH) (0201)                    Page 3 of 15            Initials: _pm_            Form 3036  1/01

CUYAHOGA COUNTY RECORDER
200301060120   PAGE 3 of 16

PLAINTIFFS 0031

File No:201546

# EXHIBIT A - LEGAL DESCRIPTION

Situated in the City of Lakewood, County of Cuyahoga and State of Ohio:

And known as being Sublot No. 35 in the J.A. Zangerle Subdivision of part of original Rockport Township Section No. 21, as shown by the recorded plat in Volume 34 of Maps, Page 7 of the Cuyahoga County Records, and being 50 feet front on the easterly side of Thoreau Road and extending back of equal width 140 18/100 feet deep, as appears by said plat, be the same more or less, but subject to all legal highways.

1241 Thoreau Road, Lakewood, OH 44107

PLAINTIFFS 0032

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

CUYAHOGA COUNTY RECORDER
200301080120  PAGE 5 of 18

PLAINTIFFS 0033

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payments within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

CUYAHOGA COUNTY RECORDER
200301060120 PAGE 6 of 16

PLAINTIFFS 0034

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

CUYAHOGA COUNTY RECORDER
20030106020   PAGE 7 of 16

PLAINTIFFS 0035

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

MFOH7770 (9/02) / 041-571993-9

-6A(OH) (0201)

Page 7 of 15

Initials: _____

Form 3036  1/01

PLAINTIFFS 0036

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

CUYAHOGA COUNTY RECORDER

200301080120   PAGE 9 of 16

PLAINTIFFS 0037

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

MFOH7770 (9/02) / 041-571993-9
VMP-BA(OH) (0201)

Page 9 of 15

Initials: PM

Form 3036 1/01

CUYAHOGA COUNTY RECORDER
200301060120 PAGE 10 of 16

PLAINTIFFS 0038

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

MFOH7770 (9/02) / 041-571993-9

-6A(OH) (0201)

Page 10 of 15

Init.als *pm*

Form 3036 1/01

CUYAHOGA COUNTY RECORDER
200301080120 PAGE 11 of 18

PLAINTIFFS 0039

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

MFOH7770 (9/02) / 041-571993-9

-6A(OH) (0201)

Page 11 of 15

Initials: _PPM_

Form 3036   1/01

CUYAHOGA COUNTY RECORDER
200301060120   PAGE 12 of 18

PLAINTIFFS 0040

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

PLAINTIFFS 0041

NON UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Certain Other Advances.** In addition to any other sum secured hereby, this Security Instrument shall also secure the unpaid principal balance of, plus accrued interest on, any amount of money loaned, advanced or paid by Lender to or for the account and benefit of Borrower, after this Security Instrument is delivered to and filed with the Recorder's Office,
County, Ohio, for recording. Lender may make such advances in order to pay any real estate taxes and assessments, insurance premiums plus all other costs and expenses incurred in connection with the operation, protection or preservation of the Property, including to cure Borrower's defaults by making any such payments which Borrower should have paid as provided in this Security Instrument, it being intended by this Section 24 to acknowledge, affirm and comply with the provision of Section 5301.233 of the Revised Code of Ohio.

MFOH7770 (9/02) / 041-571993-9
6A(OH) (0201)

Page 13 of 15

Init zis· pm

Form 3036   1/01

CUYAHOGA COUNTY RECORDER
200301050120   PAGE 14 of 16

PLAINTIFFS 0042

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

*Theresa L. Dempsey*

_Patricia Joanne McNerney_ (Seal)
PATRICIA JOANNE MCNERNEY         -Borrower

_____

BRATA  TRZASKA

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

CUYAHOGA COUNTY RECORDER
200301080120   PAGE 15 of 16

PLAINTIFFS 0043

**STATE OF OHIO,** County ss: *Cuyahoga*

This instrument was acknowledged before me this 27TH DECEMBER of 2002                                     by

PATRICIA JOANNE MCNERNEY, A SINGLE WOMAN

My Commission Expires: 9-11-07

_____
Notary Public



**THERESA L.
DEMPSEY
NOTARY PUBLIC
STATE OF OHIO**
Recorded in
Cuyahoga Cty.
My Comm. Exp. 9/11/07

This instrument was prepared by
HomeComings Financial Network
27725 Stansbury Blvd, Suite 375
Farmington Hills, MI 48334

CUYAHOGA COUNTY RECORDER
PATRICK J. OMALLEY – 3
RELA 01/08/2008 02:56:24 PM

**200801080531**

## ASSIGNMENT OF NOTE AND MORTGAGE

KNOW ALL MEN BY THESE PRESENTS that for valuable consideration, the receipt of which is hereby acknowledged, Mortgage Electronic Registration Systems, Inc. as Nominee for Homecomings Financial Network, Inc., does hereby sell, assign, transfer and set over unto GMAC Mortgage LLC a certain Mortgage Deed bearing the date December 27, 2002, executed and delivered to it by Patricia Joanne McNerney, aka Patricia Joanne Kellicker, a single woman, concerning property described as follows to-wit:

See Schedule A attached hereto and made a part hereof

and recorded as Document Number 200301060120 of the Cuyahoga County Records on January 6, 2003, Permanent Parcel Number 312-28-084, together with the Promissory Note secured thereby and referred to therein; and all sums of money due and to become due thereon.

This Assignment is made without recourse or warranty, except that the undersigned hereby warrants that:

(a) No act or omission of the undersigned has impaired the validity and priority of said security instrument;

(b) The security instrument is a good and valid first lien and is prior to all mechanics' and materialmen's liens filed of record regardless of when such liens attach, and prior to all liens, encumbrances, or defects which may arise except such liens or other matters as have been approved by the assignee hereunder;

(c) The undersigned has a good right to assign the said security and credit instrument.

IN WITNESS WHEREOF, Mortgage Electronic Registration Systems, Inc., as Nominee for Homecomings Financial Network, Inc., has caused this Assignment of Note and Mortgage to be executed, for and on its behalf by its officials thereunto duly authorized and its corporate seal to be hereto affixed on December 31 , 2007.

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., as
Nominee for Homecomings Financial
Network, Inc.

BY: _Robin Callahan_
_____
Sign Name

Robin Callahan
Vice President
_____
Print Name

_____
Title

1

THE STATE OF _PA_ )
COUNTY OF _Montgomery_ )
)

_Robin Callahan_ BEFORE ME, a Notary Public in and for said county, personally appeared _____, to me known and known to me to be the persons who, as _Vice President_ _____, of Mortgage Electronic Registration Systems, Inc., as Nominee for Homecomings Financial Network, Inc., the corporation which executed the foregoing instrument, signed the same, and acknowledged to me that they did so sign said instrument in the name and upon behalf of said corporation as such officers; and the free and corporate act and deed of said corporation; that they were duly authorized thereunto by its Board of Directors; and that the seal affixed to said instrument is the corporate seal of said corporation. In Testimony Whereof, I have hereunto subscribed my name, and affixed my official seal, at _____ this _31_ day of December, 2007.

Notary Public

This instrument is prepared by:
Calfee, Halter & Griswold LLP
800 Superior Avenue, Suite 1400
Cleveland, OH 44114

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Nikole Shelton, Notary Public
Horsham Twp., Montgomery County
My Commission Expires Aug. 11, 2010
Member, Pennsylvania Association of Notaries

{00189116 DOC;1}

## SCHEDULE A

### Legal Description

Situated in the City of Lakewood, County of Cuyahoga and State of Ohio:

And known as being Sublot No. 35 in the J.A. Zangerle Subdivision of part of original Rockport Township Section No. 21, as shown by the recorded plat in Volume 34 of Maps, Page 7 of the Cuyahoga County Records, and being 50 feet front on the easterly side of Thoreau Road and extending back of equal width 140 18/100 feet deep, as appears by said plat, be the same more or less, but subject to all legal highways.

1241 Thoreau Road, Lakewood, OH 44107

## CORRECTIVE ASSIGNMENT OF NOTE AND MORTGAGE

This Assignment of Note and Mortgage (the "Assignment") is being filed to correct the Notary Clause in the Assignment of Note and Mortgage, filed on October 15, 2008 as Instrument No. 200810150557, which was dated October 13, 2008 instead of October 14, 2008.

KNOW ALL MEN BY THESE PRESENTS that for valuable consideration, the receipt of which is hereby acknowledged, GMAC Mortgage, LLC does hereby sell, assign, transfer and set over unto Homecomings Financial, LLC, a certain Mortgage Deed bearing the date December 27, 2002, executed and delivered to it by Patricia Joanne McNerney, aka Patricia Joanne Kellicker, a single woman, concerning property described as follows to-wit:

See Schedule A attached hereto and made a part hereof

and recorded as Document Number 200301060120 of the Cuyahoga County Records on January 6, 2003, Permanent Parcel Number 312-28-084, together with the Promissory Note secured thereby and referred to therein; and all sums of money due and to become due thereon.

This Assignment is made without recourse or warranty, except that the undersigned hereby warrants that:

(a)   No act or omission of the undersigned has impaired the validity and priority of said security instrument;

(b)   The security instrument is a good and valid first lien and is prior to all mechanics' and materialmen's liens filed of record regardless of when such liens attach, and prior to all liens, encumbrances, or defects which may arise except such liens or other matters as have been approved by the assignee hereunder;

(c)   The undersigned has a good right to assign the said security and credit instrument.

IN WITNESS WHEREOF, GMAC Mortgage, LLC, has caused this Corrective Assignment of Note and Mortgage to be executed, for and on its behalf by its officials thereunto duly authorized and its seal to be hereto affixed on October 28th, 2008.

GMAC MORTGAGE, LLC

CUYAHOGA COUNTY RECORDER
LILLIAN J GREENE - 3
RELA 10/29/2008 12:31:32 PM
**200810290272**

BY: _Janine Yamoah_
Sign Name

_Janine Yamoah_
Print Name

_Limited Signing Officer_
Title

{00411905.DOC;1 }                    1

THE STATE OF _Pennsylvania_ )
)
COUNTY OF _Montgomery_ )

      BEFORE ME, a Notary Public in and for said county, personally appeared _Janine Vampah_, to me known and known to me to be the persons who, as _Limited Signing Officer_, of GMAC Mortgage, LLC, the limited liability company which executed the foregoing instrument, signed the same, and acknowledged to me that they did so sign said instrument in the name and upon behalf of said limited liability company as such officers; and the free and official act and deed of said limited liability company; that they were duly authorized thereunto; and that the seal affixed to said instrument is the seal of said limited liability company.

      In Testimony Whereof, I have hereunto subscribed my name, and affixed my official seal, at _GMAC, Upper Dublin Twp, Pa_ this _27th_ day of October, 2008.

                        Notary Public

This instrument is prepared by:
Calfee, Halter & Griswold LLP
800 Superior Avenue, Suite 1400
Cleveland, OH 44114

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Donald T. Dempsey, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires Jan. 5, 2011
Member, Pennsylvania Association of Notaries

{00411905.DOC;1 }

## SCHEDULE A

Legal Description

Situated in the City of Lakewood, County of Cuyahoga and State of Ohio:

And known as being Sublot No. 35 in the J.A. Zangerle Subdivision of part of original Rockport Township Section No. 21, as shown by the recorded plat in Volume 34 of Maps, Page 7 of the Cuyahoga County Records, and being 50 feet front on the easterly side of Thoreau Road and extending back of equal width 140 18/100 feet deep, as appears by said plat, be the same more or less, but subject to all legal highways.

1241 Thoreau Road, Lakewood, OH 44107

```
=============================================================================================================================
        LOAN    :      9939  CUSTOMER NUMBER :      9366                              DATE RANGE: 01/01/03 - 12/31/03
        MORTGAGOR: PATRICIA MCNERNEY
        ADDRESS : 1241 THOREAU ROAD
                  LAKEWOOD, OH 44107
=============================================================================================================================
```

| POSTING DATE | DUE DATE | TRANSACTION DESCRIPTION | TRANSACTION AMOUNT | INTEREST | PRINCIPAL | UNPAID PRIN BALANCE | ESCROW | ESCROW BALANCE |
|---|---|---|---|---|---|---|---|---|
| | | BEGINNING BALANCES: | | | | 108,000.00 | | 523.62 |
| 02/17/03 | | FEE & CHRG ACRL | 39.62 | | | | | |
| 03/05/03 | 02/01/03 | MORTGAGE PYMT | 1,232.48 | 720.00 | 72.47 | 107,927.53 | 440.01 | 963.63 |
| | 02/01/03 | LATE CHRG | 39.62 | | | | | |
| 03/17/03 | | FEE & CHRG ACRL | 39.62 | | | | | |
| 03/20/03 | 02/27/03 | MORT INS PREM | -178.20 | | | | -178.20 | 785.43 |
| 04/02/03 | 01/27/03 | MORT INS PREM | -178.20 | | | | -178.20 | 607.23 |
| 04/16/03 | | FEE & CHRG ACRL | 39.62 | | | | | |
| 04/21/03 | 03/27/03 | MORT INS PREM | -178.20 | | | | -178.20 | 429.03 |
| 04/24/03 | | OVR/SHT PYT SUS | 1,083.00 | | | | | |
| 04/24/03 | | MISC RECEIPT | 79.24 | | | | | |
| | | MISC RECEIPT | -79.24 | | | | | |
| 05/01/03 | | FEE & CHRG ACRL | 15.00 | | | | | |
| 05/16/03 | | FEE & CHRG ACRL | 39.62 | | | | | |
| 05/20/03 | | MISC RECEIPT | -15.00 | | | | | |
| | | MISC RECEIPT | 15.00 | | | | | |
| 05/20/03 | | MISC RECEIPT | 39.62 | | | | | |
| | | MISC RECEIPT | -39.62 | | | | | |
| 05/27/03 | 03/01/03 | MORTGAGE PYMT | 1,232.48 | 719.52 | 72.95 | 107,854.58 | 440.01 | 869.04 |
| | 04/01/03 | MORTGAGE PYMT | 1,232.48 | 719.03 | 73.44 | 107,781.14 | 440.01 | 1,309.05 |
| | 05/01/03 | OVR/SHT PYT SUS | -949.14 | | | | | |
| | 05/01/03 | MORTGAGE PYMT | 1,232.48 | 718.54 | 73.93 | 107,707.21 | 440.01 | 1,749.06 |
| 05/29/03 | | FEE & CHRG ACRL | 15.00 | | | | | |
| 06/09/03 | | MISC DISB | -178.20 | | | | -178.20 | 1,570.86 |
| 06/12/03 | 06/20/03 | REGULAR TAX | -1,384.84 | | | | -1,384.84 | 186.02 |
| 06/16/03 | | FEE & CHRG ACRL | 39.62 | | | | | |
| 06/20/03 | 05/27/03 | MORT INS PREM | -178.20 | | | | -178.20 | 7.82 |
| 07/16/03 | | FEE & CHRG ACRL | 39.62 | | | | | |
| 07/31/03 | | FEE & CHRG ACRL | 15.00 | | | | | |
| 08/12/03 | | MISC DISB | -178.20 | | | | -178.20 | -170.38 |
| 08/12/03 | 06/01/03 | MORTGAGE PYMT | 1,232.48 | 718.05 | 74.42 | 107,632.79 | 440.01 | 269.63 |
| | 06/01/03 | RES LN PIR FEES | 30.00 | | | | | |
| | 06/01/03 | LATE CHRG | 79.24 | | | | | |
| | 06/01/03 | PART PAY SUSP | 8.28 | | | | | |
| 08/16/03 | | FEE & CHRG ACRL | 39.62 | | | | | |
| 08/20/03 | 07/27/03 | MORT INS PREM | -178.20 | | | | -178.20 | 91.43 |
| 08/22/03 | | MISC RECEIPT | -8.28 | | | | | |
| | | MISC RECEIPT | 8.28 | | | | | |
| 09/16/03 | | FEE & CHRG ACRL | 39.62 | | | | | |
| 10/16/03 | | FEE & CHRG ACRL | 39.62 | | | | | |
| 10/20/03 | 08/27/03 | MORT INS PREM | -178.20 | | | | -178.20 | -86.77 |
| 10/20/03 | 09/27/03 | MORT INS PREM | -178.20 | | | | -178.20 | -264.97 |
| 11/04/03 | | FEE/COST DISB | -105.00 | | | | | |
| 11/10/03 | | FEE & CHRG ACRL | 15.00 | | | | | |

0116/0116                                                                                    PAGE:        2
REPORT ID: CUS950S                            MORTGAGE LOAN SERVICING                    RUN DATE 01/01/04
REPORT DATE: 12/31/03               DETAIL YEAR-TO-DATE MORTGAGE LOAN HISTORY            RUN TIME 21:03:13
ROUTE TO: 50010 CUSTOMER SERVICE

==================================================================================================================
      LOAN      :       9939  CUSTOMER NUMBER :      9366                        DATE RANGE: 01/01/03 - 12/31/03
      MORTGAGOR: PATRICIA MCNERNEY
      ADDRESS  : 1241 THOREAU ROAD
                 LAKEWOOD, OH 44107

==================================================================================================================
| POSTING  | DUE   | TRANSACTION     | TRANSACTION |          |           | UNPAID PRIN |        |                |
| DATE     | DATE  | DESCRIPTION     | AMOUNT      | INTEREST | PRINCIPAL | BALANCE     | ESCROW | ESCROW BALANCE |
|----------|-------|-----------------|-------------|----------|-----------|-------------|--------|----------------|
| 11/17/03 |       | FEE & CHRG ACRL |       39.62 |          |           |             |           |             |
| 11/20/03 | 10/27/03 MORT INS PREM |     -178.20 |          |           |             | -178.20   | -443.17     |
| 11/24/03 |       | FEE/COST DISB   |     -816.00 |          |           |             |           |             |
| 11/24/03 |       | FEE/COST DISB   |     -550.00 |          |           |             |           |             |
| 12/04/03 |       | FEE & CHRG ACRL |       15.00 |          |           |             |           |             |
| 12/16/03 |       | FEE & CHRG ACRL |       39.62 |          |           |             |           |             |
| 12/16/03 | 01/02/04 PREM DISB |          -393.00 |          |           |             | -393.00   | -836.17     |
| 12/22/03 | 11/27/03 MORT INS PREM |     -178.20 |          |           |             | -178.20   | -1,014.37   |
*****************************************************************************************************************

UNPAID PRIN BALANCE:      107,632.79  ESCROW BAL:    -1,014.37 LATE CHARGE BAL:      189.82 TOTAL SUSPENSE:      0.00
TOTAL TAXES PAID:      1,384.84 TOTAL INTEREST PAID:      3,595.14 POINTS PAID:      0.00 OVRPD INT RFUND:      0.00
*****************************************************************************************************************

0116/0116
REPORT ID:  CUS950S
REPORT DATE: 02/09/04
ROUTE TO: 50010 CUSTOMER SERVICE

MORTGAGE LOAN SERVICING
DETAIL YEAR-TO-DATE MORTGAGE LOAN HISTORY

PAGE:        1
RUN DATE  02/09/04
RUN TIME  12:39:54

LOAN      :        6939  CUSTOMER NUMBER :        9366                          DATE RANGE: 01/01/04 - 02/09/04
MORTGAGOR: PATRICIA MCNERNEY
ADDRESS  : 1241 THOREAU ROAD
           LAKEWOOD, OH 44107

| POSTING DATE | DUE DATE | TRANSACTION DESCRIPTION | TRANSACTION AMOUNT | INTEREST | PRINCIPAL | UNPAID PRIN BALANCE | ESCROW | ESCROW BALANCE |
|--------|--------|--------|--------|--------|--------|--------|--------|--------|
| | | BEGINNING BALANCES: | | | | 107,632.79 | | -1,014.37 |
| 01/05/04 | 01/20/04 | REGULAR TAX | -1,543.40 | | | | -1,543.40 | -2,557.77 |
| 01/08/04 | | FEE & CHRG ACRL | 15.00 | | | | | |
| 01/16/04 | | FEE & CHRG ACRL | 39.62 | | | | | |
| 01/20/04 | 12/27/03 | MORT INS PREM | -178.20 | | | | -178.20 | -2,735.97 |
| 01/28/04 | | FEE & CHRG ACRL | 15.00 | | | | | |

UNPAID PRIN BALANCE:      107,632.79   ESCROW BAL:      -2,735.97 LATE CHARGE BAL:      229.44 TOTAL SUSPENSE:      0.00
TOTAL TAXES PAID:       1,543.40 TOTAL INTEREST PAID:       0.00 POINTS PAID:      0.00 OVRPD INT RFUND:      0.00

2004 HISTORY STATEMENT OF MORTGAGE ACCOUNT

GMAC MORTGAGE CORPORATION
PO BOX 780
WATERLOO  IA 50704-0780

07/27/06 PAGE   1

PATRICIA MCNERNEY
1241 THOREAU ROAD
LAKEWOOD            OH 44107

LOAN TYPE 8-Q  P.M.I.
ACCOUNT NUM      9939

### 2004 DETAIL BY TRANSACTION

| TRANSACTION DESCRIPTION | TRANSACTION AMOUNT | LAST PAID | POST DATE | PRINCIPAL PAID | INTEREST PAID | ESCROW PAID | CR LIFE/ DISAB | FEE/ LT CHRG/ FEES | PRINCIPAL BAL AFTER TRAN | ESCROW BAL AFTER TRAN | UNAPP FUNDS AFTER TRAN |
|---|---|---|---|---|---|---|---|---|---|---|---|
| TAX DISB | | 06/03 | 01/05 | | | -1543.40 | | | 107,632.79 | -2,557.77 | |
| ESC DISB | | 06/03 | 01/20 | | | -178.20 | | | 107,632.79 | -2,735.97 | |
| FEE BILLED | 15.00 | 06/03 | 02/09 | | | | | 15.00 | 107,632.79 | -2,735.97 | |
| FEE BILLED | 15.00 | 06/03 | 02/09 | | | | | 15.00 | 107,632.79 | -2,735.97 | |
| FEE WAIVED | -15.00 | 06/03 | 02/11 | | | | | -15.00 | 107,632.79 | -2,735.97 | |
| FEE WAIVED | -15.00 | 06/03 | 02/11 | | | | | -15.00 | 107,632.79 | -2,735.97 | |
| FEE BILLED | 15.00 | 06/03 | 02/24 | | | | | 15.00 | 107,632.79 | -2,735.97 | |
| FEE BILLED | 150.00 | 06/03 | 03/02 | | | | | 150.00 | 107,632.79 | -2,735.97 | |
| FEE BILLED | 350.00 | 06/03 | 03/02 | | | | | 350.00 | 107,632.79 | -2,735.97 | |
| FEE BILLED | 35.00 | 06/03 | 03/02 | | | | | 35.00 | 107,632.79 | -2,735.97 | |
| FEE BILLED | 115.00 | 06/03 | 03/02 | | | | | 115.00 | 107,632.79 | -2,735.97 | |
| FEE BILLED | 15.00 | 06/03 | 03/23 | | | | | 15.00 | 107,632.79 | -2,735.97 | |
| FEE BILLED | 15.00 | 06/03 | 05/10 | | | | | 15.00 | 107,632.79 | -2,735.97 | |
| FEE BILLED | 15.00 | 06/03 | 05/25 | | | | | 15.00 | 107,632.79 | -2,735.97 | |
| TAX DISB | | 06/03 | 06/14 | | | -1543.40 | | | 107,632.79 | -4,279.37 | |
| FEE BILLED | 15.00 | 06/03 | 06/24 | | | | | 15.00 | 107,632.79 | -4,279.37 | |
| ESC DISB | | 06/03 | 07/23 | | | -1069.20 | | | 107,632.79 | -5,348.57 | |
| FEE BILLED | 15.00 | 06/03 | 07/27 | | | | | 15.00 | 107,632.79 | -5,348.57 | |
| ESC DISB | | 06/03 | 08/12 | | | -178.20 | | | 107,632.79 | -5,526.77 | |
| FEE BILLED | 15.00 | 06/03 | 08/25 | | | | | 15.00 | 107,632.79 | -5,526.77 | |
| ESC DISB | | 06/03 | 09/09 | | | -178.20 | | | 107,632.79 | -5,704.97 | |
| FEE BILLED | 95.00 | 06/03 | 09/15 | | | | | 95.00 | 107,632.79 | -5,704.97 | |
| FEE BILLED | 15.00 | 06/03 | 09/23 | | | | | 15.00 | 107,632.79 | -5,704.97 | |
| ESC DISB | | 06/03 | 10/21 | | | -178.20 | | | 107,632.79 | -5,883.17 | |
| FEE BILLED | 15.00 | 06/03 | 10/29 | | | | | 15.00 | 107,632.79 | -5,883.17 | |
| ESC DISB | | 06/03 | 11/18 | | | -178.20 | | | 107,632.79 | -6,061.37 | |
| FEE BILLED | 15.00 | 06/03 | 11/24 | | | | | 15.00 | 107,632.79 | -6,061.37 | |
| ESC DISB | | 06/03 | 12/09 | | | -178.20 | | | 107,632.79 | -6,239.57 | |
| ESC DISB | | 06/03 | 12/16 | | | -413.00 | | | 107,632.79 | -6,652.57 | |
| FEE BILLED | 15.00 | 06/03 | 12/29 | | | | | 15.00 | 107,632.79 | -6,652.57 | |

2004 DETAIL BY TRANSACTION

| TRANSACTION DESCRIPTION | TRANSACTION AMOUNT | LAST PAID | POST DATE | PRINCIPAL PAID | INTEREST PAID | ESCROW PAID | CR LIFE/ DISAB | LT CHRG/ FEES | PRINCIPAL BAL AFTER TRAN | ESCROW BAL AFTER TRAN | UNAPP FUNDS AFTER TRAN |
|---|---|---|---|---|---|---|---|---|---|---|---|

SUMMARY TOTALS            ▌9939

| | |
|---|---|
| PRINCIPAL BALANCE START OF PERIOD | 107,632.79 |
| PRINCIPAL PAID DURING PERIOD | 0.00 |
| PRINCIPAL BALANCE END OF PERIOD | 107,632.79 |

| | |
|---|---|
| P & I PAYMENT | 792.47 |
| ESCROW PAYMENT | 440.01 |

| | |
|---|---|
| ESCROW BALANCE START OF PERIOD | -1,014.37 |
| ESCROW PAID DURING PERIOD | 0.00 |
| ESCROW DISBURSEMENTS | -5,638.20 |
| ESCROW BALANCE END OF PERIOD | -6,652.57 |

| | |
|---|---|
| TOTAL PAYMENT | 1,232.48 |
| ACCUM LATE CHRG | 427.54 |

| | |
|---|---|
| REFUND OF OVERPAID INTEREST | 0.00 |
| INTEREST REPORTABLE DURING PERIOD | 0.00 |
| PROPERTY TAXES PAID DURING PERIOD | 3,086.80 |
| POINTS PAID | 0.00 |

Entity002Org50002

2005 HISTORY STATEMENT OF MORTGAGE ACCOUNT

GMAC MORTGAGE CORPORATION
PO BOX 780
WATERLOO   IA 50704-0780


PATRICIA MCNERNEY
1241 THOREAU ROAD
LAKEWOOD          OH 44107

LOAN TYPE 8-0  P.M.I.
ACCOUNT NUM ▮▮▮▮9939

2005 DETAIL BY TRANSACTION

| TRANSACTION DESCRIPTION | TRANSACTION AMOUNT | LAST PAID | POST DATE | PRINCIPAL PAID | INTEREST PAID | ESCROW PAID | CR LIFE/ DISAB | LT CHRG/ FEES | PRINCIPAL BAL AFTER TRAN | ESCROW BAL AFTER TRAN | UNAPP FUNDS AFTER TRAN |
|---|---|---|---|---|---|---|---|---|---|---|---|
| TAX DISB | | 06/03 | 01/05 | | | -1671.29 | | | 107,632.79 | -8,323.86 | |
| ESC DISB | | 06/03 | 01/13 | | | -178.20 | | | 107,632.79 | -8,502.06 | |
| FEE BILLED | 15.00 | 06/03 | 01/25 | | | | | 15.00 | 107,632.79 | -8,502.06 | |
| ESC DISB | | 06/03 | 02/03 | | | -178.20 | | | 107,632.79 | -8,680.26 | |
| FEE BILLED | 15.00 | 06/03 | 02/28 | | | | | 15.00 | 107,632.79 | -8,680.26 | |
| ESC DISB | | 06/03 | 03/03 | | | -178.20 | | | 107,632.79 | -8,858.46 | |
| ESC DISB | | 06/03 | 04/14 | | | -178.20 | | | 107,632.79 | -9,036.66 | |
| FEE BILLED | 15.00 | 06/03 | 04/27 | | | | | 15.00 | 107,632.79 | -9,036.66 | |
| ESC DISB | | 06/03 | 05/05 | | | -178.20 | | | 107,632.79 | -9,214.86 | |
| FEE BILLED | 15.00 | 06/03 | 05/24 | | | | | 15.00 | 107,632.79 | -9,214.86 | |
| TAX DISB | | 06/03 | 06/13 | | | -1671.29 | | | 107,632.79 | -10,886.15 | |
| ESC DISB | | 06/03 | 06/16 | | | -178.20 | | | 107,632.79 | -11,064.35 | |
| FEE BILLED | 15.00 | 06/03 | 06/23 | | | | | 15.00 | 107,632.79 | -11,064.35 | |
| ESC DISB | | 06/03 | 07/07 | | | -178.20 | | | 107,632.79 | -11,242.55 | |
| FEE BILLED | 15.00 | 06/03 | 07/27 | | | | | 15.00 | 107,632.79 | -11,242.55 | |
| ESC DISB | | 06/03 | 08/04 | | | -178.20 | | | 107,632.79 | -11,420.75 | |
| FEE BILLED | 15.00 | 06/03 | 08/23 | | | | | 15.00 | 107,632.79 | -11,420.75 | |
| ESC DISB | | 06/03 | 09/08 | | | -178.20 | | | 107,632.79 | -11,598.95 | |
| FEE BILLED | 15.00 | 06/03 | 09/23 | | | | | 15.00 | 107,632.79 | -11,598.95 | |
| ESC DISB | | 06/03 | 10/06 | | | -178.20 | | | 107,632.79 | -11,777.15 | |
| ESC DISB | | 06/03 | 11/10 | | | -178.20 | | | 107,632.79 | -11,955.35 | |
| FEE BILLED | 15.00 | 06/03 | 11/24 | | | | | 15.00 | 107,632.79 | -11,955.35 | |
| ESC DISB | | 06/03 | 12/08 | | | -178.20 | | | 107,632.79 | -12,133.55 | |
| ESC DISB | | 06/03 | 12/16 | | | -491.00 | | | 107,632.79 | -12,624.55 | |
| FEE BILLED | 15.00 | 06/03 | 12/20 | | | | | 15.00 | 107,632.79 | -12,624.55 | |

SUMMARY TOTALS

| | | |
|---|---|---|
| PRINCIPAL BALANCE START OF PERIOD | 107,632.79 | |
| PRINCIPAL PAID DURING PERIOD | 0.00 | |
| PRINCIPAL BALANCE END OF PERIOD | 107,632.79 | |

| | | | | |
|---|---|---|---|---|
| ESCROW | BALANCE START OF PERIOD | -6,652.57 | | |
| ESCROW | PAID DURING PERIOD | 0.00 | | |
| ESCROW | DISBURSEMENTS | -5,971.98 | | |
| ESCROW | BALANCE END OF PERIOD | -12,624.55 | | |

| | | |
|---|---|---|
| REFUND | OF OVERPAID INTEREST | 0.00 |
| INTEREST | REPORTABLE DURING PERIOD | 0.00 |
| PROPERTY | TAXES PAID DURING PERIOD | 3,342.58 |
| POINTS PAID | | 0.00 |

| | |
|---|---|
| P & I PAYMENT | 792.47 |
| ESCROW PAYMENT | 440.01 |

| | |
|---|---|
| TOTAL PAYMENT | 1,232.48 |
| ACCUM LATE CHRG | 902.98 |

Entity002Org50002

2006 HISTORY STATEMENT OF MORTGAGE ACCOUNT

GMAC MORTGAGE, LLC
PO. BOX 780
WATERLOO, IA 50704-0780

PATRICIA MCNERNEY
1241 THOREAU ROAD
LAKEWOOD          OH 44107

LOAN TYPE 8-0   PMI
ACCOUNT NUM 939

### 2006 DETAIL BY TRANSACTION

| TRANSACTION DESCRIPTION | TRANSACTION AMOUNT | LAST PAID | POST DATE | PRINCIPAL PAID | INTEREST PAID | ESCROW PAID | CR LIFE/ DISAB | LT CHRG/ FEES | PRINCIPAL BAL AFTER TRAN | ESCROW BAL AFTER TRAN | UNAPP FUNDS AFTER TRAN |
|---|---|---|---|---|---|---|---|---|---|---|---|
| TAX DISB | | 06/03 | 01/03 | | | -1687.41 | | | 107,632.79 | -14,311.96 | |
| ESC DISB | | 06/03 | 01/12 | | | -178.20 | | | 107,632.79 | -14,490.16 | |
| FEE BILLED | 15.00 | 06/03 | 02/07 | | | | | 15.00 | 107,632.79 | -14,490.16 | |
| ESC DISB | ' | 06/03 | 02/09 | | | -178.20 | | | 107,632.79 | -14,668.36 | |
| FEE BILLED | 15.00 | 06/03 | 03/07 | | | | | 15.00 | 107,632.79 | -14,668.36 | |
| ESC DISB | | 06/03 | 03/09 | | | -178.20 | | | 107,632.79 | -14,846.56 | |
| ESC DISB | | 06/03 | 04/06 | | | -178.20 | | | 107,632.79 | -15,024.76 | |
| FEE BILLED | 15.00 | 06/03 | 04/10 | | | | | 15.00 | 107,632.79 | -15,024.76 | |
| FEE BILLED | 15.00 | 06/03 | 05/06 | | | | | 15.00 | 107,632.79 | -15,024.76 | |
| ESC DISB | | 06/03 | 05/11 | | | -178.20 | | | 107,632.79 | -15,202.96 | |
| FEE BILLED | 100.00 | 06/03 | 05/30 | | | | | 100.00 | 107,632.79 | -15,202.96 | |
| ESC DISB | | 06/03 | 06/08 | | | -178.20 | | | 107,632.79 | -15,381.16 | |
| TAX DISB | | 06/03 | 06/16 | | | -1687.41 | | | 107,632.79 | -17,068.57 | |
| FEE WAIVED | -100.00 | 06/03 | 06/19 | | | | | -100.00 | 107,632.79 | -17,068.57 | |
| FEE BILLED | 15.00 | 06/03 | 06/19 | | | | | 15.00 | 107,632.79 | -17,068.57 | |
| ESC DISB | | 06/03 | 07/13 | | | -178.20 | | | 107,632.79 | -17,246.77 | |
| FEE BILLED | 15.00 | 06/03 | 07/18 | | | | | 15.00 | 107,632.79 | -17,246.77 | |
| ESC DISB | | 06/03 | 08/03 | | | -178.20 | | | 107,632.79 | -17,424.97 | |
| FEE BILLED | 15.00 | 06/03 | 08/22 | | | | | 15.00 | 107,632.79 | -17,424.97 | |
| FEE BILLED | 20.00 | 06/03 | 08/24 | | | | | 20.00 | 107,632.79 | -17,424.97 | |
| ESC DISB | | 06/03 | 09/07 | | | -178.20 | | | 107,632.79 | -17,603.17 | |
| FEE BILLED | 15.00 | 06/03 | 09/13 | | | | | 15.00 | 107,632.79 | -17,603.17 | |
| ESC DISB | | 06/03 | 10/12 | | | -178.20 | | | 107,632.79 | -17,781.37 | |
| FEE BILLED | 15.00 | 06/03 | 10/17 | | | | | 15.00 | 107,632.79 | -17,781.37 | |
| ESC DISB | | 06/03 | 11/09 | | | -178.20 | | | 107,632.79 | -17,959.57 | |
| FEE BILLED | 15.00 | 06/03 | 11/22 | | | | | 15.00 | 107,632.79 | -17,959.57 | |
| ESC DISB | | 06/03 | 12/07 | | | -178.20 | | | 107,632.79 | -18,137.77 | |
| ESC DISB | | 06/03 | 12/18 | | | -524.00 | | | 107,632.79 | -18,661.77 | |
| FEE BILLED | 100.00 | 06/03 | 12/21 | | | | | 100.00 | 107,632.79 | -18,661.77 | |

SUMMARY TOTALS

| | | | | |
|---|---|---|---|---|
| PRINCIPAL BALANCE START OF PERIOD | 107,632.79 | P & I PAYMENT | 792.47 |
| PRINCIPAL PAID DURING PERIOD | 0.00 | ESCROW PAYMENT | 440.01 |
| PRINCIPAL BALANCE END OF PERIOD | 107,632.79 | | |

| | | | | |
|---|---|---|---|---|
| ESCROW | BALANCE START OF PERIOD | -12,624.55 | TOTAL PAYMENT | 1,232.48 |
| ESCROW | PAID DURING PERIOD | 0.00 | ACCUM LATE CHRG | 1,219.94 |
| ESCROW | DISBURSEMENTS | -6,037.22 | | |
| ESCROW | BALANCE END OF PERIOD | -18,661.77 | | |

| | | |
|---|---|---|
| REFUND | OF OVERPAID INTEREST | 0.00 |
| INTEREST | REPORTABLE DURING PERIOD | 0.00 |
| PROPERTY | TAXES PAID DURING PERIOD | 3,374.82 |
| POINTS PAID | | 0.00 |

Entity002Org50002

```
GMAC Mortgage, LLC                                      PAGE      1
PO Box 780                                              DATE 10/09/09

Waterloo              IA 50704-0780
                                       HISTORY FOR ACCOUNT        9939

        --------- MAIL -------------------- --------- PROPERTY ----------------


      PATRICIA MCNERNEY

      1241 THOREAU ROAD                     1241 THOREAU ROAD

      LAKEWOOD           OH 44107   LAKEWOOD           OH 44107

------ DATES ------   ---- CURRENT BALANCES -----   ------- UNCOLLECTED -------
PAID TO    06/01/03  PRINCIPAL     107632.79  LATE CHARGES     -2487.78
NEXT DUE   07/01/03  ESCROW        -36641.79  OPTIONAL INS         0.00
LAST PMT   08/08/03  UNAPPLIED FUND      0.00 INTEREST             0.00
AUDIT DT   01/06/03  UNAPPLIED CODES          FEES             -3239.75
                     BUYDOWN   FUND     0.00  ------ YEAR TO DATE -------
   LAST ACTIVITY     BUYDOWN   CODE           INTEREST             0.00
      10/08/09                                TAXES             3649.04
-----------------------------------------------------------------------------


POST  TRN  DUE   TRANSACTION    PRINCIPAL    INTEREST       ESCROW
DATE  CDE  DATE  AMOUNT         PAID         PAID           PAID
------ --- ------ --------------- ------------- ------------- -------------
101206 E40 060103      -178.20  PAYEE = 1270.01001      .00      -178.20
101706 UI  060103          .00         .00         .00          .00
             OPT PREMIUMS            .00  LATE CHARGE PYMT    -39.62*
101706 AA  060103          .00         .00         .00          .00
             OPT PREMIUMS            .00  LATE CHARGE PYMT    -39.62*
101706 FB  060103        15.00  11 PROP INSPECTION FEE
110906 E40 060103      -178.20  PAYEE = 1270.01001      .00      -178.20
112006 UI  060103          .00         .00         .00          .00
             OPT PREMIUMS            .00  LATE CHARGE PYMT    -39.62*
112006 AA  060103          .00         .00         .00          .00
             OPT PREMIUMS            .00  LATE CHARGE PYMT    -39.62*
112206 FB  060103        15.00  11 PROP INSPECTION FEE
120706 E40 060103      -178.20  PAYEE = 1270.01001      .00      -178.20
121806 UI  060103          .00         .00         .00          .00
             OPT PREMIUMS            .00  LATE CHARGE PYMT    -39.62*
121806 AA  060103          .00         .00         .00          .00
             OPT PREMIUMS            .00  LATE CHARGE PYMT    -39.62*
121806 E20 060103      -524.00  PAYEE = 1600.00082      .00      -524.00
122106 FB  060103       100.00  164 CORP ADV 3 DRM
122906 RT  060103     18661.77         .00         .00     18661.77
122906 ITR 060103  OLD INV 50120 10003 P-BAL    107632.79 INT        .00
                   NEW INV 51410 10003  PERCENT OWNED   .0000 ACTION CD 000
122906 PT  060103    -18661.77         .00         .00    -18661.77
010407 E90 060103     -1790.39  PAYEE = 0018.00000      .00     -1790.39
010407 E40 060103      -178.20  PAYEE = 1270.01001      .00      -178.20
011807 UI  060103          .00         .00         .00          .00
             OPT PREMIUMS            .00  LATE CHARGE PYMT    -39.62*


      FCL 1884
```

```
HISTORY FOR ACCOUNT      9939                           PAGE      2
                                                        DATE 10/09/09


        --------- MAIL -------------------- --------- PROPERTY ----------------


        PATRICIA MCNERNEY

        1241 THOREAU ROAD                  1241 THOREAU ROAD

        LAKEWOOD            OH 44107    LAKEWOOD            OH 44107

------------------------------------------------------------------------------
POST   TRN  DUE    TRANSACTION    PRINCIPAL    INTEREST      ESCROW
DATE   CDE  DATE   AMOUNT         PAID         PAID          PAID
------ ---  ------ -------------- ------------- ------------- -------------
011807 AA  060103            .00          .00           .00           .00
           OPT PREMIUMS                    .00 LATE CHARGE PYMT   -39.62*
011907 FB  060103         15.00 11 PROP INSPECTION FEE
020807 E40 060103      -178.20 PAYEE = 1270.01001        .00      -178.20
021307 FB  060103         11.25 11 PROP INSPECTION FEE
022007 UI  060103            .00          .00           .00           .00
           OPT PREMIUMS                    .00 LATE CHARGE PYMT   -39.62*
022007 AA  060103            .00          .00           .00           .00
           OPT PREMIUMS                    .00 LATE CHARGE PYMT   -39.62*
031507 E40 060103      -178.20 PAYEE = 1270.01001        .00      -178.20
031607 FB  060103         11.25 11 PROP INSPECTION FEE
031907 UI  060103            .00          .00           .00           .00
           OPT PREMIUMS                    .00 LATE CHARGE PYMT   -39.62*
031907 AA  060103            .00          .00           .00           .00
           OPT PREMIUMS                    .00 LATE CHARGE PYMT   -39.62*
041207 E40 060103      -178.20 PAYEE = 1270.01001        .00      -178.20
041707 UI  060103            .00          .00           .00           .00
           OPT PREMIUMS                    .00 LATE CHARGE PYMT   -39.62*
041707 AA  060103            .00          .00           .00           .00
           OPT PREMIUMS                    .00 LATE CHARGE PYMT   -39.62*
041907 FB  060103         11.25 11 PROP INSPECTION FEE
051007 E40 060103      -178.20 PAYEE = 1270.01001        .00      -178.20
051507 FB  060103         11.25 11 PROP INSPECTION FEE
051707 UI  060103            .00          .00           .00           .00
           OPT PREMIUMS                    .00 LATE CHARGE PYMT   -39.62*
051707 AA  060103            .00          .00           .00           .00
           OPT PREMIUMS                    .00 LATE CHARGE PYMT   -39.62*
060707 E40 060103      -178.20 PAYEE = 1270.01001        .00      -178.20
061807 UI  060103            .00          .00           .00           .00
           OPT PREMIUMS                    .00 LATE CHARGE PYMT   -39.62*
061807 AA  060103            .00          .00           .00           .00
           OPT PREMIUMS                    .00 LATE CHARGE PYMT   -39.62*
061807 E90 060103     -1790.39 PAYEE = 0018.00000        .00     -1790.39
061907 FB  060103         11.25 11 PROP INSPECTION FEE
070507 E40 060103      -178.20 PAYEE = 1270.01001        .00      -178.20
071707 UI  060103            .00          .00           .00           .00
           OPT PREMIUMS                    .00 LATE CHARGE PYMT   -39.62*


    FCL 1884
```

HISTORY FOR ACCOUNT 9939

PAGE    3
DATE 10/09/09

--------- MAIL -------------------- --------- PROPERTY ----------------

PATRICIA MCNERNEY

1241 THOREAU ROAD                    1241 THOREAU ROAD

LAKEWOOD          OH 44107    LAKEWOOD          OH 44107

------------------------------------------------------------------------

| POST DATE | TRN CDE | DUE DATE | TRANSACTION AMOUNT | PRINCIPAL PAID | INTEREST PAID | ESCROW PAID |
|------|-----|--------|----------------|------------|-----------|----------|
| 071707 | AA | 060103 | .00 | .00 | .00 | .00 |
| | | | OPT PREMIUMS | .00 | LATE CHARGE PYMT | -39.62* |
| 071807 | FB | 060103 | 11.25 11 PROP INSPECTION FEE | | | |
| 080907 | E40 | 060103 | -178.20 PAYEE = 1270.01001 | | .00 | -178.20 |
| 081307 | FB | 060103 | 11.25 11 PROP INSPECTION FEE | | | |
| 081707 | UI | 060103 | .00 | .00 | .00 | .00 |
| | | | OPT PREMIUMS | .00 | LATE CHARGE PYMT | -39.62* |
| 081707 | AA | 060103 | .00 | .00 | .00 | .00 |
| | | | OPT PREMIUMS | .00 | LATE CHARGE PYMT | -39.62* |
| 082307 | RT | 060103 | 23668.15 | .00 | .00 | 23668.15 |
| 082307 | ITR | 060103 | OLD INV 51410 10003 P-BAL | 107632.79 INT | | .00 |
| | | | NEW INV 51439 10003 PERCENT OWNED | .0000 ACTION CD 000 | | |
| 082307 | PT | 060103 | -23668.15 | .00 | .00 | -23668.15 |
| 090607 | E40 | 060103 | -178.20 PAYEE = 1270.01001 | | .00 | -178.20 |
| 091107 | FB | 060103 | 11.25 11 PROP INSPECTION FEE | | | |
| 091807 | UI | 060103 | .00 | .00 | .00 | .00 |
| | | | OPT PREMIUMS | .00 | LATE CHARGE PYMT | -39.62* |
| 091807 | AA | 060103 | .00 | .00 | .00 | .00 |
| | | | OPT PREMIUMS | .00 | LATE CHARGE PYMT | -39.62* |
| 100407 | E40 | 060103 | -178.20 PAYEE = 1270.01001 | | .00 | -178.20 |
| 102407 | FB | 060103 | 11.25 11 PROP INSPECTION FEE | | | |
| 110807 | E40 | 060103 | -178.20 PAYEE = 1270.01001 | | .00 | -178.20 |
| 111907 | FB | 060103 | 11.25 11 PROP INSPECTION FEE | | | |
| 112007 | UI | 060103 | .00 | .00 | .00 | .00 |
| | | | OPT PREMIUMS | .00 | LATE CHARGE PYMT | -39.62* |
| 112007 | AA | 060103 | .00 | .00 | .00 | .00 |
| | | | OPT PREMIUMS | .00 | LATE CHARGE PYMT | -39.62* |
| 120607 | E40 | 060103 | -178.20 PAYEE = 1270.01001 | | .00 | -178.20 |
| 121807 | E20 | 060103 | -535.00 PAYEE = 1600.00082 | | .00 | -535.00 |
| 121907 | UI | 060103 | .00 | .00 | .00 | .00 |
| | | | OPT PREMIUMS | .00 | LATE CHARGE PYMT | -39.62* |
| 121907 | AA | 060103 | .00 | .00 | .00 | .00 |
| | | | OPT PREMIUMS | .00 | LATE CHARGE PYMT | -39.62* |
| 122407 | FB | 060103 | 11.25 11 PROP INSPECTION FEE | | | |
| 122707 | RT | 060103 | 24915.95 | .00 | .00 | 24915.95 |
| 122707 | ITR | 060103 | OLD INV 51439 10003 P-BAL | 107632.79 INT | | .00 |
| | | | NEW INV 51839 10003 PERCENT OWNED | .0000 ACTION CD 000 | | |

FCL 1884

```
HISTORY FOR ACCOUNT       9939                    PAGE      4
                                                  DATE 10/09/09
```



```
        --------- MAIL -------------------- --------- PROPERTY ----------------

        PATRICIA MCNERNEY

        1241 THOREAU ROAD                     1241 THOREAU ROAD

        LAKEWOOD            OH 44107    LAKEWOOD          OH 44107

-------------------------------------------------------------------------------
POST  TRN  DUE   TRANSACTION    PRINCIPAL    INTEREST      ESCROW
DATE  CDE  DATE   AMOUNT         PAID         PAID          PAID
----- ---  ------ --------------- ------------- ------------- -------------
122707 PT  060103      -24915.95         .00           .00   -24915.95
010408 E90 060103    -1798.20  PAYEE = 0018.00000      .00    -1798.20
011008 E40 060103     -178.20  PAYEE = 1270.01001      .00     -178.20
011708 UI  060103           .00          .00           .00         .00
                OPT PREMIUMS              .00 LATE CHARGE PYMT   -39.62*
011708 AA  060103           .00          .00           .00         .00
                OPT PREMIUMS              .00 LATE CHARGE PYMT   -39.62*
012208 FB  060103          11.25  11 PROP INSPECTION FEE
020708 E40 060103     -178.20  PAYEE = 1270.01001      .00     -178.20
021308 RT  060103       27070.55         .00           .00    27070.55
021308 ITR 060103  OLD INV 51839 10003 P-BAL     107632.79 INT         .00
                NEW INV 40753    200  PERCENT OWNED    .0000 ACTION CD 000
021308 PT  060103      -27070.55         .00           .00   -27070.55
021808 UI  060103           .00          .00           .00         .00
                OPT PREMIUMS              .00 LATE CHARGE PYMT   -39.62*
021808 AA  060103           .00          .00           .00         .00
                OPT PREMIUMS              .00 LATE CHARGE PYMT   -39.62*
021908 FB  060103          11.25  11 PROP INSPECTION FEE
030608 E40 060103     -178.20  PAYEE = 1270.01001      .00     -178.20
031808 UI  060103           .00          .00           .00         .00
                OPT PREMIUMS              .00 LATE CHARGE PYMT   -39.62*
031808 AA  060103           .00          .00           .00         .00
                OPT PREMIUMS              .00 LATE CHARGE PYMT   -39.62*
032108 FB  060103          11.25  11 PROP INSPECTION FEE
040108 RT  060103       27248.75         .00           .00    27248.75
040108 ITR 060103  OLD INV 40753  200 P-BAL     107632.79 INT          .00
                NEW INV 42388      1  PERCENT OWNED    .0000 ACTION CD 000
040108 PT  060103      -27248.75         .00           .00   -27248.75
041708 UI  060103           .00          .00           .00         .00
                OPT PREMIUMS              .00 LATE CHARGE PYMT   -39.62*
041708 AA  060103           .00          .00           .00         .00
                OPT PREMIUMS              .00 LATE CHARGE PYMT   -39.62*
042108 FB  060103          11.25  11 PROP INSPECTION FEE
050108 E40 060103     -178.20  PAYEE = 1270.01001      .00     -178.20
051908 FB  060103          20.00  28 PAYOFF STATEMENT
051908 UI  060103           .00          .00           .00         .00
                OPT PREMIUMS              .00 LATE CHARGE PYMT   -39.62*

     FCL 1884
```

```
HISTORY FOR ACCOUNT      9939                        PAGE      5
                                                     DATE 10/09/09


        --------- MAIL -------------------- --------- PROPERTY ----------------

        PATRICIA MCNERNEY

        1241 THOREAU ROAD                    1241 THOREAU ROAD

        LAKEWOOD           OH 44107    LAKEWOOD           OH 44107

-----------------------------------------------------------------------------
POST   TRN  DUE    TRANSACTION    PRINCIPAL     INTEREST       ESCROW
DATE   CDE  DATE   AMOUNT         PAID          PAID           PAID
------ ---  ------ -------------- ------------- ------------- -------------
051908 AA  060103             .00           .00           .00           .00
                  OPT PREMIUMS              .00  LATE CHARGE PYMT   -39.62*
052008 FB  060103         11.25  11 PROP INSPECTION FEE
052308 RT  060103      27426.95           .00           .00      27426.95
052308 ITR 060103 OLD INV 42388   1 P-BAL    107632.79 INT            .00
                  NEW INV 91201   1 PERCENT OWNED    .0000 ACTION CD 000
052308 PT  060103     -27426.95           .00           .00     -27426.95
052908 E40 060103    -178.20  PAYEE = 1270.01001       .00       -178.20
061008 FB  060103         20.00  28 PAYOFF STATEMENT
061608 E90 060103    -1798.20  PAYEE = 0018.00000      .00      -1798.20
061708 UI  060103             .00           .00           .00           .00
                  OPT PREMIUMS              .00  LATE CHARGE PYMT   -39.62*
061708 AA  060103             .00           .00           .00           .00
                  OPT PREMIUMS              .00  LATE CHARGE PYMT   -39.62*
061908 E40 060103    -178.20  PAYEE = 1270.01001       .00       -178.20
062008 FB  060103         11.25  11 PROP INSPECTION FEE
071008 E40 060103    -178.20  PAYEE = 1270.01001       .00       -178.20
071808 UI  060103             .00           .00           .00           .00
                  OPT PREMIUMS              .00  LATE CHARGE PYMT   -39.62*
071808 AA  060103             .00           .00           .00           .00
                  OPT PREMIUMS              .00  LATE CHARGE PYMT   -39.62*
072208 FB  060103         11.25  11 PROP INSPECTION FEE
081808 UI  060103             .00           .00           .00           .00
                  OPT PREMIUMS              .00  LATE CHARGE PYMT   -39.62*
081808 AA  060103             .00           .00           .00           .00
                  OPT PREMIUMS              .00  LATE CHARGE PYMT   -39.62*
081908 FB  060103         11.25  11 PROP INSPECTION FEE
082608 E40 060103    -178.20  PAYEE = 1270.01001       .00       -178.20
091708 UI  060103             .00           .00           .00           .00
                  OPT PREMIUMS              .00  LATE CHARGE PYMT   -39.62*
091708 AA  060103             .00           .00           .00           .00
                  OPT PREMIUMS              .00  LATE CHARGE PYMT   -39.62*
091708 FB  060103         11.25  11 PROP INSPECTION FEE
092308 E40 060103    -178.20  PAYEE = 1270.01001       .00       -178.20
100908 E40 060103    -178.20  PAYEE = 1270.01001       .00       -178.20
101408 FB  060103         20.00  28 PAYOFF STATEMENT
101508 FB  060103         11.25  11 PROP INSPECTION FEE


    FCL 1884
```

```
HISTORY FOR ACCOUNT      [   ]9939                    PAGE      6
                                                     DATE 10/09/09


        --------- MAIL -------------------- --------- PROPERTY ----------------

        PATRICIA MCNERNEY

        1241 THOREAU ROAD                 1241 THOREAU ROAD

        LAKEWOOD          OH 44107   LAKEWOOD         OH 44107

------------------------------------------------------------------------------
POST   TRN  DUE   TRANSACTION    PRINCIPAL    INTEREST         ESCROW
DATE   CDE  DATE  AMOUNT         PAID         PAID             PAID
------ ---  ------ --------------- ------------- ------------- -------------
101708 UI  060103            .00          .00           .00          .00
                OPT PREMIUMS               .00  LATE CHARGE PYMT   -39.62*
101708 AA  060103            .00          .00           .00          .00
                OPT PREMIUMS               .00  LATE CHARGE PYMT   -39.62*
111308 E40 060103   -178.20  PAYEE = 1270.01001       .00      -178.20
111808 UI  060103            .00          .00           .00          .00
                OPT PREMIUMS               .00  LATE CHARGE PYMT   -39.62*
111808 AA  060103            .00          .00           .00          .00
                OPT PREMIUMS               .00  LATE CHARGE PYMT   -39.62*
111808 FB  060103        11.25  11 PROP INSPECTION FEE
121208 FB  060103        11.25  11 PROP INSPECTION FEE
121608 E20 060103   -560.00  PAYEE = 1600.00082       .00      -560.00
121708 UI  060103            .00          .00           .00          .00
                OPT PREMIUMS               .00  LATE CHARGE PYMT   -39.62*
121708 AA  060103            .00          .00           .00          .00
                OPT PREMIUMS               .00  LATE CHARGE PYMT   -39.62*
122208 E40 060103   -178.20  PAYEE = 1270.01001       .00      -178.20
010509 E90 060103  -1824.52  PAYEE = 0018.00000       .00     -1824.52
011509 E40 060103   -178.20  PAYEE = 1270.01001       .00      -178.20
012009 UI  060103            .00          .00           .00          .00
                OPT PREMIUMS               .00  LATE CHARGE PYMT   -39.62*
012009 AA  060103            .00          .00           .00          .00
                OPT PREMIUMS               .00  LATE CHARGE PYMT   -39.62*
012009 FB  060103        11.25  11 PROP INSPECTION FEE
021209 E40 060103   -178.20  PAYEE = 1270.01001       .00      -178.20
021709 UI  060103            .00          .00           .00          .00
                OPT PREMIUMS               .00  LATE CHARGE PYMT   -39.62*
021709 AA  060103            .00          .00           .00          .00
                OPT PREMIUMS               .00  LATE CHARGE PYMT   -39.62*
021709 FB  060103        11.25  11 PROP INSPECTION FEE
030309 RT  060103     33391.67          .00           .00     33391.67
030309 ITR 060103  OLD INV 91201     1 P-BAL    107632.79 INT          .00
                NEW INV 91782     1  PERCENT OWNED  .0000 ACTION CD 000
030309 PT  060103    -33391.67          .00           .00    -33391.67
031209 E40 060103   -178.20  PAYEE = 1270.01001       .00      -178.20
031309 FB  060103        11.25  11 PROP INSPECTION FEE


        FCL 1884
```

```
HISTORY FOR ACCOUNT    ████9939                    PAGE    7
                                                   DATE 10/09/09


       --------- MAIL ------------------- --------- PROPERTY ----------------

       PATRICIA MCNERNEY

       1241 THOREAU ROAD                  1241 THOREAU ROAD

       LAKEWOOD          OH 44107    LAKEWOOD          OH 44107

-----------------------------------------------------------------------------
POST   TRN  DUE   TRANSACTION    PRINCIPAL    INTEREST        ESCROW
DATE   CDE  DATE  AMOUNT         PAID         PAID            PAID
------ ---  ------ --------------- ------------- ------------- -------------
031709 UI  060103           .00          .00          .00          .00
                OPT PREMIUMS             .00  LATE CHARGE PYMT   -39.62*
031709 AA  060103           .00          .00          .00          .00
                OPT PREMIUMS             .00  LATE CHARGE PYMT   -39.62*
041609 E40 060103     -178.20  PAYEE = 1270.01001      .00       -178.20
041709 UI  060103           .00          .00          .00          .00
                OPT PREMIUMS             .00  LATE CHARGE PYMT   -39.62*
041709 AA  060103           .00          .00          .00          .00
                OPT PREMIUMS             .00  LATE CHARGE PYMT   -39.62*
051409 E40 060103     -178.20  PAYEE = 1270.01001      .00       -178.20
051909 UI  060103           .00          .00          .00          .00
                OPT PREMIUMS             .00  LATE CHARGE PYMT   -39.62*
051909 AA  060103           .00          .00          .00          .00
                OPT PREMIUMS             .00  LATE CHARGE PYMT   -39.62*
060409 E40 060103     -178.20  PAYEE = 1270.01001      .00       -178.20
061509 E90 060103    -1824.52  PAYEE = 0018.00000      .00      -1824.52
061709 UI  060103           .00          .00          .00          .00
                OPT PREMIUMS             .00  LATE CHARGE PYMT   -39.62*
061709 AA  060103           .00          .00          .00          .00
                OPT PREMIUMS             .00  LATE CHARGE PYMT   -39.62*
070909 E40 060103     -178.20  PAYEE = 1270.01001      .00       -178.20
072009 UI  060103           .00          .00          .00          .00
                OPT PREMIUMS             .00  LATE CHARGE PYMT   -39.62*
072009 AA  060103           .00          .00          .00          .00
                OPT PREMIUMS             .00  LATE CHARGE PYMT   -39.62*
080609 E40 060103     -178.20  PAYEE = 1270.01001      .00       -178.20
081809 UI  060103           .00          .00          .00          .00
                OPT PREMIUMS             .00  LATE CHARGE PYMT   -39.62*
081809 AA  060103           .00          .00          .00          .00
                OPT PREMIUMS             .00  LATE CHARGE PYMT   -39.62*
091009 E40 060103     -178.20  PAYEE = 1270.01001      .00       -178.20
091709 UI  060103           .00          .00          .00          .00
                OPT PREMIUMS             .00  LATE CHARGE PYMT   -39.62*
091709 AA  060103           .00          .00          .00          .00
                OPT PREMIUMS             .00  LATE CHARGE PYMT   -39.62*
100109 FB  060103        11.25   11 PROP INSPECTION FEE
100809 E40 060103     -178.20  PAYEE = 1270.01001      .00       -178.20

       FCL 1884
```



```
HISTORY FOR ACCOUNT        9939                          PAGE     8
                                                        DATE 10/09/09


         --------- MAIL -------------------- --------- PROPERTY ----------------

         PATRICIA MCNERNEY

         1241 THOREAU ROAD                  1241 THOREAU ROAD

         LAKEWOOD              OH 44107      LAKEWOOD              OH 44107

-------------------------------------------------------------------------
POST  TRN  DUE    TRANSACTION    PRINCIPAL     INTEREST       ESCROW
DATE  CDE  DATE   AMOUNT         PAID          PAID           PAID
----- --- ------ --------------- ------------- ------------- -------------
```


END OF HISTORY

    FCL 1884

TO: KATIE DUTILL    COMPANY:

## PAYOFF STATEMENT

**GMAC Mortgage, LLC**                                          10/07/09
PO Box 780
Waterloo IA 50704-0780

Loan No:    ▮▮▮9939

Borrower:  PATRICIA MCNERNEY                      Property:
                                                 1241 THOREAU ROAD
           ATTY F/C $0 G/T 10-31-09.

                                                 LAKEWOOD        OH
           LAKEWOOD      OH 44107                 44107

Statement Sent to Name: ADDL F/C ARE $83,BPO $83,PIR $0
Statement Sent to Fax Number: 866-340-0271

As of 10/07/09, the status of this loan is as follows:

| | | | |
|---|---|---|---|
| Next Payment Due: | 07/01/03 | Loan Type: | CONVENTIONAL |
| Matures: | 01/2033 | Note Rate: | 8.00000% |
| Escrow Balance: | $-36463.59 | Escrow Retained (**pg. 2): | $0.00 |
| | | Mortgage Insurance: | $356.40 |

### * * * THE FOLLOWING FIGURES ARE SUBJECT TO FINAL VERIFICATION BASED ON THE RECEIPT OF FUNDS BY GMAC Mortgage, LLC * * *

| ITEMS | AMOUNT DUE | |
|---|---|---|
| Principal | $107632.79 | |
| Interest Calculated to but not including 10/31/09 | $55241.52 | |
| Escrow/Impound Funds Due | $36819.99 | |
| Late Charges Outstanding | $2487.78 | |
| Unapplied Funds | $0.00 | |
| Statement Fee | $0.00 | |
| Recording Fee | $28.00 | |
| Reconveyance/Trust | $0.00 | |
| Release Fee | $0.00 | |
| Fax Fee | $0.00 | |
| Other Fees and Costs | $3322.75 | |
| Deferred Amount | $.00 | **\*\*Payoff funds must be** |
| Prepayment Penalty Fee | $0.00 | **remitted in US dollars** |
| Optional Products | $0.00 | **by cashier's check,** |
| Uncollected P&I | $.00 | **certified check or bank** |
| **TOTAL DUE** | **$205532.83** | **wire.\*\*** |
| Per Diem Interest | $23.5907 | |

### ***YOU ARE RESPONSIBLE FOR COMPLIANCE OF THIS DOCUMENT***

For Escrowed Loans:  We require written authorization from our borrower(s) to use any amount of escrow funds towards the payoff of the loan.  If you authorize GMAC Mortgage, LLC to use escrow funds towards the payoff of the loan, please sign below and fax to 1-614-417-5768.

_____          _____
Signature                                          Signature

TO:KATIE DUTILL  COMPANY:



Page 2
9939

**ESTIMATED ESCROW/IMPOUND DISBURSEMENTS**

| Items | Next due | Amount |
|-------|----------|--------|
| GENWORTH MOR 09/01/09 | | 178.20 |

If any tax or insurance amounts are due within 45 days of the date of this statement, these amounts are included in required funds and may be disbursed prior to payoff funds being received.

### PAYOFF FUNDS REMITTANCE INSTRUCTIONS

To receive same-day credit and avoid additional day(s) interest, payoff funds must be remitted via wire by 2:00 P.M. Eastern Time, along with all of the required information provided below. Please include $7.50 in addition to the total figures above for the incoming wire fee.

>JPMorgan Chase Bank, N.A.
>For GMAC Mortgage, LLC
>ABA # ▇▇▇ 0013
>Account # ▇▇▇ 1175
>GMAC Mortgage, LLC Account # ▇▇▇ 9939
>Name: PATRICIA MCNERNEY
>Remitter Name:
>Remitter Phone #:

To receive next-day credit and avoid additional day(s) interest, payoff funds must be remitted in U.S. Dollars by cashier's check, certified check, or bank wire by 2:00 P.M. Eastern Time. All payoff funds received after 2:00 P.M. Eastern Time will be applied with interest on the next business day. Payoff funds will not be applied or credited on weekends or holidays.

When remitting by check, please include the following information on the check: Customer's name, account number, remitter's name and remitter's phone number. Please forward to the following address:

>GMAC Mortgage, LLC
>Payoff Processing Unit
>6716 Grade Lane
>Building 9, Suite 910C
>Louisville KY 40213-1407

* * * You are responsible for the compliance of this document. * * *

Important information regarding the loan payoff:

A) Add daily per diem interest from the interest through date to the date payoff funds are processed in the GMAC Mortgage, LLC office. Interest is calculated on a 365-day year on a partial-month basis. If interest is collected for 30 days, due date to due date, interest is calculated on a 360-day basis (February is calculated on 30 days). You will be responsible for any additional interest due we would need to collect due to an improper calculation method.

199.68127-3000 m909 Doc 9/862-209 Filed 5 029 PM PAGE d 3/10/23 150 Entered Server Exhibit 2
Case m909-cv-02800-EW Doc 40 23 PM Filed 10/14/09 23:53 Page Pg 82 of 113 agen9 #:56
TO:KATIE DUTILL COMPANY:

Page 3


9939

B) If you are currently enrolled in our monthly ACH program and your scheduled draft date is three days or fewer after your anticipated payoff date, your draft will still be deducted. To cancel your drafting, call 800-766-4622.

C) A late charge may be assessed for any payment or payoff not received within the grace period.

D) The amount necessary to pay this loan in full is subject to final verification by the note holder. Title/escrow will be held liable for any shortage resulting from a returned item. Do not "stop payment" on any previous payment (check or draft) which has been credited to this account.

E) If this is an adjustable rate mortgage, it may be subject to interest rate changes and principal balance increases. Please contact our office prior to closing escrow.

F) If there is a prepayment penalty fee on your account, it will be included in the total funds due for payoff. If your mortgage note indicates that the prepayment penalty can be waived due to sale of the property, you will need to include copies of 1) certified final HUD1 and 2) sales contract, both of which are signed by the buyer and seller. These documents should be included with your payoff funds. If your payoff is wired, they can be faxed to 1-614-417-5768. The prepayment penalty will not be removed until receipt of the funds.

G) If the funds received are not sufficient to pay the account in full, we can utilize funds from the escrow account to complete the payoff with your authorization. Please sign page 1 and fax back to 1-614-417-5768. If there is not an escrow account, or you do not authorize us to use escrow funds, we will return the payoff funds in the same manner as they were remitted. Interest will continue to accrue and late charges may be incurred until sufficient funds are received to pay the account in full. To avoid a short payoff, please confirm the actual payoff amount by calling 800-766-4622.

H) If your loan has a Homestrength/Homestretch/Silent Second, the outstanding balance owed is included in the Other Fees and Costs on page 1 of the statement.

I) All payments on this loan must be kept current. The escrow holder is responsible for determining the current status of this loan prior to closing of the escrow. **Issuance of this statement does not suspend the contract requirements to make monthly mortgage payments when due.**

J) Escrow account: Issuance of this statement does not alter GMAC Mortgage, LLC's responsibility to pay taxes and insurance. If a bill for these items is received prior to the receipt of payoff funds, we will pay them from the escrow account. Payment of a deficit is required before the loan can be paid in full. GMAC Mortgage, LLC is not responsible for private agreements between the mortgagor and a third party with regard to the disbursement of the escrow funds. If funds have accumulated in an escrow account, and if we have been required to pay interest on said funds as provided by state law, interest will be paid to the date the escrow closes. Any excess funds, after payoff is complete, will be remitted back to the customer. If forced place insurance has been charged to the escrow account prior to loan payoff, the full amount will be required to pay off the loan. If appropriate evidence of insurance is received, the applicable refund will be issued to borrowers of record within 4-6 weeks. Any escrow balance will be refunded after payoff, provided the last payment applied to the account has cleared the institution on which it was drawn.

K) If this account is 2 months or more past due, in foreclosure and/or bankruptcy, you must obtain an amended statement for updated fees within 5 business days of closing.

L) The reconveyance/satisfaction of mortgage will be forwarded to the county recorder's office after receipt of payoff funds.

M) If you have new address information, please contact Customer Care at 800-766-4622. Updating your address information will ensure timely return of any refund you may be due, as well as allowing your release and year-end information to be sent directly to you.

7:70

JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Homecomings Financial, LLC

## DEFENDANTS
Patricia J. McNerney aka Patricia J. Kellicker

**(b)** County of Residence of First Listed Plaintiff **Dallas County, TX**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant **Cuyahoga County, OH**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Calfee, Halter & Griswold LLP  800 Superior Ave., Suite 1400
Cleveland, OH  44114   (216) 622-8200

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☒ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**

**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

**PERSONAL INJURY**
☐ 362 Personal Injury - Med. Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence
**Habeas Corpus:**
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE/PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt.Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus - Alien Detainee
☐ 465 Other Immigration Actions

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)
☒ 1  Original Proceeding
☐ 2  Removed from State Court
☐ 3  Remanded from Appellate Court
☐ 4  Reinstated or Reopened
☐ 5  Transferred from another district (specify)
☐ 6  Multidistrict Litigation
☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1332
Brief description of cause:
Foreclosure of Note and Mortgage; Reformation of Mortgage

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE

DOCKET NUMBER

DATE  10/14/2009

SIGNATURE OF ATTORNEY OF RECORD  Laura C. McBride

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

**I.**     Civil Categories: (Please check one category only).

   1.  [✓]   General Civil
   2.  [ ]   Administrative Review/Social Security
   3.  [ ]   Habeas Corpus Death Penalty

   *If under Title 28, §2255, name the SENTENCING JUDGE: ‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗

                          CASE NUMBER: ‗‗‗‗‗‗‗‗‗‗‗‗‗

**II.**   **RELATED OR REFILED CASES.** See LR 3.1 which provides in pertinent part: "If an action is filed or removed to this Court and assigned to a District Judge after which it is discontinued, dismissed or remanded to a State court, and subsequently refiled, it shall be assigned to the same Judge who received the initial case assignment without regard for the place of holding court in which the case was refiled. Counsel or a party without counsel shall be responsible for bringing such cases to the attention of the Court by responding to the questions included on the Civil Cover Sheet."

   This action is [ ] **RELATED** to another **PENDING** civil case. This action is [ ] **REFILED** pursuant to **LR 3.1**.

**If applicable, please indicate on page 1 in section VIII, the name of the Judge and case number.**

**III.**   In accordance with Local Civil Rule **3.8**, actions involving counties in the Eastern Division shall be filed at any of the divisional offices therein. Actions involving counties in the Western Division shall be filed at the Toledo office. For the purpose of determining the proper division, and for statistical reasons, the following information is requested.

   ANSWER ONE PARAGRAPH ONLY. ANSWER PARAGRAPHS 1 THRU 3 IN ORDER. UPON FINDING WHICH PARAGRAPH APPLIES TO YOUR CASE, ANSWER IT AND STOP.

   (1)    **Resident defendant.** If the defendant resides in a county within this district, please set forth the name of such county
   **COUNTY:**  Cuyahoga
   Corporation **For the purpose of answering the above, a corporation is deemed to be a resident of that county in which it has its principal place of business in that district.**

   (2)    **Non-Resident defendant.** If no defendant is a resident of a county in this district, please set forth the county wherein the cause of action arose or the event complained of occurred.
   **COUNTY:**

   (3)    **Other Cases.** If no defendant is a resident of this district, or if the defendant is a corporation not having a principle place of business within the district, and the cause of action arose or the event complained of occurred outside this district, please set forth the county of the plaintiff's residence.
   **COUNTY:**

**IV.**   The Counties in the Northern District of Ohio are divided into divisions as shown below. After the county is determined in Section III, please check the appropriate division.

**EASTERN DIVISION**

   [ ]    **AKRON**          (Counties: Carroll, Holmes, Portage, Stark, Summit, Tuscarawas and Wayne)
   [✓]    **CLEVELAND**      (Counties: Ashland, Ashtabula, Crawford, Cuyahoga, Geauga, Lake,
                                Lorain, Medina and Richland)
   [ ]    **YOUNGSTOWN**     (Counties: Columbiana, Mahoning and Trumbull)

**WESTERN DIVISION**

   [ ]    **TOLEDO**         (Counties: Allen, Auglaize, Defiance, Erie, Fulton, Hancock, Hardin, Henry,
                                Huron, Lucas, Marion, Mercer, Ottawa, Paulding, Putnam, Sandusky, Seneca
                                VanWert, Williams, Wood and Wyandot)

**Exhibit E**

# Homecomings Financial

*A GMAC Company*

01/02/2003

PATRICIA JOANNE MCNERNEY

1241 THOREAU ROAD
LAKEWOOD, OH 44107

HFN #: ███993-9

Dear PATRICIA JOANNE MCNERNEY

This is to advise you that your mortgage loan has been purchased by HomeComings Financial Network, Inc. from HOMECOMINGS FINANCIAL NETWORK, INC.   and the servicing of your loan has recently been transferred to GMAC Mortgage Corporation effective 01/01/2003 . Please be assured that this is a normal business transaction and will not affect any other term or condition of the mortgage documents, other than terms directly related to the servicing of the loan. We would like to take this opportunity to welcome you as a customer of HomeComings Financial Network, Inc. and GMAC Mortgage Corporation and to assure you that we are committed to providing the highest level of service.

Effective  01/01/2003 , payments should be made payable to GMAC Mortgage Corporation and sent directly to:

> GMAC Mortgage Corporation
> ATTN:  Payment Processing
> P.O. Box 780
> Waterloo, IA  50704

The amount of your monthly payment is $ 1,232.48 . You will receive a monthly account statement from GMAC Mortgage Corporation under separate cover which will include a payment coupon and return envelope to be used in forwarding your payment to GMAC Mortgage Corp.

Any written inquiries should be addressed to GMAC Mortgage Corporation and sent directly to:

> GMAC Mortgage Corporation
> ATTN:  Customer Service Department
> P.O. Box 780
> Waterloo, IA  50704
> (800) 766-GMAC (4622)

As of 01/01/2003 , HOMECOMINGS FINANCIAL NETWORK,  can no longer accept payments on your account. However, if you have any questions BEFORE the transfer, you may contact their Loan Servicing Department at  248-539-9880  . If this is a toll call, collect calls will be accepted.

You will receive a Year-End statement summarizing your loan for your income tax return for the partial year your loan is with GMAC Mortgage Corp.  You should also receive a Year-End statement from your previous servicer.

HomeComings Financial Network, Inc. and GMAC Mortgage Corporation look forward to a pleasant association with you.

Sincerely,

HOMECOMINGS FINANCIAL NETWORK, INC.
A member of the GM Family

MFCD6044 (8/02)                                                                                                     041-571993-9

PATRICIA JOANNE MCNERNEY
Page 2
01/02/2003

You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (U.S.C. 2605) gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20 business days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request.

Not later than 60 business days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 60 business day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A business day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that section. You should seek legal advice if you believe your rights have been violated.

Future inquiries regarding the servicing of your loan should be directed to GMAC Mortgage. Their correspondence address and toll-free telephone number are as follows:

GMAC Mortgage Corporation
Attention: Customer Service Department
P.O. Box 780
Waterloo, IA 50704

Toll Free Telephone Number 1-800-766-4622

Customer Service Hours
Monday - Thursday 7:00 a.m. - 9:00 P.M. (C.S.T.)
Friday 7:00 a.m. - 6:30 P.M. (C.S.T.)
Saturday 9:00 a.m. - 1:00 P.M. (C.S.T.)

Sincerely,

HOMECOMINGS FINANCIAL NETWORK, INC.

**Exhibit F**

DEC-27-2002(FRI) 11:27    OHIO MORTGAGE    (FAX)216 739 4090    P. 001/007

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ V.A. ☑ Conventional ☐ Other | ☐ FHA ☐ FmHA | Agency Case Number | Lender Case Number 18705 |
|---|---|---|---|---|

| Amount | Interest Rate | No. of Months | Amortization Type: | ☑ Fixed Rate ☐ Other (explain): |
|---|---|---|---|---|
| $ 108,000 | 8.000% | 360/360 | | ☐ GPM ☐ ARM (type): |

## PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, ZIP) | No. of Units |
|---|---|
| 1241 Thoreau Road, Lakewood, OH 44107 County: Cuyahoga | 1 |

| Legal Description of Subject Property (attach description if necessary) | Year Built |
|---|---|
| See attached legal description | |

| Purpose of Loan | ☐ Purchase ☐ Construction ☑ Refinance ☐ Construction-Permanent | ☐ Other (explain): | Property will be: ☑ Primary Residence ☐ Secondary Residence ☐ Investment |
|---|---|---|---|

**Complete this line if construction or construction-permanent loan.**

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a+b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

**Complete this line if this is a refinance loan.**

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements ☐ made ☐ to be made |
|---|---|---|---|---|
| 1999 | $ 155,000 | $ 92,329 | Cash-Out/Debt Consolidation | Cost $ |

| Title will be held in what Name(s) | Manner in which Title will be held | Estate will be held in: |
|---|---|---|
| Patricia McNerney | Single Woman | ☑ Fee Simple ☐ Leasehold (show expiration date) |

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) |
|---|
| Equity from Subject Property |

## BORROWER INFORMATION / CO-BORROWER

| BORROWER | CO-BORROWER |
|---|---|

| Borrower's Name (include Jr. or Sr. if applicable) | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|
| Patricia McNerney | |

| Social Security Number | Home Phone (incl. area code) | Age 44 | Yrs. School 15 | Social Security Number | Home Phone (incl. area code) | Age | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☐ Married ☑ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Co-Borrower) no. 1 ages 11 | ☐ Married ☐ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Borrower) no. ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) ☑ Own ☐ Rent 3 No. Yrs. | Present Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |
|---|---|
| 1241 Thoreau Road Lakewood, OH 44107 | |

**If residing at present address for less than two years, complete the following:**

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |
|---|---|

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |
|---|---|

## EMPLOYMENT INFORMATION

| BORROWER | CO-BORROWER |
|---|---|

| Name and Address of Employer ☐ Self Employed | Yrs. on this job 3 | Name and Address of Employer ☐ Self Employed | Yrs. on this job |
|---|---|---|---|
| Lakewood Public Library 15425 Detroit Avenue Lakewood, Ohio 44107 | Yrs. employed in this line of work/profession 8 | | Yrs. employed in this line of work/profession |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|
| Librarian | | | |

**If employed in current position for less than two years or if currently employed in more than one position, complete the following:**

| Name and Address of Employer ☐ Self Employed | Dates (from-to) | Name and Address of Employer ☐ Self Employed | Dates (from-to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

| Name and Address of Employer ☐ Self Employed | Dates (from-to) | Name and Address of Employer ☐ Self Employed | Dates (from-to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

| Freddie Mac Form 65 10/92 CALYX Form 1003 Loanapp1.hp 2/98 | Page 1 of 4 | Borrower Co-Borrower | Fannie Mae Form 1003 10/92 |
|---|---|---|---|


PLAINTIFF'S EXHIBIT 21

PLAINTIFFS 0195

DEC-27-2002 12:18    216 739 4090    98%    P.01

DEC-27-2002(FRI) 11:28    OHIO MORTGAGE    (FAX)216 739 4890    P.002/007

## MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | 1,459.47 | | 1,459.47 | Rent | | |
| Overtime | | | | First Mortgage (P&I) | 984.00 | 792.47 |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | 30.00 | 31.00 |
| Dividends/Interest | | | | Real Estate Taxes | 230.81 | 230.81 |
| Net Rental Income | | | | Mortgage Insurance | | 175.00 |
| Other (before completing, see the notice in "describe other income," below) | 2,090.00 | | 2,090.00 | Homeowner Assn. Dues | | |
| | | | | Other | | |
| Total | 3,549.47 | | 3,549.47 | Total | 1,244.81 | 1,229.28 |

*Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

**Describe Other Income** Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower(B) or Co-Borrower(C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| B | Alimony/Child Support Income | 2,090.00 |

## ASSETS AND LIABILITIES

This statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed [✓] Jointly [ ] Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | Monthly Payt. & Mos. Left to Pay | Unpaid Balance |
|---|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | Name and address of Company | $ Payt./Mos. | | |
| List checking and savings accounts below | | HFC | | | |
| Name and address of Bank, S&L, or Credit Union | | | | | |
| First Federal of Lakewood | | | | | |
| | | Acct. n. 6646 | * | 984 /360 | 92,329 |
| Acct. no. 5427 | $ 29,516 | Name and address of Company | $ Payt./Mos. | | |
| Name and address of Bank, S&L, or Credit Union | | AMERICREDI | | | |
| | | Acct. no. 8965 | | 337 | 12,017 |
| Acct. no. | $ | Name and address of Company | $ Payt./Mos. | | |
| Name and address of Bank, S&L, or Credit Union | | CAPITAL 1 BK | | | |
| | | Acct. no. 2638 | * | 60 | 1,207 |
| Acct. no. | $ | Name and address of Company | $ Payt./Mos. | | |
| Name and address of Bank, S&L, or Credit Union | | CAPITAL 1 BK | | | |
| | | Acct. no. 3261 | * | 57 | 1,137 |
| Acct. no. | $ | Name and address of Company | $ Payt./Mos. | | |
| Stocks & Bonds (Company name/ number & description) | $ | CAPITAL 1 BK | | | |
| | | Acct. no. 3799 | * | 50 | 1,000 |
| Life insurance net cash value | | Name and address of Company | $ Payt./Mos. | | |
| Face amount $ | | GTWY/CBUSA | | | |
| Subtotal Liquid Assets | $ 29,516 | | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 120,000 | Acct. no. 6048 | * | 55 | 1,091 |
| Vested interest in retirement fund | $ | Name and address of Company | $ Payt./Mos. | | |
| Net worth of business(es) owned (attach financial statement) | $ | CAP 1 BANK | | | |
| Automobiles owned (make and year) | $ | | | | |
| | | Acct. no. 8387 | * | 30 | 804 |
| Other Assets (itemize) | $ | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | | |
| | | Job Related Expense (child care, union dues, etc.) | $ | | |
| | | Total Monthly Payments | | 412 | |
| Total Assets a. | $ 149,516 | Net Worth (a-b) $ 33,548 | Total Liabilities b. | $ | 115,068 |

Freddie Mac Form 65    10/92
CALYX Form 1003 Lisaapp2.lsp 2/93

Page 2 of 4

Borrower

Co-Borrower

Fannie Mae Form 1003    10/92

PLAINTIFFS 0196

DEC-27-2002    12:19    216 739 4890    98%    P.02

· DEC-27-2002(FRI) 11:30    OHIO MORTGAGE    (FAX)216 739 4090    P.004/007

**Schedule of Real Estate Owned** (if additional properties are owned, use continuation sheet)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 1241 Thoreau Lakewood, OH 44107 | SFR | $ 120,000 | $ 92,329 | $ | $ 984 | $ 200 | $ |
| | | | | | | | |
| | | | | | | | |
| **Totals** | | $ 120,000 | $ 92,329 | $ | $ 984 | $ 200 | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

**DETAILS OF TRANSACTION** / **DECLARATIONS**

| | | | Borrower | | Co-Borrower | |
|---|---|---|---|---|---|---|
| | | If you answer "yes" to any questions a through i, please use continuation sheet for explanation. | Yes | No | Yes | No |
| a. Purchase price | $ | a. Are there any outstanding judgments against you? | | ☑ | | |
| b. Alterations, improvements, repairs | | b. Have you been declared bankrupt within the past 7 years? | | ☑ | | |
| c. Land (if acquired separately) | | c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | ☑ | | |
| d. Refinance (incl. debts to be paid off) | 102,710.00 | d. Are you a party to a lawsuit? | | ☑ | | |
| e. Estimated prepaid items | 763.62 | e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | ☑ | | ☑ |
| f. Estimated closing costs | 5,543.00 | | | | | |
| g. PMI, MIP, Funding Fee | | | | | | |
| h. Discount (if Borrower will pay) | 1,080.00 | | | | | |
| i. Total costs (add items a through h) | 111,096.62 | | | | | |
| j. Subordinate financing | | f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | ☑ | | |
| k. Borrower's closing costs paid by Seller | | g. Are you obligated to pay alimony, child support, or separate maintenance? | | ☑ | | |
| l. Other Credits (explain) | | h. Is any part of the down payment borrowed? | | ☑ | | |
| | | i. Are you a co-maker or endorser on a note? | | ☑ | | |
| | | j. Are you a U.S. citizen? | ☑ | | | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 108,000.00 | k. Are you a permanent resident alien? | | ☑ | | |
| | | l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☑ | | | |
| n. PMI, MIP, Funding Fee financed | | m. Have you had an ownership interest in a property in the last three years? | ☑ | | | |
| o. Loan amount (add m & n) | 108,000.00 | (1) What type of property did you own – principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | 3,096.62 | (2) How did you hold title to the home – solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | | | |

**ACKNOWLEDGEMENT AND AGREEMENT**

The undersigned specifically acknowledge(s) and agree(s) that: (1) the loan requested by this application will be secured by a first mortgage or deed of trust on the property described herein; (2) the property will not be used for any illegal or prohibited purpose or use; (3) all statements made in this application are made for the purpose of obtaining the loan indicated herein; (4) occupation of the property will be as indicated above; (5) verification or reverification of any information contained in the application may be made at any time by the Lender, its agents, successors and assigns, either directly or through a credit reporting agency, from any source named in this application, and the original copy of this application will be retained by the Lender, even if the loan is not approved; (6) the Lender, its agents, successors and assigns will rely on the information contained in the application and I/we have a continuing obligation to amend and/or supplement the information provided in this application if any of the material facts which I/we have represented herein should change prior to closing; (7) in the event my/our payments on the loan indicated in this application become delinquent, the Lender, its agents, successors and assigns, may, in addition to all their other rights and remedies, report my/our name(s) and account information to a credit reporting agency; (8) ownership of the loan may be transferred to successor or assign of the Lender without notice to me and/or the administration of the loan account may be transferred to an agent, successor or assign of the Lender with prior notice to me; (9) the Lender, its agents, successors and assigns make no representations or warranties, express or implied, to the Borrower(s) regarding the property, the condition of the property, or the value of the property.

Certification: I/We certify that the information provided in this application is true and correct as of the date set forth opposite my/our signature(s) on this application and acknowledge my/our understanding that any intentional or negligent misrepresentation(s) of the information contained in this application may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq. and liability for monetary damages to the Lender, its agents, successors and assigns, insurers and any other person who may suffer any loss due to reliance upon any misrepresentation which I/we have made on this application.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X _Patricia Jeanne McNurey_ | 12-27-02 | X | |

**INFORMATION FOR GOVERNMENT MONITORING PURPOSES**

The following information is requested by the Federal Government for certain types of loans related to a dwelling, in order to monitor the Lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may neither discriminate on the basis of this information, nor on whether you choose to furnish it. However, if you choose not to furnish it, under Federal regulations this Lender is required to note race and sex on the basis of visual observation or surname. If you do not wish to furnish the above information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the Lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | ☐ I do not wish to furnish this information | CO-BORROWER | ☐ I do not wish to furnish this information |
|---|---|---|---|
| Race/National Origin: | ☐ American Indian or Alaskan Native  ☐ Asian or Pacific Islander  ☐ Black, not of Hispanic origin  ☑ White, not of Hispanic origin  ☐ Hispanic  ☐ Other (specify) | Race/National Origin: | ☐ American Indian or Alaskan Native  ☐ Asian or Pacific Islander  ☐ Black, not of Hispanic origin  ☐ White, not of Hispanic origin  ☐ Hispanic  ☐ Other (specify) |
| Sex | ☑ Female  ☐ Male | Sex | ☐ Female  ☐ Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: | Sharon Davis | OMC Lending, Inc. |
| ☐ face-to-face interview | Interviewer's Signature | 4311 Ridge Rd |
| ☐ by mail | _Sharon Davis_  Date 12-27-02 | Brooklyn, OH 44144 |
| ☑ by telephone | Interviewer's Phone Number (incl. area code) | (P) 216-739-9000 |
| | 216-739-9000 | (F) 216-739-4090 |

Freddie Mac Form 65    10/92
CALYX Form 1003 Loanapp3.hp 2/93

Page 3 of 4

Fannie Mae Form 1003    10/92

PLAINTIFFS 0197

DEC-27-2002  12:21    216 739 4090    98%    P.04

## Continuation Sheet/Residential Loan Application

| | |
|---|---|
| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: **Patricia McNerney** |
| | Co-Borrower: |

Agency Case Number:

Lender Case Number: **999088705**

### VI. ASSETS AND LIABILITIES

| ASSETS | Cash or Market Value | LIABILITIES | Monthly Payt. & Mos. Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Name and address of Bank, S&L, or Credit Union | $ | Name and address of Company **CAPITAL 1 BK** | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. 6495 | * 29 | 586 |
| Name and address of Bank, S&L, or Credit Union | $ | Name and address of Company **FST PREMIER** | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. 5706 | 20 | 250 |
| Name and address of Bank, S&L, or Credit Union | $ | Name and address of Company **BACK TAXES** | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | * | 5,847 |
| Name and address of Bank, S&L, or Credit Union | $ | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | $ | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | $ | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | $ | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | $ | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | $ | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | $ | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date | Co-Borrower's Signature: | Date |
|---|---|---|---|
| X *Patricia Joanne McNerney* | 12-27-02 | X | |

Freddie Mac Form 65  7/1/92
CALYX Form 1003 Loadcast.hp 2/95

Page 4 of 4

Fannie Mae Form 1003  10/92

PLAINTIFFS 0198

**Exhibit G**

*344284-00*

# Homecomings Financial
*A GMAC Company*

## Broker/Lender Agreement

This Broker/Lender Agreement is made as of this __21ST__ day of __June__, 20 __02__ by and between HomeComings Financial Network, Inc., a Delaware corporation, ("Homecomings") and __OHIO MORTGAGE COMPANY, INC.__

_____ ("Broker/Lender"), and sets forth the terms and conditions which Broker/Lender will provide certain goods, services and facilities to assist Homecomings in its residential mortgage banking business ("Loan Services"). The parties agree as follows:

**1. Relationship of Parties.** Broker/Lender shall conduct all business with Homecomings as a non-exclusive independent contractor, and not as an agent, partner or affiliate of Homecomings, and shall not use Homecomings' name in any advertising, without Homecomings' express written consent. This Broker/Lender Agreement is Broker/Lender's authorization to act as Homecomings' agent for the purpose of delivering notices of action taken as required by the Equal Credit Opportunity Act and its Regulation B.

**2. Broker/Lender Manual.** The HomeComings Financial Network, Inc. Broker/Lender Manual (as amended from time to time, the "Broker/Lender Manual"), along with this Broker/Lender Agreement and any amendments to it constitute the entire agreement between the parties and supersede all prior agreements and understandings relating to their subject matter. Capitalized term used in this Broker/Lender Agreement that are not defined shall have the meaning set forth in the Broker/Lender Manual. In the event of any express conflict between this Broker/Lender Agreement and the Broker/Lender Manual, this Broker/Lender Agreement shall control. The Broker/Lender Manual is hereby incorporated into this Broker/Lender Agreement.

**3. Approved Status/Approved Locations.** Throughout the term of this Broker/Lender Agreement, Broker/Lender will obtain and maintain Approved Status and will transact Loan Services only at Approved Locations.

**4. Registration, Lock-In, Loan Approval, Closing and Funding.** Broker/Lender shall follow all procedures and undertake all responsibilities for Loan Package origination and submission for approval and for arranging Mortgage Loan funding as required by the Broker/Lender Manual. Nothing in this Broker/Lender Agreement or the Broker/Lender Manual requires Homecomings to accept any Mortgage Loan from Broker/Lender or for Broker/Lender to deliver any Mortgage Loan to Homecomings.

**5. Amounts Due to Broker/Lender.** Homecomings shall compensate Broker/Lender based upon the goods furnished, services rendered and facilities provided by Broker/Lender for Homecomings, and using price practices and structures for similar transactions in similar markets to Broker/Lender's as contained in Homecomings' pricing policies, which may change daily.

**6. Warranties, Representations & Covenants.** The parties make all of the warranties, representations, and covenants set forth in the Broker/Lender Manual and are entitled to all rights and remedies available under it and this Broker/Lender Agreement. All such rights and remedies shall be cumulative and the exercise or partial exercise of any such right or remedy shall not preclude the exercise of any other right or remedy, including, any right of set-off. Homecomings reserves the right to require the Broker/Lender as a condition to Homecomings' acceptance of a given Mortgage Loan or groups of Mortgage Loans to make additional warranties in writing.

**7. Termination of Broker/Lender Agreement.** Either party may terminate this Broker/Lender Agreement at any time, upon written notice to the other party.

**8. Attorneys Fees, Venue and Governing Law.** If either party commences an action or proceeding to enforce or obtain a declaration of rights under this Broker/Lender Agreement, the prevailing party shall be entitled to receive all expenses and costs from the other party incurred in the action or proceeding, including reasonable attorneys fees. Venue shall be in Hennepin County, Minnesota, and this Broker/Lender Agreement shall be governed by the laws of the State of Minnesota.

**9. Notices.** All notices required to be in writing shall be delivered to the addresses provided below, or such other address as may be designated in writing. Notices shall be deemed to have been received only (i) upon delivery, if personally delivered to a party; (ii) the next business day after the date of dispatch, if by facsimile transmission; (iii) the next business day after deposit, if delivered by a nationally-recognized courier service offering guaranteed overnight delivery; or (iv) three business days after deposit in the United States first class mail.

**10. Assignment.** Broker/Lender may not assign this Broker/Lender Agreement without prior written consent of Homecomings. Homecomings may assign this Broker/Lender Agreement upon notice to Broker/Lender.

**11. Severability.** If any provisions of this Broker/Lender Agreement shall be held invalid or unenforceable by any court of competent jurisdiction, such holding shall not invalidate or render unenforceable any other provision of this Broker/Lender Agreement.

PLAINTIFF'S EXHIBIT
4
PENGAD 800-631-6989

HFN0001

**12. Entire Agreement.** This Broker/Lender Agreement constitutes the entire agreement between the parties and supersedes all prior agreements and understandings relating to the subject matter of this Broker/Lender Agreement. No supplement, modification, or amendment shall be binding unless executed in writing by both parties.

**13. Waivers.** The failure or delay in exercising any right, power or privilege of this Broker/Lender Agreement, whether by conduct or otherwise, shall not operate as a waiver of such or any other provision of this Broker/Lender Agreement. No waiver shall be binding unless executed in writing by the party making the waiver.

**14. AWD System Sublicense.** Homecomings has a license to use the AWD System from RFC. Any rights or authority Broker/Lender may have to use or access the AWD System, are at all times fully and solely at the discretion of RFC and Homecomings, and such rights and/or authority may be revoked at any time by RFC or Homecomings (with or without reason). Broker/Lender's use of the AWD System is also conditioned on Broker/Lender's execution and delivery of this Broker/Lender Agreement, and is thereafter conditioned on Broker/Lender's continuing compliance with all terms and conditions of this Broker/Lender Agreement.

**IN WITNESS WHEREOF, the parties have signed this Broker/Lender Agreement as of the date set forth above.**

**Broker/Lender**

Name: OHIO MORTGAGE COMPANY, INC.

Address: 4311 RIDGE RD

Fax: 216. 739. 4090

Signature: _____

Print Name: Norman George

Title: Pres.

Signature: _____

Print Name: _____

Title: _____

Signature: _____

Print Name: _____

Title: _____

Signature: _____

Print Name: _____

Title: _____

**HomeComings Financial Network, Inc.**

Address: 1800 Corporate Drive, Suite 484, Fort Lauderdale, FL 33334
(954) 772-5389

Signature: Pat Zadareky

Print Name: Pat Zadareky

Title: Vice President, Regional Operations Manager

HFN0002

**Exhibit H**

DEC-27-2002(FRI) 11:31    OHIO MORTGAGE    (FAX)216 739 4090    P. 005/007

# Uniform Underwriting and Transmittal Summary

## I. Borrower and Property Information

Borrower Name  Patricia McNerney    SSN:

Co-Borrower Name    SSN:

Property Address  1241 Thoreau Road, Lakewood, OH 44107

| Property Type | Project Classification | Occupancy Status | |
|---|---|---|---|
| [✓] Detached Housing | [ ] A/III Condo [ ] E PUD [ ] 1 CO-OP | [✓] Primary Residence | Number of Units  1 |
| [ ] Attached Housing | [ ] B/II Condo [ ] F PUD [ ] 2 CO-OP | [ ] Second home | Sales Price  $ |
| [ ] Condominium | [ ] C/I Condo [ ] III PUD | [ ] Investment Property | Appraised Value  $  120,000 |
| [ ] PUD [ ] CO-OP Project Name | | | |

## II. Mortgage Information

| Loan Type | Amortization Type | Loan Purpose Type | Lien Position |
|---|---|---|---|
| [✓] Conventional | [✓] Fixed-Rate—Monthly Payments | [ ] Purchase | [✓] First Mortgage |
| [ ] FHA | [ ] Fixed-Rate—Bi-Weekly Payments | [✓] Cash-Out Refinance | [ ] Second Mortgage |
| [ ] VA | [ ] Balloon | [ ] No Cash-Out Refinance | Amount of Subordinate Financing |
| [ ] FmHA | [ ] ARM(type) | Purpose of Refinance | |
| | [ ] Other(specify) | Cash-Out/Debt Consolidation | |

| Note Information | Mortgage Originator | Buydown | If Second Mortgage |
|---|---|---|---|
| Original Loan Amount $  108,000 | [ ] Seller | [ ] Yes | Owner of First Mortgage |
| Initial P&I Payment  $  792.47 | [ ] Third Party | [✓] No | [ ] Fannie Mae [ ] Freddie Mac |
| Initial Note Rate  8.000  % | Third Party Name: | | [ ] Seller/Other |
| Note Date | | | Original Loan Amount of First Mortgage |
| Term(in months)  360/360 | | | $ |

## III. Underwriting Information

Underwriter's Name

Appraiser's Name/License #  Laura George

Appraisal Company Name

### Stable Monthly Income

| | Borrower | Co-Borrower | Total |
|---|---|---|---|
| Base Income | $  1,459.47 | $ | $  1,459.47 |
| Other Incomes | $  2,090.00 | $ | $  2,090.00 |
| Positive Cash Flow (Subject Property) | $ | $ | $ |
| Total Income | $  3,549.47 | $ | $  3,549.47 |

### Proposed Monthly Payments
Borrower's Primary Residence

| | |
|---|---|
| Rent | $ |
| First Mortgage P&I | $  792.47 |
| Second Mortgage P&I | $ |
| Hazard Insurance | $  31.00 |
| Taxes | $  230.81 |
| Mortgage Insurance | $  175.00 |
| Homeowners Association Fees | $ |
| Lease/Ground Rent | $ |
| Other | $ |
| Total Primary Housing Expense | $  1,229.28 |
| Other Obligations: | |
| Negative Cash Flow (Subject Property) | $ |

| Qualifying Ratios | | Loan-to-Value Ratios | |
|---|---|---|---|
| Primary Housing Expense/Income  34.633 % | | LTV  90.000 % | |
| Total Obligations/Income  46.240 % | | Total LTV  90.000 % | |

| Qualifying Rate | | | |
|---|---|---|---|
| [✓] Note Rate  8.000 % | | [ ] Bought Down Rate ___ % | All Other Monthly Payments  $  412.00 |
| [ ] ___ % Above Note Rate ___ % | | [ ] Other ___ % | Total All Monthly Payments  $  1,641.28 |
| [ ] ___ % Below Note Rate ___ % | | | |

Underwriter Comments (if more space is needed, use page two)    Bor/Co-B: FICO-584  TU-522  Eqfx-564

## IV. Seller, Contract, and Contact Information

| | |
|---|---|
| Seller Name | Contact Name |
| Seller Address | Contact Title |
| | Contact's Phone Number ___ ext. |
| Seller No. ___ Investor Loan No. | |
| Seller Loan No. | Contact's Signature |
| Master Commitment No. | Date |
| Contract No. | Type of Commitment [ ] Standard [ ] Negotiated |

## V. Delivery Data (Completion of this section is optional; however, the data must be transmitted on the applicable Fannie Mae or Freddie Mac delivery form when the mortgage is delivered for sale.) (See FNMA 1008A/FHLMC 1077A for a list of valid codes.)

| Borrower Information | Property Information | | |
|---|---|---|---|
| Number of Borrowers | Number of Bedrooms | Gross Monthly Rents | Year Built |
| Borrower Age  44 | Unit 1 | Unit 1 $ | |
| Co-Borrower Age | Unit 2 | Unit 2 $ | |
| Are any of the occupant borrowers first-time homebuyers? [ ] Yes [✓] No | Unit 3 | Unit 3 $ | |
| | Unit 4 | Unit 4 $ | |

## Information for Government Monitoring Purposes Only

Borrower Race code  5    Borrower Gender Code  2    Co-Borrower Race Code  8    Co-Borrower Gender Code  4

### Mortgage Insurance

| | | | |
|---|---|---|---|
| Mortgage Insurer (MI) Code | Percentage of Coverage ___ % | Code 1 ___ | Code 3 ___ Code 5 ___ |
| Certificate Number | Adjustor Coverage [ ] Yes [✓] No | Code 2 ___ | Code 4 ___ Code 6 ___ |

Freddie Mac Form 1077 3/97
Fannie Mae Form 1008 3/97

Calyx Form 1008 Transum.hp 3/95


DEFENDANT'S
EXHIBIT
ᥩᥩᥩ

**Exhibit I**

## FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

**Borrower:**
PATRYCIA JOANNE MCNERNEY
1241 THOREAU ROAD
WOOD, OH 44107

**Creditor:**
HOMECOMINGS FINANCIAL NETWORK, INC.
27725 STANSBURY BLVD. SUITE 375
FARMINGTON HILLS, MI 48334

Loan Number    1993-9          Date: 12/27/2002

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of payments |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. |
| 10.1493% | $204,168.04 | $102,624.18 | $306,792.22 |

**Your payment schedule will be:**

| No. of Pmts. | Amount of Pmts. | Monthly Pmts. Begin | No. of Pmts. | Amount of Pmts. | Monthly Pmts. Begin | No. of Pmts. | Amount of Pmts. | Monthly Pmts. Begin |
|---|---|---|---|---|---|---|---|---|
| 120 | 970.67 | 02/01/2003 | | | | | | |
| 7 | 810.47 | 02/01/2013 | | | | | | |
| 232 | 792.47 | 09/01/2013 | | | | | | |
| 1 | 785.49 | 01/01/2033 | | | | | | |

**INSURANCE:** The following insurance is required to obtain credit:    * Property
You may obtain the insurance from anyone that is acceptable to creditor.

**SECURITY:** You are giving a security interest in real property you already own.
Property Address: 1241 THOREAU ROAD, LAKEWOOD, OH  44107

**LATE CHARGE:** If a payment is more than 15 days late, you will be charged 5 % of the
overdue payment of principal and interest.

**PREPAYMENT:** If you pay off your loan early,    * You will not have to pay a penalty.
* You will not be entitled to a refund of part of the finance charge.

**ASSUMPTION:** Someone buying your property cannot assume the remainder of your loan on the
original terms.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before
the scheduled date, and prepayment refunds and penalties.

_Patricia Joanne Mc Nerney_          12-27-02
PATRICIA JOANNE MCNERNEY                  DATE



PLAINTIFF'S
EXHIBIT

PLAINTIFFS 0134

**Exhibit J**

## NOTICE OF RIGHT TO CANCEL

| | | |
|---|---|---|
| **LENDER:** | HOMECOMINGS FINANCIAL NETWORK, INC.<br>27725 Stansbury Blvd, Suite 375<br>Farmington Hills, MI 48334 | **DATE:** 12/27/2002<br>**LOAN NO.:** 993-9<br>**TYPE:** FNMA:30YR |

**BORROWERS:** PATRICIA JOANNE MCNERNEY

**ADDRESS:** 1241 THOREAU ROAD
**CITY/STATE/ZIP:** LAKEWOOD, OH 44107
**PROPERTY:**

You are entering into a transaction that will result in a mortgage on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

    (1)    The date of the transaction, which is  DECEMBER 27TH, 2002          ; or
    (2)    The date you received your Truth in Lending disclosures; or
    (3)    The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage on your home has been cancelled, and we must return to you any money or property you have given us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

### HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing at:

    HOMECOMINGS FINANCIAL NETWORK, INC.
    27725 Stansbury Blvd, Suite 375
    Farmington Hills, MI 48334
    FAX: 248 426-7165

You may use any written statement that is signed and dated by you and states your intention to cancel and/or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of ᐧ DECEMBER 31ST, 2002          (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above.) If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

### I WISH TO CANCEL

| | |
|---|---|
| _____ | _____ |
| **SIGNATURE** | **DATE** |

---

The undersigned each acknowledge receipt of two copies of NOTICE of RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

| *Patricia Joanne McNerny* | 12-27-02 | | |
|---|---|---|---|
| PATRICIA JOANNE MCNERNEY | Date | | Date |
| _____ | Date | _____ | Date |
| _____ | Date | _____ | Date |
| _____ | Date | _____ | Date |
| _____ | Date | _____ | Date |
| _____ | Date | _____ | Date |

PLAINTIFF'S
EXHIBIT
13
PENGAD 800-631-6989

**Exhibit K**

12/30/02 5:10 PM                  OMB No. 2502-0265

| A. U.S. Department of Housing and Urban Development | B. Type of Loan |
|---|---|
| **FINAL** | 1. [ ] FHA   2. [ ] FMHA   3. [ ] Conv. Unins. <br> 4. [ ] VA   5. [X] Conv. Ins. <br> 6. File Number: 201548    7. Loan Number: 993-9 |
| **Settlement Statement** | 8. Mortgage Ins. Case No. |

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked ("POC") were paid outside the closing; they are shown here for information purposes and are not included in the totals.

**D. Name of Borrower:** Patricia Joanne Kellicker, NKA Patricia Joanne McNerney, 1241 Thoreau Road, Lakewood, OH 44107

**E. Name of Seller:**

**F. Name of Lender:** Homecomings Financial Network, Inc., 27725 Stansbury Blvd, Suite # 375, Farmington Hills, MI 48334

**G. Property Location:** Known as being sublot no. 35

1241 Thoreau Road, Lakewood, OH 44107

**H. Settlement Agent:** Brooklyn Title Agency, Inc. (216) 739-9100      TIN:

**Place of Settlement:** 4355 Ridge Road, Brooklyn, OH 44144

**I. Settlement Date:** 12/27/02      Proration Date: 1/2/03

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100.** Gross amount due from borrower: | | **400.** Gross amount due to seller: | |
| **101.** Contract sales price | | **401.** Contract sales price | |
| **102.** Personal property | | **402.** Personal property | |
| **103.** Settlement charges to borrower (line 1400) | 116,173.85 | **403.** | |
| **104.** | | **404.** | |
| **105.** | | **405.** | |
| *Adjustments for items paid by seller in advance:* | | *Adjustments for items paid by seller in advance:* | |
| **106.** City/town taxes | | **406.** City/town taxes | |
| **107.** County taxes | | **407.** County taxes | |
| **108.** Assessments | | **408.** Assessments | |
| **109.** | | **409.** | |
| **110.** | | **410.** | |
| **111.** | | **411.** | |
| **112.** | | **412.** | |
| **120.** Gross amount due from borrower: | 116,173.85 | **420.** Gross amount due to seller: | 0.00 |
| **200.** Amounts paid by or in behalf of the borrower: | | **500.** Reduction in amount due to seller: | |
| **201.** Deposit or earnest money | | **501.** Excess deposit (see instructions) | |
| **202.** Principal amount of new loan | 108,000.00 | **502.** Settlement charges to seller (line 1400) | 0.00 |
| **203.** Existing loan(s) taken subject to | | **503.** Existing loan(s) taken subject to | |
| **204.** | | **504.** Payoff of first mortgage loan | |
| **205.** | | **505.** Payoff of second mortgage loan | |
| **206.** | | **506.** | |
| **207.** | | **507.** | |
| **208.** | | **508.** | |
| **209.** 1 day of interest credit | 23.67 | **509.** | |
| *Adjustments for items unpaid by seller:* | | *Adjustments for items unpaid by seller:* | |
| **210.** City/town taxes | | **510.** City/town taxes | |
| **211.** County taxes | | **511.** County taxes | |
| **212.** Assessments | | **512.** Assessments | |
| **213.** | | **513.** | |
| **214.** | | **514.** | |
| **215.** | | **515.** | |
| **216.** | | **516.** | |
| **217.** | | **517.** | |
| **218.** | | **518.** | |
| **219.** | | **519.** | |
| **220.** Total paid by/for borrower: | 108,023.67 | **520.** Total reduction in amount due seller: | 0.00 |
| **300.** Cash at settlement from/to borrower: | | **600.** Cash at settlement to/from seller: | |
| **301.** Gross amount due from borrower (line 120) | 116,173.85 | **601.** Gross amount due to seller (line 420) | 0.00 |
| **302.** Less amount paid by/for borrower (line 220) | 108,023.67 | **602.** Less total reduction in amount due seller (line 520) | 0.00 |
| **303.** CASH [X]FROM [ ]TO BORROWER | 8,150.18 | **603.** CASH [ ]FROM [ ]TO SELLER | 0.00 |

**SUBSTITUTE FORM 1099 SELLER STATEMENT** - The information contained in Blocks E, G, H and I and on line 401 (or, if line 401 is asterisked, lines 403 and 404), 406, 407 and 408-412 (applicable part of buyer's real estate tax reportable to the IRS) is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.

**SELLER INSTRUCTION** - If this real estate was your principle residence, file form 2119, Sale or Exchange of Principal Residence, for any gain, with your income tax return; for other transactions, complete the applicable parts of form 4797, Form 6252 and/or Schedule D (Form 1040).

You are required by law to provide Brooklyn Title Agency, Inc. (216) 739-9100 with your correct taxpayer identification number.

If you do not provide Brooklyn Title Agency, Inc. (216) 739-9100 with your correct taxpayer identification number, you may be subject to civil or criminal penalties.



PLAINTIFF'S
EXHIBIT

| | L. Settlement Charge | | 12-30-02 3:19PM | | File Number: 201549 | |
|---|---|---|---|---|---|---|
| | | | | | Paid From | Paid From |
| 700. | Total sales/broker commits: | | | | Borrower's | Seller's |
| | Division of commission (line 700) as follows: | | | | Funds at | Funds at |
| 701. | $ | | | | Settlement | Settlement |
| 702. | $ | | | | | |
| 703. | Commission paid at settlement | | | | | |
| 704. | | | | | | |
| 800. | Items payable in connection with loan | | | | | |
| 801. | Loan origination fee | to | OMC Lending, Inc. | | 2,604.00 | |
| 802. | Loan discount | to | OMC Lending, Inc. | (1%) | 1,650.00 | |
| 803. | Appraisal fee | | | | | |
| 804. | Credit report | | | | | |
| 805. | Lender's inspection fee | | | | | |
| 806. | Mortgage insurance application fee | | | | | |
| 807. | Assumption fee | | | | | |
| 808. | Underwriting Fee | to | Homecomings Financial Network, Inc. | | 295.00 | |
| 809. | Tax Service Fee | to | Homecomings Financial Network, Inc | | 85.00 | |
| 810. | Closing Fee | to | Homecomings Financial Network, Inc. | | 150.00 | |
| 811. | Flood Certification | to | Homecomings Financial Network, Inc. | | 10.50 | |
| 812. | Administration Fee | to | OMC Lending, Inc. | | 250.00 | |
| 813. | Processing Fee | to | OMC Lending, Inc. | | 645.00 | |
| 814. | Broker Fee from HF | to | OMC Lending, Inc. | POCL 2430.00 | | |
| 900. | Items required by lender to be paid in advance | | | | | |
| 901. | Interest from | | | | | |
| 902. | Mortgage insurance premium for | | | | | |
| 903. | Hazard insurance premium for | 1 yrs | to All State | | 372.00 | |
| 904. | | | | | | |
| 905. | | | | | | |
| 1000. | Reserves deposited with lender | | | | | |
| 1001. | Hazard Insurance | | 2 mo @ $31.0000 per mo | | 62.00 | |
| 1002. | Mortgage Insurance | | | | | |
| 1003. | City property taxes | | | | | |
| 1004. | County property taxes | | 2 mo @ $230.8100 per mo. | | 461.62 | |
| 1005. | Annual assessments (maint.) | | | | | |
| 1006. | | | | | | |
| 1007. | | | | | | |
| 1008. | | | | | | |
| 1009. | Aggregate Adjustment | | | | | |
| 1100. | Title charges | | | | | |
| 1101. | Settlement or closing fee | to | Brooklyn Title Agency, Inc. | | 325.00 | |
| 1102. | Abstract or title search | | | | | |
| 1103. | Title examination | to | Brooklyn Title Agency, Inc. | | 920.00 | |
| 1104. | Title insurance binder | to | Brooklyn Title Agency, Inc. | | 50.00 | |
| 1105. | Document preparation | | | | | |
| 1106. | Notary fees | | | | | |
| 1107. | Attorney's fees to Natalie Grubb | | | | | |
| | includes above items no.: | | | | | |
| 1108. | Title insurance | to | Brooklyn Title Agency, Inc | | 370.00 | |
| | includes above items no.. | | | | | |
| 1109. | Lender's coverage | | $109,000.00 | $370.00 | | |
| 1110. | Owner's coverage | | | | | |
| 1111. | EPA Endorsement | to | Brooklyn Title Agency, Inc | | 76.00 | |
| 1112. | Comprehensive Endorsement | to | Brooklyn Title Agency, Inc. | | 150.00 | |
| 1113. | Wire Courier Fee | to | Brooklyn Title Agency, Inc. | | 45.00 | |
| 1114. | E-um Update | to | Brooklyn Title Agency, Inc. | | 35.00 | |
| 1115. | Conditional Filing Fee | to | Brooklyn Title Agency, Inc. | | 25.00 | |
| 1116. | Transfer Fee | | | | | |
| 1117. | Hold Signature | to | Brooklyn Title Agency, Inc. | | 25.00 | |
| 1118. | Special Tax Search | | | | | |
| 1200. | Government recording and transfer charges | | | | | |
| 1201. | Recording fees. | | Mortgage 570.00 | | 70.00 | |
| 1202. | City/county tax/stamps. | | | | | |
| 1203. | State tax/stamps | | | | | |
| 1204. | | | | | | |
| 1205. | | | | | | |
| 1206. | | | | | | |
| 1300. | Additional settlement charges | | | | | |
| 1301. | Survey Hall & Associates | | | | | |
| 1302. | Pest Inspection | | | | | |
| 1303. | Payoff 1st Mtg | to | Household Realty Corporation | | 98,349.94 | |
| 1304. | Payoff | to | Capital One | | 1,600.00 | |
| 1305. | Payoff | to | Capital One | | 1,207.20 | |
| 1306. | Payoff | to | Capital One | | 600.00 | |
| 1307. | Payoff | to | Capital One | | 1,139.04 | |
| 1308. | Payoff | to | Capital One | | 509.18 | |
| 1308. | 2001 Taxes and FH 2002 | to | Cuyahoga County Treasurer | | 6,647.18 | |
| 1400. | Total settlement charges (entered on lines 103, section J and 502, section K) | | | | 115,173.85 | |

CERTIFICATION: I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipt and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of HUD-1 Settlement Statement.

*Patricia Joanne Keliicker*, HKA Patricia Joanne McNerney

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

Brooklyn Title Agency, Inc.                                    Date

SELLER'S AND/OR PURCHASER'S STATEMENT Seller's and Purchaser's signature hereon acknowledges his/their approval of tax prorations and agrees that understanding that prorations were based on taxes for the preceding year, or estimates for the current year, and in the event of any change for the current year, all necessary adjustments must be made between Seller and Purchaser; likewise any default in quarterly taxes will be evidenced to Title Company by the Seller.

Title Company, as is serving as Escrow Agent, is and has been authorized to disperse all funds it receives in this transaction to any financial institution whose affiliated or not. Both named institution may provide Title Company computer accounting and audit services directly or through a separate entity which, if affiliated with Title Company, may charge the financial institution reasonable and proper compensation therefore and retain any profit therefrom. Any escrow fees paid by any party received in this transaction shall only be for checkwriting and input to the computer, and not for aforesaid accounting and audit services. Title Company shall not be liable for any interest or other charges on the earnest money and shall be under no duty to invest or reinvest funds held by it at any time. Seller and Purchaser hereby acknowledge and consent to the deposit of the escrow money in financial institutions with which Title Company has or may have other banking relationships and hereby consent to the retention by Title Company and/or its affiliates of any and all benefits (including advantages from interest rate on loans) Title Company and/or its affiliates may achieve from such financial institutions by reason of the establishment of said escrow accounts.

Purchaser/Borrower                                    Seller

*Patricia Joanne Keliicker*, HKA Patricia Joanne McNerney

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

**<u>Exhibit L</u>**

# FIRST PAYMENT NOTICE

DECEMBER 27, 2002
**Date**

993-9
**Loan Number**

Dear Borrower:

We wish to take this opportunity to welcome you as a customer of   HomeComings Financial Network, Inc.                                         and to provide you with the following information regarding your loan.

In accordance with the terms of the Note and Mortgage, your first monthly payment is due and payable on or before FEBRUARY 1, 2003                         . All succeeding payments are due and payable on the first day of the month.

Your initial monthly payment will be as follows:

| | |
|---|---|
| Monthly Principal and Interest: | $ 792.47 |
| Monthly Property Tax Deposit: | $ 230.81 |
| Monthly Hazard Insurance Deposit: | $ 31.00 |
| Monthly Annual Assessment Amount: | $ |
| Monthly Flood Insurance Deposit: | $ |
| Monthly Mortgage Insurance Deposit: | $ 178.20 |
| | $ |
| | $ |
| | $ |
| **Total Initial Monthly Payment:** | $ 1232.48 |

You will be provided with monthly payment coupons for your convenience. However, if your initial payment coupon has not arrived by the time you need to make your payment, please detach and mail the coupon below along with your check to the address indicated. Our mailing address for all correspondence is:

GMAC Mortgage Corporation
P.O. Box 780
Waterloo, IA 50704-0780
800-766-4622

**Please include your loan number on all correspondence.**

Please provide us with the following information in order for us to assure timely receipt of your monthly mortgage billing statements and to correspond with you on any other matters of importance. Please sign below and return to the mailing address provided above.

*Mailing Address/P.O. Box _____
                      (* indicate mailing address after loan settlement)

City, State & Zip Code _____

Present Telephone Number (include area code)_____

If I/We the Borrower(s) desire the mailing address to be different than the address of the Property indicated on the Deed of Trust, Borrower(s) must provide the correct mailing address. I/We certify the above mailing information to be true and correct and further agree to notify the holder of service of the note immediately of any change of address by certified mail, return receipt requested, to the above referenced address. No other knowledge, whether actual or constructive by the holder of the Note or any of its agents or employees, will be sufficient to put the holder of the Note on notice of any change of Borrower(s) mailing address and/or telephone number.

_Patricia Joanne McNerney_
PATRICIA JOANNE MCNERNEY          (-Borrower                                        -Borrower

_____          _____
                      -Borrower                                        -Borrower

---------------------------------------------------------------------------------------------------------------------

## FIRST PAYMENT COUPON

**NAME:** PATRICIA JOANNE MCNERNEY                    **LOAN NUMBER:** 993-9
**AMOUNT:** $1,232.48                                          **DATE DUE:** FEBRUARY 1, 2003

A late charge will be assessed if payment is received at this designated location after the 15th calendar day following the due date indicated above.

| | |
|---|---|
| **Send payment to:** | **Using overnight mail service, send payment to:** |
| GMAC Mortgage Corporation | GMAC Mortgage Corporation |
| P.O. Box 780 | 3451 Hammond Ave |
| Waterloo, IA 50704-0780 | Waterloo, IA 50702 |



PLAINTIFF'S
EXHIBIT
4

**Exhibit M**

## Notice Concerning Private Mortgage Insurance - Initial Disclosure - Fixed Rate Mortgages

Borrower Name(s):
PATRICIA JOANNE MCKERNEY

Lender:
HOMECOMINGS FINANCIAL NETWORK, INC.
27725 STANSBURY BLVD, SUITE 375
FARMINGTON HILLS, MI 48334

Loan Number:          993-9
Property Address:
1241 THOREAU ROAD
LAKEWOOD, OH 44107

Date: 12/27/2002

You are obtaining a mortgage loan that requires private mortgage insurance ("PMI"). PMI protects lenders and others against financial loss when borrowers default. Charges for the insurance are added to your loan payments.

Under certain circumstances, federal law gives you the right to cancel PMI or requires that PMI automatically terminate. This disclosure describes when cancellation and termination may occur. Please note that PMI is not the same as property/casualty insurance - such as homeowner's or flood insurance - which protects you against damage to the property. Cancellation or termination of PMI does not affect any obligation you may have to maintain other types of insurance.

In this disclosure, "loan" means the mortgage loan you are obtaining; "you" means the original borrower (or his or her successors or assigns); and "property" means the property securing the mortgage loan.

**Initial Amortization Schedule**
An amortization schedule showing the principal and interest due on your loan, along with the balance remaining after each scheduled payment, is attached for your reference.

**Borrower Requested Cancellation of PMI**
You have the right to request that PMI be canceled on or after the following dates:

1. The date the principal balance of your loan is first *scheduled* to reach 80% of the original value of the property. This date is      05/01/2012      . For balloon loans with a fixed interest rate and no conditional right to refinance, if applicable, this date may not be reached before the loan matures.

2. The date the principal balance *actually* reaches 80% of the original value of the property.

"Original value" means the lessor of the contract sales price of the property or the appraised value of the property at the time the loan was closed. If this loan refinances an existing loan secured by the property, "original value" means the appraised value relied on by the lender to approve this loan.

PMI will only be canceled if all the following conditions are satisfied:

1. you submit a written request for cancellation;
2. you have a good payment history;
3. you are current on the payments required by your loan; and
4. we receive, if requested and at your expense, evidence satisfactory to the holder of your loan that the value of the property has not declined below its original value, and certification that there are no subordinate liens on the property.

A "good payment history" means no payments 60 or more days past due within two years and no payments 30 or more days past due within one year of the later of (a) the cancellation date, or (b) the date you submit a request for cancellation.

**Automatic Termination of PMI**
If you are current on your loan payments, PMI will automatically terminate on the date the principal balance of your loan is first *scheduled* to reach 78% of the original value of the property. This date is      08/01/2013      . For balloon loans with a fixed interest rate and no conditional right to refinance, if applicable, this date may not be reached before the loan matures. If you are not current on your loan payments as of that date, PMI will automatically terminate on the first day of the month immediately following the date you thereafter become current on your payments.

**Exceptions to Cancellation and Automatic Termination**
The cancellation and automatic termination requirements described above do not apply to certain loans that may present a higher risk of default. Your loan, however, does not fall into this category. Accordingly, the cancellation and automatic termination provisions described above apply to your loan.

I/We have received a copy of this disclosure and initial amortization schedule.

_Patricia Joanne McKerney_  12.27.02
Borrower PATRICIA J/JOANNE MCKERNEY          Date          Borrower          Date

Borrower          Date          Borrower          Date

Borrower          Date          Borrower          Date

Borrower          Date          Borrower          Date

-875 (0107)    Form C-1    7/01
VMP MORTGAGE FORMS - (800)521-7291
© 1992, 2001 America's Community Bankers®,
Mortgage Bankers Association of America
FIXED/PMI-11/01


PLAINTIFF'S
EXHIBIT
PENGAD 800-631-6989

PLAINTIFFS 0013

**Exhibit N**

Property Job Summary.                                                                 Page 1 of 4

🔲 Core

CoreLogic Field Services
1 First American Way
Westlake, TX 76262
1-800-873-4532

Client:
Loan # ▆▆▆9939
Guarantor : CONV

Mortgagor: PATRICIA MCNERNEY
Address :   1241 THOREAU ROAD
            LAKEWOOD OH 44107~

| Job ID | Invoice Number | Property Job | Request Type | Date Received | Requested Date | Invoice Date | Invoice Number | Invoice Support | Property Status | Order Status |
|--------|------|--------|-----------|------------|------------|------------|----------|---------|----------------|-----------|
| 224183875 | | Property | Property Inspection - No Contact | 10/28/2010 | 11/01/2010 | -- | | | Vacant & Locked | Completed |
| 223617465 | | Property | Property Inspection - No Contact | 9/28/2010 | 10/04/2010 | 10/05/2010 | 31204486 | $11.25 | Occupied Name Unknown | Completed |
| 223059418 | | Property | Property Inspection - No Contact | 8/28/2010 | 8/31/2010 | 9/02/2010 | 30712118 | $11.25 | Occupied Name Unknown | Completed |
| 222509370 | | Property | Property Inspection - No Contact | 7/29/2010 | 8/03/2010 | 8/04/2010 | 30252046 | $11.25 | Occupied Name Unknown | Completed |
| 221964513 | | Property | Property Inspection - No Contact | 6/29/2010 | 7/03/2010 | 7/05/2010 | 29798872 | $11.25 | Occupied Name Unknown | Completed |
| 221447695 | | Property | Foreclosure Inspection | 5/29/2010 | 6/02/2010 | 6/04/2010 | 29317893 | $11.25 | Owner (Mortgagor) | Completed |
| 220925776 | | Property | Foreclosure Inspection | 4/29/2010 | 5/01/2010 | 5/03/2010 | 28851596 | $11.25 | Occupied Name Unknown | Completed |
| 220428308 | | Property | Foreclosure Inspection | 3/30/2010 | 4/02/2010 | 4/05/2010 | 28414291 | $11.25 | Occupied Name Unknown | Completed |
| 219928836 | | Property | Foreclosure Inspection | 3/01/2010 | 3/06/2010 | -- | | | Vacant & Locked | Completed |
| 219920821 | | Property | Foreclosure Inspection | 2/26/2010 | 3/06/2010 | 3/08/2010 | 28022258 | $11.25 | Vacant & Locked | Completed |
| 219418644 | | Property | Foreclosure Inspection | 1/27/2010 | 1/30/2010 | 2/01/2010 | 27576667 | $11.25 | Vacant & Locked | Completed |
| 218998374 | | Property | Property Inspection - No Contact | 1/09/2010 | 1/17/2010 | 1/18/2010 | 27248891 | $11.25 | Occupied Name Unknown | Completed |
| 218478267 | | Property | Property Inspection - No Contact | 12/10/2009 | 12/14/2009 | 12/14/2009 | 26721442 | $11.25 | Occupied Name Unknown | Completed |
| 217973455 | | Property | Property Inspection - No Contact | 11/10/2009 | 11/15/2009 | 11/16/2009 | 26325979 | $11.25 | Occupied Name Unknown | Completed |
| 217410278 | | Property | Property Inspection - No Contact | 10/11/2009 | 10/13/2009 | 10/13/2009 | 25786202 | $11.25 | Occupied Name Unknown | Completed |
| 216784548 | | Property | Property Inspection - No Contact | 9/10/2009 | 9/14/2009 | 9/14/2009 | 25263237 | $11.25 | Occupied Name Unknown | Completed |
| 216171955 | | Property | Property Inspection - No Contact | 8/11/2009 | 8/18/2009 | 8/19/2009 | 24850392 | $11.25 | Occupied Name Unknown | Completed |
| 215608390 | | Property | Property Inspection - No Contact | 7/11/2009 | 7/19/2009 | 7/20/2009 | 24327488 | $11.25 | Occupied Name Unknown | Completed |
| 215011549 | | Property | Property Inspection - No Contact | 6/11/2009 | 6/13/2009 | 6/15/2009 | 23757882 | $11.25 | Occupied Name Unknown | Completed |
| 214456574 | | Property | Property Inspection - No Contact | 5/12/2009 | 5/18/2009 | 5/19/2009 | 23322200 | $11.25 | Occupied Name Unknown | Completed |

Property Job Summary.                                                                                    Page 2 of 4

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 213940713 | | Property | Property Inspection - No Contact | 4/11/2009 | 4/14/2009 | 4/14/2009 | 22791556 | $11.25 | Occupied Name Unknown | Completed |
| 213396461 | | Property | Property Inspection - No Contact | 3/12/2009 | 3/12/2009 | 3/13/2009 | 22313412 | $11.25 | Occupied Name Unknown | Completed |
| 212897397 | | Property | Borrower Interview | 2/10/2009 | 2/16/2009 | 2/17/2009 | 22133540 | $11.25 | Occupied Name Unknown | Completed |
| 212370655 | | Property | Property Inspection - No Contact | 1/09/2009 | 1/16/2009 | 1/21/2009 | 21604183 | $11.25 | Occupied Name Unknown | Completed |
| 211893434 | | Property | Borrower Interview | 12/11/2008 | 12/11/2008 | 12/11/2008 | 21080498 | $11.25 | Occupied Name Unknown | Completed |
| 211415892 | | Property | Borrower Interview | 11/11/2008 | 11/15/2008 | 11/19/2008 | 20772967 | $11.25 | Occupied Name Unknown | Completed |
| 210892413 | | Property | Borrower Interview | 10/11/2008 | 10/14/2008 | 10/14/2008 | 20318247 | $11.25 | Occupied Name Unknown | Completed |
| 210368392 | | Property | Borrower Interview | 9/11/2008 | 9/15/2008 | 9/16/2008 | 19975373 | $11.25 | Occupied Name Unknown | Completed |
| 209868179 | | Property | Property Inspection - No Contact | 8/12/2008 | 8/17/2008 | 8/18/2008 | 19610146 | $11.25 | Occupied Name Unknown | Completed |
| 209407086 | | Property | Property Inspection - No Contact | 7/12/2008 | 7/18/2008 | 7/21/2008 | 19279733 | $11.25 | Occupied Name Unknown | Completed |
| 208878427 | | Property | Property Inspection - No Contact | 6/12/2008 | 6/19/2008 | 6/20/2008 | 18861619 | $11.25 | Occupied Name Unknown | Completed |
| 208339451 | | Property | Borrower Interview | 5/13/2008 | 5/18/2008 | 5/20/2008 | 18413291 | $11.25 | Occupied Name Unknown | Completed |
| 207876673 | | Property | Borrower Interview | 4/12/2008 | 4/18/2008 | 4/18/2008 | 18043333 | $11.25 | Owner (Mortgagor) | Completed |
| 207335743 | | Property | Borrower Interview | 3/13/2008 | 3/19/2008 | 3/20/2008 | 17680152 | $11.25 | Occupied Name Unknown | Completed |
| 206776933 | | Property | Borrower Interview | 2/12/2008 | 2/16/2008 | 2/19/2008 | 17230831 | $11.25 | Occupied Name Unknown | Completed |
| 206212016 | | Property | Borrower Interview | 1/12/2008 | 1/19/2008 | 1/22/2008 | 16799935 | $11.25 | Occupied Name Unknown | Completed |
| 205679718 | | Property | Borrower Interview | 12/13/2007 | 12/19/2007 | 12/21/2007 | 16374200 | $11.25 | Occupied Name Unknown | Completed |
| 205185263 | | Property | Borrower Interview | 11/13/2007 | 11/15/2007 | 11/19/2007 | 15943657 | $11.25 | Occupied Name Unknown | Completed |
| 204898401 | | Property | Borrower Interview | 10/13/2007 | 10/23/2007 | 10/23/2007 | 15639681 | $11.25 | Occupied Name Unknown | Completed |
| 204483122 | | Property | Borrower Interview | 9/08/2007 | 9/10/2007 | 9/11/2007 | 15195854 | $11.25 | Occupied Name Unknown | Completed |
| 204187920 | | Property | Borrower Interview | 8/09/2007 | 8/10/2007 | 8/13/2007 | 14882330 | $11.25 | Occupied Name Unknown | Completed |
| 203897338 | | Property | Borrower Interview | 7/10/2007 | 7/16/2007 | 7/17/2007 | 14610252 | $11.25 | Occupied Name Unknown | Completed |
| 203642726 | | Property | Borrower Interview | 6/09/2007 | 6/16/2007 | 6/29/2007 | 14297841 | $11.25 | Occupied Name Unknown | Completed |
| | | | | | | | | | Occupied | |

Property Job Summary.

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 203321134 | | Property | Borrower Interview | 5/10/2007 | 5/12/2007 | 5/31/2007 | 14090878 | $11.25 | Name Unknown | Completed |
| 203091764 | | Property | Borrower Interview | 4/10/2007 | 4/15/2007 | 4/30/2007 | 13822149 | $11.25 | Occupied Name Unknown | Completed |
| 202746178 | | Property | Borrower Interview | 3/10/2007 | 3/14/2007 | 3/30/2007 | 13609374 | $11.25 | Occupied Name Unknown | Completed |
| 202550206 | | Property | Borrower Interview | 2/08/2007 | 2/10/2007 | 2/28/2007 | 13394458 | $11.25 | Occupied Name Unknown | Completed |
| 202355241 | | Property | Borrower Interview | 1/09/2007 | 1/16/2007 | 1/31/2007 | 13160841 | $15.00 | Occupied Name Unknown | Completed |
| 202001690 | | Property | Borrower Interview | 11/09/2006 | 11/17/2006 | 11/30/2006 | 12740649 | $15.00 | Occupied Name Unknown | Completed |
| 201830570 | | Property | Borrower Interview | 10/10/2006 | 10/15/2006 | 10/31/2006 | 12548724 | $15.00 | Occupied Name Unknown | Completed |
| 201670415 | | Property | Borrower Interview | 9/09/2006 | 9/11/2006 | 9/29/2006 | 12348524 | $15.00 | Occupied Name Unknown | Completed |
| 123246845 | | Property | Borrower Interview | 8/10/2006 | 8/17/2006 | 8/31/2006 | 12118175 | $15.00 | Occupied Name Unknown | Completed |
| 123087151 | | Property | Borrower Interview | 7/11/2006 | 7/14/2006 | 7/31/2006 | 11899045 | $15.00 | Occupied Name Unknown | Completed |
| 122933479 | | Property | Borrower Interview | 6/12/2006 | 6/14/2006 | 6/30/2006 | 11754234 | $15.00 | Occupied Name Unknown | Completed |
| 122760998 | | Property | Borrower Interview | 5/01/2006 | 5/02/2006 | 5/31/2006 | 11574808 | $15.00 | Occupied Name Unknown | Completed |
| 122620426 | | Property | Borrower Interview | 3/30/2006 | 4/05/2006 | 4/28/2006 | 11371193 | $15.00 | Occupied Name Unknown | Completed |
| 122486722 | | Property | Borrower Interview | 2/28/2006 | 3/03/2006 | 3/31/2006 | 11140751 | $15.00 | Occupied Name Unknown | Completed |
| 122347600 | | Property | Borrower Interview | 1/30/2006 | 2/03/2006 | 2/28/2006 | 10959885 | $15.00 | Occupied Name Unknown | Completed |
| 122090580 | | Property | Foreclosure Inspection | 12/13/2005 | 12/15/2005 | 12/30/2005 | 10625171 | $15.00 | Occupied Name Unknown | Completed |
| 121946848 | | Property | Foreclosure Inspection | 11/11/2005 | 11/20/2005 | 11/30/2005 | 10389979 | $15.00 | Occupied Name Unknown | Completed |
| 121644438 | | Property | Foreclosure Inspection | 9/15/2005 | 9/20/2005 | 9/30/2005 | 10077999 | $15.00 | Occupied Name Unknown | Completed |
| 121556992 | | Property | Foreclosure Inspection | 8/16/2005 | 8/18/2005 | 8/31/2005 | 9899905 | $15.00 | Occupied Name Unknown | Completed |
| 121406198 | | Property | Foreclosure Inspection | 7/18/2005 | 7/23/2005 | -- | | | Occupied Name Unknown | Completed |
| 121240823 | | Property | Foreclosure Inspection | 6/16/2005 | 6/20/2005 | 6/30/2005 | 9257853 | $15.00 | Occupied Name Unknown | Completed |
| 121154684 | | Property | Foreclosure Inspection | 5/17/2005 | 5/19/2005 | 5/31/2005 | 9101602 | $15.00 | Occupied Name Unknown | Completed |
| 121031145 | | Property | Foreclosure Inspection | 4/18/2005 | 4/21/2005 | -- | | | Occupied Name Unknown | Completed |
| | | | | | | | | | Occupied | |

Property Job Summary.

| 120760672 | | Property | Foreclosure Inspection | 2/15/2005 | 2/22/2005 | 2/28/2005 | 8690341 | $15.00 | Name Unknown | Completed |
|---|---|---|---|---|---|---|---|---|---|---|
| 120601005 | | Property | Foreclosure Inspection | 1/17/2005 | 1/21/2005 | 1/31/2005 | 8521002 | $15.00 | Occupied Name Unknown | Completed |
| 120406879 | | Property | Foreclosure Inspection | 12/16/2004 | 12/24/2004 | 12/31/2004 | 8368028 | $15.00 | Occupied Name Unknown | Completed |
| 120237089 | | Property | Foreclosure Inspection | 11/16/2004 | 11/20/2004 | 11/30/2004 | 8164373 | $15.00 | Occupied Name Unknown | Completed |
| 120063406 | | Property | Foreclosure Inspection | 10/18/2004 | 10/23/2004 | 10/29/2004 | 8053884 | $15.00 | Occupied Name Unknown | Completed |
| 119924426 | | Property | Foreclosure Inspection | 9/16/2004 | 9/17/2004 | 9/30/2004 | 7919224 | $15.00 | Occupied Name Unknown | Completed |
| 119721243 | | Property | Foreclosure Inspection | 8/17/2004 | 8/19/2004 | 8/31/2004 | 7702980 | $15.00 | Owner (Mortgagor) | Completed |
| 119572939 | | Property | Foreclosure Inspection | 7/19/2004 | 7/21/2004 | 7/30/2004 | 7537957 | $15.00 | Owner (Mortgagor) | Completed |
| 119339518 | | Property | Foreclosure Inspection | 6/17/2004 | 6/21/2004 | 6/30/2004 | 7419320 | $15.00 | Owner (Mortgagor) | Completed |
| 119082409 | | Property | Foreclosure Inspection | 5/18/2004 | 5/22/2004 | 5/31/2004 | 7237643 | $15.00 | Owner (Mortgagor) | Completed |
| 118824972 | | Property | Foreclosure Inspection | 4/15/2004 | 4/19/2004 | 4/30/2004 | 6996814 | $15.00 | Occupied Name Unknown | Completed |
| 118633557 | | Property | Foreclosure Inspection | 3/16/2004 | 3/17/2004 | 3/31/2004 | 6887540 | $15.00 | Owner (Mortgagor) | Completed |
| 118379692 | | Property | Foreclosure Inspection | 2/16/2004 | 2/19/2004 | 2/27/2004 | 6705852 | $15.00 | Owner (Mortgagor) | Completed |
| 118200619 | | Property | Foreclosure Inspection | 1/21/2004 | 1/26/2004 | 1/30/2004 | 6410265 | $15.00 | Owner (Mortgagor) | Completed |
| 117949768 | | Property | Foreclosure Inspection | 12/23/2003 | 12/30/2003 | 1/30/2004 | 6410265 | $15.00 | Occupied Name Unknown | Completed |
| 117679238 | | Property | Foreclosure Inspection | 11/21/2003 | 12/02/2003 | 12/31/2003 | 6185929 | $15.00 | Owner (Mortgagor) | Completed |
| 117248668 | | Property | Borrower Interview | 10/14/2003 | 10/23/2003 | 11/28/2003 | 6076121 | $15.00 | Occupied Name Unknown | Completed |
| 116920358 | | Property | Borrower Interview | 9/12/2003 | -- | -- | | | | Canceled |
| 116630397 | | Property | Borrower Interview | 8/13/2003 | -- | -- | | | | Canceled |
| 116318115 | | Property | Borrower Interview | 7/15/2003 | 7/23/2003 | -- | | | Occupied Name Unknown | Completed |
| 115586033 | | Property | Borrower Interview | 5/13/2003 | 5/22/2003 | -- | | | Occupied Name Unknown | Completed |
| 115253327 | | Property | Borrower Interview | 4/15/2003 | 4/26/2003 | -- | | | Owner (Mortgagor) | Completed |