(D) "Lender" is  HOMECOMINGS FINANCIAL NETWORK, INC.

Lender is a   CORPORATION
organized and existing under the laws of   DELAWARE
Lender's address is   27725 STANSBURY BLVD, SUITE 375
FARMINGTON HILLS, MI 48334
(E) "Note" means the promissory note signed by Borrower and dated DECEMBER 27TH, 2002
The Note states that Borrower owes Lender   ONE HUNDRED EIGHT THOUSAND AND NO/100

Dollars

(U.S. $   108,000.00           ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than JANUARY 1ST, 2033          .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the
COUNTY                                    of CUYAHOGA                                    :
    [Type of Recording Jurisdiction]                          [Name of Recording Jurisdiction]
Legal description attached hereto and made a part hereof

Parcel ID Number: 312-28-084                      which currently has the address of
1241 THOREAU ROAD                                              ,                    [Street]
LAKEWOOD                                        [City], Ohio        44107    [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

MFOH7770 (9/02) /        .993-9
6A(OH) (0201)                        Page 3 of 15        Initials: _____        Form 3036    1/01

File No:201546

## EXHIBIT A - LEGAL DESCRIPTION

Situated in the City of Lakewood, County of Cuyahoga and State of Ohio:

And known as being Sublot No. 35 in the J.A. Zangerle Subdivision of part of original Rockport Township Section No. 21, as shown by the recorded plat in Volume 34 of Maps, Page 7 of the Cuyahoga County Records, and being 50 feet front on the easterly side of Thoreau Road and extending back of equal width 140 18/100 feet deep, as appears by said plat, be the same more or less, but subject to all legal highways.

1241 Thoreau Road, Lakewood, OH 44107

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.**
Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

CUYAHOGA COUNTY RECORDER
200301080120   PAGE 5 of 16

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

CUYAHOGA COUNTY RECORDER
200301060120   PAGE 6 of 16

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

MFOH7770 (9/02) /          '993-9
-6A(OH) (0201)                          Page 6 of 15          Initials _____          Form 3036  1/01

CUYAHOGA COUNTY RECORDER
200301060120  PAGE 7 of 18

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

CUYAHOGA COUNTY RECORDER
200301060120   PAGE 8 of 16

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

CUYAHOGA COUNTY RECORDER
200301060120  PAGE 8 of 16

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

CUYAHOGA COUNTY RECORDER
200301080120   PAGE 11 of 18

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

CUYAHOGA COUNTY RECORDER
200301080120  PAGE 12 of 16

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

CUYAHOGA COUNTY RECORDER
200301060120  PAGE 13 of 16

NON UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Certain Other Advances.** In addition to any other sum secured hereby, this Security Instrument shall also secure the unpaid principal balance of, plus accrued interest on, any amount of money loaned, advanced or paid by Lender to or for the account and benefit of Borrower, after this Security Instrument is delivered to and filed with the Recorder's Office,
County, Ohio, for recording. Lender may make such advances in order to pay any real estate taxes and assessments, insurance premiums plus all other costs and expenses incurred in connection with the operation, protection or preservation of the Property, including to cure Borrower's defaults by making any such payments which Borrower should have paid as provided in this Security Instrument, it being intended by this Section 24 to acknowledge, affirm and comply with the provision of Section 5301.233 of the Revised Code of Ohio.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_Theresa L. Dempsey_

_Patricia Joanne McNerney_ (Seal)
PATRICIA JOANNE MCNERNEY         -Borrower

_Beata Trzaska_
BEATA TRZASKA

_____ (Seal)
                         -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
                         -Borrower

STATE OF OHIO,                                                           County ss: Cuyahoga

This instrument was acknowledged before me this 27H DECEMBER of 2002                 by

PATRICIA JOANNE MCNERNEY, A SINGLE WOMAN


My Commission Expires: 9-11-07

Notary Public



THERESA L.
DEMPSEY
NOTARY PUBLIC
STATE OF OHIO
Recorded in
Cuyahoga Cty.
My Comm. Exp. 9/11/07

This instrument was prepared by
HomeComings Financial Network
27725 Stansbury Blvd, Suite 375
Farmington Hills, MI 48334

**Exhibit E**

Print

# CASE INFORMATION

## CV-03-514406 MORTGAGE ELECT. REG. SYS. INC. vs. PATRICIA JOANNE MCNERNEY AKA KELLICKER ETAL

### Docket Information

| Filing Date | Side | Type | Description | Image |
|---|---|---|---|---|
| 06/07/2010 | P1 | OT | P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. NOTICE OF SUBSTITUTION OF COUNSEL.......(W)........ JEFFREY A LIPPS 0005541 | |
| 05/10/2010 | P | JE | UPON CONSIDERATION OF THE JURISDICTIONAL MEMORANDA FILED IN THIS CASE, THE COURT DECLINES JURISDICTION TO HEAR THE CASE. NOTICE ISSUED. | |
| 12/23/2009 | P | JE | ***CA*** MOTION BY APPELLANTS FOR RECONSIDERATION IS DENIED. NOTICE ISSUED. | |
| 12/17/2009 | N/A | JE | *****C/A*******SUA SPONTE, THE APPEAL IS DISMISSED PER R.C. 2505.02... NOTICE ISSUED | |
| 10/27/2009 | P1 | OT | P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. RESPONSE TO DEFENDANTS "SUPPLEMENT" TO HER MOTION TO CORRECT NUNC PRO TUNC JUDGMENT ENTRY OF SEPTEMBER 14, 2009. LAURA C MCBRIDE 0080059 | |
| 10/22/2009 | D1 | CA | APPELLANT'S 9A RECORD TRANSMITTED TO THE COURT OF APPEALS CONSISTING OF THE TRANSCRIPT OF THE DOCKET, JOURNAL ENTRIES AND THE ORIGINAL PAPERS ON CA NO. 94066. | |
| 10/19/2009 | P1 | OT | P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. SUPPLEMENT TO MOTION FOR PARTIAL RELIEF FROM JUDGMENT ENTERED SEPTEMBER 14, 2009 DISMISSING CASE-MOTION PURSUANT TO RULE 60 B. LAURA C MCBRIDE 0080059 | |
| 10/13/2009 | D1 | CA | -------------------- NOTICE OF APPEAL -------------------- CA NO. 94066 NOTICE OF APPEAL FILED BY THE DEFT. APPELLANT W/A 9A PRAECIPE AND DOCKETING STATEMENT ON THE REGULAR CALENDAR. COPIES MAILED. | |
| 10/06/2009 | P1 | BR | P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. BRIEF IN OPPOSITION TO DEFTS MOTION TO CORRECT NUNC PRO TUNC JUDGMENT ENTRY OF SEPTEMBER 14, 2009. LAURA C MCBRIDE 0080059 | |
| 09/24/2009 | D1 | MO | D1 PATRICIA JOANNE MCNERNEY MOTION TO CORRECT NUNC PRO TUNC JUDGMENT ENTRY OF SEPTEMBER 14, 2009 DISMISSING CASE - MOTION PURSUANT TO RULE 60 B.... SUSAN M GRAY 0062356 10/13/2009 - UNKNOWN | |
| 09/14/2009 | N/A | JE | DESPITE BEING GRANTED AN EXTENSION OF TIME TO PROVIDE THE COURT WITH EVIDENCE THAT IT HELD THE SUBJECT NOTE AT THE TIME THE INSTANT CASE WAS FILED, PLAINTIFF HAS BEEN UNABLE TO COMPLY. CONSEQUENTLY, PURSUANT TO THE COURT ORDER DATED 06/30/2009, WELLS FARGO BANK V. JORDAN, 2009 OHIO 1092 (8TH DIST. CT. APP., MAR. 12, 2009) AND CIVIL RULE 41(B)(1), THE INSTANT CASE IS HEREBY DISMISSED, WITHOUT PREJUDICE, FINAL. COURT COST ASSESSED TO THE PLAINTIFF(S). CLPAL 09/14/2009 NOTICE ISSUED | |
| 09/14/2009 | N/A | MO | GMAC MORTGAGE LLC......MOTION FOR VOLUNTARY DISMISSAL WITHOUT PREJUDICE...LAURA C. MCBRIDE (0080059).. 09/14/2009 - MOOT | |
| 09/02/2009 | D1 | OT | D1 PATRICIA JOANNE MCNERNEY NOTICE OF CHANGE OF ADDRESS OF DEFT'S COUNSEL.......(W).......... SUSAN M GRAY 0062356 | |

Cuyahoga County Clerk of Courts - Case Docket     Page 2 of 15
12-12020-mg    Doc 9280-4    Filed 10/23/15    Entered 10/23/15 16:32:18    Exhibit 3
part 2    Pg 18 of 222

| 08/12/2009 | P1 | MO | P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. MOTION FOR A STATUS CONFERENCE........ LAURA C MCBRIDE 0080059 09/14/2009 - DENIED |
| 08/07/2009 | N/A | MG | PLAINTIFF'S MOTION FOR EXTENSION OF TIME IN WHICH TO PROVIDE BRIEF IN SUPPORT OF STANDING, FILED 07/20/2009, IS GRANTED. PLAINTIFF'S BRIEF IN SUPPORT OF STANDING SHALL BE DUE ON OR BEFORE 08/11/2009. CLPAL 08/07/2009 NOTICE ISSUED |
| 07/20/2009 | P1 | MO | P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. MOTION FOR EXTENSION OF TIME IN WHICH TO PROVIDE BRIEF IN SUPPORT OF STANDING LAURA C MCBRIDE 0080059 08/07/2009 - GRANTED |
| 06/30/2009 | N/A | MG | ATTORNEY CONFERENCE CALLED. COUNSEL FOR PLAINTIFF AND COUNSEL FOR MS. MCNERNEY APPEARED. PURSUANT TO THE 8TH DISTRICT COURT OF APPEALS OPINION IN WELLS FARGO BANK V. JORDAN, 2009 OHIO 1092 (8TH DIST. CT. APP., MAR. 12, 2009), PLAINTIFF HAS 21 DAYS TO PROVIDE THE COURT WITH A BRIEF DEMONSTRATING THAT IT OWNED THE SUBJECT PROMISSORY NOTE AS OF THE DATE OF THE FILING OF ITS COMPLAINT IN THIS CASE. COUNSEL FOR DEFENDANT MAY FILE A REPLY BRIEF WITHIN 21 DAYS OF THE FILING OF PLAINTIFF'S BRIEF. FAILURE OF PLAINTIFF TO DEMONSTRATE STANDING WILL RESULT IN DISMISSAL OF THE CASE WITHOUT PREJUDICE. CLTMP 06/29/2009 NOTICE ISSUED |
| 06/05/2009 | N/A | MG | ATTORNEY CONFERENCE SET FOR 06/29/2009 AT 10:30 AM. FAILURE TO APPPEAR MAY RESULT IN DEFAULT OR DISMISSAL. CLPAL 06/02/2009 NOTICE ISSUED |
| 05/04/2009 | P1 | MO | P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. MOTION FOR STATUS CONFERENCE LAURA C MCBRIDE 0080059 06/05/2009 - GRANTED |
| 01/22/2009 | N/A | OT | PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSION OF LAW.....(W)...... |
| 01/22/2009 | P1 | OT | P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. NOTICE OF FILING TRIAL TRANSCRIPT, EXHIBITS AND INVOICES.....(W)....... LAURA C MCBRIDE 0080059 |
| 01/22/2009 | P1 | OT | P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. NOTICE OF FILING INVOICE......W.... LAURA C MCBRIDE 0080059 |
| 12/22/2008 | D1 | OT | D1 PATRICIA JOANNE MCNERNEY NOTICE OF FILING DISCOVERY RESPONSES AND EXHIBITS TO DEPOSITIONS.....W.... SUSAN M GRAY 0062356 |
| 12/22/2008 | D1 | OT | D1 PATRICIA JOANNE MCNERNEY PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW.....W.... SUSAN M GRAY 0062356 |
| 11/13/2008 | N/A | MG | CASE CALLED FOR BENCH TRIAL. COUNSEL FOR PLAINTIFF, MS. JACKSON (REPRESENTATIVE FOR PLAINTIFF), COUNSEL FOR MS. MCNERNEY, MS. MCNERNEY, AND MS. MCNERNEY'S OLDEST SON AND DAUGHTER APPEARED, AS DID COURT REPORTER CHRISTINA RAYMOND (WHOSE FEES ARE TO BE SUBMITTED TO PLAINTIFF'S COUNSEL AND SHARED EQUALLY BY PLAINTIFF AND DEFENDANT). TESTIMONY TAKEN. PLAINTIFF'S AND DEFENDANT'S MOTIONS FOR DIRECTED VERDICT DENIED. AFTER RECEIPT OF THE TRANSCRIPT AND THE EXHIBITS FROM THE COURT REPORTER, THE COURT WILL REDACT PERSONAL INFORMATION REGARDING MS. MCNERNEY AND HER FAMILY. COUNSEL MAY SUBMIT WRITTEN CLOSING ARGUMENTS AND/OR PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW ON OR BEFORE 12/22/2008. FAILURE TO TIMELY COMPLY WILL RESULT IN WAIVER OF THE OPPORTUNITY TO SUBMIT SAME. CLTMP 11/13/2008 NOTICE ISSUED |
| 11/07/2008 | N/A | MG | DEFENDANT MCNERNEY'S MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS, FILED 10/16/2008, IS DENIED. THE CASE WAS FILED 11/12/2003, AND DEFENDANT MCNERNEY HAS HAD MORE THAN AMPLE |

Cuyahoga County Clerk of Courts - Case Docket          Page 3 of 15
12-12020-mg     Doc 9280-4     Filed 10/23/15     Entered 10/23/15 16:32:18     Exhibit 3
part 2     Pg 19 of 222

| | | | |
|---|---|---|---|
| | | | TIME TO REQUEST AND RECEIVE ANY NECESSARY DISCOVERY. FURTHER, THE BENCH TRIAL IN THIS CASE HAS BEEN POSTPONED REPEATEDLY AND WILL GO FORWARD, AS SCHEDULED, ON 11/10/2008. CLTMP 11/07/2008 NOTICE ISSUED |
| 11/07/2008 | N/A | MG | AS THE INSTANT CASE HAS BEEN PENDING SINCE 11/12/2003 AND THE INSTANT MOTION WAS FILED JUST 10 DAYS PRIOR TO THE BENCH TRIAL SET FOR 11/10/2008 (THUS PREVENTING ALL OTHER PARTIES FROM OPPOSING THE EXPERT REPORT), DEFENDANT MCNERNEY'S MOTION FOR LEAVE TO FILE EXPERT REPORT, FILED 10/29/2008, IS DENIED. CLTMP 11/07/2008 NOTICE ISSUED |
| 11/07/2008 | D1 | SR | SUBPOENA FOR: NANCY GEORGE, SERVED NOV. 5, 2008 AS FOLLOWS: GAVE TO MRS. GEORGE'S HUSBAND AT THEIR RESIDENCE . |
| 11/06/2008 | P1 | BR | P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. BRIEF IN OPP. TO MOTION FOR LEAVE TO FILE EXPERT REPORT.....(W)....... ZOE K. CARLISLE 0078224 |
| 11/05/2008 | P1 | BR | P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. AMENDED TRIAL BRIEF INCLUDING WITNESS & EXHIBIT LIST. ZOE K. CARLISLE 0078224 |
| 11/04/2008 | N/A | MG | BENCH TRIAL SET FOR 11/10/2008 AT 09:00 AM. CLMMH 11/04/2008 NOTICE ISSUED |
| 11/04/2008 | N/A | MG | PURSUANT TO OHIO RULES OF CIVIL PROCEDURE 17(A), PLAINTIFF'S MOTION TO SUBSTITUTE PARTY PLAINTIFF, FILED 10/16/2008, IS GRANTED. THE CLERK OF COURTS IS HEREBY ORDERED TO SUBSTITUTE HOMECOMINGS FINANCIAL, LLC IN PLACE OF THE NAMED PLAINTIFF. THE CLERK TO NOTE ATTORNEY LAURA C. MCBRIDE (0080059) AS COUNSEL OF RECORD FOR THE SUBSTITUTE PLAINTIFF. DEFENDANT MCNERNEY'S MOTION TO DISMISS COMPLAINT FOR FAILURE TO BE THE REAL PARTY IN INTEREST AT THE COMMENCEMENT OF THIS ACTION OR ABSENCE OF SUBJECT MATTER JURISDICTION, FILED 10/20/2008, IS DENIED. CLMMH 11/04/2008 NOTICE ISSUED |
| 11/04/2008 | N/A | MG | PLAINTIFF'S MOTION FOR LEAVE TO FILE REPLY BRIEF IN SUPPORT OF PLAINTIFFS MOTION TO SUBSTITUTE PARTY PLAINTIFF, FILED 10/29/2008, IS GRANTED. CLMMH 11/04/2008 NOTICE ISSUED |
| 10/30/2008 | D1 | OT | D1 PATRICIA JOANNE MCNERNEY NOTICE OF WITHDRAWAL OF COUNSEL. JUSTIN F MADDEN 0062529 |
| 10/29/2008 | D1 | MO | D1 PATRICIA JOANNE MCNERNEY MOTION FOR LEAVE TO FILE EXPERT REPORT........W........ SUSAN M GRAY 0062356 11/07/2008 - DENIED |
| 10/29/2008 | P1 | MO | P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. MOTION FOR LEAVE TO FILE REPLY BRIEF IN SUPPORT OF PLAINTIFFS MOTION TO SUBSTITUTE PARTY PLAINTIFF........W........ ZOE K. CARLISLE 0078224 11/04/2008 - GRANTED |
| 10/29/2008 | P1 | BR | P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. BRIEF IN OPPOSITION TO DEFTS MOTION TO DISMISS........W......... ZOE K. CARLISLE 0078224 |
| 10/23/2008 | D1 | OT | D1 PATRICIA JOANNE MCNERNEY RESPONSE IN OPPOSITION TO MOTION TO SUBSTITUTE HOMECOMINGS FINANCIAL LLC AS PLAINTIFF.....W..... SUSAN M GRAY 0062356 |
| 10/22/2008 | N/A | MG | CASE CALLED FOR BENCH TRIAL. COURT REPORTER RAYMOND, COUNSEL AND CO-COUNSEL FOR PLAINTIFF, REPRESENTATIVE OF PLAINTIFF, COUNSEL FOR MS. MCNERNEY AND MS. MCNERNEY APPEARED. AS A RESULT OF RECENTLY FILED MOTIONS, DEFENDANT MCNERNEY'S MOTION TO CONTINUE THE TRIAL DATE, FILED 10/21/2008, IS GRANTED. NEW BENCH TRIAL DATE (11/10/2008 AT 9AM) TO BE SET BY SEPARATE ORDER. COUNSEL FOR DEFENDANT MCNERNEY HAS UNTIL 10/23/2008 AT 4:30PM TO FILE OPPOSITION TO PLAINTIFF'S MOTION TO SUBSTITUTE PLAINTIFF. COUNSEL FOR |

Cuyahoga County Clerk of Courts - Case Docket                    Page 4 of 15
   12-12020-mg    Doc 9280-4    Filed 10/23/15    Entered 10/23/15 16:32:18    Exhibit 3
                              part 2    Pg 20 of 222

|  |  |  | DEFENDANT MCNERNEY TO PROVIDE A COURTESY COPY TO COUNSEL FOR PLAINTIFF VIA FACSIMILE OR E-MAIL ON OR BEFORE 10/23/2008. SHOULD COUNSEL FOR DEFENDANT SEEK TO SUBMIT AN EXPERT REPORT REGARDING THE "RATE SHEETS" RECENTLY PROVIDED THROUGH DISCOVERY, SAID REPORT SHALL BE SUBMITTED INSTANTER WITH A MOTION FOR LEAVE TO FILE SAME ON OR BEFORE 10/29/2008. COUNSEL FOR DEFENDANT MCNERNEY TO PROVIDE A COURTESY COPY TO COUNSEL FOR PLAINTIFF VIA FACSIMILE OR E-MAIL ON OR BEFORE 10/29/2008. THE COURT WILL SCHEDULE A SEPARATE HEARING ON THE ISSUE OF ATTORNEY FEES, IF NECESSARY, AFTER A MAGISTRATE'S DECISION IS FILED AND ISSUED REGARDING THE MATTERS TRIED TO THE BENCH. CLTMP 10/22/2008 NOTICE ISSUED |
| 10/21/2008 | D1 | BR | D1 PATRICIA JOANNE MCNERNEY 2ND AMENDED TRIAL BRIEF, WITNESS LIST AND EXHIBIT LIST......(W)......... SUSAN M GRAY 0062356 |
| 10/21/2008 | D1 | MO | D1 PATRICIA JOANNE MCNERNEY MOTION TO CONTINUE THE TRIAL DATE......(W)........ SUSAN M GRAY 0062356 10/22/2008 - GRANTED |
| 10/21/2008 | P1 | SR | SUBPOENA FOR: PATRICIA J. MCNERNEY, SERVED 10-21-08 PERSONAL . |
| 10/21/2008 | D1 | SR | SUBPOENA FOR: NANCY GEORGE, SERVED OCT. 17, 2008 AS FOLLOWS: GAVE TO MS. GEORGE'S HUSBAND RAY AT THEIR RESIDENCE . |
| 10/21/2008 | D1 | SR | SUBPOENA FOR: OMC LENDING, UNABLE TO BE SERVED OCT. 17, 2008 AS FOLLOWS: BUILDING APPEARED TO BE VACANT . |
| 10/20/2008 | D3 | OT | D3 CHIEF FINANCIAL OFFICER HOMECOMINGS MEMORANDUM IN OPPOSITION TO PLAINTIFFS MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS.......W........ LAURA C MCBRIDE 0080059 |
| 10/20/2008 | D1 | MO | D1 PATRICIA JOANNE MCNERNEY MOTION TO DISMISS COMPLAINT FOR FAILURE TO BE THE REAL PARTY IN INTEREST AT THE COMMENCEMENT OF THIS ACTION OR ABSENCE OF SUBJECT MATTER JURISDICTION.......W....... SUSAN M GRAY 0062356 11/04/2008 - DENIED |
| 10/17/2008 | D1 | OT | D1 PATRICIA JOANNE MCNERNEY SUPPLEMENT TO MOTION TO COMPEL DISCOVERY......W.... SUSAN M GRAY 0062356 |
| 10/16/2008 | D1 | MO | D1 PATRICIA JOANNE MCNERNEY MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS....W... SUSAN M GRAY 0062356 11/07/2008 - DENIED |
| 10/16/2008 | P1 | MO | P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. MOTION TO SUBSTITUTE PARTY PLAINTIFF......(W)....... LAURA C MCBRIDE 0080059 11/04/2008 - GRANTED |
| 10/14/2008 | D1 | BR | D1 PATRICIA JOANNE MCNERNEY AMENDED TRIAL BRIEF, WITNESS LIST AND EXHIBIT LIST. SUSAN M GRAY 0062356 |
| 10/14/2008 | D4 | BR | D4 CHIEF FINANCIAL OFFICER GMAC MORTGAGE CORP. TRIAL BRIEF, INCLUDING WITNESS & EXHIBIT LISTS FILED.. LAURA C MCBRIDE 0080059 |
| 08/19/2008 | D1 | OT | D1 PATRICIA JOANNE MCNERNEY NOTICE OF APPEARANCE AS COUNSEL FOR DEFTS. JUSTIN F MADDEN 0062529 |
| 07/22/2008 | D | AN | DEFENDANT(S) CHIEF FINANCIAL OFFICER HOMECOMINGS(D3) and CHIEF FINANCIAL OFFICER GMAC MORTGAGE CORP.(D4) COMBINED ANSWER. LAURA C MCBRIDE 0080059 |
| 07/09/2008 | N/A | MG | BENCH TRIAL SET FOR 10/22/2008 AT 09:00 AM. TRIAL BRIEFS, WITNESS LISTS AND STIPULATIONS, IF ANY, MUST BE FILED ON OR BEFORE 10/13/08. THE PROCEEDINGS WILL BE RECORDED ON AUDIO TAPE. IF THE PARTIES WISH THE PROCEEDINGS TO BE RECORDED BY A COURT REPORTER, THE PARTIES MAY PROVIDE A COURT REPORTER AT THEIR OWN EXPENSE. ALL CLIENTS MUST BE PRESENT. FAILRUE TO APPEAR MAY RESULT IN DISMISSAL OF AFFIRMATIVE CLAIMS FOR RELIEF CLTMP 07/08/2008 NOTICE ISSUED |



Cuyahoga County Clerk of Courts - Case Docket                Page 5 of 15
12-12020-mg    Doc 9280-4    Filed 10/23/15    Entered 10/23/15 16:32:18    Exhibit 3
part 2    Pg 21 of 222

| 07/08/2008 | D1 | SH | CUYAHOGA COUNTY SHERIFF DEPT JUNE 23, 2008 DID NOT SERVED SUBPOENA ON: OHIO MORTGAGE INC AS FOLLOWS: COMPANY CLOSED SERVICE FEE $16.50 | |
|---|---|---|---|---|
| 07/08/2008 | D1 | SH | CUYAHOGA COUNTY SHERIFF DEPT JUNE 24, 2008 DID NOT SERVE SUBPOENA ON: OHIO MORTGAGE CO INC AS FOLLOWS: COMPANY CLOSED SERVICE FEE $16.50 | |
| 07/08/2008 | D5 | SH | CUYAHOGA COUNTY SHERIFF DEPT SERVICE FEE $16.50 | |
| 07/08/2008 | D5 | SR | 07/08/2008 12228705 THE WITHIN NAMED OMC LENDING,INC. 07/02/2008 SHERIFF DEPUTY SERV. BUSINESS CLOSED/BLDG FOR SALE | |
| 07/08/2008 | D7 | SH | CUYAHOGA COUNTY SHERIFF DEPT SERVICE FEE $16.50 | |
| 07/08/2008 | D7 | SR | 07/08/2008 12228703 THE WITHIN NAMED GEORGE/NANCY/ 07/02/2008 SHERIFF DEPUTY SERV. BUSINESS CLOSED/BLDG FOR SALE | |
| 07/08/2008 | D6 | SH | CUYAHOGA COUNTY SHERIFF DEPT SERVICE FEE $16.50 | |
| 07/08/2008 | D6 | SR | 07/08/2008 12228706 THE WITHIN NAMED NANCY GEORGE DBA OMC LENDING,INC. 07/02/2008 SHERIFF DEPUTY SERV. BUSINESS CLOSED/BLDG FOR SALE | |
| 07/08/2008 | D7 | SH | CUYAHOGA COUNTY SHERIFF DEPT SERVICE FEE $17.50 | |
| 07/08/2008 | D7 | SR | 07/08/2008 12228702 THE WITHIN NAMED GEORGE/NANCY/ 07/02/2008 SHERIFF DEPUTY SERV. NOT HERE IN MY COUNTY. | |
| 07/08/2008 | D7 | SH | CUYAHOGA COUNTY SHERIFF DEPT SERVICE FEE $17.50 | |
| 07/08/2008 | D7 | SR | 07/08/2008 12228704 THE WITHIN NAMED GEORGE/NANCY/ 07/02/2008 SHERIFF DEPUTY SERV. NOT HERE IN MY COUNTY. | |
| 07/08/2008 | N/A | MG | CASE CALLED FOR BENCH TRIAL. COUNSEL AND REPRESENTATIVE OF SUBSTITUTE PLAINTIFF, COUNSEL AND MS. MCNERNEY, AND (PRIVATE) COURT REPORTER NANCY GEIGER APPEARED. PLAINTIFF'S ORAL REQUEST TO SEVER THE THIRD PARTY CLAIMS AND PROCEED WITH TRIAL IS DENIED. THIRD PARTY DEFENDANTS HOMECOMINGS AND GMAC MORTGAGE CORPORATION HAVE 14 DAYS TO FILE ANSWER OR OTHERWISE RESPOND TO THIRD PARTY COMPLAINT. PARTIES HAVE 60 DAYS TO CONDUCT FACT DISCOVERY. THIRD PARTY PLAINTIFF HAS 30 DAYS TO PERFECT SERVICE ON DEFENDANTS NANCY GEORGE, OMC LENDING, AND NANCY GEORGE DBA OMC LENDING. FAILURE TO TIMELY COMPLY WILL RESULT IN DISMISSAL OF CLAIMS AGAINST THESE DEFENDANTS. BENCH TRIAL TO BE RESCHEDULED BY SEPARATE ORDER. CLTMP 07/08/2008 NOTICE ISSUED | 📄 |
| 07/01/2008 | D6 | SR | SUMS 3RD PTY COMPLNT(12228706) SENT BY CUYAHOGA SHERIFF SERVICE. TO: NANCY GEORGE DBA OMC LENDING,INC. 4311 RIDGE ROAD BROOKLYN, OH 44144-0000 | 📄 |
| 07/01/2008 | D5 | SR | SUMS 3RD PTY COMPLNT(12228705) SENT BY CUYAHOGA SHERIFF SERVICE. TO: OMC LENDING,INC. 4311 RIDGE ROAD BROOKLYN, OH 44144-0000 | 📄 |
| 07/01/2008 | D7 | SR | SUMS 3RD PTY COMPLNT(12228704) SENT BY CUYAHOGA SHERIFF SERVICE. TO: NANCY GEORGE 19905 PARKLANE DRIVE ROCKY RIVER, OH 44116-0000 | 📄 |
| 07/01/2008 | D7 | SR | SUMS 3RD PTY COMPLNT(12228703) SENT BY CUYAHOGA SHERIFF SERVICE. TO: NANCY GEORGE C/O OMC LENDING INC 4311 RIDGE ROAD BROOKLYN, OH 44144-0000 | 📄 |
| 07/01/2008 | D7 | SR | SUMS 3RD PTY COMPLNT(12228702) SENT BY CUYAHOGA SHERIFF SERVICE. TO: NANCY GEORGE 19850 PARKLANE DRIVE ROCKY RIVER, OH 44116-0000 | 📄 |
| 07/01/2008 | D6 | CS | WRIT FEE | |
| 07/01/2008 | D6 | SR | INSTRUCTION FOR SERVICE ON AMENDED ANSWER AND COUNTERCLAIMS ALSO ADDING THIRD PARTY CLAIMS SENT BY SHERIFF SERVICE TO NANCY GEORGE DBA OMC LENDING INC, OMC LENDING INC, AND NANCY GEORGE C/O OMC LENDING INC FILED. | |

Cuyahoga County Clerk of Courts - Case Docket    Page 6 of 15
12-12020-mg    Doc 9280-4    Filed 10/23/15    Entered 10/23/15 16:32:18    Exhibit 3
part 2    Pg 22 of 222

07/01/2008  D5  CS  WRIT FEE
07/01/2008  D7  CS  WRIT FEE
07/01/2008  D7  CS  WRIT FEE
07/01/2008  D7  CS  WRIT FEE
07/01/2008  N/A  JE  FINAL PRETRIAL HELD. ALL COUNSEL AND MS. MCNERNEY PRESENT. PARTIES UNDERTAKE SETTLEMENT NEGOTIATION. PLAINTIFF'S ORAL REQUEST FOR CLARIFICATION OF THE ISSUES TO BE TRIED IS GRANTED. ON 05/15/2008, THE COURT DENIED DEFENDANT'S REQUEST FOR LEAVE TO FILE HER ANSWER AND COUNTERCLAIM TO COMPORT WITH THE SUBSTITUTE PLAINTIFF. CONSEQUENTLY, PENDING BEFORE THE COURT ARE PLAINTIFF'S COMPLAINT, DEFENDANT'S AMENDED ANSWER (FILED 11/06/2006) AND ORIGINAL COUNTERCLAIMS (FILED 06/16/2004), AND DEFENDANT'S THIRD PARTY CLAIMS (ALSO FILED 11/06/2006). AS GENUINE ISSUES OF MATERIAL FACT EXIST, PLAINTIFF'S AND DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT ARE DENIED. BENCH TRIAL SET FOR 07/01/2008 TO PROCEED AS SCHEDULED. CLTMP 06/25/2008 NOTICE ISSUED

06/24/2008  P1  BR  P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. TRIAL BRIEF, WITNESS LIST AND EXHIBIT LIST.....(W)........ SUSAN M GRAY 0062356

06/23/2008  P1  OT  P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT......(W)........ LAURA C MCBRIDE 0080059

06/23/2008  P1  MO  P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. MOTION FOR COURT REPORTER AT TRIAL......(W)....... LAURA C MCBRIDE 0080059 07/01/2008 - MOOT

06/23/2008  P1  BR  P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. TRIAL BRIEF INCLUDING WITNESS AND EXHIBIT LISTS......(W)........ LAURA C MCBRIDE 0080059

06/23/2008  D1  SR  SUBPOENA FOR: OHIO MORTGAGE CO. INC. (OMC LENDING CO.) .

06/23/2008  D1  SR  SUBPOENA FOR: OHIO MORTGAGE CO. INC. (OMC LENDING CO.) ATTN: NANCY J. GEORGE - PRESIDENT .

06/20/2008  P1  SR  SUBPOENA FOR: PATRICIA J. MCNERNEY, SERVED JUNE 27, 2008 PERSONALLY .

06/18/2008  P1  BR  P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. BRIEF IN OPPOSITION TO DEFTS MOTION FOR DEFAULT JUDGMENT............W................ LAURA C MCBRIDE 0080059

06/17/2008  D1  OT  D1 PATRICIA JOANNE MCNERNEY PRETRIAL STATEMENT...............W.............. SUSAN M GRAY 0062356

06/17/2008  N/A  MG  BENCH TRIAL PREVIOUSLY SCHEDULED FOR 06/24/2008 AT 09:00 AM IS RESCHEDULED FOR 07/01/2008 AT 09:00 AM. . . CLTMP 06/17/2008 NOTICE ISSUED

06/17/2008  N/A  SC  BENCH TRIAL SCHEDULED FOR 06/24/2008 AT 09:00 AM IS CANCELLED. MAGISTRATE: JIM L JACKSON (0078764) REASON: UNKNOWN (notice sent).

06/10/2008  D1  OT  D1 PATRICIA JOANNE MCNERNEY RESPONSE IN OPPOSITION AND OBJECTION TO PLAINTIFFS MOTION FOR SUMMARY JUDGMENT............W.............. SUSAN M GRAY 0062356

06/02/2008  P1  BR  P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. BRIEF IN OPPOSITON TO DEFT'S TWO MOTIONS FOR DEFAULT JUDGMENT.....W... LAURA C MCBRIDE 0080059

06/02/2008  P1  BR  P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. BREIF IN OPPOSITION TO DEFT'S MOTION TO STRIKE EXHIBITS A,C,D,E,F& G FROM PLTF'S MOTION FOR SUMMARY JUDGMENT......W... LAURA C MCBRIDE 0080059

06/02/2008  N/A  MG

Cuyahoga County Clerk of Courts - Case Docket                    Page 7 of 15
       12-12020-mg    Doc 9280-4    Filed 10/23/15    Entered 10/23/15 16:32:18    Exhibit 3
                                part 2    Pg 23 of 222

| | | | |
|---|---|---|---|
| | | | DEFENDANT MCNERNEY'S MOTION TO STRIKE EXHIBITS A, C, D, E, F & G FROM PLAINTIFFS MOTION FOR SUMMARY JUDGMENT, FILED 05/22/2008, IS DENIED. CLTMP 06/02/2008 NOTICE ISSUED |
| 06/02/2008 | N/A | MG | BECAUSE THE MOTION WAS FILED AFTER THE DISPOSITIVE MOTION DEADLINE, DEFENDANT MCNERNEY'S MOTION FOR DEFAULT JUDGMENT AGAINST GMAC MORTGAGE LLC, FILED 05/22/2008, IS STRICKEN. DEFENDANT MCNERNEY'S MOTION FOR DEFAULT JUDGMENT AGAINST GMAC MORTGAGE AND HOMECOMINGS FINANCIAL, FILED 05/22/2008, IS ALSO STRICKEN. CLTMP 06/02/2008 NOTICE ISSUED |
| 05/22/2008 | D1 | MO | D1 PATRICIA JOANNE MCNERNEY MOTIO NFOR DEFAULT JUDGMENT AGAINST GMAC MORTGAGE AND HOMCOMINGS FINANCIAL...........W.......... SUSAN M GRAY 0062356 06/02/2008 - STRICKEN |
| 05/22/2008 | D1 | MO | D1 PATRICIA JOANNE MCNERNEY MOTION FOR DEFAULT JUDGMENT AGAINST GMAC MORTGAGE LLC...........W.......... SUSAN M GRAY 0062356 06/02/2008 - STRICKEN |
| 05/22/2008 | D1 | MO | D1 PATRICIA JOANNE MCNERNEY MOTION TO STRIKE EXHIBITS A, C, D, E, F & G FROM PLAINTIFFS MOTION FOR SUMMARY JUDGMENT...........W.......... SUSAN M GRAY 0062356 06/02/2008 - DENIED |
| 05/16/2008 | D1 | MO | D1 PATRICIA JOANNE MCNERNEY PARTIAL MOTION FOR SUMMARY JUDGMENT.....W.. SUSAN M GRAY 0062356 07/01/2008 - DENIED |
| 05/16/2008 | P1 | MO | P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. MOTION FOR SUMMARY JUDGMENT........W................ LAURA C MCBRIDE 0080059 07/01/2008 - DENIED |
| 05/16/2008 | N/A | OT | DEPOSITION TRANSCRIPT OF NANCY GEORGE TAKEN ON 8/21/06 |
| 05/16/2008 | N/A | OT | DEPOSITION TRANSCRIPT OF THOMAS J. MOAN TAKEN ON 9/13/06 |
| 05/15/2008 | N/A | JE | SUBSTITUTE PLAINTIFF GMAC MORTGAGE CORP.'S MOTION FOR CONTINUANCE OF DATES FOR DISPOSITIVE MOTIONS AND TRIAL, FILED 05/06/2008, IS DENIED. ALL DATES REMAIN AS SET. CLTMP 05/14/2008 NOTICE ISSUED |
| 05/15/2008 | N/A | JE | AS THE INSTANT CASE WAS FILED 11/12/2003 AND AS COUNSEL HAS FAILED TO MEET THE COURT IMPOSED DEADLINE OF 02/15/2008 TO FILE AN AMENDED ANSWER AND COUNTERCLAIM, DEFENDANT MCNERNEY'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL PLEADING OUT OF TIME, FILED 03/28/2008, IS DENIED. CLTMP 05/14/2008 NOTICE ISSUED |
| 05/06/2008 | P1 | MO | P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. MOTION FOR CONTINUANCE OF DATES FOR DISPOSITIVE MOTIONS AND TRIAL......(W)........ LAURA C MCBRIDE 0080059 05/15/2008 - DENIED |
| 03/28/2008 | D1 | AN | D1 PATRICIA JOANNE MCNERNEY SUPPLEMENTAL AMENDED ANSWER AND COUNTERCLAIMS TO CONFORM PLEADING WITH RESPECT TO THE SUBSTITUTE PLAINTIFF.................W..................... SUSAN M GRAY 0062356 |
| 03/28/2008 | D1 | MO | D1 PATRICIA JOANNE MCNERNEY MOTION FOR LEAVE TO FILE SUPPLEMENTAL PLEADING OUT OF TIME.................W.................... SUSAN M GRAY 0062356 05/15/2008 - DENIED |
| 03/07/2008 | D1 | OT | D1 PATRICIA JOANNE MCNERNEY RESPONSE IN OPPOSITION TO PLTF'S MOTION FOR SANCTIONS AND REQUEST FOR AN ORDER UPON PLTF. TO SERVE SPECIFIC OBJECTIONS TO THE AMENDED COMPLAINT........ SUSAN M GRAY 0062356 |
| 03/05/2008 | P1 | MO | P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. MOTION FOR SANCTIONS...W.. LAURA C MCBRIDE 0080059 11/13/2008 - MOOT |
| 02/25/2008 | P1 | OT | P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. NOTICE OF WITHDRAWAL OF COUNSEL. JULIE A HARRIS 0065246 |
| 02/20/2008 | D4 | SR | |

|  |  |  |  |
|---|---|---|---|
|  |  |  | CERTIFIED MAIL RECEIPT NO. 11457042 RETURNED BY U.S. MAIL DEPARTMENT 02/19/2008 CHIEF FINANCIAL OFFICER GMAC MORTGAGE CORP. MAIL RECEIVED AT ADDRESS 02/09/2008 SIGNED BY OTHER. |
| 02/15/2008 | D7 | SR | CERTIFIED MAIL RECEIPT NO. 11457671 RETURNED 02/15/2008 FAILURE OF SERVICE ON DEFENDANT GEORGE/NANCY/ - REFUSED NOTICE MAILED TO DEFENDANT(S) ATTORNEY |
| 02/12/2008 | D5 | SR | CERTIFIED MAIL RECEIPT NO. 11457041 RETURNED 02/12/2008 FAILURE OF SERVICE ON DEFENDANT OMC LENDING,INC. - REFUSED NOTICE MAILED TO DEFENDANT(S) ATTORNEY |
| 02/12/2008 | D6 | SR | CERTIFIED MAIL RECEIPT NO. 11457040 RETURNED 02/12/2008 FAILURE OF SERVICE ON DEFENDANT NANCY GEORGE DBA OMC LENDING,INC. - REFUSED NOTICE MAILED TO DEFENDANT(S) ATTORNEY |
| 02/01/2008 | N/A | MG | BENCH TRIAL SET FOR 06/24/2008 AT 09:00 AM. IN THE EVENT A JURY TRIAL IS DEMANDED, TRIAL TO BE HELD 6/28/08 AT 9:00AM WITH JUDGE SPELLACY. PARTIES ARE REMINDED THAT THE OFFICIAL RECORD OF THE HEARING WILL BE BY AUDIO TAPE. IF ATTENDANCE OF A COURT REPORTER IS DESIRED, PARTIES ARE TO ARRANGE FOR A PRIVATE REPORTER WHOSE FEES WILL BE TAXED AS COSTS. TRIAL BRIEFS AND WITNESS AND EXHIBITS LISTS MUST BE FILED 7 DAYS IN ADVANCE OF THE HEARING WITH A COPY DELIVERED TO THE MAGISTRATE. FAILURE TO COMPLY WITH THIS ORDER MAY RESULT IN DISMISSAL. ALL CLIENTS MUST BE PRESENT OR AVAILABLE BY PHONE. FAILURE TO APPEAR MAY RESULT IN DISMISSAL OF AFFIRMATIVE CLAIMS FOR RELIEF CLTMP 01/31/2008 NOTICE ISSUED |
| 02/01/2008 | N/A | MG | FINAL PRE-TRIAL SET FOR 06/16/2008 AT 01:30 PM. ALL CLIENTS MUST BE PRESENT OR AVAILABLE BY PHONE. FAILURE TO APPEAR MAY RESULT IN DISMISSAL OF AFFIRMATIVE CLAIMS FOR RELIEF CLTMP 01/31/2008 NOTICE ISSUED |
| 02/01/2008 | D7 | CS | WRIT FEE |
| 02/01/2008 | D4 | CS | WRIT FEE |
| 02/01/2008 | D5 | CS | WRIT FEE |
| 02/01/2008 | D6 | CS | WRIT FEE |
| 01/31/2008 | N/A | MG | PRETRIAL CALLED. COUNSEL FOR PLAINTIFF, COUNSEL FOR DEFENDANT MCNERNEY, AND MS. MCNERNEY APPEARED. PLAINTIFF'S ORAL REQUEST TO CLARIFY DEFENDANT'S AMENDED ANSWER AND COUNTERCLAIM IS GRANTED. DEFENDANT MCNERNEY HAS 15 DAYS (TO 2/15/2008) TO FILE SUPPLEMENTAL ANSWER AND COUNTERCLAIM TO CONFORM PLEADING WITH RESPECT TO THE SUBSTITUTE PLAINTIFF. PARTIES HAVE UNTIL 04/16/2008 TO CONDUCT DISCOVERY. DISPOSITIVE MOTIONS DUE ON OR BEFORE 05/16/2008. FINAL PRETRIAL AND TRIAL DATES TO BE SET BY SEPARATE ORDER. CLPAL 01/31/2008 NOTICE ISSUED |
| 01/31/2008 | N/A | MG | PLAINTIFF'S MOTION TO SUBSTITUTE PARTY PLAINTIFF, FILED 01/14/2008, IS GRANTED. THE CLERK OF COURTS IS HEREBY ORDERED TO SUBSTITUTE GMAC MORTGAGE, LLC. IN PLACE OF THE NAMED PLAINTIFF. THE CLERK TO NOTE ATTORNEY LAURA C. MCBRIDE (BAR #0080059) AS COUNSEL OF RECORD FOR THE SUBSTITUTE PLAINTIFF. CLPAL 01/31/2008 NOTICE ISSUED |
| 01/31/2008 | N/A | MG | PLAINTIFF'S MOTION FOR EXTENSION OF TIME IN WHICH TO PRODUCE TITLE WORK, FILED 12/20/2007, IS GRANTED. CLPAL 01/31/2008 NOTICE ISSUED |
| 01/25/2008 | D4 | SR | INSTRUCTION FOR SERVICE ON AMENDED ANSWER AND COUNTERCLAIMS AND ADDING PARTY CLAIMS SENT BY CERTIFEID MAIL TO CHIEF FINANCIAL OFFICER GMAC MORTGAGE CORP.,OMC LENDING INC,NANCY GEORGE DBA OMC LENDING INC AND NANCY GEORGE % OMC LENDING INC FILED. |
| 01/24/2008 | D4 | SR |  |

Cuyahoga County Clerk of Courts - Case Docket                    Page 9 of 15
      12-12020-mg    Doc 9280-4    Filed 10/23/15    Entered 10/23/15 16:32:18    Exhibit 3
                          part 2    Pg 25 of 222

|  |  |  |  |
|---|---|---|---|
| | | | CERTIFIED MAIL RECEIPT NO. 11225348 RETURNED 01/24/2008 FAILURE OF SERVICE ON DEFENDANT CHIEF FINANCIAL OFFICER GMAC MORTGAGE CORP. - UNCLAIMED NOTICE MAILED TO DEFENDANT(S) ATTORNEY |
| 01/22/2008 | D7 | SR | CERTIFIED MAIL RECEIPT NO. 11225350 RETURNED 01/22/2008 FAILURE OF SERVICE ON DEFENDANT NANCY GEORGE C/O OMC LENDING,INC. - UNCLAIMED NOTICE MAILED TO DEFENDANT(S) ATTORNEY |
| 01/22/2008 | D6 | SR | CERTIFIED MAIL RECEIPT NO. 11225349 RETURNED 01/22/2008 FAILURE OF SERVICE ON DEFENDANT NANCY GEORGE DBA OMC LENDING,INC. - UNCLAIMED NOTICE MAILED TO DEFENDANT(S) ATTORNEY |
| 01/17/2008 | P1 | OT | STIPULATED EXTENSION OF TIME TO RESPOND TO DEFTS THIRD PARTY CLAIMS . LAURA C MCBRIDE (0080059) |
| 01/16/2008 | D4 | OT | D4 CHIEF FINANCIAL OFFICER GMAC MORTGAGE CORP. STIPULATED EXTENSION OF TIME TO RESPOND TO DEFT'S THIRD-PARTY CLAIMS...... CHRISTOPHER S WILLIAMS 0043911 |
| 01/14/2008 | P1 | MO | P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. MOTION TO SUBSTITUTE PARTY PLAINTIFF............W................ LAURA C MCBRIDE 0080059 01/31/2008 - GRANTED |
| 01/14/2008 | P1 | OT | P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. NOTICE OF FILING UPDATED TITLE DOCUMENTATION............W................ LAURA C MCBRIDE 0080059 |
| 12/26/2007 | D4 | SR | CERTIFIED MAIL RECEIPT NO. 11225347 RETURNED BY U.S. MAIL DEPARTMENT 12/26/2007 CHIEF FINANCIAL OFFICER GMAC MORTGAGE CORP. MAIL RECEIVED AT ADDRESS 12/21/2007 SIGNED BY OTHER. |
| 12/26/2007 | D3 | SR | CERTIFIED MAIL RECEIPT NO. 11225346 RETURNED BY U.S. MAIL DEPARTMENT 12/26/2007 CHIEF FINANCIAL OFFICER HOMECOMINGS MAIL RECEIVED AT ADDRESS 12/21/2007 SIGNED BY OTHER. |
| 12/20/2007 | P1 | MO | P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. MOTION FOR EXTENSION OF TIME IN WHICH TO PRODUCE TITLE WORK...... (W)....... LAURA C MCBRIDE 0080059 01/31/2008 - GRANTED |
| 12/18/2007 | D7 | SR | SUMS CROSS-COMPLNT(11225350) SENT BY CERTIFIED MAIL. TO: O OMC LENDING,INC. NANCY GEORGE C 4311 RIDGE ROAD BROOKLYN, OH 44144-0000 |
| 12/18/2007 | D6 | SR | SUMS CROSS-COMPLNT(11225349) SENT BY CERTIFIED MAIL. TO: NANCY GEORGE DBA OMC LENDING,INC. 4311 RIDGE ROAD BROOKLYN, OH 44144-0000 |
| 12/18/2007 | D4 | SR | SUMS CROSS-COMPLNT(11225348) SENT BY CERTIFIED MAIL. TO: CHIEF FINANCIAL OFFICER GMAC MORTGAGE CORP. C/O OMC LENDING INC 4311 RIDGE ROAD BROOKLYN, OH 44144-0000 |
| 12/18/2007 | D4 | SR | SUMS CROSS-COMPLNT(11225347) SENT BY CERTIFIED MAIL. TO: CHIEF FINANCIAL OFFICER GMAC MORTGAGE CORP. 500 ENTERPRISE ROAD;SUITE 150 HORSHAM, PA 19044-0000 |
| 12/18/2007 | D3 | SR | SUMS CROSS-COMPLNT(11225346) SENT BY CERTIFIED MAIL. TO: CHIEF FINANCIAL OFFICER HOMECOMINGS 27725 STANBURY BLVD.,SUITE 375 FARMINGTON HILLS, MI 48334-0000 |
| 12/14/2007 | N/A | MG | PRE-TRIAL SET FOR 01/30/2008 AT 01:30 PM. ALL CLIENTS MUST BE PRESENT OR AVAILABLE BY PHONE. FAILURE TO APPEAR MAY RESULT IN DISMISSAL OF AFFIRMATIVE CLAIMS FOR RELIEF CLPAL 12/10/2007 NOTICE ISSUED |
| 12/13/2007 | D7 | CS | WRIT FEE |
| 12/13/2007 | D6 | CS | WRIT FEE |
| 12/13/2007 | D4 | CS | WRIT FEE |
| 12/13/2007 | D4 | CS | WRIT FEE |
| 12/13/2007 | D3 | CS | WRIT FEE |
| 12/10/2007 | N/A | JE | CASE MANAGMENT CONFERENCE CALLED. COUNSEL FOR PLAINTIFF AND COUNSEL FOR DEFENDANT MCNERNEY APPEARED. PLAINTIFF |

Cuyahoga County Clerk of Courts - Case Docket                    Page 10 of 15
12-12020-mg    Doc 9280-4    Filed 10/23/15    Entered 10/23/15 16:32:18    Exhibit 3
part 2    Pg 26 of 222

| | | | |
|---|---|---|---|
| | | | HAS 14 DAYS TO PROVIDE THE COURT WITH PROOF OF OWNERSHIP OF THE SUBJECT NOTE AND MORTGAGE AND UPDATED TITLEWORK. FAILURE TO TIMELY COMPLY MAY RESULT IN DISMISSAL OF THE INSTANT CASE, WITHOUT PREJUDICE. FURTHER, AS THE ENTRY DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT DATED 02/05/07 WAS A MAGISTRATE'S ORDER PURSUANT TO CIVIL RULE 53(2)(A)(I), NOT A MAGISTRATE'S DECISION UNDER CIV. RULE 53(3)(A), SAID OBJECTIONS ARE OVERRULED. AS DEFENDANT MCNERNEY MUST PERFECT SERVICE ON THIRD PARTY DEFENDANTS, PRETRIAL TO BE SCHEDULED BY SEPARATE ORDER. CLTMP 12/10/2007 NOTICE ISSUED |
| 12/10/2007 | D7 | SR | INSTRUCTION FOR SERVICE ON (AMENDED ANSWER AND COUNTERCLAIMS) CHIEF FINANCIAL OFFICER HOMECOMINGS, CHIEF FINANCIAL OFFICER GMAC MORTGAGE CORP, AND NANCY GEORGE SENT BY CERTIFIED MAIL FILED. |
| 12/04/2007 | N/A | MG | CASE MGMNT CONFERENCE SET FOR 12/10/2007 AT 01:15 PM. FAILURE TO APPEAR MAY RESULT IN DISMISSAL OF AFFIRMATIVE CLAIMS FOR RELIEF CLTMP 11/30/2007 NOTICE ISSUED |
| 12/04/2007 | N/A | MG | PLAINTIFF'S MOTION FOR CASE MANAGEMENT CONFERENCE, FILED 11/26/2007, IS GRANTED. CASE MANAGEMENT CONFERENCE TO BE SET BY SEPARATE ORDER. CLTMP 11/30/2007 NOTICE ISSUED |
| 11/26/2007 | P1 | MO | P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. PLAINTIFF'S MOTION FOR CASE MANAGEMENT CONFERENCE LAURA C MCBRIDE 0080059 12/04/2007 - GRANTED |
| 08/02/2007 | N/A | JE | P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. MOTION FOR LEAVE TO FILE INSTANTER THE ATTCHED REPLY IN SUPPORT OF ITS OBJECTIONS TO THE MAG'S DECISION.....(W)......... LAURA C MCBRIDE 0080059, FILED 03/06/2007, IS UNOPPOSED AND GRANTED. CLTMP 08/01/2007 NOTICE ISSUED |
| 03/06/2007 | P1 | OT | P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. REPLY TO OPPOSITION TO PLTF'S OBJECTIONS TO THE MAG'S DECISION OR IN THE ALTERNATIVE MOTION FOR LEAVE TO FILE INSTANTER OBJECTIONS.....(W).......... LAURA C MCBRIDE 0080059 |
| 03/06/2007 | P1 | MO | P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. MOTION FOR LEAVE TO FILE INSTANTER THE ATTCHED REPLY IN SUPPORT OF ITS OBJECTIONS TO THE MAG'S DECISION.....(W)......... LAURA C MCBRIDE 0080059 08/02/2007 - UNOPPOSED AND GRANTED |
| 02/26/2007 | D1 | OT | D1 PATRICIA JOANNE MCNERNEY MS. MCNERNEY'S RESPONSE TO MERS' OBJECTIONS TO MAGISTRATE'S DECISION. SUSAN M GRAY 0062356 |
| 02/20/2007 | P1 | OB | P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. OBJECTIONS TO THE MAGISTRATE'S DECISION DENYING PLTF'S MOTION FOR SUMMARY JUDGMENT.............. LAURA C MCBRIDE 0080059 |
| 02/05/2007 | N/A | MG | PLAINTIFF MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S MOTION FOR SUMMARY JUDGMENT, FILED 06/29/2006, IS DENIED. FINAL PRETRIAL AND TRIAL DATES TO BE SCHEDULED BY SEPARATE ORDER. BOOK 3789 PAGE 0686 02/05/2007 NOTICE ISSUED |
| 02/05/2007 | N/A | MG | DEFENDANT PATRICIA JOANNE MCNERNEY'S MOTION FOR LEAVE TO FILE AMENDED ANSWER, COUNTERCLAIMS SUPPLEMENTAL CLAIMS AND THIRD PARTY CLAIMS, FILED 11/06/2006, IS GRANTED AND DENIED IN PART. DEFENDANT MCNERNEY'S MOTION FOR LEAVE TO FILE THIRD PARTY CLAIMS IS GRANTED. DEFENDANT'S MOTION FOR LEAVE TO FILE AMENDED COUNTERCLAIMS, IS DENIED. BOOK 3789 PAGE 0685 02/05/2007 NOTICE ISSUED |
| 02/05/2007 | N/A | MG | DEFENDANT PATRICIA JOANNE MCNERNEY'S AMENDED MOTION FOR ORDER TO STRIKE GENERAL OBJECTIONS IN THE MERS' RESPONSES TO REQUEST TO ADMIT: ORDER TO DEEM RESPONSES INSUFFICIENT; |

Cuyahoga County Clerk of Courts - Case Docket                    Page 11 of 15
     12-12020-mg    Doc 9280-4    Filed 10/23/15    Entered 10/23/15 16:32:18    Exhibit 3
                              part 2    Pg 27 of 222

|  |  |  | ORDER INSUFFICIENT RESPONSES DEEMED ADMITTED; ATTORNEY'S FEES, FILED 08/01/2006, IS DENIED. DEFENDANT PATRICIA JOANNE MCNERNEY'S MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFF'S BRIEF IN OPPOSITION DIRECTED TOWARDS DEFENDANT'S MOTION FOR LEAVE TO AMENDED PLEADING/OBJECTION TO USE OF DEPOSITION NOT SIGNED BY MS. MCNERNEY, FILED 12/12/2006, IS DENIED. BOOK 3789 PAGE 0684 02/05/2007 NOTICE ISSUED |
| 12/20/2006 | P1 | BR | P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. BRIEF IN OPPOSITION TO DEFT'S MOTION FOR EXTENSION OF TIME TO RESPOND TO PLTF'S BRIEF IN OPPOSITION TO DEFT'S MOTIN FOR LEAVE TO AMEND THE PLEADINGS............W... LAURA C MCBRIDE 0080059 |
| 12/12/2006 | D1 | MO | D1 PATRICIA JOANNE MCNERNEY MOTION FOR EXTENSION OF TIME TO RESPOND TO PLTF'S. BRIEF IN OPPOSITION DIRECTED TOWARDS DEFT'S. MOTION FOR LEAVE TO AMENDED PLEADING/OBJECTION TO USE OF DEPOSITION NOT SIGNED BY MS. MCNERNEY............ SUSAN M GRAY 0062356 02/05/2007 - DENIED |
| 11/20/2006 | P1 | OT | P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. NOTICE OF FILING DEPOSITION TRANSCRIPT.....(W)....... LAURA C MCBRIDE 0080059 |
| 11/17/2006 | P1 | OT | P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT.....(W)....... LAURA C MCBRIDE 0080059 |
| 11/16/2006 | P1 | BR | P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. BRIEF IN OPPOSITION TO DEFTS MOTION FOR LEAVE TO AMEND THE PLEADIMGS. JULIE A HARRIS 0065246 |
| 11/06/2006 | D1 | AN | D1 PATRICIA JOANNE MCNERNEY AMENDED ANSWER AND COUNTERCLAIMS, ALSO ADDING THIRD PARTY CLAIMS,AFFIRMATIVE DEFENSES,AND SUPPLEMENTAL CLAIM. SUSAN M GRAY 0062356 |
| 11/06/2006 | D1 | MO | D1 PATRICIA JOANNE MCNERNEY MOTION FOR LEAVE TO FILE AMENDED ANSWER,COUNTERCLAIMS SUPPLEMENTAL CLAIMS AND THIRD PARTY CLAIMS SUSAN M GRAY 0062356 02/05/2007 - GRANTED AND DENIED IN PART |
| 11/06/2006 | D1 | OT | D1 PATRICIA JOANNE MCNERNEY RESPONSE IN OPPOSITION AND OBJECTION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT. SUSAN M GRAY 0062356 |
| 10/06/2006 | N/A | SC | TRIAL SCHEDULED FOR 10/10/2006 AT 09:30 AM IS CANCELLED. MAGISTRATE: JIM L JACKSON (0078764) REASON: DEFENDANT GRANTED LEAVE TO RESPOND TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT. TRIAL TO BE RESCHEDULED BY SEPARATE ORDER. (notice sent). |
| 10/06/2006 | N/A | JE | DEFENDANT PATRICIA JOANNE MCNERNEY'S MOTION TO AMEND ANSWERS TO ADMISSIONS, FILED 08/01/2006, IS UNOPPOSED AND GRANTED. BOOK 3687 PAGE 0390 10/06/2006 NOTICE ISSUED | |
| 10/06/2006 | N/A | JE | PLAINTIFF MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S MOTION FOR DISCOVERY SANCTIONS, FILED 06/29/2006, IS DENIED. BOOK 3687 PAGE 0389 10/06/2006 NOTICE ISSUED | |
| 10/06/2006 | N/A | JE | DEFENDANT PATRICIA JOANNE MCNERNEY MOTION FOR EXTENSION OF TIME TO FILE MOTION FOR SUMMARY JUDGMENT AND TO RESPOND TO PLAINTIFF'SS MOTION FOR SUMMARY JUDGMENT INCLUDING REQUEST FOR ADDITIONAL TIME TO CONDUCT DISCOVERY, FILED 07/27/2006, IS GRANTED AND DENIED IN PART. DEFENDANT MCNERNEY HAS 30 DAYS FROM THE DATE OF THIS ORDER TO FILE A BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT. FURTHER, DEFENDANT'S REQUEST FOR AN EXTENSION OF TIME TO FILE A MOTION FOR SUMMARY JUDGMENT IS DENIED. THE COURT'S CASE MANAGEMENT CONFERENCE HELD ON 02/28/2006 PROVIDED DEFENDANT WITH MORE THAN 90 DAYS TO FILE | |

Cuyahoga County Clerk of Courts - Case Docket      Page 12 of 15
12-12020-mg    Doc 9280-4    Filed 10/23/15    Entered 10/23/15 16:32:18    Exhibit 3
part 2    Pg 28 of 222

| | | | |
|---|---|---|---|
| | | | A DISPOSITIVE MOTION IN THE INSTANT MATTER. DESPITE THE ORDER RESULTING FROM THE CASE MANAGEMENT CONFERENCE (APPEARING AT CIVIL JOURNAL VOLUME 3501, PAGE 0475), DEFENDANT WAITED NEARLY 30 DAYS BEFORE REQUESTING ADDITIONAL TIME TO FILE A DISPOSITIVE MOTION. SAID REQUEST IS THEREFORE DENIED. BOOK 3687 PAGE 0387 10/06/2006 NOTICE ISSUED |
| 09/28/2006 | D1 | OT | D1 PATRICIA JOANNE MCNERNEY PRETRIAL STATEMENT. SUSAN M GRAY 0062356 |
| 09/28/2006 | P1 | OT | P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. NOTICE OF SUBSTITUTION OF COUNSEL........(W)........ JULIE A HARRIS 0065246 |
| 09/21/2006 | P1 | OT | P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. FINAL PRE-TIAL STATEMENT.......W. LAURA C MCBRIDE 0080059 |
| 09/14/2006 | N/A | JE | PLAINTIFF'S MOTION FOR LEAVE FOR PLAINTIFF TO ATTEND FINAL PRETRIAL CONFERENCE VIA TELEPHONE, FILED 08/28/2006, IS UNOPPOSED AND GRANTED. BOOK 3666 PAGE 0685 09/14/2006 NOTICE ISSUED |
| 08/28/2006 | P1 | MO | PLTF'S MOTION FOR LEAVE FOR PLTF TO ATTEND FINAL PRETRIAL CONFERENCE VIA TELEPHONE.......(W)..... ZOE K. CARLISLE (0078224) 09/14/2006 - GRANTED |
| 08/22/2006 | N/A | JE | DEFENDANT PATRICIA JOANNE MCNERNEY'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS DIRECTED TO OMC LENDING INC. AND RAY GEORGE, FILED 06/06/2006, IS GRANTED. HEARING TO BE SCHEDULED BY SEPARATE ORDER. BOOK 3645 PAGE 0942 08/22/2006 NOTICE ISSUED |
| 08/22/2006 | N/A | JE | DEFENDANT PATRICIA JOANNE MCNERNEY MOTION FOR ORDER TO STRIKE GENERAL OBJECTIONS IN THE MERS' RESPONSES TO REQUESTS TO ADMIT; ORDER TO DEEM RESPONSES INSUFFICIENT; ORDER INSUFFICIENT; ORDER INSUFFICIENT RESPONSES DEEMED ADMITTED; ATTORNEY FEES, FILED 06/22/2006, IS DENIED. BOOK 3645 PAGE 0941 08/22/2006 NOTICE ISSUED |
| 08/18/2006 | D1 | SH | CUYAHOGA COUNTY SHERIFF DEPT AUGUST 15, 2006 SERVED SUBPOENA ON: OHIO MORTGAGE CO INC AS FOLLOWS: L/W RAY SERVICE FEE $16.50 |
| 08/18/2006 | D1 | SH | CUYAHOGA COUNTY SHERIFF DEPT AUGUST 15, 2006 SERVED SUBPOENA ON: RAY GEORGE AS FOLLOWS: PERSONAL SERVICE SERVICE FEE $16.50 |
| 08/17/2006 | D1 | OT | D1 PATRICIA JOANNE MCNERNEY NOTICE OF SERVICE OF SUBPONEA. SUSAN M GRAY 0062356 |
| 08/14/2006 | D1 | SR | SUBPOENA FOR: RAY GEORGE, ISSUED 08/14/2006 . |
| 08/14/2006 | D1 | SR | SUBPOENA FOR: OHIO MORTGAGE CO. INC. (OMC LENDING CO.), ATTN: NANCY J. GEORGE - PRESIDENT, ISSUED 08/14/2006 . |
| 08/01/2006 | D1 | MO | D1 PATRICIA JOANNE MCNERNEY MOTION TO AMEND ANSWERS TO ADMISSIONS......(W)........ SUSAN M GRAY 0062356 10/06/2006 - UNOPPOSED AND GRANTED |
| 08/01/2006 | D1 | MO | D1 PATRICIA JOANNE MCNERNEY AMENDED MOTION FOR ORDER TO STRIKE GENERAL OBJECTIONS IN THE MERS' RESPONSES TO REQUEST TO ADMIT: ORDER TO DEEM RESPONSES INSUFFICIENT; ORDER INSUFFICIENT RESPONSES DEEMED ADMITTED; ATTORNEY'S FEES......(W)........ SUSAN M GRAY 0062356 02/05/2007 - DENIED |
| 07/27/2006 | D1 | OT | D1 PATRICIA JOANNE MCNERNEY RESPONSE AND OBJECTION TO PLTFS MOTION FOR DISCOVERY SANCTIONS. SUSAN M GRAY 0062356 |
| 07/27/2006 | D1 | OT | D1 PATRICIA JOANNE MCNERNEY REPLY TO PLTFS BRIEF IN OPP TO DEFT MOTION FOR ORDER TO STRIKE, ETC.. SUSAN M GRAY 0062356 |
| 07/27/2006 | D1 | OT | D1 PATRICIA JOANNE MCNERNEY LEAVE TO FILE REPLY TO PLTFS OBJECTION TO DEFTS MOTION FOR ORDER TO STRIKE, ETC. AND |

Cuyahoga County Clerk of Courts - Case Docket                    Page 13 of 15
12-12020-mg    Doc 9280-4    Filed 10/23/15    Entered 10/23/15 16:32:18    Exhibit 3
part 2    Pg 29 of 222

LEAVE TO FILE RESPONSE TO MOTION FOR SANCTION INSTANTER. SUSAN M GRAY 0062356

07/27/2006  D1  MO  D1 PATRICIA JOANNE MCNERNEY MOTION FOR LEAVE TO FILE MOTION FOR EXTENSION OF TIME TO FILE MOTION FOR SUMMARY JUDGMENT AND TO RESPOND TO PLTFS MOTION FOR SUMMARY JUDGMENT INCLUDING REQUEST FOR ADDITIONAL TIME TO CONDUCT DISCOVERY SUSAN M GRAY 0062356 10/04/2006 - GRANTED AND DENIED IN PART

07/27/2006  D1  MO  D1 PATRICIA JOANNE MCNERNEY MOTION FOR EXTENSION OF TIME TO FILE MOTION FOR SUMMARY JUDGMENT AND TO RESPOND TO PLTFS MOTION FOR SUMMARY JUDGMENT INCLUDING REQUEST FOR ADDITIONAL TIME TO CONDUCT DISCOVERY SUSAN M GRAY 0062356 10/06/2006 - GRANTED AND DENIED IN PART

06/29/2006  P1  MO  P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. MOTION FOR DISCOVERY SANCTIONS LAURA C MCBRIDE 0080059 10/06/2006 - DENIED

06/29/2006  P1  OT  P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT. LAURA C MCBRIDE 0080059

06/29/2006  P1  MO  P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. MOTION FOR SUMMARY JUDGMENT LAURA C MCBRIDE 0080059 02/05/2007 - DENIED

06/29/2006  P1  BR  PLTF. BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR ORDER TO STRIKE GENERAL OBJECTIONS IN THE MERS' RESPONSES TO REQUESTS TO ADMIT; ORDER TO DEEM RESPONSES INSUFFICIENT;ORDER INSUFFICIENT RESPONSES DEEMED ADMITTED; ATTORNEY FEES. LAURA C MCBRIDE (0080059)

06/27/2006  N/A  MG  NOTWITHSTANDING THE CASE SUMMARY DOCKET INFORMATION TO THE CONTRARY, THE SETTLEMENT CONFERENCE SET FOR 07/31/2006 AT 2PM WILL BE HELD AT THE JUSTICE CENTER, 10TH FLOOR. BOOK 3597 PAGE 0580 06/27/2006 NOTICE ISSUED 

06/22/2006  D1  MO  D1 PATRICIA JOANNE MCNERNEY MOTION FOR ORDER TO STRIKE GENERAL OBJECTIONS IN THE MERS' RESPONSES TO REQUESTS TO ADMIT; ORDER TO DEEM RESPONSES INSUFFICIENT; ORDER INSUFFICIENT; ORDER INSUFFICIENT RESPONSES DEEMED ADMITTED; ATTY. FEES............FILED SUSAN M GRAY 0062356 08/22/2006 - DENIED

06/06/2006  D1  OT  D1 PATRICIA JOANNE MCNERNEY NOTICE OF SERVICE OF SUBPOENA. SUSAN M GRAY 0062356

06/06/2006  D1  MO  D1 PATRICIA JOANNE MCNERNEY MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS DIRECTED TO OMC LENDING INC. AND RAY GEORGE; MOTIO TO SHOW CAUSE WHY OMC LENDING INC. AND RAY GEORGE SHOULD NOT BE HELD IN CONTEMPT SUSAN M GRAY 0062356 08/22/2006 - GRANTED

03/01/2006  N/A  JE  CASE MGMNT CONFERENCE HELD ON 02/28/2006. ALL DISCOVERY TO BE COMPLETED BY 05/29/2006. DISPOSITIVE MOTION TO BE FILED BY 06/29/2006. RESPONSES DUE WITHIN 30 DAYS FROM SERVICE OF MOTION. SETTLEMENT CONFERENCE SET FOR 07/31/2006 AT 02:00 PM. CLIENTS MUST BE AVAILABLE BY PHONE. FAILURE TO APPEAR MAY RESULT IN DISMISSAL OF AFFIRMATIVE CLAIMS FOR RELIEF. FINAL PRETRIAL SET FOR 09/28/2006 AT 02:00 PM. ALL CLIENTS MUST BE PRESENT ABSENT LEAVE OF COURT TO BE AVAILABLE BY PHONE. FAILURE TO APPEAR MAY RESULT IN DISMISSAL OF AFFIRMATIVE CLAIMS FOR RELIEF. BENCH TRIAL SET FOR 10/10/2006 AT 09:30 AM. TRIAL BRIEFS, WITNESS LISTS, EXHIBIT LISTS TO BE FILED AND A COPY PROVIDED TO THE MAGISTRATE AT LEAST 7 DAYS PRIOR TO THE TRIAL DATE. FAILURE TO COMPLY MAY RESULT IN AFFIRMATIVE CLAIMS FOR RELIEF. BOOK 3501 PAGE 0475 03/01/2006 NOTICE ISSUED

Cuyahoga County Clerk of Courts - Case Docket                    Page 14 of 15
       12-12020-mg    Doc 9280-4    Filed 10/23/15    Entered 10/23/15 16:32:18    Exhibit 3
                          part 2    Pg 30 of 222

| 02/14/2006 | N/A | SC | CASE MGMNT CONFERENCE SET FOR 02/28/2006 AT 01:30 PM. (Notice Sent). |
| 07/22/2005 | P1 | OT | P1 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. NOTICE OF APPEARANCE & SUBSTITUTION OF COUNSEL...[W]. ZOE K. CARLISLE 0078224 |
| 07/27/2004 | N/A | JE | MOTION FOR LEAVE TO PLEAD TO FILE ANSWER OUT OF TIME OF DEFENDANT PATRICIA JOANNE MCNERNEY IS GRANTED. BOOK 3159 PAGE 0056 07/27/2004 NOTICE ISSUED |
| 07/12/2004 | P1 | AN | ANSWER OF PLTF' TO COUNTERCLAIM OF DEFT. PATRICIA JOANES MCNERNEY....(W)..... ROBERT H YOUNG (0036743) |
| 06/16/2004 | D1 | MO | D PATRICIA JOANNE MCNERNEY MOTION FOR LEAVE TO P LEAD TO FILE ANSWER OUT OF TIME SUSAN M GRAY 0062356 07/27/2004 - GRANTED |
| 06/16/2004 | D1 | AN | D1 PATRICIA JOANNE MCNERNEY ANSWER AND COUNTERCLAIM.. SUSAN M GRAY 0062356 |
| 05/19/2004 | D | JE | STIPULATION FOR LEAVE TO PLEAD (MOTION FOR LEAVE TO PLEAD) MS. MCNERNEY RESPECTFULLY REQUESTS ADDITIONAL TIME TO RESPOND TO THE COMPLAINT SERVED UPON HER 1/28/04. MS. MCNERNEY AND HER COUNSEL EXPECT TO MEET WITH AN ACCOUNTANT ON MAR. 31, 2004, TO REVIEW THE DOCUMENTS RELEVANT TO THIS COMPLAINT. MS. MCNERNEY ANTICIPATES THAT SHE WILL BE ABLE TO RESPOND WITHIN TWO WEEKS OF THAT MEETING. WHEREFORE, MS. MCNERNEY RESPECTFULLY REQUESTS AN EXTENSION TO APR. 15, 2004 TO RESPOND TO THE COMPLAINT, GRTD. OSJ VOL 3122 PGS 844-845. NOTICE ISSUED. |
| 04/05/2004 | D1 | OT | D1 PATRICIA JOANNE MCNERNEY ENTRY OF APPEARANCE.. SUSAN M GRAY 0062356 |
| 04/05/2004 | D1 | MO | D1 PATRICIA JOANNE MCNERNEY MOTION FOR LEAVE TO PLEAD SUSAN M GRAY 0062356 05/19/2004 - GRANTED |
| 12/31/2003 | D1 | SR | SUMS COMPLAINT(4486103) SENT BY REGULAR MAIL SERVICE. TO: PATRICIA JOANNE MCNERNEY 1241 THROEAU ROAD LAKEWOOD, OH 44107-0000 ANSWER DATE: 01/28/2004 |
| 12/22/2003 | D1 | CS | WRIT FEE |
| 12/16/2003 | D1 | SR | INSTRUCTION FOR SERVICE ON PATRICIA JOANNE MCNERNEY BY ORDINARY MAIL FILED. |
| 12/03/2003 | D1 | SR | CERTIFIED MAIL RECEIPT NO. 4331788 RETURNED 12/03/2003 FAILURE OF SERVICE ON DEFENDANT MCNERNEY/PATRICIA JOANNE/ - UNCLAIMED NOTICE MAILED TO PLAINTIFF(S) ATTORNEY |
| 11/20/2003 | D2 | SR | CERTIFIED MAIL RECEIPT NO. 4336479 RETURNED BY U.S. MAIL DEPARTMENT 11/19/2003 JOHN DOE, UNKNOWN SPOUSE IF ANY OF PATRICIA JOANNE MCNERNEY MAIL RECEIVED AT ADDRESS 11/18/2003 SIGNED BY OTHER. |
| 11/17/2003 | D2 | SR | SUMS COMPLAINT(4336479) SENT BY CERTIFIED MAIL. TO: JOHN DOE, UNKNOWN SPOUSE IF ANY OF PATRICIA JOANNE MCNERNEY 1241 THROEAU ROAD LAKEWOOD, OH 44107-0000 |
| 11/14/2003 | D2 | CS | WRIT FEE |
| 11/14/2003 | D1 | SR | SUMS COMPLAINT(4331788) SENT BY CERTIFIED MAIL. TO: PATRICIA JOANNE MCNERNEY 1241 THROEAU ROAD LAKEWOOD, OH 44107-0000 |
| 11/13/2003 | N/A | JE | IT IS ORDERED BY THE COURT THAT THIS CAUSE BE REFERRED TO THE COURT MAGISTRATE TO TRY THE ISSUES OF LAW AND FACT ARISING THEREIN AND REPORT WITHOUT UNNECESSARY DELAY. BOOK 3021 PAGE 0709 11/13/2003 NOTICE ISSUED |
| 11/12/2003 | D1 | CS | WRIT FEE |
| 11/12/2003 | N/A | SF | MAGISTRATE PHYLLIS E CLEVELAND ASSIGNED (RANDOM) |
| 11/12/2003 | N/A | SF | JUDGE NANCY A FUERST ASSIGNED (RANDOM) |
| 11/12/2003 | P1 | SF | LEGAL RESEARCH |

Cuyahoga County Clerk of Courts - Case Docket                    Page 15 of 15
12-12020-mg    Doc 9280-4    Filed 10/23/15    Entered 10/23/15 16:32:18    Exhibit 3
part 2    Pg 31 of 222

| | | | |
|---|---|---|---|
| 11/12/2003 | P1 | SF | LEGAL NEWS |
| 11/12/2003 | P1 | SF | LEGAL AID |
| 11/12/2003 | P1 | SF | COMPUTER FEE |
| 11/12/2003 | P1 | SF | CLERK'S FEE |
| 11/12/2003 | P1 | SF | DEPOSIT AMOUNT PAID LAW OFFICES OF JOHN D. CLUNK CO. LPA |
| 11/12/2003 | N/A | SF | CASE FILED |
| 11/10/2003 | P1 | SR | PRELIMINARY JUDICIAL REPORT FILED. |
| 11/10/2003 | P1 | SR | COMPLAINT FILED. SERVICE REQUEST - SUMMONS BY CERTIFIED MAIL TO THE DEFENDANT(S). |

Only the official court records available from the Cuyahoga County Clerk of Courts, available in person, should be relied upon as accurate and current.
For questions/comments please click here.
Copyright © 2013 PROWARE. All Rights Reserved. 1.0.62

**<u>Exhibit F</u>**

FILED

2006 NOV -6 P 2:57

COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| Mortgage Elect. Reg. Sys. Inc. | ) | Case No. CV03514406 |
| | ) | |
|      Nominal | ) | Judge Nancy A. Fuerst |
|          Plaintiff | ) | |
|    vs. | ) | |
| | ) | **Amended Answer and** |
| | ) | **Counterclaims** |
| Patricia Joanne McNerney,  et al | ) | **also Adding Third Party Claims** |
| | ) | **Affirmative Defenses** |
| | ) | **And Supplemental Claim** |
|       Defendant | ) | |
|       Third Party Plaintiff | ) | |
| | ) | |
|    vs. | ) | |
| | ) | |
| Chief Financial Officer | ) | |
| Homecomings | ) | |
| 27725 Stansbury Blvd., Suite 375 | ) | |
| Farmington Hills, MI  48334 | ) | |
| | ) | |
|       Third Party Defendant | ) | |
| | ) | |
| And | ) | |
| Chief Financial Officer | ) | |
| GMAC Mortgage Corp | ) | |
| 500 Enterprise Road; Suite 150 | ) | |
| Horsham, PA  19044 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| OMC Lending, Inc. | ) | |
| 4311 Ridge Road | ) | |
| Brooklyn, OH  44144 | ) | |
| | ) | |
|       Third Party Defendant | ) | |
| | ) | |
| And | ) | |

THE STATE OF OHIO ⎱
Cuyahoga County ⎰ SS,  I, GERALD E. FUERST, CLERK OF
THE COURT OF COMMON PLEAS
WITHIN AND FOR SAID COUNTY,
HEREBY CERTIFY THAT THE ABOVE AND FOREGOING IS TRULY
TAKEN AND COPIED FROM THE ORIGINAL _Amended Answer & Counterclaims_
NOW ON FILE IN MY OFFICE.
WITNESS MY HAND AND SEAL OF SAID COURT THIS
DAY OF _March_    A.D. 20 _11_
GERALD E. FUERST, Clerk
By _____, Deputy

CV03514406

42251958

1

Nancy George                              )
Dba OMC Lending, Inc.                     )
4311 Ridge Road                           )
Brooklyn, OH  44144                       )
              Defendant  )
And                                       )
                                          )
Nancy George                              )
c/o OMC Lending, Inc                      )
4311 Ridge Road                           )
Brooklyn, OH  44144                       )
                                          )
              Defendant  )

Ms. McNerney respectfully responds as follows to the complaint:

*Answer*

1.    Denies paragraphs one, two and  three, of the complaint.

2.    Denies paragraph four for lack of knowledge

3.    Admits paragraphs five

4.    Denies paragraph six

5.    Denies paragraph seven for lack of knowledge

*General Denial*

6.    Denies generally each and every paragraph not heretofore

admitted or denied

*Affirmative Defenses*

7.    The complaint is barred by the doctrines of laches and unclean

hands

8.    The contract and/or mortgage is void for failure of consideration

2

9.    The contract is void for fraud and other illegality

10.    The contract is unenforceable due to rescission by Ms. McNerney

9.    The contract is void for unconscionability

10.    Plaintiff's claim of standing is based upon an illegal and void or

voidable agreement as being based upon an illegal and void and/or

voidable agreement as violative of Ohio prohibition against

maintenance

11.    Because MERS as nominee has no beneficial or bona fide interest

in the note and mortgage at issue in this proceeding, the mortgage

as the product of an illegal agreement between MERS and

Homecomings is itself void and therefore is unenforceable

12.    Ms. McNerney is entitled to  setoff and or recoupment for any

claims that may be barred by the statute of limitations

13.    Plaintiff's claims for attorney fees violate Ohio public policy

14.    Plaintiff lacks standing, and/or is not the real party in interest

*Counterclaims*

*Factual Allegations Related to Counterclaims and Third Party Claims*

10. On or about January 3, 2003, Ms. McNerney entered into a consumer

credit transaction with Homecomings Financial Network, Inc., (as set

forth in the HUD 1 statement and promissory note, although the

mortgage names Mortgage Electronic Registration Systems, Inc. as

3

the nominee for Homecomings,) for a loan in the amount of
$108,000.00, in which  Homecomings Financial Network, Inc.,
(hereinafter, "Homecomings" as lender extended consumer credit
which was subject to a finance charge and which was payable to
Homecomings, 27725 Stansbury Blvd, Suite 375, Farmington Hills, MI
 48334.

11. As part of this consumer credit transaction, the Mortgage Electronic
Registration Systems, Inc, "acting solely as nominee for Lender and
Lender's successors and assigns" was given a security interest in Ms.
McNerney's principal residence, which security interest is the subject
of this foreclosure proceeding.

12. MERS has no beneficial interest in the note at issue in this proceeding

13. MERS has no beneficial interest in the mortgage at issue in this
proceeding

14. The mortgage at issue is registered on the MERS system, with MERS
merely serving as nominee

15. MERS has an agreement with Homecomings or GMAC whereby it
agrees to provide assistance to Homecomings or GMAC in pursuing or
defending lawsuits with respect to mortgages registered on the MERS
system, and the mortgage at issue in particular.

16. MERS as nominee has no beneficial or bona fide interest in the note
and mortgage at issue in this proceeding

17. MERS is not the holder of the note

4

18. MERS is not the owner of the mortgage

19. In conformity with its agreement with Homecomings or GMAC, MERS provides assistance in pursuing and defending the lawsuit at issue, including having itself named as the plaintiff, retaining counsel, and funding the lawsuit

20. MERS only interest in this lawsuit stems from its agreement with Homecomings or GMAC to register mortgages and pursue and defend lawsuits with respect to mortgages registered on its system.

21. Attached as Exhibit 1 is a Truth in Lending disclosure statement (inaccurate in its disclosures) issued on or after  January 3, 2003 in connection with the closing of  the transaction.

22. Attached as Exhibit 11 is another Truth in Lending disclosure statement (also inaccurate in its disclosures) issued on or after January 3, 2003 in connection with the closing of  transaction

23. Attached as Exhibits 2 and 3 are two conflicting RESPA settlement statements issued on or after January 3, 2003 in connection with the closing of the transaction, each document identified as "final".

24. The loan at issue was made by Homecomings or GMAC in response to Ms. McNerney's application for a loan refinance when she needed funds to refinance the mortgage on her home in connection with her divorce.

25. At the time of the transaction in issue, the property at issue was subject to a mortgage in favor of Household Realty Corporation to

5

secure a prior loan.

26. The first mortgage in favor of Household Realty Corporation was satisfied in the transaction at issue.

27. The prior loan with Household had been at a high interest rate (13%) with a monthly payment of $985.00 that did not include an escrow payment for insurance ($30.00/month) or property tax liability ($230.81/month).

28. The broker, OMC Lending, Inc. informed Ms. McNerney that she was approved for a loan at 8% with a monthly payment in the amount of $850.00 that did include an escrow for property taxes.

29. Ms. McNerney explained to OMC Lending that she needed the loan refinanced because the existing loan obligation exceeded her ability to pay—she needed a significant reduction in the monthly payment

30. Ms. McNerney provided for Homecomings or GMAC's underwriting analysis a complete copy of her divorce decree disclosing child support terms and documentation of all of her earned income

31. Ms. McNerney provided for Homecomings or GMAC's underwriting analysis accurate evidence of her monthly income

32. The loan was scheduled to close on 12/27/02.

33. The loan was closed by Brooklyn Title Agency, Inc.

34. Brooklyn Title Agency, Inc is owned by Raymond George, who is the husband of Nancy George who owns OMC Lending, Inc..

35. In late December, 2002, an agent from either Brooklyn Title Agency

6

called Ms. McNerney and informed her that the closing would not
occur unless she paid an additional $8,150.00

36. Ms. McNerney was surprised when she was told that she needed to
pay money to close the loan and questioned the accuracy of the
information.

37. Ms. Mcnerney called OMC  to confirm the accuracy of the information
and learned that it was true.

38. OMC recommended that Ms. McNerney withdraw the funds from her
IRA.

39. Since Ms. McNerney needed the relief afforded by the promised lower
monthly payment, and in anticipation of the benefit of the lower
payment, she withdrew funds from her Individual Retirement Account
on January 3, 2003, and went to Brooklyn Title to close the loan on
some date on or after January 3, 2003. .

40. At the closing on or after January 3, 2003, Ms. McNerney delivered a
First Federal of Lakewood certified check no 1-314628 in the amount
of $8,150.00 payable to Brooklyn Title.  (Exhibit 4)

41. When she arrived for the closing, Ms. McNerney learned for the first
time that Homecomings or GMAC required as a condition of the loan
private mortgage insurance in the amount of 178.20/month

42. As a result of the imposition of private mortgage insurance, the amount
of the payment on the new loan was essentially indistinguishable from
the amount of the payment on the loan refinanced.

7

43. Homecomings or GMAC also chose the provider of private mortgage insurance and did not permit a choice

44. Homecomings or GMAC and OMC Lending, Inc. both knew long before the closing date that Homecomings had imposed the requirement of private mortgage insurance.

45. Neither Homecomings/GMAC nor OMC Lending informed Ms. McNerney of the imposition of private mortgage insurance prior to the actual closing date.

46. The imposition of private mortgage insurance was a material change to Ms. McNerney's detriment

47. The loan closed and the funds were disbursed on the same day.

48. On the date of closing, (1/3/03), Ms. McNerney received one notice of right to cancel stating that December 31, 2002 was the deadline to exercise that right.  (Ex. 10)

*The Parties to the Counterclaims and Third Party Claims*

49. The Plaintiff on the Counterclaim, Ms. Patricia McNerney, is a natural person residing at 1241 Thoreau Road, Lakewood, Ohio 44107.

50. Homecomings or GMAC, who Ms. McNerney believes to be the real plaintiff in the complaint and, therefore, the real defendant on the counterclaim, is a corporation engaged in the business of Consumer Lending with an address as set forth on the HUD 1 statement of 27725 Stansbury Blvd, Suite # 375, Farmington Hills, MI  48334 (for Homecomings) and 500 Enterprise Road, Suite 150, Horsham, PA

8

19044 (for GMAC).

51. At all times relevant, Homecomings or GMAC, in the ordinary course of its business, regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or by written agreement which is payable in more than four installments, with the credit extended or offered primarily for personal, family, or household purposes.

52. Third Party Defendant OMC Lending, Inc. at all times relevant was a corporation located and doing business at 4311 Ridge Road, Brooklyn, OH 44144

53. OMC Lending, Inc. was the broker for the transaction which is the subject of this proceeding

54. OMC Lending, Inc had a broker agreement with Homecomings or GMAC

55. In furtherance of the agreement, Homecomings or GMAC, on a regular basis, provided OMC Lending with rate sheets which showed the interest rates for which various loans could be made, and the enhanced broker fee, in the form of a yield spread premium, which OMC Lending could earn if it sold a loan for an interest rate in excess of the available rate for which a borrower qualified

56. The rate sheet disclosed the bonus OMC Lending would receive for closing the loan at the rate provided to Ms. McNerney in the transaction at issue

9

57. OMC Lending never advised Ms. McNerney that she could qualify for a lower rate than the one provided

58. OMC Lending did not disclose to Ms. McNerney that it would receive a bonus or fee for providing her with an interest rate higher than the one for which she could qualify.

59. OMC Lending knew that Household, which had a mortgage on Ms. McNerney's home at the time of the refinance, would make a competitive offer for a refinance if it knew that Ms. McNerney was seeking a refinance.

60. OMC Lending deliberately refrained from seeking payoff information from Household until the very last minute prior to the scheduled closing in order to foreclose an opportunity for Ms. McNerney to consider a competitive offer from Household.

61. As a result of OMC Lending's deliberate decision to delay contact with Household in order to foreclose Ms. McNerney's opportunity to consider a competitive offer from Household, Ms McNerney was foreclosed from having an opportunity to consider a competitive offer from Household

62. As a further result of OMC Lending's deliberate decision to delay contact with Household Ms. McNerney was not timely informed that the payoff to Household was higher than anticipated

63. OMC Lending, Inc. received a fee from Homecomings or GMAC to sell the loan package to Ms. McNerney

10

64. Nancy George is the owner of OMC Lending and the wife of the owner of Brooklyn Title Agency, Inc.

65. OMC Lending chose Brooklyn Title Agency to close the loan

66. Brooklyn Title Agency received compensation and a profit for closing the loan

67. Nancy George did not inform Ms. McNerney of the relationship between the owners of OMC Lending and Brooklyn Title Agency

68. On information and belief, OMC Lending,Inc is an Ohio Corporation owned exclusively by Nancy George and operated exclusively by her, with a complete identity of interest between OMC Lending, Inc and Nancy George

69. On information and belief, OMC Lending is a thinly capitalized corporation operated exclusively for the benefit of Nancy George.

70. Nancy George's domination and control over Defendant OMC Lending was so complete that the corporate form of Defendant OMC Lending had no separate existence of its own

71. Nancy George's control over the corporation was exercised in such a manner as to commit fraud or illegal acts against Ms. McNerney , and injury or unjust loss resulted to Ms. McNerney from such control and wrong

72. The claims against Homecomings or GMAC are styled as counterclaims rather than third party claims because Ms. McNerney contends that Homecomings or GMAC is the real party in interest and

11

should be considered the actual plaintiff.   If the court rules that
Homecoming's Financial Network, Inc. or GMAC is not the real party in
interest, then Ms. McNerney requests that the counterclaims against
Homecomings Financial Network, Inc be viewed as third party claims.

*First Claim against Homecomings—Truth in Lending*

*Preliminary Statement*

73. This Counterclaim is filed under the Truth in Lending Act, 15 U.S.C.
Sec. 1601 (TILA) to enforce Ms. McNerney's right to rescind a
consumer credit transaction involving the taking of a security interest in
Ms. McNerney's home, and to recover statutory damages, reasonable
attorney's fees and costs by reason of violations of the Truth in
Lending Act and Regulation Z, 12 C.F.R. 226 (Regulation Z)

*Enforcement of Rescission and Claims for Damages*

74. This consumer credit transaction was subject to Ms. McNerney's right
of rescission as described in 15 U.S.C. Sec. 1635 and Regulation Z
Sec. 226.15 and 226.23.

75. In the course of this consumer credit transaction, Homecomings
Financial Network, Inc , or GMACwhose nominee is Mortgage
Elecronic Registration Systems, Inc violated 15 U.S.C. Sec. 1635(a)
and Regulation Z by failing to deliver to Ms. McNerney two copies of
the notice of the right to rescind which

    a.  Identified the transaction.

    b.  Clearly and conspicuously disclosed the security interest in Ms.

12

McNerney's principal dwelling.

    c.  Clearly and conspicuously disclosed Ms. McNerney's right to rescind the transaction.

    d.  Clearly and conspicuously disclosed how to exercise the right to rescind the transaction, with a form for that purpose, designating the address of Homecomings' or GMAC's place of business.

    e.  Clearly and conspicuously disclosed the effects of rescission.

    f.  Clearly and conspicuously disclosed the date the rescission period expired. (Exhibit 5)

76. In the course of this consumer credit transaction, Homecomings or GMAC, whose nominee is Mortgage Elecronic Registration Systems, Inc failed to deliver all "material" disclosures, required by TILA and Regulation Z, including the following:

    a.  It failed to properly and accurately disclose the "amount financed," in violation of Regulation Z Sec. 226.1(b) and 15 U.S.C. Sec. 1638(a)(2)(A)

    b.  It failed to clearly and accurately disclose the "finance charge" in violation of Regulation Z Sections 226.4 and 226.18(d) and 15 U.S.C. Sec. 1638(a)(3).

    c.  It failed to clearly and accurately disclose the "annual percentage rate" in violation of Regulation Z Sec. 226.18(e) and 15 U.S.C. Sec. 1638(a)(4)

13

    d.  It failed to properly disclose the number, amounts, and timing of
payments scheduled to repay the obligation, in violation of
Regulation Z Sec. 226.18(g) and 15 U.S.C. Sec. 1638(a)(6).

    e.  It failed to clearly and accurately disclose the "total of
payments" in violation of Sec. 226.18(h) and 15 U.S.C. Sec.
1638(a)(5).

77. Ms. McNerney has a continuing right to rescind the transaction until
the third business day after receiving both the notice and all material
disclosures described in the foregoing paragraphs, pursuant to 15
U.S.C.  Sec. 1635(a) and Regulation Z Sec. 226.23(a)(3).

78. By her initial Counterclaim filed June 16, 2004, Ms. McNerney
rescinded the transaction.

79. As a result of Homecomings'or GMAC's (whose nominee is Mortgage
Electronic Registration Systems, Inc.) failure to comply with the Truth
in Lending Act, in that it failed to provide notices and material
disclosures required by that Act, Ms. McNerney is entitled to
Rescission of the transaction; termination of any security interest in her
property created under the transaction; return of any money or
property given by her to anyone, including Homecomings, (whose
nominee is Mortgage Electronic Registration Systems, Inc.), in
connection with the transaction; twice the finance charge in connection
with the transaction, but not less than $200.00 nor more than

14

$2000.00; the right to retain proceeds; actual damages in an amount
to be determined at trial; and reasonable attorney fees.

80. When the actual cost of credit is placed in the finance charge, the
APR is raised dramatically to cause this transaction to be covered by
the Home Owners Equity Protection Act, codified as 15 U.S.C. Sec.
1602(aa) of the Truth in Lending Act, causing plaintiff to be liable for
the absence of additional material disclosures set forth in that act, and
additional damages set forth in that act.

81. Costs and fees charged in the transaction cause the total points and
fees to exceed 8% of the total loan amount, causing the transaction to
be covered by the Home Owners Equity Protection Act codified as 15
U.S.C. Sec. 1602(aa) of the Truth in Lending Act, causing plaintiff to
be liable for the absence of additional material disclosures set forth in
that act, and additional damages set forth in that act.

82. In violation of 15 U.S.C. Sec. 1639(a) and (b) Homecomings failed to
provide disclosures with a notice three business days prior to the
consummation of the transaction that informed Ms. McNerney in
conspicuous type size that she was not required to complete the
agreement merely because she had received the disclosures or signed
a loan application and further provided that if she obtained the loan the
lender would have a mortgage on her home and she could lose her
home and any money she had paid into it.'

83. In violation of 15 U.S.C. Sec. 1640, Homecomings Financial Network,

Inc engaged in 2002 and 2003 and in each year up to the present time in a pattern and practice of extending credit to consumers under mortgages referred to in section 1602(aa) based on the value of consumer's collateral without regard to the consumers' repayment ability, including the consumer' current and expected income, current obligations, and employment.

84. In violation of 15 U.S.C. Sec. 1639(b)(2), Homecomings failed to provide written notice regarding the change in terms of the extension of credit, specifically but not limited to the imposition of private mortgage insurance, in the time set forth in 15 U.S.C. Sec. 1639(b)(1)

85. Homecomings  extended credit to Ms. McNerney under the mortgage at issue based on the value of her collateral without regard to Ms. McNerney's repayment ability, including her current and expected income, current obligations, and employment.

86. Pursuant to the provisions of 15 U.S.C. Sec. 1640(i) failure to provide the  notice provided by 15 U.S.C. Sec. 1639(a) constitutes failure to provide a material disclosure for purposes of section 15 U.S.C. Sec. 1635.

87. Pursuant to the provisions of 15 U.S.C. Sec. 1640(i) failure to provide the notice provided in 1639(b)(2) constitutes failure to provide a material disclosure for purposes of section 15 U.S.C. Sec. 1635.

88. Pursuant to the provisions of 15 U.S.C. Sec. 1640(i) the pattern and practice of extending credit without regard to repayment ability as

16

prohibited by 15 U.S.C. Sec. 1639(h) constitutes failure to deliver

material disclosures for purposes of section 15 U.S.C. Sec. 1635

89. Ms. McNerney under Reg. Z. Sec. 226.23(a) had an unconditional

three day right to rescind the transaction.

90. To facilitate that three day cooling off period, Homecomings or GMAC

was required to delay its contractual performance until the rescission

period expired.  Reg. Z Sec. 226.23(c).  Homecomings or GMAC was

required to refrain from disbursing any funds to Ms. McNerney until the

rescission period had expired and Homecomings or GMAC could be

reasonably satisfied that Ms. McNerney  had not rescinded.   Reg. Z

Sec. 226.23(c).

*Supplemental Truth in Lending Claim Against Homecomings or GMAC*

91. Ms.McNerney, because of the numerous violations of the law of Truth

in Lending as set forth above, may rescind the transaction at any time

from the period beginning three years from the date of the occurrence

giving rise to the right of rescission.  15 U.S.C. Sec. 1635(f); Reg Z

226.15(a)(3); 226.23(a)(3)

92. Ms. McNerney exercised her right to rescind by her counterclaim filed

June 16, 2004.

93. Pursuant to the provisions of 15 U.S.C. Sec. 1635(b), Ms. McNerney's

exercise of her right to rescind activated  three step process whereby

within 20 days Homecomings was required within 20 days to take

action to reflect the termination of the security interest. 15 U.S.C. Sec.

17

1635(b)

94. At the point in time that she exercised her right of rescission, Ms. McNerney had no obligation to make further payments on the loan. 15 U.S.C. Sec. 1635(b).

95. At the point in time that Ms. McNerney exercised her right of rescission, Ms. McNerney was no longer liable for any finance charge, and the security interest became automatically void. 15 U.S.C. Sec. 1635(b)

96. At the point in time that Ms. McNerney exercised her right of rescission, Homecomings was required within 20 days to return to her all funds paid to anyone in the transaction. 15 U.S.C. Sec. 1635(b)

97. Homecomings failed to cancel all evidence of the security interest and failed to return all funds

98. Ms. McNerney's obligation to tender funds would arise only after Homecomings performed its obligations within the 20 day period set forth in the statute.15 U.S.C. Sec. 1635(b)

99. Homecoming's failure to cancel all evidence of security interest and to refund to Ms. McNerney all payments made on the loan, including all payments to third parties is an additional violation of the Truth in Lending Act, giving rise to an additional claim for statutory damages, actual damages and attorney fees. 15 U.S.C. Sec. 1640(a).

*Second Claim against Homecomings or GMAC--RESPA*

100.   This transaction is subject to the provisions of the Real Estate

Settlement Procedures Act

101.    With respect to this transaction, Homecomings or GMAC, whose

nominee is Mortgage Electronic Registration Systems, Inc failed to

comply with RESPA provisions which require that a settlement

statement be issued and that a good faith estimate of closing costs be

issued prior to the closing of the transaction—the Settlement

statement was not issued prior to the transaction; the settlement

statement fails to itemize settlement charges.

102.    The excessive fee taken in combination with the yield spread

premium, discloses a kickback to OMC Lending in violation of Section

8 of RESPA

103.    OMC Lending, Inc. did not perform goods facilities and services to

earn the yield spread premium.

104.    The amount of the yield spread premium was not reasonably

related to the value of goods, facilities and services provided by OMC

Lending, Inc.

105.    The yield spread premium paid in the transaction was simply a

kickback for imposing on Ms. McNerney a higher rate of interest than

the rate for which she actually qualified.

106.    As a result of failure by Homecomings Financial Network, Inc or

GMAC to issue the settlement statements and the good faith estimates

of closing costs, Ms. McNerney is entitled to damages and rescission

as set forth in RESPA

19

107.    The kickback provision of the contract between Homecomings or
GMAC and OMC Lending was additional incentive provided by
Homecomings or GMAC to OMC Lending to sell a loan to Ms.
McNerney that she could not afford to pay.

*Third Claim against Homecomings or GMAC—Improvident Lending*

108.    Homecomings or GMAC had a duty to exercise reasonable care to
determine that Ms. McNerney qualified for the loan for which
application was made on her behalf.

109.    Homecomings failed to exercise reasonable care, with the result
that the loan was made without regard to Ms. McNerney's ability to
pay

110.    Homecomings not only failed to exercise reasonable care, but
actually encouraged its agent OMC Lending, Inc., to disregard Ms.
McNerney's ability to pay by offering incentives to make the loan on
terms that were less favorable than those for which she could qualify
and therefore on terms that made default more likely.

111.    Ms. McNerney was injured by the transaction in that the loan was
made without regard to her ability to pay, by the charge of excessive
fees and interest rates, and by the inevitable loss of her home

112.    As having been made in breach of the duty to exercise reasonable
care, the loan is unenforceable and void.

113.    Homecomings should not have the use of the court to enforce
obligations incurred as the result of its breach of its duty of good faith.

114.   Homecomings should not have recourse and rescue from the court to preserve and protect it from a risk it freely assumed in order to gain greater profits on the back of an uninformed borrower who was not aware of the risk

*Fourth Claim against Homecomings—Breach of Fiduciary Duty*

115.   Ms. McNerney  incorporates all prior paragraphs as though fully rewritten herein

116.   OMC Lending, Inc.  at all times in the transaction was acting within the scope of its agency with Homecomings or GMAC

117.   OMC Lending, Inc.  presented itself as acting in a fiduciary capacity toward Ms. McNerney

118.   OMC Lending, Inc. never disclosed to Ms. McNerney that it was serving as the agent for Homecomings or GMAC in seeking to sell loans at the highest possible interest rate, with the cost of the default risk to Homecomings or GMAC borne by Ms. McNerney in the form of Private Mortgage Insurance.

119.   Further, as lender Homecomings or GMAC had a fiduciary duty in the loan processing to make a loan for which the borrower, Ms. McNerney, was qualified

120.   Homecomings or GMAC breached its fiduciary duty by making a loan without even rudimentary reasonable underwriting practices, taking care only to protect itself through private mortgage insurance in

the event of default and in insisting on private mortgage insurance added to the monthly payment and increased the chance that the payments could not be made and that the loan would default

121.    Ms. McNerney has been injured by the breach of fiduciary duty by excessive charges, fees and interests rates, as well as by the loan itself made without regard to Ms. McNerney's ability to pay

122.    Since OMC Lending, Inc. was acting within the scope of its agency relationship with Homecomings or GMAC, OMC Lending's breach of fiduciary duty is attributable to Homecomings or GMAC

123.    Homecomings or GMAC should not be allowed to profit from its breach of fiduciary duty

124.    Homecomings or GMAC should not be allowed to profit from making a loan in excess of the borrower's ability to pay while the borrower suffers family displacement, emotional distress, illness, anxiety and the loss of its home

125.    Homecomings or GMAC should not have the use of the courts to enforce obligations incurred in the course of its breach of fiduciary duty and in breach of its duty of good faith.

126.    The obligation incurred as a result of Homecoming's or GMAC's breach of fiduciary duty is unenforceable and null and void.

*Fifth Claim against Homecomings or GMAC—Negligence and Gross Negligence*

127.    Ms McNerney incorporates the prior paragraphs of this document
as though fully re-written herein

128.    Homecomings or GMAC has a duty to exercise reasonable care in
the loan processing process

129.    Homecomings or GMAC as a lender is held to a standard of public
trust based on its specialized knowledge in the process of loan
underwriting and processing

130.    Homecomings or GMAC failed to exercise reasonable care in the
processing of the transaction.

131.    As a result of Homecoming's or GMAC's failure to exercise
reasonable care, Ms. McNerney was subjected to a loan she could not
afford, along with additional onerous terms and costs, specifically
excessive fees, excessive interest rates and private mortgage
insurance,  which made default even more likely

132.    As a result of Homecoming's or GMAC's  failure to exercise
reasonable care, Ms. McNerney has been injured in the overcharges,
excessive fees, and a loan for which she could not qualify under
responsible underwriting standards, illness and emotional distress
arising from fear of losing her home.

133.    Homecomings or GMAC acted with malice in that its conscious
disregard for the rights and safety of Ms. McNerney had a great
probability of causing substantial harm.

134.    Ms. McNerney is entitled to damages and punitive damages as a result of Homecoming's or GMAC's conduct in the transaction at issue

*Sixth Claim against Homecomings or GMAC—Negligent and Intentional Misrepresentation*

135.    Ms. McNerney incorporates the prior paragraphs of this document as though fully re-written herein

136.    Homecomings or GMAC, through its agent OMC Lending, Inc, represented to Ms. McNerney that she qualified for a loan at a certain rate of interest.

137.    In fact, on the facts presented in the loan application, and as demonstrated by the rate sheets, Ms. McNerney qualified for a lower rate of interest

138.    Homecomings or GMAC, through its agent, offered the rate that would provide Homecomings or GMAC with a higher return and provide its agent with large fees.

139.    Homecomings or GMAC, through its agent, manipulated the information to make it appear that Ms. McNerney qualified for a loan for which she did not qualify at all.

140.    With the exercise of reasonable care Homecomings or GMAC could have ascertained from a review of the divorce decree and reasonable inquiry regarding the childrens', ages that a substantial portion of the family income would disappear in a short time as the teen age children reached 18 years of age; and, in fact, OMC did note

24

the ages of  the children and commented that support would soon be reduced

141.    Even counting the family income as stable with continuing child support, the loan payment to income ratio, as analyzed by Homecomings,  was over 50%

142.    Homecomings or GMAC made no effort to analyze the loan to determine whether Ms. McNerney had sufficient income to make payments as they came due under the terms of the note.

143.    Homecomings or GMAC did not care whether Ms. McNerney could make payments on the note as they came due

144.    It was inevitable that a mortgage payment, already in excess of 50% of the family income, would become unmanageable when child support ceased to be paid

145.    Homecomings or GMAC, through its agent, misrepresented to Ms. McNerney that she qualified for a loan for which, on her actual anticipated income, she was not in fact qualified

146.    Homecomings or GMAC, through its agent, used Ms. McNerney and her family home to enrich itself at her expense, protecting itself against loss through private mortgage insurance, the burden of which was borne by Ms. McNerney

147.    Homecomings or GMAC, with its superior knowledge, skill and experience in the lending industry had a duty of good faith and fair dealing with its customer, Ms. McNerney

148.   Homecomings or GMAC had a duty to exercise reasonable care in the processing of the loan

149.   As a result of Homecomings's or GMAC's misrepresentation that Ms. McNerney qualified for the loan, Ms. McNerney has been subjected to a loan that she cannot afford, has become in danger of losing her home, and has experienced damages in the form of excessive charges, excessive interest, excessive fees, a loans for which she could not qualify under responsible underwriting standards, illness, anxiety and emotional distress arising from fear of losing her home.

150.   Homecomings or GMAC acted with malice in that its conscious disregard for the rights and safety of Ms. McNerney had a great probability of causing substantial harm

151.   Homecomings or GMAC is liable for damages and punitive damages as a result of its negligent and intentional misrepresentation that Ms. McNerney qualified for the referenced loan

*Eighth Claim against Homecomings or GMAC--Unconscionability*

152.   Ms. McNerney incorporates herein as if fully rewritten all prior paragraphs

153.   All of the facts set forth above, including fiduciary duty and breach thereof, superior knowledge of the lending process and terms, secret undisclosed compensation terms, secret undisclosed dual agency relationship, secret undisclosed interest rate availability, undisclosed

26

intent to seek payment on the loan from the equity in the home, as
supplemented by private mortgage insurance, establish that the
conduct of Homecomings or GMAC was unconscionable

154.   The mortgage itself entered into in conditions so violative of
fiduciary duties, procedurally and substantively unconscionable should
not be enforced

*Ninth Claim against Homecomings or GMAC—Civil Conspiracy*

155.   Civil conspiracy is a tort whereby injury is done by two acting in
concert that cannot be done by one alone

156.   Homecomings or GMAC and OMC Lending acted in concert to
appear to be helping Ms. McNerney when in fact they were using Ms.
McNerney's  home to pump up their own fees and profits, charging Ms.
McNerney for the insurance that would protect Homecomings or
GMAC against loss when the house of cards collapsed, all in violation
of a fiduciary duty each had independently to Ms. McNerney

157.   Ms. McNerney was injured by excessive fees and costs,
overcharges in violation of the law of truth in lending, illness, anxiety
and distress incident to fear of losing the family home, and increased
unaffordable mortgage debt.

158.   Homecomings or GMAC and OMC Lending acted with malice and
are liable for damages, punitive damages and attorney fees.

*Tenth Claim against Homecomings or GMAC—Mortgage Loan Broker Act—RC*

*1322*

159.    Ms. McNerney incorporates all prior paragraphs of this document as though fully re-written herein

160.    The transaction at issue is subject to the provisions of the Ohio Mortgage Loan Broker Act, which became effective May 2, 2002

161.    The Ohio Mortgage Loan Broker Act requires brokers, within three business days of an application, to deliver to the borrower a mortgage loan origination disclosure statement that describes the method by which the fee to be paid by the buyer to the broker will be calculated, and a statement that the lender may pay compensation to the broker. R.C. 1322.062(A)(1)(f) and (g)

162.    Homecomings or GMAC, having an identity of interest and operation with the broker, which is its agent in the transaction, had a obligation to fulfill the requirements of the Ohio Mortgage Loan Broker act and failed to fulfill those requirements

163.    OMC Lending Inc served as an agent of Homecomings or GMAC in this transaction

164.    Homecomings or GMAC, the principal, is responsible for the wrongdoing if its agent when the agent is acting in the scope of its agency

165.    In making the loan at issue, OMC Lending, Inc was acting within the scope of its agency with Homecomings or GMAC

166.    Homecomings or GMAC is responsible for its agent's failure to fulfill the requirements of the Mortgage Loan Broker Act

28

167.    The Ohio Mortgage Loan Broker Act further provides that no broker

shall make false or misleading statements of a material fact, omissions

of statements required by state law,  or false promises regarding a

material fact, through advertising or other means, or engage in a

continued course of misrepresentation.  RC 1322.07(B).

168.    Homecomings or GMAC, in its identity with the broker, and as

broker, had a duty to refrain from making false or misleading

statements of material fact.

169.    OMC Lending, as the broker, had a duty to refrain from making

false or misleading statements of material fact

170.    OMC Lending, in making the loan to Ms. McNerney was acting

within the scope of its agency

171.    Homecomings or GMAC, as Principal was responsible for actions

of OMC Lending done within the scope of its agency

172.    Homecomings or GMAC, through its agent,  breached the duties

set forth in RC 1322.07(B)  when it persuaded  Ms. McNerney that the

rate offered was the only rate for which she could qualify, that the loan

could not be restructured to obviate the need for private mortgage

insurance, in omitting to tell her that she could qualify for better terms

from the lender she already had, and in deliberately refraining from

contacting Household in order to foreclose the possibility that

Household would contact Ms. McNerney with a better offer, and in

failing to disclose the higher loan payoff and actively concealing the

29

requirement of private mortgage insurance in time for Ms. McNerney to process and consider the information and explore other options.

173.    The deferred premiums disclosed in the HUD 1 Statement in the transaction is a yield spread premiums, which is a payment from Homecomings or GMAC to the broker.

174.    It is a per se violation of RC 1322.07(B) to omit to inform Ms. McNerney of the payment in the advance disclosure method provided by the statute

175.    It is a per se violation of the Ohio Mortgage Brokers Loan Act to omit the advance disclosure of lender compensation

176.    Homecomings or GMAC, through its agent, violated the Mortgage Loan Broker Act and is liable for damages as set forth in that act.

177.    The violation of the mortgage loan broker act also constitutes a violation of the Ohio Consumer Sales Practices Act, thus Ms. McNerney is entitled to damages, treble damages, punitive damages and attorney fees for each violation.

*Eleventh Claim against Homecomings—Failure to Engage in Loss Mitigation Efforts*

178.    Homecomings or GMAC as lender has a duty to engage in loss mitigation efforts on its borrowers default

179.    The witness produced in response to a notice of deposition served upon plaintiff, admitted that it engaged in no loss mitigation efforts with Ms. McNerney, thus thrusting her into foreclosure without determining

30

whether the exercise of other rights and remedies would prevent this

hardship and protect her possession of her home

*Third Party Claims against OMC Lending, Inc. and Nancy George*

*First Third Party Claim—Fraud and Intentional and Negligent Misrepresentation*

180.    Ms. McNerney incorporates herein by reference all of the foregoing

paragraphs of this document

*181.*    On information and belief, OMC Lending,Inc is an Ohio Corporation

owned exclusively by Nancy George and operated exclusively by her,

with a complete identity of interest between OMC Lending, Inc and

Nancy George

*182.*    On information and belief, OMC Lending is a thinly capitalized

corporation operated exclusively for the benefit of Nancy George.

*183.*    Nancy George's domination and control over Defendant OMC

Lending was so complete that the corporate form of Defendant OMC

Lending had no separate existence of its own

*184.*    Nancy George's control over the corporation  was exercised in

such a manner as to commit fraud or illegal acts against Ms.

McNerney , and  injury or unjust loss resulted to Ms. McNerney from

such control and wrong

185.    Nancy George is liable individually for the unlawful acts of OMC

Lending, Inc.

186.    OMC Lending, Inc. as broker, had an affirmative duty under
RESPA, the Law of Truth in Lending, the Mortgage Loan Broker Act,
and as a fiduciary to disclose material terms in advance of the closing
of the loan.

187.    OMC Lending, Inc affirmatively represented to Ms. McNerney that
her payment on the loan would be $850.00 and that that payment
would include the amount that had to be held in escrow to pay property
taxes.

188.    OMC Lending knew or should have known that Ms. McNerney
would understand based on this representation that the monthly
payment necessary to fulfill her obligation on the loan would be
$850.00

189.    OMC Lending knew that because of the the additional cost of
private mortgage insurance, $850.00 would not be adequate to satisfy
Ms. McNerney's monthly payment obligation.

190.    OMC Lending's representation as to the payment amount was false

191.    Ms. McNerney had explained to OMC Lending, Inc that she needed
to refinance the loan on the home because after her divorce she could
not afford the monthly payment that she then had

192.    The payment amount was a material term that induced Ms.
McNerney to go forward with the loan application

193.   OMC Lending knew that its representation to Ms. McNerney was
false

194.   OMC Lending knew that Ms. McNerney had no reason to believe
that it was false

195.   Ms. McNerney believed the representation to be true

196.   Ms. McNerney's belief in the representation was reasonable

197.   Ms. McNerney relied upon the false representation in going forward
with the loan process and in taking funds from her IRA to complete the
process, incurring thereby additional taxes and penalties for that tax
year

198.   OMC Lending Inc expected Ms. McNerney to rely upon its false
representation

199.   Ms. McNerney was injured by the false representation in that she
went forward with the loan without learning in time to consider other
options or without having time to process the information, in that she
depleted her resources and incurred additional tax obligations to take
out the funds to go forward with a loan that was not suitable for her

200.   OMC Lending actively concealed from Ms. McNerney the material
facts that Homecomings required private mortgage insurance and that
Household, the lender she then had, would offer her a competitive
loan if informed of the intent to refinance

201.   Both of these facts were material facts of great importance to Ms.
McNerney in the decision to refinance the loan on her home

202.    OMC Lending took active steps to conceal the competitive loan opportunity by knowingly refraining from contacting Household for a payoff until the scheduled closing date, thus foreclosing the opportunity for Household to reach Ms. McNerney with a competitive offer in time.

203.    As a result of refraining to contact Household regarding the payoff, OMC Lending provided information about material terms based on a guess about the amount of the payoff, which guess turned out to be understated by over $6,000.00—which ultimately affected the principal amount of the loan, the monthly payment, the loan to value ratio, and other essential and material terms of the loan.

204.    OMC Lending had a duty to disclose both material facts and knowingly concealed them

205.    Ms. McNerney did not know of these facts and relied upon OMC to reveal all material facts and make all material disclosures in a timely manner

206.    OMC Lending knew of Ms. McNerney's reliance and Ms. McNerney's reliance was justifiable

207.    Ms. McNerney was injured by the concealment of the material facts in that she arrived at a loan closing having already taken funds from her IRA, with the expectation of an affordable monthly mortgage payment, and with insufficient time or opportunity to process the unexpected change to her detriment in material terms.

34

208.    OMC Lending falsely led Ms. McNerney to believe that it was acting

on her behalf when in reality it was action on its own behalf and as

agent for Homecomings to make a loan with the highest possible

interest rate.

209.    Ms. McNerney reasonably believed that OMC Lending was acting

in her behalf

210.    OMC Lending, Inc expected Ms. McNerney to belief that it was

acting in her behalf

211.    Ms. McNerney was injured as set forth above by her reliance upon

OMC Lending to act in her behalf.

212.    The facts set forth above constitute fraud, negligent

misrepresentation, and intentional misrepresentation

213.    Nancy George and OMC Lending, Inc are liable jointly and

severally for the damages arising from the conduct of OMC Lending.

*Second Third Party Claim—Breach of Fiduciary Duty*

214.    Ms. McNerney  incorporates all prior paragraphs as though fully

rewritten herein; specifically those paragraphs of the first third party

claim related to piercing the corporate veil


215.    OMC Lending at all times  was acting within the scope of its agency

with Homecomings or GMAC

216.    OMC Lending  presented itself as acting in a fiduciary capacity

toward Ms. McNerney.

217.   OMC Lending never disclosed to Ms. McNerney that it was serving as the agent for Homecomings in seeking to sell loans at the highest possible interest rate, with the cost of the default risk to Homecomings borne by Ms. McNerney in the form of Private Mortgage Insurance.

218.   Ms. McNerney has been injured by the breach of fiduciary duty by excessive charges, fees and interests rates, as well as by the loan itself made without regard to her ability to pay

219.   OMC Lending had an affirmative duty to disclose the secret agency

220.   OMC Lending breached the duty to disclose the secret agency

221.   Disclosure of the secret agency would have had the effect of making Ms. McNerney more cautious and less trusting of OMC Lending, causing her to be more vigilant and to search for other loan options

222.   OMC Lending should not be allowed to profit from brokering the loan at issue which was in excess of Ms. McNerney's ability to pay while Ms. McNerney suffers family displacement, emotional distress, illness, anxiety and the loss of her home

223.   OMC Lending should be required to disgorge all fees charged in the transaction and is liable for damages arising from the breach of its fiduciary duty

*Third Cause of Action—Consumer Sales Practices Act*

36

224.    Ms. McNerney incorporates the prior paragraphs as though fully re-
written herein, specifically the allegations of the first cause of action
related to piercing the corporate veil

225.    The conduct complained of constitutes unfair, deceptive and
unconscionable acts and practices in the course of a consumer
transaction in violation or RC 1345

226.    Ms. McNerney is a  consumer within the purview of the Consumer
Sales Practices Act (CSPA)

227.    OMC Lending is a broker within the purview of the CSPA

228.    The transaction at issue is a consumer transaction within the
purview of the CSPA

229.    The attorney general's public information file contains cases
holding mortgage brokers liable for unfair, deceptive and
unconscionable acts and practices such as those set forth herein

230.    Ms. McNerney has been damaged by the unfair, deceptive and
unconscionable practices complained of herein in the overcharges,
excessive fees,  the making of a loan for which she could not qualify
under responsible underwriting standards, and cannot afford to pay,
illness, anxiety  and emotional distress arising from fear of losing her
home.

231.    Ms. McNerney is entitled to damages, treble damages, statutory
damages and attorney fees pursuant to the provisions of the
Consumer Sales Practices Act.

*Fourth Cause of Action--Negligence*

232.    Ms. McNerney incorporates the prior paragraphs of this document as though fully re-written herein, specifically the paragraphs in the first cause of action related to piercing the corporate veil

233.    OMC Lending had a duty to exercise reasonable care in the loan processing process

234.    OMC Lending as a broker is held to a standard of public trust based on its specialized knowledge in the process of loan underwriting and processing

235.    OMC Lending failed to exercise reasonable care in the processing of the loan transaction at issue herein

236.    As a result of OMC Lending's failure to exercise reasonable care, Ms. McNerney was  subjected to a loan she could not afford, along with additional onerous terms and costs, specifically excessive fees, excessive interest rates and private mortgage insurance,  which made default even more likely and, in addition, unnecessarily depleted resources in her IRA, incurring unnecessary taxes and penalties

237.    As a result of  OMC Lending's failure to exercise reasonable care, Ms. McNerney has been injured in the overcharges, excessive fees,  a loan for which she could not qualify under responsible underwriting

38

standards, illness and emotional distress arising from fear of losing her home.

238.   OMC Lending acted with malice in that its conscious disregard for the rights and safety of Ms. McNerney had a great probability of causing substantial harm.

239.   Ms. McNerney is entitled to damages and punitive damages as a result of OMC Lending's conduct in the transaction

*Fifth Cause of Action—Mortgage Loan Broker Act—RC 1322*

240.   Ms. McNerney incorporates all prior paragraphs of this document as though fully re-written herein, specifically the paragraphs of the first claim related to piercing the corporate veil

241.   The transaction at issue is subject to the provisions of the Ohio Mortgage Loan Broker Act, which became effective May 2, 2002

242.   The Ohio Mortgage Loan Broker Act requires brokers, within three business days of an application, to deliver to the borrower a mortgage loan origination disclosure statement that describes the method by which the fee to be paid by the borrower to the broker will be calculated, and a statement that the lender may pay compensation to the broker.  R.C. 1322.062(A)(1)(f) and (g)

243.    OMC Lending, Inc., had a obligation to fulfill the requirements of
the Ohio Mortgage Loan Broker act and failed to fulfill those
requirements

244.    The Ohio Mortgage Loan Broker Act further provides that no broker
shall make false or misleading statements of a material fact, omissions
of statements required by state law, or false promises regarding a
material fact, through advertising or other means, or engage in a
continued course of misrepresentation.  RC 1322.07(B).

245.    OMC Lending, Inc. had a duty to refrain from making false or
misleading statements of material fact.

246.    OMC Lending, Inc. breached that duty in the numerous affirmative
misrepresentations of material fact and concealment of material facts
set forth in preceeding paragraphs.

247.    The yield spread premiums disclosed in the HUD 1 Statement in
the transaction are payments from Homecomings to the broker.

248.    It is a per se violation of RC 1322.07(B) to omit to inform Ms.
McNerney of the payment in the advance disclosure method provided
by the statute

249.    It is a per se violation of the Ohio Mortgage Brokers Loan Act to
omit the advance disclosure of lender compensation

250.    OMC Lending, Inc. violated the Mortgage Loan Broker Act and is
liable for damages as set forth in that act.

251.    The violation of the mortgage loan broker act also constitutes a
violation of the Ohio Consumer Sales Practices Act, thus Ms.
McNerney is entitled to damages, treble damages, punitive damages
and attorney fees.

*Sixth  Cause of Action—Civil Conspiracy*

252.    Civil conspiracy is a tort whereby injury is done by two acting in
concert that cannot be done by one alone

253.    Homecomings and OMC  Lending, Inc. acted in concert to appear
to be helping Ms. McNerney when in fact they were using Ms.
McNerney's home to pump up their own fees and profits, charging Ms.
McNerney for the insurance that would protect Homecomings or
GMAC against loss when the house of cards collapsed, all in violation
of a fiduciary duty each had independently to Ms. McNerney

254.    Ms. McNerney was injured by excessive fees and costs,
overcharges in violation of the law of truth in lending, illness, anxiety
and distress incident to fear of losing the family home, and increased
unaffordable mortgage debt.

255.    Homecomings or GMAC and OMC Lending, Inc. acted with malice
and are liable for damages, punitive damages and attorney fees.

*Seventh  Third Party Claim—Unjust Enrichment*

256.    Ms. McNerney incorporates all the prior paragraphs of this pleading
as though fully re-written herein

257.    While acting in a fiduciary capacity, and engaging in affirmative
misrepresentation and affirmative concealment while acting in a
fiduciary capacity, OMC Lending, Inc.  manipulated the application
process to cause Ms. McNerney to believe that she qualified for a loan
on terms that did not exist and caused her to complete the process by
depleting her scarce resources, incurring unnecessary tax liability, and
incurring a debt with terms she had no opportunity to consider or
process and which OMC Lending knew she could not afford

258.    OMC Lending, Inc. manipulated the loan process to place Ms.
McNerney in such a disadvantageous and invested position at closing
that it was inevitable that she would complete the transaction

259.    OMC Lending, Inc.  has been unjustly enriched by its wrongdoing

260.    OMC Lending, Inc. should be required to disgorge its unjustly
earned fees


*Prayer for Relief*

WHEREFORE, Ms. McNerney respectfully requests that this Court:

261.    Order that the transaction has been rescinded

262.    Order that foreclosure be denied to MERS as MERS is not the real
party in interest and lacks standing to pursue the foreclosure

263.    Order that Homecomings or GMAC be denied foreclosure and

42

provision for fees;

274.    Award punitive damages and compensatory damages

275.    Award treble damages

276.    Award disgorgement of all fees and profits in the transaction

277.    Award such other and further relief as the Court deems just and

proper.

Respectfully submitted,

Susan M. Gray (0062356)
Attorney for Ms. McNerney
Executive Club Building
21330 Center Ridge # 11
Rocky River, OH  44116
(440) 331-3949
(440) 331-8160 fax

44

## Certificate of Service

On this _____20th____ day of <u>October</u>_____, 2006, a copy of the foregoing document was served upon the following at the address shown below by regular U.S. Mail.

Calfee, Halter and Griswold, LLP
1400 McDonald Investment Center
800 Superior Avenue
Cleveland, OH 44114-2688

Susan M. Gray
Attorney for Ms. McNerney

45

**Exhibit G**



59417510

# IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

MORTGAGE ELECT. REG. SYS. INC.
     Plaintiff

Case No: CV-03-514406

Judge: NANCY A FUERST

PATRICIA JOANNE MCNERNEY AKA KELLICKER
ETAL
     Defendant

## **JOURNAL ENTRY**

87 DIS. W/O PREJ - FINAL

DESPITE BEING GRANTED AN EXTENSION OF TIME TO PROVIDE THE COURT WITH EVIDENCE THAT IT HELD THE
SUBJECT NOTE AT THE TIME THE INSTANT CASE WAS FILED, PLAINTIFF HAS BEEN UNABLE TO COMPLY.
CONSEQUENTLY, PURSUANT TO THE COURT ORDER DATED 06/30/2009, WELLS FARGO BANK V. JORDAN, 2009
OHIO 1092 (8TH DIST. CT. APP., MAR. 12, 2009) AND CIVIL RULE 41(B)(1), THE INSTANT CASE IS HEREBY DISMISSED,
WITHOUT PREJUDICE, FINAL.
COURT COST ASSESSED TO THE PLAINTIFF(S).

*Nancy A. Fuerst*
_____
Judge Signature            09/14/2009
                           CPJLJ

- 87
09/14/2009

**Exhibit H**

Cat12,Stay,Termed,Vecchiar

# U.S. District Court
## Northern District of Ohio (Cleveland)
## CIVIL DOCKET FOR CASE #: 1:09-cv-02383-LW

| | |
|---|---|
| Homecomings Financial, LLC v. Patricia J. McNerney, et al | Date Filed: 10/14/2009 |
| Assigned to: Judge Lesley Wells | Date Terminated: 08/08/2012 |
| Demand: $206,000 | Jury Demand: Defendant |
| Cause: 28:1332 Diversity-Negotiable Instrument | Nature of Suit: 220 Real Property: Foreclosure |
| | Jurisdiction: Diversity |

### Plaintiff

**Homecomings Financial, LLC**
formerly known as
Homecomings Financial Network, Inc.

represented by  **Jeffrey A. Lipps**
Carpenter, Lipps & Leland
Ste. 1300
280 North High Street
Columbus, OH 43215
614-365-4105
Fax: 614-365-9145
Email: lipps@carpenterlipps.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**Angela Paul Whitfield**
Carpenter, Lipps & Leland
Ste. 1300
280 North High Street
Columbus, OH 43215
614-365-4100
Fax: 614-365-9145
Email: paul@carpenterlipps.com
ATTORNEY TO BE NOTICED

**Christopher S. Williams**
Calfee, Halter & Griswold - Cleveland
1405 East Sixth Street
Cleveland, OH 44114
216-622-8441
Fax: 216-241-0816
Email: cwilliams@calfee.com
TERMINATED: 06/09/2010

**David A. Wallace**
Carpenter, Lipps & Leland
Ste. 1300

280 North High Street
Columbus, OH 43215
614-365-4100
Fax: 614-365-9145
Email: wallace@carpenterlipps.com
ATTORNEY TO BE NOTICED

**Joel E. Sechler**
Carpenter, Lipps & Leland
Ste. 1300
280 North High Street
Columbus, OH 43215
614-365-4100
Fax: 614-365-9145
Email: sechler@carpenterlipps.com
ATTORNEY TO BE NOTICED

**Karen M. Cadieux**
Carpenter, Lipps & Leland
Ste. 1300
280 North High Street
Columbus, OH 43215
614-365-4100
Fax: 614-365-9145
Email: cadieux@carpenterlipps.com
ATTORNEY TO BE NOTICED

**Laura C. McBride**
Ulmer & Berne - Cleveland
1100 Skylight Office Tower
1660 West Second Street
Cleveland, OH 44113
216-583-7000
Fax: 216-583-7001
Email: lmcbride@ulmer.com
TERMINATED: 06/09/2010

V.

<u>Defendant</u>

**Jim Rokakis**
Cuyahoga County Treasurer

<u>Defendant</u>

**State of Ohio Department of
Taxation**
TERMINATED: 02/18/2011

represented by **Lucas C. Ward**
Office of the Attorney General -
Collections Enforcement
State of Ohio

21st Floor
150 East Gay Street
Columbus, OH 43215
614-466-8671
Fax: 614-752-9070
Email:
lucas.ward@ohioattorneygeneral.gov
ATTORNEY TO BE NOTICED

**Defendant**

**Patricia J. McNerney**                represented by    **Susan M. Gray**
also known as                                             Law Office of Susan M. Gray
Patricia Joanne Kellicker                                 Ste. 11
                                                         22255 Center Ridge Road
                                                         Rocky River, OH 44116
                                                         440-331-3949
                                                         Fax: 440-331-8160
                                                         Email: smgray@smgraylaw.com
                                                         ATTORNEY TO BE NOTICED

                                                         **Thomas C. Loepp**
                                                         Maistros & Loepp
                                                         3580 Darrow Road
                                                         Stow, OH 44224
                                                         330-688-0560
                                                         Fax: 330-688-1103
                                                         Email: tloepp@bizlawfix.com
                                                         ATTORNEY TO BE NOTICED

**3rd Party Plaintiff**

**Patricia J. McNerney**                represented by    **Susan M. Gray**
                                                         (See above for address)
                                                         ATTORNEY TO BE NOTICED

                                                         **Thomas C. Loepp**
                                                         (See above for address)
                                                         ATTORNEY TO BE NOTICED

V.

**3rd Pty Defendant**

**Mortgage Electronic Registration
Systems, Inc**
C/O CT Corp. System
1300 East Ninth Street
Cleveland, OH 44113

**3rd Pty Defendant**

**GMAC Mortgage Corp**

<u>Counter-Claimant</u>

Patricia J. McNerney                    represented by    **Susan M. Gray**
                                                          (See above for address)
                                                          ATTORNEY TO BE NOTICED

                                                          **Thomas C. Loepp**
                                                          (See above for address)
                                                          ATTORNEY TO BE NOTICED

V.

<u>Counter-Defendant</u>

Homecomings Financial, LLC              represented by    **Jeffrey A. Lipps**
                                                          (See above for address)
                                                          LEAD ATTORNEY
                                                          ATTORNEY TO BE NOTICED

                                                          **Angela Paul Whitfield**
                                                          (See above for address)
                                                          ATTORNEY TO BE NOTICED

                                                          **Christopher S. Williams**
                                                          (See above for address)
                                                          TERMINATED: 06/09/2010

                                                          **David A. Wallace**
                                                          (See above for address)
                                                          ATTORNEY TO BE NOTICED

                                                          **Karen M. Cadieux**
                                                          (See above for address)
                                                          ATTORNEY TO BE NOTICED

                                                          **Laura C. McBride**
                                                          (See above for address)
                                                          TERMINATED: 06/09/2010

<u>Counter-Claimant</u>

Patricia J. McNerney                    represented by    **Susan M. Gray**
                                                          (See above for address)
                                                          ATTORNEY TO BE NOTICED

                                                          **Thomas C. Loepp**
                                                          (See above for address)
                                                          ATTORNEY TO BE NOTICED

V.

<u>Counter-Defendant</u>

Homecomings Financial, LLC

represented by **Jeffrey A. Lipps**
(See above for address)
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**Angela Paul Whitfield**
(See above for address)
ATTORNEY TO BE NOTICED

**Christopher S. Williams**
(See above for address)
TERMINATED: 06/09/2010

**David A. Wallace**
(See above for address)
ATTORNEY TO BE NOTICED

**Karen M. Cadieux**
(See above for address)
ATTORNEY TO BE NOTICED

**Laura C. McBride**
(See above for address)
TERMINATED: 06/09/2010

| Date Filed | # | Docket Text |
|---|---|---|
| 10/14/2009 | 1 | **Complaint** for Foreclosure & Reformation against Jim Rokakis, State of Ohio Department of Taxation, Patricia McNerney. Filing fee paid $ 350, receipt number 0647-3780615. Filed by Homecomings Financial, LLC. (Attachments: # 1 Exhibit A - Affidavit, # 2 Exhibit A-1 - Note, # 3 Exhibit A-2 - Mortgage, # 4 Exhibit A-3 - Assignment of Note & Mortgage, # 5 Exhibit A-4 - Second Assignment of Note & Mortgage, # 6 Exhibit A-5 - Payment History, # 7 Exhibit A-6 - Payoff Statement, # 8 Civil Cover Sheet) (McBride, Laura) Modified text on 10/16/2009 (C,B). (Entered: 10/14/2009) |
| 10/14/2009 | 2 | Corporate Disclosure Statement filed by Homecomings Financial, LLC, f/k/a Homecomings Financial Network, Inc.. (McBride, Laura) Modified text on 10/15/2009 (B,B). (Entered: 10/14/2009) |
| 10/14/2009 | 3 | Notice of Filing Preliminary Judicial Report filed by Homecomings Financial, LLC, f/k/a Homecomings Financial Network, Inc.. (McBride, Laura) (Entered: 10/14/2009) |
| 10/14/2009 | | Judge Lesley Wells assigned to case. (C,B) (Entered: 10/14/2009) |

| 10/14/2009 | | Random Assignment of Magistrate Judge pursuant to Local Rule 3.1. In the event of a referral, case will be assigned to Magistrate Judge Perelman. (C,B) (Entered: 10/14/2009) |
|---|---|---|
| 10/15/2009 | 4 | Magistrate Consent Form issued. No summons provided, and no summons issued. (C,B) (Entered: 10/15/2009) |
| 10/15/2009 | 5 | Notice of filing foreclosure action filed by Homecomings Financial, LLC. (C,KA) Modified to correct filing date on 10/20/2009 (B,B). (Entered: 10/16/2009) |
| 10/19/2009 | 6 | Notice of Review of Foreclosure Complaint and Accompanying Documents. (H,LA) (Entered: 10/19/2009) |
| 10/26/2009 | 7 | Waiver of Service Returned Executed by Patricia J. McNerney. Patricia J. McNerney waiver sent on 10/14/2009, answer due 12/14/2009. filed on behalf of Homecomings Financial, LLC (McBride, Laura) Modified text on 10/26/2009 (B,B). (Entered: 10/26/2009) |
| 11/10/2009 | 8 | **Answer** to 1 Complaint,, filed by State of Ohio Department of Taxation. (Ward, Lucas) (Entered: 11/10/2009) |
| 01/18/2010 | 9 | **Motion** for leave to File Response to Complaint Out of Time and Instanter filed by Defendant Patricia J. McNerney. Related document(s) 1 . (Gray, Susan) Modified text on 1/19/2010 (B,B). (Entered: 01/18/2010) |
| 01/18/2010 | 10 | **Motion** to dismiss complaint for failure to state a claim filed by Defendant Patricia J. McNerney. Related document(s) 1 , 9 . (Gray, Susan) (Entered: 01/18/2010) |
| 02/02/2010 | 11 | **Opposition** to 9 Patricia J. McNerney's **Motion** for leave to File Response to Complaint Out of Time and **Motion** to Strike Defendant's Motion to Dismiss filed by Homecomings Financial, LLC. (McBride, Laura) Modified text on 2/3/2010 (B,B). (Entered: 02/02/2010) |
| 02/07/2010 | 12 | **Reply** to response to 9 **Motion** , for leave to File Response to Complaint Out of Time filed by Patricia J. McNerney. (Attachments: # 1 Exhibit A-State Court Docket)(Gray, Susan) Modified text and links on 2/8/2010 (B,B). (Entered: 02/07/2010) |
| 02/22/2010 | | **Order** [non-document]Granting Defendant Patricia J. McNerney's motion to file response to complaint out of time. (Related Doc # 9 ) Defendant shall file their response upon receipt of this email notification. Judge Lesley Wells on 2/22/2010.(C,LS) (Entered: 02/22/2010) |
| 02/22/2010 | 13 | **Response** to 10 **Motion** to dismiss complaint for failure to state a claim filed by Patricia J. McNerney. (Gray, Susan) (Entered: 02/22/2010) |
| 03/29/2010 | 14 | **Opposition** to 10 **Motion** to dismiss complaint for failure to state a claim filed by Homecomings Financial, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (McBride, Laura) (Entered: 03/29/2010) |
| 04/12/2010 | 15 | **Motion** for extension of to Reply to Plaintiff's Response to Defendant's Motion to Dismiss until May 3, 2010 filed by Defendant Patricia J. McNerney. Related document(s) 14 , 13 . (Gray, Susan) (Entered: 04/12/2010) |

| 04/20/2010 | 16 | **Motion** for leave to file reply out of time and instanter filed by Defendant Patricia J. McNerney. (Gray, Susan) (Entered: 04/20/2010) |
| 04/20/2010 | 17 | **Reply** to response to 10 **Motion** to dismiss complaint for failure to state a claim filed by Patricia J. McNerney. (Attachments: # 1 Exhibit 1-Certified Copy of Public Document)(Gray, Susan) (Entered: 04/20/2010) |
| 05/07/2010 | | **Order** [non-document]Granting Motion of defendant Patricia McNerney for an extension of time until 3 May 2010 to file reply. Judge Lesley Wells on 5/7/2010.(C,LS) (Entered: 05/07/2010) |
| 05/13/2010 | | **Order** [non-document]. Motion for leave to file is moot. (Related Doc # 16 ) Judge Lesley Wells on 5/13/2010.(C,LS) (Entered: 05/13/2010) |
| 06/02/2010 | 18 | **Motion** to substitute attorney Angela Paul Whitfield in place of attorney Laura McBride filed by Plaintiff Homecomings Financial, LLC. (Whitfield, Angela) (Entered: 06/02/2010) |
| 06/09/2010 | | **Order** [non-document]Granting Motion to substitute counsel. Laura C. McBride and Christopher S. Williams are removed as counsel from case. Attorney Angela Whitfield will remain as counsel for plaintiffs. (Related Doc # 18 ) Judge Lesley Wells on 6/10/2010.(C,LS) (Entered: 06/09/2010) |
| 09/24/2010 | 19 | **Memorandum Opinion and Order**: 10 that the Court finds that Homecomings has met its burden of proof to establish standing with legal sufficiency. McNerney's motion to dismiss is denied. Judge Lesley Wells on 9/24/2010. (K,V) (Entered: 09/24/2010) |
| 09/24/2010 | 20 | **Case Management Conference Scheduling Order**. A case management conference will be held on 10/14/2010 at 02:30 PM at Courtroom 328 before Judge Lesley Wells. (NOTE LOCATION: 328 Metzenbaum United States Court House, 201 Superior Avenue, Cleveland, Ohio). Judge Lesley Wells on 9/24/2010. (C,LS) (Entered: 09/24/2010) |
| 09/30/2010 | 21 | **Motion** to attend Case Management Conference by telephone filed by Plaintiff Homecomings Financial, LLC. Related document(s) 20 . (Wallace, David) (Entered: 09/30/2010) |
| 10/05/2010 | | **Order** [non-document]Granting Plaintiff's Motion excusing the personal attendance of the party representative at the case management conference and allowing to attend by telephone (Related Doc # 21 )Judge Lesley Wells on 10/5/2010.(C,LS) (Entered: 10/05/2010) |
| 10/12/2010 | 22 | Report of Parties' Planning Meeting , parties do not consent to this case being assigned to the magistrate judge, filed by All Plaintiffs. (Wallace, David) (Entered: 10/12/2010) |
| 10/13/2010 | | Notice [Non Document] of Cancellation of the Case Management Conference scheduled for 10/14/2010. This matter will be reset at a later date. (C,LS) (Entered: 10/13/2010) |
| 10/13/2010 | 23 | **Motion** for extension of time until November 13, 2010 to answer Complaint with affirmative defenses and counterclaims filed by Defendant Patricia J. McNerney. (Gray, Susan) (Entered: 10/13/2010) |

| 10/14/2010 | | **Order** [non-document]Denying Defendant Patricia J. McNerney's Motion for Extension of Time to Answer. (Related Doc. #23) Judge Lesley Wells on 10/14/2009.(C,LS) (Entered: 10/14/2010) |
|---|---|---|
| 10/14/2010 | 24 | **Answer** to 1 Complaint,, with Jury Demand , **Third party complaint** against GMAC Mortgage Corp, Mortgage Electronic Registration Systems, Inc, **Counterclaim** against Homecomings Financial, LLC filed by Patricia J. McNerney. (Gray, Susan) (Entered: 10/14/2010) |
| 10/19/2010 | 25 | **Motion** to strike Defendant Patricia J. McNerney's Answer With Affirmative Defenses, Counterclaims and Third Party Claims filed by Plaintiff Homecomings Financial, LLC. (Attachments: # 1 Exhibit A)(Wallace, David) (Entered: 10/19/2010) |
| 10/19/2010 | 26 | **Motion** for Entry of Default Against Defendant Patricia J. McNerney filed by Plaintiff Homecomings Financial, LLC. (Wallace, David) (Entered: 10/19/2010) |
| 10/19/2010 | 27 | **Motion** for default judgment against Defendant Patricia J. McNerney filed by Plaintiff Homecomings Financial, LLC. (Wallace, David) (Entered: 10/19/2010) |
| 10/27/2010 | 28 | **Motion** for leave to File Answer with Affirmative Defenses, Counterclaims, and Third Party Claims (), **Motion** for leave to appeal filed by 3rd Party Plaintiff Patricia J. McNerney, Defendant Patricia J. McNerney. (Attachments: # 1 Exhibit A (affidavit of Susan M. Gray))(Gray, Susan) (Entered: 10/27/2010) |
| 10/27/2010 | 29 | Notice of Withdawal of Docket item #28. filed by Patricia J. McNerney. (Gray, Susan) (Entered: 10/27/2010) |
| 10/27/2010 | 30 | **Motion** for leave to File Answer with Affirmative Defenses, Counterclaims, and Third Party Claims filed by 3rd Party Plaintiff Patricia J. McNerney, Defendant Patricia J. McNerney. (Attachments: # 1 Affidavit Affidavit of Susan Gray) (Gray, Susan) Modified text to term motion see document #32 on 10/29/2010 (E,P). (Entered: 10/27/2010) |
| 10/28/2010 | 31 | Notice of Withdraw of Docket Item #30, Motion of defendant Patricia McNerney to file answer, counterclaims and third party claims filed by Patricia J. McNerney. Related document(s) 30 .(Gray, Susan) Modified text on 10/29/2010 (E,P). (Entered: 10/28/2010) |
| 10/28/2010 | 32 | **Motion(Corrected)** for leave to File Answer with Affirmative Defenses, Counterclaims, and Third Party Claims filed by 3rd Party Plaintiff Patricia J. McNerney, Defendant Patricia J. McNerney, Counter-Claimant Patricia J. McNerney. (Attachments: # 1 Exhibit Affidavit of Susan Gray)(Gray, Susan) Modified text on 10/29/2010 (E,P). (Entered: 10/28/2010) |
| 11/01/2010 | 33 | **Response** to 27 **Motion** for default judgment against Defendant Patricia J. McNerney filed by Patricia J. McNerney. (Attachments: # 1 Exhibit A-Docket in Common Pleas Foreclosrue Case)(Gray, Susan) (Entered: 11/01/2010) |
| 11/01/2010 | 34 | **Response** to 25 **Motion** to strike Defendant Patricia J. McNerney's Answer With Affirmative Defenses, Counterclaims and Third Party Claims filed by Patricia J. McNerney. (Attachments: # 1 Exhibit A-Docket in Common Pleas Foreclosure Case, # 2 Exhibit B-Affidavit of Susan M. Gray)(Gray, Susan) (Entered: 11/01/2010) |

| | | |
|---|---|---|
| 11/02/2010 | | Random Assignment of Magistrate Judge pursuant to Local Rule 3.1. In the event of a referral, case will be assigned to Magistrate Judge Vecchiarelli. (C,BA) (Entered: 11/02/2010) |
| 11/02/2010 | 35 | **Opposition** to 32 **Motion** for leave to File Answer with Affirmative Defenses, Counterclaims, and Third Party Claims and Reply in Support of Motion to Strike and Motion for Default Judgment filed by Homecomings Financial, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Wallace, David) (Entered: 11/02/2010) |
| 12/03/2010 | 36 | Emergency **Motion** for Order Setting Settlement Conference filed by Plaintiff Homecomings Financial, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Wallace, David) (Entered: 12/03/2010) |
| 12/29/2010 | | Notice [Non Document] of a Telephone Conference set for 1/5/2011 at 02:30 PM. The Court will initiate the conference call. (C,LS) (Entered: 12/29/2010) |
| 01/05/2011 | | **Order** [non-document]Denying Motion to strike. (Related Doc # 25 ). Judge Lesley Wells on 1/5/2011.(C,LS) (Entered: 01/05/2011) |
| 01/05/2011 | | **Order** [non-document]Denying Motion for entry of default. (Related Doc # 26 ). Judge Lesley Wells on 1/5/2011.(C,LS) (Entered: 01/05/2011) |
| 01/05/2011 | | **Order** [non-document] Denying Motion for default judgment. (Related Doc # 27 ). Judge Lesley Wells on 1/5/2011.(C,LS) (Entered: 01/05/2011) |
| 01/05/2011 | | **Order** [non-document]Granting Motion for leave to file. (Related Doc # 32 ). Judge Lesley Wells on 1/5/2011.(C,LS) (Entered: 01/05/2011) |
| 01/06/2011 | | **Telephonic status conference** [non-document] with the Chambers of Judge Lesley Wells.Status Conference held on 1/5/2011 with counsel David Wallace and Susan Gray to discuss the Plaintiff's emergency motion for an order setting settlement conference. Counsel agreed to a settlement conference before the Court involving all relevant parties. (D,JA) (Entered: 01/06/2011) |
| 01/06/2011 | 37 | **Order** referring case to Magistrate Judge Nancy A. Vecchiarelli for Settlement Conference to be held 1/31/2011 at 09:30 AM. Judge Lesley Wells (C,KA) (Entered: 01/06/2011) |
| 01/13/2011 | 38 | Attorney Appearance as co-counsel by Thomas C. Loepp filed by on behalf of Patricia J. McNerney. (Loepp, Thomas) (Entered: 01/13/2011) |
| 01/20/2011 | 39 | **Motion** for Order Setting Date For Filing Responsive Pleading filed by Plaintiff Homecomings Financial, LLC, Counter-Defendant Homecomings Financial, LLC. (Wallace, David) (Entered: 01/20/2011) |
| 01/23/2011 | 40 | **Answer** with Affirmative Defenses of Patricia J. McNerney, **Counterclaim** against Homecomings Financial, LLC filed by Patricia J. McNerney. (Gray, Susan) (Entered: 01/23/2011) |
| 01/24/2011 | | **Order** [non-document]. Motion for order setting date for filing responsive pleading is moot. (Related Doc. #39). Answer was filed on 1/23/2011. Judge Lesley Wells on 1/24/2011.(C,LS) (Entered: 01/24/2011) |
| 01/25/2011 | | |

| | | Order [non-document]. Plaintiff's Emergency Motion for setting settlement conference is moot. Settlement conference was scheduled before Magistrate Judge Nancy Vecchiarelli on 1/31/2011. (Related Doc # 36 ) Judge Lesley Wells on 1/25/2011.(C,LS) (Entered: 01/25/2011) |
|------------|----|---|
| 01/26/2011 | 41 | **Order** re 37 Order of Referral to Judicial Officer for Mediation or Settlement. Settlement Conference set for 1/31/2011 at 09:30 AM in Chambers 10B before Magistrate Judge Nancy A. Vecchiarelli. Position papers and relevant pleadings and documents are to be electronically filed ex parte by 2:00 pm on or before 1/28/2010. The attorney primarily responsible for each party's case and the parties must personally attend. If the party is not a natural person, individuals with full and complete settlement authority must personally attend. Magistrate Judge Nancy A. Vecchiarelli on 1/26/2011. (G,W) (Entered: 01/26/2011) |
| 01/31/2011 | 44 | **Minutes of proceedings** before Magistrate Judge Nancy A. Vecchiarelli.Settlement Conference held on 1/31/2011. No settlement was reached. Counsel for Plaintiff and Counsel for the Ohio Department of Taxation to confer within the next seven days. Telephone Status Conference set. Notice and Order to follow. (Court Reporter: N/A.) Time: 1 Hour 45 Minutes. (Attachments: # 1 Attendance) (G,W) (Entered: 01/31/2011) |
| 02/01/2011 | 45 | Notice of Status Conference set for 2/7/2011 at 03:30 PM to be held telephonically before Magistrate Judge Nancy A. Vecchiarelli. Counsel for plaintiff will host the call and join in opposing counsel and this Court. Opposing counsel are responsible for informing counsel for plaintiff of the telephone number where he/she can be contacted for the conference call. Cellular telephones or other mobile devices are not an acceptable means of conferencing with this Court. (G,W) (Entered: 02/01/2011) |
| 02/07/2011 | 46 | Attorney Appearance by Karen M. Cadieux filed by on behalf of Homecomings Financial, LLC. (Cadieux, Karen) (Entered: 02/07/2011) |
| 02/08/2011 | 47 | **Minute Order** of Status Conference held on 2/8/2011. Defendant Ohio Department of Taxation to be dismissed without prejudice. Stipulated dismissal due by the end of the week. Magistrate Judge Nancy A. Vecchiarelli on 2/8/2011. Time: 5 Minutes (G,W) (Entered: 02/08/2011) |
| 02/15/2011 | 48 | Status Report filed by Homecomings Financial, LLC. (Attachments: # 1 Exhibit A)(Wallace, David) (Entered: 02/15/2011) |
| 02/15/2011 | | Notice [non-document] Telephone Conference set for 2/18/2011 at 09:30 AM to be held telephonically before Magistrate Judge Nancy A. Vecchiarelli. Counsel for plaintiff will host the call and join in opposing counsel and this Court. Opposing counsel are responsible for informing counsel for plaintiff of the telephone number where he/she can be contacted for the conference call. Cellular telephones or other mobile devices are not an acceptable means of conferencing with this Court. The telephone conference will be cancelled if the Stipulation is filed prior to the telephone conference. (Related document(s) 48 Status Report. (G,W) (Entered: 02/15/2011) |
| 02/16/2011 | 49 | Proposed Stipulation Of Dismissal Without Prejudice of Defendant State of Ohio, Department of Taxation filed by Homecomings Financial, LLC, Patricia J. |

| | | McNerney, State of Ohio Department of Taxation. (Wallace, David) (Entered: 02/16/2011) |
|---|---|---|
| 02/16/2011 | 50 | **Answer** to defendant Patricia J. McNerneys counterclaims filed by Homecomings Financial, LLC. Related document(s) 40 . (Wallace, David) Modified text on 2/18/2011 (E,P). (Entered: 02/16/2011) |
| 02/18/2011 | | Notice [non-document] of Cancellation of Telephone Conference previously set for 2/18/2011 at 09:30 AM before Magistrate Judge Vecchiarelli. (G,W) (Entered: 02/18/2011) |
| 02/18/2011 | 51 | **Marginal Order** and Notice of Party Dismissal of State of Ohio Department of Taxation, re 49 Stipulation filed by Patricia J. McNerney, Homecomings Financial, LLC, State of Ohio Department of Taxation. Judge Lesley Wells (C,KA) (Entered: 02/18/2011) |
| 07/12/2011 | 52 | **Case Management Conference Scheduling Order**. A case management conference will be held on 8/4/2011 at 09:30 AM at Chambers 328 before Judge Lesley Wells. (NOTE LOCATION: 328 Metzenbaum United States Court House, 201 Superior Avenue, Cleveland, Ohio). Judge Lesley Wells on 7/12/2011. (C,LS) Modified on 7/12/2011 (C,LS). (Entered: 07/12/2011) |
| 07/12/2011 | | Set Deadlines and Hearings with case management conference to be held on 8/4/2011 at 09:30 AM at Courtroom 328 before Judge Lesley Wells. (C,LS) (Entered: 07/12/2011) |
| 07/14/2011 | 53 | **Motion** to continue Case Management Conference of August 4, 2011 to September 6, 2011 filed by 3rd Party Plaintiff Patricia J. McNerney, Defendant Patricia J. McNerney, Patricia J. McNerney, Patricia J. McNerney. Related document(s) 52 ,. (Gray, Susan) (Entered: 07/14/2011) |
| 07/25/2011 | | **Order** [non-document]Granting Motion to continue the case management conference set for 8/4/2011. (Related Doc # 53 )The case management conference is RESET on 9/6/2011 at 02:30 PM at Courtroom 328 before Judge Lesley Wells. Judge Lesley Wells on 7/25/2011.(C,LS) (Entered: 07/25/2011) |
| 08/19/2011 | 54 | **Motion** to attend Case Management Conference by telephone filed by Plaintiff Homecomings Financial, LLC. (Wallace, David) (Entered: 08/19/2011) |
| 08/22/2011 | | **Order** [non-document]Granting Plaintiff's Motion to excuse person attendance by their party representative. (Related Doc # 54 ). Judge Lesley Wells on 8/22/2011.(C,LS) (Entered: 08/22/2011) |
| 08/23/2011 | 55 | Report of Parties' Planning Meeting , parties do not consent to this case being assigned to the magistrate judge, filed by Homecomings Financial, LLC. (Wallace, David) (Entered: 08/23/2011) |
| 08/24/2011 | 56 | **Motion** to dismiss Claims of Plaintiff and to go Forward Solely on Defendant's Counterclaims filed by 3rd Party Plaintiff Patricia J. McNerney, Defendant Patricia J. McNerney, Patricia J. McNerney, Patricia J. McNerney. (Attachments: # 1 Brief in Support Memorandum in Support of Motion of Patricia J. McNerney to Dismiss Claims of Plaintiff and to go Forward Solely on Defendant's Counterclaims, # 2 Exhibit A - Certificate of Release, # 3 Exhibit B |

| | | |
|---|---|---|
| | | - Certificate of Release, # 4 Exhibit C - Warranty Deed)(Gray, Susan) (Entered: 08/24/2011) |
| 08/26/2011 | | Notice [Non Document]. The Case Management Conference set for 9/6/2011 is cancelled. This matter will be reset at a later date. (C,LS) (Entered: 08/26/2011) |
| 09/26/2011 | 57 | **Opposition** to 56 Motion to dismiss Claims of Plaintiff and to go Forward Solely on Defendant's Counterclaims filed by Homecomings Financial, LLC. (Attachments: # 1 Exhibit A)(Wallace, David) (Entered: 09/26/2011) |
| 09/28/2011 | 58 | **Motion** for judgment on the pleadings filed by Plaintiff Homecomings Financial, LLC. (Wallace, David) (Entered: 09/28/2011) |
| 09/28/2011 | 59 | **Memorandum in support** of Motion for judgment on the pleadings filed by Plaintiff Homecomings Financial, LLC. Related document(s) 58 . (Attachments: # 1 Exhibit Quintile v. Medina County, # 2 Exhibit ABN AMRO Mortgage Group, Inc. v. Evans Opinion, # 3 Exhibit Price v. EquiFirst Corp., # 4 Exhibit DeBrosse v. Jamiso, # 5 Exhibit Forsyth v. Hall)(Wallace, David) Modified text incorrect event used motion term attorney notified on 11/29/2011 (E,P). (Entered: 09/28/2011) |
| 09/28/2011 | 60 | **Motion** for summary judgment filed by Plaintiff Homecomings Financial, LLC. (Wallace, David) (Entered: 09/28/2011) |
| 09/28/2011 | 61 | **Memorandum in support** of Motion for summary judgment filed by Plaintiff Homecomings Financial, LLC. Related document(s) 60 . (Attachments: # 1 Exhibit Trial Transcript Excerpts, # 2 Exhibit Patricia J. McNerney Depo Excerpts, # 3 Exhibit Certified Copy of Order, # 4 Exhibit Photographs, # 5 Exhibit E-mail, # 6 Exhibit Certificate of Release, # 7 Exhibit List of Claims, # 8 Exhibit Smith v. ABN AMRO Mortgage Group, Inc., # 9 Exhibit Amended Answer and Counterclaims, # 10 Exhibit ABN AMRO Mortgage Group, Inc. v. Evans Opinion)(Wallace, David) Modified text incorrect event used motion termed attorney notified on 11/29/2011 (E,P). (Entered: 09/28/2011) |
| 09/28/2011 | 62 | Deposition of Patricia McNerney taken on August 22, 2006 filed by Homecomings Financial, LLC. (Attachments: # 1 Exhibit Note, # 2 Exhibit Mortgage, # 3 Exhibit Notice Concerning Private Mortgage Insurance, # 4 Exhibit First Payment Notice, # 5 Exhibit Notice of Mortgage Loan Purchase, # 6 Exhibit Notice of Mortgage Loan Default, # 7 Exhibit Notice of Mortgage Loan Default, # 8 Exhibit Notice of Mortgage Loan Default, # 9 Exhibit Notice of Mortgage Loan Default, # 10 Exhibit Response to Request for Loan Modification, # 11 Exhibit Complaint, # 12 Exhibit Answer and Counterclaim, # 13 Exhibit Notice of Right to Cancel, # 14 Exhibit Truth-In-Lending Disclosure Statement, # 15 Exhibit Final Settlement Statement, # 16 Exhibit Payoff Statement, # 17 Exhibit Final Settlement Statement)(Wallace, David) (Entered: 09/28/2011) |
| 09/28/2011 | 63 | Exhibit(s) filed by Homecomings Financial, LLC. (Attachments: # 1 Exhibit Note, # 2 Exhibit Mortgage, # 3 Exhibit Assignment of Note, # 4 Exhibit Assignment of Note and Mortgage, # 5 Exhibit Assignment of Note, # 6 Exhibit Assignment of Note and Mortgage, # 7 Exhibit Corrective Assignment of Note and Mortgage, # 8 Exhibit Certificate of Conversion of Delaware Corporation, # |

<table>
<tr><td colspan="3">9 Exhibit Broker/Lender Agreement, # 10 Exhibit Notice of Right to Cancel, # 11 Exhibit Truth-In-Lending Disclosure Statement, # 12 Exhibit Final Settlement Statement, # 13 Exhibit First Payment Notice, # 14 Exhibit Notice Concerning Private Mortgage Insurance, # 15 Exhibit Interest Rate & Points/Fees Evaluation Work Sheet, # 16 Exhibit Detail Year-To-Date Mortgage Loan History, # 17 Exhibit Account History, # 18 Exhibit Revised Payoff Statement, # 19 Exhibit Notice of Mortgage Loan in Default, # 20 Exhibit Quitclaim Deed, # 21 Exhibit Uniform Residential Loan Application, # 22 Exhibit Judgment Entry, # 23 Exhibit TIL Audit Trail, # 24 Exhibit W-2, # 25 Exhibit Pay Stub Lakewood Public Library, # 26 Exhibit Uniform Underwriting and Transmittal Summary, # 27 Exhibit Uniform Residential Loan Application, # 28 Exhibit Copy of Check and Mortgage, # 29 Exhibit Credit Report, # 30 Exhibit Verbal Verification of Employment, # 31 Exhibit Letter from GE Mortgage Insurance, # 32 Exhibit Child Support Records, # 33 Exhibit Response to Loan Modification Inquiry, # 34 Exhibit Notice of Account Servicing Transfer, # 35 Exhibit Daily Rate Sheets, # 36 Exhibit Notice of Account in Default, # 37 Exhibit Loan Underwriting Transmittal, # 38 Exhibit Underwriting Findings Report, # 39 Exhibit Merscorp, Inc. Rules of Membership, # 40 Exhibit Notice of Account in Default, # 41 Exhibit Notice to Closing Agents, # 42 Exhibit Closing Document Control List, # 43 Exhibit Approved Mortgage Broker Recertification, # 44 Exhibit Loan and Price Information, # 45 Exhibit Fees List, # 46 Exhibit Secondary Marketing Rate Lock Information, # 47 Exhibit Servicing Released Transmittal, # 48 Exhibit Funding Control Sheet, # 49 Exhibit Closing Instructions, # 50 Exhibit Document Order Form, # 51 Exhibit State Fact Sheet-Ohio, # 52 Exhibit Revised Pre-Funding Document List)(Wallace, David) (Entered: 09/28/2011)</td></tr>
<tr><td>10/10/2011</td><td>64</td><td>Reply of Patricia J. McNerney in Support of Her Motion to Dismiss Claims of Plaintiff and to go Forward Solely on Defendant's Counterclaims filed by Patricia J. McNerney. Related document(s) 56 , 57 . (Gray, Susan) (Entered: 10/10/2011)</td></tr>
<tr><td>10/10/2011</td><td>65</td><td>Notice Statement of Compliance with Page Limitation filed by Patricia J. McNerney. Related document(s) 64 .(Gray, Susan) (Entered: 10/10/2011)</td></tr>
<tr><td>10/28/2011</td><td>66</td><td><b>Response</b> to 58 <b>Motion</b> for judgment on the pleadings , 59 <b>Motion</b> for judgment on the pleadings in Opposition filed by Patricia J. McNerney. (Attachments: # 1 Exhibit A - State Trial Court Docket, # 2 Exhibit B - State Appellate Court Docket)(Gray, Susan) (Entered: 10/28/2011)</td></tr>
<tr><td>10/28/2011</td><td>67</td><td><b>Response</b> to 61 <b>Motion</b> for summary judgment , 60 <b>Motion</b> for summary judgment in Opposition filed by Patricia J. McNerney. (Attachments: # 1 Exhibit 1 - State Court COmplaint, # 2 Exhibit 2 - Trial Court Docket, # 3 Exhibit 5 - Trial Court order dismissing case, # 4 Exhibit 6 - State Appellate Docket, # 5 Exhibit 7 - Trial Transcript, # 6 Exhibit 8 - Trial transcript exhibit III denying loan modification, # 7 Exhibit 9 - Deposition of Nancy George, # 8 Exhibit 10 - Deposition of Nancy George, exhibit 10)(Gray, Susan) (Entered: 10/28/2011)</td></tr>
<tr><td>11/11/2011</td><td>68</td><td></td></tr>
</table>

|  |  |  |
|---|---|---|
|  |  | **Motion** for extension of time until November 24, 2011 to File Reply filed by Plaintiff Homecomings Financial, LLC. Related document(s) 66 , 67 . (Wallace, David) (Entered: 11/11/2011) |
| 11/14/2011 |  | **Order** [non-document]granting 68 Motion for Extension of Time until November 24, 2011 to File Reply. Judge Lesley Wells on 11/14/2011.(A,K) (Entered: 11/14/2011) |
| 11/22/2011 | 69 | **Reply** to Patricia J. McNerney's response to **Motion** for summary judgment filed by Plaintiff Homecomings Financial, LLC. Related document(s) 61 . (Wallace, David) Modified text and links on 11/23/2011 (B,B). (Entered: 11/22/2011) |
| 11/22/2011 | 70 | **Reply** to Patricia McNerney's response to **Motion** for judgment on the pleadings filed by Plaintiff Homecomings Financial, LLC. Related document(s) 58 . (Wallace, David) Modified text and links on 11/23/2011 (B,B). (Entered: 11/22/2011) |
| 03/30/2012 | 71 | **Memorandum and Opinion** granting in part and denying in part Motion to dismiss (Related Doc # 56 ). There is a case or controversy over the Breach of Contract claim thatprevents dismissal of Count I of the Complaint on mootness grounds. The Court, therefore, grants Ms. McNerney's motion to dismiss as to Counts II & III of the Complaint and denies the Defendant's motion as to Count I of the Complaint. Signed by Judge Lesley Wells on 3/30/2012.(K,K) (Entered: 03/30/2012) |
| 08/07/2012 | 72 | Notice of Filing Bankruptcy and Suggestion of Automatic Stay filed by Homecomings Financial, LLC. (Wallace, David) (Entered: 08/07/2012) |
| 08/08/2012 | 73 | **Order** staying the case pursuant to section 362(A) of the bankruptcy code, and closing the matter pending party notification of emergence from bankruptcy. Related document 72 . Signed by Judge Lesley Wells on 8/8/2012. (K,K) (Entered: 08/08/2012) |
| 07/17/2013 | 74 | **Motion** to dismiss filed by Plaintiff Homecomings Financial, LLC. (Wallace, David) (Entered: 07/17/2013) |
| 07/31/2013 | 75 | **Response** to 74 **Motion** to dismiss filed by Patricia J. McNerney. (Gray, Susan) (Entered: 07/31/2013) |
| 08/07/2013 | 76 | **Order** granting plaintiff's Motion to dismiss (Related Doc # 74 ). Ms. McNerney's counterclaims remain pending but subject to the bankruptcy stay. Judge Lesley Wells(C,KA) (Entered: 08/07/2013) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 10/08/2015 17:32:53 | | |
| **PACER Login:** | mf1354:2923879:3945828 | **Client Code:** 73214-0000001-13849 |
| **Description:** | Docket Report | **Search Criteria:** 1:09-cv-02383-LW |

| Billable Pages: | 12 | | Cost: | 1.20 | |

## Exhibit I

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Homecomings Financial, LLC. | Case No. 1:09-CV-2383 |
| Plaintiff | Judge Lesley Wells |
| v. | Jury Trial Demand Appended Hereto |
| Patricia J. McNerney, et al | |
| Defendant | |

<u>DEFENDANT PATRICIA J. MCNERNEY'S ANSWER WITH AFFIRMATIVE DEFENSES,
AND COUNTER CLAIMS</u>

Ms. McNerney respectfully responds as follows to the complaint:

*Answer*

1.    Deny paragraph 1 for lack of knowledge.

2.    Denies paragraph 2

3.    Based on lack of knowledge as to citizenship of Plaintiff, denies for lack of
knowledge, but admits that Defendant Patricia McNerney is an Ohio Resident and
admits that the amount in controversy exceeds $75,000.00

4.    Admits paragraph 4

5.    Denies for lack of knowledge paragraph 5

6.    Admit Defendant Patricia McNerney executed a note in favor of Homecomings
Financial Network, Inc. in the amount of $108.000.00 with an interest rate of 8%;
deny that she executed the note on stated date as she did not execute the note until on
or after January 3, 2003.

12-12020-mg    Doc 9330-4    Filed 10/23/15    Entered 10/23/15 16:22:18    Exhibit 3
Case 1:09-cv-02389-LW    Doc #: 4-3    Filed: 01/23/11    2 of 45    PageID #: 306
part 2    Pg 97 of 222

7.      Admit Defendant Patricia McNerney executed a written mortgage; admit that the

        mortgage states the date December 27, 2002; deny that such mortgage is a senior lien

        on the referenced property, or any lien at all on the property in that the loan

        transaction has been rescinded under the Truth in Lending Act and, pursuant to the

        self executing provisions of that statute, the mortgage interest has become void.

8.      Admit "paperwork" to that effect exists, Deny that Homecomings Financial Network,

        Inc. transferred the note.

9.      Admit that paperwork to that effect may exist, Deny that such transfer of the note

        occurred.

10.     Deny that Homecomings is the owner of the note by virtue of the claimed transfers;

        deny that Homecomings has a valid mortgage.

11.     Admit paragraph 11

12.     Deny the amount due as stated as, pursuant to the Truth in Lending Act, liability for

        finance charges ceased, the mortgage became void, and the lender was required to

        refund to Ms. McNerney all payments made on the loan.

13.     Deny paragraph 13

14.     Neither admit nor deny paragraph 14; No response is necessary as the note speaks for

        itself

15.     Neither admit nor deny paragraph 15; No response is necessary as the note speaks for

        itself

16.     Neither admit nor deny paragraph 16; No response is necessary as the note speaks for

        itself

17.     Neither admit nor deny paragraph 17; No response is necessary as the note speaks for itself

18.     Neither admit nor deny paragraph 18; No response is necessary as the note speaks for itself

19.     Neither admit nor deny paragraph 19; No response is necessary as the note speaks for itself

20.     Neither admit nor deny paragraph 20; No response is necessary as the document speaks for itself; further deny the existence of any valid mortgage

21.     No response is necessary; respond as set forth in responses to referenced paragraphs

22.     Deny paragraph 22 as pursuant to her rescission under Truth in Lending, Ms. McNerney's liability for payment of finance charges ceased; her liability to tender funds does not arise until the lender fulfills its duties under Truth in Lending, which Lender has not yet done.

23.     Deny paragraph 23

24.     No response is necessary; respond as set forth in responses to referenced paragraphs

25.     Deny paragraph 25 as there is no valid mortgage

26.     Deny paragraph 26 for lack of knowledge

27.     Neither admit nor deny paragraph 27 as this is a statement of law.

28.     No response to paragraph 28 is necessary; respond as set forth in responses to referenced paragraphs

29.     Deny the existence of a valid or enforceable mortgage

30.     Deny paragraph 30 for lack of knowledge; deny mutual mistake, inadvertence or scriveners' error

31.    Admit paragraph 31

32.    Admit that Defendant Patricia McNerney signed the mortgage attached to the

complaint and that she intended it to be a mortgage on her real estate; deny the

remainder of paragraph 32.

33.    Deny paragraph 33


*General Denial*

34.    Denies generally each and every paragraph not heretofore admitted or denied

*Affirmative Defenses*

35.    The complaint is barred by the doctrines of laches and unclean hands

36.    The contract and/or mortgage is void for failure of consideration

37.    The contract is void for fraud and other illegality

38.    The contract is unenforceable due to rescission by Ms. McNerney

39.    The contract is void for unconscionability

40.    Plaintiff's claim of standing is based upon an illegal and void or voidable agreement

as being based upon an illegal and void and/or voidable agreement as violative of

Ohio prohibition against maintenance

41.    Because MERS as nominee has no beneficial or bona fide interest in the note and

mortgage at issue in this proceeding, the mortgage as the product of an illegal

agreement between MERS and Homecomings is itself void and therefore is

unenforceable

12-12020-mg   Doc 9380-4   Filed 10/23/15   Entered 10/23/15 16:22:18   Exhibit 3
Case 1:09-cv-02389-LW   Doc #: 14-3 Filed: 01/29/11 5 of 45. PageID #: 311
part 2   Pg 100 of 222

42.     Ms. McNerney is entitled to  setoff and or recoupment for any claims that may be

         barred by the statute of limitations

43.     Plaintiff's claims for attorney fees violate Ohio public policy

44.     Plaintiff lacks standing, and/or is not the real party in interest

45.     Plaintiff had failed to fulfill conditions precedent to suit

46.     The documents attached to support Plaintiff's claims are false and fraudulent and

         prepared to perpetrate a fraud upon Ms. McNerney and upon the court; the complaint

         is a fraud upon the court

47.     Any damages suffered by Plaintiff has been the result of its own negligence,

         contributory negligence, fraud and misrepresentation

48.     Any damages suffered by Plaintiff has been a result of an effort to perpetrate a fraud

         upon intended investors, specifically the Federal National Mortgage Association

         (FNMA) and investors who would have purchased from (FNMA), through falsified

         entries in the FNMA desktop underwriter system, upon which entity Plaintiff

         intended from the inception of the loan  to unload a worthless, unconscionable

         mortgage, and any loss it has suffered has been the result of that intended fraud upon

         FNMA.  Since the transaction is the result of Plaintiff's own fraud and illegality, the

         transaction should not be enforced for the benefit of Plaintiff.


*Counterclaims*

*Factual Allegations Related to Counterclaims*


49.     On or about January 3, 2003, Ms. McNerney entered into a consumer credit

transaction with Homecomings Financial Network, Inc., (as set forth in the HUD 1 statement and promissory note, although the mortgage names Mortgage Electronic Registration Systems, Inc. as the nominee for Homecomings,) for a loan in the amount of $108,000.00, in which  Homecomings Financial Network, Inc., (hereinafter, "Homecomings" as lender extended consumer credit which was subject to a finance charge and which was payable to Homecomings, 27725 Stansbury Blvd, Suite 375, Farmington Hills, MI  48334.

50.     As part of this consumer credit transaction, the Mortgage Electronic Registration Systems, Inc, "acting solely as nominee for Lender and Lender's successors and assigns" was given a security interest in Ms. McNerney's principal residence, which security interest is the subject of this foreclosure proceeding.

51.     MERS had no beneficial interest in the note at issue in this proceeding

52.     MERS had no beneficial interest in the mortgage at issue in this proceeding

53.     The mortgage at issue is registered on the MERS system, with MERS merely serving as nominee

54.     MERS has an agreement with Homecomings or GMAC whereby it agrees to provide assistance to Homecomings or GMAC in pursuing or defending lawsuits with respect to mortgages registered on the MERS system, and the mortgage at issue in particular.

55.     MERS as nominee had no beneficial or bona fide interest in the note and mortgage at issue in this proceeding

56.     MERS was not the holder of the note

57.     MERS was not the owner of the mortgage

58.     In conformity with its agreement with Homecomings or GMAC, MERS provides

12-12020-mg    Doc 9380-4    Filed 10/23/15    Entered 10/23/15 16:22:18    Exhibit 3
part 2    Pg 102 of 222
Case 1:09-cv-02885-LTW    Doc #: 143    Filed: 01/23/11    Page: 1 of 8

assistance in pursuing and defending the lawsuit at issue, including having itself

named as the plaintiff, retaining counsel, and funding the lawsuit

59.    MERS only interest in this lawsuit stemmed from its agreement with Homecomings

or GMAC to register mortgages and pursue and defend lawsuits with respect to

mortgages registered on its system.

60.    Ms. McNerney received a Truth in Lending disclosure statement (inaccurate in its

disclosures) issued on or after  January 3, 2003 in connection with the closing of  the

transaction.

61.    On the same date, at the same closing, Ms. McNerney received a second Truth in

Lending disclosure statement (also inaccurate in its disclosures) issued on or after

January 3, 2003 in connection with the closing of  transaction

62.    Ms. McNerney received two conflicting RESPA settlement statements issued on or

after January 3, 2003 in connection with the closing of the transaction, each document

identified as "final".

63.    The loan at issue was made by Homecomings in response to Ms. McNerney's

application for a loan refinance when she needed funds to refinance the mortgage on

her home in connection with her divorce.

64.    At the time of the transaction in issue, the property at issue was subject to a mortgage

in favor of Household Realty Corporation to secure payment on  a prior loan.

65.    The first mortgage in favor of Household Realty Corporation was satisfied in the

transaction at issue.

66.    The prior loan with Household had been at a high interest rate (13%) with a monthly

payment of $985.00 that did not include an escrow payment for insurance

($30.00/month) or property tax liability ($230.81/month).

67.    The broker, OMC Lending, Inc. informed Ms. McNerney that she was approved for a

loan at 8% with a monthly payment in the amount of $850.00 that did include an

escrow for property taxes.

68.    Ms. McNerney explained to OMC Lending that she needed the loan refinanced

because the existing loan obligation exceeded her ability to pay—she needed a

significant reduction in the monthly payment

69.    Ms. McNerney provided for Homecomings underwriting analysis a complete copy of

her divorce decree disclosing child support terms and documentation of all of her

earned income

70.    Ms. McNerney provided for Homecomings underwriting analysis accurate evidence

of her monthly income

71.    Ms. McNerney provided for Homecomings accurate information regarding her

financial accounts, including the fact that her funds on deposit were in an Individual

Retirement Account.

72.    The Broker or Homecomings entered false information for underwriting analysis by

way of the FNMA Desktop Underwriter.

73.    Homecomings reviewed the correct information from Ms. McNerney, noted the false

information in the Desktop underwriter, and failed to correct the information

submitted to FNMA via the Desktop underwriter.

74.    Homecomings at all times thereafter and before closing knew that Ms. McNerney did

not qualify for the loan and did not have income or assets to make the payments.

75.    The loan was scheduled to close on 12/27/02

76.     The loan was closed by Brooklyn Title Agency, Inc.

77.     Brooklyn Title Agency, Inc is owned by Raymond George, who is the husband of Nancy George who owns OMC Lending, Inc..

78.     In late December, 2002, an agent from either Brooklyn Title Agency called Ms. McNerney and informed her that the closing would not occur unless she paid an additional $8,150.00

79.     Ms. McNerney was surprised when she was told that she needed to pay money to close the loan and questioned the accuracy of the information.

80.     Ms. Mcnerney called OMC  to confirm the accuracy of the information and learned that it was true.

81.     OMC recommended that Ms. McNerney withdraw the funds from her IRA.

82.     Since Ms. McNerney needed the relief afforded by the promised lower monthly payment, and in anticipation of the benefit of the lower payment, she withdrew funds from her Individual Retirement Account on January 3, 2003, and went to Brooklyn Title to close the loan on some date on or after January 3, 2003. .

83.     At the closing on or after January 3, 2003, Ms. McNerney delivered a First Federal of Lakewood certified check no 1-314628 in the amount of $8,150.00 payable to Brooklyn Title.

84.     When she arrived for the closing, Ms. McNerney learned for the first time that Homecomings required as a condition of the loan private mortgage insurance in the amount of 178.20/month

85.     As a result of the imposition of private mortgage insurance, the amount of the payment on the new loan was essentially indistinguishable from the amount of the

payment on the loan refinanced.

86. Homecomings also chose the provider of private mortgage insurance and did not

permit a choice

87. Homecomings and OMC Lending, Inc. both knew long before the closing date that

Homecomings had imposed the requirement of private mortgage insurance.

88. Neither Homecomings nor OMC Lending informed Ms. McNerney of the imposition

of private mortgage insurance prior to the actual closing date

89. The imposition of private mortgage insurance was a material change to Ms.

McNerney's detriment

90. The loan closed and the funds were disbursed on the same day.

91. On the date of closing, (1/3/03), Ms. McNerney received one notice of right to cancel

stating that December 31, 2002 was the deadline to exercise that right. (Ex. 10)

92. Ms. McNerney was unable to pay the loan and rapidly became delinquent

93. Though she vigorously pursued loss mitigation, Homecomings failed to participate in

loss mitigation, simply telling her she did not qualify

94. Homecomings, through a sham entity, Mortgage Electronic Registration Systems, Inc

(MERS) filed foreclosure action in the Cuyahoga County Court of Common Pleas on

11/12/2003 and was assigned case number 03-514406.

95. After vigorous defense and expensive discovery, Ms. McNerney obtained sufficient

information to establish that MERS could not be the real party in interest

96. On 1/31/2008, over four years later, Homecomings substituted GMAC as the plaintiff

97. On 7/8/08, after extensive and costly trial preparation, the case was called for bench

trial and then delayed because plaintiff was unprepared because Homecomings had

12-12020-mg    Doc 9280-4    Filed 10/23/15    Entered 10/23/15 16:22:18    Exhibit 3
Case 1:09-cv-02383-LW    Doc #: 140-3 Filed:    01/25/11 12 of 45. PageID #: 517
part 2    Pg 106 of 222

failed to file an answer to claims alleged against it in responsive pleadings filed by
Ms. McNerney

98.    On 10/22/08 after additional discovery and trial preparation, the case was again called
for bench trial only to be delayed again because Homecomings substituted itself as
plaintiff

99.    On 11/4/2008 the motion of Homecomings to be substituted as plaintiff was granted

100.    Bench trial finally occurred on November 13, 2008, at which time the witness
testifying on behalf of Homecomings testified  that it continuously  had been the
owner and holder of the note since the inception of the loan.

101.    On June 30, 2009, after trial and post trial briefs, and prior to the entry of any
decision, Homecomings was ordered to prove that the case had been filed in the name
of the real party in interest.

102.    On September 14, 2009 the court of common pleas ruled as follows:  "Despite being
granted an extension f time to provide the court with evidence that it held the subject
note at the time the instant case was filed, plaintiff has been unable to comply.
Consequently, pursuant to  the court order dated 6/30.2009, Wells Fargo Bank v.
Jordan, 2009-Ohio-1092 (8th Dist. Ct. App., Mar 12, 2009) and Civil Rule 41(B)(1),
the instant case is hereby dismissed, without prejudice, Final."

103.    For six years Homecomings, through a plethora of fraudulent paperwork, imposed
upon the court and the parties, perpetrated a fraud upon the court and the parties,
caused Ms. McNerney to incur substantial liability for costs and fees to defend the
false statements in the fraudulent paperwork, and caused Ms. McNerney and her
children severe emotional distress as a result of the protracted litigation.

12-12020-mg    Doc 9380-4    Filed 10/23/15    Entered 10/23/15 16:22:18    Exhibit 3
Case: 1:09-cv-02383-LW    Doc #: 140-3 Filed: 01/25/11 21 of 45. PageID #: 510
part 2    Pg 107 of 222

104.    Throughout the foreclosure proceeding, and even after its dismissal by the court,
agents of Homecomings came to the home of Ms. McNerney and publically
humiliated her and her children.

105.    The agents came by in cars to take pictures

106.    The agents got out of the car and came onto the property and called out to the family
and heckled them while the family was visiting together on their front balcony,
calling out in loud voices that the family should stand up and wave and smile for the
cameras

107.    Ms. McNerney and her children suffered humiliation, embarrassment, anxiety and
emotional distress as a result of the conduct of Homecomings

108.    Ms. McNerney and her children became ill and could not live under such conditions;
as a result Ms. McNerney and her children moved to another location.

109.    Because Ms McNerney on her limited means could not maintain the home while
living elsewhere, the home has deteriorated and is subject to housing court complaints
in Lakewood Municipal Court; the home is also in danger of being condemned.


110.    The Plaintiff on the Counterclaim, Ms. Patricia McNerney, is a natural person who at
the time of the transaction complained of resided at 1241 Thoreau Road, Lakewood,
Ohio 44107.

111.    Homecomings is a corporation engaged in the business of Consumer Lending with an
address as set forth on the HUD 1 statement of 27725 Stansbury Blvd, Suite # 375,
Farmington Hills, MI  48334 (for Homecomings).

112.    At all times relevant, Homecomings, in the ordinary course of its business, regularly

12-12020-mg    Doc 9280-4    Filed 10/23/15    Entered 10/23/15 16:22:18    Exhibit 3
Case 1:09-cv-02383-LW    Doc #: 140-3 Filed: 07/25/11 23 of 45. PageID #: 519
part 2    Pg 108 of 222

extended or offered to extend consumer credit for which a finance charge is or may be imposed or by written agreement which is payable in more than four installments, with the credit extended or offered primarily for personal, family, or household purposes.

113.    OMC Lending, Inc. at all times relevant was a corporation located and doing business at 4311 Ridge Road, Brooklyn, OH 44144;  the allegations are made in connection with counterclaims against Homecomings to the extent Homecomings may be liable as principal or in the context of a civil conspiracy, whether as affirmative claims or claims in recoupment

114.    OMC Lending, Inc. was the broker for the transaction which is the subject of this proceeding

115.    OMC Lending, Inc had a broker agreement with Homecomings

116.    In furtherance of the agreement, Homecomings, on a regular basis, provided OMC Lending with rate sheets which showed the interest rates for which various loans could be made, and the enhanced broker fee, in the form of a yield spread premium, which OMC Lending could earn if it sold a loan for an interest rate in excess of the available rate for which a borrower qualified

117.    The rate sheet disclosed the bonus OMC Lending would receive for closing the loan at the rate provided to Ms. McNerney in the transaction at issue

118.    OMC Lending never advised Ms. McNerney that she could qualify for a lower rate than the one provided

119.    OMC Lending did not disclose to Ms. McNerney that it would receive a bonus or fee for providing her with an interest rate higher than the one for which she could qualify.

120.    OMC Lending knew that Household, which had a mortgage on Ms. McNerney's
home at the time of the refinance, would make a competitive offer for a refinance if it
knew that Ms. McNerney was seeking a refinance.

121.    OMC Lending deliberately refrained from seeking payoff information from
Household until the very last minute prior to the scheduled closing in order to
foreclose an opportunity for Ms. McNerney to consider a competitive offer from
Household.

122.    As a result of OMC Lending's deliberate decision to delay contact with Household in
order to foreclose Ms. McNerney's opportunity to consider a competitive offer from
Household, Ms McNerney was foreclosed from having an opportunity to consider a
competitive offer from Household

123.    As a further result of OMC Lending's deliberate decision to delay contact with
Household  Ms. McNerney was not timely informed that the payoff to Household was
higher than anticipated

*124.*    OMC Lending, Inc. received a fee from Homecomings to sell the loan package to Ms.
McNerney

*125.*    Nancy George is the owner of OMC Lending and the wife of the owner of Brooklyn
Title Agency, Inc.


*First Claim against Homecomings—Truth in Lending*

*Preliminary Statement*


*126.*    This Counterclaim is filed under the Truth in Lending Act, 15 U.S.C. Sec. 1601

12-12020-mg   Doc 9280-4   Filed 10/23/15   Entered 10/23/15 16:22:18   Exhibit 3
part 2   Pg 110 of 222
Case 1:09-cv-02389-LW   Doc #: 40-3 Filed: 01/25/11 13 of 45. PageID #: 521

(TILA) to enforce Ms. McNerney's right to rescind a consumer credit transaction
involving the taking of a security interest in Ms. McNerney's home, and to recover
statutory damages, reasonable attorney's fees and costs by reason of violations of the
Truth in Lending Act and Regulation Z, 12 C.F.R. 226 (Regulation Z)

*Enforcement of Rescission and Claims for Damages*

127.   This consumer credit transaction was subject to Ms. McNerney's right of rescission
as described in 15 U.S.C. Sec. 1635 and Regulation Z Sec. 226.15 and 226.23.

128.   In the course of this consumer credit transaction, Homecomings Financial Network,
Inc. violated 15 U.S.C. Sec. 1635(a) and Regulation Z by failing to deliver to Ms.
McNerney two copies of the notice of right to rescind which:

a.   Identified the transaction.

b.   Clearly and conspicuously disclosed the security interest in Ms. McNerney's
principal dwelling.

c.   Clearly and conspicuously disclosed Ms. McNerney's right to rescind the
transaction.

d.   Clearly and conspicuously disclosed how to exercise the right to rescind the
transaction, with a form for that purpose, designating the address of
Homecomings' place of business.

e.   Clearly and conspicuously disclosed the effects of rescission.

f.   Clearly and conspicuously disclosed the date the rescission period expired.

129.   In the course of this consumer credit transaction, Homecomings failed to deliver all

"material" disclosures, required by TILA and Regulation Z, including the following:

a. It failed to properly and accurately disclose the "amount financed," in violation of Regulation Z Sec. 226.1(b) and 15 U.S.C. Sec. 1638(a)(2)(A)

b. It failed to clearly and accurately disclose the "finance charge" in violation of Regulation Z Sections 226.4 and 226.18(d) and 15 U.S.C. Sec. 1638(a)(3).

c. It failed to clearly and accurately disclose the "annual percentage rate" in violation of Regulation Z Sec. 226.18(e) and 15 U.S.C. Sec. 1638(a)(4)

d. It failed to properly disclose the number, amounts, and timing of payments scheduled to repay the obligation, in violation of Regulation Z Sec. 226.18(g) and 15 U.S.C. Sec. 1638(a)(6).

e. It failed to clearly and accurately disclose the "total of payments" in violation of Sec. 226.18(h) and 15 U.S.C. Sec. 1638(a)(5).

130. Ms. McNerney has a continuing right to rescind the transaction until the third business day after receiving both the notice and all material disclosures described in the foregoing paragraphs, pursuant to 15 U.S.C. Sec. 1635(a) and Regulation Z Sec. 226.23(a)(3).

131. On June 16, 2004, Ms. McNerney rescinded the transaction.

132. As a result of Homecomings' failure to comply with the Truth in Lending Act, in that it failed to provide notices and material disclosures required by that Act, Ms. McNerney is entitled to Rescission of the transaction; termination of any security interest in her property created under the transaction; return of any money or property given by her to anyone, including Homecomings, in connection with the transaction; twice the finance charge in connection with the transaction, but not less than $200.00

12-12020-mg    Doc 9280-4    Filed 10/23/15    Entered 10/23/15 16:22:19    Exhibit 3
Case 1:09-cv-02363-LW    Doc #: 140-3 Filed: 05/25/11 3 of 45. PageID #: 529
part 2    Pg 112 of 222

nor more than $2000.00; the right to retain proceeds; actual damages in an amount to be determined at trial; and reasonable attorney fees.

133.  When the actual cost of credit is  placed in the finance charge, the APR is raised dramatically to cause this transaction to be covered by the Home Owners Equity Protection Act, codified as 15 U.S.C. Sec. 1602(aa) of the Truth in Lending Act, causing plaintiff to be liable for the absence of additional material disclosures set forth in that act, and additional damages set forth in that act.

134.  Costs and fees charged in the transaction cause the total points and fees to exceed 8% of the total loan amount, causing the transaction to be covered by the Home Owners Equity Protection Act codified as 15 U.S.C. Sec. 1602(aa) of the Truth in Lending Act, causing plaintiff to be liable for the absence of additional material disclosures set forth in that act, and additional damages set forth in that act.

135.  In violation of 15 U.S.C. Sec. 1639(a) and (b) Homecomings failed to provide disclosures with a notice three business days prior to the consummation of the transaction that informed Ms. McNerney in conspicuous type size  that she was not required to complete the agreement merely because she had received the disclosures or signed a loan application and further provided that if she obtained the loan the lender would have a mortgage on her home and she could lose her home and any money she had paid into it.'

136.  In violation of 15 U.S.C. Sec. 1640, Homecomings Financial Network, Inc engaged in 2002 and 2003 and in each year up to the present time in a pattern and practice of extending credit to consumers under mortgages referred to in section 1602(aa) based on the value of consumer's collateral without regard to the consumers' repayment

12-12020-mg   Doc 9380-4   Filed 10/23/15   Entered 10/23/15 16:22:18   Exhibit 3
part 2   Pg 113 of 222
Case 1:09-cv-02373-LW   Doc #: 140   Filed: 07/25/11   23 of 45. PageID #: 524

ability, including the consumer' current and expected income, current obligations, and employment.

137.  In violation of 15 U.S.C. Sec. 1639(b)(2), Homecomings failed to provide written notice regarding the change in terms of the extension of credit, specifically but not limited to the imposition of private mortgage insurance, in the time set forth in 15 U.S.C. Sec. 1639(b)(1)

138.  Homecomings extended credit to Ms. McNerney under the mortgage at issue based on the value of her collateral without regard to Ms. McNerney's repayment ability, including her current and expected income, current obligations, and employment.

139.  Pursuant to the provisions of 15 U.S.C. Sec. 1640(i) failure to provide the notice provided by 15 U.S.C. Sec. 1639(a) constitutes failure to provide a material disclosure for purposes of section 15 U.S.C. Sec. 1635.

140.  Pursuant to the provisions of 15 U.S.C. Sec. 1640(i) the pattern and practice of extending credit without regard to repayment ability as prohibited by 15 U.S.C. Sec. 1639(h) constitutes failure to deliver material disclosures for purposes of section 15 U.S.C. Sec. 1635

141.  Ms. McNerney under Reg. Z. Sec. 226.23(a) had an unconditional three day right to rescind the transaction.

142.  To facilitate that three day cooling off period, Homecomings was required to delay its contractual performance until the rescission period expired.  Reg. Z Sec. 226.23(c). Homecomings was required to refrain from disbursing any funds to Ms. McNerney until the rescission period had expired and Homecomings or GMAC could be reasonably satisfied that Ms. McNerney had not rescinded.  Reg. Z Sec. 226.23(c).

12-12020-mg Doc 9380-4 Filed 10/23/15 Entered 10/23/15 16:22:10 Exhibit 3
Case 1:09-cv-02363-LW Doc #: 140 Filed: 07/25/11 113 of 45. PageID #: 925
part 2 Pg 114 of 222

*Second Truth in Lending Claim Against Homecomings*

143.    Ms.McNerney, because of the numerous violations of the law of Truth in Lending as
set forth above, may rescind the transaction at any time from the period beginning
three years from the date of the occurrence giving rise to the right of rescission.  15
U.S.C. Sec. 1635(f); Reg Z 226.15(a)(3); 226.23(a)(3)

144.    Ms. McNerney exercised her right to rescind on June 16, 2004.

145.    Pursuant to the provisions of 15 U.S.C. Sec. 1635(b), Ms. McNerney's exercise of her
right to rescind activated a three step process whereby within 20 days Homecomings
was required to take action to reflect the termination of the security interest. 15
U.S.C. Sec. 1635(b)

146.    At the point in time that she exercised her right of rescission, Ms. McNerney had no
obligation to make further payments on the loan.  15 U.S.C. Sec. 1635(b).

147.    At the point in time that Ms. McNerney exercised her right of rescission, Ms.
McNerney was no longer liable for any finance charge, and the security interest
became automatically void. 15 U.S.C. Sec. 1635(b)

148.    At the point in time that Ms. McNerney exercised her right of rescission,
Homecomings was required within 20 days to return to her all funds paid to anyone in
the transaction.  15 U.S.C. Sec. 1635(b)

149.    Homecomings failed to cancel all evidence of the security interest and failed to return
all funds

150.    Ms. McNerney's obligation to tender funds would arise only after Homecomings performed its obligations within the 20 day period set forth in the statute.15 U.S.C. Sec. 1635(b)

151.    Homecoming's failure to cancel all evidence of security interest and to refund to Ms. McNerney all payments made on the loan, including all payments to third parties is an additional violation of the Truth in Lending Act, giving rise to an additional claim for statutory damages, actual damages and attorney fees. 15 U.S.C. Sec. 1640(a).


*Claim against Homecomings --RESPA*


152.    This transaction is subject to the provisions of the Real Estate Settlement Procedures Act

153.    With respect to this transaction, Homecomings failed to comply with RESPA provisions which require that a settlement statement be issued and that a good faith estimate of closing costs be issued prior to the closing of the transaction—the Settlement statement was not issued prior to the transaction; the settlement statement fails to itemize settlement charges.

154.    The excessive fee taken in combination with the yield spread premium, discloses a kickback to OMC Lending in violation of Section 8 of RESPA

155.    OMC Lending, Inc. did not perform goods facilities and services to earn the yield spread premium.

156.    The amount of the yield spread premium was not reasonably related to the value of goods, facilities and services provided by OMC Lending, Inc.

157.    The yield spread premium paid in the transaction was simply a kickback to the broker
for bringing the loan to Homecomings

158.    As a result of failure by Homecomings Financial Network, Inc to issue the settlement
statements and the good faith estimates of closing costs, Ms. McNerney is entitled to
damages as set forth in RESPA

159.    The kickback provision of the contract between Homecomings and OMC Lending
was additional incentive provided by Homecomings to OMC Lending to sell a loan to
Ms. McNerney that she could not afford to pay.

*Claim against Homecomings—Improvident Lending*

160.    Homecomings had a duty  to exercise reasonable care to determine that Ms.
McNerney qualified for the loan for which application was made on her behalf.

161.    Homecomings  failed to exercise reasonable care, with the result that the loan was
made without regard to Ms. McNerney's  ability to pay

162.    Homecomings not only failed to exercise reasonable care, but actually encouraged its
agent OMC Lending, Inc., to disregard Ms. McNerney's ability to pay by offering
incentives to make the loan on terms that were less favorable than those for which she
could qualify and therefore on terms that made default more likely.

163.    Homecomings knew at the time of the transaction that the information provided by
the broker was false with respect to anticipated income and liquid assets and
proceeded with closing in spite of that fact

12-12020-mg    Doc 9380-4    Filed 10/23/15    Entered 10/23/15 16:22:18    Exhibit 3
Case 1:09-cv-02353-LW    Doc #: 40-3 Filed: 07/25/11 123 of 45. PageID #: 528
part 2    Pg 117 of 222

164.   Ms. McNerney was  injured by the transaction in that the loan was made without

regard to her ability to pay, by the charge of excessive fees and interest rates, and by

the inevitable loss of her home

165.   As having been made in breach of the duty to exercise reasonable care, the loan is

unenforceable and void.

166.   Homecomings should not have the use of the court to enforce obligations incurred as

the result of its breach of its duty of good faith and fair dealing in connection with the

refinance contract.

167.   Homecomings should not have recourse and rescue from the court to preserve and

protect it from a risk it freely assumed in order to gain greater profits on the back of

an uninformed borrower who was not aware of the risk and on the back of the

FNMA,  intended victim of the fraudulent loan.


*Claim against Homecomings—Breach of Fiduciary Duty*


168.   Ms. McNerney  incorporates all prior paragraphs as though fully rewritten herein

169.   OMC Lending, Inc.  at all times in the transaction was acting within the scope of its

agency with Homecomings

170.   OMC Lending, Inc.  presented itself as acting in a fiduciary capacity  toward Ms.

McNerney

171.   OMC Lending, Inc. never disclosed to Ms. McNerney that it was serving as the agent

for Homecomings in seeking to sell loans at the highest possible interest rate, with the

12-12020-mg    Doc 9280-4    Filed 10/23/15    Entered 10/23/15 16:22:18    Exhibit 3
Case 1:09-cv-02363-LW    Doc # 40    Filed: 01/25/11    23 of 45. PageID #: 529
part 2    Pg 118 of 222

cost of the default risk to Homecomings borne by Ms. McNerney in the form of
Private Mortgage Insurance.

172.    Further, as lender Homecomings had a duty in the loan processing to make a loan for
which the borrower, Ms. McNerney, was qualified

173.    Homecomings breached its duty by making a loan without even rudimentary
reasonable underwriting practices, taking care only to protect itself through private
mortgage insurance in the event of default and in insisting on private mortgage
insurance added to the monthly payment and increased the chance that the payments
could not be made and that the loan would default

174.    Ms. McNerney has been injured by the breach of duty by excessive charges, fees and
interests rates, as well as by the loan itself made without regard to Ms. McNerney's
ability to pay

175.    Since OMC Lending, Inc. was acting within the scope of its agency relationship with
Homecomings, OMC Lending's breach of fiduciary duty is attributable to
Homecomings

176.    Homecomings  should not be allowed to profit from its breach of fiduciary duty

177.    Homecomings should not be allowed to profit from making a loan in excess of the
borrower's ability to pay while the borrower suffers family displacement, emotional
distress, illness, anxiety and the loss of its  home

178.    Homecomings should not have the use of the courts to enforce obligations incurred in
the course of its breach of fiduciary duty and in breach of its duty of good faith.

179.    The obligation incurred as a result of Homecoming's breach of fiduciary duty is
unenforceable and null and void.

*Claim against Homecomings—Negligence and Gross Negligence*

180.   Ms McNerney incorporates the prior paragraphs of this document as though fully re-
written herein

181.   Homecomings has a duty to exercise reasonable care in the loan processing process

182.   Homecomings as a lender is held to a standard of public trust based on its specialized
knowledge in the process of loan underwriting and processing

183.   Homecomings failed to exercise reasonable care in the processing of the transaction.

184.   As a result of Homecoming's failure to exercise reasonable care, Ms. McNerney was
subjected to a loan she could not afford, along with additional onerous terms and
costs, specifically excessive fees, the loss of her Individual Retirement Account,
excessive interest rates and private mortgage insurance,  which made default even
more likely

185.   As a result of Homecoming's  failure to exercise reasonable care, Ms. McNerney has
been injured in the overcharges, excessive fees, and a loan for which she could not
qualify under responsible underwriting standards, illness and emotional distress
arising from fear of losing her home.

186.   Homecomings or GMAC acted with malice in that its conscious disregard for the
rights and safety of Ms. McNerney had a great probability of causing substantial
harm.

187.   Ms. McNerney is entitled to damages and punitive damages as a result of
Homecoming's conduct in the  transaction at issue

*Claim against Homecomings—Negligent and Intentional Misrepresentation*

188.   Ms. McNerney incorporates the prior paragraphs of this document as though fully re-written herein

189.   Homecomings, through its agent OMC Lending, Inc, represented to Ms. McNerney that she qualified for a loan at a certain rate of interest.

190.   In fact, on the facts presented in the loan application, and as demonstrated by the rate sheets, Ms. McNerney qualified for a lower rate of interest

191.   Homecomings, through its agent, offered the rate that would provide Homecomings with a higher return and provide its agent with large fees.

192.   Homecomings, through its agent, manipulated the information to make it appear that Ms. McNerney qualified for a loan for which she did not qualify at all.

193.   With the exercise of reasonable care Homecomings could have ascertained from a review of the divorce decree and reasonable inquiry regarding the childrens', ages that a substantial portion of the family income would disappear in a short time as the teen age children reached 18 years of age; and, in fact, OMC did note the ages of the children and commented that support would soon be reduced

194.   Even counting the family income as stable with continuing child support, the loan payment to income ratio, as analyzed by Homecomings, was over 50%

195.   Homecomings made no effort to analyze the loan to determine whether Ms. McNerney had sufficient income to make payments as they came due under the terms of the note.

12-12020-mg   Doc 9380-4   Filed 10/23/15   Entered 10/23/15 16:22:18   Exhibit 3
part 2   Pg 121 of 222
Case 1:09-cv-02383-LW   Doc #: 140-3 Filed: 01/25/11 26 of 45. PageID #: 532

196.   Homecomings did not care whether Ms. McNerney could make payments on the note
       as they came due

197.   It was inevitable that a mortgage payment, already in excess of 50% of the family
       income, would become unmanageable when child support ceased to be paid

198.   Homecomings, through its agent, misrepresented to Ms. McNerney that she qualified
       for a loan for which, on her actual anticipated income, she was not in fact qualified

199.   Homecomings, with its superior knowledge, skill and experience in the lending
       industry had a duty of good faith and fair dealing with its customer, Ms. McNerney

200.   Homecomings had a duty to exercise reasonable care in the processing of the loan

201.   As a result of Homecomings' misrepresentation that Ms. McNerney qualified for the
       loan, Ms. McNerney  has been subjected to a loan that she cannot afford, lived for
       years in fear of losing her home, and has experienced damages in the form of
       excessive charges, excessive interest, excessive fees,  a loans for which she could not
       qualify under responsible underwriting standards, illness, anxiety and emotional
       distress arising from fear of losing her home.

202.   Homecomings acted with malice in that its conscious disregard for the rights and
       safety of Ms. McNerney had a great probability of causing substantial harm

203.   Homecomings is liable for damages and punitive damages as a result of its negligent
       and intentional misrepresentation that Ms. McNerney qualified for the referenced
       loan


*Claim against Homecomings--Unconscionability*

12-12020-mg   Doc 9380-4   Filed 10/23/15   Entered 10/23/15 16:22:18   Exhibit 3
part 2   Pg 122 of 222
Case 1:09-cv-02383-LW   Doc #: 40-3 Filed: 07/25/11 127 of 45. PageID #: 539

204.   Ms. McNerney incorporates herein as if fully rewritten all prior paragraphs

205.   All of the facts set forth above, including fiduciary duty and breach thereof,  superior

        knowledge of the lending process and terms, secret undisclosed compensation terms,

        secret undisclosed dual agency relationship, secret undisclosed interest rate

        availability, undisclosed intent to seek payment on the loan from the equity in the

        home, as supplemented by private mortgage insurance, establish that the conduct of

        Homecomings was unconscionable

206.   The mortgage itself entered into in conditions so violative of fiduciary duties,

        procedurally and substantively unconscionable should not be enforced


                        *Claim against Homecomings—Civil Conspiracy*


207.   Civil conspiracy is a tort whereby injury is done by two acting in concert that cannot

        be done by one alone

208.   Homecomings and OMC Lending acted in concert to appear to be helping Ms.

        McNerney when in fact they were using Ms. McNerney's  home to pump up their

        own fees and profits, charging Ms. McNerney for the insurance that would protect

        Homecomings against loss when the house of cards collapsed, all in violation of a

        fiduciary duty each had independently to Ms. McNerney and in violation of

        Homecoming;s duty to the intended  purchaser of the loan FNMA

209.   OMC Lending, with Homecomings participation and knowledge, falsely and

        knowingly misrepresented to Ms. McNerney and to Homecomings' intended investor,

        FNMA, that Ms. McNerney qualified for the loan; the representations were false; Ms.

12-12020-mg    Doc 9280-4    Filed 10/23/15    Entered 10/23/15 16:22:10    Exhibit 3
Case 1:09-cv-02383-LW    Doc #: 40-2 Filed: 07/25/11 28 of 45. PageID #: 504
part 2    Pg 123 of 222

McNerney and FNMA did not know they were false and reasonably relied upon the representations in entering into the loan transaction; and that Ms. McNerney was damaged by the false and fraudulent misrepresentaions

210.   Ms. McNerney was injured by excessive fees and costs, overcharges in violation of the law of truth in lending, illness, anxiety and distress incident to fear of losing the family home, and increased unaffordable mortgage debt.

211.   Homecomings and OMC Lending acted with malice and are liable for damages, punitive damages and attorney fees.

212.   The tortious conduct that forms the basis for the civil conspiracy claim is further set forth in the following tort claims related to OMC Lending, Nancy George and Homecomings, which tortuous claims are incorporated herein by this reference.

*Claim against Homecomings—Mortgage Loan Broker Act—RC 1322*

213.   Ms. McNerney incorporates all prior paragraphs of this document as though fully re-written herein

214.   The transaction at issue is subject to the provisions of the Ohio Mortgage Loan Broker Act, which became effective May 2, 2002

215.   The Ohio Mortgage Loan Broker Act requires brokers, within three business days of an application, to deliver to the borrower a mortgage loan origination disclosure statement that describes the method by which the fee to be paid by the buyer to the broker will be calculated, and a statement that the lender may pay compensation to the broker.  R.C. 1322.062(A)(1)(f) and (g)

12-12020-mg    Doc 9380-4    Filed 10/23/15    Entered 10/23/15 16:22:19    Exhibit 3
part 2    Pg 124 of 222
Case 1:09-cv-02383-LW    Doc #: 140-3 Filed: 01/25/11 23 of 45. PageID #: 935

216.    Homecomings, having an identity of interest and operation with the broker, which is its agent in the transaction, had an obligation to fulfill the requirements of the Ohio Mortgage Loan Broker act and failed to fulfill those requirements

217.    OMC Lending Inc served as an agent of Homecomings in this transaction

218.    Homecomings, the principal, is responsible for the wrongdoing if its agent when the agent is acting in the scope of its agency

219.    In making the loan at issue, Inc was acting within the scope of its agency with Homecomings

220.    Homecomings is responsible for its agent's failure to fulfill the requirements of the Mortgage Loan Broker Act

221.    The Ohio Mortgage Loan Broker Act further provides that no broker shall make false or misleading statements of a material fact, omissions of statements required by state law,  or false promises regarding a material fact, through advertising or other means, or engage in a continued course of misrepresentation.  RC 1322.07(B).

222.    Homecomings, in its identity with the broker, and as broker, had a duty to refrain from making false or misleading statements of material fact.

223.    OMC Lending, as the broker, had a duty to refrain from making false or misleading statements of material fact

224.    OMC Lending, in making the loan to Ms. McNerney was acting within the scope of its agency

225.    Homecomings, as Principal was responsible for actions of OMC Lending done within the scope of its agency

226.    Homecomings, through its agent,  and through its own conduct in the underwriting

process, breached the duties set forth in RC 1322.07(B)  when it persuaded  Ms.

McNerney that the rate offered was the only rate for which she could qualify, that the

loan could not be restructured to obviate the need for private mortgage insurance, in

omitting to tell her that she could qualify for better terms from the lender she already

had, and in deliberately refraining from contacting Household in order to foreclose

the possibility that Household would contact Ms. McNerney with a better offer, and

in failing to disclose the higher loan payoff and actively concealing the requirement

of private mortgage insurance in time for Ms. McNerney to process and consider the

information and explore other options.

227.    The deferred premiums disclosed in the HUD 1 Statement in the transaction is a yield

spread premiums, which is a  payment from Homecomings to the broker simply for

bringing the loan to Homecomings.

228.    It is a per se violation of RC 1322.07(B) to omit to inform Ms. McNerney of the

payment in the advance disclosure method provided by the statute

229.    It is a per se violation of the Ohio Mortgage Brokers Loan Act to omit the advance

disclosure of lender compensation

230.    Homecomings, through its agent,  violated the Mortgage Loan Broker Act and is

liable for damages as set forth in that act.

231.    The violation of the mortgage loan broker act also constitutes a violation of the Ohio

Consumer Sales Practices Act, thus Ms. McNerney is  entitled to damages, treble

damages, punitive damages and attorney fees for each violation.

*Claim against Homecomings—Failure to Engage in Loss Mitigation Efforts*

232.   Homecomings as lender has a duty to engage in loss mitigation efforts on its
       borrowers default

233.   The witness produced in response to a notice of deposition served upon plaintiff in a
       prior foreclosure proceeding, admitted that it engaged in no loss mitigation efforts
       with Ms. McNerney, thus thrusting her into foreclosure without determining whether
       the exercise of other rights and remedies would prevent this hardship and protect her
       possession of her home

234.   Loss mitigation is a condition precedent to foreclosure and therefore the plaintiff does
       not have a right to foreclose


   *Claim Against Homecomings—Fraud and Intentional and Negligent Misrepresentation*


235.   Ms. McNerney incorporates herein by reference all of the foregoing paragraphs of
       this document

236.   Homecomings is responsible for further acts of OMC Lending and Nancy George, its
       agents in the loan transaction process and for its own participation in the fraud

*237.*   OMC Lending,Inc is an Ohio Corporation owned exclusively by Nancy George and
       operated exclusively by her, with a complete identity of interest between OMC
       Lending, Inc and Nancy George

*238.*   On information and belief, OMC Lending is a thinly capitalized corporation operated
       exclusively for the benefit of Nancy George.

*239.*   Nancy George's domination and control over Defendant OMC Lending was so

12-12020-mg    Doc 9380-4    Filed 10/23/15    Entered 10/23/15 16:22:18    Exhibit 3
Case 1:09-cv-02863-LW    Doc #: 140-3 Filed: 07/25/11 32 of 45. PageID #: 938
part 2    Pg 127 of 222

complete that the corporate form of Defendant OMC Lending had no separate existence of its own

*240.*  Nancy George's control over the corporation  was exercised in such a manner as to commit fraud or illegal acts against Ms. McNerney , and  injury or unjust loss resulted to Ms. McNerney from such control and wrong

241.  Nancy George is liable individually for the unlawful acts of OMC Lending, Inc.

242.  OMC Lending, Inc. as broker, had an affirmative duty under RESPA, the Law of Truth in Lending, the Mortgage Loan Broker Act, and as a fiduciary to disclose material terms in advance of the closing of the loan.

243.  OMC Lending, Inc affirmatively represented to Ms. McNerney that her payment on the loan would be $850.00 and that that payment would include the amount that had to be held in escrow to pay property taxes.

244.  OMC Lending knew or should have known that Ms. McNerney would understand based on this representation that the monthly payment necessary to fulfill her obligation on the loan would be $850.00

245.  OMC Lending knew that because of the additional cost of private mortgage insurance, $850.00 would not be adequate to satisfy Ms. McNerney's monthly payment obligation.

246.  OMC Lending's representation as to the payment amount was false

247.  Ms. McNerney had explained to OMC Lending, Inc that she needed to refinance the loan on the home because after her divorce she could not afford the monthly payment that she then had

12-12020-mg   Doc 9280-4   Filed 10/23/15   Entered 10/23/15 16:22:18   Exhibit 3
Case 1:09-cv-02363-LW   Doc #: 140   Filed: 07/25/11   33 of 45. PageID #: 939
part 2   Pg 128 of 222

248.   The payment amount was a material term that induced Ms. McNerney to go forward
       with the loan application

249.   OMC Lending knew that its representation to Ms. McNerney was false

250.   OMC Lending knew that Ms. McNerney had no reason to believe that it was false

251.   Ms. McNerney believed the representation to be true

252.   Ms. McNerney's belief in the representation was reasonable

253.   Ms. McNerney relied upon the false representation in going forward with the loan
       process and in taking funds from her IRA to complete the process, incurring thereby
       additional taxes and penalties for that tax year

254.   OMC Lending Inc expected Ms. McNerney to rely upon its false representation

255.   Ms. McNerney was injured by the false representation in that she went forward with
       the loan without learning in time to consider other options or without having time to
       process the information, in that she depleted her resources and incurred additional tax
       obligations to take out the funds to go forward with a loan that was not suitable for
       her

256.   OMC Lending actively concealed from Ms. McNerney the material facts that
       Homecomings required private mortgage insurance and that Household, the lender
       she then had, would offer her a competitive loan if informed of the intent to refinance

257.   Both of these facts were material facts of great importance to Ms. McNerney in the
       decision to refinance the loan on her home

258.   OMC Lending took active steps to conceal the competitive loan opportunity by
       knowingly refraining from contacting Household for a payoff until the scheduled

closing date, thus foreclosing the opportunity for Household to reach Ms. McNerney with a competitive offer in time.

259. As a result of refraining to contact Household regarding the payoff, OMC Lending provided information about material terms based on a guess about the amount of the payoff, which guess turned out to be understated by over $6,000.00—which ultimately affected the principal amount of the loan, the monthly payment, the loan to value ratio, and other essential and material terms of the loan.

260. OMC Lending had a duty to disclose both material facts and knowingly concealed them

261. Ms. McNerney did not know of these facts and relied upon OMC to reveal all material facts and make all material disclosures in a timely manner

262. OMC Lending knew of Ms. McNerney's reliance and Ms. McNerney's reliance was justifiable

263. Ms. McNerney was injured by the concealment of the material facts in that she arrived at a loan closing having already taken funds from her IRA, with the expectation of an affordable monthly mortgage payment, and with insufficient time or opportunity to process the unexpected change to her detriment in material terms.

264. OMC Lending falsely led Ms. McNerney to believe that it was acting on her behalf when in reality it was action on its own behalf and as agent for Homecomings to make a loan with the highest possible interest rate.

265. Ms. McNerney reasonably believed that OMC Lending was acting in her behalf

266. OMC Lending, Inc expected Ms. McNerney to belief that it was acting in her behalf

267.    Ms. McNerney was injured as set forth above by her reliance upon OMC Lending to
act in her behalf.

268.    The facts set forth above constitute fraud, negligent misrepresentation, and intentional
misrepresentation

269.    Nancy George and OMC Lending, Inc are liable jointly and severally for the damages
arising from the conduct of OMC Lending.


*Claim against Homecomings—Breach of Fiduciary Duty*


270.    Ms. McNerney  incorporates all prior paragraphs as though fully rewritten herein;
specifically those paragraphs of the first third party claim related to piercing the
corporate veil

271.    OMC Lending at all times  was acting within the scope of its agency with
Homecomings and Homecomings was aware of and participated in and ratified the
conduct of OMC Lending

272.    OMC Lending  presented itself as acting in a fiduciary capacity  toward Ms.
McNerney.

273.    OMC Lending  never disclosed to Ms. McNerney  that it was serving as the agent for
Homecomings  in seeking to sell loans at the highest possible interest rate, with the
cost of the default risk to Homecomings borne by Ms. McNerney in the form of
Private Mortgage Insurance.

12-12020-mg Doc 9280-4 Filed 10/23/15 Entered 10/23/15 16:22:18 Exhibit 3
Case 1:09-cv-02363-LW Doc #: 140 Filed: 01/25/11 86 of 156 PageID #: 942
part 2 Pg 131 of 222

274. Ms. McNerney has been injured by the breach of fiduciary duty by excessive charges, fees and interests rates, as well as by the loan itself made without regard to her ability to pay

275. OMC Lending had an affirmative duty to disclose the secret agency

276. OMC Lending breached the duty to disclose the secret agency

277. Disclosure of the secret agency would have had the effect of making Ms. McNerney more cautious and less trusting of OMC Lending, causing her to be more vigilant and to search for other loan options

278. Homecomings should not be allowed to profit from OMC Lending's brokering the loan at issue which was in excess of Ms. McNerney's ability to pay while Ms. McNerney suffers family displacement, emotional distress, illness, anxiety and the loss of her home

279. Homecomings should be required to disgorge all fees charged in the transaction and is liable for damages arising from the breach of its fiduciary duty

*Claim Against Homecomings—Consumer Sales Practices Act*

280. Ms. McNerney incorporates the prior paragraphs as though fully re-written herein, specifically the allegations of the cause of action related to piercing the corporate veil

281. The conduct complained of constitutes unfair, deceptive and unconscionable acts and practices in the course of a consumer transaction in violation or RC 1345

282. Ms. McNerney is a consumer within the purview of the Consumer Sales Practices Act (CSPA)

12-12020-mg   Doc 9380-4   Filed 10/23/15   Entered 10/23/15 16:32:18   Exhibit 3
Case 1:09-cv-02383-LW   Doc #: 40-3 Filed: 07/25/11 37 of 45. PageID #: 949
part 2   Pg 132 of 222

283.   OMC Lending is a broker within the purview of the CSPA

284.   The transaction at issue is a consumer transaction within the purview of the CSPA

285.   The attorney general's public information file contains cases holding mortgage

brokers liable for unfair, deceptive and unconscionable acts and practices such as

those set forth herein

286.   Ms. McNerney has been damaged by the unfair, deceptive and unconscionable

practices complained of herein in the overcharges, excessive fees,  the making of a

loan for which she could not qualify under responsible underwriting standards, and

cannot afford to pay,  illness, anxiety  and emotional distress arising from fear of

losing her home.

287.   Ms. McNerney is entitled to damages, treble damages, statutory damages and attorney

fees pursuant to the provisions of the Consumer Sales Practices Act.


*Sixth  Cause of Action—Civil Conspiracy*

288.   Ms. McNerney incorporates herein by this reference the prior paragraphs as though

fully re-written herein

289.   Civil conspiracy is a tort whereby injury is done by two acting in concert that cannot

be done by one alone

290.   Homecomings and OMC  Lending, Inc. acted in concert to appear to be helping Ms.

McNerney when in fact they were using Ms. McNerney's home to pump up their own

fees and profits, charging Ms. McNerney for the insurance that would protect

12-12020-mg   Doc 9380-4   Filed 10/23/15   Entered 10/23/15 16:22:18   Exhibit 3
Case 1:09-cv-02363-LW   Doc #: 140-2 Filed:  01/25/11  33 of 45.  PageID #: 944
part 2    Pg 133 of 222

Homecomings or GMAC against loss when the house of cards collapsed, all in

violation of a fiduciary duty each had independently to Ms. McNerney

291.    Ms. McNerney was injured by excessive fees and costs, overcharges in violation of

the law of truth in lending, illness, anxiety and distress incident to fear of losing the

family home, and increased unaffordable mortgage debt.

292.    Homecomings and OMC Lending, Inc. acted with malice and are liable for damages,

punitive damages and attorney fees.

Claim Against Homecomings -Fraud upon the Court and upon Ms. McNerney

293.    Ms. McNerney incorporates herein by reference the prior paragraphs as though fully

re-written herein.

294.    In the prior foreclosure proceeding, Homecomings and GMAC caused to be filed

fraudulent assignments and fraudulent affidavits claiming the MERS, and then, later

GMAC, and then, later, Homecomings was the owner and holder of the note.

295.    In this proceeding also, Homecomings and GMAC and MERS have caused to be filed

with the court fraudulent assignments asserting that MERS transferred the note and

mortgage directly to Homecomings.

296.    The fraudulent "paperwork" is contradicted by the testimony of Homecomings that it

continuously owned the note at issue herein.

297.    As a result of the fraudulent assignments and affidavits, Ms. McNerney incurred

substantial legal fees and costs to disprove the fraudulent statements, and continues to

do so to this day.

298.    In related proceedings in this Court, McNerney v. MERS, MERS admitted that it

never was the owner of the note and mortgage, while nearly simultaneously causing

12-12020-mg    Doc 9280-4    Filed 10/23/15    Entered 10/23/15 16:22:18    Exhibit 3
part 2    Pg 134 of 222
Case 1:09-cv-02353-LW    Doc #: 140 Filed: 07/25/11 133 of 45. PageID #: 545

to be signed an assignment purporting to convey the note and mortgage to

Homecomings for use in this proceeding.

299.    Homecomings, MERS and GMAC know who the real party in interest is, and have

intentionally and knowingly misrepresented the real party in interest to two courts and

Ms. McNerney

300.    Ms. McNerney has no way of knowing the real party in interest except through

expensive discovery which each plaintiff evaded over a period of six years

301.    As a result of the fraud, Ms. McNerney has been subjected to protracted litigation and

legal expense as she has endeavored to seek discovery and assert her defenses and

counterclaims against an elusive real party in interest

302.    As a result of the fraud, Ms. McNerney has suffered anxiety, embarrassment,

humiliation and emotional distress for which she seeks damages and punitive

damages

Cause of Action Against Homecomings—Civil Conspiracy with GMAC and MERS


303.    Ms. McNerney incorporates the prior paragraphs as though fully re-written herein.

304.    The fraud perpetrated upon the court and litigants set forth in the prior claim could

not have been done without  all of the parties, including Homecomings, GMAC and

MERS acting in concert

305.    The participation of each in the form of fraudulent assignments, fraudulent affidavits,

fraudulent appearances as "plaintiff" in the prior foreclosure proceeding, perpetrated

a long and expensive fraud upon Ms. McNerney and the court.

12-12020-mg   Doc 9380-4   Filed 10/23/15   Entered 10/23/15 16:22:18   Exhibit 3
Case 1:09-cv-02383-LW   Doc #: 140-3 Filed: 01/25/11 140 of 145. PageID #: 940
part 2   Pg 135 of 222

306.  As such each is jointly and severally liable for the damages resulting from the fraud
and civil conspiracy

307.  As a result of such fraud and civil conspiracy, Ms. McNerney has been damaged
through having to incur substantial attorney fees to assert her defenses and
counterclaims against the real party in interest, and resulting anxiety, embarrassment,
emotional distress, for which Ms. McNerney demands damages and punitive damages

Counterclaim against Homecomings—Ohio Consumer Sales Practices Act

308.  Ms. McNerney incorporates herein by this reference the prior paragraphs as though
fully re-written herein

309.  Homecomings claims to have acquired title through MERS

310.  As such, Homecomings acquired title after the loan was already in default

311.  As such, Homecomings is a debt collector

312.  Debt collectors are subject to the Ohio Consumer Sales Practices Act

313.  Ms. McNerney is a consumer under the Consumer Sales Practices Act

314.  The collection practices of Homecomings, including filing a foreclosure with no loss
mitigation, filing a foreclosure using false front entities, active fraud in the
prosecution of its false claims, and harassment of Ms. McNerney and her family in
their home, constitute separate and individual violations of the Ohio Consumer Sales
Practices Act

315.  As a result of the violations, Ms McNerney suffered fear, intimidation, loss of the
enjoyment of her home, distress among her young children, and incurred substantial
litigation costs and fees, which harm continues to this day.

316. For each violation of the Ohio Consumer Sales Practices Act, Ms. McNerney demands damages, punitive damages, treble damages and attorney fees.

Cause of Action Against Homecomings, GMAC and MERS—Breach of Privacy

317. Ms McNerney incorporates the prior paragraphs as though fully re-written herein

318. The conduct of Homecomings, GMAC and MERS in sending people to Ms. McNerney's home to harass and intimidate her and her family in the presence and hearing of neighbors, without Ms. McNerney's authorization or consent is a violation of Ms. McNerney's right to privacy

319. As a direct and proximate cause of the public harassment and intimidation, Ms. McNerney has suffered shame, humiliation, fear, intimidation, and has been driven from her home

320. As a direct and proximate cause of the public harassment and intimidation, Ms. McNerney has been unable to live in her home, has been unable to maintain it, and it has suffered deterioration and decline, and may be subject to a condemnation action.

321. Ms. McNerney seeks damages for the loss of her home, for emotional distress, and punitive damages for the willful invasion of privacy, intimidation, and harassment inflicted by Homecomings, GMAC, and MERS.

Claim against Homecomings-Ohio Consumer Sales Practices Act

322. Ms. McNerney incorporates the prior paragraphs as though fully re-written herein

323. Homecomings claims to have acquired title through MERS

324. As such, Homecomings acquired title after the loan was already in default

325. As such, Homecomings is a debt collector

326. Debt collectors are subject to the Ohio Consumer Sales Practices Act

12-12020-mg   Doc 9280-4   Filed: 10/23/15   Entered: 10/23/15 16:22:18   Exhibit 3
Case 1:09-cv-02330-LW   Doc #: 140 Filed:   01/25/11 423 of 45. PageID #: 549
part 2   Pg 137 of 222

327.    Ms. McNerney is a consumer under the Consumer Sales Practices Act

328.    In the complaint filed in this proceeding, Homecomings requested attorney fees in
this consumer transaction

329.    A demand for attorney fees in a consumer transaction is a violation of the Ohio
Consumer Sales Practices Act (The Act).

330.    As a result of the claim for attorney fees, Ms. Mcnerney suffered fear the she would
be exposed to additional costs and fees in addition to those already incurred and
suffered severe distress as a result

331.    For this separate violation of the Act, Homecomings is liable for statutory damages,
for damages in an amount to be proven at trial, for treble damages and punitive
damages and attorney fees.


*Prayer for Relief*

WHEREFORE, Ms. McNerney respectfully requests that this Court:

332.    Order that the transaction has been rescinded

333.    Order that foreclosure be denied as Homecomings cannot be the real party in interest
by virtue, as it claims, of an assignment from MERS.

334.     Order that Homecomings be denied foreclosure and recovery on the note on the
grounds that the transaction has been rescinded, Homecomings has failed to comply
with the law with respect to rescission, and proceeds have vested in Ms. McNerney

335.    Order that Homecomings take all action necessary to terminate any security interest
of record in Ms. McNerney's property and that the Court declare any such security
interests void;

12-12020-mg   Doc 9380-4   Filed 10/23/15   Entered 10/23/15 16:22:18   Exhibit 3
Case 1:09-cv-02383-LW   Doc #: 140-3 Filed: 05/25/11 143 of 45. PageID #: 549
part 2   Pg 138 of 222

336.   Order that  Homecomings refund to Ms. McNerney  any money or property given by Ms. McNerney to anyone in connection with the transaction;

337.   Award Ms. McNerney twice the finance charges in connection with the transaction,

338.   Award damages for each violation, but not less than $200.00 for each and not more than $2,000.00 for each as provided in 15 U.S.C. Sec 1640(a);

339.   Order that the right to retain proceeds vest in Ms. McNerney;

340.   Deny recovery on the note

341.   Award actual damages in the amount established at trial;

342.   Declare that the contract between MERS and Homecomings or GMAC is void as in violation of the law for maintenance and champerty

343.   Declare that the mortgage, as arising out of a void, fraudulent and illegal agreement between Homecomings or GMAC and MERS is itself void and unenforceable

344.   Award Ms. McNerney costs and reasonable attorney fees as provided in 15 U.S.C. Sec. 1640(a),  and the Ohio Consumer Sales Practices Act, and any other relevant statutory provision for fees;

345.   Award punitive damages and compensatory damages

346.   Award treble damages

347.   Award disgorgement of all fees and profits in the transaction

348.   Award such other and further relief as the Court deems just and proper.


Respectfully submitted,


/s/Susan M. Gray
Susan M. Gray (0062356)
Ohio Savings Bank Building

12-12020-mg    Doc 9880-4    Filed 10/23/15    Entered 10/23/15 16:22:18    Exhibit 3
Case: 1:09-cv-02353-LW    Doc #: 40-3 Filed: 01/25/11 144 of 45. PageID #: 550
part 2    Pg 139 of 222

22255 Center Ridge Rd., Suite 210
Rocky River, OH 44116
(440) 331-3949
(440) 331-8160 fax
smgray@smgraylaw.com

One of Attorneys for Ms. McNerney

12-12020-mg   Doc 9380-4   Filed 10/23/15   Entered 10/23/15 16:22:18   Exhibit 3
Case 1:09-cv-02783-LW   Doc #: 40-3 Filed: 01/25/11 43 of 45. PageID #: 551
part 2   Pg 140 of 222

<u>Jury Demand</u>
Ms. McNerney requests trial by Jury on all issues so triable.


Respectfully submitted,

<u>/s/ Susan M. Gray</u>
Susan M. Gray (0062356)
Ohio Savings Building
22255 Center Ridge # 210
Rocky River, OH  44116
440-331-3949
440-331-8160 (fax)
smgray@smgraylaw.com

One of Counsel for Ms.McNerney

<u>Certificate of Service</u>


The following are those who are currently on the list to receive e-mail notices for this
case pursuant to the Court's electronic case filing system.

- Susan M. Gray
  smgray@smgraylaw.com,ecf@smgraylaw.com
- David A. Wallace
  wallace@carpenterlipps.com
- Lucas C. Ward
  lward@ag.state.oh.us
- Angela Paul Whitfield
  paul@carpenterlipps.com,zalany@carpenterlipps.com,lebeau@carpenterlipps.com

No service by regular United States Mail.


<u>/s/Susan M. Gray</u>
Susan M. Gray (0062356)
Attorney for Ms. McNerney

**Exhibit J**

12-12020-mg   Doc 9280-4   Filed 10/23/15   Entered 10/23/15 16:32:18   Exhibit 3
part 2   Pg 142 of 222
Case: 1:09-cv-02383-LW   Doc #: 106   Filed: 10/28/10   Page: 1 of 11   PageID #: 1241

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| HOMECOMINGS FINANCIAL, LLC | ) | CASE NO.: 1:09-cv-02383 |
| | ) | |
|     Plaintiff, | ) | JUDGE LESLEY WELLS |
| | ) | MAGISTRATE PERELMAN |
| v. | ) | |
| | ) | PATRICIA J. MCNERNEY'S |
| | ) | MEMORANDUM IN OPPOSITION |
| PATRICIA J. MCNERNEY | ) | TO PLAINTIFF'S MOTION |
| | ) | FOR JUDGMENT ON THE |
| | ) | PLEADINGS |
|     Defendant. | ) | |

NOW COMES, Patricia J. McNerney, the Defendant to the within action, for her Memorandum in Opposition to the Plaintiff's Motion for Judgment on the Pleadings pursuant to FED. R. CIV. P. 12(c), does hereby respond and object to the Plaintiff's Motion, as she has properly pleaded plausible causes of action within the applicable statutes of limitations or with the invocation of the savings statute. Alternatively, if a particular cause of action is time barred, it is simply advanced as a claim in recoupment. The Memorandum in Opposition follows.

Respectfully submitted,

/s/ Susan M. Gray
**SUSAN M. GRAY** (0062356)
22255 Center Ridge Road, Ste 210
Rocky River, OH 44116
Tel. (440) 331-3949
Fax. (440) 331-8160
Email: smgray@smgraylaw.com

*Counsel for Ms. McNerney*

# TABLE OF CONTENTS

Table of authorities……………………………………………………………………..ii

List of Exhibits……………………………………………………………………….v

Statement of issues to be decided………………………………………………..…vi

Summary of arguments presented……………………………………………..…vi

I. Statement of Facts and Procedure…………………………………………………2

II. Law and Argument………………………………………………………..…4

    A.  Judgment on the Pleadings Standard…………………………………………4

    B.  Ms. McNerney has Stated a Plausible Cause of Action for Breach of
        Privacy…………………………………………………………………… 5

    C.  Ms. McNerney has stated a negligence cause of action within the applicable
        statute of limitations……………………………………………………7

        1.  Homecomings Had A Duty To Enter/Provide Accurate Information Into
            the FNMA Desktop Underwriter To Obtain Approval For the Loan.  Its
            Negligent and Knowing Failure to Do So Resulted In A Loan For Which
            Ms. McNerney Could not Qualify and Could not Pay. This Amounts To
            Negligence……………………………………………………7

        2.  Ms. McNerney's Negligence Cause of Action Was Tolled Pending Her
            Appeals and the Savings Statute Applied.  Her Claims Did Not Fail
            Otherwise Than Upon the Merits Until the Ohio Supreme Court Denied
            Jurisdiction.  Further, Her Counterclaims Relate Back To The Date of the
            Complaint Filed in this Matter…………………………………..…9

    D.  The Claim of Improvident Lending Is  Subsumed by
        Ms. McNerney's Unconscionability Claim and Will Be Dismissed…….10

    E.  The Mistakenly Designated Defense to the Foreclosure of "Failure to
        Engage in Loss Mitigation" Has Been Mooted, As the Plaintiff is No
        Longer Seeking Foreclosure…………………………………………..12

    F.  Ms. McNerney's Stated A Plausible Claim for Fraud On The Court………13

III. Conclusion………………………………………………….………………15

Certificate of Service………………………………………………………17

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Pages**

ABN Amro Mort. Grp., Inc. v. Evans 2008-Ohio-4223 (Ohio App. 8th Dist. 2008)...…..10

Amini v. Oberlin Coll., 259 F.3d 493, 502 (6th Cir. 2001)………………………...………..4

Armstrong v. Harp Realty Co. (1991), 73 Ohio App. 3d 292, 294…………………….....9

Bell Atlantic Corp. v. Twombly, 550 U.S. — , 127 S. Ct. 1955, 167 L. Ed. 2d 929
(2007)………………………………………………………………………………..4-5

Chambers v. NASCO, Inc., 501 U.S. 32, 44, (1991)…………………………………….12

Coulson v. Coulson, 5 Ohio St.3d 12, 15 (Ohio 1983)…………………………………..12

Erickson v. Pardus, 550 U.S. — , 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) …....…..4-5

Glinsey v. Baltimore & Ohio Railroad Co., 495 F.2d 565, 567 (6th Cir.), cert. denied,
419 U.S. 968, 95 S.Ct. 232, 42 L.Ed.2d 184  (1974)…………………………………….10

Haefka v. W.W. Extended Care, 2001-Ohio-1796 (Ohio App. 9th Dist. 2001)……...…...6

Harris Corp. v. Comair, Inc., 712 F.2d 1069, 1072 (6th Cir. 1983)……………………..10

Housh v. Peth, 165 Ohio St. 35, paragraph two of the syllabus (Ohio 1956)…………...5-6

Int'l Periodical Dist. v. Bizmart, 95 Ohio St.3d 452, 2002-Ohio-2488, ¶ 7………………8

Jeffers v. Olexo, 43 Ohio St. 3d 140, 142 (1989)………………………...…..…………..8

JPMorgan Chase Bank, N.A. v. Winget, 510 F.3d 577, 581 (6th Cir. 2007)…………..…4

Kornblum v. Schneider, 609 So.2d 138, 139 (Fla. 4th DCA 1992)……………………..12

LaBarbera v. Batsch, 5 Ohio App.2d 151, 159-160 (Ohio App. 8th Dist. 1966)…………9

Long v. Swofford, 805 So.2d 882 (Fla. 3d DCA 2001)……………….…..…………….12

McKenna v. Ortho Pharmaceutical Corp., 622 F.2d 657, 663 (3d Cir.), cert. denied, 449
U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980)………………………………………...10

Mills v. Best Western Springdale, 2009-Ohio-2901, at ¶ 13 (Ohio Ct. App. 2009)………8

12-12020-mg    Doc 9280-4    Filed 10/23/15    Entered 10/23/15 16:32:18    Exhibit 3
part 2    Pg 145 of 222
Case 1:09-cv-02370-LW    Doc #: 66-3 Filed: 10/28/11 13 of 15. PageID #: 1304

Nieman v. NLO, Inc., 108 F.3d 1546, 1554 (6th Cir.1997)……………………….…...4

Passlogix, Inc. v. 2FA Technology, LLC, 708 F.Supp.2d 378, 394 (S.D.N.Y. 2010)….13

Price v. EquiFirst Corp., No. 1:08-CV-1860, 2009 U.S. Dist. LEXIS 28113, at *21
(N.D. Ohio Apr. 1, 2009)…………………………………………………………………9-10

Rezende v. Citigroup Global Markets, Inc., 09 Civ. 9392 (S.D.N.Y. 2011)…………....12

Riley v. Montgomery, 11 Ohio St.3d 75, paragraph one of the syllabus (Ohio 1984)...…9

Sensations, Inc. v. City of Grand Rapids, 526 F.3d 291, 295 (6th Cir. 2008)………...….4

Sustin v. Fee, 69 Ohio St.2d 143 (Ohio 1982)……………………………………….…..….6

UBS Real Estate Securities, Inc. v. Teague, 191 Ohio App.3d 189, 2010-Ohio-5634, ¶
11……………………………………………………………………………………………....11

Walters v. First Nat. Bank of Newark, 69 Ohio St.2d 677 (Ohio 1982)……..………....7

Wells Fargo Bank v. Jordan, 2009-Ohio-1092 (Ohio App. 8th Dist 2009)………………2

Wells Fargo Home Mortg., Inc. v. Neal, 398 Md. 705,727 (Md. 2007)……………..……11

## Statutes

Ohio Revised Code § 2305.19……………………………………………………….…..8

Ohio Revised Code § 2305.19(A)……………………………………………………...…….8

Ohio Revised Code § 203.605…………………………………………………….……...11

20 C.F.R. § 30.35……………………………………………………………….…...……..11

20 C.F.R. § 30.35(a)(14)……………………………………………………...………...11

## Other Authorities

Black's Law Dict., 7th ed. p. 1528…………………………………………………………7

Case Announcements, 2010-Ohio-1557………………………………………….…...2,9

**Rules**

Federal Rules of Civil Procedure 12(c) …………………………………………...…. 1,3,4

Federal Rules of Civil Procedure  12(b)(6)……………………………………...…… 3

Federal Rules of Civil Procedure 12(c)……………………………………...…………3

Federal Rules of Civil Procedure (8)(a)(2)………………………...………………...…4

Federal Rules of Civil Procedure (8)(c)(2)………………………...……………………11

Local Rule CV-5(a)………………………………………………………………………15

12-12020-mg    Doc 9280-4    Filed 10/23/15    Entered 10/23/15 16:32:18    Exhibit 3
Case: 1:09-cv-02330-LW    Doc #: 106-3 Filed: 10/28/11 63 of 24. PageID #: 1946
part 2    Pg 147 of 222

# LIST OF EXHIBITS

Exhibit A……………………………………………………..State Trial Docket

Exhibit B……………………………………………………..State Appellate Docket

## STATEMENT OF ISSUES TO BE DECIDED

Ms. McNerney has properly pleaded a plausible cause of action for invasion of privacy. She has stated a plausible negligence cause of action within the applicable statute of limitations with the aid the Ohio Savings Statute and other applicable Ohio law. Ms. McNerney is dismissing her improvident lending cause of action because the facts are better advanced under the theory of Unconscionability.  Likewise, her claim of failure to engage in loss mitigation will be dismissed once Homecomings' foreclosure claims are dismissed.  Lastly, Ms. McNerney pleaded, with specificity, a plausible claim for fraud on the court.

## SUMMARY OF ARGUMENTS PRESENTED

1.    Ms. McNerney has stated a plausible cause of action for breach of privacy

2.    Ms. McNerney has stated a negligence cause of action within the applicable statute of limitations.

3.    Homecomings had a duty to enter/provide accurate information into the FNMA Desktop Underwriter to obtain approval for the loan.  Its negligent and knowing failure to do so resulted in a loan for which Ms. McNerney could not qualify and could not pay. This amounts to negligence.

4.    Ms. McNerney's Negligence Cause of Action Was Tolled Pending Her Appeals and the Savings Statute Applied.  Her Claims Did Not Fail Otherwise Than Upon the Merits Until the Ohio Supreme Court Denied Jurisdiction. Further, Her Counterclaims Relate Back To The Date of the Complaint Filed in this Matter.

5.    The Claim of Improvident Lending Is Subsumed by Ms. McNerney's Unconscionability Claim and Will Be Dismissed.

6.    The Mistakenly Designated Defense to the Foreclosure of "Failure to Engage in Loss Mitigation" Has Been Mooted, As the Plaintiff is No Longer Seeking Foreclosure.

7.    Ms. McNerney's Stated A Plausible Claim for Fraud On The Court.

12-12020-mg    Doc 9280-4    Filed 10/23/15    Entered 10/23/15 16:32:18    Exhibit 3
Case: 1:09-cv-02383-LW    Doc #: 66-3 Filed:  10/09/11 3 of 15.  PageID #: 1848
part 2    Pg 149 of 222

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| HOMECOMINGS FINANCIAL, LLC | ) | CASE NO.: 1:09-cv-02383 |
| | ) | |
| Plaintiff, | ) | JUDGE LESLEY WELLS |
| | ) | MAGISTRATE PERELMAN |
| v. | ) | |
| | ) | PATRICIA J. MCNERNEY'S |
| | ) | MEMORANDUM IN OPPOSITION |
| PATRICIA J. MCNERNEY | ) | TO PLAINTIFF'S MOTION |
| | ) | FOR JUDGMENT ON THE PLEADINGS |
| Defendant. | ) | |
| _____) | | |

NOW COMES, Patricia J. McNerney, the Defendant to the within action, for her
Memorandum in Opposition to the Plaintiff's Motion for Judgment on the Pleadings pursuant to
FED. R. CIV. P. 12(c), does hereby respond and object to the Plaintiff's Motion, as she has
properly pleaded plausible causes of action within the applicable statutes of limitations or with
the invocation of the savings statute.  Alternatively, if a particular cause of action is time barred,
it is simply advanced as a claim in recoupment.  The Memorandum in Opposition follows.

Respectfully submitted,

/s/ Susan M. Gray
**SUSAN M. GRAY** (0062356)
22255 Center Ridge Road, Ste 210
Rocky River, OH 44116
Tel. (440) 331-3949
Fax. (440) 331-8160
Email: smgray@smgraylaw.com

*Counsel for Ms. McNerney*

12-12020-mg    Doc 9280-4    Filed 10/23/15    Entered 10/23/15 16:32:18    Exhibit 3
part 2    Pg 150 of 222
Case 1:09-cv-02365-LW    Doc #: 166-3 Filed: 10/26/11 9 of 21.  PageID #: 1849

## MEMORANDUM IN OPPOSITION

## I.    STATEMENT OF FACTS AND PROCEDURE

This case has a very long and painful history.  On November 12, 2003, the Plaintiff's claimed predecessor in interest, specifically Mortgage Electronic Registration Systems, Inc. commenced an action in the Cuyahoga County Court of Common Pleas with the filing of a complaint for foreclosure.  *See State Trial Docket,* attached hereto as Exhibit A, page 17.  On July 12, 2004, Ms. McNerney answered the complaint and asserted many of  the same causes of action in that matter as she does in this matter.[1] *Id.* at 16. Ultimately, on September 14, 2009, after a bench trial, but before a judgment on the merits, the trial court dismissed the entire action without prejudice.  In so doing, the trial court also dismissed Ms. McNerney's counterclaims. The court dismissed the proceeding pursuant to *Wells Fargo Bank v. Jordan*, 2009-Ohio-1092 (Ohio App. 8th Dist 2009) due to the Plaintiff's failure, after having been given a reasonable extension of time, to show that it held the subject note at the time the case was commenced.  *See* Exhibit A at page 1.

As Ms. McNerney had expended a great amount of time and expense to prepare for and to trial and prosecute her defenses and counterclaims, she timely appealed the dismissal of her claims to the Eighth District Court of Appeals on October 13, 2009.  *See State Appellate Docket*, attached hereto as Exhibit B, page 2. The Court of Appeals dismissed the action on December 17, 2009 on the basis that the trial court's order that dismissed the action without prejudice did not constitute a final, appealable order.  *Id*. at 1.  Ms. McNerney then filed a motion to reconsider, which was then denied on December 23, 2009.  *Id*.  She then timely appealed the

---

[1] Ms. McNerney has also asserted additional causes of action in this matter due to the conduct of the Plaintiff subsequent to the filing and dismissal of the initial action.

Ohio Supreme Court.  The Supreme Court denied jurisdiction on April 14, 2010.  *See Case Announcements*, 2010-Ohio-1557.

Meanwhile, the Plaintiff in this matter commenced the within action on October 14, 2009.  Ms. McNerney filed her Answer and Counterclaims on January 23, 2011, after leave was granted.  In her Answer and Counterclaims, Ms. McNerney asserted the following causes of action: (1) violations of the Truth in Lending Act, seeking enforcement of rescission, damages and attorney's fees (¶¶ 126-142); (2) violations of the Truth in Lending Act for failure to cancel the security interest, return payments on the loan, damages and attorney's fees (¶¶144-151); (3) violations of the Real Estate Settlement Procedures Act (¶¶152-159); (4) Improvident Lending (¶¶160-167); (5) Breach of Fiduciary Duty (¶¶168-179); (6) Negligence and Gross Negligence (¶¶180-187); (7) Negligent and Intentional Misrepresentation (¶¶188-203); (8) Unconscionability (¶¶204-206); (9) Civil Conspiracy to Misrepresent (¶¶207-212); (10) Violations of The Mortgage Loan Broker Act, Ohio Revised Code Sec. 1322 (¶¶213-231); (11) Failure to Engage in Loss Mitigation Efforts (¶¶232-234); (12) Fraud and Intentional and Negligent Misrepresentation (¶¶235-269); (13) Breach of Fiduciary Duty (¶¶270-279); (14) Consumer Sales Practices Act ("CSPA")(280-287); (15) Civil Conspiracy to Commit Fraud on the Court (¶¶288-302); (16) Civil Conspiracy to Commit Fraud (¶¶303-316); (17) Breach of Privacy (¶¶317-321) and (18) Violations of the CSPA (¶¶322-331).  It should be noted, however, that many of her factual allegations precede the foregoing paragraphs. *See Counterclaims*, at ¶¶49-125.

This matter is before the Court upon the Homecomings' motion for judgment on the pleadings as to Counts 4, 11, 15 and 17. As is more fully set forth below, Homecomings' motion is without merit and should be overruled.

3

## II.   LAW AND ARGUMENT

### A.  Judgment On the Pleadings Standard

The Defendant in this matter has elected to move for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c) and not to dismiss the complaint under FED. R. CIV. P. 12(b)(6).  FED. R. CIV. P. 12(c) states, "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party <u>must be taken as true</u>, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted).  A motion brought pursuant to Rule 12(c) is appropriately granted "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Id.* at 582 (internal citation and quotation marks omitted). Although the decision rests primarily upon the information contained in the pleadings, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[] also may be taken into account."  *Amini v. Oberlin Coll.*, 259 F.3d 493, 502

(6th Cir. 2001) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir.1997)) (emphasis omitted).

FED. R. CIV. P. (8)(a)(2) states, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."   In *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008), the Court noted:

> In *Bell Atlantic Corp. v. Twombly*, 550 U.S. — , 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the

12-12020-mg   Doc 9280-4   Filed 10/23/15   Entered 10/23/15 16:32:18   Exhibit 3
part 2   Pg 153 of 222
Case 1:mg-cv-02383-LW   Doc #: 58   Filed: 10/23/15   3 of 54   PageID #: 1002

speculative level . . . ." *Id*. at 1964-65 (internal citations omitted). In *Erickson v. Pardus*, 550 U.S. — , 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007), decided two weeks after *Twombly*, however, the Supreme Court affirmed that "Federal Rule of Civil procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id*. at 2200 (quoting *Twombly*, 127 S. Ct. at 1964). The opinion in *Erickson* reiterated that "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Id*. (citing *Twombly*, 127 S. Ct. at 1965). We read the *Twombly* and *Erickson* decisions in conjunction with one another when reviewing a district court's decision to grant a motion to dismiss for failure to state a claim or a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12.

*Id*. at 295-96 (footnote omitted).

To survive a motion to dismiss (or a motion for judgment on the pleadings), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the <u>reasonable inference</u> that the defendant is liable for the misconduct alleged. *Id.* at 556 (emphasis added). The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *See id*.

**B.  Ms. McNerney Has Stated A Plausible Cause of Action for Breach of Privacy**

In 1956, the Ohio Supreme Court recognized that there are <u>three distinct</u> and actionable invasion of privacy claims:   "(1) the unwarranted appropriation or exploitation of one's personality; (2) the publicizing of one's private affairs with which the public has no legitimate concern; (3) <u>or</u> the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Housh v. Peth*, 165 Ohio St. 35, paragraph two of the syllabus (Ohio 1956) (enumeration and emphasis added).  Thus, to state a cause of action for the second type of invasion of privacy, Ms.

McNerney must prove that Plaintiff (1) made public (2) her private affairs (3) with which the public has no legitimate concern.  To state a cause of action for the third type of invasion of privacy, a Ms McNerney must show: (1) wrongful intrusion into the her private affairs; (2) in an outrageous manner; (3) that results in mental suffering, shame or humiliation.  *Id.*  In *Housh*, the Court found the defendant, a debt collector, intruded upon Ms. Housh's privacy by going beyond reasonable collection efforts in a pattern to harass and humiliate Ms. Housh.  *Id*. at 41.

In this matter, Ms. McNerney has alleged a cause of action under the second and third theories of invasion of privacy – that Plaintiffs agents publicized her affairs with loud and highly public taunts within the hearing of her neighbors, and that there has been an intrusion into her private activities in such a manner as to outrage or cause mental suffering, shame or humiliation. Paragraphs 104-109 and 318-321 of her Counterclaims clearly set forth factual allegations, that if believed, would state a plausible claim for invasion of privacy.  Agents from Homecomings came to Ms. McNerney's home to harass her, yell at her and her family and caused them humiliation within the hearing of their neighbors and they subsequently became ill.  As a result, they moved out of their home so they would not have to endure any further harassment or humiliation from Homecomings' agents.  The actions of Homecomings' agents, engaging in a pattern to harass and humiliate Ms. McNerney and her family, are similar to those actions the Court found to result in an invasion of privacy in *Housh*.  Consequently, Ms. McNerney has stated a plausible cause of action for invasion of privacy.

Homecomings argues that Ms. McNerney was required to show "dissemination and/or publication of information about a [her]" in order to state a claim for invasion of privacy. However, that element relates to "the publicizing of one's private affairs with which the public has no legitimate concern" and not the intrusion of one's seclusion.  *See, e.g., Sustin v. Fee,* 69

Ohio St.2d 143 (Ohio 1982) (discussing invasion of one's seclusion with no discussion of dissemination being an element). *See also, Haefka v. W.W. Extended Care*, 2001-Ohio-1796 (Ohio App. 9th Dist. 2001) (same). In addition, at paragraph 318, Ms. McNerney specifically alleges that Homecomings "sent people to her home to harass and intimidate her and her family *in the presence and hearing of neighbors....*" Thus, the element of publication is met in any event. As a result, Homecomings' motion for judgment on the pleadings with respect to this cause of action should be overruled.

### C. Ms. McNerney has stated a negligence cause of action within the applicable statute of limitations.

**1. Homecomings Had A Duty To Enter/Provide Accurate Information Into the FNMA Desktop Underwriter To Obtain Approval For the Loan. Its Negligent and Knowing Failure to Do So Resulted In A Loan For Which Ms. McNerney Could not Qualify and Could not Pay. This Amounts To Negligence.**

Homecomings was not just the lender in this matter, but also took on the role of underwriter. In this role, Homecomings received accurate information from Ms. McNerney. It then had a duty to enter the correct and accurate information provided to it into the FNMA Desktop Underwriter program in order to get approval for the loan. However, because the true information would have resulted in a "no sale" Homecomings through its Broker entered the incorrect information. Although Homecomings, in its review prior to closing noted the incorrect information, made hand-written notations of the correct information, it never made the actual changes into the underwriting desktop program. Had it made the changes, the underwriting program would have noted that Ms. McNerney did not qualify for the loan and Homecomings would not have been able to complete the transaction with FNMA. In other words, it cheated to sell a "dud" to FNMA, which would have been a fraud upon FNMA, but also negligently injured

Ms. McNerney. *Counterclaims, ¶¶*69-74.  By not entering the correct information, Homecoming breached its duty to Ms. McNerney as the underwriter.

This breach is akin to the breach that occurred in *Walters v. First Nat. Bank of Newark*, 69 Ohio St.2d 677 (Ohio 1982).  In that case, the lender's agent failed to structure a loan to include credit life insurance or to provide the borrower with the requisite data.  *Id*. at 679.  The Court went on to say that even if negligence had not been alleged, the lender was still liable for misrepresentation.  *Id*. at 680.  In either respect, the lender was liable for its misdeeds.

While this matter does not center on credit life, the lender took on the role as underwriter. Underwriting is defined as "the act of assuming a risk by insuring it . . . ." *Black's Law Dict.,* 7th ed. p. 1528.  By performing the underwriting process, the lender had a duty to enter the correct information into the desktop underwriter to ensure that Ms. McNerney would qualify for the loan.  Its failure to enter the correct information is a clear breach of this duty. *Counterclaims, ¶¶*69-74.  The breach of this duty resulted in Ms. McNerney being subjected to a loan she could not afford, along with additional onerous terms and costs, specifically excessive fees, the loss of her Individual Retirement Account, excessive interest rates and private mortgage insurance, which made default even more likely.  She further has been injured in the overcharges, excessive fees, and a loan for which she could not qualify under responsible underwriting standards, illness and emotional distress arising from fear of losing her home.  *Counterclaims*, ¶¶ 181-187.  Ms. McNerney has stated a duty, breach, injury  and causation.  *Mills v. Best Western Springdale*, 2009-Ohio-2901, at ¶ 13 (Ohio Ct. App. 2009) (citing *Jeffers v. Olexo*, 43 Ohio St. 3d 140, 142 (1989).  Consequently, Homecomings' motion with respect to this cause of action should be overruled.

  **2. Ms. McNerney's Negligence Cause of Action Was Tolled Pending Her Appeals and the Savings Statute Applied.  Her Claims Did Not Fail Otherwise Than Upon the Merits Until the Ohio Supreme Court Denied Jurisdiction.  Further, Her Counterclaims Relate Back To The Date of the Complaint Filed in this Matter.**

"Savings statutes may apply when a claim filed within the time required by a statute of limitations is dismissed without prejudice but the statute of limitations on the claim has already expired. Savings statutes operate to give a plaintiff a limited period of time in which to refile a dismissed claim that would otherwise be time-barred." *Int'l Periodical Dist. v. Bizmart*, 95 Ohio St.3d 452, 2002-Ohio-2488, ¶ 7.  Ohio's savings statute is codified at Ohio Revised Code Section 2305.19.  That section states, in relevant part:

> In any action that is commenced or attempted to be commenced . . . if the plaintiff fails otherwise than upon the merits, the plaintiff . . . may commence a new action within one year after the date of the plaintiff's failure otherwise than upon the merits. This division applies to any claim asserted in any pleading by a defendant.

O.R.C. § 2305.19(A).

On September 14, 2009, the trial court dismissed the entire action based upon Homecomings' failure to comply with the Court's order to prove it was the holder of the Note at the commencement of the action.  The trial court also dismissed Ms. McNerney's counterclaims, without prejudice.  Ms. McNerney eventually appealed to the Ohio Supreme Court, which declined jurisdiction on April 14, 2010.  *See Case Announcements*, 2010-Ohio-1557.  Under Ohio law, the date of affirmance on appeal is the date the savings statute begins to run, not the date the trial court dismisses the action.  *LaBarbera v. Batsch*, 5 Ohio App.2d 151, 159-160 (Ohio App. 8th Dist. 1966) (rev'd on other grounds) *LaBarbera v. Batsch,* 10 Ohio St.2d 106 (1967).

The Supreme Court declined jurisdiction on April 14, 2010 and Ms. McNerney would then have had to file her counterclaims by April 14, 2011 in order for them to be timely under Ohio law. As Ms. McNerney filed her Counterclaims of January 23, 2011, her Counterclaims are within the applicable statute of limitations and the savings statute. Furthermore, "[i]n Ohio, a counterclaim asserted by the defendant against the plaintiff, which relates to the same transaction or occurrence asserted in the original claim, relates back to the original commencement of the action." *Armstrong v. Harp Realty Co.* (1991), 73 Ohio App. 3d 292, 294. Consequently, Ms. McNerney filed her Counterclaims on the date of the Complaint, October 14, 2009.

Notwithstanding the above analysis, if any cause of action is barred by the statute of limitations, Ms. McNerney would advance such cause of action as a claim in recoupment. *See Riley v. Montgomery*, 11 Ohio St.3d 75, paragraph one of the syllabus (Ohio 1984) ("A claim of a defendant which would be barred by the statute of limitations if brought in an action for affirmative relief is available as a defense or under the common-law theory of recoupment, when the claim arises out of the same transaction as the plaintiff's claim for relief, and when it is offered only to reduce the plaintiff's right to relief"). Accordingly, Homecomings' motion with respect to this cause of action should be overruled.

**D.** **The Claim of Improvident Lending Is Subsumed by Ms. McNerney's Unconscionability Claim and Will Be Dismissed.**

It is true that Ohio has not recognized explicitly the claim of improvident lending. *See Price v. EquiFirst Corp.,* No. 1:08-CV-1860, 2009 U.S. Dist. LEXIS 28113, at *21 (N.D. Ohio Apr. 1, 2009). However, the Court in *EquiFirst* summarily dismissed that cause of action without any analysis.

The role of a federal court is to determine "what the [Ohio] courts might do if faced with the question." *Harris Corp. v. Comair, Inc.,* 712 F.2d 1069, 1072 (6th Cir. 1983) (citing *Glinsey*

10

*v. Baltimore & Ohio Railroad Co.*, 495 F.2d 565, 567 (6th Cir.), cert. denied, 419 U.S. 968, 95 S.Ct. 232, 42 L.Ed.2d 184 (1974)).  In so doing, federal courts " must 'consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.'" *Id*. (quoting *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 663 (3d Cir.), cert. denied, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980)).

There are scant Ohio reported decisions that touch on the issue of improvident lending. One case, however, is *ABN Amro Mort. Grp., Inc. v. Evans*, 2008-Ohio-4223 (Ohio App. 8th Dist. 2008).  In that case, the Appellants (Evans) sought leave to file an amended answer and counterclaims, one of those claims being a claim for improvident lending.  *Id*. at ¶ 7.  The issue before the Court was whether the trial court abused its discretion when it denied the Appellants' motion for leave to amend their complaint.  *Id*. at ¶ 12. The Court of Appeals found the trial court abused its discretion when it denied the Appellants' motion for leave to amend.  The Court also found "their pleading alleged sufficient facts in support of the claims."  *Id*. at ¶ 18.  While the issue of whether improvident lending is a recognized cause of action under Ohio law was not before the Court, the court certainly could have found that the trial court did not abuse its discretion with respect to that claim.  While this case is not dispositive of the issue, it is dicta that at least one court in Ohio may recognize improvident lending.

Nonetheless, Ms. McNerney believes her claim for improvident lending is subsumed by and can be better advanced under her theory of Unconscionability.  Accordingly, she will voluntarily dismiss this cause of action.

**E.**  **The Mistakenly Designated Defense to the Foreclosure of "Failure to Engage in Loss Mitigation" Has Been Mooted, As the Plaintiff is No Longer Seeking Foreclosure.**

The Plaintiff cites to *UBS Real Estate Securities, Inc. v. Teague*, 191 Ohio App.3d 189, 2010-Ohio-5634, ¶ 11, for the proposition that "loss mitigation is always at [the] pleasure of lender." *Plaintiff's Memo*. at P.11.  However, that statement was merely the Court of Appeals quoting the Common Pleas Court in a denial of a motion for relief from judgment.  Further, the Court of Appeals did not comment on this particular statement or whether it is in fact a proper statement of law.  Nonetheless, if a lender chooses not to engage in loss mitigation, it does so at its own peril.  For example, 20 CFR 30.35 states, "[t]he Mortgagee Review Board may initiate a civil money penalty action against any mortgagee or lender who knowingly and materially . . . Fails to engage in loss mitigation as provided in § 203.605 of this title.  20 CFR 30.35(a)(14).  Further, while there may be no private cause of action under this section for monetary relief, courts have recognized the use of this section as a defense to a foreclosure.  *See, e.g., Wells Fargo Home Mortg., Inc. v. Neal,* 398 Md. 705,727 (Md. 2007) (finding HUD violations may be used to defend a foreclosure action in the form of injunctive relief).  This defense was mistakenly designated as a counterclaim.  *See* FED. R. CIV. P. (8)(c)(2).  In addition, loss mitigation, in its essence, is mitigation of damages.  Well-settled law in Ohio requires that "an injured party has a duty to mitigate and may not recover for damages that reasonably could have been avoided.  *Abroms v. Synergy Building Systems,* 2011-Ohio-2180 *citing Chicago Title Ins. Co. v. Huntington Nat'l. Bank,* 1999-Ohio-62.  However, the matter is now moot because the Plaintiff states that it is no longer seeking to foreclose of the subject matter property.  Consequently, this cause of action should be dismissed as <u>moot</u>.  Ms. McNerney will file a motion to voluntarily dismiss this claim once Plaintiff has dismissed its foreclosure causes of action.

## F.    Ms. McNerney's Stated A Plausible Claim for Fraud On The Court.

With respect to fraud on the court, the Ohio Supreme Court has stated the following:

> Fraud upon the court is an elusive concept. The distinction between 'fraud' on the one hand and 'fraud on the court' on the other is by no means clear, and most attempts to state it seem to us to be merely compilations of words that do not clarify.
>
> One commentator, however, had provided this definition: 'Fraud upon the court' should, we believe, embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by the officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.
>
> * * *
>
> It is generally agreed that any fraud connected with the presentation of a case to a court is a fraud upon the court, in a broad sense.

*Coulson v. Coulson*, 5 Ohio St.3d 12, 15 (Ohio 1983) (internal quotation marks, brackets and citations omitted).  Some courts have held dismissal with prejudice is the proper remedy for fraud on the court.  *See, e.g., Kornblum v. Schneider*, 609 So.2d 138, 139 (Fla. 4th DCA 1992); *Long v. Swofford,* 805 So.2d 882 (Fla. 3d DCA 2001).  *See also, Rezende v. Citigroup Global Markets, Inc.*, 09 Civ. 9392 (S.D.N.Y. 2011) ("Upon finding that a party has engaged in misconduct that rises to the level of fraud on the court, the court may impose sanctions, including a jury charge, an attorneys' fee award, and in some cases the dismissal of a party's claims").

Courts have inherent authority "to conduct an independent investigation in order to determine whether it has been the victim of fraud." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, (1991).  In so doing, courts may consider the following five factors in determining an appropriate sanction: (i) whether the misconduct was the product of intentional bad faith; (ii) whether and to what extent the misconduct prejudiced the injured party; (iii) whether there is a pattern of misbehavior rather than an isolated instance; (iv) whether and when the misconduct was

13

corrected; and (v) whether further misconduct is likely to occur in the future. *Passlogix, Inc. v. 2FA Technology, LLC*, 708 F.Supp.2d 378, 394 (S.D.N.Y. 2010).

Ms. McNerney alleged that in the State Court action, Homecomings and GMAC caused to be filed fraudulent assignments and fraudulent affidavits claiming the MERS, and then, later GMAC, and then, later, Homecomings was the owner and holder of the note. In addition, she alleged that in this proceeding, Homecomings, GMAC and MERS have caused to be filed with the court fraudulent assignments asserting that MERS transferred the note and mortgage directly to Homecomings.    The fraudulent "paperwork" is contradicted by the testimony by Homecomings in the prior court case that Homecomings continuously owned the note at issue herein.  Further, Homecomings, MERS and GMAC have known all along who the real party in interest has been and have  intentionally and knowingly misrepresented the real party in interest to two courts with the filing of the aforementioned documents in an attempt to persuade courts to grant judgment in their favor while not having an interest in the litigation.  These particular facts certainly state a plausible cause of action for fraud on the court.

Homecomings conflates the elements of common law fraud with fraud on the court and suggests Ms. McNerney must allege justifiable and detrimental reliance.  However, as noted above, fraud on the court does not include these elements.  Rather, the fraud is upon the court, that is, fraud connected with the presentation of a case, not fraud upon Ms. McNerney.  In addition, Homecomings asserts that witness immunity protects <u>anyone</u> from sanctions for committing fraud on the court.  In essence, Homecomings would strip courts of their inherent powers to sanction perpetrators of fraud upon the court with a shield of immunity.  However, Homecomings does not cite to a single case that stands for the proposition that witness immunity

Case: 1:10-cv-02385-LW   Doc #: 50-2 Filed: 10/23/11 12 of 51. PageID #: 1061

would protect a litigant's case if she or he perpetrated a fraud <u>on the court</u>. As such, its motion with respect to this cause of action must be overruled.

## III.   <u>CONCLUSION</u>

Based upon the foregoing, Ms. McNerney has properly pleaded a plausible cause of action for invasion of privacy. In addition, she has stated a plausible negligence cause of action within the applicable statute of limitations with the aid the Ohio Savings Statute and other applicable Ohio law. Further, Ms. McNerney is dismissing her improvident lending cause of action because the facts are better advanced under the theory of Unconscionability. Likewise, her claim of failure to engage in loss mitigation will be dismissed once Homecomings' foreclosure claims are dismissed. Lastly, Ms. McNerney pleaded, with specificity, a plausible claim for fraud on the court. In any event, the Court has inherent authority to make its own inquiry to determine whether a fraud has been perpetrated. Consequently, the motion of Homecomings for judgment on the pleadings should be overruled.

<div style="margin-left: 50%;">

Respectfully submitted,

/s/ Susan M. Gray
**SUSAN M. GRAY** (0062356)
22255 Center Ridge Road, Ste 210
Rocky River, OH 44116
Tel. (440) 331-3949
Fax. (440) 331-8160
Email: smgray@smgraylaw.com

*Counsel for Ms. McNerney*

</div>

## **PAGE LIMIT CERTIFICATION**

This action has been assigned to a standard case management track and this

memorandum complies with the page limitations set forth in Local Rule 7.1(f).


/s/ Susan M. Gray (0062356)
Counsel for Ms. McNerney

## CERTIFICATE OF SERVICE

I certify that the foregoing document was filed electronically on October 28, 2011, with the clerk of the court for the U.S. District Court, Northern District of Ohio, Eastern Division pursuant to Local Rule CV-5(a) and with the expectation that such pleading will be served via the Court's electronic case filing system on all counsel who have consented to electronic service via the Court's ECF system.

/s/ Susan M. Gray

**SUSAN M. GRAY** (0062356)

**Exhibit K**

12-12020-mg    Doc 9280-4    Filed 10/23/15    Entered 10/23/15 16:32:18    Exhibit 3
Case: 1:09-cv-02383-LW    Doc #: 26    Filed: 10/28/11    1 of 32.    PageID #: 1084
part 2    Pg 167 of 222

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| HOMECOMINGS FINANCIAL, LLC | ) | CASE NO.: 1:09-cv-02383 |
| | ) | |
| Plaintiff, | ) | JUDGE LESLEY WELLS |
| | ) | MAGISTRATE PERELMAN |
| v. | ) | |
| | ) | PATRICIA MCNERNEY'S |
| | ) | MEMORANDUM IN OPPOSITION TO |
| PATRICIA J. MCNERNEY | ) | TO PLAINTIFF'S MOTION |
| | ) | FOR SUMMARY JUDGMENT |
| Defendant. | ) | |
| _____ | ) | |

NOW COMES, Patricia J. McNerney, the Defendant to the within action, and for her

Memorandum in Opposition to the Plaintiff's Motion for Summary Judgment pursuant to FED. R.

CIV. P. 56(c), does hereby respond and object to the Plaintiff's Motion, as there are genuine

issues of material fact that remain to be litigated.  The Memorandum in Opposition follows.


Respectfully submitted,


/s/ Susan M. Gray_____
**SUSAN M. GRAY** (0062356)
22255 Center Ridge Road, Ste 210
Rocky River, OH 44116
Tel. (440) 331-3949
Fax. (440) 331-8160
Email: smgray@smgraylaw.com

*Counsel for Ms. McNerney*

## <u>TABLE OF CONTENTS</u>

Table of authorities……………………………………………………………......…i-iv

List of Exhibits………………………………………………………………....…..…v

Statement of issues to be decided…………………………………………….............vi

Summary of arguments presented……………………………....…………………..vi-vii

I. STATEMENT OF PROCEDURE AND FACTS………………………………………1

II. LAW AND ARGUMENT…………………………………………………………..3

    A.    An Agency Relationship Existed Between Homecomings
        and OMC Lending, the Broker In This Matter……………………………4

    B.    Genuine Issue of Material Fact Exists As To Whether
        Homecomings Is Liable For Breach of Fiduciary Duty…………………..6

        1.  As principal, Homecomings is Liable for OMC Lending's Breach of
            Fiduciary Duty.   Further, as is noted below, Homecomings is liable
            for its own acts under a theory of civil conspiracy……………………6

        2.  The Breach of Fiduciary Claim is Timely Under Ohio's Savings
            Statute…………………………………………………………....8

    C.    As the principal, Homecomings Is Liable for CSPA Violations of Its
        Agent, OMC Lending……………………………………………….....8

        1.  The CSPA claims are timely under Ohio's saving statute…………..8

        2.  As principal, Homecomings is liable for its agent's violations of the
            Ohio Consumer Sales Practices Act………………………………8

    D.    As the principal, Homecomings is liable for its agent's fraud, intentional
        misrepresentation and negligent misrepresentation………………….....11

        1.  OMC Lending negligently and/or intentionally misrepresented terms
            in connection with the loan that is the subject of this matter………..11

        2.  The Fraud and Misrepresentation Claims Are Timely Under the
            Savings Statute Analysis…………………………………………..12

E.      Homecomings, as the principal, is liable for its agent's violations of the Ohio Mortgage Broker Act………………………………………………12


F.      Ms. McNerney asserted her RESPA claim in the state trial court action. Based upon the Plaintiff's actions in this matter and in the state trial court, the statute of limitations should have been equitably tolled during the state court action and all appeals……………………………………………13


G.      The Civil Conspiracy In This Action Is Evident From the Facts that Occurred in the State Court Action………………………………………14


H.      The Loan Transaction At Issue In This Matter Was Both Procedurally and Substantively Unconscionable………………………………………….. 16


I.      The statute of limitations with respect to Ms. McNerney's TILA claim should also be equitably tolled.    Further, there are two separate TILA violations: (1) failure to provide the proper disclosures and (2) failure to release the security interest when she rescinded the transaction……….. 18


III      Conclusion……………………………………………………………………19

12-12020-mg    Doc 9280-4    Filed 10/23/15    Entered 10/23/15 16:32:18    Exhibit 3
part 2    Pg 170 of 222
Case 1:09-cv-02383-LW    Doc #: 16-7 Filed: 10/28/11 3 of 13. PageID #: 1307

# TABLE OF AUTHORITIES

**Cases**                                                                    **Pages**

ABN AMRO Mortg. Group, Inc. v. Arnold, 2005-Ohio-925, ¶ 29……………………..…11

All Star Land Title Agency, Inc. v. Surewin Invest., Inc., 2006-Ohio-5729, at ¶36
 (Ohio App. 8th Dist. 2006)……………………………………………………………….6

Alston v. Countrywide Fin. Corp., 585 F.3d 753, 764 (3d Cir. 2009…………….…..….14

American Vitrified Prods. V. On Application to Certify Crooks, 20 Ohio L. Abs. 627
(1935)……………………………………………………………………………….....17

Armstrong v. Harp Realty Co., 73 Ohio App. 3d 292, 294 (1991)………………………8

Begala v. PNC Bank, Ohio, Nat'l Ass'n, 163 F.3d 948, 950 (6th Cir. 1998)……………18

Blankenship v. CFMOTO Powersports, Inc., 2011-Ohio-948, ¶ 11, 2009 CVH 1340
(OHMISC Ohio C.P. Clermont 2011)……………………………………………..…10

Brainard v. American Skandia Life Assur. Corp., 432 F.3d 655, 661 (6th Cir. 2005)…....5

Burnett v. New York Central R.R. Co., 380 U.S. 424, (1965)…………………………..14

Burr v. Stark Cty. Bd. of Commrs., 23 Ohio St.3d 69, 73 (1986)………………………12

Camp St. Marys Assn. of W. Ohio Conference of the United Methodist Church, Inc. v.
Otterbein Homes, 176 Ohio.App.3d 54, 68 (Ohio App. 3d 2008)………………………6

Carter v. Welles-Bowen Realty, Inc. (In re Carter), 553 F.3d 979, n5 (6th Cir. 2009)….14

Comer v. Risko, 106 Ohio St.3d 185, 2005-Ohio-4559, ¶ 20 (Ohio 2005)……………….6

Crown Property Development, Inc. v. Omega Oil Co., 113 Ohio App.3d 647, 656 (Ohio
App. 12th Dist. 1996)……………………………………………………………..…..11

Ed Schory & Sons v. Francis, 75 Ohio St. 3d 433, 442-443 (Ohio 1996)……………...6

Equicredit Corp. of Am. v. Jackson, 2004-Ohio-6376, ¶ 46 (Ohio App. 7th Dist.)……..10

Frysinger v. Leech, 32 Ohio St.3d 38, 42-43 (Ohio 1987)………………………………8

_Fuller and Associates v. Heil Windermere Moving and Storage Co._, 2005-Ohio-2599
(Ohio App. 5th Dist. 2005)……………………………………………....…..…15

_Glus v. Brooklyn Eastern Terminal_,  359 U.S. 231 (1959)………………………..…13

_Gosden v. Louis_, 116 Ohio App.3d 195, 219 (Ohio App. 9th Dist. 1996)…………….....15

_Haddon View Invest. Co. Coopers & Lybrand_ , 70 Ohio St.2d 154 (Ohio 1982)……….11

_Inge v. Rock Financial Corp._, 281 F.3d 613, 621 (6th Cir. 2002)………………….......18

_Insurance Co. v. Wilkinson_, 13 Wall. 222, 233………………………………………13

_Jones v. TransOhio Sav. Ass'n_, 747 F.2d 1037 (6th Cir. 1984)……………………......18

_LaBarbera v. Batsch_, 5 Ohio App.2d 151, 159-160 (Ohio App. 8th Dist. 1966)…………8

_LaBarbera v. Batsch_, 10 Ohio St.2d 106 (Ohio 1967)…………………………………8

_Lepara v. Fuson_ , 83 Ohio App.3d 17, 26 (1992)………………………………………11

_Manley v. Personacare of Ohio_, 2007-Ohio-343, ¶14…………………………….…16

_Matsushita Elec. Indus. Co. v. Zenith Radio Corp._, 475 U.S 574 at 587 (1986)………….2

_Mid-state Horticultural Co. v. Pennsylvania R. Co._, 320 U.S. 356, 360 (1943)……..…14

_Murphy v. Household Fin. Corp._, 560 F.2d 206, 210 (6th Cir. 1977)…………………...18

_Pickle v. Swinehart_, 170 Ohio St. 441, 443 (Ohio 1960)………………………….…15

_Rudisell v. Fifth Third Bank_, 622 F.2d 243, (6th Cir. 1980)……………………………19

_Schaller v. Nat'l Alliance Ins. Co._ (D.C. Ohio 2007), 496 F. Supp. 2d 890……………11

_Schaller v. Nat'l Alliance Ins. Co._ 496 F. Supp. 2d 890, 903 (S.D. Ohio 2007)……..…10

_Schreiber v. Philips Display Components Co._, 580 F.3d 355, 363 (6th Cir. 2009)
 (quoting Fed.R.Civ.P. 56)…………………………………………………....…3

_Tymshare, Inc. v. Covell_, 727 F.2d 1145, 1153 (D.C. Cir. 1984)………………………17

_Wells Fargo Bk. v. Jordan_, 2009-Ohio-1092 (8th Dist. Ohio March 12, 2009)………...1,2

12-12020-mg Doc 9280-4 Filed 10/23/15 Entered 10/23/15 16:32:18 Exhibit 3
part 2 Pg 172 of 222
Case 1:15-cv-02330-LW Doc #: 16-7 Filed: 10/29/11 0 of 52. PageID #: 1385

Westchester Mort. Co. v. Grand Rapids and Ionia R.R. Co., 213 N.Y.S. 593, 599 (N.Y. 1926)………………………………………………………………………….……17

White v. Baxter Healthcare Corp., 533 F.3d 381, 389 (6th Cir. 2008)……………..…..4-5

Williams v. Aetna Finance Company, 83 Ohio St. 3d 464, 475 (Ohio 1998)…………..15

Zuber v. Ohio Ins. Dept., 34 Ohio App.3d 42, 45 (1986)…………………….………11

**Statutes**

Ohio Revised Code Section 2305.19…………………………………………….……..9

 Ohio Revised Code § 2305.19(A)………………………………………………..………9

Ohio Rev. Code Ann. § 1345.01(C)……………………………………...……….…9

Ohio Rev. Code Ann. § 1345.02(A)…………………………………………………9

Ohio Rev. Code Ann. § 1345.01(A)…………………………………………………9

Ohio Revised Code § 5725.01 ……………………………………………….……9

Ohio Revised Code § 1345.03(A)…………………………………………………9

Ohio Revised Code § 1345.01(C)…………………………………………...……..10

Ohio Revised Code §1345.01(A)…………………………………………..…....10

Ohio Revised Code § 1345.03(B)(4)……………………………………………....12

The Mortgage Broker Act, RC. § 1322.01………………………………...……..12

Ohio Revised Code § 1322.062(A)(1)(f)………………………………………...…13

Ohio Revised Code § 1322.062(A)(1)(g)…………………………………………...…13

Ohio Revised Code §1322.07(B)……………………………………………………...13

Ohio Revised Code § 1322.11……………………………………………….……13

15 U.S.C. Sec. 1640(e)……………………………………………………...…..18

15 U.S.C. §1631………………………………………………………….……..19

15 U.S.C. §1632………………………………………………………….……19

15 U.S.C. §1635…………………………………………………….…19

15 U.S.C. Sec. l635(b)…………………………………………….……19

15 U.S.C. § 1635…………………………………………………………19

**Other Authorities**

<u>Case Announcements</u>, 2010-Ohio-1557……………………………………..……..3

<u>Savings Statute Argument, supra</u>, at Section B2………………..…………..10,14,15

**Rules**

FED. R. CIV. P. 56(c)……………………………………………………..1

Civil Rule 41(B)(1)…………………………………………………...3

Rule 56 of the Federal Rules of Civil Procedure………………………….……4

# <u>LIST OF EXHIBITS</u>

State Court Complaint…………………………………………….………..Exhibit 1

Trial Court Docket…………......................................................................Exhibit 2

Intentionally omitted            …………………………………………...Exhibit 3

Intentionally omitted            …………………………………………..Exhibit 4

Trial Court order dismissing case……………………………………….…Exhibit 5

State Appellate Docket…………………………………………….………Exhibit 6

Trial Transcript………………………………………………………….…Exhibit 7

Trial Transcript exhibit III denying loan modification because of insufficient
income……………………………………….…………………………………Exhibit 8

Deposition of Nancy George…………………………………………….…Exhibit 9

Deposition of Nancy George Exhibit        ……………………………….Exhibit 10

## STATEMENT OF ISSUES TO BE DECIDED

Whether the existence of disputed material facts require that this Honorable Court should deny Homecomings Financial LLC ("Homecomings") motion for judgment as a matter of law on Defendant Patricia J. McNerney's counterclaims for breach of fiduciary duties, Unconscionability, civil conspiracy, fraud, intentional and negligent misrepresentation, and violations of the Truth in Lending Act, the Real Estate Settlement Procedures Act, the Ohio Mortgage Loan Broker Act, and the Ohio Consumer Sales Practices Act.

## SUMMARY OF ARGUMENTS PRESENTED

1.  An agency relationship existed between Homecomings and OMC Lending, the broker in this matter
2.  A genuine issue of material fact exists as to whether Homecomings is liable for breach of fiduciary duty.
3.  As principal, Homecomings is liable for OMC lending's breach of fiduciary duty.  Further, as is noted below, Homecomings is liable for its own acts under a theory of civil conspiracy.
4.  The breach of fiduciary claim is timely under Ohio's Savings Statute.

5.  As the principal, Homecomings is liable for CSPA violations of its agent, OMC Lending.
6.  The CSPA claims are timely under Ohio's saving statute
7.  As principal, Homecomings is liable for its agent's violations of the Ohio Consumer Sales Practices Act.
8.  As the principal, Homecomings is liable for its agent's fraud, intentional misrepresentation and negligent misrepresentation.
9.  OMC Lending negligently and/or intentionally misrepresented terms in connection with the loan that is the subject of this matter.
10. The Fraud and Misrepresentation Claims Are Timely Under the Savings Statute Analysis.
11. Homecomings, as the principal, is liable for its agent's violations of the Ohio Mortgage Broker Act.
12. Ms. McNerney asserted her RESPA claim in the state trial court action. Based upon the Plaintiff's actions in this matter and in the state trial court, the statute of limitations should have been equitably tolled during the state court action and all appeals.

13.     The civil conspiracy in this action is evident from the facts that occurred in the State Court action.

14.     The loan transaction at issue in this matter was both procedurally and substantively unconscionable.

15.     The statute of limitations with respect to Ms. McNerney's TILA claim should also be equitably tolled.   Further, there are two separate TILA violations: (1) failure to provide the proper disclosures and (2) failure to release the security interest when she rescinded the transaction.

12-12020-mg    Doc 9280-4    Filed 10/23/15    Entered 10/23/15 16:32:18    Exhibit 3
part 2    Pg 177 of 222
Case: 1:09-cv-02383-LW    Doc #: 5    Filed: 10/23/11    1 of 3.    PageID #: 1891

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| HOMECOMINGS FINANCIAL, LLC | ) | CASE NO.: 1:09-cv-02383 |
| | ) | |
|       Plaintiff, | ) | JUDGE LESLEY WELLS |
| | ) | MAGISTRATE PERELMAN |
| v. | ) | |
| | ) | PATRICIA MCNERNEY'S |
| | ) | MEMORANDUM IN OPPOSITION TO |
| PATRICIA J. MCNERNEY | ) | TO PLAINTIFF'S MOTION |
| | ) | FOR SUMMARY JUDGMENT |
|       Defendant. | ) | |
| _____ | ) | |

NOW COMES, Patricia J. McNerney, the Defendant to the within action, and for her

Memorandum in Opposition to the Plaintiff's Motion for Summary Judgment pursuant to FED. R.

CIV. P. 56(c), does hereby respond and object to the Plaintiff's Motion, as there are genuine

issues of material fact that remain to be litigated.  The Memorandum in Opposition follows.

Respectfully submitted,

/s/ Susan M. Gray
**SUSAN M. GRAY** (0062356)
22255 Center Ridge Road, Ste 210
Rocky River, OH 44116
Tel. (440) 331-3949
Fax. (440) 331-8160
Email: smgray@smgraylaw.com

*Counsel for Ms. McNerney*

Case: 1:10-cv-02388-PLW   Doc #: 57   Filed: 10/23/15   1 of 51   PageID #: 1503

## MEMORANDUM IN OPPOSITION

## I.    STATEMENT OF PROCEDURE AND FACTS

Ms. McNerney vigorously disagrees with the Plaintiff's assertion as to undisputed facts. She certainly disagrees with the assertion that her counterclaims are time barred or lacking in evidentiary support.   As to the underlying facts, she disagrees that the closing occurred on 2/27/02.  In fact it occurred on 1/3/03.  Ex. 9 p. 121 lines 7-13.  This is relevant to the Truth in Lending Act claims.  She further disputes that she "retained" the broker.  In fact Homecomings paid the broker a marketing fee for bringing the loan to Homecomings.  Ex. 7 p. 138 lines 9-25; p. 139, lines 1-9.

The procedural history establishes that this matter would have been concluded years ago had the Plaintiff been forthright in the state court proceedings with respect to which party owned the Note and the Mortgage.

Between November 10, 2003, when the action was commenced with MERS as the plaintiff, until November 4, 2008 when Homecomings was substituted as the Plaintiff, there were two plaintiff substitutions while, all along, Homecomings in fact was the only owner of the loan. (Ex. 7 p. 98)  The matter then proceeded to a bench trial on November 13, 2008.

While the matter was pending, the Ohio Eighth District Court of Appeals announced its ruling in Wells Fargo Bk. v. Jordan, 2009-Ohio-1092 (8th Dist. Ohio March 12, 2009), which held that in order to have standing in a foreclosure action, a party plaintiff must show that it held the mortgage and note prior to filing its compliant.

As a result of *Jordan*, the trial court ordered Homecomings to provide the court with proof that the original plaintiff owned the subject promissory note on the date of filing its

1

complaint.  When Homecomings failed to comply with that order the trial court filed an order on

September 14, 2009, which stated:

> Despite being granted an extension of time to provide the court with evidence that
> it held the subject note at the time the instant case was filed, Plaintiff has been
> unable to comply.  Consequently, pursuant to the Court Order dated 06/30/2009,
> Wells Fargo Bank v. Jordan, 2009 OHIO 1092 (8TH DIST. CT. APP., MAR. 12,
> 2009) and Civil Rule 41(B)(1), the instant case is hereby dismissed, without
> prejudice.

See Exhibit 5.

Ms. McNerney timely appealed the dismissal of her claims to the Eighth District Court of

Appeals on October 13, 2009.  See State Appellate Docket, attached hereto as Exhibit 6, page 2.

On December 17, 2009, the Court of Appeals dismissed the appeal on the basis that the trial

court's order that dismissed the action without prejudice did not constitute a final, appealable

order.  Id. at 1.  Ms. McNerney then filed a motion to reconsider, which was then denied on

December 23, 2009.  Id.  She then timely appealed to the Ohio Supreme Court.  The Supreme

Court declined jurisdiction on April 14, 2010.  See Case Announcements, 2010-Ohio-1557.

While the appeal was still pending, the Plaintiff filed this action in this court on October

14, 2009.[1]  Ms. McNerney, with leave,  filed her Answer and Counterclaims on January 23,

2011.   In her Answer and Counterclaims, she asserted the following causes of action: (1)

Violations of the Truth in Lending Act, seeking enforcement of rescission, damages and

attorney's fees (¶¶ 126-142); (2) Violations of the Truth in Lending Act for failure to cancel the

security interest, return payments on the loan, damages and attorney's fees (¶¶144-151); (3)

Violations of the Real Estate Settlement Procedures Act (¶¶152-159); (4) Improvident Lending

(¶¶160-167); (5) Breach of Fiduciary Duty (¶¶168-179); (6) Negligence and Gross Negligence

(¶¶180-187); (7) Negligent and Intentional Misrepresentation (¶¶188-203); (8) Unconscionability

---

[1] This raises the question of whether this court had jurisdiction at the inception of this matter while the
same matter was pending in anther court that maintained jurisdiction under the priority jurisdiction rule.

2

(¶¶204-206); (9) Civil Conspiracy to Misrepresent (¶¶207-212); (10) violations of The Mortgage

Loan Broker Act, Ohio Revised Code Sec. 1322 (¶¶213-231); (11) Failure to Engage in Loss

Mitigation Efforts (¶¶232-234); (12) Fraud and Intentional and Negligent Misrepresentation

(¶¶235-269); (13) Breach of Fiduciary Duty (¶¶270-279); (14) Consumer Sales Practices Act

("CSPA")(280-287); (15) Civil Conspiracy to Commit Fraud on the Court (¶¶288-302); (16)

Civil Conspiracy to Commit Fraud (¶¶303-316); (17) Breach of Privacy (¶¶317-321) and (18)

violations of the CSPA (¶¶322-331).  It should be noted, however, that many of her factual

allegations precede the foregoing paragraphs. *See Counterclaims*, at ¶¶49-125.

This matter is before the Court upon Homecomings' motion for summary judgment as to

Counts 1, 2, 3, 5, 7, 8, 9, 10, 12, 13, 14 and 16.  Homecomings' motion is without merit and

should be overruled.

## II.    <u>LAW AND ARGUMENT</u>

"[S]ummary judgment is appropriate 'if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law.'" <u>Schreiber v. Philips Display

Components Co.</u>, 580 F.3d 355, 363 (6th Cir. 2009) (quoting Fed.R.Civ.P. 56).  In evaluating the

evidence, the court must draw all inferences in the light most favorable to the non-moving party.

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S 574 at 587 (1986).  "However, 'the

mere existence of a scintilla of evidence in support of the nonmoving party's position will be

insufficient to defeat a motion for summary judgment; there must be evidence on which the jury

could reasonably find for the' non-moving party." <u>White v. Baxter Healthcare Corp.</u>, 533 F.3d

381, 389 (6th Cir. 2008) (*quoting* <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 at 252 (1986)).

Homecomings is not entitled to judgment as a matter of law as genuine issues of material fact exist as to whether an agency relationship existed between Homecomings and the broker in this matter.  The facts suggest that such an apparent agency relationship did in fact exist between Homecomings and the broker.  As a result of that agency relationship, Homecomings would be liable to Ms. McNerney on the claims of breach of fiduciary duty (Claim 5, 13), negligent and intentional misrepresentation and (Claims 7 and 12) the Consumer Sales Practices Act violations (Claims 14 and 18) and the Ohio Mortgage Broker Act violations (Claim 10).  In addition, there exist genuine issues of material fact as to the application of equitable tolling of claims under the Truth in Lending Act and RESPA (Claims 1, 2 and 3) based upon the Plaintiff's actions in the state trial court.  Further, there are genuine issues of material fact as to whether the Plaintiff is liable to Ms. McNerney on the Unconscionability and conspiracy claims (Claims 8, 9 and 16).  Moreover, there are genuine issues of material fact as to the applicability of the Ohio savings statute and thus the timeliness of her breach of fiduciary duty claim, her CSPA claims and her fraud and misrepresentation claims.  Lastly, if any claim is barred by the applicable statute of limitations, those claims should be used to reduce Homecomings' claims under the theory of recoupment, as stated at paragraph 42 of her Answer and Affirmative Defenses.  Consequently, as there are genuine issues of material fact as to each cause of action stated in Ms. McNerney's Counterclaims, Homecomings is not entitled to judgment as a matter of law.  Accordingly, its motion for summary judgment should be denied.

A.     **An Agency Relationship Existed Between Homecomings and OMC Lending, the Broker In This Matter.**

The Sixth Circuit Court of Appeals noted:  An agency relationship may arise pursuant to several theories. First, actual agency occurs where a consensual relationship exists between the

agent and principal.[2]  Agency relationships may also arise from apparent agency or agency by estoppel. The principal's ratification of the unauthorized acts of another may also establish an agency relationship. Brainard v. American Skandia Life Assur. Corp., 432 F.3d 655, 661 (6th Cir. 2005) (citations omitted).  Any conflicting evidence as to the existence of an agency relationship is sufficient to overcome a motion for summary judgment.  See id. at 661.

In this matter, an agreement existed between Homecomings and OMC Lending to create a limited express agency.  See Plaintiff's Memorandum in Support, fn 3.  The agreement attempted to limit the agency relationship to OMC acting as Homecomings' agent for the sole and limited purpose of delivering notices of action taken as required by the Equal Credit Opportunity Action and Regulation B.  Id.  However, Plaintiff does not provide evidence that either it or  OMC Lending informed Ms. McNerney that their agency relationship was limited to the extent stated in their agreement.  Rather, Homecomings allowed OMC Lending to gather information on its behalf, enter underwriting data on its behalf into the FNMA desktop underwriting software (Ex. 7 p. 94, lines 12-25) and present documents to Ms. McNerney with Homecomings' name stated thereon.  These actions by Homecomings created an implied or apparent agency relationship.  Further, not only did OMC Lending purposely input into Homecomings' desktop underwriter incorrect and fraudulent information in order to make it appear as though Ms. McNerney would qualify for the loan at issue in this matter, but Homecomings was aware of the incorrect and fraudulent information and did not change it. (Ex 7 p. 102, lines 8-14; p. 103 lines 10-25; p. 104, lines 1-21; p. 101 lines 13-25;  p. 102 lines 1-15.)

---

[2] "A principal and agency relationship exists when one party exercises the right of control over the actions of another, and those actions are directed toward the attainment of an objective which the former seeks. But the manner in which the parties designate the relationship is not controlling, and if an act done by one person on behalf of another is in its essential nature one of agency, the one is the agent of such other notwithstanding he is not so called." Grigsby v. O.K. Travel, 118 Ohio App.3d 671, 675 (Ohio App. 1st Dist. 1997) (internal citations and quotations omitted.)

As such, Homecomings ratified OMC Lending's unauthorized and fraudulent act.    Whether express, apparent, or via ratification, an agency relationship existed between Homecomings and OMC Lending.    Because an agency relationship existed between Homecomings and OMC, Homecomings is liable for the unlawful acts of OMC Lending in furtherance of the consummation of the loan in this matter.    *See, e.g.,* <u>Comer v. Risko</u>, 106 Ohio St.3d 185, 2005-Ohio-4559, ¶ 20 (Ohio 2005) ("[t]he liability for the tortious conduct flows through the agent by virtue of the agency relationship to the principal").

### B.    <u>A Genuine Issue of Material Fact Exists As To Whether Homecomings Is Liable For Breach of Fiduciary Duty.</u>

#### 1.    <u>As principal, Homecomings is Liable for OMC Lending's Breach of Fiduciary Duty.    Further, as is noted below, Homecomings is liable for its own acts under a theory of civil conspiracy.</u>

A breach of fiduciary duty is established by:  (1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom. <u>Camp St. Marys Assn. of W. Ohio Conference of the United Methodist Church, Inc. v. Otterbein Homes</u>, 176 Ohio.App.3d 54, 68 (Ohio App. 3d 2008).  A claim of breach of fiduciary duty is essentially a claim for negligence with a higher standard of care. <u>All Star Land Title Agency, Inc. v. Surewin Invest.</u>, Inc., 2006-Ohio-5729, at ¶36 (Ohio App. 8th Dist. 2006).  Thus, it is a tort.

Some factors to consider include:  (1) whether the transaction was a commercial transaction; (2) whether each party protected its own interests; (3) whether the creditor was not acting solely in its own interest; (4) whether either party had a reasonable expectation that the creditor would act solely or primarily on behalf of the debtor; and (5) whether the borrowers were sophisticated enough to understand the risks associated with the transaction.  *See* <u>Ed Schory & Sons v. Francis</u>, 75 Ohio St. 3d 433, 442-443 (Ohio 1996).

6

Applying these factors, the following scenario is discerned:  This was not a commercial transaction; Ms. McNerney did not protect her own interest ( Ex. 8); OMC Lending was acting in the interest of itself and Homecomings (Ex. 7, p. 138); Ms. McNerney had a reasonable expectation that OMC Lending would act primarily on her behalf (Ex. 7 pp198-204; p. 229 lines 11-23)  (indeed, plaintiff insists that is the case (Plaintiff Brief p. 2)); and Ms. McNerney was not sophisticated enough to understand the risks associated with the transaction.  These conclusions are supported by the fact that Ms. McNerney did not know until the scheduled closing date (12/27/02) , that she would be required deplete her IRA account in order to complete the loan process or that OMC Lending was not acting on her behalf because OMC Lending, contrary to mandatory provisions of the Ohio Mortgage Broker Act, did not supply to her the notices that it was not working for her.  Ex. 9, p. 121; Ex. 7 pp. 199-200; Ex 7. p. 81 lines 6-11)

Ms. McNerney reposed confidence in the broker and thought the broker was acting in her best interest to obtain for her the best possible loan opportunity. In defiance of the requirements of the Mortgage Loan Broker Act, the broker fostered that confidence by  refusing to provide the disclosures that would have alerted Ms. McNerney that the broker was not working in her interest. (Ex. 7 p. 81)

The broker, as the agent of the plaintiff (or in a civil conspiracy with the plaintiff), worked to maximize their own profit at the expense of the safety and stability of Ms. McNerney and her children.  They misrepresented the terms of the transaction up until the final moment of closing; and withheld vital information that Ms. McNerney needed to evaluate her loan options. Consequently, through its agency relationship with OMC Lending, Homecomings is liable for the tortious conduct of its agent.  Thus, it owed a duty to Ms. McNerney and should be denied summary judgment  as a genuine issue of material fact remains to be litigated.

### 2.  **The Breach of Fiduciary Claim is Timely Under Ohio's Savings Statute.**

Ms. McNerney incorporates herein by this reference the argument set forth in her response to Plaintiff's motion for judgment on the pleadings, pp. 9 and 10 relevant to the statute of limitations.

Further, "the date for filing the new action relates back to the filing date for the preceding action for limitations purposes." Frysinger v. Leech, 32 Ohio St.3d 38, 42-43 (Ohio 1987). Lastly, the date of affirmance on appeal is the date the savings statute begins to run not the date the trial court dismisses the action.  LaBarbera v. Batsch, 5 Ohio App.2d 151, 159-160 (Ohio App. 8th Dist. 1966) (rev'd on other grounds by LaBarbera v. Batsch, 10 Ohio St.2d 106 (Ohio 1967)).

Each cause of action stated in the instant Counterclaim was asserted in the prior action, with the exception of the breach of privacy claim.  *See State Court Complaint,* Exhibit 1.At the time, each claim was asserted within the applicable statute of limitations.  When the trial court dismissed the entire action, the Ohio Savings statute was implicated.  As discussed in Ms. McNerney's memorandum in opposition to the Plaintiff's motion for judgment on the pleadings:

> The Supreme Court declined jurisdiction on April 14, 2010 and Ms. McNerney would then have had to file her counterclaims by April 14, 2011 in order for them to be timely under Ohio law.  As Ms. McNerney filed her Counterclaims of January 23, 2011, her Counterclaims are within the applicable statute of limitations and the savings statute.  Furthermore, "[i]n Ohio, a counterclaim asserted by the defendant against the plaintiff, which relates to the same transaction or occurrence asserted in the original claim, relates back to the original commencement of the action." Armstrong v. Harp Realty Co., 73 Ohio App. 3d 292, 294 (1991).  Consequently, Ms. McNerney filed her Counterclaims on the date of the Complaint, October 14, 2009.

Whatever standard that is used, whether it is a pure application of the Savings Statute or whether it is the date the action commenced, Ms. McNerney's state law claims – including the breach of fiduciary duty claim – are not barred by the statute of limitations.

Thus, Homecomings' motion with respect to this cause of action should be overruled.

**C.    As the principal, Homecomings Is Liable for CSPA Violations of Its Agent, OMC Lending.**

**1.    The CSPA claims are timely under Ohio's saving statute.**

The CSPA claims are timely under the same savings statute analysis. *See Savings Statute Argument, supra,* at Section B2.    As such, Homecomings' argument to the contrary must be overruled.

**2.    As principal, Homecomings is liable for its agent's violations of the Ohio Consumer Sales Practices Act.**

In Schaller v. Nat'l Alliance Ins. Co. (D.C. Ohio 2007), 496 F. Supp. 2d 890, the Court noted:

> The Ohio Consumer Sales Practices Act ("OCSPA") prohibits a person engaged in the business of effecting or soliciting consumer transactions from committing an unfair or deceptive act or practice in connection with those consumer transactions. Ohio Rev. Code Ann. §§ 1345.01(C), 1345.02(A). The term "consumer transaction" includes, among other things, sales, leases, assignments or services to individuals for purposes that are primarily personal, family, or household. Ohio Rev. Code Ann. § 1345.01(A). The term does not, however, include transactions between persons defined in § 5725.01. Ohio Rev. Code Ann. § 1345.01(A).

*ld.* at 901.    Likewise, R.C. 1345.03(A) prohibits any "supplier" from "commit[ing] an unconscionable act or practice in connection with a consumer transaction. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction."

A "supplier' is "a…person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer." R.C. 1345.01(C). Further, a "consumer transaction" is "a sale,…a service, …, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." R.C. 1345.01(A).

The Consumer Sales Practices Act "exclude[s] from its coverage all transactions between financial institutions, including banks, and their customers. *See* R.C. 1345.01(A) and R.C. 5725.01." ABN AMRO Mortg. Group, Inc. v. Amold, 2005-Ohio-925, ¶ 29. However, there is an exception: civil conspiracy and by analogy, agency. *See, e.g.,* Schaller v. Nat'l Alliance Ins. Co. 496 F. Supp. 2d 890, 903 (S.D. Ohio 2007) (inferring if the plaintiff could maintain a claim for any of the underlying unlawful acts, e.g., CSPA, against either defendant, the claim for conspiracy could be maintained). Further, the violation of the CSPA is akin to a tort. *See, e.g.,* Blankenship v. CFMOTO Powersports, Inc., 2011-Ohio-948, ¶ 11, 2009 CVH 1340 (OHMISC Ohio C.P. Clermont 2011) (discussing CSPA is akin to a tort). As such, Homecoming is liable for its agent's violations of the CSPA.

Under Ohio law, mortgage broker services fit the definition of a supplier and a consumer transaction. Equicredit Corp. of Am. v. Jackson, 2004-Ohio-6376, ¶ 46 (Ohio App. 7th Dist.). Further, R.C. 1345.03(B)(4) makes it a violation of the Act if "the supplier knew at the time the consumer transaction was entered into that there was no reasonable probability of payment of the obligation in full by the consumer."

OMC Lending intentionally entered the wrong information into the FNMA Desktop Underwriter software to ensure Ms. McNerney would qualify for a loan she could not afford. (Ex 7 pp 82-94 and p. 114; Ex 11)This is evident because Ms. McNerney could not even make the first payment. (Ex 7 p. 98) What is more, when Ms. McNerney went to the lender in this matter to attempt a workout, shortly after default, the lender responded that she did not qualify because of insufficient income. *See* Exhibit 8. Further, OMC Lending unquestionably violated the CSPA by failing to provide the disclosures mandated by the Mortgage Loan Broker Act, by affirmatively misrepresenting the terms of the loan, by obtaining an kickback from

Homecomings for making the loan, and by affirmative concealing from Ms. McNerney information she needed to understand her choices. Consequently, as OMC Lending has violated the CSPA, then Homecomings, as the principal can be held liable for its agent's violations thereof. Accordingly, Homecomings' motion should be overruled with respect to this argument.

     **D.**    **As the principal, Homecomings is liable for its agent's fraud, intentional misrepresentation and negligent misrepresentation.**

        **1.**   **OMC Lending negligently and/or intentionally misrepresented terms in connection with the loan that is the subject of this matter.**

A cause of action for negligent misrepresentation is defined by the following scenario:

> "One who, in the course of his business, profession, or employment, or any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, [and is therefore] subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

Crown Property Development, Inc. v. Omega Oil Co., 113 Ohio App.3d 647, 656 (Ohio App. 12th Dist. 1996), quoting Haddon View Invest. Co. Coopers & Lybrand , 70 Ohio St.2d 154 (Ohio 1982).  As such, the essential elements for negligent misrepresentation are false information and justifiable reliance.  Zuber v. Ohio Ins. Dept., 34 Ohio App.3d 42, 45 (1986). Reliance is justified if the representation does not appear unreasonable on its face and if, under the circumstances, there is no apparent reason to doubt the veracity of the representation.  Lepara v. Fuson , 83 Ohio App.3d 17, 26 (1992).

A claim for fraudulent misrepresentation requires: (1) a representation, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the

12-12020-mg   Doc 9280-4   Filed 10/23/15   Entered 10/23/15 16:32:18   Exhibit 3
part 2   Pg 189 of 222
Case: 1:10g-cv-02389-LW   Doc #: 57-1 Filed: 10/28/11 198 of 152. PageID #: 1908

representation or concealment, and (6) a resulting injury proximately caused by the reliance. *See*

Burr v. Stark Cty. Bd. of Commrs., 23 Ohio St.3d 69, 73 (1986).  Again, Homecoming is liable

for its agent's unlawful actions that it ratified.

OMC Lending negligently and/or intentionally misrepresented the availability of a loan

with a payment in the amount of $850.00 including escrow for taxes and interest; (Ex. 7 pp 204

and 209) it concealed the imposition of private mortgage insurance until the last minute; (Ex. 9,

p. 121; Ex 7 pp. 199-200); it concealed that the lender on the refinanced loan would offer a better

deal for her (Ex. 7 p. 199; Ex. 9. p. 121; Ex. 7 p. 44, 45, and 115-116; it concealed that she did

not qualify for the loan product offered to her. (Ex. 7, pp 102-104).  In addition, the broker and

lender were grossly negligent in using false information to qualify Ms. McNerney for a loan

based on false information with a payment requirement that that could only result in foreclosure

on the real and clearly known facts. Ms. McNerney relied upon all this information believing that

she was getting the best loan for her, that she could afford it, and it would fulfill all the purposes

for refinancing the loan in the first place.

### 2. The Fraud and Misrepresentation Claims Are Timely Under the Savings Statute Analysis.

The fraud and misrepresentation claims are also timely under the same savings statute

analysis.  Further, if the claims are not timely, they can be advanced under a theory of

recoupment.  *See Savings Statute Argument, supra,* at Section B2.

### E. Homecomings, as the principal, is liable for its agent's violations of the Ohio Mortgage Broker Act.

The Mortgage Broker Act, RC. § 1322.01, *et seq*., requires brokers, to deliver to the

borrower a mortgage loan origination disclosure statement that describes the method by which

the fee to be paid by the buyer to the broker will be calculated, RC. § 1322.062(A)(1)(f), and a

12-12020-mg   Doc 9280-4   Filed 10/23/15   Entered 10/23/15 16:32:18   Exhibit 3
part 2   Pg 190 of 222
Case: 1:10-cv-02383-DW   Doc #: 37-5 Filed: 10/23/11 2 of 12. PageID #: 1900

statement that the lender may pay compensation to the broker. R.C. § 1322.062(A)(1)(g).   In addition, R.C. § 1322.07(B) prohibits, a broker from "[m]ak[ing] false or misleading statements of a material fact, omissions of statements required by state law, or false promises regarding a material fact, through advertising or other means, or engage in a continued course of misrepresentations." Violations of the act can result in damages. RC. § 1322.11.   As violation of the CSPA is akin to a tort, so is a violation of the Mortgage Broker Act. *See, supra*, C2.

The Act requires specific disclosures designed to put Ms. McNerney on notice that the broker was not her agent and to alert Ms. McNerney that the broker was be compensated by the lender and thus was the agent of the lender. Ms. McNerney is entitled to statutory and actual damages as set forth in that act.  As OMC Lending failed to make these disclosures, (Ex. 7. p. 81) it violated the Act.  As the principal, Homecomings is liable for its agent's violations of the Act.  Homecomings' motion with respect to this argument should likewise be overruled.

**F.      Ms. McNerney asserted her RESPA claim in the state trial court action. Based upon the Plaintiff's actions in this matter and in the state trial court, the statute of limitations should have been equitably tolled during the state court action and all appeals.**

In Glus v. Brooklyn Eastern Terminal,  359 U.S. 231 (1959), Glus claimed Brooklyn was estopped to plead the three year statute of limitations because Brooklyn had induced the delay by representing to him that he had seven years in which to sue.  Id. at 232-33.  The Court noted the following:

> To decide the case we need look no further than the maxim that **no man may take advantage of his own wrong.** Deeply rooted in our jurisprudence this principle has been applied in many diverse classes of cases by both law and equity courts and has frequently been employed to bar inequitable reliance on statutes of limitations.

Id. (Emphasis added).  The Court went on to quote Justice Miller in Insurance Co. v. Wilkinson, 13 Wall. 222, 233:

> The principle is that, where one party has, by his representations **or his conduct**, induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he would not, in a court of justice, be permitted to avail himself of that advantage. And, although the cases to which this principle is to be applied are not as well defined as could be wished, the general doctrine is well understood, and is applied by courts of law as well as equity **where the technical advantage thus obtained is set up and relied on to defeat the ends of justice or establish a dishonest claim.**

Id. at 233 (emphasis added).

Later, in Burnett v. New York Central R.R. Co., 380 U.S. 424, (1965) the Court noted that "[t]he basic question to be answered in determining whether, under a given set of facts, a statute of limitations is to be tolled is one "of legislative intent whether the right shall be enforceable . . . after the prescribed time." Id. at 426 (quoting Mid-state Horticultural Co. v. Pennsylvania R. Co., 320 U.S. 356, 360 (1943). "[T]he basic inquiry is whether congressional purpose is effectuated by tolling the statute of limitations in given circumstances." Id. at 427. Consequently, the Court ruled that

> [W]hen a plaintiff begins a timely FELA action in a state court having jurisdiction, and serves the defendant with process and plaintiff's case is dismissed for improper venue, the FELA limitation is tolled during the pendency of the state suit. . . We further hold, under familiar principles which have been applied to statutes of limitations, that the limitation provision is tolled until the state court order dismissing the state action becomes final by the running of the time during which an appeal may be taken or the entry of a final judgment on appeal.

Id. at 434-35.  There is no doubt that the same principles should apply to Ms. McNerney's RESPA claims that were timely brought in state court and dismissed through no fault of her own. RESPA is a remedial statute an should be construed liberally;  there is no question that tolling the statute of limitations would be proper.  *See, e.g.,* Alston v. Countrywide Fin. Corp., 585 F.3d 753, 764 (3d Cir. 2009 ("RESPA is remedial and should be construed broadly"). *See also*, Carter v. Welles-Bowen Realty, Inc. (In re Carter), 553 F.3d 979, n5 (6th Cir. 2009) (discussing there is little doubt as to the remedial nature of RESPA given Congress' findings of the need of reform in

real estate settlement procedures).  Further, Ms. McNerney did "did not sleep on [her] rights, but brought an action within the statutory period in the state court of competent jurisdiction."  *See* Burnett, 320 U.S. at 429.  The counterclaims  "notif[ied] [it] that [Ms. McNerney] was asserting [her] cause[s] of action."  Id. Plaintiff's wrongdoing resulted in the dismissal of the counter claim which  Ms. McNerney tried to save through the appropriate appellate process, against which effort  Homecomings fought tooth and nail.  It would be inequitable for Homecomings to use the statute of limitations under RESPA when it caused the dismissal of Ms. McNerney's claims.  This is the very type of inequity the Court sought to remedy in *Burnett*.  Homecomings' argument should thus be overruled so that it cannot have  advantage of its own wrong.

### G.   The Civil Conspiracy In This Action Is Evident From the Facts that Occurred in the State Court Action.

Civil conspiracy is a malicious combination of two or more persons acting to injure another in person or property, in a way not competent for one person acting alone, which results in actual damages. Williams v. Aetna Finance Company, 83 Ohio St. 3d 464, 475 (Ohio 1998). To state a claim for civil conspiracy, there must be an underlying unlawful act.  Id. (citing Gosden v. Louis, 116 Ohio App.3d 195, 219 (Ohio App. 9th Dist. 1996). In this case, torts of fraud, violations of the Consumer Sales Practices Act and violations of the Mortgage Brokers Act, satisfy as wrongful acts.  The malice required in a civil conspiracy is "that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another." Pickle v. Swinehart, 170 Ohio St. 441, 443 (Ohio 1960).  "[M]alice may be inferred from or imputed to a common design by two or more persons to cause harm to another and need not be proven separately or expressly." Fuller and Associates v. Heil Windermere Moving and Storage Co., 2005-Ohio-2599 (Ohio App. 5th Dist. 2005). Proof of a

Case: 1:11-cv-02389-DCN    Doc #: 13-11    Filed: 10/28/11    Page #: 1010

malicious combination to injure another does not require a showing of an express agreement, but only a common understanding or design, even if tacit, to commit an unlawful act. Id.

Both the broker and Homecomings needed the lender to fund the loan so the broker could get its fee/kickback from Homecomings. Homecomings needed the broker to steer borrowers to it so that it could generate loan products for sale on the secondary market.

Homecomings and the broker acted in concert. Both independently reviewed all verification of income and assets, and both independently reviewed the information in the FNMA desktop underwriter. Both knew that they had entered false information in the desktop underwriter in order to obtain FNMA approval for the loan. At the close of day, the broker received a large fee amounting to over $6,000.00 and Homecomings had a product for sale on the secondary market. The "dupes" were meant to be FMNA and Ms. McNerney. FNMA would get a non-performing loan, and its only recovery would be through a claim on the private mortgage insurer (also an intended dupe) and foreclosure on the home. Ms. McNerney would lose her home. (Ex. 11)

### H. The Loan Transaction At Issue In This Matter Was Both Procedurally and Substantively Unconscionable.

"There are two prongs that must be met for a successful claim of Unconscionability, substantive Unconscionability and procedural Unconscionability." Manley v. Personacare of Ohio, 2007-Ohio-343, ¶14. The Court in *Manley* continued:

> A substantive unconscionability analysis considers whether the actual terms of the contract are commercially reasonable. Procedural unconscionability involves those factors bearing on the relative bargaining position of the contracting parties, including their age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, and whether alterations in the printed terms were possible.

Id. (Citations and quotation marks omitted).

The note is void and unenforceable because the loan itself is unconscionable. *See* American Vitrified Prods. V. On Application to Certify Crooks, 20 Ohio L. Abs. 627 (1935) (discussing a contract that is unconscionable is void). *See also*, Tymshare, Inc. v. Covell, 727 F.2d 1145, 1153 (D.C. Cir. 1984) (discussing provisions of a contract which are unconscionable are void); Westchester Mort. Co. v. Grand Rapids and Ionia R.R. Co., 213 N.Y.S. 593, 599 (N.Y. 1926) (court held agreement unconscionable and void); R.C. § 1302.15 (goods) ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract").

Only by falsifying the facts could Homecomings obtain approval from FNMA for the loan. Even with the facts as falsely stated, the loan was viewed as a high risk loan, as it was only approved under the expanded approval process, and required the imposition of private mortgage insurance. (Ex. 7 pp. 95 and 114).  But as established at trial, the facts had to be falsified in two respects in order to achieve the approval under even the expanded approval level III provisions. The projected income over the next three years was overstated by *$400.0 a month,* and the funds in Ms. McNerney's IRA were described as directly available, which is not true of funds in an IRA. Ms. McNerney barely met expanded approval on false facts, and did not meet the requirements at all on her true facts. Homecomings' underwriter reviewed and approved the underwriting with all accurate documents in hand. Homecomings knew the information was false and made the loan in spite of that, hoping to be rid of the loan before the inevitable default. The default and foreclosure that followed was the inevitable outcome of this unsustainable loan. The fact that the loan is unsustainable is confirmed by Homecomings itself, when it refused to accept a loan modification on the grounds that there was insufficient income to support a modification.

17

(Ex. 8). This loan left Ms. McNerney far worse off than she would have been had no loan been made. Her IRA, her only asset, was reduced by $8,150.00. Her payment was essentially the same. She lost the opportunity for the offer of better terms from the lender she had. Also, she lost the opportunity for better terms from her personal bank, which opportunity she only refrained from pursuing because of assurances that Homecomings could provide the same terms for less trouble and in less time.

I.    **The statute of limitations with respect to Ms. McNerney's TILA claim should also be equitably tolled.    Further, there are two separate TILA violations: (1) failure to provide the proper disclosures and (2) failure to release the security interest when she rescinded the transaction.**

The Truth in Lending Act is remedial and must be construed liberally in favor of consumers. Inge v. Rock Financial Corp., 281 F.3d 613, 621 (6th Cir. 2002) (citing Begala v. PNC Bank, Ohio, Nat'l Ass'n, 163 F.3d 948, 950 (6th Cir. 1998); Murphy v. Household Fin. Corp., 560 F.2d 206, 210 (6th Cir. 1977); and N.C. Freed Co., Inc. v. Bd. of Governors of the Fed. Reserve Sys., 473 F.2d 1210, 1214 (2d Cir. 1973). The Court in Jones v. TransOhio Sav. Ass'n, 747 F.2d 1037 (6th Cir. 1984) held "that the statute of limitations for actions brought under 15 U.S.C. Sec. 1640(e) is subject to equitable tolling in appropriate circumstances." Based upon the same reasons stated with respect to her RESPA claim, in addition to well-established law in this Circuit, Ms. McNerney contends that her TILA claims were also tolled during the pendency of the state court action through the appeal process.

Ms. McNerney is entitled to statutory damages based on the plaintiff's violations of the law of truth in lending in that it failed to provide clear and conspicuous material disclosures she needed to evaluate the terms of the loan, and failed to provide clear and conspicuous notice of her right to rescind. 15 U.S.C. §§ 1631, 1632 and 1635. Ms. McNerney is entitled to a second

18

award of statutory damages based on the plaintiff's failure to respond as required under 15 U.S.C. Sec. l635(b) when she rescinded the transaction.

In this matter, Ms. McNerney received two conflicting and inconsistent settlement statements (Trial trans. p. 245, lines 13-45; p. 246, lines 1-23; Ex. F), as well as conflicting and inconsistent truth in lending disclosure statements. (Trial Trans. pp. 242-255; Ex. F). Also among those documents was a single notice of right to cancel informing her that her notice of right to cancel expired four days before closing on 12/31/2008 (Trial trans, pp. 242-255; p. 249, lines 17-21; Ex. F).  Lastly, the notice of right to cancel, the 39th page in a stack of pages that required signature or initials, was so confusing that even as of the date of trial, Ms. McNerney, asked directly to state the deadline to cancel, chose a date that was wrong. (Trial trans. p. 249) In Rudisell v. Fifth Third Bank, 622 F.2d 243, (6th Cir. 1980),

> **The statute clearly does not require the debtor to tender first.** It contemplates the creditor tendering first. But upon the creditor fulfilling its obligations under the statute, the debtor then must tender. Since rescission is an equitable remedy, the court <u>may</u> condition the return of monies to the debtor upon the return of property to the creditor.

Id. at 254 (citations omitted, emphasis added).

## III    Conclusion:

For all of the reasons set forth above, Plaintiff's motion for summary judgment should be denied.

<div style="margin-left: 40%;">

Respectfully submitted,
/s/ Susan M. Gray
**SUSAN M. GRAY** (0062356)
22255 Center Ridge Road, Ste 210
Rocky River, OH 44116
Tel. (440) 331-3949
Fax. (440) 331-8160
Email: smgray@smgraylaw.com

*Counsel for Ms. McNerney*

</div>

## <u>PAGE LIMIT CERTIFICATION</u>

This action has been assigned to a standard case management track and this

memorandum complies with the page limitations set forth in Local Rule 7.1(f).


/s/ Susan M. Gray (0062356)
Counsel for Ms. McNerney

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was filed electronically on October 28, 2011, with the clerk of the court for the U.S. District Court, Northern District of Ohio, Eastern Division pursuant to Local Rule CV-5(a) and with the expectation that such pleading will be served via the Court's electronic case filing system on all counsel who have consented to electronic service via the Court's ECF system.

/s/ Susan M. Gray
**SUSAN M. GRAY** (0062356)

**Exhibit L**

**CoreLogic Field Services**
1 First American Way
DFW5-5
Westlake, TX 76262
1-800-873-4532

| Inspections Work Order Completion Form | | | | |
|---|---|---|---|---|
| **ACCOUNT NUMBER** | **GUARANTOR** | **WORK ORDER NUMBER** | **ORDER CATEGORY** | **VENDOR ID** |
| 9939 | CONV | 224238239 | Property Inspection - No Contact | 29729 |

**MORTGAGOR**
PATRICIA MCNERNEY
1241 THOREAU ROAD
LAKEWOOD, OH 44107-

---

**1. INSPECTION DATE**
Date (MM/DD/YY):
11/03/10

**02. INVALID ADDRESS**
Not Applicable

**03. HAS ADDRESS CHANGED?**
Not Applicable

**04. VIOLATION**
Is Violation posted?
● 01: Yes
**\* If yes, describe Violation.**
Condemned 10/12/10

**05. OCCUPANCY**
● 05: Vacant & Locked

**06. OCCUP.DETERMINED BY**
● 02: Visual

**07. NEIGHBORHOOD CONDITION**
● 01: Stable

**08. PROPERTY CONDITION**
● 02: Fair

**09. CONSTRUCTION**
● 01: Frame

**10. FOR SALE**
For Sale?
● 02: No

**11. STRUCTURE TYPE**
● 01: Single Family

**12. UTILITIES ON**
Electricity:
● 11: No
Gas:
● 21: No
Water:
● 30: Yes

**13. DAMAGE**
● 01: Yes
**Condition Of Property**
● 01: Minimal Damage
**Is property habitable?**
● 02: No
**Is yes check those that apply:**
■ 12: Neglect
● 31: Damage Over $2,000

**14. GARAGE**
● 01: Yes
● 04: Detached

**15. PERSONAL PROPERTY**
● 01: Yes
Interior?
● 04: Yes

**16. POOL/HOT TUB**
**\* Complete Boxes 16,17 if Vacant only**
● 02: No

**17. PRESERVATION NEEDED**
● 01: Yes
■ 03: Change / Replace Locks
■ 05: Cut Grass
● 07: Over 6 Inches
■ 09: Winterize
■ 11: Remove Debris

---

| 26.GENERAL COMMENTS |
|---|

**Comments:**
BEIGE FRAME HOME. FTV. HOME HAS BEEN CONDEMNED 10/12/10. DECK HAS DAMAGE. INTERIOR NOT VISIBLE DUE TO PLASTIC OVER WINDOW. HOME APPEARS FILLED W DEBRIS/PERSONALS/GARBAGE water on

| 27.CALL BACK CARD |
|---|

Name:    PATRICIA MCNERNEY        Account:            Date:    /    /

Please Call:            Contact:            At: #

**Notice:**    Our Representative called on you today while you were out. There is an important matter we would like to discuss with you. This inspection is not in any way an attempt to collect a debt.

**Exhibit M**

CoreLogic Field Services
1 First American Way
DFW5-5
Westlake, TX  76262
1-800-873-4532

## Maintenance Work Order Completion Form

| ACCOUNT NUMBER | GUARANTOR | WORK ORDER NUMBER | ORDER CATEGORY | VENDOR ID |
|---|---|---|---|---|
| ▓9939 | CONV | 224706391 | Special Request (Preservation) | 31177 |

**MORTGAGOR**
PATRICIA MCNERNEY
1241 THOREAU ROAD
LAKEWOOD, OH 44107-

### GENERAL PROPERTY INFORMATION

| | | | |
|---|---|---|---|
| Preservation work completed assigned ? | ● Yes ○ No | Entire Property in Conveyance Condition ? | ○ Yes ● No |
| Property Damaged ? | ○ Yes ● No | Property vacant on arrival ? | ● Yes ○ No |
| Did you attach the estimate sheet ? | ○ Yes ● No | Property secure on arrival ? | ○ Yes ● No |
| Was securing sign posted ? | ○ Yes ● No | Property secure on departure ? | ● Yes ○ No |

| Contact Made? | Property Type |
|---|---|
| ● Did not make contact<br>Describe<br>vacant | ● SFH<br><br>Any personal property in any vacant units ?<br>no personals |

### UTILITIES

Gas On: No        Water On: No        Sump Pump: No        Electicity On: No        Operational: No

### PROPERTY SPECIFIC INFORMATION

| Occupancy | Preservation Needed | Location of Damage |
|---|---|---|
| ● Vacant | ■ Exterior Debris | **Not Applicable** |
| **Pool Information** | ■ Interior Debris | **Cause of Damage** |
| Type of Pool | ■ Interior Health Hazard | **Not Applicable** |
| ● No Pool | **Damage** | **Estimated Costs (Repairs & Personals)** |
| Fence Around Pool | **Not Applicable** | Estimated repair cost |
| Secured | | Estimated value of personals |
| **Preservation Completed** | | **Not Applicable** |
| ■ Extermination | | |
| **Signage** | | |

### LOCK CODES

### WORK ORDER COMPLETION DETAIL

**Not Applicable**

### COMMENTS AND EXPLANATIONS

Please note the completed items and state quantities if applicable. If services not listed and/or rendered please provide completions and/or explanations in coments below: (entry limited to 4,000 characters).

Met with Ms. Schickler at property and completed walk through per work order instruction.

### ORDER COMPLETION

■ This Order is complete
Completion Date: 11/30/2010        Was debris and\or hazardous material removed that was taken to a dump facility as required?        ○ Yes ● No

Loan Number          9939          Work Order                          
Property Address    1241 THOREAU ROAD
                    LAKEWOOD, OH 44107





**Category :** Property Condition    **Category :** Property Condition    **Category :** Property Condition    **Category :** Property Condition
**Description :** Property Condition - Exterior    **Description :** Property Condition - Exterior    **Description :** Property Condition - Exterior    **Description :** Property Condition - Exterior






**Category :** Property Condition    **Category :** Property Condition    **Category :** Property Condition    **Category :** Property Condition
**Description :** Property Condition - Exterior    **Description :** Property Condition - Exterior    **Description :** Property Condition - Exterior    **Description :** Property Condition - Exterior






**Category :** Property Condition    **Category :** Property Condition    **Category :** Property Condition    **Category :** Property Condition
**Description :** Property Condition - Exterior    **Description :** Property Condition - Exterior    **Description :** Property Condition - Exterior    **Description :** Property Condition - Interior






**Category :** Property Condition    **Category :** Property Condition    **Category :** Property Condition    **Category :** Property Condition
**Description :** Property Condition - Interior    **Description :** Property Condition - Interior    **Description :** Property Condition - Interior    **Description :** Property Condition - Interior






**Category :** Property Condition    **Category :** Property Condition    **Category :** Property Condition    **Category :** Property Condition
**Description :** Property Condition - Interior    **Description :** Property Condition - Interior    **Description :** Property Condition - Interior    **Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior



**Category :** Property Condition
**Description :** Property Condition - Interior

## Exhibit N



Exhibit 3

# CORRECTION NOTICE

**ATTACHMENT A**

12650 Detroit Avenue • 44107

Building Commissioner:     (216) 529-6270
Commercial Division:          (216) 529-6278
Housing Division:               (216) 529-6285
Fax:                                     (216) 529-5930
www.onelakewood.com

PATRICIA JOANNE KELLICKER
13610 DETROIT AVE #ABW
LAKEWOOD OHIO 44107

**DATE: 10-12-10**
ZONING DISTRICT:           **R2**
TYPE OF STRUCTURE:      **2.5 S.F.**
AUTHORIZED OCCUPANCY:   **1 D/U**
PRESENT OCCUPANCY:      **VACANT**

RE:    **1241 THOREAU AVE**
    THIS LETTER DOES NOT VOID ANY OTHER

PARKING SPACES AVAILABLE: 1 GARAGE  2 OPEN

| TYPE OF INSPECTION: | ☐ Annual  • | ☐ Certificate of Occupancy  • | ☒ Complaint  • | ☐ DCD Program |
|---|---|---|---|---|

Dear M/M **KELLICKER**:

A recent inspection of the above noted property disclosed the following corrections are necessary for safe, sanitary, and proper maintenance standards as required by the Codified Ordinances of the City of Lakewood (Ord. 85-78).
The personnel of the Division of Housing and Building want to cooperate with you in keeping this city a fine place to reside. Efforts in maintaining this property are appreciated. The enforcement of Lakewood's Codes is critical to the future of our city, and our department is prepared to work with you to make the following corrections.
FAILURE TO COMPLY BY THE SPECIFIED DATES MAY RESULT IN THE FILING OF A CRIMINAL COMPLAINT IN THE MUNICIPAL COURT.

## EXTERIOR CORRECTIONS

☐ 1. Remove unlicensed/immobile vehicle (1143.09)

☐ 2. Cease parking on lawn (1143.02(f))

☐ 3. Remove unapproved furniture from porch/patio/deck (1306.31)

☐ 4. Remove debris/unsightly material from yard area(s) (1306.31)

☐ 5. Remove debris/unsightly material from porches (1306.31)

☐ 6. Store firewood 8 inches above grade (1779.01(d))

☐ 7. Provide house numbers a minimum of 4" high (1313.04(b))

☐ 8. Provide sufficient garbage/rubbish containers with lids (1306.26/27)

☐ 9. Remove dead tree/branches (1306.31)

☐ 10. Maintain lawn/landscaping (1306.31)

☐ 11. Provide/repair/replace steps (1306.30(b)(1))

☐ 12. Provide materials that match and conform (1306.30(b)(2))

☐ 13. Provide/maintain gutters/downspouts (1306.29(c))

☐ 14. Seal downspouts to storm sewer (1306.29(c))

☐ 15. Maintain/provide lattice (1306.30(b)(1))

☐ 16. Repair/replace porch decking/trim (1306.30(b)(1))

☐ 17. Provide/maintain porch ceiling/pillars/rails (1306.30(b)(1))

☐ 18. Maintain/provide doors/windows/screens (1306.25/29(d))

☐ 19. Repair soffit/fascia (1306.30(b)(1))

☐ 20. Maintain Siding (1306.30(b)(1))

☐ 21. Repair/Replace roof (1306.29(c))

☐ 22. Maintain foundation/exterior walls (1306.29(a))

☐ 23. Maintain chimney (1306.30(a))

☐ 24. Repair/replace driveway/service walk (1306.31)

☐ 25. Maintain fence (1306.31)

☐ 26. Maintain living fence 3 ft. maximum height (1153.02)

☐ 27. Raze and rebuild/repair garage (1306.30(b))

☐ 28. Maintain garage/siding/trim/windows/doors (1306.30(a))

☐ 29. Paint exterior surfaces where weathered/peeling (1306.30(c))

☐ 30. Paint/stain steps/porch (1306.30(c))

☐ 31. Paint/stain bare/new surfaces (1306.30(c)(3))

☐ 32. Provide/maintain handrail on stairs (1306.29(e))

☐ 33. Remove cooking appliance/device from porches (1306.31/60)

☐ 34. Remove temporary holiday lighting (1306.22)

**CITY OF LAKEWOOD CORRECTION NOTICE  P. 2    DATE: 10-12-10  Re: 1241 THOREAY AVE**

# INTERIOR CORRECTIONS

☐ 35. Provide/maintain automatic door closures (1306.55)

☐ 36. Provide/maintain fire-rated doors (1306.55)

☐ 37. Maintain emergency lighting/exit signs (4101:3401.2)

☐ 38. Provide/maintain CO detector within 24 hours. CO detector shall be hard wired or 110 v A.C.(plug in) (1331.01(d))

☐ 39. Provide/maintain smoke detector within 24 hours.  Smoke detectors shall be hard-wired or sealed, tamper proof, long life battery type. (1331.01(a))

☒ 40. Maintain Window(s) operable/in good repair (1306.29(d))  **kit.**

☐ 41. Maintain interior doors operable (1306.32(a))

☒ 42. Repair plaster (1306.29(k))  **btrm**

☐ 43. Maintain walls/floors/ceiling structurally sound (1306.29(a))

☒ 44. Provide/maintain handrail for all stairs (1306.29(e)) **throughout**

☐ 45. Maintain bath floor/walls impervious to water (1306.29(h))

☒ 46. Remove debris from interior (1306.29(k)) **throughout**

☒ 47. Provide/maintain approved heating facilities (1306.18/19)  **clr**

☐ 48. Provide dirt leg for HWT/furnace (1306.29(i))

☒ 49. Provide proper pitch of flue pipe (1306.29(i))  **clr hwt**

☐ 50. Seal flue pipe at chimney (1306.29(i))

☐ 51. Provide approved flue pipe material (1306.29(i))

☐ 52. Provide full size HWT T & P valve runoff pipe (1306.29(i))

☒ 53. Maintain plumbing fixture(s) (1306.29(g)(8)) **throughout**

☐ 54. Replace waste pipes (1306.29(g)(7))

☐ 55. Repair/replace water supply pipes/valves (1306.29(g)(4))

☒ 56. Bond the water meter (NEC 250.68(B)) **clr**

☒ 57. Provide approved installation of elec. conductors (NEC 300.4) **clr at furnace**

☐ 58. Eliminate improper splices (NEC 300.15)

☐ 59. Eliminate extension cord used as permanent wiring (NEC 400.8)

☐ 60. Eliminate dead end wiring/exposed live parts (NEC 90.4)

☐ 61. Replace broken/missing switch/receptacle covers (NEC 406.5/404.9(A)

☐ 62. Correct reverse polarity/grounding of receptacle (NEC 200.1/250.146)

☒ 63. Maintain receptacles/switches/fixtures (1306.22) **attic**

☐ 64. Ground three-prong receptacle(s) (NEC 406.3(B))

☐ 65. Seal unused openings in all boxes/panels (NEC 110.12(A))

☐ 66. Provide covers to all junction boxes (NEC 314.28(C))

☐ 67. Remove two wires under one lug (NEC 110.14(A))

☐ 68. Maintain/provide G.F.C.I. receptacle(s) (NEC 210.8(A)and(B))

☐ 69. Ground all panel boards (NEC 250.80 & 408.40)

☐ 70. Reduce fuses to 15/20/30 amperes (NEC 240.4(d)

☐ 71. Provide equipment grounding bar (NEC 408.40)

☐ 72. Provide grounded receptacle for appliances (NEC 250.114)

☐ 73. Secure elec. equipment to surface (NEC 110.13(A)

☐ 74. Provide working clearance at electrical equipment  (NEC 110.26(A)(1)

☐ 75. Secure required permit (1306.62)(1306.63)

☐ 76. Secure/post the housing license (1306.43(a)) (1306.45)

☐ 77. Provide/post the custodian's name, hours & location (1306.33(c))

☐ 78. Provide for re-inspection at _____ on _____ (1306.50)

# CITY OF LAKEWOOD CORRECTION NOTICE  P. 3      DATE: 10-12-10  Re: 1241 THOREAU AVE

☒ 77. Provide approved gas line to hot water tank (g2422.1)

☒ 78. At time of inspection there was no utilities. ie; water or electricity

☒ 79. No owner, operator or agent shall occupy, maintain or lease or offer for rental or lease any vacant dwelling, dwelling unit or occupiable structure
unless it s clean, sanitary and fit for human occupancy(1306.29[k])

☒ 80. This property is a public nuisance under city of Lakewood ordinance 40-09, Section 1306.521 and 1306.522

☐ 81.

☐ 82.

If you have any questions on complying with the aforementioned correction(s)noted by (**X**) **all**  by **11-12-10** ; correction(s)          by

     ; and correction(s)          by          , or if I may be of any assistance, do not hesitate to contact me.

Property owners may qualify for financial assistance for major building corrections.  Please contact the Division of Community Development
at (216) 529-4663 for information about financial assistance.

This was a VISUAL INSPECTION.  The city assumes no liability or responsibility for failure to report violations that may exist and makes no
guarantee whatsoever that future violation(s) cannot or will not occur.

Prior to the start of work, permits are required for electrical, plumbing, heating, air conditioning, building, fencing, paving, and/or demolition
work.

Thank you for your anticipated cooperation.

**Phone: 216.529.6291**

**E-mail: Mark.Jewitt@lakewoodoh.net**

CC:

> Abbreviations used:  BDR-bedroom,  KIT-kitchen,
> BTRM-bathroom, LVRM-living room, DNR-dining
> room,  CLR-cellar, AT-attic, D/U-dwelling unit

# CUYAHOGA COUNTY DISTRICT BOARD OF HEALTH
## ENVIRONMENTAL HEALTH SERVICE AREA
## REPORT AND INVESTIGATION FORM

ID#_____

Sanitarian: Seifert                                    Community:  Lakewood

Subject:  Unsanitary Conditions          Date Received: 9/28/2010          By: M. Seifert

Referred by:  Jeff Ashby, Asst. Safety I  Address: Lakewood City Hall          Phone:

Name:    Patricia J. McNerney               Address: 1241 Thoreau                 Phone:

### Subject Information

**First Response Date: 10/08/2010     Report**

I met Jeff Ashby, Asst. Safety Director, Mark Jewitt, Building Inspector, Scott Gillman, Fire Prevention Officer, and Hilary Schickler, Housing Outreach Director for Lakewood Alive & representative for the owner, Patricia McNerney, at the property.  Ms. Schickler allowed us access to the house.  It is in deplorable conditions.   Most of the house has sustained extensive water damage.  Large amounts of mold were observed throughout the structure and on many items within the structure.  Feces were observed.  Extensive structural damage was observed. Environmental health and safety hazards exist within the structure.  It is uninhabitable at this time.  Anyone entering the premises should take adequate personal protection precautions.

**Please Check One or More Boxes:**          Mark C. Seifert, R.S., M.P.H.

Justified  ☒          Not Justified  ☐                  Sanitarian

Corrected  ☐          Referred  ☐  Agency:

**Exhibit O**

## CARPENTER LIPPS & LELAND LLP

TELEPHONE: (614) 365-4100
FACSIMILE: (614) 365-9145

WASHINGTON, DC
900 19TH STREET, NW, 4TH FLOOR
WASHINGTON, DC 20006

ATTORNEYS AT LAW

280 PLAZA, SUITE 1300
280 NORTH HIGH STREET
COLUMBUS, OHIO 43215
WWW.CARPENTERLIPPS.COM

WRITER'S DIRECT NUMBER:
(614) 365-4118
wallace@carpenterlipps.com

December 1, 2010

**VIA ELECTRONIC MAIL**

Susan M. Gray, Esq.
22255 Center Ridge Rd., #210
Rocky River, Ohio 44116

Re:    Homecomings Financial, LLC v. Patricia J. McNerney, et al.
       Case No. 1:09-CV-2383, U.S. District Court, N.D. of Ohio, E.D.

Dear Susan:

As you know, the property at issue in this foreclosure case has been condemned and your client no longer lives there. In light of these developments, and the current procedural status of the case, is your client interested in discussing a possible resolution of this matter?

Very truly yours,

David A. Wallace

096-041:266818

**Exhibit P**

Permanent  312-28-084
Parcel #

Type Instrument: **Warranty Deed Ex**           Date: **5/11/2011 3:12:00 PM**
Tax District #: **3180**                        Tax List Year:  **2011**
Grantor: **Kellicker, Patricia Joanne**         Land Use Code: **5100**
Grantee: **CUYAHOGA COUNTY LAND R**             Land Value: **32,400**              **CUYAHOGA COUNTY**
Balance Assumed: **$ 0.00**                      Building Value: **103,500**           OFFICE OF FISCAL OFFICER - 2
Total Consideration: **$ 0.00**                  Total Value: **135,900**            **DEED 5/11/2011 3:26:21 PM**
Conv. Fee Paid: **$ 0.00**                       Arms Length Sale: **NO**
Transfer Fee Paid: **$ 0.50**                    Rcpt: **D-05112011-15**             **201105110509**
Fee Paid by: **PUBLIC**                          Inst #: **495935**
Exempt Code: **A**                               Check #

*Mark A. Parks*

**Cuyahoga County Fiscal Officer**

## WARRANTY DEED

*aka Patricia Joanne McNarney*

**That  Patricia Joanne Kellicker,** (the ("Grantor") which claim(s) title through instrument(s) recorded in Instrument No. 200110150499 of the Cuyahoga County Recorder's Office, for the consideration of One Dollar ($1.00) and other good and valuable consideration received to its full satisfaction of the Cuyahoga County Land Reutilization Corporation, an Ohio corporation (the "Grantee") whose tax mailing address will be 323 Lakeside Avenue, West, Suite 160, Cleveland, Ohio, 44113, does hereby Give, Grant, Bargain, Sell and Convey unto said Grantee, successors and assigns, the following described premises, commonly known as Permanent Parcel No. 312-28-084 with a common address of 1241 Thoreau Ave., Lakewood, Ohio, and more fully described as being situated in the City of Lakewood, County of Cuyahoga and State of Ohio, as follows:

SITUATED IN THE CITY OF LAKEWOOD, COUNTY OF CUYAHOGA AND STATE OF OHIO:

AND KNOWN AS BEING SUBLOT NO. 35 IN THE J.A. ZANGERLE SUBDIVISION OF PART OF ORIGINAL ROCKPORT TOWNSHIP SECTION NO. 21, AS SHOWN BY THE RECORDED PLAT IN VOLUME 34 OF MAPS, PAGE 7 OF THE CUYAHOGA COUNTY RECORDS, AND BEING 50 FEET FRONT ON THE EASTERLY SIDE OF THOREAU ROAD AND EXTENDING BACK OF EQUAL WIDTH 140-18/100 FEET DEEP, AS APPEARS BY SAID PLAT BE THE SAME MORE OR LESS, BUT SUBJECT TO ALL LEGAL HIGHWAYS.

ALSO PART OF THOREAU AVENUE VACATED AS SHOWN BY VOL. 204, PAGE 22 OF OHIO COURT MAP RECORDS.

PPN: 312-28-084

PROPERTY ADDRESS:
1241 THOREAU AVE
LAKEWOOD, OH  44107

To have and to hold the above granted and bargained premises, with the appurtenances thereof, unto the said Grantee(s), its successors and assigns forever.  And, the said Grantor, does for herself and her heirs, executors, administrators and assigns, covenant with the said Grantee(s), its successors and assigns, that at and until the ensealing of these presents, they are well seized of the above described premises, as a good and indefeasible estate in fee simple, and have good right to bargain and sell the same in manner and form as above written, and that except for Permitted Encumbrances, the same are free from all encumbrances whatsoever and that they will warrant and defend said premises, with the appurtenances thereunto belonging, to the said Grantee(s), its successors and assigns, against all lawful claims and demands whatsoever.    "Permitted Encumbrances", as used herein, means any real estate tax delinquency, all past and delinquent assessments and charges under ORB 715.26 and 715.261, court costs, interest and penalties, as may be applicable to the premises, including current accrued, but not due, real estate taxes and assessments.

In Witness Whereof, we have hereunto set our hand(s), the _19th_ day of _April_, 2011.

*Patricia Joanne Kellicker* AKA *Patricia Joanne McNerney*

Grantor

Patricia Joanne Kellicker a.k.a. Patricia Joanne McNerney

(Print Name)

Title: _NA_

Date: _4/19/2011_

                              )      ss:
                              )

Sworn to, acknowledged and subscribed in my presence this _19th_ day of _April_, 2011 as to _Patricia Joanne Kellicker_ as his/her free act and deed, ~~for which he/she serves as~~ _N/A_.

_Susan M. Gray_

NOTARY PUBLIC

My commission does not expire

Susan M. Gray

22255 Center Ridge Rd.

#210

Rocky River OH 44116

440-331-3949

440-331-8160 - fax

THIS INSTRUMENT PREPARED BY:
ROBERT P. RINK, ESQ.
CUYAHOGA COUNTY LAND REUTILIZATION CORPORATION
323 W. Lakeside Avenue, Suite 160
Cleveland, OH 44113

RRNS2109.03

**<u>Exhibit Q</u>**

Recording Requested By: GMAC MORTGAGE, LLC
When Recorded Return To: LIEN RELEASE, GMAC MORTGAGE, LLC 2925 Country Dr, St Paul, MN 55117

## CERTIFICATE OF RELEASE

GMAC MORTGAGE, LLC #■■■9939 "MCNERNEY"  Lender ID:CHARGE OFF   Cuyahoga, Ohio PIF:
**MERS #:** ■■■■■9391  **SIS #: 1-888-679-6377**

KNOW ALL MEN BY THESE PRESENTS that Homecomings Financial, LLC fka Homecomings Financial Network, Inc. holder of a certain Mortgage, to secure the payment of $108,000.00 whose parties, dates and recording information are below,  does hereby acknowledge that it has received full payment and satisfaction of the same, and in consideration thereof, does hereby cancel and discharge said Mortgage :

Original Mortgagor:  PATRICIA JOANNE MCNERNEY AKA PATRICIA JOANNE KELLICKER
Original Mortgagee: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC (MERS)
Dated:  12/27/2002 Recorded:  01/06/2003  in Book/Reel/Liber: NA Page/Folio: NA as Instrument No.: 200301060120, in the County of Cuyahoga State of Ohio

Legal:  Situated in the City of Lakewood, County of Cuyahoga and State of Ohio:

And known as being Sublot No. 35 in the J.A. Zangerle Subdivision of part of original Rockport Township Section No. 21, as shown by the recorded plat in Volume 34 of Maps, Page 7 of the Cuyahoga County Records, and being 50 feet front on the easterly side of Thoreau Road and extending back of equal width 140 18/100 feet deep, as appears by said plat, be the same more or less, but subject to all legal highways.

   Property Address: 1241 THOREAU ROAD, LAKEWOOD, OH  44107

IN WITNESS WHEREOF, the undersigned, by the officer duly authorized, has duly executed the foregoing instrument.

Homecomings Financial, LLC fka Homecomings Financial Network, Inc.
On  7. 22 11

By: _____
Jody Delfs, Authorized Officer

CERTIFICATE OF RELEASE Page 2 of 2

STATE OF Iowa
COUNTY OF Black Hawk

On  7·25·11 , before me, E. JENSEN, a Notary Public in and for Black Hawk in the State of
Iowa, personally appeared Jody Delfs, Authorized Officer, personally known to me (or proved to me on
the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

E. JENSEN
COMMISSION NO. 768473
MY COMMISSION EXPIRES
June 17, 2014

E. JENSEN
Notary Expires: 06/17/2014  #768473

(This area for notarial seal)

**Prepared By:  Donna Raubs,  GMAC MORTGAGE, LLC 2925 Country Dr, St Paul, MN  55117
1-800-766-4622**

*TUT*TUTGMAU*07/21/2011 02:15:11 PM* GMAC01GMAU0000000000000000043970* OHCUYAH*
9939 OHSTATE_MORT_REL **DLRGMAC*

**<u>Exhibit R</u>**

Case: 1:09-cv-02383-LW    Doc #: 118    Filed: 08/04/13    1 of 2    PageID #: 2252

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

---------------------------------------------    :
                                                 : CASE NO.  1:09 CV 2383
HOMECOMINGS FINANCIAL, LLC,                      :
                                                 :
                              Plaintiff,         :
                                                 :
             -vs-                                : ORDER
                                                 :
                                                 :
PATRICIA J. MCNERNEY, et al.,                    :
                                                 :
                              Defendants.        :
---------------------------------------------

UNITED STATES DISTRICT JUDGE LESLEY WELLS

        This matter was automatically stayed when plaintiff/counter-defendant

Homecomings Financial, LLC ("Homecomings") filed for bankruptcy. Homecomings now

seeks voluntary dismissal of its breach of contract claim against defendant/counter-

claimant Patricia J. McNerney pursuant to Federal Rule 41(a)(2). Homecomings asserts

that Ms. McNerney accepted a settlement offer whereby Homecomings agreed to

extinguish the debt that was the subject of the claim against her.

        Pursuant to Federal Rule 41(a)(2),

        Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's
        request only by court order, on terms that the court considers proper. If a
        defendant has pleaded a counterclaim before being served with the plaintiff's
        motion to dismiss, the action may be dismissed over the defendant's objection
        only if the counterclaim can remain pending for independent adjudication.

Fed. R. Civ. P. 41(a)(2). In this instance, Ms. McNerney filed a number of counterclaims

against Homecomings prior to being served with the motion to dismiss, including federal

causes of action under the Truth in Lending Act and the Real Estate Settlement
Procedures Act. These claims can remain pending for independent adjudication
pursuant to 28 U.S.C. § 1331. Insofar as Ms. McNerney's state law claims are related to
her federal claims such that they form part of the same case or controversy, the Court
will exercise supplemental jurisdiction thereto, pursuant to 28 U.S.C. § 1367(a).
Homecomings' motion to dismiss is accordingly granted. (Resolving Doc. 74). Ms.
McNerney's counterclaims remain pending but subject to the bankruptcy stay.

IT IS SO ORDERED.

UNITED STATES DISTRICT JUDGE

Date: 6 August 2013

2