UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

IN RE:
RESIDENTIAL CAPITAL, LLC,
Debtor

KENNETH THOMAS,

        Appellant,

-against-                                            No. 15-CV-2888 (CM)

RESCAP BORROWER CLAIMS TRUST,

        Appellee.
------------------------------------------------------------x

[stamp: USDC SDNY DOCUMENT ELECTRONICALLY FILED DOC #:___ DATE FILED: 9/21/15]

## MEMORANDUM DECISION AND ORDER AFFIRMING ORDERS OF THE BANKRUPTCY COURT

McMahon, J.:

The issue on appeal is whether the Bankruptcy Court erred in entering three decisions related to Appellant Kenneth C. Thomas's proof of claim, specifically, the (1) *Supplemental Order Granting Debtors' Thirty-Sixth Omnibus Objection to Claims (Misclassified and Wrong Debtor Borrower Claims) With Respect to Claim No. 3728 of Kenneth C. Thomas* [ECF No. 6205][1], entered January 2, 2014 (the "Thirty-Sixth Omnibus Order"), which reclassified the Claim as a general unsecured claim against Debtor GMAC Mortgage, LLC ("GMACM"), (2) *Order Sustaining the ResCap Borrower Claims Trust's Objection to Claim Number 3728 Filed by Kenneth Thomas* [ECF No. 8135] (the "Seventy-Sixth Omnibus Order"), which sustained the Appellee's objection to the Claim, and (3) *Order Denying Motion of Kenneth C. Thomas for*

---

[1] Docket numbers referenced as "ECF No. __" refer to documents entered on the Bankruptcy Court Docket. Docket numbers referenced as "D.C. ECF No. __" refer to documents entered on the District Court Docket.

ny-1197571

Copies mailed/faxed/handed to counsel on 9/21/15

*Reconsideration* [ECF No. 8514] (the "Reconsideration Order" and with the Thirty-Sixth Omnibus Order and the Seventy-Sixth Omnibus Order, the "Orders"), which denied the Appellant's motion for reconsideration of the Seventy-Sixth Omnibus Order. This Court must evaluate whether the Bankruptcy Court's legal and factual determinations in these three decisions were proper.

The Appellant has not identified any legal or factual errors made by the Bankruptcy Court in any of the Orders. Rather, the Appellant relies on either (i) arguments that were presented to and soundly rejected by the Bankruptcy Court, or (ii) arguments that are premised by unsupported allegations and evidence that he did not place before the Bankruptcy Court at the time the Orders were entered, which allegations and evidence cannot be considered by this Court on appeal. Therefore, the decisions of the Bankruptcy Court are affirmed.

## BACKGROUND

### I.   The Chapter 11 Cases

On May 14, 2012 (the "Petition Date"), each of the above-captioned debtors (collectively, the "Debtors") filed a voluntary petition with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). On the Petition Date, the Bankruptcy Court entered an order jointly administering the above-captioned Chapter 11 cases (the "Chapter 11 Cases") pursuant to Bankruptcy Rule 1015(b).

On December 11, 2013, the Bankruptcy Court entered an *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "Confirmation Order") approving the terms of the Chapter 11 plan, as amended (the "Confirmed Plan"), filed in the Chapter 11 Cases (Case No. 12-12020 (MG), ECF No. 6065).

2

On December 17, 2013, the Effective Date (as defined in the Confirmed Plan) of the Plan occurred, and, among other things, the Borrower Trust was established (Case No. 12-12020 (MG), ECF No. 6137).

The Confirmed Plan provides for the creation and implementation of the Borrower Trust, which is established for the benefit of Borrowers[2] who filed Borrower Claims[3] to the extent such claims are ultimately allowed either through settlement by the Trustee for the Borrower Trust or pursuant to an Order of the Bankruptcy Court. See Confirmed Plan, Art. IV.F. The Borrower Trust was established to, among other things, "(i) direct the processing, liquidation and payment of the Allowed Borrower Claims in accordance with the Confirmed Plan, and the distribution procedures established under the Borrower Claims Trust Agreement, and (ii) preserve, hold, and manage the assets of the Borrower Claims Trust for use in satisfying Allowed Borrower Claims." See id.

## II.    The Thomas Loan History

On or around March 28, 2008, non-Debtor United Home Loans Inc. ("United")

---

[2] The term "Borrower" means an individual whose current or former mortgage loan was originated, serviced, sold, consolidated, or owned by any of the Debtors. *See* Confirmed Plan, Art. I.A.38.

[3] As defined in the Confirmed Plan (defined herein) filed in the Chapter 11 Cases, "Borrower Claims" means:

> (i) Claims of a Borrower arising from or relating to any alleged act or omission or any other basis of liability of any Debtor (or any predecessor) in connection with the origination, sale, and/or servicing of a mortgage loan originated, sold, consolidated, purchased, and/or serviced by any Debtor, (ii) Claims filed for or on behalf of a Borrower by such Person's attorney or agent, including as part of a proof of claim filed on behalf of a putative class of Borrowers, and (iii) claims that have become Allowed as a result of settlement of Borrower litigation commenced against Ally and the Debtors. For the avoidance of doubt, Borrower Claims shall include Allowed Claims held by the Kessler Class Claimants (to the extent that the Kessler Class Claimants are certified as a class action for settlement or allowance purposes), and shall not include the: (a) Senior Unsecured Notes Claims; (b) Junior Secured Notes Claims; (c) RMBS Trust Claims; (d) Private Securities Claims; (e) General Unsecured Claims; (f) General Unsecured Convenience Claims; or (g) Intercompany Balances. For the further avoidance of doubt, no Claim described in subsection (ii) hereof shall be considered an Allowed Borrower Claim unless such Claim is either certified under Bankruptcy Rule 7023 or by Final Order for purposes of settlement or allowance.

*See* Confirmed Plan, Art. I.A.40.

3

originated a loan to Mr. Thomas (the "Thomas Loan"). (See Seventy-Sixth Omnibus Order at 2.) Non-Debtor GMAC Bank purchased the Thomas Loan from United and subsequently transferred its interest to GMACM. See id. GMACM transferred its interest to Fannie Mae on or about May 23, 2008. See id. GMACM serviced the Thomas Loan from March 28, 2008 until servicing was transferred to Ocwen on February 16, 2013. See id.

On or around February 24, 2011, the Debtors set up a repayment plan for Mr. Thomas that would have brought his account current by March 31, 2011; however, the plan was cancelled on March 7, 2011 during a phone call with Mr. Thomas in which a change to the escrow account was made. (See id.)

On September 9, 2011, the Debtors set up another repayment plan that would have brought the Thomas Loan current by September 30, 2011. (See id. at 2-3) However, on September 22, 2011, the Debtors returned the payment submitted by Mr. Thomas due to insufficient funds, and the plan was cancelled. (See id. at 3)

On October 14, 2011, the Debtors set up a third repayment plan that, if completed, would have brought Mr. Thomas' account current by December 14, 2011. (See id.) The Debtors received a payment from Mr. Thomas on or around October 26, 2011, but had to return the payment due to insufficient funds. (See id.) The plan was cancelled the same day. (See id.)

On November 30, 2011, the Debtors referred the Thomas Loan to foreclosure because the account was owing for the July 2011 payment. (See id.)

The Debtors sent workout packages to Mr. Thomas on August 18, 2010, February 18, 2011, July 21, 2011, September 8, 2011, November 2, 2011, and December 9, 2011 and never received any response from Mr. Thomas seeking a loan modification review. (See id.) The Debtors mailed a HOPE letter to Mr. Thomas on March 28, 2011, July 20, 2011, November 2,

4

2011, January 23, 2012, and March 23, 2012, but also did not receive any response from Mr. Thomas requesting a meeting with the HOPE representative. (See id.)

On February 22, 2012, the Debtors filed a Complaint to Foreclose Mortgage (the "Foreclosure Complaint"). (See id.) The Debtors, through a process server, attempted to serve Mr. Thomas with the Complaint at the Thomas Property on February 24, 2012, and attempted to serve him at another potential address on March 6, 2012. (See id.) However, both times, the residents at each address told the process server that Mr. Thomas did not reside there. (See id.) On March 23, March 30, and April 6, 2012, the Debtors conducted service via publication. (See id.)

In May 2012, the Debtors began reviewing the Loan for a modification at the request of Fannie Mae. (See id.) On May 14, 2012, the Debtors approved the Thomas Loan for a traditional trial modification. The plan required monthly payments of $1,703.69 due June 1, July 1, and August 1, 2012. However, the plan was cancelled on July 10, 2012 because Mr. Thomas failed to send in the first required payment. (See id. at 4)

In November 2012, the Debtors once against reviewed Mr. Thomas' account for a modification at the request of Fannie Mae. (See id.) On November 20, 2012, after the Thomas Claim was filed, the Debtors once again approved the Thomas Loan for a traditional trial modification plan (the "November Trial Plan"). (See id.) The November Trial Plan required payments in the amount of $1,864.12 due on January, February, and March 1, 2013. (See id.) Mr. Thomas made all of the payments under the November Trial Plan. (See id.)

In April 2013, Ocwen, the new servicer, approved the Thomas Loan for a permanent modification (the "Ocwen Loan Modification"). (See id.) Prior to the modification, Mr. Thomas had a thirty year mortgage with a 5.625% interest rate, a monthly payment of $1,755.75,

5

12-12020-mg    Doc 9283    Filed 10/26/15    Entered 10/26/15 15:01:44    Main Document
Pg 6 of 17

and a principal balance of $290,691.38. (See id.) The Modification changed the Thomas Loan to a forty year mortgage and reduced his monthly payment to $1,370.85 and his interest rate to 4.00%. (See id.) The principal balance after the modification was $328,000.93, which was the result of $37,309.55 in accrued but unpaid interest and other amounts resulting from delinquent payments being added as principal. (See id.)

### III. The Proof of Claim and Bankruptcy Orders

On or around November 8, 2012, Mr. Thomas filed a proof of claim against Debtor Residential Capital, LLC ("ResCap"), designated as Claim No. 3728 (the "Claim"), asserting a secured claim for $291,472.15. (See id. at 1)

On September 20, 2013, the Debtors filed the *Thirty-Sixth Omnibus Objection to Claims (Misclassified and Wrong Debtors Borrower Claims)* [ECF No. 5138] (the "Thirty-Sixth Omnibus Objection"), seeking to redesignate and reclassify the Claim as a general unsecured claim against GMACM.

On October 23, 2013, the Appellant filed a *Response to Notice of Hearing on Thirty-Sixth Omnibus Objection to Claims (Misclassified and Wrong Debtor Borrower Claims)* [ECF No. 5495] (the "Thirty-Sixth Omnibus Response"). In the Thirty-Sixth Omnibus Response, the Appellant argued that the Claim should remain classified as a secured claim because his mortgage is a "secured" loan and that the Claim was properly asserted against ResCap because ResCap is the parent of GMACM. See Thirty-Sixth Omnibus Response.

The Thomas Claim was reclassified as a general unsecured claim against GMACM pursuant to the Thirty-Sixth Omnibus Order. In the Thirty-Sixth Omnibus Order, the Court held the Appellant provided no evidence either that he holds a security interest in any of the Debtors' assets or that his servicing-related claim is not properly asserted against the previous servicer of his loan, GMACM. See Thirty-Sixth Omnibus Order at 3-4.

6

On November 10, 2014, the Appellee filed the *ResCap Borrower Claims Trust's Seventy-Sixth Omnibus Objection to Claims (No Liability Borrower Claims)* [ECF No. 7736] (the "Seventy-Sixth Omnibus Objection"). The Seventy-Sixth Omnibus Objection objected to the Claim, on the grounds that it did not assert valid liabilities against the Debtors' estates. In support of the Seventy-Sixth Omnibus Objection, the Appellee submitted the declarations of Kathy Priore [ECF No. 7736-4] and Norman S. Rosenbaum [ECF No. 7736-5].

On December 10, 2014, the Appellant filed a response to the Seventy-Sixth Omnibus Objection [ECF No. 7862] (the "Seventy-Sixth Omnibus Response"). The Seventy-Sixth Omnibus Response alleged that GMACM was liable for the increased amount he owed under the Ocwen Loan Modification because GMACM improperly did not qualify him for a loan modification. See Seventy-Sixth Omnibus Response at 3. The only reference made to service of the Foreclosure Complaint in the Seventy-Sixth Omnibus Response notes that "there [were] inaccuracies in [the] affidavit from servicer; however, Your Honor should know at no time was there purposeful avoidance of service." Seventy-Sixth Omnibus Response at 3.

On January 9, 2015, the Appellee filed the *ResCap Borrower Claims Trust's Omnibus Reply in Support of its Seventy-Sixth Omnibus Objection to Claims (No-Liability Borrower Claims) as to Claim Nos. 1083, 2055, and 3728* [ECF No. 7967] (the "Seventy-Sixth Omnibus Reply") addressing the arguments made in the Seventy-Sixth Omnibus Response. The Seventy-Sixth Omnibus Reply was supported by a supplemental declaration of Ms. Priore [ECF No. 7967-2] (the "Supplemental Priore Declaration").

On January 14, 2015, a hearing was held on the Seventy-Sixth Omnibus Objection and the Bankruptcy Court took the matter under submission. On February 17, 2015, the Bankruptcy Court entered the Seventy-Sixth Omnibus Order whereby it sustained the Seventy-Sixth Omnibus

7

Objection, finding that the Appellant had not met his burden of demonstrating the validity of the Claim.

On March 5, 2015, the Appellant filed a motion for reconsideration of the Order [ECF No. 8250] (the "Motion for Reconsideration"). On April 20, 2015, the Bankruptcy Court entered the Reconsideration Order.

On May 1, 2015, the Appellant filed a notice of appeal (the "Notice of Appeal") of the Orders with the Bankruptcy Court. The Notice of Appeal was subsequently transferred to the United States District Court for the Southern District of New York (the "District Court") (Case No. 15-cv-2888 (CM), D.C. ECF No. 1; Case No. 12-12020 (MG), ECF No. 8578) (the "Appeal"). On June 15, 2015, the Appellant filed the *Brief for Appellant – Kenneth C. Thomas*, Case No. 15-cv-2888 (CM) [D.C. ECF No. 8] (the "Appeal Brief"). On August 7, 2015, the Appellee filed the *Brief for Appellee – ResCap Borrower Claims Trust* [D.C. ECF No. 10]. On September 4, 2015, the Appellant filed the *Response Brief for Appellant – Kenneth C. Thomas* [D.C. ECF No. 12] (the "Appeal Response Brief"). Oral argument on the appeal was held on September 18, 2015.

## DISCUSSION

### IV. Standard of Review

A district court reviews the bankruptcy court's findings of fact for clear error and applies *de novo* review to its conclusions of law. Bankr. Servs., Inc. v. Ernst & Young LLP (In re CBI Holding Co.), 529 F.3d 432, 449 (2d Cir. 2008); ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.), 367 B.R. 84, 90-91 (S.D.N.Y. 2007). A factual finding is not clearly erroneous unless "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948).

8

In addition, when an error is harmless, it is not grounds for reversal. Cavalry Constr., Inc. v. WDF, Inc. (In re Cavalry Constr., Inc.), 428 B.R. 25, 41-42 (S.D.N.Y. 2010), aff'd, 425 Fed. Appx. 70 (2d Cir. 2011) (also reciting the preceding standards for review at 29); McReynolds v. Richards–Cantave, 588 F.3d 790, 800–02 (2d Cir. 2009) (even though clearly erroneous, a finding of fact was harmless error). "An error is harmless if it is not 'inconsistent with substantial justice' or does not 'affect the substantial rights of the parties.'" In re Adler, Coleman Clearing Corp., 204 B.R. 99, 106 (Bankr. S.D.N.Y. 1997) (quoting Citibank v. Arens (In re Arens), 139 B.R. 667, 669 (Bankr. N.D. Ohio 1991)).

Finally, certain additional rules apply to the scope of review. This Court may affirm on any basis appearing in the record below. Freeman v. Journal Register Co., 452 B.R. 367, 369 (S.D.N.Y. 2010); Ad Hoc Comm. of Personal Injury Asbestos Claimants v. Dana Corp. (In re Dana Corp.), 412 B.R. 53, 56 (S.D.N.Y. 2008). It cannot consider arguments by the Appellant that the Appellant did not raise below. ACG Credit Co. v. Barquet Grp., Inc. (In re Barquet Grp., Inc.), 486 B.R. 68, 73 n.3 (S.D.N.Y. 2012); Best Payphones, Inc. v. Manhattan Telecommc'ns Corp. (In re Best Payphones, Inc.), 432 B.R. 46, 60 (S.D.N.Y. 2010), aff'd, 450 Fed. Appx. 8 (2d Cir. 2011). Nor can it consider matters outside the record below. In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd., 389 B.R. 325, 339 (S.D.N.Y. 2008); WHBA Real Estate Ltd. P'ship v. Lafayette Hotel P'ship (In re Lafayette Hotel P'ship), 227 B.R. 445, 452 (S.D.N.Y. 1998), aff'd, 198 F.3d 234 (2d Cir. 1999).

### V.    The Bankruptcy Court Properly Sustained the Thirty-Sixth Omnibus Objection as to the Claim

The Appellant asserts that the Bankruptcy Court erred in sustaining the Thirty-Sixth Omnibus Objection as to the Claim because, "The Note was with Ally <u>after</u> filing of Claim and

9

remained there until sold to Ocwen who now acts as servicer on behalf of Investor, Fannie Mae, and thereby should have remained as originally filed." See Appeal Brief at 4.

Appellant raises this argument for the first time in the Appeal Brief. In his objection to the Thirty-Sixth Omnibus Objection, Appellant only argued that his proof of claim was properly against ResCap because ResCap was the parent of GMACM and ResCap. See Thirty-Sixth Omnibus Response at 1. He never argued that the redesignation of his claim is improper because ResCap (through its parent, Ally) was allegedly the holder of the Note. Furthermore, the purported "evidence" put forward in support of these arguments (including unsupported statements allegedly from Ally's Media Center articles dated more than a year prior to the Debtors' bankruptcy and LinkedIn pages of various GMACM/Ally Bank employees) was also not before the Bankruptcy Court at the time it entered the Orders.

This Court is only permitted to affirm or deny the ruling of the Bankruptcy Court based on the arguments and evidence that were presented to that court. "'The touchstone for the designation of a matter as part of the record is whether the matter was before the lower court (or at least considered by that court) in entering the order or judgment appealed from. ... [I]f an item was not considered by the court, it should be stricken from the record on appeal.'" In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd., 389 B.R. at 339 (citing In re Ames Dept. Stores, Inc., 320 B.R. 518, 521-22 (Bankr. S.D.N.Y. 2005); see also A. Illum Hanson, Inc. v. Tiana Queen Motel, Inc. (In re Tiana Queen Motel, Inc.), 34 B.R. 357, 361 (S.D.N.Y. 1983) (holding that a district court, "sitting as an appellate court ... should not receive into evidence material that was not before the bankruptcy court.") Therefore, this Court may not consider Appellant's new argument and "evidence" at this juncture.

10

Appellant's unsupported allegation that Ally held the note at the time the Claim was filed is of no evidentiary value. It is also contradicted by evidence in the record. Allegations in a brief unsupported by affidavits have no evidentiary value. See Yan v. Bocar, No. 04-cv-4194 (LAK), 2005 WL 3005338, at *8 (S.D.N.Y. Sept. 30, 2005). Furthermore, the evidence in the record counters the Appellant's allegations. The copy of the Note attached to the Seventy-Sixth Omnibus Objection demonstrates that the Note was endorsed from GMAC Bank (n/k/a Ally Bank) to GMACM, and that GMACM endorsed the Note to blank when it transferred its interest to Fannie Mae. Thus, the Appellant has failed to demonstrate the truth of the allegation regarding the ownership of the Note at the time the Claim was filed.

Even if the Appellant's allegations were true and could be considered by this Court, they do not support a finding that the Bankruptcy Court erred in redesignating the Claim. The Appellant acknowledged at oral argument on the appeal that his belief that he held a secured claim because the lender held a secured claim was erroneous. The Thirty-Sixth Omnibus Order is affirmed.

### VI.    The Bankruptcy Court Properly Sustained the Seventy-Sixth Omnibus Objection as to the Claim

(i)    *Improper Service of Process Allegations*

The Appellant asserts that the Foreclosure Complaint was improperly served, and the Bankruptcy Court erred in finding that the allegations of improper foreclosure were without merit. See Appeal Brief at 5-7; Appeal Response Brief at 5-8. In support of this contention, the Appellant attaches exhibits to the Appeal Brief and Appeal Response Brief that were not a part of the record before the Bankruptcy Court, and makes allegations that were not before the Bankruptcy Court

11

when it entered the Seventy-Sixth Omnibus Order.[4] See Appeal Brief Exhibit A; Appeal Response Brief Exhibit B.

As previously discussed, this Court can only affirm or deny the Bankruptcy Court's rulings based on the arguments and evidence in the record before the Bankruptcy Court. Thus, the exhibit and factual allegations presented in the Appeal Brief and Appeal Response Brief cannot be considered by this Court when reviewing the Bankruptcy Court's decision.

The Bankruptcy Court determined that the Appellee, by presenting two affidavits from a process server indicating that service on the Appellant was proper, rebutted the prima facie validity of the Appellant's claim to the extent of the Appellant's allegations of inaccuracies in the service of the foreclosure complaint. See Seventy-Sixth Omnibus Order at 9. Specifically, the Bankruptcy Court noted that the Appellant did not submit any evidence to support his allegations of improper service, and that while he "alleges that '[t]here are inaccuracies in [the] affidavit from servicer' (Opp. at 3), he does not identify these inaccuracies." See Seventy-Sixth Omnibus Order at 9. As the Bankruptcy Court noted in its Reconsideration Order, the Reply was filed five days before the Hearing, and the Appellant appeared at the Hearing and had the opportunity at that time to address any alleged inaccuracies in the Affidavits. See Reconsideration Order at 4. Thus, given the evidence and arguments before the Bankruptcy Court at the time of the Hearing, the Bankruptcy Court determined that the Appellant had not met his burden of demonstrating a valid claim against the Debtors' estates.

The Appellant neither asserts that the Bankruptcy Court erred in reviewing the affidavits nor identifies anything on the face of the affidavits to suggest that they were inaccurate. As a result, the Appellant has failed to demonstrate that the Bankruptcy Court's findings regarding the

---

[4] Like the allegations regarding the holder of the Note, these allegations are not supported by a sworn affidavit, and therefore would not be admissible as evidence even if they were considered by the Bankruptcy Court.

12

affidavits were clearly erroneous. Therefore, the Appellant has not demonstrated that such findings should be overruled.

The Appellant argues that he was not aware of the alleged inaccuracies in the Affidavits because he had not read them prior to the Seventy-Sixth Omnibus Order's being entered. See Appeal Brief at 7. However, as discussed above, the Appellant was given five days to review the Reply, which contained the Affidavits, prior to the Hearing. He had plenty of time to review the affidavits and familiarize himself with the Appellee's arguments and evidence. The Appellant's lack of diligence does not provide the Appellant grounds to rely on purported evidence and allegations for the first time on appeal.

(ii)    *Loan Modification Allegations*

The Appellant asserts that the Bankruptcy Court's determination that he did not meet his burden of demonstrating that GMACM improperly denied him a loan modification should be overruled. See Appeal Brief at 5. However, the Appellant does not identify either a legal or factual error made by the Bankruptcy Court when considering this aspect of the Claim. Rather, he submits the same unsupported and conclusory allegations that were presented and rejected by the Bankruptcy Court—namely, that GMACM improperly denied him for loan modifications. See Appeal Brief at 5. As the Bankruptcy Court held, the Appellee presented evidence, in the form of the Supplemental Priore Declaration, that GMACM offered the Appellant several loan modification plans that were cancelled due to the Appellant's failure to submit payments when due or in sufficient amounts. See Seventy-Sixth Omnibus Order at 9-10. The Appellant submitted nothing to contradict this evidence, and therefore did not meet his burden of demonstrating the validity of the Claim by a preponderance of the evidence.

In the Appeal Brief, the Appellant neither contests that there was nothing in the record before the Bankruptcy Court to support his allegations of improper loan modifications nor alleges

13

that the Bankruptcy Court acted improperly in determining that he had not met his burden of proof. Thus, the Bankruptcy Court's determination regarding the allegations of improper denial of a loan modification are sustained. The Seventy-Sixth Omnibus Order is affirmed.

## VII. The Bankruptcy Court's Decision to Deny the Appellant's Motion for Reconsideration Was Sound

The Appellant also asserts that the Bankruptcy Court erred in denying the Motion for Reconsideration, alleging that it assumed "awareness of information that I did not know"—apparently again relying on the defense that the Appellant did not review the Reply prior to the hearing on the Seventy-Sixth Omnibus Objection. This is not a valid basis for overruling the Reconsideration Order.

"The standard of review of a denial of a motion for reconsideration is abuse of discretion." See O'Connor v. Pan Am Corp., 5 Fed. Appx. 48, 51 (2d Cir. 2001). Rule 9023 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") incorporates Federal Rule of Civil Procedure 59, which allows a party to move to alter or amend a judgment. See Fed. R. Bankr. P. 59. Courts have held that the standard for a motion for reconsideration is identical to the standard applied to a motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e). See Henderson v. Metro. Bank & Trust Co., 502 F. Supp. 2d 372, 375 (S.D.N.Y. 2007). A motion for reconsideration should be granted only when there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust, Kachav S.A.R.L., 729 F.3d 99, 104 (2d Cir. 2013) (citing Virgin Atl. Airways, Ltd. V. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)); see also IBF Fund Liquidating, LLC v. Chadmoore Wireless Grp., Inc. (In re Interbank Funding Corp.), Adv. No. 07-1482, 2007 WL 2080512, at *2 (Bankr. S.D.N.Y. July 19, 2007) ("To obtain relief under Bankruptcy Rule 9023 …, a party must present 'manifest errors

14

of law or fact' or accounting for 'newly-discovered evidence.'" (citation omitted)). "The standard for granting … a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).

As the Bankruptcy Court noted in the Reconsideration Order, the Appellant's motion for reconsideration failed to meet this strict standard. The Reconsideration Motion identified neither an intervening change of controlling law, the availability of new evidence, nor the need to correct a clear error or prevent manifest injustice. See Reconsideration Order at 4. Rather, the Appellant merely attempted to raise the same alleged inaccuracies that he is attempting to raise as part of this appeal. The Bankruptcy Court held that the Appellant:

> offered no explanation for his failure to timely address purported inaccuracies in the affidavits of non-service previously filed with the Court. Nor has Thomas identified any clear error the Court made in its review of such affidavits in the Order, particularly in light of the fact that Thomas did not, and still has not, offered any countervailing evidence to rebut the statements made in the affidavits…

See Reconsideration Order at 4. Thus, the Bankruptcy Court found that none of the Appellant's arguments established the extraordinary circumstances warranting reconsideration of the Opinion, and the Appellant has presented no arguments contesting this finding.

The Appellant argues the Reconsideration Motion erred because it "assumes awareness of information that I did not know," presumably, the alleged errors in the Affidavits that the Appellant was not aware of until he read the Reply. See Appeal Brief at 9. However, this does not constitute "newly discovered evidence" for purposes of a motion for reconsideration. To obtain reconsideration for newly discovered evidence under either Rule 9023 or 9024 of the Federal Rules of Bankruptcy Procedure, the Appellant has to show that the evidence is such that it was not and

15

could not by the exercise of diligence have been discovered in time to present in the original proceeding.

> The movant must have been excusably ignorant of the facts, i.e., the evidence must be such that it was not discoverable by diligent search. A party who has failed to evaluate evidence properly and thereby failed to submit it at trial, or a party who desires to present his case under a different theory in which facts available at the original trial now first become important will not be granted [a motion for reconsideration].

See Berger v. Rodman (In re W.T. Grant Co.), 425 F. Supp. 565, 569 (S.D.N.Y. 1976) (citation omitted).

Here, the "newly discovered evidence" is the Appellant's unsupported allegations that the Affidavits were inaccurate. In the Reconsideration Motion, the Appellant fails to explain why such allegations could not have been raised at the time of the hearing on the Seventy-Sixth Omnibus Objection, especially given that he only needed to read the Reply. Thus, the allegations do not constitute newly discovered evidence. Furthermore, such allegations could not even have been considered by the Bankruptcy Court at the time of the Reconsideration Motion because they were not supported by a sworn affidavit. Thus, the Appellant has failed to demonstrate how the Bankruptcy Court abused its discretion in denying the Reconsideration Motion. The Reconsideration Order is affirmed.

## CONCLUSION

For the foregoing reasons, the Orders of the bankruptcy court are affirmed. The Clerk of the Court is directed to terminate the appeal and to close the file.

Dated: September 21, 2015

_____
U.S.D.J.

BY ECF TO ALL COUNSEL