**<u>Exhibit 1</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

| | ) | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

_____

### ORDER GRANTING RESCAP BORROWER CLAIMS TRUST'S NINETIETH OMNIBUS OBJECTION TO CLAIMS ((I) NO LIABILITY BORROWER CLAIMS, (II) REDUCE AND ALLOW BORROWER CLAIM, AND (III) ALLOWED IN FULL BORROWER CLAIM)

Upon the ninetieth omnibus objection to claims (the "<u>Objection</u>")[1] of the ResCap

Borrower Claims Trust (the "<u>Trust</u>"), established pursuant to the terms of the confirmed Plan

filed in the above-referenced Chapter 11 cases, as successor in interest to the Debtors with regard

to Borrower Claim matters, seeking entry of an order, pursuant to section 502(b) of title 11 of the

United States Code (the "<u>Bankruptcy Code</u>"), Rule 3007(d) of the Federal Rules of Bankruptcy

Procedure, and this Court's order approving procedures for the filing of omnibus objections to

proofs of claim [Docket No. 3294] (the "<u>Procedures Order</u>"), disallowing and expunging the No

Liability Borrower Claims, reducing the Reduce and Allow Borrower Claim, and allowing the

Allowed in Full Borrower Claim, all as more fully described in the Objection; and it appearing

that this Court has jurisdiction to consider the Objection pursuant to 28 U.S.C. §§ 157 and 1334;

and consideration of the Objection and the relief requested therein being a core proceeding

pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C.

§§ 1408 and 1409; and due and proper notice of the Objection having been provided, and it

---

[1]    Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Objection.

appearing that no other or further notice need be provided; upon consideration of the Objection and the *Declaration of Sara Lathrop in Support of the ResCap Borrower Claims Trust's Ninetieth Omnibus Objection to Claims ((I) No Liability Borrower Claims, (II) Reduce and Allow Borrower Claim, and (III) Allowed in Full Borrower Claim)*, annexed thereto as <u>Exhibit 2</u>, and the *Declaration of Norman S. Rosenbaum in Support of the ResCap Borrower Claims Trust's Ninetieth Omnibus Objection to Claims ((I) No Liability Borrower Claims, (II) Reduce and Allow Borrower Claim, and (III) Allowed in Full Borrower Claim)*, annexed thereto as <u>Exhibit 3</u>; and the Court having found and determined that the relief sought in the Objection is in the best interests of the Trust, the Trust's constituents, the Debtors, and other parties in interest and that the legal and factual bases set forth in the Objection establish just cause for the relief granted herein; and the Court having determined that the Objection complies with the Borrower Claim Procedures set forth in the Procedures Order; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Objection is granted to the extent provided herein; and it is further

ORDERED that pursuant to section 502(b) of the Bankruptcy Code, the claims listed on <u>Exhibit A</u> annexed hereto (collectively, the "<u>No Liability Borrower Claims</u>") are disallowed and expunged with prejudice; and it is further

ORDERED that pursuant to section 502(b) of the Bankruptcy Code, the claim listed on <u>Exhibit B</u> annexed hereto (the "<u>Reduce and Allow Borrower Claim</u>") is hereby reduced and allowed as provided for on <u>Exhibit B</u>; and it is further

ORDERED that pursuant to section 502(b) of the Bankruptcy Code, claim number 1188 filed by Charles T. Clark (the "<u>Allowed in Full Borrower Claim</u>") is hereby

allowed as a general unsecured claim against Debtor GMAC Mortgage, LLC in the filed amount of $19,712.00 and shall receive the treatment provided for Allowed Borrower Claims against the GMACM Debtors provided for in Article III.D.2(f) of the Plan; and it is further

ORDERED that Kurtzman Carson Consultants LLC, the Debtors' claims and noticing agent ("KCC"), is directed to disallow and expunge the No Liability Borrower Claims identified on the schedule attached as Exhibit A hereto so that such claims are no longer maintained on the Claims Register; and it is further

ORDERED that KCC is directed to modify the Reduce and Allow Borrower Claim as set forth on the schedule attached as Exhibit B hereto so that such claim is reflected on the Claims Register in a manner consistent with this Order; and it is further

ORDERED that KCC is directed to reflect on the Claims Register that the Allowed in Full Borrower Claim is allowed as a general unsecured claim against GMAC Mortgage, LLC in the amount of $19,712.00; and it is further

ORDERED that the Trust is authorized and empowered to take all actions as may be necessary and appropriate to implement the terms of this Order; and it is further

ORDERED that notice of the Objection, as provided therein, shall be deemed good and sufficient notice of such objection, and the requirements of Bankruptcy Rule 3007(a), the Case Management Procedures entered on May 23, 2012 [Docket No. 141], the Procedures Order, and the Local Bankruptcy Rules of this Court are satisfied by such notice; and it is further

ORDERED that this Order has no res judicata, estoppel, or other effect on the validity, allowance, or disallowance of any claim that is not identified in this Order or listed on Exhibit A or Exhibit B annexed to this Order, and the Trust's and any party in interest's right to

object on any basis are expressly reserved with respect to any such claim that is not identified in this Order or listed on Exhibit A or Exhibit B annexed hereto; and it is further

ORDERED that this Order shall be a final order with respect to each of the No Liability Borrower Claims identified on Exhibit A, the Reduce and Allow Borrower Claim identified on Exhibit B annexed hereto, as well as the Allowed in Full Borrower Claim, as if each such Claim had been individually objected to; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated:    _____, 2015
         New York, New York

_____
THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

ny-1207814

## Exhibit A

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| 6270 | Thomas G. Cooper and Catherine D. Cooper<br><br>175 South St Concord, NH 03301<br><br>$80,000<br><br>Residential Capital LLC GMAC Mortgage, LLC | General Servicing | Debtor GMAC Mortgage Corporation originated the loan on August 25, 2003. GMAC Mortgage transferred its interest when the loan was securitized on or about March 30, 2004 where Wilmington Trust Company was appointed as trustee. GMAC Mortgage LLC serviced the loan from September 9 2003 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimants assert "Home Equity – failure to account for payments" as the basis for the claim in box 2 of the proof of claim form. Debtors mailed a letter requesting additional information on June 21, 2013. Claimant responded via email on July 22, 2013. Claimants state in the body of email: "This is in response to the letter we received from RESCAP Morrison-Forester dated June 21, 2013 regarding the above claims.  We have previously provided attached documentation to the proof of claim form which was attached to your letter.  Your letter requests a statement of our claim and to attach documentation for the claim.  Our claim is as follows:  On not less than 12 separate occasions during 2012 we have attempted by telephone, in writing, and by e-mail to obtain from GMAC an accounting of all transactions and all paperwork pertaining to a line of credit we opened with GMAC on August 25, 2003 (Account Number 8002690840:  Property located at 175 South Street Concord, NH 03301).  To date we have been provided only 5 pages of an original note dated June 21, 2003 which was apparently signed only by us.  The only other information we have been provided – and we have been provided this same information on two separate occasions – is a computer | 7-8 |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | generated printout showing payment and balance activity on this account for the period from October 20, 2009 through September 20, 2012.<br><br>We have yet to receive a detailed accounting for all charges assessed to us, including the interest rate and related assessments from the time period from August 25, 2003 to the present.  And we do not have any documents other than the August 25, 2003 note.   This is particularly significant because on May 19, 2005 at a closing which took place in Concord, NH at Bank of New Hampshire (now TD BANK) we signed a document specifically closing the GMAC account and requesting GMAC to execute and record a mortgage discharge for the June 21, 2003 note.  This documentation closing the account was included in a letter from the Bank of New Hampshire dated May 19, 2005 along with an Official Check payable to GMAC in the amount of $45,508.82.  GMAC never recorded the Discharge of Mortgage.<br>We have consistently been unable to proceed with a refinance of our home mortgage and to take advantage of significantly lower interest rates because the GMAC mortgage continues to show up as an encumbrance on the property.   We have been unable to move forward with these and related financial plans as a result of GMAC's failure to provide us with the requested information.  Our claim is for the entire amount of the undischarged encumbrance along with financial losses suffered as a result of being required to pay interest on our home mortgage (5.25%) as opposed to the 3.5% interest rate (and, at times, lower)we | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | should have been in a position to obtain but for the GMAC encumbrance. We have tried on numerous occasions to resolve this matter and would like to bring this issue to conclusion in the very near future. Attached is our claim documentation which was submitted in support of our claim and which you may not have reviewed or been provided with prior to sending your letter of June 21, 2013. Please let us know what other documentation is required to evaluate and adjudicate our claim. Please feel free to contact us at: 603-496-5997. Thank you for your consideration. "<br><br>Debtors have no liability for Claimants' assertion that Debtors failed to close the home equity line of credit because claimant has not provided proof of their claims. Debtors' records show that Debtors applied $45,508.82 to loan on May 27, 2005 bringing the principal balance down to $0.00; however, there is no record of Debtors receiving a letter from Claimants requesting the home equity line of credit to be closed out resulting in the line remaining open. According to Section 14 of the Mortgage Note signed by Claimants for the Home Equity Line of Credit, the following needs to be completed if Claimants wants to close out the Home Equity Line of Credit: "If we wish to close the Account, we must notify GMAC that we are closing our Account and return all unused Checks and credit cards. The notice must specify the Account number and an effective date of cancellation. The date of cancellation must be after GMAC receives the Notice. We will be responsible for all Checks signed by us whenever written as well as all | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | credit card cash advances and/or purchases made by us whenever made, and we will pay GMAC the total balance outstanding on the cancellation date. We will not be released from our duties until this amount is paid. If GMAC receives a check which satisfies the total balance outstanding GMAC may at its sole discretion consider the Account closed."<br><br>Debtors' records also show that Claimants spoke with Debtors via phone on September 13, 2005, at which time Debtors advised Claimants that there is no amount due on the account and the total advance amount is able to be used on the home equity line of credit.  During the call, Claimants stated that they plan to advance funds soon. During the call, Claimants did not dispute that the home equity line should remain open. Additionally, Claimants continued to advance funds from the line of credit. On October 3, 2005, Debtors' servicing history shows an advance/withdraw from the home equity line of credit in amount of $10,000 and after this date the payment history reflect monthly payments being received and applied to the account to pay down the new unpaid principal balance due on the account which only existed due to the withdraw on October 3, 2005. Several other advances were taken on the home equity line of credit on the following date: $10,000 on March 9, 2006, $1,000 on November 8, 2006, $5,000 on January 23, 2007, $6,000 on August 14, 2007, $5,000 on November 1, 2007, $4,000 on November 29, 2007, $6,000 on December 17, 2007, $2,500 on February 29, 2008. As of the date of the last advance on the account, the unpaid | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | principal balance was $49,049.55 and Debtors' servicing records show that Claimants made monthly payments on the home equity line until the loan was transferred to Ocwen.<br><br>The account was due for February 20, 2013 payment at time of transfer to Ocwen on February 16, 2013. | |
| 2526 | Lori E. Tammaro aka Lori E Pesce<br><br>24 Pleasant St Everett, MA 02149<br><br>$75,000 (POC States $30,000 plus $45,000)<br><br>ResCap GMAC Mortgage | Loan Modification; General Servicing | Debtor GMAC Mortgage Corporation originated the loan on October 29, 1999. GMAC Mortgage, LLC transferred its interest to Fannie Mae. Debtor GMAC Mortgage LLC serviced the loan from October 29, 1999 until servicing transferred to Green Tree Servicing on February 1, 2013.<br><br>Claimant asserts "wrongful fee added $1,000/month credit to principal for on time payments" as basis for claim in box 2 of the proof of claim form. Debtors mailed a letter requesting additional information on May 24, 2013 and Claimant's response was received on June 17, 2013. Claimant's response states "The(y) sent me a trial modification. I paid it on time. They sent me a foreclosure letter??? They never deducted incentive payments as stated in agreement over $29,000 was added to my original principal. GMAC would not work with me until I got a lawyer involved. I tried for a couple of years and they would just pass the phone around." Claimant also attached original proof of claim, a HAMP plan dated July 1, 2009 (including Claimant's hand-written comments), a denial letter from Debtors | 7-8, 9-10 |

| Claim No(s). | Name and Address Claim Amount Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | dated July 29, 2009 for insufficient amount of payment to reinstatement, and a balloon payment notice signed by Claimant.<br><br>Debtors have no liability for Claimant's assertion that incentive payments were never applied to the account.  Debtors applied $1,000 in incentive payments annually to the Claimant's unpaid principal balance on August 2, 2010, July 28, 2011, and July 31, 2012 in accordance with HAMP Guidelines. On page 24 of the HAMP guidelines, Section titled "Borrower's Incentive Compensation", it states the following in regard to the application and amount of incentive, "To provide an additional incentive for borrowers to keep their modified loan current, borrowers whose monthly mortgage payment is reduced through the HAMP by six percent or more and who make timely monthly payments will earn an annual "pay for performance" principal balance reduction payment equal to the lesser of : (i) $1,000 ($83.33/month), or (ii) one-half of the reduction  in the borrower's annualized monthly payment for each month a timely payment is made."<br><br>Debtors have no liability relating to the "foreclosure letter" sent to Claimant because the breach letter that was mailed to Claimant on October 28, 2009 was properly sent.  As of that date, the account was still due for October 1, 2008 through October 1, 2009 payments as the loan modification was not completed as of that date. The permanent loan modification documents were not signed by Claimant until October 23, 2009 and since Debtors cannot assume the permanent | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
|  |  |  | modification will be accepted by Claimant, the Breach letter is mailed out as a formality. The signed permanent modification documents were received by Debtors on October 28, 2009 after the breach letter had already been processed.<br><br>Debtors have no liability for Claimant's assertion that over $29,000 was added to his original principal because, in accordance with the modification dated October 23, 2009, $29,113.23 of the principal was deferred to the end of the loan at a 0% interest rate.   According to page 2 of the signed HAMP Permanent Modification Agreement, Section C provides that "$29,563.26 of the New Principal Balance shall be deferred and I will not pay interest or make monthly payments on this amount. The new Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $56,592.02."  A copy of the HAMP Permanent Modification Agreement is attached hereto as <u>Exhibit A-1</u>. |  |
| 2597 | John J Metkus III<br><br>9218 Edgeloch Dr Spring, TX 77379<br><br>$24,705.72<br><br>GMACM | Loan Modification | Debtor GMAC Mortgage Corporation originated the loan on June 2, 2006. GMAC Mortgage, LLC transferred its interest to Fannie Mae. Debtor GMAC Mortgage LLC serviced the loan from June 2, 2006 until servicing transferred to Green Tree Servicing on February 1, 2013.<br><br>Claimant asserts "Remodification and bankruptcy with principal adjustment" as the basis for the claim in box 2 of the proof of claim form and attached a letter and some type of transaction history statement. | 9-10 |

ny-1206949

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Debtors have no liability for Claimant's assertion that the principal was arbitrarily changed on his loan after his loan modification. Debtors' servicing notes validate that principal balance was handled appropriately. The original principal balance of the loan was $152,000, which was paid down through the application of payments, July 7, 2006 to the first date mentioned by Claimant, November 4, 2011, resulting in the unpaid principal balance of $145,299.11. Debtors approved a permanent traditional loan modification on December 14, 2011 and the account was updated with the new loan modification terms on December 28, 2011. Through this traditional loan modification, the unpaid principal balance increased to $170,004.83, as outlined in section 1 of the permanent traditional loan modification documents, because of $14,815.85 in unpaid interest and $10,049.28 in escrow being capped and added to the principal.  A copy of the modification documents are attached hereto as Exhibit A-2.<br><br>The loan was service released to Green Tree Servicing LLC on February 1, 2013, the account was due for February 1, 2013 payment at time of servicing transfer. | |
| 2094 | Savannah Dobbins<br><br>638 1/2 S Liberty<br>Alliance, OH 44601 | General Servicing Issues | Midwest America Financial Corp. originated the loan on June 13, 2000.  Debtor Residential Funding Company purchased the loan from Midwest America and transferred its interest when the loan was securitized on or about May 1, 2007 where LaSalle Bank, NA was appointed as trustee. Debtor Homecomings Financial | 7-8 |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
|  | $44,164.16<br><br>General Unsecured<br>GMAC Mortgage, LLC |  | serviced the loan from March 7, 2008 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage serviced the loan until servicing was transferred to Ocwen Loan Servicing on February 16, 2013.<br><br>Claimant asserts "Services performed Mortgage note" as the basis for the claim in box 2 of the proof of claim form. A letter was mailed to Claimant on June 21, 2013 requesting additional information. The response received on July 23, 2013 asserts "The information I sent to you shows that I had a chance to get completely caught up on my mortgage payments. With the help of East Akron Neighborhood Development Corporation (EANDC), GMAC would only accept one payment of $367.00. EANDC also help me get from a variable rate, to a fixed rate, EANDC thought it to be strange that they would only accept $367.00 when it was explained to them (GMAC) they could help make my mortgage current. Then my payment was misdirected to my escrow account. When I confronted them (GMAC) about the payment they said it was nothing they can do. Which put me further behind. We tried to get the payments taken out of my disability check, they (GMAC) said no we had to be current. I never seen where my last payment of $900.00 was posted. I would like to be released from any and all debts owed to GMAC or Ocwen. If that cannot be done, please allow me to start with a clean slate. Erase all late fees, inspection fees and late mortgage payments."<br><br>On April 27, 2009, Debtors approved the Claimants for a loan modification, |  |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | changing the loan from an adjustable rate to fixed rate of 6.750% (as of April 1, 2009). The new payment, effective May 1, 2009, was $366.90 ($352.90 P&I and $14.00 Escrow). Debtors also forgave debts of $83.34 in Corporate Advances and $141.75 in Inspections. Debtors received the check from the EANDC, and the funds of $367.00 were applied to the May 1, 2009 payment. Claimant made monthly payments from July 2009 to May 2012; however, the month of June 2009 was missed, and as a result, this made the loan consistently one month behind.<br><br>Debtors have no liability for failure to credit Claimant's last payment because such payment was properly credited.  The payment in the amount of $900.00, mentioned by Claimant, was received on August 20, 2012. It was applied to the May 2012 and June 2012 payments. The loan was approved for charge off on October 19, 2012 due to the very low equity in the property, and Debtors determined it would cost less to charge off the property than to go through a foreclosure sale.  Accordingly, prior to the Petition Date, the Debtors absolved the Claimant of any personal liability on the underlying mortgage note. | |
| 4076 | CHEYNEKE L BALLARD<br><br>237 Lexington Street<br>Birmingham AL 35224 | Wrongful Foreclosure | Southpoint Financial Services, Inc. originated the loan on October 5, 2005. Non-Debtor Decision One Mortgage Company purchased the loan from Southpoint.  Debtor Residential Funding Company purchased the loan from Decision One and transferred its interest when the loan was securitized on or | 8-9 |

10

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | $40,000.00<br>General Unsecured<br><br>GMAC Mortgage, LLC | | about December 1, 2005 where US Bank, NA was appointed as trustee. Debtor Homecomings Financial serviced the loan from December 8, 2005 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage LLC serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimant asserts "Mortgagor" as the basis for the claim in box 2 of the proof of claim form. A letter was mailed to Claimant on May 20, 2013 requesting additional information. The response received on June 25, 2013 asserts "My house was threatened by foreclosure over 5 times . I have spent over 15,000.00 on pulling my house out of foreclosure. Many of my documents were destroyed in the tornado which occurred in B'ham AL April 27, 2011. However you may retrieve all necessary documents from GMAC & Ocwen."<br><br>Debtors have no liability for the allegations that the Debtors acted improperly with regard to foreclosure because in each of the two instances that the account was referred to foreclosure, Claimant was many months past due. Additionally, the Debtors acted appropriately in reviewing Claimant's account for a modification, and on two occasions, granted permanent modifications to the Claimant.<br><br>Per the Debtors' servicing notes and payment history, the loan was first referred | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | to foreclosure on October 20, 2006. A reinstatement agreement was reached on November 27, 2006, and the loan was fully reinstated on April 29, 2007. Per the payment history, Claimant's payments were a month behind by July 2007. Debtors set up a repayment plan on June 2, 2008; however, Claimant failed to make the required payment on June 29, 2008. A repayment plan set up on September 4, 2008 and Claimant again failed to make the required payment on October 8, 2008. Breach letters were sent to Claimant on December 12, 2008, January 9, 2009, March 6, 2009 and April 3, 2009 because the account was owing for the payment due the month immediately prior (*i.e.,*the payments were one month behind). The Debtors received a workout package on April 24, 2009. The modification was denied on May 19, 2009 because it was not possible to reach an affordable payment under the investor's guidelines. The package was re-reviewed on July 28, 2009 and Claimant was approved for a trial HAMP modification. Upon completion of the trial, Claimant was denied for a permanent HAMP modification on November 9, 2009 because the necessary forbearance was too high. A permanent traditional modification was approved on November 11, 2009 and completed on January 13, 2010, bringing the loan current.<br><br>Claimant became delinquent again in February 2010, and was three months delinquent in September 2010. Breach letters were issued on September 10, 2010, October 27, 2010 and December 16, 2010. A workout package was received on November 23, 2010, and was denied for a HAMP modification on | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | November 30, 2010 because the debt-to-income ratio ("DTI") was 25% or less (so the monthly loan payment should have been affordable).  On December 6, 2010, Debtors stopped the review after being informed by Claimant during a phone conversation that she would submit updated financial information.  Claimant was informed during the conversation that review would be stopped until Debtors received the updated information.  During the conversation  a new workout package was received on January 6, 2011.  A missing items letter was sent on January 12, 2011, and the missing information was received on January 27, 2011.  On February 3, 2011, Claimant was denied for a HAMP modification because the debt-to-income ratio was 25% or less (so the payment should have been affordable).  A traditional trial modification was approved on February 2, 2011 and the documents were executed on March 3, 2011.  A permanent modification was approved on April 21, 2011, but Claimant did not return the documents by the investor's deadline, and therefore the modification was denied.<br><br>Debtors mailed to Claimant an offer to permit her to pay off her loan for $32,940 on June 16, 2011.  Claimant advised on June 20, 2011 that she could not afford the settlement, and the offer was closed.<br><br>A new workout package was received on July 7, 2011.  A missing items letter was sent on July 14, 2011, and the missing items were received on July 26, 2011.  Claimant was denied for HAMP modification on July 26, 2011 because the DTI was | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | 25% or less.  A traditional trial modification was approved on August 8, 2011 and completed successfully.  A permanent loan modification was approved on November 10, 2011 and completed on November 30, 2011, bringing the loan current.<br><br>Claimant became delinquent again in January 2012. Claimant was four months delinquent in June 2012, and a breach letter was sent on June 4, 2012.  Claimant submitted an incomplete workout package on August 8, 2012.  A missing items letter was sent on August 20, 2012.  Claimant submitted additional incomplete workout packages on August 24, 2012, September 10, 2012 and September 12, 2012 before providing the requested information on October 4, 2012.  On October 11, 2012, Claimant was denied for a HAMP modification because the payment could not be reduced by at least 10%. On October 12, 2012, Claimant was denied for traditional modification because the payment could not be reduced sufficiently to be affordable.  The loan was referred to foreclosure on October 23, 2012.<br><br>A workout package was received on November 15, 2012.  Claimant was denied a HAMP modification on November 28, 2012 because the debt-to-income ratio did not meet the HAMP guidelines.  Claimant was denied a traditional modification on November 29, 2012 because the payment could not be reduced sufficiently to be affordable.  However, a repayment plan was approved on December 21, 2012. | |

14

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Claimant filed Chapter 13 bankruptcy on December 21, 2012, and the foreclosure was dismissed on December 27, 2012. Claimant's chapter 13 plan provided that payments were to be made to the Debtors through a chapter 13 trustee. Claimant's bankruptcy case was dismissed on January 14, 2014 after she failed to maintain her payments. The loan was paid in full in June 2015. | |
| 3555 | John Douglas Bailey<br><br>6022 Club Oaks Place Dallas, TX 75248<br><br>$46,400.00<br>General Unsecured<br><br>Homecomings Financial, LLC and GMAC Mortgage, LLC | Loan Modification | Homecomings Financial, LLC f/k/a Homecomings Financial Network Inc. originated the loan on March 7, 2008. Debtor GMAC Mortgage, LLC purchased the loan from Homecomings and transferred its interest to Fannie Mae. Debtor Homecomings Financial serviced the loan from March 7, 2008 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage LLC serviced the loan until servicing transferred to GreenTree Servicing on February 1, 2013.<br><br>Claimant asserts "unwillingness of GMAC, Homecomings to resolve errors" as basis for claim in box 2 of the proof of claim form. An attachment to the Proof of Claim asserts "In brief we mortgaged the house in 2009 with Homecomings. By 2011 for medical, and other financial reasons we were in financial trouble. We tried to sell the house in 2010-2011 via Prudential Real Estate and failed. As a parallel effort we applied to HUD-EHLP for relief. At the end of 2011 our application was rejected by HUD because the house was not recorded properly by GMAC (Homecomings) in the county tax records. After several months of reapplying and other staff work, we were accepted for HUD money ($50,00.00) in | 9-10 |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | April 2012. While this was going on, by agreement, we made no monthly mortgage payments and GMAC has made charges that were erroneous or inaccurate. A solution is easily available which uses my money, HUD money and corrects the account. Sadly no progress has been made since April 1, 2012. GMAC it seems will not work cooperatively. Particularly, since the Chapter 11 filing nobody at GMAC has been willing to work with me, and HUD to develop a financing solution, using my money, HUD money, along with GMAC support for my problem. Instead GMAC has rolled up charges to me, late, legal, excess escrow, principal, etc. and has carried on so there is a high likelihood that the HUD-EHLP situation would go away. This with mutual effort is an easy situation to solve - I need GMAC to knock back 1) Charges for Errors 2) Escrow charges in excess of those paying taxes and insurance 3) Mortgage charges incurred from GMAC covering time when GMAC kept the program from succeeding....." A letter was mailed to Claimant on June 21, 2013 requesting additional information. Response received from Claimant on July 17, 2013 requested an extension to respond. Debtor gave Claimant until August 5, 2013 for that response, however there is no record of a response.<br><br>Debtors have no liability for the allegation that GMACM did not work with the Claimant to attempt to approve a loan modification or approval through the EHLP program because, as described more fully below, the Debtors attempted numerous times to work with the Claimant on loss mitigation options, including | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | loan modifications, short sales, and applications to EHLP. However, none of these attempts were successfully completed because either Claimant did not make the necessary payments, Claimant was unsuccessful in selling the property, or EHLP did not approve the Claimant's application.<br><br>Debtors approved Claimant for a loan modification on February 11, 2010. The new payments would go into effect with the April 1, 2010 payment. Even with the loan modification, Claimant was still unable to keep up with the payments. A Repayment Agreement was put in place on June 9, 2010. Claimant agreed to pay $2,585.17 by June 15, $1,723.44 by June 30, $1,723.44 by July 15, and $1,723.46 by July 31. That plan was cancelled when Claimant called to say that the payment could not be made by June 15. Debtors reset the plan, having $3,000.00 due by June 30, 2010, $3,019.23 due by July 31, August 31, September 30 and October 31, 2010, and $3,019.28 due by November 30, 2010. Debtors received $2,585.17 on June 30; however, this was short of the $3,000.00 that was due on this date. The repayment plan was cancelled, as Claimant did not meet the requirements of the agreement.<br><br>On July 23, 2010, Claimant was approved by the Debtors for a Homesaver Forbearance Plan. This plan reduced Claimant's monthly payment to $1,412.13 for the time period of August 15, 2010 to January 15, 2011. At the same time, Claimant advised Debtors that he was trying to market the property. | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | On September 13, 2010, Claimant advised Debtors that there were offers on the property, but there are issues with the foundation and water and he does not know if the property will sell at the price to pay off mortgage. Debtors advised Claimant of the option to undergo a short sale and sell "as is." Offers will be considered but a short sale would be subject to approval by the loan investor. As of December 1, 2010, Claimant had three offers but none could get financing. On December 2, 2010, Debtors received a Federal Reserve complaint, which was responded to on December 9, 2010. Additional information was provided on December 14, 2010. In the complaint, the Claimant alleged that Debtors were not helping with Loss Mitigation efforts. Debtors responded with the information provided above.<br><br>On January 28, 2011, Claimant called to state that he could no longer afford the payments under the loan. Debtors tried to see if the Homesaver Forbearance Plan, which was set to end soon after, could be extended, as the property was in a state with a fast foreclosure process. This would allow Claimant more time to try to market the property. On March 25, 2011, the investor would no longer extend the plan. The Claimant would have to reinstate the loan in full or set up a new repayment plan. Claimant was informed that he would have until April 1, 2011 to provide a deposit to Debtors, otherwise, the Debtors would have no choice but to proceed with a foreclosure action. On April 1, 2011, Claimant called | |

ny-1206949

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | to state he could make a $4,000.00 payment by April 15, which he did on April 13. On April 25, 2011, Claimant requested a payoff statement that he could show to a realtor, as the realtor wanted to reduce the sale price from $496,000.00, which Claimant believed was too low to pay off the mortgage.<br><br>Debtors sent a HOPE letter to Claimant on July 14, 2011 in order to schedule a face to face meeting to discuss a work out option. A meeting was set up for July 28, 2011. At the July 28 meeting, Claimant presented a workout package as well as advised Debtors that he has applied for help from the EHLP.<br><br>Debtors referred the loan to foreclosure on August 2, 2011. Claimant called on August 3, 2011 to inquire about the foreclosure, at which time Debtors explained that foreclosure was initiated because the loan is 214 days delinquent and there is no permanent repayment arrangements in place. Claimant stated that he was approved for funding through EHLP; however, he was waiting for it in writing. Debtors received the conditional approval from EHLP on September 20, 2011. On September 22, 2011, Debtors provided the state authorities with the amount needed to reinstate the account, as requested by the EHLP program. Debtors then placed the foreclosure file on hold until November 7, 2011 to allow time for final EHLP approval, or any possible short sale opportunities.<br><br>Debtors continued to keep the foreclosure file on hold from November 2011 | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | through October 31, 2012. Final approval was never provided from ELHP. In addition, the amount conditionally approved ($50K) by EHLP was no longer enough to reinstate the loan. Claimants could not come up with the additional funds (approximately $7,000.00) to reinstate. EHLP could not provide the $50,000 unless that amount fully reinstated the loan.<br><br>At the time the servicing of the loan transferred to Green Tree on February 1, 2013, the foreclosure file was on hold due to the escrow dispute, with a due date of January 1, 2011. | |
| 4384 | Pauline & Charles Isidienu<br><br>311 Capewood Drive League City, TX 77573<br><br>$44,508.00 General Unsecured<br><br>Homecomings Financial, LLC and GMAC Mortgage, LLC | Escrow Issues | Homecomings Financial, LLC f/k/a Homecomings Financial Network Inc. originated the loan on July 9, 2007. Debtor GMAC Mortgage, LLC purchased the loan from Homecomings and transferred its interest to Freddie Mac.  Debtor Homecomings Financial serviced the loan from March 7, 2008 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage LLC serviced the loan until loan was paid in full on September 2, 2011.<br><br>Claimants assert "Mortgage note, damages incurred" as the basis for the claim in box 2 of the proof of claim form. An attachment included with the Proof of Claim asserts "The main basis of my claim is regarding the amount of money that GMAC charged me monthly for the mortgage, which increased drastically due to their unprofessionalism. My original note was roughly $1,688.09/month (I've attached | 8-9 |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | evidence of this). I had an insurance policy included in the cost per month. I've attached a copy of a notice from the agent regarding this policy, which I still hold until this day. When my policy is due for renewal, my agent sent the paperwork in to GMAC, who claimed that said paperwork was sent to the wrong department. They neither contacted myself nor my agent of this, nor did they just forward the paperwork to the correct department. Rather they sat on it in order to allow it to expire, and then force their own insurance on me, to the tune of $10,340.23. In fact they started charging me BEFORE MY POLICY ACTUALLY EXPIRED (as evidenced by a letter from me to them, claiming just that).  The roughly $10,000.00 was added to my monthly payments, sending said payments steadily upward to around $3,125.66.....In order to keep from losing my homes I was forced to borrower from my 401K. I took out 2 loans, totaling $40,000.00 to serve as a windfall for bills and for both homes....I looked to GMAC to help me to do so, which it refused. I was forced to look into other entities, and fell prey to the Home Rescue Program, a scam operation purporting itself to be a government program. It cost me $4,000 to 'refinance' each home, which of course they did not actually do. They took the money and disappeared. I wound up losing $8,000 on account of this scam. I do not hold GMAC responsible for money lost on my other home - however, I would not have attempted to refinance my GMAC mortgage if not for its artificially inflating my cost per month. I believe I am owed the $4,000 I lost for this home. I also believe I am owed the $10,000 plus interest I borrowed specifically for this home, as evidenced in a separate attachment." A letter was | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
|  |  |  | mailed to Claimant on June 21, 2013 requesting additional information. The response received on July 22, 2013 reiterated the information above.<br><br>The Debtors have no liability for charging Claimants the incorrect amount because at all times the amount charged was proper under section 3 of the Mortgage Note.  Claimants were initially required to pay a monthly escrow in the amount of $672.99 for taxes and hazard insurance, as well as $61.50 for PMI. Monthly mortgage payment at origination was $1,854.36 (not $1,688.09 / month). That monthly payment amount changed to $2,127.17 as of July 2008 after a period escrow analysis. In November 2008, again after periodic escrow analysis, the monthly payment amount changed again to $1,688.09. Claimants did make payments in the amount of $3,125.66 for the months of April, May and June of 2008, but that amount went down to $2,305.75 in July 2008. A new Escrow Statement generated February 4, 2010 lowered the monthly payment to $2,071.95. The February 3, 2011 Escrow Statement further lowered the payment to $2,067.81. The annual disbursements include PMI, taxes, and insurance.<br><br>Debtors sent Claimants a letter dated October 23, 2008, which stated that the insurance policy information provided did not include the required windstorm coverage. A follow up letter was sent, dated December 7, 2008, which advised the Claimant that if proof was not received within 45 days, then coverage up  to $180,000 would be placed. Then, the Debtors sent a letter dated January 25, |  |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | 2009, advising that a windstorm insurance policy was purchased for the period of July 25, 2008 through July 25, 2009 in the amount of $5,661.90. On October 16, 2008, Claimants sent Debtors a fax, which showed a notice of a windstorm insurance policy with an expiration date of October 24, 2008. On November 2, 2008, Claimants resent the same notice, as well as an invoice for policy renewal in the amount of $658.00; however, the renewal does not specify that it is for windstorm coverage.<br><br>Debtors made additional windstorm coverage disbursements on March 3, 2010 and March 4, 2011, which renewed the earlier placed insurance.<br><br>The loan was paid in full on September 2, 2011 and an escrow refund of $5,444.39 was sent to Claimants. | |
| 4388 | Eldorado Canyon Properties, LLC<br><br>c/o Attorney Israel M. Sanchez, Jr.<br>Sanchez & Associates<br>90 Homestead Circle<br>Milford, NH 03055-4250 | Res Judicata | Sherwood Mortgage Group, INc. originated the loan on April 8, 2003. Debtor GMAC Mortgage LLC serviced the loan from April 15, 2003 until servicing transferred to Ocwen Loan Servicing on February 16, 2013.<br><br>Claimant asserts "wrongful, invalid foreclosure of real property" as basis for claim in box 2 of the proof of claim form. Claimant attaches to the proof of claim a series of deeds and assignments of mortgage deed. Claimant provides no further information in the proof of claim. On June 21, 2013, Debtors mailed to Claimant a letter requesting additional information and documentation in support of the | 11 |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | $30,450.08<br>Secured Claim<br><br>Residential Funding Company, LLC | | claim; however, Claimant failed to respond.<br><br>Claimant filed litigation against Debtor on or about November 21, 2011 in the Suffolk Superior Court of the Commonwealth of Massachusetts at case no. 11-4239.  The litigation asserts four causes of action for declaratory relief only, related to the foreclosure of a property in which Claimant asserts an interest as a lien holder of a second mortgage.<br><br>That case was consolidated with Debtor's eviction action in the United States District Court for the District of Massachusetts, case no. 1:11-CV-12111.<br><br>On April 30, 2012 Claimant's causes of action for counts I and II were dismissed by a motion to dismiss filed by the Debtors, which the Court treated as a Motion for Judgment on the Pleadings, because Claimant had no standing to challenge the validity of the mortgage assignments to which it was not a party.  The remaining claims related to the validity of the foreclosure sale proceeding.  Claimant filed a Notice of Appeal almost a year later on March 8, 2013.  In response, Debtors filed a motion to dismiss the interlocutory appeal and for sanctions.  On October 28, 2013, Debtors obtained an order for sanctions, including Debtors' costs, against Claimant and dismissal of the appeal.<br><br>On April 24, 2014, Debtors filed a Motion for Default Judgment related to the | |

24

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | remaining claims regarding the foreclosure proceeding, as well as for Payment of Fees and Costs against Claimant.  The Court granted Debtors' motion in part, and also granted  Debtors its attorneys' fees and costs in the amount of $1,500.  The remaining claims in the consolidated case were to proceed to trial on October 20, 2014.  However, Claimant's case was dismissed with prejudice for failure to pay the sanctions, which dismissed all of the causes of action asserted by Claimant.  A copy of the order is attached to the objection as Exhibit 5  No appeal was filed by Claimant. | |

25

# Exhibit A-1

Investor Loan # █████████████

**After Recording Return To:**
GMAC Mortgage, LLC
3451 Hammond Avenue
Waterloo, IA 50702

This document was prepared by <u>GMAC Mortgage, LLC</u>

_____[Space Above This Line For Recording Data]_____

# MODIFICATION AGREEMENT

Borrower ("I"): LORI PESCE
Lender ("Lender"): GMAC Mortgage, LLC
Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 10/29/1999
Loan Number: ████████
Property Address *[and Legal Description if recordation is necessary]* ("Property"): 24 PLEASANT
STREET   EVERETT MA 02149

If my representations in Section 1 continue to be true in all material respects, then this Modification
Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the
Property, and (2) the Note secured by the Mortgage. The Note is secured by a Mortgage, Deed of Trust,
or Deed to Secure Debt (the "Security Instrument), dated the same date as the Note, and if applicable,
recorded on on  with Instrument Number in Book  and/or Page number  of the real property records of
MIDDLESEX County, MA.  Said Security Instrument covers the real and personal property described in
such Security Instrument (the "Property") located at 24 PLEASANT STREET   EVERETT MA 02149,
which real property is more particularly described as follows:  The Mortgage and Note together, as they
may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in
this Agreement and not defined have the meaning given to them in Loan Documents.

### (Legal Description – Attached as Exhibit if Recording Agreement)

This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.    **My Representations**.  I certify, represent to Lender and agree:

      A.    I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan
           Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to
           make the monthly mortgage payments now or in the near future;
      B.    I live in the Property as my principal residence, and the Property has not been
           condemned;
      C.    There has been no change in the ownership of the Property since I signed the Loan
           Documents;
      D.    I have provided documentation for **all** income that I receive (and I understand that I am
           not required to disclose child support or alimony unless I chose to rely on such income
           when requesting to qualify for a modification of the Loan Documents);

If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document
words signifying the singular (such as "I") shall include the plural (such as "we) and vice versa where appropriate.

E.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct; and,

F.  If Lender requires me to obtain credit counseling in connection with the Program, I will so; and;

G.  I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

2.  **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A.  TIME IS OF THE ESSENCE under this Agreement;

B.  If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

C.  I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.  **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 9/1/2049 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The Loan Documents will be modified and the first modified payment will be due on 10/1/2009.

A.  The new Maturity Date will be: 9/1/2049.

B.  The modified Principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) less any amounts paid to the Lender but not previously credited to my Loan. The new Principal balance of my Note will be 56592.02 (the "New Principal Balance").

C.  $29563.26 of the New Principal Balance shall be deferred (the Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The new Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $56592.02. Interest at the rate of 2.000% will begin to accrue on the Interest Bearing Principal Balance as of 9/1/2009 and the first new monthly payment on the Interest Bearing Principal will be due on 10/1/2009. My payment schedule for the modified Loan is as follows:

| Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Payment Ends on |
|---|---|---|---|---|---|---|
| 2.000% | 9/1/2009 | $171.37 | $843.38, adjusts annually after year 1 | $814.75, adjusts annually after year 1annually after year 1 | 9/1/2049 | 9/1/2014 |
| 3.000% | 9/1/2014 | 199.1 | Adjusts Annually | Adjusts Annually | 10/1/2014 | 9/1/2015 |
| 4.000% | 9/1/2015 | 228.36 | Adjusts Annually | Adjusts Annually | 10/1/2015 | 9/1/2016 |

| 5.000% | 9/1/2016 | 258.93 | Adjusts Annually | Adjusts Annually | 10/1/2016 | 10/1/2017 |
| 5.125% | 9/1/2017 | 262.8 | Adjusts Annually | Adjusts Annually | 10/1/2017 | 9/1/2049 |

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F. I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

G. If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4. **Additional Agreements**. I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless a borrower or co-borrower is deceased or the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

E. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents, except that the Note, and the payment obligation created thereunder, are not enforceable against me personally.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. This Agreement may not, under

any circumstances, be assigned to, or assumed by, a buyer of the Property.

l.    That, as of the Modification Effective Date, if any provision in the Note or in any addendum or
     amendment to the Note allowed for the assessment of a penalty for full or partial prepayment
     of the Note, such provisions is null and void.

In Witness Whereof, the Lender and I have executed this Agreement.

(Seal) _____        _____
LORI PESCE                                   Witness

_____ 10 - 23 - 09 _____                      Smita Das
Date                                         Print Name

(Seal)_____          _____
                                             Witness

_____                Marie-Constance THEODASSIOU
Date                                         Print Name

(Seal)_____          _____
                                             Witness

_____                _____
Date                                         Print Name

(Seal)_____          _____
                                             Witness

_____                _____
Date                                         Print Name

_____[Space Below This Line For Acknowledgement]_____

**BORROWER ACKNOWLEDGMENT**

State of Massachusetts
County of Suffolk

On this 23rd day of November , 2009 before me undersigned, a Notary Public in and for said county and
state, personally appeared LORI PESCE   , personally known to me or identified to my satisfaction to be
the person(s) who executed the within instrument, and they duly acknowledged that said instrument is
their act and deed, and that they, being authorized to do so, executed and delivered said instrument for
the purposes therein contained.

Witness my hand and official seal.

Notary Public
My commission Expires

BRIANA GORGONAS
Notary Public
Commonwealth of Massachusetts
My Commission Expires
December 26, 2014

Date:    9/16/2009

Borrower's Name:    LORI PESCE

Lender's Name and Address:    GMAC Mortgage, LLC
1100 Virginia Drive
Fort Washington, PA  19034

## IMPORTANT INFORMATION ABOUT
## YOUR LOAN MODIFICATION WHICH FEATURES A BALLOON PAYMENT
Please Read Carefully

This disclosure describes the features of your loan modification.

### How Is Your Interest Rate and Initial Payment Determined?

- According to your mortgage payment calculated for long-term affordability, your modified loan will now be a balloon mortgage.
- The amount of the initial monthly payment on your modified loan will be based on three factors:

    - the interest rate reflected in the agreement;
    - the current balance of the loan; and
    - the remaining term \ amortization period of the loan.

Your new monthly payment of principal and interest will be calculated based on an amortization schedule of months, and your loan will have a term of months. Although your new payment will be sufficient enough to substantially pay down your loan balance, a balloon payment in the amount of $29563.26  will be due when the term of your loan expires or when you pay off the modified loan, which will be when you sell or transfer an interest in your house, refinance the loan, or when the last scheduled payment is due, and the Lender will be under no obligation to refinance your loan.

### How Your Monthly Payment Can Change- Balloon Payment

You will be notified in writing at least 90 but not more than 120 days before the date the balloon payment is due.  This notice will be mailed to you at the most current mailing address you supply and will contain information about the amount of the balloon payment, the date it is due and the telephone number of the Lender's representative (or loan servicer's representative) available to answer questions you may have about the notice.

THE MODIFIED TERM OF THE LOAN IS  MONTHS AS A RESULT, YOU WILL BE REQUIRED TO PAY THE ENTIRE REMAINING UNPAID PRINCIPAL BALANCE AND ACCRUED INTEREST OWING WHEN THE TERM OF YOUR LOAN EXPIRES, OR WHEN YOU PAY OFF THE MODIFIED LOAN, WHICH WILL BE WHEN YOU SELL OR TRANSFER AN INTEREST IN YOUR HOUSE, REFINANCE THE LOAN, OR WHEN THE LAST SCHEDULED PAYMENT IS DUE.

THE LENDER HAS NO OBLIGATION TO REFINANCE THIS LOAN AT THE END OF ITS TERM. THEREFORE, YOU MAY BE REQUIRED TO REPAY THE LOAN OUT OF ASSETS YOU OWN OR YOU MAY HAVE TO FIND ANOTHER LENDER WILLING TO REFINANCE THE LOAN.

ASSUMING THIS LENDER OR ANOTHR LENDER REFINANCES THE LOAN AT MATURITY, YOU WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN.  YOU MAY ALSO HAVE TO PAY SOME OF ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

Example of Balloon Payment

- <<Amortization Extension and Principal Deferment>> The payment amount due at loan maturity can change substantially based upon amount of the loan, interest rate, and any principal payments you choose to make before loan maturity, among other factors.

| Unpaid Loan Balance at Time of Modification | $100,000 |
| Loan Balance That Does Not Accrue Interest (Amount Forborne) | $25,000 |
| Loan Balance That Does Accrue Interest | $75,000 |
| Interest Rate | 7.7500% |
| Remaining Loan Term | 20 years |
| Remaining Amortization Schedule | 40 years |
| Monthly Principal and Interest Payment | $498.55 |
| Balloon Payment Due | $94,115.71 |

In the example above, the outstanding loan balance of $94,115.71 would be due and payable at the end of 20 years, which represents the unpaid loan amount resulting from the extended amortization and the $25,000 of loan balance that did not accrue interest.

This summary is intended for reference purposes only. Important information relating specifically to your loan modification will be contained in the loan modification documents, which alone will establish your rights and obligations under the loan modification plan. This disclosure does not address any other payments that may be required under the terms of your loan, for example, monthly escrow payments

THE PURPOSE OF THIS DISCLOSURE IS TO PROVIDE VARIOUS DETAILS ON THE TYPE OF LOAN MODIFICATION FOR WHICH YOU HAVE EXPRESSED INTEREST. THE DISCLOSURE DOES NOT CONSTITUTE A COMMITMENT ON THE PART OF THE LENDER TO MODIFIY YOUR LOAN.

Receipt of a copy of this Disclosure is hereby acknowledged.

_10·23·09_
Date

_Lori Pesce_
LORI PESCE

_____
Date

_____
Date

_____
Date

## Exhibit A-2

2/7/2012

**GMAC** Mortgage



Re: Account Number



Dear JOHN METKUS III

**Congratulations! Your request for a loan modification has been approved subject to the following:**

-Receipt of your contribution in the form of certified funds  ✓
-Receipt of the signed and (if applicable) notarized and/or witnessed loan modification agreement and any attachments  ✓
-Receipt of clear title, if applicable  ⟨

Highlights of the enclosed Loan Modification Agreement and instructions for completing and returning it are as follows:

- The contribution amount of $1,392.59 in the form of certified funds, is due in our office by February 17, 2012.
- The beginning interest rate is 4.62500%. If you are approved for a step rate modification the adjustment terms are listed in the Modification Agreement.
- This modification may incorporate principal deferment of $0.00 that will result in a principal payment that will be due when the term of your loan expires December 1, 2051 (Maturity Date).
- This type of modification may incorporate some forgiveness of principal and/or interest, resulting in a reduction of your New Principal Balance. The amount of your principal forgiveness will be $0.00 and interest will be $0.00. **This may result in a tax consequence to you and we encourage you to contact a tax professional to discuss any questions you may have.**
- The first modified payment begins January 1, 2012.
- **Modified payment amount**

  | | |
  |---|---|
  | Principal and Interest | $777.99 |
  | Escrow | $572.83 |
  | **Total Payment** | **$1,350.82** |

- If the Modification Agreement has notary provisions at the end:
  - o  Do NOT sign the enclosed Loan Modification Agreement unless you are in the presence of a notary.
  - o  This document must be signed in the presence of a notary and (if applicable) other witnesses.
- If executing an ink signature (paper), all of the documents must be executed and the signatures must be exactly as the names are typed. The signed and (if applicable) notarized Loan Modification Agreement should be returned using the enclosed pre-paid overnight envelope.
- If any modification closing costs are more than projected, the difference will be assessed to the account.
- All miscellaneous fees and costs – excluding late charges – may not have been included in the loan modification and will remain outstanding.
- For loans with mortgage insurance, the mortgage insurance premium may be subject to change following permanent modification. Any change would be proportionate to the modified loan amount, including any deferred balance, and would be reflected in a future escrow analysis following permanent modification.

FIXED NO STEP

The contribution and executed loan modification documents are due back by February 17, 2012. Please return to:

GMAC Mortgage, LLC
3700 J Street SW
Suite 222
Cedar Rapids, IA 52404

**IMPORTANT!** The loan modification will not be complete until we receive all properly executed documents and the contribution amount. If the modification is not completed we will continue to enforce our lien. If the conditions outlined above are not satisfied the modification will be withdrawn.

If you have any questions regarding this modification offer, please contact a modification specialist directly at (800) 850-4622 Monday – Thursday 8:00 AM to 7:00 PM, Friday 8:00 AM to 5:00 PM, Central Time.

Loan Modification Specialist
Enclosures

**NOTICE:** Federal law requires that we advise you that this notice is from a debt collector attempting to collect on a debt and any information obtained will be used for that purpose.

If you are currently involved in a bankruptcy proceeding or if you have been discharged of your personal liability for the repayment of this debt, this notice is being provided for informational purposes only, it is not an attempt to hold you personally responsible for the debt and any rights we may choose to pursue will be exercised against the property only.

FIXED NO STEP

Record & Return To:
GMAC Mortgage, LLC
Attention: Loss Mitigation
3451 Hammond Avenue
Waterloo, IA 50702
Investor Number:1701417856
Custodian ID: A1

———————————————————————*[Space Above This Line For Recorder's Use]*————————

# NON-HAMP LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement") made this December 1, 2011 ("Effective Date") between  JOHN METKUS III  Married          ("Borrower") and GMAC Mortgage, LLC, Lender\Servicer or Agent for Lender\Servicer ("Lender"), amends and supplements that certain promissory note ("Note") dated June 2, 2006 in the original principal sum of  One Hundred Fifty Two Thousand  Dollars and No Cents ($152,000.00) executed by Borrower.  The Note is secured by a Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the same date as the Note, and if applicable, recorded on  with Instrument Number  in Book and/or Page Number  of the real property records of HARRIS County, TX.  Said Security Instrument covers the real and personal property described in such Security Instrument (the "Property") located at 9218 EDGELOCH DRIVE SPRING TX 77379-0000, which real property is more particularly described as follows:

( Legal Description if Applicable for Recording Only )

Borrower acknowledges that "Lender" is the legal holder and the owner, or agent\servicer for the legal holder and owner, of the Note and Security Instrument and further acknowledges that if "Lender" transfers the Note, as amended by this Agreement, the transferee shall be the "Lender" as defined in this Agreement.

Borrower has requested, and Lender has agreed, to extend or rearrange the time and manner of payment of the Note and to extend and carry forward the lien(s) on the Property whether or not created by the Security Instrument.

Now, therefore, in consideration of the mutual promises and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

FIXED NO STEP

1.  Borrower acknowledges that as of the Effective Date, the amount payable under the Note and Security Instrument (New Principal Balance) is One Hundred Seventy Thousand Four Dollars and Eighty Three Cents ($170,004.83).

2.  The Maturity Date is December 1, 2051.

3.  Borrower hereby renews and extends such indebtedness and promises to pay jointly and severally to the order of Lender the Principal Balance, consisting of the amount(s) loaned to Borrower by Lender and any accrued but unpaid interest capitalized to date as applicable, along with any other amounts that may come due under the terms of the original Note and Security Instrument

4.  Interest will be charged on the unpaid, non-deferred, 'New Principal Balance" until the non-deferred principal has been paid in full. Borrower promises to pay interest at the rate of 4.62500% from December 1, 2011 until I payoff my loan at the time when I sell or transfer any interest in my home, refinance the loan, or when the last scheduled payment is due. If Step Rate: The rate of interest I pay will change based upon Payment Schedule below.

5.  Borrower promises to make monthly principal and interest payments of $777.99, beginning on January 1, 2012, and continuing thereafter on the same day of each succeeding month, according to the Payment Schedule below until all principal and interest is paid in full. The amounts indicated in this paragraph do not include any required escrow payments for items such as hazard insurance or property taxes; if such escrow payments are required the monthly payments will be higher and may change as the amounts required for escrow items change.

6.  If on December 1, 2051 (the "Maturity Date"), Borrower still owes any amounts under the Note and Security Instrument, including any "Deferred Principal Balance" as provided for in this Agreement, Borrower will pay these amounts in full on that date.

7.  If "Lender" has not received the full amount of any monthly payment within the grace period provided for in the original Note or as otherwise provided for by law, Borrower will pay a late payment fee to "Lender" in an amount calculated based on the late charge percentage provided for in the original Note, or as otherwise provided for by law, and the monthly payment required under this Agreement, with a maximum as provided for in the Note, or otherwise provided by law. Borrower will pay this late charge promptly but only once on each late payment. The late charge is not in lieu of any other remedy of Lender, including any default remedy.

8.  It is the intention of the parties that all liens and security interests described in the Security Instrument are hereby renewed and extended (if the Maturity Date of the original Note has been changed) until the indebtedness evidenced by the Note and this Agreement has been fully paid. Lender and Borrower acknowledge and agree that such renewal, amendment, modification, rearrangement or extension (if applicable) shall in no manner affect or impair the Note or liens and security interests securing same, the purpose of this Agreement being simply to modify, amend rearrange or extend (if applicable) the time and the manner of payment of the Note and indebtedness evidenced thereby, and to carry forward all liens and security interests securing the Note, which are expressly acknowledged by Borrower to be valid and subsisting, and in full force and effect so as to fully secure the payment of the Note.

9.  If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must

FIXED NO STEP

pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower. For purposes of this paragraph, "interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is transfer of title by Borrower at a future date to a purchaser.

10.    As amended hereby, the provisions of the Note and Security Instrument shall continue in full force and effect, and the Borrower acknowledges and reaffirms Borrower's liability to Lender thereunder. In the event of any inconsistency between this Agreement and the terms of the Note and Security Instrument, this Agreement shall govern. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement, including but not limited to, in the case of the Borrower, the obligation to pay items such as taxes, insurance premiums or escrow items, as applicable. Any default by Borrower in the performance of its obligations herein contained shall constitute a default under the Note and Security Instrument, and shall allow Lender to exercise all of its remedies set forth in said Security Instrument.

11.    Lender does not, by its execution of this Agreement, waive any rights it may have against any person not a party hereto. This Agreement may be executed in multiple counterparts, each of which shall constitute an original instrument, but all of which shall constitute one and the same Agreement.

EACH OF THE BORROWER AND THE LENDER ACKNOWLEDGE THAT NO REPRESENTATIONS, AGREEMENTS OR PROMISES WERE MADE BY THE OTHER PARTY OR ANY OF ITS REPRESENTATIVES OTHER THAN THOSE REPRESENTATIONS, AGREEMENTS OR PROMISES SPECIFICALLY CONTAINED HEREIN. THIS AGREEMENT, AND THE NOTE AND SECURITY INSTRUMENT (AS AMENDED HEREBY) SETS FORTH THE ENTIRE UNDERSTANDING BETWEEN THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES.

FIXED NO STEP

LA CYNDA M WAGG
Notary Public
STATE OF TEXAS
My Comm. Exp. 10-08-13

Executed effective as of the day and year first above written.

15 Feb 2012
_____
Date    JOHN METKUS III

_____
Witness

_____
Print    La Cynda M. Wagg

_____
Date    _____

_____


_____


_____
Date    _____

_____
Witness

_____
Print

_____
Date    _____

_____


GMAC Mortgage, LLC

By: _____
    Authorized Officer

Date: _____

**LENDER ACKNOWLEDGMENT**

FIXED NO STEP

*Feb 7*
*Cedar Rapids*

**GMAC** Mortgage

*17 Feb due*
*1350.82*
*Payment should*
*be 1 Mar*
*applied*
*applied*

Date 2/7/2012

Dear Borrower: JOHN METKUS III

We received the loan modification documents and appreciate the time you have taken to sign and return them. However, the documents were not complete and we find it necessary to return the loan modification for proper execution.

Please sign and return the loan modification and all attachments in the enclosed Federal Express package within 10 days from the date of this letter. Failure to return the properly executed document and applicable attachments may result in denial of the modification.

**Notice – This is an attempt to collect a debt and any information obtained will be used for that purpose. If your debt has been discharged in bankruptcy, our rights are being exercised against the collateral for the above referenced loan, not as a personal liability.**

If you have any questions regarding the above information, please call 1-800-850-4622.
Sincerely,

Loss Mitigation Department

FIXED NO STEP

14 February, 2012

GMAC Mortgage LLC                    **Account #** ████████
3700 J Street SW Ste#222
Cedar Rapids, IA 52404              **Case # 09-37746**

Representative:
I have enclosed the signed loan modification and certified check in the amount of $1,350.82.

**I request the following:**

1.  **Written acknowledgement** from GMAC that the payment will be applied to March 1, 2012 in
    accordance with the loan modification and telephone conversation with Warren (loan modification) ID
    #12487 this date that all items are in order. ( I have received within 7-9 Feb  **six  different documents**
    from GMAC departments **with 4 different amount requests!**)
2.  A **complete loan transaction history** since 2006 through present as the amount of payments and
    principal has been changes 6 times and conflicting information is being received by me from different
    GMAC locations.
3.  Lastly, I am requesting **one GMAC representative audit** of my account so that I may have an
    explanation of all that has transpired since 2006 and adjustments were made.

I am desperately in need of professional assistance from GMAC as I have received conflicting information and
money amounts since 2007.  There are errors in the calculations with wreck less information coming from
several GMAC locations with different amounts and adjustments.
Please initiate due diligence and **have one representative audit** the account so that I can understand where
these amounts are coming from.  I have a complete file of all correspondence from and to GMAC and I feel
that  I have been mislead by transactions that have been posted and adjusted to my account.

I have received correspondence from no less than 7 departments and personnel and none of the information
is consistent with no single point of contact such as a case manager and recourse. (Late fees, principal
changes, amount of payment request for same period)    I honestly don't know what to pay!

Personally I have experienced loss of income, family member mental illness, and bankruptcy.  **PLEASE ASSIST
ME IN CLARIFING THIS LOAN INFORMATION AND ACCOUNT ADJUSTMENTS. Please coordinate for
explanation.**
I await your information and consideration.

John Metkus          832.274.8726     jack.metkus@hp.com

Cc:
GMAC Mortgage Hamp Processing, Louisville, KY 40290-1719          4 Atch:
GMAC Loss Mitigation Horsham, PA 19044                           -Modification document
GMAC Mortgage Waterloo, IA 50704                                 -Default letter
GMAC Mortgage LLC (Tracy  D. Fink) San Diego, CA 92177           -Coupon March 2012
GMAC Mortgage LLC Bankruptcy Dept Ft Washington, PA 19034        -Amortization Schedule
FHA National Servicing Center Oklahoma City, OK  73102

2/7/2012                                                    GMAC Mortgage

JOHN METKUS III
9218 EDGELOCH DRIVE
SPRING TX 77379-0000

Re: Account Number ████████████████
                    9218 EDGELOCH DRIVE
                    SPRING TX 77379-0000

Dear JOHN METKUS III

**Congratulations!  Your request for a loan modification has been approved subject to the following:**
    -Receipt of your contribution in the form of certified funds  ✓
    -Receipt of the signed and (if applicable) notarized and/or witnessed loan modification agreement and any
    attachments  ✓
    -Receipt of clear title. if applicable  Z

Highlights of the enclosed Loan Modification Agreement and instructions for completing and returning it are as
follows:

- The contribution amount of $1,392.59 in the form of certified funds, is due in our office by February 17,
  2012.
- The beginning interest rate is 4.62500%.  If you are approved for a step rate modification the adjustment
  terms are listed in the Modification Agreement.
- This modification may incorporate principal deferment of $0.00 that will result in a principal payment that
  will be due when the term of your loan expires December 1, 2051 (Maturity Date).
- This type of modification may incorporate some forgiveness of principal and/or interest, resulting in a
  reduction of your New Principal Balance.  The amount of your principal forgiveness will be $0.00 and
  interest will be $0.00.  **This may result in a tax consequence to you and we encourage you to contact a
  tax professional to discuss any questions you may have.**
- The first modified payment begins January 1, 2012.
- **Modified payment amount**
      Principal and Interest        $777.99
      Escrow                        $572.83
      **Total Payment**             **$1,350.82**
- If the Modification Agreement has notary provisions at the end:
    o  Do NOT sign the enclosed Loan Modification Agreement unless you are in the presence of a notary.
    o  This document must be signed in the presence of a notary and (if applicable) other witnesses.
- If executing an ink signature (paper), all of the documents must be executed and the signatures must be
  exactly as the names are typed.  The signed and (if applicable) notarized Loan Modification Agreement
  should be returned using the enclosed pre-paid overnight envelope.
- If any modification closing costs are more than projected, the difference will be assessed to the account.
- All miscellaneous fees and costs – excluding late charges – may not have been included in the loan
  modification and will remain outstanding.
- For loans with mortgage insurance, the mortgage insurance premium may be subject to change following
  permanent modification.  Any change would be proportionate to the modified loan amount, including any
  deferred balance, and would be reflected in a future escrow analysis following permanent modification.

FIXED NO STEP

1 of 4
Atch

# GMAC Mortgage

3451 Hammond Ave
P.O. Box 780
Waterloo, IA 50704-0780

*default*
*Feb 8* ✓
*Waterloo*

02/08/12



RE:   Account Number ▮▮▮▮▮▮▮▮
      Property Address 9218 EDGELOCH DRIVE

SPRING TX 77379-0000

Dear Borrower(s):

Pursuant to the terms of your Note and Deed of Trust, you are
hereby served notice of the following:

You have not made timely payments of principal and interest under
the Note, and escrow requirements under the Deed of Trust, which
sums were due for 01/01/12 through 02/01/12.  Due to your
failure to make such payments, you also owe late charges
of $  38.89.

Demand is hereby made for you to cure such default by paying all
amounts due now on or before thirty (30) days from the date this
letter is mailed.  The amount due as of the date of this letter
is $  458.94  This amount includes outstanding charges,
if any.  If any other installments or expenses become due at the
time you attempt to cure this default, they will be added to this
figure.  Payment must be made by cashier's check or certified
funds.  Partial payment will not be accepted.

If the amount needed to cure the default is not received within
30 days from the date this notice is mailed, we will accelerate
the loan balance secured by the Deed of Trust.  We will also
exercise our right to foreclose the lien created under the Deed
of Trust and sell the property, securing payment of the notice.
In addition, if any real estate taxes are past due they are to be
brought current.

(continued on back)

*#2 of 4*
*ATCH*

um Number.
: Phone #:¹    (281)651-2821

Visit us at www.gmacmortgage.com for
account information or to apply on-line.

*Feb 8, 12*

*Arizona*

0025587 20120204 L8042809 OUREG  2 OE DOM L8043000007 148316  GH



> For information about your existing account,
> please call: 1-800-766-4622.
>
> For information about refinancing or obtaining
> a new loan, please call: 1-866-690-8322

:ur mailing address, borrower and co-borrower information.  Make necessary corrections on this portion of the statement, detach and mail to address listed  for inquiries on the reverse side

## Account Information

| | |
|---|---|
| : Number | |
| :nt Date | February -01, 2012 |
| :y Date | December 01, 2051 |
| :st Rate | 4.62500 |
| :st Paid Year-to-Date | $1,306.20 |
| :aid Year-to-Date | $0.00 |
| Balance | $1,103.24 |
| :al Balance(PB)* | $168,730.43 |

## Details of Amount Due/Paid

| | |
|---|---|
| Principal and Interest | $777.99 |
| Subsidy/Buydown | $0.00 |
| Escrow | $624.92 |
| Unpaid Amount | $0.00 |
| Late Charges | $0.00 |
| Other | $0.00 |
| Total Unpaid Amount | $1,402.91 |
| Payment Date | March 01, 2012 |

:ustomer Care inquiries call:  1-800-766-4622
:surance inquiries call:      1-800-256-9962
:ayment Arrangements call:    1-800-850-4622

## Account Activity Since Last Statement

| :scription | Pmt Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| al Principal | 02/01/12 | 02/01/12 | $41.76 | $41.76 | | | | | |
| | 02/01/12 | 02/01/12 | $1,402.91 | $127.02 | $650.97 | $624.92 | | | |
| al Principal | 01/01/12 | 02/01/12 | $982.86 | $982.86 | | | | | $982.86- |
| | 01/01/12 | 02/01/12 | $38.89 | | | | | $38.89 | $38.89- |
| | 01/01/12 | 02/01/12 | $1,402.91 | $122.76 | $655.23 | $624.92 | | | $1,402.91- |
| | 12/01/11 | 01/31/12 | | | | $132.57 | | | |
| ed | 06/01/10 | 01/30/12 | $6.68 | | | | | | $6.68- |
| | 12/01/11 | 01/23/12 | | | | $132.57- | | | |
| D CAP FNDS | 12/01/11 | 01/23/12 | $6.68 | | | | | | $6.68 |

:s is your Principal Balance only, not the amount required to pay the loan in full.  For payoff figures and mailing instructions, call the
:omer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
: automatic payment sign-up information and other payment options.

## Important News

:ur records indicate that you have filed for bankruptcy protection.  This statement applies to
:ur lien on your property and is being provided for informational purposes only.  If you choose
:o continue to remit payments, please include the coupon below with any payments you send.
: you do not want us to send you mortgage account statements in the future, please contact us
:t the number listed above.

### See Reverse Side For Important Information And State Specific Disclosures

PAGE 1 OF 2 PAGES
### Mail This Portion With Your Payment

Monthly Payment Coupon

| :mber | Due Date | Mortgage Payment | Total Amount Due | Amount Due With Late Fee If Received 15 Days AFTER Due Date | |
|---|---|---|---|---|---|
| :3 | 03/01/12 | $1,402.91 | $1,402 91 | | |
| :S III | | | | $1,441.80 | |

Please assist GMAC Mortgage

*# 3 of 4  ATCH*

### GMAC Mortgage

AMORTIZATION SCHEDULE ✓

Waterloo

02/09/2012 ✓

██████████████████

██████████████████████████

| PRINCIPAL BALANCE: | 170,004.83 |
| INTEREST RATE: | 4.62500 |
| PRINCIPAL AND INTEREST PAYMENT: | 777.99 |
| OSI UNCOLLECTED INTEREST AMOUNT: | 0.00 |

*168,730.43 ?*          *1,350.82 ✓*

| PAYMENT DATE | PRINCIPAL BALANCE | P&I AMOUNT | PRINCIPAL APPLIED | INTEREST PAID | ADDITIONAL PRINCIPAL AMOUNT | NEW PRINCIPAL BALANCE |
|---|---|---|---|---|---|---|
| 01/01/12 | 170004.83 | 777.99 | 122.76 | 655.23 | 0.00 | 169882.07 |
| 02/01/12 | 169882.07 | 777.99 | 123.24 | 654.75 | 0.00 | 169758.83 |
| 03/01/12 | 169758.83 | 777.99 | 123.71 | 654.28 | 0.00 | 169635.12 |
| 04/01/12 | 169635.12 | 777.99 | 124.19 | 653.80 | 0.00 | 169510.93 |
| 05/01/12 | 169510.93 | 777.99 | 124.67 | 653.32 | 0.00 | 169386.26 |
| 06/01/12 | 169386.26 | 777.99 | 125.15 | 652.84 | 0.00 | 169261.11 |
| 07/01/12 | 169261.11 | 777.99 | 125.63 | 652.36 | 0.00 | 169135.48 |
| 08/01/12 | 169135.48 | 777.99 | 126.11 | 651.88 | 0.00 | 169009.37 |
| 09/01/12 | 169009.37 | 777.99 | 126.60 | 651.39 | 0.00 | 168882.77 |
| 10/01/12 | 168882.77 | 777.99 | 127.09 | 650.90 | 0.00 | 168755.68 |
| 11/01/12 | 168755.68 | 777.99 | 127.58 | 650.41 | 0.00 | 168628.10 |
| 12/01/12 | 168628.10 | 777.99 | 128.07 | 649.92 | 0 00 | 168500.03 |
| 01/01/13 | 168500.03 | 777.99 | 128.56 | 649.43 | 0.00 | 168371.47 |
| 02/01/13 | 168371.47 | 777.99 | 129.06 | 648.93 | 0 00 | 168242 41 |
| 03/01/13 | 168242.41 | 777.99 | 129.56 | 648.43 | 0.00 | 168112.85 |
| 04/01/13 | 168112.85 | 777.99 | 130.06 | 647.93 | 0.00 | 167982.79 |
| 05/01/13 | 167982.79 | 777.99 | 130.56 | 647.43 | 0.00 | 167852.23 |
| 06/01/13 | 167852.23 | 777.99 | 131.06 | 646.93 | 0.00 | 167721.17 |
| 07/01/13 | 167721.17 | 777.99 | 131.56 | 646.43 | 0.00 | 167589.61 |
| 08/01/13 | 167589.61 | 777.99 | 132.07 | 645.92 | 0.00 | 167457.54 |
| 09/01/13 | 167457.54 | 777.99 | 132.58 | 645.41 | 0.00 | 167324.96 |
| 10/01/13 | 167324.96 | 777.99 | 133.09 | 644.90 | 0.00 | 167191.87 |
| 11/01/13 | 167191.87 | 777.99 | 133.60 | 644.39 | 0.00 | 167058.27 |
| 12/01/13 | 167058.27 | 777.99 | 134.12 | 643.87 | 0.00 | 166924.15 |
| 01/01/14 | 166924.15 | 777.99 | 134.64 | 643.35 | 0.00 | 166789.51 |
| 02/01/14 | 166789.51 | 777.99 | 135.16 | 642.83 | 0.00 | 166654.35 |
| 03/01/14 | 166654.35 | 777.99 | 135.68 | 642.31 | 0.00 | 166518.67 |
| 04/01/14 | 166518.67 | 777.99 | 136.20 | 641.79 | 0.00 | 166382.47 |
| 05/01/14 | 166382.47 | 777.99 | 136.72 | 641.27 | 0.00 | 166245.75 |
| 06/01/14 | 166245.75 | 777.99 | 137.25 | 640.74 | 0.00 | 166108.50 |
| 07/01/14 | 166108.50 | 777.99 | 137.78 | 640.21 | 0.00 | 165970.72 |
| 08/01/14 | 165970.72 | 777.99 | 138.31 | 639.68 | 0.00 | 165832.41 |
| 09/01/14 | 165832.41 | 777.99 | 138.84 | 639.15 | 0.00 | 165693.57 |
| 10/01/14 | 165693.57 | 777.99 | 139.38 | 638.61 | 0.00 | 165554.19 |
| 11/01/14 | 165554.19 | 777.99 | 139.92 | 638.07 | 0.00 | 165414.27 |
| 12/01/14 | 165414.27 | 777.99 | 140.46 | 637.53 | 0.00 | 165273.81 |
| 01/01/15 | 165273.81 | 777.99 | 141.00 | 636.99 | 0.00 | 165132.81 |
| 02/01/15 | 165132.81 | 777.99 | 141.54 | 636.45 | 0.00 | 164991.27 |
| 03/01/15 | 164991.27 | 777.99 | 142 09 | 635.90 | 0.00 | 164849.18 |
| 04/01/15 | 164849.18 | 777.99 | 142.63 | 635.36 | 0.00 | 164706.55 |

# 4 of 4
ATCH

## Exhibit B

ny-1207814

In re RESIDENTIAL CAPITAL, LLC, et al. (CASE NO. 12-12020 (MG)) (JOINTLY ADMINISTERED)
EXHIBIT B
NINETIETH OMNIBUS OBJECTION - REDUCE & ALLOW (BORROWER CLAIMS)

| | Name of Claimant | Claim Number | Date Filed | Claim Amount | Asserted Debtor Name and Case Number | Reduced and Allowed Claim Amount | Modified Debtor Name and Case Number | Reason for Reduction and Allowance of Claim |
|---|---|---|---|---|---|---|---|---|
| 1 | Mary R. Biancavilla | 4397 | 11/09/2012 | $144,000 General Unsecured | Residential Capital, LLC Case Number 12-12020 | $23,544.14 General Unsecured | GMAC Mortgage, LLC Case Number 12-12032 | Debtors ninetieth omnibus objection seeks to reduce and allow Claim No. 4397 ("Claim 4397") to a general unsecured claim in the amount of $23,544.14 against GMAC Mortgage, LLC.<br><br>As the basis for Claim 4397, Claimant asserts fraudulent conduct in relation to the Original Loan (defined below). On September 20, 2013, Debtors filed the Debtors Forty-Ninth Omnibus Objection to Claims (No Liability Borrower Claims - Books and Records) [Docket No. 5161], which included an objection to Claim 4397. On November 14, 2013, Claimant filed the Response of Mary R. Biancavilla to Debtors Forty-Ninth Omnibus Objection to Claims (No Liability Borrowers Claims – Books and Records) and Request for Enlargement of Time Limitations Specified by Notice of Filing of Exhibits 2 through 21 Comprising the Plan Supplement to the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors, and Declaration of Mary R. Biancavilla Pursuant to Title 28 U.S.C. Section 1746 (the "Response") [Docket No. 5755]. The Response alleges, inter alia, that: (i) Claimant was coerced into a Home Affordable Modification Program ("HAMP") loan modification; (ii) upon contacting Debtors for information regarding the Original Loan, Claimant was involuntarily provided with a HAMP loan modification; and (iii) Claimant was subsequently (a) told that she did not qualify for a HAMP loan modification, (b) placed into delinquent status and (c) involuntarily given a higher monthly payment, higher interest rate, a variable or adjustable rate and an extended loan life. Following the filing of the Response, Debtors and Claimant engaged in settlement discussions in an effort to consensually resolve Claim 4397. At the hearing before this Court on May 29, 2014, the Borrower Trust informed the Court that it had provided Claimant with a settlement agreement, which Claimant was reviewing, and that it was optimistic that Claim 4397 would be resolved. The Borrower Trust further indicated that it would advise the Court in the event that Claim 4397 needed to be placed back on the Court s calendar. Since that time, the Borrower Trust and Claimant continued to engage in discussions, but were ultimately unable to consensually resolve Claim 4397.<br><br>On or about December 16, 2005, Claimant entered into an adjustable rate note with Homecomings Financial Network, Inc. (the "Original Loan"), and Homecomings Financial began servicing the Original Loan at that time. Claimant entered into a trial HAMP loan modification on or about December 23, 2009 and successfully completed such trial (the "Trial Modification"). The Trial Modification required Claimant to make three payments over three consecutive months each in the amount of $679.83, which included principal, certain escrow items and an interest rate of approximately .6377%. On or about April 5, 2010, Claimant was offered and accepted a permanent, traditional, non-HAMP step-rate loan modification (the "Permanent Modification"). The Permanent Modification provided Claimant with a step rate mortgage in which Claimant is to pay principal and an interest rate of approximately: (i) 2.8750% from June 1, 2010 through May 1, 2014; (ii) 3.8750% from June 1, 2014 through May 1, 2015; (iii) 4.8750% from June 1, 2015 through May 1, 2016; and (iv) 5.0000% from June 1, 2016 through January 1, 2036. Had Claimant been offered a permanent HAMP loan modification, rather than a traditional step rate modification, the Borrower Trust believes that the such permanent HAMP modification would have required Claimant to pay principal and an interest rate of approximately: (i) 0.6377% from June 1, 2010 through May 1, 2014; (ii) 1.6377% from June 1, 2014 through May 1, 2015; (iii) 2.6377% from June 1, 2015 through May 1, 2016; (iv) 3.6377% from June 1, 2016 through May 1, 2017; (v) 4.6377% from June 1, 2017 through May 1, 2018; and (vi) 5.0000% from June 1, 2018 through January 1, 2036.<br><br>While the terms of the Permanent Modification were more favorable than those of the Original Loan, they were not as favorable as the terms of the Trial Modification or the terms that the Borrower Trust believes would have been offered in connection with a permanent HAMP modification. Over the remaining life of Claimant s loan, the estimated difference between the amount Claimant would have paid had Claimant received a permanent HAMP loan modification and what Claimant will pay under the Permanent Modification is $23,544.14. Accordingly, the Borrower Trust seeks to reduce and allow Claim 4397 to the amount of $23,544.14. The Borrower Trust contends that $23,544.14 is an exceedingly fair valuation of Claim 4397. The Borrower Trust believes that it is entitled to discount any allowed amount for Claim 4397 to resolve this Claim in an expeditious manner, is not seeking a further reduction at this time; however, the Borrower Trust reserves the right to seek a present value reduction in any future pleadings regarding Claim 4397.<br><br>In July 2009, the servicing of Claimant s loan transferred to GMAC Mortgage, LLC. On September 1, 2013, the servicing of Claimant s loan was transferred to Ocwen Real System ("Ocwen"). Claimant s payments on the loan were current at the time Claimant s account was transferred to Ocwen. |