UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | ) NOT FOR PUBLICATION |
| | ) |
| | ) Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | ) |
| | ) Chapter 11 |
| Debtors. | ) |
| | ) (Jointly Administered) |

**MEMORANDUM OPINION AND ORDER SUSTAINING THE RESCAP BORROWER
CLAIMS TRUST'S OBJECTION TO CLAIM NO. 3503 FILED BY
MOHAMMED K. GHODS & HEIDI M. GHODS**

*A P P E A R A N C E S:*

MOHAMMED K. GHODS & HEIDI M. GHODS
*Pro Se*
2100 N. Broadway, Suite 210
Santa Ana, California 92706
By:   Mohammed K. Ghods
        Heidi M. Ghods

MORRISON & FOERSTER LLP
*Attorneys for the ResCap Borrower Claims Trust*
250 West 55th Street
New York, New York 10019
By:   Norman S. Rosenbaum, Esq.
        Jordan A. Wishnew, Esq.
        Erica J. Richards, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

       Mohammed K. Ghods and Heidi M. Ghods (the "Ghods") filed Claim Number 3503 (the

"Claim") against Debtor Residential Capital, LLC ("ResCap"), seeking relief in the amount of

$60,000.00. The Ghods assert that Debtor GMAC Mortgage, LLC ("GMACM") lacked standing

to apply, and charge the Ghods for, lender-placed insurance on real property located at 12752

Keith Place, Tustin, California 92780 (the "Property"). As detailed below, the ResCap Borrower

Claims Trust (the "Trust") objects to the Claim arguing that GMACM had proper standing to apply the lender-placed insurance.

The Trust adequately shifted the burden by rebutting the prima facie validity of the Ghod's Claim and the Ghods then failed to meet their burden to establish the viability of their Claim. Therefore, the Objection is **SUSTAINED** and the Claim is **DISALLOWED** and **EXPUNGED**.

## I. BACKGROUND

Pending before the Court is the *ResCap Borrower Claims Trust's Eighty-Eighth Omnibus Objection to Claims ((I) No Liability Borrower Claims and (II) Reduce and allow Borrower Claims)* (the "Objection," ECF Doc. # 8859), solely with respect to the Claim. The Trust seeks an order disallowing and expunging the Claim on the basis that the Debtors have no liability on such Claim. The Objection is supported by the declarations of Kathy Priore ("Priore Decl.," Obj. Ex. 2, ECF Doc. # 8859-3), and Norman S. Rosenbaum ("Rosenbaum Decl.," Obj. Ex. 3, ECF Doc. # 8859-4). The Ghods filed an opposition (the "Opposition," ECF Doc. # 9000). The Trust filed a reply in support of its Objection (the "Reply," ECF Doc. # 9026), supported by the supplemental declaration of Kathy Priore (the "Priore Supp.," ECF Doc. # 9026-1). The Ghods filed a supplemental opposition (the "Supplemental Opposition, ECF Doc. # 9132). The Trust then filed a supplemental reply in support of the Objection (the "Supplemental Reply," ECF Doc. # 9143), supported by the second supplemental declaration of Kathy Priore (the "Priore Second Supp.," ECF Doc. # 9143-1).

On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The General Bar Date to file proofs of claim was originally set as November 9, 2012, and was extended to November 16, 2012 at 5:00 p.m.

2

(Prevailing Eastern Time) (ECF Doc. # 2093). The Claim was timely filed on November 7, 2012.

On March 21, 2013, the Court entered an order authorizing the Debtors to file omnibus objections to no more than 150 claims at a time on various grounds, including those set forth in Bankruptcy Rule 3007(d) and those additional grounds set forth in the Procedures Order (the "Procedures Order," ECF Doc. # 3294). The Procedures Order also includes specific protections for borrowers and sets forth a process for the Debtors (and now the Trust as the Debtors' successor-in-interest) to follow before objecting to certain categories of borrower claims. Before objecting to certain borrower claims, the Debtors must send the applicable borrower a letter (a "Request Letter") requesting additional documentation in support of the purported claim. (*See* Procedures Order at 4.)

A Request Letter was sent to Ghods on December 17, 2014. (Reply ¶ 5 n.3.) On January 13, 2015, the Debtors received a response from the Ghods (the "Ghods Diligence Response," Priore Supp. Ex. A-2). (Reply ¶ 6 n.4.) The Ghods Diligence Response set forth the following:

> Our claim is for misapplication of the payments we were forced to pay for improperly issued lender placed hazard insurance on a mortgage during a time frame when no insurable interest on the property existed. The lender did not record and the property was sold therefore there was no property to insure. We brought the matter to the lender's attention who informed us that it would be rectified but that all payments demanded should be made while the matter was in process to avoid a default of the loan and bad credit consequences for us. We paid the amounts demanded under protest. Unfortunately the lender never corrected the situation before filing [for] bankruptcy.

(Ghods Diligence Response at 2.) The Ghods Diligence Response also includes an itemization of amounts from 2004–2012 totaling $15,045 that were allegedly collected by the Debtors but "should have been applied to the principal of the loan." (*Id.* at 2–3.)

3

### A. Ghods' Loan History

On September 9, 1998, non-debtor DiTech Funding Corporation ("DiTech") originated loan (the "Loan") in the amount of $227,150.00, secured by a deed of trust (the "Deed of Trust," Priore Supp. Ex. K.) on the Property, and evidenced by a note (the "Note," Priore Supp. Ex. J.) The Deed of Trust was recorded on September 25, 1998. (Reply ¶ 22.) Debtor GMACM purchased the Note from DiTech pursuant to an assignment dated September 25, 1998 (the "Assignment," Priore Supp. Ex. L). (*Id.* ¶ 23.) GMACM subsequently transferred its interest in the Loan to the Federal Home Loan Mortgage Corporation ("Freddie Mac"). (*Id.*) The Assignment reflects a subsequent assignment of Deed of Trust from GMACM to Ocwen Loan Servicing, LLC ("Ocwen") on August 15, 2013. (*See* Assignment at 3.)

GMACM serviced the Loan from October 29, 1998 until it transferred the servicing rights to Ocwen on February 16, 2013. (Reply ¶ 23.) At the time servicing rights were transferred to Ocwen, the Ghods' account was current and owing for the March 1, 2013 payment. (*Id.*; *see* "Ghods Servicing Notes," Priore Supp. Ex M.)

On October 25, 2004, GMACM added lender-placed insurance to the Ghods' account because the Ghods did not provide evidence that the Ghods Property was insured as required under the Deed of Trust. (Reply ¶ 25.) GMACM subsequently added lender-placed insurance to the Ghods' account on an annual basis because the Ghods never provided proof of insurance on the Property. (*Id.*) The Ghods allegedly sold their interest in the Property at some point before October 2004 (the "Alleged Sale"). (*See id.* ¶ 24 (citing Ghods Opp. at 3).) There is no evidence that the Ghods informed GMACM of the Alleged Sale until May 2010. (*Id.* (citing Priore Supp. ¶ 18).) Notwithstanding the Alleged Sale, the Ghods continued to make their monthly mortgage

payment, including the amount added to their escrow account for the lender-placed insurance coverage. (*Id.* ¶ 26.)

On May 21, 2010, the Ghods inquired about the escrow account and denied responsibility for the insurance because they no longer owned the Property. (*Id.* ¶ 27 (citing Ghods Servicing Notes).) GMACM advised the Ghods that they had violated the terms of the Deed of Trust by selling the Property outside of the formal assumption process. (*Id.* (citing Ghods Servicing Notes).) The Ghods stated that they would provide GMACM with a copy of the deed evidencing the Alleged Sale but never provided the documentation. (*Id.* (citing Ghods Servicing Notes).) On or around May 27, 2010, GMACM sent the Ghods a package to complete the assumption of the Loan, but it never received a completed package from the Ghods. (*Id.* ¶ 28.) On June 18, 2010, GMACM sent the Ghods a letter informing them that, as the mortgagors reflected on the account, they were responsible for providing proof of homeowners insurance until the Loan is paid in full. (*Id.* ¶ 29; *see* "June 18, 2010 Letter," Ghods Opp. at 14.)

### B.    The Claim

The Ghods assert a general unsecured claim in the amount of $60,000 against Debtor GMACM. The stated basis of the Ghods Claim is "GMAC[M]'s failure to credit funds to account." (Claim § 2.) An addendum to the Claim elaborates: "GMAC Mortgage erroneously placed property insurance on a property that was not owned by the borrowers at the relevant times and upon which GMAC[M] had no security interest." (*Id.* at 2.) However, despite the Ghods bringing the erroneous insurance placement to "GMAC[M]'s attention repeatedly," GMACM never has made a correction or sent a payoff statement, "as demanded." (*Id.*) On November 20, 2013, the Court entered an order (ECF Doc. # 5898) reclassifying the Claim as a general unsecured claim against GMACM. (Reply ¶ 21.)

### C. The Objection

The Trust's Objection seeks to disallow and expunge the Claim. The Trust argues that the GMACM had proper standing to apply lender-placed insurance to the Ghods' account because GMACM acquired the Loan from DiTech on October 28, 1998 pursuant to the Assignment, which was recorded on February 22, 1999. (Obj. Ex. 1-A at 23–24.) Additionally, the Trust asserts there is no indication in the Debtors' books and records that the Ghods ever provided proof of insurance covering the Property. (*Id.* at 24.)

### D. The Opposition

In their Opposition, the Ghods advance two reasons why the Objection should be overruled because GMACM lacked standing to apply lender-placed insurance to the Ghods' account: (1) the Deed of Trust was never recorded, and therefore GMACM was an unsecured lender with no insurable interest in the Property (Ghods Opp. at 2–3); and (2) the Alleged Sale of the Property "terminated any alleged standing [of] [GMAC] as a secured lender." (*Id.*). According to the Ghods, "the sale of the Property combined with [GMACM]'s status as an ordinary unsecured lender proves th[at] [GMACM] did not have standing to force place insurance on the Property and charge the [Ghods] for same." (*Id.* at 3.)

### E. The Reply

In the Reply, the Trust responds that, contrary to the Ghods' assertions, "the Loan was properly secured by a recorded Deed of Trust" (Reply ¶ 46), and therefore "[GMACM], as servicer, had the right to enforce the terms of the Deed of Trust." (*Id.*) The Deed of Trust was recorded on September 25, 1998 (*id.* (citing Ghods Deed of Trust)), and the Assignment transferring the Deed of Trust to GMACM, was recorded on February 22, 1999 (*id.* (citing Ghods Assignment)).

6

Additionally, the Trust asserts the Ghods' argument that the lien on the Property secured by the Deed of Trust was extinguished by the Alleged Sale is contrary to the terms of the Note, the Deed of Trust, and California law. (*Id.* ¶ 47.) According to the Trust, "[a]ny alleged transfer of the Ghods Property would have also included a transfer of the security interest in the Ghods Property, and [GMACM] would have maintained any rights under the Deed of Trust to enforce the security interest if the Ghods defaulted on the Ghods Loan." (*Id.* (citation omitted).) The Trust argues that the Ghods do not identify any case law supporting their argument that the Alleged Sale relieves them of their contractual obligations under the Ghods Loan documents. (*Id.* ¶ 48.) The Trust asserts that the Deed of Trust "requires the Ghods, as borrowers under the Ghods Loan, to maintain insurance on the Ghods Property, and if they failed to do so, the Lender, through GMACM as servicer, was permitted to place insurance on the Ghods Property to protect its rights." (*Id.* (citing Deed of Trust ¶¶ 5, 7).)

### F. The Supplemental Opposition

In the Supplemental Opposition, the Ghods do not contest that the Deed of Trust was properly recorded. Rather, the Ghods argue that (i) GMACM, as the *servicer* of the Loan, lacked authority under the Note and the Deed of Trust to place insurance on the Property; instead, the Ghods argue that the *lender* is the only party that can rightfully place insurance on the Property pursuant to the terms of the Note and the Deed of Trust; (ii) although the lender may have been authorized to place insurance on the Property, the Note and the Deed of Trust does not permit the lender to *charge* the Ghods for the insurance; and (iii) GMACM violated section 6(e) of the Real Estate Settlement Procedures Act ("RESPA") when GMACM failed to respond to the Ghods' written letter requesting their insurance payments be credited to their account.

**G.    The Supplemental Reply**

In response, the Trust argues that GMACM acted as the *agent* for the investor with regards to the Loan. (Supplemental Obj. ¶ 5.) In support, the Trust cites to the guidelines that govern the servicing of Freddie Mac loans (the "Freddie Mac Guidelines") that state that "[f]or as long as Freddie Mac owns an interest in a Mortgage, the Seller/Servicer must ensure that the Mortgaged Premises are covered by insurance meeting the requirement in [the relevant] sections [of the Freddie Mac Guidelines]." (*Id.*)

In response to the Ghods' second argument—that the language in the Note and the Deed of Trust does not permit a lender to charge the Ghods for lender placed insurance—the Trust points to the language in the Deed of Trust. The Deed of Trust states that "[i]f Borrower fails to maintain [the insurance] coverage described [therein], Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7." (*See* Deed of Trust ¶ 5.) Paragraph 7 of the Ghods Deed of Trust states that: "[i]f Borrower fails to perform the covenants and agreements contained in this Security Instrument . . . then Lender may do and pay for whatever is necessary to protect the value of the Property and the Lender's rights in the Property . . . Any amounts disbursed by Lender upon this paragraph 7 shall become additional debt of the Borrower secured by this Security Instrument." (*See* Deed of Trust ¶ 7.)

Finally, the Trust argues that the Supplemental Opposition constitutes an untimely and improper amendment of the Ghods' Claim to the extent the Ghods allege new causes of action.

## II.    DISCUSSION

**A.    Claims Objections**

Correctly filed proofs of claim "constitute[] prima facie evidence of the validity [and amount] of the claim. To overcome this prima facie evidence, the objecting party must come

8

12-12020-mg    Doc 9301    Filed 11/03/15    Entered 11/03/15 17:15:22    Main Document
Pg 9 of 15


forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000) (internal citations omitted). By producing "evidence equal in force to the prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Tr. (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted). If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim." 4 COLLIER ON BANKRUPTCY ¶ 502.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

Federal pleading standards apply when assessing the validity of a proof of claim. *See, e.g.*, *In re Residential Capital, LLC*, 518 B.R. 720, 731 (Bankr. S.D.N.Y. 2014); *In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure." (citations omitted)). Accordingly, a claimant must allege "enough facts to state a claim for relief that is *plausible* on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (emphasis in original) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Where a complaint pleads facts

that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal citation and quotation marks omitted). Plausibility "is not akin to a probability requirement," but rather requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal citation and quotation marks omitted). The court must accept all factual allegations as true, discounting legal conclusions clothed in factual garb. *See, e.g.*, *id.* at 677–78; *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true" (citing *Iqbal*, 556 U.S. at 678)). The court must then determine if these well-pleaded factual allegations state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). A claim that pleads only facts that are "merely consistent with a defendant's liability" does not meet the plausibility requirement. *Id.* at 678 (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "The pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

Although "[claims] drafted by *pro se* [claimants] are to be construed liberally, [] they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with 'a fair understanding of what the [claimant] is complaining about and . . . whether there is a legal basis for recovery.'" *Kimber v. GMAC Mortg., LLC (In re Residential Capital, LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (ellipsis in original) (quoting *Iwachiw v. New York City Bd. of Elections*, 126 F. App'x 27, 29 (2d Cir. 2005)).

The Court concludes that the Trust adequately shifted the burden of proof to the Ghods by way of its Objection and Supplemental Objection and that the Ghods thereafter failed to satisfy their burden in establishing the viability of their Claims.

The Trust established that GMACM had standing to apply, and charge the Ghods for, the lender-placed insurance on the Property. In their Opposition, the Ghods asserted that GMACM did not hold a secured interested in the Property because "no mortgage was ever recorded." (Opposition at 2). However, the Trust provided sufficient evidence to substantiate that GMACM was indeed a secured lender. Specifically, the evidence establishes that (i) the Deed of Trust was recorded on September 25, 2015 with the Clerk of Orange County California and (ii) the Assignment transferring the Deed of Trust to GMACM was recorded on February 22, 1999. The Ghods have not provided any evidence refuting the validity of the Note's chain of title or the Assignment of Deed of Trust. Given that the Loan was properly secured by a recorded Deed of Trust, GMACM, as servicer, had the right to enforce the terms of the Deed of Trust.

The plain terms of the Deed of Trust require that the Ghods, as borrowers under the Loan, maintain insurance on the Property. In the event that the Ghods failed to maintain insurance on the Property, the Deed of Trust expressly provides that the lender is permitted to place insurance on the Property—to protect its rights—and charge the borrowers for the insurance. (*See* Deed of

11

Trust §§ 5 and 7.) As such, GMACM, as servicer, was the correct party to apply lender-place insurance on the Property.

The security interest in the Property was not extinguished by the Alleged Sale of the Property. "Upon the transfer of real property covered by a mortgage or deed of trust as security for an indebtedness, the property remains subject to the secured indebtedness . . . ." *Cornelison v. Kornbluth*, 542 P.2d 981, 985 (Cal. 1975) (en banc) (citations omitted). A grantee of real property encumbered by a deed of trust "is not personally liable for the indebtedness or to perform any of the obligations of the . . . trust deed unless his agreement to pay the indebtedness, or some note or memorandum thereof, is in writing and subscribed by him or his agent or his assumption of the indebtedness is specifically provided for in the conveyance." *Id.* (citing Cal. Civ. Code § 1624; *Snidow v. Hill*, 197 P.2d 801, 803 (Cal. Dist. Ct. App. 1948)). By implication, the grantor remains liable to perform any of the obligations under the deed of trust unless the grantee agrees otherwise or assumes the subject indebtedness. *See id.* Because the Ghods have not submitted any evidence establishing that the purchasers of the Property at the Alleged Sale agreed to assume their obligations under the Deed of Trust, they have failed to demonstrate that the Alleged Sale released them of their obligations to provide GMACM with evidence of insurance coverage. In any event, the Ghods have also failed to demonstrate that they provided GMACM with a copy of a deed evidencing the Alleged Sale.

    **B.**    **Amendment of a Proof of Claim**

The Trust argues that the Ghods should not be permitted to amend their Claim to include the newly asserted RESPA claim the Ghods allege in their Supplemental Opposition. Federal Rule of Bankruptcy Procedure 3003(c)(3) directs bankruptcy courts "to establish a bar date beyond which proofs of claim are disallowed in a chapter 11 case." *In re Enron Creditors*

12

*Recovery Corp.*, 370 B.R. 90, 94 (Bankr. S.D.N.Y. 2007); *see* FED. R. BANKR. P. 3003(c)(3). "The bar date is critically important to the administration of a successful chapter 11 case for it is intended to be a mechanism providing the debtor and its creditors with finality." *Id.* (citation omitted). Where the bar date has passed and a creditor seeks to file an amended proof of claim, "[t]he decision to allow the amendment of the claim is committed to the discretion of the bankruptcy judge." *In re Asia Global Crossing, Ltd.*, 324 B.R. 503, 507 (Bankr. S.D.N.Y. 2005) (citations omitted).

Amendment of a claim is "freely allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity, or to plead a new theory of recovery on the facts set forth in the original claim." *Integrated Res., Inc. v. Ameritrust Co. Nat'l Ass'n (In re Integrated Res., Inc.)*, 157 B.R. 66, 70 (S.D.N.Y. 1993) (citations omitted). "However, the court must subject post bar date amendments to careful scrutiny to assure that there was no attempt to file a new claim under the guise of amendment." *Id.* (citations omitted).

Courts in the Second Circuit apply a two-step inquiry when determining whether to allow post bar date amendments to proofs of claim. *See, e.g.*, *Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 133 (2d Cir. 2005); *In re Barquet Grp. Inc.*, 477 B.R. 454, 464 (Bankr. S.D.N.Y. 2012), *aff'd*, 486 B.R. 68 (S.D.N.Y. 2012). First, the court must decide "whether there was [a] timely assertion of a similar claim or demand evidencing an intention to hold the estate liable." *Midland Cogeneration*, 419 F.3d at 133 (alteration in original) (citation and internal quotation mark omitted). In other words, the amendment must relate back to the original proof of claim. An amendment satisfies this "relation back" inquiry if it: "1) corrects a defect of form in the original claim; 2) describes the original claim with greater particularity; or 3) pleads a new theory of recovery on the facts set

13

forth in the original claim." *Id.* (quoting *In re McLean Indus., Inc.*, 121 B.R. 704, 708 (Bankr. S.D.N.Y. 1990)).  In determining whether an amendment relates back to an earlier claim, "[t]he court must decide whether there is a sufficient commonality of facts between the allegations relating to the two causes of action to preclude the claim of unfair surprise." *Asia Global Crossing*, 324 B.R. at 508 (citing *Benfield v. Mocatta Metals Corp.*, 26 F.3d 19, 23 (2d Cir. 1994)).  "The court should also consider whether the defendant had notice of the claim now being asserted, and whether the plaintiff will rely on the same type of evidence to prove both claims." *Id.* (citations omitted).

If the initial "relation back" inquiry is satisfied, courts then examine whether it would be equitable to allow the amendment. *Id.* at 507; *Integrated Res.*, 157 B.R. at 70.  Courts consider several factors when balancing the equities, including:

> (1) undue prejudice to opposing party; (2) bad faith or dilatory behavior on the part of the claimant; (3) whether other creditors would receive a windfall were the amendment not allowed; (4) whether other claimants might be harmed or prejudiced; and (5) the justification for the inability to file the amended claim at the time the original claim was filed.

*Integrated Res.*, 157 B.R. at 70 (citing *McLean*, 121 B.R. at 708); *accord Enron*, 419 F.3d at 133.  "The critical consideration is whether the opposing party will be unduly prejudiced by the amendment." *Integrated Res.*, 157 B.R. at 70 (citation and internal quotation mark omitted).

First, the new cause of action asserted in their Supplemental Opposition does not relate back to the Claim.  The Claim concerns whether the GMACM had standing to place insurance on the Property.  Although the addendum to the Claim includes a letter that the Ghods now assert may have triggered RESPA liability, the focus of the Claim is on GMACM's actions in placing and charging the Ghods for the insurance on the Property.  The Claim did not raise issues regarding whether GMACM failed to respond to any of the Ghods' letters, let alone a letter

14

triggering RESPA liability. Nor does the Proof of Claim or the addendum even mention RESPA. Thus, the Ghods' newly asserted claims do not correct defects in the allegations in the Claim or describe the Claim in greater detail. Rather, the Ghods seek to assert new theories of relief based on a new, augmented scope of facts.

Even if the Ghods' newly alleged cause of action did relate back to their Claim, equitable factors militate against allowing them to amend their Claim. The Trust would be unduly prejudiced if the amendment were permitted. The Trust has spent substantial time and resources analyzing the merits of the Ghods' Claim and responding to their allegations. The Ghods' filed their Claim in November 2012; the Ghods filed the Supplemental Opposition alleging the RESPA violation in September 2015. However, the Ghods did not provide an explanation regarding why they failed to assert the RESPA violation in November 2012, when they filed their original Claim. Nor do the Ghods explain why they failed to assert this new theory until approximately three years after they filed their Claim. There is no reason to expect that other creditors would receive a windfall were the Court to refuse to allow the Ghods to amend their Claims. By contrast, other creditors may be prejudiced if the amendment were permitted, as the Trust would likely spend significant time and incur significant administrative expenses objecting to the Ghods' new claim, which could delay and diminish distributions to other claimants.

### III.   CONCLUSION

For the above reasons, the Objection is **SUSTAINED** and the Claim is **EXPUNGED**.

**IT IS SO ORDERED.**

Dated:   November 3, 2015
         New York, New York

*Martin Glenn*
MARTIN GLENN
United States Bankruptcy Judge