MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Benjamin W. Butterfield

*Counsel for the ResCap Borrower*
*Claims Trust*

BRADLEY ARANT BOULT
CUMMINGS LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone:    (205) 521-8653
Facsimile:    (205) 488-6652
Ethan T. Tidmore (admitted *pro hac vice*)

*Counsel for the ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO PROOF OF CLAIM**
**NO. 5857 FILED BY MARY MCDONALD, INDIVIDUALLY, AND AS PERSONAL**
**<u>REPRESENTATIVE OF THE ESTATE OF ANTHONY MCDONALD</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................................1

JURISDICTION, VENUE AND STATUTORY PREDICATE ....................................................3

BACKGROUND ..........................................................................................................................4

    I.    General Overview of GMAC Mortgage Bankruptcy ............................................4

    II.    Background of the McDonald Claim ...................................................................5

        A.    The Loan and the Property ....................................................................5

        B.    The Default, the Reinstatement Letter, and the Chapter 13 Petition ..........5

        C.    The Florida Adversary Proceeding ...........................................................8

        D.    The Claim ..........................................................................................10

RELIEF REQUESTED ...............................................................................................................10

OBJECTION ...............................................................................................................................10

    I.    The Claim Fails As a Matter of Law Because There Is No Prohibition
        Against Including the Foreclosure Costs in the Reinstatement Letter .................12

    II.    The Claim Fails As a Matter of Law for Several Other Reasons .........................14

        A.    GMAC Mortgage is not a "debt collector" under the FDCPA .................14

        B.    GMAC Mortgage did not engage in "trade or commerce" under the
            FDUTPA ...........................................................................................15

        C.    GMAC Mortgage's alleged actions do not rise to the level
            necessary for an intentional infliction of emotional distress claim
            under Florida law ...............................................................................16

        D.    GMAC Mortgage's actions were not the proximate cause of Mr.
            McDonald's death .............................................................................19

NOTICE ......................................................................................................................................21

CONCLUSION ...........................................................................................................................22

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Ashcroft v. Iqbal,
  556 U.S. 662 (2009) ...................................................................................................... 12

Bakar v. Bryant,
  No. 13-21927-CIV, 2013 WL 5534235 (S.D. Fla. Oct. 7, 2013) ........................................ 17

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007) ...................................................................................................... 12

Benjamin v. CitiMortgage, Inc.,
  No. 12-62291-CIV, 2013 WL 1891284 (S.D. Fla. May 6, 2013) ........................................ 16

Brown v. Crawford Cty.,
  960 F.2d 1002 (11th Cir.1992) ........................................................................................ 11

Coker v. Wal-Mart Stores, Inc.,
  642 So. 2d 774 (Fla. Dist. Ct. App. 1994) ........................................................................ 19

Cosmas v. Hassett,
  886 F.2d 8 (2d Cir. 1989) ............................................................................................... 12

Davies v. Commercial Metals Co.,
  46 So. 3d 71 (Fla. Dist. Ct. App. 2010) ........................................................................... 20

De La Campa v. Grifols Am., Inc.,
  819 So. 2d 940 (Fla. Dist. Ct. App. 2002) ........................................................................ 16

Degutis v. Fin. Freedom, LLC,
  978 F. Supp. 2d 1243 (M.D. Fla. 2013) ........................................................................... 11

Egwuatu v. Burlington Coat Factory Warehouse Corp.,
  No. 8:10-cv-996-T-33TGW, 2011 WL 2413833 (M.D. Fla. June 10, 2011) ......................... 17

Feinberg v. Bank of N.Y. (In re Feinberg),
  442 B.R. 215 (Bankr. S.D.N.Y. 2010) .............................................................................. 11

Flake v. Alper Holdings USA, Inc. (In re Alper Holdings USA, Inc.),
  398 B.R. 736 (S.D.N.Y. 2008) ........................................................................................ 11

Ford Motor Credit Co. v. Sheehan,
  373 So. 2d 956 (Fla. Dist. Ct. App. 1979) ........................................................................ 17

ii

Harper Cos. v. Scott, Royce, Harris, Bryan, Barra & Jorgensen, P.A.,
    656 So. 2d 627 (Fla. Dist. Ct. App. 1995) ................................................................. 18

In re DJK Residential LLC,
    416 B.R. 100 (Bankr. S.D.N.Y. 2009) ...................................................................... 11

In re Residential Capital, LLC,
    No. 12-12020 (MG), 2014 WL 340027 (Bankr. S.D.N.Y. Jan. 30, 2014) ............................. 15

Kelly v. Palmer, Reifler & Assocs., P.A.,
    681 F. Supp. 2d 1356 (S.D. Fla. 2010) ..................................................................... 16

McCain v. Fla. Power Corp.,
    593 So. 2d 500 (Fla. 1992) .................................................................................... 19

Mehta v. Wells Fargo Bank, N.A.,
    737 F. Supp. 2d 1185 (S.D. Cal. 2010), aff'd, 510 F. App'x 498 (9th Cir. 2013) ................. 18

Metro. Life Ins. Co. v. McCarson,
    467 So. 2d 277 (Fla. 1985) .................................................................................... 17

Mundy v. S. Bell Tel. & Tel. Co.,
    676 F.2d 503 (11th Cir. 1982) ............................................................................... 17

Neitzke v. Williams,
    490 U.S. 319 (1989) ........................................................................................... 11

Paddock v. Chacko,
    522 So. 2d 410 (Fla. Dist. Ct. App. 1988) ................................................................. 20

Pope v. Pinkerton-Hays Lumber Co.,
    120 So. 2d 227 (Fla. Dist. Ct. App. 1960) ................................................................. 19

Rollins, Inc. v. Butland,
    951 So. 2d 860 (Fla. Dist. Ct. App. 2006) ................................................................. 15

Saadi v. Maroun,
    No. 8:07-cv-1976-T-24-MAP, 2008 WL 4194824 (M.D. Fla. Sept. 9, 2008) ........................ 18

Stahl v. Metro. Dade Cty.,
    438 So. 2d 14 (Fla. Dist. Ct. App. 1983) ................................................................... 19

State Farm Mut. Auto. Ins. Co. v. Novotny,
    657 So. 2d 1210 (Fla. Dist. Ct. App. 1995) ............................................................... 17

Weissman v. Nat'l Ass'n of Secs. Dealers, Inc.,
    500 F.3d 1293 (11th Cir. 2007) ............................................................................. 12

**STATUTES**

11 U.S.C. § 502(a) .................................................................................................... 10

11 U.S.C. § 502(b)(1) ............................................................................................... 10

15 U.S.C. § 1692a(6)(F)(iii) ..................................................................................... 15

FLA. STAT. § 501.203(8) (2015) ............................................................................... 15

FLA. STAT. § 768.19 (2015) ...................................................................................... 19

iv

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

The ResCap Borrower Claims Trust (the "**Borrower Trust**"), established pursuant to the terms of the chapter 11 plan (the "**Plan**") [Docket No. 6030] confirmed in the above captioned bankruptcy cases (the "**Chapter 11 Cases**"), as successor in interest to the above captioned debtors (collectively, the "**Debtors**") with respect to Borrower Claims,[1] hereby submits this objection (the "**Objection**") seeking to disallow and expunge, without leave to amend, proof of claim number 5857 (the "**Claim**") filed by Mary B. McDonald, individually and as personal representative of the Estate of Anthony D. McDonald (collectively, the "**Claimants**") against Debtor GMAC Mortgage LLC ("**GMAC Mortgage**") pursuant to section 502(b) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 3007(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") on the ground that the Claim is without merit and fails as a matter of law.  A copy of the Claim is attached to the Lathrop Declaration as Exhibit R.  The Borrower Trust seeks entry of an order, substantially in the form attached hereto as **Exhibit 1** (the "**Proposed Order**"), granting the requested relief.  In support of the Objection, the Borrower Trust submits the Declaration of Sara Lathrop (the "**Lathrop Declaration**"), attached hereto as **Exhibit 2**, and respectfully states as follows:

**PRELIMINARY STATEMENT**

1.      The Borrower Trust has examined the Claim and asserts that the Claimants' allegations of liability are without merit and fail as a matter of law.  The Claim attaches a copy of the Claimants' third amended complaint (the "**Third Amended Complaint**") filed on April 5, 2011 in an adversary proceeding in the U.S. Bankruptcy Court for the Middle District of Florida, Case No. 8:10-AP-292-CED (the "**Florida Adversary Proceeding**"), which purports to assert

---

[1] As used herein, the terms "**Borrower**" and "**Borrower Claims**" have the meanings ascribed to them in the Plan.

claims against GMAC Mortgage for fraudulent misrepresentation, intentional infliction of emotional distress, violations of the Fair Debt Collection Practices Act ("**FDCPA**"), the Florida Consumer Collection Practices Act ("**FCCPA**"), the Florida Deceptive and Unfair Trade Practices Act ("**FDUTPA**"), and Florida's Wrongful Death Act.

2.      All of the aforementioned claims against GMAC Mortgage in the Florida Adversary Proceeding pertain to a loan reinstatement letter (the "**Reinstatement Letter**") sent to Mr. McDonald—at his request—on October 27, 2009 by one of GMAC Mortgage's former attorneys in Florida, the Law Offices of David Stern, P.A. ("**Stern**").   A copy of the Reinstatement Letter is attached to the Lathrop Declaration as **Exhibit D**.

3.      The Reinstatement Letter identified the amounts currently due on the Loan (defined below) as of the date of the letter (*i.e.*, $5,765.09) and also identified the estimated higher amount that would be due as of the requested reinstatement date, November 8, 2009 (*i.e.*, $9,299.58), because of the costs associated with the imminent foreclosure filing.   The Reinstatement Letter—which identified each of the expected foreclosure-related costs by line item—gave Mr. McDonald explicit notice that these expected amounts were calculated based on the expenses anticipated to occur in the foreclosure process by November 8, 2009.

4.      The Claimants nonetheless allege that it was somehow unlawful for the Reinstatement Letter to include amounts expected to be incurred between October 27, 2009 and November 8, 2009 in connection with the imminent foreclosure filing.   See Third Amended Complaint at ¶¶ 21-26.   According to the Claimants, GMAC Mortgage apparently was required on October 27, 2009 to provide them with a reinstatement amount as of November 8, 2009, that did not include the foreclosure expenses expected to be incurred by such date, and thus would

have been substantially less than the expected and actual reinstatement amount for November 8.

However, the Claimants are not able to cite to any law for this position.

5.    Accordingly, because Claimants have no legal authority supporting their erroneous position that a loan reinstatement letter for a future date cannot include the expected costs that will be incurred prior to the requested reinstatement date, their Claim fails as a matter of law.

6.    In addition to the aforementioned grounds for dismissal of the Claim in its entirety, GMAC Mortgage is not liable to the Claimants because:

(a)  GMAC Mortgage is not a "debt collector" as that term is defined in the FDCPA;

(b)  GMAC Mortgage's alleged conduct was not "trade or commerce," as that term is defined in the FDUTPA;

(c)  There is no basis under Florida law for recognizing the tort of intentional infliction of emotional distress—which has severely restricted confines—based on the allegations made in the Complaint; and

(d)  The wrongful death claim—which alleges that "[t]he act of filing and being in bankruptcy destroyed Mr. McDonald's self-image and stripped him of the characteristics of pride and self-reliance," which then led to his "alcohol abuse," which then led to his heart attack and death *over nine (9) months after he filed his Chapter 13 bankruptcy petition*—does not remotely satisfy the required element of proximate causation under Florida law.

7.    For all of these reasons, the Claim, on its face, fails to assert valid prepetition causes of action against GMAC Mortgage and should be disallowed and expunged with prejudice.

## JURISDICTION, VENUE AND STATUTORY PREDICATE

8.    This Court has jurisdiction over this Objection under 28 U.S.C. § 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

9.     The statutory predicates for the relief requested herein are section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007(a).

## BACKGROUND

### I.     General Overview of GMAC Mortgage Bankruptcy

10.     On May 14, 2012, the Debtors filed these Chapter 11 Cases, which are being jointly administered pursuant to Bankruptcy Rule 1015(b).

11.     On May 16, 2012, this Court entered an order [Docket No. 96] appointing Kurtzman Carson Consultants LLC ("**KCC**") as the notice and claims agent in these Chapter 11 Cases.   Among other things, KCC is authorized to (a) receive, maintain, and record and otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain the official claims register for the Debtors (the "**Claims Register**").

12.     On March 21, 2013, this Court entered an order approving procedures for the filing of objections to proofs of claim filed in these Chapter 11 Cases (the "**Procedures Order**") [Docket No. 3294].   The Procedures Order includes specific protections for Borrowers and sets forth a process for the Debtors to follow before objecting to certain categories of Borrower Claims.

13.     On December 11, 2013, this Court entered the *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* [Docket No. 6065] approving the terms of the Plan filed in these Chapter 11 Cases.   The Effective Date (as defined in the Plan) of the Plan occurred on December 17, 2013.   See Docket No. 6137.

14.     The Plan provides for the creation and implementation of the Borrower Trust, which is established for the benefit of Borrowers who filed claims to the extent such claims are ultimately allowed either through settlement or pursuant to an Order of the Court.   See Plan,

Art. IV.F.  The Borrower Trust was established to, among other things, "(i) direct the processing, liquidation and payment of the Allowed Borrower Claims in accordance with the Plan, and the distribution procedures established under the Borrower Claims Trust Agreement, and (ii) preserve, hold, and manage the assets of the Borrower Claims Trust for use in satisfying the Allowed Borrower Claims."  See id.

## II.    Background of the McDonald Claim

### A.    The Loan and the Property

15.    On or about June 29, 2005, Anthony McDonald executed and delivered a promissory note (the "**Note**") in favor of Premier Mortgage Funding, Inc.    See Lathrop Declaration ¶ 5; see also Note at Ex. A to the Lathrop Declaration.  Mr. McDonald's obligations under the Note were secured by a mortgage (the "**Mortgage**" and, together with the Note, the "**Loan**") encumbering certain real property located at 906 Woodleaf Way, Tampa, FL 33613 (the "**Property**").    See Lathrop Declaration ¶ 6; see also Mortgage at Ex. B to the Lathrop Declaration.

16.    The Note provides that, upon an event of default and duly noticed acceleration, the holder of the Note has "the right to be paid back by [Mr. McDonald] for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law."  See Note § 6(E). "Those expenses include, for example, reasonable attorneys' fees."  See id.

17.    GMAC Mortgage subsequently acquired the Loan and began servicing the Loan on July 11, 2005.    See Lathrop Declaration ¶ 7; see also Excerpts of Servicing Notes (the "**Servicing Notes**") at Ex. C to the Lathrop Declaration at 1.

### B.    The Default, the Reinstatement Letter, and the Chapter 13 Petition

18.    The Loan became delinquent when Mr. McDonald failed to make the monthly payment due on December 1, 2008.  See Lathrop Declaration ¶ 8; see also Servicing Notes at 6-

7.  GMAC Mortgage issued a breach of contract notice to Mr. McDonald on February 2, 2009, at which point Mr. McDonald's monthly Loan payments from December 2008 through February 2009 remained outstanding.  See Lathrop Declaration ¶ 9; see also Servicing Notes at 70. GMAC Mortgage issued subsequent breach of contract notices on June 2, 2009 and September 1, 2009.  See Lathrop Declaration ¶ 9; see also Servicing Notes at 62, 67.

19.    Thereafter, on or about October 5, 2009, GMAC Mortgage referred the Loan to foreclosure, which was handled by Stern.  See Lathrop Declaration ¶ 10; see also Servicing Notes at 60.

20.    Mr. McDonald contacted Stern in October 2009 and requested a reinstatement amount for the future date of November 8, 2009.  See Lathrop Declaration ¶ 11; see also Reinstatement Letter at 1.  In response to Mr. McDonald's request, Stern sent the requested Reinstatement Letter to Claimants on October 27, 2009.  See Lathrop Declaration ¶ 12; see also Reinstatement Letter at 1.

21.    GMAC Mortgage regularly sent reinstatement letters that provided reinstatement amounts owing as of a future date in order to give Borrowers adequate time to gather the funds required to reinstate their accounts.  See Lathrop Declaration ¶ 13.

22.    The Reinstatement Letter identified the amounts currently due as of the date of the letter (i.e., $5,765.09) as well as the estimated higher amount that would be due as of the requested reinstatement date, November 8, 2009 (i.e., $9,299.58), because of the costs associated with the imminent foreclosure filing.  See Lathrop Declaration ¶ 14; see also Reinstatement Letter at 2.

23.    The Reinstatement Letter advised, "WE WILL NOT DELAY THE FORECLOSURE ACTION," and also explained that Mr. McDonald would be liable for certain

expected "costs and attorneys fees incurred in the foreclosure action"—all of which are plainly set forth in separate line-items in the Reinstatement Letter. <u>See</u> Lathrop Declaration ¶ 15; <u>see also</u> Reinstatement Letter at 1, 3.

24.    The Reinstatement Letter also advised that "these amounts may contain estimates and are subject to change depending upon advances made by the Lender." <u>See</u> Lathrop Declaration ¶ 16; <u>see also</u> Reinstatement Letter at 2.

25.    On November 9, 2009, GMAC Mortgage filed a complaint to foreclose the Mortgage (the "**Foreclosure Complaint**") in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Case No. 09-28766 (the "**Foreclosure Proceeding**"). <u>See</u> Lathrop Declaration ¶ 17; <u>see also</u> Foreclosure Complaint at Ex. E to the Lathrop Declaration.

26.    Claimants did not pay the amounts required to reinstate the Loan and instead filed a petition for chapter 13 relief (the "**Chapter 13 Petition**") in the United States Bankruptcy Court for the Middle District of Florida (the "**Florida Bankruptcy Court**"), Case No. 8:09-bk-25594-CED (the "**Florida Bankruptcy Case**"). <u>See</u> Lathrop Declaration ¶ 18; <u>see also</u> Chapter 13 Petition at Ex. F to the Lathrop Declaration.

27.    The foreclosure never took place and was halted by the automatic stay imposed in the Florida Bankruptcy Case. <u>See</u> Lathrop Declaration ¶ 19; <u>see also</u> Servicing Notes at 53-54.

28.    The Florida Bankruptcy Court entered an order confirming Claimants' Chapter 13 Plan on September 25, 2014 (the "**Chapter 13 Confirmation Order**"). <u>See</u> Lathrop Declaration ¶ 20; <u>see also</u> Chapter 13 Confirmation Order at Ex. G to the Lathrop Declaration. Claimants remained continuously in possession of the Property and, upon information and belief, Ms. McDonald still resides there today. <u>See</u> Lathrop Declaration ¶ 20.

C.        **The Florida Adversary Proceeding**

29.        As part of the Florida Bankruptcy Case, the McDonalds filed a complaint (the "**Complaint**"), by and through counsel, in the Florida Adversary Proceeding against Stern and GMAC Mortgage on March 10, 2010.  See Lathrop Declaration ¶ 21; see also Complaint at Ex. H to the Lathrop Declaration.  The Complaint asserted various causes of action against Stern and GMAC Mortgage.  See id.

30.        On July 13, 2010, the Florida Bankruptcy Court issued an order (the "First Order to Dismiss") dismissing the Complaint with leave to amend.  See Lathrop Declaration ¶ 22; see also First Order to Dismiss at Ex. I to the Lathrop Declaration.

31.        On August 22, 2010, Mr. McDonald was discovered deceased by Mrs. McDonald. See Second Amended Complaint (defined herein) ¶ 45.

32.        On November 15, 2010, Ms. McDonald filed an amended complaint (the "**First Amended Complaint**"), by and through counsel, in the Florida Adversary Proceeding.  See Lathrop Declaration ¶ 23; see also First Amended Complaint at Ex. J to the Lathrop Declaration. The First Amended Complaint purported to assert various causes of action against Stern and GMAC Mortgage.  See id.  On December 30, 2010, the Florida Bankruptcy Court issued an order (the "**Second Order to Dismiss**") dismissing the First Amended Complaint with leave to amend.  See Lathrop Declaration ¶ 23; see also Second Order to Dismiss at Ex. K to the Lathrop Declaration.

33.        On January 5, 2011, Ms. McDonald filed an amended complaint (the "**Second Amended Complaint**"), by and through counsel, in the Florida Adversary Proceeding.  See Lathrop Declaration ¶ 24; see also Second Amended Complaint at Ex. L to the Lathrop Declaration.  The Second Amended Complaint purported to assert various causes of action against Stern and GMAC Mortgage.  See id.  On March 22, 2011, the Florida Bankruptcy Court

denied the motion to dismiss and entered an order (the "**Order to Amend**") granting Ms. McDonald 21 days to amend the Second Amended Complaint solely to substitute Ms. McDonald as personal representative for the estate of Mr. McDonald in the case.  <u>See</u> Lathrop Declaration ¶ 24; <u>see</u> <u>also</u> Order to Amend at Ex. M to the Lathrop Declaration.

34.     On April 5, 2011, Ms. McDonald filed an amended complaint (the "**Third Amended Complaint**"), by and through counsel, in the Florida Adversary Proceeding.  <u>See</u> Lathrop Declaration ¶ 25; <u>see</u> <u>also</u> Third Amended Complaint at Ex. N to the Lathrop Declaration.

35.     On May 17, 2012, shortly after filing its chapter 11 petition in this Court, GMAC Mortgage filed its *Notice of Bankruptcy and Effect of Automatic Stay* in the Florida Adversary Proceeding (the "**Notice of Bankruptcy**").  <u>See</u> Lathrop Declaration ¶ 26; <u>see</u> <u>also</u> Notice of Bankruptcy at Ex. O to the Lathrop Declaration.

36.     On July 6, 2012, the Florida Bankruptcy Court entered an order (the "**Abatement Order**"), pursuant to which the Florida Adversary Proceeding was abated as to GMAC Mortgage but remained pending as to Stern.  <u>See</u> Lathrop Declaration ¶ 27; <u>see</u> <u>also</u> Abatement Order at Ex. P to the Lathrop Declaration.

37.     On June 4, 2015, Stern stipulated to an uncontested consent judgment in the Florida Adversary Proceeding in the amount of $1.5 million requested by Claimants (the "**Consent Judgment**").  <u>See</u> Lathrop Declaration ¶ 28; <u>see</u> <u>also</u> Consent Judgment at Ex. Q to the Lathrop Declaration.  However, the Consent Judgment specifically provided that it was not in any way an adjudication on the merits of the claims against Stern or GMAC Mortgage, nor

would it have any preclusive or prejudicial effect against GMAC Mortgage in the bankruptcy proceeding.[2] <u>See</u> <u>id</u>.

### D. The Claim

38.     On November 16, 2012, Claimants filed their Claim in this proceeding. <u>See</u> Claim at 1. Section 2 of the Claim vaguely states that the basis for the Claim is "personal injury/wrongful death, FDCPA/FCCPA/FDUTPA—violations, fraudulent misrepresentation." <u>See</u> <u>id</u>. Claimants attached the Third Amended Complaint as the sole exhibit to their Claim. <u>See</u> <u>id</u>.

### <u>RELIEF REQUESTED</u>

39.     The Borrower Trust files this Objection pursuant to section 502(b) of the Bankruptcy Code, seeking to disallow and expunge in its entirety the Claim from the Claims Register. For the reasons set forth below, the Claim is meritless and fails to state a cognizable and plausible claim for relief against GMAC Mortgage as required by Rule 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. Thus, the Claim should be disallowed and expunged.

### <u>OBJECTION</u>

40.     A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law . . . ." 11 U.S.C. § 502(b)(1).

---

[2] Specifically, the Consent Judgment provides, "*This Consent Judgment—which contains no findings of fact or rulings of law, either express or implied, by the Court pertaining to the merits of Plaintiff's claims asserted in this case—shall have no potential adverse, prejudicial or preclusive effect against GMAC Mortgage, LLC or its bankruptcy estate, including but not limited to in any proceedings pertaining to the administration or adjudication of Plaintiff's proof of claim pending in the U.S. Bankruptcy Court for the Southern District of New York in the matter styled In re Residential Capital, LLC, et al., Case No. 12-12020 (MG).*" <u>See</u> Consent Judgment at 3 (italics added).

Furthermore, once an objection refutes an essential allegation of the claim, the burden of persuasion is on the claimant to establish a valid claim against a debtor by a preponderance of the evidence.  See Feinberg v. Bank of N.Y. (In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010).

41.    Courts in this district have applied federal pleading standards when assessing the validity of a proof of claim.  See In re DJK Residential LLC, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure.") (citations omitted); Flake v. Alper Holdings USA, Inc. (In re Alper Holdings USA, Inc.), 398 B.R. 736, 748 (S.D.N.Y. 2008) ("The documents attached to the proofs of claim should be treated, for purposes of a motion to disallow claims, like documents that are attached to and relied upon in a complaint are treated on a Rule 12(b)(6) motion to dismiss . . . .).

42.    "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Neitzke v. Williams, 490 U.S. 319, 326 (1989).  "This procedure, operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and factfinding." Id. at 326-27.  "[D]ismissal is warranted if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief." Degutis v. Fin. Freedom, LLC, 978 F. Supp. 2d 1243, 1251 (M.D. Fla. 2013) (citing Neitzke v. Williams, 490 U.S. at 326; Brown v. Crawford Cty., 960 F.2d 1002, 1009-10 (11th Cir.1992)).

43.    Courts also may dismiss a claim under Rule 12(b)(6) for deficiency in pleading. While factual allegations are not required to be detailed, they, nonetheless, must contain more

than "labels and conclusions[] and a formulaic recitation of the elements of a cause of action . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citations omitted). "Facts that are merely consistent with the plaintiff's legal theory will not suffice when, without some further factual enhancement [they] stop short of the line between possibility and plausibility of entitle[ment] to relief." Weissman v. Nat'l Ass'n of Secs. Dealers, Inc., 500 F.3d 1293, 1310 (11th Cir. 2007) (citation and internal quotations omitted). Should the plaintiff fail to "nudge [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." Twombly, 550 U.S. at 570.

44.    Furthermore, in cases like this one involving allegations of fraud, Rule 9(b) of the Federal Rules of Civil Procedure requires a plaintiff to plead "circumstances constituting fraud . . . with particularity." "[T]o satisfy the particularity requirement of Rule 9(b)" in the Second Circuit, "a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989).

**I.    The Claim Fails As a Matter of Law Because There Is No Prohibition Against Including the Foreclosure Costs in the Reinstatement Letter**

45.    The Complaint plainly shows that all of the claims against GMAC Mortgage pertain to the Reinstatement Letter sent to Mr. McDonald—at his request—on October 27, 2009 by Stern.

46.     These claims fail as a matter of law because they are all based on a meritless and unfounded legal theory that a loan reinstatement letter for a future date cannot include the expected costs that will be incurred prior to the requested reinstatement date.  Because the Claimants have no law supporting that erroneous theory, the Claim should be disallowed and expunged.

47.     As explained above, the Reinstatement Letter identified the amounts currently due as of the date of the letter (*i.e.*, $5,765.09) and also identified the estimated higher amount that would be due as of the requested reinstatement date, November 8, 2009 (*i.e.*, $9,299.58), because of the costs associated with the imminent foreclosure filing.  See Reinstatement Letter at 2.  The Reinstatement Letter advised, "WE WILL NOT DELAY THE FORECLOSURE ACTION," and also explained that Mr. McDonald would be liable for "costs and attorneys fees incurred in the foreclosure action"—all of which are plainly set forth in separate line-items on the Reinstatement Letter.  See id. at 1-3.

48.     The Reinstatement Letter also advised that "these amounts may contain estimates and are subject to change depending upon advances made by the Lender."  See id. at 2.

49.     Consistent with the Reinstatement Letter, GMAC initiated the foreclosure in early November as planned and incurred costs that were anticipated and identified in the Reinstatement Letter.  See Foreclosure Complaint at ¶ 10-11.

50.     Claimants nonetheless assert that it was somehow unlawful for the Reinstatement Letter to include amounts expected to be incurred between October 27, 2009 and November 8, 2009 in connection with the foreclosure.  See Third Amended Complaint at ¶¶ 21-26.  To be clear, the Third Amended Complaint does not contest the validity of the foreclosure-related costs set forth in the Reinstatement Letter.  Rather, the Third Amended Complaint alleges that it was

somehow wrongful to include these costs in the November 8, 2009 reinstatement, regardless of whether the costs were imminent as of the reinstatement date. See id. ¶ 23 ("the Reinstatement Letter was dated October 27, 2009, and the demand of payment for these unincurred costs . . . was clear fraud."); ¶ 24 (same); ¶ 26 (same); see also id. ¶ 25 ("a complaint would not be filed for another two weeks . . . [c]onsequently, the fees assessed for attorney work not yet performed was an attempt to collect on fraudulent charges . . . .").

51.     Under the Claimants' erroneous view, GMAC Mortgage apparently was required on October 27, 2009 to provide them with a reinstatement amount as of November 8, 2009, that did not include the imminent foreclosure expenses and thus would have been substantially less than the reinstatement amount for that date.

52.     Not surprisingly, the Claimants have cited no law whatsoever for their meritless theory.  Thus, their claims for fraudulent misrepresentation, intentional infliction of emotional distress, wrongful death, and violations of the FDCPA, FCCPA, and FDUTPA should be disallowed and expunged because they all arise out of the Claimants' baseless theory that reinstatement letters cannot include reasonable costs expected to be incurred as of the reinstatement date.

## II.    The Claim Fails As a Matter of Law for Several Other Reasons.

53.     In addition to the aforementioned ground for dismissal of the Claim in its entirety, GMAC Mortgage's Objection also should be granted for the following other reasons.

### A.    GMAC Mortgage is not a "debt collector" under the FDCPA

54.     The Claim alleges that GMAC Mortgage is liable for purportedly violating sections 1692(d), (e)(2), (e)(10), and (f) of the FDCPA.  However, each of these provisions of the FDCPA applies only to "debt collectors."  GMAC Mortgage is not a "debt collector" as that term is defined in the FDCPA.  For this reason, Claimants' FDCPA claim cannot be sustained.

55.     The definition of "debt collector" in the FDCPA contains an exemption for an entity that collects debts that were "not in default at the time [they were] obtained . . . ."  15 U.S.C. § 1692a(6)(F)(iii); see, e.g., In re Residential Capital, LLC, No. 12-12020 (MG), 2014 WL 340027, at *5 (Bankr. S.D.N.Y. Jan. 30, 2014) ("Only when the loan servicer obtains the rights to service a loan while the loan is in default may the servicer be considered a debt collector for the purposes of the FDCPA.").

56.     As noted in paragraph 17 of this Objection, the Loan was not in default at the time that it was obtained by GMAC Mortgage.  Thus, GMAC Mortgage is not a "debt collector" for the purposes of the FDCPA, and that claim fails as a matter of law.

**B.      GMAC Mortgage did not engage in "trade or commerce" under the FDUTPA**

57.     The Claim also alleges that GMAC Mortgage purportedly violated the FDUTPA.  However, the FDUTPA applies only to actions taken "in the course of trade or commerce," and Claimants have not alleged that GMAC Mortgage engaged in "trade or commerce," as that term is defined in the FDUTPA.  For this reason, Claimants' FDUTPA claim cannot be sustained.

58.     To state a claim under the FDUTPA, a plaintiff must allege (1) a deceptive or unfair practice in the course of trade or commerce, (2) causation, and (3) actual damages.  See Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006).  The FDUTPA defines "trade or commerce" to mean "advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated."  FLA. STAT. § 501.203(8) (2015).  The FDUTPA further states that the term "trade or commerce" includes "the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity."  Id.

59.    Florida courts have held that the servicing of a loan does not qualify as "trade or commerce" under the FDUTPA where the loan servicer does not "advertise, solicit, provide, offer or distribute" anything to a borrower.  See Benjamin v. CitiMortgage, Inc., No. 12-62291-CIV, 2013 WL 1891284, at *4-5 (S.D. Fla. May 6, 2013) (citing Trent v. Mortg. Elec. Registration Sys., Inc., 618 F. Supp. 2d 1356, 1365 (M.D. Fla. 2007)); see also Kelly v. Palmer, Reifler & Assocs., P.A., 681 F. Supp. 2d 1356, 1374-77 (S.D. Fla. 2010) (legal services provided in connection with foreclosure proceedings do not constitute "trade or commerce" for purposes of FDUTPA).

60.    As a loan servicer, GMAC Mortgage did not engage in "trade or commerce" because it did not "advertise, solicit, provide, offer or distribute" anything to Claimants.  For this reason, causes of action asserted by Claimants for violation of the FDUTPA must fail.[3]

### C.    GMAC Mortgage's alleged actions <u>do not rise to the level</u> necessary for an intentional infliction of emotional distress claim under Florida law.

61.    The Claim asserts that GMAC Mortgage is liable to the Claimants for intentional infliction of emotional distress ("**IIED**").   Under Florida law, a claim for IIED requires a showing that the defendant's conduct was outrageous.  Claimants have not alleged sufficient facts to support their allegation that GMAC Mortgage engaged in outrageous conduct.  For this reason, Claimants' IIED claim cannot be sustained.

62.    In order to state a cause of action for IIED in Florida, it must be shown that: "(1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe."   See De La Campa v. Grifols Am., Inc., 819 So. 2d 940, 943 (Fla. Dist. Ct. App. 2002).  Outrageous conduct

---

[3] After the Adversary Proceeding was abated as to GMAC Mortgage, Stern filed a motion for partial summary judgment seeking dismissal of the FDUPTA claim against him.  The Florida Bankruptcy Court denied that motion without issuing an opinion.  That ruling—which pertained only to Stern—has no preclusive or prejudicial affect against GMAC Mortgage.

is conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency . . . ." Metro. Life Ins. Co. v. McCarson, 467 So. 2d 277, 278-79 (Fla. 1985). "[I]t is not enough [that] the conduct was characterized by malice or aggravation which would entitle the plaintiff to punitive damages for another tort." State Farm Mut. Auto. Ins. Co. v. Novotny, 657 So. 2d 1210, 1213 (Fla. Dist. Ct. App. 1995). "In addition, the subjective response of the person who is the target of the actor's conduct does not control the question of whether the tort occurred." Id.

63.    As the Florida courts have held, "[t]here are only a very limited set of cases in which courts [have] recognized conduct as sufficiently egregious to support a claim of intentional infliction of emotional distress." Bakar v. Bryant, No. 13-21927-CIV, 2013 WL 5534235, at *2 (S.D. Fla. Oct. 7, 2013) (citation omitted). "[M]ere insults, indignities, threats, or false allegations are not enough." Id (citation omitted). "Indeed, even allegations of reprehensible, objectionable, and offensive conduct have been rejected as insufficient to state a claim for intentional infliction of emotional distress." Id (citation omitted). "Generally, some level of physical contact or severely threatening behavior is required" to support such a claim. Egwuatu v. Burlington Coat Factory Warehouse Corp., No. 8:10-cv-996-T-33TGW, 2011 WL 2413833, at *4 (M.D. Fla. June 10, 2011) (citation omitted).

64.    In debt collection cases, Florida courts have upheld claims of IIED only where collection methods were "barbaric." Mundy v. S. Bell Tel. & Tel. Co., 676 F.2d 503, 506 (11th Cir. 1982); compare Ford Motor Credit Co. v. Sheehan, 373 So. 2d 956, 958 (Fla. Dist. Ct. App. 1979) (affirming jury verdict and holding that debtor had alleged outrageous conduct where debt collector seeking to repossess debtor's car called his mother and told her the caller needed to get in touch with debtor because debtor's children had been in a serious automobile accident in

another state), with Harper Cos. v. Scott, Royce, Harris, Bryan, Barra & Jorgensen, P.A., 656 So. 2d 627, 629 (Fla. Dist. Ct. App. 1995) (affirming lower court dismissal of claim because judgment debtor had failed to allege "extreme or outrageous" conduct by creditor, where creditor had instructed a sheriff to levy on all property in custody of judgment debtor, including property that creditor knew was held by judgment debtor on consignment and was not subject to levy or execution); see also Mehta v. Wells Fargo Bank, N.A., 737 F. Supp. 2d 1185, 1204 (S.D. Cal. 2010), aff'd, 510 F. App'x 498 (9th Cir. 2013) (granting lender's motion to dismiss because borrower failed to adequately allege outrageous conduct as to a lender's false statement that a foreclosure sale would be postponed in exchange for the completion of loan-modification paperwork).

65.    "Whether behavior meets the severe standard required to establish a claim for intentional infliction of emotional distress is a question of law" under Florida law.  Saadi v. Maroun, No. 8:07-cv-1976-T-24-MAP, 2008 WL 4194824, at *4 (M.D. Fla. Sept. 9, 2008).

66.    Claimants allege[4] that Stern "intentional[ly] represented a fraudulent Reinstatement Amount that was at least $3,000 or approximately 60% more than the apparent legitimate amount to reinstate the mortgage."  See Third Amended Complaint at  ¶ 78. Claimants allege that Stern "prevented the [Claimant] from discerning the legitimate amount of reinstatement with systematic obstruction by their personnel."  Id.  However, Claimants' allegations fail to allege conduct by GMAC Mortgage anywhere close to the required level of outrageous conduct to state a claim for IIED under Florida law.  The mere inclusion of imminent, expected foreclosure-related costs in the Reinstatement Letter is not the sort of conduct that rises

---

[4] Claimants also state in a conclusory fashion that Stern "attempted to fraudulently extort . . . exorbitant charges" from Claimants.  See Third Amended Complaint at ¶ 78.

to the level of the "barbaric" and "outrageous" acts required to state a plausible claim for relief under the narrowly confined and restricted tort of IIED.

### D.    GMAC Mortgage's actions were not the proximate cause of Mr. McDonald's death.

67.    The Claimants' claim under Florida's Wrongful Death Act likewise fails because GMAC Mortgage's actions in connection with the Reinstatement Letter were not possibly the proximate cause of Mr. McDonald's death.

68.    Under Florida's Wrongful Death Act, a cause of action for wrongful death exists only "when the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person . . . and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued . . . ." FLA. STAT. § 768.19 (2015).

69.    The elements of a wrongful death claim are duty, breach, and "an injury or damage to the plaintiff proximately caused by such failure." Stahl v. Metro. Dade Cty., 438 So. 2d 14, 17 (Fla. Dist. Ct. App. 1983). "Proximate causation . . . consists of two elements: cause in fact and foreseeability." Coker v. Wal-Mart Stores, Inc., 642 So. 2d 774, 776 (Fla. Dist. Ct. App. 1994). First, the causation element requires that "there must be such *a natural, direct, and continuous sequence between the . . . act and the injury that it can reasonably be said that but for the act the injury would not have occurred*." Pope v. Pinkerton-Hays Lumber Co., 120 So. 2d 227, 230 (Fla. Dist. Ct. App. 1960) (emphasis added; citation omitted). Second, the foreseeability element "is concerned with whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred." McCain v. Fla. Power Corp., 593 So. 2d 500, 502 (Fla. 1992).

70.     Here, the Third Amended Complaint shows on its face that the actions of GMAC Mortgage were not the proximate cause of Mr. McDonald's death.   The Third Amended Complaint alleges that, "[a]s a consequence of their [Chapter 13] bankruptcy, Mr. McDonald suffered extreme depression" and that "[t]he act of filing and being in bankruptcy destroyed Mr. McDonald's self-image and stripped him of the characteristics of pride and self-reliance," which allegedly led to "alcohol abuse" and Mr. McDonald's death by heart attack on August 22, 2010—*over nine (9) months after he filed his Chapter 13 bankruptcy petition*.  See Third Amended Complaint at ¶¶ 41-48.

71.     These allegations do not possibly state a plausible claim that GMAC Mortgage somehow proximately caused Mr. McDonald's death as required by Florida law.  Instead, these allegations are far-flung, speculative, and do not establish a "natural, direct, and continuous sequence" between the sending of the Reinstatement Letter on October 27, 2009 and Mr. McDonald's death by heart attack over nine months later.  See, e.g., Paddock v. Chacko, 522 So. 2d 410, 417-18 (Fla. Dist. Ct. App. 1988) (finding that expert testimony attributing patient's "self-inflicted injuries" to the "failure [of defendant-physician] to arrange for a face-to-face examination or to prescribe proper amounts of anti-psychotic drugs" was "purely speculative" and insufficient to support a finding of proximate cause).

72.     Furthermore, GMAC Mortgage could not have plausibly foreseen that a simple loan Reinstatement Letter requested by Mr. McDonald would somehow trigger a series of events, including alcohol abuse, that allegedly resulted in Mr. McDonald's heart attack over nine months later.  See, e.g., Davies v. Commercial Metals Co., 46 So. 3d 71 (Fla. Dist. Ct. App. 2010) (upholding summary judgment for defendant, as they could not have reasonably foreseen that hiring a trucking company with a history of skirting trucking regulations would lead to a

crash and plaintiff's resulting injury). Accordingly, Claimants' allegations are insufficient, as a matter of Florida law, to support a claim that GMAC Mortgage proximately caused Mr. McDonald's death.

## **NOTICE**

The Borrower Trust has provided notice of this Motion in accordance with the Case Management Procedures Order approved by this Court on May 23, 2012 [Docket No. 141] and the Claims Procedures Order [Docket No. 3294].

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## CONCLUSION

WHEREFORE, the Borrower Trust respectfully requests entry of an Order, substantially in the form attached hereto as **Exhibit 1**, granting the relief requested herein and such other and further relief as the Court may deem proper.


Dated: November 10, 2015

/s/ Norman S. Rosenbaum
Norman S. Rosenbaum
Jordan A. Wishnew
Benjamin W. Butterfield
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone:     (212) 468-8000
Facsimile:     (212) 468-7900

*Counsel for the ResCap Borrower Claims Trust*

-and-

BRADLEY ARANT BOULT CUMMINGS LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone:     (205) 521-8653
Facsimile:     (205) 488-6652
Ethan T. Tidmore (admitted *pro hac vice*)

*Counsel for the ResCap Liquidating Trust*