# **EXHIBIT 2**

**Lathrop Declaration**

ny-1209971

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et</u> <u>al</u>., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DECLARATION OF SARA LATHROP IN SUPPORT OF RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO PROOF OF CLAIM NO. 5857 FILED BY MARY MCDONALD, INDIVIDUALLY, AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ANTHONY MCDONALD**

I, Sara Lathrop, hereby declare as follows:

1.  I serve as Senior Claims Analyst for the ResCap Borrower Claims Trust (the "**Borrower Trust**"), established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] confirmed in the above-captioned bankruptcy cases (the "**Chapter 11 Cases**"). During the Chapter 11 Cases, I served as Regulatory Compliance Manager and Loss Mitigation Manager in the loan servicing department of Residential Capital, LLC ("**ResCap**"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the Chapter 11 Cases (collectively, the "**Debtors**"). I began my association with ResCap in June 2006 working as an associate in the Default Division of the loan servicing operation of GMAC Mortgage, LLC ("**GMAC Mortgage**"). In 2008, I became a Default Quality Control Specialist at GMAC Mortgage, a position that I held until I became a Supervisor in the Default Division in 2009. In 2011, I became a Supervisor in the Loss Mitigation Division of GMAC Mortgage's loan servicing operation, and in February 2012, I became a Manager in

1

ny-1210492

that division. In this role, I supervised GMAC Mortgage associates in their efforts to provide Borrowers[1] with loss mitigation options and assisted in the development of GMAC Mortgage's loss mitigation policies. In January of 2013, I became the Regulatory Compliance Manager for ResCap. I became Senior Claims Analyst for ResCap in July 2013 and continued in this role when the ResCap Liquidating Trust (the "**Liquidating Trust**") was established in December 2013. In my current position as Senior Claims Analyst to the Borrower Trust, among my other duties, I continue to assist the Borrower Trust in connection with the claims reconciliation process.[2]

2. I am authorized to submit this declaration (the "**Declaration**") in support of the ResCap Borrower Claims Trust's Objection (the "**Objection**") to Proof of Claim No. 5857 (the "**Claim**") filed by Anthony D. McDonald and Mary B. McDonald (the "**Claimants**").

3. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations, information learned from my review of relevant documents and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors and the Liquidating Trust, and the Borrower Trust's professionals and consultants. If I were called upon to testify, I could and would testify competently to the facts set forth in the Objection and this Declaration on that basis.

4. In my current and former capacities as Senior Claims Analyst and Loss Mitigation Manager to the Borrower Trust, the Liquidating Trust, and ResCap, I am intimately familiar with the Debtors' claims reconciliation process. Except as otherwise indicated, all

---

[1] As used herein, the term "**Borrower**" has the meaning ascribed to it in the Plan.

[2] The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

2

ny-1210492

statements in this Declaration are based upon my familiarity with the Debtors' Books and Records kept in the course of their regularly conduct business activities (the "**Books and Records**"), as well as the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "**Schedules**"), my review and reconciliation of claims, and/or my review of relevant documents.  I or Liquidating Trust personnel have reviewed and analyzed the proof of claim forms and supporting documentation filed by the Claimants.  Since the Plan went effective and the Borrower Trust was established, I, along with members of the Liquidating Trust have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims, and determine the appropriate treatment of the same.  In connection with such review and analysis, where applicable, I or Liquidating Trust personnel, together with professional advisors, have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (vi) the official claims register maintained in the Chapter 11 Cases.

5. On or about June 29, 2005, Anthony McDonald executed and delivered a promissory note (the "**Note**") in favor of Premier Mortgage Funding, Inc. ("**Premier**").  See Note, attached hereto as **Exhibit A**.

6. Mr. McDonald's obligations under the Note were secured by a mortgage (the "**Mortgage**" and, together with the Note, the "**Loan**") encumbering certain real property located at 906 Woodleaf Way, Tampa, FL 33613 (the "**Property**").  See Mortgage, attached hereto as **Exhibit B**.

3

ny-1210492

7. GMAC Mortgage subsequently acquired the Loan and began servicing the Loan on July 11, 2005. See Excerpts of Servicing Notes (the "**Servicing Notes**") at 1, attached hereto as **Exhibit C**.

8. The Loan became delinquent when Mr. McDonald failed to make the monthly payment due on December 1, 2008. See id. at 6-7.

9. GMAC Mortgage issued a breach of contract notice to Mr. McDonald on February 2, 2009, at which point Mr. McDonald's monthly Loan payments from December 2008 through February 2009 remained outstanding. See id. at 70. GMAC Mortgage issued subsequent breach of contract notices on June 2, 2009 and September 1, 2009. See id. at 62, 67.

10. Thereafter, on or about October 5, 2009, GMAC Mortgage referred the Loan to foreclosure, which was handled by the Law Offices of David J. Stern, P.A. ("**Stern**"). See id. at 60.

11. Mr. McDonald contacted Stern in October 2009 and requested a reinstatement amount for the future date of November 8, 2009. See Reinstatement Letter (defined below), attached hereto as **Exhibit D**.

12. On October 27, 2009, Stern sent the Claimants a letter setting forth the amounts necessary to reinstate the Loan (the "**Reinstatement Letter**"). See Reinstatement Letter at 1.

13. GMAC Mortgage regularly sent reinstatement letters that provided reinstatement amounts owing as of a future date in order to give Borrowers adequate time to gather the funds required to reinstate their accounts.

14. The Reinstatement Letter identified the amounts currently due as of the date of the letter (*i.e.*, $5,765.09) as well as the estimated higher amount that would be due as of

the requested reinstatement date, November 8, 2009 (*i.e.*, $9,299.58), because of the costs associated with the imminent foreclosure filing.  See id. at 2.

15. The Reinstatement Letter advised, "WE WILL NOT DELAY THE FORECLOSURE ACTION," and also explained that Mr. McDonald would be liable for certain expected "costs and attorneys fees incurred in the foreclosure action"—all of which are plainly set forth in separate line-items in the Reinstatement Letter.  See id. at 1, 3.

16. The Reinstatement Letter also advised that "these amounts may contain estimates and are subject to change depending upon advances made by the Lender." See id. at 2.

17. On November 9, 2009, GMAC Mortgage filed a complaint to foreclose the Mortgage (the "**Foreclosure Complaint**") in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Case No. 09-28766 (the "**Foreclosure Proceeding**").  See Foreclosure Complaint, attached hereto as **Exhibit E**.

18. Claimants did not pay the amounts required to reinstate the Loan and instead filed a petition for chapter 13 relief (the "**Chapter 13 Petition**") in the United States Bankruptcy Court for the Middle District of Florida (the "**Florida Bankruptcy Court**"), Case No. 8:09-bk-25594-CED (the "**Florida Bankruptcy Case**"). See Chapter 13 Petition, attached hereto as **Exhibit F**.

19. The foreclosure never took place and was halted by the automatic stay imposed in the Florida Bankruptcy Case.  See Servicing Notes at 53-54.

20. The Florida Bankruptcy Court entered an order confirming Claimants' Chapter 13 Plan on September 25, 2014 (the "**Chapter 13 Confirmation Order**").  See Chapter 13 Confirmation Order, attached hereto as **Exhibit G**.  Claimants remained continuously in

5

possession of the Property and, upon information and belief, Ms. McDonald still resides there today.

21. As part of the Florida Bankruptcy Case, the McDonalds filed a complaint (the "**Complaint**"), by and through counsel, in an adversary proceeding in the Florida Bankruptcy Court, Adv. No. 8:10-AP-292-CED (the "**Florida Adversary Proceeding**") against Stern and GMAC Mortgage on March 10, 2010. See Complaint, attached hereto as **Exhibit H**. The Complaint asserted various causes of action against Stern and GMAC Mortgage. See id.

22. On July 13, 2010, the Florida Bankruptcy Court issued an order (the "**First Order to Dismiss**") dismissing the Complaint with leave to amend. See First Order to Dismiss, attached hereto as **Exhibit I**.

23. On November 15, 2010, Ms. McDonald filed an amended complaint (the "**First Amended Complaint**"), by and through counsel, in the Florida Adversary Proceeding. See First Amended Complaint, attached hereto as **Exhibit J**. The First Amended Complaint purported to assert various causes of action against Stern and GMAC Mortgage. See id. On December 30, 2010, the Florida Bankruptcy Court issued an order (the "**Second Order to Dismiss**") dismissing the First Amended Complaint with leave to amend. See Second Order to Dismiss, attached hereto as **Exhibit K**.

24. On January 5, 2011, Ms. McDonald filed an amended complaint (the "**Second Amended Complaint**"), by and through counsel, in the Florida Adversary Proceeding. See Second Amended Complaint, attached hereto as **Exhibit L**. The Second Amended Complaint purported to assert various causes of action against Stern and GMAC Mortgage. See id. On March 22, 2011, the Florida Bankruptcy Court denied the motion to dismiss and entered an order (the "**Order to Amend**") granting Ms. McDonald 21 days to amend the Second

6

Amended Complaint solely to substitute Ms. McDonald as personal representative for the estate of Mr. McDonald in the case. <u>See</u> Order to Amend, attached hereto as **Exhibit M**.

25. On April 5, 2011, Ms. McDonald filed an amended complaint (the "**Third Amended Complaint**"), by and through counsel, in the Florida Adversary Proceeding. <u>See</u> Third Amended Complaint, attached hereto as **Exhibit N**.

26. On May 17, 2012, shortly after filing its chapter 11 petition in this Court, GMAC Mortgage filed its *Notice of Bankruptcy and Effect of Automatic Stay* in the Florida Adversary Proceeding (the "**Notice of Bankruptcy**"). <u>See</u> Notice of Bankruptcy, attached hereto as **Exhibit O**.

27. On July 6, 2012, the Florida Bankruptcy Court entered an order (the "**Abatement Order**"), pursuant to which the Florida Adversary Proceeding was abated as to GMAC Mortgage but remained pending as to Stern. <u>See</u> Abatement Order, attached hereto as **Exhibit P**.

28. On June 4, 2015, Stern stipulated to an uncontested consent judgment in the Florida Adversary Proceeding in the amount of $1.5 million requested by Claimants (the "**Consent Judgment**"). <u>See</u> Consent Judgment, attached hereto as **Exhibit Q**. However, the Consent Judgment specifically provided that it was not in any way an adjudication on the merits of the claims against Stern or GMAC Mortgage, nor would it have any preclusive or prejudicial effect against GMAC Mortgage in the bankruptcy proceeding. <u>See</u> <u>id</u>.

29. On November 16, 2012, Claimants filed their Claim in this proceeding. <u>See</u> Claim, attached hereto as **Exhibit R**. Section 2 of the Claim states that the basis for the Claim is "personal injury/wrongful death, FDCPA/FCCPA/FDUTPA—violations, fraudulent

7

misrepresentation." See id.  Claimants attached the Third Amended Complaint as the sole exhibit to the Claim.  See id.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  November 10, 2015

/s/ Sara Lathrop
Sara Lathrop
Senior Claims Analyst for ResCap Borrower Claims Trust