**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re:                                            :
                                                  :
                                                  :
    RESIDENTIAL CAPITAL, LLC, *et. al.*  :    Chapter 11
                                                  :    Case No. 12-12020 (MG)
                                                  :
                  Debtors,  :
------------------------------------------------------------x
                                                  :
THE RESCAP BORROWER CLAIMS,                       :
    TRUST,                                     :
                                                  :
                 Objector,  :
                                                  :
       - against -                          :
                                                  :
WILLIAM J. FUTRELL,                               :    PRETRIAL ORDER
                                                  :    (PROPOSED)
                 Claimant.  :
                                                  :
------------------------------------------------------------x

       The Borrower Trust, having attempted to confer with Claimant's counsel, and having conferred with the Court pursuant to Fed. R. Civ. P. 16, the following statements, directions and agreements are adopted as the Pretrial Order herein.

I.    NATURE OF THE CASE

       William J. Futrell (the "Claimant") obtained a loan from Aegis Mortgage Corporation d/b/a UC Lending ("Aegis") pursuant to the terms of a Note dated February 23, 2001 (the "Note"). The Note was secured by a Mortgage (the "Mortgage" and, together with the Note, the "Loan") in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Aegis and its successors and assigns. Homecomings Financial, LLC, one of the debtors in the above captioned chapter 11 cases (collectively, the "Debtors"), began servicing the loan on March 9, 2001.

       The Loan went into default when Claimant failed to remit the Loan installment payment of principal and interest that became due on December 1, 2007. In June 2009, after a prior loss mitigation attempt had failed, Claimant sought a loan modification. On June 19, 2009, Homecomings set up a three-month HAMP loan modification trial plan in connection with Claimant's Loan account. As part of the process of approving Claimant for a trial loan modification, Homecomings set up an escrow account associated with the Loan. Due to an inadvertent typographical error, the escrow analysis projected a disbursement of $1,352.53 from Claimant's escrow

1

account in November 2009 to pay for fire insurance covering the Property, although the estimated November payment should have been approximately $352.53.

Also during mid-June 2009, GMAC Mortgage, LLC ("GMAC Mortgage") and Homecomings each sent Claimant a letter informing Claimant that the servicing of the Loan account would be transferred to GMAC Mortgage, effective July 1, 2009.

Claimant subsequently completed the trial plan that had been set up by Homecomings in June 2009, and a permanent loan modification was approved by GMAC Mortgage on October 8, 2009. The permanent loan modification documents reflected that Claimant's interest rate would be reduced from 9.75% to 7.75%, resulting in monthly payments for principal, interest, taxes and insurance of $730.42 commencing on November 1, 2009. The letter informed Claimant that "[t]o accept this offer, <u>you must sign and return both copies</u> of the Modification Agreement <u>to us in the enclosed, pre-paid</u> envelope by **10/22/2009**," although the deadline to accept the permanent loan modification was subsequently extended by GMAC Mortgage.

Claimant asserts that (i) his counsel sent five letters dated October 30, 2009 (the "October 30, 2009 Letter"), October 31, 2009 (the "October 31, 2009 Letter"), November 13, 2009 (the "November 13, 2009 Letter"), December __, 2009 (the "December 2009 Letter"), and October 23, 2011 (the "October 23, 2011 Letter" and, collectively with the October 30, 2009 Letter, October 31, 2009 Letter, the November 13, 2009 Letter, the December 2009 Letter, the "Letters") and (ii) the Letters served as Qualified Written Requests ("QWR") to GMAC Mortgage, as servicer, pursuant to 12 U.S.C. § 2605(e). The Letters generally inquired about the proposed permanent loan modification and the escrow account associated with the Loan. Claimant contends that GMAC Mortgage did not respond to the Letters as required by the Real Estate Settlement Procedures Act ("RESPA").

In his responses to the Borrower Trust's discovery requests, Claimant conceded that none of the Letters, other than the October 30, 2009 letter, were sent to the proper address identified on Claimant's monthly mortgage statements from GMAC Mortgage for submission of QWRs.

GMAC Mortgage sent letters (i) to Claimant on November 13, 2009 and December 3, 2009 and (ii) to Claimant's counsel on November 13, 2009 and January 12, 2010, in response to inquiries regarding Claimant's Loan account.

On January 29, 2010, GMAC Mortgage denied Claimant's pending loan modification, having not received an executed copy from Claimant. Claimant was thereafter provided with a new traditional loan modification trial plan. GMAC Mortgage subsequently offered to make the loan modification permanent and, on June 3, 2010, GMAC Mortgage received an executed copy of a permanent loan modification from Claimant. Under the terms of the June 2010 permanent loan modification, the Loan was brought current and his monthly interest rate was reduced

2

from 9.75% to 8.50%, resulting in a monthly principal, interest and escrow payment of $705.53.

Claimant asserts that as a result of GMAC Mortgage's alleged failure to respond to the Letters in accordance with RESPA, he suffered "actual damages."

II. BASIS FOR JURISDICTION, WHETHER THE CASE IS CORE OR NON-CORE, AND WHETHER THE BANKRUPTCY JUDGE MAY ENTER FINAL ORDERS OR JUDGMENT

This Court has core jurisdiction to hear and decide this matter under 28 U.S.C. sections 1334(a), 1334(b), 157(a), 157(b)(1), 157(b)(2)(B), 157(c)(2) (if needed), by consent of the parties and the Amended Standing Order of Reference in Case No. 12 MISC 00032 (filed February 1, 2012, Dkt. No. 1). *See also Erisksen v. Residential Capital, LLC*, No. 14- CV-7205 (S.D.N.Y. Dec. 18, 2014) (holding that the presence of a claim for emotional distress damages does not convert a matter into one governed by 28 U.S.C. section 157(b)(5)). The Borrower Trust submits that this is a core matter with respect to which the bankruptcy court may enter final orders.

III. STIPULATED FACTS

The Borrower Trust has been unable to obtain a response or comments to a proposed form of Joint Pretrial Order circulated to Claimant's counsel on October 28, 2015. Consequently, all facts alleged by the Borrower Trust are set forth in section IV.B. Below

IV. PARTIES' CONTENTIONS

The pleadings are deemed amended to embrace the following, and only the following, contentions of the parties:

A. **Claimant's Contentions**

1.

B. **Borrower Trust's Contentions**

*Loan Origination, Ownership and Servicing*

1. On or about February 23, 2001, Claimant obtained a home loan from Aegis in the principal amount of $76,500, represented by a Note in favor of Aegis.

2. The Note was secured by a Mortgage in favor of MERS, as nominee for Aegis and its successors and assigns.

3. Debtor Homecomings Financial, LLC began servicing the loan on March 9, 2001.

3

4. Ownership of the Loan eventually was transferred to The Bank of New York Mellon Trust Company, National Association, fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank N.A., successor by Merger to Bank One National Association, as Trustee for RASC 2001-KS1.

5. Claimant defaulted under the Note and Mortgage when he failed to timely remit the installment payment of principal and interest due on December 1, 2007.

6. On July 1, 2009, servicing of Claimant's Loan account was transferred from Homecomings to GMAC Mortgage.

7. On February 15, 2013, servicing of the Loan transferred from GMAC Mortgage to Ocwen Loan Servicing, LLC.

*Loss Modification Efforts, the Escrow Account and the Letters*

8. At least since October 2009, Thomas D. Margolis has acted as counsel for Claimant.

9. On April 16, 2009, Claimant contacted Homecomings to request a loan modification.

10. Homecomings employee, Charles Moreno, advised Claimant to obtain a workout package from the Debtors' website and submit it as soon as possible.

11. On or about June 10, 2009, Homecomings received a workout package from Claimant by facsimile.

12. Homecomings contacted Claimant by phone on June 10, 2009 to advise him that the workout package was missing documentation, including an income tax return.

13. After receiving the requested documentation, Homecomings commenced the loan modification review process and, on June 19, 2009, set up a three-month HAMP loan modification trial plan requiring payments of $730.76 due on first of each of August, September and October of 2009 (the "2009 HAMP Trial Plan").

14. In connection with Claimant's approval for the 2009 HAMP Trial Plan, Homecomings established an escrow account for the Loan and prepared an Initial Escrow Disclosure Statement, dated June 17, 2009.

15. Due to an inadvertent typographical error, the escrow analysis projected a disbursement of $1,352.53 from Claimant's escrow account in November 2009 to pay for fire insurance covering the Property, although the estimated November payment should have been approximately $352.53.

4

16. On July 2, 2009, Claimant's wife, an authorized party for the Loan, contacted GMAC Mortgage with inquiries regarding the escrow analysis.

17. Claimant's wife was informed by GMAC Mortgage employee, Sandwip Mukherjee, that the loan modification review process had to be completed before a new escrow analysis could be conducted.

18. Claimant completed the 2009 HAMP Trial Plan and a permanent loan modification was approved by GMAC Mortgage on October 8, 2009.

19. The permanent loan modification provided for a reduction of Claimant's interest rate from 9.75% to 7.75%, resulting in monthly payments for principal, interest, taxes and insurance of $730.42 commencing on November 1, 2009.

20. GMAC Mortgage informed Claimant that he had been approved for a permanent loan modification by letter dated October 14, 2009. The correspondence from GMAC Mortgage to Claimant informing him that he had been approved for a permanent loan modification stated "[t]o accept this offer, you must sign and return both copies of the Modification Agreement to us in the enclosed, pre-paid envelope by **10/22/2009**."

21. Claimant did not execute and return the permanent loan modification agreement by October 22, 2009.

22. During each month between September 2009 and January 2010, Claimant received monthly mortgage account statements from GMAC Mortgage, which contained the following statement on the back side of the monthly statement:

> **Qualified Written Request** – Under the Real Estate Settlement Procedures Act, a qualified written request is a written correspondence, other than notice on your payment coupon or other payment medium supplied by us, regarding the servicing of your loan which includes your name, account number and your reasons for the requests. Any qualified written request you wish to submit must be sent to: GMAC Mortgage, Attn: Customer Care, PO Box 1330, Waterloo, IA 50704-1330.

23. Claimant failed to deliver the October 31, 2009 Letter, if any, to GMAC Mortgage, Attn: Customer Care, PO Box 1330, Waterloo, IA 50704-1330.

24. Claimant failed to deliver the November 13, 2009 Letter to GMAC Mortgage, Attn: Customer Care, PO Box 1330, Waterloo, IA 50704-1330.

25. Claimant failed to deliver the December 2009 Purported QWR to GMAC Mortgage, Attn: Customer Care, PO Box 1330, Waterloo, IA 50704-1330.

5

26. GMAC Mortgage sent letters (i) to Claimant on November 13, 2009 and December 3, 2009 and (ii) to Claimant's counsel on November 13, 2009 and January 12, 2010, in each case in response to inquiries regarding Claimant's Loan account. Through GMAC Mortgage's letters and conversations with both Claimant and his counsel, GMAC Mortgage provided responses regarding the subject matter of each of the inquiries contained in each of the October 30, 2009 Letter, the November 13, 2009 Letter and the December 2009 Letter.

27. GMAC Mortgage's December 3, 2009 responsive letter to Claimant stated that:

> This is in response to your request for a new escrow analysis to be performed on the above-referenced loan. Since your loan is being reviewed for a possible loan modification, we are unable to comply with this request. Once the loan modification process is completed, a new analysis may be requested.

28. GMAC Mortgage's January 12, 2010 responsive letter to Claimant's counsel stated that:

> This letter is in response to your loan modification and escrow inquiry on the above-referenced account.
>
> Please be advised, under the investor guidelines, an escrow account is required to be established when the loan is modified. A new escrow analysis can not be completed because the account is handled by our Loss Mitigation Department and a loan modification is pending.
>
> The borrower may refuse the pending loan modification and reapply for other loss mitigation options if they do not wish to accept the current agreement. However, there is no guarantee any further options will be available. If you have any questions you may contact our Loss Mitigation Department at 1-800-850-4622.

29. Claimant was also advised by telephone by GMAC Mortgage customer care representatives on December 9, 2009, December 10, 2009, January 8, 2010 and January 26, 2010 that a new escrow analysis could not be conducted while the loan modification application was pending, but could be conducted once the loan modification agreement had been executed and returned.

30. GMAC Mortgage sent a follow-up letter, dated December 17, 2009, regarding Claimant's approval for a permanent loan modification, having not received an executed copy of the permanent loan modification agreement by that date.

31. GMAC Mortgage's December 17, 2009 letter stated "[t]o accept this offer, <u>you must sign and return both copies</u> of the Modification Agreement <u>to us in the enclosed, pre-paid</u> envelope by **1/1/2010**."

6

ny-1211712

32. Claimant did not execute and return the permanent loan modification agreement by January 1, 2010.

33. GMAC Mortgage denied Claimant's pending permanent loan modification request on January 29, 2010, having not received an executed permanent loan modification agreement by that date.

34. GMAC Mortgage informed Claimant of the permanent loan modification denial by letter dated February 3, 2010.  Also on February 3, 2010, GMAC Mortgage conducted a new escrow analysis, correcting the typo contained in the June 17, 2009 escrow analysis, and Claimant's monthly escrow payment was reduced from $229.11 to $50.83, thereby decreasing Claimant's total principal, interest and escrow payment from $886.36 (the amount due under the June 2009 escrow analysis) to $708.08.

35. On February 12, 2010, GMAC Mortgage received a facsimile from Claimant containing a new HAMP workout package.

36. On February 16, 2010, an employee of GMAC Mortgage's customer advocacy group spoke with Claimant's wife and advised her that Claimant would not be able to qualify for a HAMP loan modification at that juncture because he was deriving income from short term disability.

37. Claimant was formally advised of the HAMP modification denial by letter dated February 17, 2010.

38. On February 18, 2010, GMAC Mortgage spoke with Claimant by phone and advised him that his Loan was being considered for a non-HAMP (or traditional) loan modification.

39. On February 19, 2010, Claimant was approved for a traditional loan modification trial plan, requiring payments of $704.23 on each of April 1, May 1 and June 1, 2010.

40. By letter dated May 20, 2010, Claimant was informed that, subject to certain conditions set forth in the letter, he had been approved for a permanent, traditional loan modification (the "2010 Loan Modification").

41. Subject to certain conditions precedent, the 2010 Loan Modification would reduce the interest rate on Claimant's Loan from 9.75% to 8.50%, bring his Loan account current, and adjust Claimant's monthly principal, interest and escrow payments to $705.53 commencing on August 1, 2010.

42. At the time Claimant was approved for the 2010 Loan Modification, his Loan account was past due for October 2009 through May 2010 payments.

7

43. Claimant was also informed by telephone on May 21, 2010 of his approval for the 2010 Loan Modification and was advised of the deadline to execute and return the loan modification agreement, as well as the payment amounts that would be due commencing on August 1, 2010 under the terms of the 2010 Loan Modification.

44. On June 3, 2010, GMAC Mortgage received the executed permanent loan modification agreement and a contribution payment required under the terms of the 2010 Loan Modification.

45. Claimant subsequently defaulted under the terms of the 2010 Loan Modification.

46. Claimant contends that on or about October 23, 2011, his counsel sent the October 23, 2011 Letter.

47. During each month between September 2011 and November 2011, Claimant received monthly mortgage account statements from GMAC Mortgage, which contained the following statement on the back side of the monthly statement:

> **Qualified Written Request** – Under the Real Estate Settlement Procedures Act, a qualified written request is a written correspondence, other than notice on your payment coupon or other payment medium supplied by us, regarding the servicing of your loan which includes your name, account number and your reasons for the requests. Any qualified written request you wish to submit must be sent to: GMAC Mortgage, Attn: Customer Care, PO Box 1330, Waterloo, IA 50704-1330.

48. Claimant failed to deliver the October 23, 2011 Letter to GMAC Mortgage, Attn: Customer Care, PO Box 1330, Waterloo, IA 50704-1330.

49. By letter dated November 17, 2011, GMAC Mortgage offered Claimant the ability to pay-off the Loan for approximately 35% of the Loan's principal balance, or $27,000.

50. Claimant was approved for further trial loan modification plans in April and November 2012, pursuant to which his monthly payments would have been $529.75 and $693.25, respectively. These trial loan modification plans were cancelled in each case as a result of Claimant's failure to make the first trial plan payment.

51. To the extent that the Court permits Claimant to submit a statement of his contentions subsequent to the November 12, 2015 deadline for submission of a Joint Pretrial Order, the Borrower Trust reserves the right to submit supplemental and/or additional contentions as necessary.

8

ny-1211712

V. ISSUES TO BE TRIED

1. Whether GMAC Mortgage failed to respond to the October 30, 2009 Letter.

2. Whether GMAC Mortgage sent one or more letters to Claimant meeting the requirements of 12 U.S.C. § 2605(e)(2) with respect to the October 30, 2009 Letter.

3. The extent of any actual damages, if any, proximately caused to the Claimant by GMAC Mortgage's alleged failure to respond to the October 30, 2009 Letter.

VI. CLAIMANT'S EXHIBITS

1.

VII. BORROWER TRUST'S EXHIBITS

A. Note, dated February 23, 2001

B. Mortgage, dated February 23, 2001

C. Assignment of Mortgage, dated September 13, 2012

D. Loan History (i.e., Servicing Notes) for Loan account

E. October 14, 2009 Letter from GMAC Mortgage to Claimant Containing Permanent Loan Modification Agreement

F. December 17, 2009 Letter from GMAC Mortgage to Claimant Containing Permanent Loan Modification Agreement

G. February 3, 2010 Letter from GMAC Mortgage to Claimant Regarding Denial of Loan Modification

H. February 17, 2010 Letter from GMAC Mortgage to Claimant Regarding Denial of Loan Modification

I. May 20, 2010 Letter from GMAC Mortgage to Claimant Containing Permanent Loan Modification Agreement

J. Executed Fixed Rate Loan Modification Agreement dated July 1, 2010

K. February 3, 2010 Initial Escrow Account Disclosure Statement

L. Monthly Mortgage Statement for Claimant's Loan account, dated March 19, 2012

M. Monthly Mortgage Statement for Claimant's Loan account, dated April 18, 2012

9

ny-1211712

N. Monthly Mortgage Statement for Claimant's Loan account, dated July 18, 2012

O. Monthly Mortgage Statement for Claimant's Loan account, dated August 20, 2012

P. Monthly Mortgage Statement for Claimant's Loan account, dated April 20, 2009

Q. Monthly Mortgage Statement for Claimant's Loan account, dated May 18, 2009

R. June 17, 2009 Initial Escrow Disclosure Statement

S. November 13, 2009 Letter from GMAC Mortgage to Thomas D. Margolis

T. November 13, 2009 Letter from GMAC Mortgage to William J. Futrell

U. December 3, 2009 Letter from GMAC Mortgage to William J. Futrell

V. January 12, 2010 Letter from GMAC Mortgage to Thomas D. Margolis

W. November 17, 2011 Letter from GMAC Mortgage to William J. Futrell

X. April 3, 2013 Letter from Ocwen Loan Servicing, LLC to Thomas Margolis

Y. ResCap Borrower Claims Trust's First Set of Interrogatories in Connection With the Borrower Trust Objection, dated September 10, 2015

Z. ResCap Borrower Claims Trust's Requests for Admissions in Connection With the Borrower Trust Objection, dated September 10, 2015

AA. ResCap Borrower Claims Trust's First Set of Requests for Production of Documents in Support of the Borrower Trust Objection, dated September 10, 2015 (the "RFPs")

BB. Claimant's Response to Requests for Admissions from Trust, dated September 25, 2015

CC. Claimant's Response to Requests for Production from Trust, dated September 25, 2015

DD. Claimant's Response to Interrogatories from Trust, dated September 25, 2015

No exhibit not listed by Claimant or the Borrower Trust may be used at trial except (a) for cross-examination purposes or (b) if good cause for its exclusion from the pretrial order is shown.

VIII. STIPULATIONS AND OBJECTIONS WITH RESPECT TO EXHIBITS

A. The Parties Stipulate to the Authenticity and Admissibility of the Following Exhibits: N/A.

10

ny-1211712

  B. Claimant's Objections

  C. Borrower Trust's Objections

  The Borrower Trust objects to the admission of any exhibits by Claimant. In the past two weeks, Claimant has not responded to the Borrower Trust's requests for comments regarding a form of Joint Pretrial Order and has not provided any disclosure regarding what exhibits he intends to introduce at trial.

  The Borrower Trust also objects to the Claimant's introduction during the hearing of any exhibits not produced during discovery. The fact discovery deadline for this matter was October 12, 2015. At the October 15, 2015 status conference regarding this matter, the Borrower Trust raised its concern regarding the lack of responsive documents produced by the Claimant prior to the expiration of fact discovery, and the Court informed Mr. Margolis that he would not be able to use any documents not produced in response to a proper request. Mr. Margolis indicated that he was diligently pursuing additional potential documents; however, the Borrower Trust has not received any additional documents since the October 15, 2015 hearing. Consistent with the Court's directive, the Borrower Trust objects to the proposed introduction into evidence of any exhibits responsive to the Borrower Trust's RFPs that have not previously been produced to the Borrower Trust.

Any objections not set forth herein will be considered waived absent good cause shown. The parties shall set forth any stipulations with respect to the authenticity and admissibility of exhibits and indicate all objections to exhibits and the grounds therefor.

IX. CLAIMANT'S WITNESS LIST

X. BORROWER TRUST'S WITNESS LIST

1. Sara Lathrop

The witnesses listed may be called at trial. No witness not identified herein shall be permitted to testify on either party's case in chief absent good cause shown. Each party shall list the witnesses it intends to call on its case in chief and, if a witness's testimony will be offered by deposition, shall designate by page and line numbers the portions of the deposition transcript it intends to offer. Each party shall set forth any objections it has to deposition testimony designated by the other and the basis therefor.

XI. RELIEF SOUGHT

The Claimant shall set forth the precise relief sought, including each element of damages.

XII. DEADLINES AND HEARING DATE

The Borrower Trust proposes the following pretrial deadlines:

11

ny-1211712

- Written direct testimony for each witness that the parties intend to call at trial shall be exchanged **not later than [January 12, 2016]**. Two courtesy copies of each witness's written direct testimony shall be provided to chambers concurrently with the parties' exchange. Neither party shall be permitted to call any witness to testify at trial (except rebuttal witnesses, if any) unless such witness's direct testimony has been provided to the opposing party by [January 12, 2016].

- Pretrial memoranda of law, which shall include a statement of the elements of each claim or defense involving such party, together with a summary of the facts relied upon to establish each element, and addressing any evidentiary issues anticipated to arise during evidentiary hearing on this matter (the "Trial"), shall be filed **not later than [January 12, 2016]**.

- **Not later than 5:00 p.m. prevailing Eastern Time on [January 19, 2016]**, each party shall provide to the Court with (but not file) two copies of (i) the respective party's final witness and exhibit lists and (ii) pre-marked exhibits (Claimant to identify his exhibits with numbers, e.g., 1, 2, 3, etc.; the Borrower Trust to identify its exhibits with letters, e.g., A, B, C, etc.), assembled sequentially in notebooks and tabbed, or, if too voluminous, with each exhibit placed in a separate manila folder with number or letter visible on the lip, and the folder placed in a suitable container or box for ready reference. Each exhibit list shall include a description of each exhibit. One copy of the witness and exhibit lists and one set of exhibits should be provided to opposing counsel. No witnesses or exhibits that are not listed in the witness and exhibit lists may be used at the Trial.

The Trial shall take place on **January 26, 2016 at [__]:00 a.m. prevailing Eastern Time**.

XIII.  EVIDENTIARY HEARING PROCEDURES

    A.  **Use of Exhibits During Trial**

Counsel is responsible for marking his or her own exhibits. Counsel must identify for the Court and opposing counsel, and give a copy to the witness, each exhibit before using it at the Trial. All exhibits that will be shown to a witness should, if possible, be placed before the witness at the start of counsel's witness examination. Questions and arguments should be delivered from the lectern, but counsel may approach the witness without asking leave whenever it is necessary. And, if counsel is standing near the witness for the purpose of pointing something out on an exhibit, opposing counsel may also be present to observe first-hand what is being pointed out.

    B.  **"Timed" Trial**

The Trial will be a "timed trial," with a maximum of [6]-trial hours during the course of 1 day. Each side will be allocated a maximum of [3]-trial hours to use for opening statement, all direct, cross-examination and redirect witness examinations, and summation. Counsel is responsible for having her or his witnesses present and ready to testify without any delays or gaps in testimony.

C.  **Status Report**

**Not later than 5:00 p.m. prevailing Eastern Time on [January 19, 2016]**, counsel shall submit a written status report to the Court, identifying any issues that must be resolved before the Trial starts, and also whether counsel believe the case may be resolved by settlement before the Trial begins.

| | |
|---|---|
| Dated: November 12, 2015 | /s/ Jordan A. Wishnew<br>Norman S. Rosenbaum<br>Jordan A. Wishnew<br>James A. Newton<br>MORRISON & FOERSTER LLP<br>250 West 55th Street<br>New York, New York 10019<br>Telephone: (212) 468-8000<br>Facsimile: (212) 468-7900<br><br>*Counsel for the ResCap Borrower Claim* |

**IT IS SO ORDERED:**

_____
**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**