**Hearing Date: November 18, 2015 at 10:00 A.M. (ET)**

MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett

*Counsel for the ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------------------------ | ) | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| ------------------------------------------------------------------ | ) | |

**RESCAP BORROWER CLAIMS TRUST'S OMNIBUS REPLY IN SUPPORT OF ITS EIGHTY-NINTH OMNIBUS OBJECTION TO CLAIMS ((I) NO LIABILITY BORROWER CLAIMS AND (II) REDUCE AND ALLOW BORROWER CLAIMS) AS TO CLAIM NOS. 1687, 1689, AND 4121**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ............................................................................................................2

Background Facts ...........................................................................................................4

    A.    Harris Claim ........................................................................................4

    B.    Carroll Claim ......................................................................................6

REPLY ........................................................................................................................9

    A.    Harris Claim ......................................................................................10

    B.    Carroll Claim ....................................................................................11

CONCLUSION ............................................................................................................12

ny-1210893

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Allegheny Int'l, Inc. v. Snyder (In re Allegheny Int'l, Inc.),
    954 F.2d 167 (3d Cir. 1992) ................................................................................................ 9

Feinberg v. Bank of N.Y. (In re Feinberg),
    442 B.R. 215 (Bankr. S.D.N.Y. 2010) ............................................................................... 9

In re Adelphia Commc'ns Corp.,
    Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660 (Bankr. S.D.N.Y. Feb. 20,
    2007), *aff'd sub nom.* .......................................................................................................... 9

In re Oneida Ltd.,
    400 B.R. 384 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co. v.
    Oneida Ltd., No. 09-cv-2229 (DC, 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22,
    2010) ................................................................................................................................... 9

In re Residential Capital, LLC,
    507 B.R. 477 (Bankr. S.D.N.Y. 2014) ............................................................................... 9

In re Rockefeller Ctr. Props.,
    272 B.R. 524 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v. Rockefeller Ctr.
    Props. (In re Rockefeller Ctr. Props.), 266 B.R. 52 (S.D.N.Y. 2001), aff'd, 46 Fed.
    Appx. 40 (2d Cir. 2002) ..................................................................................................... 9

**STATUTES**

11 U.S.C. § 502(a) ..................................................................................................................... 9

11 U.S.C. § 502(b)(1) ................................................................................................................ 9

ALA. CODE § 35-10-13 (2015) ............................................................................................... 11

ii

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the Plan[1] filed in the above-captioned Chapter 11 Cases, as successor in interest to the above-captioned Debtors with respect to Borrower Claims, by and through its undersigned counsel, hereby submits this reply (the "Reply") and the Supplemental Declaration of Sara Lathrop, Senior Claims Analyst to the Borrower Trust (the "Supp. Decl."), annexed hereto as Exhibit 1, to the responses filed by Robert Kenneth Harris ("Mr. Harris") [Docket Nos. 9285 and 9286] (together, the "Harris Response") and Billy Ray Carroll ("Mr. Carroll" and with Mr. Harris, the "Respondents") [Docket No. 9232] (the "Carroll Response" and with the Harris Response, the "Responses") to the *ResCap Borrower Claims Trust's Eighty-Ninth Omnibus Objection to Claims (I) No Liability Borrower Claims and (II) Reduce and Allow Borrower Claims)* [Docket No. 9201] (the "Objection"). The Trust respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Borrower Trust examined the Responses and the statements submitted in support thereof. For purposes of this Reply and the Objection, the Borrower Trust takes these statements at face value. If the Court is not prepared to rule on the Objection with respect to the Respondents, then the Borrower Trust reserves the right to take discovery from the Respondents.

2.      As described herein and in the Supplemental Declaration, the Borrower Trust thoroughly examined the Debtors' books and records that were prepared and kept in the course of their regularly conducted business activities (the "Books and Records") in an effort to validate the accuracy of the allegations made in the Responses and the claims at issue, and for the reasons described herein, the Books and Records do not show any liability due and owing to any of the Respondents.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Objection.

3.    Moreover, as the Objection shifted the burden of proof back to the Respondents, the Respondents must demonstrate a valid claim against the Debtors' estates by a preponderance of the evidence. For the reasons set forth in the Objection, this Reply, and the Supplemental Declaration, the Respondents have failed to provide any explanation as to why their respective claims should not receive the treatment sought through the objection. For example, Mr. Harris has failed to put forward any reason why the reduction of his claim to the amount **he provided** in his responses to the Debtors' request for additional information is not appropriate. Rather, in the Harris Response, Mr. Harris only points to the alleged wrongdoing by non-Debtor Ocwen Loan Servicing, LLC ("Ocwen"), which occurred after the Debtors transferred servicing of Mr. Harris' loans, as the reason he is owed an amount even greater than even the amount he asserted in his original proofs of claim. In addition, Mr. Carroll has failed to assert a valid claim against the Debtors' estates because he has not demonstrated that the Debtors acted improperly with regard to the servicing of his loan or the foreclosure sale of his property. Therefore, the Respondents have failed to meet their burden of proof, and the relief sought in the Objection should be granted with respect to each of the Respondents.

## BACKGROUND

4.    In connection with the claims reconciliation process, the Borrower Trust identified certain claims filed by Borrowers that it believed did not constitute valid liabilities of the Debtors (together, the "No Liability Borrower Claims"). See Supp. Decl. ¶ 4.

5.    The Debtors sent Request Letters to certain Borrowers, including all of the Respondents, requesting additional documentation in support of the No Liability Borrower Claims.[2] See Supp. Decl. ¶ 5. The Request Letters state that the claimant must respond within 30 days with an explanation that states the legal and factual reasons why the claimant believes he

---

[2] A Request Letter was sent to Mr. Harris and Mr. Carroll on May 20, 2013. See Supp. Decl. n. 3.

or she is owed money or is entitled to other relief from the Debtors, and the claimant must provide copies of any and all documentation that the claimant believes supports the basis for his or her claim. The Request Letters further state that if the claimant does not provide the requested explanation and supporting documentation within 30 days, the Debtors may file a formal objection to the claimant's claim, seeking to have the claim disallowed and permanently expunged. See Supp. Decl. ¶ 5.

6.      The Debtors received responses to the Request Letters from the Respondents[3] (the "Diligence Responses"), copies of which are attached to the Supp. Decl. as Exhibit A. The Diligence Responses either (i) stated a claim in the amount that was less than the amount originally asserted in the proofs of claim or (ii) fail to allege bases for claims against the Debtors' estates. Further, as stated in the Objection, with regard to the Carroll Claim, the Books and Records do not show any liability due and owing to Mr. Carroll. See Supp. Decl. ¶ 6.

7.      On December 11, 2013, the Court entered the *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* approving the terms of the Chapter 11 plan, as amended (the "Plan"), filed in these Chapter 11 Cases [Docket No. 6065]. On December 17, 2013, the effective date of the Plan occurred (the "Effective Date"), and, among other things, the Borrower Trust was established [Docket No. 6137].

---

[3] The Debtors received a Diligence Response from Mr. Harris related to the Harris Claims (defined below) on June 24, 2013 (the "1687 Diligence Response" and the "1689 Diligence Response") and from Mr. Carroll on June 5, 2013. See Supp. Decl. n. 4.

ny-1210893

*Background Facts*

### A.    Harris Claim

8.        On or around October 26, 2012, Mr. Harris filed two proofs of claim against Debtor GMAC Mortgage, LLC ("GMACM"), designated as Claim No. 1687 ("Claim 1687") and Claim No. 1689 ("Claim 1689" and collectively with Claim 1687, the "Harris Claims"), asserting secured claims for $45,999.45 and $108,609.46, respectively.  See Exhibit B to the Supp. Decl.

9.        According to the Debtors' books and records, non-Debtor Aegis Mortgage Corporation d/b/a UC Lending ("UC Lending") originated a loan in the amount of $51,000.00 to Mr. Harris on March 29, 2002 (the "Westwego Loan"), secured by a mortgage on property located at 905 Patton Lane, Westwego, LA 70094 (the "Westwego Property").  See Westwego Note, attached to the Supp. Decl. as Exhibit C, and Westwego Mortgage, attached to the Supp. Decl. as Exhibit D.  Debtor Residential Funding Company ("RFC") purchased the Westwego loan from UC Lending and transferred its interest on or about June 1, 2002 when the loan was securitized and JP Morgan Chase Bank, NA was appointed as trustee.  Claim 1687 relates to the Westwego Loan.  Non-Debtor Home Loan Center, Inc., d/b/a LendingTree Loans ("Lending Tree") originated a loan in the amount of $116,250.00 to Mr. Harris on March 22, 2006 (the "Marrero Loan"), secured by a mortgage on property located at 6220 3rd Ave., Marrero, LA 70072 (the "Marrero Property").  See Marrero Note, attached to the Supp. Decl. as Exhibit E, and Marrero Deed of Trust, attached to the Supp. Decl. as Exhibit F.  RFC purchased the Marrero loan from Lending Tree and transferred its interest on or about April 1, 2006 when the loan was securitized and Deutsche Bank Trust Company Americas was appointed as trustee. Claim 1689 relates to the Marrero Loan.[4]  See Supp. Decl.¶ 8.

---

[4] Exhibit B to the Proposed Order, attached as Exhibit 1 to the Objection ("Exhibit B to the Proposed Order"), incorrectly listed Claim 1687 as related to the Marrero Loan and 1689 as relating to the Westwego Loan.

ny-1210893

10.    Debtor Homecomings Financial, LLC ("Homecomings") serviced the Westwego Loan from May 31, 2002 and the Marrero Loan from March 22, 2006 until servicing of both loans was transferred to GMACM on July 1, 2009.  See Exhibit B to the Proposed Order. GMACM serviced both loans until servicing was transferred to Ocwen on February 16, 2013. See Exhibit B to the Proposed Order. The last payment made by Mr. Harris on the Westwego Loan prior to transferring servicing to Ocwen was in the amount of $688.95 on December 14, 2012.  See Westwego Servicing Notes, attached to the Supp. Decl. as Exhibit G, at 3 of 136.  The last payment made by Mr. Harris on the Marrero Loan prior to it being transferred to Ocwen was in the amount of $1,083.90 on January 11, 2013.  See Marrero Servicing Notes, attached to the Supp. Decl. as Exhibit H, at 3 of 93.

11.    On January 7, 2011, the Debtors referred the Westwego loan to foreclosure because the account was owing for the October 2010 payment.  See Westwego Servicing Notes at 98 of 136.  The foreclosure was closed on April 15, 2011 because Mr. Harris brought the account current. See id at 47 of 136.

12.    On April 8, 2011, the Debtors referred the Marrero Loan to foreclosure because it was owing for the January 2011 payment.  See Marrero Servicing Notes at 58 of 93.  The foreclosure was closed on May 20, 2011 because Mr. Harris brought the account current. See id at 41 of 93.

13.    In the 1687 and 1689 Diligence Responses, Mr. Harris detailed the amount he believed he was owed on account of each claim.  In the 1687 Diligence Response, he alleged that he was owed $2,216.21 on account of GMACM's purported failure to properly apply payments to the Westwego Loan account.  See 1687 Diligence Response.  In the 1689 Diligence Response, Mr. Harris asserted that he was owed $6,183.62 on account of (i) GMACM allegedly improperly

5

charging him escrow for property tax to the Marrero Loan account, and (ii) purportedly wrongfully initiating a foreclosure proceeding in 2011.  See 1689 Diligence Response.

**B.      Carroll Claim**

14.      On or around November 9, 2012, Mr. Carroll filed a proof of claim against Debtor Residential Capital, LLC, designated as Claim No. 4121 (the "Carroll Claim"), asserting a general secured claim in in an amount of $80,000.  See Exhibit I to the Supp. Decl.  The Carroll Claim was reclassified as a general unsecured claim against Debtor Homecomings Financial, LLC ("Homecomings") pursuant to the Court's *Order Granting Debtors' Thirty-Sixth Omnibus Objection to Claims (Misclassified and Wrong Debtor Borrower Claims)* [Docket No. 5895], entered November 20, 2013.

15.      According to the Debtors' books and records, non-Debtor Mortgage Outlet, Inc. ("Mortgage Outlet") originated a loan to Mr. Carroll on April 22, 2003 (the "Carroll Loan"), secured by a mortgage (the "Carroll Mortgage") on 2285 Cedar Point Rd., Mobile, AL 36605 (the "Carroll Property"), which was recorded on April 30, 2003.  See Carroll Note, attached to the Supp. Decl. as Exhibit J, and Carroll Mortgage, attached to the Supp. Decl. as Exhibit K.

16.      Homecomings serviced  the loan from July 1, 2003 until servicing was transferred to GMACM on or around July 1, 2009.  See Supp. Decl. ¶ 14.  GMACM serviced the Carroll Loan until the foreclosure sale on April 1, 2010.  See id.

17.      The Carroll Loan became delinquent when Mr. Carroll failed to make the July 1, 2009 payment.[5]  See Carroll Servicing Notes, attached to the Supp. Decl. as Exhibit L.  On August 3, 2009, GMACM sent a breach letter to Mr. Carroll informing him of the delinquency,

---

[5] The Debtors' Books and Records indicate that a payment was received from Mr. Carroll on July 10, 2009 in the amount of $651.00; however, this payment satisfied the June 1, 2009 payment, leaving the account owing for the July 1, 2009 payment.  The Debtors also received a payment from Mr. Carroll on August 7, 2009 in the amount of $601.00; however, this payment was not enough to satisfy the July 1, 2009 payment in full, and therefore the account remained owing for the July 1, 2009 payment.  See Servicing Notes at 3 of 56.

as well as an Options to Avoid Foreclosure Letter on August 11, 2009.  See August 2009 Breach

Letter and Options to Avoid Foreclosure Letter, attached to the Supp. Decl. as Exhibit M and

Exhibit N, respectively.

18.     On September 25, 2009, the Carroll Loan was referred to foreclosure because it

was owing for the July 1, 2009 payment.  See Servicing Notes at 43 of 56.  On October 9, 2009,

GMACM sent a Notice of Acceleration to Mr. Carroll (the "First Notice of Acceleration").  See

First Notice of Acceleration, attached to the Supp. Decl. as Exhibit O.

19.     On October 13, 2009, the Claimant spoke with a representative of GMACM over

the phone and indicated that he would like a loan modification.  See Servicing Notes at 38 of 56.

As a result, Mr. Carroll was approved for a repayment plan that same day (the "First Repayment

Plan") and the foreclosure process was closed on October 27, 2009.  See First Repayment Plan,

attached to the Supp. Decl. as Exhibit P.  The First Repayment Plan required Mr. Carroll to make

monthly payments of $721.00.  See id.

20.     Mr. Carroll made the first two payments required under the First Repayment Plan

on October 23 and November 3, 2009.  See Servicing Notes at 3 of 56.  He did not make the

December 2009 payment required under the First Repayment Plan.[6]  See id.  As a result,

GMACM sent Mr. Carroll a breach letter on December 29, 2009 and the First Repayment Plan

was cancelled on January 4, 2010.  See December 2009 Breach Letter, attached to the Suppl.

Decl. as Exhibit Q and the First Repayment Plan Cancellation Letter, attached to the Supp. Decl.

as Exhibit R.

---

[6] The Servicing Notes reflect that a payment in the amount of $701.00 was received from Mr. Carroll on December 16, 2009 but was returned the next day because it was not enough for a full payment as required under the First Repayment Plan.  See Servicing Notes at 2-3 of 56.  Mr. Carroll attaches a Western Union receipt showing that the returned payment was received by him on January 5, 2010.  See Carroll Response at 19 of 46.

7

21.    On January 5, 2010, Mr. Carroll talked with a representative of GMACM via phone, during which GMACM advised him that another repayment plan would be set up on the account (the "Second Repayment Plan"). See Servicing Notes at 33 of 56. The Second Repayment Plan required a payment of $721.00 to be made on January 5, 2010 and February 5, 2010. See id. The Second Repayment Plan specifically stated that "If at any time you fail to comply with any of the above described conditions and requirements, file bankruptcy, or remit a check with non-sufficient funds, this agreement will be considered null and void." See Second Repayment Agreement, attached to the Supp. Decl. as Exhibit S.

22.    Mr. Carroll did not make the payment due on January 5, 2010, and as a result the Second Repayment Plan was cancelled on January 29, 2010. See Second Repayment Plan Cancellation Letter, attached to the Supp. Decl. as Exhibit T.

23.    On February 4, 2010, GMACM referred the Carroll Loan to foreclosure, as it was owing for the September 1, 2009 payment. See Servicing Notes at 32 of 56. On February 25, 2010, GMACM mailed a Notice of Acceleration to Mr. Carroll (the "Second Notice of Acceleration"), informing Mr. Carroll that the foreclosure sale was scheduled for April 2, 2010. See Second Notice of Acceleration, attached to the Supp. Decl. as Exhibit U. The foreclosure sale was also publicized in the *Mobile-Register Press* on March 1, March 8, and March 15, 2010. See Proof of Publication, attached to the Supp. Decl. as Exhibit V. Additionally, on March 25, 2010, GMACM's foreclosure attorney Colleen McCullough mailed a letter to Mr. Carroll again informing him of the foreclosure sale and the amount necessary to reinstate the account. See Reinstatement Letter, attached to the Supp. Decl. as Exhibit W.

ny-1210893

24.    On April 2, 2010, a foreclosure sale of the Carroll Property took place, at which time the Carroll Property was sold to a third party in the amount of $24,000. <u>See</u> Servicing Notes at 18 of 56.

<b><u>REPLY</u></b>

25.    A filed proof of claim is "deemed allowed, unless a party in interest … objects." 11 U.S.C. § 502(a). Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law…." 11 U.S.C. § 502(b)(1). As noted previously by the Court, claims objections have a shifting burden of proof. Pursuant to Federal Rule of Bankruptcy Procedure 3001(f), a claimant establishes a prima facie case against a debtor upon filing a proof of claim alleging facts sufficient to support the claim. The objecting party is thereafter required to produce evidence equal in force to that provided by the claimant to rebut the presumption of the claimant's prima facie case. <u>In re Residential Capital, LLC</u>, 507 B.R. 477, 490 (Bankr. S.D.N.Y. 2014). <u>See</u> <u>also</u> <u>Allegheny Int'l, Inc. v. Snyder (In re Allegheny Int'l, Inc.)</u>, 954 F.2d 167, 173-74 (3d Cir. 1992).

26.    Once an objection refutes an essential allegation of the claim, the burden of persuasion is on the holder of a proof of claim to establish a valid claim against a debtor by a preponderance of the evidence. <u>Residential Capital</u>, 507 B.R at 490; <u>Feinberg v. Bank of N.Y. (In re Feinberg)</u>, 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010); <u>In re Oneida Ltd.</u>, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), <u>aff'd</u> <u>sub</u> <u>nom.</u>, <u>Peter J. Solomon Co. v. Oneida Ltd.</u>, No. 09-cv-2229 (DC), 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010); <u>In re Adelphia Commc'ns Corp.</u>, Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); <u>In re Rockefeller Ctr. Props.</u>, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000), <u>aff'd</u> <u>sub</u> <u>nom.</u>,

9

ny-1210893

NBC v. Rockefeller Ctr. Props. (In re Rockefeller Ctr. Props.), 266 B.R. 52 (S.D.N.Y. 2001), aff'd, 46 Fed. Appx. 40 (2d Cir. 2002).

**A.    Harris Claim**

27.    In the Harris Response, Mr. Harris alleges wrongful actions by Ocwen, including purported increases to his monthly payments and wrongfully initiated foreclosure proceedings. See Harris Response pp. 1-2.  Mr. Harris asserts that these alleged wrongful actions by Ocwen have damaged his credit rating and that Ocwen "should be forced to pay restitution in the amount of $240,000." See id.

28.    All of these new allegations relate to the actions by Ocwen, not any Debtor entity, and therefore cannot form a basis for liability of the Debtors' estates.  As was noted in ¶ 10 *supra*, at the time the Harris Loans were transferred to Ocwen, the monthly payments made by Mr. Harris were $688.95 and $1,083.90.  Mr. Harris alleges that his monthly payments increased to $1,410.94 and $2,422.13.  However, the statements showing the increased payments described in the Harris Response are all dated after servicing of the Harris Loans was transferred to Ocwen and therefore, no Debtor is liable for these increased payments. See Bank Statements, attached as Exhibit C to the Harris Response.  Additionally, the statements that Mr. Harris attaches regarding his credit score show that he had a credit score of 610 in September 2014 and that it lowered to 498 by October 2015. See Credit Score Statements, attached to the Harris Response as Exhibit D.  This means that the reduction occurred well after servicing was transferred to Ocwen and therefore cannot be the basis for a claim against any of the Debtors.

29.    Through the Objection, the Borrower Trust sought to reduce the Harris Claims to the claim amounts that he provided in the 1687 and 1689 Diligence Responses. See 1687 Diligence Response and 1689 Diligence Response.  The reduced amount correlates to the damages that Mr. Harris asserted he incurred as a result of the Debtors' alleged improper

10

ny-1210893

servicing of his loans in 2010 and 2011 that led to foreclosure proceedings being initiated against

him.  See id.  The Borrower Trust took Mr. Harris at his word that these amounts were accurate.

Through the Harris Response, Mr. Harris now seeks to recover more than the amounts provided

in the 1687 and 1689 Diligence Responses, but does not provide any reason as to why those

amounts were inaccurate. Rather, he attempts to hold the Debtors liable for the actions of non-

Debtor entities that are not connected to the purported improper servicing of the Debtors that was

the basis for the alleged damages in the 1687 and 1689 Diligence Responses.   As a result, the

Harris Claims should be reduced and allowed to the amount asserted by Mr. Harris in the 1687

and 1689 Diligence Responses, as provided for in the Objection.[7]

### B.      Carroll Claim

30.      In the Carroll Response, Mr. Carroll asserts that (i) he was not provided with

notice of the foreclosure sale of the Carroll Property and (ii) GMACM accepted payments from

him that were not credited to his account. See Carroll Response at 2-3.  In support of this second

assertion, Mr. Carroll attaches Western Union statements and bank statements.

31.      As stated in the Objection, the Debtors are not liable for failing to provide notice

of the foreclosure sale to Mr. Carroll because Mr. Carroll was provided notice of the sale.

Alabama law requires that notice of a foreclosure sale be given by publication once a week for

three successive weeks in a newspaper published in the county in which the property is located.

See ALA. CODE § 35-10-13 (2015).  As discussed in ¶ 23 *supra*, GMACM published notice of

the foreclosure sale in the *Mobile-Register Press* on March 1, March 8, and March 15, 2010.

GMACM also mailed the Second Notice of Acceleration on February 25, 2010.  Finally, the

---

[7] Mr. Harris has not provided any reason why the Harris Claims should be classified as secured claims, as there is nothing in any of the pleadings or documents submitted by Mr. Harris to indicate he holds an interest in the property of any Debtor.  As a result, the Objection seeks that the Harris Claims be allowed as general unsecured claims against GMACM.

11

Debtors' foreclosure attorney also provided Mr. Carroll with notice of the foreclosure sale in a letter dated March 25, 2010. <u>See</u> ¶ 23 *supra*.

32.     Mr. Carroll also asserts that GMACM failed to apply payments that he made to his account. In support of this assertion, he attaches the same Western Union statements and banks statements that were attached to his diligence response. As was stated in <u>Exhibit A</u> to the Proposed Order, the Borrower Trust reviewed these statements and confirmed that all of the payments demonstrated in these records were properly applied to Mr. Carroll's account. <u>See</u> Supp. Decl. ¶ 23. A chart summarizing the reconciliation of the payments from July 1, 2009 (the date of the first delinquency) through the date of the foreclosure is attached to the Supp. Decl. as <u>Exhibit X</u>. As a result, Mr. Carroll has failed to demonstrate any wrongdoing on the part of any Debtor and his claim should be disallowed and expunged.

## CONCLUSION

33.     WHEREFORE, the Borrower Trust respectfully submits that the relief requested in the Objection should be granted in its entirety.

Dated:  November 13, 2015          /s/ Norman S. Rosenbaum
        New York, New York          Norman S. Rosenbaum
                                     Jordan A. Wishnew
                                     Jessica J. Arett
                                     MORRISON & FOERSTER LLP
                                     250 West 55th Street
                                     New York, New York 10019
                                     Telephone: (212) 468-8000
                                     Facsimile: (212) 468-7900

                                     *Counsel for the ResCap Borrower Claims Trust*

ny-1210893