## Exhibit W

**COLLEEN McCULLOUGH**

ATTORNEY AT LAW

(205) 930-5379

*cmccullough@sirote.com*

# S I R O T E
## — & —
# P E R M U T T
### A PROFESSIONAL CORPORATION

March 25, 2010

Billy R. Carroll
2285 Cedar Point Road
Mobile, AL 36605

Re:    Our client: GMAC Mortgage, LLC ('GMAC')
       Loan number: ████5736
       Property address: 2285 Cedar Point Road, Mobile, AL 36605

Dear Mr. Carroll:

As you are aware, this firm represents GMAC in relation to its interest in the above-referenced property. Pursuant to a telephone call on March 5, 2010, enclosed please find the following items in connection with the loan.

1. Copy of the Note.
2. Copy of the Mortgage.
3. Copy of the Payment History from 3/1/07 through 3/10/10.
4. Copy of the Transaction Codes corresponding to said Payment History.

This account is currently due for the September 2009 through March 2010 payments. As the attached payment history indicates, GMAC last received a payment on November 3, 2009, and it was applied to the month of August 2009. Should you have other proof of payments not reflected on the attached history (i.e. copies of cancelled checks), please provide to me so that I may forward such information to GMAC for review.

According to GMAC, you were placed on a repayment plan in January 2010, but failed to remit the required payment in accordance with said plan. As a result, loss mitigation efforts ceased and a denial letter was mailed to you on February 22, 2010.

Please be advised that the total amount necessary to reinstate this loan (including estimated foreclosure fees and costs), good through April 1, 2010, is $12,358.52, and is broken down as follows:

| Payments due from September 2009 | $ | 6,097.56 |
|---|---|---|
| Late Charges | $ | 300.30 |
| Advances | $ | 1,698.37 |
| Property Inspections | $ | 63.63 |
| Estimated Foreclosure Attorney Fees/Costs | $ | 1,547.40 |
| Other Fees | $ | 20.00 |

DOCSBHM\1693219\1\

Billy R. Carroll
March 25, 2010
Page 2

| | | |
|---|---|---|
| BPO/Appraisal | $ | 83.00 |
| Escrow Advances | $ | 2,298.26 |
| Property Preservation | $ | 250.00 |
| Total Amount to Reinstate through 3/31/10 | $ | **12,358.52** |

Additionally, the total amount necessary to payoff this loan (including estimated foreclosure fees and costs), good through April 1, 2010, is $55,600.29.  If you are unable to reinstate or payoff your account, please do not hesitate to contact GMAC's workout department directly at 1-800-799-9250 for any available loan workout options. There is currently a foreclosure sale set for April 2, 2010.

This communication is from a debt collector.

Sincerely,

Colleen McCullough
FOR THE FIRM

CM/km
Enclosures
c:      GMAC Mortgage, LLC

# NOTE

Loan ID. CABI01

April 22nd, 2003                                    Mobile,            Alabama
[Date]                                                      [City]              [State]

### 2285 Cedar Point Rd, Mobile, Alabama  36605
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $    64,800.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is The Mortgage Outlet, Inc., A Georgia Corporation whose address is 1800 Sandy Plains Pky Ste.304, Marietta, GA 30066
. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of  7.500 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

    **(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  1st  day of each month beginning on June 1st, 2003       . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  May 1st, 2018     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 1800 Sandy Plains Pky Ste.304, Marietta, GA 30066
or at a different place if required by the Note Holder.

    **(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $      600.70

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments *  . The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.



HF NOTE

**\* SUBJECT TO THE PROVISIONS OF THE ATTACHED PREPAYMENT PENALTY RIDER.**

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3200 1/01 (page 1 of 3 pages)

Laser Forms by: Prime Services - (770) 516-8025 - note01

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of        10        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     5.000  % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3200 1/01 (page 2 of 3 pages)

Laser Forms by: Prime Services - (770) 516-8025 - note02

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
Billy R. Carroll                                      - Borrower

_____ (Seal)
                                                         - Borrower

_____ (Seal)
                                                         - Borrower

_____ (Seal)
                                                         - Borrower

[Sign Original Only]

**"CAUTION -- IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT."**

THIS RIDER IS ATTACHED TO AND MADE A PART OF THAT CERTAIN PROMISSORY NOTE FROM
Billy R. Carroll

TO The Mortgage Outlet, Inc.   IN THE PRINCIPAL AMOUNT OF $_____64,800.00_____.

        After Five  ( 5 ) full years from the date hereof, maker may prepay in whole or in part, without penalty, the then outstanding principal balance. In the event maker prepays any portion of the outstanding principal balance and accrued interest during the first Five ( 5 ) years from the date hereof, maker shall pay in addition to such prepayment (or, as a deduction therefrom) a penalty in an amount equal to a percentage of the principal portion of the amount so prepaid in accordance with the following:

          If paid during the first year from the date hereof, _____Five_____
          ( __5.000%__ ) percent of the portion of such prepayment equal to the
          principal amount so prepaid.

          If paid during the second year from the date hereof, _____Four_____
          ( __4.000%__ ) percent of the portion of such prepayment equal to the
          principal amount so prepaid.

          If paid during the third year from the date hereof, _____Three_____
          ( __3.000%__ ) percent of the portion of such prepayment equal to the
          principal amount so prepaid.

          If paid during the fourth year from the date hereof, _____Two_____
          ( __2.000%__ ) percent of the portion of such prepayment equal to the
          principal amount so prepaid.

          If paid during the fifth year from the date hereof, _____One_____
          ( __1.000%__ ) percent of the portion of such prepayment equal to the
          principal amount so prepaid.

Holder shall apply any prepayment first to reduce any interest and charges owing at the time of such prepayment and then to reduce the amount of principal in reverse order of the due date of each payment and shall not otherwise affect or delay the due date of the next payment provided under the Note.

_____
Billy R. Carroll

_____

_____

_____

State of Alabama - Mobile County
I certify this instrument was filed on:

Wed, Apr-30-2003 @ 4:47:52PM

| | |
|---|---|
| SURCHARGE | 10.00 |
| MORTGAGE TAX | 97.20 |
| RECORDING FEE | 41.00 |
| S. R. FEE | 2.00 |
| TOTAL AMOUNT | $150.20 |

2003035799  Book-5356  Page-1026
Total Number of Pages: 16

2003035799
Don Davis, Judge of Probate

------------------------------[Space Above This Line For Recording Data]------------------------------

# MORTGAGE           Loan ID: CABI01

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3
11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in
Section 16.

**(A) "Security Instrument"** means this document, which is dated April 22nd, 2003
together with all Riders to this document.
**(B) "Borrower"** is  Billy R. Carroll, Unmarried

Borrower is the mortgagor under this Security Instrument.
**(C) "Lender"** is  The Mortgage Outlet, Inc.                                          . Lender is a
Georgia Corporation                            organized and existing under the laws of
The State of Georgia       . Lender's address is 1800 Sandy Plains Pky Ste.304,
Marietta, GA 30066                      . Lender is the mortgagee under this Security Instrument.
**(D) "Note"** means the promissory note signed by Borrower and dated April 22nd, 2003
The Note states that Borrower owes Lender Sixty Four Thousand Eight Hundred
and no/100 --- dollars
Dollars (U.S. $      64,800.00     ) plus interest. Borrower has promised to pay this debt in
regular Periodic Payments and to pay the debt in full not later than  May 1st, 2018                     .
**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The
following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Other(s) [specify] _____ |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | |

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(K) "Escrow Items"** means those items that are described in Section 3.

**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably mortgages, grants and conveys to Lender, with power of sale, the following described property located in the          County          of          Mobile          :
          [Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

    SEE ATTACHED LEGAL DESCRIPTION

which currently has the address of    2285 Cedar Point Rd,

                                              [Street]

     Mobile              , Alabama    36605    ("Property Address"):
     [City]                           [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which

Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Suc payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are du under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such

Laser Forms by: Prime Services - (770) 516-8025 - almtg04

revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage claus and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as

ALABAMA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3001 1/01 *(Page 6 of 15 pages)*

the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or

Laser Forms by: Prime Services - (770) 516-8025 - cimfg07

statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/o repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such los reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained,

Laser Forms by: Prime Services - (770) 516-8025 - olmfg08

and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of suc cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on suc Miscellaneous Proceeds, Lender shall not be required to pay

Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is no economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender' interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for

Laser Forms by: Prime Services - (770) 516-8025 - olmfg10

payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If

Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contrac or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums

which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the followin forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides an herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c)

"Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on th Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument an sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleratio and the right to bring a court action to assert the non-existence of a default or any other defense o Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by thi Security Instrument without further demand and may invoke the power of sale and any other remedie permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees an costs of title evidence.**

If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in th manner provided in Section 15. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in          Mobile          County, Alabama, and

thereupon shall sell the Property to the highest bidder at public auction at the front door of the Count Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenant and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of th sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Securit Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____    _____ (Seal)
                              Billy R. Carroll          - Borrower

_____    _____ (Seal)
                                                        - Borrower

_____    _____ (Seal)
                                                        - Borrower

_____    _____ (Seal)
                                                        - Borrower

_____ **[Space Below This Line For Acknowledgment]** _____

STATE OF ALABAMA, MOBILE                    COUNTY ss:
    On this    22nd    day of    April         , 2003,  I,  the undersigned a Notary Public in and
for said county and in said state, hereby certify that
                              Billy R. Carroll
whose name is/ are  signed to the foregoing conveyance, and who is/are known to me, acknowledged before me that, being informed of the contents of the conveyance,  he/she/they  executed the same voluntarily and as their act on the day the same bears date.
    Given under my hand and seal of office this  22nd   day of  April         , 2003.

My Commission Expires:   9/26/05

                              _____
                                   Notary Public

ALABAMA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3001 1/01 *(Page 15 of 15 pages)*

EXHIBIT "A"


Begin at the Northwest corner of Lot Three of Fractional Section 15, Township 5 South, Range 1 West and run East 122 feet to a point on the East line of Cedar Point Road, thence run South 14 degrees 30 minutes West along the East line of said Cedar Point Road 741 feet to a point marked by an iron pipe, for the point of beginning; thence run 77 degrees 15 minutes East 360 feet to a point, thence run South 14 degrees 30 minutes West 75 feet to a point, thence run North 77 degrees 15 minutes West 360 feet to a point on the East line of Cedar Point Road, thence run North along the East line of Cedar Point Road, 14 degrees 30 minutes East, 75 feet to the point of beginning.

Fiserv (DISPLAY/HISTORY)                                                    Page 1 of 1

<u>Previous</u>  <u>Current</u>    <u>Next</u>

DISPLAY/HISTORY                    681  3/11/2010  1:55:05 PM ET  PFSP555

ACCT  ▮5736  Scrn ▯  Dsp ▯  Order R  Date 03/11/10  Prt N  Bal N

Name CARROLL          Type 8  Sub 0  Inv 96132  Warn 5  Lock 0  Stop 000  St    1

- Dates - Paid To    08/01/09  Next Due  09/01/09  Last Pmt  11/03/09  Audit  06/05/03

- Bal -  Prin     45970.88 Esc        -3360.40 Unap/Cd       0.00 /

- Uncol - Lc        -90.09 Opt Prd       0.00 INT        0.00   FEES  -1750.75

         Esc Sht      0.00

- Ytd -  Int         0.00 Taxes         0.00  Loss Draft Rcd ?      N

- Date - Tr - Pdto  ----- Tr - Amt --------- Prin ----- Interest ------ Escrow --

031010 FB 080109              7.38  11 PROP INSPECTION FEE

030910 FB 080109             11.25  11 PROP INSPECTION FEE

022610 FB 080109             83.00 164 CORP ADV 3 DRM

020510 M01 080109          -601.60         .00           .00          .00

020510 UFU 080109    UNAPPLIED FUNDS (1)    -601.60  BALANCE      0.00

012510 AA 080109              .00         .00           .00          .00

012510 AA 080109              .00         .00           .00          .00

012510 UFF 080109    UNAPPLIED FUNDS (2)    -601.60  BALANCE      0.00

012510 UFU 080109    UNAPPLIED FUNDS (1)     601.60  BALANCE    601.60

Comments-1

Comments-2

**Message:** DISPLAY COMPLETE                    OK              MORE...

**Command:** ▯                                      [ Submit ] [ Reset ] [ PrintAll ]

Previous  **Current**  Next

DISPLAY/HISTORY                    681  3/11/2010  1:57:16 PM ET  PFSP555

ACCT   ████ 5736  Scrn [   ] Dsp [   ] Order [R] Date [01/25/10]  Prt [N]  Bal [N]

Name CARROLL       Type 8  Sub 0  Inv 96132        Warn 5  Lock 0  Stop 000  St    1

- Dates -  Paid To    08/01/09  Next Due   09/01/09  Last Pmt   11/03/09  Audit    06/05/03

- Bal -  Prin       45970.88  Esc        -3360.40  Unap/Cd        0.00 /

- Uncol -  Lc         -90.09  Opt Prd        0.00  INT        0.00    FEES    -1750.75

         Esc Sht       0.00

- Ytd -  Int        0.00  Taxes          0.00  Loss Draft Rcd ?        N

- Date -  Tr - Pdto ----- Tr - Amt -------- Prin ----- Interest ------ Escrow --

011110 FB  080109        11.25  11 PROP INSPECTION FEE

010510 AA  080109         .00          .00          .00          .00

010510 UFF 080109  UNAPPLIED FUNDS (2)        601.60  BALANCE      601.60

010510 UPU 080109  UNAPPLIED FUNDS (1)       -601.60  BALANCE        0.00

122809 AA  080109         .00          .00          .00          .00

122809 AA  080109         .00          .00          .00          .00

122809 UFF 080109  UNAPPLIED FUNDS (2)       -601.60  BALANCE        0.00

122809 UFU 080109  UNAPPLIED FUNDS (1)        601.60  BALANCE      601.60

121709 SR0 080109       -701.00          .00          .00          .00

Comments-1

Comments-2

**Message:**  DISPLAY COMPLETE                    OK                    MORE...

**Command:** [                                    ]  [Submit] [Reset] [PrintAll]

Fiserv (DISPLAY/HISTORY)                                                        Page 1 of 1

Previous  **Current**  Next

DISPLAY/HISTORY                      681  3/11/2010  1:57:22 PM ET  PFSP555

ACCT      5736   Scrn        Dsp        Order R   Date 12/17/09   Prt N   Bal N

Name CARROLL        Type 8  Sub 0   Inv 96132   Warn 5   Lock 0   Stop 000  St     1

- Dates -  Paid To   08/01/09  Next Due  09/01/09  Last Pmt   11/03/09  Audit    06/05/03

- Bal -    Prin        45970.88  Esc        -3360.40  Unap/Cd         0.00 /

- Uncol -  Lc          -90.09  Opt Prd         0.00  INT          0.00   FEES    -1750.75

           Esc Sht        0.00

- Ytd -    Int           0.00  Taxes          0.00  Loss Draft Rcd ?      N

- Date -  Tr - Pdto  ----- Tr - Amt ---------  Prin  ----- Interest  ------ Escrow --

121709 UFU 080109   UNAPPLIED FUNDS (1)              -701.00 BALANCE        0.00

121609 SRA 080109         701.00       .00          .00            .00

121609 UFU 080109   UNAPPLIED FUNDS (1)               701.00 BALANCE      701.00

112409 FE  080109        2206.00 163 CORP ADV 2 ESCROW

112409 SRO 080109       -2206.00       .00          .00        -2206.00

112309 FB  080109        2206.00 163 CORP ADV 2 ESCROW

110309 SRA 080109           .80       .00          .00            .00

110309 UPF 080109   UNAPPLIED FUNDS (2)                 0.80 BALANCE      601.60

110309 AP  080109         721.20    311.44       289.26         120.50

Comments-1

Comments-2

**Message:**  DISPLAY COMPLETE                    OK                 MORE...

**Command:**

[Submit] [Reset] [PrintAll]

Previous  **Current**  Next

DISPLAY/HISTORY                    681  3/11/2010  1:57:25 PM ET  PFSP555

ACCT  ████5736  Scrn [    ]  Dsp [    ]  Order R  Date 11/03/09  Prt N  Bal N

Name CARROLL        Type 8  Sub 0  Inv 96132      Warn 5  Lock 0  Stop 000  St    1

- Dates -  Paid To   08/01/09  Next Due  09/01/09  Last Pmt  11/03/09  Audit  06/05/03

- Bal -  Prin      45970.88  Esc      -3360.40  Unap/Cd      0.00 /

- Uncol -  Lc       -90.09  Opt Prd       0.00 INT       0.00    FEES   -1750.75

          Esc Sht      0.00

- Ytd -  Int          0.00  Taxes          0.00  Loss Draft Rcd ?       N

- Date -  Tr -  Pdto ----- Tr-Amt --------- Prin ---- Interest ------ Escrow --

110309 UI  080109              .00          .00         .00          .00

          OPT PREMIUMS              .00  LATE CHARGE PYMT   -30.03*

110309 RPL 111609   NO. OF PLAN PMTS=01

110309 RPL 111609   PAID   722.00 DUE   721.20  OVER      .80  TELLER   410

102909 FB  070109       340.00  40 EXPENSE ADVANCES

102909 FB  070109       592.37  40 EXPENSE ADVANCES

102909 FB  070109       600.00  40 EXPENSE ADVANCES

102609 SR0 070109      -721.00         .00         .00         .00

102609 UFU 070109   UNAPPLIED FUNDS (1)      -721.00  BALANCE      0.00

Comments-1

Comments-2

**Message:** DISPLAY COMPLETE                    OK                  MORE...

**Command:** [                                                    ]  [Submit] [Reset] [PrintAll]

<u>Previous</u>  <u>**Current**</u>  <u>Next</u>

DISPLAY/HISTORY                        681  3/11/2010  1:57:29 PM ET  PFSP555    ◄ ► ▲ ▼

ACCT ▮▮▮▮ 5736  Scrn ▮  Dsp ▮  Order ▮R▮  Date ▮10/26/09▮  Prt ▮N▮  Bal ▮N▮

Name CARROLL        Type 8  Sub 0  Inv 96132    Warn 5  Lock 0  Stop 000  St   1

- Dates -  Paid To   08/01/09  Next Due  09/01/09  Last Pmt  11/03/09  Audit   06/05/03
- Bal -    Prin      45970.88  Esc      -3360.40  Unap/Cd        0.00 /
- Uncol -  Lc         -90.09  Opt Prd       0.00  INT       0.00     FEES  -1750.75
           Esc Sht      0.00
- Ytd -  Int           0.00  Taxes         0.00  Loss Draft Rcd ?    N

- Date - Tr - Pdto ----- Tr - Amt -------- Prin ---- Interest ------ Escrow --
102609 SRO 070109            -.20          .00         .00          .00
102609 UFF 070109   UNAPPLIED FUNDS (2)          -0.20  BALANCE    600.80
102609 RP  070109         721.20       309.50      291.20       120.50
102609 UI  070109            .00          .00         .00          .00
                OPT PREMIUMS           .00  LATE CHARGE PYMT    -30.03*
102609 RPL 101609   NO. OF PLAN PMTS=01
102609 RPL 101609   PAID   721.00 DUE   721.20 SHORT    -.20 TELLER 18928
102309 SRA 060109         721.00          .00         .00          .00
102309 UFU 060109   UNAPPLIED FUNDS (1)          721.00  BALANCE    721.00


Comments-1
Comments-2
**Message:**  DISPLAY COMPLETE                     OK                    MORE...

**Command:**▮                                        [Submit] [Reset] [PrintAll]

Fiserv (DISPLAY/HISTORY)                                                                    Page 1 of 1

Previous  Current   Next
DISPLAY/HISTORY                    681  3/11/2010  1:57:32 PM ET  PFSP555

ACCT ▮▮▮5736   Scrn ▯   Dsp ▯   Order R  Date 10/23/09   Prt N  Bal N

Name CARROLL          Type 8  Sub 0  Inv 96132     Warn 5  Lock 0  Stop 000  St 1
- Dates - Paid To  08/01/09  Next Due  09/01/09  Last Pmt  11/03/09  Audit  06/05/03
- Bal -  Prin      45970.88  Esc      -3360.40  Unap/Cd        0.00 /
- Uncol -  Lc        -90.09  Opt Prd      0.00  INT       0.00   FEES  -1750.75
          Esc Sht      0.00
- Ytd -  Int          0.00  Taxes        0.00  Loss Draft Rcd ?    N
- Date - Tr - Pdto ----- Tr - Amt --------- Prin ----- Interest ------ Escrow --
101309 AA 060109           .00           .00         .00          .00
101309 UFF 060109  UNAPPLIED FUNDS (2)         601.00  BALANCE     601.00
101309 UFU 060109  UNAPPLIED FUNDS (1)        -601.00  BALANCE       0.00
092509 FB 060109         11.25  11 PROP INSPECTION FEE
091609 FB 060109         83.00 164 CORP ADV 3 DRM
090109 FB 060109         11.25  11 PROP INSPECTION FEE
080709 SRA 060109       601.00           .00         .00          .00
080709 UFU 060109  UNAPPLIED FUNDS (1)         601.00  BALANCE     601.00
071009 AP 060109        651.00        307.58      293.12        50.30


Comments-1
Comments-2
**Message:** DISPLAY COMPLETE                    OK                    MORE...
Command: [                                                      ]  [Submit] [Reset] [PrintAll]

Fiserv (DISPLAY/HISTORY)                                                    Page 1 of 1

Previous  **Current**   Next

DISPLAY/HISTORY                    681  3/11/2010  1:57:35 PM ET  PFSP555

ACCT    ▊▊▊▊6736  Scrn ▢  Dsp ▢  Order �F  Date 07/10/09  Prt N  Bal N

Name CARROLL        Type 8  Sub 0  Inv 96132      Warn 5  Lock 0  Stop 000  St  1

- Dates - Paid To   08/01/09  Next Due  09/01/09  Last Pmt  11/03/09  Audit   06/05/03

- Bal -   Prin     45970.88 Esc       -3360.40 Unap/Cd        0.00 /

- Uncol - Lc        -90.09  Opt Prd      0.00 INT        0.00   FEES   -1750.75

          Esc Sht      0.00

- Ytd -   Int        0.00  Taxes        0.00  Loss Draft Rcd ?     N

- Date -  Tr - Pdto ----- Tr - Amt --------- Prin ----- Interest ------ Escrow --

071009 UI  060109            .00         .00          .00          .00

                 OPT PREMIUMS            .00 LATE CHARGE PYMT  -30.03*

071009 UI  060109            .00         .00          .00          .00

                     * ESC SHORTAGE       -70.20

050809 AP  050109         601.00      305.67       295.03          .30

050809 UI  050109            .00         .00          .00          .00

                     * ESC SHORTAGE      -120.20

040309 CWA 040109            .44         .44          .00          .00

040309 AP  040109         659.56      303.77       296.93          .00

                 OPT PREMIUMS            .00 LATE CHARGE PYMT   58.86

Comments-1

Comments-2

**Message:**  DISPLAY COMPLETE                    OK               MORE...

**Command:** ▢                                          [Submit] [Reset] [PrintAll]

Previous  Current    Next

DISPLAY/HISTORY                          681  3/11/2010  1:57:43 PM ET  PFSP555

ACCT ▮▮▮▮▮ 5736  Scrn         Dsp         Order R  Date 04/03/09    Prt N  Bal N       1

Name CARROLL          Type 8  Sub 0  Inv 96132      Warn 5  Lock 0  Stop 000  St       1

- Dates -  Paid To    08/01/09  Next Due    09/01/09  Last Pmt   11/03/09  Audit    06/05/03

- Bal -    Prin       45970.88  Esc          -3360.40  Unap/Cd             0.00 /

- Uncol -  Lc          -90.09  Opt Prd         0.00  INT         0.00    FEES   -1750.75

           Esc Sht        0.00

- Ytd -    Int          0.00  Taxes           0.00  Loss Draft Rcd ?      N

- Date -  Tr - Pdto ----- Tr - Amt -------- Prin ----- Interest ------ Escrow --

040309 UI  040109            .00           .00          .00            .00

              OPT PREMIUMS            .00  LATE CHARGE PYMT      58.86*

030909 AP  030109          601.00       301.88       298.82            .00

              OPT PREMIUMS            .00  LATE CHARGE PYMT        .30

030909 UI  030109            .00           .00          .00            .00

              OPT PREMIUMS            .00  LATE CHARGE PYMT        .30*

022409 FE  020109        1446.00 163 CORP ADV 2 ESCROW

022409 SRO 020109       -1446.00          .00          .00        -1446.00

022309 FB  020109        1446.00 163 CORP ADV 2 ESCROW

Comments-1

Comments-2

**Message:**  DISPLAY COMPLETE                    OK              MORE...

**Command:** [                                              ]    [ Submit ] [ Reset ] [ PrintAll ]

Fiserv (DISPLAY/HISTORY)                                                                    Page 1 of 1

Previous  **Current**  Next

DISPLAY/HISTORY                      681  3/11/2010  1:57:46 PM ET  PFSP555

ACCT  ▮▮▮5736  Scrn ▯  Dsp ▯  Order R  Date 02/23/09  Prt N  Bal N

Name CARROLL          Type 8  Sub 0  Inv 96132      Warn 5  Lock 0  Stop 000  St    1

- Dates -  Paid To    08/01/09  Next Due   09/01/09  Last Pmt   11/03/09  Audit    06/05/03

- Bal -  Prin       45970.88  Esc          -3360.40  Unap/Cd        0.00 /

- Uncol -  Lc          -90.09  Opt Prd         0.00  INT          0.00      FEES   -1750.75

           Esc Sht         0.00

- Ytd -  Int          0.00  Taxes           0.00  Loss Draft Rcd ?      N

- Date -  Tr - Pdto ----- Tr - Amt --------- Prin ----- Interest ------ Escrow --

021309 AP  020109         601.00       300.01        300.69        .00
              OPT PREMIUMS         .00  LATE CHARGE PYMT      .30
021309 UI  020109          .00          .00           .00          .00
              OPT PREMIUMS         .00  LATE CHARGE PYMT   -29.73*
011209 AP  010109         601.00       298.14        302.56        .00
              OPT PREMIUMS         .00  LATE CHARGE PYMT      .30
011209 UI  010109          .00          .00           .00          .00
              OPT PREMIUMS         .00  LATE CHARGE PYMT      .30*
121508 AP  120108         601.00       296.29        304.41        .00
              OPT PREMIUMS         .00  LATE CHARGE PYMT      .30

Comments-1
Comments-2

**Message:**  DISPLAY COMPLETE              OK              MORE...

**Command:** ▯                                              [Submit] [Reset] [PrintAll]

http://166.73.152.153:3068/Pi00wbfc/FBST/PI00WBFT?jloongdj                          3/11/2010

Fiserv (DISPLAY/HISTORY)                                         Page 1 of 1

Previous **Current** Next

DISPLAY/HISTORY                    681  3/11/2010  1:57:49 PM ET  PFSP555

ACCT [____]6736  Scrn [____]  Dsp [____]  Order [R]  Date [12/15/08]  Prt [N]  Bal [N]

Name CARROLL        Type 8  Sub 0  Inv 96132     Warn 5  Lock 0  Stop 000  St   1

- Dates - Paid To   08/01/09  Next Due  09/01/09  Last Pmt  11/03/09  Audit  06/05/03

- Bal -  Prin     45970.88  Esc       -3360.40  Unap/Cd        0.00 /

- Uncol - Lc        -90.09  Opt Prd      0.00  INT       0.00  FEES   -1750.75

         Esc Sht       0.00

- Ytd - Int          0.00  Taxes        0.00  Loss Draft Rcd ?      N

- Date -  Tr - Pdto - - - - - Tr - Amt - - - - - - - - - Prin - - - - Interest - - - - - - Escrow - -

121508 UI 120108              .00           .00           .00           .00
             OPT PREMIUMS          .00  LATE CHARGE PYMT   -29.73*
110408 CWA 110108             .30           .30           .00           .00
110408 AP 110108           600.70        294.45        306.25           .00
100608 CWA 100108             .30           .30           .00           .00
100608 AP 100108           600.70        292.62        308.08           .00
090608 CWA 090108           100.30        100.30           .00           .00
090608 AP 090108           600.70        290.18        310.52           .00
080808 CWA 080108            49.30         49.30           .00           .00

Comments-1
Comments-2

**Message:** DISPLAY COMPLETE                    OK                    MORE...

**Command:** [____]                                    [ Submit ] [ Reset ] [ PrintAll ]

Fiserv (DISPLAY/HISTORY)                                                                 Page 1 of 1

Previous  **Current**  Next

DISPLAY/HISTORY                    681  3/11/2010  1:57:53 PM ET  PFSP555

ACCT [____]5736   Scrn [___]   Dsp [___]   Order [X]  Date [08/08/08]   Prt [N]   Bal [N]

Name CARROLL       Type  8   Sub 0   Inv  96132   Warn 5   Lock 0   Stop 000  Sl    1

- Dates -  Paid To   08/01/09  Next Due   09/01/09  Last Pmt   11/03/09  Audit    06/05/03

- Bal -    Prin        45970.88  Esc        -3360.40  Unap/Cd              0.00 /

- Uncol -  Lc           -90.09  Opt Prd         0.00  INT          0.00   FEES    -1750.75

           Esc Sht        0.00

- Ytd -    Int           0.00   Taxes           0.00   Loss Draft Rcd ?       N

- Date -  Tr - Pdto ------ Tr - Amt -------- Prin ----- Interest ------ Escrow --

080808 AP  080108       600.70       288.07       312.63       .00

072508 CT  070108          .00        13.82          .00        .00

072508 UFU 070108   UNAPPLIED FUNDS (1)          -13.82  BALANCE       0.00

072508 FE  070108        11.25  11 PROP INSPECTION FEE

072508 FE  070108        27.00  11 PROP INSPECTION FEE

072508 FE  070108       135.78  40 EXPENSE ADVANCES

072508 FE  070108       237.15  40 EXPENSE ADVANCES

072508 SR  070108      -411.18          .00          .00        .00

072508 UFU 070106   UNAPPLIED FUNDS (1)         -411.18  BALANCE      13.82

Comments-1

Comments-2

**Message:** DISPLAY COMPLETE                    OK                    MORE...

**Command:** [_____]          [Submit]  [Reset]  [PrintAll]

Fiserv (DISPLAY/HISTORY)                                                                 Page 1 of 1

Previous  **Current**    Next

DISPLAY/HISTORY                          681  3/11/2010  1:57:57 PM ET  PFSP555

ACCT         5736  Scrn        Dsp        Order  R  Date  07/25/08   Prt  N   Bal  N

Name CARROLL         Type  8  Sub  0  Inv  96132        Warn  5  Lock  0  Stop 000  St    1

- Dates - Paid To    08/01/09  Next Due  09/01/09  Last Pmt   11/03/09  Audit   06/05/03

- Bal -  Prin        45970.88  Esc        -3360.40  Unap/Cd         0.00 /

- Uncol -  Lc          -90.09  Opt Prd       0.00  INT        0.00   FEES   -1750.75

         Esc Sht        0.00

- Ytd -  Int           0.00   Taxes         0.00  Loss Draft Rcd ?     N

- Date -  Tr - Pdto ----- Tr - Amt -------- Prin ----- Interest ------ Escrow --

071608 SRA 070108          425.00         .00         .00         .00

071608 UFU 070108    UNAPPLIED FUNDS (1)        425.00  BALANCE      425.00

071408 FWA 070108          219.27  40 EXPENSE ADVANCES

071408 AP  070108          630.73      286.19     314.51         .00

          OPT PREMIUMS              .00  LATE CHARGE PYMT      30.03

051908 ITR 060108  OLD INV 90979   24 P-BAL   50321.13 INT         .00

          NEW INV 96132    1  PERCENT OWNED   .0000  ACTION CD 000

051608 FWA 060108           23.80  40 EXPENSE ADVANCES

051608 FWA 060108          228.58  40 EXPENSE ADVANCES

Comments-1

Comments-2

**Message:**  DISPLAY COMPLETE                    OK                MORE...

**Command:**

[Submit] [Reset] [PrintAll]

Previous  Current   Next

DISPLAY/HISTORY                    681  3/11/2010  1:58:01 PM ET  PFSP555

ACCT            5736   Scrn        Dsp       Order  R   Date  05/16/08   Prt  N   Bal  N

Name CARROLL        Type  8  Sub 0  Inv 96132        Warn 5  Lock     Stop 000  St    1

- Dates -  Paid To   08/01/09  Next Due   09/01/09  Last Pmt  11/03/09  Audit    06/05/03

- Bal -   Prin     45970.88  Esc      -3360.40  Unap/Cd          0.00 /

- Uncol - Lc        -90.09  Opt Prd      0.00  INT       0.00     FEES    -1750.75

          Esc Sht          0.00

- Ytd - Int        0.00   Taxes         0.00   Loss Draft Rcd ?      N

- Date - Tr - Pdto ----- Tr- Amt --------- Prin ---- Interest ------ Escrow --

051608 AP  060108         720.52      284.42       316.28        .00
          OPT PREMIUMS           .00  LATE CHARGE PYMT     119.82

051608 UI  060108          .00         .00          .00         .00
          OPT PREMIUMS           .00  LATE CHARGE PYMT     119.82*

051608 AP  050108         600.70      282.65       318.05        .00
051608 UI  050108          .00         .00          .00         .00
          OPT PREMIUMS           .00  LATE CHARGE PYMT     -30.03*

051608 AP  040108         600.40      280.89       319.81        .00
051608 UFU 040108    UNAPPLIED FUNDS (1)       -0.30  BALANCE      0.00

Comments-1
Comments-2

**Message:** DISPLAY COMPLETE                     OK                    MORE...

**Command:**                                                      [ Submit ] [ Reset ] [ PrintAll ]

Fiserv (DISPLAY/HISTORY)

Previous  **Current**  Next

DISPLAY/HISTORY                681  3/11/2010  1:59:38 PM ET  PFSP555

ACCT        5736  Scrn ___  Dsp ___  Order R  Date 05/16/08  Prt N  Bal N

Name CARROLL      Type 8  Sub 0  Inv 96132      Warn 5  Lock 0  Stop 000  St  1

- Dates -  Paid To    08/01/09  Next Due   09/01/09  Last Pmt  11/03/09  Audit   06/05/03

- Bal -  Prin      45970.88  Esc       -3360.40  Unap/Cd        0.00 /

- Uncol -  Lc        -90.09  Opt Prd       0.00  INT        0.00  FEES     -1750.75

         Esc Sht       0.00

- Ytd -  Int        0.00  Taxes        0.00  Loss Draft Rcd ?     N

- Date -  Tr - Pdto ----- Tr- Amt -------- Prin ----- Interest   ------ Escrow --

051608 UI  040108          .00          .00          .00          .00

            OPT PREMIUMS            .00  LATE CHARGE PYMT    -30.03*

050208 SWA 030108          .30          .00          .00          .00

050208 UPU 030108    UNAPPLIED FUNDS (1)        0.30  BALANCE        0.30

050208 AP  030108        600.70       279.15       321.55          .00

050208 UI  030108          .00          .00          .00          .00

            OPT PREMIUMS            .00  LATE CHARGE PYMT    -30.03*

042108 FB  020108        11.25  11 PROP INSPECTION FEE

022808 AP  020108        601.00       277.41       323.29          .00

            OPT PREMIUMS            .00  LATE CHARGE PYMT      .30

Comments-1

Comments-2

**Message:**  DISPLAY COMPLETE                    OK                    MORE...

**Command:**  _____           [Submit] [Reset] [PrintAll]

Fiserv (DISPLAY/HISTORY)                                    Page 1 of 1

<u>Previous</u>  **Current**   <u>Next</u>

DISPLAY/HISTORY            681   3/11/2010   1:59:43 PM ET   PFSP555

ACCT   ▓▓▓▓5736   Scrn ▯   Dsp ▯   Order R   Date 02/28/08   Prt N   Bal N

Name CARROLL      Type 8   Sub 0   Inv 96132     Warn 5   Lock 0   Stop 000   St    1

- Dates -   Paid To    08/01/09   Next Due   09/01/09   Last Pmt    11/03/09   Audit    06/05/03

- Bal -    Prin      45970.88   Esc        -3360.40   Unap/Cd        0.00 /

- Uncol -   Lc        -90.09   Opt Prd      0.00   INT       0.00     FEES    -1750.75

       Esc Sht        0.00

- Ytd -   Int       0.00   Taxes        0.00   Loss Draft Rcd ?     N

- Date - Tr - Pdto ----- Tr-Amt -------- Prin ---- Interest ------ Escrow --

022808 UI 020108         .00        .00        .00        .00

             OPT PREMIUMS       .00   LATE CHARGE PYMT    -29.73*

022708 ITR 010108   OLD INV 90978    128 P-BAL    51725.65 INT         .00

           NEW INV 90979     24   PERCENT OWNED    .0000   ACTION CD 000

022308 ITR 010108   OLD INV 90701     46 P-BAL    51725.65 INT         .00

           NEW INV 90978    128   PERCENT OWNED    .0000   ACTION CD 000

120307 FEA 010108       7.50 171 SPEEDPAY FEE

120307 FB   010108       7.50 171 SPEEDPAY FEE

120307 AP   010108      600.72     275.69      325.01       .02

Comments-1

Comments-2

**Message:** DISPLAY COMPLETE               OK                MORE...

**Command:** ▯                           [ Submit ] [ Reset ] [ PrintAll ]

Fiserv (DISPLAY/HISTORY)                                                                 Page 1 of 1

Previous  Current    Next

DISPLAY/HISTORY                       681  3/11/2010  1:59:54 PM ET  PFSP555

ACCT        [    ]5736  Scrn [   ]  Dsp [   ]  Order [R]  Date [12/03/07]  Prt [N]  Bal [N]

Name CARROLL        Type 8  Sub 0  Inv 96132        Warn 5  Lock 0  Stop 000  St  1

- Dates - Paid To     08/01/09  Next Due    09/01/09  Last Pmt   11/03/09  Audit    06/05/03

- Bal -   Prin        45970.88  Esc          -3360.40 Unap/Cd        0.00 /

- Uncol - Lc            -90.09  Opt Prd         0.00 INT          0.00  FEES    -1750.75

          Esc Sht        0.00

- Ytd - Int             0.00  Taxes           0.00  Loss Draft Rcd ?      N

- Date -  Tr - Pdto ----- Tr- Amt -------- Prin ----- Interest ------ Escrow --

110207 FWA 120107         239.42   40 EXPENSE ADVANCES

110207 AP  120107         460.58       273.98      326.72      115.44

          OPT PREMIUMS              .00 LATE CHARGE PYMT    41.16

110207 UFU 120107    UNAPPLIED FUNDS (1)     -296.72  BALANCE       0.00

110207 UI  120107         .00          .00          .00          .00

          OPT PREMIUMS              .00 LATE CHARGE PYMT    41.16*

110207 UI  120107         .00          .00          .00          .00

          * ESC SHORTAGE          115.44

083107 SRA 110107         .00          .00          .00          .00


Comments-1
Comments-2
**Message:** DISPLAY COMPLETE                        OK                        MORE...
Command: [                                              ]        [Submit] [Reset] [PrintAll]

Fiserv (DISPLAY/HISTORY)                                                    Page 1 of 1

<u>Previous</u>  <u>Current</u>    <u>Next</u>

DISPLAY/HISTORY                    681  3/11/2010  1:59:57 PM ET  PFSP555

ACCT [████] 5736  Scrn [   ]  Dsp [   ]  Order [R]  Date [08/31/07]  Prt [N]  Bal [N]

Name CARROLL        Type 8   Sub 0   Inv 96132      Warn 5  Lock 0  Stop 000  St   1

- Dates -  Paid To      08/01/09  Next Due   09/01/09  Last Pmt  11/03/09  Audit    06/05/03

- Bal -   Prin         45970.88  Esc       -3360.40  Unap/Cd        0.00 /

- Uncol -  Lc            -90.09  Opt Prd        0.00  INT         0.00  FEES    -1750.75

          Esc Sht          0.00

- Ytd -  Int            0.00  Taxes          0.00  Loss Draft Rcd ?      N

- Date -  Tr - Pdto ----- Tr - Amt --------- Prin ----- Interest ------ Escrow --

083107 UFF 110107    UNAPPLIED FUNDS (2)           -296.72  BALANCE         0.00

083107 UFU 110107    UNAPPLIED FUNDS (1)            296.72  BALANCE       296.72

083107 SRA 110107          -64.78      .00          .00               .00

083107 UFF 110107    UNAPPLIED FUNDS (2)            -64.78  BALANCE       296.72

083107 SRA 110107          289.08      .00          .00               .00

           OPT PREMIUMS            .00  LATE CHARGE PYMT     289.08

083107 UI  110107           .00       .00          .00               .00

           OPT PREMIUMS            .00  LATE CHARGE PYMT     289.08*

083107 FEA 110107          27.00  40 EXPENSE ADVANCES


Comments-1

Comments-2

**Message:**  DISPLAY COMPLETE                    OK                   MORE...

**Command:**[                                                    ]  [Submit] [Reset] [PrintAll]

Fiserv (DISPLAY/HISTORY)                                                          Page 1 of 1

<u>Previous</u>  **<u>Current</u>**  <u>Next</u>

DISPLAY/HISTORY                    681  3/11/2010  2:00:00 PM ET  PFSP555

ACCT [____] 5736   Scrn [__]  Dsp [__]  Order R.  Date 08/31/07   Prt N.  Bal N.

Name CARROLL        Type 8  Sub 0  Inv 96132        Warn 5  Lock 0  Stop 000  St    1

- Dates - Paid To    08/01/09  Next Due   09/01/09  Last Pmt  11/03/09  Audit     06/05/03

- Bal -  Prin     45970.88  Esc       -3360.40  Unap/Cd        0.00 /

- Uncol - Lc      -90.09  Opt Prd        0.00  INT        0.00     FEES   -1750.75

        Esc Sht        0.00

- Ytd - Int        0.00  Taxes         0.00  Loss Draft Rcd ?      N

- Date - Tr - Pdto ----- Tr-Amt -------- Prin ----- Interest ----- Escrow --

083107 AP 110107        600.70      272.28      328.42        .00

083107 RPL 090107    NO. OF PLAN PMTS=01

083107 RPL 090107    PAID  852.00 DUE  851.51  OVER     .49 TELLER  410

072707 SRA 100107        251.30        .00        .00        .00

072707 UFF 100107    UNAPPLIED FUNDS (2)        251.30  BALANCE      361.50

072707 AP 100107        600.70      270.59      330.11        .00

072707 RPL 080107    NO. OF PLAN PMTS=01

072707 RPL 080107    PAID  852.00 DUE  851.49  OVER     .51 TELLER  410

062907 SRA 090107       -349.40        .00        .00        .00

Comments-1

Comments-2

**Message:** DISPLAY COMPLETE                    OK                  MORE...

**Command:** [_____]          [ Submit ] [ Reset ] [ PrintAll ]

Fiserv (DISPLAY/HISTORY)                                    Page 1 of 1

Previous  **Current**  Next

DISPLAY/HISTORY                    681  3/11/2010  2:00:28 PM ET  PFSP555

ACCT  █████5736  Scrn [   ]  Dsp [   ]  Order [R]  Date [06/29/07]  Prt [N]  Bal [N]

Name CARROLL        Type 8  Sub 0  Inv 96132      Warn 5  Lock 0  Stop 000  St   1

- Dates -  Paid To    08/01/09  Next Due   09/01/09  Last Pmt   11/03/09  Audit    06/05/03

- Bal -   Prin       45970.88  Esc        -3360.40  Unap/Cd      0.00 /

- Uncol -  Lc           -90.09  Opt Prd       0.00  INT       0.00     FEES   -1750.75

          Esc Sht        0.00

- Ytd -  Int            0.00  Taxes         0.00  Loss Draft Rcd ?       N

- Date -  Tr - Pdto ----- Tr - Amt -------- Prin ----- Interest ------ Escrow --

062907 UFF 090107    UNAPPLIED FUNDS (2)          -349.40  BALANCE      110.20

062907 AP  090107         600.70      268.91      331.79        .00

062907 AP  080107         600.70      267.24      333.46        .00

062907 RPY 070107    PAID    852.00 DUE   851.49 OVER    .51 TELLER  410

060407 SRA 070107         251.30        .00        .00          .00

060407 UFF 070107    UNAPPLIED FUNDS (2)           251.30  BALANCE     459.60

060407 AP  070107         600.70      265.58      335.12        .00

060407 RPY 060107    PAID    852.00 DUE   851.49 OVER    .51 TELLER  410

053107 PA  060107          .00      263.93      336.77        .00


Comments-1

Comments-2

**Message:** DISPLAY COMPLETE                    OK              MORE...

**Command:** [                                    ]    [Submit] [Reset] [PrintAll]

Fiserv (DISPLAY/HISTORY)                                                                 Page 1 of 1

Previous  Current    Next

DISPLAY/HISTORY                        681  3/11/2010  2:00:34 PM ET  PFSP555

ACCT  ▮5736  Scrn ▯  Dsp ▯  Order R  Date 05/31/07  Prt N  Bal N

Name CARROLL      Type 8  Sub 0  Inv 96132  Warn 5  Lock 0  Stop 000 St  1
- Dates -  Paid To  08/01/09  Next Due  09/01/09  Last Pmt  11/03/09  Audit  06/05/03
- Bal -  Prin  45970.88  Esc  -3360.40  Unap/Cd  0.00 /
- Uncol -  Lc  -90.09  Opt Prd  0.00  INT  0.00  FEES  -1750.75
       Esc Sht  0.00
- Ytd -  Int  0.00  Taxes  0.00  Loss Draft Rcd ?  N
- Date -  Tr - Pdto  ----- Tr - Amt --------- Prin  ---- Interest  ------ Escrow --

| Date | Tr | Pdto | Tr - Amt | | Prin | Interest | Escrow |
|------|----|------|----------|--------------------|------|----------|--------|
| 053107 | UFF | 060107 | UNAPPLIED FUNDS (2) | | | -600.70 BALANCE | 208.30 |
| 043007 | RP | 050107 | 600.70 | 262.29 | 338.41 | | .00 |
| 043007 | AA | 040107 | .00 | .00 | .00 | | .00 |
| 043007 | UFF | 040107 | UNAPPLIED FUNDS (2) | | | -600.70 BALANCE | 809.00 |
| 043007 | SR | 040107 | 852.00 | .00 | .00 | | .00 |
| 043007 | UFF | 040107 | UNAPPLIED FUNDS (2) | | | 852.00 BALANCE | 1409.70 |
| 032907 | RP | 040107 | 600.70 | 260.66 | 340.04 | | .00 |
| 032907 | AA | 030107 | .00 | .00 | .00 | | .00 |
| 032907 | UFF | 030107 | UNAPPLIED FUNDS (2) | | | -600.70 BALANCE | 557.70 |

Comments-1
Comments-2

**Message:** DISPLAY COMPLETE                        OK                        MORE...

**Command:**                                                        [ Submit ] [ Reset ] [ PrintAll ]

Fiserv (DISPLAY/HISTORY)                                                           Page 1 of 1

Previous  Current   Next

DISPLAY/HISTORY                    681  3/11/2010  2:00:40 PM ET  PFSP555

ACCT [    ]5736  Scrn [  ]  Dsp [  ]  Order [R]  Date [03/29/07]  Prt [N]  Bal [N]

Name CARROLL        Type 8  Sub 0  Inv 96132      Warn 5  Lock 0  Stop 000  St   1

- Dates - Paid To    08/01/09  Next Due  09/01/09  Last Pmt   11/03/09  Audit   06/05/03

- Bal -  Prin      45970.08  Esc        -3360.40  Unap/Cd         0.00 /

- Uncol - Lc        -90.09  Opt Prd        0.00  INT        0.00   FEES   -1750.75

         Esc Sht       0.00

- Ytd - Int         0.00  Taxes          0.00  Loss Draft Rcd ?       N

- Date -  Tr - Pdto  ----- Tr - Amt --------- Prin ----- Interest  ----- Escrow --

032907  SR  030107           852.00        .00          .00          .00

032907  UFF 030107    UNAPPLIED FUNDS (2)         852.00  BALANCE    1158.40

030107  RP  030107           600.70      259.04       341.66          .00

030107  AA  020107             .00        .00          .00          .00

030107  UFF 020107    UNAPPLIED FUNDS (2)        -600.70  BALANCE     306.40

030107  SR  020107           852.00        .00          .00          .00

030107  UFF 020107    UNAPPLIED FUNDS (2)         852.00  BALANCE     907.10

Comments-1
Comments-2
**Message:**  END OF HISTORY                    OK                    BOTTOM

**Command:** [                                    ]        [Submit] [Reset] [PrintAll]

| Transaction Code | Description | Financial | Available to EOY Annual Statement |
|---|---|---|---|
| AA | Administrative Adjustments | Y | Y |
| AAP | Autopost Acceptable Partial Payment | | |
| AAS | Assumption | | |
| ADC | Advance to pay deferred closing costs | | |
| ADI | Itemized initial advance.  For HELOCs, this transaction type represents the advance amount that was part of the total initial advance amount. | | |
| ADN | For non-cash transactions on HELOCs.  The detail of the transaction can be referenced by viewing the reference number.<br><br>Reference Numbers<br>Reference #9996<br>Reference #9997<br>Reference #9998<br>Reference #9999 | | |
| ADR | Advance Reversal<br>For Home Equity Line of Credit loans, this transaction type represents the reversal of an advance on the line | | |
| ADV | Advance.  For Home Equity Line of Credit loans, this transaction type represents an advance that the borrower takes on the line<br><br>Reference Numbers<br>Reference #9995 | | |
| AMC | Adjustable Rate, P&I, Subsidy, Term Changes/GPM Changes (AMC appears below the transaction that caused the change to the database field). **Note:** Next day availability | N | |
| ANR | Non-cash draw reversal | | |
| AP | Autopost **Note:** Next day availability | Y | Y |

| APB | Autopost Partial Base | | |
|---|---|---|---|
| APP | Acceptable Partial Payment | Y | |
| ARC | Automatic Reset of Codes via Report 97 **Note:** Next day availability | N | N |
| ARM | ARM transactions completed on-line for which document entries are created (i. e. event stop for change letters, on-line analysis) **Note:** for batch analysis, next day availability | N | Y |
| AS | Assumption | Y | Y |
| ASB | Autopost Short to Base | | |
| ASD | Autopost Short to Draft | | |
| ASM | Assumption Statement from the New/Statement of Assumption Screen | N | Y |
| ASP | Autopost Short Payment | | |
| ATP | Autopost Total Payment | | |
| BKR | Bankruptcy Transaction Activity (task tracking) | N | |
| CA | Construction Loan Administrative Adjustment from the Cnst/Admin Screen | Y | Y |
| CAN | Repayment Plan Canceled | N | |
| CBR | Account status reported to credit bureaus via Report 210 (if a loan is reported as current, an entry is not displayed). **Note:** next day availability | N | Y |
| CCA | Advance taken via credit card (treated like ADV transaction) | | |
| CCF | Full Cancellation of Credit Reform Subsidy Disbursement (for RHS only) | | |
| CCP | Partial Cancellation of Credit Reform Subsidy Disbursement (for RHS only) | | |
| CCR | Credit Card Advance Reversal (treated like ADR transaction) | | |
| CD | Construction Disbursement | Y | Y |
| CGF | Full Cancellation of Grant Disbursement (for RHS only) | | |
| CGP | Partial Cancellation of Grant | | |

| | | | |
|---|---|---|---|
| | Disbursement (for RHS only) | | |
| CIT | Customer Inquiry Task | N | Y |
| CL | Close Disbursement | | |
| CLF | Full Cancellation of Loan Disbursement (for RHS only) | | |
| CLM | Claim transaction activity (task tracking) | N | |
| CLN | New loan closed | Y | |
| CLP | Partial Cancellation of Loan Disbursement (for RHS only) | | |
| CLS | Purchased loan closed | Y | |
| CM | Moratorium Cancelled (for RHS only) | | |
| CO | Carryover (prepaid) interest deductible in future tax year(s) **Note:** next day availability | N | |
| CP | CAP of interest from Report 73 **Note:** Next day availability | Y | Y |
| CR | Construction Receipt | Y | Y |
| CRL | Curtailment Reversal posted automatically via Payoffs through Lockbox | Y | |
| CRP | Curtailment Reversal posted automatically via the Past/Payoff screen | Y | |
| CST | Credit Statement from the Customer/Credit Information screen | N | Y |
| CT | Curtailment | Y | Y |
| CTA | Curtailment posted via autopost **Note:** Next day availability | Y | Y |
| CTB | Curtailment reversal posted via Inv/Transfer screen | Y | Y |
| CTR | Curtailment reversal posted via Post/Reverse/Enmasse or Post/Curtailment | Y | Y |
| CTT | Reapplication of curtailment due to investor transfer | Y | Y |
| CWA | Curtailment posted with payment via autopost **Note:** next day availability | Y | Y |
| CWP | Curtailment posted with payment via Post/Level, Post/Regular, Post/Allocate, or Post/Exception | Y | Y |

| | | | |
|---|---|---|---|
| | where PMT='C' | | |
| D## | Document Tracking where ## is equal to the report that generated the document | | |
| D14 | Billing statement from Report 14 **Note:** next day availability | | Y |
| D17 | Delinquent Notice from Report 17, Uncollected Late Charge Notice from Report 17 **Note:** next day availability | N | Y |
| D19 | Batch Letter from Report 19 **Note:** next day availability | N | Y |
| D20 | Insurance Expiration Notice from Report 20, Forced Order Coverage Report from Report 20 **Note:** next day availability | N | Y |
| D28 | Billing statement from Report R628 | | |
| D45 | Notice of intent to foreclose letter on VA loans produced by Report 45 **Note:** next day availability | N | Y |
| D55 | Tax Outsourcer Addition from Report 555 | | |
| D65 | Mortgage Status Change Letter from Report 65 **Note:** next day availability | N | Y |
| D92 | MI delinquent notices from Report 92 **Note:** next day availability | N | Y |
| DCR | Credit Reform Subsidy Disbursement (RHS only) | | |
| DG* | Grant disbursement (RHS only) | | |
| DL* | Loan disbursement (RHS only) | | |
| DM | Delinquent messages from Delinquent/Loan/Contact | N | Y |
| DMD | Delinquent messages for dialers **Note:** next day availability | N | Y |
| DMR | Delinquent messages for remote systems | N | Y |
| DT | Document tracking log | | |
| E## | Escrow disbursement where ## indicates the escrow type | | |
| E01 | Escrow refund from en masse escrow analysis | Y | Y |

| | **Note:** next day availability | | |
|---|---|---|---|
| EBR | Escrow balance rollover | | |
| ECN | Endorsement letters from Report 206 **Note:** next day availability | N | Y |
| ED | Escrow disbursement with an unknown escrow type **Note:** next day availability | Y | Y |
| EDR | Electronic Data Reporting Changes | N | |
| EI | Interest on Escrow | Y | Y |
| EIL | Interest on escrow posted automatically via the payoffs through lockbox | Y | Y |
| EIP | Interest on escrow posted automatically via the Post/Payoff screen | Y | Y |
| EIS | Interest on escrow posted automatically via the Released/Post and Released/Pending screens or a final service release via the Service Release Interest on Escrow Posted Report 584 | Y | Y |
| ENN | En masse escrow disbursement using Reports 22/25 and 74/75, where 'NN' indicates the escrow type disbursed. **Note:** next day availability **Note:** a special descriptor (SUPPL) will appear on ENN transaction code lines to indicate that a supplemental insurance premium was disbursed from escrow through the Hazard Outsourcing Interface.  Report series 22, 74, and 75 are the only reports that can be used for the disbursement process. | Y | Y |
| ET | Event triggered | N | Y |
| ETS | Event trigger has been stopped | N | Y |
| EXE | Loan extension | | |
| FB | Fee billed | Y | Y |
| FBR | Fee billed - Recurring fees | | |
| FC | Foreclosure with cash | Y | Y |

| FCG | Full cancellation grand (RHS only) | | |
|-----|-----|-----|-----|
| FCL | Full cancellation loan (RHS only) | | |
| FCS | Full cancellation Credit Reform Subsidy (RHS only) | | |
| FE | Collection of billed fee transaction | Y | Y |
| FEA | Collection of billed fee transaction through autopost **Note:** next day availability | Y | Y |
| FEC | Pay capitalization fees | | |
| FEI | Interest on fees | Y | Y |
| FER | Collected interest on fees | Y | Y |
| FIV | Fee invoice on-line **Note:** next day availability | N | Y |
| FM | File maintenance | N | |
| FOR | Foreclosure transaction activity (task tracking) | N | |
| FP | Collection of fee that was not billed | Y | Y |
| FPR | Fees paid - recurring | | |
| FR | Reversal of a fee transaction | Y | Y |
| FS | Service release with cash | Y | Y |
| FSV | Field service transactions from the Field/Service/Order page 1 and 2 screens, Field/Service/Inspection/Request, or Field/Service/Receipt screens, OR from Report 506 **Note:** next day availability | N | Y |
| FW | Foreclosure without cash | Y | Y |
| FWA | Collection of billed fee transactions with payment posted via autopost | | |
| FWC | prepayment penalty fee on curtailment | Y | Y |
| FWP | Collection of a billed fee with payment posted via Post/Level, Post/Regular, Post/Allocate, or Post/Exception where PMT = 'Y' or 'C' | Y | Y |
| FWV | Billed fee that was waived | Y | Y |
| GP | government payment | Y | Y |
| HAZ | Hazard Insurance Item | | |

|  |  |  |  |
|---|---|---|---|
|  | **Note:** appears only on escrow analysis history |  |  |
| IR | Interest refund |  |  |
| IT | Investor transfer |  |  |
| ITC | Investor transfer with cash |  |  |
| ITD | Deletes a pending transfer |  |  |
| ITP | Notes a completed transfer |  |  |
| ITR | Investor transfer | Y |  |
| IW | interest adjustment due to reamortization |  |  |
| IWR | Administrative adjustment reversal due to reamortization |  |  |
| LCW | Late charge waiver using a late charge waiver reason code | Y | Y |
| LD | Loss draft disbursements | Y | Y |
| LMT | Loss mitigation transaction activity (task tracking) | N |  |
| LP | Lease payment |  |  |
| M## | Manual disbursement for escrow type ## |  |  |
| M00 | Used at conversion for Excelis transactions, moving data into MortgageServ |  |  |
| MAS | assumption |  |  |
| MDM | Multiple delinquent messages | N |  |
| MFC | MERS notified foreclosure complete **Note:** next day availability | N |  |
| MFI | MERS notified foreclosure initiated **Note:** next day availability | N |  |
| MFR | MERS notified foreclosure reinstated **Note:** next day availability | N |  |
| MIN | Mortgage Insurance Notice of Default (MI NOD) reported status produced by Report 92, option 2 **Note:** next day availability | N | Y |
| MNN | Escrow disbursement using the Posting Misc or Posting Escrow screens |  |  |
| MNT | Multiple notes |  |  |
| MO | Moratorium established (RHS only) |  |  |

| | | | |
|---|---|---|---|
| MOD | Reamortization agreement | | |
| NT | Notes from the Global/Notes screen | N | Y |
| OBG | Obligation grant (RHS only) | | |
| OBL | Obligation loan (RHS only) | | |
| OBS | Obligation Credit Reform Subsidy (RHS only) | | |
| OL | On line letter from the Global/Letter screen | N | Y |
| PA | payment posted on Post/Allocate screen | Y | Y |
| PAY | Payoff statement from the Payoff/Quote screen **Note:** next day availability | N | Y |
| PCG | Partial cancellation grant obligation (RHS only) | | |
| PCL | Partial cancellation loan obligation (RHS only) | | |
| PCO | Partial charge-off taken | | |
| PCS | Partial cancellation credit reform subside obligation (RHS only) | | |
| PF | Payoff | Y | Y |
| PFL | Payoff through lockbox | Y | Y |
| POA | Bankruptcy posting allocate | | |
| POC | Proof of claim (BKR/POC screen) | N | Y |
| POS | Post-petition payment posted via BKR/Pos/Single screen (also associated with RP, UF*, SR2, SR, UI, and AA) | Y | |
| PP | Partial payment | Y | Y |
| PPA | Administrative adjustment to payment assistance year-to-date or loan-to-date fields | N | |
| PPB | Partial payment base | | |
| PPP | Prepaid payoff | | |
| PR | Payment reversal - view Reversal Reason Codes | Y | Y |
| PRE | Pre-petition payment posted via BKR/Pos/Single screen | Y | |
| PRL | Payment reversal posted automatically via payoff through lockbox | Y | Y |
| PRN | Payment reversal where 'N' = Reversal Reason Codes | Y | Y |

| PRP | Payment reversal posted automatically via the Past/Payoff screen | Y | Y |
|---|---|---|---|
| PT | Reapplication of payments due to investor transfer using the Inv/Transfer screens | Y | Y |
| R## | Receipt for Escrow Type ## | | |
| R00 | Funds going to escrow, separate from the HUD money | | |
| RA# | Reversal accepted partial payment (# - reason for reversal) | Y | |
| RAF | Reaffirmation agreement | | |
| RB# | Reversed partial base | | |
| RC | REO curtailment posted on REO/Allocate screen | Y | Y |
| RCR | REO curtailment reversal posted on REO/Allocate screen | Y | Y |
| RD# | Reversed short to draft | | |
| RE | Reamortization principal (RHS only) | | |
| REO | Real Estate Owned transaction activity (task tracking) | N | Y |
| RER | Administrative Adjustment | | |
| RES | On-line repayment schedule | N | Y |
| RFE | REO Fee Payment | | |
| RH# | Reversed Short to Base | | |
| RI | Re-amortization interest previously accrued (RHS only) | | |
| RJ | Re-amortization interest 'odd days' (RHS only) | | |
| RNN | Escrow receipt using the Posting Escrow screen | | |
| RO | REO P&I payment posted via REO/Allocate screen | Y | Y |
| RP | Regular Payment | Y | Y |
| RPA | Repayment Plan activated or adjusted - provides teller who established the repayment plan, date, and time. | N | Y |
| RPD | Repayment Plan payment for delinquency | | |
| RPL | Repayment Plan payment for Loss Mitigation | | |

| | | | |
|---|---|---|---|
| RPP | Repayment Plan payment for Promise Plan | | |
| RPR | REO P&I Payment Reversal processed on REO/Reversed screen | Y | |
| RPY | Repayment Plan payment - provides a history of the repayment installments received and the amounts | Y | |
| RR | REO reverse payment | | |
| RS | REO single item receipt posted on REO/Allocate | Y | |
| RS# | Reversed short payment (# = reversal reason) | Y | |
| RSR | REO single item receipt | | |
| RT | Payment reversal due to investor transfer through the Inv/Transfer screen | Y | Y |
| RX# | Reversed total payment | | |
| SHB | Short to base | | |
| SHD | Short to draft | | |
| SHP | Short Payment | Y | |
| SLC | When the account is selected for Report 83.02, and the report flag does not equal 'L' **Note:** next day availability | N | Y |
| SLL | When the account is selected for Report 83.02 and the report flag equals 'L' **Note:** next day availability | N | Y |
| SPO | Short pay | | |
| SR | Single item receipt (single receipt to escrow for beginning escrow balances) | Y | Y |
| SRA | Single item receipt via autopost **Note:** next day availability | Y | Y |
| SRL | Single item receipt posted automatically via payoff through lockbox | Y | Y |
| SRN | Reversal using the Post/Single screen where 'N' = the reversal reason code | Y | Y |
| SR0 | Single receipt misapplied reversal | | |
| SUB | Subsidy applied with payment | | |

| | (RHS only) | | |
|---|---|---|---|
| SV | Service release | Y | Y |
| SVC | Curtailment reversal posted automatically as the result of a service release posted via Released/Post or Release/Pend | Y | Y |
| SVP | Payment reversal posted automatically as a result of a service release posted via Release/Post or Release/Pend | Y | Y |
| SVT | Escrow, unapplied funds, or buydown balance transfer as a result of a service release posted via Released/Post, Release/Pend, or in bulk via Report 580 | Y | |
| SWA | Single item receipt with payment via autopost **Note:** next day availability | Y | Y |
| SWP | Single item receipt posted with payment via Post/Level, Post/Regular, Post/Allocate, or Post/Exception where PMT = 'Y' or 'C'. | Y | Y |
| TC | Curtailment involving prepaid principal | Y | Y |
| TIN | W8/W9/B-Notice from Report 649 | N | N |
| TL | An informational line only that is used when one financial transaction is split between multiple payments. | | |
| TLP | Total Payment | | |
| TPP | Third party payment | | |
| TPW | Third party waiver | | |
| TRP | Third party reversal | | |
| TTL | Total cash received | | |
| TX | Tax item (appears only for escrow analysis history) | | |
| UF# | Unapplied transaction for unapplied code # | | |
| UI | Uncollected items which include interest and late charges | Y | |
| UIE | Uncollected late charges collected from the escrow overage during analysis | Y | Y |

|  |  |  |  |
|---|---|---|---|
|  | **Note:** next day availability |  |  |
| UN | Unknown<br>**Note:** next day availability |  |  |
| URF | Unapplied funds refund no allotment (RHS only) |  |  |
| UXI | Uncollected extension interest | Y |  |
| VAN | VA Notices (Notice of Default, Notice of Intent to Foreclose, and the combined Notice of Default/Intent to Foreclose) produced by Report 45<br>**Note:** next day availability | Y | Y |
| WFB | Write off fees via BKR/Loss screen | Y |  |
| WFF | Write off fees with FCL/Loss screen | Y |  |
| WFL | Write off fees loss mitigation |  |  |
| WFR | Write off fees with REO/Loss screen | Y |  |
| WRB | Write off balances via BKR/Loss screen | Y |  |
| WRF | Write off balances with FCL/Loss screen | Y |  |
| WRL | Write off balances with Los/Loss screen | Y |  |
| WRR | Write off balances with REO/Loss screen | Y |  |
| YTD | Interest/Tax |  |  |

# Escrow Type Codes

The following codes are used to describe the type escrow disbursement. The codes should be preceded by one of the following to describe the type of escrow disbursement (NN = Escrow Code):
- ENN = Escrow En Masse Disbursement
- MNN = Escrow Single Disbursement
- RNN = Escrow Receipt

Other escrow types include:  01-09 Customer related and 10-19 Force Placed Hazard Insurance

| Escrow Codes | Escrow Description |
| --- | --- |
| **User-Defined** | |
| 01 | Escrow analysis/PIF escrow refunds |
| 02 | Open |
| 03 | Open |
| 04 | Miscellaneous |
| 05 | Open |
| 06 | Open |
| 07 | Open |
| 08 | Open |
| 09 | Hazard refunds - homeowner |
| **Hazard** | |
| 20 | Fire |
| 21 | Flood |
| 22 | Earthquake |
| 23 | REO fire |
| 24 | REO flood |
| 25 | Corporate paid flood |
| 26 | Land |
| 27 | Wind |
| 28 | Contents |
| 29 | Flood Gap |
| **Optional** | |
| 30 | Mortgage life |
| 31 | Accidental death |
| 32 | Complimentary A/D |
| 33 | Disability |
| 34 | Miscellaneous insurance |
| 35 | Unemployment |

| 36 | DPP |
|----|-----|
| 37 | DMP |
| 38 | DMP endorsement |
| 39 | Unassigned |
| **PMI** | |
| 40 | Regular PMI |
| 44 | Corporate paid |
| 45 | Corporate paid - FDIC (declining) |
| 46 | Corporate paid - Wells (constant) |
| 47 | Corporate paid - Wells (declining) |
| 48 | RHS/FMHA |
| 49 | Supplemental PMI |
| **FHA** | |
| 50 | FHA (FH) |
| 51 | FHA adjustments |
| 52 | FHA final premiums (FH) |
| 55 | Corporate paid FHA |
| 56 | FHA risk-based (FR) |
| 58 | FHA uninsurable |
| 59 | FHA upfront (FP) |
| **Optional** | |
| 60 | Home Warranty |
| 61 | Roadside Assistance |
| 62 | Health/dental discounts |
| 63 | Memberships |
| 64 | Unassigned |
| 65 | Unassigned |
| 66 | Unassigned |
| 67 | Unassigned |
| 68 | Unassigned |
| 69 | Unassigned |
| **Unapplied Disbursement** | |
| 70 | Open |
| 71 | Open |
| 72 | Loss draft - third party |
| 73 | Miscellaneous mortgage insurance |
| 74 | Balloon/ARM conversion |
| 75 | Miscellaneous |
| 76 | Accounting Recon Team (ART) |
| 77 | Open |
| 78 | Open |

| 79 | Open |
|----|------|
| **Tax** | |
| 80 | Ground rent |
| 81 | Open |
| 82 | Open |
| 83 | Open |
| 84 | Open |
| 85 | Open |
| 86 | Open |
| 87 | Open |
| 88 | Open |
| 89 | Open |
| **Tax** | |
| 90 | County |
| 91 | City/town/township |
| 92 | Village |
| 93 | School |
| 94 | Special assessment |
| 95 | Utility/irrigation/maintenance district |
| 96 | Bond/water/sewer/drainage |
| 97 | Borough |
| 98 | Central Appraisal Agency |
| 99 | Open |

Loan Servicing Policies & Procedures

Welcome Menu

*Quick Clicks*

Revised Date:  02/21/2007

# Reversal Reason Codes

| Code | Description |
|------|-------------|
| 0 | Reversed – Misapplied |
| 1 | Returned – NSF |
| 2 | Reversed – Incorrect Account |
| 3 | Returned – Stop Payment |
| 4 | Returned – Irregular Signature; also used for Refer to Maker (bank) |
| 5 | Returned – Account Closed |
| 9 | Special Reversal-Payoff Reinstatements |

Prior to 07/01/2004, use the reversal reason codes below for Consumer loans with reversals completed.

| Code | Description |
|------|-------------|
| 0 | Reversed – Other |
| 1 | Reapplication of partial funds |
| 3 | Refund sent to customer |
| 6 | Returned – Stop Payment |
| 7 | Reversed – Misapplied |
| 8 | Reversed – ACH |
| 9 | Reversed – Check |

Contact Us:  Policies & Procedures