Susan Marie Gray
Attorney at Law
22255 Center Ridge Road; Suite 210
Rocky River, OH  44116
Telephone:  (440) 331-3949
Facsimile: (440) 331-8160
smgray@smgraylaw.com

Counsel for Patricia J. McNerney
Also on Behalf of Susan M. Gray, *Pro Se*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>Residential Capital, LLC, et al.,<br>    Debtor | Case No. 12-12020 (MG)<br><br>Judge Martin Glenn<br><br>**Declaration of**<br>**Patricia J. McNerney** |

I, Patricia J. McNerney, hereby declare as follows:

1. I make the following statements under penalty of perjury

2. I am over 18 years of age

3. I make the following statements from my personal knowledge

4. I am the borrower on a loan entered into in January 3, 2003 where the original lender was identified as Homecomings Financial Network, Inc.

5. The only reason I sought the loan is that I was recently divorced and had been ordered to refinance on the family home, where I lived with my three children, so that my former husband would be relieved of liability on the then-existing joint mortgage obligation to Household Finance.

6. Though I was awarded the home at 1241 Thoreau Road in the divorce decree, I also was ordered to obtain a loan refinance so that my former husband would no longer be liable on the then existing obligation.

7. Nancy George at OMC Lending was the person I worked with to obtain the refinance of my then-existing mortgage loan with Household Finance.

8. I explained to Nancy George that I was ordered to obtain a loan refinance;

9. To qualify for the loan, I gave Nancy George documentation of all of my income and assets, as well as my family size, as well as my divorce decree, and asked for a mortgage payment I could afford.

10. At the time I sought the mortgage loan refinance, the mortgage on the home had a mortgage with an interest rate of 13%, with a monthly payment of $985.00 which did not include escrow of funds for insurance ($30.00/month) or property taxes (230.81/month).

11. Nancy George assured me that she could obtain a loan refinance that would accomplish the goal of paying off the loan on which my former husband was liable and at the same time provide a lower monthly payment for me going forward.

12. After the application process, Nancy George informed me that I was approved for a loan at 8%, with a monthly payment of $850.00 that included escrow of funds for insurance and property taxes.

13. I was very relieved to have accomplished the goals of obeying the order of the divorce court, and achieving a manageable monthly payment.

14. The loan was scheduled to close on December 27, 2002 at the premises of Brooklyn Title Agency

15. Near that date, an employee of Brooklyn Title Agency called me and informed me that the closing would not occur until I paid an additional $8,150.00 in closing costs.

16. I was surprised and called OMC Lending to confirm that I had to do that.

17. Nancy George suggested that I cash in my IRA to come up with the additional funds to close.

18. Because I needed the loan, and especially needed to obtain that promised lower monthly payment, I did as suggested by Nancy George at OMC Lending.

19. On January 3, 2003 I paid the check in certified funds in the amount of $8,150.00 to close the loan and signed all the closing documents presented to me for signature. The copy of the check, which I have maintained as part of my loan file since loan inception is attached as Exhibit C and incorporated herein by this reference.

20. The settlement statement which I have maintained in my copy of the loan file is attached hereto as Exhibit A and incorporated herein by this reference

21. The mortgage, which was provided as an exhibit in the trial, and, apart from the recording information, is a true copy of the mortgage in the loan file I have maintained since closing, is attached hereto as Exhibit B and incorporated herein by this reference

22. I did not learn until I arrived for the closing that I would have to pay $178.00/month as private mortgage insurance as part of my monthly mortgage payment; this increased my payment to $1,232.48, a far cry from the $800.00/month originally agreed to.  Please refer to the first payment letter which I have maintained as part of my loan file from loan inception, attached hereto as Exhibit D and incorporated herein by this reference.

23. I did not select the private mortgage insurer and was not given a choice of providers.

24. I maintained my loan file as a complete intact document from loan inception to the present time.

25. My loan file, from which nothing has been removed, contains only one copy of a notice of right to cancel, which has a cancellation deadline of December 31st, 2002.  That document is attached as Exhibit H and incorporated herein by this reference.

26. The loan file contains two truth in lending disclosure statements, both provided on the same date, January 3, 2003; they are attached as exhibits E and F.

1-Affidavit of Patricia J McNerney    Pg 5 of 8

27. The loan file contains two Settlement Statements, both delivered to me at closing in the loan file. The two settlement statements are attached as Exhibits I and J and incorporated herein by this reference.

28. My income was not enough to cover the mortgage payments and from the beginning I was behind; I constantly attempted to reach out to Homecomings to seek a loan modification but was treated with indifference and just told that I did not qualify.

29. After the default, people from Homecomings often came to my house, when my children and I were out on the balcony, and the neighbors also were out, and took pictures in a very obvious way.

30. The people from Homecomings would taunt us in loud voices and tell us to stand up and wave and smile for the cameras.

31. The loan file also contains copies of disbursement checks dated January 3, 2003. Those checks are attached as a group as Exhibit G.

32. Ohio Mortgage Lending never informed me that I could qualify for a lower rate, or that its compensation was increased if it made the loan for a higher rate of interest.

33. The real estate that was the subject of that mortgage had been the home of my children's great uncle and we were all very attached to it as part of our family history.

34. I have defended two foreclosure claims filed in Ohio by the claimed successors in interest to the stated oblige on that loan.

35. The first was filed in the Cuyahoga County Court of Common Pleas in Cuyahoga County, Ohio.

36. That case proceeded through trial

37. Prior to that trial I sat for a deposition in the offices of Calfee Halter and Griswold, the attorneys representing the Plaintiff in that trial in Cleveland.

38. I also spent many hours meeting with my attorney, providing information, and assisting in preparing the answer, counterclaims, and in preparing for depositions of Plaintiff's witnesses, and in providing responses to written discovery served upon me.

39. I testified at that trial, as did my two oldest children

40. The Cuyahoga County Court of Common Pleas dismissed that case dismissed after trial and after full briefing

41. The second foreclosure case on the same loan was filed in the United States District Court for the Northern District of Ohio

42. I met with my attorney to assist with relevant facts in preparing responses to the second complaint.

43. I also travelled downtown as required for a pretrial conference in that case.

44. I also reviewed and approved all documents filed by my attorney in both cases.

45. I ultimately became so demoralized by the extended litigation, by the public humiliation, and the anxiety and uncertainty, that I became unable to live in the home and left it after many years.

46. I voluntarily transferred it to the Cleveland Land Bank

47. In any trial on the merits on the objection to claim, I and my three children would be critical witnesses.

48. It would be very difficult for me and my three children to participate in a trial in the Southern District of New York

49. I have worked for 16 years at the Lakewood Public Library

50. My current position is Assistant Supervisor for Public Service

51. My annual Salary is $27,000.00

52. Though I have three weeks annual vacation, I spend a lot of that time assisting my daughter by taking care of her children when she has to work and other child care is not available.

53. My daughter is named Kathleen Turner; she is married and has two children ages 5 and 3

54. Kathleen works full time in overseeing child care services for the Cleveland YMCA.

55. My oldest son is named Michael McNerney.

56. Michael works for a local restaurant and craft brewery called Great Lakes Brewing Company

57. I do not know his salary but I can see that he does not live lavishly; he shares rental expenses in a Cleveland neighborhood called Ohio City.

58. My youngest child is named Jeffrey McNerney.

59. Jeffrey just graduated from college in December, 2014 and secured his first job at 717 Ink in August, 2015.

60. Jeffrey continues to live in an apartment with me for financial reasons.

61. Travel to New York to defend the merits on the Objection to claim would be very burdensome for all of us

62. We do not make very much money; do not have funds for travel or shelter, and travel would cause difficulty for my daughter's young children.

63. It has been very stressful defending against the two foreclosure actions brought locally against the creditor; representing our interests in a court so far away from home would be very very hard.

64. The effort to represent our interests in New York would jeopardize our family finances and stability, as well as our job stability.

Pursuant to 28 U.S.C. Sec. 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  November 16, 2015

/s/ Patricia J. McNerney
Patricia J. McNerney