**Presentment Date:  December 10, 2015 at 12:00 p.m. (Prevailing Eastern Time)**
**Objection Deadline:  December 9, 2015 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900
Norman S. Rosenbaum

*Counsel for The ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ------------------------------------------------------------- ) | |
| In re:                                               ) | Case No. 12-12020 (MG) |
|                                                      ) | |
| RESIDENTIAL CAPITAL, LLC, et al.,   ) | Chapter 11 |
|                                                      ) | |
|                                    Debtors.     ) | Jointly Administered |
| ------------------------------------------------------------- ) | |

**NOTICE OF PRESENTMENT OF STIPULATION AND ORDER**
**BETWEEN THE RESCAP LIQUIDATING TRUST AND CONNECTICUT**
**HOUSING FINANCE AUTHORITY PROVIDING FOR SERVICE TRANSFER;**
**WITHDRAWAL OF PROOF OF CLAIM AND RELATED RELIEF**

**PLEASE TAKE NOTICE** that the undersigned will present the attached proposed

*Stipulation and Order Between The ResCap Liquidating Trust and Connecticut Housing Finance*

*Authority Providing for Service Transfer; Withdrawal of Proof of Claim and Related Relief* (the

"**Stipulation and Order**"), to the Honorable Martin Glenn, United States Bankruptcy Judge, at

the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy**

**Court**"), Alexander Hamilton Custom House, One Bowling Green, New York, New York

10004, Room 501, for signature on **December 10, 2015 at 12:00 p.m. (Prevailing Eastern**

**Time)**.

NY-1213831

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Stipulation and Order must be made in writing, conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Notice, Case Management, and Administrative Procedures approved by the Bankruptcy Court [Docket No. 141], be filed electronically by registered users of the Bankruptcy Court's electronic case filing system, and be served, so as to be received no later than **December 9, 2015 at 4:00 p.m. (Prevailing Eastern Time)**, upon (a) Chambers of the Honorable Martin Glenn, United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408; (b) counsel for The ResCap Liquidating Trust, Morrison & Foerster LLP, 250 West 55th Street, New York, NY 10019 (Attn: Norman S. Rosenbaum); (c) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014 (Attn: Tracy Hope Davis, Linda A. Riffkin and Brian S. Masumoto); (d) The ResCap Liquidating Trust, Quest Turnaround Advisors, 800 Westchester Avenue, Suite S-520, Rye Brook, NY 10573 (Attention: Jeffrey Brodsky); and (e) counsel for Connecticut Housing Finance Authority, Day Pitney LLP, 242 Trumbull Street, Hartford, CT 06103 (Attn:  James J. Tancredi).

**PLEASE TAKE FURTHER NOTICE** that, if no objections to the Stipulation and Order are timely filed, served and received in accordance with this Notice, the Court may enter the Stipulation and Order without further notice or hearing.

Dated: December 3, 2015
      New York, New York

Respectfully submitted,


/s/ Norman S. Rosenbaum
Norman S. Rosenbaum
**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, NY 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for The ResCap Liquidating Trust*

3

Execution Version

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, et al. | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |

**STIPULATION AND ORDER BETWEEN THE RESCAP LIQUIDATING TRUST AND**
**CONNECTICUT HOUSING FINANCE AUTHORITY PROVIDING FOR SERVICE**
**TRANSFER; WITHDRAWAL OF PROOF OF CLAIM AND RELATED RELIEF**

This stipulation (the **"Stipulation"**) is entered into as of November 30, 2015 by and

between the ResCap Liquidating Trust (the **"Liquidating Trust"**) and Connecticut Housing

Authority (**"CHFA"** and together with the Liquidating Trust, the **"Parties"**).

## RECITALS

**I.    THE BANKRUPTCY CASES**

A.    On May 14, 2012 (the **"Petition Date"**), each of the above-captioned debtors

(collectively, the **"Debtors"** and each a **"Debtor"**) filed a voluntary petition for relief under Chapter

11 of Title 11 of the United States Code (the **"Bankruptcy Code"**) in the United States Bankruptcy

Court for the Southern District of New York (the **"Bankruptcy Court"**). On the Petition Date, the

Bankruptcy Court entered an order providing for the joint administration of the Debtors' Chapter 11

cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy**

**Rules"**).

B.    On August 29, 2012, the Bankruptcy Court entered the Bar Date Order, which

established, among other things, (i) November 9, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the

deadline to file proofs of claim by virtually all creditors against the Debtors (the **"General Bar Date"**)

1

and prescribed the form and manner for filing proofs of claim; and (ii) November 30, 2012 at 5:00

p.m. (Prevailing Eastern Time) as the deadline for governmental units to file proofs of claim (the

**"Governmental Bar Date").** On November 7, 2012, the Bankruptcy Court entered an order extending

the General Bar Date to November 16, 2012 at 5:00 p.m. (Prevailing Eastern Time) [Docket No.

2093]. The Governmental Bar Date was not extended.

   C.  On December 11, 2013, the Bankruptcy Court entered the *Order Confirming*

*Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official*

*Committee of Unsecured Creditors* (the **"Confirmation Order")** approving the terms of the Chapter

11 plan, as amended (the **"Plan"),** filed in these Chapter 11 cases [Docket No. 6065]. On December

17, 2013, the Effective Date (as defined in the Plan) of the Plan occurred [Docket No. 6137].

   D.  The Plan provides for the creation and implementation of the Liquidating

Trust, which, among other things, is "authorized to make distributions and other payments in

accordance with the Plan and the Liquidating Trust Agreement" and is responsible for the wind down

of the affairs of the Debtors' estates. See Plan, Art. VI.A-D; see also Confirmation Order at ¶ 22.

Pursuant to the Confirmation Order and the Plan, the Liquidating Trust was vested with broad

authority over the post-confirmation liquidation and distribution of the Debtors' assets.

## II. RELATIONSHIP BETWEEN THE DEBTORS AND CHFA

   E.  GMAC Mortgage Corporation of PA, predecessor-in-interest to Debtor

GMAC Mortgage LLC **"GMACM",** and CHFA were parties to a mortgage loan servicing agreement

dated July 15, 1987, entitled Connecticut Housing Finance Authority Home Mortgage Servicing

Agreement (as amended, the **"Servicing Agreement").** The Servicing Agreement references a Master

Commitment Agreement for Mortgage Purchases dated July 15, 1987 (the **"Master Purchase**

**Agreement").** Pursuant to the Servicing Agreement, GMACM agreed to service loans purchased by

Execution Version

CHFA from GMACM or from other lending institutions and referred to and accepted by GMACM (the

**"CHFA Loan Portfolio").** Subsequent to entering into the Servicing Agreement, GMACM's

predecessor in interest and GMACM continued to service the CHFA Loan Portfolio under the

Servicing Agreement through and subsequent to the Petition Date.

       F.      On or about September 18, 2008, GMACM sent CHFA a written notice

purporting to terminate the Servicing Agreement in connection with the termination of the Master

Purchase Agreement (the **"Termination Letter").** Section 5.C of the Servicing Agreement permitted

GMACM to terminate the Servicing Agreement on 60-days' advance notice.

       G.      The Master Purchase Agreement was terminated. However, GMACM

continued to service the CHFA Loan Portfolio and since September 18, 2008, and through the date

hereof, both Parties have continued to render performance to each other in conformity with the terms

of the Servicing Agreement.  As of October 31, 2015, the CHFA Portfolio serviced by GMACM

consists of approximately 827 residential mortgage loans and related assets with a total unpaid

principal balance of approximately $54,612,401.

       H.      On November 21, 2012, the Bankruptcy Court entered an order (the **"Sale**

**Order")** approving the sale of the Debtors' mortgage loan servicing and origination platforms to

Ocwen Loan Servicing LLC **("Ocwen")** pursuant to that certain Asset Purchase Agreement between

Ocwen and certain of the Debtors dated November 2, 2012 (as amended from time to time, the

**"APA").** The sale to Ocwen closed on February 15, 2013. GMACM did not assign the Servicing

Agreement to Ocwen, and as of the Plan Effective Date, the Servicing Agreement was vested in the

Liquidating Trust. Prior to the closing of the sale, GMACM continued to service the CHFA Loan

Portfolio under the terms of the Servicing Agreement; after the closing of the sale, GMACM serviced

the CHFA Loan Portfolio through its subservicer, Ocwen.

Execution Version

I.        Pursuant to the APA, Ocwen and GMACM, among other Debtor parties, entered into a subservicing agreement (the **"Ocwen Subservicing Agreement").** Pursuant to the Ocwen Subservicing Agreement, since the closing of the APA, Ocwen has serviced the CHFA Loan Portfolio on behalf of the Debtors and, subsequent to the Plan Effective Date, the Liquidating Trust. In connection with GMACM's and the Liquidating Trust's servicing of the CHFA Loan Portfolio, as of October 31, 2015, there are approximately $2,212,539 of gross servicing advances due the Liquidating Trust consisting of approximately $1,157,574 of escrow advances, and $1,054,964 of corporate (including non-borrower billables) advances (collectively, the **"Advances").** The gross amount of the Advances will vary on a month to month basis up to the Service Transfer date (as such term is hereinafter defined).

### III.    THE CHFA MOTION FOR RELIEF AND LIQUIDATING TRUST CLAIM OBJECTION

J.        On December 13, 2012, CHFA filed a motion for relief from the automatic stay seeking, among other things, recovery of the CHFA Loan Portfolio [Dkt. No. 2401] (the **"Motion for Relief").** On January 14, 2013, GMACM filed a Response and Reservation of Rights with respect to the Motion for Relief [Dkt. No. 2623]. The parties have deferred consideration of the Motion for Relief since the filing thereof in order to achieve an orderly portfolio transfer and the consensual reconciliation of financial matters.

K.        On November 16, 2012, CHFA filed timely proofs of claim against GMACM designated as Claim Nos. 5853 and 5856 on the Official Claims Register (collectively the **"Proofs of Claim").** CHFA Claim no. 5853 filed on November 16, 2012, is in the amount of $1.  CHFA Claim no. 5856 filed on November 16, 2012, asserts an unsecured claim in the face amount of $84 million. CHFA filed Proofs of Claims as a protective matter until a portfolio transfer and financial reconciliation could be achieved.

Execution Version

L.      On December 16, 2014, the Liquidating Trust filed an objection to the Proofs of Clam seeking to expunge the claims from the Claims Register in their entirety [Dkt. No. 7924] (the **"Claims Objection"**). On January 9, 2015, CHFA filed a response to the Claims Objection [Dkt. #7970], The Parties have deferred consideration of the Claims Objection since the filing thereof.

M.      CHFA has advised the Liquidating Trust that it intends to transfer the servicing of the CHFA Loan Portfolio from the Liquidating Trust to Dovenmuehle Mortgage, Inc. ("**Dovenmuehle**") as a successor servicer, and with respect to real property, to CHFA, and desires to do so by December 18, 2015 or by such other date as mutually agreed to by the Parties (the **"Proposed Service Transfer"**).

N.      After negotiations regarding the Proofs of Claim, the Advances, the Motion for Relief and the Proposed Service Transfer, the Parties reached the agreement embodied herein.

**NOW THEREFORE,** in consideration of the foregoing recitals and the covenants and conditions contained herein, the Parties hereby stipulate and agree as follows:

## I.      SERVICE TRANSFER OF CHFA LOAN PORTFOLIO, PORTFOLIO REVIEW AND FINAL RECONCILIATION

1.      The Liquidating Trust and CHFA shall continue to work in good faith to effectuate the Proposed Service Transfer to Dovenmuehle (such party the **"Successor Servicer"**) effective December 18, 2015, or such later date as mutually agreed to by the Parties and Ocwen (the **"Service Transfer Date"**).    The Proposed Service Transfer shall be effected substantially in accordance with the terms and conditions of the service transfer instructions in the form (including the Ocwen comments thereto) annexed hereto as Exhibit A (with such changes as agreed by the Parties and Ocwen, the "**Service Transfer Instructions**").    The Successor Servicer will coordinate with

Execution Version

Ocwen and as necessary, the Liquidating Trust, to resolve any issues or disputes with respect to the form of service transfer instructions in advance of the Service Transfer Date.  Each of the Liquidating Trust and CHFA will promptly respond to reasonable requests for information by the other Party in connection with the Proposed Service Transfer (it being understood that Ocwen holds all information relating to the CHFA Loan Portfolio on behalf of the Liquidating Trust and the Liquidating Trust will use good faith efforts to obtain any such information from Ocwen that is reasonably requested by CHFA). CHFA will make good faith efforts to secure the full cooperation of Dovenmuehle (or any other Successor Servicer designated by CHFA) in connection with the Proposed Servicing Transfer, including in connection with the Liquidating Trust's requests for information.

2.    The Liquidating Trust shall or shall attempt to cause Ocwen to make available to CHFA information reasonably requested by CHFA with respect to the CHFA Loan Portfolio, including information with respect to the CHFA loans and assets, advance information, and file location information as set forth in the Service Transfer Instructions.

3.    Consistent with and as specified in the Service Transfer Instructions, the Liquidating Trust shall cause the transfer, by Ocwen to Dovenmuehle, on behalf of CHFA (and where applicable directly to CHFA), of all documents, files, electronic data, accounts, funds, reserves, property, legal documents and positive tax and insurance escrows which relate to the CHFA Loan Portfolio in the format and at such times as set forth in the Service Transfer Instructions. The transfer of such positive tax and insurance escrows shall not be subject to offset or reduction on account of any claims held by the Liquidating Trust.

4.      As a part of the information requested in the Service Transfer Instructions, prior to the Service Transfer Date, the Liquidating Trust will use reasonable efforts to cause Ocwen to provide to CHFA and the Successor Servicer information on all outstanding Advances. The Parties acknowledge and agree that such information has been, or will be, furnished with respect to the Advances identified in paragraph I hereof; provided, however, the Liquidating Trust and CHFA shall work together in using reasonable efforts to cause Ocwen to provide information on all Advances, including additional Advances made through and including November 30, 2015 promptly after such information becomes available in December 2015.  CHFA agrees to cause the Successor Servicer to promptly review such information once received and no later than two business days prior to the Service Transfer Date to specifically identify to the Liquidating Trust any Advances which they are unable to verify.  On the Service Transfer Date, CHFA shall or cause Dovenmuehle to, promptly verify that all positive tax and insurance escrows required to be maintained by Ocwen have been remitted to Dovenmuehle as successor servicer (the "Escrow Verification") in accordance with the Service Transfer Instructions. CHFA agrees to promptly notify the Liquidating Trust of such verification and furnish the Liquidating Trust with details of any disputes relating thereto.  Promptly after the completion of the Escrow Verification, within one business day of the Service Transfer Date, CHFA shall reimburse, or cause the Successor Servicer to reimburse, the Liquidating Trust for all outstanding gross Advances that have been verified; provided, however, that CHFA may withhold from the Advance payment the amount of any dispute regarding any positive tax or insurance escrow arising from the Escrow Verification, and the Parties will promptly confer in an effort to resolve any such dispute.  For the Avoidance of doubt, CHFA's obligation to reimburse the Liquidating Trust for any Advance verified in accordance with this Stipulation, shall be subject to set off of any Service Claim (as such term is defined herein) that has been verified and agreed to by the Parties in

7

Execution Version

accordance with terms of this Stipulation.  All Advances are subject to final verification by CHFA.

Advances shall be deemed "verified" if the Advance is substantiated by a copy of an invoice

evidencing an expenditure that is consistent with CHFA and insurer/guarantor servicing guidelines

and not previously reimbursed and provided further that, in the event an invoice evidences an

expenditure that is over such guidelines, the related Advance shall be deemed verified to the extent

that such expenditure would have been allowed under such guidelines (each, a "**Verified Advance**"

and collectively "**Verified Advances**").  As of the date hereof, CHFA acknowledges that the Verified

Advances are $805,608.00 and that CHFA shall continue or cause Dovenmuehle to continue the

review of the Advances as provided for hereunder through the Service Transfer Date.  If any

expenditure qualified for partial or total reimbursement, but the Liquidating Trust or Ocwen failed to

file an applicable insurer/guarantor claim for the related expense in accordance with CHFA and

applicable Insurer/guarantor guidelines such expenditure will not be deemed a Verified Advance.

Notwithstanding the foregoing, in the event that such expenditure relates to a claim that was not filed

with HUD such claim shall be assigned to the Liquidating Trust in accordance with Section I.7 below.

In the event of any dispute concerning whether any Advance constitutes a Verified Advance or in

connection with the Escrow Verification, the Parties reserve the right to bring the issue before the

Bankruptcy Court for prompt determination.

Execution Version

5.      CHFA acknowledges that, with the reasonable cooperation of the Liquidating Trust, CHFA has reviewed (or caused a review of) the CHFA Loan Portfolio.  Such review has revealed, and CHFA in good faith believes that has identified, material servicing issues which have resulted in or reasonably could be expected to result in losses to CHFA (each a "**Service Claim**" and collectively, the "**Service Claims**").   In complete and total settlement of the Service Claims, the Parties agree that the Liquidating Trust shall pay to CHFA on the Service Transfer Date $826,189.42 less (a) cash, if any, received by CHFA prior to the Service Transfer Date in connection with the repurchase by Ocwen of the modified mortgage loan set forth on Exhibit B annexed hereto, or in connection with the loan set forth on Exhibit C annexed hereto, and (b) cash, whether or not received prior to the Service Transfer Date by CHFA, for all mortgage assets set forth on Exhibit D (excluding with respect to any mortgage assets listed on Exhibit D which is not the subject of government insurance and for which a claim has not been submitted to CHFA for reimbursement in accordance with CHFA servicing guidelines) for which claims have been, or will be, filed with HUD or CHFA prior to the Service Transfer Date, and  the proceeds of which have not yet been reimbursed by CHFA to Ocwen or ResCap and provided; further, that the amounts set forth in such claims are not reflected in Advances (such sum, the "**Service Claim Amount**"). The Parties further agree that the Service Claim Amount shall be applied to the gross Advances that have been verified in full and complete satisfaction of the Service Claims and the Service Claim Amount.  The amount of all verified Advances in excess of the Service Claim Amount shall be remitted to the Liquidating Trust on the Service Transfer Date in accordance with transfer instructions furnished to CHFA by the Liquidating Trust. The Parties expressly acknowledge and agree that Service Claim Amount shall not exceed the amount of the gross verified Advances and shall be capped at such amount.

6.      In addition, CHFA agrees to transfer, as directed by the Liquidating Trust, all

9

Execution Version

right, title and interest in the FHA reconveyance claims for which CHFA has been made whole by the

Liquidating Trust or Ocwen, as specified in Exhibit E annexed hereto (collectively, the "**FHA**

**Reconveyance Claims**") and, if not repurchased by Ocwen, the mortgage assets set forth on Exhibit B,

effective on the Service Transfer Date.  In connection therewith, on or before the Service Transfer

Date, CHFA shall take all actions necessary to transfer ownership of the FHA Reconveyance  Claims,

as directed by the Liquidating Trust, and such mortgage assets, including, as appropriate, (i) executing

and delivering all documents necessary to transfer ownership, including, but not limited to executing

the quit-claim deeds relating to each reconveyed property in the name specified by the Liquidating

Trust; (ii) causing the holder name for each FHA Reconveyance Claim on FHA Connects or P260 to

be updated to the name specified by the Liquidating Trust; and (iii) notifying Ocwen of the transfer of

ownership to Owner.  In the event that CHFA receives any funds (i) from HUD on any B Claims or

Supplemental Claims filed prior to the Service Transfer Date by Ocwen on any claim filed (including

B Claims, Supplemental Claim, and as it relates to the FHA Reconveyance Claims, A Claims), or (ii)

or on account of any CHFA assets serviced under the Agreement (including any assets resolved prior

to the Service Transfer Date and other than with respect to those assets set forth on Exhibit D), CHFA

shall promptly remit such funds to the Liquidating Trust to the following account: Bank: JPMorgan

Chase, ABA 021-000-021; Account Name: ResCap Liq Trust Concentration Cash; Account No.:

528306934 (or such other account as shall be designated in writing by the Liquidating Trust).  In

addition, on the Service Transfer Date, the Liquidating Trust shall deliver to CHFA a statement

reflecting the agreed amounts of the Service Claim Amount and the Advances and reflecting the net

amount payable to the Liquidating Trust.

       7.    As of the Service Transfer Date, CHFA shall assign to the Liquidating Trust

all mortgage assets set forth on Exhibit D (i)  for which B claims have not been filed with HUD prior

to the Service Transfer Date, and the proceeds of which have not yet been reimbursed by CHFA to

Ocwen or ResCap as of the Service Transfer Date; and (ii) with respect to such B claims, CHFA

received part A proceeds without offset; provided; however to the extent that an offset was taken, upon

CHFA's receipt of the B claim, CHFA shall promptly remit to the Liquidating Trust the difference

between the amount of the B claim received and the amount of the corresponding offset relating to the

applicable A claim.  CHFA shall take all actions necessary to transfer ownership of these mortgage

assets and related claims, as directed by the Liquidating Trust, including, as appropriate, (i) executing

and delivering all documents necessary to transfer ownership; (ii) causing the holder name for each

FHA Reconveyance Claim on FHA Connects or P260 to be updated to the name specified by the

Liquidating Trust; and (iii) notifying Ocwen of the transfer of ownership to Owner.

    8.  In addition, CHFA agrees to cooperate with the Liquidating Trust in providing

information and causing Ocwen to remit advances to the Liquidating Trust on assets resolved prior to

the Service Transfer Date.  Prior to the Service Transfer Date, the Parties hereto agree to cooperate in

creating a settlement statement reflecting Service Claim Amount, verified Escrow and Advance

Amounts, and the net amount payable to the Liquidating Trust.


**II.**  **WITHDRAWAL OF PROOFS OF CLAIM, MOTION FOR RELIEF AND RELEASES**

    1.  Upon the Bankruptcy Court's approval of this Stipulation (i) the Proofs of

Claim shall be deemed to be withdrawn with prejudice and expunged in their entirety; and (ii) the

Motion for Relief shall be deemed resolved and such relief provided consistent with the terms of this

Stipulation.

    2.  Effective as of the Service Transfer Date, CHFA acting for itself and each of

its past, present and future agents, representatives, attorneys, transferees, successors and assigns,

hereby forever releases and discharges each of the Debtors (and their respective estates), the

Liquidating Trust and each of their past, present and future officers, trustees, directors, members,

partners, employees, agents, affiliates, representatives, attorneys, successors and assigns (solely in their

capacity as such) from all claims (as such term is defined in section 101 of the Bankruptcy Code) and

causes of action of any kind whatsoever, other than with respect to the Liquidating Trust's obligations

under this Stipulation that survive the Service Transfer Date and the Liquidating Trust's obligation to

cause Ocwen to transfer to CHFA all required positive tax and insurance escrows in connection with

the Service Transfer.

3.      In consideration of the Liquidating Trust's agreement to permit CHFA to

apply any verified Service Claim Amount against verified Advances due the Liquidating Trust,

effective as of the Service Transfer Date, CHFA acting for itself and each of its past, present and future

agents, representatives, attorneys, transferees, successors and assigns, hereby forever releases and

discharges Ocwen from all claims (as such term is defined in section 101 of the Bankruptcy Code) and

causes of action of any kind whatsoever related to Ocwen's subservicing of the CHFA Loan Portfolio

on behalf of the Debtors and the Liquidating Trust other than Ocwen's obligations under this

Stipulation or the Service Transfer Instructions, including without limitation, Ocwen's obligations to

(i) submit any claim related to a loan that has been reconveyed to CHFA prior to the Service Transfer

Date; (ii) or to deliver the CHFA Loan Portfolio as provided for in Paragraph I.3. Hereof; or (iii)

Ocwen's obligation to transfer to CHFA all required positive tax and insurance escrows in connection

with the Service Transfer.

4.      The Parties agree that Ocwen shall be an express third-party beneficiary of

this Stipulation solely with respect to the release provided by this paragraph 3 and for no other

purposes.  Notwithstanding CHFA's release of Ocwen as provided for herein, CHFA expressly (i)

12

reserves any common law or statutory rights of indemnity, attribution or contribution which may exist

against Ocwen in the event any third-party claims are brought against CHFA in connection with the

CHFA Loan Portfolio or Ocwen's subservicing thereof; and/or (ii) reserves the right to void its release

of Ocwen in the event Ocwen asserts a claim against CHFA other than those provided for herein, but

only to the extent of any such claim brought by Ocwen against CHFA and not generally.

4.      Effective as of the Service Transfer Date the Liquidating Trust acting for

itself and each of its past, present and future agents, representatives, attorneys, transferees, successors

and assigns, hereby forever releases and discharges CHFA and its past, present and future officers,

trustees, directors, members, partners, employees, agents, affiliates, representatives, attorneys,

successors and assigns (solely in their capacity as such) from all claims (as such term is defined in

section 101 of the Bankruptcy Code) and causes of action of any kind whatsoever other than with

respect to CHFA's obligations under this Stipulation that survive the Service Transfer Date.  The

obligation of the Liquidating Trustee to take reasonable actions to cause any and all property of the

serviced CHFA Loan Portfolio to be transferred to Dovenmuehle shall be continuing as necessary so

as to reasonably assure a complete transfer thereof in accordance with the Service Transfer

Instructions; provided, however, that as of the Service Transfer Date. CHFA agrees that, except as

disclosed in writing, all required actions have been so taken.

III.    MISCELLANEOUS

1.      This Stipulation is the result of a compromise and is not to be construed as an

admission by any of the Debtors or their estates of any liability or wrongdoing.

2.      The Liquidating Trust represents that, to the best of its knowledge, as of the

date hereof, none of the Debtors, the Liquidating Trust or Ocwen have been named as a defendant in

any pending class action involving a borrower whose mortgage is included in the CHFA Loan

Portfolio.

3.      The Parties represent and warrant that each has full power and authority to enter into and perform under this Stipulation, and each of the undersigned counsel represents that he or she is authorized to execute this Stipulation on behalf of his or her respective client.

4.      Upon the Bankruptcy Court's entry of this Stipulation, no other or further notice to creditors or parties-in-interest or further approval by the Bankruptcy Court shall be required to effectuate this Stipulation.

5.      The 14-day stay of this Stipulation imposed by Bankruptcy Rule 6004(h), to the extent applicable, is waived. The Parties are authorized to implement the provisions of this Stipulation immediately upon its entry and to take such steps, expend such sums and execute such documents as necessary in connection therewith without further order of the Bankruptcy Court.  The parties shall cooperate in good faith in the implementation of the continuing mechanics of the Service Transfer.

6.      This Stipulation constitutes the entire agreement and understanding among the Parties with regard to the matters addressed herein and supersedes all prior and contemporaneous discussions, negotiations, understandings and agreements, whether oral or written, express or implied, among the Parties regarding the subject matter of this Stipulation.

7.      This Stipulation may not be altered, modified, changed or vacated without the prior written consent of the Parties or their respective counsel.

9.      This Stipulation may be executed in any number of counterparts by the Parties on different counterpart signature pages, all of which when taken together shall constitute one and the same agreement. Any of the Parties may execute this Stipulation by signing any such counterpart, and each such counterpart, including a facsimile or other electronic copy of a signature, shall for all

Execution Version

purposes be deemed to be an original.

       10.     This Stipulation is subject to the approval of the Bankruptcy Court and will become effective only upon approval by the Bankruptcy Court; provided; however, the Parties will continue to cooperate in connection with the Proposed Service Transfer.  Further, the parties will continue to cooperate in implementing this Stipulation following the Service Transfer Date.

       11.     The Bankruptcy Court shall retain jurisdiction to hear and determine all matters or disputes arising from or relating to the implementation, interpretation, and/or enforcement of this Stipulation, and CHFA expressly agrees that it shall be subject to the jurisdiction of the Bankruptcy Court and bound by any decision of the Bankruptcy Court for purposes of resolving any disputes arising in connection with this Stipulation.

*[Signature page follows]*

Execution Version

Agreed to this 30th of November, 2015:

**DAY PITNEY LLP**                                    **MORRISON & FOERSTER LLP**

By**:**  /s/ James J. Tancredi                       By:  /s/ Norman S. Rosenbaum
    James J. Tancredi                           Norman S. Rosenbaum
    242 Trumbull Street                         James A. Newton
    Hartford, CT 06103                          250 West 55th Street
    Telephone: (860) 275-0100                   New York, New York 10019
    Facsimile: (860) 275-0343                   Tel: (212) 468-8000
                                    Fax: (212) 468- 7900

*Counsel for Connecticut Housing Finance*          *Counsel for the ResCap Liquidating Trust*
*Authority*

                                            _____
                                            THE HONORABLE MARTIN GLENN
                                            UNITED STATES BANKRUPTCY JUDGE

**SO ORDERED:**

Dated: December \_\_, 2015
        New York, New York

## <u>EXHIBIT A</u>

**This document contains confidential information.
Copies have been provided to Chambers and to
counsel for Connecticut Housing Finance Authority.**

**<u>EXHIBITS B AND C</u>**

EXHIBIT B

| OCWEN Loan Number | CHFA Loan Number |
|---|---|
| ████1301 | ███619 |

EXHIBIT C

| OCWEN Loan Number | CHFA Loan Number |
|---|---|
| ████7306 | ███757 |

**<u>EXHIBIT D</u>**

EXHIBIT D

| Ocwen Loan Number | CHFA Loan Number | | Ocwen Loan Number | CHFA Loan Number |
|---|---|---|---|---|
| ▉9802 | ▉ | | ▉9503 | ▉783 |
| ▉8607 | ▉ | | ▉7007 | ▉138 |
| ▉3901 | ▉ | | ▉4400 | ▉163 |
| ▉8900 | ▉ | | ▉8807 | ▉237 |
| ▉5702 | ▉ | | ▉7009 | ▉388 |
| ▉2505 | ▉ | | ▉7300 | ▉976 |
| ▉4405 | ▉ | | ▉5308 | ▉657 |
| ▉6702 | ▉ | | ▉2203 | ▉849 |
| ▉8106 | ▉ | | ▉0301 | ▉395 |
| ▉0103 | ▉ | | ▉8207 | ▉578 |
| ▉9005 | ▉ | | ▉1609 | ▉839 |
| ▉3702 | ▉171 | | ▉4907 | ▉897 |
| ▉6507 | ▉288 | | ▉9704 | ▉060 |
| ▉9501 | ▉323 | | ▉6106 | ▉110 |
| ▉0005 | ▉704 | | ▉2002 | ▉289 |
| ▉2606 | ▉994 | | ▉5408 | ▉343 |
| ▉5009 | ▉165 | | ▉9009 | ▉456 |
| ▉8106 | ▉891 | | ▉2106 | ▉869 |
| ▉8701 | ▉279 | | ▉7900 | ▉320 |
| ▉0606 | ▉298 | | ▉6801 | ▉651 |
| ▉8508 | ▉369 | | ▉1204 | ▉855 |
| ▉2605 | ▉397 | | ▉1200 | ▉110 |
| ▉9201 | ▉423 | | ▉8609 | ▉132 |
| ▉5705 | ▉848 | | ▉0102 | ▉281 |
| ▉5706 | ▉958 | | ▉6005 | ▉492 |
| ▉3406 | ▉155 | | ▉5700 | ▉244 |
| ▉3606 | ▉377 | | ▉9103 | ▉378 |
| ▉3009 | ▉603 | | ▉1505 | ▉401 |
| ▉2004 | ▉797 | | ▉7600 | ▉530 |
| ▉7208 | ▉961 | | ▉6807 | ▉607 |
| ▉2409 | ▉051 | | ▉8406 | ▉579 |
| ▉1205 | ▉258 | | ▉4701 | ▉698 |
| ▉0103 | ▉441 | | ▉3303 | ▉186 |
| ▉1907 | ▉697 | | ▉4708 | ▉465 |
| ▉1801 | ▉317 | | ▉4800 | ▉707 |
| ▉6705 | ▉556 | | ▉6272 | ▉476 |
| ▉2700 | ▉063 | | ▉2507 | ▉672 |
| ▉9905 | ▉266 | | ▉6260 | ▉525 |
| ▉7805 | ▉439 | | ▉4586 | ▉823 |
| ▉5409 | ▉623 | | ▉7948 | ▉893 |
| ▉6803 | ▉264 | | ▉2727 | ▉928 |
| ▉2903 | ▉855 | | ▉0307 | ▉178 |
| ▉0803 | ▉339 | | ▉9204 | ▉121 |
| ▉4908 | ▉604 | | ▉4801 | ▉429 |
| ▉6604 | ▉702 | | ▉9809 | ▉599 |
| ▉9201 | ▉906 | | ▉3405 | ▉156 |
| ▉0801 | ▉706 | | | |

**<u>EXHIBIT E</u>**

EXHIBIT E

| OCWEN Loan Number | CHFA Loan Number |
|---|---|
| ███8909 | ██707 |
| ███9600 | ██210 |
| ███9222 | ██073 |
| ███9906 | ██273 |