Hearing Date:  December 16, 2015 at 10:00 a.m. (Prevailing Eastern Time)

MORRISON & FOERSTER LLP
250 West 55th St.
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett

*Counsel for the ResCap Borrower
Claims Trust and the ResCap Liquidating
Trust*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------ ) | | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| ------------------------------------------------------- ) | | |

**THE (A) RESCAP BORROWER CLAIMS TRUST'S (I) REPLY IN SUPPORT OF ITS OBJECTION TO CLAIM NUMBERS 4757, 4758, 4762, AND 4764 FILED BY PATRICIA MCNERNEY AND SUSAN GRAY AND (II) RESPONSE TO MOTIONS TO STRIKE CERTAIN DECLARATIONS, AND (B) THE RESCAP LIQUIDATING TRUST'S OBJECTION TO SUSAN GRAY AND PATRICIA MCNERNEY'S MOTION FOR <u>RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362</u>**

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ........................................................................1

II.     CLAIMANTS' STAY RELIEF MOTION SHOULD BE DENIED ................................3

    A.      The Objection Should Remain in the Bankruptcy Court........................................4

III.    REPLY ............................................................................................................10

    A.      The Claimants' TILA and RESPA Claims Are All Time Barred ........................10

    B.      OMC Was Not Homecomings' Agent....................................................................13

    C.      The Response Fails to Cite Facts Supporting Causes of Action for Breach of Fiduciary Duty or Negligence .........................................................................14

    D.      The Response Fails to Rebut the Borrower Trust's Arguments Regarding McNerney's TILA Claim ....................................................................................16

    E.      The Claimant's "Fraud on the Court" Claim Does Not Plead a Larger Scheme to Defraud ............................................................................................17

    F.      The Claimants Have Not Sufficiently Alleged a Claim for Civil Conspiracy .........................................................................................................17

    G.      The Claim for Unconscionability Also Fails.........................................................18

    H.      Breach of Privacy ..................................................................................................19

    I.      Attorney's Fees......................................................................................................19

IV.     THE MOTIONS TO STRIKE SHOULD BE DENIED..................................................19

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Allegheny Int'l, Inc. v. Snyder,
954 F.2d 167 (3d Cir. 1992) ........................................................................................ 3

Anderson v. Delta Funding Corp.,
316 F. Supp. 2d 554 (N.D. Ohio 2004) .................................................................... 16

Bankr. Servcs., Inc. v. Ernst & Young (In re CBI Holding Co.),
529 F.3d 432 (2d Cir. 2008) ........................................................................................ 4

Bradley v. Reno,
749 F.3d 553 (6th Cir. 2014) .................................................................................... 12

Burnett v. New York Centr. R.R. Co.,
380 U.S. 424 (1965) .................................................................................................. 12

Capital Commc'ns Fed. Credit Union v. Boodrow (In re Boodrow),
126 F.3d 43 (2d Cir. 1997) .......................................................................................... 5

Collins v. Nat'l City Bank,
No. 19884, 2003 Ohio App. LEXIS 6230 (Ohio Ct. App. Dec. 19, 2003) ............ 17

Discovery Bank v. Owens,
822 N.E.2d 869 (Ohio Mun. Ct. 2004) .................................................................... 15

FDIC v. Fordham (In re Fordham),
130 B.R. 632 (Bank. D. Mass 1991) ........................................................................ 16

Feinberg v. Bank of N.Y. (In re Feinberg),
442 B.R. 215 (Bankr. S.D.N.Y. 2010) ...................................................................... 3

First Nat'l Bank of Atl. v. Robinson (In re Robinson),
55 B.R. 839 (Bankr. S.D. Ind. 1985) ...................................................................... 15

Germain v. Conn. Nat'l Bank,
988 F.2d 1323 (2d Cir. 1993) ..................................................................................... 9

In re Adelphia Commc'ns Corp.,
No. 02-41729 (REG), 2007 Bankr. LEXIS 660 (Bankr. S.D.N.Y. Feb. 20, 2007) ... 3

In re Leibowitz,
147 B.R. 341 (Bankr. S.D.N.Y. 1992) ...................................................................... 6

In re Oneida Ltd.,
    400 B.R. 384 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co. v.
    Oneida, Ltd., No. 09-CV-2229 (DC), 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22,
    2010).................................................................................................................................3

In re Residential Capital, LLC,
    501 B.R. 624 (Bankr. S.D.N.Y. 2013) ..............................................................................4, 8

In re Residential Capital, LLC,
    507 B.R. 477 (Bankr. S.D.N.Y. 2014) ..................................................................................3

In re Rockefeller Ctr. Props.,
    272 B.R. 524 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v. Rockefeller Ctr.
    Props. (In re Rockefeller Ctr. Props.), 266 B.R. 52 (S.D.N.Y. 2001), aff'd, 46 Fed.
    Appx. 40 (2d Cir. 2002) ........................................................................................................3

Lagenkamp v. Culp,
    498 U.S. 42 (1990) ................................................................................................................9

Lawrence v. Motors Liquidation Co. (In re Motors Liquidation Co.),
    No. 10 Civ. 36 (RJH), 2010 WL 4966018 (S.D.N.Y. Nov. 8, 2010) .......................................6

Manos, Marin, Pergram & Dietz v. Saperstein,
    No. 2:08-cv-0529, 2008 WL 5234362 (S.D. Ohio Dec. 12, 2008) .........................................11

Mazzeo v. Lenhart (In re Mazzeo),
    167 F.3d 139 (2d Cir. 1999) .................................................................................................5

MCI Worldcom Commc'ns, Inc. v. Commc'ns Network Int'l, Ltd. (In re WorldCom,
    Inc.),
    378 B.R. 745 (Bankr. S.D.N.Y. 2007) ....................................................................................9

MetroHealth Med. Cent. v. Hoffman- LaRoche Inc.,
    685 N.E.2d 529 (1997) ........................................................................................................12

Midlantic Nat'l Bank v. N.J. Dep't of Envt'l Prot.,
    474 U.S. 494 (1986) ..............................................................................................................4

Official Comm. Of Unsecured Creditors v. Goldman Sachs Credit Partners, L.P. (In re
    Fedders N. Am., Inc.),
    405 B.R. 527 (Bankr. D. Del. 2009)....................................................................................15

Pratt v. Payne,
    794 N.E.2d 723 (Ohio Ct. App. 2003) ................................................................................17

Price v. EquiFirst Corp.,
    No. 08-cv-1860, 2009 WL 917950 (N.D. Ohio Apr. 1, 2009)..............................................15

Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.),
    980 F.2d 110 (2d Cir. 1992) ..............................................................................................4, 8

Riley v. Montgomery,
    463 N.E.2d 1246 (Ohio 1984) ................................................................................................ 11

Sagenich v. Erie Ins. Group,
    No. 2003-T-0144, 2003 WL 22952586 (Ohio Ct. App. Dec. 12, 2003) ................................. 13

Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.),
    907 F.2d 1280 (2d Cir. 1990) ................................................................................................. 5

Stern v. Marshall,
    131 S. Ct. 2594 (2011) ........................................................................................................... 9

Thompson v. Wing,
    637 N.E.2d 917 (Ohio 1994) ............................................................................................... 12

**STATUTES**

11 U.S.C. § 502(a) ....................................................................................................................... 3

11 U.S.C. § 502(b)(1) .................................................................................................................. 3

11 U.S.C. § 362(d)(1) .................................................................................................................. 4

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The ResCap Borrower Claims Trust (the "Borrower Trust") established pursuant to the terms of the Chapter 11 plan (the "Plan") confirmed in the above captioned bankruptcy cases (the "Chapter 11 Cases") [Docket No. 6065], as successor in interest to the above captioned debtors (collectively, the "Debtors") with regard to Borrower Claims (as defined below), together with the ResCap Liquidating Trust (with the Borrower Trust, the "Trusts"), hereby submits this reply (the "Reply"), together with the supplemental declaration of Sara Lathrop, Senior Claims Analyst to the Borrower Trust (the "Supplemental Declaration"), annexed hereto as Exhibit 1, to (i) the response of claimants Patricia McNerney ("McNerney") and Susan Gray ("Gray", and with McNerney, the "Claimants") [Docket No. 9328] (the "Response") to the *Objection of The ResCap Borrower Claims Trust To Claim Numbers 4757, 4758, 4762, and 4764 Filed By Patricia McNerney and Susan Gray* [Docket No. 9280] (the "Objection"); (ii) *Notice of Motion to Strike the Declaration of David Wallace* [Docket No. 9333] and *Notice of Motion to Strike the Declaration of Sara Lathrop* [Docket No. 9334] (together, the "Motions to Strike"); and (iii) *Motion of Patricia McNerney and Susan Gray for Limited Relief from Stay for a Determination on Causes of Action with No Collection Thereon* [Docket No. 9355] (the "Stay Relief Motion").[1]  In further support of the Objection, the Trusts respectfully represent as follows:

## I.    PRELIMINARY STATEMENT

1.    Based on the record before the Court, the Claimants have not met the requisite burden of proof with respect to the Claims.  In their forty-two page response, the Claimants do not proffer defenses to the Objection but instead, repeat their existing allegations

---

[1]    Capitalized terms not defined in this Reply have the meaning ascribed to such terms in the Objection.

ny-1213063

without providing any additional factual support for Homecomings' alleged liability. Each of the causes of action asserted by the Claimants are either barred by the statute of limitations, premised on allegations against non-debtor OMC that cannot form the basis of a claim against any debtor entity, or fail to allege the necessary elements of the cause of action. For example, the Claimants' TILA and RESPA claims are subject to one-year statutes of limitation which expired prior to the Claimants' filing of the State Court Counterclaims. Furthermore, such claims do not satisfy the relation back doctrine, which only applies to defensive rather than affirmative counterclaims. The Claimants' OMBA, CSPA, fraud, misrepresentation, negligence, and breach of fiduciary duty claims fail because such claims involve allegations against only OMC, and the Claimants have not demonstrated that OMC was acting as Homecoming's agent. The Claimants' remaining causes of action for fraud on the court, unconscionability, breach of privacy, and civil conspiracy fail because the Claimants have not alleged sufficient facts to support the claims. For these reasons, as set forth below and in the Objection, the Claims should be disallowed and expunged from the Claims Register in their entirety.

2.    Additionally, the Claimants' request for relief from the automatic stay should not be granted because the Claims cannot be adjudicated any more expeditiously in the District Court. Rather, lifting the stay will only delay a determination of the merits of the Claims and waste the limited resources of the Borrower Trust. As a result, the Claimants' motion to lift the automatic stay should be denied.

3.    The Motions to Strike should also not be granted because the statements made in the declarations at issue are either based on (i) records kept in the ordinary course of the Debtors' business or (ii) documents that were part of the record in the previous court cases and which the Claimants have explicitly stated are not objectionable.

2

## II.    CLAIMANTS' STAY RELIEF MOTION SHOULD BE DENIED

4.      A filed proof of claim is "deemed allowed, unless a party in interest …

objects."  11 U.S.C. § 502(a).  Section 502(b)(1) of the Bankruptcy Code provides, in relevant

part, that a claim may not be allowed to the extent that "such claim is unenforceable against the

debtor and property of the debtor, under any agreement or applicable law…." 11 U.S.C. §

502(b)(1).  As noted previously by the Court, claims objections have a shifting burden of proof.

Pursuant to Federal Rule of Bankruptcy Procedure 3001(f), a claimant establishes a prima facie

case against a debtor upon filing a proof of claim alleging facts sufficient to support the claim.

The objecting party is thereafter required to produce evidence equal in force to that provided by

the claimant to rebut the presumption of the claimant's prima facie case. In re Residential

Capital, LLC, 507 B.R. 477, 490 (Bankr. S.D.N.Y. 2014).  See also Allegheny Int'l, Inc. v.

Snyder, 954 F.2d 167, 173-74 (3d Cir. 1992).

5.      Once an objection refutes an essential allegation of the claim, the burden

of persuasion is on the holder of a proof of claim to establish a valid claim against a debtor by a

preponderance of the evidence.  Residential Capital, 507 B.R at 490; Feinberg v. Bank of N.Y.

(In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010); In re Oneida Ltd., 400 B.R. 384,

389 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co. v. Oneida, Ltd., No. 09-CV-

2229 (DC), 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010); In re Adelphia Commc'ns

Corp., No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007);

In re Rockefeller Ctr. Props., 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v.

Rockefeller Ctr. Props. (In re Rockefeller Ctr. Props.), 266 B.R. 52 (S.D.N.Y. 2001), aff'd, 46

Fed. Appx. 40 (2d Cir. 2002).

3

### A.    The Objection Should Remain in the Bankruptcy Court

6.    In the Response and the Lift Stay Motion, the Claimants assert that either the Objection should be transferred to the District Court or the Court should lift the automatic stay to allow the litigation to proceed in the District Court.    Neither course of action is appropriate.

7.    The Claimants rely on the "first filed doctrine" as a basis for transferring the Objection to the District Court, arguing that the litigation on which the Claims are based was originally filed there; however, this argument is irrelevant in a bankruptcy proceeding.    The Claimants voluntarily subjected themselves to the jurisdiction of this Court when they filed the Claims.    See Bankr. Servcs., Inc. v. Ernst & Young (In re CBI Holding Co.), 529 F.3d 432, 466-67 (2d Cir. 2008) (filing a proof of claim submits a creditor to the bankruptcy court's equitable jurisdiction in proceedings affecting claims).    The District Court does not have jurisdiction to adjudicate the Objection, and cannot proceed with the preexisting litigation unless this Court grants the Lift Stay Motion.    As discussed below, on balance, the relevant Sonnax factors weigh in favor of the Lift Stay Motion being denied.

8.    The automatic stay affords "one of the fundamental debtor protections provided by the bankruptcy laws." Midlantic Nat'l Bank v. N.J. Dep't of Envt'l Prot., 474 U.S. 494, 503 (1986) (citation and internal quotation marks omitted).    The automatic stay also furthers the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court…." Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.), 980 F.2d 110, 117 (2d Cir. 1992); In re Residential Capital, LLC, 501 B.R. 624, 644 (Bankr. S.D.N.Y. 2013).

9.    Section 362(d)(1) of the Bankruptcy Code provides that a court may grant relief from the automatic stay for "cause." See 11 U.S.C. § 362(d)(1).    In the context of

4

stayed prepetition litigation, the Second Circuit has outlined a 12-factor test (each a "Sonnax

Factor") to determine whether good cause exists to lift the automatic stay and allow pre-existing

litigation to proceed in a non-bankruptcy forum:

> (1) whether relief would result in a partial or complete resolution of the issues;
> (2) lack of any connection with or interference with the bankruptcy case;
> (3) whether the other proceeding involves the debtor as a fiduciary;
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
> (5) whether the debtor's insurer has assumed full responsibility for defending [the action];
> (6) whether the action primarily involves third parties;
> (7) whether litigation in another forum would prejudice the interests of other creditors;
> (8) whether the judgment claim arising from the other action is subject to equitable subordination;
> (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
> (10) the interests of judicial economy and the expeditious and economical resolution of litigation;
> (11) whether the parties are ready for trial in the other proceeding; and
> (12) the impact of the stay on the parties and the balance of harms.

Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280,

1286 (2d Cir. 1990); see also Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 143 (2d Cir.

1999).   In a given case, however, not all of the factors will be relevant, and the court may

disregard irrelevant factors.  See Mazzeo, 167 F.3d at 143.

        10.    The moving party bears the initial burden to demonstrate, using the

relevant Sonnax factors, that good cause exists for lifting the stay.[2]  The movant's burden is

especially heavy if it is an unsecured creditor.  "The general rule is that claims that are not

---

[2] See Sonnax, 907 F.2d at 1285; Capital Commc'ns Fed. Credit Union v. Boodrow (In re Boodrow), 126 F.3d 43, 48 (2d Cir. 1997) ("We have emphasized that a bankruptcy court should deny relief from the stay if the movant fails to make an initial showing of cause."  (citation and internal quotation marks omitted)).

ny-1213063

viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief."[3]

11.     On balance, as discussed herein, the relevant <u>Sonnax</u> factors weigh in favor of resolving the Claims before this Court and denying the Claimants' request for stay relief.

12.     Relief from the automatic stay to permit the Claimants to proceed with their counterclaims in District Court could result in the complete resolution of the issues (Sonnax Factor 1); however, these issues could just as easily (and likely more efficiently) be resolved consensually or through the claims resolution process before this Court.  The District Court is not in any better position than this Court to render a determination regarding the validity of the Claims.  At this stage, there has been no discovery, and the District Court has not heard any evidence related to the Claims or even determined whether the Claims can survive a motion for summary judgment. <u>See</u> Supplemental Declaration ¶ 4.  The Claimants reference discovery that was conducted in the First Foreclosure Action as a basis for adjudicating the Claims in the District Court, as the parties are ready to go to trial as soon as the District Court rules on the preliminary motions.  <u>See</u> Motion for Relief ¶ 24. If the Claimants are ready for trial in the District Court, then they are equally ready for trial in this Court.  Therefore, the discovery that was conducted in the First Foreclosure Action does not weigh in favor of lifting the stay.

13.     The Borrower Trust expects that if the District Court action proceeds, then it would take a significant amount of time to receive a decision on the motion for summary judgment or the judgment on the pleadings, as briefing for both was completed on November 22, 2011 and the District Court had not issued a decision by the Petition Date. Furthermore, if such

---

[3] <u>In re Leibowitz</u>, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992); <u>see also</u> <u>Lawrence v. Motors Liquidation Co. (In re Motors Liquidation Co.)</u>, No. 10 Civ. 36 (RJH), 2010 WL 4966018, at *4 (S.D.N.Y. Nov. 8, 2010).

motions are not granted, time may be required for further discovery on the Claims, mediation, and hearings on dispositive motions, which would then be followed by a trial (each as necessary). See Supplemental Declaration ¶ 5. In this Court, on the other hand, the Borrower Trust has had the benefit of being able to resolve extraordinarily complex claims much more quickly, and without the need for extensive discovery and lengthy trials.[4] Over the past two years, the Debtors and Trusts have been working tirelessly to expeditiously resolve all proofs of claim filed against the Debtors' chapter 11 estates. In fact, since the Plan went effective two years ago, the Borrower Trust estimates that it (and the Debtors) have collectively resolved (or addressed) over 90% of the outstanding borrower proofs of claim. See *Letter to Judge Glenn from Jordan A. Wishnew Regarding Status of Claims Administration Efforts* [Docket No. 9243]. In many instances, the Debtors or Trusts have been able to resolve claims consensually. See id. In other cases where consensual resolution was not possible, the claims resolution process has provided an appropriate forum for the expeditious exchange of informal discovery and an expeditious resolution of the disputes between the parties. See Supplemental Declaration ¶ 6.

14.    Furthermore, the Borrower Trust is attempting to resolve the Claims through the Objection. Given the Borrower Trust's fixed resources, resolution of the Claims before this Court is the most cost-effective, efficient, and timely manner for determining the validity and allowed amount of the Claims and is in the best interest of all of the Borrower Trust's stakeholders. For instance, in connection with resolution of other borrower claims, the Court has permitted the parties to submit position statements to facilitate the Court's

---

[4] See, e.g., *ResCap Borrwoer Claims Trust's Objection to Claim No. 4222 Filed By Todd Silber* [Docket No. 7979], filed on January 12, 2015, and *Memorandum Opinion and Order Sustaining the ResCap Borrower Claims Trust's Objection to Clam Number 4222 Filed By Todd Silber* [Docket No. 8962], entered on August 14, 2015

ny-1213063

determination of the Debtors' liability for the underlying claims and to fix any such liability.[5]

These procedures fostered productive discussions between the parties that, in certain cases,

produced a consensual resolution. <u>See</u> Supplemental Declaration ¶ 6.   In short, proceeding

before this Court affords flexibility to utilize efficient and cost-effective mechanisms for

resolution of the Claims if no consensual resolution can be reached.

15.    Additionally, resolution of the Claims in this Court will further the

important bankruptcy goal of an efficient and centralized administration of claims (see <u>In re</u>

<u>Cuyahoga Equip. Corp.</u>, 980 F.2d at 117; <u>In re Residential Capital, LLC</u>, 501 B.R. at 644).

16.    Moreover, the determination of the validity of the Claims in the District

Court (and the associated costs described above) will have a direct effect on the Borrower Trust

and the assets remaining for the Debtors' other creditors.   The Claims are directly against

Homecomings and GMACM, and any resulting claim will be against the Borrower Trust,

especially since no insurer has assumed responsibility for defending the District Court action.

Thus, <u>Sonnax</u> Factors 2 (connection with the bankruptcy case), 5 (whether the debtor's defense

has been assumed by an insurer) and 6 (whether the action involves primarily third parties) all

weigh in favor of resolving the Claims in this Court.   Moreover, for the same reasons, <u>Sonnax</u>

Factors 7 (prejudice to creditors from litigation in another forum), 10 (interests of judicial

economy) and 11 (whether the parties are ready for trial) weigh heavily against lifting the

automatic stay.

17.    With regard to judicial economy, the Claimants assert that judicial

economy weighs in favor of lifting the stay because Local Rule 9015-1 would require

McNerney's consent to a jury trial, and that any decision by this Court could only be Findings of

---

[5] <u>See</u> *Order Establishing Procedures for the Adjudication of the Claims of William and Keiran Walker, Freddie Scott, Ron Bejarano, and Paul and Marge Pfunder in Connection with the Debtors' Twenty-Second, Twenty-Seventh, and Thirteenth Omnibus Objections to Claims* [Docket No. 5390].

Fact and Conclusions of Law that would be subject to a final ruling by the United States District Court for the Southern District of New York, citing to Stern v. Marshall, 131 S. Ct. 2594 (2011). However, the Claimants gave up their right to a jury trial when they filed the Claims. See Germain v. Conn. Nat'l Bank, 988 F.2d 1323, 1329 (2d Cir. 1993) (the right to a jury trial is waived as to disputes bearing directly on the claims disallowance process); Lagenkamp v. Culp, 498 U.S. 42, 44 (1990) ("In Granfinanciera, we recognized that by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims' thereby subjecting himself to the bankruptcy court's equitable power."); MCI Worldcom Commc'ns, Inc. v. Commc'ns Network Int'l, Ltd. (In re WorldCom, Inc.), 378 B.R. 745, 753 (Bankr. S.D.N.Y. 2007) (holding that a creditor did not have a right to a jury trial for an adversary proceeding because it was part of the claims allowance process). Additionally, Stern only prevents bankruptcy courts from issuing final rulings on state law claims when such claims are not necessarily decided in the process of ruling on the creditor's proof of claim. See Stern, 131 S. Ct. at 2618 (noting that bankruptcy courts cannot issue a final order unless the "action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process.") In the matter before the Court, the only question being asked of the Court is to rule on the Claimants' proofs of claim. Therefore, any ruling will be a final ruling under Stern, and the Claimants' arguments regarding judicial economy fall flat.

18.     Moreover, none of the other Sonnax factors weigh in favor of lifting the stay and accordingly, the Court should deny the Stay Relief Motion and require the liquidation of the Claims through the claims resolution process being overseen by the Court. For example, the

Second Foreclosure Action does not involve the Debtors as a fiduciary[6] (<u>Sonnax</u> Factor 3) and no specialized tribunal is required to resolve the ordinary state law causes of action raised by the District Court Counterclaims (<u>Sonnax</u> Factor 4).

19.    Additionally, <u>Sonnax</u> Factor 12 does not weigh in favor of lifting the automatic stay.  The Claimants will experience little, if any, harm from not having the Claims resolved in the District Court at this juncture.  The Borrower Trust is presently working to resolve the Claims through the claims resolution process, and as a result, it is difficult to understand how the Claimants will be harmed by having the Claims liquidated through this process rather than in the more expensive and time consuming Second Foreclosure Action.  The resolution of the Claims in the District Court will, in all likelihood, take longer than resolving the Claims in this Court, and therefore will actually delay, rather than expedite, any distribution to the Claimants on account of the Claims.

### III.    REPLY

**A.    The Claimants' TILA and RESPA Claims Are All Time Barred**

20.    In the Response, McNerney asserts three theories for why her TILA and RESPA claims (collectively, the "<u>Federal Statutory Claims</u>") are not barred by the statute of limitations.  These include: (i) the Federal Statutory Claims relate back to the date that the First Foreclosure Action was filed by GMACM, (ii) the statute of limitations for the Federal Statutory Claims was equitably tolled, and (iii) the Borrower Trust is judicially estopped from asserting a statute of limitations defense to McNerney's allegations.  For the reasons stated below, all of these theories fail.

---

[6] The Claimants misinterpret this factor as whether any of the causes of action assert that the Debtors were acting as a fiduciary.  Rather, this factor looks at whether the Debtor's role in the litigation is that of a fiduciary (such as an executor of an estate) rather than in the alleged role of a debtor to a creditor.  Here, that is not the case.

21.     The relation back argument has no merit.  The commencement of an action will toll the statute of limitations for defensive counterclaims, such as recoupment or setoff, but not for counterclaims seeking affirmative relief.  See Riley v. Montgomery, 463 N.E.2d 1246, 1249 (Ohio 1984) ("The general rule is that statutes of limitations bar affirmative counterclaims, but do not affect claims offered in defense or recoupment, arising from the same transaction that forms the basis for the plaintiff's complaint."); see also Manos, Marin, Pergram & Dietz v. Saperstein, No. 2:08-cv-0529, 2008 WL 5234362, at *2 (S.D. Ohio Dec. 12, 2008) (holding that a defendant may assert a claim for set-off after a statute of limitations runs, but may not assert an affirmative claim for damages that exceeds the amount sought by the plaintiff).  Since there is no pending foreclosure action against McNerney and the Loan has been forgiven, the Claims clearly seek affirmative relief against Homecomings in the form of monetary damages, and such relief is barred by the statute of limitations that expired on December 27, 2003, which was well before the State Court Counterclaims were filed on June 16, 2004.   Thus, McNerney's Federal Statutory Claims were untimely on the Petition Date.

22.     McNerney's "equitable tolling" theory similarly fails.  The basis for her argument is that the TILA and RESPA claims were timely when filed due to the relation back doctrine, and therefore should benefit from equitable tolling after the First Foreclosure Action was dismissed.  See Response at 21.  However, as stated above, her assertion that the claims were timely when filed is incorrect and she has not provided any legal basis that her affirmative counterclaims should have been equitably tolled from the time they expired in December 2003.

23.     Additionally, McNerney mischaracterizes the Borrower Trust's position on equitable tolling to imply that under no circumstances would she have been permitted to file the Federal Statutory Counterclaims (assuming they were timely, which they were not) after the

11

First Foreclosure Action was dismissed.  See Response at 23.  To be clear, the Borrower Trust's position is that, unlike in Burnett v. New York Centr. R.R. Co., 380 U.S. 424 (1965), McNerney's claims should not be equitably tolled because she did not pursue her rights diligently, as is required.  See Objection ¶ 60.  Instead, even though the Second Foreclosure Action was pending, McNerney waited nearly nine months after the Ohio Supreme Court declined jurisdiction to file the District Court Counterclaims that were nearly identical to the previously-filed Amended State Court Counterclaims.  In the Response, McNerney fails to explain such a delay.

24.      Finally, the Claimants' theory that issue preclusion bars the Borrower Trust from asserting a statute of limitations defense because such a defense was rejected by the State Court also fails.  In Ohio, the doctrine of issue preclusion applies when a fact or issue: "(1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom issue preclusion is asserted was a party in privity with a party to the prior action." Thompson v. Wing, 637 N.E.2d 917, 923 (Ohio 1994).  "Issue preclusion precludes the relitigation of an issue that has been actually and necessarily litigated and determined in a prior action."  See MetroHealth Med. Cent. v. Hoffman-LaRoche Inc., 685 N.E.2d 529, 533 (1997).

25.      Here, McNerney asserts that the state trial court's decision to deny Homecomings' motion for summary judgment prevents this Court from granting the Objection.[7] See Response at 16.  However, issue preclusion does not apply to a non-appealable order such as an order denying a motion for summary judgment.  See Bradley v. Reno, 749 F.3d 553, 557 (6th

---

[7] A copy of the order denying Homecomings' motion to dismiss is attached hereto as Exhibit 2.  It should be noted that the order was a blanket denial of the motion and did not specify which of Homecomings' arguments were unsuccessful.

Cir. 2014) (holding that the Ohio Supreme Court would likely apply the generally accepted rule

that unless a decision is an appealable order, it cannot be the basis for issue preclusion); see also

Sagenich v. Erie Ins. Group, No. 2003-T-0144, 2003 WL 22952586, at *1 (Ohio Ct. App. Dec.

12, 2003) ("It is well established that the denial of a motion for summary judgment is generally

not a final appealable order.") (citing State ex rel. Overmeyer v. Walinski, 222 N.E.2d 312, 324

(Ohio 1966). Thus, the state trial court's denial of Homecomings' summary judgment motion

cannot preclude Homecomings from raising the legal sufficiency of the Claims at this juncture.

26.    Furthermore, as noted above, there is a distinct difference between the

counterclaims that were being asserted as part of the First Foreclosure Action and the Claims

asserted here, namely, that the counterclaims were asserted partially as a defense to the First

Foreclosure Action. Thus, under Ohio law, those counterclaims were not barred by the statute of

limitations to the extent they were asserted as defensive counterclaims based on recoupment.

However, here, McNerney is seeking affirmative relief with regard to her TILA and RESPA

claims, and such relief was barred by the statute of limitations. As a result, the issue of whether

the Claimant's TILA and RESPA claims are barred as affirmative relief was not decided by the

state trial court and therefore such issue is not precluded from being decided by this Court, and

the Federal Statutory Claims should be disallowed because they are untimely.

### B.    OMC Was Not Homecomings' Agent

27.    McNerney continues to assert that Homecomings can be held liable for the

actions of OMC because OMC was Homecomings' agent. See Response at 16. However, as

stated in the Objection, McNerney cannot establish that OMC was Homecomings' agent with

regard to the origination of the Loan through an actual agency theory because the Broker/Lender

Agreement explicitly provides that no such agency relationship exists. See Objection ¶ 35. The

possible existence of a consensual limited actual agency relationship for delivery of specific

disclosures cannot support McNerney's argument of a broader actual agency relationship for all purposes in the absence of additional evidence of such an actual agency. Furthermore, to establish an apparent agency, McNerney must show that Homecomings (as the principal), through its interactions with McNerney, held OMC out as its agent. See Objection ¶ 34. However, the only action cited by McNerney in the Response is that Homecomings "allowed" OMC to input data into a computer software program and to present McNerney with documents with Homecomings name on it. See Response at 17. Neither of these alleged events involve any interaction between Homecomings and McNerney, or any action done by Homecomings to McNerney, and therefore cannot form the basis of an apparent agency. See Objection ¶¶ 35-36. McNerney attempts to make hay out of the fact that Homecomings did not inform her of its limited relationship with OMC (discussed above), but alleged inaction or silence is not the type of conduct that can result in a finding that an apparent agency existed under Ohio law. As a result, McNerney's breach of fiduciary duty, negligence, CSPA, OMBA, and misrepresentation claims all fail because they are premised on the existence of an agency relationship between OMC and Homecomings that purportedly existed, when in fact, no material facts have been proffered to substantiate this allegation.

### C. The Response Fails to Cite Facts Supporting Causes of Action for Breach of Fiduciary Duty or Negligence

28. McNerney attempts to salvage her breach of fiduciary duty and negligence claims by making outlandish and unsupported allegations that Homecomings owes her a duty both as an underwriter and as a "broker" for Fannie Mae. Each of these theories fails.

29. McNerney asserts that Homecomings was a "broker" for Fannie Mae. See Response at 24. However, McNerney provides no factual or legal support for this "hail-Mary" theory, and as discussed in the Objection, Homecomings does not fall within the definition of

broker under the OMBA.  See Objection  ¶ 65.  Thus, such a theory of liability fails.  Similarly, McNerney has provided no legal support for her theory that underwriters owe a duty to mortgagors, Response at 27, and such a finding would contradict the principle described in the Objection that a lender does not owe a duty of care to a borrower.   See Objection ¶ 43.  As a result, this theory also fails.

30.    Finally, McNerney attempts to save her claim for improvident lending by citing to two cases for the proposition that "a handful of courts have given borrowers remedies with respect to improvident lending."  See Response at 28.  The first case is from Indiana, First Nat'l Bank of Atl. v. Robinson (In re Robinson), 55 B.R. 839 (Bankr. S.D. Ind. 1985) and does not apply the law of Ohio.  The second, Discovery Bank v. Owens, 822 N.E.2d 869 (Ohio Mun. Ct. 2004), did not hold that a cause of action for improvident lending exists in Ohio, but rather held that certain actions of the credit card company warranted a holding that the debt could not be enforced. Discover, 822 N.E. 2d at 875.   In both of these cases, the courts merely refused to require the payment on the loan at issue, and they did not grant affirmative relief to the debtors.

31.    McNerney requests that the Court consider whether the Ohio Supreme Court would recognize a cause of action for improvident lending.   However, this is entirely unnecessary as a federal court in Ohio already decided this issue and determined that such a cause of action does not exist.  See Price v. EquiFirst Corp., No. 08-cv-1860, 2009 WL 917950, at *8 (N.D. Ohio Apr. 1, 2009) (summarily rejecting improvident lending as a cause of action under Ohio law).  Furthermore, courts in other jurisdictions have noted that improvident lending has been thoroughly rejected by courts across the country.  See Official Comm. Of Unsecured Creditors v. Goldman Sachs Credit Partners, L.P. (In re Fedders N. Am., Inc.), 405 B.R. 527, 551-52 (Bankr. D. Del. 2009) (predicting that the Supreme Court of New Jersey would follow

ny-1213063

other lines of cases and reject improvident lending as a cause of action); <u>FDIC v. Fordham (In re Fordham)</u>, 130 B.R. 632, 648 (Bank. D. Mass 1991) (citing cases denying claims for negligent underwriting of loans through loose internal lending standards and poor business judgment).  As a result, McNerney's claim for improvident lending must fail.

>       **D.**       **The Response Fails to Rebut the Borrower Trust's Arguments Regarding McNerney's TILA Claim**

>       32.       As discussed above, McNerney's TILA claims are barred by the statute's one-year statute of limitations.  Thus, McNerney's TILA claim under an improper disclosure theory expired one year from the date of the Loan's origination, or December 27, 2003, and she did not assert a claim under this theory until June 16, 2004.  Her claim under a failure to rescind theory expired one year from the date of the alleged failure to rescind, or June 16, 2005.  However, she did not assert this claim until November 2006.

>       33.       Additionally, McNerney's "failure to rescind" claim fails for the reasons stated in the Objection.  In the Response, McNerney mischaracterizes the Borrower Trust's arguments on this point.  The Borrower Trust is not asserting that her claim fails because she did not tender the amount due, but rather because the Debtors disputed her right to rescind in the first place.  As stated in the Objection, "[r]escission under TILA is not automatic where a lender or creditor disputes the borrower's or obligor's purported claim of rescission." <u>Anderson v. Delta Funding Corp.</u>, 316 F. Supp. 2d 554, 563 (N.D. Ohio 2004). <u>See</u> Objection ¶ 55. Since Homecomings disputed McNerney's right to rescind, and no determination was ever made regarding whether the conditions for rescission were met, there was no violation of TILA for failure to rescind.

E.    **The Claimant's "Fraud on the Court" Claim Does Not Plead a Larger
Scheme to Defraud**

34.    In the Response, McNerney asserts that her fraud on the court claim meets
an exception to the witness immunity rule by alleging conduct part of "a larger scheme to
defraud" based on other purported fraudulent acts by OMC and Homecomings.  See Response at
29.  McNerney's argument is premised on one Ohio case, Pratt v. Payne, 794 N.E.2d 723 (Ohio
Ct. App. 2003).   But in, the court stated that it is not clear whether Ohio recognizes this
exception, but if it did, the exception would only apply where the cause of action is premised on
more than mere perjury itself.  See Pratt, 794 N.E. 2d 729.  Pratt does not support an expansion
of Ohio's limited fraud-on-the-court cause of action in the circumstances present here.

35.    The fraud on the court claim, as stated in the District Court Counterclaims, is
based entirely on the Debtors' filing of allegedly fraudulent assignments of mortgage.  See
District Court Counterclaims at 293-302, attached as Exhibit 1 to the Wallace Declaration,
attached as Exhibit 3 to the Objection.  McNerney attempts to stack these allegations on to her
other allegations of fraud; however, these other allegations do not form the basis of her fraud on
the court claim.  See Response at 29-30.  Furthermore, McNerney does not put forward anything
to tie these multiple allegedly fraudulent acts together other than the fact that they were both
allegedly committed by the Debtors.  Thus, she has failed to allege that purportedly fraudulent
assignments were part of a "scheme to defraud" and for the reasons stated in the Objection, her
fraud on the court claim is entirely without merit.

F.    **The Claimants Have Not Sufficiently Alleged a Claim for Civil Conspiracy**

36.    As discussed in the Objection, a claim for civil conspiracy requires an
actual agreement to participate in wrongdoing.  See Collins v. Nat'l City Bank, No. 19884, 2003
Ohio App. LEXIS 6230, at *12 (Ohio Ct. App. Dec. 19, 2003) (holding that in order to establish

17

the requisite malice to allege a claim for civil conspiracy, there must be "an actual agreement to participate in a wrongful activity.").  McNerney fails to allege facts that demonstrate an actual agreement existed between OMC and Homecomings to commit the alleged wrongdoing, even though she has had discovery, a trial, and numerous pleading opportunities over the years.  In the Response, McNerney's only allegation of an agreement is that OMC and Homecomings "acted in concert," but there are no facts alleged tying together any of the actions, nor does she point to any evidence of an actual agreement, instead merely pointing to the individual actions of each party. See Response at 38. As a result, McNerney's civil conspiracy claim fails for the reasons stated in the Objection.

### G.    The Claim for Unconscionability Also Fails

37.    In the Response, McNerney fails to address the arguments presented in the Objection regarding the unconscionability of the loan.  Under Ohio law, the determining factors as to whether the loan is unconscionable is whether a loan, by its terms, is unfair or unreasonable and whether the borrower was in an inferior bargaining position.  As stated in the Objection, the Loan does not meet either of these requirements.  Contrary to McNerney's characterization of the Loan, the Loan actually provided a benefit to McNerney because it lowered her monthly interest rate, lowered her monthly payment, and paid down more than $10,000 in high interest debt that she was no longer responsible for.  See Objection ¶ 19.  Additionally, McNerney was not an unsophisticated party in an inferior bargaining position, as she is an educated woman who was fully aware of the terms of the Loan.  See Objection ¶ 82.  Additionally, while McNerney continues to allege that better terms would have been available to her, at no time (not even during the trial in the Superior Court) has McNerney offered any tangible evidence of these alleged better terms being available to her.  As a result, McNerney has failed to allege that the Loan was unconscionable.

18

### H.    Breach of Privacy

38.    In the Response, McNerney merely repeats the same arguments regarding her breach of privacy claim that have already been addressed by the Borrower Trust in the Objection.  See Objection ¶¶ 83-93. In sum, McNerney cannot assert such a claim because there was no publication and no disclosure of her private affairs.  Furthermore, there was no intrusion upon her seclusion, as the allegations relate to activities that occurred in a public place.  As a result, for the reasons stated in the Objection, McNerney's breach of privacy causes of action fail as a matter of law.

### I.    Attorney's Fees

39.    As discussed in the Objection, the only causes of action that support damages for attorney's fees are those enumerated by statute, specifically the OMBA, CSPA, TILA, and RESPA.  For the reasons stated above, each of these causes of action fails as a matter of law.  As a result, the Borrower Trust requests that even if the Court does not disallow all claims, it should at least disallow the claims 4757 and 4758 filed by Susan Gray for attorney's fees.

## IV.    THE MOTIONS TO STRIKE SHOULD BE DENIED

40.    The Claimants also filed two motions to strike the declarations of Sara Lathrop and David Wallace arguing that such declarations are hearsay.  See Motions to Strike. As an initial matter, the Claimants neither identify any statements in either declaration as being factually inaccurate, nor provide a legitimate basis for calling into question the trustworthiness of the declarants' written testimony.  Moreover, all of the statements made by Ms. Lathrop are based on information maintained in the Debtors' Books and Records, which are records that were kept in the Debtors' ordinary course of business.  As a result, these statements qualify as an exception to the rule against hearsay under Fed. R. of Evid. 803(6)(B).

ny-1213063

41.    Furthermore, all of the statements in Mr. Wallace's declaration represent his characterization of facts taken from documents that were part of the record in the previous court cases (and were attached to his declaration) or were based on his own knowledge of events that occurred after the Second Foreclosure Action was filed.  In the motion to strike parts of Mr. Wallace's declaration, the Claimants state that they do not object to the admissibility of the previous court documents upon which Mr. Wallace's declaration is based.  As a result, if the Court deems such documents cannot be admitted through a declaration, then the Borrower Trust submits that they should treated as if attached directly to the Objection itself and the Court can decide how much weight to give to the statements made by Mr. Wallace when it makes its decision on the merits of the Objection.

WHEREFORE, the Trusts respectfully request that the Court (i) overrule the Response and grant the relief requested in the Objection by disallowing and expunging the Claims in their entirety, (ii) deny the Motions to Strike, and (iii) deny the Lift Stay Motion.


Dated:  December 9, 2015                          /s/  Norman S. Rosenbaum
          New York, New York                      Norman S. Rosenbaum
                                                  Jordan A. Wishnew
                                                  Jessica J. Arett
                                                  MORRISON & FOERSTER LLP
                                                  250 West 55th St.
                                                  New York, New York 10019
                                                  Telephone: (212) 468-8000
                                                  Facsimile: (212) 468-7900

                                                  *Counsel for The ResCap Borrower Claims Trust
                                                  and the ResCap Liquidating Trust*

ny-1213063