**Exhibit 1**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**SUPPLEMENTAL DECLARATION OF SARA LATHROP IN SUPPORT OF THE RESCAP BORROWER CLAIMS TRUST'S REPLY IN SUPPORT OF ITS OBJECTION TO CLAIM NUMBERS 4757, 4758, 4762, AND 4764 FILED BY PATRICIA MCNERNEY AND SUSAN GRAY**

I, Sara Lathrop, hereby declare as follows:

1. I serve as Senior Claims Analyst for the ResCap Borrower Claims Trust (the "<u>Borrower Trust</u>"), established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] confirmed in the above-captioned Chapter 11 Cases. During the Chapter 11 Cases, I served as Regulatory Compliance Manager and Loss Mitigation Manager in the loan servicing department of Residential Capital, LLC ("<u>ResCap</u>"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "<u>Debtors</u>"). I began my association with ResCap in June 2006 working as an associate in the Default Division of the loan servicing operation of GMAC Mortgage, LLC ("<u>GMACM</u>"). In 2008, I became a Default Quality Control Specialist, a position that I held until I became a Supervisor in the Default Division in 2009. In 2011, I became a Supervisor in the Loss Mitigation Division of GMACM's loan servicing operation, and in February 2012, I became a Manager in that division. In this role, I oversaw GMACM associates in their efforts to provide borrowers with loss mitigation options and

1

ny-1214065

assisted in the development of GMACM's loss mitigation policies.  In January of 2013, I became the Regulatory Compliance Manager for ResCap.  I became Senior Claims Analyst for ResCap in July 2013 and continued in this role when the ResCap Liquidating Trust (the "Liquidating Trust") was established in December 2013.  In my current position as Senior Claims Analyst to the Borrower Trust, among my other duties, I continue to assist the Borrower Trust in connection with the claims reconciliation process.[1]  I am authorized to submit this declaration (the "Declaration") in support of the *ResCap Borrower Claims Trust's Reply in Support of Its Objection to Claim Nos. 4757, 4758, 4762 and 4763 Filed By Patricia McNerney and Susan Gray* (the "Reply").[2]

2. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations, information learned from my review of relevant documents and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors, the Liquidating Trust, and the Borrower Trust's professionals and consultants.  If I were called upon to testify, I could and would testify competently to the facts set forth in the Objection on that basis.

3. In my capacity as Senior Claims Analyst, I am intimately familiar with the claims reconciliation process in these Chapter 11 Cases with regard to Borrower Claims.  Except as otherwise indicated, all statements in this Declaration are based upon my familiarity with the Debtors' Books and Records kept in the course of their regularly conducted business activities (the "Books and Records") as well as the Debtors' schedules of assets and liabilities and

---

[1] The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.
[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Objection.

2

ny-1214065

statements of financial affairs filed in these Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or my review of relevant documents. I or my designee at my direction have reviewed and analyzed the proof of claim form and supporting documentation filed by the Claimants. Since the Plan went effective and the Borrower Trust was established, I, along with members of the Liquidating Trust's management or employees of the Liquidating Trust have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims, and determine the appropriate treatment of the same. In connection with such review and analysis, where applicable, I or Liquidating Trust personnel, together with professional advisors, have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (vi) the official claims register maintained in the Debtors' Chapter 11 Cases.

4. On information and belief, at this stage of the Second Foreclosure Action, there has been no discovery, and the District Court has not heard any evidence related to the Claims or even determined whether the Claims can survive a motion for summary judgment.

5. The Borrower Trust expects that if the District Court action proceeds, then it would take a significant amount of time to receive a decision on the motion for summary judgment or the judgment on the pleadings, as briefing for both was completed on November 22, 2011 and the District Court had not issued a decision by the Petition Date. Furthermore, if such motions are not granted, time may be required for further discovery on the Claims, mediation, and hearings on dispositive motions, which would then be followed by a trial (each as necessary).

ny-1214065

6.      Over the past two years, the Debtors or the Borrower Trust have been able to resolve claims consensually. In other cases where consensual resolution was not possible, the claims resolution process has provided an appropriate forum for the expeditious exchange of informal discovery and an expeditious resolution of the disputes between the parties. For instance, in connection with resolution of other borrower claims, the Court has permitted the parties to submit position statements to facilitate the Court's determination of the Debtors' liability for the underlying claims and to fix any such liability.[3] These procedures fostered productive discussions between the parties that, in certain cases, produced a consensual resolution.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 9, 2015

    /s/ Sara Lathrop
Sara Lathrop
Senior Claims Analyst for the ResCap
Borrower Claims Trust

---

[3] See *Order Establishing Procedures for the Adjudication of the Claims of William and Keiran Walker, Freddie Scott, Ron Bejaraon, and Paul and Marge Pfunder in Connection with the Debtors' Twenty-Second, Twenty-Seventh, and Thirteenth Omnibus Objections to Claims* [Docket No. 5390].

4

ny-1214065