UNITED STATED BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

IN RE

RESIDENTIAL CAPITAL LLC                    CASE NO. 12-12020 (MG)

DEBTORS                                    CAHPTER 11

                                                                         JOINTLY ADMINISTERED

### SUBMISSION FROM THE CLAIMANT, WILLIAM J FUTRELL

Comes now the Claimant, William J Futrell, #725, and submits sections IV, contentions, VI exhibits, VIII stipulations and objections, and XI relief sough.

There was a delay in in the ability to complete the prescriber portions of the court order, and the request to accept the proffered content without objection.

                                     Respectfully submitted,

                              _____

                              Thomas Margolis 10189-18
                              125 E Charles Street   Suite 214
                              Muncie IN 47305
                              Telephone 765-288-0600
                              Counsel for Claimant William J Futrell, #725

### Certificate of Service

The content was served on James Newton, Morrison & Foerster, 250 W 55th Street, NY NY 10019, on the __3__ day of December 2015, by __US mail__

                              _____
                              Thomas Margolis

RECEIVED

DEC - 7 2015

U.S. BANKRUPTCY COURT, SDNY

Pg 2 of 5

UNITED STATED BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

IN RE

RESIDENTIAL CAPITAL LLC                    CASE NO. 12-12020 (MG)

DEBTORS                                                      CAHPTER 11

                                                                     JOINTLY ADMINISTERED

PRE-TRIAL SUBMISSIONS OF THE CLAIMANT, WILLIAM J FUTRELL

IV    Claimants contentions

1. The mortgage of the claimant was acquired by Homecoming Financial, a GMAC company, and thereafter transferred to GMAC.

2. The claimant had issue with the mortgage servicer, where their escrow statement of June 17, 2009, included a stated typo from the servicer, where the insurance was to be $1,352.53, and they added a "1".

3. There was a stated escrow shortage of $1,249.71 from the servicer.

4. The amount of the escrow shortage in the service notes was $1541.69 for 6/17/09.

5. There were Qualified Written Requests from the claimant that addressed these issues, where the servicer did not address those and other issues, including October 23, 2009, October 30, 2009.

6. Then matter of the insurance typo was stated to have been resolved by the servicer, where t was mentioned in correspondence from a subsequent servicer, OCWEN, in 2013, making reference to the same.

7. There was imposition of insurance from the servicer, From Balboa Insurance, where the claimant dealt with other insurance companies, noted in the servicing noted for 6/16/09.

8. There was a notation for the servicer for 11/9/09, where the new premium was noted.

9. The servicer noted on 1/29/10 of the claimant's contact with Jenna Williams, stating that the stated escrow shortage was due to the forced placement by the servicer.

10. The clamant caused their insurance agent to send in the necessary documents to the servicer on multiple occasions, where the servicer took no action there.

11. There was the matter of the escrow and stated shortages from the servicer.

12. The service notes reflect that it was an ongoing concern to the borrower, where ie it was noted on 11/16/09 that the servicer calculations were challenged, relative to the breakdown of the escrow and the loan modification.

13. There was a prior entry on the servicer notes, for 1/24/09, where borrower does not agree with the escrow, and "...will not sign until the situation is addressed...".

14. The servicer did not address the issue with the claimant, where the service notes reflect on 10/3/09 that "....for breakdown of escrow, $1550 added to end of loan..."

15. The claimant requested but did not receive a breakdown of the escrow, with the notation in the notes made 10/30/09.

16. The issues were not address by the servicer, where they remained when OCWEN assumed the mortgage in 2014.

17. There was the matter of any loan modification from the servicer, where any document were presented, and the changes were nominal, notably any interest on the obligation.

18. GMAC/Homecomings made offers to the claimant, including but not limited trial.

19. There was the offer to pay a stated sum for three (3) consecutive months in 2010, and the sum of $355 was to be paid.

20. The claimant tendered the payments in a timely manner, where the servicer voided any agreement, and returned a check for the sum of $355, dated 2/22/10.

21. There were the assessments and charges made by the servicer, with multiple inspections, notably for the dates of 5/1/09, 7/1/09, 1/10/11, and 6/1/11.

22. The "stop gap" offer was addressed in the service notes, where the 2/17/09 entry stated the borrower would be permitted to do that.

23. The service notes reflect the $355 was returned on 5/3/10 with no explanation.

24. There was the letter from Homecomings for June 10, 2009, and the statement of the balance of $71,251.99, and the GMAC validation letter for June 10, 2009, and the statement of the balance of $73,341.47.

25. These were part of the issues that were presented to the servicer.

26. There were the multiple contacts with the servicer, where nothing was accomplished to reconcile and redress the issues with the mortgage servicing and/or any loan modification.

27. There was the statement that Homecoming spoke to the claimant on June 2, 2009, where the service notes reflect a message was left.

28. There was the statement that the servicer responded to the October 30, 2009, QWR, noting the response on November 13, 2009.

29. The November 13, 2009 response from the servicer makes reference to the QWR dated October 23, 2009.

30. The servicer engaged in a course of conduct, where statements and agreements would be made, and not kept by them with the claimant.

31. There were the contacts with the service, notably with Jenna Williams, noted on 5/14/10 in the servicing notes.

32. Issues with the mortgage servicing, loan modification or other issues were not resolved by Jenna Williams, or others at GMAC/Homecomings, leaving the claimant in the worse position.

33. The actions of the servicer, where they did not respond to the October 30, 2009, QWR.

34. The servicer's actions were contrary to RESPA, notably the provision that provided their obligation to address and respond to the issues raised by the claimant.

35. The servicer's actions proximately caused the matter of the claimant's property to deteriorate, by their demands for the satisfaction of the mortgage and their non responsiveness to the issues.

36. It was the reason they were unable to obtain assistance with the condition of the premises, from USDA, in 2011.

37. The value of the property dropped from the time that Homecomings/GMAC to $30,000, from $41,800 in 2009, from the property tax valuation.

38. The actions of the servicer adversely affected his health, where the added stress from their actions, at minimum, contributed to the medical event.

39. There was the need to use the resources available to the claimant to satisfy the servicer, and their pension/401k was exhausted., with that and other damages incurred by the claimant.

VI   Exhibits

1. Photographs of the claimant's residence at issue
2. Homecomings/GMAC documentation, June 17, 2009 analysis, June 10, 2009 Homecoming letter and the June 10, 2009 GMAC letter, November 13, 2009 GMAC QWR response, "stop gap" agreement and ret check copy and April 4, 2013 OCWEN letter
3. Mutual Fire Insurance Co statement of premium
4. Claimant pension/retirement documents
5. 2012 1099R
6. Tax warrants (4)
7. Bank statement – overdraft fees incurred
8. Disability documentation
9. Valuation of real estate
10. USDA August 10, 2011 letter
11. GMAC November 17, 2011 offer to satisfy mortgage
12. OCWEN statement noting balance of $90,656.94 of 5/22/14
13. Estimate to address real estate issues
14. Claimant's s hospital bill 2011
15. Radiology bill to #13
16. Related bill to #13
17. Related bill to #13
18. Servicing notes pages 94/159, 96/159, 99/159, 100/159, 98/159, 93/159, 87/159, 120/159, 110/159, 111/159, 117/159

VIII   stipulations and objections as to exhibits

B. The exhibits are the servicer exhibits and they are not objected to for any hearing on the facts,

And stipulate to the claimant's responses submitted by RESCAP.


XI   Relief Sought


The claimant seek the losses incurred as a result of the actions of Homecomings/GMAC, that are inclusive of the economic loss, the loss in the in the value of the real estate, address the impact of the then medical condition of the claimant flowing from the matter.

_____
THOMAS MARGOLIS
Counsel for Claimant