**Hearing Date: December 16, 2015 at 10:00 A.M. (ET)**

MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett

*Counsel for the ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**RESCAP BORROWER CLAIMS TRUST'S OMNIBUS REPLY IN SUPPORT OF ITS NINETIETH OMNIBUS OBJECTION TO CLAIMS ((I) NO LIABILITY BORROWER CLAIMS, (II) REDUCE AND ALLOW BORROWER CLAIM, AND (III) ALLOWED IN FULL BORROWER CLAIM) AS TO CLAIM NOS. 2526 AND 6270**

ny-1214390

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ............................................................................................................................2

BACKGROUND FACTS ...............................................................................................................3

     A.    Tammaro Claim......................................................................................................3

     B.    Cooper Claim.........................................................................................................6

REPLY .............................................................................................................................................8

     A.    Tammaro Claim......................................................................................................8

     B.    Cooper Claim.........................................................................................................9

CONCLUSION ............................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Allegheny Int'l, Inc. v. Snyder (In re Allegheny Int'l, Inc.),
   954 F.2d 167 (3d Cir. 1992) .................................................................................................. 8

Feinberg v. Bank of N.Y. (In re Feinberg),
   442 B.R. 215 (Bankr. S.D.N.Y. 2010) .................................................................................... 8

Forbes Farm P'ship v. Farm Family Mut. Ins. Co.,
   769 A.2d 366 (N.H. 2001) ..................................................................................................... 10

In re Oneida Ltd.,
   400 B.R. 384 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co. v.
   Oneida Ltd., No. 09-cv-2229 (DC, 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22,
   2010) ........................................................................................................................................ 8

In re Residential Capital, LLC,
   507 B.R. 477 (Bankr. S.D.N.Y. 2014) .................................................................................... 8

Rollins v. McDonald,
   7 F.2d 422 (1st Cir. 1925) ...................................................................................................... 10

**STATUTES**

11 U.S.C. § 502(a) ........................................................................................................................ 8

11 U.S.C. § 502(b)(1) .................................................................................................................... 8

N.H. REV. STAT. § 508.4 (LexisNexis 2015) ............................................................................... 9

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the Plan[1] filed in the above-captioned Chapter 11 Cases, as successor in interest to the above-captioned Debtors with respect to Borrower Claims, by and through its undersigned counsel, hereby submits this reply (the "Reply") and the Supplemental Declaration of Sara Lathrop, Senior Claims Analyst to the Borrower Trust (the "Supp. Decl."), annexed hereto as Exhibit 1, to the responses filed by Lori (Pesce) Tammaro ("Ms. Tammaro") [Not Yet Docketed] (the "Tammaro Response") and Thomas G. and Catherine D. Cooper (the "Coopers" and with Ms. Tammaro, the "Respondents") [Docket No. 9379] (the "Cooper Response" and with the Tammaro Response, the "Responses") to the *ResCap Borrower Claims Trust's Ninetieth Omnibus Objection to Claims ((I) No Liability Borrower Claims, (II) Reduce and Allow Borrower Claim, and (III) Allowed in Full Borrower Claim* [Docket No. 9296] (the "Objection"). The Trust respectfully states as follows:

**PRELIMINARY STATEMENT**

1. The Borrower Trust examined the Responses and the statements submitted in support thereof. For purposes of this Reply and the Objection, the Borrower Trust takes these statements at face value. If the Court is not prepared to rule on the Objection with respect to the Respondents, then the Borrower Trust reserves the right to take discovery from the Respondents.

2. As described herein and in the Supplemental Declaration, the Borrower Trust thoroughly examined the Debtors' books and records that were prepared and kept in the course of their regularly conducted business activities (the "Books and Records") in an effort to validate the accuracy of the allegations made in the Responses and the claims at issue, and for the reasons described herein, the Books and Records do not show any liability due and owing to any of the Respondents.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Objection.

ny-1214390

3. Moreover, as the Objection shifted the burden of proof back to the Respondents, the Respondents must demonstrate a valid claim against the Debtors' estates by a preponderance of the evidence. For the reasons set forth in the Objection, this Reply, and the Supplemental Declaration, the Respondents have failed to provide any explanation as to why their respective claims should not receive the treatment sought through the objection. Specifically, Ms. Tammaro failed to demonstrate that the Debtors acted improperly when executing a loan modification on her account. In addition, the Coopers failed to assert a valid claim against the Debtors' estates because their actions following the alleged breach of their Note demonstrate a waiver of any cause of action arising from the alleged breach. Moreover, such a cause of action is barred by the statute of limitations. Therefore, the Respondents have failed to meet their burden of proof, and the relief sought in the Objection should be granted with respect to each of the Respondents.

**BACKGROUND**

4. In connection with the claims reconciliation process, the Borrower Trust identified certain claims filed by Borrowers that it believed did not constitute valid liabilities of the Debtors (together, the "No Liability Borrower Claims"). See Supp. Decl. ¶ 4.

5. The Debtors sent Request Letters to certain Borrowers, including each of the Respondents, requesting additional documentation in support of the No Liability Borrower Claims.[2] See Supp. Decl. ¶ 5. The Request Letters state that the claimant must respond within 30 days with an explanation that states the legal and factual reasons why the claimant believes he or she is owed money or is entitled to other relief from the Debtors, and the claimant must provide copies of any and all documentation that the claimant believes supports the basis for his

---

[2] A Request Letter was sent to Ms. Tammaro on May 24, 2013 and the Coopers on June 21, 2013. See Supp. Decl. n. 3.

or her claim. The Request Letters further state that if the claimant does not provide the requested explanation and supporting documentation within 30 days, the Debtors may file a formal objection to the claimant's claim, seeking to have the claim disallowed and permanently expunged. See Supp. Decl. ¶ 5.

6.     The Debtors received responses to the Request Letters from the Respondents[3] (the "Diligence Responses"), copies of which are attached to the Supp. Decl. as Exhibit A. The Diligence Responses fail to allege bases for claims against the Debtors' estates and the Books and Records do not show any liability due and owing to the Respondents. See Supp. Decl. ¶ 6.

7.     On December 11, 2013, the Court entered the *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* approving the terms of the Chapter 11 plan, as amended (the "Plan"), filed in these Chapter 11 Cases [Docket No. 6065]. On December 17, 2013, the effective date of the Plan occurred (the "Effective Date"), and, among other things, the Borrower Trust was established [Docket No. 6137].

*Background Facts*

    **A.     Tammaro Claim**

8.     On or around November 6, 2012, Ms. Tammaro filed a proof of claim against Debtor Residential Capital, LLC ("ResCap"), designated as Claim No. 2526 (the "Tammaro Claim"), asserting a general unsecured claim in the amount of "$30,000 plus $45,000" and a secured claim in an unliquidated amount. See Exhibit B to the Supp. Decl. The Tammaro Claim was reclassified as an entirely general unsecured claim against Debtor GMAC Mortgage, LLC ("GMACM") pursuant to the Court's *Order Granting Debtors' Thirty-Sixth Omnibus Objection*

---

[3] The Debtors received a Diligence Response from Ms. Tammaro related to the Tammaro Claim (defined below) on June 17, 2013 and from the Coopers on July 22, 2013. See Supp. Decl. n. 4.

*to Claims (Misclassified and Wrong Debtor Borrower Claims)* [Docket No. 5895] (the "Thirty-Sixth Omni Order"), entered November 20, 2013.

9. According to the Debtors' books and records, GMACM originated a loan in the amount of $100,000 to Ms. Tammaro on October 29, 1999 (the "Tammaro Loan"), secured by a mortgage on property located at 24 Pleasant Street, Everett, MA 02149 (the "Tammaro Property"). See Tammaro Note, attached to the Supp. Decl. as Exhibit C, and Tammaro Mortgage, attached to the Supp. Decl. as Exhibit D. GMACM transferred its interest in the Tammaro Loan to Fannie Mae. See Supp. Decl.¶ 8.

10. GMACM serviced the Tammaro Loan from October 29, 1999 until servicing was transferred to Ocwen on February 16, 2013. See Exhibit B to the Proposed Order.

11. On May 10, 2009, Ms. Tammaro submitted an application for a loan modification. See Servicing Notes at 37-38, attached to the Supp. Decl. as Exhibit E. GMACM approved Ms. Tammaro for a trial HAMP loan modification (the "Trial Plan") on May 13, 2009 with payments due June through August 2009. See id. at 36  The Trial Plan was completed and GMACM approved Ms. Tammaro for a permanent HAMP loan modification (the "Loan Modification") on September 15, 2009. See id. at 30. GMACM mailed the documents to Ms. Tammaro on September 17, 2009 to be executed. See id.

12. Prior to the execution of the Loan Modification, the principal balance of the Tammaro Loan was $67,231.91. See Servicing Notes at 4. Pursuant to section 3.B of the Loan Modification, a total of $18,473.34 was added to the principal balance, which represented $5,446.45 in unpaid interest, $9,434.87 in unpaid escrow, $1,279.32 in default fees, and $2,312.70 in attorney's fees. See Servicing Notes at 36 of 94. Thus, the new total amount owed

4

ny-1214390

on the Tammaro Loan after the Loan Modification was $85,705.25 (the "New Principal Balance").[4]

13.    Section 3.C of the Loan Modification agreement stated that "$29,563.02 of the New Principal Balance shall be deferred … and I will not pay interest or make monthly payments on this amount." See Loan Modification, attached to the Supp. Decl. as Exhibit F. Section 3.F states "I agree to pay in full the Deferred Principal Balance and any other amounts still owing under the Loan Documents at the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date." See id. Thus, while the New Principal Balance was $85,705.25, she did not need to make monthly payments or accrue any interest on $29,563.02 of that amount (the "Deferred Principal Balance"), and therefore her monthly payment schedule was determined based on the principal amount of $56,592.02.[5]

14.    On October 28, 2009, because GMACM had not yet received the executed Loan Modification Documents, GMACM mailed a breach letter to Ms. Tammaro because the Tammaro Loan was owing for the October 2008 through October 2009 payments (the "Breach Letter"). See Tammaro Breach Letter, attached to the Lathrop Declaration as Exhibit G. The Tammaro Loan was not referred to foreclosure at this time. See Servicing Notes at 24-25 of 94.

15.    After GMACM mailed the Breach Letter, it received the executed Loan Modification Documents from Ms. Tammaro, and her account was brought current. See Servicing Notes at 4, 24 of 94.

---

[4] The Loan Modification Agreement improperly lists $56,592.02 as the new principal balance, however, this is actually the amount that she was making payments on after the Deferred Principal Balance (defined below) was deducted from the New Principal Balance. See Supp. Decl. n. 5.

[5] This amount is $449.79 more than the difference between $85,705.25 and $29,563.02. The Borrower Trust cannot explain the reason for this difference. However, the schedule of payments listed on the Loan Modification agreement, which Ms. Tammaro agreed to, is based on an interest bearing principal balance of $56,592.02. See Supp. Decl. n. 6.

16. Ms. Tammaro remained current on the Tammaro Loan for the remainder of the period it was serviced by GMACM. See Servicing Notes at 1-4 of 94. HAMP Program Guidelines state "To provide an additional incentive for borrowers to keep their modified loan current, borrowers whose monthly mortgage payment…is reduced through the HAMP by six percent or more and who make timely monthly payments will earn an annual 'pay for performance' principal balance reduction equal to the lesser of: (i) $1,000, or (ii) one-half of the reduction in the borrower's annualized monthly payment for each month a timely payment is made." See HAMP Guidelines, attached to the Supp. Decl. as Exhibit H, at 24. Pursuant to this provision, GMACM applied a $1,000 incentive payment annually to Ms. Tammaro's unpaid principal balance. These incentive payments were applied on August 2, 2010, July 28, 2011, and July 31, 2012. See Servicing Notes.

    **B.    Cooper Claim**

17. On or around November 9, 2012, the Coopers filed a proof of claim against ResCap, designated as Claim No. 6270 (the "Cooper Claim"), asserting a secured claim in an amount of $50,000. See Exhibit I to the Supp. Decl. The Cooper Claim was reclassified as a general unsecured claim against GMACM pursuant to the Thirty-Sixth Omni Order.

18. According to the Debtors' books and records, GMACM originated a home equity line of credit to the Coopers on August 25, 2003 (the "Cooper HELOC"), secured by a mortgage (the "Cooper Mortgage") on 175 South Street, Concord, NH 03301 (the "Cooper Property"), which was recorded on September 2, 2003. See Cooper Note, attached to the Supp. Decl. as Exhibit J, and Cooper Mortgage, attached to the Supp. Decl. as Exhibit K.

19. GMACM serviced the Cooper HELOC from September 9, 2003 until servicing was transferred to Ocwen on or around February 16, 2013. See Supp. Decl. ¶ 17.

20. On May 27, 2005, the Coopers made a payment to GMACM of $45,508.82 on account of the Cooper HELOC, reducing the principal balance of the Cooper HELOC to zero. See Servicing Notes, attached to the Supp. Decl. as Exhibit L, at 4. There is nothing in the Debtors' books and records to indicate that this payment was accompanied by a letter from the Coopers closing the account. See id.

21. On September 13, 2005, the Coopers spoke with GMACM via phone, at which time the Coopers stated that they intended to draw funds soon. During this conversation, the Coopers did not state that the Cooper HELOC should have been closed. See Servicing Notes at 8.

22. The Coopers subsequently withdrew $10,000 from the Cooper HELOC on October 3, 2005. See Servicing Notes at 4. Subsequent to that amount being drawn, the Coopers made monthly payments on the account. See id.

23. The Coopers withdrew additional amounts on the Cooper HELOC on March 9, 2005 ($10,000), November 8, 2006 ($1,000), January 23, 2007 ($5,000), August 14, 2007 ($6,000), November 1, 2007 ($5,000), November 29, 2007 ($4,000), December 17, 2007 ($6,000) and February 29, 2008 ($2,500). See Servicing Notes at 3-4.

24. As of February 29, 2008, the unpaid principal balance on the Cooper HELOC was $49,049.55. See id. at 3. The Coopers made monthly payments on this amount until servicing of the Cooper HELOC was transferred to Ocwen. See id.

25. On October 4, 2012, the Coopers requested a full account history. See Cooper Servicing Notes at 6. This was the first time the Coopers had made such a request. See id. On October 22, 2012, GMACM mailed a payment history to the Coopers, and on October 30, 2012,

7

ny-1214390

GMACM mailed the Cooper HELOC and Cooper Mortgage, as well as the Coopers' loan application, HUD-I, and another payment history for the account. See id at 6-7.

## REPLY

26. A filed proof of claim is "deemed allowed, unless a party in interest … objects." 11 U.S.C. § 502(a). Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law…." 11 U.S.C. § 502(b)(1). As noted previously by the Court, claims objections have a shifting burden of proof. Pursuant to Federal Rule of Bankruptcy Procedure 3001(f), a claimant establishes a prima facie case against a debtor upon filing a proof of claim alleging facts sufficient to support the claim. The objecting party is thereafter required to produce evidence equal in force to that provided by the claimant to rebut the presumption of the claimant's prima facie case. In re Residential Capital, LLC, 507 B.R. 477, 490 (Bankr. S.D.N.Y. 2014). See also Allegheny Int'l, Inc. v. Snyder (In re Allegheny Int'l, Inc.), 954 F.2d 167, 173-74 (3d Cir. 1992).

27. Once an objection refutes an essential allegation of the claim, the burden of persuasion is on the holder of a proof of claim to establish a valid claim against a debtor by a preponderance of the evidence. Residential Capital, 507 B.R at 490; Feinberg v. Bank of N.Y. (In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010); In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co. v. Oneida Ltd., No. 09-cv-2229 (DC), 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010).

### A.    Tammaro Claim

28. In the Tammaro Response, Ms. Tammaro merely states that she opposes the disallowance of her claim because "GMAC added on money to my mortgage to be paid after my

8

ny-1214390

principal has been paid. This amount consisted of fees and penalties and should have been excused." <u>See</u> Tammaro Response.

29.   Assuming Ms. Tammaro is referring to the $29,563.26 in deferred principal, Ms. Tammaro agreed to this amount when she executed the Loan Modification, which clearly indicated that the deferred principal would not be paid as part of her monthly payment but would be paid at the end of her repayment without accruing any interest. <u>See</u> Loan Modification § 3.C. Additionally, Ms. Tammaro signed the balloon payment rider that was attached to the Loan Modification and also clearly explained the existence of the deferred principal. <u>See id</u>.

30.   If Ms. Tammaro is referring to the $18,473.84 that was added to her original principal balance, this additional amount was due to unpaid fees and interest that were added pursuant to the Note and were agreed to as part of the Loan Modification. <u>See</u> Tammaro Note § 6 and Tammaro Mortgage §§ 2, 5, and 7; <u>see also</u> Loan Modification § 3.B. Ms. Tammaro has offered no reason that such fees were inappropriate or should be excused. As a result, Ms. Tammaro fails to state a claim against the Debtors' estates.

    **B.   Cooper Claim**

31.   The Coopers assert in the Cooper Response that GMACM, in alleged violation of the Note, failed to close the Cooper HELOC after the Coopers allegedly mailed a letter requesting that it be closed. <u>See</u> Cooper Response ¶ 5. As stated in the <u>Exhibit A</u> to the Proposed Order, the Debtors have no record of receiving the letter attached to the Cooper Response. Furthermore, even if such letter had been sent, any claim the Coopers had for breach of contract for failing to close the Cooper HELOC is waived and barred by the statute of limitations.

32.   The statute of limitations for breach of contract in New Hampshire is three years. <u>See</u> N.H. REV. STAT. § 508.4 (LexisNexis 2015). Since the Coopers allegedly attempted to close

the Cooper HELOC in May of 2005, any cause of action arising from GMACM's failure to close the Cooper HELOC would have expired in May 2008, long before the Petition Date.

33. Furthermore, as stated in ¶ 23 *supra* and admitted by the Coopers in ¶ 7 of the Cooper Response, the Coopers made multiple draws on the Cooper HELOC after they allegedly attempted to have it closed. This amounts to a waiver of any breach of contract cause of action that may be asserted. See Rollins v. McDonald, 7 F.2d 422, 425 (1st Cir. 1925) (applying New Hampshire law and finding that the plaintiff's knowledge of a violation of a provision of a contract and the failure to protest or to insist upon the performance of the contract was a waiver of that provision of the contract); see also Forbes Farm P'ship v. Farm Family Mut. Ins. Co., 769 A.2d 366, 370 (N.H. 2001) ("To establish waiver, the plaintiff must show explicit language indicating the defendant's intent to forego a known right, or conduct from which it may be inferred that the defendant abandoned this right."). Here, the Coopers waived their right to enforce the alleged termination of the Cooper HELOC when they continued to draw on the HELOC and make payments on the amount owing. They also never objected to the Cooper HELOC remaining open. This behavior demonstrates that the Coopers abandoned their right to protest that the Cooper HELOC was not closed in May 2005.

34. Additionally, the Coopers allege that in 2012 they repeatedly requested a history of the activity on their account and did not receive an appropriate response. See Cooper Response at ¶ 2. The Coopers do not allege how they were damaged by this alleged failure or why the documents provided were insufficient.

## CONCLUSION

35. WHEREFORE, the Borrower Trust respectfully submits that the relief requested in the Objection should be granted in its entirety.

10

ny-1214390

12-12020-mg    Doc 9396    Filed 12/11/15    Entered 12/11/15 15:25:08    Main Document
Pg 14 of 14

| | |
|---|---|
| Dated: December 11, 2015<br>New York, New York | /s/ Norman S. Rosenbaum<br>Norman S. Rosenbaum<br>Jordan A. Wishnew<br>Jessica J. Arett<br>MORRISON & FOERSTER LLP<br>250 West 55th Street<br>New York, New York 10019<br>Telephone: (212) 468-8000<br>Facsimile: (212) 468-7900<br><br>*Counsel for the ResCap Borrower Claims Trust* |

11

ny-1214390