**Exhibit K**

Identifier: ▊0840       Doc Type:MTGR

(B) GMAC
100 Witmer Rd,
Horsham PA 19044-0963

HG60/r-

```
Doc# 527038
Book: 2561
Pages: 1925 — 1934
Filed & Recorded
    09/02/2003 03:54:57 PM
KATHI L. GUAY, CPO, REGISTER

MERRIMACK COUNTY REGISTRY OF DEEDS
    RECORDING      $   46.00
    SURCHARGE      $    2.00
    POSTAGE        $    0.60
```

**Book 2561    Page 1925**

**Account No.:** ▊0840
Branch No.: 168
Loan Product: 90% CLTV Piggyback

MIN ▊084-1

# MORTGAGE

## THIS MORTGAGE SECURES OBLIGATORY FUTURE ADVANCES

**THIS MORTGAGE,** as amended and extended *(this "Mortgage")* is signed to secure advances under a GMAC Home Equity Line of Credit agreement *(the "Agreement")*; it is dated as of <u>August 25, 2003</u>, and is made by  Thomas G. Cooper Catherine D. Cooper, who reside(s) at 175 South Street , Concord, New Hampshire,  03301as mortgagor(s), in favor of  GMAC Mortgage Corporation, a Pennsylvania Corporation, 100 Witmer Road, Horsham, PA  19044-0963 (herein "GMAC") and the Mortgage Electronic Registration Systems, Inc., P.O. Box 2026, Flint, MI  48501-2026 ("MERS") acting solely as nominee for GMAC and GMAC's successors and assigns under this Mortgage, as mortgagee.

Throughout this Mortgage, "we", "us" and "our" refer to mortgagor(s).  "GMAC" refers to GMAC Mortgage Corporation, a Pennsylvania Corporation located at 100 Witmer Road, Horsham, PA 19044-0963 or its assigns.  The "Account" refers to the Home Equity line of credit account established by GMAC under the Agreement.  "Borrower" refers to each person who signs the Agreement as borrower.  The Agreement and this Mortgage, taken together, are called the "Credit Documents." "Signer" refers to any person (other than GMAC) who has signed a Credit Document.

**DESCRIPTION OF SECURITY**

By signing this Mortgage, we mortgage to MERS acting solely as a nominee for GMAC, subject to the terms of this Mortgage, (a) the real estate located at 175 South Street , Concord, County of Merrimack, State of New Hampshire 03301, more fully described in Schedule A; (b) all buildings and other structures on the property; (c) all rights we may have in any road, alley, easement or license regarding the property or in any mineral, oil, gas or water which is part of the property; (d) all rents and royalties from the property; (e) to the extent permitted by law, all proceeds of any insurance on the property and all refunds of premiums on such insurance; (f) all proceeds of any taking (or threatened taking) of the property by any governmental authority *("condemnation");* and (g) all fixtures on the property at any time *(collectively, the "Property")*.

GMAC-NH

12-12020-mg    Doc 9396-13    Filed 12/11/15    Entered 12/11/15 15:25:08    Decl.
Exhibit K    Pg 3 of 11

Book 2561   Page 1926

The Property includes all rights and interests which we now have or which we may acquire in the future. For example, if the security mortgaged under this Mortgage is a leasehold estate and we subsequently acquire fee title to the Property, the rights and interests granted to MERS acting solely as a nominee for GMAC by this Mortgage will include the fee title that we acquire. This Mortgage is also a Security Agreement under the New Hampshire Uniform Commercial Code and we hereby grant MERS acting solely as a nominee for GMAC a security interest in the personal property described in (d) through (g) above.

**SECURED OBLIGATIONS**

**THIS MORTGAGE SECURES OBLIGATORY FUTURE ADVANCES.**

We have signed this Mortgage to secure payment to GMAC of up to $50,000.00, plus FINANCE CHARGES and any other amounts due GMAC under the Agreement *(the "Total Balance Outstanding")* and to secure performance by Borrower under the Agreement and our performance of the covenants of this Mortgage *(collectively, the "Secured Obligations")*.

**PRIORITY OF ADVANCES**

The lien of this Mortgage will attach on the date this Mortgage is recorded. The indebtedness evidenced by the Credit Documents is a revolving indebtedness. The Credit Documents provide that amounts may be advanced, repaid and readvanced from time to time in accordance with the terms and provisions of the Agreement. Accordingly, the aggregate advances during the term of the Credit Documents may exceed the Credit Limit. However, the Total Balance Outstanding less FINANCE CHARGES at any time *(the "Earning Balance Outstanding")* shall never exceed the Credit Limit, except for advances made to protect the lien of this Mortgage. We agree that the lien and security title of this Mortgage shall not be deemed released or extinguished by operation of law or implied intent of the parties if the Total Balance Outstanding is zero as of the date of this Mortgage or is from time to time reduced to zero by payments made to GMAC.

**REPRESENTATIONS AND DUTIES**

We promise that, except for Permitted Liens: (a) we own the Property; (b) we have the right to mortgage the Property to GMAC; and (c) there are no outstanding claims or charges against the Property. The term "Permitted Lien" means (x) any mortgage, deed to secure debt or deed of trust *("security instrument")* disclosed to GMAC by any Signer in applying for the Account, to the extent that the amount secured by such security instrument does not exceed the amount disclosed on such application; and (y) any liens, claims and restrictions of record that do not individually or collectively have a material adverse impact upon GMAC's security, the value of the Property or the Property's current use.

Each of us gives a general warranty of title to GMAC. This means that each of us will be fully responsible for any losses which GMAC suffers because someone has rights in the Property other than Permitted Liens. We promise that we will defend our ownership of the Property against any claims of such right.

We will neither take nor permit any action to partition, subdivide or change the condition of title to all or any part of the Property. We will not amend any Permitted Lien without GMAC's prior written consent.

12-12020-mg    Doc 9396-13    Filed 12/11/15    Entered 12/11/15 15:25:08    Decl.
Exhibit K    Pg 4 of 11

BOOK 2561  Page 1927

**CERTAIN PROVISIONS OF THE AGREEMENT**

We understand that GMAC may, under certain circumstances set forth in the Agreement, cancel its obligation to make future advances and/or require repayment at once of the Total Balance Outstanding.

Under the Agreement, FINANCE CHARGES are based on the "prime rate" published in The Wall Street Journal or in certain circumstances the "prime rate" published in The New York Times or a similar index selected by GMAC. The rate of FINANCE CHARGES changes on a daily basis as the index or the amount outstanding under the Agreement increases or decreases. We understand that Borrower will not receive advance notice of such changes.

**PROMISES AND AGREEMENTS**

We agree with GMAC as follows:

**1. TIMELY PAYMENT.** Except as limited by paragraph 10 below, Borrower shall pay when due all sums owed GMAC under the Credit Documents.

**2. APPLICATION OF PAYMENTS.** All payments shall be applied by GMAC as set forth in the Agreement.

**3. MORTGAGES AND DEEDS OF TRUST; CHARGES; LIENS.** We shall make payments when due and perform all our obligations under any mortgage, deed of trust or other security agreement on the Property.

We shall pay or cause to be paid when due all loans, taxes, assessments, charges, fines, impositions and rents of any kind relating to the Property *("Assessments")*. Receipts evidencing such payments shall be delivered to GMAC upon its request. Except for Permitted Liens, we shall not allow any encumbrance, charge or lien on the Property to become prior to this Mortgage.

**4. HAZARD INSURANCE; CONDEMNATION.**

(a) We shall, at our cost, keep all improvements on the Property insured against loss caused by hazards included in the term "extended coverage" or by other hazards GMAC may reasonably specify. Hazard insurance shall be in an amount equal to the lesser of (i) the full replacement cost of the building that is part of the Property or (ii) the amount of this Mortgage plus the total amount of all Permitted Liens; but never less than the amount necessary to satisfy any coinsurance requirement contained in the insurance policy.

We may choose the insurance company, subject to approval by GMAC which may not be unreasonably withheld. All insurance policies and renewals must be in a form acceptable to GMAC and must include a standard mortgagee clause in favor of GMAC. GMAC shall have the right to hold the policies and renewals, subject to the terms of any Permitted Liens. If we pay the premiums directly, we shall provide GMAC with all renewal notices and, if requested by GMAC, all receipts for premiums. If policies and renewals are held by any other person, we shall supply copies of them to GMAC within ten calendar days after they are issued.

12-12020-mg    Doc 9396-13    Filed 12/11/15    Entered 12/11/15 15:25:08    Decl.
Exhibit K    Pg 5 of 11

Book 2561   Page 1928

In the event of loss, we shall give prompt notice to the insurance company and GMAC. GMAC may file a proof of loss if we fail to do so promptly.

(b) The proceeds of any condemnation of the Property shall be paid to GMAC, subject to any Permitted Liens. We shall give GMAC notice of any threatened condemnation and sign all documents required to carry out this paragraph 4. No condemnation settlement may be made without GMAC's prior written approval which shall not be unreasonably withheld.

(c) Subject to the terms of any Permitted Lien, GMAC may elect that the proceeds of any insurance or condemnation (after payment of all reasonable costs, expenses and attorneys' fees paid or incurred by GMAC and us) shall be applied to pay the Secured Obligations, to repair or reconstruct the Property, and/or pay us for our loss. In the event that such proceeds are not used entirely for repair and reconstruction, we shall provide GMAC with a new appraisal or valuation of the Property, conducted by a person or entity and in a form reasonably acceptable to GMAC, unless GMAC waives this requirement in writing. The receipt of proceeds shall not cure or waive any default or notice of default under this Mortgage or invalidate any act done pursuant to such notice.

If the Property is abandoned by us, or if we fail to respond to GMAC in writing within 30 calendar days from the date notice of a proposed insurance or condemnation settlement is given to us, GMAC may settle the claim, collect the proceeds and apply them as set forth above.

If the Property is acquired by GMAC, all of our right, title and interest in and to any insurance or condemnation proceeds shall become the property of GMAC to the extent of the sums secured by this Mortgage.

**5. MAINTENANCE OF THE PROPERTY; LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** We shall: use, improve and maintain the Property in compliance with law; keep the Property in good repair and pay when due all repair costs; prevent waste, impairment and/or deterioration of the Property; and comply with the provisions of any lease of the Property.

If the Property is part of a condominium project or a planned unit development, we shall promptly perform all of our obligations under the governing documents of the project or development.

**6. PROTECTION OF GMAC SECURITY.** We shall appear in and defend any action or proceeding which may affect the security of GMAC under this Mortgage or result in a violation of paragraph 3 above. If such an action is filed, we violate this Mortgage or Borrowers violate the Agreement, then GMAC may disburse funds and do whatever it believes necessary to protect the security of this Mortgage. In doing so, GMAC shall give us notice but it need not make demand or release us from any obligation.

Any amounts paid by GMAC under this paragraph 6, with FINANCE CHARGES at the variable rate in effect under the Agreement, shall be paid by us upon demand. Until paid by us, such amounts are secured by this Mortgage. GMAC is not required to incur any expense or take any action under this Mortgage and no action taken shall release us from any duty.

**7. INSPECTION.** Representatives of GMAC may inspect the Property from time to time. Except in an emergency, GMAC must first give notice specifying reasonable cause for the inspection.

12-12020-mg    Doc 9396-13    Filed 12/11/15    Entered 12/11/15 15:25:08    Decl.
Exhibit K    Pg 6 of 11

Book 2561   Page 1929

**8. FINANCE CHARGES AFTER END OF ACCOUNT AND/OR JUDGMENT.** To the extent permitted by law, we agree that FINANCE CHARGES after the end of the Account and/or after a judgment is entered shall continue to accrue at the rates and in the manner specified in the Agreement.

**9. OUR CONTINUING DUTIES AND GMAC'S RIGHTS; WAIVERS.** No waiver of any GMAC right under the Credit Documents shall release or limit our liability, Borrower's liability, or that of our successors or Borrower's successors, nor shall any waiver affect the lien or priority of this Mortgage. GMAC shall not be required to start proceedings against any successor or modify payment terms by reason of any demand made by us or any successor.

No GMAC act or failure to act shall waive any right under this Mortgage. All waivers must be in writing and signed by GMAC; they shall apply only to the extent and with respect to the event specified in the writing. Obtaining insurance, or paying taxes, other liens or charges shall not be a waiver of GMAC's right to demand payment at once of the sums secured by this Mortgage in the event of a default under the Credit Documents.

**10. SUCCESSORS AND ASSIGNS; JOINT AND SEVERAL LIABILITY; CO-SIGNERS.** This Mortgage shall bind us and our respective successors and permitted assigns for the benefit of GMAC and its successors and assigns. All agreements made by us or any successor are joint and several and may be enforced against each of us or any successor.

Any Signer who does not execute the Agreement (a) is co-signing only to encumber that person's interest in the Property and to release all homestead and/or dower rights, (b) is not personally liable under the Credit Documents, and (c) agrees that GMAC and any Signer may modify either Credit Document, without consent and without modifying the interests of the rest of us under this Mortgage.

**11. NOTICES.** All notices shall be in writing. Except where applicable law requires otherwise:

(a) GMAC notices shall be hand delivered or mailed by first class, registered or certified mail to the address of the Property or to such other address specified by the addressee in a written notice given to GMAC. Any GMAC notice shall be considered given on the day it is deposited in the U.S. mail or is hand-delivered.

(b) Our notices shall be mailed to GMAC by first class, registered or certified mail to the address for such notices specified on our most recent monthly statement under the Agreement or to such other address specified by GMAC in a written notice given to us. Any such notice shall be considered given on the day it is received by GMAC.

**12. GOVERNING LAW.** This Mortgage will be governed by federal and New Hampshire law. If any provision is invalid, illegal, or unenforceable, this Mortgage shall be interpreted as if such provision had never been included.

**13. COPIES.** We shall receive copies of the Credit Documents at the time they are signed or after this Mortgage is recorded.

12-12020-mg    Doc 9396-13    Filed 12/11/15    Entered 12/11/15 15:25:08    Decl.
Exhibit K    Pg 7 of 11

Book 2561   Page 1930

**14. EXERCISING REMEDIES.** GMAC may exercise all of the rights and remedies provided by the Credit Documents or law, and any of these rights and remedies may be exercised individually or jointly, once or a number of times. The parties to this document are subject to the provision for Arbitration as set forth in the Agreement which is incorporated by reference as if set forth at length herein.

**15. EVENTS OF DEFAULT.**

(a) The events set forth in paragraph 15(b) are Events of Default if and when GMAC gives any Signer notice of default. We agree to notify GMAC promptly upon the happening of any event that would be an Event of Default under either Credit Document upon the giving of notice by GMAC.

(b) After giving notice of default, GMAC may end the Account and/or demand repayment at once of the Total Balance Outstanding in any of the following events:

(i) There has been fraud or material misrepresentation by any Signer in connection with the Account;

(ii) Borrowers have failed to meet the repayment terms of the Agreement for any amount outstanding; or

(iii) Any action or inaction by any Signer has adversely affected the Property or any right of GMAC in the Property; to the extent permitted by law, this will include, but not be limited to, any Signer (or any legal representative or successor of any Signer) agreeing to sell, transfer or assign or selling, transferring or assigning any interest in the Property, without the prior written consent of GMAC.

(c) Notwithstanding any language in this Mortgage to the contrary, GMAC will not give notice of default unless permitted by applicable law and GMAC will give us any grace period, right to cure and/or reinstatement right required by applicable law. This paragraph 15 is intended to give GMAC all rights permitted by applicable law.

**16. REMEDIES. IF BORROWERS DO NOT REPAY AT ONCE THE TOTAL BALANCE OUTSTANDING WHEN DUE, GMAC MAY EXERCISE ANY REMEDY AVAILABLE TO IT UNDER APPLICABLE LAW, INCLUDING FORECLOSURE.**

**17. FORECLOSURE BY ADVERTISEMENT.** We hereby grant GMAC upon an Event of Default the STATUTORY POWER OF SALE to sell or cause the sale of the Property at public auction at some place in any town in which any portion of the Property is situated and to convey the Property to the purchaser in the manner provided by law. GMAC may sell the Property without affording us a hearing or giving us actual notice in person. However, GMAC shall publish notice in a newspaper as required by law.

**18. APPOINTMENT OF RECEIVER.** Upon an Event of a Default or our failure to pay taxes assessed against the Property and/or insurance premiums on the Property (which we agree shall constitute waste), GMAC shall be entitled to the appointment of a receiver if permitted by law.

**19. SATISFACTION OF MORTGAGE.** Upon payment and discharge of all sums secured by this Mortgage and termination of the Account, this Mortgage shall be void and GMAC shall satisfy this Mortgage, file a discharge or release and pay any recording costs.

**20. REQUEST FOR NOTICES.** GMAC requests that copies of notices of default, sale and foreclosure from the holder of any lien which has priority over this Mortgage be sent to GMAC at 100 Witmer Road, Horsham, PA 19044-0963.

**21. EXHIBITS, SCHEDULES AND RIDERS, ETC.** The terms of any Exhibit, Schedule or Rider attached to this Mortgage or executed and recorded with this Mortgage shall be treated as if fully set forth in this Mortgage. All of the terms of the Agreement are made part of this Mortgage.

**22. TIME OF ESSENCE.** Time is of the essence in this Mortgage.

**23. ACTUAL KNOWLEDGE.** For purposes of the Credit Documents, GMAC shall not be deemed to have actual knowledge of any fact until it actually receives notice as set forth in paragraph 11 or until it receives written notice thereof from a source GMAC reasonably believes to be reliable. The date of receipt shall be determined by reference to the "Received" date stamped on such written notice by GMAC or its agent.

**24. RELEASE.** To the extent permitted by law, for ourselves and our successors and assigns, we hereby release all homestead and dower rights and benefits.

**25. EXPENSES OF LITIGATION.** In any proceeding to enforce any remedy of GMAC under the Credit Documents there shall be allowed and included, to the extent permitted by law, as additional indebtedness in the judgment or decree, any court costs and reasonable expenses which may be paid or incurred by GMAC for attorneys; appraisers; documentary and expert evidence; stenographers; publication; surveys; abstracts of title; title searches; title insurance policies; Torrens certificates; and similar items which GMAC reasonably considers necessary in such proceeding or to evidence to bidders at any sale the true condition of the title to or value of the Property. Such expenses may be estimated to the extent they will be incurred after entry of the decree. In any foreclosure by advertisement, all expenses permitted by statute that GMAC incurs in protecting the Property, maintaining the lien of this Mortgage and foreclosing this Mortgage shall be included in the redemption price.

**26. CAPTIONS; GENDER; ETC.** The headings in this Mortgage are not to be used to interpret or define its provisions. In this Mortgage, the masculine gender includes the feminine and/or neuter, singular numbers include the plurals, and plurals include the singular.

**27. MERS.** Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Mortgage, but, if necessary to comply with local law or custom MERS (as nominee for GMAC and GMAC's successors and assigns) has the right: to exercise any or all of these interests, including, but not limited to, the right to foreclose and sell the property; and to take any action required of Lender including but not limited to, releasing and canceling this Mortgage.

By signing this Mortgage, we agree to all of the above. *And I Thomas G. Cooper spouse of the above mortgagor hereby release my right of homestead and any other interests in the above mentioned property. *Julie L Clark*

_____
Thomas G. Cooper
MORTGAGOR

*Witness to both.*

_____
Catherine D. Cooper
MORTGAGOR

_____
MORTGAGOR

_____
MORTGAGOR

_____
MORTGAGOR

_____
MORTGAGOR

STATE OF NEW HAMPSHIRE )
COUNTY OF Merr. ) ss.

On the __25__ day of __Aug__, __2003__, before me personally came Thomas G. Cooper Catherine D. Cooper to me known to be the individual(s) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same.

_____
Julie L Clark
Notary Public

__Merrimack__ County, New Hampshire
My Comm. Expires: _____

[Notary Seal: JULIE L CLARK, STATE OF NEW HAMPSHIRE, MY COMMISSION EXPIRES OCTOBER 27, 2[?], NOTARY PUBLIC]

Identifier: 0840   Doc Type:MTGR

12-12020-mg   Doc 9396-13   Filed 12/11/15   Entered 12/11/15 15:25:08   Decl.
Exhibit K   Pg 10 of 11

**Book 2561   Page 1933**

| MORTGAGE | THIS INSTRUMENT PREPARED BY |
|---|---|
| | Wendy Cyr |
| Title No. _____ | GMAC Mortgage Corporation |
| _____ | 4 Walnut Grove Drive |
| | Horsham, PA 19044-0963 |

TO

Recorded At Request of
GMAC Mortgage Corporation

RETURN BY MAIL TO:

GMAC Mortgage Corporation
Home Equity Funding
4 Walnut Grove Drive
Horsham, PA 19044-0963

*RESERVE THIS SPACE FOR USE OF RECORDING OFFICE*

Book 2561    Page 1934

## SCHEDULE A

Three tracts of land, with the buildings thereon, situate in Concord, Merrimack County, New Hampshire, bounded and described as follows:

Tract I. Beginning on the easterly side of South Street at the southwesterly corner of land now or formerly of J.W. King; thence easterly by said King land 257 feet, more or less, to a fence corner; thence southerly by the fence; by land now or formerly of Isaac W. Bushey Estate 100 feet; thence westerly by said Bushey land 312 feet, more or less, to South Street; thence northerly by said Street 100 feet to the point of beginning.

Tract II. Beginning on the easterly side of South Street at the southwesterly corner of land now or formerly of Barton P. Bachelder, said point being also 100 feet south of the southwesterly corner of land of King; thence S. 88 degrees 52 minutes E. by Bachelder land 300.6 feet to a bound; thence S. 4 degrees E. by land of Isaac W. Bushey Estate, 130.3 feet; thence N. 68 degrees 50 minutes W. by land now or formerly of Philip Cedergren 337.9 feet to South Street; thence N. 21 degrees 10 minutes E. by said Street 15 feet to the point of beginning.

Tract III: Begin situate in the rear of land at 175 South Street. Beginning at the south boundary line of Deer Park, owned by the City of Concord, at the northeasterly corner of land now or formerly of Barton P. Bachelder; thence easterly by Deer Park to the center of a brook; thence southerly by the center of said brook to a stone marker where the brook meets the west bank of gulley at the northwest corner of land now or formerly of Charles M. and Dorothy A. Falconer; thence south by said Falconer land about 165 feet to a stone marker; thence westerly to a gas pipe at the southeasterly corner of land now or formerly of Leslie Clark; thence northerly about 315 feet, by land now or formerly of Leslie Clark and land of said Bachelder, to the point of beginning.

Subject to right-of-way contained in deed dated December 21, 1923 and recorded in Merrimack County Registry of Deeds at Book 468, Page 239.

Subject to easements contained in deed dated March 7, 1983 recorded in said Registry at Book 1437, Page 952.

ORIGINAL NOT SUITABLE FOR PROPER REPRODUCTION

**MERRIMACK COUNTY RECORDS**

*Kathi L. Guay*, CPO, Register