**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re:                                                      :
                                                            :
                                                            :
      RESIDENTIAL CAPITAL, LLC, *et. al.*         :    Chapter 11
                                                            :    Case No. 12-12020 (MG)
                                                            :
                       Debtors,                  :
------------------------------------------------------------x
                                                            :
THE RESCAP BORROWER CLAIMS,                                 :
    TRUST,                                                :
                                                            :
                       Objector,                 :
                                                            :
        - against -                                :
                                                            :
Kristin Karmazyn,                                           :    PRETRIAL ORDER
                                                            :    (PROPOSED)
                       Claimant.                 :
                                                            :
------------------------------------------------------------x

       The Borrower Trust and Claimant having conferred, and having conferred with the Court pursuant to Fed. R. Civ. P. 16, the following statements, directions and agreements are adopted as the Pretrial Order herein.

I.      NATURE OF THE CASE

       Kristin Karmazyn ("Claimant") obtained a loan from Equifirst Corporation ("Equifirst") pursuant to the terms of a note dated August 5, 2005 (the "Note"). The Note was secured by a mortgage (the "Mortgage" and, together with the Note, the "Loan") in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Equifirst and its successors and assigns. Homecomings Financial, LLC ("Homecomings"), one of the debtors in the above captioned chapter 11 cases (collectively, the "Debtors"), began servicing the loan on October 1, 2005. On or around July 1, 2009, servicing of the loan was transferred to GMAC Mortgage, LLC ("GMAC Mortgage"), another of the debtors.

       Homecomings, after a failed loss mitigation attempt, approved the loan for a traditional modification on January 15, 2009. Homecomings received the modification documents and a personal check for the initial payment on January 30, 2009, however, the check was returned because the modification required that the payment be made via certified funds. The returned check was accompanied by a letter to Claimant explaining the reason it was being returned.

1

On March 20, 2009, Homecomings reset the loan modification and a traditional trial plan was set up on the account. Homecomings received a $4,000 contribution payment from Claimant on March 24, 2009. On April 21, 2009, Homecomings received a subsequent payment in the form of a personal check and returned the check to Claimant because the account required that any payment be made in certified funds. A representative of Homecomings explained to Claimant the reason that the payment was returned during a phone conversation on April 21, 2009. Even though the Claimant made a payment on May 4, 2009, it was not in the amount required under the trial plan, and as a result, the plan was cancelled on May 14, 2009.

In order to allow Claimant to submit missing documents needed to complete a modification review, GMAC Mortgage set up a five-month foreclosure repayment plan on the account on July 29, 2009. However, the plan was cancelled on September 15, 2009. GMAC Mortgage sent a letter to Claimant on September 7, 2009 informing her that the plan was cancelled.

GMAC Mortgage returned a payment in the amount of $1,530 on September 23, 2009 because it was not enough to reinstate the account given that the repayment plan was no longer active. The returned payment was accompanied by a letter explaining the reason it was being returned.

On September 24, 2009, Claimant and a representative of GMAC Mortgage spoke via phone and Homecomings initiated a new trial plan on Claimant's account. The new trial plan required that Claimant make a payment of $1,244.65 by October 5, 2009. During the conversation, the GMAC Mortgage representative informed Claimant that a foreclosure sale was scheduled for October 7, 2009 and that the sale would not be stopped unless the payment was received by October 5, 2009.

The Borrower Trust asserts that GMAC Mortgage did not timely receive the payment and as a result the trial plan was cancelled on October 7, 2009 and the foreclosure sale was conducted. At the time of the foreclosure sale, Claimant's account was owing for the November 2008 through October 2009 payments. GMAC Mortgage acknowledges that it received a payment in the amount of $1,244.65 on October 7, 2009, but it was not enough to reinstate the account and was returned that same day with a letter explaining the reason for the return. GMAC Mortgage asserts that Claimant was provided a copy of the order authorizing the sale, which was filed on April 1, 2009, as well as a "Combined Notice of Sale and Right to Cure and Redeem."

Claimant asserts that she sent a money order in the amount of $1,244.65 to Homecomings on October 3, 2009 and that as a result the foreclosure repayment plan should not have been cancelled. Claimant also asserts that she was not provided any notice of the foreclosure sale.

2

Claimant asserts that GMAC Mortgage's conducting of the foreclosure sale after its alleged improper cancellation of the foreclosure repayment plan resulted in a loss of credit, costs associated with renting after the foreclosure sale, lost equity in their house, mental health care for her child, and emotional distress damages resulting from a strain on her marriage.

II.  BASIS FOR JURISDICTION, WHETHER THE CASE IS CORE OR NON-CORE, AND WHETHER THE BANKRUPTCY JUDGE MAY ENTER FINAL ORDERS OR JUDGMENT

This Court has core jurisdiction to hear and decide this matter under 28 U.S.C. sections 1334(a), 1334(b), 157(a), 157(b)(1), 157(b)(2)(B), 157(c)(2) (if needed), by consent of the parties and the Amended Standing Order of Reference in Case No. 12 MISC 00032 (filed February 1, 2012, Dkt. No. 1).  *See also Erisksen v. Residential Capital, LLC*, No. 14- CV-7205 (S.D.N.Y. Dec. 18, 2014) (holding that the presence of a claim for emotional distress damages does not convert a matter into one governed by 28 U.S.C. section 157(b)(5)).  The Borrower Trust submits that this is a core matter with respect to which the bankruptcy court may enter final orders.

III.  STIPULATED FACTS

1. On August 5, 2005, EquiFirst originated a mortgage loan (the "Mortgage Loan") in the amount of $294,500.00, plus interest to Michael and Kristin Karmazyn.

2. The Mortgage Loan is evidenced by a Note to EquiFirst executed by the Michael and Kristin Karmazyn on August 5, 2005.

3. The Mortgage Loan is secured by a deed of trust on 5153 South Ukraine Street, Aurora, CO 80015.

4. Debtor Residential Funding Company, LLC ("Residential Funding") purchased the Mortgage Loan from Equifirst and transferred its interest in the Mortgage Loan when the Mortgage Loan was securitized on or around May 1, 2007 where U.S. Bank, N.A. was appointed as trustee.

5. Homecomings serviced the Mortgage Loan from October 1, 2005 until servicing was transferred to GMACM on July 1, 2009.

6. GMACM serviced the loan until October 7, 2009.

7. Claimant made the monthly payments due on the Mortgage Loan from origination of the Mortgage Loan through August 1, 2008.

8. Claimant and/or Michael Karmazyn provided GMACM with information for a loan modification in December 2008.

9. On or around January 12, 2009, Claimant and/or Michael Karmazyn discussed a possible loan modification with a representative of Homecomings.

3

ny-1213492

10. During the conversation on January 12, 2009, Claimant and/or Michael Karmazyn was informed that Homecomings was reviewing the account for a modification and that the initial contribution under any modification would need to be made with certified funds.

11. Claimant and/or Michael Karmazyn was informed by Homecomings in January 2009 that the Mortgage Loan had been approved for a traditional loan modification (the "January 2009 Modification").

12. In January 2009, Claimant and/or Michael Karmazyn sent to the Debtors documents to complete the January 2009 Modification, as well as a personal check for the initial contribution amount required under the modification (the "January 2009 Payment").

13. Claimant and/or Michael Karmazyn received a letter, dated January 30, 2009, from Homecomings explaining that the January 2009 Payment was being returned because said payment needed to be made in certified funds.

14. On or around March 11, 2009, Claimant and/or Michael Karmazyn sent a personal check to Homecomings in the amount of $4,000 (the "March 2009 Payment").

15. Claimant and/or Michael Karmazyn received a letter, dated March 11, 2009, from Homecomings explaining that the March 2009 Payment was being returned because said payment needed to be made in certified funds.

16. On or around March 24, 2009, Claimant and/or Michael Karmazyn sent to Homecomings the signed March 2009 Trial Plan agreement and the required initial contribution payment of $4,000.

17. The March 2009 Trial Plan agreement signed by Claimant and/or Michael Karmazyn required payments made under the March 2009 Trial Plan to be made via certified funds.

18. Claimant and/or Michael Karmazyn sent a personal check to Homecomings on or around April 21, 2009 (the "April 2009 Payment").

19. Claimant and/or Michael Karmazyn received a letter, dated April 21, 2009, from Homecomings explaining that the April 2009 Payment was being returned because said payment needed to be made in certified funds.

20. On or around May 4, 2009, Claimant and/or Michael Karmazyn spoke to a representative of GMACM via phone, at which time the representative of Homecomings explained that the reason that the April 2009 Payment was returned was because it was not made in certified funds.

21. Claimant and/or Michael Karmazyn made a payment of $2,000.00 on or around May 4, 2009 (the "May 2009 Payment").

4

22. The May 2009 Payment was not the amount required under the March 2009 Trial Plan.

23. Claimant and/or Michael Karmazyn received a letter from Homecomings on or around May 14, 2009 informing her/them that the March 2009 Trial Plan had been cancelled because Claimant did not make the necessary payments.

24. Claimant and/or Michael Karmazyn sent a $2,000 payment on the account on or around June 2, 2009 (the "June 2009 Payment").

25. On or around July 29, 2009, Claimant and/or Michael Karmazyn was informed by GMACM that the Mortgage Loan was approved for a five-month foreclosure repayment plan (the "Foreclosure Repayment Plan").

26. On or around August 3, 2009, Claimant and/or Michael Karmazyn made a payment under the Foreclosure Repayment Plan.

27. On or around September 23, 2009, Claimant and/or Michael Karmazyn received a letter from GMACM informing her/them that the September 2009 Payment was not enough to reinstate the account.

28. On or around September 24, 2009, Claimant spoke with a representative of GMACM via phone (the "September 24 Phone Conversation"), at which time Claimant was informed that a trial plan would be initiated on the account (the "Trial Plan").

29. During the September 24 Phone Conversation, Claimant was informed that the Trial Plan would require a payment of $1,244.65 to be made on or before October 5, 2009 (the "Trial Plan Payment").

30. During the September 24 Phone Conversation, Claimant and/or Michael Karmazyn was again informed that a foreclosure sale of the Property was scheduled for October 7, 2009 and that the Trial Plan Payment would need to be received by October 5, 2009 in order to stop the foreclosure.

31. On or around October 7, 2009, Claimant and/or Michael Karmazyn received a letter from GMACM informing her/them that the Final Mortgage Payment was not enough to reinstate the account.

IV. PARTIES' CONTENTIONS

The pleadings are deemed amended to embrace the following, and only the following, contentions of the parties:

5

**A.    Claimant's Contentions**

1. The trust states that several payments were not paid from 2008 to October 2009. Per the trust statements and the Karmazyn Wells Fargo bank statements a total of $22,345.00 were accepted and enough to cover any of the modifications. Payments were accepted and taken by loan holders.

2. The loan modification dated January that was filed and notarized by Arapahoe accessors did not state that the payment had to be certified funds. If this modification had been followed per contract no payments should have been returned. If these payments were accepted per contract there would be no issue with the following months for 02/2009 to 10/2009 the original modification would be in place. (Breach of contract)

3. On March 23, 2009 cashier check for $4,000.00 was received and cashed by Homecomings this payment shows in Homecomings statement but does not show in GMAC statement.

4. The claimants made two $2,000.00 payments made to Homecomings on or around May 6, 2009 and June 3, 2009 and the payments were applied to Homecomings statement but do not show on GMAC statement.

5. The claimants Wells Fargo statement show $11,100.00 between March 20, 2009 and August 3, 2009 in cashier checks and GMAC received and returned for wrong account. Per GMAC modification this was the right amount the payment should have been accepted (breach of contract).

6. The Claimant sent a payment for $1,530.00 between September 1 and September 6, 2009 by cashier checks and GMAC received and returned the wrong amount. Per GMAC modification this was the right amount the payment should have been accepted (breach of contract).

7. Per the trust statements GMAC received the October cashier late on 10/7 and that is what caused the foreclosure. Per the trust evidence submitted in numerous documents payment was received on 10/3 and returned for the wrong amount payment was made per signed modification plan in September. Per the GMAC the payment was received on 10/3/2009. The statement shows it was applied and then reversed. If GMAC didn't have the payment until the 7th this entry could not have been entered on the 3rd.

8. GMAC is claiming that the final foreclose notification was sent to the claimant, per the trust documents GMAC stated it was not sent and the claimant was notified by phone of foreclosure.

9. The claimant claims that the unapplied taxes and escrow did not have to be returned to the claimant for 2008-2009 because of the foreclosure they stated they had a right to keep credit to loss on the house. These amounts do not show in the foreclosure amounts?

6

ny-1213492

10. The claimant is claiming emotional and financial distress due to GMAC unlawfully foreclosing on the claimant's property. The Karmazyn three children each had therapy to help with the loss. The claimant had to rent which doubled their expenses and their credit has been ruined.

11. At the time of the original lawsuit the Claimant Mike Karmazyn was alive. He started receiving mental and medical help with the stress of this situation in November 2009. In 2013 the claimant developed esophageal cancer caused by "stress induced acid reflux and sleep deprivation." Moffitt Cancer, United Airlines EAP session, and University hospital records will show these findings. GMAC mistakes is the largest contributing factor in Mike Karmazyn's death.

12. The property that was foreclosed on by GMAC has recently sold and the selling price was $341,000.

B. **Borrower Trust's Contentions**

*Loan Origination, Ownership and Servicing*

13. On August 5, 2005, EquiFirst originated a mortgage loan (the "Mortgage Loan") in the amount of $294,500.00, plus interest to Michael and Kristin Karmazyn.

14. The Mortgage Loan is evidenced by a Note to EquiFirst executed by the Michael and Kristin Karmazyn on August 5, 2005.

15. The Mortgage Loan is secured by a deed of trust on 5153 South Ukraine Street, Aurora, CO 80015.

16. Debtor Residential Funding Company, LLC ("Residential Funding") purchased the Mortgage Loan from Equifirst and transferred its interest in the Mortgage Loan when the Mortgage Loan was securitized on or around May 1, 2007 where U.S. Bank, N.A. was appointed as trustee.

17. Homecomings serviced the Mortgage Loan from October 1, 2005 until servicing was transferred to GMACM on July 1, 2009.

18. GMACM serviced the loan until October 7, 2009.

*Loss Modification Efforts and Foreclosure*

19. Claimant made the monthly payments due on the Mortgage Loan from origination of the Mortgage Loan through August 1, 2008.

20. Claimant did not make the monthly payment due on the Mortgage Loan on September 1, 2008.

21. Claimant and/or Michael Karmazyn provided GMACM with information for a loan modification in December 2008.

7

22. On or around January 12, 2009, Claimant and/or Michael Karmazyn discussed a possible loan modification with a representative of Homecomings.

23. During the conversation on January 12, 2009, Claimant and/or Michael Karmazyn was informed that Homecomings was reviewing the account for a modification and that the initial contribution under any modification would need to be made with certified funds.

24. Claimant and/or Michael Karmazyn was informed by Homecomings in January 2009 that the Mortgage Loan had been approved for a traditional loan modification (the "January 2009 Modification").

25. In January 2009, Claimant and/or Michael Karmazyn sent to the Debtors documents to complete the January 2009 Modification, as well as a personal check for the initial contribution amount required under the modification (the "January 2009 Payment").

26. Claimant and/or Michael Karmazyn received a letter, dated January 30, 2009, from Homecomings explaining that the January 2009 Payment was being returned because said payment needed to be made in certified funds.

27. On or around March 11, 2009, Claimant and/or Michael Karmazyn sent a personal check to Homecomings in the amount of $4,000 (the "March 2009 Payment").

28. Claimant and/or Michael Karmazyn received a letter, dated March 11, 2009, from Homecomings explaining that the March 2009 Payment was being returned because said payment needed to be made in certified funds.

29. Claimant and/or Michael Karmazyn was informed by Homecomings on or around March 20, 2009 that the Mortgage Loan had been approved for a traditional trial modification plan (the "March 2009 Trial Plan"). The March 2009 Trial Plan required the Claimant and/or Michael Karmazyn to make an initial contribution payment of $4,000 on March 20, 2009 and additional payments of $2,035 on April 20 and May 20, 2009. Payments were required to be made in certified funds.

30. On or around March 24, 2009, Claimant and/or Michael Karmazyn sent to Homecomings the signed March 2009 Trial Plan agreement and the required initial contribution payment of $4,000.

31. The March 2009 Trial Plan agreement signed by Claimant and/or Michael Karmazyn required payments made under the March 2009 Trial Plan to be made via certified funds.

32. The monthly payment required under the March 2009 Trial Plan was $2,035.00.

33. Claimant and/or Michael Karmazyn sent a personal check to Homecomings on or around April 21, 2009 (the "April 2009 Payment").

34. Claimant and/or Michael Karmazyn received a letter, dated April 21, 2009, from Homecomings explaining that the April 2009 Payment was being returned because said payment needed to be made in certified funds.

35. On or around May 4, 2009, Claimant and/or Michael Karmazyn spoke to a representative of GMACM via phone, at which time the representative of Homecomings explained that the reason that the April 2009 Payment was returned was because it was not made in certified funds.

36. Claimant and/or Michael Karmazyn made a payment of $2,000.00 on or around May 4, 2009 (the "May 2009 Payment").

37. The May 2009 Payment was not the amount required under the March 2009 Trial Plan.

38. Claimant and/or Michael Karmazyn received a letter from Homecomings on or around May 14, 2009 informing her/them that the March 2009 Trial Plan had been cancelled because Claimant did not make the necessary payments.

39. Claimant and/or Michael Karmazyn attempted to make a $2,000 payment on the account on or around June 2, 2009 (the "June 2009 Payment").

40. The June 2009 Payment was returned to Claimant and/or Michael Karmazyn by Homecomings.

41. On or around July 29, 2009, Claimant and/or Michael Karmazyn was informed by GMACM that the Mortgage Loan was approved for a five-month foreclosure repayment plan (the "Foreclosure Repayment Plan").

42. On or around August 3, 2009, Claimant and/or Michael Karmazyn made a payment under the Foreclosure Repayment Plan.

43. Claimant and/or Michael Karmazyn did not make the Foreclosure Repayment Plan payment due September 5, 2009.

44. On or around September 17, 2009, Claimant and/or Michael Karmazyn received a letter from GMACM informing her/them that the Foreclosure Repayment Plan had been cancelled because Claimant and/or Michael Karmazyn did not make the necessary payment.

45. Claimant and/or Michael Karmazyn attempted to make a payment on the account in the amount of $1,530.00 on or around September 23, 2009 (the "September 2009 Payment").

9

ny-1213492

46. On or around September 23, 2009, Claimant and/or Michael Karmazyn received a letter from GMACM informing her/them that the September 2009 Payment was not enough to reinstate the account.

47. On or around September 24, 2009, Claimant and/or Michael Karmazyn spoke with a representative of GMACM via phone (the "September 24 Phone Conversation"), at which time Claimant and/or Michael Karmazyn was informed that a trial plan would be initiated on the account (the "Trial Plan").

48. During the September 24 Phone Conversation, Claimant and/or Michael Karmazyn was informed that the Trial Plan would require a payment of $1,244.65 to be made on or before October 5, 2009 (the "Trial Plan Payment").

49. During the September 24 Phone Conversation, Claimant and/or Michael Karmazyn was again informed that a foreclosure sale of the Property was scheduled for October 7, 2009 and that the Trial Plan Payment would need to be received by October 5, 2009 in order to stop the foreclosure.

50. GMACM received a payment in the amount of $1,244.65 on October 7, 2009, however, GMACM returned this payment because it was not enough to reinstate the account.

51. On or around October 7, 2009, Claimant and/or Michael Karmazyn received a letter from GMACM informing her/them that the Final Mortgage Payment was not enough to reinstate the account.

52. Claimant and/or Michael Karmazyn was provided with a "Combined Notice of Sale and Right to Cure and Redeem," as that term is defined on the Public Trustee's Certificate of Purchase, informing her/them of the foreclosure sale.

53. Claimant and/or Michael Karmazyn was provided with a copy of the Order Authorizing Sale, filed on April 1, 2009.

54. At the time of the foreclosure sale, the Mortgage Loan was owing for the November 2008 through October 2009 payments.

V.   ISSUES TO BE TRIED

1. Whether Claimant timely remitted payment under the Trial Plan on or before October 5, 2009.

2. Whether GMAC Mortgage provided notice of the Foreclosure Sale as required under Colorado law.

3. Whether any payments made on the Mortgage Loan by Claimant were improperly applied by Homecomings or GMAC Mortgage.

10

    4.     The extent of actual damages, if any, proximately caused to Claimant by GMAC Mortgage's alleged wrongful foreclosure of the Property.

## VI. CLAIMANT'S EXHIBITS

1. Original modification January filed with state
2. Wells Fargo Bank Statements
3. UPS Statement
4. Homecoming Financial Statements
5. GMAC Payment Statements
6. Children's Kaiser Medical Records
7. Michael Karmazyn Medical Records and Cause of Death Reports
8. Documentation related to "not receiving" "request of admissions" from trust October 12, 2015
9. 2015 House Appraisal
10. Trust document admitting errors

## VII. BORROWER TRUST'S EXHIBITS

A. Note, dated August 5, 2005

B. Mortgage, dated August 5, 2005

C. Loan History (i.e., Servicing Notes) for Loan account

D. Signed Adjustable Rate Loan Modification Agreement, dated February 1, 2009

E. January 30, 2009 Letter from Homecomings to Michael and Kristin Karmazyn describing reasons for returning personal check 1093

F. March 11, 2009 Letter from Homecomings to Michael and Kristin Karmazyn describing reasons for returning personal check 1115

G. Signed Repayment Agreement, dated March 23, 2009

H. April 21, 2009 Letter from Homecomings to Michael and Kristin Karmazyn describing reasons for returning personal check 1194

I. May 14, 2009 Letter from Homecomings to Michael and Kristin Karmazyn describing reasons for the cancellation of the repayment agreement

    J.    Signed Foreclosure Repayment Agreement, dated July 29, 2009

    K.    September 17, 2009 Letter from GMAC Mortgage to Michael and Kristin Karmazyn describing reasons for the cancellation of the foreclosure repayment agreement

    L.    September 23, 2009 Letter from Homecomings to Michael and Kristin Karmazyn describing reasons for returning official check 6365504983

    M.    Signed Foreclosure Repayment Agreement, dated September 24, 2009

    N.    October 7, 2009 Letter from Homecomings to Michael and Kristin Karmazyn describing reasons for returning official check 6365505039

    O.    Public Trustee's Certificate of Purchase, dated October 7, 2009, and attached exhibits

    P.    Requests for Admissions from Trust, dated October 12, 2015

No exhibit not listed by Claimant or the Borrower Trust may be used at trial except (a) for cross-examination purposes or (b) if good cause for its exclusion from the pretrial order is shown.

VIII.    STIPULATIONS AND OBJECTIONS WITH RESPECT TO EXHIBITS

    A.    The Parties Stipulate to the Authenticity and Admissibility of the Following Exhibits: N/A.

    B.    Claimant's Objections

    C.    Borrower Trust's Objections

    The Borrower Trust objects to Claimant's introduction during the hearing of any exhibits not produced during discovery. The fact discovery deadline for this matter was November 20, 2015. The Borrower Trust supplied Claimant with a request for document production on October 12, 2015 and served her with such requests that same day. To date the Borrower Trust has not received any response. Thus, the Borrower Trust objects to the proposed introduction into evidence of any exhibits responsive to the Borrower Trust's requests that have not previously been produced to the Borrower Trust.

Any objections not set forth herein will be considered waived absent good cause shown. The parties shall set forth any stipulations with respect to the authenticity and admissibility of exhibits and indicate all objections to exhibits and the grounds therefor.

IX.    CLAIMANT'S WITNESS LIST

1. Kristin Karmazyn

X.   BORROWER TRUST'S WITNESS LIST

   2. Sara Lathrop

The witness listed may be called at trial. No witness not identified herein shall be permitted to testify on either party's case in chief absent good cause shown. Each party shall list the witnesses it intends to call on its case in chief and, if a witness's testimony will be offered by deposition, shall designate by page and line numbers the portions of the deposition transcript it intends to offer. Each party shall set forth any objections it has to deposition testimony designated by the other and the basis therefor.

XI.  RELIEF SOUGHT

   November 2009

   1. $39,000 in rent and other moving expenses
   2. $12,000 medical treatment family
   3. $88,000 equity
   4. $25,000 pain and suffering

   Total: $389,000

   2015

   1. $98,098 rent and other expense
   2. $110,987 medical
   3. $88,000 equity
   4. $350,000 pain and suffering

   Total: $647,085

XII. DEADLINES AND HEARING DATE

The parties propose the following pretrial deadlines:

- Written direct testimony for each witness that the parties intend to call at trial shall be exchanged **not later than [December 22, 2015]**. Two courtesy copies of each witness's written direct testimony shall be provided to chambers concurrently with the parties' exchange. Neither party shall be permitted to call any witness to testify at trial (except rebuttal witnesses, if any) unless such witness's direct testimony has been provided to the opposing party by [January 12, 2016].

- Pretrial memoranda of law, which shall include a statement of the elements of each claim or defense involving such party, together with a summary of the facts relied upon to

13

establish each element, and addressing any evidentiary issues anticipated to arise during evidentiary hearing on this matter (the "Trial"), shall be filed **not later than [December 22, 2015]**.

- **Not later than 5:00 p.m. prevailing Eastern Time on [December 28, 2015]**, each party shall provide to the Court with (but not file) two copies of (i) the respective party's final witness and exhibit lists and (ii) pre-marked exhibits (Claimant to identify his exhibits with numbers, e.g., 1, 2, 3, etc.; the Borrower Trust to identify its exhibits with letters, e.g., A, B, C, etc.), assembled sequentially in notebooks and tabbed, or, if too voluminous, with each exhibit placed in a separate manila folder with number or letter visible on the lip, and the folder placed in a suitable container or box for ready reference. Each exhibit list shall include a description of each exhibit. One copy of the witness and exhibit lists and one set of exhibits should be provided to opposing counsel. No witnesses or exhibits that are not listed in the witness and exhibit lists may be used at the Trial.

The Trial shall take place on **January 5, 2016 at 9:00 a.m. prevailing Eastern Time**.

XIII. EVIDENTIARY HEARING PROCEDURES

### A. Use of Exhibits During Trial

Counsel is responsible for marking his or her own exhibits. Counsel must identify for the Court and opposing counsel, and give a copy to the witness, each exhibit before using it at the Trial. All exhibits that will be shown to a witness should, if possible, be placed before the witness at the start of counsel's witness examination. Questions and arguments should be delivered from the lectern, but counsel may approach the witness without asking leave whenever it is necessary. And, if counsel is standing near the witness for the purpose of pointing something out on an exhibit, opposing counsel may also be present to observe first-hand what is being pointed out.

### B. "Timed" Trial

The Trial will be a "timed trial," with a maximum of [6]-trial hours during the course of 1 day. Each side will be allocated a maximum of [3]-trial hours to use for opening statement, all direct, cross-examination and redirect witness examinations, and summation. Counsel is responsible for having her or his witnesses present and ready to testify without any delays or gaps in testimony.

### C. Status Report

**Not later than 5:00 p.m. prevailing Eastern Time on [December 28, 2015]**, counsel shall submit a written status report to the Court, identifying any issues that must be resolved before the Trial starts, and also whether counsel believe the case may be resolved by settlement before the Trial begins.

14

ny-1213492

Dated:  December 11, 2015         /s/ Norman S. Rosenbaum
                                  Norman S. Rosenbaum
                                  Jordan A. Wishnew
                                  Jessica Arett
                                  MORRISON & FOERSTER LLP
                                  250 West 55th Street
                                  New York, New York 10019
                                  Telephone:  (212) 468-8000
                                  Facsimile:  (212) 468-7900

                                  *Counsel for the ResCap Borrower Claim*

Dated:  December 11, 2015         /s/ Kristin Karmazyn
                                  Kristin Karmazyn
                                  5262 S. Malta Way
                                  Centennial, CO 80015

                                  *Acting Pro Se*

**IT IS SO ORDERED:**

                                  _____
                                  **MARTIN GLENN**
                                  **UNITED STATES BANKRUPTCY JUDGE**