# **Exhibit 2**

**Lathrop Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DECLARATION OF SARA LATHROP IN SUPPORT OF RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO PROOF OF CLAIM NO. 3695 FILED ON BEHALF OF ROSALIND ALEXANDER-KASPARIK**

I, Sara Lathrop, hereby declare as follows:

1.      I serve as Senior Claims Analyst for the ResCap Borrower Claims Trust (the "**Borrower Trust**"), established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] confirmed in the above-captioned bankruptcy cases (the "**Chapter 11 Cases**") of Residential Capital, LLC ("**ResCap**"), a limited liability company organized under the laws of the state of Delaware, and certain of its subsidiaries (collectively, the "**Debtors**"). In such capacity, I am familiar with the Debtors' claims reconciliation process and the loan servicing operation of GMAC Mortgage, LLC ("**GMAC Mortgage**"). I am over the age of 18 and authorized to submit this declaration (this "**Declaration**") in support of the Borrower Trust's objection (the "**Objection**") to Proof of Claim No. 3695 (the "**Claim**")[1] filed on behalf of Rosalind Alexander-Kasparik (the "**Claimant**").

2.      I began my association with ResCap in June 2006 as an associate in the Default Division of the loan servicing operation of GMAC Mortgage. In 2008, I became a

---
[1] A copy of the Claim is attached hereto as **Exhibit A**.

1

ny-1212782 v3

Default Quality Control Specialist at GMAC Mortgage, a position that I held until I became a Supervisor in the Default Division in 2009. In 2011, I became a Supervisor in the Loss Mitigation Division of GMAC Mortgage's loan servicing operation, and in February 2012, I became a Manager in that division. In this role, I supervised GMAC Mortgage associates in their efforts to provide Borrowers[2] with loss mitigation options and assisted in the development of GMAC Mortgage's loss mitigation policies. In January of 2013, I became the Regulatory Compliance Manager for ResCap. I became Senior Claims Analyst for ResCap in July 2013 and continued in this role when the ResCap Liquidating Trust (the "**Liquidating Trust**") was established in December 2013.[3] As noted above, my current position is Senior Claims Analyst for the Borrower Trust.

        3. Except as otherwise indicated, all facts set forth in this Declaration are based upon my familiarity with the Debtors' operations, the Debtors' books and records kept in the course of their regularly conducted business activities (the "**Books and Records**"), the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "**Schedules**"), my review and reconciliation of claims, information learned from my review of relevant documents, and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors and the Liquidating Trust, and the Borrower Trust's professionals and consultants. If I were called upon to testify, I could and would testify competently to the facts set forth in this Declaration on that basis.

---

[2] As used herein, the term "**Borrower**" has the meaning ascribed to it in the Plan.

[3] The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

2

ny-1212782 v3

4. I or Liquidating Trust personnel have reviewed and analyzed the proof of claim forms and supporting documentation filed by the Claimant. Since the Plan went effective and the Borrower Trust was established, I, along with members of the Liquidating Trust have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims, and determine the appropriate treatment of the same. In connection with such review and analysis, where applicable, I or Liquidating Trust personnel, together with professional advisors, have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (vi) the official claims register maintained in the Chapter 11 Cases.

## The Loan and the Property

5. On or about May 16, 2006, Claimant executed and delivered a promissory note (the "**Note**") in favor of Unitrust Mortgage, Inc. ("**Unitrust**"). See Note, attached hereto as **Exhibit B**. Claimant's obligations under the Note were secured by a deed of trust (the "**Deed of Trust**" and, together with the Note, the "**Loan**") dated May 16, 2006 encumbering certain real property located at 1021 Scott Street #149, San Diego, CA 92106 (the "**Property**"). See Deed of Trust, attached hereto as **Exhibit C**. The Deed of Trust named as its beneficiary Mortgage Electronic Registration Systems, Inc. ("**MERS**"), as nominee for Unitrust and its successors and assigns. See id. GMAC Mortgage began servicing the Loan on June 16, 2006. See Excerpts of Servicing Notes (the "**Servicing Notes**") at 246, attached hereto as **Exhibit D**.

6. On July 18, 2011, MERS executed an assignment of its beneficial interest in the Deed of Trust (the "**Assignment of Deed of Trust**") to debtor GMAC Mortgage. See Assignment of Deed of Trust, attached hereto as **Exhibit E**.

3

ny-1212782 v3

7. On August 17, 2011, Claimant transferred her interest in the Property to Marcellus Alexander, Jr., Trustee of the Scott Street Land Trust through a grant deed (the "**Grant Deed**"). See Grant Deed, attached hereto as **Exhibit F**.

### The First Loan Modification

8. The Loan first became delinquent when Claimant failed to make the monthly payment due on December 1, 2008. See Servicing Notes at 7. GMAC Mortgage delayed foreclosure on several occasions to provide Claimant with time to submit an application for a loan modification. See id. at 207, 215, 225. This delinquency was resolved when GMAC Mortgage and Claimant agreed to a loan modification on March 26, 2010. See id. at 204.

9. On May 17, 2010, Claimant made her first payment on the modified Loan. See id. at 5. Claimant again became delinquent on the modified Loan when the June 2010 payment was not made until August 20, 2010, and no other payments on the modified Loan were made after that date. See id.

### Default on the Modified Loan

10. On August 31, 2010, GMAC Mortgage mailed a breach letter to Claimant because she had made no payments on the modified Loan for July 2010 and August 2010. See id. at 192. On October 4, 2010, GMAC Mortgage referred the modified Loan to active foreclosure because payments for July 2010 through October 2010 remained due and owing. See id. at 191. On December 30, 2010, a trustee's sale was scheduled for February 10, 2011. See id. at 187.

11. Between February 2011 and March 2012, GMAC Mortgage postponed the trustee's sale on multiple occasions after receiving information that led GMAC Mortgage to believe that the Property may be subject to the automatic stay in connection with multiple

4

ny-1212782 v3

bankruptcy cases filed by parties other than the Claimant under chapters 11 and 13 of the Bankruptcy Code (the "**California Bankruptcies**").  See id. at 121, 126, 146, 175, 181.

12. During this period, GMAC Mortgage considered and ultimately denied an additional loan modification request by Claimant, because GMAC Mortgage could not further reduce the interest rate on the Loan or further extend the remaining term of the Loan under Home Affordable Modification Program ("**HAMP**") and investor guidelines.  See id. at 145. HAMP is a federal program designed to help financially struggling homeowners avoid foreclosure by modifying their loans to levels that are sustainable over the long term.

13. After the conclusion of the California Bankruptcies, and after confirming that the debtors in the California Bankruptcies had no interest in the Property, GMAC Mortgage re-scheduled the trustee's sale—this time for June 19, 2012.  See id. at 47.

**Claimant's KYHC Application**

14. On May 25, 2012, Claimant contacted GMAC Mortgage to discuss her application with Keep Your Home, California ("**KYHC**"), and GMAC Mortgage directed Claimant to its website for further information about loan modification requirements.  See id. at 46.  KYHC is a federally-funded program operated by the state of California to help homeowners who have suffered a financial hardship stay in their homes, maintain an affordable mortgage payment and avoid foreclosure.

15. On June 11, 2012, Claimant requested a postponement of the June 19 trustee's sale.  See id. at 43-44.  GMAC Mortgage advised Claimant that it would need proof of KYHC approval before it could consider her postponement.  See id.

16. On June 12, 2012, Claimant contacted GMAC Mortgage about the June 19 trustee's sale and requested additional time to obtain approval from KYHC.  See id. at 42-43.

5

Claimant inquired about another loan modification.  See id.  GMAC Mortgage advised Claimant that she was welcome to apply, but advised Claimant that her complete loan modification package had to be received seven (7) business days prior to the date of the trustee's sale in order to request postponement.  See id.  Nevertheless, GMAC Mortgage postponed the trustee's sale to July 3, 2012 to provide Claimant with additional time for KYHC approval.  See id. at 42.

17.    On June 19, 2012, GMAC Mortgage received an email from KYHC requesting an extension of the July 3 trustee's sale to allow time for KYHC to underwrite Claimant's account.  See id. at 41.  GMAC Mortgage advised KYHC that GMAC Mortgage would be unable to do so, based on the delinquency of Claimant's account (at the time, Claimant owed payments for July 2010 through June 2012).  See id.  KYHC advised GMAC Mortgage that KYHC needed 21 days to underwrite Claimant's account and there was no guarantee that Claimant's application would be approved, both because Claimant's delinquency exceeded the KYHC cap and because the prior loan modification approved by GMAC Mortgage had already lowered Claimant's interest rate and extended the term of the Loan to the maximum amounts allowable under HAMP and investor guidelines.  See id.

18.    On July 2, 2012, GMAC Mortgage received formal paperwork from KYHC showing Claimant had been approved for loan assistance.  See id. at 39-40.

19.    On July 3, 2012, Freddie Mac contacted GMAC Mortgage and inquired about the KYHC approval.  See id. at 39.  GMAC Mortgage informed Freddie Mac that the notice of KYHC approval was received on July 2, 2012, which did not allow enough time for GMAC Mortgage to review the KYHC approval.  See id.  Freddie Mac informed GMAC Mortgage that Freddie Mac would not agree to postpone the July 3 trustee's sale.  See id.

6

ny-1212782 v3

20.  On July 3, 2012, Claimant spoke with GMAC Mortgage about the KYHC approval. See id. at 38-39. GMAC Mortgage informed Claimant that, because the approval was received less than 7 days prior to the trustee's sale, KYHC assistance had been denied for Claimant's account under GMAC Mortgage's internal policies. See id. at 39. Claimant advised GMAC Mortgage that she had spoken with Freddie Mac and was told that a postponement request would be submitted. See id. at 38. GMAC Mortgage advised Claimant that her request to postpone the trustee's sale had been denied by Freddie Mac and the trustee's sale would be held as planned. See id. at 36.

21.  On July 3, 2012, the trustee's sale (the "**Trustee's Sale**") was conducted and ownership of the Property transferred to GMAC Mortgage. See id. at 36. At that time, the account remained due and owing for July 2010 through July 2012 payments. See id. at 4.

### The California Action and the Superior Court Order

22.  On July 31, 2012, Claimant filed a complaint (the "**Complaint**") against GMAC Mortgage and Freddie Mac (together, the "**Defendants**"), among others, in the California Action. See Complaint, attached hereto as **Exhibit G**. On September 17, 2012, the Defendants jointly filed a demurrer to the Complaint. See California Action Docket, attached hereto as **Exhibit H**, D.E. 8.

23.  On October 10, 2012, GMAC Mortgage filed a Notice of Bankruptcy and Suggestion of Automatic Stay (the "**NOB**") with the California Superior Court. See California Action Docket, D.E. 11.

24.  On July 31, 2014, the Claimant filed an amended complaint (the "**First Amended Complaint**"). See First Amended Complaint, attached hereto as **Exhibit I**; see also California Action Docket, D.E. 78. On September 18, 2014, the Defendants jointly filed another

7

demurrer (the "**September 18 Demurrer**") to the First Amended Complaint. See September 18 Demurrer, attached hereto as **Exhibit J**; see also California Action Docket, D.E. 79. Concurrent with the filing of the September 18 Demurrer, the Defendants jointly filed a request for judicial notice. See California Action Docket, D.E. 80.

25.  The Claimant filed an opposition to the September 18 Demurrer on November 25, 2014 and the Defendants jointly filed a reply to that opposition on November 26, 2014. See California Action Docket, D.E. 82, 83. On December 5, 2014, the California Superior Court entered an order dismissing each cause of action asserted in the First Amended Complaint with leave to amend. See California Action Docket, D.E. 91.

26.  On December 22, 2014, the Claimant filed a second amended complaint (the "**Second Amended Complaint**"). See Second Amended Complaint, attached hereto as **Exhibit K**; see also California Action Docket, D.E. 92. On February 13, 2015, Defendants jointly filed a demurrer (the "**February 13 Demurrer**") to the Second Amended Complaint. See February 13 Demurrer, attached hereto as **Exhibit L**; see also California Action Docket, D.E. 96. Concurrent with the filing of the February 13 Demurrer, the Defendants jointly filed a request for judicial notice. See California Action Docket, D.E. 97.

27.  Claimant filed an opposition to the February 13 Demurrer on March 23, 2015 and the Defendants jointly filed a reply to that opposition on March 25, 2015. See California Action Docket, D.E. 98, 99.

28.  After conducting a hearing, on April 3, 2015, the California Superior Court entered an order (the "**Superior Court Order**"). See Superior Court Order, attached hereto as **Exhibit M**; California Action Docket, D.E. 104. On April 3, 2015, the Defendants had

8

ny-1212782 v3

a notice of entry of the Superior Court Order served upon Claimant's counsel via U.S. Mail. <u>See</u> California Action Docket, D.E. 111.

29. On April 14, 2015, the Claimant filed a third amended complaint (the "**Third Amended Complaint**"). <u>See</u> Third Amended Complaint, attached hereto as **Exhibit N**; <u>see</u> <u>also</u> California Action Docket, D.E. 109. On June 17, 2015, Freddie Mac filed a demurrer to the Third Amended Complaint, which was sustained with prejudice. <u>See</u> California Action Docket, D.E. 115, 131.

30. On November 3, 2015, the California Superior Court entered a judgment of dismissal (the "**Superior Court Dismissal**"). <u>See</u> Superior Court Dismissal, attached hereto as **Exhibit O**; <u>see</u> <u>also</u> California Action Docket, D.E. 136.

31. Claimant did not timely file an appeal of the Superior Court Order.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 14, 2015

<u>/s/ Sara Lathrop</u><br>
Sara Lathrop<br>
Senior Claims Analyst for ResCap Borrower Claims Trust

9