**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al. | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |

**STIPULATION AND ORDER BETWEEN THE RESCAP LIQUIDATING TRUST AND CONNECTICUT HOUSING FINANCE AUTHORITY PROVIDING FOR SERVICE TRANSFER; WITHDRAWAL OF PROOF OF CLAIM AND RELATED RELIEF**

_____This stipulation (the **"Stipulation"**) is entered into as of November 30, 2015 by and between the ResCap Liquidating Trust (the **"Liquidating Trust"**) and Connecticut Housing Finance Authority **("CHFA"** and together with the Liquidating Trust, the **"Parties"**).

## RECITALS

**I.      THE BANKRUPTCY CASES**

        A.      On May 14, 2012 (the **"Petition Date"**), each of the above-captioned debtors (collectively, the **"Debtors"** and each a **"Debtor"**) filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the **"Bankruptcy Code"**) in the United States Bankruptcy Court for the Southern District of New York (the **"Bankruptcy Court"**). On the Petition Date, the Bankruptcy Court entered an order providing for the joint administration of the Debtors' Chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**).

        B.      On August 29, 2012, the Bankruptcy Court entered the Bar Date Order, which established, among other things, (i) November 9, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline to file proofs of claim by virtually all creditors against the Debtors (the **"General Bar Date"**) and prescribed the form and manner for filing proofs of claim; and (ii) November 30, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline for governmental

units to file proofs of claim (the **"Governmental Bar Date"**). On November 7, 2012, the

Bankruptcy Court entered an order extending the General Bar Date to November 16, 2012 at

5:00 p.m. (Prevailing Eastern Time) [Docket No. 2093]. The Governmental Bar Date was not

extended.

> C.      On December 11, 2013, the Bankruptcy Court entered the *Order
>
> Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et
>
> al. and the Official Committee of Unsecured Creditors* (the **"Confirmation Order"**)
>
> approving the terms of the Chapter 11 plan, as amended (the **"Plan"**), filed in these Chapter
>
> 11 cases [Docket No. 6065]. On December 17, 2013, the Effective Date (as defined in the
>
> Plan) of the Plan occurred [Docket No. 6137].

> D.      The Plan provides for the creation and implementation of the
>
> Liquidating Trust, which, among other things, is "authorized to make distributions and other
>
> payments in accordance with the Plan and the Liquidating Trust Agreement" and is
>
> responsible for the wind down of the affairs of the Debtors' estates. See Plan, Art. VI.A-D; see
>
> also Confirmation Order at ¶ 22. Pursuant to the Confirmation Order and the Plan, the
>
> Liquidating Trust was vested with broad authority over the post-confirmation liquidation and
>
> distribution of the Debtors' assets.

## II. RELATIONSHIP BETWEEN THE DEBTORS AND CHFA

> E.      GMAC Mortgage Corporation of PA, predecessor-in-interest to Debtor
>
> GMAC Mortgage LLC **"GMACM,"** and CHFA were parties to a mortgage loan servicing
>
> agreement dated July 15, 1987, entitled Connecticut Housing Finance Authority Home
>
> Mortgage Servicing Agreement (as amended, the **"Servicing Agreement"**). The Servicing
>
> Agreement references a Master Commitment Agreement for Mortgage Purchases dated July

12-12020-mg    Doc 9409    Filed 12/15/15    Entered 12/15/15 15:29:18    Main Document
Pg 3 of 24

15, 1987 (the **"Master Purchase Agreement").** Pursuant to the Servicing Agreement,

GMACM agreed to service loans purchased by CHFA from GMACM or from other lending

institutions and referred to and accepted by GMACM (the **"CHFA Loan Portfolio").**

Subsequent to entering into the Servicing Agreement, GMACM's predecessor in interest and

GMACM continued to service the CHFA Loan Portfolio under the Servicing Agreement

through and subsequent to the Petition Date.

        F.      On or about September 18, 2008, GMACM sent CHFA a written

notice purporting to terminate the Servicing Agreement in connection with the termination of

the Master Purchase Agreement (the **"Termination Letter").** Section 5.C of the Servicing

Agreement permitted GMACM to terminate the Servicing Agreement on 60-days' advance

notice.

        G.      The Master Purchase Agreement was terminated. However, GMACM

continued to service the CHFA Loan Portfolio and since September 18, 2008, and through the

date hereof, both Parties have continued to render performance to each other in conformity

with the terms of the Servicing Agreement.  As of October 31, 2015, the CHFA Portfolio

serviced by GMACM consists of approximately 827 residential mortgage loans and related

assets with a total unpaid principal balance of approximately $54,612,401.

        H.      On November 21, 2012, the Bankruptcy Court entered an order (the

**"Sale Order")** approving the sale of the Debtors' mortgage loan servicing and origination

platforms to Ocwen Loan Servicing LLC **("Ocwen")** pursuant to that certain Asset Purchase

Agreement between Ocwen and certain of the Debtors dated November 2, 2012 (as amended

from time to time, the **"APA").** The sale to Ocwen closed on February 15, 2013. GMACM

did not assign the Servicing Agreement to Ocwen, and as of the Plan Effective Date, the

Servicing Agreement was vested in the Liquidating Trust. Prior to the closing of the sale,

GMACM continued to service the CHFA Loan Portfolio under the terms of the Servicing

Agreement; after the closing of the sale, GMACM serviced the CHFA Loan Portfolio through

its subservicer, Ocwen.

       I.      Pursuant to the APA, Ocwen and GMACM, among other Debtor

parties, entered into a subservicing agreement (the **"Ocwen Subservicing Agreement").**

Pursuant to the Ocwen Subservicing Agreement, since the closing of the APA, Ocwen has

serviced the CHFA Loan Portfolio on behalf of the Debtors and, subsequent to the Plan

Effective Date, the Liquidating Trust. In connection with GMACM's and the Liquidating

Trust's servicing of the CHFA Loan Portfolio, as of October 31, 2015, there are

approximately $2,212,539 of gross servicing advances due the Liquidating Trust consisting of

approximately $1,157,574 of escrow advances, and $1,054,964 of corporate (including non-

borrower billables) advances (collectively, the **"Advances").** The gross amount of the

Advances will vary on a month to month basis up to the Service Transfer date (as such term is

hereinafter defined).

### III.     THE CHFA MOTION FOR RELIEF AND LIQUIDATING TRUST CLAIM OBJECTION

       J.      On December 13, 2012, CHFA filed a motion for relief from the

automatic stay seeking, among other things, recovery of the CHFA Loan Portfolio [Dkt. No.

2401] (the **"Motion for Relief").** On January 14, 2013, GMACM filed a Response and

Reservation of Rights with respect to the Motion for Relief [Dkt. No. 2623]. The parties have

deferred consideration of the Motion for Relief since the filing thereof in order to achieve an

orderly portfolio transfer and the consensual reconciliation of financial matters.

       K.      On November 16, 2012, CHFA filed timely proofs of claim against

4

GMACM designated as Claim Nos. 5853 and 5856 on the Official Claims Register (collectively the **"Proofs of Claim").** CHFA Claim no. 5853 filed on November 16, 2012, is in the amount of $1.  CHFA Claim no. 5856 filed on November 16, 2012, asserts an unsecured claim in the face amount of $84 million.  CHFA filed Proofs of Claims as a protective matter until a portfolio transfer and financial reconciliation could be achieved.

      L.      On December 16, 2014, the Liquidating Trust filed an objection to the Proofs of Clam seeking to expunge the claims from the Claims Register in their entirety [Dkt. No. 7924] (the **"Claims Objection").** On January 9, 2015, CHFA filed a response to the Claims Objection [Dkt. #7970], The Parties have deferred consideration of the Claims Objection since the filing thereof.

      M.      CHFA has advised the Liquidating Trust that it intends to transfer the servicing of the CHFA Loan Portfolio from the Liquidating Trust to Dovenmuehle Mortgage, Inc. ("**Dovenmuehle**") as a successor servicer, and with respect to real property, to CHFA, and desires to do so by December 18, 2015 or by such other date as mutually agreed to by the Parties (the **"Proposed Service Transfer").**

      N.      After negotiations regarding the Proofs of Claim, the Advances, the Motion for Relief and the Proposed Service Transfer, the Parties reached the agreement embodied herein.

      **NOW THEREFORE,** in consideration of the foregoing recitals and the covenants and conditions contained herein, the Parties hereby stipulate and agree as follows:

## I.     SERVICE TRANSFER OF CHFA LOAN PORTFOLIO, PORTFOLIO REVIEW AND FINAL RECONCILIATION

      1.      The Liquidating Trust and CHFA shall continue to work in good faith

5

to effectuate the Proposed Service Transfer to Dovenmuehle (such party the **"Successor
Servicer")** effective December 18, 2015, or such later date as mutually agreed to by the
Parties and Ocwen (the **"Service Transfer Date").**   The Proposed Service Transfer shall be
effected substantially in accordance with the terms and conditions of the service transfer
instructions in the form (including the Ocwen comments thereto) annexed hereto as <u>Exhibit A</u>
(with such changes as agreed by the Parties and Ocwen, the "**Service Transfer
Instructions**").  The Successor Servicer will coordinate with Ocwen and as necessary, the
Liquidating Trust, to resolve any issues or disputes with respect to the form of service transfer
instructions in advance of the Service Transfer Date.  Each of the Liquidating Trust and
CHFA will promptly respond to reasonable requests for information by the other Party in
connection with the Proposed Service Transfer (it being understood that Ocwen holds all
information relating to the CHFA Loan Portfolio on behalf of the Liquidating Trust and the
Liquidating Trust will use good faith efforts to obtain any such information from Ocwen that
is reasonably requested by CHFA). CHFA will make good faith efforts to secure the full
cooperation of Dovenmuehle (or any other Successor Servicer designated by CHFA) in
connection with the Proposed Servicing Transfer, including in connection with the
Liquidating Trust's requests for information.

2.    The Liquidating Trust shall or shall attempt to cause Ocwen to make
available to CHFA information reasonably requested by CHFA with respect to the CHFA
Loan Portfolio, including information with respect to the CHFA loans and assets, advance
information, and file location information as set forth in the Service Transfer Instructions.

3.    Consistent with and as specified in the Service Transfer Instructions,
the Liquidating Trust shall cause the transfer, by Ocwen to Dovenmuehle, on behalf of CHFA

6

(and where applicable directly to CHFA), of all documents, files, electronic data, accounts,

funds, reserves, property, legal documents and positive tax and insurance escrows which relate

to the CHFA Loan Portfolio in the format and at such times as set forth in the Service Transfer

Instructions. The transfer of such positive tax and insurance escrows shall not be subject to

offset or reduction on account of any claims held by the Liquidating Trust.

4.     As a part of the information requested in the Service Transfer Instructions, prior to the Service Transfer Date, the Liquidating Trust will use reasonable efforts to cause Ocwen to provide to CHFA and the Successor Servicer information on all outstanding Advances. The Parties acknowledge and agree that such information has been, or will be, furnished with respect to the Advances identified in paragraph I hereof; provided, however, the Liquidating Trust and CHFA shall work together in using reasonable efforts to cause Ocwen to provide information on all Advances, including additional Advances made through and including November 30, 2015 promptly after such information becomes available in December 2015.  CHFA agrees to cause the Successor Servicer to promptly review such information once received and no later than two business days prior to the Service Transfer Date to specifically identify to the Liquidating Trust any Advances which they are unable to verify.  On the Service Transfer Date, CHFA shall or cause Dovenmuehle to, promptly verify that all positive tax and insurance escrows required to be maintained by Ocwen have been remitted to Dovenmuehle as successor servicer (the "Escrow Verification") in accordance with the Service Transfer Instructions. CHFA agrees to promptly notify the Liquidating Trust of such verification and furnish the Liquidating Trust with details of any disputes relating thereto.  Promptly after the completion of the Escrow Verification, within one business day of the Service Transfer Date, CHFA shall reimburse, or cause the Successor Servicer to reimburse, the Liquidating Trust for all outstanding gross Advances that have been verified; provided, however, that CHFA may withhold from the Advance payment the amount of any dispute regarding any positive tax or insurance escrow arising from the Escrow Verification, and the Parties will promptly confer in an effort to resolve any such dispute.  For the Avoidance of doubt, CHFA's obligation to reimburse the Liquidating Trust for any Advance

8

verified in accordance with this Stipulation, shall be subject to set off of any Service Claim

(as such term is defined herein) that has been verified and agreed to by the Parties in

accordance with terms of this Stipulation.  All Advances are subject to final verification by

CHFA.  Advances shall be deemed "verified" if the Advance is substantiated by a copy of an

invoice evidencing an expenditure that is consistent with CHFA and insurer/guarantor

servicing guidelines and not previously reimbursed and provided further that, in the event an

invoice evidences an expenditure that is over such guidelines, the related Advance shall be

deemed verified to the extent that such expenditure would have been allowed under such

guidelines (each, a "**Verified Advance**" and collectively "**Verified Advances**").  As of the

date hereof, CHFA acknowledges that the Verified Advances are $805,608.00 and that CHFA

shall continue or cause Dovenmuehle to continue the review of the Advances as provided for

hereunder through the Service Transfer Date.  If any expenditure qualified for partial or total

reimbursement, but the Liquidating Trust or Ocwen failed to file an applicable

insurer/guarantor claim for the related expense in accordance with CHFA and applicable

Insurer/guarantor guidelines such expenditure will not be deemed a Verified Advance.

Notwithstanding the foregoing, in the event that such expenditure relates to a claim that was

not filed with HUD such claim shall be assigned to the Liquidating Trust in accordance with

Section I.7 below.  In the event of any dispute concerning whether any Advance constitutes a

Verified Advance or in connection with the Escrow Verification, the Parties reserve the right

to bring the issue before the Bankruptcy Court for prompt determination.

5.      CHFA acknowledges that, with the reasonable cooperation of the

Liquidating Trust, CHFA has reviewed (or caused a review of) the CHFA Loan Portfolio.

Such review has revealed, and CHFA in good faith believes that has identified, material

servicing issues which have resulted in or reasonably could be expected to result in losses to

CHFA (each a "**Service Claim**" and collectively, the "**Service Claims**").    In complete and

total settlement of the Service Claims, the Parties agree that the Liquidating Trust shall pay to

CHFA on the Service Transfer Date $826,189.42 less (a) cash, if any, received by CHFA

prior to the Service Transfer Date in connection with the repurchase by Ocwen of the

modified mortgage loan set forth on Exhibit B annexed hereto, or in connection with the loan

set forth on Exhibit C annexed hereto, and (b) cash, whether or not received prior to the

Service Transfer Date by CHFA, for all mortgage assets set forth on Exhibit D (excluding

with respect to any mortgage assets listed on Exhibit D which is not the subject of

government insurance and for which a claim has not been submitted to CHFA for

reimbursement in accordance with CHFA servicing guidelines) for which claims have been,

or will be, filed with HUD or CHFA prior to the Service Transfer Date, and  the proceeds of

which have not yet been reimbursed by CHFA to Ocwen or ResCap and provided; further,

that the amounts set forth in such claims are not reflected in Advances (such sum, the

"**Service Claim Amount**"). The Parties further agree that the Service Claim Amount shall be

applied to the gross Advances that have been verified in full and complete satisfaction of the

Service Claims and the Service Claim Amount.  The amount of all verified Advances in

excess of the Service Claim Amount shall be remitted to the Liquidating Trust on the Service

Transfer Date in accordance with transfer instructions furnished to CHFA by the Liquidating

Trust. The Parties expressly acknowledge and agree that Service Claim Amount shall not

10

exceed the amount of the gross verified Advances and shall be capped at such amount.

      6.    In addition, CHFA agrees to transfer, as directed by the Liquidating Trust, all right, title and interest in the FHA reconveyance claims for which CHFA has been made whole by the Liquidating Trust or Ocwen, as specified in <u>Exhibit E</u> annexed hereto (collectively, the "**FHA Reconveyance Claims**") and, if not repurchased by Ocwen, the mortgage assets set forth on Exhibit B, effective on the Service Transfer Date.  In connection therewith, on or before the Service Transfer Date, CHFA shall take all actions necessary to transfer ownership of the FHA Reconveyance  Claims, as directed by the Liquidating Trust, and such mortgage assets, including, as appropriate, (i) executing and delivering all documents necessary to transfer ownership, including, but not limited to executing the quit-claim deeds relating to each reconveyed property in the name specified by the Liquidating Trust; (ii) causing the holder name for each FHA Reconveyance Claim on FHA Connects or P260 to be updated to the name specified by the Liquidating Trust; and (iii) notifying Ocwen of the transfer of ownership to Owner.  In the event that CHFA receives any funds (i) from HUD on any B Claims or Supplemental Claims filed prior to the Service Transfer Date by Ocwen on any claim filed (including B Claims, Supplemental Claim, and as it relates to the FHA Reconveyance Claims, A Claims), or (ii)  or on account of any CHFA assets serviced under the Agreement (including any assets resolved prior to the Service Transfer Date and other than with respect to those assets set forth on Exhibit D), CHFA shall promptly remit such funds to the Liquidating Trust to the following account: Bank: JPMorgan Chase, ABA 021-000-021; Account Name: ResCap Liq Trust Concentration Cash; Account No.: 528306934 (or such other account as shall be designated in writing by the Liquidating Trust). In addition, on the Service Transfer Date, the Liquidating Trust shall deliver to CHFA a

statement reflecting the agreed amounts of the Service Claim Amount and the Advances and reflecting the net amount payable to the Liquidating Trust.

7.    As of the Service Transfer Date, CHFA shall assign to the Liquidating Trust all mortgage assets set forth on Exhibit D (i)  for which B claims have not been filed with HUD prior to the Service Transfer Date, and the proceeds of which have not yet been reimbursed by CHFA to Ocwen or ResCap as of the Service Transfer Date; and (ii) with respect to such B claims, CHFA received part A proceeds without offset; provided; however to the extent that an offset was taken, upon CHFA's receipt of the B claim, CHFA shall promptly remit to the Liquidating Trust the difference between the amount of the B claim received and the amount of the corresponding offset relating to the applicable A claim.  CHFA shall take all actions necessary to transfer ownership of these mortgage assets and related claims, as directed by the Liquidating Trust, including, as appropriate, (i) executing and delivering all documents necessary to transfer ownership; (ii) causing the holder name for each FHA Reconveyance Claim on FHA Connects or P260 to be updated to the name specified by the Liquidating Trust; and (iii) notifying Ocwen of the transfer of ownership to Owner.

8.    In addition, CHFA agrees to cooperate with the Liquidating Trust in providing information and causing Ocwen to remit advances to the Liquidating Trust on assets resolved prior to the Service Transfer Date.  Prior to the Service Transfer Date, the Parties hereto agree to cooperate in creating a settlement statement reflecting Service Claim Amount, verified Escrow and Advance Amounts, and the net amount payable to the Liquidating Trust.

## II.    WITHDRAWAL OF PROOFS OF CLAIM, MOTION FOR RELIEF AND RELEASES

1.      Upon the Bankruptcy Court's approval of this Stipulation (i) the Proofs of Claim shall be deemed to be withdrawn with prejudice and expunged in their entirety; and (ii) the Motion for Relief shall be deemed resolved and such relief provided consistent with the terms of this Stipulation.

2.      Effective as of the Service Transfer Date, CHFA acting for itself and each of its past, present and future agents, representatives, attorneys, transferees, successors and assigns, hereby forever releases and discharges each of the Debtors (and their respective estates), the Liquidating Trust and each of their past, present and future officers, trustees, directors, members, partners, employees, agents, affiliates, representatives, attorneys, successors and assigns (solely in their capacity as such) from all claims (as such term is defined in section 101 of the Bankruptcy Code) and causes of action of any kind whatsoever, other than with respect to the Liquidating Trust's obligations under this Stipulation that survive the Service Transfer Date and the Liquidating Trust's obligation to cause Ocwen to transfer to CHFA all required positive tax and insurance escrows in connection with the Service Transfer.

3.      In consideration of the Liquidating Trust's agreement to permit CHFA to apply any verified Service Claim Amount against verified Advances due the Liquidating Trust, effective as of the Service Transfer Date, CHFA acting for itself and each of its past, present and future agents, representatives, attorneys, transferees, successors and assigns, hereby forever releases and discharges Ocwen from all claims (as such term is defined in section 101 of the Bankruptcy Code) and causes of action of any kind whatsoever related to Ocwen's subservicing of the CHFA Loan Portfolio on behalf of the Debtors and the Liquidating Trust other than Ocwen's obligations under this Stipulation or the Service

Transfer Instructions, including without limitation, Ocwen's obligations to (i) submit any

claim related to a loan that has been reconveyed to CHFA prior to the Service Transfer Date;

(ii) or to deliver the CHFA Loan Portfolio as provided for in Paragraph I.3. Hereof; or (iii)

Ocwen's obligation to transfer to CHFA all required positive tax and insurance escrows in

connection with the Service Transfer.

        4.      The Parties agree that Ocwen shall be an express third-party

beneficiary of this Stipulation solely with respect to the release provided by paragraph 3

hereof and for no other purposes.  Notwithstanding CHFA's release of Ocwen as provided for

herein, CHFA expressly (i) reserves any common law or statutory rights of indemnity,

attribution or contribution which may exist against Ocwen in the event any third-party claims

are brought against CHFA in connection with the CHFA Loan Portfolio or Ocwen's

subservicing thereof; and/or (ii) reserves the right to void its release of Ocwen in the event

Ocwen asserts a claim against CHFA other than those provided for herein, but only to the

extent of any such claim brought by Ocwen against CHFA and not generally.

        4.      Effective as of the Service Transfer Date the Liquidating Trust acting

for itself and each of its past, present and future agents, representatives, attorneys, transferees,

successors and assigns, hereby forever releases and discharges CHFA and its past, present

and future officers, trustees, directors, members, partners, employees, agents, affiliates,

representatives, attorneys, successors and assigns (solely in their capacity as such) from all

claims (as such term is defined in section 101 of the Bankruptcy Code) and causes of action

of any kind whatsoever other than with respect to CHFA's obligations under this Stipulation

that survive the Service Transfer Date.  The obligation of the Liquidating Trustee to take

reasonable actions to cause any and all property of the serviced CHFA Loan Portfolio to be

transferred to Dovenmuehle shall be continuing as necessary so as to reasonably assure a complete transfer thereof in accordance with the Service Transfer Instructions; provided, however, that as of the Service Transfer Date. CHFA agrees that, except as disclosed in writing, all required actions have been so taken.

### III.    MISCELLANEOUS

1.    This Stipulation is the result of a compromise and is not to be construed as an admission by any of the Debtors or their estates of any liability or wrongdoing.

2.    The Liquidating Trust represents that, to the best of its knowledge, as of the date hereof, none of the Debtors, the Liquidating Trust or Ocwen have been named as a defendant in any pending class action involving a borrower whose mortgage is included in the CHFA Loan Portfolio.

3.    The Parties represent and warrant that each has full power and authority to enter into and perform under this Stipulation, and each of the undersigned counsel represents that he or she is authorized to execute this Stipulation on behalf of his or her respective client.

4.    Upon the Bankruptcy Court's entry of this Stipulation, no other or further notice to creditors or parties-in-interest or further approval by the Bankruptcy Court shall be required to effectuate this Stipulation.

5.    The 14-day stay of this Stipulation imposed by Bankruptcy Rule 6004(h), to the extent applicable, is waived. The Parties are authorized to implement the provisions of this Stipulation immediately upon its entry and to take such steps, expend such sums and execute such documents as necessary in connection therewith without further order of the Bankruptcy Court.  The parties shall cooperate in good faith in the implementation of

15

the continuing mechanics of the Service Transfer.

6.     This Stipulation constitutes the entire agreement and understanding among the Parties with regard to the matters addressed herein and supersedes all prior and contemporaneous discussions, negotiations, understandings and agreements, whether oral or written, express or implied, among the Parties regarding the subject matter of this Stipulation.

7.     This Stipulation may not be altered, modified, changed or vacated without the prior written consent of the Parties or their respective counsel.

9.     This Stipulation may be executed in any number of counterparts by the Parties on different counterpart signature pages, all of which when taken together shall constitute one and the same agreement. Any of the Parties may execute this Stipulation by signing any such counterpart, and each such counterpart, including a facsimile or other electronic copy of a signature, shall for all purposes be deemed to be an original.

10.     This Stipulation is subject to the approval of the Bankruptcy Court and will become effective only upon approval by the Bankruptcy Court; provided; however, the Parties will continue to cooperate in connection with the Proposed Service Transfer.  Further, the parties will continue to cooperate in implementing this Stipulation following the Service Transfer Date.

11.     The Bankruptcy Court shall retain jurisdiction to hear and determine all matters or disputes arising from or relating to the implementation, interpretation, and/or enforcement of this Stipulation, and CHFA expressly agrees that it shall be subject to the jurisdiction of the Bankruptcy Court and bound by any decision of the Bankruptcy Court for purposes of resolving any disputes arising in connection with this Stipulation.

*[Signature page follows]*

Agreed to this 30th of November, 2015:

**DAY PITNEY LLP**                                    **MORRISON & FOERSTER LLP**


By**:**  /s/ James J. Tancredi                         By:  /s/ Norman S. Rosenbaum
    James J. Tancredi                      Norman S. Rosenbaum
    242 Trumbull Street                    James A. Newton
    Hartford, CT 06103                     250 West 55th Street
    Telephone: (860) 275-0100              New York, New York 10019
    Facsimile: (860) 275-0343              Tel: (212) 468-8000
                                           Fax: (212) 468- 7900
    *Counsel for Connecticut Housing*      Counsel for the ResCap Liquidating Trust
    *Finance Authority*

**IT IS SO ORDERED.**
Dated: December 15, 2015
New York, New York

                                  **/s/Martin Glenn**
                                    MARTIN GLENN
                  United States Bankruptcy Judge

## EXHIBIT A

**This document contains confidential information.
Copies have been provided to Chambers and to
counsel for Connecticut Housing Finance Authority.**

## EXHIBITS B AND C

EXHIBIT B

| OCWEN Loan Number | CHFA Loan Number |
|---|---|
| ██1301 | ██619 |

EXHIBIT C

| OCWEN Loan Number | CHFA Loan Number |
|---|---|
| ██7306 | ██757 |

**<u>EXHIBIT D</u>**

EXHIBIT D

| Ocwen Loan Number | CHFA Loan Number | | Ocwen Loan Number | CHFA Loan Number |
|---|---|---|---|---|
| ████ 9802 | ████ | | ████ 9503 | ██ 783 |
| ████ 8607 | ████ | | ████ 7007 | ██ 138 |
| ████ 3901 | ████ | | ████ 4400 | ██ 163 |
| ████ 8900 | ████ | | ████ 8807 | ██ 237 |
| ████ 5702 | ████ | | ████ 7009 | ██ 388 |
| ████ 2505 | ████ | | ████ 7300 | ██ 976 |
| ████ 4405 | ████ | | ████ 5308 | ██ 657 |
| ████ 6702 | ████ | | ████ 2203 | ██ 849 |
| ████ 8106 | ████ | | ████ 0301 | ██ 395 |
| ████ 0103 | ████ | | ████ 8207 | ██ 578 |
| ████ 9005 | ████ | | ████ 1609 | ██ 839 |
| ████ 3702 | ██ 171 | | ████ 4907 | ██ 897 |
| ████ 6507 | ██ 288 | | ████ 9704 | ██ 060 |
| ████ 9501 | ██ 323 | | ████ 6106 | ██ 110 |
| ████ 0005 | ██ 704 | | ████ 2002 | ██ 289 |
| ████ 2606 | ██ 994 | | ████ 5408 | ██ 343 |
| ████ 5009 | ██ 165 | | ████ 9009 | ██ 456 |
| ████ 8106 | ██ 891 | | ████ 2106 | ██ 869 |
| ████ 8701 | ██ 279 | | ████ 7900 | ██ 320 |
| ████ 0606 | ██ 298 | | ████ 6801 | ██ 651 |
| ████ 8508 | ██ 369 | | ████ 1204 | ██ 855 |
| ████ 2605 | ██ 397 | | ████ 1200 | ██ 110 |
| ████ 9201 | ██ 423 | | ████ 8609 | ██ 132 |
| ████ 5705 | ██ 848 | | ████ 0102 | ██ 281 |
| ████ 5706 | ██ 958 | | ████ 6005 | ██ 492 |
| ████ 3406 | ██ 155 | | ████ 5700 | ██ 244 |
| ████ 3606 | ██ 377 | | ████ 9103 | ██ 378 |
| ████ 3009 | ██ 603 | | ████ 1505 | ██ 401 |
| ████ 2004 | ██ 797 | | ████ 7600 | ██ 530 |
| ████ 7208 | ██ 961 | | ████ 6807 | ██ 607 |
| ████ 2409 | ██ 051 | | ████ 8406 | ██ 579 |
| ████ 1205 | ██ 258 | | ████ 4701 | ██ 698 |
| ████ 0103 | ██ 441 | | ████ 3303 | ██ 186 |
| ████ 1907 | ██ 697 | | ████ 4708 | ██ 465 |
| ████ 1801 | ██ 317 | | ████ 4800 | ██ 707 |
| ████ 6705 | ██ 556 | | ████ 6272 | ██ 476 |
| ████ 2700 | ██ 063 | | ████ 2507 | ██ 672 |
| ████ 9905 | ██ 266 | | ████ 6260 | ██ 525 |
| ████ 7805 | ██ 439 | | ████ 4586 | ██ 823 |
| ████ 5409 | ██ 623 | | ████ 7948 | ██ 893 |
| ████ 6803 | ██ 264 | | ████ 2727 | ██ 928 |
| ████ 2903 | ██ 855 | | ████ 0307 | ██ 178 |
| ████ 0803 | ██ 339 | | ████ 9204 | ██ 121 |
| ████ 4908 | ██ 604 | | ████ 4801 | ██ 429 |
| ████ 6604 | ██ 702 | | ████ 9809 | ██ 599 |
| ████ 9201 | ██ 906 | | ████ 3405 | ██ 156 |
| ████ 0801 | ██ 706 | | | |

**EXHIBIT E**

EXHIBIT E

| OCWEN Loan Number | CHFA Loan Number |
|---|---|
| ██8909 | ██707 |
| ██9600 | ██210 |
| ██9222 | ██073 |
| ██9906 | ██273 |