UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: ) | NOT FOR PUBLICATION |
| ) | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.*, ) |  |
| ) | Chapter 11 |
| Debtors. ) |  |
| ) | (Jointly Administered) |

**MEMORANDUM OPINION AND ORDER SUSTAINING THE RESCAP BORROWER
CLAIMS TRUST'S OBJECTION TO CLAIM NO. 3503 FILED BY
BILLY RAY CARROLL**

*A P P E A R A N C E S:*

BILLY RAY CARROLL
*Pro Se*
2158 Grove Ctourt,
Mobile, Alabama 36605
By:    Billy Ray Carroll

MORRISON & FOERSTER LLP
*Attorneys for the ResCap Borrower Claims Trust*
250 West 55th Street
New York, New York 10019
By:    Norman S. Rosenbaum, Esq.
       Jordan A. Wishnew, Esq.
       Erica J. Richards, Esq.

**MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE**

Billy Ray Carroll ("Carroll") timely filed Claim Number 4121 (the "Claim") against Debtors Residential Capital, LLC ("ResCap") and Homecomings Financial, LLC ("Homecomings"), asserting a general secured claim in the amount of $80,000.00.  The Claim was later reclassified as a general unsecured claim against Homecomings, pursuant to the Court's *Order Granting Debtors' Thirty-Sixth Omnibus Objection to Claims (Misclassified and Wrong Debtor Borrower Claims)* (ECF Doc. # 5895), entered November 20, 2013.  Carroll asserts (1) that Homecomings failed to provide proper notice of a foreclosure sale on a property then owned

by Carroll, located at 2285 Cedar Point Road, Mobile, Alabama 36605 (the "Carroll Property"); and (2) that Debtor GMAC Mortgage, LLC ("GMACM") failed to apply certain payments made by Carroll against his account. The ResCap Borrower Claims Trust (the "Trust") objects to the Claim arguing that (1) Carroll received adequate notice of the sale under Alabama law; and (2) GMACM's books and records indicate that Carroll's payments were correctly applied to his account.

The Trust adequately shifted the burden by rebutting the prima facie validity of Carroll's Claim and Carroll then failed to meet his burden to establish the viability of his Claim. Therefore, the Objection is **SUSTAINED** and the Claim is **DISALLOWED** and **EXPUNGED**.

## I.     BACKGROUND

Pending before the Court is the *ResCap Borrower Claims Trust's Eighty-Ninth Omnibus Objection to Claims ((I) No Liability Borrower Claims and (II) Reduce and Allow Borrower Claims)* (the "Objection," ECF Doc. # 9201), solely with respect to this Claim. The Trust seeks an order disallowing and expunging the Claim on the basis that the Debtors have no liability on the Claim. The Objection is supported by the declarations of Sara Lathrop ("Lathrop Decl.," Obj. Ex. 2, ECF Doc. # 9201) and Norman S. Rosenbaum ("Rosenbaum Decl.," Obj. Ex. 3, ECF Doc. # 9201). Carroll filed an opposition (the "Opposition," ECF Doc. # 9232.) The Trust filed a reply (the "Reply," ECF Doc. # 9318), supported by the supplemental declaration of Sara Lathrop (the "Lathrop Supp.," Reply Ex. 1).

On March 21, 2013, the Court entered an order authorizing the Debtors to file omnibus objections to no more than 150 claims at a time on various grounds, including those set forth in Bankruptcy Rule 3007(d) and those additional grounds set forth in the order (the "Procedures Order," ECF Doc. # 3294). The Procedures Order also includes specific protections for

borrowers and sets forth a process for the Debtors (and now the Trust as the Debtors' successor-in-interest) to follow before objecting to certain categories of borrower claims. Before objecting to certain borrower claims, the Debtors must send the applicable borrower a letter (a "Request Letter") requesting additional documentation in support of the purported claim. (*See* Procedures Order at 4.)

The Debtors sent Carroll a Request Letter on May 20, 2013. (Reply ¶ 5 n.2.) On June 5, 2013, the Debtors received Carroll's response (the "Diligence Response," Lathrop Supp. Ex. A). (Reply ¶ 6 n.3.) The Carroll Diligence Response states as the basis of his claim fraudulent foreclosure on the ground that Carroll "never received notice of proceedings." The Carroll Diligence Response also includes a copy of the deed to the Carroll Property, several bank statements, and a copy of a statement from Homecomings.

### A.  Carroll's Loan History

On April 22, 2003, non-debtor Mortgage Outlet, Inc. ("Mortgage Outlet") originated a loan (the "Loan") in the amount of $64,800.00, secured by a mortgage (the "Mortgage," Lathrop Supp. Ex. K) on the Property, and evidenced by a note (the "Note," Lathrop Supp. Ex. J). The Mortgage was recorded on April 30, 2003. (Reply ¶ 15.) Homecomings serviced the Loan from July 1, 2003 until servicing was transferred to GMACM on or around July 1, 2009. Thereafter GMACM serviced the Loan until the foreclosure sale on April 1, 2010. (Lathrop Supp. ¶ 14.)

The Carroll Loan became delinquent when Carroll failed to make the July 1, 2009 payment. (Reply ¶ 17; Lathrop Supp. Ex. L.) GMACM sent: (i) a letter to Carroll informing him of the delinquency on August 3, 2009 and (ii) an "Options to Avoid Foreclosure Letter" on August 11, 2009. (Reply ¶ 17; Lathrop Supp. Exs. M–N.) On September 25, 2009, the Carroll Loan was referred to foreclosure. (Reply ¶ 17.) On October 9, 2009, GMACM sent Carroll a

Notice of Acceleration (the "First Notice of Acceleration"). (*Id.* ¶ 18; Lathrop Supp. Ex. O.) The First Notice of Acceleration advised Carroll that the foreclosure sale was set for November 16, 2009. (Obj., Ex.1-A.)

On October 13, 2009, Carroll requested a loan modification that was approved on the same day (the "First Repayment Plan"). (Reply ¶ 19.) The foreclosure process was closed on October 27, 2009. (*Id.*) The First Repayment Plan required that Carroll make monthly payments of $721.00. (*Id.*) Carroll made the first two payments, but he missed the payment that was due in December 2009.[1] (*Id.* ¶ 20.) As a result, GMACM sent Carroll a letter regarding the breach on December 29, 2009. (*Id.*; Lathrop Supp. Ex. Q.) On January 4, 2010, GMACM cancelled the First Repayment Plan. (*Id.*; Lathrop Supp. Ex. R.)

On January 5, 2010, Carroll spoke with a GMACM representative regarding another repayment plan (the "Second Repayment Plan"). (*Id.* ¶ 21.) The Second Repayment Plan required that a payment of $721 be made on January 5, 2010 and February 5, 2010. (*Id.*) The Second Repayment Plan expressly stated that the plan would be considered null and void in the event that Carroll (i) failed to comply with the plan's conditions and requirements, (ii) filed for bankruptcy or (iii) remitted a check with non-sufficient funds. (*Id.*; Lathrop Supp. Ex. S.) Carroll failed to make the January 5, 2010 payment. (*Id.* ¶ 22.) As a result, the Second Repayment Plan was cancelled on January 29, 2010. (*Id.*; Lathrop Supp. Ex. T.)

On February 4, 2010, GMACM again referred the Carroll Loan to foreclosure. (Reply ¶ 23.) On February 25, 2010, GMACM sent Carroll a Notice of Acceleration (the "Second Notice of Acceleration") informing him that the foreclosure sale was scheduled for April 2, 2010. (*Id.*;

---

[1]   According to the servicing notes, the Debtors received a payment in the amount of $701.00 from Mr. Carroll on December 16, 2009. (Reply at 7 n.6.) However, the payment was returned because it was not enough for a full payment as required under the First Repayment Plan. (*Id.*)

4

Lathrop Supp. Ex. U.) GMACM published notices of the foreclosure sale in an Alabama newspaper, the *Mobile-Register Pass*, on March 1, March 8, and March 15, 2010. (Reply ¶ 23; Lathrop Supp. Ex. V.) A second letter was sent to Carroll on March 25, 2010 informing him of the foreclosure and the amount necessary to reinstate the account. (Reply ¶ 23; Lathrop Supp. Ex. W.) On April 2, 2010, a foreclosure sale of the Carroll Property took place and the Carroll Property was sold to a third party for $24,000. (Reply ¶ 24.)

On April 8, 2010, Debtors received correspondence from Debtors' foreclosure attorney advising that Carroll's spouse had sent copies of Western Union receipts after the sale on April 2, 2010. (Obj., Ex.1-A at 35.) The Debtors reviewed the records and found no evidence of payments that had not already been properly applied to the account or that should have been applied to the account to prevent the foreclosure from taking place. (*Id.* at 35–36.)

### B. The Claim

Carroll asserts a general unsecured claim against GMACM in the amount of $80,000. The Carroll Claim asserts "Rent, Storage, Mortgage, Note" as the basis for the Claim in box 2 of the proof of claim form. (*Id.* at 32.) On May 20, 2013, the Debtors requested additional information regarding the Claim. (*Id.* at 33.) On June 5, 2013, Carroll sent a response to the Debtors asserting that the basis of the claim was fraudulent foreclosure. (*Id.*) Carroll alleges that he never received a notice of the foreclosure proceedings. (*Id.*) Carroll initially asserted the Claim as a general secured claim against Debtor ResCap. (Reply ¶ 14.) However, on November 20, 2013, the Court entered an order (ECF Doc. # 5895) reclassifying the Claim as a general unsecured claim against Homecomings. (*Id.*)

5

### C. The Objection

The Trust's Objection seeks to disallow and expunge the Claim. The Trust argues that it is not liable for Carroll's wrongful foreclosure claim because the Debtors' records indicated that Carroll was significantly past due throughout the foreclosure process and the Debtors provided all required notice to Carroll. (Obj. Ex.1-A at 35.) Moreover, the Trust asserts that the state of Alabama is a Non-Judicial Foreclosure state, so no litigation or filings were performed in connection with the foreclosure. (*Id.*) The Debtors contend that they gave notice of the foreclosure via publication in the newspaper and sent Carroll a Notice of Acceleration via US Mail Service. (*Id.*)

### D. The Opposition

Carroll filed the Opposition asserting that (i) he was not provided with notice of the foreclosure sale of the Carroll Property and (ii) GMACM accepted payments from him that were not credited to his account. (Opp. at 2–3.) In support, Carroll provided copies of a Western Union statement and bank statements. (Opposition Exs. A, B.)

### E. The Reply

In the Reply, the Trust reasserts that it is not liable for failing to provide notice of the foreclosure sale to Carroll. (Reply ¶ 31.) According to the Trust, Alabama law requires that notice of a foreclosure sale be given by publication once of week for three successive weeks in a newspaper published in the county in which the property is located. (*Id.* (citing to ALA. CODE § 35-10-13 (2015)).) The Trust contends that GMACM published notices of the foreclosure sale in the *Mobile-Register Pass* on March 1, March 8, and March 15, 2010. (*Id.*; Lathrop Supp. Ex. V.) In addition, the Trust asserts that GMACM also mailed the Second Notice of Acceleration to Carroll on February 25, 2010 and that the Debtors' foreclosure attorney provided Carroll with

6

notice of the foreclosure sale in a letter dated March 25, 2010.  (Reply ¶ 31; Lathrop Supp. Ex. W.)

Additionally, in response to the allegation that GMACM failed to apply payments that Carroll made to the account, the Trust asserts that it reviewed the statements and confirmed that all of the payments in Carroll's records were properly applied to Carroll's account.  (*Id.* ¶ 32.) The Trust provided a chart summarizing the reconciliation of the payments from July 1, 2009 (the date of the first delinquency) through the date of the foreclosure.  (Lathrop Supp. Ex. X.)

## II.    DISCUSSION

Correctly filed proofs of claim "constitute[] prima facie evidence of the validity [and amount] of the claim.  To overcome this prima facie evidence, the objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim."  *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000) (internal citations omitted).  By producing "evidence equal in force to the prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed."  *Creamer v. Motors Liquidation Co. GUC Tr. (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted).  If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim." 4 COLLIER ON BANKRUPTCY ¶ 502.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law."  11 U.S.C. § 502(b)(1).  To determine whether a claim is allowable by law, bankruptcy

courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

Federal pleading standards apply when assessing the validity of a proof of claim. *See, e.g.*, *In re Residential Capital, LLC*, 518 B.R. 720, 731 (Bankr. S.D.N.Y. 2014); *In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure." (citations omitted)). Accordingly, a claimant must allege "enough facts to state a claim for relief that is *plausible* on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (emphasis in original) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal citation and quotation marks omitted). Plausibility "is not akin to a probability requirement," but rather requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal citation and quotation marks omitted). The court must accept all factual allegations as true, discounting legal conclusions clothed in factual garb. *See, e.g.*, *id.* at 677–78; *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true" (citing *Iqbal*, 556 U.S. at 678)). The court must then determine if these well-pleaded factual allegations state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). A claim is plausible when the factual allegations permit "the court to draw the

8

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). A claim that pleads only facts that are "merely consistent with a defendant's liability" does not meet the plausibility requirement. *Id.* at 678 (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "The pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

Although "[claims] drafted by *pro se* [claimants] are to be construed liberally, [] they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with 'a fair understanding of what the [claimant] is complaining about and . . . whether there is a legal basis for recovery.'" *Kimber v. GMAC Mortg., LLC (In re Residential Capital, LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (ellipsis in original) (quoting *Iwachiw v. New York City Bd. of Elections*, 126 F. App'x 27, 29 (2d Cir. 2005)).

The Court concludes that the Trust's Objection shifted the burden of proof to Carroll and Carroll thereafter failed to satisfy his burden in establishing the viability of the Claim. The Trust provided sufficient notice under Alabama law before the sale of the Carroll Property. Under Alabama law, the foreclosing party must publish notice of a foreclosure sale "once a week for three successive weeks in a newspaper published in the county or counties in which such land is located." Ala. Code § 35-10-13. In addition, the "notice of sale must give the time, place and terms of said sale, together with a description of the property." (*Id.*) The Trust has provided

proof of publication of a notice in the *Mobile-Register Press* on March 1, March 8, and March 15, 2010. (Lathrop Supp. Ex. V.) The notice declared that the mortgagee "will sell at public outcry to the highest bidder for cash, in front of the main entrance of the Courthouse at Mobile, Mobile County, Alabama, on April 2, 2010, during the legal hours of sale, all of its right, title, and interest in and to" the Carroll Property. (*Id*.) The notice also includes a description of the property identical to the description contained in the deed Carroll submitted in the Diligence Response. (Lathrop Supp. Ex. A-1.) The notice satisfies the applicable notice requirements under Alabama law. The Trust also produced evidence that it provided Carroll with direct notice through notice letters. (Lathrop Supp. Exs. U, W.) Carroll has not rebutted the evidence submitted by the Trust. Therefore, Carroll has failed to establish the viability of his Claim.

Additionally, the Trust has provided evidence indicating that the payments Carroll alleged were not applied to his account, were in fact properly reconciled with his account. (Lathrop Supp. Ex. X.) Again, Carroll has failed to produce further evidence and the Court therefore finds that he has failed to establish the viability of his Claim.

## II.    CONCLUSION

For the above reasons, the Objection is **SUSTAINED** and the Claim is **EXPUNGED**.

**IT IS SO ORDERED.**

Dated:    December 16, 2015
         New York, New York

                                          ___*Martin Glenn*___
                                          MARTIN GLENN
                                          United States Bankruptcy Judge