**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | ) NOT FOR PUBLICATION |
|  | ) |
|  | ) Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | ) |
|  | ) Chapter 11 |
| Debtors. | ) |
|  | ) (Jointly Administered) |

**MEMORANDUM OPINION AND ORDER SUSTAINING THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM NOS. 1687 AND 1689 FILED BY ROBERT KENNETH HARRIS**

*A P P E A R A N C E S:*

ROBERT KENNETH HARRIS
*Pro Se*
909 Patton Lane
Westwego, Louisiana 70094
By:   Robert Kenneth Harris

MORRISON & FOERSTER LLP
*Attorneys for the ResCap Borrower Claims Trust*
250 West 55th Street
New York, New York 10019
By:   Norman S. Rosenbaum, Esq.
      Jordan A. Wishnew, Esq.
      Jessica J. Arett, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Robert Kenneth Harris ("Harris") timely filed Claim Numbers 1687 and 1689 (collectively, the "Harris Claims") against Debtor GMAC Mortgage, LLC ("GMACM"), asserting secured claims for $45,999.45 and $108,609.46, respectively.[1] The ResCap Borrower Claims Trust (the "Trust") objects to the Harris Claims, arguing that the amounts asserted in the

---

[1] The Claims relate to mortgage loans secured by real property located in the state of Louisiana.

Harris Claims do not have a basis and therefore they seek to allow the Harris Claims in a modified, reduced amount (the "Modified Claim Amounts").

The Trust adequately shifted the burden by rebutting the prima facie validity of the Harris Claims and Harris has failed to meet his burden to establish the viability of his Claims. Therefore, the Objection is **SUSTAINED** and the Harris Claims are **REDUCED** and are **ALLOWED** in the Modified Claim Amounts of $2,216.21 and $6,183.62 as general unsecured claims.

## I.    BACKGROUND

Pending before the Court is the *ResCap Borrower Claims Trust's Eighty-Ninth Omnibus Objection to Claims ((I) No Liability Borrower Claims and (II) Reduce and Allow Borrower Claims)* (the "Objection," ECF Doc. # 9201),[2] solely with respect to the Harris Claims. The Trust seeks to reduce and modify the Harris Claims because they do not reflect the correct amount of liability owed by the Debtors. Harris filed an opposition to the Objection (the "Harris Opposition," ECF Docs. # 9285, 9286). The Trust then filed a reply (the "Reply," ECF Doc. # 9318).[3]

On March 21, 2013, the Court entered an order (the "Procedures Order," ECF Doc. # 3294) authorizing the Debtors to file omnibus objections to no more than 150 claims at a time on various grounds, including those set forth in Bankruptcy Rule 3007(d) and those additional grounds set forth in the Procedures Order. The Procedures Order also includes specific protections for borrowers and sets forth a process for the Debtors (and now the Trust as the Debtors' successor-in-interest) to follow before objecting to certain categories of borrower

---

[2]    The Objection is supported by the declarations of Sara Lathrop (the "Lathrop Declaration," ECF Doc. # 9201-3) and Norman S. Rosenbaum (the "Rosenbaum Declaration," ECF Doc. # 9201-4).

[3]    The Reply is supported by the supplemental declaration of Ms. Lathrop (the "Lathrop Supplemental," ECF Doc. # 9318-1).

claims. Before objecting to certain borrower claims, the Debtors must send the applicable borrower a letter (a "Request Letter") requesting additional documentation in support of the purported claim. (*See* Procedures Order at 4.)

### A. Harris' Loan History

According to the Debtors' books and records, non-Debtor Aegis Mortgage Corporation d/b/a UC Lending ("UC Lending") originated a $51,000.00 loan to Harris on March 29, 2002 (the "Westwego Loan"), secured by a mortgage on a property located on 905 Patton Lane, Westwego, LA 70094 (the "Westwego Property"). (Reply ¶ 9.) Debtor Residential Funding Company ("RFC") purchased the Westwego Loan from UC Lending and transferred its interest on or about June 1, 2002 when the loan was securitized and JP Morgan Chase Bank, NA was appointed as trustee. (*Id.*) Claim 1687 relates to the Westwego Loan.

Non-Debtor Home Loan Center, Inc., d/b/a LendingTree Loans ("Lending Tree") originated a $116,250.00 loan to Harris on March 22, 2006 (the "Marrero Loan"), secured by a mortgage on property located at 6220 3rd Ave., Marrero, LA 70072 (the "Marrero Property"). (*Id.*) RFC purchased the Marrero Loan from Lending Tree and transferred its interest on or about April 1, 2006 when the loan was securitized and Deutsche Bank Trust Company Americas was appointed as trustee. Claim 1689 relates to the Marrero Loan. (*Id.*)

Debtor Homecomings Financial, LLC ("Homecomings") serviced the Westwego Loan from May 31, 2002 and the Marrero Loan from March 22, 2006 until servicing of both loans was transferred to GMACM on July 1, 2009. (*Id.* ¶ 10.) GMACM serviced both loans until servicing was transferred to non-Debtor Ocwen Loan Servicing, LLC ("Ocwen") on February 16, 2013. (*Id.*) Harris's last payment on the Westwego Loan before servicing was transferred to Ocwen

3

was $688.95 on December 14, 2012.  (*Id.*)  Harris's last payment on the Marrero Loan before servicing was transferred to Ocwen was $1,083.90 on January 11, 2013.  (*Id.*)

On January 7, 2011, the Debtors referred the Westwego Loan to foreclosure because the account was owing for the October 2011 payment.  (*Id.* ¶ 11.)  The foreclosure did not take place because Harris brought the account current before April 15, 2011.  (*Id.*)  On April 8, 2011, the Debtors referred the Marrero Loan to foreclosure because it was owing for the January 2011 payment.  (*Id.* ¶ 12.)  The foreclosure did not take place because Harris brought the account current before May 20, 2011.  (*Id.*)

### B. The Harris Claims

Harris filed Claim Numbers 1687 and 1689 against GMACM, asserting secured claims for $45,999.45 and $108,609.46, respectively.  (*Id*. ¶ 8.)  The Debtors sent Harris a Request Letter on May 20, 2013.  (*Id.* ¶ 5, n.2.) Harris responded on June 24, 2013, detailing the amount he claimed was owed on account of each claim (the "1687 Diligence Response" and the "1689 Diligence Response," Lathrop Supp. Ex. A).  (*Id.* ¶ 6, n.3.)  In the 1687 Diligence Response, he alleged that he was owed $2,216.21 because GMACM purportedly failed to properly apply payments to the Westwego Loan account.  (*Id.* ¶ 13.)  In the 1689 Diligence Response, Harris alleged that he was owed $6,183.62 because  (i) GMACM allegedly improperly charged him escrow for property tax to the Marrero Loan account, and (ii) purportedly wrongfully initiated a foreclosure proceeding in 2011.  (*Id.*)  Harris has not provided any reason why the Harris Claims should be classified as secured claims.

### C. The Objection

The Trust seeks to reduce and allow the Harris Claims to the amounts asserted by Harris in the 1687 and 1689 Diligence Responses.  (Obj. Ex. 1-B.)  With respect to Claim 1687, the

4

Trust seeks to reduce and allow it as a general unsecured claim in the amount of $2,216.21 against GMACM.[4] (*Id.*) The $2,216.21 represents the amount of damages asserted by Harris in the 1687 Diligence Response that were allegedly caused by GMACM's improper servicing of the Westwego Loan. (*Id.*) The Debtors note that Lending Tree originated the loan on March 22, 2006, Homecomings serviced the loan from April 17, 2007 until servicing was transferred to GMACM on or about July 1, 2009, and GMACM serviced the loan until servicing was transferred to Ocwen on February 16, 2013. (*Id.*)

With respect to Claim 1689, the Trust seeks to reduce and allow it in the amount of $6,183.62 as a general unsecured claim against GMACM.[5] (*Id.*) The $6,183.62 represents the amount of damages asserted by Harris in the 1689 Diligence Response that were allegedly caused by GMACM improperly initiating foreclosure proceedings against him. (*Id.*) The Debtors note that UC Lending originated the loan on March 29, 2002, Homecomings serviced the loan from May 31, 2002 until servicing was transferred to GMACM on or about July 1, 2009, and GMACM serviced the loan until servicing was transferred to Ocwen on February 16, 2013. (*Id.*)

### D.     The Harris Opposition

In the Harris Opposition with respect to Claim 1689, Harris contends that, as a result of Ocwen's "underhanded tactics," he was forced to mortgage a piece of property. (Harris Opp. at 1.) Harris contends that his mortgage payment was changed on two occasions from regular payments of $855.36 to $1,410.94 and again to $2,422.13. (*Id.*) He alleges that his credit has

---

[4] The Debtors note that Harris asserts "Mortgage/Note" as the basis for claim in box 2 of the proof of claim form. (*Id.*) The Debtors also note that Harris has attached a March 2012 Mortgage Account Statement to his proof of claim. (*Id.*)

[5] Harris asserts "Mortgage/Note" as a basis for claim in box 2 of the proof of claim form, and has attached a March 2012 mortgage account statement to the proof of claim. (*Id.*)

5

been destroyed, causing his credit score to fall from 610 to 498. (*Id.*) Harris contends that as a last ditch effort to have his claims expunged, Ocwen asked him to itemize the cost of Ocwen's attorney, Mr. Dean Morris, who was retained by GMACM to initiate foreclosure proceedings against Harris. (*Id.* at 2.) Finally, Harris claims that Ocwen illegally damaged his credit rating, resulting in the loss of credit availability, and argues that Ocwen should be found to be at fault for wrongful foreclosure and be forced to pay restitution of $240,000. (*Id.*)

In his Opposition with respect to Claim 1687, Harris appears to have filed the same response. (ECF Doc. # 9285.)

### E.     The Reply

In the Reply, the Trust contends that the new allegations contained in the Harris Opposition are related to actions by Ocwen, not any Debtor, and, therefore, cannot form any basis for liability of the Debtors' estates. (Reply ¶ 28.) At the time that the Harris Loans were transferred to Ocwen, the monthly payments made by Harris were $688.95 and $1,083.90. (*Id.*) Harris alleges that his monthly payments increased to $1,410.94 and $2,422.13. (*Id.*) The Trust contends, however, that the statements showing the increased payments that Harris describes are all dated after the servicing of the Harris Loans were transferred to Ocwen and, therefore, no Debtor is liable for those increased payments. (*Id.*) Additionally, the Trust contends that the lowering of Harris' credit score from 610 to 498 occurred "well after" servicing was transferred to Ocwen and, therefore, cannot be the basis for a claim against the Debtors. (*Id.*)

The Trust contends that the reduced amount that the Trust seeks to allow Harris' claims correlates to the damages that Harris asserted that he incurred as a result of the Debtors' alleged improper servicing of his loans from 2010 and 2011 that led to foreclosure proceedings being initiated against him. (*Id.* ¶ 29.) The Trust asserts that Harris seeks to recover more than the

6

amounts provided in the 1687 and 1689 Diligence Requests, but does not provide any reason as to why those amounts were inaccurate. (*Id.*) Rather, the Trust contends that Harris is attempting to hold the Debtors liable for the actions of non-Debtor entities that are not connected to the purported improper servicing of the Debtors that was the basis for the alleged damages in the 1687 and 1689 Diligence Responses. (*Id.*) Accordingly, the Trust argues that the Harris Claims should be reduced and allowed to the amounts asserted by Harris in the 1687 and 1689 Diligence Responses, as provided for in the Objection. (*Id.*)

## II.  DISCUSSION

Correctly filed proofs of claim "constitute[] prima facie evidence of the validity [and amount] of the claim. To overcome this prima facie evidence, the objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000) (internal citations omitted). By producing "evidence equal in force to the prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Tr. (In re Motors Liquidation Co.)*, No. 12 Civ. 6074, 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted). If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim." 4 COLLIER ON BANKRUPTCY ¶ 502.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). To determine whether a claim is allowable by law, bankruptcy

courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

Federal pleading standards apply when assessing the validity of a proof of claim. *See, e.g.*, *In re Residential Capital, LLC*, 518 B.R. 720, 731 (Bankr. S.D.N.Y. 2014); *In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure." (citations omitted)). Accordingly, a claimant must allege "enough facts to state a claim for relief that is *plausible* on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (emphasis in original) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal citation and quotation marks omitted). Plausibility "is not akin to a probability requirement," but rather requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal citation and quotation marks omitted). The court must accept all factual allegations as true, discounting legal conclusions clothed in factual garb. *See, e.g.*, *id.* at 677–78; *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true" (citing *Iqbal*, 556 U.S. at 678)). The court must then determine if these well-pleaded factual allegations state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). A claim is plausible when the factual allegations permit "the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).  A claim that pleads only facts that are "merely consistent with a defendant's liability" does not meet the plausibility requirement. *Id.* at 678 (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).  "The pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

Although "[claims] drafted by *pro se* [claimants] are to be construed liberally, [] they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with 'a fair understanding of what the [claimant] is complaining about and . . . whether there is a legal basis for recovery.'" *Kimber v. GMAC Mortg., LLC (In re Residential Capital, LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (ellipsis in original) (quoting *Iwachiw v. New York City Bd. of Elections*, 126 F. App'x 27, 29 (2d Cir. 2005)).

The Court concludes that the Trust adequately shifted the burden of proof to Harris through its Objection and that Harris thereafter failed to satisfy his burden in establishing the viability of his Claims.

First, the Objection sufficiently rebuts the prima facie validity of the amounts originally asserted in the Harris Claims.  The Objection also notes that Harris has not submitted any evidence to indicate that he is entitled to secured claims.

With respect to the clarified amounts asserted in the 1687 and 1689 Diligence Responses, the Trust does not dispute the amounts provided by Harris. The reduced amounts correlate to the damages that Harris asserted that he incurred as a result of the Debtors' alleged improper servicing of his loans from 2010–2011 that led to foreclosure proceedings being initiated against him. Thus, the Objection seeks that the Harris Claims be allowed as general unsecured claims against GMACM in the amounts of $2,216.21 and $6,183.62.

However, through his Opposition, Harris now seeks to recover more than the amounts provided in the Diligence Responses and argues that Ocwen should be found to be at fault for wrongful foreclosure and be forced to pay restitution of $240,000. (Harris Opp. at 2.)

It is clear that the alleged wrongdoing asserted in the Harris Opposition is connected to actions by Ocwen, a non-Debtor entity. First, the increased payments that Harris describes in his Opposition are all dated after the servicing of the Harris Loans were transferred to Ocwen. Furthermore, the lowering of Harris' credit score from 610 to 498 also occurred after servicing was transferred to Ocwen. Thus, the alleged damages caused by Ocwen do not create a viable claim against the Debtors.

Therefore, the Harris Claims shall be reduced to the amounts asserted in the 1687 and 1689 Diligence Responses, and be classified as general unsecured claims.

### III.    CONCLUSION

Therefore, the Objection is **SUSTAINED** and the Harris Claims are **ALLOWED** in the Modified Claim Amounts of $2,216.21 and $6,183.62, respectively, as general unsecured claims.

**IT IS SO ORDERED.**

Dated:    December 16, 2015
            New York, New York

_____*Martin Glenn*_____
MARTIN GLENN
United States Bankruptcy Judge