UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

### ORDER GRANTING RESCAP BORROWER CLAIMS TRUST'S NINETIETH OMNIBUS OBJECTION TO CLAIMS ((I) NO LIABILITY BORROWER CLAIMS AND (II) ALLOWED IN FULL BORROWER CLAIM)

Upon the ninetieth omnibus objection to claims (the "Objection")[1] of the ResCap

Borrower Claims Trust (the "Trust"), established pursuant to the terms of the confirmed Plan

filed in the above-referenced Chapter 11 cases, as successor in interest to the Debtors with regard

to Borrower Claim matters, seeking entry of an order, pursuant to section 502(b) of title 11 of the

United States Code (the "Bankruptcy Code"), Rule 3007(d) of the Federal Rules of Bankruptcy

Procedure, and this Court's order approving procedures for the filing of omnibus objections to

proofs of claim [Docket No. 3294] (the "Procedures Order"), disallowing and expunging the No

Liability Borrower Claims and allowing the Allowed in Full Borrower Claim, all as more fully

described in the Objection; and it appearing that this Court has jurisdiction to consider the

Objection pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Objection and the

relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Objection having been provided, and it appearing that no other or further notice need be

provided; upon consideration of the Objection and the *Declaration of Sara Lathrop in Support of*

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Objection.

the ResCap Borrower Claims Trust's *Ninetieth Omnibus Objection to Claims ((I) No Liability*
*Borrower Claims, (II) Reduce and Allow Borrower Claim, and (III) Allowed in Full Borrower*
*Claim)*, annexed thereto as <u>Exhibit 2</u>, and the *Declaration of Norman S. Rosenbaum in Support*
*of the ResCap Borrower Claims Trust's Ninetieth Omnibus Objection to Claims ((I) No Liability*
*Borrower Claims, (II) Reduce and Allow Borrower Claim, and (III) Allowed in Full Borrower*
*Claim)*, annexed thereto as <u>Exhibit 3</u>; and the Court having found and determined that the relief

sought in the Objection is in the best interests of the Trust, the Trust's constituents, the Debtors,

and other parties in interest and that the legal and factual bases set forth in the Objection

establish just cause for the relief granted herein; and the Court having determined that the

Objection complies with the Borrower Claim Procedures set forth in the Procedures Order; and

after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Objection is granted to the extent

provided herein; and it is further

ORDERED that pursuant to section 502(b) of the Bankruptcy Code, the claims

listed on <u>Exhibit A</u> annexed hereto (collectively, the "<u>No Liability Borrower Claims</u>") are

disallowed and expunged with prejudice; and it is further

ORDERED that Kurtzman Carson Consultants LLC, the Debtors' claims and

noticing agent ("<u>KCC</u>"), is directed to disallow and expunge the No Liability Borrower Claims

identified on the schedule attached as <u>Exhibit A</u> hereto so that such claims are no longer

maintained on the Claims Register; and it is further

ORDERED that pursuant to section 502(b) of the Bankruptcy Code, claim

number 1188 filed by Charles T. Clark (the "<u>Allowed in Full Borrower Claim</u>") is hereby

allowed as a general unsecured claim against Debtor GMAC Mortgage, LLC in the filed amount

of $19,712.00 and shall receive the treatment provided for Allowed Borrower Claims against the GMACM Debtors provided for in Article III.D.2(f) of the Plan; and it is further

ORDERED that KCC is directed to reflect on the Claims Register that the Allowed in Full Borrower Claim is allowed as a general unsecured claim against GMAC Mortgage, LLC in the amount of $19,712.00; and it is further

ORDERED that the Trust is authorized and empowered to take all actions as may be necessary and appropriate to implement the terms of this Order; and it is further

ORDERED that notice of the Objection, as provided therein, shall be deemed good and sufficient notice of such objection, and the requirements of Bankruptcy Rule 3007(a), the Case Management Procedures entered on May 23, 2012 [Docket No. 141], the Procedures Order, and the Local Bankruptcy Rules of this Court are satisfied by such notice; and it is further

ORDERED that this Order has no res judicata, estoppel, or other effect on the validity, allowance, or disallowance of any claim that is not identified in this Order or listed on Exhibit A annexed to this Order, and the Trust's and any party in interest's right to object on any basis are expressly reserved with respect to any such claim that is not identified in this Order or listed on Exhibit A annexed hereto; and it is further

ORDERED that this Order shall be a final order with respect to each of the No Liability Borrower Claims identified on Exhibit A annexed hereto, as well as the Allowed in Full Borrower Claim, as if each such Claim had been individually objected to; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

**IT IS SO ORDERED.**
Dated:  December 17, 2015
          New York, New York

                                          **/s/Martin Glenn**
                                             MARTIN GLENN
                           United States Bankruptcy Judge

**Exhibit A**

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| 2597 | John J Metkus III<br><br>9218 Edgeloch Dr Spring, TX 77379<br><br>$24,705.72<br><br>GMACM | Loan Modification | Debtor GMAC Mortgage Corporation originated the loan on June 2, 2006. GMAC Mortgage, LLC transferred its interest to Fannie Mae. Debtor GMAC Mortgage LLC serviced the loan from June 2, 2006 until servicing transferred to Green Tree Servicing on February 1, 2013.<br><br>Claimant asserts "Remodification and bankruptcy with principal adjustment" as the basis for the claim in box 2 of the proof of claim form and attached a letter and some type of transaction history statement.<br><br>Debtors have no liability for Claimant's assertion that the principal was arbitrarily changed on his loan after his loan modification. Debtors' servicing notes validate that principal balance was handled appropriately. The original principal balance of the loan was $152,000, which was paid down through the application of payments, July 7, 2006 to the first date mentioned by Claimant, November 4, 2011, resulting in the unpaid principal balance of $145,299.11. Debtors approved a permanent traditional loan modification on December 14, 2011 and the account was updated with the new loan modification terms on December 28, 2011. Through this traditional loan modification, the unpaid principal balance increased to $170,004.83, as outlined in section 1 of the permanent traditional loan modification documents, because of $14,815.85 in unpaid interest and $10,049.28 in escrow being capped and added to the principal.  A copy of the modification documents are attached hereto as Exhibit A-2. | 9-10 |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | The loan was service released to Green Tree Servicing LLC on February 1, 2013, the account was due for February 1, 2013 payment at time of servicing transfer. | |
| 2094 | Savannah Dobbins<br><br>638 1/2 S Liberty Alliance, OH 44601<br><br>$44,164.16<br><br>General Unsecured GMAC Mortgage, LLC | General Servicing Issues | Midwest America Financial Corp. originated the loan on June 13, 2000.  Debtor Residential Funding Company purchased the loan from Midwest America and transferred its interest when the loan was securitized on or about May 1, 2007 where LaSalle Bank, NA was appointed as trustee. Debtor Homecomings Financial serviced the loan from March 7, 2008 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage serviced the loan until servicing was transferred to Ocwen Loan Servicing on February 16, 2013.<br><br>Claimant asserts "Services performed Mortgage note" as the basis for the claim in box 2 of the proof of claim form. A letter was mailed to Claimant on June 21, 2013 requesting additional information. The response received on July 23, 2013 asserts "The information I sent to you shows that I had a chance to get completely caught up on my mortgage payments. With the help of East Akron Neighborhood Development Corporation (EANDC), GMAC would only accept one payment of $367.00. EANDC also help me get from a variable rate, to a fixed rate, EANDC thought it to be strange that they would only accept $367.00 when it was explained to them (GMAC) they could help make my mortgage current. Then my payment was misdirected to my escrow account. When I confronted them | 7-8 |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | (GMAC) about the payment they said it was nothing they can do. Which put me further behind. We tried to get the payments taken out of my disability check, they (GMAC) said no we had to be current. I never seen where my last payment of $900.00 was posted. I would like to be released from any and all debts owed to GMAC or Ocwen. If that cannot be done, please allow me to start with a clean slate. Erase all late fees, inspection fees and late mortgage payments."<br><br>On April 27, 2009, Debtors approved the Claimants for a loan modification, changing the loan from an adjustable rate to fixed rate of 6.750% (as of April 1, 2009). The new payment, effective May 1, 2009, was $366.90 ($352.90 P&I and $14.00 Escrow). Debtors also forgave debts of $83.34 in Corporate Advances and $141.75 in Inspections. Debtors received the check from the EANDC, and the funds of $367.00 were applied to the May 1, 2009 payment. Claimant made monthly payments from July 2009 to May 2012; however, the month of June 2009 was missed, and as a result, this made the loan consistently one month behind.<br><br>Debtors have no liability for failure to credit Claimant's last payment because such payment was properly credited.  The payment in the amount of $900.00, mentioned by Claimant, was received on August 20, 2012. It was applied to the May 2012 and June 2012 payments. The loan was approved for charge off on October 19, 2012 due to the very low equity in the property, and Debtors | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | determined it would cost less to charge off the property than to go through a foreclosure sale. Accordingly, prior to the Petition Date, the Debtors absolved the Claimant of any personal liability on the underlying mortgage note. | |
| 4076 | CHEYNEKE L BALLARD<br><br>237 Lexington Street Birmingham AL 35224<br><br>$40,000.00 General Unsecured<br><br>GMAC Mortgage, LLC | Wrongful Foreclosure | Southpoint Financial Services, Inc. originated the loan on October 5, 2005. Non-Debtor Decision One Mortgage Company purchased the loan from Southpoint. Debtor Residential Funding Company purchased the loan from Decision One and transferred its interest when the loan was securitized on or about December 1, 2005 where US Bank, NA was appointed as trustee. Debtor Homecomings Financial serviced the loan from December 8, 2005 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage LLC serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimant asserts "Mortgagor" as the basis for the claim in box 2 of the proof of claim form. A letter was mailed to Claimant on May 20, 2013 requesting additional information. The response received on June 25, 2013 asserts "My house was threatened by foreclosure over 5 times . I have spent over 15,000.00 on pulling my house out of foreclosure. Many of my documents were destroyed in the tornado which occurred in B'ham AL April 27, 2011. However you may retrieve all necessary documents from GMAC & Ocwen." | 8-9 |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Debtors have no liability for the allegations that the Debtors acted improperly with regard to foreclosure because in each of the two instances that the account was referred to foreclosure, Claimant was many months past due. Additionally, the Debtors acted appropriately in reviewing Claimant's account for a modification, and on two occasions, granted permanent modifications to the Claimant.<br><br>Per the Debtors' servicing notes and payment history, the loan was first referred to foreclosure on October 20, 2006. A reinstatement agreement was reached on November 27, 2006, and the loan was fully reinstated on April 29, 2007. Per the payment history, Claimant's payments were a month behind by July 2007. Debtors set up a repayment plan on June 2, 2008; however, Claimant failed to make the required payment on June 29, 2008. A repayment plan set up on September 4, 2008 and Claimant again failed to make the required payment on October 8, 2008. Breach letters were sent to Claimant on December 12, 2008, January 9, 2009, March 6, 2009 and April 3, 2009 because the account was owing for the payment due the month immediately prior (*i.e.,*the payments were one month behind). The Debtors received a workout package on April 24, 2009. The modification was denied on May 19, 2009 because it was not possible to reach an affordable payment under the investor's guidelines. The package was re-reviewed on July 28, 2009 and Claimant was approved for a trial HAMP modification. Upon completion of the trial, Claimant was denied for a permanent | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | HAMP modification on November 9, 2009 because the necessary forbearance was too high.  A permanent traditional modification was approved on November 11, 2009 and completed on January 13, 2010, bringing the loan current.<br><br>Claimant became delinquent again in February 2010, and was three months delinquent in September 2010.  Breach letters were issued on September 10, 2010, October 27, 2010 and December 16, 2010.  A workout package was received on November 23, 2010, and was denied for a HAMP modification on November 30, 2010 because the debt-to-income ratio ("DTI") was 25% or less (so the monthly loan payment should have been affordable).  On December 6, 2010, Debtors stopped the review after being informed by Claimant during a phone conversation that she would submit updated financial information.  Claimant was informed during the conversation that review would be stopped until Debtors received the updated information.  During the conversation  a new workout package was received on January 6, 2011.  A missing items letter was sent on January 12, 2011, and the missing information was received on January 27, 2011.  On February 3, 2011, Claimant was denied for a HAMP modification because the debt-to-income ratio was 25% or less (so the payment should have been affordable).  A traditional trial modification was approved on February 2, 2011 and the documents were executed on March 3, 2011.  A permanent modification was approved on April 21, 2011, but Claimant did not return the documents by the investor's deadline, and therefore the modification was denied. | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Debtors mailed to Claimant an offer to permit her to pay off her loan for $32,940 on June 16, 2011.  Claimant advised on June 20, 2011 that she could not afford the settlement, and the offer was closed.<br><br>A new workout package was received on July 7, 2011.  A missing items letter was sent on July 14, 2011, and the missing items were received on July 26, 2011.  Claimant was denied for HAMP modification on July 26, 2011 because the DTI was 25% or less.  A traditional trial modification was approved on August 8, 2011 and completed successfully.  A permanent loan modification was approved on November 10, 2011 and completed on November 30, 2011, bringing the loan current.<br><br>Claimant became delinquent again in January 2012. Claimant was four months delinquent in June 2012, and a breach letter was sent on June 4, 2012.  Claimant submitted an incomplete workout package on August 8, 2012.  A missing items letter was sent on August 20, 2012.  Claimant submitted additional incomplete workout packages on August 24, 2012, September 10, 2012 and September 12, 2012 before providing the requested information on October 4, 2012.  On October 11, 2012, Claimant was denied for a HAMP modification because the payment could not be reduced by at least 10%.  On October 12, 2012, Claimant was denied for traditional modification because the payment could not be | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | reduced sufficiently to be affordable.  The loan was referred to foreclosure on October 23, 2012.<br><br>A workout package was received on November 15, 2012.  Claimant was denied a HAMP modification on November 28, 2012 because the debt-to-income ratio did not meet the HAMP guidelines.  Claimant was denied a traditional modification on November 29, 2012 because the payment could not be reduced sufficiently to be affordable.  However, a repayment plan was approved on December 21, 2012. Claimant filed Chapter 13 bankruptcy on December 21, 2012, and the foreclosure was dismissed on December 27, 2012.  Claimant's chapter 13 plan provided that payments were to be made to the Debtors through a chapter 13 trustee. Claimant's bankruptcy case was dismissed on January 14, 2014 after she failed to maintain her payments.  The loan was paid in full in June 2015. | |
| 3555 | John Douglas Bailey<br><br>6022 Club Oaks Place Dallas, TX  75248<br><br>$46,400.00 General Unsecured<br><br>Homecomings Financial, LLC and | Loan Modification | Homecomings Financial, LLC f/k/a Homecomings Financial Network Inc. originated the loan on March 7, 2008. Debtor GMAC Mortgage, LLC purchased the loan from Homecomings and transferred its interest to Fannie Mae. Debtor Homecomings Financial serviced the loan from March 7, 2008 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage LLC serviced the loan until servicing transferred to GreenTree Servicing on February 1, 2013.<br><br>Claimant asserts "unwillingness of GMAC, Homecomings to resolve errors" as | 9-10 |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
|  | GMAC Mortgage, LLC |  | basis for claim in box 2 of the proof of claim form. An attachment to the Proof of Claim asserts "In brief we mortgaged the house in 2009 with Homecomings. By 2011 for medical, and other financial reasons we were in financial trouble. We tried to sell the house in 2010-2011 via Prudential Real Estate and failed. As a parallel effort we applied to HUD-EHLP for relief. At the end of 2011 our application was rejected by HUD because the house was not recorded properly by GMAC (Homecomings) in the county tax records. After several months of reapplying and other staff work, we were accepted for HUD money ($50,00.00) in April 2012. While this was going on, by agreement, we made no monthly mortgage payments and GMAC has made charges that were erroneous or inaccurate. A solution is easily available which uses my money, HUD money and corrects the account. Sadly no progress has been made since April 1, 2012. GMAC it seems will not work cooperatively. Particularly, since the Chapter 11 filing nobody at GMAC has been willing to work with me, and HUD to develop a financing solution, using my money, HUD money, along with GMAC support for my problem. Instead GMAC has rolled up charges to me, late, legal, excess escrow, principal, etc. and has carried on so there is a high likelihood that the HUD-EHLP situation would go away. This with mutual effort is an easy situation to solve - I need GMAC to knock back 1) Charges for Errors 2) Escrow charges in excess of those paying taxes and insurance 3) Mortgage charges incurred from GMAC covering time when GMAC kept the program from succeeding....." A letter was mailed to Claimant on June 21, 2013 requesting additional information. |  |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Response received from Claimant on July 17, 2013 requested an extension to respond. Debtor gave Claimant until August 5, 2013 for that response, however there is no record of a response.<br><br>Debtors have no liability for the allegation that GMACM did not work with the Claimant to attempt to approve a loan modification or approval through the EHLP program because, as described more fully below, the Debtors attempted numerous times to work with the Claimant on loss mitigation options, including loan modifications, short sales, and applications to EHLP. However, none of these attempts were successfully completed because either Claimant did not make the necessary payments, Claimant was unsuccessful in selling the property, or EHLP did not approve the Claimant's application.<br><br>Debtors approved Claimant for a loan modification on February 11, 2010. The new payments would go into effect with the April 1, 2010 payment.  Even with the loan modification, Claimant was still unable to keep up with the payments. A Repayment Agreement was put in place on June 9, 2010. Claimant agreed to pay $2,585.17 by June 15, $1,723.44 by June 30, $1,723.44 by July 15, and $1,723.46 by July 31. That plan was cancelled when Claimant called to say that the payment could not be made by June 15. Debtors reset the plan, having $3,000.00 due by June 30, 2010, $3,019.23 due by July 31, August 31, September 30 and October 31, 2010, and $3,019.28 due by November 30, 2010. Debtors received $2,585.17 | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
|  |  |  | on June 30; however, this was short of the $3,000.00 that was due on this date. The repayment plan was cancelled, as Claimant did not meet the requirements of the agreement.<br><br>On July 23, 2010, Claimant was approved by the Debtors for a Homesaver Forbearance Plan. This plan reduced Claimant's monthly payment to $1,412.13 for the time period of August 15, 2010 to January 15, 2011. At the same time, Claimant advised Debtors that he was trying to market the property.<br><br>On September 13, 2010, Claimant advised Debtors that there were offers on the property, but there are issues with the foundation and water and he does not know if the property will sell at the price to pay off mortgage. Debtors advised Claimant of the option to undergo a short sale and sell "as is." Offers will be considered but a short sale would be subject to approval by the loan investor. As of December 1, 2010, Claimant had three offers but none could get financing. On December 2, 2010, Debtors received a Federal Reserve complaint, which was responded to on December 9, 2010. Additional information was provided on December 14, 2010. In the complaint, the Claimant alleged that Debtors were not helping with Loss Mitigation efforts. Debtors responded with the information provided above.<br><br>On January 28, 2011, Claimant called to state that he could no longer afford the |  |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
|  |  |  | payments under the loan. Debtors tried to see if the Homesaver Forbearance Plan, which was set to end soon after, could be extended, as the property was in a state with a fast foreclosure process. This would allow Claimant more time to try to market the property. On March 25, 2011, the investor would no longer extend the plan. The Claimant would have to reinstate the loan in full or set up a new repayment plan. Claimant was informed that he would have until April 1, 2011 to provide a deposit to Debtors, otherwise, the Debtors would have no choice but to proceed with a foreclosure action. On April 1, 2011, Claimant called to state he could make a $4,000.00 payment by April 15, which he did on April 13. On April 25, 2011, Claimant requested a payoff statement that he could show to a realtor, as the realtor wanted to reduce the sale price from $496,000.00, which Claimant believed was too low to pay off the mortgage.<br><br>Debtors sent a HOPE letter to Claimant on July 14, 2011 in order to schedule a face to face meeting to discuss a work out option. A meeting was set up for July 28, 2011. At the July 28 meeting, Claimant presented a workout package as well as advised Debtors that he has applied for help from the EHLP.<br><br>Debtors referred the loan to foreclosure on August 2, 2011. Claimant called on August 3, 2011 to inquire about the foreclosure, at which time Debtors explained that foreclosure was initiated because the loan is 214 days delinquent and there is no permanent repayment arrangements in place. Claimant stated that he was |  |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | approved for funding through EHLP; however, he was waiting for it in writing. Debtors received the conditional approval from EHLP on September 20, 2011. On September 22, 2011, Debtors provided the state authorities with the amount needed to reinstate the account, as requested by the EHLP program. Debtors then placed the foreclosure file on hold until November 7, 2011 to allow time for final EHLP approval, or any possible short sale opportunities.<br><br>Debtors continued to keep the foreclosure file on hold from November 2011 through October 31, 2012. Final approval was never provided from ELHP. In addition, the amount conditionally approved ($50K) by EHLP was no longer enough to reinstate the loan. Claimants could not come up with the additional funds (approximately $7,000.00) to reinstate. EHLP could not provide the $50,000 unless that amount fully reinstated the loan.<br><br>At the time the servicing of the loan transferred to Green Tree on February 1, 2013, the foreclosure file was on hold due to the escrow dispute, with a due date of January 1, 2011. | |
| 4384 | Pauline & Charles Isidienu<br><br>311 Capewood Drive League City, TX 77573 | Escrow Issues | Homecomings Financial, LLC f/k/a Homecomings Financial Network Inc. originated the loan on July 9, 2007. Debtor GMAC Mortgage, LLC purchased the loan from Homecomings and transferred its interest to Freddie Mac.  Debtor Homecomings Financial serviced the loan from March 7, 2008 until servicing transferred to | 8-9 |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | $44,508.00<br>General Unsecured<br><br>Homecomings Financial, LLC and GMAC Mortgage, LLC | | GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage LLC serviced the loan until loan was paid in full on September 2, 2011.<br><br>Claimants assert "Mortgage note, damages incurred" as the basis for the claim in box 2 of the proof of claim form. An attachment included with the Proof of Claim asserts "The main basis of my claim is regarding the amount of money that GMAC charged me monthly for the mortgage, which increased drastically due to their unprofessionalism. My original note was roughly $1,688.09/month (I've attached evidence of this). I had an insurance policy included in the cost per month. I've attached a copy of a notice from the agent regarding this policy, which I still hold until this day. When my policy is due for renewal, my agent sent the paperwork in to GMAC, who claimed that said paperwork was sent to the wrong department. They neither contacted myself nor my agent of this, nor did they just forward the paperwork to the correct department. Rather they sat on it in order to allow it to expire, and then force their own insurance on me, to the tune of $10,340.23. In fact they started charging me BEFORE MY POLICY ACTUALLY EXPIRED (as evidenced by a letter from me to them, claiming just that).  The roughly $10,000.00 was added to my monthly payments, sending said payments steadily upward to around $3,125.66.....In order to keep from losing my homes I was forced to borrower from my 401K. I took out 2 loans, totaling $40,000.00 to serve as a windfall for bills and for both homes....I looked to GMAC to help me to do so, which it refused. I was forced to look into other entities, and fell prey to the | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Home Rescue Program, a scam operation purporting itself to be a government program. It cost me $4,000 to 'refinance' each home, which of course they did not actually do. They took the money and disappeared. I wound up losing $8,000 on account of this scam. I do not hold GMAC responsible for money lost on my other home - however, I would not have attempted to refinance my GMAC mortgage if not for its artificially inflating my cost per month. I believe I am owed the $4,000 I lost for this home. I also believe I am owed the $10,000 plus interest I borrowed specifically for this home, as evidenced in a separate attachment." A letter was mailed to Claimant on June 21, 2013 requesting additional information. The response received on July 22, 2013 reiterated the information above.<br><br>The Debtors have no liability for charging Claimants the incorrect amount because at all times the amount charged was proper under section 3 of the Mortgage Note.  Claimants were initially required to pay a monthly escrow in the amount of $672.99 for taxes and hazard insurance, as well as $61.50 for PMI. Monthly mortgage payment at origination was $1,854.36 (not $1,688.09 / month). That monthly payment amount changed to $2,127.17 as of July 2008 after a period escrow analysis. In November 2008, again after periodic escrow analysis, the monthly payment amount changed again to $1,688.09. Claimants did make payments in the amount of $3,125.66 for the months of April, May and June of 2008, but that amount went down to $2,305.75 in July 2008. A new Escrow Statement generated February 4, 2010 lowered the monthly payment to | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | $2,071.95. The February 3, 2011 Escrow Statement further lowered the payment to $2,067.81. The annual disbursements include PMI, taxes, and insurance.<br><br>Debtors sent Claimants a letter dated October 23, 2008, which stated that the insurance policy information provided did not include the required windstorm coverage. A follow up letter was sent, dated December 7, 2008, which advised the Claimant that if proof was not received within 45 days, then coverage up to $180,000 would be placed. Then, the Debtors sent a letter dated January 25, 2009, advising that a windstorm insurance policy was purchased for the period of July 25, 2008 through July 25, 2009 in the amount of $5,661.90. On October 16, 2008, Claimants sent Debtors a fax, which showed a notice of a windstorm insurance policy with an expiration date of October 24, 2008. On November 2, 2008, Claimants resent the same notice, as well as an invoice for policy renewal in the amount of $658.00; however, the renewal does not specify that it is for windstorm coverage.<br><br>Debtors made additional windstorm coverage disbursements on March 3, 2010 and March 4, 2011, which renewed the earlier placed insurance.<br><br>The loan was paid in full on September 2, 2011 and an escrow refund of $5,444.39 was sent to Claimants. | |

| Claim No(s). | Name and Address Claim Amount Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| 4388 | Eldorado Canyon Properties, LLC<br><br>c/o Attorney Israel M. Sanchez, Jr.<br>Sanchez & Associates<br>90 Homestead Circle<br>Milford, NH 03055-4250<br><br>$30,450.08<br>Secured Claim<br><br>Residential Funding Company, LLC | Res Judicata | Sherwood Mortgage Group, INc. originated the loan on April 8, 2003.  Debtor GMAC Mortgage LLC serviced the loan from April 15, 2003 until servicing transferred to Ocwen Loan Servicing on February 16, 2013.<br><br>Claimant asserts "wrongful, invalid foreclosure of real property" as basis for claim in box 2 of the proof of claim form. Claimant attaches to the proof of claim a series of deeds and assignments of mortgage deed.  Claimant provides no further information in the proof of claim. On June 21, 2013, Debtors mailed to Claimant a letter requesting additional information and documentation in support of the claim; however, Claimant failed to respond.<br><br>Claimant filed litigation against Debtor on or about November 21, 2011 in the Suffolk Superior Court of the Commonwealth of Massachusetts at case no. 11-4239.  The litigation asserts four causes of action for declaratory relief only, related to the foreclosure of a property in which Claimant asserts an interest as a lien holder of a second mortgage.<br><br>That case was consolidated with Debtor's eviction action in the United States District Court for the District of Massachusetts, case no. 1:11-CV-12111.<br><br>On April 30, 2012 Claimant's causes of action for counts I and II were dismissed by a motion to dismiss filed by the Debtors, which the Court treated as a Motion for Judgment on the Pleadings, because Claimant had no standing to challenge the | 11 |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | validity of the mortgage assignments to which it was not a party.  The remaining claims related to the validity of the foreclosure sale proceeding.  Claimant filed a Notice of Appeal almost a year later on March 8, 2013.  In response, Debtors filed a motion to dismiss the interlocutory appeal and for sanctions.  On October 28, 2013, Debtors obtained an order for sanctions, including Debtors' costs, against Claimant and dismissal of the appeal.<br><br>On April 24, 2014, Debtors filed a Motion for Default Judgment related to the remaining claims regarding the foreclosure proceeding, as well as for Payment of Fees and Costs against Claimant.  The Court granted Debtors' motion in part, and also granted  Debtors its attorneys' fees and costs in the amount of $1,500.  The remaining claims in the consolidated case were to proceed to trial on October 20, 2014.  However, Claimant's case was dismissed with prejudice for failure to pay the sanctions, which dismissed all of the causes of action asserted by Claimant.  A copy of the order is attached to the objection as <u>Exhibit 5</u>  No appeal was filed by Claimant. | |