# **Exhibit 3**

**Lathrop Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) ) | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | ) ) ) | Chapter 11 |
| Debtors. | ) ) | Jointly Administered |

**DECLARATION OF SARA LATHROP IN SUPPORT OF RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO PROOF OF CLAIM NO. 2188 FILED BY KENNETH REAVES**

I, Sara Lathrop, hereby declare as follows:

1. I serve as Senior Claims Analyst for the ResCap Borrower Claims Trust (the "**Borrower Trust**"), established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] confirmed in the above-captioned bankruptcy cases (the "**Chapter 11 Cases**") of Residential Capital, LLC ("**ResCap**"), a limited liability company organized under the laws of the state of Delaware, and certain of its subsidiaries (collectively, the "**Debtors**"). In such capacity, I am familiar with the Debtors' claims reconciliation process and the loan servicing operation of GMAC Mortgage, LLC ("**GMAC Mortgage**"). I am over the age of 18 and authorized to submit this declaration (this "**Declaration**") in support of the Borrower Trust's objection (the "**Objection**") to Proof of Claim No. 2188 (the "**Claim**") filed by Kenneth Reaves (the "**Claimant**").

2. I began my association with ResCap in June 2006 as an associate in the Default Division of the loan servicing operation of GMAC Mortgage. In 2008, I became a Default Quality Control Specialist at GMAC Mortgage, a position that I held until I became a

1

ny-1215433

Supervisor in the Default Division in 2009. In 2011, I became a Supervisor in the Loss Mitigation Division of GMAC Mortgage's loan servicing operation, and in February 2012, I became a Manager in that division. In this role, I supervised GMAC Mortgage associates in their efforts to provide Borrowers[1] with loss mitigation options and assisted in the development of GMAC Mortgage's loss mitigation policies. In January of 2013, I became the Regulatory Compliance Manager for ResCap. I became Senior Claims Analyst for ResCap in July 2013 and continued in this role when the ResCap Liquidating Trust (the "**Liquidating Trust**") was established in December 2013.[2] As noted above, my current position is Senior Claims Analyst for the Borrower Trust.

3.  Except as otherwise indicated, all facts set forth in this Declaration are based upon my familiarity with the Debtors' operations, the Debtors' books and records kept in the course of their regularly conducted business activities (the "**Books and Records**"), the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "**Schedules**"), my review and reconciliation of claims, information learned from my review of relevant documents, and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors and the Liquidating Trust, and the Borrower Trust's professionals and consultants. If I were called upon to testify, I could and would testify competently to the facts set forth in this Declaration on that basis.

4.  I or Liquidating Trust personnel have reviewed and analyzed the proof of claim forms and supporting documentation filed by the Claimant. Since the Plan went effective

---

[1] As used herein, the term "**Borrower**" has the meaning ascribed to it in the Plan.

[2] The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

2

ny-1215433

and the Borrower Trust was established, I, along with members of the Liquidating Trust have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims, and determine the appropriate treatment of the same. In connection with such review and analysis, where applicable, I or Liquidating Trust personnel, together with professional advisors, have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (vi) the official claims register maintained in the Chapter 11 Cases.

### The Loan and the Property

5.     On or about December 27, 2005, Kenneth Reaves executed and delivered a promissory note (the "**Note**") in favor of non-debtor GMFS, LLC. See Note at Ex. A hereto. Mr. Reaves' obligations under the Note were secured by a Security Deed (the "**Mortgage**" and, together with the Note, the "**Loan**") encumbering certain real property located at 3481 Oak Run Drive, Lithonia, GA 30038 (the "**Property**"). See Mortgage at Ex. B hereto.

6.     Homecomings began servicing the Loan on January 31, 2006 until GMAC Mortgage began servicing the loan in July 2009.

### The Default & Foreclosure Sale

7.     The Loan became delinquent on numerous occasions throughout the time when the Debtors serviced it. In fact, the Loan was referred to foreclosure five times before the foreclosure sale at issue in the underlying complaint.

8.     On April 12, 2011, GMAC Mortgage mailed an "Options to Avoid Foreclosure" letter to Claimant as he was past due on the payments owing for March 1 and April

3

ny-1215433

1, 2011. See also Servicing Notes at 57.[3] GMAC Mortgage then issued a breach of contract notice on May 3, 2011.

9. Thereafter, on or about June 6, 2011, GMAC Mortgage referred the Loan to foreclosure. See also Servicing Notes at 53.

10. On July 29, 2011, an Assignment of the Security Deed in favor of U.S. Bank National Association as Trustee for RASC 2006KS2 was recorded in the real property records of DeKalb County, Georgia.

11. The foreclosure sale was held on September 6, 2011. See also Servicing Notes at 27. At the time of the sale, the unpaid principal balance of the loan was $105,321.06. See also Servicing Notes at 3.

12. Based on a broker price opinion obtained by the Debtors before the foreclosure sale, the estimated sale price would be $37,050, and the recommended list price was $41,000. A copy of the broker price opinion obtained by the Debtors for the Property is attached hereto as **Exhibit D**. Accordingly, the Claimant had no equity in the Property at the time of the foreclosure sale.

---

[3] A copy of the Servicing Notes maintained by the Debtors for the Loan is attached hereto as **Exhibit C**.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 18, 2015

/s/ Sara Lathrop
Sara Lathrop
Senior Claims Analyst for ResCap Borrower Claims Trust