1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 12-12020-mg

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


RESIDENTIAL CAPITAL, LLC, et al.,


          Debtors.


- - - - - - - - - - - - - - - - - - - -x


          United States Bankruptcy Court

          One Bowling Green

          New York, New York


          November 18, 2015

          10:06 AM


B E F O R E:

HON. MARTIN GLENN

U.S. BANKRUPTCY JUDGE

1

2   (CC: Doc# 9253) ResCap Borrower Claims Trusts Objection to

3   Claim No. 2130

4

5   Doc# 8452 Case Management Conference Regarding Claim(s) Numbers

6   5610, 5612 Filed by Richard D. Rode.

7

8   Doc# 9311 Status Conference on ResCap Borrower Claims Trusts

9   Seventy-Fifth Omnibus Objection to Claims (No Liability

10   Borrower Claims) Solely as it Relates to the Claim Filed by

11   Rhonda Gosselin.

12

13   (CC: Doc# 8042) Status Conference regarding the claim(s) of

14   Kenneth Dlin.

15   Hearing going forward regarding the claim(s) of Kenneth Dlin.

16

17   Doc# 8903 Case Management and Scheduling Conference Regarding

18   Objection of the ResCap Borrower Claims to Proof of Claim Filed

19   by Pamela D. Longoni and Jean Gagnon Claim Nos. 2291, 2294,

20   2295 and 2357 .

21

22   Doc# 9226 Status Conference Regarding The ResCap Liquidating

23   Trusts and ResCap Borrower Claims Trusts Objection to Claim

24   Nos. 112, 114, 416 and and 417 Filed by Erlinda Abibas Aniel,

25   Fermin Solis Aniel, and Marc Jason Aniel.

1

2  (CC: Doc# 9201, 9232) ResCap Borrower Claims Trusts Eighty-

3  Ninth Omnibus Objection to Claims ((I) No Liability Borrower

4  Claims and (II) Reduce and Allow Borrower Claims).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20  Transcribed by:  Penina Wolicki

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

4

1

2  A P P E A R A N C E S :

3  MORRISON & FOERSTER LLP

4      Attorneys for The ResCap Borrower Claims Trust

5      250 West 55th Street

6      New York, NY 10019

7

8  BY:  JORDAN A. WISHNEW, ESQ.

9      JESSICA J. ARETT, ESQ.

10     ERICA J. RICHARDS, ESQ.

11

12

13 BRADLEY ARANT BOULT CUMMINGS LLP

14     Attorneys for ResCap Borrower Claims Trust

15     One Federal Place

16     1819 Fifth Avenue North

17     Birmingham, AL 35203

18

19 BY:  STEWART M. COX, ESQ. (TELEPHONICALLY)

20

21

22

23

24

25

```
 1
 2    BRADLEY ARANT BOULT CUMMINGS LLP
 3          Attorneys for ResCap Borrower Claims Trust
 4          100 North Tryon Street
 5          Suite 2960
 6          Charlotte, NC 28202
 7
 8    BY:   AVERY A. SIMMONS, ESQ. (TELEPHONICALLY)
 9
10
11    ERICKSON, THORPE & SWAINSTON, LTD.
12          Attorneys for Pam Longoni, et al.
13          99 West Arroyo Street
14          Reno, NV 89509
15
16    BY:   THOMAS P. BEKO, ESQ. (TELEPHONICALLY)
17
18
19    NIALIS LAW GROUP, PLC
20          Attorneys for Claimant Wieland
21          500 North State College Boulevard
22          Suite 1200
23          Orange, CA 92868
24
25    BY:   MARK A. NIALIS, ESQ. (TELEPHONICALLY)
```

6

1

2   ACCESS LEGAL SERVICES

3        Attorneys for Richard Rode

4        310 Fourth Avenue South

5        Suite 5010

6        Minneapolis, MN 55415

7

8   BY:   WENDY A. NORA, ESQ. (TELEPHONICALLY)

9

10

11  ERLINDA ARIEL

12        Claimant Pro Se (TELEPHONICALLY)

13

14

15  SARA M. LATHROP

16        Claimant Pro Se (TELEPHONICALLY)

17

18

19

20

21

22

23

24

25

RESIDENTIAL CAPITAL, LLC, ET AL.                                7

1                      P R O C E E D I N G S

2              THE CLERK:  All rise.

3              THE COURT:  All right, please be seated.  We're here

4       in Residential Capital, number 12-12020.  Mr. Wishnew?

5              MR. WISHNEW:  Good morning, Your Honor.  Jordan

6       Wishnew, Morrison & Foerster, for the ResCap Borrower Claims

7       Trust.  Your Honor, quickly, on pages 9 and 10 are two matters

8       originally scheduled to go forward today which have been

9       consensually resolved with the claimants.  That is item 4, the

10      ResCap Borrower Claims Trust's objection to proof of claim

11      numbers 2769 and 2772 filed by Alvin and Sandra LaBostrie; as

12      well as item 5 on page 10, the Borrower Claims Trust's

13      objection to claim numbers 3734 and 3735, filed by Jacquelyn

14      Wieland.  As I mentioned, those are both being resolved

15      consensually and do not need to be addressed by the Court.

16             THE COURT:  Okay.

17             MR. WISHNEW:  So that brings us to the first matter

18      going forward today, page 11 of today's agenda --

19             THE COURT:  Before you get to that, what is the status

20      of the Connecticut Housing Financing Authority?  I mean, it has

21      been adjourned -- I can't even keep track of the number of

22      times.

23             MR. WISHNEW:  Many, many times, Your Honor.  It's one

24      of those things where I believe -- without speaking out of

25      turn -- we're simply trying to effectuate a transfer of

RESIDENTIAL CAPITAL, LLC, ET AL.                    8

1  servicing, and it's a matter of certain parties signing off on

2  the logistics.  And I think it's just a matter of getting all

3  the T's crossed and the I's dotted.  And so it's just -- we're

4  putting it on the calendar to try and keep people's feet to the

5  fire, but it's not quite done yet, Your Honor.

6          THE COURT:  Okay.  I just don't want to find myself in

7  the situation where it shows up on a calendar, and all of a

8  sudden people show up and expect to litigate the matter.

9          MR. WISHNEW:  Absolutely understood, Your Honor.

10          THE COURT:  Okay.

11          MR. WISHNEW:  Yes.  That's certainly not our intention

12  in any way.

13          THE COURT:  So hopefully it'll all get resolved

14  satisfactorily, but if it's not, you've got to give me a heads

15  up --

16          MR. WISHNEW:  Oh, absolutely.

17          THE COURT:  -- and we'll schedule it.  I was just been

18  rolling over, rolling over, rolling over.

19          MR. WISHNEW:  Yes.

20          THE COURT:  Okay.

21          MR. WISHNEW:  Absolutely.

22          THE COURT:  All right.

23          MR. WISHNEW:  So the first matter going forward today,

24  Your Honor, is under section 3, uncontested matter with

25  certificate of no objection, item 6 on page 11, ResCap Borrower

1  Claims Trust's objection to claim number 2130 filed by Frederic

2  and Lesley Edquid.

3            Your Honor, this is an objection to a claim that was

4  filed by the Borrower Claims Trust in October 14th at docket

5  number 9253.  The Borrower Claims Trust served claimants'

6  counsel on October 14th.  The affidavit of service is docketed

7  at 9264.  The responses were due by November 4th.  To date,

8  we've not received any response.  In fact, we filed a

9  certificate of no objection at docket number 9309.

10           This deals with a single claim, Your Honor, claim

11  number 2130 filed by the claimants against GMAC Mortgage, in

12  the amount of $802,158.19.  The claim arises for damages

13  purportedly arising -- or owing under the Servicemembers Civil

14  Relief Act.

15           As set forth in more detail in the objections, Your

16  Honor, we believe that there is no valid basis for a claim

17  against the Borrower Claims Trust and GMAC Mortgage.  I can go

18  into our reasons but would rely on the papers.

19           THE COURT:  That's fine.  All right, the objection is

20  sustained.

21           MR. WISHNEW:  Your Honor, I have a form of order.  If

22  I could hand it up?

23           THE COURT:  At the end of the hearing you can hand it

24  up.

25           MR. WISHNEW:  Okay; very good.

1    So Your Honor, I will turn the podium over to my

2  colleague Erica Richards, who will deal with the first case

3  management and status conference, which deals with the claims

4  of Mr. Richard Rode.

5    THE COURT:  Okay.  All right.  And Mr. Rode's counsel

6  is on the phone.

7    MS. NORA:  Yes, Your Honor.  Wendy Alison Nora.

8    THE COURT:  All right, Ms. Nora, thank you.

9    Ms. Richards go ahead.

10    MS. RICHARDS:  Good morning, Your Honor.  Erica

11  Richards of Morrison & Foerster, appearing on behalf of the

12  ResCap Borrower Claims Trust.  As Mr. Wishnew indicated, the

13  next item on the agenda is a scheduling conference in

14  connection with the objection of the ResCap Borrower Claims

15  Trust to two proofs of claim filed by Richard Rode.

16    On September 2nd Your Honor entered a memorandum

17  opinion sustaining the Borrower Trust's objection to Mr. Rode's

18  claims in all respects except for one.  That memorandum opinion

19  is docketed at number 9094.  And the sole claim remaining is

20  Mr. Rode's claim for breach of contract related to a loan

21  modification agreement.

22    Pursuant to the order, on October 15th the parties

23  appeared before you for a scheduling conference.  At that time,

24  Mr. Rode indicated that he was in the process of retaining

25  counsel and requested that the hearing be adjourned to today to

1  allow his counsel time to review the scheduling order.

2          Thereafter Mr. Rode did retain Ms. Nora.  In

3  accordance with your Court's instructions, we prepared a

4  proposed scheduling order based on the form posted on your

5  Court's Web site.  We provided that to Ms. Nora.

6  Unfortunately, Your Honor, we have been unable to agree on a

7  form of order or schedule, and we're seeking the Court's

8  assistance in setting a schedule today.

9          I have a form  that we prepared and provided to Ms.

10 Nora that I could hand up.

11         THE COURT:  Please do.

12         MS. RICHARDS:  Okay.

13         THE COURT:  Ms. Nora, you have a copy of what was

14 proposed?

15         MS. NORA:  Yes, and the Borrowers Claims Trust should

16 have my response to that, Your Honor.  But I'm not physically

17 present to provide you with my response.  So I will state it

18 orally when the time is correct to do that.

19         THE COURT:  That's fine, Ms. Nora.  Let me look at

20 this.

21         Go ahead, Ms. Richards.

22         MS. RICHARDS:  Your Honor, so I'll just walk through

23 the order and explain to you why we believe the proposed dates

24 are reasonable.  The first enumerated paragraph proposes that

25 any proposed amendments to the claim be filed by December 8th.

1  Mr. Rode filed a response to the initial claims objection that

2  asserted a number of additional claims for wrongful foreclosure

3  and certain statutory causes of action.  We opposed those

4  claims on the basis they were untimely amendments, and Your

5  Honor sustained that objection in pages 16 and 17 of the

6  memorandum opinion and found that they were untimely, did not

7  relate back to his prior claims, and cause did not exist to

8  allow him to assert new late claims.

9          We would oppose additional amendments on the same

10  grounds, and we believe if Ms. Nora wants to try again to amend

11  the claim, she should do so as soon as possible.

12          THE COURT:  No, nothing is going to be amended.  The

13  opinion -- I want to make clear that the only thing that

14  survived is the breach of contract claim.  It's discussed in my

15  memorandum opinion at pages 23 through 28.  That's the only

16  claim that remains.  It's the only claim that's going to be

17  dealt with by the Court.  So there will be no paragraph in a

18  case management order on amending pleadings.

19          MS. RICHARDS:  Thank you, Your Honor.  We're happy to

20  do that.

21          THE COURT:  So let's deal with fact discovery.  What

22  discovery is it that the Trust wishes to take?

23          MS. RICHARDS:  So Your Honor, we believe the contested

24  factual matters relate primarily to Mr. Rode's damages in

25  connection with the breach of contract.  The Trust may also

RESIDENTIAL CAPITAL, LLC, ET AL.                    13

1  have certain affirmative defenses to the claim regarding the

2  unilateral mistake.  We may or may not.  I don't anticipate

3  that we'll need to take discovery from Mr. Rode in connection

4  with those defenses, so we think discovery is limited.

5          We have made a number of informal requests from Mr.

6  Rode for discovery regarding his damages, and I think we'll be

7  in a position to serve him with formal requests as soon as the

8  end of this week.  So we think it shouldn't take longer than

9  seventy-five days, taking into account the intervening

10 holidays, for that discovery to take place.  So that's what

11 we've provided for by setting the date at February 1st, 2016.

12         THE COURT:  Okay.  And with respect to experts, do you

13 anticipate having an expert?

14         MS. RICHARDS:  I don't, Your Honor.  Again, subject to

15 seeing what comes out in the factual discovery.  But it's a

16 breach of contract claim.  It should be straightforward.  I

17 don't think we'll need an expert.

18         THE COURT:  Well, the only possible area -- I'm not

19 prejudging that for either side -- but it's conceivable on

20 damages there could be expert testimony.  But I --

21         MS. RICHARDS:  It's possible we --

22         THE COURT:  -- I'm not saying there needs to be or

23 not.

24         MS. RICHARDS:  We've allotted thirty days for that.

25 We know that's a little bit short, but we think seventy-five

1    days, especially since we anticipate starting discovery almost

2    immediately, will give us enough time to also address expert

3    discovery to the extent needed.

4              THE COURT:  All right.  Anything else you want to

5    raise at this point?

6              MS. RICHARDS:  We propose the standard thirty days for

7    the preparing the joint pre-trial conference order, which would

8    put the deadline to file that at October (sic) 1st, following

9    the close of all discovery, assuming --

10             THE COURT:  No, not October 1st.

11             MS. RICHARDS:  Sorry, April 1st.  What's happening?

12   April 1st, 2016.  And then assuming the final pre-trial

13   conference is held within a week or two of the filing of that

14   order, we should be ready for trial sometime in April,

15   depending on the Court's calendar.

16             THE COURT:  Okay.  Ms. Nora?

17             MS. NORA:  Yes, thank you, Your Honor.  I am a little

18   uncomfortable with having my opponent present Mr. Rode's

19   position with respect to what was paragraph 1 proposed by the

20   objector here.  What we have discovered is that there is a

21   claim that was fraudulently concealed related to the

22   involvement of debtor, ETS; and so what I advised debtors'

23   counsel was that we were going to be seeking leave from Your

24   Honor for relief so that we could file against ETS.  And those

25   documents that are fraudulently created by Donna Sitton (ph.)

1  of ETS are still in the public record in Harris County, Texas.

2  That's where Mr. Rode resides.  It's in the Houston

3  metropolitan area.  And this is a very serious cloud on his

4  title.  And we would like to ask the Court that we could file a

5  claim against debtor ETS.

6       THE COURT:  It's too late in the day to amend the

7  claim.  I know you've just come into the case, Ms. Nora, but

8  there will be no amendments to the pleadings to add any claims

9  or any parties.  The only claim --

10       MS. NORA:  Thank you, Your Honor.

11       THE COURT:  -- the only claim that's going forward is

12  the breach of contract claim, which is discussed at some length

13  in the written opinion that I entered.

14       So let's talk about what discovery is it that you wish

15  to take, Ms. Nora?

16       MS. NORA:  Yes, thank you, Your Honor.  And I do want

17  to advise the Court that I did read the Court's order, and

18  that's why I wanted to clarify that we do understand the

19  position that the Court has taken with respect to amendments,

20  and we simply wanted to call this newly discovered fraud to the

21  attention of the Court.

22       The fact discovery that I would need to do will take

23  longer than what the objectors are seeking, because I'm newly

24  involved in this case.  I was hoping to have no less than 120

25  days on this.  And I am absolutely not available for trial in

1  this matter in April.  So I don't think that if we proceed on

2  120 days for discovery, followed by 30 days for expert

3  testimony -- and what I had written in my proposal, that

4  they -- the objectors had not yet seen, because we were still

5  trying to settle this case as of yesterday.  But I would like

6  to have the opportunity to provide for additional scheduling of

7  this matter with the joint pre-trial report after completion of

8  discovery.

9         THE COURT:  Ms. Nora, tell me what discovery it is

10 that you wish to take?

11        MS. NORA:  Well, since the Court has just advised me

12 that there is not going to be any opportunity to join the issue

13 of fraud by ETS, and of course, we preserve that issue for

14 appeal, I believe that having seen some discovery prepared by

15 the objectors here in another case, just the responses may

16 require extensions in that other case, but -- because it is

17 quite detailed and extensive.  And I've checked the local rules

18 with respect to simply what we have to do to object.  And that

19 can also be rather daunting.

20        But from the point of view of the claimant here, we do

21 need to look into a lot of documentation within Homecomings and

22 GMAC Mortgage.  We do need to have a copy of various agreements

23 between Homecomings, GMAC, and the supposed trust to which

24 these collateral documents may have been transferred.  And I

25 just believe that 120 days is a reasonable time to put together

RESIDENTIAL CAPITAL, LLC, ET AL.                    17

1   that discovery and seek the responses, and then move to compel

2   as necessary, Your Honor.

3            THE COURT:  Ms. Nora, I will try one more time.  The

4   only claim that remains in this contested matter is a claim of

5   breach of contract relating to the loan modification.  It's

6   discussed at some length in the opinion.  That's the only claim

7   remaining.  I'm asking you very specifically what discovery you

8   wish to take with respect to that one remaining claim.  You

9   have not told me that yet.

10           MS. NORA:  Well, I thought I did, Your Honor, but I

11  mean, our position is that the breach of contract was the

12  result of these other transactions behind the scenes, and that

13  is what I would like to look into.

14           THE COURT:  All right.  I'm going to allow ninety days

15  for fact discovery.  So Ms. Richards, revise the order to

16  provide for ninety days of fact discovery.  Revise the order to

17  provide for forty-five days of expert discovery.  I'm not sure

18  that amount of time is needed, but that's my standard.  And it

19  may be on the damages issues that experts will be required.

20  But follow my template and provide forty-five days.

21           MS. NORA:  Your Honor, this is Wendy Alison Nora.

22  Could I just clarify?  Is that forty-five days after the close

23  of fact discovery or is that forty-five days from today's date?

24           THE COURT:  No, it's forty-five days after the close

25  of fact discovery, Ms. Nora.

RESIDENTIAL CAPITAL, LLC, ET AL.                    18

1        MS. NORA:  Thank you, Your Honor.

2        THE COURT:  So if you're not familiar -- and I know

3   you were involved in the case earlier in the ResCap

4   proceedings, but it's been some time since you appeared -- if

5   you look on the court's public Web site under my chambers

6   rules, there's a template for my case management and scheduling

7   order.  That's the form that the Trust's counsel has followed

8   with the proposed case management and scheduling order and

9   that's what was being used here.

10       While the template provides sort of a default rule of

11  120 days for fact discovery, it seems to me that here the

12  issues are quite well defined because of the Court's prior

13  opinion and the one surviving claim, and the Court believes

14  that 90 days for fact discovery is appropriate; and I do depart

15  from that 120 days, actually, with some regularity, where I

16  think it's appropriate.  The forty-five days for expert

17  discovery from the close of fact discovery, is the typical

18  period that I allow.

19       What I would like you to do, Ms. Richards, is confer

20  with Ms. Nora, get a date for a case management -- you'll have

21  to put in -- you're going to have to change paragraph 8.  The

22  next case management and scheduling conference will be held.

23  Get a date that's at least a week before the close of fact

24  discovery for the next case management scheduling conference.

25       With respect to a final pre-trial conference, we're

1   going to leave that until we have the next case management.

2   You can take out the reference to the pre-trial conference

3   order.  We'll have -- I will give you that at the next case

4   management and scheduling conference.

5           Similarly, with respect to the trial dates, you can

6   exclude paragraph 9 of your proposed order.  When we get to the

7   next case management and scheduling conference, I will schedule

8   a trial.  I'm certainly mindful if Ms. Nora represents that

9   she's unavailable during April 2016 for the trial.  I think you

10  both ought to work on the assumption that -- and you ought to

11  discuss potential trial dates in May.  Okay?  I'm not setting

12  anything now, but I certainly will honor Ms. Nora's

13  representation that she's unavailable for trial in April.  And

14  I've already moved the fact discovery cutoff date a little bit.

15  So discuss that.  You'll need to tell me at the next case

16  management and scheduling conference what the estimated length

17  of the trial is.

18          Ms. Nora, in these trials, what I typically do is have

19  the direct testimony submitted in declarations with the

20  declarants available in court for cross-examination.

21  Obviously, to the extent that you're going to -- you want to

22  provide evidence from people you don't control and can't

23  provide declarations, if they're outside the subpoena power of

24  the court, and you take their depositions, you'll have to

25  designate deposition testimony, et cetera.  But we'll take that

RESIDENTIAL CAPITAL, LLC, ET AL.                    20

1  up at the next case management and scheduling conference.

2          Please don't commit yourself to other trials in May

3  that would make yourself unavailable for a trial in this court

4  during May.  Okay?  But I'll honor, certainly, your

5  representation that you're unavailable during April.

6          MS. NORA:  Thank you, Your Honor.  And if I may --

7  this is Wendy Alison Nora, again.  I have gone over the Court's

8  standard scheduling order, and I would request one additional

9  deviation.  I'd like to note that Mr. Rode sent that to me, and

10  then of course the form that was provided to me from the

11  objectors here give me an idea of what the Court's expectations

12  are.

13          I am concerned about the requirement that the chambers

14  receive two copies on hard copy print of all documents and have

15  them tabulated, because I believe that that is an expense and a

16  time and logistics issue for out-of-district claimants.  And

17  for some, it would be extremely additionally expensive, since

18  we file electronically.  So I'm asking if the Court would allow

19  simply to have all documents filed electronically in this

20  matter?

21          THE COURT:  No, you don't file your trial exhibits,

22  Ms. Nora.  You provide two copies to the Court.  I need that

23  because I have one and one of my law clerks will have one.  You

24  don't file the exhibits electronically.  Certainly you file the

25  pre-trial conference order; you file memoranda of law, things

1   of that nature.  But the depositions -- if there are

2   depositions -- those transcripts don't get filed.  I get

3   provided with copies of all of the proposed trial exhibits.

4   And I certainly appreciate that making copies may be a burden.

5   But you're going to have to provide hard copy to the Trust's

6   counsel, and you're going to have to provide two hard copies to

7   chambers.  You will not file them -- you do not file exhibits

8   or deposition transcripts electronically.

9           MS. NORA:  Thank you, Your Honor.  I understand that

10  with respect to trial exhibits.  I was just referring to --

11  perhaps I misunderstood -- that all other documents that might

12  need to be produced to chambers in hard copy.  But I do

13  understand that trial exhibits have to be produced in hard

14  copy.  And so of course we would not seek any relief from that,

15  because it would be impossible to try the case without hard

16  copy, unless we were all linked into the same computer system

17  and looking at the exhibits online, which I'm not a fan of

18  doing it that way anyway.  So that was why I brought it up.

19          THE COURT:  Okay.

20          MS. NORA:  With trial exhibits, I totally understand.

21          THE COURT:  All right.  Anything else, Ms. Nora?

22          MS. NORA:  No, thank you, Your Honor.

23          THE COURT:  All right.  So Ms. Richards, prepare a

24  revised case management and scheduling order.  Make sure you

25  provide it to Ms. Nora ahead of time, get any last comments

RESIDENTIAL CAPITAL, LLC, ET AL.                        22

1  that she has.  I think it's clear from what I've ordered today

2  as to how we're going to proceed.  Okay?

3          MS. RICHARDS:  Thank you, Your Honor.  I will do that.

4  One --

5          THE COURT:  Yes.

6          MS. RICHARDS:  -- one point.  You suggested that a

7  trial date would likely happen in May?

8          THE COURT:  Yes.

9          MS. RICHARDS:  I think based -- with a --

10          THE COURT:  Is that --

11          MS. RICHARDS:  -- ninety-day --

12          THE COURT:  -- it's not going to work?

13          MS. RICHARDS:  -- fact discovery and forty-five-day

14  expert discovery and thirty days --

15          THE COURT:  Okay, well it may be June, then.

16          MS. RICHARDS:  -- for a joint pre-trial, I think we're

17  in June.

18          THE COURT:  Okay, in June.

19          MS. RICHARDS:  Okay.

20          THE COURT:  But I won't give you those dates until we

21  get to the next case management and scheduling conference.

22          So Ms. Nora, don't commit yourself for June.  Let's

23  put it that way.  Okay?

24          MS. NORA:  Okay, thank you, Your Honor.  And then I'm

25  sorry, I did forget to mention one more thing.  I would really

RESIDENTIAL CAPITAL, LLC, ET AL.                    23

1    like relief from the five-day deadline, you know, when --

2    there's a bankruptcy rule that allows for a date for responses

3    or any deadline established by this order.  The standard order

4    from chambers says five days prior to the expiration of that

5    date.  Because Mr. Rode is in Texas, I'm in Minneapolis, and we

6    don't have the convenience of being able to get to the court as

7    readily as objectors here, even though we'd be filing

8    electronically, I just would beg to not have to go five days

9    prior to any request to modify or extend any deadlines.

10        My experience has been most issues amounting to good

11   cause for extensions do not arise five days before any

12   deadline.

13        THE COURT:  They do in my court, Ms. Nora.  And they

14   generally -- I get those by letter.  And you try first to agree

15   with opposing counsel.  I'm very tough about moving the dates

16   that I set in the pre-trial conference order -- in a case

17   management and scheduling order.

18        Because my schedule is quite full, it has to be no

19   less than five days before the expiration of the deadline.  And

20   I don't move deadlines unless a very compelling reason is given

21   to me why I should.  Okay.

22        All right, so you'll confer with Ms. Nora, let her see

23   the final proposed, order and you will submit it to chambers.

24   All right, Ms. Richards.

25        MS. RICHARDS:  I will, Your Honor.  Thank you.

RESIDENTIAL CAPITAL, LLC, ET AL.                    24

1          THE COURT:  Thank you very much, Your Honor.

2          MS. NORA:  Thank you.

3          MS. RICHARDS:  Your Honor, may I be excused?  This is

4     my only matter on for today.

5          THE COURT:  Yes, you may.

6          MS. RICHARDS:  Thank you very much.

7          THE COURT:  Okay, Mr. Wishnew?

8          MR. WISHNEW:  Thank you, Your Honor.  Your Honor, that

9     brings us to item 8 on page 12 of today's agenda, a status

10    conference concerning the claim of Ms. Rhonda Gosselin, which

11    is a part of the seventy-fifth omnibus objection to claims.

12         THE COURT:  All right.  Is Ms. Gosselin on the phone?

13    Ms. Gosselin?

14         MR. WISHNEW:  I had given her -- she had the CourtCall

15    information.  I know she was having issues signing up for

16    CourtCall because she only has a debit card, and they

17    couldn't -- and I also provided her with the Clerk's Office

18    number to see if --

19         THE COURT:  Yeah, I thought my courtroom deputy was

20    going to try and waive the fee with CourtCall.

21         MR. WISHNEW:  I don't know.

22         THE COURT:  I'm sorry?

23         THE CLERK:  Deanna is sending a message.

24         THE COURT:  Okay, just hang on a second.

25         THE CLERK:  Deanna indicated the fee was waived.

1          THE COURT:  The fee for Ms. Gosselin to join CourtCall

2    was waived.

3          MR. WISHNEW:  Okay.

4          THE COURT:  So, Ms. Gosselin, are you on the phone?

5    No.

6          All right.  So obviously the issue here is that she

7    was represented by Laird Heal who has withdrawn because he

8    could no longer practice.  And I thought we had an indication

9    that she may have found substitute counsel.  Do you know about

10   that?

11         MR. WISHNEW:  She was suggesting that she was trying

12   to.  But at this point I've not been advised that she has

13   retained counsel.

14         THE COURT:  Well, it's certainly not her doing that

15   Mr. Heal had to withdraw.

16         MR. WISHNEW:  Correct, Your Honor.

17         THE COURT:  Let's adjourn this to the next omnibus

18   hearing date.

19         MR. WISHNEW:  Okay.  So that would be December 16th,

20   Your Honor.

21         THE COURT:  And communicate -- she's not represented,

22   so you can communicate with her directly.

23         MR. WISHNEW:  Yeah.

24         THE COURT:  Has there been an effort to try and

25   resolve this claim?

1          MR. WISHNEW:  Your Honor, we made a settlement offer

2    to her.  She declined that, believing her damages --

3          THE COURT:  Okay.

4          MR. WISHNEW:  -- were greater than what we were

5    offering.  We've been asking for documentation to substantiate

6    her damages.  She has said, well, I need an attorney to try and

7    help me put that all together.

8          THE COURT:  Okay.  All right.

9          MR. WISHNEW:  That's where it stands.

10          THE COURT:  So communicate with her, and then

11    communicate with chambers.  Hopefully she'll have counsel by

12    the next hearing.

13          MR. WISHNEW:  Okay.

14          THE COURT:  Okay?

15          MR. WISHNEW:  Okay.  Very good, Your Honor.

16          THE COURT:  All right.

17          MR. WISHNEW:  Your Honor, that brings us to item

18    number 9 on today's agenda, also on page 13, with the ResCap

19    Borrower Claims Trust's eighty-second omnibus objection.  This

20    deals with the claim of Kenneth Dlin.  Your Honor, I think

21    yesterday we provided chambers with an electronic copy of the

22    agreed-upon case management order.  I can walk through the

23    dates.

24          This has been agreed to by Mr. Dlin's counsel, Brian

25    Wilson, in Colorado.  First, all fact discovery shall be

RESIDENTIAL CAPITAL, LLC, ET AL.                    27

1  completed no later than February 16th, 2016.  With regards

2  to -- the motions paragraph stays the same, as is consistent

3  with the Court's form order.  The paragraph 4, the parties will

4  confer and discuss settlement or the use of ADR within fourteen

5  days of the date of this order and again within fourteen days

6  of the close of fact discovery.

7          A joint pre -- paragraph 5 -- a joint pre-trial order

8  within thirty days after the close of fact discovery.  In the

9  event of -- paragraph 6 -- discovery disputes, this is again

10  consistent with and hasn't been changed from the Court's form

11  of order.

12          And then, Your Honor, paragraph 7, the next case

13  management or final pre-trial conference, that date is left

14  blank for the Court's calendar.  And then the paragraph 8, the

15  paragraph concerning modification of the order.

16          THE COURT:  All right.  Is Mr. Dlin's counsel on the

17  phone?

18          No.  All right, the schedule you've set out is

19  satisfactory to me.

20          MR. WISHNEW:  Okay.

21          THE COURT:  Where does that -- what date does that

22  take you out to on fact or expert discovery?

23          MR. WISHNEW:  So fact discovery, Your Honor, would

24  conclude on --

25          THE COURT:  February 16th, is the --

1          MR. WISHNEW:  -- mid-February.  Neither party will

2    need expert discovery.

3          THE COURT:  Okay.

4          MR. WISHNEW:  So joint pre-trial order would likely be

5    mid to late-March.  So then I guess we can do a trial in April.

6        (Pause)

7          THE COURT:  I want a joint pre-trial conference order

8    fourteen days after the close of fact discovery.

9          MR. WISHNEW:  Okay.

10          THE COURT:  Put an actual date in --

11          MR. WISHNEW:  Yeah.

12          THE COURT:  -- for that.  And schedule a final pre-

13    trial conference for the first omnibus hearing date after the

14    joint pre-trial conference order is due.

15          MR. WISHNEW:  We'll have to -- we'll coordinate with

16    Deanna to get --

17          THE COURT:  Yeah.

18          MR. WISHNEW:  -- omnibus dates going forward.

19          THE COURT:  Yes, you will.  And you should advise Mr.

20    Dlin's counsel that I'm not going to set a trial date now, but

21    it probably will be in two to four weeks after the final pre-

22    trial conference.

23          MR. WISHNEW:  Okay.

24          THE COURT:  If I'm not mistaken, the issues here

25    relate to what, if any, representations were made to Dlin about

1  whether he had to be in default for a loan modification to be

2  considered, and specifically what the investor guidelines

3  provided with respect to eligibility for a loan modification.

4  As I understand the Trust's position the investor guidelines

5  only permitted a modification if the borrower was at least two

6  months past due.

7          MR. WISHNEW:  Correct, Your Honor.

8          THE COURT:  And when I overruled the objection in

9  part, I found there were disputed issues of fact with respect

10 to what representations were made and also what the investor

11 guidelines were.  So the issues seem fairly narrow to me.

12         MR. WISHNEW:  Agreed, Your Honor.

13         THE COURT:  It obviously would also require -- if Dlin

14 prevails -- and those were the essential factual disputes.

15 They arose from a variety of different legal theories, but all

16 revolved around those essential factual disputes.  Let's go

17 forward on that basis, okay?

18         MR. WISHNEW:  Absolutely, Your Honor.

19         THE COURT:  All right, thanks very much.

20         MR. WISHNEW:  Your Honor, the next matter is item 10

21 on page 14, the objection of the ResCap Borrower Claims Trust

22 to proofs of claim filed by Pamela Longoni and Jean Gagnon,

23 claim numbers 2291, 2294, 2295, and 2357.

24         I'm going to defer the podium to my colleagues, Avery

25 Simmons and Stewart Cox, who are participating telephonically

RESIDENTIAL CAPITAL, LLC, ET AL.                    30

1    from the Bradley Arant firm, and the claimant's counsel, Tom

2    Beko, is also on the phone.

3            THE COURT:  All right.  Mr. Beko, are you on the

4    phone?

5            MR. BEKO:  I am, Your Honor.  Thank you.

6            THE COURT:  Okay, thanks very much.

7            All right, who wants to speak for the Trust first?

8            MR. SIMMONS:  Your Honor, this is Avery Simmons on

9    behalf of the ResCap Borrower Claims Trust.  Consistent with

10   the scheduling order entered July 16th of this year, the

11   parties have been engaging in fact discovery.  That fact

12   discovery concluded last Friday, November 13th.  The parties

13   are somewhat in dispute and met and conferred yesterday,

14   although I will allow Mr. Beko to speak to that.

15           In terms of future events, on November 27th, 2015,

16   consistent with paragraph 6 of the scheduling order, the trust

17   is going to file either on that date or before, a Rule 7056

18   pre-conference letter, in conjunction with a pending motion for

19   summary judgment.  And then on 12/14/2015, the parties are due

20   to file a joint pre-trial order.

21           THE COURT:  Just give me that date again, Ms. Simmons.

22           MR. SIMMONS:  December 14th, 2015 for the joint pre-

23   trial order, Your Honor.

24           THE COURT:  Okay.  Mr. Beko?

25           MR. BEKO:  Thank you, Your Honor.  During the course

1    of our status conference that we had with the Court on June

2    15th, one of the things that the Court ordered the parties to

3    do was to engage in some settlement negotiations to determine

4    whether or not this matter could get resolved, and also the

5    Court ordered certain discovery to be completed, and the Court

6    set a deadline for that discovery.

7              After that July 15th hearing, there were discussions

8    that I had with counsel about the discovery that we wanted to

9    do in the case, however both sides essentially agreed, let's

10   see if we can negotiate to resolve this case before we go and

11   spend the money to do that discovery.  That made good sense to

12   me.

13             Unfortunately, between July 15th and September 11th, I

14   never received any kind of a settlement offer.  And I

15   understand that these things take time, considering the size of

16   this entity and what it's going through, but during that period

17   of time, we didn't do any discovery because I was waiting to

18   see what settlement offer we were finally going to get relative

19   to this matter.

20             The offer was insufficient to satisfy my client, and

21   as a result of it -- in fact, the offer wasn't sufficient

22   enough to cover our costs.  But in any event, we then began the

23   process to engage in discovery.  What we did as far as the

24   discovery was concerned, way back when, before GMAC Mortgage

25   went into bankruptcy, we had taken the deposition of the person

RESIDENTIAL CAPITAL, LLC, ET AL.                    32

1    most knowledgeable that was designated by GMAC relative to this

2    transaction involving the Longonis seeking their loan

3    modification.  They produced an individual that I deposed, who

4    essentially had no information whatsoever about what happened

5    with the Longoni request for a loan modification.

6           If the Court will recall -- and I don't know if you

7    can with all the cases that you have -- but what occurred in

8    this case was, during the course of the loan modification, my

9    client received e-mail communications from a GMAC

10   representative who told her that he had received an e-mail

11   saying that their request for loan modification had been

12   approved.

13          Shortly after that, there was a transition in

14   personnel from GMAC Mortgage, and later my client learned that

15   the approval didn't occur, and that she had been told

16   repeatedly that the foreclosure was on hold.  As it turns out,

17   GMAC Mortgage, roughly six days after they told her that the

18   foreclosure was on hold, they reinstated the foreclosure

19   proceedings and ended up selling my client's home.

20          What I did was, is during the course of the PNK

21   deposition, this individual that I deposed, a man by the name

22   of Juan Gary (ph.), identified two individuals that he

23   indicated would have information relative to what happened

24   during this process where she was being told it was approved,

25   and then it wasn't approved; the foreclosure was on hold and

1    then it wasn't on hold.

2            So what I did was, as soon it became apparent in this

3    case that we were not going to settle it, I then sent notices

4    to try to get the depositions of these individuals, who are

5    obviously -- I'm in Nevada; I think they were in Texas and in

6    North Carolina.

7            I took the deposition of the first individual that was

8    identified as the person that was in the chain of command and

9    making decision on this, only to learn that this person wasn't

10   even in the division that dealt with this loan modification

11   request.  So then on the final day of our discovery, I took the

12   deposition of the other individual that had been identified.

13   He was in the line of command, essentially, and decision-making

14   process.  However, he didn't know anything about this item

15   either.

16           Also, Your Honor, during the course of all of the

17   litigation that underlied this matter before the bankruptcy, I

18   had sought to obtain the e-mail that was sent to this

19   individual that he reported in the e-mail to my client that he

20   had received this e-mail approving the loan modification

21   request.  I was told throughout that litigation that those

22   e-mails were no longer available, that the information was

23   gone.

24           Well, just within the last week, I learned that, in

25   fact, GMAC Mortgage has all those e-mails, and that they had

1  purportedly looked through them and given me the ones that they

2  felt were relevant by using certain key words to identify those

3  e-mails.  However, the e-mail that he references, the

4  individual named Stephenson, was not one of the ones that was

5  produced.

6          So we have met and conferred, and we did that

7  yesterday.  And there's been some response on behalf of GMAC

8  Mortgage that they're going to conduct some further inquiry, et

9  cetera, to try to see if they can find those.  So at this point

10  in time, Your Honor, I think that there are still some

11  outstanding issues in discovery that I think may need to be

12  brought to the Court's attention.  However, at this point in

13  time, I'm still waiting to receive the response that GMAC has

14  indicated that they would perform some additional searches, et

15  cetera.  And so I don't really think it's appropriate at this

16  time to bring those issues before the Court, because we are

17  still meeting and conferring on them.

18          I do want the Court to know that those issues are

19  still hanging out there, and it may very well be that they are

20  matters that are going to have to be brought to the Court's

21  attention at some point in time in the future.  So I think that

22  sort of brings us current on the status of this.

23          The other part of the issues that I've been raising

24  from the inception is that I've wanted to identify a person at

25  GMAC Mortgage that I could depose that could tell me what

1   happened with this request.  They've never been able to

2   identify who that person is.  Obviously there's a big passage

3   of time now, and those people are all gone.  But depending on

4   if there isn't any further information that's going to be

5   available, then I believe that a motion for summary judgment is

6   appropriate from the plaintiff in this case, based upon the

7   evidence that we've developed to date.  And it would be my

8   intention to file that motion at some point in time within the

9   Court's scheduling order that -- I didn't see in the last order

10  that the Court had really set aside any provision for that, but

11  that is my intention to file that motion, because I believe

12  there's no evidence that can contradict the affidavits and the

13  declarations that we've produced from the GMAC Mortgage

14  individuals previously.  And I think that pre-trial motion

15  would dispose of a big portion of this litigation, leaving only

16  the issue of damages to be decided.

17        THE COURT:  Let me tell you, both sides, right now,

18  save your time and money.  No summary judgment motions; we're

19  going to trial.  I'm very familiar with the Longoni dispute and

20  what the issues are.  I've looked back a number of times to

21  refresh myself.  So spare yourselves the time and effort of

22  summary judgment motions.  We're going to trial.  You either

23  settle it or we go to trial.

24        Now, Mr. Beko, if you needed an extension of yhe

25  period for fact discovery, you had to request it five days

1   before the close of fact discovery.  What I don't permit is

2   after fact discovery is closed, hear that well, we still think

3   we may want to depose somebody; we haven't been able to find

4   who it is -- we don't know who it is.

5          Look, your client or clients can testify and tell

6   their story.  I think the Trust is going to have its share of

7   difficulties finding a competent witness to testify.  But we'll

8   see what happens on that.  But I am -- so I do want to hear

9   more about e-mails.

10         Ms. Simmons, what e-mails did the Trust search for --

11   diligently search for e-mails that Mr. Beko requested, and what

12   is it that you told him as to the availability of the

13   documents, and are the circumstances different now?

14         MR. SIMMONS:  Your Honor, Avery Simmons for the Trust.

15   Originally in the -- I think it was the first request for

16   production of documents to GMAC Mortgage, Mr. Beko asked for

17   certain e-mail communications.  The response that was given by

18   other members of my firm was that Mr. Stephenson was no longer

19   with GMAC.  They did not have access to the in-box, but they

20   would provide those e-mails as they became available.

21         In 2012, in about March of 2012, I contacted the

22   e-discovery folks at Ally and asked them to provide me with a

23   PSP file of Nate Stephenson's in-box from February through

24   August of 2009.  I got those around March of 2009 (sic) and

25   started processing them.  The problem is, is that we went on a

RESIDENTIAL CAPITAL, LLC, ET AL.                    37

1    bankruptcy stay in early May of 2012, so I was never -- there

2    was no reason to produce them.  The case had gone on a stay.

3              When this case reignited and the fact discovery

4    reignited, I processed those e-mails.  One of the issues was

5    that Mr. Bashford and Mr. Beko, on the Nevada Federal Court

6    action, during the 26(a)(1)(A) conference, never discussed

7    electronic discovery.  So I picked search terms for the e-mails

8    that I thought were most relevant and would pick up the most

9    responsive e-mails, all of the responsive e-mails.  Those

10   search terms were her loan number and her last name and Mr.

11   Gagnon's last name.

12             So any e-mail with the term Gagnon, the term Longoni,

13   or her loan number, would have been caught in the search that I

14   did of her e-mail.

15             I then produced all of those e-mails with a privilege

16   log to Mr. Beko two-and-a-half weeks ago.  Mr. Beko informed me

17   yesterday that he was not satisfied with my search terms.  So

18   we discussed yesterday during the meet-and-confer conference.

19   He is looking for a specific point in time.  He is looking for

20   a specific e-mail.  I have told him I will go back through

21   those e-mails and review them with his concerns in mind.

22             He did not provide me any additional search terms.  He

23   just told me that he's looking for a specific e-mail, and I

24   agreed to search the date frame he gave me and see if anything

25   was responsive.

1        THE COURT:  And was it an e-mail to or from a specific

2    person?

3        MR. SIMMONS:  Yes, Your Honor.  The e-mail that Mr.

4    Beko is specifically referencing is the e-mail from June 30th,

5    2009, Nate Stephenson said I saw an e-mail that the mod had

6    been approved yesterday.  So presumably, around June 29th or

7    June 30th of 2009, there would be an e-mail in Nate

8    Stephenson's inbox indicating that Ms. Longoni's loan had been

9    approved for a loan modification.

10        That e-mail has not come up in any sort of search hit,

11    if I search for loan number or her last name.  So I am going

12    through all of the e-mails from June 25th, 2009 to July 5th,

13    2009, to see if there's anything that is relevant that

14    references Ms. Longoni and her loan number or any telling

15    factor of her loan.

16        THE COURT:  Okay.  And Mr. Beko, let's assume that Ms.

17    Simmons finds the e-mails, what further discovery, if any,

18    would you be seeking, discovery having closed, but what is it

19    that you want?  I understand you want the e-mails.  And if

20    they're found, your -- a diligent search should be made.  It

21    sounds like it is being made.

22        MR. BEKO:  Your Honor, to be honest with you, at first

23    blush, if those e-mails, in fact, are produced, depending on

24    what they say, it might end my entire inquiry, because that's

25    the thing that we've been searching from for day one, is why is

RESIDENTIAL CAPITAL, LLC, ET AL.                                   39

1   it that they were told on the 30th that their request for a

2   loan modification was approved, and yet their house gets sold

3   within a month?  And those e-mails may very well answer that

4   question.

5          I do want to comment, Your Honor, that -- on this

6   issue of my untimely request to extend discovery.  The reason I

7   didn't request any extension in discovery prior to five days

8   before our deadline was -- is that the deposition of the person

9   that they had identified as the person as being knowledgeable

10  in this, his deposition wasn't taken until the 13th.  So at the

11  time that that deadline came and passed, I had not had the

12  opportunity to take this individual's deposition to determine

13  whether or not he would have this information.

14         And I'm not going to say there's any nefarious motive

15  behind scheduling it at the very last moment, but I had been

16  requesting this deposition since back in August.  They were put

17  on hold while I waited sixty days to get a settlement offer,

18  and then when we finally started trying to schedule these, the

19  dates went back and forth.  They wanted to have this individual

20  come to North Carolina where they were located.  I worked with

21  them to try to schedule this as conveniently as possible to

22  everyone.

23         Unfortunately, it happened that I didn't learn of

24  these events until after that deadline had passed.  So --

25         THE COURT:  Where did the deposition take place?

1          MR. BEKO:  Pardon me?

2          THE COURT:  Where did the deposition take place?

3          MR. BEKO:  The deposition took place in North

4    Carolina.  The witness was present in North Carolina.  I was

5    present in Reno.  We did this by video conference.

6          THE COURT:  Okay.

7          MR. BEKO:  So had I known on the -- prior to the 13th

8    that this individual couldn't answer these question, then I

9    wouldn't be able -- I would have come to the Court and said

10   hey, I need some additional time.

11         Additionally, Your Honor, there was -- the deposition

12   of GMAC counsel, Michael Knapp was also taken, and it was

13   within, I think, the week prior to that, in which for the first

14   time, I was told that the reason that GMAC Mortgage stopped the

15   process to get my client's home back was because of the fact

16   that she had told him that she didn't want the home back

17   anymore, and that this was based upon information that Mr.

18   Knapp had received from the entity and the purchaser that

19   bought the home at the foreclosure sale.

20         It was the first time anyone had ever suggested that

21   they stopped seeking to get the home back because she didn't

22   want it back.  Since that deposition was taken, I have located

23   that individual and spoke to him about this, and he tells a

24   very different story.  And I would like to -- and I've

25   discussed -- this was another matter that's part of the meet-

1   and-confer, is that I'd like to take that individual's

2   deposition, because I believe he's going to give testimony

3   that's absolutely contrary to what Mr. Knapp said was the

4   reason why they stopped the efforts to get my client's home

5   back.

6           THE COURT:  Where is that -- where is that deponent.

7   Where is he located?

8           MR. BEKO:  He is in the northern Nevada area.  I don't

9   have his specific address or location.  But I believe it's in

10  Minden or Gardnerville, which is within sixty miles of Reno.

11          Now, again, to be fair, Your Honor, we're discussing

12  in our meet-and-confer solutions to this issue.  And so again,

13  I don't want to be premature in bringing this to the Court's

14  attention, because GMAC Mortgage has given some suggestions

15  about how we might resolve that problem.  And so I'd like to

16  give them the opportunity to see if we can meet and confer and

17  take this off the Court's --

18          THE COURT:  Okay.

19          MR. BEKO:  -- calendar or matter to deal with.

20          THE COURT:  And I clearly prefer that counsel work out

21  these kinds of issues.  Just give me a second, okay?

22      (Pause)

23          THE COURT:  Okay.  What I would like is, I want a

24  status letter by Wednesday, December 2nd, at 5 o'clock.  The

25  status letter ought to identify whether there are any remaining

1    issues that need to be resolved.  I want to move this case to

2    trial.

3            And when I get that status letter, what I'm also going

4    to do, subject to canceling it, is schedule a telephone

5    conference for Wednesday, December 9th, at 5 o'clock.  I'm in

6    trial that week, and the trial starts at 9 a.m.  Whether

7    we're -- I'm scheduling it for 5 o'clock.  We may actually get

8    started with it a little late, depending on what's happening

9    with the trial day.  But we'll do it by telephone.  I'm going

10   to ask the Trust to arrange call-in information for it.

11           If you've gotten all issues resolved, as reported in

12   the status letter the week before, I may well cancel the

13   conference.  I'm not moving the deadline of December 14th for

14   the pre-trial conference order.  It seems to me you should be

15   working on as many aspects of that order that you can,

16   recognizing you've got a couple issues that you need to deal

17   with.

18           Mr. Beko, I'm not suggesting that your proof is easy,

19   but on the other hand, you've got a client who's going to

20   testify.  And I'm assuming from what you say, she's going to

21   testify she never told anybody she didn't want the house back.

22   And from everything I read, I think I understand what she's

23   going to testify about the sequence of events leading up to it,

24   about her being told that foreclosure was on hold, that GMAC

25   went forward with the foreclosure earlier than the time they

1  said they would, and what the consequences of that are.

2          So for now, what I'm doing is -- and I want -- look,

3  I'm aware that I set discovery cutoffs and I do mean it.

4  Sometimes there are little odds and ends that remain open and

5  unresolved, and I recognize that, and we usually accommodate

6  those things.  I don't particularly like when people wait to

7  the very last day of a discovery cutoff to take a deposition

8  and then say oh, but now there are more facts and we need to

9  extend discovery.

10         So but what you've identified, Mr. Beko, is very

11  narrow issues as to which discovery -- you're still trying to

12  obtain discovery, whether there are e-mails or not.  And the

13  Trust, I expect, is going to make a diligent search.

14         And Ms. Simmons, if you don't find anything I want a

15  declaration from the Trust about what effort was made to make

16  the additional search, and that no documents were found.  If

17  the documents were found, obviously you'll give them to Mr.

18  Beko and we'll see where we go from there.

19         But so the two things I am doing now is setting a date

20  for the joint status letter -- only one of you needs to send

21  the letter.  You need to agree on it.  You can identify if

22  there are still open issues that you disagree about.  But --

23  and then the telephone conference for December 9th at 5

24  o'clock.  Okay?  I'm going to hold off -- I guess I didn't give

25  you a trial date yet, did I?

RESIDENTIAL CAPITAL, LLC, ET AL.                    44

1          MR. BEKO:  No, Your Honor, and I'd sure like to have
2   an idea when that's it.  I've got a terrible trial calendar.
3   So if can be given as much advance notice about it as I can, I
4   would really appreciate it.
5          THE COURT:  Okay.  Well, what's your trial calendar
6   like in January, Mr. Beko?
7          MR. BEKO:  January of this coming year?  Oh, my gosh.
8          THE COURT:  Yeah.  You bet.  I don't let these cases
9   linger.  I usually take things to trial a couple of weeks after
10  I've got a final pre-trial conference order.  You're going to
11  get a quick trial.
12         MR. BEKO:  Your Honor, I actually have trials set
13  during that month, but the good news is I'm the judge on those,
14  and so I can move them.  I could make January work.
15         THE COURT:  Well, tell me what dates -- do you have
16  dates available in January without moving trial dates that you
17  have?
18         MR. BEKO:  Give me one second, Your Honor.  I just
19  have to --
20         THE COURT:  Sure.
21         MR. BEKO:  The week of January 25th I could do a trial
22  without having to move another one.
23         THE COURT:  Okay.  We're going to reserve -- let me
24  ask, Ms. Simmons, are you going to be the lead trial counsel?
25         MR. SIMMONS:  No, Your Honor.  Stewart Cox will be

RESIDENTIAL CAPITAL, LLC, ET AL.                    45

1  lead trial counsel with me assisting.  I'm available the week

2  of January 25th and Mr. Cox is also on the phone.

3           THE COURT:  Okay.

4           MR. COX:  I'm available as well.

5           THE COURT:  All right, so we're going to -- hang on

6  just one second.

7           All right.  We're going to set the trial for Monday,

8  January 25th, beginning at 9 a.m.  I've tentatively scheduled a

9  trial in the ResCap matter regarding the claim of William

10 Futrell.

11          MR. WISHNEW:  That's for the 26th, Your Honor, I

12 believe.

13          THE COURT:  I know, for the 26th.  I don't know

14 what -- and I know that Futrell is not on the calendar for

15 today.

16          MR. WISHNEW:  Correct, Your Honor.

17          THE COURT:  I'm going to have some questions before we

18 finish today.

19          And I guess we have a pre-trial conference in the Tia

20 Smith matter on the 27th.  But I'm going to schedule the trial

21 for the week of the 25th.

22          Counsel, what you need to do is, when we get closer,

23 you need to give me an estimate of the length of trial.  It

24 does seem to me -- and I think I do have a pretty good grasp of

25 what the issues are here.  Some of them, I think, can be

1  resolved by stipulation.  A lot of the facts can be done by

2  stipulation.  I understand there are disputed issues of fact

3  where I'm going to want to hear testimony.  I certainly want to

4  hear the claimant's testimony live.  But you ought to work and

5  see what you're able to agree on, in terms of the length of

6  trial, what witnesses can be presented; the direct testimony

7  can be presented by declaration with the declarants in court

8  and available for cross-examination.

9       Mr. Beko, I frequently -- I'm not doing it yet -- I

10  frequently set timed trials where I allocate the total number

11  of hours for each side.  I'm not doing that yet.  I need to

12  hear more from both sides when you know how many witnesses.  It

13  strikes me that there are probably not going to be a lot of

14  witnesses, but we'll see.

15       MR. BEKO:  I don't anticipate there will, Your Honor.

16  The key parts that we will have, obviously -- and I think, in

17  speaking with Mr. Cox, they're going to rely upon just the

18  deposition testimony, I believe, as well.  I will rely upon the

19  declarations that I've gotten from Nate Stephenson and my

20  clients.

21       THE COURT:  Sure.

22       MR. BEKO:  And that's probably the sum total.  So I

23  don't see a problem with there being a timed trial, and

24  certainly I will identify the portions of the very lengthy

25  depositions that were taken that we'll want to use.

1          THE COURT:  Yeah, I require designations and

2   counter-designations of deposition testimony and objections.  I

3   try to resolve objections in advance, so both sides know what's

4   going to come in and what's not.

5          MR. BEKO:  Sure.

6          THE COURT:  What we'll -- let me see if I can give you

7   a date.  Hold on.

8          MR. BEKO:  You know, Your Honor, it sounds to me as

9   though this is kind of a tentative date.  Is there a point and

10  time when the Court can confirm that, so I can get our flight

11  reservations and --

12         THE COURT:  Well, this is more than tentative.

13         MR. BEKO:  Okay.  Well, just with the date --

14         THE COURT:  I'm blocking the dates.

15         MR. BEKO:  -- of the trial that you had behind it, I

16  was a little concerned.

17         THE COURT:  Well, I'll have to deal -- the trial was

18  tentative.  There are still some issues --

19         MR. BEKO:  Okay.

20         THE COURT:  -- about whether the trial case is going

21  to go.

22  dates that your court deputy gave to me for the regularly

23  adjourned Thompson matter was also January 25th.  And I'm

24  trying to get sign off from that claimant to have the matter

25

RESIDENTIAL CAPITAL, LLC, ET AL.                    48

1  heard that day as well.

2          THE COURT:  25th?  Yeah.

3          MR. WISHNEW:  Yeah.

4          THE COURT:  I don't think that that's going to take a

5  lot of time.

6          MR. WISHNEW:  No, I agree, Your Honor.

7          THE COURT:  So what I generally do, Mr. Beko, is start

8  a trial date 9 o'clock.  Motion calendars start at 10, but I

9  start trials at 9 o'clock.  And depending on witnesses, how

10  long their testimony is going to take, we sometimes go past 5

11  or 5:30, depending on what's happening with a witness.

12          MR. BEKO:  That's no problem.

13          THE COURT:  So you can put that down as a hard date,

14  unless you reach a resolution of the case, obviously.

15          MR. BEKO:  We'll book our flights.

16          THE COURT:  Okay.  Are you calling an expert?

17          MR. BEKO:  I am not.

18          THE COURT:  Okay.  And is the Trust calling an expert?

19          MS. SIMMONS:  No, Your Honor, the Trust is not

20  planning on calling an expert.

21          THE COURT:  Okay.  What I wanted to see -- just bear

22  with me again.

23          What I'd like to do is schedule the next case

24  management conference for January 7th at 10 a.m.  It's an

25  omnibus hearing date in ResCap, Mr. Beko.

RESIDENTIAL CAPITAL, LLC, ET AL.                    49

1          MR. BEKO:  Okay.

2          THE COURT:  And let's see where everything is at that

3     point.  Okay?

4          MR. BEKO:  That'll be fine, Your Honor.

5          THE COURT:  There actually is a ResCap trial the day

6     before, on the 6th.

7          All right.  Anything else either side wants to add at

8     this point?

9          MR. BEKO:  Your Honor, I'd like to just make an

10    inquiry.  Obviously we're in Nevada; we're a long way from New

11    York.  Would this Court be willing to allow witnesses to

12    testify by way of telephone rather than me bringing them across

13    the country?  Obviously I'm going to bring Ms. Longoni; she's

14    critical to our case.  But some of the more peripheral

15    witnesses, would the Court permit them to testify by phone?

16         THE COURT:  No, I don't.  I don't permit any testimony

17    by phone.  What are the issues that you say -- I mean, what you

18    say are peripheral issues, often -- can you tell me what those

19    issues are?

20         MR. BEKO:  Well, again, a lot of it depends on what

21    happens with our meet-and-confer.

22         THE COURT:  Okay.

23         MR. BEKO:  It's one thing for me to bring my client

24    across the country.  It's -- you know, I don't have the ability

25    to force someone else to go across country.

RESIDENTIAL CAPITAL, LLC, ET AL.                    50

1      THE COURT:  Correct.  And I think what you ought to do
2  is you ought to see whether you can reach stipulations of fact.
3  If not -- these people have been deposed or not?
4      MR. BEKO:  They haven't yet.  That's one of the issues
5  that we'll talk about in the meet-and-confer.
6      THE COURT:  Well, you ought to talk, and if you can't
7  agree on stipulations, I don't know how -- how many people are
8  you talking about, Mr. Beko?
9      MR. BEKO:  No more than two or three, I would think.
10     THE COURT:  You know, you should have deposed them if
11 you wanted to preserve their testimony -- use their deposition
12 testimony for trial.  You can't -- they're not parties; they
13 can't --
14     MR. BEKO:  Again, Your Honor, I didn't learn of this
15 until about ten days ago.
16     THE COURT:  Well, talk with the Trust counsel and see
17 whether you can resolve those issues.  When I get a status
18 letter, I want -- it better cover all issues between the
19 parties that are unresolved.
20     MR. BEKO:  Okay.
21     THE COURT:  Okay.  You either settle this or it goes
22 to trial.  I don't allow any witness testimony by telephone.  I
23 don't rule out -- if you can't get agreement on a stipulation,
24 if there are narrow issues that you want to offer these
25 witnesses on, discuss with trust counsel whether they're going

RESIDENTIAL CAPITAL, LLC, ET AL.                    51

1  to oppose a trial deposition on narrow issues, where I'll limit

2  the amount of time, et cetera.

3              MR. BEKO:  Okay.

4              THE COURT:  I want to get this resolved on the merits.

5              MR. BEKO:  Yeah, I'm sure we all do.

6              THE COURT:  Okay.  Ms. Simmons, anything else you want

7  to raise?

8              MS. SIMMONS:  No, Your Honor.  Thank you.

9              THE COURT:  All right.  Thanks very much.

10             All right.  Counsel on the phone are excused, if they

11 wish to be.

12             MR. BEKO:  Thank you, Your Honor.

13             THE COURT:  Thank you.

14             MS. ARETT:  Good morning, Your Honor.  Jessica Arett

15 from Morrison & Foerster on behalf of the borrower claims

16 trust.

17             The next status conference matter on the agenda is

18 number 11, which deals with the claims of Erlinda Abibas Aniel,

19 Marc Jason Aniel, and Fermin Solis Aniel.  It's claim numbers

20 416 and 417.  And I believe Ms. Aniel is on the phone.

21             THE COURT:  Ms. Aniel, are you on the phone?

22             MS. ANIEL:  Yes, good morning, Your Honor.

23             THE COURT:  Good morning.

24             MS. ARETT:  Your Honor, so Your Honor entered an

25 opinion regarding these claims at docket number 8820.  And you

1    identified a very narrow issue that needs to be resolved

2    through an evidentiary hearing.  That issue was whether the

3    person that executed a 2011 assignment of the Aniel's deed of

4    trust had the authority to do so.

5            And at this stage the borrower trust has put in its

6    proofs on the matter and we'd put that through a supplemental

7    declaration of Kathy Priore, and we do not need any discovery

8    going forward.

9            At the Court's request, we reached out to Ms. Aniel

10   last week to see if we could come to an agreement on a case

11   management schedule.  However, we were unable to come to an

12   agreement on the amount of time that we feel should be given

13   for discovery.  In a nutshell, Your Honor, Ms. Aniel

14   believes -- or requests ninety days for discovery.  And given

15   how very, very narrow this issue is, we just believe that any

16   amount of discovery given should be much shorter.  In fact, we

17   question the need for discovery at all.

18           So at this stage, we ask the Court to kind of resolve

19   the issue of the scheduling going forward, and preferably grant

20   a discovery schedule that's going to bring this resolution as

21   quickly as possible.

22           THE COURT:  Let me ask you another question.  The

23   Aniels have filed an appeal.  My order is an interlocutory

24   order.  Are you moving in the district court to dismiss the

25   appeal?

RESIDENTIAL CAPITAL, LLC, ET AL.                    53

1          MS. ARETT:  The appeal, I believe, relates to claims

2     112 and 114, which you did sustain --

3          THE COURT:  Okay.

4          MS. ARETT:  -- or the objection.  And so I believe --

5          THE COURT:  Well, it's not clear to me whether -- I'll

6     leave it to you to decide whether it's final enough; I don't --

7     whether it's appealable or not.

8          Ms. Aniel, do you want to be heard?  What discovery is

9     it you want to take?

10         MS. ANIEL:  Good morning, Your Honor.  My concern is

11    that Jessica from -- from -- a counsel from Borrowers Trust

12    called me -- and I sent you a letter on that -- because he says

13    that he is not interested in going to discovery.  All they have

14    to do is just, you know, they want an evidentiary hearing.  And

15    I told them that I want discovery; I wanted the discovery

16    phase.  And he was --

17         THE COURT:  Ms. Aniel, I have your November 10th, 2015

18    letter.  It was filed on the docket as ECF number 9326.  And --

19         MS. ANIEL:  Oh, okay.

20         THE COURT:  -- your letter relates to the discovery

21    period.  But what you need to tell me is specifically what

22    discovery it is that you wish to take.

23         MS. ANIEL:  I would like -- I would like to have

24    documentation.

25         THE COURT:  Of what?

1      MS. ANIEL:  Of my mortgage note, all the

2  documentation; I want the original documentation of my mortgage

3  notes when I did the charge.  And I would like to subpoena also

4  my notes.

5      THE COURT:  I'm sorry; I didn't hear that.

6      MS. ANIEL:  We want to see the --

7      THE COURT:  I understood --

8      MS. ANIEL:  We want to see the assignment of the deed

9  and also the testimony of Kathy Priore.  Because what happened

10 is that all of this documentation that we found, they still

11 continued filing fraudulent documentation in the court, Your

12 Honor, so in order for them to show that this fraudulent

13 document is real.  So that's why I want -- I want to do

14 discovery.  And I think that it's my Constitutional right to do

15 discovery.

16     And they was upset when I do that, when I told Jessica

17 that I want to go through discovery because they -- there was a

18 moti -- a decision from you that my proof of claim 416 and 417

19 survives for -- that is an action that survives.  And that's

20 why I'm going to have to do my discovery.  Because I do want to

21 prove to the Court that this all documentation are -- are the

22 fabricated.  So how could I prove that this document are

23 fabricated if they would stop me from doing my discovery.  And

24 that's all I want to ask the Court that I want to go through

25 discovery before we have to do the evidentiary hearing.

RESIDENTIAL CAPITAL, LLC, ET AL.                    55

1              THE COURT:  All right.

2              MS. ANIEL:  And that upsets Ms. Arett.

3              THE COURT:  Counsel?

4              MS. ARETT:  Your Honor, the --

5              MS. ANIEL:  But they still continue file -- they still

6   continue filing this document.  It makes me angry when they

7   objected -- objected your -- your decision, and they're still

8   filing those documentations that -- that makes me upset because

9   I don't think that the Court, you know, allowed that.  And I

10  can prove, you know, with discovery that all of these are

11  fraudulent documentation that they made this documentation in

12  order for the debtor to -- you know, to prove that it's all --

13  everything is -- is not fraudulent.  But there is an allegation

14  that this document was fraudulent and it was -- it -- I cannot

15  sell my house because there was a -- there was a title to tax.

16  They are -- GMAC is claiming ownership.  MERS (ph.) is claiming

17  ownership.  HSBC is claiming ownership.  I cannot sell my

18  property, Your Honor.  I cannot do anything.

19             THE COURT:  Ms. Arett, how long will it take for you

20  to produce the note, the mortgage, any assignments --

21             MS. ARETT:  I think we've already --

22             THE COURT:  -- the loan servicing notes.

23             MS. ARETT:  I think we've already attached all of

24  those in our previous documents, Your Honor.  We've provided

25  both the note and the deed of trust for both of the claims.

RESIDENTIAL CAPITAL, LLC, ET AL.                    56

1  And we've provided the servicing notes.

2            THE COURT:  The assignments?

3            MS. ARETT:  The assignments, I believe they have all

4  been provided.  But we can again produce them to Ms. Aniel, if

5  that is the course that needs to be taken.

6            THE COURT:  Sure.  All right.

7            MS. ANIEL:  I want only original, Your Honor --

8            THE COURT:  Ms. Aniel, stop.

9            MS. ANIEL:  -- of this document.

10           THE COURT:  Ms. Aniel, stop.

11           MS. ANIEL:  Yeah, okay.

12           THE COURT:  I assume that you've already produced

13  these.  And how long will it take the Trust to produce the

14  complete set of note, mortgage, assignment, servicing notes?

15           MS. ARETT:  I think -- I mean, we could produce them

16  within the week.

17           THE COURT:  Okay.  I'm going to order the Trust to

18  produce copies to the Aniels of the note, the mortgage,

19  assignments, servicing notes, by 5 o'clock, Tuesday, November

20  24th.  Prepare a case management and scheduling order, Ms.

21  Arett, that has the close of fact discovery as January 19th --

22  Tuesday, January 19th at 5 p.m.  I'm setting a longer time than

23  I might otherwise, but because of the holidays intervening.  So

24  the close of all discovery --

25           Ms. Aniel, you'll get -- and it's been represented

1    you've already received it, but you'll have what it is you've

2    told me you want next week.  And if you're going to take

3    discovery, you need to do it promptly. The close of all fact

4    discovery is, as I say, January 19th at 5 o'clock.

5           How much time after that do you want for a pre-trial

6    conference order?

7           MS. ARETT:  I think traditionally you give thirty days

8    so --

9           THE COURT:  Well, I don't see --

10          MS. ARETT:  If you want to speed it up --

11          THE COURT:  This is pretty narrow, so I'd like to

12   do --

13          MS. ARETT:  Yeah.

14          THE COURT:  -- it more quickly.

15          MS. ARETT:  Yeah, I mean, I think two, three weeks --

16   three weeks.

17          THE COURT:  Okay.  A joint pre-trial conference order

18   on or before 5 o'clock, February 9th, 2016.  Final pre-trial

19   conference scheduled for 10 a.m., February 25th, 2016.  We have

20   a pre-trial conference scheduled for the Sharpe claim for that

21   date and time.  So ResCap is on the calendar already.  And --

22   trial is scheduled for March 24th -- Thursday, March 24th at 9

23   a.m.

24          MS. ARETT:  Thank you, Your Honor.

25          MS. ANIEL:  And Your Honor, may I ask some questions?

RESIDENTIAL CAPITAL, LLC, ET AL.                    58

1          THE COURT:  Sure.  Go ahead.

2          MS. ANIEL:  Yeah, I would also like to have an expert

3    testimony.  Is that included in the discovery?

4          THE COURT:  No, there's no reason -- I'm familiar with

5    the facts here.  There's no reason for any expert discovery.

6    I'm not allowing any time for expert discovery.  We're going to

7    go forward on the schedule I just set.

8          MS. ANIEL:  Oh, okay.  Thank you.

9          THE COURT:  Okay.  Where do you live, Ms. Aniel?

10          MS. ANIEL:  Where I live, Your Honor?

11          THE COURT:  Yes, where do you live?

12          MS. ANIEL:  I live in California.

13          THE COURT:  Okay.  So you have to understand that you

14    have to be here for the trial.  You can't -- we don't do trials

15    by telephone.

16          MS. ANIEL:  I understand that, Your Honor.  So I'm

17    going to do all of my planning.

18          THE COURT:  Okay.

19          MS. ANIEL:  And then is there any way I could, within

20    this time of the trial, I could, you know, look for a lawyer?

21          THE COURT:  Ms. Aniel, this is the schedule.  If you

22    get a lawyer, you have a lawyer.

23          MS. ANIEL:  Okay.

24          THE COURT:  This has been going on for a very long

25    time without a lawyer.  I encourage you --

RESIDENTIAL CAPITAL, LLC, ET AL.                    59

1          MS. ANIEL:  Okay.

2          THE COURT:  -- if you can, to get a lawyer.  But make

3    sure you tell the lawyer when the trial is and what the other

4    dates that are -- you'll get a copy of the order that's going

5    to be entered with the schedule.  I'm not going to adjust that

6    schedule.  A lot of time has gone by.  The Court has already

7    resolved most of the issues concerning your claims.  So I

8    encourage you, if you can get a lawyer, that's great.  But

9    we're going forward on this schedule.  Make sure the lawyer

10   knows what the schedule is and when the trial is going to be.

11         MS. ANIEL:  Oh, okay.

12         THE COURT:  Okay.  Thank you very much.

13         MS. ANIEL:  Thank you, Your Honor.  Have a nice day.

14         THE COURT:  All right.

15         MS. ANIEL:  Okay.  Thank you.  Bye-bye.

16         THE COURT:  Thank you.

17         What's next?

18         MS. ARETT:  The next matter on the agenda is number

19   12, the borrower trust's eighty-ninth omnibus objection to

20   claims; no liability borrower claims and reduce and allow

21   borrower claims, filed at docket number 9201 on September 25th,

22   2015.

23         Your Honor, through the eighty-ninth claims objection,

24   the borrower trust seeks to expunge thirteen proofs of claim

25   that do not represent valid pre-petition claims against the

1   debtors because they do not prove, by a preponderance of the

2   evidence, any specific wrongdoing by the debtors.

3          The borrower trust also seeks to reduce four proofs of

4   claim, and allow them in their reduced amounts, again, because

5   these claims were filed in an amount greater than the amount

6   for which the debtors' estates are liable.

7          The borrower trust thoroughly examined the debtors'

8   books and records, in an effort to validate the accuracy of the

9   allegations made in the responses and the claims at issue, and

10  determined either that the books and records do not show any

11  liability due and owing to respondents, or that the books and

12  records show a liability in the reduced amount sought in the

13  objection.

14         Responses to the objection were due on October 26th,

15  2015.  The borrower trust received two responses to the

16  objection.  One was filed by Robert Kenneth Harris, related to

17  claim numbers 1687 and 1689.  This was actually two responses,

18  but they were identical.  And they were filed at docket number

19  9285 and 9286.

20         And then another response filed by Billy Ray Carroll,

21  related to claim number 4121, which was filed at docket number

22  9232.

23         I'm not sure if either of the claimants are on the

24  phone.

25         THE COURT:  All right.  Mr. Harris, are you on the

RESIDENTIAL CAPITAL, LLC, ET AL.                    61

1   phone?

2            Mr. Carroll, are you on the phone?

3            I have the CourtCall list, and neither them is shown

4   on the CourtCall list.

5            MS. ARETT:  All right.  The borrower trust filed a

6   related reply in support of the objection at docket number

7   9318.  And in support of the objection and the reply, the

8   borrower trust submitted a supplemental declaration by Sara

9   Lathrop, senior claims analyst to the ResCap Borrower Claims

10  Trust, as exhibit 1 to the reply.  And Ms. Lathrop is on the

11  phone today and is available to answer any questions that the

12  Court may have of her.

13           THE COURT:  Well, here's what we're going to do.  With

14  respect to all of the claims other than Carroll and Harris, the

15  objection is sustained and you can present an order on that.

16  I'll take under submission the Carroll and Harris matters, as

17  to which responses will be filed -- were filed, and will enter

18  written orders with respect to those.  Okay?

19           MS. ARETT:  Thank you, Your Honor.

20           THE COURT:  Okay.  Anything else for today?

21           MS. ARETT:  I don't think so.

22           THE COURT:  Okay.  Thanks very much.

23           MR. WISHNEW:  Your Honor --

24           MS. ARETT:  Thank you.

25           MR. WISHNEW:  -- actually one question.

1           THE COURT:  Mr. Wishnew?  Oh, I did want to raise

2   something.

3           MR. WISHNEW:  You wanted to raise Futrell.

4           THE COURT:  Yeah, I did want to raise Futrell.  Let me

5   find my notes.  So I know Futrell is not on the calendar, so he

6   wasn't required to be on the phone.  So under the -- and I know

7   you've submitted a proposed pre-trial order --

8           MR. WISHNEW:  Correct, Your Honor.

9           THE COURT:  -- with sections that are blank, where you

10  indicated Mr. Futrell hasn't provided you with input for.

11          MR. WISHNEW:  Exactly right.  Two weeks before the

12  deadline for submitting the pre-trial order, we provided a copy

13  to Mr. Margolis, as counsel.  We received no response.  We

14  followed up.  We got no response.  So we changed it from a

15  joint pre-trial order to just a pre-trial order, and those

16  sections concerning Mr. Futrell's allegations --

17          THE COURT:  Have you heard from Mr. Margolis at all?

18          MR. WISHNEW:  We have not, Your Honor.

19      (Pause)

20          THE COURT:  Has there been any expert discovery in

21  this matter?

22          MR. WISHNEW:  No, I don't believe so, Your Honor.  I

23  don't think any was needed.

24      (Pause)

25          THE COURT:  All right.  The Court is going to enter a

1  written order today noting the September 9th, 2015 case

2  management and scheduling order that required counsel to submit

3  a proposed joint pre-trial conference order within thirty days

4  after the close of fact and expert discovery, whichever was

5  later.  That would equate to either November 11th or November

6  26th, 2015.  The Court's going to enter an order today

7  requiring Futrell or his counsel to confer with counsel for the

8  Trust and submit any of the information required for the

9  missing sections of the joint pre-trial conference order on or

10  before 5 p.m., December 2, 2015.

11       (Pause)

12       THE COURT:  The order will likewise provide that

13  failure to comply with the order may result in the imposition

14  of sanctions, including precluding the claimant from offering

15  any evidence at trial.  That includes both witnesses and

16  documents.  That order will be entered today.

17       Once it's entered, I would ask, Mr. Wishnew, that you

18  serve a copy to counsel.  Hopefully he's on ECF, but serve a

19  copy on him in any event.

20       If you receive the necessary information, resubmit the

21  proposed pre-trial conference order.  After receiving it and

22  reviewing it, I'll determine whether the trial is going to go

23  ahead on January 26th, as was tentatively scheduled or how

24  we'll proved.

25       MR. WISHNEW:  Very good, Your Honor.

RESIDENTIAL CAPITAL, LLC, ET AL.                                64

1          THE COURT:  Okay?

2          MR. WISHNEW:  Yes.

3          THE COURT:  All right.  Anything else for today?

4          MR. WISHNEW:  That's it, Your Honor.

5          THE COURT:  Okay.  We're adjourned.

6          MR. WISHNEW:  Thank you for your time.

7          THE COURT:  Thanks very much.

8     (Whereupon these proceedings were concluded at 11:37 AM)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                              I N D E X

3

4                              RULINGS

5                                              PAGE    LINE

6   Trust's objection to claim 2130 is sustained.   9      20

7   The Trust will prepare a case management and   21      24

8   scheduling order regarding Mr. Rode's claim.

9   In the Longoni/Gagnon matter, the parties       41      23

10  will file a status letter by December 2nd.

11  ResCap Borrower Claims Trust Eighty-ninth       61      13

12  omnibus claims objection sustained with the

13  exception of Harris and Carroll claims.

14  Mr. Futrell is required to confer with          63       6

15  counsel for the Trust and submit any of the

16  information required for the missing

17  sections of the joint pre-trial conference

18  order on or before 5 p.m., December 2, 2015

19

20

21

22

23

24

25

1

2                          C E R T I F I C A T I O N

3

4      I, Penina Wolicki, certify that the foregoing transcript is a

5      true and accurate record of the proceedings.

6

7

8

9

10

11      _____

12      PENINA WOLICKI

13      AAERT Certified Electronic Transcriber CET**D-569

14

15      eScribers

16      700 West 192nd Street, Suite #607

17      New York, NY 10040

18

19      Date:  November 19, 2015

20

21

22

23

24

25