UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 12-12020-mg

- - - - - - - - - - - - - - - - - - - - -x

In the Matter of:

RESIDENTIAL CAPITAL, LLC, et al.,

Debtors.

- - - - - - - - - - - - - - - - - - - - -x

United States Bankruptcy Court

One Bowling Green

New York, New York

December 9, 2015

5:00 PM

B E F O R E:

HON. MARTIN GLENN

U.S. BANKRUPTCY JUDGE

Doc# 8903 Telephone Conference, on the Record, Regarding Objection of the ResCap Borrower Claims to Proof of Claim Filed by Pamela D. Longoni and Jean Gagnon Claim Now. 2291, 2294, 2295 and 2357

Transcribed by: Penina Wolicki
eScribers, LLC
700 West 192nd Street, Suite #607
New York, NY 10040
(973)406-2250
operations@escribers.net

A P P E A R A N C E S : (TELEPHONICALLY)

BRADLEY ARANT BOULT CUMMINGS LLP

Attorneys for ResCap Borrower Claims Trust

100 North Tryon Street

Suite 2690

Charlotte, NC 28202

BY: AVERY A. SIMMONS, ESQ.

ERICKSON, THORPE & SWAINSTON, LTD.

Attorneys for Longoni and Gagnon

99 West Arroyo Street

Reno, NV 89509

BY: THOMAS P. BEKO, ESQ.

P R O C E E D I N G S

THE COURT: All right, this is Judge Glenn. We're on the record in Residential Capital, number 12-12020. This is a status conference in regard to the Trust's objection to claims 2291, 2294, 2295, and 2357, filed by Pamela Longoni and Jean Gagnon.

May I ask who's on the phone?

MS. SIMMONS: Good afternoon, Your Honor. This is Avery Simmons representing the ResCap Borrower Claims Trust.

THE COURT: Thanks very much, Ms. Simmons.

MR. BEKO: Good afternoon, Your Honor. Thomas Beko on behalf of the claimants.

THE COURT: Thanks, Mr. Beko.

So I had -- I think the last activity in the case was on December 4th I entered an order with respect to the issues that had been raised in the joint status letter that was submitted. Ms. Simmons, why don't you tell me where things stand, and in particular we are scheduled for trial on January 25th. So where do things stand now?

MS. SIMMONS: Yes, Your Honor. This is Avery Simmons. So we are continuing to go through the e-mail production as we detailed in our letter. I plan on producing to Mr. Beko, hopefully by next Friday, anything that is deemed responsive, relevant, that is not privileged, not previously been produced. So that is where we stand on the e-mail issues.

As for the Nate Stephenson deposition, Mr. Beko reached out to me yesterday. Mr. Stephenson has been nonresponsive. So I have reached out to him today. We are trying to coordinate that, and I will continue to work with Mr. Beko to get that done by January 13th.

THE COURT: Yeah, what I -- look, what I tried to do was, recognizing that we're in the holiday season, it certainly was my preference that the depo, if it takes place, takes place as soon as possible, but recognizing sometimes the difficulties of the holidays, I used January 13th for the two depositions, if they're going to occur.

Go ahead, Ms. Simmons.

MS. SIMMONS: Yes, Your Honor. Thank you. And so Mr. Nelson's deposition, I am not aware whether or not Mr. Beko still wants to continue with that deposition. If he does, we will make -- it will not be a problem to do that prior to January 13th, provided the witness is available. And that is where we stand on the outstanding discovery issues.

The pre-trial order, Your Honor, is due December 14th. I have started working on that, and I have reached out to Mr. Beko to coordinate the effort on that. I don't think it will be an issue at all for us to have that to you by the due date of December 14th.

THE COURT: All right, Mr. Beko?

MR. BEKO: A couple things, Your Honor. First off,

with regard to the pre-trial order, I've not received any sort of drafts or anything as far as that report is concerned. But I show that as being due on Monday. And they're not even, apparently, going to produce the e-mails to me until next Friday. I think, because of this pending discovery and these other depositions, I don't think it makes much sense to have a pre-trial order filed this early. And I'm certainly not going to be prepared to know what type of testimony I'm going to need from the other witnesses until I complete Mr. Stephenson's deposition.

So I would ask that the Court give us a little latitude as far as filing that, because whatever we file, I suspect, is going to change dramatically by the time we get to trial.

Secondly, my efforts to talk with Mr. Stephenson have just stopped. He readily communicated with me before counsel for the Trust made contact with him, and now he doesn't speak to me, doesn't respond to any of my things.

I don't know if what Ms. Simmons is saying is that they're going to be able to produce him or not, but as I look at the law on the subject, it seems to me that the affidavit and the declaration that I have from him under oath are clearly admissions that are admissible in and of themselves. And just to verify that there wasn't going to be an issue when that, when I did take the deposition of Mr. Williams, who was their

person most knowledgeable, I had presented him with those declarations and -- the declaration and the affidavit and asked him if there was anything that was inaccurate in it, and he indicated that there was not.

So quite frankly, it's my belief that those two documents are simply admissible. And what I would like to do is to file a very brief motion in limine to have the Court make a determination on that. If the Court finds that those documents are admissible, I have no need to try to run him down, go to Texas to take his deposition, just to have him restate those things that are in those declarations.

So I would like to hopefully find a mechanism to get that determined before we undertake the effort to try to get to Texas to get those depositions taken.

THE COURT: Ms. Simmons, what's your view on that?

MS. SIMMONS: Your Honor, thank you. My view on that would be with the declarations, one of them was originally taken in May of 2012. The other one was taken during the objection process, I believe in 2015. The Trust was never given any opportunity to cross-examine him on those declarations or anything like that.

And during Mr. Williams' deposition, the question was raised to Mr. Williams, is there anything in there that appears to be false. Mr. Williams said that based on his limited review and his limited knowledge, that there didn't appear to

be. I would very much object to the idea that Nate Stephenson's declarations and affidavits that were never subject to any sort of cross-examination could be used as admissions at trial without Mr. Stephenson being forced to appear, or at least being deposed, Your Honor.

THE COURT: Let me ask this. Was the first -- was the declaration obtained before or after Mr. Stephenson left GMAC?

MS. SIMMONS: After, Your Honor.

THE COURT: So Mr. Beko, I'm not sure how you get to use Stephenson's declaration as an admission, when he was not an employee of GMAC at the time he gave it.

MR. BEKO: Your Honor, I'm not so certain that that's accurate. There were two of them. One of them was given in 2012, and I can't recall whether or not he was still employed there at the time. The other one, obviously, came much later after the bankruptcy and --

THE COURT: Do you -- I don't have it in front of me. Do you have his declaration there? What does he say about his employment?

MR. BEKO: I do have it. I could -- I can pull it up here. I don't have it --

THE COURT: Please do.

MR. BEKO: -- in front of me, but I can grab it.

THE COURT: Please do.

MR. BEKO: And I think, Your Honor, that the

original -- the first one was an affidavit, the second was a declaration.

THE COURT: Well, affidavit/declaration, it has the same effect in federal court.

MR. BEKO: I agree. I just wanted to be sure that I was --

THE COURT: The question I have --

MR. BEKO: -- clear on that.

THE COURT: -- is was he an employee of GMAC when he gave either declaration.

MR. BEKO: I'm trying to pull them up and I can tell you. I'm hoping that it will say it right in it.

THE COURT: Ms. Simmons, do you have it?

MS. SIMMONS: No, Your Honor, I do not. But I remember quite explicitly, he was no longer an employee with GMAC at that time period.

THE COURT: You know, Mr. Beko, try as you might, if he was not an employee of GMAC at the time he gave those declarations, either of them, I'm extremely doubtful that the declarations will be admissible.

MR. BEKO: Your Honor, I --

THE COURT: He certainly --

MR. BEKO: -- sorry, I didn't mean to interrupt you.

THE COURT: -- it certainly wasn't an authorized statement by an employee of GMAC if he was no longer an

employee. There's a question whether it was even if he was. Have you found it?

MR. BEKO: I have. I'm trying to look through it, Your Honor, to see if I can figure out the timing there.

THE COURT: What's the date of the first one?

MR. BEKO: The first one was signed on May 15th of 2012.

THE COURT: And what's the second one?

MR. BEKO: I think it was just this last year, 2015. Clearly the second one, I think there's no doubt about that one.

But Your Honor, the fact that we've got another person in a position of authority who reviews it and says I think his information -- I can't say his information's not truthful --

THE COURT: Well, that's not a -- I don't know exactly what he said, but judging from the gist of what I'm being told it said, that is not going to be sufficient verification of the accuracy of what Stephenson said.

I don't have Stephenson's declaration in front of me. I certainly remember reading it at the time of when I heard the claim objection.

MR. BEKO: I --

THE COURT: Mr. Beko --

MR. BEKO: -- the more I --

THE COURT: -- you better take his deposition if you

want -- if you think you're going to use anything that Stephenson had to say, you either get him in this courtroom or you get his deposition, and the Trust gets to cross-examine him.

MR. BEKO: I said --

THE COURT: So you redouble your efforts to find him, serve him a subpoena, do whatever you need to do. I've given you to January 13th to take it. Even if he doesn't want his deposition taken, get a process server out to serve him with a subpoena.

MR. BEKO: Yeah, we're doing that, Your Honor.

THE COURT: Okay, because I'm not ruling, because I don't have a motion in front of me, but a) I'm not slowing things down; b) it sure sounds like you're not going to be able to use that declaration without his deposition being taken. But we'll see.

MR. BEKO: Okay.

THE COURT: With respect to the pre-trial order, look; it's a lot of work to prepare a pre-trial order in anything that goes to trial before me, and you better not wait to get going on it. Ms. Simmons, get it to Mr. Beko as soon as you can. Because there are potentially two depositions that won't be taken before January 13th, it may be that an amended pre-trial order or a supplemental pre-trial order will have to be provided to deal with any additional contentions, stipulations,

et cetera. But we're not waiting.

So have the two of you discussed the estimated length of trial?

MR. BEKO: No, Your Honor, we have not. I anticipate that my case will be very quick. I'm going to have one or two live witnesses.

THE COURT: I assume you're going to have Ms. Longoni?

MR. BEKO: Yes.

THE COURT: By that I mean, Pamela Longoni, not her daughter.

MR. BEKO: Correct. Correct.

THE COURT: Are you going to have her daughter testify?

MR. BEKO: I haven't determined whether I can get her to New York, Your Honor.

THE COURT: Okay. Any other witnesses you -- I'm not going to bind you to the ones you give me now. Do you anticipate anybody other than Pamela Longoni. Is Gagnon still in this case?

MR. BEKO: He is still in it, Your Honor. And I've not been able to confirm that he's going to be present either.

THE COURT: Okay. All right.

MR. BEKO: The only one that I know for certain will be Ms. Longoni.

THE COURT: Okay, Ms. Simmons, who do you expect to

call?

MS. SIMMONS: Your Honor, we were only expecting to call one witness, and it would be a corporate witness, just simply to authenticate documents and things of the like. We don't expect any more witness testimony than that.

THE COURT: Okay. So if we're talking about a two-witness trial, it sounds like a day. Do you disagree with that, Mr. Beko?

MR. BEKO: I don't, Your Honor, except that there is probably going to -- I'm going to present quite a bit of evidence by way of deposition transcript. It doesn't -- it's a court trial. It doesn't seem that it makes much sense to have someone sit on the stand and read that stuff as opposed to --

THE COURT: No, we don't.

MR. BEKO: -- simply providing it to you.

THE COURT: Let me interrupt you. The two of you need to mark up the same transcript with designations, counter-designations, showing the objections. I try to read the transcripts in advance of the trial, either that or I'll tell you at the trial. We don't do a responsive reading from the witness stand. So we'll spare you that.

MR. BEKO: Okay. So in that case, Your Honor, I don't see that it's a case that would take more than a day.

THE COURT: Okay. So we're scheduled for January 25th.

MR. BEKO: Yes.

THE COURT: Just bear with me. What I would like is a status letter -- well, you both better get on with this pre-trial order. It's work, okay? I mean, you're going to list your exhibit list. I mean, look, I think your main claim is going to be -- well, I shouldn't make this conclusion. The intentional infliction of emotional distress claim is not the only claim surviving, but that doesn't seem to me to be a document-intensive claim. I'm going to listen to your witness about it. But you're going to have to list all -- pre-mark all your exhibits and the whole gamut.

Have you looked at the template for my pre-trial order, Mr. Beko.

MR. BEKO: Your Honor, I have not.

THE COURT: Well, you better do it. It's on the Web site, under my chambers --

MR. BEKO: Okay.

THE COURT: -- under my chambers rules. You don't need to wait for Ms. Simmons to send you the draft. Because you better start pulling your stuff together now. It's a lot of work. I'm sitting here in trial with the lawyers. We're taking a little break. We're going until 8 o'clock tonight. So I'll tell you, trials -- we move, okay?

And I take the pre-trial order seriously. If it isn't there in, don't expect you're going to be introducing evidence

about it.

MR. BEKO: Sure.

THE COURT: Okay. So look at the public Web site of the court. Look under my chambers rules. You will find there a copy of the template for my pre-trial conference order. And I expect you all to follow it. So you don't need to wait for Ms. Simmons to send you her portion of it before you do that.

Okay. I would like to schedule -- what I'd like is, send me -- one of you send a joint status letter, which is what you did last time, with -- when you get these -- letting me know whether you're taking the depositions are not.

Are you going to go forward with the deposition of Nelson, Mr. Beko?

MR. BEKO: I've been trying to find an address for him to get him served, Your Honor.

THE COURT: Okay. Ms. Simmons at least said she didn't think it was going to be a problem to arrange it. So --

MR. BEKO: If I can find him. He's not a very cooperative witness. I can tell you that.

THE COURT: Well, finding people who want to testify is not necessarily -- I'm sure you know, is not the easiest thing, so --

MR. BEKO: Understood.

THE COURT: But you've got to get on with it. Okay.

MR. BEKO: I've got my process server trying to find

him right now, Your Honor.

THE COURT: Okay. Just bear with me one more second, here.

So there's a ResCap trial scheduled for January 6th. Let's schedule a status conference for 5 p.m. New York time January 6th.

MS. SIMMONS: Your Honor?

THE COURT: Yes, Ms. Simmons.

MS. SIMMONS: This is Ms. Simmons. I don't mean to interrupt. But we have a status conference scheduled with you for January 8th --

THE COURT: All right, that's fine.

MS. SIMMONS: -- currently at 11 a.m.

THE COURT: I didn't realize that. That's for Friday January 8th. Oh, yeah, I see it there. All right.

Right now, that status conference is scheduled for 11 a.m. Let's move it to 3 p.m. Okay?

MS. SIMMONS: Yes, Your Honor.

THE COURT: 3 p.m. --

MR. BEKO: That's fine.

THE COURT: -- New York time. Okay, because I'm going to -- in the trial I have before me now, we're doing closing arguments that morning.

So we'll do your status conference -- we'll change the time -- it'll stay January 8th, but we'll do it at 3 p.m. New

York time. Okay? Give me a written status letter before then. I want to know whether there are any loose ends that remain. Okay?

MS. SIMMONS: Yes, Your Honor.

THE COURT: Thank you very much, both of you.

MR. BEKO: Okay.

THE COURT: Okay.

MS. SIMMONS: Thank you, Your Honor.

THE COURT: We're adjourned.

(Whereupon these proceedings were concluded at 5:18 PM)

C E R T I F I C A T I O N

I, Penina Wolicki, certify that the foregoing transcript is a true and accurate record of the proceedings.

Penina Wolicki

______________________________________

PENINA WOLICKI

AAERT Certified Electronic Transcriber CET**D-569

eScribers

700 West 192nd Street, Suite #607

New York, NY 10040

Date: December 11, 2015