**Hearing Date: January 5, 2016 at 10:00 a .m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett

*Counsel for the ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**RESCAP BORROWER CLAIMS TRUST'S MEMORANDUM**
**OF LAW IN SUPPORT OF THE TRUST'S OBJECTION TO CLAIM NUMBER 2055**
**<u>FILED BY MICHAEL AND KRISTIN KARMAZYN</u>**

ny-1216498

## TABLE OF CONTENTS

**Page(s)**

SHORT PREVIEW OF THE ESSENTIALS OF THE CASE ....................................................... 1

ANALYSIS OF THE LAW AND FACTS ............................................................................... 2

CONCLUSION ........................................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Giampapa v. American Family Mutual Insurance Co.,
  64 P.3d 230 (Colo. 2003) ................................................................................................. 9, 10

In re Asia Global Crossing, Ltd.,
  324 B.R. 503 (Bankr. S.D.N.Y. 2005) .................................................................................. 11

In re Enron Creditors Recovery Corp.,
  370 B.R. 90 (Bankr. S.D.N.Y. 2007) .................................................................................... 11

Integrated Resources v. Ameritrust Co. National Association (In re Integrated
  Resources),
  157 B.R. 66 (Bankr. S.D.N.Y. 1993) ..................................................................................... 12

Knowles v. Bank of America, N.A.,
  No. 12-cv-00621-RBJ, 2012 WL 5882570 (D. Colo. Nov. 21, 2012) ..................................... 9

Midland Cogeneration Venture Limited Partnership v. Enron Corp. (In re Enron Corp.),
  419 F.3d 115 (2d Cir. 2005) ........................................................................................... 11, 12

Smith v. Hoyer,
  697 P.2d 761 (Colo. Ct. App. 1984) ...................................................................................... 10

Western Distributing Co. v. Diodosio,
  841 P.2d 1053 (Colo. 1992) ..................................................................................................... 7

**OTHER AUTHORITIES**

Bankruptcy Rule 3003(c)(3) ............................................................................................................ 11

Bankruptcy Rule 7036 ........................................................................................................................ 7

Fed. R. Civ. P. 7036 ............................................................................................................................ 8

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

In accordance with the Joint Pretrial Order [Docket No. 9419], the ResCap Borrower Claims Trust (the "Trust") hereby files this pretrial memorandum in support of the *ResCap Borrower Claims Trust's Seventy-Sixth Omnibus Objection to Claims (No Liability Borrower Claims)* [Docket No. 7736] (the "Objection") as to claim number 2055 filed by Michael and Kristin Karmazyn (the "Proof of Claim").

**SHORT PREVIEW OF THE ESSENTIALS OF THE CASE**

1.   On October 31, 2012, Kristin Karmazyn (the "Claimant") filed the Claim seeking recovery for alleged wrongdoing on the part of debtor GMAC Mortgage, LLC ("GMACM") as servicer of the Claimant's loan. The Claim is premised on three theories of liability: (1) the Debtors violated a repayment plan (the "September Trial Plan") between the Debtors and the Claimant when an allegedly timely-made payment was not accepted by the Debtors; (2) certain payments received by the Debtors that are reflected as returned on the Debtors' servicing notes were not returned to the Claimant; and (3) the Claimant was not notified of the foreclosure sale of her property.

2.   On April 1, 2015, the Court entered its *Order Overruling the ResCap Borrower Claims Trust's Objection to Claim Number 2055 Filed by Michael and Kristin Karmazyn* [Docket No. 8410] (the "Order"). The primary disputed issue of fact identified by the Court is whether the Claimant made a timely payment under the September Trial Plan. See Order at 10.

3.   The Trust will show that the Claimant, who has the burden of proof, is not entitled to any recovery because the Claimant cannot demonstrate that the Debtors acted improperly with regard to her loan, and that even if the alleged wrongdoing can be shown, the

1

Claimant's alleged damages are greater than what she is entitled to under the laws of Colorado. Specifically:

- The Debtors' books and records show that the payment was not timely received, and the Claimant has not put forward any evidence to refute this fact and demonstrate that the payment due at the end of the September Trial Plan was received by the Debtors prior to the stated deadline of October 7, 2009.

- The Claimant has not put forward evidence that any of the payments which the Debtors' servicing notes reflect as returned were not returned to the Claimant by the Debtors.

- The Claimant acknowledges that she was informed of the date of the foreclosure sale over the phone, and she has not refuted the evidence put forward by the Borrower Trust establishing that notice of the foreclosure sale was mailed to her and published in a newspaper in her county.

- The Claimant cannot recover for the alleged damages for pain and suffering related to her husband's death and her children's medical treatment because such damages are not the foreseeable result of a breach of the September Trial Plan and were not the result of any willful and wanton behavior on the part of the Debtors.

## ANALYSIS OF THE LAW AND FACTS

4.  On or around October 31, 2012, Michael and Kristin Karmazyn (the "Karmazyns") filed the Claim against Debtor Residential Capital, LLC ("ResCap"), designated as Claim No. 2055 (the "Claim"), asserting a general unsecured claim for $389,000.

5.  According to the Debtors' books and records, non-Debtor Equifirst Corporation ("Equifirst") originated a loan to the Karmazyns on August 5, 2005 (the "Loan"), secured by a deed of trust on 5153 South Ukraine Street, Aurora, CO 80015 (the "Property"). See Note, attached as Exhibit H to the *Declaration of Kathy Priore In Support of the ResCap Borrower Claims Trust's Omnibus Reply In Support of Its Seventy-Sixth Omnibus Objection to Claims (No-Liability Borrower Claims) as to Claim Nos. 1083, 2055, and 3728* [Docket No. 7967-1] (the "Reply") and Deed of Trust, attached as Exhibit I.

6. Debtor Residential Funding Company, LLC ("RFC") purchased the Loan from Equifirst and transferred its interest in the Loan when it was securitized on or around May 1, 2007 where U.S. Bank, N.A. was appointed as trustee. Debtor Homecomings Financial, LLC ("Homecomings") serviced the loan from October 1, 2005 until servicing was transferred to GMACM on or around July 1, 2009. GMACM serviced the loan until the October 7, 2009 foreclosure sale.

7. The Karmazyns made the monthly payments due on the Loan from the origination of the Loan through August 1, 2008. See Servicing Notes, attached as Exhibit J to the Reply.

8. The Karmazyns did not make the monthly payment due on the Loan on September 1, 2008. See id.

9. On November 21, 2008, the Karmazyns were approved for a blanket modification approval, which was a program initiated by the investor of the Loan. See Servicing Notes. The Debtors received all information needed to complete the modification on December 17, 2008. See id. On January 12, 2009, the Karmazyns told the Debtors over the phone that they had not received the modification documents. See id. At that time, the Debtors explained to the Karmazyns that their account would again be reviewed for a modification, and that any payments made would need to be in certified funds. See id.

10. On January 15, 2009, the Debtors approved the Loan for a traditional modification. See Servicing Notes. The Debtors received executed modification documents from the Karmazyns and a personal check for the initial payment amount on January 30, 2009; however, the modification required that the contribution be sent via certified funds and therefore, the funds were never accepted. See January 2009 Modification Agreement, attached as Exhibit

3

ny-1216498

B to the *Declaration of Deanna Horst in Further Support of the ResCap Borrower Claims Trust's Reply in Support of Its Seventy-Sixth Omnibus Objection to Claims (No-Liability Borrower Claims) as to Claim No. 2055 Filed by Michael and Kristin Karmazyn* [Docket No. 8038] (the "Supp. Decl."); see also Servicing Notes. The Debtors returned the check to the Karmazyns on January 30, 2009. See January 30, 2009 Letter, attached as Exhibit C to the Supp. Decl.

11. On March 11, 2009, the Debtors received a payment in the amount of $4,000 from the Karmazyns, but the Debtors returned the payment that same day because the Karmazyns' account required payments to be made in certified funds. See March 11, 2009 Letter, attached as Exhibit D to the Supp. Decl.

12. On March 20, 2009, the Debtors again approved the Loan for a repayment agreement (the "March 2009 Repayment Agreement"). The Debtors received the required $4,000 contribution payment via certified funds on March 24, 2009 and a signed repayment agreement on March 30, 2009. See March 2009 Repayment Agreement, attached as Exhibit E to the Supp. Decl. The March 2009 Repayment Agreement signed by Claimant and/or Michael Karmazyn required monthly payments in the amount of $2,035.00 to be made via certified funds. See id.

13. The Debtors received a payment from the Karmazyns via personal check on April 21, 2009; however, the Debtors returned the payment to the Karmazyns that same day because the Karmazyns were required to remit the payment by certified funds. See April 21, 2009 Letter, attached as Exhibit F to the Supp. Decl.

4

14. On or around May 4, 2009, the Karmazyns spoke to a representative of the Debtors via phone, at which time the representative explained that the reason the April 2009 payment was returned was because it was not made in certified funds. See Servicing Notes.

15. On May 4, 2009, the Debtors received a payment in the amount of $2,000.00 from the Karmazyns, however, this was not the amount required under the March 2009 Repayment Agreement. See Servicing Notes.

16. On May 14, 2009, the Debtors cancelled the March Repayment Plan because the Debtors did not receive the necessary payment. See May 14, 2009 Letter, attached as Exhibit G to the Supp. Decl.

17. On June 2, 2009, the Debtors received a payment in the amount of $2,000 from the Karmazyns; however, the Debtors returned the payment the same day because it was not enough to bring the account current. See Servicing Notes.

18. On July 29, 2009, the Debtors set up a five-month foreclosure repayment plan to allow the Karmazyns time to submit missing documentation needed for modification review (the "Foreclosure Repayment Plan"). See Foreclosure Repayment Plan, attached as Exhibit H to the Supp. Decl.

19. On or around August 3, 2009, the Karmazyns made a payment under the Foreclosure Repayment Plan. See Servicing Notes.

20. The Karmazyns did not make the Foreclosure Repayment Plan payment due September 5, 2009. See Servicing Notes.

21. The Debtors cancelled the Foreclosure Repayment Plan on September 15, 2009 because the Karmazyns did not make the necessary contribution payment. See September 17, 2009 Letter, attached as Exhibit I to the Supp. Decl.

5

22.    On September 23, 2009, the Karmazyns attempted to make a payment in the amount of $1,530, but that check was returned that same day because it was not enough to reinstate the account, as the repayment plan was no longer active. See September 23, 2009 Letter, attached as Exhibit J to the Supp. Decl.

23.    On September 24, 2009, the Debtors spoke with the Karmazyns over the phone and initiated a new trial plan (the "September Trial Plan") that required a payment of $1,244.65 due October 5, 2009 (the "Trial Plan Payment"). See September Trial Plan, attached as Exhibit K to the Supp. Decl.; see also Servicing Notes. At this time, the Debtors also informed the Karmazyns that the foreclosure sale was scheduled for October 7, 2009, and that the Trial Plan Payment would need to be received by October 5, 2009 for the foreclosure to be stopped. See Servicing Notes. The Debtors did not receive a payment by October 5, 2009 and as a result the September Trial Plan was cancelled on October 7, 2009. See id.

24.    The Karmazyns sent a payment of $1,244.65 on October 7, 2009, but this payment was returned that same day because it was not enough to reinstate the account. See October 7, 2009 Letter, attached as Exhibit L to the Supp. Decl.

25.    On October 7, 2009, the Debtors conducted a foreclosure sale on the property. See Public Trustee's Certificate of Purchase, attached to the Reply as Exhibit L. At the time of the foreclosure sale, the account was owing for the November 2008 through October 2009 payments. See Servicing Notes. At the Foreclosure Sale, the Property was sold to a third party for $190,000. See id. At the time of the foreclosure sale, the balance principal balance owing on the Loan was $285,480.45. See id.

26.    Prior to the foreclosure sale, the Claimant was provided with a "Combined Notice of Sale and Right to Cure and Redeem" as that term is defined in the Public Trustee's

Certificate of Purchase, which was also published in a newspaper of general circulation in Arapahoe County. See Public Trustee's Certificate of Purchase.

**The Claimant Has Failed to Demonstrate There Was a Breach of Contract**

27. To state a cause of action for breach of contract, the Claimant must prove: "(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." See W. Distrib. Co. v. Diodosio, 841 P.2d 1053, 1058 (Colo. 1992) (internal citations omitted).

28. At issue is the payment under the September Trial Plan and whether such payment was timely made by the Claimant. The Claimant contends that such payment was received by the Debtors prior to the due date of October 5, 2009. However, the Debtors' books and records reflect that the payment was received on October 7, 2009, meaning that it was not received in time to stop the foreclosure sale that was scheduled for the same day.

29. The Borrower Trust served document requests on the Claimant on October 13, 2015, asking that the Claimant provide it with documents to support her allegation that the payment was received earlier than what is reflected in the Debtors' servicing notes. To date, the Borrower Trust has received no response even though the deadline to complete fact discovery passed on November 20, 2015. The Borrower Trust also served the Claimant via United Postal Service overnight mail at 5262 S. Malta Way, Centennial, CO 80015 with a request for admissions on October 13, 2015 asking her to admit that the Trial Plan Payment was received by the Debtors on October 7, 2009. Since the Claimant did not respond to the request for admission, the requests are deemed to be admitted pursuant to Federal Rule of Bankruptcy

7

ny-1216498

Procedure 7036.[1] Accordingly, as there is no evidence that has been provided to contradict that the Trial Plan Payment was received on October 7, 2009, the Claimant cannot demonstrate that any breach of contract occurred.

30.  The Claimant also asserts that she did not receive the payments that were returned by the Debtors. However, the Debtors' servicing notes indicate that such payments were returned, and the evidence provided by the Claimant does not indicate that either payments were not returned or were withdrawn from her account. In fact, the account statement submitted by the Claimant as part of her response to the Objection shows that every payment the Debtors returned either was never applied to the Karmazyn's account or was reversed off the account. To date, the Claimant has provided no evidence that her payment was not returned.[2] As a result, she has failed to demonstrate any breach of contract related to these allegations.

### The Claimant Cannot Establish a Claim for Wrongful Foreclosure

31.  Prior to the occurrence of the foreclosure sale, the Claimant was provided via mail a Combined Notice of Sale and Right to Cure and Redeem, which was also published in a newspaper of general circulation in Arapahoe County, the county where the Property is located. Notwithstanding, the Claimant alleges that she did not receive notification regarding the foreclosure of the Property. In addition, the Claimant stipulated that during a September 24, 2009 phone conversation with the Debtors' representative, she was informed that the foreclosure sale was scheduled for October 7, 2009. See Joint Pretrial Order, Stipulated Fact Number 30.

32.  Furthermore, Colorado does not recognize a cause of action for damages for wrongful foreclosure. See Knowles v. Bank of Am., N.A., No. 12-cv-00621-RBJ, 2012 WL

---

[1] "Matter is admitted unless within 30 days after being served party to whom request is directed serves on requesting party written answer or objection addressed to matter and signed by party or its attorney." Fed. R. Civ. P. 7036.
[2] For payments that were reversed, if the payment was submitted via Western Union as certified funds, the payment would be returned to Western Union.

5882570, at *2 (D. Colo. Nov. 21, 2012) ("Colorado does not recognize a claim for damages based on wrongful foreclosure.") (internal citations omitted).  As a result, even if the Claimant could establish the foreclosure was wrongful, such a cause of action cannot form the basis of a claim against the Debtors' estates.

### Even if a Breach of Contract Occurred, the Majority of the Alleged Damages Cannot Be Recovered

33.     The Claimant asserts damages in the amount of $39,000 in rent and other moving expenses, $12,000 in medical treatment for her family, $88,000 in equity, and $250,000 in pain and suffering, allegedly connected to the death of Michael Karmazyn. See Joint Pre Trial Order Claimant Contention Number 11, Relief Sought.  If a breach of contract occurred, the Claimant would be entitled to any lost equity in the Property as well as rent and other moving expenses; however, damages for pain and suffering and mental health care for her children constitute damages for mental anguish and are not recoverable.

34.     The Colorado Supreme Court has held that foreseeability and intent are the key to determining whether a plaintiff should be awarded non-economic damages.  See Giampapa v. Am. Family Mut. Ins. Co., 64 P.3d 230, 240 (Colo. 2003) (discussing the importance of foreseeability when determining whether a willfully breaching party is responsible for non-economic damages).  In Giampapa, the Court held that non-economic damages are recoverable where they are reasonably foreseeable, are proven with reasonable certainty, and the result of willful and wanton conduct.  Here, the Claimant has not established any of these factors.

35.     "All contract damages, whether general or special, economic or non-economic, are recoverable only if the damages were the foreseeable result of a breach at the time the contract was made. A foreseeability requirement is inherent in every contract case because contractual liability is determined by whether such liability was within the contemplation of the

9

parties at the time of contracting." See Giampapa, 64 P.3d at 240 (internal citations omitted). Damages are foreseeable when "the defendant reasonably could have anticipated from the facts or circumstances that the defendant knew or should have known that these damages would probably be incurred by the plaintiff if [the defendant] breached the contract." See id.

36. Here, the Claimant has not put forward any evidence to suggest that her husband's death or her children's medical treatment was something that the Debtors could have reasonable anticipated would **probably** be the result of a breach of the September Trial Plan. Such damages are simply too attenuated to be the result of a home foreclosure. Furthermore, the Claimant has not proffered any evidence to demonstrate that the alleged breach of the September Trial Plan was the cause of her husband's death or her children's medical problem.

37. Finally, the Claimant has not demonstrated that the alleged breach was the result of any willful or wanton conduct. "A willful and wanton breach is not a mere passive breach, involving simple negligence, but is rather an intentional breach, involving willful, wanton, or insulting conduct, and without any legal justification or excuse." See Smith v. Hoyer, 697 P.2d 761, 764 (Colo. Ct. App. 1984) (internal citations omitted). Here, if there was a breach by the Debtors, the Claimant has not demonstrated that the breach was intentional and without legal justification or excuse. Therefore, were a breach to exist, it certainly was not the result of willful or wanton conduct by the Debtors. As a result, if the Court decides to allow the Claim, the allowed claim amount should not include any damages resulting from her husband's death or her children's medical treatment.

**Any Damages Awarded to the Claimant Should Be Capped at the Amount of her Claim**

38. On August 29, 2012, this Court entered an order approving the Debtors' motion to establish procedures for filing proofs of claim in the Chapter 11 Cases [Docket No.

10

1309] (the "Bar Date Order"), which, among other things, established November 9, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline to file proofs of claim by virtually all creditors against the Debtors (the " Bar Date") and prescribing the form and manner for filing proofs of claim. Bar Date Order ¶¶ 2, 3. On November 7, 2012, the Court entered an order extending the Bar Date to November 16, 2012 at 5:00 p.m. (Prevailing Eastern Time) [Docket No. 2093].

39. The Claim was originally asserted in the amount of $389,000.10 and this was the amount of the Claim as listed on the official claims register for the Debtors as of the Bar Date. See Proof of Claim. For the first time, as part of the Joint Pretrial Order, the Claimant states that she is seeking an increased claim amount of $647,085. The Claimant has never requested leave of the Court to file an untimely proof of claim or an untimely amendment.

40. Federal Rule of Bankruptcy Procedure 3003(c)(3) directs bankruptcy courts "to establish a bar date beyond which proofs of claim are disallowed in a chapter 11 case." In re Enron Creditors Recovery Corp., 370 B.R. 90, 94 (Bankr. S.D.N.Y. 2007); see Fed. R. Bankr. P. 3003(c)(3). When a bar date has passed, "[t]he decision to allow [an] amendment of a claim is committed to the discretion of the bankruptcy judge." In re Asia Global Crossing, Ltd., 324 B.R. 503, 507 (Bankr. S.D.N.Y. 2005) (citations omitted).

41. Courts in the Second Circuit apply a two-step inquiry when determining whether to allow post bar date amendments to proofs of claim. See, e.g., Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.), 419 F.3d 115, 133 (2d Cir. 2005). First, the court must decide "whether there was [a] timely assertion of a similar claim or demand evidencing an intention to hold the estate liable." Midland Cogeneration, 419 F.3d at 133. Put another way, the court must determine whether the amended claim "relates back" to the original claim. See *Memorandum Opinion and Order Sustaining the ResCap Borrower Claims Trust's*

11

*Objection to Claim No. 3503 Filed By Mohammed K. Ghods and Heidi M. Ghods*, Case No. 12-12020 (Bankr. S.D.N.Y. Nov. 3, 2015) [Docket No. 9301]. "If the initial 'relation back' inquiry is satisfied, courts then examine whether it would be equitable to allow the amendment." Id. at 14. Courts consider the following factors when balancing the equities:

> (1) undue prejudice to opposing party; (2) bad faith or dilatory behavior on the part of the claimant; (3) whether other creditors would receive a windfall were the amendment not allowed; (4) whether other claimants might be harmed or prejudiced; and (5) the justification for the inability to file the amended claim at the time the original claim was filed.

Integrated Res. v. Ameritrust Co. Nat'l Ass'n (In re Integrated Res.), 157 B.R. 66, 70 (Bankr. S.D.N.Y. 1993) (citing In re McLean Indus., Inc., 121 B.R. 704, 708 (Bankr. S.D.N.Y. 1990). "The critical consideration is whether the opposing party will be unduly prejudiced by the amendment." See id.

42.    Here, the equitable factors weigh against allowing the Claimant to amend the Claim. If allowed in the greater amount, the Claim would inflate the pool of claims and diminish the recovery for other timely filed claims. Furthermore, the Claimant has neither provided a reason why her alleged damages increased by nearly $300,000 so many years after the foreclosure sale occurred, nor explained why she did not assert this increased amount in her initial response to the Objection. Finally, there is no reason to believe that other creditors will receive a windfall if the Claim is not amended. Rather, other creditors will be prejudiced if the amendment is permitted because the increased claim amount will diminish the distributions. As a result, the Court should not permit the Claimant to assert a higher claim amount.

# CONCLUSION

43. The Claim must be disallowed and expunged. The Claimant has failed to demonstrate any wrongdoing on the part of any Debtor entity. As a result, the Objection to the Claim should be sustained.

Dated: December 22, 2015

/s/ Norman S. Rosenbaum
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the ResCap Borrower Claims Trust*

13

ny-1216498