**Hearing Date and Time:  February 25, 2016 at 10:00 a.m. (Prevailing Eastern Time)**
**Response Date and Time:  February 8, 2016 at 4:00 p.m. (Prevailing Eastern Time)**

**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, New York 10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett

*Counsel for The ResCap Borrower Claims*
*Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------
|                                  | )  |                            |
| In re:                           | )  | Case No. 12-12020 (MG)     |
|                                  | )  |                            |
| RESIDENTIAL CAPITAL, LLC, et al., | )  | Chapter 11                 |
|                                  | )  |                            |
| Debtors.                         | )  | Jointly Administered       |
|                                  | )  |                            |
---------------------------------------------------------------

**NOTICE OF THE RESCAP BORROWER CLAIMS TRUST'S**
**NINETY-SECOND OMNIBUS OBJECTION TO CLAIMS ((I) NO LIABILITY**
**BORROWER CLAIMS AND (II) ALLOWED IN FULL BORROWER CLAIM**

       **PLEASE TAKE NOTICE** that the undersigned have filed the attached *ResCap*

*Borrower Claims Trust's Ninety-Second Omnibus Objection to Claims ((I) No Liability*

*Borrower Claims and (II) Allowed in Full Borrower Claim* (the "Omnibus Objection"),

which seeks to alter your rights by disallowing your claim against the above-captioned

Debtors.

       **PLEASE TAKE FURTHER NOTICE** that a hearing on the Omnibus Objection

will take place on **February 25, 2016 at 10:00 a.m. (Prevailing Eastern Time)** before

the Honorable Martin Glenn, at the United States Bankruptcy Court for the Southern

District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408, Room 501.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Omnibus Objection must be made in writing, conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Notice, Case Management, and Administrative Procedures approved by the Bankruptcy Court [Docket No. 141], be filed electronically by registered users of the Bankruptcy Court's electronic case filing system, and be served, so as to be received no later than **February 8, 2016 at 4:00 p.m. (Prevailing Eastern Time)**, upon: (a) Chambers of the Honorable Martin Glenn, United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408; (b) counsel to the ResCap Borrower Claims Trust, Morrison & Foerster LLP, 250 West 55th Street, New York, NY 10019 (Attention: Norman S. Rosenbaum, Jordan A. Wishnew, and Jessica J. Arett); (c) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014 (Attention: Linda A. Riffkin and Brian S. Masumoto); (d) The ResCap Borrower Claims Trust, Polsinelli PC, 900 Third Avenue, 21st Floor, New York, NY 10022, (Attn: Daniel J. Flanigan) and (e) The ResCap Liquidating Trust, Quest Turnaround Advisors, 800 Westchester Avenue, Suite S-520, Rye Brook, NY 10573 (Attention: Jeffrey Brodsky).

**PLEASE TAKE FURTHER NOTICE** that if you do not timely file and serve a written response to the relief requested in the Omnibus Objection, the Bankruptcy Court may deem any opposition waived, treat the Omnibus Objection as conceded, and enter an

order granting the relief requested in the Omnibus Objection without further notice or

hearing.

Dated:  January 7, 2016
        New York, New York

                                    Respectfully Submitted,


                                    /s/ Norman S. Rosenbaum
                                    Norman S. Rosenbaum
                                    Jordan A. Wishnew
                                    Jessica J. Arett
                                    **MORRISON & FOERSTER LLP**
                                    250 West 55th Street
                                    New York, New York 10019
                                    Telephone:  (212) 468-8000
                                    Facsimile:  (212) 468-7900

                                    *Counsel for The ResCap Borrower*
                                    *Claims Trust*

**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, New York 10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett

*Counsel for The ResCap Borrower*
*Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------------------ ) | | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| ------------------------------------------------------------ ) | | |

**RESCAP BORROWER CLAIMS TRUST'S NINETY-SECOND OMNIBUS OBJECTION
TO CLAIMS ((I) NO LIABILITY BORROWER CLAIMS AND (II) ALLOWED IN
FULL BORROWER CLAIM)**

---

**THIS OBJECTION SEEKS TO DISALLOW AND EXPUNGE  OR MODIFY CERTAIN FILED
PROOFS OF CLAIM.  CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE
THEIR NAMES AND CLAIMS ON EXHIBIT A ATTACHED TO THE PROPOSED ORDER.**

**IF YOU HAVE QUESTIONS, PLEASE CONTACT THE RESCAP BORROWER
CLAIMS TRUST'S COUNSEL, JORDAN A. WISHNEW, AT (212) 468-8000.**

---

# TABLE OF CONTENTS

**Page**

RELIEF REQUESTED ...................................................................................................1

JURISDICTION ............................................................................................................2

BACKGROUND ...........................................................................................................3

    General Case Background ..............................................................................3

    Claims-related Background ............................................................................4

THE NO LIABILITY BORROWER CLAIMS  SHOULD BE DISALLOWED AND
    EXPUNGED.......................................................................................................5

THE ALLOWED IN FULL BORROWER CLAIM SHOULD BE ALLOWED IN FULL
    AND RECEIVE THE TREATMENT PROVIDED FOR ALLOWED
    BORROWER CLAIMS AGAINST GMACM DEBTORS PROVIDED FOR
    UNDER THE PLAN ........................................................................................15

NOTICE ......................................................................................................................16

NO PRIOR REQUEST................................................................................................16

CONCLUSION ...........................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Browning Mfg. v. Mims (In re Coastal Plains, Inc.),
179 F.3d 197 (5th Cir. 1999) ................................................................................................. 13

Burgos v. Hopkins,
14 F.3d 787 (2d. Cir. 1994) ................................................................................................... 14

Chartschlaa v. Nationwide Mut. Ins. Co.,
538 F.3d 116 (2d Cir. 2008) .................................................................................................. 13

In re Adelphia Commc'ns Corp.,
Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660 (Bankr. S.D.N.Y. Feb. 20, 2007) .......... 6

In re Best Payphones, Inc.,
Case No. 01-15472 (SMB), 2002 WL 31767796 (Bankr. S.D.N.Y. Dec. 11, 2002) .............. 15

In re Oneida Ltd.,
400 B.R. 384 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co. v.
Oneida Ltd., No. 09-cv-2229 (DC), 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22,
2010) ........................................................................................................................................ 6

In re Rockefeller Ctr. Props.,
272 B.R. 524 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v. Rockefeller Ctr.
Props. (In re Rockefeller Ctr. Props.), 266 B.R. 52 (S.D.N.Y. 2001), aff'd, 46 Fed.
Appx. 40 (2d Cir. 2002) ........................................................................................................... 6

In re Worldcom, Inc.,
Case No. 02-13533AJG, 2005 WL 3875191 (Bankr. S.D.N.Y. June 3, 2005) ...................... 15

In re Zaharescu,
No. CV-12-9767-CAS, 2013 WL 3762285 (C.D. Cal. July 11, 2013) ................................... 14

New Hampshire v. Maine,
532 U.S. 742 (2001) ............................................................................................................... 13

Rosenshein v. Kleban,
918 F. Supp. 98 (S.D.N.Y. 1996) .......................................................................................... 13

Tripati v. Henman,
857 F.2d 1366 (9th Cir. 1988) ............................................................................................... 14

**STATUTES**

11 U.S.C. § 501(a) ......................................................................................................... 6

11 U.S.C. § 502(b)(1) ................................................................................................. 6, 15

11 U.S.C. § 521(1) ........................................................................................................ 13

11 U.S.C. § 1306 .......................................................................................................... 13

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 3007(d)(1) ....................................................................................... 15

4 COLLIER ON BANKRUPTCY ¶ 502.02[3][f] (Alan N. Resnick & Henry J. Sommer
eds., 16th ed. rev. 2014) ......................................................................................... 6

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

      The ResCap Borrower Claims Trust (the "<u>Borrower Trust</u>"), established pursuant to the terms of the Chapter 11 plan confirmed in the above captioned bankruptcy cases (the "<u>Chapter 11 Cases</u>"), as successor in interest to the above-captioned debtors (collectively, the "<u>Debtors</u>") with respect to Borrower Claim (defined below) matters, by and through its undersigned counsel, respectfully represents:

### <u>RELIEF REQUESTED</u>

      1.    The Borrower Trust files this Ninety-Second omnibus objection to claims (the "<u>Objection</u>") pursuant to section 502(b) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rule 3007(d) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and this Court's order approving procedures for the filing of omnibus objections to proofs of claim filed in these Chapter 11 Cases (the "<u>Procedures Order</u>") [Docket No. 3294], and seeks entry of an order (the "<u>Proposed Order</u>"), in a form substantially similar to that attached hereto as <u>Exhibit 1</u>, to (i) disallow and expunge the claims listed on <u>Exhibit A</u> annexed to the Proposed Order and (ii) allow claim number 5523 filed by Sonia Visajel aka Sonia Medina (the "<u>Allowed in Full Borrower Claim</u>") in the filed amount with such claim to receive the treatment provided for under the Plan (defined below).[1]   In support of this Objection, the Borrower Trust submits the Declaration of Sara Lathrop, Senior Claims Analyst for the ResCap Borrower Claims Trust (the "<u>Lathrop Declaration</u>," attached hereto as <u>Exhibit 2</u>), and the Declaration of Norman S. Rosenbaum of Morrison & Foerster LLP, counsel to the Borrower Trust (the "<u>Rosenbaum Declaration</u>," attached hereto as <u>Exhibit 3</u>).

---

[1] Claims listed on <u>Exhibit A</u> are reflected in the same manner as they appear on the claims register maintained by KCC (defined herein).

ny-1217093

2.      The Borrower Trust examined the proofs of claim identified on <u>Exhibit A</u> to the Proposed Order and determined that the proofs of claim listed on <u>Exhibit A</u> (collectively, the "<u>No Liability Borrower Claims</u>") are not liabilities of the Debtors.  This determination was made after the holders of the No Liability Borrower Claims were given an opportunity under the Procedures Order to supply additional documentation to substantiate their respective claims. Accordingly, the Borrower Trust seeks entry of the Proposed Order disallowing and expunging the No Liability Borrower Claims from the Claims Register.

3.      The Borrower Trust also examined the Allowed in Full Borrower Claim and determined it should be allowed in the claimed amount against GMAC Mortgage.

4.      The proofs of claim identified on <u>Exhibit A</u> annexed to the Proposed Order, as well as the Allowed in Full Borrower Claim, solely relate to claims filed by current or former borrowers (collectively, the "<u>Borrower Claims</u>" and each a "<u>Borrower Claim</u>").  As used herein, the term "Borrower" means a person who is or was a mortgagor under a mortgage loan originated, serviced, and/or purchased or sold by one or more of the Debtors.[2]

5.      The Borrower Trust expressly reserves all rights to object on any other basis to any No Liability Borrower Claim or the Allowed in Full Borrower Claim as to which the Court does not grant the relief requested herein.

## JURISDICTION

6.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

---

[2] The terms "Borrower" and "Borrower Claims" are identical to those utilized in the Procedures Order [Docket No. 3294].

## BACKGROUND

*General Case Background*

7.      On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code. These Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

8.      On May 16, 2012, the United States Trustee for the Southern District of New York appointed a nine member official committee of unsecured creditors [Docket No. 102] (the "Creditors' Committee").

9.      On December 11, 2013, the Court entered the *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "Confirmation Order") approving the terms of the Chapter 11 plan, as amended (the "Plan"), filed in these Chapter 11 Cases [Docket No. 6065]. On December 17, 2013, the effective date of the Plan occurred, and, among other things, the Borrower Trust was established [Docket No. 6137].

10.      The Plan provides for the creation and implementation of the Borrower Trust, which is established for the benefit of Borrowers who filed Borrower Claims to the extent such claims are ultimately allowed either through settlement with the Borrower Claims Trustee or pursuant to an Order of the Court. See Plan, at Art. IV.F. The Borrower Trust was established to, among other things, "(i) direct the processing, liquidation and payment of the Allowed Borrower Claims in accordance with the Plan, and the distribution procedures established under the Borrower Claims Trust Agreement, and (ii) preserve, hold, and manage the assets of the Borrower Claims Trust for use in satisfying Allowed Borrower Claims." See id.

*Claims-related Background*

11.     On May 16, 2012, the Court entered an order [Docket No. 96] appointing

Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in these Chapter 11

Cases.    Among other things, KCC is authorized to (a) receive, maintain, and record and

otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain the

official claims register for the Debtors (the "Claims Register").

12.     On August 29, 2012, this Court entered an order approving the Debtors'

motion to establish procedures for filing proofs of claim in the Chapter 11 Cases [Docket No.

1309] (the "Bar Date Order").    The Bar Date Order established, among other things,

(i) November 9, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline to file proofs of

claim by virtually all creditors against the Debtors (the "General Bar Date") and prescribing the

form and manner for filing proofs of claim; and (ii) November 30, 2012 at 5:00 p.m. (Prevailing

Eastern Time) as the deadline for governmental units to file proofs of claim (the "Governmental

Bar Date").    Bar Date Order ¶¶ 2, 3.    On November 7, 2012, the Court entered an order

extending the General Bar Date to November 16, 2012 at 5:00 p.m. (Prevailing Eastern Time)

[Docket No. 2093].  The Governmental Bar Date was not extended.

13.     On March 21, 2013, the Court entered the Procedures Order, which

authorizes the Debtors to, among other things, file omnibus objections to no more than 150

claims at a time, on various grounds, including those set forth in Bankruptcy Rule 3007(d) and

those additional grounds set forth in the Procedures Order.  See Procedures Order at 2-3.

14.     The Procedures Order includes specific protections for Borrowers and sets

forth a process for the Debtors or any successor in interest to follow before objecting to certain

categories of Borrower Claims (the "Borrower Claim Procedures").    The Borrower Claim

Procedures provide, *inter alia*, that prior to objecting to Borrower Claims filed with no or

-4-

insufficient documentation, the Debtors must send each such Borrower claimant a letter requesting additional documentation in support of the purported claim (the "Request Letter"). See Procedures Order at 4.

15.    Beginning in May of 2013, the Debtors sent Request Letters, substantially in the form as those attached as Exhibit 4, to all but one of the Borrowers who filed the No Liability Borrower Claims.[3]  The Request Letters state that the claimant must respond within thirty (30) days (the "Response Deadline") with an explanation that states the legal and factual reasons why the claimant believes they are owed money or is entitled to other relief from the Debtors and the claimant must provide copies of any and all documentation that the claimant believes supports the basis for its claim.  See Request Letters at 1.  The Request Letters further state that if the claimant does not provide the requested explanation and supporting documentation within 30 days, then the Debtors may file a formal objection to the claimant's claim, seeking to have the claim disallowed and permanently expunged.  Id.

16.    The Response Deadline has passed, and the Debtors and the Borrower Trust either did not receive any response to the Request Letters or received insufficient information to establish a basis for liability with respect to the applicable No Liability Borrower Claims.  See Lathrop Declaration at ¶ 4.

## THE NO LIABILITY BORROWER CLAIMS
## SHOULD BE DISALLOWED AND EXPUNGED

17.    Based upon its review of the No Liability Borrower Claims identified on Exhibit A annexed to the Proposed Order, the Borrower Trust determined that they do not represent valid prepetition claims against the Debtors and should be expunged.  If the No Liability Borrower Claims are not disallowed and expunged, then the parties who filed these

---

[3] No Request Letter was sent to the holder of claim 5649 because there was sufficient information provided in the Proof of Claim to evaluate it.  See Lathrop Declaration n. 3.

ny-1217093

proofs of claim may receive a wholly improper recovery to the detriment of other Borrowers who hold valid claims.  See Lathrop Declaration ¶ 8.

18.    Section 501(a) of the Bankruptcy Code provides that "[a] creditor . . . may file a proof of claim."  11 U.S.C. § 501(a).  "The proof of claim, if filed in accordance with section 501 and the pertinent Bankruptcy Rules, constitutes *prima facie* evidence of the validity and amount of the claim under Federal Rule of Bankruptcy Procedure 3001(f) and Code section 502(a)."  4 COLLIER ON BANKRUPTCY ¶ 502.02[3][f] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2014).  Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law . . . ." 11 U.S.C. § 502(b)(1).

19.    If an objection refuting at least one of the claim's essential allegations is asserted, however, the claimant has the burden to demonstrate the validity of the claim.  See In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co. v. Oneida Ltd., No. 09-cv-2229 (DC), 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010); In re Adelphia Commc'ns Corp., Case  No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); In re Rockefeller Ctr. Props., 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v. Rockefeller Ctr. Props. (In re Rockefeller Ctr. Props.), 266 B.R. 52 (S.D.N.Y. 2001), aff'd, 46 Fed. Appx. 40 (2d Cir. 2002).

20.    The Debtors and the Borrower Trust diligently analyzed the No Liability Borrower Claims and the allegations set forth therein and examined the Debtors' books and records in order to assess the alleged liabilities asserted.  See Lathrop Declaration at ¶¶ 4-6.  In addition, the Debtors sent Request Letters to those claimants who filed No Liability Borrower Claims with insufficient supporting documentation to allow such claimants to provide additional support for their claims.  The holders of the No Liability Borrower Claims that received Request

ny-1217093

Letters either failed to respond to the letters or failed to provide sufficient information to substantiate their claims.  See id. at ¶ 4.

21.    The Borrower Trust's specific factual and/or legal reason(s) for objecting to the allowance of each No Liability Borrower Claim is set forth on Exhibit A to the Proposed Order under the heading titled "*No Liability Summaries.*"   In general, the Borrower Trust's objection to each No Liability Borrower Claim falls under one or more of the following eight categories:

(i)    ***General No Liability*.**  This category includes claims:

- asserting that a Debtor is responsible for liabilities of non-Debtor entities;
- fail to sufficiently allege the necessary elements for the stated cause of action; or
- that otherwise do not constitute a valid obligation of the Debtors (collectively, the "General No Liability Claims").

To assess the validity of this claim, the Borrower Trust reviewed the Debtors' books and records, including (a) the claimant's transaction history showing the payments the claimant has made and the Debtors' application of those payments to principal, interest, fees, and escrows, as applicable (the "Loan Payment History"), (b) the Debtors' records tracking the history of the servicing of the claimant's loan, including but not limited to documenting instances of i) communication with the claimant, ii) letters and notices sent by the Debtors to the claimant, and iii) the Debtors' efforts to foreclose, conduct loss mitigation efforts, inspect properties, pay taxes and insurance on behalf of the claimant, and other standard servicing activity (collectively, the "Internal Servicing Notes"), and (c) other records as applicable.  See Lathrop Declaration at ¶ 7(i).  Based on its review, the Borrower Trust has determined that the Debtors are not liable for the General No Liability Claim.  See id.

To substantiate this determination, the Borrower Trust is prepared to provide the Court and each claimant whose claim is identified as a General No Liability Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more[4] of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:
- Loan Payment History;
- Internal Servicing Notes currently accessible to the Borrower Trust;
- Note and riders to the Note, if applicable;

---

[4] For the purpose of clarification, the Borrower Trust is not suggesting that the listed documents in the respective objection categories are relevant to every Claim; rather, the Borrower Trust will provide the claimant and the Court with copies of only those relevant documents presently in its possession that substantiate the stated reason(s) for disallowance.

ny-1217093

- Mortgage/Deed of Trust; or
- Other documents that are relevant to the reconciliation of the claim.[5]

(ii)   ***General Servicing Issues***.  This category includes a claim based on general servicing issues, including assertions that a Debtor misapplied mortgage payments, provided incorrect information or reporting to the claimant, or that a Debtor mishandled the short sale of the claimant's property (the "General Servicing Issues Claim").  To assess the validity of this claim, the Borrower Trust reviewed Internal Servicing Notes, Loan Payment History, letters between the Debtors and the applicable Borrower(s), executed mortgage notes and deeds of trust, and other relevant documents.  See Lathrop Declaration at ¶ 7(ii).

Based on its review, the Borrower Trust has determined that the General Servicing Issues Claim is not a valid obligations of the Debtors because: (a) the alleged events involving General Servicing Issues never took place; (b) the Debtor remedied the alleged error or mishandling, and as a result, the Claimant did not incur any damages or failed to provide evidence of damages; (c) the Debtor acted properly in servicing the loan, in accordance with the Debtors standard policies and procedures and the terms of the executed note and deed of trust; and/or (d) the allegations relate to actions taken by a non-Debtor entity.  See id.

To substantiate this determination, the Borrower Trust is prepared to provide the Court and each claimant whose claim is identified as a General Servicing Issues Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more[6] of the following types of documents, each of which were prepared or kept by the Debtors' in the course of their regularly conducted business activities:

- Loan Payment History;
- Internal Servicing Notes currently accessible to the Borrower Trust;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Debtors' written communications to the claimant;
- Copies of lien releases; or
- Other documents that are relevant to the reconciliation of the claim. [7]

---

[5] The production of documents by the Borrower Trust (to claimants under any of the stated objection categories) will be subject to all applicable privileges, including without limitation, attorney-client, and where necessary, will be subject to a mutually acceptable Confidentiality Agreement.

[6] For the purpose of clarification, the Borrower Trust is not suggesting that the listed documents in the respective objection categories are relevant to every Claim; rather, the Borrower Trust will provide the claimant and the Court with copies of only those relevant documents presently in its possession that substantiate the stated reason(s) for disallowance.

[7] The production of documents by the Borrower Trust (to claimants under any of the stated objection categories) will be subject to all applicable privileges, including without limitation, attorney-client, and where necessary, will be subject to a mutually acceptable Confidentiality Agreement.

-8-

(iii)  ***Origination Issues***.  This category includes a claim based on loan origination issues, which relates to disputes regarding the loan application and closing process, disclosures, or loan terms.  To assess the validity of this claim (the "Origination Issues Claim"), the Borrower Trust reviewed the Debtors' books and records, including the claimant's executed mortgage notes, to determine whether any Debtor was involved in the origination of the applicable loans, and if so, if the claim would be barred by the applicable statute of limitations.  See Lathrop Declaration at ¶ 7(iii).

Based on its review of the Debtors' books and records and its review of applicable state and federal law, the Borrower Trust determined that the Debtors are not liable for the Origination Issues Claim because no Debtor entity was involved in the origination of the applicable loans and vicarious liability cannot be imputed to any Debtor in its capacity as servicer or assignee of the loans.[8] See id.

To substantiate this determination, the Borrower Trust is prepared to provide the Court and each claimant whose claim is identified as an Origination Issues Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:

- Internal Servicing Notes currently accessible to the Borrower Trust;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Origination File; or
- Other documents that are relevant to the reconciliation of the claim.

(iv)  ***Escrow Issues***.  This category includes claims based on the alleged improper application or calculation of escrow amounts (the "Escrow Issues Claims").  To assess the validity of these claims, the Borrower Trust examined the Debtors' books and records, including the Debtors' escrow receipts and payments, the annual escrow analysis sent to Borrowers and any Internal Servicing Notes and written communication between the Debtors and the applicable Borrower(s).

Based on its review, the Borrower Trust determined that the Debtors are not liable for the Escrow Issues Claims.  See Lathrop Decl. at ¶ 7(iv).  In cases where a claimant asserted that they were owed a refund, the Borrower Trust determined that the payments to the Debtors received were all correctly applied.  In cases where a claimant asserted that the escrow collected was insufficient to cover the property taxes and insurance, the Borrower Trust reviewed the escrow statements issued to the claimant, which outlined the amounts paid that year compared to what was estimated, as well as Internal Servicing Notes to the extent that there was an escrow account added to the loan, and determined that they have no liability as long as all amounts received from the Borrower were accurately recorded

---

[8] As noted in Exhibit A, to the extent the claimant asserts statutory claims related to origination of the loan, the Borrower Trust reviewed the applicable federal and state statutes and determined that such claims against servicers or loan assignees carry no successor liability.  To the extent claimant asserts common-law claims, the Borrower Trust found no case precedent establishing assignee liability when a party is not involved with the origination of the loan, and the claimant did not provide any specific legal authority to substantiate its allegation.

because the Borrowers are liable for the taxes and insurance on their real property.  In cases where a claimant asserted that it was owed a refund, the Borrower Trust looked at (1) the escrow statement issued to the claimant to determine if there was a refund due, (2) the history of the loan to determine if a check was issued for the refund and (3) the internal account notes to determine if there were discussions with the claimant regarding an escrow refund not being received, and found that any refunds due were previously paid.  Moreover, to the extent that the Debtors' books and records indicated that the issues asserted by a claimant occurred after the Debtors ceased servicing the underlying loan, the Borrower Trust concluded that the Debtors had no liability for the claim.  See id.

To substantiate this determination, the Borrower Trust is prepared to provide the Court and the claimants whose claims are identified as an Escrow Issues Claims on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:

- Loan Payment History;
- Internal Servicing Notes currently accessible to the Borrower Trust;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Debtors' written communications to the claimant;
- Escrow Statement;
- Loan Modification Agreement, if applicable; or
- Other documents that are relevant to the reconciliation of the claim.

(v) **_Wrongful Foreclosure_**.  This category includes claims based, either directly or indirectly, on allegations of wrongful foreclosure by the Debtors (the "Wrongful Foreclosure Claims").  To assess the validity of these claims, the Borrower Trust examined the Debtors' books and records to verify that the Debtors foreclosed properly and, where applicable, took the appropriate loss mitigation steps.  Specifically, the Borrower Trust reviewed Payment History, Internal Servicing Notes, as well as, where applicable, the claimants' loan modification applications, loan modification approval letters, loan modification denial letters, compliance with loan modifications (trial and/or permanent), compliance with any other payment plans (forbearance and repayment), short sale applications and history, investor guidelines and/or direction, breach letters, and/or foreclosure related documents.  Where a claimant asserted that he or she did not execute the mortgage note, the Borrower Trust compared the signatures on other executed documents in the claimant's file, as well as examining the Loan Payment History and any other information in the Debtors' possession.  Moreover, where a Wrongful Foreclosure Claim was based on issues related to a short sale, the Borrower Trust further reviewed the Debtors' records to determine whether a short sale approval had been requested, and, if so and if such request was denied, whether the reason for denial was proper.[9]  See Lathrop Declaration at ¶ 7(v).  Based on its review, the Borrower Trust determined that the Debtors are not liable for the Wrongful Foreclosure Claims.  See id.

---

[9] Appropriate reasons for denying a short sale request include, without limitation, a claimant's failure to submit executed sale contracts, a claimant's failure to obtain approval from second lien holders and/or a claimant's short sale request did not comply with the investor's requirements.

ny-1217093

To substantiate this determination, the Borrower Trust is prepared to provide the Court and each claimant whose claim is identified as a Wrongful Foreclosure Claim on <u>Exhibit A</u> to the Proposed Order, upon their respective request, with copies of one or more of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:

- Loan Payment History;
- Internal Servicing Notes currently accessible to the Borrower Trust;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Loan Modification Agreement, if applicable;
- Debtors' written communications to Claimant, including the following, if applicable:
  - § Denial Letters,
  - § Missing Items Letters,
  - § Loan Modification Offers,
  - § Signed Modification Agreement(s),
  - § Breach of Contract Notice, and
  - § Trial, Forbearance, or Foreclosure Repayment Plan Letters;
- Escrow Statement, if applicable;
- Pooling and Servicing Agreements, if applicable; or
- Other documents that are relevant to the reconciliation of the claim.

(vi) ***Interest Rates and Fees Collected***. This category includes claims based on the assertion that the interest rate charged to the claimants was inappropriate (the "<u>Interest Rates and Fees Collected Claims</u>"). To assess the validity of this claim, the Borrower Trust reviewed the Debtors' books and records, including the claimant's note, any adjustable rate rider and related documents, notices and/or adjustment letters sent to the claimants, Loan Payment History and fees charged. <u>See</u> Lathrop Declaration at ¶ 7(vi).

Based on its review, the Borrower Trust has determined that the Debtors are not liable for the Interest Rates and Fees Collected Claims because the interest rate charged was consistent with the governing loan documents and the Debtors' servicing policies. To substantiate this determination, the Borrower Trust is prepared to provide the Court and the claimant whose claim is identified as the Interest Rates Claim and Fees Collected Claims on <u>Exhibit A</u> to the Proposed Order, upon their respective request, with copies of one or more of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:

- Loan Payment History;
- Internal Servicing Notes currently accessible to the Borrower Trust;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Loan Modification Agreement, if applicable;
- Investor guidelines, if applicable;
- Servicing agreement(s), if applicable;
- Debtors' written communications to the claimant, including, if applicable Rate Adjustment Letters; or

-11-

- Other documents that are relevant to the reconciliation of the claim.

(vii)  ***Loan Modification***. This category includes claims based on loan modification issues (the "Loan Modification Claims"), which allege, among other things, that the Debtors (a) failed to provide a loan modification,[10] or (b) provided a loan modification, but the claimant believes the terms of the modification were not as favorable to the claimant as those to which claimant believed he or she was entitled.  To assess the validity of these claims, the Borrower Trust examined the Debtors' books and records to verify that the Debtors followed the applicable investor guidelines and policies regarding loan modifications.  Specifically, the Borrower Trust reviewed Internal Servicing Notes, Loan Payment History, and, where applicable, loan modification agreements, loan modification applications, loan modification denial letters, loan modification approval letters, the claimant's compliance with modifications (trial and/or permanent) and any instructions or guidelines provided by the investor for the claimant's loan.  See Lathrop Declaration at ¶ 7(vii).

Based on its review, the Borrower Trust determined that the Debtors are not liable for the Loan Modification Claims because: (a) in cases where a loan modification request was denied, the Debtors complied with the applicable investor guidelines and policies governing the loan modification process and (b) in the cases where the claimant obtained a loan modification, the claimant was not damaged by the loan modification assistance provided.  See id.

To substantiate this determination, the Borrower Trust is prepared to provide the Court and each claimant whose claim is identified as a Loan Modification Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:
- Loan Payment History;
- Internal Servicing Notes currently accessible to the Borrower Trust;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Loan Modification Agreement, if applicable;
- Investor guidelines, if applicable;
- Servicing agreement(s), if applicable;
- Workout Packages;
- Debtors' written communications to Claimant, including the following, if applicable:
  - § Denial Letters,
  - § Missing Items Letters,

---

[10] As a regular part of the Debtors' business practices, the Debtors offered mortgage loan modifications to Borrowers in financial distress, pursuant to certain guidelines established by the investors ("Traditional Modifications").  The Home Affordable Modification Program ("HAMP") is an administrative program that was implemented in April 2009 by the United States Treasury Department to help eligible homeowners with loan modifications on their home mortgage debt.  HAMP provided the Debtors with an additional type of loan modification (a "HAMP Modification") for assisting eligible Borrowers experiencing financial distress.

-12-

§    Loan Modification Offers,
§    Signed Mod Agreement(s),
§    Breach of Contract Notice(s), and
§    Trial, Forbearance, or Foreclosure Repayment Plan Letters;
- Escrow Statement; or
- Other documents that are relevant to the reconciliation of the claim.

(viii) ***Judicial Estoppel and Standing.*** This category includes a claim (the "Judicial Estoppel Claim") that is barred from relief under the doctrine of judicial estoppel. Judicial estoppel applies when (i) a party asserts a position in a proceeding, but thereafter assumes a contrary position, and (ii) such inconsistences create the inference the court has been misled. New Hampshire v. Maine, 532 U.S. 742, 749 (2001). Pursuant to 11 U.S.C. § 521(1), a debtor is required to disclose all of his/her actual or potential assets, which would include any known causes of action. See 11 U.S.C. §§ 521(1), 1306; Chartschlaa v. Nationwide Mut. Ins. Co., 538 F.3d 116, 122 (2d Cir. 2008) (citing 11 U.S.C. §§ 521(a)(1)(B)(i), (iii)); Rosenshein v. Kleban, 918 F. Supp. 98 (S.D.N.Y. 1996). "[I]f the debtor has enough information … prior to confirmation to suggest that it may have a possible cause of action, then it is a 'known' cause of action such that it must be disclosed." Browning Mfg. v. Mims (In re Coastal Plains, Inc.), 179 F.3d 197, 208 (5th Cir. 1999) (citations omitted). Undisclosed assets automatically remain property of the estate, and as a result, even after discharge of the bankruptcy estate, the debtor lacks standing to pursue a claim that he failed to disclose. See Rosenshein, 918 F. Supp. at 103.

This Court, following numerous other courts in this circuit, has applied the doctrine of judicial estoppel to disallow and expunge claims where the claimant failed to disclose the claim in their own bankruptcy proceeding. See *Memorandum Opinion and Order Sustaining Objection and Expunging Claim No. 4443 by Corla Jackson*, In re Residential Capital, LLC, No. 12-12020 (MG) (Bankr. S.D.N.Y. Jan. 27, 2014) [Docket No. 6363], *appeal dismissed,* Jackson v. ResCap Borrower Claims Trust, No. 14 cv. 2427 (S.D.N.Y. Oct. 9, 2014) [Docket No. 18]. Similarly, the Claimant asserting a Judicial Estoppel Claim failed to affirmatively assert the Judicial Estoppel Claim in their first bankruptcy case, which has been closed. As a result, the Claimant effectively waived the right to assert the Judicial Estoppel Claim and is estopped from bringing that same claim in the Debtors' Chapter 11 cases.[11] Additionally, even if the Judicial Estoppel Claim was not barred by judicial estoppel, the Claimants that filed the Judicial Estoppel Claim do not have standing to pursue it because the Judicial Estoppel Claim is property of the Claimants' bankruptcy estate. As a result, the Judicial Estoppel Claim is also barred for lack of standing.

---

[11] The Claimants filed two bankruptcies after the basis for the claim occurred, a chapter 13 filed in 2010 that was later converted in to a chapter 7 that same year and a chapter 13 filed in 2012. The Claimants listed the claims against the Debtors on their bankruptcy schedules in the second bankruptcy. While the Borrower Trust submits that the alleged events giving rise to the Judicial Estoppel Claim occurred prior to the first bankruptcy, to the extent the Court determines that the Judicial Estoppel Claim is based on events that occurred in between the two bankruptcies, only the current Chapter 13 trustee has standing to bring the Judicial Estoppel Claim.

With respect to the Judicial Estoppel Claim, the Borrower Trust examined the proof of claim in conjunction with public bankruptcy records and validated that:

> (a) the Claimant filed for individual bankruptcy protection and received a discharge,
> (b) the basis for claim comprising the Judicial Estoppel Claim involves assertions and alleged damages that occurred prior to Claimant's discharge,
> (c) the Claimant did not include the Judicial Estoppel Claim in the schedule of assets filed by Claimant in their first bankruptcy case, and
> (d) the Claimant never raised such claim in any other proceeding during their individual bankruptcy case (e.g., an adversary proceeding). <u>See</u> Lathrop Declaration ¶ 7(viii).

(ix) ***<u>Res Judicata.</u>*** This category includes a claim related to litigation that has already been adjudicated (the "<u>Res Judicata Claim</u>"). The Borrower Trust diligently reviewed the case notes from the Debtors' internal electronic case management system and the Debtors' internal files, relating to the litigation, including relevant underlying documents such as the note, loan agreement and/or deed of trust (the "<u>Litigation File</u>"). The Debtors or the Liquidating Trust (on behalf of the Borrower Trust) as applicable, supplemented the Litigation File by reaching out to the outside counsel who previously handled the litigation for the Debtors to obtain a current update as to the status of the litigation, as well as copies of any relevant case dockets, complaints, answers, counterclaims, motions, responsive pleadings, judgments, orders, and any other relevant documents relating to the underlying litigation. The allegations set forth in the Res Judicata Claim were compared to the information contained in the Litigation Files (as supplemented with information provided by outside counsel), as well as the Debtors' Books and Records. <u>See</u> Lathrop Declaration at ¶ 7(ix).

The Doctrine of res judicata provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." <u>Burgos v. Hopkins</u>, 14 F.3d 787, 789 (2d. Cir. 1994) (quoting <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980)). <u>See</u> also <u>In re Zaharescu</u>, No. CV-12-9767-CAS, 2013 WL 3762285, at *2 (C.D. Cal. July 11, 2013) (stating the rule in federal court). Moreover, in a case where a federal court has jurisdiction due to the existence of a federal question, "the Court applies the 'uniform federal rules' of res judicata announced by the United States Supreme Court." <u>See id.</u> In federal courts, a pending appeal does not affect whether a decision is a final judgment. <u>See</u> <u>Tripati v. Henman</u>, 857 F.2d 1366, 1367 (9th Cir. 1988) ("The established rule in federal courts is that a final judgment retains all of its res judicata consequences pending decision of the appeal.") (citations omitted).

The Res Judicata Claim is related to litigation that has already been adjudicated between the Claimant and the Debtors by a federal court, and the court dismissed the claimant's complaint with prejudice. A copy of the relevant decision is attached hereto as <u>Exhibit 5</u>. The basis for a portion of the Res Judicata Claim is the same as the allegations made in the underlying litigation that were previously adjudicated on the merits by the United States District Court for the Central District of California.

-14-

(x)  **_Redundant_**.  This category includes a claim (the "Redundant Borrower Claim") that is identical to another claim filed on the Claims Register.  See Lathrop Declaration ¶ 7(x).  Pursuant to Bankruptcy Rule 3007(d), a debtor may object to claims and seek their disallowance where such claims "duplicate other claims."  Fed. R. Bankr. P. 3007(d)(1).  Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law…."  11 U.S.C. § 502(b)(1).  Accordingly, courts in the Southern District of New York routinely disallow and expunge duplicative and/or redundant claims filed by the same creditor against the same debtor.  See, e.g., _Order Granting the ResCap Liquidating Trust's Seventy-Second Omnibus Objection to (A) Amended and Superseded Claims; (B) Late Filed Claims; and (C) Duplicate Claims_, In re Residential Capital, LLC, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Sept. 30, 2014) [Docket No. 7595] (ordering the disallowance and expungement of redundant claims identified by the Liquidating Trust in its seventy-second omnibus claims objection); In re Worldcom, Inc., Case No. 02-13533AJG, 2005 WL 3875191, at *8 (Bankr. S.D.N.Y. June 3, 2005) (expunging duplicate claim); In re Best Payphones, Inc., Case No. 01-15472 (SMB), 2002 WL 31767796, at *11 (Bankr. S.D.N.Y. Dec. 11, 2002) (expunging duplicate claim).

The Borrower Trust believes that it was not the claimant's intention in asserting the Redundant Borrower Claim to seek a double recovery against the Debtors' estates.  Instead, the filing of the Redundant Borrower Claim appears to be a function of the claimant filing an additional proof of claim on account of the same obligation.  See Lathrop Declaration ¶ 7(x).  Regardless of the claimant's reasons for filing the Redundant Borrower Claim, at most, only one claim against the Debtors' estates should potentially be allowed for the claimant.

22.    To prevent the claimants that filed the No Liability Borrower Claims from receiving improper recoveries to the detriment of other Borrowers holding valid claims, the Borrower Trust requests that the Court disallow and expunge in their entirety each of the No Liability Borrower Claims.

### THE ALLOWED IN FULL BORROWER CLAIM SHOULD BE ALLOWED IN FULL AND RECEIVE THE TREATMENT PROVIDED FOR ALLOWED BORROWER CLAIMS AGAINST GMACM DEBTORS PROVIDED FOR UNDER THE PLAN

23.    The Allowed in Full Borrower Claim was filed by Sonia Visajel aka Sonia Medina and is currently listed on the Claims Register as a general unsecured claim against

Debtor GMACM ("GMACM").[12]  Based on its review of the Allowed in Full Borrower Claim, the Borrower Trust determined that it should be allowed as a general unsecured claim against Debtor GMAC Mortgage, LLC in the filed claim amount of $22,600.00.  See Lathrop Declaration ¶ 13.  As a result, the Borrower Trust requests that the Court enter an order allowing the claim in the asserted amount so that it will receive the treatment of an Allowed Borrower Claim against the GMACM Debtors provided for in Article III.D.2(f) of the Plan.

### NOTICE

24.    The Borrower Trust has served notice of this Objection in accordance with the Case Management Procedures entered on May 23, 2012 [Docket No. 141] and the Procedures Order.  The Borrower Trust submits that no other or further notice need be provided.

### NO PRIOR REQUEST

25.    No previous request for the relief sought herein as against the holders of the No Liability Borrower Claims or the Allowed in Full Borrower Claim has been made by the Borrower Trust to this or any other court.

### CONCLUSION

WHEREFORE, the Borrower Trust respectfully requests that the Court enter an order substantially in the form of the Proposed Order granting the relief requested herein and granting such other relief as is just and proper.

---

[12] The Allowed in Full Borrower Claim was originally asserted as a general unsecured claim against Debtor Residential Capital, LLC, but was redesignated as a claim against GMACM pursuant to the Court's *Order Granting Debtors' Thirty-Eighth Omnibus Objection to Claims (Wrong Debtor Borrower Claims)* [Docket No. 5898].

ny-1217093

Dated:  January 7, 2016
        New York, New York

                                        /s/ Norman S. Rosenbaum
                                        Norman S. Rosenbaum
                                        Jordan A. Wishnew
                                        Jessica J. Arett
                                        MORRISON & FOERSTER LLP
                                        250 West 55th Street
                                        New York, New York 10019
                                        Telephone:  (212) 468-8000
                                        Facsimile:  (212) 468-7900

                                        *Counsel for The ResCap Borrower*
                                        *Claims Trust*

## Exhibit 1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------
)
In re:                                                        )         Case No. 12-12020 (MG)
)
RESIDENTIAL CAPITAL, LLC, et al.,          )         Chapter 11
)
                                            Debtors.    )         Jointly Administered
---------------------------------------------------------------   )

### ORDER GRANTING RESCAP BORROWER CLAIMS TRUST'S NINETY-SECOND OMNIBUS OBJECTION TO CLAIMS ((I) NO LIABILITY BORROWER CLAIMS AND (II) ALLOWED IN FULL BORROWER CLAIM)

Upon the Ninety-Second omnibus objection to claims (the "Objection")[1] of the

ResCap Borrower Claims Trust (the "Trust"), established pursuant to the terms of the confirmed

Plan filed in the above-referenced Chapter 11 cases, as successor in interest to the Debtors with

regard to Borrower Claim matters, seeking entry of an order, pursuant to section 502(b) of title

11 of the United States Code (the "Bankruptcy Code"), Rule 3007(d) of the Federal Rules of

Bankruptcy Procedure, and this Court's order approving procedures for the filing of omnibus

objections to proofs of claim [Docket No. 3294] (the "Procedures Order"), disallowing and

expunging the No Liability Borrower Claims and allowing the Allowed in Full Borrower Claim,

all as more fully described in the Objection; and it appearing that this Court has jurisdiction to

consider the Objection pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the

Objection and the relief requested therein being a core proceeding pursuant to 28 U.S.C. §

157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

due and proper notice of the Objection having been provided, and it appearing that no other or

further notice need be provided; upon consideration of the Objection and the *Declaration of Sara*

---

[1]    Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Objection.

*Lathrop in Support of the ResCap Borrower Claims Trust's Ninety-Second Omnibus Objection to Claims ((I) No Liability Borrower Claims and (II) Allowed in Full Borrower Claim)*, annexed thereto as <u>Exhibit 2</u>, and the *Declaration of Norman S. Rosenbaum in Support of the ResCap Borrower Claims Trust's Ninety-Second Omnibus Objection to Claims ((I) No Liability Borrower Claims and (II) Allowed in Full Borrower Claim)*, annexed thereto as <u>Exhibit 3</u>; and the Court having found and determined that the relief sought in the Objection is in the best interests of the Trust, the Trust's constituents, the Debtors, and other parties in interest and that the legal and factual bases set forth in the Objection establish just cause for the relief granted herein; and the Court having determined that the Objection complies with the Borrower Claim Procedures set forth in the Procedures Order; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Objection is granted to the extent provided herein; and it is further

ORDERED that pursuant to section 502(b) of the Bankruptcy Code, the claims listed on <u>Exhibit A</u> annexed hereto (collectively, the "<u>No Liability Borrower Claims</u>") are disallowed and expunged with prejudice; and it is further

ORDERED that Kurtzman Carson Consultants LLC, the Debtors' claims and noticing agent ("<u>KCC</u>"), is directed to disallow and expunge the No Liability Borrower Claims identified on the schedule attached as <u>Exhibit A</u> hereto so that such claims are no longer maintained on the Claims Register; and it is further

ORDERED that pursuant to section 502(b) of the Bankruptcy Code, claim number 5523 filed by Sonia Visajel aka Sonia Medina (the "<u>Allowed in Full Borrower Claim</u>") is hereby allowed as a general unsecured claim against Debtor GMAC Mortgage, LLC in the

filed amount of $22,600.00 and shall receive the treatment provided for Allowed Borrower Claims against the GMACM Debtors provided for in Article III.D.2(f) of the Plan; and it is further

ORDERED that KCC is directed to reflect on the Claims Register that the Allowed in Full Borrower Claim is allowed as a general unsecured claim against GMAC Mortgage, LLC in the amount of $22,600.00; and it is further

ORDERED that the Trust is authorized and empowered to take all actions as may be necessary and appropriate to implement the terms of this Order; and it is further

ORDERED that notice of the Objection, as provided therein, shall be deemed good and sufficient notice of such objection, and the requirements of Bankruptcy Rule 3007(a), the Case Management Procedures entered on May 23, 2012 [Docket No. 141], the Procedures Order, and the Local Bankruptcy Rules of this Court are satisfied by such notice; and it is further

ORDERED that this Order has no res judicata, estoppel, or other effect on the validity, allowance, or disallowance of any claim that is not identified in this Order or listed on Exhibit A annexed to this Order, and the Trust's and any party in interest's right to object on any basis are expressly reserved with respect to any such claim that is not identified in this Order or listed on Exhibit A annexed hereto; and it is further

ORDERED that this Order shall be a final order with respect to each of the No Liability Borrower Claims identified on Exhibit A annexed hereto, as well as the Allowed in Full Borrower Claim, as if each such Claim had been individually objected to; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

3

Dated: _____, 2016
      New York, New York


_____
THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

4

**Exhibit A**

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| 4267 | Jeffrey and Jacqueline Piper<br><br>2132 Galloway Ct Cincinnati, OH 45240<br><br>Unliquidated<br><br>GMAC Mortgage, LLC | Judicial Estoppel | Intervale Mortgage Corporation originated the loan on May 17, 2006. Debtor Residential Funding Company, LLC purchased the loan from Intervale and transferred its interest when the loan was securitized on or about July 1, 2006 where JP Morgan Chase Bank, NA was appointed as trustee.  Debtor Homecomings Financial serviced the loan from July 13, 2006 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage LLC serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimant asserts "illegal charges against mortgage and note" as basis for claim in box 2 of the proof of claim form.  Claimant attaches mortgage statements from June, July and August 2010, but provides no additional explanation or documentation in support of the claim. On June 21, 2013 Debtors sent Claimant a letter requesting additional information and documentation in support of the claim; however, Claimant failed to respond.<br><br>Debtors have no liability for Claimants' assertions because Claimant did not preserve this claim in their personal bankruptcy, and therefore, is estopped from asserting the claim against the Debtors.  Debtors' records and research show that Claimant, Jacqueline Piper, filed a petition for chapter 13 bankruptcy protection on June 2, 2010 (Ohio Southern District Bankruptcy Court, Case 10-bk-13818) and received an order of joint discharge October 10, 2013. Claimant Jeffrey Piper was listed as a co-debtor for the specific mortgage debt to GMAC Mortgage on | 13 |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Schedule H of Jacqueline Piper's bankruptcy schedules.   The Claimants filed Claim No. 4267 on November 9, 2012.  Claimant's schedules filed in her chapter 13 case do not show any liquidated, unliquidated or contingent claims against any of the Debtors that are consistent with the allegations in the Claimant's proofs of claim. Some or all of the allegations and issues of fact regarding the alleged "illegal fees" occurred prior to Claimant's chapter 13 petition date, and Claimant never amended schedules to reflect a claim against the Debtors prior to Claimant's discharge in 2013. | |
| 1384 | Edward Dierkes<br><br>610 Riverfront Drive Sheboygan, WI 53081<br><br>$12,864.25<br><br>GMAC Mortgage, LLC | Wrongful Foreclosure; Loan Modification | Homecomings Financial Network, Inc. originated the loan on August 15, 2005. Debtor Residential Funding Company, LLC purchased the loan from Homecomings and transferred its interest when the loan was securitized on or about September 1, 2005 where Deutsche Bank Trust Company Americas was appointed as Trustee. Debtor Homecomings Financial serviced the loan from August 15, 2005 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage LLC serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimants assert "Misrepresentations, errors during foreclosure process" as basis for claim in box 2 of the proof of claim form. Attached to the Proof of Claim was a further explanation asserting "1) We were giving two modification and told if we made three trial payments our loan would be modified. We made the payments and after the 3rd payment they said no.  2) They told us the foreclosure was on | 10-11, 12 |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | hold, but it wasn't, it was a robo signed case." Additional assertions include:<br><br>1) Loan was discharged in Chapter 7 Bankruptcy<br>2) Applied for modification, was told foreclosure on hold<br>3) They sent me packet and told me if we made the 3 payments on time our mortgage would be modified.<br>4) We sent packet back<br>5) Made the 3 required payments on time<br>6) Received letter of denial stating 'HAMP Program denied due to insufficient'<br>7) I would not have sent in the payments totaling $2,264.25, if they didn't tell me I was approved , especially since I had discharged the debt.<br>8) They submitted the 'Robo Signed' affidavit of Jeffrey Stephan<br>9) We moved out of our property because of the foreclosure judgment, based on Jeffrey Stephans affidavit.<br>10) We rented an apartment beginning on June 1st 2010.<br>11) They vacated the judgment due to robo signed affidavit of Jeffrey Stephan.<br>12) They kept possession of the property by changing the locks, which denied us access and cost us the additional expenses.<br>13) I would not have had to move and acquired the expenses I did.<br>14) I am requesting the below listed damages<br><br>3 payments to GMAC  @ $754.75  - $2,264.25<br>Rent 6-1-2010 to 5-31-2011 @ $750.00  -  $9,000.00 | |

ny-1214694

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Rent 6-1-2011 to 7-1-2011 @ $800.00  -  $1,600.00"<br><br>Claimants filed Chapter 7 Bankruptcy on July 17, 2008. At the time of the BK filing the loan was due for the June 1, 2008 payment. Debtors filed a motion for relief from the automatic stay on September 25, 2008, and that motion was granted. The chapter 7 trustee abandoned the property on October 22, 2008. Debtors pursued collection proceedings, as well as foreclosure. Claimants received their chapter 7 discharged from Bankruptcy on November 3, 2008.<br><br>Debtors referred the loan to foreclosure on August 12, 2009. At the time of the referral, the loan was due for May 1, 2009. On September 14, 2009, Claimants contacted Debtors for a workout package. Debtors sent out the package the next day. On September 22, 2009, Debtors received a work out package; however the Proof of Income and form 4506-T (a form for requesting transcripts of tax returns) were missing. Those missing items were received on September 28, 2009.<br><br>Debtors stopped any foreclosure sale, and placed the file on hold on October 27, 2009 due to loan modification activity and review. Claimants were approved for a three month HAMP Trial Modification on October 27, 2009 that consisted of three payments in the amount of $754.75, due on December 1, 2009; January 1, 2010 and February 1, 2010. The Claimants were informed that upon successful completion of the trial, a review would be completed to determine if a | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | permanent modification can be completed.  Claimants were advised of the trial approval via phone on October 29, 2009. Claimants were advised at that time that there was no guarantee of a permanent modification because a review would still be needed after the trial plan was approved. Debtors received the executed modification documents on November 14, 2009.<br><br>Claimants completed the trial modification in February 2010. The permanent modification review process began on February 8, 2010. On March 24, 2010, after receiving updated income information from the Claimants, the Claimants were denied a HAMP Modification, due to the Debtors not being able to forbear enough of the principal loan amount to reach the 31% payment amount. The account was denied for a traditional modification as well, as it was determined that the Claimants would not be able to afford the payments. Claimants called on March 30, 2010 and were advised of the modification denial. The Debtors also mailed a letter to Claimants informing them of the denial on March 26, 2010. Claimants advised that they had more income, and would reapply.  Debtors mailed a new workout package on March 31, 2010 for Claimants to complete; however, the Debtors' books and records do not reflect that it was returned.<br><br>On June 21, 2010, Debtors received word from a property inspector that Claimants' property was vacant. Debtors proceeded with property preservation work to secure and winterize the property, as well as make repairs. This included | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | changing the locks. On September 3, 2010, Debtors removed the hold from foreclosure and advised the attorneys to proceed because the account was not approved for a permanent modification and the Debtors had been advised that the property was vacated.  A judgment of foreclosure was entered on November 30, 2010.<br><br>On December 21, 2010, Debtors petitioned the courts to vacate the foreclosure judgment. The order vacating the Foreclosure Judgment was entered January 4, 2011. A new Affidavit was executed on December 1, 2011, and a new Judgment Order was entered January 9, 2012. The foreclosure sale was held on August 2, 2012, with a six month redemption period.   At the time of the sale, the account was owing for the July 2009 through August 2012 payments.<br><br>The Debtors have no liability related to the loan modification because the Claimants were never guaranteed a permanent modification and any payments made during the trial modification was their obligation under the terms of the loan.  Claimants are not entitled to the monies they paid for apartment rent, as they did not have to vacate the property until after the foreclosure sale, and subsequent redemption period. They moved out in June 2010, however, the foreclosure sale did not occur until August 2012. Eviction would not have begun, if necessary, until February 2013 at the earliest.  Debtors never told Claimants they needed to move out prior to the foreclosure sale. In fact, when the | |

ny-1214694

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Claimants moved out of the property, the foreclosure was still on hold. | |
| 1282 | Joelle Horan<br><br>9414 NW 72nd Court Tamarac, FL 33321<br><br>$12,000.00<br><br>Residential Capital LLC GMAC Mortgage LLC | Interest Rates and Fees; Wrongful Foreclosure; Loan Modification | Homecomings Financial Network, LLC F/K/A Homecomings Financial Network, Inc. originated the loan on January 31, 2007. Debtor GMAC Mortgage, LLC purchased the loan from Homecomings and transferred its interest to Fannie Mae. Debtor Homecomings Financial serviced the loan from January 31, 2007 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage LLC serviced the loan until servicing transferred to GreenTree Servicing on February 1, 2013.<br><br>Claimants assert "wrongful mortgage fees" as basis for claim in box 2 of the proof of claim form. Attached to the proof of claim is a letter that asserts, "The debt owed to me at this time is still being reviewed by the governmental agency of reviewers of mortgage companies that falsely placed people into foreclosure. I was one of those people, and would like my claim included in the items they are required to pay. I was in the Home Affordable Modification program and had received a loan work out plan. Included in all of the notifications for foreclosure, GMAC stated that if you were currently in the program the notice didn't include you. GMAC decided to place my house with an attorney into foreclosure, never served me foreclosure documents, never placed notices at my property in an attempt to serve me, and I had been in constant contact with GMAC personnel at | 10-12 |

7

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | a minimum of once every other week, if not weekly . I was never notified I was in foreclosure until I received a sell date notice.  I was forces to take a loan out to pay off the attorney and all the fees, had the association file documents against me due to the false placing of my property in foreclosure as well as the city of Tamarac, filed against me as well, as once again GMAC falsely placed my case into foreclosure.<br><br>This act cause me grave financial hardship, which I am still enduring at this time. I would like my debt, that will be approved by the national foreclosure group included in the debt that GMAC has to pay, as I find it unfair that they were able to force me to pay money that was not owed to them, but they try to not have to pay back by filing bankruptcy.<br><br>The website that was supposed to provide the forms did no such thing, and again they provided misinformation to attempt to make filing a claim that much more difficult. " It does not appear that a follow up letter was sent by the Debtors.<br><br>Debtors have no liability on Claimant's assertion of wrongfully placing loan into foreclosure because i) Claimant's loan was severely delinquent; ii) Claimant was not active in loss mitigation activity during foreclosure process and iii) all attempts to notify Claimants of foreclosure were performed properly. | |

ny-1214694

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Claimant started to become delinquent on her loan in January 2009. Servicing notes show that on January 10, 2009, Claimant stated via phone conversation, that she was jobless and would try to make payment before January 31st. Debtors sent an Options to Avoid Foreclosure letter to Claimant on February 12, 2009 and March 18, 2009. A Home Affordable Modification Program package/letter was sent to Claimant April 1, 2009.<br><br>Debtors received a workout package via fax from Claimant on April 14, 2009. The complete financials were missing. The financial statement was received on May 1, 2009. Claimant was denied for a HAMP Modification, as well as a Traditional Modification due to insufficient income. Debtors sent a denial letter to Claimants on June 12, 2009. The loan was then referred to foreclosure on June 16, 2009. At the time of the referral the loan was due for February 1, 2009.<br><br>Debtors filed the foreclosure complaint on July 1, 2009, but never served the complaint on Claimant.<br><br>Claimant called Debtors on June 29, 2009 stating that she was denied for the "Obama plan." She stated that she was working full time and receiving child support and that she could provide a letter of new pay; however, she would not be home until August. Claimants faxed another workout package on July 9, 2009; however the required additional paystub, tax return and form 4506-T were | |

9

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | missing.<br><br>At Claimant's request, Debtors provided reinstatement figures to the foreclosure attorney on July 22, 2009. Debtors had a phone conversation with Claimant on August 3, 2009. Claimant inquired about the missing documentation for loan modification review. Claimant stated that she was out of the country frequently and was not aware of upcoming sale. Foreclosure attorney received reinstatement funds in the amount of $8,550.36 from Claimant on August 3, 2009. Funds were sent to Debtors. The missing items needed for loan modification review were received from Claimant on August 4, 2009, and the review process began. Debtors received the reinstatement funds on August 7, 2009, and the loan was officially reinstated and brought current. The foreclosure attorney was advised on August 10, 2009 to close the file.<br><br>Claimant was approved for a Trial HAMP Modification on August 17, 2009. She was to make four monthly payments of $766.88 beginning on October 1, 2009. Debtors sent the Trial Modification documentation to Claimant on August 18th, but they were returned unsigned on August 31, 2009. The Claimant had crossed out amounts and terms, and wanted a new plan. Pursuant to the Debtors' business practices, because an executed modification agreement was not returned, the trial modification was denied on September 1, 2009. | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | On October 14, 2009, Claimant contacted Debtors, as she was advised the loan was delinquent. Claimant stated she was on a trial loan modification and they have been following the terms. Debtors advised that the modification was not agreed to. Claimant advised she was interested in a modification. Due to the plan being cancelled, the review process needed to start over.  A new Trial Modification was set upon October 27, 2009. New terms show that, effective December 1, 2009 Claimant was to make four monthly payments in the amount of $658.38. New documents were sent to Claimants on November 2, 2009, and were signed and received by Debtors on November 4, 2009.<br><br>The Trial HAMP Modification was completed with the March 1, 2010 payment and the Permanent Modification was approved March 16, 2010. Terms show a new P&I payment of $325.07; New Interest Rate of 2.00%; New Term 480; Forbearance 1293.08; PITI $658.38; New Ceiling 5.00% after 5 years will increase 1.00% a year until reaching the ceiling. The Loan Modification documents were sent to Claimant on March 22, 2010 and received back executed on March 25, 2010. The loss mitigation file was closed out on April 16, 2010 after all documentation was completed and received, and the proper updates were made to the loan.   The Claimant's account remained current until servicing of the loan was transferred to Greentree.<br><br>Claimant's loan was part of the federal foreclosure review because her loan had a | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | foreclosure in process during the relevant period.  The Claimant received a $500 remediation payment as part of that review. | |
| 2449 | Jeffrey L. Collins & Laura L. Collins<br><br>2962 Jamaca Boulevard South Lake Havasu City, AZ 86406<br><br>$10,552.84<br><br>GMAC Mortgage, LLC | General No Liability | GMAC Mortgage Corporation DBA ditech.com originated the loan on December 18, 2000 and thereafter transferred its interest to Fannie Mae.  Debtor GMAC Mortgage LLC serviced the loan from December 18, 2000 until servicing transferred to GreenTree Servicing on February 1, 2013.<br><br>Claimants assert "mortgage payments were not applied to our loan" as basis for claim in box 2 of the proof of claim form and Claimants attach a monthly account statement dated May 18, 2010. Debtors mailed a letter to Claimants on June 21, 2013 requesting additional information regarding the claim; however, Debtors did not receive a response from Claimants.<br><br>Debtors have no liability to Claimants' assertion that mortgage payments were not applied to the loan because Claimants provide no specific information or proof of payments not being properly applied to the account. Debtors' servicing records show payments were applied to the account timely and appropriately. | 7-8 |
| 783 | Darryl Anderson<br><br>150 Mayland St Philadelphia, PA 19144 | General No Liability | Hart Mortgage Corp. originated the loan on June 8, 1995. Debtor GMAC Mortgage LLC serviced the loan from December 6, 1996 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimant asserts "contractor ran off with my money" as basis for claim in box 2 of | 7-8 |

12

ny-1214694

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | $10,000<br><br>GMAC Mortgage, LLC | | the proof of claim form and Claimant attached a handwritten statement which states "The above Harcum and Sons Harry Harcum ran off with $10,000 that was to rebuild my house from fire damage." The Claimant alleged that the contractor took the funds on March 7, 2005.<br><br>Debtors have no liability to Claimant regarding Claimant's contractor taking his funds without fulfilling work that was to be completed on the property because Debtors remitted funds to contractor that was set to do work. Per Claimant's request, any issues with the contractor would need to be handled by Claimant. Furthermore, any cause of action for breach of contract is six years and the statute of limitations for fraud or conversion is three years. See Mass. Gen. Laws ch. 260, section 2 (breach of contract) Mass. Gen. Laws ch. 260, section 2A (fraud and conversion). As a result, the relevant statute of limitations expired before the claim was filed. | |
| 3484 | Lynn C. Greene & James Cassidy<br><br>6526 Wauconda Dr. Larkspur, CO 80118<br><br>$28,800.00 | Escrow Issues | Clarion Mortgage Capital Inc. originated the loan on December 16, 2005. Non-Debtor GMAC Bank purchased the loan from Clarion and transferred its interest to Fannie Mae. Debtor GMAC Mortgage LLC serviced the loan from January 3, 2006 until the loan was paid off on March 31, 2011.<br><br>Claimants assert "Mortgage note" as basis for claim in box 2 of the proof of claim form. A letter attached to the proof of claims asserts "I originated a permanent mortgage with GMAC for our current home...Douglas County made improvements | 9-10 |

13

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | GMAC Mortgage USA Corporation | | in the infrastructure in our sub-division, financed them through a friendly short term lien against our subdivision filing, with declining payments, payable annually to our county assessor.  It was a special lien, with an annual payment of about $3,000.  All this was common knowledge at the time we entered into the "construction to perm" agreement with Castle Rock Bank and your loan broker. We made timely payments on the loan. GMAC, without research or contacting us first, during the height of the financial collapse, increased out payments by $1,200.00 PER MONTH because of this lien. During incredibly difficult times, we made all payments. We made constant contact trying to straighten this out. We got folks in India after being on hold forever, who would hang up on us. It took months, and pure luck  to find GMAC's escrow office number in the US, and to begin to solve the problem.  Before it could be resolved, GMAC's escrow people told me their hands were tied...They advised that we pay off the balance of the lien in order to get our monthly payment reduced. They also allege that GMAC had already paid the County 200% of the original lien amount, which was false....We borrowed more than $10,000 on a credit card and paid off the special lien at an interest rate 400% higher than the rate charged by the County.....I eventually, after GMAC was under federal supervision, did a HARP re-finance to get the payment down. However we lost money that was NEVER paid to the County by GMAC, and never rightfully owed by us to GMAC , during the long period of the $1,200 per month increase in our mortgage payment." No follow up letter was sent by Debtors. | |

14

ny-1214694

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Debtors have no liability for Claimants' allegations that Claimants' tax payments were improperly calculated because all payments disbursed for taxes and insurance were correctly applied. Pursuant to the deed of trust securing the Claimant's loan, "Borrower shall pay to Lender on the day Periodic Payments are due under the Note until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this security instrument as a lien or encumbrance on the property…" Per the Debtors' servicing notes, a special assessment payment (for "country club LID (bond)") was included with the county property tax, and the county taxing authority informed the Debtors that it could not be separated from the Claimant's regular property tax. As a result, the payment for the assessment was required to be escrowed. The county taxes were paid in two installments each year.<br><br>Per the origination documents, the initial escrow amount was calculated incorrectly at origination. The tax certificate from the time that loan was originated shows the special assessment installment, but the special assessment was not included on the HUD or the initial escrow statement. In addition, the figure for the remainder of the taxes for 2005 was only about half of the 2006 annual taxes, as the construction increased the assessment of the property. Thus, while $1,208.60 was held for taxes at closing to pay the taxes for the first | |

ny-1214694

| Claim No(s). | Name and Address Claim Amount Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | half of 2006 (according to the HUD-1), the county assessed $3,011.00 in taxes for the first half of 2006, which was disbursed on January 31, 2006 and added to the escrow on the account.  As a result, Claimants' escrow account was in arrears by $1,802.40 before she made her first mortgage payment, and because the monthly payment did not include the proper amount of escrow for taxes, the escrow portion of the payment was insufficient and the escrow arrearage increased with subsequent payments.  As a result, Debtors increased Claimants' payment to cover the actual taxes and reduce the arrearage, and therefore acted properly. Moreover, the error in calculating the escrow amount on this loan was made by the loan originator, not the Debtors in their capacity as loan servicer. | |
| 3777 | Louis Phillips 2338 Asbury Sq Atlanta, GA 30346-2429 $20,446.20 GMAC Mortgage, LLC | Origination Issues | Bayrock Mortgage Corporation originated the loan on November 21, 2006. The loan was subsequently securitized.  Debtor GMAC Mortgage LLC serviced the loan from February 26, 2007 until servicing transferred to Ocwen Loan Servicing on February 16, 2013.  Claimant asserts "Interest payments made over a 5yr/60 month period.  At 8% 11/2005-11/2011" as basis for claim in box 2 of the proof of claim form. Attached to the Proof of Claim is a copy of the Chapter 13 Trustee Final Report. A letter was mailed to Claimant on July 22, 2013 requesting additional information and a response was received on July 29, 2013 stating "the monetary claim sought are those paid into this interest only program, over a period of 60 months which resulted in no principal reduction on the loan. This loss of money paid into | 9 |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | GMAC/ResCap, prior to their filing Chapter 11 resulted in an additional principal balance of $42,000+ owed on the loan. While GMAC/ResCap, under Chapter 11 filing, cleared its losses, the homeowners affected by this should be compensated as well to some % of this resolution."<br><br>Debtor did not originate the loan. This loan was a second mortgage (the first lien was originated on the same day with the same company). The terms of the loan were an initial principal of $44,600.00, at 9.625% interest. Payments were to be interest only for the first five years, with principal and interest payments to begin with the January 1, 2012 payment. Thus, the amount Claimant alleges was improper is the amount that he agreed to when the mortgage was originated. Furthermore, because the mortgage was not originated by any of the Debtors, the Debtors cannot have any liability for improper terms of the loan from the date of origination. The Claimant has not alleged any wrongdoing by a Debtor entity.<br><br>In fact, the Debtors modified the loan on February 1, 2011, so that monthly payments would be applied to principal and interest. Per the Modification Agreement, the principal balance remained the same, but the interest rate was lowered to 8.000%, and payments of principal and interest began on March 1, 2011. | |

17

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Debtors modified the loan a second time on May 1, 2012. Per the payment history, the principal balance was not increased at that time. Per the Modification Agreement, the interest rate was lowered to 4.125%. | |
| 5649 | Dori Wojcik<br><br>20 Lake Ave<br>Barrington, RI 02806<br><br>$18,116.00<br>GMAC Mortgage, LLC | Wrongful Foreclosure; Loan Modification; General Servicing Issues | GMAC Mortgage Corporation originated the loan on April 30, 2003. The loan was subsequently transferred and securitized by a non-Debtor entity. Debtor GMAC Mortgage LLC serviced the loan from April 30, 2003 until servicing transferred to Ocwen Loan Servicing on February 16, 2013.<br><br>Claimant asserts "Mortgage/Note" as basis for claim in box 2 of the proof of claim form. A letter attached to the Proof of Claim asserts "I hold a mortgage with GMAC Mortgage Corp. My mortgage went into foreclosure without my knowledge due to GMAC taking my payments and putting them into an account listed as other [illegible] to my payments being sent for more than the mortgage amount. After 3 months of this I received a letter stating my home was in foreclosure for non payment because GMAC never paid the mortgage for the months and instead put the funds in this other account. As soon as I was finally aware of this I called GMAC they refused to transfer the funds from the other account to pay the 3mo of payments. The refused and claimed $4,000 was going to be paid to GMAC attorneys for foreclosure fees and legal documents. I immediately filed for loan modification and was rejected. They claim I made too much and would not factor in my indebtedness and they only calculate my earnings to qualify for Obama modification. In the meantime I was told to make | 8, 10-12 |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | all payments which I did until I was approved for a traditional modification, which only changed my mortgage by $1.06. They ruined my credit, they showed that during the time awaiting my modification approval that no payments were being made to my mortgage and I kept receiving delinquent notes that they stated to disregard that all payments were put into a modification fund and would be put on the loan when the modification was approved and all discrepancies removed from my credit. This never happened. Also the month that the modification was approved they told me to send in my regular payment and that was not going to be applied to the mortgage but to the modification admin fee which was 1556.00. This whole case should have never happened to me. I am 100 percent disabled veteran and GMAC took total advantage of me. When I was trying to everything right. This had impacted me emotionally, physically and financially. I am the sole provider of my family and I feel  GMAC damaged my credit and stole thousands from me. Because of there [sic] own mistakes on my account, I truly hope you can help. Saving a $1.06 on my mortgage 1) Cost me my credit rating 2) Caused me to fall behind on all my other bills due to paying for an attorney 3) Taken [sic] my mortgage payments and spending the funds on late fees, admin fees, and attorneys fees, administrative fees, etc.  What I lost: 3 months mortgage payments of 1556.00 each  1,500 for my own attorney whom got nowhere with GMAC;  7 months mortgage payments of 1556.00 into a modification fund account; 1556.00 for approved modification admin fee that reduced my payment by only $1.06. Estimated total $18,116.00." No follow up letter was sent by | |

19

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Debtors.<br><br>Claimant's assertion that some of her payments were misapplied is accurate; however, these errors were corrected and had no affect on the Claimant's delinquency and subsequent foreclosure referral. The Debtors' servicing notes show that the Claimant contacted Debtors on December 21, 2005 to advise that a mortgage payment that posted on November 9, 2005 in the amount of $1,554.14 was applied only to escrow when it should have been applied to both principal, interest, and escrow. It was reversed on December 22, 2005 and applied correctly as a regular payment.<br><br>Claimant again contacted Debtors on January 27, 2006 to alert them that the same error was made to the November 2005 payment, but that the December 2005 and January 2006 payments were correct. As a result, on February 2, 2006, Debtor reversed Claimant's January 12, 2006 payment, in the amount of $1,147.39, from escrow and applied it as a regular payment.<br><br>Debtors made another reversal of payment on October 16, 2006 in the amount of $1,354.01 because the Debtors had applied that payment as a regular payment when the Claimant wanted it to be applied to principal only. After the reversal, the Debtors applied funds as additional principal. | |

20

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Claimants made a payment dispute on January 24, 2007, stating that the payments have been misapplied. Research completed on February 22, 2007 showed that Debtors made an error to the October 16th reversal. The funds should not have gone to only principal, but should have been applied as a regular payment. As a result, the payment was corrected.  After the reversal, the account was due for the February 1, 2007 payment and the  Debtors also waived a $53.83 late fee charge from January 2007.<br><br>Claimant's delinquency began in 2008. Claimant paid the February 1, 2008 payment on March 11, 2008. The payments for March, April, May and June were also 30 days late. On July 15, 2008, Debtors returned a check in the amount of $1,856.52 due to insufficient funds.  This caused the loan to be over 60 days delinquent. Claimant continued to make monthly payments, however the delinquency remained. On March 25, 2009, Claimant contacted Debtors about a letter received stating she was two months behind. Claimant acknowledged being two months late in payments, as she had been out of work since December 2007. During the call, the Debtors discussed repayment plan options with the Claimant.<br><br>Debtors received a workout package on July 9, 2009, however  there were items missing (financial statement; hardship affidavit; hardship letter and income tax return).  A letter was sent to Claimant on August 14, 2009 informing her that the modification review had been closed because no complete workout package was | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | received. Debtors continued to follow up with Claimant to try to obtain the missing information. Claimant continued to make payments but remained delinquent.<br><br>Debtors sent Claimant a Breach Letter on January 5, 2010. At the time the loan was due for the November 1, 2009. Claimant sent in another workout package on January 6, 2010 but it was again missing information. An Options to Avoid Foreclosure was sent to Claimants on January 12, 2010. Debtors also sent a 10 Day Letter to obtain additional information for the loan modification review on January 15, 2010. The loan was referred to foreclosure on February 8, 2010. At the time of the referral, the loan was due for December 1, 2009, however a check in the amount of $1,856.00 was returned to the Claimants for insufficient funds on February 9, 2010, making the account due for November 2009.<br><br>Claimant sent in another incomplete work out package on February 26, 2010. That package was missing the Hardship Affidavit; Hardship Letter and signed tax return. That information was received on March 1, 2010. Claimant was denied for a HAMP Modification because the Debt to Income ratio was 21.171%, which was less than the 31% requirement, and showed that Claimant should be able to afford the monthly payments. A Traditional Modification review was pursued, and the foreclosure was postponed for 45 days for the review to be completed. A repayment plan had been set up on March 3, 2010, but was cancelled on March | |

ny-1214694

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | 9, 2010 after another check in the amount of $1,700.00 was returned for insufficient funds.<br><br>Claimant was denied the Traditional Modification on April 22, 2010. Per the Mortgage Insurance Guidelines, Claimant should have made at least six consecutive timely payments prior to the modification review. Claimant was set up on a Repayment Plan, with the intent to have the modification re-reviewed. Claimants were to make payments in the amount of $1677.40 for the months of May through November 2010. On May 4, 2010, the Debtors told the foreclosure attorneys to close the file, because of the repayment plan.<br><br>Debtors considered the repayment plan complete, and began the review for a permanent modification. The Permanent Modification was approved on December 8, 2010. Terms of the modification effective January 1, 2011 were:<br><br>• New Fixed Interest Rate 5.125% (Old 5.75%)<br>• New Unpaid Principal $168,120.28 (Old $162,586.90)<br>• New P&I Payment Amount $1054.55 (Old $1076.70)<br><br>Claimant was to make a contribution to the plan on January 1, 2011 in the amount of $1677.44. The new payments begin on February 1, 2011. The Escrow Shortage was spread over a 60 month payment. Claimant was reported current | |

ny-1214694

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | on January 14, 2011.<br><br>At the time of the servicing transfer to Ocwen Loan Servicing on February 16, 2013 the loan was current. | |
| 1937 | Rene & Joanne Evans<br><br>10941 Wingate Rd Jacksonville, FL 32218<br><br>$147,842.00<br><br>Residential Capital, LLC | Escrow Issues; General No Liability | GMAC Mortgage Corporation originated the loan on April 25, 2005 and thereafter transferred its interest to Freddie Mac. Debtor GMAC Mortgage LLC serviced the loan from April 25, 2005 until servicing transferred to Ocwen Loan Servicing on February 16, 2013.<br><br>Claimants assert "Excessive escrow shortages and PMI Insurance for black unreasonable – no cancellation" as basis for claim in box 2 of the proof of claim form. A letter attached to the Proof of Claim asserts "My claim is GMAC Mortgage – Residential Capital is excessive. Regarding PMI Insurance/Escrow Shortages." Claimants allege their escrow account was not properly managed.<br><br>Debtors' books and records show that Claimants' escrow account was properly managed. The first escrow analysis was performed on February 26, 2006. The escrow shortage at this time was $2,532.60. Per the escrow analysis and the payment history, the initial escrow disclosure statement did not include an amount for hazard insurance. Lender-placed insurance was paid in the amount of $3,852.00 on September 1, 2005. A refund was received by the Debtors on October 27, 2005 in the amount of $2,711.00, leaving $1,141.00 to be paid by | 7-8, 9-10 |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Claimants. Claimants' hazard insurance in the amount of $786.00 was paid by the Debtors on October 6, 2005. In addition, when the property taxes were disbursed on November 10, 2005, Borrower had made six payments and four months' taxes had been held at closing, leaving two months unpaid.<br><br>Per payment history and escrow statements, in subsequent years, the escrow shortages were due to increases in the insurance and taxes, and delinquencies in paying shortages from the prior year. Additionally, per the escrow statements, there were surpluses in the escrow in 2007 (in amount of $364.02) and 2008 (in the amount of $245.74), and Claimants received refunds in those years.<br><br>The requirements to waive PMI insurance at the times of Claimants' inquiries were:<br><br>• The ratio of the current loan balance to the property value in a current appraisal must be less than 80%<br>• Borrower must have 24 months of good payment history, defined as no payments more than 30 days delinquent in the prior 12 months and no payments more than 60 days delinquent in the prior 24 months.<br><br>At origination on April 25, 2005, the loan amount was $212,500 and the appraised value was $240,000 which is an LTV (loan-to-value) of 88.5%. Per servicing notes, | |

ny-1214694

| Claim No(s). | Name and Address / Claim Amount / Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Claimants requested that the PMI be waived on March 15, 2006, and this request was denied because there had not yet been 24 months of payment history. Claimants requested again that the PMI be waived on February 16, 2007, and paid for a Broker Price Opinion (BPO). The BPO gave a property value of $257,600, and the principal balance at that time was $208,036.78, for a LTV of 80.8%. Claimants were denied again for having less than 24 months of payment history. Claimants were denied a third time on October 26, 2007 as "not eligible" for PMI waiver. Per the payment history, the loan was more than 30 days delinquent on that date. The servicing notes do not reflect any further requests to remove the PMI. The payment history indicates that Claimants had not had the requisite 24 consecutive months of good payment history while the loan was being serviced by the Debtors. | |
| 5270 | William A. Corbell & Shirley A. Corbell<br><br>26060 Acero, Ste. 115 Mission Viejo, CA 92691<br><br>$14,104.79<br><br>GMAC Mortgage, LLC | Interest Rates and Fees; General No Liability | First Guaranty Financial Corporation originated the loan on July 19, 2004. The loan was subsequently transferred and securitized. Debtor GMAC Mortgage LLC serviced the loan from December 15, 2004 until servicing transferred to Ocwen Loan Servicing on February 16, 2013.<br><br>Claimants assert " overpayment on mortgage due to wrongfully frozen interest rate" as basis for claim in box 2 of the proof of claim form. A letter attached to the Proof of Claim asserts "Spreadsheet demonstrating Amount of overpayment of mortgage due to GMAC Mortgage, LLC's wrongful freeze of Borrowers/Creditors' interest rate." | 7-8, 11-12 |

ny-1214694

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Debtors have no liability against Claimants' assertion of improper rate freeze, as the decision was made by the Investor of the loan, not a Debtor.<br><br>Per the Claimants' note, the interest rate at origination was 6.125%. The note states that the interest rate may change on August 1, 2009, and may change every six months thereafter. The interest change was based on the LIBOR (London Interbank Offered Rate). The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs. This is called the Current Index. The new interest rate will be calculated by adding 3.875% to the Current Index.<br><br>In December of 2008, the Investor, IMPAC Funding, completed a Blanket Modification Campaign. Those loans that met certain criteria set by IMPAC Funding would receive a rate freeze. Debtors sent a letter to Claimants on December 12, 2008, that they were approved for a rate freeze. Effective December 1, 2008, the interest rate would remain at 6.125% for a period of five years. At the time of the Blanket Modification Campaign, the interest rate would have been 7.85%.<br><br>On March 3, 2009, Claimants contacted Debtors via telephone with regards to a payment change letter that was received. Advised that they had received a rate | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | freeze letter, and that the payment should not go up. Debtors explained that the payment change letter was sent for informational purposes. Claimants also inquired about refinancing at that time and the Debtors provided them with the phone number of the department that handles refinancing.<br><br>Claimants contacted Debtors again on December 29, 2009 to inquire why their loan interest rate has not reset.  Debtors explained about the Blanket Modification and rate freeze letter. Claimants asked for the loan terms to go back to what they were at origination, as well as a copy of the letter. Debtors sent a copy of letter, but also advised the Claimants that it may not be possible to change the terms of the loan back. Claimants did not contact Debtors again until October of 2011, when a Qualified Written Request was received. Debtors responded to that request on November 4, 2011. Debtors again explained the rate freeze by the Investor, and that the Claimants were made aware of it, as well as refinance options when the market turned. | |
| 3725 | DIEM TRANG NGUYEN<br><br>PO BOX 12139 Westminster, CA 92685<br><br>UNLIQUIDATED | Res Judicata and General No Liability | This claim was mistakenly included on the order entered on the Debtors' Fifty-First Objection to Claims (Books and Records Claims– Res Judicata and Wrong Debtor), entered on December 19, 2013.<br><br>Loan was originated by GMAC Mortgage Corporation dba ditech.com on July 17, 2006.  GMAC Mortgage transferred its interest to Fannie Mae.  GMAC Mortgage serviced the loan from origination until servicing was transferred to Nationstar | 7-8, 14 |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | Residential Capital, LLC | | Mortgage, LLC on December 1, 2008.<br><br>Claimant's proof of claim is based on two litigation cases.<br><br>Federal Case - Res Judicata:<br><br>Claimant filed litigation against Debtor GMAC Mortgage, LLC and other non-Debtors including Nationstar Mortgage, LLC and Fannie Mae, in the US District Court, Central District of California, Case No. 8:10-cv-01007-CJC-RNB. Originally filed in state court May 28, 2010, Debtors removed to USDC in July 2010 for federal question jurisdiction.  The District Court granted Debtor's motion to dismiss with prejudice on October 21, 2010.  In September 2011, Claimant moved to vacate the judgment, the District Court denied that motion by an order on October 6, 2011.  On October 11, 2011 Claimant filed a notice of appeal to the US Court of Appeals, Ninth Circuit, Case No. 11-56774 as to the denial of the motion to vacate the judgment.  That appeal has been stayed.<br><br>State Case - no liability:<br><br>Claimant filed litigation, a third amended complaint ("TAC"), against Debtor GMAC Mortgage, LLC and other non-Debtors including Nationstar Mortgage, LLC, Federal National Mortgage Association, MERS, et al., in the Superior Court of California, Orange County, Case No.  30-2010-00387297, on or about July 14, 2011.  Debtor filed a demurrer which was sustained without leave to amend on | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | January 5, 2012.  Claimant filed a notice of appeal on April 18, 2012 to the Fourth Appellate Division, Div. 3 Case No. G046818.  The appeal has been stayed.   The state court litigation alleged different facts from the Federal Case, in particular, Claimant allegations related to a HAMP loan modification.  No Debtor had any involvement in that agreement, which was after the loan was service released to Nationstar.<br><br>The TAC asserted the following claims against Debtor related to: (1) the foreclosure (wrongful foreclosure, quiet title, negligence, and declaratory relief) and (2) general allegations related to the deed of trust (promissory estoppel, breach of contract, slander of title, cancellation of instruments, negligent misrepresentation, breach of the covenant of good faith and fair dealing, fraud, and violation of Cal. Bus. & Profs. Code § 17200).<br><br>Debtor has no liability for any wrongful foreclosure claims,  because an unlawful detainer judgment was entered in favor of Fannie Mae on August 16, 2011.  Claimant filed a notice of appeal on August 29, 2011 (Orange County Superior Court Case No. 30-2011-00503545).  The judgment in favor of Fannie Mae was affirmed on April 27, 2012.  Fannie Mae filed an unlawful detainer action against Claimant on May 25, 2011 (Federal National Mortgage Association, Its Assignees and Successors v. Nguyen, Orange County Superior Court Case No. 30-2011-00478223-CL-UD-CJC).  According to the Orange County Superior Court's Register of Actions, trial was held on August 4, 2011.  Fannie Mae was awarded | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | possession of the property located at 4004 West 5th Street, No. 201, Santa Ana, CA 92703.<br><br>The unlawful detainer judgment in Fannie Mae's favor necessarily decided that the foreclosure sale was valid.  Therefore, any claims related to the foreclosure are barred.  In an unlawful detainer case following foreclosure, judgment for the plaintiff conclusively determines that the foreclosure sale was properly conducted and that title was lawfully transferred to the purchaser at the sale.  (Code Civ. Proc., § 1161a; Vella v. Hudgins (1977) 20 Cal.3d 251, 255-258; Malkoskie v. Option One Mortgage Corp. (2010) 188 Cal.App.4th 968, 973-976.)<br><br>Debtor has no liability for the remaining general claims related to the deed of trust because Claimant has either failed to properly plead any viable cause of action, the allegations are related to servicing or foreclosure conduct of non-Debtor defendants, or because the allegations relate to an alleged failure of Debtor to send Claimant notices regarding Nationstar's interest in the deed of trust.  The Claimant asserts eight causes of action that are not properly pled, including promissory estoppel, breach of contract, slander of title, fraud, negligent misrepresentation, cancellation of instruments, breach of the covenant of good faith and fair dealing, and violation of the California Business and Professions Code.<br><br>The Claimants promissory estoppel claim fails because Promissory estoppel | |

ny-1214694

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | requires "evidence that: (1) a clear and certain promise was made; (2) it was foreseeable that the promisee would rely on the promise; (3) a promisee reasonably relied on the promise; and (4) as a result, the promisee suffered a substantial detriment." (1 Miller & Starr, California Real Estate (3d ed.) § 1:52.) Here, the claimant is not mentioned in the claim, and therefore fails to allege that a clear and certain promise was made by GMACM.<br><br>Claimant's breach of contract claim fails because the alleged breach of the note/deed of trust is not alleged with specificity. Levy v. State Farm Mut. Auto. Ins. Co. (2007) 150 Cal.App.4th 1, 5-6; ("Facts alleging a breach, like all essential elements of a breach of contract cause of action, must be pleaded with specificity.") Similarly, Claimant's breach of the covenant of good faith and fair dealing claim fails because the implied covenant cannot impose substantive duties beyond those incorporated in the specified terms of the agreement, nor can it be stretched to prohibit a party from doing that which the agreement expressly permits. Carma Developers (Cal.), Inc., 2 Cal.4th at 374-75 Since the only allegation relates to GMACM's transfer of the deed of trust, something which the deed of trust expressly permits, this cause of action also fails.<br><br>The Claimant's slander of title claim is premised on the improper filing of notices that are required under California's non-judicial foreclosure laws. However, the filing of these notices is a privileged act under California Civil Code Section 47, and therefore is not actionable unless the Claimant alleges actual malice, which he | |

32

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | has not. Additionally, the Claimant's slander of title claim cannot succeed because there has been no tender of the amount owed, a condition precedent to asserting a slander of title claim or a quiet title claim. Nguyen v. Calhoun (2003) 105 Cal.App.4th 428, 439.<br><br>The Claimant's cancellation of instrument claim fails because it is premised on the allegation that GMACM is not permitted to transfer the deed of trust, however, such transfer is contemplated in the note and the deed of trust.<br><br>The Claimant fails to assert a cause of action for negligent misrepresentation because this cause of action requires a showing of a special duty to the Claimant, and the Debtors did not owe a special duty to the Claimant here. "As a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Nymark v. Heart Fed. Sav. & Loan Ass'n (1991) 231 Cal.App.3d 1089, 1095.see also Perlas v. GMAC Mortgage, LLC (2010) 187 Cal.App.4th 429, 43.<br><br>Claimant's fraud claim fails because it does not allege what misrepresentation was made, who made the misrepresentation, or when the alleged misrepresentation was made. The Claim also fails to allege that the alleged misrepresentation was intentional, that the Claimant relied on the alleged misrepresentation, or how the Claimant was damaged by the alleged | |

33

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | misrepresentation. As a result, the fraud claim is not sufficiently pled. <u>See Philipson & Simon v. Gulsvig</u> (2007) 154 Cal.App.4th 347, 363 (The elements of a cause of action for fraud consist of (a) misrepresentation, (b) knowledge of falsity, (c) intent to defraud or induce reliance, (d) justifiable reliance, and (e) resulting damage.) <u>Wilhelm v. Pray, Price, Williams & Russell</u> (1986) 186 Cal.App.3d 1324, 1331 (California law requires that "every element of the cause of action for fraud must be alleged in full, factually and specifically, and the policy of liberal construction of pleading will not usually be invoked to sustain a pleading that is defective in any material respect.")<br><br>Finally, the Claimant's claim for violation of the business and professions code fails because it is premised on the exact same conduct as the remaining causes of action, and because those causes of action fail, the claim for violation of the business and professions code must also fail. <u>Glenn K. Jackson Inc. v. Roe</u> (2001) 273 F.3d 1192, 1203 (dismissing UCL claim where underlying negligence and fraud claims were insufficient as a matter of law).<br><br>The Claimant's allegations that the Debtors failed to send notice of the transfer of the loan overlooks the terms of the judicially noticeable deed of trust which does not in fact require any such written notice. The deed of trust actually states that, "The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." | |

34

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| 4725 | Virginia Bragg and Gregory Bragg v Decision One Mortgage Company LLC GMAC Mortgage LLC The WV Mortgage Store Corp et al<br><br>1031 Quarrier St Ste 200 Charleston, WV 25301<br><br>$105,000.00<br><br>GMAC Mortgage, LLC | General No Liability | Loan was originated by Decision One Mortgage Company, LLC on November 4, 2004. Debtor Residential Funding Company purchased the loan from Decision One and transferred its interest when the loan was securitized on or about February 1, 2005 where US Bank, NA was appointed as trustee. Homecomings Financial serviced the loan from February 11, 2005 until servicing transferred to GMAC Mortgage on or about July 1, 2009. GMAC Mortgage serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimants attaches to their proof of claim litigation against GMAC Mortgage, and non-Debtors Decision One Mortgage, WV Mortgage Store Corp, Greta Anne and Frank Dearing and US Bank filed in the circuit court of Kanawha County, West Virginia, Case No. 11-C-2104 on November 28, 2011. The allegations in the complaint primarily relate to the origination of the loan. The causes of action are for: unconscionable inducement (against broker, lender and holder), breach of fiduciary duty (against broker), and for illegal fees (against Debtor as servicer). The litigation (and POC) also includes a Stipulation, signed by Claimants and filed on the same date, stating that Claimants damages, and all other relief being sought, does not exceed $75,000 and if awarded Claimants would not take in excess of $75,000. Debtor sent a request for additional information on June 21, 2013, but no response was received.<br><br>In the litigation, Debtor filed a Notice of Bankruptcy on May 17, 2012 that stayed the claims against GMAC Mortgage. On June 7, 2012, Claimants filed a Motion to | 7-8 |

35

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Amend Complaint to drop Debtor from the case and assert the servicing claims against US Bank as trustee of the loan.  On August 9, 2012, US Bank filed a motion for partial stay of the litigation based on the automatic stay of servicing claims originally pled against Debtor.   On November 28, 2012, the court entered an Order granting the motion for staying claims against US Bank related to monetary relief under the servicing cause of action.<br><br> The claim for illegal fees states that the servicer "in the course of attempting to collect on alleged claims from the Plaintiffs, routinely assessed illegal charges that are not authorized by agreement or law, in violation of WV Code 46A-2-127(g) and 128(c)."  And that Debtors "threatened to add fees and charges, in violation of WV Code 46A-2-127(g) and 124(f)."  These chapters deal with collection of attorneys fees and charges on the consumer's account by fraud, deceptive or misleading representations, or unfair or unconscionable means.  Debtors are unable to determine what alleged violations are the basis of Claimants' allegations.  However, Debtors reviewed its books and records and did not find any instance where attorneys fees were charged to the Claimants or where Debtor attempted to collect attorneys fees from the Claimants. | |
| 2111 | Renee Caciopoli vs. GMAC Mortgage LLC<br><br>Law Offices of Lawrence S. Dressler | Duplicate/Redundant | Claim No. 2111 is identical to surviving Claim No. 2107, except that Claim No. 2111 is filed by in the name of the Claimant and Claim No. 2107 is filed in the name of her attorney, Dressler Law Offices. | 15 |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | 516 Ellsworth Ave. New Haven, CT 06511<br><br>$60,000 General Unsecured<br><br>GMAC Mortgage, LLC | | | |

37

**Exhibit 2**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

---

**DECLARATION OF SARA LATHROP IN SUPPORT OF RESCAP**
**BORROWER CLAIMS TRUST'S NINETY-SECOND OMNIBUS**
**OBJECTION TO CLAIMS ((I) NO LIABILITY BORROWER**
**CLAIMS AND (II) ALLOWED IN FULL BORROWER CLAIM)**

I, Sara Lathrop, hereby declare as follows:

1.    I serve as Senior Claims Analyst for the ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] confirmed in the above-captioned Chapter 11 Cases.  During the Chapter 11 Cases, I served as Regulatory Compliance Manager and Loss Mitigation Manager in the loan servicing department of Residential Capital, LLC ("ResCap"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "Debtors").  I began my association with ResCap in June 2006 working as an associate in the Default Division of the loan servicing operation of GMAC Mortgage, LLC ("GMACM").  In 2008, I became a Default Quality Control Specialist, a position that I held until I became a Supervisor in the Default Division in 2009.  In 2011, I became a Supervisor in the Loss Mitigation Division of GMACM's loan servicing operation, and in February 2012, I became a Manager in that division.  In this role, I oversaw GMACM associates in their efforts to provide borrowers with loss mitigation options and

assisted in the development of GMACM's loss mitigation policies.  In January of 2013, I became

the Regulatory Compliance Manager for ResCap.  I became Senior Claims Analyst for ResCap

in July 2013 and continued in this role when the ResCap Liquidating Trust (the "<u>Liquidating</u>

<u>Trust</u>") was established in December 2013.  In my current position as Senior Claims Analyst to

the Borrower Trust, among my other duties, I continue to assist the Borrower Trust in connection

with the claims reconciliation process.[1]  I am authorized to submit this declaration (the

"<u>Declaration</u>") in support of the *ResCap Borrower Claims Trust's Ninety-Second Omnibus*

*Objection to Claims ((I) No Liability Borrower Claims and (II) Allowed in Full Borrower Claim)*

(the "<u>Objection</u>").[2]

2.      Except as otherwise indicated, all facts set forth in this Declaration are

based upon my personal knowledge of the Debtors' operations, information learned from my

review of relevant documents and information I have received through my discussions with other

former members of the Debtors' management or other former employees of the Debtors, the

Liquidating Trust, and the Borrower Trust's professionals and consultants.  If I were called upon

to testify, I could and would testify competently to the facts set forth in the Objection on that

basis.

3.      In my capacity as Senior Claims Analyst, I am intimately familiar with the

claims reconciliation process in these Chapter 11 Cases with regard to Borrower Claims.  Except

as otherwise indicated, all statements in this Declaration are based upon my familiarity with the

Debtors' books and records that were prepared and kept in the course of their regularly

---

[1] The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

[2] Defined terms used but not defined herein shall have the meanings ascribed to such terms as set forth in the Objection.

conducted business activities (the "Books and Records"), the Debtors' schedules of assets and

liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the

"Schedules"), my review and reconciliation of claims, and/or my review of relevant documents.

I or my designee at my direction have reviewed and analyzed the proof of claim forms and

supporting documentation, if any, filed by the claimants listed on Exhibit A annexed to the

Proposed Order.  Since the Plan became effective and the Borrower Trust was established, I,

along with members of the Liquidating Trust's management or employees of the Liquidating

Trust have consulted with the Borrower Trust to continue the claims reconciliation process,

analyze claims, and determine the appropriate treatment of the same.  In connection with such

review and analysis, where applicable, I or Liquidating Trust personnel, and the Liquidating

Trust's and the Borrower Trust's professional advisors have reviewed (i) information supplied or

verified by former personnel in departments within the Debtors' various business units, (ii) the

Debtors' books and records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (v) the

Claims Register maintained in the Debtors' Chapter 11 Cases.

### The No-Liability Borrower Claims

4.    The Liquidating Trust, in support of the Borrower Trust, diligently

evaluated any information provided by the claimants who filed the No Liability Borrower

Claims, listed on Exhibit A to the Proposed Order.  In accordance with the Borrower Claim

Procedures, the Debtors previously contacted those Borrowers who filed the No Liability

Borrower Claims if the claims were filed with insufficient or no supporting documentation, and

the Borrowers were asked to provide additional information so that the Debtors could reconcile

the claimants' filed claims with the Debtors' books and records.  Beginning in May of 2013, the

Debtors sent Request Letters, substantially in the form as those attached at Exhibit 4 to the

3

Objection, to substantially all of the Borrowers that filed the No Liability Borrower Claims requesting additional documentation in support of their respective claim.[3]  The Borrowers who received the Request Letters either failed to respond to the Debtors' requests or failed to provide sufficient information to establish a basis for liability.

5.       At my direction and with my oversight, the Liquidating Trust, in support of the Borrower Trust, and I thoroughly reviewed the No Liability Borrower Claims listed on <u>Exhibit A</u> to the Proposed Order, together with information contained within the Debtors' books and records.

6.       These efforts led to the conclusion that there is no present liability due and owing to such claimants and the specific objections to the allowance of such claims are set forth on <u>Exhibit A</u> to the Proposed Order in the column titled *"No Liability Summaries."*  The explanations for the requested disallowance of each claim set forth under the heading titled *"No Liability Summaries"* are incorporated by reference into this Declaration as if fully set forth herein.

7.       In general, the Borrower Trust's objection to each No Liability Borrower Claim falls under one or more of the following nine categories:

(i)       ***General No Liability.***  This category includes claims:

- asserting that a Debtor is responsible for liabilities of non-Debtor entities;
- fail to sufficiently allege the necessary elements for the stated cause of action; or
- that otherwise do not constitute a valid obligation of the Debtors (collectively, the "<u>General No Liability Claims</u>").

To assess the validity of this claim, the Borrower Trust reviewed the Debtors' books and records, including (a) the claimant's transaction history showing the payments the claimant has made and the Debtors' application of those payments to principal, interest, fees, and escrows, as applicable (the "<u>Loan Payment History</u>"), (b) the Debtors' records

---

[3] No Request Letter was sent to the holder of claim 5649 because there was sufficient information provided in the Proof of Claim to evaluate it.

4

tracking the history of the servicing of the claimant's loan, including but not limited to documenting instances of i) communication with the claimant, ii) letters and notices sent by the Debtors to the claimant, and iii) the Debtors' efforts to foreclose, conduct loss mitigation efforts, inspect properties, pay taxes and insurance on behalf of the claimant, and other standard servicing activity (collectively, the "Internal Servicing Notes"), and (c) other records as applicable.  See Objection at 7-8.  Based on its review, the Borrower Trust has determined that the Debtors are not liable for the General No Liability Claim. See id.

(ii)   ***General Servicing Issues.***  This category includes a claim based on general servicing issues, including assertions that a Debtor misapplied mortgage payments, provided incorrect information or reporting to the claimant, or that a Debtor mishandled the short sale of the claimant's property (the "General Servicing Issues Claim").  To assess the validity of this claim, the Borrower Trust reviewed Internal Servicing Notes, Loan Payment History, letters between the Debtors and the applicable Borrower(s), executed mortgage notes and deeds of trust, and other relevant documents.

Based on its review, the Borrower Trust has determined that the General Servicing Issues Claim is not valid obligations of the Debtors because: (a) the alleged events involving General Servicing Issues never took place; (b) the Debtor remedied the alleged error or mishandling, and as a result, the Claimant did not incur any damages or failed to provide evidence of damages; (c) the Debtor acted properly in servicing the loan, in accordance with the Debtors standard policies and procedures and the terms of the executed note and deed of trust; and/or (d) the allegations relate to actions taken by a non-Debtor entity. See Objection at 8.

(iii)   ***Origination Issues***.  This category includes a claim based on loan origination issues, which relates to disputes regarding the loan application and closing process, disclosures, or loan terms.  To assess the validity of this claim (the "Origination Issues Claim"), the Borrower Trust reviewed the Debtors' books and records, including the claimant's executed mortgage notes, to determine whether any Debtor was involved in the origination of the applicable loans, and if so, if the claim would be barred by the applicable statute of limitations.  See Declaration at 9.

5

Based on its review of the Debtors' books and records and its review of applicable state and federal law, the Borrower Trust determined that the Debtors are not liable for the Origination Issues Claim because no Debtor entity was involved in the origination of the applicable loans and vicarious liability cannot be imputed to any Debtor in its capacity as servicer or assignee of the loans.[4]

(iv)    ***Escrow Issues.*** This category includes claims based on the alleged improper application or calculation of escrow amounts (the "Escrow Issues Claims"). To assess the validity of these claims, the Borrower Trust examined the Debtors' books and records, including the Debtors' escrow receipts and payments, the annual escrow analysis sent to Borrowers and any Internal Servicing Notes and written communication between the Debtors and the applicable Borrower(s) as well as other documents that are specifically identified in the Objection. See Objection at 9-10.

Based on its review, the Borrower Trust determined that the Debtors are not liable for the Escrow Issues Claims. In cases where a claimant asserted that they were owed a refund, the Borrower Trust determined that the payments to the Debtors received were all correctly applied. In cases where a claimant asserted that the escrow collected was insufficient to cover the property taxes and insurance, the Borrower Trust reviewed the escrow statements issued to the claimant, which outlined the amounts paid that year compared to what was estimated, as well as Internal Servicing Notes to the extent that there was an escrow account added to the loan, and determined that they have no liability as long as all amounts received from the Borrower were accurately recorded because the Borrowers are liable for the taxes and insurance on their real property. In cases where a claimant asserted that it was owed a refund, the Borrower Trust looked at (1) the escrow statement issued to the claimant to determine if there was a refund due, (2) the history of the loan to determine if a check was issued for the refund and (3) the internal account notes to determine if there were discussions with the claimant regarding an escrow refund not being received, and found that any refunds due were previously paid. Moreover, to the extent that the Debtors' books and records indicated that the issues asserted by a claimant occurred after the Debtors ceased servicing the underlying loan, the Borrower Trust concluded that the Debtors had no liability for the claim.

(v)    ***Wrongful Foreclosure***. This category includes claims based, either directly or indirectly, on allegations of wrongful foreclosure by the Debtors (the "Wrongful Foreclosure Claims").

To assess the validity of these claims, the Liquidating Trust, in support of the Borrower Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, to verify that the Debtors foreclosed properly and, where applicable, took the appropriate loss mitigation steps. Specifically, the Borrower Trust reviewed Payment History, Internal Servicing

---

[4] As noted in Exhibit A, to the extent the claimant asserts statutory claims related to origination of the loan, the Borrower Trust reviewed the applicable federal and state statutes and determined that such claims against servicers or loan assignees carry no successor liability. To the extent claimant asserts common-law claims, the Borrower Trust found no case precedent establishing assignee liability when a party is not involved with the origination of the loan, and the claimant did not provide any specific legal authority to substantiate its allegation.

Notes, as well as, where applicable, the claimants' loan modification applications, loan modification approval letters, loan modification denial letters, compliance with loan modifications (trial and/or permanent), compliance with any other payment plans (forbearance and repayment), short sale applications and history, investor guidelines and/or direction, breach letters, and/or foreclosure related documents. Where a claimant asserted that he or she did not execute the mortgage note, the Borrower Trust also compared the signatures on other executed documents in the claimant's file, as well as examining the Loan Payment History and any other information in the Debtors' possession. Moreover, where a Wrongful Foreclosure Claim was based on issues related to a short sale, the Borrower Trust further reviewed the Debtors' records to determine whether a short sale approval had been requested, and, if so and if such request was denied, whether the reason for denial was proper.[5] See Objection at 10-11.

Based on this review, the Wrongful Foreclosure Claims are not valid liabilities of the Debtors.

(vi)    ***Interest Rates and Fees Collected***. This category includes claims based on the assertion that the interest rate charged to the claimants was inappropriate (the "Interest Rates and Fees Collected Claims"). To assess the validity of this claim, the Borrower Trust reviewed the Debtors' books and records, including the claimant's note, any adjustable rate rider and related documents, notices and/or adjustment letters sent to the claimants, Loan Payment History and fees charged. See Objection at 11-12.

Based on its review, the Borrower Trust has determined that the Debtors are not liable for the Interest Rates and Fees Collected Claims because the interest rate charged was consistent with the governing loan documents and the Debtors' servicing policies.

(vii)    ***Loan Modification***. This category includes claims based on loan modification issues (the "Loan Modification Claims"), which allege, among other things, that the Debtors (a) failed to provide a loan modification,[6] or (b) provided a loan modification, but the claimant believes the terms of the modification were not as favorable to the claimant as those to which claimant believed he or she was entitled. To assess the validity of these claims, the Liquidating Trust, in support of the Borrower Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, to verify that the Debtors followed the applicable investor guidelines and policies regarding loan modifications. Specifically, the Borrower Trust reviewed Internal Servicing Notes, Loan Payment History, and, where applicable, loan modification agreements, loan modification applications, loan modification denial

---

[5]    Appropriate reasons for denying a short sale request include, without limitation, a claimant's failure to submit executed sale contracts, a claimant's failure to obtain approval from second lien holders and/or a claimant's short sale request did not comply with the investor's requirements.

[6]    As a regular part of the Debtors' business practices, the Debtors offered mortgage loan modifications to Borrowers in financial distress, pursuant to certain guidelines established by the investors ("Traditional Modifications"). The Home Affordable Modification Program ("HAMP") is an administrative program that was implemented in April 2009 by the United States Treasury Department to help eligible homeowners with loan modifications on their home mortgage debt. HAMP provided the Debtors with an additional type of loan modification (a "HAMP Modification") for assisting eligible Borrowers experiencing financial distress.

7

letters, loan modification approval letters, the claimant's compliance with modifications (trial and/or permanent) and any instructions or guidelines provided by the investor for the claimant's loan. See Objection at 12-13.

Based on this review, the Loan Modification Claims are not valid liabilities of the Debtors because: (a) in cases where a loan modification request was denied, the Debtors complied with the applicable investor guidelines and policies governing the loan modification process and (b) in the cases where the claimant obtained a loan modification, the claimant was not damaged by the loan modification assistance provided.

(viii)    ***Judicial Estoppel and Standing.***    This category includes a claim (the "Judicial Estoppel Claim") that is barred from relief under the doctrine of judicial estoppel. With respect to the Judicial Estoppel Claim, the Borrower Trust examined the proof of claim in conjunction with public bankruptcy records and validated that:

> (a) the Claimant filed for individual bankruptcy protection and received a discharge,
> (b) the basis for claim comprising the Judicial Estoppel Claim involves assertions and alleged damages that occurred prior to Claimant's discharge,
> (c) the Claimant did not include the Judicial Estoppel Claim in the schedule of assets filed by Claimant in their first bankruptcy case, and
> (d) the Claimant never raised such claim in any other proceeding during their individual bankruptcy case (e.g., an adversary proceeding). See Objection at 13-14.

(ix)    ***Res Judicata.***    This category includes a claim related to litigation that has already been adjudicated (the "Res Judicata Claim"). The Borrower Trust diligently reviewed the case notes from the Debtors' internal electronic case management system and the Debtors' internal files, relating to the litigation, including relevant underlying documents such as the note, loan agreement and/or deed of trust (the "Litigation File"). The Debtors or the Liquidating Trust (on behalf of the Borrower Trust) as applicable, supplemented the Litigation File by reaching out to the outside counsel who previously handled the litigation for the Debtors to obtain a current update as to the status of the litigation, as well as copies of any relevant case dockets, complaints, answers, counterclaims, motions, responsive pleadings, judgments, orders, and any other relevant documents relating to the underlying litigation. The allegations set forth in the Res Judicata Claim was compared to the information contained in the Litigation Files (as supplemented with information provided by outside counsel), as well as the Debtors' Books and Records. See Objection at 14.

(x)    ***Redundant.***    This category includes a claim (the "Redundant Borrower Claim") that is identical to another claim filed on the Claims Register. The Borrower Trust believes that it was not the claimant's intention in asserting the Redundant Borrower Claim to seek a double recovery against the Debtors' estates. Instead, the filing of the Redundant Borrower Claim appears to be a function of the claimant filing an additional proof of

claim on account of the same obligation.  <u>See</u> Objection at 15.  Regardless of the claimant's reasons for filing the Redundant Borrower Claim, at most, only one claim against the Debtors' estates should potentially be allowed for the claimant.

8.      If the No Liability Borrower Claims are not disallowed and expunged, the parties asserting such claims may potentially receive an improper distribution on account of the asserted liabilities to the detriment of other Borrower claimants.

9.      Before filing this Objection, to the best of my knowledge, the Borrower Trust fully complied with all applicable provisions of the Borrower Claim Procedures set forth in the Procedures Order.

10.      Accordingly, based upon this review, and for the reasons set forth in the Objection and <u>Exhibit A</u> to the Proposed Order, I have determined that each No Liability Borrower Claim that is the subject of the Objection should be afforded the proposed treatment described in the Objection.

## The Allowed in Full Borrower Claim

11.      At my direction and with my oversight, the Liquidating Trust, in support of the Borrower Trust, and I reviewed the Allowed in Full Borrower Claim, together with information contained within the Debtors' books and records.  These efforts led to the conclusion that it should be allowed as a general unsecured claim against Debtor GMAC Mortgage, LLC in the filed claim amount of $22,600.00.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

9

Dated:  January 7, 2016

                 /s/ Sara Lathrop
                 Sara Lathrop
                 Senior Claims Analyst for ResCap
                 Borrower Claims Trust

10

**<u>Exhibit 3</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- )
                                                                 )
In re:                                                           )    Case No. 12-12020 (MG)
                                                                 )
RESIDENTIAL CAPITAL, LLC, et al.,                                )    Chapter 11
                                                                 )
                                        Debtors.                 )    Jointly Administered
                                                                 )
---------------------------------------------------------------- )

### DECLARATION OF NORMAN S. ROSENBAUM IN SUPPORT OF RESCAP BORROWER CLAIMS TRUST'S NINETY-SECOND OMNIBUS OBJECTION TO CLAIMS ((I) NO LIABILITY BORROWER CLAIMS AND (II) ALLOWED IN FULL BORROWER CLAIM)

Norman S. Rosenbaum, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury:

1.      I am a partner in the law firm of Morrison & Foerster LLP ("M&F").  M&F maintains offices for the practice of law, among other locations in the United States and worldwide, at 250 West 55th Street, New York, NY 10019.  I am an attorney duly admitted to practice before this Court and the courts of the State of New York.  By this Court's Order entered on July 16, 2012, M&F was retained as counsel to Residential Capital, LLC and its affiliated debtors (the "Debtors").  Following the Effective Date,[1] M&F has been retained as counsel to the ResCap Borrower Claims Trust (the "Trust").

2.      I submit this declaration in support of the Objection and in compliance with this Court's Order entered March 21, 2013, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1009, 3007 and 9019(b), approving (i) claim objection procedures; (ii) Borrower Claim procedures; (iii) settlement procedures; and (iv) schedule amendment

---

[1]      Unless otherwise indicated herein, capitalized terms shall have the meanings ascribed to them in the *ResCap Borrower Claims Trust's Ninety-Second Omnibus Objection to Claims ((I) No Liability Borrower Claims and (II) Allowed in Full Borrower Claim)* (the "Objection")

procedures [Docket No. 3294] (the "Claim Objection Procedures Order").

3.      It is my understanding that in connection with the filing of the Objection, prior to the Effective Date of the Plan, the Debtors complied with the Borrower Claim Procedures.  I have been advised by M&F attorneys under my supervision that, prior to the Plan's Effective Date, in accordance with the Claims Objection Procedures Order, the Debtors first reviewed a preliminary Borrower Claim List (as such term is defined in the Procedures Order), and then determined if such claims contradicted the information in the Debtors' books and records. Thereafter, the Debtors identified those claimants who should receive a Request Letter.

4.      To the best of my knowledge, the Debtors sent a Request Letter to those Borrowers that the Debtors and SilvermanAcampora LLP, Special Counsel to the Creditors' Committee, agreed should receive a Request Letter, with the Debtors providing copies of such letters to Special Counsel.  The Debtors sent a Request Letter to all but one Borrower that filed a No Liability Borrower Claim.[1]

5.      To the best of my knowledge, prior to the filing of the Objection, the Debtors and the Trust have fully complied with all other applicable terms of the Claim Objection Procedures Order.[2]

---

[1] A Request Letter was not sent to Joelle Horan, holder of claim number 1282.

[2] The Objection deviates from the Borrower Claim Procedures in that it is not supported by a declaration from Special Counsel.  As of the Effective Date of the Plan, the Creditors' Committee was dissolved (see Plan at Art.XIII.D.).  Because the Creditors' Committee was dissolved as of the Plan Effective Date (with the exception of certain limited duties provided for in the Plan), the Trust did not consult with Special Counsel prior to filing the Objection.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in New York, New York on January 7, 2016

/s/ Norman S. Rosenbaum
Norman S. Rosenbaum

3

## **Exhibit 4**

**Request Letters**

                    MORRISON | FOERSTER

June 21, 2013


**Claim Number: <mark>XXX</mark>**

Dear Claimant:

You are receiving this letter because you or someone on your behalf filed a Proof of Claim form in the jointly-administered chapter 11 bankruptcy cases of Residential Capital, LLC ("ResCap"), GMAC Mortgage, LLC and other affiliated debtors and debtors in possession (collectively, the "Debtors") pending before the United States Bankruptcy Court for the Southern District of New York, Case No. 12-12020 (MG) (the "ResCap bankruptcy case"), and we need additional information from you regarding the claim(s) ("claim") you are asserting against one or more of the Debtors.

**The Information we Need From You Regarding Your Proof of Claim**:
We reviewed a copy of the Proof of Claim form and documents, if any, that you filed in the ResCap bankruptcy case. A copy of your Proof of Claim form is enclosed for your reference. After reviewing the Proof of Claim form and any documents you submitted, we have determined that you did not provide sufficient information to support your "Basis for Claim" and we do not have sufficient information to understand the calculations you used to determine the amount you claim to be owed. In order to evaluate your claim, we need to understand the specific reasons as to why you believe you are owed money or are entitled to other relief from one or more of the Debtors. Please reply using the attached form and provide a written explanation, with supporting documentation, and include a detailed explanation of how you calculated the amount of your claim.

**You Must Respond to this Letter by no Later Than July 22, 2013**:
In accordance with the Order of the Bankruptcy Court (Docket No. 3294, filed March 21, 2013), you **must** respond to this letter by no later than July 22, 2013 with an explanation stating the legal and factual reasons why you believe you are owed money or are entitled to other relief from one or more of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases). You **must** provide copies of any and all documentation that you believe supports the basis for and amount of your claim. A form is included with this letter to assist you in responding to our request for additional information.

**Consequences of Failing to Respond**:
If you do not provide the requested information regarding the basis for and amount of your claim and the supporting documentation by July 22, 2013, the Debtors may file a formal objection to your Proof of Claim on one or more bases, including that you failed to provide sufficient information and documentation to support your claim. If the Debtors file such an objection and it is successful, your claim may be disallowed and permanently expunged. If your claim is disallowed and expunged, you will not receive any payment for your claim and any other requests you may have made for non-monetary relief in your Proof of Claim will be denied. Therefore, it is very important that you respond by the date stated above with the requested information and documentation supporting the basis for and amount of your claim.

**For Those With a Mortgage Loan Originated or Serviced by One of the Debtors**:

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the loan number and property address that the loan relates to in the information and any documentation that you send us, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

**Questions**:

If you have any questions about this letter, or need help in providing the requested information and document(s), you should contact an attorney. You may also contact the Special Counsel to the Official Committee of Unsecured Creditors[1] with general questions (contact information provided below):

**SPECIAL COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Telephone: 866-259-5217
Website: http://silvermanacampora.com
E-mail address: rescapborrower@silvermanacampora.com

**You must send the requested information and document(s) supporting your claim on or before the date provided in this letter to either;**

      **(i)**     **Claims.Management@gmacrescap.com**; or
      **(ii)**    **Residential Capital, LLC**
             **P.O. Box 385220**
             **Bloomington, Minnesota 55438**

**Please mark each document you send with the Claim Number referenced above.**

Sincerely,

Claims Management
Residential Capital, LLC

---

[1] Please be advised that SilvermanAcampora LLP does not represent you individually and, therefore, cannot provide you with legal advice.



MORRISON | FOERSTER

July 21, 2013

**Claim Number: <mark>XXX</mark>**

Dear Claimant:

You are receiving this letter because you or someone on your behalf filed a Proof of Claim form in the jointly-administered chapter 11 bankruptcy cases of Residential Capital, LLC ("ResCap"), GMAC Mortgage, LLC and other affiliated debtors and debtors in possession (collectively, the "Debtors") pending before the United States Bankruptcy Court for the Southern District of New York, Case No. 12-12020 (MG) (the "ResCap bankruptcy case"), and we need additional information from you regarding the claim(s) ("claim") you are asserting against one or more of the Debtors.

**The Information we Need From You Regarding Your Proof of Claim**:
We reviewed a copy of the Proof of Claim form and documents, if any, that you filed in the ResCap bankruptcy case.  A copy of your Proof of Claim form is enclosed for your reference.  After reviewing the Proof of Claim form and any documents you submitted, we have determined that you did not provide sufficient information regarding the claim amount.  In order to evaluate your claim, we need you to reply using the attached form and provide a specific explanation of how you calculated the amount of your claim and also provide sufficient documentation to support the amount you have claimed.

**You Must Respond to this Letter by no Later Than July 22, 2013**:
In accordance with the Order of the Bankruptcy Court (Docket No. 3294, filed March 21, 2013), you **must** respond to this letter by no later than July 22, 2013 with an explanation stating the legal and factual reasons why you believe you are owed money or are entitled to other relief from one or more of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases).  You **must** provide copies of any and all documentation that you believe supports the basis for and amount of your claim.   A form is included with this letter to assist you in responding to our request.

**Consequences of Failing to Respond**:
If you do not provide the requested information regarding the basis for and amount of your claim and the supporting documentation by July 22, 2013, the Debtors may file a formal objection to your Proof of Claim on one or more bases, including that you failed to provide sufficient information and documentation to support your claim. If the Debtors file such an objection and it is successful, your claim may be disallowed and permanently expunged.  If your claim is disallowed and expunged, you will not receive any payment for your claim and any other requests you may have made for non-monetary relief in your Proof of Claim will be denied.  Therefore, it is very important that you respond by the date stated above with the requested information and documentation supporting the basis for and amount of your claim.

**For Those With a Mortgage Loan Originated or Serviced by One of the Debtors:**

Residential Capital, LLC    P.O. Box 385220  Bloomington, Minnesota  55438

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the loan number and property address that the loan relates to in the information and any documentation that you send us, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

**Questions**:
If you have any questions about this letter, or need help in providing the requested information and document(s), you should contact an attorney. You may also contact the Special Counsel to the Official Committee of Unsecured Creditors[1] with general questions (contact information provided below):

**SPECIAL COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Telephone: 866-259-5217
Website: http://silvermanacampora.com
E-mail address: rescapborrower@silvermanacampora.com


**You must send the requested information and document(s) supporting your claim on or before the date provided in this letter to either;**

      **(i)**     **Claims.Management@gmacrescap.com**; or
      **(ii)**    **Residential Capital, LLC**
               **P.O. Box 385220**
               **Bloomington, Minnesota 55438**


**Please mark each document you send with the Claim Number referenced above.**



Sincerely,

Claims Management
Residential Capital, LLC

---

[1] Please be advised that SilvermanAcampora LLP does not represent you individually and, therefore, cannot provide you with legal advice.

 M O R R I S O N | F O E R S T E R

June 21, 2013

**Claim Number: <mark>XXX</mark>**

Dear Claimant:

You are receiving this letter because you or someone on your behalf filed a Proof of Claim form in the jointly-administered chapter 11 bankruptcy cases of Residential Capital, LLC ("ResCap"), GMAC Mortgage, LLC and other affiliated debtors and debtors in possession (collectively, the "Debtors") pending before the United States Bankruptcy Court for the Southern District of New York, Case No. 12-12020 (MG) (the "ResCap bankruptcy case"), and we need additional information from you regarding the claim(s) ("claim") you are asserting against the Debtors.

**The Information we Need From You Regarding Your Proof of Claim**:
We reviewed a copy of the Proof of Claim form and documents that you filed in the ResCap bankruptcy case.  A copy of your Proof of Claim form is enclosed for your reference.  According to our records, you have filed a lawsuit against one or more of the Debtors.  Please reply using the attached form and let us know whether the basis for and amount of the claim contained in the Proof of Claim form are the same as different in any way from the claim you have asserted in your lawsuit against the Debtors.  Please ensure that you provide specific detail and support as to the basis for and amount of claim referenced in your Proof of Claim.  If your lawsuit has been dismissed or withdrawn, please provide a specific explanation as to why you believe that you are still owed money or entitled to other relief from one or more of the Debtors.

**You Must Respond to this Letter by no Later Than July 22, 2013**:
In accordance with the Order of the Bankruptcy Court (Docket No. 3294, filed March 21, 2013), you **must** respond to this letter by no later than July 22, 2013 with the requested information and an explanation stating the legal and factual reasons why you believe you are owed money or are entitled to other relief from one or more of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases).  You **must** also provide copies of any and all documentation that you believe supports the basis for and amount of your claim.  A form is included with this letter to assist you in responding to our request for additional information.

**Consequences of Failing to Respond**:
If you do not provide the requested information regarding the basis for and amount of your claim and the supporting documentation by July 22, 2013, the Debtors may file a formal objection to your Proof of Claim on one or more bases, including that you failed to provide sufficient information and documentation to support your claim.  If the Debtors file such an objection and it is successful, your claim may be disallowed and permanently expunged.  If your claim is disallowed and expunged, you will not receive any payment for your claim and any other requests you may have made for non-monetary relief in your Proof of Claim will be denied.  Therefore, it is very important that you respond by the date stated above with the requested information and documentation supporting the basis for and amount of your claim.

**For Those With a Mortgage Loan Originated or Serviced by One of the Debtors**:
If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the loan number and property address that the loan relates to in the information and any documentation that you send us, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

**Questions**:
If you have any questions about this letter, or need help in providing the requested information and document(s), you should contact an attorney.  You may also contact the Special Counsel to the Official Committee of Unsecured Creditors[1] with general questions (contact information provided below):

**SPECIAL COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Telephone: 866-259-5217
Website: http://silvermanacampora.com
E-mail address: rescapborrower@silvermanacampora.com

**You must send the requested information and document(s) supporting your claim on or before the date provided in this letter to either;**

       (i)      **Claims.Management@gmacrescap.com; or**
      (ii)     **Residential Capital, LLC**
              **P.O. Box 385220**
              **Bloomington, Minnesota 55438**

**Please mark each document you send with the Claim Number referenced above.**

Sincerely,

Claims Management
Residential Capital, LLC

---

[1] Please be advised that SilvermanAcampora LLP does not represent you individually and, therefore, cannot provide you with legal advice.



**MORRISON | FOERSTER**

**Claim Number: XXXX**

Dear Claimant:

You are receiving this letter because you or someone on your behalf filed a Proof of Claim form in the jointly-administered chapter 11 bankruptcy cases of Residential Capital, LLC ("ResCap"), GMAC Mortgage, LLC, and other affiliated debtors and debtors in possession (collectively, the "Debtors"), pending before the United States Bankruptcy Court for the Southern District of New York, Case No. 12-12020 (MG) (the "ResCap bankruptcy case") and we need additional information from you regarding the claim(s) you are asserting against the Debtors.

**The Information we Need From You Regarding Your Proof of Claim**:
We received and reviewed a copy of the Proof of Claim form filed on your behalf, and noticed that it did not have any supporting documents attached to it.  In order to evaluate your claim, we need to specifically understand why you believe you are owed money or are entitled to other relief from one or more of the Debtors.  Although you may have stated the factual or legal basis for your claim on the first page of the Proof of Claim form, you have not provided any documentation to support this claim.  Therefore, we need you to provide us with documents that support the basis for your asserted claim.  A copy of your Proof of Claim form is enclosed for your reference.

**You Must Respond to this Letter by no Later Than June 24, 2013**:
In accordance with the Order of the Bankruptcy Court (Docket No. 3294, filed March 21, 2013), you **must** respond to this letter by no later than June 24, 2013 with an explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one or more of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases), and you **must** provide copies of any and all documentation that you believe supports the basis for your claim.   Included with this letter is a form to assist you in responding to our request.

**Consequences of Failing to Respond**:
If you do not provide the supporting documentation by June 24, 2013, the Debtors may file a formal objection to your Proof of Claim on one or more bases, including the basis that you failed to provide sufficient information and documentation to support your claim, and your claim may be disallowed and permanently expunged.  If your claim is disallowed and expunged, you will not receive any payment for your claim and any other requests you may have made for non-monetary relief in your Proof of Claim will be denied.  Therefore, it is very important that you respond by the date stated above with the requested information and documentation supporting the basis for your claim.

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the loan number and property address that the loan relates to in the information and documentation that you send us, so that we can effectively search our records for information on your property and loan, and evaluate your claim(s).

**Questions**:

If you have any questions about this letter, or need help in providing the requested information and document(s), you should contact an attorney.  You may also contact the Special Counsel to the Official Committee of Unsecured Creditors[1] with questions (contact information provided below):

**SPECIAL COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Telephone: 866-259-5217
Website: http://silvermanacampora.com
E-mail address: rescapborrower@silvermanacampora.com

**You must send the requested information and document(s) supporting your claim(s) on or before the date provided in this letter to either:**

      **(i)**     **Claims.Management@gmacrescap.com; or**
      **(ii)**     **Residential Capital, LLC**
              **P.O. Box 385220**
              **Bloomington, Minnesota 55438**

**Please mark each piece of correspondence with the Claim Number referenced above.**

Sincerely,

Claims Management
Residential Capital, LLC

---

[1] Please be advised that SilvermanAcampora LLP does not represent you individually, and therefore, cannot provide you with legal advice.

# ResCap

# MORRISON | FOERSTER

**Claim Number:**

Dear Claimant:

You are receiving this letter because you or someone on your behalf filed a Proof of Claim form in the jointly-administered chapter 11 bankruptcy cases of Residential Capital, LLC ("ResCap"), GMAC Mortgage, LLC and other affiliated debtors and debtors in possession (collectively, the "Debtors") pending before the United States Bankruptcy Court for the Southern District of New York, Case No. 12-12020 (MG) (the "ResCap bankruptcy case") and we need additional information from you regarding the claims you are asserting against the Debtors.

**The Information we Need From You Regarding Your Proof of Claim**:
We received and reviewed a copy of the Proof of Claim form and document(s), if any, that you filed in the ResCap bankruptcy case.  A copy of your Proof of Claim form is enclosed for your reference.  In the process of reviewing the Proof of Claim form and the document(s), if any, you submitted, we noticed that you left the "Basis for Claim" field on the Proof of Claim form blank, or indicated that the basis for your claim is "unknown".  In order to evaluate your claim, we need to understand why you believe you are owed money or are entitled to other relief from one of the Debtors.

**You Must Respond to this Letter by no Later Than June 17, 2013**:
In accordance with the Order of the Bankruptcy Court (Docket No. 3294, filed March 21, 2013), you **must** respond to this letter by no later than June 17, 2013 with an explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and, you **must** provide copies of any and all documentation that you believe supports the basis for your claim.   Included with this letter is a form to assist you in responding to our request.

**Consequences of Failing to Respond**:
If you do not provide the basis for your claim and the supporting documentation by June 17, 2013, the Debtors may file a formal objection to your Proof of Claim on, among others, the basis that you failed to provide sufficient information and documentation to support your claim, and your claim may be disallowed and permanently expunged.  If your claim is disallowed and expunged, you will not receive any payment for your claim and any other requests you may have made for non-monetary relief in your Proof of Claim will be denied.  Therefore, it is very important that you respond by the date stated above with the requested information and documentation supporting the basis for your claim.

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the loan number and property address that the loan relates to in the information and documentation that you send us, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

**Questions**:
If you have any questions about this letter, or need help in providing the requested information and document(s), you should contact an attorney. You may also contact the Special Counsel to the Official Committee of Unsecured Creditors[1] (contact information provided below):

**SPECIAL COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Telephone: 866-259-5217
Website: http://silvermanacampora.com
E-mail address: rescapborrower@silvermanacampora.com

**You must send the requested information and document(s) supporting your claim on or before the date provided in this letter to either;**

      (i)    **Claims.Management@gmacrescap.com, or**
      (ii)   **Residential Capital, LLC**
           **P.O. Box 385220**
           **Bloomington, Minnesota 55438**

**Please mark each piece of correspondence with the Claim Number referenced above.**

Sincerely,

Claims Management
Residential Capital, LLC

---

[1] Please be advised that SilvermanAcampora LLP does not represent you individually and, therefore, cannot provide you with legal advice.

**<u>Exhibit 5</u>**

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| DIEM T. NGUYEN,<br><br>          Plaintiff,<br><br>     vs.<br><br>NATIONSTAR MORTGAGE, GMAC MORTGAGE CORP. dba DITECH.COM, GMAC MORTGAGE CORPORATION, FANNIE MAE, and DOES 1 THROUGH 50, INCLUSIVE,<br><br>          Defendants. | Case No.: SACV 10-01007-CJC(RNBx)<br><br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS WITH PREJUDICE** |

## I.    Introduction & Background

Having read and considered the papers presented by the Defendants, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7–15.  Accordingly, the hearing set for October 25, 2010 at 1:30 p.m. is hereby vacated and off calendar.

Pro se Plaintiff Diem T. Nguyen initially filed suit against Defendants Nationstar Mortgage, LLC ("Nationstar"), GMAC Mortgage, LLC erroneously sued as GMAC Mortgage Corp. dba Ditech.com ("GMAC"), and Quality Loan Service Corporation alleging violations of state and federal law relating to Plaintiff's mortgage. The Court previously granted motions to dismiss filed by Nationstar and GMAC with leave to amend. *See* Dkt. # 9, 16. Plaintiff filed her First Amended Complaint ("FAC") on August 20, 2010. Dkt. # 18. Plaintiff's FAC did not name Quality Loan Service Corporation as a Defendant but did name Federal National Mortgage Association ("Fannie Mae") as a Defendant. Defendant GMAC now moves to dismiss Plaintiff's FAC for failure to state a claim. Defendants Nationstar and Fannie Mae have also collectively filed a motion to dismiss Plaintiff's FAC for failure to state a claim. For the following reasons, Defendants' motions are GRANTED WITH PREJUDICE.

## II.    Legal Standard

Local Rule 7-12 of the Central District of California addresses a party's failure to file required papers. It states:

> The Court may decline to consider any memorandum or other paper not filed within the deadline set by order or local rule. The failure to file any required paper, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion.

LOCAL RULE 7-12. Here, Plaintiff has failed to file an opposition to either motion to dismiss. The Court could grant Defendants' motions on this ground alone.

-2-

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Mayo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In keeping with this liberal pleading standard, the district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## III.    Analysis

Plaintiff alleges seventeen causes of action. Even accepting Plaintiff's factual allegations as true, each one fails to state a claim.

Plaintiff's first cause of action is for declaratory relief. FAC ¶¶ 21–23. Declaratory relief is, however, a remedy, not an independent cause of action, and all of Plaintiff's substantive claims fail. The Court therefore dismisses Plaintiff's first cause of action.

Plaintiff's second cause of action alleges Defendants breached the implied covenant of good faith and fair dealing by changing terms before the loan agreement was

Case 8:10-cv-01000-CJC-RNB    Document 25    Filed 01/21/11    Page 43 of 8    Page ID #:474

signed, withholding required disclosures, and "plac[ing] Plaintiff in a loan that would eventually subject[] her to further financial detriment." FAC ¶ 28. The allegations are insufficient because they concern Defendants' conduct prior to execution of the contract, are duplicative of Plaintiff's deficient statutory and breach of fiduciary duty claims, and otherwise fail to identify any conduct that could constitute a breach of the implied covenant.

Plaintiff's third cause of action alleges Defendants violated the Truth in Lending Act ("TILA") by failing to offer other loan products that might have been more advantageous to Plaintiff and "failing to provide Plaintiff with accurate material disclosures" in July 2006. FAC ¶ 32. Plaintiff's fifth through eleventh causes of action allege various violations of TILA's Regulation Z[1] (12 C.F.R. §§ 226.6(a)(1), 226.6(a)(3), 226.6(a)(4), 226.18(g), 226.23, 226.31(c)(1), and 226.34(a)(4)). TILA's statute of limitations for claims for money damages is one year from the alleged violation. 15 U.S.C. § 1640(e). Plaintiff's TILA claim for damages and "equitable restitution," FAC ¶¶ 35–36, is barred because Plaintiff filed suit in May 2010. TILA's provisions permitting a party to defensively seek recoupment or set-off in response to a foreclosure or debt collection action beyond this one year limit do not apply because Plaintiff initiated this independent action. *See Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 415 (1998). Similarly, Plaintiff's claim for TILA rescission, FAC ¶ 34, is untimely. "An obligor's right of recession shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first . . . ." 15 U.S.C. § 1635(f). And Plaintiff initiated this action more than three years after execution of the July 2006 loan agreement. Accordingly, the Court dismisses Plaintiff's TILA claims.

---

[1] Plaintiff's FAC erroneously labels these provisions as being part of California's Civil Code.

Relatedly, Plaintiff's twelfth cause of action contends that Plaintiff is "entitled to rescind the loan" based on Defendants' alleged wrongdoing.  FAC ¶ 64.  This appears to be a claim for rescission pursuant to California state law based on allegations in Plaintiff's eleventh cause of action.  California law requires plaintiffs to allege that they are willing to tender the loan proceeds or at least that they are able to tender "as a necessary part of a valid claim for rescission of a contract."  *Davenport v. Litton Loan Servicing, LP*, --- F. Supp. 2d ---, No. C 10–0679 RS, 2010 WL 3218592, at *11 (N.D. Cal. July 16, 2010) (citing cases).  Plaintiff's claim for rescission is dismissed because the FAC does not allege that Plaintiff is willing or able to tender.

Plaintiff's fourth cause of action alleging Defendants violated the Real Estate Settlement Procedures Act ("RESPA") is also time barred.  As an initial matter, it is unlikely that Plaintiff's RESPA claim provides adequate notice of the conduct Plaintiff alleges violates RESPA.  Specifically, the FAC makes no effort to explain which Defendants took what actions and cites only to the general RESPA provision 12 U.S.C. § 2601.  In addition, Plaintiff's precise theory as to how each Defendant violated RESPA is unclear.  On one hand, Plaintiff alleges that Defendants "fail[ed] to disclose that they [would] gain a financial benefit," FAC ¶ 39, which appears to be a 12 U.S.C. § 2605 claim.  But Plaintiff also discusses whether "total compensation . . . is reasonably related to the goods, facilities, or services furnished or performed" and alleges there was some disproportionality in the transactions, which may be an attempt to plead a 12 U.S.C. § 2607 kickback claim.  Either claim is time barred, however, because the applicable statute of limitations requires private plaintiffs to bring suit within three years of § 2605 violations and within one year of violations of § 2607 or § 2608.  12 U.S.C. § 2614. Plaintiff's RESPA claim is dismissed.

Plaintiff's thirteenth cause of action is for fraud.  There are several defects in Plaintiff's claim.  First, the three year statute of limitations for California fraud claims has

run.  *See* Cal. Civ. Proc. § 338(d).  Second, despite previously having the opportunity to

amend, Plaintiff's fraud claim is not pled with particularity as required by Federal Rule of

Civil Procedure 9(b).  *Swartz v. KPMG LLP,* 476 F.3d 756, 764–765 (9th Cir. 2007) (per

curiam) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants

together but 'require[s] plaintiffs to differentiate their allegations when suing more than

one defendant . . . and inform each defendant separately of the allegations surrounding

his alleged participation in the fraud.'" (quoting *Haskin v. R.J. Reynolds Tobacco Co.,*

995 F. Supp. 1437, 1439 (M.D. Fla.1998))).  The section of the FAC specifically raising

the fraud claim improperly lumps together the Defendants and fails to meet the

particularity requirement.  *See* FAC at 11 (heading for fraud cause of action specifies that

it applies "[a]gainst [a]ll Defendants").


        As to her specific allegations, Plaintiff asserts that Defendants intentionally

deceived Plaintiff using "bait and switch" tactics so that Plaintiff would enter a

detrimental loan agreement that benefited Defendants and harmed Plaintiff.  FAC ¶¶ 67–

68.  Although it is unclear what specifically Plaintiff is asserting was a bait and switch,

allegations elsewhere in the FAC suggest Plaintiff's claim is that she signed a rate

agreement to lock-in quoted rates and fees, but Defendants nevertheless increased the

fees and mortgage amount prior to the parties executing the loan agreement.  FAC ¶ 18.

Plaintiff asserts that she did not receive relevant forms, but admits that she "received a

call informing her the fees ha[d] been increase[d] a *few days before the signing date* of

July 17, 2006." *Id.* (emphasis added).  Justifiable reliance is an essential element of fraud

in California.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009).  Even

assuming the rate agreement contained a misrepresentation and the other elements of

fraud were satisfied, Plaintiff could not justifiably rely on that misrepresentation when

executing the final loan agreement because, by her own admission, Defendants had

already made her aware of the truth.

Plaintiff's fourteenth cause of action alleges unfair and deceptive business act practices ("UDAP").  FAC at 12.  While it is unclear what the statutory basis for this cause of action is, it is likely an attempt to allege a violation of § 17200 of California's Business and Professions Code ("UCL"), which prohibits unlawful, unfair, or fraudulent business acts or practices.  This cause of action is generally derivative of some other unlawful conduct or fraud committed by a defendant, and a plaintiff "must state with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619 (1993).  To the extent that Plaintiff's UCL claim is derivative of her other claims, it must fail because all of her other claims have failed.  If Plaintiff's UCL claim that Defendants' actions were unlawful, unfair, or fraudulent relies on a different theory, Plaintiff has failed to state that theory or its underlying allegations with sufficient particularity.  The Court dismisses Plaintiff's fourteenth cause of action.

Plaintiff's fifteenth cause of action alleges Defendants breached their fiduciary duty by "failing to advise [Plaintiff about] loan options that would be more practical for her," "fail[ing] to provide material disclosures to Plaintiff regarding the changes in the loan terms and conditions timely and properly," and failing to comply with TILA/RESPA.  FAC ¶¶ 74–76.  Plaintiff's claim fails as a matter of law because commercial lenders do not owe a fiduciary duty to borrowers.  *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1093 n.1 (1991).

Plaintiff's sixteenth cause of action alleges the loan agreement was entirely or in part unconscionable at the time the parties entered into it.  FAC ¶ 80.  Generally, unconscionability is only a defense to contract enforcement, not the basis for an affirmative cause of action.  *Jones v. Wells Fargo Bank*, 112 Cal. App. 4th 1527, 1539 (2003).  Even assuming there is a basis for Plaintiff's affirmative claim, *see California Grocers Ass'n v. Bank of America*, 22 Cal. App. 4th 205, 217–18 (1994), Plaintiff has

failed to plead facts that would support a finding of procedural or substantive unconscionability.  Indeed, Plaintiff failed to specifically cite even one provision of the loan agreement that Plaintiff contends the Court might find unconscionable.

Plaintiff's seventeenth cause of action alleges predatory lending in violation of UCL § 17200.  As explained, UCL § 17200 claims are primarily derivative and all of Plaintiff's allegations that Defendants acted unlawfully, fraudulently, or unfairly have been found deficient.  Accordingly, this claim also fails.

Finally, although equitable tolling, if applicable, might permit some of Plaintiff's untimely claims to go forward, Plaintiff failed to respond to the pending motions to dismiss and has raised no plausible entitlement to equitable tolling.  The Court is unpersuaded that it would be warranted in this case.

**IV.    Conclusion**

For the foregoing reasons, Defendants' motions to dismiss are GRANTED WITH PREJUDICE.

DATED:    October 21, 2010

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE