**Hearing Date: February 25, 2016 at 10:00 a.m. (Prevailing Eastern Time)**
**Response Deadline: February 1, 2016 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
James A. Newton

*Counsel for the ResCap Borrower Claims*
*Trust and the ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ----------------------------------------------------------------- ) | |
| In re: ) | Case No. 12-12020 (MG) |
| ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, ) | Chapter 11 |
| ) | |
| Debtors. ) | Jointly Administered |
| ----------------------------------------------------------------- ) | |

**RESCAP BORROWER CLAIMS TRUST AND**
**RESCAP LIQUIDATING TRUST'S JOINT OBJECTION**
**TO CLAIM NOS. 2535 AND 3577 FILED BY HAYOMYOM LLC**
<u>**AND SYGMUND ZYGELMAN, RESPECTIVELY**</u>

## TABLE OF CONTENTS

Page(s)

**PRELIMINARY STATEMENT** ................................................................ **2**

**JURISDICTION, VENUE, AND STATUTORY PREDICATE** ............................................... **3**

**BACKGROUND** ........................................................................... **4**

    A.    Overview ................................................................ 4

    B.    Claim Specific Background ................................................ 5

        1.    Origination of the Loan ........................................... 5

        2.    The Terms and Conditions of the Loan Documents ............................. 6

        3.    Collapse in the Jumbo Loan Market and GMAC Bank's Concern Regarding Conversion of the Loan ........................................ 8

        4.    Delays in Completion of Construction and Promises of a Sale ................ 8

        5.    GMAC Mortgage's Loss Mitigation Efforts ............................... 9

        6.    The State Court Action ........................................... 10

        7.    The Filing of the Proofs of Claim ................................... 12

**RELIEF REQUESTED** ..................................................................... **13**

**OBJECTION** ............................................................................. **13**

    A.    The Zygelman Claim Should be Disallowed and Expunged ..................... 14

        1.    Zygelman's Anticipatory Breach of Contract Claim Fails Because Zygelman Cannot Establish That He Suffered Any Damages ................ 14

        2.    GMAC Mortgage Also was Not Obligated to Make the Final Advance ...................................................... 16

        3.    Zygelman's Fraud Cause of Action Lacks Merit ......................... 19

        4.    Zygelman's Interference With Contract Claim is Disingenuous ............ 20

    B.    The Hayomyom Claim Should Also be Disallowed and Expunged ............... 21

        1.    No Contract Existed Between Hayomyom and GMAC Mortgage ......... 21

        2.    Hayomyom's Fraud Claim Also Fails .................................. 22

    C.    Neither Claimant is Entitled to Recover Attorneys' Fees .................. 23

    D.    Neither Claimant May Recover Punitive or Exemplary Damages ............. 25

**NOTICE** ................................................................................. **25**

**CONCLUSION** ........................................................................... **26**

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*3W s.a.m. tout bois v. Rocklin Forest Prods, Inc.*,
    No. 2:10-cv-01070-MCE-KJN, 2011 WL 489735 (E.D. Cal. Feb. 7, 2011)..............19, 20, 23

*Aguinaldo v. Ocwen Loan Servicing, LLC*,
    No. 5:12-cv-01393-EJD, 2012 WL 3835080 (N.D. Cal. Sept. 4, 2012)...........................19, 23

*Centr. Valley Gen. Hosp. v. Smith*,
    162 Cal. App. 4th 501 (2008) ......................................................................................14, 15

*Cohen v. Rothman*,
    127 So. 2d 143 (Fla. Dist. Ct. App. 1961) .............................................................................18

*Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*,
    No. 12 Civ. 6074 (RJS), 2013 WL 5549643 (S.D.N.Y. Sept. 26, 2013)...........................13, 14

*Cnty. of Solano v. Vallejo Redevelopment Agency*,
    75 Cal. App. 4th 1262 (1999) .................................................................................................15

*Daum v. Superior Court, Sutter County*,
    228 Cal. App. 2d 283 (1964) ..................................................................................................17

*Durell v. Sharp Healthcare*,
    183 Cal. App. 4th 1350 (2010) ...............................................................................................14

*Dyer Brothers Golden Western Iron Works v. Central Iron Works*,
    72 Cal. App. 202 (Cal. Ct. App. 1925) ..................................................................................18

*Ersa Grae Corp. v. Fluor Corp.*,
    1 Cal. App. 4th 613 (1991) .....................................................................................................15

*Henry v. Sharma*,
    154 Cal. App. 3d 665 (1984) ...........................................................................................15, 16

*Hernandez v. Friel*,
    No. G033331, 2005 WL 1501594 (Cal. Ct. App. June 24, 2005) ...........................................18

*Hosp. Mortg. Grp. v. First Prudential Dev. Corp.*,
    411 So. 2d 181 (Fla. 1982)......................................................................................................18

*Lazar v. Superior Court*,
    12 Cal. 4th 631 (1996) ......................................................................................................19, 23

*LiMandri v. Judkins*,
    52 Cal. App. 4th 326 (1997) ...................................................................................................21

*Mammoth Lakes Land Acquisition, LLC v. Town of Mammoth Lakes,*
191 Cal. App. 4th 435 (2011) ................................................................15

*Orlando v. Carolina Casualty Insurance Co.,*
No. CIV.F 07-0092 AWI SMS, 2007 WL 2155708 (E.D. Cal. July 26, 2007)......................17

*Pederson v. Kennedy,*
128 Cal. App. 3d 976 (1982) ................................................................24

*Sherman v. Novak (In re Reilly),*
245 B.R. 768 (B.A.P. 2d Cir. 2000), *aff'd,* 242 F.3d 367 (2d Cir. 2000) ...............................13

*Super Saver, Inc. v. Eastgate Assocs.,*
No. B135836, 2002 WL 475383 (Cal. Ct. App. Mar. 29, 2002) ...........................................15

*Taylor v. Johnston,*
15 Cal. 3d 130 (1975) ................................................................14

*Top Service Body Shop, Inc. v. Allstate Insurance Co.,*
283 Or. 201 (1978)................................................................21

*Tract 19051 Homeowners Association v. Kemp,*
343 P.3d 883 (Cal. 2015) ................................................................23

*Wilhelm v. Pray, Price, Williams & Russell,*
186 Cal. App. 3d 1324 (1986) ................................................................19, 23

## STATUTES

11 U.S.C. § 502(b) ................................................................21

11 U.S.C. § 502(b)(1) ................................................................13

Cal. Civ. Code § 1021................................................................23, 24

Cal. Civ. Code § 1550 ................................................................22

Cal. Civ. Code § 1565 ................................................................22

Cal. Civ. Code § 1717 ................................................................24, 25

## OTHER AUTHORITIES

Fed. R. Bankr. P. 7001(7) ................................................................21

Fed. R. Bankr. P. 7001(9) ................................................................21

**TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:**

The ResCap Liquidating Trust (the "Liquidating Trust") established pursuant to the terms of the chapter 11 plan (the "Plan") confirmed in the above-captioned bankruptcy cases (the "Chapter 11 Cases") [Docket No. 6065], as successor in interest to the above captioned debtors (collectively, the "Debtors") and the ResCap Borrower Claims Trust (the "Borrower Trust", and together with the Liquidating Trust, the "Trusts"), established pursuant to the terms of the Plan, as successor in interest to the Debtors with respect to Borrower Claims (as defined below), hereby submit this objection (the "Objection"), pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking to disallow and expunge, without leave to amend, (i) Proof of Claim No. 2535 filed by Hayomyom LLC (the "Hayomyom Claim")[1] against Debtor GMAC Mortgage, LLC ("GMAC Mortgage") in the amount of $537,500 and (ii) Proof of Claim No. 3577 filed by Sygmund Zygelman (the "Zygelman Claim"[2] and together with the Hayomyom Claim, the "Claims") against GMAC Mortgage in the amount of $1,500,000. The Trusts seek entry of an order substantially in the form attached hereto as Exhibit 1 (the "Proposed Order") granting the requested relief. In support of the Objection, the Trusts submit the declaration of Sara Lathrop, Senior Claims Analyst for the Borrower Trust (the "Lathrop Declaration"), attached hereto as Exhibit 2, and the Declaration of Yaron Shaham (the "Shaham Declaration"), attached hereto as Exhibit 3, and respectfully state as follows:

---

[1] A copy of the Hayomyom Claim is attached to the Lathrop Declaration (as defined below) as Exhibit A.
[2] A copy of the Zygelman Claim is attached to the Lathrop Declaration as Exhibit B.

## PRELIMINARY STATEMENT[3]

1.       Each of the Claims stems from GMAC Mortgage's contractual relationship with Zygelman under Loan Documents related to a loan to finance the purchase of real property in Carmichael, California and construct a Residence thereon.  As a result of the general economic downturn in 2008 and 2009 and the resulting disappearance of the secondary market for jumbo mortgage loans, GMAC Bank[4] was unable to convert the Loan to a traditional, jumbo loan at the end of the interest-only Construction Period.  At the same time, it became clear that Zygelman would not be able to afford the Property and that the Property would need to be sold.

2.       During late 2008 and 2009, Robbie Robertson, a GMAC Bank employee, and Zygelman continued to work toward completion of the construction of the Residence. Robertson agreed to assist Zygelman in his efforts to obtain permanent financing or sell the Property.  Robertson also agreed to extend, on three occasions, the Construction Completion Date in order to permit Zygelman to pursue a sale of the Property to Hayomyom, which Zygelman represented was in process.

3.       The relationship soured when Zygelman was unable to complete construction of the Residence despite repeated extensions of the Construction Completion Date, Zygelman failed to find replacement financing, and the sale of the Property apparently failed to materialize.

---

[3] Capitalized terms used in this Preliminary Statement shall have the definitions ascribed to such terms herein.

[4] As described below, the Loan was originated by GMAC Mortgage.  Although the Trusts believe that the Loan was owned and serviced by GMAC Bank at all times relevant to the Claims, there presently exists a lack of clarity on this issue.  The Trusts intend to develop the factual record with respect to this issue through discovery.

ny-1209527

4.      In July 2011, Hayomyom initiated the State Court Action in California

Superior Court alleging that Robertson, on behalf of GMAC Mortgage and GMAC Bank,

breached an agreement to reimburse Hayomyom from a construction advance of money

released to Zygelman for improvements to the Residence.  Hayomyom contended that it had

released its $37,500 down payment on the Property to Zygelman in reliance on a promise by

Robertson that these amounts would be reimbursed to Hayomyom from the next

construction advance.  Robertson—and GMAC Mortgage—deny any such agreement

existed or that Robertson ever even spoke to Hayomyom's principal, Steve Zipp.

5.      Having been dragged into the Hayomyom lawsuit as a defendant, Zygelman

filed a Cross-Complaint in the State Court Action alleging primarily that the Cross-

Defendants, including GMAC Mortgage and GMAC Bank, had breached the Loan

Commitment Letter by anticipatorily repudiating their obligation to convert the Loan, and

by failing to make the final construction advance.

6.      For the reasons set forth herein, the Trusts respectfully submit that the Claims

should be disallowed and expunged in their entirety.

## JURISDICTION, VENUE, AND STATUTORY PREDICATE

7.      This Court has jurisdiction over this Objection under 28 U.S.C. § 1334.  This

matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before this Court

under 28 U.S.C. §§ 1408 and 1409.

8.      The statutory predicates for the relief requested herein are section 502(b) of

the Bankruptcy Code and Bankruptcy Rule 3007(a).

3

## BACKGROUND

### A.    Overview

9.    On May 14, 2012, each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code.  These Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

10.    On May 16, 2012, the Court entered an order [Docket No. 96] appointing Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in these Chapter 11 Cases.  Among other things, KCC is authorized to (a) receive, maintain, and record and otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain the official claims register for the Debtors (the "Claims Register").

11.    On March 21, 2013, this Court entered an order approving procedures for the filing of objections to proofs of claim [Docket No. 3294] (the "Procedures Order").  The Procedures Order includes specific protections for Borrowers[5] and set forth a process for the Debtors to follow before objecting to certain categories of Borrower Claims (the "Borrower Claim Procedures").

12.    On December 11, 2013, the Court entered an *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* [Docket No. 6065] (the "Confirmation Order") approving the terms of the Plan.   The Plan provides for the creation and implementation of the Trusts.  On December 17, 2013, the Effective Date (as defined in the Plan) of the Plan occurred [Docket No. 6137].

---

[5] As used herein, the terms "Borrower" and "Borrower Claims" have the meanings ascribed to them in the Plan (defined below).

ny-1209527

B.      **Claim Specific Background**

1.      **Origination of the Loan**

13.     On or about January 23, 2008, Sygmund Zygelman ("Zygelman") executed a Fixed Rate Loan Commitment Letter (the "Loan Commitment Letter") outlining the terms and conditions upon which GMAC Mortgage would provide Zygelman with a loan under the One-Close Fixed Rate Construction/Permanent Mortgage Loan Program on certain terms outlined in the Loan Commitment Letter.[6]

14.     Thereafter, on or about February 29, 2008, Zygelman entered into a Construction Loan Agreement (the "Construction Loan Agreement") with GMAC Mortgage.[7] Pursuant to the terms of the Construction Loan Agreement, GMAC Mortgage agreed to lend Zygelman up to $1,190,000 (the "Loan") in connection with the acquisition and construction of a residence (the "Residence") located at 6225 Gobernadores Lane, Carmichael, CA 95608 (collectively such land and the Residence, the "Property").[8] Concurrently with his execution of and in accordance with the terms of the Construction Loan Agreement, Zygelman executed a Note in favor of GMAC Mortgage (the "Note") evidencing the Loan and a Deed of Trust (the "Deed of Trust" and, together with the Loan Commitment Letter, the Construction Loan Agreement, the Note, and each other document

---

[6] *See* Lathrop Declaration ¶ 5. A copy of the Loan Commitment Letter is attached to the Lathrop Declaration as Exhibit C.
[7] *See* Lathrop Declaration ¶ 6. A copy of the Construction Loan Agreement is attached to the Lathrop Declaration as Exhibit D.
[8] *See* Construction Loan Agreement § 2.1.

ny-1209527

evidencing the terms of the Loan and associated security interest, the "<u>Loan Documents</u>"),[9] securing his obligations under the Note.[10]

### 2.    The Terms and Conditions of the Loan Documents

15.    Together, the Loan Documents set forth the terms and conditions governing a construction loan to fund Zygelman's purchase of real property and construction of a Residence on the Property.  The Loan Documents required that construction of the Residence commence after the closing of the loan on February 29, 2008 and be completed no later than February 26, 2009 (such date, the "<u>Construction Completion Date</u>" and, such period, the "<u>Construction Period</u>").[11]

16.    Subject to conditions set forth in the Loan Documents, GMAC Mortgage agreed to make periodic "advance[s] pursuant to [a] Schedule of Draws for 'work in place only' for the purpose of financing the construction of the Residence" during the Construction Period.[12]  During the Construction Period, Zygelman agreed to pay on a monthly basis to GMAC Mortgage or its assignee, transferee or successor in interest an amount equal to the interest on the principal amount that had been advanced under the Loan.[13]

17.    Upon completion of construction and satisfaction of certain conditions, the Loan Documents provided for conversion of the Loan to an "Amortization Period," during

---

[9] *See* Lathrop Declaration ¶ 6.  Copies of the Note and Deed of Trust are attached to the Lathrop Declaration as <u>Exhibits E</u> and <u>F</u>, respectively.

[10] *See* Construction Loan Agreement §§ 3.1-3.2.

[11] *See* Construction Loan Agreement §§ 1, 7; Loan Commitment Letter § 8, Loan Preview; Note, Construction Rider §§ 1, 4; Deed of Trust, Construction Rider §§ 1, 4.

[12] *See* Construction Loan Agreement § 2.1 (describing periodic advances), §§ 8-10 (describing conditions precedent to advances); Loan Commitment Letter § 12; Note, Construction Rider § 1; Deed of Trust, Construction Rider § 1.

[13] *See* Loan Commitment Letter § 1.1, Loan Preview; Note, Construction Rider §§ 3, 5; Deed of Trust, Construction Rider §§ 3, 5.

6

which Zygelman would be obligated to make principal and interest payments throughout the remaining life of the Loan.[14] The Construction Loan Agreement and Loan Commitment Letter provided that GMAC Mortgage's obligations to make the final advance on the loan and convert the Loan to the Amortization Period were conditioned upon, among other requirements, GMAC Mortgage's receipt of (i) evidence satisfactory to GMAC Mortgage that the Residence had been completed in accordance with the plans and specifications therefor, and (ii) evidence that a certificate of occupancy (or final building inspection report) had been issued to Zygelman.[15]

18.    Upon the occurrence of an Event of Default under the Construction Loan Agreement, including a payment default, breach of any covenant (including Zygelman's covenant to complete construction by the Construction Completion Date), or a breach of any other Loan Document, GMAC Mortgage was entitled, at its option and among other remedies, to (i) cease making further advances, (ii) accelerate the maturity of the loan, (iii) invoke its rights under the Deed of Trust, and/or (iv) exercise any other right it had in law, equity or pursuant to statute.[16] Moreover, the occurrence of an Event of Default under

---

[14] *See* Loan Commitment Letter § 1.1 (payment obligations), § 1.7 & Loan Preview (Construction Interest Period and Amortization Period together represent the Total Loan Term), § 21 (conditions to conversion); Note § 3 (term of loan), Construction Rider § 3 (describing payments obligations before and after Conversion Date); Deed of Trust, Construction Rider § 3; *accord* Construction Loan Agreement § 1 (describing the Construction Interest Period and Conversion Date)

[15] *See* Construction Loan Agreement §§ 7.1, 10.1, 10.3; *accord* Loan Commitment Letter § 21 (requiring, among other conditions to conversion, that all terms and conditions set forth in the Construction Loan Agreement shall have been fulfilled); *see also* Note and Deed of Trust, Construction Riders § 1 (requiring GMAC Mortgage to lend up to $1.19 million only if Zygelman was not in default under, among other agreements, the Construction Loan Agreement).

[16] *See* Construction Loan Agreement § 12.1-12.2; *accord* Loan Commitment Letter § 1.7.

7

the Construction Loan Agreement absolved GMAC Mortgage of any obligation to convert the loan to the Amortization Period.[17]

19.    Each of the Loan Commitment Letter and the Construction Loan Agreement provided that completion of construction prior to the Construction Completion Date would be "of the essence" of the parties' agreement.[18]

### 3.    Collapse in the Jumbo Loan Market and GMAC Bank's Concern Regarding Conversion of the Loan

20.    Commencing sometime between September 2008 and November 2008, GMAC Bank (n/k/a Ally Bank) employee Robbie Robertson ("Robertson") informed Zygelman that, as a result of the collapse in the secondary market for jumbo mortgages, GMAC Bank was no longer underwriting jumbo loans and GMAC Bank would not be converting Zygelman's Loan to the Amortization Period.[19]  Robertson, however, offered to assist Zygelman in his search for alternative refinancing options.[20]

### 4.    Delays in Completion of Construction and Promises of a Sale

21.    As a result of delays in completing construction of the Property, Zygelman requested an extension of the Construction Completion Date.[21]  GMAC Bank agreed to

---

[17] *See* Loan Commitment Letter § 21.1(a); Construction Loan Agreement §10.4.

[18] *See* Construction Loan Agreement § 15.12 ("Time is hereby declared to be of the essence of this Agreement and of every part hereof."), § 7.1 (residence "shall be completed no later than the Construction Completion Date, which Construction Completion Date is of the essence of this Agreement"); Loan Commitment Letter § 8  ("The loan will provide that TIME IS OF THE ESSENCE . . . ."); *accord* Note, Construction Rider §§ 1, 4; Deed of Trust, Construction Rider §§ 1, 4.

[19] *See* Shaham Declaration, Exhibit B ("February 5 Email") (February 5, 2009 Email from Robertson to Zygelman referencing prior conversation on the topic); Exhibit A at 56:1-4 ("Robertson Depo. Tr.") ("Q: But you told him in that November or December 2008 conversation that GMAC would not be making the permanent loan to him. Correct?  A: Yes.)

[20] *See* February 5 Email ("I . . . will work with your chosen take out lender in assisting them with any property or loan payoff information they might need.").

[21] *See* Lathrop Declaration ¶ 7.

extensions of the Construction Completion Date on three separate occasions.[22]  By agreement dated as of March 6, 2009, the Construction Completion Date was extended from February 26, 2009 to April 30, 2009.[23]  Thereafter, by agreement dated as of April 30, 2009, the Construction Completion Date was further extended to June 15, 2009.[24]  Finally, by agreement dated July 8, 2009, and in response to representations from Zygelman that he had located a purchaser for the Property (which the Borrower Trust believes to have been Hayomyom),[25] GMAC Bank agreed to a further extension of the Construction Completion Date to August 15, 2009.[26]

22.    Nonetheless, Zygelman was unable to complete construction of the Property by the August 15, 2009 Construction Completion Date[27] as required under the Loan Commitment Letter, Construction Loan Agreement, Note and Deed of Trust.[28]

### 5.    GMAC Mortgage's Loss Mitigation Efforts

23.    At the time servicing of the Loan was transferred from GMAC Mortgage on or about February 15, 2013, GMAC Mortgage had not received any payments on the Loan account since at least April, 2010.[29]  Notwithstanding Zygelman's failure to comply with the Loan Documents, GMAC Mortgage offered on at least four occasions to consider

---

[22] *See* Lathrop Declaration ¶ 7.

[23] *See* Lathrop Declaration, <u>Exhibit G</u> (March 6, 2009 Loan Modification Agreement).

[24] *See* Lathrop Declaration, <u>Exhibit H</u> (April 30, 2009 Loan Modification Agreement).

[25] *See* Lathrop Declaration, <u>Exhibit I</u> (July 1, 2009 Email from Robertson to S. Young and Christin Atkins regarding final extension of Construction Completion Date).

[26] *See* Lathrop Declaration, <u>Exhibit J</u> (August 15, 2009 Loan Modification Agreement).

[27] *See* Robertson Depo. Tr. at 80:5-82:21.

[28] *See* Loan Commitment Letter § 1.8; Construction Loan Agreement at § 7.1 (Borrower covenant), § 12.1(e) (Event of Default); Note, Construction Rider at § 4; Deed of Trust, Construction Rider at § 4.

[29] *See* Lathrop Declaration ¶ 8.

9

Zygelman's loan for loss mitigation options upon receipt of information regarding his hardship.[30]  Zygelman failed to pursue GMAC Mortgage's offers.[31]

### 6.    The State Court Action

24.    On July 12, 2011, Hayomyom filed a complaint (the "Complaint"), initiating an action (the "State Court Action") in the Superior Court of California, County of Los Angeles (the "State Court") against GMAC Mortgage, GMAC Bank, Robertson and Zygelman, captioned *Hayomyom v. GMAC Mortg., LLC et. al.*, Case No. BC465215.[32]  The allegations in the Complaint, which form the sole basis for the Hayomyom Claim, asserted that Hayomyom entered into a Purchase Agreement and Joint Escrow Instruction (the "Purchase Agreement") with Zygelman in June 2009, pursuant to which Hayomyom agreed to purchase the Property for $1.25 million and, in connection therewith, to deposit $37,500 into escrow.[33]

25.    The Complaint further asserted that GMAC Mortgage and GMAC Bank were withholding construction funds, resulting in Zygelman having insufficient funds to complete construction as required in order to obtain the next advance under the Construction Loan Agreement.[34]  Hayomyom alleged that its member, Steve Zipp, spoke with Robertson and that Robertson agreed that if Hayomyom released the $37,500 down payment to Zygelman, Robertson would ensure that Hayomyom was reimbursed the $37,500 from the next advance

---

[30] *See* Lathrop Declaration, Exhibit K (October 19, 2012, October 25, 2012, November 26, 2012 and January 21, 2013 loss mitigation letters).
[31] *See* Lathrop Declaration ¶ 8.
[32] A copy of the Complaint is attached to the Hayomyom Claim.
[33] Complaint at 4.
[34] *Id.*

10

under the Construction Loan Agreement.[35]  Hayomyom contended that it released the

$37,500 held in escrow to Zygelman on June 26, 2009 in reliance on Robertson's

statement.[36]  Hayomyom further contended that, on July 13, 2009, contrary to the agreement

between Zipp and Robertson, Robertson released to Zygelman the entirety of the following

construction loan advance in the amount of $59,557.[37]

26.    On the basis of the allegations set forth in the Complaint, Hayomyom asserted

two causes of action against GMAC Mortgage, including (i) a breach of contract claim, and

(ii) a fraud claim, in each case stemming from Robertson's alleged oral statements.[38]  The

Hayomyom Claim asserts a claim in the amount of $537,500 based on the allegations

contained in the Complaint.

27.    On August 8, 2011, Zygelman filed a Cross-Complaint (the "Cross-

Complaint") in the State Court Action against GMAC Mortgage, GMAC Bank and

Robertson (collectively, the "Cross-Defendants").[39]  The Cross-Complaint asserted six

causes of action against the Cross-Defendants.  Cause of Action 1 alleged that the Cross-

Defendants breached the Loan Commitment Letter with Zygelman when Robertson

allegedly "unilaterally reneged on the bank's obligation to convert [Zygelman's]

construction loan to a conventional jumbo loan upon the completion of construction as per"

the Loan Commitment Letter.[40]  Causes of Action 2 and 3 asserted that the Cross-

Defendants breached the Loan Commitment Letter and committed fraud, respectively, by

---

[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] *Id.* at 3-9.  The Complaint also contained a cause of action for conversion against Zygelman.  Complaint at 10.
[39] A copy of the Cross-Complaint is attached to the Zygelman Claim.
[40] Cross-Complaint at 4-5.

11

failing in August 2009 to make the last construction advance of $11,000 to Zygelman.[41]

Cause of Action 4 asserted that the Cross-Defendants interfered with the Purchase

Agreement between Zygelman and Hayomyom as a result of Cross-Defendants' alleged

breach of their contract with Hayomyom as described in the Complaint.  In short, Zygelman

appears to assert that, among other things, the Cross-Defendants' payment of the entire July

13, 2009 construction advance **to Zygelman**, rather than paying $37,500 of that draw to

Hayomyom, gave rise to a claim for interference with a contractual relationship between

Zygelman and Hayomyom.[42]  Causes of Action 5 and 6 of the Cross-Complaint sought

declaratory relief and a preliminary and permanent injunction.[43]

28.    GMAC Mortgage and GMAC Bank filed answers to the Complaint and Cross-

Complaint on August 18, 2011 and November 21, 2011, respectively.[44]  On May 24, 2012,

GMAC Mortgage filed a Notice of Bankruptcy and Effect of Automatic Stay with the State

Court.[45]  The State Court entered an order (the "Stay Order") on May 30, 2012 staying the

State Court Action as to GMAC Mortgage.[46]  Pursuant to the Stay Order, the State Court

Action is currently stayed as to GMAC Mortgage.

### 7.    The Filing of the Proofs of Claim

29.    On November 6, 2012, Hayomyom filed the Hayomyom Claim.

30.    On November 8, 2012, Zygelman filed the Zygelman Claim.

---

[41] Cross-Complaint at 6-11.
[42] Cross-Complaint at 12-13.
[43] *Id.* at 14-15.
[44] *See Defendants GMAC Mortgage LLC, f/k/a GMAC Mortgage Corporation; and GMAC Bank's Answer to Complaint,* State Court Action (Aug. 18, 2011); *Cross-Defendants GMAC Mortgage LLC, f/k/a GMAC Mortgage Corporation; and GMAC Bank's Answer to Cross-Complaint*, State Court Action (Nov. 21, 2011).
[45] *See Notice of Bankruptcy and Effect of Automatic Stay as to Defendant and Cross Defendant GMAC Mortgage, LLC*, State Court Action (May 24, 2012).
[46] *Minute Order*, State Court Action (May 30, 2012).

ny-1209527

## RELIEF REQUESTED

31.    The Trusts file this Objection, pursuant to Bankruptcy Code section 502(b)
and Bankruptcy Rule 3007, seeking entry of the Proposed Order, disallowing the Claims in
their entirety with prejudice, and directing the expungement of the Claims from the Claims
Register.

## OBJECTION[47]

32.    Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a
claim may not be allowed to the extent that "such claim is unenforceable against the debtor
and property of the debtor, under any agreement or applicable law . . . ."  11 U.S.C.
§ 502(b)(1).

33.    "A properly executed and filed proof of claim constitutes prima facie
evidence of the validity of the claim . . . .  To overcome this prima facie evidence, the
objecting party must come forth with evidence which, if believed, would refute at least one
of the allegations essential to the claim."  *Sherman v. Novak (In re Reilly)*, 245 B.R. 768,
773 (B.A.P. 2d Cir. 2000) (citations omitted), *aff'd*, 242 F.3d 367 (2d Cir. 2000).  By
producing "evidence equal in force to the prima facie case," an objector can negate a
claim's presumptive legal validity, thereby shifting the burden back to the claimant to
"prove by a preponderance of the evidence that under applicable law the claim should be
allowed."  *Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*,

---

[47] The Trusts believe that during all relevant times, GMAC Bank was the owner and servicer of the Loan.  However, the Trusts currently lack sufficient information to definitively establish the ownership of the Loan during 2008 and 2009 and support a defense to the Claims on this basis.  The Trusts, however, intend to seek information through discovery regarding the ownership of the Loan during the relevant time periods and reserve the right to contend that GMAC Bank, and not any of the Debtors, was the owner and servicer of the Loan.  Notwithstanding the foregoing, this Objection assumes for the sake of argument that GMAC Mortgage was the owner of the Loan during some or all of the relevant time period.

ny-1209527

No. 12 Civ. 6074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (citation

omitted).

34.    Here, the Trusts dispute any and all liability asserted in the Complaint and the

Cross-Complaint and respectfully submit that each of the Claims should be disallowed and

expunged.

## A.    The Zygelman Claim Should be Disallowed and Expunged

### 1.    Zygelman's Anticipatory Breach of Contract Claim Fails Because Zygelman Cannot Establish That He Suffered Any Damages

35.    Zygelman's first cause of action alleges that the Cross-Defendants breached

the Loan Commitment Letter when, in November 2008, Robertson "unilaterally reneged on

the bank's obligation to convert [Zygelman's] construction loan to a conventional jumbo

loan upon completion of construction." Cross-Complaint at 4.  In other words, Zygelman

contends that GMAC Mortgage and GMAC Bank, through Robertson, breached the Loan

Commitment Letter by repudiation (*i.e.*, committed an anticipatory breach).

36.    "A cause of action for damages for breach of contract is comprised of the

following elements: (1) the contract, (2) plaintiff's performance or excuse for

nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Durell

v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010) (internal quotations and emphasis

omitted).  "An anticipatory breach of contract occurs when the contract is repudiated by the

promisor before the promisor's performance under the contract is due." *Cent. Valley Gen.

Hosp. v. Smith*, 162 Cal. App. 4th 501, 514 (2008) (citing *Taylor v. Johnston,* 15 Cal. 3d

130, 137 (1975)).  "[A] repudiation may be [either] express or implied.  An express

repudiation is a clear, positive, unequivocal refusal to perform; an implied repudiation

results from conduct where the promisor puts it out of his power to perform so as to make

14

substantial performance of his promise impossible." *Taylor v. Johnston,* 15 Cal. 3d at 137

(internal citations omitted).  For instance, "[a]nnexing an unwarranted condition to an offer

of performance is a refusal to perform." *See Mammoth Lakes Land Acquisition, LLC v.*

*Town of Mammoth Lakes*, 191 Cal. App. 4th 435, 467 (2011) (citing *Steelduct Co. v.*

*Henger-Seltzer Co.*, 26 Cal. 2d 634, 646 (1945)).

37.    The Borrower Trust does not contest that Robertson's affirmative statements

to Zygelman that the Loan would not be converted to the Amortization Period likely

constituted the type of "unequivocal refusal to perform" sufficient to support a cause of

action for an anticipatory breach of contract.

38.    However, under California law, the injured party asserting a claim for

anticipatory breach of contract must "prove that he would have been able to [perform]" his

return promise under the contract, "for otherwise he will fail in his proof of damages." *Ersa*

*Grae Corp. v. Fluor Corp.*, 1 Cal. App. 4th 613, 625 (1991) (emphasis omitted) ("Although

it is true that an anticipatory breach or repudiation of a contract by one party permits the

other party to sue for damages without performing or offering to perform its own

obligations (§ 1440), this does not mean damages can be recovered without evidence that,

but for the defendant's breach, the plaintiff would have had the ability to perform"); *see*

*also Cnty. of Solano v. Vallejo Redevelopment Agency*, 75 Cal. App. 4th 1262, 1276 (1999)

("However, in order to obtain damages in an action for anticipatory breach, the

nonbreaching party must prove that it had the ability to perform under the contract.").  The

nonbreaching party must "show he would have been able to perform '*at the time his*

*performance came due*.'"  *Super Saver, Inc. v. Eastgate Assocs.*, No. B135836, 2002 WL

475383, at *6 (Cal. Ct. App. Mar. 29, 2002) (emphasis in original) (citation omitted); *Henry*

15

*v. Sharma*, 154 Cal. App. 3d 665, 669 (1984) ("Where the action is based on the seller's anticipatory breach, the buyer must still show he was ready and able to perform his side of the bargain at the time his performance came due.").

39.    Section 21.1(a) of the Loan Commitment Letter provides that the obligation of GMAC Mortgage to convert the Loan to the Amortization Period was conditioned upon the fulfillment of all the terms and conditions set forth in the Construction Loan Agreement. The Construction Loan Agreement, in turn, required Zygelman to obtain a certificate of occupancy **and** complete construction of the Property prior to the Construction Completion Date.  Zygelman obtained a certificate of occupancy, but construction of the Residence was not completed by August 15, 2009.[48]  Additionally, Zygelman agreed in the Loan Commitment Letter to complete construction prior to the Construction Completion Date.[49] Zygelman has provided no evidence that he had the ability to fulfill the terms of the Loan Commitment Letter and Construction Loan Agreement at the time such obligations came due.  Therefore, Zygelman cannot support any showing of damages resulting from GMAC Mortgage's anticipatory breach—a necessary element of his breach of contract claim—and the Zygelman Claim should be disallowed to the extent it relies on this breach of contract theory.

### 2.    GMAC Mortgage Also was Not Obligated to Make the Final Advance

40.    Zygelman next contends that GMAC Mortgage breached the Loan Commitment Letter by failing to make the final $11,000 advance under the Construction Loan Agreement.  Zygelman contends that on or about August 15, 2009, he satisfied the

---

[48] *See* Robertson Depo. Tr. at 81:5-20-82:25.
[49] *See* Loan Commitment Letter § 1.8.

16

requirements for release of the final draw – namely, he contends that he completed

construction of the Residence and obtained the issuance of a certificate of occupancy.

However, as demonstrated above, the evidence shows that Zygelman did not complete

construction of the Residence by August 15, 2009, an obligation that was the essence of the

parties' agreement and a condition precedent to the release of the final advance.

41.    Both the Loan Commitment Letter and the Construction Loan Agreement

contained conditions precedent to each advance, as well as incremental conditions precedent

to the final advance.[50]  Among other requirements, these Loan Documents required that, as a

condition precedent to the final advance, Zygelman was required to obtain a certificate of

occupancy **and** complete construction of the Residence prior to the Construction

Completion Date.[51]  GMAC Mortgage does not dispute that Zygelman obtained a certificate

of occupancy.  However, Robertson testified in his deposition that construction was not

completed by August 15, 2009.[52]  Absent satisfaction of this condition precedent, GMAC

Mortgage was under no obligation to make the final advance on the loan.  *Orlando v.*

*Carolina Cas. Ins. Co.*, No. CIV.F 07-0092 AWI SMS, 2007 WL 2155708, at *5 (E.D. Cal.

July 26, 2007) ("Where contractual liability depends upon the satisfaction or performance of

one or more conditions precedent, the allegation of such satisfaction or performance is an

essential part of the cause of action." (citations omitted)); *Daum v. Superior Court, Sutter*

*Cty.*, 228 Cal. App. 2d 283, 287 (1964) ("A plaintiff, however, cannot enforce the

---

[50] *See* Loan Commitment Letter § 21; Construction Loan Agreement §§ 8-10 (describing conditions precedent to advances).
[51] *See* Loan Commitment Letter § 21.2(c)-(d); Construction Loan Agreement §§ 10.1 & 10.3.
[52] *See* Robertson Depo. Tr. at 81:5-82:25 (referencing an inspection by Granite Inspection Company that indicated that construction of the Property was not complete).

17

defendant's obligation unless the plaintiff has performed the conditions precedent imposed

upon him . . . ." (citations omitted)).

42.    Moreover, the conditions precedent in the Loan Commitment Letter and

Construction Loan Agreement were not eliminated as a result of any anticipatory breach of

contract by GMAC Mortgage.  *See e.g., Hernandez v. Friel*, No. G033331, 2005 WL

1501594, at *10 (Cal. Ct. App. June 24, 2005) ("While the positive repudiation of a contract

of sale by the vendor excuses the vendee from a formal tender of the price as a condition

precedent to an action for specific performance, it does not obviate the necessity of stating

in his complaint in such action that he is ready, able, and willing to pay the amount due.")

(citations omitted); *Hosp. Mortgage Grp. v. First Prudential Dev. Corp.*, 411 So. 2d 181,

183 (Fla. 1982) (holding that, in order to obtain damages for anticipatory breach, "the

nonbreaching party is required to plead and prove compliance with all conditions precedent

or the ability to comply if the performance has been excused by the repudiation.")  "[I]n no

case can a repudiation of a contract by one party be . . . a legal excuse for nonperformance

by the other party of conditions precedent, so as to authorize recovery as for performance of

such conditions precedent."  *Dyer Bros. Golden W. Iron Works v. Cent. Iron Works*, 72 Cal.

App. 202, 211 (Cal. Ct. App. 1925); *see also Cohen v. Rothman*, 127 So. 2d 143, 147 (Fla.

Dist. Ct. App. 1961) (same).

43.    Because the evidence clearly demonstrates that Zygleman did not comply

with the condition precedent requiring him to complete construction of the Residence by the

Construction Completion Date, GMAC Mortgage was not required to make the final

advance, and the second cause of action asserted in the Cross-Complaint also fails.

ny-1209527

### 3.    Zygelman's Fraud Cause of Action Lacks Merit

44.    Zygelman next contends that Robertson, on behalf of both GMAC Bank and

GMAC Mortgage, promised to make the final draw of $11,000 if Zygelman obtained a

certificate of occupancy and completed construction by August 15, 2009, but subsequently

failed to make the final draw despite Zygelman obtaining the certificate.

45.    The elements of a claim for fraud are "(a) misrepresentation (false

representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter");

(c) intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting

damage." *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996).  "[E]very element of the

cause of action [] must be alleged in full, factually and specifically . . . ." *Wilhelm v. Pray,

Price, Williams & Russell*, 186 Cal. App. 3d 1324, 1331 (1986).

46.    Zygelman's fraud claim is nothing more than a repackaged breach of contract

claim.  Under California law, "[b]roken promises may be actionable as a fraud, but the

plaintiff must allege with specificity that the promisor did not intend to perform at the time

the promise was made." *Aguinaldo v. Ocwen Loan Servicing, LLC*, No. 5:12-cv-01393-

EJD, 2012 WL 3835080, at *5 (N.D. Cal. Sept. 4, 2012).  Here, Zygelman makes

conclusory and unsubstantiated allegations that "[a]t the time [Robertson] made the

representation to [Zygelman] . . . in fact he had no intent to release said funds to

[Zygelman]."  *See* Cross-Complaint at 11.  Where plaintiffs do not *specifically show* why

they believe that a company or its employees did not intend to perform the alleged promise,

such allegations are insufficient to meet the heightened pleading standards.  *See Aguinaldo*,

2012 WL 3835080, at *5-6 (holding that conclusory statements that a loan servicer knew its

promise not to foreclose was not true and was made with an intent to deceive were

insufficient to support fraud claim); *3W s.a.m. tout bois v. Rocklin Forest Prods, Inc.*, No.

19

2:10-cv-01070-MCE-KJN, 2011 WL 489735, at *4 (E.D. Cal. Feb. 7, 2011) ("A conclusory

statement without specific facts pled to show why Plaintiff believed Defendant intended

never to pay for the goods does not satisfy the heightened pleading requirement.").  Because

Zygelman fails provide any factual support for his conclusory allegation that the Robertson

intended to deceive him, he has not met the heightened pleading standard for asserting a

fraud claim and the third cause of action asserted in the Cross-Complaint must be dismissed.

47.      Furthermore, GMAC Mortgage contests Zygelman's claim that Robertson's

statements constituted a misrepresentation.  As demonstrated above, the evidence clearly

shows that Zygleman did not comply with the conditions precedent required for the final

draw of $11,000.  The Loan Documents required Zygelman to complete construction of the

Residence **and** obtain a certificate of occupancy by August 15, 2009 as a condition to

obtaining the final advance.[53]  Zygelman obtained a certificate of occupancy, but

construction was not completed prior to August 15, 2009.  Moreover, Robertson testified in

his deposition that he never agreed to release the funds in the absence of Zygelman both

completing construction and obtaining a certificate of occupancy.[54]  Accordingly, Zygelman

has failed to allege a misrepresentation and the third cause of action asserted in the Cross-

Complaint fails for this reason as well.

### 4.      Zygelman's Interference With Contract Claim is Disingenuous

48.      Zygelman next contends that GMAC Mortgage tortuously interfered with his

contract with Hayomyom by paying the July 13, 2009 draw to Zygelman rather than

---

[53] *See* Construction Loan Agreement § 10.1, 10.3; *accord* Loan Commitment Letter § 21.2(c)-(d) (describing
conditions to conversion of the loan); Robertson Depo. Tr. at 81:5-82:25.
[54] *See* Robertson Depo. Tr. at 81:5-82:25 (referencing an inspection by Granite Inspection Company that
presumably indicated that construction of the Property was not complete).

ny-1209527

Hayomyom.[55]  Under California law, a plaintiff seeking to recover for alleged tortious interference "must allege the conduct constituting the interference was itself wrongful by some other measure beyond the fact it amounted to interference."  *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 342 (1997) (citing *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393 (1995)).  For the purposes of a claim for tortious interference, conduct may be wrongful "by reason of a statute or other regulation, or a recognized rule of common law, or perhaps an established standard of a trade or profession."  *Top Serv. Body Shop, Inc. v. Allstate Ins. Co.*, 283 Or. 201, 209-10 (1978).  Zygelman has not alleged that GMAC Mortgage's payment of the July 13, 2009 advance to himself rather than Hayomyom was "wrongful" under any recognized rule of law or established standard of a trade or profession.  Accordingly, Zygelman cannot maintain a claim for tortious interference against GMAC Mortgage.[56]

## B.    The Hayomyom Claim Should Also be Disallowed and Expunged

### 1.    No Contract Existed Between Hayomyom and GMAC Mortgage

49.    Hayomyom's first cause of action contends that GMAC Bank, GMAC Mortgage, and Robertson breached a contract with Hayomyom when they failed to disburse

---

[55] Although the Cross-Complaint references "interference with contract," the Borrower Trust believes that Zygelman was referring to a cause of action for tortious interference with contract, which is addressed herein.

[56] Zygelman's fifth and sixth causes of action request, respectively, (i) declaratory judgment that Cross-Defendants had a duty to extend a permanent mortgage loan to Zygelman and (ii) preliminary and injunctive relief enjoining the Cross-Defendants from pursuing any remedies associated with Zygelman's default under the Loan Documents.  *See* Cross-Complaint at 14-15.  Because this relief may not be sought through the claims resolution process, the Zygelman Claim should be disallowed to the extent it seeks injunctive or declaratory relief as well.  *See* 11 U.S.C. § 502(b) (in connection with allowing or disallowing proofs of claim, the Court "shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount . . . ."); Fed. R. Bankr. P. 7001(7) & (9) (requiring that requests for injunctive and declaratory relief, respectively, be sought through an adversary proceeding).

$37,500 from a July 13, 2009 construction draw under the Construction Loan Agreement.

However, no such contract existed.

50.    Creation of a contract under California law requires (1) parties able to

contract, (2) consent, (3) a lawful objective and (4) consideration.  *See* Cal. Civ. Code §

1550.  Hayomyom's contentions regarding the existence of a contract with one or more of

the Defendants are allegedly based solely on a conversation with Robertson, a GMAC Bank

employee.  However, in his deposition conducted in connection with the State Court Action,

Robertson testified that he never spoke with Steve Zipp, and denied having agreed to the

arrangement alleged in the Complaint.[57]  Without having ever spoken with Mr. Zipp,

Robertson could not have, on behalf of either GMAC Mortgage or GMAC Bank, created the

mutual consent "communicated by each to the other" that is required in order to establish a

contract under California law.  *See* Cal. Civ. Code § 1565.

### 2.    Hayomyom's Fraud Claim Also Fails

51.    Hayomyom contends that its member, Steve Zipp, engaged in a conversation

with Robertson wherein Robertson agreed that "if Plaintiff would allow $37,500 from its

escrow with Defendant Zygelman to be released . . . at the time of the next construction

draw due Defendant Zygelman, Defendants would withhold $37,500 from said draw and pay

over  that amount to [Hayomyom]."  Complaint at 7.  Hayomyom contends that

notwithstanding these representations, the next construction advance, on July 13, 2009, was

made directly to Zygelman.

---

[57] *See* Robertson Depo. Tr. at 115:15-19 (Robertson denying having ever had any conversations with Steve Zipp,
"that [Robertson] c[ould] verify"); 120:8-16 (Zipp would "[a]bsolutely" be mistaken if he recalled a conversation
with Robertson).

ny-1209527

52.     The elements of a claim for fraud are "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior Court*, 12 Cal. 4th at 638. "[E]very element of the cause of action [] must be alleged in full, factually and specifically . . . ." *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal. App. 3d at 1331.

53.     Hayomyom's fraud claim, like Zygelman's, is simply a repackaging of its breach of contract claim.  In fact, Hayomyom fails to allege in even a conclusory manner that Robertson had no intention of making the July 13, 2009 construction advance to Robertson at the time he allegedly agreed to do so.  For the reasons described above at paragraph 46, in the absence of specific allegations that at the time Robertson made this alleged promise he did not intend to perform, Hayomyom's fraud claim must fail.  *See Aguinaldo*, 2012 WL 3835080, at *5-6; *3W s.a.m. tout bois v. Rocklin Forest Prods, Inc.*, No. 2:10-cv-01070-MCE-KJN, 2011 WL 489735, at *4 (E.D. Cal. Feb. 7, 2011).

54.     Additionally, as described above, Robertson testified that he never made the alleged misrepresentations, and on the basis of this evidence, Hayomyom's fraud claim should also be disallowed.

**C.     Neither Claimant is Entitled to Recover Attorneys' Fees**

55.     Each of the Complaint and the Cross-Complaint also seek an award of attorneys' fees.  "California generally follows what is commonly referred to as the American Rule, which provides that each party to a lawsuit must ordinarily pay his or her own attorney fees." *Tract 19051 Homeowners Ass'n v. Kemp*, 343 P.3d 883, 886 (2015). This rule is codified in California Code of Civil Procedure 1021, which states that "[e]xcept as attorney's fees are specifically provided for by statute, the measure and mode of

ny-1209527

compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . ." Cal. Code Civ. P. § 1021.

56.    While section 1717 of the California Civil Code permits recovery by a contract counterparty under certain circumstances, an award of attorneys' fees is permissible only "where the contract specifically provides that attorneys' fees and costs, which are incurred to enforce that contract, shall be awarded . . . ."  Cal. Civ. Code § 1717.

57.    Even if Zygelman were able to succeed on his claims, he has provided no basis to support his entitlement to recover attorneys' fees.  The Cross-Complaint does not identify any statutory or contractual source for Zygelman's alleged right to recovery attorneys' fees.  No such agreement or statutory right exists.  Indeed, neither the Loan Commitment Letter nor the Construction Loan Agreement contains a provision providing for either party's recovery of attorneys' fees in connection with either party's breach of contract action and the Cross-Complaint does not suggest to the contrary.

58.    Moreover Zygelman would not be entitled to recover fees associated with any of his tort claims.  "Tort damages are governed by section 3333 of the Civil Code, which provides, in part, 'the measure of damages ... is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.' Although the broad language of section 3333 would seem to require an award of attorney's fees to make the wronged party whole, California follows the general American rule that fees are not recoverable."  *Pederson v. Kennedy*, 128 Cal. App. 3d 976, 978-79 (1982) (internal citations omitted).

59.    Hayomyom has similarly failed to support any entitlement to attorneys' fees were it able to prevail on its underlying claims.  Hayomyom has not identified any

contractual or statutory basis for recovery of attorneys' fees in connection with the causes of action asserted in the Complaint.

60.    In fact, the Complaint contains no allegations that attorneys' fees were ever discussed among the parties.  Consequently, California Civil Code section 1717 provides no basis upon which Hayomyom could be entitled to recovery attorneys' fees.  Moreover, for the same reasons described above, Hayomyom – like Zygelman – cannot recover attorneys' fees associated with his tort claims.

**D.    Neither Claimant May Recover Punitive or Exemplary Damages**

61.    As the Court has noted in the past in connection with Borrower Claims asserted against the Debtors, an award of punitive damages in this case would not punish GMAC Mortgage, but would merely reduce recoveries by other Borrowers with allowed claims.  *See Memorandum Opinion and Order Determining the Amount of Allowed Claim of Frank and Christina Reed*, *In re Residential Capital, LLC*, No. 12-12020 (Bankr. S.D.N.Y. Oct. 6, 2014), [Docket No. 7619]; *Order Sustaining in Part and Overruling in Part ResCap Borrower Claims Trust's Objection to Claim Number 2397 Filed by John Satterwhite*, *In re Residential Capital, LLC*, No. 12-12020 (Bankr. S.D.N.Y. Apr. 7, 2015) [Docket No. 8432]. For this reason, an award of punitive or other special damages is inappropriate in this case, and the Claims should be disallowed to the extent that they seek an award of punitive or exemplary damages.

## NOTICE

62.    The Trusts have provided notice of this Objection in accordance with the Case Management Order, approved by this Court on May 23, 2012 [Docket No. 141], and the Procedures Order.

ny-1209527

## CONCLUSION

WHEREFORE, the Trusts respectfully request entry of the Proposed Order,

substantially in the form attached hereto as <u>Exhibit 1</u>.


Dated: January 11, 2016
      New York, New York

<div style="margin-left:45%">

/s/ Jordan A. Wishnew
_____
Norman S. Rosenbaum
Jordan A. Wishnew
James A. Newton
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the ResCap Borrower Claims Trust
and the ResCap Liquidating Trust*

</div>

ny-1209527