## Exhibit 2

**Lathrop Declaration**

ny-1209527

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------
)
In re:                                              )          Case No. 12-12020 (MG)
                                                    )
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,            )          Chapter 11
                                                    )
                                 Debtors.           )          Jointly Administered
                                                    )
-------------------------------------------------------------------------

<u>**DECLARATION OF SARA LATHROP IN SUPPORT OF RESCAP
BORROWER CLAIMS TRUST AND RESCAP LIQUIDATING
TRUST'S JOINT OBJECTION TO CLAIM NOS. 2535 AND 3577 FILED BY
HAYOMYOM LLC AND SYGMUND ZYGELMAN, RESPECTIVELY**</u>

I, Sara Lathrop, hereby declare as follows:

1.        I serve as Senior Claims Analyst for the ResCap Borrower Claims Trust

(the "**Borrower Trust**"), established pursuant to the terms of the *Second Amended Joint Chapter*

*11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured*

*Creditors* [Docket No. 6030] confirmed in the above-captioned bankruptcy cases (the "**Chapter**

**11 Cases**") of Residential Capital, LLC ("**ResCap**"), a limited liability company organized under

the laws of the state of Delaware, and certain of its subsidiaries (collectively, the "**Debtors**").  In

such capacity, I am familiar with the Debtors' claims reconciliation process and the loan

servicing operation of GMAC Mortgage, LLC ("**GMAC Mortgage**").  I am over the age of 18

and authorized to submit this declaration (this "**Declaration**") in support of the joint objection

(the "**Objection**") of the Borrower Trust and the ResCap Liquidating Trust (the "**Liquidating**

**Trust**") to Proof of Claim No. 2535 filed by Hayomyom LLC ("**Hayomyom**") against GMAC

Mortgage (the "**Hayomyom Claim**")[1] and Proof of Claim No. 3577 filed by Sygmund Zygelman

---
[1] A copy of the Hayomyom Claim is attached hereto as **<u>Exhibit A</u>**.

("**Zygelman**") against GMAC Mortgage (the "**Zygelman Claim**" [2] and together with the Hayomyom Claim, the "**Claims**").

2.    I began my association with ResCap in June 2006 as an associate in the Default Division of the loan servicing operation of GMAC Mortgage.  In 2008, I became a Default Quality Control Specialist at GMAC Mortgage, a position that I held until I became a Supervisor in the Default Division in 2009.  In 2011, I became a Supervisor in the Loss Mitigation Division of GMAC Mortgage's loan servicing operation, and in February 2012, I became a Manager in that division.  In this role, I supervised GMAC Mortgage associates in their efforts to provide Borrowers[3] with loss mitigation options and assisted in the development of GMAC Mortgage's loss mitigation policies.  In January of 2013, I became the Regulatory Compliance Manager for ResCap.  I became Senior Claims Analyst for ResCap in July 2013 and continued in this role when the Liquidating Trust was established in December 2013. [4]  As noted above, my current position is Senior Claims Analyst for the Borrower Trust.

3.    Except as otherwise indicated, all facts set forth in this Declaration are based upon my familiarity with the Debtors' operations, the Debtors' books and records kept in the course of their regularly conducted business activities (the "**Books and Records**"), the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "**Schedules**"), my review and reconciliation of claims, information learned from my review of relevant documents, and information I have received through my discussions with other former members of the Debtors' management or other former

---

[2] A copy of the Zygelman Claim is attached hereto as **Exhibit B**.

[3] As used herein, the term "**Borrower**" has the meaning ascribed to it in the Plan.

[4] The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

ny-1215883

employees of the Debtors and the Liquidating Trust, and the Borrower Trust's professionals and

consultants.  If I were called upon to testify, I could and would testify competently to the facts

set forth in this Declaration on that basis.

4.    I or Liquidating Trust personnel have reviewed and analyzed the proof of

claim forms and supporting documentation filed by the Claimant.  Since the Plan went effective

and the Borrower Trust was established, I, along with members of the Liquidating Trust have

consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims,

and determine the appropriate treatment of the same.  In connection with such review and

analysis, where applicable, I or Liquidating Trust personnel, together with professional advisors,

have reviewed (i) information supplied or verified by former personnel in departments within the

Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed

proofs of claim, and/or (vi) the official claims register maintained in the Chapter 11 Cases.

5.    On or about January 23, 2008, Zygelman executed a Fixed Rate Loan

Commitment Letter (the "**Loan Commitment Letter**") outlining the terms and conditions upon

which GMAC Mortgage would provide Zygelman with a loan under the One-Close Fixed Rate

Construction/Permanent Mortgage Loan Program on certain terms outlined in the Loan

Commitment Letter.[5]

6.    Thereafter, on or about February 29, 2008, Zygelman entered into a

Construction Loan Agreement (the "**Construction Loan Agreement**") with GMAC Mortgage.[6]

Concurrently with his execution of and in accordance with the terms of the Construction Loan

Agreement, Zygelman executed a Note in favor of GMAC Mortgage (the "**Note**")[7] evidencing

---

[5] See Loan Commitment Letter, attached hereto as **Exhibit C**.
[6] See Construction Loan Agreement, attached hereto as **Exhibit D**.
[7] See Note, attached hereto as **Exhibit E**.

3

the Loan and a Deed of Trust (the "**Deed of Trust**"[8] and, together with the Loan Commitment Letter, the Construction Loan Agreement, the Note, and each other document evidencing the terms of the Loan and associated security interest, the "**Loan Documents**").

7.    Based on my review of the Books and Records, I understand that as a result of delays in completing construction of the Property, Zygelman requested an extension of the Construction Completion Date.  The Books and Records indicate that GMAC Bank agreed to extensions of the Construction Completion Date on three separate occasions.  By agreement dated as of March 6, 2009, the Construction Completion Date was extended from February 26, 2009 to April 30, 2009 (such modification, the "**March 6 Loan Modification**").[9]  Thereafter, by agreement dated as of April 30, 2009, the Construction Completion Date was further extended to June 15, 2009 (such modification, the "**April 30 Loan Modification**").[10]  Finally, the Books and Records indicate that in response to representations from Zygelman that he had located a purchaser for the Property,[11] GMAC Bank agreed to a further extension of the Construction Completion Date to August 15, 2009, as documented in an agreement dated July 8, 2009 (such modification, the "**July 8 Loan Modification**").[12]

8.    At the time servicing of the Loan was transferred from GMAC Mortgage on or about February 15, 2013, GMAC Mortgage had not received any payments on the Loan account since at least April, 2010.  GMAC Mortgage offered on at least four occasions to consider Zygelman's loan for loss mitigation options upon receipt of information regarding his hardship.[13]  Zygelman failed to pursue GMAC Mortgage's offers.

---

[8] See Deed of Trust, attached hereto as **Exhibit F**.
[9] See March 6 Loan Modification, attached hereto as **Exhibit G**.
[10] See April 30 Loan Modification, attached hereto as **Exhibit H**.
[11] See E-mail from Robbie Robertson to Susan Young and Christin Atkins (July 1, 2009, 12:46 PST), attached hereto as **Exhibit I**.
[12] See July 8 Loan Modification, attached hereto as **Exhibit J**.
[13] See Loss Mitigation Letters, attached hereto as **Exhibit K**.

4

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  January 11, 2016

/s/ Sara Lathrop
Sara Lathrop
Senior Claims Analyst for ResCap Borrower
Claims Trust

ny-1215883

## Exhibit A

Claim #2535  Date Filed: 11/6/2012

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT   Southern District of New York | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor:<br>RESIDENTIAL CAPITAL, LLC, et al. (GMAC Mortgage, LLC) | Case Number:<br>12-12020 (MG) |
|---|---|

**RECEIVED**

**NOV 0 6 2012**

**KURTZMAN CARSON CONSULTANTS**

COURT USE ONLY

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Hayomyom LLC

Name and address where notices should be sent:
Lloyd S. Mann/MANN & ZARPAS, LLP
15233 Ventura Blvd., Suite 714, Sherman Oaks, CA 91403

Telephone number: (818) 789-0510   email: Lmann@mannzarpas.com

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number:_____
(If known)

Filed on:_____

Name and address where payment should be sent (if different from above):
SAME AS ABOVE

Telephone number:   email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**   $                537,500.00

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Breach of contract and fraud. (see attached complaint)
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: | 3a. Debtor may have scheduled account as:<br><br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _<br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe:

Value of Property: $_____

Annual Interest Rate_____% ☐ Fixed or ☐ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:
$_____

Basis for perfection: _____

Amount of Secured Claim:   $_____

Amount Unsecured:   $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

Amount entitled to priority:
$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

12120321211060000000000021

Nov 02 12 02:54p    Zipp                                    323-933-3373                    p.3
11/02/2012  11:39   8187890518        MANN & ZARPAS, LLP                          PAGE  03

B 10 (Official Form 10) (12/11)                                                                    2

7. **Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. (See instruction #7, and the definition of "redacted".)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

**RECEIVED**

**NOV 0 6 2012**

If the documents are not available, please explain:

8. **Signature:** (See instruction #8)

**KURTZMAN CARSON CONSULTANTS**

Check the appropriate box.

☐ I am the creditor.   ☑ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor,   ☐ I am a guarantor, surety, indorser, or other codebtor.
                          (Attach copy of power of attorney, if any.)    or their authorized agent.                     (See Bankruptcy Rule 3005.)
                                                                (See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  Steve Zipp
Title:  Authorized Agent of Creditor
Company:  Havonvom LLC                                        X _____              11/02/2012
Address and telephone number (if different from notice address above):        (Signature)                                   (Date)
Los Angeles, CA 90045

Telephone number (213) 999-9918        email:

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 11 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

*Law Offices*
## MANN & ZARPAS, LLP

15233 VENTURA BOULEVARD, SUITE 714
SHERMAN OAKS, CALIFORNIA 91403

TELEPHONE:   (818) 789-0510

FACSIMILE:   (818) 789-0518

WWW.MANNZARPAS.COM

WRITER'S E-MAIL
lmann@mannzarpas.com

November 5, 2012

**VIA NORCO OVERNITE**

ResCap Claims Processing Center
c/o KCC
2335 Alaska Avenue
El Segundo, CA 90245

Re:    Residential Capital, LLC (GMAC Mortgage, LLC)-Proof of Claim

Gentlemen:

Enclosed herein please find the Proof of Claim being filed on behalf of Hayomyom, LLC.

Should you have any questions or comments regarding the above, please do not hesitate to contact me.

Very truly yours,

LAW OFFICES OF MANN & ZARPAS, LLP

LLOYD S. MANN

LSM:agg
Enclosure

**PLD-C-001**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>Scott Barbag (243421)<br>3580 Wilshire Boulevard, Suite 1260<br>Los Angeles, CA 90010 | FOR COURT USE ONLY |

TELEPHONE NO.: 213.210.3927   FAX NO. (Optional):

E-MAIL ADDRESS (Optional):

ATTORNEY FOR (Name): Hayomyom LLC

*[handwritten: 55 Malcolm & Mickey]*

*[handwritten: A6009 90046]*

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Los Angeles

STREET ADDRESS: 111 North Hill St.

MAILING ADDRESS: 111 North Hill St.

CITY AND ZIP CODE: Los Angeles 90012

BRANCH NAME: Stanley Mosk

PLAINTIFF: Hayomyom LLC,

DEFENDANT: GMAC Mortgage, LLC; f/k/a GMAC Mortgage Corporation,
GMAC Bank; Robbie Robertson; Sigmund Zygelman;

[✓] DOES 1 TO 10

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

**JUL 12 2011**

John A. Clarke, Executive Officer/Clerk
BY _____, Deputy
Rosena Juliano

**CONTRACT**

[✓] COMPLAINT    [ ] AMENDED COMPLAINT (Number):

[ ] CROSS-COMPLAINT    [ ] AMENDED CROSS-COMPLAINT (Number):

CASE NUMBER:

**BC465215**

Jurisdiction (check all that apply):
[ ] ACTION IS A LIMITED CIVIL CASE
   Amount demanded   [ ] does not exceed $10,000
                     [ ] exceeds $10,000 but does not exceed $25,000
[✓] ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)
[ ] ACTION IS RECLASSIFIED by this amended complaint or cross-complaint
   [ ] from limited to unlimited
   [ ] from unlimited to limited

1. Plaintiff* (name or names):
   Hayomyom LLC
   alleges causes of action against defendant* (name or names):
   GMAC Mortgage, LLC; f/k/a GMAC Mortgage Corporation, GMAC Bank; Robbie Robertson; and Sigmund Zygelman
2. This pleading, including attachments and exhibits, consists of the following number of pages:  10
3. a. Each plaintiff named above is a competent adult
      [ ] except plaintiff (name): Hayomyom LLC
         (1) [ ] a corporation qualified to do business in California
         (2) [✓] an unincorporated entity (describe): A California Limited Liability Company
         (3) [ ] other (specify):

   b. [ ] Plaintiff (name):
      a. [ ] has complied with the fictitious business name laws and is doing business under the fictitious name (specify):

      b. [ ] has complied with all licensing requirements as a licensed (specify):
   c. [ ] Information about additional plaintiffs who are not competent adults is shown in Attachment 3c.
4. a. Each defendant named above is a natural person
      [✓] except defendant (name): GMAC Mortgage,LLC   [ ] except defendant (name):  GMAC Bank
         (1) [ ] a business organization, form unknown      (1) [✓] a business organization, form unknown
         (2) [ ] a corporation                               (2) [ ] a corporation
         (3) [✓] an unincorporated entity (describe):        (3) [ ] an unincorporated entity (describe):
             A Limited Liability Company
         (4) [ ] a public entity (describe):                 (4) [ ] a public entity (describe):

         (5) [ ] other (specify):                            (5) [ ] other (specify):

   * If this form is used as a cross-complaint, plaintiff means cross-complainant and defendant means cross-defendant.

*[vertical text, right margin: CIT/CASE: BC465215 LEA/DEFR; RECEIPT #: CCH4772B0031; DATE PAID: 07/12/11 01:21:03; PAYMENT: $395.00; RECEIVED: CHECK; CASH; CHANGE; CARD; 395.00; 02; Page 1 of 2]*

| | |
|---|---|
| Form Approved for Optional Use<br>Judicial Council of California<br>PLD-C-001 [Rev. January 1, 2007] | **COMPLAINT—Contract** |

Code of Civil Procedure, § 425.12

PLD-C-001

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Hayomyom LLC v. GMAC Mortgage, LLC; et al., | |

4. *(Continued)*
   b. The true names of defendants sued as Does are unknown to plaintiff.
      (1) ☑ Doe defendants *(specify Doe numbers):* 1-10 _____ were the agents or employees of the named defendants and acted within the scope of that agency or employment.
      (2) ☐ Doe defendants *(specify Doe numbers):* _____ are persons whose capacities are unknown to plaintiff.
   c. ☐ Information about additional defendants who are not natural persons is contained in Attachment 4c.
   d. ☐ Defendants who are joined under Code of Civil Procedure section 382 are *(names):*

5. ☐ Plaintiff is required to comply with a claims statute, and
   a. ☐ has complied with applicable claims statutes, *or*
   b. ☐ is excused from complying because *(specify):*

6. ☐ This action is subject to ☐ Civil Code section 1812.10 ☐ Civil Code section 2984.4.

7. This court is the proper court because
   a. ☑ a defendant entered into the contract here.
   b. ☐ a defendant lived here when the contract was entered into.
   c. ☐ a defendant lives here now.
   d. ☐ the contract was to be performed here.
   e. ☐ a defendant is a corporation or unincorporated association and its principal place of business is here.
   f. ☐ real property that is the subject of this action is located here.
   g. ☐ other *(specify):*

8. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached):*

   ☑ Breach of Contract

   ☐ Common Counts

   ☑ Other *(specify):*
      Fraud, conversion

9. ☐ Other allegations:

10. Plaintiff prays for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
    a. ☑ damages of: $ 37,500.00
    b. ☑ interest on the damages
       (1) ☑ according to proof
       (2) ☐ at the rate of *(specify):* _____ percent per year from *(date):*
    c. ☑ attorney's fees
       (1) ☐ of: $
       (2) ☑ according to proof.
    d. ☑ other *(specify):*
       Punitive and exemplary damages in an amount according to proof at time of trial.

11. ☐ The paragraphs of this pleading alleged on information and belief are as follows *(specify paragraph numbers):*

Date: July 12, 2011

Scott Barbag
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

*(If you wish to verify this pleading, affix a verification.)*

PLD-C-001(1)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Hayomyom LLC v. GMAC Mortgage, et al., | |

FIRST _____    CAUSE OF ACTION—Breach of Contract
<u>(number)</u>

ATTACHMENT TO  [✓] Complaint  [ ] Cross - Complaint
*(Use a separate cause of action form for each cause of action.)*

BC-1.  Plaintiff *(name):*  **Hayomyom LLC**

alleges that on or about *(date):*  June 26, 2009
a  [ ] written  [✓] oral  [ ] other *(specify):*
agreement was made between *(name parties to agreement):*
**GMAC Mortgage, LLC; f/k/a GMAC Mortgage Corporation, GMAC Bank, Robbie Robertson**
[ ]  A copy of the agreement is attached as Exhibit A, or    and  DOES 1 - 5
[ ]  The essential terms of the agreement  [✓] are stated in Attachment BC-1  [ ] are as follows *(specify):*

BC-2.  On or about *(dates):*  Juy 13, 2009
defendant breached the agreement by  [✓] the acts specified in Attachment BC-2  [ ] the following acts
*(specify):*

BC-3.  Plaintiff has performed all obligations to defendant except those obligations plaintiff was prevented or
excused from performing.

BC-4.  Plaintiff suffered damages legally (proximately) caused by defendant's breach of the agreement
[✓] as stated in Attachment BC-4  [ ] as follows *(specify):*

BC-5.  [✓]  Plaintiff is entitled to attorney fees by an agreement or a statute
[ ]  of $
[✓]  according to proof.

BC-6.  [ ]  Other:

Page ____3____

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
PLD-C-001(1) [Rev. January 1, 2007]

CAUSE OF ACTION—Breach of Contract

Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

MC-025

| SHORT TITLE: Hayomyom LLC v. GMAC Mortgage, et al., | CASE NUMBER: |
|---|---|

**ATTACHMENT** *(Number):* BC-1

*(This Attachment may be used with any Judicial Council form.)*

On or about June 7, 2009 Plaintiff entered into a Residential Purchase Agreement and Joint Escrow Instructions with Defendant Sigmund Zygelman wherein Plaintiff agreed to purchase Defendant Zygelman's real property located at 6225 Gobernadores Lane, Carmichael, California for $1,250,000.00. As part of that agreement, Plaintiff was to deposit into escrow the sum of $37,500.00.

At or about said time and place Defendant Zygelman was negotiating an extension of his construction loan with Defendant GMAC Mortgage LLC and GMAC Bank.

Shortly after opening the above referenced escrow, Plaintiff was informed, and Plaintiff is informed and believed that Defendant Zygelman was informed by Robbie Robertson, the District Risk Manager for Defendant GMAC Mortgage LLC and GMAC Bank that said loan extension requested by Defendant Zygelman would not be considered unless Robbie Robertson was satisfied that Plaintiff was a bonafied purchaser, had the ability to close the escrow, and based on Defendant Zygelman finishing the construction of the residence and obtaining the Certificate of Occupancy by mid August 2009. At all times herein mentioned Plaintiff is informed and believes that Defendant Robbie Robertson was acting with the consent and authority to enter into agreements on behalf of Defendant GMAC Mortgage LLC and GMAC Bank.

As Defendant GMAC Mortgage LLC and GMAC Bank was withholding construction funds of Defendant Zygelman from his construction loan, and did not have the funds to complete the construction sufficient to obtain his next draw on his loan, Plaintiff by Steve Zipp, its member, engaged in a conversation with Robbie Robertson wherein it was agreed that if Plaintiff would release its down payment of $37,500.00 to Defendant Zygelman to use towards the completion of the premises, Robbie Robertson would see to it that Plaintiff would be reimbursed out of the next draw due Defendant Zygelman. Based upon that agreement, on or about June 26, 2009 Plaintiff released the $37,500.00 from escrow to Defendant Zygelman.

On or about July 13, 2009, contrary to the agreement entered into between Plaintiff and Defendants, Defendant Robbie Robertson released or caused to be released to Defendant Zygelman the sum of $59,557.00 which was the entire amount of the draw due Defendant Zygelman, without withholding and paying over to Plaintiff the sum of $37,500.00 as previously agreed.

Plaintiff did not become aware of this event until the first few days of August 2009 and immediately contacted Defendant Robbie Robertson to inquire why he had not withheld from the Zygelman loan and pay to him the $37,500.00 he had agreed to. Defendant Robbie Robertson refused at that time to discuss his prior promise with Plaintiff.

As a result of Defendants' breach of its agreement, Plaintiff was deprived of his $37,500.00, and to date is out this sum of money.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page __4__ of __10__

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California

**ATTACHMENT**

www.courtinfo.ca.gov

PLD-C-001(3)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Hayomyom LLC v. GMAC Mortgage, LLC; et al., | |

SECOND _____          **CAUSE OF ACTION—Fraud**
(number)

ATTACHMENT TO ☑ Complaint ☐ Cross-Complaint

*(Use a separate cause of action form for each cause of action.)*

FR- 1. Plaintiff *(name)*:  Hayomyom LLC

    alleges that defendant *(name)*:  GMAC Mortgage, LLC; f/k/a GMAC Mortgage Corporation, GMAC Bank,
                          Robbie Robertson and DOES 1-5
    on or about *(date)*:  June 26, 2009         defrauded plaintiff as follows:

FR-2. ☑  **Intentional or Negligent Misrepresentation**
    a. Defendant made representations of material fact    ☑  as stated in Attachment FR-2.a    ☐  as follows:

    b. These representations were in fact false. The truth was    ☑  as stated in Attachment FR-2.b    ☐  as follows:

    c. When defendant made the representations,
        ☑  defendant knew they were false, or
        ☐  defendant had no reasonable ground for believing the representations were true.

    d. Defendant made the representations with the intent to defraud and induce plaintiff to act as described
        in item FIR-5. At the time plaintiff acted, plaintiff did not know the representations were false and believed
        they were true. Plaintiff acted in justifiable reliance upon the truth of the representations.

FR-3. ☐  **Concealment**
    a. Defendant concealed or suppressed material facts    ☐  as stated in Attachment FR-3.a    ☐  as follows:

    b. Defendant concealed or suppressed material facts
        ☐  defendant was bound to disclose.
        ☐  by telling plaintiff other facts to mislead plaintiff and prevent plaintiff from discovering the concealed
           or suppressed facts.
    c. Defendant concealed or suppressed these facts with the intent to defraud and induce plaintiff to act
        as described in item IFIR-5. At the time plaintiff acted, plaintiff was unaware of the concealed or suppressed
        facts and would not have taken the action if plaintiff had known the facts.

                                              Page _____ 5

Form Approved for Optional Use
Judicial Council of California
PLD-C-001(3) [Rev. January 1, 2007]
                        **CAUSE OF ACTION—Fraud**            Code of Civil Procedure, § 425.12
                                                            www.courtinfo.ca.gov

PLD-C-001(3)

| SHORT TITLE:<br>Hayomyom LLC v. GMAC Mortgage, LLC; et al., | CASE NUMBER: |
|---|---|

SECOND                          **CAUSE OF ACTION—Fraud**
‾‾‾‾‾‾‾‾‾
(number)

FR-4. ☑ **Promise Without Intent to Perform**
   a. Defendant made a promise about a material matter without any intention of performing it ☑ as stated
      in Attachment FR-4.a ☐ as follows:




   b. Defendant's promise without any intention of performance was made with the intent to defraud and induce
      plaintiff to rely upon it and to act as described in item FR-5. At the time plaintiff acted, plaintiff was unaware of
      defendant's intention not to perform the promise. Plaintiff acted in justifiable reliance upon the promise.

FR-5. In justifiable reliance upon defendant's conduct, plaintiff was induced to act ☐ as stated in Attachment FR-5
   ☑ as follows:
   Based upon the representation of Defendant Robbie Robertson, on or about June 26, 2009 Plaintiff
   caused its $37,500.00 deposit in the escrow between Plaintiff and Defendant Zygelman to be
   released to Defendant Zygelman for the purpose of using said funds toward the completion of the
   real property being purchased by Plaintiff from Defendant Zygelman.




FR-6. Because of plaintiff's reliance upon defendant's conduct, plaintiff has been damaged ☐ as stated in
   Attachment FR- 6 ☑ as follows:
   Plaintiff has been deprived of the use and enjoyment of its funds, to wit $37,500.00




FIR - 7. Other:

PLD-C-001(3) [Rev. January 1, 2007]                **CAUSE OF ACTION—Fraud**                Page 2 of 2

MC-025

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Hayomyom LLC v. GMAC Mortgage, et al., | |

ATTACHMENT *(Number):* FR-2a

*(This Attachment may be used with any Judicial Council form.)*

On or about June 26, 2009 Defendant Robbie Robertson, on behalf of himself and Defendant GMAC
Mortgage, LLC; f/k/a GMAC Mortgage Corporation and GMAC Bank represented to Plaintiff that if Plaintiff
would allow $37,500.00 from its escrow with Defendant Zygelman to be released to Defendant Zygelman to
use said funds toward the completion of the premises Plaintiff was attempting to purchase from Defendant
Zygelman that, at the time of the next construction draw due Defendant Zygelman, Defendants would withhold
$37,500.00 from said draw and pay over that amount to Plaintiff to reimburse it for the funds advanced to
Defendant Zygelman.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this
Attachment are made under penalty of perjury.)*

Page __7__ of __10__

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California

**ATTACHMENT**

www.courtinfo.ca.gov

MC-025

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Hayomyom LLC v. GMAC Mortgage, et al., | |

**ATTACHMENT** (Number): FR-2b

*(This Attachment may be used with any Judicial Council form.)*

This statement made by Robbie Robertson was in fact false. On or about July 13, 2009 Defendants and each of them caused to be released to Defendant Zygelman the sum of $59,557.00 which represented the full amount of Defendant Zygelman's next construction draw from its loan with Defendants, the $37,500.00 to be withheld from that draw and paid to Plaintiff was not done.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page  8  of  10

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California

**ATTACHMENT**

www.courtinfo.ca.gov

MC-025

SHORT TITLE:
Hayomyom LLC v. GMAC Mortgage, et al.,

CASE NUMBER:

ATTACHMENT (Number): FR-4a

*(This Attachment may be used with any Judicial Council form.)*

On or about June 26, 2009 Defendant Robbie Robertson, on behalf of himself and Defendant GMAC Mortgage, LLC; f/k/a GMAC Mortgage Corporation and GMAC Bank represented to Plaintiff that if Plaintiff would allow $37,500.00 from its escrow with Defendant Zygelman to be released to Defendant Zygelman to use said funds toward the completion of the premises Plaintiff was attempting to purchase from Defendant Zygelman that, at the time of the next construction draw due Defendant Zygelman, Defendants would withhold $37,500.00 from said draw and pay over that amount to Plaintiff to reimburse it for the funds advanced to Defendant Zygelman.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page 9 of 10

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California

**ATTACHMENT**

www.courtinfo.ca.gov

MC-025

| SHORT TITLE: Hayomyom LLC v. GMAC Mortgage, et al., | CASE NUMBER: |

ATTACHMENT *(Number):* _____

*(This Attachment may be used with any Judicial Council form.)*

THIRD CAUSE OF ACTION - CONVERSION
AGAINST ZYGELMAN and DOES 6-10
BY HAYOMYOM LLC

On or about June 7, 2009 Plaintiff entered into a written agreement with Defendant Sigmund Zygelman to purchase the real property located at 6225 Gobernadores Lane, Carmichael, California for the sum of $1,250,000.00.

At the time the parties entered into this agreement, Defendant Zygelman was in the final stages of completing the construction of said property that was the subject of this Residential Purchase Agreement.

During the course of said escrow, Plaintiff agreed to release $37,500.00 to Defendant Zygelman to use towards the completion of the subject real property with the understanding that from the next construction draw due Defendant Zygelman, Defendants GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation; GMAC Bank and Robbie Robertson would withhold $37,500.00 from that draw and pay same over to Plaintiff. Plaintiff alleges that Defendant Zygelman was aware of this agreement between Plaintiff and Defendants GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation; GMAC Bank and Robbie Robertson and agreed to same.

On or about July 13, 2009, contrary to that agreement, Defendants GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation; GMAC Bank and Robbie Robertson paid the full construction draw to Defendant Zygelman in the amount of $59,557.00. Defendant Zygelman, without confirming whether or not Plaintiff had been reimbursed $37,500.00 from its construction draw.

On or about August 1st or August 2nd 2009 when Plaintiff learned that the full amount of the construction draw had been paid over to Defendant Zygelman, contacted Defendant Zygelman demanding its return of its $37,500.00. Defendant Zygelman refused and continued to refuse payment claiming the funds received from the last construction draw had been exhausted.

As a result of Defendant Zygelman's actions, Plaintiff has been deprived of its funds, to wit $37,500.00.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page __10__ of __10__

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California

**ATTACHMENT**

www.courtinfo.ca.gov

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State number, and address):* | FOR COURT USE ONLY |
|---|---|
| Scott Barbag (243421)<br>3580 Wilshire Boulevard, Suite 1260<br>Los Angeles, CA 90010 | **FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES |

TELEPHONE NO.: 213.210.3927    FAX NO.:

ATTORNEY FOR *(Name):* Hayomyom LLC

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles

STREET ADDRESS: 111 North Hill St.

MAILING ADDRESS: 111 North Hill St.

CITY AND ZIP CODE: Los Angeles 90012

BRANCH NAME: Stanley Mosk

JUL 12 2011

John A. Clarke, Executive Officer/Clerk

BY _____, Deputy

Roxene Rilloan

CASE NAME:

Hayomyom LLC v. GMAC Mortgage, LLC, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402). | | BC465215 |
| | | | | JUDGE: |
| | | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [✓] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | types (41) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is [✓] is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:

   a. [ ] Large number of separately represented parties    d. [ ] Large number of witnesses

   b. [ ] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more courts
   issues that will be time-consuming to resolve    in other counties, states, or countries, or in a federal court

   c. [ ] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.[✓] monetary    b.[ ] nonmonetary; declaratory or injunctive relief    c.[✓] punitive

4. Number of causes of action *(specify):* 3; Breach of Contract, Fraud, and Conversion

5. This case [ ] is [✓] is not    a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: July 12, 2011

Scott Barbag

_____    ► _____

(TYPE OR PRINT NAME)    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

| SHORT TITLE: Hayomyom LLC v. GMAC Mortgage, LLC, et al. | CASE NUMBER | BC465215 |

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> **This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES   CLASS ACTION? ☐ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 7 ___ ☐ HOURS/ ☑ DAYS

**Item II.** Indicate the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column A, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column B below which best describes the nature of this case.

**Step 3:** In Column C, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

> **Applicable Reasons for Choosing Courthouse Location (see Column C below)**

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 2. |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1., 4. |
| | Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1., 4. |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1., 3. |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: Hayomyom LLC v. GMAC Mortgage, LLC, et al. | CASE NUMBER |
| --- | --- |

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>See Step 3 Above |
| --- | --- | --- | --- |
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005 Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013 Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017 Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050 Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037 Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024 Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109 Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019 Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012 Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015 Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☒ A6009 Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031 Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation    Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018 Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032 Quiet Title | 2., 6. |
| | | ☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2., 6. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 2 of 4

| SHORT TITLE: Hayomyom LLC v. GMAC Mortgage, LLC, et al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 3 of 4

| SHORT TITLE: Hayomyom LLC v. GMAC Mortgage, LLC, et al. | CASE NUMBER |
|---|---|

**Item III. Statement of Location:** Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.<br><br>☐1. ☑2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS: 824 N. Poinsettia |
|---|---|
| **CITY:** Los Angeles | **STATE:** CA | **ZIP CODE:** 90046 |

**Item IV. Declaration of Assignment:** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the <u>Stanley Mosk</u> courthouse in the <u>Central</u> District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: <u>July 12, 2011</u>

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

# Exhibit B

Claim #3577  Date Filed: 11/8/2012

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY **COURT FOR THE SOUTHERN DISTRICT OF NEW YORK** | PROOF OF CLAIM |
| --- | --- |

Name of Debtor and Case Number: Residential Capital LLC (Rescap) Case No.: 12-12020(mg)

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503 (b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**Sigmund Zygelman**

☐ Check this box if this claim amends a previously filed claim.

Name and address where notices should be sent:
**William D. Koehler, Esq.**
**Law Offices of William D. Koehler**
**12522 Moorpark Street, Suite 103**
**Studio City, CA 91604**

Telephone number: (818)506-8322    email: wdklawl@aol.com

Court Claim Number:_____
*(If known)*

Filed on:_____

Name and address where payment should be sent (if different from above):

**Same as above**

Telephone number:    email:

■ **Date Stamped Copy Returned**
☐ **No self addressed stamped envelope**
☐ **No copy to return**

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

1. Amount of Claim as of Date Case Filed: $ **1,500,000.00**    *According to proof*

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. Basis for Claim: **See attached Cross-Complaint in L.A.S.C. Case No. BC465215**
(See instruction #2)

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

| 3. Last four digits of any number by which creditor identifies debtor: **5605** | 3a. Debtor may have scheduled account as:  (See instruction #3a) | 3b. Uniform Claim Identifier (optional):  (See instruction #3b) |
| --- | --- | --- |

4. Secured Claim (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate ☐ Motor Vehicle ☐ Other
Describe:

Value of Property: $_____ Annual Interest Rate_____% ☐ Fixed ☐ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim,

if any: $_____    Basis for perfection: _____

Amount of Secured Claim: $_____    Amount Unsecured: $_____

6. Claim Pursuant to 11 U.S.C. § 503(b)(9):
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$_____ (See instruction #6)

7. Credits. The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

8. Documents: Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

9. Signature: (See instruction #9) Check the appropriate box.
☒ I am the creditor.  ☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)  ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)  ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: **Sigmund Zygelman**    _(Signature)_    11/5/12
Title: **Borrower**    (Date)
Company:
Address and telephone number (if different from notice address above):

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(_).

Amount entitled to priority:

$_____

* Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**RECEIVED**
NOV 0 8 2012
KURTZMAN CARSON CONSULTANTS

Telephone number:    Email:

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or b

1212020121108000000000019

LAW OFFICES
**WILLIAM D. KOEHLER**
WILLIAM D. KOEHLER, ESQ.            A PROFESSIONAL CORPORATION                    TELEPHONE
12522 MOORPARK STREET                      (818) 506-8322
SUITE 103
STUDIO CITY, CALIFORNIA 91604-1390          FACSIMILE
E-MAIL: wdklaw1@aol.com                  (818) 769-9438

November 5, 2012

ResCap Claims Processing Center, c/o KCC
P.O. Box 5004
Hawthorne, CA 90250

     Re:   **Residential Capital LLC (ResCap)**
           *Case No.: 12-12020 (MG)*

To Whom It May Concern:

Enclosed please find an original and a copy of a completed and signed Proof of Claim
form in connection with the case listed above.

Kindly file the above referenced document accordingly and provide us with a conformed
copy in the self addressed stamped envelope provided for your convenience.

Should you have any questions, do not hesitate to contact our office.

Very truly yours,

WILLIAM D. KOEHLER

WDK/st

Enclosures

**PLD-C-001**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>William D. Koehler, Esq.  *SBN# 61755)<br>Law Offices of William D. Koehler<br>12522 Moorpark Street, Suite 103<br>Studio City, CA 91604<br>  TELEPHONE NO: (818) 506-8322      FAX NO. *(Optional):* (818) 769-9438<br>E-MAIL ADDRESS *(Optional):* wdklaw1@aol.com<br>ATTORNEY FOR *(Name):* Cross-Complainant, Sigmund Zygelman | *FOR COURT USE ONLY*<br><br>CONFORMED COPY<br>OF ORIGINAL FILED<br>Los Angeles Superior Court<br><br>AUG 0 8 2011<br><br>John A. Clarke, Executive Officer/Clerk<br>By _____, Deputy<br>A. E. LaFLEUR-CLAYTON |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES
  STREET ADDRESS: 111 N. Hill Street
  MAILING ADDRESS: 111 N. Hill Street
  CITY AND ZIP CODE: Los Angeles, CA 90012
  BRANCH NAME: Central Judicial District

PLAINTIFF: Hayomyom LLC,

DEFENDANT: GMAC Mortgage, LLC; f/k/a GMAC Mortgage Corporation,
      GMAC Bank, Robbie Robertson

[✓] DOES 1 TO 10

| CONTRACT | |
|---|---|
| [ ] COMPLAINT | [ ] AMENDED COMPLAINT *(Number):* |
| [✓] CROSS-COMPLAINT | [ ] AMENDED CROSS-COMPLAINT *(Number):* |

| | |
|---|---|
| Jurisdiction *(check all that apply):*<br>[ ] ACTION IS A LIMITED CIVIL CASE<br>  Amount demanded [ ] does not exceed $10,000<br>            [ ] exceeds $10,000 but does not exceed $25,000<br>[✓] ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)<br>[ ] ACTION IS RECLASSIFIED by this amended complaint or cross-complaint<br>    [ ] from limited to unlimited<br>    [ ] from unlimited to limited | CASE NUMBER:<br><br>BC 465215 |

1. **Plaintiff\*** *(name or names):*
   Cross-Complainant, Sigmund Zygelman

   alleges causes of action against **defendant\*** *(name or names):*
   GMAC Mortgage, LLC; f/k/a GMAC Mortgage Corporation, GMAC Bank; and Robbie Robertson

2. This pleading, including attachments and exhibits, consists of the following number of pages: 40

3. a. Each plaintiff named above is a competent adult
   [ ] **except plaintiff** *(name):*
     (1) [ ] a corporation qualified to do business in California
     (2) [ ] an unincorporated entity *(describe):*
     (3) [ ] other *(specify):*

   b. [ ] Plaintiff *(name):*
     a. [ ] has complied with the fictitious business name laws and is doing business under the fictitious name *(specify):*

     b. [ ] has complied with all licensing requirements as a licensed *(specify):*
   c. [ ] Information about additional plaintiffs who are not competent adults is shown in Attachment 3c.

4. a. Each defendant named above is a natural person
   [✓] **except defendant** *(name):* GMAC Mortgage LLC   [✓] **except defendant** *(name):* GMAC Bank
     (1) [ ] a business organization, form unknown      (1) [✓] a business organization, form unknown
     (2) [ ] a corporation                  (2) [ ] a corporation
     (3) [✓] an unincorporated entity *(describe):*         (3) [ ] an unincorporated entity *(describe):*
        A Limited Liability Company
     (4) [ ] a public entity *(describe):*            (4) [ ] a public entity *(describe):*

     (5) [ ] other *(specify):*                (5) [ ] other *(specify):*

---
\* If this form is used as a cross-complaint, plaintiff means cross-complainant and defendant means cross-defendant.                 **Page 1 of 2**

| | | |
|---|---|---|
| Form Approved for Optional Use<br>Judicial Council of California<br>PLD-C-001 [Rev. January 1, 2007] | **COMPLAINT—Contract** | Code of Civil Procedure, § 425.12 |

PLD-C-001

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Hayomyom LLC, v. GMAC Mortgage, LLC., et al., | BC 465215 |

4.  *(Continued)*

b.  The true names of defendants sued as Does are unknown to plaintiff.
   (1) ☑ Doe defendants *(specify Doe numbers):* 1 through 10 _____ were the agents or employees of the named
       defendants and acted within the scope of that agency or employment.
   (2) ☐ Doe defendants *(specify Doe numbers):* _____ are persons whose capacities are unknown to
       plaintiff.

c.  ☐ Information about additional defendants who are not natural persons is contained in Attachment 4c.

d.  ☐ Defendants who are joined under Code of Civil Procedure section 382 are *(names):*

5.  ☐ Plaintiff is required to comply with a claims statute, **and**
   a.  ☐ has complied with applicable claims statutes, *or*
   b.  ☐ is excused from complying because *(specify):*

6.  ☐ This action is subject to    ☐ Civil Code section 1812.10    ☐ Civil Code section 2984.4.

7.  This court is the proper court because
   a.  ☐ a defendant entered into the contract here.
   b.  ☐ a defendant lived here when the contract was entered into.
   c.  ☐ a defendant lives here now.
   d.  ☐ the contract was to be performed here.
   e.  ☐ a defendant is a corporation or unincorporated association and its principal place of business is here.
   f.  ☐ real property that is the subject of this action is located here.
   g.  ☑ other *(specify):*
       This is where the Complaint is venued.

8.  The following causes of action are attached and the statements above apply to each *(each complaint must have one or
    more causes of action attached):*

   ☑ Breach of Contract

   ☐ Common Counts

   ☑ Other *(specify):*
   Fraud/Negligent Misrepresentation and Interference with Contract.

9.  ☐ Other allegations:

10. **Plaintiff prays** for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
   a.  ☑ damages of: $ 1,250,000.00
   b.  ☑ interest on the damages
       (1) ☑ according to proof
       (2) ☐ at the rate of *(specify):*    percent per year from *(date):*
   c.  ☑ attorney's fees
       (1) ☐ of: $
       (2) ☑ according to proof.
   d.  ☑ other *(specify):*
       See attachment

11. ☐ The paragraphs of this pleading alleged on information and belief are as follows *(specify paragraph numbers):*

Date: 8/5/11

William D. Koehler, Esq.
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

*(If you wish to verify this pleading, affix a verification.)*

PLD-C-001 [Rev. January 1, 2007]                    **COMPLAINT—Contract**                    Page 2 of 2

**MC-025**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Hayomyom LLC v. GMAC Mortgage, LLC, et al., | BC 465215 |

**ATTACHMENT** *(Number):* <u>PLD-C-001 (10d )</u>

*(This Attachment may be used with any Judicial Council form.)*

1) Punitive and exemplary damages in an amount according to proof at time of trial.

2) For a preliminary injunction and a permanent injunction, enjoining all Cross-Defendants and their agents, servants, employees and all persons acting under, in concert with, or for them from initiating foreclosure on Cross-Defendants deed of trust secured by Plaintiff's property on 6225 Gobernadores Lane, Carmichael, California.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page <u>3</u> of <u>11</u>

*(Add pages as required)*

**ATTACHMENT**

*www.courtinfo.ca.gov*

**PLD-C-001(1)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Hayomyom LLC, v. GMAC Mortgage, LLC, et al., | BC465215 |

FIRST _____     **CAUSE OF ACTION—Breach of Contract**
_(number)_

ATTACHMENT TO    ☐ Complaint    ☑ Cross - Complaint

_(Use a separate cause of action form for each cause of action.)_

BC-1.  Plaintiff _(name):_  Sigmund Zygelman

alleges that on or about _(date):_  February 29, 2008
a  ☑ written    ☐ oral    ☐ other _(specify):_
agreement was made between _(name parties to agreement):_
GMAC Mortgage, LLC; f/k/a GMAC Mortgage Corporation, GMAC Bank; Robbie Robertson

☐ A copy of the agreement is attached as Exhibit A, or
☐ The essential terms of the agreement    ☐ are stated in Attachment BC-1    ☑ are as follows _(specify):_

On or about February 29, 2008 Cross-Complainant and Cross-Defendants entered into a
one-close fixed rate construction/permanent mortgage Loan Agreement.

The loan amount was $1,190,000.00, with the total loan term being 30 years, with pay-off on or
about March 1, 2038. A copy of the loan documents are attached hereto as Exhibit A.

BC-2.  On or about _(dates):_  November 2008
defendant breached the agreement by    ☐ the acts specified in Attachment BC-2    ☑ the following acts
_(specify):_

On or about November 2008 Cross-Defendant Robbie Robertson on behalf of Cross-Defendants
GMAC Mortgage, LLC; f/k/a GMAC Mortgage Corporation, GMAC Bank breached the
Agreement when he unilaterally reneged on the bank's obligation to convert
Cross-Complainants construction loan to a conventional jumbo loan upon the completion of
construction as per the aforesaid loan agreement.

BC-3.  Plaintiff has performed all obligations to defendant except those obligations plaintiff was prevented or
excused from performing.

BC-4.  Plaintiff suffered damages legally (proximately) caused by defendant's breach of the agreement
☑ as stated in Attachment BC-4    ☐ as follows _(specify):_

BC-5.  ☑    Plaintiff is entitled to attorney fees by an agreement or a statute
☐ of $
☑ according to proof.

BC-6.  ☑    Other:
Such other and further relief as the court may deem just and proper.

Page  4

Page 1 of 1

**CAUSE OF ACTION—Breach of Contract**

Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

**MC-025**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Hayomyom LLC v. GMAC Mortgage, LLC, et al., | BC 465215 |

**ATTACHMENT** *(Number):* BC-4

*(This Attachment may be used with any Judicial Council form.)*

As a result of Cross-Defendants breach Cross-Complainant's was left with no conventional loan upon the completion of construction. Due to the changes in the economy and Cross-Complainant's financial condition Cross-Complainant could not qualify on obtaining a new conventional loan from a third party source. As a result thereof when Cross-Complainant's construction loan came due, Cross-Complainant did not have the ability to pay-off the loan. As a result thereof, Cross-Defendant's advised Cross-Complainant he was in default of said loan.

Cross-Complainant has been informed by Cross-Defendants that due to Cross-Complainant's default they are going to proceed with the foreclosure of said loan which will cause Cross-Complainant to lose his property.

Previously, due to acts of Cross-Defendants Cross-Complainant lost a potential sale of $1,250,000.00 which would have allowed him to pay off this loan, but as a result of Cross-Defendants actions the buyer cancelled the escrow.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page  5  of  17

*(Add pages as required)*

PLD-C-001(1)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Hayomyom LLC, v. GMAC Mortgage, LLC, et al., | BC465215 |

SECOND        **CAUSE OF ACTION—Breach of Contract**
_(number)_

ATTACHMENT TO ☐ Complaint ☑ Cross - Complaint

_(Use a separate cause of action form for each cause of action.)_

BC-1.  Plaintiff _(name):_ Sigmund Zygelman

alleges that on or about _(date):_ February 29, 2008

a ☑ written ☐ oral ☐ other _(specify):_

agreement was made between _(name parties to agreement):_
GMAC Mortgage, LLC; f/k/a GMAC Mortgage Corporation, GMAC Bank; Robbie Robertson

☐ A copy of the agreement is attached as Exhibit A, or

☐ The essential terms of the agreement ☑ are stated in Attachment BC-1 ☐ are as follows _(specify):_

BC-2.  On or about _(dates):_ November 2008
defendant breached the agreement by ☑ the acts specified in Attachment BC-2 ☐ the following acts
_(specify):_

BC-3.  Plaintiff has performed all obligations to defendant except those obligations plaintiff was prevented or
excused from performing.

BC-4.  Plaintiff suffered damages legally (proximately) caused by defendant's breach of the agreement
☐ as stated in Attachment BC-4 ☑ as follows _(specify):_
Plaintiff has been deprived of the balance of his construction draws per his loan agreement with
Defendants amounting to $11,000.00

BC-5.  ☑ Plaintiff is entitled to attorney fees by an agreement or a statute
☐ of $
☑ according to proof.

BC-6.  ☑ Other:
Such other and further relief as the court may deem just and proper.

Page  6

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
PLD-C-001(1) [Rev. January 1, 2007]

**CAUSE OF ACTION—Breach of Contract**

Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

**MC-025**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Hayomyom LLC v. GMAC Mortgage, LLC, et al., | BC 465215 |

**ATTACHMENT** *(Number):* <u>Second Cause of</u> Action (BC-1)

*(This Attachment may be used with any Judicial Council form.)*

On or about February 29, 2008 Cross-Complainant and Cross-Defendants entered into a one-close fixed rate construction/permanent mortgage Loan Agreement.

A copy of the loan documents are attached hereto as Exhibit A.

The loan for $1,190,000.00 was a construction loan to be converted to a permanent conventional loan upon the completion of construction. As part of the loan agreement Cross-Complaint was to receive periodic draws from the construction loan to pay for labor and materials.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page ⎯7⎯ of ⎯11⎯

*(Add pages as required)*

**ATTACHMENT**

*www.courtinfo.ca.gov*

MC-025

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Hayomyom LLC v. GMAC Mortgage, LLC, et al., | BC 465215 |

ATTACHMENT *(Number):* Second Cause of Action (BC-2)

*(This Attachment may be used with any Judicial Council form.)*

Prior to August 15, 2009 Cross-Defendant Robbie Robertson on behalf of Cross-Defendants GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation, GMAC Bank represented to Cross-Complainant that upon the completion of construction and the issuance of a Certificate of Occupancy, Cross-Complainant would receive his final draw from the construction loan which amounted to $11,000.00.

On or about August 15, 2009 Cross-Complainant completed construction and obtained a Certificate of Occupancy.

Despite having completed construction and obtaining the Certificate of Occupancy, Cross-Defendants and each of them have breached their Agreement by failing to pay the final draw to Cross-Complainant, to wit $11,000.00.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page 8 of 11

*(Add pages as required)*

PLD-C-001(3)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Hayomyom LLC, v. GMAC Mortgage LLC, et al., | BC 465215 |

<u>THIRD</u>           **CAUSE OF ACTION—Fraud**
(number)

ATTACHMENT TO  ☐ Complaint  ☑ Cross-Complaint

*(Use a separate cause of action form for each cause of action.)*

FR- 1. Plaintiff *(name):* Sigmund Zygelman

    alleges that defendant *(name):*  GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation; GMAC Bank;
                            Robbie Robertson and ROES 1 to 5
    on or about *(date):*                       defrauded plaintiff as follows:

FR-2. ☑ **Intentional or Negligent Misrepresentation**
    a. Defendant made representations of material fact   ☐ as stated in Attachment FR-2.a   ☑ as follows:

Prior to August 15, 2011 Cross-Defendant Robbie Robertson on behalf of all
Cross-Defendants represented to Cross-Complainant that if Cross-Complainant completed
construction by August 15, 2009 and obtained a Certificate of Occupancy by that date,
Cross-Defendant Robbie Robertson would release the final draw from Cross-Complainant's
construction loan, to wit $11,000.00.

    b. These representations were in fact false. The truth was   ☐ as stated in Attachment FR-2.b   ☑ as follows:

Despite the fact that Cross-Complainant completed construction on or before August 15, 2009
and obtained his Certificate of Occupancy, Cross-Defendants failed and refused to pay
Cross-Complainant the final draw due on its construction loan to wit $11,000.00

    c. When defendant made the representations,
        ☑ defendant knew they were false, **or**
        ☑ defendant had no reasonable ground for believing the representations were true.

    d. Defendant made the representations with the intent to defraud and induce plaintiff to act as described
      in item FIR-5. At the time plaintiff acted, plaintiff did not know the representations were false and believed
      they were true. Plaintiff acted in justifiable reliance upon the truth of the representations.

FR-3. ☑ **Concealment**
    a. Defendant concealed or suppressed material facts   ☑ as stated in Attachment FR-3.a   ☐ as follows:

    b. Defendant concealed or suppressed material facts
        ☑ defendant was bound to disclose.
        ☑ by telling plaintiff other facts to mislead plaintiff and prevent plaintiff from discovering the concealed
           or suppressed facts.
    c. Defendant concealed or suppressed these facts with the intent to defraud and induce plaintiff to act
      as described in item IFIR-5. At the time plaintiff acted, plaintiff was unaware of the concealed or suppressed
      facts and would not have taken the action if plaintiff had known the facts.

                                                     Page  <u>9</u>

Form Approved for Optional Use
Judicial Council of California
PLD-C-001(3) [Rev. January 1, 2007]

**CAUSE OF ACTION—Fraud**

Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

PLD-C-001(3)

| SHORT TITLE:<br>Hayomyom LLC, v. GMAC Mortgage LLC, et al., | CASE NUMBER:<br>BC 465215 |
|---|---|

THIRD                           **CAUSE OF ACTION—Fraud**
_(number)_

FR-4. [✓] **Promise Without Intent to Perform**

    a. Defendant made a promise about a material matter without any intention of performing it [ ] as stated
       in Attachment FR-4.a [✓] as follows:

       Prior to August 15, 2009 Cross-Defendant Robbie Robertson on behalf of all
       Cross-Defendants promised to Cross-Complainant that if construction was complete by
       August 15, 2009 and Cross-Complainant obtained a Certificate of Occupancy that
       Cross-Defendants would release the final construction draw due to Cross-Complainant, to wit
       $11,000.00.

    b. Defendant's promise without any intention of performance was made with the intent to defraud and induce
       plaintiff to rely upon it and to act as described in item FR-5. At the time plaintiff acted, plaintiff was unaware of
       defendant's intention not to perform the promise. Plaintiff acted in justifiable reliance upon the promise.

FR-5. In justifiable reliance upon defendant's conduct, plaintiff was induced to act [ ] as stated in Attachment FR-5
    [✓] as follows:

    Cross-Complainant spent personal funds as well as borrowed funds in which to complete
    construction by August 15, 2009, and obtained a Certificate of Occupancy.  Despite this fact,
    Cross-Defendants and each of them have refused to release Cross-Complainant's final construction
    draw in the amount of $11,000.00.

FR-6. Because of plaintiff's reliance upon defendant's conduct, plaintiff has been damaged [ ] as stated in
    Attachment FR- 6 [✓] as follows:

    Cross-Complainant has been deprived of the use and enjoyment of the $11,000.00 due him per his
    construction loan, and has outstanding loans that were incurred to complete construction.

FIR - 7.  Other:

Page _10_

MC-025

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Hayomyom LLC v. GMAC Mortgage, LLC, et al., | BC 465215 |

ATTACHMENT *(Number)*: __Third Cause of Action__ (FR–3a)

*(This Attachment may be used with any Judicial Council form.)*

At the time Cross-Defendant Robbie Robertson made the representation to Cross-Complainant that if Cross-Complainant completed construction by August 15, 2009 and obtained a Certificate of Occupancy, that he would release the final construction draw due to Cross-Complainant in the amount of $11,000.00, when in fact he had no intent to release said funds to Cross-Complainant.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page _11_ of _11_

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
**ATTACHMENT**

www.courtinfo.ca.gov

**FOURTH CAUSE OF ACTION**

**INTERFERENCE WITH CONTRACT**

**(AGAINST ALL CROSS-DEFENDANTS and ROES 1 TO 5)**

1.    Cross-Complainant hereby incorporates each and every allegation contained herein and makes them a part of this his Fourth Cause of Action.

2.    On or about June 7, 2009 Cross-Complainant entered into an escrow with Plaintiff Steve Zipp to sell the property located at 6225 Gobernadores Lane, Carmichael, California for the sum of $1,250,000.00, which Cross-Defendants were aware of.

3.    Per the terms of Cross-Complainant's one-close fixed rate construction/permanent mortgage loan agreement, Cross-Defendants were to timely perform their inspections on the construction of Cross-Complainant's residence, and thereafter promptly pay the construction draw due Cross-Complainant for that incremental segment of the work performed.

4.    Although not a party to this escrow, Cross-Defendants and each of them made demands upon Plaintiff Steve Zipp to provide financial information based upon their representation that Cross-Defendant was going to make Plaintiff Steve Zipp a purchase money loan to secure the property.

5.    Separate and apart from this demand, Cross-Defendants required Plaintiff Steve Zipp to release $37,500.00 from escrow toward completion of the residence with the assurance that Plaintiff would be reimbursed from Cross-Complainant's next construction draw.

6.    This aforementioned release of funds was made as an addendum to the escrow and acknowledged by Cross-Defendants.

7.    Despite the above referenced demands of Cross-Defendants, Cross-Defendants refused and failed to make Plaintiff Steve Zipp a purchase money loan despite the statement of Cross-Defendant Robbie Robertson that Cross-Defendant would do so, and failed to withhold $37,500.00 out of the next construction draw.

1

1        8.     As a result of Cross-Defendants' delays and breaches of their prior

2 agreements with Plaintiff Steve Zipp, on or about August 4, 2009 Plaintiff cancelled the

3 aforementioned escrow.

4        9.     The acts of Cross-Defendants to disrupt the contractual relationship

5 between Cross-Complainant and Plaintiff constitutes tortious interference with a

6 contractual relationship.

7        10.     As a direct and proximate result of the wrongful conduct as alleged above,

8 Cross-Complainant has been damaged in that he lost the benefit of his escrow to sell

9 his property for $1,250,000.00.

10        11.     The wrongful conduct of Cross-Defendants as alleged above was

11 committed with malice and in willful and conscious disregard of Cross-Complainant's

12 rights to continue to continue its contractual relationship with Plaintiff without

13 interference, and to obtain the benefit of this agreement with the Plaintiff.  Cross-

14 Defendants acted with specific motive, purpose and intent to injure Cross-Complainant,

15 thereby entitling Cross-Complainant to an award of punitive damages from them in an

16 amount to be proven at trial.

17

18

19

20

21

22

23

24

25

26

27

28

2

1

## FIFTH CAUSE OF ACTION

2

## DECLARATORY RELIEF

3

## (AGAINST ALL CROSS-DEFENDANTS)

4        12.    Cross-Complainant realleges and incorporates by reference the allegations

5    contained in the prior causes of action alleged herein as though fully set forth herein.

6        13.    An actual controversy has arisen and now exits between Cross-

7    Complainant and Cross-Defendants concerning their respective rights and duties in that

8    Cross-Complainant contends that he had a valid contract with Cross-Defendant that at

9    the conclusion of the construction loan portion of his agreement, that the construction

10   loan would automatically convert to a conventional 30 year loan.  Cross-Defendants

11   dispute this contention.

12       14.    Cross-Complainant desires a judicial determination of his rights and

13   duties, and a declaration as to whether or not Cross-Defendants have a duty to extend

14   a conventional 30 year loan to Cross-Complainant on the terms and conditions of the

15   one-close fixed rate construction/permanent mortgage loan agreement entered into

16   on or about February 29, 2008.

17       15.    A judicial determination is appropriate and necessary at this time under

18   the circumstances and that Cross-Complainant must ascertain his right and duties as

19   well as Cross-Defendants obligation to extend to him a permanent loan.

20

21

22

23

24

25

26

27

28

1

**SIXTH CAUSE OF ACTION**

**PRELIMINARY AND PERMANENT INJUNCTION BY**

**CROSS-COMPLAINANT ZYGELMAN**

**(AGAINST ALL CROSS-DEFENDANTS)**

16.    Cross-Complainant realleges and incorporates by reference the allegations contained in his prior causes of action alleged herein as though fully set forth herein.

17.    Unless and until enjoined by order of this Court, Cross-Defendants pursuit of Cross-Complainants alleged default of its loan agreement will cause great and irreparable harm to Cross-Defendant in that if Cross-Defendants are allowed to proceed with the foreclosure of their deed of trust, Cross-Complainant will be deprived of his property.

18.    Cross-Complainant has no adequate remedy at law for the injuries to be suffered should Cross-Defendants continue with a foreclosure action thereby depriving Cross-Complainant of its property as well as the benefits of its contractual agreement with Cross-Defendants.

19.    As a proximate result of Cross-Defendants intent to foreclose upon Cross-Complainant's property, Cross-Complainant will suffer damages in an amount above the minimum jurisdiction of this Court.

# EXHIBIT "A"

# THE ONLY ONE™

## ONE-CLOSE FIXED RATE
## CONSTRUCTION/PERMANENT MORTGAGE LOAN PROGRAM

### FIXED RATE LOAN COMMITMENT

LENDER:

**GMAC MORTGAGE, LLC** (f/k/a GMAC Mortgage Corporation)
Construction Lending Division
1100 Virginia Drive
Fort Washington, PA 19034
Telephone: 877-560-4622 Fax: 877-841-2542

### LOAN PREVIEW

Item:
1. Date of Commitment         : 1/23/08
2. Names of Borrowers:        : Sigmund Zygelman
3. Address of Borrower:       : 1830 Bonnie Way, Sacramento, CA 95825
4. Loan Amount:               S 1,190,000.00
5. Mortgage Property Address: : 6225 Gobernadores Lane, Carmichael, CA 95608
6. Loan Account Number:       : █████ 5605
7. Total Loan Term:           : 30 years
8. Rate Lock in Effect:       :   X Yes @ 7.750 % until   2/26/2009
                              :          Max Qualified Rate 7.750 %
9. Closing Date (on or before): : 3/28/08
10. Construction Interest Period: :   12 Months     Not yet selected by Borrower
11. Product Name / Code:      : Only One Big Fixed
12. Commitment Expiration Date: : 3/28/08
13. Commitment Acceptance Date: (sign & return by) :   3/15/08

14. Fees: (fill only fees required - blanks are Zeros)
    A. An origination fee of   $ 11,900.00
    B. A commitment fee of     $
    C. A discount fee of       $
    D. A construction fee of   $ 1000.00
    E. Inspection fees Per Draw $ 100.00 (10)
    F. Other                   $

15. Borrowers Equity Contribution   : S
16. Loan-To Value Retainage         : S
17. Recert Of Value / PMI           : S      per year  S      per month
18. Prepayment Fees Required        :        X No

Dear Borrower:

We are pleased to advise you that your application for a first priority   ONE-CLOSE   FIXED   RATE   construction/permanent loan under THE ONLY ONE™ program has been approved for the amount shown in Item 4 of the Loan Preview on Page 1 above, for the construction of a residence on the property located at the property address shown in Item  5 above, subject to the following terms and conditions.

NOTE: IF TITLE IS NOT HELD BY BORROWERS, OR IS NOT BEING TAKEN IN NAMES EXACTLY AS SHOWN ABOVE, PLEASE ADVISE US IMMEDIATELY.

NOTE: IT IS VERY IMPORTANT THAT YOU DO NOT COMMENCE ANY   CONSTRUCTION ON THE PROPERTY BEFORE THE RECORDING OF THE DEED OF TRUST, OR THE FIRST LIEN PRIORITY REQUIRED UNDER THIS COMMITMENT LETTER MAY BE LOST.  THE TITLE INSURANCE COMPANY CLOSING THIS LOAN WILL ADVISE YOU WHEN THE DEED OF TRUST HAS BEEN RECORDED SO THAT CONSTRUCTION CAN COMMENCE THEREAFTER. YOU WILL ALSO BE REQUIRED TO FOLLOW THE LAWS OF CALIFORNIA DEALING WITH THE FILING OF A NOTICE OF COMPLETION AS SOON AS THE PROJECT IS COMPLETE.

1.   CONSTRUCTION   INTEREST   PERIOD,   AMORTIZATION   PERIOD,   CONVERSION   DATE,   and CONSTRUCTION COMPLETION DATE:
  1.1.  The loan shall include a period of time during which construction will proceed called the "CONSTRUCTION INTEREST PERIOD", and during which you will pay interest only on the outstanding balance of funds advanced for construction. It will be followed by an "AMORTIZATION   PERIOD" during which you will repay the principal loan balance (amortize the loan) by making monthly payments of principal and interest on the full outstanding loan balance.  The date on which the CONSTRUCTION INTEREST PERIOD ends and the AMORTIZATION PERIOD begins is called the CONVERSION DATE.

  1.2. The CONVERSION DATE is always the first day of a month.  It is also the date on which your last interest only payment is due.

  1.3.  Please note you will make your first payment of principal and interest one month after the Conversion Date. (This is because you are billed for repayment of principal only after the loan has been fully advanced for one full month. For purposes of repayment, it is as though you actually closed an ordinary mortgage loan on the Conversion Date, in which case you would make your first mortgage payment on the first day of the following month).

  1.4.  The INTEREST   RATE that will apply to both the CONSTRUCTION   INTEREST   PERIOD and the AMORTIZATION PERIOD, and the actual length of the CONSTRUCTION  INTEREST   PERIOD has been (or will be) established under a separate INTEREST RATE LOCK OPTION AGREEMENT.   If your loan is subject to a  "CAPPED RATE WITH FLOAT DOWN OPTION",  the terms thereof will also be described in the separate INTEREST  RATE LOCK OPTION AGREEMENT.

  1.5. The INTEREST  RATE  LOCK  OPTION  AGREEMENT will also be used to determine a deadline date by which the construction of your residence must be completed.  This date is called the CONSTRUCTION   COMPLETION DATE. (See the Loan Preview above for the current status of these items on this loan).  This date is very important because you must complete the construction of the residence and meet all of the relevant loan conditions by this date in order to  convert  the loan to the AMORTIZATION PERIOD on the CONVERSION DATE.

  1.6.  If the CONSTRUCTION   COMPLETION   DATE occurs in the middle of a month, the CONVERSION DATE will be the first day of the following month.

  1.7. The total of the CONSTRUCTION INTEREST PERIOD  and the  AMORTIZATION  PERIOD shall equal the Total Loan Term which is described in Item 7 of the loan preview above.

  1.8.  IMPORTANT PLEASE NOTE:  IF YOU DO NOT COMPLETE THE CONSTRUCTION AND MEET ALL OF THE APPLICABLE LOAN TERMS, TO OUR SATISFACTION BY THE CONSTRUCTION COMPLETION   DATE,   LENDER   SHALL   HAVE   THE   RIGHT   TO   CHARGE   YOU   A   "DELAYED COMPLETION   SURCHARGE"   AND/OR   EXERCISE   ANY   OF   LENDER'S   OTHER   RIGHTS   AS   SET

FORTH IN PARAGRAPHS 9 AND 10 BELOW, INCLUDING THE RIGHT TO TREAT THE FAILURE TO COMPLETE CONSTRUCTION BY SUCH DATE AS A DEFAULT. PLEASE READ THESE PARAGRAPHS CAREFULLY.

## 2. RATE OF INTEREST DURING CONSTRUCTION & RATE LOCK:

At the time that this commitment is issued the status of the interest rate that will apply is as follows.

2.1.   If the rate lock status described in Item 8 of the Loan Preview on Page 1, is marked "Yes", the Interest Rate for this loan has been established at the interest rate shown therein. This is the Interest Rate that will apply to your loan, provided that the loan actually closes on or before the date described in Item 7 of the Loan Overview on Page 1. If your loan does not close by this date, this loan commitment is void and your loan may have to be re-documented, in which case the Interest Rate is subject to change.

2.2.   If the rate lock status described in Item 8 of the Loan Preview on Page 1, is marked "No", the Interest Rate is not yet established for your loan, because you have not yet accepted an Interest Rate Lock Agreement and the Interest Rate will not be established until an Interest Rate Lock Option Agreement is accepted. Lender shall not be obligated to make this loan to you if you do not lock-in an Interest Rate equal to or less than the Max Qualified Rate described in Item 8 of the Loan Preview on Page 1. (which is the Maximum Qualified Interest Rate at which this loan has been underwritten) and then actually complete the closing of the loan within all of the terms of the Interest Rate Lock Agreement and this commitment letter. If interest rates increase to a level higher than your Maximum Qualified Interest Rate before you accept an Interest Rate Lock Option Agreement, this commitment is voidable at the Lender's option. The risk of interest rate increases is on you (the Borrower). When you wish to lock in your Interest Rate and terms you must contact your Loan Officer, and follow the lock in instructions provided to you. In order to sign and accept an Interest Rate Lock Option Agreement, you must sign other documents.

2.3.   PLEASE NOTE: If you select an interest rate program that includes a "CAPPED RATE WITH FLOAT DOWN OPTION", then your INTEREST RATE MAY BE LOWER at the time of conversion to the AMORTIZATION PERIOD. IF, after receivng information about your alternatives, you elect to "float down" the interest rate, you will be required to execute loan modification documents prepared by Lender and pay the costs associated with the recording thereof, the costs of title update and title insurance for such loan modification and any other costs incurred to modify ("float down") the interest rate.

## 3. FEES:

3.1.   The fees shown in Item 14 of the Loan Preview on Page 1 shall apply to your loan unless they are amended or modified by a subsequent Interest Rate Lock Option Agreement describing a different fee arrangement.

## 4. BORROWERS EQUITY CONTRIBUTION:

4.1.   If an amount is shown in Item 15 of the Loan Preview on Page 1, we will require an Equity Contribution of the amount shown, to be paid by you toward the estimated cost of purchase of the land, or payoff of liens on land, or toward the cost of construction of the dwelling. (Any equity contribution described here shall be separate from the good faith estimate of settlement costs, and shall be in addition to those costs which you must fund.) Any portion of the Equity Contribution not applied to the purchase or payoff of liens on the land, or for construction, will be held by Lender until the next draw, at which time it shall be disbursed pursuant to the Schedule of Draws, to pay for work in place. Lender will not pay interest on any sum so held. If at any time during the construction of the improvements it is determined by Lender in its sole discretion that the total cost to complete the improvements exceeds the proceeds of the Loan yet to be disbursed by Lender, you shall deposit with Lender an amount equal to such difference prior to its making any further advances under the Loan.

## 5. LOAN-TO-VALUE PROVISION:

5.1.   If an amount is shown in Item 16 of the Loan Preview on Page 1,, we will require a Retainage equal to the amount shown which will not be disbursed by Lender until construction of the improvements is deemed completed as defined in the Construction Loan Agreement, and all of the conditions for the conversion of the loan to the Amortization Period have been met. By accepting this commitment you acknowledge that the Retainage will not be available to fund construction costs of the improvements as construction progresses but will be disbursed after the construction is fully completed and when all of the conditions required for conversion of the Loan to the Amortization Period have been met.

## 6. AGREEMENT OF SALE AND CONSTRUCTION CONTRACT:

6.1.   This commitment is based on the Agreement of Sale for the land between the seller and you submitted with the Loan Application, if any, and the Construction Contract between the builder and you submitted with the Loan Application. By acceptance

hereof, you certify that said Agreement of Sale, if any, and Construction Contract have not been amended or modified and will not be amended or modified without prior notice to and approval by Lender.

## 7. COMMITMENT EXPIRATION DATE:

7.1. The Commitment Expiration Date is as shown in Item 12 of the Loan Preview on Page 1 above . Upon acceptance by both parties, this commitment shall remain valid on its terms and conditions until the Commitment Expiration Date. If the Loan is not closed by the Commitment Expiration Date, this commitment shall expire and Lender shall no longer be obligated hereunder. This Commitment may only be amended by addendum or amendment in writing.

## 8. DELAYS IN COMPLETION - CONSTRUCTION PERIOD EXTENSION:

8.1. All construction must be completed and all required documentation must be received by the Construction Completion Date, to the satisfaction of Lender. The loan will provide that TIME IS OF THE ESSENCE in regard to all such requirements If the work has not been completed by the Construction Completion Date, or all required conditions have not been met to its satisfaction, Lender shall have the right to exercise some or all of the following remedies, as it shall choose.

8.2. Lender has the right to declare a default and exercise all of its rights reserved in the loan documents to act in case of default; or

8.3. Lender may determine that it is willing to extend the time for construction through modification of the loan documents, in which case you agree to execute the necessary documents and pay the costs, fees and expenses associated with such Construction Period Extension, including all extension fees, document fees, courier fees, recording fees and title insurance costs, as well as all other costs incurred or required to complete said Construction Period Extension. Any Construction Period Extension shall not extend the final Maturity Date of the loan.

8.4. Lender may choose to disburse any remaining loan funds into a Delayed Completion Holdback Account on which interest at the Note Rate shall then begin to accrue and be due and payable, as though the funds had been fully advanced for construction completion; and to require you to begin repaying principal and interest under the loan documents as though construction had been completed on time. The unexpended loan funds may be held in a Delayed Completion Holdback Account until the construction is completed per the plans and specifications, and until all of the conditions necessary to complete the conversion of the loan to the Amortization Period have been completed.

8.5. Lender may determine instead that it does not wish to permit more time for construction, and it shall have no obligation to do so. If Lender determines not to extend the time for completion, it shall be a material and actionable default under the loan documents which may result in acceleration of the loan balance and foreclosure.

## 9. DELAYED COMPLETION SURCHARGE:

9.1. When the completion of construction is delayed beyond the Construction Completion Date, Lender is subjected to additional costs beyond those anticipated in the original pricing of the loan to you. In order to cover such delay-related costs, if Lender chooses to extend the time for completion of construction or performance of your obligations, Lender shall also charge you a Delayed Completion Surcharge, for each month, or part thereof, that such delay continues. The Delayed Completion Surcharge shall be in addition to the other charges and costs described elsewhere in this commitment, or in the loan documents. The Delayed Completion Surcharge shall be calculated at three-eighths of one percent (0.375 %) per month on the entire loan amount, including any amount which has not yet been disbursed for construction.

## 10. PAYMENT OF THE DELAYED COMPLETION SURCHARGE:

10.1. The Delayed Completion Surcharge shall be charged to you for each month, or any part thereof, that the Construction Completion Date is extended. The Delayed Completion Surcharge shall be secured by the security instrument. Lender may, at its option, withdraw the Delayed Completion Surcharge for each month from the undisbursed funds under the loan. You agree to replenish the loan with such funds as shall be necessary in order to assure completion of the construction and the satisfaction of all conditions, immediately upon billing from the Lender.

## 11. CLOSING OR SETTLEMENT:

11.1. The closing or settlement of the loan shall take place as soon as mutually convenient to the parties, but not later than the date shown in Item 9 of the Loan Preview on Page 1, at the offices of the title insurance representative or attorney you have selected, or at such other place as shall be acceptable to them.

11.2.  Please contact your title insurance agent or attorney to arrange for the closing or settlement once you have provided all of the information required for the underwriting of the loan.  Please see the LOAN SPECIFIC CONDITIONS attached to this commitment.

## 12. DISBURSEMENT OF CONSTRUCTION ADVANCES:

12.1.   Construction advances will be made from time to time as construction progresses for "WORK IN PLACE ONLY", as determined by Lender based upon inspection of the progress of the work.  You will pay the cost of the inspections.  If the progress of the work in place is not consistent with the Schedule of Draws, the Lender shall advance only the amount that it determines is appropriate based on the inspection of the work.

12.2.  Requests for construction advances must be accompanied by: (1) your affidavit that you believe the work in place has progressed to a point where disbursement is proper; and (2) a list of mechanics, trades and suppliers that have performed the work to date, and the amount due to each; and (3) a statement signed by you and the Builder that the construction project is "on budget and on time"; (4) such additional information as the Lender shall request; and (5) copies of every **Notice To Owner, "Preliminary 20 Day Notice", Claim of Lien, Stop Notice, Bonded Stop Notice, or Lis Pendens** and every other notice, claim, order or demand that you have received in regard to the work. .  You must expend the sum required to be contributed by you toward the completion of the project before Lender will advance any funds under the Schedule of Draws.  (See equity contribution above.)

12.3.   In regard to each disbursement request, Lender's obligation to advance funds, shall be conditioned upon the continuation of the mortgage lien as a "FIRST LIEN" on the premises.  The occurrence of any event or circumstances that may in the Lender's judgment impair the continuing first lien status of the Lender's security shall be a justification for the Lender to withhold advances until such time as such circumstance or event shall have been resolved to the satisfaction of the Lender.  Such event or circumstance may also be a default under the loan documents.  If required by Lender, the Lender shall have the right to require title updates and title insurance endorsements, insuring the continuing first lien status of the Lender's security, all at your expense.

12.4.  Also, if required by Lender, or if required in order to maintain title insurance coverage for mechanics liens, the Lender, or your title insurance company, shall have the right to require that you provide originals or copies of properly executed waivers of mechanics liens (releases of mechanics liens in some areas) from mechanics, tradesmen or suppliers that have rendered services or supplied materials to the premises.

12.5.  All advances other than the initial advance, if any, may be made directly by Lender to Borrower or indirectly through counsel, the settlement agent or a title company, as Lender may determine in its sole discretion.  All such advances shall be made by check or other appropriate credit transfer to the order of Borrower or, in Lender's sole discretion, individually to or jointly with Borrower and the General Contractor or any subcontractor, materialman supplier or other person who is claiming a lien to release the subject property from any potential or recorded mechanic's or materialmen's lien, provided Lender shall first give Borrower notice of its intention to obtain such release with the Loan proceeds.  All payments to persons other than Borrower shall be deemed made for the use and benefit of Borrower with the same force and effect as if disbursed or advanced directly to Borrower.

## 13.  INSPECTIONS:

13.1.  You agree to give Lender at least 10 days notice prior to your desired construction advance date.  You expressly acknowledge that Lender will inspect but not approve the quality or completeness of the construction; and that Lender's inspection is solely to determine the status of completion, and is not to be relied on by you, as Borrower, for any purpose at all.  You agree that you will not hold Lender responsible for any of its judgment concerning the amount and value of the work that has been completed.  You agree that you will not hold Lender responsible concerning the quality or completeness of any construction.

## 14. RECERTIFICATION OF VALUE:

14.1.  You agree that the value of the property may be recertified prior to the conversion of the loan to the Amortization Period, at Lender's option.  If at the time of recertification, the loan-to-value ratio (the loan amount divided into the amount of verified acquisition costs or the recertified property value, whichever is less) exceeds 80%, private mortgage insurance will be required as a condition of making the mortgage loan.  You agree to be responsible for the payment of the entire cost of mortgage insurance, if needed upon recertification or otherwise.  This payment is estimated to be approximately the amounts shown in **Item 17** of the Loan Preview on Page 1, if any.  If no amounts are shown in **Item 17** the Lender does not presently anticipate that private mortgage insurance will be necessary at the time of conversion to the Amortization Period, however, the Lender can not guarantee that it will not be required if circumstances change regarding the value of the property or the improvements thereon at that time.

14.2.  If private mortgage insurance is required, Lender will require that the insurance remain in effect and that you continue to pay private mortgage insurance premiums until the loan qualifies for termination thereof under applicable state or federal law.

## 15. SECONDARY FINANCING:

15.1.    Unless applicable law otherwise provides, there will be no secondary financing without Lender's prior written approval, which approval may be withheld for any reason, in Lender's sole discretion.

## 16. LENDER'S RIGHT TO RETAIN COUNSEL AT YOUR EXPENSE:

16.1.    Lender will be represented for the closing of this loan by the attorney or title insurance representative selected by you. If however, the closing representative is not an attorney, and Lender deems it necessary to seek legal representation or the assistance of legal counsel, at any time and for any reason whatsoever, in regard to your loan, Lender shall have the right to retain such legal counsel, and you agree to pay the costs of such legal counsel.

## 17. YOUR COUNSEL OR REPRESENTATIVE:

17.1.    You may wish to retain legal representation in order to be assured of proper counsel at closing and during all phases of the construction. You may also wish to obtain an owner's title insurance policy. You agree that you will not rely on any legal information or advice that you may receive from the Lender or any of Lender's employees, at any time; and that you will seek such legal counsel as you may choose and desire given the magnitude and complexity of the transaction, and your obligations under the loan.

## 18. CONTRACTOR/BUILDER REVIEW:

18.1.    As part of the underwriting of the loan, and in addition to all credit considerations regarding your credit, Lender shall have the right to review and consider and reject or accept the loan based upon the reputation, history and condition of the Contractor/Builder. You agree to supply all documentation requested by Lender regarding the Contractor/Builder, including, but not limited to, resumes, credit references and other documentation or reports that Lender deems necessary to accomplish such review. NO ACTION TAKEN BY THE LENDER SHALL BE DEEMED TO BE AN ENDORSEMENT, APPROVAL, ACCEPTANCE OR RECOMMENDATION OF THE CONTRACTOR/BUILDER. YOU EXPRESSLY ACKNOWLEDGE THAT YOU HAVE INVESTIGATED THE CONTRACTOR/BUILDER TO YOUR SATISFACTION AND SHALL NOT RELY UPON THE LENDER FOR ANY CONFIRMATION OF YOUR DECISION.

18.2    It will also be required that your contractor consent in writing to the assignment by you to Lender of the construction contract and all permits, plans and specifications relating to the proposed improvements, if requested by Lender.

## 19. ENVIRONMENTAL ASSESSMENT:

19.1    A Phase I environmental assessment of the Property may be required by the Lender if, in the opinion of Lender, hazardous materials may be found on the Property. In the event the assessment shows that hazardous materials are located at, or significant environmental concerns (as determined by Lender) are associated with the Property, Lender shall have no obligation to make the loan.

## 20. GENERAL CONDITIONS - DOCUMENTS AND INFORMATION TO BE FURNISHED TO LENDER BEFORE LOAN CLOSING. At least seven (7) business days prior to the scheduled date of the Loan closing, you must submit to us all of the documents and information set forth below, unless otherwise expressly provided in the Loan Specific Conditions attached hereto. Such documents and information shall be subject to our review and approval, both as to form and substance, and shall be updated and effective as of the Closing Date.

(a) A currently dated ALTA title commitment issued by a title insurance company satisfactory to us covering the Property, which contains copies of all identified documents referred to therein. The title commitment shall stipulate that fee simple title to the Property is vested or will vest in the Borrowers and that title insurance, in a form approved by us, shall be issued to Lender at the time of the Loan closing and shall insure Lender as the holder of a valid first lien for the full amount of the Loan, free and clear of all liens (including mechanics' liens, filed or unfiled), encumbrances and exceptions other than those which may be approved by us. The title insurance policy must be an ALTA extended coverage policy acceptable to us, and must be brought current at the time of each construction advance, at your expense (please note that this process may include the need for title updates, if we deem it necessary or desirable), in the exercise of our sole judgment.

(b) A current survey of the Property, certified and acceptable in all respects to us and the title insurance company issuing the title insurance, by a surveyor acceptable to us showing that the proposed improvements will be constructed entirely on the Property and will not encroach upon or overhang any easement or right-of-way upon the Property or the land of others or violate setback or other restrictions. We will also require an update to the survey before we will advance any funds for improvements on the site.

(c) A certificate of insurance to the effect that the general contractor has procured insurance policies covering workmen's compensation, contingent liability and public liability, protecting you, Lender and the general contractor against any liability for loss or damage to persons or property occurring during construction of the improvements or arising therefrom. In the event the general contractor does not carry the foregoing insurance, we recommend that you obtain liability insurance with coverage for, among other things, liability, bodily injury, death and property damage.

(d) A certificate of insurance evidencing a policy of builder's all risk insurance with extended coverage (with a standard mortgagee clause in favor of Lender), in an amount and with a company satisfactory to us, and containing a provision allowing the insured to complete the work provided for under the construction contract and the Construction Loan Agreement, and covering the building materials on the Property during construction, including those materials that are delivered to the site but not applied or affixed thereto.

(e) A certificate of insurance evidencing a policy of flood insurance or evidence satisfactory to us that the Property does not lie within an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area. The aforesaid policies, described in (c), (d) and this paragraph must contain the agreement of the insurer to give not less than 30 days' notice to Lender prior to cancellation or modification.

(f) Two copies of the construction plans and specifications for the construction of the improvements, which shall have been approved in writing by all necessary and appropriate governmental authorities, by you and the general contractor, and which thereafter shall not be changed without the prior written approval of Lender and the appropriate governmental authorities.

(g) An executed copy of the construction contract between you and the general contractor and a certified copy of a construction cost estimate giving the amount of all sub-bids for material and labor costs.

(h) Copies of (i) the building permit issued for construction of the proposed improvements and (ii) any other permits and approvals required for the construction of the proposed improvements.

(i) Evidence satisfactory to us that public utilities (i.e., water, sewer, gas and electricity) will be available to serve the Property with quality and sufficiency satisfactory to us.

(j) A soil report, if required by us.

(k) A letter from your architect, if any, to Lender to the effect that (i) the improvements and the contemplated use thereof, after completion of construction in accordance with the approved plans and specifications, will comply with all provisions of the applicable building codes and zoning regulations and with all other applicable governmental rules, laws and regulations; and (ii) Lender, its nominee or any wholly owned subsidiary of Lender will have the right to use the plans and specifications for the improvements without additional cost in the event of a default by you and the architect will complete its services under its original contract without additional charge.

(l) An executed copy of the agreement of sale between you and the seller for the purchase of the Property, if any, together with any amendments or modifications thereto. The agreement of sale and all amendments must be approved by Lender.

(m) Such other documentation or materials as shall be necessary to satisfy the LOAN SPECIFIC CONDITIONS attached to this Commitment letter, and such other documentation as we may deem necessary.

## 21.  GENERAL CONDITIONS - REQUIREMENTS FOR CONVERSION OF THE LOAN TO THE AMORTIZATION PERIOD ON THE CONVERSION DATE

21.1.  Our obligation to convert the Loan to the AMORTIZATION PERIOD on the CONVERSION DATE is subject to the following conditions precedent:

(a) All terms and conditions set forth in the Construction Loan Agreement and all loan documents shall have been fulfilled and no Event of Default or Unmatured Event of Default as defined in the Construction Loan Agreement or any loan document shall have occurred and be continuing.

21.2.  At least five (5) business days prior to the Construction Completion Date, you must obtain at your expense and submit to us all the documents and information set forth below. Such documentation and information shall be subject to our review and approval, both as to form and substance, and shall be updated and effective on the Construction Completion Date.

(a) A current endorsement to the policy of title insurance issued to us, reflecting the final construction advance and insuring the full amount of the loan, or a new ALTA loan policy of title insurance issued to us in form and substance satisfactory to us, which endorsement or new policy shall confirm that the Security Instrument remains a valid first lien, free and clear of all liens (including mechanics' liens filed and unfiled), encumbrances and exceptions other than those appearing on the title insurance policy or as approved by us.

(b) A final as-built survey showing that all improvements lie entirely within the boundary and setback lines of the Property and do not encroach upon any easement or right-of-way on the Property.

(c) A certificate from an inspector approved by us to the effect that (i) the physical construction of the improvements has been completed in strict compliance with the plans and specifications previously delivered to us, and (ii) all utilities serving the improvements have been connected and are operating.

(d) A final certificate of occupancy or its equivalent, if applicable.

(e) A fully paid fire insurance policy with extended coverage for a term of at least one year, for not less than the amount of the loan from an acceptable company (A.M. Best Company's general policyholder rating of at least B: III, NON-ASSESSABLE), with a mortgagee clause in favor of Lender, in accordance with its instructions.

(f) A fully paid flood insurance policy for not less than the amount of the Loan with a mortgagee clause as noted above, if applicable.

NOTE: ANY INSURANCE POLICY CONTAINING A CO-INSURANCE CLAUSE IS NOT ACCEPTABLE.

21.3.  You will have paid all actual costs, charges and fees as set forth in the Disclosure Statements, Loan Documents and this Commitment Letter.

21.4.  The property will be owner occupied throughout the term of the Loan.

21.5.  If you have selected an interest rate program that includes a **"CAPPED RATE WITH FLOAT DOWN OPTION"**, then your **INTEREST RATE MAY BE LOWER** at the time of conversion to the **AMORTIZATION PERIOD**, if you elect to "Float Down" the interest rate, and you meet all of the requirements set out in the separate **INTEREST RATE LOCK OPTION AGREEMENT**, and that you pay all of the costs of the execution and recording of Loan Modification Documents that will be prepared by Lender and forwarded to your loan closer, together with all costs for title insurance endorsements necessary to insure the continuing "first lien" status of the mortgage as modified. If you do not choose to exercise your "Float Down" option or if you do not successfully complete the requirements for the "Float Down" option, for any reason, the **INTEREST RATE** for your loan will remain as described in the loan documents, shall be subject to adjustment as provided therein.

## 22.  ESCROWS:

22.1.  If required by Lender, an escrow shall be established which shall provide for equal monthly payments of one-twelfth of annual taxes, insurance premiums, municipal assessments and private mortgage insurance, if any.

## 23.  LOAN SPECIFIC CONDITIONS:

23.1.  The conditions and requirements set out in the attached LOAN SPECIFIC CONDITIONS are an integral part of this commitment letter and must be satisfied before the loan can be scheduled for closing, or before the loan can be converted to the Amortization Period, as the case may be. PLEASE SEE ATTACHED.

## 24.  SURVIVAL OF COMMITMENT LETTER:

24.1.  This commitment letter and the attachments to it contain requirements, terms and conditions material to the performance of your obligations and to the conversion of the loan to the Amortization Period upon the completion of the Construction Interest Period.  Thus, you agree that the terms of this commitment letter shall survive the closing of the loan and shall remain effective and ongoing until the loan is successfully converted to the Amortization Period.

## 25.  SHORT TERM PREPAYMENT FEE / NON CONVERSION SERVICE CHARGE:

25.1  If Item 18 of the Loan Preview above indicates that pre-payment fees required, the Borrower expressly agrees that A SHORT TERM PRE-PAYMENT PENALTY WILL BE INCLUDED IN THE LOAN DOCUMENTS WHICH WILL REMAIN IN EFFECT DURING CONSTRUCTION AND UNTIL THE THIRD MONTHLY PAYMENT OF PRINCIPAL AND INTEREST IS DUE.  The terms of the Pre-payment Penalty are as follows and shall apply in case of any inconsistent terms or provisions contained in any other part or section of the loan documents. If Item 18 of the Loan Preview indicates that NO pre-payment fees are required, the construction period shall contain no prepayment penalty, and the Paragraph B below shall not apply to this loan.  If the loan will contain any other pre-payment penalty, it will be separately disclosed and documented.

A.  SHORT TERM - No Prepayment Fee After Conversion And Delivery:  Beginning on the 1st day of the 4th month after the conversion of the loan to the Amortization Period (and the completion of all of Borrower's obligations in regard to the conversion to amortization), the loan shall contain no prepayment fee.  Until that time, the loan shall contain a pre-payment fee in the form of an additional service charge which will be imposed in case of non-conversion, non-delivery or early prepayment, as described below.

B.  Additional Service Charge On Failure To Convert, Failure To Deliver or Early Prepayment. Notwithstanding anything in this agreement to the contrary, it is understood and agreed that the Borrower will pay to the Lender an additional service charge of  2.00% of any full or partial pre-payment, for services associated with any of the following:

(1) the failure of the loan to fully convert to amortization as described in the commitment letter and in the loan documents through the Lender's CPP Department, for any reason; or

(2) the failure of the Borrower to comply with any of the requirements of the Lender necessary to (i) complete disbursement of all of the proceeds under the Note and loan documents or (ii) to permit Lender to successfully deliver the loan for sale in the secondary mortgage market, for any reason; or

(3) the pre-payment of all or part of the outstanding loan balance before the 1st day of the 4th month after the conversion of the loan to the Amortization Period, for any reason, and from any source of funding, including refinancing with any of Lender's other products.

This service charge shall be separate from all other payments and charges due under the Note and loan documents, (e.g. extension fees, escrows and the like), and shall be required in addition thereto, if the loan does not convert to the Amortization Period, if successful delivery is not completed, or if the loan is pre-paid in whole or in part before the 1st day of the 4th month after the conversion of the loan, all as above described. Conversion of less than the full loan amount shall be treated as a pre-payment of the amount not converted.

C.  TERMINATION OF FEE ON SALE OF LOAN BY LENDER  - Without limiting the rights of the Lender, it is further agreed that the fee described in this section shall terminate upon the completion of the sale of the loan to any investor by Lender. For purposes of this paragraph the completion of the sale of the loan shall be deemed to occur only when the loan has been fully transferred and the Lender has received full payment for the transfer from the Investor.

D.  LIMITATION ON AMOUNT OF FEE  - The amount of any fee or charge described in this paragraph shall be limited as required by state law to that amount which shall equal 6 months interest on the amount prepaid in excess of 20% of the original loan amount.


We are pleased to extend this commitment to you and look forward to your loan closing.


Please indicate your acceptance of this commitment by signing and returning the enclosed copy no later than the Commitment Acceptance Date shown in Item 13 of the Loan Preview on page 1.

Very truly yours,

GMAC MORTGAGE, LLC


By: _____

The foregoing terms and conditions are agreed to and accepted this ___ day of _____, 200__.

_____ (Seal)
Borrower

_____ (Seal)
Borrower

_____ (Seal)
Borrower

_____ (Seal)
Borrower

*Original will
be Sent Via
Fed-Ex*

Loan No. ▰▰▰5605
When recorded mail to:

    GMAC Mortgage
    1100 Virginia Drive
    Fort Washington, PA 19034

Attn: CAROLYN HELM/BARBARA JAMES

_____

*Space Above for Recorder's Use*

Note: After having been recorded, this Assignment should be kept with the
Mortgage / Security Deed / Deed of Trust hereby assigned.

## ASSIGNMENT OF MORTGAGE / SECURITY DEED / DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to

    GMAC Bank
    4 Walnut Grove Lane
    Horsham, PA 19044

all beneficial interest under that certain Mortgage / Security Deed / Deed of Trust,
dated the          29th          day of          February    ,    2008  , and executed by
    Sigmund Zygelman, a married man

(Mortgagor / Grantor /Trustor) to    Executive Trustee Services, Inc.

(Mortgagee / Grantee / Trustee) and recorded on the                          day of
in Book / Volume / Liber                          , at Page                                      as
Document Number                                              in the Office of the
Recorder of        Sacramento                      County ,    CA

    SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.

BEING Known as:              6225 Gobernadores Lane, Carmichael, CA 95608
  As described on the Deed referred to herein.
28305700010000;LOT 1

Together with the Note or Notes described and secured thereby, the money due and to become due thereon, with interest and
all rights accrued under said Note and Mortgage / Security Deed / Deed of Trust.
DATED this        29th                day of      February    ,    2008    .
                              GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation
                              1100 Virginia Drive
                              Fort Washington, PA 19034

_____

GMACM - AAS.0145.CA  (9405)
Page 1 of 2

412003830

STATE OF CALIFORNIA

COUNTY OF

On February 29, 2008        before me,
      Date                                              Name and Title of Officer

personally appeared


                              Name(s) of Signer(s)


who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I
certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.




                              Witness my hand and official seal.


_____

Place Notary Seal Above                          Signature of Notary Public

_____


Prepared by:    Carolyn Helm
                1100 Virginia Drive
                Fort Washington, PA 19034
                for: GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation


GMACM - AAS.0145.CA  (0712)

Page 2 of 2

Schedule A                                                    Page 1
Assignment of Mortgage / Security Deed / Deed of Trust
Given By: Sigmund Zygelman


see attached legal

GMACM
CONSTRUCTION/PERMANENT MORTGAGE LOAN PROGRAM

## ESCROW WAIVER FORM

DATE: February 29, 2008

LOAN NUMBER:  ████5605

BORROWER(S):  Sigmund Zygelman

PROPERTY:  6225 Gobernadores Lane
Carmichael, CA  95608

All defined terms in this waiver form shall have the same meanings as set forth in your loan documents.

I.    WAIVER OF ESCROW REQUIREMENTS

Subject to the provisions of Section II below, during the term of your Loan with GMAC Mortgage LLC (f/k/a GMAC Mortgage Corporation) , its successors and/or assigns, you agree with the conditions listed below:

1)  You agree to be solely responsible for the timely payment of any and all taxes, assessments, supplementary tax bills, leasehold payments and ground rents affecting the Property.

2)  You agree to be solely responsible for the timely payment of all Builder's Risk insurance premiums covering the full replacement cost value of the Property (real and personal) for "all-risk" perils included in the standard special causes of loss from, including course of construction and collapse, naming GMAC Mortgage LLC (f/k/a GMAC Mortgage Corporation) its successors and/or assigns, 4 Walnut Grove Drive, Construction Lending-3rd Floor, Horsham, PA 19044 as first mortgagee, including flood insurance premiums, if applicable, affecting the Property during the construction period.

3)  Once construction is complete, you will also be required to maintain sufficient hazard/homeowners insurance coverage (and flood insurance, if applicable) with extended coverage issued by a company acceptable to GMAC Mortgage LLC (f/k/a GMAC Mortgage Corporation)  (an acceptable company will have either a "B" or better general policyholder's rating or a "6" or better financial performance index rating in "Best's Key Rating Guide" or a "A" or better rating from "Demotech, Inc."). Coverage is also acceptable from Lloyd's of London. The policy must cover the Property in an amount not less than the permanent loan amount and/or full replacement cost coverage naming GMAC Mortgage LLC (f/k/a GMAC Mortgage Corporation) its successors and/or assigns, P.O. Box 57003, Irvine, CA 92619 as first mortgagee. Please discuss this requirement with your insurance agent in order to secure and maintain the correct coverage.

4)  GMAC Mortgage LLC (f/k/a GMAC Mortgage Corporation) reserves the right to establish or re-establish an escrow account for the payment of the Escrow items in accordance with the terms of your loan documents, if at any time during the term of the mortgage loan:

   a)  You fail to maintain a current paid status with respect to the GMAC Mortgage LLC (f/k/a GMAC Mortgage Corporation) mortgage loan or are otherwise in default under the terms of your GMAC Mortgage LLC (f/k/a GMAC Mortgage Corporation) loan documents;

   b)  You fail to (i) maintain the required insurance coverage as described above; or (ii) pay any of the Escrow items in a prompt and timely manner;

Rev. 02/12/03                                    1

c) You fail to provide GMAC Mortgage LLC (f/k/a GMAC Mortgage Corporation) with written evidence of the payment of the Escrow Items within thirty (3) days following the respective due date of each Escrow Item. Such evidence shall include, but not be limited to, copies of the tax bill(s) along with evidence from the appropriate taxing authorities that payment was received and a copy of the current builder's risk insurance policy (and flood policy, if applicable) along with evidence from the insurance carrier(s) indicating that payment was received; or

d) It becomes necessary for GMAC Mortgage LLC (f/k/a GMAC Mortgage Corporation) to advance funds to pay all or any portion of the Escrow Items, in that event, interest may be charged at the note rate on the dollar amount advanced if permitted under the terms of your mortgage loan documents.

II.    ESTABLISHMENT OF ESCROWS UPON CONSTRUCTION COMPLETION

**GMAC Mortgage LLC (f/k/a GMAC Mortgage Corporation) will not escrow funds for the payment of taxes and insurance(s) during the construction of your home. When your construction loan converts to permanent financing in accordance with your loan documents, however, GMAC Mortgage LLC (f/k/a GMAC Mortgage Corporation) may require that an escrow account be establisher for the future payment of these items. The borrower(s) hereby acknowledge that an escrow account may be required and that, if so required, borrower(s) may be required to make an initial deposit to the escrow account at the time the conversion takes place so as to maintain sufficient funds for payment of taxes and insurance(s) as they become due. Once your loan has converted, our escrow-servicing department will also advise you of any necessary adjustments to your monthly payment to accommodate the funding of your escrow account.**

Please indicate your acceptance and understanding of the above terms and conditions by signing below.

GMAC Mortgage LLC (f/k/a GMAC Mortgage Corporation)

By:_____
        Carolyn Helm

UNDERSTOOD AND ACCEPTED:

_____          _____
        Sigmund Zygelman                                          Date

_____          _____
                                                                                    Date

_____          _____
                                                                                    Date

_____          _____
                                                                                    Date

Rev. 02/12/03                                    2

LOAN NUMBER:    ██████5605
BORROWER:    Sigmund Zygelman
PROPERTY ADDRESS :  6225 Gobernadores Lane, Carmichael, CA   95608

## DISBURSEMENT AUTHORIZATION AND CONSENT AGREEMENT

This Disbursement Authorization and Consent Agreement (the "Agreement") is made this 29th day of February, 2008  by and between **Sigmund Zygelman** ("Borrower's") and GMAC Mortgage, LLC (f/k/a GMAC Mortgage Corporation) ("GMACM").

### Background

A. GMACM has made a construction loan to Borrowers in the amount of $ **1,900,000**  (the "Construction Loan") for the construction of a residential dwelling.  Proceeds of the Construction Loan will be disbursed to or on behalf of Borrowers pursuant to a construction loan agreement between Borrowers and GMACM (the "Loan Agreement").

B. Pursuant to the Loan Agreement, GMACM may make disbursements directly to Borrowers, to Borrowers' general contractor,  **Jeffrey Mark Taylor DBA Mark's Mitzvah's**  the "Borrowers' General Contractor"), or jointly to Borrowers and Borrowers' General Contractor.

C. Borrowers have requested that GMACM make all disbursements of the Construction Loan directly to Borrowers' General Contractor.

### Agreement

NOW THEREFORE, in consideration of the mutual promises made herein, and intending to be legally bound, the parties hereby agree as follows:

1. Borrowers hereby authorize and direct GMACM to disburse any and all proceeds of the Construction Loan to Borrowers' General Contractor.  Unless or until the occurrence of an Event of Default (as defined in the Loan Agreement), and provided that all conditions to each disbursement have been satisfied as set forth in the Loan Agreement, GMACM agrees to make all disbursements of the Construction Loan, either directly indirectly through a title company, to Borrower's General Contractor by check or wire transfer, at GMACM's option. Borrowers acknowledge and understand the protection provided to them by jointly payable disbursements, and consent to disbursement directly to Borrowers' General Contractor as authorized herein.

2. Borrowers hereby release GMACM, and shall indemnify and hold GMACM harmless from any and all liability, costs, claims and damages, including reasonable attorney fees, arising out of or resulting from actions taken by GMACM in good faith in accordance with this Agreement and the Loan Agreement.  The release and indemnification provided for herein shall include, but shall not be limited to, any liability which GMACM might otherwise incur in the absence of this authorization.

Disbursement Authorization, MI individual
Rev – 7/99

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

BORROWER(S)

_____
Sigmund Zygelman            Date

_____
                                  Date

_____
                                  Date

_____
                                  Date


**GMAC Mortgage, LLC**
**(f/k/a GMAC Mortgage Corporation)**


By:_____
Name:  Carolyn Helm
Title:   Closer

---

STATE of
COUNTY OF

I hereby certify that on this day, before me, an officer duly authorized in the county and state aforesaid to take acknowledgements, personally appeared _____ to me well known to be the persons described in and who executed the foregoing instrument and acknowledged before me that they executed same for the purpose therein expressed.

Witness my hand and official seal in the county and state aforesaid this _____ day of _____, 20 ___

_____

NOTARY PUBLIC

MY COMMISSION EXPIRES:

Disbursement Authorization, MI individual
Rev – 7/99

- 2 -

# GMAC Mortgage LLC/GMAC Bank

1100 Virgina Drive
Fort Washington, PA 19034
1-877-560-4622

Sigmund Zygelman                                                  February 29, 2008

Re:  Loan #  ███████5605
6225 Gobernadores Lane
Carmichael, CA   95608

### NOTICE OF ASSIGNMENT, SALE, OR TRANSFER
### OF SERVICING RIGHTS

You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, is being assigned, sold or transferred from GMAC Mortgage LLC (f/k/a GMAC Mortgage Corporation), to GMAC Bank, effective February 29, 2008.

The assignment, sale or transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan. The loan number on your present loan will remain the same loan number on the loan when transferred to GMAC Bank. In fact the only difference to you the customer is, the payment for you interest due check will be made payable to GMAC Bank and not GMAC Mortgage LLC (f/k/a GMAC Mortgage Corporation). Everything else will remain the same including the mailing address that you use at the present time. Also, the name and phone number and extension for your loan servicer will remain the same.

Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of transfer, or at closing. Your new servicer must also send you this notice no later than 15 days after this effective date or at closing. [In this case, all necessary information is combined in this one notice].

Your present servicer is GMAC Mortgage LLC (f/k/a GMAC Mortgage Corporation). If you have any questions relating to the transfer of servicing from your present servicer call 1-877-560-4622 Construction Loan Department between 8:30a.m. and 5 p.m. on the following days: Monday through Friday. This is a toll-free number.

Your new servicer will be GMAC Bank.

The business address for your new servicer is:

GMAC Bank
PO Box 978
Horsham. PA 19044

The [toll-free] telephone number of your new servicer is 1-877-560-4622. If you have any questions relating to the transfer of servicing to your new servicer call Construction Loan Department at GMAC Bank [toll free] between 8:30 a.m. and  5 p.m. on the following days: Monday through Friday.

You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 U.S.C. 2605) gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request. [If you want to send a "qualified written request" regarding the servicing of your loan, it must be sent to this address:]

GMAC Bank
PO Box 978
Horsham, PA 19044

Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 60-Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A Business Day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.


<u>GMAC Mortgage LLC (f/k/a GMAC Mortgage Corporation)</u>          _____
PRESENT SERVICER [Signature not required]          Date

[and][or]

<u>GMAC Bank</u>          _____
FUTURE SERVICER [Signature not required]          Date

*[Codified to 24 C.F.R. Part 3500, Appendix MS--2]*

*[Appendix MS--2 added at 61 Fed. Reg. 13252, March 26, 1996*

# NOTE

| February 29, 2008 | Fair Oaks | California |
|---|---|---|
| Date | City | State |

**6225 Gobernadores Lane, Carmichael, CA 95608**
(Property Address)

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    1,190,000.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **GMAC MORTGAGE, LLC** (f/k/a GMAC Mortgage Corporation). I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    7.750    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the    1st    day of each month beginning on    April 1, 2008    . I will make these payments every month until I have paid all of the principal and interest and any other charges describedbelow that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    March 1, 2038    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at

**P.O. Box 978, Horsham, PA 19044-0978**

, or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $    8,320.65    .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac Uniform Instrument    Form 3200  1/01
Page 1 of 3                                           5602                              Initials: _____

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

   **(A) Late Charge for Overdue Payments**

   If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        5.000        % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

   **(B) Default**

   If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

   **(C) Notice of Default**

   If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

   **(D) No Waiver By Note Holder**

   Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

   **(E) Payment of Note Holder's Costs and Expenses**

   If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES.**

   Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

   Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

   If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

   I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

   This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

      If all or any part of the Property, or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

      If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)
SIGMUND ZYGELMAN                               -(Borrower)

_____(Seal)
                                               -(Borrower)

_____(Seal)
                                               -(Borrower)

_____(Seal)
                                               -(Borrower)

*(Sign Original Only)*

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac Uniform Instrument    Form 3200  1/01
Page 3 of 3                                    ████5602                                    Initials: _____

## CONSTRUCTION RIDER TO NOTE AND
## SECURITY INSTRUMENT

### (ONLY ONE™ ONE-CLOSE FIXED RATE)

LENDER - As used herein the term Lender shall mean

### GMAC MORTGAGE, LLC
(f/k/a GMAC Mortgage Corporation)

or any assignee, transferee or successor in interest thereto.  As used herein the words "I", "me" or "my" shall mean any person who signs below as Borrower.

This Rider is a loan modification agreement which changes the terms of the promissory Note and Security Instrument (Mortgage, Deed of Trust or Security Deed) which I have signed which are dated    **February 29, 2008**    in regard to the property located at

### 6225 Gobernadores Lane, Carmichael, CA 95608

("Property").  I agree that the covenants, terms and provisions set forth in this Rider will supercede and replace any inconsistent terms, covenant or provisions therein, where the two are different.

# CONSTRUCTION TRUST DEED

CONSTRUCTION LOAN - FUTURE ADVANCES.  THE ADDITION OF THIS RIDER TO THE NOTE AND DEED OF TRUST IS INTENDED AND AGREED TO MAKE IT A CONSTRUCTION LOAN TO SECURE FUTURE ADVANCES WITHIN THE MEANING OF THE LAWS OF THE STATE OF CALIFORNIA, INCLUDING WITHOUT LIMITATION, CALIFORNIA CIVIL CODE § 3097.  SUCH FUTURE ADVANCES SHALL BE DEEMED "OBLIGATORY" ON LENDER PROVIDED THAT THE BORROWER SHALL FULLY PERFORM ALL OF BORROWERS OBLIGATIONS UNDER THE NOTE, DEED OF TRUST, CONSTRUCTION LOAN AGREEMENT AND LOAN DOCUMENTS.   ALL SUMS ADVANCED HEREUNDER SHALL BE DEEMED TO HAVE THE SAME PRIORITY AS THE ORIGINAL INDEBTEDNESS.

BY SIGNING THIS RIDER, THE BORROWER WARRANTS AND ASSURES THAT **NO CONSTRUCTION ACTIVITY OF ANY KIND HAS COMMENCED ON THE PROPERTY** DESCRIBED HEREIN, AND THE BORROWER FURTHER EXPRESSLY WARRANTS AND AGREES THAT NO CONSTRUCTION ACTIVITY OF ANY KIND SHALL COMMENCE UNTIL AFTER THE BORROWER IS NOTIFIED OF THE RECORDING OF THE DEED OF TRUST AS A FIRST LIEN ON THE PROPERTY.  COMMENCEMENT OF WORK BEFORE SUCH RECORDING CAN SUBJECT THE PROPERTY OF THE OWNER TO MECHANICS LIENS AND CAN BE A DEFAULT UNDER THE LOAN DOCUMENTS.

### 1.  CONSTRUCTION LOAN
The loan is to be advanced in installments to finance construction, which I promise to complete on or before    **February 26, 2009**    , referred to as the **"CONSTRUCTION COMPLETION DATE"**, in strict compliance with the project Plans and Specifications.

If, in the Lender's opinion, the construction of the project will not be completed by    **February 26, 2009**    , it shall be the basis for a default, and Lender shall have the right to stop making advances of money even before    **February 26, 2009**    ; and to accelerate the loan and make all sums outstanding due and payable at once, together with interest, fees, costs of collection and all other charges, including reasonable attorneys' fees.

The Lender has agreed to make the loan herein described to be paid over to me in installments as the work is completed and will advance funds only FOR WORK IN PLACE, based upon inspection.

The Lender is obligated to advance the full amount of the loan $    1,190,000.00    provided that I have fully performed and met all of the conditions and requirements which I have promised to undertake in the

Construction Loan Agreement, Promissory Note, Security Agreement, Commitment Letter and Loan Documents; and provided that I am not in default thereunder.

## 2. INSPECTION FOR STATUS OF COMPLETION ONLY

The Lender shall have the right to inspect the premises so as to ascertain the status of completion and the progress of the construction of improvements. The sole purpose for such inspection is to determine the approximate amount and value of the work which has been done, and to advance funds for such work in place. Such inspections shall not necessarily relate to the quality of the construction and as Borrower, I will not rely on the Lender's inspection for any purpose whatsoever. As Borrower, I will be solely responsible for the progress and quality of construction.

## 3. MODIFICATION OF THE OBLIGATION TO REPAY LOAN

1. Notwithstanding the terms of Paragraph 3 of the Note that I signed, I will not begin repaying the principal of my loan on      **April 1, 2008** .

2. Instead, I will pay interest only until   **March 1, 2009**  referred to as the "**CONVERSION DATE**".

3. I will make my first payment of principal and interest on   **April 1, 2009**   , in the amount of **$8,398.07**, unless I am advised otherwise by the Lender in writing.

## 4. IF I DO NOT COMPLETE CONSTRUCTION WHEN I SHOULD

If I have not completed all construction or repairs, and met all of my obligations regarding the same by **February 26, 2009**   , then in addition to its other rights under the loan documents, the Lender has the right to do any or all of the following:

1. declare a default and exercise all of its rights reserved in the loan documents to act in case of default; or
2. agree to allow more time for construction to be completed and to disburse any remaining loan funds into a Delayed Completion Holdback Account which shall then begin to accrue interest at the Note Rate, as though the funds had been fully advanced for construction;
3. charge me a Delayed Completion Surcharge, as detailed in the commitment letter for this loan;
4. agree to a Construction Period Extension and charge me for all costs associated with the preparation and recording of all extension agreements, escrow materials and title insurance endorsements, and all other costs incurred in order to extend the time for completion of construction and performance of my obligations.

## 5. CONSTRUCTION PERIOD INTEREST

During the Construction Interest Period, I will pay the Lender interest on the principal amount that it has advanced under the loan. Interest will be computed daily at the rate in effect under the Note for the amount of principal outstanding. This interest will be billed to me on the 1st day of each month during the Construction Interest Period of this loan until the Conversion Date, and it will be my responsibility to pay the amount of interest billed to me within 15 days.

## 6. ADDRESS FOR NOTICE TO LENDER.

Any person wishing to claim the benefit of any mechanics lien is advised by the recording hereof that the address of the Lender for receipt of any  Notice To Owner, "Preliminary 20 Day Notice", Claim of Lien, Stop Notice, Bonded Stop Notice, or Lis Pendens, or other mechanics lien claim under California law, or for any other notice, claim or lien is shown below. Any such notice should be delivered to such address by certified mail return receipt requested .

ATTN: Audrey Norfleet
GMAC Mortgage, LLC
Construction Lending Division
1100 Virginia Drive
Fort Washington, PA 19034

As Borrower, I promise to notify the Lender, immediately upon my receipt of any such Notice To Owner, "Preliminary 20 Day Notice", Claim of Lien, Stop Notice, Bonded Stop Notice, or Lis Pendens, or any other notice, claim or lien relating in any way to the Property and to provide copies to Lender of all documents or papers received by me regarding the same.

## 7. EXTINGUISHMENT OF CERTAIN PROVISIONS.

Unless otherwise extended in writing, on **February 26, 2009**, the provisions of this rider, except paragraphs 3 shall self-extinguish and be of no further force and effect, provided however, that any causes of action, claims or rights of the Lender which accrue before said date shall continue unaffected and undiminished by such extinguishment.

Date:_____

Borrower:    **SIGMUND ZYGELMAN**

_____

Borrower:

_____

Borrower:

_____

Borrower:

The undersigned witnessed the Borrower(s) when he/she/they signed this Rider.

_____    _____

Settlement Agent                    Date

1    **PROOF OF SERVICE**

2    STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3         I am a resident of the United States and employed in the County of Los Angeles,
State of California, over the age of 18 and not a party to the within action or
4    proceedings, that my business address is 12522 Moorpark Street, Suite 103, Studio
City, California 91604; that on the date this declaration is dated, I served a copy of the
5    paper to which this proof of service is attached, the within:

6              **CROSS-COMPLAINT**

7
on the interested parties and/or through their attorneys of record by depositing the
8    original or true copy thereof as designated below, at Studio City, California, addressed
to the following as follows:
9
**Scott Barbag, Esq.**
10   **The Law Offices of Scott Barbag**
**3580 Wilshire Boulevard, Suite 1260**
11   **Los Angeles, CA 90010**

12   **(X)  BY FIRST CLASS MAIL:** I caused said document(s) to be deposited in the
United States Mail in a sealed envelope with postage fully prepaid at Studio City,
13   California, following the ordinary practice at my place of business of collection
and processing of mail.

14
**(  )  BY HAND DELIVERY/PERSONAL SERVICE (C.C.P. §§1011, et seq.):** I
15   caused said document(s) to be personally served to the addressee listed above.

16   **(  )  BY TELECOPY/FACSIMILE (C.C.P. §§1012.5 et seq.):** I caused said
document(s) to be telecopied to the addressee listed above; telecopier ("Fax")
17   number _____ at approximately _____ a.m./p.m.

18   **(  )  BY EXPRESS MAIL (C.C.P. §§1013(c)(d), et seq.):** I caused said
document(s) to be deposited with an express service carrier in a sealed envelope
19   designed by the carrier as an express mail envelope, with fees and postage
prepaid.

20
**(  )  BY REGISTERED MAIL (C.C.P. §§1020, et seq.):** I caused said document(s)
21   to be deposited in the United States Mail, postage prepaid, return receipt
requested, signed by addressee that said document(s) were received.

22
I declare under penalty of perjury under the laws of the State of California that
23   the foregoing is true and correct.

24        Executed on August 8, 2011 at Studio City, California.

25

26

27   _____
                    **SUSANNA CISNEROS**

28

**SUM-110**

# SUMMONS
## Cross-Complaint
### *(CITACION JUDICIAL–CONTRADEMANDA)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO CROSS-DEFENDANT:**
*(AVISO AL CONTRA-DEMANDADO):*

GMAC Mortgage, LLC; f/k/a GMAC Mortgage Corporation, GMAC
Bank; Robbie Robertson and ROES 1 through 10

**YOU ARE BEING SUED BY CROSS-COMPLAINANT:**
*(LO ESTÁ DEMANDANDO EL CONTRADEMANDANTE):*

Sigmund Zygelman

---

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the cross-complainant. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por esqrito en esta corte y hacer que se entregue una copia al contrademandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), o oniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br><br>Los Angeles Superior Court<br>111 N. Hill Street, Los Angeles, CA 90012 | SHORT NAME OF CASE *(from Complaint): (Nombre de Caso):*<br>Hayomyom LLC v. GMAC Mortgage, et al.,<br>CASE NUMBER: *(Número del Caso):*<br>BC 465215 |
|---|---|

The name, address, and telephone number of cross-complainant's attorney, or cross-complainant without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del contrademandante, o del contrademandante que no tiene abogado, es):*

William D. Koehler, Esq. - 12522 Moorpark Street, Suite 103, Studio City, CA 91604; Tel: (818)506-8322

| DATE:<br>*(Fecha)* | Clerk, by<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons (POS-010).)*

**NOTICE TO THE PERSON SERVED: You are served**

| [SEAL] | 1. ☐ as an individual cross-defendant. |
|---|---|
| | 2. ☐ as the person sued under the fictitious name of *(specify):* |
| | 3. ☐ on behalf of *(specify):* |
| | under: ☐ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor) |
| | ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee) |
| | ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person) |
| | ☐ other *(specify):* |
| | 4. ☐ by personal delivery on *(date):* |

**Page 1 of 1**

**SUMMONS—CROSS-COMPLAINT**

Code of Civil Procedure, §§ 412.20, 428.60, 465
*www.courtinfo.ca.gov*

# Exhibit C

# THE ONLY ONE™

## ONE-CLOSE FIXED RATE
## CONSTRUCTION/PERMANENT MORTGAGE LOAN PROGRAM

### FIXED RATE LOAN COMMITMENT

LENDER:

**GMAC MORTGAGE, LLC** (f/k/a GMAC Mortgage Corporation)
Construction Lending Division
1100 Virginia Drive
Fort Washington, PA 19034
Telephone: 877-560-4622 Fax: 877-841-2542

**LOAN PREVIEW**

Item:
1. Date of Commitment            : 1/23/08
2. Names of Borrowers:           : Sigmund Zygelman
3. Address of Borrower:          : 1830 Bonnie Way, Sacramento, CA 95825
4. Loan Amount:                  $ 1,190,000.00
5. Mortgage Property Address:    : 6225 Gobernadores Lane, Carmichael, CA 95608
6. Loan Account Number:          :
7. Total Loan                    :  30 years
8. Rate L                        :    X Yes  @ 7.750 % until    2/26/2009
                                 :        Max Qualified Rate 7.750 %
9. Closing                       : 3/28/08
10. Const                        :   12 Months        Not yet selected by Borrower
11. Produ                        : Only One Big Fixed
12. Comm                         : 3/28/08
13. Comm                         (sign & return by) :   3/15/08

14. Fees: (                      (lanks are Zeros)
    A. An c                      1,900.00
    B. A co
    C. A dis
    D. A co                      000.00
    E. Inspec           — ≥ 100.00 (10)
    F. Other              $

15. Borrowers Equity Contribution   : $
16. Loan-To Value Retainage         : $
17. Recert Of Value / PMI           : $       per year $       per month
18. Prepayment Fees Required        :        X  No

THE ONLY ONE™ One-Close Fixed Rate Loan Commitment Letter  CALIFORNIA    1
© Interstate Closing Systems. All Rights Reserved                                XI.acpb

Dear Borrower:

We are pleased to advise you that your application for a first priority  **ONE-CLOSE FIXED RATE** construction/permanent loan under **THE ONLY ONE™** program has been approved for the amount shown in **Item 4** of the Loan Preview on Page 1 above, for the construction of a residence on the property located at the property address shown in **Item 5** above, subject to the following terms and conditions.

**NOTE:** IF TITLE IS NOT HELD BY BORROWERS, OR IS NOT BEING TAKEN IN NAMES <u>**EXACTLY**</u> AS SHOWN ABOVE, PLEASE ADVISE US IMMEDIATELY.

**NOTE:** IT IS VERY IMPORTANT THAT YOU **DO NOT COMMENCE ANY    CONSTRUCTION** ON THE PROPERTY BEFORE THE RECORDING OF THE DEED OF TRUST, OR THE FIRST LIEN PRIORITY REQUIRED UNDER THIS COMMITMENT LETTER MAY BE LOST. THE TITLE INSURANCE COMPANY CLOSING THIS LOAN WILL ADVISE YOU WHEN THE DEED OF TRUST HAS BEEN RECORDED SO THAT CONSTRUCTION CAN COMMENCE THEREAFTER. YOU WILL ALSO BE REQUIRED TO FOLLOW THE LAWS OF CALIFORNIA DEALING WITH THE FILING OF A **NOTICE OF COMPLETION** AS SOON AS THE PROJECT IS COMPLETE.

1. <u>CONSTRUCTION INTEREST PERIOD, AMORTIZATION PERIOD,    CONVERSION DATE, and CONSTRUCTION COMPLETION DATE</u>:

    1.1.   The loan shall include a period of time during which construction will proceed called the "**CONSTRUCTION INTEREST PERIOD**", and during which you will pay interest only on the outstanding balance of funds advanced for construction. It will be followed by an "**AMORTIZATION    PERIOD**" during which you will repay the principal loan balance (amortize the loan) by making monthly payments of principal and interest on the full outstanding loan balance.    The date on which the **CONSTRUCTION INTEREST PERIOD** ends and the **AMORTIZATION PERIOD** begins is called the **CONVERSION DATE**.

    1.2.  The **CONVERSION DATE** is always the first day of a month. It is also the date on which your last interest only payment is due.

    1.3.  Please note you will make your **first payment of principal and interest** one month after the Conversion Date. (This is because you are billed for repayment of principal only after the loan has been fully advanced for one full month.   For purposes of repayment, it is as though you actually closed an ordinary mortgage loan on the Conversion Date, in which case you would make your first mortgage payment on the first day of the following month).

    1.4.  The **INTEREST   RATE** that will apply to both the **CONSTRUCTION    INTEREST   PERIOD** and the **AMORTIZATION PERIOD**, and the actual length of the **CONSTRUCTION   INTEREST    PERIOD** has been (or will be) established under a separate **INTEREST RATE LOCK OPTION AGREEMENT**.    If your loan is subject to a  "**CAPPED RATE WITH FLOAT DOWN OPTION**", the terms thereof will also be described in the separate **INTEREST RATE LOCK OPTION AGREEMENT.**

    1.5. The **INTEREST RATE LOCK OPTION   AGREEMENT** will also be used to determine a deadline date by which the construction of your residence must be completed.   This date is called the **CONSTRUCTION   COMPLETION DATE**. (See the Loan Preview above for the current status of these items on this loan).   This date is very important because you must complete the construction of the residence and meet all of the relevant loan conditions by this date in order to convert the loan to the **AMORTIZATION PERIOD** on the **CONVERSION DATE**.

    1.6.  If the **CONSTRUCTION   COMPLETION   DATE** occurs in the middle of a month, the **CONVERSION DATE** will be the first day of the following month.

    1.7.  The total of the **CONSTRUCTION INTEREST PERIOD** and the  **AMORTIZATION   PERIOD** shall equal the **Total Loan Term** which is described in **Item 7** of the loan preview above.

    1.8.  **IMPORTANT PLEASE NOTE:** IF YOU DO NOT COMPLETE THE CONSTRUCTION AND MEET ALL OF THE APPLICABLE LOAN TERMS, TO OUR SATISFACTION BY THE CONSTRUCTION COMPLETION DATE, LENDER SHALL HAVE THE RIGHT TO CHARGE YOU A "DELAYED COMPLETION SURCHARGE" AND/OR EXERCISE ANY OF LENDER'S OTHER RIGHTS AS SET

FORTH IN PARAGRAPHS 9 AND 10 BELOW, INCLUDING THE RIGHT TO TREAT THE FAILURE TO COMPLETE CONSTRUCTION BY SUCH DATE AS A DEFAULT. PLEASE READ THESE PARAGRAPHS CAREFULLY.

## 2. RATE OF INTEREST DURING CONSTRUCTION & RATE LOCK:
At the time that this commitment is issued the status of the interest rate that will apply is as follows.

2.1.  If the rate lock status described in **Item 8** of the Loan Preview on **Page 1**, is marked "Yes", the Interest Rate for this loan has been established at the interest rate shown therein. This is the Interest Rate that will apply to your loan, provided that the loan actually closes on or before the date described in **Item 7** of the Loan Overview on **Page 1**. If your loan does not close by this date, this loan commitment is void and your loan may have to be re-documented, in which case the Interest Rate is subject to change.

2.2.  If the rate lock status described in **Item 8** of the Loan Preview on **Page 1**, is marked "No", the Interest Rate is not yet established for your loan, because you have not yet accepted an Interest Rate Lock Agreement and the **Interest Rate will not be established until an Interest Rate Lock Option Agreement is accepted. Lender shall not be obligated to make this loan to you if you do not lock-in an Interest Rate equal to or less than the Max Qualified Rate** described in **Item 8** of the Loan Preview on **Page 1**, (which is the **Maximum Qualified Interest Rate** at which this loan has been underwritten) and then actually complete the closing of the loan within all of the terms of the Interest Rate Lock Agreement and this commitment letter. **If interest rates increase to a level higher than your Maximum Qualified Interest Rate before you accept an Interest Rate Lock Option Agreement, this commitment is voidable at the Lender's option. The risk of interest rate increases is on you (the Borrower).** When you wish to lock in your Interest Rate and terms you must contact your Loan Officer, and follow the lock in instructions provided to you. In order to sign and accept an Interest Rate Lock Option Agreement, you must sign other documents.

2.3.  PLEASE  NOTE:  If you select an interest rate program that includes a  **"CAPPED RATE WITH FLOAT DOWN OPTION"**, then your **INTEREST RATE MAY BE LOWER** at the time of conversion to the **AMORTIZATION PERIOD.** If, after receiving information about your alternatives, you elect to "float down" the interest rate, you will be required to execute loan modification documents prepared by Lender and pay the costs associated with the recording thereof, the costs of title update and title insurance for such loan modification and any other costs incurred to modify ("float down") the interest rate.

## 3. FEES:
3.1.  The fees shown in **Item 14** of the Loan Preview on **Page 1** shall apply to your loan unless they are amended or modified by a subsequent Interest Rate Lock Option Agreement describing a different fee arrangement.

## 4. BORROWERS EQUITY CONTRIBUTION:
4.1.  If an amount is shown in **Item 15** of the Loan Preview on **Page 1**, we will require an **Equity  Contribution** of the amount shown, to be paid by you toward the estimated cost of purchase of the land, or payoff of liens on land, or toward the cost of construction of the dwelling. (Any equity contribution described here shall be separate from the good faith estimate of settlement costs, and shall be in addition to those costs which you must fund.) Any portion of the Equity Contribution not applied to the purchase or payoff of liens on the land, or for construction, will be held by Lender until the next draw, at which time it shall be disbursed pursuant to the Schedule of Draws, to pay for work in place. Lender will not pay interest on any sum so held. If at any time during the construction of the improvements it is determined by Lender in its sole discretion that the total cost to complete the improvements exceeds the proceeds of the Loan yet to be disbursed by Lender, you shall deposit with Lender an amount equal to such difference prior to its making any further advances under the Loan.

## 5. LOAN-TO-VALUE PROVISION:
5.1.  If an amount is shown in **Item 16** of the Loan Preview on **Page 1**, we will require a **Retainage** equal to the amount shown which will not be disbursed by Lender until construction of the improvements is deemed completed as defined in the Construction Loan Agreement, and all of the conditions for the conversion of the loan to the Amortization Period have been met. By accepting this commitment you acknowledge that the Retainage will not be available to fund construction costs of the improvements as construction progresses but will be disbursed after the construction is fully completed and when all of the conditions required for conversion of the Loan to the Amortization Period have been met.

## 6. AGREEMENT OF SALE AND CONSTRUCTION CONTRACT:
6.1.  This commitment is based on the Agreement of Sale for the land between the seller and you submitted with the Loan Application, if any, and the Construction Contract between the builder and you submitted with the Loan Application. By acceptance

hereof, you certify that said Agreement of Sale, if any, and Construction Contract have not been amended or modified and will not be amended or modified without prior notice to and approval by Lender.

## 7. COMMITMENT EXPIRATION DATE:

7.1. The Commitment Expiration Date is as shown in **Item 12** of the Loan Preview on Page 1 above . Upon acceptance by both parties, this commitment shall remain valid on its terms and conditions until the Commitment Expiration Date. If the Loan is not closed by the Commitment Expiration Date, this commitment shall expire and Lender shall no longer be obligated hereunder. This Commitment may only be amended by addendum or amendment in writing.

## 8. DELAYS IN COMPLETION - CONSTRUCTION PERIOD EXTENSION:

8.1. All construction must be completed and all required documentation must be received by the **Construction Completion Date**, to the satisfaction of Lender. The loan will provide that **TIME IS OF THE ESSENCE** in regard to all such requirements If the work has not been completed by the **Construction Completion Date**, or all required conditions have not been met to its satisfaction, Lender shall have the right to exercise some or all of the following remedies, as it shall choose.

8.2. Lender has the right to declare a default and exercise all of its rights reserved in the loan documents to act in case of default; or

8.3. Lender may determine that it is willing to extend the time for construction through modification of the loan documents, in which case you agree to execute the necessary documents and pay the costs, fees and expenses associated with such **Construction Period Extension**, including all extension fees, document fees, courier fees, recording fees and title insurance costs, as well as all other costs incurred or required to complete said Construction Period Extension. Any Construction Period Extension shall not extend the final Maturity Date of the loan.

8.4. Lender may choose to disburse any remaining loan funds into a Delayed Completion Holdback Account on which interest at the Note Rate shall then begin to accrue and be due and payable, as though the funds had been fully advanced for construction completion; and to require you to begin repaying principal and interest under the loan documents as though construction had been completed on time. These loan funds may be held in a Delayed Completion Holdback Account until the construction is completed per the plans and specifications, and until all of the conditions necessary to complete the conversion of the loan to the Amortization Period have been completed.

8.5. Lender may determine instead that it does not wish to permit more time for construction, and it shall have no obligation to do so. If Lender determines not to extend the time for completion, it shall be a material and actionable default under the loan documents which may result in acceleration of the loan balance and foreclosure.

## 9. DELAYED COMPLETION SURCHARGE:

9.1. When the completion of construction is delayed beyond the Construction Completion Date, Lender is subjected to additional costs beyond those anticipated in the original pricing of the loan to you. In order to cover such delay-related costs, if Lender chooses to extend the time for completion of construction or performance of your obligations, Lender shall also charge you a Delayed Completion Surcharge, for each month, or part thereof, that such delay continues. The Delayed Completion Surcharge shall be in addition to the other charges and costs described elsewhere in this commitment, or in the loan documents. The Delayed Completion Surcharge shall be calculated at **three-eighths of one percent (0.375 %) per month** on the entire loan amount, including any amount which has not yet been disbursed for construction.

## 10. PAYMENT OF THE DELAYED COMPLETION SURCHARGE:

10.1. The Delayed Completion Surcharge shall be charged to you for each month, or any part thereof, that the Construction Completion Date is extended. The Delayed Completion Surcharge shall be secured by the security instrument. Lender may, at its option, withdraw the Delayed Completion Surcharge for each month from the undisbursed funds under the loan. You agree to replenish the loan with such funds as shall be necessary in order to assure completion of the construction and the satisfaction of all conditions, immediately upon billing from the Lender.

## 11. CLOSING OR SETTLEMENT:

11.1. The closing or settlement of the loan shall take place as soon as mutually convenient to the parties, but not later than the date shown in **Item 9** of the Loan Preview on Page 1, at the offices of the title insurance representative or attorney you have selected, or at such other place as shall be acceptable to them.

**11.2.** Please contact your title insurance agent or attorney to arrange for the closing or settlement once you have provided all of the information required for the underwriting of the loan. Please see the LOAN SPECIFIC CONDITIONS attached to this commitment.

## 12. DISBURSEMENT OF CONSTRUCTION ADVANCES:

**12.1.** Construction advances will be made from time to time as construction progresses for "WORK IN PLACE ONLY", as determined by Lender based upon inspection of the progress of the work. You will pay the cost of the inspections. If the progress of the work in place is not consistent with the Schedule of Draws, the Lender shall advance only the amount that it determines is appropriate based on the inspection of the work.

**12.2.** Requests for construction advances must be accompanied by: (1) your affidavit that you believe the work in place has progressed to a point where disbursement is proper; and (2) a list of mechanics, trades and suppliers that have performed the work to date, and the amount due to each; and (3) a statement signed by you and the Builder that the construction project is "on budget and on time"; (4) such additional information as the Lender shall request; and (5) copies of every **Notice To Owner, "Preliminary 20 Day Notice", Claim of Lien, Stop Notice, Bonded Stop Notice, or Lis Pendens** and every other notice, claim, order or demand that you have received in regard to the work. . You must expend the sum required to be contributed by you toward the completion of the project before Lender will advance any funds under the Schedule of Draws. (See equity contribution above.)

**12.3.** In regard to each disbursement request, Lender's obligation to advance funds, shall be conditioned upon the continuation of the mortgage lien as a "FIRST LIEN" on the premises. The occurrence of any event or circumstances that may in the Lender's judgment impair the continuing first lien status of the Lender's security shall be a justification for the Lender to withhold advances until such time as such circumstance or event shall have been resolved to the satisfaction of the Lender. Such event or circumstance may also be a default under the loan documents. If required by Lender, the Lender shall have the right to require title updates and title insurance endorsements, insuring the continuing first lien status of the Lender's security, all at your expense.

**12.4.** Also, if required by Lender, or if required in order to maintain title insurance coverage for mechanics liens, the Lender, or your title insurance company, shall have the right to require that you provide originals or copies of properly executed waivers of mechanics liens (releases of mechanics liens in some areas) from mechanics, tradesmen or suppliers that have rendered services or supplied materials to the premises.

**12.5.** All advances other than the initial advance, if any, may be made directly by Lender to Borrower or indirectly through counsel, the settlement agent or a title company, as Lender may determine in its sole discretion. All such advances shall be made by check or other appropriate credit transfer to the order of Borrower or, in Lender's sole discretion, individually to or jointly with Borrower and the General Contractor or any subcontractor, materialman supplier or other person who is claiming a lien to release the subject property from any potential or recorded mechanic's or materialmen's lien, provided Lender shall first give Borrower notice of its intention to obtain such release with the Loan proceeds. All payments to persons other than Borrower shall be deemed made for the use and benefit of Borrower with the same force and effect as if disbursed or advanced directly to Borrower.

## 13.  INSPECTIONS:

**13.1.** You agree to give Lender at least 10 days notice prior to your desired construction advance date. You expressly acknowledge that Lender will inspect but not approve the quality or completeness of the construction; and that Lender's inspection is solely to determine the status of completion, and is not to be relied on by you, as Borrower, for any purpose at all. You agree that you will not hold Lender responsible for any of its judgment concerning the amount and value of the work that has been completed. You agree that you will not hold Lender responsible concerning the quality or completeness of any construction.

## 14. RECERTIFICATION OF VALUE:

**14.1.** You agree that the value of the property may be recertified prior to the conversion of the loan to the Amortization Period, at Lender's option. If at the time of recertification, the loan-to-value ratio (the loan amount divided into the amount of verified acquisition costs or the recertified property value, whichever is less) exceeds 80%, private mortgage insurance will be required as a condition of making the mortgage loan. You agree to be responsible for the payment of the entire cost of mortgage insurance, if needed upon recertification or otherwise. This payment is estimated to be approximately the amounts shown in Item 17 of the Loan Preview on Page 1, if any. If no amounts are shown in Item 17 the Lender does not presently anticipate that private mortgage insurance will be necessary at the time of conversion to the Amortization Period. however, the Lender can not guarantee that it will not be required if circumstances change regarding the value of the property or the improvements thereon at that time.

**14.2.** If private mortgage insurance is required, Lender will require that the insurance remain in effect and that you continue to pay private mortgage insurance premiums until the loan qualifies for termination thereof under applicable state or federal law.

**15.  SECONDARY FINANCING:**
    15.1.    Unless applicable law otherwise provides, there will be no secondary financing without Lender's prior written approval, which approval may be withheld for any reason, in Lender's sole discretion.

**16.  LENDER'S RIGHT TO RETAIN COUNSEL AT YOUR EXPENSE:**
    16.1.    Lender will be represented for the closing of this loan by the attorney or title insurance representative selected by you. If however, the closing representative is not an attorney, and Lender deems it necessary to seek legal representation or the assistance of legal counsel, at any time and for any reason whatsoever, in regard to your loan, Lender shall have the right to retain such legal counsel, and you agree to pay the costs of such legal counsel.

**17.  YOUR COUNSEL OR REPRESENTATIVE:**
    17.1.    You may wish to retain legal representation in order to be assured of proper counsel at closing and during all phases of the construction. You may also wish to obtain an owner's title insurance policy. You agree that you will not rely on any legal information or advice that you may receive from the Lender or any of Lender's employees, at any time; and that you will seek such legal counsel as you may choose and desire given the magnitude and complexity of the transaction, and your obligations under the loan.

**18.  CONTRACTOR/BUILDER REVIEW:**
    18.1.    As part of the underwriting of the loan, and in addition to all credit considerations regarding your credit, Lender shall have the right to review and consider and reject or accept the loan based upon the reputation, history and condition of the Contractor/Builder. You agree to supply all documentation requested by Lender regarding the Contractor/Builder, including, but not limited to, resumes, credit references and other documentation or reports that Lender deems necessary to accomplish such review. NO ACTION TAKEN BY THE LENDER SHALL BE DEEMED TO BE AN ENDORSEMENT, APPROVAL, ACCEPTANCE OR RECOMMENDATION OF THE CONTRACTOR/BUILDER. YOU EXPRESSLY ACKNOWLEDGE THAT YOU HAVE INVESTIGATED THE CONTRACTOR/BUILDER TO YOUR SATISFACTION AND SHALL NOT RELY UPON THE LENDER FOR ANY CONFIRMATION OF YOUR DECISION.
    18.2    It will also be required that your contractor consent in writing to the assignment by you to Lender of the construction contract and all permits, plans and specifications relating to the proposed improvements, if requested by Lender.

**19.  ENVIRONMENTAL ASSESSMENT:**
    19.1    A Phase I environmental assessment of the Property may be required by the Lender if, in the opinion of Lender, hazardous materials may be found on the Property. In the event the assessment shows that hazardous materials are located at, or significant environmental concerns (as determined by Lender) are associated with the Property, Lender shall have no obligation to make the loan.

**20.    GENERAL CONDITIONS - DOCUMENTS AND INFORMATION TO BE FURNISHED TO LENDER BEFORE LOAN CLOSING.** At least seven (7) business days prior to the scheduled date of the Loan closing, you must submit to us all of the documents and information set forth below, unless otherwise expressly provided in the Loan Specific Conditions attached hereto. Such documents and information shall be subject to our review and approval, both as to form and substance, and shall be updated and effective as of the Closing Date.
    **(a)** A currently dated ALTA title commitment issued by a title insurance company satisfactory to us covering the Property, which contains copies of all identified documents referred to therein. The title commitment shall stipulate that fee simple title to the Property is vested or will vest in the Borrowers and that title insurance, in a form approved by us, shall be issued to Lender at the time of the Loan closing and shall insure Lender as the holder of a valid first lien for the full amount of the Loan, free and clear of all liens (including mechanics' liens, filed or unfiled), encumbrances and exceptions other than those which may be approved by us. The title insurance policy must be an ALTA extended coverage policy acceptable to us, and must be brought current at the time of each construction advance, at your expense (please note that this process may include the need for title updates, if we deem it necessary or desirable), in the exercise of our sole judgment.
    **(b)** A current survey of the Property, certified and acceptable in all respects to us and the title insurance company issuing the title insurance, by a surveyor acceptable to us showing that the proposed improvements will be constructed entirely on the Property and will not encroach upon or overhang any easement or right-of-way upon the Property or the land of others or violate setback or other restrictions. We will also require an update to the survey before we will advance any funds for improvements on the site.
    **(c)** A certificate of insurance to the effect that the general contractor has procured insurance policies covering workmen's compensation, contingent liability and public liability, protecting you, Lender and the general contractor against any liability for loss or damage to persons or property occurring during construction of the improvements or arising therefrom. In the event the general contractor does not carry the foregoing insurance, we recommend that you obtain liability insurance with coverage for, among other things, liability, bodily injury, death and property damage.

**(d)** A certificate of insurance evidencing a policy of builder's all risk insurance with extended coverage (with a standard mortgagee clause in favor of Lender), in an amount and with a company satisfactory to us, and containing a provision allowing the insured to complete the work provided for under the construction contract and the Construction Loan Agreement, and covering the building materials on the Property during construction, including those materials that are delivered to the site but not applied or affixed thereto.

**(e)** A certificate of insurance evidencing a policy of flood insurance or evidence satisfactory to us that the Property does not lie within an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area. The aforesaid policies, described in (c), (d) and this paragraph must contain the agreement of the insurer to give not less than 30 days' notice to Lender prior to cancellation or modification.

**(f)** Two copies of the construction plans and specifications for the construction of the improvements, which shall have been approved in writing by all necessary and appropriate governmental authorities, by you and the general contractor, and which thereafter shall not be changed without the prior written approval of Lender and the appropriate governmental authorities.

**(g)** An executed copy of the construction contract between you and the general contractor and a certified copy of a construction cost estimate giving the amount of all sub-bids for material and labor costs.

**(h)** Copies of (i) the building permit issued for construction of the proposed improvements and (ii) any other permits and approvals required for the construction of the proposed improvements.

**(i)** Evidence satisfactory to us that public utilities (i.e., water, sewer, gas and electricity) will be available to serve the Property with quality and sufficiency satisfactory to us.

**(j)** A soil report, if required by us.

**(k)** A letter from your architect, if any, to Lender to the effect that (i) the improvements and the contemplated use thereof, after completion of construction in accordance with the approved plans and specifications, will comply with all provisions of the applicable building codes and zoning regulations and with all other applicable governmental rules, laws and regulations; and (ii) Lender, its nominee or any wholly owned subsidiary of Lender will have the right to use the plans and specifications for the improvements without additional cost in the event of a default by you and the architect will complete its services under its original contract without additional charge.

**(l)** An executed copy of the agreement of sale between you and the seller for the purchase of the Property, if any, together with any amendments or modifications thereto. The agreement of sale and all amendments must be approved by Lender.

**(m)** Such other documentation or materials as shall be necessary to satisfy the LOAN SPECIFIC CONDITIONS attached to this Commitment letter, and such other documentation as we may deem necessary.

## 21.    GENERAL CONDITIONS - REQUIREMENTS FOR CONVERSION OF THE LOAN TO THE AMORTIZATION PERIOD ON THE CONVERSION DATE

**21.1.**  Our obligation to convert the Loan to the **AMORTIZATION PERIOD** on the **CONVERSION DATE** is subject to the following conditions precedent:

**(a)** All terms and conditions set forth in the Construction Loan Agreement and all loan documents shall have been fulfilled and no Event of Default or Unmatured Event of Default as defined in the Construction Loan Agreement or any loan document shall have occurred and be continuing.

**21.2.**    At least five (5) business days prior to the Construction Completion Date, you must obtain at your expense and submit to us all the documents and information set forth below. Such documentation and information shall be subject to our review and approval, both as to form and substance, and shall be updated and effective on the Construction Completion Date.

**(a)** A current endorsement to the policy of title insurance issued to us, reflecting the final construction advance and insuring the full amount of the loan, or a new ALTA loan policy of title insurance issued to us in form and substance satisfactory to us, which endorsement or new policy shall confirm that the Security Instrument remains a valid first lien, free and clear of all liens (including mechanics' liens filed and unfiled), encumbrances and exceptions other than those appearing on the title insurance policy or as approved by us.

**(b)** A final as-built survey showing that all improvements lie entirely within the boundary and setback lines of the Property and do not encroach upon any easement or right-of-way on the Property.

**(c)** A certificate from an inspector approved by us to the effect that (i) the physical construction of the improvements has been completed in strict compliance with the plans and specifications previously delivered to us, and (ii) all utilities serving the improvements have been connected and are operating.

**(d)** A final certificate of occupancy or its equivalent, if applicable.

**(e)** A fully paid fire insurance policy with extended coverage for a term of at least one year, for not less than the amount of the loan from an acceptable company (A.M. Best Company's general policyholder rating of at least B: 111, NON-ASSESSABLE), with a mortgagee clause in favor of Lender, in accordance with its instructions.

**(f)** A fully paid flood insurance policy for not less than the amount of the Loan with a mortgagee clause as noted above, if applicable.

NOTE: ANY INSURANCE POLICY CONTAINING A CO-INSURANCE CLAUSE IS NOT ACCEPTABLE.

21.3.  You will have paid all actual costs, charges and fees as set forth in the Disclosure Statements, Loan Documents and this Commitment Letter.

21.4.  The property will be owner occupied throughout the term of the Loan.

21.5.  If you have selected an interest rate program that includes a **"CAPPED RATE WITH FLOAT DOWN OPTION"**, then your **INTEREST RATE MAY BE LOWER** at the time of conversion to the **AMORTIZATION PERIOD**, if you elect to "Float Down" the interest rate, and you meet all of the requirements set out in the separate **INTEREST RATE LOCK OPTION AGREEMENT**, and that you pay all of the costs of the execution and recording of Loan Modification Documents that will be prepared by Lender and forwarded to your loan closer, together with all costs for title insurance endorsements necessary to insure the continuing "first lien" status of the mortgage as modified. If you do not choose to exercise your "Float Down" option or if you do not successfully complete the requirements for the "Float Down" option, for any reason, the **INTEREST RATE** for your loan will remain as described in the loan documents, shall be subject to adjustment as provided therein.

## 22.  ESCROWS:

22.1.  If required by Lender, an escrow shall be established which shall provide for equal monthly payments of one-twelfth of annual taxes, insurance premiums, municipal assessments and private mortgage insurance, if any.

## 23.  LOAN SPECIFIC CONDITIONS:

23.1.  The conditions and requirements set out in the attached LOAN SPECIFIC CONDITIONS are an integral part of this commitment letter and must be satisfied before the loan can be scheduled for closing, or before the loan can be converted to the Amortization Period, as the case may be.  PLEASE SEE ATTACHED.

## 24.  SURVIVAL OF COMMITMENT LETTER:

24.1.  This commitment letter and the attachments to it contain requirements, terms and conditions material to the performance of your obligations and to the conversion of the loan to the Amortization Period upon the completion of the Construction Interest Period.  Thus, you agree that the terms of this commitment letter shall survive the closing of the loan and shall remain effective and ongoing until the loan is successfully converted to the Amortization Period.

## 25.  SHORT TERM PREPAYMENT FEE / NON CONVERSION SERVICE CHARGE:

25.1    If Item 18 of the Loan Preview above indicates that pre-payment fees required, the Borrower expressly agrees that A SHORT TERM PRE-PAYMENT PENALTY WILL BE INCLUDED IN THE LOAN DOCUMENTS WHICH WILL REMAIN IN EFFECT DURING CONSTRUCTION AND UNTIL THE THIRD MONTHLY PAYMENT OF PRINCIPAL AND INTEREST IS DUE.  The terms of the Pre-payment Penalty are as follows and shall apply in case of any inconsistent terms or provisions contained in any other part or section of the loan documents. If Item 18 of the Loan Preview indicates that NO pre-payment fees are required, the construction period shall contain no prepayment penalty, and the Paragraph B below shall not apply to this loan.  If the loan will contain any other pre-payment penalty, it will be separately disclosed and documented.

**A.  SHORT TERM - No Prepayment Fee After Conversion And Delivery:**  Beginning on the 1st day of the 4th month after the conversion of the loan to the Amortization Period (and the completion of all of Borrower's obligations in regard to the conversion to amortization), the loan shall contain no prepayment fee.  Until that time, the loan shall contain a pre-payment fee in the form of an additional service charge which will be imposed in case of non-conversion, non-delivery or early prepayment, as described below.

**B.    Additional Service Charge On Failure To Convert, Failure To Deliver, or Early Prepayment,** Notwithstanding anything in this agreement to the contrary, it is understood and agreed that the Lender will pay to the Lender an additional service charge of **2.00% of any full or partial pre-payment**, for services associated with any of the following:

(1) the failure of the loan to fully convert to amortization as described in the commitment letter and in the loan documents through the Lender's CPP Department, for any reason; or

(2) the failure of the Borrower to comply with any of the requirements of the Lender necessary to (i) complete disbursement of all of the proceeds under the Note and loan documents or (ii) to permit Lender to successfully deliver the loan for sale in the secondary mortgage market, for any reason; or

(3) the pre-payment of all or part of the outstanding loan balance before the 1st day of the 4th month after the conversion of the loan to the Amortization Period, for any reason, and from any source of funding, including refinancing with any of Lender's other products.

This service charge shall be separate from all other payments and charges due under the Note and loan documents, (e.g. extension fees, escrows and the like), and shall be required in addition thereto, if the loan does not convert to the Amortization Period, if successful delivery is not completed, or if the loan is pre-paid in whole or in part before the 1st day of the 4th month after the conversion of the loan, all as above described. **Conversion of less than the full loan amount shall be treated as a pre-payment of the amount not converted.**

**C.  TERMINATION OF FEE ON SALE OF LOAN BY LENDER** - Without limiting the rights of the Lender, it is further agreed that the fee described in this section shall terminate upon the completion of the sale of the loan to any investor by Lender. For purposes of this paragraph the completion of the sale of the loan shall be deemed to occur only when the loan has been fully transferred and the Lender has received full payment for the transfer from the Investor.

**D.  LIMITATION ON AMOUNT OF FEE.** - The amount of any fee or charge described in this paragraph shall be limited as required by state law to that amount which shall equal 6 months interest on the amount prepaid in excess of 20% of the original loan amount.

We are pleased to extend this commitment to you and look forward to your loan closing.

Please indicate your acceptance of this commitment by signing and returning the enclosed copy no later than the Commitment Acceptance Date shown in **Item 13** of the Loan Preview on page 1.

Very truly yours,

**GMAC MORTGAGE, LLC**

By: _____

The foregoing terms and conditions are agreed to and accepted this ___ day of _____, 200_.

_____ (Seal)
Borrower

_____ (Seal)
Borrower

_____ (Seal)
Borrower

_____ (Seal)
Borrower

THE ONLY ONE™ One-Close Fixed Rate Loan Commitment Letter CALIFORNIA   9
© Interstate Closing Systems. All Rights Reserved                              XLacpb

# Exhibit D

# CONSTRUCTION LOAN AGREEMENT

THIS AGREEMENT, dated        **February 29, 2008**    ,  is entered into by and between

## SIGMUND ZYGELMAN

individuals with an address at

## 1830 Bonnie Way, Sacramento, CA 95825

(the "Borrower") and **GMAC MORTGAGE, LLC** (f/k/a GMAC Mortgage Corporation) a Delaware company with an office at 100 Witmer Road, P. O. Box 963, Horsham, PA 19044-0963 (the "Lender").  In consideration of the mutual agreements herein contained, the parties hereto agree as follows.

## SPECIAL COVENANT AND WARRANTY

**No Commencement of Construction Or Delivery of Materials** Borrower hereby specially covenants and warrants that no work has commenced upon the Property (as defined below) and there shall have been no commencement of such work or storage of materials thereon at the time the Deed of Trust is recorded and insured as a first lien. Failure of Borrower or General Contractor to fully perform and meet this special covenant and warranty shall be a material default under the terms of this Agreement. Borrower also covenants and promises to file a proper **Notice of Completion** as provided under **California** law, as soon as the same may legally be filed.

**1. DEFINITIONS**    In addition to the terms defined elsewhere in this Agreement, the following terms shall have the meanings indicated for purposes of this Agreement (such meanings to be equally applicable to both the singular and plural forms of the terms defined):

"**Construction Contract**" means the contract for the construction of the Residence on the Property, and all modifications, addendums and amendments thereto, submitted with the Loan Application between Borrower and the builder or general contractor described therein (the "General Contractor").

"**Construction Completion Date**" means        **February 26, 2009**    , which shall be that date certain which is set forth in the Construction Rider to Note and Security Instrument as the date by which the construction of the Residence must be complete, (or such later date as may be mutually agreed upon in writing by Borrower and Lender, in the event that Lender shall agree to provide further time for completion, in the exercise of its sole discretion).

"**Construction Interest Period**" means that period of time that begins on the date of settlement of the loan and ends on the "Conversion Date"

"**Construction Period**" means that period of time that begins on the date of settlement of the loan and ends on the "Construction Completion Date"

"**Conversion Date**" means that date which is the first day of the month following the month in which the construction completion date occurs. In the event that the Construction Completion Date falls on the 1st day of a month, it shall also be the Conversion Date.

"**Deed of Trust**" means that Deed of Trust dated of even date herewith securing the Note and this Agreement encumbering the Property and the Residence (all of the foregoing are sometimes hereinafter collectively referred to as the "Mortgaged Premises").

"**Event of Default**" means any of the events described in Section 12.

"**Liabilities**" means Borrower's obligations to Lender under the terms of this Agreement, the Note, the Deed of Trust, the Commitment Letter and any other Loan Documents required to be delivered in connection herewith or therewith.

"**Loan**" means the amount of **$    1,190,000.00**    available to the Borrower under Section 2.

"**Loan    Documents**" means this Construction Loan Agreement, the Note, the Deed of Trust, the Commitment Letter and any other documents relating to the Loan.

"**Note**"   means Borrower's promissory note dated the date hereof in the original principal amount of the Loan.

"**Interest   Rate**" means the rate of interest established for this loan under the Note executed by the Borrower at the time of the settlement of the Loan, subject to such changes, adjustments or modifications, as set forth in such Note, if any, and as limited therein.

**ONLY ONE™** Construction Loan Agreement - **CALIFORNIA**  Page 1
© Interstate Closing Systems. All Rights Reserved                                      YDjePB

"**Property**" means that certain real property situated at,

### 6225 Gobernadores Lane, Carmichael, CA 95608

, more particularly described in the Deed of Trust.

"**Residence**" means the construction of a detached single family dwelling and related site improvements on the Property in accordance with the plans and specifications submitted to and approved by Lender (the "Plans and Specifications").

"**Schedule of Draws**" means the Schedule of Draws approved by Borrower and Lender for the purpose of making advances in order to finance the Residence. The Schedule of Draws may be modified after this date at the request of Borrower and with Lender's approval.

"**Unmatured Event of Default**" means any event or condition which, with the lapse of time or giving of notice to Borrower, or both, would constitute an Event of Default.

## 2. LOAN FUNDS AND RETAINAGE

**2.1.  Loan Funds**  Subject to the terms and conditions of this Agreement, Lender agrees to lend to Borrower up to the sum of **$     1,190,000.00**    (the "Loan"), which Loan may consist of an "Acquisition Portion" which may be advanced on the date hereof for the acquisition of the Property and a "Construction Portion" which shall be advanced pursuant to the Schedule of Draws for "work in place only" for the purpose of financing the construction of the Residence.

**2.2.  Retainage**  If the Loan exceeds 80% of the lower of the appraised value or cost of the Property and the Residence, **$    0.00**    of the Loan amount (called the "Retainage") will not be disbursed by Lender until construction of the improvements is completed as described in Section 11.4 of this Agreement, and all of the conditions for the conversion of the loan to the Amortization Period have been met. Borrower acknowledges that the Retainage will not be available to fund construction of the improvements as construction progresses, but instead Lender will disburse the Retainage after the construction is fully completed and when all of the conditions required for conversion of the Loan to the Amortization Period have been met.

## 3. NOTE EVIDENCING BORROWINGS; SECURITY

**3.1.  Note**  The Loan shall be evidenced by the Note, which Note shall be dated the date hereof and which shall comply with the terms of the final Rate Lock-In Agreement signed by the Borrower.

**3.2.  Security**  As security for the Loan, Borrower shall execute certain Loan Documents as required by Lender, including without limitation a Deed of Trust, Construction Rider to Security Instrument and Promissory Note, and all such other documents and instruments as Lender shall require, all in a form acceptable to the Lender.

## 4. INTEREST AND FEES

**4.1** Interest shall be as established under the Note and shall be fixed or adjustable in accordance with the terms of the Note, without regard to the fact that the loan provides for a Construction Period. Fees shall be those charged under the Commitment Letter and Rate Lock In Agreement accepted by the Borrower.

## 5. PAYMENTS, PREPAYMENTS AND OFFSETS

**5.1.  Place of Payment**  All payments hereunder (including payments with respect to the Note) shall be made without set-off or counterclaim and shall be made to Lender on the date due at its office at **P.O.  Box  978, Horsham, PA  19044-0978**, or at such other place as may be designated by Lender to Borrower in writing. Any payment not received within fifteen **(15)** calendar days after its due date shall bear a late charge equal to        **5.000** % percent of the overdue payment.

**5.2.  Prepayments**  Unless otherwise agreed in writing, Borrower may prepay the principal of the Note in whole or in part without penalty; provided, however, any prepayment of the principal of the Note shall include accrued interest to the date of the prepayment on the principal amount being prepaid. Any partial prepayment of principal shall not affect the timing of subsequent payments due under the Note.

**5.3.  Offsets**  In addition to and not in limitation of all rights of offset that Lender may have under applicable law, Lender shall, if permitted by applicable law, upon the occurrence of any Event of Default or any Unmatured Event of Default, have the right to appropriate and apply to the payment of the Note any moneys of Borrower then or thereafter held by Lender.

**6. REPRESENTATIONS AND WARRANTIES** To induce Lender to make the Loan, Borrower represents and warrants that;

**6.1. Litigation** No litigation or arbitration proceedings are pending or threatened against Borrower, the results of which might materially and adversely affect Borrower's financial condition or the construction of the Residence.

**6.2. Compliance** The Borrower and the Mortgaged Premises are in compliance with all applicable statutes, ordinances and governmental rules and regulations and are not in default with any order, injunction, decree, or demand of any court or any governmental authority.

**6.3. Property** The Borrower is or, as of the date hereof, will be the fee simple owner of the Property and the Residence, free and clear of all encumbrances, mortgages, judgment liens, security deeds, deeds of trust and any other liens.

**6.4. Plans and Specifications** The Plans and Specifications, copies of which have been submitted to and approved by the Lender, are identical in all respects to those on which were based all approvals from governmental and quasi-governmental authorities having jurisdiction over the Property and the Residence.

**7. BORROWER'S COVENANTS** Until all Liabilities are paid in full, the Borrower agrees that it will:

**7.1. Commencement and Completion of Construction** Cause the General Contractor to commence the construction of the Residence in strict compliance with the Plans and Specifications within ten (10) days of the execution of this Agreement or as soon thereafter as weather permits and to proceed diligently, employing sufficient workmen and supplying sufficient materials for that purpose so that the Residence shall be completed no later than the Construction Completion Date, which Construction Completion Date is of the essence of this Agreement. For purposes of this Agreement, the construction of the Residence shall be deemed completed only when an inspector approved by Lender shall have certified to Lender that (i) the physical construction of the Residence has been completed in strict compliance with the Plans and Specifications, (ii) all utilities serving the Residence have been connected and are operating, (iii) a final survey shows that all improvements lie entirely within the boundary and setback lines of the Property and do not encroach upon any easements or rights-of-way on the Property, (iv) a final certificate of occupancy (or its equivalent) shall have been issued for the Residence by the governmental authorities having jurisdiction over the Residence which confirms that construction of the Residence has been completed in accordance with all applicable requirements. If a certificate of occupancy is not required by local law, evidence that the Residence has passed all inspections and received all approvals which are conditions precedent to occupancy of the Residence.

**7.2. Compliance with Permits** Comply with all governmental regulations regarding the posting or display of building permits, inspector signoffs, the scheduling of inspections, the payment of inspection fees and obtaining receipts therefor. The Borrower shall supply such evidence of the receipt of signoffs, payment of fees and compliance with building codes as shall be required by Lender.

**7.3. Access to Property** Grant Lender full and free access to the Property and the Residence and all drawings and plans pertinent to the Property and the Residence at any and all reasonable times.

**7.4. Notice of Liens or Claims and Stop Notices** Within 24 hours of receipt, deliver to Lender written notice and copies of any lien or claim, whether recorded or unrecorded, which affects the Property, and any notice or claim seeking personal liability given to Borrower or the General Contractor, as well as any **Notice To Owner, "20 Day Notice", Claim of Lien, Stop Notice, Bonded Stop Notice, or Lis Pendens** or any other notice or claim under the laws of the **State of California**. If any claim of mechanics', material men's or other lien is recorded which affects the Property or the Residence, or the Loan proceeds, Borrower shall, within ten (10) days after such recording or service, (i) pay and discharge the same or (ii) provide Lender with other assurance which Lender, in its sole discretion, deems to be satisfactory for the payment of such lien. If Borrower fails to remove any lien on the Residence or fails to provide satisfactory security in lieu of removal thereof, Lender may pay such lien, or may contest the validity thereof, paying all costs and expenses of contesting the same, including attorneys' fees, and Borrower shall promptly reimburse Lender for all payments made and costs and expenses incurred by Lender in doing so. Lender shall not be required to make any further disbursements of Loan proceeds until such lien claim has been insured against by the title insurance company issuing the Title Policy (as hereinafter defined), to the satisfaction of the Lender. If Lender receives a notice from a judgment creditor, Lender shall not be required to make any further disbursements of Loan proceeds until the judgment described in such notice is resolved to Lender's satisfaction in accordance with applicable law..

**7.5. Use of Loan Proceeds** Use the proceeds of the Loan solely and exclusively for the payment of actual costs incurred by Borrower in connection with the acquisition and/or construction of the Residence and in accordance with the Plans and Specifications.

**ONLY ONE™** Construction Loan Agreement - **CALIFORNIA** Page 3
© Interstate Closing Systems, All Rights Reserved          ▮▮▮▮          YDjePB

**7.6. Compliance with Mechanics' Lien and Other Laws** Comply with all applicable laws, ordinances, rules, regulations and orders of all governmental authorities or courts acting in or for the locality in which the Property is situated including, without limitation, laws governing the construction of the Residence and mechanics' lien laws, so that the lien of the Deed of Trust, Mortgage or Security Instrument shall at all times be prior to any mechanics' or materialmen's liens arising from construction of the Residence. Borrower shall pay all taxes, assessments and fees applicable to the Property and the Residence.

**7.7. Changes to Plans** Not make material change, amendment or modification of the Plans and Specifications without the prior written approval of Lender; provided, however, that Lender hereby approves any change orders authorized in writing by Borrower where, with respect to each such change order, all of the following conditions are satisfied: (i) Lender receives prior written notice thereof; (ii) the change order does not require further approval from the governmental authority having jurisdiction over the Property and the Residence; (iii) in the opinion of Lender, such changes do not materially diminish the value of the Residence; (iv) additional costs relating to such change order shall be deposited by Borrower with Lender as Borrower's Required Equity Contribution (as hereafter defined) in accordance with the procedures set forth in Section 11.1, unless Lender determines in its sole discretion that there are sufficient Loan proceeds remaining to pay the cost of the change order; and (v) there exists no Event of Default or Unmatured Event of Default. No consent by Lender to any such change order shall be deemed to increase the amount of the Loan or to extend the Construction Completion Date.

**7.8. Non-Conformity of Construction** Promptly after receipt of notice from Lender that construction does not conform with the Plans and Specifications or all applicable laws, rules and regulations, proceed to correct the same to Lender's satisfaction. All costs of corrections shall be paid by Borrower and not out of Loan proceeds. In the event of any dispute between Borrower and Lender with respect to the interpretation of the Plans and Specifications, the decision of Lender shall be binding.

**7.9. Continuance of Work** Cause the General Contractor to proceed diligently with construction and to not discontinue work on the Residence for a period of more than 15 consecutive days or 30 days in the aggregate for any reason other than strikes, lockouts, labor disputes, fire, unavoidable casualty, weather or acts of God.

**7.10. Insolvency of Borrower** Not become insolvent, however evidenced, or file or permit the filing against Borrower of a petition of bankruptcy or a petition to take advantage of any insolvency act including, without limitation, a petition for reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any bankruptcy or insolvency law.

**7.11. Additional Financing** To the extent that such limitation is permitted by law, not incur any additional indebtedness secured by any lien or security instrument on the Property or Residence.

**8. CONDITIONS PRECEDENT TO ALL CONSTRUCTION ADVANCES** The obligation of Lender to make any advances of the proceeds of the Loan for construction is subject to the satisfaction of the following conditions precedent:

**8.1. Default** No Event of Default or Unmatured Event of Default shall have occurred and be continuing.

**8.2. Representations and Warranties** Each representation or warranty made by Borrower in Section 6 hereof and in the Deed of Trust shall continue to be true and correct as though made on the date of the advance, and each representation, warranty, schedule, statement, report, notice, writing and certification previously furnished by Borrower to Lender shall be true in all material respects on the date as of which the facts set forth therein were stated or certified.

**8.3. Certification** Borrower's request for any advance shall be deemed a certification as to the matters set forth in Section 8.1 and 8.2.

**8.4. Fees** Borrower shall have paid the inspection fee.

**8.5. Title Policy Endorsements** If required by Lender, Lender shall have received a current notice of title continuation and/or endorsement to the Title Policy, which notice or endorsement shall (i) increase the coverage of the Title Policy to the total amount of the Loan outstanding after the requested advance; (ii) confirm that since the last preceding endorsement received by Lender there has been no change in the state of the title approved by the Lender; and (iii) contain such affirmative assurances as the Lender shall require.

**8.6. Waivers of Liens, Releases or Receipts** If required by Lender, Borrower shall have procured and delivered to Lender, in form satisfactory to it, the following: (i) unconditional lien waivers, releases or receipts from each contractor, subcontractor and supplier of materials and services with respect to whom any disbursement has been made by Lender, confirming each such person's receipt of its proper share of each such previous disbursement and its release of any further claim to the extent thereof; (ii) conditional lien waivers, releases or receipts from each contractor, subcontractor and supplier of materials and services who has provided labor or materials and for whom payment from an advance is being requested, confirming that upon receipt of the funds requested any lien or claim for payment relating thereto shall be released; and/or (iii) lien waivers from each

contractor, subcontractor and supplier of materials and services who has delivered a notice of intention to claim a lien, or any other preliminary lien notice.

**8.7.   Equity   Contribution**  Borrower shall make the equity contribution which may become payable under Section 11.1 hereof.

**8.8.   Timely   Completion   of   Residence**  Lender shall be of the opinion that the Residence can be completed by the Construction Completion Date.

**8.9.   Recertification of Survey**  Upon completion of the foundation of the Residence, and prior to the Lender's advance of funds for any improvements on the Property, and at such other times as may be required by Lender, Borrower shall have caused the survey to be updated, recertified and delivered to Lender.

**8.10.   Amounts   Due**  If requested by Lender, Lender shall have been furnished with a certification by Borrower, in form and substance satisfactory to Lender, setting forth the names, addresses, amounts due or to become due, and the amounts previously paid to each subcontractor, person, firm or corporation furnishing materials or labor for construction of the Residence.

**8.11.   Other   Information**  Borrower shall have furnished to Lender such other supporting documents and information as Lender or the company issuing the Title Policy shall require.

**8.12.  Priority of Future Advances**  Lender shall be satisfied that future advances of the Loan shall continue to be secured by a first and valid lien against the Property and the Residence. If any events shall occur which shall come to the attention of the Lender which in Lender's judgment shall in any way jeopardize such priority, Lender shall not be required to make any further disbursements of Loan proceeds, unless and until such circumstances or events shall be resolved to the satisfaction of Lender.

**9. CONDITIONS PRECEDENT TO INITIAL ADVANCE**  The obligation of Lender to make the initial advance hereunder is subject to the satisfaction of the condition precedent, in addition to the applicable conditions precedent set forth in Section 8 above, that Borrower shall have delivered to Lender:

**9.1.  Note**  The duly executed Note.

**9.2.  Deed of Trust**  The duly executed and recorded Deed of Trust.

**9.3.   Loan   Documents**  All other Loan Documents required to be delivered as security for this Loan pursuant to the terms of this Agreement.

**9.4.   Title   Insurance   Policy**  An ALTA extended coverage title insurance policy issued by a title insurance company acceptable to Lender (the "Title Policy"), in the amount of the Loan and insuring the Deed of Trust to be a first and valid lien subject only to such exceptions and conditions of title as Lender may approve prior to the initial advance, with the premiums for such insurance paid by Borrower.

**9.5.   Property,   Liability   and   Other   Insurance**  (a) A certificate of insurance evidencing that the General Contractor has procured insurance policies covering workmen's compensation, contingent liability and public liability, protecting Borrower, Lender and the General Contractor against any liability for loss or damage to persons or property occurring during construction of the Residence or arising therefrom.  (b) A certificate of insurance evidencing a policy of builder's all risk insurance with extended coverage (with a standard mortgagee clause in favor of Lender), in an amount and with a company satisfactory to Lender, and containing a provision allowing the insured to complete the work provided for hereunder and in the Construction Contract and covering the building materials on the Property during construction. (c) A certificate of insurance evidencing a policy of flood insurance or evidence satisfactory to Lender that the Property does not lie within an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area.  The aforesaid policies shall contain the agreement of the insurer to give not less than 30 days' notice to the Lender prior to cancellation or material change of the policy.

**9.6.  Construction Contract**  An executed copy of the Construction Contract and a construction cost estimate giving the amount of all material and labor costs and certified by Borrower to be true and correct in all respects.

**9.7.  Contractor's   Consent**  The General Contractors consent to the assignment of the Construction Contract and of the Plans and Specifications.

**9.8.   Permits   and   Approvals**  Evidence satisfactory to Lender that all permits and/or approvals, necessary for the construction of the Residence, including, without limitation, the building permit and zoning and subdivision approvals, have been obtained, are in full force and effect and will not expire prior to the Termination Date.

**9.9.   Survey**  A survey (acceptable in all respects and certified to Lender and to the title insurance company) by a surveyor acceptable to Lender showing that the Residence will be constructed entirely on the Property and will not encroach upon or overhang any easement or right-of-way upon the Property or adjoining land or violate setback or other restrictions.

**9.10.** **Architect's Letter** If required by Lender, a letter of Borrower's architect in the form delivered by Lender to Borrower.

**9.11.** **Utility Services** Borrower shall have provided to Lender satisfactory evidence that all utility services necessary for the construction of the Residence and the use and operation thereof after completion are or will be available at the proper time to service the Residence.

## 10. CONDITIONS PRECEDENT TO FINAL ADVANCE AND CONVERSION OF THE LOAN TO THE AMORTIZATION PERIOD

The obligation of Lender to make the final advance hereunder is subject to the satisfaction of the conditions precedent, in addition to the applicable conditions precedent set forth in Section 8 hereof, that Borrower has delivered the following:

**10.1.** **Completion of Residence** Lender shall have received evidence satisfactory to it that the Residence has been completed in accordance with the Plans and Specifications.

**10.2.** **Releases** Lender shall have received unconditional lien releases on final payment from each contractor, subcontractor and supplier of materials and services relating to the Residence or the Property.

**10.3.** **Certificate of Occupancy** A certificate of occupancy, (or final building inspection report) with respect to the Residence shall have been issued to Borrower, if required by any governmental authority.

**10.4.** **Satisfaction of Loan Specific Conditions** All such items, documents and materials as shall have been identified in the Commitment Letter and in the Loan Specific Conditions required to be satisfied before final disbursement or before conversion of the loan to the amortization period, as the case may be.

## 11. DISBURSEMENTS; ADVANCES OF THE LOAN

**11.1.** **Equity Contribution** If required by Lender, on the date hereof, Borrower shall deposit with Lender in currently available funds the amount, if any, set forth under the heading "Equity Payment to Lender" in the Schedule of Draws. Such amount shall be held by Lender until the first draw is made pursuant to the Schedule of Draws and shall be advanced ahead of any Loan proceeds pursuant to Section 11.3. Lender shall have no obligation to pay interest to Borrower for sums so held. The aforesaid amount together with any sums due under the next sentence of this Section 11.1 is hereinafter referred to as the "Required Equity Contribution." If at any time during the term of the Loan it is determined by Lender in its sole discretion that the total cost to complete the Residence exceeds the proceeds of the Loan yet to be disbursed by Lender, Borrower shall deposit with Lender an amount equal to such difference prior to any further advances of the Loan proceeds.

**11.2.** **Initial Advance** The initial advance, if any, shall be made on the date hereof in accordance with the provisions of applicable law, and shall be in the amount set forth under the heading "Initial Advance" in the Schedule of Draws. The initial advance shall be applied to the purchase price of the Property and/or to the satisfaction of any liens against the Property, as specified in the Schedule of Draws.

**11.3.** **Submission of Requests** All advances of the construction portion of the Loan will be made as the construction progresses for "WORK IN PLACE ONLY" upon written request for payment (the "Requests") by Borrower submitted to Lender and pursuant to the Schedule of Draws. The Requests shall be made in a form approved by Lender. Such Requests shall be for amounts not exceeding the amount set forth in the Schedule of Draws for each draw. IF THE PROGRESS OF THE WORK IN PLACE IS NOT CONSISTENT WITH THE SCHEDULE OF DRAWS, THE LENDER SHALL ADVANCE ONLY THE AMOUNT THAT IT DETERMINES IS APPROPRIATE BASED ON THE INSPECTION OF THE PROGRESS OF THE WORK. Borrower will pay the cost of the inspections. Provided that, in Lender's discretion, all conditions required to be met under this Agreement prior to each advance have been met, on or before three (3) business days after receipt of the Request, Lender will disburse the amount requested.

**11.4.** **Payment of Retainage** Retainage (if any) or, if no retainage exists, then the final disbursement shall not be disbursed by Lender until (i) Borrower submits to Lender a final Request, (ii) Borrower and the General Contractor shall have executed and delivered final affidavits certifying that all labor, materials and subcontractors have been paid in full, there are no liens existing against the Property, and no one has a right to claim a lien against the Property, (iii) final lien releases shall have been executed by all subcontractors, materialmen and suppliers, (iv) all conditions necessary for the construction of the Residence are deemed completed under Section 7.1 and all other conditions in this Agreement have been fulfilled, and (v) all terms and conditions necessary for the conversion of the loan to the Amortization Period have been fulfilled.

**11.5.** **Payees** All advances (other than the initial advance, if any, made pursuant to Section 11.2) may be made directly by Lender to Borrower or indirectly through counsel, the settlement agent or a title company, as Lender may determine in its sole discretion. All such advances shall be made by check or other appropriate credit transfer to the order of Borrower or, in Lender's sole discretion, individually to or jointly with Borrower and the General Contractor or any subcontractor, materialman, supplier or other person who is claiming a lien to release the

Property from any potential or recorded mechanic's or materialmen's lien, provided Lender shall first give Borrower notice of its intention to obtain such release with the Loan proceeds. All payments to persons other than Borrower shall be deemed made for the use and benefit of Borrower with the same force and effect as if disbursed or advanced directly to Borrower.

**11.6. Inspections** All inspection services, if any, by Lender, its officers, agents or employees, are or shall be rendered solely for the benefit of Lender, and said inspections are not made for the benefit of, and shall not be construed to have been made for the benefit of Borrower, any of its successors or assigns, or any subsequent owner or occupant of the Property.

## 12. EVENTS OF DEFAULT AND REMEDIES

**12.1. Events of Default** Each of the following shall constitute an Event of Default under this Agreement.

**(a) Non-Payment** Default in the payment of principal of, or interest on, the Note when due, or any fee hereunder.

**(b) Agreements** Default in the performance of any of Borrower's obligations and agreements herein set forth (and not constituting an Event of Default under any other subsection of this Section 12.1) and continuance of such default for 30 days after written notice thereof to Borrower from Lender.

**(c) Covenants** Default in the performance of any of Borrower's covenants or obligations set forth in Sections 7.9, 7.10 or 8.2 herein.

**(d) Deed of Trust and Other Loan Documents** Default in the performance of any of Borrower's obligations or agreements set forth in the Deed of Trust or any other Loan Documents, provided such default is not cured within the applicable grace period set forth therein.

**(e) Construction Completion Date** Lender is advised by Borrower or the General Contractor that the Residence cannot be completed by the Construction Completion Date, or upon inspection of the Property and the status of completion of the construction of the Residence, reasonably determines that such completion shall not occur as scheduled.

**(f) Plans and Specifications** If at any time Lender determines that the Residence is not being constructed in strict compliance with the Plans and Specifications.

**(g) Lien** The filing of any lien against the Property or Residence, if the claim of lien continues for ten (10) days without discharge, satisfaction or the making of provision for payment to the satisfaction of Lender.

**(h) Encroachments** Any portion of the Residence shall encroach upon the boundary lines or setback lines of the Property.

**12.2. Remedies** If any Event of Default described in Section 12.1 shall occur and be continuing, Lender may:

**(a) Cessation of Advances** Cease making any further disbursements or advances

**(b) Completion of Residence** If permitted under the circumstances and applicable law, enter upon the Property and take possession thereof, together with the Residence in the course of construction and all materials and supplies located thereon, and proceed either in the name of Lender or in the name of Borrower as attorney-in-fact of Borrower (as Lender shall elect), to complete the Residence, or protect the Residence from depreciation, damage or waste at the cost and expense of Borrower. In connection therewith, Lender may engage builders, contractors, architects, engineers and others for the purpose of furnishing labor, materials and equipment in connection with any construction of the Residence, and may pay, settle or compromise any bills or claims which have been or may be incurred in connection with the Residence, whether or not liens have been filed against the Property or the Residence for such bills or claims. If Lender elects to complete or cause the Residence to be so completed, it shall have the right at any time to discontinue any work without liability. If Lender elects to complete or cause the Residence to be so completed, it shall not assume any liability to Borrower or any other person for completing the Residence or for the manner or quality of construction of the Residence, and Borrower expressly waives any such liability. All funds advanced or sums expended in the reasonable exercise of Lender's judgment that the same are needed to complete the Residence or to protect Lender's security are to be deemed obligatory advances hereunder, shall bear interest at the rate set forth in the Note and shall be considered part of the indebtedness evidenced by the Note and secured by the Deed of Trust.

**(c) Other Remedies** Institute appropriate proceedings to enforce the performance of this Agreement; accelerate maturity of the Note and/or the Liabilities and demand payment of all sums due under the Note and/or the Liabilities; invoke the power of sale upon the Property and the Residence under the Deed of Trust; and exercise any other right or remedy which it has under the Note or the Deed of Trust, or which is otherwise available at law or in equity or by statute.

**12.3. Repayment of Funds Advanced** If Lender spends its funds in exercising or enforcing any of its rights or remedies under the Loan Documents, the amount of funds spent shall be payable to Lender upon demand, together with interest at the rate applicable to the unpaid principal balance of the Note, from the date such funds were spent until repaid. Such amounts shall be deemed secured by the Deed of Trust and other Loan Documents.

**13. LIMITATION OF LENDER'S LIABILITY** Borrower has selected the General Contractor and all others furnishing services or materials for the construction of the Residence, and Lender shall not have any responsibility for their selection or for the quality of their materials or workmanship, it being understood and agreed that Lender's sole function is that of lender and the only consideration passing from Lender to Borrower is the Loan proceeds. Neither Borrower nor any other person shall have any right to rely on any procedures required by Lender herein (including but not limited to review of the Plans and Specifications, the cost breakdown of the Residence or inspection of the construction of the Residence), such procedures being solely for the protection of Lender as lender.

**14. HAZARDOUS MATERIALS**
        **14.1. Definition** "Hazardous Materials" means any flammable explosives, radioactive materials, hazardous wastes, petroleum products, toxic chemicals and other substances and related materials, including but not limited to those substances defined as "hazardous substances", "hazardous materials", or "toxic substances" in any federal, state or local laws, ordinances or regulations relating to industrial hygiene, environmental protection or the use, analysis, generation, manufacture, storage, disposal or transportation of any of the foregoing substances, including without limitation the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. § 9601, et seq.; the Hazardous Materials Transportation Act, 49 U.S.C. §1801, et seq.; the Resource Conservation and Recovery Act, 42 U.S.C. § 6901, et seq.; and also including those substances defined as "hazardous wastes" in § 25117 of the California Health & Safety Code or as "hazardous substances" in § 25316 of the California Health & Safety Code; in the regulations adopted and publications promulgated pursuant to all such federal and state laws; and those chemicals to which reference is made in the Safe Drinking Water and Toxic Enforcement Act of 1986, § 25249.5, et seq. of the California Health & Safety Code.
        **14.2. Borrower's Representation and-Warranty** Before signing this Agreement, Borrower researched and inquired into the previous uses and ownership of the Property. Based on that due diligence, Borrower represents and warrants that to the best of its knowledge, no Hazardous Materials have been discharged, disposed of or released or otherwise exist in, on or under the Property, except as Borrower has disclosed to Lender in writing. Any breach of this representation and warranty constitutes concealment and intentional fraud.
        **14.3. Borrower's Indemnity** Borrower agrees to indemnify and hold Lender harmless from and against all liabilities, claims, actions, foreseeable and unforeseeable consequential damages, costs and expenses (including sums paid in settlement of claims and all consultant, expert and legal fees and expenses of Lender's counsel) or loss directly or indirectly arising out of or resulting from any Hazardous Materials being present at any time, whether before, during or after construction, in or around any part of the Property, or in the soil, groundwater or soil vapor on or under the Property, including those incurred in connection with any investigation of site conditions or any cleanup, remediation, removal or restoration work, or any resulting damages or injuries to the person or property of any third parties or to any natural resources. Upon demand by Lender, Borrower shall defend any investigation, action or proceeding alleging the presence of any Hazardous Materials in any such location, which affects the property or which is brought or commenced against Lender, whether alone or together with Borrower or any other person, all at Borrower's own cost and by counsel to be approved by Lender in the exercise of its reasonable judgment. In the alternative, Lender may elect to conduct its own defense at the expense of Borrower.
        **14.4. Compliance With Applicable Laws and Regulations** Borrower has complied, and shall comply and cause all occupants of the Property to comply, with all laws, regulations and ordinances governing or relating to Hazardous Materials which apply or pertain to the Property or the Residence or any uses thereon or therein. Borrower acknowledges that Hazardous Materials may permanently and materially impair the value and use of real property and that breach of this covenant constitutes willful misconduct and intentional waste to the Property and the Residence.
        **14.5. Notices to Lender** Until full repayment of the Loan, Borrower shall promptly notify Lender if it knows, suspects or believes that there may be any Hazardous Materials in or around the Property or the Residence, or that Borrower, the Property or the Residence may be subject to any threatened or pending investigation by any governmental authority under any governmental requirement or ordinance pertaining to Hazardous Materials. Any breach of this notice requirement shall constitute concealment and intentional fraud.
        **14.6. Site Visits, Observations and Testing** Lender, its agents and representatives shall have the right at any reasonable time to enter upon and visit the Property and the Residence for the purposes of observing the Property, taking and removing soils or groundwater samples, and conducting tests on any part of the Property or the

Residence. Lender is under no duty, however, to visit or observe the Property or to conduct tests, and any such acts by Lender shall be solely for the purpose of protecting Lender's security and preserving Lender's rights under the Loan Documents. No site visit, observation or testing by Lender shall result in a waiver of any default by Borrower or impose any liability on Lender. In no event shall any site visit, observation or testing by Lender be a representation that Hazardous Materials are or are not present in, on or under the Property or the Residence, or that there has been or shall be compliance with any law, regulation or ordinance pertaining to Hazardous Materials or any other applicable governmental requirement. Neither Borrower nor any other party is entitled to rely on any site visit, observation or testing by Lender. Lender owes no duty of care to protect Borrower or any other party against or to inform Borrower or any other party of, any Hazardous Materials or any other adverse condition affecting the Property or the Residence. Lender shall not be obligated to disclose to Borrower or any other party any report or findings made as the result of, or in connection with, any site visit, observation or testing by Lender. In each instance Lender shall give Borrower reasonable notice before entering the Property or the Residence. Lender shall make reasonable efforts to avoid interfering with Borrower's use of the Property and the Residence in exercising any rights provided in this Paragraph.

**14.7. Exception for Ordinary and Reasonable Use of Hazardous Materials Permitted by Law** Nothing in this Article shall preclude Borrower or Borrower's contractors, subcontractors, tenants and agents from using materials that may be classified as Hazardous Materials, so long as such use is permitted by applicable law and is of such types and in such quantities as is ordinary and reasonable in the construction of the Residence.

### 15. GENERAL

**15.1.    Notice**  Any notice hereunder to Borrower or Lender shall be in writing and, if mailed, shall be deemed to be given when sent by registered or certified mail, postage prepaid, and addressed to Borrower or Lender at the address set forth below, or at such other address as Borrower or Lender may, by written notice, designate for purposes of notice hereunder.

**ATTN: Audrey Norfleet
GMAC Mortgage, LLC
Construction Lending Division
1100 Virginia Drive
Fort Washington, PA  19034**

To Borrower at:

**1830 Bonnie Way, Sacramento, CA 95825**

**15.2.    Severability**  Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

**15.3.    Governing Law**  The Loan Documents shall be governed by and construed in accordance with the laws of the State of California, except to the extent preempted by Federal law. Borrower hereby consents to the jurisdiction of any Federal or State court within the State of California and also consents to service of process by any means authorized by State or Federal law.

**15.4.    Successors**  This Agreement shall be binding upon Borrower and Lender and their respective heirs, administrators, successors and assigns, and shall inure to the benefit of Borrower and Lender and the successors and assigns of Lender. Borrower shall not assign its rights or duties hereunder without the consent of Lender.

**15.5.    Conflicts**  In the event of any conflict between the provisions of this Agreement and the provisions of any other loan documents, except the Note, Construction Rider and Deed of Trust, the provisions of this Agreement shall prevail.

**15.6.    Further Assurances**  Borrower agrees, upon demand of Lender forthwith to execute any and all further documents, instruments, and assurances as Lender, in its sole discretion, believes necessary or desirable to perfect any instrument intended as security for the Loan or to correct any errors or omissions, or otherwise necessary or desirable to carry out the intent of this Agreement.

**15.7.    Waivers**  Lender may at any time and from time to time waive any one or more of the conditions contained herein, but any such waiver shall be deemed to be made in pursuance hereof and not in modification thereof, and any such waiver in any instance or under any particular circumstance shall not be considered a waiver of such condition in any other instance or any other circumstance.

**15.8.    Indemnification**  Borrower shall indemnify, defend and hold Lender harmless from any and all loss or damages of whatsoever kind and from any suits, claims, or demands, including Lender's reasonable legal fees

**ONLY ONE™** Construction Loan Agreement - **CALIFORNIA**  Page 9
© Interstate Closing Systems, All Rights Reserved                                          YDjePB

and expenses and appellate legal fees, on account of any matter or thing arising out of this Agreement or the Residence or in connection therewith or arising from any defective workmanship or materials occurring in construction of the Residence. The provisions of this Section will survive the termination of this Agreement and the repayment of the Loan.

**15.9. No Third Party Beneficiaries** This Agreement is made for the sole protection and benefit of Borrower and Lender, and no other person shall be deemed to have any privity of contract hereunder nor any right of action of any kind hereon. Without limiting the generality of the foregoing, advances made directly to any contractor, subcontractor or supplier of labor and materials, shall not be deemed a recognition by Lender of a third party beneficiary status to any such party or entity.

**15.10. Lender's Agents** Lender may designate agents or independent contractors to exercise any of Lender's rights under the Loan Documents. Any reference to Lender in any of the Loan Documents shall include Lender's employees, agents or independent contractors.

**15.11. Integration and Interpretation** The Loan Documents contain or expressly incorporate by reference the entire agreement of the parties with respect to the matters contemplated herein and supersede all prior negotiations. The Loan Documents shall not be modified except by written instrument executed by Borrower and Lender. Any reference to the Property or Residence in any of the Loan Documents shall include all or any portion thereof. Any reference to the Loan Documents themselves in any of the Loan Documents shall include all amendments, renewals or extensions approved by Lender.

**15.12. Time of the Essence** Time is hereby declared to be of the essence of this Agreement and of every part hereof.

IN WITNESS WHEREOF, Borrower and Lender have executed this Agreement under seal on the date first written above.

**BORROWER(S):**

_____ {Seal}
SIGMUND ZYGELMAN

_____ {Seal}

_____ {Seal}

_____ {Seal}


**GMAC MORTGAGE, LLC**

_____ {Seal}
By:
Title:

**<u>Exhibit E</u>**

NOTE

# NOTE

| | | |
|---|---|---|
| **February 29, 2008** | **Fair Oaks** | **California** |
| Date | City | State |

**6225 Gobernadores Lane, Carmichael, CA 95608**
(Property Address)

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $   **1,190,000.00**   (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **GMAC MORTGAGE, LLC** (f/k/a GMAC Mortgage Corporation). I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   **7.750**   %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   **1st**   day of each month beginning on   **April 1, 2008**   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   **March 1, 2038**   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at

**P.O. Box 978, Horsham, PA 19044-0978**

, or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $   **8,320.65**   .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**MULTISTATE FIXED RATE NOTE** - Single Family - Fannie Mae/Freddie Mac Uniform Instrument    Form 3200  1/01
Page 1 of 3    .                                                                          Initials:

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES.

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property, or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac Uniform Instrument     Form 3200  1/01
Page 2 of 3                                                                                  Initials:

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ _____(Seal)
SIGMUND ZYGELMAN                                -(Borrower)

_____ _____(Seal)
                                                -(Borrower)

_____ _____(Seal)
                                                -(Borrower)

_____ _____(Seal)
                                                -(Borrower)

                                        *(Sign Original Only)*

**MULTISTATE FIXED RATE NOTE** - Single Family - Fannie Mae/Freddie Mac Uniform Instrument    Form 3200  1/01
Page 3 of 3                                                                                    Initials:

## CONSTRUCTION RIDER TO NOTE AND
## SECURITY INSTRUMENT

### (ONLY ONE™ ONE-CLOSE FIXED RATE)

LENDER - As used herein the term Lender shall mean

## GMAC MORTGAGE, LLC
(f/k/a GMAC Mortgage Corporation)

or any assignee, transferee or successor in interest thereto.  As used herein the words "I", "me" or "my" shall mean any person who signs below as Borrower.

This Rider is a loan modification agreement which changes the terms of the promissory Note and Security Instrument (Mortgage, Deed of Trust or Security Deed) which I have signed which are dated     **February 29, 2008**     in regard to the property located at

### 6225 Gobernadores Lane, Carmichael, CA 95608

("Property").  I agree that the covenants, terms and provisions set forth in this Rider will supercede and replace any inconsistent terms, covenant or provisions therein, where the two are different.

# CONSTRUCTION TRUST DEED

**CONSTRUCTION LOAN - FUTURE ADVANCES.** THE ADDITION OF THIS RIDER TO THE NOTE AND DEED OF TRUST IS INTENDED AND AGREED TO MAKE IT A CONSTRUCTION LOAN TO SECURE FUTURE ADVANCES WITHIN THE MEANING OF THE LAWS OF THE STATE OF CALIFORNIA, INCLUDING WITHOUT LIMITATION, CALIFORNIA CIVIL CODE § 3097.  SUCH FUTURE ADVANCES SHALL BE DEEMED "OBLIGATORY" ON LENDER PROVIDED THAT THE BORROWER SHALL FULLY PERFORM ALL OF BORROWERS OBLIGATIONS UNDER THE NOTE, DEED OF TRUST, CONSTRUCTION LOAN AGREEMENT AND LOAN DOCUMENTS.    ALL SUMS ADVANCED HEREUNDER SHALL BE DEEMED TO HAVE THE SAME PRIORITY AS THE ORIGINAL INDEBTEDNESS.

BY SIGNING THIS RIDER, THE BORROWER WARRANTS AND ASSURES THAT **NO CONSTRUCTION ACTIVITY OF ANY KIND HAS COMMENCED ON THE PROPERTY** DESCRIBED HEREIN, AND THE BORROWER FURTHER EXPRESSLY WARRANTS AND AGREES THAT NO CONSTRUCTION ACTIVITY OF ANY KIND SHALL COMMENCE UNTIL AFTER THE BORROWER IS NOTIFIED OF THE RECORDING OF THE DEED OF TRUST AS A FIRST LIEN ON THE PROPERTY. COMMENCEMENT OF WORK BEFORE SUCH RECORDING CAN SUBJECT THE PROPERTY OF THE OWNER TO MECHANICS LIENS AND CAN BE A DEFAULT UNDER THE LOAN DOCUMENTS.

### 1.  CONSTRUCTION LOAN
The loan is to be advanced in installments to finance construction, which I promise to complete on or before     **February 26, 2009**     , referred to as the **"CONSTRUCTION  COMPLETION  DATE"**, in strict compliance with the project Plans and Specifications.
If, in the Lender's opinion, the construction of the project will not be completed by     **February 26, 2009**     , it shall be the basis for a default, and Lender shall have the right to stop making advances of money even before     **February 26, 2009**     ; and to accelerate the loan and make all sums outstanding due and payable at once, together with interest, fees, costs of collection and all other charges, including reasonable attorneys' fees.
The Lender has agreed to make the loan herein described to be paid over to me in installments as the work is completed and will advance funds only FOR WORK IN PLACE, based upon inspection.
The Lender is obligated to advance the full amount of the loan $     **1,190,000.00**     provided that I have fully performed and met all of the conditions and requirements which I have promised to undertake in the

**ONLY ONE™** One-Close Fixed Rate Construction / Permanent Loan Program **CALIFORNIA**
© Interstate Closing Systems, All Rights Reserved     Page 1                                YDEpb

Construction Loan Agreement, Promissory Note, Security Agreement, Commitment Letter and Loan Documents; and provided that I am not in default thereunder.

## 2. INSPECTION FOR STATUS OF COMPLETION ONLY

The Lender shall have the right to inspect the premises so as to ascertain the status of completion and the progress of the construction of improvements. The sole purpose for such inspection is to determine the approximate amount and value of the work which has been done, and to advance funds for such work in place. Such inspections shall not necessarily relate to the quality of the construction and as Borrower, I will not rely on the Lender's inspection for any purpose whatsoever. As Borrower, I will be solely responsible for the progress and quality of construction.

## 3. MODIFICATION OF THE OBLIGATION TO REPAY LOAN

1. Notwithstanding the terms of Paragraph 3 of the Note that I signed, I will not begin repaying the principal of my loan on      **April 1, 2008**     .
2. Instead, I will pay interest only until   **March 1, 2009**  referred to as the "**CONVERSION DATE**".
3. I will make my first payment of principal and interest on   **April 1, 2009**   , in the amount of **$8,398.07**, unless I am advised otherwise by the Lender in writing.

## 4. IF I DO NOT COMPLETE CONSTRUCTION WHEN I SHOULD

If I have not completed all construction or repairs, and met all of my obligations regarding the same by **February 26, 2009**   , then in addition to its other rights under the loan documents, the Lender has the right to do any or all of the following:

1. declare a default and exercise all of its rights reserved in the loan documents to act in case of default; or
2. agree to allow more time for construction to be completed and to disburse any remaining loan funds into a Delayed Completion Holdback Account which shall then begin to accrue interest at the Note Rate, as though the funds had been fully advanced for construction;
3. charge me a Delayed Completion Surcharge, as detailed in the commitment letter for this loan;
4. agree to a Construction Period Extension and charge me for all costs associated with the preparation and recording of all extension agreements, escrow materials and title insurance endorsements, and all other costs incurred in order to extend the time for completion of construction and performance of my obligations.

## 5. CONSTRUCTION PERIOD INTEREST

During the Construction Interest Period, I will pay the Lender interest on the principal amount that it has advanced under the loan. Interest will be computed daily at the rate in effect under the Note for the amount of principal outstanding. This interest will be billed to me on the 1st day of each month during the Construction Interest Period of this loan up until the Conversion Date, and it will be my responsibility to pay the amount of interest billed to me within 15 days.

## 6. ADDRESS FOR NOTICE TO LENDER.

Any person wishing to claim the benefit of any mechanics lien is advised by the recording hereof that the address of the Lender for receipt of any Notice To Owner, "Preliminary 20 Day Notice", Claim of Lien, Stop Notice, Bonded Stop Notice, or Lis Pendens, or other mechanics lien claim under California law, or for any other notice, claim or lien is shown below. Any such notice should be delivered to such address by certified mail return receipt requested.

**ATTN: Audrey Norfleet
GMAC Mortgage, LLC
Construction Lending Division
1100 Virginia Drive
Fort Washington, PA 19034**

As Borrower, I promise to notify the Lender, immediately upon my receipt of any such Notice To Owner, "Preliminary 20 Day Notice", Claim of Lien, Stop Notice, Bonded Stop Notice, or Lis Pendens, or any other notice, claim or lien relating in any way to the Property and to provide copies to Lender of all documents or papers received by me regarding the same.

**7. EXTINGUISHMENT OF CERTAIN PROVISIONS.**
Unless otherwise extended in writing, on      **February 26, 2009**      , the provisions of this rider, except paragraphs 3 shall self-extinguish and be of no further force and effect, provided however, that any causes of action, claims or rights of the Lender which accrue before said date shall continue unaffected and undiminished by such extinguishment.

Date: 2.29.2008

Borrower:   SIGMUND ZYGELMAN

Borrower:

Borrower:

Borrower:

The undersigned witnessed the Borrower(s) when he/she/they signed this Rider.

Settlement Agent                      2/29/08
                                      Date

ONLY ONE™ One-Close Fixed Rate Construction / Permanent Loan Program  **CALIFORNIA**
© Interstate Closing Systems, All Rights Reserved          Page 3                              YDEpb

**<u>Exhibit F</u>**

*6109128*

**FIDELITY NATIONAL TITLE COMPANY**

Recording Requested By:

After Recording Please Return To
GMAC Mortgage, LLC
Construction Lending Division
1100 Virginia Drive
Fort Washington, PA 19034

Sacramento County Recording
Craig A Kramer, Clerk/Recorder
BOOK **20080306**  PAGE **0206**

Check Number 7360
Thursday, MAR 06, 2008  8:44:09 AM
ttl Pd   $74 00        Nbr-0005293673

**KPO/36/1-22**

_____ Space above this line for Recording Data _____

# DEED OF TRUST

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated    **February 29, 2008**    , together with all Riders to this document.
**(B) "Borrower"** is

### SIGMUND ZYGELMAN

Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is GMAC Mortgage, LLC, (f/k/a GMAC Mortgage Corporation). Lender is a limited liability company organized and existing under the laws of Delaware. Lender's address is 100 Witmer Road, P.O. Box 963, Horsham, PA 19044-0963. Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is              **Executive Trustee Services, Inc., 15455 San Fernando Mission Blvd., Suite 208, Mission Hills, CA 91345**       .
**(E) "Note"** means the promissory note signed by Borrower and dated    **February 29, 2008**   . The Note states that Borrower owes Lender

### ONE MILLION ONE HUNDRED NINETY THOUSAND DOLLARS AND 00/100

Dollars (U.S. $    **1,190,000.00**   ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    **March 1, 2038**   .
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ Trust Rider |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | ☐ V. A. Rider |
| ☐ Fixed/Adjustable Rider | ☒ Other(s) [specify]   LEGAL DESCRIPTION and | |

CONSTRUCTION RIDER TO NOTE AND SECURITY INSTRUMENT

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**    Initials
Page  1  of 15                                                                 Form 3005  1/01

**(I)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** **"Escrow Items"** means those items that are described in Section 3.

**(M)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

|                County                |   of   |              Sacramento              |
| [Type of Recording Jurisdiction] |        | [Name of Recording Jurisdiction] |

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**
Page  2  of 15

Initials _____
Form 3005  1/01

SEE LEGAL DESCRIPTION ATTACHED

which currently has the address of

**6225 Gobernadores Lane, Carmichael, CA 95608**

("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**
Page 3 of 15                                                         Initials
                                                                     Form 3005  1/01

applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest dueunder the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shell then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

**CALIFORNIA** - Single Family  - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**       Initials
Page  4  of 15                                                                                                              Form 3005  1/01

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any *Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified* under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. *If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify* Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless *Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to* Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-*time charge for flood zone determination and certification services and subsequent charges each time remappings* or similar changes occur which reasonably might affect such determination or certification. Borrower shall also

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**          Initials
Page  5  of 15                                                                         Form 3005

be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**      Initials
Page  6  of 15                                                                 Form 3005  1/01

Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**      Initials
Page  7  of 15                                                                    **Form 3005  1/01**

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**
Page   10  of 15

Initials
Form 3005 1/01

under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b ) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by

CALIFORNIA - Single Family  - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Initials
Page  11  of 15                                                             Form 3005  9/01

Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

    **20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

    Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

    **21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

    Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

    Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any

**CALIFORNIA** - Single Family  - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**      Initials _____
Page  12  of 15                                                                Form 3005  1/01

Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any

private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**    Initials
Page 13 of 15                                                                                    Form 3005 1/01

person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to him at the address of the Borrower set forth above. A copy of any Notice of Default and any Notice of sale will be sent only to the address contained in this recorded request. If the Borrower's address changes, a new request must be recorded.

Witnesses:

_____          _____(Seal)
                                          SIGMUND ZYGELMAN             Borrower

_____          _____(Seal)
                                                                       Borrower

                                          _____(Seal)
                                                                       Borrower

                                          _____(Seal)
                                                                       Borrower

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**        Initials _____
Page  14  of 15                                                                       **Form 3005  1/01**

_____ Space below this line for Acknowledgement_____

**STATE OF CALIFORNIA    COUNTY OF**                                    ) ss:

On   **2/29**            , 200**8** , before me,   *Stacy McClean*
personally appeared

### SIGMUND ZYGELMAN

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the persons(x) whose
name(s)(x)(are) subscribed to the within instrument and acknowledged to me that(he)/she/they executed the same in
(his)/her/their authorized capacity(ies), and that by (his)/her/their signature(s) on the instrument the person(s) or the
entity upon behalf of which the person(s) acted, executed the instrument.
Witness my hand and official seal.

_____ *Stacy McClean*_____ (Seal)

    (This area for official notarial seal)

    STACY MCCLEAN
    Commission # 1487882
    Notary Public - California
    Sacramento County
    My Comm. Expires May 4, 2008

**CALIFORNIA** - Single Family  - Fannie Mae/Freddie Mac  **UNIFORM INSTRUMENT**    Initials_____
Page  15  of 15                                                                    **Form 3005**  1/01

# ACKNOWLEDGMENT

State of California
County of _Sacramento_

On _2/09/08_ before me, _Stacy McClean_,
(here insert name and title of the officer)

personally appeared _Sigmund Zugelman_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

STACY MCCLEAN
Commission # 1487882
Notary Public - California
Sacramento County
My Comm. Expires May 4, 2008

(Seal)

**Escrow No.:**
**Locate No.:**
**Title No.:**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE UNINCORPORATED AREA, COUNTY OF SACRAMENTO, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

Lot 1, as shown on the "Plat of La Casa De Los Gobernadores", recorded July 28, 1999 in Book 263 of Maps, Map No. 2, Sacramento County Records.

## CONSTRUCTION RIDER TO NOTE AND SECURITY INSTRUMENT

### (ONLY ONE™ ONE-CLOSE FIXED RATE)

LENDER - As used herein the term Lender shall mean

### GMAC MORTGAGE, LLC
(f/k/a GMAC Mortgage Corporation)

or any assignee, transferee or successor in interest thereto.  As used herein the words "I", "me" or "my" shall mean any person who signs below as Borrower.

This Rider is a loan modification agreement which changes the terms of the promissory Note and Security Instrument (Mortgage, Deed of Trust or Security Deed) which I have signed which are dated        **February 29, 2008**    in regard to the property located at

#### 6225 Gobernadores Lane, Carmichael, CA 95608

("Property").  I agree that the covenants, terms and provisions set forth in this Rider will supercede and replace any inconsistent terms, covenant or provisions therein, where the two are different.

# CONSTRUCTION TRUST DEED

**CONSTRUCTION LOAN - FUTURE ADVANCES**.  THE ADDITION OF THIS RIDER TO THE NOTE AND DEED OF TRUST IS INTENDED AND AGREED TO MAKE IT A CONSTRUCTION LOAN TO SECURE FUTURE ADVANCES WITHIN THE MEANING OF THE LAWS OF THE STATE OF CALIFORNIA, INCLUDING WITHOUT LIMITATION, CALIFORNIA CIVIL CODE § 3097.  SUCH FUTURE ADVANCES SHALL BE DEEMED "OBLIGATORY" ON LENDER PROVIDED THAT THE BORROWER SHALL FULLY PERFORM ALL OF BORROWERS OBLIGATIONS UNDER THE NOTE, DEED OF TRUST, CONSTRUCTION LOAN AGREEMENT AND LOAN DOCUMENTS.    ALL SUMS ADVANCED HEREUNDER SHALL BE DEEMED TO HAVE THE SAME PRIORITY AS THE ORIGINAL INDEBTEDNESS.

BY SIGNING THIS RIDER, THE BORROWER WARRANTS AND ASSURES THAT **NO CONSTRUCTION ACTIVITY OF ANY KIND HAS COMMENCED ON THE PROPERTY** DESCRIBED HEREIN, AND THE BORROWER FURTHER EXPRESSLY WARRANTS AND AGREES THAT NO CONSTRUCTION ACTIVITY OF ANY KIND SHALL COMMENCE UNTIL AFTER THE BORROWER IS NOTIFIED OF THE RECORDING OF THE DEED OF TRUST AS A FIRST LIEN ON THE PROPERTY. COMMENCEMENT OF WORK BEFORE SUCH RECORDING CAN SUBJECT THE PROPERTY OF THE OWNER TO MECHANICS LIENS AND CAN BE A DEFAULT UNDER THE LOAN DOCUMENTS.

### 1.  CONSTRUCTION LOAN

The loan is to be advanced in installments to finance construction, which I promise to complete on or before    **February 26, 2009**    , referred to as the **"CONSTRUCTION COMPLETION DATE"**, in strict compliance with the project Plans and Specifications.

If, in the Lender's opinion, the construction of the project will not be completed by    **February 26, 2009**    , it shall be the basis for a default, and Lender shall have the right to stop making advances of money even before    **February 26, 2009**    ; and to accelerate the loan and make all sums outstanding due and payable at once, together with interest, fees, costs of collection and all other charges, including reasonable attorneys' fees.

The Lender has agreed to make the loan herein described to be paid over to me in installments as the work is completed and will advance funds only FOR WORK IN PLACE, based upon inspection.

The Lender is obligated to advance the full amount of the loan $        **1,190,000.00**        provided that I have fully performed and met all of the conditions and requirements which I have promised to undertake in the

ONLY ONE™ One-Close Fixed Rate Construction / Permanent Loan Program  **CALIFORNIA**
© Interstate Closing Systems, All Rights Reserved        Page 1                                    YDEpb

Construction Loan Agreement, Promissory Note, Security Agreement, Commitment Letter and Loan Documents; and provided that I am not in default thereunder.

## 2. INSPECTION FOR STATUS OF COMPLETION ONLY

The Lender shall have the right to inspect the premises so as to ascertain the status of completion and the progress of the construction of improvements. The sole purpose for such inspection is to determine the approximate amount and value of the work which has been done, and to advance funds for such work in place. Such inspections shall not necessarily relate to the quality of the construction and as Borrower, I will not rely on the Lender's inspection for any purpose whatsoever. As Borrower, I will be solely responsible for the progress and quality of construction.

## 3. MODIFICATION OF THE OBLIGATION TO REPAY LOAN

1. Notwithstanding the terms of Paragraph 3 of the Note that I signed, I will not begin repaying the principal of my loan on    **April 1, 2008**    .
2. Instead, I will pay interest only until    **March 1, 2009**    referred to as the **"CONVERSION DATE"**.
3. I will make my first payment of principal and interest on    **April 1, 2009**    , in the amount of **$8,398.07**, unless I am advised otherwise by the Lender in writing.

## 4. IF I DO NOT COMPLETE CONSTRUCTION WHEN I SHOULD

If I have not completed all construction or repairs, and met all of my obligations regarding the same by **February 26, 2009**    , then in addition to its other rights under the loan documents, the Lender has the right to do any or all of the following:

1. declare a default and exercise all of its rights reserved in the loan documents to act in case of default; or
2. agree to allow more time for construction to be completed and to disburse any remaining loan funds into a *Delayed Completion Holdback Account which shall then begin to accrue interest at the Note Rate, as though the* funds had been fully advanced for construction;
3. charge me a Delayed Completion Surcharge, as detailed in the commitment letter for this loan;
4. agree to a Construction Period Extension and charge me for all costs associated with the preparation and recording of all extension agreements, escrow materials and title insurance endorsements, and all other costs incurred in order to extend the time for completion of construction and performance of my obligations.

## 5. CONSTRUCTION PERIOD INTEREST

During the Construction Interest Period, I will pay the Lender interest on the principal amount that it has advanced under the loan. Interest will be computed daily at the rate in effect under the Note for the amount of principal outstanding. This interest will be billed to me on the 1st day of each month during the Construction Interest Period of this loan up until the Conversion Date, and it will be my responsibility to pay the amount of interest billed to me within 15 days.

## 6. ADDRESS FOR NOTICE TO LENDER.

Any person wishing to claim the benefit of any mechanics lien is advised by the recording hereof that the address of the Lender for receipt of any Notice To Owner, "Preliminary 20 Day Notice", Claim of Lien, Stop Notice, Bonded Stop Notice, or Lis Pendens, or other mechanics lien claim under California law, or for any other notice, claim or lien is shown below. Any such notice should be delivered to such address by certified mail return receipt requested .

**ATTN: Audrey Norfleet**
**GMAC Mortgage, LLC**
**Construction Lending Division**
**1100 Virginia Drive**
**Fort Washington, PA 19034**

As Borrower, I promise to notify the Lender, immediately upon my receipt of any such Notice To Owner, "Preliminary 20 Day Notice", Claim of Lien, Stop Notice, Bonded Stop Notice, or Lis Pendens, or any other notice, claim or lien relating in any way to the Property and to provide copies to Lender of all documents or papers received by me regarding the same.

## 7. EXTINGUISHMENT OF CERTAIN PROVISIONS.

Unless otherwise extended in writing, on **February 26, 2009**    , the provisions of this rider, except paragraphs 3 shall self-extinguish and be of no further force and effect, provided however, that any causes of action, claims or rights of the Lender which accrue before said date shall continue unaffected and undiminished by such extinguishment.

Date: _2-29-08_

Borrower: SIGMUND OYJELMAN

Borrower:

Borrower:

Borrower:

The undersigned witnessed the Borrower(s) when he/she/they signed this Rider.

Settlement Agent

Date: 2/29/08

**ONLY ONE™** One-Close Fixed Rate Construction / Permanent Loan Program  **CALIFORNIA**
© Interstate Closing Systems, All Rights Reserved      Page 3                                YDEpb

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this    **February 29, 2008**    and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to

# GMAC Mortgage, LLC

(f/k/a GMAC Mortgage Corporation)

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

### 6225 Gobernadores Lane, Carmichael, CA 95608
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

## COVENANTS, CONDITIONS AND RESTRICTIONS AS OF RECORD APPEAR

(the **"Declaration"**). The Property is a part of a planned unit development known as

## CASA DE LOS GOBERNADORES

(the **"PUD"**). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**MULTISTATE PUD RIDER**-Single Family-Fannie Mae/FreddieMac UNIFORM INSTRUMENT
Page 1 of 2                                                                                          Form 3150 1/01

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)
SIGMUND ZYGELMAN                 Borrower

_____ (Seal)
                                 Borrower

_____ (Seal)
                                 Borrower

_____ (Seal)
                                 Borrower

**MULTISTATE PUD RIDER**-Single Family-Fannie Mae/FreddieMac UNIFORM INSTRUMENT
Page 2 of 2                                                      Form 3150 1/01

# **Exhibit G**

Sacramento County Recorder
Frederick B. Garcia, Clerk/Recorder
BOOK **20090310** PAGE **1487**

Check Number 9503
Tuesday, MAR 10, 2009 12:52:56 PM
Ttl Pd   $17.00        Nbr-0005783105

SPM/16/1-3

Please Return To:
GMAC Bank
Construction Lending Division
1100 Virginia Drive
Fort Washington, PA 19034

8109128 JM

_____(Space Above this Line for Recording Data)_____

## LOAN MODIFICATION AGREEMENT
### (To Extend the Time for the Completion of Construction)

This Loan Modification Agreement is made effective as of    **February 26, 2009**    by the undersigned

### SIGMUND ZYGELMAN

("Borrower"), in regard to that certain Mortgage Deed, Deed of Trust or Security Instrument (hereinafter "Security Instrument") made by the Borrower in favor of **GMAC Mortgage , LLC,** 100 Witmer Road, P.O. Box 963, Horsham, PA 19044-0963 and assigned to **GMAC BANK** ("Lender"), in which the Trustee is    **Executive Trustee Services, Inc., 15455 San Fernando Mission Blvd., Suite 208, Mission Hills, CA 91345**    , and which is dated    **February 29, 2008**    and which secures the debt of the Borrower, as set forth in a Fixed Rate Promissory Note of even date therewith (hereinafter "Note") in the original principal amount of **$ 1,190,000.00**    against the property of the Borrower located at

### 6225 Gobernadores Lane, Carmichael, CA 95608

as more fully described in said Security Instrument, and which Security Instrument is recorded at

Book or Liber _20080306_ , at Page(s) _206_ ,

(on _March 6, 2008_ , at _8:44_ A.M/~~P.M.~~ as DOCUMENT NO. _N/A_ )

of the
            (Name of Records)                    Records of
                                                    (County and State, or other Jurisdiction)

        **WHEREAS,** the Borrower wishes to extend the time for the Borrower to complete the construction of the buildings or improvements that is set forth in the loan documents, including particularly the Construction Rider To Promissory Note and Security Instrument, that was originally executed by the Borrower and attached as a Rider to the Note, and that was recorded with such Security Instrument (both copies of which are hereinafter referred to as "Construction Rider" and the Construction Loan Agreement; and
        **WHEREAS,** the Borrower wishes to extend the period for construction without the establishment of a Delayed Construction Holdback Account at this time, but prefers instead to modify the executed and recorded documents to extend the Construction Completion Date, without limiting or altering the right of the Lender to establish the Delayed Construction Holdback Account at a future time, if the Lender shall deem it necessary;

LOAN MODIFICATION AGREEMENT To Extend Construction Period - Single Family
CALIFORNIA        ZLWpb

**NOW THEREFORE**, in consideration of One ($1.00) Dollar and other valuable consideration and of the terms hereof, the parties hereto do hereby modify and amend the aforesaid Construction Rider only as follows:

1. The terms of the loan documents, Construction Loan Agreement and said Construction Rider are hereby altered and amended to change the date described as the **"Construction Completion Date"** from    **February 26, 2009**    (wherever it appears as originally provided therein) to **April 30, 2009**.

2. In accordance with the terms of paragraph 3 of the Construction Rider, as amended hereby, the Borrower shall continue to make monthly payments of interest only, at the interest rate required under the terms of the Note, in an amount based upon the outstanding principal balance all as therein provided until **May 1, 2009**. On **June 1, 2009**, the Borrower shall commence the payment of principal and interest, in the amount of **$ 8,614.09** .

3. Nothing contained herein shall limit or amend any of the the rights of the Lender in any way, including without limitation, the right to establish a Delayed Construction Holdback Account at a future time, if the Lender shall deem it necessary.

4. Except as modified hereby, the aforesaid Note, Security Instrument, Construction Loan Agreement, Loan Documents and Construction Rider remain unchanged and in full force and effect, and the modifications and amendments made herein shall not serve to extend or alter the final maturity date described therein.

BY SIGNING BELOW, I accept and agree to the promises, agreements, terms and covenants contained in this Loan Modification Agreement .

Witnesses:

_____    _____ (Seal)
                             SIGMUND ZYGELMAN              -Borrower

_____    _____ (Seal)
                                                          -Borrower

_____ (Seal)    _____ (Seal)
                         -Borrower                        -Borrower

STATE OF CALIFORNIA    )
COUNTY OF _Sacramento_    )  ss:

On _March 6, 2009_ , before me,    JULIE MIMS

                                                          personally appeared

**SIGMUND ZYGELMAN**

personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

(This area for official notarial seal)    _____ (Seal)

**JULIE MIMS**
COMM. #1808959
NOTARY PUBLIC • CALIFORNIA
SACRAMENTO COUNTY
Comm. Exp. AUG. 9, 2012

LOAN MODIFICATION AGREEMENT To Extend Construction Period - Single Family
CALIFORNIA                                                ZLWpb

**IN WITNESS WHEREOF**, this Agreement has been duly executed by the parties hereto as of the day and year first above written.

**GMAC BANK**

WITNESSES

_____    BY: _____ (SEAL)
Name:                                                    **Irina Burns,**
                                                                **Assistant Secretary**

_____
Name:

**STATE OF PENNSYLVANIA**          )
**COUNTY OF MONTGOMERY**         )       **ss. Fort Washington**

On the ___5th___ day of ___March_____, 200_9_, before me, the undersigned, a Notary Public in and for said State, personally appeared

**Irina Burns**

personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, she acted on behalf of the Corporation and executed the instrument as its duly authorized Assistant Secretary.

WITNESS my hand and official seal

_____ (SEAL)
(This area for Official Notarial Seal)          Notary Public
                                                                My Commission Expires:

NOTARIAL SEAL
SANDRA A. PACINI, NOTARY PUBLIC
HORSHAM TWP., MONTGOMERY COUNTY
MY COMMISSION EXPIRES MARCH 14, 2010

Escrow No.:
Locate No.:
Title No.:

# EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE UNINCORPORATED AREA, COUNTY OF SACRAMENTO, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

Lot 1, as shown on the "Plat of La Casa De Los Gobernadores", recorded July 28, 1999 in Book 263 of Maps, Map No. 2, Sacramento County Records.

**<u>Exhibit H</u>**

LMOD

Please Return To:
GMAC Bank
Construction Lending Division
1100 Virginia Drive
Fort Washington, PA  19034

CERTIFIED TO BE A TRUE COPY OF DOCUMENT
RECORDED  5/6/09  INSTRUMENT NO.
20090506  BOOK  PAGE 1153
Sacramento  COUNTY RECORDS.
FIBELITY NATIONAL TITLE INSURANCE CO.
BY  Jellie Mc

_____ (Space Above this Line for Recording Data) _____

## LOAN MODIFICATION AGREEMENT
(To Extend the Time for the Completion of Construction)

This Loan Modification Agreement is made effective as of    **February 26, 2009**    by the undersigned

### SIGMUND ZYGELMAN

("Borrower"), in regard to that certain Mortgage Deed, Deed of Trust or Security Instrument (hereinafter "Security Instrument") made by the Borrower in favor of **GMAC Mortgage , LLC,** 100 Witmer Road, P.O. Box 963, Horsham, PA 19044-0963 and assigned to **GMAC BANK** ("Lender"), in which the Trustee is    Executive Trustee Services, Inc., 15455 San Fernando Mission Blvd., Suite 208, Mission Hills, CA 91345    , and which is dated    **February 29, 2008**    and which secures the debt of the Borrower, as set forth in a Fixed Rate Promissory Note of even date therewith (hereinafter "Note") in the original principal amount of $ **1,190,000.00**    against the property of the Borrower located at

### 6225 Gobernadores Lane, Carmichael, CA 95608

as more fully described in said Security Instrument, and which Security Instrument is recorded at

Book or Liber  20080306  , at Page(s)  0 206  ,

(on  March 6  ,  2008  , at  8:44  A.M/P.M. as DOCUMENT NO.  N/A )

of the                                        Records of
        (Name of Records)                                (County and State, or other Jurisdiction)

        **WHEREAS,** the Borrower wishes to extend the time for the Borrower to complete the construction of the buildings or improvements that is set forth in the loan documents, including particularly the Construction Rider To Promissory Note and Security Instrument, that was originally executed by the Borrower and attached as a Rider to the Note, and that was recorded with such Security Instrument (both copies of which are hereinafter referred to as "Construction Rider" and the Construction Loan Agreement; and
        **WHEREAS,** the Borrower wishes to extend the period for construction without the establishment of a Delayed Construction Holdback Account at this time, but prefers instead to modify the executed and recorded documents to extend the Construction Completion Date, without limiting or altering the right of the Lender to establish the Delayed Construction Holdback Account at a future time, if the Lender shall deem it necessary;

LOAN MODIFICATION AGREEMENT To Extend Construction Period - Single Family
CALIFORNIA                                                                        ZLWpb

**NOW THEREFORE**, in consideration of One ($1.00) Dollar and other valuable consideration and of the terms hereof, the parties hereto do hereby modify and amend the aforesaid Construction Rider only as follows:

1. The terms of the loan documents, Construction Loan Agreement and said Construction Rider are hereby altered and amended to change the date described as the "**Construction Completion Date**" from      **February 26, 2009**      (wherever it appears as originally provided therein) to   ,**June 15, 2009**.

2. In accordance with the terms of paragraph 3 of the Construction Rider, as amended hereby, the Borrower shall continue to make monthly payments of interest only, at the interest rate required under the terms of the Note, in an amount based upon the outstanding principal balance all as therein provided until   **July 1, 2009**.  On  **August 1, 2009**, the Borrower shall commence the payment of principal and interest, in the amount of  **$ 8,627.60** .

3. Nothing contained herein shall limit or amend any of the the rights of the Lender in any way, including without limitation, the right to establish a Delayed Construction Holdback Account at a future time, if the Lender shall deem it necessary.

4. Except as modified hereby, the aforesaid Note, Security Instrument, Construction Loan Agreement, Loan Documents and Construction Rider remain unchanged and in full force and effect, and the modifications and amendments made herein shall not serve to extend or alter the final maturity date described therein.

BY SIGNING BELOW, I accept and agree to the promises, agreements, terms and covenants contained in this Loan Modification Agreement .
Witnesses:

_____     _____ (Seal)
                                                              SIGMUND ZYGELMAN          -Borrower

_____     _____ (Seal)
                                                                                              -Borrower

_____ (Seal)     _____ (Seal)
                                                          -Borrower                           -Borrower

STATE OF CALIFORNIA          )
COUNTY OF Sacremento )   ss:

On     4/30/09     , before me,   I JULIE MIMS                        personally appeared

**SIGMUND ZYGELMAN**

personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.
Witness my hand and official seal.

_____ (Seal)

(This area for official notarial seal)

JULIE MIMS
COMM. #1808959
NOTARY PUBLIC • CALIFORNIA
SACRAMENTO COUNTY
Comm. Exp. AUG. 9, 2012

LOAN MODIFICATION AGREEMENT  To Extend Construction Period - Single Family
CALIFORNIA                                                                                     ZLWpb

**IN WITNESS WHEREOF,** this Agreement has been duly executed by the parties hereto as of the day and year first above written.

WITNESSES:

X. _____
Name: _____

_____
Name:

**GMAC BANK**

BY: _____ (SEAL)
Irina Burns,
Assistant Secretary

STATE OF PENNSYLVANIA      )
COUNTY OF MONTGOMERY      )      ss. Fort Washington

On the __23rd__ day of __April_____, 200_9_, before me, the undersigned, a Notary Public in and for said State, personally appeared

**Irina Burns**

personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, she acted on behalf of the Corporation and executed the instrument as its duly authorized Assistant Secretary.

WITNESS my hand and official seal

(This area for Official Notarial Seal)

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CHRISTIN ATKINS, Notary Public
Horsham Twp., Montgomery County
My Commission Expires December 15, 2010

Notary Public
My Commission Expires: _____ (SEAL)

**Escrow No.:**
**Locate No.:**
**Title No.:**



## EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE UNINCORPORATED AREA, COUNTY OF SACRAMENTO, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

Lot 1, as shown on the "Plat of La Casa De Los Gobernadores", recorded July 28, 1999 in Book 263 of Maps, Map No. 2, Sacramento County Records.

**Exhibit I**

Page 1 of 3

**Atkins, Christin - PA**

| | |
|---|---|
| **From:** | Robertson, Robbie - PA |
| **Sent:** | Thursday, July 02, 2009 11:31 AM |
| **To:** | Atkins, Christin - PA |
| **Subject:** | RE: ZYGELMAN extension |
| **Attachments:** | ZYGELMANExtension Document Request Form.pdf |

OOPS I forgot to attach the extension request! Sorry

*Robbie Robertson*
*GMAC Bank*
*Construction Lending*
*District Risk Manager*
*WA,OR,ID,HI,AK,CA*
*19664 E Conway Hill Lane*
*Mount Vernon, WA 98274*
*cell - 360.770.0444*
*fax - 866-303-8284*
robbie.robertson@gmacbank.com

*The information contained in this communication is confidential and privileged proprietary information intended only for the personal and confidential use of the individual or entity to whom it is addressed. If you are not the addressee indicated in this message (or an agent responsible for delivery of the message to such person), you are hereby notified that you have received this communication in error and that any review, dissemination, copying or unauthorized use of this message is strictly prohibited. In such case, you should destroy this message and kindly notify the sender by reply e-mail.*

**From:** Atkins, Christin - PA
**Sent:** Thursday, July 02, 2009 8:27 AM
**To:** Robertson, Robbie - PA
**Subject:** RE: ZYGELMAN extension

Will the new maturity date be September 1, 2009?

*Christin Atkins*

Draw Coordinator

christin.atkins@gmacbank.com

Construction Lending Division

(P) 215-734-4014

7/2/2009

*The shortest distance from a problem to the solution is the distance from your knees to the floor.*



****Internet E-mail Confidentiality Footer****

The information contained in this communication is confidential and privileged proprietary information intended only for the personal and confidential use of the individual or entity to whom it is addressed. If you are not the addressee indicated in this message (or an agent responsible for delivery of the message to such person), you are hereby notified that you have received this communication in error and that any review, dissemination, copying or unauthorized use of this message is strictly prohibited. In such case, you should destroy this message and kindly notify the sender by reply e-mail. Please advise immediately if you or your employer do not consent to Internet e-mail for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of the Company shall be understood as neither given nor endorsed by it. It is the Company's policy that e-mails are intended for and should be used for business purposes only.

---

**From:** Robertson, Robbie - PA
**Sent:** Wednesday, July 01, 2009 12:46 PM
**To:** Young, Susan - PA; Atkins, Christin - PA
**Subject:** ZYGELMAN extension

Hi Ladies
We are going to do 1 last 45 day extension for Zygelman. $0 extension cost. It's a sad story, his wife contracted terminal cancer, he ended up in the hospital with a nervous breakdown and his retirement dreams are now in shambles. There is a sale on the property, and I have received loan approval information from the buyers lender. Thanx

*Robbie Robertson*
*GMAC Bank*
*Construction Lending*
*District Risk Manager*
*WA,OR,ID,HI,AK,CA*
*19664 E Conway Hill Lane*
*Mount Vernon, WA 98274*
*cell - 360.770.0444*
*fax - 866-303-8284*
robbie.robertson@gmacbank.com

---

The information contained in this communication is confidential and privileged proprietary information intended only for the personal and confidential use of the individual or entity to whom it is addressed. If you are not the addressee indicated in this message (or an agent responsible for delivery of the message to such person), you are hereby notified that you have received this communication in

7/2/2009

Page 3 of 3

*error and that any review, dissemination, copying or unauthorized use of this message is strictly prohibited. In such case, you should destroy this message and kindly notify the sender by reply e-mail.*

7/2/2009

*To: Linda Miller*

## CONSTRUCTION EXTENSION NOTIFICATION FORM

**BY FAX TO  866-324-2552  FOR:  LINDA A. MILLER - GMAC Bank     FROM:**

Attn:   Julie
Fidelity National Title
7806 Madison Avenue #128
Fair Oaks, CA   95628

*TO: Robbie Robertson*
*866-303-8284*

**Re:   GMAC Bank Construction/Permanent Loan to**

**Borrower(s):**

SIGMUND ZYGELMAN      &

**Property:**

6225 Gobernadores Lane, Carmichael, CA 95608

| | |
|---|---|
| Loan Amount: | 1,190,000.00 |
| Date of closing: | February 29, 2008 |
| Mortgage Loan #: | |
| ICS File #: | 22062 |

Gentlemen:

As described in the instructions accompanying certain loan modification materials received by the undersigned in regard to the above matter, we confirm the following.

1. This transmission will confirm that the above borrower(s) completed the execution of the documents necessary **TO EXTEND THE CONSTRUCTION PERIOD** of the loan.

2. This will confirm that the documents were signed by the Borrower(s) on _4/30_ , 2009.

3. This will confirm that the undersigned has made arrangements for the proper recording of the documents in the _County_ Records of _Sacramento_, State of _California_.

4. This will confirm that the undersigned has made arrangements to obtain and forward a Title Continuation Endorsement insuring the continued first lien status of the original mortgage as modified.

5. This will confirm that the undersigned will advise of recording date(s) and time(s) for modification documents.

Signed this _5th_ day of _May_ , 2009.

_Julie Min_

Closing Attorney or Settlement Agent
(Please fill in and fax back to  **866-324-2552   WITH COPIES OF SIGNED DOCS.)**

# GMAC BANK
## Fee for Extension of Construction Period

GMAC Bank
Construction Lending Division
1100 Virginia Drive
Fort Washington, PA 19034

**April 23, 2009**

**Re:    GMAC Bank Construction/Permanent Loan to**

**Borrower(s):**

SIGMUND ZYGELMAN    &

**Property:**

6225 Gobernadores Lane, Carmichael, CA 95608

| | |
|---|---|
| **Loan Amount:** | **1,190,000.00** |
| **Date of closing:** | **February 29, 2008** |
| **Mortgage Loan #:** | |

**Construction Completion Date**    **February 26, 2009**

**Extended Completion Date**    **June 15, 2009**

Dear Borrower & Closer:

We have reviewed your file and determined that it is unlikely that you will complete construction of your home by the date required under the existing GMAC ONE-CLOSE Construction Permanent Loan documents and that it is necessary to make arrangements to extend the time for the completion of your construction.

In order to extend the time for construction, you must sign extension documents which we have forwarded to your attorney or title closer.

Because of the laws governing these matters, no additional construction funds can be advanced under the *loan documents until the extension documents are fully executed and your closing attorney or title closer advises the* construction lending department that all of the necessary steps have been completed.

We must charge you the sum of **$4,562.50  DUE  WITH  MOD** as the fees for this extension. We have done this in lieu of establishing a Delayed Completion Holdback Account at this time. Under the loan documentation, we could establish such an account, however, the cost to you to do so would be *higher and we have chosen to use an extension of the construction period instead. Our decision to provide this* extension is not a waiver of our rights to establish a Delayed Completion Holdback Account in the future should we determine it necessary to do so.

At the time you sign the extension documents, you must bring **a check for the sum shown above   payable to GMAC BANK** in order to pay the extension fee. **The closer is not allowed to file the extension unless you provide these funds to GMAC.**

**In addition to the fee that we have charged for the extension, you will be responsible for the cost of your attorney or title closer as well as the costs of recording the extension documents and any title insurance or title search or other costs that your closer may charge you.**

If you have any questions regarding these matters, please call me at **1-215-734-4555.**

In closing, we hope you understand that we are trying to provide you with the time that you need in order to complete your construction and to do so at a minimum cost to you. We look forward to completing this matter with you.

Very truly yours,

Linda A. Miller, Modifications Team

APPROVED AND ACCEPTED

05/05/2009 15:50 FAX  9169864560        FIDELITY TITLE                    ✍ 001/010

*To: Linda Miller*

## CONSTRUCTION EXTENSION NOTIFICATION FORM

BY FAX TO  866-324-2552  FOR:  LINDA A. MILLER - GMAC Bank    FROM:

Attn:    Julie
Fidelity National Title
7806 Madison Avenue #128
Fair Oaks, CA  95628

Re:    GMAC Bank Construction/Permanent Loan to

Borrower(s):

                        SIGMUND ZYGELMAN    &

Property:

                   6225 Gobernadores Lane, Carmichael, CA 95608

Loan Amount:                    1,190,000.00
Date of closing:                February 29, 2008
Mortgage Loan #:
ICS File #:                     22062

Gentlemen:
    As described in the instructions accompanying certain loan modification materials received by the
undersigned in regard to the above matter, we confirm the following.

    1.  This transmission will confirm that the above borrower(s) completed the execution of the
documents necessary **TO EXTEND THE CONSTRUCTION PERIOD** of the loan.

    2.  This will confirm that the documents were signed by the Borrower(s) on
_4/30_, 2009.

    3.  This will confirm that the undersigned has made arrangements for the proper recording of the
documents in the _County_ Records of _Sacramento_,
State of _California_.

    4.  This will confirm that the undersigned has made arrangements to obtain and forward a Title
Continuation Endorsement insuring the continued first lien status of the original mortgage as modified.

    5.  This will confirm that the undersigned will advise of recording date(s) and time(s) for
modification documents.

Signed this _5th_ day of _May_, 2009.

_____
Closing Attorney or Settlement Agent
    (Please fill in and fax back to  866-324-2552  WITH COPIES OF SIGNED DOCS.)

Construction Period Extension Package dated    April 23, 2009                    YJadPB - 3

# GMAC BANK
## Fee for Extension of Construction Period

GMAC Bank
Construction Lending Division
1100 Virginia Drive
Fort Washington, PA 19034

**April 23, 2009**

**Re:   GMAC Bank Construction/Permanent Loan to**

**Borrower(s):**

SIGMUND ZYGELMAN    &

**Property:**

6225 Gobernadores Lane, Carmichael, CA 95608

| | |
|---|---|
| Loan Amount: | 1,190,000.00 |
| Date of closing: | **February 29, 2008** |
| Mortgage Loan #: | |

| | |
|---|---|
| **Construction Completion Date** | February 26, 2009 |
| **Extended Completion Date** | **June 15, 2009** |

Dear Borrower & Closer:

We have reviewed your file and determined that it is unlikely that you will complete construction of your home by the date required under the existing GMAC ONE-CLOSE Construction Permanent Loan documents and that it is necessary to make arrangements to extend the time for the completion of your construction.

In order to extend the time for construction, you must sign extension documents which we have forwarded to your attorney or title closer.

Because of the laws governing these matters, no additional construction funds can be advanced under the loan documents until the extension documents are fully executed and your closing attorney or title closer advises the construction lending department that all of the necessary steps have been completed.

We must charge you the sum of **$4,562.50 DUE WITH MOD** as the fees for this extension. We have done this in lieu of establishing a Delayed Completion Holdback Account at this time. Under the loan documentation, we could establish such an account, however, the cost to you to do so would be higher and we have chosen to use an extension of the construction period instead. Our decision to provide this extension is not a waiver of our rights to establish a Delayed Completion Holdback Account in the future should we determine it necessary to do so.

At the time you sign the extension documents, you must bring **a check for the sum shown above payable to GMAC BANK** in order to pay the extension fee. The closer is not allowed to file the extension unless you provide these funds to GMAC.

In addition to the fee that we have charged for the extension, you will be responsible for the cost of your attorney or title closer as well as the costs of recording the extension documents and any title insurance or title search or other costs that your closer may charge you.

If you have any questions regarding these matters, please call me at 1-215-734-4555.

In closing, we hope you understand that we are trying to provide you with the time that you need in order to complete your construction and to do so at a minimum cost to you. We look forward to completing this matter with you.

Very truly yours,

Linda A. Miller, Modifications Team

APPROVED & ACCEPTED

# hp LaserJet 4345mfp series



## Fax Call Report

1

GMAC BANK CONSTRUCTION LENDING
215-734-1111
23-Apr-2009 10:32 AM

| Job | Date/Time | Type | Identification | Duration | Pages | Result |
|-----|-----------|------|----------------|----------|-------|--------|
| 818 | 23-Apr-2009 10:30 AM | Send | 912034812619 | 1:40 | 2 | Success |

GMAC ONE – CLOSE CONSTRUCTION/PERMANENT

REQUEST FOR EXTENSION OF CONSTRUCTION COMPLETION DATE

REQUESTED BY: Linda A. Miller  866-324-2552 FAX    215-734-4555 PHONE

BORROWER LOAN:

BORROWER NAME: Sigmund Zygelman

BORROWER PHONE # Home – 916-489-3549

MONTHLY P&I FOR REMAINING LOAN TERM: $ 8,627.60

NEW CONSTRUCTION COMPLETION DATE: _6/15/09_

MODIFICATION FEE: ($4,462.50) collect at signing PAID BY:
__BORROWER__

DOC PREP FEE: ($100)_collect at signing      PAID BY:  BORROWER

TITLE CO FEES: _____TBD_____ PAID BY: __BORROWER__

ESCROW FEES: _____N/A_____ PAID BY : _____N/A_____

BANK OR MORTGAGE LOAN:  Bank

CLOSING TITLE COMPANY: Fidelity National Title

TITLE CO CONTACT NAME:  Julie

TITLE CO ADDRESS: 7806 Madison Avenue #128 Fair Oaks, CA  95628

TITLE CO PHONE # 916-962-0444  Fax#916-966-4560

LENDER FILE NOTES: _
_____

Servicer:
Prepayment Penalty: no_
MI: __no_____

**GMAC ONE – CLOSE CONSTRUCTION/PERMANENT**

**REQUEST FOR EXTENSION OF CONSTRUCTION COMPLETION DATE**

**REQUESTED BY: Linda A. Miller   866-324-2552 FAX       215-734-4555 PHONE**

**BORROWER LOAN:** ▮▮▮▮▮▮

**BORROWER NAME:  Sigmund Zygelman**

**BORROWER PHONE # Home – 916-489-3549**

**MONTHLY P&I FOR REMAINING LOAN TERM: $ 8,627.60**

**NEW CONSTRUCTION COMPLETION DATE: _6/15/09_**

✓ **MODIFICATION FEE: ($4,462.50) collect at signing PAID BY:**
  **_ BORROWER _____**

✓ **DOC PREP FEE: ($100)_collect at signing        PAID BY:   BORROWER _____**

**TITLE CO FEES: _____TBD_____       PAID BY:   BORROWER _____**

**ESCROW FEES: _____N/A_____ PAID BY : _____N/A_____**

**BANK OR MORTGAGE LOAN:   Bank**

**CLOSING TITLE COMPANY:  Fidelity National Title**

**TITLE CO CONTACT NAME:  Julie**

**TITLE CO ADDRESS: 7806 Madison Avenue #128 Fair Oaks, CA  95628**

**TITLE CO PHONE # 916-962-0444  Fax#916-966-4560**

**LENDER FILE NOTES: _**
_____

Servicer:
Prepayment Penalty: no_
MI: __no_____

**<u>Exhibit J</u>**

Sacramento County Recorder
Craig A. Kramer, Clerk/Recorder
BOOK **20090720** PAGE **1418**

Check Number  0234
**Monday, JUL 20, 2009  2:10:19 PM**
Ttl Pd    $23.00          Nbr-0005974266

**SJS/57/1-5**

Please Return To:
GMAC Bank
Construction Lending Division
1100 Virginia Drive
Fort Washington, PA  19034

_____(Space Above this Line for Recording Data)_____

## LOAN MODIFICATION AGREEMENT
(To Extend the Time for the Completion of Construction)

This Loan Modification Agreement is made effective as of    **February 26, 2009**    by the undersigned

### SIGMUND ZYGELMAN

("Borrower"), in regard to that certain Mortgage Deed, Deed of Trust or Security Instrument (hereinafter "Security Instrument") made by the Borrower in favor of **GMAC Mortgage , LLC,** 100 Witmer Road, P.O. Box 963, Horsham, PA 19044-0963 and assigned to **GMAC BANK** ("Lender"), in which the Trustee is **Executive Trustee Services, Inc., 15455 San Fernando Mission Blvd., Suite 208, Mission Hills, CA 91345** , and which is dated **February 29, 2008** and which secures the debt of the Borrower, as set forth in a Fixed Rate Promissory Note of even date therewith (hereinafter "Note") in the original principal amount of $ **1,190,000.00** against the property of the Borrower located at

### 6225 Gobernadores Lane, Carmichael, CA 95608

as more fully described in said Security Instrument, and which Security Instrument is recorded at

Book or Liber _20080306_ , at Page(s) _0206_ ,

(on _March 6_ , _2008_ , at _8:44_ (A.M)P.M. as DOCUMENT NO. _____ )

of the _Sacramento County_ Records of _Sacramento County, Ca_ .
(Name of Records)          (County and State, or other Jurisdiction)

   **WHEREAS**, the Borrower wishes to extend the time for the Borrower to complete the construction of the buildings or improvements that is set forth in the loan documents, including particularly the Construction Rider To Promissory Note and Security Instrument, that was originally executed by the Borrower and attached as a Rider to the Note, and that was recorded with such Security Instrument (both copies of which are hereinafter referred to as "Construction Rider" and the Construction Loan Agreement; and
   **WHEREAS**, the Borrower wishes to extend the period for construction without the establishment of a Delayed Construction Holdback Account at this time, but prefers instead to modify the executed and recorded documents to extend the Construction Completion Date, without limiting or altering the right of the Lender to establish the Delayed Construction Holdback Account at a future time, if the Lender shall deem it necessary;

LOAN MODIFICATION AGREEMENT  To Extend Construction Period - Single Family
CALIFORNIA                                                    ZLWpb

**NOW THEREFORE**, in consideration of One ($1.00) Dollar and other valuable consideration and of the terms hereof, the parties hereto do hereby modify and amend the aforesaid Construction Rider only as follows:

1. The terms of the loan documents, Construction Loan Agreement and said Construction Rider are hereby altered and amended to change the date described as the **"Construction Completion Date"** from **February 26, 2009** (wherever it appears as originally provided therein) to **August 15, 2009**.

2. In accordance with the terms of paragraph 3 of the Construction Rider, as amended hereby, the Borrower shall continue to make monthly payments of interest only, at the interest rate required under the terms of the Note, in an amount based upon the outstanding principal balance all as therein provided until **September 1, 2009**. On **October 1, 2009**, the Borrower shall commence the payment of principal and interest, in the amount of **$ 8,641.33** .

3. Nothing contained herein shall limit or amend any of the the rights of the Lender in any way, including without limitation, the right to establish a Delayed Construction Holdback Account at a future time, if the Lender shall deem it necessary.

4. Except as modified hereby, the aforesaid Note, Security Instrument, Construction Loan Agreement, Loan Documents and Construction Rider remain unchanged and in full force and effect, and the modifications and amendments made herein shall not serve to extend or alter the final maturity date described therein.

BY SIGNING BELOW, I accept and agree to the promises, agreements, terms and covenants contained in this Loan Modification Agreement .
Witnesses:

_____        _____ (Seal)
                                        SIGMUND ZYGELMAN              -Borrower

                                        _____ (Seal)
                                                                     -Borrower

_____ (Seal)  _____ (Seal)
                         -Borrower                                   -Borrower

STATE OF CALIFORNIA       )
COUNTY OF Sacramento      )  ss:

On   7/8/2009   , before me,   JULIE MIMS

                    **SIGMUND ZYGELMAN**                    personally appeared

personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.
Witness my hand and official seal.

(This area for official notarial seal)                     _____ (Seal)
JULIE MIMS
COMM. #1808959
NOTARY PUBLIC • CALIFORNIA
SACRAMENTO COUNTY
Comm. Exp. AUG. 9, 2012

LOAN MODIFICATION AGREEMENT  To Extend Construction Period - Single Family
CALIFORNIA                                                              ZLWpb

**IN WITNESS WHEREOF**, this Agreement has been duly executed by the parties hereto as of the day and year first above written.

**GMAC BANK**

WITNESSES

Name: _____

Name: _____

BY: _____ (SEAL)
**Irina Burns,**
Assistant Secretary

**STATE OF PENNSYLVANIA**          )
**COUNTY OF MONTGOMERY**      )          *ss. Fort Washington*

On the ___7th___ day of ___July_____, 200_9_, before me, the undersigned, a Notary Public in and for said State, personally appeared

**Irina Burns**

personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, she acted on behalf of the Corporation and executed the instrument as its duly authorized Assistant Secretary.

WITNESS my hand and official seal

_____ (SEAL)

(This area for Official Notarial Seal)          Notary Public
My Commission Expires:

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CHRISTIN ATKINS, Notary Public
Horsham Twp., Montgomery County
My Commission Expires December 15, 2010

# California All-Purpose Acknowledgment

State of ~~California~~ *PENNSYLVANIA*                    ⎫
                                                          ⎬ S.S.
County of ___*MONTGOMERY*___                              ⎭

On *JULY 16, 2009* before me, *SANDRA A. PACINI, COMP. ANALYST*
<span>                                           </span>Name of Notary Public/Title

personally appeared *IRINA BURNS, ASSISTANT SECRETARY.*
<span>                                            </span>Name of Signer (1)

_____
<span>                                       </span>Name of Signer (2)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ~~California~~ *PENNSYLVANIA* that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

*Sandra A. Pacini*
Signature of Notary Public

> **NOTARIAL SEAL**
> SANDRA A. PACINI, NOTARY PUBLIC
> HORSHAM TWP., MONTGOMERY COUNTY
> MY COMMISSION EXPIRES MARCH 14, 2010

Above area for official notary seal

---

## OPTIONAL INFORMATION

*Although the information in this section is not required by law, it could prevent fraudulent removal and reattachment of this acknowledgment to an unauthorized document and may prove useful to persons relying on the attached document.*

### Description of Attached Document

The preceding Certificate of Acknowledgment is attached to a

document titled/for the purpose of _____

_____

containing _____ pages, and dated _____

The signer(s) capacity or authority is/are as:
☐ Individual(s)
☐ Attorney-in-fact
☐ Corporate Officer(s) _____

_____

☐ Guardian/Conservator
☐ Partner - Limited/General
☐ Trustee(s)
☐ Other: _____

representing: _____

_____

_____

### Additional Information

**Method of Signer Identification**

Proved to me on the basis of satisfactory evidence:
☐ form(s) of identification  ☐ credible witness(es)

Notarial event is detailed in notary journal on:

<span>    </span>Page # _____  Entry # _____

Notary contact: _____

Other

☐ Additional Signer  ☐ Signer(s) Thumbprints(s)
☐ _____

---

© 2009 Notary Learning Center - All Rights Reserved                    Order Online at www.NotaryLearningCenter.com

**Escrow No.:**
**Locate No.:**
**Title No.:**

# EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE UNINCORPORATED AREA, COUNTY OF SACRAMENTO, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

Lot 1, as shown on the "Plat of La Casa De Los Gobernadores", recorded July 28, 1999 in Book 263 of Maps, Map No. 2, Sacramento County Records.

# Exhibit K

LSMIT

**GMAC** Mortgage

3451 Hammond Avenue
PO Box 780
Waterloo IA  50704-0780

10/19/2012

SIGMUND ZYGELMAN
1830 BONNIE WAY
SACRAMENTO, CA 95825

Re:    Loan Number
       Property Address        6225 GOBRNADORES LANE
                               CARMICHAEL, CA 95608-0000

Dear SIGMUND ZYGELMAN:

You may have received prior offers from us; however, we encourage you to complete the
attached financial analysis form. Given existing market conditions, we have expanded our
customer assistance programs to include greater payment relief than was previously available.

---

Depending on your individual circumstances, you may be eligible to lower
your mortgage payment through one or more of the following:

- **A forgiveness of a portion of your principal balance**
- **Reduction of the current interest rate on your loan**
- **Extension of the term of your mortgage**

---

For us to begin the review process, we will need to review the current hardship you are
experiencing. In order for us to do this, we just need you to:

- ☑  Complete the included Financial Analysis Package
  (this is also accessible at www.gmacmortgage.com)
- ☑  Attach all requested documentation, and
- ☑  Fax this information to 866-709-4744
  (OR email it to workoutsolutions@gmacm.com)

Your loan will not be referred to foreclosure during the evaluation of your application for a loan
modification. If your loan was referred to foreclosure prior to determination of eligibility for this
solicitation, we have taken action to place the foreclosure process on hold with a goal of preventing
foreclosure sale of your property during that time.

If you have any questions or need to discuss these requirements please contact us at  between the hours of 8:00 a.m. and 9:00 p.m. Monday through Friday Central Time.

Sincerely,

Loss Mitigation
Enclosure

Notice:  Federal law requires that we advise you that this notice is from a debt collector attempting to collect on a debt and any information obtained will be used for that purpose.

**Notice Regarding Bankruptcy:**  Please be advised that this letter is in no way an attempt to collect either a pre-petition, post-petition, or discharged debt.  If your bankruptcy case is still active, no action will be taken in willful violation of the Automatic Stay.  If you have received an Order of Discharge in a Chapter 7 case, any action taken by us is for the sole purpose of protecting our lien interest in your property and is not an attempt to recover any amounts from you personally.  Finally, if you are in an active Chapter 11, 12 or 13 case, and an Order for Relief from the Automatic Stay has not been issued, you should continue to make payments in accordance with your Chapter 13 plan.

**There may be a tax consequence to this transaction and we encourage you to contact a tax professional to discuss any questions you may have.**

AG1I3

We understand how difficult it may be to ask for help when you need it the most. We want you to know that we are here to help you.

The best way to find out what options are available is to help us understand your financial situation by completing the attached application package, including all the required documentation and returning it to us within 15 days.

If for any reason you are not able to complete the entire application package, as an alternative, you may complete this form by checking all of the appropriate boxes to the right. This will help us to identify potential programs available to meet your needs.

Please do not delay in returning this information. We look forward to working with you.

| Please check the box(es) that best describe your situation: | | | |
|---|---|---|---|
| **I want to:** | | | |
| ☐ | Keep the Property | ☐ | Not Keep the Property |
| **This home is:** | | | |
| ☐ | Where I live | ☐ | Second Home |
| ☐ | Investment (Rental) Property | | |
| **Military Service Members** | | | |
| ☐ | Check here if you or a member of your family is or has been on active duty with the military. *You may be eligible for benefits and protection under the Servicemembers Civil Relief Act (SCRA) | | |
| **I need help because I have/am...** | | | |
| ☐ | A loss of income | ☐ | Increase in expenses |
| ☐ | Can't sell my home | ☐ | Can't rent my home |
| ☐ | Marital problems | ☐ | Damage to the home due to hurricane, flood, earthquake, etc. |
| ☐ | Unemployed | ☐ | Incarceration |
| ☐ | Death of family member | ☐ | Illness of family member |
| ☐ | Other | | |

Fax this letter with your documentation attached to 1-866-709-4744, or Mail to: Loss Mitigation, 233 Gibraltar Rd., Suite 600, Horsham, PA 19044

What is the best phone number to reach you? ( ___ ) _____ - _____

What is the best time to reach you? _____ am/pm    Time Zone _____

☐ Check here if your primary language is Spanish. This information will be utilized to attempt to assign you a Spanish-speaking Relationship Manager when available, after your documentation is received. *Marque aquí, si su lengua principal es el Español. Esta información será utilizada para tratar de asignar un Gerente de Relaciones que hable Español cuando esté disponible, después de que su documentación haya sido recibida. Si necesita ayuda para completar esta documentación, por favor llamé a nuestro departamento de servicio al cliente.*

AG1I3

Consider all options. We will explore all options to help you keep your home. If you do not wish to stay in your home, we can help make your transition to a new home easier. Following is a brief description of available options.

- **Repayment Plan** – If you have experienced a temporary loss of income or increase in expenses but can now afford to make higher payments for a period of time, we may be able to develop a repayment plan.
- **HAMP Modification** – This is an important Federal Program designed to assist you in obtaining an affordable mortgage payment. We will review your monthly income and housing costs – including any past due payments – and determine an affordable mortgage payment.
- **Traditional Loan Modification** – If you are not able to make higher monthly payments but can still afford your current mortgage payment, we may be able to modify your loan.
- **Short Sale** – If the value of your home has declined, you may be able to sell it for less than the full amount due and eliminate your mortgage.
- **Deed in Lieu of Foreclosure** – You may be able to voluntarily return the deed to us to satisfy your debt and avoid foreclosure.

**Notice Regarding Foreclosure Scams:**
- There is never a fee to apply for or learn more about our Modification Programs. To locate a HUD-approved counselor, visit: http://www.hud.gov/offices/hsg/sfh/hcc/fc/
- Beware of any person or organization that asks you to pay a fee in exchange for housing counseling services or modification of a delinquent loan.
- Beware of anyone who says they can "save" your home if you sign or transfer over the deed to your house. Do not sign over the deed to your property to any organization or individual unless you are working directly with your mortgage company to forgive your debt.
- Never make your mortgage payments to anyone other than your mortgage company without their approval.

**Please Note:**
- All necessary documentation must be received 7 business days prior to the scheduled foreclosure sale date.
- This is an attempt to collect a debt and any information obtained will be used for that purpose.

| Important Tips and Reminders |
| --- |

- ✓ The enclosed package encompasses requirements for all available programs, including the Government's Making Home Affordable Program. For information and eligibility requirements under the Making Home Affordable program, visit www.makinghomeaffordable.gov website.

- ✓ Please be aware we will not be able to process your request until all parts of the application have been completed including signatures and all necessary supporting documentation has been supplied.

- ✓ Please continue to make your monthly payment. If assistance is needed, it is recommended that you contact a credit counselor who is trained to guide you through your current financial situation. You can access www.hud.gov or call 800-225-5342 for more information regarding credit counseling.

- ✓ You may receive phone calls or letters from our office asking for a payment while we consider any option that might be available.

AG1I3

✓ All modifications require an escrow account for the payment of taxes and insurance. If your loan does not currently include an escrow account for the payment of taxes and insurance, one will be added.

✓ While being reviewed for a workout (other than the Making Home affordable program). A fee to validate the value of the property may be assessed at your expense (approximate cost $100-$150).

✓ If approved for a permanent modification (other than the Making Home Affordable program), a recording fee may be assessed to the account at your expense. The cost varies by state and is determined by your state.

✓ As a condition of the modification, you may be required to enroll in an electronic payment program.

### Frequently Asked Questions

**How long will it take to process my modification request and determine if I qualify for the program?**
- We will review your request as quickly as possible. Once the package is returned to our office, Loss Mitigation will contact you within 10 business days advising the package was received and notifying you if additional information is required.
- Within 30 calendar days from the date a complete package is received, you will be notified whether the modification option is available to you.
- If you are not eligible for a modification, the reason for denial will be provided.
- Please note, however that your modification will not be effective unless you meet all of the applicable conditions.

**I pay my car insurance on a semi-annually or annual basis. How should I list that?**
- Please make sure that the amount of the expenses is broken down to a monthly premium amount.
- Example: if the car insurance is $500 for 6 months to determine the monthly premium divide $500 by 6 months ($83.33).

LSMIT

**GMAC** Mortgage

3451 Hammond Avenue
PO Box 780
Waterloo IA  50704-0780

10/25/2012

**Second Notice!**
You were previously provided information
regarding the financial analysis forms on 10/19/2012
Please be advised you have until 11/21/2012
to return all required documentation.

SIGMUND ZYGELMAN
1830 BONNIE WAY
SACRAMENTO, CA 95825

Re:     Loan Number
        Property Address        6225 GOBRNADORES LANE
                                CARMICHAEL, CA 95608-0000

Dear SIGMUND ZYGELMAN

You may have received prior offers from us; however, we encourage you to complete the
attached financial analysis form. Given existing market conditions, we have expanded our
customer assistance programs to include greater payment relief than was previously available.

> Depending on your individual circumstances, you may be eligible to lower
> your mortgage payment through one or more of the following:
>
> - **A forgiveness of a portion of your principal balance**
> - **Reduction of the current interest rate on your loan**
> - **Extension of the term of your mortgage**

For us to begin the review process, we will need to review the current hardship you are
experiencing. In order for us to do this, we just need you to:

- ☑ Complete the included Financial Analysis Package
  (this is also accessible at www.gmacmortgage.com)
- ☑ Attach all requested documentation, and
- ☑ Fax this information to 866-709-4744
  (OR email it to workoutsolutions@gmacm.com)

Your loan will not be referred to foreclosure during the evaluation of your application for a loan
modification. If your loan was referred to foreclosure prior to determination of eligibility for this
solicitation, we have taken action to place the foreclosure process on hold with a goal of preventing
foreclosure sale of your property during that time.

If you have any questions or need to discuss these requirements please contact us at  between the hours of 8:00 a.m. and 9:00 p.m. Monday through Friday Central Time.

Sincerely,

Loss Mitigation
Enclosure

Notice:  Federal law requires that we advise you that this notice is from a debt collector attempting to collect on a debt and any information obtained will be used for that purpose.

**Notice Regarding Bankruptcy:**  Please be advised that this letter is in no way an attempt to collect either a pre-petition, post-petition, or discharged debt.  If your bankruptcy case is still active, no action will be taken in willful violation of the Automatic Stay.  If you have received an Order of Discharge in a Chapter 7 case, any action taken by us is for the sole purpose of protecting our lien interest in your property and is not an attempt to recover any amounts from you personally.  Finally, if you are in an active Chapter 11, 12 or 13 case, and an Order for Relief from the Automatic Stay has not been issued, you should continue to make payments in accordance with your Chapter 13 plan.

<u>There may be a tax consequence to this transaction and we encourage you to contact a tax professional to discuss any questions you may have.</u>

AG1I3

We understand how difficult it may be to ask for help when you need it the most. We want you to know that we are here to help you.

The best way to find out what options are available is to help us understand your financial situation by completing the attached application package, including all the required documentation and returning it to us within 15 days.

If for any reason you are not able to complete the entire application package, as an alternative, you may complete this form by checking all of the appropriate boxes to the right. This will help us to identify potential programs available to meet your needs.

Please do not delay in returning this information. We look forward to working with you.

| Please check the box(es) that best describe your situation: | | | |
|---|---|---|---|
| **I want to:** | | | |
| ☐ | Keep the Property | ☐ | Not Keep the Property |
| **This home is:** | | | |
| ☐ | Where I live | ☐ | Second Home |
| ☐ | Investment (Rental) Property | | |
| **Military Service Members** | | | |
| ☐ | Check here if you or a member of your family is or has been on active duty with the military. *You may be eligible for benefits and protection under the Servicemembers Civil Relief Act (SCRA) | | |
| **I need help because I have/am...** | | | |
| ☐ | A loss of income | ☐ | Increase in expenses |
| ☐ | Can't sell my home | ☐ | Can't rent my home |
| ☐ | Marital problems | ☐ | Damage to the home due to hurricane, flood, earthquake, etc. |
| ☐ | Unemployed | ☐ | Incarceration |
| ☐ | Death of family member | ☐ | Illness of family member |
| ☐ | Other | | |

Fax this letter with your documentation attached to 1-866-709-4744, or Mail to: Loss Mitigation, 233 Gibraltar Rd., Suite 600, Horsham, PA 19044

What is the best phone number to reach you? (        ) _____ - _____

What is the best time to reach you? _____ am/pm    Time Zone _____

☐ Check here if your primary language is Spanish. This information will be utilized to attempt to assign you a Spanish-speaking Relationship Manager when available, after your documentation is received. *Marque aquí, si su lengua principal es el Español. Esta información será utilizada para tratar de asignar un Gerente de Relaciones que hable Español cuando esté disponible, después de que su documentación haya sido recibida. Si necesita ayuda para completar esta documentación, por favor llame a nuestro departamento de servicio al cliente.*

Consider all options. We will explore all options to help you keep your home. If you do not wish to stay in your home, we can help make your transition to a new home easier. Following is a brief description of available options.

- **Repayment Plan** – If you have experienced a temporary loss of income or increase in expenses but can now afford to make higher payments for a period of time, we may be able to develop a repayment plan.
- **HAMP Modification** – This is an important Federal Program designed to assist you in obtaining an affordable mortgage payment. We will review your monthly income and housing costs – including any past due payments – and determine an affordable mortgage payment.
- **Traditional Loan Modification** – If you are not able to make higher monthly payments but can still afford your current mortgage payment, we may be able to modify your loan.
- **Short Sale** – If the value of your home has declined, you may be able to sell it for less than the full amount due and eliminate your mortgage.
- **Deed in Lieu of Foreclosure** – You may be able to voluntarily return the deed to us to satisfy your debt and avoid foreclosure.

**Notice Regarding Foreclosure Scams:**
- There is never a fee to apply for or learn more about our Modification Programs. To locate a HUD-approved counselor, visit: http://www.hud.gov/offices/hsg/sfh/hcc/fc/
- Beware of any person or organization that asks you to pay a fee in exchange for housing counseling services or modification of a delinquent loan.
- Beware of anyone who says they can "save" your home if you sign or transfer over the deed to your house. Do not sign over the deed to your property to any organization or individual unless you are working directly with your mortgage company to forgive your debt.
- Never make your mortgage payments to anyone other than your mortgage company without their approval.

**Please Note:**
- All necessary documentation must be received 7 business days prior to the scheduled foreclosure sale date.
- This is an attempt to collect a debt and any information obtained will be used for that purpose.

| Important Tips and Reminders |
| --- |

- ✓ The enclosed package encompasses requirements for all available programs, including the Government's Making Home Affordable Program. For information and eligibility requirements under the Making Home Affordable program, visit www.makinghomeaffordable.gov website.

- ✓ Please be aware we will not be able to process your request until all parts of the application have been completed including signatures and all necessary supporting documentation has been supplied.

- ✓ Please continue to make your monthly payment. If assistance is needed, it is recommended that you contact a credit counselor who is trained to guide you through your current financial situation. You can access www.hud.gov or call 800-225-5342 for more information regarding credit counseling.

- ✓ You may receive phone calls or letters from our office asking for a payment while we consider any option that might be available.

AG1I3

✓ All modifications require an escrow account for the payment of taxes and insurance. If your loan does not currently include an escrow account for the payment of taxes and insurance, one will be added.

✓ While being reviewed for a workout (other than the Making Home affordable program). A fee to validate the value of the property may be assessed at your expense (approximate cost $100-$150).

✓ If approved for a permanent modification (other than the Making Home Affordable program), a recording fee may be assessed to the account at your expense. The cost varies by state and is determined by your state.

✓ As a condition of the modification, you may be required to enroll in an electronic payment program.

### Frequently Asked Questions

**How long will it take to process my modification request and determine if I qualify for the program?**
- We will review your request as quickly as possible. Once the package is returned to our office, Loss Mitigation will contact you within 10 business days advising the package was received and notifying you if additional information is required.
- Within 30 calendar days from the date a complete package is received, you will be notified whether the modification option is available to you.
- If you are not eligible for a modification, the reason for denial will be provided.
- Please note, however that your modification will not be effective unless you meet all of the applicable conditions.

**I pay my car insurance on a semi-annually or annual basis. How should I list that?**
- Please make sure that the amount of the expenses is broken down to a monthly premium amount.
- Example: if the car insurance is $500 for 6 months to determine the monthly premium divide $500 by 6 months ($83.33).

RECEIVED NOV - 5 2012



# Severson &Werson
A Professional Corporation

David M. Liu
Attorney
Direct Line: (949) 225-7201
dml@severson.com

The Atrium
19100 Von Karman Ave., Suite 700
Irvine, CA 92612
Telephone: (949) 442-7110
Facsimile: (949) 442-7118

November 2, 2012



*VIA FACSIMILE [(818) 769-9438] AND ORIGINAL VIA FIRST CLASS MAIL*

William D. Koehler, Esq.
Law Offices of William D. Koehler
12552 Moorpark Street, Suite 103
Studio City, CA 91604

> Re:    *Hayomyom, LLC v. GMAC Mortgage, LLC et al. (and related cross-complaint);*
> Los Angeles Superior Court, BC 465215

Dear Mr. Koehler:

I have been directed by GMAC Mortgage, LLC ("GMACM") to present you, for delivery to your client, the attached letter and financial analysis packet. GMACM encourages your client(s) to review and complete the information.

Please acknowledge and confirm receipt of this letter and that it has been or will be delivered to your client.

You may return the completed packet and any requested documents directly to me for delivery to GMACM.

Very truly yours,

David M. Liu

DML:dml
Encl.

WOUT

November 18, 2012

Sigmund Zygelman
1010 Paloma Dr
Arcadia, CA 91007

GMACM
Loss Mitigation 233
Gibralter Rd, Suite 600
Horsham, PA 19044

RE: Loan No. ▮▮▮▮▮▮
     6225 Gobernadores Ln
     Carmichael, CA 95608

Dear Sirs:

I have received from your office a letter with a financial analysis packet. Your letter was forwarded to me by my attorney which in turn was mailed to my attorney from your (GMACM) attorney, Mr. David M. Liu (see enclosed copy).

While I appreciate any offer by GMACM to settle with me the matter concerning the property at Gobernadores Ln., at this time there is still an ongoing litigation between myself and GMACM. In addition, there is also an ongoing litigation between a third-party and GMACM and also a litigation between this third-party and myself concerning the above property.

Under these circumstances I am unable to conclude a settlement between myself and GMACM, without regard to the third-party.

It is my understanding, though not definitive, that third-party has been interested and is still interested to settle with GMACM by purchasing the above property. Should both GMACM and third-party agree to settle a purchase price, third-party would agree to drop litigation against me and under such circumstances I would consent to drop litigation against GMACM.

I hope with this letter GMACM can find a solution that would be agreeable to all involved parties. It would be imperative that this matter be resolved be year end, 2012, otherwise I can incur additional financial damages.

I am available for any further information you may require and other suggestions to resolve this matter.

Sincerely,

Sigmund Zygelman

LSMIT



# GMAC Mortgage

PO Box 780
Waterloo, IA 50704-0780

November 26, 2012

0001

SIGMUND ZYGELMAN
1830 BONNIE WAY
SACRAMENTO CA  95825

**Third Notice**

You were previously provided information
regarding the financial analysis form on
10/19/12. Please be advised you have until
12/21/12 to return all required documentation.

Re:    Loan Number:

Property Address:        6225 GOBRNADORES LANE
                        CARMICHAEL CA 95608

Dear SIGMUND ZYGELMAN,

You may have received prior offers from us; however, we encourage you to complete the attached financial
analysis form. Given existing market conditions, we have expanded our customer assistance programs to include
greater payment relief than was previously available.

> Depending on your individual circumstances, you may be eligible to lower your
> mortgage payment through one or more of the following:
>
> - **A forgiveness of a portion of your principal balance**
> - **Reduction of the current interest rate on your loan**
> - **Extension of the term of your mortgage**

For us to begin the review process, we will need to review the current hardship you are experiencing. In order
for us to do this, we just need you to:

- ☑ Complete the included Financial Analysis Package
  (this is also accessible at www.gmacmortgage.com)
- ☑ Attach all requested documentation, and
- ☑ Fax this information to 866-709-4744
  (OR email it to workoutsolutions@gmacm.com)

Your loan will not be referred to foreclosure during the evaluation of your application for a loan modification.
If your loan was referred to foreclosure prior to determination of eligibility for this solicitation, we have taken
action to place the foreclosure process on hold with a goal of preventing foreclosure sale of your property
during that time.

If  you have any questions or need to discuss these requirements please contact us at 800-850-4622 between the hours of 8:00 a.m. and 9:00 p.m. Monday through Friday central standard time.

Sincerely,

Loss Mitigation
Enclosure

Notice:  Federal law requires that we advise you that this notice is from a debt collector attempting to collect on a debt and any information obtained will be used for that purpose.

**Notice Regarding Bankruptcy:**  Please be advised that this letter is in no way an attempt to collect either a pre-petition, post-petition or discharged debt.  If your bankruptcy case is still active, no action will be taken in willful violation of the Automatic Stay.  If you have received an Order of Discharge in a Chapter 7 case, any action taken by us is for the sole purpose of protecting our lien interest in your property and is not an attempt to recover any amounts from you personally.  Finally, if you are in an active Chapter 11, 12 or 13 case, and an Order for Relief from the Automatic Stay has not been issued, you should continue to make payments in accordance with your Chapter 13 plan.

**There may be a tax consequence to this transaction and we encourage you to contact a tax professional to discuss any questions you may have.**



Help may be available if you are having difficulty making your mortgage loan payments.  You may be eligible for the new Home Affordable Modification program, which is part of the initiative announced by President Obama to help homeowners.  Even if you do not qualify for this specific program, we will evaluate your situation to determine if you might qualify for assistance through other programs we offer.

**As your mortgage loan servicer, we will work with you in an effort to make your mortgage payment affordable.  You will not pay any fees to take advantage of this opportunity to modify your mortgage loan payment and keep your home.  Now is the time to act.  We are ready to help you.**

**Here's how it works:** We will first determine if you are eligible based on your situation.  If you are eligible, we will look at your monthly income and housing costs, including any past due payments, and then determine an affordable mortgage payment.  We will not refer the account to foreclosure or conduct a foreclosure sale if already referred while your loan is being reviewed for the Making Home Affordable program unless required by your investor.  The review will not begin until all required documentation has been received.

At first, we will provide you with a new, affordable monthly payment on your mortgage loan for a trial period.  If you make all of those payments successfully and fulfill all trial period conditions, we will permanently modify your mortgage loan.

The modification may involve some or all of the following changes to your mortgage loan:
1)  Bringing your account current;
2)  Reducing the interest rate on your loan;
3)  Extending the term of the loan, and/or delaying your repayment of a portion of the mortgage principal until the end of the loan term.

***In addition to the Making Home Affordable program, we may have other options available to assist you if you do not qualify under the government program.***

**STEP 1**    ## GATHER THE INFO WE NEED TO HELP

To take advantage of this opportunity and the Home Affordable Modification program, complete the enclosed financial analysis forms and fax or mail it to us with the required documentation to the fax number or address listed on the enclosed Fax Cover Sheet.  Please return all required documentation within 30 days. If you are scheduled for foreclosure sale all documentation must be received at least 7 business days prior to sale (For properties located in the state of Florida the complete package needs to be received 30 days prior to sale).

If you do not qualify for a loan modification under this program, or do not want to stay in your home, we will work with you to explore other options available to help you keep your home or ease your transition to a new home.

**STEP 2**    ## CONTACT US

We want to make modifying your mortgage loan as easy as possible.  However, you must take the first step by completing the financial analysis forms so we can analyze the options available to you.  If you have any questions call us at 1-800-766-4622 Monday-Friday from 8:00 a.m. to 9:00 p.m., Central Time.

**IMPORTANT NOTICE**   We want to help you avoid foreclosure scams.

## Beware of Foreclosure Rescue Scams.  Help is free!

- There is never a fee to get assistance or information about the Making Home Affordable program from your lender or a HUD-approved housing counselor.

    o   For a HUD-approved counselor, visit: http://www.hud.gov/offices/hsg/sfh/hcc/fc/

- Beware of any person or organization that asks you to pay a fee in exchange for housing counseling services or modification of a delinquent loan.

- Beware of anyone who says they can "save" your home if you sign or transfer over the deed to your house.  Do not sign over the deed to your property to any organization or individual unless you are working directly with your mortgage company to forgive your debt.

- Never make your mortgage payments to anyone other than your mortgage company without their approval.

Customer Care
Loan Servicing

Enclosure

Notice:  This is an attempt to collect on a debt and any information obtained will be used for that purpose.

If you have filed for bankruptcy, or if you have been discharged of your personal liability for repayment of this debt, please note that this letter is being provided for informational purposes only and any rights that we may choose to pursue will be exercised against the property only and not against you personally.



# **GMAC Mortgage**

PO Box 780
Waterloo, IA 50704-0780

November 26, 2012

0001
SIGMUND ZYGELMAN
1830 BONNIE WAY
SACRAMENTO CA 95825

Property Address:

6225 GOBRNADORES LANE
CARMICHAEL CA 95608

Account Number ▉▉▉▉▉

Dear Homeowner:

We understand how difficult it may be to ask for help when you need it the most. We want you to know that we are here to help you.

The best way to find out what options are available is to help us understand your financial situation by completing the attached application package, including all the required documentation and returning it to us within 15 days.

If for any reason you experience difficulty completing the entire application package, as an alternative, you may simply complete this form by checking all of the appropriate boxes to the right or call us for assistance. This will help us assist you with identifying potential programs available to meet your needs.

Please do not delay in returning this information. we look forward to working with you.

Thank you.

Loan Servicing

| Please check the box(es) that best describe your situation: | | | |
|---|---|---|---|
| **I want to:** | | | |
| ☐ | Keep the Property | ☐ | Not Keep the Property |
| **This home is:** | | | |
| ☐ | Where I live | ☐ | Second Home |
| ☐ | Investment (Rental) Property | | |
| **Military Service Members** | | | |
| ☐ | Check here if you or a member of your family is or has been on active duty with the military.<br>*You may be eligible for benefits and protection under the Servicemembers Civil Relief Act (SCRA) | | |
| **I need help because I have/am...** | | | |
| ☐ | A loss of income | ☐ | Increase in expenses |
| ☐ | Can't sell my home | ☐ | Can't rent my home |
| ☐ | Marital problems | ☐ | Damage to the home due to hurricane, flood, earthquake, etc. |
| ☐ | Unemployed | ☐ | Incarceration |
| ☐ | Death of family member | ☐ | Illness of family member |
| ☐ | Other | | |

Fax this letter with your documentation attached to 866-709-4744, or Mail to: Loss Mitigation, 233 Gibraltar Rd., Suite 600, Horsham, PA 19044

What is the best phone number to reach you? (     ) _____ - _____

What is the best time to reach you? _____ am/pm    Time Zone _____

☐ Check here if your primary language is Spanish. This information will be utilized to attempt to assign you a Spanish-speaking Relationship Manager when available, after your documentation is received. *Marque aquí, si su lengua principal es el Español. Esta información será utilizada para tratar de asignar un Gerente de Relaciones que hable Español cuando esté disponible, después de que su documentación haya sido recibida. Si necesita ayuda para completar esta documentación, por favor llamé a nuestro departamento de servicio al cliente.*

Consider all options. We will explore all options to help you keep your home. If you do not wish to stay in your home, we can help make your transition to a new home easier. Following is a brief description of available options.

- **Repayment Plan** – If you have experienced a temporary loss of income or increase in expenses but can now afford to make higher payments for a period of time, we may be able to develop a repayment plan.
- **HAMP Modification** – This is an important Federal Program designed to assist you in obtaining an affordable mortgage payment. We will review your monthly income and housing costs – including any past due payments – and determine an affordable mortgage payment.
- **Traditional Loan Modification** – If you are not able to make higher monthly payments but can still afford your current mortgage payment, we may be able to modify your loan.
- **Short Sale** – If the value of your home has declined, you may be able to sell it for less than the full amount due and eliminate your mortgage.
- **Deed in Lieu of Foreclosure** – You may be able to voluntarily return the deed to us to satisfy your debt and avoid foreclosure.

### Notice Regarding Foreclosure Scams:
- There is never a fee to apply for or learn more about our Modification Programs. To locate a HUD-approved counselor, visit: http://www.hud.gov/offices/hsg/sfh/hcc/fc/
- Beware of any person or organization that asks you to pay a fee in exchange for housing counseling services or modification of a delinquent loan.
- Beware of anyone who says they can "save" your home if you sign or transfer over the deed to your house. Do not sign over the deed to your property to any organization or individual unless you are working directly with your mortgage company to forgive your debt.
- Never make your mortgage payments to anyone other than your mortgage company without their approval.

### Please Note:
- All necessary documentation must be received 7 business days prior to the scheduled foreclosure sale date.
- This is an attempt to collect a debt and any information obtained will be used for that purpose.

**Please Note:** This is an attempt to collect a debt and any information obtained will be used for that purpose, provided if you have an active bankruptcy case or have received a discharge, the following Notice Regarding Bankruptcy applies.

**Notice Regarding Bankruptcy:** If you are a debtor in an active bankruptcy case, this letter is not an attempt to collect either a pre-petition, post petition or discharged debt and no action will be taken in willful violation of the Automatic Stay that may be in effect in your bankruptcy case. Furthermore, if you have received a Discharge in a Chapter 7 case, any action taken by us is for the sole purpose of protecting our lien interest in your property and is not an attempt to recover any amounts from you personally. If you have surrendered your property during your bankruptcy case, please disregard this notice. Finally, if you are in an active Chapter 11, 12 or 13 case, and an Order for Relief from the Automatic Stay has not been issued, you should continue to make payments in accordance with your bankruptcy plan.

SCORR



**GMAC Mortgage**

PO Box 780
Waterloo, IA 50704-0780

January 21, 2013

5

SIGMUND ZYGELMAN
1830 BONNIE WAY
SACRAMENTO, CA 95825

Re:    Account Number: ▮▮▮▮▮▮▮
       Property Address: 6225 GOBRNADORES LANE
                         CARMICHAEL, CA 95608

Dear SIGMUND ZYGELMAN:

Hello, my name is Daphne Harvey, your Relationship Manager. I am a member of a small team dedicated to helping you find a solution to your financial hardship.

I recently attempted to speak with you regarding your account. If we have not connected by the time you receive this letter, please call me at your earliest convenience as I want to help you understand all of your available options.

My team is managed by Kevin Anderson and we are here for you every step of the way! To make it easy to reach us, our contact information is printed on the right side of this notice; keep this handy for future reference.

Please know that you may continue to receive normal mailings and communications from our office; I am here to help you understand them and can go over your options with you.

Please understand that in order to be reviewed for a modification, all required documentation must be received no later than 7 business days prior to any scheduled foreclosure sale date.

Call me as soon as possible and we can get started.

Sincerely,

*Daphne Harvey*
Relationship Manager

> **\* Call Today \***
>
> **Daphne Harvey**
> 1-877-928-4622
> Extension 874-2769
>
> If I am not available, one of my team members is ready to assist you!
>
> For your convenience our offices are open weekdays between 8AM and 9PM CT.
>
> I will be in touch with you shortly to provide the specific hours I am available for you and we can discuss the best time to talk based on your schedule.
>
> If you are dissatisfied with the level of service being provided, ask for Kevin Anderson.
>
> Note: Additional information is included on the reverse side of this letter.

**Note**: This is an attempt to collect a debt and any information obtained will be used for that purpose.

**Notice Regarding Bankruptcy**: If you have filed for bankruptcy and your case is still active or if you have received an order of discharge, please be advised that this is not an attempt to collect a pre-petition or discharged debt. Any action taken by us is for the sole purpose of protecting our lien interest in your property and is not to recover any amounts from you personally. If you have surrendered your property during your bankruptcy case, please disregard this notice.

**Note**: If you are currently in bankruptcy under Chapter 13, you should continue to make payments in accordance with your Chapter 13 plan and disregard this notice.

<u>Frequently Asked Questions</u>

**Q:** What is the best method to send financial analysis documents for review?
**A:** GMAC Mortgage, LLC offers several methods for you to send required documentation: fax, e-mail, internet upload and mail. It is your choice, however, internet upload through www.gmacmortgage.com, e-mail or fax are the fastest methods.

E-mail: Financialpackage@gmacm.com

Fax:  866-709-4744

**Q:** How can I contact my Relationship Manager other than by phone?
**A:** You can send an e-mail or letter and reference your Relationship Manager.

GMAC Mortgage, LLC
Attention: Correspondence / Daphne Harvey
PO Box 780
Waterloo, IA  50702

E-mail : relationship.manager@mortgagebanksite.com
Include your Relationship Manager name in Subject line.

**Q:** When I call, my Relationship Manager may not always be available. How can I ensure I talk directly to them?
**A:** Your Relationship Manager is part of a team.  All of the team members have access to the same tools and information and will provide the same high level of service.  However, if you would prefer to speak directly with your Relationship Manager and they are not available, simply ask to schedule an appointment at your convenience.

**Q:** Who can I call if I am not satisfied with the service provided by my Relationship Manager or the outcome of the efforts to find a solution for my mortgage payment concerns?
**A:** At any point you can ask to speak with your Relationship Manager's Team Lead who is named on the front of this letter.  In addition, you may have your concerns reviewed by an independent advocate in our Executive Escalation Team.  They may be reached at 866-924-8409 Monday through Friday from 8am to 5pm CT or via email at homeowner.help@mortgagebanksite.com.