**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE RESIDENTIAL CAPITAL, LLC, *et al.*, <br><br>                    Debtors. | Case No. 12-12020 (MG)<br>Chapter 11<br>Jointly Administered<br><br>Objection Date: January 25, 2016 @ 4:00 p.m. (ET)<br>Hearing Date: February 10, 2016 @ 10:00 a.m. (ET) |

**MOTION BY PLAINTIFFS LANDON ROTHSTEIN, *ET AL.*, PURSUANT TO
FED. R. BANKR. P. 7023 AND 9019 FOR AN ORDER:  (I) PRELIMINARILY
APPROVING THE CLASS ACTION SETTLEMENT WITH RESPECT TO
PLAINTIFFS' BANKRUPTCY PROOFS OF CLAIM, (II) CERTIFYING THE
SETTLEMENT CLASS AND APPOINTING CLASS REPRESENTATIVES AND CLASS
COUNSEL FOR PURPOSES OF THE SETTLEMENT, (III) APPROVING THE FORM
AND MANNER OF NOTICE TO THE CLASS, (IV) SCHEDULING A FAIRNESS
HEARING, AND (V) APPOINTING A SETTLEMENT ADMINISTRATION**

# TABLE OF CONTENTS

**Page No.**

I.  INTRODUCTION ................................................................................. 1

II.  RELEVANT FACTS ........................................................................... 3

    A.  Nature of the Claims and Procedural History .................................... 3

    B.  The Parties' Arm's-Length Negotiations and the Investigation Conducted by Plaintiffs'
        Counsel ............................................................................................. 4

    C.  The Production of the Class Data and the Identification of Class Members ...................... 5

    D.  Overview of The Settlement ............................................................. 6

        1.  The Definition of the Settlement Class and the Exchange of the Allowed Claim
            for the Releases ........................................................................... 6

        2.  The Notice Program, Opt-Out Procedure, and Opportunity to Object............................. 7

        3.  Payment of Attorney's Fees, Expenses, and Incentive Awards ...................................... 8

        4.  The Plan of Allocation ................................................................. 8

III. ARGUMENT ..................................................................................... 9

    A.  The Settlement Should Be Preliminarily Approved ............................... 9

        1.  The Settlement Was Negotiated at Arm's-Length and Is Supported by
            Plaintiffs and Their Experienced Counsel ...................................... 11

        2.  The Settlement Terms Are Fair, Reasonable and Adequate Under the
            Grinnell Factors ......................................................................... 12

  a.  Continued Litigation Would Be Complex, Expensive, and Protracted ............................ 12

  b.  Plaintiffs Have Sufficient Information to Make an Informed Decision as to Settlement . 13

  c.  Plaintiffs Faced Significant Risks in Establishing Liability and Damages....................... 14

  d.  Risks of Maintaining Class Action Status Through Trial ................................................ 16

  e.  Ability to Withstand Greater Judgment .......................................... 16

i

f.    The Settlement Amount Is in the Range of Reasonableness in Light of the Best
      Possible Recovery and All the Attendant Risks of Litigation ......................................... 16

  B.   A Settlement Class Should Be Certified ......................................................................... 18

    1.    Numerosity .......................................................................................................... 19

    2.    Commonality ........................................................................................................ 19

    3.    Typicality.............................................................................................................. 20

    4.    Adequacy .............................................................................................................. 20

    5.    Predominance of Common Questions and Superiority to Other Methods of
          Adjudication......................................................................................................... 21

  C.   The Plan of Allocation Should be Approved .................................................................. 22

  D.   The Notice Program Should Approved............................................................................ 23

  E.   Kurtzman Carson Consultants LLC Should be Appointed as Settlement
       Administrator .................................................................................................................... 24

IV.  CONCLUSION ........................................................................................................................ 24

# TABLE OF AUTHORITIES

## Cases

In re Advanced Battery Tech., Inc. Sec. Litig.,
298 F.R.D. 171 (S.D.N.Y. 2014) .......................................................................... 28

Americana de Vapores, S.A. v. IBJ Schroder Bank & Trust Co.,
785 F.Supp. 411 (S.D.N.Y. 1992) ........................................................................ 16

In re Am. Bank Note Holographics, Inc. Sec. Litig.,
127 F. Supp. 2d 418 (S.D.N.Y. 2001) .................................................................. 25

In re Am. Family Enters.,
256 B.R. 377 (D.N.J. 2000) .................................................................................. 18

In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.,
789 F. Supp. 2d 935 (N.D. Ill. 2011) ................................................................... 28

In re Austrian and German Bank Holocaust Litig.,
80 F. Supp. 2d 164 (S.D.N.Y. 2000) .................................................................... 15

Bayat v. Bank of the W.,
No. 13 Civ. 02376, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ..................... 19

Bellifemine v. Sanofi-Aventis U.S. LLC,
No. 07 Civ. 02207, 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ....................... 15

In re BGI, Inc.,
465 B.R. 365 (Bankr. S.D.N.Y. 2012) ..................................................... 21, 22, 23

Carson v. American Brands, Inc.,
450 U.S. 79 (1981) ............................................................................................... 15

In re Cendant Corp. Sec. Litig.,
109 F. Supp. 2d 235 (D.N.J. 2000),
aff'd sub nom. In re Cendant Corp. Litig.,
264 F.3d 201 (3d Cir. 2001) ................................................................................. 19

Chatelain v. Prudential-BACHE Sec., Inc.,
805 F.Supp. 209 (S.D.N.Y. 1992) ................................................................. 17, 18

In re Chicken Antitrust Litig.,
669 F.2d 228 (5th Cir. 1982) ............................................................................... 26

City of Detroit v. Grinnell Corp. et al.,
      495 F.2d 463 (2d Cir. 1974),
      abrogated on other grounds by
      Goldberger v. Integrated Res., Inc.,
      209 F.3d 43 (2d Cir. 2000) ............................................................ 13, 19

City of Livonia Emp. Ret. Sys. v. Wyeth,
      No. 07 Civ. 10329, 2013 WL 4399015 (S.D.N.Y. Aug. 7, 2013) ............................................ 26

In re Crazy Eddie Sec. Litig.,
      824 F. Supp. 320 (E.D.N.Y. 1993) ............................................................ 19

Denney v. Deutsche Bank AG,
      443 F.3d 253 (2d Cir. 2006) ............................................................ 22

In re Drexel Burnham Lambert Grp., Inc.,
      960 F.2d 285 (2d Cir. 1992) ............................................................ 23

In re Global Crossing Sec. and ERISA Litig.,
      225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................ 17, 26

Gooden v. Suntrust Mortg., Inc.,
      No. 11 Civ. 02595, 2013 WL 6499250 (E.D. Cal. Dec. 11, 2013) ......................................... 16

Gordon v. Chase Home Fin., LLC,
      No. 11 Civ. 2001, 2013 WL 436445 (M.D. Fla. Feb. 5, 2013) ................................................ 16

Gustafson v. BAC Home Loans Serv., LP,
      294 F.R.D. 529 (C.D. Cal. 2013) ............................................................ 16

Hemi Grp., LLC v. City of New York, N.Y.,
      559 U.S. 1 (2010) ............................................................ 16

In re Initial Pub. Offering Sec. Litig.,
      226 F.R.D. 186 (S.D.N.Y. 2005) ............................................................ 11

In re Initial Pub. Offering Sec. Litig.,
      243 F.R.D. 79 (S.D.N.Y. 2007) ............................................................ 10

Kunzelmann v. Wells Fargo Bank, N.A.,
      No. 11 Civ. 81373, 2013 WL 139913 (S.D. Fla. Jan. 10, 2013) ............................................ 16

Lane v. Wells Fargo Bank, N.A.,
      No. 12 Civ. 04026, 2013 WL 3187410 (N.D. Cal. June 21, 2013) ......................................... 16

In re Lorazepam & Clorazepate Antitrust Litig.,
      205 F.R.D. 369 (D.D.C. 2002) ............................................................ 19

*Marisol A. v. Giuliani*,
  185 F.R.D. 152 (S.D.N.Y.1999) ................................................................ 15, 22

*In re Marsh & McLennan Co., Inc. Sec. Litig.*,
  No. 04 Civ. 8144, 2009 WL 5178546 (S.D.N.Y. 2009) ...................................... 23, 24

In re McDonnell Douglas Equip. Leasing Sec. Litig.,
  838 F. Supp. 729 (S.D.N.Y. 1993) .................................................................. 25

*In re MF Global Inc.*,
  466 B.R. 244 (Bankr. S.D.N.Y. 2012) ............................................................ 9, 20

In re Michael Milken and Assoc. Sec. Litig.,
  150 F.R.D. 46 (S.D.N.Y. 1993) .................................................................. 17, 19

Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC),
  478 F.3d 452 (2d Cir.2007) ........................................................................ 14

*In re Mut. Funds Inv.t Litig.*,
  MDL No. 1586, 2010 WL 2342413 (D. Md. May 19, 2010).................................... 28

*Myers v. Martin (In re Martin)*,
  91 F.3d 389 (3d Cir.1996) ........................................................................... 9

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997),
  *aff'd*, 117 F.3d 721 (2d Cir. 1997).............................................................. 12

*In re Prudential Sec. Inc. L.P. Litig.*,
  MDL No. 1005, 1995 WL 798907 (S.D.N.Y. Nov. 20, 1995)................................... 19

*Rothstein v. Balboa Ins. Co.*,
  794 F.3d 256 (2d Cir. 2015) .................................................................. 1, 4, 15

*Tiro v. Pub. House Invs., LLC*,
  Nos. 11 Civ. 7679 (CM), 11 Civ. 8249 (CM), 2013 WL 2254551 (S.D.N.Y. May 22, 2013) . 10

*In re Traffic Exec. Ass'n*,
  627 F.2d 631 (2d Cir. 1980) ...................................................................... 10

*In re Trinsum Grp., Inc.*,
  No. 08 Civ. 12547, 2013 WL 1821592 (Bankr. S.D.N.Y. Apr. 30, 2013)...................... 13, 14

*United States v. Rodolitz*,
  786 F.2d 77 (2d Cir. 1986) ...................................................................... 16

*In re Vitamins Antirust Litig.*,
  No. 99 Civ. 197, 2000 U.S. Dist. LEXIS 8931 (D.D.C. Mar. 30, 2000)................................... 26

Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,
  396 F.3d 96 (2d Cir. 2005) ................................................................................................. 12, 14

*In re Warfarin Sodium Antitrust Litig.*,
  212 F.R.D. 231 (D. Del. 2002),
  *aff'd*, 391 F.3d 516 (3d Cir. 2004) ........................................................................................ 19

*In re Waste Mgmt., Inc. Sec. Litig.*,
  No. 97 Civ. 7709, 1999 U.S. Dist. LEXIS 16566 (N.D. Ill. Oct. 18, 1999)............................ 20

Weinberger, et al. v. Kendrick, et al.,
  698 F.2d 61 (2d Cir. 1982) ..................................................................................................... 12

*Williams v. Wells Fargo Bank*, N.A.,
  280 F.R.D. 665 (S.D. Fla 2012) .............................................................................................. 16

*In re WorldCom, Inc.*, *et al.*,
  347 B.R. 123 (Bankr. S.D.N.Y. 2006) ............................................................................... 10, 11

**Statues**

Fed. R. Bankr. P. 7023 ...................................................................................................... *passim*

Fed. R. Bankr. P. 9019 ...................................................................................................... *passim*

Fed. R. Civ. P. 23 .............................................................................................................. *passim*

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 ...................................... 3

## I.    INTRODUCTION

1.    Plaintiffs Landon Rothstein, Jennifer Davidson, Robert Davidson, and Ihor Kobryn (collectively, "Plaintiffs") respectfully submit this motion pursuant to Fed. R. Bankr. P. 7023 and 9019 for an order:  (i) preliminarily approving the class action Settlement with respect to Plaintiffs' Bankruptcy Proofs of Claim,[1] (ii) certifying the Class and appointing Class Representatives and Class Counsel for purposes of the Settlement, (iii) approving the form and manner of notice to the Class, (iv) scheduling a fairness hearing, and (v) appointing the settlement administrator.[2]

2.    Plaintiffs are mortgagors who were charged for Lender-Placed Insurance ("LPI") by GMAC Mortgage, LLC ("GMACM").  On behalf of themselves and a proposed Class of similarly situated persons, as defined more specifically below, Plaintiffs have reached an agreement to settle the claims asserted in their Bankruptcy Proofs of Claim in exchange for an allowed unsecured claim not subject to subordination, represented by Claim No. 4074, in the amount of $13 million, against GMACM.  The Allowed Claim will be an "Allowed Borrower Claim" in Class GS-5, as set forth in the Chapter 11 Plan.

3.    The Settlement represents an excellent result for the Class in at least three respects.

4.    *First*, in *Rothstein v. Balboa Ins. Co.*, 794 F.3d 256 (2d Cir. 2015) ("*Rothstein*"), the Second Circuit dismissed Plaintiffs' claims against GMACM's former co-defendants in the

---

[1] Plaintiffs' Bankruptcy Proofs of Claim are Claim No. 4074 against GMACM and Claim No. 3966 against Residential Capital, LLC.

[2] All capitalized terms not otherwise defined shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement with Rothstein Plaintiffs, dated December 29, 2015 (the "Stipulation"), which is attached as Exhibit 1 to the accompanying Declaration of Mark A. Strauss (the "Decl.") dated January 11, 2016.

District Court.  Specifically, the court held that the claims against the Balboa Defendants – who allegedly had participated with GMACM in a scheme to overcharge Plaintiffs for LPI – were barred by the filed-rate doctrine.  Had there been no Settlement, there was a risk that Plaintiffs' Bankruptcy Proofs of Claim would have been dismissed based on this authority, leaving the Class with no recovery.

5.    *Second*, the Settlement establishes a non-reversionary common fund that will be distributed to the Class without a claims process.  Based on records produced by GMACM (the "Class Data"), all Class Members have been identified, and their Recognized Losses have been determined.  It is expected that the Settlement Administrator will issue approximately 61,788 checks to qualified Class Members.  This stands in marked contrast to other recent LPI class action settlements, all of which have been "claims made" settlements involving burdensome claim forms and in which it is doubtful that the defendants will pay any material consideration apart from the attorney's fees of the plaintiffs' counsel.

6.    *Third*, the $13 million Allowed Claim value represents a meaningful recovery – 16% of the approximately $80 million in estimated aggregate class-wide out-of-pocket losses, as explained more fully below.  Even discounted based on the expected payout for Class GS-5 claims, the recovery falls well within the "range of reasonableness" of class action settlements (particularly for consumer class action settlements, where "claims made," coupon, and *cy pres* settlements are the norm).

## II.    RELEVANT FACTS

### A.    Nature of the Claims and Procedural History

7.    On April 30, 2012, Plaintiffs commenced *Rothstein v. GMAC Mortgage, LLC*, No. 12 Civ. 3412 (S.D.N.Y.) (AJN), asserting claims on behalf of themselves and the Class against GMACM and its LPI carriers, *i.e.*, the Balboa Defendants.  Plaintiffs alleged that the defendants engaged in a fraudulent scheme to overstate GMACM's LPI costs, and, thereby, to recoup inflated reimbursements from Plaintiffs, who were obligated to indemnify those costs under their mortgages.  Plaintiffs alleged that GMACM charged Plaintiffs based on the full premiums while receiving secret rebates from the Balboa Defendants.  Plaintiffs asserted claims against all the defendants for violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO"), through predicate acts of mail and wire fraud and extortion. Additionally, Plaintiffs asserted common law claims against GMACM including breach of contract and breach of implied covenant of good faith and fair dealing.  Decl. Ex. 1, at 11-12.

8.    GMACM disputes each of Plaintiffs' allegations, and contends that all LPI charges were charged and collected in accordance with applicable law.

9.    On May 14, 2012, GMACM and certain of its affiliates filed this Chapter 11 Bankruptcy proceeding.

10.    On September 28, 2012, Plaintiffs filed their First Amended Complaint in the District Court, withdrawing the claims against GMACM due to the automatic stay, and adding claims against Ally based on theories of veil-piercing and *respondeat superior*.  *Id*., at 11.

11.    On November 9, 2012, Plaintiffs, on behalf of themselves and the putative Class, filed the Bankruptcy Proofs of Claim.  *Id*.

3

12.     On January 22, 2013, Plaintiffs filed their Second Amended Complaint (the "SAC") in the District Court.  On September 30, 2013, the District Court denied the Balboa Defendants' motion to dismiss the SAC, holding that Plaintiffs adequately alleged that the Balboa Defendants had committed RICO violations, and, additionally, that those claims were not barred by the filed-rate doctrine.  *Id.*, at 11-12.

13.     On June 25, 2014, the Second Circuit granted interlocutory appeal of the District Court's decision, and, on July 22, 2015, reversed, holding that the filed-rate doctrine did bar Plaintiffs' claims.  *See Rothstein,* 794 F.3d, at 259, 262-64.

14.     Meanwhile, in this Court, on December 21, 2012, Ally filed a motion joined by the Debtors to stay the *Rothstein* Action as against Ally pursuant to Bankruptcy Code section 362.  Plaintiffs opposed and cross-moved for relief from any applicable stay on April 2, 2013. *Id.*, at 13. On August 8, 2013, Plaintiffs filed an Objection and Reservation of Rights with respect to the Debtors' Disclosure Statement.  *Id.*

15.     On August 28, 2013, Ally, the Debtors, and the Committee filed an amended motion to stay the *Rothstein* Action as against Ally.  The matter was adjourned until the confirmation hearing of the Chapter 11 Plan.  *Id.*

**B.      The Parties' Arm's-Length Negotiations and the Investigation Conducted by Plaintiffs' Counsel**

16.     Plaintiffs' Counsel, the Debtors, and the Committee engaged in extensive arm's-length negotiations over a potential resolution of Plaintiffs' claims for a period of months prior to reaching the Settlement.  Those negotiations included a nearly day-long, face-to-face session on September 9, 2013, which included a business representative of GMACM.  *Id.*, at 14.

4

17.     Plaintiffs' Counsel also thoroughly investigated the facts and legal principles relating to Plaintiffs' claims.[3]  On September 20, 2013, Plaintiffs and the Debtors, with the agreement of the Committee, reached an agreement in principle to resolve the putative class claims asserted by Plaintiffs in the Bankruptcy Proofs of Claim on terms memorialized in the Stipulation.  Plaintiffs also agreed to support confirmation of the Chapter 11 Plan.  *Id.*, at 14-15.

### C.     The Production of the Class Data and the Identification of Class Members

18.     Prior to finalizing the Stipulation, Plaintiffs' Counsel and the Debtors engaged in extensive negotiations over the production of the Class Data to Plaintiffs' Counsel.  In June 2014, the Liquidating Trust, pursuant to a cooperation agreement it maintains with the Borrower Claims Trust, produced the Class Data to Plaintiffs' Counsel.  *Id.*, at 15.

19.     Plaintiffs' Counsel, with the assistance of Plaintiffs' Accounting Expert, conducted a computerized analysis of the Class Data.  Based on such analysis, Plaintiffs' Counsel identified approximately 143,973 borrowers as Class Members, and determined each of their Recognized Losses.  *Id.*, at 16.[4]

---

[3] The investigation of Plaintiffs' Counsel included, *inter alia*, examining publicly available information, reviewing and analyzing hundreds of pages of documents obtained in limited discovery in the *Rothstein* Action prior to the resolution of the Balboa Defendants' motion to dismiss, and reviewing and analyzing thousands of pages of documents regarding GMACM's LPI transactions that Plaintiffs' Counsel obtained pursuant to New York's Freedom of Information Law ("FOIL") from the New York State Department of Financial Services (the "NYSDFS").  Plaintiffs' Counsel also reviewed and analyzed the transcripts of testimony that representatives of GMACM and the Balboa Defendants gave at public hearings on LPI held by the NYSDFS on May 17-21, 2012. Decl. Ex. 1, at 14.

[4] The Recognized Losses of approximately 0.95% of the affected borrowers were unable to be determined by computerized analysis due to errors and discrepancies in the Class Data as maintained by GMACM. Under the Stipulation, those effected borrowers are deemed Class Members, and their Recognized Losses will be estimated as explained below in ¶ 37. Decl. Ex. 1, at 16.

D.      **Overview of The Settlement**

1.      **The Definition of the Settlement Class and the Exchange of the Allowed Claim for the Releases**

20.      The Stipulation, which reflects the final and binding agreement between the parties, calls for certification of the following Settlement Class:

> All residential mortgage loan borrowers whose loans were serviced by GMACM and from whose payments GMACM recouped or recovered, in whole or part, charges for Lender-Placed Insurance, including, without limitation, any borrowers whose payments were applied, in whole or part, to charges for Lender-Placed Insurance, at any time during the Class Period.[5]

*Id.*, at 8.

21.      Pursuant to the Stipulation, the claims set forth in the Bankruptcy Proofs of Claim are resolved in exchange for an allowed unsecured claim not subject to subordination, represented by Claim No. 4074, in the amount of $13 million, against GMACM only, on behalf of Plaintiffs and the Class.  Under the terms of the Stipulation, the Allowed Claim will be an "Allowed Borrower Claim" in Class GS-5, as set forth in the Chapter 11 Plan.[6]  Claim No. 3966 against Residential Capital will be disallowed and expunged.  *Id.*, at 2.

22.      In exchange for the foregoing relief, all Settlement Class Members who do not opt out of the Settlement will release the Released Parties from the Released Claims.  *Id.*, at 30.

23.      Once the Settlement Effective Date occurs, the Borrowers Claim Trust will pay the Settlement Amount on account of the Allowed Claim to the Escrow Agent in accordance

---

[5] The Class Period is defined as February 3, 2004 through October 2, 2013.  *See* Decl. Ex 1, at 4.

[6] Class GS-5 claims are estimated under the Disclosure Statement to yield a $0.30 per $1 recovery from the Borrower Claims Trust.

6

with the Chapter 11 Plan, the Borrower Claims Trust Agreement, and any applicable order of the Bankruptcy Court. *Id*., at 24.

## 2.    The Notice Program, Opt-Out Procedure, and Opportunity to Object

24.    The notice program is multi-pronged.  By the deadline prescribed in the Notice Order, the Settlement Administrator will mail the Summary Direct U.S. Mail Postcard Notice, in the form attached to the Stipulation as Exhibit A-3, to Class Members via First-Class U.S. Postcard, at their last known address as derived from the Class Data and as updated by the Settlement Administrator using the National Change of Address Database.  The Settlement Administrator will also cause the Publication Notice, in the form attached to the Stipulation as Exhibit A-2, to be published once in the *USA Today* and to be transmitted over the *PR Newswire*. Decl. Ex. 1, at 28.

25.    The Settlement Administrator will also establish a website with information about the Settlement which will include electronic copies of the Stipulation, the Publication Notice, and the Notice in the form attached to the Stipulation as Exhibit A-1.  All the notices will include contact information for Plaintiffs' Counsel and the Settlement Administrator in the event that Class Members desire to communicate with either.  The Summary Direct U.S. Mail Postcard Notice and the Publication Notice will refer Class Members to the website for the full Notice. Decl. Ex. 1, at 28.

26.    Class Members wishing to exclude themselves may do by mailing a written request for exclusion to the Settlement Administrator by the deadline prescribed in the Notice. Stip. Ex. A-1, at 10.

27.    Any Class Member who does not timely and validly request to be excluded may object to the Settlement or to Class Counsel's fee application.  To be considered, an objection

must be sent to the Settlement Administrator, postmarked by the deadline proscribed by the Notice, and must include the information prescribed in the Notice.  *Id.*

### 3.    Payment of Attorney's Fees, Expenses, and Incentive Awards

28.    Plaintiffs' Counsel will apply for, and the Settling Defendants will not oppose, an award of attorneys' fees on behalf of itself and Plaintiffs' Special Bankruptcy Counsel not to exceed 35% of the Settlement Fund, plus interest, and reimbursement of Litigation Expenses of approximately $250,000, including fees of experts and consultants, as set forth in the Notice. Any award of attorneys' fees or reimbursement of Litigation Expenses, as well as Notice and Administration Costs, shall be paid from the Settlement Fund.  Decl. Ex. 1, at 22.

29.    Additionally, Plaintiffs' Counsel will request, and the Settling Defendants will not oppose, incentive awards of $2,500 to each of the Plaintiffs.  *Id.*, at 23[7]

### 4.    The Plan of Allocation

30.    The Net Settlement Fund will be allocated to Class Members *pro rata* based on the Recognized Loss of each Class Member relative to the total Recognized Losses of all Class Members.  Each Class Member's Recognized Loss will be equal to 25% of the amount that GMACM recouped or recovered from that Class Member for LPI during the Class Period, as determined through Plaintiffs' Counsel's Forensic Accounting Expert's analysis of the Class Data.  *Id.*, at 31.[8]  With respect to those Class Members as to whom the Class Data contained errors or discrepancies making computerized calculations impossible, those amounts will be deemed to be 42% of those Class Members' LPI charges, reflecting the overall rate at which

---

[7] The attorneys' fees and incentive awards requests will be consistent with those approved by this Court in the *Kessler Settlement*.  *See* Doc. 5968.

[8] Based on its investigation, Plaintiffs' Counsel estimates that approximately 25% of the gross LPI charges represented overcharges.

GMACM recouped or recovered LPI charges from other Class Members during the Class Period. *Id.*

31.     Upon entry of the Class Distribution Order, the Settlement Administrator will issue distribution checks to Class Members whose allocation is $10 or more.[9]  *Id.*, at 31-32. Plaintiffs' Counsel estimates that approximately 61,788 of the approximately 143,973 Class Members will receive distribution checks.  *Id.*

## III.    ARGUMENT

### A.    The Settlement Should Be Preliminarily Approved

32.     "Settlements and compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate." *In re MF Global Inc.*, 466 B.R. 244, 247 (Bankr. S.D.N.Y. 2012) (citing *Myers v. Martin* (*In re Martin*), 91 F.3d 389, 393 (3d Cir.1996)).

33.     Procedurally speaking, court review of a proposed class action settlement is subject to two steps.  *First*, the settlement must be preliminarily approved by the court.   *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).   Once the court preliminarily approves the settlement, "it then must direct the preparation of notice informing class members of the certification of the settlement class, the proposed settlement and the date of the final fairness hearing."  *Id.*; *see also* Fed. R. Civ. P. 23(e)(1). *Second*, after the court directs notice, class members will have an opportunity to "present their views of the proposed settlement," including the ability to present evidence for or against the terms of the proposed

---

[9] The total of all Class Member allocations below $10 will constitute a gross-up residual.  The gross-up residual will be re-allocated among those Class Members whose allocations are $10 or more.  Plaintiffs' Counsel estimates that the gross-up residual will constitute approximately 17% of the Net Settlement Fund.  Decl. Ex. 1, at 31-32.

settlement prior to the court deciding whether the settlement is fair, reasonable and adequate. *Initial Pub. Offering*, 243 F.R.D. at 87.

34.    In order for a class action settlement to be approved in bankruptcy court, the settlement must be both procedurally and substantively fair under Rule 23 and Bankruptcy Rule 9019.  *See In re WorldCom, Inc.*, *et al.*, 347 B.R. 123, 143-49 (Bankr. S.D.N.Y. 2006).  To grant preliminary approval, the court need only find that "probable cause" exists to submit the proposed class action settlement to the class members and to establish a full-scale hearing for the purpose of determining final approval.  *Tiro v. Pub. House Invs., LLC*, Nos. 11 Civ. 7679 (CM), 11 Civ. 8249 (CM), 2013 WL 2254551, at *1 (S.D.N.Y. May 22, 2013) (citing *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980)).

35.    This "probable cause" analysis looks to whether a settlement is "within the range of possible settlement approval."  *Tiro*, 2013 WL 2254551, at *1-2.  Where the proposed settlement appears to be "the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted."  *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005).

36.    Here, the Settlement easily meets these standards.  The Settling Parties assert that the proposed settlement is fair, equitable and in the best interest of the Class Members, the Debtors' estates, the Borrowers Trust and its constituents.  Decl. Ex. 1, at 16-17.  The Settlement Amount is fair and reasonable in light of the risks of continued litigation, and the necessary incurrence of significant costs and expenses on the part of all Settling Parties had litigation continued.  *Id*.  The Settlement also avoided litigation with respect to Plaintiffs' Plan objections, and provided certainty as to the amount of Plaintiffs' Bankruptcy Proofs of claim.  *Id*.

### 1. The Settlement Was Negotiated at Arm's-Length and Is Supported by Plaintiffs and Their Experienced Counsel

37.     Both Rule 23 and Bankruptcy Rule 9019 require the court to assess whether a proposed settlement is free from collusion and inadequate representation. *See WorldCom*, 347 B.R. at 143.  The compromise must be the result of arm's-length negotiations among the parties. *See Weinberger, et al. v. Kendrick, et al.*, 698 F.2d 61, 74 (2d Cir. 1982).  A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (citation and internal quotation marks omitted); *see In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

38.     Here, the terms and conditions of the Settlement were reached after vigorous litigation in both the District Court and this Court, and through good faith, extensive arm's-length negotiations between well-represented parties.  Those negotiations included a nearly day-long, face-to-face negotiation session between counsel for Plaintiffs, the Debtors, and the Committee, and with the participation of a business representative of GMACM.  Decl. Ex. 1, at 38.

39.     Moreover, Plaintiffs' Counsel is experienced in handling class action litigation, as documented in their résumé.  *Id.*, Decl. Ex. 4.  Additionally, Plaintiffs' Counsel was assisted by Plaintiffs' Special Bankruptcy Counsel who was retained to assist in understanding the bankruptcy issues relating to the ability to litigate and collect on the claims from the Debtors' estates. *Id.* at 17.

40.    Counsel for the Committee also assisted in the negotiations.  The experience and guidance of counsel for the Committee contributed to the ability of the Settling Parties to evaluate and endorse the Settlement.  *Id.*

41.    Hence, the circumstances of this Settlement give rise to a presumption of fairness. *See, e.g.*, *In re Trinsum Grp., Inc.*, No. 08 Civ. 12547, 2013 WL 1821592, at *7 (Bankr. S.D.N.Y. Apr. 30, 2013) (granting approval where, *inter alia*, "the Settlement was negotiated by experienced counsel, and there [was] no evidence to suggest it is not the product of arm's length bargaining.").

## 2.    The Settlement Terms Are Fair, Reasonable and Adequate Under the *Grinnell* Factors

42.    Courts in this Circuit look to the *Grinnell* factors to determine whether the substantive terms of a settlement are fair, reasonable, and adequate.[10]  Here, those factors clearly favor approval.

### a.    Continued Litigation Would Be Complex, Expensive, and Protracted

43.    The complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement.  *See Trinsum Grp., Inc.*, 2013 WL 1821592, at *4

---

[10] The *Grinnell* factors are:  (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *City of Detroit v. Grinnell Corp. et al.*, 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  Because the second *Grinnell* factor – the reaction of the class to the settlement – is only applicable at the "fairness hearing" stage, it is not addressed herein.

(citing *Motorola, Inc. v. Official Comm. of Unsecured Creditors* (*In re Iridium Operating LLC*), 478 F.3d 452, 462 (2d Cir.2007)).

44.     Here, the Settlement precluded potentially protracted litigation over the Bankruptcy Proofs of Claim – which raised complex legal and factual issues and likely would have required extensive third-party discovery (*i.e.*, of the Balboa Defendants) – and the motions regarding the stay of the *Rothstein* Action as against Ally.

45.     The Settlement also removed a potential impediment to confirmation of the Chapter 11 Plan.  In return for the Settlement, Plaintiffs agreed to drop their objections and support the Chapter 11 Plan.  Decl. Ex. 1, at 17.

> ### b.     Plaintiffs Have Sufficient Information to Make an Informed Decision as to Settlement

46.     The third *Grinnell* factor, which looks to the "stage of the proceedings and the amount of discovery completed," *Wal-Mart*, 396 F.3d at 117, focuses on whether the plaintiffs "obtained sufficient information through discovery to properly evaluate their case and to assess the adequacy of any settlement proposal."  *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 02207, 2010 WL 3119374, at *3 (S.D.N.Y. Aug. 6, 2010).

47.     The Settlement was reached after extensive litigation in this Court and the District Court.  Plaintiffs and their Counsel were intimately familiar with the strengths and weaknesses of the claims and defenses by virtue of their investigation of the facts and legal principles relating to Plaintiffs' claims.  *See* ¶¶ 7-15, *supra*.  Hence, Plaintiffs and their Counsel were well versed in the factual and legal aspects of the claims, and had sufficient information to justify their decision.

### c.    Plaintiffs Faced Significant Risks in Establishing Liability and Damages

48.    Plaintiffs faced significant risks.[11]  In *Rothstein*, the Second Circuit dismissed the claims against the Balboa Defendants as barred by the filed-rate doctrine.  *See Rothstein*, 794 F.3d, at 259, 262-64.  Had there been no Settlement, there was a risk that Plaintiffs' Bankruptcy Proofs of Claim would have been denied based on this authority, leaving the Class with no recovery.

49.    There was also a serious risk that this Court would refuse to certify the proposed Class.  Numerous courts have declined class certification in LPI cases (or limited the class to a single state).[12]  Had that occurred, any Class Members who timely filed proofs of claim in the Bankruptcy would have been forced to proceed individually.  Other Class Members (presumably the vast majority) would have been barred by the Chapter 11 Plan releases.[13]

---

[11] In evaluating the risks of establishing liability, the Court is not required to "decide the merits of the case or resolve unsettled legal questions," *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981), or to "foresee with absolute certainty the outcome of the case," *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 177 (S.D.N.Y. 2000).  Rather, the Court "must only 'weigh the likelihood of success by the plaintiff class against the relief offered by the settlement.'"  *Id. (quoting Marisol A. v. Giuliani*, 185 F.R.D. 152, 164 (S.D.N.Y.1999)).

[12] *See Gooden v. Suntrust Mortg., Inc.*, No. 11 Civ. 02595, 2013 WL 6499250, at *9 (E.D. Cal. Dec. 11, 2013) (denying certification); *Gustafson v. BAC Home Loans Serv., LP*, 294 F.R.D. 529, 550 (C.D. Cal. 2013) (same); *Gordon v. Chase Home Fin., LLC*, No. 11 Civ. 2001, 2013 WL 436445, at *12 (M.D. Fla. Feb. 5, 2013) (same); *Kunzelmann v. Wells Fargo Bank, N.A.*, No. 11 Civ. 81373, 2013 WL 139913, at *13 (S.D. Fla. Jan. 10, 2013) (same); *Lane v. Wells Fargo Bank*, N.A., No. 12 Civ. 04026, 2013 WL 3187410, at *16 (N.D. Cal. June 21, 2013) (certifying only single-state class); *Williams v. Wells Fargo Bank*, N.A., 280 F.R.D. 665, 675 (S.D. Fla 2012) (same).

[13] Plaintiffs also faced risks in proving their RICO claims.  Plaintiffs would have had to show that GMACM "participated in a scheme to defraud" and evinced a "specific intent to defraud." *Americana de Vapores, S.A. v. IBJ Schroder Bank & Trust Co.*, 785 F.Supp. 411, 424 (S.D.N.Y. 1992) (citing *United States v. Rodolitz*, 786 F.2d 77, 80 (2d Cir. 1986)).  Plaintiffs also would have had to establish proximate causation and RICO standing.  *See Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1 (2010).

50.    Plaintiffs also faced risks with respect to the applicable statutes of limitations. Had Plaintiffs been unable to prove equitable tolling, which GMACM was likely to dispute, the Class Period and recoverable damages would have been substantially reduced.

51.    Plaintiffs also would have been hampered by the fact that much of their case depended on the testimony of hostile witnesses – employees of GMACM and the Balboa Defendants – and on complex expert testimony likely to be contested by GMACM's own witnesses.

52.    Plaintiffs also faced substantial risks in proving damages.  "In class actions, the 'complexities of calculating damages increase geometrically.'"  *Chatelain v. Prudential-BACHE Sec., Inc.*, 805 F.Supp. 209, 214 (S.D.N.Y. 1992) (citation omitted); *see In re Michael Milken and Assoc. Sec. Litig.*, 150 F.R.D. 46, 54 (S.D.N.Y. 1993) (observing that proving damages often becomes a "battle of experts . . . with no guarantee of the outcome").  Here, establishing class damages required expert analysis of literally millions of transactions.

53.    Accordingly, the Class faced significant risks, compared to the certain relief provided by the Settlement.  *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 456-57 (S.D.N.Y. 2004).

### d.    Risks of Maintaining Class Action Status Through Trial

54.    Plaintiffs are confident they would have obtained and maintained class action status.  Nonetheless, defendants would have been entitled to challenge certification, and to seek an order limiting and/or de-certifying the Class.  *See* Fed. R. Bankr. P. 7023(c); *Chatelain*, 805 F. Supp. at 214.  The Settlement assures the broadest possible class-wide relief.

### e.    Ability to Withstand Greater Judgment

55.    As a Chapter 11 debtor, GMACM *per se* was unable to withstand a greater judgment.[14]

### f.    The Settlement Amount Is in the Range of Reasonableness in Light of the Best Possible Recovery and All the Attendant Risks of Litigation

56.    The $13 million Allowed Claim value represents a meaningful recovery – 16% of the approximately $80 million in estimated aggregate class-wide out-of-pocket losses.[15]  Decl. Ex. 1, at 2, 16.  Even discounted based on the expected payout for Class GS-5 claims, this recovery falls well within the "range of reasonableness" for class action settlements.[16]  *See Bayat v. Bank of the W.*, No. 13 Civ. 02376, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) (approving consumer settlement recovering 0.7% of potential damages); *In re Prudential Sec. Inc. L.P. Litig.*, MDL

---

[14] *See In re Am. Family Enters.*, 256 B.R. 377, 420 (D.N.J. 2000) (debtor defendants "cannot withstand any significant judgment at all, let alone a greater judgment than the . . . monetary relief being offered in compromise.  Accordingly, this factor weighs most heavily in favor of the proposed settlement.").

[15] GMACM recouped or recovered approximately $321 million in LPI charges from Class Members, according to the analysis of Plaintiffs' Counsel's Forensic Accounting Expert.  Plaintiffs' Counsel estimates that approximately 25% of those charges (or $80 million) constituted overcharges.  $13 million/$80 million = 16%.

[16] Potential treble damages for federal claims need not be taken into account when determining the reasonableness of a recovery.  *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 257-58 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004); *see In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 376 n.12 (D.D.C. 2002) ("[T]he standard for evaluating settlement involves a comparison of the settlement amount with the estimated single damages," not treble damages) (citations omitted).

No. 1005, 1995 WL 798907 (S.D.N.Y. Nov. 20, 1995) (approving settlement of RICO claims

recovering between 1.6% and 5% of claimed damages); *see generally Grinnell*, 495 F.2d at 455

n.2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a

hundredth or even a thousandth part of a single percent of the potential recovery.").[17]

57.     Indeed, "[a] court's responsibility is to 'canvass the issues and see whether the

settlement falls below the lowest point in the range of reasonableness.'" *In re MF Global Inc.*,

466 B.R. at 247 (internal citations omitted).  This Settlement ranks far above that point.

58.     The adequacy of the recovery is amplified by the fact that it is in the form of a

non-reversionary common fund that will be distributed to the Class without a claims process.

Decl. Ex. 1, at 27.  This stands in marked contrast to typical consumer class actions.  According

to one study, two-thirds of consumer class actions are dismissed, and "virtually all" of the rest

result in "claims made" or injunctive relief/*cy pres* settlements that "produce negligible benefits

for class members."  *See* Mayer Brown LLP, *Do Class Actions Benefit Class Members, An

Empirical Analysis of Class Actions*, at 6 (2013).  Decl. Ex. 2.  The median settlement "value"

for consumer class actions from 2010-13 was only $9 million, and that figure included "non-

monetary payments 'in-kind', including product replacements, vouchers or coupons" and

"contributions to charity."  NERA, *Consumer Class Action Settlements: 2010 - 2013*, at 1 (July

22, 2014).  Decl. Ex. 3.  Here, qualified Class members will receive cash.

---

[17] *See In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320 (E.D.N.Y. 1993) (approving securities settlement of between 6% and 10% of damages); *In re Michael Milken & Assocs. Securities Litig.*, 150 F.R.D. 57 (S.D.N.Y. 1993) (7.5%); *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 263 (D.N.J. 2000), *aff'd sub nom. In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) (5.4%); *In re Waste Mgmt., Inc. Sec. Litig.*, No. 97 Civ. 7709, 1999 U.S. Dist. LEXIS 16566, (N.D. Ill. Oct. 18, 1999) (4%).

59.     The Settlement is also exemplary in comparison to other recent LPI class action settlements, all of which have been "claims made."[18]  There, class members have been required to complete burdensome claim forms (which the defendants have been entitled to audit), and there is no assurance that the defendants will pay any material consideration apart from the attorneys' fees of the plaintiffs' counsel, or that any class members will receive any compensation.  Understandably, those settlements have been challenged as collusive and unfair.[19]

60.     The recovery is also fair, reasonable, and adequate considering the serious risks faced by the Class, as set forth in Point III.A.2, *supra*.

**B.    A Settlement Class Should Be Certified**

61.     "Class actions in bankruptcy court are governed by Rule 23 of the Federal Rules of Civil Procedure, made applicable to an adversary proceeding by Rule 7023 of the Federal Rules of Bankruptcy Procedure."  *In re BGI, Inc.*, 465 B.R. 365, 374 (Bankr. S.D.N.Y. 2012) (Glenn, J.)  "Rule 23 establishes four prerequisites that must be satisfied in order for a class action proceeding to go forward: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4)

---

[18] *See, e.g., Casey. v. Citibank*, No. 12 Civ. 00820, Settlement Agreement and Release, ECF. No. 144-4, at 7 (N.D.N.Y. Feb. 5, 2014; *Diaz v. HSBC Bank USA*, et al., No. 13 Civ. 21104, Stipulation and Settlement Agreement, ECF No. 101-1, at 8 (S.D. Fla. Feb. 28, 2014; *Fladell et al., v. Wells Fargo Bank, et al.*, No. 13 Civ. 60721, Stipulation and Settlement Agreement, ECF No. 158-1, at 24 (S.D. Fla. Mar. 5, 2014; *Saccoccio v. JP Morgan Chase Bank*, No. 13 Civ. 21107, Stipulation and Settlement Agreement, ECF No. 59-1, at 23 (S.D. Fla. Sept. 6, 2013; *Hall v. Bank of Am., et al.,* No. 12 Civ. 22700, Settlement Agreement, ECF No. 376-1, at 22 (S.D. Fla. Apr. 3, 2014).

[19] *See Casey*, No. 12 Civ. 820, Campbell Objection, ECF No. 183, at 11 (July 7, 2014); *Diaz*, No. 13 Civ. 21104, Kirktindoll Objection, ECF No. 165, at 12 (Aug. 27, 2014); *Fladell*, No. 13 Civ. 60721, Vanskyock Objection, ECF No. 193, at 5 (Aug. 19, 2014); *Saccoccio*, No. 13 Civ. 21107, Aquino Objection, ECF No. 97, at 5 (Jan. 15, 2014); *id.*, Pearson Objection, ECF No. 93, at 9 (Jan. 13, 2014); *Hall*, No. 12 Civ. 22700, Trapasso Objection, ECF No. 412, at 2 (Sept. 26, 2014).

the representative parties will fairly and adequately protect the interests of the class." *Id.*, at 374-75.

62.    A court may certify a class for settlement purposes, *see id.* at 375, provided that the court conducts an inquiry under Rules 23(a) and (b).[20] *See also Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006).

63.    Here, the requirements for certification for settlement purposes are met, and the Settling Defendants consent to such relief.  Decl. Ex. 1, at 17.

### 1.    Numerosity

64.    Plaintiffs' Counsel has identified 143,973 Class Members.  *Id.*, at 16.  This leaves no doubt as to numerosity.  *See In re BGI, Inc.*, 465 B.R. at 374.

### 2.    Commonality

65.    Rule 23(a)(2) requires that, in order for an action to be certified as a class action, there must be questions of law or fact common to the class.  This requirement is satisfied if the named plaintiffs share at least one question of law or fact common with the members of the class. *See In re BGI, Inc.*, 465 B.R. at 375; *see also Marisol A.*, 126 F.3d at 376.

66.    Plaintiffs share numerous questions of law and/or fact with the Class including, but not limited to, whether: (i) GMACM violated RICO through predicate acts of mail or wire fraud; (ii) GMACM breached any contractual obligations to Class Members; (iii) GMACM breached any obligations of good faith and fair dealing to Class Members; and (iv) the filed-rate doctrine applies.

---

[20] In determining whether to certify a settlement class, the manageability concerns of Rule 23(b)(3) are not relevant.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 622 (1997).

### 3.  Typicality

67.  Plaintiffs' claims stem from the same common course of conduct as those of the Class.  Plaintiffs and the Class are all mortgagors charged for LPI by GMACM who allege that GMACM engaged in a fraudulent scheme to overstate its LPI costs, and, thereby, to recoup inflated reimbursements from them under their mortgages.  Hence, Plaintiffs' and Class Members' interests are aligned, and typicality is satisfied.[21]

### 4.  Adequacy

68.  Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interest of the class."  The adequacy requirement is met where it appears that: (1) the named plaintiffs' interests are not antagonistic to the class' interests; and (2) the named plaintiffs' attorneys are qualified, experienced, and generally able to conduct the litigation.  *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 290 (2d Cir. 1992); *In re Marsh & McLennan Co., Inc. Sec. Litig.*, No. 04 Civ. 8144, 2009 WL 5178546, at *10 (S.D.N.Y. 2009).

69.  Plaintiffs' Counsel specializes in class action and complex litigation in courts throughout the country, and is eminently qualified, experienced and able to conduct this litigation, as documented in its résumé.  *See* Decl., Ex. 4.  Similarly, Plaintiffs' Special Bankruptcy Counsel is experienced, qualified, and able to assist Plaintiffs' Counsel in navigating the intricacies of these bankruptcy proceedings.[22]  Moreover, as set forth above, because Plaintiffs and the Class were injured by the same alleged misconduct, their interests and claims are aligned.  Nothing suggests that any antagonistic interests exist.

---

[21] Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The requirement is met where "each class member's claim arises from the same course of events, and each class member makes the same legal arguments to prove the defendant's liability." *In re BGI, Inc.*, 465 B.R. at 375.

[22] *See* http://www.hoganmcdaniel.com/.

20

### 5. Predominance of Common Questions and Superiority to Other Methods of Adjudication

70.     To certify a class under Rule 23(b)(3), a court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *In re Marsh*, 2009 WL 5178546, at *11. The inquiry determines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 623, and is "similar" to Rule 23(a)(3)'s typicality requirement. *Id.* at 623 n.18.

71.     Here, predominance is satisfied because Plaintiffs' claims are susceptible to class-wide proof, *i.e.*, by showing that GMACM allegedly received secret rebates yet charged borrowers for reimbursement based on the full premiums.

72.     Rule 23(b)(3) also sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability . . . of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

73.     Here, separate actions are impossible for all or the vast majority of Class Members by virtue of the Chapter 11 Plan releases. Moreover, it is clearly desirable to concentrate the claims of all Class Members in this forum, and Plaintiffs do not foresee any management difficulties, particularly given that all Class Members already have been identified

21

and their Recognized Losses determined based on the Class Data.  Accordingly, the requirements

of Rule 23(b)(3) are satisfied.

### C.    The Plan of Allocation Should be Approved

74.    "An allocation formula need only have a reasonable, rational basis, particularly if

recommended by 'experienced and competent' class counsel."    *In re Am. Bank Note*

*Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001) (citation omitted).

75.    Here, the Plan of Allocation, devised by Plaintiffs' Counsel, provides for the

proportional allocation of the Net Settlement Fund based on each Class Member's Recognized

Loss.  Decl. Ex. 1, at 31.  Courts deem the apportionment of available funds according to the

relative amount of damages suffered by class members to be fair and reasonable.[23]  The $10 *de*

*minimis* threshold for the receipt of distributions is also fair and reasonable.  Courts routinely

approve similar thresholds.[24]

76.    It is also fair and reasonable to compute the Recognized Losses of those Class

Members with respect to whom the Class Data contained errors or discrepancies which made

computerized calculations impossible by using the 42% estimate (which was arrived at based on

the overall rate at which GMACM recouped or recovered LPI charges from other Class

---

[23] *See In re McDonnell Douglas Equip. Leasing Sec. Litig.*, 838 F. Supp. 729, 733-35 (S.D.N.Y. 1993); *In re Vitamins Antitrust Litig.*, No. 99 Civ. 197, 2000 U.S. Dist. LEXIS 8931, at *32 (D.D.C. Mar. 30, 2000) (citing *Beecher v. Able*, 575 F.2d 1010, 1013-14 (2d Cir. 1978)); *In re Chicken Antitrust Litig.*, 669 F.2d 228, 240-41 (5th Cir. 1982).

[24] *See Global Crossing*, 225 F.R.D. at 463 (approving similar threshold in recognition of the fact that "settlements that distribute checks for less than $10 require disproportionately more follow-up, have a disproportionately high number of uncashed checks, require more checks to be reissued, and often involve second or third distributions of settlement funds."); *City of Livonia Emp. Ret. Sys. v. Wyeth*, No. 07 Civ. 10329, 2013 WL 4399015, at *2 (S.D.N.Y. Aug. 7, 2013) (same, as "'very small checks, i.e. those under $10.00, are often not cashed initially, and in many cases are never cashed.'").

Members).  Courts routinely approve the use of similar estimates and extrapolations in recovery

allocations and damages calculations.[25]

### D.    The Notice Program Should Approved

77.    Rule 23(e)(1) provides that the court "must direct notice in a reasonable manner

to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).   Rule

23(c)(2)(B), in turn, governs notice requirements for Rule 23(b)(3) classes.   For any class

certified under Rule 23(b)(3), the court must direct to class members the best notice that is

practicable under the circumstances, including individual notice to all members who can be

identified through reasonable effort.   Fed. R. Civ. P. 23(c)(2)(B).   The notice must clearly and

concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition

of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter

an appearance through an attorney if the member so desires; (v) that the court will exclude from

the class any member who requests exclusion; (vi) the time and manner for requesting exclusion;

and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).  *Id.*[26]

78.    Here, the notice program fully complies with Fed. R. Civ. P. 23 and due process.

The Settlement Administrator will mail the Summary Direct U.S. Mail Postcard Notice via First-

---

[25]   *See In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D at 260 (approving loss formula based on averages from available data); *In re Citigroup Inc. Sec. Litig.*, No. 07 CIV. 9901, 2014 WL 2445714, at *2 (S.D.N.Y. May 30, 2014) (allocating recovery based on estimates); *In re Lorazepam*, 205 F.R.D.at 382; *see also Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 799 (8th Cir. 2014); *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1256-57 (10th Cir. 2014).

[26] In terms of form, "[t]he notice need not be highly specific," and courts have approved very general descriptions of a proposed settlement under the theory that "notices to class members can practicably contain only a limited amount of information." *In re PaineWebber*,171 F.R.D. at 124 (quoting Weinberger, 698 F.2d at 72).   As for the manner of notice, due process requires that "notice [be] reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Class U.S. Postcard to Class Members' last known addresses as derived from the Class Data and as updated using the National Change of Address Database. The Settlement Administrator will cause the Publication Notice to be published once in the *USA Today* and transmitted over the *PR Newswire*. The Settlement Administrator will also establish a Settlement website which will include electronic copies of the Stipulation, the Publication Notice, and the Notice.

79. The Summary Direct U.S. Mail Postcard Notice and the Publication Notice will direct Class Members to the website for the full Notice, which contains all the information required by Fed. R. Civ. P. 23(c)(2)(B). Decl. Ex. 1, at 28.[27]

**E.    Kurtzman Carson Consultants LLC Should Be Appointed as Settlement Administrator**

80. Plaintiffs propose that the Court appoint Kurtzman Carson Consultants LLP ("KCC") as Settlement Administrator to administer the settlement under the supervision of Plaintiffs' Counsel. KCC has extensive experience in administering settlement of securities class actions,[28] and, based on Plaintiffs' Counsel's review, KCC submitted a proposal that provided for notice and distribution to proceed in a cost-efficient and timely manner.

**IV.    CONCLUSION**

81. For the reasons set forth in this memorandum, the Court should enter an order: (1) granting preliminary approval of the proposed Settlement; (2) certifying the Settlement Class for settlement purposes; (3) appointing Plaintiffs' Counsel as Class Counsel for the Settlement Class and Plaintiffs as Class Representatives; (4) approving the parties' proposed form and method of

---

[27] "The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Tech., Inc. Sec. Litig.*, 298 F.R.D. 171, 182 n.3 (S.D.N.Y. 2014); *see In re Mut. Funds Inv.t Litig.*, MDL No. 1586, 2010 WL 2342413, at *6–7 (D. Md. May 19, 2010); *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig*., 789 F. Supp. 2d 935, 973 (N.D. Ill. 2011).

[28] *See* KCC, *What We Do*, http://www.kccllc.com/class-action/what-we-do (last visited Dec. 30, 2015).

giving notice to the Settlement Class; (5) directing that notice be given to the Settlement Class;

and (6) scheduling a hearing at which the Court will consider (a) the parties' request for final

approval of the Settlement, and (b) Plaintiffs' Counsel application for an award of attorney's fees

and reimbursement of Litigation Expenses.

Dated: January 11, 2015

                        Respectfully Submitted,

                        **KIRBY McINERNEY LLP**

By:      /s/ Mark A. Strauss
            Mark A. Strauss
            Thomas W. Elrod
            825 Third Avenue, 16th Floor
            New York, NY  10022
            Tel:  (212) 371-6600
            Fax:  (212) 751-2540

            -and-

            /s/Garvan F. McDaniel
            Garvan F. McDaniel
            HOGAN♦McDANIEL
            1311 Delaware Avenue
            Wilmington, DE 19806
            Tel: (302) 656-7540
            Fax: (302) 656-7599

            *Counsel for Plaintiffs Landon Rothstein, Jennifer*
            *Davidson, Robert Davidson, and Ihor Kobryn*