**Hearing Date: January 26, 2016 at 9:00 a.m. (ET)**

MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone:     (212) 468-8000
Facsimile:     (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
James A. Newton

*Counsel for the ResCap Borrower*
*Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------
                                                    )
In re:                                              )     Case No. 12-12020 (MG)
                                                    )
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,            )     Chapter 11
                                                    )
                                   Debtors.          )     Jointly Administered
                                                    )
-------------------------------------------------------------------------

**RESCAP BORROWER CLAIMS TRUST'S MEMORANDUM OF**
**LAW IN SUPPORT OF OBJECTION TO PROOF OF CLAIM**
**<u>NO. 725 FILED BY WILLIAM J. FUTRELL</u>**

# TABLE OF CONTENTS

Preview of the Case ........................................................................................................ 1

Analysis of Law and Facts ............................................................................................ 3

I.      Facts ................................................................................................................... 3

        A.      Background Regarding the Loan and the Property .................................. 3

        B.      The 2009 HAMP Trial Plan and Creation of the Escrow Account ........... 4

        C.      GMAC Mortgage's Responses to Claimant's Inquiries and the
                Status of Claimant's Loan Account ........................................................ 7

II.     Application of Law to the Facts ...................................................................... 12

        A.      Claimant Concedes That All But One of the Claimant's Letters
                Were Not QWRs .................................................................................... 12

        B.      GMAC Mortgage Complied with RESPA by Timely Responding
                to Claimant's Information Requests in the October 30, 2009 Letter ....... 12

        C.      Claimant Has Failed to Identify Any Damages Caused by GMAC
                Mortgage's Alleged Violation of RESPA With Respect to the
                October 30, 2009 Letter ........................................................................ 16

        D.      Claimant Also Has Failed to Show That He is Entitled to Statutory
                Damages ................................................................................................ 20

        E.      Any Damages Claimant Suffered Should be Reduced Due to
                Claimant's Failure to Mitigate Those Damages ..................................... 21

        CONCLUSION ................................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aluia v. Dyck-O'Neal, Inc.*,
  No. 2:15-CV-81-FTM-38MRM, 2015 WL 4349090 (M.D. Fla. July 14, 2015).....................21

*Bates v. JPMorgan Chase Bank, NA*,
  768 F.3d 1126 (11th Cir.2014) .....................................................................................15, 18

*Berneike v. CitiMortgage, Inc.*,
  *708 F.3d 1141 (10th Cir. 2013)* .........................................................................................13

*Bonadio v. PHH Mortage Corp.*,
  No. 12.............................................................................................................................16

*Bulmer v. MidFirst Bank, FSA*,
  59 F. Supp. 3d 271 (D. Mass. 2014) .................................................................................21

*Callander v. Sheridan*,
  546 N.E.2d 850 (Ind. Ct. App. 1989).................................................................................22

*Cowan v. City of Mt. Vernon*,
  95 F. Supp. 3d ...............................................................................................................20

*Deible v. Poole*,
  691 N.E.2d 1313 (Ind. Ct. App. 1998)...........................................................................21, 22

*Dunkle v. Bank of N.Y. Mellon*,
  No. 3:11–CV–1242, 2013 WL 1910310 (M.D. Tenn. Apr. 16, 2013) ...................................16

*Garcia v. Wachovia Mortg. Corp.*,
  676 F. Supp. 2d 895 (C.D. Cal. 2009) ...............................................................................21

*Hawkins–El v. First American Funding, LLC*,
  891 F.Supp.2d 402 (E.D.N.Y.2012) *aff'd*, 529 F. App'x 45 (2d Cir.2013).............................15

*Holland v. EMC Mortg. Corp. (In re Holland)*, Adv. Proc. No. 06-1418, 2008 WL
  4809493 (Bankr. D. Mass. Oct. 30, 2008) ......................................................................16, 17

*Laurie Marie M. v. Jeffrey T. M.*,
  159 A.D.2d 52 (N.Y. App. Div. 1990) ...........................................................................19, 20

*Maxwell v. Fairbanks Capital Corp. (In re Maxwell)*,
  281 B.R. 101 (Bankr. D. Mass. 2002) ...............................................................................21

*McKnight v. Benitez,*
    176 F. Supp. 2d 1301 (M.D. Fla. 2001) ...................................................................21

*McLean v. GMAC Mortgage Corp.,*
    595 F. Supp. 2d 1360 (S.D. Fla. 2009), *aff'd*, 398 F. App'x 467 (11th Cir. 2010).................21

*Roth v. CitiMortgage,*
    756 F.3d 178 (2d Cir. 2014).........................................................................12, 13

*Russell v. Nationstar Mortgage, LLC,*
    No. 14-61977-CIV-BLOOM/VALLE, 2015 WL 5029346 (S.D. Fla. Aug. 26, 2015) .....16, 18

*Turley v. ISG Lackawanna, Inc.,*
    774 F.3d 140 (2d Cir. 2014).........................................................................19, 20

*Willis v. Westerfield,*
    839 N.E.2d 1179 (Ind. 2006) ...........................................................................21

**STATUTES**

12 U.S.C. §§ 2601-2617 ......................................................................................1

12 U.S.C. § 2605(e)(1)(A) (2010) ........................................................................14

12 U.S.C. § 2605(e)(1)(B) ....................................................................................2

12 U.S.C. § 2605(e)(1)(B)(ii) (2010) ...................................................................15

12 U.S.C. § 2605(e)(2) (2010) .............................................................................12

12 U.S.C. § 2605(e)(2)(A) (2010) ........................................................................13

12 U.S.C. § 2605(e)(2)(B)-(C) (2010) ..................................................................13

12 U.S.C. § 2605(e)(2)(C) ...............................................................................14, 15

12 U.S.C. § 2605(f)(1)(B) ...................................................................................20

Fair Debt Collection Practices Act, 15 U.S.C. § 1692-1692p .......................................1

**OTHER AUTHORITIES**

Dodd–Frank Wall Street Reform and Consumer Protection Act, Pub. L. 111–203 §
    1463(c), 124 Stat. 1376, 2184 (2010) ...............................................................12

Restatement (Second) of Torts § 46 (1965) ...........................................................19

ny-1217683

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

In accordance with the Joint Pretrial Order [Docket No. 9476] entered by the Court on

January 5, 2016, the ResCap Borrower Claims Trust (the "**Borrower Trust**"), established

pursuant to the terms of the chapter 11 plan confirmed in the above captioned bankruptcy cases

[Docket No. 6065], as successor in interest to the above captioned debtors (collectively, the

"**Debtors**") with respect to Borrower Claims,er[1] hereby submits this pretrial memorandum (this

"**Memorandum**") in support of the ResCap Borrower Claims Trust's Objection to Proof of

Claim No. 725 Filed by William J. Futrell [Docket No. 8315] (the "**Objection**").

### **PREVIEW OF THE CASE**[2]

1.      On September 24, 2012, William J. Futrell (the "**Claimant**") filed Proof of Claim

Number 725 (the "**Proof of Claim**").  Although the Proof of Claim stated only that it was based

upon "mortgage servicing by GMAC/RESPA and other basis therein," Claimant later clarified

the basis of his Proof of Claim through filings with the Court.  In his *Response to the Objection*

*of Futrell Claim* [Docket No. 5484] (the "**2013 Futrell Response**"), filed on October 22, 2013,

Claimant asserted that his Proof of Claim was actually based upon several alleged technical

violations of the Real Estate Settlement Procedures Act ("**RESPA**"), 12 U.S.C. §§ 2601-2617,

and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692-1692p.  The 2013 Futrell Response

also identified an alleged claim for fraud, and referenced potential claims for breach of contract,

emotional distress and defamation.

2.      On July 14, 2015, the Court entered its *Memorandum Opinion and Order*

*Sustaining in Part and Overruling in Part the ResCap Borrower Claims Trust's Objection to*

---

[1] As used herein, the terms "**Borrower**" and "**Borrower Claims**" have the meanings ascribed to them in the Plan (defined below).
[2] Capitalized terms used but not otherwise defined in this preview shall have the meanings ascribed to such terms below.

*Proof of Claim No. 725 Filed by William J. Futrell.* [Docket No. 8887] (the "**Memorandum Opinion**").  In its Memorandum Opinion, the Court sustained the Borrower Trust's Objection as to all claims asserted by Claimant except certain claims asserted pursuant to section 6 of RESPA arising from the alleged failure by Debtor, GMAC Mortgage, LLC ("**GMAC Mortgage**") to respond to purported QWRs[3] dated October 30, 2009 (the "**October 30, 2009 Letter**"), October 31, 2009 (the "**October 31, 2009 Letter**"), November 13, 2009 (the "**November 13, 2009 Letter**"), December 2009 (the "**December 2009 Letter**") and October 23, 2011 (the "**October 23, 2011 Letter**" and, collectively with the October 30, 2009 Letter, the October 31, 2009 Letter, the November 13, 2009 Letter and the December 2009 Letter, the "**Claimant's Letters**").

3.      At the evidentiary hearing, the Borrower Trust will show that the Claimant, who has the burden of proof, is not entitled to an allowed claim against GMAC Mortgage or any of the other Debtors because GMAC Mortgage timely responded to any QWRs sent by Claimant and/or his counsel.  More specifically:

- Claimant concedes that none of the Claimant's Letters except the October 30, 2009 Letter were sent to the Debtors' designated address for the submission of QWRs.  As such, none of the Claimant's Letters, other than the October 30, 2009 Letter could have triggered GMAC Mortgage's obligations under RESPA.[4]

- With respect to the October 30, 2009 Letter, GMAC Mortgage fulfilled its obligations under RESPA by (i) undertaking a timely investigation with respect to the two inquiries identified in the October 30, 2009 Letter and (ii) timely providing a written explanation including (a) the information requested by Claimant and (b) the name and telephone number of the office or department within GMAC Mortgage that could provide further assistance to Claimant.

4.      Moreover, even if GMAC Mortgage failed to properly respond to the October 30, 2009 Letter, Claimant has failed to demonstrate that he suffered any damages as a result of, or

---

[3] As used herein, the term "QWR" refers to a qualified written request, as described in 12 U.S.C. § 2605(e)(1)(B).
[4] *See Resoponse* [sic] *to Requests for Admissions from Trust*, dated September 25, 2015 ("**Claimant's Admissions**"), Response to Request for Admission 1.

proximately caused by, GMAC Mortgage's alleged failure to respond to the October 30, 2009

Letter in accordance with the requirements of RESPA.

<u>ANALYSIS OF LAW AND FACTS</u>

I.    **FACTS**

    A.    **Background Regarding the Loan and the Property**

    5.    On or about February 23, 2001, Claimant obtained a home loan from Aegis

Mortgage Corporation d/b/a UC Lending ("**Aegis**") in the principal amount of $76,500 and

executed a note (the "**Note**") in favor of Aegis in connection therewith.[5] Claimant's obligations

under the Note were secured by a Mortgage in favor of Mortgage Electronic Registration

Systems, Inc. ("**MERS**"), as nominee for Aegis and its successors and assigns (the "**Mortgage**"

and together with the Note, the "**Loan**"), which Mortgage encumbered property located at 8391

N 550 W. Bryant, IN 47326 (the "**Property**").  Lathrop Decl. at ¶ 6; <u>Borrower Trust's Trial</u>

<u>Exhibit B</u> at 1.

    6.    Debtor Homecomings Financial, LLC ("**Homecomings**") began servicing the

Loan on March 9, 2001.  Lathrop Decl. at ¶ 6.  Servicing of Claimant's Loan was thereafter

transferred from Homecomings to GMAC Mortgage, effective July 1, 2009 (*see* Lathrop Decl. at

¶ 8) and then to Ocwen Loan Servicing, LLC on or about February 15, 2013.  *See* Lathrop Decl.

at ¶ 10.

    7.    Claimant defaulted under the Note and Mortgage when he failed to timely remit

the installment payment that became due under the Note on December 1, 2007.  *See* Lathrop

Decl. at ¶ 11.  The Claimant did not become current on the Loan until he received a permanent

loan modification in June 2010, as described herein.  *See id.* at ¶ 11.

---

[5] *See Declaration and Proposed Testimony of Sara Lathrop in Support of the ResCap Borrower Claims Trust's Objection to Proof of Claim No. 725 Filed by William J. Futrell* at ¶ 6, filed contemporaneously herewith (the "**Lathrop Decl.**"); <u>Borrower Trust's Trial Exhibit A</u> at 1.  The Note and Mortgage were subsequently transferred and assigned, and are currently held by non-debtors.

3

**B.    The 2009 HAMP Trial Plan and Creation of the Escrow Account**

8.      On April 16, 2009, Claimant called Homecomings and requested a loan

modification, indicating that he could not afford a repayment plan.  *See id.* at ¶ 12; Borrower

Trust's Trial Exhibit D (the "**Servicing Notes**") at 125-26.  On that call, Homecomings

employee, Charles Moreno, advised Claimant to obtain a workout package from the Debtors'

website and submit it as soon as possible.  *See* Lathrop Decl. at ¶ 12; Servicing Notes at 125-16.

9.      On or about June 10, 2009, Homecomings received a workout package from

Claimant.  *See* Lathrop Decl. at ¶ 13; Servicing Notes at 122.  After receiving certain missing

documentation from Claimant, Homecomings commenced the loan modification review process

and, on June 19, 2009, set up a three-month HAMP loan modification trial plan requiring

payments of $730.76 due on the first of each of August, September and October of 2009 (the

"**2009 HAMP Trial Plan**").  *See* Lathrop Decl. at ¶ 13; Servicing Notes at 119.

10.     In connection with Claimant's approval for the 2009 HAMP Trial Plan,

Homecomings established an escrow account for the Loan and prepared an Initial Escrow

Disclosure Statement, dated June 17, 2009 (the "**June 17, 2009 Escrow Analysis**").  *See* Lathrop

Decl. at ¶ 14.  Due to an inadvertent typographical error, the June 17, 2009 Escrow Analysis

projected a disbursement of $1,352.53 from Claimant's escrow account in November 2009 to

pay for fire insurance covering the Property, although the estimated November payment should

have been approximately $352.53.  *See id.*

11.     On July 2, 2009, Claimant and Alicia Futrell, Claimant's wife and an authorized

party on the Loan account, contacted GMAC Mortgage with inquiries regarding the June 17,

2009 Escrow Analysis.  *See* Lathrop Decl. at ¶ 15; Servicing Notes at 118-19.  Claimant and his

wife were informed by GMAC Mortgage employee, Sandwip Mukherjee, that they would be

able to cancel the escrow account after the loan modification process was completed. *See* Lathrop Decl. at ¶ 15; Servicing Notes at 118.

12.     Claimant completed the 2009 HAMP Trial Plan and a permanent loan modification was approved by GMAC Mortgage on October 8, 2009, subject to Claimant fulfilling certain conditions. *See* Lathrop Decl. at ¶ 16; Servicing Notes at 115-16. The permanent loan modification would have provided for a reduction of Claimant's interest rate from 9.75% to 7.75%, resulting in monthly payments for principal, interest, taxes and insurance of $730.42 commencing on November 1, 2009. *See* Lathrop Decl. at ¶ 17; Servicing Notes at 115-16. GMAC Mortgage informed Claimant that he had been approved for a permanent loan modification by letter dated October 14, 2009, which stated, "[t]o accept this offer, you must sign and return both copies of the Modification Agreement to us in the enclosed, pre-paid envelope by **10/22/2009**." *See* Lathrop Decl. at ¶ 17; Borrower Trust's Trial Exhibit E at 1.

13.     Claimant did not execute and return the permanent loan modification agreement by October 22, 2009. *See* Lathrop Decl. at ¶ 18.

14.     Having not received an executed copy of the permanent loan modification agreement, GMAC Mortgage sent a follow-up letter, dated December 17, 2009, regarding Claimant's approval for a permanent loan modification. *See* Lathrop Decl. at ¶ 19; Servicing Notes at 106; 2013 Futrell Response, Exhibit 34. GMAC Mortgage's December 17, 2009 letter stated "[t]o accept this offer, you must sign and return both copies of the Modification Agreement to us in the enclosed, pre-paid envelope by **1/1/2010**." 2013 Futrell Response, Exhibit 34, at 1.

15.     Claimant did not execute and return the permanent loan modification agreement by January 1, 2010. Lathrop Decl. at ¶ 20.

ny-1217683

16.     GMAC Mortgage denied Claimant's pending permanent loan modification on

January 29, 2010, because it had not received an executed permanent loan modification

agreement by that date.  *See* Lathrop Decl. at ¶ 21; Servicing Notes at 102.

17.     On February 12, 2010, GMAC Mortgage received a facsimile from Claimant

containing a new HAMP workout package.  *See* Lathrop Decl. at ¶ 22; Servicing Notes at 100.

On February 16, 2010, an employee of GMAC Mortgage's customer advocacy group spoke with

Claimant's wife and advised her that Claimant would not be able to qualify for a HAMP loan

modification at that juncture because he was deriving income from short-term disability.  *See*

Lathrop Decl. at ¶ 23; Servicing Notes at 98-99.  Claimant was formally advised of the HAMP

modification denial by letter dated February 17, 2010.  *See* Lathrop Decl. at ¶ 23; Servicing

Notes at 97.

18.     On February 18, 2010, GMAC Mortgage spoke with Claimant by phone and

advised him that his Loan was being considered for a non-HAMP (or traditional) loan

modification.  *See* Lathrop Decl. at ¶ 24; Servicing Notes at 96.  On February 19, 2010, Claimant

was approved for a traditional loan modification trial plan, requiring payments of $704.23 on

each of April 1, May 1 and June 1, 2010.  *See* Lathrop Decl. at ¶ 25; Servicing Notes at 94-95.

19.     By letter dated May 20, 2010, Claimant was informed that, subject to certain

conditions set forth in the letter, he had been approved for a permanent, traditional loan

modification (the "**2010 Loan Modification**").  *See* Lathrop Decl. at ¶ 26; <u>Borrower Trust's</u>

<u>Trial Exhibit J</u>.  Subject to certain conditions precedent, the 2010 Loan Modification would

reduce the interest rate on Claimant's Loan from 9.75% to 8.50%, bring his Loan account

current, and adjust Claimant's monthly principal, interest and escrow payments to $705.53

commencing on August 1, 2010.  *See* Lathrop Decl. at ¶ 27; <u>Borrower Trust's Trial Exhibit J</u>.  At

the time Claimant was approved for the 2010 Loan Modification, his Loan account was past due for October 2009 through May 2010 payments.  *See* Lathrop Decl. at ¶ 28.

20.     Alicia Futrell was also informed by telephone on May 21, 2010 of the approval for the 2010 Loan Modification and was advised of the upcoming down payment amount and due date.  *See* Lathrop Decl. at ¶ 29; Servicing Notes at 83.

21.     On June 3, 2010, GMAC Mortgage received the executed permanent loan modification agreement and a contribution payment required under the terms of the 2010 Loan Modification.  *See* Lathrop Decl. at ¶ 30; Servicing Notes at 82; Borrower Trust's Trial Exhibit J.

22.     Claimant subsequently defaulted under the terms of the 2010 Loan Modification. Lathrop Decl. at ¶ 31.

**C.      GMAC Mortgage's Responses to Claimant's Inquiries and the Status of Claimant's Loan Account**

23.     Claimant contends that between October 2009 and December 2009, he sent to GMAC Mortgage the October 30, 2009 Letter, the October 31, 2009 Letter, the November 13, 2009 Letter and the December 2009 Letter.  *See Affidavit of Alicia Futrell* [Docket No. 8413-1] at ¶ 38 (referencing the October 30, 2009 Letter, the November 13, 2009 Letter and the December 2009 Letter); 2013 Futrell Response at 2 (referencing an October 31, 2009 Letter). During each month between September 2009 and January 2010, Claimant received monthly mortgage account statements from GMAC Mortgage, which contained the following statement on the back side of the monthly statement:

> **Qualified Written Request** – Under the Real Estate Settlement Procedures Act, a qualified written request is a written correspondence, other than notice on your payment coupon or other payment medium supplied by us, regarding the servicing of your loan which includes your name, account number and your reasons for the requests.  Any qualified written request you wish to submit must be sent to: GMAC Mortgage, Attn: Customer Care, PO Box 1330, Waterloo, IA 50704-1330.

7

*See* Claimant's Admissions, Response to Request for Admission 1.

24.    Notwithstanding GMAC Mortgage's repeated direction to Claimant that any QWRs "***must*** be sent to" GMAC Mortgage's designated address, Claimant failed mail to GMAC Mortgage, Attn: Customer Care, PO Box 1330, Waterloo, IA 50704-1330 each of (i) the October 31, 2009 Letter, if any, and (ii) the November 13, 2009 Letter and (ii) the December 2009 Letter. Claimant's Admissions, Response to Requests for Admission 2-4.

25.    On November 6, 2009, seven days after Claimant sent GMAC Mortgage the October 30, 2009 Letter, GMAC Mortgage employee Alejandra Diaz contacted a colleague in GMAC Mortgage's loss mitigation group for assistance in responding to inquiries regarding Claimant's Loan account.  *See* Lathrop Decl. at ¶ 34; Servicing Notes at 112.  On November 13, 2009, Ms. Diaz followed up her internal inquiries with a letter to Claimant's counsel.  *See* Lathrop Decl. at ¶ 34; Servicing Notes at 112.  Enclosed with GMAC Mortgage's November 13, 2009 letter was a copy of the Note, the Mortgage, and the Claimant's Loan history.  *See* Lathrop Decl. at ¶ 34; Servicing Notes at 112.  GMAC Mortgage's November 13, 2009 letter advised that during the pendency of the loan modification process, Claimant's Loan account would continue to reflect the contractual payment, and Claimant would continue to receive statements reflecting that the Loan account was delinquent.  *See* Lathrop Decl. at ¶ 34; Servicing Notes at 112; 2013 Futrell Response, Exhibit 21 at 1.  The letter also advised that late charges on the Loan account would be waived only after the trial loan modification was completed and a permanent loan modification agreement was executed.  *See* Lathrop Decl. at ¶ 34; Servicing Notes at 112; 2013 Futrell Response, Exhibit 21 at 1.  GMAC Mortgage's letter further advised that GMAC Mortgage was required to create an escrow account associated with the Loan account in connection with the loan modification process, and that GMAC Mortgage would pay any tax and

8

insurance payments that came due.  *See* Lathrop Decl. at ¶ 34; Servicing Notes at 112; 2013

Futrell Response, <u>Exhibit 21</u> at 1.  Finally, GMAC Mortgage's November 13, 2009 letter

indicated that the permanent loan modification documents had not been receive and, if Claimant

desired that GMAC Mortgage undertake a new review of the escrow accounting, the loan

modification process would have to be restarted or reset.  *See* Lathrop Decl. at ¶ 34; Servicing

Notes at 112; 2013 Futrell Response, <u>Exhibit 21</u> at 2.  However, the letter advised that in the

event the loan modification process was reset, there would be no guarantee that the Loan account

would be approved for a new loan modification.  *See* Lathrop Decl. at ¶ 34; Servicing Notes at

112; 2013 Futrell Response, <u>Exhibit 21</u> at 2.

26.    At the time GMAC Mortgage sent its November 13, 2009 letter, Claimant's Loan

account had not been approved for a permanent loan modification because Claimant had not yet

returned an executed permanent loan modification agreement or satisfied the other conditions to

effectiveness set forth in GMAC Mortgage's earlier permanent loan modification offer.  *See*

Lathrop Decl. at ¶ 35.  Consequently, Claimant's Loan account still reflected contractual

payments due (in addition to any late charges or other applicable charges), as calculated by

GMAC Mortgage.  *See id.*  Due to the typographical error contained in the June 17, 2009 Escrow

Analysis, GMAC Mortgage had calculated the contractual monthly payment due on the Loan

account to be $886.36, consisting of a $657.25 principal and interest payment, plus a $229.11

escrow payment, as reflected in the June 17, 2009 Escrow Analysis and in GMAC Mortgage's

November 13, 2009 letter.  *See id.*; June 17, 2009 Escrow Analysis at 1.

27.    On or about December 3, 2009, GMAC Mortgage sent another letter responding

to an inquiry relating to Claimant's Loan account.  GMAC Mortgage's December 3, 2009 letter

advised that GMAC Mortgage was unable to process a request for a new escrow analysis while

9

Claimant had a loan modification pending.  *See* Lathrop Decl. at ¶ 36; Servicing Notes at 108;

2013 Futrell Response, Exhibit 22.

28.     On January 12, 2010, GMAC Mortgage mailed a letter to Claimant's counsel in

response to another inquiry.  *See* Lathrop Decl. at ¶ 37; Servicing Notes at 104; 2013 Futrell

Response, Exhibit 23.  GMAC Mortgage's January 12, 2010 letter advised Claimant's counsel

that a new escrow analysis could not be conducted because of the Claimant's pending loan

modification.  *See* Lathrop Decl. at ¶ 37; Servicing Notes at 104; 2013 Futrell Response,

Exhibit 23 at 1.  The January 12, 2010 letter also advised Claimant's counsel that if Claimant did

not agree with the terms of the proposed loan modification, he could refuse the loan modification

offer and reapply.  *See* Lathrop Decl. at ¶ 37; Servicing Notes at 104; 2013 Futrell Response,

Exhibit 23 at 1.  The letter noted, however, that if the pending loan modification offer was

refused, there was no guarantee that a subsequent loan modification would be available to

Claimant.  *See* Lathrop Decl. at ¶ 37; Servicing Notes at 104; 2013 Futrell Response, Exhibit 23

at 1.

29.     Claimant and/or others authorized to discuss the Loan account with GMAC

Mortgage were also advised by GMAC Mortgage by telephone customer care representatives on

December 9, 2009,[6] December 10, 2009,[7] January 8, 2010[8] and January 26, 2010[9] that a new

escrow analysis could not be conducted while the loan modification application was pending, but

could be conducted once the loan modification agreement had been executed and returned.

Indeed, when GMAC Mortgage spoke with Alicia Futrell on December 9, 2009, the GMAC

Mortgage customer care representative advised Ms. Futrell that the corrected insurance payment

---

[6] *See* Lathrop Decl. at ¶ 38; Servicing Notes at 107.
[7] *See* Lathrop Decl. at ¶ 38; Servicing Notes at 107.
[8] *See* Lathrop Decl. at ¶ 38; Servicing Notes at 104-05.
[9] *See* Lathrop Decl. at ¶ 38; Servicing Notes at 102-03

ny-1217683

of $352.37 was already reflected on GMAC Mortgage's computer system, but that a new escrow

analysis could not yet be conducted because the Loan account had a currently pending loan

modification.  *See* Lathrop Decl. at ¶ 38; Servicing Notes at 107.

30.    GMAC Mortgage informed Claimant of the permanent loan modification denial

by letter dated February 3, 2010.  *See* Lathrop Decl. at ¶ 39; Servicing Notes at 101-02.  The

same day, GMAC Mortgage conducted a new escrow analysis, correcting the typo contained in

the June 17, 2009 escrow analysis (*see* Lathrop Decl. at ¶ 39; Servicing Notes at 101; Borrower

Trust's Trial Exhibit K) and Claimant's monthly escrow payment was reduced from $229.11 to

$50.83, thereby decreasing to $708.08 the amount of Claimant's monthly payment on account of

principal, interest and escrow amounts due.  *See* Lathrop Decl. at ¶ 39; Borrower Trust's Trial

Exhibit K.

31.    Claimant contends that on or about October 23, 2011, his counsel sent the

October 23, 2011 Letter.  *See Affidavit of Alicia Futrell* [Docket No. 8413-1] at ¶ 38.  During

each month between September 2011 and November 2011, Claimant received monthly mortgage

account statements from GMAC Mortgage, which contained the following statement on the back

side of the monthly statement:

> **Qualified Written Request** – Under the Real Estate Settlement
> Procedures Act, a qualified written request is a written
> correspondence, other than notice on your payment coupon or
> other payment medium supplied by us, regarding the servicing of
> your loan which includes your name, account number and your
> reasons for the requests.  Any qualified written request you wish to
> submit must be sent to: GMAC Mortgage, Attn: Customer Care,
> PO Box 1330, Waterloo, IA 50704-1330.

Claimant's Admissions, Response to Request for Admission 5.

32.    Notwithstanding GMAC Mortgage's identification of a designated address for

submission of QWRs, Claimant failed to deliver the October 23, 2011 Letter to GMAC

11

Mortgage, Attn: Customer Care, PO Box 1330, Waterloo, IA 50704-1330.  Claimant's

Admissions, Response to Request for Admission 6.

## II.    APPLICATION OF LAW TO THE FACTS

### A.    Claimant Concedes That All But One of the Claimant's Letters Were Not QWRs

33.    "[I]f a servicer establishes a designated QWR address, 'then the borrower must

deliver its request to that office in order for the inquiry to be a qualified written request'" and

trigger the servicer's obligations under RESPA.  *Roth v. CitiMortgage*, 756 F.3d 178, 181 (2d

Cir. 2014) (citation omitted); Memorandum Opinion at 21.  Here, Claimant concedes that

GMAC Mortgage identified an address to be utilized in submitting QWRs,[10] but that Claimant

failed to direct each of the October 31, 2009 Letter, if any; the November 13, 2009 Letter; the

December 2009 Letter; and the October 23, 2011 Letter to the address designated by GMAC

Mortgage.  *See* Claimant's Admissions, Responses to Requests for Admission 2-4 & 6.

Consequently, none of these letters constituted QWRs, and none these letters can form the basis

for an allowed claim against GMAC Mortgage.

### B.    GMAC Mortgage Complied with RESPA by Timely Responding to Claimant's Information Requests in the October 30, 2009 Letter

34.    RESPA requires servicers of certain types of mortgage loans to respond within

relatively short time periods to certain inquiries meeting the definition of a QWR—60 days

(excluding legal public holidays, Saturdays and Sundays)—as of the date Claimant sent the

October 30, 2009 Letter.  *See* 12 U.S.C. § 2605(e)(2) (2010).[11]  A mortgage servicer that

---

[10] Claimant's Admissions, Responses to Requests for Admission 1 & 5; *see also Roth v. CitiMortgage Inc.*, 756 F.3d at 182 (informing borrower of designated address on reverse of monthly mortgage statements was sufficient to satisfy the servicer notice requirements of RESPA).

[11] The time periods and certain other provisions of RESPA were amended by the Dodd–Frank Wall Street Reform and Consumer Protection Act, Pub. L. 111–203 § 1463(c), 124 Stat. 1376, 2184 (2010) (the "**Dodd-Frank Act**"). However, the provisions of the Dodd-Frank Act amending RESPA did not become effective until the Consumer Financial Protection Bureau assumed responsibility for administering RESPA, promulgated and proposed rules

12

receives a QWR must take one of three specified actions within the timeframes detailed in

RESPA.  The servicer may make appropriate corrections to the borrower's account and inform

the borrower of the correction.  *See* 12 U.S.C. § 2605(e)(2)(A) (2010).  Alternatively, the

servicer may, after conducting an  investigation, provide the borrower with a written explanation

or clarification that includes (i) "the name and telephone number of an individual employed by,

or the office or department of, the servicer who can provide assistance to the borrower," and

(ii) either (a) a statement of the reasons the servicer believes that the account of the borrower is

correct or (b) the information requested in the QWR "or an explanation of why the information is

unavailable or cannot be obtained by the servicer."  *See* 12 U.S.C. § 2605(e)(2)(B)-(C) (2010).

35.    Here, Claimant contends, and the Borrower Trust does not dispute, that the

October 30, 2009 Letter met all of the requirements of a QWR.  However, GMAC Mortgage

properly and timely responded to the inquiries contained in the October 30, 2009 Letter.

Specifically, the October 30, 2009 Letter requested three pieces of information:

- Support for GMAC Mortgage's statements that if Claimant did not accept the loan modification he was offered in October 2009, with a monthly payment of $730.42, that his "original payment" of $886.36 would be reinstated (*see* October 30, 2009 Letter at ¶¶ 3, 5);

- Proof that GMAC Mortgage had made payments for homeowner's insurance, including the date, amount and recipient of any such payments (*see id.* at ¶¶ 12-13); and

- An "indicat[ion of] what, if any, federal entity is controlling in this matter. *See id.* at 3."

36.    On November 6, 2009, GMAC Mortgage employee, Alejandra Diaz undertook an

investigation regarding Claimant's Loan account by contacting the loss mitigation department to

obtain assistance in providing Claimant with information regarding his Loan account.  By letter

---

under RESPA, and those rules became final and effective on January 10, 2014.  *See Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1145 n.3 (10th Cir. 2013) (describing the timeline leading up to the effectiveness of the Dodd-Frank Act's amendments to RESPA); *accord Roth v. CitiMortgage Inc.*, 756 F.3d at 182 n.3 (noting that the shortened timeframes specified in the Dodd-Frank Act amendments to RESPA applied "[a]s of January 10, 2014….").

13

dated November 13, 2009, well within the 60-day period set forth in RESPA,[12] Alejandra Diaz

provided Claimant's counsel with written explanations regarding two of Claimant's requests for

information, in addition to copies of the Note, the Mortgage, and the Claimant's Loan history.

*See* Lathrop Decl. ¶ 34. <u>First</u>, in response to Claimant's request for information regarding the

calculation of the "original payment" of $886.36 per month, GMAC Mortgage's November 13,

2009 letter explained that Claimant's Loan account would continue to reflect the contractual

payments, including late charges, pending execution of the permanent loan modification

documents. *See* Lathrop Decl. ¶ 34; 2013 Futrell Response, <u>Exhibit 21</u> at 1. The November 13,

2009 letter also included an explanation of the escrow calculation of $229.11 that was added to

Claimant's principal and interest payment of $657.25 to reach the $886.36 monthly mortgage

payment. *See* Lathrop Decl. ¶ 34; 2013 Futrell Response, <u>Exhibit 21</u> at 1. <u>Second</u>, in response

to Claimant's request for information regarding the date and amount of any homeowner's

insurance payment made by GMAC Mortgage, GMAC Mortgage provided a copy of the

account's payment history. *See* Lathrop Decl. ¶ 34; 2013 Futrell Response, <u>Exhibit 21</u> at 1.

GMAC Mortgage's November 13, 2009 letter also provided Claimant with "the name and

telephone number of an individual employed by, or the office or department of, the servicer who

can provide assistance to the borrower," as required by RESPA. *See* 12 U.S.C. § 2605(e)(2)(C);

2013 Futrell Response, <u>Exhibit 21</u> at 2.

      37.    The Borrower Trust submits that the final request for information contained in the

October 30, 2009 Letter, seeking an "indicat[ion of] what, if any, federal entity is controlling in

---

[12] November 13, 2009 was also well within the 20-day period during which RESPA requires a servicer to respond to acknowledge receipt of a Qualified Written Request. *See* 12 U.S.C. § 2605(e)(1)(A) (2010).

ny-1217683

this matter" did not "provide[] sufficient detail to the servicer regarding [] information sought by the borrower"[13] and, therefore, no response to that request was required.

38.        In response to the Objection, Claimant contended that the November 13, 2009 letter from GMAC Mortgage to Claimant's counsel did not satisfy the requirements of RESPA because that letter expressly stated that it was in response to an October 23, 2009 inquiry. However, RESPA contains no requirement that the information be conveyed in a responsive letter.  Instead, the plain language of RESPA requires only that the borrower be provided with "a written explanation . . .that includes information requested by the borrower . . . ."  12 U.S.C. § 2605(e)(2)(C) (2010).

39.        Moreover, GMAC Mortgage's records indicate that GMAC Mortgage employees believed that the October 30, 2009 was duplicative of the inquiry submitted by Claimant's counsel on October 23, 2009, and may have indeed intended the November 13, 2009 to be responsive to the inquiries in both Claimant's October 23, 2009 and October 30, 2009.  *See* Servicing Notes at 112.  GMAC Mortgage was not required to respond to a duplicative request, where it had adequately responded to original request.  *See Hawkins–El v. First Am. Funding, LLC,* 891 F.Supp.2d 402, 409 (E.D.N.Y.2012) *aff'd,* 529 F. App'x 45 (2d Cir.2013) ("To the extent Plaintiff claims that FAF violated the statute because it did not respond to every subsequent letter sent by FAF, these letters raised essentially the same dispute described in his initial letter. FAF's initial response adequately addressed Plaintiffs concerns pursuant to RESPA.")*; Bates v. JPMorgan Chase Bank, NA,* 768 F.3d 1126, 1135 (11th Cir.2014) ("To the extent Bates contends she raised a new question, warranting a new response, in her second request, this claim fails both because the prior response was adequate and because again there were no damages as a matter of law stemming from an inadequate response.").

---

[13] *See* 12 U.S.C. § 2605(e)(1)(B)(ii) (2010).

40.     In sum, GMAC Mortgage properly and timely responded to the inquiries

contained in Claimant's October 30, 2009 Letter and, therefore, Claimant cannot assert a claim

against GMAC Mortgage under RESPA.

**C.     Claimant Has Failed to Identify Any Damages Caused by GMAC Mortgage's Alleged Violation of RESPA With Respect to the October 30, 2009 Letter**

41.     Even if Claimant were able to demonstrate that GMAC Mortgage had violated

RESPA by failing to respond to his inquiries in the October 30, 2009 Letter, Claimant cannot

show that GMAC Mortgage's violation of RESPA caused him to suffer any damages.[14]  To be

entitled to a claim against GMAC Mortgage, Claimant must demonstrate that a violation of

RESPA by GMAC Mortgage actually and proximately caused defendant to suffer damages.  *See,*

*e.g.*, *Memorandum Opinion and Order Sustaining in Part and Overruling in Part Objection to*

*Proof of Claim 386* at 29-30 [Docket No. 7297]; *Dunkle v. Bank of N.Y. Mellon*, No. 3:11–CV–

1242, 2013 WL 1910310, at *6 (M.D. Tenn. Apr. 16, 2013) (holding that a RESPA claimant

must show that he suffered "'actual, demonstrable damages, and the damages must occur as a

result of that specific violation.' ") (citation omitted); *Russell v. Nationstar Mortg., LLC*, No. 14-

61977-CIV-BLOOM/VALLE, 2015 WL 5029346, at *7 (S.D. Fla. Aug. 26, 2015) (a plaintiff

"cannot establish proximate causation" where it fails "to distinguish between injury allegedly

caused by [defendant's] alleged RESPA violation and the subsequent foreclosure resulting from

their own conduct.") (citation omitted); *Bonadio v. PHH Mortg. Corp.*, No. 12 CV 3421 (VB),

2014 WL 522784, at *6 (S.D.N.Y. Jan. 31, 2014) ("A plaintiff seeking actual damages under

[RESPA] must allege that the damages were proximately caused by the defendant's violation of

RESPA." (citation omitted)); *Holland v. EMC Mortg. Corp. (In re Holland)*, Adv. Proc. No. 06-

---

[14] The "Claimant's Contentions" in the Joint Pretrial Order suggest that, in addition to the damages Claimant allegedly suffered, he seeks to recover damages on behalf of his family.  *See, e.g.*, Joint Pretrial Order at 7. However, the Proof of Claim was filed on behalf of Claimant only, and he is therefore limited to asserting damages that he personally suffered, absent identification of some legal basis to the contrary.

16

1418, 2008 WL 4809493, at *9 (Bankr. D. Mass. Oct. 30, 2008) ("The Plaintiff must establish

that the economic injury was proximately caused by the bank's violation of the Real Estate

Settlement Procedures Act.") (citation omitted).  Here, Claimant cannot establish the necessary

causal link between GMAC Mortgage's alleged failure to properly respond to the October 30,

2009 Letter and any of the alleged damages he has previously identified for several reasons.

42.     First, Claimant was provided with an explanation regarding the topics addressed

in the October 30, 2009 Letter on multiple occasions from November 2009 through January

2010, both in written correspondence and telephone conversations, regardless of whether the

information was provided in the manner required by RESPA.  *See* Lathrop Decl. ¶¶ 35-38.  Yet,

nearly all of the damages that Claimant claims to have suffered purportedly arose months after

he received answers to his inquiries.  For instance, Claimant has informed the Borrower Trust

that he suffered damages associated with (i) a May 2011 heart attack (*see, e.g.* Claimant's

Proposed Trial Exhibits 20-23), (ii) his 2011 and 2012 early withdrawal of funds from his 401k

and individual retirement accounts. (*see, e.g.,* Claimant's Proposed Trial Exhibit 24) and (iii) an

August 10, 2011 denial of rural development assistance from the United States Department of

Agriculture, which cites Claimant's payment delinquencies on multiple accounts as one basis for

the denial.  *See, e.g.,* Claimant's Proposed Trial Exhibit 16, at 2.  These alleged damages

occurred months, or even years, after the purported escrow analysis mistake that formed the basis

of the October 30, 2009 Letter was corrected on February 3, 2010 (*see* Lathrop Decl. at ¶ 39;

Servicing Notes at 101; Borrower Trust's Trial Exhibit K.), and even after Claimant was

provided with a permanent loan modification in June, 2010 and his Loan account was brought

current.  *See* Lathrop Decl. at ¶ 30; Servicing Notes at 82.  Claimant provides no explanation or

legal basis to support an argument that these damages—which arose after he received answers to

17

his inquiries and the underlying mistake was corrected—could have possibly been caused by GMAC Mortgage's alleged failure to respond to the October 30, 2009 Letter.[15]  In short, Claimant has not explained how, "but for" GMAC Mortgage's alleged failure to respond to the October 30, 2009, Claimant would not have incurred costs associated with a May 2011 heart attack or would not have had to withdraw money from his 401k and individual retirement accounts, nor has Claimant demonstrated how these categories of damages would have been the foreseeable consequence of GMAC Mortgage's failure to respond to a letter from October 2009.

43.      Additionally, many of the categories of alleged damages suffered by Claimant (including the categories described above) do not even bear a tenuous relationship to GMAC Mortgage's alleged failure to respond to the inquiries in the October 30, 2009 Letter.  For instance, in addition to the above-referenced categories of alleged damages, Claimant has contended that he suffered damages resulting from (i) a diminution in the value of this Property (*see*, e.g., Joint Pretrial Order § XI; Claimant's Proposed Trial Exhibits 1, 15 and 19) and (ii) the issuance of tax warrants with respect to the Property.  Claimant's Proposed Trial Exhibit 12. Claimant has not and cannot show that any of these damages were "caused by [GMAC Mortgage's] alleged RESPA violation," even assuming a violation had occurred.  *See Russell v. Nationstar Mortg., LLC*, 2015 WL 5029346, at *7 (citation omitted); *accord Memorandum Opinion and Order Sustaining in Part and Overruling in Part Objection to Proof of Claim 386* at 30 [Docket No. 7297] ("To receive any damages for the QWR Claim, Mack must demonstrate how the requested damages arise from GMACM's failure to respond to the QWR as opposed to its initiation of the Foreclosure Action."); *accord Memorandum Opinion and Order Determining*

---

[15] Although Claimant may take issue with the substance of GMAC Mortgage's responses, it was sufficient under RESPA that a response was provided.  *See Bates v. JPMorgan Chase Bank, N.A.*, 768 F.3d 1126, 1135 (11th Cir. 2014) (where loan servicer provided reasons that the *servicer believed* the account of the borrower was correct, there was no RESPA violation).

ny-1217683

*the Amount of Allowed Claim of Frank and Christina Reed* at 41 [Docket No. 7619] (denying

request for claim on account of decline in value of property where claimant failed to show that

wrongful foreclosure action was the proximate cause of the decline), *rev'd in part on other

grounds in* No. 1:15-cv-2375-GHW (S.D.N.Y. Dec. 23, 2015).

44.     Finally, although it is unclear from his submissions in the Joint Pretrial Order,

Claimant may suggest that he is entitled to an allowed claim on account of alleged emotional

distress.  However, Claimant cannot meet the exacting standards for demonstrating an

entitlement to damages sounding in emotional distress either.  Comment d to the Restatement

(Second) of Torts § 46 (1965) provides that for emotional distress damages to be available, the

underlying "conduct . . . [must be] so outrageous in character, and so extreme in degree, as to go

beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in

a civilized community."  Restatement (Second) of Torts § 46 (1965).  For example, in *Laurie

Marie M. v. Jeffrey T. M.*, 159 A.D.2d 52, 56 (N.Y. App. Div. 1990), the New York Court

Supreme Court, Appellate Division found that sexual abuse of a child satisfied the "extreme and

outrageous conduct" test described in the Restatement.  *Turley v. ISG Lackawanna, Inc.*,

774 F.3d 140, 157-58 (2d Cir. 2014) (indicating that intentional infliction of emotional distress

claims are "highly disfavored [tort] under New York law" and should be "invoked only as a last

resort" (quotations and citations omitted)).

45.     Here, GMAC Mortgage may not have responded to the October 30, 2009 Letter

as Claimant would have preferred, but GMAC Mortgage did respond to the inquiries contained

therein on multiple occasions, including by acknowledging that a mistake had occurred,

informing Claimant that the mistake would be corrected as soon as the pending loan modification

process had completed, and then issuing a revised escrow analysis the same day that GMAC

19

Mortgage sent a letter to Claimant notifying him that the pending loan modification process had been cancelled. Claimant has identified no conduct remotely resembling the type of "outrageous" and "extreme" conduct described in the *Laurie Marie* case.[16] Absent such a showing, Claimant should not be afforded an allowed claim against GMAC Mortgage on account of any alleged emotional distress.

46.    Moreover, even if Claimant could identify some "outrageous" and "extreme" conduct that "go[es] beyond all possible bounds of decency," Claimant would still be required to demonstrate a causal link between GMAC Mortgage's conduct and Claimant's injury, which Claimant has not done. *See e.g., Cowan v. City of Mt. Vernon*, 95 F. Supp. 3d. 624, 656 (S.D.N.Y. Mar. 27, 2015) (recognizing "a causal connection between the conduct and the injury" as an element of intentional inflict of emotional distress claim) (citation omitted); *see also Turley*, 774 F.3d at 157-158 (explaining that to prevail on intentional inflict of emotional distress claim "plaintiff must establish that there was 'extreme and outrageous conduct,' that the conduct was undertaken with 'intent to cause, or disregard of a substantial probability of causing, severe emotional distress,' and that the conduct *did in fact cause* severe emotional distress" (emphasis added)).

### D.    Claimant Also Has Failed to Show That He is Entitled to Statutory Damages

47.    Claimant also is not entitled to recover statutory damages under 12 U.S.C. § 2605. RESPA permits a borrower to recover up to $1,000 in statutory damages "in the case of a pattern or practice of noncompliance with the requirements of this section." *See* 12 U.S.C. § 2605(f)(1)(B). Here, Claimant has conceded that, at most, only one of the Claimant's Letters—the October 30, 2009 Letter—constituted a QWR. A RESPA violation with respect to a single QWR does not amount to a pattern or practice of noncompliance. Indeed, courts regularly

---

[16] 159 A.D.2d at 56.

conclude that a servicer's failure to respond to one, or even two QWRs, does not demonstrate a pattern or practice of noncompliance. *See Bulmer v. MidFirst Bank, FSA*, 59 F. Supp. 3d 271, 279 (D. Mass. 2014) ("one failure is not enough to demonstrate a pattern or practice of noncompliance for purposes of statutory damages"); *Garcia v. Wachovia Mortg. Corp.*, 676 F. Supp. 2d 895, 909 (C.D. Cal. 2009) ("almost as a matter of definition, a single failure to respond to a Qualified Written Request does not state a claim for a 'pattern or practice' of doing so"); *McLean v. GMAC Mortg. Corp.*, 595 F. Supp. 2d 1360, 1365 (S.D. Fla. 2009) *aff'd,* 398 F. App'x 467 (11th Cir. 2010) (failure to respond to two QWRs is insufficient); *Maxwell v. Fairbanks Capital Corp. (In re Maxwell)*, 281 B.R. 101, 123 (Bankr. D. Mass. 2002) (same).

### E.    Any Damages Claimant Suffered Should be Reduced Due to Claimant's Failure to Mitigate Those Damages

48.    Finally, the amount of damages to which Claimant is entitled, if any, must be reduced on account of Claimant's failure to use reasonable diligence to mitigate his damages. Although courts have not directly addressed the doctrine of mitigation of damages in the RESPA context, both federal courts applying similar statutes and state courts have recognized that the doctrine of mitigation of damages serves as "an affirmative defense that may reduce the amount of damages a plaintiff is entitled to recover after liability has been found." *Willis v. Westerfield*, 839 N.E.2d 1179, 1187 (Ind. 2006) (citation omitted); *see McLean v. GMAC Mortg. Corp.*, 595 F. Supp. 2d at 1370 ("The damages provision in the FDCPA is similar to RESPA."); *McKnight v. Benitez*, 176 F. Supp. 2d 1301, 1309 (M.D. Fla. 2001) (noting in FDCPA cases mitigation of damages is an appropriate affirmative defense); *Aluia v. Dyck-O'Neal, Inc.*, No. 2:15-CV-81-FTM-38MRM, 2015 WL 4349090, at *2 (M.D. Fla. July 14, 2015) (same). The doctrine applies where the "act of the injured party . . . adds to the resulting damages" and precludes the injured party from "recover[ing] . . . those damages which reasonable care would have prevented."

21

*Deible v. Poole*, 691 N.E.2d 1313, 1316 (Ind. Ct. App. 1998); *but see Callander v. Sheridan*, 546

N.E.2d 850, 854 (Ind. Ct. App. 1989) ("If a party is financially unable there is no duty to

mitigate through the expenditure of funds.").

49.    Here, Claimant failed to use reasonable care to mitigate damages purportedly

arising from the conduct of GMAC Mortgage.  Claimant failed to accept an offer by GMAC

Mortgage, in a letter dated November 17, 2011, granting Claimant the ability to pay-off the Loan

for approximately 35% of the Loan's principal balance, or $27,000.  *See* Lathrop Decl. at ¶ 32;

Servicing Notes at 50.  Furthermore, Claimant was approved for further trial loan modification

plans in April and November 2012, pursuant to which his monthly payments would have been

$529.75 and $693.25, respectively.  *See* Lathrop Decl. at ¶ 33; Servicing Notes at 20, 38.  These

trial loan modification plans were cancelled in each case as a result of Claimant's failure to make

the first trial plan payment.  *See* Lathrop Decl. at ¶ 33.  Accordingly, any damages to which

Claimant is entitled must be reduced on account of Claimant's failure to exercise reasonable care

to mitigate damages purportedly resulting from GMAC Mortgage's actions.

ny-1217683

## CONCLUSION

The Claim must be disallowed and expunged.  Even if the Claimant were able to demonstrate that GMAC Mortgage violated RESPA, he has failed identify any damages caused any such violation.  As a result, the Objection to the Claim should be sustained.


Dated: January 12, 2016

    /s/ Jordan A. Wishnew
Norman S. Rosenbaum
Jordan A. Wishnew
James A. Newton
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900

*Counsel for the ResCap Borrower
Claims Trust*