**Hearing Date: January 21, 2016 at 10:00 A.M. (ET)**

MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett

*Counsel for the ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------
                                              )
In re:                                        )    Case No. 12-12020 (MG)
                                              )
RESIDENTIAL CAPITAL, LLC, et al.,             )    Chapter 11
                                              )
                        Debtors.              )    Jointly Administered
                                              )
---------------------------------------------------------------

**RESCAP BORROWER CLAIMS TRUST'S OMNIBUS REPLY IN SUPPORT OF ITS NINETIETH OMNIBUS OBJECTION TO CLAIMS ((I) NO LIABILITY BORROWER CLAIMS, (II) REDUCE AND ALLOW BORROWER CLAIM, AND (III) ALLOWED IN FULL BORROWER CLAIM) AS TO CLAIM NO. 4397**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ............................................................................................................................2

    A.  Background Facts ..................................................................................................2

    B.  Explanation of the Borrower Trust's Calculation of Damages .....................................5

REPLY .............................................................................................................................................7

CONCLUSION ..............................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Allegheny Int'l, Inc. v. Snyder (In re Allegheny Int'l, Inc.),
  954 F.2d 167 (3d Cir. 1992) .................................................................................. 7

Feinberg v. Bank of N.Y. (In re Feinberg),
  442 B.R. 215 (Bankr. S.D.N.Y. 2010) .................................................................. 7

In re Oneida Ltd.,
  400 B.R. 384 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co. v.
  Oneida Ltd., No. 09-cv-2229 (DC), 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22,
  2010) ..................................................................................................................... 7

In re Residential Capital, LLC,
  507 B.R. 477 (Bankr. S.D.N.Y. 2014) .................................................................. 7

Vino 100, LLC v. Smoke on the Water LLC,
  864 F. Supp. 2d 269 (E.D. Penn. 2012) ................................................................ 8

**STATUTES**

11 U.S.C. § 502(a) ....................................................................................................... 7

11 U.S.C. § 502(b)(1) .................................................................................................. 7

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the Plan[1] filed in the above-captioned Chapter 11 Cases, as successor in interest to the above-captioned Debtors with respect to Borrower Claims, by and through its undersigned counsel, hereby submits this reply (the "Reply") and the Supplemental Declaration of Sara Lathrop, Senior Claims Analyst to the Borrower Trust (the "Supp. Decl."), annexed hereto as Exhibit 1, to the response filed by Mary Biancavilla (the "Respondent") [Docket No. 9472] (the "Response") to the *ResCap Borrower Claims Trust's Ninetieth Omnibus Objection to Claims ((I) No Liability Borrower Claims, (II) Reduce and Allow Borrower Claim, and (III) Allowed in Full Borrower Claim* [Docket No. 9296] (the "Objection"). The Borrower Trust respectfully states as follows:

**PRELIMINARY STATEMENT**

1. The Borrower Trust examined the Response and the statements submitted in support thereof. For purposes of this Reply and the Objection, the Borrower Trust takes these statements at face value. If the Court is not prepared to rule on the Objection with respect to the Respondent, then the Borrower Trust reserves the right to take discovery from the Respondent.

2. As described herein and in the Supplemental Declaration, the Borrower Trust thoroughly examined the Debtors' books and records that were prepared and kept in the course of their regularly conducted business activities (the "Books and Records") in an effort to validate the accuracy of the allegations made in the Response and the contested claim. The Borrower Trust determined that the damages incurred by the Respondent on account of the allegations in the Claim are significantly less than the asserted claim amount.

3. As the Objection shifted the burden of proof back to the Respondent, the Respondent must demonstrate the amount of her alleged damages against the Debtors' estates by

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Objection.

ny-1218696

a preponderance of the evidence. For the reasons set forth in the Objection, this Reply, and the Supplemental Declaration, the Respondent has failed to provide a sufficient explanation as to why her claim should not receive the treatment set forth in the objection. The Respondent's purported damages are greatly overstated and will result in a windfall to the Respondent. Therefore, the Respondent has failed to meet her burden of proof, and the relief sought in the Objection should be granted with respect to the Respondent.

## BACKGROUND

*A. Background Facts*

4.  On or around November 9, 2012, the Respondent filed a proof of claim against Debtor Residential Capital, LLC ("ResCap"), designated as Claim No. 4397 (the "Claim"), asserting a general unsecured claim in the amount of $144,000.[2] See Exhibit A to the Supp. Decl.[3]

5.  According to the Books and Records, Debtor Homecomings Financial Network, Inc. ("Homecomings") originated a loan in the amount of $144,000 to the Respondent on December 16, 2005 (the "Loan"), secured by a mortgage on property located at 341 Oak Drive, New Cumberland, PA 17070. See Note, attached to the Supp. Decl. as Exhibit C, and Mortgage, attached to the Supp. Decl. as Exhibit D. Debtor Residential Funding Company, LLC purchased the Loan from Homecomings and transferred its interest when the Loan was securitized on or about February 1, 2006 where US Bank, NA was appointed as Trustee. See Supp. Decl. ¶ 5.

---

[2] Through the Objection, the Borrower Trust also seeks to redesignate the Claim as a claim against Debtor GMAC Mortgage, LLC ("GMACM") because the allegations in the claim relate to actions by GMACM while it was servicing the Loan (defined below).

[3] The Respondent also responded to the Borrower Trust's request for additional information. A copy of that response is attached as Exhibit B to the Supp. Decl.

2

6. Homecomings serviced the Loan from the date it was originated until servicing transferred to GMACM in July 2009. GMACM transferred servicing of the Loan to Ocwen on February 16, 2013. See Exhibit B to the Proposed Order, attached as Exhibit A to the Objection.

7. The initial terms of the Loan included an interest rate of 5.75%, adjustable after January 2013, with a ceiling of 11.75%. See Note. For the first ten years of the Loan, the Respondent's monthly payments would be interest-only, with an initial monthly payment of $690.00. The first payment that would have included both principal and interest would have been the payment due January 1, 2016. See Note, Section 4.G.

8. On November 18, 2009, GMACM approved the Respondent for a HAMP trial modification (the "Trial HAMP Modification"). See Servicing Notes, attached to the Supp. Decl. as Exhibit E, at 10 of 32. The first monthly payment under the Trial HAMP Modification was due on January 1, 2010.[4] Additionally, per its regular business practice, GMACM suspended any reports of the Respondent's account to any credit reporting agency.[5] See Servicing Notes 11 of 32. In order to avoid duplicate payments, it was GMACM's standard business practice to suspend any auto draft payment on a customer's account after a customer was approved for a loan modification. See Supp. Decl. ¶ 7.

9. On December 23, 2009, the Respondent executed the Trial HAMP Modification with GMACM. See Trial HAMP Modification, attached to the Supp. Decl. as Exhibit F. Pursuant to the Trial HAMP Modification, the Respondent was responsible for making payments in the amount of $679.83 on January 1, February 1, and March 1 2010 (the "Trial Payments"). See id. The Trial Payments were intended to estimate the amount that the Respondent would pay

---

[4] Since the Trial HAMP Modification was approved more than half way through the month of November, pursuant to GMACM's business practice, the first payment under the modification was due January 1, 2010 rather than December 1, 2009 to give the Respondent time to review and return the modification papers. See Supp. Decl. n. 5.
[5] It was GMACM's regular business practice to suspend credit reporting during any period that a Borrower's account was being reviewed for a loan modification. See Supp. Decl. n. 6.

3

ny-1218696

under a permanent loan modification, including estimated principal, interest, and escrow for taxes and insurance. See Supp. Decl. ¶ 8.

10. On February 1, 2010, GMACM mistakenly drew a $1,038 payment from the Respondent's bank account. See Payment History, attached to the Supp. Decl. as Exhibit G, at 3 of 4. The payment was reversed off the account on February 12, 2010 and returned to the Respondent. See id.

11. The Respondent made all of the Trial Payments. However, a permanent HAMP modification could not be offered within the HAMP guidelines. See Denial Letter, attached to the Supp. Decl. as Exhibit H. As a result, on or around April 5, 2010, the Respondent was offered (and accepted) a permanent, non-HAMP modification (the "Permanent Traditional Modification"). See Permanent Traditional Modification, attached to the Supp. Decl. as Exhibit I. The Permanent Traditional Modification provided the Respondent with a step-rate mortgage.[6] See id.

12. Section 3 of the Permanent Traditional Modification states, "The amounts indicated in this paragraph do not include any required escrow payments for items such as hazard insurance or property taxes; if such escrow payments are required the monthly payments will be higher and may change as the amounts required for escrow items change." See Permanent Traditional Modification at section 3.

13. The initial monthly payment required under the Permanent Traditional Modification was $830.62, which included an escrow payment of $185.47 for insurance and taxes (the "Escrow Payment"). See Permanent Traditional Modification. On January 1, 2011, the Respondent's monthly payment increased to $839.92 due to an increase in the escrow portion

---

[6] Under the Permanent Modification, the interest rate was set to increase as follows: (i) 2.875% from June 1, 2010 through May 1, 2014; (ii) 3.875% from June 1, 2014 through May 1, 2015; (iii) 4.875% from June 1, 2015 through May 1, 2016; and (iv) 5.000% from June 1, 2016 through January 1, 2036.

4

of her payment. There were additional increases on January 1, 2012 to $852.78, and January 1, 2013 to $874.41. See Escrow Analyses, attached to the Supp. Decl. as Exhibit J.

14. After the Permanent Traditional Modification was executed, the Respondent made every monthly payment, and the Loan was current at the time servicing of the Loan was transferred to Ocwen. See Payment History. From the time of the Trial HAMP Modification through the date servicing of the Loan transferred to Ocwen, GMACM never reported the Respondent's account as being in default to any credit reporting agency. See Servicing Notes.

### B. Explanation of the Borrower Trust's Calculation of Damages

15. According to the Books and Records, the Respondent was erroneously approved for the Trial HAMP Modification which is the reason a permanent modification could not be offered within the HAMP guidelines. See Supp. Decl. ¶ 15. The Borrower Trust concedes, however, that by offering the Trial HAMP Modification, it entered into a contract to provide the Respondent with a permanent HAMP modification in the event the Trial HAMP Modification was completed. Thus, the Respondent is entitled to the difference between her payments under a permanent HAMP modification and the Permanent Traditional Modification.

16. In Exhibit B to the Proposed Order, the Borrower Trust identified the terms of a permanent HAMP modification (the "Estimated Permanent HAMP Modification") if such loan was offered to the Respondent in April 2010. This was determined by subtracting the Escrow Payment listed on the Permanent Traditional Modification from the trial payments under the Trial HAMP Modification to determine the likely monthly principal and interest payment under the Estimated Permanent HAMP Modification (the "HAMP P&I Payment"). The Borrower Trust then looked at the principal balance owing on the Loan and determined what interest rate would have applied to achieve the HAMP P&I Payment, which was 0.6377%. See Supp. Decl. ¶

5

16. The Borrower Trust used this interest rate even though such interest rate would not have been approved under the HAMP program because it is too low. See id; see also HAMP Guidelines, attached to the Supp. Decl. as Exhibit K.

17. The Borrower Trust then determined what the interest rate would have been over the life of a permanent HAMP modification, with the assumption that since the Respondent was approved for a step-rate traditional modification, she would most likely have been approved for a step-rate HAMP modification.[7] See Supp. Decl. ¶ 17. The Borrower Trust followed the step-rate schedule permitted under the HAMP guidelines, increasing the interest rate by 1% a year, the increase permitted by the HAMP guidelines.[8] See id. A summary of the differences between the terms of the Estimated Permanent HAMP Modification and the Permanent Traditional Modification are as follows, resulting in a difference over the life of the loan of $29,840.32:

| Borrower Trust's Calculation of Damages | | | | | | | |
|---|---|---|---|---|---|---|---|
| Estimated HAMP P&I Payment (Step-Rate) | Approved Traditional Payment P&I (Step-Rate) | Timeframe | Estimated Interest Rate HAMP | Interest Rate Traditional | # of Payments | Difference in Payment Amount | Total Estimated Difference |
| $494.32 | $ 645.15 | 6/1/10 through 5/1/14 | 0.6377% | 2.875% | 48 | $ 150.83 | $7,239.84 |
| $494.32 | $ 709.73 | 6/1/14 through 5/1/15 | 0.6377% | 3.875% | 12 | $ 215.41 | $2,584.92 |
| $546.10 | $ 775.09 | 6/1/15 through 5/1/16 | 1.6377% | 4.875% | 12 | $ 228.99 | $2,747.88 |
| $596.44 | $ 783.15 | 6/1/16 through 5/1/17 | 2.6377% | 5.00% | 12 | $ 186.71 | $2,240.52 |
| $649.02 | $ 783.15 | 6/1/17 through 5/1/18 | 3.6377% | 5.00% | 12 | $ 134.13 | $1,609.56 |
| $677.35 | $ 783.15 | 6/1/18 through 5/1/19 | 4.6377% | 5.00% | 12 | $ 105.80 | $1,269.60 |
| $722.41 | $ 783.15 | 6/1/19 through 1/1/36 | 5.00% | 5.00% | 200 | $ 60.74 | $12,148.00 |
| TOTAL | | | | | | | $29,840.32 |

18. The Borrower Trust's calculation of damages, contrary to the Respondent's damages calculation, includes only the difference between the Respondent's monthly principal

---

[7] The HAMP program permitted step-rate modifications, and since the initial interest rate is already lower than what would be permitted by HAMP, the Borrower Trust felt that this assumption was appropriate. See Supp. Decl. n 8.
[8] In the Objection, the Borrower Trust calculated the damages using the step-rate schedule from the Permanent Traditional Modification rather than from the HAMP guidelines. The Borrower Trust has adjusted the damages award to reflect the proper schedule.

6

and interest payment under the Estimated Permanent HAMP Modification and the Permanent Traditional Modification. It does not include any increase in the monthly payment caused by increases to the Respondent's escrow obligations. See Supp. Decl. ¶ 18. As stated in the Permanent Traditional Modification, the escrow portion of the Respondent's payment was dependent on the amount she owed in insurance and property tax, which is outside the Debtors' control. See id; see also ¶ 12 *supra*. This portion of her monthly payment would have increased by the same amount even if a Permanent HAMP Modification rather than the Permanent Traditional Modification had been executed. See Supp. Decl. ¶ 18.

## REPLY

19. A filed proof of claim is "deemed allowed, unless a party in interest … objects." 11 U.S.C. § 502(a). Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law…." 11 U.S.C. § 502(b)(1). As noted previously by the Court, claims objections have a shifting burden of proof. Pursuant to Federal Rule of Bankruptcy Procedure 3001(f), a claimant establishes a prima facie case against a debtor upon filing a proof of claim alleging facts sufficient to support the claim. The objecting party is thereafter required to produce evidence equal in force to that provided by the claimant to rebut the presumption of the claimant's prima facie case. In re Residential Capital, LLC, 507 B.R. 477, 490 (Bankr. S.D.N.Y. 2014). See also Allegheny Int'l, Inc. v. Snyder (In re Allegheny Int'l, Inc.), 954 F.2d 167, 173-74 (3d Cir. 1992).

20. Once an objection refutes an essential allegation of the claim, the burden of persuasion is on the holder of a proof of claim to establish a valid claim against a debtor by a preponderance of the evidence. Residential Capital, 507 B.R at 490; Feinberg v. Bank of N.Y. (In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010); In re Oneida Ltd., 400 B.R. 384,

389 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co. v. Oneida Ltd., No. 09-cv-2229 (DC), 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010).

21.     In the Response, the Respondent asserts that she was misled into entering into the Permanent Traditional Modification because of the mistake regarding the auto draft in December 2009. She also asserts that she is entitled to a much higher amount in damages because she received the Permanent Traditional Modification rather than a permanent HAMP modification.

22.     As an initial matter, the Respondent provides no explanation for how she was "misled" by the Debtors and has put forward no evidence that the suspension of her auto draft payment caused her any harm. As discussed in ¶ 8 *supra*, it was GMACM's regular business practice to suspend auto draft payments when an account was approved for a loan modification in order to avoid the regular payment being made along with the modified payment. At the time the auto draft payment was cancelled, the Respondent had applied for and been approved for the Trial HAMP Modification. Furthermore, during this period, GMACM had also suspended all credit reporting, and therefore, the suspended auto draft payment could not have had a negative impact on the Respondent's credit.

23.     The Respondent overstates her alleged damages. In Pennsylvania, "the 'preferred' remedy for breach of contract is expectation damages, that is, the money that will place the injured party in the position it would have enjoyed had the contract not been breached. Thus, the injured party can recover nothing more than will compensate it for the breach." Vino 100, LLC v. Smoke on the Water LLC, 864 F. Supp. 2d 269, 285 (E.D. Penn. 2012) (internal citations omitted). "The party alleging a breach of contract has the duty to prove the existence of damages and 'damages are not recoverable if they are too speculative, vague or contingent and are not recoverable for loss beyond an amount that the evidence permits to be established with

reasonable certainty." Id. (citing Spang & Co. v. U.S. Steel Corp.), 545 A.2d 861, 866 (Pa. 1988). The reduced amount provided in the Objection is the amount necessary to place the Respondent in the same position she would have been in had a Permanent HAMP Modification been executed, and is thus the appropriate amount of expectation damages under Pennsylvania law.

24. The Respondent's calculation of her damages would place her in a much better position than she would have been in had she received a Permanent HAMP Modification. In the Response, the Respondent provides an explanation for how she quantified her damages, which includes $150,696 from higher payments over the life of the loan, summarized as follows:

| Respondent's Calculation of Damages | | | | | |
|---|---|---|---|---|---|
| Estimated HAMP P&I Payment (Step-Rate) | Monthly Payment Under Permanent Traditional Modification | Date of Change | # of Payments | Difference in Payment Amount | Total Estimated Difference |
| $679.83 | $833.00 | April 2010 | 8 | $153.00 | $1,224.00 |
| $679.83 | $840.00 | January 2011 | 12 | $160.00 | $1,920.00 |
| $679.83 | $853.00 | January 2012 | 12 | $173.00 | $2,076.00 |
| $679.83 | $875.00 | January 2013 | 12 | $195.00 | $2,340.00 |
| $679.83 | $900.00 | January 2014 | 4 | $210.00 | $840.00 |
| $679.83 | $ 974.00 | May 1, 2014 | 12 | $ 274.00 | $ 3,288.00 |
| $679.83 | $1,030.00 | May 1, 2015 | 12 | $ 340.00 | $ 4,080.00 |
| $679.83 | $1,038.00 | May 1, 2016 | 236 | $ 348.00 | $82,128.00 |
| TOTAL | | | | | $89,496.00 |
| Additional amount assuming monthly payment under Permanent HAMP Modification was $200 less than monthly payment under the Trial HAMP Modification ($200 X 306 monthly payments) | | | | | $61,200 |
| TOTAL | | | | | $150,696.00 |

25. This measure of damages is flawed for a number of reasons. First, the Respondent is using the total monthly payment under the Permanent Traditional Modification rather than the principal and interest payment. As a result, the monthly payment includes

9

ny-1218696

amounts paid for escrow items.[9] The Respondent would have been responsible for the escrow portion of her payment no matter what type of modification she had received, so including the escrow portion of her monthly payment in her alleged damages is inappropriate and should have been limited to only the Respondent's monthly payment of principal and interest.

26.     The Respondent's calculation is also flawed because she uses the monthly payment under the Trial HAMP Modification as the amount that her monthly principal and interest payment would have been under a permanent HAMP modification. However, this assumes that the Respondent's interest rate under a permanent HAMP modification would have been fixed at 0.6377%. However, as stated in ¶ 17 *supra*, given that the Permanent Traditional Modification executed by the Respondent included a step-rate interest rate, a Permanent HAMP Modification more likely than not would also have included a step-rate interest rate.

27.     Finally, the Respondent's measure of damages is premised on an assumption that her monthly payment under a Permanent HAMP Modification would have been $200 less than her monthly payment under the Trial HAMP Modification. See Response at 6 of 7. The Respondent provides no explanation or evidence to support her assumption, and any claim that includes this amount would provide the Respondent with a windfall beyond the amount necessary to make her whole.

28.     Additionally, the Respondent asserts unliquidated damages resulting from alleged "damage to credit causing loss of opportunities, jobs, savings, interest." See Response at 2. As noted in ¶ 14 *supra*, after the Permanent Traditional Modification was executed, the Respondent timely made every payment through the date that servicing of the Loan was transferred to Ocwen and the Debtors never reported the account as delinquent to any credit reporting agency. As a

---

[9] The increases to the Respondent's monthly payment under the Permanent Traditional Modification during the period the Loan was serviced by the Debtors are all the result of increases to the escrow portion of her payment, as the principal and interest portion of her payment did not increase during this time. See Supp. Decl. n. 9.

result, the Respondent has failed to demonstrate how the Permanent Loan Modification damaged her credit report or how it damaged her in anyway not already discussed herein.

## CONCLUSION

29. WHEREFORE, the Borrower Trust respectfully submits that the relief requested in the Objection should be granted and the Claim should be reduced to $29,840.32 and allowed as a general unsecured claim against GMACM in that amount.

Dated: January 15, 2016  
       New York, New York

/s/ Norman S. Rosenbaum  
Norman S. Rosenbaum  
Jordan A. Wishnew  
Jessica J. Arett  
MORRISON & FOERSTER LLP  
250 West 55th Street  
New York, New York 10019  
Telephone: (212) 468-8000  
Facsimile: (212) 468-7900  

*Counsel for the ResCap Borrower Claims Trust*