## Exhibit H

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Priore Declaration    Pg 2 of 117
Case 2:10-cv-02153-JAM-KJN    Document 62    Filed 02/16/11    Page 1 of 31

**31**

Holly S. Burgess (SBN 104757)
LAW OFFICES OF HOLLY S. BURGESS
680 Auburn Folsom Road, Suite 109
Auburn, CA  95603
530-889-8900
530-820-1526 fax
*hollyburgess@lohsb.com*

Attorney for Plaintiff
SHELLEY von BRINCKEN

THE UNITED STATES DISTRICT COURT

THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| SHELLEY von BRINCKEN, | ) **CASE NO: 2:10-CV-02153-JAM-KJN** |
| | ) |
| Plaintiff, | ) **SECOND AMENDED** |
| | ) **COMPLAINT FOR:** |
| vs. | ) 1. VIOLATION OF HOMEOWNERS |
| | ) EQUITY PROTECTION ACT; |
| MORTGAGECLOSE.COM, INC.; | ) 2. VIOLATIONS OF REAL ESTATE |
| CALIFORNIA LAND COMPANY OF NEVADA | ) SETTLEMENT PROCEDURES ACT; |
| COUNTY; | ) 3. VIOLATIONS OF TRUTH IN |
| EXECUTIVE TRUSTEE SERVICES, dba ETS | ) LENDING ACT; |
| SERVICES, LLC; | ) 4. VIOLATIONS OF FAIR CREDIT |
| MORTGAGE ELECTRONIC REGISTRATION | ) REPORTING ACT; |
| SYSTEMS, INC.; | ) 5. FRAUDULENT MISREPRESENTA- |
| GMAC MORTGAGE, INC.; and | ) TION; |
| DOES 1-20, inclusive, | ) 6. BREACH OF FIDUCIARY DUTIES; |
| | ) 7. UNJUST ENRICHMENT; |
| Defendants. | ) 8. CIVIL CONSPIRACY; |
| | ) 9. CIVIL RICO VIOLATIONS; |
| | ) 10. QUIET TITLE |
| | ) 11. USURY AND FRAUD; |
| | ) 12. WRONGFUL FORECLOSURE; |
| | ) 13. BREACH OF SECURITY |
| | ) INSTRUMENT |
| | ) |
| | ) **PLAINTIFF DEMANDS A JURY** |
| | ) **TRIAL** |

**PARTIES**

1.     Plaintiff is SHELLEY von BRINCKEN ("Plaintiff" or "von BRINCKEN"), an

individual who is the owner of 14738 Wolf Road, Grass Valley, California, 95949 ("the Subject

- 1 -

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Prior Declaration    Pg 3 of 117
Case 2:10-cv-02153-JAM-KJN    Document 62    Filed 02/16/11    Page 2 of 31

1  Property"). The legal description of the Subject Property is fully described in **Exhibit "A"**, attached

2  hereto and incorporated herein by reference, APN: 55-060-34

3      2.    Defendant, MORTGAGECLOSE.COM, INC. ("MORTGAGECLOSE") is a

4  corporation, incorporated in Pennsylvania, whose address is 635 Swedesford Road, Malvern, PA

5  19355, and was engaged in business as a bank and/or a private lender, and/or servicer of mortgage

6  loans in the county of Nevada, California.

7      3.    Defendant GMAC MORTGAGE, LLC, ("GMAC") is a wholly owned subsidiary of

8  Ally Financial Inc., whose corporate headquarters is in Fort Washington, PA, and on information and

9  belief, at all times mentioned in this Complaint was engaged in the business of title insurance,

10  banking services, including foreclosure, and acting as trustee for banks, mortgage holders and lien

11  holders in the county of Nevada, California.

12      4.    Defendant, EXECUTIVE TRUSTEE SERVICES, dba ETS SERVICES, LLC

13  ("ETS") a division of GMAC Mortgage, LLC, on information and belief, at all times mentioned in

14  this Complaint was engaged in the business of banking services, including foreclosure, and involved

15  in the acquisition, purchase, sale, securitization, and servicing of residential mortgages in the county

16  of Nevada, California.

17

18      5.    Defendant CALIFORNIA LAND COMPANY OF NEVADA COUNTY

19  ("CALIFORNIA LAND") is a California corporation, whose business address is 464 Brunswick

20  Road, Grass Valley, CA 95945, and who on information and belief, at all times mentioned in this

21  Complaint was engaged in the business of title insurance, banking services, including foreclosure,

22  and acting as trustee for banks, mortgage holders and lien holders in the county of Nevada,

23  California.

24

25      6.    Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,

26  ("MERS") at all times relevant herein was incorporated in the state of Delaware, with its principal

27  place of business in Reston, Virginia. MERS was conducting business including, but not limited to,

28  operating a database, assigning mortgages (specifically including an attempt to assign the subject

-2-

Von Brincken v. MortgageClose.com, Inc., et al.    **SECOND AMENDED COMPLAINT**

1   mortgage herein) in violation of California Corporations Code section 191(d).

2       7.    Defendant FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FNMA"),

3   commonly referred to as "Fannie Mae," is a stockholder-owned corporation, charted as a government

4   sponsored enterprise.

5       8.    Defendant FANNIE MAE GUARANTEED PASS-THROUGH CERTIFICATES

6   SERIES 2007-036 ("FANNIE MAE TRUST"), is an unregistered entity in California, based on

7   information and belief, was at all relevant times mentioned herein, was a pooling and servicing trust

8   of mortgages, in which the subject mortgage and property were placed. Based on information and

9   belief, FANNIE MAE TRUST is or was the holder of the subject mortgage note.

10      9.    Defendants DOES 1-10 are believed to be the current beneficiaries of the Deed of

11  Trust, if the lien has not been extinguished by operation of law.

12      10.   Plaintiff does not know the true names, capacities, or basis of liability of Defendants

13  sued as Doe 1 through Doe 20.  Each fictitiously named Defendant is in some manner liable to

14  Plaintiff, claims some right, title, or interest in the Subject Property, or both.

15      11.   At all times relevant to this Complaint, each of the Defendants was the agent or

16  employee of each of the remaining Defendants, and was acting within the course and scope of such

17  agency or employment.

18      12.   Plaintiff does not know the true names, capacities, or basis for liability of Defendants

19  sued as Doe 1 through Doe 10, i.e., the Beneficiaries.  Each fictitiously named Defendant is in some

20  manner liable to Plaintiff, claims some right, title, or interest in the Subject Property, or both.

21      13.   At all times relevant to this Complaint, each of the Defendants was the agent or

22  employee of each of the remaining Defendants, and was acting within the course and scope of such

23  agency or employment.

24                              **JURISDICTION**

25      14.   Pursuant to 28 U.S.C.A. §1331, this court has original jurisdiction based on the laws of

26  the United States, as alleged herein.

27      15.   Pursuant to 28 U.S.C. §1367(a), this court has supplemental jurisdiction over the

28  related state court claims.

- 3 -

12-12020-mg   Doc 9547-9   Filed 01/25/16   Entered 01/25/16 16:03:47   Exhibit H to
Priore Declaration   Pg 5 of 117
Case 2:10-cv-02153-JAM-KJN   Document 62   Filed 02/16/11   Page 4 of 31

1

## FACTS COMMON TO ALL CAUSES OF ACTION

2      16.     Not only is the Plaintiff the victim of fraud, unlawful and predatory lending and an

3   underlying conspiracy to commit fraud, but Ms. BRINCKEN is also facing the pending loss of her

4   home through foreclosure initiated and advanced by Defendants in violation of the notice and

5   standing requirements of California foreclosure law.

6      17.     In addition, the challenged foreclosure is based upon a Deed of Trust and a Note in the

7   mortgage that is no longer held by the same entity or party.  Further, the foreclosure is based upon a

8   Deed of Trust that was flawed at the date of origination of the loan.  The "lender" on the Deed of

9   Trust, MORTGAGECLOSE was not the actual lender or source of the monies that funded the loan.

10   The money to fund the loan came from investors.  MORTGAGECLOSE acted merely as a broker for

11   the purpose of obtaining Plaintiff's signature on loan documents and, therefore, MORTGAGECLOSE

12   was merely the servicer of the loan, but never the lender or owner of the beneficial interest in the

13   Deed of Trust or the obligation purportedly secured thereby.  MERS was named as nominee of the

14   "Lender" MORTGAGECLOSE and as beneficiary on the Deed of Trust, but MERS was not the true

15   beneficiary; and the "Lender," on whose behalf MERS was named as "nominee," was not the true

16   lender.

17            In this case, foreclosure and a Trustee's Deed Upon Sale have been filed.  The

18   foreclosing entity ETS filing the foreclosure is a third party and has no pecuniary interest in the

19   mortgage loan.  The entity lacks standing and the capacity to foreclose.  The entity has no firsthand

20   knowledge of the loan, no authority to testify or file affidavits as to the validity of the loan documents

21   or the existence of the loan.  The entity has no legal authority to draft mortgage assignments relating

22   to the loan.  The foreclosing entity and its agents regularly commit perjury in relation to their

23   testimony.

24      17.     MORTGAGECLOSE, the lender on the original Promissory Note was not the lender.

25   On information and belief, the "lender" MORTGAGECLOSE did not actually loan Plaintiff any

26   money.  The true originators of the loan immediately and simultaneously securitized (allegedly) the

27   note through the means of conversion of an Article III negotiable Instrument (U.C.C.) into Article IX

28   (U.C.C.), non-negotiable paper.  The beneficial interest in the Note was never in the lender.  In this

-4-

12-12020-mg   Doc 9547-9   Filed 01/25/16   Entered 01/25/16 16:03:47   Exhibit H to
Case 2:10-cv-02153-JAM-KJN   Document 62   Filed 02/16/11   Page 5 of 31
Priore Declaration   Pg 6 of 117

1  case ETS has declared a default and is not in privity with the lender.  The true owner (s) or

2  beneficiary(s) of the mortgage loan has not declared a default, cannot declare a default under its Trust

3  Agreement, and does not have an interest in the Note that allows for any remedial actions to be

4  undertaken by the Beneficial Interest Holder(s).

5       18.     The obligations reflected by the Note (allegedly secured by MERS's assignment of

6  the MORTGAGECLOSE Deed of Trust to ETS and ETS's assignment of the Deed of Trust to

7  FNMA  as trustee for FANNIE MAE TRUST) have been satisfied in whole or in part because the

8  investors who furnish the funding for these loans have been paid to the degree that extinguishments

9  of the debts has occurred with the result that there exist no obligations on which to base any

10  foreclosure on the property owned by Plaintiff.  Defendants have and continue to cloud the title and

11  illegally collect payments and attempt to foreclose upon the property of the Plaintiff when they do

12  not have lawful rights to foreclose, and are not holders-in-due-course of the notes.

13       19.     The mortgage loan assigned to MERS, as nominee, is, at most, an unsecured debt.

14  The only parties entitled to collect on the unsecured debt would be the holder-in-due-course and

15  beneficial owner(s) of the original Promissory Note (the original "Lender of Record"), **if** the asset is

16  still booked as an asset and has not been sold and de-recognized as an asset under FASB 140.  Those

17  unknown parties have not come forward in this case.

18       20.     Certain individuals, who were the employees of the Servicer, ETS, executed and

19  notarized forged documents as to the ownership of the loan.  The affiants have committed counts of

20  fraud, perjury and forgery of the mortgage loan.

21       21.     Defendant ETS, represented itself as a "Trustee" coming to Court and are actually not

22  common law Trustees, rather, they are special Corporate Trustees with limited ministerial duties.

23  These rights, duties and obligations do not include any remedial actions as they relate to the assets of

24  the REMIC Trust.  The Servicers, like ETS, are merely administrative entities, under limited power

25  of attorney, who collect the mortgage payments and escrow funds. The Servicer has no greater

26  power than its' Principal, the Trustee, and lacks the authority to bring any action on behalf of the

27  REMIC Trust. The Trust participants have executed Trust Agreements, under oath, with the Security

28  Exchange Commission ("SEC"), and the Internal Revenue Service ("IRS"), as mortgage asset "pass-

- 5-

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Case 2:10-cv-02153-JAM-KJN   Document 62   Filed 02/16/11   Page 6 of 31
Priore Declaration   Pg 7 of 117

1   through" entities wherein they can never own or manage the mortgage loan assets in the REMIC

2   Trust.  This allows them to qualify as a Tax Free Real Estate Mortgage Investment Conduit

3   ("REMIC") rather than an ordinary Real Estate Investment Trust ("REIT").  As long as the Trust is a

4   qualified REMIC, no income tax will be charged to the beneficial certificateholders.

5         22.    Importantly, the "Trustee" or custodian, must have the mortgages recorded in the

6   investors name as the beneficiaries of the Trust within 90 days of the "closing date" *(IRS Rule 860D*

7   *(a)(4))*, as defined within the REMIC Trust Agreement.  Every mortgage in the Trust should have

8   been publicly recorded in Nevada County where the property is located with a mortgage in the name

9   of  this Trust, which would have had to been recorded in this case in 2009.  No such recording

10  exists in the Nevada County records.

11        23.    The Promissory Note was never conveyed pursuant to the Trust mandates and the

12  mortgages were never conveyed or recorded pursuant to the proper chain of custody and Assignment

13  within the Trust Agreement(s).

14        24.    In this scenario, even if the foreclosing entity produces a copy of a note, or even an

15  alleged original, the mortgage loan was not conveyed into the Trust under the requirements of the

16  prospectus for the Trust or the REMIC requirements of the IRS.  Mere possession of an Instrument

17  does not confer the status of a person entitled to enforce the Instrument.

18        25.    Consequentially, the end result is that the required Trust asset, or any part thereof

19  (mortgage note or security interest), was not legally transferred to the Trust to allow the Trust to

20  ever be considered a "holder" of a mortgage loan.  Neither the "Trust" nor the Servicers, GMAC or

21  ETS, would ever be entitled to bring a foreclosure or declaratory action.  The Trust will never have

22  standing or be a real party in interest before this Court.

23        26.    The transfer of mortgage loans into the Trust in which the Trustee after the "**cut off**

24  **date**" (in this case 2007), destroys the Trust's REMIC tax exempt status, and this Trust would owe

25  millions of dollars to the IRS and the State of California as the income would be taxed at one

26  hundred percent (100%), if the Court were to find in favor of the Defendant(s).  Subsequent to the

27  "cut-off date" listed in the prospectus, whereby the mortgage notes and security for these notes had

28

1  to be identified, and the Note and Mortgages transferred, within 90 days, and thereafter, the pool is
2  permanently closed to future transfers of mortgage assets.

3      27.     Defendants fraudulently conveyed Plaintiff's mortgage loan, which was fraudulently
4  recorded on or about January 23, 2009, in an attempt to transfer a Mortgage Assignment into a
5  REMIC after that REMIC's "cut off" and "closing dates".

6      28.     Therefore, the lack of lawful acquisition of Plaintiff's mortgage loan violates the
7  prospectus presented to the investors and the IRS REMIC requirements.

8      29.     Plaintiff signed a Promissory Note and Mortgage. She was unknowingly converting
9  her property into an alleged asset of a Trust, while her credit and signature was used to sell
10  securities, the profits of which were to used to fund the predatory "loan", (unbeknownst to Debtor,
11  the loan papers were processed with an inflated appraisal and inflated income) without her consent
12  or knowledge of the terms and conditions of the contract. Under the controlling Trust documents, a
13  percentage of the homeowner's monthly payment stream was used as a guarantee. This guarantee
14  and payment under the guarantee has resulted in accounting documents that Plaintiff believes show
15  all payments have been made on Plaintiff's alleged obligation. A portion of Plaintiff's monthly
16  mortgage payment was used to insure and pay her alleged obligation without her knowledge or
17  consent and the payment is believed to be current. California Commercial Code §3602(a) and UCC
18  3-602(a) provide that an obligation paid is an obligation extinguished. Plaintiff was never informed
19  of the nature of the scheme. She was deliberately induced into signing a Negotiable Instrument
20  which was never intended as such, but intended as collateral for the sale of securities. Under the
21  terms of the typical Pooling and Servicing Agreement ("PSA"), her mortgage obligation has been
22  paid. Her alleged "default" is a fiction.

23      30.     The fact that this "loan" was actually the proceeds from the sale of securities, and not
24  a loan as it is defined under the laws of California, was a "material disclosure" which was
25  deliberately and intentionally undisclosed. The failure to disclose the identity of the true lender at
26  closing was also a "material disclosure"; the nature of which would make the deed of trust void
27  under California contract law.

28

- 7 -

1       31.     As required by SEC, this Trust has a PSA and must be publicly filed. The only

2   purpose for the PSA is for the administration and distribution of funds to the investors and the

3   obligation of the so called Trustee in administering the Trust. The investors who put up money for

4   the Trust and who received the securities certificates or Bonds, are purported to not be parties to the

5   PSA. However, under the Step Transaction Doctrine, as adopted by the Courts, these transactions

6   are interdependent of one another and interrelated and, therefore, fall under the scope of a "single

7   transaction", as defined by the Doctrine. The Borrowers and the Investors are the true Principals to

8   the transaction, with the only financial and pecuniary interest in the transaction(s).

9       32.     The PSA merely sets forth what happens after the mortgages are bundled together.

10  However, the PSA also sets forth a *Cut Off Date*. The Cut off date is the date on which all mortgage

11  loans in the Trust must be identified and set out in the SEC required list of mortgage loans.

12      33.     Like the cut off date, this Trust had a *Closing Date*. The Closing Date is the date that

13  the individually identified mortgages were to be transferred through the Custodian for the benefit of

14  the investors. The Trust Custodian must certify that for each mortgage loan, the Trust Custodian has

15  possession of the original Promissory Note, all original endorsements and assignments transferring

16  the Note and proof that the ownership of the Note has been lawfully transferred for the benefit of the

17  investors. Further proof of the ownership of a mortgage loan is required by a public recording of the

18  Mortgage or Assignment of the mortgage itself. This MUST have occurred by the closing date.

19      34.     In this case, based upon information and belief, Plaintiff believes the Trust was

20  actually closed before the loan was finalized in late December 2009.

21      35.     Whoever claims to be acting on behalf of the Trust and claims that it has acquired the

22  loan from MORTGAGECLOSE, was not the party in the original Deed of Trust. The multiple

23  transfers of title of the mortgage loan between the originator, MORTGAGECLOSE, The REIT

24  Trust, the Depositor and the REMIC Trust is simply ignored as it can never be proved or shown to

25  the Court. Chain of Mortgage assignment is broken as the assignees in the chain of title were never

26  the mortgagee of record under a Mortgage Assignment and have absolutely no legal tie to the

27  investors in the Trust.

28

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Priore Declaration    Pg 10 of 117
Case 2:10-cv-02153-JAM-RJN    Document 82    Filed 02/16/11    Page 9 of 31

1    36.    The assignment of Plaintiff's mortgage was signed and notarized many years after the

2   actual date of the "loan" and the date listed with the SEC and IRS as the "Closing" of the REMIC.

3   In this case, if found to be true, this Trust has been operating illegally as a tax exempt REMIC.

4    37.    On or about January 23, 2009, Plaintiff executed a written DEED of TRUST and

5   security instrument, with MORTGAGECLOSE as the lender and CALIFORNIA LAND as the

6   trustee.  A copy of the DEED of TRUST is attached as **Exhibit "B"** and incorporated herein by

7   reference.  The DEED of TRUST and Security Instrument has never been transferred from

8   MORTGAGECLOSE, to the foreclosing entity, ETS or GMAC.   Plaintiff is informed and believes

9   the Deed of Trust has been transferred to an unknown entity at the time of execution in January 2009,

10  or was transferred to other unnamed entities and that the parties claiming a right or beneficial interest

11  in the Deed of Trust, in fact have not legitimate claims, as more fully explored below, in the

12  TWELFTH CAUSE OF ACTION for WRONGFUL FORECLOSURE.

13    38.    All Defendants, if any of the Defendants has any interest in the Note and Deed of

14  Trust (referred to collectively as "Mortgage"), are responsible and liable herein for all the actions of

15  its predecessor-in-interest, the owner of the subject mortgage loan and the servicer/agent.

16

17  **Chain of Title Problems**

18  39. The chain of title is hopelessly confused and convoluted, with multiple entities claiming a

19  pecuniary interest in the Subject Property.  At the time of the Notice of Default, the recorded interests

20  contradict the assertion that MERS or FNMA for FANNIE MAE TRUST was the foreclosing

21  beneficiary, and reveal a slew of other illegal actions.  Starting from the beginning, the chain of

22  recordation is as follows:

23
24

| DATE | DOCUMENT | PARTIES | |
|------|----------|---------|---|
| **Dated 1/14/2009** | **NOTE**<br>**Loan #0810219**<br><br>**[Attached as Exhibit "B"]** | Lender: | Mortgageclose.Com, Inc. (NV) |
| | | Borrower: | Shelley Von Brincken |
| | | | |

Von Brincken v. MortgageClose.com, Inc., et al.                    SECOND AMENDED COMPLAINT

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Priore Declaration    Pg 11 of 117
Case 2:10-cv-02153-JAM-KJN    Document 62    Filed 02/16/11    Page 10 of 31

| DATE | DOCUMENT | PARTIES | |
|---|---|---|---|
| **Dated 1/14/2009** | **NOTE**<br>**Loan #0810219**<br><br>**[Attached as Exhibit "B"]** | Lender:<br><br>Borrower: | MortgageClose.Com, Inc. (NV)<br><br>Shelley Von Brincken |
| Filed: 1/23/2009 | **DEED OF TRUST**<br>**$220,000**<br><br>**[Attached as Exhibit "B"]** | Lender/Beneficiary:<br><br>Borrower/Trustor:<br><br>Trustee:<br><br>Nominee/beneficiary: | MortgageClose.Com, Inc. (NV)<br><br>Shelley Von Brincken<br><br>California Land Title Company<br><br>MERS |
| not filed<br>Dated: 3/1/2009 | **Notice of Assignment, Sale or Transfer of Servicing Rights**<br>**Loan #0810219**<br><br>**[Attached as Exhibit "C"]** | Servicer:<br><br>New Servicer:<br><br>Borrower: | MortgageClose.Com, Inc.<br><br>[unnamed]<br><br>Shelley Von Brincken |
| Dated: 3/17/2010 | **Borrower's Qualified Written Request**<br><br>**[Attached as Exhibit "D"]** | Borrower/Affiant:<br><br>Servicer/Addressee: | Shelley Von Brincken<br><br>GMAC Mortgage |
| Dated: 3/30/2010 | **GMAC's First Response to Borrower's Qualified Written Request**<br><br>**[Attached as Exhibit "E"]** | Borrower/Affiant:<br><br>SubServicer/Sender:<br><br>Master Servicer:<br><br>Loan owner: | Shelley Von Brincken<br><br>GMAC Mortgage<br><br>FNMA<br><br>FNMA |
| Dated: 4/16/2010 | **Borrower's Notice of Exercising Right to Cancel**<br>**"Rescission Letter"**<br><br>**[Attached as Exhibit "F"]** | Borrower/Affiant:<br><br>Addressees: | Shelley Von Brincken<br><br>Mortgageclose.com; GMAC Mortgage; California Land Title Company; MERS |

- 10-

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Priore Declaration    Pg 12 of 117
Case 2:10-cv-02153-JAM-KJN    Document 62    Filed 02/16/11    Page 11 of 31

| DATE | DOCUMENT | PARTIES | |
|------|----------|---------|---|
| Filed: 4/28/2010 | **SUBSTITUTION OF TRUSTEE**<br><br>**[Attached as Exhibit "G"]** | Trustor: | Shelley Von Brincken |
| | | Orig Trustee: | California Land Title Company of NV County |
| | | Orig Beneficiary: | MERS as nominee for Mortgageclose.Com, Inc. |
| | | New Trustee: | Executive Trustee Services, LLC dba ETS Services, LLC |
| | | Signer: | MERS Donna Fitton, Assistant Secretary |
| | | DATE: | 4/27/2010 |
| Filed: 4/28/2010 | **NOTICE OF DEFAULT & ELECTION TO SELL UNDER DEED OF TRUST**<br><br>*** NO Notarized Declaration of Compliance ***<br><br>**[Attached as Exhibit "H"]** | Trustor: | Shelley Von Brincken |
| | | Beneficiary: | unnamed |
| | | Contact to stop foreclosure | MERS c/o ETS Services, LLC |
| | | undersigned: | ETS Services, LLC as Agent for beneficiary By Maricela Miseroy, Trustee Sale Officer |
| | | DATE signed: | 4/27/2010 |
| Dated: 5/4/2010 | **GMAC's Second Response to Borrower's Qualified Written Request**<br><br>**[Attached as Exhibit "I"]** | Borrower/Affiant: | Shelley Von Brincken |
| | | SubServicer/Sender: | GMAC Mortgage |
| | | Master Servicer: | FNMA |
| | | Loan owner: | FNMA |
| Dated 5/5/2010 | **DEBT VALIDATION NOTICE**<br><br>**[Attached as Exhibit "J"]** | Creditor: | MERS |
| | | Sender: | ETS Services, LLC |
| Filed: 8/6/2010 | **NOTICE OF TRUSTEE'S SALE Loan #0602227759**<br><br>Sale Date: August 19, 2010<br>**[Attached as Exhibit "K"]** | Trustor: | Shelley Von Brincken |
| | | Trustee: | ETS Services, LLC |
| | | Signer: | ETS Services, LLC Ileanna Petersen, Trustee Sale Officer |
| | | DATE: | 7/28/2010 |

- 11 -

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Priore Declaration    Pg 13 of 117
Case 2:10-cv-02153-JAM-KJN    Document 62    Filed 02/16/11    Page 12 of 31

| DATE | DOCUMENT | PARTIES | |
|------|----------|---------|---|
| Filed: 8/11/2010 | **LIS PENDENS**<br><br>**[Attached as Exhibit "L"]** | Plaintiff: | Shelley Von Brincken |
| | | Defendants: | Mortgageclose.Com, Inc.; Executive Trustee Services, LLC dba ETS Services, LLC |
| Filed: 9/10/2010 | **TRUSTEE'S DEED UPON SALE** &<br>Acknowledgement of **COMPLIANCE**<br><br>**Sold on 8/31/2010**<br>**Sale price $186,904.72**<br><br>**Loan #0602227759**<br><br>**[Attached as Exhibit "M"]** | Grantor | Executive Trustee Services, LLC dba ETS Services, LLC, as Trustee |
| | | Grantee: | "The Foreclosing Beneficiary" Federal National Mortgage Association (FNMA) |
| | | Trustee: | Executive Trustee Services, LLC dba ETS Services, LLC |
| | | Trustor: | Shelley Von Brincken |
| | | Acknowledgement Signer: | Executive Trustee Services, LLC dba ETS Services, LLC, as Trustee By Kathleen Gowen, Limited Signing Officer |
| | | DATE: | 9/3/2010 |
| Dated 10/27/2010 | **Letter** to advise **borrower** that **Fannie Mae is current owner of borrower's LOAN** and **GMAC is the LOAN servicer**<br><br>**[Attached as Exhibit "N"]** | Borrower: | Shelley Von Brincken |
| | | Beneficiary: | Fannie Mae (FNMA) |
| | | Servicer: | GMAC Mortgage, LLC |

40. On or about March 1, 2009 Defendant MORTGAGECLOSE provided Plaintiff with a Notice of Assignment, Sale or Transfer of Servicing Rights dated January 14, 2009 ("Notice of Assignment"). The Notice of Assignment states that MORTGAGECLOSE is the <u>servicer</u> of Plaintiff's mortgage loan, <u>not</u> the beneficiary. It further states that it is transferring the servicing of mortgage loan to a new servicer, however, the new servicer's name was not provided. This is contrary to the Deed of Trust, paragraph 20 that requires written notice that states the name and address of the new servicer. This indicative of Defendants' pattern of breaches and nondisclosure of

- 12 -

1    required information.

2      41. On or about March 17, 2010, Plaintiff sent a Qualified Written Request ("QWR") to

3    Defendant GMAC regarding her mortgage loan.  GMAC sent a reply dated March 30, 2010, stating

4    that it is the subservicer of her account and that FNMA is both the Master Servicer and the owner of

5    Plaintiff's mortgage.   However, contrary to California Civil Code Section §2932.5, no assignment of

6    the security interest from the purported Lender Mortgageclose.Com to FNMA was ever "duly

7    acknowledged and recorded" in California.    Compliance with this code is required in other for an

8    assignee to have the power of to sell Plaintiff's property.  Thus, FNMA wrongly foreclosed and

9    ordered the sale of Plaintiff's Property.  A copy of GMAC's March 30, 2010 reply letter is attached

10   as **Exhibit "C"**.

11      42. To further contradict Defendants' assertions, Defendant GMAC sent a second reply to

12    Plaintiff's QWR, dated May 4, 2010.  The reply is addressed to Plaintiff von BRINCKEN, but bears

13    the greeting "Dear Ms. Gottesburen."  This second reply, contrary to Defendant GMAC's first reply,

14    states on page 2, item #6 that Plaintiff's Loan is registered with MERS and "therefore, there are no

15    assignments."  A copy of GMAC's May 4, 2010 reply letter is attached as **Exhibit "G"**.

16          Defendant GMAC's second reply letter also answers most of Plaintiff's questions with

17    the statement: "Subject to business and trade practices which are proprietary and confidential."  This

18    further demonstrates Defendants' pattern of nondisclosure of required information.

19      43. On or about April 16, 2010, Plaintiff sent a letter to the purported Lenders of her mortgage

20    loan and their agents (Mortgageclose, GMAC, California Land, and MERS) to advise them that she

21    was exercising her right to rescind the loan "Plaintiff's Rescission Letter").  Plaintiff's letter also

22    advised Defendants that they violated TILA by failing to provide her with a "Notice of Right to

23    Cancel." Plaintiff's Rescission Letter detailed her claims against the Defendants.  Plaintiff further

24    advised Defendants that their omission extended the deadline by which the Lender must accept a

25    valid offer to rescind the loan, to three years after the consummation of the loan.  The loan was

26    consummated on or about January 14, 2009, and Plaintiff sent her Rescission Letter on or about

27    April 16, 2009.  Thus, Plaintiff timely sent her Rescission Letter to Defendants.  Plaintiff's rescission

28    pursuant to 12 C.F.R. § 226.23(d)(1) caused Defendants' security interest to become void and

- 13-

12-12020-mg   Doc 9547-9   Filed 01/25/16   Entered 01/25/16 16:03:47   Exhibit H to
Case 2:10-cv-02153-JAM-KJN   Document 62   Filed 02/16/11   Page 14 of 31

Plaintiff is not liable for any amount. Plaintiff's Letter is attached as **Exhibit "D"**.

44. Defendants neither responded nor took possession of Plaintiff's tender within 20 calendar days as required by 12 C.F.R. § 226.23(d)(3).   Thus, Plaintiff may keep the Subject Property without further obligation, as provided by 12 C.F.R. § 226.23(d)(3).

45. The Notice of Default (NOD), recorded on April 28, 2010, signed By "Maricela Miseroy, Trustee Sale Officer", without stating any corporate *signatory* capacity as required by Corporations Code 313 whatsoever.   The NOD was signed by ETS, which purports to be an agent "for the beneficiary" who is unnamed.   Additionally, there is no notarized Declaration of Compliance attached to the NOD as required by California Civil Code 2923.5.   As the NOD is non-compliant with California law, it is therefore invalid, should be stricken from the Official Records, the document expunged, and the Sale of the Subject Property should be set aside by the court.   The NOD is attached as **Exhibit "F"**.

46. The Debt Validation Notice (dated May 5, 2010) alleges that MERS is the creditor to whom Plaintiff owes the debt under the Note and Deed of Trust.   Again, this is contrary to GMAC's first reply letter and to the Trustee's Deed Upon Sale, which purport that FNMA is the beneficiary of Plaintiff's mortgage loan.   However, neither MERS nor FNMA were validly assigned a security interest in Plaintiff's mortgage loan.

47. Notice of Trustee's Sale, filed dated September 3, 2010, is also fatally defective.   It was signed by ETS, citing that it received a written Declaration of Default from the original beneficial interest holder under the Deed of Trust.   This was false as the NOD was filed by OLD REPUBLIC DEFAULT MANAGEMENT SERVICES, when MORTGAGECLOSE was the original lender and beneficial interest holder.   (See **Exhibit F** Notice of Default).   The Notice is utterly void, ultra vires, powerless and without legal validity, for the reasons stated already.   The Notice of Trustee's Sale is attached as **Exhibit "I"**.

**Separate Failure to Resolve Prior to Sale**

48.          Plaintiff called the purported lender/servicer of the subject mortgage to advise about her financial situation and to request assistance in the form of a repayment plan or other

Von Brincken v. MortgageClose.com, Inc., et al.          SECOND AMENDED COMPLAINT

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Priore Declaration    Pg 16 of 117
Case 2:10-cv-02153-JAM-KJN    Document 62    Filed 02/16/11    Page 15 of 31

1  modification relief designed to avoid foreclosure and the loss of her home.

2    49.    Despite Plaintiff's efforts, the purported lender/servicer failed, refused and/or
3  neglected to work with Plaintiff in any reasonable way to avoid foreclosure during the time of her
4  financial difficulties.

5    50.    Instead, the purported lender/servicer secretly was transferring the Deed of Trust and
6  then has attempted to foreclose, without notice to Plaintiff.

7    51.    The purported lender/servicer failed, refused and/or neglected to disclose to Plaintiff
8  what options were available to the Plaintiff, to avoid foreclosure and the loss of her home.

9    52.    As a result, Plaintiff was not provided with the specialized assistance and default loan
10  servicing that the lender/servicer was obligated to provide that comported with Plaintiff's ability to
11  pay and that served to assist Plaintiff in her efforts to avoid the default and the acceleration of the
12  subject mortgage debt and foreclosure.

13    53.    Defendant failed, refused and/or neglected to evaluate the particular circumstances
14  surrounding Plaintiff's claimed default; failed to evaluate Plaintiff or the subject property; failed to
15  determine Plaintiff's capacity to pay the monthly payment or a modified payment amount; failed to
16  ascertain the reason for Plaintiff's claimed default, or the extent of Plaintiff's interest in keeping the
17  Subject Property.

18    54.    The Defendants failed, refused and/or neglected to give this Plaintiff the opportunity
19  to cooperate in resolving the debt.

20    55.    The Defendants purposefully deceived Plaintiff that the Mortgage modification was
21  proceeding as planned and deceptively and purposefully wrongfully foreclosed on Plaintiff's
22  property.

23                    **FIRST CAUSE OF ACTION**
24          **Violations of the Home Ownership Equity Protection Act**
                      **(As to All Defendants and DOES)**
25    56. Plaintiff reaffirms and re-alleges the above paragraphs 1 through 52 herein above as if set
26  forth more fully herein below.

27    57. In 1994, Congress enacted the Home Ownership Equity Protection Act, (HOEPA) which is
28  codified at 15 USC §1639 et. seq. With the intention of protecting homeowners from predatory

- 15 -

1   lending practices targeted at vulnerable consumers. HOEPA requires lenders to make certain

2   disclosures and prohibits certain terms from being included in home loans. In the event of

3   noncompliance, HOEPA imposes civil liability for precision and statutory and actual damages.

4       58. Plaintiff is a "consumer" and each Defendant is a "creditor" as defined by HOEPA. In the

5   mortgage loan transaction at issue here, Plaintiff was required to pay excessive fees, expenses, and

6   costs which exceeded more than 10% of the amount financed.

7       59. Pursuant to HOEPA and specifically 15 USC §1639 (A.) (1), each Defendant is required to

8   make certain disclosures to Plaintiff which are to be made conspicuously and in writing no later than

9   three (3) days prior to the closing.

10      60. In the transaction at issue, Defendants are required to make the following disclosures to

11  Plaintiff by no later than three (3) days prior to said closing:

12              "You are not required to complete this agreement merely because

13                  you have received these disclosures or have signed a loan

14                  application. If you obtain this loan, the lender will have a mortgage

15                  on your home. You could lose your home and any money you have

16                  put into it, and if you do not meet your obligation under the loan."

17      61. Defendants violated HOEPA to help up by numerous acts and material omissions, including

18  but not limited to:

19          A.  Failing to make the foregoing disclosures in the conspicuous fashion;

20          B.  Engaging in a pattern and practice of extending credit to Plaintiff without regard to

21                  her ability to pay and violation of 15 USC§ 1639

22      62. By virtue of the Defendants' multiple violations of HOEPA, Plaintiff has a legal right to

23  resend the consumer credit transaction the subject of this action pursuant to 15 USC§1635. This

24  complaint is to be construed, for these purposes, as formal and public notice of Plaintiff's notice and

25  precision of the mortgage and note.

26      63. Defendants further violated HOEPA by failing to make an additional disclosure, including

27  but not limited to, Plaintiff's not receiving the required disclosure of the right to rescind the

28  transactions;

-16-

1      64. Defendants failed to provide accurate TILA disclosures and understated the amount being

2   financed.

3      65. As a direct consequence of, and in connection with, Plaintiff's legal and lawful exercise of

4   her right of rescission, the true "owner" is required, within twenty (20) days of the notice of

5   rescission, to:

6                    A.      Desist from making any claims for finance charges in the transaction;

7                    B.      Return all monies paid by Plaintiff in connection with the transaction to the

8                            Plaintiff;

9                    C.      Satisfy all security interests, including mortgages, which were required in the

10                           transaction.

11

12     66. Upon the true "lender's" full performance of its obligations under HOEPA, Plaintiff shall

     tender all sums to which the true lender is entitled.

13

14     67. Based on Defendants HOEPA violations, each of the Defendants is liable to the Plaintiff for

     the following, which Plaintiff demands as a relief:

15

16                   A.      Rescission of the mortgage loan transaction;

17                   B.      Termination of the mortgage and security interest in the property the subject

     of the mortgage loan documents created in the transactions;

18

19                   C.      Return of any money or property paid by Plaintiff including all payment made

     in connection with the transaction;

20

21                   D.      The amount of money equal to twice the finance charge in connection with

     the transactions;

22

23                   E.      Relinquishment of the right to retain any proceeds; and

24                   F.      Actual damages in an amount to be determined at trial, including, attorney's

     fees.

25

26     68. Because it is not clear who was actually in interest at the time of the actions described below,

     Plaintiff alleges this Cause of Action in the alternative against each of the possible parties at fault.

27

28   Unless otherwise indicated, allegations will be lodged against "Defendant Actually in Interest, If

- 17 -

1  any" for the purposes of this pleading, which will be amended upon discovery of which Defendant,

2  on information and belief, if it was one of the defendants named.

3  69. This Cause of Action is pled in the alternative to the more likely allegation that the Note has

4  become an ownerless "phantom note" and litigation is necessary to determine who, if anyone has

5  any right, under what transfer agreement, if any.

6  70. Plaintiff first learned of the actions of Defendants, including their failure to disclose and the

7  fraud committed upon her in November of 2009.  Any applicable statute of limitations should run

8  from this date.

9

10  **SECOND CAUSE OF ACTION**
**Violations of Real Estate Settlement Procedures Act**

11  **(As to All Defendants and DOES)**

12  71. Plaintiff reaffirms and re-alleges paragraphs 1 through 70 herein as if specifically set forth

13  herein below.

14  72. As mortgage lenders, Defendants are subject to the provisions of the Real Estate Settlement

15  Procedures Act ("RESPA"), 12 USC §2601 et. seq.

16  73. In violation of 12 USC §2607 and in connection with the mortgage loan to Plaintiff,

17  Defendants accepted charges for the rendering of real estate services which were in fact charges for

18  other than services actually performed.

19  74. As a result of the Defendants violations of  RESPA, Defendants are liable to Plaintiff in an

20  amount equal to three (3) times the amount of charges paid by Plaintiff for "settlement services"

21  pursuant to 12 USC §2607 (d) (2).

22  75. Plaintiff first learned of the actions of Defendants, including their failure to disclose and the

23  fraud committed upon her in November of 2009.  Any applicable statute of limitations should run

24  from this date.

25  **THIRD CAUSE OF ACTION**
**Violations of Truth In Lending Act**

26  **(As to All Defendants and DOES)**

27  76. Plaintiff reaffirms and re-allege paragraphs 1 through 75 above herein as if set forth fully

28  below.

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Case 2:10-cv-02153-JAM-KJN    Prior Declaration    Pg 20 of 117    Page 19 of 31
Document 62    Filed 02/16/11

1    77. Defendants failed to include and disclose certain charges in the finance charge shown on the

2    TILA statement, which charges were imposed on Plaintiff incident to the extension of credit to

3    Plaintiff and were required to be disclosed pursuant to 15 USC §1605 and Regulation Z §226.4, thus

4    resulting in an improper disclosure of financial charges in violation of 15 USC §1601 et seq.,

5    Regulation Z §226.18(d). Such undisclosed charges included some identified on the settlement

6    statement listing the amount financed which is different from the sum listed in the original Note.

7        78. By calculating the annual percentage rate ("APR") based upon improperly calculated and

8    disclosed amounts, Defendants are in violation of 15 USC §1601 et seq., Regulation Z §226.18 (c),

9    18(d), and 22.D

10       79. Defendants' failure to provide the required disclosures provides Plaintiff with the right to

11   rescind the transaction, and Plaintiff, through this public complaint which is intended to be

12   construed for purposes of this claim as a formal notice of rescission, hereby elects to rescind the

13   transaction.

14       80. Plaintiff first learned of the actions of Defendants, including their failure to disclose and the

15   fraud committed upon her in November 2009. Any applicable statute of limitations should run from

16   this date.

17                              **FOURTH CAUSE OF ACTION**

18                        **Violations Of Fair Credit Reporting Act**
                              **(As to All Defendants and DOES)**

19       81. Plaintiff reaffirms and re-alleges paragraphs 1 through 80 above as if set forth fully herein

20   below.

21       82. At all times material, Defendants qualified as a provider of information to the Credit

22   Reporting Agencies, including but not limited to Experian, Equifax and Trans Union, under the fair

23   credit reporting act. Defendants wrongfully, improperly, and illegally reported negative information

24   as to the Plaintiff to one or more credit reporting agencies, resulting in Plaintiff's having negative

25   information on her credit reports and the lowering of her FICO scores.

26           A.    The negative information included but was not limited to an excessive amount

27                 of debt into which Plaintiff was tricked into seed into signing;

28           B.    Notwithstanding the above, Plaintiff has paid each and every payment on time

                                          - 19-

Von Brincken v. MortgageClose.com, Inc., et al.              **SECOND AMENDED COMPLAINT**

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Prior Declaration    Pg 21 of 117
Case 2:10-cv-02153-JAM-KJN    Document 62    Filed 02/16/11    Page 20 of 31

1    from the time of the closing of the loan and until Plaintiff's default.

2    83. Pursuant to 15 USC §1681 (s) (2) (b), Plaintiff is entitled to maintain a private cause of

3    action against Defendants for an award of damages in an amount to be proven at the time of trial for

4    all violations of The Fair Credit Reporting Act which caused actual damages to Plaintiff, including

5    emotional distress and humiliation.

6    84. Plaintiff is entitled to recover damages from Defendants for negligent non-compliance with

7    The Fair Credit Reporting Act pursuant to 15 USC§1681(n)(a)(2) in an amount to be proven at the

8    time of trial.

9    85. Plaintiff first learned of the actions of Defendants, including their failure to disclose and the

10    fraud committed upon her in November of 2009.  Any applicable statute of limitations should run

11    from this date.

12                            **FIFTH CAUSE OF ACTION**
                              **Fraudulent Misrepresentation**
13                            **(As to All Defendants and DOES)**

14    86. Plaintiffs reaffirm and re-allege paragraphs 1 through 85 above as if set forth fully herein

15    below.

16    87. Defendants knowingly and intentionally concealed material information from Plaintiff which

17    is required by federal and state statutes and regulations to be disclosed to the Plaintiff both before

18    and after closing.

19    88. Defendants also materially misrepresented material information to Plaintiff with Defendants'

20    full knowledge that their affirmative representations were false, fraudulent, and misrepresented the

21    truth at the time said representations were made.

22    89. Under the circumstances, the Defendants' material omissions of material misrepresentations

23    were malicious.

24    90. Plaintiff, not being an investment banker, securities dealer, mortgage lender, or mortgage

25    broker, reasonably relied upon the representations of the Defendants in agreeing to execute the

26    mortgage loan documents.

27    91. Had Plaintiff known of the falsity of Defendants' representations, Plaintiff would not have

28    entered into the transaction that is the subject of this action.

- 20-

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Prior Declaration    Pg 22 of 117
Case 2:10-cv-02153-JAM-KJN    Document 62    Filed 02/16/11    Page 21 of 31

1    92. As a direct and proximate cause of Defendants' material omissions and material

2    misrepresentations, Plaintiff has suffered damages, all according to proof at trial.

3    93. Plaintiff first learned of the actions of Defendants, including their failure to disclose and the

4    fraud committed upon her in November of 2009. Any applicable statute of limitations should run

5    from this date.

## SIXTH CAUSE OF ACTION
### Breach Of Fiduciary Duty
### (As to All Defendants and DOES)

6
7
8    94. Plaintiff reaffirms and re-alleges paragraphs 1 through 94 above as if set forth fully herein

9    below.

10    95. Defendants, by their actions and contracting to provide mortgage loan services and a loan

11    program to Plaintiff [which was not only to be best suited to Plaintiff] given her income and

12    expenses, but by which Plaintiff would also be able to satisfy her obligations without risk of losing

13    her home, were "fiduciaries" in which Plaintiff reposed trust and confidence, especially given that

14    Plaintiff was not and is not an investment banker, securities dealer, mortgage lender or mortgage

15    broker.

16    . 96. Defendants breached their fiduciary duties to Plaintiff by fraudulently inducing Plaintiff to

17    enter into a mortgage transaction which was contrary to Plaintiff's stated intentions; contrary to the

18    Plaintiff's interest; and contrary to Plaintiff's preservation of her home.

19    97. As a direct and proximate result of the Defendants' breaches of their fiduciary duties,

20    Plaintiff has suffered damages.

21    98. Under the totality of the circumstances, the Defendants' actions were willful, wanton,

22    intentional, and with a callous and reckless disregard for the rights of Plaintiff justifying an award of

23    not only actual compensatory damages, but also exemplary punitive damages to serve as a deterrent

24    not only as to future conduct of the named Defendants herein, but also to other persons or entities

25    with similar inclination.

26    99. Plaintiff first learned of the actions of Defendants, including their failure to disclose and the

27    fraud committed upon her in November 2009. Any applicable statute of limitations should run from

28    this date.

- 21 -

12-12020-mg   Doc 9547-9   Filed 01/25/16   Entered 01/25/16 16:03:47   Exhibit H to
Priore Declaration   Pg 23 of 117
Case 2:10-cv-02153-JAM-KJN   Document 62   Filed 02/16/11   Page 22 of 31

## SEVENTH CAUSE OF ACTION
### Unjust Enrichment
### (As to All Defendants and DOES)

100.    Plaintiffs reaffirm and re-allege paragraphs 1 through 100 above as if set forth fully herein below.

101.    Defendants had an implied contract with Plaintiff to ensure Plaintiff understood all fees which would be paid to the Defendants to obtain credit on Plaintiff's behalf and not to charge any fees that were not related to the settlement of the loan and without full disclosure to Plaintiff.

102.    Defendants cannot, in good conscience and equity, retain the benefits from their actions of charging a higher interest rate, fees, rebates, kickbacks, profits (including, but not limited to, from the resale of mortgages and notes using Plaintiff's identity, credit score and reputation without consent, right, justification or excuse as part of an illegal enterprise scheme) and gains and yield spread premium fees ("YSP") unrelated to the settlement services provided at closing.

103.    Defendants have been unjustly enriched at the expense of Plaintiff, and maintenance of the enrichment would be contrary to the rules and principles of equity.

104.    Defendants have also been additionally enriched to the receipt of payment from third parties, including but not limited to, investors, insurers, the United States Department of the Treasury, the United States Federal Reserve, the FDIC and other banks.

105.    Plaintiff demands restitution from the Defendants in the form of actual damages, exemplary damages, and attorney's fees.

106.    Plaintiff first learned of the actions of Defendants, including their failure to disclose and the fraud committed upon her in November 2009.  Any applicable statute of limitations should run from this date.

## EIGHTH CAUSE OF ACTION
### Civil Conspiracy
### (As to All Defendants and DOES)

107.    Plaintiffs reaffirm and re-allege paragraphs 1 through 106 above as if set forth fully herein below.

108.    In connection with the application for and the consummation of the mortgage loan the

-22-

12-12020-mg   Doc 9547-9   Filed 01/25/16   Entered 01/25/16 16:03:47   Exhibit H to
Priore Declaration   Pg 24 of 117
Case 2:10-cv-02153-JAM-KJN   Document 62   Filed 02/16/11   Page 23 of 31

1  subject of this action, Defendants agreed, between and among themselves, to engage in actions in a

2  course of conduct designed to further an illegal act or accomplish a legal act by an unlawful means,

3  and to commit one or more overt act in furtherance of the conspiracy to defraud Plaintiff, including

4  but not limited to, the commencement of foreclosure.

5      109.    Defendants agreed between and among themselves to engage in the conspiracy to

6  defraud for the common purpose of accruing economic gains for themselves at the expense of and

7  detriment to Plaintiff.

8      110.    The acts of the Defendants were committed intentionally, willfully, wantonly, and

9  with reckless disregard for the rights of Plaintiff.

10      111.    As a direct and proximate result of the actions of the Defendants in combination

11  resulting in fraud and breaches of fiduciary duties, Plaintiff has suffered damages, all according to

12  proof at trial.

13      112.    Plaintiff first learned of the actions of Defendants, including their failure to disclose

14  and the fraud committed upon her in November 2009.  Any applicable statute of limitations should

15  run from this date.

16  <strong>NINTH CAUSE OF ACTION</strong>

17  <strong>Civil RICO Violations</strong>

<strong>(As to All Defendants and DOES)</strong>

18      113.    Plaintiff reaffirms and re-alleges paragraphs 1 through 112 above as if set forth fully

19  herein below.

20      114.    Defendants and each of them participated in the conspiracy, the subject of this action,

21  which has existed from date of application to the present, with the injuries and damages resulting

22  therefrom being continuous.

23      115.    Defendants' actions and use of multiple corporate entities, multiple parties, and

24  concerted and predetermined acts and conduct specifically designed to defraud Plaintiff constitutes

25  an "enterprise," with the aim and objective of the enterprise being to perpetuate a fraud upon the

26  Plaintiff through the use of intentional nondisclosure, material misrepresentation, and creation of the

27  fraudulent loan documents.

28      116.    Each of the Defendants is an "enterprise Defendant."

- 23-

117.   As a direct result of the actions of the Defendants, Plaintiff has suffered and continues to suffer damages.

118.   Whenever references are made in this complaint to any act of any Defendants, that allegation shall mean that each Defendant acted individually and jointly with the other Defendants.

119.   Any allegation about acts of any corporate or other business Defendant means that the corporation or other business did the acts alleged to its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

120.   At all times each Defendant committed the acts, Defendant directed others to commit the acts, or permitted others to commit the acts alleged in this complaint.

121.   Additionally, some or all of the Defendants acted as the agent of the other Defendants, and all of the Defendants acted within the scope of their agency or is acting as an agent of another.

122.   At all relevant times, each Defendant knew or realized that the other Defendants were engaging in or plan to engage in the violations of law alleged in the complaint. Knowing or realizing that at the Defendants were in gauging and are planning to engage in unlawful conduct, each Defendant nevertheless facilitated the commission of those unlawful acts. Each Defendant intended to and did encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other Defendants in the unlawful conduct.

123.   At all relevant times, Defendants have engaged in a conspiracy, common enterprise, and common course of conduct, the purpose of which is to engage in the violations of law alleged in the complaint. This conspiracy, common enterprise, and common course of conduct continue to the present.

124.   Plaintiff first learned of the actions of Defendants, including their failure to disclose and the fraud committed upon her in November 2009. Any applicable statute of limitations should run from this date.

## TENTH CAUSE OF ACTION
### Quiet Title
### (As to All Defendants and DOES)

125.   Plaintiff reaffirms and re-alleges paragraphs 1 through 124 above as if set forth fully

- 24-

1  | herein below.

2  |     126.    Plaintiff has sent or has caused to be sent notice of her intent to rescind the subject

3  | loan transaction, but only sent those notices to the entities that have been disclosed. Hence, without

4  | this action, neither the rescission nor the reconveyance which Plaintiff is entitled to file gives

5  | Plaintiff full and clear title to the Subject Property.

6  |     127.    The real party in interest on the lender's side may be the owner of the asset-backed

7  | security issued by the servicing and pooling vendor, the insurer through some claim equitable

8  | interests, or the Federal Government through the United States Department of the Treasury or the

9  | Federal Reserve. The security is a "securitized" bond deriving its value from the underlying

10 | mortgages, of which the subject mortgage is one. Thus Plaintiff is entitled to quiet title against

11 | Defendants, clearing title of the purported subject mortgage encumbrance.

12 |     128.    Plaintiff is informed and believes and thereon alleges that each of the Defendants

13 | claim an interest in the Subject Property.

14 |     129.    However, Defendants' claims are without any right whatsoever, and said Defendants

15 | have no legal or equitable rights, claim, or interest in the Subject Property.

16 |     130.    Plaintiff therefore seeks a declaration that the title to the Subject Property is vested in

17 | Plaintiff alone and that the Defendants herein, and each of them, be declared to have no estate, right,

18 | title or interest in the Subject Property and that said Defendants, and each of them, be forever

19 | enjoined from asserting any estate, right, title or interest in the Subject Property adverse to the

20 | Plaintiff herein.

21 |     131.    Plaintiff first learned of the actions of Defendants, including their failure to disclose

22 | and the fraud committed upon her in November 2009. Any applicable statute of limitations should

23 | run from this date.

24 | **ELEVENTH**

    **Usury and Fraud**

25 |

    **(As to All Defendants and DOES)**

26 |

27 |     132.    Plaintiff reaffirms and re-alleges the above paragraphs 1 through 131 above as if set

28 | forth fully herein below.

- 25-

133.     Plaintiff is informed and believes that the subject loan, notes, and mortgage were structured so as to create the appearance of a higher value of real property than the actual fair market value.

134.     Defendants disguised the transaction to create the appearance of the lender being a properly chartered and registered financial institution, authorized to do business and to enter into the subject transaction, when in fact the real party in interest was not disclosed to Plaintiff, and neither were the various fees, rebates, refunds, kickbacks, profits and gains of the various parties who participated in this unlawful scheme.

135.     Said real party in interest, i.e. the source of funding for the loan and the person to whom the note was transmitted or eventually "assigned" was neither a financial institution nor an entity nor person authorized, chartered or register to do business in the state, nor to act as banking, lending or other financial institution anywhere else.

136.     As such, this fraudulent scheme (which was in actuality a plan to trick Plaintiff into signing what would become a negotiable security used to sell unregulated securities under fraudulent and changed terms from the original notes) was in fact a sham to use Plaintiff's interest in the real property to collect interest in excess of the legal rate.

137.     The transaction of all the loan of money pursuant to a written agreement, and as such, subject to the rate limitation set forth under state and federal law.  The "formula break" a reference to end these laws was exceeded by a factor in excess of 10 contrary to the applicable law and contrary to the requirements for disclosure under TILA and HOEPA.

138.     Under applicable law Plaintiff is also entitled to demand that a permanent injunction be entered against the Defendants:

A.     Preventing them from taking any action or making any report in furtherance of collection on this alleged debt which was usurious;

B.     Requiring the records custodian of the county in which the alleged mortgage and other instruments are recorded to remove same from the record;

C.     Allowing the filing of said order in the office of the clerk of the property records where the Subject Property, "loan transaction" and any other documents relating to this

- 26-

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Priore Declaration    Pg 28 of 117
Case 2:10-cv-02153-JAM-KJN    Document 62    Filed 02/16/11    Page 27 of 31

1    transaction are located; and

2             D.    Dissolving any lis pendens or notice of pendency relating to the Defendants'

3    purported claim.

4

5                                **TWELFTH CAUSE OF ACTION**
                                     **Wrongful Foreclosure**
6                             **(As to All Defendants and DOES)**

7    139.    Plaintiff reaffirms and re-alleges the above paragraphs 1 through 138 above as if set forth

8    fully herein below.

9    140.    Plaintiff brings this cause of action against all parties who had an apparent hand in the

10   wrongful acts as set forth and described as to each of them below.  Furthermore, their participation

11   seems to be a joint effort to hold each accountable for the actions of the rest.

12   141.    California Civil Code Section 2924 mandates that a non-judicial trustee's sale "SHALL

13   NOT TAKE PLACE" unless it is done on behalf of the beneficiary of a deed of trust securing a note

14   and certain technical procedures are met.

15   142.    California Civil Code Section 2924(g) allows the obligee on the note required by Section

16   2924 to make a "credit bid" at a foreclosure sale, thereby taking title without actually paying any

17   money whatsoever for the Trustee to convey title to the property.

18   143.    Defendants in this case had a duty to Plaintiff to follow the laws, including the

19   foreclosure laws.

20   144.    Defendants are not the beneficiaries of the mortgage at the time of the scheduled sale.

21   Defendants are acting as a Trustee of a REMIC Loan Pool Trust pursuant to a Pooling and Servicing

22   Agreement (PSA).  The PSA under which Defendants purport to be acting is a public record kept by

23   the Securities and Exchange Commission, whose website EDGAR.com contains the provisions of

24   the PSA.

25   145.    If the truth is that the Note was separated from the Deed of Trust and transferred to the

26   loan pool, then Under Civil Code Section 2936, the Right Title and Interest to the Deed of Trust

27   followed the Note on that date, and any subsequent purported Assignment is a lie, its declaration a

28   fraud, and its true legal effect null notwithstanding recordation.  Any beneficiary was divested of

- 27 -

12-12020-mg   Doc 9547-9   Filed 01/25/16   Entered 01/25/16 16:03:47   Exhibit H to
Priore Declaration   Pg 29 of 117
Case 2:10-cv-02153-JAM-KJN   Document 62   Filed 02/16/11   Page 28 of 31

1 | interest upon the transfer of the Note under California Law and lacked power to assign any interest.

2 | Thus any attempt to foreclose on the Subject Property was null and void under California Law and

3 | should be prevented from occurring.

4 | 146.    Due to Defendants' actions, Plaintiff has been damaged, both financially and is being

5 | deprived of her residence, which is a unique asset to him.  Plaintiff demands damages for these

6 | harms and a permanent injunction against Defendants, to prevent her from being evicted from her

7 | home.

8 | 147.    Plaintiff first learned of the actions of Defendants, including their failure to disclose and

9 | the fraud committed upon her in November 2009.  Any applicable statute of limitations should run

10 | from this date.

11 | **THIRTEENTH CAUSE OF ACTION**

12 | **Breach of Trust Instrument**
**As to All Defendants and DOES)**

13 |

14 | 148.    Plaintiff reaffirms and re-alleges the above paragraphs 1 through 147 above as if set

15 | forth fully herein below.

16 | 149.    The Deed of Trust is the document which allows a non-judicial foreclosure to

17 | proceed and gives Power of Sale to the duly appointed Trustee.  Per the Deed of Trust, only the

18 | Lender can invoke the foreclosure (See, Deed of Trust, **Exhibit "B",** paragraph 22).  Per Deed of

19 | Trust paragraph 24, the Lender may appoint a trustee.  The Substitution of Trustee in this case is

20 | void, due to fraud, and was not executed in compliance with California Civil Code§2934(a).  The

21 | Substitution of Trustee was invalid also because it was not executed by the Lender, per requirement

22 | of the Deed of Trust.  The duly appointed Trustee under the Deed of Trust as of the recording of the

23 | Notice of Default on April 27, 2010 was CALIFORNIA LAND.  ETS was never effectively

24 | substituted as trustee.  (See, Substitution of Trustee, **Exhibit "E").**

25 | 150.    A non-judicial foreclosure sale under the power-of-sale in a deed of trust or

26 | mortgage, on the other hand, must be conducted in strict compliance with its provisions and

27 | applicable statutory law. A trustee's powers and rights are limited to those set forth in the deed of
trust and laws applicable thereto.

28 |

151.     The notice of acceleration and notice to cure given to borrower pursuant to
Section 22 and the notice of acceleration given to borrower pursuant to Section 18 shall be deemed
to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

152.     When there is an agreement between the Beneficiary and Trustor, such as the
Condition Precedent expressed in Paragraph 20 of the Deed of Trust, a Foreclosure cannot take
place before the condition is satisfied.  If the Beneficiary fails to carry out its obligation, a
subsequent foreclosure is invalid.  Defendants have not complied with any expressed provisions of
the Deed of Trust, have speciously trespassed upon the Deed of Trust and Plaintiff's property, and
the foreclosure and impending sale must be rendered void and rescinded under California Civil Code
§ 3513. Any one may waive the advantage of a law intended solely for her benefit. But a law
established for a public reason cannot be contravened by a private agreement. California Civil Code
§ 3514. One must so use her own rights as not to infringe upon the rights of another. All the acts of
Defendants as described in this Complaint are a breach of the security instrument, the Deed of Trust.

153.     Plaintiff first learned of the actions of Defendants, including their failure to disclose
and the fraud committed upon her in November 2009.  Any applicable statute of limitations should
run from this date.

**WHEREFORE**, Plaintiff prays this court to enter judgment against Defendants and each of
them, as follows:

1.     For an order compelling said Defendants, and each of them, to transfer or release
legal title and any alleged encumbrances thereon, and possession of the subject property to the
Plaintiff herein;

2.     For a declaration and determination that Plaintiff is the rightful holder of title to the
Subject Property and that Defendants herein, and each of them, be declared to have no estate, right,
title or interest in said property;

3.     For a judgment forever enjoining said Defendants, and each of them, from claiming
any estate, right, title or interest in the subject property;

4.     For a declaration that the foreclosure which was instituted be deemed and declared
illegal and void, and that further proceedings in connection with the foreclosure be enjoined;

5.     For attorney's fees according to statutes;

- 29-

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Priore Declaration    Pg 31 of 117
Case 2:10-cv-02153-JAM-KJN    Document 62    Filed 02/16/11    Page 30 of 31

6.    For actual, compensatory and punitive damages;

7.    For costs of the suit herein incurred;

8.    For such other further relief as the court may deem just and proper.

Dated: February 16, 2011.              Respectfully submitted,

                                       LAW OFFICES OF HOLLY S. BURGESS

                                       By:___/s/  **Holly S. Burgess**_____/
                                           HOLLY S. BURGESS
                                           Attorney for Plaintiff, SHELLEY von BRINCKEN

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Priore Declaration    Pg 32 of 117
Case 2:10-cv-02153-JAM-KJN    Document 62    Filed 02/16/11    Page 31 of 31

1

**VERIFICATION**

2

3       I, SHELLEY von BRINCKEN, declare as follows:

4       I have read the foregoing Second Amended Complaint: for 1)Violation of Homeowners

5   Equity Protection Act; 2)Violations of Real Estate Settlement Procedures Act; 3)Violations of Truth

6   in Lending Act; 4)Violations of Fair Credit Reporting Act; 5)Fraudulent Misrepresentation; 6)

7   Breach of Fiduciary Duties; 7)Unjust Enrichment; 8)Civil Conspiracy; 9)Civil RICO Violations; 10)

8   Quiet Title; 11)Usury and Fraud; 12)Wrongful Foreclosure; 13)Breach of Security Instrument.

9       Except for matters stated on information and belief, the facts stated therein are true on my

10  own knowledge, and as to those matters stated on information and belief, I believe them to be true.

11      I declare under penalty of perjury under the laws of the United States that the foregoing is

12  true and correct and that this verification was executed this ___16___ day of ___Feb___, 2011, at

13  Placer County, California.

14

15                                  SHELLEY von BRINCKEN

16

17

18

19

20

21

22

23

24

25

26

27

28

- 31 -

12-12020-mg   Doc 9547-9   Filed 01/25/16   Entered 01/25/16 16:03:47   Exhibit H to
Prior Declaration   Pg 33 of 117
Case 2:10-cv-02153-JAM-KJN   Document 62-1   Filed 02/16/11   Page 1 of 85

**85**

1

2   Holly S. Burgess (SBN 104757)
    LAW OFFICES OF HOLLY S. BURGESS
3   680 Auburn Folsom Road, Suite 109
    Auburn, CA 95603
4   Telephone:  (530) 889-8900
    Facsimile:  (530) 889-8988
5   Direct Phone:  (530) 392-4641
    *hollyburgess@lohsb.com*
6

7   Attorney for Plaintiff
    SHELLEY von BRINCKEN

8                      THE UNITED STATES DISTRICT COURT

9          THE EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION

10  SHELLEY von BRINCKEN,                  ) **CASE NO: 2:10-CV-02153-JAM-KJN**
                                           )
11                     Plaintiff,          ) **EXHIBITS TO SECOND AMENDED**
                                           ) **COMPLAINT**
12        vs.                              )
                                           )
13  MORTGAGECLOSE.COM, INC.,               )
     EXECUTIVE TRUSTEE SERVICES, dba ETS   )
14  SERVICES, LLC, GMAC MORTGAGE, INC.,    )
    and DOES 1-20, inclusive,              )
15                                         )
                       Defendants.         )
16                                         )

17                           EXHIBIT INDEX:

18       Exhibit A:    Legal Description

19       Exhibit B:    Note dated January 14, 2009 and Deed of Trust recorded January 23, 2009

20       Exhibit C:    Notice of Assignment, Sale or Transfer of Servicing Rights dated March 1,

21                     2009

22       Exhibit D:    Borrower's Qualified Written Request dated March 17, 2010

23       Exhibit E:    GMAC's First Response to Borrower's Qualified Written Request dated

24                     March 30, 2010

25       Exhibit F:    Borrower's Notice of Exercising Right to Cancel "Rescission Letter" dated

26                     April 16, 2010

27       Exhibit G:    Substitution of Trustee recorded April 28, 2010

28       Exhibit H:    Notice of Default recorded April 28, 2010

                                   - 1 -

| | | |
|---|---|---|
| 1 | Exhibit I: | GMAC's Second Response to Borrower's Qualified Written Request dated |
| 2 | | May 4, 2010 |
| 3 | Exhibit J: | Debt Validation Notice dated May 5, 2010 |
| 4 | Exhibit K: | Notice of Trustee's Sale recorded August 6, 2010 |
| 5 | Exhibit L: | Lis Pendens filed August 11, 2010 |
| 6 | Exhibit M: | Trustee's Deed Upon Sale recorded September 10, 2010 |
| 7 | Exhibit N: | Letter (with copy of Note) to advise borrower that Fannie Mae is current |
| 8 | | owner of borrower's loan and GMAC is the loan servicer |

9    Attached hereto and incorporated herein by this reference are Exhibits A through N of

10  Plaintiff's Second Amended Complaint.

11

12  Dated: February 16, 2011          LAW OFFICES OF HOLLY S. BURGESS

13

14                                    By: **/s/ Holly S. Burgess**          .
                                          HOLLY S. BURGESS
15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -
**EXHIBITS TO SECOND AMENDED COMPLAINT**

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Case 2:10-cv-02153-JAM-KJN    Document 62-1    Filed 02/16/11    Page 3 of 85
Priore Declaration    Pg 35 of 117

*Shelley Von Brincken vs. Mortgageclose.com, Inc., et al.*
**USDC Eastern District of California Case No. 2:10-CV-02153**

**SECOND AMENDED COMPLAINT**

**EXHIBIT "A"**

12-12020-mg   Doc 9547-9   Filed 01/25/16   Entered 01/25/16 16:03:47   Exhibit H to
20100021690   Page 2153   Priore Declaration   Pg 36 of 117
Case 2:10-cv-02153-JAM-KJN   Document 62-1   Filed 02/16/11   Page 4 of 85

EXHIBIT "A"

GM-242742-C

**THE LAND DESCRIBED HEREIN IS SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF NEVADA, UNINCORPORATED AREA, AND IS DESCRIBED AS FOLLOWS:**

**LOT 1, AS SHOWN UPON THE FINAL MAP NO. 00-002, "THE WOLF", AS FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF NEVADA ON MAY 6, 2008, IN BOOK 8 OF SUBDIVISION MAPS, AT PAGE 178.**

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Case 2:10-cv-02153-JAM-KJN   Priore Declaration   Pg 37 of 117   Filed 02/16/11   Page 5 of 85
Document 62-1

*Shelley Von Brincken vs. Mortgageclose.com, Inc., et al.*
**USDC Eastern District of California Case No. 2:10-CV-02153**

**SECOND AMENDED COMPLAINT**

**EXHIBIT "B"**

12-12020-mg   Doc 9547-9   Filed 01/25/16   Entered 01/25/16 16:03:47   Exhibit H to
Priore Declaration   Pg 38 of 117
Case 2:10-cv-02153-JAM-KJN   Document 62-1   Filed 02/16/11   Page 6 of 85

MIN: �_▇▇▇▇▇▇_   **NOTE**   Loan Number: ▇219

JANUARY 14, 2009          ORANGE              CALIFORNIA
    [Date]                  [City]                [State]

14738 WOLF ROAD, GRASS VALLEY, CALIFORNIA 95949
                    [Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 220,000.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is MORTGAGECLOSE.COM, INC., A NEVADA CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      5.625 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) **Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on MARCH 1 2009 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on FEBRUARY 1, 2039 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 1855 WEST KATELLA AVENUE, SUITE 200, ORANGE, CALIFORNIA 92867

or at a different place if required by the Note Holder.

(B) **Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 1,266.44

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit;

WE HEREBY CERTIFY THIS TO BE A
TRUE AND CORRECT COPY OF
THE ORIGINAL DOCUMENT

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01

Page 1 of 3

X _____

and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of          15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01                     Page 2 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)          _____(Seal)
SHELLEY VON BRINCKEN   -Borrower                                        -Borrower


_____(Seal)          _____(Seal)
                       -Borrower                                        -Borrower


_____(Seal)          _____(Seal)
                       -Borrower                                        -Borrower


*[Sign Original Only]*

MULTISTATE FIXED RATE NOTE–Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01                    Page 3 of 3

DocMagic *eFerms* 800-649-1362
www.docmagic.com

12-12020-mg   Doc 9547-9   Filed 01/25/16   Entered 01/25/16 16:03:47   Exhibit H to
Priore Declaration   Pg 41 of 117
Case 2:10-cv-02153-JA____ ___ Document 62-1   Filed 02/16/1__ ___ __ ___ of 85

Von Brincken #_____

18

RECORDING REQUESTED BY:

CALIFORNIA LAND TITLE COMPANY OF
NEVADA COUNTY

AND WHEN RECORDED MAIL TO:

MORTGAGECLOSE.COM, INC.
1855 WEST KATELLA AVE., SUITE 200
ORANGE, CA  92867

ORDER NO.: 105038-TO

Nevada County Recorder
Gregory J. Diaz
DOC- 2009-0001231-00
Acct 1-California Land Title Co.
Friday, JAN 23, 2009 08:00:00
REC    $22.00:SBS    $17.00:SSR    $1.00
MIC    $1.00:AUT    $18.00:
Ttl Pd    $59.00          Nbr-0000576689
                          ENM/EM/1-18

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# DEED OF TRUST

**DOCUMENT TITLE**

SEPARATE PAGE - PURSUANT TO GOVERNMENT CODE 27361.6

titlepg

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Priore Declaration    Pg 42 of 117
Case 2:10-cv-02153-JAM-KJN    Document 62-1    Filed 02/16/11    Page 10 of 85

Recording Requested By:
MORTGAGECLOSE.COM, INC.

And After Recording Return To:
MORTGAGECLOSE.COM, INC.
1855 WEST KATELLA AVENUE, SUITE 200
ORANGE, CALIFORNIA 92867
Loan Number: ███0219

RECORDING REQUESTED
BY: OLD REPUBLIC TITLE
21230066 84-JE

———————————— [Space Above This Line For Recording Data] ————————————

# DEED OF TRUST

**MIN:** ████████████

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16

**(A) "Security Instrument"** means this document, which is dated    JANUARY 14, 2009    , together with all Riders to this document.
**(B) "Borrower"** is   SHELLEY VON BRINCKEN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY




Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is MORTGAGECLOSE.COM, INC.

Lender is a   NEVADA CORPORATION                                        organized
and existing under the laws of   NEVADA
Lender's address is   1855 WEST KATELLA AVENUE, SUITE 200, ORANGE, CALIFORNIA 92867

**(D) "Trustee"** is   CALIFORNIA LAND TITLE COMPANY OF NV COUNTY
464 BRUNSWICK RD, GRASS VALLEY, CALIFORNIA 95945

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated   JANUARY 14, 2009
The Note states that Borrower owes Lender   TWO HUNDRED TWENTY THOUSAND AND 00/100
Dollars (U.S. $   220,000.00      ) plus interest.

———————————————————————————————————————————————

CALIFORNIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          *DocMagic eForms* 800-649-1362
Form 3005 01/01                                    Page 1 of 14                              *www.docmagic.com*

12-12020-mg   Doc 9547-9   Filed 01/25/16   Entered 01/25/16 16:03:47   Exhibit H to
Priore Declaration   Pg 43 of 117
Case 2:10-cv-02153-JAM-KJN   Document 62-1   Filed 02/16/11   Page 11 of 85

Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
FEBRUARY 1, 2039       .

(G)  "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H)  "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest
(I)  "Riders" means all Riders to this Security Instrument that are executed by Borrower  The following Riders are
to be executed by Borrower [check box as applicable]

| | | | |
|---|---|---|---|
| ☐ | Adjustable Rate Rider | ☒ | Planned Unit Development Rider |
| ☐ | Balloon Rider | ☐ | Biweekly Payment Rider |
| ☐ | 1-4 Family Rider | ☐ | Second Home Rider |
| ☐ | Condominium Rider | ☐ | Other(s) [specify] |

(J)  "Applicable Law" means all controlling applicable federal, state and local statutes, regulations  ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.
(K)  "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association or similar
organization.
(L)  "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft,
or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or
magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account   Such term
includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.
(M)  "Escrow Items" means those items that are described in Section 3.
(N)  "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any
third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or
destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in
lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the  Property.
(O)  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P)  "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note,
plus (ii) any amounts under Section 3 of this Security Instrument.
(Q)  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C  §2601 et seq.) and its implementing
regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or
successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument,
"RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan"
even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(R)  "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that
party has assumed Borrower's obligations under the Note and/or this Security Instrument

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and
assigns) and the successors and assigns of MERS.  This Security Instrument secures to Lender  (i) the repayment of
the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Priore Declaration    Pg 44 of 117
Case 2:10-cv-02153-JAM-KJN    Document 62-1    Filed 02/16/11    Page 12 of 85

covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                       of                    NEVADA
[Type of Recording Jurisdiction]                  [Name of Recording Jurisdiction]
LOT 1, AS SHOWN ON FINAL MAP NO.00-C02 OF THE WOLF, FILED IN THE
OFFICE OF THE COUNTY RECORDER, COUNTY OF NEVADA, STATE OF
CALIFORNIA, ON MAY 6, 2009, IN BOOK 6 OF SUBDIVISIONS, AT PAGE
178.
A.P.N.: 55-00-34

which currently has the address of  14738 WOLF ROAD
                                                        [Street]

          GRASS VALLEY                        , California    95949    ("Property Address");
             [City]                                          [Zip Code]


TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.    Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Prior Declaration    Pg 45 of 117
Case 2:10-cv-02153-JAM-KJN    Document 62-1    Filed 02/16/11    Page 13 of 85

obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2.  Application of Payments or Proceeds.**  Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:  (a) interest due under the Note; (b) principal due under the Note, (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3.  Funds for Escrow Items.**  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5, and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender

12-12020-mg   Doc 9547-9   Filed 01/25/16   Entered 01/25/16 16:03:47   Exhibit H to
Prior Declaration   Pg 46 of 117
Case 2:10-cv-02153-JAM-KJN   Document 62-1   Filed 02/16/11   Page 14 of 85

shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   **Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.   To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.   If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   **Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan, either:  (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Prior Declaration    Pg 47 of 117
Case 2:10-cv-02153-JAM-KJN    Document 62-1    Filed 02/16/11    Page 15 of 85

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

DocMagic eForms 800-649-1352
www.docmagic.com

12-12020-mg   Doc 9547-9   Filed 01/25/16   Entered 01/25/16 16:03:47   Exhibit H to
Prior Declaration   Pg 48 of 117
Case 2:10-cv-02153-JAM-KJN   Document 62-1   Filed 02/16/11   Page 16 of 85

**8.   Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan.  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.  Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so.  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.   Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.  If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect.  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance.  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve.  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law.  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.  Borrower is not a party to the Mortgage Insurance.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                    Page 7 of 14                       DocMagic ℯℱⓇ 800-649-1362
                                                                                     www.docmagic.com

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Prior Declaration    Pg 49 of 117
Case 2:10-cv-02153-JAM-KJN    Document 62-1    Filed 02/16/11    Page 17 of 85

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether

12-12020-mg  Doc 9547-9  Filed 01/25/16  Entered 01/25/16 16:03:47  Exhibit H to
Priore Declaration  Pg 50 of 117
Case 2:10-cv-02153-JAM-KJN  Document 62-1  Filed 02/16/11  Page 18 of 85

or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Prior Declaration    Pg 51 of 117
Case 2:10-cv-02153-JAM-KJN    Document 62-1    Filed 02/16/11    Page 19 of 85

otherwise.  The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender.  Borrower shall promptly notify Lender of Borrower's change of address.  If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure.  There may be only one designated notice address under this Security Instrument at any one time.  Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower.  Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

   **16.  Governing Law; Severability; Rules of Construction.**  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law.  Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract.  In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

   As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

   **17.  Borrower's Copy.**  Borrower shall be given one copy of the Note and of this Security Instrument.

   **18.  Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

   If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

   **19.  Borrower's Right to Reinstate After Acceleration.**  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument.  Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.  However, this right to reinstate shall not apply in the case of acceleration under Section 18.

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Prior Declaration    Pg 52 of 117
Case 2:10-cv-02153-JAM-KJN    Document 62-1    Filed 02/16/11    Page 20 of 85

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action

12-12020-mg   Doc 9547-9   Filed 01/25/16   Entered 01/25/16 16:03:47   Exhibit H to
Priore Declaration   Pg 53 of 117
Case 2:10-cv-02153-JAM-KJN   Document 62-1   Filed 02/16/11   Page 21 of 85

required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Priore Declaration    Pg 54 of 117
Case 2:10-cv-02153-JAM-KJN    Document 62-1    Filed 02/16/11    Page 22 of 85

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to the Borrower at the address set forth above. A copy of any Notice of Default and any Notice of Sale will be sent only to the address contained in this recorded request. If the Borrower's address changes, a new request must be recorded.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
SHELLEY VON BRINCKEN              -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                      -Borrower

Witness:                                         Witness:

_____                 _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          DocMagic €Formm 800-649-1362
Form 3005 01/01                                                Page 13 of 14                    www.docmagic.com

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Case 2:10-cv-02153-JAM-KJN    Prior Declaration    Document 62-1    Filed 02/16/11    Page 23 of 85
Pg 55 of 117

---

[Space Below This Line For Acknowledgment]

State of California      )
                          ) ss.
County of __Placer__      )

On __1-15-09__    before me,__K. Dean   Notary public__

personally appeared __SHELLEY VON BRINCKEN__

---

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true
and correct.

WITNESS my hand and official seal.

K. DEAN
Commission # 1628882
Notary Public - California
Placer County
My Comm. Expires Dec 11, 2009

NOTARY SEAL

__K__
NOTARY SIGNATURE

__K. Dean__
(Typed Name of Notary)

*Shelley Von Brincken vs. Mortgageclose.com, Inc., et al.*
**USDC Eastern District of California Case No. 2:10-CV-02153**

**SECOND AMENDED COMPLAINT**

**EXHIBIT "C"**

Loan Number:  ██████ 0219

# NOTICE OF ASSIGNMENT, SALE OR
# TRANSFER OF SERVICING RIGHTS

You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, is
being assigned, sold or transferred from   MORTGAGECLOSE.COM, INC.
to
effective  03/01/09

The assignment, sale or transfer of the servicing of the mortgage loan does not affect any term or condition of the
mortgage instruments, other than terms directly related to the servicing of your loan.

Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before
the effective date of transfer, or at closing. Your new servicer must also send you this notice no later than 15 days after this
effective date or at closing. In this case, all necessary information is combined in this one notice.

Your present servicer is  MORTGAGECLOSE.COM, INC.
If you have any questions relating to the transfer of servicing from your present servicer call  (714) 453-0220
between 8:30  a.m and 5:00  p.m on the following days: MONDAY - FRIDAY
This is a ☐ toll-free or ☒ collect call number.

Your new servicer will be

The business address for your new servicer is:

The ☐ toll-free or ☐ collect call telephone number of your new servicer is
If you have any questions relating to the transfer of servicing to your new servicer call
at                                                                                                 between            a.m.
and            p.m. on the following days:

The date that your present servicer will stop accepting payments from you is   03/01/09
The date that your new servicer will start accepting payments from you is
Send all payments due on or after that date to your new servicer

You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate
Settlement Procedures Act (RESPA) (12 U.S.C. 2605).

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your
old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 U.S.C. 2605) gives you certain consumer rights. If you send a "qualified written request"
to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment
within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice
on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and
your reasons for the request. If you want to send a "qualified written request" regarding the servicing of your loan, it must
be sent to this address:

Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections
to your account, and must provide you with a written clarification regarding any dispute. During this 60-Business Day period,
your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such
period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds
exist under the mortgage documents.

A Business Day is a day on which the offices of the business entity are open to the public for carrying on substantially
all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances
where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your
rights have been violated.

## BORROWER ACKNOWLEDGMENT

I/We have read this disclosure form, and understand its contents, as evidenced by my/our loan signature(s) below.

| Borrower   SHELLEY VON BRINCKEN | Date | Borrower | Date |
|---|---|---|---|
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |

NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF SERVICING RIGHTS
Reg. X 24 CFR 3500.21 (d)
08/23/07

DocMagic ⬤Forms 800-649-1362
www.docmagic.com

12-12020-mg   Doc 9547-9   Filed 01/25/16   Entered 01/25/16 16:03:47   Exhibit H to
Case 2:10-cv-02153-JAM-KJN   Prior Declaration   Pg 58 of 117
Document 62-1   Filed 02/16/11   Page 26 of 85

MORTGAGECLOSE.COM, INC.
1855 WEST KATELLA AVENUE, SUITE 200
ORANGE, CALIFORNIA 92867                          Loan Number: ███0219

# LOAN SERVICING DISCLOSURE STATEMENT

NOTICE TO FIRST LIEN MORTGAGE LOAN APPLICANTS: THE RIGHT TO COLLECT YOUR MORTGAGE LOAN PAYMENTS MAY BE TRANSFERRED. FEDERAL LAW GIVES YOU CERTAIN RELATED RIGHTS. IF YOUR LOAN IS MADE, SAVE THIS STATEMENT WITH YOUR LOAN DOCUMENTS. SIGN THE ACKNOWLEDGMENT AT THE END OF THIS STATEMENT ONLY IF YOU UNDERSTAND ITS CONTENTS.

Because you are applying for a mortgage loan covered by the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. § 2601 et sec.) you have certain rights under that Federal Law.

This statement tells you about those rights. It also tells you what the chances are that the servicing for this loan may be transferred to a different loan servicer. "Servicing" refers to collecting your principal, interest and escrow account payments, if any. If your loan servicer changes, there are certain procedures that must be followed. This statement generally explains those procedures.

## TRANSFER PRACTICES AND REQUIREMENTS

If the servicing of your loan is assigned, sold, or transferred to a new servicer, you must be given written notice of that transfer. The present loan servicer must send you notice in writing of the assignment, sale or transfer of the servicing not less than 15 days before the effective date of the transfer. The new loan servicer must also send you notice within 15 days after the effective date of the transfer. The present servicer and the new servicer may combine this information in one notice, so long as the notice is sent to you 15 days before the effective date of transfer. The 15 day period is not applicable if a notice of prospective transfer is provided to you at settlement. The law allows a delay in the time (not more than 30 days after a transfer) for servicers to notify you upon the occurrence of certain business emergencies.

Notices must contain certain information. They must contain the effective date of the transfer of the servicing of your loan to the new servicer, and the name, address, and toll-free or collect-call telephone number of the new servicer, and toll-free or collect-call telephone numbers of a person or department for both your present servicer and your new servicer to answer your questions about the transfer of servicing. During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

## COMPLAINT RESOLUTION

Section 6 of RESPA (12 U.S.C. § 2605) gives you certain consumer rights, **whether or not your loan servicing is transferred.** If you send a "qualified written request" to your servicer, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and the information regarding your request. Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, or must provide you with a written clarification regarding any dispute. During this 60-Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.

A Business Day is any day in which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

## DAMAGES AND COSTS

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section.

## SERVICING TRANSFER ESTIMATED BY LENDER

1. The following is the best estimate of what will happen to the servicing of your mortgage loan:

   _____ We are able to service your loan and presently intend to do so

   __XX__ We do not service mortgage loans and we presently intend to assign, sell, or transfer the servicing of your mortgage loan. You will be informed about your servicer.

2. For all the first lien mortgage loans that we make in the 12-month period after your mortgage loan is funded, we estimate that the percentage of mortgage loans for which we will transfer servicing is between: 76 - 100%
This is only our best estimate and it is not binding. Business conditions or other circumstances may affect our future transferring decisions.

3. This is our record of transferring the servicing of the mortgage loans we have made in the past:

| YEAR | PERCENTAGE OF LOANS TRANSFERRED |
|------|----------------------------------|
| 2006 | 100.00% |
| 2007 | 100.00% |
| 2008 | 100.00% |

This information ☒ does  ☐ does not include assignments, sales or transfers to affiliates or subsidiaries.

MORTGAGECLOSE.COM, INC.


_____          JANUARY 14, 2009
Lender's Authorized Representative        Date

12-12020-mg   Doc 9547-9   Filed 01/25/16   Entered 01/25/16 16:03:47   Exhibit H to
Priore Declaration   Pg 59 of 117
Case 2:10-cv-02153-JAM-KJN   Document 62-1   Filed 02/16/11   Page 27 of 85

## ACKNOWLEDGMENT OF MORTGAGE APPLICANT

I/We have read this disclosure form  and understand its contents, as evidenced by my/our signature(s) below.  I/We understand
that this acknowledgment is a required part of the mortgage loan application

_____     _____
Applicant's Signature                    Date     Applicant's Signature                    Date
SHELLEY  VON  BRINCKEN


_____     _____
Applicant's Signature                    Date     Applicant's Signature                    Date


_____     _____
Applicant's Signature                    Date     Applicant's Signature                    Date

*Shelley Von Brincken vs. Mortgageclose.com, Inc., et al.*
**USDC Eastern District of California Case No. 2:10-CV-02153**

**SECOND AMENDED COMPLAINT**

**EXHIBIT "D"**

# RESPA QUALIFIED WRITTEN REQUEST, COMPLAINT, DISPUTE OF DEBT & VALIDATION OF DEBT LETTER, TILA REQUEST

This letter is a "Qualified Written Request" in compliance with and under the Real Estate Settlement Procedures act 12 U.S.C Section 2605(e) and Regulation X at 24 C.F.R. 3500, and the Gramm Leach Blilev Act.

**To:** GMAC Mortgage LLC
3451 Hammond Ave.
Waterloo, Iowa 50704-0780

**On behalf of:** SHELLEY VON BRINCKEN
**Property location:** 14738 Wolf Rd., Grass Valley, Ca 95949
**Account Number:** ███7759

**To whom it may concern,**

I am writing to you to complain about the accounting and servicing of this mortgage and of my need for understanding and clarification of various sale, transfer, funding source, transactions, legal and beneficial ownership, actions, payments, analyses, debits, credits, reversals, and records related to the servicing of said loan from its inception to the present date.

I am disputing the validity of the current debt you I owe, under the FDCPA. To independently validate this debt, I need to conduct a complete exam, audit, review and accounting of said mortgage loan from its inception until the present date. Upon receipt of this letter, please refrain from reporting any negative credit information to any credit reporting agencies until you respond to my "requests."

I hereby demand absolute 1st hand evidence from you of the original uncertified or certified security regarding account number ███759. In the event you do not supply me with the very security it will be a positive confirmation on your part that you never really created and owned one. I also hereby demand that a chain of transfer from you to wherever the security is now, be promptly sent to me as well. Absent the actual evidence of the security I have no choice but to dispute the validity of your lawful ownership, funding, entitlement right, and the current debt you allege the client owes. By debt I am referring to the principal balance you claim said client owes; the calculated monthly payment, calculated escrow payment, and any fees claimed to be owed by you or any trust or entity you may service or subservice for.

I also request that you conduct your own investigation and audit of the account since its inception to "validate" the debt you claim said client owes you, is accurate to the penny. Please do not rely on previous servicers or originators assurances or indemnity agreements and refuse to conduct a full audit and investigation of this account.

I understand that potential abuses by you or previous servicers could have deceptively, wrongfully, unlawfully, and/or illegally brought forth some or all of the below listed:

**Increased the amounts of monthly payments;**
**Increased the principal balance allegedly owed;**
**Increased escrow payments;**
**Increased the amounts applied and attributed toward interest on this account;**
**Decreased the proper amounts applied and attributed toward principal on this account; and/or**
**Assessed, charged, and/or collected fees, expenses and misc. charges said client is NOT legally obligated to pay under this mortgage, note, and/or Deed of Trust.**

I want to insure that I have not been the victim of such predatory practices. To insure this, said client has authorized a thorough review, examination, accounting and audit of this mortgage by predatory lending experts. This exam and audit will review said mortgage loan file from the date of its initial contact, application and the origination of said loan to the present date written above.

Again this is a "Qualified Written Request" under the Real Estate Settlement Procedures Act, codified as Title 12 section 2605 (e)(1)(B) and reg. X section 3500.21(f)2 of the United States Code. As well as a request under Truth In Lending Act [TILA] 15 U.S.C. section 1601, et seq. RESPA provides substantial penalties and fines for non-compliance or answers to my questions provided in this letter within sixty [60] days of its receipt.

In order to conduct this examination and audit, I need to have full and immediate disclosure including copies of all pertinent information regarding said loan. The documents requested and answers to questions are needed by my counsel and the predatory lending experts' retained to insure that this loan:

- Was originated in lawful compliance with all federal and state laws, regulations including, but not limited to Title 62 of the Revised Statutes, RESPA, TILA, Fair Debt Collection act, HOEPA and other laws;

- That any sale or transfer of this account or monetary instrument, was conducted in accordance with proper laws and was a lawful sale with complete disclosure to all parties with an interest;

- That the claimed holder in due course of the monetary instrument/Deed of Trust/asset is holding such note in compliance with statutes, State and Federal laws and is entitled to the benefits of the clients payments;

- That all appropriate, good faith, and reasonable disclosures of transfers, sales, Power of Attorney, monetary instrument ownership, entitlements, full disclosure of actual funding source, terms, costs, commissions, rebates, kickbacks, fees etc. were and still are properly disclosed to said client;

- That each servicer and sub-servicer of this mortgage has serviced said mortgage in accordance with the terms of said mortgage, promissory note and/or deed of trust;

- That each servicer and sub-servicer of this mortgage has serviced this mortgage in compliance with local, state and federal statutes, laws and regulations;

- That this mortgage account has properly been credited, debited, adjusted, amortized and charged correctly;

- That interest and principal have been properly calculated and applied to this loan;

- That the principal balance has been properly calculated, amortized and accounted for;

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Priore Declaration    Pg 63 of 117
Case 2:10-cv-02153-JAM-KJN    Document 62-1    Filed 02/16/11    Page 31 of 85

- That no charges. fees or expenses. not obligated by client in any agreement. have been charged or assessed to or collected on this account;

In order to validate alleged debt and audit this account. I need copies of all pertinent documents to be provided and answers. certified. in writing. to various servicing questions to be sent to:

**Shelley von Brincken**
**14738 Wolf Road**
**Grass Valley, CA. [95949]**
**Phone: (530)-268-8777**

For each record kept on computer or in any other electronic file or format. please provide a paper copy of "all" information in each field or record in each computer system. program or database used by you that contains any information on this account or said client.

As such, please send to me. at the address above. copies of the documents requested below as soon as possible. Please provide me copies of:

1. All data. information. notations. text. figures and information contained in your mortgage servicing and accounting computer systems including. but not limited to GMAC's CPI system. any system by GMAC or any other similar mortgage servicing software used by you. any servicers. or sub-servicer of this mortgage account from the inception of said loan to the current date.

2. Any and all "Pool Agreement(s)" including this account

3. All descriptions and legends of all Codes used in your mortgage servicing and accounting system so that the examiners, auditors and experts retained to audit and review said mortgage account may properly conduct their work.

4. All purchase and sale of mortgage agreements. sale or transfer of servicing rights or other similar agreement related to any assignment. purchase or sale of this mortgage loan or servicing rights by you, any broker, affiliate company. parent company. servicers, bank, government sponsored enterprise. sub-servicers, mortgage broker, mortgage banker or any holder of any right related to this mortgage, promissory note and deed of trust from the inception of said loan to the present date.

5. All prospectus' related to the sale or transfer of this note. deed of trust. mortgage and servicing rights or other similar agreement related to any assignment. purchase or sale of this mortgage loan or servicing rights by you, any broker, affiliate company, parent company. servicers, bank. government sponsored enterprise. sub-servicers. mortgage broker, mortgage banker or any holder of any right related to this mortgage, promissory note and deed of trust from the inception of said loan to the present date.

6. All assignments. transfers. alonges. or other document evidencing a transfer. sale or assignment of this mortgage, deed of trust, promissory note or other document that secures payment by said client to their obligation in this account from the inception of said loan to the present date.

7. All deeds in lieu, modifications to this mortgage, promissory note or deed of trust from the inception of said loan to the present date.

Page 3 of 13

8. The front and back of each and every canceled check, money order, draft, debit or credit notice issued to any servicer of this account for payment of any monthly payment, other payment, escrow charge, fee or expense on this account.

9. All escrow analyses conducted on this account from the inception of said loan until up to present date:

10. The front and back of each and every canceled check, draft or debit notice issued for payment of closing costs, fees and expenses listed on clients disclosure statement including, but not limited to, appraisal fees, inspection fees, title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney fees, points, etc.

11. Front and back copies of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by said client or by others on this account.

12. All letters, statements and documents sent to client by your company:

13. All letters, statements and documents sent to client by agents, attorneys or representatives of your company:

14. All letters, statements and documents sent to client by previous servicers, sub-servicers or others in your loan file or in your control or possession or in the control or possession of any affiliate, parent company, agent, sub-servicer, servicer, attorney or other representative of your company.

15. All letters, statements and documents contained in said loan file or imaged by you, any servicer or sub-servicers of this mortgage from the inception of said loan to present date.

16. All electronic transfers, assignments, sales of this note, mortgage, deed of trust or other security instrument.

17. All copies of property inspection reports, appraisals, BPOs and reports done on said property.

18. All invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this mortgage account from the inception of said loan to the present date.

19. All checks used to pay invoices for each charged such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this mortgage account from the inception of said loan to the present date.

20. All agreements, contracts and understandings with vendors that have been paid for any charge on this account from the inception of said loan to the present date.

21. All loan servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, loan histories, accounting records, ledgers, and documents that relate to the accounting of this loan from the inception of said loan until present date?

22. All loan servicing "transaction" records, ledgers, registers and similar items detailing how this loan has been serviced from the from the inception of said loan until present date?

Further, in order to conduct the audit and review of this account, and to determine all proper amounts due, we need the following answers to questions concerning the servicing and accounting of this mortgage account from

its inception to the present date.  Accordingly, please provide me, <u>certified,</u> in writing, the answers to the questions listed below.

## LOAN ACCOUNTING & SERVICING SYSTEMS

1) Please identify for me each loan accounting and servicing system used by you and any sub-servicer or previous servicer from the inception of said loan to the present date?

2) For each loan accounting and servicing system identified by you and any sub-servicer or previous servicer from the inception of said loan to the present date, please provide the name and address of the company or party that designed and sold the system?

3) For each loan accounting and servicing system used by you and any sub-servicer or previous servicer from the inception of said loan to the present date, please provide the complete transaction code list for each system.

## DEBITS & CREDITS

1) In a spreadsheet form or in letter form in a columnar format, please detail for me each and every credit on this account and the date such credit was posted to my account as well as the date any credit was received.

2) In a spreadsheet form or in letter form in a columnar format, please detail for me each and every debit on this account and the date such credit was posted to this account as well as the date any debit was received.

3) For each debit or credit listed, please provide the definition for each corresponding transaction code you utilize?

4) For each transaction code, please provide me with the master transaction code list used by you or previous servicers.

## MORTGAGE & ASSIGNMENTS

1) Has each sale, transfer or assignment of this mortgage or promissory note or any other instrument executed by said client to secure alleged debt been recorded in the county property records in the county and state in which this property is located from the inception of said loan to the present date? Yes or No?

2) If no, why?

3) Have any sales, transfers or assignments of this mortgage or promissory note or any other instrument executed to secure alleged debt been recorded in any electronic fashion such as MERS or other internal or external system from the inception of said loan to the present date? Yes or No?

4) If yes, please detail for us the names of each seller, purchaser, assignor, assignee or any holder in due course to any right or obligation of any note, mortgage, deed, or security instrument executed securing the obligation on this account that was not recorded in the county records where this property is located.

12-12020-mg  Doc 9547-9  Filed 01/25/16  Entered 01/25/16 16:03:47  Exhibit H to
Case 2:10-cv-02153-JAM-KJN  Document 62-1  Filed 02/16/11  Page 34 of 85
Prior Declaration  Pg 66 of 117

ATTORNEY FEES

1) For purposes of the questions below dealing with attorney fees, please consider the terms "attorney fees" and "legal fees" to be one in the same.

2) Have attorney fees ever been assessed to this account from the inception of said loan to the present date?

3) If yes, please detail each separate assessment of attorney fees to this account from the inception of said loan to the present date and the date of such assessment to this account?

4) Have attorney fees ever been charged to this account from the inception of said loan to the present date?

5) If yes, please detail each separate charge of attorney fees to this account from the inception of said loan to the present date and the date of such charge to this account?

6) Have attorney fees ever been collected from this account from the inception of said loan to the present date?

7) If yes, please detail each separate collection of attorney fees from this account from the inception of said loan to the present date and the date of such collection from this account?

8) Please provide for me the name and address of each attorney or law firm that has been paid any fees or expenses related to this account from the inception of said loan to the present date?

9) Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement the client signed, or authorized the assessment or collection of attorney fees?

10) Please detail and list for me in writing each separate attorney fee assessed to this account and for which corresponding payment period or month such late fee was assessed from the inception of said loan to present date.

11) Please detail and list for me in writing each separate attorney fee collected from this account and for which corresponding payment period or month such late fee was collected from the inception of said loan to present date.

12) Please detail and list for me in writing any adjustments in attorney fees assessed and on what date such adjustment was made and the reasons for such adjustment.

13) Please detail and list for me in writing any adjustments in attorney fees collected and on what date such adjustment were made and the reasons for such adjustment.

14) Has interest been charged on any attorney fee assessed or charged to this account? Yes or No?

15) Is interest allowed to be assessed or charged on attorney fees charged or assessed to this account? Yes or No?

16) How much in total attorney fees have been assessed to this account from the inception of said loan until present date? $_____

17) How much in total attorney fees have been collected on this account from the inception of said loan until present date? $_____

Page **6** of **13**

12-12020-mg   Doc 9547-9   Filed 01/25/16   Entered 01/25/16 16:03:47   Exhibit H to
Case 2:10-cv-02153-JAM-KJN   Document 62-1   Filed 02/16/11   Page 35 of 85
Prior Declaration   Pg 67 of 117

## SUSPENSE UNAPPLIED ACCOUNTS

1) For purposes of this section, please treat the term "suspense account" and "unapplied account" as one in the same.

2) Has there been any suspense or unapplied account transactions on this account from the inception of said loan until present date?

3) If yes, why? If no, please skip the questions in this section dealing with suspense and unapplied accounts.

4) In a spreadsheet or in letterform in a columnar format, please detail for me each and every transaction, both debits and credits that has occurred on this account from the inception of said loan until present date?

## LATE FEES

1) For purposes of my questions below dealing with late fees, please consider the terms "late fees" and "late charges" to be one in the same.

2) Have you reported the collection of late fees on this account as interest in any statement to client or to the IRS? Yes or No?

3) Has any previous servicer or sub-servicer of this mortgage reported the collection of late fees on this account as interest in any statement to client or to the IRS? Yes or No?

4) Do you consider the payment of late fees as liquidated damages to you for not receiving clients' payment on time? Yes or No?

5) Are late fees considered interest? Yes or No?

6) Please detail for me in writing what expenses and damages you incurred for any payment client may have made that was late.

7) Were any of these expenses or damages charged or assessed to this account in any other way? Yes or No?

8) If yes, please describe what expenses or charges were charged or assessed to this account?

9) Please describe for me in writing what expenses you or others undertook due to any payment client made which was late?

10) Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement client signed or authorized the assessment or collection of late fees?

11) Please detail and list for me in writing each separate late fee assessed to this account and for which corresponding payment period or month such late fee was assessed from the inception of said loan to present date.

12) Please detail and list for me in writing each separate late fee collected from this account and for which corresponding payment period or month such late fee was collected from the inception of said loan to present date.

13) Please detail and list for me in writing any adjustments in late fees assessed and on what date such adjustment was made and the reasons for such adjustment.

14) Has interest been charged on any late fee assessed or charged to this account? Yes or No?

15) Is interest allowed to be assessed or charged on late fees charged or assessed to this account? Yes or No?

16) Have any late charges been assessed to this account? Yes or No?

17) If yes, how much in total late charges have been assessed to this account from the inception of said loan until present date?  $_____

18) Please provide me with the exact months or payment dates you or other previous servicers of this account claim the client has been late with a payment from the inception of said loan to the present date.

19) Have late charges been collected on this account from the inception of said loan until present date? Yes or No?

20) If yes, how much in total late charges have been collected on this account from the inception of said loan until present date?  $_____

## PROPERTY INSPECTIONS

1) For purposes of this section "property inspection" and "inspection fee" refer to any inspection of this property by any source and any related fee or expense charged for such inspection.

2) Have any property inspections been conducted on this property from the inception of said loan until the present date?

3) If your answer is no, you can skip the rest of these questions in this section concerning property inspections?

4) If yes, please tell me the date of each property inspection conducted on this property that is the secured interest for this mortgage, deed or note?

5) Please tell me the price charged for each property inspection?

6) Please tell me the date of each property inspection?

7) Please tell me the name and address of each company and person who conducted each property inspection on this property?

8) Please tell me why property inspections were conducted on this property?

9) Please tell me how property inspections are beneficial to the client.

12-12020-mg   Doc 9547-9   Filed 01/25/16   Entered 01/25/16 16:03:47   Exhibit H to
Case 2:10-cv-02153-JAM-KJN   Prior Declaration   Document 62-1   Filed 02/16/11   Page 37 of 85
Pg 69 of 117

10) Please tell me how property inspections are protective of this property.

11) Please explain to me your policy on property inspections.

12) Do you consider the payment of inspection fees as a cost of collection? Yes or No?

13) If yes, why?

14) Do you use property inspections to collect debts? Yes or No?

15) Have you used any portion of the property inspection process on this property to collect a debt or inform the client of a debt, payment or obligation he/she owes?

16) If yes, please answer when and why?

17) Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement signed or authorized the assessment or collection of property inspection fees?

18) Have you labeled in any record or document sent to client a property inspection as a misc. advance? Yes or No?

19) If yes, why?

20) Have you labeled in any record or document sent to client a property inspection as a legal fee or attorney fee? Yes or No?

21) If yes, why?

22) Please detail and list for me in writing each separate inspection fee assessed to this account and for which corresponding payment period or month such fee was assessed from the inception of said loan to present date.

23) Please detail and list for me in writing each separate inspection fee collected from this account and for which corresponding payment period or month such fee was collected from the inception of said loan to present date.

24) Please detail and list for me in writing any adjustments in inspection fees assessed and on what date such adjustment was made and the reasons for such adjustment.

25) Please detail and list for me in writing any adjustments in inspection fees collected and on what date such adjustment was made and the reasons for such adjustment.

26) Has interest been charged on any inspection fees assessed or charged to this account? Yes or No?

27) If yes, when and how much was charged?

28) Is interest allowed to be assessed or charged on inspection fees charged or assessed to this account? Yes or No?

29) How much in total inspection fees have been assessed to this account from the inception of said loan until present date?  $_____  _____

30) How much in total inspection fees have been collected on this account from the inception of said loan until present date?  $_____

## BPO FEES

1) Have any BPOs [Broker's Price Opinions] been conducted on this property?

2) If yes, please tell me the date of each BPO conducted on this property that is the secured interest for the clients mortgage, deed or note?

3) Please tell me the price of each BPO?

4) Please tell me who conducted each BPO?

5) Please tell me why BPOs were conducted on this property

6) Please tell me how BPOs are beneficial to the client.

7) Please tell me how BPOs are protective of this property.

8) Please explain to me your policy on BPOs.

9) Have any BPO fees been assessed to this account?  Yes or No?

10) If yes, how much in total BPO fees have been assessed to this account?  $_____

11) Have any BPO fees been charged to this account?  Yes or No?

12) If yes, how much in total BPO fees have been charged to this account?  $_____

13) Please tell me specifically what clause, paragraph and sentence in said note, mortgage or deed of trust or any agreement client has executed allows you to assess, charge or collect a BPO fee from client.

## SERVICING RELATED QUESTIONS

For each of the following questions listed below, please provide me with a detailed explanation in writing that answers each question:

In addition, I need the following answers to questions concerning the servicing of this mortgage account from its inception to the present date. Accordingly, can you please provide me, certified, in writing, the answers to the questions listed below:

1) Did the originator of this loan have any financing agreements or contracts with your company?

Page **10** of 13

12-12020-mg   Doc 9547-9   Filed 01/25/16   Entered 01/25/16 16:03:47   Exhibit H to
Case 2:10-cv-02153-JAM-KJN   Document 82-1   Filed 02/16/11   Page 39 of 85
Prior Declaration   Pg 71 of 117

2) Did the originator of this loan have a warehouse loan agreement or contract with your company?

3) Did the originator of this loan receive any compensation, fee, commission, payment, rebate or other financial consideration from your company or any affiliate of your company for handling, processing, originating or administering this loan? If yes, please describe and itemize each and every form of compensation, fee, commission, payment, rebate or other financial consideration paid to the originator of this loan by your company or any affiliate.

4) Please identify for me where the originals of the entire loan file are currently located and how they are being stored, kept and protected?

5) Where is the "original" promissory note, or mortgage signed by the client located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.

6) Where is the "original" deed of trust signed by the client located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.

7) Since the inception of this loan, has there been any assignment of client's promissory note or mortgage to any other party? If the answer is yes, would you kindly identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignment?

8) Since the inception of this loan, has there been any assignment of this deed of trust to any other party? If the answer is yes, would you kindly identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignment?

9) Since the inception of this loan, has there been any sale or assignment of servicing rights to this mortgage loan to any other party? If the answer is yes, would you kindly identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignment or sale?

10) Since the inception of this loan, has any sub-servicer serviced any portion of this mortgage loan? If the answer is yes, would you kindly identify the names and addresses of each and every individual, party, bank, trust or entity that has sub-serviced this mortgage loan.

11) Has this mortgage loan been made a part of any mortgage pool since the inception of said loan? If yes, please identify for us each and every loan mortgage pool that this mortgage has been a part of from the inception of said loan to the present date.

12) Has each and every assignment of this mortgage or promissory note been recorded in the county land records where the property associated with this mortgage loan is located?

13) Has there been any "electronic" assignment of this mortgage with MERS or any other computer mortgage registry service or computer program? If yes, please identify the name and address of each and every individual.

14) Have there been any "investors" who have participated in any mortgage backed security, collateral mortgage obligation or other mortgage security instrument that this mortgage loan has ever been a part of from the inception of this mortgage to the present date? If yes, please identify the name and address of each and every individual, entity, organization or

Page 11 of 13

15) Please identify for me the parties and their addresses to all sales contracts, servicing agreements, assignments, alonges. transfers. indemnification agreements, recourse agreements and any agreement related to said loan from its inception to the current date written above.

16) Please provide me with copies of all sales contracts, servicing agreements. assignments, alonges. transfers, indemnification agreements, recourse agreements and any agreement related to this loan from its inception to the current date written above.


## Documents:

1. Provide validity and proof of debt and the name of the original creditor.
2. Provide the loan sale and/or Servicing Agreement for this transaction.
3. Provide the underwriting guidelines used to determine loan program affordability.
4. Provide all signed closing and disclosure documents in your possession including the residential loan applications signed by the borrower(s) for this transaction.
5. Provide the final HUD-1 Settlement Statement.
6. Provide a signed and executes copy of the mortgage and note.
7. Provide the completed appraisal used for this transaction.
8. Provide a copy of Borrowers' credit report or certification of credit report date.
9. Provide proof of mailing for all disclosures on this transaction.
10. Provide the Lender closing instructions to the settlement agent.
11. Provide the income documentation used for this transaction.
12. Provide a breakdown of all payments received to date from lender since the inception of this mortgage loan, detaining amounts applied to principal and/or interest.
13. Provide an accounting detailing all late fees. Negative amortization and any/all costs associated with this transaction.
14. Provide a copy of the Broker/Lender Agreement for this transaction.
15. Provide a complete detailed breakdown regarding escrows.
16. Provide a copy of all disbursements (to include all 3rd party invoices) at settlement.
17. Provide a copy of Lenders Private Mortgage Insurance policy. if used for this transaction.

12-12020-mg   Doc 9547-9   Filed 01/25/16   Entered 01/25/16 16:03:47   Exhibit H to
Case 2:10-cv-02153-JAM-KJN Prior Declaration Pg 73 of 117
Document 62-1   Filed 02/16/11   Page 41 of 85

DECEPTIVE LENDING PRACTICES STATED HEREIN- violations of the TRUTH IN LENDING ACT-
THE REAL ESTATE SETTLEMENT PROCEDURES ACT- FDIC- UNFAIR or DECEPTIVE TRADE
PRACTICES FDIC 15 U.S.C. 45(A) (FTC Act Section 5)

Complainant SHELLEY VON BRINCKEN entered into a mortgage transaction with GMAC MORTGAGE
LLC. on or about January 14, 2009 and said client's current mortgagee is GMAC MORTGAGE LLC.

The borrower has authorized our group to file complaints with the appropriate regulatory groups including, but
not limited to, the office of Thrift Supervision, Federal Trade Commission (FTC), Federal Reserve Board,
Office of Consumer and Regulatory Affairs, Office of the Comptroller of the Currency, Office of Thrift
Supervision and State Banking Department(s). (CA) California Department of Financial Institutions, California
Dept. Of Justice-Office of the Attorney General and California Office of Administrative law, Dept. of Financial
Institutions. The borrowers were advised to allow the lenders the established time by RESPA to review and
investigate the facts contained herein and any reasonable time (requested) as necessary prior to filing
complaints regarding the Deceptive Lending Practices, Predatory Loan Practices stated herein to the regulatory
agencies listed within this Qualified Written Request. The borrowers were also advised to continue making
monthly loan payments during this process.

Please provide us with the documents we have requested and a detailed answer to each of our questions within
the required lawful time frame. Upon receipt of the documents and answers, an exam and audit will be
conducted that may lead to a further document request and answers to questions under an additional QWR
letter.

Copies of this Qualified Written Request, Validation of Debt, request for accounting and legal records, Dispute
of Debt letter is being sent to HUD, all relevant state and federal regulators; local predatory lending task forces;
other consumer advocates; my congressman and various class action law firms and lawyers referred to us.

**Please note we are well aware of the laws and of our rights under them.**

3 - 17 - 10

Shelley von Brincken

cc;  Office of Thrift Supervision
     1700 "G" Street
     Washington  D.C. 20552

cc;  Federal Trade Commission
     Consumer Response Center
     600 Pennsylvania Ave. NW
     Washington, D.C. 20580

cc;  Dept. of Consumer & Regulatory Affairs
     941 North Capitol Street NE
     Washington, D.C.  20002

cc;  Office of the Comptroller of the Currency
     1301 McKinney Street Suite#3450
     Houston, TX. 77010-9050

cc;  California Dept. of Financial Institutions
     45 Fremont Street Suite#1700
     San Francisco. Ca. 94105-2219

cc;  California Attorney General
     Attn: Edmund G. Brown Jr.
     P. O. Box  944255
     Sacramento, Ca  94244-2550.

12-12020-mg   Doc 9547-9   Filed 01/25/16   Entered 01/25/16 16:03:47   Exhibit H to
Priore Declaration   Pg 74 of 117
Case 2:10-cv-02153-JAM-KJN   Document 62-1   Filed 02/16/11   Page 42 of 85

*Shelley Von Brincken vs. Mortgageclose.com, Inc., et al.*
**USDC Eastern District of California Case No. 2:10-CV-02153**

**SECOND AMENDED COMPLAINT**

**EXHIBIT "E"**

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Case 2:10-cv-02153-JAM-KJN    Document 62-1    Filed 02/16/11    Page 43 of 85
Priore Declaration    Pg 75 of 117

# <u>GMAC</u> **Mortgage**

March 30, 2010

Shelley Von Brincken
14738 Wolf Road
Grass Valley CA 95949

RE:    Account Number    ███ 7759
       Property Address    14738 Wolf Road
                           Grass Valley CA 95949

Dear Shelley Von Brincken:

Please be advised that this letter serves as our response to your Qualified Written Request
("QWR") for information regarding the above-referenced GMAC Mortgage account
dated March 17, 2010 and received in our office on March 22, 2010. In your
correspondence, you request detailed information and documentation regarding nearly
every aspect of the mortgage loan transaction, beginning with its origination.

In response to your inquiry, GMAC Mortgage has enclosed a copy of the account's
payment history as required by the Real Estate Settlement Procedures Act ("RESPA").

Because your letter appears to be questioning nearly every aspect of the loan transaction,
it is difficult for GMAC Mortgage to identify any specific concern(s) you have regarding
the servicing of the account. Nevertheless, in an effort to be responsive to your request,
copies of pertinent documentation GMAC Mortgage has in its records are enclosed.

- Note
- Deed of Trust/Mortgage
- HUD-I Settlement Statement

The current Master Servicer is: Fannie Mae. The Loan is currently owned by: Fannie
Mae, 3900 Wisconsin Avenue NW, Washington, DC 20016-2892, phone number 1-800-
732-6643. However, the Loan is currently being subserviced by GMAC Mortgage, LLC
and all legal inquiries should be directed to the subservicer.

12-12020-mg   Doc 9547-9   Filed 01/25/16   Entered 01/25/16 16:03:47   Exhibit H to
Priore Declaration   Pg 76 of 117
Case 2:10-cv-02153-JAM-KJN   Document 62-1   Filed 02/16/11   Page 44 of 85

# GMAC Mortgage

March 30, 2010
Account Number ████ 7759
Page 2


If after reviewing this information, you have any specific questions or concerns regarding
the mortgage loan servicing of this account, please contact Customer Care at 1-800-766-
4622 between the hours of 6:00 am to 10:00 pm CT Monday through Friday and 9:00 am
to 1:00 pm CT on Saturday.


If you have any other questions, please contact Customer Care at 1-800-766-4622
between the hours of 6:00 am to 10:00 pm CT Monday through Friday and 9:00 am to
1:00 pm CT on Saturday.

Customer Care
Loan Servicing

DV

*Shelley Von Brincken vs. Mortgageclose.com, Inc., et al.*
**USDC Eastern District of California Case No. 2:10-CV-02153**

**SECOND AMENDED COMPLAINT**

**EXHIBIT "F"**

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Case 2:10-cv-02153-JAM-KJN    Document 62-1    Filed 02/16/11    Page 46 of 85
Priore Declaration    Pg 78 of 117

**From:**
**SHELLEY VON BRINCKEN**
**14738 WOLF ROAD**
**GRASS VALLEY, CA 95949**

Date: **April 16, 2010**

**To/Respondents:**
**MORTGAGECLOSE.COM, INC.**
**1855 WEST KATELLA AVE, SUITE 200**
**ORANGE, CA 92867**

**GMAC MORTGAGE, LLC**
**3451 HAMMOND AVE**
**Waterlo, Ia 50704**

**CALIFORNIA LAND TITLE COMPANY OF NEVADA COUNTY**
**464 BRUNSWICK RD.**
**GRASS VALLEY, CA 95945**

**MERS (Mortgage Electronic Registration Systems Inc.)**
**P.O. BOX 2026**
**FLINT, MI 48501-2026**

Re: Original Loan No. ▮▮0219    APN: 55-00-34
Commonly Known Address: 14738 WOLF ROAD, GRASS VALLEY, CA 95949
Deed of Trust Record No: 2009000123100 Recorded Date: JANUARY 23, 2009

## *Notice of Right to Cancel*
*Notice to Agent is Notice to Principal*
*Notice to Principal is Notice to Agent*

**Parties: SHELLEY VON BRINCKEN** (Alleged Borrower(s) hereinafter **Borrower(s)**) – and,
**MORTGAGECLOSE.COM, INC./ GAMC MORTGAGE, LLC/ CALIFORNIA LAND TITLE
COMPANY OF NEVADA COUNTY** (Alleged Lenders) hereinafter **Lender(s)**

**Attention:** All above named Respondents.

This communication will serve as my *Notice of Right to Cancel* dated MONTH DAY, 2010. TILA (Truth
in Lending Act, 15 USC §1601 et seq; 12 CFR Part 226) allows three (3) years to review Disclosure
Documents. The referenced 'Three Day Right to Cancel' must have a trigger to begin. That trigger, is
when the Lender has provided the Borrower with ALL of the required Disclosures under TILA, and that the
same are true, complete, accurate, and timely provided.

Being as the entire purported loan/mortgage process and Deed of Trust referenced herein and throughout,
was obtained by wrongful acts of fraud, fraudulent inducement, concealment, and fraudulent
misrepresentation, the borrower has other recourse, right, and cause of action under numerous state and
federal statutes. Acts of fraud taint/void everything it touches as the US Supreme Court has declared:
*"There is no question of the general doctrine that fraud vitiates the most solemn contracts, documents,
and even judgments."* (United States v. Throckmorton, 98 U.S. 61) In further support of the
aforementioned wrongful acts, you will please find the attached 'Affidavits of **SHELLEY VON
BRINCKEN**' referenced as Attachment/Exhibit – B; and, the attached Addendum - C, all of which are
made a part hereto, and incorporated herein in their entirety, the same of which contain important matters

Notice of Right to Cancel

Page 1 of 3

of record that have thus far remained unanswered, unrebutted, and uncontroverted by all Respondents listed above.

To this date, Lender has never provided Borrower with true, complete, accurate or timely documents as required. ONLY AFTER such provision has been done, can the '3 DAY RIGHT TO CANCEL' period begin. If the required full Disclosure(s) have not been provided, then the period in which to Cancel is extended for up to three (3) years, OR until Lender moves to foreclose. The records thus far evidence, that **Borrower** has requested to cancel within the stipulated three year time period, while still waiting to receive all Truth-in-Lending disclosures as required by Federal Law, the same of which have never been received.

A close perusal and audit of Borrower's mortgage/loan documents has revealed certain Disclosure Violations; and, that the Borrower has the remedial right and remedy (UCC 1-201 (32) (34)), inter alia, to invoke their Right of Rescission (ROR) as further evidenced by the original NOTICE OF RIGHT TO CANCEL. You will also please find Borrower's signed and dated NOTICE to the Lender(s). Successor(s) and Beneficiary as stated on the NOTICE OF RIGHT TO CANCEL, if provided in the loan package. If such Notice was not provided, **this written Notice of communication is provided in lieu thereof**.

After sufficient NOTICE has been given to Lender, the Lender is required by Federal Law to CANCEL any lien(s) and to CANCEL any security interest on the Borrower's property within twenty (20) days. The Lender must also return any money, interest, fee, and/or property to Borrower, as well as any money/funds given to any persons or other fiction in law/entity in connection with said transaction.

In accordance with both State and Federal law or until the Lender complies, Borrower may retain the proceeds of the transaction. If it should be 'impractical' or 'unfair' for the Borrower to return the property when gross discrepancies, fraud, or other wrongful acts are discovered - then he/she/they may offer its 'Reasonable Value'.

In the event the Lender should fail or refuse to take possession of the property or return the borrower's money offer within twenty (20) days . . . **Borrower** may then regain/acquire all rights to clear title and re-conveyance under Federal Law and provisions of TILA.

**Additionally**, Borrower has the right to offer Lender a Reasonable Value. **However**, the penalty that a bank can face for violations of TILA and other State and Federal law can be as much as triple damages . . . i.e., triple the amount of the interest the bank stood to fraudulently make off of the mortgage/loan transaction. Therefore, the borrowers hereby in good faith make the following offer: Borrowers will forgive **MORTGAGECLOSE.COM, INC.S**, et.al., any liability incurred by its wrongful actions, provided **MORTGAGECLOSE.COM, INC.S**, et.al. rightfully forgive Borrowers the full amount of mortgage/credit **MORTGAGECLOSE.COM, INC.S**, et.al. fraudulently allege to have given. In addition. Borrowers make the one time demand of $4,536,000.00 for any loss, damage, and injury they have sustained; and, that **MORTGAGECLOSE.COM, INC.S**, et.al., also immediately remove all/any negative comments on Borrower's credit report attributed to this transaction.

Any default, failures, or non-compliance on the Lender's part to perform as herein directed within twenty (20) days of receipt shall constitute this Notice of Right to Cancel as valid and fully agreed/accepted pursuant to the terms and conditions as set forth herein.

Sincerely,

**SHELLEY VON BRINCKEN**

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Priore Declaration    Pg 80 of 117
Case 2:10-cv-02153-JAM-KJN    Document 62-1    Filed 02/16/11    Page 48 of 85

# ACKNOWLEDGEMENT

State of California                               )
                                                  )ss
County of  Placer                                 )

On 04/16/2010  before me,  S. Perry, notary public

Personally appeared SHELLEY VON BRINCKEN who proved to me on the basis of satisfactory
evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),
and that by/his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct

WITNESS my hand and official seal.

Signature                                 (Seal)

S PERRY
COMM. # 1841157
NOTARY PUBLIC-CALIFORNIA
PLACER COUNTY
MY COMM. EXP. MAR. 20, 2012

12-12020-mg   Doc 9547-9   Filed 01/25/16   Entered 01/25/16 16:03:47   Exhibit H to
Case 2:10-cv-02153-JAM-RJN   Prior Declaration   Pg 81 of 117   Filed 02/16/11   Page 49 of 85
Page 49 of 85

# AFFIDAVIT

of SHELLEY VON BRINCKEN
Security Instrument dated: JANUARY 14. 2009
Deed of Trust Record Nos. 2009000123100

| | |
|---|---|
| State of California | ) |
| | ) Scilicet |
| County of Nevada | ) |

"Indeed. No more than [such affidavits are] necessary to make the
prima facie case." United States v. Kis, 658 F.2nd. 526. 536 (7th Cir.
1981); Cert Denied, 50 U.S. L.W. 2169; S. Ct. March 22. 1982

Comes now SHELLEY VON BRINCKEN, (hereinafter "affiant") a sentient. living woman, being first
duly sworn/affirmed – and does depose, say, declare, and affirm by affiant's signature that I am over the
age of 18 years and have first hand personal knowledge of the following statements and affirm the same
are true and correct to the best of affiant's knowledge and belief, to wit:

1.) That, affiant was induced to believe by certain officers/employees of MORTGAGECLOSE.COM.
INC/ GMAC MORTGAGE. LLC. (hereinafter; bank/bank's/lender) and further by the bank's advertising.
that said bank had money of its own to loan to affiant and others.

2.) That, affiant took the bank up on its offer to loan affiant its' money. and affiant did sign a promissory
note/mortgage dated JANUARY 14. 2009.

3.) That, the bank did also induce affiant to sign a "security agreement/instrument" dated JANUARY 14.
2009, granting the bank a secured interest and lien in/on certain personal property of affiant currently
held/owned or otherwise acquired. The bank caused affiant to believe this "security
agreement/instrument" was necessary for the bank to protect and insure its valuable and lawful
'consideration', i.e., the loaning of its money to affiant as advertised and promised.

4.) That, the bank did further induce affiant into signing a Deed of Trust the bank and/or its cohorts
created, dated JANUARY 14, 2009 wherein the bank did cause other undeserving third parties to obtain a
lien against, a security interest in, and complete control over the affiant's personal property. Again, the

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Case 2:10-cv-02153-JAM-KJN  Document 62-1  Filed 02/16/11    Page 50 of 85
Priore Declaration    Pg 82 of 117
**Attachment/Exhibit - B**

bank led affiant to believe this Deed of Trust/assignment was necessary to further secure the bank's valuable, lawful, consideration against any potential 'risk or loss' regarding loaning the affiant its money.

5.) That prior to the affiant signing any of the bank's required financial documents, and forever thereafter, none of the bank's officers/employees have ever fully described and categorized all of the underlying, undisclosed particulars, details, and principles of law regarding the bank's entire purported 'loan' process, including, but not limited to, just exactly where the 'money' was coming from to fund the note/mortgage, how it was obtained/created, and by whom.

6.) That, by and through the affiant's signing of all the aforesaid financial instruments, the bank caused affiant to believe that a binding, lawful contract was created between the bank, its agents, assigns, and affiant.

7.) That prior to, and at the time of affiant signing all the bank's required financial instruments as instructed, affiant was very unlearned and unsophisticated in such banking and financial matters, including a total lack of knowledge of all the various underlying, undisclosed details, particulars - and legal consequences pertaining to the same. To the contrary, the unsophisticated affiant relied wholly and entirely upon the bank having 'clean hands', operating in 'good faith', and providing affiant with full, complete, and truthful disclosure of the entire financial transaction(s).

8.) That, regardless of any funds secretly or covertly obtained by the bank (via affiant's note/mortgage) while said bank acts as a for-profit business with and through the US Treasury for the purpose to access and thereby expand the credit of this affiant's individual treasury account while at all times failing to disclose the use of this affiant's negotiable paper (i.e. affiant's note/mortgage) while trading as a for-profit entity on the bond and securities market through any of its interagency cohorts/institutions such as Fannie Mae, Freddie Mac, or otherwise; while also apparently failing to file IRS Form 1099OID (Original Issue Discount) on each of the herein referenced transactions and thereby send a copy of said form to affiant for his tax records. It has been established that this affiant as well as other Americans have, out of necessity and the related remedy attaching thereto having its origin out of HJR-192, are in fact the only substantive "source" and consumer to sponsor virtually ALL credit that issues for commercial purposes. Said credit being necessary for the Treasury to have access to a valid source of credit to monetize and thereby disburse to the federal reserve banks for various and sundry federal projects while accounting for all such credit/funding entered into circulation through the aforesaid federal reserve banks. The nature of

12-12020-mg   Doc 9547-9   Filed 01/25/16   Entered 01/25/16 16:03:47   Exhibit H to
Case 2:10-cv-02153-JAM-KJN   Document 62-1   Filed 02/16/11   Page 51 of 85
Prior Declaration   Pg 83 of 117

Attachment/Exhibit - B

such funding has been verified by the U.S. Department of Treasury as emanating by and through the UCC Contract Trust Account of the named trust/entity SHELLEY VON BRINCKEN, bearing UCC CONTRACT TRUST ACCOUNT No.            and Treasury noted Exemption from Levy No. 555110000, to include such other similar individual trusts as may exist.

IN CONCLUSION - Due to other research, further understanding, and for all of the reasons set forth above and throughout this affidavit (to include the document entitled "Addendum-C") all of which the affiant incorporates herein in its entirety – has caused affiant to believe ALL notes/mortgage/Deed of Trust or other instruments entered into by the affiant between the bank/lender and any/all of its agents, assigns, and beneficiaries have no legal force or binding affect, and the same are in fact - **Null and Void**.

Further affiant sayeth naught,

Date:   4 - 16 - 10

_____
Affiant's signature

# ACKNOWLEDGEMENT

State of California )
 )ss
County of Placer )

On 04/16/2010 before me. S. Perry, notary public

Personally appeared Shelley von Brincken who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by/his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct

WITNESS my hand and official seal.

Signature   S. Perry   (Seal)

S. PERRY
COMM. # 1841157
NOTARY PUBLIC-CALIFORNIA
PLACER COUNTY
My Comm. Exp. Mar. 29, 2013

Page 3 of 3

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Prior Declaration    Pg 84 of 117
Case 2:10-cv-02153-JAM-RJN    Document 62-1    Filed 02/16/11    Page 52 of 85
Addendum-C

# Addendum – "C"

### ADDENDUM TO - RIGHT TO CANCEL
### RE: UNCONTROVERTED MATTERS OF RECORD. Et Seq.
Original Loan Nos. ███0219; APN: 55-00-34
Commonly Known Address: 14738 WOLF ROAD, GRASS VALLEY, CA [95949]
Deed of Trust Record: 2009000123100 – Recorded JANUARY 23, 2009

1.) That, at no time prior to the signing of 'loan' documents and to this date, did **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.** nor any of its officers/employees fully and completely describe and categorize all of the underlying particulars, details, and principles of law regarding **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.** entire purported 'loan' process, including **just exactly** where the '*money*' was coming from to fund the note/mortgage, how it was obtained/created, and by whom.

2.) That, at no time prior to the signing of any '*loan*' documents and to this date, did **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.** and its officers/employees ever disclose to **SHELLEY VON BRINCKEN** the fact that the funding of the note/mortgage was being created/obtained by and through **SHELLEY VON BRINCKEN'S** signature on **SHELLEY VON BRINCKEN'S** note, the same of which **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.** later arbitrarily and deceitfully claimed as its own, and then either sold, bargained, traded, or collateralized the same for its own benefit and use. **SHELLEY VON BRINCKEN** has good cause to believe that the foregoing wrongful acts evidence **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.** never put up, nor used, any money of its own to fund the note/mortgage instrument as it promised: Nor, has **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.** and its officers/employees ever denied or rebutted any of the determinations set forth above.

3.) That, by and through **SHELLEY VON BRINCKEN'S** signing of notes, mortgages, Deeds of Trust, and/or security instruments, **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.** led **SHELLEY VON BRINCKEN** to believe that a binding, lawful contract/agreement was created between **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.** (to include its agents, assigns, and beneficiaries) and **SHELLEY VON BRINCKEN.**

4.) That prior to, and at the time of signing all **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.'S** required financial instruments as instructed, **SHELLEY VON BRINCKEN** was very unlearned and unsophisticated in such banking and financial matters, including lacking any knowledge of all the various underlying details, particulars, and legal consequences pertaining to the same. To the contrary, **SHELLEY**

**Addendum to-Right to Cancel**                                                                                    **Page 1 of 5**

12-12020-mg   Doc 9547-9   Filed 01/25/16   Entered 01/25/16 16:03:47   Exhibit H to
Case 2:10-cv-02153-JAM-KJN   Priore Declaration   Document 62-1   Filed 02/16/11   Pg 85 of 117   Page 53 of 85
Addendum-C

VON BRINCKEN relied wholly upon **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.** having 'clean hands', operating in 'good faith', and providing **SHELLEY VON BRINCKEN** with full, complete, and truthful disclosure of the entire financial transaction(s).

5.) That, following the aforesaid financial transactions concerning **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.**, Barbara Louise Anderson did further study and research the above particulars regarding **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.'S** *loan* process. and can reasonably conclude that **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.** did not in fact operate with clean hands or in good faith, nor did **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.** provide full, complete, and truthful disclosure of its underlying, undisclosed. secret intents. To the contrary, a close perusal and audit of **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.'S** internal accounting records provide sufficient evidence to support the following conclusions:

 a.) That **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.** used acts of, but not limited to, fraudulent inducement, fraudulent misrepresentation, and fraudulent intent in its advertising and claim to have loaned its *money* to **SHELLEY VON BRINCKEN**

 b.) That **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC** . did not fulfill its original promise/agreement to lend Barbara Louise Anderson its own money; **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.** did not sacrifice/contribute anything of intrinsic value or incur any risk/loss in the formation or outcome of the transactions; and, **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.** therefore did not sacrifice nor contribute any valuable, lawful consideration; and thereby could not and did not suffer any loss, damage, or injury.

 c.) That **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.** arbitrarily and discretely stole **SHELLEY VON BRINCKEN'S** note/mortgage. claimed it as its own, and converted the same to a negotiable instrument for **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.** sole benefit, use, and gain;

 d.) That **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.** further compounded its predatory, wrongful, and fraudulent actions by inducing **SHELLEY VON BRINCKEN** to sign a Deed of Trust, thereby granting additional third parties undeserving control, benefit, and interest in **SHELLEY VON BRINCKEN'S** personal property (i.e. his house) all under the guise of *'necessity'*;

 e.) That the notes/mortgage/Deed of Trust/Security Instrument created by **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.**, its agents. and assigns and

12-12020-mg   Doc 9547-9   Filed 01/25/16   Entered 01/25/16 16:03:47   Exhibit H to
Case 2:10-cv-02153-JAM-KJN   Document 62-1   Filed 02/16/11   Page 54 of 85
Prior Declaration   Pg 86 of 117
Addendum-C

signed only by **SHELLEY VON BRINCKEN** does not constitute a lawful binding contract/agreement due to **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.'S** acts of misfeasance, malfeasance, and nonfeasance as more particularly outlined above; and, that any such purported 'contract/agreement' would be unconscionable and is void.

f.) As confirmed above and throughout, **SHELLEY VON BRINCKEN** was never provided full, complete, and truthful disclosure regarding all financial instruments **SHELLEY VON BRINCKEN** was compelled to sign, nor were they fully or otherwise apprised of the *true nature* and *exact particulars* of **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.** entire *loan* process. Without being fully and truthfully informed as to all the details of the purported '*loan*' and the underlying disingenuous '*intentions*' of the lender, there could not be, and was not, a 'meeting of the minds'. The law of contracts and the courts addresses this issue repeatedly, as per this example: "*The 'meeting of the minds' required to make a contract is not based on **secret purpose or intention** on the part of one of the parties, stored away in his mind and **not brought to the attention of the other party**, but must be based on purpose and intention which **has been made known** or which from all the circumstances should be known*", McClintock v Skelly Oil Co., 232 MoApp. 1204, 114 S.W. 2nd 181, 189. (emphasis added)

g.) That, **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.** also may have compelled **SHELLEY VON BRINCKEN** into procuring Mortgage Insurance on **SHELLEY VON BRINCKEN'S** property making **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.** the beneficiary of the same, while **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.** knew full well that it had not put up any valuable nor lawful consideration into **SHELLEY VON BRINCKEN'S** note, could not possibly incur any loss, was undeserving of any such insurance benefit, and was wrongfully instilling yet another unjust financial burden on **SHELLEY VON BRINCKEN.** As with the theft of **SHELLEY VON BRINCKEN'S** note, courts of law throughout the United States consider any such wrongful and deceitful actions as fraudulent inducement, fraudulent misrepresentation, and unjust enrichment, to name a few.

h.) **SHELLEY VON BRINCKEN** did spend additional time researching several particulars regarding **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.'S** entire *loan* process as outlined above, and became further perplexed. If **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.** /lender had indeed given full, complete, and truthful disclosure regarding all elements of its loan process as set forth above and throughout; and, did in fact provide valuable, bona fide consideration; and, did in fact believe **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.** did create a lawful, binding

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Case 2:10-cv-02153-JAM-KJN    Priore Declaration    Pg 87 of 117    Page 55 of 85
Document 62-1    Filed 02/16/11    Page 55 of 85
Addendum-C

contract with **SHELLEY VON BRINCKEN**/borrower - then why didn't **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.'S** officers/representatives sign their name on the contract/note? The same applies to the Deed of Trust or Mortgage. If **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.** /lender knew it was not involved in any manner of fraudulent inducement, misrepresentation, concealment, or unjust enrichment, and did in fact have a bona fide legal contract with the borrowers/**SHELLEY VON BRINCKEN** sufficient to prevail in a foreclosure action if need be; then, why did **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.** /lender feel it necessary to have a deed of trust created – wherein the **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.** /lender did cause complete control of the purported '*loan*/note' to be turned over to an undeserving third party, and again never put their signature to the instrument? In consideration of all the above statements and findings, it is only reasonable to conclude that **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.** /lender knew full well that it had defrauded **SHELLEY VON BRINCKEN**/borrower from the outset as to the true nature and undisclosed rudiments of the entire *loan* process, and was not receptive to further implicating and/or incriminating itself by signing its name to documents that **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.** /lender knew were founded upon fraud, lies, unfulfilled promises, secret intentions, inducement, entrapment, and unjust enrichment.

6.) To this date, **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.** nor any of its agents, assigns, or beneficiaries, have provided any **bona fide**, tangible evidence that ANY of them are in FACT the **bona fide** holder in due course (nor even a holder of value) and **bona fide** owner of the promissory note in question, all of which would be absolutely necessary in order to initiate ANY form of collection action or foreclosure proceeding. **Again**, it is an **incontrovertible fact** that the original promissory note in question is, and always was, the property of **SHELLEY VON BRINCKEN**, and the same **did not** knowingly or otherwise assign, transfer, or give it away for another's personal benefit and gain – all to the loss and detriment of **SHELLEY VON BRINCKEN**. Any reasonable person would conclude such an action as being ludicrous and unconscionable. Furthermore, it is against the law for one to fraudulently obtain or steal another's property, claim it as their own, and then further bargain, assign, or sell the same to obtain an unjust enrichment, benefit, and gain for themselves – all at a loss and detriment to the lawful, bona fide owner.

**IN CONCLUSION**, **MORTGAGECLOSE.COM, INC/ GMAC MORTGAGE, LLC.** nor any of its officers, agents, assigns, or beneficiaries have provided any evidence in contradiction to the matters set forth above and throughout. **Accordingly**, the record shall establish that all aforesaid facts, statements,

12-12020-mg   Doc 9547-9   Filed 01/25/16   Entered 01/25/16 16:03:47   Exhibit H to
Priore Declaration   Pg 88 of 117
Case 2:10-cv-02153-JAM-KJN   Document 62-1   Filed 02/16/11   Page 56 of 85

Addendum-C

determinations and related Attachment/Exhibit-B sworn Affidavits of borrower (which is incorporated herein
in their entirety) are entirely true and correct and remain unanswered, unrebutted, and uncontroverted.



**SHELLEY VON BRINCKEN**


# ACKNOWLEDGEMENT

State of California                              )
                                                 )ss
County of  Placer                                )

On 04/16/2010 before me.  S. Perry, notary public

Personally appeared SHELLEY VON BRINCKEN who proved to me on the basis of satisfactory evidence to
be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by/his/her/their signature(s)
on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct

WITNESS my hand and official seal.


Signature   S. Perry                (Seal)


S. PERRY
COMM. # 1841157
NOTARY PUBLIC-CALIFORNIA
PLACER COUNTY
My Comm. Exp. Mar. 28, 2013

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Prior Declaration    Pg 89 of 117
Case 2:10-cv-02153-JAM-KJN    Document 62-1    Filed 02/16/11    Page 57 of 85

## ASSERVATION OF MAILING

I, S. Perry _____ do hereby solemnly declare and affirm by my signature
below, that on 04 l16 l 2010 _____ -2009. I did cause to be delivered by Federal Express
private courier and/or First Class Certified US Mail, a true and correct copy of the following documents:
Notice of Right to Cancel; Affidavit of 'Shelley Von Brincken'-Attachment/Exhibit-B; and, Addendum-
C, to the parties and locations listed below:


Date: 4 l16 l 2010 _____          By: S. Perry _____


MORTGAGECLOSE.COM, INC.
1855 WEST KATELLA AVE, SUITE 200
ORANGE, CA 92867
US Certified Mail Tracking No. 7010 0290 0002 5531 4744

GMAC MORTGAGE, LLC
3451 HAMMOND AVE
Waterllo, Ia 50704
US Certified Mail Tracking No. 7010 0290 0002 5531 4751

CALIFORNIA LAND TITLE COMPANY OF NEVADA COUNTY
464 BRUNSWICK RD.
GRASS VALLEY, CA 95945
US Certified Mail Tracking No. 7010 0290 0002 5531 4737

MERS (Mortgage Electronic Registration Systems Inc.)
P.O. BOX 2026
FLINT, MI 48501-2026
US Certified Mail Tracking No. 7010 0290 0002 5531 4720

12-12020-mg   Doc 9547-9   Filed 01/25/16   Entered 01/25/16 16:03:47   Exhibit H to
Priore Declaration   Pg 90 of 117
Case 2:10-cv-02153-JAM-RJN   Document 62-1   Filed 02/16/11   Page 58 of 85

**U.S. Postal Service**
**CERTIFIED MAIL · RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

ORANGE, CA 92867

| | | |
|---|---|---|
| Postage | $ | $1.05 | 0603 |
| Certified Fee | | $2.80 | 11 |
| Return Receipt Fee (Endorsement Required) | | $2.30 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 | |
| Total Postage & Fees | $ | $6.15 | 04/16/2010 |

Sent To
MORTGAGE USA Corp INC
Street, Apt. No.; or PO Box No. 1655 W. KATELL AVE # 200
City, State, ZIP+4 ORANGE CA 50704

PS Form 3800, August 2006          See Reverse for Instructions

7010 0290 0002 5531 4744

---

**U.S. Postal Service**
**CERTIFIED MAIL · RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

WATERLOO IA 50704

| | | |
|---|---|---|
| Postage | $ | $1.05 | 0603 |
| Certified Fee | | $2.80 | 11 |
| Return Receipt Fee (Endorsement Required) | | $2.30 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 | |
| Total Postage & Fees | $ | $6.15 | 04/16/2010 |

Sent To
GMAC Mortgage LLC
Street, Apt. No.; or PO Box No. 3451 HAMMOND AVE
City, State, ZIP+4 WATERLOO IOWA 50704 0780

PS Form 3800, August 2006          See Reverse for Instructions

7010 0290 0002 5531 4751

---

**U.S. Postal Service**
**CERTIFIED MAIL · RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

FLINT MI 48501

| | | |
|---|---|---|
| Postage | $ | $1.05 | 0603 |
| Certified Fee | | $2.80 | 11 |
| Return Receipt Fee (Endorsement Required) | | $2.30 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 | |
| Total Postage & Fees | $ | $6.15 | 04/16/2010 |

Sent To
MERS
Street, Apt. No.; or PO Box No. PO Box 2026
City, State, ZIP+4 FLINT MI 48501-2026

PS Form 3800, August 2006          See Reverse for Instructions

---

**U.S. Postal Service**
**CERTIFIED MAIL · RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

GRASS VALLEY CA 95945

| | | |
|---|---|---|
| Postage | $ | $1.05 | 0603 |
| Certified Fee | | $2.80 | 11 |
| Return Receipt Fee (Endorsement Required) | | $2.30 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 | |
| Total Postage & Fees | $ | $6.15 | 04/16/2010 |

Sent To
CALIFORNIA Land TITLE Co OF NEV County
Street, Apt. No.; or PO Box No. 469 BRUNSWICK Rd
City, State, ZIP+4 GRASS VALLEY CA 95945

PS Form 3800, August 2006          See Reverse for Instructions

7010 0290 0002 5531 4737

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

x **Greg Caya**  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)  C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

1. Article Addressed to:

GMAC MoRtgagE LLC
3451 HAMMONd AvE
wAterLoo IowA
50704 0780

3. Service Type
☒ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
7010 0290 0002 5531 4751

PS Form 3811, February 2004  Domestic Return Receipt  102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature  ☒ Agent  ☐ Addressee

B. Received by (Printed Name)  C. Date of Delivery
Evelin Plumo  4/21/10

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

1. Article Addressed to:

MortgageClose.com,
1855 West KatEllA Inc
Suite 200
ORANGE, CA
92867

3. Service Type
☒ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
7010 0290 0002 5531 4744

PS Form 3811, February 2004  Domestic Return Receipt  102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X  Elaine K Crase  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)  C. Date of Delivery
A478

D. Is delivery address different from item 1? ☒ Yes
If YES, enter delivery address below: ☐ No

1. Article Addressed to:

MeRS
P.O. Box 2026
Flint, MI 48501-2026

3. Service Type
☒ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
7010 0290 0002 5531 4720

PS Form 3811, February 2004  Domestic Return Receipt  102595-02-M-1540

*Shelley Von Brincken vs. Mortgageclose.com, Inc., et al.*
**USDC Eastern District of California Case No. 2:10-CV-02153**

**SECOND AMENDED COMPLAINT**

**EXHIBIT "G"**

12-12020-mg   Doc 9547-9   Filed 01/25/16   Entered 01/25/16 16:03:47   Exhibit H to
Priore Declaration   Pg 93 of 117
Case 2:10-cv-02153-JAM-KJN   Document 62-1   Filed 02/16/11   Page 61 of 85

RECORDING REQUESTED BY:
Recording Requested by
Title Court Service

Old Republic Default Management Services
when Recorded mail To:

ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
(818) 260-1600

Nevada County Recorder
Gregory J. Diaz
Document#: 20100009776
Wednesday April 28 2010, at 12:08:00 PM
Rec Fee:$14.00
Paid: $14.00
Recorded By:JR
Title Court Services

TS NO : GM-_____-C
LOAN NO : ■■■■759

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# SUBSTITUTION OF TRUSTEE

   **WHEREAS, SHELLEY VON BRINCKEN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**
was the original Trustor, **CALIFORNIA LAND TITLE COMPANY OF NV COUNTY** was the original Trustee, and
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR MORTGAGECLOSE.COM, INC., A
NEVADA CORPORATION** was the original Beneficiary under that certain Deed of Trust dated 1/14/2009 and recorded on
1/23/2009 as Instrument No. 2009-0001231-00, in Book , Page  of Official Records of Nevada County, California; and

   **WHEREAS,** the undersigned is the present Beneficiary under said Deed of Trust, and

   **WHEREAS,** the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of
said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

   **NOW, THEREFORE,** the undersigned desires to substitute **Executive Trustee Services, LLC dba ETS
Services, LLC,** as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular
number includes the plural.
 Dated : 4/27/2010

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

**DONNA FITTON, ASSISTANT SECRETARY**

State of California} ss.
County of Los Angeles }

On 4/27/2010 before me, Dee C. Ortega Notary Public, personally appeared Donna Fitton who proved to me on the basis of satisfactory evidence to be
the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
          Dee C. Ortega

DEE C. ORTEGA
Commission # 1672751
Notary Public - California
Los Angeles County
My Comm. Expires Jun 5, 2010

16

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Priore Declaration    Pg 94 of 117
Case 2:10-cv-02153-JAM-KJN    Document 62-1    Filed 02/16/11    Page 62 of 85

*Shelley Von Brincken vs. Mortgageclose.com, Inc., et al.*
**USDC Eastern District of California Case No. 2:10-CV-02153**

**SECOND AMENDED COMPLAINT**

**EXHIBIT "H"**

12-12020-mg Doc 9547-9 Filed 01/25/16 Entered 01/25/16 16:03:47 Exhibit H to
Priore Declaration Pg 95 of 117
Case 2:10-cv-02153-JAM-KJN Document 62-1 Filed 02/16/11 Page 63 of 85

RECORDING REQUESTED BY:

Old Republic Default Management Services

WHEN RECORDED MAIL TO:
ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120



---

TS No.: GM-242742-C      Loan No.: ████7759

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice)

This amount is **$5,958.63** as of 4/27/2010 and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**
**C/O ETS Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, California 91504-3120**
**(818) 260-1600 phone**



TS NO.: GM-242742-C          LOAN NO.:     759

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

### Remember,  YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN.  That  Executive Trustee Services, LLC dba ETS Services, LLC is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated  1/14/2009 , executed by  SHELLEY VON BRINCKEN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY, as Trustor, to secure certain obligations in favor of  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR MORTGAGECLOSE.COM, INC., A NEVADA CORPORATION,  as beneficiary, recorded 1/23/2009, as Instrument No. 2009-0001231-00, in Book , Page ,  of Official Records in the Office of the Recorder of  Nevada County, California describing land therein as:

AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

including  ONE NOTE FOR THE ORIGINAL  sum of  $220,000.00 ; that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in,  the obligations for which such Deed of Trust is security has occurred in that payment has not been made of

**Installment of Principal and Interest plus impounds and/or advances which became due on 1/1/2010 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated: **4/27/2010**

ETS Services, LLC as Agent for Beneficiary

BY:

Maricela Miseroy
TRUSTEE SALE OFFICER

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Priore Declaration    Pg 97 of 117
Case 2:10-cv-02153-JAM-RJN    Document 62-1    Filed 02/16/11    Page 65 of 85

*Shelley Von Brincken vs. Mortgageclose.com, Inc., et al.*
**USDC Eastern District of California Case No. 2:10-CV-02153**

**SECOND AMENDED COMPLAINT**

# EXHIBIT "I"

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Priore Declaration    Pg 98 of 117
Case 2:10-cv-02153-JAM-KJN    Document 62-1    Filed 02/16/11    Page 66 of 85

# GMAC Mortgage

May 4, 2010


Shelley von Brincken
14738 Wolf Road
Grass Valley CA  95949


RE:    Account Number        ▆▆▆▆7759
       Property Address      14738 Wolf Road
                             Grass Valley CA  95949


Dear Ms. Gottesburen:

This letter is in response to your letter received in our office for response on April 19, 2010. Specifically, this is in response to your Qualified Written Request ("QWR").

The letter questions nearly every aspect of the loan transaction and appears to be based on a form letter that is not tailored to this loans particular circumstances, and as a result it is difficult for us to identify any specific concern you may have regarding GMAC Mortgage LLC's ("GMACM") servicing of the loan.  Nevertheless, in an effort to be responsive to the request, we have enclosed copies of the documentation on the loan that we have in our records.  If after reviewing these records, you have any particular questions or concerns relating to GMACM's servicing of the account, we will be pleased to discuss them with you in further detail.

As you may be aware, Section XI of the Real Estate Settlement Procedures Act ("RESPA") pertains to the servicing of mortgage loans and the administration of escrow accounts.  Specifically, RESPA states, "If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period."  Continuing, RESPA provides that the servicer shall investigate, correct (where appropriate), and respond "not later than 60 days" after receipt of the borrower's QWR.

Enclosed please find the following:

- Payment history
- Note
- Deed of Trust
- HUD-1 Settlement Statement

The following responses are in the same order as the inquiries in the QWR:

1. Subject to business and trade practices which are proprietary and confidential.
2. Subject to business and trade practices which are proprietary and confidential.
3. See enclosed transaction code list.
4. Subject to business and trade practices which are proprietary and confidential.
5. Subject to business and trade practices which are proprietary and confidential.

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Prior Declaration    Pg 99 of 117
Case 2:10-cv-02153-JAM-KJN    Document 62-1    Filed 02/16/11    Page 67 of 85

Account Number ████ 7759
Shelley von Brinc███
May 4, 2010

6.  The loan is registered with MERS, MIN # ████████████ ; therefore, there are no assignments. The loan originated January 14, 2009 with Mortgageclose.com Inc and was immediately transferred to GMAC Mortgage, LLC for servicing.
7.  Not applicable.
8.  Subject to business and trade practices which are proprietary and confidential.
9.  See enclosed escrow analysis. The account is not escrowed at this time.
10.  Does not pertain to the servicing of the account.
11.  You will need to contact your financial institution for copies of the front and back of checks or payments issued.
12.  See enclosed letters and available statements.
13.  See enclosed letters.
·14.  RESPA does not require we provide documentation from a previous servicer.
15.  See enclosed letters.
16.  See response to item 6.
17.  Subject to business and trade practices which are proprietary and confidential.
.18.  Subject to business and trade practices which are proprietary and confidential.
19.  Subject to business and trade practices which are proprietary and confidential.
20.  Subject to business and trade practices which are proprietary and confidential.
21.  See enclosed payment history and transaction code list.
22.  See response to item 21.

## LOAN ACCOUNTING & SERVICING SYSTEMS

1-3.    Subject to business and trade practices which are proprietary and confidential.

## DEBITS & CREDITS

1-3.    This information is detailed in the enclosed payment history and transaction code list.

## MORTGAGE & ASSIGNMENTS

1-4.    The information requested is not related to the servicing of the account.

## ATTORNEY FEES

1.    No response is required to this item.
2.    No attorney fees have been assessed to the account.
3-17.    Not applicable as no attorney fees have been assessed or paid from the account. The questions concerning how or why these fees can be assessed is outlined in the enclosed Deed of Trust.

## SUSPENSE/UNAPPLIED ACCOUNTS

1.    No response is required to this item.
2-4.    This information is detailed in the enclosed history.

## LATE FEES

1.    No response is required to this item.
2-20.    This information is detailed in the enclosed history. The questions concerning how or why

Account Number        7759
Shelley von Brincken
May 4, 2010

these fees are assessed is outlined in the enclosed Note and Deed of Trust. RESPA does not require we respond on items from a previous servicer.

## PROPERTY INSPECTIONS

1.       No response is required to this item.
2-30.    This information is detailed in the enclosed history. The questions concerning how or why these fees are assessed is outlined in the enclosed Note and Deed of Trust.

## BPO FEES

1-13.    No fees for a Broker's Price Opinion has been assessed to the account. This information is detailed in the enclosed history. The questions concerning how or why these fees may be assessed is outlined in the enclosed Note and Deed of Trust.

## SERVICING RELATED QUESTIONS

1-16.    Subject to business and trade practices which are proprietary and confidential.

Documents:
1.    See enclosed Note, Deed of Trust, HUD-I Settlement Statement and Payment History confirming validation of debt on the above-referenced account.
2.    Subject to business and trade practices which are proprietary and confidential.
3.    Does not pertain to the servicing of the account.
4.    Does not pertain to the servicing of the account.
5.    See enclosed HUD-I Settlement Statement.
6.    See enclosed Note and Deed of Trust.
7.    See enclosed appraisal.
8.    Does not pertain to the servicing of the account.
9.    Does not pertain to the servicing of the account.
10.   Does not pertain to the servicing of the account.
11.   Does not pertain to the servicing of the account.
12.   See enclosed payment history and transaction code key.
13.   See enclosed payment history for all late charges assessed to the account. The account is not a negative amortizing loan.
14.   Subject to business and trade practices which are proprietary and confidential.
15.   See enclosed payment history and transaction code key.
16.   Does not pertain to the servicing of the account.
17.   Does not pertain to the servicing of the account.

Omissions or silence do not constitute GMACM's consent of or agreement with the statements contained in the document. GMACM has responded to the provisions it is required to as provided by law. It views all other non-servicing related questions as extraneous and an abuse of the statute by counsel in an attempt to obtain information outside of formal discovery.

If you are experiencing a financial hardship, you may be eligible for a workout option (repayment agreement, modification, etc). In order to be considered, you will need to complete and return the enclosed financial analysis form with the requested documentation. Upon receipt of this information, the account will be reviewed to determine what, if any, options may be available to you.

Account Number ███ 7759
Shelley von Brincken
May 4, 2010


We believe the foregoing to be responsive to your inquiries. If you have any further questions, please contact Customer Care at 1-800-766-4622 between the hours of 6:00 am to 10:00 pm CT Monday through Friday and 9:00 am to 1:00 pm CT on Saturday.

Customer Care
Loan Servicing

Enclosures

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Priore Declaration    Pg 102 of 117
Case 2:10-cv-02153-JAM-KJN    Document 62-1    Filed 02/16/11    Page 70 of 85

*Shelley Von Brincken vs. Mortgageclose.com, Inc., et al.*
**USDC Eastern District of California Case No. 2:10-CV-02153**

**SECOND AMENDED COMPLAINT**

# EXHIBIT "J"

ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
(818) 260-1600

Date: 5/5/2010

T.S. Number:  GM-242742-C
Loan Number:  ████7759

# DEBT VALIDATION NOTICE

1.  The enclosed document relates to a debt owed to the current creditor:

    **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

    You may send us a written request for the name and address of the original creditor, if different from the
    current creditor, and we will obtain and mail the information to you.

2.  As of 4/27/2010 the total delinquency owed was $5,958.63, but this amount will increase until the delinquency has been fully cured.

3.  As of 5/5/2010, the amount required to pay the entire debt in full was $223,386.69, but this amount will increase daily until the debt has been fully paid.

4.  You may dispute the validity of this debt, or any portion thereof, within thirty (30) days after receiving this notice. Otherwise, we will assume that the debt is valid.

5.  If you notify us in writing that you dispute all or any portion of this debt within thirty (30) days after receiving this notice, we will obtain and mail to you verification of the debt, or a copy of any judgement against you.

---

**WE ARE ATTEMPTING TO COLLECT A DEBT, AND ANY INFORMATION
WE OBTAIN WILL BE USED FOR THAT PURPOSE**

---



*Shelley Von Brincken vs. Mortgageclose.com, Inc., et al.*
**USDC Eastern District of California Case No. 2:10-CV-02153**

**SECOND AMENDED COMPLAINT**

# EXHIBIT "K"

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Priore Declaration    Pg 105 of 117
Case 2:10-cv-02153-JAM-KJN    Document 62-1    Filed 02/16/11    Page 73 of 85

**Nevada County Recorder**
Gregory J. Diaz
Document#: 20100018242
Friday August 06 2010, at 01:09:31 PM
Rec Fee:$17.00
Paid: $17.00
Recorded By:KP

RECORDING REQUESTED BY
ETS Services, LLC

AND WHEN RECORDED MAIL TO.
ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

T.S. No. GM-242742-C
Loan No. ____7759

SPACE ABOVE THIS LINE FOR RECORDER'S Use

# NOTICE OF TRUSTEE'S SALE 33-80132897

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 1/14/2009. UNLESS YOU TAKE
ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN
EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT
A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank,
check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan
association, or savings association, or savings bank specified in Section 5102 of the Financial Code and
authorized to do business in this state, will be held by the duly appointed trustee. The sale will be made,
but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to
satisfy the obligation secured by said Deed of Trust. The undersigned Trustee disclaims any liability for
any incorrectness of the property address or other common designation, if any, shown herein.

TRUSTOR:SHELLEY VON BRINCKEN, A MARRIED WOMAN AS HER SOLE AND SEPARATE
PROPERTY
Recorded 1/23/2009 as Instrument No. 2009-0001231-00 in Book , page  of
Official Records in the office of the Recorder of Nevada County, California.
Date of Sale:8/19/2010 at 12:30 PM
Place of Sale:    At the Main Entrance to the Courthouse, 201 Church St, Nevada City, California
Property Address is purported to be:    14738 WOLF ROAD
                                        GRASS VALLEY, CA 95949

APN #: 55-060-68-000

The total amount secured by said instrument as of the time of initial publication of this notice is
**$229,689.00**, which includes the total amount of the unpaid balance (including accrued and unpaid
interest) and reasonable estimated costs, expenses, and advances at the time of initial publication of this
notice.

Pursuant to California Civil Code §2923.54 the undersigned, on behalf of the beneficiary, loan servicer or
authorized agent, declares as follows:

[ 1 ] The mortgage loan servicer has obtained from the commissioner a final or temporary order of
exemption pursuant to Section 2923.53 that is current and valid on the date the notice of sale is filed;
[ 2 ] The timeframe for giving notice of sale specified in subdivision (a) of Section 2923.52 does not
apply pursuant to Section 2923.52 or 2923.55.

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Priore Declaration    Pg 106 of 117
Case 2:10-cv-02153-JAM-KJN    Document 62-1    Filed 02/16/11    Page 74 of 85
20100018242    Page 2

T.S No. **GM-242742-C**
Loan No  ▮▮▮▮759

Date  7/28/2010

ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
Sale Line: 714-730-2727

Ileanna Petersen, TRUSTEE SALE OFFICER

*Shelley Von Brincken vs. Mortgageclose.com, Inc., et al.*
**USDC Eastern District of California Case No. 2:10-CV-02153**

**SECOND AMENDED COMPLAINT**

**EXHIBIT "L"**

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Shelley von Brincken
14738 Wolf Road
Grass Valley, Ca  95949

Nevada County Recorder
Gregory J. Diaz
Document# 20100019517
Thursday August 19 2010  at 02 24:00 PM
Rec Fee:$26.00    CCF:$1.00
Paid: $27.00    CP

_____ SPACE ABOVE THIS LINE FOR RECORDER'S USE_____

UNITED STATES DISRICT COURT
EASTERN DISTRICT OF CALIFORNIA
2 10 - C - 2 1 5 3 JAM EFB(PS)

| | |
|---|---|
| **SHELLEY VON BRINCKEN,** | Case No.: |
| PLAINTIFF, | |
| vs. | **NOTICE OF PENDENCY ACTION** |
| **MORTGAECLOSE.COM, LLC.** 1855 WEST KATELLA AVE , SUIT 200, ORANGE, CA 92867 | |
| **EXCUTIVE TRUST SERVICES dba ETS SERVICES, LLC**, 2255 N. ONTARIO ST, SUIT 400, BURBANK, CA 91504 | |
| and DOES 1 – 30; | |
| Defendants. | |

Notice is given that the above-entitled action was filed in the above-entitled court on

12-12020-mg   Doc 9547-9   Filed 01/25/16   Entered 01/25/16 16:03:47   Exhibit H to
Priore Declaration   Pg 109 of 117
Case 2:10-cv-02153-JAM-KJN   Document 62-1   Filed 02/16/11   Page 77 of 85

ORIGINAL
FILED

AUG 11 2010

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Shelley von Brincken
14738 Wolf Road
Grass Valley, Ca  95949

_____ SPACE ABOVE THIS LINE FOR RECORDER'S USE _____

UNITED STATES DISRICT COURT
EASTERN DISTRICT OF CALIFORNIA
2 10 - - 2 1 5 3 JAM EFB(PS)

| | |
|---|---|
| **SHELLEY VON BRINCKEN.** | Case No.: |
| PLAINTIFF, | |
| vs. | **NOTICE OF PENDENCY ACTION** |
| **MORTGAECLOSE.COM, LLC**. 1855 WEST KATELLA AVE . SUIT 200. ORANGE, CA 92867 | |
| **EXCUTIVE TRUST SERVICES dba ETS SERVICES, LLC**, 2255 N. ONTARIO ST, SUIT 400, BURBANK, CA 91504 | |
| and DOES 1 – 30; | |
| Defendants. | |

Notice is given that the above-entitled action was filed in the above-entitled court on

12-12020-mg   Doc 9547-9   Filed 01/25/16   Entered 01/25/16 16:03:47   Exhibit H to
Priore Declaration   Pg 110 of 117
Case 2:10-cv-02153-JAM-KJN   Document 62-1   Filed 02/16/11   Page 78 of 85

August 11, 2010 by SHELLEY VON BRINCKEN, Plaintiff, against

**MORTGAECLOSE.COM, LLC.** 1855 West Katella Ave., Suite 200, Orange, Ca

92867, **EXCUTIVE TRUST SERVICES dba ETS SERVICES, LLC.** 2255 N. Ontario

St. Suite 400, Burbank, Ca 91504

The action affects title to specific real property or the right to possession of that specific

real property in the complaint or cross-complaint or as the case may be in the action.

The specific real property affected by the action is located in the City of Grass Valley,

County of Nevada, State of California, and is described as follows:

Lot 1, as shown on Final Map no. 00-002 of The Wolf, Filed in the Office of the
County Recorder, County of Nevada, State of California, on May 6, 2008 in
Book 8 of subdivisions, at page 178.

More commonly known as: 714738 Wolf Road, Grass Valley, Ca. 95949

Dated:  August 11, 2010

Shelley von Brincken

ACKNOWLEDGMENT

UNITED STATES DISRTICT COURT
EASTERN DIVSION OF CALIFORNIA

On _H '3 ,, 7o '0_ before me. _R H L_ , a notary public.
personally appeared _SH_ _u_ _x_ _u_ _w_ _Ph_ _x_ _E w_ who proved to me on the basis of
satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and
acknowledged to me that she executed the same in her capacity on the instrument the person, or
the entity upon behalf of which the person acted, executed the instrument.

I certified under penalty of perjury under the laws of the state of California that the forgoing is
true and correct.

_____
[Signature. printed name. and title of notary public or other
officer administering oath] [Seal]

R. HILL
Commission # 1847753
Notary Public - California
Nevada County
My Comm. Expires Jun 3, 2013

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Priore Declaration    Pg 112 of 117
Case 2:10-cv-02153-JAM-KJN    Document 62-1    Filed 02/16/11    Page 80 of 85

*Shelley Von Brincken vs. Mortgageclose.com, Inc., et al.*
**USDC Eastern District of California Case No. 2:10-CV-02153**

**SECOND AMENDED COMPLAINT**

**EXHIBIT "M"**

12-12020-mg    Doc 9547-9    Filed 01/25/16    Entered 01/25/16 16:03:47    Exhibit H to
Priore Declaration    Pg 113 of 117
Case 2:10-cv-02153-JAM-KJN    Document 62-1    Filed 02/16/11    Page 81 of 85

RECORDING REQUESTED BY:
**Executive Trustee Services, LLC dba ETS Services, LLC**

AND WHEN RECORDED MAIL TO.
**GMAC MORTGAGE, LLC FKA
GMAC MORTGAGE CORPORATION
1100 VIRGINIA DRIVE
FORT WASHINGTON, PA 19034**

**Forward Tax Statements to
the address given above**

Nevada County Recorder
Gregory J. Diaz
Document# 20100021600
Friday September 10 2010, at 01:35:13 PM
Rec Fee:$20.00
Paid: $20.00
Recorded By:KP

TS # GM-242742-C
LOAN # ████7759
TITLE ORDER # 33-80132897

SPACE ABOVE LINE FOR RECORDER'S USE

INVESTOR #: 0000000000000

# TRUSTEE'S DEED UPON SALE

APN 55-060-68-000          TRANSFER TAX: $00.00
"THIS TRANSACTION IS EXEMPT FROM THE REQUIREMENTS OF THE REVENUE AND TAXATION CODE, SECTION 480.3"
The Grantee Herein Was The Foreclosing Beneficiary.
The Amount Of The Unpaid Debt was $235,204.06
The Amount Paid By The Grantee Was $186,940.72
Said Property Is In The City Of GRASS VALLEY, County of Nevada

**Executive Trustee Services, LLC dba ETS Services, LLC,** as Trustee, (whereas so designated in the Deed of Trust hereunder
more particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY** to

## FEDERAL NATIONAL MORTGAGE ASSOCIATION

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed
to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of **Nevada,** State of
California, described as follows:

**See exhibit "A" attached hereto and made a part hereof**

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by **SHELLEY VON
BRINCKEN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY** as Trustor, dated 1/14/2009 of the
Official Records in the office of the Recorder of Nevada, California under the authority and powers vested in the Trustee
designated in the Deed of Trust or as the duly appointed Trustee, default having occurred under the Deed of Trust
pursuant to the Notice of Default and Election to Sell under the Deed of Trust recorded on 1/23/2009, instrument number
2009-0001231-00 (or Book , Page )
of Official records. Trustee having complied with all applicable statutory requirements of the State of California and
performed all duties required by the Deed of Trust including sending a Notice of Default and Election to Sell within ten days
after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to
each person entitled to notice in compliance with California Civil Code 2924b.

[Page 1 of 2]

12-12020-mg   Doc 9547-9   Filed 01/25/16   Entered 01/25/16 16:03:47   Exhibit H to
Priore Declaration   Pg 114 of 117
Case 2:10-cv-02153-JAM-KJN   Document 62-1   Filed 02/16/11   Page 82 of 85
20100021600   Page 2

EXHIBIT "A"

GM-242742-C

**THE LAND DESCRIBED HEREIN IS SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF
NEVADA, UNINCORPORATED AREA, AND IS DESCRIBED AS FOLLOWS:**

**LOT 1, AS SHOWN UPON THE FINAL MAP NO. 00-002, "THE WOLF", AS FILED IN THE
OFFICE OF THE RECORDER OF THE COUNTY OF NEVADA ON MAY 6, 2008, IN BOOK 8 OF
SUBDIVISION MAPS, AT PAGE 178.**

12-12020-mg   Doc 9547-9   Filed 01/25/16   Entered 01/25/16 16:03:47   Exhibit H to
Priore Declaration   Pg 115 of 117
Case 2:10-cv-02153-JAM-KJN   Document 62-1   Filed 02/16/11   Page 83 of 85
20100021600   Page 3

# TRUSTEE'S DEED UPON SALE

Trustee's Deed
T.S.# GM-242742-C
Loan # ▮▮▮▮7759
Title Order # 33-80132897

All requirements per California Statutes regarding the mailing, personal delivery and publication of copies
of Notice of Default and Election to Sell under Deed of Trust and Notice of Trustee's Sale, and the posting
of copies of Notice of Trustee's Sale have been complied with. Trustee, in compliance with said Notice of
Trustee's sale and in exercise of its powers under said Deed of Trust sold said real property at public auction
on 8/31/2010. Grantee, being the highest bidder at said sale became the purchaser of said property
for the amount bid, being **$186,940.72**, in lawful money of the United States, in pro per, receipt there
of is hereby acknowledged in full/partial satisfaction of the debt secured by said Deed of Trust.

In witness thereof, **Executive Trustee Services, LLC dba ETS Services, LLC**, as Trustee, has this day, caused its
name
to be hereunto affixed by its officer thereunto duly authorized by its corporation by-laws

Date: 9/3/2010

**LLC**

**Executive Trustee Services, LLC dba ETS Services,**

By: _Kathleen Gowen_
**Kathleen Gowen, Limited Signing Officer**

State of California      } S.S.
County of Los Angeles  }
On 9/3/2010  before me, **Sally Beltran**  Notary Public, personally appeared **Kathleen Gowen** who proved to me on the
basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Sally Beltran_ (Seal)
**Sally Beltran**

SALLY BELTRAN
Commission # 1777085
Notary Public - California
Los Angeles County
My Comm Expires Oct 30, 2011

[Page 2 of 2]

*Shelley Von Brincken vs. Mortgageclose.com, Inc., et al.*
**USDC Eastern District of California Case No. 2:10-CV-02153**

**SECOND AMENDED COMPLAINT**

# EXHIBIT "N"

# GMAC Mortgage

October 27, 2010

Shelley Von Brincken
14738 Wolf Road
Grass Valley CA  95949

RE:   Account Number:      ███7759
      Property Address      14738 Wolf Road
                            Grass Valley CA  95949

Dear Shelley Von Brincken:

This is in response to your recent letter received in our offices on October 21, 2010  in which you requested your mortgage Note and the identity of the owner of your loan.

GMAC Mortgage disputes the claims made in your letter relating to our foreclosure process.  We are committed to preserving the integrity of the foreclosure process and have taken all steps necessary to ensure that all applicable foreclosure requirements are being met.

The requirements for enforcement of a mortgage loan agreement depend on state law and possession of an original note is not necessarily a requirement. Nevertheless, we are providing you a copy of the original Note as a courtesy (see enclosed).  Failure to provide you with the original Note does not relinquish your responsibility for repayment of the debt or our rights to collect payment.

The current owner of your loan is Fannie Mae, 3900 Wisconsin Avenue NW, Washington, DC 20016-2892, phone number 1-800-732-6643.  GMAC Mortgage; LLC is currently servicing your account, however, and all inquiries should be directed to our office.

Please be aware failure to remit payments can have serious consequences including damage to your credit and possible foreclosure.  We understand that no one enters into a loan agreement expecting to have difficulty making payments.  Life changes and unexpected hardships can suddenly, and without warning, impact even those who are generally always prepared.  We are committed to working with you to identify solutions and find innovative ways to address your particular situation. If you need assistance with your payments, please complete the financial analysis forms available on our website at www.gmacmortgage.com, to determine your eligibility for assistance.

If you have any further questions, please contact Customer Care at 1-800-766-4622 between the hours of 6:00 am to 10:00 pm CT Monday through Friday and 9:00 am to 1:00 pm CT on Saturday.

Customer Care
Loan Servicing

Enclosure
BD

www.gmacmortgage.com
3451 Hammond Ave
Waterloo, IA 50702