1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 12-12020-mg

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


RESIDENTIAL CAPITAL, LLC, et al.,


            Debtors.


- - - - - - - - - - - - - - - - - - - -x


            United States Bankruptcy Court

            One Bowling Green

            New York, New York


            January 13, 2016

            10:02 AM


B E F O R E:

HON. MARTIN GLENN

U.S. BANKRUPTCY JUDGE

1

2   Telephonic Conference, on the Record, regarding Discovery

3   Dispute.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20   Transcribed by:  Penina Wolicki

21   eScribers, LLC

22   700 West 192nd Street, Suite #607

23   New York, NY 10040

24   (973)406-2250

25   operations@escribers.net

```
 1
 2  A P P E A R A N C E S : (TELEPHONICALLY)
 3  MORRISON & FOERSTER LLP
 4        Attorneys for The ResCap Borrower Claims Trust
 5        250 West 55th Street
 6        New York, NY 10019
 7
 8  BY:   JORDAN A. WISHNEW, ESQ.
 9        JESSICA J. ARETT, ESQ.
10
11
12  ACCESS LEGAL SERVICES
13        Attorneys for Tia Smith
14        310 Fourth Avenue South
15        Suite 5010
16        Minneapolis, MN 55415
17
18  BY:   WENDY A. NORA, ESQ. (TELEPHONICALLY)
19
20
21
22
23
24
25
```

RESIDENTIAL CAPITAL, LLC, ET AL.                          4

1                          P R O C E E D I N G S

2               THE COURT:  All right, this is Judge Glenn.  We're

3     here in Residential Capital, number 12-12020.  It's a

4     conference regarding discovery concerning the contested matter

5     involving the claim of Tia Smith.

6               Who's on the phone please, for Ms. Smith?

7               MS. NORA:  Wendy Alison Nora, and Tia Smith is

8     listening.

9               THE COURT:  Okay.

10              MR. WISHNEW:  Good morning, Your Honor.  Jordan

11    Wishnew and Jessica Arett from Morrison & Forester,

12    representing the ResCap Borrower Claims Trust.

13              THE COURT:  Thank you.  All right, Ms. Nora, go ahead.

14              MS. NORA:  Your Honor, I think what has happened here

15    is that because of the scheduling order that was entered while

16    Ms. Smith was self represented, we came up against a very short

17    deadline on discovery that led to a response -- series of

18    responses to our discovery that really concerned me.  And then

19    our discovery included the naming of experts.  And I went back

20    and I checked our Court's order on this, and it looks like for

21    some reason the Court precluded expert testimony in Ms. Smith's

22    case.

23              So basically, we've got a series of objections to

24    almost all of our discovery that can be characterized as the

25    objectors have decided that much of what we want to discover is

1    not relevant to what they characterize as the narrow issue that

2    survived your order, Your Honor.  But the California UCL law is

3    very broad, and our discovery all goes to the issue of the

4    fraudulent practice that would have had a tendency to deceive

5    the public.  And that's all that is required for pleadings and

6    proof under the California UCL.

7            I call the Court's attention to the Bank of the West

8    v. Superior Court, 833 P.2d at -- 545 is the key cite.  And at

9    546 the California Supreme Court specified that any fraudulent

10   act that would have a tendency to deceive the public may result

11   in the remedy of the UCL.

12           I think the objector's counsel thinks that the only

13   remedy is equitable relief, which they have been contending

14   does not go to any sort of damages.  And indeed, damages is not

15   the standard, it's restitution.  And what occurred in the

16   course of the unfair trade practices, the fraudulent act, is

17   that Ms. Smith has lost title to her home.

18           So we have -- our discovery was propounded for the

19   purpose of establishing the fraudulent acts.  And the objectors

20   came back with an objection that this is outside the scope of

21   the narrow issue that survived your order, Your Honor.

22           Also we're concerned about the preclusion of experts,

23   because the restitution aspect of the UCL claim would include

24   the disgorgement of profits made from the unfair trade

25   practice.  And for that we have named experts.

1    THE COURT:  What's the issues on which you wish to

2    obtain discovery, very specifically?

3    MS. NORA:  Specifically, Your Honor, there is evidence

4    that can be provided by expert testimony that will show that

5    the activities involved in what's known as securitization led

6    to the acquisition of various forms of alternative payments on

7    these so-called mortgage loans, which were actually securities

8    acquisitions as collateral documents to back a securities

9    offering.

10    And we have evidence that we would like to introduce

11    through experts that these so-called mortgage loans were sold

12    multiple times in almost a high-frequency trading situation

13    that led to enormous profits being taken at all levels of the

14    securitization process, and that the arrangement was made to

15    cause homeowners to go into default so that the securitization

16    scheme could be concealed from the public.

17    THE COURT:  Ms. Nora, you've come into this case as

18    counsel very late.  As you know, there's an opinion from the

19    Court from October 1, 2014.  It's reported at 518 B.R. 720

20    (Bankr. S.D.N.Y 2014), which dealt extensively with Ms. Smith's

21    claim.  And the surviving claim, under the California Unfair

22    Competition Law, was limited very specifically; and the only

23    factual issue for trial is whether Ms. Smith was told in

24    November 2007 to skip three monthly payments to qualify for a

25    loan modification and whether such statement was false or

1   misleading, and if it was, what her damages were.

2          That's the only thing that survives.  You do not get

3   to come up with some new theory or new claim, at this point.

4   That appears on page 740 Bankruptcy Reporter -- 518 B.R. 740.

5   What's under headnotes under 40 and 41 explains what's the

6   issues that remain in the case.  You have not described

7   anything specifically focused on the one remaining issue.

8          Mr. Wishnew, let me hear from you.

9          MR. WISHNEW:  Your Honor, you've really said much of

10  what I was going to say.  I'll just make a few points for the

11  record.

12          AS Your Honor points out, within section 13 of the

13  opinion, Your Honor basically says that there's one disputed

14  issue of fact.  And when we were served with 112 requests for

15  admission, 383 interrogatories, and 526 document requests, we

16  responded, in large part, that the lion's share of those

17  requests were outside the scope of the limited disputed issue

18  of fact set forth by the Court.  And that's how we responded to

19  the discovery requests and I believe what's prompted this

20  conference.

21          We believe --

22          MS. NORA:  Well, actually, if I could --

23          THE COURT:  Stop, Ms. Nora.

24          MS. NORA:  -- just say I --

25          THE COURT:  Ms. Nora, don't interrupt.  I'll give you

1   a chance again.

2          Go ahead, Mr. Wishnew.

3          MS. NORA:  Thank you.

4          MR. WISHNEW:  Thank you, Your Honor.  Basically this

5   is a very limited scope.  I mean, we could -- the debtors

6   serviced this loan for a period of time from February 1st, 2007

7   through April 1st, 2008.  The securitization theories being

8   sought by the claimant are well outside the scope of the

9   limited disputed issue of fact, are time barred, have been

10  addressed by the Court, and if allowed to go forward, would

11  essentially, be in our opinion, an impermissible reopening of

12  matters already litigated and an untimely amendment of the

13  claim.

14         So we would, consistent with our earlier objection to

15  the discovery responses, be willing -- or will respond to

16  issues or questions directed to the November 2007

17  conversations.  But beyond that, we don't believe that such

18  securitization-type questions and discovery requests are

19  relevant, and at this point we believe are overly burdensome

20  and inappropriate.

21         THE COURT:  Mr. Wishnew, it seems to me that it isn't

22  just the November 2007 conversations.  For example -- and I

23  don't know whether Ms. Nora or Ms. Smith had propounded

24  discovery about it, but for example, I don't know whether this

25  was an investor-owned loan or whether it was owned by GMAC or

1   one of the other debtors.  An issue that's come up from time to

2   time in the Residential Capital matter has focused on whether

3   there were investor guidelines that limited consideration of

4   loan modifications to loans that were in default for ninety

5   days.

6          So if there are -- I don't know whether you've

7   received discovery that focuses on what, if any, investor

8   guidelines, whether they were in writing, whether they were

9   oral.  That, to me, all relates to this issue of whether what

10  Ms. Smith was told in November 2007, and was that information

11  that was told to her, if it was told to her, was it accurate.

12         That could certainly go to whether there were investor

13  guidelines with respect to this loan, or even if it was owned

14  by one of the -- if the loan was owned by one of the debtors,

15  whether there were guidelines that GMAC had applied.

16         If you'll just give me a second here, okay?  I want to

17  look at something.

18         So this loan -- I'm looking at my opinion from 2014 --

19  the loan was originated by American Mortgage Network, Inc.

20  Residential Funding later bought the loan and transferred it to

21  a securitization trust in 2007.  Did the investor that

22  purchased the loan have guidelines with respect to

23  consideration of loan modifications?

24         But Ms. Nora, let me come back to you.  Okay?  I want

25  to know very specifically, what, if any, discovery you

1   propounded that you do not believe was responded to that

2   focuses solely on the issue that the Court identified for

3   trial, which is what Ms. Smith was told in November 2007.  And

4   that's the claim that survives.  That's the only claim that

5   survives.  You don't get to do a do-over now when we're on the

6   verge of trial after the close of fact discovery.  So tell me

7   what -- I want to know quite specifically, is any of the -- and

8   then I'll ask you about when you propounded it, whether it was

9   timely served -- but what, if any, of the outstanding discovery

10  focuses solely on the November 2007 efforts by Ms. Smith to

11  obtain a loan modification?

12          MS. NORA:  Well, with respect to the Court's

13  observation that we need to know --

14          THE COURT:  No, Ms. -- no.  Ms. Nora -- Ms. Nora,

15  answer my question.  What, if any, outstanding discovery do you

16  believe has not been responded to that focuses on the disputed

17  issue of fact as to what Ms. Smith was told in 2007 regarding a

18  supposed policy that a borrower had to be three months in

19  arrears before they would be considered for a loan

20  modification?  Answer that.

21          MS. NORA:  I would say that some of our questions go

22  that that, Your Honor, because we were asking who actually

23  owned the loan at that time, so we could get to that point.

24  And that was deemed to be irrelevant.

25          THE COURT:  Mr. Wishnew, did you provide information

1   about who owned the loan in November 2007?

2           MR. WISHNEW:  Yes, Your Honor.

3           MS. NORA:  Your Honor, I think you would have to look

4   at the actual questions and responses, because I dispute that

5   they identified the owner of the loan.  They objected.  They

6   even said that that was a conclusion of law.

7           THE COURT:  Mr. Wishnew, did you provide information

8   about who owned the loan in November 2007?  Specifically, I

9   want to know the answer to that question.

10          Let me phrase -- did you object to providing

11  information about who owned the loan in November 2007?

12          MR. WISHNEW:  I don't recall, Your Honor.  I'd have to

13  go back and look at the specific discovery response.

14          THE COURT:  Do you have it in front of you?  Do you

15  have it available to you right now?

16          MR. WISHNEW:  One moment, Your Honor.  I'm just

17  pulling it up on my computer.

18      (Pause)

19          MR. WISHNEW:  Your Honor, I'm looking through -- I'm

20  referring to interrogatory 15 propounded by the claimant.  The

21  question is:  Identify the member of MERS Corp., capital

22  M-E-R-S-C-O-R-P, who was the owner of the note while you were

23  servicing the mortgage loan.

24          I'll read our full response:  "In addition to the

25  general objections above, the Borrower Trust objects to this

1    interrogatory on the grounds that it is irrelevant to the

2    limited contested issues in this case, and thus outside the

3    scope of discovery.  The Borrower Trust also objects to this

4    interrogatory on the grounds that the term 'member of MERS

5    Corp.' is vague and ambiguous.  Without waiving the general

6    objections and any foregoing specific objections, the Borrowers

7    Trust responds as follows.

8            "The mortgage loan was not owned by MERS Corp. while

9    Homecomings was servicing the mortgage loan.  The mortgage loan

10   was owned by DBTCA as Trustee for the RALI Trust."

11           THE COURT:  Okay.  So you told them who owned the

12   loan?

13           MR. WISHNEW:  Correct, Your Honor.

14           THE COURT:  Okay.  When was the discovery propounded,

15   Mr. Wishnew?

16           MR. WISHNEW:  I believe it was propounded on November

17   20th, Your Honor, and we responded timely, which is I think the

18   day before the close of fact discovery.

19           THE COURT:  Okay.  What other specific discovery

20   requests did you make, Ms. Nora, that focus on the November

21   2007 period with respect to loan modification issues that you

22   believe the Trust did not respond to?

23           MS. NORA:  Well, Your Honor, again, please bear with

24   me, but I am trying to establish the restitution aspect of

25   these --

1        THE COURT:  Ms. Nora, could you answer my question,

2    please?  What discovery did you propound that focuses on the

3    November 2007 loan modification request that you believe that

4    the Trust did not respond to?  It's a very specific question

5    I'm asking.  You identified one specific question.  Mr. Wishnew

6    read me the response.  And after the frankly gobbledygook

7    objection, they provided you the information with who owned the

8    loan.  So you got the information.

9        I want to know very specifically what discovery

10   requests you made that focus on that November 2007 time period,

11   focusing on loan modification, that they did not respond to?

12   That's what I want you to -- I don't want to hear anything else

13   from you right now.  I want to hear the answer to my question.

14       MS. NORA:  With respect to the issue of the November

15   2015 -- or I'm sorry, the November 2009 -- Ms. Smith, you're on

16   the line with me -- 2008 or '9?

17       THE COURT:  It's 2007 is when the loan modification

18   request was.

19       Here's what my opinion says, based on the papers that

20   were submitted to me.  This is from page 518 B.R. 740:  "In

21   November 2007, a Homecomings employee allegedly instructed

22   Smith to skip making mortgage payments in order to qualify for

23   a loan modification.  This practice, if true, would likely

24   deceive consumers, because it would lead them to believe that a

25   necessary condition for obtaining a loan modification is to

1    default on their mortgages.  The Trust maintains that Smith

2    never received this advice from a Homecomings employee.

3    Indeed, the Trust submitted its servicing notes to support its

4    assertion that there is no evidence that a call between Smith

5    and Homecomings took place in November 2007.  The Court

6    concludes that there are disputed issues of fact -- whether

7    Smith was instructed that she had to default on her loan to

8    qualify for a loan modification -- that cannot be resolved

9    without an evidentiary hearing."

10           And then I went on to say that the claim wasn't time

11   barred.  But that was the factual disputed issue based on the

12   claim that was filed by Ms. Smith, the Trust's objection, and

13   the Court's opinion resolving -- sustaining in part and

14   overruling in part the objection.

15           So tell me very specifically what, if any, discovery

16   you propounded that focuses on the disputed issue of fact or

17   damages from it that you believe the Trust has not responded

18   to?

19           MS. NORA:  Thank you, Your Honor.  Because the

20   majority of our discovery went to the issue of restitution, and

21   that -- and there are a lot of questions that were asked

22   because we have four different debtors that participated in

23   what we contend is the fraudulent act.  And so we were going

24   for -- most of our discovery was propounded on the issue of

25   restitution.

1          THE COURT:  Tell me --

2          MS. NORA:  Because we recog --

3          THE COURT:  Tell me very specifically what questions

4    you ask about restitution that focus on the events of November

5    2007?

6          Okay, you're giving me a lot of generality, and I'm

7    asking for very specific.  You're saying the Trust did not

8    respond to discovery that you propounded.  I've already

9    indicated, because your initial comments indicated you were

10   vastly trying to expand the issues that you believe you would

11   like to raise at this hearing, and I've already told you I

12   ruled and I already decided what the issues are.  You do not

13   get to do a do-over.  Okay?

14         So I want to know very specifically what questions

15   you've propounded that you believe the Trust hasn't responded

16   to that focus on the events of November 2007 or the relief

17   you're seeking based on those specific facts?  That's what I

18   want to know now.  This is your chance to tell me.

19         MS. NORA:  Thank you, Your Honor.  Well, first of all,

20   I would just like to explain what our discovery involves so the

21   Court understands, because you don't have these documents

22   before you.

23         We did propound interrogatories to all four of the

24   debtors through the Borrowers Claims Trust in order to

25   ascertain where the profits were being made from the servicing

1 and sale of Ms. Smith's collateral documents.  That -- we have

2 many, many questions that go to that.

3          If you want -- like Mr. Wishnew found one response

4 with respect to the RALI Trust.  Our concern is that there

5 was -- this was not intended to ever be an actual mortgage loan

6 but was originated by Americas Mortgage Network for the purpose

7 of making profits through the sale of the collateral documents.

8 And that's where the thrust of so many of our requests went,

9 Your Honor.

10          Before we get off of this -- this is so important --

11 the debtors did not give us the document requests.  They

12 indicated that they would provide our documents, I believed, on

13 paper.  What they did was they uploaded it to a Web site, and

14 the Web site expired before I was able to download the

15 documents.  And if nothing else is accomplished here today, I

16 need access to the documents that they were providing.  I've

17 never heard of documents in discovery being uploaded to a Web

18 site that expires within fourteen days of the upload.

19          THE COURT:  Let me ask you --

20          MS. NORA:  And this is --

21          THE COURT:  Ms. Nora.  When did you -- when were you

22 told where you could get the documents, and when did you try to

23 download them?

24          MS. NORA:  There was a link sent on, I believe the

25 22nd of December.  I looked at the link.  I said well, I wanted

1   this on paper.  I had insisted that it be sent on paper, but if

2   they've got a link here I will download it when I have the

3   opportunity to do so.  The Web site expired on January 5th, and

4   my attempt to access it was on January 6th.  And I had not

5   seen, when I saw the link, that it had an expiration date.  It

6   never occurred to me that documents that were supposed to be

7   provided on paper would be uploaded electronically without my

8   consent and then would be only available until the 5th of

9   December (sic).

10          THE COURT:  Did you --

11          MS. NORA:  I mean, sorry, the 5th of Jan --

12          THE COURT:  -- raise -- did you raise that issue with

13   Mr. Wishnew or Ms. Arett before this call?

14          MS. NORA:  No, Your Honor.  I had wanted to bring that

15   up as a part of the resolution --

16          THE COURT:  Well, do you think that perhaps you should

17   try -- not perhaps -- you're required to meet and confer in an

18   effort to resolve any discovery dispute before you get a

19   hearing before me.

20          And Mr. Wishnew what's the story on the availability

21   of the documents that were uploaded?

22          MR. WISHNEW:  Your Honor, I can speak with my

23   paralegal right after this call and get the Web site uploaded.

24   If Ms. Nora had reached out to myself or Ms. Arett on January

25   6th, and indicated that the Web site expired, and then we could

1 | have easily uploaded it.

2 |          In addition, hard copies were sent -- I'd have double

3 | check the dates.  But to suggest -- for Ms. Nora to suggest

4 | that we didn't meet and confer --

5 |          THE COURT:  Tell me, when did you send hard copy?

6 |          MR. WISHNEW:  It -- right.  So it was December 22nd,

7 | Your Honor.  Ms. Nora was making issue of the fact that this

8 | was being done electronically, and so we sent her hard copies

9 | as well.

10 |          THE COURT:  Do you have a mailing receipt or something

11 | to show that you sent her hard copy?

12 |          MR. WISHNEW:  I have to -- I'll have to go back to my

13 | records and check, Your Honor.

14 |          THE COURT:  Ms. Nora, are you representing that you

15 | never received the documents?

16 |          MS. NORA:  I did not, Your Honor.

17 |          THE COURT:  Okay.  When we get off this call, you need

18 | to speak -- counsel need to speak directly.  And I want to be

19 | sure that Ms. Nora has access to the documents today.  Okay.

20 |          Now, let's come back to this issue of restitution.

21 | Mr. Wishnew, do you want to address that issue?

22 |          MR. WISHNEW:  Sure, Your Honor.  With regards to

23 | restitution, my understanding of the UCL is that to the -- that

24 | restitution should be made for unlawful practices to prevent

25 | the use or employment of an unfair practice.  And so in my

1   mind, Your Honor, to the extent that there is a UCL claim, then

2   restitution could be relevant, but the UCL claim in this case

3   derives from the alleged misrepresentations made in November

4   2007.

5          What Ms. Nora is trying to delve into deals with

6   origination and securitization issues that are time barred.

7   And if she's talking about activities that post-date April

8   2008, that has nothing to do with the debtors, since we stopped

9   servicing the loan in April 2008.

10          As Your Honor is well aware, we are a liquidating

11   claims trust at this point in time.  There is no future contact

12   to be deterred.  So whether she's even entitled, or Ms. Smith

13   is even entitled to restitution under the UCL is a question in

14   and of itself.

15          THE COURT:  All right, let me make clear that any

16   discovery regarding the origination or securitization of the

17   loan is not a proper subject for discovery for this contested

18   matter.  The issues here focus on the events of November 2007

19   regarding Ms. Smith's effort to get a loan modification.

20          If she establishes her UCL claim, she certainly can

21   seek relief relating to those events.  But I'm not -- it should

22   be quite clear from my prior opinion, the bulk of her claims,

23   the objection was sustained and those claims were expunged.

24   What remains is the UCL claim relating to the matters in

25   November 2007.

1      Mr. Wishnew, were there investor guidelines with

2  respect to a loan modification at the time that Ms. Smith was

3  seeking one?

4      MR. WISHNEW:  Your Honor, we're only aware of

5  servicing guidelines.  We're not aware of specific investor

6  guidelines.

7      THE COURT:  Okay.

8      MR. WISHNEW:  And we did provide the servicing

9  guidelines.

10      THE COURT:  Did Homecomings, in November 2007, have a

11  practice with respect to whether a borrower had to be at least

12  three payments in arrears before the loan would be considered

13  for modification?  And here it was Homecomings that was

14  servicing it, so that really is the focus of the question, is

15  Homecomings.  Did Homecomings have a practice in or around

16  November 2007 requiring that a borrower be at least three

17  payments in arrears before they would qualify for a loan

18  modification?

19      MR. WISHNEW:  That would generally be my

20  understanding, Your Honor.  But I'd have to confirm with my --

21      THE COURT:  Is that set forth in the servicing

22  guidelines?

23      MR. WISHNEW:  I will have to go back and -- I'm not a

24  hundred percent certain, Your Honor.  I'd have to go back and

25  check the guidelines.

1    THE COURT:  Okay.  All right.  So Ms. Nora, anything
2  else you want to add, at this point?
3    MS. NORA:  Well, I'm looking very much forward to
4  having that Web site reactivated, Your Honor, because I did
5  not --
6    THE COURT:  Ms. Nora --
7    MS. NORA:  -- receive hard copies --
8    THE COURT:  -- Ms. Nora, you're going to get the
9  documents.  And Mr. Wishnew --
10    MS. NORA:  Thank you, Your Honor.
11    THE COURT:  -- check your records as to whether hard
12  copy was sent.  But get Ms. Nora access to the documents today.
13    MS. NORA:  So with respect to those documents, that
14  would include the servicing guidelines to which Mr. Wishnew
15  just referred, and it may also answer a lot of our questions
16  that we sought the meet and confer and had concerns about the
17  objections, because many of our answers will probably be in
18  those documents.  So --
19    THE COURT:  Mr. Wishnew --
20    MS. NORA:  -- it may all --
21    THE COURT:  -- are the servicing guidelines in the
22  documents that you provided?
23    MR. WISHNEW:  The servicing guidelines that we have
24  access to, Your Honor, are a part of the productions, yes.
25    THE COURT:  Okay.  All right.

1          MR. WISHNEW:  Your Honor, just to confirm, I

2    believe -- I'm sorry, Your Honor, if I cut you off?

3          THE COURT:  No, go ahead.

4          MR. WISHNEW:  I just wanted to confirm that at this

5    point, I believe the scheduling provides that we submit our

6    joint pre-trial order to Your Honor a week from tomorrow, the

7    21st, and then we have a final pre-trial conference on January

8    27th?

9          THE COURT:  That's correct.

10         MR. WISHNEW:  Okay.

11         THE COURT:  And the trial is on February 9th.

12         MR. WISHNEW:  Excellent.

13         THE COURT:  At 9 a.m.  My order remains in place.

14         MR. WISHNEW:  Thank you, Your Honor.

15         THE COURT:  This is the order of October 19th, 2015.

16         MR. WISHNEW:  Docket number 9267.

17         THE COURT:  Yes, it is.

18         MS. NORA:  And it's my understanding that we will be

19    able to put in evidence with respect to restitution?

20         THE COURT:  If your claim -- if the restitution that

21    you're seeking relates to the loan modification issues from

22    November 2007, the answer is yes.  Obviously until I see what

23    it is you're seeking to introduce and see whether the Trust has

24    objections, I'll rule on objections when the time comes.  But

25    the UCL claim for which restitution is an available remedy,

1   survived the Trust's objection as set forth in my prior

2   opinion.  And you can -- I'm not ruling -- I can't rule in the

3   abstract whether specific evidence comes in or not.  But

4   restitution is certainly an available form of relief under the

5   UCL.

6           MS. NORA:  Thank you, Your Honor.  Because we will

7   need expert testimony for --

8           THE COURT:  Well, you know --

9           MS. NORA:  -- our restitution.

10          THE COURT:  -- I'm sorry, Ms. Nora.  You came into

11  this case late.  The reason the case management order didn't

12  provide for expert discovery, none was sought.  Now you're

13  trying to change the rules.  Discovery is closed, Ms. Nora.

14  Discovery is closed.  You're entitled to the documents the

15  Trust sought to provide.  You've indicated that the Web site

16  expired.  So comply with the case management -- the pre-trial

17  order, and we'll go from there.  Okay?  The deadlines remain.

18          All right, so that's going to be my order based on

19  this hearing.  This is on the record, so I'm so ordering the

20  transcript.

21          MR. WISHNEW:  Thank you, Your Honor.

22          THE COURT:  Thank you.

23          MS. NORA:  Thank you, Your Honor.

24          THE COURT:  We're adjourned.

25          (Whereupon these proceedings were concluded at 10:37 AM)

1

2                                    I N D E X

3

4                                    RULINGS

5                                                        PAGE      LINE

6    The discovery dispute resolutions on the      23         19

7    record of the hearing are so ordered.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    C E R T I F I C A T I O N

3

4   I, Penina Wolicki, certify that the foregoing transcript is a

5   true and accurate record of the proceedings.

6

7

8

9

10

11   _____

12   PENINA WOLICKI

13   AAERT Certified Electronic Transcriber CET**D-569

14

15   eScribers

16   700 West 192nd Street, Suite #607

17   New York, NY 10040

18   Date:  January 14, 2016

19

20

21

22

23

24

25