**Hearing Date: February 9, 2016 at 9:00 a.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett

*Counsel for the ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**RESCAP BORROWER CLAIMS TRUST'S MEMORANDUM
OF LAW IN SUPPORT OF THE TRUST'S OBJECTION TO CLAIM NUMBERS 3889,
4129, 4134, AND 4139**

ny-1219819

**TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:**

In accordance with the Joint Pretrial Order [Docket No. 9533], the ResCap Borrower Claims Trust (the "Trust"), as successor in interest to the above-captioned debtors (the "Debtors") with respect to Borrower Claims, hereby files this pretrial memorandum in support of the *ResCap Borrower Claims Trust's Sixty-Ninth Omnibus Objection to Claims (No Liability Borrower Claims)* [Docket No. 7188] (the "Objection") as to claim numbers 3889, 4129, 4134, and 4139 filed by Tia Danielle Smith (the "Claims").

## SHORT PREVIEW OF THE ESSENTIALS OF THE CASE

1. On November 9, 2012, Tia Danielle Smith (the "Claimant" or "Ms. Smith") filed the Claims seeking recovery for alleged wrongdoing on the part of debtors Homecomings Financial, LLC ("Homecomings"), GMAC Mortgage, LLC ("GMACM"), Residential Funding Company ("RFC") and Residential Accredit Loans, Inc. ("RALI"). After an initial hearing, the Court issued a *Memorandum Opinion and Order Sustaining in Part and Overruling in Part Objection to Claims 3889, 4129, 4134, and 4139 Filed by Tia Smith* [Docket No. 7598] (the "Order") which sustained the Objection to the Claims as to all but one cause of action. In the Order, the Court identified one limited factual issue related to Ms. Smith's claim under the California Business & Professional Code, referred to as the "unfair competition law" (the "UCL"). The specific contested factual issue underlying the UCL claim was "whether [the Claimant] was instructed that she had to default on her Loan to qualify for a loan modification." See Order at 27.

2. At trial, the Trust will show that the Claimant, who has the burden of proof, is not entitled to any recovery on account of the UCL claim because the Claimant cannot demonstrate that the Debtors acted improperly with regard to her loan. Moreover, even if the

1

alleged wrongdoing can be shown, the UCL does not provide for any remedy that is available to the Claimant in this Court. Specifically:

- The Debtors' books and records show that no conversation occurred between the Claimant and any Debtor in November 2007 (the period the Claimant alleges she was told to default on the Mortgage Loan), and the Claimant has not put forward any evidence to demonstrate that such conversation occurred.

- The Debtors' books and records indicate that the Claimant told the Debtors in multiple phone conversations in February and March 2008 that she was unable to afford her monthly payments, which is supported by the Claimant's bank statements from that period.

- In the alternative, even if the Claimant could demonstrate that she was told by Homecomings to go into default on the Mortgage Loan, the only remedies available under the UCL are injunctive relief and restitution. However, neither of these remedies are available to the Claimant. Injunctive relief is not a form of relief that can be ordered by the Bankruptcy Court, and the Claimant cannot show she is entitled to restitution because she cannot show that she gave something up to any Debtor that she was otherwise entitled to keep.

## ISSUES TO BE TRIED

3. Whether Claimant was instructed by a representative of Homecomings and/or GMACM that she had to skip three (3) monthly payments in order to qualify for a loan modification, whether the instructions to skip three (3) months of payments was fraudulently made in order to create the appearance of default, and whether such purported instruction constitutes a violation of California Business & Professions Code Section 17200, et seq.

4. The extent of restitution for losses and disgorgement of profits to which Claimant is entitled as the result of the alleged misrepresentation that she would have to miss three (3) months of payments in order to qualify for a loan modification to be allowed under the California Business & Professions Code Section 17200, et seq.

## ANALYSIS OF THE LAW AND FACTS

5.     On or about November 9, 2012, the Claimant filed the Claims against GMACM (Claim No. 3889); Homecomings (Claim No. 4129); RFC (Claim No. 4134) and RALI (Claim No. 4139), each asserting a general unsecured claim in the amount of $3,000,000. See Exhibit R to the *Declaration of Deanna Horst in Support of the ResCap Borrower Clams Trust's Reply in Support of Its Sixty-Ninth Omnibus Objection to Claims (No-Liability Borrower Claims) as to Claim Nos. 292, 1279,1466, 3889, 4129, 4134, and 4139* (the "Supp. Decl."). In Box 2 of each proof of claim form (Basis for Claim), the Claims provide that the basis for the claim is "Predatory Lending, Wrongful Foreclosure." See id.

6.     On or around December 2, 2006, American Mortgage Network, Inc. ("AMN") originated a loan to the Claimant (the "Mortgage Loan") in the amount of $556,000, secured by a deed of trust on 4011 Hubert Ave., Los Angeles, CA 90008 (the "Property"). See Note and Deed of Trust. RFC purchased the loan from AMN, and the loan was subsequently securitized where Deutsche Bank Trust Company Americas ("Deutsche") was appointed trustee on or about January 30, 2007 (the "Securitization Trust"). See Endorsed Note, showing a chain of endorsement from AMN to Deutsche, attached to the Claimant's Response to the Objection [Docket No. 7300] as Exhibit 6.

7.     Homecomings serviced the loan from December 29, 2006 until servicing was transferred to Aurora Loan Servicing ("Aurora") on April 1, 2008. See Servicing Notes.

8.     Smith did not make the January 1 or February 1, 2008 payments on the Mortgage Loan. See Servicing Notes at 1 of 15. On February 1, 2008, a Homecomings representative spoke with Claimant, at which time Claimant advised that she was not able to make any payments that day because her business is slow. See Servicing Notes at 5 of 15.

ny-1219819

9. On February 8, 2008, a Homecomings representative again spoke with Claimant, at which time Claimant stated that her business is really slow and she would not be able to make a payment until March 13, 2008. See Servicing Notes at 5 of 15. Homecomings sent a letter to Claimant on or around February 11, 2008, detailing the options available to her to avoid foreclosure. See Options to Avoid Foreclosure Letter.

10. On February 11, 2008, a representative of Homecomings also spoke to Claimant, at which time Claimant stated that she could not make a payment at that time because she did not have sufficient funds. See Servicing Notes at 5 of 15. A representative of Homecomings again spoke to Claimant on or around February 13, 2008, at which time Claimant stated that she had been having problems with her business and she was not able to make a payment on that date. See id.

11. On February 22, 2008, another representative of Homecomings spoke to Claimant, at which time Claimant stated that she did not have sufficient funds to make a payment because her mother, who had been assisting her with the payments, had moved out. See Servicing Notes at 4 of 15.

12. On or around March 3, 2008, Homecomings sent a letter to Claimant informing her that by not making her payments, she was in breach of the Mortgage Loan. See Breach Letter.

13. On March 10, 2008, a representative of Homecomings spoke to Claimant, at which time Claimant stated that she had made some bad investments in the stock market and her mother, who had been living with her and helping her with her payments, had moved out in October 2007 and as a result she was not able to make a payment at that time. See Servicing Notes at 3 of 15. During this conversation, Homecomings set up a repayment plan for the

4

ny-1219819

Claimant, and the Claimant provided bank information to make a payment over the phone. See id.

14. On March 14, 2008, Homecomings sent a letter to Claimant informing her that effective April 1, 2008, servicing of the Mortgage Loan would transfer to Aurora. See Goodbye Letter.

15. On or around March 17, 2008, Claimant remitted the payment made over the phone on March 10, 2008, making the account due for the February 1, 2008 payment. See Servicing Notes at 1 of 15.

16. At the time the servicing of the Mortgage Loan was transferred to Aurora on April 1, 2008, the Mortgage Loan was in default. See Servicing Notes at 1 of 15.

17. No Debtor entity ever commenced any foreclosure proceeding against the Claimant, and the Claimant has always resided in the property. See Joint Pretrial Order, Stipulated Fact 5.

**The Claimant Has Failed to Demonstrate There Was a Violation of the UCL**

18. The UCL prohibits any person from engaging in unfair competition, which is defined to include "any unlawful, unfair or fraudulent business act or practice . . . ." CAL. BUS. & PROF. CODE § 17200 (Deering 2015). The only remaining open issue is whether Homecomings violated the UCL by allegedly advising her to go into default on her Mortgage Loan by missing three payments.

19. The Claimant alleges that in November 2007, she was told by a representative of Homecomings that she would need to skip three mortgage payments in order to qualify for a loan modification. See Joint Pre-Trial Order, Claimant's Contention 13. However, the evidence will show a very different story. The Debtors' servicing notes, which are a record

5

of all calls with the Claimant, do not contain any record of any conversations with the Claimant in October, November, or December 2007.  See Servicing Notes at 6-8 of 15.

20. Additionally, the six telephonic conversations with the Claimant in February and March 2008 show that representatives of Homecomings were attempting to get the Claimant to make payments on the Mortgage Loan, and that the Claimant stated that she could not afford to make payments at those times.  Furthermore, a review of the Claimant's financial records, including her bank statements and credit card statements from that time, show that she did not have sufficient funds in her checking account to make payments on the Mortgage Loan (in fact, during certain months, her checking account balances were negative), and that she also had relatively high balances on her credit cards.

21. These two pieces of evidence (the phone conversations and the financial statements) demonstrate that the Claimant did not fail to make her January and February 2008 payments because she was told not to, but that the real reason she was not making payments was that she could not afford to make them.  This is further supported by the fact that the Claimant did make a payment on March 17, 2008, before she would have been three months delinquent.  As a result, the Claimant has failed to allege the Debtors engaged in any unlawful, unfair or fraudulent business act or practice that would support a cause of action under the UCL.

### Relief Provided by the UCL is Not Available to the Claimant

22. Even if the Claimant could prove that the reason she did not make her mortgage payments was that she was told not to, there is no available remedy to her under the UCL.  "A UCL action is equitable in nature; damages cannot be recovered."  Korea Supply Co. v. Lockheed Martin Corp., 63 P.3d 937, 943 (Cal. 2003). (citing Bank of the West v. Superior Court, 833 P.2d 545 (Cal. 1992)).  Under the UCL, "[p]revailing plaintiffs are generally limited

6

ny-1219819

to injunctive relief and restitution." Id. (citing Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 973 P.2d 527 (Cal. 1999)).

23. Bankruptcy Code section 502(b) provides that in connection with allowing or disallowing proofs of claim, the Court "shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount . . . ." 11 U.S.C. § 502(b). Bankruptcy Code section 502(b) makes no provision for granting of equitable relief. Instead, the Bankruptcy Code and Bankruptcy Rules require that requests for an injunction be sought through an adversary proceeding. See Fed. R. Bankr. P. 7001(7). Consequently, even if Claimant had provided a basis for injunctive relief under the UCL, such relief is inappropriately sought through the claims allowance process.

24. Furthermore, Claimant cannot obtain restitution because Homecomings has not acquired any property from Claimant that Claimant was otherwise entitled to keep. For restitution to be available, the "offending party must have obtained something to which it was not entitled *and* the victim must have given up something which he or she was entitled to keep." Day v. AT&T Corp., 74 Cal. Rptr. 2d 55, 64 (Cal. Ct. App. 1998) (emphasis in original). As admitted by the Claimant, the Debtors did not foreclose on the Property prior to transferring servicing of the Mortgage Loan to Aurora. See Response to Request for Admission #20. Therefore, the only thing ever obtained from the Claimant by the Debtors were the payments the Claimant made to the Debtors as servicers of her loan. The Claimant cannot assert that she was entitled to keep these payments, as they were payments the Claimant was legally obligated to make pursuant to the terms of the Note and Deed of Trust. See Note, Section 3 and Deed of Trust, Section 1. As a result, the Claimant was not deprived of any property she was not entitled to keep, and therefore, is not entitled to any restitution under the UCL.

7

## CONCLUSION

25. The Claim must be disallowed and expunged. The Claimant has failed to demonstrate any wrongdoing on the part of any Debtor entity. As a result, the Objection to the Claim should be sustained.

Dated: January 26, 2016

/s/ Norman S. Rosenbaum
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the ResCap Borrower Claims Trust*

8

ny-1219819