UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____

RESIDENTIAL CAPITAL, LLC, et al.,
   Post-Effective Date Debtors                          Chapter 11

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

RESCAP BORROWER CLAIMS TRUST,          Case No. 12-12020-mg
   Objector

v.

TIA DANIELLE SMITH,
   Creditor-Beneficiary

_____

DECLARATION UNDER PENALTY OF PERJURY
AS DIRECT TESTIMONY OF TIA DANIELLE SMITH

_____

Tia Danielle Smith declares, under penalty of perjury pursuant to 28 U.S.C. sec. 1746:

1. In 2006, I was seeking to refinance the existing mortgage on my Homestead located at 4011 Hubert Avenue, Los Angeles, California 90008, where I had resided since January, 2003.

2. I believed that I was applying for a conventional mortgage loan to refinance when I was orally interviewed by Walter Hernandez of Walmar Financial Group on or about October 6, 2006.

3. A notary public was dispatched to my home and I was presented with documents, including a Note and a Deed of Trust.

4. The Note identifies the Lender as American Mortgage Network, Inc. and defines "Note Holder" as "anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'"

5. I was not informed that the Note would be used as collateral for a securities offering by unidentified third parties.

1

6.  I am now informed and believe that the Note and Deed of Trust I signed on December 2, 2006 were collateral for the issuance of securities by third parties and those third parties were not disclosed to me before I signed the Note and Deed of Trust on December 2, 2006, or at any other time by anyone involved in what I now understand was a process known as "securitization."

7.  I was not asked to consent, nor did I consent, to the electronic transmission of my Note and Deed of Trust.

8.  When I signed what I now know to be collateral documents for a securities offering, which was never disclosed to me,  I did not notice that the Note and Deed of Trust were dated November 13, 2006.

9.  I dated the Deed of Trust with the correct date when I signed it.


10.  Had I known that the collateral documents were intended to be re-sold multiple times in the process known as securitization, with profits being taken by each then-unidentified participant in the securitization, I would have declined to enter into the transaction because such a process was unfamiliar to me.

11.  I did not know what a "loan originator" was or what  "servicing rights" were; those terms were never used on the date of the closing when I signed the Note and Deed of Trust.

12.  I was informed and believed that the Lender was American Mortgage Network, Inc., because it was identified as the Lender in the Note and Deed of Trust.

13. American Mortgage Network, Inc. had my permission to transfer the Note because I signed the Note containing the language that the Note could be transferred and anyone who takes

the Note by transfer and is entitled to receive payments under the Note is called the "Note

Holder."

14.    I received a letter dated December 30, 2006 entitled Notice of Assignment, Sale, or

Transfer from American Mortgage Network, informing me that the "servicing rights" to my

mortgage loan would be transferred to Homecomings Financial, LLC effective February 1, 2007.

15.    The letter from American Mortgage Network, Inc. defined "servicing rights" as the

right to collect payments.

16.    The plain meaning of the word "collect" in the context of "payments" means to

"receive payment."

17.    I did not know that there was a difference between collecting payments and

receiving payments by custom and usage in the specialized trade of mortgage transfers and the

plain and ordinary meaning of "collect" means to "receive payments."

18.    I applied the ordinary meaning of the word collect, which means to receive, and the

Note provides that the Note Holder is anyone who takes the Note by transfer and is entitled to

receive the payments under the Note.

19.    I reasonably believed that effective February 1, 2007, Homecomings would be the

"Note Holder," because American Mortgage Network, Inc., to whom I was making my mortgage

payments, told me that Homecomings would be collecting my payments.

20.    Effective with the February 1, 2007 payment, I made my monthly payments to

Homecomings.

21.    On September 13 or 15, 2007 (the second digit of the date is illegible in my

contemporaneous note), I called Homecomings to discuss a loan modification.

3

22.   I called Homecomings because I reasonably believed that Homecomings was the Note Holder who had taken my Note by transfer and was entitled to receive my payments.

23.   On September 13 or 15, 2007, I spoke to "Amerivan" of Homecomings about a possible modification of my payments who told me that I would have to miss 3 months payments in order to be eligible for a loan modification.

24.   It did not make sense to me that I would have to miss any payments in order to seek a loan modification because I reasonably believed that anyone who had the right to receive payments on a monthly basis would want to receive those payments, even while discussing a modification in the terms of the payments.

25.   In October, 2007, my mother, who had been living in my home, moved to another location.

26.   In mid-November, 2007, I called the number for "Homecomings" at which I had spoken to Amerivan in September, 2007 and talked to Miriam about a loan modification.

27.   Miriam told me that I would have to be 3 months behind in my mortgage payments in order to be considered for a loan modification.

28.   Effective January 1, 2007,  I decided to skip 3 months mortgage payments in order to be able to apply for a loan modification, as I had been informed was necessary by Amerivan and Miriam of "Homecomings."

29.   In the month of March, 2008, after I had skipped the 3 monthly mortgage payments (January, February and March, 2008), I received a letter from Aurora Loan Services, LLC which informed me

This letter is to notify you that the servicing or your mortgage loan is being assigned, sold

4

or transferred from Homecomings Financial, LLC to Aurora Loan Services ("Aurora"), effective April 1, 2008. The transfer of your mortgage loan to Aurora includes the right to collect payments from you.

30.    I then reasonably believed that Aurora Loan Services, LLC would be the Note

Holder effective April 1, 2008 for the same reason I had earlier believed that Homecomings

became the Note Holder effective February 1, 2007.

31.    My attempt to meet the supposed pre-qualification for a loan modification by

skipping the requisite 3 monthly payments was used to establish that I was in default as of the

date of transfer of the loan payments from Homecomings to Aurora.

32.    On October 1, 2009, the Deed of Trust I had executed in favor of the "Lender,"

American Mortgage Network, Inc., was assigned to Aurora Loan Services, LLC by Theodore

Schultz, in his claimed capacity as Vice President of Mortgage Electronic Registration Systems,

Inc.

33.    Theodore Schultz was not a Vice President of Mortgage Electronic Registration

Systems, Inc., but was an employee of Aurora Bank, FSB from September, 2002 until July,

2012.

34.    On October 1, 2009, Theodore Schultz was "AVP, Records Management" for Aurora

Bank, FSB in Scottsbluff, Nebraska.

35.    Theodore Schultz' public admission against interest that he was not Vice President of

Mortgage Electronic Registration Systems, Inc. is published at

 https://www.linkedin.com/in/theo-schultz-2619b766

and states that his employment position on October 1, 2009 was

5

**AVP, Records Management**
Aurora Bank FSB
February 2009 – October 2010 (1 year 9 months) | Scottsbluff, Nebraska
Received promotion to role of AVP, Records Manager, with responsibility over four key
Records departments, including: Assignments, Document Control, Final Documents, and
Releases.
Responsibility included oversight over department time-sensitive Compliance (delivery
timing) requirements, plus four Supervisors and approximately 30 employees. During
Records Management tenure, oversaw consistently-improved productivity with
exceptionally-low Associate turnover.

36.  Effective June 5, 2013, Aurora Bank, FSB liquidated all of its assets and ceased to

exist.

37.  Theodore Schultz is presently employed as a Senior Financial Analyst by Nationstar

Mortgage and his Linked In Profile states:

**Senior Financial Analyst**
Nationstar Mortgage
April 2013 – Present (2 years 10 months) | Scottsbluff, NE
I'm pleased to presently support Nationstar Mortgage, the fifth largest Residential
Mortgage Servicer in the country. Responsibilities include management of Rating Agency
relationships, maintenance and update of the Company Servicing presentation, and
support of other significant, external Client and Nationstar Finance team objectives.
Mortgage Servicing Professionals: If considering a career move, check out Nationstar, as
you will be impressed by Nationstar's products, people, and performance.

38.  I have represented myself without the benefit of counsel in the California Court

System since July, 2011 and understand that the Note Holder is the party entitled to the payments

and performance of the Deed of Trust (security agreement.)

39.  Since 2009, I have been diligently seeking the identity of the Note Holder.

40.  I was informed by a response to a Qualified Written Request (QWR) that I sent to

Aurora Loan Services, LLC that my loan was owned by Deustche Bank Trust Company

Americas as Trustee.

6

41. I have personally reviewed all of the RALI Series 2007-QO1 filings with

the SEC, some of them on multiple occasions.

42. On September 28, 2007 an 8-K Form was filed with the SEC by Residential Funding

Company, LLC (RFC) as Master Servicer of the RALI Series 2007–QO1 Trust, dated September

27, 2007 and signed by RFC Director Darsi Meyer, which informed the SEC and the public that

effective September 24, 2007

> Residential Capital, LLC ("ResCap"), which owns indirectly all of the equity of both
> Homecomings and GMACM, has restructured the operations of Homecomings and
> GMACM. As a result of such restructuring, on September 24, 2007, Homecomings
> transferred its servicing platform and certain employees responsible for the
> servicing function to its affiliate GMACM.

> Subsequent to the transfer of the servicing platform and employees from Homecomings
> to GMACM, GMACM became the subservicer for all of the mortgage loans owned by
> the Issuing Entity, and Homecomings will no longer service any of the mortgage loans. In
> addition, GMACM will be servicing all of the GMACM and Homecomings servicing
> portfolios, which will consist of the aggregate of the amounts set forth below under the
> headings "GMAC Mortgage LLC Primary Servicing Portfolio" and "Homecomings
> Financial, LLC Servicing Portfolio."

43. According to the foregoing published statement that RFC was Master Servicer

(which is also a judically noticeable adjudicative fact) on September 13 or 15, 2007, when I

called Homecomings, I reached Homecomings and spoke to Amerivan of Homecomings and in

mid-November, 2007 when I called Homecomings and spoke to Miriam, I reached Miriam of

GMAC Mortgage, LLC (GMACM).

44. I never received a Notice of Assignment, Sale or Transfer of "servicing rights" from

Homecomings to GMACM and the Notice of Assignment, Sale or Transfer of "servicing rights"

from Homecomings or GMACM to Aurora Loan Services, LLC.

45. Aurora's letter of March 18, 2008 was false because it failed to identify what I now

know was an intervening mortgage servicing agent, GMACM.

46.  Aurora Loan Services, LLC was never the Note Holder.

47.  Aurora Bank, FSB may have been the Note Holder, but, based on the evidence produced in discovery, the endorsement stamp bearing the signature of Judy Faber as Vice President of Residential Funding Company, LLC (RFC) is materially false and misleading.

48.  It is now known, since January 13, 2016, that Judy Faber was never an employee of RFC, let alone its Vice President.  She was at all times a document manager in the Imaging Department of GMACM.

49.  Ms. Faber's false endorsement stamp provided the appearance that the Note had been transferred by negotiation by an authorized officer of RFC.

50.  I was misled in my efforts to ascertain the identity of the Note Holder, with whom I could negotiate a modification of my loan payments since the date of the original loan closing transaction by Ms. Faber's false signature stamp because I assumed it was valid and that the Note had been lawfully transferred.

51.  My determination to find the identity of the entity to whom my payments should be made and who had the actual, lawful authority to modify my loan after I was declared to be in default following the instructions of Homecomings and then GMACM eventually led to the filing of my action in the Superior Court for the State of California, County of Los Angeles, in which the Third Amended Complaint and all Exhibits were filed.

52.  While seeking to identify the real party in interest to receive my payments and modify the structure of  my payments, I was unable to show who the Note Holder was in order to bring the Note Holder into the action to respond to my claims and defenses and/or restructure my

8

payments so that I could retain my interests in the title to my Homestead.

53.  When the RESCAP Bankruptcy was filed, four (4) of the proper parties to the
California State Court action were protected by the automatic stay, which prevented the chain of
title issues from being fully and fairly adjudicated.

54.  Since I signed the Note and Deed of Trust on December 2, 2006, the following
entities had appeared to have an interest in my Homestead and in receiving the payment or
performance of the security interest:

a. American Mortgage Network (December 2, 2006 Note)

b. RALI 2007-QO1 (April 11, 2008 letter from Aurora, Exhibit H, Smith Third Amended
Complaint (TAC)

c.  Aurora Loan Services, LLC (on multiple loan modifications proposals transmitted by
Aurora, Exhibits O-S, TAC)

d. Deutsche Bank Trust Company Americas, as Trustee (for an unidentified trust)
(November 9, 2009, Response to QWR, TAC, Exhibit T)

e. Deutsche Bank National Trust Company Americas, as Trustee (for an unidentified
trust) (August 23, 2011, Exhibit W)

f. Aurora Bank, FSB which issued a 1099-A to Claimant, which she received between
December, 2011-January, 2012 (TAC, Exhibit N)

g. Deutsche Bank National Trust Company Americas, as Trustee (a nonexistent entity)
(retrieved, June 19, 2012 from the MERS® System database, TAC, Exhibit M)

h.  Aurora Loan Services, LLC (per October 25, 2012 judicial admission of Laurie
Howell, Attorney for Aurora Loan Services,  who states that "Deutsche Bank" is the
investor who provided the funds for the loan, not the Lender or Beneficiary for purposes
of the Note and Deed of Deed)

i.  Wachovia, first identified in the electronic document production as Doc. 39 on January
13, 2016 as the entity which owned the Note and Deed of Trust on December 18, 2006
and which was arranging to sell the collateral documents to RFC through JP Morgan
Chase, demonstrating the RFC had contracted to purchase the collateral documents

j.  RFC, according to SEC filings, purchased the collateral documents and would have been the Note Holder for a period of time

k.  RALI, according to SEC filings, purportedly purchased the collateral documents for "deposit" into the RALI 2007-QO1 Trust

55.  On or around April 1, 2008, servicing of the payments under the collateral documents was transferred to Aurora, but I then believed that Aurora Loan Services, LLC was the Note Holder, based on the ordinary meaning of the words in the March 18, 2008 letter.

56.  The April 11, 2008 letter from Aurora Loan Services, LLC identifies "The current creditor to whom the Mortgage loan debt is owed: RALI 2007-QO1" but I did not know what a "RALI 2007-QO1" was and since Aurora stated it was the current servicer, I understood the term servicer to be the entity entitled to collect/receive payments.   I thought RALI 2007-QO1 was code referencing something internal within Aurora.  There was no reference to a Trust or the Trustee of a Trust.

57.  I skipped the January, 2008 payment because I had been instructed to do so by "Miriam," of GMACM, pretending to represent Homecomings.

58.  The *GMAC RFC 2007 Selling and Servicing Guide* confirms the fact that Homecomings was no longer servicing the payments and may never have actually been the subservicer of my payments under the collateral documents effective February 1, 2007 or may have been removed earlier by RFC.

59.  RFC had the final decision-making authority to grant or deny a loan modification, according to the *GMAC RFC 2007 Selling and Servicing Guide*, but I did not know that RFC was involved until June, 2011.

60.  I am informed and believe that the RESCAP Debtors Homecomings, GMACM,

10

RFC and Residential Accredit Loans, Inc. (RALI) profited from the securitization of my

collateral documents and I am aware that even now the RESCAP Liquidating Trust is seeking

performance on a guarantee from Wells Fargo Bank, N.A. based on the default into which I was

engineered in the United States District Court for the District of Minnesota Case No. 14-cv-1544

(judicial notice requested)  and is demanding payment under the guarantee, claiming that it might

be required to repurchase the collateral documents American Mortgage Network, Inc. acquired

from me and sold for a commission to Wachovia Bank, N.A., which purportedly sold the

documents and rights thereunder to RFC, which purportedly sold the documents and rights

thereunder to RALI for deposit into the RALI Series 2007-QO1 Trust, even though Aurora filed

false documents to pursue foreclosure and, in fact, foreclosed by a Trustee's sale in 2011.

61.  The Prospectus for the RALI Series 2007-QO1 Trust states that one of the credit

enhancements is a fraud insurance policy.  It is reasonable to believe that the fabricated Credit

Application dated three (3) days after the "mortgage" closing was created to make a claim for

fraud insurance, as well as to falsely promote the "deal" using my collateral documents as being

appropriately underwritten.

62.  I now understand that the default into which I was engineered would result in

payment of various insurance policies, far in excess of the face value of my collateral documents,

and as a result, I have thus far been unable to have my interests in the title to my Homestead

restored–all because the RESCAP Debtors wanted a quick liquidation of the obligation from

insurance policies at the expense of my interests in my Homestead.

63.  All documents which are publicly recorded and registered or which are identified in

my Third Amended Complaint and which I will seek to admit into evidence are true and correct

copies of the documents, even if the documents themselves will be identified by my counsel on my behalf as being false or fabricated, in which case they are true and correct copies of false and fabricated documents.

64.   The documents in support of my claim for restitution of costs arising from the unfair, unlawful and fraudulent practices of the RESCAP Debtors which I have produced are likewise true and correct.

65.   For disgorgement of profits, I offer the testimony of M. Nawaz Raja.

66.   I reserve the right to modify, amend or add factual statements as necessary to further establish the validity of my Proofs of Claim either by Supplemental Declarations or live testimony, subject to cross-examination.

Dated at Los Angeles, California this 26th day of January, 2016.


*/s/ Tia Danielle Smith*

_____
Tia Danielle Smith