IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT NEW YORK

In re:                                        Case No. 12-12020 (MG)
RESIDENTIAL CAPITAL, LLC, et al.              Administratively Consolidated
     Debtors

RICHARD D. RODE                               **JURY TRIAL DEMANDED ON**
2301 West Lawther Drive                       **DAMAGES CLAIM**
Deer Park, Texas 77536,

and                                                        Adv. No.

TIA DANIELLE SMITH
4011 Hubert Avenue
Los Angeles, California 90008,
individually, and as proposed Representative
Plaintiffs for the Class of Similarly Situated
Homeowners whose Claims have been Subjected to
Post-Confirmation Objections to Proofs of Claim filed by the
RESCAP Borrower Claims Trust, a Delaware Statutory Trust,
as alter ego of the Debtors or as successor in interest
to the RESCAP Liquidating Trust, a Delaware Statutory Trust, alter ego or
successor in interest to the Debtors,
     Plaintiffs
v.

RESCAP BORROWER CLAIMS TRUST, a Delaware Statutory Trust,
registered with the Secretary of State for the State of Delaware on December 12, 2013,
by Peter S. Kravitz, its Trustee, with
Province East LLC, as Registered Agent,
by Peter S. Kravitz, Registered Agent, at
222 Delaware Avenue Suite 1101
Wilmington, Delaware 19801;

RESCAP LIQUIDATING TRUST, a Delaware Statutory Trust,
registered with the Secretary of State for the State of Delaware on December 10, 2013,
originally created on July 26, 2013 as a Non-Statutory Common Law
Trust by John S. Dubel, co-chair of the Committee
of Unsecured Creditors, appointed in these underlying
proceedings on May 16, 2012, with

1

Wilmington Trust, N.A., as Registered Agent at
Rodney Square North
1100 North Market Street
Wilmington, Delaware 19890;

WILMINGTON TRUST, N.A.
Attention: Donald E. Foley, CEO & Chairman or
Robert V.A. Harra Jr., President & COO
Rodney Square North
1100 North Market Street
Wilmington, Delaware 19890;

DEUTSCHE BANK TRUST COMPANY AMERICAS, N.A.
Attention: JOHN DOE 1 or JANE DOE 1, President and/or CEO
Wall Street Branch
60 Wall Street
New York, New York 10005;

THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.
Attention: Scott Poster, CEO, and/or Antonio I. Portuondo, President, or their successors,
400 South Hope Street
Suite 400
Los Angeles, CA 90071;

MBIA INSURANCE CORPORATION, a New York Insurance Company
1 Manhattanville Road #301
Purchase, New York 10577;

ROWENA L. DRENNEN, individually and as a member of the Unsecured Creditors Committee
and as a member of the RESCAP Borrower Claims Trust Committee,
Last Known Address:
3725 N. Indiana
Kansas City, Missouri 64117;

AIG ASSET MANAGEMENT (U.S.), LLC, a Delaware Corporation
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801;

U.S. BANK, N.A.
Richard K. Davis, President
425 Walnut Street
Cincinnati, Ohio 45202;

ALLSTATE LIFE INSURANCE COMPANY
3075 Sanders Road
Northbrook, Illinois 60062-7127;

FINANCIAL GUARANTY INSURANCE COMPANY, a Delaware Corporation
125 Park Avenue
New York, New York 10017;

MORRISON & FOERSTER, "LLP," purporting to be a
        California Limited Liability Partnership per its registration with the
        Secretary of State for the State of New York,
        (No record of registration with the California
        Secretary of State has been located as of December 26, 2015),
        as attorneys for the Debtors and their purported successor in interest,
        the RESCAP Borrower Claims Trust,
425 Market Street
San Francisco, California 94105
Registered Agent: RESIGNED per New York Secretary of State;

KRAMER LEVIN NAFTALIS & FRANKEL, LLP, as attorneys for the
COMMITTEE OF UNSECURED CREDITORS and as attorneys for the
        RESCAP Liquidating Trust
Attention: Charlotte Moses Fischman
1177 Avenue of the Americas
New York, New York 10036
Registered Agent: NONE per New York Secretary of State;

SILVERMAN ACAMPORA, LLP, retained by the Committee of Unsecured Creditors to
        represent the interests of "borrowers" in the Administratively Consolidated Main Case,
100 Jericho Quadrangle
Suite 300
Jericho, New York 11753
Registered Agent: NONE per New York Secretary of State;

JOHN S. DUBEL, individually and as former co-chair of the Committee of Unsecured Creditors,
        former CEO of Financial Guaranty Insurance Corporation and managing member of
        Dubel & Associates, LLC, a New Jersey limited liability company;

3

PETER S. KRAVITZ, individually and as Trustee of the RESCAP Borrower Claims Trust;

STEVEN MITCHELL, individually and as a member of the RESCAP Borrower Claims Trust
     Committee,
Address Unknown;

MERSCORP HOLDINGS, INC., a Delaware corporation;

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
     a Delaware corporation, in the third iteration as a bankruptcy remote,
     special purpose vehicle;

ALLY FINANCIAL, INC., formerly known as GMAC, LLC,  a Delaware corporation;

GMAC MORTGAGE GROUP, LLC, a Delaware limited liability company and the direct parent
company of RESIDENTIAL CAPITAL, LLC;

RESIDENTIAL CAPITAL, LLC, a Delaware limited liability company;

RESIDENTIAL ACCREDIT LOANS, INC., a Delaware corporation;

GMAC MORTGAGE, LLC, a Delaware limited liability company;

RESIDENTIAL FUNDING COMPANY, LLC, a Delaware limited liability company;

HOMECOMINGS FINANCIAL, LLC, a Delaware limited liability company;

EXECUTIVE TRUSTEE SERVICES, a Delaware limited liability company;

OCWEN LOAN SERVICING, LLC, a Delaware limited liability company;

AURORA LOAN SERVICES, LLC, a Delaware limited liability company;

AURORA BANK, FSB, a liquidated and no longer existing federal savings bank;

NATIONSTAR MORTGAGE, LLC, a Delaware limited liability company;

WELLS FARGO BANK, N.A., (WELLS FARGO),  a national banking association;

WELLS FARGO BANK, N.A., as successor by merger to WACHOVIA BANK, N.A., as
successor in interest to SOUTHTRUST MORTGAGE CORPORATION;

WELLS FARGO BANK, N.A., as parent company of AMNET, LLC, successor in interest to

4

American Mortgage Network, Inc. and American Residential Investment Trust, Inc, which also merged into AMNET, LLC;

KATHY PRIORE, Associate Counsel for The ResCap Liquidating Trust (the "Liquidating Trust")

DEANNA HORST, Chief Claims Officer  for The ResCap Liquidating Trust (the "Liquidating Trust")

JUDY FABER, individually and in her former capacity as an employee of GMAC Mortgage, LLC;

DONNA FITTON, individually and in her former capacity as an employee of Executive Trustee Services, LLC;

THEODORE SCHULTZ, individually and in his capacity as an employee of Aurora Loan Services, LLC;

JUDY LAST NAME UNKNOWN, identity claimed to be unknown by the RESCAP  Borrower Claims Trust;

JOHN DOES 1-100;

JANE DOES 1-100; and

CORPORATIONS ABC-XXYYYZZZ,
    Defendants.

---

## PRELIMINARY COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF (DAMAGES CLAIMS FOR CAUSES OF ACTION OTHER THAN BREACH OF FIDUCIARY DUTY EXPRESSLY RESERVED)

---

**NOW COME** Richard D. Rode and Tia Danielle Smith, individually, and as proposed lead class plaintiffs by their attorney, Wendy Alison Nora of ACCESS LEGAL SERVICES, and for their Complaint, allege and show the Court:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over these proceedings under 28 U.S.C. sec. 1334(a), by

5

reference from the United States District Court for the Southern District of New York pursuant

to 28 U.S.C. sec. 157(a), and these proceedings arise under Fed. R. Bankr. P. 7001(1), (8), and

(9) and, to the extent necessary, 11 U.S.C. sec. 105(a) and Fed. R. Bankr. P. 9024 (incorporating

Fed. R. Civ. P. 60(b)(2) and (3) and (d) by reference therein).

    2.  This is a core proceeding under 28 U.S.C. sec. 157(b)(2)(A), (B) and (K), which

provide:

> (b) (1) Bankruptcy judges may hear and determine all cases under title 11 and all core
> proceedings arising under title 11, or arising in a case under title 11, referred under
> subsection (a) of this section, and may enter appropriate orders and judgments, subject to
> review under section 158 of this title.
>     (2) Core proceedings include, but are not limited to—
>       (A) matters concerning the administration of the estate;
>       (B) allowance or disallowance of claims against the estate or exemptions from
> property of the estate, and estimation of claims or interests for the purposes of
> confirming a plan under chapter 11, 12, or 13 of title 11but not the liquidation or
> estimation of contingent or unliquidated personal injury tort or wrongful death
> claims against the estate for purposes of distribution in a case under title 11;
>   . . .
>       (K) determinations of the validity, extent, or priority of liens; . . .

    3.  This Complaint includes a cause of action for damages for breach of fiduciary duty

and may be amended to include non-core proceedings for damages caused by violations of the

Racketeer Influenced and Corrupt Organizations Act (RICO) and for violations of the Plaintiffs'

civil rights and related state common law and statutory torts, for which the Plaintiffs will seek a

jury trial and, if consent of all parties to a jury trial is not given, Plaintiffs will seek to have the

reference to the Bankruptcy Court withdrawn.

    4.  Plaintiffs' rights to plead their non-core damages claims are expressly reserved against

all parties responsible therefor in any court of competent jurisdiction in which they will have

their constitutional rights to trial by jury preserved, whether under the Seventh Amendment to the

*Constitution of the United States*, constitutional provisions of the several states, or by statutory rights enacted in such states.

5.   Venue is proper in the Southern District of New York because the acts and omissions, events and occurrences complained of herein constituting breach of fiduciary duty took place in this District and are continuing.

6.   This Court may certify the class of homeowners whose claims have been subjected to post-confirmation objections filed by the RESCAP Borrower Claims Trust, created by the RESCAP Debtors in Possession and the Committee of Unsecured Creditors in breach of their fiduciary duties, and pursued by the Trustee of the RESCAP  Borrower Claims Trust, in breach of his fiduciary duties, to benefit the RESCAP Liquidating Trust, pursuant to Fed. R. Bankr. P. 7023.

## PARTIES AND PROSPECTIVE  PARTIES AND THEIR RELATIONSHIPS TO THE RELIEF REQUESTED AND THE PROPOSED FUTURE CAUSES OF ACTION

7.   Plaintiff Richard D. Rode (RODE) is an adult citizen of the State of Texas, whose Homestead is located at 2301 Lawther Drive in the City of Deer Park, in Harris County, Texas.

8.   Plaintiff Tia Danielle Smith (SMITH) is an adult citizen of the State of California, whose Homestead rights sought to be restored herein consist of a residential dwelling located at 4011 Hubert Avenue, in the City of Los Angeles, County of Los Angeles, California.

9.   Defendant RESCAP Borrower Claims Trust (CLAIMS TRUST) is a Delaware Statutory Trust, registered with the Secretary of State for the State of Delaware on December 12, 2013, of which Peter S. Kravitz, is Trustee, and Province East LLC, is identified as Registered Agent, and Peter S. Kravitz, is Registered Agent for Province East LLC, at 222

Delaware Avenue Suite 1101, Wilmington, Delaware 19801.  The CLAIMS TRUST is joined

for breach of fiduciary duty to the Plaintiffs.

10.   Defendant RESCAP Liquidating Trust (LIQUIDATING TRUST), is a Delaware

Statutory Trust, registered with the Secretary of State for the State of Delaware on December

10, 2013, originally created on July 26, 2013 as a Non-Statutory Common Law Delaware Trust

by John S. Dubel, co-chair of the Committee of Unsecured Creditors, appointed in the main case

on May 16, 2012, for which Wilmington Trust, N.A. is the Registered Agent located at

Rodney Square North, 1100 North Market Street, Wilmington,  Delaware 19890.  The

LIQUIDATING TRUST is joined for breach of fiduciary duty to the Plaintiffs.

11.   Defendant Wilmington Trust, N.A. (WILMINGTON TRUST),  is a national

banking association organized pursuant to 12 U.S.C. sec. 21, et seq, of which Donald E. Foley

is Chief Executive Officer and Robert V.A. Harra Jr. is President and COO; its headquarters is

located at Rodney Square North, 1100 North Market Street, Wilmington,  Delaware 19890;

WILMINGTON TRUST was appointed by the United States Trustee for the Southern District of

New York to serve on the Committee of Unsecured Creditors on May 16, 2012, was identified as

doing business at 50 South Sixth Street, Suite 1290, in Minneapolis, Minnesota 55402-1544 and

the appointment was directed to the attention of Julie J. Becker, Vice President.  WILMINGTON

TRUST is joined in its capacity as a member of the Committee of Unsecured Creditors for

breach of fiduciary duty to the Plaintiffs and as the Delaware Trustee of the CLAIMS TRUST for

breach of fiduciary duty to the Plaintiffs.

12.   Defendant Deutsche Bank Trust Company Americas, N.A. (DBTCA) is a national

banking association organized pursuant to 12 U.S.C. sec. 21, et seq. for which the identity of a

President or Chief Executive Officer has not been located at the time of this filing; DBTCA has

its headquarters at 60 Wall Street, New York, New York 10005; DBTCA was appointed by the

United States Trustee for the Southern District of New York to serve on the Committee of

Unsecured Creditors on May 16, 2012, was identified as doing business at Harborside Financial

Center, 100 Plaza One, Jersey City, New Jersey 07311-3901 and the appointment was directed to

the attention of Brendan Meyer. DBTCA is joined in its capacity as a member of the Committee

of Unsecured Creditors for breach of fiduciary duty to the Plaintiffs and, if the causes of actions

for non-core damages are pleaded by amendment in this action, for violations of the Racketeer

Influenced and Corrupt Organizations Act (RICO) at 18 U.S.C. sec. 1961, et seq., in concert with

Ally Financial, Inc. and its subsidiaries, using mail fraud (in violation of 18 U.S.C. sec. 1341)

and wire fraud (in violation of 18 U.S.C. sec. 1343) to injure the Plaintiffs' property rights by

operating the MERS®-GMAC RACKETEERING ENTERPRISE described herein.

13. Defendant the Bank of New York Mellon Trust Company, N.A. (BONY-MELLON)

is a national banking association organized pursuant to 12 U.S.C. sec. 21, et seq. of

which Scott Poster is believed to be the Chief Executive Officer and Antonio I. Portuondo is

believed to be the President; BONY-MELLON has its headquarters at 400 South Hope Street Los

Angeles, California 90071; BONY-MELLON was appointed by the United States Trustee for the

Southern District of New York to serve on the Committee of Unsecured Creditors on May 16,

2012, was identified as doing business at 525 West Campus Oval, New Albany, Ohio 43054 and

the appointment was directed to the attention of Robert H. Major, Vice President. BONY-

MELLON is joined in its capacity as a member of the Committee of Unsecured Creditors for

breach of fiduciary duty to the Plaintiffs.

9

14. Defendant MBIA Insurance Corporation (MBIA) is believed to be the parent company of MBIA Insurance Company and is a corporation organized under the laws of the State of New York with its headquarters at 1 Manhattanville Road #301, Purchase, New York 10577; MBIA was appointed by the United States Trustee for the Southern District of New York to serve on the Committee of Unsecured Creditors on May 16, 2012, was identified as doing business at 113 King Street, Armonk, New York 10504 from which it has relocated to the present headquarters, and the appointment was directed to the attention of Mitchell Sonkin. MBIA is joined in its capacity as a member of the Committee of Unsecured Creditors for breach of fiduciary duty to the Plaintiffs.

15. Defendant Rowena L. Drennen (DRENNEN), is an adult who is believed to be a citizen of the State of Missouri, whose last known address was 3725 N. Indiana, Kansas City, Missouri 64117, and was reportedly the representative for plaintiffs in *In re: Community Bank of Northern Virginia Second Mortgage Lending Practices Litigation*, MDL No. 1674, (*Brian Kessler, et al.*) Case No. 03-0425, Case No. 02-01201, Case No. 05-0688, Case No. 05-1386, United States District Court for the Western District of Pennsylvania) on the date of the Order for Relief in the main case; DRENNEN was appointed by the United States Trustee for the Southern District of New York on May 16, 2012 as the apparent sole representative of the sub-class of creditors who are homeowners having contingent, unsecured and unliquidated claims against some of the Debtors. DRENNEN is joined in her individual capacity as a member of the Committee of Unsecured Creditors for breach of fiduciary duty to the Plaintiffs and in her individual capacity and her capacity as one of two (2) members of the RESCAP Borrower Claims Trust for breach of fiduciary duty to the Plaintiffs.

16. Defendant AIG Asset Management (U.S.), LLC (AIGAM), is a Delaware limited liability company, with its Registered Agent as The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801; AIGAM was appointed by the United States Trustee for the Southern District of New York on May 16, 2012 and was identified as doing business at AIG Asset Management (U.S.), LLC, at 80 Pine Street, New York, New York 10038 and the appointment was directed to the attention of Russell Lipman. AIGAM is joined in its capacity as a member of the Committee of Unsecured Creditors for breach of fiduciary duty to the Plaintiffs.

17. Defendant U.S. Bank, N.A. (US BANK) is a national banking association organized pursuant to 12 U.S.C. sec. 21, et seq. of which Richard K. Davis, President; US BANK has its headquarters at 425 Walnut Street, Cincinnati, Ohio 45202; US BANK was appointed by the United States Trustee for the Southern District of New York to serve on the Committee of Unsecured Creditors on May 16, 2012, was identified as doing business at 190 S. LaSalle Street Chicago, Illinois 60603, and the appointment was directed to the attention of Mamta K. Scott, Vice President. US BANK is joined in its capacity as a member of the Committee of Unsecured Creditors for breach of fiduciary duty to the Plaintiffs.

18. Allstate Life Insurance Company (ALLSTATE) is an Illinois insurance company with its headquarters located at 3075 Sanders Road, Northbrook, Illinois 60062-7127; ALLSTATE was appointed by the United States Trustee for the Southern District of New York to serve on the Committee of Unsecured Creditors, was identified as doing business at 3075 Sanders Road, Suite G5A, Northbrook, IL 60062, and the appointment was directed to the attention of Peter A. McElvain. ALLSTATE is joined in its capacity as a member of the

11

Committee of Unsecured Creditors for breach of fiduciary duty to the Plaintiffs.

19.   Defendant Financial Guaranty Insurance Company (FGIC) is a Delaware

Corporation, with The Prentice-Hall Corporation System, Inc., 2711 Centerville Road Suite 400

Wilmington, Delaware 19808 as its Registered Agent; FGIC was appointed by the United States

Trustee for the Southern District of New York to serve on the Committee of Unsecured

Creditors, was identified as doing business at 125 Park Avenue New York, New York 10017 and

the appointment was directed to the attention of John Dubel. FGIC is joined in its capacity as a

member of the Committee of Unsecured Creditors for breach of fiduciary duty to the Plaintiffs.

20.   Defendant Morrison & Foerster, "LLP" (MOFO) purporting to be a California

Limited Liability Partnership per its registration with the Secretary of State for the State of New

York, despite no record of registration with the California Secretary of State having been located

as of December 26, 2015, were/are attorneys for the Debtors and their purported successor in

interest, the RESCAP Borrower Claims Trust; the headquarters of the association (whatever it

might be) is registered with the New York Secretary of State as 425 Market Street in San

Francisco, California 94105 and its Registered Agent is denoted as RESIGNED. MOFO is joined

in its capacity as the purported attorney for the CLAIMS TRUST for breach of fiduciary duty to

the Plaintiffs.

21.   Defendant Kramer, Levin, Naftalis & Frankel, LLP (KLNF), is a limited liability

partnership organized under the laws of the State of New York; KLNF were the  attorneys for the

Committee of Unsecured Creditors and have continued to act as attorneys for the RESCAP

Liquidating Trust.  The address of KLNF is 1177 Avenue of the Americas, New York, New York

10036 and no Registered Agent is identified in the records of the New York Secretary of State.

KLNF is joined in its capacity as a member of the Committee of Unsecured Creditors for breach of fiduciary duty to the Plaintiffs.

22. Silverman Acampora, LLP (SA), is a limited liability partnership organized under the laws of the State of New York, which was retained by the Committee of Unsecured Creditors to act as attorneys for the class of creditors designated as "borrowers" in the main case. SA has its main offices at 100 Jericho Quadrangle, Suite 300, Jericho, New York 11753 and has no Registered Agent identified in the records of the New York Secretary of State. SA is joined in its capacity as special counsel to the Committee of Unsecured Creditors on behalf of the homeowners designated as "borrowers," for breach of fiduciary duty to the Plaintiffs.

23. Defendant John S. Dubel (DUBEL), is the former co-chair of the Committee of Unsecured Creditors and was Chief Executive Officer of FGIC from 2008 until February, 2015; he is the managing member of Dubel & Associates, LLP and is presently believed to reside in the State of New Jersey; DUBEL is the managing member of Dubel & Associates, LLC, a New Jersey limited liability company. DUBEL is joined in his capacity as a co-chairman of the Committee of Unsecured Creditors for breach of fiduciary duty to the Plaintiffs.

24. Peter S. Kravitz, (KRAVITZ) is the initially appointed and present Trustee of the RESCAP Borrower Claims Trust and is joined in his individual capacity as well as in his capacity as Trustee of the CLAIMS TRUST for breach of fiduciary duty to the Plaintiffs.

25. Steven Mitchell (MITCHELL) is a member of the Trust Committee of the CLAIMS TRUST and is joined in his individual capacity as well as in his capacity as a member of the Trust Committee of the CLAIMS TRUST for breach of fiduciary duty to the Plaintiffs. His present address is unknown.

26. Prospective Defendant MERSCORP Holdings, Inc. (MERSCORP) is a Delaware corporation, which owns and operates the MERS® System. MERSCORP is believed to have been the first Delaware corporation to bear the name Mortgage Electronic Registration Systems, Inc. (MERS-I), organized on October 16, 1995.  On June 30, 1998,  MERS-I created NEW MERS, Inc., merged into NEW MERS, Inc. and changed its name to Mortgage Electronic Registration Systems, Inc. (MERS-II); on December 30, 1999, MERS-II created MERSCORP, Inc., effective January 1, 1999, merged into MERSCORP, Inc. and concurrently created the third iteration of Mortgage Electronic Registration Systems, Inc. (MERS-III) effective January 1, 1999.  MERSCORP is the owner of MERS® registered service mark and the proprietary software program used by MERSCORP members for various purposes and is specifically used in the process of securitization of Notes and Mortgages or Deeds of Trust (collateral documents) to conceal the multiple sales of the collateral documents (usually in imaged format even if they still exist in paper format) as well as concealing the identity of the real party in interest entitled to enforce the collateral documents.  If the Plaintiffs' causes of actions for non-core damages are pleaded by amendment in this action, MERSCORP will be joined for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) at 18 U.S.C. sec. 1961, et seq., and for non-core damages for state common law torts, in concert with Ally Financial, Inc. and its subsidiaries, using mail fraud (in violation of 18 U.S.C. sec. 1341) and wire fraud (in violation of 18 U.S.C. sec. 1343) to injure the Plaintiffs' property rights by operating the MERS®-GMAC RACKETEERING ENTERPRISE described to be described therein. MERSCORP is named as a prospective Defendant at this time because its activities must be understood in the context of the equitable relief requested herein.

27. Prospective Defendant Mortgage Electronic Registration Systems, Inc. (MERS-III) is the third iteration of a Delaware corporation having the name Mortgage Electronic Registration Systems, Inc. and was created by MERSCORP, Inc. on December 30, 1998 effective January 1, 1999. In its third iteration MERS-III is a bankruptcy remote, special purpose vehicle, with no income, no assets, no employees, no "members" and does not own or hold *any* mortgage notes, mortgages or deeds of trust; it is a wholly owned subsidiary of MERSCORP. If the Plaintiffs' causes of actions for non-core damages are pleaded by amendment in this action, MERS-III will be joined for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) at 18 U.S.C. sec. 1961, et seq. and for non-core damages for state common law torts, in concert with Ally Financial, Inc. and its subsidiaries, using mail fraud (in violation of 18 U.S.C. sec. 1341) and wire fraud (in violation of 18 U.S.C. sec. 1343) to injure the Plaintiffs' property rights by operating the MERS®-GMAC RACKETEERING ENTERPRISE to be described therein. MERS-III is named as a prospective Defendant at this time because its activities must be understood in the context of the equitable relief requested herein.

28. Prospective Defendant Ally Financial, Inc. (AFI), is a Delaware corporation, is the parent company of the RESCAP Debtors. The headquarters of AFI is located at 200 Renaissance Center in Detroit, Michigan and Jeffrey J. Brown is its Chief Executive Officer. If Plaintiffs claims for non-core causes of action are joined by amendment herein, AFI will be joined for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) at 18 U.S.C. sec. 1961, et seq., and for non-core damages for state common law torts, in concert with its subsidiaries, using mail fraud (in violation of 18 U.S.C. sec. 1341) and wire fraud (in violation of 18 U.S.C. sec. 1343) to injure the Plaintiffs' property rights by operating the MERS®-GMAC

15

RACKETEERING ENTERPRISE described herein.  AFI is named as a prospective Defendant at

this time because its activities must be understood in the context of the equitable relief requested

herein.  AFI is expected to raise the affirmative defense that it has been immunized against

claims for damages by individual Homeowner by its release granted by this Court, in exchange

for its contribution of 2.1 Billion Dollars to the RESCAP Debtors' estates as settlement for the

RESCAP Debtors' claims against AFI.

29.  GMAC Mortgage Group, LLC (GMACG), is a Delaware limited liability company

and the direct parent company of RESIDENTIAL CAPITAL, LLC (RESCAP) and is a direct

subsidiary of AFI.  If Plaintiffs claims for non-core causes of action are joined by amendment

herein,  GMAC will be joined for violations of the Racketeer Influenced and Corrupt

Organizations Act (RICO) at 18 U.S.C. sec. 1961, et seq., in concert with Ally Financial, Inc. and

its subsidiaries, using mail fraud (in violation of 18 U.S.C. sec. 1341) and wire fraud (in violation

of 18 U.S.C. sec. 1343) to injure the Plaintiffs' property rights by operating the MERS®-GMAC

RACKETEERING ENTERPRISE described therein.  GMACG is named as a prospective

Defendant at this time because its activities must be understood in the context of the equitable

relief requested herein.  GMACG may seek to raise an affirmative defense that it has been

immunized by the release granted by this Court, in exchange for AFI's contribution of 2.1 Billion

Dollars to the RESCAP Debtors' estates as settlement for the RESCAP Debtors' claims against

AFI.

30.  Residential Capital, LLC (RESCAP), a Delaware limited liability company, is joined

for breach of its fiduciary duty to the Plaintiffs as a Chapter 11 Debtor in Possession.  Plaintiffs

are unsecured, contingent and unliquidated creditors of RESCAP and some of its subsidiaries.

16

Plaintiffs reserve their causes of action against RESCAP for post-petition violations of the
Racketeer Influenced and Corrupt Organizations Act (RICO) at 18 U.S.C. sec. 1961, et seq., in
concert with Ally Financial, Inc. and its subsidiaries, using mail fraud (in violation of 18 U.S.C.
sec. 1341) and wire fraud (in violation of 18 U.S.C. sec. 1343) to injure the Plaintiffs' property
rights by operating the MERS®-GMAC RACKETEERING ENTERPRISE described herein, for
violations of Plaintiffs' civil rights and for state common law torts.

31.  Residential Accredit Loans, Inc. (RALI), a Delaware corporation, is joined for breach
of its fiduciary duty to the Plaintiffs as a Chapter 11 Debtor in Possession.  Plaintiffs are
unsecured, contingent and unliquidated creditors of RESCAP and some of its subsidiaries.
Plaintiffs reserve their causes of action against RESCAP for post-petition violations of the
Racketeer Influenced and Corrupt Organizations Act (RICO) at 18 U.S.C. sec. 1961, et seq., in
concert with Ally Financial, Inc. and its subsidiaries, using mail fraud (in violation of 18 U.S.C.
sec. 1341) and wire fraud (in violation of 18 U.S.C. sec. 1343) to injure the Plaintiffs' property
rights by operating the MERS®-GMAC RACKETEERING ENTERPRISE described herein, for
violations of Plaintiffs' civil rights and for state common law torts.

32.  GMAC Mortgage, LLC (GMACM), a Delaware limited liability company, is joined
for breach of its fiduciary duty to the Plaintiffs as a Chapter 11 Debtor in Possession.  Plaintiffs
are unsecured, contingent and unliquidated creditors of RESCAP and some of its subsidiaries.
Plaintiffs reserve their causes of action against RESCAP for post-petition violations of the
Racketeer Influenced and Corrupt Organizations Act (RICO) at 18 U.S.C. sec. 1961, et seq., in
concert with Ally Financial, Inc. and its subsidiaries, using mail fraud (in violation of 18 U.S.C.
sec. 1341) and wire fraud (in violation of 18 U.S.C. sec. 1343) to injure the Plaintiffs' property

rights by operating the MERS®-GMAC RACKETEERING ENTERPRISE described herein, for
violations of Plaintiffs' civil rights and for state common law torts.

33.  Residential Funding Company, LLC (RFC), a Delaware limited liability company, is
joined for breach of its fiduciary duty to the Plaintiffs as a Chapter 11 Debtor in Possession.
Plaintiffs are unsecured, contingent and unliquidated creditors of RESCAP and some of its
subsidiaries.  Plaintiffs reserve their causes of action against RESCAP for post-petition violations
of the Racketeer Influenced and Corrupt Organizations Act (RICO) at 18 U.S.C. sec. 1961, et
seq., in concert with Ally Financial, Inc. and its subsidiaries, using mail fraud (in violation of 18
U.S.C. sec. 1341) and wire fraud (in violation of 18 U.S.C. sec. 1343) to injure the Plaintiffs'
property rights by operating the MERS®-GMAC RACKETEERING ENTERPRISE described
herein, for violations of Plaintiffs' civil rights and for state common law torts.

34.  Homecomings Financial, LLC, (HOMECOMINGS), a Delaware limited liability
company, is joined for breach of its fiduciary duty to the Plaintiffs as a Chapter 11 Debtor in
Possession.  Plaintiffs are unsecured, contingent and unliquidated creditors of RESCAP and
some of its subsidiaries.  Plaintiffs reserve their causes of action against HOMECOMINGS for
post-petition violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) at 18
U.S.C. sec. 1961, et seq., in concert with Ally Financial, Inc. and its subsidiaries, using mail
fraud (in violation of 18 U.S.C. sec. 1341) and wire fraud (in violation of 18 U.S.C. sec. 1343) to
injure the Plaintiffs' property rights by operating the MERS®-GMAC RACKETEERING
ENTERPRISE described herein, for violations of Plaintiffs' civil rights and for state common
law torts.

35.  Executive Trustee Services (ETS), a Delaware limited liability company, is joined for

18

breach of its fiduciary duty to the Plaintiffs as a Chapter 11 Debtor in Possession.  Plaintiff

RODE recently discovered that he is an unsecured, contingent and unliquidated creditor of ETS,

which was fraudulently concealed from him.  Plaintiff RODE also reserves his causes of action

against ETS for post-petition violations of the Racketeer Influenced and Corrupt Organizations

Act (RICO) at 18 U.S.C. sec. 1961, et seq., in concert with Ally Financial, Inc. and its

subsidiaries, using mail fraud (in violation of 18 U.S.C. sec. 1341) and wire fraud (in violation of

18 U.S.C. sec. 1343) to injure the Plaintiffs' property rights by operating the MERS®-GMAC

RACKETEERING ENTERPRISE described herein, for violations of Plaintiffs' civil rights and

for state common law torts.

36.    Defendant Ocwen Loan Servicing, LLC (OCWEN), is a Delaware limited liability

company, and is one of the successors in interest to the mortgage servicing rights claimed to be

owned by the certain of the RESCAP Debtors on the date of the Order for Relief, May 14, 2012;

OCWEN's headquarters is believed to be located in Dunwoody, Georgia.  OCWEN is named as

a Defendant for the equitable relief requested herein. If the Plaintiffs' non-core causes of action

for damages are pleaded by amendment in this action, RODE on behalf of the OCWEN Class of

Homeowners and the subclass of OCWEN Homeowners who still hold title to their homes,

OCWEN will be joined for violations of the Racketeer Influenced and Corrupt Organizations Act

(RICO) at 18 U.S.C. sec. 1961, et seq., and for damages for state common law torts, in concert

with Ally Financial, Inc. and its subsidiaries, using mail fraud (in violation of 18 U.S.C. sec.

1341) and wire fraud (in violation of 18 U.S.C. sec. 1343) to injure the Plaintiffs' property rights

by operating the MERS®-GMAC RACKETEERING ENTERPRISE described to be described

therein.  OCWEN is joined in this action because its joinder is necessary for the Court to grant

19

the complete equitable relief sought by RODE.

37.  Prospective Defendant Wells Fargo Bank, N.A., (WELLS FARGO) is a national

banking association organized under 12 U.S.C. sec. 21, et seq. Its headquarters is located at101

N. Phillips Avenue, Sioux Falls, South Dakota 57104.  Its President and Chief Executive Officer

is John Stumpf.   WELLS FARGO is the purported document custodian of the RALI Series

2003-QS12 and the RALI Series 2007-QO1 Trusts, according to the records of the Securities and

Exchange Commission (SEC).  If the Plaintiffs' non-core causes of action for damages are

pleaded by amendment in this action, RODE, on behalf of the OCWEN Class of Homeowners

and the subclass of OCWEN Homeowners who still hold title to their homes and SMITH, on

behalf of all Homeowners who have unlawfully lost title and/or beneficial interest and/or

possession of their homes, WELLS FARGO will be joined for violations of the Racketeer

Influenced and Corrupt Organizations Act (RICO) at 18 U.S.C. sec. 1961, et seq., and for

damages for state common law torts, in concert with Ally Financial, Inc. and its subsidiaries,

using mail fraud (in violation of 18 U.S.C. sec. 1341) and wire fraud (in violation of 18 U.S.C.

sec. 1343) to injure the Plaintiffs' property rights by operating the MERS®-GMAC

RACKETEERING ENTERPRISE described to be described therein.  WELLS FARGO is named

as a prospective Defendant at this time because its activities must be understood in the context of

the equitable relief requested herein.

38.  WELLS FARGO is the successor in interest to SouthTrust Mortgage Corporation

(SOUTHTRUST) through its merger with Wachovia Bank, N.A. and is presently being sued in

the name of RFC, by the LIQUIDATING TRUST in the United States District Court for the

District of Minnesota, Case No.  13-cv-03525 (DSD/HB) entitled  *Residential Funding Co., LLC*

*v. SouthTrust Mortgage Corporation, et al.* (See additional details in ¶43 below.)

39.   WELLS FARGO is the parent company of AMNET, LLC (AMNET), successor in interest to American Mortgage Network, Inc. and American Residential Investment Trust, Inc., which also merged into AMNET.   WELLS FARGO is presently being sued in the name of RFC, by the LIQUIDATING TRUST in the United States District Court for the District of Minnesota, Case No.  14-cv-01760 (SRN-JJK-HB) entitled  *Residential Funding Co., LLC v. American Mortgage Nework, et al.*   (See additional details in ¶44, below.)

40.   Defendant Aurora Loan Services, LLC (AURORA) is a Delaware limited liability company.   AURORA is joined in this Complaint for equitable and declaratory relief to be provided to SMITH.   AURORA placed a "credit bid" in the amount of $362,500.00 at the Trustee's Sale held on November 16, 2011.   AURORA loaned no money to SMITH and was, therefore, not eligible to place the "credit bid" at the Trustee's Sale.   AURORA's claim to have succeeded in interest to SMITH's collateral documents is based on the forged Corporate Assignment of Deed of Trust executed in its favor by Theodore Schultz (SCHULTZ), an employee of Aurora Bank, FSB (AURORA BANK), pretending to be Vice President of Mortgage Electronic Registration Systems, Inc.  If the Plaintiffs' non-core causes of action for damages are pleaded by amendment in this action, AURORA will be joined for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) at 18 U.S.C. sec. 1961, et seq., and for damages for state common law torts, in concert with Ally Financial, Inc. and its subsidiaries, using mail fraud (in violation of 18 U.S.C. sec. 1341) and wire fraud (in violation of 18 U.S.C. sec. 1343) to injure the Plaintiffs' property rights by operating the MERS®-GMAC RACKETEERING ENTERPRISE to be described therein.  AURORA is joined in this action

because its joinder is necessary for the Court to grant the complete equitable relief sought by

SMITH.

41.  Aurora Bank, FSB (AURORA BANK) was a federal savings bank of which

AURORA was a subsidiary.  AURORA purportedly transferred its servicing rights to AURORA

BANK.  AURORA BANK ceased to exist on June 5, 2013, according to the records of the

Federal Deposit Insurance Corporation (FDIC).  Upon information and belief, AURORA was the

predecessor in interest to AURORA BANK as to all matters pertinent to these proceedings.

When AURORA BANK ceased to exist on June 5, 2013, its assets were liquidated. No further

information is presently available from which the identity of any entity which may have acquired

an interest in SMITH's collateral documents in the liquidation process.

42.  Defendant Nationstar Mortgage, LLC (NATIONSTAR), is a Delaware limited

liability company.  NATIONSTAR claims to have succeeded to the servicing rights which

AURORA which RFC transferred from GMACM to AURORA.  AURORA quitclaimed the

interest it took  in SMITH's Homestead by the Assignment of Deed of Trust, falsely executed by

AURORA BANK employee Theodore Schultz (SCHULTZ) on October 1, 2009 as Vice

President of Mortgage Electronic Registration Systems, Inc. and upon which it placed a "credit

bid" at the Trustee's Sale on November 16, 2011.  NATIONSTAR claims to have obtained a

Quit Claim Deed on March 26, 2014 from AURORA and on March 26, 2014, NATIONSTAR

filed quitclaimed its interest  to IH4 Property West, LLP for the approximate amount of

$507,500.00, based on recording fees paid in the amount of $.55 per $500.00 in value,

$145,000.00 more than the amount of the credit bid placed by AURORA and $507,500.00 more

than AURORA had provided as consideration for the acquisition of SMITH's Note and Deed of

Trust, which was $0.00, if, as reported to the Securities and Exchange Commission (SEC),

DBCTA as Trustee of the RALI Series 2007-QO1 Trust acquired the collateral documents from

RALI, who acquired them from RFC, who purchased them from Wachovia Bank, N.A., which

merged with WELLS FARGO in 2010.  If the Plaintiffs' non-core causes of action for damages

are pleaded by amendment in this action, NATIONSTAR will be joined for violations of the

Racketeer Influenced and Corrupt Organizations Act (RICO) at 18 U.S.C. sec. 1961, et seq., and

for damages for state common law torts, in concert with Ally Financial, Inc. and its subsidiaries,

using mail fraud (in violation of 18 U.S.C. sec. 1341) and wire fraud (in violation of 18 U.S.C.

sec. 1343) to injure the Plaintiffs' property rights by operating the MERS®-GMAC

RACKETEERING ENTERPRISE to be described therein.  NATIONSTAR is joined in this

action because it joinder is necessary for the Court to grant the complete equitable relief sought

by SMITH.

    43.  Prospective Defendant WELLS FARGO is a co-defendant with SOUTHTRUST and

is being sued by the LIQUIDATING TRUST in the United States District Court for the District

of Minnesota, Case No. 14-cv-1760 (SRN-JJK-HB).  SOUTHTRUST was acquired by Wachovia

Bank, N.A. (WACHOVIA) after RODE's Note and Deed of Trust were acquired on March 18,

2003.  WELLS FARGO is the successor in interest to WACHOVIA.   If Plaintiffs' non-core

causes of action for damages are pleaded by amendment in this action, WELLS FARGO may be

joined for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) at 18

U.S.C. sec. 1961, et seq., and for damages for state common law torts, in concert with Ally

Financial, Inc. and its subsidiaries, using mail fraud (in violation of 18 U.S.C. sec. 1341) and

wire fraud (in violation of 18 U.S.C. sec. 1343) to injure the Plaintiffs' property rights by

operating the MERS®-GMAC RACKETEERING ENTERPRISE to be described therein.

WELLS FARGO may also be joined as document custodian for the RALI Trusts for violations of

the Racketeer Influenced and Corrupt Organizations Act (RICO) at 18 U.S.C. sec. 1961, et seq.,

and for damages for state common law torts, in concert with Ally Financial, Inc. and its

subsidiaries, using mail fraud (in violation of 18 U.S.C. sec. 1341) and wire fraud (in violation of

18 U.S.C. sec. 1343) to injure the Plaintiffs' property rights by operating the MERS®-GMAC

RACKETEERING ENTERPRISE to be described therein.  WELLS FARGO is named as a

prospective Defendant at this time because its activities pertain to the equitable relief requested

herein.

44.  Prospective Defendant WELLS FARGO is a co-defendant with  (AMNET) and

American Residential Investment Trust, Inc. and is being sued by the LIQUIDATING TRUST in

the United States District Court for the District of Minnesota, Case No. 14-cv-01760-PJS/TN.

AMNET was a subsidiary of WELLS FARGO and is now known as AMNET Mortgage, LLC, a

Delaware limited liability company, formerly known as AMNET Mortgage, Inc., a Maryland

corporation; it was affiliated with American Residential Investment Trust, Inc., which also

merged into AMNET.  If the Plaintiffs' non-core causes of action for damages are pleaded by

amendment in this action, AMNET will be joined for violations of the Racketeer Influenced and

Corrupt Organizations Act (RICO) at 18 U.S.C. sec. 1961, et seq., and for damages for state

common law torts, in concert with Ally Financial, Inc. and its subsidiaries, using mail fraud (in

violation of 18 U.S.C. sec. 1341) and wire fraud (in violation of 18 U.S.C. sec. 1343) to injure

the Plaintiffs' property rights by operating the MERS®-GMAC RACKETEERING

ENTERPRISE to be described therein.  AMNET is named as a prospective Defendant at this

time because its activities pertain to the equitable relief requested herein.

45.  Kathy Priore (PRIORE), is Associate Counsel for the LIQUIDATING TRUST, upon whose Declaration the Objection to Proofs of Claim 5210 and 5212, filed by RODE, was commenced, in the purported name of the CLAIMS TRUST.  PRIORE declares that she was assisting the CLAIMS TRUST by preparing her Declaration and allowing it to be filed in support of the Objection to the RODE Proofs of Claim.  PRIORE, therefore, is the admitted agent of the CLAIMS TRUST.  PRIORE is joined for aiding and abetting the breach of the CLAIMS TRUSTS' fiduciary duty to RODE.

46.  Deanna Horst (HORST), is Chief Claims Officer  for the LIQUIDATING TRUST, upon whose Declaration the Objection to Proofs of Claim 3889, 4129, 4134, and 4139 filed by SMITH, was commenced.  HORST declares that she was assisting the CLAIMS TRUST by preparing her Declaration and allowing it to be filed in support of the Objection to the SMITH Proofs of Claim. HORST, therefore, is the admitted agent of the CLAIMS TRUST.  HORST is joined for aiding and abetting the breach of the CLAIMS TRUSTS' fiduciary duty to SMITH.

47.  Prospective Defendant Judy Faber (FABER) is a former Documents Manager in the Imaging Department of GMACM, who allowed a stamp bearing her signature, purporting to be Vice President of Residential Funding Company, LLC or Residential Funding Corporation to be created and used by multiple entities individually and in her former capacity as an employee of GMACM.   In the event that the damages claims are brought into this action by amendment, FABER will be named as a person with management and control in the MERS®-GMAC RACKETEERING ENTERPRISE.  FABER is named as a prospective Defendant at this time because her activities on behalf of the MERS®-GMAC RACKETEERING ENTERPRISE must

be addressed in the context of the equitable relief requested herein.

48.   The Allonge in RODE's case includes a signature stamp displaying the endorsement of Judy Faber, as Vice President of Residential Funding Corporation, now known as Residential Funding Company, LLC (RFC), and purports to endorse the Note in favor of Deustche Bank Trust Company Americas, as Trustee.

49.   The Note in SMITH's case displays the endorsement of Judy Faber, as Vice President of Residential Funding Company, LLC (RFC), and purports to endorse the Note in favor of Deustche Bank Trust Company Americas, as Trustee.

50.   Conclusive evidence that FABER was never an employee or officer of RFC was produced on January 13, 2016 in the SMITH contested claims action.

51.   Prospective Defendant Donna Fitton (FITTON), will be joined in Plaintiffs' damages actions, individually and in her former capacity as an employee of ETS, where she was a Team Leader responsible for directing ETS staff to execute, notarize and authenticate  false documents and did so herself when she pretended to be a "limited signing officer" for MERS-III on April 16, 2010 and executed the Assignment of Deed of Trust from MERS-III to Deutsche Bank Trust Company Americas as Trustee for RALI 2003QS12.  FITTON is named as a prospective Defendant at this time because her activities on behalf of the MERS®-GMAC RACKETEERING ENTERPRISE must be addressed in the context of the equitable relief requested herein.

52.   Prospective Defendant Theodore Schultz (SCHULTZ), will be joined in Plaintiffs' damages action, individually and in his capacity as an agent of AURORA.  He is a former employee of AURORA BANK, parent company of AURORA.  AURORA BANK no longer

exists.  SCHULTZ falsely claimed to be Vice President of MERS-III when he executed the

Corporate Assignment of Deed of Trust on the Homestead of SMITH, when he knew he was

executing the conveyance in the name of his then-employer's subsidiary, AURORA.

53.  JANE DOE # 1 is "Judy, Last Name Unknown," identity claimed to be unknown by

the RESCAP Debtors, proceeding in the name of the CLAIM TRUST, will be joined in

Plaintiffs' damages action, as an employee of an unidentified entity.  JANE DOE #1 is identified

herein as her actions pertain to the equitable relief requested by SMITH.

54.  JOHN DOES 1-100 are the yet-to-be identified human beings of the male gender,

who have participated in the MERS®-GMAC RACKETEERING ENTERPRISE.

55.  JANE DOES 2-100  are the yet-to-be identified human beings of the male gender,

who have participated in the MERS®-GMAC RACKETEERING ENTERPRISE.

56.   CORPORATIONS ABC-XXXYYYZZZ  are the yet-to-be identified corporations,

partnerships, joint ventures, limited liability companies, limited liability partnerships and

express, implied or constructive trusts, who have participated in the MERS®-GMAC

RACKETEERING ENTERPRISE.

## COMMON FACTS

57.   This case arises under the administratively consolidated Chapter 11 Petitions of 51

subsidiaries of AFI, filed on May 14, 2012, and proceeding under the lead case name of In re

Residential Capital, LLC (RESCAP).

58.   Defendants WILMINGTON TRUST, DBTCA, BONY-MELLON, MBIA,

DRENNEN, AIGAM, US BANK, ALLSTATE, and FGIC, as members of the Committee of

Unsecured Creditors (CUC) appointed by the United States Trustee for the Southern District of

27

New York, owed a fiduciary duty to all unsecured creditors including the sub-class created in the

Second Amended Chapter 11 Plan, designated as "Borrowers." (See Glenn Decision and Order

of October 23, 2012 declining to authorize a separate committee to represent the interests of the

sub-class of unsecured claimants, designated "Borrowers" by the CUC and the RESCAP Debtors

because the CUC owes a fiduciary duty to the sub-class of "Borrowers" as a matter of law and

there was no allegation that the CUC has breached its fiduciary duty to the "Borrower" sub-class.

59.  For clarity of language in this action, "Borrowers" will be referred to as

"Homeowners," past and present, who believed that they had contracted for conventional

mortgage loans with entities purporting to be "Lenders," but which were actually unlicensed

securities dealers in a scheme known as securitization, by which Notes and Mortgages or Deeds

of Trust (collateral documents, which are securities) were acquired for re-sale to some of the

RESCAP Debtors, without disclosure of the true nature of the transactions, which were securities

purchases for re-sale, generally funded by warehouse lines of credit granted by unidentified third

parties.

60.  The entities identified in the collateral documents as "Lenders" were known as

"originators" within the securitization scheme, but were not identified as "originators" to the

Homeowners in the undisclosed securitization transactions, which were unregulated, frequently

unregistered, and in which the originators were unlicensed securities dealers.

61.  The residential real estate assets of the Homeowners were purportedly encumbered

by security agreements identified by various names such as Mortgage, Deed of Trust, Security

Deed, Trust Deed, depending on the law of the state in which the security agreements were

executed and purport to grant the "Lender" a lien or title, depending on the law of the state in

28

which the security agreements were executed.

62.    For purposes of the securitization scheme, the distinction between lien theory and title theory states need not be made, because the collateral documents (Notes and Mortgages or Deeds of Trust) were acquired by the "originators" (unlicensed securities purchasers) for re-sale as securities in a chain of transactions purporting to result in the conveyance of the collateral documents by "deposit" into a Real Estate Mortgage Investment Conduit (REMIC) Trust.

63.    The conveyances of collateral documents were, by contract and federal tax law, required to be accomplished according to the standard provisions of the REMIC Trusts' Pooling and Servicing Agreements (PSAs) at Section 2 and specifically described at Section 2.01 in most PSAs.

64.    In most cases, including the specific cases of the proposed lead Plaintiffs and in the case of each member of the classes sought to be certified herein (Class A, Homeowners, who still have title to and/or possession of the residential real estate assets and Class B, Homeowners, who have had their residential real estate assets sold under color of state law), there is no evidence that the conveyances of the collateral documents in the PSAs were accomplished in accordance with the provisions of the PSAs and within three (3) months of the closing date for the REMIC Trusts as required by 26 U.S.C. sec. 860D.

65.    The proposed lead Plaintiffs will seek certification of the class of Homeowners whose collateral documents were not conveyed into the REMIC Trusts within the statutorily mandated three (3) months after the closing dates of the REMIC Trusts because the failure to convey the collateral documents led to the creation of documents which are forgeries as defined by the laws of most states of which the false endorsement stamp of FABER of GMACM,

29

purporting to be Vice President of Residential Funding Corporation or Residential Funding

Company, LLC (RFC) (when she never held that position) and self-assignments of Mortgages or

Deeds of Trust from Mortgage Electronic Registration Systems, Inc. executed by employees of

the assignees, such as FITTON of ETS in Mr. Rode's case and SCHULTZ of Aurora Bank, FSB

in Ms. Smith's case.

66.   Whether or not this Court certifies the proposed class action, both RODE and

SMITH are entitled to equitable relief from the creation of forged documents which have been

used to make false claims against their Homesteads by judgment of this Court declaring the liens

thereby created void.

67.   The confirmed Second Amended Chapter 11 Plan in these proceedings, proposed by

the  RESCAP Debtors and the CUC, created the LIQUIDATING TRUST, granted a mere 57.6

Million Dollars to the CLAIMS TRUST for all of the Homeowner Claims filed in these

proceedings.

68.  According to the records of the CLAIMS TRUST, published at

http://www.rescapborrowerclaimstrust.com/documents.html, $15,373,797,531.00 in Homeowner

Claims had been resolved as of June 30, 2015.

69.   The amount of allowed claims as of June 30, 2015 is reported as $332,581,955.00,

or 2.16%, of which, as explained below, 94.56% appears to consist of the allowed claims of the

Kessler Settlement Class ($300,000,000.00) and the Mitchell Settlement Class ($14,500,000.00).

70.  There are only two (2) members of the CLAIMS TRUST, DRENNEN and

MITCHELL,  both of whom were appointed by the RESCAP Debtors and the CUC, with the

power of appointment delegated to counsel for the Kessler Class Claimants in the action styled *In*

re: *Community Bank of Northern Virginia Second Mortgage Lending Practices Litigation*, MDL

No. 1674, (*Brian Kessler, et al.*) Case No. 03-0425, Case No. 02-01201, Case No. 05-0688, Case

No. 05-1386, United States District Court for the Western District of Pennsylvania, who also

represents the class of claimants in the action styled *Steven and Ruth Mitchell v. Residential*

*Funding Company, LLC, et al.* in the Circuit Court of Jackson County, Missouri, Division 4,

Case No. 03-CV-220489.

71.    DRENNEN and MITCHELL are represented by the same counsel, who appears to

have arranged to have them appointed as members of the Trust Committee of the CLAIMS

TRUST.

72.    Because DRENNEN and MITCHELL are class representatives for damages which

will be  paid from the CLAIMS TRUST and any replacement of DRENNEN and MITCHELL

was delegated exclusively to their own counsel by the RESCAP Debtors and the CUC in the

Second Amended Chapter 11 Plan, they followed the advice of their own counsel and have

deemed all other homeowner claims to be disputed under the Third Amendment to the Trust

Agreement for the RESCAP Borrower Claims Trust as of May 16, 2014.

73.    KRAVITZ, DRENNEN and MITCHELL have permitted counsel for the RESCAP

Debtors to seek to have all other Homeowner Claims disallowed and expunged under a litigation

model in which counsel for the RESCAP Debtors is employed as counsel for the CLAIMS

TRUST.

74.    The Trust Agreement for the CLAIMS TRUST provides that attorneys' fees will be

paid from the CLAIMS TRUST's funds, which, by its terms, are limited to the initial

contribution of 57.6 Millions Dollars from the RESCAP Debtors, with no recourse to any other

source of funds.

75. The CLAIMS TRUST purports to be a Grantor Trust under the laws of the State of

Delaware.

76. According to the Declaration of Trust dated December 10, 2013, the RESCAP

Debtors are the grantors to the CLAIMS TRUST.

77. The CLAIMS TRUST purports to be an irrevocable trust, providing for no reversion

or residual interest in the grantors.

78. The Trustee of a Grantor Trust has a fiduciary duty to the beneficiaries of the Trust.

79. A valid Grantor Trust cannot operate as an alter ego of the grantor and the grantor

must surrender control over the assets conveyed to the Trust to the Trustee.

80. If a grantor continues to manage and control a trust, the Trust is an alter ego of the

grantor.

81. Moreover, in order to be treated as a Qualified Settlement Fund under 26 U.S.C. sec.

468D, which the CLAIMS TRUST pretends to be, it must be operated in accordance with the

provisions of 26 CFR 1.468B-1 through 1.468B-9.

82. The CLAIMS TRUST is not operating in accordance with 26 U.S.C. sec. 468D and

the provisions of 26 CFR 1.468B-1 through 1.468B-9.

83. The Trustee of a Grantor Trust owes a fiduciary duty to the beneficiaries of the Trust.

84. The attorneys for the Trustee of a Grantor Trust owe a fiduciary duty to the

beneficiaries of the Trust.

85. The BORROWER CLAIMS TRUST was created under the authority of this Court's

Order Confirming the Second Amended Chapter 11 Plan (Doc. 6065).

86.  The RESCAP Debtors' attorneys, MOFO, now purport to represent the CLAIMS TRUST.

87.  RODE and SMITH did not waive the conflict of interest between themselves and the RESCAP Debtors.

88.  Without a written waiver of the conflict of interest arising under Rules of Professional Conduct [22 NYCRR 1200.0] rules 1.6, 1.7, 1.8, 1.9 and 1.10, counsel for the RESCAP Debtors may not represent the CLAIMS TRUST, unless the CLAIMS TRUST is merely an alter ego of the RESCAP Debtors, as the Plaintiffs now allege.

89.  Confidential information obtained in the course of the representation of the RESCAP Debtors is being withheld from RODE and SMITH.  (Cf. Objections to the Written Discovery Requests of SMITH.)

90.  No individual homeowner with a claim pending against the RESCAP Debtors was ever allowed to vote to confirm or object to the confirmation of the Second Amended Chapter 11 Plan (which purported to provide for a percentage payment to the holders of such claims based on the funds available to the whole class of "borrower" claimants) based on a disclosure that the CLAIMS TRUST would deem all of their claims disallowed five (5) months after the effective date of the Plan.

91.  The individual homeowners whose timely claims gave them the right to vote for or against confirmation of the Second Amended Chapter 11 Plan were never informed that ALL homeowner claims not allowed prior to confirmation of the Second Amended Chapter 11 Plan would be deemed to be disputed five (5) months later by the Third Amendment to the Trust Agreement for the CLAIMS TRUST.

33

92.    No individual homeowner with a claim pending against the RESCAP Debtors was ever allowed to vote to confirm or object to the confirmation of the Second Amended Chapter 11 Plan (which purported to provide for a percentage payment to the holders of such claims based on the funds available to the whole class of "borrower" claimants) on the disclosure that the CLAIMS TRUST would employ MOFO, RESCAP Debtors' counsel, to object to their claims, would withhold confidential information from them on the basis of an claim of attorney-client privilege, or would claim to have no knowledge of facts which are available to the RESCAP Debtors because MOFO now represents the CLAIMS TRUST.

93.    The confirmed Plan provides that counsel for the proponents of the Second Amended Chapter 11 Plan might be allowed to represent the LIQUIDATING TRUST and the CLAIMS TRUST, if such representation is not precluded by existing law. The common law principles of fiduciary duty by a Trustee and Trustee's counsel to the beneficiaries of a Grantor Trust, which precludes the counsel for the grantor continuing to represent the Trustee, without the consent of the beneficiaries. Rules of Professional Conduct [22 NYCRR 1200.0] rules 1.6, 1.7, 1.8, 1.9 and 1.10 requires at least a written waiver of the conflict of interest by the beneficiaries of the CLAIMS TRUST and the RESCAP Debtors as grantors, but would appear to preclude the representation entirely because confidential information in the possession of the RESCAP Debtors is not being disclosed to the Trustee of the CLAIMS TRUST and the CLAIMS TRUST's putative beneficiaries, which is a breach of fiduciary duty owed to the beneficiaries.

94.    The CUC owed a fiduciary duty to the Homeowner Claimants.

95.    Recognizing the fiduciary duty owed to the Homeowner Claimants, this Court denied a Motion brought by a number of Homeowners who sought to have an official "borrowers'"

34

committee established in the Chapter 11 proceedings.  (See Motion filed on August 24, 2012 as

Doc. 1264 and this Court's Order filed on October 23, 2012 as Doc. 1921.)

96.    At the time when the CUC and the  RESCAP Debtors opposed the Motion to

establish the official "borrowers'" committee (on September 14, 2012, respectively at Docs. 1449

and 1451), there was no present evidence upon which the Movants or those who joined or

partially joined in the Motion could base an allegation of breach of fiduciary duty by the CUC.

97.    Moreover, the CUC appointed "special counsel" for issues effecting the

Homeowners, SA, but SA's participation in the Chapter 11 process prior to confirmation was

self-limited to assuring that this Court's notice requirements for Omnibus Objections to

Homeowners' Claims usually filed in batches in excess of the maximum permissible 100 claims

per Omnibus Objection under Fed. R. Bankr. P. 3007(e)(6), by this Court's Order of March 21,

2013.

98.    Additionally, this Court's Order of March 21, 2013 allowed for Objections to be filed

to individual homeowners by the RESCAP Debtors on grounds not set forth in 11 U.S.C. sec.

502(b).  The CUC, its counsel and SA did not object to the Court's Order expanding the grounds

for claims objections under Fed. R. Bankr. P. 3007 beyond the scope fo 11 U.S.C. sec. 502.

99.    The failure of the CUC, its counsel and SA to object to the Court's Order of March

21, 2013 occurred after the Motion for the appointment of an official committee to protect the

interests of the Homeowners (Official Committee) and is evidence of breach of the fiduciary

duties of the CUC, its counsel and SA.

100.    The Disclosure Statement which was filed after the Court's Order denying the

appointment of the Official Committee and the Plan, Amended Plan and Second Amended Plan

providing for disparate treatment of Homeowners' Claims was jointly proposed by the CUC and

its counsel, while SA was purportedly acting as "special counsel" for the Homeowner class of

claimants  and is evidence of breach of the fiduciary duties of the CUC, its counsel and SA.

101.  The record of proceedings on an Omnibus Objection held in October, 2013 should

reflect that in one instance Judge Glenn reminded an attorney from SA that he had an

independent responsibility on behalf of the individual Homeowners and could not merely rely on

the position taken by the RESCAP Debtors.

102.  The CUC, its counsel and SA breached their fiduciary duty to the individual

Homeowners by failing to articulate the Homeowners' position to the CUC when it jointly

proposed the creation of the CLAIMS TRUST with a de minimus contribution from the

RESCAP Debtors' compared to the damages caused to the individual Homeowners' by the

unlawful taking of homes using forged documents to establish the RESCAP Debtors' rights to

foreclose on Homeowners.

103.  SA breached its fiduciary duty to the individual Homeowners by failing to

investigate or articulate positions necessary for the protection of the Homeowners' position in the

main case to the CUC before the CUC  jointly proposed the creation of the CLAIMS TRUST

with a de minimus contribution from the RESCAP Debtors' compared to the damages caused to

the individual Homeowners' by the unlawful taking of homes using forged documents to

establish the RESCAP Debtors' rights to foreclose on Homeowners.

104.  The CUC and its counsel breached their fiduciary duty to the individual

Homeowners by failing to investigate the Homeowners' position that their homes were being

taken by in foreclosures commenced and continued by the RESCAP Debtors on the basis of

forged documents, when the CUC jointly proposed the creation of the CLAIMS TRUST with a

de minimus contribution from the RESCAP Debtors' compared to the damages caused to the

individual Homeowners by the unlawful taking of homes using forged documents to establish the

RESCAP Debtors' rights to foreclose on Homeowners.

105.    The CUC, its counsel and SA breached their fiduciary duty to the Homeowner

claimants by never examining the validity of the foreclosure proceedings commenced and

continued by RESCAP's subsidiaries and affiliates, which was necessary to protect the

Homeowners' interest.

106.    The attorneys for the CUC owed a fiduciary duty to the individual Homeowners

as unsecured, contingent and unliquidated claimants which had been timely filed and amounted

to  $15,373,797,531.00,  according to the CLAIMS TRUST's published report for the period

ending June 30, 2015.

107.    The Kessler Settlement Class Claims may have been allowed pre-petition and

included a special provision allowing the Kessler Class to pursue insurance proceeds on policies

with total face values of $400,000,000,000.00 (Four Hundred Billion Dollars) from which all

other Homeowner Claimants have been excluded.

108.    The Mitchell Settlement Class Claims have apparently been allowed post-petition in

the amount of $14,500,000.00 by  Proof of Claim 7354 on January 17, 2014, which appears to

have been allowed in the full amount of the Claim filed more than thirteen (13) months after the

Claims Bar Date (as extended) of November 16, 2012.

109.    The Kessler Settlement Class and the Mitchell Settlement Class are represented by

the same attorneys and their attorneys were granted the authority to appoint the members of the

Trust Committee, according to the Trust Agreement for the RESCAP Borrower Claims Trust at section 5.2 attached hereto).

110.   The only members of the Trust Committee are the class representatives for the Kessler and Mitchell Class Claims.

111.   Representatives of the Kessler Settlement Class and the Mitchell Settlement Class, DRENNEN and MITCHELL, were initially appointed as the sole and exclusive members of the Trust Committee, according to the Plan Supplement Exhibit 8, filed on October 11, 2013 as Doc. 5342-7.

112.   Damages in a third class action, entitled *Rothstein v. GMAC Mortgage, LLC, et al.* in the Southern District of New York as Case No. 12-cv-3412 (timely filed as Claim No.  4074 on November 9, 2012 in the original  amount of $1,000,000,000.00) has apparently been allowed in the amount of $13,000,000.00 as of January 11, 2016.

113.   The CUC, their attorneys and SA allowed the RESCAP Debtors and their attorneys to retain management and control of the Trust as joint proponent of the Disclosure Statement, joint proponent of the Plan, Amended Plan and Second Amended Plan and excluded the Homeowners from having a share of the valuable assets which were conveyed to the LIQUIDATING TRUST on the false promise that the meager $57.6 Billion Dollar Settlement Fund to be placed into the CLAIMS TRUST would be used for prompt, cash payments of Homeowner Claims, whereas other unsecured creditors who were not classified as "borrowers" would receive certificates of beneficial interest in the LIQUIDATING TRUST and would receive payments as the valuable assets were liquidated.

114.   The promise to make prompt, cash payments proved to be false because the

38

CLAIMS TRUST, through KRAVITZ, as TRUSTEE and the TRUST COMMITTEE of

DRENNEN and MITCHELL have failed to communicate with individual Homeowner

Claimants, failed to estimate the value of their claims, failed to set aside a reserve for contested

Homeowners' Claims, deemed all individual Homeowner Claims to be disputed on May 16,

2014, employed the RESCAP Debtors' counsel to litigate all individual Homeowner Claims for

the purpose of having the Claims disallowed and expunged by adopting a litigation model, not a

settlement model, which should have at least included an independent pre-litigation investigation

of the validity of the Homeowners Claims and could never include the employment of the

RESCAP Debtors' counsel as counsel for the CLAIMS TRUST for litigation, without at least

waiver of the conflict of interest being executed by the individual Homeowners and the RESCAP

Debtors, allowing confidential information in the possession of MOFO to be shared with the

putative beneficiaries of the CLAIMS TRUST.

115.   The CUC and its counsel, who owed a fiduciary duty to the individual Homeowner

Claimants allowed the appointment of conflicted individuals to act as the Trust's "Committee,"

by exclusively vesting the power to appoint the Trust Committee in the attorney for the Kessler

Settlement Class. The present Trust Committee consists of DRENNEN for the Kessler

Settlement Class (Kessler Class) in the consolidated class action styled *In re Community Bank of

Northern Virginia Second Mortgage Lending Practice Litigation*, consolidated in the United

States District Court for the Western District of Pennsylvania, MDL No. 1674, Case Nos. 03-

0425, 02-01201, 05-0688, 05-1386 and MITCHELL for the Mitchell Settlement Class (Mitchell

Class) in the civil action styled *Steven and Ruth Mitchell v. Residential Funding Company, LLC,

et al.*, then pending before the Circuit Court of Jackson County, Missouri, Division 4, Case No.

03-CV-220489. Those individuals, DRENNEN and MITCHELL, are representative plaintiffs on

behalf of the claimants in Kessler and Mitchell class actions and are represented by the same

counsel.

116.   There is an exclusive "Cooperation Agreement" between the Kessler Class and the

Liquidating Trust (Doc. 5342-10), executed as of the effective date of the Chapter 11 Plan

(December 17, 2013), by which the LIQUIDATING TRUST and the Kessler Class are allowed to

pursue recovery for payment of their claims from insurance policies which potentially total

coverage in the amount of $400,000,000,000.00 (Four Hundred Billion Dollars) and from which

the individual homeowners, whose claims are being administered by the CLAIMS TRUST have

been barred and excluded.

117.   There appears to be a direct conflict of interest between DRENNEN, as Kessler

Class representative and the individual homeowners whose claims have been filed in these

proceedings.  It appears that the $300,000,000.00 Kessler Class claim has been allowed. (See

Register of Claims apparently allowing Kessler Class Claim #2110 and expunging Kessler Class

Claims #2117, #2254 and #5596.) The Kessler Class has an allowed claim in the amount of

$300,000,000.00 in the Chapter 11 proceedings.  DRENNEN, as a member of the Trust

Committee, executed the Third Amendment to the Trust Agreement effective May 16, 2014,

without authorization of this Court, to deem all other Homeowners' (defined as "borrowers")

claims to be "deemed disputed."

118.   There appears to be a direct conflict of interest between Mitchell, as Mitchell Class

representative which has a LATE FILED allowed claim in the amount of $14,500,000.00 in the

Chapter 11 proceedings and as a member of the Trust Committee and the individual homeowner

40

claimants.  It appears that the $14,500,000.00 Mitchell Class claim, despite having been filed

late,  has been allowed. (See Register of Claims at apparently allowing the Mitchell Class Claim

#7354, filed on January 17, 2014 allowed in the full amount of $14,500,000.00.)

119.   On May 16, 2014,  DRENNAN and MITCHELL approved the Third Amendment

to the Trust Agreement creating Section 6.3(d) , which provides:

> (d) All Borrower Claims shall be deemed to be Disputed Borrower Claims until and unless
> Allowed by a Final Order or a duly authorized, final, and binding agreement of the
> Borrower Trust.

Section 6.3(d) was added to the Trust Agreement without approval from this Court and solely on

the "advice of counsel."

120.   Furthermore, no Motion to approve the creation of a disputed claims reserve as

proposed in the Second Amended Chapter 11 Plan has ever been heard or determined by the

Court, having been withdrawn prior to hearing, according to the CLAIMS TRUSTS' published

Reserve Report dated June 30, 2015 which contains the asterisked statement:

>  * A motion was filed to estimate claims and establish the Disputed Claims Reserve, but
> was subsequently withdrawn. Therefore the Disputed Claims Reserve has not been
> funded and the estimation of claims are not available.

121.   It appears that both WALTERS, BENDER, STROHBEHN & VAUGHAN, P.C.

and MOFO are now counsel to the CLAIMS TRUST.

122.   Whereas it appeared that KLNF, who served as counsel for the CUC has been

retained to provide services to the LIQUIDATING TRUST, MOFO is acting as litigation counsel

to both the LIQUIDATING TRUST and the CLAIMS TRUST at the present time in the Von

Brincken Adversary Case No. 13-01436 (MG), further exposing the fact that the LIQUIDATING

TRUST is susceptible to challenge for failure of the RESCAP Debtors, as grantors, to surrender

management and control to the LIQUIDATING TRUST, just as they have not surrendered

management and control of the CLAIMS TRUST.

123.  The CLAIMS TRUST will  be shown to not be a Grantor Trust or a Qualified

Settlement Fund and must be held to be an alter ego of the RESCAP Debtors.

124.  Furthermore, although the LIQUIDATING TRUST asserts that it is assisting the

CLAIMS TRUST, through its conflicted counsel, MOFO,  under a "Cooperation Agreement," by

providing Declarations of its employees  to seek to have the Claims of RODE and SMITH and

others similarly situated disallowed and expunged.

125. Deutsche Bank Trust Company Americas (DBTCA) served on the CUC and is a

beneficiary of the LIQUIDATING TRUST, but it had a direct conflict of interest with all

Homeowner Claimants whose collateral documents have purportedly been conveyed into the

RALI Trusts for which DBCTA is purportedly the Trustee.  DBCTA breached its fiduciary duty

to the Homeowner Claimants by continuing to use false documents in foreclosure proceedings

against them and by excluding the Homeowner Claimants from recourse to the LIQUIDATING

TRUST on the false pretense that their claims would be promptly paid in case, when DBCTA

knew or should have known that the meager allocation to the CLAIMS TRUST for Homeowners

Claims would not result in a recovery comparable to that which is anticipated to DBTCA from

the LIQUIDATING TRUST.

126.  FGIC, Allstate, and MBIA served on the CUC and are beneficiaries of the

LIQUIDATING TRUST and had a direct conflict of interest with all Homeowner Claimants who

are alleged to be primarily liable on the collateral documents many of which, upon information

and belief, have been satisfied by FGIC, Allstate and MBIA, information which has been

42

withheld from the Homeowner Claimants and courts throughout the nation.  FGIC, Allstate and MBIA breached their fiduciary duty to the Homeowner Claimants by excluding the Homeowner Claimants from recourse to the LIQUIDATING TRUST on the false pretense that their claims would be promptly paid in case, when they knew or should have known that the meager allocation to the CLAIMS TRUST for Homeowners Claims would not result in a recovery comparable to that which they may anticipate from the LIQUIDATING TRUST.

127.  DUBEL, of FGIC, was co-chair of the CUC and created the LIQUIDATING TRUST for the benefit of all unsecured creditors, except the Homeowner Claimants, in breach of his fiduciary duties to all unsecured creditors, by excluding the Homeowner Claimants from recourse to the LIQUIDATING TRUST on the false pretense that their claims would be promptly paid in case, when DBCTA knew or should have known that the meager allocation to the CLAIMS TRUST for Homeowners Claims would not result in a recovery comparable to that which is anticipated to FGIC from the LIQUIDATING TRUST.  Furthermore DUBEL withheld information from the Homeowner Claimants that would demonstrate that the foreclosure claims against them had already been paid by FGIC on mortgage insurance claims.  DUBEL testified in favor of confirmation of the Second Amended Chapter 11 Plan, but did not disclose that FGIC had paid a substantial number of mortgage insurance claims to the RESCAP Debtors, when he knew or should have known that FGIC had paid mortgage insurance claims to the RESCAP Debtors and the parties for which they acted as mortgage servicers without recourse, paying the debt obligations for which foreclosure claims (frequently brought based on forged documents and falsely sworn affidavits) had been brought and are continuing to be brought against the Homeowner Claimants.  Instead, DUBEL urged confirmation of the Second Amended Chapter

43

11 Plan because the CUC and the RESCAP Debtors had worked so hard on the proposed Second

Amended Plan.

128.   RODE is a purported beneficiary of the putative CLAIMS TRUST and has not

authorized the putative Trust to object to his claim or any other Homeowner's Claim against the

RESCAP Debtors.

129.   RODE has never been contacted by the Trustee of the putative Trust nor is there any

indication that his claim has been considered by the Trust Committee.  His Claims were simply

deemed disputed without any investigation into the merits of his Claims by the Third

Amendment to the Trust Agreement on May 16, 2014.

130.   RODE never received a copy of the Trust Agreement for the CLAIMS TRUST, any

of its amendments or any instrument representing his beneficial interest in the putative Trust nor

did he even receive notice that the CLAIMS TRUST had created the website at

http://www.rescapborrowerclaimstrust.com/

131.   RODE was not contacted by KRAVITZ, in his purported capacity as Trustee of the

CLAIMS TRUST, nor was he contacted by the Trust Committee before the objection to his

Claims was filed by counsel for the RESCAP Debtors, now purporting to represent the CLAIMS

TRUST, based on PRIORE's Declaration.

132.   Upon review of the website maintained by the RESCAP Borrower Claims Trust,

counsel for RODE has informed him of apparent breaches of the fiduciary duty by the Unsecured

Creditors Committee, "Borrower" (Homeowner) Special Counsel, the Trustee of the RESCAP

Borrower Claims Trust and the Borrower Claims Trust Committee.

133.   Moreover, there is no way to contact the CLAIMS TRUST through the published

44

contact feature on its website.  The link for "contact us" leads to an unavailable web page.

(Exhibit A attached hereto.)

134.  RODE has authorized the commencement of these adversary proceedings.

135.  SMITH is a purported beneficiary of the putative Trust and has not authorized the putative Trust to object to her claim or any other Homeowner's Claim against the RESCAP Debtors.

136.  SMITH has never been contacted by the KRAVITZ, the Trustee of the putative CLAIMS TRUST,  nor is there any indication that her claim has been considered by the Trust Committee.  Her Claims were simply deemed disputed without any investigation into the merits of her Claims by the Third Amendment to the Trust Agreement on May 16, 2014.

137.  SMITH never received a copy of the Trust Agreement and its amendments or any instrument representing her beneficial interest in the putative Trust.  She did not receive notice that the CLAIMS TRUST had created the website http://www.rescapborrowerclaimstrust.com/

138. SMITH was not contacted by KRAVITZ, in his purported capacity as Trustee of the CLAIMS TRUST, nor was she contacted by the Trust Committee before the objection to her Claims was filed by counsel for the RESCAP Debtors, now purporting to represent the putative CLAIMS TRUST, based on HORST's Declaration.

139.  Upon review of the website maintained by the RESCAP Borrower Claims Trust, counsel for SMITH has informed her of apparent breaches of the fiduciary duty by the Unsecured Creditors Committee, "Borrower" (Homeowner) Special Counsel, the Trustee of the RESCAP Borrower Claims Trust and the Borrower Claims Trust Committee.

140.  Again, there is no way to contact the CLAIMS TRUST through the published

contact feature on its website. The link for "contact us" leads to an unavailable web page. (Exhibit A attached hereto.)

141. SMITH has authorized the commencement of these adversary proceedings.

## FACTS COMMON TO THE CORE CAUSES OF ACTION

142. The Plaintiffs reallege paragraphs 1-141 as if fully set forth herein.

143. On January 13, 2016, it was discovered that, contrary to the sworn testimony in her Deposition on June 2, 2008 in *U.S. Bank v. Cook*, Northern District of Illinois Case No. 1:07-cv-01544 (Document 64-13 Filed: 11/18/08 ), FABER was never an employee of RFC, much less a Vice President of RFC, as the signature stamp displaying her signature falsely claims.

144. FABER's signature stamp in the falsely claimed capacity of Vice President of RFC purports to specially endorse RODE's Note in favor of DBCTA on an Allonge (Exhibit B).

145. FABER's signature stamp in the falsely claimed capacity of Vice President of RFC purports to specially endorse SMITH's Note in favor of DBCTA (Exhibit C).

146. By placing the signature stamped endorsement of FABER in the false capacity of Vice President of RFC, the RODE Allonge and the SMITH Note were purportedly transferred to the RALI Series 2003-QS12 and RALI Series 2007-QO1 Trusts, respectively.

147. OCWEN, as claiming to be the servicing agent for RODE's Note, as successor in interest to GMACM, is seeking to foreclose on RODE's Homestead, based on the falsely executed Allonge displaying the signature stamp of FABER, in a capacity she never held: Vice President of RFC.

148. OCWEN, as claiming to be the servicing agent for RODE's Note, as successor in interest to GMACM, is seeking to foreclose on RODE's Homestead, based on the falsely

executed Assignment of Deed of Trust, executed by FITTON, in the falsely claimed capacity of

Limited Signing Officer for Mortgage Electronic Registration Systems, Inc., when she was an

employee of ETS, who executed the Assignment of the Deed of Trust on April 16, 2010, years

after the closing date for the RALI Series 2003-QS12 Trust.

149.  Upon information and belief, FABER was not authorized by RFC to pretend to be

its Vice President on the Allonge to RODE's Note.

150.  SOUTHTRUST did not authorize FITTON to execute the Assignment of RODE's

Deed of Trust because it did not exist on April 16, 2010.

151. Mortgage Electronic Registration Systems, Inc. could not act as an agent for a

nonexistent entity to authorize the execution of the Assignment of Mortgage by FITTON.

152.  Upon information and belief, ETS or some other entity which had no lawful interest

in RODE's Deed of Trust, authorized FITTON to execute the Assignment of the Deed of Trust,

if FITTON, which does not alter its status as a forgery in violation of Texas Penal Code Sec.

32.21(a)(1)(A)(i). (Exhibit D)

153.  Upon information and belief, the FABER endorsement on the RODE Allonge and

the FITTON Assignment of the RODE Deed of Trust are forgeries in violation of Texas Pen.

Code Sec. 32.21, which provides:

 FORGERY.  (a)  For purposes of this section:
(1) "Forge" means:
(A)  to alter, make, complete, execute, or authenticate any writing so that it purports:
(i)  to be the act of another who did not authorize that act; . . .
(b)  A person commits an offense if he forges a writing with intent to defraud or harm
another.

154.  FABER's endorsement in the falsely claimed capacity of Vice President of RFC on

SMITH's Note violates the California Penal Code at sec. 470, which provides:

Sec. 470. (a) Every person who, with the intent to defraud, knowing that he or she has no authority to do so, signs the name of another person or of a fictitious person to any of the items listed in subdivision (d) is guilty of forgery.

155. "Judy Faber, as Vice President of Residential Funding Company, LLC" is a

fictitious person because FABER was never an employee or officer of RFC.

156. Upon information and belief, FABER was not authorized by RFC to pretend to be

Vice President of RFC to endorse Notes it acquired from American Mortgage Network, Inc.

157. Upon information and belief, SCHULTZ was not authorized to execute the

Corporate Assignment of Deed of Trust from Mortgage Electronic Registration Systems, Inc. to

his employer's subsidiary, AURORA. (Exhibit E)

## FIRST CAUSE OF ACTION
### Declaratory Relief as to the FABER Endorsements

158. The Plaintiffs reallege paragraphs 1-157 as if fully set forth herein.

159. The forged FABER endorsements of the Notes and Allonges sold by the RESCAP

Debtors are void instruments of no force and effect as commercial instruments.

**WHEREFORE**, the Plaintiffs request that this Court enter a Declaratory Judgment that

Notes and endorsements bearing the FABER signature stamp endorsements are void and of no

force and effect.

## SECOND CAUSE OF ACTION
### Declaratory Relief as to the FITTON Assignment of RODE's Deed of Trust

160. RODE realleges paragraphs 1-159 as if fully set forth herein.

161. The forged FITTON Assignment of Deed of Trust (Exhibit H) has no force and

effect because forged documents create no rights.

48

162.   Moreover, in order for an Assignment of a Deed of Trust to be effective in Texas, the assignee must have a beneficial interest in the debt purportedly secured thereby.

163.  Because the FABER endorsement on the RODE Allonge created no rights and the Assignment of Deed of Trust was executed without authority of the ultimate beneficiary thereof, the FITTON Assignment of RODE's Deed of Trust is void and a nullity.

**WHEREFORE**, the RODE requests that this Court enter a Declaratory Judgment that FITTON Assignment of his Deed of Trust is void and of no force and effect.

### THIRD CAUSE OF ACTION
### Declaratory Relief as to the SCHULTZ Corporate Assignment of SMITH's Deed of Trust

164. SMITH realleges paragraphs 1-159 as if fully set forth herein.

165.  The forged SCHULTZ Corporate Assignment of Deed of Trust (Exhibit I) has no force and effect because it purports to be founded on the concurrent transfer of SMITH's Note, which displays the forged FABER endorsement. Forged documents create no rights.

166.  Moreover, in order for an Assignment of a Deed of Trust to be effective in California, the assignee must have a beneficial interest in the debt purportedly secured thereby.

167.  Because the FABER endorsement on the SMITH Note created no rights and the Corporate Assignment of Deed of Trust was executed without authority of the ultimate beneficiary thereof, the SCHULTZ Assignment of SMITH's Deed of Trust is void and a nullity.

168.  In the alternative and in addition, the SCHULTZ Corporate Assignment of SMITH's Deed of Trust is outside the purported chain of title from RALI to DBCTA and is a forgery by which AURORA purported to alienate the property interest of DBCTA for which it was purportedly the servicing agent.

49

**WHEREFORE**, SMITH requests that this Court enter a Declaratory Judgment that SCHULTZ Assignment of her Deed of Trust is void and of no force and effect.

## FOURTH CAUSE OF ACTION
**Injunctive Relief Against the Use of Void Documents in Foreclosure Proceedings and Proceedings Subsequent to Foreclosure**

169. Plaintiffs reallege paragraphs 1-168 as if fully set forth herein.

170. This Court has the authority to enjoin the commencement and continuation of foreclosure proceedings against RODE because the FABER endorsement on the Allonge and the FITTON Assignment of Deed of Trust were falsely created by employees of the RESCAP Debtors, who are post-effective date Debtors under the continuing authority of this Court.

171. This Court has the authority to enjoin the use of the FABER endorsement in litigation involving SMITH's claim to possession of her Homestead because the FABER endorsement on the SMITH's Note was falsely created by an employee of GMACM, one of the RESCAP Debtors, which is a post-effective date Debtor under the continuing authority of this Court.

**WHEREFORE**, the Plaintiffs demand injunctive relief prohibiting the further use of forged documents created by employees of the RESCAP Debtors in any proceedings in any court proceedings predicate or subsequent to foreclosure and, with respect to the FABER endorsements, which are ubiquitous, for a mandatory injunction requiring the RESCAP Debtors to identify all cases in which FABER endorsements have been used to support foreclosure actions throughout the nation and ordering the Notes and Allonges displaying FABER endorsements to be permanently withdrawn from commerce, both nationally and internationally.

50

## FIFTH CAUSE OF ACTION
### Damages for Breach of Fiduciary Duty

172. Plaintiffs reallege paragraphs 1-171 as if fully set forth herein.

173. The CLAIMS TRUST, the LIQUIDATING TRUST created by the CUC to exclude Homeowner Claimants, the CUC, their individual members (WILMINGTON, DBCTA, BONY-MELLON, MBIA, DRENNEN, US BANK, ALLSTATE, FGIC), their attorneys (KLNF), SA as special counsel to the CUC for Homeowner Claimants, DUBEL, the RESCAP Debtors as Chapter 11 Debtors in Possession, MOFO, KRAVITZ, and MITCHELL breached their fiduciary duties to the Plaintiffs and all those similarly situated by taking some or all of the following actions which are not to be taken as exclusive, pending further discovery :

a. Underestimating the value of the Homeowner Claims;

b. Underfunding the CLAIMS TRUST, falsely representing that the differential treatment of individual Homeowner Claims was justified by the proposal to resolve those claims for cash payments, pro rata at 9% for claims against GMACM and Homecomings, 30% for claims against RFC and 100% against ETS, while concealing the relationship between RFC and ETS which, in cases like RODE's would result in payment of 100% of his damages attributable to the forged FITTON Assignment of Mortgage and the involvement of RFC and RALI in the sales of his collateral document;

c. Failing to disclose to the Homeowner Claimants information known to the CUC that the many of the Notes made by Homeowners and Mortgages or Deeds of Trust had been paid by non-recourse mortgage insurance, credit default swaps and derivatives, or paid in whole or in part by hazard insurance or fraud insurance claims, so that the Homeowners would be denied credit

against their purported debt obligations for those payments;

     d.  Failing to disclose that the CLAIMS TRUST's Agreement had been amended to deem all individual Homeowner Claims to be disputed;

     e.  Failing to create a reserve account for disputed Homeowner Claims;

     f.  Failing to investigate the validity of individual Homeowner Claims;

     g.  Failing to communicate with Homeowner Claimants;

     h.  Preventing Homeowner Claimants from communicating with the Trustee and the Trust Committee;

     i.  Hiring MOFO, former counsel to the RESCAP Debtors to operate a litigation model for the purpose of attempting to disallow and expunge all individual Homeowner claims, using the same model as that created pre-petition under this Court's Order of March 21, 2013 (Doc. 3294) without the exercise of any discretion;

     j.  Self-dealing by DRENNEN and MITCHELL; and

     k.  Excluding the individual Homeowner Claimants from any recourse against the assets of the LIQUIDATING TRUST, the value of which was never estimated or disclosed before confirmation of the Second Amended Chapter 11 Plan;

     l.  Litigating against the individual Homeowner Claimants using employees of the LIQUIDATING TRUST, which was created as a separate entity, without the authority of the putative beneficiaries of the CLAIMS TRUST to proceed against them post-confirmation.

     174.  As a result of the breaches of fiduciary duty described herein and still to be discovered, thousands of Homeowner Claimants have had their claims disallowed and expunged, thousands of Homeowners have lost their homes based on forged documents, when their debt

obligations had already paid in whole or in part by insurance policies provided by members of

the CUC to the RESCAP Debtors (which was never disclosed) and have had their real estate

interests impaired and the use and enjoyment of their homes depreciated or entirely destroyed by

being evicted based on false foreclosure claims, facts never examined by the CUC, its attorneys,

KLNF, SA, KRAVITZ, DRENNEN and MITCHELL.

**WHEREFORE**, the Plaintiffs demand judgment for breach of fiduciary duty:

A.  For RODE and SMITH and all other individual Homeowner Claimants, damages in

the amount of the current market value of their Homestead which were taken without consent for

use as collateral in the RESCAP Debtors' securitization scheme;

B.  For RODE and SMITH, their individual general, consequential and special damages

for the breach of fiduciary duty;

C.  For RODE and SMITH, punitive damages, as appropriate;

D.  By judgment to be entered jointly and severally against the Defendants named in this

Fifth Cause of Action,  reserving the rights of each individual Homeowner Claimant to sue the

Defendants separately for the individual damages beyond the value of their real estate assets and

for punitive damages in courts of competent jurisdiction.

Dated at Madison, Wisconsin this 31ˢᵗ day of January, 2016.


*/s/ Wendy Alison Nora*

_____
Wendy Alison Nora
ACCESS LEGAL SERVICES
310 Fourth Avenue South, Suite 5010
Minneapolis, Minnesota 55415
(612) 333-4144
FAX (612) 206-3170
accesslegalservices@gmail.com
Wisconsin ID #1017043
Minnesota ID #165906

# EXHIBIT A

ResCap
Borrowers Claims Trust     Purpose     Borrower Trust Information     Documents     Reports     Claims Register     Contact Us

# Contact Us

Please use the provided link to contact us concerning questions you may have about your claim.

[Contact Form](#)

©2014 ResCap Borrower Claims Trust

404 (Page Not Found) Error - Ever feel like you're in the wrong place?

12-12020-mg    Doc 9573    Filed 01/31/16    Entered 01/31/16 13:57:04    Main Document

Pg 57 of 76

# Ever feel like you're in the wrong place?



## 404 (Page Not Found) Error

If you're the **site owner,** one of two things happened:

1) You entered an incorrect URL into your browser's address bar, or
2) You haven't uploaded content.

If you're a **visitor** and not sure what happened:

1) You entered or copied the URL incorrectly or
2) The link you used to get here is faulty.
   (It's an excellent idea to let the link owner know.)

# EXHIBIT B

2750

# NOTE

ORIGINAL

March 18, 2003                                                                    Deer Park, Texas

ORIGINAL

2301 West Lawther Lane
Deer Park, TX  77536
[Property Address]

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$265,175.00**(this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **SOUTHTRUST MORTGAGE CORPORATION** . I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

### 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **5.375%**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3.  PAYMENTS

#### (A)  Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on **May 1, 2003**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **April 1, 2018**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at

**SOUTHTRUST MORTGAGE CORPORATION**
**210 Wildwood Parkway, Suite 100**
**Birmingham, AL 35209**

or at a different place if required by the Note Holder.

#### (B)  Amount of Monthly Payments

My monthly payment will be in the amount of U.S. **$2,149.16**.

### 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

### 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3200    1/01—(page 1 of 3 pages)

08/16/00

to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)  Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment " means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor " means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument "), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However,

this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.   The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____   (Seal)
Richard D. Rode                                        -Borrower

_____   (Seal)
                                                             -Borrower

_____   (Seal)
                                                             -Borrower

_____   (Seal)
                                                             -Borrower

[Sign original only]

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3200    1/01 (page 3 of 3 pages)

08/16/00

## ALLONGE

**COMPANY NAME:**    SOUTHTRUST MORTGAGE CORPORATION

**LOAN NUMBER:**    ███2750

**BORROWERS' NAMES:**    RICHARD D. RODE

**PROPERTY ADDRESS:**    2301 WEST LAWTHER LANE , Deer Park, TX 77536

**LOAN AMOUNT:**    $265,175

**INTEREST RATE:**    5.375%

**TERM:**    180 Months

**FIRST PAYMENT:**    05/01/2003

**MATURITY DATE:**    04/01/2018

PAY TO THE ORDER OF
Deutsche Bank Trust Company Americas as Trustee
WITHOUT RECOURSE
Residential Funding Corporation

BY _Judy Faber_

Judy Faber, Vice President

PAY TO THE ORDER OF

RESIDENTIAL FUNDING CORPORATION

WITHOUT RECOURSE
SOUTHTRUST MORTGAGE CORPORATION

By: _Sherry J. Hayes_

SHERRY J. HAYES
Title:    Assistant Secretary

# EXHIBIT C

LOAN NO.    206-989130
MIN:   1001310-2060989130-2

## ADJUSTABLE RATE NOTE

### (MTA-Twelve Month Average Index - Payment Caps)

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.**

NOVEMBER 13, 2006            LOS ANGELES                          CALIFORNIA
          [Date]                      [City]                          [State]
                          4011 HUBERT AVENUE
                          LOS ANGELES, CALIFORNIA 90008-2621
                          [Property Address]

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $   556,000.00   (this amount is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under the terms of this Note but will never exceed ( ONE HUNDRED FIFTEEN PERCENT            ) of the Principal amount I originally borrowed. This is called the "Maximum Limit." Lender is   AMERICAN MORTGAGE NETWORK, INC., A DELAWARE CORPORATION                                              .
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.  INTEREST

**(A)  Interest Rate**

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   1.500   %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**(B)  Interest Rate Change Dates**

The interest rate I will pay may change on the      1ST      day of   JANUARY, 2007   , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

**(C)  Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D)  Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE AND 400/1000         percentage point(s)   3.400   % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest rate will never be greater than   9.950   %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

### 3.  PAYMENTS

**(A)  Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the     1ST         day of each month beginning on JANUARY 01, 2007 . I will make these payments every month until I have paid all the Principal and Interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on DECEMBER 01, 2036     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   P. O. BOX 85302
                          ATTN:  CASHIER'S DEPT., SAN DIEGO, CA 92186
or at a different place if required by the Note Holder.

**PayOption ARM Note - MTA Index**
FE-5312 (0511)                          Page 1 of 4
                          265ST

LOAN NO. 206-989130

**(B)  Amount of My Initial Monthly Payments**
Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S.
$    1,918.87       unless adjusted under Section 3 (F).

**(C)  Payment Change Dates**
My monthly payment may change as required by Section 3(D) below beginning on the    1ST
           day of    JANUARY, 2008   , and on that day every 12th month thereafter. Each
of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F)
or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount
the Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as
provided in Section 3(F) or 3(G) below.  If the Minimum Payment is not sufficient to cover the amount of the
interest due then negative amortization will occur.
I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or
as provided in Section 3(F) or 3(G) below.

**(D)  Calculation of Monthly Payment Changes**
At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the
monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment
Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the
month preceding the Payment Change Date. The result of this calculation is called the "Full Payment."Unless
Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will
not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap."
This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments
Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the
amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the
number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below
requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and
the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

**(E)  Additions to My Unpaid Principal**
Since my monthly payment amount changes less frequently than the interest rate, and since the monthly
payment is subject to the payment limitations described in Section 3 (D), my Minimum Payment could be less
than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay
the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal
payments. For each month that my monthly payment is less than the interest portion, the Note Holder will
subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to
my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by
Section 2. For each month that my monthly payment is greater than the interest portion, the Note Holder will
apply the payment as provided in Section 3 (A).

**(F)  Limit on My Unpaid Principal; Increased Monthly Payment**
My unpaid Principal can never exceed the Maximum Limit equal to    115    percent of the Principal
amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments
and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to
exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change
more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new
Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the
Maturity Date in substantially equal payments at the current interest rate.

**(G)  Required Full Payment**
On the    TENTH    Payment Change Date and on each succeeding fifth Payment Change Date
thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes
again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H)  Payment Options**
After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment
options that are **greater** than the Minimum Payment, which are called "Payment Options." I may be given the
following Payment Options:
    (i)    **Interest Only Payment:**  the amount that would pay the interest portion of the monthly payment
at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is
only available if the interest portion exceeds the Minimum Payment.
    (ii)   **Fully Amortized Payment:**  the amount necessary to pay the loan off (Principal and Interest) at
the Maturity Date in substantially equal payments.
    (iii)  **15 Year Amortized Payment:**  the amount necessary to pay the loan off (Principal and Interest)
within a fifteen (15) year term from the first payment due date in substantially equal payments. This
monthly payment amount is calculated on the assumption that the current rate will remain in effect for
the remaining term.
These Payment Options are only applicable if they are greater than the Minimum Payment.

**PayOption ARM Note - MTA Index**
FE-5312 (0511)                              Page 2 of 4

LOAN NO.    206-989130

**4.    NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)   Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of Principal and Interest. I will pay this late charge promptly but only once on each late payment.

**(B)   Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)   Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)   No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)   Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

LOAN NO.   206-989130

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

RIDER TO THE NOTE AND SECURITY INSTRUMENT ATTACHED AND MADE A PART HEREOF.

_____ (Seal)
TIA DANIELLE SMITH                                -Borrower

_____ (Seal)
                                                  -Borrower

_____ (Seal)
                                                  -Borrower

_____ (Seal)
                                                  -Borrower

Pay to the Order of:

RESIDENTIAL FUNDING COMPANY, LLC
Without recourse,

American Mortgage Network, Inc.,
a Delaware Corporation

By:

Name: Tiffany Rice

Title: Funder

PAY TO THE ORDER OF
Deutsche Bank Trust Company Americas as Trustee
WITHOUT RECOURSE
Residential Funding Company, LLC

BY

Judy Faber, Vice President

NOTE ALLONGE
=================================

For purposes of further endorsement of the following described
Note, this Allonge is affixed and becomes a permanent part of
said Note:

Loan #: 0021796453

Executing Mortgagor:  TIA DANIELLE SMITH

Original Mortgage Amount: $556,000.00

Original Lender: AMERICAN MORTGAGE NETWORK, INC., A DELAWARE
CORPORATION.

Loan Date:  NOVEMBER 13, 2006

Property Address: 4011 HUBERT AVENUE, LOS ANGELES, CA 90008-2621

Pay to the order of: AURORA LOAN SERVICES LLC

Without Recourse

By: _____

Name: _____

Title: _____

Company: Deutsche Bank Trust Company Americas as Trustee FKA
Bankers Trust Company, as Trustee by Residential Funding
Company, LLC FKA Residential Funding Corporation, it's Attorney
in Fact

# EXHIBIT D

20100192001
05/11/2010 RP3 $20.00

Requested and Prepared by:
**Executive Trustee Services, LLC**

When Recorded Mail To:
**Executive Trustee Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, California 91504-3120**

Loan No.: ▮▮▮1023
TS NO: **TX-240297-C**

### ASSIGNMENT OF DEED OF TRUST

**For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:**

**Deutsche Bank Trust Company Americas as Trustee for RALI 2003QS12**

**all beneficial interest under that certain Deed of Trust dated: 3/18/2003 executed by RICHARD D.
RODE A MARRIED MAN BEING JOINED HEREIN PROFORMA BY MY WIFE ,BARBARA O. RODE
TO PERFECT LIEN ONLY , as Trustor(s), to ROBERT D. GARDNER JR. , as Trustee, and recorded
as Instrument No. W532365, on 3/27/2003, in Book , Page of Official Records, in the office of the
County Recorder of Harris County, Texas together with the Promissory Note secured by said Deed
of Trust and also all rights accrued or to accrue under said Deed of Trust.**

**DATE: 4/16/2010**                     MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
SOLELY AS NOMINEE FOR LENDER SOUTHTRUST
MORTGAGE CORPORATION

_____
**Donna Fitton, Limited Signing Officer**

**State of California** } SS.
**County of Los Angeles** }

On **4/16/2010** before me, **Jessica Jenkins** Notary Public, personally appeared **Donna Fitton, Limited
Signing Officer** who proved to me on the basis of satisfactory evidence to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is
true and correct.

**WITNESS** my hand and official seal.

Signature _____ (Seal)
**Jessica Jenkins**

JESSICA JENKINS
Commission # 1867586
Notary Public - California
Los Angeles County
My Comm. Expires Oct 9, 2013

TS NO: **TX-240297-C**

### EXHIBIT "A"

LOT 5, IN BLOCK 1, OF PARK PLACE, SECTION ONE (1), A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF, RECORDED AT FILM CODE NO. 391092 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS

I hereby certify that this instrument was FILED in the number Sequence on the date and at time stamped hereon by me and was duly RECORDED, in the Official Public Records of Real Property of Harris County Texas on

**MAY 1 1 2010**

*Beverly B. Kaufman*
**COUNTY CLERK
HARRIS COUNTY, TEXAS**

FILED
2010 MAY 13 AM 8: 40
COUNTY CLERK
HARRIS COUNTY, TEXAS

RP 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

**RECORDER'S MEMORANDUM:**
At the time of recordation, this instrument was found to be inadequate for the best photographic reproduction because of illegibility, carbon or photo copy, discolored paper, etc. All blackouts, additions and changes were present at the time the instrument was filed and recorded.

# EXHIBIT E

Recording Requested By:
AURORA LOAN SERVICES

When Recorded Return To:

ASSIGNMENT PREP
AURORA LOAN SERVICES
P.O. Box 1706
Scottsbluff, NE  69363-1706

*12/31/2009*

*20091994646*

*20091994646*

124/10-H-1Y

40472

(: 090665570

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Los Angeles, California
**SELLER'S SERVICING #:0021796453 "SMITH"**

**MERS #: 100131020609891302 VRU #: 1-888-679-6377**

Prepared By:  Kathleen Olson,  AURORA LOAN SERVICES 2617 COLLEGE PARK, PO BOX 1706, SCOTTSBLUFF, NE 69363-1706 308-635-3500

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICAN MORTGAGE NETWORK, INC., A DELAWARE CORPORATION IT'S SUCCESSORS OR ASSIGNS hereby grants, assigns and tranfers to AURORA LOAN SERVICES LLC at 2617 COLLEGE PARK, SCOTTSBLUFF, NE  69361 all beneficial interest under that certain Deed of Trust dated 11/13/2006 , in the amount of $556,000.00, executed by TIA DANIELLE SMITH, AN UNMARRIED WOMAN to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICAN MORTGAGE NETWORK, INC., A DELAWARE CORPORATION and Recorded:  12/08/2006  as Instrument No.: 20062729009 in Los Angeles,  California

 Together with the note or notes therein described or referred to, in said Deed of Trust, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

In witness whereof this instrument is executed.

  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICAN MORTGAGE NETWORK, INC., A DELAWARE CORPORATION IT'S SUCCESSORS OR ASSIGNS
On October 1st, 2009

THEODORE SCHULTZ, Vice-President

*SEAL
1995*

*KFO*KFOALSI*10/01/2009 12:05:43 PM* ALSI01ALSIA0000000000000000600632* CALOS A* 0021796453 CASTATE_TRUST_ASSIGN_ASSN **KFOALSI*

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF NEBRASKA
COUNTY OF Scotts Bluff

On October 1st, 2009 before me,  ROBERTA A. RUMMEL, Notary Public, personally appeared THEODORE
SCHULTZ ,  who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized  capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Nebraska that the foregoing paragraph is true
and correct.

WITNESS my hand and official seal,

GENERAL NOTARY-State of Nebraska
ROBERTA A. RUMMEL
My Comm. Exp. Sept. 18, 2010

ROBERTA A. RUMMEL
Notary Expires: 09/18/2010

(This area for notarial seal)

*KFO*KFOALSI*10/01/2009 12:05:43 PM* ALSI01ALSIA00000000000000000600632* CALOS A* 0021796453 CASTATE_TRUST_ASSIGN_ASSN **KFOALSI*

**This page is part of your document - DO NOT DISCARD**



## 20091994646



**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**12/31/09 AT 08:00AM**

Pages:
0003

| | |
|---|---|
| FEES: | 15.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 15.00 |



**L E A D S H E E T**



200912310240015

00001725903



002469713

**SEQ:
18**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

E480070

t35