**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x

In re:                          :
                                :
                                :
RESIDENTIAL CAPITAL, LLC, *et. al.*      :        Chapter 11
                                :        Case No. 12-12020 (MG)
                                :
                   Debtors,     :
----------------------------------------------------------------x
                                :
THE RESCAP BORROWER CLAIMS,     :
        TRUST,                  :
                                :
                   Objector,    :
                                :
        - against -             :
                                :
Tia Danielle Smith,             :        PRETRIAL ORDER
                                :
                   Claimant.    :
                                :
----------------------------------------------------------------x

     The Trust and Claimant having conferred, and having conferred with the Court pursuant to Fed. R. Civ. P. 16, the following statements, directions and agreements are adopted as the Pretrial Order herein.

I.     NATURE OF THE CASE

     **A. Trust's Description of Nature of the Case**

     Tia Danielle Smith ("Claimant") obtained a loan from American Mortgage Network Inc. ("AMN") pursuant to the terms of a note dated November 13, 2006 and signed December 2, 2006 (the "Note"). The Note was secured by a deed of trust (the "Deed of Trust" and, together with the Note, the "Mortgage Loan") in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for AMN and its successors and assigns. Homecomings Financial, LLC ("Homecomings"), one of the debtors in the above captioned chapter 11 cases (collectively, the "Debtors"), began servicing the Mortgage Loan on or around February 1, 2007. On or around April 1, 2008, servicing of the Mortgage Loan was transferred to non-Debtor Aurora Loan Servicing ("Aurora").

     Claimant defaulted on the Mortgage Loan in February 2008, as the Mortgage Loan was owing for the January 1, 2008 payment. Claimant alleges this is because she was told by a representative of Homecomings in November 2007 that she would need to

miss three mortgage payments in order to qualify for a loan modification.  The ResCap Borrower Clams Trust (the "Trust") contends that the Debtors' books and records do not reflect the occurrence of the alleged November 2007 conversation.  Additionally, the Trust contends that the Debtors' books and records show that during conversations with Claimant in February and March 2008, Claimant informed Homecomings' representatives that the reason Claimant did not make her payments was because she did not have sufficient funds because of various financial hardships.

Claimant asserts that she was damaged by Homecomings' alleged statements concerning the requirements for a loan modification.

## B. Claimant's Description of Nature of the Case

Tia Danielle Smith ("Claimant") objects to the standing of Objector as well as the process whereby the RESCAP Borrower Claims Trust seeks to pursue the Objection to the Proofs of Claim, as will be set forth in the Pre-Trial Memorandum.

Claimant was deceived into applying for what was misrepresented to be a conventional mortgage loan to refinance a pre-existing mortgage on her homestead located in Los Angeles, California by a mortgage broker acting as agent for an unlicensed securities dealer, AMN.  A document entitled Promissory Note was prepared bearing the date of November 13, 2006 (the "Note").  A Deed of Trust was prepared bearing the date of November 13, 2006.   Ms. Smith executed the Note and Deed of Trust on December 2, 2006 without knowing that the collateral documents had already been pledged for a warehouse line of credit extended by Wachovia Bank, N.A., now operating as Wells Fargo Bank, N.A.   Ms. Smith did not know that the Note and Deed of Trust were to be used as collateral for a securities offering and did not know that she had not been given a conventional mortgage loan.  A conventional mortgage loan transaction involves a contractual relationship between the homeowner and the lender.  The transaction at issue was an undisclosed acquisition of collateral documents (the Note and Deed of Trust) for re-sale to unidentified third parties in a process known as "securitization."  Had Ms. Smith known that her collateral documents were intended to be re-sold multiple times in the process known as securitization, with profits being taken by each then-unidentified participant in the securitization, she would have declined to enter into the transaction.

As part of the securitization process which was undisclosed to Ms. Smith, but was known to AMN, which Objector calls the "loan" originator, but was actually an unlicensed securities dealer acquiring collateral for re-sale multiple times at a profit to all participants in the securitization process, except Ms. Smith (who was never informed that the unidentified third parties would profit from the sale of the collateral documents without her participation in the proceeds), Ms. Smith's Note and Deed of Trust were sold by AMN to Wachovia (discovered for the first time when Doc. 39 was electronically produced on January 13, 2016), which, in turn, sold the collateral documents to Residential Funding Company, LLC (RFC), which, next sold the collateral documents to Residential Accredit Loans, Inc. (RALI) for the purpose of

~~conveying the collateral documents to the RALI 2007-QO1 Trust, purportedly created in the State of Minnesota, of which Deutsche Bank Trust Company Americas (DBTCA) has been identified as the Trustee.~~

~~In order to conceal the identities of the participants in the undisclosed securitization process, the Deed of Trust contained verbiage which purported to name Mortgage Electronic Registration Systems, Inc. (MERS-III) as nominee for AMN and its successors and assigns.  MERS-III is the third iteration of a Delaware corporation created as a bankruptcy-remote, special purpose vehicle at the behest of ratings agencies in order to obtain favorable ratings of the securities to be offered on behalf of the REMIC Trusts.  If MERS-III had not been created by its parent company, MERSCORP, Inc. (now known as MERSCORP Holdings, Inc.), effective January 1, 1999, the securities offered by REMIC Trusts in which MERS-III was named as nominee of the "Lender" would not have been eligible for the AAA rating necessary for the sale of certificates of beneficial interests to pension and retirement funds. Deposition Testimony of William C. Hultman in the Superior Court of New Jersey, Chancery Division, Atlantic County, Docket No. F-10209-08, entitled Bank of New York as Trustee for the Certificate Holders CWABS,Inc. Asset-backed Certificates, Series 2005-AB3 v. Ukpe, et al. v. Bank of New York as Trustee for the Certificate Holders CWABS,Inc. Asset-backed Certificates, Series 2005-AB3, et al. on April 7, 2010.~~

~~The involvement of MERS-III as nominee for AMN, its successors and assigns, is pertinent to these contested claims proceedings because MERS-III was designed and has been used to conceal the disclosure of the multiple sales of the collateral documents, the pledging of the collateral documents to unidentified third parties, the re-hypothecation of the collateral documents and the creation of various derivative financial instruments emanating from the face value of the collateral documents.~~

~~MERS-III has no employees, no income, no assets and is a name-only, shell corporation, wholly owned by MERSCORP Holdings, Inc. (MERSCORP). MERSCORP owns and operates the MERS® System and receives all income from the operation of the MERS® System.  MERSCORP sells "memberships" to entities involved in the securitization process and claims that MERS-III is the common agent for all of its "members"  The MERS® System includes access to a proprietary computer data base, solely owned by MERSCORP, into which MERSCORP "members" voluntarily input data supposedly representing the beneficial interest in the collateral documents on each individual collateral account, identified by a MIN number and referencing the underlying Notes and Mortgages or Deeds of Trust executed and granted by homeowners who believed that they had entered into a conventional mortgage loan transaction and who were never informed that their collateral documents would be electronically sold, traded, exchanged, pledged, re-hypothecated, and used for the creation of derivative obligation for profit behind the veil of the MERS® System.  Ms. Smith did not consent to the electronic transfer of her collateral documents as required by E-sign at15 U.S.C. Chapter 96, esp. 15 U.S.C. sec. 7001(c), or the California Uniform Electronic Transfers Act (UETA) at Civil~~

~~Code Section 1633.1-1633.17. The sale, trade, exchange, pledge, re-hypothecation, or use of Ms. Smith's collateral documents, bearing her signature, in electronic format (electronic transactions), are unenforceable, 15 U.S.C. 7001 and there is no evidence that RFC, RALI or DBTCA controlled the collateral documents as required by 15 U.S.C. sec. 7021.~~

~~Each of the RESCAP Debtors against whom Ms. Smith has filed her Proofs of Claims violated the California Unfair Competition Law (UCL) by a continuing scheme to deprive her of title, use, occupancy and enjoyment of her Homestead by fraud in the factum when they pretended to take control of her collateral documents and engaged in the electronic transactions for their own profits, without her knowledge and consent.~~

~~Part of the securitization scheme described herein involved creating an alleged default on the underlying obligation represented by the collateral documents, so that claim could be made by the participants in the scheme against third parties who guaranteed payments through mortgage insurance, credit default swaps, collateralized debt obligations and other forms of "exotic" (unregulated) derivatives (credit enhancements). It was necessary to the participants in the securitization scheme to conceal the facts that the collateral documents were not conveyed by delivery to the RALI 2007-QO1 Trust ("RALI Trust") and that the pension and retirement funds which had purchased certificates of beneficial interest in the RALI Trust were collateralized as represented in the RALI Trust's Prospectus. In order to collect multiple times on the various credit enhancements, an alleged "default" in payments on the underlying obligations was engineered by enticing the primary obligors on the underlying obligations into seeking loan modifications which were claimed to be only available if payments were not made for a period of 90 days.~~

Ms. Smith was initially informed that she would be eligible for a "loan modification" if she was three (3) months past due in her payments on September 13 or 15, 2007 by an individual calling himself (or herself, gender being unclear by voice range) Amarivan (ph. sp.?) and claiming to represent Homecomings Financial, LLC ("Homecomings"), the entity to whom she believed she was making monthly payments.

In mid-November, 2007, Ms. Smith contacted "Homecomings" to inquire about a loan modification and was told by "Miriam" that she would have to be three (3) months past due in order to qualify for consideration for a loan modification. Due to business reversals and other financial hardships, and, having been told by Miriam that she would not be eligible for a loan modification unless she was three (3) months days past due in her payments, Ms. Smith made her December, 2007 payment and decided to wait until she was three (3) months past due to contact "Homecomings" to apply for a loan modification.

~~Ms. Smith received a letter dated January 16, 2007 on Homecomings Financial letterhead, informing her:~~

4

Effective 02/01/07, your mortgage transfers to Homecomings Financial from AMN.
(Emphasis added.)

The January 16, 2007 letter provided a new "loan number" for Claimant's account.
Although the Note Claimant signed on December 2, 2006 provided that the debt
instrument could be sold without prior notice, the Note and various riders never used
the term "mortgage servicer." The Note identified the entity to which the Note may
be sold as the Note Holder. Claimant did not know that Homecomings was not the
"Note Holder," after she received the January 16, 2007 letter and began to make the
payments, because she believed that when she was making monthly mortgage
payments to Homecomings, she was making payments to the entity entitled to receive
her monthly payments identified in the Note as the Note Holder. The true identity of
the Note Holder has never been demonstrated by any evidence that the Note was
delivered to the RALI Trust at any time.

AMN had immediately sold Ms. Smith's collateral documents to Wachovia after the
undisclosed securities acquisition transaction on December 2, 2006 (a fact unknown
until January 13, 2016), according to the Transmittal and Bailment Letter from JP
Morgan Chase to Residential Funding Company, LLC (RFC) dated December 18,
2006. According to the filings of the RALI Trust with the Securities and Exchange
Commission (SEC), Residential Funding Company, LLC (RFC), is the "master
servicer" of the Trust; RFC was supposed to have purchased collateral documents
from sellers, like AMN, and was then to have sold the collateral documents to
Residential Accredit Loans, Inc. (RALI) for "deposit" into the RALI Trust.
According to the SEC filings, Homecomings was replaced as subservicer for the
RALI Trust by GMAC Mortgage, LLC (GMACM) effective September 24, 2007, in
order to improve the ratings of the securities issued by all of the 145 RALI Trusts,
which reportedly contained collateral alleged to be valued at $74,327,058,329.00,
including the RALI Trust for which Homecomings and GMACM, pretending to be
Homecomings, claimed to be "subservicers" of Claimant's debt obligation.

As of September 24, 2007, Homecomings was no longer the servicing agent for the
owner of the debt obligation, whatever that entity might be. The owner of the debt
obligation has been variously identified by the entities who have laid claim to Ms.
Smith's collateral documents as, as disclosed to Claimant:
1. AMN (December 2, 2006 Note)
2. RALI 2007-QO1 (April 11, 2008 letter from Aurora, Exhibit H, Smith Third
Amended Complaint (TAC)
3. Aurora Loan Services, LLC (on multiple loan modifications proposals transmitted
by Aurora, Exhibits O-S, TAC)
3. Deutsche Bank Trust Company Americas, as Trustee (for an unidentified trust)
(November 9, 2009, Response to QWR, TAC, Exhibit T)
4. Deutsche Bank National Trust Company Americas, as Trustee (for an unidentified
trust) (August 23, 2011, Exhibit W)
5. Aurora Bank 1099-A (December, 2011-January, 2012, TAC, Exhibit N)

~~In addition, as discovered by Claimant, the following other entities claimed
ownership of the collateral documents, from time to time:~~

~~6. Deutsche Bank National Trust Company Americas, as Trustee (a nonexistent
entity) (retrieved. June 19, 2012 from the MERS® System database, TAC, Exhibit
M)~~

~~7. Aurora Loan Services, LLC (per October 25, 2012 judicial admission of Laurie
Howell, Attorney for Aurora Loan Services, who states that "Deutsche Bank" is the
investor who provided the funds for the loan, not the Lender or Beneficiary for
purposes of the Note and Deed of Deed)~~

~~8. Wachovia, first identified in the electronic document production as Doc. 39 on
January 13, 2016 as the entity which owned the Note and Deed of Trust on December
18, 2006 and which was arranging to sell the collateral documents to RFC through JP
Morgan Chase, demonstrating the RFC had contracted to purchase the collateral
documents~~

~~9. RALI, according to SEC filings, purportedly purchased the collateral documents
for "deposit" into the RALI 2007-QO1 Trust~~

The mid-November, 2007 communication with Miriam was, according to the records
of the Securities and Exchange Commission (SEC), not with "Miriam" of
Homecomings, but was with "Miriam" of GMAC Mortgage, LLC (GMACM).
GMACM had become the subservicer of the collateral documents effective
September 24, 2007 to improve the securities ratings of the RALI Trust.

On or around April 1, 2008, servicing of the payments under the collateral documents
was transferred to Aurora.

Claimant skipped the January, 2008 payment on the Mortgage Loan, as she had been
instructed to do by "Miriam," of GMACM, pretending to represent Homecomings.

~~Claimant asserts that the conduct of the Debtors Homecomings, GMACM, RFC and
RALI violated the California Business and Professions Code at secs. 17200-17210
(UCL) by fraudulently concealing securities transaction in which Claimant had been
unknowingly involved, so that they could profit from the multiple electronic sales of
her collateral documents without her express consent as required by E-sign and
without her authorization under the California Electronic Transactions Act.
Foreclosure of the underlying collateral documents was necessary to conceal the
securitization scheme involving Claimant's collateral documents from the public and
the investors, as well as the Claimant. By engineering the appearance of a "default"
by Ms. Smith, who was instructed that she would have to skip 3 months payments to
be eligible for a loan modification, GMACM, pretending to be Homecomings,
allowed the securitization scheme participants, RFC to make claim for payment of
credit enhancements, before transferring the loan servicing to Aurora, which then
merged into Aurora Bank, which then sold the servicing rights to Nationstar, which,
in turn, sold the underlying collateral consisting of Claimant's Homestead to IH4
Property West, LP, a subsidiary of Invitation Homes, a subsidiary of Blackstone~~

~~Group, by the simple fraud of engineering the default by instructing Claimant to skip three (3) payments in order to be eligible for a loan modification. Three (3) months payments is the 90 day trigger for payment of credit enhancements.~~

~~Claimant is entitled to restitution of her losses of property and income and the disgorgement of profits gained by the violations of the UCL, including, but not limited to, the restoration of the title to her Homestead taken as a direct and proximate result of the misrepresentation, first by Homecomings in September, 2007 and then in November, 2007 by GMACM, that she would have to be three (3) months past due in her payments to qualify for a loan modification, her loss of rental income, her loss of business income, her litigation expenses (including materials, supplies and postage) and the medical and dental expenses incurred as a physical consequence of the misrepresentations upon which she relied. She is also entitled to the disgorgement of the profits made by Homecomings, GMACM, RALI and RFC in the undisclosed securitization process which led to the misrepresentation that she would have to be three (3) months past due in order to qualify for a loan modification, so that RFC could collect on the credit enhancements. RFC is continuing to seek in the United States District Court for the District of Minnesota in Case No. 14-cv-1760, in litigation brought in the name of RFC by the RESCAP Liquidating Trust, claiming in excess of $1.5 billion dollars against AMN, AMNET, LLC and its parent company, Wells Fargo Bank, N.A. as guarantors of the collateral documents acquired from AMN, in which the face value of Ms. Smith's collateral documents are identified in the amount of $556,000.00.~~

## II.    BASIS FOR JURISDICTION, WHETHER THE CASE IS CORE OR NON-CORE, AND WHETHER THE BANKRUPTCY JUDGE MAY ENTER FINAL ORDERS OR JUDGMENT

Jurisdiction arises under 28 U.S.C. sec. 1334. This Court has jurisdiction to hear and decide this matter under 28 U.S.C. sec. 157(a), 157(b)(1) and 157(b)(2)(B). Claimant submits that the Objection to the Proofs of Claim is a core matter with respect to which the bankruptcy court may enter final orders.

## III.    STIPULATED FACTS

1. On December 2, 2006, AMN acquired an Adjustable Rate Note (Note) and Deed of Trust (collateral documents).

2. The Note and Deed of Trust identified AMN as the "Lender."

3. The Deed of Trust granted a security interest in Claimant's Homestead located at 4011 Hubert Ave., in the City of Los Angeles, County of Los Angeles, State of California to the Lender, by naming Mortgage Electronic Registration Systems, Inc. as "nominee" for the Lender and Lender's successors and assigns.

4.     The Deed of Trust  also named Mortgage Electronic Registration Systems, Inc. as the beneficiary of the Deed of Trust.

5.     Claimant has always lived at 4011 Hubert Ave., Los Angeles, California 90008 since she purchased the property in 2003.

## IV.    PARTIES' CONTENTIONS

The pleadings are deemed amended to embrace the following, and only the following, contentions of the parties:

### A.    Claimant's Contentions

6.     On  December 2, 2006, AMN acquired the Note and Deed of Trust (collateral documents) executed by Claimant for the purpose of selling the collateral documents to be used as collateral for the issuance of securities by a Real Estate Mortgage Investment Conduit (REMIC) Trust, purportedly established in the State of Minnesota.

7.     AMN sold the collateral documents to Wachovia, N.A. ("Wachovia") after Ms. Smith executed the Note and Deed of Trust on December 2, 2006.

8.     Debtor Residential Funding Company, LLC ("Residential Funding") purchased the collateral documents from Wachovia and transferred its interest in the collateral documents to RALI.

9.     RALI identified the collateral documents acquired from the Claimant on a spread sheet which was used to entice investors to purchase certificates of beneficial interest in an entity denominated as the "RALI 2007-QO1 Trust," ("RALI Trust") reportedly created in the State of Minnesota.

10.    The spread sheet was exchanged with the RALI Trust as collateral for the issuance of the certificates of beneficial interest, which were sold to investors.

11.    According to the records of the SEC, DBTCA is the Trustee of the RALI Trust, the existence of which has not been verified.

12.    Homecomings acted as the servicing agent for the collateral documents by collecting payments from Ms. Smith until September 24, 2007, when the servicing rights were transferred by Homecomings to GMACM in order to obtain a better rating for the securities of which RFC was the master servicer.

13.    Claimant was told that she would have to be 90 days past due in order to qualify for a loan modification by "Miriam" of GMACM in November, 2007.

14.    In reliance on the representation of "Miriam" of GMACM, Claimant did not make the January 1, 2008 payment as required by the collateral documents.

15.  In reliance on the representation of "Miriam" of GMACM, Claimant did not make the February 1, 2008 payment as required by the collateral documents.

16.  Claimant did not have a telephone conversation with anyone representing GMACM, pretending to represent Homecomings, on February 1, 2008, at which time Claimant supposedly advised anyone that she was not able to make any payments on that day because her business is slow.

17.  Claimant did not have a telephone conversation with anyone representing GMACM, pretending to represent Homecomings on February 8, 2008, and never told such a pretended person on that date that her business is really slow and she would not be able to make a payment until March 13, 2008.

18.  Claimant did not receive a letter dated on or around February 11, 2008, from GMACM, pretending to represent Homecomings on Homecomings' letterhead, detailing the options available to her to avoid foreclosure.

19.  Claimant did not have a telephone conversation with anyone representing GMACM,  pretending to represent Homecomings on February 11, 2008, and never told such a pretended person on that date that she could not make a payment at that time because she did not have sufficient funds.

20.  Claimant did not have a telephone conversation with anyone representing GMACM, pretending to represent Homecomings on February 13, 2008 and never told such a pretended person on that date that she had been having problems with her business and she was not able to make a payment on that date.

21.  Claimant did not have a telephone conversation with anyone representing GMACM, pretending to represent Homecomings on February 22, 2008, and never told such a pretended person on that date that she did not have sufficient funds to make a payment because her mother, who had been assisting her with the payments, had moved out.

22.  Claimant did not have a telephone conversation with anyone representing GMACM, pretending to represent Homecomings on March 10, 2008 that she had made some bad investments in the stock market and her mother, who had been living with her and helping her with her payments, had moved out in October 2007 and as a result she was not able to make a payment at that time.

23.  Claimant never received a letter purportedly sent to her on or around March 3, 2008 from GMACM, pretending to be Homecomings on Homecomings' letterhead, informing her that by not making her payments, she was in breach of the "Mortgage Loan," which was not a Mortgage Loan but consisted of collateral documents acquired by a unlicensed securities dealer for resale on December 2, 2006 backed by a warehouse line of credit for which Ms. Smith's collateral documents had been pledged on the date of her application and before consummation of a mortgage loan transaction.

24. Claimant never received a letter purportedly sent to her on or around March 14, 2008, from GMACM, pretending to be Homecomings on Homecomings' letterhead, informing her that effective April 1, 2008, servicing of the Mortgage Loan would transfer to Aurora.

25. Claimant did not make a payment to Homecomings on March 17, 2008.

26. According to GMACM, the collateral documents were paid through the amount due   for the February 1, 2008 payment, but Claimant had ceased making payments as of January 1, 2008 in order to qualify for a loan modification.

27. GMACM claims that at the time that servicing of the collateral documents was transferred to Aurora on April 1, 2008, the payments under the collateral documents were in default; Ms. Smith claims she had been informed by Homecomings' Amarivan and GMACM's Miriam that she had to skip 3 months payments in order to qualify for a loan modification agreement.

28. Aurora thereafter undertook to provide Ms. Smith with loan modification opportunities.

29. ~~The collateral documents have been purchased and sold electronically  multiple times without Claimant's consent as required under E-sign and UETA.~~

30. ~~In the course of transmitting the collateral documents electronically, the endorsement of Judy Faber, pretending to be Vice President of RFC was stamped on the Note.~~

31. Judy Faber was not a Vice President of RFC at any time.

32. ~~The Claimant continues to live in the property located at 4011 Hubert Ave., Los Angeles, California 90008 as a result of strenuous litigation efforts, which have been largely blunted by the concealment of the entities involved in the securitization and servicing process and was substantially disrupted by the Debtors' May 14, 2012 bankruptcy filing, the automatic stay in which hollowed out the continuity of the transactions in violation of the UCL and other causes of action, thus far preventing her from proving her right to equitable relief, damages and restitution against all participants in the scheme.~~

**B.    Trust's Contentions**

*Loan Origination, Ownership and Servicing*

1. On December 2, 2006, AMN originated the Mortgage Loan in the amount of $556,000, plus interest to the Claimant.

2. The Mortgage Loan is evidenced by a Note to AMN executed by the Tia Danielle Smith on November 13, 2006.

3.   The Mortgage Loan is secured by a deed of trust on 4011 Hubert Ave., Los
     Angeles, CA 90008.

4.   Debtor Residential Funding Company, LLC ("Residential Funding") purchased
     the Mortgage Loan from AMN and transferred its interest in the Mortgage Loan
     when the Mortgage Loan was securitized on or around January 30, 2007 where
     Deutsche Bank Trust Company Americas (was appointed as trustee.

5.   Homecomings serviced the Mortgage Loan from on or around February 1, 2007
     until servicing was transferred to Aurora on April 1, 2008.

*Default of the Mortgage Loan*

6.   Claimant did not make the January 1, 2008 payment on the Mortgage Loan.

7.   Claimant did not make the February 1, 2008 payment on the Mortgage Loan.

8.   On February 1, 2008, a Homecomings representative spoke with Claimant, at
     which time Claimant advised that she was not able to make any payments that
     day because her business is slow.

9.   On February 8, 2008, Homecomings representative spoke with Claimant, at
     which time Claimant stated that her business is really slow and she would not be
     able to make a payment until March 13, 2008.

10.  On or around February 11, 2008, Homecomings sent a letter to Claimant
     detailing the options available to her to avoid foreclosure.

11.  On February 11, 2008, a representative of Homecomings spoke to Claimant, at
     which time Claimant stated that she could not make a payment at that time
     because she did not have sufficient funds.

12.  On February 13, 2008, a representative of Homecomings spoke to Claimant, at
     which time Claimant stated that she had been having problems with her business
     and she was not able to make a payment on that date.

13.  On February 22, 2008, a representative of Homecomings spoke to Claimant, at
     which time Claimant stated that she did not have sufficient funds to make a
     payment because her mother, who had been assisting her with the payments, had
     moved out.

14.  On or around March 3, 2008, Homecomings sent a letter to Claimant informing
     her that by not making her payments, she was in breach of the Mortgage Loan.

15. On March 10, 2008, a representative of Homecomings spoke to Claimant, at which time Claimant stated that she had made some bad investments in the stock market and her mother, who had been living with her and helping her with her payments, had moved out in October 2007 and as a result she was not able to make a payment at that time.

16. On March 14, 2008, Homecomings sent a letter to Claimant informing her that effective April 1, 2008, servicing of the Mortgage Loan would transfer to Aurora.

17. On March 17, 2008, Claimant remitted a payment on the Mortgage Loan, making the account due for the February 1, 2008 payment.

18. At the time the servicing of the Mortgage Loan was transferred to Aurora on April 1, 2008, the Mortgage Loan was in default.

19. No Debtor entity ever commenced any foreclosure proceeding against Claimant.

## V.    ISSUES TO BE TRIED

1. Whether Claimant was instructed by a representative of Homecomings and/or GMACM that she had to skip three (3) monthly payments in order to qualify for a loan modification, whether the instructions to skip three (3) months of payments was fraudulently made in order to create the appearance of default, and whether such purported instruction constitutes a violation of California Business & Professions Code Section 17200, et seq.

2. The extent of  restitution for losses and disgorgement of profits to which Claimant is entitled as the result of the alleged misrepresentation that she would have to miss three (3) months of payments in order to qualify for a loan modification to be allowed under the California Business & Professions Code Section 17200, et seq.

## VI.    CLAIMANT'S EXHIBITS

1. All documents from the SEC-Edgar website pertaining to the RALI 2007-QO1 Trust, as judicially noticeable under Rule 201 of the Federal Rules of Evidence or as public admissions. **[Each exhibit must be specifically identified.]**

2. All Written Discovery Responses from Objector, not including the documents produced challenged by Claimant for lack of authenticity, except as specified herein **[Each exhibit must be specifically identified.]**

3. GMAC RFC Servicer Guide Version 2-07-G01, effective November 1, 2007

4. Seller/Servicer Contract (Objector's Document #11)

5. Transmittal and Bailment Letter from JP Morgan Chase to RFC dated December 18, 2006

6. All Written Discovery Responses from Claimant **[Each exhibit must be specifically identified.]**

7. The Deposition of William C. Hultman in the Superior Court of New Jersey, Chancery Division, Atlantic County, Docket No. F-10209-08, entitled Bank of New York as Trustee for the Certificate Holders CWABS,Inc. Asset-Backed Certificates, Series 2005-AB3 v. Ukpe, et al. v. Bank of New York as Trustee for the Certificate Holders CWABS,Inc. Asset-Backed Certificates, Series 2005-AB3, et al. on April 7, 2010.

8. December 2, 2006 Note endorsed in blank

9. December 2, 2006 Note specially endorsed by Judy Faber, with Allonge;

10. December 2, 2006 Deed of Trust.

11. October 1, 2009 Corporation Self Assignment of Deed of Trust executed by Theodore Schultz, pretending to be an officer of Mortgage Electronic Registration Systems, Inc.

12. January 16, 2007, letter from Homecomings stating that the "mortgage has been transferred from AMN to Homecomings.

13. All documents submitted as Claimant's Response to the Request for Production of Documents propounded by the Borrower Claims Trust. **[Each exhibit must be specifically identified.]**

14. Certified Copy of the Declaration of Trust for the RALI 2007-QO1 Trust, if any, pending production from the Secretary of State for the State of Minnesota.

15. Certified Copy of the Registration of the RALI 2007-QO1 Trust, if any, pending production from the Secretary of State for the State of Minnesota.

16. The MERSCORP member list retrieved on December 23, 2014.

17. All responses to Requests for Admission on behalf of Homecomings, GMACM, RFC and RALI.  **[Each exhibit must be specifically identified.]**

18. All responses to Interrogatories on behalf of Homecomings, GMACM, RFC and RALI. **[Each exhibit must be specifically identified.]**

19. Declaration of Deanna Horst dated June 25, 2014 (Doc. 7188-2).

20.  Complaint and Exhibits and Amended Complaint in RFC v. American Mortgage Network, Inc., et al. in the United States District Court for the District of Minnesota in Case No. 14-cv-1760, with the attached Exhibits A and C

21.  Exhibit A to the Third Amended Complaint in Smith v. American Mortgage Network, et al., filed in the Superior Court for the State of California, County of Los Angeles as Case No. BC465542 (the "Third Amended Complaint") (the Note)

22.  Exhibit B to the Third Amended Complaint (Deed of Trust)

23.  Exhibit C to the Third Amended Complaint (Loan Application)

24.  Exhibit D to the Third Amended Complaint (Truth in Lending Statement)

25.  Exhibit E to the Third Amended Complaint (Notice of Default from Aurora

26.  Exhibit F to the Third Amended Complaint (Substitution of Trustee)

27.  Exhibit G to the Third Amended Complaint (Assignment dated October 2009)

28.  Exhibit H to the Third Amended Complaint (Letter from Aurora Dated April 11, 2008)

29.  Exhibit I to the Third Amended Complaint (Memo from Deutsche to Loan Servicers, dated July 28, 2008)

30.  Exhibit J to the Third Amended Complaint (Internet search for AMN on California Business search website)

31.  Exhibit K to the Third Amended Complaint (Trustee's Deed Upon Sale)

32.  Exhibit M to the Third Amended Complaint (Copy of MERS website search)

33.  Exhibit N to the Third Amended Complaint (1099-A from Aurora)

34.  Exhibit O to the Third Amended Complaint (Repayment Agreement with Aurora, dated May 2008)

35.  Exhibit P to the Third Amended Complaint (Repayment Agreement with Aurora, dated June 2008)

36.  Exhibit R to the Third Amended Complaint (Workout agreement with Aurora dated January 2009)

37.  Exhibit S to the Third Amended Complaint (Workout agreement with Aurora dated January 2009)

38.  Exhibit T to the Third Amended Complaint (QWR Response from Aurora)

39.    Exhibit U to the Third Amended Complaint  (Notice of Default executed by Cal-Western Reconveyance related to property owned by Michael and Jamie Smerdel)

40.    Exhibit V to the Third Amended Complaint (Discharges of Mortgage by Aurora)

41.    Exhibit W to the Third Amended Complaint (Letter from Cal-Western Reconveyance dated August 2011)

42.    Deposition Testimony of Judy Faber on June 2, 2008 in U.S. Bank v. Cook, Northern District of Illinois Case No. 1:07-cv-01544,  Document 64-13 Filed: 11/18/08 Page 1 of 53 PageID #:346.

43.    The following documents produced by Claimant supporting her claim for litigation expenses, attorneys fees, loss of income, profits taken by the servicing scheme, including mortgage payments made to Homecomings/GMACM:

    **a)** Residential Lease Agreement (Barnett)

    **b)** Residential Lease Agreement (DeLoatch)

    **c)** Business Profit and Loss (Revive! a hair spa)

    **d)** Medical Expenses

    **e)** Medical Prescription Expenses

    **f)** Postage & Shipping Expenses

    **g)** Supplies Expense

    **h)** Dental Expenses

    **i)** Market Analyses for Subject Property

VII.    TRUST'S EXHIBITS

1.    Note, dated December 2, 2006

2.    Deed of Trust, dated December 2, 2006

3.    Loan History (i.e., Servicing Notes) for the Mortgage Loan account from May 7, 2007 through April 1, 2008

4.    Goodbye Letter from AMN dated December 30, 2006

5.    Options to Avoid Foreclosure Letter, dated February 11, 2008

6.    Breach Letter, dated March 3, 2008

7.    Goodbye Letter, dated March 14, 2008

8.    Claimant's credit card statements from Chase Bank for the periods September 26, 2007 through December 25, 2007 and February 26, 2008 through April 25, 2008.

9.    Claimant's bank statements from Bank of America for the period September 18, 2007 through April 18, 2008.

10.    Claimant's credit card statements from Saks Fifth Avenue dated September 26, 2007, October 26, 2007, February 26, 2008, and March 26, 2008.

11.    Claimant's bank statements from Comerica Bank for the periods October 2, 2007 through October 19, 2007 and December 21, 2007 through April 18, 2008.

12.    Claimant's responses to Trust's Request for Admissions, dated December 3, 2015

13.    Claimant's Responses to the Trust's Request for Interrogatories from Trust, dated December 16, 2015

No exhibit not listed by Claimant or the Trust may be used at trial except (a) for cross-examination purposes , (b) for rebuttal, or (c) if good cause for its exclusion from the pretrial order is shown.

VIII.    STIPULATIONS AND OBJECTIONS WITH RESPECT TO EXHIBITS

**A. The Parties stipulate to the authenticity of the following Exhibits:**

1.    All documents from the SEC-Edgar website pertaining to the RALI 2007-QO1 Trust, as judicially noticeable under Rule 201 of the Federal Rules of Evidence or as public admissions.

2.    All Written Discovery Responses from Objector

3.    GMAC RFC Servicer Guide Version 2-07-G01, effective November 1, 2007

4.    Seller/Servicer Contract (Objector's Document #11)

5.    Transmittal and Bailment Letter from JP Morgan Chase to RFC dated December 18, 2006

6.    All Written Discovery Responses from Claimant

7.    January 16, 2007, letter from Homecomings stating that the "mortgage has been transferred from AMN to Homecomings.

8.    All responses to Requests for Admission on behalf of Homecomings, GMACM, RFC and RALI.

9.    All responses to Interrogatories on behalf of Homecomings, GMACM, RFC and RALI.

10.    Declaration of Deanna Horst dated June 25, 2014 (Doc. 7188-2).

11.    Goodbye Letter from AMN dated December 30, 2006

12.    Claimant's credit card statements from Chase Bank for the periods September 26, 2007 through December 25, 2007 and February 26, 2008 through April 25, 2008.

13.    Claimant's bank statements from Bank of America for the period September 18, 2007 through April 18, 2008.

14.    Claimant's credit card statements from Saks Fifth Avenue dated September 26, 2007, October 26, 2007, February 26, 2008, and March 26, 2008.

15.    Claimant's bank statements from Comerica Bank for the periods October 2, 2007 through October 19, 2007 and December 21, 2007 through April 18, 2008.

16.    Claimant's Response to Requests for Admissions from Trust, dated December 4, 2015


The Parties stipulate to the admissibility of the following Exhibits:

1.    All documents from the SEC-Edgar website pertaining to the RALI 2007-QO1 Trust, as judicially noticeable under Rule 201 of the Federal Rules of Evidence or as public admissions.

2.    All Written Discovery Responses from Objector, not including the documents produced;

3.    GMAC RFC Servicer Guide Version 2-07-G01, effective November 1, 2007

4.    Seller/Servicer Contract (Objector's Document #11)

5.    Transmittal and Bailment Letter from JP Morgan Chase to RFC dated December 18, 2006

6.    January 16, 2007, letter from Homecomings stating that the "mortgage has been transferred from AMN to Homecomings.

7.    All responses to Requests for Admission on behalf of Homecomings, GMACM, RFC and RALI.

8.     All responses to Interrogatories on behalf of Homecomings, GMACM, RFC and RALI.

9.     Declaration of Deanna Horst dated June 25, 2014 (Doc. 7188-2).

10.    Goodbye Letter from AMN dated December 30, 2006

11.    Claimant's Response to Requests for Admissions from Trust, dated December 4, 2015

## B.   Claimant's Objections

1.     Note, dated November 13, 2006  because was not produced in discovery, has not been properly identified or authenticated. For avoidance of doubt, Claimant did not sign a Note on November 13, 2006. Fed. R. Evid. 901.

2.     Mortgage, dated November 13, 2006 because Claimant never executed a Mortgage on the subject property and did not execute any security interest pertaining to any real estate on November 13, 2006.  If this document exists, it is not authentic. Fed. R. Evid. 901.

3. 3.    Loan History (i.e., Servicing Notes) for the Mortgage Loan account from May 7, 2007 through April 1, 2008.  These documents have not been authenticated, their source is unknown and they are unreliable hearsay, to which the business records exception to the hearsay rule does not apply.  They cannot be admitted without foundation.  Fed. R. Evid. 602, 802 and 901.

4.  Options to Avoid Foreclosure Letter, dated February 11, 2008 has not been authenticated; there is no evidence that it was sent or received; it is irrelevant to the issues in these proceedings; and it is hearsay to which the business records exception does not apply. Fed. R. Evid.  401, 602, 802 and 901.

5.  Breach Letter, dated March 3, 2008 2008 has not been authenticated; there is no evidence that it was sent or received; it is irrelevant to the issues in these proceedings; and it is hearsay to which the business records exception does not apply. Fed. R. Evid.  401, 602, 802 and 901.

6.  Goodbye Letter, dated March 14, 2008 has not been authenticated; there is no evidence that it was sent or received; it is irrelevant to the issues in these proceedings; and it is hearsay to which the business records exception does not apply. Fed. R. Evid.  401, 602, 802 and 901.

7.  Claimant's credit card statements from Chase Bank for the periods September 26, 2007 through December 25, 2007 and February 26, 2008 through April 25, 2008 because they are irrelevant to any issue in these proceedings. Fed. R. Evid. 401.

8.  Claimant's bank statements from Bank of America for the period September

18, 2007 through April 18, 2008 because they are irrelevant to any issue in these proceedings. Fed. R. Evid. 401.

9.  Claimant's credit card statements from Saks Fifth Avenue dated September 26, 2007, October 26, 2007, February 26, 2008, and March 26, 2008 because they are irrelevant to any issue in these proceedings. Fed. R. Evid. 401.

10.  Claimant's bank statements from Comerica Bank for the periods October 2, 2007 through October 19, 2007 and December 21, 2007 through April 18, 2008 because they are irrelevant to any issue in these proceedings. Fed. R. Evid. 401.

## C.    Trust's Objections

1.    The Trust objects to the "Deposition of William C. Hultman in the Superior Court of New Jersey, Chancery Division, Atlantic County, Docket No. F-10209-08, entitled *Bank of New York as Trustee for the Certificate Holders CWABS,Inc. Asset-Backed Certificates, Series 2005-AB3 v. Ukpe, et al. v. Bank of New York as Trustee for the Certificate Holders CWABS,Inc. Asset-Backed Certificates, Series 2005-AB3*, et al. on April 7, 2010" because it has not been provided to the Trust in response to its request for production of documents.

2.  The Trust objects to "All documents submitted as Claimant's Response to the Request for Production of Documents propounded by the Borrower Claims Trust" because it is not sufficiently specific regarding which of the numerous documents produced the Claimant wishes to introduce.

3.  The Trust objects to the "Certified Copy of the Declaration of Trust for the RALI 2007-QO1 Trust, if any, pending production from the Secretary of State for the State of Minnesota" because it has not been provided to the Trust in response to its request for production of documents and also because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

4.  The Trust objects to the "Certified Copy of the Registration of the RALI 2007-QO1 Trust, if any, pending production from the Secretary of State for the State of Minnesota" because it has not been provided to the Trust in response to its request for production of documents and also because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

5.  The Trust objects to the "MERSCORP member list retrieved on December 23, 2014" because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

6.  The Trust objects to the "October 1, 2009 Corporation Self Assignment of

Deed of Trust executed by Theodore Schultz, pretending to be an officer of Mortgage Electronic Registration Systems, Inc." because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

7.  The Trust objects to the "Exhibit A to the Third Amended Complaint" because it is duplicative of other exhibits offered by the Claimant.

8.  The Trust objects to the "Exhibit B to the Third Amended Complaint" because it is duplicative of other exhibits offered by the Claimant.

9.  The Trust objects to the "Exhibit E to the Third Amended Complaint" because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

10.  The Trust objects to the "Exhibit F to the Third Amended Complaint" because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

11.  The Trust objects to the "Exhibit G to the Third Amended Complaint" because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403, and is duplicative of other exhibits offered by the Claimant.

12.  The Trust objects to the "Exhibit H to the Third Amended Complaint" because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

13.  The Trust objects to the "Exhibit I to the Third Amended Complaint" because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

14.  The Trust objects to the "Exhibit J to the Third Amended Complaint" because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

15.  The Trust objects to the "Exhibit M to the Third Amended Complaint" because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

16.  The Trust objects to the "Exhibit N to the Third Amended Complaint" because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if

relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

17.  The Trust objects to the "Exhibit O to the Third Amended Complaint" because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

18.  The Trust objects to the "Exhibit P to the Third Amended Complaint" because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

19.  The Trust objects to the "Exhibit R to the Third Amended Complaint" because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

20.  The Trust objects to the "Exhibit S to the Third Amended Complaint" because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

21.  The Trust objects to the "Exhibit T to the Third Amended Complaint" because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

22.  The Trust objects to the "Exhibit U to the Third Amended Complaint" because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

23.  The Trust objects to the "Exhibit V to the Third Amended Complaint" because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

24.  The Trust objects to the "Exhibit W to the Third Amended Complaint" because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid. 403.

25.  The Trust objects to the "Deposition Testimony of Judy Faber on June 2, 2008 in *U.S. Bank v. Cook,* Northern District of Illinois Case No. 1:07-cv-01544,  Document 64-13 Filed: 11/18/08 Page 1 of 53 PageID #:346" because it is not relevant as required by Fed. R. Evid. 401 and 402, and even if relevant, its probative value is outweighed the danger of waste of time under Fed. R. Evid.

403.

Any objections not set forth herein will be considered waived absent good cause shown.  The parties shall set forth any stipulations with respect to the authenticity and admissibility of exhibits and indicate all objections to exhibits and the grounds therefor.

## IX.    CLAIMANT'S WITNESS LIST

1.  Tia Danielle Smith

2.  Nawaz Raja

## X.    TRUST'S WITNESS LIST

1.  Sara Lathrop

The witness listed may be called at trial.  No witness not identified herein shall be permitted to testify on either party's case in chief absent good cause shown.  Each party shall list the witnesses it intends to call on its case in chief and, if a witness's testimony will be offered by deposition, shall designate by page and line numbers the portions of the deposition transcript it intends to offer.  Each party shall set forth any objections it has to deposition testimony designated by the other and the basis therefor.

## XI.    RELIEF SOUGHT

Relief Sought By Claimant

Claimant demands restitution and disgorgement of profits to the full extent allowed by the California Unfair Competition Law at Business and Professions Code secs. 17200-17210, reserving her rights to reinstate of all causes of action stated in her original Proofs of Claim on appeal.

Equitable Relief

Recovery of the original Note at issue in these proceedings as procured by fraud

Restitution for all litigation expenses pertaining to the defense of Claimant's Homestead

Restitution for lost rental income

Restitution for lost business income

Restitution for mortgage payments made to Homecomings from October, 2007 to December, 2007, when it was not the servicing agent for the party entitled to receive her payments

Restitution for mortgage payments made to Aurora from May, 2008 to July, 2010 as a result of the transfer of the servicing rights by Homecomings, when Homecomings no longer the servicing agent RALI Trust

Restitution for necessary medical and dental expenses directly related to the fraudulent misrepresentation that the Claimant was required to skip three (3) months of mortgage payments to qualify for a loan modification

Mental anguish: to be determined at the evidentiary hearing (may be recoverable?)

Loss of credit worthiness: to be determined (may be recoverable?)

Restitution of all profits made in the securitization process

Relief Sought by Trust

The Trust is seeking to have Ms. Smith's Proofs of Claim disallowed and expunged

## XII.   DEADLINES AND HEARING DATE

The parties propose the following pretrial deadlines:

- Written direct testimony for each witness that the parties intend to call at trial shall be exchanged **not later than January 26, 2016**.  Two courtesy copies of each witness's written direct testimony shall be provided to chambers concurrently with the parties' exchange.  Neither party shall be permitted to call any witness to testify at trial (except rebuttal witnesses, if any) unless such witness's direct testimony has been provided to the opposing party by January 26, 2016.

- Pretrial memoranda of law, which shall include a statement of the elements of each claim or defense involving such party, together with a summary of the facts relied upon to establish each element, and addressing any evidentiary issues anticipated to arise during evidentiary hearing on this matter (the "Trial"), shall be filed **not later than January 26, 2016**.

- The parties shall participate in a telephonic pretrial conference at **1:00 p.m. prevailing Eastern Time on January 27, 2016**.

- **Not later than 5:00 p.m. prevailing Eastern Time on February 1, 2016**, each party shall provide to the Court with (but not file) two copies of (i) the respective party's final witness and exhibit lists and (ii) pre-marked exhibits (Claimant to identify her exhibits with numbers, e.g., 1, 2, 3, etc.; the Trust to identify its exhibits with letters, e.g., A, B, C, etc.), assembled sequentially in notebooks and tabbed, or, if too voluminous, with each exhibit placed in a separate manila folder with number or letter visible on the lip, and the folder placed in a suitable container or box for ready reference.  Each exhibit list shall include a description of each exhibit.  One copy of the witness and exhibit lists and one

set of exhibits should be provided to opposing counsel.  No witnesses or exhibits that are not listed in the witness and exhibit lists may be used at the Trial.

- **Not later than 12:00 p.m. prevailing Eastern Time on February 3, 2016**, Claimant's counsel shall provide corrected exhibit designations to the Court and to the Trust's counsel.

- **Not later than 5:00 p.m. prevailing Eastern Time on February 5, 2016**, each party shall provide to the Court, as well as to opposing counsel, a list of any objections to written testimony; provided, however, that such objections must specifically identify the portion(s) of the written testimony at issue.

The Trial shall take place on **February 9, 2016 at 8:30 a.m. prevailing Eastern Time**.

XIII.    EVIDENTIARY HEARING PROCEDURES

### A.    Use of Exhibits During Trial

Counsel is responsible for marking his or her own exhibits. Counsel must identify for the Court and opposing counsel, and give a copy to the witness, each exhibit before using it at the Trial. All exhibits that will be shown to a witness should, if possible, be placed before the witness at the start of counsel's witness examination. Questions and arguments should be delivered from the lectern, but counsel may approach the witness without asking leave whenever it is necessary. And, if counsel is standing near the witness for the purpose of pointing something out on an exhibit, opposing counsel may also be present to observe first-hand what is being pointed out.

### B.    "Timed" Trial

The Trial will be a "timed trial," with a maximum of 6-trial hours during the course of 1 day. Each side will be allocated a maximum of 3-trial hours to use for opening statement, all direct, cross-examination and redirect witness examinations, and summation. Counsel is responsible for having her or his witnesses present and ready to testify without any delays or gaps in testimony.

### C.    Status Report

**Not later than 5:00 p.m. prevailing Eastern Time on February 1, 2016**, counsel shall submit a written status report to the Court, identifying any issues that must be resolved before the Trial starts, and also whether counsel believe the case may be resolved by settlement before the Trial begins.

*[Remainder of Page Intentionally Left Blank]*

Dated:  January 21, 2016

/s/  Jordan A. Wishnew
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica Arett
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900

*Counsel for the ResCap Borrower Claims Trust*

Dated:  January 21, 2016

/s/ Wendy Alison Nora
Wendy Alison Nora
ACCESS LEGAL SERVICES
310 Fourth Ave. South
Suite 5010
Minneapolis, Minnesota 55415

*Counsel for Tia Danielle Smith*

**IT IS SO ORDERED.**

Dated:    February 1, 2016
        New York, New York

_____/s/Martin Glenn_____
MARTIN GLENN
United States Bankruptcy Judge