Christopher Martinez
848 N. Rainbow Blvd. #240
Las Vegas, NV 89107-1103
(702) 625-1582
actorchris@gmail.com
In Proper Person

*[RECEIVED JAN 29 2016 U.S. BANKRUPTCY COURT SO. DIST OF NEW YORK]*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Residential Capital, LLC, *et al.*,<br><br>　　　　　　Debtors. | Bankruptcy Case No.: 12-12020 (MG)<br><br>OPPOSITION AND OBJECTION TO RESCAP LIQUIDATING TRUST'S OMNIBUS MOTION TO ENFORCE INJUNCTIVE PROVISIONS OF PLAN AND CONFIRMATION ORDER<br><br>Regarding U.S. Court of Appeals – Ninth Circuit Case No.: 14-16349 – *Martinez vs. USAA Federal Savings Bank, et al.* |

COMES NOW Christopher Martinez, who is the Plaintiff in Proper Person in *Martinez vs. USAA Federal Savings Bank, et al.* – currently under review by the U.S. Court of Appeals for the Ninth Circuit (*see* – Case No. 14-16349) – who files this opposition and objection to *ResCap Liquidating Trust's* (hereafter, the "Liquidating Trust"), *omnibus motion to enforce injunctive provisions of plan and confirmation order* (hereafter, the "Omnibus Motion"), on the basis of an order from this Court that was entered on July 13, 2012 (Docket No. 774), lack of

1 jurisdiction due to a higher-level, federal court's review of pending litigation, and on equity
2 considerations.

## FACTUAL HISTORY

(1) The Liquidating Trust's Omnibus Motion is appertaining to pending litigation in *Martinez vs. USAA Federal Savings Bank, et al.* from the U.S. District Court in Nevada (*see –* U.S. District Court Case No. 2:14-CV-00567-RCJ-PAL) – which is currently on appeal to the U.S. Court of Appeals for the Ninth Circuit, (*see –* Ninth Circuit Court Case No.: 14-16349). The causes of action in this matter pertain to the title and ownership of a certain real property located at *6408 Sea Swallow Street* in *North Las Vegas, Nevada, 89084* – Assessor's Parcel Number: 124-20-811-016 (hereafter, the "subject real property"). Plaintiff Martinez is pursuing monetary damages, declaratory and injunctive relief against all Defendants, for alleged violations of TILA and HOEPA (15 U.S.C. § 1641, *et. seq.*); declaratory relief under 28 U.S.C. § 2201 *et seq.*; wrongful foreclosure (NRS 107.080 *et seq.*); fraudulent conveyance of real property (NRS 111.010 *et seq.*); making false/groundless claims or material misrepresentations concerning title on recorded documents (NRS 205.395(5) *et seq.*); slander of title (NRS 38.300(3) *et seq.*); quiet title (NRS 40.010 *et seq.*); and intentional infliction of emotional distress.

(2) In the underlying Ninth Circuit Court case, Plaintiff Martinez alleged that Defendant *GMAC Mortgage, LLC* (hereafter, "GMAC"), has improperly and unlawfully, attempted to conduct several non-judicial trustee's sales of the subject real property, without acquiring any legal, equitable, and/or pecuniary interest in the subject mortgage promissory note and/or deed of trust to warrant non-judicial foreclosure, under Nevada law, (see generally – *Leyva v. National Default Servicing Corp.*, 255 P. 3d 1275 – Nev: Supreme Court 2011; see

generally – *Edelstein v. Bank of New York Mellon*, 286 P. 3d 249 – Nev: Supreme Court 2012). Said improper and unlawful trustee's sales were scheduled to occur, on or about July 16, 2012; December 17, 2012; and March 26, 2014 – all occurring after GMAC filed for Chapter 11 Bankruptcy on May 14, 2012. All of these improper and unlawful trustee's sales were implemented by GMAC, or conducted in the name of GMAC by GMAC's purported servicing agent and co-Defendant, *OCWEN Loan Servicing, LLC* (hereafter, "OCWEN"). Said trustee's sales ordered by GMAC and/or OCWEN, with either the explicit or implicit consent, approval, and/or authorization of GMAC – are all in violation of the aforementioned Nevada and Federal statutes. Also, these improper and unlawful trustee's sales, were conducted without GMAC and/or OCWEN acquiring any legal, equitable, and/or pecuniary interest in a certain *mortgage promissory note* in the amount of $245,760.00 with an interest rate of 5.375%, and monthly payments in the amount of $1,376.19 (hereafter, the "Note"), from the mortgage loan originator and co-Defendant, *USAA Federal Savings Bank* (hereafter, "USAA"). USAA originated the Note, on or about July 28, 2009 as loan number: 702219788 – and the Note was expressly made payable to USAA. However, USAA allegedly and improperly sold/transferred the Note, *without* endorsing it, to co-Defendant *Government National Mortgage Association* (hereafter, "GINNIE MAE"), as Trustee for the *Guaranteed REMIC Pass-Through Securities and MX Securities Ginnie Mae REMIC Trust 2009-070* (hereafter, the "Securitized Trust"), on or about August 28, 2009 as part of the securitization process of the Note; and where the Note allegedly remains today as a performing asset of the Securitized Trust – which constitutes the crux of Plaintiff Martinez's claims against GMAC, and its co-Defendants.

(3)    However, GMAC continues to claim to be the *current* Note-holder, holder-in-due-course, and/or person entitled to enforce the Note, via an alleged negotiation and

sale/transfer of the Note, under Article 3 of the *Uniform Commercial Code* (hereafter, the "UCC"). Article 3 of the UCC is codified under Nevada law as NRS 104.3101–104.3605; and under NRS 104.3301(1)(a), a person entitled to enforce an instrument is "[t]he holder of the instrument." (See – *Leyva v. National Default Servicing Corp.*, 255 P. 3d 1275 – Nev: Supreme Court 2011). It should be noted that the Nevada Supreme Court and the U.S. District Court in Nevada have both held that under Nevada law, a mortgage promissory note is considered to be a "negotiable instrument," (see – *Birkland v. Silver State Financial Services, Inc.*, No. 2:10-CV-00035-KJD, 2010 WL 3419372, at *4 (D.Nev. Aug. 25, 2010)); and that any sale/transfer of ownership/enforcement rights to a given mortgage promissory note, that is expressly made payable to an identified party (e.g., the Note is expressly payable to USAA), must be negotiated by endorsement and transfer of possession of said mortgage promissory note, by the *current* note-holder (i.e., USAA), to the succeeding entity (i.e., either GMAC or GINNIE MAE as Trustee of the Securitized Trust), in order for a mortgage promissory note to be deemed validly sold/transferred under Nevada law. (See – *Leyva v. National Default Servicing Corp.*, 255 P. 3d 1275 – Nev: Supreme Court 2011, "[n]egotiation requires transfer of possession of the instrument *and* its endorsement by the holder. NRS 104.3201(2)" – *Italics* emphasis in the original). The Note in this case, <u>was not</u> so endorsed by USAA (i.e., the original Note-holder) to GMAC (i.e., the alleged, succeeding Note-holder), in order for GMAC, or its purported servicing agent OCWEN, to initiate a non-judicial foreclosure action against the subject real property. Nor can GMAC or OCWEN, demand or receive any payments whatsoever on behalf of the *current* Note-holder, because neither GMAC nor OCWEN can demonstrate that either of them has an agency relationship with the *current* Note-holder and deed of trust beneficiary, in order to collect payments due under the Note; or to validly assign the deed of trust, "together

with the Note" to any other interested party; or to initiate a non-judicial foreclosure action against the subject real property, under Nevada law. (See – *Bank of New York v. Alderazi*, 28 Misc.3d 376, 900 N.Y.S.2d 821, 824 (N.Y.Sup.Ct. 2010), "the party who claims to be the agent of another bears the burden of proving the agency relationship by a preponderance of the evidence"; see also – *Steinbeck v. Steinbeck Heritage Foundation*, No. 09-18360cv, 2010 WL 3995982, at *2 (2d Cir. Oct.13, 2010), finding that use of the words "attorney-in-fact" in documents can constitute evidence of agency but finding that such labels are not dispositive).

(4)     GINNIE MAE, however, also claims to be the *current* Note-holder – by virtue of an alleged sale/transfer of the Note on or about August 28, 2009, as part of the securitization process of the Note. GINNIE MAE declares the Note to be an asset of the Securitized Trust, and reports this claim to the *U.S. Securities and Exchange Commission* (hereafter, the "SEC"), via the Bloomberg L.P. Professional Terminal – which the SEC uses to track the ownership of mortgage promissory notes that comprise the corpus of all mortgage-backed securities, in real time. The trustee of each REMIC Trust (e.g., GINNIE MAE as Trustee of the Securitized Trust), is required to declare the assets of each REMIC Trust to the SEC, via the Bloomberg L.P. Professional Terminal, under oath and penalty of perjury; and these representations to the SEC, by the trustee of a given REMIC Trust, carries the same weight as sworn testimony in a court of law. Nevertheless, this claim of ownership of the Note by GINNIE MAE is belied by the failure of USAA to endorse the Note to GINNIE MAE as Trustee of the Securitized Trust, or to any other co-Defendant, or interested party. Consequently, the Note was *never validly* sold/transferred by USAA to GMAC or GINNIE MAE as Trustee of the Securitized Trust, accordance with Article 3 of the UCC (i.e., NRS 104.3101–104.3605); nor was the Note sold/transferred to any other co-Defendant in this case. However, USAA received full payment

for the Note from GINNIE MAE as Trustee of the Securitized Trust, on or about August 28, 2009 as part of the securitization process of the Note. Thus, the Note is fully satisfied and no longer enforceable by GMAC, GINNIE MAE as Trustee of the Securitized Trust, or any other co-Defendant.

(5)    Running concurrently with the aforementioned events, a deed of trust was given to USAA as security for the Note on or about July 28, 2009, in which the alleged beneficiary of said deed of trust is listed as co-Defendant *Mortgage Electronic Registration Systems, Inc.* (hereafter, "MERS") – acting solely as a nominee for USAA. However, on January 11, 2011 a purported MERS assistant secretary (i.e., "Anthony McLaughlin" who misrepresents himself as an "assistant secretary of MERS" when in actuality, Mr. McLaughlin was acting as an active employee of GMAC), executed and recorded in the Clark County Recorder's Office, an improper and unlawful Assignment of Deed of Trust *from* MERS, acting as a nominee for USAA *to* GMAC, as instrument number 201101110001535 (hereafter, the "MERS Assignment"). The MERS Assignment purports to assign the deed of trust encumbering the subject real property, "together with the Note," *from* MERS, on behalf of USAA *to* GMAC. (See – *Weingartner v. Chase Home Finance, LLC*, 702 F. Supp. 2d 1276 – Dist. Court, D. Nevada 2010, "First, MERS is not a beneficiary and does not have the ability to transfer the beneficial interest in a promissory note without more evidence of its agency in this capacity than being named as a nominee on a deed of trust."; see also – *Bank of New York v. Alderazi*, 28 Misc.3d 376, 900 N.Y.S.2d 821, 823 (N.Y.Sup.Ct. 2010), "To have a proper assignment of a mortgage by an authorized agent, a power of attorney is necessary to demonstrate how the agent is vested with the authority to assign the mortgage." (quoting *HSBC Bank USA, NA v. Yeasmin*, 19 Misc.3d 1127, 866 N.Y.S.2d 92 (N.Y.Sup.Ct.2008).) But as previously discussed, the Note

was never endorsed by USAA to GMAC, or to any other co-Defendant, (*see* – Exhibit 1). This fact alone renders GMAC's claim to be the Note-holder, devoid of any factual basis. Further, "Lisa Clark" acting as a purported, senior default specialist for OCWEN (which in turn, declares itself to be acting as the purported, *current* servicer for GMAC), executed an *Affidavit of Authority in Support of Notice of Default and Election to Sell* (hereafter, the "AA"), which was attached to the Notice of Breach and Default and of Election to Cause Sale of Real Property Under Deed of Trust, (recorded on August 15, 2013 as instrument number 201308150000693 in the Clark County Recorder's Office); but the AA is not only an infirm and invalid document, it is also a material misrepresentation on a recorded document, or false claim concerning the title to the subject real property, for the aforementioned reasons.

(6)    Nevertheless, as previously stated, USAA received full payment for the Note from GINNIE MAE as Trustee of the Securitized Trust, as part of the securitization process of the Note, on or about August 28, 2009. But this unilateral transfer of the Note and subject deed of trust to GMAC (by Anthony McLaughlin who is one of GMAC's own employees), without a valid assignor is akin to GMAC stealing one of USAA's blank checks, and then fraudulently signing it over to GMAC. In order to accomplish this task, GMAC instructs one of its own employees (i.e., Anthony McLaughlin), to masquerade as a "MERS assistant secretary" who is purportedly acting on the instructions of USAA to assign the subject deed of trust, "together with the Note," *from* MERS as a nominee of USAA *to* GMAC. (See – *LaSalle Bank N.A. v. Lamy*, 12 Misc.3d 1191, 824 N.Y.S.2d 769 (N.Y.Sup.Ct.2006), "A nominee of the owner of a note and mortgage may not effectively assign the note and mortgage to another for want of an ownership interest in said note and mortgage by the nominee.") Thus, the purported "MERS assistant secretary," Anthony McLaughlin (who is, in fact, an employee of GMAC), has

1  fraudulently and unlawfully transferred the subject deed of trust, "together with the Note," from

2  MERS as a nominee of USAA to GMAC, in violation of NRS 111.010, (see generally – *Leyva*

3  *v. National Default Servicing Corp.*, 255 P. 3d 1275 – Nev: Supreme Court 2011). In turn,

4  GMAC used this sham MERS Assignment as the legal basis for executing and recording the

5  following improper documents, in the Clark County Recorder's Office:

6  - *Notice of Breach and Default and of Election to Cause Sale of Real Property Under Deed of Trust*, recorded on February 2, 2011 as instrument number 201102020003157;
7  - *Notice of Trustee's Sale*, recorded on June 21, 2012 as instrument number 201206210002950;
8  - *Notice of Trustee's Sale*, recorded on November 15, 2012 as instrument number 201211150002147;
9  - *Substitution of Trustee*, recorded on June 24, 2013 as instrument number 201306240000620;
10 - *Notice of Breach and Default and of Election to Cause Sale of Real Property Under Deed of Trust*, recorded on August 15, 2013 as instrument number 201308150000693;
11 - *Notice of Trustee's Sale*, recorded on February 25, 2014 as instrument number 201402250000850.

12

13  (7)    All of the preceding documents were ordered, executed, and/or recorded by

14  GMAC (or on GMAC's behalf by OCWEN, Executive Trustee Services LLC and/or The

15  Cooper Castle Law Firm, LLP); and they are all without just cause or legal merit in order to

16  substantiate GMAC's repeated attempts to effect a non-judicial trustee's sale of the subject real

17  property, in violation of NRS 107.080 *et seq*. Consequently, Plaintiff Martinez's only recourse

18  to stop GMAC's repeated attempts to unlawfully effect a non-judicial trustee's sale of the

19  subject real property, and to stop the continuing slander of title to the subject real property, was

20  to file a civil action to quiet title in Clark County, Nevada. Plaintiff Martinez originally filed his

21  civil action with the Eighth Judicial District Court in Clark County, Nevada, on March 21,

22  2014; but the case was removed by the Defendants to the U.S. District Court in Nevada, on

23  April 14, 2014 (*see* – U.S. District Court Case No. 2:14-CV-00567-RCJ-PAL) – and is currently

24

being reviewed on appeal by the U.S. Court of Appeals for the Ninth Circuit, since July 15, 2014 (*see* – U.S. Court of Appeals, Ninth Circuit Case No. <u>14-16349</u>).

## JURISDICTION

(8)     This Court has jurisdiction to hear this opposition and objection to omnibus motion pursuant to 28 §.U.S.C. 157 and 1334. However, this Court should exercise restraint in ruling on this omnibus motion, because the more appropriate venue to decide this matter should rest with the U.S. Court of Appeals for the Ninth Circuit – as it is a higher federal court, (*see* – U.S. Court of Appeals, Ninth Circuit Case No. <u>14-16349</u>). The Ninth Circuit Court of Appeals was fully briefed on this Court's ruling regarding the prohibition of monetary claims against the Liquidating Trust, the Debtors, and/or GMAC under the approved bankruptcy plan of the Debtors; and the Ninth Circuit Court was also provided with a copy of this Court's order by counsel for GMAC. Accordingly, this Court should defer any decision on this matter to the Ninth Circuit Court of Appeals – which might rule in favor of the Liquidating Trust, the Debtors, and/or GMAC regarding any of Plaintiff Martinez's monetary claims against them.

## <u>MONETARY CLAIMS ARE, IN FACT, PERMITTED AGAINST THE LIQUIDATING TRUST, THE DEBTORS, AND/OR GMAC BY THIS COURT'S ORDER, FILED ON JULY 13, 2012 (DOCKET NO. 774)</u>

(9)     The Liquidating Trust has stated in the Omnibus Motion, that Plaintiff Martinez cannot pursue any monetary claims against the Liquidating Trust, the Debtors, and/or GMAC, because of this Court's confirmation order which was filed on December 11, 2013 (Docket No. 6065). Nevertheless, the Liquidating Trust, the Debtors, and/or GMAC have overlooked another order from this Court that was filed on July 13, 2012 (Docket No. 774) – which in turn, was also filed with the U.S. District Court in Nevada on or about May 6, 2014 (*see* – Case No.: <u>2:14-CV-00567-RCJ-PAL</u>), by GMAC's counsel – R. Samuel Ehlers, Esq. (Nevada Bar No. 9313). On

page 1 of said order, this Court ruled that monetary claims against the Debtors are, in fact, permitted under the following terms and conditions:

> "(i) [a]uthorizing the Debtors to continue implementing loss mitigation programs; (ii) **approving procedures for the compromise and settlement of certain claims, litigations and causes of action** in the ordinary course of the Debtor's business; (iii) **granting limited stay relief to permit** (w) borrowers or their tenants, as applicable, to **prosecute direct claims and counter-claims in foreclosure** and eviction proceedings (including in states in which non-judicial foreclosure is followed), * * *"

(**Bold** emphasis added by the Plaintiff).

Moreover, the order permits GMAC, the Debtors, and/or the Liquidating Trust, to "compromise and settle certain claims * * * by a Settling Party against any of the Debtors (each, a 'Claim')" up to a maximum of $40,000.00 without any further action or approval by this Court. Any higher amount will require Court approval, as follows:

> "4.    **The Debtors are authorized**, but not directed **to compromise and settle certain claims** brought by the Debtors against any non-insider third parties in connection with foreclosure, eviction, or borrower bankruptcy proceedings (each a "<u>Settling Party</u>") or **by a Settling Party against any of the Debtors (each, a "Claim") in accordance with the following two-tiered procedures** (the "Settlement Procedures"):
>
> > <u>Tier I</u>: **The Debtors, in their sole discretion, may enter into, execute and consummate written agreements of settlement with respect to Claims** that will be binding on the Debtors and their estates without further action by this Court or notice to any party **and grant such Settling Parties cash payments or allowed prepetition claims in amounts not to exceed $40,000 in full settlement of such Claim** (each, a '<u>Tier I Settlement</u>')
>
> > <u>Tier II</u>: The Debtors may enter into, execute and consummate written agreements of settlement with respect to Claims that will be binding on the Debtors and their estates without further action by this Court or notice to any party and grant such Settling Parties cash payments or allowed prepetition claims in amounts exceeding $40,000 but less than $100,000 in full settlement of such Claims (each, a '<u>Tier II Settlement</u>') * * *

5.  The Debtors shall be required to seek approval from the Court in order to enter into and consummate any proposed settlement of a Claim with a settlement amount in excess of $100,000. * * *

7.  **The Settlement Procedures are without prejudice to the right of the Debtors to seek an order of this Court approving additional or different procedures with respect to specific claims or categories of claims.**"

(**Bold** emphasis added by the Plaintiff; <u>Underline</u> emphasis in original).

(10)  Accordingly, Plaintiff Martinez can pursue monetary damages up to <u>$40,000.00</u> against the Liquidating Trust, the Debtors, and/or GMAC, for their repeated, unlawful and fraudulent foreclosure related actions, which were committed by GMAC, or in the name of GMAC by its purported servicing agent, OCWEN. At the Liquidating Trust's sole discretion, it can negotiate a settlement with Plaintiff Martinez, to settle all of his claims against GMAC up to <u>$40,000.00</u>, without any action or ruling required from this Court. But rather than seeking such a "compromise and settlement," the Liquidating Trust chose to use this Court to effect the outcome of *Martinez vs. USAA Federal Savings Bank, et al.*, before the Ninth Circuit Court of Appeals can issue its ruling on this appellate case, (*see* – U.S. Court of Appeals, Ninth Circuit Court Case No. <u>14-16349</u>). This Court should not permit this "end-run" around the Ninth Circuit Court, and a final ruling on this matter should be deferred to the Ninth Circuit Court of Appeals.

## EQUITY CONSIDERATIONS

(11)  The Liquidating Trust is disingenuously asking this Court to grant the Omnibus Motion, in order to shield GMAC from the consequences of its improper and unlawful, foreclosure related actions – which were committed during the course of GMAC's Chapter 11 bankruptcy proceedings. In essence, the Liquidating Trust is seeking to "white-wash" GMAC's

actions under the guise of enforcing the confirmation order of this Court, in order to preempt the outcome of pending litigation in the Ninth Circuit Court of Appeals, (*see* – U.S. Court of Appeals, Ninth Circuit Court Case No. 14-16349). In other words, GMAC has brazenly committed several acts of fraud and abuse of the bankruptcy code while maneuvering its way through the bankruptcy process. Now, the Liquidating Trust wishes to dupe this Court into believing that GMAC should be given blanket immunity for its on-going fraudulent actions, in order to evade the consequences of GMAC's unlawful actions, by duplicitously claiming that the Liquidating Trust is merely enforcing an order of this Court. These actions should shock the conscious of this Court, and compel it to DENY the Omnibus Motion, solely for this reason.

(12) To wit, GMAC filed for Chapter 11 Bankruptcy protection on May 14, 2012. However, even after doing so, GMAC continued to make several false claims and material misrepresentations concerning the title to the subject real property in the Clark County Recorder's Office, in order to effect an unlawful non-judicial trustee's sale of the subject real property, without becoming the *current* Note-holder and deed of trust beneficiary – in violation of NRS 107.080 *et seq*. (See – *Hymas v. Deutsche Bank National Trust Company*, Dist. Court, D. Nevada 2014, "To initiate a non-judicial foreclosure of an owner-occupied residence, "the party seeking foreclosure must demonstrate that it is both 'the current beneficiary of the deed of trust and the current holder of the promissory note.' *Bergenfield v. Bank of Am.*, 302 P.3d 1141, 1143 (Nev. 2013)"). All of the following improper and unlawful documents were recorded in the Clark County Recorder's Office, *after* GMAC filed for Chapter 11 Bankruptcy protection:

(a) *Notice of Trustee's Sale*, recorded on June 21, 2012 as instrument number 201206210002950, where GMAC improperly and unlawfully attempts to non-judicially foreclose on the subject real property, without being the current Note-holder and deed of trust beneficiary;

(b) *Notice of Trustee's Sale*, recorded on November 15, 2012 as instrument

number 201211150002147, where once again, GMAC improperly and unlawfully attempts to non-judicially foreclose on the subject real property, without being the Note-holder and deed of trust beneficiary;

(c) *Substitution of Trustee*, recorded on June 24, 2013 as instrument number 201306240000620, where GMAC improperly substitutes The Cooper Castle Law Firm, LLP as the current trustee of the subject deed of trust without being the beneficiary of said deed of trust, (see – *Weingartner v. Chase Home Finance, LLC*, 702 F. Supp. 2d 1276 – Dist. Court, D. Nevada 2010, "A possible defect in foreclosure remains when a note has been negotiated, and there is no evidence that the foreclosing trustee is the nominee of the current holder or that the foreclosing trustee was substituted by a nominee of the current holder.");

(d) *Notice of Breach and Default and of Election to Cause Sale of Real Property Under Deed of Trust*, recorded on August 15, 2013 as instrument number 201308150000693, where once again, GMAC iniates a second non-judicial foreclosure proceeding against the subject real property, without acquiring any legal, equitable or pecuniary interest in the Note, *and* without becoming the *current* beneficiary of the subject deed of trust. (See – *Barrionuevo v. Chase Bank, N.A.* (N.D.Cal. 2012) 885 F.Supp.2d 964, "Several courts have recognized the existence of a valid cause of action for wrongful foreclosure where a party alleged not to be the true beneficiary instructs the trustee to file a Notice of Default and initiate non-judicial foreclosure. (at p. 973.)"; see also – *Bergenfield v. Bank of Am.*, 302 P. 3d 1141 – Nev: Supreme Court 2013, "Therefore, only when the note and deed of trust are held by the same party is foreclosure proper under NRS Chapter 107. *Leyva v. Nat'l Default Servicing Corp.*, 127 Nev. ___, ___, 255 P.3d 1275, 1279 (2011).");

(e) *Notice of Trustee's Sale*, recorded on February 25, 2014 as instrument number 201402250000850, where once again, GMAC improperly and unlawfully attempts to non-judicially foreclose on the subject real property, without being the *current* Note-holder and deed of trust beneficiary.

(13)    The preceding improper documents and unlawful actions were undertaken by GMAC, or in the name of GMAC by its purported servicing agent, OCWEN; and these improper documents and unlawful actions are all egregious violations of the Bankruptcy Code, and outrageous abuses of the protections afforded to debtors, thereunder. Accordingly, it would be inequitable for this Court to shield the Liquidating Trust, the Debtors, and/or GMAC from the consequences of their actions, when they have clearly shown a complete disregard for the Bankruptcy Code. Nor should this Court allow the Liquidating Trust, the Debtors, and/or

1  GMAC to profit from their abuse and manipulation of the bankruptcy system.

2  (14)  Finally, Plaintiff Martinez did not discover the full extent of GMAC's fraudulent activity until March 2014, when Plaintiff Martinez hired the services of *Certified Forensic Loan Auditors* (hereafter, "CFLA"), to examine the loan and recorded documents in question; and to trace the path of ownership of the Note, from the point of origination by USAA on or about July 28, 2009, to where it purportedly resides as of this date (i.e., with GINNIE MAE as Trustee of the Securitized Trust, who claims to be the *current* Note-holder, and which directly contradicts GMAC's claim to be the *current* Note-holder, as stated in the AA by GMAC's purported servicing agent, OCWEN). Therefore, there was no reason for Plaintiff Martinez to file a Proof of Claim with this Court by the deadline in this case, because Plaintiff Martinez did not discover any of his causes of action until *after* CFLA presented its findings of fact to Plaintiff Martinez, in March 2014. Furthermore, since there has been no final judgment issued by the Ninth Circuit Court of Appeals in *Martinez vs. USAA Federal Savings Bank, et al.*, then there is no monetary claim that Plaintiff Martinez can enforce against the Liquidating Trust, the Debtors, and/or GMAC. In other words, the Liquidating Trust is asking this Court to "put the cart before the horse" in the Omnibus Motion, by insisting that Plaintiff Martinez needed to file a Proof of Claim, before said claim is even discovered. This assertion by the Liquidating Trust is self-evidently, illogical and irrational; and equity demands that this Court disregard it completely. CFLA's findings of fact are discussed at length in the *Property Securitization Analysis Report* (hereafter, the "Report"), prepared on March 19, 2014, in the *Affidavit of Chad D. Elrod, Esq., J.D.* (hereafter, the "Elrod Affidavit"), and in the *Affidavit of Michael Carrigan* (hereafter, the "Carrigan Affidavit").

3  (15)  For the record, CFLA, was founded in 2007 as the nation's only Bloomberg L.P.

Securitization Audit Report provider, specifically designed for litigation support by Andrew P. Lehman, J.D. CFLA has an "A+" rating with the Better Business Bureau, and an "AA" rating with the Business Consumer Alliance. CFLA has trained officers from the U.S. Attorney General's Office, Department of Corporations, Federal Trade Commission, Housing and Urban Development, U.S. Department of Education, and the Office of the Comptroller of the Currency. CFLA has hosted continuing education courses before the State Bars of Nevada, California, Florida, Georgia, Texas, Illinois, New York, and New Jersey. In addition, Chad D. Elrod Esq., J.D., is a licensed attorney (at Jackson & Elrod, LLP – 2200 N. Loop West, Suite 108, Houston, Texas, 77018 – State of Texas Bar Card: 24063917), and a graduate of The University of Houston – B.S. (2005), and the South Texas College of Law, J.D. (2008). Mr. Elrod is an expert witness in securitization analysis, and in the use and interpretation of the Bloomberg L.P. Professional Terminal licensed software, previously described. Mr. Elrod was admitted to the State Bar of Texas in 2008, and he has also been admitted to the U.S. District Court for the Southern and Eastern Districts of Texas. Thus, the information contained within the Report, Elrod Affidavit, and Carrigan Affidavit, are the factual basis for the allegations within this opposition and objection to the Motion; and the Report, Carrigan Affidavit, and Elrod Affidavit are hereby incorporated into this opposition and objection to the Motion, by reference thereto.

## CONCLUSION

(16)   Whatever shortcomings this Court may find in the formatting, wording, or expression of Plaintiff Martinez's arguments in this opposition and objection to the Omnibus Motion, are simply matters of form rather than of substance. Moreover, this Court should take notice that any inartful pleading of the facts and/or issues by a pro se litigant, such as Plaintiff

Martinez, should be liberally construed in favor of said pro se litigant. In fact, the Supreme Court of the United States addressed this issue in *Hughes v. Rowe*, 449 US 5 – Supreme Court 1980, "Petitioner's complaint, like most prisoner complaints filed in the Northern District of Illinois, was not prepared by counsel. It is settled law that the allegations of such a complaint, 'however inartfully pleaded' are held 'to less stringent standards than formal pleadings drafted by lawyers' *Haines v. Kerner*, 404 U. S. 519, 520 (1972). See also *Maclin v. Paulson*, 627 F. 2d 83, 86 (CA7 1980); *French v. Heyne*, 547 F. 2d 994, 996 (CA7 1976)."

(17) Likewise, under the Federal Rules of Civil Procedure, Rule 8(f) provides that, "pleadings shall be so construed as to do 'substantial justice.' We frequently have stated that [*pro se*] pleadings are to be given a liberal construction" (see – *Baldwin County Welcome Center v. Brown* 466 U.S. 147,104 S. Ct. 1723,80 L. Ed. 2d 196,52 U.S.L.W. 3751). Furthermore, the concept that *pro se* pleadings are to be given extra leeway was affirmed by the Ninth Circuit Court of Appeals in *Hebbe v. Pliler*, 627 F. 3d 338 – Court of Appeals, 9th Circuit 2010, as follows:

> "Because Hebbe is an inmate who proceeded *pro se,* his complaint 'must be held to less stringent standards than formal pleadings drafted by lawyers,' as the Supreme Court has reaffirmed since *Twombly. See – Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam). *Iqbal* incorporated the *Twombly* pleading standard and *Twombly* did not alter courts' treatment of *pro se* filings; accordingly, we continue to construe *pro se* filings liberally when evaluating them under *Iqbal.* While the standard is higher, our 'obligation' remains, 'where the petitioner is *pro se,* particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.' *Bretz v. Kelman,* 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985) (en banc)." (*Italics* emphasis in the original).

(18) Based on all of the foregoing factual points, legal citations, and on equity considerations, Plaintiff Martinez has presented sufficient legal and equitable grounds to this Court to <u>DENY</u> the Omnibus Motion, and to permit Plaintiff Martinez to pursue monetary

damages against the Liquidating Trust, the Debtors, and/or GMAC – in accordance with this Court's order on July 13, 2012 (*see* – Docket No. 774). However, this Court should defer any ruling on this Omnibus Motion to the U.S. Court of Appeals for the Ninth Circuit, for the aforementioned reasons.

Dated: January 27, 2016

*[signature]*

Christopher Martinez, In Proper Person
848 N. Rainbow Blvd. #240
Las Vegas, NV 89107-1103
(702) 625-1582
actorchris@gmail.com