## Exhibit #9

PROPERTY SECURITIZATION ANALYSIS REPORT
(THE "REPORT") PREPARED BY
CERTIFIED FORENSIC LOAN AUDITORS LLC ("CFLA")
ON MARCH 19, 2014



Certified Forensic Loan Auditors

---

## *CERTIFIED FORENSIC LOAN AUDITORS, LLC*
13101 West Washington Blvd., Suite 140, Los Angeles, CA 90066
Phone:  310-432-6304; Sales@CertifiedForensicLoanAuditors.com
www.CertifiedForensicLoanAuditors.com

---

# *PROPERTY*
# *SECURITIZATION ANALYSIS REPORT[TM]*
"This is a Securitization Analysis Report and not a Forensic Audit Report"

*Prepared for:*

## CHRISTOPHER MARTINEZ
### OWNER

*For Property Address*

**6408 Sea Swallow Street
NORTH LAS VEGAS, NV 89084**

*Prepared on:*
### March 19, 2014

---

Disclosure: You have engaged Certified Forensic Loan Auditors, LLC to examine your real estate documents. This information is not to be construed as legal advice or the practice of law, pursuant to *Business and Professions Code § 6125 et seq*, it is the intent of CFLA, its members, auditors and independent contractors, not to engage in activities that could be considered the practice of law by conduct exhibiting any of the following practices: "...*the doing and/or performing of services in a court of justice in any matter depending therein throughout the various stages and in conformity with the adopted rules of procedure. It includes legal advice and counsel and the preparation of legal instruments and contracts by which the legal rights are secured although such matter may or may not be depending in a court.*"



Certified Forensic Loan Auditors

# SECTION 1: TRANSACTION DETAILS
## BORROWER & CO-BORROWER:

| BORROWER | CO-BORROWER |
|---|---|
| DANIEL MEDELES | YULIANA MEDELES |
| CURRENT ADDRESS | SUBJECT ADDRESS |
| 6408 Sea Swallow Street<br>NORTH LAS VEGAS, NV 89084 | 6408 Sea Swallow Street<br>NORTH LAS VEGAS, NV 89084 |

# SECTION 2: SECURITIZATION
## SECURITIZATION PARTICIPANTS:

| DEED | DATE | NOTE | DATE |
|---|---|---|---|
| USAA FEDERAL SAVINGS BANK<br>10750 McDermott Freeway<br>San Antonio, TX 78288<br>MIN #1001056-0002752362-9 | JULY 28, 2009 | USAA FEDERAL SAVINGS BANK<br>10750 McDermott Freeway<br>San Antonio, TX 78288<br>Loan # 702219788<br>*U.S. Dept. of Veterans Affairs (VA) Guaranteed Loan* | JULY 28, 2009 |
| | | GINNIE MAE REMIC TRUST 2009-70 | CLOSING DATE:<br>August 28, 2009 |

    The DEED OF TRUST and the Note have taken two distinctly different paths. The DEED OF TRUST was never transferred. The $245,760.00 note may have been however pooled, sold, transferred with other loans and mortgages and this pool of loans and mortgages in this security offering of $325,601,006.
    http://www.ginniemae.gov/doing_business_with_ginniemae/investor_resources/Prospectuses/ProspectusesLib/2009Aug21-070.pdf



Certified Forensic Loan Auditors

## PARTIES/DEFENDANTS:

**Offering Circular Supplement**

**(To Multifamily Base Offering Circular dated April 1, 2008)**



# $325,601,006

## Government National Mortgage Association

# GINNIE MAE®

### Guaranteed REMIC Pass-Through Securities and MX Securities
### Ginnie Mae REMIC TRUST 2009-70

# Morgan Stanley
## Morgan Stanley

# Utendahl Capital Partners, L.P.

**The date of this Offering Circular Supplement is August 21, 2009.**

The document is not available on the SEC web site. Following this section would normally be the "Assignment of Mortgage" type section of the Prospectus Supplement; but this security has no such verbiage. Furthermore, pooling and servicing agreement (PSA) are not applicable to Ginnie Mae securities. Thus, extracts of the "Conveyance of Loans" type section (normally Section 2.01) from any such document equivalent to a PSA is not available.

http://www.ginniemae.gov/doing_business_with_ginniemae/investor_resources/Prospectuses/ProspectusesLib/2008Aug21-070.pdf

Certified Forensic Loan Auditors

Certified Forensic Loan Auditors

**DEED OF TRUST Broker "Unknown"**

**Step 1** — The borrower obtains a loan from a Lender. This may be done with help from a DEED OF TRUST Broker. In many cases the Lender and the DEED OF TRUST Broker have no further interaction with the Borrower after the loan is made.

Lender **USAA FEDERAL SAVINGS BANK**

Loan Proceeds

Loan

Borrower **DANIEL & YULIANA MEDELES**

**Step 2** — The Lender sells the loan to an Issuer and the Borrower begins making monthly payments to the Servicer.

Monthly Payments

LOAN    CASH

Servicer **OCWEN LOAN SERVICING LLC**

Monthly

**Custodian**-Holds DEED OF TRUST Loan Documents on behalf of the Trustee

**Underwriter**

**Rating Agency**

**Credit Enhancement Provider**

Issuer/Trustee **GOVERNMENT NATIONAL MORTGAGE ASSOCIATION (Ginnie Mae)**

**Step 3** — The Issuer sells securities to the Investors. The Underwriter assists in the sale, the Rating Agency rates the securities, and the Credit Enhancement may be obtained.

Securities

Cash    Monthly Payment

**Investors**

**Step 4** — The Servicer collects monthly payments from Borrower and remits payments to Issuer/Trustee. The Servicer and the Trustee manage delinquent loans according to terms set forth in the Pooling & Servicing Agreement.



Certified Forensic Loan Auditors

## PROSPECTUS SUPPLEMENT

Offering Circular Supplement
(To Base Offering Circular dated April 1, 2008)



Ginnie Mae

## $325,601,006

## *Government National Mortgage Association*
## GINNIE MAE®

### Guaranteed REMIC Pass-Through Securities and MX Securities
### Ginnie Mae REMIC Trust 2009-070

**The Securities**

*The Trust will issue the Classes of Securities listed on the front cover of this offering circular supplement.*

**The Ginnie Mae Guaranty**

*Ginnie Mae will guarantee the timely payment of principal and interest on the securities. The Ginnie Mae Guaranty is backed by the full faith and credit of the United States of America.*

**The Trust and its Assets**

*The Trust will own Ginnie Mae Certificates.*

| Class of REMIC Securities | Original Principal Balance(2) | Interest Rate | Principal Type(3) | Interest Type(3) | CUSIP Number | Final Distribution Date(4) |
|---|---|---|---|---|---|---|
| *Security Group 1* | | | | | | |
| AW(1) | $150,000,000 | 6.00% | SEQ | FIX | 38375 VLL6 | November 2038 |
| BY(1) | 30,638,656 | 6.00 | SEQ, AD | FIX | 38375 VLM4 | March 2038 |
| BZ(1) | 26,632,316 | 6.00 | SEQ | FIX | 38375 VLN2 | August 2039 |
| *Security Group 2* | | | | | | |
| CA | 6,320,056 | 6.00 | PAC I | FIX | 38375 VLP0 | August 2039 |
| CB | 80,000,000 | 6.00 | SUP | FIX | 38375 VLR7 | April 2039 |
| CG | 4,375,805 | 6.00 | SUP | FIX | 38375 VLPG | August 2039 |
| LB(1) | 36,709,835 | 6.00 | PAC I | FIX | 38375 VLS9 | August 2037 |
| LE(1) | 70,527,070 | 6.00 | PAC I | FIX | 38375 VLU0 | December 2038 |
| OH(1) | 30,509,930 | 6.00 | NTL (PAC I) | FIX (IO) | 38375 VLT6 | August 2039 |
| PB(1) | 30,000,3106 | 6.00 | PAC I | FIX | 38375 VLN3 | May 2038 |
| PO(1) | 30,509,930 | 0.00 | PAC I | PO | 38375 VLV4 | August 2039 |
| *Residual* | | | | | | |
| RR | 0 | 0.00 | NPR | NPR | 38375 VLW2 | August 2039 |

(1) These Securities may be exchanged for MX Securities described in Schedule I.

(2) Subject to increase as described under "Increase in Size" in this Supplement. The amount shown for the Notional Class (indicated by "NTL" under Principal Type) is its original Class Notional Balance and does not represent principal that will be paid.

(3) As defined under "Class Types" in Appendix I to the Base Offering Circular. The type of Class with which the Class Notional Balance of the Notional Class will be reduced is indicated in parentheses.

(4) See "Yield, Maturity and Prepayment Considerations — Final Distribution Date" in this Supplement.

---

The securities may not be suitable investments for you. You should consider carefully the risks of investing in them.

See "Risk Factors" beginning on page S-6 which highlights some of these risks.

The Sponsor and the Co-Sponsor will offer the securities from time to time in negotiated transactions at varying prices. We expect the closing date to be August 28, 2009.

You should read the Base Offering Circular as well as this Supplement.

The securities are exempt from registration under the Securities Act of 1933 and are "exempted securities" under the Securities Exchange Act of 1934.

---

*Morgan Stanley*                     *Utendahl Capital Partners, L.P.*

*The date of this Offering Circular Supplement is August 21, 2009.*



**Certified Forensic Loan Auditors**

## TERMS SHEET

This terms sheet contains selected information for quick reference only. You should read this Supplement, particularly "Risk Factors," and each of the other documents listed under "Available Information."

**Sponsor:** Morgan Stanley & Co. Incorporated

**Co-Sponsor:** Utendahl Capital Partners, L.P.

**Trustee:** Wells Fargo Bank, N.A.

**Tax Administrator:** The Trustee

**Closing Date:** August 28, 2009

**Distribution Date:** The 20th day of each month or, if the 20th day is not a Business Day, the first Business Day thereafter, commencing in September 2009

**Trust Assets:**

| Trust Asset Group | Trust Asset Type | Certificate Rate | Original Term To Maturity (in years) |
|---|---|---|---|
| 1 | Ginnie Mae II | 5.0% | 30 |
| 2 | Ginnie Mae II | 5.0 | 30 |

**Security Groups:** This series of Securities consists of multiple Security Groups (each, a "Group"), as shown on the front cover of this Supplement and on Schedule 1 to this Supplement.

**Assumed Characteristics of the Mortgage Loans Underlying the Trust Assets[1]:**

| Principal Balance[2] | Weighted Average Remaining Term to Maturity (in months) | Weighted Average Loan Age (in months) | Weighted Average Mortgage Rate[3] |
|---|---|---|---|
| **Group 1 Trust Assets** | | | |
| $217,265,354 | 359 | 1 | 5.35% |
| **Group 2 Trust Assets** | | | |
| $108,335,652 | 357 | 2 | 5.35% |

[1] As of August 1, 2009.

[2] Does not include the Group 1 Trust Assets that will be added to pay the Trustee Fee.

[3] The Mortgage Loans underlying the Trust Assets may bear interest at rates ranging from 0.25% to 1.50% per annum above the related Certificate Rate.

The actual remaining terms to maturity, loan ages and Mortgage Rates of many of the Mortgage Loans underlying the Trust Assets will differ from the weighted averages shown above, perhaps significantly. *See "The Trust Assets — The Mortgage Loans" in this Supplement.*

**Issuance of Securities:** The Securities, other than the Residual Securities, will initially be issued in book-entry form through the book-entry system of the U.S. Federal Reserve Banks (the "Fedwire Book-Entry System"). The Residual Securities will be issued in fully registered, certificated form. *See "Description of the Securities — Form of Securities" in this Supplement.*

**Modification and Exchange:** If you own exchangeable Securities you will be able, upon notice and payment of an exchange fee, to exchange them for a proportionate interest in the related Securities

S-3



**Certified Forensic Loan Auditors**

# SECTION 3:    FORECLOSURE
## Recorded Events on the Loan Including Foreclosure Issues and Securitization

| Recorded Chain of Deed of Trust Possession | | Chain of Note Possession | |
|---|---|---|---|
| **Date** | **Original Deed of Trust** | **Date** | **Note Holder** |
| July 30, 2009 Instrument # 2009-7303317 Official Records, Clark County Washington | DANIEL AND YULIANA MEDELES (Borrower) USAA Federal Savings Bank (Lender) **MIN: 1001056-0002752362-9** | July 28, 2009 | USAA Federal Savings Bank Lender Principal Amount: $245,760.00 **Loan #702219788** |
| January 11, 2011 Instrument # 2011-1111535 Official Records, Clark County Nevada | *ASSIGNMENT OF DEED OF TRUST to GMAC Mortgage, LLC. Document signed by Anthony McLaughlin for MERS without disclosure of Assignee employment.* | Closing Date: August 28, 2009 | GINNIE MAE REMIC TRUST 2009-70 Lender Principal Amount: $245,760.00 |
| February 2, 2011 Instrument # 2011-2023156 Official Records, Clark County Nevada | *SUBSTITUTION OF TRUSTEE* | | |
| February 2, 2011 Instrument # 2011-2023157 Official Records, Clark County Nevada | *NOTICE OF DEFAULT* *Released 2/14/13* | | |
| June 21, 2012 and November 15, 2012 Instrument # 2012-6212950 and 2012-11152147 Official Records, Clark County Nevada | *TWO NOTICES OF SALE* | | |
| August 15, 2013 Instrument # 2013-8150693 Official Records, Clark County Nevada | *NOTICE OF DEFAULT* | | |
| February 25, 2014 Instrument # 2014-2250850 Official Records, Clark County Nevada | *NOTICE OF SALE* | | |

*Includes activity with regard to primary active loan.*
*Annotated Voluntary Lien Search included in Exhibit I.*



Certified Forensic Loan Auditors

# REPORT SUMMARY

**Deed of Trust:**

- On July 28, 2009, Debtor DANIEL AND YULIANA MEDELES executed a negotiable promissory note and a security interest in the form of a DEED OF TRUST in the amount of $ 245,760.00. This document was filed as document number 2009-7303317 in the Official Records of Clark County. *The original lender of the promissory note is USAA Federal Savings Bank Mortgage Electronic Registration Systems, Inc. (hereafter "MERS") is not named as the payee of the note, but is named as acting solely as a "nominee" for the lender as the beneficiary of the security interest Deed of Trust.*

**Securitization (The Note):**

- The NOTE may have been sold, transferred, assigned and securitized into the GINNIE MAE REMIC TRUST 2009-70 with a Closing Date of August 28, 2009.

**Assignment of Deed of Trust:**

- On January 11, 2011, an Assignment of Deed of Trust was recorded in the Official Records, Clark County as instrument number 2011-1111535 to GMAC Mortgage, LLC. Document was signed by Anthony McLaughlin for Mortgage Electronic Registration Systems, Inc. without disclosure of Assignee employment. Approximately one year had passed since note was originated and examiner therefore recommends immediate production of the then notarized bill of sale; note endorsement; and verifiable proof of funds among USAA Federal Savings Bank; GMAC Mortgage, LLC; Ocwen Loan Servicing, LLC; the Government National Mortgage Association (Ginnie Mae); and any securitized trust into which loan may have been placed such as the qualified trust identified above. Examiner considers this a document of impropriety requiring rescission for rightful foreclosure to take place until actual purchase by relevant parties is verified.

**Substitution of Trustee:**

- On February 2, 2011, two Notices of Trustee's Sale was recorded in the Official Records, Clark County as instrument number 2011-2023156. This document is dependent upon the unauthorized Assignment of Deed of Trust above.

**Notice of Default:**

- On February 2, 2011, two Notices of Trustee's Sale was recorded in the Official Records, Clark County as instrument number 2011-202315. *This document was released on February 14, 2013.*



**Certified Forensic Loan Auditors**

**Two Notices of Sale:**

- On June 21, 2012 and November 15, 2012, Notices of Trustee's Sale were recorded in the Official Records, Clark County as instrument numbers 2012-6212950 and 2012-11152147. The authority for these documents are dependent upon the unauthorized Assignment of Deed of Trust above.

**Notice of Default:**

- On August 15, 2013, a Notice of Default was recorded in the Official Records, Clark County as instrument number 2013-8150693. The authority for this document is dependent upon the unauthorized Assignment of Deed of Trust above.

**Notice of Sale:**

- On February 25, 2014, a Notice of Sale was recorded in the Official Records, Clark County as instrument number 2014-2250850. The authority for this document is dependent upon the unauthorized Assignment of Deed of Trust above.



**Certified Forensic Loan Auditors**

## ASSIGNMENT OF DEED OF TRUST RECORDED 1/11/11

Anthony McLaughlin purports to transfer lien to GMAC Mortgage, LLC by signing for Mortgage Electronic Registration Systems, Inc., as Vice President without disclosure of GMAC Mortgage LLC employment. This is an indication that GMAC attempted to assign the Deed of Trust to itself without an Assignor. This position of unilateral transfer is further strengthened by the fact that here is no evidence of verified proof of funds; a note endorsement; a bill of sale; a declaration of value; or transfer taxes as having been paid to Clark County, Nevada "for value received".

Requested and Prepared by,
Executive Trustee Services, LLC

When Recorded Mail To
Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

THIS IS TO CERTIFY THAT THIS IS A FULL
TRUE AND CORRECT COPY OF THE ORIGINAL
RECORDED IN THE OFFICE OF THE COUNTY

RECORDING FEE    **$14.00**

RECORDED ON:    **January 11, 2011**

AS DOCUMENT NO:    **201101111535**

BY:    **s/ Cassandra Barnes**

LSI TITLE AGENCY, INC.

Loan No. 0702219788
TS NO  GM-272340-V

ASSIGNMENT OF DEED OF TRUST

For Value Received the undersigned corporation hereby grants, assigns, and transfers to:

GMAC MORTGAGE, LLC FKA GMAC MORTGAGE CORPORATION

all beneficial interest under that certain Deed of Trust dated: 7/28/2009 executed by "DANIEL O MEDELES" AND "YULIANA E MEDELES", HUSBAND AND WIFE, as Trustor(s), to MICHAEL J BROKER, as Trustee, and recorded as Instrument No. 20090730-0003317 on 7/30/2009, in Book XX, Page XX of Official Records, in the office of the County Recorder of Clark County, Nevada together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

DATE:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC

Anthony McLaughlin    Assistant Secretary

State of
County of



**Certified Forensic Loan Auditors**

**Anthony McLaughlin is a "Category 3 Authorize" in a seemingly un-lofty position for GMAC Mortgage, LLC per corporate director web site Corporation Wiki.**



corporationwiki   Companies   People   Locations          🔍 Search   ⟨ Share

### Anthony McLaughlin

[Active]   ...........................

📍 Fort Washington PA

[👤 Contact Info]   [👤 Background Check]

[Edit This Profile]

[Follow This Profile]

## Dun & Bradstreet® Reports

 www.dandb.com

Get a free assessment of your company's D&B credit profile today!

▸

⊞ Overview of Anthony McLaughlin in Fort Washington, PA

Anthony McLaughlin is the Category 3 Authorize of GMAC Mortgage, LLC

GMAC Mortgage, LLC filed as a **Foreign Limited Liability Company (LLC)** in the **State of Texas** filed on Wednesday, December 04, 1985. This corporation is approximately twenty-nine years old according to documents filed with **Texas Secretary of State**. GMAC Mortgage, LLC also lists Patricia L Hobbs as Assistant Secretary

Anthony McLaughlin is connected to other officers through these corporate roles. One of the top connections is Patricia L Hobbs

http://www.corporationwiki.com/Pennsylvania/Fort-Washington/anthony-mclaughlin/137055952.aspx



**Certified Forensic Loan Auditors**

**Mr. McLaughlin is also noted to have signed a Power of Attorney (POA) on behalf of GMAC Mortgage as referenced in a court filing in the US District Court District of Minnesota in Angelberto Contreras and Mayra Rodriguez v. Federal Home Loan Mortgage Corporation, et. al.:**

On April 16, 2012, GMAC prepared a Notice of Pendency of Proceeding

and Power of Attorney to Foreclose Mortgage ("April 2012 POA") authorizing

Shapiro to foreclose on Plaintiffs' mortgage. (Am. Compl. ¶ 21, Ex. 8.) The April

3

---

CASE 0:13-cv-00894-JNE-JJK    Document 23    Filed 01/23/14    Page 4 of 16

2012 POA was executed by Anthony McLaughlin as Authorized Officer for

GMAC and was recorded on April 24, 2012. (*Id.*)  Plaintiffs allege that "there is

**http://www.gpo.gov/fdsys/pkg/USCOURTS-mnd-0_13-cv-00894/pdf/USCOURTS-mnd-0_13-cv-00894-0.pdf**



**Certified Forensic Loan Auditors**

Apparently, Mr. McLaughlin is also a **Category 4 Authorized Officer** for GMAC, which is not as elevated as a **Senior Vice President.** There were no findings that Mr. McLaughlin is an actual employee of MERS as an "**Assistant Secretary**" or in any other position.

| | | | |
|---|---|---|---|
| ANNE M JANICZEK | SENIOR VICE PRESIDENT | 100 WITMER ROAD, PO BOX 963 HORSHAM PA 19044-2211 | Officer Report |
| ANTHONY DUNN | CATEGORY 3 AUTHORIZED OFFICER | 3451 HAMMOND AVENUE WATERLOO IA 50702-5345 | Officer Report |
| ANTHONY MCLAUGHLIN | CATEGORY 3 AUTHORIZED OFFICER | 1100 VIRGINIA DRIVE FORT WASHINGTON PA 19034-3200 | Officer Report |
| ANTHONY MCLAUGHLIN | CATEGORY 4 AUTHORIZED OFFICER | 1100 VIRGINIA DRIVE FORT WASHINGTON PA 19034-3200 | Officer Report |
| ARKESHIA JOHNSON | CATEGORY 3 AUTHORIZED OFFICER | 2711 N. HASKELL AVENUE, SUITE 900 DALLAS TX 75204 | Officer Report |
| ARKESHIA JOHNSON | CATEGORY 4 AUTHORIZED OFFICER | 2711 N. HASKELL AVENUE, SUITE 900 DALLAS TX 75204 | Officer Report |
| ASHLEY ARNOLD | CATEGORY 3 AUTHORIZED OFFICER | 3451 HAMMOND AVENUE WATERLOO IA 50702-5345 | Officer Report |
| ASHLEY ARNOLD | CATEGORY 4 AUTHORIZED OFFICER | 3451 HAMMOND AVENUE WATERLOO IA 50702-5345 | Officer Report |
| ASHLEY MARSH | CATEGORY 3 AUTHORIZED OFFICER | 3451 HAMMOND AVENUE WATERLOO IA 50702-5345 | Officer Report |

His level of first-hand knowledge of subject loan, as well as the propriety of his role in signing for the Assignor without disclosure of his Assignee position is a matter for discovery. This is akin to a company signing over blank checks of another company to itself.

Examiner recommends retention of Nevada counsel and a review of possible Class C felony violations under Nevada Assembly Bill 284 (NRS 107.080) that is designed to protect Nevada property owners from fraudulent foreclosure.

Sample AB284 web site links:
http://ag.nv.gov/uploadedFiles/agnvgov/Content/Hot_Topics/Citizen/ab284facts.pdf
http://www.nolo.com/legal-encyclopedia/robosigning-law-nevada-foreclosures.html



**Certified Forensic Loan Auditors**

American Banker states that foreclosure support documents (the primary example in Nevada being Assignments of Deed of Trust) should be prepared at time of transfer instead of by bank employees claiming to represent lenders that no longer exist:



by Kate Berry
AUG 31, 2011 5:47pm ET

🖶 Print   ☐ Email   ☐ Reprints

(15) Comments

🐦 Tweet 66   💼 Share 21   📘 Like 76   +1

Some of the largest mortgage servicers are still fabricating documents that should have been signed years ago and submitting them as evidence to foreclose on homeowners.

The practice continues nearly a year after the companies were caught cutting corners in the robo-signing scandal and about six months after the industry began negotiating a settlement with state attorneys general investigating loan-servicing abuses.

Several dozen documents reviewed by *American Banker* show that as recently as August some of the largest U.S. banks, including Bank of America Corp., Wells Fargo & Co.. Ally Financial Inc.. and OneWest Financial Inc.. were essentially backdating paperwork necessary to support their right to foreclose.

Some of documents reviewed by *American Banker* included signatures by current bank employees claiming to represent lenders that no longer exist.

**RELATED LINKS**

**U.S. Bank Stands Out as a Mortgage Bond Trustee with Teeth**

**Robo-Signing Settlement Needs to Go All the Way**

**Are the State AG Mortgage Settlement Talks Falling Apart?**

**N.Y. AG Moves to Intervene in B of A-Bondholder Settlement**

**RELATED GRAPHIC**

🔍 Enlarge This image



http://www.americanbanker.com/issues/176_170/robo-signing-foreclosure-mortgage-assignments-1041741-1.html



Certified Forensic Loan Auditors

# BLOOMBERG SEARCH SECTION

On **March 17, 2014**, I researched the Bloomberg online Database at the request of **Certified Forensic Loan Auditors, LLC** on behalf of **Christopher Martinez** regarding the loan of **Daniel and Yuliana Medeles** whose property address is noted herein above. The Loan Level Data search conducted using Bloomberg's terminal did not reveal matching characteristics based on Original Amount: **$245,760.00**; Origination Date: **July 28, 2009**; Location of Property: **NV**; Property Type: **Single Family Residence**; Occupancy: **Owner Occupied**; Zip Code **89084**. Examiner did, however, locate a REMIC TRUST that matches the characteristics for securitizing this loan, namely the **GINNIE MAE REMIC TRUST 2009-70** issued August 28, 2009.

This is also Department of Veterans Affairs (VA) loan. Most of the loans Ginnie Mae insures are FHA or VA loans. Ginnie Mae is part of the Federal Government within the U.S. Department of Housing and Urban Development (HUD). While the information available to determine any stated investor on the Mortgage Electronic Registration Systems, Inc. ("MERS") web site was not available at the time of this report, there were no qualifying GMAC securitized trusts formed during the time of loan origination in July 2009 through the present. GMAC has been involved in commercial mortgage-backed securities trusts and re-securitization of prior year trusts, but not new issuance of residential mortgage-backed securities trusts in a Bloomberg search. GINNIE MAE guarantees principal and interest of the securitized trusts that it formed. This is an indication that the loan is securitized with Ginnie Mae as the sponsor of the mortgage backed securities (MBS) mortgage pool. As with Fannie Mae and Freddie Mac, loan level detail is not available for Ginnie Mae MBS in usable format or within Bloomberg and prospectuses and related investor information is not filed with the Securities and Exchange Commission.
http://www.ginniemae.gov/about/about.asp?Section=About

**Although USAA Federal Savings Bank originated the loan, any subsequent purchaser may not have properly endorsed the subject note nor perfected the security interest in the note pursuant to the Nevada Uniform Commercial Code as is evident above. There is no known connection between the original lender and GMAC Mortgage, LLC.**

Screen shots of this trust from the Bloomberg System follow:



**Certified Forensic Loan Auditors**

## DESCRIPTION OF SECURITY FROM BLOOMBERG

◄ ► Analyze Agency CMO Menu ⇘ • GNR 2009-70 WE Mtge • DES •                    Message ☆ ⌐ ▣ ✿ ?

GNR 2009-70 WE    100-30⅛ /100-31¼    CUSIP 38374V3T4    Yield 0.533/0.425
As of 14 Mar  Prepay 320PSA  WAL 0.33  Collateral 100.0% G2SF    5%               BVAL
GNR 2009-70 WE Mtge                    9) Feedback                    Security Description
CUSIP 38374V3T4   5.365(300)55    G2SF 5 M
     1) Bond Summary          2) Group Summary          3) Deal Summary          4) Comments
Issuer   GOVERNMENT NATIONAL MORTGAGE ASSOCIATION                    5) Prospectus
Series   2009-70    Class WE   Maturity 11/20/2034    ISIN   US38374V3T48    6) Lead Mgr  MS
7) Class Description EXCH,SEQ                    BBGID  BBG0009ZJ0X5    8) Trustee  WFB

| Current (Feb 2014) | | Original Issue | | Payment Details | | Additional Info | |
|---|---|---|---|---|---|---|---|
| Balance | 11,046,467 | Balance USD | 150,000,000 | Next Pay | 03/20/2014 | TRACE Eligible | |
| Factor | 0.073643110 | WAL | 4.7Yr @ 175PSA | Rcd Date | 02/28/2014 | | |
| Coupon | 4.00% | 1st Coupon | 4.00% | Pay Date | 20th | | |
| Beg Accrue | 02/01/2014 | 1st Payment | 09/20/2009 | Frequency | Monthly | | |
| End Accrue | 02/28/2014 | 1st Settle | 08/28/2009 | Pay Delay | 19 Days | | |
| Class/Grp Pct | n/a | Dated Date | 08/01/2009 | Day Count | 30/360 | FFIEC | Pass |
| | | PX | 08/21/2009 | Call | 1% cleanup call | Min Size | 1,000 |
| | | Class/Grp Pct | 69% | | | Incr | 1 |

9) Historical Paydown (CPD)

| | Mar14 | Feb | Jan | Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr13 | | PSA | CPR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PSA | 227 | 246 | 247 | 244 | 291 | 352 | 393 | 460 | 520 | 559 | 643 | 512 | 3m | 227 | 13.6 |
| CPR | 13.6 | 14.7 | 14.8 | 14.7 | 17.5 | 21.1 | 23.6 | 27.6 | 31.2 | 33.5 | 38.6 | 30.7 | 6m | 240 | 14.4 |
| Fct | - | 0.07 | 0.08 | 0.09 | 0.10 | 0.11 | 0.12 | 0.13 | 0.15 | 0.17 | 0.19 | 0.22 | 12m | 268 | 16.1 |
| Cpn | - | 4.00 | 4.00 | 4.00 | 4.00 | 4.00 | 4.00 | 4.00 | 4.00 | 4.00 | 4.00 | 4.00 | Life | 399 | 23.9 |
| | | | | | | | | | | | | | | 420 | 18.9 |

## DEAL DESCRIPTION

◄ ► Analyze Agency CMO Menu ⇘ • GNR 2009-70 WE Mtge • DES •                    Message ☆ ⌐ ▣ ✿ ?
Page                    Security Description
GNR 2009-70 WE Mtge                    9) Feedback
CUSIP 38374V3T4   5.365(300)55    G2SF 5 M
     1) Bond Summary          2) Group Summary          3) Deal Summary          4) Comments
Issuer   GOVERNMENT NATIONAL MORTGAGE ASSOCIATION                    5) Prospectus
Series   2009-70   8) Collateral   4 Pools: G2SF 5 M                    Group ALL collateral

| Deal (Mar 2014) | | Original Issue | | Collat | PSA | CPR | G2SF 5 M | | |
|---|---|---|---|---|---|---|---|---|---|
| Balance | 116,690,771 | Balance USD | 325,620,007 | 1 Month | 230 | 13.8 | - | - | |
| Net Cpn | 5.00% | Net Cpn | 5.00% | 3 Month | 243 | 14.6 | - | - | |
| WAC | 5.357% | WAC | 5.362% | 6 Month | 270 | 16.2 | - | - | |
| WAM | 24:11   299 mo | WAM | 29:10   358 mo | 12 Month | 393 | 23.6 | - | - | |
| Age | 4:8   56 mo | Age | 0:1   1 mo | Life | 410 | 18.8 | - | - | |
| Next Pay | 03/20/2014 | 1st Pmt | 09/20/2009 | Collateral | | | Payment Details | | |
| Rcd Date | 02/28/2014 | 1st Settle | 08/28/2009 | Country | | US | Frequency | Monthly | |
| B.Median | | PX | 175 PSA 08/21/2009 | | | | Pay Date | 20th | |
| PAC | 33.82%   SUP   0% | PAC | 23.86%   SUP   7.4% | | | | Pay Delay | 19 Days | |
| Beg Accrue | 02/01/2014 | Dated Date | 08/01/2009 | | | | Day Count | 30/360 | |

9) Historical Paydown for Group ALL collateral                    10) Buyout (SEV)

| | Mar14 | Feb | Jan | Dec13 | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr13 | | VPR | Buyout |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PSA | 230 | 248 | 249 | 253 | 295 | 343 | 385 | 451 | 503 | 549 | 621 | 507 | 1m | - | 5.00 |
| CPR | 13.8 | 14.9 | 15.0 | 15.2 | 17.7 | 20.6 | 23.1 | 27.1 | 30.2 | 33.0 | 37.3 | 30.4 | 3m | - | 4.15 |
| WAM | 299 | 300 | 301 | 302 | 303 | 304 | 305 | 306 | 307 | 308 | 309 | 310 | 6m | - | 3.82 |
| WAC | 5.36 | 5.36 | 5.36 | 5.36 | 5.36 | 5.36 | 5.36 | 5.36 | 5.36 | 5.36 | 5.36 | 5.36 | 12m | - | 4.02 |



**Certified Forensic Loan Auditors**

## STRUCTURED FINANCE NOTES SCREEN
### Lists the primary parties to the securitization transaction

◄ ► Description Menu ⚿   GNR 2009-70 WE Mtge ▾   SFNS ▾                          Message ☆ �P▲ ▣. ⚙. ?

〈HELP〉 for explanation, 〈MENU〉 for similar functions.

95) Documents ▾                                                    Structured Finance Notes
21) Related Parties

GNR 2009-70
Underwriter
   Lead Manager    Morgan Stanley
   Co-Manager     Utendahl Capital Partners LP


Servicer                               Trustee
                                       Wells Fargo Bank
                                       Paying Agent


Originator/Seller            Deal%     Asset Manager

                                       Swap Counterparty

Certified Forensic Loan Auditors

# VIEW ALL LOAN CLASSES SCREEN
## Shows the splitting of the investment trust into separate investment classes
### (first 19 of 48 classes shown)

| | CF Class | Orig(000) | Cpn | OWAL | Factor Cusip | Description | Group Des |
|---|---|---|---|---|---|---|---|
| 1) | · AW | 150,000 | 5.000 | 4.68 | 0.0736 38374V3A5 | SEQ | 1: 30YR/5.0/GNMA2/G1 |
| 2) | · WV | 40,633 | 5.000 | 8.68 | 0.8350 38374V3B3 | AD, SEQ | 1: 30YR/5.0/GNMA2/G1 |
| 3) | · WZ | 26,632 | 5.000 | 17.84 | 1.2517 38374V3C1 | Z, SEQ | 1: 30YR/5.0/GNMA2/G1 |
| 4) | Pd CA | 6,550 | 5.000 | 3.73 | 0.0000 38374V3D9 | PAC-2(22) | 2: 30YR/5.0/GNMA2/G2 |
| 5) | Pd CB | 20,909 | 5.000 | 8.86 | 0.0000 38374V3E7 | SUP | 2: 30YR/5.0/GNMA2/G2 |
| 6) | Pd CD | 3,178 | 5.000 | 25.13 | 0.0000 38374V3F4 | SUP | 2: 30YR/5.0/GNMA2/G2 |
| 7) | Pd LA | 36,752 | 5.000 | 3.29 | 0.0000 38374V3G2 | PAC-1(11) | 2: 30YR/5.0/GNMA2/G2 |
| 8) | · LB | 20,741 | 5.000 | 8.01 | 0.9551 38374V3H0 | PAC-1(11) | 2: 30YR/5.0/GNMA2/G2 |
| 9) | · OI | 10,202 | 5.000 | 17.99 | 1.0000 38374V3J6 | IO, NTL, PAC-1 | 2: 30YR/5.0/GNMA2/G2 |
| 10) | · PB | 10,003 | 5.000 | 11.74 | 1.0000 38374V3K3 | PAC-1(11) | 2: 30YR/5.0/GNMA2/G2 |
| 11) | · PO | 10,202 | 0.000 | 17.99 | 1.0000 38374V3L1 | PO, PAC-1(11) | 2: 30YR/5.0/GNMA2/G2 |
| 12) | RR | 0 | 0.000 | 0.00 | 0.0000 38374V3M9 | R, NPR | ALL collateral |
| 13) | · BW | 67,265 | 5.000 | 15.99 | 1.0000 38374V3N7 | EXCH, SEQ | 1: 30YR/5.0/GNMA2/G1 |
| 14) | · WA | 150,000 | 3.000 | 4.68 | 0.0736 38374V3P2 | EXCH, SEQ | 1: 30YR/5.0/GNMA2/G1 |
| 15) | · WB | 150,000 | 3.250 | 4.68 | 0.0736 38374V3Q0 | EXCH, SEQ | 1: 30YR/5.0/GNMA2/G1 |
| 16) | · WC | 150,000 | 3.500 | 4.68 | 0.0736 38374V3R8 | EXCH, SEQ | 1: 30YR/5.0/GNMA2/G1 |
| 17) | · WD | 150,000 | 3.750 | 4.68 | 0.0736 38374V3S6 | EXCH, SEQ | 1: 30YR/5.0/GNMA2/G1 |
| 18) | · WE | 150,000 | 4.000 | 4.68 | 0.0736 38374V3T4 | EXCH, SEQ | 1: 30YR/5.0/GNMA2/G1 |
| 19) | · WG | 150,000 | 4.250 | 4.68 | 0.0736 38374V3U1 | EXCH, SEQ | 1: 30YR/5.0/GNMA2/G1 |

Screen header text:
VAC
<Menu> for series list
95) Options                                    Page 1/3      View All Classes
GNR 2009-70 GOVERNMENT NATIONAL MORTGAGE ASSOCIATION      48 Classes
Template Agency
Structure Menu    GNR 2009-70 WE Mtge    VAC      Message



Certified Forensic Loan Auditors

## COLLATERAL COMPOSITION

```
◄ ► ▲ Analyze Agency CMO Menu ▼ GNR 2009-70 WE Mtge ▾ CLC ▾        Message ☆ 📰 📑 ⚙ ?
GNR 2009-70 WE      100-30⅛ /100-31¼   CUSIP 38374V3T4   Yield 0.533/0.425
As of 14 Mar  Prepay 320PSA  WAL 0.33 Collateral 100.0% G2SF    5%           BVAL
GNR 2009-70 WE Mtge                                              Collateral Composition
CUSIP 38374V3T4    5.365(300)55   G2SF 5 M
  Composition    Top Servicers                      Group All Collateral
1)Overview                                     92.73% Remaining Balance as of Mar'14
2)Addl Info          Servicer                    Bal (USD)    % Bal    #Loans
3)Servicers     1. Wells Fargo Bank, Na,        25,825,220    22.1   12,158
4)Sellers       2. Bank Of America, N.A.        16,116,587    13.8    6,881
5)Pools         3. Jp Morgan Chase Bank N.A.    14,932,934    12.8    9,010
  Distribution  4. Nationstar Mortgage, Llc     14,277,161    12.2    7,289
6)LTV           5. Lakeview Loan Servicing, Llc  8,075,161     6.9    3,367
7)GEO           6. Ocwen Loan Servicing, Llc     7,262,327     6.2    3,620
8)FICO          7. Citimortgage, Inc.            3,321,707     2.9    1,834
9)WAC           8. U. S. Bank, Na                3,320,015     2.9    1,344
10)WAM          9. Phh Mortgage Corporation      3,059,294     2.6    1,515
11)WALA        10. Pnc Bank, Na                  2,821,719     2.4    1,504
12)MIP         11. Suntrust Mortgage, Inc.       2,744,806     2.4    1,318
               12. Ginnie Mae-Taylor Bean Whitaker-3869  2,282,985  2.0  1,876
               13. Branch Banking And Trust Company  1,908,162  1.6    921
               14. Matrix Financial Services Corporation  1,720,164  1.5  961
               15. Fifth Third Mortgage Company     528,693     0.5    456
```

Note: Ocwen Loan Servicing, LLC purchased the operations of GMAC Mortgage from bankrupt
GM mortgage company Residential Capital, Inc.:

http://www.bizjournals.com/philadelphia/news/2013/12/04/local-mortgage-company-lays-244-in-ft.html




Certified Forensic Loan Auditors

# MORTGAGE ELECTRONIC REGISTRATION SYSTEMS (MERS) ANALYSIS

- The Deed of Trust shows a MIN number of 1001056-0002752362-9 and the MERS SERVICER ID website https://www.mers-servicerid.org/sis/search indicates that the loan is serviced by GMAC Mortgage, LLC (the Assignment of Deed of Trust Assignee). Information required to determine any stated investor was not available at time of report.



**MERS**
**ServicerID**
www.mers-servicerid.org

*Process Loans, Not Paperwork™*

**1 record matched your search:**

*Need help?* 🌐

This mortgage loan is registered on the MERS® System for informational purposes only. Mortgage Electronic Registration Systems, Inc. is not the mortgagee for this loan.

MIN: **1001056-0002752362-9**    Note Date: **07/28/2009**    MIN Status: **Inactive**

Servicer: <u>GMAC Mortgage, LLC</u>    Phone: **(800) 766-4622**
**fort washington, PA**

If you are a borrower on this loan, you can <u>click here</u> to enter additional information and display the Investor name.

_____

<u>Return to Search</u>

For more information about Mortgage Electronic Registration Systems, Inc. (MERS) please go to <u>www.mersinc.org</u>

Daniel Medeles   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
Yoliana        "



**Certified Forensic Loan Auditors**

§ For traditional lending prior to Securitization, the original Deed recording was usually the only recorded document in the Chain of Title. That is because banks kept the loans, and did not sell the loan, hence, only the original recording being present in the banks name.

The advent of Securitization, especially through "Private Investors" and not Fannie Mae or Freddie Mac, involved an entirely new process in mortgage lending. With Securitization, the Notes and Deeds were sold once, twice, three times or more. Using the traditional model would involve recording new Assignments of the Deed and Note as each transfer of the Note or Deed of Trust occurred. Obviously, this required time and money for each recording.

(The selling or transferring of the Note is not to be confused with the selling of Servicing Rights, which is simply the right to collect payment on the Note, and keep a small portion of the payment for Servicing Fees. Usually, when a homeowner states that their loan was sold, they are referring to Servicing Rights.)

§ Securitizing a Loan

Securitizing a loan is the process of selling a loan to Wall Street and private investors. it is a method with many issues to be considered. The methodology of securitizing a loan generally followed these steps:

- A Wall Street firm would approach other entities about issuing a "Series of Bonds" for sale to investors and would come to an agreement. In other words, the Wall Street firm "pre-sold" the bonds.

- The Wall Street firm would approach a lender and usually offer them a warehouse Line of Credit. The Warehouse Credit Line would be used to fund the loan. The Warehouse Line would be covered by restrictions resulting from the initial Pooling & Servicing Agreement Guidelines and Mortgage Loan Purchase Agreement. These documents outlined the procedures for the creation of the loans and the administering of the loans prior to, and after, the sale of the loans to Wall Street.

- The Lender, with the guidelines, essentially went out and found "buyers" for the loans, people who fit the general characteristics of the Purchase Agreement. (Guidelines were very general and most people could qualify." The Lender would execute the loan and fund it, collecting payments until there were enough loans funded to sell to the Wall Street firm who could then issue the bonds.

- Once the necessary loans were funded, the lender would then sell the loans to the "Sponsor", usually either a subsidiary of the Wall Street firm, of a specially created Corporation of the lender. At this point, the loans are separated into "tranches" of loans, where they will be eventually turned into bonds.

- Next, the loans were "sold" to the "Depositor." This was a "Special Purpose Vehicle" designed with one purpose in mind. That was to create a "bankruptcy remote vehicle" where the lender or other entities are protected from what might happen to the loans, and/or the loans are "protected" from the lender. The "Depositor" would be, once again, created by the Wall Street firm or the lender.

- Then the "Depositor" would place the loans into the Issuing Entity, which is another entity



**Certified Forensic Loan Auditors**

created solely for the purpose of selling the bonds.

- Finally, the bonds would be sold, with a Trustee appointed to ensure that the bondholders received their monthly payments.

§ USAA FEDERAL SAVINGS BANK was a "correspondent lender" that originated mortgage loans. These loans, in turn, may have been sold and transferred into a "federally-approved securitization" trust named the GINNIE MAE REMIC TRUST 2009-70.

§ The Note and Deed have taken two distinctly different paths. The Note may have been securitized into the GINNIE MAE REMIC TRUST 2009-70.

§ The loan was originally made to USAA FEDERAL SAVINGS BANK and may have been sold and transferred to GINNIE MAE REMIC TRUST 2009-70. There is no record of Assignments to either a Sponsor or Depositor as may be required by a Pooling and Servicing Agreement.

In Carpenter v. Longan 16 Wall. 271,83 U.S. 271, 274, 21 L.Ed. 313 (1872), the U.S. Supreme Court stated "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while assignment of the latter alone is a nullity."

An obligation can exist with or without security. With no security, the obligation is unsecured but still valid. A security interest, however, cannot exist without an underlying existing obligation. It is impossible to define security apart from its relationship to the promise or obligation it secures. The obligation and the security are commonly drafted as separate documents – typically a promissory note and a deed of trust. If the creditor transfers the note but not the deed of trust, the transferee receives a secured note; the security follows the note, legally if not physically. If the transferee is given the deed of trust without the note accompanying it, the transferee has no meaningful rights except the possibility of legal action to compel the transferor to transfer the note as well, if such was the agreement. (Kelley v. Upshaw 91952) 39 C.2d 179, 246 P.2d 23; Polhemus v. Trainer (1866) 30C 685).

"Where the mortgagee has "transferred" only the mortgage, the transaction is a nullity and his "assignee" having received no interest in the underlying debt or obligation, has a worthless piece of paper (4 Richard R. Powell), Powell on Real Property, § 37.27 [2] (2000).

By statute, assignment of the mortgage carries with it the assignment of the debt... Indeed, in the event that a mortgage loan somehow separates interests of the note and the deed of trust, with the deed of trust lying with some independent entity, the mortgage may become unenforceable. The practical effect of splitting the deed of trust from the promissory note is to make it impossible for the holder of the note to foreclose, unless the holder of the deed of trust is the agent of the holder of the note. Without the agency relationship, the person holding only the trust will never experience default because only the holder of the note is entitled to payment of the underlying obligation. The mortgage loan becomes ineffectual when the note holder did not also hold the deed of trust."



Certified Forensic Loan Auditors

**DISCLAIMER**

This report was based exclusively on the documentation provided. It also required that we make reasonable assumptions respecting disclosures and certain loan terms that, if erroneous, may result in material differences between our findings and the loan's actual compliance with applicable regulatory requirements. While we believe that our assumptions provide a reasonable basis for the review results, we make no representations or warranties respecting the appropriateness of our assumptions, the completeness of the information considered, or the accuracy of the findings. The contents of this report are being provided with the understanding that we are not providing legal advice, nor do we have any relationship, contractual or otherwise, with anyone other than the recipient. We do not, in providing this report, accept or assume responsibility for any other purpose.

# EXHIBIT #10

## AFFIDAVIT OF MICHAEL CARRIGAN
## ("CARRIGAN AFFIDAVIT")



**Certified Forensic Loan Auditors**

## AFFIDAVIT OF FACTS

**STATE OF** _____ )
                               ) sv.: **AFFIDAVIT**
**COUNTY OF** _____ )

### RE: Daniel and Yuliana Medeles

I, **MICHAEL CARRIGAN**, a citizen of the United States and the State of California over the age of 21 years, and declare as follows, under penalty of perjury that the facts stated herein are true, correct and complete. The undersigned believes them to be true and admissible as evidence in a court of law, and if called upon as a witness, will testify as stated herein:

1.  That I am a subscriber of the Bloomberg Professional Service, certified and licensed to use such service. I have completed the required training and engaged in continuing education with Bloomberg – both online and at Bloomberg live training events, to stay abreast with Bloomberg's latest progress and developments. I have the requisite knowledge and the trained ability to navigate and perform effective searches on the on the Bloomberg terminal.

2.  I am a Certified Mortgage Securitization Auditor and my qualifications, expertise and experience provide me with the background necessary to certify the audit services and to be qualified as an expert in this field. I have produced approximately one thousand six hundred Securitized Analysis Reports in residential real estate mortgage investigation in 40 states and Puerto Rico, have testified as an expert witness, and have trained auditors in California, Florida, Nevada, New York and Virginia, and via the Internet in webinar format.

3.  I have the trained skills and qualifications to navigate and perform searches on the Bloomberg terminal in regards to the automated tracking and determination of mortgage and loan related documents and information.

4.  The contents of this report are factual, but it is provided for information purposes only and is not to be construed as "legal advice."[1]

---

[1] The client has been strongly advised to seek legal consultation from a competent legal professional in connection with the contents of this report and how to properly use it.

5.  On March 17, 2014, I researched the Bloomberg online Database at the request of CHRISTOPHER MARTINEZ (regarding the loan DANIEL AND YULIANA MEDELES) whose property address is 6408 Sea



**Certified Forensic Loan Auditors**

Swallow Street, North Las Vegas, NV 89084.

6. Based on the information I was provided, DANIEL AND YULIANA MEDELES signed a Promissory Note in favor of USAA Federal Savings Bank on July 28, 2009.

7. The loan was not identified in any publically reporting trust. With this loan being a Department of Veterans Affairs (VA) loan, it is likely that "Guarantor – Ginnie Mae" has a past or current purported ownership interest of the FHA loan given guarantees normally made on VA loans to original lenders. A qualifying trust formed shortly after the execution of the loan on July 28, 2009 is the GINNIE MAE REMIC TRUST 2009-70 with a closing date of August 28, 2009. The underwriters are Morgan Stanley and Utendahl Capital Partners, the Sponsor is Ginnie Mae and Trustee is Wells Fargo Bank, NA. There is no known connection between the original lender, USAA Federal Savings Bank and GMAC Mortgage, LLC (n/k/a Ocwen Loan Servicing, LLC), to whom the Assignment of Deed of Trust was assigned. The Assignment was made by an Assignee employee by signing in a deceptive manner designed to state his position as an Assignor representative.

8. The basis of the identification of Loan in GINNIE MAE REMIC TRUST 2009-70 was made from the following factors/information that correspond with DANIEL AND YULIANA MEDELES'S loan documents provided: Original Amount: $245,760.00; Origination Date: July 28, 2009; Location of Property: WA; Property Type: Single Family Residence; Occupancy: Owner Occupied; Zip Code: 89084.

9. Generally, if the Deed of Trust and the Note are not together with the same entity, there can be no legal enforcement of the Note. The deed of trust enforces the Note and provides the capability for the lender to foreclose on the property. Thus, if the Deed of Trust and the Note are separated, foreclosure legally cannot occur. The Note cannot be enforced by the Deed of Trust if each contains a different mortgagee/beneficiary; and, if the Deed of trust is not itself a legally enforceable instrument, there can be no valid foreclosure on the homeowners' property.

10. No Entity can be a CREDITOR if they do not hold/own the asset in question (i.e. the NOTE and/or the property); a Mortgage Pass Through Trust (i.e. R.E.M.I.C., as defined in Title 26, Subtitle A, Chapter 1, Subchapter M, Part II §§ 850-862) cannot hold assets, for if they do, their tax exempt status is violated and the Trust itself is void ab initio. Therefore, either the Trust has either voided its intended Tax Free Status, or the asset is not in fact owned by it.

11. In the event that the loan was sold, pooled and turned into a security, the alleged holder can no longer claim that it is a real party of interest, as the original lender has been paid in full.

12. Further said, once a Note is converted into a stock, or stock equivalent, it is no longer a Note. If both the Note and the stock, or stock equivalent, exist at the same time, that is known as double dipping. Double dipping is a form of securities fraud.

13. Once a loan has been securitized, which the aforementioned loan may have been done many times, it forever loses its security component (i.e., the Deed of Trust), and the right to foreclose through the Deed of Trust is forever lost.

14. The Promissory Note may have been converted into a stock as a permanent fixture. It would then a stock and governed as a stock under the rules and regulations of the SEC; hence, the requirement for the filings of the registration statements, pooling and servicing agreements, form 424B-5, et.al. There is no evidence on Record to indicate that the Deed of Trust was ever transferred concurrently with the purported legal transfer of the Note, such that the Deed of Trust and Note has been irrevocably



**Certified Forensic Loan Auditors**

separated, thus making a nullity out of the purported security in a property, as claimed (Federal Rules of Evidence Rules 901 & 902).

15. Careful review and examination reveals that this may have been a securitized loan. I supply this report as written testimony and am available for oral testimony.

By:

_____

Michael Carrigan
Certified Mortgage Securitization Auditor / Bloomberg Specialist

STATE OF _____    )
                           ) sv: **ACKNOWLEDGEMENT**



**Certified Forensic Loan Auditors**

**COUNTY OF** _____   )

On _____, 2014 before me, _____
(Notary Public)

personally appeared **MICHAEL CARRIGAN**, who proved to me on the basis of satisfactory evidence to be the man whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument under the penalty of perjury.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


Signature _____ (Seal)


My commission Expires _____


EXHIBIT I

Voluntary Lien Search



Certified Forensic Loan Auditors

**History Record #: 13**
*Sale/Transfer:*
Recording Date: **07/30/2009**          Sale Date: **07/28/2009**
Document Number: **2009.730.3316**      Sale Price: **$240,000**
Document Type: **DEED**                 Sale Type:
Title Company: **FIRST AMERICAN TITLE**
Buyer: **MEDELES,DANIEL O & YULIANA E**
Seller: **TIM WEAVER INC**

*Finance:*
Recording Date: **07/30/2009**          Finance Type: **RESALE**
Document Number: **2009.730.3317**      Mortgage Loan Type: **VETERANS ADMINISTRATION (VA)**
Document Type: **FINANCE**              Mortgage Term:
Lender: **USAA FSB**                    Mortgage Rate Type: **FIXED**
Loan Amount: **$245,760**               Mortgage Rate:
Borrower: **MEDELES YULIANA E**

Borrower: **MEDELES DANIEL O**

**History Record #: 14**
*Sale/Transfer:*
Recording Date: **06/18/2009**          Sale Date: **05/20/2009**
Document Number: **2009.618.1766**      Sale Price: **$177,000**
Document Type: **DEED**                 Sale Type:
Title Company: **FIRST AMERICAN TITLE**
Buyer: **TIM WEAVER INC**
Seller: **CWMBS INC TRUST 2004-HYB 9**

**History Record #: 15**
*Sale/Transfer:*
Recording Date: **02/19/2009**          Sale Date: **02/09/2009**
Document Number: **2009.219.3447**      Sale Price: **$270,000**
Document Type: **FORECLOSURE**          Sale Type:
Title Company: **LSI TITLE AGENCY**
Buyer: **CWMBS INC SERIES 2004-HYB9**
Seller: **RECONTRUST CO**



Certified Forensic Loan Auditors

**History Record #: 16**
*Assignment:*
    Recording Date: **02/19/2009**
    Document Number: **2009.219.3446**
    Document Type: **ASSIGNMENT**
    New Lender:
    Previous Lender:
    Borrower:

    Orig Recording Date: **10/28/2004**
    Orig Doc Number: **1028-2355**

**History Record #: 17**
*Foreclosure:*
    Recording Date: **01/22/2009**
    Document Number: **2009.122.0578**
    Document Type: **NOTICE OF TRUSTEE SALE**
    Trustee:
    Title Company:
    Defendant:

    Filing Date:
    Orig Recording Date: **10/28/2004**
    Orig Doc Number: **1028-2355**
    Trustee Phone:
    Unpaid Balance:

**History Record #: 18**
*Foreclosure:*
    Recording Date: **06/13/2008**
    Document Number: **2008.613.1198**
    Document Type: **NOTICE OF TRUSTEE SALE**
    Trustee:
    Title Company:
    Defendant:

    Filing Date:
    Orig Recording Date: **10/28/2004**
    Orig Doc Number: **1028-2355**
    Trustee Phone:
    Unpaid Balance:

**History Record #: 19**
*Foreclosure:*
    Recording Date: **01/23/2008**
    Document Number: **2008.123.2202**
    Document Type: **NOTICE OF TRUSTEE SALE**
    Trustee:
    Title Company:
    Defendant:

    Filing Date:
    Orig Recording Date: **10/28/2004**
    Orig Doc Number: **1028-2355**
    Trustee Phone:
    Unpaid Balance:

**History Record #: 20**
*Foreclosure:*
    Recording Date: **12/20/2007**
    Document Number: **2007.1220.2994**
    Document Type: **SUBSTITUTION OF TRUSTEE**
    Trustee:
    Title Company:
    Defendant:

    Filing Date:
    Orig Recording Date: **10/28/2004**
    Orig Doc Number: **1028-2355**
    Trustee Phone:
    Unpaid Balance:



Certified Forensic Loan Auditors

**History Record #: 21**
*Foreclosure:*

Recording Date: **12/07/2007**  Filing Date:
Document Number: **2007.1207.2676**  Orig Recording Date: **10/28/2004**
Document Type: **SUBSTITUTION OF TRUSTEE**  Orig Doc Number: **1028-2355**
Trustee:  Trustee Phone:

Title Company:  Unpaid Balance:
Defendant:

**History Record #: 22**
*Foreclosure:*

Recording Date: **10/31/2007**  Filing Date:
Document Number: **2007.1031.4622**  Orig Recording Date: **10/28/2004**
Document Type: **NOTICE OF DEFAULT**  Orig Doc Number: **1028-2355**
Trustee:  Trustee Phone:
Title Company:  Unpaid Balance:
Defendant:

**History Record #: 23**
*Finance:*

Recording Date: **04/17/2006**  Finance Type: **REFINANCE**
Document Number: **2006.417.2325**  Mortgage Loan Type:
Document Type: **TRUST DEED / MORTGAGE**  Mortgage Term:
Lender: **HOUSEHOLD FINANCE REALTY CO NV**  Mortgage Rate Type: **FIXED**
Loan Amount: **$15,931**  Mortgage Rate:
Borrower: **DOUGLAS BRIAN**

**History Record #: 24**
*Finance:*

Recording Date: **10/25/2005**  Finance Type: **REFINANCE**
Document Number: **2005.1025.0137**  Mortgage Loan Type:
Document Type: **TRUST DEED / MORTGAGE**  Mortgage Term:
Lender: **CAPITAL ONE HOMELOANS LLC**  Mortgage Rate Type: **FIXED**
Loan Amount: **$50,000**  Mortgage Rate:
Borrower: **DOUGLAS BRIAN**



**Certified Forensic Loan Auditors**

History Record #: 25
*Sale/Transfer:*
    Recording Date: **10/28/2004**
    Document Number: 2004.1028.2354
    Document Type: **DEED**
    Title Company: **FIRST AMERICAN TITLE**
    Buyer: **DOUGLAS,BRIAN**
    Seller: **KB HOME NEVADA INC**

    Sale Date:
    Sale Price: **$416,341**
    Sale Type:

*Finance:*
    Recording Date: **10/28/2004**
    Document Number: 2004.1028.2355
    Document Type: **FINANCE**
    Lender: **KB HOME MORTGAGE CO**
    Loan Amount: **$374,700**
    Borrower: **DOUGLAS BRIAN**

    Finance Type: **NEW CONSTRUCTION**
    Mortgage Loan Type:
    Mortgage Term:
    Mortgage Rate Type: **VARIABLE**
    Mortgage Rate:

History Record #: 26
*Sale/Transfer:*
    Recording Date: **02/03/2004**
    Document Number: 2004.203.0880
    Document Type: **DEED**
    Title Company: **FIRST AMERICAN TITLE**
    Buyer: **KB HOME NEVADA INC**
    Seller: **NORTH VALLEY ENTERPRISES LLC**

    Sale Date:
    Sale Price: **$608,370**
    Sale Type: **CONFIRMED**

### Voluntary Lien Date Ranges for CLARK , NV

|  | **Sales** | **Mortgages** | **Assignments** | **Releases** | **Foreclosures** |
|---|---|---|---|---|---|
| **Start Date** | 01/02/1990 | 03/01/1993 | 01/01/2005 | 01/01/2005 | 01/01/2005 |
| **End Date** | 03/07/2014 | 03/07/2014 | 03/07/2014 | 03/07/2014 | 03/07/2014 |

www.docedge.com

1. Item 13. Daniel and Yuliana Medeles acquired property for $240,000 on 7/28/09, financing purchase with VA loan, which is the subject of this report.

2. Item 12. Foreclosure actions brought by foreclosing parties with impropriety as noted in body of report. Assignment made approximately one year after loan execution without supporting detail by employee of foreclosure agent working for Assignee GMAC Mortgage LLC, not authorized Assignor USAA Federal Savings Bank Examiner recommends immediate rescission of document for lawful foreclosure to occur pending review of purchase documents (e.g. bills of sale; verifiable proof of funds; note endorsements) among USAA Federal Savings Bank, GMAC Mortgage LLC, Ginnie Mae, and any securitized trusts sponsored by Ginnie Mae, such as the qualified Ginnie Mae trust identified.

3. Items 1-2, 4-7, 10-11. Foreclosure actions related to primary active loan. Authorization of active documents is dependent upon unauthorized Assignment of Deed of Trust, item #12 above, and should be rescinded until purchase documents produced and reviewed.

4. Items 3, 8-9. Transfers of property ownership that has not changed borrowers on loan.

***Remaining items 14-26 relate to prior ownership***

# EXHIBIT #11

## AFFIDAVIT OF CHAD D. ELROD, ESQ. J.D. ("ELROD AFFIDAVIT")

CHRISTOPHER MARTINEZ, pro se      AFFIDAVIT OF

)
)
)           CHAD D. ELROD
)
**Real Property Located at:**     )
6408 SEA SWALLOW STREET )
NORTH LAS VEGAS, NV 89084 )
)

I, Chad D. Elrod, declare as follows:

1.    I am over the age of 18 years and qualified to make this affidavit. I am a resident of the State of Texas and make this affidavit based on my own personal knowledge. I have no direct or indirect interest in the outcome of this case for which I am offering observations, analysis, opinions and testimony.

2.    I am experienced in Securitization Analysis. I research or review the Corporate/Trust Documents, which are officially filed with the Securities and Exchange Commission. I use and review specialty licensed software (Bloomberg L.P.). This permits investors and licensed users to access any "named Trust-Entity". From Bloomberg data, I can see each Note that is held by this named Trust-Entity, and I can see its current status in real time. I have the knowledge and experience to perform these searches and reviews of searches with reliable accuracy. I am available for court appearances, in person or via telephone for further clarification or explanation of the information provided herein, or for cross examination if necessary. I have examined the following documents and Audio Record.

     A.           Complaint filed in the United States District Court, District of Nevada, as case number 2:14-CV-00567-RCJ-PAL.

     B.           Note of DANIEL and YULIANA MEDELES in the amount of $245,760.00.

     C.           Recorded Deed of Trust pertaining to the Note of DANIEL and YULIANA MEDELES in the amount of $245,760.00 made payable to USAA FEDERAL SAVINGS BANK.

     D.           A document purporting to be an "Assignment of Mortgage" recorded AUGUST 28, 2009.

E.                                        A complete search of the CLARK County
Record pertaining to 6408 SEA SWALLOW STREET NORTH LAS VEGAS, NV
89084.

3.    I have personal knowledge of the audit containing the information retrieved from the
terminals and experience to render opinions in the topic areas related the securitization of
mortgage loans, derivative securities, the securities industry, real property law, Uniform
Commercial Code practices, predatory lending practices, Truth in Lending Act requirements,
loan origination and underwriting, accounting in the context of securitization and pooling and
servicing of securitized loans, assignment and assumption of securitized loans, creation of trusts
under deeds of trust, pooling and agreements, and issuance of asset backed securities and
specifically mortgage-backed securities by special purpose vehicles in which an entity is
named as trustee for holders of certificates of mortgage backed securities, the economics of
securitized residential mortgages during the period of 1998-2008, appraisal fraud, and its effect
on APR disclosure, usury, exceeding the legal limit for interest charged, foreclosure of
securitized, non-securitized residential mortgages.

4.    From many hours of study and research and formal training and reviewing thousands
of mortgage documents, I learned that one procedure for funding is via mortgage securitization
where such pools solicit funds from investors by means of a Pooling and Servicing Agreement
(PSA), which was used to explain and govern the Mortgage Backed Security (MBS). The PSA
is the governing document for the MBS pool that was typically established as a Trust. State
trust laws uniformly demand that the governing documents of the Trust be strictly adhered to
compliance with IRS taxing guidelines.

## General Overview of Secured Transactions

5.    Ownership of the intangible payment stream collected from a Mortgage Loan can be
bought, sold and transferred. This transfer of ownership is evidenced through the sale of a
certificate funded by payment stream(s) received from payments made upon what will be
defined within this document as the "Obligation". Ownership of the Obligation via buying and
selling the certificates (intangible payment stream) is allowable under the governance of UCC
Article 9, as a Transferable Record. Transferred ownership can be seen though the financial
record of the distributed payment stream. Transfer of ownership through certificates is an

actual transfer of a partial ownership of a beneficial interest in the intangible payment stream of the Obligation.

6.    The initial and subsequent certificate transactions involving the divided intangible payment stream of the Obligation, does not transfer ownership of the Note and the Mortgage to the owners of the intangible payment stream. Transfer of ownership of the Note and the Mortgage would require that partial interest in the tangible instruments which secure the Obligation (Note and the Mortgage) be transferred/assigned to all and each of the potential multiple owners of the certificates compliant with the local laws of jurisdiction. That described transfer would be impossible. To create the appearance that the transfer of the partial interest of the tangible instruments has been accomplished, the transfer mortgages and deeds of trust are made to a common Trustee. Any owner of the security as a transferable record of the payment stream could be in jeopardy of stripping the security away from the Note unless ownership of the Note is also obtained.

7.    In the Commercial Money Ctr., Inc. bankruptcy, the Ninth Circuit Appellate Court had no difficulty concluding that ownership of income streams can be stripped from the records that evidence them.

> From Commercial Money Ctr., Inc., 350 B.R. 465, 473-79 (B.A.P. 9th Cir. 2006), rev'g, 56 U.C.C. Rep. Serv. (West) 54 (Bankr. S.D. Cal. Jan. 27, 2005). "This language on its face defines chattel paper to mean the records that "evidence" certain things, including monetary obligations. Payment streams stripped from the underlying leases are not records that evidence monetary obligations they are monetary obligations. Therefore, we agree with NetBank that the payment streams are not chattel paper."

8.    Of the three transferable linked parts of every Mortgage Loan, the Obligation, the Note and the Mortgage, two of those transferable parts are tangible instruments, the Note and the Mortgage. The Note is a negotiable instrument that evidences the Obligation. The Mortgage, seen as a Real Property Lien, is a contract listing alternatives for collecting payment due under the Obligation evidenced by the Note.

9.    Each Note associated with a Mortgage Loan is created as a negotiable instrument to allow for future sale. When a Note is treated as a negotiable instrument, falling under the governance of UCC Article 3, ownership of the Note shall be transferred by means of special endorsement or by indorsing in blank to create a bearer Note. However, possession of the Note must not be confused with ownership of the Note, where a possessor may not be more than a custodian or agent of an owner. Additionally, a valid subsequent owner, while negotiating ownership of a Note, must exercise care so as to avoid loss of Secured Party status in the negotiation of a Note. (Secured Party status is of serious concern for the Bankruptcy Courts) An alleged subsequent owner of the Note failing to permanently perfect (filing of record as required by law) ownership of the Mortgage (Security) associated with a Note into their name, while negotiating Ownership of a Note, would render a Secured Note being an Unsecured Note. Ownership of Unsecured Note, no longer secured by a mortgage of deed of trust, separates the Obligation from the Conditions to enforce the Power of Sale. Where an alleged subsequent owner of a negotiable instrument lacks endorsement for owner/holder status, the UCC allows for such party to obtain endorsements to allow the subsequent party to be entitled to enforcement rights upon the negotiable instrument. However, the UCC has no retroactive means to re-establish an unsecured negotiable instrument back into a secured negotiable Instrument. Secured status and unsecured status is dependent upon the securing security being in compliance with local laws of jurisdiction. Once the deed of trust was separated from the note, the note became unsecured forever under UCC Article 3.

10.    A Note transferred in interstate commerce is a negotiable instrument and therefore falls under the governance of UCC Article 3. Any party who possesses a valid ownership interest in a Note can only transfer that interest by way of negotiation through endorsement. However, because real estate ownership rights are concerned, perfection of transfer of the Mortgage, a contract involving real estate, securing the Note, falls within governance of Laws of Jurisdiction where the real property resides. Even, within its own language, the Mortgage contains notice that Federal Statutes and/or the Laws of Local Jurisdiction are governing law, therefore attempts to apply UCC Article 9 as governing the transfer of the Mortgage would be misplaced. Subsequently, any party who possesses a valid beneficial interest in a Mortgage can only transfer that interest by way of properly recorded assignment of that interest. Transfer of beneficial interest in a Mortgage, without properly recorded assignment, would place anyone

doing so in jeopardy of violating Federal Statutes and/or Local Laws of the applicable Jurisdiction and potentially the common law Statutes of Fraud.

11. A properly recorded assignment of the Mortgage memorializes the Note's negotiation, but does not cause the Note's transfer. For a Note to change ownership and remain secured through the Mortgage/Deed of Trust each and every transfer of the Note, by endorsement or negotiation, must be performed with a parallel assignment of the security instrument properly filed in the local County Record. If a Note is indorsed and negotiated to one party while the Mortgage is assigned to another party, a separation between the Ownership of the Note evidencing the Obligation and the Ownership of the Conditions, which secure the Obligation to Real Property, occurs.

12. For a Party with ownership of a Note to be a Holder in Due Course with the rights and power of foreclosure, the "Power of Sale", the Note must remain secured to Real Property. When a separation of Ownership of the Obligation and the Ownership of Conditions, which secure the Obligation occurs by failing to follow mandated law, the Mortgage/Deed of Trust (Security) is no longer secured by Real Property. When the Mortgage Loan is no longer secured by Real Property, there can be no Holder in Due Course of a Secured Note. Such Holder of the Note has lost the right to seek alternate payment through the use of a now invalid security instrument. *Therefore, any Party seeking to bring a claim, against real estate title in a foreclosure, as Holder in Due Course of a Secured Mortgage Loan, must demonstrate an unbroken chain of properly recorded assignments of the Mortgage and a parallel unbroken chain of completed Note endorsements.* Making a claim of beneficial interest in a Mortgage Loan without an unbroken chain of properly recorded assignments of the Mortgage and a parallel unbroken chain of completed Note endorsements would place anyone doing so in jeopardy of violating Federal Statutes and/or Local Laws of Jurisdiction. Where such alternate collection method has been dissolved by failure to follow law, the owner of the Note does (did) have equitable remedy by seeking recovery of the debt by filing suit in a jurisdictional court of equity. The paradox, is, where such a holder has pledged a Mortgage Loan (Secured Package) as collateral, knowing that such was not a Secured Package, would present such a pledgor with unclean hands.

13.   The Mortgage transaction is a contract between the borrower (Payor) and the parties spelled out on the face of the document. A separation between Ownership of the Note and the Ownership of the Mortgage/Deed of Trust would be a violation of the terms of that contract. Under long existing contract law, if the terms of a contract are violated, affecting the conditions under which the Payor is obligated, without the properly evidenced consent of the Payor, that contract is void and cannot be returned to without the consent of the Payor.

14.   It is an ancient and long held concept within United States Law and NEVADA law, that ownership of the Note and ownership of the Mortgage can be separated, however, if ownership is separated, the Mortgage, because it can have no separate existence, cannot survive and becomes a nullity.

> To enforce the obligation by nonjudicial foreclosure and sale, "[t]he deed and note must be held together because the holder of the note is only entitled to repayment, and does not have the right under the deed to use the property as a means of satisfying repayment." *Cervantes v. Countrywide Home Loans, Inc.,* 656 F.3d 1034, 1039 (9th Cir.2011). "Conversely, the holder of the deed alone does not have a right to repayment and, thus, does not have an interest in foreclosing on the property to satisfy repayment." *Id.; see also Leyva v. National Default Servicing Corp.,* 127 Nev. ——, ——, 255 P.3d 1275, 1279–80 (2011) (recognizing that the note and the deed of trust must be held by the same person to foreclose under NRS Chapter 107). . . . Indeed, to foreclose, one must be able to enforce *both* the promissory note *and* the deed of trust. *Edelstein v. Bank of New York Mellon,* 286 P.3d 249, 254 - 57 (Nev. 2012).

15.   Sometimes a Mortgage Loan is sold into MBS Trust. A MBS Trust is governed by a PSA filed with the Securities and Exchange Commission. When a Mortgage Loan is sold into MBS Trust all the well-established Real Estate and Contract Law explained above still applies. For a MBS Trust to be Holder in Due Course of a Secured Mortgage Loan, properly recorded assignments of the Mortgage, as well as completed parallel endorsements of the Note to match, are required not only by well-established Real Estate and Contract Law, but also by the PSA and or REMIC Master Trust Agreement which governs the MBS Trust in question.

**The MEDELES Mortgage and The MEDELES Note have been sold by USAA FEDERAL SAVINGS BANK on or before AUGUST 28, 2009.**

16.    On MARCH 17, 2014, the online Bloomberg database was researched at the request of CHRISTOPHER MARTINEZ whose property address is 6408 SEA SWALLOW STREET NORTH LAS VEGAS, NV 89084. DANIEL and YULIANA MEDELES had allegedly signed a Note in favor of USAA FEDERAL SAVINGS BANK on JULY 28, 2009 with the loan number #702219788. This loan was identified in GINNIE MAE REMIC TRUST 2009-70 with the ID number #1001056-0002752362-9. The loan is being serviced by OCWEN LOAN SERVICING, LLC with the clarifying code and, or abbreviation on the Specialty Licensed Terminal of GINNIE MAE REMIC TRUST 2009-70 (herein referred to as "TRUST 2009-70"). The following are dated authenticate screen shots of business records found on Bloomberg L.P.

## BLOOMBERG MORTGAGE LOAN FIND: (Group Description)

**BLOOMBERG AGENCY CLASSES/CUSSIP/GROUP–ACTIVE AND PAID TRANCHE STATUS**



| | CF Class | Orig(000) | Cpn | OWAL | Factor Cusip | Description | Group Des |
|---|---|---|---|---|---|---|---|
| 1) | AW | 150.000 | 5.000 | 4.68 | 0.0736 38374V3A5 | SEQ | 1: 30YR/5.0/GNMA2/G1 |
| 2) | WV | 40.633 | 5.000 | 8.68 | 0.8350 38374V3B3 | AD, SEQ | 1: 30YR/5.0/GNMA2/G1 |
| 3) | WZ | 26.632 | 5.000 | 17.84 | 1.2517 38374V3C1 | Z, SEQ | 1: 30YR/5.0/GNMA2/G1 |
| 4) Pd | CA | 6.550 | 5.000 | 3.73 | 0.0000 38374V3D9 | PAC-2(22) | 2: 30YR/5.0/GNMA2/G2 |
| 5) Pd | CB | 20.909 | 5.000 | 8.86 | 0.0000 38374V3E7 | SUP | 2: 30YR/5.0/GNMA2/G2 |
| 6) Pd | CD | 3.178 | 5.000 | 25.13 | 0.0000 38374V3F4 | SUP | 2: 30YR/5.0/GNMA2/G2 |
| 7) Pd | LA | 36.752 | 5.000 | 3.29 | 0.0000 38374V3G2 | PAC-1(11) | 2: 30YR/5.0/GNMA2/G2 |
| 8) | LB | 20.741 | 5.000 | 8.01 | 0.9551 38374V3H0 | PAC-1(11) | 2: 30YR/5.0/GNMA2/G2 |
| 9) | OI | 10.202 | 5.000 | 17.99 | 1.0000 38374V3J6 | IO, NTL, PAC-1 | 2: 30YR/5.0/GNMA2/G2 |
| 10) | PB | 10.003 | 5.000 | 11.74 | 1.0000 38374V3K3 | PAC-1(11) | 2: 30YR/5.0/GNMA2/G2 |
| 11) | PO | 10.202 | 0.000 | 17.99 | 1.0000 38374V3L1 | PO, PAC-1(11) | 2: 30YR/5.0/GNMA2/G2 |
| 12) | RR | 0 | 0.000 | 0.00 | 0.0000 38374V3M9 | R, NPR | ALL collateral |
| 13) | BW | 67.265 | 5.000 | 15.99 | 1.0000 38374V3N7 | EXCH, SEQ | 1: 30YR/5.0/GNMA2/G1 |
| 14) | WA | 150.000 | 3.000 | 4.68 | 0.0736 38374V3P2 | EXCH, SEQ | 1: 30YR/5.0/GNMA2/G1 |
| 15) | WB | 150.000 | 3.250 | 4.68 | 0.0736 38374V3Q0 | EXCH, SEQ | 1: 30YR/5.0/GNMA2/G1 |
| 16) | WC | 150.000 | 3.500 | 4.68 | 0.0736 38374V3R8 | EXCH, SEQ | 1: 30YR/5.0/GNMA2/G1 |
| 17) | WD | 150.000 | 3.750 | 4.68 | 0.0736 38374V3S6 | EXCH, SEQ | 1: 30YR/5.0/GNMA2/G1 |
| 18) | WE | 150.000 | 4.000 | 4.68 | 0.0736 38374V314 | EXCH, SEQ | 1: 30YR/5.0/GNMA2/G1 |
| 19) | WG | 150.000 | 4.250 | 4.68 | 0.0736 38374V3U1 | EXCH, SEQ | 1: 30YR/5.0/GNMA2/G1 |

17. Pursuant to a thorough review of an audit, I have found the aforementioned MEDELES Mortgage Loan number in multiple classes of the TRUST 2009-70 Trust. The MEDELES Obligation has been sold to multiple classes of the TRUST 2009-70 Trust. Where it remains a performing asset as of MARCH 17, 2014.

18. It is impossible to ascertain to who owns what, as the income stream from the MEDELES Obligation is no longer owned in a unified manner as described by the Prospectus when discussing the Classes within the Trust Pool. Each class of the TRUST 2009-70 Trust owns a different partial interest in the MEDELES Obligation. Even though a Trust may show a Class within that Trust as being paid, this is a predetermined action by the Trust. It does not mean that the MEDELES Obligation has been paid. It is impossible to make that determination, as the MEDELES Obligation no longer exists in its original form. Subsequently, the ownership of partial interest in the MEDELES Obligation can no longer be determined, nor can it be determined what or which partial interest in MEDELES Obligation has been paid nor what percentage of that partial interest in the MEDELES Obligation has been satisfied/settled. Even

though there is some division of performance of the loan from class to class. If ownership the
MEDELES Obligation exists in any class as the Transferable Record of the ownership, the
MEDELES Obligation exists in total within the Trust.

19.   Securitization is the process of aggregating the Obligations from a large number of
mortgage loans, into what is called a mortgage pool and then selling "shares" (called certificates)
of ownership of partial interest of the Obligations to investors. The income stream from the
Obligation that the MEDELES mortgage payments produce flows through fractionalized
payments into many different classes to many different investors, of the TRUST 2009-70 Trust
depending on which certificates of which class were purchased by which investor. My research
shows that ownership of the MEDELES Obligation does appear in the schedules and agreements.
The divided monthly loan payments paid by DANIEL and YULIANA MEDELES to OCWEN
LOAN SERVICING, LLC most definitely flowed into multiple classes of the GINNIE
MAE REMIC TRUST 2009-70.

20.   The ownership of the MEDELES Obligation has been conveyed as a Transferable Record
to multiple classes of the TRUST 2009-70 Trust. For ownership of the MEDELES Obligation
to not have been stripped away from the ownership of the MEDELES Note by that conveyance,
ownership of the MEDELES Note must have also been transferred to multiple classes of the
TRUST 2009-70 Trust.

21.   Even though the MEDELES Obligation is supposedly owned by multiple classes of
the TRUST 2009-70 Trust, it can only be determined if the original MEDELES Note had been
physically delivered to multiple classes of the TRUST 2009-70 Trust by checking with the
custodian of documents. Until then, there is no evidence multiple classes of the TRUST 2009-70
Trust possessed or owned in any manner the MEDELES Note or mortgage before the closing date
of AUGUST 28, 2009, as required by its own agreements.

22.   The ownership of the MEDELES Obligation has been conveyed as a Transferable Record
to multiple classes of the TRUST 2009-70 Trust. For the conditions of MEDELES Mortgage over
the MEDELES Obligation not to be stripped away by that conveyance, ownership of the
MEDELES Mortgage must have also been transferred to multiple classes of the TRUST 2009-70
Trust.

23.  The beneficial interest (ownership) of the MEDELES Mortgage has been recorded in the Official records of CLARK County Registry as being in the name of USAA FEDERAL SAVINGS BANK of the loan on JULY 28, 2009. However, it is clear that USAA FEDERAL SAVINGS BANK as recorded as the original lender on the MEDELES Mortgage sold all ownership interest, in the MEDELES Obligation to multiple classes of the TRUST 2009-70 Trust on or about JULY 28, 2009 near the closing date of the TRUST 2009-70 Trust. Ownership of the MEDELES Obligation or Note, but not the mortgage security, is held in multiple classes of the TRUST 2009-70 Trust, and the payments under the MEDELES Obligation are disbursed to the investors of TRUST 2009-70 Trust who hold certificates to the investment classes into which payments under the MEDELES Obligation are scheduled to flow. Therefore the transfer of beneficial interest in the MEDELES Mortgage by USAA FEDERAL SAVINGS BANK might be accomplished, but that beneficial interest is no longer attached to ownership of the MEDELES Obligation.

## As Multiple Classes of the TRUST 2009-70 Trust Own the MEDELES Obligation, Multiple Classes of the TRUST 2009-70 Trust are Required to have Ownership of the MEDELES Note and the MEDELES Mortgage or Deed of Trust

24.  By multiple classes of the TRUST 2009-70 Trust purchasing the MEDELES Obligation and doing with it whatever was done, multiple classes of the TRUST 2009-70 Trust were exercising rights of ownership over the MEDELES Mortgage Loan and payment stream. By exercising rights of ownership over the MEDELES Mortgage Loan multiple classes of the TRUST 2009-70 Trust made claims of ownership of all three parts of the MEDELES Mortgage Loan.

25.  The MEDELES Obligation only exists through the tangible instruments creating it, the MEDELES Note and the MEDELES Mortgage. The sale of the ownership of the MEDELES Obligation to multiple classes of the TRUST 2009-70 Trust, without striping away the ownership of the MEDELES Obligation from the ownership of the MEDELES Note, could only be accomplished with the accompanying negotiations of the MEDELES Note and the accompanying assignments of the MEDELES Mortgage to multiple classes of the TRUST 2009-70 Trust.

26.  Multiple classes of the TRUST 2009-70 Trust have made and continue to make claims

of ownership of the MEDELES Obligation, and exercise those claims. To exercise claims of ownership of the MEDELES Obligation, assignments of the MEDELES Mortgage should have been accomplished. Multiple classes of the TRUST 2009-70 Trust are acting as if assignments of the MEDELES Mortgage have been accomplished.

27.    The assignment of the MEDELES Mortgage is a conveyance of an instrument concerning real property, which must be recorded in order to be acted upon. United States Code considers that anyone certifying that a real estate instrument has been assigned, when in fact it has not, is guilty of a felonious criminal act.

> Title 18 USC Chapter 47 § 1021
> Whoever, being an officer or other person authorized by any law of the United States to record a conveyance of real property or any other instrument which by such law may be recorded, knowingly certifies falsely that such conveyance or instrument has or has not been recorded, shall be fined under this title or imprisoned not more than five years, or both.

## Multiple Classes of the TRUST 2009-70 Trust cannot Claim Ownership of either the MEDELES Note or the MEDELES Mortgage or Deed of Trust.

28.    Multiple classes of the TRUST 2009-70 Trust own the MEDELES Obligation. However the transfers of ownership of either of the two tangible parts of the security instrument that evidence the MEDELES Obligation from USAA FEDERAL SAVINGS BANK to multiple classes of the TRUST 2009-70 Trust are not memorialized in the CLARK County Record in a manner which observes United States Code.

29.    Under the Consumer Credit Protection Act Title 15 USC Chapter 41 § 1641(g) any transfer of the MEDELES Mortgage to multiple classes of the TRUST 2009-70 Trust would be in violation of Federal Statute, if those transfers had not been recorded CLARK County Record within 30 days along with notification to DANIEL and YULIANA MEDELES that the transfers had occurred. As there are no recorded assignments of the MEDELES Mortgage from USAA FEDERAL SAVINGS BANK to multiple classes of the TRUST 2009-70 Trust, within 30 days of the of AUGUST 28, 2009, closing date of the TRUST 2009-70 Trust, either there has been a violation of Federal Law or multiple classes of the TRUST 2009-70 Trust, who are the owners of the MEDELES Obligation, are not the owners of the either the MEDELES Note or the MEDELES Mortgage. The assignment of mortgage to the TRUST 2009-70 Trust was not made until AUGUST



28, 2009, document number #2011-1111535 of the CLARK County Records.

Title 15 USC Chapter 41 § 1641(g)

g) Notice of new creditor

(1) In general

In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including—

(A) the identity, address, telephone number of the new creditor;

(B) the date of transfer;

(C) how to reach an agent or party having authority to act on behalf of the new creditor;

(D) the location of the place where transfer of ownership of the debt is recorded; and

(E) any other relevant information regarding the new creditor.

30.   Multiple classes of the TRUST 2009-70 Trust are the owners of the MEDELES Obligation, however, according to NEVADA State Law, multiple classes of the TRUST 2009-70 Trust can only be entitled to enforce the MEDELES Mortgage if multiple classes of the TRUST 2009-70 Trust were transferred ownership of the MEDELES Mortgage by way of assignments pursuant to

31.   MEDELES Mortgage by way of assignments pursuant to

Nev. Rev. Stat. § 107.080(2)(c) provides: The beneficiary, the successor in interest of the beneficiary or the trustee first executes and causes to be recorded in the office of the recorder of the county wherein the trust property, or some part thereof, is situated a notice of the breach and of the election to sell or cause to be sold the property to satisfy the obligation which, except as otherwise provided in this paragraph, includes a notarized affidavit of authority to exercise the power of sale stating, based on personal knowledge and under the penalty of perjury:

(1) The full name and business address of the trustee or the trustee's personal representative or assignee, the current holder of the note secured by the deed of trust, the current beneficiary of record and the servicers of the obligation or debt secured by the deed of trust;

*Page 12 of 24 - - Affidavit of Chad D. Elrod for* CHRISTOPHER MARTINEZ -- 6408 SEA SWALLOW STREET NORTH LAS VEGAS, NV 89084

(2) The full name and last known business address of every prior known beneficiary of the deed of trust;

(3) That the beneficiary under the deed of trust, the successor in interest of the beneficiary or the trustee is in actual or constructive possession of the note secured by the deed of trust;

(4) That the trustee has the authority to exercise the power of sale with respect to the property pursuant to the instruction of the beneficiary of record and the current holder of the note secured by the deed of trust;

(5) The amount in default, the principal amount of the obligation or debt secured by the deed of trust, a good faith estimate of all fees imposed and to be imposed because of the default and the costs and fees charged to the debtor in connection with the exercise of the power of sale; and

(6) The date, recordation number or other unique designation of the instrument that conveyed the interest of each beneficiary and a description of the instrument that conveyed the interest of each beneficiary.

The affidavit described in this paragraph is not required for the exercise of the trustee's power of sale with respect to any trust agreement which concerns a time share within a time share plan created pursuant to chapter 119A of NRS if the power of sale is being exercised for the initial beneficiary under the deed of trust or an affiliate of the initial beneficiary.

Nev. Rev. Stat. § 107.080(3) provides: The 15- or 35-day period provided in paragraph (a) of subsection 2, or the period provided in paragraph (b) of subsection 2, commences on the first day following the day upon which the notice of default and election to sell is recorded in the office of the county recorder of the county in which the property is located and a copy of the notice of default and election to sell is mailed by registered or certified mail, return receipt requested and with postage prepaid to the grantor or, to the person who holds the title of record on the date the notice of default and election to sell is recorded, and, if the property is operated as a facility licensed under chapter 449 of NRS, to the State Board of Health, at their respective addresses, if known, otherwise to the address of the trust property. The notice of default and election to sell must:

(a) Describe the deficiency in performance or payment and may contain a notice of intent to declare the entire unpaid balance due if acceleration is permitted by the obligation secured by the deed of trust, but acceleration must not occur if the deficiency in performance or payment is made good and any costs, fees and expenses incident to the preparation or recordation of the notice and incident to the making good of the deficiency in performance or payment are paid within the time specified in subsection 2; and

(b) If the property is a residential foreclosure, comply with the provisions of NRS 107.087.

32.   The MEDELES Mortgage/Deed of Trust must have been duly assigned to multiple classes of the TRUST 2009-70 Trust for multiple classes of the TRUST 2009-70 Trust to be entitled to enforce the MEDELES Mortgage.

33.   As explained previously in ¶5 thru ¶12 assignments of the MEDELES Mortgage must be accompanied by parallel endorsements of the MEDELES Note for the MEDELES Mortgage Loan to remain secured by the MEDELES Property. Because endorsements are very often undated and because a plaintiff must prove that it had standing at the inception of a case, *Leyva v. National Default Servicing Corp.*, 255 P.3d 1275, 1279 (Nev. 2011), the assignment will be  determinative of, or at least evidence that would support or contradict a plaintiff's claim of standing.

34.   Importantly, mere presentment of the MEDELES Note (even if shown to be the original) is not in itself proof of an equitable transfer of the MEDELES Note. This demonstration of possession may be sufficient to enforce the MEDELES Note, but carries no indicia of ownership or intent to transfer. The UCC consecrated a preference in commercial transactions for simple possession of indorsed instruments over proof of actual ownership, an exception in the law that was intended to foster free trade of commercial paper. 

35.   The concept that a Note holder, even one who is not legitimate, may nevertheless bring an action on the MEDELES Note is entrenched in commercial law and commonly summarized by the axiom "even a thief may enforce a note." However, the taking of the MEDELES Home by foreclosure is an equitable remedy and equity does not allow a "thief" to use a stolen MEDELES Note to foreclose through the MEDELES Mortgage lien or Deed of Trust. 

36.   For all three parts of the MEDELES Loan as a whole to have been transferred into the TRUST 2009-70 Trust there is a chain of entities through which the MEDELES Mortgage must be assigned and the MEDELES Note indorsed. This chain of transfer as required in the TRUST 2009-70 Trust PSA (Pooling and Servicing Agreement) is to have begun with a recorded assignment of the MEDELES Mortgage and an endorsement of the MEDELES Note from the Lender (USAA FEDERAL SAVINGS BANK) to the Sponsor (GINNIE MAE). Once the Sponsor (GINNIE MAE) had taken complete ownership, then a recorded assignment of the MEDELES Mortgage and an endorsement of the MEDELES Note from the Sponsor (GINNIE 

MAE) to the Depositor was to have occurred. After the Depositor had taken complete ownership, a recorded assignment of the MEDELES Mortgage and an endorsement of the MEDELES Note from the Depositor (to the Trustee (GOVERNMENT NATIONAL MORTGAGE ASSOCIATION) was next to have occurred. Finally, once the Trustee (GOVERNMENT NATIONAL MORTGAGE ASSOCIATION) had taken complete ownership, a recorded assignment of the MEDELES Mortgage and an endorsement of the MEDELES Note from the Trustee (GOVERNMENT NATIONAL MORTGAGE ASSOCIATION) to the TRUST 2009-70 Trust.

37.    Moreover, these assignments were to all to be recorded in the Official records of CLARK County Registry as per the PSA for the REMIC TRUST 2009-70 Trust. To explain further with a simple example, Party A must contract and assign to Party B, and Party B must contract and assign to Party C, and Party C must contract and assign to Party D and so on. So, a contract and an assignment from Party A to Party D is not allowable. Of course, all of these dealings must be recorded within the Official records of CLARK County Registry which date stamps each recording so as to prevent any "back dating."

38.    As explained previously, any electronic transfers of the MEDELES Mortgage that may have been executed without recording within the Official records of CLARK County Registry are void under Uniform Electronic Transactions Act (UETA) USC § 15-96-1-7003.

> USC § 15-96-1-7003
>
> (a) Excepted requirements
>
> The provisions of section 7001 of this title shall not apply to a contract or other record to the extent it is governed by—
>
> (3) the Uniform Commercial Code, as in effect in any State, other than sections 1-107 and 1-206 and Articles 2 and 2A

39.    The MEDELES Note specifically states that it is secured by a Mortgage, dated the same day, and the MEDELES Mortgage refers to the MEDELES Note, and incorporates the MEDELES Note into its terms and conditions.

40.    The written agreement that created the TRUST 2009-70 Trust is a PSA, dated and is a

matter of public record, available on the website of the Securities Exchange Commission. The
TRUST 2009-70 Trust is also described in a "Prospectus Supplement," also available on the SEC
website. The TRUST 2009-70 Trust by its terms set a "CLOSING DATE" of on or about
AUGUST 28, 2009. The MEDELES Note in this case did not become TRUST 2009-70 Trust
property in compliance with the requirement set forth in the PSA. The TRUST 2009-70 Trust
agreement is filed under oath with the Securities and Exchange Commission. The acquisition of
the assets of the TRUST 2009-70 Trust and PSA are governed under the laws of the New York.

41.    The PSA is the document that governs this trust. The TRUST 2009-70 Trust operates in
the state of New York, and New York law requires strict compliance and adherence to the
TRUST 2009-70 Trust documents. Any action by the TRUST 2009-70 Trust in contravention
to the TRUST 2009-70 PSA is void under New York Trust Law.

TRUST 2009-70 PSA substantially states:

This Agreement shall be construed in accordance with the laws of the State of
New York, and the obligations, rights and remedies of the parties hereunder
shall be determined in accordance with such laws (without regard to principles of
conflicts of law other than Section 5-1401 of the New York General Obligations
Law which shall govern). With respect to any claim arising out of this
Agreement, each party irrevocably submits to the exclusive jurisdiction of the
courts of the State of New York and the United States District Court located in the
Borough of Manhattan in The City of New York, and each party irrevocably
waives any objection which it may have at any time to the laying of venue of
any suit, action or proceeding arising out of or relating hereto brought in any
such courts, irrevocably waives any claim that any such suit, action or
proceeding brought in any such court has been brought in any
inconvenient forum and further irrevocably waives the right to object, with
respect to such claim, suit, action or proceeding brought in any such court, that
such court does not have jurisdiction over such party, provided that service of
process has been made by any lawful means.(emphasis added)

New York Trust Law Chapter 17- B 7 7-2.4 Act of trustee in contravention of trust
If the trust is expressed in the instrument creating the estate of the trustee, every
sale, conveyance or the act of the trustee in contravention of the trust,
except as authorized by this article and by any other provision of law, is void.

42.    Ownership or possession by the USAA FEDERAL SAVINGS BANK or its agents, of a
Note evidencing an Obligation sold to TRUST 2009-70 Trust is a violation of the PSA.
Additionally, if the MEDELES Mortgage was transferred to the TRUST 2009-70 Trust as

required by the PSA, then there is no way that USAA FEDERAL SAVINGS BANK or its Agents can claim any beneficial interest in the MEDELES Mortgage to assign.

43.    According to the PSA for the TRUST 2009-70 Trust, the transfer and sale of all Beneficial Interest of the MEDELES Mortgage to TRUST 2009-70 Trust should have been done on or before the closing date of the TRUST 2009-70 Trust, which was AUGUST 28, 2009. These requirements from the PSA also mean the TRUST 2009-70 Trust is unable to have any other assets put into the TRUST 2009-70 Trust after the closing date.

44.    The PSA for the TRUST 2009-70 Trust holds any conveyance of instrument into the TRUST 2009-70 Trust subject to the specific procedures explained above and in further paragraphs. Therefore, the conveyance of the MEDELES Note and Mortgage into the TRUST 2009-70 Trust, cannot be true unless compliance with the PSA specific procedures of conveyance is also proved to be true. The conveyance of the MEDELES Note and Mortgage into the TRUST 2009-70 Trust lacks proof of execution of these specific procedures. Then, as proof of PSA compliant conveyance of the MEDELES Note and Mortgage into the TRUST 2009-70 Trust is lacking, and cannot now be made to exist, TRUST 2009-70 Trust, cannot claim have taken the MEDELES Note and Mortgage as a secured instrument into its collateral pool.

45.    The MEDELES Mortgage contains notice to the Borrowers that the MEDELES Note or a partial interest in the MEDELES Note may be sold; however, a sale of a "partial interest" in the MEDELES Note strips ownership of the MEDELES Obligation from ownership of the MEDELES Note, leaving the MEDELES Note without an obligation to evidence and the MEDELES Mortgage without an obligation to hold conditions over.

The MEDELES Mortgage documents substantially state:

The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law...."

## The Document Purporting to be an "Assignment Name" is Invalid as an Assignment Name

Black's Law Dictionary defines the term valid as "having legal strength or force, executed with proper formalities, incapable of being rightfully overthrown or sent aside... Founded on trust of fact; capable of being justified; supported, or defended; not weak or defective... of binding force; legally sufficient or efficacious; authorized by law... as distinguished from that which exists or took place in fact or appearance, but has not the requisites to enable it to be recognized and enforced by law."(See Black's Law Dictionary, Sixth Edition, 1990, page 1550)

46.  There is a document purporting to be a "Assignment of Mortgage" dated AUGUST 28, 2009 and recorded JANUARY 11, 2011 CLARK County, NEVADA No. #2011-1111535 with an assignor MERS with an assignee GOVERNMENT NATIONAL MORTGAGE ASSOCIATION as Trustee for the TRUST 2009-70 Trust.

47.  First and most importantly the original lender, USAA FEDERAL SAVINGS BANK gave up all ownership of the MEDELES Obligation on or before JULY 28, 2009 to multiple classes of the TRUST 2009-70 Trust. Once USAA FEDERAL SAVINGS BANK had given up the ownership of the MEDELES Obligation; the ownership of the MEDELES Obligation was stripped away from the ownership of the MEDELES Note and the ownership of the MEDELES Mortgage. USAA FEDERAL SAVINGS BANK could transfer beneficial interest in the MEDELES Note or Mortgage; however, that beneficial interest would not include ownership of the MEDELES Obligation.

48.  The consequences of the ownership of the MEDELES Obligation being stripped away from the beneficial interests of the MEDELES Note and Mortgage means the MEDELES Note is without an Obligation to evidence and the MEDELES Mortgage is without an Obligation to enforce conditions against.

49.  USAA FEDERAL SAVINGS BANK can assign beneficial interest in the MEDELES Mortgage, albeit with no ownership of the MEDELES Obligation, to whomever they please. In order for this document purporting to be an "Assignment of Mortgage" to be valid as an actual assignment however, it would have to determine if a transfer could be made to the assignee. I will explain how transfer to the assignee named could not have been accomplished by this document

purporting to be an Assignment of Mortgage.

50.    The assignee named by the document purporting to be an "Assignment of Mortgage" is GOVERNMENT NATIONAL MORTGAGE ASSOCIATION as Trustee for the TRUST 2009-70 Trust. In order to exist the TRUST 2009-70 Trust agreed to operate under the TRUST 2009-70 PSA and all applicable Law. As previously explained in ¶35 in order to for the MEDELES Mortgage Loan to be transferred to the TRUST 2009-70 Trust a chain of negotiations needed to occur. A direct transfer from the original lender to the GOVERNMENT NATIONAL MORTGAGE ASSOCIATION violates the terms and conditions under the TRUST 2009-70 PSA, under New York Trust Law governing the TRUST 2009-70 Trust, and is void.

51.    Further this document purporting to be an "Assignment of Mortgage" is not timely to properly transfer the MEDELES Note and Mortgage to the TRUST 2009-70 Trust where is has been shown to be a performing asset.

52.    The closing date for the TRUST 2009-70 Trust was AUGUST 28, 2009. What this means is that the TRUST 2009-70 Trust is unable to have any other assets put into the TRUST 2009-70 Trust after that closing date.

53.    In view of the foregoing, all assignments executed after the TRUST 2009-70 Trust's closing date are void for the reason that all assignments into the Trust after AUGUST 28, 2009 violate the express terms of the TRUST 2009-70 Trust PSA. All assignments of Mortgages/Deeds of Trust and or endorsements of notes executed after the TRUST 2009-70 closing date are void.

54.    The Prospectus Supplement for the TRUST 2009-70 Trust provides that any attempted or purported transfer in violation of these transfer restrictions will be null and void and will vest no rights in any purported transferee. Any transferor or agent to whom the Trustee provides information as to any applicable tax imposed on such transferor or agent may be required to bear the cost of computing or providing such information.

55.    There are enormous tax consequences, if the document purporting to be an "Assignment Name" filed in the Official Records of CLARK County would be authentic, in that this trust has elected to be a REMIC Trust. According to the Prospectus, under the heading

"Federal Income Tax Consequences." Multiple classes of the TRUST 2009-70 Trust, that the MEDELES Obligation is owned by, elected to be treated as a REMIC, which provides for pass-through tax treatment of the income generated by the Trust assets.

56.    Internal Revenue Code Section 860 regulates the activities and requirements of a REMIC Trust like TRUST 2009-70:

> According to 26 CFR§ 1.860D-1(c) (2):

> Identification of assets. The formation of the REMIC does not occur until (i) The sponsor identifies the assets of the REMIC, such as through execution an indenture with respect to the asset; and (ii) The REMIC issues the regular and residual interests in the REMIC.

57.    In other words, the REMIC is not officially formed until the Credit-Based Asset Servicing and Securitization LLC, the seller/sponsor of the MBS Trust Name Trust identifies and transfers all the specific assets (the specific loans) of the REMIC.

58.    The PSA for the TRUST 2009-70 Trust specifically identifies a closing date which is the last day that an asset (loan) can be "identified for inclusion" in the Trust/REMIC. The closing date also serves as the Startup Day for the REMIC. According to Internal Revenue code Section, "All of a REMIC's loans must be acquired on the startup day of the REMIC or within three months thereafter".

> TRUST 2009-70 Prospectus:

## USAA FEDERAL SAVINGS BANK Has No Claim to Ownership of the MEDELES Note

59.    The MEDELES Note has been indorsed by USAA FEDERAL SAVINGS BANK the original lender. The endorsement states "Pay to the Order of without Recourse". This constitutes a negotiation under UCC Article 3 concerning negotiable instruments. Although no payee is yet named, clearly USAA FEDERAL SAVINGS BANK has released all interest in the MEDELES Note.

> UCC 7-501 Form of negotiation and requirements of due negotiation

(a) The following rules apply to a negotiable tangible document of title:

(1) if the document's original terms run to the order of a named person, the document is negotiated by the named person's endorsements and delivery. After the named person's endorsement in blank or to bearer, any person may negotiate the document by delivery alone; (emphasis added).

60.    USAA FEDERAL SAVINGS BANK transferred its ownership of the MEDELES Obligation to multiple classes of the TRUST 2009-70 Trust and transferred its ownership of the MEDELES Note. Ownership of the MEDELES Obligation was transferred to multiple classes of the TRUST 2009-70 Trust and ownership of the MEDELES Note traveled on without it.

## The Terms of the MEDELES Mortgage have been Violated and the MEDELES Mortgage is Unenforceable

61.    USAA FEDERAL SAVINGS BANK has released all interest in the MEDELES Note to an as yet unnamed payee. The MEDELES Mortgage as a contract can only enforce its contractual terms against the obligation evidenced by the MEDELES Note.

62.    NEVADA Law governs the MEDELES Mortgage. NEVADA Law and Federal Law require proper recordation of assignment to transfer ownership of the MEDELES Mortgage.

63.    It has been explained earlier, how it is not possible for ownership of the MEDELES Mortgage to have been assigned to GOVERNMENT NATIONAL MORTGAGE ASSOCIATION as Trustee for the REMIC TRUST 2009-70 Trust.

64.    There is an assignment of the MEDELES Mortgage recorded in the CLARK County Record, with MEDELES releasing ownership of the MEDELES Mortgage intending that transfer to be to GOVERNMENT NATIONAL MORTGAGE ASSOCIATION as Trustee for the TRUST 2009-70 Trust. However, USAA FEDERAL SAVINGS BANK released, through endorsement, ownership of the MEDELES Note, evidencing the obligation, to whoever wishes to fill in the payee line. GOVERNMENT NATIONAL MORTGAGE ASSOCIATION as Trustee for the TRUST 2009-70 Trust may attempt to claim ownership of the MEDELES Mortgage but that ownership would have nothing to enforce the MEDELES Mortgage contractual terms against. The MEDELES Mortgage is such an unenforceable contract.

65. Ownership of the MEDELES Mortgage is no longer with USAA FEDERAL SAVINGS BANK, yet no one else has any authority to enforce its terms, while the MEDELES Note is waiting for someone to claim ownership. The MEDELES Mortgage is an unenforceable contract, no longer being tied to an obligation to enforce its contractual terms over.

66. Under long existing contract law, if the terms of a contract are violated, affecting the conditions under which the Payor is obligated, without the properly evidenced consent of the Payor, that contract is void and cannot be returned to without the consent of the Payor. Even if ownership of the MEDELES Note and the MEDELES Mortgage, could be rejoined, the MEDELES Mortgage, as a now unenforceable contract, no longer being tied to an obligation to enforce its contractual terms over, cannot be returned to being an enforceable contract without the party's consent.

## Ownership of the MEDELES Obligation Can Not be Rejoined to Ownership of the MEDELES Note or the MEDELES Mortgage or Deed of Trust

67. Multiple classes of the TRUST 2009-70 Trust have ownership of the MEDELES Obligation. Multiple classes of the TRUST 2009-70 Trust have yet to all and each be named as payee on the MEDELES Note and do not now have ownership of the MEDELES Note. For multiple classes of the TRUST 2009-70 Trust to gain ownership of the MEDELES Note, multiple classes of the TRUST 2009-70 Trust would have to all and each be named payee.

68. TRUST 2009-70 Trust its classes, its officers and its agents are prohibited from accepting any assets on behalf of the Trust after AUGUST 28, 2009. The TRUST 2009-70 Trust, its classes, its officers its and agents can longer accept ownership of the MEDELES Note. Ownership of the MEDELES Note and ownership of the MEDELES Obligation will remain separate.

69. Because ownership of the MEDELES Note was separated from ownership of the MEDELES Obligation, and will remain separate the MEDELES Mortgage, is left with no way to enforce its conditions over the obligation which should be evidenced by the MEDELES Note, making the MEDELES Mortgage an unenforceable contract.

## With Ownership of the MEDELES Obligation Stripped Away and No Way to

## **Enforce the Conditions Under the MEDELES Mortgage the MEDELES Loan is a Nullity**

70. The ownership MEDELES Mortgage Lien was separated from the ownership of the MEDELES Note, leaving the MEDELES Note no Obligation to evidence and MEDELES Mortgage no Obligation to enforce conditions over.

71. The limited beneficial interest USAA FEDERAL SAVINGS BANK retained in the MEDELES Mortgage Loan after selling the MEDELES Obligation to multiple classes of the TRUST 2009-70 Trust as of AUGUST 28, 2009, does not include ownership of the MEDELES Obligation. No acceptable assignments of the limited beneficial interest in the MEDELES Mortgage to multiple classes of the TRUST 2009-70 Trust has been recorded into the CLARK County Recorder's Office, nor should there be, as such a lawful intangible assignment would fall under the governance of UCC 9. There is no evidence of the proper negotiations of the limited beneficial interest in the MEDELES Note to multiple classes of the TRUST 2009-70 Trust. With no properly recorded owner of the MEDELES Mortgage, with corroborating ownership of the MEDELES Obligation, there is no one to enforce the conditions that would have been over the Obligation that would have been evidenced by the MEDELES Note. The MEDELES Property no longer secures the MEDELES Obligation.

72. With no specific properly secured owner of the limited beneficial interest of the MEDELES Note there is no way to enforce the stripped away MEDELES Obligation through the MEDELES Note.

I, Chad D. Elrod, declare that nothing within this Affidavit should be construed as Legal Opinion or Legal Advice as it is not, nor is it intended to be.

I, Chad D. Elrod, declare, verify and state under penalty of perjury that the foregoing is true and correct.