# EXHIBIT 3

# EXHIBIT 3

# Servicer Guide

# GMAC RFC

**Version 2-07-G02**
**Effective November 1, 2007**

**© 2007 Residential Funding Company, LLC (GMAC-RFC)**
**All Rights Reserved.**

**GMAC-RFC**

# 2-07-G02

**Effective: November 1, 2007**

# Servicer Guideline

GMAC-RFC is pleased to announce the following updates to the Servicer Guide, which include information on enhancements and changes to GMAC-RFC's programs and policies. These constitute an amendment to the Servicer Guide effective November 1, 2007

The Servicer Guide PDF provides electronic search and print capabilities. The Servicer Guide may also be accessed online at **GMACResidentialFunding.com**, with an individual User ID and Password.

The major updates are summarized below; however, GMAC-RFC strongly encourages its Servicers and Subservicers to review the entire Servicer Guide thoroughly for the most efficient servicing of its portfolio.

## Chapter 1 - Introduction

- Removed Lender Operation Manual section

## Chapter 2 - Servicer Eligibility

- Incorporated Reg AB requirements from Bulletin 2-07-B01, starting in **Section 204**
- Clarified remittance requirements following transfer of servicing in **Section 213**

## Chapter 3 - Accounting

- Clarified reimbursement process for taxes and insurance in Advances to Escrow/Impound Account in **Section 315**

## Chapter 4 - Mortgage Loan Servicing

- Increased the length of repayment plans and the documentation required **Section 430** to **Section 436**
- Inserted a new section, Loss Mitigation Strategies, **Section 433**
- Inserted a new section, Monitoring Bankruptcy Attorney and Portfolio Performance, Section 438, **Section (E)**
- Updated notification requirements for foreclosure referral and first legal action events in **Section 439**
- Updated the reporting requirements that result from a foreclosure sale in **Section 440** to **Section 443**
- Moved corporate advance reimbursement requirements from Section 316 to Section 444 Reimbursements in **Section (A)**
- Updated address and changed legal name from Homecomings to GMAC Mortgage throughout

# Table of Contents

## Chapter 1, Introduction

100 GMAC-RFC Objective
101 Servicer Contractual Obligations
102 Single Contract
103 Notice
104 Legibility of Copies
105 Servicer ID Number
106 Hours of Operation and Holidays
107 GMAC-RFC Addresses
108 Customer Service
109 Servicer Guide
110 Servicer Guide Online
111 Organization
112 Updates and Amendments
113 Headings and Definitions
114 Form Numbering
115 Lender Operating Manual
116 Use of GMAC-RFC Name and Service Marks

## Chapter 2, Servicer Eligibility

200 Eligibility Standards
201 Client/Servicer Contract
202 Continuing Servicer Obligations
203 Audits and Inspections
204 Periodic Servicer Certifications and Regulation AB Disclosure
205 Maintenance of Standards
206 Disclosure of Information
207 Servicer Reporting, Information Security and Privacy
208 Representations and Warranties of Servicer
209 Specific Warranties
210 Proof of Compliance
211 Sale or Transfer of Servicing
212 Merger or Consolidation of Servicer
213 Notification of Change in Servicer Status
214 Servicing Agent
215 Events of Servicer Default
216 Remedies of GMAC-RFC
217 Conversion, Repurchase or Substitution
218 Termination of Servicing
219 Indemnification
220 Right of Set-Off

# Chapter 3, Accounting

300 General Requirements
301 Compensation
302 Individual Loan Accounting
303 Application of Loan Payments
304 Custodial Accounts for Principal and Interest Payments and Escrow/Impound Accounts
305 Monthly Reconciliation of Custodial Accounts
306 Accounting Cycle Cut-off Date
307 Scheduled Principal Balance
308 Reporting Method
309 Payoff/Liquidation File
310 Failure to Provide Timely Reports
311 Remittances
312 Required Monthly Remittances
313 Required Interim Remittances
314 Method to Transfer Remittances
315 Advances to Principal and Interest Custodial Account
316 Advances to Escrow/Impound Account
317 Failure to Comply with the GMAC-RFC Remittance Requirements
318 Adjustable Rate Mortgages (ARM)

# Chapter 4, Mortgage Loan Servicing

400 Release of Loan Documents
401 ARM Conversions
402 Maintenance of Loan File by Servicer
403 Minimum Contents of Loan File
404 Microfilmed Records
405 Individual Loan Servicing
406 Partial Release, Easements, and Eminent Domain
407 Partial Prepayments
408 Escrow/Impound Administration
409 Due-on-Sale and Assumptions
410 Loan Repurchase Restriction
411 Loans Paid in Full
412 Balloon/Re-set Mortgages
413 Insurance
414 Hazard Insurance
415 Flood Insurance
416 Mortgage Insurance
417 Condominium Insurance

418 PUD Insurance
419 Delinquencies
420 Application of Buydown Funds
421 Delinquency Servicing Requirements
422 Interview with Borrower; Property Inspection
423 Adverse Matters: Abandonment
424 Property Seizures
425 Notice of Liens, Vacancy, Waste, Etc.
426 Late Fees
427 Notifying Credit Bureaus
428 Borrower Relief Program Options
429 Temporary Indulgence
430 Repayment Plan
431 Special Forbearance Relief Agreement
432 Military Indulgence
433 Loss Mitigation Workouts
434 Deed-In-Lieu of Foreclosure
435 Write-Offs
436 Loan Modifications
437 Bankruptcies
438 Foreclosures
439 Institution of Foreclosure
440 Action During Foreclosure
441 Offer of Payment During Foreclosure
442 Foreclosure Sale Bidding Instructions
443 Foreclosure Statement of Expenses
444 Real Estate Owned (REO)
445 Required Documentation and Reporting
446 Rehabilitation
447 Mortgage Insurance Claims
448 Sales to Affiliated Persons
449 Remittance of Sale Proceeds and Penalties
450 Maintenance and Security
451 Closing Notification & Penalties
452 Reporting Requirements
453 Failure to Provide Timely Loan Service Reports
454 Multipurpose Loan Service Report
455 Document Services Form
456 Request for Loan Service Approval
457 Document Release Transmittal
458 Reporting to the Internal Revenue Service (IRS)

## Chapter 4A, Home Equity Lines/Loans and 125 Loan Servicing

400A General
401A Servicing Standards
402A Interim Servicing
403A Delivery of Servicing Data/New Loan Input
404A Welcome Package
405A Account Research
406A Returned Mail
407A Change in Loan Setup
408A Servicer Approval of Legal Documents
409A Insurance
410A Hazard Insurance
411A Flood Insurance
412A Loan Setup/Fees
413A Overlimit/Rate Reduction/Line Increases
414A Individual Loan Servicing
415A Notification
416A Delinquencies
417A Blocking an Account From Draw (Use)
418A Notification of Credit Bureau
419A Loss Mitigation
420A Foreclosures
421A Pre/Post Foreclosure Sale Procedures
422A General/Accounting Reports Sent to GMAC-RFC by Servicer
423A Senior Lienholder Mortgage Purchase/Payment Advances
424A REO Properties
425A Bankruptcies
426A Property Inspections
427A Accounting and Financial Reporting
428A Electronic Data Reporting
429A Minimum Reporting Requirements

## Chapter 4B, Home Improvement (Title I) Loan Servicing

400B General
401B Servicing Standards
402B Returned Mail
403B Second Mortgage Documents
404B Insurance
405B Hazard Insurance
406B Flood Insurance
407B Individual Loan Servicing
408B Subordination Requests
409B Partial Releases
410B Notification of Deceased Borrower

411B Loan Payoff Requests
412B Delinquencies
413B Collections
414B Property Inspection
415B Notification of Credit Bureau
416B Borrower Relief Program Options
417B Loss Mitigation Workouts
418B PreForeclosure Sale/Short Payoffs
419B Write-Offs
420B Deed-In-Lieu of Foreclosure
421B Assumptions
422B Modifications
423B Payment Plan/Extension
424B Bankruptcies
425B Foreclosures
426B Institution of Foreclosures
427B Pre- and Post-Foreclosure Sale Procedures
428B Senior Lienholder Mortgage Purchase Payment Advances
429B REO Properties
430B Minimum Reporting Requirements

# Chapter 4C, Sub-Prime Loan Servicing

400C General Guidelines
401C Servicer Eligibility
402C Servicing Standards
403C Sub-Prime Loans in Foreclosure
404C Loss Mitigation
405C Sub-Prime, Second Trust Deeds

# Chapter 5, Servicing Released

500 Servicing Released
501 Program Overview
502 Designated Servicer
503 Contractual Obligations
504 Program Eligibility
505 Disqualification or Suspension
506 Restrictions on Loan Eligibility
507 Record Maintenance
508 Final Documents
509 Disclosure of Information; Cooperation
510 Client Representations and Warranties; Events of Servicer Default Prior to Transfer
511 Specific Warranties and Covenants

512 Notification of Change in Servicer
513 Escrow Account for Postponed Improvements/Repairs
514 Interest on Escrows
515 Termination of Automatic Payment
516 Purchase of Servicing
517 Servicing Released Submission of Purchase
518 Required Servicing Documents
519 Sale Date and Effective Date of Servicing Transfer
520 Reconciliation by GMAC-RFC
521 Notification of Purchase
522 Monies Paid for Servicing Released
523 Monies Due Client
524 Monies Due Designated Servicer
525 Loans Paid in Full
526 Servicing Document Correction
527 Bulk Servicing Acquisitions
528 Subservicing Election

# Chapter 6, Definitions

# Chapter 7, Forms

7 List of Forms

# Chapter IX, Index

# 1

# Introduction

## 100

### GMAC-RFC Objective

GMAC-RFC, a national leader in providing innovative financial products and services to lenders and investors, upholds the objective of Partnering to Create Better Value for Homeowners by offering a continual and competitive source of mortgage financing to meet the needs of the residential mortgage market.

This Servicer Guide describes the GMAC-RFC standards for effective and efficient mortgage servicing for all product types including Jumbo A, Expanded Criteria, Credit Gap, AlterNet and Home Equity.

## 101

### Servicer Contractual Obligations

By signing the Client Contract, the Servicer is bound by all provisions of this Servicer Guide, including but not limited to the **Representations and Warranties of Servicer**, and **Remedies of GMAC-RFC** Sections.

## 102

### Single Contract

This Servicer Guide sets forth the terms and conditions upon which a Servicer will service mortgage Loans that have been sold to GMAC-RFC. A similar **Client Guide** covers Clients who contract with GMAC-RFC. GMAC-RFC maintains a single contractual relationship with each entity with which it does business as a Client, a Servicer or both.

Where GMAC-RFC contracts with an entity to be both a Client and a Servicer, it carefully evaluates all aspects of the proposed relationship before approving an entity as a Client/ Servicer. Failure of a Client/Servicer to perform obligations under either the Client Guide or this Servicer Guide constitutes a default under the Client/Servicer relationship, and permits GMAC-RFC to cancel such Client/Servicer as either a Client or a Servicer and permits GMAC-RFC to terminate its entire relationship with that entity.

## 103

### Notice

All required notices under this Servicer Guide shall be in writing. Notwithstanding anything to the contrary in the **Client** Contract, notice to the Servicer may be sent by United States mail, postage pre-paid, by overnight courier, fax, email, etc., to the appropriate address specified in the Client Contract, or the most recent address of the servicing site thereafter noted, or to any fax machine at that address. Notice to GMAC-RFC must be sent by first class United States mail, postage pre-paid, by overnight courier, by fax or by email to the appropriate address, fax number or email address specified in this Servicer Guide. Either the Servicer or GMAC-RFC may change the address, fax number, or email address to which notices must be sent by providing notice of such change to the other.

## 104

### Legibility of Copies

Any copies of documents that the Servicer is obligated to provide to GMAC-RFC pursuant to this Servicer Guide must be clear and legible. The Servicer will, at its own expense, provide additional copies of any such document requested by GMAC-RFC at any time.

## 105

### Servicer ID Number

Each Servicer approved to service Loans purchased by GMAC-RFC is assigned one or more identification numbers, which must be used on all correspondence and on all transmittals sent to GMAC-RFC pertaining to Loans sold to GMAC-RFC under **Commitment**s issued on or after February 1, 1986. These numbers are sometimes referred to as the Client/Servicer ID numbers.

## 106

### Hours of Operation and Holidays

GMAC-RFC normal business hours are 7 a.m. to 5 p.m., Pacific time, and 8:00 a.m. to 5:00 p.m., Central time.

The offices of GMAC-RFC are closed on the following observed holidays: New Year's Day, Martin Luther King, Jr. Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, the day after Thanksgiving and Christmas Day. Other events (natural disasters, snow storms, earthquakes, etc.) may also mandate office closing.

## 107

### GMAC-RFC Addresses

All regular correspondence and courier deliveries concerning servicing and accounting should be sent to the following address:

GMAC-RFC
2255 North Ontario Street
Suite 400
Burbank, CA 91504-3120

The main telephone number for GMAC-RFC in Burbank is 818.260.1400.

Certain documents related to paid-off, foreclosed or repurchased Loans are released by the Minneapolis office. Requests to execute documents for paid-off or repurchased Loans should be sent to the following address:

GMAC-RFC
One Meridian Crossings, Suite 100
Minneapolis, MN 55423
Attention: Enterprise Service Delivery Operations

All financial statements and related reports should be sent to the following address:

GMAC-RFC
Mail Code: 04-03-10
One Meridian Crossings, Suite 100
Minneapolis, MN 55423
Attention: Counterparty Credit Management

The main telephone number for GMAC-RFC in Minneapolis is 952.832.7000.

## 108

### Customer Service

**Meeting your needs is our top priority.**

We build strong relationships with you by listening, responding and planning for your success. We can help you expand and diversify your business because we learn about your business and the needs of your customers. We recently reorganized our structure around client segments to focus more efficiently on and serve specific industries, markets and clients. At GMAC-RFC, our Associates are committed to serving your needs—daily and into the future.

**Call Customer Service at 1.800.810.1144 or contact an Associate at:**

| | | |
|---|---|---|
| **Loan Accounting:** | Debbie Montgomery | 818.260.1442 |
| **Servicer Management:** | Lisa Bingham<br>Michelle Dale | 818.260.1412<br>818.260.1413 |
| **Claims Administration** | Lucie D'Agostino | 818.260.1418 |

## 109

### Servicer Guide

The following Sections describe the organization, format and use of this Servicer Guide.

## 110

### Servicer Guide Online

For Servicers' convenience this Guide is available on the Internet at **GMACResidentialFunding.com** with an individual User ID and password. All amendments or supplements will also be available online.

In the online version, blue text signifies a hyperlink. A hyperlink will jump you to another part of the guide, such as a definition, a Form or another Chapter or Section as it relates to the blue text.

## 111

### Organization

This Servicer Guide is divided into the following Chapters:

| | |
|---|---|
| Chapter 1 | **Introduction** |
| Chapter 2 | **Servicer Eligibility** |
| Chapter 3 | **Accounting** |
| Chapter 4 | **Mortgage Loan Servicing** |
| Chapter 4A | **Home Equity Lines/Loans and 125 Loan Servicing** |
| Chapter 4B | **Home Improvement (Title I) Loan Servicing** |
| Chapter 4C | **Sub-Prime Loan Servicing** |
| Chapter 5 | **Servicing Released** |
| Chapter 6 | **Definitions** |
| Chapter 7 | **Forms** |

Each of the seven Chapters is made up of Sections. Each Section in the Chapter is designated by a 3-digit number, the first number correlates to the Chapter.

For ease of reference, we have also incorporated:

- Table of Contents
- Index
- Guidelines
- Bulletins

## 112

### Updates and Amendments

This Servicer Guide may be amended or supplemented from time to time by the issuance of revised pages, the Guideline, or any other communication whether in written or electronic format. Any amendments or revisions will become effective on the date specified in the written communication.

GMAC-RFC reserves the right to modify certain requirements contained in this Servicer Guide as deemed necessary or prudent by GMAC-RFC, or in order to meet the obligations of GMAC-RFC or any **Affiliate** under any applicable pooling and servicing agreement (or other agreement relating to securitization or other type of sale of Loans purchased by GMAC-RFC) to which GMAC-RFC or any Affiliate is now a party or to which it may become a party in the future, without the Servicer's prior consent. Any such modification will be effective as of the date specified by GMAC-RFC.

## 113

### Headings and Definitions

Each Chapter and Section title in this Servicer Guide appears with initial capitalization. All terms listed in the Definitions Chapter of this Servicer Guide have the special meaning given to them and appear with initial capitalization throughout the text.

## 114

### Form Numbering

All GMAC-RFC forms are referenced as (GMAC-RFC Form #) in the text. The date of these forms will be changed with each published form revision. In all cases except GMAC-RFC Form 304, each Servicer Guide form number is four or five characters. The first digit of the form number in this Servicer Guide will always be the numeral "2". The next digit and or letter correlates to the Chapter. The last two digits are an identifier of the form, which are usually in succession within the Chapter. For example, the first form described in the Servicer Eligibility Chapter of this Guide is GMAC-RFC Form 2200.

Example:

- **2** = the Servicer Guide
  - **2** = the Chapter within the Servicer Guide
    - **00** = identifies the form, usually in succession in the Chapter

## 115

### Use of GMAC-RFC Name and Service Marks

The Servicer is not authorized to use the limited liability company name "Residential Funding Company, LLC", the trade name or initials "GMAC-RFC," or any of the service marks of GMAC-RFC in any of the Servicer's promotional or other materials without the prior written consent of GMAC-RFC. As consideration for granting consent, the Servicer agrees to indemnify GMAC-RFC from and hold it harmless against any loss, damage or expense, including those incurred in defending any action or proceeding, which results from its use of the limited liability company name, trade name or service marks.

At no time shall the Servicer advertise or represent in print, in verbal communications or otherwise, that it is acting on behalf, under the direction, as the agent or as the representative of, or otherwise through or for, GMAC-RFC.

# 2

# Servicer Eligibility

In order to become a GMAC-RFC Servicer, a mortgage Loan Servicer must:

- Satisfy GMAC-RFC Client/Servicer Eligibility Standards as outlined in this chapter
- Provide a completed GMAC-RFC Client/Servicer Application and have it approved by GMAC-RFC
- Provide the documentation requested in section "Application Exhibits" of the Client/Servicer Application
- Enter into the Client/Servicer Contract
- Deliver a duly adopted and certified Resolution of Board of Directors to GMAC-RFC

In order to remain eligible to service Loans under this Servicer Guide, the Servicer must be in compliance with all terms of the Client/Servicer Contract, including this Servicer Guide.

## 200

### Eligibility Standards

The GMAC-RFC Servicer Eligibility Standards are as follows:

**(A) A Servicer Should Be:**

- **Fannie Mae** and/or **Freddie Mac**-approved and in good standing, as evidenced by most recent Fannie Mae or Freddie Mac Servicing Audit results
- A member of **BIF** or **SAIF** under the **FDIC** or **NCUSIF** and in good standing if a financial institution
- In compliance with all capital and other requirements, as specified by the Office of Thrift Supervision, the Federal Deposit Insurance Corporation, or the Office of the Controller of the Currency, or any other **State** or federal regulatory agency that is applicable to the Servicer
- A **HUD**-approved mortgagee
- If servicing Loans registered with MERS, the Servicer must be a member of MERS, in good standing and current in payment of all fees and assessments imposed by MERS

**(B) Net Worth Requirements:**

A Servicer must maintain GAAP tangible net worth *requirements* (defined as GAAP total net worth minus any *intangible* assets). Contact your sales representative for current tangible net worth requirements.

Example:

| Audited Book Net Worth at: | $3,000,000 |
|---|---|
| Intangible Assets (from audited financial statements) | minus $250,000 |
| Tangible Net Worth | **$2,750,000** |
| Acceptable - exceeds $1,000,000 | |

**(C) Independent Auditor's Reports:**

- An independent auditor's unqualified opinion must have been rendered with respect to the Servicer’s most recent annual financial statements, unless GMAC-RFC, in the exercise of its sole and absolute discretion, decides to accept an auditor's opinion that is qualified, adverse or disclaimed
- An independent auditor's attestation to the Servicer’s most recent Report on Compliance to the Applicable Servicing Criteria under Item 1122 of Regulation AB, or independent auditor’s report of the Servicer’s compliance to the Uniform Single Attestation Program (USAP) of the Mortgage Bankers Association, must have no instances of material noncompliance or other significant exceptions
- If such instances have been indicated, the Servicer must, within an allotted time, provide satisfactory evidence that any operational deficiencies have been rectified and that adequate controls are in place to effectively monitor the Servicer’s compliance with the applicable criteria

**(D) Experience as Evidenced by:**

- Two years of conventional mortgage Loan originations
- $25 million in conventional mortgage Loan originations in the 12 months immediately preceding application
- $100 million in conventional mortgage Loan portfolio currently serviced
- Staff knowledgeable in originating, quality control, selling and servicing conventional mortgage Loans

### (E) Fidelity, Errors and Omissions Insurance

Fidelity, errors and omissions insurance, coverage against losses incurred by the Servicer or GMAC-RFC in compliance with the following requirements:

- Coverage Amount:

| Minimum Coverage Amount (per occurrence) | Total Servicing Portfolio (regardless of ownership) |
|---|---|
| $300,000 | $100 million or less |
| *plus* 0.150% of the next | $400 million |
| *plus* 0.125% of the next | $500 million |
| *plus* 0.100% of any amount over | $1 billion |

- Maximum deductible allowed is the higher of $100,000 or 5.0% of the minimum amount of insurance coverage required of the **Client**/Servicer by GMAC-RFC per loss or occurrence
- Carrier must be rated B/III, A/II or better in the current Best's Key Rating Guide

### (F) Delinquency Rates

**Delinquency** rates [including 30, 60, or 90+ day delinquencies, foreclosures and **Real Estate Owned (REO)**] for home or Second/Home Equity Loan mortgages should not be more than 50% higher than the average Delinquency rates with respect to 30, 60, or 90+ day delinquencies, foreclosures and REO for all home or Second/Home Equity Loan mortgages owned by GMAC-RFC in the same geographical area (Standard Metropolitan Statistical base, county, **State** or region) in which the **Mortgaged Premises** that secure the Loans sold or serviced by the **Client**/Servicer are located.

### (G) Written Policies and Procedures

Written policies and procedures for mortgage Loan origination, servicing activity, and an internal audit program (including quality control) are required to assure adherence to prudent standards.

### (H) Mortgage Insurance Claim Experience

Mortgage insurance claim experience must be acceptable to the pool insurer of GMAC-RFC.

## 201

## Client/Servicer Contract

Upon receipt of notice that its Client/Servicer Application has been approved by GMAC-RFC, the Servicer will enter into the Client/Servicer Contract, which incorporates by reference the provisions of this Servicer Guide and governs the terms by which the Servicer must service Loans for GMAC-RFC.

## 202

### Continuing Servicer Obligations

In order to remain an eligible Servicer, the Servicer must have been an active Servicer with GMAC-RFC in the preceding calendar year, maintain the initial eligibility standards or eligibility standards currently in effect, and comply with the continuing obligations as defined in this Section.

## 203

### Audits and Inspections

The Servicer agrees to allow GMAC-RFC to conduct, from time to time, audits or inspections at one or more offices of the Servicer during normal business hours. In the course of such audits or inspections, the Servicer will make available to GMAC-RFC the assistance of a knowledgeable and responsible individual and will grant GMAC-RFC access to all books, records and files pertaining to:

- Loans
- Servicer's compliance with the terms and provisions of the **Client**/Servicer Contract, including this Servicer Guide

The Servicer also agrees, upon the request of GMAC-RFC, to deliver to GMAC-RFC the material described in Minimum Contents of Loan File in Chapter 4, **Mortgage Loan Servicing**.

GMAC-RFC may, from time to time, conduct audits at GMAC-RFC offices using information/ documents provided by the Servicer. During these audits the Servicer will make available to GMAC-RFC a person or persons to contact by telephone for additional information.

## 204

## Regulation AB Certification

### (A) Reg AB Annual Packet

The following documentation shall be provided to GMAC-RFC in accordance with Items 1122 and 1123 of Reg AB. These reports must be in a standard format provided by the American Securitization Forum (ASF) and/or GMAC-RFC approved format.

The Servicer shall provide all of the above required documents for the reporting year no later than March 1 of the following year.

A Report on Assessment of Compliance with Servicing Criteria (Management's Assertion). This form must include the following disclosures:

(1) A statement of the Servicer's responsibility for assessing compliance with the applicable servicing criteria;

(2) A statement that the Servicer used the criteria in paragraph (d) of Item 1122 to assess compliance;

(3) A Servicer's assessment of compliance as of and for the period ending the end of the fiscal year;

(4) A statement that a registered public accounting firm has issued an attestation report on the Servicer's assessment of compliance with the applicable servicing criteria as of and for the period ending the end of the fiscal year;

(5) Any instance(s) of material noncompliance with the servicing criteria.

If a Servicer employs vendors to perform some of the servicing functions, and it determines that such vendors are not considered "servicers" as defined in Item 1101(j) of Regulation AB, it may elect to take responsibility for assessing such vendors' compliance with the applicable servicing criteria. The Servicer shall be solely responsible for determining if it meets the SEC requirements in asserting compliance for its vendors. Otherwise, the Servicer shall provide each vendor's own Management's Assertion on Compliance with Servicing Criteria and an Independent Auditor's Attestation.

**An independent public accounting firm's Attestation to the Management's Assertion**

An attestation report on the Servicer's assessment of compliance with the applicable servicing criteria for the reporting period. This report is issued by a registered public accounting firm.

### Servicer Compliance Statement (Item 1123)

A statement signed by an authorized officer of a Servicer, to the effect that:

(1) A review of the Servicer's activities during the reporting period and of its performance under the applicable servicing agreement has been made under such officer's supervision.

(2) To the best of such officer's knowledge, based on such review, the Servicer has fulfilled all of its obligations under the agreement in all material respects throughout the reporting period, or

(3) If there has been a failure to fulfill any such obligation in any material respect, specifying each such failure known to such officer.

The Servicer Compliance Statement **GMAC-RFC Form 2205** must reference the issuing entities under which the Servicer services Loans for GMAC-RFC. As the Servicer might not track the eventual securitizations in which the Loans serviced by the Servicer are placed, GMAC-RFC will provide a list of the applicable securitizations to the Servicer, to be included as an exhibit to the Servicer Compliance Statement.

### Annual Certification

This certification fulfills the Sarbanes-Oxley Act requirements and must conform to the ASF format.

### (B) Submission Format

All of the forms above must be provided in all three of the following formats:

(1) A signed original on company's letterhead

(2) An electronic copy of the signed document in Adobe Acrobat (pdf) format, also on company's letterhead

(3) A Microsoft Word or an acceptable EDGAR format with "/s/" conformed signature block

### (C) Management Readiness

Because Item 1122 requires that the servicing compliance is determined at a "platform" level rather than at a transaction-specific level, it is crucial that the Servicer establishes a process for the testing of the assets in applicable pools throughout the reportable period. To that end, GMAC-RFC will notify the Servicer when the pool concentration triggers Reg AB reporting requirements, along with a list of Loans to be included in the Servicer's test population.

GMAC-RFC may, at its sole discretion and upon prior written request from the Servicer no later than December 31 of the reporting year, accept the USAP report in lieu of the documents required by Item 1122 of Regulation AB. In such case, the Servicer shall provide the Management Assertion and an attestation from an independent accountant of the Servicer's compliance to the Uniform Single Attestation Program (USAP) of the Mortgage Bankers Association.

Failure to comply with any of the above provisions without GMAC-RFC's prior consent shall constitute an Event of Default and grounds for termination with cause, pursuant to the **Events of Servicer Default** and the **Grounds for Termination with Cause** sections in this chapter.

Upon GMAC-RFC's request, the Servicer shall disclose the name of its independent public accounting firm.

## 205

## Regulation AB Disclosures

At the time GMAC-RFC requests any Regulation AB Disclosures or information, it will provide to the Servicer the address to which all such disclosure or information should be delivered.

### (A) Servicer Disclosure

As requested by GMAC-RFC in its sole discretion within three **Business Day**s, the Servicer will provide to GMAC-RFC (a) disclosures required under Item 1108(b) of Regulation AB Disclosures document, or (b) a confirmation that previously provided disclosure does not require updating. "Servicer disclosure" required to be provided includes (A) the Servicer's form of organization, (B) how long the Servicer has been servicing assets, (C) a general discussion of the Servicer's experience in servicing assets of any type as well as a more detailed discussion of the Servicer's experience in, and procedures for the servicing function it will perform in a specific transaction for assets of the type included in that transaction, (D) information regarding the size, composition, and growth of the Servicer's portfolio of serviced assets of the type included in a specific transaction and information on factors related to the Servicer that may be material to an analysis of the servicing of the assets or the asset-backed securities, as applicable, (E) any material changes to the Servicer's policies or procedures in the servicing function it will perform in a specific transaction for assets of the same type included in that current transaction during the past three years and (F) information regarding the Servicer's financial condition to the extent that there is a material risk that the effect on one or more aspects of servicing resulting from such financial condition could have a material impact on pool performance or performance of any asset-backed securities.

### (B) Legal Proceedings Disclosure for Offering Documents and Periodic Report Updates

As requested by GMAC-RFC in its sole discretion, within three **Business Day**s of GMAC-RFC's request, the Servicer will provide to GMAC-RFC (a) a complete written description of any legal proceedings pending against the Servicer, or of which the Servicer's property is the subject, that, if adversely determined, could have a material adverse impact on the Servicer's financial condition or its ability to service mortgage Loans or perform any of its obligations under the applicable servicing agreement or this Guide (including any similar proceedings known by the Servicer to be contemplated by governmental authorities) for inclusion in a prospectus or other disclosure document pursuant to Regulation AB or any successor regulation (the "Legal Proceedings Description"), certified as to accuracy by an officer of the Servicer, or (b) a written certification of an officer of the Servicer stating that the previously provided Legal Proceedings Description does not require updating and continues to be complete and accurate as of such date.

### (C) Legal Proceedings Disclosure Updates

If at any time any previously provided Legal Proceedings Description is no longer current or requires updating, or if the **Client** is the subject of new legal proceedings that would require disclosure under Item 1117 of Regulation AB or any successor regulation, the Client shall within five **Business Day**s provide to GMAC-RFC a revised Legal Proceedings Description, certified as to accuracy by an officer of the Servicer.

### (D) Reportable Events

The Servicer is required to provide GMAC-RFC with disclosure of information pertinent to any of the events as below, no later than three **Business Day**s from the date of occurrence of such event:

- Any transfer of **Servicing Rights** of GMAC-RFC Loans without prior notification to and approval from GMAC-RFC
- Any change in control of the Servicer
- Legal proceedings disclosed by the Servicer in audited financial statements or 8-K filing, which may have a material adverse effect on the Servicer's ability to service Loans
- A downgrade of a Servicer's credit rating
- Receivership, bankruptcy or other insolvency of the Servicer
- A default of the Servicer pertinent to any securitization transaction
  - The Servicer must notify GMAC-RFC in writing, either via e-mail to **8Kreportingevent@gmacrfc.com** or via overnight mail delivery to:

    GMAC-RFC
    Servicer Management - Compliance
    2255 N Ontario Street
    Suite 400
    Burbank, CA 91504

### (E) Other Information Required under Regulation AB

The Servicer will provide to GMAC-RFC such other information, including historical Loan performance information, as GMAC-RFC shall reasonably request in order to enable GMAC-RFC to comply with any applicable requirements of Regulation AB or any successor regulation. Such information shall be provided within 15 days of a request from GMAC-RFC.

## 206

## Periodic Servicer Certifications and Disclosures

### (A) Mailing Address

For **Client**s and Servicers, all information required in this Section should be submitted to:

GMAC-RFC
One Meridian Crossings
Suite 100
Minneapolis, MN 55423
Attention: Risk Management
Fax: 952-979-2592

and

GMAC-RFC
2255 North Ontario Street
Suite 400
Burbank, CA 91504-3120
Attention: Compliance, Servicer Management
Telephone: 818-260-1400

**(B) Annual Requirements**

As requested by GMAC-RFC in its sole discretion, upon 30 **Business Day**s notice but in any event not later than March 1st, the Servicer must provide GMAC-RFC a completed and executed Servicer Back-up Certification **GMAC-RFC Form 2203D** with respect to the prior calendar year.

Within 90 days after the Servicer's fiscal year end, the Servicer must provide the following documents to GMAC-RFC:

(1) Annual financial statements that include:

- An independent auditor's opinion on the financial statements
- A copy of the Form 10-K, if the Servicer is required under applicable law to prepare an annual Form 10-K

(2) A completed and executed **Freddie Mac** Annual Eligibility Certification Report (Freddie Mac Form 16SF). If the Servicer is not required to submit a Freddie Mac Form 16SF, then the GMAC-RFC Annual Client/Servicer Certification **GMAC-RFC Form 2200** must be substituted.

**(C) Other Reporting Requirements**

(1) Interim Financial Statements

If requested by GMAC-RFC, the Servicer will provide its unaudited, quarterly financial statements and/or Form 10-Qs.

(2) Qualifications of Independent Auditor

If the Servicer uses an independent auditor other than a "Big 4" accounting firm, and if requested by GMAC-RFC, the Servicer will provide a resume of the accounting firm used that states the firm's history and qualifications.

(3) Fidelity and Errors and Omissions Insurance

- The Servicer must notify GMAC-RFC immediately upon receiving notice from its insurer that the insurer intends to cancel, not renew, or otherwise modify the Servicer's insurance coverage. In any event, GMAC-RFC must receive written notice by registered mail of any such changes at least ten days before such changes become effective
- The Servicer must report to GMAC-RFC all cases of material theft (including the theft of Borrower data), embezzlement or fraud and all claims made against the insurer, in each case within ten days after the occurrence thereof
- The Servicer must provide current certificates of insurance evidencing renewal of the Servicer's fidelity and errors and omissions coverage, no later than 30 days after term expiration

## 207

### Maintenance of Standards

The Servicer must maintain, at all times, updated written procedures which are satisfactory to GMAC-RFC for all servicing and accounting activities. The procedures must, at a minimum:

- Outline the Servicer's business philosophy
- Incorporate all requirements set forth in this Servicer Guide
- Adhere to generally-accepted prudent servicing and accounting standards where this Servicer Guide may not provide specific direction

A copy of these written procedures must be easily accessible by all relevant employees of the Servicer, as well as available to GMAC-RFC upon request.

The Servicer must also maintain an internal audit program, administered independently of the servicing and accounting areas, with which to ensure adherence to the requirements of:

- This Servicer Guide
- Any applicable **State** and federal regulations
- Any applicable **Mortgage Insurer** or guarantor requirements
- Generally-accepted prudent servicing and accounting standards

The Servicer must conduct, at least annually, an audit of all Loan servicing and accounting functional areas, copies of which must be made available to GMAC-RFC upon request.

## 208

### Disclosure of Information

#### (A) General Disclosure

The Servicer consents to the disclosure to GMAC-RFC and its employees by an insurer or other entity that provides insurance or other credit enhancements in connection with any sale or other disposition of the Loans by GMAC-RFC of any information or experience concerning the Servicer held by such insurer or other entity. This information may include, but is not limited to, information on losses, claims, **Delinquency**, and declination experience on mortgage Loans originated by the Servicer, as well as related information. The Servicer also consents to the disclosure by GMAC-RFC of any information held by GMAC-RFC concerning the Servicer to such insurers or entities and their employees. The Servicer releases and agrees to hold harmless GMAC-RFC, and any insurer or other entity which discloses information as provided above, from and against any claims or liabilities which might arise out of or in connection with such disclosure.

## 209

### Servicer Reporting, Information Security and Privacy

All reports and remittances from the Servicer must reference the Servicer's ID number, and should be consolidated and sent to GMAC-RFC from the Servicer's principal servicing site.

GMAC-RFC is committed to protecting the security and privacy of Borrower information. The Federal Trade Commission's (FTC) Rules (16CFR Part 313), Federal Statutes such as Gramm-Leach-Bliley, and **State** Statutes such as the California Notification Law all require certain practices regarding the handling, storage and transmission of confidential customer data. All Servicers are required to take the necessary steps to provide Security.

**(A) Email**

GMAC-RFC requires that any Borrower's private data be handled, stored and transmitted securely. GMAC-RFC utilizes such tools as the Secure File Transfer Web (FTW) technology, PGP secure e-mail solution, and dedicated transmission lines. For information regarding the use of these tools, contact your assigned GMAC-RFC representative.

**(B) Fax**

If you are sending a fax that contains Borrower confidential information, please call or e-mail the recipient to alert her/him that arrival of a fax containing Borrower confidential information is being transmitted.

## 210

### Representations and Warranties of Servicer

The Servicer acknowledges that GMAC-RFC relies upon the accuracy and truth of Servicer's Warranties and Representations and information provided by Servicer pursuant to Regulation AB or any successor regulation, and upon the Servicer's compliance with the agreements, requirements, terms and conditions set forth in the Client/Servicer Contract and this Servicer Guide, including the requirement to provide timely information in order to ensure compliance with Regulation AB or any successor regulation by GMAC-RFC. The Warranties and Representations of the Servicer survive the termination of the Client/Servicer Contract, and will not be affected by any investigation made by, or on behalf of, GMAC-RFC, except when expressly waived in writing by GMAC-RFC.

The Representations and Warranties contained in this Servicer Guide are made as of each date of the Servicer's delivery to GMAC-RFC of any oral or written report or remittance, unless the specific Representation or Warranty provides to the contrary. Making these Representations and Warranties does not release the Servicer from its obligations under the Representations and Warranties contained in other Sections of this Servicer Guide.

All such Warranties and Representations are absolute and the Servicer is fully liable for any misrepresentation or breach of Warranty and any failure to provide accurate or timely information under Regulation AB or any successor regulation, regardless of whether it or GMAC-RFC actually had, or reasonably could have been expected to obtain, knowledge of the facts giving rise to such misrepresentation, breach of Warranty or failure to provide accurate or timely information under Regulation AB or any successor regulation.

## 211

## Specific Warranties

The Servicer represents and warrants to GMAC-RFC as follows:

**(A) General**

Each report or remittance submitted by the Servicer to GMAC-RFC is complete, truthful and accurate.

**(B) Compliance with Contract**

The Servicer is in compliance with all of the applicable agreements, requirements, terms and conditions set forth in the Client/Servicer Contract and this Servicer Guide.

**(C) Compliance by Others**

When a person or entity performs any act for the Servicer that the Servicer is required to perform under this Servicer Guide, the Servicer warrants that such person or entity has complied with all requirements of this Servicer Guide.

**(D) No Defenses Against GMAC-RFC**

The Servicer has no judgment, court order, claim, counterclaim, defense, right of set-off or similar right against GMAC-RFC.

**(E) Client/Servicer Contract Warranties**

The Representations and Warranties made at the time of the Servicer's execution of the Client/Servicer Contract remain true, correct, and complete.

**(F) Compliance with Warranties**

The Servicer is in compliance with, and has taken all necessary action to ensure that it and each Loan is in compliance with, all representations and warranties contained in this Servicer Guide.

**(G) Compliance with Laws**

The Servicer has observed and complied with all applicable local, State and federal laws, regulations and orders, including without limitation Regulation AB and any successor regulation, in Servicing each Loan and has Serviced each Loan in strict conformity with the terms and conditions of the Note, the Security Instrument and each of the other Loan Documents relating to such Loan. Without limiting the generality of the foregoing, the Servicer warrants that any increase or decrease in the interest rate or in monthly payments under any Note, or the exercise of any conversion option under any Loan containing provisions for interest rate or monthly payment adjustments or provisions for conversion to a fixed rate of interest will be implemented by the Servicer in accordance with the terms of the Note and applicable law.

**(H) Licenses and Registrations**

The Servicer has obtained all licenses and effected all registrations required under all applicable local, State and federal laws, regulations and orders by virtue of any of the activities conducted, or property owned, by the Servicer.

**(I) MERS Compliance**

The **Client** must comply with the rules and procedures of MERS in connection with all Loans registered with MERS or as to which MERS is identified as the mortgagee on the **Security Instrument**. If the Servicer has been terminated, disqualified, suspended or threatened with termination, disqualification or suspension by MERS, the Servicer must demonstrate to GMAC-RFC's satisfaction that it has taken corrective action to remedy such termination, disqualification or suspension.

## 212

### Proof of Compliance

Upon the request of GMAC-RFC, the Servicer will supply satisfactory proof of its:

- Compliance with all Representations and Warranties contained in this Servicer Guide
- Compliance with any applicable requirements of Regulation AB or any successor regulation, and
- Due diligence to ensure such compliance

## 213

### Sale or Transfer of Servicing

The Servicer may not sell, transfer or pledge its GMAC-RFC servicing portfolio in whole or in part to any party other than GMAC-RFC without the prior written consent of GMAC-RFC in Burbank. GMAC-RFC will evaluate requests from the Servicer on an individual basis, and will consider the Servicer's request to transfer, sell or pledge its GMAC-RFC servicing portfolio only to another GMAC-RFC approved **Client**/Servicer in good standing. (GMAC-RFC reserves the right of first refusal to purchase the **Servicing Rights**.)

As a condition to granting approval for the transfer of servicing, GMAC-RFC requires that any outstanding obligations of the transferor to GMAC-RFC be fulfilled. This includes receipt of the completed Final Documentation **GMAC-RFC Form 2201** When the transfer of servicing is consented to in writing, the approval will state any other conditions of approval that will be required, which may include, with respect to Loans registered with MERS, evidence that the Servicer has confirmed the transfer of servicing to GMAC-RFC or its designee on MERS in accordance with the rules and procedures of MERS. GMAC-RFC, as a condition to its approval of any servicing transfer, will in all cases require the transferee to assume all of the transferor's servicing warranties and obligations and all of the **Client**'s warranties and obligations set forth in the **Client Guide** (including, without limitation, all repurchase obligations) relating to the Loans with respect to which the servicing is being transferred, and to enter into such written agreements with GMAC-RFC as GMAC-RFC may require to evidence such assumption of warranties and obligations.

Without limiting the generality of the foregoing, with respect to all transfers of servicing of convertible ARMs, the transferee (other than GMAC-RFC) shall assume the obligations of the **Client** of such transferred convertible ARM Loans to repurchase such convertible ARM Loans in accordance with the **Payoff/Liquidation File** section in Chapter 3 of this Servicer Guide and the Conversion, Repurchase or Substitution Section of the **Client Guide**.

GMAC-RFC has the right to withdraw and transfer servicing for cause from any purported transferee of servicing, including another Servicer, that has purported to assume a Servicer's servicing obligations without the prior written approval of GMAC-RFC. In addition, any such unauthorized transfer and assumption of servicing constitutes grounds for suspension or termination of both the transferor and transferee as **Client**/Servicers.

The request for the sale or transfer of servicing will be considered only upon receipt by GMAC-RFC of the transferor's written request and the receipt of all the required **Final Documents** by the **Client Guide** ***at least 45 days prior to the effective date of the requested transfer/sale***. GMAC-RFC may decline any request for a sale or transfer of servicing with or without cause. The request for sale or transfer of servicing must include, at a minimum, the following items:

- List of all Loans to be transferred identified by the GMAC-RFC Loan number and for Loans registered with MERS, identified by the **MIN**
- Name and the **Client**/Servicer identification number of the requested GMAC-RFC Client/Servicer to which the Loans are to be transferred
- Desired transfer date
- Disposition of any outstanding **Commitment**s

The sale or transfer of servicing must occur as of the close of business on the last **Business Day** of the month with the transferor completing its normal monthly remittance cycle, as outlined in the **Required Monthly Remittances** section in Chapter 3, Accounting of this Guide. The effective date of the servicing transfer for the transferee is the first **Business Day** after the end of the month in which the servicing transfer occurs. The transferor shall remit principal and interest custodial funds either through **ACH** draft or wire for the full scheduled amount to GMAC-RFC in the month following the transfer. Any payments received by the transferor after the effective date of the transfer shall be remitted directly to the transferee.

For each Loan registered with MERS, to which the Servicer intends to transfer servicing, the Servicer must prepare promptly all reports, notices and other documents required by MERS indicating the pending transfer of servicing (including, without limitation, the Pending Transfer of **Servicing Rights** Verification Report, the Sale of Servicing Rights Report, and the Physical Transfer of Servicing Verification Report, as applicable), and cause the transferee to confirm such transfer in accordance with MERS' rules and procedures. The Servicer must provide GMAC-RFC with evidence of the effective transfer of servicing with MERS.

It is the transferor's responsibility to obtain the transferee's execution of the Agreement for Transfer of Servicing **GMAC-RFC Form 2202** no later than ten Business Days prior to the effective date of the transfer. The transferor must forward the executed Agreement for Transfer of Servicing to GMAC-RFC no later than five Business Days prior to the effective date of the transfer. GMAC-RFC will send the transferor and transferee a fully executed copy of the Agreement for Transfer of Servicing after the effective date of transfer and after all terms and conditions of transfer have been met.

Any sale or transfer-of-servicing approval/request will be **subject to the payment of a non-refundable transfer fee of $500 to GMAC-RFC.** The transfer-of-servicing fee must be received with the transfer-of-servicing request, directed to GMAC-RFC's Servicer Management Department in Burbank. The transferor and the transferee must comply with information contained on the List of Transfer of Servicing Items **GMAC-RFC Form 2201**.

The transferor and the transferee, jointly and severally, fully indemnify and agree to hold GMAC-RFC, its successors and assigns, harmless from and against any and all losses, claims, demands, actions, suits, damages, costs, and expenses (including reasonable attorneys' fees) of every nature and character that may arise or be made against or be incurred by GMAC-RFC as a result of the transferor's or the transferee's failure to comply with applicable law relating to the transfer of servicing or failure to comply with the GMAC-RFC transfer of servicing requirements as set forth in this Servicer Guide, or failure to comply with the MERS rules and procedures relating to transfer of servicing with respect to Loans registered with MERS, which may be amended and supplemented from time to time, including, but not limited to, failure to provide the required notices, failure to make any payment to the appropriate parties for which escrow is collected, and failure to credit properly any payment received from the **Borrower**. The transferor and transferee must ensure that staff and facilities are adequately prepared to process servicing and accounting transactions and to respond to Borrower inquiries during the transfer transition period.

The transferor must provide timely notice to the Borrower and MERS, for Loans registered with MERS, in order to ensure a smooth transition, avoid disruption in Borrower payments, and comply with applicable laws and regulations and for Loans registered with MERS, the transfer must comply with MERS' rules and procedures. For Loans registered with MERS the Pending Transfer of **Servicing Rights** Verification Report, the Sale of Servicing Rights Report, and other reports, notices or other instruments as may from time to time be required by MERS, shall be provided to MERS. For Borrowers, such notice shall be given in writing and at a minimum must advise the Borrowers of the following:

- Effective date of transfer of servicing
- Name and address of the transferee
- Name and toll-free telephone number of the contact persons or departments of the transferor and of the transferee where the Borrowers' inquiries relating to the transfer should be directed
- Date when the Servicer will no longer collect the Borrowers' payments and when the transferee will begin to collect them
- Any previously escrowed charge (for example, optional mortgage life or accident and health insurance) for which the transferee may not assume responsibility, with appropriate suggestions or instructions as applicable

The notice must not amend the terms of the Loan Documentation other than those relating to where and to whom to send payments.

The transferor must obtain **Mortgage Insurer** approval of the transfer from each Mortgage Insurer that issued any policies covering any of the Loans for which the servicing is to be transferred, and each Mortgage Insurer must continue to provide coverage for the benefit of the transferee. This approval must be obtained before the transfer of servicing takes place in order to maintain the insurance coverage required by GMAC-RFC. If any Mortgage Insurer does not approve the transfer of servicing and will not continue to provide coverage for the benefit of the Servicer, the Servicer must obtain a written **Commitment** by another Mortgage Insurer acceptable to GMAC-RFC to provide the necessary coverage.

The transferor must also notify all other appropriate parties including, but not limited to, mortgage life and/or accident and health insurers, tax services, tax authorities, homeowners' associations, fee owners for household mortgages, hazard insurer, flood services, other lienholders and public utilities levying mandatory assessments for which escrow is collected.

No later than the effective date of the transfer of servicing, the transferor must deliver to the transferee the documents described in **GMAC-RFC Form 2201** with respect to each Loan for which servicing is to be transferred.

## 214

### Merger or Consolidation of Servicer

Any person or entity into which the Servicer may be merged or consolidated, or any corporation or other person or entity resulting from any merger, conversion or consolidation to which the Servicer shall be a party shall be the successor of the Servicer under the **Client**/Servicer Contract, without the execution or filing of any paper or any other act on the part of any of the parties to the Client/Service Contract. However, the successor of the Servicer shall satisfy the GMAC-RFC Client/Servicer eligibility standards, as described in the **Eligibility Standards** section in this chapter.

The successor to the Servicer shall become fully vested with all the rights, powers, duties, responsibilities, obligations and liabilities of the Servicer with the same effect as if originally named as a party to the Client/Servicer Contract.

## 215

### Notification of Change in Servicer Status

The Servicer is obligated to notify GMAC-RFC in writing of any change in the Servicer’s organization which affects the legal structure, name or continued eligibility of the Servicer. Such changes include mergers, consolidations, and other items as stated in the **Merger or Consolidation of Servicer** section in this chapter.

If the Servicer is merged with or acquired by another entity and remains a subsidiary, the written notice should clarify whether the Servicer will continue as a Servicer and whether there will be any changes involving the servicing of GMAC-RFC Loans.

Upon receipt of such written notification, GMAC-RFC will contact the Servicer if further documentation is required.

GMAC-RFC reserves the right to suspend further business with the Servicer while determining the impact of the change on the qualifications of the Servicer. Failure of the Servicer to notify GMAC-RFC of any such change may result in the suspension, disqualification, termination, or other remedies available under the **Client**/Servicer Contract.

## 216

### Servicing Agent

A Servicer may designate another GMAC-RFC approved Servicer as its Servicing Agent for all or part of Loans sold to GMAC-RFC, upon the prior written approval by GMAC-RFC of that Servicing Agent. The use of a Servicing Agent to perform any servicing function does not relieve the Servicer of its responsibilities under the **Client**/Servicer Contract. Including, without limitation, for Loans registered with MERS, the Pending Transfer of **Servicing Rights** Verification Report, the Sale of Servicing Rights Report and other reports, notices or other instruments as may from time to time be required by MERS, shall be provided to MERS evidencing the transfer of Servicing Rights in favor of the Servicer designated by GMAC-RFC. GMAC-RFC will look solely to the Servicer for compliance with all warranty requirements and servicing requirements. The Servicer assumes full responsibility for all actions of its Servicing Agent, and hereby agrees to indemnify GMAC-RFC for any loss, damage or expenses, including court costs and reasonable attorney's fees, incurred by GMAC-RFC due to the Servicing Agent's bankruptcy, insolvency, misconduct, or failure to comply with any requirement of the Client/Servicer Contract.

When requesting approval of a Servicing Agent, the Servicer must submit two original executed Servicing Agent Certification forms **GMAC-RFC Form 2203** to GMAC-RFC at:

GMAC-RFC
2255 North Ontario Street
Suite 400
Burbank, CA 91504-3120
Attention: Compliance

If a **Client** is not an approved Servicer, and wishes to retain **Servicing Rights** on its Loans sold to GMAC-RFC, it may request approval as a Servicing Agent to fulfill its servicing obligations, by submitting two original executed Servicing Agent Certifications for Client and Servicing Agent **GMAC-RFC Forms 2203C** to the above address.

Under no circumstances may the Client or Servicer allow the Servicing Agent to begin servicing any Loan until the Servicing Agent Certification has been approved by GMAC-RFC.

#### (A) Servicing Agent Certification

For purposes of this Section, a wholly-owned subsidiary of the Servicer is NOT considered to be a Servicing Agent. Rather, a wholly-owned subsidiary is considered to be part of the Servicer's organization, and is authorized to service Loans for the Servicer without the need to submit the Servicing Agent Certification to GMAC-RFC for approval, with the understanding, expressed above, that the Servicer is fully responsible for the actions of the subsidiary. At any time should the subsidiary cease to be a wholly-owned subsidiary of the Servicer, the Servicer must give prior written notice of that fact to GMAC-RFC, so that GMAC-RFC can determine if approval as a Servicing Agent is required.

The **Client**/Servicer must review its Servicing Agent's procedures and methods of operation for compliance with requirements and standards of GMAC-RFC. The Client/Servicer must determine that its Servicing Agent has demonstrated servicing ability by having acceptably serviced an existing portfolio of mortgage Loans for a reasonable period of time. Also, the Client/Servicer is required, on an annual basis, to conduct a review audit of the Servicing Agent's Loan servicing department to ensure that the Servicing Agent is servicing the GMAC-RFC portfolio in accordance with the requirements of GMAC-RFC. Any exception noted, as a result of the audit, must be documented and followed up in writing with the Servicing Agent, including any action plan to resolve the exception. The Client/Servicer is required to maintain copies of these audits and furnish them to GMAC-RFC upon request.

The Client/Servicer authorizes the Servicing Agent to use the Servicer's GMAC-RFC **Client**/ Servicer ID number for all reporting and remittance requirements. GMAC-RFC reserves the right to disallow use of, or rescind authorization of, any Servicing Agent that it has determined in the exercise of its sole discretion, does not service Loans according to the GMAC-RFC requirements.

**(B) Terms of Servicing Agent**

If GMAC-RFC shall suspend or disqualify the Servicer as an approved GMAC-RFC Servicer, or shall terminate servicing with respect to the Servicer, then, notwithstanding any provision in any contract entered into by and between the Servicer and an approved Servicing Agent with respect to the servicing of Loans for GMAC-RFC, the Servicer's and its Servicing Agent's right to service Loans shall terminate immediately and any such contract shall, without notice or other action, immediately terminate and be of no further force and effect. Immediately following any such action the Servicing Agent at its own expense shall execute and transfer all such documents and perform all such acts as GMAC-RFC, in its sole discretion, may request as being necessary or advisable to facilitate the transfer of servicing to another Servicer designated by GMAC-RFC. In such event, GMAC-RFC, in its sole discretion, may contract separately with the Servicing Agent for the servicing of the Loans which the Servicer was previously responsible for servicing, and the Servicing Agent will assume the obligation to service such Loans in accordance with the terms of the **Client**/Servicer Contract.

Notwithstanding any provision to the contrary in any contract between the Servicer and an approved Servicing Agent, in the event of the suspension or disqualification of the Servicing Agent as a GMAC-RFC Servicer, then any such contract shall, without notice, demand, or other action, immediately terminate and be of no further force and effect. Immediately following any such suspension or disqualification, the Servicer and the Servicing Agent (as may be appropriate) at their own expense, shall execute and transfer all such documents and perform all such acts as GMAC-RFC may deem necessary or advisable to facilitate the transfer of servicing of the Loans back to the Servicer including, without limitation, for Loans registered with MERS the Pending Transfer of **Servicing Rights** Verification Report, the Sale of Servicing Rights Report, and other reports, notices or other instruments as may from time to time be required by MERS, shall be provided to MERS evidencing the transfer of Servicing Rights back to the Servicer.

## 217

### Events of Servicer Default

Any one or more of the following events constitute an Event of Servicer Default:

- The Servicer has not complied with any one or more of the requirements (including, but not limited to, any of the requirements set forth in the **Eligibility Standards** Section of this Servicer Guide), terms or conditions set forth or incorporated by reference in this Servicer Guide
- The Servicer has breached any agreement set forth or incorporated by reference in the **Client**/Servicer Contract
- The Servicer has made one or more false or misleading Representations or Warranties to GMAC-RFC
- The Servicer has failed to provide to GMAC-RFC accurate or timely information required by Regulation AB or any successor regulation, or any such information including any material misstatements or omissions
- For Loans sold to GMAC-RFC subject to **Commitment**s issued by GMAC-RFC prior to February 1, 1986, the Servicer has breached any one or more of the requirements, terms or conditions contained in the Lender Operating Manual or the agreement(s) into which it is incorporated by reference
- For Loans sold to GMAC-RFC, the Servicer has effected an extension and/or modification of the terms of the Loan, without obtaining prior approval from GMAC-RFC
- The Servicer has not pursued collection efforts/procedures in conformance with this Servicer Guide which has resulted in additional losses to GMAC-RFC or its investors. The performance of Sub-Servicers are the responsibility of the Servicer

## 218

### Remedies of GMAC-RFC

**(A) Non-exclusive, Cumulative Remedies**

GMAC-RFC may exercise any of the remedies set forth in this Servicer Guide. Its exercise of one or more remedies in connection with a particular Event of Servicer Default does not prevent GMAC-RFC from exercising:

- One or more other remedies in connection with the same Event of Servicer Default
- Any other rights that it may have at law or in equity that GMAC-RFC deems appropriate to protect its interest

**(B) No Waiver of Remedies**

The failure of GMAC-RFC to exercise any of its remedies does not constitute a waiver of that remedy in the future as to the same or any other Event of Servicer Default.

## 219

## Conversion, Repurchase or Substitution

### (A) Repurchase as a Result of Conversion

The **Client**, or if the Client has transferred servicing of the Loans, then the Servicer, is required to repurchase a Loan which has converted from an adjustable rate (ARM) to a fixed rate. The Servicer must submit the Document Services Form **GMAC-RFC Form 2204** to the GMAC-RFC Enterprise Service Delivery Operations in Minneapolis, Minnesota no fewer than 15 calendar days prior to the date the Loan converts from an ARM to a fixed rate. The Enterprise Service Delivery Operations will begin retrieval of the **Loan Documents** upon notification with the Document Services Form.

In the event the Client or Servicer repurchases a converted Loan in accordance with the immediately preceding paragraph and subsequently resells that converted Loan to GMAC-RFC, all of the Client's representations and warranties with respect to that Loan shall survive such repurchase and resale and the Client and Servicer shall be subject to all rights and remedies (including, without limitation, repurchase) available to GMAC-RFC as a result of any misrepresentation or breach of warranty with respect to that Loan prior to conversion.

If the modification or conversion agreement requires execution by GMAC-RFC or its designee, the Document Services Form **GMAC-RFC Form 2204** must be used and submitted with the documents to the Enterprise Service Delivery Operations.

The Minneapolis office of GMAC-RFC will **automatically** release **Loan Documents** to the Servicer, once they have been received from GMAC-RFC's document custodian and after all funds have been received by GMAC-RFC. More specifically, after receipt of the Loan funds, GMAC-RFC will endorse the Note to the order of the party that repurchased the Loan, and the **Security Instrument** will be assigned to such party. Failure to submit the Document Services Form at least 15 calendar days prior to the conversion date may result in delays in the receipt of the endorsed Note and other Loan Documents.

The Servicer shall submit a Payoff/Liquidation Report **GMAC-RFC Form 2308** and wire transfer Loan funds to GMAC-RFC's Accounting Department in Burbank, no later than the last **Business Day** prior to the conversion date. The Servicer must remit interest for the entire month preceding the conversion date. If the appropriate amount is not wired by the last Business Day prior to the conversion date, a penalty will be due GMAC-RFC. Such penalty shall be equal to the amount due multiplied by 3% in excess of the ``Prime Rate'' multiplied by a fraction, the numerator of which is the days the amount is overdue and the denominator of which is 365. The term "Prime Rate" shall mean the highest quoted prime rate printed in *The Wall Street Journal* in its regular column "Money Rates" on the first Business Day of the month in which the payment was due and not paid; if the Prime Rate is not available, the Prime Rate will be the rate determined by GMAC-RFC.

### (B) Repurchase or Substitution

Under the circumstances described in the Conversion, Repurchase or Substitution Section of the **Client Guide**, a **Client** may be required by GMAC-RFC to repurchase a Loan or to substitute another Loan satisfactory to GMAC-RFC. If a Loan being serviced by the Servicer is repurchased by a Client, GMAC-RFC may terminate servicing of the Loan by the Servicer as of the date of repurchase without cost or penalty to GMAC-RFC. If a Loan being serviced by the Servicer is replaced by a substitute Loan, the Servicer will service the substitute Loan, without any cost or penalty to GMAC-RFC for the substitution.

## 220

### Termination of Servicing

GMAC-RFC, in its sole discretion, may terminate servicing by the Servicer with or without cause.

**(A) Grounds for Termination with Cause**

GMAC-RFC may immediately terminate servicing by the Servicer (in compliance with statutory requirements as applicable) without compensation to the Servicer for any of the following reasons:

- Impending or actual insolvency of the Servicer
- The filing of a voluntary petition by the Servicer under the federal bankruptcy laws or under any **State** bankruptcy or insolvency laws
- The filing of an answer by the Servicer in an involuntary proceeding admitting insolvency or inability to pay debts
- The entry of an order for relief with respect to the Servicer under the federal bankruptcy laws
- The appointment of a trustee or receiver for the Servicer or its property
- The execution by the Servicer of an assignment for the benefit of creditors
- The failure of the Servicer to obtain a relief of stay of involuntary proceedings brought for its reorganization, dissolution or liquidation
- Any other change in the financial or organizational status of the Servicer that, in the opinion of GMAC-RFC, could adversely affect GMAC-RFC
- The placement of the Servicer on probation or restriction of its activities in any manner (i) by a federal or **State** government agency, including **Freddie Mac**, **Fannie Mae** or **HUD**, or (ii) by MERS or (iii) by a rating agency or bond insurer used by GMAC-RFC
- The determination by GMAC-RFC that the Servicer's warranty obligations are disproportionate to its capital and/or assets
- The Servicer's failure to deliver in a timely and accurate manner any reports, documents or remittances required to be delivered or returned under this Servicer Guide, including documentation required under Regulation AB or any successor regulation
- The Servicer's failure to observe or comply with any term or provision of the **Client**/ Servicer Contract

- The Servicer's misstatement of any material fact on any application, certification or other document submitted to GMAC-RFC
- The Servicer's assignment or attempt to assign its interests, rights or obligations under the Client/Servicer Contract without the written consent of GMAC-RFC
- The occurrence of an Event of Servicer Default
- The Servicer's failure to honor any obligation it has under its Client/Servicer Contract to repurchase a Loan within the time period specified in the Client Guide
- The Servicer's failure, as determined by GMAC-RFC in the exercise of its sole discretion, to maintain qualified and sufficient servicing staff and/or adequate facilities to assure (i) the investment quality of the Loans sold to GMAC-RFC or (ii) the adequacy of the servicing of Loans purchased by GMAC-RFC
- The Servicer's failure, after 60 days written notice and right to cure, to achieve collection standards and loss mitigation accomplishments/expectations as detailed to the Servicer throughout this Guide and in such written notice
- Suspension, disqualification, or inactivation of the Servicer as a Client pursuant to the Client Guide
- The occurrence of any breach of consumer data integrity or security, including theft, where the Servicer has failed to act appropriately and timely, as determined by GMAC-RFC in the exercise of its sole discretion, including notification to GMAC-RFC as provided for in the Fidelity, Errors and Omissions Insurance Section of this Chapter

Before notice of disqualification, suspension, or termination GMAC-RFC may, at its discretion, issue a warning to a Servicer that it has violated, is violating, or is about to violate any of the provisions of this Servicer Guide, and that unless corrective action is taken within a specified time period, disqualification, suspension, or termination may result. This warning may be given by GMAC-RFC as part of an audit report or as a result of any other review or investigation of the Servicer by GMAC-RFC.

**(B) Merger of Actions**

An action to suspend, disqualify, or inactivate under the Client Guide may be merged with an action to terminate servicing.

**(C) Termination without Cause**

GMAC-RFC may terminate, without cause, the Servicer's right to service all or part of the Loans upon 90 days written notice. In this event and subject to the last paragraph of this Section, GMAC-RFC will pay the Servicer a termination fee equal to the market Value of the Servicing portfolio being transferred as of the date the servicing is actually transferred. GMAC-RFC shall determine the market Value of the servicing and if there is a dispute concerning Value, GMAC-RFC shall obtain the opinion of such Value from a recognized third party appraiser of residential mortgage servicing. Any dispute concerning the market Value shall not delay the transfer of the servicing.

The Servicer must complete all outstanding repurchases and fulfill any other outstanding obligations of the Servicer to GMAC-RFC and for Loans registered with MERS, prepare, execute and deliver such notices, documents and other instruments required to effect a transfer of servicing in accordance with the MERS' rules and procedures, before GMAC-RFC will pay the termination fee. If the Servicer fails to do so, GMAC-RFC will offset the sum of said repurchases and any other outstanding obligations of the Servicer against the termination fee.

The Servicer will not be entitled to any additional compensation from GMAC-RFC for any reason or cause relating to any consequential, incidental or indirect damages arising out of, or in connection with, the termination of servicing. The payment of the aforementioned termination fee constitutes the entire compensation payable in consideration of the termination of servicing.

In addition, GMAC-RFC may terminate, without cause and without compensation of any kind, the Servicer's right to service any Loan with respect to which any portion of a principal and/ or interest payment is 90 or more days past due. GMAC-RFC will notify the Servicer of its intention to terminate servicing after each such Loan is at least 60 days past due. Such termination will be effective not less than 30 days after such notice is given.

**(D) Duties upon Termination**

From the effective date of termination of servicing and thereafter, the Servicer will be relieved of further responsibility in connection with servicing the Loans. The Servicer will not be relieved, however, of liability for all amounts due or responsibilities owed GMAC-RFC while it serviced the Loans. Upon termination, the Servicer will:

- Pay to GMAC-RFC all monies collected and held by it as Servicer under the terms and conditions of this Servicer Guide or pursuant to any other arrangement relating to the Loans
- Deliver to GMAC-RFC a full accounting, including a statement showing the monthly payments collected, and a statement of monies held in trust for the payment of taxes, insurance premiums, private mortgage insurance premiums or other charges with respect to the Loans
- Transfer the servicing in an orderly and efficient manner, and for Loans registered with MERS, in accordance with MERS' rules and procedures, to GMAC-RFC, or to a new Servicer selected by GMAC-RFC

**(E) Reimbursement**

If servicing is terminated with cause GMAC-RFC is entitled to reimbursement from the Servicer for any loss, damage, or expense incident to the transfer of servicing. Such expenses include, but are not limited to, court costs, reasonable attorney's fees, copy costs, costs of the physical transfer of files, and the cost of an audit or examination of the Servicer's records, if GMAC-RFC determines that such a procedure is appropriate.

## 221

### Indemnification

The Servicer indemnifies GMAC-RFC from and holds it harmless against all losses, damages, penalties, fines, forfeitures, court costs and reasonable attorneys' fees and expenses (collectively, the losses) heretofore or hereafter resulting from any Event of Servicer Default, including but not limited to any act or failure to act or any breach of any warranty or representation or obligation contained in or made pursuant to the **Client**/Servicer Contract and any untrue statement of a material fact, omission to state a material fact, or false or misleading information provided by the Servicer in information required under Regulation AB or any successor regulation, and from any claim, demand, defense, or assertion against or involving GMAC-RFC based on or grounded upon, or resulting from such breach or a breach of any representation, warranty, or obligation made by GMAC-RFC in reliance upon any warranty, obligation or representation made by the Servicer contained in or made pursuant to the Client/Servicer Contract. The Servicer shall indemnify GMAC-RFC and hold it harmless against all court costs, attorneys' fees, and any other costs, fees and expenses incurred by GMAC-RFC in enforcing the Client/Servicer Contract.

The Servicer must immediately notify GMAC-RFC of any claim asserted against the Servicer or GMAC-RFC. Upon notice from GMAC-RFC, the Servicer will also defend GMAC-RFC at the Servicer's expense, by counsel approved by GMAC-RFC, from any claim referred to in this Section.

If there shall occur an Event of Servicer Default, GMAC-RFC may require the Servicer to reimburse GMAC-RFC for any losses, as subsequently determined by GMAC-RFC in its sole and absolute discretion, at the time the property securing the Loan becomes REO. The Servicer will be held accountable in the form of a cash adjustment based on time delays caused by the Servicer in not following time lines for collection activities detailed in the Servicer Guide. The cash adjustment will be equal to the **Per Diem** interest on the specific Loan times the number of days the delay caused. The Servicer may net such unpaid losses, as subsequently determined by GMAC-RFC in its sole and absolute discretion, against the advances made by the Servicer for which the Servicer seeks reimbursement as provided in the **Foreclosure Statement of Expenses** section in chapter 4 of this Servicer Guide. The Servicer must remit to GMAC-RFC interest at the authorized net rate plus 3% per year on such unpaid losses from the actual foreclosure sale date until paid. If such losses plus interest exceed the advances to be reimbursed to the Servicer, the Servicer must submit to GMAC-RFC with such Statement of Foreclosure Expenses **GMAC-RFC Form 2409** a check in the amount of the deficiency.

The obligations of the Servicer under this Section will survive the **Delivery Date**, the funding date, the termination of the **Client**/Servicer Contract, and the disqualification or suspension of the Servicer.

## 222

### Right of Set-Off

Upon the occurrence of any Event of Servicer Default, GMAC-RFC may, and is hereby authorized by the Servicer, at any time and from time to time, to the fullest extent permitted by applicable laws, without prior notice to the Servicer (any right to receive any such notice being hereby expressly waived by the Servicer), set-off and apply all or any portion of the purchase price owed by GMAC-RFC to the Servicer with respect to any Loan sold to GMAC-RFC by the Servicer, any principal, interest or other advances that were made by the Servicer with respect to any Loans serviced by the Servicer on behalf of GMAC-RFC that are reimbursable under this Servicer Guide, and any other indebtedness at any time owing by GMAC-RFC to the Servicer against any or all outstanding repurchase, indemnification or other obligations of any kind owing by the Servicer to GMAC-RFC irrespective of whether GMAC-RFC shall have exercised any other rights that it has or may have with respect to such outstanding obligations. GMAC-RFC agrees to notify the Servicer promptly after any such set-off and application, provided that the failure by GMAC-RFC to give such notice to the Servicer shall not affect the validity of such set-off and application. The rights of GMAC-RFC under this Right of Set-Off section are in addition to any other rights and remedies (including, without limitation, other rights of set-off) that GMAC-RFC may have.

# 3

# Accounting

GMAC-RFC requires the Servicer to submit certain reports as set forth in this Section. All Loan Accounting/Investor reporting must be sent to:

GMAC-RFC
2255 North Ontario Street
Suite 400
Burbank, CA 91504-3120
Attention: Loan Accounting Department

## 300

## General Requirements

The Servicer must account for all Loans sold to GMAC-RFC in accordance with the requirements of a particular **Loan Program**, or if special requirements are not defined, then in accordance with industry standards, including the following:

- Accurate and timely accounting, reporting and remittance of the principal and interest portions of monthly installment payments to GMAC-RFC as well as any other sums paid by the **Borrower** that GMAC-RFC may require to be remitted
- Accurate and timely accounting or administration of **Escrow/Impound** accounts, if applicable
- Accurate and timely reporting of negative amortization, if any

The Servicer must use an individual Loan accounting system that can provide, at a minimum, the information required by GMAC-RFC to be reported by the Servicer as specified in this Servicer Guide. The Servicer may use additional entities, such as a computer service bureau, to perform some of its accounting functions. The Servicer, however, remains responsible for the satisfactory performance of its duties as specified in this Servicer Guide and in the **Client**/Servicer Contract.

## 301

### Compensation

The Servicer's compensation for performance of its duties is based on the unpaid principal balance and the service fee, determined using the formula shown below. The Servicer's compensation is earned with respect to each Loan when the interest thereon is collected from the **Borrower**.

**Initial Interest**

For all Loans, the initial service fee is determined from the information contained on the Loans to be funded confirmation report sent by GMAC-RFC, using the following formula:

Note/initial interest rate — accrual yield = service fee

*(where accrual yield is the net rate due to GMAC-RFC)*

In consideration for the servicing fee, a Servicer is responsible for the performance of all of its servicing obligations described in this Guide or any other Purchase/Servicing Documents for each of the Mortgages purchased by GMAC-RFC. The Servicer's servicing obligations compensated by the servicing fee include, among other things, undertaking all activities required to protect GMAC-RFC and/or its investor's interest in the Mortgage in the event of a foreclosure of the property or a bankruptcy of the Borrower, such as:

- Preparing foreclosure package
- Finding missing documents and/or assignments
- Resolving any title issues that are the result of the Seller's or Servicer's action or inaction
- Managing attorneys
- Working with the Borrower to resolve a delinquency through loss mitigation activities
- Handling bankruptcy management activities

## 302

### Individual Loan Accounting

The Servicer must account for individual Loans in accordance with the requirements of a particular GMAC-RFC **Loan Program**, or if special requirements are not defined, then in accordance with the amortization accounting method described below.

**(A) Amortization Method**

The Servicer must use the amortization method of individual Loan accounting, with interest calculated in arrears, for Loans it services for GMAC-RFC. Under this method, an individual mortgage payment is applied to interest and principal by first calculating the interest portion, and then applying the balance of the payment as a principal reduction. The interest is calculated on not less than the outstanding principal balance after the preceding payment has been applied. Thus, the interest computed applies to the period preceding the **Due Date** of the installment being applied.

The amount to be applied to interest for a multiple installment must be calculated using the principal balance remaining after the previous calculation and principal application.

**(B) Other Requirements**

All monthly interest calculations must be made using a 30-day month and 360-day year. Factors used for such calculations must be carried to at least six decimal places. Interest calculations for periods of less than one month should be based on a 365-day year. The 365-day year calculation may be used for liquidation transactions only; any partial month interest calculation used in determining Loan payment applications will be made using a 30-day month and 360-day year.

**(C) Interest-in-advance**

GMAC-RFC does not permit the use of the prepaid interest or interest-in-advance methods on Loans purchased.

## 303

### Application of Loan Payments

The Servicer must apply payments to Loans in accordance with requirements of a particular **Loan Program**, or if special requirements are not defined, then in accordance with the following standards:

**(A) General**

All payments must be posted to the Borrower's records no more than two **Business Day**s after receipt and must be applied first to **Escrow/Impound**, second to interest, third to deferred interest (or negative amortization) and finally to principal, except as otherwise specifically provided in the Borrower's Loan documents.

**(B) Differences in Collection**

All payments received must equal or exceed the monthly principal, interest and **Escrow/ Impound**, if applicable. A deficiency of $50 or less in the monthly installment, including Escrow/Impound amounts, may be adjusted by reducing the amount credited to the Escrow/ Impound balance, crediting the entire payment to the Escrow/Impound balance until a full payment is received, or returning the payment to the **Borrower** for a complete payment. If the deficiency exceeds $50, the entire payment must either be credited to the Escrow/ Impound balance or suspense/unapplied funds account until a full payment is received, or returned to the Borrower. Checks returned because of insufficient funds must be reflected as a complete reversal of the most recent payment application.

The Servicer may not accept more than two payments with deficiencies without contacting the Borrower for an explanation or to clarify with the Borrower the correct amount due. The Servicer may not automatically apply, as a curtailment, any amounts received in excess of the regular total payment without first contacting the Borrower for clarification of the Borrower's intent in remitting the overage.

**(C) Loans Paid in Full**

The Servicer must determine and accept the amount required to pay a Loan in full, including the interest to the payoff date and any prepayment penalties that may be due based upon the terms of the Note, and remit the total proceeds due to GMAC-RFC by wire transfer within five **Business Day**s after the event that caused the payoff/liquidation, i.e., close of escrow. Any funds remaining in a buydown account of a Loan prepaid in full must be released according to the terms of the buydown agreement.

Note: On all Loans that liquidate (are paid in full) within 90 days of GMAC-RFC purchasing said Loan, all premiums paid by GMAC-RFC must be returned by the seller of the Loan. This is inclusive of servicing released premiums and/or price premiums. (Please refer to the **Loans Paid in Full** Section in Chapter 5, **Servicing Released** of either this Servicer Guide or GMAC-RFC's **Client Guide** for more detailed information.)

**(D) Partial Prepayments**

The Servicer may apply partial prepayments of principal according to the terms of the Note in any amount at any time without prior notice, provided that all installments due have been paid. Principal curtailments can be made any **Business Day** of the month and must be applied the same day the curtailment is received. A partial prepayment of principal received on a delinquent Loan must not be applied. The Servicer must hold the monies in a suspense/ unapplied funds account until the Loan is brought current.

The Servicer is obligated to pay interest to GMAC-RFC for the month in which a partial prepayment is applied based on the principal balance of the Loan prior to the application of the partial prepayment. The Servicer is further obligated to credit the **Borrower** for a full month's interest on the partial prepayment in the principal application immediately subsequent to any partial prepayment application.

The Servicer must complete reversals of previously applied prepayments (as a result of insufficient funds checks or payment misapplications) no later than 90 days after original application. The Servicer must obtain prior approval from the GMAC-RFC Loan Accounting Department in Burbank before reversing any prepayment more than 90 days after its original application.

Funds received in consideration of a partial release of security must be applied to the outstanding principal balance. Funds received, when part of the **Mortgaged Premises** are taken by eminent domain, must be applied to the outstanding principal balance unless the Servicer recommends, and GMAC-RFC approves, an application to restore the Mortgaged Premises or other applications.

**(E) Interest Only Loans**

For Interest Only Loans, the Servicer will be required to recast the payment following any partial prepayment (curtailment).

**(F) GPM Loans**

For Graduated Payment Mortgage (GPM) Loans, negatively amortizing partial prepayments must first be applied as a reduction of negative amortization and then as a reduction of principal.

**(G) Modifications/Reamortization**

The Servicer may reduce (re-amortize) the monthly principal and interest installments following any partial prepayment of principal equal to the greater of $10,000.00 or 10% of the unpaid principal balance on a Loan, without prior approval from GMAC-RFC. The modification must be in writing with the original document(s) held by the Servicer. A copy of the modification agreement/letter must be forwarded to the GMAC-RFC Loan Accounting Department in Burbank in the month prior to the effective date of the changes.

**(H) Reapplication of Prior Prepayments**

The Servicer may not automatically reapply prior prepayments or accumulated prepayments for payment of subsequent installments. Payments advanced to satisfy future installments must be accounted for as advanced (prepaid) installments of principal and interest. The Servicer should contact the **Borrower** if there is a question about the Borrower's intent. In cases of extreme hardship, and upon prior written approval from GMAC-RFC Loan Accounting Department in Burbank, the Servicer may reapply a previous partial prepayment to pay current and past due installments. The Servicer must take all actions necessary when reapplying partial prepayments to preserve the priority of the Loan and to fully protect the interest of GMAC-RFC.

**(I) Additions to Loan Principal**

GMAC-RFC will purchase Loans on which open-end or other optional future advances have been made provided the advances were made before the **Delivery Date**. Advances after the Delivery Date are not permitted.

## 304

### Custodial Accounts for Principal and Interest Payments and Escrow/Impound Accounts

The Servicer must establish and at all times maintain each custodial account for principal and interest in an eligible depository institution. An eligible depository institution is:

- A Federal Reserve Bank
- A Federal Home Loan Bank
- An **FDIC** (**BIF** or **SAIF**) or a National Credit Union Share Insurance Fund (**NCUSIF**) **Insured Depository** institution that carries a minimum rating "125" or better by IDC Financial Publishing Inc. (IDC)

If the depository institution does not meet the prescribed IDC rating or is not rated by IDC, then the institution must meet the following ratings in order to remain an eligible depository institution:

- Thomson BankWatch (TBW) - "C" or better
- Standard and Poor's Corporation (S&P) - "A-3" or better on short-term Certificates of Deposit (CD)
- Moody's Investor Service - "P-3" or better on short-term bank deposits
  - If rated by all three rating services, the depository institution must meet any two ratings
  - If rated by two of the rating services, the depository institution must meet both ratings
  - If rated by only one of the rating services, the depository institution must meet that rating service's rating

**Escrow/Impound** accounts are not subject to the above rating requirements but they must be maintained in an **FDIC** (**BIF** or **SAIF**) or **NCUSIF Insured Depository** institution, a Federal Reserve Bank or a Federal Home Loan Bank.

It is the Servicer's responsibility to review periodically (or continuously, if necessary) the eligibility of the depository institution in which the Servicer maintains the custodial accounts and to make changes as deemed necessary. If requested by GMAC-RFC, the Servicer must provide a copy of the most current IDC rating for the depository institution where the principal and interest custodial account is established. GMAC-RFC may, in its sole and absolute discretion, determine a depository institution ineligible for maintaining custodial accounts and require the Servicer to move monies to a custodial account in an eligible depository institution as determined by GMAC-RFC. If a Servicer's depository institution is ineligible, the Servicer is required, within 30 days of the date that all applicable ratings are released, or within the time specified by GMAC-RFC, to:

- Establish a new custodial account held in an eligible depository
- Send a new Custodial Account Authorization Form **GMAC-RFC Form 2301** and a copy of the signature card for the new custodial account to the GMAC-RFC's Servicer Management Department, in Burbank.

The Servicer may maintain the custodial account in an interest-bearing account, provided the institution is eligible as detailed above and provided any and all funds in the custodial account are available to GMAC-RFC upon demand without the prior consent of the Servicer.

The Servicer may not maintain a custodial account in an operating account segregated by a general ledger.

### (A) Deposits to Custodial Accounts

The Servicer must deposit all funds into the appropriate custodial account on a daily basis. All funds should be deposited no later than the first **Business Day** after receipt.

If a lock box service or other agent aggregates payments for a Servicer, the service or agent must deposit the payments into a mortgage clearing account no later than the first Business Day after receipt. The Servicer must then deposit the monies into the appropriate custodial accounts no later than the second Business Day after the day on which the agent deposits the payment into the mortgage clearing account.

At Loan purchase, the **Client** must transfer the following funds into the appropriate custodial account:

| Principal and Interest | Escrow/Impound |
|---|---|
| Prepaid Installments | Tax and Insurance Funds |
| Partial Prepayments (Curtailments) | Tax and Insurance Advances |
| Liquidation Proceeds | Unapplied Funds |

### (B) Authorization of Sight Drafts

For each custodial account, the Servicer must complete a Custodial Account Authorization Form **GMAC-RFC Form 2301** permitting GMAC-RFC to present at any time a sight draft and withdraw monies held in the custodial account. The form should be sent to the following address:

GMAC-RFC Master Servicing
2255 North Ontario Street
Suite 400
Burbank, CA 91504-3120
Attention: Compliance

Upon request of GMAC-RFC, the Servicer must provide a current original, complete and executed Custodial Account Authorization Form **GMAC-RFC Form 2301**, together with copies of the corresponding custodial accounts signature cards and latest bank statements, as applicable, at the time the custodial accounts are established.

### (C) Principal and Interest Custodial Accounts

Only principal and interest payments required for remittance to GMAC-RFC and servicing fees earned by the Servicer for Loans serviced for GMAC-RFC may be held in a principal and interest custodial account.

The account designation must be:

> [Name of Depositor (Servicer's Name)], as agent, trustee, and/or bailee for GMAC-RFC and/or various mortgagors and/or various owners of interests in the Loans to which this account relates and/or mortgage-backed securities. In special instances GMAC-RFC may direct the Servicer to designate certain entities (i.e., **Fannie Mae**, **Freddie Mac**, etc.) when applicable.

**(D) Escrow/Impound Custodial Accounts**

No funds besides Escrow/Impound funds and unapplied funds remitted by, or on behalf of, the **Borrower** to the Servicer for Loans serviced for GMAC-RFC may be held in an escrow custodial account.

The account designation must be:

> [Name of Depositor (Servicer's Name)], as agent, trustee, and/or bailee for GMAC-RFC and/or various mortgagors and/or various owners of interests in the Loans to which this account relates and/or mortgage-backed securities. In special instances GMAC-RFC may direct the Servicer to designate certain entities (i.e., Fannie Mae, Freddie Mac, etc.) when applicable.

If the Servicer has entered into an agreement or is required by law to pay interest on **Escrow/Impound** accounts, the Servicer will be solely and fully responsible for payment of such interest. Any accounting related to interest on Escrow/Impound accounts must not be included with the Servicer's mortgage accounting for principal and interest.

**(E) Temporary Buydown Funds**

Temporary Buydown funds and any interest earned thereon must be held by the Servicer in an account as designated below. In the event that any buydown funds are discounted to present Value, the account in which they are held must bear interest at a rate not less than the rate used in calculating the present Value, and the Servicer shall be responsible for paying any shortfall in any earnings on buydown funds out of its own funds.

> [Name of Depositor (Servicer's Name)], as agent, trustee, and/or bailee for GMAC-RFC and/or various mortgagors and/or various owners of interests in the Loans to which this account relates and/or mortgage-backed securities. In special instances GMAC-RFC may direct the Servicer to designate certain entities (i.e., **Fannie Mae**, **Freddie Mac**, etc.) when applicable.

## 305

### Monthly Reconciliation of Custodial Accounts

Separate custodial accounts must be maintained for principal and interest accounts and escrow accounts. Each custodial account must be reconciled at least monthly.

GMAC-RFC requires that a custodial account reconciliation be completed each month on the Custodial Account Analysis—Principal and Interest Form **GMAC-RFC Form 2302** and the Custodial Account Analysis—Taxes and Insurance Form **GMAC-RFC Form 2303**. Although GMAC-RFC does not require these forms to be submitted on a monthly basis, the reconciliation information must be made available to GMAC-RFC upon request and will be required to be submitted with requested supporting documentation.

## 306

### Accounting Cycle Cut-off Date

The Cut-off Date referred to in this Servicer Guide is the last **Business Day** of the month previous to the month for which a remittance is being calculated.

## 307

### Scheduled Principal Balance

Several calculations described in this Servicer Guide are based on the Scheduled Principal Balance of the Loans being serviced by the Servicer. Scheduled Principal Balance as of any **Cut-off Date** is defined as follows:

- Actual outstanding principal balances of all Loans as of the Cut-off Date
  *plus*
- Principal portion of all prepaid installments applied on or before the Cut-off Date
  *plus*
- Amount of any partial prepayment of principal applied on or before the Cut-off Date
  *minus*
- Principal portion of all installments delinquent and unpaid as of the Cut-off Date (assuming that the Servicer has advanced such installments)

## 308

### Reporting Method

All Servicers are required to report using the Trans*Action*$^{SM}$ Reporting method, Alltel file format or via electronic spreadsheet **GMAC-RFC Form 2306**. No other reporting methods are accepted.

**(A) Trans*Action* Reporting Method Description**

The Trans*Action* Reporting Method is an integrated investor reporting system that combines GMAC-RFC—designed formatting with electronic transmission (ALLTEL Interchange, Bulletin Board System, or Internet/Intranet) to capture and report Loan-level accounting detail for all Loans serviced for GMAC-RFC. Through Servicer-supplied information in the required data fields of the Trans*Action* System format, not only will Loan-level actual principal balance and last paid installment data be reported, but also Loan-level curtailment collection activity, individual payment and interest rate changes.

(1) Trans*Action* Information Hotline

GMAC-RFC's format will be required for all data submissions. For a copy of GMAC-RFC's Trans*Action* Reporting Handbook or technical information regarding GMAC-RFC format specifications, contact your GMAC-RFC accounting representative or call 818.260.1400.

(2) Trans*Action* Implementation

In order to ensure compliance with the required GMAC-RFC format and to assist Servicers in supplying required data, all Servicers will be required to submit a preliminary test prior to their participation. Servicers must notify GMAC-RFC of their intent to submit test data. This notification can be made by telephoning the Trans*Action* Hotline by the first **Business Day** of the month in which it will be sent. Beginning with the test data, Servicers will also be required to submit a CSV file until notified by GMAC-RFC to stop. The file is due within one Business Day after the last Business Day of the month through the accounting cycle. GMAC-RFC authorization to suspend CSV file reporting notwithstanding, Servicers must retain the capacity to produce a CSV file upon the request of GMAC-RFC.

**(B) Submission Method**

GMAC-RFC's Loan Accounting Department will no longer accept hard copy reports. All required reporting must be submitted either to the TransAction format mailbox address or as an email attachment sent to the Servicer's assigned Loan Accounting contact.

**(C) Email Address**

For Loan Accounting contacts, the email address format is firstname.lastname@gmacrfc.com.

**(D) Receipt Deadlines**

Monthly reporting must be received by the close of business on the first Business Day of each month. The report must be received, in its entirety, by GMAC-RFC by the close of business on the first Business Day of each month.

Any Servicer unable to meet the receipt deadline must notify its GMAC-RFC Loan Accountant, or call 818.260.1400 before the end of the reporting month.

**(E) Failure to Comply with Receipt Deadlines**

Failure to comply with the receipt deadline may result in the following penalties at each occurrence:

- Servicers with a combined total of less than 200 GMAC-RFC Loans are subject to a penalty of $250
- Servicers with a combined total of 200 or more GMAC-RFC Loans are subject to a penalty of $50 per increment of 100 Loans with no maximum amount

GMAC-RFC reserves the right to change the penalties and all other actions at any time and at its sole discretion.

## 309

### Payoff/Liquidation File

**(A) File Requirements**

The Servicer must report via an electronic spreadsheet of the Payoff/Liquidation file **GMAC-RFC Form 2308** within one **Business Day** after the event that caused the payoff/ liquidation, i.e., close of escrow. If a Loan has been converted, the Payoff/Liquidation Report is due no later than the last Business Day of the month preceding the conversion date. Within five days of the first assignment of Loans to you for servicing, a spreadsheet template will be supplied directly to you by GMAC-RFC Loan Accounting to support your submission Form.

The following fields are required to be reported on the Payoff/Liquidation file:

- GMAC-RFC Loan #
- Payoff date
- Payoff amount due
- Due date at time of payoff (this is only applicable if the Loan is in an actual/actual portfolio)
- Ancillary fee (prepayment penalty), if applicable
- Payoff reason code (2=Borrower Payoff, D=Third Party Sale (full), E=ARM Conversion, I=Servicer Repurchase).
- Report received date
- Payoff principal (see below for detail on calculation)
- Payoff interest (see below for detail on calculation)

**(B) Payoff/Liquidation Principal Due Calculations**

- Loans remitted actual/actual
  - The principal amount due equals the ending unpaid principal balance as of the last scheduled month-end reporting
- Loans remitted scheduled/scheduled
  - The principal amount due equals the ending scheduled principal balance as of the last scheduled month-end reporting

**(C) Payoff/Liquidation Interest Due Calculations**

(1) Loans remitted actual/actual

- Borrower payoff/third party sale full
- Interest due equals the ending unpaid principal balance as of the last scheduled month-end reporting, multiplied by the interest rate due to GMAC-RFC per the servicing contract, divided by 365 days, multiplied by the number of days between the due date of the Borrower's last paid installment

- Servicer or ARM conversion repurchase
  - Interest due equals the ending unpaid principal balance as of the last scheduled month-end reporting, multiplied by the interest rate due to GMAC-RFC per the servicing contract, divided by 365 days, multiplied by the number of days between the due date of the Borrower’s last paid installment through the last day of the month in which the repurchase transaction occurs
- Flat servicing fee
  - For Servicers with a GMAC-RFC servicing contract that specifies a flat per Loan fee, the scheduled interest due equals one month at the flat per Loan fee per the servicing contract

(2) Loans remitted scheduled/scheduled

- Borrower payoff/third party sale full
  - Interest due equals the ending unpaid scheduled principal balance as of the last scheduled month-end reporting, multiplied by the interest rate due to GMAC-RFC per the servicing contract, divided by 365 days, multiplied by the number of days between the first day of the month in which the payoff transaction occurs through but not including the day of the payoff transaction
- Servicer or ARM conversion repurchase
  - Interest due equals the ending unpaid principal balance as of the last scheduled month-end reporting, multiplied by the interest rate due to GMAC-RFC per the servicing contract, divided by 12 months
- Odd due date Loans

  Scheduled/scheduled odd due date Loans are to be paid off by remitting the scheduled principal balance plus unscheduled net interest plus all miscellaneous funds (including prepayment penalties if applicable). The unscheduled net interest is determined as follows:
  - If the day of payoff is equal to or greater than the current scheduled LPI day, calculate net interest for the number of days from the scheduled LPI day of current month up to but not including day of payoff
  - If the day of payoff is less than the scheduled LPI day, calculate net interest for the number of days from the previous month’s scheduled LPI day, up to but not including the day of payoff. Then subtract from this amount one month’s net interest, calculated using the current scheduled principal balance.

  For examples of these scenarios, please refer to **GMAC-RFC Form 2310**.

**(D) Submission Method**

GMAC-RFC’s Loan Accounting department will no longer accept hardcopy reports. All payoff/liquidation must be submitted as an email attachment.

**(E) Email Address**

For submission of the payoff/liquidation file, the email address is BUR-PAYOFFS@gmacrfc.com.

**(F) Document Release and Execution upon Payoff**

GMAC-RFC's Enterprise Service Delivery Operations in Minneapolis, Minnesota will release **Loan Documents** automatically for Loans that are paid in full or that have been repurchased according to the conditions specified in this Servicer Guide.

Any request for execution of appropriate payoff documents (i.e. request for full reconveyance, mortgage satisfaction, substitution of trustee, or satisfaction or release of mortgage) should be prepared by the Servicer and sent to GMAC-RFC's Enterprise Service Delivery Operations in Minneapolis, Minnesota, using the Document Services Form **GMAC-RFC Form 2204**. GMAC-RFC, or its designee, will execute the submitted documents and return them to the Servicer, together with the other **Loan Documents** in the custody of GMAC-RFC or its designee. GMAC-RFC, or its designee, must not be substituted as trustee under a Deed of Trust **Security Instrument**. For Loans registered with MERS, it is the Servicer's responsibility to execute appropriate payoff documents.

It is the Servicer's responsibility to review all documents submitted to GMAC-RFC for legal compliance and compliance with MERS' rules and procedures for Loans registered with MERS. The execution or acceptance of any GMAC-RFC document submitted by the Servicer does not imply that GMAC-RFC has reviewed it for legal compliance or compliance with MERS' rules and procedures for Loans registered with MERS.

## 310

### Failure to Provide Timely Reports

Failure to provide any accounting reports within the time required will result in the following actions and/or penalties:

**Monthly Accounting Reports**

- For the first offense within a consecutive 12-month period, the penalty is $250
- For the second offense within a consecutive 12-month period, the penalty is $500
- For the third offense within a consecutive 12-month period, the penalty is $1,000

**Payoff Reporting**

- $250 per paid-off Loan for each day late

GMAC-RFC reserves the right to change the penalties and all other actions at any time and at its sole discretion.

## 311

### Required Monthly Remittances

On the 18th of each month (or on the preceding **Business Day** if the 18th falls on a weekend or holiday, which may prevent the Servicer from remitting or GMAC-RFC from receiving funds), the required funds must be either wire transferred to GMAC-RFC or a debit will be issued directly to the Servicer's principal and interest custodial account via the **ACH** network. For ACH debits initiated by GMAC-RFC, the Servicer shall provide to GMAC-RFC a signed authorization form **GMAC-RFC Form 2300**. Required monthly remittances include the following:

**(A) Scheduled/Scheduled**

- Interest:
  - Scheduled net interest, whether or not collected, for monthly interest payments due, based on the **Scheduled Principal Balance**
  - *plus*
- Principal:
  - Scheduled principal, whether or not collected, for monthly installments due on the first day of the month following the Cut-off Date
  - Any unscheduled principal curtailment collected for Loans during the month, ending on the Cut-off Date

**(B) Actual/Actual**

- Interest:
  - Actual net interest collected for monthly interest payments due based on the actual principal balance
  - *plus*
- Principal:
  - Actual principal collected for monthly installments during the month, ending on the Cut-off Date
  - Any unscheduled principal curtailment collected for Loans during the month, ending on the Cut-off Date

Servicers reporting Loans transferring from an actual/actual remittance method to a scheduled/scheduled remittance method will be required to remit the delinquent payments along with the scheduled payment.

***Note:*** The Servicer should note that no scheduled principal installment is due on any Loan if the first payment **Due Date** of that Loan is later than the first day of the month following the Cut-off Date. (Known as First Due Principal Exception.)

The Servicer must ensure there are sufficient funds in the principal and interest custodial account to cover the wire transfer, and if necessary, make advances to the account. The wire transfer for each Loan will begin in the first month after the funding date.

## 312

### Required Interim Remittances

The Servicer must wire transfer interim remittances to GMAC-RFC as follows:

(1) For payoff or liquidation funds, the Servicer must wire transfer the funds within five **Business Day**s after the event that caused the payoff/liquidation, i.e., close of escrow, or on the preceding Business Day if the 5th Business Day is a holiday that is observed by the Servicer but not by GMAC-RFC, which may prevent the Servicer from remitting or GMAC-RFC from receiving funds. Any payoff differences will be settled separately.

(2) For ARM conversion funds, the Servicer must wire funds no later than the last Business Day prior to the conversion date.

## 313

### Method to Transfer Remittances

**(A) The Servicer must wire monthly principal and interest payments and/or payoff funds to GMAC-RFC as follows:**

Residential Funding Company, LLC
C/O US Bank
Account# 104774437644
ABA # 091 000 022
Servicer ID number and name
GMAC-RFC Loan number, if applicable

**(B) On HELOC Loans the Servicer must wire monthly principal and interest payments and/or payoff funds to GMAC-RFC as follows:**

Residential Funding Company, LLC
C/O US Bank
Account# 104774437651
ABA # 091 000 022
Servicer ID number and name
GMAC-RFC Loan number, if applicable

**(C) On 125 CLTV Loans the Servicer must wire monthly principal and interest payments and/or payoff funds to GMAC-RFC as follows:**

Residential Funding Company, LLC
C/O US Bank
Account# 104774437651
ABA # 091 000 022
Servicer ID number and name
GMAC-RFC Loan number, if applicable

For all other remittance types such as, mortgage insurance proceeds, pool insurance proceeds, REO sale proceeds, short payoff proceeds, third party sale proceeds, indemnification/repurchase proceeds, tax refunds, and hazard insurance refunds, refer to the Section of this guide that relates to the above function for wiring instructions, or contact your GMAC-RFC account representative at 818.260.1400.

## 314

### Advances to Principal and Interest Custodial Account

**(A) Insufficiencies**

If the amount on deposit in the Servicer's principal and interest custodial account is not sufficient to cover the amount due on the 18th of the month, the Servicer must advance from its own funds an amount into the principal and interest custodial account to cover the wire transfer or **ACH** debit. The Servicer must transfer said monies on or prior to the 18th of the month.

**(B) Insufficiencies During Foreclosure**

During foreclosure proceedings, the Servicer must continue to make monthly advances to the principal and interest custodial account. Such advances must include uncollected principal and net interest due and will be made by the Servicer up to and including the first of the month following the date of the foreclosure sale when the **Mortgaged Premises** securing the Loan becomes **Real Estate Owned (REO)**.

**(C) Recovery of Insufficiencies**

The Servicer may recover advances made to the principal and interest custodial account from subsequent principal and interest payments made by or on behalf of the **Borrower** and credited to the account, or be reimbursed by GMAC-RFC upon receipt of the proceeds from the sale of the REO property and if applicable, the Pool Insurance proceeds.

The Servicer shall not be entitled to reimbursement of any such advances made with respect to a Loan it is obligated to repurchase by reason of the occurrence of an Event of Seller Default under, and as defined in, the **Client Guide**.

## 315

### Advances to Escrow/Impound Account

If the amount on deposit in an Escrow/Impound account is insufficient to meet the **Borrower**'s obligation to pay mortgage insurance premiums, hazard insurance premiums, real estate taxes, or other amounts required to be paid by the Borrower under the **Loan Documents**, the Servicer must advance from its own funds an amount sufficient to cover such obligations. Such advances may be recovered by the Servicer from future payments in excess of principal and interest made by the Borrower or in the event of adverse liquidatiion, be reimbursed by GMAC-RFC subject to GMAC-RFC's guidelines. The Servicer must not recover such advances from another Borrower's payment.

The Servicer shall not be entitled to reimbursement of any such advances made with respect to a Loan it is obligated to repurchase by reason of the occurrence of an Event of Seller Default under, and as defined in, the **Client Guide**.

## 316

### Failure to Comply with the GMAC-RFC Remittance Requirements

Should the Servicer fail to comply with the remittance procedures, the Servicer will be assessed a cash adjustment for late remittance based on the amount of the late remittance. The Servicer acknowledges that the damage GMAC-RFC suffers as a result of a late remittance cannot be quantified in advance and that the cash adjustment for late remittance constitutes liquidated damages for the Servicer's breach of its obligation to make timely remittances. The cash adjustment for late remittance is in addition to other remedies available to GMAC-RFC.

The cash adjustment for late remittance of all amounts due GMAC-RFC will be calculated using the highest quoted prime rate printed on the first **Business Day** of each month in The Wall Street Journal in its regular column entitled "Money Rates" plus 3%. This adjustment changes automatically on publication of a different prime rate on the first Business Day of a subsequent month. If the prime rate is not published, the adjustment will be determined by GMAC-RFC.

The amount of the cash adjustment is determined by the amount of the overdue remittance and the number of days the remittance is late, based on a 365-day year. The amount of the cash adjustment for late remittance shall be equal to the greater of (i) $100, or (ii) the amount of interest that would accrue on such overdue remittance at the rate provided in the immediately preceding paragraph from and including the date it became overdue until it is paid in full.

## 317

### Adjustable Rate Mortgages (ARM)

#### (A) Changes (Adjustments to Interest or Payment)

The Servicer must enforce each adjustable rate mortgage (ARM) Loan according to its terms. The Servicer must establish procedures to monitor the index and to send and receive notices to and from the Borrower. The Servicer must use the latest available Value (including other than work week/Monday-Friday publication dates) for the index in determining an interest rate change; therewith, the Servicer must make accurate and timely adjustments to the interest rate. This includes making periodic interest rate and payment adjustments as specified by the Note. The Servicer must establish procedures to monitor the index and to send and receive notices to and from the **Borrower** in order to assure that the Servicer uses the latest available Value for the index in determining an interest rate change and that adjustments to the interest rate are correctly made in a timely fashion.

If the Servicer's failure to properly make a scheduled interest rate or payment adjustment affects GMAC-RFC's ability to make future adjustments under the Note, repurchase may be required.

**(B) ARM Indices**

Indices published in the Federal Reserve Bulletin H.15(519) are considered, for the purposes of interest rate adjustment, to be in effect on the date of release. For the purposes of interest rate adjustment, the daily prime bank rate index published in the Federal Reserve Bulletin (H.15-519) is effective the date under which it appears, not the publication date of the bulletin. For example, if the index appears below a column dated 5/17/99, that index is considered to be effective that day.

The index published by the Federal Home Loan Bank of San Francisco for six month cost of funds and 12 months cost of funds Loans is considered, for the purpose of interest rate adjustment, to be in effect on the date of release (i.e., the index for June 2005 was published July 31, 2005 and considered by GMAC-RFC to be effective July 31, 2005.)

When calculating new interest rates for ARM Loans tied to the London Interbank Offering Rate (LIBOR), the index Value must be truncated to a result that contains three digits to the right of the decimal place. This must be done before completing the calculation specified in the Note.

For example, if the published Value of the LIBOR index is 5.0629, the index Value used to determine the new interest rate should be 5.062.

***Note****: The Value should be truncated and not rounded. Using 5.063 would be incorrect. However, when calculating the new interest rate for ARM Loans tied to the London Interbank Offering Rate (LIBOR) based on quotations of major banks, as published by the Federal National Mortgage Association (Fannie Mae) the exact same Value published should be used as the index Value. For example, if the published Value of the LIBOR index based on quotations of major banks as published by Fannie Mae is 5.0629, the index Value used to determine the new interest rate should be 5.0629.*

**(C) Calculation of New Mortgage Loan Rates**

The new Loan rate is to be calculated as follows:

If interest rates (and therefore index Values) have risen since the last adjustment, the new Loan rate will be the least of:

- The index Value plus the gross margin stated in the Note, rounded per the terms stated in the Note
- The most recent mortgage Loan rate plus the periodic cap stated in the Note
- The original Loan rate plus the lifetime cap

***Note:*** If the interest rate environment is low, then the caps may have to be subtracted rather than added.

If interest rates (and therefore index Values) have declined since the last adjustment, the new Loan rate will be the greatest of:

- The index Value plus the gross margin stated in the Note, rounded per the terms stated in the Note
- The most recent Loan rate minus the periodic cap stated in the Note
- The original Loan rate minus the lifetime cap

***Note:*** If the interest rate environment is high, then the caps may have to be added rather than subtracted.

### (D) Calculation of New Yield Rates

Depending upon the **Loan Program** under which a Loan is purchased by GMAC-RFC, the new yield rate can be determined by either of the following methods:

(1) Calculated Method

If interest rates (and therefore index Values) have risen since the last adjustment, the new Loan yield rate will be the least of:

- Index Value plus the net margin purchased by GMAC-RFC as set forth in the written confirmation sent by GMAC-RFC (if rounding is specified in the Note, then that sum is rounded to the nearest one-eighth of one percentage point; if not, that sum is not rounded)
- Most recent Loan yield rate plus the periodic cap stated in the Note
- Original Loan yield rate stated by GMAC-RFC at Loan purchase plus the lifetime cap

***Note***: If the interest rate environment is low, then the caps may have to be subtracted rather than added.

If interest rates (and therefore index Values) have declined since the last adjustment, the new Loan yield rate will be the greatest of:

- Index Value plus the net margin stated in the written confirmation sent by GMAC-RFC (if rounding is specified in the Note, then that sum is rounded to the nearest one-eighth of one percentage point; if not, that sum is not rounded)
- Most recent Loan yield rate minus the periodic cap stated in the Note
- Original Loan yield rate stated by GMAC-RFC at Loan purchase minus the lifetime cap

***Note***: If the interest rate environment is high, then the caps may have to be added rather than subtracted.

(2) Service Fee Method

New Loan rate minus constant service fee rate equals new yield rate

### (E) Calculation of New Principal and Interest Constant

The new monthly principal and interest constant must be sufficient to amortize the **Scheduled Principal Balance** as of the adjustment date over the then remaining term of the Note at the adjusted Loan rate, unless otherwise stated in the Note.

**(F) Required Notices to GMAC-RFC**

The new interest rate and/or the new principal and interest constant must be reported for adjustable rate or variable payment Loans two months before the new payment amount is effective. For example, if the **Borrower**'s interest rate is scheduled to change on March 1 and/or a payment change is effective April 1, the new Loan interest rate and the new principal and interest constant will be reported to GMAC-RFC at the accounting cycle period that ends February 28.

A Scheduled Interest/Payment Notification Report **GMAC-RFC Form 304** will be prepared by GMAC-RFC and sent to the Servicer detailing the following anticipated changes for all adjustable rate and variable payment mortgages:

- Note rate
- Yield rate
- Principal and interest constant

The reports will be dated and sent to the Servicer at least 30 days prior to the effective dates of the rate changes and at least 60 days prior to the effective dates of the principal and interest constant changes.

(1) Servicer Review and Sign-off

Servicers must review the Scheduled Interest/Payment Notification Report **GMAC-RFC Form 304** to confirm the GMAC-RFC calculations, make note of ***any*** differences, and identify the cause of any differences. Differences and underlying causes should be entered into Scheduled Interest/Payment Variance Report **GMAC-RFC Form 304a** and submitted to the assigned GMAC-RFC Loan accountant contact as an email attachment no later than the 20th calendar day following receipt of Form 304a.

(2) Servicer Obligation to Report

It is the Servicer's responsibility to report all scheduled changes whether or not a Scheduled Interest/Payment Notification Report **GMAC-RFC Form 304** is received from GMAC-RFC and whether or not a specific Loan due for adjustment is listed on the report. Changes for Loans due for adjustment and not listed on the Scheduled Interest/Payment Notification Report may be reported using the Scheduled Interest/Payment Variance Report **GMAC-RFC Form 304a**.

**(G) Notices to Borrowers**

The Servicer must notify the **Borrower** before the effective date of any change in the principal and interest constant. The notice of payment change should always be mailed in time to reach the Borrower at least 30 days before the new principal and interest constant becomes effective. All ARM adjustment notices must conform to acceptable servicing practices and all applicable laws. All notices must include the following:

- Effective date of payment change
- New interest rate
- New monthly payment amount
- The current index and margin
- The method of calculating the adjustment to the monthly payments

- Name, title, and telephone number of a person who will be able to answer any inquiries the Borrower may have about the notice

As a template, the Servicer may use HUD Mortgagee Letter 84-28 Exhibit A "Suggested Form of Annual Disclosure ARM Notice".

Wherever the terms of the Note allow the Borrower the right to exercise a payment change cap option, the Servicer must notify the Borrower if the choice of the "capped" principal and interest constant will result in an accelerated paydown of principal.

**(H) Scheduled Principal Balance/Effect of Curtailments**

Scheduled Principal Balances used to calculate new principal and interest constants may reflect all curtailments applied to the Loan prior to the effective date of any scheduled interest rate change.

If the effect of any such curtailment results in a Value for the principal and interest constant that is different from that previously confirmed to GMAC-RFC, then the Servicer must notify GMAC-RFC of this new Value no later than its effective date. Failure to provide such notification may result in the assessment of a $30 administrative fee to cover the cost of additional processing by GMAC-RFC.

# 4

# Mortgage Loan Servicing

The Servicer must service Loans sold to GMAC-RFC in accordance with applicable **State** and federal law, the **Loan Documents**, mortgage insurance (private, VA, FHA, etc.) requirements, the **Client**/Servicer Contract and this Servicer Guide as amended from time to time. The Servicer must contact GMAC-RFC regarding any issue to which this Servicer Guide or the Client/Servicer Contract does not address or is ambiguous.

All MERS references in this Guide apply only to GMAC-RFC approved MERS clients. Prior to servicing Loans that are registered on MERS for GMAC-RFC, the Client must receive approval from GMAC-RFC.

GMAC-RFC requires the Servicer to submit certain reports as set forth in this Section. All Loan servicing reports must be sent to:

GMAC-RFC
2255 North Ontario Street
Suite 400
Burbank, CA 91504-3120
Attention: Servicer Management Department
818.260.1400

## 400

### Release of Loan Documents

The GMAC-RFC Enterprise Service Delivery Operations in Minneapolis, Minnesota will release Loan Documents automatically for Loans that are paid in full, or that have been repurchased according to the conditions specified under ARM conversions. Original Loan Documents required for foreclosure, bankruptcy, or litigation must be requested using the Document Services Form **GMAC-RFC Form 2204**.

## 401

### ARM Conversions

If the **Borrower** exercises the ARM conversion option, the Servicer will be required to repurchase the Loan upon conversion. The Servicer must submit the Document Services Form **GMAC-RFC Form 2204** to GMAC-RFC's Enterprise Service Delivery Operations in Minneapolis, Minnesota no fewer than 15 calendar days prior to the date the Loan converts from an adjustable to a fixed rate. The modification agreement must also be submitted with the Document Services Form **GMAC-RFC Form 2204** if execution by the Note holder or beneficiary is required.

The Servicer shall submit a Payoff/Liquidation Report **GMAC-RFC Form 2308** and wire transfer Loan funds to GMAC-RFC's Accounting Department in Burbank in accordance with wire instructions contained in the **Required Interim Remittances** Section of this Servicer Guide, no later than the last **Business Day** prior to the conversion date. The ARM Conversion option (Reason Code 3) on the Payoff/Liquidation Report must be checked. The payoff/liquidation date must be the last calendar day of the month preceding the conversion date.

The Servicer must remit interest for the entire month preceding the conversion date. The payoff/liquidation date must be the last calendar day of the month preceding the conversion date. If the appropriate amount is not wired by the last Business Day prior to the conversion date, then a penalty will be due. Any penalty will be calculated by GMAC-RFC in accordance with the formula contained in the **Failure to Comply with the GMAC-RFC Remittance Requirements** Section of this Servicer Guide.

The GMAC-RFC Enterprise Service Delivery Operations in Minneapolis, Minnesota will automatically release **Loan Documents** to the Servicer after all funds have been received by GMAC-RFC. More specifically, after receipt of the Loan funds, GMAC-RFC will endorse the Note to the order of the party that repurchased the Loan and the **Security Instrument** will be assigned to such party. Failure to submit the Document Services Form **GMAC-RFC Form 2204** at least 15 calendar days prior to the conversion date may result in delays in the receipt of the endorsed Note and other Loan Documentation.

In the event the Servicer wants to resell the converted Loan to GMAC-RFC, please refer to the GMAC-RFC **Client Guide** to determine the proper procedures to be followed.

## 402

### Maintenance of Loan File by Servicer

The Servicer must maintain an original individual file for each Loan. The Servicer acknowledges that all Loan files are the property of GMAC-RFC and that the Servicer, acting on the behalf of GMAC-RFC, is responsible for the safekeeping of all required documents. The Servicer further acknowledges that GMAC-RFC may review the Loan Documents in the Servicer's office any time during normal business hours.

## 403

### Minimum Contents of Loan File

The individual file for each Loan must be clearly marked to indicate the GMAC-RFC Loan number, the **MIN** for Loans registered with MERS, and GMAC-RFC ownership of the Loan. Each Loan file must be maintained during the time GMAC-RFC owns the Loan and thereafter for a minimum of three years from the date the Loan is fully paid, or if the Loan is accelerated, six years from the date the Loan is fully paid, unless applicable State law requires a longer retention period, in which event the Loan file must be retained as required by State law. Each Loan file must contain the originals of the following documents unless stated otherwise:

- Copies of all original documents sent to GMAC-RFC, including the Note, **Security Instrument**, assignment of Security Instrument, mortgage insurance certificate, title insurance policy, and Buydown Agreement and Schedule, if applicable.
- The Loan application signed and dated by the **Borrower** signing the Note. All information called for in such application must be entered as provided by the Borrower.
- The required credit report(s) with credit score(s).
- The verification(s) of employment, the written verification or acceptable evidence of source and amount of the down payment and prepaid items, and verifications of all other income considered by the **Client** to qualify the Borrower for the Loan. In the case of a self-employed or non-salaried Borrower, the verification of income must consist of either:
  - Acceptable financial statements
  - Completed federal income tax returns for the preceding two years
- The applicable residential appraisal report consisting of one of the following:
  - For one-family dwellings, residential appraisal report
  - For two- to four-family dwellings, appraisal report—small residential income property
  - For condominium and planned unit development (PUD) units, appraisal report—individual condominium or PUD unit

- Three clear, descriptive photographs of the **Mortgaged Premises**, one being a front view showing all completed improvements, one being a rear view showing all completed improvements, and one being a street scene identifying and locating the Mortgaged Premises, showing adjacent improvements. Photographs must be originals or clear photocopies and, if originals, must be attached to separate sheets of paper.
- All documents necessary to show compliance with the Condominium Warranties Section and the PUD Warranties Section of the **Client Guide**.
- Documents affecting the leasehold estate, if any, securing the Loan.
- The plat of survey meeting the requirements of the **Client Guide**.
- The hazard insurance policy or policies, and if applicable, the flood insurance policy, properly endorsed, as described in the **Hazard Insurance** and **Flood Insurance** Sections of this Servicer Guide, and copies of any necessary notices to the insurance carrier(s), unless the Servicer carries mortgage impairment insurance instead of maintaining possession of hazard and/or flood insurance policies.
- If the **Mortgaged Premises** are dependent for assurance of an adequate supply of water from a water or irrigation company that supplies water only to its shareholders, the stock certificate entitling the Mortgaged Premises to an adequate supply of water, properly endorsed to GMAC-RFC.
- The settlement statement, closing statement or escrow instructions.
- All other documents constituting the Loan file and such other documents as are commonly maintained in Loan files by other private institutional mortgage investors or Servicers, including all legal notices, correspondence, forms, reports, and the results of conversations relating to the Loan. The Loan file need not contain form collection letters or form notices to the **Borrower**, provided that the Servicer possesses an adequate record of its collection efforts, including the dates that the letters and notices were mailed, the dates of personal contacts with the Borrower, the dates and results of inspections of the Mortgaged Premises, and the reasons for prior and current defaults.

In the event original documents required to be maintained in the Servicer Loan file are forwarded to GMAC-RFC, GMAC-RFC will not be responsible for the safekeeping of those original documents unless original documents were requested by GMAC-RFC.

GMAC-RFC reserves the right to obtain the original Loan file on request.

## 404

### Microfilmed Records

In lieu of retaining copies and originals as required above, the Servicer may maintain its Loan files in the form of microfilm, microfiche or magnetic media, provided that the following requirements are met:

- The copies or magnetic media are made in the regular course of business pursuant to an established written policy of the Servicer applying to all of its Loan files
- The copies or magnetic media are made by a process that accurately reproduces or forms a durable medium for reproducing the original
- The copies or magnetic media are clearly marked to indicate GMAC-RFC's ownership of the Loan and the GMAC-RFC Loan number assigned to it
- The Servicer maintains the copies or magnetic media in a manner that permits ready transfer to legible hard copies of the material relating to the Loans serviced for GMAC-RFC
- A reader/copier that can be used by GMAC-RFC representatives is maintained in the same offices where the copies are kept
- The Servicer makes backup copies and retains them off-site to protect against fire and other hazard losses

The Servicer must bear the entire cost of restoring Loan files and related documents transferred to microfilm, microfiche or magnetic media if the copies or magnetic media become damaged or lost for any reason, or if legible, hard copies are requested by GMAC-RFC.

## 405

### Individual Loan Servicing

The Servicer must make all necessary interest rate and payment adjustments in accordance with the terms of the Note, and must otherwise service the Loan in accordance with the **Loan Documents,** the Client/Servicer Contract and this Servicer Guide.

## 406

### Partial Release, Easements, and Eminent Domain

**(A) General**

Applications for partial release of the lien on the **Mortgaged Premises**, easements, consent to substantial alterations, removal, demolition, taking or dividing the Mortgaged Premises, and other matters relating to changes affecting the Loan or the Mortgaged Premises must be approved by GMAC-RFC's Servicer Management Department in Burbank. The Servicer must obtain detailed information such as supporting appraisals, blueprints, sketches, plat maps, legal instruments and all other pertinent information. If approval of a **Mortgage Insurer** is required, it must be obtained together with the consent of co-makers, guarantors and other obligors as applicable before approval by the Servicer. When all supporting documents are received, the Servicer must submit a written recommendation along with the aforementioned supporting documents to GMAC-RFC for approval.

**(B) General Conditions for Approval**

In connection with any request for partial release or modification to the security the Servicer must verify that: (i) the priority of GMAC-RFC's mortgage lien will not be affected by any claims of subordinate lienholders; (ii) the reduction in the Value of the remaining property does not exceed the consideration received by the **Borrower**; (iii) the consideration received by the Borrower is at least equal to the Value of the property being released; (iv) all outstanding liens or encumbrances against the property are current; (v) the Servicer has received approval from any mortgage insurance company, or any senior lienholder, if applicable; and (vi) the resulting Loan- to-Value ratio after the partial release does not exceed the **Loan-to-Value** ratio immediately prior to the partial release.

**(C) Documentation**

The Servicer must ensure that the instruments used in changes affecting Loans or **Mortgaged Premises** are in the proper form and that all requirements under applicable law are met, and for Loans registered with MERS, are in compliance with MERS' rules and procedures. The Servicer must submit a Request For Loan Service Approval **GMAC-RFC Form 2400** along with the following: (i) a copy of Borrower's written request for the partial release executed by all parties to the Loan, with any supporting documentation, i.e. letters from any governmental agencies, if applicable; (ii) copies of all approvals received by any **Mortgage Insurer**/senior lienholder, where applicable; and (iii) a copy of the appraisal performed to support the "after release" Value of the property. The appraiser should comment on the Value of the property being released.

**(D) Tax Parcel**

If necessary, the Servicer must inform the tax authority directly or through its tax service of the release of real property, and request a division of any taxes levied or to be levied.

**(E) Eminent Domain**

The Servicer must notify GMAC-RFC and any Mortgage Insurer immediately upon learning of any planned or impending taking of all or any part of a Mortgaged Premises. The Servicer must take all steps necessary to prevent loss of mortgage insurance benefits due to eminent domain.

**(F) Compliance with Loan Documents**

The Servicer must not modify, waive, or release any term of any **Security Instrument**, accept any prepayment, or consent to any postponement of performance by any **Borrower** of any obligation under a Security Instrument, except as authorized according to the provisions of the Loan Documents.

**(G) Conversions of the Mortgaged Premises**

The Servicer must deny conversion of the Mortgaged Premises from a 1-to-4-unit property to a condominium or cooperative, and no individual units of a 2-to-4-unit property may be released separately from the Mortgaged Premises. Any such conversion or release shall be treated as a transfer of the Mortgaged Premises under the **Due-on-Sale and Assumptions** Section.

## 407

### Partial Prepayments

Partial prepayments of principal in any amount must be accepted by the Servicer according to the terms of the Note. Principal curtailments can be made any **Business Day** of the month and must be applied the same day the curtailment is received. The Servicer may reduce (re-amortize) the monthly principal and interest installments following any partial prepayment of principal equal to the greater of $10,000 or 10% of the unpaid principal balance on the Loan, without prior approval from GMAC-RFC. The modification must be in writing, with the original documents held by the Servicer. A copy of the modification agreement/letter must be forwarded to the GMAC-RFC Loan Accounting Department in Burbank in the month prior to the effective date of the changes.

## 408

### Escrow/Impound Administration

The collection of escrow for taxes and insurance is permitted, if the **Security Instrument** provides for it, subject to applicable law, unless waived by the originating lender. If any such escrow is being collected when the Loan is purchased by GMAC-RFC, the Servicer must comply with the requirements of The Flood Act of 1994, as amended, as it pertains to escrow requirements for flood insurance premiums, and the Real Estate Settlement Procedures Act ("RESPA"), and its implementing Regulation X.

The Servicer must continue to collect one-twelfth of the yearly charge for escrow with each monthly installment of principal and interest, or to the extent permitted under the Note and/or Security Instrument. The Servicer may, if requested by the **Borrower**, also collect and administer funds to pay expenses not provided for in the **Loan Documents**, such as life insurance on the Borrower. The escrow must be held in a custodial account as described in **Custodial Accounts for Principal and Interest Payments and Escrow/Impound Accounts** Section of this Guide.

The Servicer must obtain bills for and pay all escrow items before the applicable penalty or termination date. The Servicer must maintain adequate records to prove payment of all taxes, ground rents, assessments, and other charges that are or may become first liens on the **Mortgaged Premises**.

The Servicer is responsible for understanding and complying with provisions of RESPA and Regulation X with respect to Escrow/Impound administration, including:

- Initial escrow account analysis and initial escrow account statement to the Borrower at the creation of an escrow account
- Annual escrow analysis and annual statement to the Borrower
- Acceptable accounting methods of escrow account analysis
- When applicable, initial escrow account and annual statement in the event of a servicing transfer

If the amount held in escrow by the Servicer, together with the future monthly installments of escrow, exceeds the amount required to pay charges as they fall due, the Servicer must either repay the excess promptly to the **Borrower** (if there is no default under the terms of the Security Instrument) or credit the excess to the Borrower by a reduction in monthly escrow installments, in accordance with the applicable provisions of RESPA and its implementing Regulation X. Any interest payable to the Borrower for escrow or any other funds held by the Servicer, whether due to contractual agreement or operation of law, must be paid by the Servicer at its own expense.

If the amount held in escrow by the Servicer is deemed insufficient to pay charges when due, the Servicer should obtain the necessary additional funds from the **Borrower** before the latest date on which the charges may be paid prior to penalty, lapse of insurance policies, etc. If the Borrower fails to remit the deficient amount, or if there is insufficient time to obtain the amount, the Servicer must pay any charges due and reflect a shortage in the Borrower’s escrow account.

The Servicer shall keep accurate and up-to-date records reflecting the handling of each Borrower’s escrow account and the submission of initial and annual escrow account statements to the Borrower. These records must be maintained for a period of at least five years after the Servicer last serviced the escrow account.

The Servicer may, without GMAC-RFC’s approval, start collecting escrow not previously required. The Servicer may discontinue collecting escrow if the Loan has not been delinquent for 30 days or more at any time during the previous 12 months, there were no other defaults under the terms of the Loan during the same 12 month period, and where the current **Loan-to-Value** has been reduced to 80%.

The Servicer retains the right to resume collection of escrow if there is any non-payment of the items for which escrow had previously been collected.

If the Servicer chooses not to collect escrow or if the terms of the **Security Instrument** or applicable law does not provide for collection of escrow, the Servicer must proceed as follows:

- At least annually, the Servicer must require that the Borrower furnish proof of payment of all taxes, ground rents, assessments, and other charges
- Servicer may use other means (such as tax services) commonly employed by private institutional mortgage investors to annually satisfy itself that these items have been paid

If escrow is not collected and the Servicer discovers non-payment of any charge otherwise payable from escrow, the Servicer must contact the Borrower and allow the **Borrower** 30 days to provide proof of payment. The Servicer must advance funds for the unpaid charge and any applicable penalty if the Borrower indicates inability to make the payment or does not provide proof of payment within the required 30 days.

If the Servicer fails to advance funds for the unpaid charge plus applicable penalties, which increases the amounts owed and the risk to GMAC-RFC and/or its investors, and at a later point in time the Loan either becomes an REO or liquidates in any other fashion that results in a less than full payoff to GMAC-RFC, the Servicer will be held responsible for both the unpaid charge plus applicable penalties.

The Servicer must attempt to work out an arrangement with the **Borrower** for repayment of any advance made by the Servicer on its behalf and, if allowed by law, must begin to collect escrow for future bills. The Servicer must immediately recommend foreclosure if:

- Borrower fails to pay any charge otherwise payable from escrow
- Servicer has advanced funds for the unpaid charge and any applicable penalty
- mutually satisfactory arrangement cannot be made for the Borrower's repayment of the advance or the Borrower fails to comply with the terms of any such arrangement

## 409

### Due-on-Sale and Assumptions

**(A) General**

Except as specifically enumerated under the Garn-St. Germain Depository Institutions Act of 1982 or other applicable law, GMAC-RFC requires the Servicer to enforce due-on-sale provisions. In all circumstances of unconsented transfer, the Servicer is required to accelerate the Loan as provided in the **Institution of Foreclosure** Section of this Servicer Guide or **Security Instrument**.

GMAC-RFC permits a Loan to be assumed when the due-on-sale clause provided in the Security Instrument and or Note specifically allows for the assumption. To qualify for an Assumption the new Borrower must meet all credit underwriting criteria in accordance with the policy stated in this Servicer Guide.

If an ARM Loan has been converted to a fixed rate Loan pursuant to the **Loan Documents**, the Loan is no longer assumable (unless provided for within the Loan Documents) and the due-on-sale provision must be enforced.

**(B) Federal Restrictions**

In the following situations, when the **Mortgaged Premises** are occupied or are to be occupied by the **Borrower**, the Servicer must not accelerate the maturity of the indebtedness evidenced by the Note upon transfer of the Mortgaged Premises in the following ways:

- The creation of a lien or other encumbrance subordinate to the Security Instrument, which does not relate to a transfer of rights of occupancy in the Mortgaged Premises, provided that such lien or encumbrance is not created pursuant to a contract for deed
- The creation of a purchase-money security interest for household appliances
- A transfer by devise, descent, or operation of law on the death of a joint tenant or tenant by the entirety
- The granting of a leasehold interest on the Mortgaged Premises with a term of three years or less without an option to purchase
- A transfer in which the transferee occupies, or will occupy, the **Mortgaged Premises** and that is one of the following:
  - Transfer to a relative, resulting from the **Borrower**'s death
  - Transfer wherein a spouse or a child becomes an owner of the Mortgaged Premises
  - Transfer resulting from a decree of dissolution of a marriage, a legal separation agreement, or from an incidental property settlement agreement by which the spouse becomes an owner of the Mortgaged Premises
- A transfer into an *inter vivos* trust in which the Borrower is, and remains, the beneficiary and occupant of the Mortgaged Premises unless, as a condition precedent to such a transfer, the Borrower refuses to provide the Servicer with reasonable means acceptable to the Servicer by which the Servicer will be assured of timely notice of any subsequent transfer of the beneficial interest or change in occupancy
- Any other transfer or disposition in which federal or **State** law restricts or prohibits the right to enforce due-on-sale provisions

**(C) Processing Transfers of Ownership**

If the **Security Instrument** does not contain a due-on-transfer clause, or if it contains a due-on-transfer clause and a transfer permitted under the provision above dealing with federal restrictions occurs, GMAC-RFC will permit the transfer. GMAC-RFC need not be notified of such permitted transfers. The Servicer must make any disclosures required by applicable law and take action necessary to continue any required insurance coverages, including mortgage insurance, where applicable.

For a Security Instrument with a due-on-transfer clause not allowing unrestricted or automatic acceleration of the indebtedness upon transfer of the Mortgaged Premises to a creditworthy transferee, the Servicer must process the transfer in accordance with the requirements in the following Sections.

GMAC-RFC will not permit a change in the maturity date, interest rate, monthly installment, or if applicable, margin specified in the Note upon a transfer of the **Mortgaged Premises**.

**(D) Application for Approval of a Transfer**

The Servicer must advise the transferee of all information and any approval it must obtain to properly evaluate the application, including a completed Residential Loan Application (Fannie Mae Form 1003/Freddie Mac Form 65). The transferee must submit the application directly to the Servicer.

The Servicer must also obtain the following:

- Copy of the executed contract of sale
- Current credit report for the transferee, as described in the Credit Underwriting Section of the **Client Guide**
- Written verification of the transferee's current employment and income from a reliable source
- If the transferee is self-employed or non-salaried, a profit and loss statement, a balance sheet, and copies of federal income tax returns for the two years before the application date
- Verification or other acceptable evidence of the source and amount of funds for the down payment and the payment of prepaid items, as reported in the application

The Servicer must comply with the Equal Credit Opportunity Act, Fair Credit Reporting Act, Truth-in-Lending Act, the Real Estate Settlement Procedures Act, and any other applicable law or regulation. The Servicer must also notify the transferee of the disposition of the application within 30 days after the Servicer receives all information that constitutes a completed application as described in the Credit Documents Section of the **Client Guide**.

**(E) Review of the Application**

The Servicer must review the application for transfer pursuant to the Credit Underwriting Sections of the **Client Guide** dealing with fully documented Loans.

If the application for transfer involves a Loan with a buydown agreement with 12 or more disbursements remaining in the buydown account, and the agreement provides for remaining funds to be maintained and monthly payment subsidies continued for the transferee’s benefit until the funds are depleted, the Servicer must underwrite the transferee by applying GMAC-RFC underwriting guidelines based on reduced monthly payments. If fewer than 12 disbursements remain under the buydown agreement or the buydown agreement does not provide for remaining funds to be maintained and disbursed monthly for the transferee's benefit, the Servicer must apply GMAC-RFC underwriting guidelines based on the current interest rate of the Loan.

The Servicer must verify that the following conditions are met:

- The transferee is paying at least 10% of the sales price and all adjustments for real estate taxes, hazard insurance premiums, and where applicable, mortgage insurance premiums, from cash or other equity described in the Credit Underwriting Sections of the **Client Guide**
- There are no changes in the terms of the **Security Instrument** and the Note other than a change to the name of the transferee, and any release and subsequent assumption of personal liability, where applicable
- Where applicable, mortgage insurance coverage is maintained
- All properties must be owner-occupied unless prohibited by law
- Servicer must contact its Asset Manager at GMAC-RFC, Servicer Management, Burbank, California and verify that a repurchase is not in progress, prior to the approval of the assumption

**(F) Approval of the Application**

The Servicer must approve the transfer if, based upon the review described above, it reasonably determines that the Loan quality will not be impaired in any way by such transfer. GMAC-RFC need not be notified unless it becomes necessary later to communicate with GMAC-RFC concerning the Loan.

The Servicer must prepare the necessary documents and have them executed by all parties concerned including, when necessary, GMAC-RFC or its designee. If the Servicer requests release from liability under the **Security Instrument** and Note, a written assumption and release agreement must be executed. The original fully executed and recorded (if applicable), assumption/release and other instruments, agreements, notices and any documents required under MERS' rules and procedures in order to effect an assumption of the Mortgage on MERS, must be forwarded to GMAC-RFC Servicer Management Department in Burbank using the Multipurpose Loan Service Report **GMAC-RFC Form 2401**. GMAC-RFC's execution or acceptance of any documents submitted by the Servicer does not imply that GMAC-RFC has reviewed them for legal adequacy, or for Loans registered with MERS, for compliance with MERS' rules and procedures. This is the Servicer's responsibility.

The Servicer must:

- Deliver a copy of the original fully executed and recorded (if applicable) assumption/ release agreement to GMAC-RFC Servicer Management Department in Burbank, and to all parties concerned, within 30 days after the assumption using the Multipurpose Loan Service Report **GMAC-RFC Form 2401**
- Retain a copy in the individual file maintained by the Servicer for each Loan
- Arrange for any recordation commonly required by private institutional mortgage investors or required by law to insure the priority of the existing lien, at the cost of the transferee

Provide all notices and disclosures required under the Equal Credit Opportunity Act, Fair Credit Reporting Act, Truth-in-Lending Act, Real Estate Settlement Procedures Act and any other applicable law or regulation and for Loans registered with MERS, MERS' rules and procedures

- Ensure that all insurance policies reflect the change of ownership and contain the standard mortgage clause

If applicable, the Servicer may cancel mortgage insurance following the transfer of the **Mortgaged Premises** in accordance with the requirements of the **Mortgage Insurance** Section of this Servicer Guide.

**(G) Denial of the Application for Transfer**

The Servicer must deny any application for transfer if, based on the review described above, it reasonably determines that the Loan quality will be impaired in any way by such transfer. GMAC-RFC need not be notified of the denial of the application for transfer unless the Servicer discovers that a transfer of the **Mortgaged Premises** has occurred notwithstanding the denial. In such an event, the Servicer must enforce the due-on-sale clause in the instrument and comply with the requirements of the **Institution of Foreclosure** Section of this Servicer Guide.

The Servicer must provide to the applicant any notice or disclosure required under the Equal Credit Opportunity Act, Fair Credit Reporting Act, Truth-in-Lending Act and any other applicable law or regulation in connection with the denial of any application for transfer.

The Servicer, in conducting prudent loss mitigation activities, should properly handle those Borrowers applying for an Assumption who do not qualify using standard underwriting guidelines when it is in the best interest of GMAC-RFC. The Servicer should fully document the reasons for their decision.

**(H) File Retention**

The originals of all documents relating to the application must be kept in the Loan file.

If the application is approved, the documentation must be kept for the longer of the following:

- Three years from the date that GMAC-RFC's interest in the Loan is satisfied
- Six years if the Loan has been accelerated
- Time period required under any applicable law or regulation

If the application is denied, the documentation must be kept for the duration required under the Equal Credit Opportunity Act, or any other applicable law or regulation. Microfilm, microfiche or magnetic media copies may be maintained in place of the original documents if they satisfy the requirements of this Servicer Guide pertaining to such records.

**(I) Fees for Processing Transfer of Ownership**

Subject to applicable law or regulation, the Servicer may charge and retain a fee for processing a Transfer of Ownership of, or an interest in, the **Mortgaged Premises** securing a Loan purchased by GMAC-RFC. Where applicable law or regulation limits the amount of allowable transfer fee, the Servicer may not charge more than the lesser of (i) the maximum fee allowed under applicable law or regulation, or (ii) the maximum fee allowed by GMAC-RFC, as stated below.

- The fee charged by the Servicer for changing its records for a transfer for which its consent was not required must not exceed $100.
- When the Mortgaged Premises are transferred without acceleration subject to the Servicer's approval of a creditworthy transferee pursuant to the above Sections of this Servicer Guide, the Servicer may charge and retain a fee equal to the greater of $400, or 1% of the unpaid principal balance of the Loan, with a maximum fee of $900 for Loans with original principal balances up to the maximum permitted by **Freddie Mac** and/or **Fannie Mae**. The Servicer may charge and retain an assumption fee of up to $1,200 for Loans with original principal balances exceeding the maximum principal balance permitted by Freddie Mac and/or Fannie Mae.

Transfer fees may be exclusive of out-of-pocket expenses paid to independent third parties for services required to comply with the application and approval process described above and to record the change of ownership. Any other services (such as surveys, owner's title policy, etc.) requested by the transferee are the sole responsibility of the transferee. Loan discount fees, yield enhancement fees, lost opportunity fees, and similar devices designed to circumvent these limitations or increase the effective interest rate or yield of the Loan are expressly prohibited.

The Servicer may establish a transfer schedule that results in charges less than those permitted by GMAC-RFC. If, however, any fee charged by the Servicer on Loans sold to GMAC-RFC exceeds the amount stated above, it will be considered a breach of this Servicer Guide and, unless refunded immediately to the **Borrower**, GMAC-RFC will take appropriate remedial steps.

**(J) Assumption Repurchase Option**

When GMAC-RFC requires automatic acceleration upon a transfer, the Servicer has the option to repurchase the Loan from GMAC-RFC in order to allow the transfer. Before closing the transfer, the Servicer must indicate its intention to repurchase the Loan by submitting written notice to GMAC-RFC. The Servicer must repurchase the Loan at par with adjustments for interest and comparable items and adjustment to reimburse GMAC-RFC for loss, damage, or expense, including court costs and reasonable attorney's fees, that GMAC-RFC incurred in connection with its purchase, ownership and resale of the Loan to the Servicer.

Upon completion of the transfer, the new Loan may be offered for sale to GMAC-RFC under any **Loan Program** then available under the **Client Guide**.

## 410

### Loan Repurchase Restriction

Except as specifically provided under the **Due-on-Sale and Assumptions** Section of this Servicer Guide, the Servicer does not have an option to repurchase any Loan from GMAC-RFC. Notwithstanding the previous sentence, the Servicer may request to repurchase a Loan upon an Event of Servicer Default. GMAC-RFC reserves the right, in its sole discretion, to grant such request(s).

## 411

### Loans Paid in Full

The Servicer shall submit a Payoff/Liquidation Report **GMAC-RFC 2308** and wire transfer Loan funds to GMAC-RFC's Servicer Management Department in Burbank within five **Business Day**s after the event that caused the payoff/liquidation for a Loan paid in full or liquidated as a result of a third party sale in accordance with the **Payoff/Liquidation File** Section of this Servicer Guide.

Failure to remit the entire amount of the funds for a Loan paid in full or liquidated as a result of a third party sale within five Business Days from the event that caused the payoff liquidation will result in a cash adjustment. The cash adjustment will be equivalent to **Per Diem** interest calculated the highest quoted prime rate printed on the first Business Day of each month in *The Wall Street Journal* in its regular column entitled "Money Rates," plus 3%. The cash adjustment will begin to accrue on the sixth Business Day from the event that caused the payoff/liquidation through and including the date that the funds are received in the appropriate GMAC-RFC account.

Any request for execution of appropriate payoff documents, or any documents requiring execution as a result of repurchase (i.e. request for full reconveyance, mortgage satisfaction, substitution of trustee, or satisfaction, release of mortgage assignment or grant/quit claim deed) should be prepared by the Servicer or **Client** using the Document Services Form **GMAC-RFC Form 2204** and sent to the following address:

GMAC-RFC
One Meridian Crossings, Suite 100
Minneapolis, MN 55423
Attention: ESDO/Release, MC 03-03-30

GMAC-RFC, or its designee, will execute the submitted documents and return them to the Servicer or **Client**, together with the other **Loan Documents** in the custody of GMAC-RFC or its designee. GMAC-RFC, or its designee, must not be substituted as trustee under a Deed of Trust **Security Instrument**.

GMAC-RFC's execution of any document submitted by the Servicer does not imply that GMAC-RFC has reviewed it for legal compliance. Legal compliance of documents is the responsibility of the Client and/or Servicer.

For Loans registered with MERS, the Servicer shall be required to prepare and execute all instruments, notices and other documents in connection with the payoff of the Loans in accordance with MERS' rules and procedures, as amended from time to time.

It is the Servicer's responsibility to prepare, execute, review for legal compliance, and deliver to MERS such instruments, notices and other documents in accordance with MERS' rules and procedures, as amended from time to time, and to deactivate the Loans on MERS upon payoff of the Loans (whether through foreclosure or otherwise).

## 412

### Balloon/Re-set Mortgages

The Servicer must send Borrowers appropriate written notification of the pending maturity of the Note and its Balloon provision, advising the Borrowers of the terms required by the Note and applicable laws, and of the options therein. The Servicer must verify the Borrower's ownership and occupancy of the property, as well as any other applicable conditions to the Re-set, such as no filing of a bankruptcy.

For the Re-set processing, the Servicer may charge the Borrower a fee of $250, as the actual costs associated with exercising the Re-set option. If the Balloon/Re-set Mortgage is not re-set, the Servicer must refund the fee to the Borrower; however, it may retain the other funds obtained for actual costs incurred. Proof of appropriate title insurance coverage for the Re-set Mortgage as a first lien is critical.

In order to assure that mortgage insurance coverage remains in force for a Balloon Mortgage, the Servicer should obtain each mortgage insurer's requirements for exercising a conditional re-finance or modification option and extending the existing mortgage insurance coverage to the new re-finance mortgage or the modified Balloon Mortgage. Mortgage insurer's approval is necessary unless GMAC-RFC cannot enforce the due-on-sale provision of the Note. The Servicer may not charge a Borrower a Loan. origination fee for a conditional re-finance option.

With GMAC-RFC approval as necessary (Form 2400), the Servicer must prepare the appropriate re-set document(s), cause them to be executed and recorded timely, and have them sent to the Custodian; subsequently, the Servicer updates its servicing system Loan record to reflect the new Loan terms, ensuring proper remittance and reporting to GMAC-RFC.

The Servicer, in conducting prudent loss mitigation activities, should properly handle those Borrowers of Balloon/Re-set Mortgages who can neither re-set nor pay their mortgage in full.

## 413

### Insurance

#### (A) General

The Servicer must verify that the following insurance coverage is in place for each Loan:

- Hazard, flood, condominium and PUD insurance in accordance with the terms of this Servicer Guide
- Mortgage insurance in accordance with this Servicer Guide and the Loan Programs Chapter of the **Client Guide**
- Title insurance in accordance with the requirements of the Title Insurance and Survey Requirements Sections of the **Client Guide**

All claims arising under such insurance coverage must be settled or otherwise disposed of by the Servicer, and all such insurance must be maintained at no expense to GMAC-RFC.

#### (B) Evidence of Insurance

For each Loan, the Servicer must maintain the following documentation:

- For one to four family dwellings, an original of the hazard insurance policy, flood insurance policy (if applicable), and any related endorsement(s)
- For properties covered under a blanket PUD or condominium association policy, an original of the blanket policy, any flood insurance policy, and any related endorsement(s)

Microfilm, microfiche, or magnetic media copies of the required policies are acceptable only if they meet the requirements of the **Microfilmed Records** Section of this Servicer Guide.

In lieu of a policy, the Servicer may maintain a certificate or other evidence of insurance showing at least the following information:

- Named insured and mortgagee (named insured association, unit owner, and unit owner mortgagee if a PUD or condominium unit)
- Address of **Mortgaged Premises**
- Type, amount, and effective dates of coverage
- Deductible amount
- Any endorsement or optional coverage obtained and made part of the original policy
- Insurer's agreement to provide at least ten days' prior notice to the mortgagee (or applicable unit owner mortgagee if for a PUD or condominium unit) before any reduction in coverage or cancellation of the policy
- Signature of an authorized representative of the insurer, if required by law

The Policy Declarations page of a National Flood Insurance Program (NFIP) policy is acceptable evidence of flood insurance.

The Servicer must possess a copy of each policy and endorsement for which a certificate or other evidence of insurance is maintained in lieu of the policy or endorsement.

The Servicer must carry mortgage impairment or mortgagee interest insurance if it elects not to maintain the documentation described above. The mortgage impairment or mortgagee interest insurance policy must meet the following requirements:

- Be underwritten by an insurer currently rated B/III, A/II, or better in Best's Insurance Reports and licensed or otherwise authorized by law to conduct business in the jurisdictions where the **Mortgaged Premises** are located
- Provide coverage for the Servicer and/or GMAC-RFC
- Provide coverage in scope and amounts at least equal to those required under the **Eligibility Standards** Section of this Servicer Guide
- Provide for at least 180 days written notice to the Servicer and, if applicable, GMAC-RFC before canceling or terminating the coverage
- Be approved by any regulatory authority to which the Servicer is subject, if such approval is required

In addition to all other remedies of GMAC-RFC provided for in the **Client**/Servicer Contract and this Servicer Guide, the Servicer will indemnify GMAC-RFC for any loss GMAC-RFC sustains due to the Servicer’s failure to verify that the required insurance is in force on the Mortgaged Premises. The Servicer's obligation will in no way be limited to the amount of coverage in force under a mortgage impairment or mortgagee interest insurance policy.

**(C) Insurance Charges**

Premiums for insurance covering the Mortgaged Premises will be paid when due by Borrowers or the Servicer if the Servicer collects **Escrow/Impound** funds for such purposes.

Premiums for insurance obtained by a PUD or condominium owners association for the benefit of the PUD or condominium project will be paid by the association as a common expense assessable to all unit owners.

**(D) Changes in Insurance Requirements**

The Servicer must require the **Borrower** to obtain appropriate insurance coverage in accordance with the terms of the **Security Instrument** when either of the following conditions exist:

- Servicer becomes aware that existing coverage does not adequately protect the **Mortgaged Premises**
- Area where the Mortgaged Premises are located was not subject to flood insurance requirements at inception of the Loan or when GMAC-RFC purchased the Loan, but has now been classified as a Special Flood Hazard Area and the Servicer has become aware of such classification

The Servicer must verify that adequate coverage has been obtained and remains in force. If the Borrower does not obtain such coverage, the Servicer must do so. The Servicer will then adjust the Borrower's **Escrow/Impound** payments accordingly or bill the Borrower to recover the advance if the Servicer does not maintain an Escrow/Impound account for the Borrower. If the Borrower refuses to reimburse the Servicer, the Servicer may recommend acceleration to GMAC-RFC for the Borrower's default under the terms of the Security Instrument.

If the additional coverage cannot be obtained, the Servicer must immediately make appropriate recommendations to GMAC-RFC using the Request for Loan Service Approval **GMAC-RFC Form 2400**.

The Servicer may authorize the **Borrower** to discontinue flood insurance coverage upon verification of map revision or receipt of a Letter of Map Amendment (LOMA) from the Federal Emergency Management Agency (FEMA).

**(E) Insurance Loss Settlements**

Upon notification of loss or damage to the **Mortgaged Premises**, the Servicer will monitor and coordinate the claim process with the **Borrower** and the insurer. On claims exceeding $10,000, the Servicer must be named as loss payee on insurance drafts, must comply with any applicable law and, where applicable, must comply with any requirement of the **Mortgage Insurer**. Details concerning the loss or damage and disposition of the insurance proceeds must be recorded in the Loan file. The Servicer must take appropriate action to:

- Verify the extent of the loss or damage
- Ensure judicious disbursement of insurance proceeds for the necessary repairs
- Protect the priority of the **Security Instrument** by obtaining waivers of materialman's or mechanic's liens
- Document completion of the repairs

The Servicer need not submit a report and related recommendations to GMAC-RFC unless:

- Loan is in foreclosure or the Mortgaged Premises have been acquired through foreclosure or deed-in-lieu of foreclosure
- Mortgaged Premises have suffered a total or near total loss
- Servicer wishes to apply insurance proceeds to the Loan instead of repairing the Mortgaged Premises
- Insurance proceeds exceed the amounts required to restore the Mortgaged Premises to its original condition

**(F) Disaster Losses**

Disaster Declarations

A State's Governor contacts the Federal Emergency Management Administration (FEMA) if the State resolves that its damages justify a presidential declaration. FEMA conducts a Preliminary Damage Assessment (PDA) of the area, joined by the Small Business Administration (SBA), State and local representative. PDA results are sent to the President for a decision and declaration. If damages are less extensive, the Governor may ask for a SBA declaration.

If the President declares the area for Individual Assistance, SBA offers physical and economic injury Loans, at low interest and long term, in declared and/or adjacent counties, in addition to the FEMA grants.

Disaster—General Requirements

When a disaster (earthquake, flood, tornado, civil unrest, act of terrorism, etc.) strikes a declared area containing properties with mortgages serviced for GMAC-RFC which may result in loss, or that have sustained damage, the Servicer must promptly:

- Ascertain the number of Mortgaged Premises in the geographic area that has been declared as a Federal Disaster.
- Identify Second Trust Deeds/Home Equity product in the geographic area that has been declared as a Federal Disaster. Ascertain senior lien and workout status. Coordinate workout options in conjunction with, or in addition to senior lien workout efforts. Comply with GMAC-RFC's requirements as outlined in this Section.
- Ascertain the Loan status and paid-to-date of each affected property, at the time of the disaster. Assist the affected Borrower(s) in filing for any disaster relief aid available, i.e. FEMA, SBA, and State or local agencies. Secure any abandoned or red-tagged properties.
- Coordinate workout options with the benefit of MI, property and supplemental insurance, and/or disaster assistance. GMAC-RFC's Disaster Relief policy includes its standard workout programs and procedures, as well as up to 90 days moratorium, or a possible combination thereof. Refer to Sections **428** to **437** of this Servicer Guide as applicable. The Servicer, at its discretion, may initiate moratorium or suspension of collection, foreclosure, and eviction proceedings for up to 90 days based upon the merits of each case. Suppress credit reporting in accordance with the moratorium.
- Notify the MI Companies when applicable, and consider their requirements.
- Foreclosure, in some cases, may be the only option left. In such cases, the Servicer must conclude that workout solutions, insurance and assistance programs have been exhausted. Determining factors should include Borrower intent and financial feasibility with regard to the subject property. Extraordinary expenses, job impact, extended unemployment, property condition, Value, and uninsured losses must also be taken into consideration.
- If because of property damage or other adverse circumstance, reversion at foreclosure sale would create a possible risk of ownership to GMAC-RFC, the Servicer must obtain approval before initiating or resuming foreclosure, by submitting the recommendation of **GMAC-RFC Form 2400**.
- Notify GMAC-RFC monthly, via Disaster Status Report, of all Loans that are 30 or more days delinquent, have sustained damages, or that are a risk for potential losses. This report shall commence by the 3rd business day of the month following the occurrence of the disaster, and shall continue until all repairs are complete, and/or all affected Loans either reinstate or are liquidated.
- Determine the extent of the damages and potential losses, and ascertain whether all properties are adequately insured, including the existence of flood and earthquake policies if applicable.
- Ensure that the hazard insurance claims are filed and settled promptly. Monitor claims and rehabilitation status.

**Insurance Settlements/Claims**

Contractors may require a Borrower to advance funds to repair damages. If a Borrower asks the Servicer to release hazard, flood, or earthquake insurance proceeds for this cause, the Servicer must first determine if the property can be legally rebuilt. If not, insurance proceeds must be used to reduce the outstanding mortgage debt and/or in compliance with the mortgage instrument, in addition to State and federal regulations. If the property can be legally restored, the Servicer's actions should be based on the status of the mortgage, the amount of insurance proceeds, and the time required to repair the property.

For a property on which the Servicer receives insurance proceeds which exceed the current unpaid principal balance of the Loan, or in the event the Borrower requests all of the insurance proceeds, the Servicer should refer to the **Insurance Loss Settlements** Section and contact its Asset Manager in Servicer Management at GMAC-RFC.

Insurance proceeds held by the Servicer should be deposited into an interest-bearing account for the benefit of the Borrower and repairs. The account must yield an interest equivalent to the interest that Borrower could expect to obtain from a passbook savings or money market account. The depository account must provide for all interest earned on the funds to be credited to the account at least quarterly. The Servicer must pay the accumulated interest to the Borrower at the end of the reconstruction period for the property, unless an earlier disbursement is granted.

When a natural disaster (earthquake, flood, tornado, etc.) results in losses or damages to the **Mortgaged Premises**, the Servicer must promptly:

- Ascertain the number of such Mortgaged Premises
- Determine the extent of the losses or damages
- Secure any abandoned Mortgaged Premises
- Assist the affected Borrowers in filing for any disaster relief aid available (i.e., Federal Emergency Management Act [FEMA], Small Business Administration [SBA], local/**State** agencies, etc.)
- Assist the affected Borrowers through counseling and any appropriate repayment plan as provided under the **Borrower Relief Program Options** Section of this Servicer Guide contingent upon receipt of proof of damages and proof of request for disaster relief aid
- Notify GMAC-RFC and make appropriate recommendations on the Request for Loan Service Approval **GMAC-RFC Form 2400**
- Monitor property rehabilitation efforts and advise GMAC-RFC at the completion of the work

For properties on which the Servicer receives insurance proceeds which exceed the current unpaid principal balance of an affected mortgage, the Servicer should issue the **Borrower** a check for the difference between the amount of the insurance loss draft and the current unpaid principal balance of the Borrower's Loan.

In some cases, a Borrower may ask the Servicer for all of the insurance proceeds, or more than the difference between the Loan amount and the loss draft amount, because he or she believes that the land on which the Mortgaged Premises were built will have an appraised Value that is more than adequate collateral for the Borrower's mortgage. When a Servicer receives such a request, it should contact GMAC-RFC's Servicer Management Department in Burbank to discuss whether GMAC-RFC is willing to authorize the release of additional insurance proceeds and if so, the necessary requirements for GMAC-RFC to do so.

The Servicer should then deposit the remaining funds in an interest-bearing account for the **Borrower**'s benefit. The account must yield an amount of interest that is equivalent to the interest that the Borrower could expect to obtain from a passbook savings account or a money market account. The depository account must provide for all interest earned on the funds to be credited to the account at least quarterly. The Servicer must pay the accumulated interest to the Borrower at the end of the reconstruction period for the property, unless the Borrower requests an earlier disbursement.

## 414

### Hazard Insurance

#### (A) Amount

At a minimum, the **Mortgaged Premises** must be protected against loss or damage from fire and other perils covered within the scope of standard extended coverage. The hazard coverage amount must equal the lesser of:

- 100% of the insurable Value of the improvements as established by the property insurer OR
- The unpaid principal balance of the first mortgage and the Home Equity or 125 Loan amounts, as long as it equals the minimum amount—80% of the insurable Value of the improvements required to compensate for damage or loss on a replacement cost basis

For negatively amortizing Loans, the hazard insurance coverage must be either 100% of the insurable Value of the improvements as established by the property insurer or the highest outstanding balance permitted under the **Loan Program**.

The Servicer must ensure that the Mortgaged Premises are adequately covered even when vacant, and if necessary must obtain a vacancy permit endorsement from the carrier.

#### (B) Deductible

Unless State law requires a higher deductible, hazard and wind loss deductibles up to 5% of the face amount of the insurance policy are acceptable for all property types.

**(C) Carrier**

The policy must be underwritten by a company licensed to do business in the **State** in which the Mortgaged Premises are located. In addition, one of the following must apply:

- The company is currently rated B/III, A/II, or better in Best's Insurance Reports **http://www.ambest.com**; or
- The company is currently rated A or better by DEMOTECH, Inc. **http://www.demotech.com**; or
- The company has a minimum financial strength rating of BBB by Standard & Poor's **http://www.standardandpoors.com**; or
- The coverage is underwritten under Fair Access to Insurance Requirements (FAIR); or
- The coverage is underwritten under beach and windstorm plan.

**(D) Mortgage Clause; Endorsement**

Each hazard insurance policy must contain or have attached the standard mortgage clause or commonly accepted by private institutional mortgage investors in the area where the **Mortgaged Premises** are located. The mortgage clause must provide that the insurance carrier notify the named Servicer at least ten days before the effective date of any termination, reduction or cancellation of the policy.

The mortgage clause of each insurance policy must be properly endorsed, necessary notices of transfer must be given, and any other necessary action must be taken as reasonably requested by GMAC-RFC, in order to protect the interest of GMAC-RFC as first mortgagee under the terms of the policy and applicable law. When permissible, the Servicer should cause the insurance carrier to name the Servicer, "and its successors and assigns," as the first mortgagee under the mortgage clause instead of GMAC-RFC. In deeds-of-trust jurisdictions, where permissible, the "[name of Servicer], its successors and assigns, beneficiary" or "[name of trustee], its successors and assigns for benefit of [name of Servicer]" must be used instead of the name of the trustee only.

If the mortgage is registered with Mortgage Electronic Registration Systems, Inc. (MERS) and is originated naming MERS as the original mortgagee of record, under no circumstances may MERS be named as loss payee on any hazard insurance policy.

Regardless of how the mortgage clause is endorsed, the Servicer must cause all insurance drafts, notices, policies, invoices, and all other similar documents to be delivered directly to the Servicer. The Servicer shall not have complied with this requirement if the Servicer's actions cause the insurance documents to be delivered to GMAC-RFC. GMAC-RFC will not be responsible for insurance documents received due to the Servicer's failure to indicate to the insurance company the Servicer's correct name and/or address (i.e. notice of cancellation, reduction or termination of the policy). If the Servicer must name GMAC-RFC as the mortgagee, the Servicer must use its own address in the endorsements instead of the address of GMAC-RFC, as in the example following:

XYZ Mortgage Company
as Servicer for GMAC-RFC, its Successors and Assigns
123 Center Street
Anytown, Maryland 20816

## 415

### Flood Insurance

If the area where the **Mortgaged Premises** are located has been identified by the Secretary of **HUD** or the Director of the Federal Emergency Management Agency (FEMA) as a Special Flood Hazard Area (SFHA), the Servicer must ensure that flood insurance is maintained as long as the mortgage is in force. Flood insurance is required if any part of the principal structure is located within an SFHA. Flood insurance on detached buildings located within an SFHA is required if they serve as part of the security for the mortgage. The insurance must provide coverage at least equivalent to that provided under the National Flood Insurance Program (NFIP) in the amount specified in this Section.

**(A) Amount**

Building coverage for 1-4 unit properties or similar residential properties within a PUD must be maintained at a minimum amount to the least of the following:

- 100% of the replacement cost of the dwelling
- Maximum insurance available from the NFIP
- Unpaid principal balance of the mortgage

**(B) Deductible**

Unless State law requires a higher deductible, flood insurance deductibles of up to the current National Flood Insurance Program (NFIP) policy maximum are acceptable (currently $5,000 for 1-4 unit properties and $25,000 for condominium and PUD projects).

**(C) Mortgage Clause**

Any flood insurance policy must contain the standard mortgage clause as described in the **Hazard Insurance** Section of this Servicer Guide.

**(D) Private Flood Insurance**

Private flood insurance is acceptable for Loans in the Coastal Barrier Resources System (CBRS) or Otherwise Protected Area (OPA), as defined by the Coastal Barrier Resources Act. These are zones in flood hazard areas that are ineligible for Federal Flood Insurance. Deductible amounts for private flood insurance policies must be no greater than current NFIP maximums based on the property type (currently $5,000 for 1-4 unit properties and $25,000 for condominium and PUD projects).

**(E) Monitoring Requirements**

The Servicer must review and monitor all Loans which it services for GMAC-RFC to identify flood insurance requirements, policy expirations, flood map revisions and community status changes. In addition, the Servicer must make a formal determination of the flood-risk status of the **Mortgaged Premises** each time the terms of the Loan are modified. The Servicer may monitor the remappings itself or may use a flood zone determination company to perform the monitoring. If the Servicer determines at any time during the term of a Loan that a property without flood insurance is located in an SFHA and the community in which the property is located is participating in the NFIP, the Servicer must notify the **Borrower** of the need to purchase flood insurance. The flood insurance policy must be in place within 120 days after the effective date of the remapping. If the Borrower does not purchase the insurance within 45 days of notification by the Servicer, the Servicer must purchase the flood insurance itself and may charge the Borrower for premiums and fees.

If the property is located in a non-participating community, the Servicer should assist the Borrower in obtaining flood insurance from a private insurer. If acceptable coverage cannot be obtained, the Servicer must contact GMAC-RFC to determine what course of action to follow. If the Servicer determines at any time during the term of a Loan that a property with flood insurance is no longer located in an SFHA, the Servicer must notify the Borrower that flood insurance is no longer required by the lender.

Flood insurance requirements for single-family properties apply to similar residential properties within a PUD.

## 416

### Mortgage Insurance

If primary mortgage insurance was required at Loan origination the Servicer must maintain a mortgage insurance commitment or certificate from a **Mortgage Insurer** that is acceptable to GMAC-RFC on the funding date or **Substitution Date**. To be an acceptable primary Mortgage Insurer, the insurer must have, at a minimum, a claims paying ability acceptable to Standard and Poor's Corporation for “AA”-rated mortgage pass-through certificates and to Moody's Investors Service for “Aa”-rated mortgage pass-through certificates. The primary Mortgage Insurers currently meeting these requirements are listed on Acceptable Primary Mortgage Insurers **GMAC-RFC Form 2402**. It is the Servicer's responsibility to monitor the ratings of the Mortgage Insurers.

In the event the ratings are downgraded prior to the funding date or **Substitution Date**, the Servicer must obtain mortgage insurance from another **Mortgage Insurer** listed on Acceptable Primary Mortgage Insurers **GMAC-RFC Form 2402** who meets the claims-paying ability requirement of GMAC-RFC. An **Escrow/Impound** account must be established at closing for monthly payment of future premiums, unless a single premium was paid in full at closing. Mortgage insurance premiums may not be included in the Note rate. For further mortgage insurance requirements, see the Loan Programs Chapter of the **Client Guide**.

**(A) Lender Paid Mortgage Insurance**

Servicers must pay each renewal premium when it becomes due. These premiums are the corporate responsibilities of Servicers regardless of the receipt of payments from Borrowers. Servicers may not deposit these funds in a GMAC-RFC custodial account unless specifically authorized by GMAC-RFC.

Servicers must keep the mortgage insurance coverage in effect for the entire life of the Loan. Provisions defined in this Mortgage Insurance Section and in the **Client Guide** regarding cancellation of coverage do not apply. Servicers may retain any premium refund they receive in connection with a policy cancellation resulting from a full payoff of the mortgage Loan.

The **Client** agrees that if the servicing of an Amerin-insured mortgage is transferred, the Client will provide the new Servicer with a list of all Amerin-insured mortgages that are included in the portfolio being transferred (identifying the applicable premium renewal rate).

**(B) Primary Mortgage Insurance Cancellation**

Typically, mortgage insurance may not be cancelled until the **Loan-to-Value** (LTV) reaches the level required under the terms and conditions of the applicable **Loan Program** at the time the Loan was purchased by GMAC-RFC. Where federal or **State** law requires it, either for automatic cancellation or **Borrower**-requested cancellation, the Servicer must allow for the cancellation of Borrower-paid mortgage insurance when the conditions as set forth in the law are met.

For Loans with lender-paid mortgage insurance, the insurance coverage may not be canceled and must remain in full force and effect until the Loan is paid in full.

**(C) Cancellation: Original Borrower**

The Homeowners Protection Act of 1998 mandates the cancellation of Borrower-paid mortgage insurance for Loans originated after July 28, 1999, provided certain conditions are met. For Borrower's principal residence, the Act requires that if a Borrower does not request cancellation at 80% Loan-to-Value (LTV), the lender must automatically terminate the mortgage insurance when the LTV ratio is first scheduled to reach 78% or at the midpoint of the Loan term, which ever occurs first. For Loans not covered by the Act, and if the **Borrower** so requests, mortgage insurance must be cancelled if all of the following conditions are met:

- Two years have elapsed since the origination of the Mortgage
- The unpaid principal balance of the Loan has been reduced to the LTV (CLTV in the case of a Junior Lien) required under the Loan Programs Chapter of the **Client Guide** at the time the Loan was purchased by GMAC-RFC, where Value is:
  - Based upon the original appraised Value of the property, and the Servicer represents that the current Value of the mortgage premises is at least equal to the original appraised Value
  - Based upon a current appraised Value (ordered by the Servicer from their approved appraiser list and paid for by the **Borrower**). The applicable appraisal form must be used and it must have been performed within 60 days of the request for cancellation of the mortgage insurance. Under certain circumstances, (based upon the structure of the pool a Loan may be in), it may not be possible to cancel mortgage insurance on an individual Loan where a new appraisal is used as the

basis of determining the current LTV. **The Servicer must contact GMAC-RFC's Servicer Management Department in Burbank, California to obtain written authorization to use a new appraisal to determine current market Value. No additional approval to waive mortgage insurance is required if the above conditions are met.**

- A Borrower must be current at the time the cancellation is requested. The Borrower must have made the mortgage payment due for the month preceding the date of the cancellation request.
- A Borrower must satisfy the payment history requirements which are: No payment 30 days or more past due in the past 12 months and no payment 60 days or more past due in the past 24 months, as of the date that is the later of (1) the date that the balance is scheduled to reach (or actually reaches) 80% of the original property Value or (2) the date the Borrower actually requests the cancellation.
- There was no other default under the terms of the Loan at any time during the same 12-month period

Note: See **MI Cancellation/Termination Notice Requirement** Section of this Servicer Guide for notice requirements.

**(D) Cancellation: Transfer of Ownership**

If the transferee so requests and all of the conditions below are met, mortgage insurance must be canceled following an authorized Transfer of Ownership of the **Mortgaged Premises**.

- The unpaid principal balance of the Loan has been reduced to the LTV ratio required under the Loan Programs Chapter of the **Client Guide** at the time the Loan was purchased by GMAC-RFC, where Value is:
  - Lesser of the purchase price at transfer or the appraised Value at transfer as estimated by a Servicer-approved appraiser
  - If the Mortgaged Premises were not reappraised at the time of transfer or there are indications that the Value of the Mortgaged Premises has declined since then, the lesser of the purchase price at transfer or the Value of the Mortgaged Premises as estimated by a Servicer-approved appraiser, using the applicable appraisal form, within 60 days of the request for cancellation of insurance
- The transferee's monthly installment of principal, interest and **Escrow/Impound** was never more than 30 days past due for the 12 months preceding the date insurance cancellation is requested

  This satisfactory payment record requirement is not applicable if insurance cancellation is requested at the time of transfer. A shorter period of satisfactory payments is acceptable if it is shorter than the period between the transfer date and the date insurance cancellation is requested
- There was no other default under the terms of the Loan at any time during the applicable period stated above, provided that this requirement is not applicable if insurance cancellation is requested at the time of transfer

Note: See **MI Cancellation/Termination Notice Requirement** Section of this Servicer Guide for notice requirements.

**(E) Cancellation: Appraisal Fee**

Any applicable appraisal fee incurred to determine the appropriateness of mortgage insurance cancellation may be charged to the **Borrower**.

**(F) Cancellation: Adjustment and Notice**

Upon cancellation of mortgage insurance:

- Collection of related premiums must be discontinued
- Necessary adjustments to the Borrower's **Escrow/Impound** account and the Escrow/Impound portion of the monthly installment amount must be made
- Borrower must be advised, in writing, of all such adjustments

**(G) Cancellation: Disclosure of Terms and Conditions**

The Servicer must confirm that the terms and conditions that must be met prior to the primary mortgage insurance being eligible for cancellation have been disclosed in writing to the Borrower. A copy of this disclosure must be retained in the Loan file as a permanent record in order to ensure adherence to the mortgage insurance requirements in effect at the time the Loan was purchased by GMAC-RFC.

**(H) MI Cancellation/Termination Notice Requirement**

Although the cancellation/termination process does not normally require an approval from GMAC-RFC, the Servicer is required to report the cancellation/termination of mortgage insurance to GMAC-RFC within five Business Days of the occurrence. The Servicer should forward the notification to its assigned Asset Manager at GMAC-RFC Servicer Management in Burbank, using the Multipurpose Loan Service Report **GMAC-RFC Form 2401**. In addition, send an email to BUR-MICANCEL@gmacrfc.com

## 417

## Condominium Insurance

With respect to any Loan serviced for GMAC-RFC that is secured by a unit in a condominium, the Servicer must make sure there is in the Loan file written evidence that the scope and amount of insurance coverage meets or exceeds the minimum requirements of all local laws, ordinances and regulations covering condominiums and that, in addition, the following minimum requirements for insurance coverage are satisfied.

**(A) Scope of Coverage**

A multiperil type of policy is required covering the entire condominium project. This policy must provide, at a minimum, fire and extended coverage and all other coverage in the kinds and amounts commonly required by private institutional mortgage investors for projects similar in construction, location, and use. Coverage must be on a replacement cost basis for at least 100% of the insurable Value based on replacement cost.

**(B) Special Flood Hazard Insurance**

If the condominium project is in an area identified by the Secretary of **HUD** as having special flood hazards, a "blanket" policy of flood insurance must be maintained on the condominium project in the amount of the aggregate of the outstanding principal balances of the mortgages on the condominium units, or the maximum limit of coverage available under the National Flood Insurance Act of 1968, as amended, whichever is less.

**(C) Name of Insured**

The name of the insured stated under each required policy must be similar in form and substance to the following:

> "Association of Owners of the [Name of Condominium] for use and benefit of the individual owners" (designated by name, if required).

**(D) Mortgage Clause**

Each policy must contain the standard mortgage clause endorsed to provide that any proceeds will be paid to the association of owners of the condominium for the use and benefit of mortgagees as their interest may appear, or otherwise endorsed to fully protect the interest of GMAC-RFC.

When a mortgage clause is not applicable, a certificate of insurance must be obtained by the Servicer. This certificate must contain the information required for certificates that is set forth in the **Evidence of Insurance** Section of this Servicer Guide. The certificate must name the Servicer as the certificate holder instead of mortgagee.

**(E) Fidelity Insurance**

The condominium owners' association must have fidelity coverage against dishonest acts on the part of directors, managers, trustees, employees, or volunteers responsible for handling funds belonging to or administered by the condominium owners association. The fidelity bond or insurance must name the condominium owners' association as the insured. The coverage must equal the maximum amount of funds held by the condominium owners' association at any one time and must total at least three months of assessments on the entire project, plus reserves. An appropriate endorsement to the policy to cover any persons who serve without compensation must be added if the policy would not otherwise cover volunteers.

**(F) Public Liability Insurance**

The condominium owners' association must have a comprehensive policy of public liability insurance covering all of the common elements, commercial spaces, and public ways in the condominium project. The insurance policy must contain a severability-of-interest endorsement precluding the insurer from denying the claim of a condominium unit owner because of negligent acts of the condominium owners' association or other unit owners. Coverage must include all other coverage in the kinds and amounts required by private institutional mortgage investors for projects similar in construction, location, and use. Liability coverage must be for at least $1 million per occurrence for personal injury and/or property damage.

## 418

### PUD Insurance

#### (A) General Requirements

Except as provided in the following Subsections, all coverage in the kinds and amounts required for Loans under this Servicer Guide is also required for Loans secured by Planned Unit Development (PUD) and *de minimus* PUD units.

#### (B) Blanket Insurance Coverage

In lieu of maintaining an individual hazard insurance policy on each PUD unit, the PUD corporation, homeowners' association, or trust may maintain blanket hazard insurance providing, at a minimum, fire and extended coverage and all other coverage in the kinds and amounts commonly required by private institutional mortgage investors for developments similar in construction, location, and use. The coverage must be in an amount equal to the full replacement Value of all of the PUD units without deduction for depreciation or coinsurance, including the structural portions and fixtures owned by the PUD unit owners. Insurance premiums from any blanket insurance coverage must be a common expense of the PUD corporation, homeowners' association, or trust and be included in the regular common assessments of the PUD unit owners. The coverage must name the PUD corporation, homeowners' association, or trust as the insured for the benefit of the PUD unit owners.

#### (C) Common Property Coverage

The PUD corporation, homeowners' association, or trust must have fire and extended coverage for at least 100% of the replacement cost of the insurable PUD common property. The insurance must name the PUD corporation, homeowners' association, or trust as the insured for the benefit of the PUD unit owners. No mortgage clause in favor of the PUD unit owners is required by GMAC-RFC on insurance covering common property.

#### (D) Fidelity Insurance

The PUD corporation, homeowners' association, or trust must have fidelity insurance covering losses resulting from dishonest or fraudulent acts on the part of directors, managers, trustees, employees, or volunteers responsible for handling funds collected and held for the benefit of the PUD unit owners. The fidelity bond or insurance must name the PUD corporation, homeowners' association, or trust as the insured. The coverage must equal the maximum amount of funds held by the homeowners' association at any one time and must total at least three months of assessments on the entire project, plus reserves. An appropriate endorsement to the policy to cover any persons who serve without compensation must be added if the policy would not otherwise cover volunteers.

This Subsection does not apply to *de minimus* PUDs.

**(E) Public Liability Insurance**

The PUD corporation, homeowners' association, or trust must have a comprehensive policy of public liability insurance covering all of the PUD common property. The insurance policy must contain a severability-of-interest clause or endorsement precluding the insurer from denying the claim of a PUD unit owner because of negligent acts of the PUD corporation, homeowners' association, trust, or other unit owners. Coverage must include all other coverage in the kinds and amounts commonly required by private institutional mortgage investors for projects similar in construction, location, and use. Liability coverage must be for at least $1 million per occurrence for personal injury and/or property damage.

**(F) Mortgage Clause**

Each policy must contain the standard mortgage clause endorsed to provide that any proceeds will be paid to the [Name of PUD corporation, homeowners' association or trust] for the use and benefit of mortgagees as their interest may appear, or otherwise endorsed to fully protect the interest of GMAC-RFC.

When a mortgage clause is not applicable, a certificate of insurance must be obtained by the Servicer. This certificate must contain the information required for certificates that is set forth in the **Evidence of Insurance** Section of this Servicer Guide. The certificate must name the Servicer as the certificate holder instead of mortgagee.

## 419

### Delinquencies

**(A) General**

The servicing requirements for delinquent Loans, as detailed within this Section, are the minimum servicing requirements to which all Servicers must adhere. Servicers are expected to use collection procedures that meet or exceed these requirements and result in efficient and adequate follow-up to and/or resolution of delinquent Loans.

The Servicer's staff must be sufficiently skilled in financial counseling and mortgage servicing techniques to assist Borrowers in bringing their Loans current and protecting their equity and credit reputation, while also protecting the interests of GMAC-RFC. The emphasis of all collection efforts must be to mitigate losses whenever possible and resolve Loan delinquencies in the shortest possible time.

Two-way verbal communication is essential with delinquent Borrowers to discover the reason for the **Delinquency**, to obtain a definite **Commitment** from the **Borrower** to bring the Loan to a current status, and to identify and solicit loss mitigation opportunities at the earliest stage of the Delinquency. If the Loan cannot be brought current immediately, and the Borrower's circumstances and record justify it, the Servicer must attempt to cure the Delinquency in the shortest period possible by using the relief provisions discussed in the Sections that follow.

**(B) Collection Techniques**

Servicing of a delinquent mortgage must be based upon personal contact, both by telephone and face-to-face interviews with a **Borrower**. Form letters and notices, while having a place in any servicing program, generally are not as effective as personal contact and must not be used exclusively. The Servicer must document all contact with the Borrower.

The Servicer's techniques must include the use of:

- Telephone contact
- Face-to-face interviews
- Notices
- Letters
- Other responsible collection/loss mitigation techniques used by prudent mortgage Servicers

(1) Personal Contacts with the Borrower

Face-to-face and telephone discussions with the Borrower must result in the Servicer's making:

- Determination of the cause of the **Delinquency**
- Evaluation of whether the cause is temporary
- Determination of the intent of the Borrower toward repayment of the debt
- Determination of the Borrower's ability to repay the debt
- Determination of the Borrower's intent to keep the property
- Attempt to obtain a definite **Commitment** from the Borrower to bring the Loan current and/or Commitment from the Borrower to provide information needed to determine if additional alternatives are available

If telephone contact does not produce satisfactory arrangements to bring the Loan current, a face-to-face interview with the **Borrower** must be conducted between the 45th and the 60th day of Delinquency. This is generally accomplished through full-contact property inspection if the property is not located in close proximity to the Servicer's office.

The Servicer must treat each **Delinquency** individually by varying the collection techniques to fit the individual circumstances. The Servicer must avoid establishing a fixed routine. This practice is particularly ineffective when dealing with chronically delinquent Borrowers. All collection efforts must be based on the extent of the Delinquency and the Servicer's knowledge of the following factors:

- Borrower's prior payment history
- Borrower's credit history
- Borrower's current employment situation
- Borrower's reason(s) for default
- Borrower's willingness and ability to repay the debt
- **Mortgaged Premises**' condition
- Mortgaged Premises' occupancy status

**For a Junior Lien, collection efforts must also be based on the status and unpaid principal balance of any debt secured by a superior lien.**

(2) Collection Records

The Servicer must maintain adequate records of all collection efforts and make the records available to GMAC-RFC upon request. At a minimum, the records must evidence:

- Results of all communication(s) with the **Borrower**, including reason(s) for Delinquency; when/how payment(s) will be made to cure Delinquency (i.e., amounts, dates, etc.); and time and destination of any telephone calls
- Dates and results of personal contacts
- Dates that letters and notices were mailed
- Documentation of property inspections as required in the **Interview with Borrower; Property Inspection** Section of this Servicer Guide
- Updated Borrower information (i.e. telephone numbers, current employer, etc.)

Notwithstanding the above provisions, developing and maintaining a satisfactory servicing program is the Servicer's full responsibility. The Servicer's continued eligibility to service Loans for GMAC-RFC is contingent on the Servicer's maintaining **Delinquency** rates that are acceptable to GMAC-RFC. GMAC-RFC may disqualify or suspend a Servicer if the Servicer's 30-, 60-or 90+ day Delinquency, foreclosure, or **Real Estate Owned (REO)** rates for first Loans or **Home Equity Loan/Second Mortgage Loan**s are more than 50% higher than the average 30-, 60- or 90+ day Delinquency, foreclosure or REO rates of all first Loans or Home Equity Loan/Second Mortgage Loans owned by GMAC-RFC in the same geographical area in which the **Mortgaged Premises** that secure the Loans serviced by the Servicer are located.

## 420

## Application of Buydown Funds

### (A) During Delinquency

Application of buydown funds must be made pursuant to the buydown agreement which complies with the **Temporary Buydown** Section of the **Client Guide**. The Servicer must exercise rights on behalf of GMAC-RFC to take possession of and apply the buydown funds upon foreclosure to satisfy all or a portion of the unpaid principal balance and the accrued interest on the Loan without the consent of the **Borrower**.

### (B) In the Event of a Full Payment

Application of buydown funds must be made pursuant to the Temporary Buydown agreement which complies with the **Temporary Buydown** Section of the **Client Guide**.

In the event the Loan was purchased by GMAC-RFC at a premium and the buydown account was funded using all or a part of the premium, the Servicer must exercise rights on behalf of GMAC-RFC to take possession of and return any remaining buydown funds to GMAC-RFC without the consent of the Borrower.

## 421

### Delinquency Servicing Requirements

For purposes of this Servicer Guide a Loan shall be considered to be non-conforming if it exceeds the maximum original Loan amount for home mortgage purchase set by **Fannie Mae** or **Freddie Mac**. Minimum collection standards set forth below in Sections (b1) and (b2) pertain to conforming and non-conforming Loan amounts.

**(A) Delinquent New Borrowers**

The Servicer must pay special attention to any **Borrower** whose Loan has become delinquent within the first six months of the Loan's origination date.

To determine a pattern of chronic Delinquency, the Servicer must:

- Establish personal contact with a delinquent New Borrower between the 5th and 15th day of Delinquency
- Determine the cause of Delinquency, actual and/or transfer-of-servicing related
- Educate the Borrower on the importance of making each monthly payment on or before the **Due Date**

**(B) Minimum Servicing Activities During Delinquency**

(1) Non-Conforming Loans

The Servicer must, at a minimum, perform the following during the first 30 days of Delinquency for a non-conforming Loan:

- Identify a delinquent Loan by the 10th day of Delinquency
- Initiate telephone contact by the 10th day of **Delinquency** and issue a reminder notice if no contact is made. Continue attempts to contact the **Borrower** by telephone until satisfactory arrangements to cure the Delinquency are agreed upon
- Mail a late charge notice by the 16th day of Delinquency

Note: The use of recorded collection messages on an automated dialing system for any non-conforming Loan sold to GMAC-RFC is prohibited.

If satisfactory arrangements are not agreed upon to bring a non-conforming Loan current by the 30th day of **Delinquency**, the Servicer must attempt to conduct a face-to-face interview with the **Borrower**.

Servicers that have software applications which review Borrower payment habits may use such applications to schedule Borrower collection calls. A minimum of three months' payment history is required.

Beyond that point, if satisfactory arrangements have not been made, the Servicer must continue to follow-up with notices, letters, telephone contact, face-to-face interviews, etc., until the Loan has been brought current or until the Servicer determines that a recommendation for foreclosure or submission-to-start foreclosure or other action is appropriate.

The notice of intent to foreclose must be sent no later than the Borrower missing their third payment. Upon determination that a Loan is insoluble and a repayment plan or other relief program is not an option, the Servicer should immediately mail the notice of intent to foreclose. For those states that require additional notification, it is the Servicer's responsibility to insure that the appropriate requirements are met in addition to GMAC-RFC’s minimum servicing requirements.

The following chart lists the minimum collection efforts that must be made in an attempt to bring a delinquent Loan current.

| Days After Due Date | Action Required |
|---|---|
| 5-10 | Initiate telephone contact with each delinquent Borrower and issue reminder notices if no contact is made. |
| 16-18 | Mail late notices to Borrower. |
| 16-30 | Continue telephone contact with each delinquent Borrower. |
| 31-65 | Mail notice of intent to foreclose and necessary additional notification. |
| 46-59 | Conduct a property inspection and face-to-face interview if no arrangements have already been made to bring the Loan current. |
| 60-90 | Refer Loan to initiate foreclosure. |

(2) Conforming First Mortgage Loans

For conforming first mortgage Loans, the Servicer must:

- Be readily available to the **Borrower** to offer financial counseling and advice
- Make personal contact with the Borrower as often as necessary to promptly cure the **Delinquency**

The following chart lists the minimum collection efforts that must be made in an attempt to bring a delinquent Loan current.

| Days After Due Date | Action Required |
|---|---|
| 5-15 | Identify Borrowers having delinquencies within the first three months of Loan origination, and make personal contact with each Borrower. |
| 15 | Identify each delinquent Borrower. |
| 16-18 | Mail late notices to Borrower. |
| 16-30 | Initiate telephone contact with each delinquent Borrower. |
| 31-65 | Mail notice of intent to foreclose and necessary additional notification. |
| 46-59 | Conduct a property inspection and face-to-face interview if no arrangements have already been made to bring the Loan current. |
| 60-90 | Refer Loan to initiate foreclosure. |

Servicers that have software applications which review Borrower payment habits may use such applications to schedule Borrower collection calls during the step described above, under "16-30 Days After Due Date." A minimum of three months of payment history is required.

If satisfactory arrangements to cure a Delinquency have not been attained, the Servicer must continue to follow up with notices, letters, telephone contacts, face-to-face interviews, etc., until the Loan has been brought current or until the Servicer determines that a recommendation for foreclosure or submission-to-start foreclosure or other action is appropriate. The notice of intent to foreclose must be mailed on or before the 45th day of **Delinquency** if collection efforts have been unsuccessful.

## 422

### Interview with Borrower; Property Inspection

If the Servicer is unable to establish satisfactory arrangements to bring any Loan current or if a repayment plan agreed to by the Borrower is breached, the **Mortgaged Premises** must be inspected to determine the physical condition and occupancy status of the Mortgaged Premises before further servicing action is taken or recommended.

Provisions in the preceding Section, **Minimum Servicing Activities During Delinquency**, require the Servicer of a delinquent first mortgage to inspect the security property between the 46th and 59th days of delinquency. Additional inspections are then required as often as necessary to protect our interests. With the increased emphasis on early Borrower contact to arrange a repayment plan or other loss mitigation alternative, the Servicer generally is able to gain knowledge about the condition of the property without ordering an actual property inspection. We have therefore eliminated our requirement that the Servicer inspect the property between the 46th to 59th days of delinquency, as long as the Servicer has made contact with the Borrower and is working with the Borrower to resolve the delinquency. No property inspection will be required unless the Servicer is unable to finalize some type of relief or loss mitigation alternative. If the Servicer has been unable to contact the Borrower or the contact with the Borrower indicates that he or she has a disregard for the mortgage obligation, the Servicer must inspect the property by the 59th day of delinquency and thereafter as often as necessary to protect our interests.

The Servicer must continue to inspect the property before deciding to initiate foreclosure proceedings and thereafter every 30 days. If the Servicer has entered into a repayment plan with the Borrower and the plan is being maintained, no property inspection will be necessary as stated above. The Servicer must inspect the property if the Borrower defaults on a repayment plan or if the Servicer becomes aware of vandalism or Borrower's abandonment of the property.

If the Borrower is chronically delinquent, i.e., skipping one or two payments and then bringing the mortgage current, the Servicer may forego the required initial property inspection for each separate delinquency period provided the Servicer has no reason to believe that the property has been abandoned and that previous inspections did not reveal any evidence of vandalism or the probability for it. The Servicer should inspect the property as often as necessary to protect our interests, but at least once in each six-month period that this type of payment pattern continues.

**(A) Inspection Dates**

A property inspection must be made before the 60th day of **Delinquency** and again every month thereafter until satisfactory repayment arrangements have been made.

**(B) Drive-by Inspections**

In most cases, GMAC-RFC does not consider drive-by property inspections to be sufficient. However, there may be circumstances (such as personal danger to the inspector) or legal constraints (such as bankruptcy) under which a drive-by inspection would be appropriate.

Each property inspection must be documented by an inspection report prepared on the 1-4 Family Property Servicing Inspection Report **GMAC-RFC Form 2403**. The Servicer may use its own form or a form prepared by the inspection company performing the inspection, including a computer-generated form, provided that the form allows the Servicer to record and report, at a minimum, the information requested in **GMAC-RFC Form 2403**.

All required inspections must be performed at the Servicer's expense.

**(C) Abandonment or Waste**

If the Servicer learns that the Mortgaged Premises have been abandoned or are in a severe state of deterioration, waste, or disrepair, the Servicer must take action as described in the **Adverse Matters: Abandonment** Section of this Servicer Guide to protect the Mortgaged Premises.

## 423

### Adverse Matters: Abandonment

In the event the Servicer determines that the **Mortgaged Premises** have been abandoned by the **Borrower**, the Servicer must attempt to locate the Borrower and ascertain the reason for the abandonment. The Servicer must take all actions necessary to protect the Mortgaged Premises from waste, damage, and vandalism. The Servicer must report the full results of the investigation via the 1-4 Family Property Servicing Inspection Report **GMAC-RFC Form 2403**. At that time, the Servicer must make a recommendation regarding any actions that should be taken. In addition, the Servicer must provide to the IRS and the Borrower IRS Form 1099-A, Acquisition or Abandonment of Secured Property, required under the Internal Revenue Code (for IRS filing requirements see the **Reporting to the Internal Revenue Service (IRS)** Section of this Guide).

For direction when those conditions exist, refer to **Notice of Liens, Vacancy, Waste, Etc.** Section of this Guide.

## 424

### Property Seizures

Under various federal and **State** laws, a federal, State or local law enforcement agency may, under certain circumstances, seize, and cause to be forfeited, real property which is obtained with the proceeds of activities or which is used to facilitate activities committed in violation of federal, State or local drug laws. These different laws commonly provide some avenue of relief from forfeiture for a Loan that can prove it is an "innocent owner" (or "innocent lien holder").

An important course of action in protecting the mortgagee's "innocent owner" status is to communicate promptly and cooperatively with law enforcement agencies in accordance with the following guidelines:

**(A) Client/Servicer's Contact with Law Enforcement Agencies**

To handle the sensitive area of mortgagee-law enforcement agency cooperation properly and maximize mutual benefits from such cooperation, the Servicer should limit contacts with or from law enforcement agencies to designated management-level employees. All employees of the Servicer should be alerted to channel to the appropriate designees all unsolicited information, government notices, and government or other third-party inquiries related to possible violations of drug laws.

**(B) Documentation**

The Servicer must:

- Maintain complete, detailed, and accurate records of:
  - All information received, relayed, or reported, including (where applicable) the names of all contacting and contacted parties
  - All actions taken by the Servicer
  - Dates of all contacts and actions
- Confirm in writing all telephone communications with GMAC-RFC and appropriate law enforcement agencies
- Deliver the original Loan file to GMAC-RFC when requested

**(C) Applicability of Requirements**

The requirements in this Section address forfeitures arising out of drug-related activities. However, all of these requirements also extend to the **Client**/Servicer's and/or GMAC-RFC's response to government seizure and forfeiture of the **Mortgaged Premises** for the **Borrower**'s violation of any other laws.

**(D) Reporting Pre-Seizure Information when not Responding to Government Inquiry**

The Servicer must relay the following information to the asset forfeiture team in the Drug Enforcement Administration (DEA) office nearest to the location of the Mortgaged Premises, without verifying or passing judgment on its source or veracity:

- Unsolicited information received by the Servicer from any party (other than a law enforcement official) regarding a possible connection between alleged or suspected drug transactions and the Loan or the Mortgaged Premises, and/or
- Visual observations of suspected drug transactions by any party on the Mortgaged Premises as reported to the Servicer by an employee or a contractor of the Servicer while on a routine inspection of the Mortgaged Premises

If quality control reviews initiated by the Servicer fail to verify or reconcile the employment, income, or source funds used to qualify a **Borrower** for the applicable Loan, GMAC-RFC may provide, or instruct the Servicer to provide, relevant information to the DEA.

File information on the Borrower or the Loan may be disclosed to the DEA only in accordance with applicable law, including the Right to Financial Privacy Act (RFPA).

(1) Reporting Information

Within five **Business Day**s after the Servicer's receipt of information resulting in the need to notify the DEA, the Servicer must report the information in writing to the DEA (the mailing address of the applicable DEA office can be obtained by calling the DEA number found in the "United States Government" listings of the telephone directory for the major city near the location of the **Mortgaged Premises**, or obtained from directory assistance in that city). At the same time that it sends a written report to the DEA, the Servicer must send a copy of that report to GMAC-RFC's Servicer Management Department in Burbank under cover of the Multipurpose Loan Service Report **GMAC-RFC Form 2401**.

When relaying information to the DEA, the Servicer must:

- Advise the DEA that the Servicer is servicing the Loan for GMAC-RFC

Disclose to the DEA the name, telephone number, and mailing address of the Servicer's contact in GMAC-RFC's Servicer Management Department in Burbank

- Forward the information to any other applicable federal or local law enforcement agency as may be requested by the DEA

All reporting to the DEA and/or to GMAC-RFC must be in writing unless an emergency warrants reporting by telephone. The Servicer must also report to GMAC-RFC's Servicer Management Department in Burbank, all developments subsequent to the initial contact, within five Business Days of any such development.

(2) Follow-Up Inspection

The Servicer must immediately inspect the Mortgaged Premises when unsolicited information received by the Servicer suggests conditions that might impair the habitability, Value, or marketability of the Mortgaged Premises. If necessary, the Servicer should request assistance from the local police.

The results of the inspection must be documented by a completed 1-4 Family Property Servicing Inspection Report **GMAC-RFC Form 2403**.

The Servicer must submit this form along with a Multipurpose Loan Service Report **GMAC-RFC Form 2401** detailing the Servicer's recommendations to GMAC-RFC's Servicer Management Department in Burbank within five **Business Day**s of the inspection.

(3) Follow-Up Remedies

If any activity by the **Borrower** or any other party on the Mortgaged Premises constitutes default under the **Security Instrument**, the Servicer must promptly take appropriate action in accordance with the **Foreclosures-General** Section of this Servicer Guide.

**(E) Reporting Pre-Seizure Information when Responding to Government Inquiry**

If the DEA or another law enforcement agency requests information about the **Borrower**, the Loan or the **Mortgaged Premises**, or requests that the Servicer take certain actions (whether or not in response of a voluntary disclosure of information by the Servicer as provided above in the **Property Seizures** Section), the Servicer must consult with its legal counsel to determine whether:

- Request complies with the provisions of applicable law including, but not limited to, the Right to Financial Privacy Act (RFPA)
- Servicer's compliance with the request is allowed under applicable law
- Servicer's compliance with the request would expose the Servicer or its staff to potential harm and/or liability

The Servicer must cooperate with all law enforcement agencies to the extent allowed by applicable law without exposing itself or its staff to undue harm or liability.

Within five **Business Day**s of receiving the DEA's or other law enforcement agency's request, the Servicer must submit a Multipurpose Loan Service Report **GMAC-RFC Form 2401** to GMAC-RFC's Servicer Management Department in Burbank reporting such request and the Servicer's response.

**(F) Government Notice to Servicer of Property Seizure**

When the Servicer receives notice that a law enforcement agency has seized and/or intends to initiate forfeiture proceedings against the Mortgaged Premises, the Servicer must immediately report such action to GMAC-RFC and the **Mortgage Insurer**, as applicable, in accordance with the procedures detailed below.

(1) Servicer's Report to GMAC-RFC

The Servicer must immediately report the notice of seizure and/or intent to forfeit to GMAC-RFC's Servicer Management Department in Burbank by telephone at 818.260.1400. Within two **Business Day**s after receiving the notice, the Servicer must forward such notice to GMAC-RFC's Servicer Management Department in Burbank by overnight mail. With the notice, the Servicer must submit all of the following:

- Completed Multipurpose Loan Service Report **GMAC-RFC Form 2401** which supplies the following additional information related to the Loan:
  - Loan status (current, delinquent, or in foreclosure)
  - Outstanding principal balance, interest, and **Per Diem** interest amount
  - Any other outstanding amounts
  - Any other information regarding the Borrower or the **Mortgaged Premises** that the Servicer deems relevant to the law enforcement agency's action
- Copy of the Note and any modifying instrument
- Copy of the **Security Instrument** with applicable recording information
- Copy of all assignments of the Security Instrument with applicable recording information
- Such other documents and information as may be requested by GMAC-RFC

Upon receiving the required documents from the Servicer, GMAC-RFC will forward such documents to GMAC-RFC's Legal Department in Minneapolis. The Servicer will be responsible for retaining counsel to represent the interests of the Servicer and GMAC-RFC in the forfeiture proceedings. Where warranted, the Servicer will receive appropriate instructions from GMAC-RFC.

(2) Servicer's Report to **Mortgage Insurer**

The Servicer must report the seizure and GMAC-RFC's role in seeking relief from forfeiture to the Mortgage Insurer, as applicable, and relay any response to GMAC-RFC's Servicer Management Department in Burbank. The Servicer must promptly advise GMAC-RFC Servicer Management Department of any instructions issued by the Mortgage Insurer as a result of the Servicer's report and, unless otherwise instructed by GMAC-RFC, must comply with such instructions.

(3) Restrictions on Foreclosure Action

The Servicer should be aware of the position of the United States Department of Justice that a foreclosure action should not be permitted to disrupt a forfeiture action in federal court. Any foreclosure action filed in **State** court during a pending federal forfeiture action may be subject to removal and stay by the federal court upon motion by the United States Attorney.

The Servicer must promptly advise GMAC-RFC's Servicer Management Department in Burbank, of any action, including, but not limited to, nonpayment, abandonment or waste, by the **Borrower** or any other party, which may constitute default under the **Security Instrument**. GMAC-RFC will advise the Servicer whether to initiate or continue foreclosure proceedings.

**(G) Government Notice of Property Seizure to GMAC-RFC**

If GMAC-RFC is the party receiving the notice of seizure and/or intent to forfeit, GMAC-RFC will give appropriate instructions to the Servicer as soon as possible. Within two **Business Day**s after GMAC-RFC's notification to the Servicer, or sooner if requested, the Servicer must submit to GMAC-RFC's Servicer Management Department in Burbank all of the documents described above in the **Government Notice to Servicer of Property Seizure** Subsection.

## 425

## Notice of Liens, Vacancy, Waste, Etc.

It is the Servicer's responsibility to act in the most timely, efficient and responsible manner to protect the interests of GMAC-RFC. The Servicer may, if reasonably necessary, retain an attorney whose fees are reasonable and comparable to fees customarily charged for the type of service rendered in the area in which the **Mortgaged Premises** are located, to assist in the protection of GMAC-RFC's interest. Reimbursement of such fees will be governed by the **Foreclosure Statement of Expenses** Section of this Servicer Guide. The Servicer must exercise diligence to prevent any losses, and must immediately advise and make appropriate recommendations to GMAC-RFC on notification or discovery of any of the following conditions:

- Vacancy of the Mortgaged Premises
- Deterioration of, waste of, or lack of repair to the Mortgaged Premises
- Default under the terms of the **Security Instrument**s, Note, superior lien obligations (**Home Equity Loan/Second Mortgage Loan**s only), condominium or PUD constituent documents, or similar obligations of the **Borrower**
- Sale or transfer of the Mortgaged Premises not approved by the Servicer pursuant to the provisions of this Servicer Guide
- Any other situation that may have an adverse impact on the Mortgaged Premises or the Loan
- Knowledge of toxic waste or environmental hazards
- Litigation involving the Mortgaged Premises that may adversely affect the secured position of GMAC-RFC
- Attachment of prior liens to the Mortgaged Premises (for a Home Equity Loan/Second Mortgage Loan, prior liens other than those on second at the origination of the Home Equity Loan/Second Mortgage Loan)

For each Loan, the Servicer must maintain accurate records of each of these conditions detailing its actions to prevent losses.

The Mortgaged Premises must be inspected when the Servicer deems that they have been abandoned or are in a severe state of deterioration, waste, or disrepair. The results of any such inspection must be reported via the 1-4 Family Property Servicing Inspection Report **GMAC-RFC Form 2403**. The Servicer must submit the 1-4 Family Property Servicing Inspection Report to GMAC-RFC's Servicer Management Department in Burbank within five **Business Day**s of the inspection. In addition, if the **Mortgaged Premises** seems to have been abandoned, the Servicer must take all action required in the **Adverse Matters: Abandonment** Section of this Servicer Guide.

## 426

### Late Fees

Late fee calculations are subject to the provisions of the Note, Riders to the Note and applicable law. If the Note provides for a late fee and grace period that is greater than the late fee and grace period allowed in the **Loan Program** under which GMAC-RFC purchased the Loan, the Servicer warrants that the **Borrower** will not be subject to a late fee or grace period greater than allowable under the GMAC-RFC Loan Program or applicable law.

Late fee calculations and grace periods are subject to provisions of the Note, Riders to the Note and applicable law.

Without regard to any provision to the contrary in the **Loan Documents**, late charges may not be collected by any of the following methods:

- Charging the Borrower's **Escrow/Impound** account
- Deducting from a regular monthly installment
- Deducting from a payment made to partially or fully cure a Delinquency
- Adding to the outstanding principal balance of the Loan

## 427

### Notifying Credit Bureaus

For all Loans serviced for GMAC-RFC, the Servicer must report monthly the payment status of the Loans to the credit repositories specified in the list below in this Section. It is not necessary that the full file reporting occur on a particular day of the month. The Servicer may report after each month-end to allow time for payment corrections, returned checks, and other adjustments to be processed.

Full file reporting includes Loans recently originated, current and delinquent Loans, Loans liquidated through workout options, foreclosures and write-offs.

Borrowers are permitted under the Federal Fair Credit Reporting Act ("FCRA") to inquire about or dispute the accuracy of information in their credit repository files. This right to inquire about or dispute the accuracy of information applies to any mortgage serviced for GMAC-RFC. Whenever the Servicer receives such an inquiry or notice of dispute from a Borrower, or receives a letter from a credit repository requesting verification or correction of mortgage-related information, the Servicer must respond in accordance with the requirements of the FCRA.

**Credit Report Agencies**

- Equifax
- Experian
- Innovis Data Solutions
- Trans Union Credit Information Co.

Note: The Servicer must not report delinquencies to credit repositories if a Borrower has been extended forbearance (including a suspension, a reduced payment plan, or a repayment plan) due to disaster-related circumstances. This applies to mortgages secured by properties located in areas declared to be Major Disaster Areas where federal aid in the form of individual assistance is being made available.

## 428

### Borrower Relief Program Options

GMAC-RFC does not expect the Servicer to grant relief unless it will result in bringing the Loan current and avoiding further or repeated **Delinquency** or foreclosure. The Servicer should not foreclose on a delinquent Loan if there is a reasonable chance of saving the Loan. GMAC-RFC will agree to a number of different measures for avoiding foreclosures. GMAC-RFC has several types of special relief provisions available to assist deserving delinquent Borrowers. The Servicer must be familiar with the terms of each of these provisions. The Servicer should use GMAC-RFC's relief provisions whenever appropriate, but GMAC-RFC does not expect the Servicer to grant relief unless it will result in bringing the Loan current and avoiding further or repeated Delinquency or foreclosure. The Servicer should make every effort to avoid an REO. Alternatives to foreclosure must be pursued through the entire period a Loan is in default.

Early in the Delinquency, the Servicer should contact the Borrower to determine the reason for the default and determine the appropriate course of action to avoid further Delinquency. If the Servicer believes that the Delinquency can be cured, the Servicer must:

- Explain to the Borrower GMAC-RFC's potential loss mitigation provisions and the Borrower's responsibilities under each
- Obtain necessary financial information that will be needed to develop a repayment plan
- Emphasize to the Borrower the benefit of keeping the terms of a repayment plan. Ensure that the Borrower has a complete understanding of the plan/agreement

The Servicer should analyze each case carefully before developing a repayment plan and if possible conduct a face-to-face interview with the **Borrower** before a formal relief plan is executed.

When establishing repayment terms, the Servicer should consider the Borrower's financial condition, other obligations, and anticipated future means to make sure that the agreed-upon repayment plan is feasible.

GMAC-RFC grants the Servicer broad discretion to extend appropriate relief to Borrowers who encounter hardship and who are cooperative and have the proper regard for their obligations. The Servicer must be readily available to the **Borrower** to offer skilled financial counseling and advice. The Servicer should make personal contact with a Borrower whose Loan is delinquent as often as necessary to achieve a solution that will bring the Loan current as quickly as possible.

The Servicer should be fully familiar with the forms of relief to Borrowers provided for in the following Sections of this Servicer Guide and should use such relief rather than recommending foreclosure on the **Security Instrument**. Before granting any such relief, the Servicer should ascertain that:

- The reason for the default and the circumstances of the Borrower justify the relief action contemplated
- Proposed relief will not adversely affect any mortgage insurance
- There is reasonable expectation that the relief will allow the Borrower to bring the Loan current

Foreclosure alternatives must always be considered as a part of sound servicing practices.

For Loans secured by properties located in areas declared to be Major Disaster Areas where federal aid in the form of individual assistance is being made available, the following guidelines apply:

- The Servicer must perform an individual assessment of each impacted Loan to determine if forbearance in the form of a suspension or reduction of payments for up to a total of 12 months should be extended.
- The Servicer may suspend collection activity, foreclosure, and eviction proceedings for up to a total of 12 months from the date of disaster, based on the relative merits of each case.
- The Servicer should reassess each impacted Loan on a regular basis during the forbearance or suspension period to determine if forbearance or suspension should continue to be extended up to a total of 12 months.

## 429

### Temporary Indulgence

Temporary indulgence is a relatively short period of leniency, not to exceed three months from the **Due Date** of the first unpaid installment, granted to a Borrower to allow time to cure a **Delinquency** through full reinstatement or satisfaction of the debt.

The Servicer may grant temporary indulgence under extraordinary circumstances, such as when a sale or rental of the **Mortgaged Premises** is pending, or when financial assistance from a social service agency is forthcoming. Temporary indulgence may also be appropriate when the Borrower needs time to trace lost payments. The Servicer need not seek GMAC-RFC approval of temporary indulgence, but must require adequate documentation from the Borrower before granting temporary indulgence, and must follow up to verify the Borrower's compliance with the terms under which the relief was granted. If it is anticipated that the total arrearage will not be cured within three months from the Due Date of the first unpaid installment, the Servicer must consider relief through a repayment plan or special forbearance relief agreement.

Note: If the Delinquency has already exceeded three months the Servicer must use either a repayment plan or special forbearance agreement.

## 430

### Repayment Plan

A repayment plan gives a Borrower a definite period, up to 18 months, in which to reinstate the Loan by immediately making, and continuing to make, payments in excess of the regular monthly installment.

If appropriate, the Servicer may enter into a plan to repay the total **Delinquency** within the shortest time possible, without GMAC-RFC's approval. The total repayment period should not exceed 18 months; however, when it is necessary for the total repayment period, as described above, to exceed 18 months, the plan must be in writing and requires financial documentation (e.g., most recent bank statements, most recent payroll check stub, and a financial statement) to support it. The Servicer and the Borrowers must both sign this repayment/forbearance agreement.

## 431

### Special Forbearance Relief Agreement

A special forbearance relief agreement is a written agreement to reduce or suspend regular payments for a forbearance period of up to 18 months. At the conclusion of the special forbearance relief period, regular payments must be resumed and satisfactory arrangements made to repay the amount suspended.

The Servicer may enter into a special forbearance relief agreement, without GMAC-RFC’s approval, if the following conditions are met:

- The reason for default and the circumstances of the Borrower justify the relief action contemplated
- The default is curable
- The agreement outlines specific dates for repayment and specific forbearance amounts to be paid
- The Servicer obtains credit documentation (credit report, verifications of deposit, income, and employment and an itemized statement of monthly expenses including household and debt obligations) in order to ascertain the Borrower's financial position and evaluate the prospect of the Borrower's compliance with the repayment plan
- The Servicer obtains any necessary approval where applicable from the **Mortgage Insurer**, and superior lienholders before executing the agreement
- The Servicer prepares the agreement and has it executed by all parties (a copy of the executed agreement, with supporting documentation must be retained in the Loan file)
- The Servicer inspects the **Mortgaged Premises** before execution of the agreement and reinspects it at least every 60th day in accordance with the requirements of the **Interview with Borrower; Property Inspection** Section of this Servicer Guide. If an inspection, required before the execution of the forbearance agreement, reveals that the Mortgaged Premises have been abandoned or are in poor physical condition, the Servicer may not enter into a forbearance agreement without GMAC-RFC’s prior approval
- The forbearance agreement permits the institution or continuation of foreclosure proceedings in the event of any default under the terms of that agreement

If the Borrower fails to comply with the terms of the forbearance agreement, the Servicer may agree to a new plan, provided that the aggregate forbearance period does not exceed 18 months from the **Due Date** of the first unpaid installment. If there is no reasonable expectation that additional relief will bring the Loan current and maintain it in that status, the Servicer must immediately recommend one of the following:

- Appropriate alternative to foreclosure
- Foreclosure action

## 432

### Military Indulgence

A **Borrower** in active military service may be entitled to benefits under the Servicemembers Civil Relief Act of 2003 (SCRA) which replaced the Soldiers' and Sailors' Civil Relief Act of 1940, as amended (the "Act"), and/or under various **State** relief statutes that may entitle Borrowers who are or were in the military service to benefits. The Servicer must be familiar with and comply with the requirements of this Act and any applicable State relief statutes, and any other pertinent requirements.

The Servicer is authorized and instructed to grant all relief to which an eligible Borrower is entitled under the Act and any applicable State relief statutes, but the terms of the relief and related information should be promptly reported to GMAC-RFC. If interest reduction is required, the Servicer must notify GMAC-RFC thereof by submitting to GMAC-RFC a written notice recommendation detailing the relevant facts. If the **Mortgaged Premises** are rented, the Borrower should be requested to appoint an agent to collect rents, maintain the Mortgaged Premises, and make payments to the Servicer.

In the case of any **Borrower** entitled to relief under the Act, the Servicer should contact the Borrower at least semiannually during the period of active military service to determine the Borrower's current status and the anticipated duration of the Borrower's period of active military duty. At the termination of active military service, the Borrower will be expected to reinstate the Loan as rapidly as circumstances and any applicable **State** relief statutes will permit. In the case of any Borrower entitled to relief under any applicable State relief statute, the Servicer should take such action as is necessary in order to ascertain the Borrower's eligibility for relief, the type of relief to which the Borrower is entitled, and the duration of that relief. Further relief under one of the plans provided for of this Servicer Guide may be considered in individual cases.

## 433

### Loss Mitigation Strategies

GMAC-RFC encourages its Servicers to work constructively with Borrowers at risk of default and to consider prudent workout arrangements that avoid unnecessary foreclosures.

Servicers are encouraged to use the authority that they have under the servicing guidelines to take appropriate steps when an increased risk of default is identified, including:

- Proactively identify Borrowers at heightened risk of delinquency or default, such as those with impending interest rate resets;
- Contact Borrowers to assess their ability to repay;
- Assess whether there is a reasonable basis to conclude that default is "reasonably foreseeable"; and
- Explore, where appropriate, a loss mitigation strategy that avoids foreclosure or other actions that result in a loss of homeownership.

Loss mitigation techniques that preserve homeownership are generally less costly than foreclosure, particularly when applied before default. Prudent loss mitigation strategies may include Loan modifications; deferral of payments; extension of Loan maturities; conversion of adjustable-rate mortgages into fixed-rate or fully indexed, fully amortizing adjustable-rate mortgages; capitalization of delinquent amounts; or any combination of these. Where appropriate, Servicers are encouraged to apply loss mitigation techniques that result in mortgage obligations that the Borrower can meet in a sustained manner over the long term.

In evaluating loss mitigation techniques, Servicers should consider the Borrower’s ability to repay the modified obligation to final maturity according to its terms, taking into account the Borrower’s total monthly housing-related payments as a percentage of the Borrower’s gross monthly income. Attention should also be given to the Borrower’s other obligations and resources, as well as additional factors that could affect the Borrower’s capacity and propensity to repay.

Some Loan modifications or other strategies, such as a reduction or forgiveness of principal, may result in additional tax liabilities for the Borrower that should be included in any assessment of the Borrower’s ability to meet future obligations.

When appropriate, Servicers are encouraged to refer Borrowers to qualified non-profit and other homeownership counseling services and/or to government programs, which may be able to work with all parties to avoid unnecessary foreclosures.

When considering and implementing loss mitigation strategies, Services are expected to treat consumers fairly and to adhere to all applicable legal, GMAC-RFC, and investor requirements.

## 434

### Loss Mitigation Workouts

Pursuing workout options reduces losses and avoids acquisition of the **Mortgaged Premises**. If the Servicer’s evaluation of the individual circumstances of the Borrower reveals that it is unlikely that the Loan can be brought current, the Servicer must aggressively pursue a workout option as an alternative to foreclosure. If the Servicer has determined that all collection efforts have failed and all appropriate relief measures have been taken, one of the following workout options may be selected:

- Pre-foreclosure sale/short payoff
- Deed-in-lieu of foreclosure
- Loan modifications
- Write-off (applicable for mortgages with low unpaid principal balance and second mortgage liquidation)
- Note Sale and Assignment of Beneficial Interest

All Loan modifications, short sales, write-offs, and **Note** sales are subject to GMAC-RFC approval.

If foreclosure action has been initiated or is in progress, the proceedings must continue concurrently with the analysis of workout options. The Servicer must obtain GMAC-RFC's approval for a postponement of the foreclosure sale if necessary to avoid delay in finalizing a workout.

All workout analysis documentation must be maintained in the Loan file.

The Servicer may receive an incentive payment for pre-foreclosure sale/short payoff efforts as described under **Settlement/Reimbursement** in this Chapter.

Note Sales and Assignments of Beneficial Interest (Note Sale) should be considered only on a delinquent Loan, and if it will be the most economical course of loss mitigation for the benefit of the investor. All Note Sales require that the sale and subsequent assignment be on an "as-is" basis without any representations or warranties, and also require that the existing Trustee be substituted. The Servicer must obtain GMAC-RFC's prior approval, and in the case of a Loan insured with private mortgage insurance, the mortgage insurer's approval, before accepting a Note Sale that would result in a payoff of an amount less than the total indebtedness. Follow the processes described at the end of this Section as applicable when processing a Note Sale.

### (A) General Workout Analysis Requirements

The Servicer must analyze whether the acceptance of a workout is in the best interest of GMAC-RFC, and determine whether the workout is appropriate by analyzing the **Borrower**, the property and the insurance as follows:

**The Borrower**

| Determine | Using this and any other available information |
|---|---|
| Evidence of hardship | Letter from Borrower |
| Ability to contribute toward a loss | Completed **HUD** Form 92068F, **Fannie Mae**/**Freddie Mac** Form 1003 (Residential Loan Application) or Borrower financial statement listing assets, liabilities, income, and expenses or the Servicer's internal form which accurately depicts the Borrower's current financial information. If the Borrower is self-employed, the Servicer must obtain a current financial statement in addition to the Fannie Mae/ Freddie Mac Form 1003. |
| | Copy of credit report |
| | Copy of the most recent pay stub |
| | Bank Statements |

**The Property**

| Determine | Using this and any other available information |
|---|---|
| Borrower's equity position if any | The full appraisal must not be older than 120-days |
| Property condition | |
| Whether estimated market Value is less than the cost to acquire and dispose of the **Mortgaged Premises** | |
| Impact of any adverse conditions | |
| Occupancy status | |

**The Insurance or Guaranty**

| Determine | Using this and any other available information |
|---|---|
| Whether any benefits, are available to reduce loss | **Mortgage Insurer** approval documentation |

Prior to submitting package to GMAC-RFC for approval, Servicer must obtain prior approval from MI or PI when applicable

**(B) General Workout Expenses**

Expenses associated with the acceptance of a workout option (such as appraisal, credit report, or title search) must be within the allowable guidelines as defined in **GMAC-RFC Form 2404**. To expedite the approval of expenses that exceed the guidelines in **GMAC-RFC Form 2404**, the Servicer should contact (by telephone or fax) GMAC-RFC's Servicer Management Department in Burbank for immediate approval. GMAC-RFC will send the Servicer a confirmation of the costs and of the approved workout expense.

Approved costs should be collected from the Borrower to the maximum extent permitted by applicable law. In the event applicable law or the Borrower's financial position does not permit the collection of such costs from the Borrower, the Servicer shall pay such costs and request reimbursement in accordance with the **Reimbursements** Section of this Servicer Guide.

**(C) Pre-foreclosure Sale/Short Payoff**

(1) Analysis

A pre-foreclosure sale or short payoff (payoff insufficient to cover total debt) is an offer to purchase for less than total indebtedness (unpaid principal balance, accrued interest, and any expenses incurred). When analyzing the offer, the Servicer must comply with the workout analysis requirements in this Section and analyze the **Borrower**, the property and the offer to purchase as follows:

**The Borrower**

| **Determine** | **Using this and any other available information** |
|---|---|
| Willingness to accept the offer | Borrower's letter explaining circumstances |
| Willingness to execute necessary documentation | Discussions with the Borrower |

**The Property**

| **Determine** | **Using this and any other available information** |
|---|---|
| Whether estimated market Value is less than the costs to acquire and dispose of the **Mortgaged Premises** | The full appraisal must not be older than 120-days |

**The Offer to Purchase**

| **Determine** | **Using this and any other available information** |
|---|---|
| Reasonableness of sales price and closing costs | Fully executed sales contract with all amendments and addenda |
| | Current full appraisal |

(2) GMAC-RFC Approval

The Servicer must obtain GMAC-RFC's approval before accepting a payoff in an amount that is less than the total indebtedness. The consideration of a pre-foreclosure sale/short payoff is encouraged when the Servicer believes it would be in GMAC-RFC's best interest to accept less than the total indebtedness. If it is determined that acceptance of a pre-foreclosure sale/short payoff will mitigate the anticipated loss to GMAC-RFC, the Servicer must do the following:

(a) Obtain a written request for the pre-foreclosure sale/short payoff, signed by all parties on the **Security Instrument**, indicating that a hardship exists, along with their willingness to provide a cash contribution and/or their willingness to execute an unsecured Note toward the anticipated loss.

(b) Obtain a credit report from a national credit reporting agency for all parties on the Security Instrument.

(c) Obtain the most recent paycheck stub for each Borrower along with the Borrower's signed tax returns, if deemed appropriate or necessary by the Servicer, and a completed **Fannie Mae**/**Freddie Mac** Form 1003 (Residential Loan Application). If the Borrower is self-employed, the Servicer must obtain a current financial statement in addition to the Fannie Mae/Freddie Mac Form 1003.

(d) Obtain signed and certified copies of the real estate purchase contract, **Client** disclosure, escrow instructions and estimated settlement statement, showing the projected closing date. If multiple offers exist, all offers must be sent to GMAC-RFC.

(e) Obtain a full appraisal from a disinterested, qualified appraiser supporting Value/sales price listed in the purchase contract along with the average marketing time for similarly priced/sized properties in the area. If repairs to the **Mortgaged Premises** are necessary, the appraisal must indicate the estimated "as is" and "as repaired" market Values as well as the estimated cost of repairs.

(f) Obtain a copy, if applicable, of the preliminary title report or other acceptable title report showing all encumbrances.

(g) Obtain a copy of the lender's conditional Loan approval letter for the buyer of the **Mortgaged Premises**.

(h) Obtain a statement from the listing and/or selling agents indicating their willingness to accept less than full commission to complete the transaction.

(i) Obtain a statement from any and all lienholders indicating their willingness to consent to the transaction or release their lien to allow completion of the transaction.

(j) Ascertain that the full benefits of any mortgage insurance will be available to cover any losses and provide a copy of the **Mortgage Insurer**'s acceptance of the pre-foreclosure sale/short payoff.

(k) Provide a copy of the worksheet/workpapers used to determine the cost benefit involved by accepting the pre-foreclosure sale/short payoff instead of proceeding with foreclosure.

(l) Provide a copy of correspondence sent to the **Borrower** indicating that foreclosure will proceed in the event the contract is not consummated by the estimated close of escrow, or if a negotiated settlement cannot be reached between all legally interested parties.

Costs associated with the acceptance of the pre-foreclosure sale/short payoff such as appraisal, credit report, title search, attorney’s fees, etc. should be collected from the Borrower to the maximum extent permitted by applicable law. In the event applicable law does not permit the collection of such costs from the Borrower or the Borrower is unable to pay such costs, the Servicer will pay such costs and may request reimbursement in accordance with Statement of Foreclosure/REO Expenses **GMAC-RFC Form 2409**, except for those requirements provided for in this **Loss Mitigation Workouts** Section.

**(D) Servicer’s Recommendation**

Details of the Servicer’s analysis and recommendation must be reported to GMAC-RFC on a Request for Loan Service Approval **GMAC-RFC Form 2400**, accompanied by a copy of the **Broker’s Price Opinion** or appraisal report and all supporting documentation.

GMAC-RFC does not consider payment of late charges or non-sufficient funds check charges in its loss estimation. When calculating the estimated loss, Attorney/Trustee fees that exceed the maximum allowable limit set forth in the **Attorney and/or Trustee Fees** Section of this Servicer Guide will not be considered unless prior approval was received from GMAC-RFC.

The Servicer must make all reasonable efforts to negotiate a settlement that will mitigate the anticipated loss to GMAC-RFC.

**(E) Settlement/Reimbursement**

GMAC-RFC's Claims Administration Department in Burbank requires notification of escrow closing within 72 hours; otherwise, a penalty of $100 per day will be assessed until notification is received. Within three **Business Day**s of the escrow closing date, the Servicer shall submit a certified copy of the closing statement. The Servicer must wire transfer the entire amount of sale proceeds to GMAC-RFC in Burbank within five **Business Day**s of the escrow closing date, using the wire transfer instructions noted below. On the day proceeds are wired, the Servicer must submit, via fax, a Multipurpose Fax Transmittal Form **GMAC-RFC Form 2405** to GMAC-RFC's Claims Administration Department in Burbank. The Servicer must indicate the wire confirmation number, date of wire, GMAC-RFC Loan Number, **Borrower** name, and settlement amount.

Residential Funding Company, LLC
C/O US Bank, Minneapolis, MN
Acct.# 104774437669
ABA# 091 000 022
Servicer ID# and Name
GMAC-RFC Loan#
Refer to: Short Payoff

If the Loan is insured by primary mortgage insurance, the Servicer must file the claim within 30 calendar days of the escrow closing date and submit a copy of the completed claim form to GMAC-RFC's Claims Administration Department in Burbank. The Servicer must fulfill its procedural obligation under insurance policies and carry out its responsibilities in a manner which will not jeopardize the timely or ultimate payment of claims by the insurer. In cases where GMAC-RFC has advised the Servicer that the Mortgaged Premises is covered by pool insurance, the Servicer must file the claim within 30 calendar days of either (i) the escrow closing date or (ii) the settlement of the Mortgage Insurer's claim, and submit a copy of the completed claim form to GMAC-RFC's Claims Administration Department in Burbank. Refer to the **Mortgage Insurance** or **Pool Insurance** Sections of this Servicer Guide for claim filing procedures and guidelines.

The Servicer may receive an incentive payment in the amount of $1,000 for each successfully closed pre-foreclosure sale/short payoff, $500 for each successfully closed Note Sale and $500 for each successfully closed Deed-in-Lieu. The Servicer may also receive payment in the amount of $250 for each pre-foreclosure sale/short payoff submitted to and approved by GMAC-RFC, which subsequently fails to occur for reasons outside the Servicer's control. Within 14 calendar days of the escrow closing date, the Servicer shall submit to GMAC-RFC a Statement of Foreclosure/REO Expenses **GMAC-RFC Form 2409** in order to receive these payments. When submitting the Statement of Foreclosure/REO Expenses form, the Servicer must clearly check the box indicating Short Sale (SPO). For required documentation to support the expenses, refer to the **Foreclosure Statement of Expenses** Section of this Guide. GMAC-RFC will issue these payments at its sole discretion and on a case-by-case review.

If the Loan is covered by mortgage and/or pool insurance, the Servicer may not recover expenses advanced until GMAC-RFC has received the mortgage and/or pool insurance proceeds and reviewed the benefit settlement letter.

The Servicer may submit a supplemental request for reimbursement for those expenses not received during the filing period for the pre-expenses. The Statement of Foreclosure/REO Expenses **GMAC-RFC Form 2409** must be received by GMAC-RFC's Claim Administration within 30 calendar days of the escrow closing date. Additionally, the pre-acquisition expenses listed on Statement of Foreclosure/REO Expenses **GMAC-RFC Form 2409** must have been received in a timely manner. Supplemental claims received after 30 days will be denied. For expenses that were denied, the Servicer, if warranted, may still file a supplemental claim even if the specified timelines have passed, as long as it is filed within 14 calendar days from the date the Servicer was notified of the denial by Claims Administration in Burbank via email, fax or regular mail. GMAC-RFC will issue these payments at its sole discretion and on a case-by-case review. Refer to the **Mortgage Insurance** or **Pool Insurance** Sections of this Servicer Guide for claim filing procedures and guidelines.

**(F) Penalties**

Failure to remit the entire amount of the Short Payoff Sales proceeds within five **Business Day**s from the close of escrow will result in a cash adjustment. The cash adjustment will be equivalent to the Per Diem interest calculated using the Prime Rate printed in *The Wall Street Journal* in its regular column entitled "Money Rates," plus 3%. The cash adjustment will begin to accrue on the next Business Day from the date due through and including the date that the funds are received in the appropriate GMAC-RFC account.

A penalty in the amount of $500 will apply should the Servicer fail to file a mortgage insurance claim and/or pool insurance (PI) claim within 30 calendar days from the close of escrow date. This penalty is in addition to any Per Diem interest that is not paid by the Mortgage Insurer.

Failure to remit the Mortgage Insurance proceeds and documentation within 12 calendar days of the date of the settlement check will result in a cash adjustment to the Servicer's claim for Foreclosure/REO expenses **GMAC-RFC Form 2409**. The cash adjustment will be equivalent to Per Diem interest calculated using the Prime Rate printed in *The Wall Street Journal* in its regular column entitled "Money Rates," plus 3%. The cash adjustment will begin to accrue on the 13th calendar day through and including the date the settlement funds are received in the appropriate GMAC-RFC account.

The Servicer is subject to the following schedule of penalties, based on the timelines of GMAC-RFC's receipt of the Statement of the Foreclosure/REO Expenses **GMAC-RFC Form 2409** following the escrow closing date.

| Receipt by GMAC-RFC | Penalty Amount |
|---|---|
| 15 - 20 calendar days | $250.00 |
| 21 - 25 calendar days | $500.00 |
| 26 - 30 calendar days | $750.00 |
| 31 or more calendar days | no reimbursement/denial of claim |

For further clarification, refer to the **Indemnification** Section and the **Right of Set-Off** Section of this Servicer Guide.

### (G) Document Release and Execution upon Short Payoff

Any request for execution of appropriate payoff documents (e.g. full reconveyance, mortgage satisfaction, release of mortgage, etc. or allonge and assignment in the case of a Note Sale) should be prepared by the Servicer and submitted with a completed Document Services Form **GMAC-RFC Form 2204** and sent to GMAC-RFC at the following address:

GMAC-RFC
One Meridian Crossings, Suite 100
Minneapolis, MN 55423
Attention: Enterprise Service Delivery Operations

GMAC-RFC will execute or cause to be executed the submitted documents and return them to the Servicer, together with the other **Loan Documents** in custody of GMAC-RFC. GMAC-RFC, or its designee, must not be substituted as trustee under a Deed of Trust **Security Instrument**.

The Servicer is responsible for ensuring that any document it sends to GMAC-RFC has been reviewed for legal sufficiency and compliance and, with respect to Loans registered with MERS, is in compliance with MERS' rules and procedures, as amended from time to time. The execution of any document sent to GMAC-RFC does not imply that GMAC-RFC has reviewed it for legal sufficiency and compliance.

## 435

## Deed-In-Lieu of Foreclosure

### (A) General

A Deed in Lieu of Foreclosure is ordinarily preferred to foreclosure, especially when the **Mortgaged Premises** are located in a region that has long redemption or foreclosure completion periods. If the Borrower is willing to execute a voluntary deed in lieu of foreclosure, the Servicer must:

- Obtain a written request for the deed in lieu of foreclosure, signed by all Borrowers indicating that a hardship exists, along with a description of the efforts previously taken to market the Mortgaged Premises, the occupancy status, and condition of the Mortgaged Premises. They must also state their willingness to provide a cash contribution toward any amount that nets less than the total indebtedness and/or execution of an unsecured instrument, for the amount of the anticipated loss
- Obtain from a national credit reporting agency a credit report with credit score for all Borrowers
- If the property has been listed for sale, obtain a copy of the listing agreement
- Obtain the most recent paycheck stub, copies of the most recent signed tax returns, and a completed **Fannie Mae**/**Freddie Mac** Form 1003 (Residential Loan Application). If the Borrower is self-employed, the Servicer must obtain a current financial statement in addition to the Fannie Mae/Freddie Mac Form 1003
- Obtain a current title report to determine the priority of the lien, outstanding property taxes and other encumbrances

- Obtain a full appraisal from a disinterested, qualified appraiser supporting Values or sales price listed in the purchase contract, along with the average marketing time for similarly priced and/or sized properties in the area. If repairs to the Mortgaged Premises are necessary, the appraisal must indicate the estimated "as is" and "as repaired" market Values, as well as the estimated cost of repairs
- Using all reasonable methods, determine that there are no environmental problems affecting the Mortgaged Premises. Provide written confirmation of the results of all action taken in arriving at that determination
- Provide a copy of the loss mitigation worksheet used to determine the cost benefit to be derived by accepting the deed-in-lieu instead of proceeding with foreclosure
- Ascertain that the full benefits of any mortgage insurance will be available to cover any losses and provide a copy of the **Mortgage Insurer**'s acceptance of the deed-in-lieu

If documentation of one or more of the above items is not available, and extenuating circumstances support the acceptance of a deed-in-lieu without it, the Servicer may contact its assigned Asset Manager in the Servicer Management department in Burbank, CA for approval. A deed-in-lieu offer born of litigation is an example of one that should not be denied solely for lack of customary documentation.

Costs associated with the acceptance of a deed in lieu of foreclosure, such as appraisal, credit report, title search, attorneys' fees, etc. should be collected from the Borrower to the maximum extent permitted by applicable law. In the event the Borrower is unable to pay such costs or applicable law does not permit the collection of such costs from the Borrower, the Servicer shall pay such costs and request reimbursement in accordance with the **Reimbursements** Section of this Servicer Guide.

**(B) Servicer's Recommendation**

The Servicer should only accept a deed in lieu of foreclosure if it believes that such action is in GMAC-RFC's best interest. Details of the Servicer analysis must be reported to GMAC-RFC on a Request for Loan Service Approval **GMAC-RFC Form 2400**, accompanied by a copy of the appraisal report and supporting documentation. Cash consideration may be paid to the Borrower for voluntary conveyance of the **Mortgaged Premises** if GMAC-RFC's prior approval is obtained.

**(C) Documentation**

The Servicer or its counsel must prepare any documents necessary to process the deed in lieu of foreclosure. GMAC-RFC must approve said attorney's fees if in excess of limits defined in the Expense Reimbursement Guidelines **GMAC-RFC Form 2404**. The Servicer must arrange for timely and efficient conveyance of the **Mortgaged Premises**. If the Mortgaged Premises are rented, the Borrower must agree to assign and transfer to GMAC-RFC all rents due and to become due. Ordinarily, the Servicer should not take title to the Mortgaged Premises until they are vacant. If hardship exists, the Servicer may take title so long as the date of possession is agreed upon in advance and evidenced by written agreement executed by all interested parties.

**(D) Acquisition**

The acquisition date for a Deed-in-lieu is considered the date the Deed-in-lieu document is executed. The Servicer must send by fax or email to GMAC-RFC's Servicer Management department in Burbank the written notification of the execution of the Deed-in-lieu, no later than the first **Business Day** immediately following the date of the execution (acquisition) of the **Mortgaged Premises**, by completing a Multipurpose Fax Transmittal **GMAC-RFC Form 2405** or reasonable facsimile thereof.

## 436

## Write-Offs

**(A) General**

A write-off designates a Mortgage as uncollectible. In certain situations, it may be in GMAC-RFC’s best interest to elect not to initiate foreclosure or not to complete foreclosure proceedings on a residential property securing a GMAC-RFC Loan. The Servicer must specifically request approval from GMAC-RFC to write off the Loan. A write-off may be the best option when any of the following circumstances exist:

- The market Value does not support the cost to acquire title and market the property
- It is not in GMAC-RFC’s best interest to pursue legal action
- All other workout and relief measures are inappropriate
- A deficiency judgment is not practical or warranted

When considering a write-off, at least one of the following circumstances must exist:

- The property has no net Value after foreclosure on REO expenses and any superior liens
- The property is condemned due to deterioration, disaster or hazardous waste, where it is not economically feasible to repair, is not covered by insurance and no recourse exists
- The fair market Value of the property as determined by an appraisal or BPO is less than $15,000

**(B) Servicer’s Recommendation**

The Servicer recommendation will be submitted on the Request for Loan Service Approval **GMAC-RFC Form 2400** and be supported by a current Appraisal/Broker Price Option, recent credit bureau report and a Write-Off Evaluation **GMAC-RFC Form 2406** along with all supporting documentation. Note: Any Loan that has primary mortgage or pool insurance must have been submitted to the appropriate **Mortgage Insurer** for approval prior to being submitted to GMAC-RFC.

**(C) Reimbursements on Processing Claims**

The following are required when processing a write-off:

- The Servicer shall submit to GMAC-RFC, if applicable, a Settlement Statement of Foreclosure/REO Expenses **GMAC-RFC Form 2409** within 14 calendar days of the date of receipt of the GMAC-RFC written notice, or from the date any conditions precedent have been met, for the Servicer to approve the subject Loan as a write-off. When submitting the Statement of Foreclosure/REO Expenses form, the Servicer must clearly check the box indicating write-off. For required documentation to support the expenses, refer to the **Foreclosure Statement of Expenses** Section of this Servicer Guide. GMAC-RFC will issue payment at its sole discretion and on a case-by-case review. If the Loan is covered by mortgage and/or pool insurance, the Servicer may not recover expenses advanced until GMAC-RFC has received the mortgage and/or pool insurance proceeds and reviewed the benefit settlement letter. Refer to the **Mortgage Insurance** or **Pool Insurance** Sections of this Servicer Guide for claim filing procedures and guidelines.
- The Servicer may submit a supplemental request for reimbursement of those expenses not received during the filing period for the pre-acquisition expenses. The Statement of Foreclosure/REO Expenses **GMAC-RFC Form 2409** must be received by GMAC-RFC's Claims Administration Department within 30 calendar days of GMAC-RFC's charge-off approval date. Additionally the pre-acquisition expenses listed on the Statement of Foreclosure/REO Expenses form must have been received in a timely manner. Supplemental claims received after 30 calendar days will be denied. When submitting the Statement of Foreclosure/REO Expenses form, the Servicer must clearly check the box indicating supplemental. For required documentation to support the expenses, refer to the **Foreclosure Statement of Expenses** Section of this Guide. For expenses that were denied, the Servicer, if warranted, may still file a supplemental claim even if the specified timelines have passed, as long as it is filed within 14 calendar days from the date the Servicer was notified of the denial by Claims Administration in Burbank via email, fax or regular mail. GMAC-RFC will issue payments at its sole discretion and on a case-by-case review. Refer to the **Mortgage Insurance** or **Pool Insurance** Sections of this Servicer Guide for claim filing procedures and guidelines.
- If the Loan is insured by primary mortgage insurance, the Servicer must file the claim within 30 calendar days after all of the conditions of the GMAC-RFC approval notice have been met, and submit a copy of the completed claim to GMAC-RFC's Claims Administration Department in Burbank. The Servicer must fulfill its procedural obligations under insurance policies and carry out its responsibilities in a manner which will not jeopardize the timely and/or ultimate payment of claims by the insurer. In cases where GMAC-RFC has advised the Servicer that the **Mortgaged Premises** is covered by pool insurance, the Servicer must file the claim for loss within 30 calendar days of either (i) the settlement of the **Mortgage Insurer**'s claim, and submit a copy of the completed claim form to GMAC-RFC's Claims Administration Department or (ii) the receipt of the GMAC-RFC notice if no primary mortgage insurance exists. The Servicer may not recover expenses advanced until GMAC-RFC has received the mortgage and/or pool insurance proceeds and reviewed the benefit settlement letter. Refer to the **Mortgage Insurance** or **Pool Insurance** Sections of this Servicer Guide for claim filing procedures and guidelines.

**(D) Penalties**

- A penalty in the amount of $500 will apply should the Servicer fail to file a mortgage insurance claim within 30 calendar days of the date of receipt of the GMAC-RFC written notice, or from the date any conditions precedent have been met, for the Servicer to approve the subject Loan as a write-off. This penalty is in addition to any Per Diem interest that is not paid by the Mortgage Insurer.
- Failure to remit the Mortgage Insurance proceeds and documentation within 12 calendar days of the date of the settlement check will result in a cash adjustment to the Servicer's claim for Foreclosure/REO expenses **GMAC-RFC Form 2409**. The cash adjustment will be equivalent to Per Diem interest calculated using the Prime Rate printed in *The Wall Street Journal* in its regular column entitled "Money Rates," plus 3%. The cash adjustment will begin to accrue on the 13th calendar day through and including the date the settlement funds are received in the appropriate GMAC-RFC account.
- The Servicer is subject to the following schedule of penalties, based on the timelines of GMAC-RFC's receipt of the Statement of Foreclosure Expenses **GMAC-RFC Form 2409**.

| Receipt by GMAC-RFC | Penalty Amount |
|---|---|
| **15 - 20 calendar days** | $250.00 |
| 21 - 25 calendar days | $500.00 |
| 26 - 30 calendar days | $750.00 |
| 31 or more calendar days | no reimbursement/denial of claim |

- For further clarification, refer to the **Indemnification** Section and the **Right of Set-Off** Section of this Servicer Guide.

## 437

## Loan Modifications

**(A) General**

Not all Loans will be eligible for modification. A Loan Modification occurs when a change is made to one or more of the original terms of a Mortgage Note. Such changes could entail a change to the interest rate, payment amount, maturity date or the principal balance of the Loan. All Loan Modifications must be reduced to writing (recordable format) and the Servicer must obtain the approval of GMAC-RFC prior to accepting/approving a Loan Modification. Servicers must submit all requests for Loan Modifications using prudent servicing judgment. If GMAC-RFC determines the submitted Loan is not eligible for modification the Servicer will at least have a financial package to analyze for another Loss Mitigation Alternative.

**(B) Modification Analysis**

The Servicer must:

- Obtain a written request for the Loan Modification, executed by all Borrowers indicating that a hardship exists, along with a narrative as to efforts previously taken to overcome the hardship and the reasons why the Borrowers believe the modification will resolve the hardship
- Obtain from all Borrowers a credit report with credit score from a national credit reporting agency
- Obtain the most recent paycheck stub, copies of the most recent ***signed*** tax return, and a completed **Fannie Mae**/**Freddie Mac** Form 1003 (Residential Loan Application). If the Borrower is self-employed, the Servicer must obtain a current financial statement in addition to the Fannie Mae/Freddie Mac Form 1003
- Obtain a current title report to determine the priority of the lien, outstanding property taxes and other encumbrances
- Obtain written confirmation from all junior lien creditors of their agreement to the Loan Modification and their willingness to subordinate to same
- Obtain a current full appraisal of the **Mortgaged Premises** from a disinterested, qualified appraiser and report the results on the applicable appraisal form. If repairs to the Mortgaged Premises are necessary, the appraisal must state the estimated market Value of the Mortgaged Premises after repair and the estimated costs of the repairs
- Ascertain that the full benefits of any mortgage insurance will be available to cover any losses and provide a copy of the **Mortgage Insurer**'s acceptance of the Loan Modification

Costs associated with the acceptance of a Loan Modification, such as appraisal, credit report, title search, attorneys' fees, etc. should be collected from the Borrower to the maximum extent permitted by applicable law. In the event the Borrower is unable to pay such costs or applicable law does not permit the collection of such costs from the Borrower, the Servicer shall pay such costs and request reimbursement in accordance with the **Reimbursements** Section of this Servicer Guide.

**(C) Servicer's Recommendation**

The Servicer should recommend such approval to GMAC-RFC's Servicer Management Department if it believes that such action is in GMAC-RFC's best interest. Details of the Servicer analysis must be reported to GMAC-RFC on a Request for Loan Service Approval **GMAC-RFC Form 2400**, accompanied by a copy of the appraisal report and supporting documentation.

**(D) Documentation**

Upon receiving GMAC-RFC's written approval, the Servicer or its counsel must prepare any documents necessary to process the Loan Modification, subject to GMAC-RFC's approval of the attorney's fee per the Expense Reimbursement Guidelines **GMAC-RFC Form 2404**. The Servicer must prepare all modification/subordination documents and see that they are prepared, executed and recorded in accordance with the applicable local and State law and regulations. The Servicer must make sure that GMAC-RFC's lien priority is not altered.

For Loans registered with MERS, the Servicer shall be required to prepare and execute all instruments, notices and other documents in connection with the modification of the Loan in accordance with MERS' rules and procedures, as amended from time to time.

## 438

### Bankruptcies

#### (A) General

The Servicer must take appropriate action to protect GMAC-RFC's interest during bankruptcy proceedings in which the Borrower is the debtor. At a minimum, the Servicer must:

- Comply with all applicable laws and regulations
- Obtain competent legal counsel
- Obtain a copy of the Borrower's (debtor's) bankruptcy petition and other bankruptcy notices
- Accurately complete and file a Proof of Claim within the time limitations set by the Bankruptcy Court
- Maintain copies of all relevant documents including the notice of first meeting of creditors, Proof of Claim, pleading, notices, etc.
- Determine whether the Borrower wishes to keep the **Mortgaged Premises** and reaffirm the debt
- Review any repayment plan proposed under Chapter 11 or 13 of the Bankruptcy Code, and respond in a manner that represents GMAC-RFC's best interest
- If appropriate, file an action with the Bankruptcy Court to obtain abandonment of the Mortgaged Premises and an order lifting the Automatic Stay
- Monitor receipt of payments under any approved repayment plan and, if the Borrower defaults on these payments while under a court-approved repayment plan, instruct its designated attorney to take immediate action to modify the stay order and institute or resume foreclosure proceedings
- Perform a monthly drive-by inspection of the Mortgaged Premises for any Loan delinquent 60 days or more unless a repayment plan is in place and being followed
- Obtain the Fair Market Value in accordance with judicial requirements, where relief is possible due to a lack of equity

The Servicer must be familiar with non-reimbursable fees and costs and allowable limits as referenced in the **Non-reimbursable Expenses** Section of this Servicer Guide and the Expense Reimbursement Guidelines **GMAC-RFC Form 2404**.

**The Servicer must adhere to the appropriate timelines as follows:**

| Bankruptcy | Delinquency Status | Referral to Attorney | Timeline |
|---|---|---|---|
| **Chapter 7** | Loan is current or less than 30 days delinquent when the bankruptcy is filed | After the 30th day of delinquency | Case completion no later than the Loan's 135th day of delinquency. |
| For Chapter 7's, case completion is defined as: Termination of Automatic Stay, case dismissed or closed, or Trustee's abandonment of interest in the secured property. | | | |
| **Chapter 11** | Loan is either current or delinquent when the bankruptcy is filed | Refer no later than 15 days after the date of the bankruptcy filing | None at this time |
| **Chapter 12 or 13** | Loan is current or less than 45 days delinquent when the bankruptcy is filed | After the 45th day of delinquency | Case completion no later than either 165 days after referral to bankruptcy attorney, or the 225th day of delinquency, whichever occurs first |
| | Loan is 60 or more days delinquent or in foreclosure when the bankruptcy is filed | Refer no later than 15 days after the date of the bankruptcy filing | Case completion no later than 165 days from the date of the bankruptcy filing |
| | After plan confirmation, Borrower becomes 45 days delinquent making plan payments | After the 45th day of delinquency | Case completion no later than the Loan's 135th day of delinquency |
| For Chapter 12's or 13's, case completion is defined as: Termination of Automatic Stay, case dismissed or closed, Trustee's abandonment of interest in the secured property, or confirmation of the plan. | | | |

The timelines presented above reflect expectation of conclusion of routine bankruptcy proceedings. Normal delays in completion of bankruptcy cases include but are not limited to:

- Borrower is performing in accordance with an Adequate Protection Order or Stipulation
- Bankruptcy Trustee is attempting to sell the property securing the Loan
- Jurisdictional constraints

The Servicer is responsible for ensuring that all pre-petition and post-petition payments are properly applied and monitored in accordance with all applicable laws. After the completion of a bankruptcy case and when appropriate, the Servicer must immediately send the Borrower the appropriate Notice of Intent to Foreclose ("breach letter") if not already done, and must refer the Loan to an attorney to initiate or resume foreclosure proceedings.

The Servicer may be subject to penalties from GMAC-RFC for one or more of the following reasons:

- Delay in case completion, including delay attributable to bankruptcy attorney, without reasonable explanation from the Servicer
- Any loss incurred resulting from the Servicer's failure to properly apply and monitor payments during the bankruptcy process
- Failure to initiate or resume foreclosure proceedings in a timely manner following case completion

**(B) Bad Faith Filings**

Defined as multiple filings by the same debtor or other owners, or unauthorized transfers where the new owner(s) are in bankruptcy. In each instance, a Motion for Relief must be filed with a request for adequate protection from further filings.

**(C) Monthly/Periodic Reports**

The Servicer is not required to submit to GMAC-RFC any notice(s) regarding the bankruptcy if the Loan is current when the petition is filed, and if the Loan remains current throughout the bankruptcy proceedings; however, the Servicer must monitor the proceedings and take any required actions.

(1) Delinquent Loans/Initial Bankruptcy Notice

Upon receiving notice that a Borrower is engaged in a bankruptcy proceeding and the Loan is delinquent 30 days or more according to the terms of the original Note, or in foreclosure, a Bankruptcy Status Report **GMAC-RFC Form 2407** may be submitted within seven days of the Servicer's receipt of the bankruptcy notice, to GMAC-RFC's Servicer Management Department in Burbank.

(2) Delinquent Loans/Bankruptcy Report

Following initial notification to GMAC-RFC, the Servicer will only be required to update GMAC-RFC during the bankruptcy proceedings if:

- There is any change in the **Mortgaged Premises** occupancy status or condition (i.e. waste, vacancy, and/or abandonment, etc.), delay in court proceedings, dismissal, discharge, confirmation of a plan of reorganization that provides for changes in the terms of the Loan, etc. Such information should be forwarded promptly to GMAC-RFC's Servicer Management Department in Burbank. Where appropriate, supporting documentation must be attached.

**(D) Attorney's Fees**

The amount of the attorney's fees incurred in connection with the bankruptcy proceeding must be consistent with fees commonly charged for similar services in the area where the Mortgaged Premises are located. The Servicer must obtain GMAC-RFC's prior written approval for any fees in excess of the amount set forth in the Expense Reimbursement Guidelines **GMAC-RFC Form 2404** by submitting a Request for Loan Service Approval **GMAC-RFC Form 2400** and, with respect to Loans registered with MERS, they are in compliance with MERS' rules and procedures, as amended from time to time. Where legally permissible, the Servicer should attempt to obtain payment of the attorney fees and costs resulting from the proceedings directly from the Borrower and/or the bankrupt estate.

**(E) Monitoring Bankruptcy Attorney and Portfolio Performance**

At a minimum, the Servicer should monitor its retained bankruptcy counsel's performance in the following areas:

- Ability to promptly negotiate appropriate plans with the debtor;
- Pursuit of loss mitigation opportunities where appropriate;
- Compliance with GMAC-RFC's requirements regarding fees and expenses; and
- Length of time it takes to obtain relief from an automatic stay or the dismissal of a case.

The Servicer shall be responsible for reimbursing GMAC-RFC for any losses incurred because the Servicer or the attorney who handles the bankruptcy case fails to meet its responsibilities.

GMAC-RFC will review the Servicer's bankruptcy management performance on a Loan-level basis, as well as the Servicer's overall performance for all of its mortgages serviced for GMAC-RFC that are in bankruptcy status. A Servicer should be able to provide GMAC-RFC with documentation that demonstrates evidence that all required actions were taken to mitigate a specific bankruptcy in a timely and appropriate manner. If the Servicer is unable to document that it took appropriate actions for a specific bankruptcy and GMAC-RFC or its investors incur a loss that is directly attributable to the Servicer's failure to properly handle the bankruptcy, the Servicer may be asked to reimburse GMAC-RFC accordingly up to the amount of the loss.

## 439

### Foreclosures-General

The following Sections define GMAC-RFC's requirements for the Servicer's actions during foreclosure.

## 440

### Institution of Foreclosure

**(A) General**

Acceleration of a Loan must be accomplished in accordance with the terms of the **Security Instrument** and applicable law. In the absence of bankruptcy, a temporary restraining order, litigation, environmental hazard, lack of equity, an approved foreclosure alternative (repayment plan, forbearance, etc.), or GMAC-RFC's prior written approval to defer foreclosure proceedings, it will be the Servicer's obligation to complete the first legal action (defined as the recordation of the Notice of Default in a non-judicial proceeding, or filing of the Complaint, or an equivalent operation of law, in judicial proceedings) within 120 days following the default. For example, the 01/01/00 payment would be considered delinquent on 01/02/00. If the payment remained outstanding, the first legal action should be completed on or before 4/30/00 (i.e., within 120 days of the 01/02/00 default date). Exceptions to this must be justified in the Servicer's records and will be reviewed on a case-by-case basis.

Additionally, the Servicer must initiate foreclosure as soon as is legally possible to do so upon discovering the Borrower's abandonment of the property, and must comply with the Mortgage Insurer's requirements.

**(B) Servicer Responsibilities**

**The Servicer should not recommend foreclosure action until every reasonable effort has been made to cure the Delinquency as provided in this Servicer Guide.** The Servicer must perform an inspection of the **Mortgaged Premises** within 30 days prior to the date the Servicer refers the Loan to the foreclosure agent/attorney.

The Servicer must actively continue all efforts to cure the default, through collection efforts and loss mitigation solicitations throughout the foreclosure process.

The Servicer must prepare all necessary documentation to institute foreclosure proceedings. The Servicer must submit a Multipurpose Loan Service Report **GMAC-RFC Form 2401**, or similarly approved Servicer form, to GMAC-RFC, attaching all completed documents required to be executed by GMAC-RFC, or its designee, to instigate foreclosure proceedings. GMAC-RFC or its designee must not be substituted as a trustee under a Security Instrument in the form of a Deed of Trust.

The Servicer is required to review all documents submitted to GMAC-RFC for legal compliance and, with respect to Loans registered with MERS, they are in compliance with MERS' rules and procedures, as amended from time to time. GMAC-RFC's execution of any document submitted by the Servicer does not imply that GMAC-RFC has reviewed it for legal compliance or, with respect to Loans registered with MERS, they are in compliance with MERS' rules and procedures, as amended from time to time.

The Servicer is responsible for the Note and other **Loan Documents** (for Loans in original document states) while they are in the Servicer's custody, and must return the original legal documents to GMAC-RFC's Enterprise Service Delivery Operations in Minneapolis, Minnesota, no later than 30 calendar days after reinstatement, using the Document Release Transmittal **GMAC-RFC Form 2411**. A Servicer's failure to return original legal documents within such time period will result in a document fee of $100.00 per day, per Loan.

The Servicer is obligated to manage foreclosure proceedings in a prudent and timely manner. To conform to industry standards, GMAC-RFC defines the initiation of foreclosure as the date the file is referred to the attorney and/or trustee. Each Servicer is required to complete the foreclosure process through the foreclosure sale date / redemption / confirmation date. For those states with redemption, ratification or confirmation periods we expect to be notified of the expiration of these days as described within the time limits provided by this Servicer Guide, as amended from time to time. In the event that a Servicer exceeds the established time periods to complete foreclosure proceedings, a written explanation of the delay (i.e., bankruptcy, contested action, GMAC-RFC delay, or Servicer Error) should accompany the Multipurpose Fax Transmittal **GMAC-RFC Form 2405** or similarly-approved Servicer form, required to be submitted to GMAC-RFC within one **Business Day** following the foreclosure sale, pursuant to the **Foreclosure Sale Bidding Instructions** Section of this Servicer Guide.

**(C) Name in which to Foreclose**

GMAC-RFC uses a variety of custodians of Loan pools that are securitized. It is necessary that the Servicer foreclose in the name of the appropriate custodian for the affected Loan's pool. On or about the 45th day after the default (the same time that the Servicer will be breaching the delinquent Loan) GMAC-RFC will send a written notification to the Servicer advising in whose name to initiate the foreclosure. In some cases, a Loan's pool will have "special investor handling" requirements that may require additional approvals or actions, prior to the initiation of foreclosure. The same notification above will advise if there are any "special investor handling" requirements, and those requirements will be detailed within the notification. The Servicer must comply with the requirements. With respect to Loans registered with MERS, Servicers must be in compliance with MERS' rules and procedures, as amended from time to time.

Note: If the Servicer forecloses in a name other than that authorized by GMAC-RFC, the Servicer will be responsible for any additional legal fees, transfer taxes, other fees incurred, or time delays encountered in making the corrections for the proper vesting of the foreclosed property.

**(D) Legal Documents Necessary to Foreclose**

In accordance with the **Minimum Contents of Loan File** Section of this Servicer Guide, Servicers are required to retain a complete copy of the credit file, which includes copies of those legal documents necessary to initiate foreclosure in most states ("copy states"), other than Colorado, Connecticut, Delaware, Florida, Iowa, Louisiana, Maryland, Puerto Rico and Virginia ("original states"). Accordingly, a Servicer should not have to request any legal documents from GMAC-RFC to initiate foreclosure in copy states. In the event that the Servicer fails to retain the credit file and/or copies of related legal documents and must request a duplicate copy of one or more documents from GMAC-RFC to perform its Servicing obligations, the Servicer will be assessed a $10.00 copy fee payable to GMAC-RFC upon receipt of the GMAC-RFC duplicates.

Delegated Servicers (Servicers who are sub-servicing for GMAC-RFC on Loans purchased by GMAC-RFC on a Servicing-Released basis) may need to request copies of original documents if they did not receive them in the servicing package sent to them by GMAC-RFC. If documents are requested that are duplicates of documents previously sent to the Servicer, the copy fee above will apply.

In original states (see list above), the Servicer should request original legal documents from GMAC-RFC between the 75th and 90th days following the default. When requesting original documents, use the Document Services Form **GMAC-RFC Form 2204** and send to:

GMAC-RFC
One Meridian Crossings, Suite 100
Minneapolis, MN 55423
Attention: ESDO/Release, MS 03-03-30

This process will accommodate the Servicer's obligation to complete the first legal action within 120 days following the default.

### (E) Attorneys and Trustees

GMAC-RFC expects its Servicers to select attorneys/trustees who are able to complete foreclosure within the timeframes GMAC-RFC has established.

GMAC-RFC reserves the right at any time to select foreclosure and/or any other legal counsel, to require substitution of a trustee, and/or to name a substitute trustee in connection with the foreclosure. In Deed of Trust jurisdictions, the Servicer must ensure that an individual or entity free from any conflict of interest serves as trustee or substitute trustee. The Servicer must cooperate fully with foreclosure counsel, the trustee, or the substitute trustee to ensure prompt and efficient completion of the foreclosure proceedings. GMAC-RFC reserves the right to require the Servicer to relinquish the servicing of a Loan in default and to require the Servicer to resume servicing upon completion of foreclosure proceedings.

GMAC-RFC has approved a group of attorney/trustees who are specialists in the area of foreclosures to process non-judicial foreclosures for GMAC-RFC. These attorneys have agreed to be responsible for losses incurred due to their failure to properly meet their responsibilities, provided these losses or deficiencies are unrelated to any failure by the Servicer to provide the required documents, signatures, or information needed by the attorney/trustee. Delays caused by the Servicer will be the responsibility of the Servicer.

When referring a foreclosure to one of the following GMAC-RFC approved attorney/trustees, the Servicer should inform the trustee that the Loan is a GMAC-RFC Loan. Please note that only the states listed have been included in the approved attorneys/trustees program as of this date. Additional states will be added to the list periodically.

| Name and Address | Telephone and fax Number |
|---|---|
| Cal Western Reconveyance<br>525 East Main Street<br>El Cajon, CA 92020 | 619.590.9200<br>fax: 619.590.9299 |
| CTC Foreclosure Services<br>400 Countrywide Way<br>Simi Valley, CA 93065 | 800.281.8219<br>fax: 805.520.5066 |
| Executive Trustee Service<br>2255 North Ontario Street<br>Suite 400<br>Burbank, CA 91504 | 818.260.1600 (TX)<br>fax: 818.260.1840<br>800.665.3932 (CA, AZ, WA, OR, NY) |
| Professional Lenders Alliance<br>Shapiro & Miles<br>1665 Scenic Avenue, #200<br>Costa Mesa, CA 92626 | 800.750.8528<br>fax: 702.942.0411 |
| Robert Weiss, Inc.<br>920 Village Oaks Drive<br>Covina, CA 91724 | 626.967.4302<br>fax: 626.967.9216 |
| FCI<br>8180 E. Kaiser Blvd.<br>Anaheim, CA 92809 | 800.931.2424<br>fax: 714.282.2425 |
| TD Service Corporation<br>1820 East 1st Street. #210<br>Santa Ana, CA 92705 | 800.843.0260<br>714.543.8372<br>fax: 714.541.4130 |

The Servicer must refer its foreclosure file to the designated foreclosure attorney/trustee in sufficient time to ensure that the first legal action is initiated within 120 days from the date of default.

The Servicer must notify their assigned GMAC-RFC asset manager in Burbank, California of the foreclosure referral date /1st legal Action date within 10 days of the event occurring.

**(F) Broker's Price Opinion**

Within 30 days following the completion of the first legal action relating to a delinquent GMAC-RFC Loan, the Servicer is required to obtain and to provide GMAC-RFC, if requested, a valuation of the property completed as either an Automated Valuation Model (AVM) or a Broker's Price Opinion (BPO). AVMs must be provided by a GMAC-RFC AVM approved vendor as listed in **GMAC-RFC Form 2414**.

GMAC-RFC does not accept AVMs when the Servicer has input property data other than the property address or has altered or changed the AVM in any way from the original product supplied from the vendor. In the event of a no-hit or unsatisfactory result on the AVM, the Servicer is to obtain a BPO. GMAC-RFC expects the Servicer to be accountable for maintaining appropriate review processes and quality control for vendors supplying valuations.

Also, if the Servicer obtains an AVM and should the AVM return a substantial decrease in property Value, the Servicer is to obtain a BPO for confirmation. The Servicer is expected to use the valuation obtained to determine the most appropriate collection and loss mitigation activities, which minimize the risk of loss to GMAC-RFC and/or its investors.

A BPO is required for foreclosure sale bidding, as explained fully in the **Foreclosure Sale Bidding Instructions** Section of this Guide. The Servicer is expected to consider the appropriate foreclosure timeline as stated in the State Foreclosure Parameters Form, **GMAC-RFC Form 2410**, when ordering the valuation as above.

**(G) Trustee's Sale Guarantee/Litigation Policy**

Servicers may obtain the Trustee's Sale Guarantee (TSG) or Litigation Policy (LP) from any reputable title company. GMAC-RFC does not support the use of the limited TSG/LP; we expect a full TSG/LP policy as applicable on every foreclosure. The Servicer must review the TSG/LP to ensure GMAC-RFC's lien position remains as originally insured, and is not compromised or otherwise adversely affected.

The Servicer is responsible for periodic reviews of attorneys and trustees to ensure prompt and efficient completion of the foreclosure proceedings pursuant to GMAC-RFC's **State** Foreclosure Parameters **GMAC-RFC Form 2410**. GMAC-RFC may seek reimbursement for lost interest due to servicing delays within the Servicer's control at the time of the REO acquisition or REO disposition.

**(H) Attorney and/or Trustee Fees**

If necessary, in the Servicer's determination, the Servicer may retain an attorney and/or trustee whose fees are reasonable and comparable to fees customarily charged for the type of service rendered in the area in which the **Mortgaged Premises** are located. The Servicer must obtain GMAC-RFC's written approval if any fees exceed the allowable amount referenced in the Expense Reimbursement Guidelines **GMAC-RFC Form 2404**. The Servicer may use an in-house attorney in appropriate cases.

The Servicer must be familiar with fees and costs that are non-reimbursable and allowable limits as referenced in the **Non-reimbursable Expenses** Section of this Servicer Guide and Expense Reimbursement Guidelines **GMAC-RFC Form 2404**.

### (I) Recommending Judicial Foreclosure in Traditionally Non-Judicial Foreclosure States

Whenever a Servicer reviews a delinquent Loan for foreclosure in a State where the traditional method of foreclosure would be to foreclose non- judicially (yet the option to foreclose judicially exists) the Servicer must perform an evaluation of whether it would be more beneficial, as to recovery potential, to foreclose judicially or in some cases begin concurrent judicial and non-judicial foreclosures.

The following should be taken into consideration before recommending the pursuit of judicial foreclosure:

- Do the **Loan Documents** indicate that the Note is non-recourse
- Does **State** Code prevent a deficiency due to the nature of the transaction; i.e. on a purchase money transaction in the State of California there is no provision to obtain a deficiency against a **Borrower**
- The amount of the potential deficiency in relation to the time and costs necessary to collect the deficiency (including any redemption period given the Borrower if judicial foreclosure is chosen)
- The assets of the Borrower or guarantor affecting the collectibility of any deficiency judgment

In many cases, where the Borrower or guarantor wishes to protect certain assets or desires to avoid bankruptcy, a settlement can be reached prior to a judgment being issued in the judicial foreclosure process.

### (J) Deficiency Judgment

The Servicer must consider the possibility and likelihood of pursuing a deficiency judgment and its overall impact on the type of foreclosure proceedings to be pursued. **A deficiency judgment should be pursued when:**

- Local laws do not restrict the seeking of a deficiency judgment under the circumstances
- Dollar amount of the deficiency is significant
- Costs of pursuing the judgment in relationship to the amount of the estimated loss and the potential for delays in the foreclosure process are appropriate, and the Borrower has additional assets to pursue

The Servicer must comply with the appropriate foreclosure bidding instructions as permitted under applicable law that will permit the seeking of a deficiency judgment if the particular circumstances warrant, as described above.

The Servicer must obtain prior written approval from GMAC-RFC before instituting deficiency judgment proceedings, as described in the **Foreclosure Sale Bidding Instructions** Section of this Servicer Guide. The Servicer may use an in-house attorney or may retain an attorney whose fees are reasonable and comparable to the fees customarily charged for the type of service rendered in the area in which the **Mortgaged Premises** are located. The Servicer must obtain GMAC-RFC's approval prior to the expenditure of additional funds for obtaining and/or collecting on a deficiency judgment.

## 441

## Action During Foreclosure

### (A) Protective Action

The Servicer must take appropriate action during the foreclosure process to protect the **Mortgaged Premises**, including, but not limited to, boarding and/or securing the Mortgaged Premises, preservation and protection of the Mortgaged Premises, enforcement or other proceedings (eviction), and eliminating possible health and safety hazards. The Servicer must obtain GMAC-RFC's approval prior to the expenditure of more than the amount referenced in the Expense Reimbursement Guidelines **GMAC-RFC Form 2404** to protect the Mortgaged Premises. If delaying protective action might result in the impairment of the Mortgaged Premises, the Servicer must telephone GMAC-RFC to obtain its immediate approval of any expenditure in excess of the amount referenced in **GMAC-RFC Form 2404**. GMAC-RFC will send the Servicer a confirmation of the cost and nature of the protective action approved.

### (B) Payment of Obligations

During the foreclosure process, the Servicer must retain the **Borrower**'s **Escrow/Impound** funds and any unapplied funds. The Servicer must obtain bills for and effect payment of, whether from the Escrow/Impound funds or the Servicer's own funds, all obligations to be paid under the Loan, including, but not limited to, taxes, special assessments, ground rents, and other charges that are, or may become, first liens upon the Mortgaged Premises, as well as hazard and mortgage insurance premiums.

### (C) Foreclosure Exception Reporting

During the course of any foreclosure proceeding the Servicer is required to promptly notify GMAC-RFC of any change in occupancy status/condition (i.e., waste, vacancy, and/or abandonment, etc.), delay in foreclosure proceedings, reinstatement, etc. See the **Offer of Payment During Foreclosure** Section of this Servicer Guide. Such information should be noted on the Multipurpose Loan Service Report **GMAC-RFC Form 2401** and forwarded to GMAC-RFC's Servicer Management Department in Burbank. When appropriate, supporting documentation must be attached.

**(D) Buydown Account**

The Servicer must dispose of any funds remaining in a buydown account of a Loan in accordance with the terms of the applicable buydown agreement. The Servicer must not automatically apply buydown funds to reduce the principal balance of the Loan or to reduce any other obligations of the **Borrower** under the Loan. The buydown funds may be so applied, however, with the Borrower's consent at the time that the application of buydown funds is sought.

**(E) Inspections**

During the foreclosure process, the Servicer must inspect the **Mortgaged Premises** at least monthly, and more frequently if the property is vacant or as other circumstances warrant. Care and condition of the property, as well as economic variables, can affect the value of the mortgaged property as the foreclosure process continues. It is incumbent upon the Servicer to review in detail the required monthly property inspections for signs of waste and deterioration, and to be aware of regional economic trends affecting property values. If during the foreclosure process (especially in a long or delayed foreclosure) a Servicer finds that the property value has been adversely affected, the Servicer should request a current fair market valuation (BPO) to make sure that foreclosure remains a viable resolution in mitigating investor losses. If the property is found to be vacant or unsecured, the BPO obtained should include an interior inspection and the property should be secured. Current values must also be used in driving loss mitigation solutions to avoid foreclosure whenever possible.

**(F) Attorney/Trustee Contact**

The Servicer must contact the attorney/trustee at least monthly during foreclosure to ensure that timely and appropriate actions are being taken to ensure foreclosure proceedings are carried out within the stated timelines.

**(G) Toxic Waste or Other Environmental Hazards**

The Servicer must advise GMAC-RFC if toxic or other hazardous waste is discovered at the **Mortgaged Premises**. In the event toxic waste or other hazardous waste is discovered, an estimate of the cost to clean up the Mortgaged Premises must be submitted to GMAC-RFC. The Servicer must also provide GMAC-RFC with an appraiser's opinion as to the impact the hazard may have on the future marketability and Value of the Mortgaged Premises. In the event the Mortgaged Premises have been approved for foreclosure, the cost of the cleanup and the potential sales Value of the Mortgaged Premises must be assessed in writing and submitted to GMAC-RFC. Thereafter, GMAC-RFC will determine if the foreclosure will be completed. If the cost to clean up the Mortgaged Premises exceeds the potential sales price, the foreclosure will not typically be completed.

## 442

## Offer of Payment During Foreclosure

### (A) Full Payment

If, during foreclosure, the **Borrower** offers payment of the full **Delinquency**, including attorney/trustee's fees and all other foreclosure expenses incurred by the Servicer, the Servicer may accept the Borrower's offer. The Servicer may not decline the Borrower's offer, however, without obtaining GMAC-RFC's prior approval.

If the Borrower's offer is accepted, the Servicer must ascertain and document for the Borrower all foreclosure costs and expenses that have been incurred or will be incurred. Upon receipt of full payment from the Borrower of such expenses, the Servicer must take appropriate action to prevent additional foreclosure expenses from being incurred, and must apply the Borrower's payment to the Borrower's principal and interest account and the **Escrow/Impound** account, and to pay such foreclosure expenses. If the Borrower brings the Loan current while the Loan is in foreclosure, the Servicer must immediately notify GMAC-RFC's Servicer Management Department, in Burbank by telephone at 818.260.1400, of the reinstatement and confirm in writing by submitting the Multipurpose Loan Service Report **GMAC-RFC Form 2401** and for Loans registered with MERS, prepare and execute all instruments, notices and other documents necessary or reasonably required to reinstate the Mortgage and to re-activate the Loan on MERS, each in accordance with MERS' rules and procedures, as amended from time to time. The Servicer must also complete the bottom of the Document Release Transmittal **GMAC-RFC Form 2411** and promptly return the Note and other **Loan Documents** to GMAC-RFC's Enterprise Service Delivery Operations in Minneapolis, Minnesota.

### (B) Full Payoff

Certain State laws do not allow for the full collection of attorney fees, foreclosure fees and costs when a Borrower pays off the Loan during default, foreclosure or bankruptcy. Upon receipt of the Loan payoff in this situation, the Servicer must notify its assigned portfolio asset manager at GMAC-RFC in Burbank within 24 hours and process the payoff funds as a short payoff. For remittance and settlement/reimbursement, see the **Loss Mitigation Workouts** Section of this Guide.

### (C) Partial Payment

The Servicer must accept partial reinstatement of a Loan in foreclosure, if the following conditions are met:

(1) The Borrower executes a written plan for repayment of all delinquent principal, interest, and applicable escrow, as well as all scheduled monthly payments, for up to 12 months. Within the plan, the Borrower agrees that foreclosure proceedings are suspended, but that the Servicer is entitled to re-commence foreclosure proceedings at the point the foreclosure was suspended if the Borrower defaults on the plan. Refer to **Repayment Plan** and **Special Forbearance Relief Agreement** Sections for further guidelines on repayment plans.

(2) The Borrower submits payment in certified funds of a) at minimum, the first payment due under the above repayment plan, plus b) all outstanding legal fees and related expenses.

(3) The Borrower submits information demonstrating financial ability to make not only the plan payments but also to continue making regular monthly payments upon completion of the plan.

At the end of the repayment plan, the Servicer may arrange with the Borrower to collect accrued late charges, inspection and BPO fees as applicable, dependent on State laws.

## 443

### Foreclosure Sale Bidding Instructions

**(A) Foreclosure Sale Bidding Instructions**

The Servicer must conform to all bidding instructions and requirements of the **Mortgage Insurer**, when applicable.

For home mortgages that are not insured by a Mortgage Insurer, the Servicer must enter a bid on behalf of the record owner of the Loan equal to the lesser of the fair market Value of the property or the total indebtedness, as allowable under **State** law. The Servicer must issue these instructions to its employee, agent, attorney or other designee attending the foreclosure sale, unless otherwise directed by GMAC-RFC.

The fair market Value must be supported by a **Broker's Price Opinion** (BPO) as reviewed by the Servicer, obtained no more than 120 days prior to a scheduled foreclosure sale. The BPO must reflect the Value of the property in an "as is" condition. The BPO must be completed by a licensed real estate broker free from any conflict of interest or financial interest in the transactions, other than the broker's reasonable fee for the BPO. Failure to submit bidding instructions ten days prior to the scheduled sale date may result in a **Per Diem** Penalty.

When State law requires an appraisal, the Servicer must obtain an appraisal using the applicable residential appraisal report for single-family dwellings.

If the Servicer does not believe that the foregoing bidding requirements are in GMAC-RFC's best interest, the Servicer must inform GMAC-RFC prior to making the foreclosure bid of its reasons as to why bidding pursuant to these requirements would adversely affect GMAC-RFC.

**(B) Notification**

The Servicer must notify GMAC-RFC of a foreclosure sale and the bidding strategy no later than ten days prior to the scheduled foreclosure sale. The Servicer must provide the BPO value and statement of total indebtedness as of the foreclosure sale date. The Servicer may use its own form for notification including a computer generated form, provided that the form allows the Servicer to record and report, at a minimum, the information requested in the Multipurpose Loan Service Report **GMAC-RFC Form 2401**.

Failure to submit the aforementioned information/documentation in accordance with timelines may require the Servicer to postpone the scheduled foreclosure sale date and subject the Servicer to a **Per Diem** Penalty.

**(C) Postponements**

The Servicer may postpone a scheduled foreclosure sale if said postponement is for the purpose of mitigating loss and after a thorough analysis of the circumstances support the decision to postpone or the postponement is provided for under operation of law.

**(D) Notification of Foreclosure Sale and Acquisition of Title**

A Servicer must send by fax or email written notification of both the foreclosure sale and the expiration of any applicable redemption period to GMAC-RFC. Such notification must be provided to GMAC-RFC's Servicer Management Department in Burbank no later than the first **Business Day** immediately following the date of both the foreclosure sale of the property and the expiration of any redemption period. Notification must include the following:

- GMAC-RFC Loan number
- Sale sate
- Final bid amount
- Results of sale
- Name of firm, telephone number, and foreclosing attorney and/or trustee contact
- Redemption and/or confirmation date, if any

**(E) Penalty for Failure to Notify of Foreclosure Sale**

Failure to notify GMAC-RFC Servicer Management Department in Burbank as described above may result in the Servicer being charged a penalty of $100 per day until the notification is received.

**(F) Third Party Sale**

If Third Party Funds received are sufficient to pay Loan in full, including advances incurred by the Servicer, and Third Party funds are received in same month as the Third Party Sale date, then Servicer should refer to the Payoff section of the Guide and should report the Third party Sale Date as the payoff date, so that no additional interest will be calculated.

The Servicer must wire transfer the entire amount of third party short proceeds to GMAC-RFC in Burbank within five Business Days of the foreclosure sale date (or prescribed statutory period) using the wire transfer instructions noted below. On the day proceeds are wired, the Servicer must submit, via fax, a Multipurpose Fax Transmittal **GMAC-RFC Form 2405** to GMAC-RFC's Servicer Management Department in Burbank. The Servicer must indicate the wire confirmation number, date of wire, GMAC-RFC Loan Number, **Borrower** Name, and settlement amount.

Residential Funding Company, LLC
C/O US Bank, Minneapolis, MN
Acct.# 104774437669
ABA# 091 000 022
Servicer ID# and Name
GMAC-RFC Loan#
Refer to: Third Party Proceeds

If Third Party funds received are sufficient to pay Loan in full, including advances incurred by the Servicer, and Third Party funds are received in the following month or subsequent months due to state guidelines and timeframes for distribution of Third Party Sale funds, this event will be considered Third Party Short. The Servicer must then file a claim for all expenses using **GMAC-RFC Form 2409**, and is required to provide a complete breakdown of all advances and costs collected at time of Third Party sale. GMAC-RFC will then reimburse the Servicer for the full amount of the breakdown.

**Servicer MUST note on the claim that this was a Third Party Full Sale in order for the full amount to be reimbursed.**

### (G) Reimbursements on Processing Claims

The following are required when processing a third party short sale:

- Within 14 calendar days of receipt of proceeds to GMAC-RFC, the Servicer shall submit to GMAC-RFC a Statement of Foreclosure/REO Expenses **GMAC-RFC Form 2409** if applicable. When submitting the Statement of Foreclosure/REO Expenses form, the Servicer must clearly check the box indicating third party sale. For required documentation to support the expenses, refer to the **Foreclosure Statement of Expenses** Section of this Servicer Guide. GMAC-RFC will issue payment at its sole discretion and on a case-by-case review.
- The Servicer may submit a supplemental request for reimbursement of those expenses not received during the filing period for the pre-acquisition expenses. The Statement of Foreclosure/REO Expenses **GMAC-RFC Form 2409** must be received by GMAC-RFC's Claims Administration Department within 30 calendar days of receipt of proceeds to GMAC-RFC. Additionally the pre-acquisition expenses listed on the Statement of Foreclosure/REO Expenses form must have been received in a timely manner. Supplemental claims received after 30 calendar days will be denied. When submitting the Statement of Foreclosure/REO Expenses form, the Servicer must clearly check the box indicating supplemental. For required documentation to support the expenses, refer to the **Foreclosure Statement of Expenses** Section of this Servicer Guide. For expenses that were denied, the Servicer, if warranted, may still file a supplemental claim even if the specified timelines have passed, as long as it is filed within 14 calendar days from the date the Servicer was notified of the denial by Claims Administration in Burbank via email, fax or regular mail. GMAC-RFC will issue payment at its sole discretion and on a case-by-case review. Refer to the **Mortgage Insurance** or **Pool Insurance** Sections of this Servicer Guide for claim filing procedures and guidelines.
- If the Loan is insured by primary mortgage insurance, and there are insufficient proceeds to pay the Loan in full, the Servicer must file the claim within 30 calendar days of the receipt of the third party sale proceeds by GMAC-RFC and submit a copy of the completed claim to GMAC-RFC's Claims Administration Department in Burbank. The Servicer must fulfill its procedural obligation under insurance policies and carry out its responsibilities in a manner which will not jeopardize the timely or ultimate payment of claims by the insurer. In cases where GMAC-RFC has advised the Servicer that the **Mortgaged Premises** is covered by pool insurance, the Servicer must file the claim within 30 calendar days of either (i) the settlement of the **Mortgage Insurer**'s claim and submit a copy of the completed claim form to GMAC-RFC's Claims Administration Department, or (ii) the receipt of the GMAC-RFC notice if no primary mortgage insurance exists. The Servicer may not recover expenses advanced until GMAC-RFC has received the mortgage and/or pool insurance proceeds and reviewed the benefit settlement letter. Refer to the **Mortgage Insurance** or **Pool Insurance** Sections of this Servicer Guide for claim filing procedures and guidelines.

### (H) Penalties

- Failure to remit the entire amount of the funds for a Loan that is liquidated as a result of a third party short sale within five **Business Day**s of the foreclosure sale date (or prescribed statutory period) will result in a cash adjustment. The cash adjustment will be equivalent to the Per Diem interest calculated using the Prime Rate printed in *The Wall Street Journal* in its regular column entitled "Money Rates," plus 3%. The cash adjustment will begin to accrue on the next Business Day from the due date through and including the date the funds are received in the appropriate GMAC-RFC account.
- A penalty in the amount of $500 will apply should the Servicer fail to file a mortgage insurance claim within 30 calendar days from GMAC-RFC's receipt of the third-party sale proceeds. This penalty is in addition to any Per Diem interest that is not paid by the Mortgage Insurer.
- Failure to remit the Mortgage Insurance proceeds and documentation within 12 calendar days of the date of the settlement check will result in a cash adjustment to the Servicer's claim for Foreclosure/REO expenses **GMAC-RFC Form 2409**. The cash adjustment will be equivalent to Per Diem interest calculated using the Prime Rate printed in *The Wall Street Journal* in its regular column entitled "Money Rates," plus 3%. The cash adjustment will begin to accrue on the 13th calendar day through and including the date settlement funds are received in the appropriate GMAC-RFC account.
- The Servicer is subject to the following schedule of penalties, based on the timelines of GMAC-RFC's receipt of the Statement of Foreclosure/REO Expenses **GMAC-RFC Form 2409**.

| Receipt by GMAC-RFC | Penalty Amount |
|---|---|
| 15 - 20 calendar days | $250.00 |
| 21 - 25 calendar days | $500.00 |
| 26 - 30 calendar days | $750.00 |
| 31 or more calendar days | no reimbursement/denial of claim |

- For further clarification, refer to the **Indemnification** Section and the **Right of Set-Off** Section of this Servicer Guide.

## 444

### Foreclosure Statement of Expenses

For **Mortgaged Premises** sold at a foreclosure or pre-foreclosure sale, but not acquired by a third party at the foreclosure sale, GMAC-RFC will reimburse the Servicer for advances made for reasonable expenses incurred during the foreclosure proceedings and during the period pending disposition of the REO, subject to written approval by GMAC-RFC's Servicer Management Department in Burbank, when applicable.

The Servicer may not net any expenses against the mortgage insurance or sales proceeds.

The Servicer may not directly or indirectly charge GMAC-RFC, the foreclosure attorney/ trustee or the bankruptcy attorney for any of the foreclosure or bankruptcy-related servicing obligations of a particular Mortgage, unless this Guide or any other Purchase/Servicing Document specifically authorizes the charge or compensation.

If GMAC-RFC determines that a Servicer or any third party retained by the Servicer to perform any of its servicing obligations, (commonly referred to as outsourcing) has passed or charged, directly or indirectly, to GMAC-RFC, the foreclosure attorney/trustee or the bankruptcy attorney any expenses for servicing obligations covered by the servicing fee or any expenses itemized in the **Non-reimbursable Expenses** Section of this Guide, GMAC-RFC may:

- Refuse to reimburse the Servicer for any attorney fees and foreclosure and bankruptcy costs related to the applicable Mortgage and/or
- Preclude the attorney who pays such expense on GMAC-RFC Mortgages from processing future foreclosures or bankruptcies for GMAC-RFC

If GMAC-RFC has already reimbursed the Servicer for any attorney fees or foreclosure and bankruptcy costs, then GMAC-RFC may elect to offset the entire legal fee from future foreclosure expenses or may seek reimbursement of the entire legal fee with interest.

**(A) Reimbursements**

In the event of foreclosure, the Servicer must advance from its own funds all expenses as they occur, subject to GMAC-RFC approval as specified in this Servicer Guide. Such expenses may include, but are not limited to, expenses related to the preservation and protection of the **Mortgaged Premises**, enforcement or other proceedings (eviction), and management disposal of the Mortgaged Premises after the acquisition through foreclosure. If foreclosure proceedings are discontinued, the Servicer must collect all fees and expenses from the Borrower. If, however, such collection is prohibited by law, GMAC-RFC will reimburse the Servicer for any fees and expenses which were within the Servicer's authority to incur or which were approved by GMAC-RFC prior to being incurred.

IRS regulations require that pre-acquisition expenses (such as trustee or attorney fees, court costs, advertising, title policy costs, emergency preservation costs, etc.) be separated from those normally incurred after a property has been acquired (post-acquisition expenses).

(1) Pre-acquisition Expenses

The Servicer will request reimbursement for all expenses incurred during the foreclosure process up to and including the date of acquisition (foreclosure sale or redemption date whichever is greater) by submitting the Statement of Foreclosure/ REO Expenses **GMAC-RFC Form 2409**. This form must be received by the GMAC-RFC's Claims Administration Department in Burbank within 30 calendar days of the acquisition date. When submitting this initial Statement of Foreclosure/REO Expenses form, the Servicer must clearly check the box indicating pre-acquisition expenses. If the Loan is covered by mortgage and/or pool insurance, the Servicer may not recover advances for pre-acquisition expenses until GMAC-RFC has received mortgage and/or pool insurance proceeds when applicable. Refer to the **Mortgage Insurance** or **Pool Insurance** Sections of this Servicer Guide for claim filing procedures and guidelines. GMAC-RFC will issue payments at its sole discretion and on a case-by-case basis.

(2) Post-acquisition Expenses

The Servicer may request reimbursement for all reimbursable expenses incurred after acquisition by submitting a Statement of Foreclosure/REO Expense **GMAC-RFC Form 2409** that must be received by GMAC-RFC's Claims Administration Department in Burbank within 14 calendar days of the close of escrow notification letter. The close of escrow notification letter will only be sent to those Servicers that do not market GMAC-RFC REO properties. The Servicer must clearly check the box indicating "post-acquisition" expenses. The Servicer may not recover advances for post-acquisition expenses until GMAC-RFC has received sale proceeds, and pool and/ or mortgage insurance proceeds when applicable. GMAC-RFC will issue payments at its sole discretion and on a case-by-case review. If the Loan is insured by mortgage and/or pool insurance, refer to the **Mortgage Insurance** or **Pool Insurance** Sections of this Servicer Guide for claim filing procedures and guidelines.

(3) Supplemental Post-acquisition Expenses

The Servicer may submit a supplemental request for reimbursement of those expenses not received during the filing period for the post-acquisition expenses. The Statement of Foreclosure/REO Expenses **GMAC-RFC Form 2409** must be received by GMAC-RFC's Claims Administration Department within 60 calendar days of close of escrow date. Additionally, the post-acquisition expenses listed on Statement of Foreclosure/REO Expenses form must have been received in a timely manner. When submitting the Statement of Foreclosure/REO Expenses form, the Servicer must clearly check the box indicating supplemental. For expenses that were denied, the Servicer, if warranted, may still file a supplemental claim even if the specified timelines have passed, as long as it is filed within 14 calendar days from the date the Servicer was notified of the denial by Claims Administration in Burbank via email, fax or regular mail. GMAC-RFC will issue payments at its sole discretion and on a case-by-case review. If the Loan is insured by mortgage and/or pool insurance, refer to the **Mortgage Insurance** or **Pool Insurance** Sections of this Servicer Guide for claim filing procedures and guidelines. The Servicer may not recover expenses advanced until GMAC-RFC has received the mortgage or pool insurance proceeds and reviewed the benefit settlement letter.

(4) Required Documentation for Expenses:

To obtain reimbursement of advances, the Servicer must submit to GMAC-RFC a completed Statement of Foreclosure/REO Expenses **GMAC-RFC Form 2409**. The Loan payment history and copies of all supporting documentation must be attached.

- Copies of all invoices for foreclosure expenses must accompany **GMAC-RFC Form 2409**.
- The Loan payment history should include the paid-to date of the Loan through the claim filing date. Hazard insurance, mortgage insurance and real estate tax payments must be clearly identified on the Loan history with the appropriate coverage dates for each disbursement (i.e., school, city and county). Base, penalty, interest and fee payments for taxes must be identified separately; otherwise, the full amount will be subject to denial.
- The Servicer should use any funds remaining in the escrow deposit account to pay taxes and insurance premiums that become due during the delinquency process. If there is a positive balance when the claim is filed, that positive balance must be included in the claim to GMAC-RFC.
- The maximum attorney fees that GMAC-RFC will pay for routine foreclosures and bankruptcy clearances appear in the Expense Reimbursement Guidelines **GMAC-RFC Form 2404**. Fees higher than published amounts must be approved by GMAC-RFC.

(5) Principal and Interest Advances

After the foreclosure sale or redemption period has expired, the Servicer will be responsible for removing the Loan from its trial balance per instructions listed below:

- The Loan is to be removed from the Servicer's trial balance at the end of the following month after the foreclosure sale takes place and GMAC-RFC has acquired marketable title to the REO property. In cases where redemption is involved, the Loan should be removed at the end of the following month once the redemption period has expired.
- The last principal and interest advance will take place on the first of the following month after the foreclosure sale takes place and GMAC-RFC has acquired marketable title to the REO property. In cases where redemption is involved, the last principal and interest advance will take place on the first of the following month once the redemption period has expired.

The Servicer may not recover advances of principal and interest until GMAC-RFC has received the proceeds from the sale of the REO property, and if applicable, the pool insurance proceeds. For details of the reimbursement of principal and interest, refer to the **Advances to Principal and Interest Custodial Account** Section of this Servicer Guide. The principal and interest advances will be automatically reimbursed by GMAC-RFC.

**(B) Condominium**

Unpaid dues or charges. Any first mortgagee who obtains title to a condominium unit pursuant to the remedies in the mortgage or through foreclosure of the mortgage will not be liable for the unit's unpaid dues or charges accrued before the acquisition of the title to the unit by the mortgagee.

**(C) Non-reimbursable Expenses**

GMAC-RFC considers the following items to be standard operating costs for the Servicer, attorney, or broker and, as part of the cost of doing business, are not reimbursable:

(1) Property inspection fees

(2) Photographs

(3) Long-distance telephone calls

(4) Regular postage

(5) Mileage or travel costs

(6) Fax Charges

(7) Photocopy costs

(8) Property taxes that "became due" (the date by which the Servicer would pay property taxes for escrowed Loans) more than 12 months prior to the "**Payment Default Date**".

(9) Interest, penalty or late fees associated with non-reimbursable tax payments.

(10) For escrowed Loans, interest, penalty or late fees associated with tax payments.

(11) For non-escrowed Loans, interest, penalty or late fees associated with tax payments, except for such charges that accrued in the 12 months prior to the "**Payment Default Date**" and associated with tax payments that "became due" (the date by which the Servicer would pay property taxes for escrowed Loans) during the 12 months proceeding the "**Payment Default Date**".

(12) Interest penalties, late charges, or legal fees for late payment of condominium dues, utility bills, and senior lien principal and interest payments.

(13) Unpaid charges plus applicable penalties not paid in a timely manner, per requirements of this Servicer Guide.

(14) "Soft costs" are generally considered to be overhead costs, such as time expended or fees for curing a **Delinquency**, document preparation, secretarial services, word processing services, notary public services, new case start-up fees, co-counsel fees, charges for certified copies, telephone charges and charges for calls or correspondence to GMAC-RFC.

(15) In-house counsel time expended or fees incurred when the reimbursable matter is handled by outside counsel.

(16) Appraisals and **Broker's Price Opinion**s except when requested by, or approved in writing by GMAC-RFC or required by this Servicer Guide.

(17) Title insurance policies, except when requested by GMAC-RFC or approved in writing by GMAC-RFC.

(18) Mortgage credit life insurance premiums

(19) Mailgram charges

(20) GMAC-RFC will not reimburse a Servicer for legal fees and expenses related to actions that are essentially servicing functions or for expenses that are properly allocated to the attorney's overhead expenses.

(21) Attorney fees for correcting matters which should have been resolved prior to foreclosure sale, including any costs to resolve real property title issues resulting from the Seller's or Servicer's actions or inactions.

(22) Service calls or trip charges

(23) Monthly cleaning

**(D) Legal Expenses**

When applicable law does not permit the payment of legal expenses from the proceeds of a third party sale, GMAC-RFC will pay such expenses.

**(E) Penalties on Pre-acquisition Expenses**

The Servicer is subject to the following schedule of penalties, based on the timeliness of GMAC-RFC's receipt of the Statement of Foreclosure/REO Expenses **GMAC-RFC Form 2409** following the foreclosure sale:

| Receipt by GMAC-RFC (from actual sale date or redemption date whichever is greater) | Penalty Amount |
|---|---|
| 31 - 45 calendar days | $500 |
| 46 - 60 calendar days | $1,000 |
| more than 60 calendar days | No reimbursement |

**(F) Penalties on Post-acquisition Expenses**

The Servicer is subject to the following schedule of penalties, based on the timeliness of GMAC-RFC's receipt of the Statement of Foreclosure/REO Expenses **GMAC-RFC Form 2409** following the disposition of the REO property:

| Receipt by GMAC-RFC (from close of escrow date or notification letter date if applicable) | Penalty Amount |
|---|---|
| 15 - 30 calendar days | one month principal and interest or $500, whichever is greater |
| more than 30 calendar days | claim denial |

### (G) Penalties on Post-supplemental Expenses

The Servicer is subject to the following schedule of penalties, based on the timeliness of GMAC-RFC's receipt of the Statement of Foreclosure/REO Expenses **GMAC-RFC Form 2409** following the disposition of the REO property:

| Receipt by GMAC-RFC (from close of escrow) | Penalty Amount |
|---|---|
| more than 60 calendar days | claim denial |

### (H) Reimbursement on Processing Delays of Post Acquisition Expenses

The Servicer may request from GMAC-RFC payment of a penalty of **Per Diem** interest, using the Prime Rate printed on the first **Business Day** of each month in *The Wall Street Journal* in its regular column entitled "Money Rates" plus three percent. The request must be made within 30 days of receipt of claim payment if and where GMAC-RFC's reimbursement of acquisition expenses exceeded 30 days from the date the completed claim is received to the date of wire or postmark to the Servicer. Loans covered by mortgage insurance, pool insurance or pending payment from the Investor will be excluded.

If the request is received after 30 days of claim payment no penalty will be paid.

## 445

## Real Estate Owned (REO)

### (A) General

The Servicer must contact GMAC-RFC, Servicer Management Department in Burbank by fax within one **Business Day** after the foreclosure sale to report that the property has become **Real Estate Owned (REO)** and of the amount of total indebtedness as described in the **Foreclosure Sale Bidding Instructions** Section of this Servicer Guide.

GMAC-RFC will be responsible for management, selection of appraisers/brokers, marketing, maintenance, security, and rehabilitation of **Mortgaged Premises** which become REO through the final disposition of the REO property.

GMAC-RFC may in its sole discretion terminate without cause or compensation the Servicer's Servicing Rights with respect to any Loan to which there has been a foreclosure at any time following that foreclosure upon verbal notice to the Servicer. In the event of any such termination, Servicer will at its own expense comply with all instructions received from GMAC-RFC with respect to the transfer of such Servicing Rights, including, without limitation, the transfer of **Loan Documents** and records.

In the event that GMAC-RFC does not elect to exercise its right to terminate the Servicer's **Servicing Rights** following foreclosure, the Servicer will retain the following responsibilities pending actual property disposition:

- Paying hazard insurance premiums (REO asset must be insured with an industry-standard REO policy for either the last known amount or an amount equal to 80% of the replacement cost of the improved property), property taxes, special assessments, and condominium assessments. The Servicer is responsible for notifying the appropriate taxing authorities and homeowners' associations, if applicable, of GMAC-RFC's and/or the beneficiary's ownership of a property.
- Paying maintenance, security and rehabilitation expenses incurred by GMAC-RFC and its broker. Once a property becomes **Real Estate Owned (REO)**, GMAC-RFC will monitor and approve these costs through its designated property brokers.
- Ensure that GMAC-RFC and/or the beneficiary obtains clear marketable title. The recorded trustee's deed or similar documents should be forwarded to the GMAC-RFC's Servicer Management Department in Burbank within five **Business Day**s after acquisition.
- Evicting occupants, but only as directed by GMAC-RFC.
- When it is necessary to file a hazard insurance claim, the Servicer will notify GMAC-RFC's subsidiary, GMAC Mortgage, LLC, that a claim needs to be filed. GMAC Mortgage, LLC will file and adjust the claim to final settlement. The Servicer will cooperate fully by furnishing all requested information to GMAC Mortgage, LLC. If you are one of GMAC-RFC's approved designated marketers, then it will become your responsibility to file and adjust the claim to final settlement. All loss drafts should be made payable to GMAC-RFC if you are the marketer of the REO property, otherwise, forward them to the following address:

  GMAC Mortgage, LLC
  2711 N. Haskell Ave, Suite 900
  Dallas, TX 75204
  Attention: Insurance Services Department

  Servicer shall file all claims for pool and mortgage insurance.
- Fulfilling all reasonable, special requests from GMAC-RFC.

**(B) Marketing REO Assets**

The marketing process should begin within 48 hours of the Acquisition date. For those Servicers who are notified by GMAC-RFC, the 48 hours will begin from the notification date. Should a delay occur where the Servicer is deemed responsible, GMAC-RFC will retain its right to impose a penalty of **Per Diem** interest for the days lost.

The GMAC-RFC assigned Servicer and marketer will be responsible for the marketing and timely disposition of the**Real Estate Owned (REO)** Assets. In connection therewith, the Servicer must ensure that all REO property is listed with qualified, knowledgeable and motivated brokers in the market area. The Servicer must monitor both its REO personnel and its vendors for performance standards.

REO Properties should be sold within six months of the acquisition or eviction end date, whichever is later. Any property in REO status greater than 6 months should be thoroughly documented with an explanation for the delay, along with the evidence of efforts being made to sell the property. It is GMAC-RFC's expectation that the older the REO asset, the higher the priority should be to get it sold.

Each REO property shall have its own marketing plan. The marketing plan does not have to be submitted to GMAC-RFC; however, documentation of the marketing plan must be contained in the Servicer's REO file. The plan, at a minimum, should include a recommendation for the most cost-effective manner to dispose of the REO property based on a cost analysis.

GMAC-RFC's expectation is that the Servicer lists and sells the properties at a price that will net the maximum amount to GMAC-RFC and its investors. Properties that sell for less than the established value should have an updated marketing plan and values supporting the decision.

If the property is mistakenly or inadvertently taken off the market, so that marketing time is lost, GMAC-RFC will look to the Servicer to be reimbursed for the **Per Diem** pre-existing note rate for the total days lost.

A property that is not marketable will be reported as a GMAC-RFC active asset. The Servicer will be responsible for resolving any issues that impede its ability to market the asset and/or exhaust all efforts to resolve it on its own. Any delay in the marketing process should be thoroughly documented, along with the efforts, and maintained in the Servicer's records. Should issues arise that require Master Servicing's involvement, a written recommendation should be made to the REO Asset Manager, along with the reasons that cost-justify or otherwise support the recommendation.

GMAC-RFC retains its right to request such information on any asset at its discretion. Should the Servicer be unable to provide such documentation GMAC-RFC reserves its right to assess a penalty of **Per Diem** interest in the event it is determined GMAC-RFC has incurred a loss.

**(C) Repurchase Recommendations**

The Servicer should forward repurchase recommendations to the REO Asset Manager at GMAC-RFC, with supporting documentation. The Servicer should continue with their normal process of liquidating the asset unless otherwise instructed by GMAC-RFC.

**(D) Evictions**

Evictions should be completed in accordance with the State timelines. The guidelines for these timelines can be found in the USFN eviction timeline matrix or from the servicer's eviction attorneys. Eviction delays should be thoroughly explained in the servicer's records and an action plan should be established. It is GMAC-RFC's expectation that eviction files are closed as soon as possible and that Loss Mitigation efforts (such as cash for keys) are being offered when they are likely to minimize GMAC-RFC's costs.

## 446

### Required Documentation and Reporting

**(A) Initial Documents**

Within ten **Business Day**s after acquiring marketable title to any **Real Estate Owned (REO)** property, the Servicer(s) (other than those assigned and designated as the GMAC-RFC Servicer and marketer) must forward the information below, along with a copy of the GMAC-RFC notification to:

GMAC Mortgage, LLC
2711 N. Haskell Ave, Suite 900
Dallas, TX 75204
Attn.: Title Department

(1) Evidence of title to the REO property in the name of Residential Funding Company, LLC, or its designee

(2) Last assignment of Mortgage/Deed

(3) Recorded Trustee's Deed or applicable recorded proof of ownership

(4) Foreclosure sale BPO

(5) Foreclosure attorney or trustee name and telephone number

(6) Hazard insurance carrier name, contact person and telephone number, policy number, and policy period

(7) Trustee's sale guarantee or litigation policy

The REO property will be managed and marketed by GMAC Mortgage, LLC unless you are one of GMAC-RFC's approved designated marketers. The Servicer will receive communication, as applicable, from our marketer and is to comply with it. The attorney who handled the foreclosure should not proceed with an eviction/unlawful detainer action unless authorized to do so by the marketer of the property.

**(B) GMAC-RFC, Freddie Mac or Fannie Mae REO Loans**

Refer to the Freddie Mac Seller/Servicer Guide Chapter 70 REO for those Loans subserviced for GMAC-RFC that are identified as Freddie Mac Loans, and Chapter 3 of the Fannie Mae Seller/Servicer Guide, "Acquired Properties," for those Loans subserviced for GMAC-RFC that are identified as Fannie Mae Loans. If additional clarification is required, please contact GMAC-RFC's Claims Administration Department in Burbank.

## 447

### Rehabilitation

The Servicer shall ensure that any and all necessary preservation and rehabilitation work is done efficiently and properly as to (i) preserve and safeguard the REO property and (ii) maintain and posture the REO property for sale to maximize the Value of the REO property. GMAC-RFC requires that a knowledgeable inspector identify all repair, maintenance and refurbishment issues with supporting documentation maintained in the servicing file.

Generally, all REO properties should be brought to local market condition standards. Refurbishment should generally occur if the result would enhance the Value extracted either in actual dollars recovered in savings to holding costs and/or if the market conditions demand such refurbishment.

The Servicer will continue to be responsible for advancing funds to pay for taxes, Homeowners' Association (HOA) dues and insurance premiums, as they become due.

## 448

### Mortgage Insurance Claims

The Servicer must fulfill its procedural obligations under any insurance policies and carry out its responsibilities in a manner which will not jeopardize the timely or ultimate payment of claims made to the insurer.

**(A) Filing Primary Mortgage Insurance Claims**

The Servicer must file the mortgage insurance claim on behalf of GMAC-RFC, in the format prescribed by the **Mortgage Insurer** within the timeframes listed below.

| Timelines for MI Claim Filing | |
|---|---|
| REO | Within 45 calendar days of foreclosure sale or redemption, whichever is greater. |
| Short Payoff | Within 30 calendar days of the escrow closing date. |
| Third Party Sale Short | Within 30 calendar days of the receipt of third party sale proceeds by GMAC-RFC. |
| Write Off | Within 30 calendar days of the date of GMAC-RFC or Servicers approvals. |

The Servicer must notify the applicable mortgage insurance company in writing to make the proceeds check payable to GMAC-RFC. The Servicer must take all actions necessary to obtain the maximum settlement allowed and prescribed by the insurer. It is the Servicer's responsibility to follow through and work closely with the Mortgage Insurer until settlement is received by GMAC-RFC. The Servicer must submit a copy of the Mortgage Insurance Claim, along with Statement of Foreclosure/REO Expense **GMAC-RFC Form 2409** to GMAC-RFC's Claims Administration Department in Burbank. Claim payment curtailments by the Mortgage Insurer resulting from delayed claim filing will be the responsibility of the Servicer, unless otherwise waived in writing by GMAC-RFC. If the Mortgage Insurer elects to acquire the REO property, the Servicer must notify GMAC-RFC immediately.

If the Servicer is informed of an offer to purchase the property before a claim is filed or before the Mortgage Insurer has acted on the claim, the Servicer must contact GMAC-RFC for possible "pre-sale" arrangements. GMAC-RFC maintains sole responsibility for all sale negotiations with potential buyers.

Once the claim is filed, the Servicer must send a completed Eviction Status Report **GMAC-RFC Form 2408** to GMAC-RFC's Claims Administration Department in Burbank. The report must be prepared as of the last **Business Day** of each month and received by GMAC-RFC no later than the fifth Business Day of the following month. The report must be submitted monthly until all final insurance proceeds are received by GMAC-RFC.

(1) Filing Supplemental Mortgage Insurance Claim

The Servicer will be responsible for filing a supplemental claim(s) on behalf of GMAC-RFC with the Mortgage Insurer within seven calendar days from the date of notification from GMAC-RFC for items not claimed on the original claim that are claimable and payable by the Mortgage Insurer. The Servicer must send a copy of the completed claim to GMAC-RFC's Claims Administration Department in Burbank. The Servicer may not recover expenses advanced until GMAC-RFC has received the mortgage insurance proceeds and reviewed the benefit settlement letter.

If the Mortgage Insurer nets the sale proceeds from the settlement funds, the Servicer will be responsible for filing a supplemental claim(s) on behalf of GMAC-RFC with the Mortgage Insurer carrier within seven calendar days from receipt of the explanation-of-benefits letter that accompanied the settlement proceeds.

(2) Remittance of Mortgage Insurance Proceeds

Within 12 calendar days of the date of the settlement check, the Servicer must remit the entire amount of the claim settlement, either by wire transfer or other immediately available funds to GMAC-RFC's Claims Administration Department in Burbank. This is applicable only when settlement proceeds are sent directly to the Servicer.

Residential Funding Company, LLC
C/O US Bank, Minneapolis, MN
Acct.# 104774437669
ABA# 091 000 022
Servicer ID# and Name
GMAC-RFC Loan#
Refer to: Mortgage Insurance Proceeds

A copy of the mortgage insurance settlement letter or summary of settlement received from the **Mortgage Insurer** must be sent to GMAC-RFC via fax or along with the proceeds check via overnight carrier.

On the day the proceeds are sent to GMAC-RFC, the Servicer must submit, via fax, a Multipurpose Fax Transmittal **GMAC-RFC Form 2405**, to GMAC-RFC's Claims Administration Department in Burbank indicating the funds are forthcoming. The confirmation should show the confirmation number, GMAC-RFC's Loan number, **Borrower** name, and settlement amount.

(3) Penalties

A penalty in the amount of $500 will apply should the Servicer fail to file the initial mortgage insurance claim within the timelines stated in the Servicer Guide. This penalty is in addition to any **Per Diem** interest not paid by the **Mortgage Insurer**.

Failure to remit the Mortgage Insurance proceeds and documentation within 12 calendar days of the date of the settlement check will result in a cash adjustment to the Servicer's claim for Foreclosure/REO Expenses **GMAC-RFC Form 2409**. The cash adjustment will be equivalent to Per Diem interest calculated using the Prime Rate printed in *The Wall Street Journal* in its regular column entitled "Money Rates," plus 3%. The cash adjustment will begin to accrue on the 13th calendar day through and including the date the settlement funds are received in the appropriate GMAC-RFC account.

For further clarification, refer to the **Indemnification** Section and the **Right of Set-Off** Section of this Servicer Guide.

**(B) Pool Insurance**

GMAC-RFC will advise the Servicer if a pool insurance claim will be submitted to the pool insurer.

(1) Requirements for Pool Insurance

All Loans subject to pool insurance are subject to provisions requiring primary or mortgage insurance. Unless waived in writing by GMAC-RFC, The Servicer shall ensure a primary policy is maintained which provides coverage against loss resulting from a **Borrower**'s default on all Loans subject to pool insurance that have a **Loan-to-Value** ratio at the time of origination in excess of 80%. The primary policy shall, at a minimum, provide coverage on the amount of the Loan in excess of 75% of the original fair market Value (the lesser of either sale price or appraised Value) and must remain in force until the principal balance of the Loan is reduced to 80% of original fair market Value. The Servicer will be responsible for any losses resulting from rejection of claim payments by the pool insurer from failure to maintain necessary primary policy coverage unless requirements for such coverage is waived in writing by GMAC-RFC.

(2) Advances Subject to Claim Reimbursement

In the event of default on Loans subject to pool insurance, the Servicer shall ensure hazard insurance is maintained at all times up to conveyance of title. Advances for hazard insurance premiums will be reimbursed to the Servicer by GMAC-RFC (upon receipt of claim proceeds) on a *pro rata* basis. The Servicer will be responsible for any losses resulting from rejection of claim payments by the pool insurer from failure to maintain necessary hazard insurance coverage unless requirements for such coverage is waived in writing by GMAC-RFC.

Unless waived in writing by GMAC-RFC, the Servicer shall ensure advances are made, as necessary and approved in advance by the insurance company for (i) real estate property taxes (penalties are not covered), (ii) expenses required to preserve and repair the property to ensure the property is in the same condition it was in on the date the pool insurance went into effect (excluding ordinary wear and tear), and to prevent the property from waste, (iii) property sales expenses, (iv) any outstanding liens, and (v) foreclosure costs including court costs and reasonable attorney's fees not to exceed 3% of the unpaid balance on the insured Loan. Unless waived in writing by GMAC-RFC, unapproved advances for expenses not paid by the insurance company will be the responsibility of the Servicer.

(3) Filing Pool Insurance Claims

The Servicer must file the pool insurance claim on behalf of GMAC-RFC, in the format prescribed by the pool insurer within the timeframes listed below:

| **Timelines for PI Claim Filing** | |
|---|---|
| REO | Within 30 calendar days of the escrow closing date. |
| Short Payoff | Within 30 calendar days of the escrow closing date. |
| Third Party Sale Short | Within 30 calendar days of the receipt of third party sale proceeds by GMAC-RFC. |
| Write Off | Within 30 calendar days of the date of GMAC-RFC or Servicers approvals. |

The Servicer must take all actions necessary to obtain the maximum settlement of such insurance for GMAC-RFC and must work closely with the pool insurer until all proceeds are received by GMAC-RFC. The Servicer must send GMAC-RFC a copy of the pool insurance claim, along with the Statement of Foreclosure/REO Expenses **GMAC-RFC Form 2409**. Claim payment curtailments by the pool insurer resulting from delayed claim filing will be the responsibility of the Servicer unless waived in writing by GMAC-RFC. The Servicer may not recover expenses advanced until GMAC-RFC has received the pool insurance proceeds and reviewed the benefit settlement letter.

(4) Supplemental Claims

The Servicer will be responsible for filing a supplemental claim(s) on behalf of GMAC-RFC with the pool insurer within seven calendar days of notification of the need to file by GMAC-RFC. The Servicer must send a copy of the completed claim to GMAC-RFC's Claims Administration Department in Burbank. The Servicer may not recover expenses advanced until GMAC-RFC has received the pool insurance proceeds and reviewed the benefit settlement letter.

(5) Remittance of Pool Insurance Proceeds

Within 12 calendar days of the date of the pool settlement check, the Servicer must remit the entire amount of the claim settlement, either by wire transfer or other immediately available funds to GMAC-RFC's Claims Administration Department in Burbank. This is applicable only when settlement proceeds are sent directly to the Servicer.

Residential Funding Company, LLC
C/O US Bank, Minneapolis, MN
Acct.# 104774437669
ABA# 091 000 022
Servicer ID# and Name
GMAC-RFC Loan#
Refer to: Pool Insurance Claim Proceeds

Submit a copy of the pool insurer claim letter or settlement summary received from the pool insurer.

(6) Penalties

A penalty in the amount of $500 will apply should the Servicer fail to file the initial pool insurance claim within the timelines stated in the Servicer Guide. This penalty is in addition to any **Per Diem** interest not paid by the pool insurer.

Failure to remit the pool insurance proceeds and documentation within 12 calendar days of the date of the settlement check will result in a cash adjustment to the Servicer's claim for Foreclosure/REO Expenses **GMAC-RFC Form 2409**. The cash adjustment will be equivalent to Per Diem interest calculated using the Prime Rate printed in *The Wall Street Journal* in its regular column entitled "Money Rates," plus 3%. The cash adjustment will begin to accrue on the 13th calendar day through and including the date settlement funds are received in the appropriate GMAC-RFC account.

For further clarification, refer to the **Indemnification** Section and the **Right of Set-Off** Section of this Servicer Guide.

## 449

### Sales to Affiliated Persons

GMAC-RFC permits the sale of REO properties to Affiliated Persons of the Servicer, and to GMAC-RFC employees and their immediate families, provided that all of the following conditions are met:

- The sales price is substantiated by an independent appraisal meeting the requirements of the Appraisals Section of the **Client Guide**
- The terms of sale are identical to those that would otherwise be offered to the general public
- For a sale to an Affiliated Person of the Servicer, the transaction is approved in advance by a resolution adopted by a majority of the Servicer's board of directors, with no director having an interest in the transaction voting. If no board of directors exists within the Servicer's organization, the transaction must be approved in advance by the highest decision-making body within the Servicer's organization, with no person having an interest in the transaction participating in the decision
- For a sale to a GMAC-RFC employee or to a member of his or her immediate family, the REO property must be purchased as the employee's or his or her immediate family member's primary residence

## 450

### Remittance of Sale Proceeds and Penalties

**(A) Sale Proceeds**

In the event the Servicer receives sale proceeds from the sale of an REO property, the Servicer must send the funds to GMAC-RFC in Burbank, within three **Business Day**s from close of escrow or disbursement date, whichever is later.

- GMAC-RFC wiring instructions are as follows:

  Residential Funding Company, LLC
  C/O US Bank, Minneapolis, MN
  Acct.# 104774437669
  ABA# 091 000 022
  Servicer ID# and Name
  GMAC-RFC Loan#
  Refer to: REO Sales Proceeds

- Send to GMAC-RFC’s Claims Department in Burbank copies of the closing statements or escrow instructions from the transactions and the buyer’s and seller’s settlement statement along with any documentation supporting expenses paid by the seller at closing, within three **Business Day**s of the close of escrow date.

The Servicer shall not deduct any advances from the proceeds. Reimbursement of appropriate advances will be made by GMAC-RFC as described in the **Foreclosure Statement of Expenses** Section or the **Real Estate Owned (REO)** Section of this Servicer Guide.

### (B) Penalties

Failure to remit the entire amount of the sales proceeds within three **Business Day** from the close of escrow or disbursement date, whichever is later, will result in a cash adjustment.

Failure to remit the entire amount of the sales proceeds within three Business Days from the close of escrow or disbursement date, whichever is later, will result in a cash adjustment. The cash adjustment will be equivalent to the **Per Diem** interest calculated using the Prime Rate printed in *The Wall Street Journal* in its regular column entitled “Money Rates,” plus 3%. The cash adjustment will begin to accrue on the fourth Business Day from the close of escrow date through and including the date the funds are received in the appropriate GMAC-RFC account.

For further clarification, refer to the **Indemnification** Section and the **Right of Set-Off** Section of this Servicer Guide.

## 451

## Maintenance and Security

### (A) General Requirements

Until final disposition of any REO property and receipt of all funds by GMAC-RFC, the Servicer is expected to advance funds for payment of real estate taxes, hazard premiums, HOA dues and other expenses to the extent necessary to protect GMAC-RFC’s interest. In the event penalties are assessed at closing for non-payment of real estate taxes and/or HOA dues, the penalty amount will be deducted from the Servicer’s claim reimbursement and/or P & I advances.

### (B) Insurance

The Servicer must maintain all insurance required under this Servicer Guide and notify the insurance carrier(s) of any changes in occupancy and ownership.

When it is necessary to file a hazard insurance claim, the Servicer will notify GMAC-RFC’s subsidiary, GMAC Mortgage, LLC, that a claim needs to be filed. GMAC Mortgage, LLC will file and adjust the claim to final settlement. The Servicer will cooperate fully by furnishing all requested information to GMAC Mortgage, LLC. If you are one of GMAC-RFC’s approved designated marketers then it will become your responsibility to file and adjust the claim to final settlement. All loss drafts should be made payable to GMAC-RFC, and forwarded to GMAC-RFC if you are the marketer of the REO property; otherwise, forward them to GMAC Mortgage, LLC at:

GMAC Mortgage, LLC
2711 N. Haskell Ave, Suite 900
Dallas, TX 75204
Attn.: Insurance Services Department

GMAC-RFC maintains liability insurance on its interest in REO properties. The Servicer should not duplicate this coverage on behalf of GMAC-RFC. The Servicer must immediately report in writing to GMAC-RFC Servicer Management Department any accidents or incidents occurring at any REO property.

**(C) Homeowners' Association Fee**

Any first mortgagee who obtains title to a condominium unit or PUD pursuant to the remedies in the **Security Instrument** or accompanying condominium or PUD documents or through foreclosure will not be liable for the unit's unpaid dues or charges accrued before the acquisition of the title to the unit by the mortgagee.

## 452

### Closing Notification & Penalties

GMAC-RFC's Claims Administration Department in Burbank requires notification of closing from the marketer of the property within 72 hours; otherwise, a penalty of $100 per day will be assessed until notification is received.

Any documents in connection with the sale of the REO property that may be inadvertently received by the Servicer should be immediately forwarded to GMAC-RFC's Claims Administration Department in Burbank.

## 453

### Reporting Requirements

GMAC-RFC requires the Servicer to submit certain reports as set forth in this Section. All Loan servicing reports must be sent to:

GMAC-RFC
2255 North Ontario Street
Suite 400
Burbank, CA 91504-3120
Attention: Servicer Management Department

**REO Requested Reports/Investor Inquiries**

GMAC-RFC retains its right to request and/or issue certain reports either on an exception basis or at Loan level. The Servicer will be required to respond to and/or provide these reports to GMAC-RFC within the designated timeframe. Requests for extensions to respond should come in writing from the Servicer's management to the REO Asset Manager's attention.

Failure to provide the information by the deadline date may result in a daily penalty of $100.

Investor inquiries and/or individual request for status made by GMAC-RFC should be responded to within 48 hours. Urgent requests should be responded to within 24 hours. GMAC-RFC may impose a penalty at the rate of $100 per day for no response.

## 454

### Failure to Provide Timely Loan Service Reports

Failure to provide a required monthly or periodic Loan servicing report within the time required will result in the following actions and/or penalties:

(1) For the first late reporting offense in any consecutive 12-month period, a warning letter is issued to the managing officer of the Servicer, with a copy to the GMAC-RFC's Loan Accounting Department in Burbank.

(2) For the second late reporting offense in any consecutive 12-month period, a $250 penalty will be assessed.

(3) For the third late reporting offense in any consecutive 12-month period, a $500 penalty will be assessed.

(4) For the fourth late reporting offense in any consecutive 12-month period, a $1,000 penalty will be assessed and/or the Servicer's eligibility status may be suspended.

(5) For the fifth or subsequent late reporting offense in any consecutive 12-month period, a $1,500 penalty will be assessed and/or servicing may be transferred with cause.

Accounting and servicing reporting penalties are each monitored and assessed separately. The annual evaluation of the Servicer's reporting performance is based on any 12-month period as determined by GMAC-RFC. To remain eligible as a GMAC-RFC Servicer, the Servicer must deliver in a timely and accurate manner all reports, documents and remittances required to be delivered or returned under this Servicer Guide. Refer to Chapter 2, **Servicer Eligibility**, of this Servicer Guide for details of all such requirements.

GMAC-RFC reserves the right to change the penalties and all other actions at any time and at its sole discretion.

## 455

### Multipurpose Loan Service Report

The Servicer may submit a Multipurpose Loan Service Report **GMAC-RFC Form 2401** to GMAC-RFC's Servicer Management Department in Burbank at any time during the month to:

- Convey specific information to GMAC-RFC regarding a Loan
- Inform GMAC-RFC of exceptional activities or events during **Delinquency**, foreclosure, or bankruptcy
- Notify GMAC-RFC of reinstatement from foreclosure
- Request from GMAC-RFC information concerning a Loan

At least once a month Servicer must submit a report of all Loans 90 days or more delinquent. This report must include all foreclosure, bankruptcy, and loss mitigation milestones. It is preferred that the report be submitted in electronic format. This report may be used in conjunction with other servicing reports and correspondence submitted or used independently to transmit or request information.

## 456

### Document Services Form

The Servicer must submit a Document Services Form **GMAC-RFC Form 2204** to GMAC-RFC as notification of a repurchase due to an ARM conversion or to request execution of documents for Loans that are:

- Paid in full
- Repurchased due to an ARM conversion
- Repurchased due to an Event of Seller Default

The Document Services Form **GMAC-RFC Form 2204** should be sent to the following address:

GMAC-RFC
One Meridian Crossings, Suite 100
Minneapolis, MN 55423
Attention: ESDO/Release, MC 03-03-30

## 457

### Request for Loan Service Approval

The Request for Loan Service Approval **GMAC-RFC Form 2400** may be submitted by the Servicer at any time during the month. The Servicer must use a Request for Loan Service Approval to obtain GMAC-RFC's approval for the following actions:

- Initiation of foreclosure
- Acceptance of a short payoff/pre-foreclosure sale
- Acceptance of a deed-in-lieu of foreclosure
- Acceptance of a Loan (Note) modification
- Acceptance of any liquidation or repayment plan of over six months duration
- Formal forbearance
- Modification of a **Security Instrument**
- Any other action which requires GMAC-RFC's approval in accordance with the terms of this Servicer Guide

The Servicer must ensure that all information required is completely and accurately provided to avoid unnecessary delays in approving the requested action.

## 458

### Document Release Transmittal

Upon approval of a foreclosure action, the Servicer will receive the Note and other **Loan Documents** from GMAC-RFC's Enterprise Service Delivery Operations in Minneapolis, Minnesota. The Servicer is responsible for the Note and other Loan Documents while they are in the Servicer's custody, and must return them to GMAC-RFC promptly upon discontinuance of foreclosure action, or reinstatement of the Loan, along with the completed bottom portion of the Document Release Transmittal **GMAC-RFC Form 2411**.These documents should be sent to the following address:

GMAC-RFC
One Meridian Crossings, Suite 100
Minneapolis, MN 55423
Attention: ESDO, MC 03-03-30

## 459

### Reporting to the Internal Revenue Service (IRS)

In servicing Loans for GMAC-RFC, the Servicer must comply with the reporting requirements of Sections 6050H and 6050J of the Internal Revenue Code on behalf of GMAC-RFC. The Servicer must provide the information shown below.

| IRS Form | Applicable Loans | Identification |
|---|---|---|
| Mortgage Interest Statement (Form 1098) | All Loans serviced for GMAC-RFC | Recipient/Lender: Servicer Name and Address |
| | | Recipient/Lender Federal Identification Number: Servicer Federal Tax Identification Number |
| | | Payer/Borrower name, address and Social Security Number |
| Acquisition or Abandonment of Secured Property (Form 1099-A) | All Loans serviced for GMAC-RFC | See IRS Form 1099-A Instructions following in this Section for specific completion instructions |
| Cancellation of Debt (Form 1099-C) | | Servicer must not file unless instructed to do so by GMAC-RFC prior to January 31 |

The account number on each of the above Forms should include the seven-digit GMAC-RFC Loan number, followed by one space and the three-digit **Client**/Servicer number.

A Servicer is responsible for:

- Completing the applicable IRS Forms
- Providing the information to the IRS
- Providing accurate information in a timely manner to the **Borrower**
- Reimbursement of all costs to GMAC-RFC if the IRS penalizes GMAC-RFC because a Servicer did not file a return or statement, or filed an incomplete, incorrect or late return statement. The reimbursement will include all costs incurred because of such penalty, including the penalty amount and the total tax liability resulting from such reimbursement. If the Servicer can submit proof that it met the filing requirements, no reimbursement will be required

**(A) IRS Form 1099-A Completion Instructions**

A Servicer should contact the IRS to ensure that the Servicer has a sufficient supply of IRS Form 1099-A, Acquisition or Abandonment of Secured Property, for the applicable year.

The Servicer must follow all instructions for printing these forms. The Servicer must not send copy B or C to GMAC-RFC.

General instructions for completing each portion of the form follow:

Lender's (Master Servicer) name, street address, city, State, zip code

Insert the following:

GMAC-RFC
2255 North Ontario Street
Suite 400
Burbank, CA 91504-3120
Attn: Servicer Management Department

**Lender's (Master Servicer) federal identification number**

Insert 93-0891336

**Borrower's identification number**

If the Borrower is an individual or in business as a sole proprietor, insert the Borrower's nine-digit Social Security Number (using the xxx-xx-xxxx format). For other Borrowers — such as partnerships or corporations — insert the firm's Employer Identification Number (using the xx-xxxxxxx format). When more than one Borrower has an interest in the property, file the IRS Form 1099-A for each co-Borrower. Only one Form 1099-A should be filed for married Borrowers who are jointly liable.

**Borrower's name**

Show the Borrower's first, middle and last name.

**Street Address, city, State and zip code**

Enter the Borrower's current mailing address if it is known. Otherwise enter the Borrower's last known address. Use the official Postal Service abbreviation for the State if the Borrower is a U.S. resident. Check IRS Publication 1220 to obtain the State and foreign abbreviations that the IRS will accept.

**Account number**

The account number should include the seven-digit GMAC-RFC Loan number, followed by one space and the three-digit Client/Servicer number.

**Box 1: Date of lender's (Master Servicer) acquisition or knowledge of abandonment.**

Insert the date (in MMDDY format) that one of the following occurred:

- **Property acquisition—foreclosure or deed-in-lieu of foreclosure.** Enter the date that the Servicer acquired an interest in the property on GMAC-RFC's behalf. Use the later of the date of the foreclosure sale, the date of the deed-in-lieu of foreclosure, or the date that the Borrower's right of redemption expires. For example, if the Servicer acquires a property on 12/15/94, but the redemption period does not expire until 6/15/95, the Servicer must submit the IRS form 1099-A for the 1995 reporting period, not 1994.
- **Sale to third party.** Insert the date that a third party acquired the property at foreclosure or similar sale. If GMAC-RFC held a second mortgage on the property and the first mortgage holder acquired the property for an amount that would not satisfy both mortgage debts, insert the date the first mortgage holder acquired the property.
- **Abandonment.** If the Servicer does not expect to begin foreclosure proceedings within three months after the property was abandoned, it should report the date that it knew (or had reason to know) that the property had been abandoned. If the Servicer expects to begin foreclosure proceedings within three months, it should insert the date that the foreclosure sale was held and property was acquired. If the foreclosure proceedings have not begun within the three-month period, the obligation to report arises upon the expiration of the three-month period, and the Servicer must provide information as of the date it first had reason to know of the abandonment.

For example: A Servicer learns of a property abandonment on 12/31/94. If the Servicer does not intend to start foreclosure proceeding within three months, it would prepare an IRS Form 1099-A showing 12/31/94 as the abandonment date. The Servicer would file Form 1099-A with the IRS on or before February 28, 1995. But, if the Servicer expected to begin foreclosure proceedings within the next three months, it would prepare a 1099-A showing the actual acquisition date at the time of acquisition, or showing the abandonment if the commencement of foreclosure proceedings was delayed beyond three months.

**Box 2: Balance of principal outstanding.**

Enter the balance of the debt outstanding at the time the interest in the property was acquired or on the date you first knew or had reason to know that the property was abandoned. Include only unpaid principal on the original debt. Do not include accrued interest or foreclosure costs.

**Box 3: Make no entry in this box.**

**Box 4: Fair market Value of property.**

For a foreclosure, execution, or similar sale, enter the fair market Value of the property. Generally, the gross foreclosure bid price is considered to be the fair market Value. If an abandonment or voluntary conveyance to the lender in lieu of foreclosure occurred and you checked “Yes” in box 5, enter the appraised Value of the property. Otherwise, make no entry in this box.

**Box 5: Was the Borrower personally liable for repayment of the debt?**

If the **State** law specified that the Borrower is personally liable for repayment of the Loan at the time the debt was created, or if modified at the time of the last modification, check “Yes”, otherwise check “No”.

**Box 6: Description of the property.**

Insert the address of the property. If the property address does not sufficiently identify the property, enter the section, lot and block numbers.

Prior to February 28, all Forms must be filed with the IRS. In addition, the Servicer must also furnish the Borrower with a copy of the IRS Form filed prior to January 31 of that year.

**(B) IRS Form 1099-MISC**

Servicers must not file IRS Form 1099-MISC on behalf of GMAC-RFC. Form 1099-MISC should be filed with the Servicer’s name and federal identification number.

**(C) Method of Reporting and Record Keeping**

Servicers must report information on magnetic media. A Servicer reporting to the IRS on magnetic media is still obligated to provide a copy of the IRS Form to the **Borrower** and to those States which require it.

Servicers may obtain IRS Publication 1220, Specifications for Filing Forms 1098, 1099 Series, 5498 and W-2G Magnetically or Electronically to assist in filing reports and corrections. For assistance in filing magnetically or electronically, contact the Martinsburg Computing Center at 304.263.8700 or in writing at:

IRS Martinsburg Computing Center
PO Box 1359
Martinsburg, WV 25401-1359

Servicers must be able to provide to GMAC-RFC upon request all information filed on behalf of GMAC-RFC with and at the request of the IRS. Servicers must retain all such information until such time that GMAC-RFC agrees, in writing, to destruction of such records. Servicers will be required to reimburse GMAC-RFC for all costs incurred by GMAC-RFC if the IRS penalizes or assesses any fee for failure to produce such information. The reimbursement will include all costs incurred by GMAC-RFC because of such penalty, including the penalty or assessment amount and the total tax liability resulting from such reimbursement.

The Servicer must maintain copies of all statements and reports provided to the Borrowers, the IRS and to GMAC-RFC in compliance with the above Sections of the Internal Revenue Code.

For any questions related to information reporting, contact GMAC-RFC’s Servicer Management at 818.260.1400.



# 4A

## Home Equity Lines/Loans and 125 Loan Servicing

The Servicer must service Home Equity Lines, Loans, or 125 CLTV products sold to GMAC-RFC in accordance with the Client/Servicer Contract and this Servicer Guide as amended from time to time. The Servicer must contact GMAC-RFC regarding any issue that is ambiguous or that is not addressed in this Servicer Guide or the Client/Servicer Contract.

### 400A

#### General

When servicing Home Equity Lines, Loans, or 125 products, the Servicer must adhere to the following guidelines in addition to the guidelines set forth in Mortgage Loan Servicing, Chapter 4, of this Servicer Guide.

### 401A

#### Servicing Standards

The Servicer shall maintain collection staffing to provide collection activity in all time zones consistent with the requirements detailed in the collection procedures of this Servicer Guide.

The Servicer shall make diligent management efforts to ensure that its collection practices meet the objectives of the collection procedures detailed in this Servicer Guide.

The Servicer shall maintain customer service staffing and hours of operation in order to provide the highest quality service as detailed in this Servicer Guide.

The Servicer shall make diligent efforts to retain the lines of credit as detailed in this Servicer Guide under:

- Line increases
- Subordinations
- Modifications
- Payoff requests
- Partial releases
- Requests for rate reduction

The Servicer shall maintain consistent management efforts to ensure timely delivery of reports to GMAC-RFC.

In addition to the specific servicing activities outlined above and in these procedures, the Servicer is responsible for performing:

(a) Any activities that are reasonably incidental to the specific activities required by this Servicer Guide

(b) Any Loan servicing activities required by applicable law

(c) Any normal servicing functions typically performed by Servicers of Home Equity Lines of Credit (HELOC) and Second Trust Deeds/Mortgages in connection with servicing their own accounts

## 402A

### Interim Servicing

The interim servicing period will consist of the time between the Loan closing and when the Servicer receives the EDT (electronic data transfer) Loan file, along with any other necessary information, from GMAC-RFC. At the time of Loan closing, the **Borrower** will be given a servicing transfer letter showing the Servicer of the Loan, address of the Servicer, and the phone number to call with questions regarding the Loan.

During the interim servicing period, the Servicer will provide Borrowers and brokers/sellers with general information about the product. This interim servicing will be provided during the Servicer's normal business hours. During the interim servicing period, any requests for account-specific information will be referred back to the originator.

## 403A

### Delivery of Servicing Data/New Loan Input

GMAC-RFC will provide the Servicer with a daily EDT Loan file. Each EDT Loan file will be in lieu of a hardcopy of the Loan file, and include data required for the Servicer to set up the Loan for servicing. For a description of the required data elements, refer to the New Loan Input Format **GMAC-RFC Form 24A01**.

The daily EDT from GMAC-RFC to the Servicer will be accompanied by a master list (control sheet) of the Loans detailed in the EDT Loan file. GMAC-RFC will provide the Servicer Loan numbers. The last ten digits of these numbers will be the GMAC-RFC Loan numbers.

The Servicer must input the information from the EDT Loan file into its system on the day that it is received. The Servicer must notify its GMAC-RFC Loan Accounting Representative of any Loans that are not entered into the Servicer's system on the day the EDT file is received



## 404A

### Welcome Package

For Loans servicing released, upon receipt of the EDT Loan file from GMAC-RFC, the Servicer must provide the **Borrower** with a welcome letter within 24 hours of receipt of the Loan data, or within compliance with applicable law. The welcome letter must explain the transfer of servicing, the delivery of checks and credit card(s) to the Borrower (if the Loan is a Home Equity Line Of Credit), and the services being provided by the Servicer. It must also provide the Borrower with the account number, next payment **Due Date**, mailing address for payments, and a toll-free number for customer service.

## 405A

### Account Research

The Servicer must provide timely and professional account research services during the Servicer's normal business hours.

## 406A

### Returned Mail

To resolve mailing address issues and assure that the proper mailing address is used, the Servicer should do one or all of the following in an attempt to obtain the correct mailing address:

- Check the address against its system to assure the correct mailing/property address was used
- Telephone the **Borrower**, both at home and at place of employment, to verify correct address
- Pull the Loan file and verify the address, if the Servicer has access to the Loan file
- Order a property inspection

The Servicer shall document its "System of Records" with "returned mail" and indicate steps taken to resolve and retain returned mail in the servicing file.



## 407A

### Change in Loan Setup

When GMAC-RFC receives notification that a Loan has rescinded or that other changes are necessary after initial Loan setup, the following Data Rescinded procedure will be used to implement changes and/or revisions:

- GMAC-RFC Operations Associate will notify the Servicer of changes
- Servicer, upon receiving notification, will alert its respective departments of any changes to a Loan which has been set up
- Servicer will make applicable changes to its system of record, resulting in the appropriate transaction being sent on the daily transmission to GMAC-RFC
- If necessary, GMAC-RFC's Operations Associate or Finance Representative will coordinate contact to the **Client** to reconcile the transaction and to retrieve any money which may be outstanding to balance the account
- GMAC-RFC will provide the Servicer with a list of authorized analysts and update the list when changes occur

## 408A

### Servicer Approval of Legal Documents

**Second Mortgage Documents**

**(A) Notes**

Requirements regarding Goal Line and Goal Loan Notes are specified in the Commitment, Prior Approval, Delivery and Funding section of the GMAC-RFC **Client Guide**. The Client is responsible for ensuring that the Notes comply with all laws applicable to the Client including, but not limited to, licensing laws, and that the Notes are valid and enforceable under applicable State law

**(B) Changes to Required Notes**

When GMAC-RFC requires the Client to use a Goal Line or Goal Loan Note drafted by a particular document provider, the Client may not change or alter the required Note except when authorized in writing by GMAC-RFC. If the Client believes a change must be made to any required Note in order to comply with a federal, State, or local law, the Client must notify GMAC-RFC immediately.

**(C) Security Instruments and Riders**

Security Instruments and Riders used to secure a Goal Line or Goal Loan Note are considered Non-Standard Detonates and must comply with the requirements applicable to the Non-Standard Documents Section of the **Client Guide**. The Client is responsible for determining whether any Riders to the Security Instrument are necessary including, but not limited to, Condominium Riders, PUD Riders, Second Home Riders, and 1-4 Family Riders.

**(D) Corrections to Notes, Security Instruments, and Riders**

The Client must review the Note, Security Instrument, and Riders for accuracy prior to closing. These documents must be free of errors, with no erasures, white-out or other changes. If a correction must be made and a new instrument cannot be drafted, the Client must draw a single line through the incorrect portion and must type in the correction. All Borrowers must initial the change.

GMAC-RFC has provided the following forms for the Servicer's use in servicing of accounts. These should be reviewed with the Servicer's counsel for compliance to all applicable laws.

| | |
|---|---|
| Modification Agreement (125) | **GMAC-RFC Form 24A02** |
| Modification Agreement (Increase of Credit Limit) | **GMAC-RFC Form 24A03** |
| Notice of Right to Cancel | **GMAC-RFC Form 24A04** |
| Senior Lienholder | **GMAC-RFC Form 24A05** |
| Subordination Agreement | **GMAC-RFC Form 24A06** |
| Amendment To Agreement & Deed of Trust | **GMAC-RFC Form 24A07** |
| Partial Release of Mortgage | **GMAC-RFC Form 24A08** |
| Multipurpose Loan Service Report | **GMAC-RFC Form 24A09** |



| | |
|---|---|
| Second Mortgage Cost Evaluation and Recommendation | **GMAC-RFC Form 24A10** |
| Request for Loan Approval | **GMAC-RFC Form 24A12** |
| Expense Report | **GMAC-RFC Form 24A13** |
| Write-Off/Liquidation Report | **GMAC-RFC Form 24A14** |
| 1-4 Family Property Servicing Inspection Report | **GMAC-RFC Form 24A15** |
| Multipurpose Fax Transmittal | **GMAC-RFC Form 24A17** |
| Payoff/Liquidation Report | **GMAC-RFC Form 24A18** |
| Workout Documentation Requirements | **GMAC-RFC Form 24A21** |
| Workout Recommendation | **GMAC-RFC Form 24A22** |
| Personal and Financial Information | **GMAC-RFC Form 24A23** |
| Workout Information | **GMAC-RFC Form 24A24** |
| Monthly Default Report | **GMAC-RFC Form 24A31** |

## 409A

### Insurance

For additional information pertaining to insurance please refer to Mortgage Loan Servicing, **Chapter 4**, of this Servicer Guide.

## 410A

### Hazard Insurance

The Servicer must act only on the cancellation notices and loss claims it may receive in accordance with the Purchase and Servicing Agreement.

See **Hazard Insurance** Section in Chapter 4 of this Servicer Guide for hazard insurance requirements.

## 411A

### Flood Insurance

Each file GMAC-RFC purchases from a **Client** must contain the following information:

- FEMA (Federal Emergency Management Agency) Standard Flood Hazard Determination form. GMAC-RFC will use this form to identify in what flood zone the property is located
- A transferable "Life of Loan" flood zone determination contract for all Loans

See **Flood Insurance** Section in Chapter 4 of this Servicer Guide for flood insurance requirements.

## 412A

### Loan Setup/Fees

**(A) Documentation, Appraisal Requests, Loan Setup Inquiries**

If a Servicer needs to resolve questions pertaining to new Loan setup/Loan information, the Servicer should contact the GMAC-RFC Home Equity Loan Accountant in Burbank, California. Email requests for Loan Documentation to: ESDO-DispositionSupport@gmacrfc.com.

GMAC-RFC will respond to requests for information within two **Business Day**s. GMAC-RFC will provide copies of requested documents within three Business Days of receipt of request. The Servicer must send requested documents to the **Borrower** (if required) within two Business Days of receipt from GMAC-RFC.

**(B) Annual Fees**

Annual Fees may be waived under the following conditions:

(1) Current usage is at least 40% of the credit line amount.

(2) No late payments within the last six months and the Loan is current at the time of request.

## 413A

### Overlimit/Rate Reduction/Line Increases

#### (A) Treatment of Overlimits for Home Equity Lines of Credit

The Servicer must monitor all checks written and/or credit card usage for any amount that exceeds the available credit limit. The overlimit amount for GMAC-RFC Home Equity Lines will be fixed at 1% of the credit line. The Servicer must program the overlimit parameters into its system to honor checks and credit card charges up to 1% over the credit line amount. No further exceptions on overlimit will be allowed.

For checks only, the Servicer is responsible for the amount approved above the 1% over limit allowance should a foreclosure, short sale, write-off, or charge-off occur. The Servicer will be liable for any amount due to negligence.

The Servicer must send a separate notice to the **Borrower** immediately following payment on any overdraft check and/or credit card stating that the Borrower has exceeded the credit limit. The notice shall also state that the Servicer may require the full amount of the overlimit be paid off immediately.

The monthly statement will show a payment based on the terms of the promissory **Note** and agreement.

The Servicer may charge the Borrower an over-limit fee in accordance with the Note.

The Servicer must provide GMAC-RFC with a monthly over-limit report. The report will include:

- The account number
- The amount over the limit
- The credit limit
- The number of days the account has been over the limit

**(B) Rate Reduction Requests**

Rate reduction requests can be performed only if the Loan has not been sold. The Servicer must verify the status with the Master Servicing Home Equity Asset Manager contact at GMAC-RFC's Servicer Management Department in Burbank, California prior to offering a rate reduction to the **Borrower**.

If a Borrower contacts the Servicer to inquire about rate reductions, the Servicer must:

- Verify that the current balance is 25% or more of the Borrower's current committed line amount
- Verify that the Loan is current with no payments 30 days or more past due in the last 12 months
- Receive verification of the competitor's rates offered to the Borrower in the form of mailers, advertisements, etc.
- Fax requests to Master Servicing Home Equity Asset Manager contact at GMAC-RFC's Servicer Management Department in Burbank, California at 818.260.1810 for prior approval. GMAC-RFC will provide a faxed response within two **Business Day**s, including the approved reduction percentage
- Upon acceptance of the new rate, the Servicer must 1) adjust its system to reflect the correct rate and 2) provide a weekly report to GMAC-RFC indicating the number of adjustments made

**Lines of Credit:**
The Servicer shall mail a letter of confirmation (disclosure) to the Borrower which provides for the new margin. The Servicer shall also send a copy of this letter to the Master Servicing Home Equity Asset Manager contact at GMAC-RFC's Servicer Management Department in Burbank, California. The Servicer must maintain a copy of the letter in the Loan servicing file.

**Loans:**
The Servicer shall prepare a modification agreement and mail it to the **Borrower** for a signature with a letter of instruction to return to the Servicer to activate the rate reduction. Upon return of the signed modification agreement, the Servicer should adjust the rate and send the modification to the Master Servicing Home Equity Asset Manager contact at GMAC-RFC's Servicer Management Department in Burbank, California.

The Servicer must make the appropriate changes on its system.



**(C) Line Increases**

Line increases must be approved by GMAC-RFC. The Servicer will submit daily requests for line increases to the Master Servicing Home Equity Asset Manager contact at GMAC-RFC's Servicer Management Department in Burbank, California. The request should at a minimum contain the following information:

- GMAC-RFC Loan Number
- Borrower's last name
- **State** in which property is located
- Current credit limit
- Amount of line increase requested
- Copies of the Note and Deed/Mortgage
- A current Value (paid for by the Borrower) if the most current Value in the file is greater than 180 days old
- Financial statement/application for all Borrowers on the Loan, indicating all sources of income and obligations
- Current credit report for all Borrowers on the Loan

GMAC-RFC will determine, based on investor restriction, if the line increase can be processed either as a modification with a rescission period or as a new Loan and reply back to the Servicer within three business days.

The Servicer's originating/lending division and/or processing agent herein will be referred to as the "processing agent." Based on how the Loan can be processed, the Servicer will coordinate with its respective processing agent, and complete a modification agreement or process a new Loan. The Servicer and/or processing agent will be responsible for processing either a modification agreement or a new Loan in compliance with the GMAC-RFC Home Equity **Client** Guidelines as detailed therein, subject only to exceptions separately ***negotiated with*** and agreed upon by both the Servicer and GMAC-RFC ***in writing***. If a new Loan is originated, the Servicer and/or processing agent will prepare a Corporate Assignment and assign the Loan to GMAC-RFC once confirmed closed. The Servicer and/or processing agent is responsible for the timely recording of the modification agreement and/or **Security Instrument**.

The Servicer and/or processing agent is responsible for forwarding all copies of recorded documents along with processing documents to:

GMAC-RFC
One Meridian Crossings, Suite 100
MC 03-03-40
Minneapolis, MN 55423
ATTN: Enterprise Service Delivery Operations-Disposition Support

The Servicer and/or processing agent will notify the Master Servicing Home Equity Asset Manager contact at GMAC-RFC's Servicer Management Department in Burbank, California on a monthly basis of line increases which have closed. The Servicer is responsible for updating its systems to reflect any line increase changes. Line increase requests processed as modifications are not eligible for new teaser rates.

GMAC-RFC will provide the Servicer and/or processing agent with updated rate sheets. Modification Agreement (Increase of Credit Limit) **GMAC-RFC Form 24A03** and Notice of Right to Cancel **GMAC-RFC Form 24A04** have been provided by GMAC-RFC for use in the case of a modification.

## 414A

### Individual Loan Servicing

**(A) Loan Payoff Requests**

At a minimum, the Servicer should make the following attempts to save the Loan from being paid off:

- Document why the **Borrower** is paying off (rate, sale of property, servicing standards)
- Document what can be done to save the Loan.
- Refer the Borrower to a Retention Representative

After all attempts have been made, the Servicer will take the following steps to process a payoff:

(1) Issue a payoff statement providing an amount and a good through date

(2) Ensure that the Loan payoff amount equals the total amount due and includes all reimbursable expenses that have been incurred. Failure to do so will result in Servicer's liability for amounts not paid. The Servicer is NOT to pay off the Loan if the amount is not correct. The Servicer should contact escrow/title and/or the Borrower for additional funds required, both verbally and in writing. Funds received should be credited or sent back.

(3) Direct that payment in full be made by Certified Funds payable to the Servicer. No personal checks are allowed.

(4) Enter the appropriate data on the payoff screens of the servicing system.

(5) If the Certified Funds check is less than the actual payoff amount, notify the Borrower in writing and suspend the request. If the check is for more than the payoff amount, refund the surplus to the **Borrower** within 30 days or as applicable by **State** or federal law.

(6) Determine if the check is to pay off the line or pay down the line. It is the Servicer's responsibility to immediately contact the escrow/title company when a check is received to determine if title to the property has transferred or if this is a consolidation without a subordination request. Both of these would payoff the line of credit and require that the Note be satisfied. Follow-up should be both verbal and in writing if required. The Servicer may be held liable for additional draws on lines not paid off if the necessary steps to confirm payoff are not followed.



(7) Provide an electronic "Paid in Full" report daily to GMAC-RFC's Enterprise Service Delivery Operations at ESDO-DispositionSupport@gmacrfc.com. The report should include the **Borrower**'s name, GMAC-RFC account number, payoff amount, credit line amount, the paid date, and the name of the person who contacted the Servicer. The report should also total out the credit line and payoff amounts. Send a copy of the monthly cumulative "Paid in Full" report to the Master Servicing Home Equity Asset Manager contact at GMAC-RFC's Servicer Management Department in Burbank, California at the end of the month.

(8) With appropriate power-of-attorney delegated from GMAC-RFC, create the satisfaction and send it for recordation. GMAC-RFC Enterprise Service Delivery Operations will send the satisfaction along with the canceled Note, **Security Instrument**, and Assignment (if applicable) to the Servicer, as needed. The Servicer must forward the Satisfaction and Assignment (if applicable) for recording.

(9) Prepare a post-payoff log report to reflect the following information to monitor the above: date check was received, date of payoff, date documents were requested from GMAC-RFC, date documents were returned from GMAC-RFC, and date satisfaction was sent for recording. The Servicer must furnish the Master Servicing Home Equity Asset Manager contact at GMAC-RFC's Servicer Management Department in Burbank, Californian and ESDO with the post-payoff log report monthly. The notification to the ESDO should be sent to: ESDO-DispositionSupport@gmacrfc.com.

**(B) Subordination Requests**

See **Subordination Requests** Section in Chapter 4B for instructions on how to proceed if a subordination request is received.

**(C) Partial Releases**

See **Partial Releases** Section of Chapter 4B for instructions on how to proceed if a partial Release request is received.

**(D) Principal Curtailments to Credit Line**

If the Borrower makes a payment over $5,000 to a line of credit, it must be in certified funds. If the Borrower refuses, the Servicer must advise the Borrower verbally and in writing that a block will be placed on the line of credit for five **Business Day**s in order for the funds to clear.

## 415A

### Notification

#### (A) Stop Payment Requests

Upon a written stop payment request by a **Borrower**, the Servicer must:

(1) Complete the Servicer's stop payment data sheet. The data sheet must include the following information:

- Name of person who received the stop payment request and the date it was received
- Borrower's account number
- Name of the party who requested the stop payment
- Reason for the stop payment
- Check number(s)
- Dollar amount(s)
- Whether a written request was received by the Borrower
- Whether a form was sent to the Borrower for written authorization
- Comment section

(2) Ensure that the Borrower executes an authorization form within ten days of the Borrower's phone call.

(3) Log in a "Stop Payment Book" with verified signature. The Servicer must maintain the "Borrower Authorization Form" as necessary.

#### (B) Deceased Borrower Notification

Upon notification that a Borrower is deceased, the Servicer shall:

- Request a certified copy of the death certificate
- Code the servicing system to reflect that the primary or secondary **Borrower** is deceased
- Contact the surviving Borrower or co-Borrower to determine repayment arrangements. The Servicer must determine at this point if attorney involvement is needed. The Servicer should notify GMAC-RFC promptly if attorney action is required to resolve repayment

#### (C) Portfolio Credit Review

GMAC-RFC and the Servicer may design a collection strategy when reviewing the GMAC-RFC portfolio, using the Servicer's system analysis tools. This portfolio credit review may be performed semi-annually or as directed by GMAC-RFC.

**(D) Credit Card Chargebacks**

The procedure for processing credit card chargebacks is as follows:

(1) If the **Borrower** contacts the Servicer for assistance with a disputed amount, the Servicer must mail to the Borrower a dispute form with a return envelope marked with the address of Servicer's Bank Card Research.

(2) The Servicer's Bank Card Research will communicate in writing with the Borrower to verify the dispute, send letters requesting additional information to resolve the dispute if needed, and notify the Borrower of the resolution of the dispute. The Servicer's Bank Card Research will also document the Borrower's credit card account of any action taken and will maintain a file with the Borrower's correspondence.

(3) The Servicer must post a provisional credit to the account in the amount of the disputed charge until the dispute is resolved.

(4) Research and/or charge back disputed amounts will be handled as outlined below. The standards for taking losses are as follows:

(a) Any item in dispute less than $25 may be taken as a write-off at the discretion of the research staff.

(b) Write-off of small sale amounts in dispute will be no more than $100.00 in any month for any one account not including fraudulent use. Write-offs on individual accounts will not exceed $250.00 over the life of the Loan.

If the Servicer determines that a write-off will be taken using these parameters, a log showing the account number, amount of loss, name of merchant, and Borrower's name will be maintained by the Servicer, and the adjustment made to the Borrower's account.

If a dispute does not meet the criteria for taking a loss, as outlined above, the Servicer must provide GMAC-RFC with a recommendation. GMAC-RFC will provide the Servicer with a decision in writing within three **Business Day**s.

If a disputed item is returned to the Servicer in accordance with credit card regulations and all charge back rights have been exhausted, the Servicer must re-post the item to the Borrower's account. The Servicer must send a letter to the Borrower advising them of the action and that the charge in question is valid.

(5) The Servicer must provide the Master Servicing Home Equity Asset Manager contact at GMAC-RFC's Servicer Management Department in Burbank, California with a copy of each write-off as it occurs.

(6) The Servicer must provide the Home Equity Loan Accountant in Burbank, California a monthly report listing the following on credit card write-offs:

- GMAC-RFC Loan number
- **Borrower**'s name
- Amount of the Write-off
- Reason for the Write-off (using status codes with a key code)

## 416A

### Delinquencies

The Servicer must assess and collect late fees in accordance with the terms of each Note. The Servicer must remit the late fees to GMAC-RFC, in accordance with the servicing agreement. The Servicer shall have the right to waive these fees at its discretion, after making a prudent effort to collect.

**(A) Collection Standards**

The Servicer's continued eligibility to service Loans for GMAC-RFC is contingent upon the Servicer's ability to maintain **Delinquency** rates that are acceptable to GMAC-RFC. GMAC-RFC may terminate the Servicer with cause if:

(1) On any two consecutive month-end cycles, the percentage of balances or accounts greater than or equal to 60 days past due, excluding pending bankruptcies, exceeds the results achieved by the GMAC-RFC portfolio of Home Equity Loans, or

(2) On any two month-end cycles, in any three consecutive months, the percentage of either balances or accounts greater than or equal to 60 days past due, excluding pending bankruptcies, exceeds the results achieved by the GMAC-RFC portfolio of Home Equity Loans, **or**

(3) On any two month-end cycles in any three consecutive months, the percentage of either balances or accounts between 30 and 59 days past due, excluding pending bankruptcies, exceeds 1.125% of the total outstanding balances or accounts serviced by the Servicer (subject to the requirements outlined under the**Calculation of Acceptable Delinquency Rates** subsection of this Chapter of this Servicing Guide).

**(B) Notification Process**

Upon failure by the Servicer to maintain Delinquency rates acceptable to GMAC-RFC, GMAC-RFC will notify the Servicer in writing of failure to maintain said rates. Failure to notify does not constitute a waiver of any of GMAC-RFC's rights or remedies.

Within 48 hours of the Servicer's receipt of said notification, the Servicer must send a written response to GMAC-RFC setting forth in detail the strategy by which the Servicer will decrease **Delinquency** rates to a level acceptable to GMAC-RFC. Fax transmission by either party shall be considered acceptable written notification.

**(C) Right to Cure**

The Servicer shall have two consecutive 30-day periods following the above notification of the notice to reduce **Delinquency** rates to the acceptable Delinquency rate. If the Servicer fails to reduce Delinquency rates to the acceptable rate, GMAC-RFC may terminate the servicing agreement between GMAC-RFC and the Servicer with cause. Additionally, once the Servicer has reduced its Delinquency rates to the acceptable Delinquency rate, the Servicer must maintain the acceptable Delinquency rate for six consecutive 30-day periods. If the Servicer fails to maintain the acceptable Delinquency rate during this period, GMAC-RFC may terminate the servicing agreement between GMAC-RFC and the Servicer with cause.



**(D) Calculation of Acceptable Delinquency Rates**

GMAC-RFC may, in the exercise of its sole discretion, adjust the acceptable dollar Delinquency rate to utilize total outstanding lines methodology rather than total outstanding balances methodology. The Servicer and GMAC-RFC will work together to agree upon an odds chart, generic or customized, which is more predictive of the actual performance of GMAC-RFC's Home Equity portfolio. Any such odds chart that is developed shall be the exclusive property of GMAC-RFC

GMAC-RFC, at its sole discretion, may create an odds chart which is customized to forecast the performance of its portfolio. This odds chart may be used to calculate a Delinquency rate for the period which is acceptable to GMAC-RFC. Forecasting of future performance may be accomplished by utilizing a customized odds chart provided by GMAC-RFC. The odds chart will forecast the Delinquency rate, including write-offs, over a 24-month period.

**(E) Collection Requirements/Records**

The Servicer must maintain and monitor effective collection techniques that assure full compliance with all applicable investor requirements. The Servicer must collect debt promptly through early intervention and maintain the goodwill of the **Borrower** following all procedures as set forth in this Servicer Guide. The Servicer must comply with the requirements of the Fair Debt Collection Practices Act and all other applicable **State** and federal regulations.

The Servicer must document all collection efforts on its Servicer's collection system. The Servicer must maintain adequate records of collection efforts and make the records available to GMAC-RFC upon request.

At a minimum, the records must show:

- Dates that letters and notices were mailed
- Dates and results of phone calls
- Summary of all communications to and from Borrowers
- Documentation of property inspections following the guidelines set forth in the **Property Inspections** Section in this Servicer Guide
- Copies of all written communication concerning the Loan including reasons for prior and current default
- Dates and conversations with senior lienholders

Each chronically past due account, defined as having been 4x30 days delinquent in the past 12 months, will have a minimum of three telephone attempts per week, until contact is made. An exception will be made if the Servicer has technology in place acceptable to GMAC-RFC to target high-risk accounts. Telephone attempts must include evening and weekend calls. Telephone attempts to place of employment are required when contact cannot be made at the residence. Once contact has been made, a minimum of one call per week will be required unless payment arrangements have been made. At that point, follow-up will be based on the arrangement in effect. If the arrangement is broken, the Servicer must continue contact attempts in an effort to re-establish an agreement.

The Servicer must send a minimum of one letter per week for accounts where telephone contact has been unsuccessful.



The Servicer must work with the Master Servicing Home Equity Asset Manager contact at GMAC-RFC's Servicer Management Department in Burbank, California to establish and implement collection strategies.

**(F) Allowable Fees**

See **GMAC-RFC Form 2404** for allowable expenses, etc.

**(G) Non-Reimbursable Expenses**

GMAC-RFC considers the following items to be standard operating costs for the Servicer, attorney, or broker. They are part of the cost of doing business and are non-reimbursable:

- Property inspection fees
- Photographs
- Long distance telephone calls
- Regular postage
- Mileage or travel costs
- Fax charges
- Photocopy costs
- Credit reports used for other than specific loss mitigation workouts
- Unpaid charges plus applicable penalties not paid in a timely manner, per requirements of this Servicer Guide
- "Soft costs" are generally considered to be overhead costs, such as time expended or fees for curing a Delinquency, document preparation, secretarial services, word processing services, notary public services, new case start-up fees, co-counsel fees, charges for certified copies, telephone charges, and charges for calls or correspondence to GMAC-RFC
- In-house counsel time expended or fees incurred when the reimbursable matter is handled by outside counsel
- Appraisals and Broker's Price Opinions except when requested by GMAC-RFC or approved in writing by GMAC-RFC or required by this Servicer Guide
- Title insurance policies, except when requested by GMAC-RFC or approved in writing by GMAC-RFC or required by this Servicer Guide
- Mortgage credit life insurance premiums
- Mailgram charges
- Legal fees and expenses related to actions that are essentially servicing functions or for expenses that are properly allocated to the attorney's overhead expenses
- Attorney fees for correcting matters which should have been resolved prior to foreclosure sale, including any costs to resolve real property title issues resulting from the Seller's or Servicer's actions or inactions
- Service calls or trip charges
- Monthly cleaning



**(H) Five to Twenty-Nine Days Past Due**

The Servicer must begin contact attempts on first-payment default Loans between the fifth and the tenth days of **Delinquency**. This contact should be handled as an inquiry, rather than as a collection call. The Servicer should manually dial Delinquent Borrowers during this period. If auto-dialing is more feasible, the Servicer may use this method as a means of initial **Borrower** contact, as long as a recorded message is not used. Chronically Delinquent Loans (defined as those having been 4 x 30 days delinquent in the past months) should have telephone contact initiated by the tenth day of Delinquency.

Telephone attempts during this period are essential and should continue at a minimum of three times per week until contact is made with the Borrower. Also, attempts should be made at various times of the day, evening and weekend, while adhering to **State** and Federal Collection Laws.

When contact has been established, the Servicer must determine the reason for default (RFD), and whether it is short-term (one to three months) or long-term (four months or more).

If short-term, the Servicer must discuss with the **Borrower** the best way to bring the Loan current, keeping in mind the workout option(s) available. The Servicer must also obtain information concerning the senior lienholder, i.e. company name, Loan number, telephone number and contact person. The Servicer must verify status of the senior lien.

If the **Delinquency** appears long-term, the Servicer must immediately request employment information, status of household income, backup information pertaining to the reason for default and senior lienholder information. The Servicer must immediately contact the senior lienholder and attempt to obtain the Loan number, telephone number, and contact person, and complete the Second Mortgage Cost Evaluation and Recommendation **GMAC-RFC Form 24A10**.

The Servicer must send a late charge notice no later than the 16th day of Delinquency.



**(I) Thirty to Fifty-Nine Days Past Due**

Servicer's collectors and management may block a credit line any time they determine the **Borrower** will not or cannot re-pay the Loan according to the Note. Information leading to such a decision could include, but is not limited to, loss of employment, significant reduction in income, no response by the Borrower and three or more broken promises during the current Delinquency period. The Servicer must use a firm approach with in-depth questioning of the Borrower to evaluate whether there is a long-term or short-term problem.

If personal contact with the Borrower has been unsuccessful, the Servicer must continue with procedures set forth above for making contact. In addition the Servicer must do the following at this time:

- On the 31st day of Delinquency, block the credit line and send notice to the Borrower indicating that the account has been blocked in accordance with the terms of the credit line agreement under the "Suspension of Credit and Reduction of the Credit Limit" section
- Order a BPO or property inspection between the 45th and 75th days of Delinquency, if one has not already been ordered
- Contact (if not already done) the senior lienholder on an unpaid principal balance of $50,000 or more.
- If the senior lienholder is in the process of foreclosure, complete the Second Mortgage Cost Evaluation and Recommendation **GMAC-RFC Form 24A10**.
- Take appropriate steps to protect the interest of GMAC-RFC
- Send the breach letter between the 45th and 60th days of Delinquency, prior to the Borrower missing their third payment, and maintain a copy of the letter. All parties obligated under the Loan should receive this notice by both certified and regular mail.

**(J) Sixty to Eighty-Nine Days Past Due**

The Servicer must provide the Master Servicing Home Equity Asset Manager contact at GMAC-RFC's Servicer Management Department in Burbank, California with a monthly list of all accounts which are blocked. This report will include Loans that are, 60 to 89 days Delinquent, and 90+ days Delinquent. The report should be broken out by days Delinquent and also reflect the following:

- GMAC-RFC Loan number and **Borrower**'s name
- Block code and reason for the block

At this point, the Servicer should decide the action to be taken on this Loan. The Servicer should review the Borrower's ability to repay the **Delinquency** and all the options offered, i.e. temporary indulgence, repayment plan, special forbearance relief agreement, pre-foreclosure sale, deed-in-lieu of foreclosure.

- A face-to-face interview with the Borrower should be ordered between the 31st and 60th days of Delinquency
- Complete Second Mortgage Cost Evaluation and Recommendation **GMAC-RFC Form 24A10** between the 60th and 100th days of delinquency or earlier as needed
- For Home Equity Loans with a balance above $50,000, senior lienholder status should be updated every 30 days while the Loan is delinquent.
- For Home Equity Loans with a balance under $25,000, senior lienholder need only be contacted for updates when completing a workout, initiating foreclosure or recommending charge-off/write-off

**(K) Ninety to One-Hundred-Twenty Days Past Due**

The Servicer must report monthly using **GMAC-RFC Form 24A29**, all accounts 90+ days past due. Refer to the **Minimum Reporting Requirements** Section of this Chapter.

The Servicer must submit all accounts reaching 100 days past due to the Servicer's collection manager for review. The Servicer must submit to the Master Servicing Home Equity Asset Manager contact at GMAC-RFC's Servicer Management Department in Burbank, California of its completed recommendation to write-off/charge-off any Loan on or before the account reaches 120 days of Delinquency accompanied by the Second Mortgage Cost Evaluation and Recommendation **GMAC-RFC Form 24A10**. GMAC-RFC will provide written approval or denial of the recommendation. If during this time there is a change in the **Borrower**'s situation or the Servicer's decision, the Servicer must contact the Master Servicing Home Equity Asset Manager contact at GMAC-RFC's Servicer Management Department in Burbank, California immediately.

The Servicer must continue collection and loss mitigation efforts while waiting for a response from GMAC-RFC.

**(L) One-Hundred-Twenty Plus Days Past Due**

The Servicer is expected to recommend that the Loan be written off, charged off, or is to be in foreclosure by the 120th day of **Delinquency**.

GMAC-RFC requires the Servicer to continue collections and loss mitigation on all Loans placed in foreclosure until the foreclosure sale is held. While the Loan is in foreclosure, GMAC-RFC requires the Servicer to monitor the status of the senior lien and ensure that the GMAC-RFC Loan is protected.

## 417A

### Blocking an Account From Draw (Use)

A non-Delinquent account may be blocked if the Servicer identifies the account as being in default as per the Note agreement. The Servicer may also block a non-Delinquent account if other conditions exist as explained in the applicable Note and Loan agreement. The Servicer must send a letter to the **Borrower** advising of the block and the reasons for the action.

## 418A

### Notification of Credit Bureau

For all Loans serviced for GMAC-RFC, the Servicer must report monthly the payment status of the Loans to the following credit report agencies.

- Equifax
- Experian
- Trans Union Credit Information Co.
- Innovis Data Solutions

It is not necessary that the full file reporting occur on a particular day of the month. The Servicer may report after each month-end to allow time for payment corrections, returned checks and other adjustments to be processed.

Full file reporting includes Loans recently originated, current and delinquent Loans, Loans liquidated through workout options, foreclosures and write-offs.

Borrowers are permitted under the Federal Fair Credit Reporting Act “FCRA” to inquire about or dispute the accuracy of information in their credit repository files. This right to inquire about or dispute the accuracy of information applies to any mortgage serviced for GMAC-RFC. Whenever the Servicer receives such an inquiry or notice of dispute from a Borrower, or receives a letter from a credit repository requesting verification or correction of mortgage-related information, the Servicer must respond in accordance with the requirements of the FCRA.

Each month following the initial report, the Servicer must update the status of each Loan.

## 419A

### Loss Mitigation

The Servicer must consider alternatives to foreclosure and/or charge-off. GMAC-RFC will agree to a number of different measures for avoiding or minimizing losses. If an evaluation of the circumstances surrounding the potential or existing default indicates that a loss appears probable, the Servicer must aggressively pursue one of the following workout options:

- Lien Release:
  - Accommodation Sale
  - Short Sale
  - Negotiated Release
- Repayment Plan
- Capitalization/Modification
- Deficiency Judgment
- Deed in lieu of foreclosure

All workout options are contingent upon GMAC-RFC authorization unless the Servicer has received delegated authority. Please refer to the **Workout Documentation Requirements** subsection (below) for documentation needed for each type of alternative.

GMAC-RFC has a "common sense" loss mitigation philosophy. Each default situation is unique and must be weighed against the probable outcome in the event a workout is not approved. In most situations, authorization of a workout is a judgment call. All available information must be analyzed to determine if it is appropriate to approve a workout. GMAC-RFC understands that in certain situations it may be difficult to gather all of the standard loss mitigation documentation due to an uncooperative **Borrower**, senior lienholder or other obstacles. If, in the opinion of the Servicer, a workout is determined to be the best course of action, a recommendation is to be made promptly to the Master Servicing Home Equity Asset Manager contact at GMAC-RFC's Servicer Management Department in Burbank, California.

#### (A) Workout Programs

The Servicer must obtain GMAC-RFC's approval before accepting a final payment for an amount that is less than the total indebtedness. There are three types of Lien Releases that may be appropriate due to the **Borrower**'s personal financial situation. These types are as follows:

(1) Accommodation Sale

This scenario is most likely to arise when a negative equity situation exists and the Borrower is relocating due to employment or personal reasons. The Home Equity and senior lienholder's account are current and the Borrower is requesting a lien release to facilitate the sale of the Property. A review of the Borrower's personal financial documentation and credit history reveals no financial hardship or need for assistance other than the Borrower does not have the resources or borrowing capability to pay the deficiency arisen from the sale.

This is a high-risk solution. If a workout is not finalized a default is likely to ensue since the Borrower will no longer be living in the Property and his or her continued maintenance of the mortgage obligations may be adversely affected. Therefore, the Servicer must respond and act promptly in these situations.

**Borrowers are required to enter into an unsecured agreement at the existing Note Rate for full repayment of any deficiency.**

(2) Short Sale

This workout option involves an existing or potential default situation wherein the sale of the property to a third party results in proceeds that are not sufficient to satisfy the total mortgage indebtedness. Depending on the circumstances surrounding the default, the Borrower may or may not be required to contribute cash at settlement to reduce the deficiency and/or enter into a repayment arrangement for all or a portion of the deficiency. The degree of Borrower participation is determined after a careful review of the Borrower's personal financial situation.

(3) Negotiated Release

A release of lien to facilitate a refinance or some other action by the Borrower may be appropriate when the Borrower desires to retain ownership of the Property but does not have the financial ability to maintain the mortgage obligations.

The lien is released and the Note canceled in exchange for a monetary settlement from the Borrower for all or a reasonable portion of the unpaid principal balance. The degree of Borrower participation is determined after an equity analysis and a careful review of the **Borrower**'s personal financial situation.

In addition to the above Lien Release workout programs, the following alternatives may be appropriate in situations where the **Borrower** desires to retain ownership of the property:

(4) Repayment Plan

The Servicer may enter into a Repayment Plan with the Borrower, without prior GMAC-RFC approval, provided the arrangement is designed to fully reinstate the account within six months after the **Due Date** of the initial plan payment. A formal written plan is required where the term exceeds 90 days.

The Servicer must obtain a financial statement from the Borrower for any plan that requires a repayment term of more than three months. The financial statement must be reviewed to confirm the Borrower’s ability to maintain the plan payments.

(5) Capitalization and/or Modification

The Servicer must contact the Master Servicing Home Equity Asset Manager contact at GMAC-RFC’s Servicer Management Department in Burbank, California prior to offering this alternative to the Borrower. Not all Loans are eligible for Capitalizations and/or Modifications.



The Servicers should consider a modification of a Delinquent mortgage under circumstances similar to the following:

- The Borrower has experienced a permanent long-term reduction of income that affects his/her ability to continue maintenance of the mortgage obligation (includes Senior Lien)
- The existing terms of the mortgage contribute toward a greater risk of default
- Any situation in which changing the terms of the mortgage would cure the existing **Delinquency** and prevent future Delinquencies

These next two alternatives also may be appropriate in certain situations:

(6) Deficiency Judgment

Upon default, a review of the Loan application and/or current credit bureau report may reveal that the **Borrower** has other assets [**Real Estate Owned (REO)**] and obligations that are current. In the event the Borrower fails to respond to collection and/or loss mitigation efforts it may be prudent to consider pursuing a Deficiency Judgment.

The Servicer should recommend this action, if appropriate, no later than the 150th day of the **Delinquency**.

**Note**: Certain State laws may prohibit pursuit of a Deficiency Judgment until after the senior lienholder has completed its foreclosure action. The Servicer must obtain GMAC-RFC approval before taking a legal action against the Borrower.

(7) Deed in lieu of Foreclosure

A voluntary conveyance of title from the Borrower is contingent upon the title being free and clear of all **Junior Lien**s and encumbrances. Depending on the Borrower's personal and financial situation, a monetary contribution or an unsecured Note to offset or minimize the anticipated deficiency may be required. The Servicer must obtain GMAC-RFC approval prior to pursing this alternative.

**(B) Workout Documentation Requirements**

The Servicer should submit required workout documents to GMAC-RFC, along with the documentation listed on Workout Information **GMAC-RFC Form 24A21** and the completed Workout Recommendation **GMAC-RFC Form 24A22**. Common sense is often the overriding factor when evaluating a workout option. If certain information or documentation cannot be obtained, and the Servicer believes that a specific workout is appropriate, it should submit a recommendation along with all available documentation.

**(C) Write-offs/Charge-offs**

Write-off recommendations should be submitted when no further attempt can be made to collect the debt (i.e., discharged Chapter 7 Bankruptcy).

Charge-off recommendations should be submitted when additional attempts may be made to collect the debt (i.e., deficiency judgment).



If the Servicer believes that it is not in the best interest of GMAC-RFC to pursue further collection efforts or legal action, the Servicer may recommend that a Delinquent Loan be liquidated by writing it off or charging it off. The Loan will be written off/charged off after the Servicer has verified that the senior lienholder has liquidated its Loan.

When recommending a Loan be written off/charged off, the Servicer must submit the Mortgage Cost Evaluation and Recommendation **GMAC-RFC Form 24A10** along with the required documentation. The Servicer must encourage the **Borrower** either to contribute funds and/or execute an unsecured Note toward the anticipated loss or execute a new lien. The Servicer must advise the Borrower that if no contribution is made legal proceedings may be taken.

**(D) Write-off/Charge-off Procedures Following Approval**

The Servicer is responsible for monitoring the senior lienholder to determine when the Loan will be liquidated. Upon verification that the senior lienholder's Loan has been liquidated, the Servicer must complete the Write-Off Liquidation Report **GMAC-RFC Form 24A14** and the Payoff/Liquidation Report **GMAC-RFC Form 24A18** within 24 hours of verification.

**(E) Expense Report**

If there were any expenses, they should be submitted at this time on the Expense Report **GMAC-RFC Form 24A13**, via email to: BurbankHSSclaims@gmacrfc.com.

All of the above should be forwarded to the Master Servicing Home Equity Asset Manager contact at GMAC-RFC's Servicer Management Department in Burbank, California.

## 420A

### Foreclosures

Once the Servicer has determined that no other action on its part will cause the default to be cured and that initiating foreclosure action will not result in a higher loss to the investor, it may initiate foreclosure. The Servicer will need to contact the Master Servicing Home Equity Asset Manager contact at GMAC-RFC's Servicer Management Department in Burbank, California to obtain the name in which to foreclose.

Acceleration of a Loan must be accomplished in accordance with the terms of the Security Instrument, applicable law, and, when applicable HUD Guidelines. The Servicer should not initiate foreclosure action until every reasonable effort has been made to cure the Delinquency.

GMAC-RFC requires that collection efforts, and, more importantly, loss mitigation efforts, continue while the Loan is in foreclosure until the foreclosure sale is held. The Servicer must monitor the senior lien and advance funds on behalf of GMAC-RFC to keep the senior lien current and/or to pay same in full, if necessary.



## 421A

### Pre/Post Foreclosure Sale Procedures

The Servicer should refer to and follow the guidelines in **Loss Mitigation Workouts** Section and **Foreclosure Statement of Expenses** Section in Chapter 4, Loan Servicing of this Servicer Guide. Submit reimbursement claims on the Expense Report **GMAC-RFC Form 24A13**, via email to: BurbankHSSclaims@gmacrfc.com.

## 422A

### General/Accounting Reports Sent to GMAC-RFC by Servicer

See GMAC-RFC Loan Servicing Agreement Reporting Requirements **GMAC-RFC Form 24A25**.

## 423A

### Senior Lienholder Mortgage Purchase/Payment Advances

If the Servicer discovers that a senior lienholder is within three weeks or less of holding the foreclosure sale, the Servicer should immediately do the following:

- Obtain a complete breakdown of ***all*** amounts required to reinstate the senior lien
- Obtain a complete breakdown of funds required to pay off the senior lien. This is needed for the Servicer to perform the analysis of whether it is more cost-beneficial to pay off any senior lien or keep it current
- Obtain a current credit report if one is not on file within the past four months
- Complete the Second Mortgage Cost Evaluation and Recommendation **GMAC-RFC Form 24A10** in support of the Servicer's decision to advance or pay off the senior lien

All of the above required documentation and forms must be maintained by the Servicer and available for GMAC-RFC's review.

The Servicer is responsible for advancing any funds necessary to protect the interests of GMAC-RFC and/or its investors. Reimbursement Expense Report **GMAC-RFC Form 24A13** can be submitted via email to: BurbankHSSclaims@gmacrfc.com. See the **Foreclosure Statement of Expenses** Section in Chapter 4 of this Servicer Guide for reimbursable expenses.

## 424A

### REO Properties

The Servicer should refer to and follow the guidelines in the **Real Estate Owned (REO)** Section in Chapter 4 of this Servicer Guide.



## 425A

### Bankruptcies

The Servicer must use the following procedures for processing bankruptcies:

- Acknowledge receipt of the bankruptcy notice
- Stop all collection activity to comply with the Federal Stay Order
- Freeze the credit line
- Contact the senior lienholder if the second mortgage is 30 days or more past due
- Conduct an initial review verifying payment status, collateral, account balance and debtor's attorney
- Order a valuation for Chapter 7 bankruptcies between the 60th and 75th days of **Delinquency**
- Order a valuation for Chapter 11, 12 and 13 bankruptcies as needed to determine appropriate action
- Review the debtor’s plan
- Implement, monitor, and review the bankruptcy strategy
- Lift stay on collateral, as needed
- Lift stay on co-debtors, as needed
- File a Motion to Dismiss, as needed
- File an Objection to Confirmation, as needed
- File a Proof-of-Claim. GMAC-RFC will provide documentation necessary to file the POC
- Follow-up on the bankruptcy strategy
- Verify confirmation of Chapter 11, 12, or 13 plan
- Monitor debtor's compliance to the confirmed plan
- Verify confirmation of the bankruptcy plan responding in a manner that represents GMAC-RFC’s best interest
- Monitor any payments under any approved plan and take appropriate action to protect the interests of GMAC-RFC as needed

#### Bankruptcies Minimum Standards

The Servicer must take appropriate action to protect GMAC-RFC’s interest during bankruptcy proceedings in which the **Borrower** is the debtor. At a minimum, the Servicer must:

- Stop all collection effort and comply with all applicable laws and regulations
- Contact the senior lienholder to obtain Loan status and type of action to be taken if the second mortgage is 60 days or more past due
- Obtain legal counsel as needed
- Obtain a copy of all documents pertaining to the bankruptcy



4A
GMAC-RFC

- File the Proof of Claim within the time limit set by the court
- Maintain copies of all documents related to the bankruptcy, including the notice of first Meeting of Creditors, Proof of Claim, pleadings, etc.
- Review any repayment plan proposed under Chapter 11 bankruptcy
- Conduct drive-by inspections for any Loan delinquent between the 45th and 60th days contractually, and thereafter as deemed necessary

## 426A

### Property Inspections

The inspection is done to determine the physical condition and occupancy status of the **Mortgaged Premises**. Care of and condition, as well as economic variables, can affect the Value of the mortgage property as the default process continues. The Servicer must review in detail the required monthly property inspections for signs of waste and deterioration, and be aware of regional economic trends affecting property Values. If during the default process (especially in a long or delayed foreclosure or bankruptcy) a Servicer finds that the property Value has been adversely affected, the Servicer should request a current fair market valuation (BPO) to ensure that foreclosure or bankruptcy relief remains a viable resolution in mitigating investor losses. If the property is found to be vacant or unsecured, the fair market valuation obtained should include an interior inspection, and the property should be secured, if appropriate. Current Values must also be used in driving loss mitigation solutions to avoid foreclosure whenever possible.

The Servicer shall follow the additional guidelines below:

(1) A property inspection must be ordered between the 45th and 60th days of **Delinquency** and again every month thereafter until contact is made with the Borrower.

(2) In most cases, GMAC-RFC does not consider drive-by property inspections to be sufficient. There may be circumstances or legal constraints (such as bankruptcy) under which a drive-by inspection would be appropriate.

(3) If the Servicer learns that the property has been abandoned or is in a severe state of deterioration, waste, or disrepair, the Servicer must take action to protect the Mortgaged Premises. The Servicer must always contact the senior lienholder to discuss the situation.

(4) Each property inspection must be documented by an inspection report. The Servicer can use any type of format; however, at a minimum, the information provided must cover the information requested in the 1-4 Family Property Servicing Inspection Report **GMAC-RFC Form 24A15**.



## 427A

### Accounting and Financial Reporting

For general requirements, see the Loan Servicing Agreement Loan Reporting Requirements **GMAC-RFC Form 24A25**. The Servicer must follow generally accepted accounting principles unless otherwise requested by GMAC-RFC. GMAC-RFC will be responsible for the following:

**(A) Funds Transfer Policy**

For lines of credit, funds will be transferred daily between GMAC-RFC and the Servicer for activity from the previous day. Requests for funds will be communicated to the other party prior to 9:30 a.m. (Central time) with wires to be completed by 2:00 p.m. (Central time). For closed-end Loans, funds are due on the fifth business day of each month, unless otherwise determined in the Servicing Agreement.

All Home Equity funds must be wired to GMAC-RFC as follows:

Residential Funding Company, LLC
C/O U.S. Bank
Acct. #104774437651
ABA #091 000 022
Servicer ID Number and Name
GMAC-RFC Loan Number, if applicable

**(B) Other Accounting**

GMAC-RFC is responsible for proper accounting treatment of expenses related to acquiring and booking Loans serviced by the Servicer in compliance with FASB-91 (Financial Accounting Standard's Board, Statement #91).

GMAC-RFC is responsible for accounting and compliance with all federal, **State** and local tax laws, statutes and regulations in regard to taxable activities to GMAC-RFC resulting from this contract.

**(C) Failure to Provide Timely Accounting, Collection and Loan Servicing Reports**

If the Servicer fails to provide any portion of the monthly reports in the Loan Servicing Agreement Reporting Requirements **GMAC-RFC Form 24A25** by the fifth **Business Day** following the reporting month, it will have violated its responsibility and will be subject to the following remedies:

(1) For the first late reporting offense in any consecutive 12-month period, a warning letter will be issued to the managing officer of the Servicer, with a copy to the GMAC-RFC's Accounting Department.

(2) For the second late reporting offense in any consecutive 12-month period, a $250 penalty will be assessed.

(3) For the third late reporting offense in any consecutive 12-month period, a $500 penalty will be assessed.

(4) For the fourth late reporting offense in any consecutive 12-month period, a $1,000 penalty will be assessed and/or the Servicer's eligibility status may be suspended.



(5) For the fifth or subsequent late reporting offense in any consecutive 12-month period, a $1,500 penalty will be assessed and/or servicing may be transferred with cause.

**(D) Receipt Deadlines**

The daily reconciliation reports that provide the previous day's transmission totals must be received by 10:00 am Pacific time on the business day following the activity date. The monthly reports such as trial balance, wire breakdown, Loan-level Prepayment Penalty listing, etc., must be received by the close of business on the second business day of each month.

## 428A

### Electronic Data Reporting

The Servicer must transmit daily information via EDT by 6:00 a.m. (Central time) including the data elements listed in the Home Equity Servicer Daily Transaction and Reporting Guide **GMAC-RFC Form 24A27**.

Failure to provide the daily transmission by 6:00 a.m. (Central time) and the monthly transmission by the second Business Day (following month end) by 12:00 p.m. (Eastern time) will result in the following penalties.

(1) For the first late reporting offense in any consecutive 12-month period, a warning letter will be issued to the managing officer of the Servicer, with a copy to the GMAC-RFC's Accounting Department.

(2) For the second late reporting offense in any consecutive 12-month period, a $250 penalty will be assessed.

(3) For the third late reporting offense in any consecutive 12-month period, a $500 penalty will be assessed.

(4) For the fourth late reporting offense in any consecutive 12-month period, a $1,000 penalty will be assessed and/or the Servicer's eligibility status may be suspended.

(5) For the fifth or subsequent late reporting offense in any consecutive 12-month period, a $1,500 penalty will be assessed and/or servicing may be transferred with cause.

## 429A

### Minimum Reporting Requirements

The Servicer must submit the reports detailed in **GMAC-RFC Form 24A29** Home Equity Servicer Monthly Transaction and Reporting Guide, via FTW no later than 5:00 p.m. Pacific Time on the third business day of each month, for activity occurring in the prior month. Failure to provide this information by the deadline date may result in a daily penalty of $100.

# 4B

## Home Improvement (Title I) Loan Servicing

The Servicer must service Home Improvement Loans sold to GMAC-RFC in accordance with the Client/Servicer Contract and this Servicer Guide as amended from time to time. The Servicer must contact GMAC-RFC regarding any issue which this Servicer Guide or the Client/ Servicer Contract either does not address or is ambiguous.

## 400B

### General

The Servicer must adhere to the following guidelines in addition to the guidelines set forth in Chapter 4, **Mortgage Loan Servicing** of this Servicer Guide when servicing Home Improvement/Title I Loans.

## 401B

### Servicing Standards

The Servicer shall maintain collection staffing to provide collection activity in all time zones consistent with the requirements detailed in the collection procedures detailed in this Servicer Guide.

Diligent management efforts shall be made as necessary to insure proper collection practices are followed to meet the objectives of the collection procedures detailed in this Servicer Guide.

Customer service staffing and hours of operation will be maintained to provide the highest quality service as detailed in this Servicer Guide.

The Servicer shall make diligent efforts to retain the lines of credit as detailed in this Servicer Guide under:

- Line Increases
- Subordinations
- Modifications, including requests for Rate Reduction
- Payoff Requests
- Partial Releases

Consistent management effort will be made to insure timely delivery of reports to GMAC-RFC.

In addition to the specific servicing activities outlined above and in these procedures, the Servicer is responsible for performing: (i) any activities that are reasonably incidental to those specific activities; (ii) any Loan servicing activities required by applicable law; and (iii) any normal servicing functions typically performed by Servicers of Home Improvement Loans and Second Trust Deeds/Mortgages in connection with servicing their own accounts.

## 402B

### Returned Mail

To resolve mailing address issues and assure the proper mailing address is used, the Servicer should do one or all of the following:

- Check the address against its system to ensure the correct mailing/property address was used
- Pull the Loan file and verify the address, if the Servicer has access to the Loan file
- Telephone the Borrower to verify the correct address, if available
- Contact the title company and verify the address against the legal description
- Contact the senior lienholder to assist in address verification
- Order a property inspection

## 403B

### Second Mortgage Documents

**(A) Notes**

Requirements regarding Goal Line and Goal Loan Notes are specified in Chapter 9 of the **Client Guide**, Commitment, Prior Approval, Delivery and Funding. Client is responsible for ensuring that the Notes comply with all laws applicable to the Client including, but not limited to, licensing laws, and that the Notes are valid and enforceable under applicable State law.

**(B) Changes to Required Notes**

When GMAC-RFC requires the Client to use a Goal Line or Goal Loan Note drafted by a particular document provider, the Client may not change or alter the required Note except when authorized in writing by GMAC-RFC. If the Client believes a change must be made to any required Note in order to comply with a federal, **State**, or local law, the Client must notify GMAC-RFC immediately.

**(C) Security Instruments and Riders**

Security Instruments and Riders used to secure a Goal Line or Goal Loan Note are considered Non-Standard Documents and must comply with the requirements applicable to the Non-Standard Documents Section in Chapter 2A of the Client Guide. The Client is responsible for determining whether any Riders to the Security Instrument are necessary

**(D) Corrections to Notes, Security Instruments and Riders**

The Client must review the Note, **Security Instrument**, and Riders for accuracy prior to closing. These documents must be free of errors, with no erasures, white-out or other changes. If a correction must be made and a new instrument cannot be drafted, the Client must draw a single line through the incorrect portion and must type in the correction. All Borrowers must initial the change.

See the **Servicer Approval of Legal Documents** Section in Chapter 4A for a listing of GMAC-RFC Forms to utilize in servicing these Loans.

## 404B

### Insurance

For detailed information pertaining to insurance please refer to Chapter 4, **Mortgage Loan Servicing** of this Servicer Guide.

## 405B

### Hazard Insurance

The Servicer must act only on the cancellation notices and loss claims it may receive in accordance with the GMAC-RFC Home Improvement Loan Servicing Agreement.

See **Hazard Insurance** Section in Chapter 4 for Hazard Insurance requirements.

## 406B

### Flood Insurance

Each file GMAC-RFC purchases from a **Client** must contain the following information:

- FEMA (Federal Emergency Management Agency) Standard Flood Hazard Determination form. GMAC-RFC will use this form to identify in which flood zone the property is located
- A transferable "Life of Loan" flood zone determination contract for all Loans

See the **Flood Insurance** Section in Chapter 4 of this Servicer Guide for Flood Insurance requirements.

## 407B

### Individual Loan Servicing

The Servicer must make all necessary interest rate and payment adjustments in accordance with the terms of the Note, and must otherwise service the Loan in accordance with the **Loan Documents**, the **Client**/Servicer Contract and this Servicer Guide.

## 408B

### Subordination Requests

The Servicer should quote to requesting Borrowers, lenders or title companies that subordination(s) take seven to twenty **Business Day**s from receipt of a complete subordination package as defined herein.

The Servicer may collect, from either the Borrower or the Loan escrow, a maximum fee of $250.00 for processing the subordination. The Borrower is responsible for the recording fees. GMAC-RFC will not be responsible for any uncollected fees.

The Servicer subordination representative will fax notice to GMAC-RFC's Servicer Management Department at 818.260.1810. The fax notice will contain the name and account number of Borrowers for which subordination(s) have been completed/requested. The Master Servicing Home Equity Asset Manager contact at GMAC-RFC's Servicer Management Department in Burbank, California will retrieve and complete the Corporation Assignment, if needed, from GMAC-RFC's document repository (ESDO department) in Minneapolis.

**(A) Documents Required to Complete a Subordination Package**

The following documents should comprise a subordination package. These documents can be copies from the senior lienholder's pending Loan package:

- Completed (typewritten), signed and dated final Residential Loan Application
- Completed copy of the new appraisal (must be full summary)
- Credit report and the credit score
- Estimated Closing Statement and/or Reg Z
- Completed copy of the title search
- **Commitment** letter from the lender to the Borrower
- In the case of a re-certification appraisal, include a minimum of three current comparables

**(B) General Conditions for Approval**

In connection with any Borrower request for a subordination the Servicer has authority to approve the request; however, the Servicer must verify the following:

(1) Priority of GMAC-RFC's mortgage lien will not be affected by any claims of any subordinate Lienholders

(2) All outstanding liens or encumbrances against the property are current

(3) Servicer has received approval from any mortgage insurance company, if applicable

(4) The resulting Loan-to-Value ratio immediately prior to the subordination

(5) The Borrower's debt-to-income ratio and analysis provides sufficient comfort that the new financing will not cause undue hardship for the Borrower and maintain the documentation supporting the decision

**(C) Additional Documentation May be Required**

If there are exceptions to the above approval authorities, the Servicer must submit a completed package to the Master Servicing Home Equity Asset Manager contact at GMAC-RFC's Servicer Management Department in Burbank, California. All of the above documents must be submitted along with the documents requested below. The Servicer must send the completed package to GMAC-RFC via overnight service. The Servicer must provide the following additional documentation:

- Completed Senior Lienholder information sheet **GMAC-RFC Form 24A25** on the future lienholder
- Copy of payment history and status of the existing credit line
- Completed Subordination Agreement **GMAC-RFC Form 24A06**
- Completed Amendment To Agreement & Deed of Trust **GMAC-RFC Form 24A07** (if applicable)
- Cover letter on Servicer's stationery to the requesting institution
- A document providing the following information:
  - Date and GMAC-RFC Loan number
  - **Borrower**(s) name and address (mailing and property if not the same)
  - Refinance company name
  - Name of contact person, address, telephone number, and fax number with area code

- Cash out amount, if applicable
- Statement of whether GMAC-RFC Loan is delinquent or current
- Original Loan amount and new amount if a modification is required
- Current balance of GMAC-RFC Loan
- Original amount of First Mortgage
- Current balance of First Mortgage and the new refinance amount
- Old appraisal amount and new appraisal amount
- Current CLTV and new CLTV
- Credit Score
- Name of individual who completed worksheet and date completed

Note: If the Servicer is able to provide the same information as requested within the GMAC-RFC Forms listed above, it will not be required to use the GMAC-RFC forms.

GMAC-RFC will provide the Servicer with a decision within three business days of receipt and/or:

- Contact the Servicer if additional information is required
- Advise the Servicer of a decline and the reason
- Contact the Servicer to request a Modification

The recorded subordinations and modifications, as applicable should be sent to the Master Servicing Home Equity Asset Manager contact at GMAC-RFC's Servicer Management Department in Burbank, California with a copy kept by the Servicer for tracking purposes.

If there is a Modification, the Servicer must make the necessary adjustments to its system to reflect the new modified terms. This must be done as soon as the Servicer receives proof that the **Borrower** has agreed to the Modification. The Servicer must note the recording information on its system. The Master Servicing Home Equity Asset Manager contact at GMAC-RFC's Servicer Management Department in Burbank, California will send the original recorded Subordination and Modification, when applicable, to the ESDO department in Minneapolis after recordation from the county and receipt from the Servicer.

## 409B

### Partial Releases

The Servicer may approve applications for partial release of the lien on the **Mortgaged Premises**, easements, consent to substantial alterations, removal, demolition, taking or dividing the Loan or the Mortgaged Premises. The Servicer must verify that (i) the priority of GMAC-RFC's mortgage lien will not be affected by any claims of subordinate lienholders, (ii) the reduction in the Value of the remaining property does not exceed the consideration received by the Borrower, (iii) the consideration received by the Borrower is at least equal to the Value of the property being released, (iv) all outstanding liens or encumbrances against the property are current, (v) the Servicer has received approval from any mortgage insurance company, or any senior lienholder, if applicable, and (vi) the resulting Loan-to-Value ratio after the partial release does not exceed the Loan-to-Value ratio immediately prior to the partial release.

The Servicer must submit the Partial Release of Mortgage form **GMAC-RFC Form 24A08**, or a similar form with the same information, to the Master Servicing Home Equity Asset Manager contact at GMAC-RFC's Servicer Management Department in Burbank, California. The Servicer must obtain detailed information such as supporting appraisal(s), blueprints, plats, sketches, legal instruments, etc. Approval of the senior lienholder and the mortgage insurer must be obtained together with the consent of co-makers, guarantors, and other obligors, as applicable, before granting approval.

The Servicer must maintain the documentation supporting the Servicer's decision.

**(A) General Conditions for GMAC-RFC Approval**

If there are exceptions to the above approval authorities, the Servicer must submit a completed package to the Master Servicing Home Equity Asset Manager contact at GMAC-RFC's Servicer Management Department in Burbank, California.

The Servicer should determine the following:

- Whether the Borrower may be required to apply a portion of the proceeds of the sale to the home equity line of credit to pay down the balance and reduce the credit limit and/ or balance to comply with **Loan-to-Value** requirements
- Whether the remaining parcel has sufficient current Value to meet the required Loan-To-Value ratio as of the original date of origination of the Loan
- Whether a new appraisal has been furnished. If the Servicer determines that there is not a new appraisal, one must be ordered at the Borrower's expense indicating the changes outlined
- Whether there is a preliminary title report. If the Servicer determines that there is not a preliminary title report, one should be ordered at **Borrower**'s expense

**(B) Request for Approval Package**

The following documents must be sent in a package to GMAC-RFC for approval:

- Blueprints, plats, sketches, and/or location survey
- Description of the partial to be released
- Copy of the sales contact
- Copy of the original title search and appraisal
- Copy of approval (if applicable) from **Mortgage Insurer**, senior lienholder, and any other obligor.
- New appraisal and preliminary title report.
- Servicer's recommendation
- GMAC-RFC's Requests For Loan Approval Form **GMAC-RFC Form 2400** and the Multipurpose Loan Service Report **GMAC-RFC Form 24A09**.

If approval is granted, the release is to be prepared by the Servicer and sent to GMAC-RFC for execution and recordation. The Servicer must communicate GMAC-RFC's decision to the **Borrower**.

Note: If the Servicer is able to provide the same information as requested within the GMAC-RFC Forms listed above it will not be required to use the GMAC-RFC Forms.

## 410B

### Notification of Deceased Borrower

Upon notification that a Borrower is deceased, the Servicer shall:

- Request a certified copy of the death certificate
- Code the servicing system to reflect that the primary or secondary Borrower is deceased
- Contact the surviving Borrower or co-Borrower to determine repayment arrangements. The Servicer must determine at this point if attorney involvement is needed. The Servicer should promptly take the steps necessary and prudent if attorney action is required to resolve repayment

## 411B

### Loan Payoff Requests

See **Individual Loan Servicing** Section in Chapter 4A for payoff requirements.

## 412B

### Delinquencies

The servicing requirements for delinquent Loans, as detailed within this Section, are the minimum servicing requirements to which all Servicers must adhere. Servicers are expected to use collection procedures that meet or exceed these requirements and result in efficient and adequate follow-up and/or resolution of delinquent Loans.

## 413B

### Collections

**(A) Collection Requirements**

The Servicer must maintain and monitor effective collection techniques that assure full compliance with all applicable **HUD** regulations and investor requirements. The Servicer must collect debts promptly through early intervention and maintain the goodwill of the **Borrower**, following all collection procedures as set forth in this Chapter. The Servicer must comply with the requirements of the Fair Debt Collection Practices Act and all other applicable **State** and federal regulations.

**(B) Collection Records**

The Servicer must document all collection efforts on its collection system. The Servicer must maintain adequate records of collection efforts and make the records available to GMAC-RFC upon request.

At a minimum the records must show:

- Dates that letters and notices were mailed
- Dates and results of phone calls
- Summary of all communications to and from Borrowers
- Documentation of property inspections following the **Property Inspection** Section set forth below
- Copies of all written communication concerning the Loan reasons for prior and current default
- Dates and conversations with senior lienholders

Each past due account will have a minimum of one telephone contact per week. If telephone contact has been unsuccessful, a minimum of one letter per week will be sent to all signers on the account.

The Servicer must make available and work with GMAC-RFC's Home Equity and Risk Departments to establish and implement collection strategies.

**(C) Allowable Fees**

See **GMAC-RFC Form 2404** for Expense Reimbursement Guidelines.

**(D) Non-Reimbursable Expenses**

GMAC-RFC considers the following items to be standard operating costs for the Servicer, attorney, or broker. They are part of the cost of doing business and are non-reimbursable:

- Property inspection fees
- Photographs
- Long distance telephone calls
- Regular postage
- Mileage or travel costs
- Fax charges
- Photocopy costs
- Credit reports used for other than specific loss mitigation workouts
- Unpaid charges plus applicable penalties not paid in a timely manner, per requirements of this Servicer Guide
- “Soft costs” are generally considered to be overhead costs, such as time expended or fees for curing a Delinquency, document preparation, secretarial services, word processing services, notary public services, new case start-up fees, co-counsel fees, charges for certified copies, telephone charges, and charges for calls or correspondence to GMAC-RFC
- In-house counsel time expended or fees incurred when the reimbursable matter is handled by outside counsel
- Appraisals and Broker's Price Opinions except when requested by GMAC-RFC or approved in writing by GMAC-RFC or required by this Servicer Guide
- Title insurance policies, except when requested by GMAC-RFC or approved in writing by GMAC-RFC or required by this Servicer Guide
- Mortgage credit life insurance premiums
- Mailgram charges
- Legal fees and expenses related to actions that are essentially servicing functions or for expenses that are properly allocated to the attorney's overhead expenses
- Attorney fees for correcting matters which should have been resolved prior to foreclosure sale, including any costs to resolve real property title issues resulting from the Seller's or Servicer's actions or inactions
- Service calls or trip charges
- Monthly cleaning

### (E) Two to Twenty-Nine Days Past Due

The Servicer must contact first payment default Loans and chronically delinquent Loans (defined as having been 4x30 days delinquent in the past 12 months) between the second and the tenth days of **Delinquency**. Attempt to contact all other delinquent Loans should start by the tenth day of Delinquency. The Servicer should manually dial delinquent accounts to contact Borrowers during this period. If auto dialing is more feasible, the Servicer may use this method as a means of initial **Borrower** contact as long as a recorded message is not used.

Telephone contact during this 27-day process is essential and should be attempted as often as necessary. Also, attempts should be made at various times of the day and evening, while adhering to **State** and Federal collection laws.

When contact has been established, the Servicer must determine the reason for default, whether it is short-term (one to three months) or long term (four months or more).

If short-term, the Servicer must discuss with the Borrower the best way to bring the Loan current, keeping in mind the workout option(s) available. The Servicer must also obtain information concerning the senior lienholder, i.e. company name, Loan number, telephone number, and contact person, and verify the status of the senior lien.

If the Delinquency appears long-term, the Servicer must immediately request employment information, status of household income, backup information pertaining to the reason for default and senior lienholder information. The Servicer must immediately contact the senior lienholder and complete the Second Mortgage Cost Evaluation **GMAC-RFC Form 24A10**.

A late charge notice is to be sent as the Note dictates but no later than the 16th day of **Delinquency**.

### (F) Thirty to Fifty-Nine Days Past Due

The Servicer must use a firm approach with in-depth questioning of the **Borrower** to evaluate whether there is a long-term or short-term problem.

If personal contact with the Borrower has been unsuccessful, the Servicer must continue with procedures set forth above for making contact. In addition, the Servicer must do the following at this time:

- Order a property inspection by the 31st day of **Delinquency**, if one has not already been ordered
- Contact the senior lienholder by the 45th day of Delinquency. Re-confirm what the affected lienholder intends to do to resolve any existing Delinquency. If delinquent, obtain an amount to reinstate the Loan through the 16th of the following month and request a breakdown of the total amount
- Send the 30-day demand letter between the 45th and 60th days of Delinquency, prior to the Borrower missing their third payment, and maintain a copy of the letter. All parties obligated under the Loan should receive this notice which is sent both by certified mail and regular mail.
- If the Loan is an FHA Title I, follow the **HUD** procedures

**(G) Sixty to Eighty-Nine Days Past Due**

The Servicer should decide what action to take on this Loan. The Servicer should review the Borrower's ability to repay the Delinquency and all the options offered, i.e. temporary indulgence, repayment plan, special forbearance relief agreement, pre-foreclosure sale or deed-in-lieu of foreclosure. Refer to the **Borrower Relief Program Options** Section of this Chapter. Additionally, the Servicer should:

- Conduct a face-to-face interview with the Borrower by the 60th day of Delinquency
- Complete a Second Mortgage Cost Evaluation **GMAC-RFC Form 24A10** package
- If the most recent valuation date for the Loan exceeds 180 days, order an AVM to establish a current Value

**(H) Ninety to One Hundred-Twenty Days Past Due**

The Servicer must prepare a monthly report listing all accounts 90+ days past due, per the Home Equity Servicer Monthly Transaction and Reporting Guide **GMAC-RFC Form 24A29.** See the **Minimum Reporting Requirements** Section of this Servicer Guide.

The Servicer must continue collection efforts while waiting for a response from GMAC-RFC.

**(I) One Hundred-Twenty Plus Days Past Due**

The Servicer must submit all accounts reaching 120 days past due to the Servicer's collection manager for write-off/charge-off review. The Servicer must advise, the Master Servicing Home Equity Asset Manager contact at GMAC-RFC's Servicer Management Department in Burbank, California of its recommendation to approve write-off/charge-off, along with the completed Second Mortgage Cost Evaluation **GMAC-RFC Form 24A10**. GMAC-RFC will provide written approval or denial of the recommendation.

If during this time there is a change in the Borrower's situation or the Servicer's decision, the Servicer should contact GMAC-RFC immediately. In the case of FHA Title I Loans, where the Servicer determines there is no equity, the Servicer will request that a claim be filed with **HUD**.

GMAC-RFC requires the Servicer to continue collections on all Loans placed in foreclosure and continue same until the foreclosure sale is held. While the Loan is in foreclosure, GMAC-RFC requires the Servicer to monitor the senior lienholder to maintain the monthly mortgage payments and assure that taxes and insurance remain current.

## 414B

### Property Inspection

GENERAL – When a Loan has reached 60 days of delinquency, the Servicer must inspect the Mortgaged Premises if no satisfactory arrangements have been made with the Borrower, at least monthly, and more frequently if the property is vacant or as other circumstances warrant.

Care of and condition, as well as economic variables can affect the Value of the mortgage property as the default process continues. It is incumbent upon the Servicer to review in detail the required monthly property inspections for signs of waste and deterioration and to be aware of regional economic trends affecting property Values. If during the default process (especially in a long or delayed foreclosure or bankruptcy) a Servicer finds that the property Value has been adversely affected, the Servicer should request a current fair market valuation (BPO) to ensure that foreclosure/bankruptcy relief remains a viable resolution in mitigating investor losses. If the property is found to be vacant or unsecured, the fair market valuation obtained should include an interior inspection and the property should be secured (as appropriate). Current Values must also be used in driving loss mitigation solutions to avoid foreclosure whenever possible.

**(A) Title I**

The Servicer must order an inspection to determine the physical condition and occupancy status of the **Mortgaged Premises** with the following considerations:

(1) A property inspection must be made before the 60th day of **Delinquency** on all delinquent Loans and again every month thereafter until satisfactory arrangements have been made with the **Borrower**.

(2) In most cases, GMAC-RFC does not consider drive-by property inspections to be sufficient. There may be circumstances or legal constraints (such as bankruptcy) under which a drive-by inspection would be appropriate.

(3) If the Servicer learns that the property has been abandoned or that it is in a severe state of deterioration, waste, or disrepair, the Servicer must take action to protect the Mortgage Premises. The Servicer must ***always*** contact the senior lienholder to discuss the situation.

(4) Each property inspection must be documented by an inspection report. The Servicer can use any type of format, however, at a minimum, the information provided must cover the information requested in the 1-4 Family Property Servicing Inspection Report **GMAC-RFC Form 24A15**.

**(B) FHA Title I**

The Servicer must order an inspection to determine the physical condition and occupancy status of the Mortgaged Premises on FHA Title I Loans. The inspector must:

(1) Make contact with the **Borrower** and inspect the improvements.

(2) Submit a full written report to the Master Servicing Home Equity Asset Manager contact at GMAC-RFC's Servicer Management Department in Burbank, California.

## 415B

### Notification of Credit Bureau

For all Loans serviced for GMAC-RFC, the Servicer must report monthly the payment status of the Loans to the credit repositories specified in the list at the end of this Section. It is not necessary that the full file reporting occur on a particular day of the month. The Servicer may report after each month-end to allow time for payment corrections, returned checks and other adjustments to be processed.

Full file reporting includes Loans recently originated, current and delinquent Loans, Loans liquidated through workout options, foreclosures and write-offs.

Borrowers are permitted under the Federal Fair Credit Reporting Act (FCRA) to inquire about or dispute the accuracy of information in their credit repository files. This right to inquire about or dispute the accuracy of information applies to any mortgage serviced for GMAC-RFC. Whenever the Servicer receives such an inquiry or notice of dispute from a Borrower, or receives a letter from a credit repository requesting verification or correction of mortgage-related information, the Servicer must respond in accordance with the requirements of the FCRA.

**Credit Reporting Agencies:**

- Equifax
- Experian
- TransUnion Credit Information Co.
- Innovis Data Solutions

## 416B

### Borrower Relief Program Options

GMAC-RFC does not expect the Servicer to grant relief unless it will result in bringing the Loan current and avoiding further or repeated **Delinquency** or foreclosure. The Servicer should not foreclose on a delinquent Loan if there is reasonable possibility of saving the Loan. GMAC-RFC will agree to a number of different measures for avoiding foreclosures. GMAC-RFC has several types of special relief provisions available to assist deserving delinquent Borrowers. The Servicer must be familiar with the terms of each of these provisions. The Servicer should use GMAC-RFC's relief provisions whenever appropriate, but GMAC-RFC does not expect the Servicer to grant relief unless it will result in bringing the Loan current and avoiding further or repeated Delinquency, or foreclosure. The Servicer should make every effort to avoid an REO, pursuing alternatives to foreclosure through the entire period a Loan is in the foreclosure process.

## 417B

### Loss Mitigation Workouts

**(A) Non-Insured**

The Servicer should not foreclose on a delinquent Loan if there is reasonable possibility of saving the Loan. The Servicer should pursue workout options to reduce losses and avoid acquisition of the mortgage premises. If the Servicer's evaluation of the individual circumstances of the **Borrower** reveals that it is unlikely the Loan can be brought current, the Servicer should, with GMAC-RFC's approval, aggressively pursue one of the following workout options as an alternative to foreclosure:

- Pre-foreclosure sale/short payoff
- Write-off
- Modification

- Deed-in-lieu of foreclosure

If foreclosure action has been approved or is in progress, the proceedings must continue concurrently with the analysis of workout options. The Servicer must notify GMAC-RFC of the postponement of the foreclosure sale if necessary to avoid delay in finalizing a workout.

Before setting up any workout options, the Servicer should contact any senior lienholder to determine the status of the first mortgage and consider any action the senior lienholder is contemplating. All workout options should include a provision for their automatic termination if a senior lienholder institutes foreclosure action.

**(B) FHA Title I**

All loss mitigation workouts for FHA Title I Loans must comply with the **HUD** guidelines. The Servicer must obtain approval for all FHA Title I workouts from GMAC-RFC and **HUD**. If the Servicer's evaluation of the individual circumstances of the **Borrower** reveals that it is unlikely the Loan can be brought current, the Servicer should, with GMAC-RFC's approval, aggressively pursue one of the following workout options as an alternative to foreclosure:

- Pre-foreclosure sale/short payoff
- Write-off
- Modification
- Deed-in-lieu of foreclosure
- Assumption

## 418B

### PreForeclosure Sale/Short Payoffs

The Servicer must obtain GMAC-RFC's approval before accepting a payoff in an amount that is less than the total indebtedness. The consideration of a pre-foreclosure sale/short payoff must be encouraged when the Servicer believes that it is unlikely the **Borrower** will be able to bring the Loan current. The Servicer must submit the following to GMAC-RFC for consideration:

- A written request for a pre-foreclosure sale/short pay-off, signed by all parties on the **Security Instrument**, indicating that a hardship exists, along with their willingness to provide a cash contribution and/or executed unsecured note toward the anticipated loss
- Second Mortgage Cost Evaluation **GMAC-RFC Form 24A10**
- Request for Loan Service Approval **GMAC-RFC Form 24A12**
- A credit report from a national credit reporting agency for all parties on the Security Instrument
- The two most recent pay-check stubs for each Borrower, along with the Borrower's signed tax returns and a completed Residential Loan Application. If the Borrower is self-employed, the Servicer must obtain a current financial statement in addition to the Residential Loan Application

- Signed and certified copies of the real estate purchase contract, escrow instructions and estimated settlement statement showing the projected closing date. If multiple offers exist, they must be submitted to GMAC-RFC
- An appraisal from a disinterested qualified appraiser as a means of verifying the sales price listed in the purchase contract, along with the average marketing time for similarly priced/sized properties in the area. If repairs are necessary, the appraisal must indicate the estimated "as is" and "as repaired" market Values as well as the estimated cost of repair
- A copy of the preliminary title report or other acceptable title report showing all encumbrances
- A copy of the lender's conditional Loan approval letter for the buyer of the Mortgage Premises
- A statement from any and all lienholders indicating their willingness to consent to the transaction or release their lien to allow completion of the transaction

Costs associated with the acceptance of a pre-foreclosure sale/short payoff such as appraisal, credit report, title search, attorney's fees, etc. should be collected from the **Borrower** to the maximum extent permitted by applicable law. In the event applicable law does not permit the collection of such cost from the Borrower, or the Borrower is unable to pay such costs, the Servicer must pay such costs and may request reimbursement in accordance to allowable cost guidelines and by completing Expense Report **GMAC-RFC Form 24A13**.

## 419B

### Write-Offs

#### (A) Write-off General Specifications

If the Servicer believes that it is not in the best interest of GMAC-RFC to pursue further collection efforts or legal action, the Servicer may recommend that a delinquent Loan be liquidated by writing it off. The Loan will be written off after the Servicer has verified that the senior lienholder has liquidated its Loan.

When recommending that a Loan be written-off, the Servicer must submit the Second Mortgage Cost Evaluation **GMAC-RFC Form 24A10** along with required documentation. The Servicer must encourage the Borrower to contribute funds and/or execute an unsecured note toward the anticipated loss. The Servicer must 1) advise the Borrower that if no contribution is made, a deficiency judgment will be filed against the Borrower, and 2) notify the Borrower of the tax ramifications.

#### (B) Write-off Procedures Following Approval

The Servicer must be responsible to follow up with the senior lienholder to verify when its Loan will be liquidated. Upon verification that the senior lienholder's Loan has been liquidated, the Servicer must complete the Write Off / Liquidation Report **GMAC-RFC Form 24A14** and the Payoff/Liquidation Report **GMAC-RFC Form 24A18** within 24 hours of verification. If there were any expenses, they should also be submitted at this time on the Expense Report **GMAC-RFC Form 24A13**.

All of the above should be forwarded to the Master Servicing Home Equity Asset Manager contact at GMAC-RFC's Servicer Management Department in Burbank, California.

## 420B

### Deed-In-Lieu of Foreclosure

The Servicer must obtain GMAC-RFC's approval, and where applicable, **HUD**'s approval, before accepting a deed-in-lieu of foreclosure. This is ordinarily preferred to foreclosure especially when the **Mortgaged Premises** are located in a region that has long redemption or foreclosure completion periods. It is imperative that there are no other liens, outstanding property taxes and other encumbrances against the property. The **Borrower** must have had the property listed at current market Value for the previous six months. If the Borrower is willing to execute a voluntary deed-in-lieu of foreclosure, the Servicer must:

(1) Obtain a written request for the deed-in-lieu of foreclosure signed by all Borrowers indicating that a hardship exists, along with a description of the efforts previously taken to market the Mortgaged Premises, occupancy status and condition of the Mortgaged Premises. The Borrower must provide a copy of the listing agreement showing their attempt to market the property.

(2) Notify the Borrower that GMAC-RFC will require cash and/or an executed unsecured Note contribution toward the anticipated loss.

(3) Obtain a credit report from a national credit reporting agency.

(4) Obtain the two most recent paycheck stubs along with copies of the last two years signed tax returns and a completed Residential Loan Application. If the Borrower is self-employed, the Servicer must obtain current financial statement in addition to the Residential Loan Application.

(5) Obtain a current title report to determine the priority of the lien, outstanding property taxes and other encumbrances.

(6) Obtain a current appraisal of the Mortgaged Premises from a disinterested, qualified appraiser and report the results on the applicable appraisal form. If repairs to the Mortgaged Premises are necessary, the appraisal must state the estimated market Value of the Mortgaged Premises after repair and the estimated costs of the repairs.

(7) Determine, through reasonable methods, that the Mortgaged Premises are not affected by environmental problems and provide written confirmation of the results of all action taken in arriving at that determination.

(8) Complete the Second Mortgage Cost Evaluation **GMAC-RFC Form 24A10**.

Costs associated with the acceptance of a deed-in-lieu of foreclosure such as appraisal fees, credit report, title search, attorneys' fees, etc. should be collected from the **Borrower** to the maximum extent permitted by applicable law. In the event the Borrower is unable to pay such costs or the applicable law does not permit collection of such costs from the Borrower, the Servicer shall pay such costs and request reimbursement using the Expense Report **GMAC-RFC Form 24A13**.

Upon receiving GMAC-RFC's written approval, the Servicer or its counsel must prepare all documents necessary to process the deed-in-lieu of foreclosure, subject to GMAC-RFC's approval of the attorney's fee. The Servicer must arrange for the timely and efficient conveyance of the **Mortgaged Premises**. If the Mortgaged Premises are rented, the Borrower must agree to assign and transfer all rents due and to become due to GMAC-RFC. Ordinarily, the Servicer should not take title to the Mortgaged Premises until they are vacant. If hardship exists, the Servicer may take title as long as the date of possession is agreed upon in advance.

## 421B

### Assumptions

In the case of assumable FHA Title I Loans, the assumptor must:

- Meet all of the eligibility and credit requirements of the regulations and underwriting guidelines
- Execute a written assumption agreement signed by the original **Borrower**(s) and all assumptors

The original Borrower will be automatically released from liability (without prior **HUD** approval) if the assumptor makes the Loan payments for 24 consecutive months without any period of default. The Servicer must retain documentation of the assumption and release of liability in the Loan file. The Servicer may charge a Loan assumption fee not exceeding one percent of the unpaid principal balance of the Loan.

## 422B

### Modifications

The Servicer must contact the Master Servicing **Home Equity** Asset Manager contact at GMAC-RFC's Servicer Management Department in Burbank, California prior to offering this alternative to the **Borrower**. Not all Home Improvement Loans are eligible for modifications. It is imperative that the senior lienholder be contacted to determine if it is willing to work with the Borrower.

There may be times when the only way to provide relief to a deserving Borrower is to change some of the terms of a delinquent mortgage. A modification should be considered when change(s) in the terms of the mortgage note is (are) sufficient to cure the **Delinquency** and prevent foreclosure. The Servicer should consider modification of a delinquent mortgage under circumstances similar to the following:

- A Borrower granted military indulgence cannot cure his or her Delinquency within three months after being discharged from the military service
- A Borrower has experienced a permanent or long-term reduction in income that affects his or her ability to continue making the monthly payments
- The terms of the mortgage (such as those imposed by a non-standard adjustable-rate mortgage) contribute toward a greater risk of Borrower default

- Any other situation in which changing the terms of the mortgage would cure the present Delinquency or avoid acquisition of the property and prevent future delinquencies

Prior approval and written confirmation from the senior lienholder stating it is willing to work with the Borrower are required for all proposals to change the terms of a mortgage. In addition, prior approval and written confirmation from **HUD**, when applicable is required. Before GMAC-RFC agrees to modify a delinquent mortgage, the mortgagor must bring the Loan current with the interest being accrued based on the higher, unmodified interest rate. If this is not possible, GMAC-RFC may allow the Servicer to capitalize the delinquent interest.

The Servicer must provide a completed Request for Loan Service Approval **GMAC-RFC Form 24A12** and Second Mortgage Cost Evaluation **GMAC-RFC Form 24A10** and include the following information:

- Hardship letter from the **Borrower**
- **Fannie Mae** or **Freddie Mac** Form 1003 (Residential Loan Application) or financial statement that should include all household expenses, including all mortgages and/or rents received or expended and all debts incurred, as well as list assets, liabilities, and income
- Copy of two current pay stubs. If unemployed, a copy of unemployment compensation when applicable, or a copy of tax returns for last two years. Tax returns are also required if the Borrower is self-employed
- Copy of current credit report
- In the case of a divorce, a copy of the Quit Claim Deed and/or Interspousal Transfer of Property. Otherwise, both parties must submit financial information and sign the modification as agreed
- Drive-by appraisal
- Copy of the last 12-months' payment and collection histories
- Approval from **HUD**, when applicable
- Written confirmation that the senior lienholder is willing to work with the Borrower

If the modification is approved, the Servicer must prepare the modification agreement. After the modification has been executed, the Servicer must adjust their records. The Servicer must send the executed document for recording. After recording, the original modification will be sent to GMAC-RFC along with Multipurpose Loan Service Report **GMAC-RFC Form 24A09**.

## 423B

### Payment Plan/Extension

A payment plan/extension may be used as a tool to correct a current short-term problem (from one to three months) and only if it is determined that the **Borrower** will be able to re-establish payment capacity.

The following are examples of acceptable reasons for granting a payment plan/extension:

- Extended employment strike
- Unexpected heavy medical expenses
- Fire or other disaster loss
- Missed payment due to temporary cash flow deficiency and the Loan is not eligible for extensions based on any of the criteria listed below

A payment plan extension may not be awarded unless:

- A minimum of six consecutive timely payments have been made prior to the existing **Delinquency**, if any. This does not apply to Loans delayed in set-up
- The Borrower has the financial capacity to make all future payments in accordance with the Note

The Servicer must:

- Review its system to assure the last payment plan/extension was not within the past six months
- Review the account history to assure the Borrower's willingness and financial capacity to make payments
- Develop an alternative solution to resolve the Delinquency if delinquent and if the payment plan/extension is not approved
- Assure that all circumstances are documented on its system
- Monitor senior lienholder to ensure GMAC-RFC's position is protected
- If applicable, obtain approval from **HUD**

## 424B

### Bankruptcies

**(A) Procedures**

- Acknowledge receipt of the bankruptcy notice
- Stop all collection activity to comply with the Federal Stay Order
- Conduct an initial review verifying payment status, collateral, account balance, and debtor's attorney
- Determine the pre-collection strategy
- Contact the senior lienholder
- When applicable, follow the **HUD** Guidelines
- Obtain knowledge and understanding of the debtor's plan
- Implement, monitor, and review the bankruptcy collection strategy
- Lift stay on collateral, as needed
- Lift stay on co-debtors, as needed
- File a Motion to Dismiss, as needed
- File an Objection to Confirmation, as needed
- File a Proof of Claim. GMAC-RFC will provide documentation necessary to file the POC
- Follow-up on the bankruptcy collection strategy
- Verify confirmation of Chapter 11 or 13 plan
- Monitor debtor's compliance to the confirmed plan
- Report the Bankruptcy using the Bankruptcy Status Report **GMAC-RFC Form 24A19** and forward to GMAC-RFC

**(B) Protective Actions**

The Servicer must take appropriate action to protect GMAC-RFC's interest during bankruptcy proceedings in which the **Borrower** is the debtor. At a minimum, the Servicer must:

- Stop all collection efforts and comply with all applicable laws and regulations
- Contact the senior lienholder to obtain Loan status and type of action to be taken
- Obtain competent legal counsel
- Obtain a copy of all documents pertaining to the bankruptcy
- File a Proof of Claim within the time limit set by the court
- Maintain copies of all documents related to the bankruptcy, including the notice of first Meeting of Creditors, Proof of Claim, pleadings, etc.
- Review any repayment plan proposed under Chapter 11
- Review the Chapter 13 plan and respond in a manner that represents GMAC-RFC's best interest

- Monitor receipt of payments under any approved repayment plan. If the **Borrower** defaults under the plan, immediately take action to modify the stay order and resume collection procedures as outlined above
- Conduct monthly drive-by inspections for any Loan delinquent 60 days or more

## 425B

### Foreclosures

The following Sections define GMAC-RFC's requirements for the Servicer's actions during foreclosure for Home Improvement/Second Mortgage Loans.

## 426B

### Institution of Foreclosures

Once the Servicer has determined that no other action on its part will cause the default to be cured, and that initiating foreclosure action will not result in a higher loss to the investor, it may initiate foreclosure. The Servicer will need to contact the Master Servicing Home Equity Asset Manager contact at GMAC-RFC's Servicer Management Department in Burbank, California to obtain the name in which to foreclose.

Acceleration of a Loan must be accomplished in accordance with the terms of the **Security Instrument**, applicable law and, when applicable, in compliance with the **HUD** Guidelines. The Servicer should not initiate foreclosure action until every reasonable effort has been made to cure the **Delinquency**. Once the Servicer has determined that no other action on its part will cause the default to cure and there are no other alternatives available, the Servicer must notify the Master Servicing Home Equity Asset Manager contact at GMAC-RFC's Servicer Management Department in Burbank, California that a foreclosure action has been initiated.

GMAC-RFC requires collection efforts and more importantly, loss mitigation efforts to continue while the Loan is in foreclosure until the foreclosure sale is held. The Servicer must monitor the senior lienholder and advance funds on behalf of GMAC-RFC to keep the senior lien current and to pay same in full, as needed.

## 427B

### Pre- and Post-Foreclosure Sale Procedures

The Servicer should refer to and follow the guidelines in **Loss Mitigation Workouts** Section and **Foreclosure Statement of Expenses** Section of Chapter 4 for pre- and post-foreclosure procedures as well as Expense Reimbursement guidelines. Submit reimbursement claims on the Expense Report **GMAC-RFC Form 24A13**, via email to: BurbankHSSclaims@gmacrfc.com

## 428B

### Senior Lienholder Mortgage Purchase Payment Advances

If the Servicer discovers that a senior lienholder is within three weeks or less of holding its foreclosure sale, the Servicer must immediately:

- Obtain a complete breakdown of all amounts required to reinstate the senior lien
- Obtain a complete breakdown of funds required to pay off the senior lien. This is needed for the Servicer to perform the benefit analysis as to whether it is more cost-beneficial to pay off any senior lien or keep it current
- Obtain a current credit report if one is not on file within the past six months
- Complete the Second Mortgage Cost Evaluation **GMAC-RFC Form 24A10** in support of the Servicer's decision to advance or pay off the senior liens

All of the above required documentation and forms must be maintained by the Servicer and available for GMAC-RFC's review.

The Servicer is responsible to advance funds necessary and to take appropriate and timely action to protect the interests of GMAC-RFC and/or its investors. Reimbursable expenses can be claimed using the Expense Report **GMAC-RFC Form 24A13**. Reimbursements of expenses are detailed in the **Foreclosure Statement of Expenses** Section in Chapter 4 of this Servicer Guide.

## 429B

### REO Properties

The Servicer should refer to and follow the guidelines in **Real Estate Owned (REO)** Section of Chapter 4.

## 430B

### Minimum Reporting Requirements

The Servicer must submit the reports detailed in **GMAC-RFC Form 24A29** Home Equity Servicer Monthly Transaction and Reporting Guide, via FTW no later than 5:00 p.m. Pacific Time on the third business day of each month, for activity occurring in the prior month. Failure to provide this information by the deadline date may result in a daily penalty of $100.

# 4C

# Sub-Prime Loan Servicing

## 400C

### General Guidelines

The Sub-Prime market emerged to facilitate financing of residential mortgages having characteristics inconsistent with historically defined conforming conventional or investor-quality Loans. This market is designed for buyers having less than "A" credit, and who have had financial reverses, but have demonstrated a recovery in financial position. Criteria for purchasing these Loans allow for a poor recent payment pattern on consumer, installment, and mortgage debt, significantly higher debt to income ratios and typically lower LTV ratios. For these reasons, diligent, timely, and proactive servicing of this product is crucial.

## 401C

### Servicer Eligibility

Servicers selected to service **Sub-Prime Loan**s will be required to meet all eligibility standards set out in the **Eligibility Standards** Section of the Servicer Eligibility Chapter and will be subject to additional standards that are essential to the collection efforts required for the servicing of this type of product. The Servicer must:

- Maintain no more than 200 to 400 Sub-Prime Loans per collector. Deviations from this range will be considered on an individual Servicer basis, based upon the technology, expertise, and performance of the Servicer
- Employ a staff knowledgeable and experienced in the servicing of Sub-Prime Loans
- Must maintain separate written policies and procedures differentiating the collection efforts made on **Sub-Prime Loan**s

## 402C

### Servicing Standards

Default levels of Sub-Prime portfolios are typically two to three times higher than Prime portfolios at their peak. They require aggressive collection methods and heightened quality control efforts in evaluating serious defaults for fraud and origination deficiencies infractions. Early intervention is a critical part of the collection strategy. Servicers selected to service **Sub-Prime Loan**s are required to meet all of the requirements of the Servicer Guide as it pertains to the servicing of GMAC-RFC Loans and will be subject to the additional standards and requirements of this Chapter of this Servicer Guide.

**Minimum Servicing Activities During Delinquency**

The following chart lists the minimum collection efforts that must be made in an attempt to bring a delinquent account current.

**Action required (days after Due Date)**

| | |
|---|---|
| 5-10 | For accounts where the first scheduled installment is past due, initiate telephone contact to confirm Loans terms and repayment expectations. |
| 10-15 | Mail late notices if grace period has expired. |
| 10-30 | Initiate and/or continue telephone contact with delinquent Borrower if no arrangement for the past due payment has been made. |
| 31-35 | Mail Notice of Intent to Foreclose and any additional required notification. Notices should be sent earlier if it is in GMAC-RFC's and/or its Investor's best interest. |
| 30-45 | Obtain a property inspection and attempt a face-to-face interview if no arrangements have been made to bring the account current. |
| 60-65 | Refer Loan to foreclosure based on NOI expiration. |

The Servicer must actively continue all efforts to cure the default, including loss mitigation solicitations throughout the foreclosure process.

Servicers that have software applications that review **Borrower** payment habits may use these applications to schedule Borrower collection calls, provided there is a minimum of three months' payment history, established during the step described above under "10-30 Days After Due Date".

For **Sub-Prime Loan** repayment plans, a new breach letter should be sent after the receipt of every payment made in accordance with the plan, or language included into the written repayment agreement that the **Borrower** acknowledges the Loan is in default and that the breach stays in effect until the Loan is contractually current. The breach should include a provision that if funds are returned, for any reason, since the last breach was sent, then the breach is amended to include those amounts returned, along with any and all applicable charges that have accrued due to the funds being returned.

## 403C

### Sub-Prime Loans in Foreclosure

Sub-Prime Loans that are submitted to foreclosure will follow the same standards set forth in **Mortgage Loan Servicing**, Chapter 4, of this Guide for managing the foreclosure process, with the exception of an accelerated timeline for initiating the first legal action. For Sub-Prime Loans, the Servicer has the obligation to have the first legal action performed within 90 days of the default (i.e., if the payment is due for the 1/01/06 payment, then on 1/02/06 the Loan is in default, with the first legal action due on or before 3/30/06).

## 404C

### Loss Mitigation

GMAC-RFC is committed wherever possible to avoid foreclosure in the resolution of a delinquent Loan. The Servicer, managing with Sub-Prime delinquent Loans, must strictly comply with foreclosure and bankruptcy timelines but concurrently attempt to mitigate losses by avoiding foreclosure. Servicing personnel must be well versed in financial counseling and loss mitigation techniques. A collection and loss mitigation strategy should be developed within the first month of **Delinquency**. The representative must take into consideration that these Borrowers:

- Have prior defaults and may not react to standard collection techniques
- Usually lack financial planning ability
- Are normally in default on several obligations and honor their promise to pay those whose collection practices are the most pronounced and frequent
- Need continuous collection efforts and any gap in follow-up frequently diminished the potential of payment
- Have compromised cash positions and repayment plans often fail
- Are motivated by money. A cash payment covering moving expenses to motivate a sale should be considered if the **Borrower** is initially reluctant

## 405C

### Sub-Prime, Second Trust Deeds

Junior liens carry with them the risk of being wiped out if a **Borrower** experiences financial problems. In many instances the combination of senior lien arrearage (including costs of the foreclosure and bankruptcy process) and other liens of priority such as property taxes, REO holding costs and expenses far outweigh the Value of the property prior to considering the balance of the junior lien. The Servicer must carefully analyze and evaluate the potential of recovery when a junior lien becomes delinquent.

The following steps must be taken prior to submitting a junior lien to foreclosure.

(1) Contact the senior lienholder to determine and then document the status of the senior lien.

(2) Determine the status of property taxes owed.

(3) Ensure all Requests for Notices of Delinquency and/or similar documents are recorded, where applicable.

(4) Confirm all assignments are recorded, establishing GMAC-RFC’s interest (or current beneficiary's interest) in the property, so all notices from senior lienholders will be received.

(5) Order a current BPO1 to establish the current Value and condition of the property.

The Servicer must determine the future course of collection activity with an analysis as described in the **Write-Offs** Section in Chapter 4 of this Servicer Guide. Borrower must be advised, if the security interest of the junior lien is eliminated through the foreclosure of a senior lien, that litigation, to the fullest extent that the law allows, will be initiated based upon the provisions of the Note.

If sufficient equity remains in the property to fully or partially recover moneys owed on the junior lien, the Servicer must aggressively follow a course of action that will resolve the **Delinquency** quickly.

[1] Since it is likely that a delinquent Sub-Prime Loan will enter foreclosure more than once in a 12-month period, it is not necessary to order a BPO at each occurrence. The Servicer must obtain or have in the file a BPO dated no older than 120 days, as well as a current property inspection prior to foreclosure or a recommendation for write-off.

# 5

# Servicing Released

## 500

### Servicing Released

GMAC-RFC's Servicing Released Program provides an outlet for the purchase of **Servicing Rights** for investment-quality Loans that meet GMAC-RFC's Program requirements. Servicing Rights can be sold to GMAC-RFC on an individual Loan basis when the Loan is purchased (simultaneous sale of servicing), or any time after purchase (post-purchase sale of servicing).

In addition, Servicing Rights can be sold to GMAC-RFC on a negotiated bulk basis, as outlined in the **Bulk Servicing Acquisitions** Section of this Chapter.

The Servicing Released Program is not a transfer of servicing to the designated Servicer, but rather a sale of Servicing Rights to GMAC-RFC. Servicers wishing to transfer servicing directly to another buyer of servicing should refer to Chapter 2, **Servicer Eligibility**, of this Guide and thereafter contact GMAC-RFC's Master Servicing Compliance Department.

## 501

### Program Overview

For all simultaneous sales of servicing, GMAC-RFC will review and purchase the servicing package simultaneously with the Loan package. The sale date, therefore, will be the Loan's funding date.

Under the simultaneous sale of servicing option, GMAC-RFC will purchase servicing released Loans on a projected Schedule of Principal Balance. The effective date of servicing transfer will be the first day of the second month following the sale date. Any payments due from the **Borrower** the first month following the sale date are to be paid by the **Client**. Beginning with the second month, the designated Servicer will collect all payments due to the Borrower. It is the Client's responsibility to continue servicing a Loan and collecting any payments due up to the effective date of the servicing transfer.

In addition, GMAC-RFC offers an **Early Scheduled Transfer** option. Under this option, GMAC-RFC will purchase servicing released Loans on a **Scheduled Principal Balance**. The effective date of the servicing transfer will be the first of the month following the sale date. The individual product description requirements will determine the availability of the early purchase of servicing option. Please refer to the Loan Program Chapters of the Client Guide for specific requirements.

For all post-purchase sales of servicing, GMAC-RFC will transfer servicing on a schedule of principal balance. All payments due from the **Borrower**, beginning with the first day of the month following the sale date, are to be paid to the designated Servicer.

## 502

### Designated Servicer

GMAC-RFC will designate a Servicer to conduct its Servicing Released Program. The designated Servicer is determined by the **Loan Program** under which the Loan is submitted. The Designated Servicer Directory GMAC Mortgage, LLC **GMAC-RFC Form 2500** lists the designated Servicer information, including address, telephone and endorsement information.

GMAC-RFC retains the right to designate such Servicer and may change the designated Servicer at any time. GMAC-RFC will, however, provide notice of the change to the **Client**.

## 503

### Contractual Obligations

This Servicing Released Chapter outlines the terms by which the Client may sell **Servicing Rights** to GMAC-RFC. When participating in this Program, a Client is required to comply with all provisions of this Servicer Guide and the **Client Guide**, including, but not limited to, the Representations and Warranties Section of the Client Guide and **Remedies of GMAC-RFC** Section of this Servicer Guide and the Client Guide. The Client enters into a Client Contract, and is required to have the ability to service Loans in accordance with this Servicer Guide and the Client Guide.

## 504

### Program Eligibility

In addition to meeting all the eligibility requirements of a GMAC-RFC approved Client, this Program's participants must comply with additional representations, warranties, requirements and procedures as specified in this Servicing Released Chapter.

## 505

### Disqualification or Suspension

**(A) General**

In addition to the grounds for disqualification and suspension as described in this Guide and the **Client Guide**, a **Client** will be disqualified or suspended for any additional reasons listed below. GMAC-RFC will determine the length of any suspension, which may be indefinite, and will prescribe the terms and conditions for reinstatement.

**(B) Grounds for Disqualification or Suspension**

GMAC-RFC will disqualify or suspend a Client from selling servicing for any of the following reasons:

- The Client fails to deliver any Servicing Documents required by GMAC-RFC
- The Client misstates any material fact on any document submitted to GMAC-RFC
- The Client fails to assign its **Servicing Rights** in the manner specified in this Servicing Released Chapter or attempts to assign Servicing Rights to a party other than GMAC-RFC without prior written consent

## 506

### Restrictions on Loan Eligibility

GMAC-RFC may purchase Servicing Packages for Loans not conforming to these guidelines on a negotiated basis. The Client should contact a GMAC-RFC regional marketing office for further information. Effective with sale date, GMAC-RFC will not purchase servicing if the servicing does not conform to Program guidelines or if any of the following conditions exist:

- The Loan is in the process of a payoff (i.e., the Servicer has issued a payoff statement to the **Borrower**)
- The Loan is in the process of an assumption
- The Loan is subject to any liens, security interests or other encumbrances
- The Loan is in bankruptcy
- The Loan is 30 or more days delinquent
- Servicing for ARM Loans if payment change occurs within 90 days of sale date

## 507

### Record Maintenance

The **Client** must maintain complete records of all Loans that GMAC-RFC has purchased for servicing. These records must be kept in compliance with applicable laws and regulations. They should include all documentation relating to the origination, sale and servicing of the Loan, which occurred up to the effective date of servicing transfer.

## 508

### Final Documents

The **Client** must forward all Final Documents to GMAC-RFC on Loans sold servicing released. Those Documents pertaining to an individual Loan must comply with the Final Delivery Section of the **Client Guide**.

## 509

### Disclosure of Information; Cooperation

The Client agrees to provide any information to GMAC-RFC or the designated Servicer, as requested, which may be deemed necessary to service the Loan properly. The Client also agrees to cooperate in accomplishing the sale and transfer of servicing outlined in this Servicing Released Chapter.

## 510

### Client Representations and Warranties; Events of Servicer Default Prior to Transfer

GMAC-RFC relies upon the accuracy and validity of the Client's warranties and representations and upon its compliance with the agreements, requirements, terms and conditions set forth in the Client Guide.

The Client remains responsible to GMAC-RFC, with respect to any Loan, for any and all events of Servicer default that occurred up to and including the effective date of servicing transfer.

The Client cannot pledge any of its rights to service Loans sold to GMAC-RFC pursuant to the **Sale or Transfer of Servicing** Section, and GMAC-RFC may require a search of the appropriate Uniform Commercial Code records. This search will be at the Client's expense in connection with sale-of-servicing transactions. If liens on such **Servicing Rights** are on record, they must be released.

## 511

### Specific Warranties and Covenants

In addition to the covenants, representations and warranties specified in the Client Contract and this Guide, the **Client** ensures the following:

The covenants, representations and warranties listed below are made as of each sale date and effective date of servicing transfer, unless the specific representation or warranty states differently. Making them does not release the Client from its obligations with respect to the representations and warranties listed in other Sections of the Client Guide.

**(A) Eligible Servicing Packages**

The Client ensures that each of the Servicing Packages delivered and sold to GMAC-RFC meets the terms and criteria set forth in this Servicing Released Chapter.

**(B) Non-solicitation**

With respect to any Loan, the **Servicing Rights** of which are sold to GMAC-RFC, the **Client** ensures that he or she has not solicited, sold the customer list or provided information to another party for the purpose of solicitation. The Client also agrees that he or she will not solicit, sell the customer list or provide information to another party for the purpose of soliciting any financial services or products including the refinance of any servicing released Loan or modification of Loans, second mortgages, equity Loans or insurance products.

"Solicit" is defined as a direct offer or request for refinance or financial service products on such servicing released Loan. This definition does not include general solicitations, advertisements or promotions directed to the general public at large.

**(A) Documents**

The Client ensures that all documents required under this Servicing Released Chapter have been completed, executed and delivered in the form and manner specified. In addition, the Client must submit all required documents, materials and other information to GMAC-RFC in a complete and timely fashion.

**(B) Flood Certification**

The Client ensures that any Loan, the Servicing Rights of which are sold to GMAC-RFC, has been issued a flood zone determination certificate. The certificate must indicate whether the dwelling on the subject property lies within a "special flood hazard area" (SFHA) as identified by the Federal Emergency Management Agency (FEMA) through the National Flood Insurance Program (NFIP). The flood zone, flood map number and map date must also be stated.

**(C) Life-of-Loan Contract for Continual Flood Zone Determination**

In addition to the flood zone determination certificate referenced above, the **Client** must obtain a transferable life-of-loan flood zone determination contract from an approved **Fannie Mae** or **Freddie Mac** vendor. This insures that the flood zone determination is effective throughout the life of the Loan. In the event the Client does not provide a valid transferable life-of-loan flood zone determination contract, GMAC-RFC will order such a contract, and charge the Client all costs associated with securing the contract. If the Client sets up the life-of-loan contract, the Client is responsible to notify all flood zone determination carriers of the change in Servicer prior to the effective date of servicing transfer. All notices must be prepared as specified in the Designated Servicer Directory GMAC Mortgage, LLC **GMAC-RFC Form 2500**.

**(D) Initial Escrow Account Disclosure Statement**

The **Client** agrees that for any Loan, the **Servicing Rights** of which are sold to GMAC-RFC, the Loan has been closed in accordance with the **HUD** Final Escrow Rule using the aggregate escrow analysis method. The Client will complete and deliver an initial escrow account disclosure statement that matches the **HUD**-1 transaction.

**(E) Notification**

The Client will promptly notify GMAC-RFC of any changes that may affect the Loan's servicing. In addition, the Client will promptly forward any pertinent documentation to GMAC-RFC or its designated Servicer, if requested. Any materials forwarded should accurately reference the GMAC-RFC Loan number.

**(F) Notification of Junior Lienholder**

The Client agrees to immediately notify GMAC-RFC and its designated Servicer of any junior lienholder (the name and address) to any Loan, the Servicing Rights of which are sold to GMAC-RFC. If **State** statute requires the junior lienholder to pay a fee to the senior lienholder, and when the Client receives such payment, the Client will forward the fee immediately to GMAC-RFC’s Designated Servicer. The Client must refer to the Designated Servicer Directory GMAC Mortgage, LLC **GMAC-RFC Form 2500**.

**(G) Insurance Policies; Change of Servicer**

The **Client** agrees that it will notify all insurance carriers of the change in Servicer prior to the effective date of servicing transfer, and that all insurance policies required to be endorsed are endorsed as specified in the Designated Servicer Directory GMAC Mortgage, LLC **GMAC-RFC Form 2500**. This includes, but is not limited to, hazard, flood, windstorm, mortgage, earthquake, condominium and PUD insurance carriers.

**(H) Payment of Insurance**

The Client must pay all insurance premiums for Loans with escrow accounts that will become due within 30 days after the sale date. This includes, but is not limited to, hazard, flood, mortgage, earthquake, windstorm, condominium and PUD insurance carriers.

**(I) Tax Service Contracts; Change of Servicer**

For any simultaneous sale of servicing (including early purchase of servicing), GMAC-RFC will set up a tax service contract. The **Client** agrees to pay for all costs associated with securing the new contract. The tax service fee is $78.00 for each Loan with an additional charge of $10.00 added to the base fee for every $100,000 or portion thereof that is greater than $499,999.

For any post-purchase sale of servicing, the Client should perform either of the following:

- Obtain a transferable tax contract with First American Real Tax Service
- Notify GMAC-RFC to set up a tax contract and remit the proper fee based on the guidelines described above

To transfer the contract to GMAC-RFC, the Client must write the First American tax contract number on the tax set up sheet and include the tax set up sheet in the Loan file that is delivered to GMAC-RFC. The Client must notify all tax contract carriers of the change in Servicer prior to the effective date of servicing transfer. The Client must also prepare all notices as specified in the Designated Servicer Directory GMAC Mortgage, LLC **GMAC-RFC Form 2500**.

**(J) Payment of Taxes; Assessments**

The Client must pay property taxes for Loans with escrow accounts that are due or will become due within 30 days of the effective date of servicing transfer. If applicable, the Client must comply with **State** regulations governing tax payments within a designated discount period.

The Client assumes full responsibility for all penalty payments that result from incomplete or incorrect information or from late or non-payment of any real estate taxes and assessments that are due within 30 days after the effective date of servicing transfer.

**(K) Tax Information Sheet**

The Client must provide a Tax Information Sheet for properties with unique tax information. Examples include:

- California - irrigation districts
- Hawaii - ground rents
- Maryland - ground rents and front footage
- Nevada - improvement districts
- Pennsylvania - nuisance taxes
- Texas - community improvement associates, maintenance funds, civic associates and “Flat Rate” irrigation district agencies

**(L) Delinquency, Payoff/Liquidation**

The Client represents and warrants that there are no amounts due on the Loan, including, but not limited to unpaid installments. In addition, the Client ensures there is no pending payoff or liquidation relating to any servicing being sold to GMAC-RFC. If any payoff or liquidation occurs on the Loan within 90 days from the sale date, the Client will be required to reimburse GMAC-RFC an amount equal to the original purchase price premium, if any, paid to the Client; or if only **Servicing Rights** were acquired, to repay GMAC-RFC the original servicing premium paid for the servicing regardless of whether a new Loan is being originated by the existing Client or a different lender.

**(M) Compliance by Others**

When any person or entity other than the **Client** performs services for the Client (i.e., services performed under this Servicing Released Chapter), the Client agrees that such person or entity has complied and will comply with all requirements of this Guide and the **Client Guide**. Also, the Client's quality control and internal audit procedures must include a sample review of such services.

**(N) Compliance with Local, State and Federal Statutes and Regulations**

With respect to any **Servicing Rights** submitted for purchase under this program, the **Client** must comply with all local, State and federal statutes and regulations governing the transfer of servicing. This includes, but is not limited to, compliance with such statutes and regulations governing the notification to the **Borrower** of the change in Servicer.

**(O) Compliance with Servicing Warranties**

The Client agrees that each Loan sold to GMAC-RFC on a servicing released basis has been serviced in accordance with the GMAC-RFC Client Contract and this Servicer Guide.

**(P) Scheduled Remittances and Reporting**

The Client agrees that all remittances and reporting to GMAC-RFC have been completed as scheduled. For post-purchase sales of servicing, this includes remittances and reports that the Client is responsible for in conjunction with the accounting cutoff as of the last day of the month prior to the sale date. The designated Servicer will perform any and all remittances and reporting for the accounting cutoff as of the last day of the month in which the sale date occurred.

**(Q) IRS Reporting**

The Client agrees to comply with IRS reporting requirements for points and interest paid by the Borrower, interest on escrows paid by Client, tax disbursements and special assessments as of the effective date of servicing transfer.

**(R) Other Actions**

The Client agrees that all other actions required to be taken by this Servicing Released Chapter have been taken.

**(S) Compliance with MERS Rules and Procedures**

With respect to any **Servicing Rights** submitted for purchase under this Program in which the Loan has been registered with MERS or the **Security Instrument** has been recorded or assigned to MERS, the Servicer must comply with all rules and procedures of MERS governing the transfer of servicing, including among other things, that Servicer has confirmed the transfer on MERS to GMAC-RFC.

## 512

### Notification of Change in Servicer

When servicing is purchased by GMAC-RFC, it is the **Client**'s responsibility to prepare and deliver a notification of the change of Servicer to the parties outlined below. For Loans registered with MERS the Servicer shall be required to notify MERS. The Client must also notify any third-party sub-servicer of the change of Servicer. The timely and prompt release of servicing is the responsibility of the Client.

All notifications must be in compliance with all local, State and federal statutes and regulations governing the transfer of servicing.

The Client must refer to the Designated Servicer Directory **GMAC-RFC Form 2500** when preparing the notifications.

Notifications should be prepared on the Client's letterhead and mailed by the Client within the timeframes required by laws governing the transfer of servicing.

**(A) Borrower Notification by Client**

The Client must prepare and deliver a good-bye letter to the Borrower. The Client must assure the letter complies with all applicable local, State and federal statutes and regulations governing the transfer of servicing.

**(B) Borrower Notification by Designated Servicer and Coupon Books**

The designated Servicer will forward a welcome letter and a monthly account statement or coupon book to the Borrower.

**(C) Insurance Carrier Notification**

The Client must prepare and deliver notifications to any insurance carriers, including but not limited to, hazard, flood, mortgage, earthquake, condominium and PUD. The notification must also request endorsements, if applicable, in accordance with the Designated Servicer Directory **GMAC-RFC Form 2500**.

**(D) Credit Life/Disability Insurance**

Monthly escrow for the credit life and/or disability insurance coverage must be cancelled as of the effective transfer of servicing date. The Client must notify the Borrower that the premiums with respect to any such policies will no longer be collected with the monthly payment, and the Borrower will be required to pay the premiums directly.

**(E) Tax Service Notification**

For post-purchase sales of servicing, if the **Client** has a transferable tax contract in place with the acceptable company, the Client should prepare and deliver a transfer notification to the company.

**(F) Flood Zone Determination Notification**

For post-purchase sales of servicing, if the Client has a life-of-loan transferable flood zone determination contract in place with an acceptable company, as described in the Servicing Released Approved Flood Zone Determination Company and Fee Schedule **GMAC-RFC Form 2504**, the Client must prepare and deliver a transfer notification to the company.

## 513

## Escrow Account for Postponed Improvements/Repairs

If an escrow account for postponed improvements/repairs has been established at Loan closing, the **Client** should monitor the account until the repairs or improvements are done. (For GMAC-RFC's policy on this matter, refer to the escrow for Postponed Improvements and Repairs Section of the **Client Guide**).

The Client should send a final certification to GMAC-RFC, verifying that the repairs or improvements have been completed. In addition, the Client should advise the **Borrower** to contact the Client, not the designated Servicer, on any matter related to escrows for postponed improvements/repairs.

## 514

### Interest on Escrows

For a Loan with an escrow account where the Client must pay interest to the Borrower, the Client must calculate the interest in compliance with **State** requirements through the effective date of servicing transfer.

## 515

### Termination of Automatic Payment

As of the effective date of servicing transfer, the Client must terminate any automatic payment arrangements established to make the Borrower's payments.

## 516

### Purchase of Servicing

The following Sections describe the procedure for delivery of the servicing package and required servicing documents, purchase of the servicing and the reconciliation of monies between Client and GMAC-RFC.

## 517

### Servicing Released Submission of Purchase

Prior to submitting a Servicing Package to GMAC-RFC for purchase, the **Client** should complete all documents accurately and send them to:

GMAC-RFC
Attention: Loan Processing & Delivery
Mail Code: 03-SDG-MR
One Meridian Crossings, Suite 100
Minneapolis, MN 55423

## 518

### Required Servicing Documents

**(A) Servicing Package**

For funding, the servicing package must include the following documents:

- Hazard insurance policy or binder
- Flood certification
- Flood insurance policy or binder, if applicable

- Life-of-loan flood zone determination contract (unless GMAC-RFC sets up the contract)
- **HUD**-1
- Initial escrow account disclosure statement, if applicable
- Tax information sheet, if applicable
- Mortgage insurance certificate, if applicable
- **Temporary Buydown** agreement, if applicable
- Notice of ARM adjustments, if applicable

**(B) Credit Documents**

The Client must forward the original credit documents to GMAC-RFC as part of the Loan delivery package. The Client should maintain a copy of its credit package.

The **Client** should refer to the Commitment and Delivery Chapter of the **Client Guide** for specific required documents.

## 519

### Sale Date and Effective Date of Servicing Transfer

**(A) Sale of Servicing—Scheduled Transfer**

GMAC-RFC will purchase servicing on a projected **Scheduled Principal Balance**. Any payments due from the Borrower the first month following the sale date are due to the Client. All payments due from the **Borrower** beginning with the second month following the sale date (Effective Date of Transfer) are due to the Designated Servicer within five **Business Day**s of servicing transfer.

**(B) Sale of Servicing—Early Scheduled Transfer**

GMAC-RFC will purchase servicing on a Scheduled Principal Balance. All payments due from the Borrower beginning with the first day of the month following the sale date (Effective Date of Transfer) are due to the Designated Servicer within five Business Days of servicing transfer.

**(C) Sale of Servicing—Actual Balance Transfer**

GMAC-RFC will purchase servicing on an actual principal balance. The Effective Date of Transfer will be 15 days after the sale date or such longer time as GMAC-RFC Determines in its sole discretion. All payments due from the **Borrower** as of the sale date are due to the Designated Servicer. Any payments received from the Borrower between the sale date and the Effective Date of Transfer are due to the Designated Servicer within five **Business Day**s of servicing transfer.

**(D) Other Servicing Transfers**

Timing of transfer and other terms are at GMAC-RFC's sole discretion.

**(E) Remove Loan from GMAC-RFC Portfolio**

The Client must remove the Loan from the portfolio it services for GMAC-RFC prior to the Effective Date of Transfer, to ensure that the Client does not report any future payments to GMAC-RFC.

**(F) Transfer of Servicing Responsibility—Scheduled and Early Scheduled**

The Client must continue servicing the Loan and must collect any scheduled payments due from the Borrower up to the Effective Date of Transfer. If the Client does not receive any such scheduled payments when due, the Client must immediately notify the Designated Servicer. See the Designated Servicer Directory **GMAC-RFC Form 2500**.

## 520

## Reconciliation by GMAC-RFC

Upon approval of a servicing purchase, GMAC-RFC will perform a reconciliation process. This process ensures the financial information on the Loan, including the interest paid-to-date, principal balance, escrow balance and **Temporary Buydown** balance are the most current and correct as of the sale date.

**(A) Sale of Servicing—Scheduled Transfer**

The servicing will be transferred to the designated Servicer at the projected scheduled interest paid-to-date and the **Scheduled Principal Balance** as of the second month following the sale date.

GMAC-RFC will subtract from the funding amount:

- Escrow balance as stated on **HUD**-1/Settlement Statement or Loan history PLUS any scheduled escrow payments due the **Client** from the **Borrower** prior to the effective date of servicing transfer, MINUS any funds withheld for the Client to pay taxes or insurance
- Temporary Buydown balance as stated on HUD-1/Settlement Statement or Loan history MINUS any scheduled payments to draw from the Temporary Buydown account prior to the effective date of servicing transfer
- Tax service contract fee
- Flood zone determination contract fee (if life-of-loan flood zone determination contract not provided)

**(B) Sale of Servicing—Early Scheduled Transfer**

The servicing will be transferred to the designated Servicer at the scheduled interest paid to date and the Scheduled Principal Balance as of the first month following the sale date.

GMAC-RFC will subtract from the funding amount:

- Escrow balance as stated on HUD-1/Settlement Statement or Loan history PLUS any scheduled escrow payments due the Client from the **Borrower** prior to the effective date of servicing transfer, MINUS any funds withheld for the Client to pay taxes or insurance
- Temporary Buydown balance as stated on **HUD**-1/Settlement Statement or Loan history MINUS any scheduled payments to draw from the **Temporary Buydown** account prior to the effective date of servicing transfer
- Tax service contract fee
- Flood zone determination contract fee (if life-of-loan flood zone determination contract not provided)

**(C) Post-Purchase Sale of Servicing**

The servicing will be transferred to the designated Servicer at the scheduled interest paid to date and the **Scheduled Principal Balance** as of the first month following the sale date.

All adjustments necessary to reconcile any difference between the actual and Scheduled Principal Balance, escrow balance and **Temporary Buydown** balance will be accounted for in the reconciliation process.

GMAC-RFC will subtract from the funding amount:

- Escrow balance as stated on **HUD**-1/Settlement Statement or Loan history PLUS any scheduled escrow payments due the **Client** from the **Borrower** prior to the effective date of servicing transfer, MINUS any funds withheld for the Client to pay taxes or insurance
- Temporary Buydown balance as stated on HUD-1/Settlement Statement or Loan history MINUS any scheduled payments to draw from the Temporary Buydown account prior to the effective date of servicing transfer
- Tax service contract fee
- Flood zone determination contract fee (if life-of-loan flood zone determination contract not provided)
- Any prepayments received by the Client prior to the sale date

**(D) Tax Service Contract**

For any simultaneous sale of servicing or early purchase of servicing, GMAC-RFC will set up a tax service contract for $78.00 for each Loan with an additional charge of $10.00 added to the base fee for every $100,000 or portion thereof that is greater than $499,999. GMAC-RFC will deduct this cost from the funding amount paid to the Client.

For any post-purchase sale of servicing, GMAC-RFC will deduct this cost from the payment of the servicing premium to the **Client**.

**(E) Life of Loan Contract for Flood Zone Determination**

The Client should either obtain a transferable life-of-loan Flood Zone Determination Contract from an approved **Fannie Mae** or **Freddie Mac** vendor, or notify GMAC-RFC to set up a flood contract. GMAC-RFC will deduct this cost from the funding amount paid to the Client in accordance with the Servicing Released Approved Flood Zone Determination Company and Fee Schedule **GMAC-RFC Form 2504**.

## 521

## Notification of Purchase

**(A) Simultaneous Sale of Servicing**

In the purchase of servicing is approved, GMAC-RFC will send the **Client** a Purchase Advice **GMAC-RFC Form 2501**. This form will outline cash transactions relating to the purchase of the Loan and servicing.

### (B) Post-Purchase Sale of Servicing

If the purchase of the servicing is approved, GMAC-RFC will send the Client a Statement of Servicing Sold First Mortgage **GMAC-RFC Form 2502** on the first **Business Day** of the month after the sale date.

## 522

## Monies Paid for Servicing Released

### (A) Simultaneous Sale of Servicing

On the sale date, GMAC-RFC will wire transfer all funds due the Client to its designated depository institution. These funds will be plus or minus Loan feature adjustments as well as adjustments resulting from the above reconciliation process.

### (B) Post-Purchase Sale of Servicing

All funds due the Client (plus or minus adjustments) will be sent via Automated Clearing House (**ACH**) on the first Business Day of the month following the sale date. These funds will be sent to the Client's designated depository institution. If the designated institution cannot accept **ACH** transactions, GMAC-RFC will send a check.

The one-time **Servicing Released Premium (SRP)** paid for post-purchase sale of servicing is based on the **Scheduled Principal Balance** as of the month preceding the effective date of servicing transfer multiplied by the applicable servicing premium percentage.

If the Client owes GMAC-RFC any amount for reconciliation adjustments, the Client should remit that amount within five Business Days. If the remittance is not received, GMAC-RFC will subtract the funds against future Servicing Premiums paid to the Client.

### (C) Lender Paid Mortgage Insurance

GMAC-RFC will purchase servicing with lender paid mortgage insurance. If the annual renewal plan is selected, the **Client** must increase the amount of servicing fee over the minimum servicing required by GMAC-RFC. GMAC-RFC will not pay the portion of servicing fee associated with this renewal plan. For more information, consult the Lender Paid Mortgage Insurance Section in the **Client Guide**.

## 523

## Monies Due Client

### (A) Principal and Interest

The **Client** may receive any scheduled principal and/or interest due from the **Borrower** prior to the effective date of servicing transfer. The Client must attempt to collect all such payments from the Borrower up to the effective date of servicing transfer.

If the Client did not receive the scheduled principal and interest due from the Borrower, the Client must first attempt to collect the funds from the Borrower. If the Borrower sent payment to the designated Servicer, the Client should send a request for reimbursement to the designated Servicer. Include supporting documentation such as Loan history, collection history or cancelled checks.

The Designated Servicers and/or GMAC-RFC may deny the Client's request for reimbursement if it is received six months after the effective date of servicing transfer. The Client waives any right to payment for any demand made after that date.

**(B) Principal Curtailment**

If the Client receives a principal curtailment from the Borrower prior to the effective date of servicing transfer, and the principal curtailment is not reflected in the funding amount, the Client must forward all such payments to the designated Servicer as stated in this Servicing Released Chapter.

**(C) Escrow**

If the Client is entitled to receive reimbursement for an escrowed item disbursed after the sale date, the Client should forward a request for reimbursement to the designated Servicer. The request must include supporting documentation such as a Loan history and cancelled checks.

The designated Servicer and/or GMAC-RFC may deny the Client's request for reimbursement if it is received more than three months after the sale date. The Client waives any right to payment for any demand made after that date.

**(D) Uncollected Funds**

If a **Borrower**'s check for a scheduled payment is not honored due to non-sufficient funds, the **Client** must attempt to collect the amount due. If the Client determines the amount is uncollectible, the Client must notify the Designated Servicer immediately.

## 524

## Monies Due Designated Servicer

**(A) Principal and Interest**

If the **Client** receives any payments from the **Borrower** prior to or after the effective date of servicing transfer that are due to the designated Servicer, such payments must be sent by overnight mail service to the applicable designated Servicer address within five **Business Day**s of receipt. Refer to the Designated Servicer Directory **GMAC-RFC Form 2500**. This includes, without limitation, scheduled principal and interest payments, prepayments of principal and interest and escrow payments.

The Client must prepare a transmittal letter with any such payments and must properly endorse checks to the designated Servicer. This letter should include:

- Borrower's name
- Assigned designated Servicer Loan number (from Purchase Advice)
- The date payment was received by the Client

**(B) Principal Curtailment**

If the Client receives a principal curtailments from the Borrower prior to or after the effective date of servicing transfer that are due to the designated Servicer, the Client must forward all such payments to the designated Servicer following procedures as stated above under Principal and Interest.

### (C) Escrow Funds

If the **Client** has escrow funds remaining after the effective date of servicing transfer that are due to the designated Servicer, the Client must forward all remaining funds to the designated Servicer within 30 days of the effective date of servicing transfer following procedures as stated above under Principal and Interest.

## 525

## Loans Paid in Full

### (A) Notification

The Client must notify GMAC-RFC of any Loans that have been paid in full prior to the Effective Date of Transfer by submitting a Payoff/Liquidation Report (**GMAC-RFC Form 2308**) by Fax one Business day of payoff to GMAC-RFC's Loan Accounting Department at 818.260.1800. In addition, the Client must wire transfer Loan funds to GMAC-RFC within five Business days after the event that caused the payoff. Please refer to the **Method to Transfer Remittances** Section in Chapter 3 of this Guide.

The Client should respond to any requests for payoff figures prior to the Effective Date of Transfer. If the Effective Date of Transfer precedes the anticipated payoff date, the Client should refer the requestor to the Designated Servicer to obtain the quoted payoff figures. Payoff funds received by the Client after the Effective Date of Transfer must be wire transferred to the Designated Servicer within one Business day of receipt of such funds. If these funds are not wired to the Designated Servicer within one Business day of their receipt, the Client will be assessed accrued interest for each day.

Failure to provide timely reports and remittance will result in actions and/or penalties as defined in the **Failure to Comply with the GMAC-RFC Remittance Requirements** Section in Chapter 3 of this Servicer Guide.

### (B) Payoff/Liquidation within 90 Days

If any payoff or liquidation occurs on the Loan up to and including 90 days from the funding date, the Client must repay the original premium GMAC-RFC paid for the servicing and any related price premium on the Loan. The Client must wire funds within 5 Business days to GMAC-RFC's Client Correspondence Segment, Collection Unit:

> Residential Funding DDA# 5573416 GMAC-RFC Premium Account
> Bank One, National Association; Chicago, IL
> ABA# 071000013
> Attn: GMAC-RFC Claims/Compliance
> Client ID number and name
> GMAC-RFC Loan number
> Reason: Payoff

Failure to provide timely remittance will result in actions and/or penalties as defined in the **Failure to Comply with the GMAC-RFC Remittance Requirements** Section in Chapter 3 of this Servicer Guide.

- The **Client** must immediately notify GMAC-RFC of any Loans that have been paid in full prior to or on the funding date by submitting a Payoff/Liquidation Report **GMAC-RFC Form 2308**. In addition, the Client must wire transfer Loan funds to GMAC-RFC within five **Business Day**s after the event that caused the payoff. Failure to provide timely reports and remittance will result in actions and/or penalties. Please refer to Chapter 4, **Mortgage Loan Servicing**, for further information or contact Loan Accounting at 818.260.1400.

The Client should respond to any requests for payoff figures prior to the effective date of servicing transfer. If a request precedes the anticipated payoff date, the Client should send the quoted payoff figures to the designated Servicer.

## 526

### Servicing Document Correction

If post-funding corrections are required to the servicing documents after Loan purchase, the Client must submit outstanding items within 15 business days of written notification.

If corrections are not made to the satisfaction of GMAC-RFC within 15 business days, the Client may be assessed penalties as determined by GMAC-RFC.

## 527

### Bulk Servicing Acquisitions

GMAC-RFC purchases Loans' **Servicing Rights** in bulk packages as well as on a Loan-by-Loan basis. In Bulk servicing acquisitions, the price, payment, volume, delivery and other terms are negotiated in order to accommodate the needs and desires of both the Client and GMAC-RFC. Typically, the sale terms are outlined in a purchase and sale agreement between the Client and GMAC-RFC. Between the sale date and the effective date of servicing transfer, as established under that agreement, all Loans will continue to be serviced by the Client under the terms of an interim servicing agreement between the Client and GMAC-RFC.

Direct all inquiries regarding bulk sales of servicing to your GMAC-RFC Sales Director.

## 528

### Subservicing Election

GMAC-RFC may request that the **Client** subservice a Loan purchased servicing released for up to 90 days after its sale date. If the Client agrees to honor that request, the Client will subservice the Loan under the terms and conditions of this Guide, except as otherwise agreed upon in writing by the Client and GMAC-RFC.

# 6

# Definitions

The capitalized terms in this Servicer Guide have the meanings given below, unless the context clearly requires otherwise.

**ACH**

Automatic Clearing House.

**Adjustment Letter**

Written notification to the Servicer of any forecasting and/or reporting discrepancies discovered by GMAC-RFC in the monthly Loan Accounting process and of any required adjustment to cash due to GMAC-RFC as a result of those discrepancies.

**Affiliate**

Any person or entity controlling, controlled by or under common control with GMAC-RFC. Control means the power to direct the management and policies of a person or entity, directly or indirectly, whether through ownership of voting securities, by contract or otherwise; and "controlling" and "controlled" shall have meanings correlative to the foregoing.

**Affiliated Persons**

Includes directors, officers, employees, and controlling persons of the Servicer; spouses of directors, officers, and controlling persons of the Servicer; members of the immediate family of directors, officers, and controlling persons of the Servicer, who have the same home as such persons or who are directors or officers of any subsidiary of the Servicer or of any holding company Affiliate of the Servicer; corporations or organizations (other than the Servicer or a corporation or organization through which the Servicer operates) of which a director, officer, or controlling person of such Servicer is an officer or partner or is, directly or indirectly, either alone or with his or her spouse, the owner of 10% or more of any class of equity securities or the owner with other directors, officers, and controlling persons of the Servicer and their spouses of 25% or more of any class of equity securities; and trusts or other estates in which a director, officer, or controlling person of such Servicer or the spouse of such person has a substantial beneficial interest or as to which such person or his or her spouse serves as trustee or in a similar fiduciary capacity.

**Automated Valuation Model (AVM**

A model using at least one of the two following methodologies to arrive at a determination of Value for real property without the use of, or with limited intervention by a human appraiser.



Index or repeat sales model: A mathematical model that derives an estimate of current market Value by taking an old Value from a previous sale or refinance and applying a market rate of change to reflect a present day Value. The market rate of change percentage is derived from looking at repeat sales within a limited geographic area (i.e., 5-digit zip); by property type (e.g., condominium, single family detached, 2-4 unit); and often within price bands (e.g., <50% of median price, 50-100% of median, 100 - 150% of median, and >150% of median), for the same period as the subject property.

Hedonic or regression models: Also referred to as comparable sales models, these models derive an estimate of current market Value by analyzing the various characteristics of like properties (e.g., square footage, lot size, number of bedrooms). The model then determines the impact that each characteristic has on Value by looking at the characteristics of recent sales within a limited geographic area (i.e., 5-digit zip) and determining an appropriate formula. By applying the characteristics of the subject property to this formula, a current Value can be derived.

---

**Balloon Mortgage**

A fully amortized mortgage over a specified term, which provides for a lump sum payment due at either the end of the term, or at another point specified therein.

---

**Balloon/Re-set Mortgage**

A fixed-rate first lien mortgage, scheduled for full amortization, but where the unpaid mortgage balance is due on the date of the Balloon maturity, and the Borrower has a Re-set option on that date.

---

**Balloon Payment**

The unpaid mortgage balance due in full at the end of the term. This amount may be somewhat more than a monthly installment or may be substantial, occurring because the fixed installment did not fully amortize the mortgage either intentionally or accidentally.

---

**BIF**

The Bank Insurance Fund of the FDIC

---

**Borrower**

One or more individuals obligated to repay the Loan.

---

**Broker's Price Opinion**

An opinion of Value on a property provided by a real estate broker based on comparable sales data of other properties located within the same area of that property.



**Business Day**

Any day other than a Saturday, Sunday or any of the holidays upon which GMAC-RFC is officially closed for business, as set forth in the **Hours of Operation and Holidays** Section of this Servicer Guide.

**Client**

A person or entity that has entered into a Client Contract with GMAC-RFC.

**Client Guide**

The GMAC-RFC Client Guide, as amended from time to time.

**Commitment**

An Underwriting Standby Commitment, an Optional Delivery Commitment or a Mandatory Delivery Commitment obtained by the Client from GMAC-RFC in accordance with the provisions of the Client Guide in the form of a Forward Commitment Letter. An Underwriting Standby Commitment is sometimes referred to simply as a Standby.

**Commitment Date**

The effective date of a Commitment, as specified in the related Forward Commitment Letter.

**Cut-off Date**

The last Business Day of the month previous to the month for which a remittance is being calculated.

**Delinquency**

Delinquency occurs when all or part of the Borrower’s monthly installment of principal, interest, and, where applicable, Escrow/Impound is unpaid after the due date. A Delinquency that remains uncured as of the close of business of the last Business Day before the next due date is considered a one- payment or 30-day Delinquency.

**Delivery Date**

The date GMAC-RFC actually receives the Funding Documents. The posting of the Funding Documents with the U.S. Postal Service or any other delivery service does not constitute delivery to GMAC-RFC.

**Demand Deposit Account**

A deposit account from which funds may be withdrawn by the Servicer/depositor immediately and without advance notice of intended withdrawal.

**Due Date**

The date the Borrower's monthly installment of principal, interest, and, where applicable, escrow is due as stated in the Note.

**Early Scheduled Transfer**

The simultaneous sale of servicing with the sale date being the date on which the purchase price of the Loan is funded, and the effective date of transfer being the first day of the month following the sale date.

**Escrow/Impound**

All funds collected by the Client and/or Servicer to cover expenses of the Borrower required to be paid under the Security Instrument, including, but not limited to, taxes, special assessments, ground rents, water, sewer and other governmental impositions or charges that are or may become liens on the Mortgaged Premises prior to that of the Loan, as well as hazard, flood and mortgage insurance premiums.

**Event of Servicer Default**

The events specified in the **Events of Servicer Default** Section of this Servicer Guide.

**Fannie Mae**

The Federal National Mortgage Association (FNMA).

**FDIC**

The Federal Deposit Insurance Corporation. The FDIC administers the BIF and the SAIF.

**FDIC Insured Depository**

A depository institution whose deposits of up to $100,000 are insured by the FDIC.

**FICO**

Fair Isaac Credit Score.

**Final Documents**

The documents required by the Final Delivery Sections of the Client Guide.

**Freddie Mac**

The Federal Home Loan Mortgage Corporation (FHLMC).

**FSLIC**

The Federal Savings and Loan Insurance Corporation.



---

**Funding Documents**

The documents required by the Delivery for Funding Section of the Client Guide.

---

**Ginnie Mae**

The Government National Mortgage Association (GNMA).

---

**GMAC-RFC**

A Delaware limited liability company, its successors and assigns or such other name in which Residential Funding Company, LLC (f/k/a Residential Funding Corporation) (GMAC-RFC) may do business in any State. References to GMAC-RFC in this Servicer Guide shall also be deemed to include, as appropriate in connection with the issuance of one or more securities relating to Loans or as otherwise appropriate, an Affiliate of GMAC-RFC, a master Servicer, custodian or trustee and/or any other person or entity that:

- Is put in place by GMAC-RFC in connection with the issuance of securities relating to Loans or other disposition of all or part of the rights and duties of GMAC-RFC under the Client/Servicer Contract, the Client Guide and/or this Servicer Guide
- May become obligated to render performance to, or entitled to receive performance from, a Client or a Servicer
- Is an assignee or pledgee of all or part of the interest by GMAC-RFC in one or more Loans resulting from issuing securities

GMAC-RFC may designate others, including but not limited to its attorneys, auditors and consultants, to perform any of its duties or exercise any of its rights under this Servicer Guide or the Client Guide. GMAC-RFC reserves the right to require the Client to deliver Loans, and the Servicer to deliver remittances and reports directly to its designee.

---

**Home Equity Loan/Second Mortgage Loan**

(HEL/Second Mortgage Loan)

A Loan purchased by GMAC-RFC that is secondary in lien position to a primary, or first, mortgage or deed of trust for the same property.

---

**HUD**

The United States Department of Housing and Urban Development.

---

**Insured Depository**

A depository institution whose deposits are insured either by the FDIC or the NCUSIF.

---

**Junior Lien**

A mortgage on real estate upon which there is located a structure designed principally for residential use by one to four families and is subordinate to a lien of greater priority.

**Loan**

A Loan sold or intended to be sold by the Client to GMAC-RFC, and that meets or is intended to meet all the requirements of the Client Guide. The term "Loan" includes all of the Client's rights, title and interest in and to the Loan, including but not limited to the Loan Documents, the Loan file, and all other material and information collected by the Client in connection with the Loan.

**Loan Documents**

Includes originals and copies of the appraisal, the Security Instrument, the Note and all other documents described in the **Minimum Contents of Loan File** Section of this Servicer Guide.

**Loan Program**

Any one or more of the Loan Programs pursuant to which a Client may sell Loans in accordance with the Client Guide. The Loan Programs are described in the Loan Programs Chapter of the Client Guide.

**Loan-to-Value**

(LTV)

The ratio that results when the Loan amount is divided by the Value of the Mortgaged Premises obtained from an appraisal or Broker's Price Opinion. The Combined Loan-to-Value (CLTV) is the ratio of the Loan plus any secondary financing to the Value of the Mortgaged Premises.

**MERS**

Mortgage Electronic Registration System.

**MICR**

Magnetic Ink Character Recognition.

**MIN**

MERS Identification Number. A unique number assigned to the Loan. Required on MOM Loans to be printed on the front page of the Security Instrument in the upper right hand corner under the recording area. On non-MOM Loans that are registered using the assignment method, the MIN must be on the assignment.

**MOM Loan**

MERS Original Mortgage. A Loan where MERS is the Original Mortgage/Trustee, MERS nominee language on the face of the original Security Instrument.

**Mortgage Insurer**

A provider of mortgage insurance that has been approved by GMAC-RFC.

**Mortgaged Premises**

The land and improvements thereon subject to the lien of the Security Instrument.

**NCUA**

The National Credit Union Administration.

**NCUSIF**

The National Credit Union Share Insurance Fund.

**NCUSIF Insured Depository**

A depository institution whose deposits are insured by either the FDIC or the NCUSIF.

**Note**

The applicable form of instrument evidencing the Loan as required under the Client Guide, including any addenda thereto.

**Payment Default Date**

The day after the contractual Loan payment is due.

**Per Diem**

(Penalty)

Daily interest amount calculated at current unpaid principal balance times the Note rate, divided by 365 days.

**Prime Loan**

Investment quality mortgages as generally defined by the following: the Borrower’s credit quality is demonstrated by excellent recent mortgage history, excellent consumer credit history or high credit scores, no history of bankruptcy or foreclosure and predefined acceptable debt-to-income ratios. Collateral for prime mortgages must be of good to superior quality, readily marketable and common for the area. Also known as “A” paper.

**Real Estate Owned (REO)**

Real property for which GMAC-RFC, or its investors, has acquired marketable title as the result of a completed foreclosure, deed-in-lieu of foreclosure, or other action.



**Re-set option**

A Borrower's option is to extend and modify the Balloon/Re-set Mortgage on the Balloon Maturity date, subject to all provisions of the Note and its Addendum or Balloon Rider. For example, on a 5-year Balloon/Re-set Mortgage, the term would extend for 25 years; on a 7-year Balloon/Re-set Mortgage, the term would extend for 23 years.

**SAIF**

The Savings Association Insurance Fund, which is the successor to the FSLIC insurance fund.

**Scheduled Principal Balance**

At any time and with respect to any Loan, the original principal amount of such Loan at the time it was purchased by GMAC-RFC less that portion of any cash payments received by GMAC-RFC from the primary Servicer for such Loan that is to be applied toward the reduction of the outstanding principal balance of the Loan.

**Security Instrument**

The applicable form of mortgage, deed of trust, deed to secure debt or security deed required under the Client Guide, including any riders, creating a first lien on the Mortgaged Premises.

**Seller**

Please refer to definition under Client.

**Servicer**

A person or entity that has entered into a Client/Servicer Contract with GMAC-RFC.

**Servicer Guide**

The GMAC-RFC Servicer Guide, as amended from time to time.

**Servicing Agent**

A Servicer that received GMAC-RFC's authorization to act on behalf of another Servicer in servicing Loans purchased by GMAC-RFC.

**Servicing Released Premium (SRP)**

A one-time premium paid to the Client for the Servicing Rights on a mortgage Loan.

**Servicing Rights**

With respect to each sale and transfer of Servicing Rights, the right, title, and interest in and to the non-recourse servicing of any Loan and the maintenance and servicing fee income and any and all ancillary income arising from or in connection with any Loan.



**State**

Any of the 50 States of the United States of America, including the District of Columbia.

**Sub-Prime Loan**

Mortgages with credit underwriting characteristics that fall outside traditional agency parameters with respect to Borrower's repayment history of mortgage and consumer debt, bankruptcy and foreclosure history, debt-to-income ratios and income verification. Collateral for sub-prime mortgages must be of good to superior quality, readily marketable and common for the area. Also referred to as B&C Paper.

**Substitution Date**

The date on which GMAC-RFC receives a Loan that the Client has substituted for a denied Loan.

**Temporary Buydown**

An amount of money paid by the Borrower, home-seller, home-builder or other person or entity that reduces the Borrower's monthly payments on the Note for a number of months at the beginning of the Loan term and that will, by the terms of the agreement establishing the Temporary Buydown, be pledged to the Client as additional security for the Loan.

---

**Transfer of Ownership**

Includes, but is not limited to, the conveyance of the Mortgaged Premises, or any right, title, or interest in the Mortgaged Premises, whether legal or equitable, voluntary or involuntary, by any of the following methods:

- Outright sale
- Deed
- Installment sale contract
- Land contract
- Contract for deed
- Leasehold interest with the term greater than three years
- Lease-option contract
- Land trust

Any other conveyance of an interest in real property, including those involving secondary financing such as wrap-around mortgages.

---

**Value**

The Value of the Mortgaged Premises may be defined differently depending upon the type of financing, the length of time the property has been owned by the Borrower and the location of the Mortgaged Premises as established in the Definition of Value Section of the Client Guide.

# 7

# Forms

The Servicer must always use the current version of the GMAC-RFC forms and other forms prescribed by this Servicer Guide. When GMAC-RFC changes any forms, it will notify the Servicer, and the Servicer must use the new version after the effective date designated by GMAC-RFC. Below is a list of required GMAC-RFC forms, followed by a sample of each. To print Servicer forms in your office, logon to our website at **www.GMACResidentialFunding.com** and open Chapter 7, Forms.

Please see Chapter 2, **Servicer Reporting, Information Security and Privacy** Section regarding the handling of confidential Borrower information.

## List of Forms

| | | |
|---|---|---|
| **GMAC-RFC Form 2100** | Node Software License Agreement | (10/06) |
| **GMAC-RFC Form 2200** | Annual Client/Servicer Certification (Client Guide 1200) | (11/04) |
| **GMAC-RFC Form 2201** | List of Transfer of Servicing Items | (11/01) |
| **GMAC-RFC Form 2202** | Agreement for Transfer of Servicing | (07/00) |
| **GMAC-RFC Form 2203** | Servicing Agent Certification | (11/00) |
| **GMAC-RFC Form 2203C** | Servicing Agent Certification for Client and Servicing Agent | (11/01) |
| **GMAC-RFC Form 2203D** | Servicer Back-up Certification | (05/07) |
| **GMAC-RFC Form 2204** | Document Services Form | (05/04) |
| **GMAC-RFC Form 2205** | Servicer Compliance Statement (Item 1123) | (05/07) |
| **GMAC-RFC Form 2300** | ACH Debit Authorization | (07/00) |
| **GMAC-RFC Form 2301** | Authorization Form | (11/01) |
| **GMAC-RFC Form 2302** | Custodial Account Analysis – P&I Form | (05/05) |
| **GMAC-RFC Form 2303** | Custodial Account Analysis – T&I Form | (05/05) |
| **GMAC-RFC Form 304** | ARM Variance | (11/03) |
| **GMAC-RFC Form 2306** | Individual Loan Accounting Report | (11/04) |
| **GMAC-RFC Form 2308** | Payoff/Liquidation Report | (11/05) |
| **GMAC-RFC Form 2310** | SBO Odd Due Date Payoff | (05/04) |
| **GMAC-RFC Form 2400** | Request for Loan Service Approval | (07/00) |
| **GMAC-RFC Form 2401** | Multipurpose Loan Service Report | (11/04) |
| **GMAC-RFC Form 2402** | Acceptable Primary Mortgage Insurers | (05/05) |
| **GMAC-RFC Form 2403** | 1-4 Family Property Servicing Inspection Report | (11/01) |
| **GMAC-RFC Form 2404** | Expense Reimbursement Guideline | (11/06) |
| **GMAC-RFC Form 2405** | Multipurpose Facsimile Transmittal | (11/04) |
| **GMAC-RFC Form 2406** | Write-Off Evaluation | (11/04) |
| **GMAC-RFC Form 2407** | Bankruptcy Status Report | (11/04) |

| | | |
|---|---|---|
| GMAC-RFC Form 2408 | Eviction Status Report | (11/01) |
| GMAC-RFC Form 2409 | Statement of Foreclosure/REO Expenses | (11/05) |
| GMAC-RFC Form 2410 | State Foreclosure Parameters | (05/07) |
| GMAC-RFC Form 2411 | Document Release Transmittal | (05/02) |
| GMAC-RFC Form 2414 | Automated Value Model (AVM) Approved Vendors | (11/03) |
| GMAC-RFC Form 24A00 | Change In Loan Data Letter Example | (07/00) |
| GMAC-RFC Form 24A01 | New Loan Input File Format | (11/01) |
| GMAC-RFC Form 24A02 | Modification Agreement | (11/01) |
| GMAC-RFC Form 24A03 | Modification Agreement (Increase of Credit Limit) | (11/01) |
| GMAC-RFC Form 24A04 | Notice of Right to Cancel | (07/00) |
| GMAC-RFC Form 24A05 | Superior Lienholder | (11/01) |
| GMAC-RFC Form 24A06 | Subordination Agreement | (10/06) |
| GMAC-RFC Form 24A06M | Subordination Agreement (MERS) | (10/06) |
| GMAC-RFC Form 24A07 | Amendment to Agreement & Deed of Trust | (10/06) |
| GMAC-RFC Form 24A08 | Partial Release of Mortgage | (10/06) |
| GMAC-RFC Form 24A09 | Multipurpose Loan Service Report | (07/00) |
| GMAC-RFC Form 24A10 | Second Mortgage Cost Evaluation and Recommendation | (05/06) |
| GMAC-RFC Form 24A12 | Request for Loan Approval | (07/00) |
| GMAC-RFC Form 24A13 | Expense Report | (11/01) |
| GMAC-RFC Form 24A14 | Write-Off/Liquidation Report | (11/04) |
| GMAC-RFC Form 24A15 | 1-4 Family Property Servicing Inspection | (11/01) |
| GMAC-RFC Form 24A16 | Completed Foreclosure Report | (11/01) |
| GMAC-RFC Form 24A17 | Multipurpose Fax Transmittal | (05/06) |
| GMAC-RFC Form 24A18 | Payoff/Liquidation Report | (11/01) |
| GMAC-RFC Form 24A19 | Bankruptcy Status Report | (11/01) |
| GMAC-RFC Form 24A20 | Bankruptcy Reaffirmation | (11/01) |
| GMAC-RFC Form 24A21 | Workout Documentation Requirements | (05/06) |
| GMAC-RFC Form 24A22 | Workout Recommendation | (10/06) |
| GMAC-RFC Form 24A23 | Personal & Financial Information | (11/01) |
| GMAC-RFC Form 24A24 | Workout Information | (07/00) |
| GMAC-RFC Form 24A25 | Loan Servicing Agreement Reporting Requirements | (05/06) |
| GMAC-RFC Form 24A27 | Home Equity Servicer Daily Transaction and Reporting Guide | (11/06) |
| GMAC-RFC Form 24A29 | Home Equity Servicer Monthly Transaction and Reporting Guide | (11/06) |
| GMAC-RFC Form 2500 | Designated Servicer Directory | (11/07) |
| GMAC-RFC Form 2501 | GMAC-RFC Corporation Purchase Advice | (07/00) |
| GMAC-RFC Form 2502 | GMAC-RFC Statement of Servicing Sold - First Mortgage | (10/06) |
| GMAC-RFC Form 2504 | Servicing Released Approved Flood Zone Determination Company | (11/01) |

# Limited License Agreement to Use Node Software 2100

The Client/Servicer should carefully read this Limited License Agreement to Use Node Software (this "Agreement"). By using the Node Software, the Client/Servicer agrees to be bound by all the terms, conditions and limitations on use that are set forth below in this Agreement. If the Client/Servicer does not agree with such terms and limitations, simply return the Node Software to GMAC-RFC within 30 days after the Client/Servicer's receipt of the Node Software.

**BACKGROUND**

XcelleNet, Inc. ("XcelleNet") has developed certain proprietary software, including a communications platform referred to as the Communications Management System and a family of application development tools referred to as AppliComms, and both referred to separately or collectively as RemoteWare. XcelleNet retains all rights and title to the RemoteWare software, including any modifications or enhancements to or derivative works thereof, except as otherwise agreed to by XcelleNet. Licensor has been appointed as a value-added reseller of XcelleNet for the purpose of marketing and licensing the RemoteWare software in combination with related products or services provided by Licensor.

**DEFINITIONS**

**A. "Licensor"** means American Technology Corporation, a Missouri corporation with its principal place of business at 1807 Park 270 Drive, Suite 420, St. Louis, MO 63146—4036 and the licensor of the Node Software.

**B. "Sublicensor"** means GMAC-RFC, a limited liability company with a place of business at 8400 Normandale Lake Blvd., Suite 600, Bloomington, MN 55437, and who has the right to grant the license of the Node Software granted in this Agreement under a Software Licensor Agreement (the "SLA") dated 2/2/94 with Licensor.

**C. "Node Software"** means the object code version of the computer software, together with the corresponding user manual that is provided therewith.

**D. "Sublicensee"** means a Client/Servicer that receives from GMAC-RFC a copy of the Node Software.

**SOFTWARE LICENSE**

**A. Grant.** Sublicensor grants Sublicensee and Sublicensee accepts a nonexclusive and limited license to use the Node Software solely at Sublicensee's site. This license is only for the internal use of Sublicensee. Sublicensee acknowledges that it is receiving only a limited license to use the Node Software and that XcelleNet retains all rights and title to the Node Software.

**B. Restrictions.** Sublicensee understands that the license granted in this Agreement places certain limits on the Sublicensee, including:

**(i)** Sublicensee shall not sublicense, rent, sell or otherwise distribute the Node Software to any other third party.

**(ii)** This Agreement and the rights and duties of Sublicensee set forth herein are not transferable or assignable without the prior written consent of Sublicensor.

**(iii)** Sublicensee shall not copy the Node Software, in whole or in part, without the prior written consent of Sublicensor, except that one copy may be made by Sublicensee for backup and archival purposes.

**(iv)** Sublicensee shall not translate, disassemble, decompile or reverse engineer the Node Software or any portion thereof.

**(V.)** Sublicensee shall not modify or alter the Node Software without the prior written consent of Sublicensor.

**(vi)** Sublicensee shall not alter, remove or conceal any copyright, trade secret or other proprietary rights notices which may appear on or within the Node Software and shall reproduce such notices on any copies of the Node Software. Sublicensee further agrees not to violate any of XcelleNet's copyrights, trade secrets or other proprietary rights related to the Node Software.

**TERMS, TERMINATION AND LICENSE FEE**

**A. Term.** This Agreement shall begin upon installation of the Node Software, and unless sooner terminated as provided in Section 4.B, shall continue indefinitely.

**B. Termination.** Sublicensor may terminate this Agreement, and the license and rights granted herein, immediately upon written notice to Sublicensee at any time and for any reason. Licensor may terminate this Agreement, and the license and rights granted herein, immediately upon written notice to Sublicensee if Sublicensor breaches any of the provisions of Section 3.B or if the SLA between Licensor and Sublicensee is terminated. Upon termination of this Agreement, Sublicensee shall immediately cease all use of the Node Software and destroy said Node Software, including all copies.

**C. License Fee.** For the license and rights granted herein, Sublicensee agrees to pay to Sublicensor a one-time license fee of One Dollar ($1.00) per year; provided, however, that Sublicensor reserves the right to change the license fee at any time in the exercise of its sole discretion upon thirty (30) days prior written notice to Sublicensee.

**WARRANTIES AND DISCLAIMER**

**A. Warranty.** Sublicensor warrants to Sublicensee that it has the right to grant the license of the Node Software granted in this Agreement.

**B. Disclaimer.** The warranty set forth in this Section 5 is the sole warranty made by either Sublicensor or Licensor with respect to the Node Software, and is in lieu of all other warranties of any kind, either express or implied, including, but not limited to, the implied warranties of merchantability and fitness for a particular purpose, all such warranties being hereby fully disclaimed.

**LIMITATION OF LIABILITY**

**A. Program or Data Stored in Sublicensee's Computer.** The Node Software is designed to operate in conjunction with software operated by the Sublicensor, and through that software it may be possible for Sublicensor to gain access to all programs and the information stored in the computer in which the Node Software is installed and other computers to which it may have access. Neither Sublicensor nor Licensor shall have any liability to Sublicensee or any third party with respect to the programs or data stored in the computer in which the Node Software is installed and other computers to which it may have access.

**B. Special, Incidental or Consequential Damages.** Neither Sublicensor nor Licensor will be liable for any special, incidental or consequential damages arising out of this Agreement or arising out of Sublicensee's possession of, use of, or inability to use the Node Software.

**C. Third Party Claims.** Neither Sublicensor nor Licensor will be liable for any claim against Sublicensee by any third party.

**D. Limitation of Damages.** In no event will Sublicensor's or Licensor's liability for any damages or injuries to Sublicensee, or those claiming damages or injuries through Sublicensee, ever exceed the License Fee paid by Sublicensee for the Node Software, regardless of the form of action, whether in contract, negligence, strict liability, tort, products liability or otherwise.

# Annual Client/Servicer Certification

## Section A. General Information

| Client/Servicer Name | Date fiscal (audit) year-ends |
|---|---|
| Client/Servicer Number | Dates covered by this report (if different from fiscal year-end) |
| Principal Office Address | Mailing Address (if different from principal office) |
| City, State, ZIP | City, State, ZIP |
| **Deposits are insured by (check one)**<br>❑ Federal Deposit Insurance Corporation (FDIC)<br>❑ National Credit Union Share Insurance Fund (NCUSIF)<br>❑ Other (explain) ___________________________________ | **Indicate the type of institution (check one)**<br>❑ Corporation ❑ Partnership<br>❑ Proprietorship ❑ Limited Partnership |
| **Approvals**<br>❑ HUD ❑ Freddie Mac<br>❑ Fannie Mae (in good standing) | Total amount of unpaid principal balance of servicing portfolio at fiscal year-end<br>$ ________________________________ |
| Does this institution have a quality control plan in place?<br>❑ Yes ❑ No, explanation attached | Total amount of mortgages originated this fiscal year<br>$ ________________________________ |
| Is this institution currently operating under regulatory supervision, receivership, conservatorship or other restrictions?<br>❑ No ❑ Yes, explanation attached | Has there been a change in ownership in the past twelve (12) months?<br>❑ No ❑ Yes, explanation attached |

## Section B: Net Worth

| As of fiscal year-end: | |
|---|---|
| Financial Data based on (check one) ❑ Generally accepted accounting principles (GAAP)<br>❑ Regulatory accounting principles (RAP) | |
| Auditor's opinion (check one) ❑ Unqualified ❑ Qualified (explain)❑ Adverse (explain) | |
| Has this institution changed auditors in the past year? ❑ Yes, attach reason for change and name and address of previous auditor<br>❑ No | |
| Assets | $ |
| Liabilities | $ |
| HUD adjusted net worth (if applicable) | $ |
| Intangible assets included in assets above | $ |

Attach audited financial statement for the current fiscal year-end, along with all other certification required in Chapter 2 of the Servicer Guide.

**Section C. Fidelity and Mortgagee's Errors and Omissions (E&O) Insurance**

| | Fidelity | Mortgagee's E&O |
|---|---|---|
| Was insurance policy in effect as of fiscal year-end? | ❑ Yes<br>❑ No, explanation attached | ❑ Yes<br>❑ No, explanation attached |
| Name of insurer . . . . . . . . . . . . . . . . . | | |
| Policy number . . . . . . . . . . . . . . . . . . | | |
| Amount of coverage . . . . . . . . . . . . . .$ | | |
| Amount of deductible . . . . . . . . . . . . .$ | | |
| Has this institution's coverage been changed or canceled after the fiscal year-end? | ❑ Yes, explanation attached<br>❑ No | ❑ Yes, explanation attached<br>❑ No |
| Has this institution filed any claims greater than $100,000 against the policy during the fiscal year? | ❑ Yes, explanation attached<br>❑ No | ❑ Yes, explanation attached<br>❑ No |
| Attach certificates of insurance for the above. | | |

**Section D: Principal & Interest and Escrow Custodial Accounts**

Provide the following information for the depository institution holding GMAC-RFC funds:

| | |
|---|---|
| Name of Depository: | |
| Address | |
| City, State, ZIP | |
| Principal & Interest account number: | Escrow account number: |

GMAC-RFC remittance deposits are insured by (check one)

❑ Federal Deposit Insurance Corporation (FDIC) (BIF)

❑ Federal Home Loan Bank

❑ Federal Deposit Insurance Corporation (FDIC) (SAIF)

❑ National Credit Union Share Insurance Fund (NCUSIF)

Provide copies of signature cards evidencing account designations and the most recent bank statements for all P & I and Escrow Custodial Accounts.

**Section E. Signature**

The information contained in this Annual Client/Servicer Certification report (including the compliance statement, the auditor's statement, and all attachments) is true to the best of my knowledge and belief. I understand that any misrepresentation constitutes cause for suspension or disqualification to sell to and/or service mortgages for GMAC-RFC, and may be cause for GMAC-RFC to exercise any other remedies available.

| Signature of Client/Servicer's Chief Executive Officer or Chief Financial Officer | Date |
|---|---|
| Name (typed or printed) | Telephone Number |
| Title (typed or printed) | |

The Annual Client/Servicer Certification report must be completed as of the fiscal year-end for each institution to maintain approval as a GMAC-RFC Client/Servicer. The complete report must be submitted within 90 days after the institution's fiscal year-end to GMAC-RFC Compliance, Servicer Management Department in Burbank.

# List of Transfer of Servicing Items 2201

**The following is a list of items to be compiled by the Transferor and provided to the Transferee as of the date of the transfer.**

1. A trial balance compiled as of the close of business on the last Business Day of the month in which the transfer occurs, including escrows, prepayments and delinquencies.

2. A complete payment history showing all transactions affecting each Loan from inception to date of transfer.

3. The individual Loan files of the Loans to be transferred, containing all documents required to be held by Servicer, as specified in the Servicer Guide.

4. All collections comments, tax cards, ledger records, legal documents, correspondence, forms, reports, and results of conversations relating to the Loans to be transferred.

5. All hazard insurance policies, if applicable, and a hazard insurance expiration list.

6. Mortgage insurance information to enable the Servicer to notify the mortgage insurance company of the new Servicer, if appropriate.

7. An expiration listing for all flood insurance.

8. A listing of Loans in foreclosure and/or bankruptcy proceedings.

9. A listing of any Loans having [Life/A&H] insurance included in the monthly payments.

10. A copy of the last bank reconciliation on each custodial account (the bank should be advised of the cutoff date and requested to prepare a bank statement). Final settlement of custodial funds must be made on the transfer date from the Transferor to the Transferee.

11. A listing of all outstanding escrow advances.

12. All documentation necessary to enable the Servicer to comply with GMAC-RFC accounting and servicing reporting and remittance requirements in a timely and accurate fashion.

13. Any other documentation relevant to the transfer.

# Agreement for Transfer of Servicing 2202

| | Effective date of transfer |
|---|---|
| Client/Servicer ID number | Client/Servicer ID number |
| Servicer (Transferor) | Servicer (Transferee) |
| Address | Address |
| City State Zip | City State Zip |
| Contact name | Contact name |
| Telephone | Telephone |

The attached **Sale of Servicing Pre Edit Loan Movement Report** reflects the Loans for which the servicing is to be transferred in accordance with the Sale or Transfer of Servicing Section in the GMAC-RFC Servicer Guide (collectively, the Subject Loans). Transferor requests that GMAC-RFC approve the transfer of servicing of the Subject Loans to the above named Transferee, which is duly authorized to service mortgages for GMAC-RFC.

Transferor covenants and agrees with GMAC-RFC that Transferor shall continue to be liable to GMAC-RFC for any and all representations, covenants, agreements and warranties heretofore made by Transferor in favor of GMAC-RFC that relate to or otherwise affect any of the Subject Loans.

Transferee covenants and agrees with GMAC-RFC that Transferee (i) shall assume and be jointly and severally liable with Transferor for the making and performance of all selling and servicing representations, covenants, agreements and warranties heretofore made by Transferor in favor of GMAC-RFC pursuant to the Client/Servicer Contract between GMAC-RFC and the Transferor, and the GMAC-RFC Client and Servicer Guides incorporated therein by reference, as amended, supplemented, restated or otherwise modified from time to time, that relate to or otherwise affect any of the Subject Loans and (ii) shall assume and be solely liable for the making and performance of all present and future servicing representations, covenants, agreements and warranties that relate to or otherwise affect any of the Subject Loans.

If the entity that sold any of the Subject Loans to GMAC-RFC (the “Client”) was not Transferor, Transferee covenants and agrees with GMAC-RFC that Transferee shall assume and be jointly and severally liable with the Client for the making and performance of all representations, covenants, agreements and warranties made by the Client pursuant to the Client/Servicer Contract between GMAC-RFC and the Client, and the GMAC-RFC Client Guide incorporated therein by reference, as amended, supplemented, restated or otherwise modified from time to time, that relate to or otherwise affect any of the Subject Loans.

Transferor and Transferee further acknowledge and warrant that they are in compliance with all documents, files and notice requirements and all other records necessary for the discharge of their servicing obligations including, but not limited to, items contained on the List of Transfer of Servicing Items (GMAC-RFC Form 2201).

| | |
|---|---|
| Transferor | Transferee |
| By Date | By Date |
| Signature of authorized representative | Signature of authorized representative |

## Acknowledgment and Acceptance by GMAC-RFC

| | |
|---|---|
| By | Date |
| Signature | Typed name & title |

# Servicing Agent Certification 2203

The undersigned Client/Servicer hereby designates the Servicing Agent named below to carry out the Client/Servicer's servicing obligations to GMAC-RFC, subject to the written approval of GMAC-RFC. The Client/Servicer has carefully reviewed the procedures and methods of operation of the Servicing Agent for compliance with GMAC-RFC requirements and has determined that said Servicing Agent has demonstrated the ability to perform servicing satisfactorily in accordance with such requirements, including servicing an existing portfolio of loans of the same type as the loans to be serviced for GMAC-RFC. The Servicing Agent agrees to comply with all GMAC-RFC requirements as listed in the GMAC-RFC Servicer Guide, and will perform servicing in accordance with such requirements. The Client/Servicer fully understands that the use of the Servicing Agent to perform any servicing function does not in any way relieve the Client/Servicer of its full responsibilities to GMAC-RFC under the terms of the Client/Servicer Contract, and that GMAC-RFC will look solely to the Client/Servicer for compliance with GMAC-RFC warranty requirements and servicing requirements. The Client/Servicer assumes full responsibility for all actions of the Servicing Agent in connection with the Servicing Agent's servicing of any loans for GMAC-RFC on behalf of the Client/Servicer and indemnifies GMAC-RFC for any loss, damage, or expense incurred by GMAC-RFC due to bankruptcy, insolvency, misconduct, or improper servicing of the Client/Servicer's Servicing agent, or the Servicing Agent's failure to comply with GMAC-RFC servicing requirements.

Client/Servicer name

Client/Servicer ID number

Authorized signature

Date signed

Typed name

Title

Servicing Agent name

Client/Servicer ID number (Servicing Agent)

Address

GMAC-RFC Approval

By

Title

Date

# Servicing Agent Certification for Client and Servicing Agent 2203C

(For use when Client is not a Servicer)

The undersigned Client hereby designates the Servicing Agent named below to carry out the Client's servicing obligations to GMAC-RFC, subject to the written approval of GMAC-RFC. The Client and Servicing Agent have carefully reviewed the procedures and methods of operation of the Servicing Agent for compliance with GMAC-RFC requirements and have determined that said Servicing Agent has demonstrated the ability to perform servicing satisfactorily in accordance with such requirements, including servicing an existing portfolio of loans of the same type as the loans to be serviced for GMAC-RFC. The Servicing Agent agrees to comply with all GMAC-RFC requirements as listed in the GMAC-RFC Servicer Guide, and will perform servicing in accordance with such requirements. The Client fully understands that the use of the Servicing Agent to perform any servicing function does not in any way relieve the Client of its full responsibilities to GMAC-RFC under the terms of the Client Contract, and that GMAC-RFC will look either to the Client or the Servicing Agent, or both, for compliance with GMAC-RFC warranty requirements and servicing requirements. The Client assumes full responsibility for all actions of the Servicing Agent in connection with the Servicing Agent's servicing of any loans for GMAC-RFC on behalf of the Client and indemnifies GMAC-RFC for any loss, damage, or expense incurred by GMAC-RFC due to bankruptcy, insolvency, misconduct, or improper servicing of the Client's Servicing Agent, or the Servicing Agent's failure to comply with GMAC-RFC requirements.

Client/Servicer name ____________________ Client/Servicer ID number ____________________

Authorized signature ____________________ Date ____________________

Typed name ____________________ Title ____________________

Servicing Agent name ____________________ Client/Servicer ID number ____________________

Authorized signature ____________________ Date ____________________

Typed name ____________________ Title ____________________

GMAC-RFC Approval

By ____________________

Title ____________________

Date ____________________

# Servicer Back-up Certification 2203D

This Servicer Back-up Certification is for the Calendar year: _______________

The undersigned Servicer hereby certifies that:

1. Based on the undersigned Client/Servicer's knowledge, the information provided to GMAC-RFC pursuant to the Servicer Guide during the calendar year entered above with respect to the Loans serviced by the undersigned Client/Servicer, is accurate and complete in all material respects as of the last day of such year.

2. Based on the undersigned Client/Servicer's knowledge, all information required to be provided to GMAC-RFC by the undersigned Client/Servicer pursuant to the Servicer Guide has been provided as required.

3. The undersigned Client/Servicer has fulfilled its obligations as required by the Servicer Guide, except as disclosed in the attached explanation.

4. The undersigned Client/Servicer has disclosed to its independent auditor any deficiencies relating to, and the independent auditor issued a report on the Client/Servicer's compliance with the requirements of:
   - ❑ The Uniform Single Attestation Program for Mortgage Bankers
   - ❑ Item 1122 of Regulation AB

______________________________ Client/Servicer name

______________________________ Federal Tax ID number

______________________________ Authorized signature

______________________________ Date signed

______________________________ Typed name

______________________________ Title

# Document Services Form

| Client/Servicer ID number | GMAC-RFC Loan # |
|---|---|
| Client/Servicer Name | Client/Servicer Loan # |
| | Borrower name |
| Fax Number | Attention |

## Request for Execution of the attached document(s) regarding:

❑ Loan paid in full

❑ ARM conversion/modification

❑ Other: ______________________________

❑ Pending foreclosure, original document states (list states)______________________________

❑ Pending foreclosure, copy states (list all states not listed above)______________________________

Note: Requests for execution of documents relating to Loans in Foreclosure are to be directed to the GMAC-RFC Servicer Management Department in Burbank.

**Notice of ARM Conversion Repurchase** (Submit no fewer than 15 calendar days prior to ARM conversion date.)

❑ ARM Conversion date ___/___/___(effective date of fixed interest rate)

Note: The Payoff / Liquidation Report (GMAC-RFC Form 2308) and wire transfer of funds are to be sent to the GMAC-RFC Loan Accounting Department in Burbank no later than the last Business Day prior to the ARM Conversion Date.

❑ Pending foreclosure, document copies needed

____All documents ____Security Instrument ____Final ASM

____Note ____Interim ASM ____Other

______________________________
Date

______________________________
Servicer Contact Name

______________________________
Servicer Contact Telephone Number

**Submit this form together with any documents to:**

GMAC-RFC
One Meridian Crossing, Suite 100
Minneapolis, MN 55343
SDG/Release, MC 03-03-30

*If more than 10 pages of copies are needed, the copies will be returned via Federal Express

# Servicer Compliance Statement (Item 1123)

RE: The issuing entities listed on Exhibit A hereto (each, an "Issuing Entity")

The undersigned, a duly authorized officer of ______________________________________________,

as servicer (the "Servicer") pursuant to the applicable servicing agreement, does hereby certify that:

1. A review of the Servicer's activities during the period covered by each relevant Issuing Entity's report on Form 10-K and of the Servicer's performance under the applicable servicing agreement has been made under my supervision.
2. To the best of my knowledge, based on such review, the Servicer has fulfilled all of its obligations under the applicable servicing agreement in all material respects throughout such period.

IN WITNESS WHEREOF, the undersigned has duly executed this __________________ day of

___________________________, 20_____________.

By:_______________________________________________________________________________

(Name/Title)

# ACH Debit Authorization 2300

Date: ______________________

To Bank: ______________________

Regarding: Account Name ______________________

Accounting Number ______________________

ACH Routing Number ______________________

**Client/Servicer name:** ______________________

**Client/Servicer ID number:** ______________________

This authorizes your bank to honor ACH debits initiated by GMAC-RFC against the account named above, for monthly principal and interest collections due in connection with all mortgage-backed security pools and/or whole loans for which the Client/Servicer is responsible.

It is understood that only the exact amount due GMAC-RFC shall be charged against this account. If there are any discrepancies in the amount debited from this account, they shall be promptly reported by you to GMAC-RFC. It is also understood that GMAC-RFC will immediately credit, in favor of this account, any amount that was debited over the amount required.

This authorization will remain in effect until a change of bank account is requested and approved by GMAC-RFC by the completion and execution of another ACH Debit Authorization, or until all mortgage-backed security pools and/or whole loans of the above named Client/Servicer have been terminated.

______________________
Authorized signature

______________________
Typed name and title

**Submit this form together with any documents to:**

GMAC-RFC
2255 North Ontario Street
Suite 400
Burbank, CA 91504

Attn.: Loan Accounting Department

# Custodial Account Authorization Form

2301

| ❑ New Account<br>❑ Change of Account Information | Client/Servicer Number:<br><br>OTS Docket Number: |
|---|---|
| Date ________/________/________ (MM/DD/YY) | FDIC Entity number: |
| | NCUA number: |
| | **Account Number:** |

TO: ________________________________________
Name of Depository Institution (and Branch)

________________________________________
Street

________________________________________
City, State, ZIP Code

You are hereby authorized and requested to establish a custodial account to contain funds representing payments of ❑ principal and interest, ❑ taxes and insurance escrow funds, ❑ buydown funds, received from the mortgagors in connection with mortgage Loans serviced for GMAC-RFC by the undersigned Servicer, with respect to such mortgage Loans. The custodial account shall be specifically designated:

"________________________________________ as agent, trustee and/or bailee for GMAC-RFC and/or various mortgagors
[Name of Servicer]
and/or various owners of interests in mortgage-backed securities."

All deposits made in the custodial account shall be subject to withdrawal therefrom upon demand, but only by the Servicer, or by GMAC-RFC. You also are authorized and instructed to pay GMAC-RFC at any time, without penalty, upon its written demand and without prior notice (which demand need not name a specific amount), the entire amount then in the custodial account or any portion thereof, and to comply with all agreements contained in the Certification of Agreement set forth below. Any such payment to GMAC-RFC must be made in immediately-available funds to the GMAC-RFC account specified by GMAC-RFC in writing.

Deposits now or hereafter placed appropriately in the custodial account are not, and will not be, the property or assets of the Servicer (or of the other servicing party, if any, referred to above). The Servicer is to act with respect to such deposits solely as a fiduciary, in the capacity or capacities shown in the foregoing designation of the custodial account. The handling, processing, and disposition of such deposits, as between GMAC-RFC and the party with whom it contracts for the servicing of the above-mentioned mortgage Loans, are governed by existing contract(s) between such parties and by the GMAC-RFC Client and Servicer Guides.

This letter and Certification of Agreement are submitted to you in original counterparts. Please acknowledge the existence of the custodial account, as described above, by executing each counterpart in the appropriate space provided below, and return all but one counterpart to the undersigned Servicer. An original executed counterpart will then be furnished to GMAC-RFC.

______________________________
Name of Servicer

______________________________
By

______________________________
Title

## Certification of Agreement

The undersigned depository institution certifies to GMAC-RFC that the custodial account identified above is in existence in this institution under account number ______________________________, and agrees with the party referred to above as the Servicer and with GMAC-RFC to honor instruments drawn on such account and to pay to GMAC-RFC all or any part of the amount on deposit in that account at any time in accordance with the applicable provisions of the above letter. In addition, this institution certifies to GMAC-RFC and such Servicer that the deposits in the above-identified custodial account are maintained at a Federal Home Loan Bank or are insured by the Bank Insurance Fund, the Savings Association Insurance Fund, or the National Credit Union Share Insurance Fund. This institution further agrees to disclose to GMAC-RFC, at any time upon its request, the deposit balance in the custodial account as of the time of disclosure.

______________________________
Name of Depository Institution

______________________________
By

______________________________
Title

______________________________
Date

______________________________
Telephone number

# Custodial Analysis – Principal and Interest (P & I) 2302

Report for (Month and Year): ________________
Client/Servicer Name ________________
Client/Servicer ID No. ________________

## Section I—Depository Reconciliation

**Line Number and Description Amount**

1. Depository Balance $________
2. Add Deposits in Transit $________
3. Less Outstanding Disbursements $________
4. Depository Adjustments
   A. *(plus)* $________
   B. *(minus)* $________
5. Adjusted Depository Balance $________
6. Less Cashbook Balance $________
7. Difference $________
   Provide explanation for difference:
   ________________
   ________________
   ________________
   ________________

## Section II—Composition of Cashback Balance

**Deposits in Transit (Line 2, Section I)**

**Scheduled / Scheduled**

1. Plus Prepaid Principal and Interest Installments $________
2. Plus Curtailments $________
3. Plus Curtailment Adjustment $________
4. Less Delinquent Interest and Principal $________
5. Less Servicing Fees due Servicer (if applicable) $________
6. Other (explain) $________
7. Total (must equal Line 6, Section I above) $________

**Actual / Actual**

1. Plus Principal $________
2. Plus Interest $________
3. Less Service Fee $________
4. Plus/Minus Other $________
5. Other (explain) $________
6. Total (must equal Line 6, Section I above) $________

## Section III—Explanation of Line Items in Section I

**1. Date Funds Received**

| Dates Funds Received | Dates Funds Deposited | Amount |
|---|---|---|
| ____/____/____ | ____/____/____ | $________ |
| ____/____/____ | ____/____/____ | $________ |
| ____/____/____ | ____/____/____ | $________ |
| ____/____/____ | ____/____/____ | $________ |
| ____/____/____ | ____/____/____ | $________ |

**2. Outstanding Disbursements (Line 3, Section I)**

| Date of Disbursement | Explanation of Adjustment | Amount |
|---|---|---|
| ____/____/____ | ________ | $________ |
| ____/____/____ | ________ | $________ |
| ____/____/____ | ________ | $________ |
| ____/____/____ | ________ | $________ |
| ____/____/____ | ________ | $________ |

**3. Depository Adjustments (Line 4, Section I)**

| Explanation of Adjustments | Amount |
|---|---|
| ______________________________________________________ | $________________________ |
| ______________________________________________________ | $________________________ |
| ______________________________________________________ | $________________________ |
| ______________________________________________________ | $________________________ |
| ______________________________________________________ | $________________________ |

| Lender name | Certified by | Title | Date |
|---|---|---|---|
| | | | |
| Name of Depository Institution and Account Number | | | |
| | | | |

# Custodial Analysis -- Principal and Interest (P&I) Instructions

**Report for (Month and Year)**
Enter the month and year of the reporting period.

**Client/Servicer ID Number**
The three-digit identification number assigned by GMAC-RFC.

**Client/Servicer Name**
The name of your institution. If you are a sub-servicer, include name of your institution and name of the institution for which you are reporting.

## SECTION I - DEPOSITORY RECONCILIATION

1. **Depository Balance**
   Enter the actual ending balance on the custodial account bank statement.
2. **Add Deposits in Transit**
   Enter the total of all deposits recorded in your cashbook as of the close of business at month-end, but which do not appear on the custodial account bank statement. Itemize all entries made to this Line in Section III.
3. **Less Outstanding Disbursements**
   Enter outstanding withdrawals that are not reflected in the custodial account balance. Itemize all entries in Section III.
4. **Depository Adjustments**
   Enter only those debit or credit adjustments that the depository made, but for which there is no correponding adjustment in the cashbook (i.e. deposit made in error, interest on the account, unrecovered funds, pre-payment penalties, etc.). Explain in detail all entries made on these lines in Section III.
5. **Adjusted Depository Balance**
   Enter the total of Line 1 plus Line 2, minus Line 3, plus or minus Line 4.
6. **Less Cashbook Balance**
   Enter your ending cashbook balance. This balance must be itemized as in Section II.
7. **Difference**
   Line 6 minus Line 7 should equal 0. If any difference, please explain.

## SECTION II - COMPOSITION OF CASHBOOK BALANCE

1. **Prepaid Principal and Interest Installments**
   Enter in the amount of any prepaid principal and interest collected prior to, or during, the reporting month.
2. **Curtailments**
   Enter the amount of any principal curtailments collected during the reporting month.
3. **Curtailment Adjustments**
   Enter in the adjustment calculated for curtailments.
4. **Delinquent Interest and Principal**
   Enter in the amount of delinquent principal and interest as a negative figure.
5. **Servicing Fees Due Servicer (if applicable)**
   If gross interest is being reported for numbers 1 and 4, service fees will need to be subtracted.
6. **Other**
7. **Total**
   Total of Lines 1 through 6. The results must equal Line 6 from Section I.

## SECTION III - EXPLANATION OF LINE ITEMS IN SECTION I

1. **Deposits in Transit (Section I, Line 2)**
   For each deposit in transit, enter the date you received the funds, the date the funds were deposited to the custodial account, and the amount of the deposit.
2. **Outstanding Disbursements (Section I, Line 3)**
   For each outstanding disbursement, enter the date, explanation and the amount of the disbursement.
3. **Depository Adjustments (Section I, Line 4)**
   Itemize and explain fully any and all depository adjustments that were necessary during the reporting period, showing whether they were debits or credits. Please note that any unrecovered funds will be indicated on Line B.

# Custodial Analysis – Taxes and Insurance (T & I)

Date: ________________
Client/Servicer Name ____________________
Client/Servicer ID No. ____________________

## Section I—Depository Reconciliation

**Line Number and Description Amount**

1. Depository Balance $__________
2. Add Deposits in Transit $__________
3. Less Outstanding Disbursements $__________
4. Depository Adjustments
   A. *(plus)* $__________
   B. *(minus)* $__________
5. Adjusted Depository Balance $__________
6. Adjusted Depository Balance (Carried over from Line 5) $__________
7. Less Cashbook Balance $__________
8. Difference $__________
   Provide explanation for difference:
   ____________________
   ____________________
   ____________________
   ____________________

## Section II—Composition of Cashback Balance

1. T & I $__________
2. Advance to Cover Drafts $__________
3. Unapplied Funds Pending Determination of Use $__________
4. Other (explain) $__________
5. Total (must equal Line 6, Section I above) $__________

## Section III—Explanation of Line Items in Section I

**1. Deposits in Transit (Line 2, Section I)**

| Dates Funds Received | Dates Funds Deposited | Amount |
|---|---|---|
| ____/____/____ | ____/____/____ | $__________ |
| ____/____/____ | ____/____/____ | $__________ |
| ____/____/____ | ____/____/____ | $__________ |
| ____/____/____ | ____/____/____ | $__________ |
| ____/____/____ | ____/____/____ | $__________ |

**2. Outstanding Disbursements (Line 3, Section I)**

| Date of Disbursement | Explanation of Adjustment | Amount |
|---|---|---|
| ____/____/____ | ____________ | $__________ |
| ____/____/____ | ____________ | $__________ |
| ____/____/____ | ____________ | $__________ |
| ____/____/____ | ____________ | $__________ |
| ____/____/____ | ____________ | $__________ |

**3. Depository Adjustments (Line 4, Section I)**

| Explanation of Adjustments | Amount |
|---|---|
| ____________________ | $__________ |
| ____________________ | $__________ |
| ____________________ | $__________ |
| ____________________ | $__________ |
| ____________________ | $__________ |

**4. Other (Line 4, Section II)**

| Explanation of Adjustments | Amount |
|---|---|
| ____________________________________________________ | $________________________ |
| ____________________________________________________ | $________________________ |
| ____________________________________________________ | $________________________ |
| ____________________________________________________ | $________________________ |
| ____________________________________________________ | $________________________ |

| Lender name | Certified by | Title | Date |
|---|---|---|---|
| Name of Depository Institution and Account Number | | | |

# Custodial Analysis -- Principal and Interest (P&I) Instructions

**Report for (Month and Year)**
Enter the month and year of the reporting period.

**Client/Servicer ID Number**
The three-digit identification number assigned by GMAC-RFC.

**Client/Servicer Name**
The name of your institution. If you are a sub-servicer, include name of your institution and name of the institution for which you are reporting.

## SECTION I - DEPOSITORY RECONCILIATION

1. **Depository Balance**
   Enter the actual ending balance on the custodial account bank statement.
2. **Add Deposits in Transit**
   Enter the total of all deposits recorded in your cashbook as of the close of business at month-end, but which do not appear on the custodial account bank statement. Itemize all entries made to this Line in Section III.
3. **Less Outstanding Disbursements**
   Enter outstanding withdrawals that are not reflected in the custodial account balance. Itemize all entries in Section III.
4. **Depository Adjustments**
   Enter only those debit or credit adjustments that the depository made, but for which there is no correponding adjustment in the cashbook (i.e. deposit made in error, interest on the account, unrecovered funds, pre-payment penalties, etc.). Explain in detail all entries made on these lines in Section III.
5. **Adjusted Depository Balance**
   Enter the total of Line 1 plus Line 2, minus Line 3, plus or minus Line 4.
6. **Adjusted Depository Balance**
   Copy the adjusted depository balance from Line 5.
7. **Less Cashbook Balance**
   Enter your ending cashbook balance. This balance must be itemized as in Section II.
8. **Difference**
   Line 6 minus Line 7 should equal 0. If any difference, please explain.

## SECTION II - COMPOSITION OF CASHBOOK BALANCE

1. **T & I Funds**
   Enter the month-end escrow trial balance amount for the T & I funds.
2. **Advance to Cover Overdrafts**
   Enter the month-end balance of advances you made to cover escrow account overdrafts.
3. **Unapplied Funds Pending Determination of Use**
   Enter the month-end balance of unapplied funds (partial payments, etc.) you are holding.
4. **Other**
   Enter the amount of any funds you are holding that do not fall into the previous categories. Provide an explanation for the funds reported this Line.
5. **Total**
   Total of Lines 1 through 4. The results must equal Line 7 from Section I.

## SECTION III - EXPLANATION OF LINE ITEMS IN SECTION I

1. **Deposits in Transit (Section I, Line 2)**
   For each deposit in transit, enter the date you received the funds, the date the funds were deposited to the custodial account, and the amount of the deposit.
2. **Outstanding Disbursements (Section I, Line 3)**
   For each outstanding disbursement, enter the date, explanation and the amount of the disbursement.
3. **Depository Adjustments (Section I, Line 4)**
   Itemize and explain fully any and all depository adjustments that were necessary during the reporting period, showing whether they were debits or credits. Please note that any unrecovered funds will be indicated on Line B.

# Request for Loan Service Approval

| Client/Servicer ID Number | Borrower Name |
|---|---|
| Client/Servicer Name | Property Address |
| Client/Servicer Address | City, State, ZIP Code |
| Client/Servicer Loan Number | GMAC-RFC Loan Number |
| Last Paid Installment | Unpaid Principal Balance |
| Percent of Mortgage Insurance Coverage | Name of Mortgage Insurance Company |

REASON FOR DEFAULT:

1. Death in Borrower's Family
2. Illness in Borrower's Family
3. Marital Difficulties
4. Unemployed/Temp. Loss of Income
5. Excessive Use of Credit
6. Bankruptcy
7. Abandonment of Property
8. Utility/Energy Costs
9. Curtailment of Income
10. NSF Check
11. Payment Adj. (Payment Shock)
12. Dissatisfaction with Property
13. Natural Disaster
14. Fire or Property Loss
15. Due on Transfer
16. Assumption/Payoff Pending
17. Fraud
18. Unable to Contact
19. Decline in Property Value
20. Other: See reverse for instructions

Enter Number Code Applicable to the Primary Reason for Default: ____________ Breach Letter Expiration Date: ____/____/___

Date of Most Recent Personal Contact with Borrower(s): ____/____/____

PROPERTY DATA:

Date Last Inspected: ____/____/____

| | | | | | |
|---|---|---|---|---|---|
| Condition (check one) | 1. ❑ Excellent | 2. ❑ Good | 3. ❑ Fair | 4. ❑ Poor | 5. ❑ Maintenance Required |
| Occupancy (check one) | 1. ❑ Vacant Secured | 2. ❑ Vacant Unsecured | 3. ❑ Mortgagor | 4. ❑ Tenant | 5. ❑ Unknown Occupant |

RECOMMENDATION:

A. Liquidation (repayment) plan over six months
B. Foreclosure
C. Special Forbearance
D. Deed--in--Lieu
E. Modification
F. Short Payoff (attach documents)
G. Other (explain)

Enter Letter Code Applicable to Recommended Action: _____________

Estimated Attorney/Trustee Fee (if any) $ ________________________

Background Information to Fully Support Recommendation (attach separate sheet for additional comments):

Prepared By

Date Prepared

Telephone Number

FAX Number

Authorized Signature

Typed Name and Title

Telephone Number

FAX Number

For GMAC-RFC Use Only

Date:________________________ Signature: _____________________________ Name: ___________________________

FAX Number: ____________________

# Request for Loan Service Approval
## Instructions

1. Complete all information required to support the Request for Loan Service Approval.
2. Request for approval may be submitted at any time during the month.
3. Last Paid Installment -- The date interest is paid to, not the date the payment was applied, nor the due date of the next regularly scheduled installment.
4. If Loan Documents are required to bring the recommended action, or if documents must be executed by GMAC-RFC or its designee, submit the request by using the Multipurpose Loan Service Report (GMAC-RFC Form 2401) and attach the form, together with other documents prepared for execution, to this Request for Loan Service Approval Form.
5. Include copy of most recent property inspection.
6. Include copies of the past 12 months' payment and collection histories for supporting documentation.

Please refer to the Servicer Guide for specific requirements.

# Multipurpose Loan Service Report

2401

## A. Client/Servicer Data

| Client/Servicer Name | Client/Servicer ID Number |
|---|---|
| Client/Servicer Mailing Address | City, State, ZIP Code |

## B. Loan Data

| GMAC-RFC Loan Number | |
|---|---|
| Client/Servicer Loan Number | Borrower Name |
| Property Address | City, State, ZIP Code |

## C. Reason for Transmittal

Check appropriate box and explain situation in detail in Section D below. If needed, attach separate sheet for additional comments.

- ❑ Execution of attached document(s)
- ❑ Transfer of ownership/assumption — Payoff Date (if applicable) _____/_____/_____
- ❑ Partial release
- ❑ Exercise of eminent domain
- ❑ Reinstatement ❑ Full ❑ Partial — Reinstatement date ____/_____/_____ Due date of last paid installment _____/_____/_____
- ❑ Repurchase
- ❑ Exercise of easement rights
- ❑ Insurance loss
- ❑ Property seizure
- ❑ Other

## D. Client/Servicer Explanation

______________________________

______________________________

______________________________

Prepared by ______________________ Authorized signature ______________________

Date prepared ______________________ Typed name & title ______________________

Telephone number ______________________ Telephone number ______________________

Send To:
GMAC-RFC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120

## GMAC-RFC Reply (if any):

Date: ______________ Signature ______________________________ Name ______________________________

## Multipurpose Loan Service Report

## Instructions

This is a general purpose transmittal report used for many different reasons and may be submitted with other GMAC-RFC reports.

1. Servicer Explanation (if necessary). In this area note specific information the Servicer desires to convey to GMAC-RFC.

2. GMAC-RFC reply (if any). In this area, GMAC-RFC will acknowledge receipt of any previously released documents being returned to the custody of GMAC-RFC or answer any servicing questions. A copy of this form will be returned to the Servicer as necessary.

3. If foreclosure or deed-in-lieu of foreclosure is the recommended action, submit this form at the same time a Request for Loan Service Approval (GMAC-RFC Form 2400) is submitted. This will avoid unnecessary delays in starting the recommended action.

4. Whenever "Other" box is checked, explain fully.

5. Ensure that appropriate boxes are checked.

6. Submit two copies of this form if acknowledgment or response by GMAC-RFC is required.

# Acceptable Primary Mortgage Insurers 2402

**CUNA Mutual Group (CMG)**
PO Box 630046
Dallas, TX 75263-0046

**Genworth Financial, Inc.**
6620 W Broad St.
Richmond, VA 23230

**Mortgage Guaranty Insurance Corporation (MGIC)**
MGIC Plaza
270 East Kilbourne Avenue
Milwaukee, Wisconsin 53202

**The PMI Group, Inc.**
PMI Plaza
3003 Oak Road
Walnut Creek, CA 94597-2098

**Radian Guaranty Inc.**
1601 Market Street, 12th Floor
Philadelphia, Pennsylvania 19103

**Republic Mortgage Insurance Company (RMIC)**
190 Oak Plaza
Winston-Salem, North Carolina 27105

**United Guaranty Residential Insurance Company (UGRIC)**
230 North Elm Street
P.O. Box 21367
Greensboro, North Carolina 27401

**Triad Guaranty Insurance Corp.**
101 S. Stratford Road
Winston-Salem, North Carolina 27104

# 1 - 4 Family Property Servicing Inspection Report

2403

Reason for Inspection: ❑ Delinquency ❑ Foreclosure ❑ REO ❑ Other (explain) ________________

______________________________

| Client/Servicer ID Number | Borrower Name |
|---|---|
| Client/Servicer Name | Property Address |
| Client/Servicer Address | City, State, ZIP Code |
| Client/Servicer Loan Number | GMAC-RFC Loan Number |

## Section A

Property Occupied by

❑ Owner ❑ Tenant ❑ Vacant

❑ Other Occupant (explain in Section F) ❑ Abandoned

| If property occupied by a tenant, tenant name | Monthly rent |
|---|---|
| Rent paid to whom? | Term of lease |

## Section B

Is property listed for sale? ❑ No ❑ Yes If yes, listed with whom?

## Section C

| Is property vacant or abandoned? ❑ Yes ❑ No If yes, continue: | | Is house locked and secured? ❑ Yes ❑ No |
|---|---|---|
| Is house winterized? ❑ Yes ❑ No | Do you have keys to house? ❑ Yes ❑ No | Is there personal property in the house? ❑ Yes ❑ No |

## Section D

Condition of interior ❑ Good ❑ Fair ❑ Poor ❑ Not Applicable

Condition of exterior ❑ Good ❑ Fair ❑ Poor

If "fair" or "poor" condition, explain:__________________________________________________________

__________________________________________________________________________________

Repairs needed to interior (attach list if necessary): __________________________________ ❑ Not Applicable

Repairs needed to exterior (attach list if necessary):__________________________________________

| Are repairs completed? ❑ Yes ❑ No | Are photographs attached? ❑ Yes ❑ No |
|---|---|

## Section E

Person interviewed on-site and relationship to Borrower:____________________________________

Summary of findings from on-site interview (including, if applicable, reason for delinquency and Borrower's intentions, whereabouts, and home and work telephone numbers):____________________________________

Summary of instructions left for Borrower:____________________________ ☐ Not Applicable

## Section F

Comments and/or recommendations:____________________________________

| Name of Inspection Company | | ☐ Not Applicable |
|---|---|---|
| Inspector name | Name of contact person at Servicer's office | Date of report |
| Inspector signature | Telephone number of contact person at Servicer's office | Date of this inspection |
| Dates of previous inspections | | |

## 1 - 4 Family Property Servicing Inspection Report Instructions

This form must be completed to report the results of each of the following property inspections required by GMAC-RFC.

1. Before the 60th day of delinquency, if attempts to contact the Borrower or reach a repayment agreement with the Borrower have failed, or if the Borrower has not complied with such an agreement;
2. Every month following the above inspection until satisfactory repayment arrangements have been made or the delinquency has been cured;
3. Before consenting to a special forbearance relief agreement and at least every 60 days thereafter until the delinquency has been cured;
4. Within 30 days before recommending foreclosure, on Request for Loan Service Approval (GMAC-RFC Form 2400) and at least monthly while the mortgage is in process of foreclosure;
5. At least monthly following acquisition of title and until REO is sold; and
6. Upon learning that the Mortgaged Premises have been abandoned or are in a state of deterioration, waste, or disrepair.

The report must be maintained in the applicable mortgage or REO file for review when requested by GMAC-RFC. This GMAC-RFC Form 2403 must be submitted to GMAC-RFC:

1. With a recommendation to foreclose Request for Loan Service Approval (GMAC-RFC Form 2400); or
2. Within five Business Days of the inspection and with appropriate recommendations anytime “abandoned” is noted in section A or “poor” condition is noted in section D.

All applicable sections of this GMAC-RFC Form 2403 must be completed. If more space is needed for response, attach additional sheets of paper.

Photographs must be attached to show the following:

1. The conditions leading to a report of “poor condition”, or
2. “Before repairs” and “after repairs” conditions when the report indicates that repairs are needed and, if applicable, completed.

If the inspection is to be performed by a vendor, the Servicer must issue appropriate instructions to the inspection company, especially in delinquency-related inspections, when the inspector is required to attempt to interview the Borrower.

In lieu of this GMAC-RFC Form 2403, the Servicer may use its own form or the form of the inspection company performing the inspection, including a computer-generated form, provided the form allows the Servicer to record and report at least the information requested on this GMAC-RFC Form 2403.

| State | Judicial Atty Fee | Nonjud Atty Fee | BK Atty Fee | | Eviction Atty Fee | DIL Atty Fee | Title / Lit Policy | Appraisal Fee | BPO | AVM | Credit Report |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Chapter 7 | Chapter 13 | | | | | | | |
| AK | - | 1,200 | 650 | 800 | 500 | 250 | Actual | 400 | 130 | 40 | 55 |
| AL | - | 550 | 650 | 800 | 350 | 300 | Actual | 385 | 130 | 40 | 55 |
| AR | 750 | 600 | 650 | 800 | 250 | 250 | Actual | 385 | 130 | 40 | 55 |
| AZ | 750 | 625 | 650 | 800 | 350 | 200 | Actual | 350 | 130 | 40 | 55 |
| CA | - | 600 | 650 | 800 | 350 | 250 | Actual | 450 | 130 | 40 | 55 |
| CO | 600 | 800 | 650 | 800 | 400 | 225 | Actual | 385 | 130 | 40 | 55 |
| CT | 1450 | 750 | 650 | 800 | 350 | 275 | Actual | 450 | 130 | 40 | 55 |
| DC | - | 750 | 650 | 800 | 350 | 300 | Actual | 400 | 130 | 40 | 55 |
| DE | 950 | - | 650 | 800 | 425 | 275 | Actual | 385 | 130 | 40 | 55 |
| FL | 1200 | - | 650 | 800 | 350 | 300 | Actual | 385 | 130 | 40 | 55 |
| GA | - | 600 | 650 | 800 | 400 | 300 | Actual | 385 | 130 | 40 | 55 |
| GU | - | 1,200 | 650 | 800 | 350 | 250 | Actual | 385 | 130 | 40 | 55 |
| HI | 1000 | 1200 | 650 | 800 | 500 | 250 | Actual | 450 | 130 | 40 | 55 |
| IA | 850 | 550 | 650 | 800 | 300 | 250 | Actual | 385 | 130 | 40 | 55 |
| ID | - | 600 | 650 | 800 | 350 | 250 | Actual | 500 | 130 | 40 | 55 |
| IL | 1100 | - | 650 | 800 | 300 | 250 | Actual | 375 | 130 | 40 | 55 |
| IN | 1000 | - | 650 | 800 | 350 | 250 | Actual | 385 | 130 | 40 | 55 |
| KS | 850 | - | 650 | 800 | 350 | 200 | Actual | 350 | 130 | 40 | 55 |
| KY | 1100 | - | 650 | 800 | 400 | 300 | Actual | 385 | 130 | 40 | 55 |
| LA | 900 | - | 650 | 800 | 500 | 200 | Actual | 385 | 130 | 40 | 55 |
| MA | 1250 | - | 650 | 800 | 700 | 275 | Actual | 385 | 130 | 40 | 55 |
| MD | - | 800 | 650 | 800 | 400 | 300 | Actual | 450 | 130 | 40 | 55 |
| ME | 1,500 | - | 650 | 800 | 500 | 275 | Actual | 385 | 130 | 40 | 55 |
| MI | 650 | 650 | 650 | 800 | 300 | 250 | Actual | 500 | 130 | 40 | 55 |
| MN | 800 | 650 | 650 | 800 | 300 | 250 | Actual | 385 | 130 | 40 | 55 |
| MO | 600 | 650 | 650 | 800 | 350 | 200 | Actual | 385 | 130 | 40 | 55 |
| MS | - | 550 | 650 | 800 | 350 | 300 | Actual | 385 | 130 | 40 | 55 |
| MT | - | 600 | 650 | 800 | 400 | 250 | Actual | 550 | 130 | 40 | 55 |
| NC | - | 550 | 650 | 800 | 350 | 300 | Actual | 350 | 130 | 40 | 55 |
| ND | 900 | – | 650 | 800 | 350 | 250 | Actual | 385 | 130 | 40 | 55 |
| NE | 850 | 600 | 650 | 800 | 300 | 250 | Actual | 385 | 130 | 40 | 55 |

Prior written approval is required from GMAC-RFC before incurring expenses that exceed these guidelines.

GMAC-RFC will accept requests for reimbursement to Servicers, without the need of prior approval, the amounts that are shown in the most recent Agency Guide release/update for reimbursable Servicer expenses by Fannie Mae or Freddie Mac. When requesting reimbursement of expenses, the Servicer must indicate the Agency (Freddie Mac) or (Fannie Mae) guideline used on the expense line item for the individual line item that exceeds the allowable amount published within this form.

GMAC-RFC will allow reimbursement to a maximum of $300 for title curative work performed by the Servicer’s foreclosure attorney. This reimbursement is applicable only to Loans that are servicing released.

| State | Judicial Atty Fee | Nonjud Atty Fee | BK Atty Fee | | Eviction Atty Fee | DIL Atty Fee | Title / Lit Policy | Appraisal Fee | BPO | AVM | Credit Report |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Chapter 7 | Chapter 13 | | | | | | | |
| NH | - | 900 | 650 | 800 | 400 | 275 | Actual | 400 | 130 | 40 | 55 |
| NJ | 1300 | – | 650 | 800 | 350 | 275 | Actual | 450 | 130 | 40 | 55 |
| NM | 900 | – | 650 | 800 | 350 | 200 | Actual | 450 | 130 | 40 | 55 |
| NV | - | 600 | 650 | 800 | 650 | 250 | Actual | 350 | 130 | 40 | 55 |
| NY | 1250 | 800 | 650 | 800 | 700 | 275 | Actual | 350 | 130 | 40 | 55 |
| OH | 1100 | – | 650 | 800 | 600 | 250 | Actual | 600 | 130 | 40 | 55 |
| OK | 900 | – | 650 | 800 | 300 | 200 | Actual | 385 | 130 | 40 | 55 |
| OR | - | 675 | 650 | 800 | 500 | 250 | Actual | 500 | 130 | 40 | 55 |
| PA | 1250 | – | 650 | 800 | 400 | 275 | Actual | 385 | 130 | 40 | 55 |
| PR | 1100 | – | 650 | 800 | 300 | 275 | Actual | 385 | 130 | 40 | 55 |
| RI | - | 900 | 650 | 800 | 500 | 275 | Actual | 385 | 130 | 40 | 55 |
| SC | 800 | – | 650 | 800 | 350 | 300 | Actual | 450 | 130 | 40 | 55 |
| SD | 850 | 550 | 650 | 800 | 350 | 250 | Actual | 385 | 130 | 40 | 55 |
| TN | - | 550 | 650 | 800 | 350 | 300 | Actual | 385 | 130 | 40 | 55 |
| TX | - | 550 | 650 | 800 | 350 | 200 | Actual | 450 | 130 | 40 | 55 |
| UT | 550 | 600 | 650 | 800 | 350 | 225 | Actual | 350 | 130 | 40 | 55 |
| VA | - | 600 | 650 | 800 | 350 | 300 | Actual | 400 | 130 | 40 | 55 |
| VI | 1100 | – | 650 | 800 | 275 | 275 | Actual | 385 | 130 | 40 | 55 |
| VT | 950 | – | 650 | 800 | 350 | 275 | Actual | 385 | 130 | 40 | 55 |
| WA | - | 675 | 650 | 800 | 400 | 250 | Actual | 550 | 130 | 40 | 55 |
| WI | 1100 | 500 | 650 | 800 | 300 | 250 | Actual | 385 | 130 | 40 | 55 |
| WV | - | 550 | 650 | 800 | 350 | 300 | Actual | 385 | 130 | 40 | 55 |
| WY | - | 700 | 650 | 800 | 500 | 250 | Actual | 385 | 130 | 40 | 55 |

Prior written approval is required from GMAC-RFC before incurring expenses that exceed these guidelines.

GMAC-RFC will accept requests for reimbursement to Servicers, without the need of prior approval, the amounts that are shown in the most recent Agency Guide release/update for reimbursable Servicer expenses by Fannie Mae or Freddie Mac. When requesting reimbursement of expenses, the Servicer must indicate the Agency (Freddie Mac) or (Fannie Mae) guideline used on the expense line item for the individual line item that exceeds the allowable amount published within this form.

GMAC-RFC will allow reimbursement to a maximum of $300 for title curative work performed by the Servicer's foreclosure attorney. This reimbursement is applicable only to Loans that are servicing released.

## Preservation and Maintenance Fees

| Re-keying (per door) | $60 |
|---|---|
| Boarding | $600 |
| Property cleaning (initial) | $300 |
| Trash removal (per unit) | $500 |
| Initial yard maintenance | $300 |
| Yard maintenance (weekly) | $40 |
| Winterization | $250 |
| De-winterization | $100 |
| Pool & Spa securing (one-time) | $400 |
| Monthly pool service | $75 |
| Snow removal (per occurrence) | $75 |
| Home inspection (Loan mods only) | $250 |
| Foreclosure advertising - posting (CA only) | $95 |
| Foreclosure advertising - publication (CA only) | $235 |

Prior written approval is required from GMAC-RFC before incurring expenses that exceed these guidelines.

GMAC-RFC will accept requests for reimbursement to Servicers, without the need of prior approval, the amounts that are shown in the most recent Agency Guide release/update for reimbursable Servicer expenses by Fannie Mae or Freddie Mac. When requesting reimbursement of expenses, the Servicer must indicate the Agency (Freddie Mac) or (Fannie Mae) guideline used on the expense line item for the individual line item that exceeds the allowable amount published within this form.

# Multipurpose Fax Transmittal

## Notification of Foreclosure Sale and Acquisition

Notification of foreclosure sale and expiration of any applicable redemption period are to be provided no later than the business day immediately following the date of both the sale and the expiration of the redemption period. Please fax completed Multipurpose Fax Transmittal to the GMAC-RFC Servicing Management Department in Burbank, fax number (818) 260-1810.

## Notification of Settlement Proceeds Wire

This form must be faxed to GMAC-RFC as notification on the same day that funds are wired relative to the settlement of: *(check one)*

- ❑ Short Payoff Settlement Transaction
- ❑ Mortgage Insurer Settlement Transaction

This fax serves as: *(check one)*

- ❑ Notification of Foreclosure Sale
- ❑ Notification of expiration of the redemption period and acquisition of title
- ❑ Notification of Settlement proceeds wire

## Loan Information

| GMAC-RFC Loan number | Servicer Loan number |
|---|---|
| Due date of last paid installment | Unpaid principal balance |
| Foreclosure sale date | Projected redemption/confirmation date, if applicable. |
| Bid amount | Occupancy status |
| Successful bidder | Wire ID number |

## Borrower Information

| Borrower(s) name(s) | Property address |
|---|---|
| IRS and other lien amount(s), if applicable | Settlement amount |

## Mortgage Insurance Information

| Mortgage insurance company and address | |
|---|---|
| Percent of coverage | Certificate number |

## Tax Service Information

| Tax service company | Account number, if applicable |
|---|---|
| Address | |
| Name of Servicer's REO contact | Telephone number |

# Write-Off Evaluation

| Client/Servicer Name | Client/Servicer Loan # |
|---|---|
| Client/Servicer ID Number | GMAC-RFC Loan # |

This worksheet is used to support a recommendation not to pursue the foreclosure action on a mortgage Loan. When circumstances show that it would not be in the best economic interest of GMAC-RFC or its investors to foreclose its security interest on a real estate-secured Loan, the recommendation should also include whether litigation should be commenced against the Borrower(s) to enforce the provisions of the Note. Each decision must be supported by a brief narrative or calculation worksheet.

**I. Lack of Equity/Value**

A. Unpaid Principal Balance: $ ______________

B. Escrow/Impound Balance: $ ______________

C. Foreclosure Costs/Expenses: $ ______________

D. Cost to Cure Senior Encumbrances (Total 1--4 Below): $ ______________

1. Property Taxes $ ________________
2. Superior Liens $ ________________
3. Other (specify) ____________________ $ ________________
4. Other (specify) ____________________ $ ________________

E. Cost Incurred During REO Holding Period (Total 1--9 Below): $ ______________

1. Repair/Construction Cost $ ________________
2. Monthly Maintenance & Utilities $ ________________
3. Property Taxes $ ________________
4. Insurance $ ________________
5. Eviction/Cash for Keys $ ________________
6. Appraisal/BPO Fees $ ________________
7. Superior Lien Holder Payments $ ________________
8. Other (specify) ____________________ $ ________________
9. Other (specify) ____________________ $ ________________

F. Costs of Sale of REO (Total 1--5 Below): $ ______________

1. Commissions (6%) $ ________________
2. Closing Costs (3%) $ ________________
3. Superior Lienholder UPB $ ________________
4. Other (specify) ____________________ $ ________________
5. Other (specify) ____________________ $ ________________

**SUBTOTAL:** $______________

**SUBTOTAL (Brought Forward):** $ ______________

Fair Market Value ** REO Rep. Initials (      ) $ ______________

** Must be agreed upon with a representative of the REO Department.

## II. Other Considerations

I recommend that GMAC-RFC not pursue foreclosure on the Loan herein referenced based upon:

- ☐ Legal Problems (explain and attach supporting documentation)

- ☐ Environmental Problems (explain and attach supporting documentation)

- ☐ Other (explain and attach supporting documentation)

**RECOMMENDATION:**

☐ Based upon the Gain/Loss or Other Considerations evaluation, I recommend GMAC-RFC NOT pursue foreclosure on the herein referenced Loan

______________________________ ______________________________

Loan Administrator/Loss Mitigation Representative Date

☐ I do ☐ I do not recommend pursuit of litigation against the Borrower(s) for the following reasons:

______________________________________________________________________

______________________________________________________________________

______________________________________________________________________

______________________________________________________________________

______________________________________________________________________

# Bankruptcy Status Report

| Client/Servicer ID Number | Date |
|---|---|
| Client/Servicer Name and Address | |
| GMAC-RFC Loan Number | Client/Servicer Loan Number |

Bankruptcy Chapter Code: __________ State: ________ Case No.: __________ County: __________ District: ____________

Last Contact with Borrower:_____/_____/_____ Date of Bankruptcy Notice:_____/_____/_____

Unpaid Principal Balance: $________________ Last Paid Installment: _____/_____/_____

Borrower Name: ____________________________________________________________________

Property Address: __________________________________________________________________

____________________________________________________________________

Date of Last Inspection: _____/_____/_____

## Property Condition (check one)

1. ___Excellent 2. ___Good 3. ___Fair 4. ___Poor 5. ___Maintenance Required

## Occupancy (check one)

1. ___Vacant Secured 2. ___Vacant Unsecured 3. ___Mortgagor 4. ___Tenant 5. ___Unknown Occupant

Date Petition Filed: _____/_____/_____

Date Proof Received: _____/_____/_____

Proof of Claim (POC) Filed: ❍ Yes ❍ No

Date Claim Filed: _____/_____/_____

Amount of Claim: $__________________________

Date of Bankruptcy Discharge: _____/_____/_____

Date Notified of Discharge: _____/_____/_____

Date Stay Lifted: _____/_____/_____

Date Notified:_____/_____/_____

Payment Plan: ❍ Yes ❍ No Current Status:__________________ (Current / Delinquent) Expiration Date: _____/_____/_____

Date of Last Payment: Pre-Petition _____/_____/_____ Post-Petition_____/_____/_____

Bankruptcy Proceeding: ❍ Yes ❍ No

Re-Start Foreclosure Date: _____/_____/_____

Date Loan Reinstated: _____/_____/_____

Comments:

Prepared By

Date Prepared

Telephone Number

Authorized Signature

Typed Name and Title

Telephone Number

# Bankruptcy Status Report
# Instructions

1. Definitions explanations:

   **Chapter Code:** The Bankruptcy Chapter Filed by the Borrower (e.g. Chapter 7, Chapter 11 or Chapter 13).

   **Case No.:** The number stamped or typed on document by the court which identifies the case.

   **State, County and District:** The state, county and district where bankruptcy is filed.

   **Date of Notice:** Date the Servicer is notified of the bankruptcy by either the Borrower or other means.

   **Date Petition Filed:** Date the petition was filed with the court.

   **Proof of Claim (POC) Filed:** A copy of the bankruptcy document or other official notification from court or lawyer.

   **Last Paid Installment:** The date interest is paid to, not the date the payment was applied nor the due date of the next regularly scheduled installment.

   **Comments:** Please provide any pertinent information which may affect the bankruptcy proceedings.

2. The first Bankruptcy Status Report on a Loan must be accompanied by a list of all lienholders and unpaid taxes, copies of petitions, notification, proof of claim and the Chapter 11 or 13 plan, if approved by the court.

- Reverse -

# Eviction Status Report

| Client/Servicer ID Number | As of month ending (month, year) | |
|---|---|---|
| Client/Servicer Name | GMAC-RFC Loan Number | Date REO Acquired |
| Client/Servicer Address | | Client/Servicer Loan Number |

## Property Data

| Property Address | Borrower Name |
|---|---|

## Eviction Status

| Attorney's Name (Handling Eviction) | Attorney's State Bar Number |
|---|---|
| Attorney's Firm Address | |

## Check Applicable Boxes

| | | | |
|---|---|---|---|
| Occupancy: | ❑ Mortgagor<br>❑ Rented | ❑ Tenant | ❑ Unknown occupant |
| Condition: | ❑ Excellent<br>❑ Good | ❑ Fair<br>❑ Poor | ❑ Maintenance required |

Date property last inspected _____/_____/_____

Date eviction commenced _____/_____/_____

Date eviction to be completed _____/_____/_____

Summarize below all actions taken by eviction attorney during the past 30 days, include all documentation regarding the eviction action.

❑ REO disposition documents attached to this report.

Prepared by

Date prepared

Authorized signature

Typed name and title

Telephone #

# Eviction Status Report
# Instructions

1. Submit this report each month until final Eviction/Action is completed and/or all claim proceeds have been remitted to GMAC-RFC.
2. This report must be prepared as of the last business day of each month.
3. This report must be received by GMAC-RFC by the eighth business day of each month, together with the Summary of Loans Serviced.

**Note:**

- Servicer shall determine the occupancy status of the property immediately upon acquisition.
- Servicer must inspect the REO property at least monthly.
- Servicer must comply with any pool or mortgage insurance requirements (e.g., notices, claims processing, etc.) to ensure coverage.
- Pool Insurance or Mortgage Insurance proceeds must be sent to GMAC-RFC by check within five business days after receipt.

Please refer to the Servicer Guide concerning the specific REO requirements.

# Statement of Foreclosure / REO Expenses

| Client/Servicer ID number | Borrower name |
|---|---|
| Client/Servicer name | Property address |
| Client/Servicer address | GMAC-RFC Loan number |
| Client/Servicer Loan number | MIN (if applicable) |
| Name of mortgage insurer | Mortgage insurance claim number |

**Check the applicable boxes below:**

❑ Pre-Acquisition ❑ Post-Acquisition ❑ Supplemental ❑ Short Sale (SPO) ❑ Write-Off ❑ Third Party Sale

Statement of Expenses

1. Trustee - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - $________________
2. Attorney - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - ________________
3. Bankruptcy - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - ________________
4. Foreclosure - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - ________________
5. Eviction - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - ________________
6. Advertising - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - ________________
7. Sheriff - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - ________________
8. Court (recording, filing fees, etc.) - - - - - - - - - - - - - - - - - - - - - - - ________________
9. Title Policy - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - ________________
10. Property Preservation (trash removal, winterizing, securing, etc.) - - - - - - - - - - ________________
11. Repairs - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - ________________
12. Utilities - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - ________________
13. Hazard insurance premiums, period of coverage ____________ to ____________ - - - ________________
14. Superior lien(s) principal and interest payments (attach itemized list in all cases) - - - ________________
15. Real estate taxes (penalties/interest not claimable) - - - - - - - - - - - - - - - - - ________________

| | Annual | Semi Annual | Quarterly | Period Covered | Amount |
|---|---|---|---|---|---|
| **County** | ☐ | ☐ | ☐ | ________________ | ________________ |
| **School** | ☐ | ☐ | ☐ | ________________ | ________________ |
| **City** | ☐ | ☐ | ☐ | ________________ | ________________ |
| **Supplemental** | ☐ | ☐ | ☐ | ________________ | ________________ |
| **Other** | ☐ | ☐ | ☐ | ________________ | ________________ |

16. Mortgage insurance premiums, period of coverage ____________ to ____________ - - ____________________
17. AVM/BPO/Appraisal- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - ____________________
18. Other expense(s) (specify) - - - - - - - - - - - - - - - - - - - - - - - - - - ____________________

______________________________________________________________________________

Subtotal $___________________

Subtotal $__________________

19. Less:

a. Escrow balance - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - $(_______________)

b. Hazard insurance refund - - - - - - - - - - - - - - - - - - - - - - - - - - (_______________)

3. Tax refund - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - (_______________)

d. Other (specify) - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - (_______________)

_______________________________________________________________________________________

Subtotal$ __________________

Total due Client/Servicer $_________________

Attach copies of billing and proof of payment for ALL of the above.

I hereby certify that the information contained herein is true to the best of my knowledge and belief, and that all eligible amounts have been included on any claim for insurance or guaranty.

_____________________________________ Authorized Signature

_____________________________________ Prepared by

_____________________________________ Typed Name & Title

_____________________________________ Date prepared

_____________________________________ Telephone number

# State Foreclosure Parameters

| State / City | Judicial or Nonjudicial | Overall Days to Foreclosure[1] |
|---|---|---|
| Alabama | Non | 210 |
| Alaska | Non | 260 |
| Arizona | Non | 245 |
| Arkansas | Jud | 250 |
| California | Non | 255 |
| Colorado | Non | 270 |
| Connecticut | Jud | 340 |
| District of Columbia | Non | 240 |
| Delaware | Jud | 370 |
| Florida | Jud | 290 |
| Georgia | Non | 200 |
| Guam | - | 370 |
| Hawaii | Jud | 280 |
| Idaho | Non | 310 |
| Illinois | Jud | 395 |
| Indiana | Jud | 385 |
| Iowa | Jud | 435 |
| Kansas | Jud | 300 |
| Kentucky | Jud | 385 |
| Louisiana | Jud | 360 |
| Maine | Jud | 475 |
| Maryland | Jud | 205 |
| Massachusetts | Jud | 255 |
| Michigan | Non | 195 |
| Minnesota | Non | 230 |
| Mississippi | Non | 250 |
| Missouri | Non | 205 |
| Montana | Non | 325 |
| Nebraska | Jud | 275 |
| Nevada | Non | 275 |

| State / City | Judicial or Nonjudicial | Overall Days to Foreclosure[1] |
|---|---|---|
| New Hampshire | Non | 230 |
| New Jersey | Jud | 420 |
| New Mexico | Jud | 370 |
| New York | Jud | 400 |
| New York City | Jud | 545 |
| North Carolina | Non | 240 |
| North Dakota | Jud | 310 |
| Ohio | Jud | 385 |
| Oklahoma | Jud | 370 |
| Oregon | Non | 300 |
| Pennsylvania | Jud | 420 |
| Puerto Rico | - | 495 |
| Rhode Island | Non | 205 |
| South Carolina | Jud | 335 |
| South Dakota | Jud | 325 |
| Tennessee | Non | 210 |
| Texas | Non | 210 |
| Utah | Non | 285 |
| Vermont | Jud | 480 |
| Virgin Islands | - | 445 |
| Virginia | Non | 180 |
| Washington | Jud | 280 |
| West Virginia | Non | 265 |
| Wisconsin | Jud | 430 |
| Wyoming | Non | 220 |

[1] "Overall Days to Foreclosure" start from the contractual due date to the foreclosure sale date and do not include any applicable post-foreclosure sale redemption, ratification, or confirmation periods. Servicers servicing Sub-Prime product should subtract 30 days from the above "Overall Days to Foreclosure" values based on the expectation of first legal action occurring at day 90 of delinquency.

# Document Release Transmittal

| Date | Servicer Loan number |
|---|---|
| To (Servicer) | Borrower name |
| GMAC-RFC Loan number | |

In connection with the impending foreclosure of the referenced Loan, the Note and other Loan Documents are being forwarded into your custody, as Servicer for the foreclosure action. The Loan Document package contains:

- ❑ Original Note endorsed to: ____________________________________________
- ❑ Mortgage/Deed of Trust
  Original/Copy/County Certified - Records/Unrecorded
- ❑ Number of Intervening Assignments: _________________
  1. Original/Copy/County Certified - Records/Unrecorded
  2. Original/Copy/County Certified - Records/Unrecorded
  3. Original/Copy/County Certified - Records/Unrecorded
- ❑ Final Title Policy - Original/Copy
- ❑ Assignment to: _____________________________________________________
  Original/Copy/County Certified - Records/Unrecorded

As a Servicer, you are responsible for the Note and other Loan Documents while they are in your custody. If the Loan reinstates, you must complete the bottom portion of this Transmittal and promptly return all of the Loan Documents. Please acknowledge receipt of these Loan Documents by signing and returning the enclosed copy in the return envelope provided.

___________________________________________________
GMAC-RFC - Operations Associate

___________________________________________________
Receipt acknowledged by

___________________________________________________
Date

___________________________________________________
Phone

## Reinstatement

Date: _____/_____/_______

Send to:
GMAC-RFC
Attn.: SDG
One Meridian Crossing
Suite 100
Minneapolis, MN 55423

GMAC-RFC
Loan Number: ___________________________

Servicer Loan #: _________________________

As Servicer, we hereby certify that all Loan Documents listed above are being returned to you in connection with the reinstatement of the referenced Loan. In addition, the following related documents are being forwarded:

Other ________________________________________________

Other ________________________________________________

| Servicer Name | By |
|---|---|
| | Phone |

# Automated Value Model (AVM) Approved Vendors

| Vendor |
| --- |
| **Basis 100 Mortgage Risk Assessment Corporation**<br>**30 Montgomery Street**<br>**Suite 1200**<br>**Jersey City, NJ**<br><br>www.mortgagerisk.com<br>800.990.6722<br>Donna Lansing: dlansing@basis100.com |
| **Basis100 Solimar.net**<br>4 Park Plaza, Suite 800<br>Irvine, CA 92614<br><br>www.solimar.net<br>904.470.2300 Ext. 136<br>Debbie Waters: dwaters@basis100.com |
| **C&S Marketing**<br>9309 La Riviera Drive, Suite E<br>Sacramento, CA 95826<br><br>www.csmarketing.net<br>916.457.2009<br>Steve Schroeder: steves@csmarketing.net |
| **Case-Shiller-Weiss**<br>1698 Massachusetts Avenue<br>Cambridge, MA 02138<br><br>www.cswcasa.com<br>617.354.1400<br>Terry Loebs: tloebs@cswcasa.com |
| **DataQuick Information Systems Inc.**<br>9620 Town Center Drive<br>San Diego, CA 92121<br><br>www.dataquick.com<br>800.890.3218 Ext 209<br>Patrick McCarthy: pmccarthy@dataquick.com |

* GMAC-RFC does not accept AVMs when the Client has input Property Data (other than the property address) or has altered or changed the AVM in any way from the original product supplied from the vendor.

| Vendor |
|---|
| **Equifax Mortgage Services**<br>1550 Peachtree NW<br>Mail Drop H35<br>Atlanta, GA 30309<br><br>www.emortgage.equifax.com<br>404.885.8426<br>Craig Jeidy: craig.jeidy@equifax.com |
| **FNIS Market Intelligence**<br>37 Birch Street<br>Milford, MA 01757<br><br>www.mivalue.com<br>800.577.6602 or 508.244.3887<br>Jennifer Alves: alvesj@ctt.com |
| **First American**<br>5601 East La Palma Avenue<br>Anaheim, CA 92807<br><br>www.firstamres.com<br>847.566.0583<br>Ray Semple: Rsemple@firstam.com |
| **Trans Union**<br>2708 N Snelling Avenue, Suite 309<br>Roseville, MN 55113<br><br>www.tuc.com<br>651.639.0007<br>Richard Hogendorf<br>Rhogendo@transunion.com |
| **Veros Software**<br>15520 Rockfield Blvd.<br>Suite J<br>Irvine, CA 92618<br><br>www.veros.com<br>949.250.0000<br>Darius Bozorgi: dbozorgi@veros.com |

* GMAC-RFC does not accept AVMs when the Client has input Property Data (other than the property address) or has altered or changed the AVM in any way from the original product supplied from the vendor.

# Change in Loan Data Letter Example

Date

John Doe
Any Servicer
000 Any Street
Any Town, XX 00000

Phone: (XXX) XXX-XXXX
Fax: (XXX) XXX-XXXX

Dear Mr. Doe:

Please be advised that the following issue(s) and/or information needs to be corrected and/or updated on your system records:

| Servicer Loan # | RFC # | Borrower | Issue/Change |
|---|---|---|---|
| 106910000413847 | 9413847 | MacLeod | Draw amount – Please change from $23,000 to $2,300 |
| 149910000416730 | 9416730 | Boren | Draw amount – Please change from $27,000 to $24,500 |
| 149910000417046 | 9147046 | Holmes | Draw date – Please change from 9/29 to 9/26 |

A copy of the above-stated change(s) will also be forwarded to Jane Smith in our Finance Department.

Please contact me if you have any questions relative to this matter. Thank you for your assistance.

Sincerely,

John Doe

cc: Jane Smith

# New Loan Input File Format

- File Name = ccyymmdd.???.
- All Character fields should display uppercase only.
- All Number fields should carry real decimals. Pad left with zeros (0) (draw = 01234.56 or rate = 012.750)
- All Dates should be in the following format: mm/dd/ccyy (Note Date = 12/31/1995)

| Field Name | Start | Length | TYPE | Required | Description | Handling |
|---|---|---|---|---|---|---|
| Account Number | 1 | 15 | Num | Yes | Unique Identification Number | ***Always 15 digits*** |
| primarynam | 16 | 36 | CHAR | Yes | Name of Primary Borrower | ***Full Name of Borrower:*** Jonathan D. Smith Robert Smith George Smith Jr. |
| custshrtnm | 52 | 15 | CHAR | Yes | Short Version of Primary Borrower Name | ***Last, First:*** Smith, Jonathan Smith, Robert Smith Jr., George |
| brw_ssn | 67 | 9 | CHAR | Yes | Primary Borrower SSN | ***no dashes:*** 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 |
| coborrnam | 76 | 36 | CHAR | No | Name of Co-Borrower | ***Full Name of Co--Borrower:*** Jonathan D. Smith Robert Smith George Smith Jr. |
| cobrwshtnm | 112 | 15 | CHAR | No | Short Version of Co-Borrower Name | ***Last, First:*** Smith, Jonathan Smith, Robert Smith Jr., George |
| cobrw_ssn | 127 | 9 | CHAR | No | Co-Borrower SSN | ***no dashes:*** 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 |
| addrline1 | 136 | 36 | CHAR | Yes | Mailing Street Address Information | 3419 Crickettes Drive |
| addrline2 | 172 | 36 | CHAR | No | Mailing Street Address Information Line 2 | ***Usually NA:*** Apt 3456 |
| city | 208 | 20 | CHAR | Yes | Mailing City | Saddle River |
| state | 228 | 2 | CHAR | Yes | Mailing State | CA |
| zip | 230 | 9 | CHAR | Yes | Mailing Address Zip Code | ***If +4 is unknown fill right with spaces:*** 123456789 |
| bus_phone | 239 | 10 | Num | No | Primary Borrower Business Phone Number | ***no dashes, spaces or parentheses:*** 2124496128 |
| home_phone | 249 | 10 | Num | No | Primary Borrower Home Phone Number | ***no dashes, spaces or parentheses:*** 2124496128 |
| acctofficr | 259 | 6 | CHAR | No | Code representing Loan Officer or Client originating this Loan. | ***Default 999999*** |
| loantype | 265 | 1 | CHAR | Yes | GMAC Loan Type | Closed End = 3 Line = 8 |
| note_date | 266 | 10 | Date | Yes | Closing Date of Loan | ***mm/dd/ccyy*** |
| maturitydt | 276 | 10 | Date | Yes | Date Loan Matures | ***mm/dd/ccyy*** |
| rate | 286 | 7 | Num | Yes | Interest Rate of Loan | 7.75% is expressed as 07.750 |
| margin | 293 | 7 | Num | Yes | Spread over Prime (Margin) | 2.75% is expressed as 02.750 (teaser margins are implied negative value) |
| teaser rate | 300 | 7 | Num | No* | Teaser Rate used for Interest accrual | 7.75% is expressed as 07.750 |
| teaser_margin | 307 | 7 | Num | No* | Spread over Prime (Margin) Teaser period | 2.75% is expressed as 02.750 (teaser margins are implied negative value) |
| teaserdate | 314 | 10 | Date | No* | Date Teaser Rate Expires | ***mm/dd/ccyy*** |

| Field Name | Start | Length | TYPE | Required | Description | Handling |
|---|---|---|---|---|---|---|
| teaser_cd | 324 | 1 | CHAR | Yes | Determines if Teaser Rate applies to Loan | **** If cd=y then the Teaser Rate/ margin/Date will be ignored. Teaser = Y No Teaser = N*** |
| pymtduedt | 325 | 10 | Date | Type 8 = No<br>Type 3 = Yes | Next Payment Due Date – This date indicates the oldest scheduled but unsatisfied payment data. May be in the past if delinquent. | ***mm/dd/ccyy*** |
| line_amt | 335 | 6.2 | Num | Yes | Maximum Line Amount | $25,000 is expressed as 025000.00 |
| principal | 344 | 6.2 | Num | No | Initial Draw | $25,000 is expressed as 025000.00 |
| effectivedt | 353 | 10 | Date | No | Initial Draw Date | ***mm/dd/ccyy*** |
| product_cd | 363 | 4 | CHAR | Yes | Describes specific Loan program | ***Assigned to source by CLS*** |
| beacon | 367 | 5 | Num | No | Credit Bureau Score | 00611 |
| prop_stat | 372 | 2 | CHAR | Yes | Property State | CA |
| appr_value | 374 | 8.2 | Num | No | Appraised Value of Property | $25,000 is expressed as 025000.00 |
| userremark | 385 | 15 | CHAR | No | Place of Employment | GM Hughes |
| ltv | 400 | 3 | Num | No | Loan-to-Value Ratio | 75% is expressed as 0750 |
| DTI | 403 | 3 | Num | No | Debt-to-Income Ratio | 75% is expressed as 0750 |
| pi | 406 | 5.2 | Num | Type 8 = No<br>Type 3 = Yes | Fixed Loan Payment Amount | $2,500 is expressed as 02500.00 |
| 1st_lein | 414 | 8.2 | Num | No | Amount for First Mortgage | $200,500 is expressed as 00250000.00 |
| prim_cc4251 CHARNo | 425 | 1 | CHAR | No | Determines if primary borrower has requested credit card access to the line. | Y/N (Line of credit products only) |
| co_cc | 426 | 1 | CHAR | No | Determines if co-borrower has requested credit card access to the line. | Y/N (Line of credit products only) |
| flood_zone | 427 | 1 | CHAR | No | Code describing flood zone | A |
| flood_exp | 428 | 10 | Date | No | Date flood policy expires | ***mm/dd/ccyy*** |
| flood_vend | 438 | 3 | CHAR | No | Identifies flood policy vendor | |
| vin | 441 | 7 | CHAR | No | Number displayed on Billing Statement and draft books | ***required only if assigned by source*** |
| m_addrline1 | 458 | 36 | CHAR | No | Property Street Address Information | ***required only if different from property***<br>3419 Crickettes Drive |
| m_addrline2 | 496 | 36 | CHAR | No | Property Street Address Information Line 2 | ***Usually NA:***<br>Apt 3456 |
| m_city | 532 | 20 | CHAR | No | Property City | Saddle River |
| m_state | 552 | 2 | CHAR | No | Property State | CA |
| m_zip | 554 | 9 | CHAR | No | Property Address Zip Code | ***If +4 is unknown fill right with spaces:***<br>123456789 |

# Modification Agreement 24A02

THIS MODIFICATION AGREEMENT ("Agreement") is made as of the _________ day of ____________________, 20_____, by and between, ________________________________________________________, adult individual(s) with an address of ________________________________________________________ (hereinafter referred to as "Borrower") and GMAC-RFC, a Delaware limited liability company, having an office located at ____________________________________ ______________________________________________________________________ (hereinafter referred to as "Lender").

**BACKGROUND**

A. Borrower is the owner in fee simple of a certain parcel of land and improvements thereon located at ______ ______________________________________________________________,County of _____________________, State of ___________________, as more particularly described in Exhibit "A" attached hereto and made a part hereof (the "Premises").

B. On the _________ day of _________________________, 20_____, Borrower executed and delivered to _____________________________________ a Note (the "Note") evidencing a Loan in the principal amount of _______________________________________ ($___________) and other collateral documents described in or accompanying the Note, including: Deed of Trust/Mortgage (the "Security Instrument") encumbering the Premises recorded in the Recorder's Office of _______________________________________________ on the _________ day of ______________________, 20_____, in Book ____________, Page(s) _______. The Note and Security Instrument and the other collateral documents described in or accompanying the Note being hereinafter sometime collectively referred to as the "Loan Documents".

C. On the _________ day of _________________________, 20_____, all rights, title and interest in the Loan Documents were assigned to Lender in Book _________________, Page(s)___________.

D. Lender has agreed to release of record to remove the Security Instrument as a lien upon the Premises in exchange for Borrower's promise to abide by the terms of the Note, as amended by the terms of this Agreement.

E. Borrower and Lender desire to modify and amend the Note as hereinafter set forth.

NOW THEREFORE, in consideration of the promises and of the mutual covenants and undertakings herein contained, the parties hereto, intending to be legally bound, covenant and agree that the Note is modified as follows:

1. Borrower covenants and confirms that all of the above outlined background information as set forth in this Agreement, is true, correct, and complete in every respect and is incorporated herein and made part hereof. Borrower acknowledges that Lender in entering into this Agreement is relying on such covenants and confirmations.

2. The Note will no longer be secured by the Security Instrument. Contemporaneously, with the execution of this Agreement, Lender shall record a Release of the Security Instrument in the County where the Premises is located releasing the Security Instrument.

3. The maturity date of the Note on which the entire principal balance, as well as any accrued and unpaid interest and any sums required to be paid thereunder shall be due and payable is hereby extended to the ___________ day of ________________________, 20_____.

4. The total principal balance to be repaid by Borrower in accordance with the terms of the Note is hereby changed to ____________________________________________________________ ($______________).

5. The interest rate of the Note is hereby changed from _____________________________ percent (________%) to ___________________________________ percent (________%).

6. The total monthly payment of principal and interest due under the Note is hereby changed from _____________ ________________________________________________ Dollars ($______________) to _____________ ____________________________________________________ Dollars ($_________).

7. An Early Satisfaction Incentive is hereby added to the Note pursuant to which Borrower shall receive a ten percent (10%) discount of the remaining principal balance if Borrower pays the total outstanding principal balance of the Note in one lump sum payment; however, the Early Satisfaction Incentive shall not apply if Borrower is not current in making their monthly payments in accordance with the terms of the Note.

8. Borrower covenants and confirms that, except as specifically modified by this Agreement, all of the terms and conditions of the Note and any collateral documents referred to in the Note, shall be unmodified and remain in full force and effect. This Agreement shall not be construed as a novation of the Note or the other Loan Documents. This Agreement shall not prejudice any present or future rights, remedies, benefits or powers belonging to or accruing to Lender under the terms of the Note as amended by this Agreement.

9. This Agreement shall be governed by and construed in accordance with the State/Commonwealth of ____________________________.

10. Each and every one of the terms and provisions of this Agreement shall be binding upon Borrower and Borrower's personal representatives, heirs, successors and assigns and shall insure to the benefit of Lender and its successors and assigns.

11. If any one or more of the provisions contained in this Agreement is determined to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

12. This Agreement and the Loan Documents constitute the entire Agreement between the parties hereto with respect to the subject matter thereof. This Agreement supersedes all previous negotiations and discussions between the parties, and no parole evidence of any prior or other agreement shall be permitted to contradict or vary the terms hereof. In the event of any inconsistencies between the provisions of this Agreement and the Loan Documents, the provisions of the Agreement shall control.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

Witness: Borrower:

____________________________ ____________________________

____________________________ ____________________________

Attest:

____________________________ By:____________________________

# Modification Agreement (Increase of Credit Limit) 24A03

THIS LOAN MODIFICATION AGREEMENT (“Agreement”), dated as of the ______day of ______________, 20__, by and between GMAC-RFC (the “Lender”) and __________________ (the “Borrower”), provides:

WHEREAS, the Lender is the owner and holder of that certain mortgage, deed of trust or other security instrument (the “Security Instrument”), dated ______________, 199__, made by the Borrower to the Lender and recorded on ______________, 199__, in Book or Liber, at page(s) n/a or Document No. ________ of the Public Records of _____________County, State of ____________, securing the repayment of an indebtedness up to a maximum principal amount of $_______________ plus interest owed by the Borrower to the Lender under the terms of a home equity line of credit agreement and promissory note (the “Account Agreement”), dated as of _______________, 199__; and

WHEREAS, the Lender has agreed to reduce the Credit Limit under the Account Agreement to _______________Dollars ($________________).

NOW, THEREFORE, for good and valuable consideration, the Lender and the Borrower agree as follows:

1. The Account Agreement is hereby modified to reduce the Credit Limit to $_______________.

2. The Security Instrument is hereby modified to reduce the maximum aggregate amount of principal to be secured at any one time from $___________________ to $__________________.

3. This Agreement shall be binding upon and insure to the benefit of the respective heirs, successors, and assigns of the parties.

4. (a) Unless otherwise defined in this Agreement, all capitalized terms shall have the same meaning as given in the Account Agreement and Security Instrument.

   ❑ If checked here, the “Margin” (that is, the number of percentage points to be added to *The Wall Street Journal* Prime Rate) will be changed so that the ANNUAL PERCENTAGE RATE in the Home Equity Line of Credit Agreement and Promissory Note will be the sum of (1) a Margin of _______% and (ii) the highest base rate on corporate loans at large U.S. money center commercial banks that *The Wall Street Journal* publishes as the prime rate.

   (b) Nothing in this Agreement shall be construed to be a satisfaction or release in whole or in part of the Account Agreement and Security Instrument. Except as otherwise specifically provided in this Agreement, the Account Agreement and Security Instrument will remain unchanged, and the Borrower and the Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

   (c) Words of any gender used in this Agreement shall be held and construed to include any other gender, and words in the singular shall be held and construed to include the plural, unless this Agreement or the context otherwise requires.

Please return document to:

GMAC-RFC Loan # ____________________________

This Loan Modification Agreement is given, executed and delivered by the undersigned on the same day and year first written above.

______________________________ By:______________________________

(Borrower)

Name:______________________________

Its:______________________________

## ACKNOWLEDGMENT BY LENDER

State of California)

)SS

County of Los Angeles)

On ______________________, 20___, before me, a Notary Public in and for said State and County, personally appeared ________________, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that s/he executed the same in her/his authorized capacity, and that by her/his signature on the instrument the person or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Signature ______________________

My Commission Expires ____________.

## ACKNOWLEDGMENT BY BORROWER

State of ________________)

)SS

County of ________________)

On ______________________, 20___, before me, a Notary Public in and for said State and County, personally appeared ________________, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature ______________________

My Commission Expires ________________

# Notice of Right to Cancel

24A04

Date:
Lender:
Borrower(s):
Property Address:
Loan Number:

***Your Right to Cancel:*** We have agreed to increase the credit limit on your open--end credit account. We have a security interest in your home as security for your Account. Increasing the credit limit will increase the amount of the security interest in your home. You have a legal right under federal law to cancel the increase in your credit limit, without cost, within three business days after the latest of the following events:

1. the date of the increase in your credit limit which is________________________; or
2. the date you received your Truth-in-Lending disclosures; or
3. the date you received this notice of our right to cancel the increase in your credit limit.

If you cancel, your cancellation will apply only to the increase in your credit limit and to the security interest that resulted from the increase in your credit limit. It will not affect the amount you presently owe, and it will not affect the security interest we already have in your home. Within 20 calendar days after we receive your notice of cancellation, we must take the necessary steps to reflect the fact that any increase in the security interest in your home has been cancelled. We must also return to you any money or property you have given to us or to anyone else in connection with this increase.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address shown below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**How to Cancel:** If you decide to cancel the increase in your credit limit, you may do so by notifying us, in writing, at:

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice no matter how you notify us because it contains important information about your rights. If you cancel by mail or telegram, you must send the notice no later than the midnight of _______________(date) (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL

Consumer's Signature    Date

I acknowledge receipt, on ______________________, 19___, of two completely filled--in copies of the above Notice of Right to Cancel and warrant that the undersigned are all the persons who have or may have an ownership interest in the home located at:______________________________________________________________________.

Consumer's Signature

Witness    Date    Consumer's Signature

**Certificate**

Each consumer who signs below, with the Right to Cancel the increase in my credit limit described herein, certifies that the cancellation period has expired and the Right to Cancel was not exercised

Consumer's Signature

Witness    Date    Consumer's Signature

# Senior Lienholder

| Name of Company | |
|---|---|
| Address and/or City & State Located | |
| Telephone Number with Area Code | |
| Loan Number | |
| Loan Type | ❑ Fixed rate ❑ Adjustable rate |
| Principal Balance | Monthly Payment |
| Is Loan impounded? ❑ Yes ❑ No | If yes, is it for ❑ Taxes ❑ Hazard Ins. ❑ Mortgage Ins. ❑ Flood |

Account #

**WHEN RECORDED MAIL TO**:
GMAC-RFC
Servicer Management, Home Equity
2255 North Ontario St., Suite 400
Burbank, CA 91504

**SPACE ABOVE THIS LINE FOR RECORDER'S USE**

# Subordination Agreement

24A06

THIS SUBORDINATION AGREEMENT ("Agreement") is made this 20 day of _______________, 20___, between _______________ ("Borrower"), whether one or more, and _______________ ("Subordinating Lender").

**WITNESSETH**

WHEREAS Borrower executed a note in the original principal sum of $_______________ dated _______________, secured by a deed of trust or mortgage of even date therewith in favor of _______________ covering property located at _______________, _______________, ("Property") recorded on _______________ as _______________, Official Records of said County; and

WHEREAS, the note and deed of trust or mortgage has been assigned to Subordinating Lender; and

WHEREAS, Borrower has executed, or is about to execute, a deed of trust or mortgage and note not to exceed the sum of $_______________ dated _________/_________/_________, ("New Loan") in favor of _______________, ("New Lender"); and

WHEREAS, New Lender is willing to make the New Loan provided the deed of trust or mortgage securing same is a lien or charge upon the Property prior and superior to the lien or charge of the deed of trust held by Subordinating Lender, and provided that Subordinating Lender will specifically and unconditionally subordinate its lien to the lien or charge of the deed of trust or mortgage in favor of New Lender; and

WHEREAS, it is to the mutual benefit of the parties hereto that New Lender make such New Loan to Borrower; and Subordinating Lender is willing that the deed of trust or mortgage securing same shall, when recorded, constitute a lien or charge upon said land which in unconditionally prior and superior to the lien or charge held by Subordinating Lender.

NOW, THEREFORE, in consideration of the mutual benefits accruing to the parties hereto and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and in order to induce New Lender to make the New Loan, it is hereby declared, understood and agreed as follows:

1. The deed of trust or mortgage securing the New Loan in favor of New Lender, and any renewals or extensions thereof, shall unconditionally be and remain at all times a lien or charge on the Property, prior and superior to Subordinating Lender's lien or charge.
2. New Lender would not make its New Loan without this Agreement.
3. This Agreement shall be the whole and only agreement with regard to the subordination of the Subordinating Lender's lien or charge to the New Lender's lien or charge.

By Residential Funding Company, LLC (f/k/a Residential Funding Corporation), Attorney-in-Fact

By___________________________

## ACKNOWLEDGMENT BY SUBORDINATING LENDER

State of _____________

County of _____________

On this, the ______ day of ___________________, 20___, before me, a Notary Public, personally appeared _______________________, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, for the purposes and consideration therein expressed, as the act and deed of said company or corporation.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____________________________________________

Notary Public

(NOTARY SEAL)

**WHEN RECORDED MAIL TO**:
GMAC-RFC
Servicer Management, Home Equity
2255 North Ontario St., Suite 400
Burbank, CA 91504

**SPACE ABOVE THIS LINE FOR RECORDER'S USE**

# Subordination Agreement (MERS) 24A06M

THIS SUBORDINATION AGREEMENT ("Agreement") is made this _______________, 20___, by Mortgage Electronic Registration Systems, Inc. ("MERS"), solely as nominee for _______________ and its successors and assigns ("Subordinating Lender").

WHEREAS _______________ ("Borrower"), whether one or more, executed a note in the original principal sum of $_______________ dated _______________, secured by a deed of trust or mortgage of even date therewith in favor of _______________ covering property located at _______________, _______________, ("Property") recorded on _______________ as _______________, in Official Records of said County; and

WHEREAS, the note and deed of trust or mortgage has been assigned to Subordinating Lender; and

WHEREAS, Borrower has executed, or is about to execute, a deed of trust or mortgage and note not to exceed the sum of $_______________ ("New Loan") in favor of _______________, ("New Lender"); and

WHEREAS, New Lender is willing to make the New Loan provided the deed of trust or mortgage securing same is a lien or charge upon the Property prior and superior to the lien or charge of the deed of trust held by Subordinating Lender, and provided that Subordinating Lender will specifically and unconditionally subordinate its lien to the lien or charge of the deed of trust or mortgage in favor of New Lender; and

WHEREAS, it is to the mutual benefit of the Borrower, New Lender and Subordinating Lender that New Lender make such New Loan to Borrower; and Subordinating Lender is willing that the deed of trust or mortgage securing same shall, when recorded, constitute a lien or charge upon said land which in unconditionally prior and superior to the lien or charge held by Subordinating Lender.

NOW, THEREFORE, in consideration of the mutual benefits accruing to the parties hereto and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and in order to induce New Lender to make the New Loan, it is hereby declared, understood and agreed as follows:

1. The deed of trust or mortgage securing the New Loan in favor of New Lender, and any renewals or extensions thereof, shall unconditionally be and remain at all times a lien or charge on the Property, prior and superior to Subordinating Lender's lien or charge.

2. New Lender would not make its New Loan without this Agreement.

3. This Agreement shall be the whole and only agreement with regard to the subordination of the Subordinating Lender's lien or charge to the New Lender's lien or charge.

______________________________, by and through its attorney in fact,
Residential Funding Company, LLC (f/k/a Residential Funding Corporation)

By____________________________

## ACKNOWLEDGMENT BY SUBORDINATING LENDER

State of _____________

County of _____________

On this, the ______ day of ___________________, 20___, before me, a Notary Public, personally appeared _______________________, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity as Assistant Vice-President of Residential Funding Company, LLC (f/k/a Residential Funding Corporation), for the purposes and consideration therein expressed, as the act and deed of said company or corporation.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

______________________________________________
Notary Public (Notary Seal)

Account Number _______________

WHEN RECORDED MAIL TO:

GMAC-RFC
Servicer Management, Home Equity
2255 North Ontario St., Suite 400
Burbank, CA 91504

**THE AMENDMENT IS NOT VALID FOR RECORDING AFTER NINETY (90) DAYS FROM THE DATE FIRST APPEARING ABOVE. ANY CHANGES TO THIS DOCUMENT WITHOUT PRIOR WRITTEN INVESTOR APPROVAL WILL RENDER THIS AMENDMENT NULL AND VOID**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

24A07

# Amendment To Agreement & Deed Of Trust

This Amendment is entered into as of this ______day of ______________, 20___, by and between ______________________ ("Borrower"), whether one or more, and ________________________ ("Lender").

**WITNESSETH**

WHEREAS, on __________________, 20___, Borrower executed and delivered to ________________________ a Home Equity Line of Credit Agreement and Promissory Note ("Credit Agreement") in the original principal sum of ______________________ ______________________00/100 ($_________________);

WHEREAS, as security for the indebtedness evidenced by the Credit Agreement, Borrower executed a deed of trust or mortgage ("Security Instrument") dated __________________, 20___, on real estate situated in the City of______________________, ________________________ County, State of____________________________, the deed of trust or mortgage being recorded on ____________________________, 20___, as Instrument Number ___________, Book ___________, Page _________________;

WHEREAS, all right, title and interest in and to the Credit Agreement and Security Instrument have been assigned to Lender; and,

WHEREAS, Borrower and Lender desire to decrease the credit limit under the Credit Agreement and therefore decrease the amount secured by the Security Instrument.

NOW THEREFORE, the parties hereto, with the intent to be legally bound, agree as follows:

(1) The Credit Agreement is hereby amended by deleting the amount of ______________________00/100 ($_________________) wherever said amount appears and substituting the amount of ______________________00/100 ($_________________).

(2) The Security Instrument is hereby amended by deleting the amount of ______________________00/100 ($_________________) wherever said amount appears and substituting the amount of ______________________00/100 ($_________________).

(3) Except as amended hereby, the terms and conditions of the Credit Agreement and Security Instrument shall remain in full force and effect.

**WITNESS** the due execution of this Amendment the day and year first written above.

| | |
|---|---|
| ______________________ (Witness: Please Sign & Print Name) | ______________________ (Borrower's Name) |
| ______________________ (Witness: Please Sign & Print Name) | ______________________ (Borrower's Name) |

**LENDER**

By: ______________________

Title: ______________________

## ACKNOWLEDGMENT BY BORROWER

State of _____________
County of _____________

On this, the ______ day of ___________________, 20___, A Notary Public, personally appeared _______________________, known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

______________________________________________
Notary Public

(NOTARIAL SEAL)

## ACKNOWLEDGMENT BY BORROWER

State of _____________
County of _____________

On this, the ______ day of ___________________, 20___, A Notary Public, personally appeared _______________________, known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

______________________________________________
Notary Public

(NOTARIAL SEAL)

## ACKNOWLEDGMENT BY LENDER

State of _____________
)SS
County of _____________

On this, the ______ day of ___________________, 20___, before me, A Notary Public, personally appeared _______________________, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, for the purposes and consideration therein expressed, as the act and deed of said corporation or company.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

______________________________________________
Notary Public

(NOTARIAL SEAL)

Please return document to:

GMAC-RFC Loan # ___________________________

# Partial Release of Mortgage 24A08

KNOW ALL MEN BY THESE PRESENTS, that Residential Funding Company, LLC (f/k/a Residential Funding Corporation), a Delaware limited liability company (herein, the "Mortgagee"), for good and valuable consideration, the receipt of which is hereby acknowledged, hereby releases from the lien of a certain mortgage/deed of trust executed by _________________________________("Borrower"), in the amount of $_________________, recorded _________________, 19___, in volume _______________, page___________, of the mortgage records of ___________________________, that part of the property described therein situated in the said County and State which is bounded and described as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE

Provided, however, that this Partial Release shall not be construed to waive, or in any manner affect or invalidate, the lien of the mortgage from Borrower to Mortgagee, upon the remaining portion of the property described in said mortgage.

IN WITNESS WHEREOF, Residential Funding Company, LLC (f/k/a Residential Funding Corporation) has caused its limited liability company name to be subscribed by its duly appointed officer on the ________day of ____________________________, 19___.

Residential Funding Company, LLC (f/k/a Residential Funding Corporation)

Attested to By:

_______________________________________ By:_______________________________________

_______________________________________ Name:_______________________________________

Its:_______________________________________

STATE OF ______________________)
) SS.
COUNTY OF ____________________)

On __________________________________, 19___, before me, a Notary Public in and for said State and County, personally appeared ______________________________, a ______________________________ of Residential Funding Company, LLC (f/k/a Residential Funding Corporation), a Delaware limited liability company, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_______________________________________
Notary Public

(SEAL) My Commission Expires: ___________________

## Exhibit A
## (Description of Property)

# Multipurpose Loan Service Report

24A09

## A. Client/Servicer Data

| Client/Servicer Name | Client/Servicer Loan Number |
|---|---|
| Client/Servicer Mailing Address | |

## B. Loan Data

| GMAC-RFC Loan Number | Borrower Name |
|---|---|
| Property Address | |

## C. Reason For Transmittal

| | | | |
|---|---|---|---|
| ❑ | Payoff | Date of Payoff | Amount of Payoff |
| ❑ | Charge Off | Date of Charge Off | Amount of Charge Off |
| ❑ | Partial Release | | |
| ❑ | Subordination | | |
| ❑ | Repurchase | | |
| ❑ | Property Seizure | | |
| ❑ | Insurance Loss | | |
| ❑ | Execution of Attached Document(s) | | |
| ❑ | Other | | |

## D. Client/Servicer Explanation

________________________________________

________________________________________

Prepared By

Date Prepared

Telephone Number

Authorized Signature

Typed Name and Title

Telephone Number

## GMAC-RFC Reply (if any)

# Second Mortgage Cost Evaluation and Recommendation 24A10

This form should be used and forwarded to GMAC-RFC when recommending payoff of the First Trust Deed and/or advancing to the First Trust Deed as a result of charging off or foreclosing on any Home Equity or Home Improvement Loan.

The documentation that should accompany this Cost Evaluation Sheet are:

(1) Last 12 months of the collection and payment histories

(2) Copy of appraisal not more than 180 days old, to establish current value. A drive-by appraisal is acceptable.

(3) Current property inspection or format similar (see 1--4 Family Property Servicing Inspection Report)

(4) Copy of AVM not more than 60 days old

(5) Credit Report

# Cost Evaluation for First Trust Deed

| Servicer Name | Servicer Loan Number |
|---|---|
| Servicer Address | PMI Carrier (if applicable) |

First Mortgage Current Principal Balance $ _______________

(LPI Date _______________) (Monthly Payment $_______________)
(Interest Rate __________) (Monthly Late Charge $__________)
If delinquent is Loan in foreclosure ❑ Yes ❑ No

**Anticipated Expenses** (*projections for next 6 to 9 months*)

Proposed Advances to the First Lienholder
_______________ X ________________ (monthly payments) = $ _______________

Property Maintenance: List item and amount$
(include HOA fees, Appraisal fee, Repairs, etc.)

______________________________________________________________________

______________________________________________________________________

Is Loan impounded? ❑ Yes ❑ No ( )

For what is the Loan impounded? ______________________________

What is the current impound balance? Positive Balance: $_______________
Negative Balance: $_______________

Will a tax payment be due within next six months? ❑ Yes ❑ No

If yes, list amount and installment due $ _______________

Will a Hazard insurance payment be due within the next six months?
❑ Yes ❑ No If yes, list amount due $ _______________

Total Other Costs (Please List)

______________________________________________________________________

______________________________________________________________________

**Total** $ _______________

# Cost Evaluation for Second Trust Deed

| Servicer Name | Date |
|---|---|
| Servicer Loan Number | GMAC-RFC Loan Number |
| Home Equity Servicer ID Number | Property Address |

Original Loan Amount $_______________

Original Appraisal Amount $______________ Date ________________

Most recent property inspection date: ___________________

Is a copy of property inspection attached? ❑ Yes ❑ No

Occupancy Status ______________________________________________________

If Tenant, has assignment of rent been sent? ❑ Yes ❑ No

If Yes, when? ______________________ Amount received $______________

PMI Company (if applicable): __________________________

Certificate Number: __________________________

MI Coverage: ____________.0%

**Second Mortgage Current Principal Balance:** $ _______________

(LPI Date ______________) (Monthly Payment $______________)

Anticipated Foreclosure start date _____________________

**Evaluation Information**

Is Hazard Insurance paid current? ❑ Yes ❑ No

If yes, to what date? ______________ Amount. Paid? _______________

If no, what was date last paid? ______________ Amount Delinquent$

Total Advances to First Lienholder to bring current: $ _______________

| Itemize: | Payments: | __________ | Escrow: | _____________ | | |
|---|---|---|---|---|---|---|
| | F/C Fees: | __________ | Legal: | _____________ | Appr: | _____________ |
| | Insp: | __________ | L/C: | _____________ | Other | _____________ |

Attorney Fees (Amount Billed for services): $ _______________

Trustee Fees (1--1/2% of the unpaid principal balance): $ _______________

TSG Policy (1% of the unpaid principal balance): $ _______________

Total Other Expenses (NO LATE CHARGES): $ _______________

Anticipated Actual MI Settlement (if applicable): (DEDUCT) $(_______________)

**Subtotal:** $

Marketing Costs (15% of the current property value): $

**TOTAL COSTS ASSOCIATED WITH THE SECOND:**

$

# Evaluation Worksheet Instructions

This worksheet will combine the information from the First and Second Trust Deed Cost Evaluation Forms. It will assist in our decision to advance or not to advance to the First Lienholder. It provides justification for the decision being made.

The following are some of the components of the worksheet and what they represent.

**UPBs of Second and First:** This represents the current unpaid principal balance of each Loan. On the Cost Evaluation forms we have also asked for the last paid installment (LPI) date. The LPI date for the First Trust Deed will assist you in computing how many payments need to be advanced. The LPI date for the Second Trust Deed will assist in determining when to proceed with foreclosure.

**Advances to Bring First Lien Current:** This figure should match the amount provided on the cost Evaluation for Second Trust Deeds. Be sure you have provided an itemized breakdown. This figure will include the number and the amount of all payments, late charges, foreclosure costs (if applicable), delinquent taxes and insurance and any other costs.

**Loan Foreclosure and REO Fees:** This amount should include the anticipated expenses to the First Trust Deed. Be sure that when computing proposed monthly payments to the First, you include payments to be made during foreclosure process (4 months minimum in CA), and estimated holding time in REO (6 months minimum). Also include fee and costs incurred to foreclose our Second Trust Deed.

**Marketing Costs and Fees:** This figure represents the estimated cost incurred by REO in holding and selling the property. This amount should match the figure on the Second Trust Deed Cost Evaluation.

**Subtotal:** This figure represents the “total debt” associated with the property. When deducted from the selling price (current value) the result is our gain or loss position.

**Current Value:** Per appraisal or drive-by appraisal.

**Gain or Loss:** The difference between the subtotal and the current value.

# Evaluation Worksheet

| GMAC-RFC Loan Number | Date |
|---|---|
| Property Address | Home Equity Service ID Number |

Unpaid Principal Balance (2nd TD): $ ______________

Unpaid Principal Balance (1st TD): $ ______________

Advances (To bring 1st TD current): $ ______________

Foreclosure/REO Fees: $ ______________

Marketing Costs: $ ______________

MI Approval: ______________

MI Claim Amount: (DEDUCT) $ ( ______________ )

**Subtotal:** $ ______________

Current Value as of ______________: $ ______________

**Total** ❑ Gain ❑ Loss (check one) $ ______________

Recommendation: ______________________________

**Reason for the Delinquency:**

______________________________

______________________________

______________________________

**Discussion of the Problem:**

______________________________

______________________________

______________________________

**Justification:**

______________________________

______________________________

______________________________

# Request for Loan Approval

24A12

| Client/Servicer name and ID number | Borrower name |
|---|---|
| Client/Servicer mailing address | Property address |
| Unpaid principal balance | Last paid installment |
| Name of mortgage insurance company | Percent of mortgage insurance covered |

## Reason for Default

1. Death in borrower's family
2. Bankruptcy
3. Payment adj. (payment shock)
4. Assumption
5. Payoff pending
6. Illness in borrower's family
7. Abandonment of property
8. Dissatisfaction
9. Fraud
10. Marital difficulties
11. Utility/Energy cost
12. Natural disaster
13. Unable to locate
14. Unemployment
15. Temporary loss of income
16. Curtailment of income
17. Fire or property loss
18. Decline in property value
19. Excessive credit use
20. NSF check
21. Due on transfer
22. Other (specify background info)

Number above that corresponds to the primary reason for default: _______

Breach sent ____/____/____ Breach expired: ____/____/____

Date of most recent personal contact with borrower: ____/____/____

## Property information

Date last inspected: ____/____/____

Condition: ❑ Excellent ❑ Good ❑ Fair ❑ Poor ❑ Maintenance required

Occupancy status: ❑ Vacant/Secured ❑ Vacant/Unsecured ❑ Borrower ❑ Tenant ❑ Unknown occupant

## Recommendation

A. Repayment plan over six (6) months
B. Special forbearance
C. Modification
D. Foreclosure
E. Deed-in-Lieu
F. Short payoff
G. Charge Off

Letter above that corresponds to the primary reason for default: _______

Estimated attorney fees: $ __________ Estimated trustee fees: $ ____________

Estimated amount to reinstate Superior Lienholder: $ _____________

Projected advances to Superior Lienholder during foreclosure: $ ____________

Estimated advances for taxes and insurance: $ ____________

## Background information to fully support recommendation

***If necessary, attach a separate sheet for additional comments***

Be sure ALL supporting Forms and Documentation are attached to Approval Form

Authorized Signature

Prepared by

Typed name & title

Date prepared

Telephone number

Telephone number

## For GMAC-RFC use only:

Date: ____/____/____ Signature: ____________________________________ Name: ______________________________

# Expense Report

24A13

| Date ID # | |
|---|---|
| Client/Servicer Loan number | GMAC-RFC Loan number |
| Client/Servicer name | Borrower name |
| Client/Servicer address | Property address |

**Check the applicable boxes below:**

❑ Pre-Acquisition ❑ Post-Acquisition

**Statement of Expenses**

1. Trustee fees/attorney fees $__________
2. Sheriff fees __________
3. Court costs (recording, filing fees, etc.) __________
4. TSG Policy __________
5. Advertising costs __________
6. Bankruptcy/attorney fees. If multiple, list dates and case numbers __________
7. Preliminary/date down title fees also date of policy __________
8. Preservation (trash removal, winterizing, securing, etc.) __________
9. GMAC-RFC approved repairs __________
10. Mortgage insurance premiums __________
11. Hazard insurance premiums __________
12. Current real estate taxes __________
13. Delinquent real estate taxes __________
14. Appraisal/BPO fees. Include date of appraisal(s) / BPO __________
15. Other expense(s) (specify) __________

______________________________

**A. Subtotal (Lines 1 through 15)** $__________

**Advances to Superior Lienholder (if applicable)**

16. Monthly payments @ $___________ X _______ (number of months paid) - - - - - - - - - - - - $_________________

    If Loan is an adjustable, please attach separate sheet with payment breakdown.

17. Monthly late charge @ $_________ X (number of months paid) - - - - - - - - - - - - - - - - _________________

18. Foreclosure fees - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - _________________

19. Attorney fees - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - _________________

20. Property inspection fees - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - _________________

21. Other advances (specify)- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - _________________

    ______________________________________________________________________________

**B. Subtotal (Lines 16 through 21)** **$_________________**

**Less:**

22. Escrow/Impound balance refund - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - $(_______________)

23. Hazard insurance refund - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - (_______________)

24. Funds in suspense - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - (_______________)

25. Other (specify) - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - (_______________)

    ______________________________________________________________________________

**C. Subtotal (Lines 22 through 25)** **$_________________**

**D. Total due Client/Servicer (add A and B and subtract C)** **$_________________**

Attach copies of billing and proof of payment for ALL of the above.

I hereby certify that the information is true to the best of my knowledge and belief.

| | |
|---|---|
| ______________________________ | ______________________________ |
| Authorized Signature | Prepared by |
| ______________________________ | ______________________________ |
| Typed Name & Title | Date prepared |
| ______________________________ | |
| Telephone number | |

# Write-Off / Liquidation Report

24A14

| Servicer Loan number | GMAC-RFC Loan number |
|---|---|
| Servicer name | Servicer address |
| Date Second Trust Deed was written off | **Total amount of write off** |
| Will a Foreclosure/REO Expense Report (GMAC-RFC Form 2409) be filed? ❑ Yes ❑ No | |

## First Trust Deed Information

| Name of First Trust Deed Servicer | Contact and telephone number |
|---|---|
| Date of First Trust Deed foreclosure sale | Total bid amount |
| Property reverted to: | |

# 1 - 4 Family Property Inspection Report

24A15

| Reason for Inspection: ❑ Delinquency ❑ Foreclosure ❑ REO ❑ Charge-Off ❑ Other (explain) | |
|---|---|
| Client/Servicer Loan Number | GMAC-RFC Loan Number |
| Client/Servicer Name and ID Number | Borrower Name |
| Client/Servicer Mailing Address | Property Address |

## Section A

| Property Occupied By: ❑ Owner ❑ Tenant ❑ Vacant ❑ Abandoned ❑ Other (explain) | |
|---|---|
| If not occupied by owner, Name of occupant | If Owner-Occupied obtain Name of **First Lienholder** |
| Monthly Rent | Telephone Number and Contact Name |
| Is rent paid current? ❑ Yes ❑ No | Address of First Lienholder |
| Rent paid to whom | Loan Number |
| Terms of the Lease | Are payments with First current? ❑ Yes ❑ No<br>Monthly Payment Amount |

## Section B

| Is Property listed for Sale? ❑ Yes ❑ No | If yes, provide Name of Company and telephone number |
|---|---|
| Is Property vacant or abandoned? ❑ Yes ❑ No If yes, continue: | |
| Is house locked and secure? ❑ Yes ❑ No | Is there personal property in house? ❑ Yes ❑ No<br>If yes, explain contents and provide photos. |
| Is house winterized? ❑ Yes ❑ No | |
| Do you have keys to house? ❑ Yes ❑ No | |

## Section C

| Condition of interior: ❑ Good ❑ Fair ❑ Poor ❑ Unknown | Condition of exterior: ❑ Good ❑ Fair ❑ Poor |
|---|---|
| If condition is Fair or Poor explain: | |
| Are repairs needed to interior? ❑ Yes ❑ No | If yes, attach list of repairs needed and photos. |
| Are repairs needed to exterior? ❑ Yes ❑ No | If yes, attach list of repairs needed and photos. |
| Are repairs completed? ❑ Yes ❑ No | If yes, attach list of repairs completed and photos. |

## Section D

| Name of person interviewed and relationship to Borrower: | Borrower's whereabouts and Home and Work telephone number(s): |
|---|---|
| Summary of findings (including, if applicable, reason for delinquency and Borrower's intentions. | |
| Summary of instructions left for Borrower: | Were instructions ❑ verbal ❑ in writing |

## Section E

Comments and/or recommendations

| Name of Inspection Company | Inspector's Name |
|---|---|
| Date of Inspection Date of previous inspections | Inspector's Signature |
| Name of contact person at Servicer's office | Telephone Number Of Contact |

# Completed Foreclosure Report

24A16

| Servicer Loan number | GMAC-RFC Loan number |
|---|---|
| Servicer name | Servicer address |
| Date Second Trust Deed went to Foreclosure Sale | Total amount of bid |
| Property reverted to: | |
| Is the property occupied? ❑ Yes ❑ No | If yes, by whom? |
| If vacant, is property secure? ❑ Yes ❑ No | |

## First Trust Deed Information

| Name of First Trust Deed Servicer | Contact and telephone number |
|---|---|
| Mailing address | Loan number |
| Current principal balance | Loan type |
| Monthly payment | Last paid installment |
| Is Loan impounded? ❑ Yes ❑ No | If yes, for what is it impounded? |
| If not impounded, what is the due date of the next tax installment and amount due? | What is the date of the next insurance payment and amount due? |

# Multipurpose Fax Transmittal

24A17

## Notification of Foreclosure Sale and Acquisition

Notification of foreclosure sale and expiration of any applicable redemption period is to be provided no later than the business day immediately following the date of both the sale and the expiration of the redemption period.

## Notification of Settlement Proceeds Wire

This form must be faxed to GMAC-RFC as notification on the same day that funds are wired. Use the fax number provided above. In settlement of: (*check one*)

- ❑ Short Payoff Settlement Transaction – Fax to attention of the Loss Mitigation Department
- ❑ Mortgage Insurer Settlement Transaction – Fax to attention of the REO Department

This fax serves as: (*check one*)

- ❑ Notification of Foreclosure Sale
- ❑ Notification of expiration of the redemption period and acquisition of title
- ❑ Notification of Settlement proceeds wire
- ❑ Notification Superior Lienholder has been liquidated and Loan has been written-off or charged-off

## Loan Information

| GMAC-RFC Loan number | Servicer Loan number |
|---|---|
| Due date of last paid installment | Unpaid principal balance |
| Foreclosure sale date | Projected redemption/confirmation date, if applicable. |
| Bid amount | Occupancy status |
| Successful bidder | Wire ID number |

***If Charge-Off, provide the following information***

| Date of Charge-Off | Charge-Off amount |
|---|---|
| Name of superior lienholder | Date superior lienholder liquidated 1st |
| Successful bidder | Sale amount |

## Borrower Information

| Borrower name(s) | Property address |
|---|---|
| IRS and other lien amount(s), if applicable | Settlement amount |

## Mortgage Insurance Information

| Mortgage insurance company and address | |
|---|---|
| Percent of coverage | Certificate number |

Signature

Date prepared

Typed name & title

# Payoff/Liquidation Report

24A18

| Client/Servicer Loan Number: | GMAC-RFC Loan Number: |
|---|---|
| Client/Servicer Name and ID Number: | Borrower Name: |
| Client/Servicer Mailing Address: | Property Address: |
| Payoff Date: | Charge-Off Date: |
| Foreclosure Sale Date: | |

**Reason:**

❑ Mortgage Payoff ❑ Third Party Sale ❑ Foreclosure

**Unscheduled Net Interest**

(Also needs to be captured on Line 2b of Remittance Reconciliation RFC Form 2305)

Calculate interest for number of days from first month up to but not including date of Payoff, Third Party Sale, or Foreclosure.

____________ X _________________ X ____________ Divided by 360 = ___________

Interest Rate Principal Balance Days Total

Date Funds Wired: _____________ (must be within 5 business days from date of liquidation)

Prepared By ______________________ Authorized Signature ______________________

Date Prepared ______________________ Typed Name & Title ______________________

Telephone Number ______________________

# Bankruptcy Status Report

| Date | Last contact with Borrower |
|---|---|
| Client/Servicer Loan number | GMAC-RFC Loan number |
| Client/Servicer name | Borrower name |
| Client/Servicer address | Property address |
| Unpaid principal balance | Last paid installment |

## Property Condition and Occupancy Status

Date of last inspection

Condition: ❑ Excellent ❑ Good ❑ Fair ❑ Poor ❑ Maintenance required

Occupancy status: ❑ Vacant/Secured ❑ Vacant/Unsecured ❑ Mortgagor ❑ Tenant ❑ Unknown occupant

## Bankruptcy Information

| Chapter filed | Case number |
|---|---|
| State | County |
| District | Date Notice filed |
| Date Petition filed | Proof of Claim filed |
| Date Claim filed | Amount of Claim |
| Date Bankruptcy discharged | Date Notification of Discharge |
| Date Stay lifted | Date notified |

Payment plan? ❑ Yes ❑ No Are plan payments current? ❑ Yes ❑ No Expiration date:

| Date of last payment (Pre-Petition) | Post-Petition |
|---|---|

## Superior Lienholder Information

| Name of Servicer | Loan number |
|---|---|
| Address of Servicer | Contact and telephone number |
| Principal balance | Last paid installment |
| Are taxes current?  ❑ Yes  ❑ No | If no, what is amount due? |
| Status of Lien | |

Prepared by and date

Authorized Signature

Telephone number

Typed Name and Title

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE ______________ OF _____________

IN THE MATTER OF

Debtor(s).

) **Chapter 7 Case No. 199-07307-GP**
)
) REAFFIRMATION AGREEMENT
) AGREEMENT UNDER SECTION
) 524 OF THE BANKRUPTCY CODE;
) DECLARATION OF DEBTORS
) COUNSEL IN SUPPORT OF
) REAFFIRMATION AGREEMENT;
) AND ORDER THEREON
)
) HEARING
)
) DATE:
) TIME:
) ADDRESS/COURTROOM

**REAFFIRMATION AGREEMENT**
**UNDER SECTION 524 OF THE BANKRUPTCY CODE**

**WHEREAS,** the Debtor(s) filed a voluntary bankruptcy petition under Chapter 7 of title 11, United States Code, Case No. 99-07307 pending in the United States Bankruptcy Court for the District of ____________. The Debtor(s) economic obligations to GMAC-RFC, ____________________________ the (A Residential Secured Creditor), were duly listed in the bankruptcy schedules filed by the Debtor(s);

**WHEREAS,** the Debtor(s) have not yet been granted a discharge under 11 U.S.C. 727 in the above-captioned bankruptcy case;

**WHEREAS,** the Residential Secured Creditors claim(s) described below constitute consumer debt(s) as that term is defined in Section 101(8) of the Bankruptcy Code;

**WHEREAS,** the Debtor(s) consumer debt to GMAC-RFC is secured by the Debtor(s) real property as provided for in Sections 524 (c)(6)(B) and 524(d)(2) of the Bankruptcy Code;

**WHEREAS,** it is the Debtor(s) desire and intention in consideration of the promises and representations hereinafter made by GMAC-RFC, to reaffirm, in the amount shown below, its secured debt(s) owed to GMAC-RFC;

Debtor(s) Promissory Note, in favor of GMAC-RFC or its assignee encumbering the Debtor(s) real property dated __________________________, ________ in the original principal amount of $________________ payable in monthly installments and bearing interest as therein provided secured by a Mortgage and duly recorded;

**WHEREAS,** GMAC-RFC hereby agrees to forbear from further collection activity or enforcement under applicable non-bankruptcy law, of the mortgage lien as a result of the imposition of the automatic stay as provided for under Section 362 of the United States Bankruptcy Code, on condition that the Debtor(s) comply with the terms and provisions provided in this Reaffirmation Agreement;

**WHEREAS,** the Debtor(s) is (are) obligated to pay the aforementioned indebtedness, whether as original maker or assumptor thereof and agree(s) in consideration for GMAC-RFC agreement to reinstate the indebtedness according to its original terms and tenor of the promissory note described above, Debtor(s) agree herein to make all the future monthly payments of principal, interest, taxes and insurance and all other lawful payments when due: and

**IT IS THEREFORE AGREED, CONTRACTED AND COVENANTED** between GMAC-RFC and the Debtor(s) to reaffirm and reinstate the debt(s) owed to GMAC-RFC by the Debtor(s) as follows:

1. GMAC-RFC and the Debtor(s) agree and reaffirm Debtor(s) obligations to GMAC-RFC in the principal amount of $__________ with and interest rate of ______%, and monthly payments of $_________ and as reaffirmed by this Reaffirmation Agreement which shall continue to be properly perfected and secured by a Lien and Mortgage on the Debtor(s) real property described as follows: __________________________________.

2. GMAC-RFC and Debtor(s) agree and hereby expressly provide that any breach or default by Debtor(s) or any of the payment provisions provided in this Reaffirmation Agreement shall be deemed a breach of the provisions of the original Promissory Note and Mortgage, and will automatically accelerate the debt pursuant to the terms of the Promissory Note and Mortgage, and this will trigger the default provisions of the Mortgage and the rights, remedies and powers thereunder granted to GMAC-RFC.

3. In consideration for payment of the sums provided herein and the reaffirmation for the Debt(s) owed to GMAC-RFC by the Debtor(s), GMAC-RFC agrees to permit Debtor(s) to retain the sole possession and use of such property for as long as the payments set forth herein of this Reaffirmation Agreement are timely made and the Debtor(s) comply(ies) with the terms of the Promissory Note and Mortgage.

4. It is further agreed by GMAC-RFC and Debtor(s) that the provisions of this Reaffirmation Agreement provided herein do not, in any way other than the provisions for the repayment of the arrearages, alter, waive or modify the rights of GMAC-RFC to request payment, or proceed with foreclosure as provided by the original Promissory Note and Mortgage.

**5. THE DEBTOR(S) MAY AT ANY TIME WITHIN SIXTY DAYS OF EITHER THE FILING OF THIS REAFFIRMATION AGREEMENT WITH THE UNITED STATES BANKRUPTCY COURT OR ANY TIME PRIOR TO THE DISCHARGE OF THE DEBTOR(S) IN BANKRUPTCY, WHICHEVER OCCURS LATER, RESCIND OR CANCEL THIS REAFFIRMATION AGREEMENT BY DELIVERING WRITTEN NOTICE THEREOF TO GMAC-RFC BANKRUPTCY DEPARTMENT, ATTN: ______________________________ IN SUCH EVENT THIS REAFFIRMATION AGREEMENT SHALL BE DEEMED NULL AND VOID AND OF NO EFFECT.**

**6. THE DEBTOR(S) ACKNOWLEDGE THAT THIS AGREEMENT IS NOT REQUIRED UNDER THE BANKRUPTCY CODE, NOR UNDER NON-BANKRUPTCY LAW NOR UNDER ANY AGREEMENT NOT IN ACCORDANCE WITH THE PROVISIONS OF SECTION 524 OF THE UNITED STATES BANKRUPTCY CODE.**

**7. THE DEBTOR(S) HAVE ALSO ACKNOWLEDGED THAT THEIR ECONOMIC OBLIGATIONS HEREUNDER WILL NOT IMPOSE AN ECONOMIC HARDSHIP ON EITHER THEMSELVES OR THEIR DEPENDENTS.**

**8. THE DEBTOR(S) ALSO ACKNOWLEDGE THE ADVERSE CONSEQUENCES THAT CAN OCCUR IF THEY DO NOT COMPLY WITH THE TERMS OF THIS REAFFIRMATION AGREEMENT.**

9. Debtor(s) agree(s), as an express condition to this Reaffirmation Agreement, to authorize their attorney to file with the United States Bankruptcy Court, this Reaffirmation Agreement and to otherwise comply with the requirements for the reaffirmation of debt(s) under 11 U.S.C. Section 524.

10. Attached to this agreement is the signed affidavit of ____________________, Attorney for the Debtor(s), who has represented the Debtor(s) during the course of the negotiation of this Reaffirmation Agreement, as required by 11 U.S.C. Section 524(c)(3) of the Bankruptcy Code. The Debtor(s) attorney's affidavit explains under penalty of perjury that he/she believes the Debtor(s) duties under this Reaffirmation Agreement will not impose an economic hardship on the Debtor(s) and their dependents. Further, the Debtor(s) attorney's affidavit declares that the Reaffirmation Agreement is in the best interest of the Debtor(s) and their dependents. Finally, the Debtor(s) attorney's declaration testifies that he/she explained the legal consequences of this Reaffirmation Agreement, including without limitations the consequences of a default under this Reaffirmation Agreement, and that this Reaffirmation Agreement is not required under the Bankruptcy Code, nor is it required under applicable non-bankruptcy law.

11. This Reaffirmation Agreement is the entire Reaffirmation Agreement between the parties and any verbal agreements or representations made by or between the parties are hereby declared void and unenforceable. A signed copy of this Reaffirmation Agreement shall be given to each party to the Agreement.

ORDER

**IT IS SO ORDERED** that the Reaffirmation Agreement provided for herein between GMAC-RFC and the Debtor(s) complies with the provisions of Section 524 of the Bankruptcy Code, and this is approved in its entirety.

Signature of Creditor___________________________ Date_______________

Signature of Debtor____________________________ Date_______________

Signature of Joint Debtor________________________ Date_______________

Signature of Debtors Attorney___________________ Date_______________

DATED: ________________ _________________________________

Honorable__________________
Judge of the United States Bankruptcy Court

# Workout Documentation Requirements

The Servicer should submit to GMAC-RFC, along with the completed Workout Recommendation Form, copies of all documentation that supports the proposal. **Common Sense** is often an overriding factor when evaluating a workout option. If certain information or documentation cannot be obtained and the Servicer believes that a specific workout is appropriate, the Servicer should submit a recommendation along with all available documentation.

The Servicer should submit the following documentation, along with completed Workout Information and Recommendation Form for consideration:

1)  Letter dated and signed by Borrower describing circumstances surrounding the default and the need for assistance.

2)  Financial Statement listing assets, liabilities and income.

3)  Copies of two most recent years' Federal Income Tax Returns.

4)  Copies of two most recent pay stubs (not applicable if self-employed).

5)  Copy of title rundown showing all liens and encumbrances.

6)  Copy of recent Broker's Price Opinion/Appraisal.

7)  Current credit report (no more than 60 days old) on all Borrowers.

8)  Status of senior lien (includes mortgagee, unpaid principal balance, payment amount and due date).

9)  Cost Evaluation: a gain or loss estimate of property acquisition via foreclosure and REO disposition.

10) **Accommodation/short sale only**: estimated Client cost (pre-settlement statement). This statement should list the purchase amount and all Client costs, including, but not limited to the senior lien Payoff, taxes due, and junior liens.

11) **Accommodation/short sale only**: copy of signed Purchase Agreement and estimated closing costs.

# Workout Recommendation

24A22

Please attach Workout Documentation Requirements (GMAC-RFC Form 24A21) to all recommendations.

## Workout Type (Select One):

### ☐ A) Lien Release with Reaffirmation

Purchase Amount $ ____________________

Anticipated Proceeds (includes cash from Borrower): $ ____________________

Anticipated Closing Date: ____ / ____ / ____

*Note: Borrower must execute reaffirmation agreement, at or above Note Rate, for full deficiency amount.*

### ☐ B) Short Sale

Purchase Amount: $ ____________________

Anticipated Net Proceeds: $ ____________________

Anticipated Closing Date: ____ / ____ / ____

Borrower Participation Cash: $ ____________________

Unsecured Note: $ ____________________ Rate: __________% Term: __________ Months

### ☐ C) Negotiated Release

Borrower Participation Cash $ ____________________

Unsecured Note: $ ____________________ Rate: __________% Term: __________ Months

### ☐ D) Capitalization/Modification

Total Past Due Amount: $ ____________________

Borrower Contribution: $ ____________________

Amount to be Capitalized: $ ____________________

New Rate: $ ____________________

Original DTI: ____________________

New DTI: ____________________

### ☐ E) Deficiency Judgment

### ☐ F) Deed in Lieu of Foreclosure

### ☐ G) Foreclosure

RFC Number: ______________________________ Servicer Number: ___________________________________

In the space provided below, describe the circumstances surrounding the default, as well as the reasons why you believe the recommended workout plan is appropriate.

Submitted by:____________________________________ Approved by:________________________________________

Date: _________/_________/__________ Date: _________/_________/__________

Approved by:___________________________________

Residential Funding Company, LLC (f/k/a Residential Funding Corporation)

Date: _________/_________/__________

# Personal and Financial Information

24A23

Account # ____________________ Internal Reference # ____________________

Property ____________________________________________

____________________________________________

You are asked to complete and submit this Personal and Financial Information Form (hereinafter referred to as "Form") in response to your inquiry concerning assistance with your referenced obligation. Upon our receipt of the requested information and documentation, we will evaluate your situation and determine what alternatives, if any, may be available to facilitate a resolution. Please contact us toll-free at (800) ______-_________ if you have any questions about the completion of this Form or any other issues.

## Borrower(s) Authorization and Certification

I (We) obtained credit secured by the referenced Property. I (We) have described my (our) situation via completion and submission of this Form. I (We) certify that all information and documentation presented herein is true, accurate and correct to the best of my (our) knowledge. I (We) understand that my (our) request for assistance in no way obligates Lender/Servicer to provide assistance. I (We) further understand that any assistance offered is for loss mitigation purposes.

My (Our) execution of this Form authorizes Lender/Servicer to:

- Obtain Credit Information from any Credit Repository.
- Verify any current or previous employment, income and asset and/ or liability information.
- Obtain information or documentation from any source, including but not limited to Realtor(s), Escrow and/ or Title Agent(s), Attorney(s), Appraiser(s), Lender(s), and any Federal, State or Local Agencies.

By signing below, I (we) understand that Lender/Servicer will be relying on the accuracy of the information and documentation contained in and attached to this Form. If I (we) misrepresent or falsify information or documentation that induces Lender/Servicer to take action that would not have been otherwise taken, I (we) may be liable for any and all losses and/or damages suffered by Lender/Servicer and/or its insurer.

Borrower Signature ______________________________ Date ____________________

Borrower Signature ______________________________ Date ____________________

## A) Personal

Borrower Full Legal Name ______________________________

Social Security # ______________________________

Marital Status ☐ Single ☐ Married ☐ Separated ☐ Divorced

Current Physical Address (No Post Office Box) ______________________________

______________________________

Home Phone # ( ) - ______ Work Phone # ( ) - ______

Co-Borrower Full Legal Name ______________________________

Social Security # ______________________________

Marital Status ☐ Single ☐ Married ☐ Separated ☐ Divorced

Current Physical Address (No Post Office Box) ______________________________

______________________________

Home Phone # ( ) - ______ Work Phone # ( ) - ______

## B) Property

Occupancy Status ☐ Owner ☐ Tenant ☐ Vacant

Condition ☐ Poor ☐ Fair ☐ Good ☐ Excellent

Listed for Sale ☐ No ☐ Yes If yes, please provide the following information:

Name of Realtor ______________________________

Real Estate Company ______________________________

Realtor Business Phone # ( ) - ______

Asking Price $ ______________ Months listed ____________

## C) Employment

### BORROWER

Are you currently employed? ☐Yes ☐ No    Self-employed ☐Yes ☐ No

Name and address of current employer (or business if self-employed):

______________________________

______________________________

# of years w/current employer ____________    Type of business ____________

Your Position/Title ______________________________

### CO-BORROWER

Are you currently employed? ☐Yes ☐ No    Self-employed ☐Yes ☐ No

Name and address of current employer (or business if self-employed):

______________________________

______________________________

# of years w/current employer ____________    Type of business ____________

Your Position/Title ______________________________

## D) Lien Information

Your obligation to Lender/Servicer is secured by a Second Lien on title to your Property. Please provide First Lien information so that we may properly evaluate your situation. Keep in mind that we may have to coordinate an alternative with the First Lienholder; therefore, this information is very important.

Name of First Lienholder ______________________________

Loan Number ____________    Phone # (     )     - ____________

Unpaid Principal Balance $ ____________    Monthly Payment $ ____________

☐ Current ☐ Past Due    If past due, number of months delinquent ____________

## E) Monthly Income

| | Borrower | Co-Borrower |
|---|---|---|
| Gross Monthly Income | $ | $ |
| Deductions | $ | $ |
| Federal Income Taxes | $ | $ |
| State Taxes | $ | $ |
| Local Taxes | $ | $ |
| Medical-Dental Insurance | $ | $ |
| Life Insurance | $ | $ |
| Retirement (401k) | $ | $ |
| Add other income from any source (explain) | $ | $ |
| Rental Income | $ | $ |
| Other (explain) | $ | $ |
| NET INCOME | $ | $ |

COMMENTS, IF ANY, REGARDING INCOME:

## F) Assets

| DESCRIPTION | AMOUNT | FINANCIAL INSTITUTION |
|---|---|---|
| Cash | $ | |
| Checking Account(s) | $ | |
| Money Market(s) | $ | |
| Savings Account(s) | $ | |
| Certificate(s) of Deposit | $ | |
| Mutual Fund | $ | |
| Mutual Fund | $ | |
| Mutual Fund | $ | |
| Individual Stocks | $ | |
| Whole Life Insurance | $ | |
| 401k(s) | $ | |
| IRA(s) | $ | |
| Other (explain) | $ | |
| Other (explain) | $ | |
| Other (explain) | $ | |

Do you own Real Estate other than the Property secured by our lien? ☐ No ☐ Yes

If yes, please provide the following information:

| Full Property Address | Date Acquired | Mortgage Balance(s) | Current Value |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

## G) Liabilities

### Automobile Loans

| Balance | Financial Institution | Monthly Payment | Vehicle Type |
|---|---|---|---|
| $ | | $ | |
| $ | | $ | |
| $ | | $ | |
| $ | | $ | |

### Secured Loans (Mortgages/Home Equity Loans or Lines)

| Balance | Financial Institution | Monthly Payment | Property Address |
|---|---|---|---|
| $ | | $ | |
| $ | | $ | |
| $ | | $ | |
| $ | | $ | |

### Unsecured Loans (Credit Cards and Personal Loans)

| **Total Balance** of ***all*** Credit Cards and Personal Loans (includes Visa, MasterCard, American Express, Department Store and Gasoline Cards, and Finance Companies | **Total** of ***all*** your minimum monthly payments per the terms of your Credit or Loan Agreements |
|---|---|
| $ | $ |

### Other Obligations (Any other debt or responsibility not listed above)

| Balance | Monthly Payment | Description of Obligation |
|---|---|---|
| $ | $ | |
| $ | $ | |
| $ | $ | |

## H) Explanation

Explain all of the events that are causing you to encounter difficulty with the maintenance of your obligation. In addition, describe what alternative(s), you believe, would resolve your situation. Please be specific and use additional paper if necessary. Print clearly.

## I) Required Attachments and Mailing Instructions

The following documentation must accompany this completed Form.

1. Copies of your most recent two Federal Income Tax Returns. If you did not file Tax Returns submit a copy of your IRS Request for Extension Form. If you cannot locate copies of your Tax Returns you may be required to execute IRS Form 4506, which will enable Lender/Servicer to request copies directly from the IRS.

2. Copies of your two most recent Pay Stubs (not applicable for the self-employed).

3. Copies of any and all documentation that supports or confirms your need for assistance.

Submit this completed Form, along with the required attachments, to the attention of the Specialist with whom you have been communicating at Lender/Servicer. It is recommended that you use an express mail service to insure an accurate and timely delivery.

GMAC RFC Servicer Guide Version 2-07-G01 effective November 1 2007 Pg 345 of 364

**Mail to:**

Page 8 of 8

343

Personal and Financial Information
GMAC-RFC Form 24A23 (11/04)

BT000664

# Workout Information

24A24

| GMAC-RFC Number: | Servicer Loan Number: |
|---|---|
| Submitted By: | Submission Date: |
| Telephone: ( ) | |

## A) Account Information

Unpaid Principal Balance: $ ____________ Days Past Due: ____________

Note Rate: ____________ % Monthly Payment: $ ____________

Cost Evaluation Results (estimated Recovery via acquisition and REO disposition): $ ____________

## B) Senior Lien Information

Servicer Lender: ____________

Unpaid Principal Balance: $ ____________ Months past due: ____________

Foreclosure Initiated: ☐ No ☐ Yes

Status Date: ____________

## C) Property Information

Current Value: $ ____________ As of Date: ____________

Occupancy Status: ☐ Owner ☐ Tenant ☐ Vacant

Status Date: ____________

## D) Reason For Default

☐ 1) Unemployment ☐ 4) Illness Medical ☐ 7) Excessive Credit Use

☐ 2) Death ☐ 5) Marital Difficulties ☐ 8) Other ____________

☐ 3) Relocation ☐ 6) Loss of Income ____________

## E) Borrower Information

Credit History: ☐ Excellent ☐ Good ☐ Fair ☐ Poor

FICO Score: ____________

Borrower Occupation: ____________

Co-Borrower Occupation: ____________

Bankruptcy Filed: ☐ No ☐ Yes ☐ Joint ☐ Individual

Chapter: ____________ Discharged: ☐ No ☐ Yes Date: ____________

# Loan Servicing General Accounting Reporting Requirements 24A25

## General Loan Servicing Reports

1. ***Paid-In-Full Report***
   Sent to GMAC-RFC SDG Department.

2. ***Flood Insurance Expiration Report***
   Pending issue. Report indicating policy expiration dates for Borrowers in a flood zone.

## Collection Reports

1. ***Credit Card Charge-Off Report.***

2. ***Pending Charge-Off Credit Card Report.***

3. ***Over Line Report.***

4. ***Annual Fees Received/Waived Report.***

5. ***Post-Payoff Log Report.***

Unless indicated, all reports are due monthly and due by the 5th business day following the month-end for the reporting period. All reports should be sent to the GMAC-RFC Burbank office. GMAC-RFC Burbank will forward a copy of the reports to its affected areas.

## Accounting Reports

1. ***Daily Reconciliation Sheet***
   This report rolls forward unpaid principal, cumulative interest earned and not collected, and cumulative fees earned and not collected for the business day. This report should be sent to GMAC-RFC Finance Department the following business day.

   Principal roll forward should be broken down into at least the following components:

   - GMAC-RFC funded initial draw boarded for the day.
   - Principal drafts made (HELOC's) for the day.
   - Principal payments received for the day.

   Interest and fees earned and not collected, respectively, should be broken down into at least the following components:

   - Interest and fees assessed for the day.
   - Interest and fees paid for the day.

2. ***Bank Funding Report***
   This report is a summary of the cash activity for the business day and the net amount owed to or from GMAC-RFC. This report should be sent to the GMAC-RFC Finance Department the following business day.

3. ***Estimated Journal Entry Report***
   This report should be sent on the first business day after month-end, indicating the estimated servicing fee for the previous month.

4. ***Actual Journal Entry Report***
   Report indicating the actual servicing fee assessed for the previous month.

Unless indicated, all reports are due by the 5th business day following the month-end for the reporting period. All reports, unless otherwise indicated, should be sent to GMAC-RFC Finance Department.

# Designated Servicer Directory 2500

The Client should refer to this directory when preparing and submitting Servicing Packages for first mortgage servicing released programs.

## Designated Servicer

GMAC Mortgage, LLC

## Transfer Notification Requirements

***All property insurance policy endorsements should state the following:***
GMAC Mortgage, LLC, its successors and/or assigns,
PO 100585
Florence, SC 29501-0585

***All taxing authority correspondence and bills should be sent to:***
GMAC Mortgage, LLC
P.O. Box 890037
Dallas, TX 75389

***All mortgage insurance correspondence should be sent to:***
GMAC Mortgage, LLC
MI Department
P.O. Box 890035
Dallas, TX 75389

## Payments

Borrowers should be advised to use this address when mailing payments:

*U.S. Mail*
GMAC Mortgage, LLC
P.O. Box 650515
Dallas, TX 75265

*Overnight Address*
GMAC Mortgage, LLC
1820 E Sky Harbor Circle South
Phoenix, AZ 85034-9700
Attn.: Automated Lockbox

Payments due the Designated Servicer must be endorsed to GMAC Mortgage, LLC and forwarded upon receipt by overnight mail service to the above address.

## Customer Service

Borrowers should also be advised to direct inquiries and correspondence to:
GMAC Mortgage, LLC
P.O. Box 890036
Dallas, TX 75389
The toll-free telephone number for Customer Service is 1.800.206.2901.

## Client/Servicer Inquiries

GMAC Mortgage, LLC
2711 North Haskell Avenue
Suite 900
Dallas, TX 75204

Refund request, payment address or other transfer related issues phone: 800.206.2901. Refund request documentation for payment of escrow FAX: 214.874.2032 or email: **reconciliations_fax@homecomings.com**.

Refer to the Monies Due Client Section in Chapter 8, Servicing Released of the GMAC-RFC Client Guide for guidelines on how to

expedite resolution of any servicing transfer discrepancies.

# GMAC-RFC Purchase Advice 2501

RUN ON: 04/07/97 GMAC-RFC PAGE 1
AT: 10:30:18 PURCHASE ADVICERFMPP040--01

S/S NUMBER: ABC MORTGAGE
WAREHOUSE/TITLE#: 000 - WARHOUSE BANK
FUNDING DATE: 04/04/97

GMAC-RFC LOAN NBR: 1111111 S/S LOAN NBR: AAAAA BORROWER NAME: SMITH

| COMMIT NUMBER | LOAN PROG | LOAN PURP | PURCHASE PRINCIPAL | NOTE/INIT INT RATE | ACCRUAL YIELD | PRICE PERCENT PRICE | ACCRUED INTEREST |
|---|---|---|---|---|---|---|---|

# GMAC-RFC Statement of Servicing Sold-First Mortgage 2502

RUN: 10/31/06 21:54:38

FOR: 10/31/06

RESIDENTIAL FUNDING COMPANY, LLC
STATEMENT OF SERVICING SOLD - POST
FIRST MORTGAGE
BY AAA THIRD BANK MORTGAGE, INC. FOR THE PERIOD OF 10/01/06 TO 10/31/06
POST PURCHASE LOANS TRANSFERRED THIS PERIOD
EFFECTIVE DATE OF TRANSFER 11/01/06

RFMPP526-01
PAGE 1

| YOUR LOAN # / PRODUCT GROUP | RFC LOAN # / SALE DATE | BASE PRICE / SVC FEE | EXCESS SVC / PREMIUM | ESCROW | SEASON ADJ / PREVL RATE | PRICE % | SCHEDULED / PRIN BAL | SERVICING / PREMIUM | FUNDS DUE / (TO)/FROM RFC |
|---|---|---|---|---|---|---|---|---|---|
| 1111122222 | 1234567890 | 1.00000 | | | | 1.00000 | 199,831.97 | 1,998.32 | (1,413.75) |
| | POST TOTALS: | | # OF TRANSFERS = | | 1 | | 199,831.97 | 1,998.32 | (1,413.75) |
| | TOTALS: | | # OF TRANSFERS = | | 1 | | 199,831.97 | 1,998.32 | (1,413.75) |

| | TOTAL | POST | SIMULTANEOUS |
|---|---|---|---|
| SERVICING PREMIUM SUBTOTAL | 1,998.32 | 1,998.32 | 0.00 |
| FUNDS DUE (TO)/FROM RFC | (1,413.75) | (1,413.75) | 0.00 |
| PRIOR PERIOD ADJUSTMENTS SERVICING PREMIUM | 0.00 | 0.00 | 0.00 |
| PRIOR PERIOD ADJUSTMENTS FUNDS DUE (TO)/FROM RFC | 0.00 | 0.00 | 0.00 |
| TOTAL AMOUNT DUE THIRD BANK MORTGAGE, INC. | 584.57 | 584.57 | 0.00 |

# Servicing Released Approved Flood Zone Determination Company and Fee Schedule

**(For All Product Types)**

**Flood Data Services, Inc. (FDIC)**

For any Simultaneous Sale of Servicing, where the Client does not provide a life-of-loan Flood Zone Determination Contract, GMAC-RFC will charge a fee to set up a flood zone determination contract. This cost will be deducted from the Funding Amount paid to the seller.

| | |
|---|---|
| FOR PROPERTIES LOCATED IN ANY STATE | $10.00 |

# Index

## A

Abandonment . . . 37
Abandonment Or Waste . . . 37
Accounting Cycle Cut-off Date . . . 9
Accounting Requirements . . . 1
ACH . . . 1
Action During Foreclosure . . . 70
Adjustable Rate Mortgages (ARM) . . . 17
Adjustment Letter . . . 1
Advances to Escrow/Impound Account . . . 16
Advances to Principal and Interest Custodial Account . . . 16
Affiliate . . . 1
Affiliated Persons . . . 1
AlterNet Guidelines . . . 1
Amortization Method . . . 3
Annual Servicer Certification . . . 4
Application For Approval Of A Transfer . . . 11
Application of Buydown Funds . . . 33
Application of Loan Payments . . . 3
Approval . . . 52
Approval Of The Application . . . 12
ARM Conversions . . . 2
ARM Indices . . . 18
Assessments . . . 6
Assumption Repurchase Option . . . 14
Assumptions . . . 18
Attorney And/Or Trustee Fee . . . 69
Audits and Inspections . . . 4
Authorization Of Sight Drafts . . . 7
Automated Valuation Model (AVM . . . 1

## B

Bad Faith Filings . . . . 64
Balloon Mortgage . . . . 2
Balloon Payment . . . . 2
Balloon/Re-set Mortgage . . . . 2
Bankruptcies . . . . 62, 27, 21
Bankruptcy Attorney's Fees . . . . 64
Bankruptcy Monthly/Periodic Reports . . . . 64
BIF . . . . 2
Borrower . . . . 2
Borrower Notification By Client . . . . 8
Borrower Relief Program Options . . . . 44, 14
Broker's Price Opinion . . . . 68, 2
Bulk Servicing Acquisitions . . . . 16
Business Day . . . . 3
Buydown Account . . . . 71

## C

Calculation Of New Mortgage Loan Rates . . . . 18
Calculation Of New Principal And Interest Constant . . . . 19
Calculation Of New Yield Rates . . . . 19
Change in Loan Setup . . . . 4
Change Of Servicer . . . . 5, 6
Charge Offs . . . . 24
Client . . . . 3
Client Guide . . . . 3
Client Representations and Warranties . . . . 3
Client/Servicer Contract . . . . 3
Client/Servicer Contract Warranties . . . . 11
Client/Servicer's Contact With Law Enforcement Agencies . . . . 38
Closing Notification & Penalties . . . . 92
Collection Records . . . . 33, 9
Collection Reports Sent to GMAC-RFC by Service . . . . 26
Collection Standards . . . . 15
Collection Techniques . . . . 32
Collections . . . . 9
Commitment . . . . 3
Commitment Date . . . . 3
Compensation . . . . 2
Compliance By Others . . . . 7
Compliance With Contract . . . . 10
Compliance With Laws . . . . 11

Compliance With Loan Documents . . . 7
Compliance with MERS Rules and Procedures . . . 7
Compliance With Servicing Warranties . . . 7
Compliance With Warranties . . . 11
Conditions For Approval . . . 6
Condominium . . . 79
Condominium Insurance . . . 28
Conforming First Mortgage Loans . . . 35
Continuing Servicer Obligations . . . 3
Contractual Obligations . . . 2
Conversion, Repurchase or Substitution . . . 19
Cooperation . . . 3
Credit Card Charge Backs . . . 14
Credit Life/Disability Insurance . . . 8
Custodial Accounts for Principal and Interest . . . 6
Cut-off Date . . . 3

# D

Deceased Borrower Notification . . . 13, 8
Deed-In-Lieu of Foreclosure . . . 56, 17
Deficiency Judgment . . . 69
Delinquencies . . . 31, 15, 9
Delinquency . . . 7, 3
Delinquency Rates . . . 3
Delinquency Servicing Requirements . . . 34
Delinquent Loans . . . 64
Delivery Date . . . 3
Delivery of Servicing Data . . . 2
Demand Deposit Account . . . 3
Denial Of The Application For Transfer . . . 13
Deposits To Custodial Accounts . . . 7
Designated Servicer . . . 2
Differences In Collection . . . 4
Disclosure of Information . . . 9, 3
Disqualification or Suspension . . . 2
Document Release And Execution Upon Payoff . . . 13
Document Release Transmittal . . . 95
Document Services Form . . . 94
Documentation . . . 6
Drive-by Inspections . . . 37
Due Date . . . 4
Due-on-Sale and Assumptions . . . 9
Duties Upon Termination . . . 22

# E

Early Scheduled Transfer .......... 4
Effective Date of Servicing Transfer .......... 10
Eligibility Standards .......... 1
Eminent Domain .......... 6
Endorsement .......... 23
Escrow .......... 14
Escrow Account for Postponed Improvements/Repairs .......... 9
Escrow/Impound .......... 4
Escrow/Impound Administration .......... 7
Escrow/Impound Custodial Accounts .......... 8
Event Of A Full Payment .......... 33
Event of Servicer Default .......... 4
Events of Servicer Default .......... 18
Events of Servicer Default Prior to Transfer .......... 3
Evidence Of Insurance .......... 17

# F

Failure To Comply With Receipt Deadlines .......... 10
Failure to Comply with Remittance Requirements .......... 17
Failure to Provide Timely Accounting Reports .......... 13
Failure to Provide Timely Loan Service Reports .......... 93
Fannie Mae .......... 4
FDIC .......... 4
FDIC Insured Depository .......... 4
Federal Restrictions .......... 10
Fees For Processing Transfer of Ownership .......... 14
FHA Title I .......... 15
FICO .......... 4
Fidelity Insurance .......... 29
Fidelity Insurance, PUD .......... 30
Fidelity, Errors And Omissions Insurance .......... 2
File Requirements .......... 11
Final Documents .......... 4
Flood Insurance .......... 23, 7, 4
Flood Zone Determination Notification .......... 8
Foreclosure Attorneys And Trustees .......... 67
Foreclosure Exception Report .......... 70
Foreclosure Sale Bidding Instructions .......... 73
Foreclosure Statement of Expenses .......... 77
Foreclosure, Full Payment .......... 72
Foreclosure, Notification .......... 73



Foreclosure, Partial Payment . . . . . 72
Foreclosure, Payment Of Obligations . . . . . 70
Foreclosure, Postponements . . . . . 73
Foreclosures . . . . . 64, 25
Freddie Mac . . . . . 4
FSLIC . . . . . 4
Funding Documents . . . . . 5

# G

Ginnie Mae . . . . . 5
GMAC-RFC . . . . . 5
GMAC-RFC Addresses . . . . . 3
GMAC-RFC Objective . . . . . 1
Government Notice Of Property Seizure To GMAC-RFC . . . . . 42
GPM Loans . . . . . 5
Grounds For Termination With Cause . . . . . 20

# H

Hazard Insurance . . . . . 22, 4
Hazard Insurance Carrier . . . . . 22
Hazard Insurance Deductible . . . . . 22
Home Equity Hazard Insurance . . . . . 6
Home Equity Loan/Second Mortgage Loan . . . . . 5
Home Equity Servicing Standards . . . . . 1
Homeowners' Association Fee . . . . . 92
Hours of Operation and Holidays . . . . . 2
HUD . . . . . 5

# I

Indemnification . . . . . 23
Independent Auditor's Opinion . . . . . 2
Individual Loan Accounting . . . . . 3
Individual Loan Servicing . . . . . 4
Initial Escrow Account Disclosure Statement . . . . . 5
Inspection Dates . . . . . 37
Inspections . . . . . 71
Institution of Foreclosure . . . . . 65
Institution of Foreclosures . . . . . 22

Insufficiencies During Foreclosure . . . . 16
Insurance . . . . 17
Insurance Charges . . . . 18
Insurance Loss Settlements . . . . 19
Insurance Policies . . . . 5
Insurance Requirements, Changes . . . . 18
Insured Depository . . . . 5
Interest on Escrows . . . . 9
Interest-in-advance . . . . 3
Interim Servicing . . . . 2
Interview with Borrower . . . . 36
IRS Form 1099 . . . . 96
IRS Reporting . . . . 7

# J

Junior Lien . . . . 5

# L

Late Fees . . . . 43
Legal Documents Necessary To Foreclose . . . . 66
Legal Expenses . . . . 81
Lender Paid Mortgage Insurance . . . . 25
Licenses And Registrations . . . . 11
Life of Loan Contract for Flood Zone Determination . . . . 13
Life-of-Loan Contract for Continual Flood Zone Determination . . . . 5
Line Increases . . . . 8, 10
Lines of Credit . . . . 9
Loan . . . . 6
Loan Documents . . . . 6
Loan Modifications . . . . 60
Loan Payoff Requests . . . . 11, 8
Loan Program . . . . 6
Loan Repurchase Restriction . . . . 15
Loan Setup/Fees . . . . 7
Loans Paid In Full . . . . 4
Loans Paid in Full . . . . 15
Loan-to-Value . . . . 6
Loss Mitigation . . . . 22, 3
Loss Mitigation Workouts . . . . 49, 14

# M

Maintenance and Security . . . . . . . . . . 91
Maintenance of Loan File by Servicer . . . . . . . . . . 3
Maintenance of Standards . . . . . . . . . . 8
Merger Of Actions . . . . . . . . . . 21
Merger or Consolidation of Servicer . . . . . . . . . . 15
MERS . . . . . . . . . . 6
MERS Compliance . . . . . . . . . . 11
Method To Transfer Remittances . . . . . . . . . . 15
MICR . . . . . . . . . . 6
Microfilmed Records . . . . . . . . . . 5
Military Indulgence . . . . . . . . . . 48
MIN . . . . . . . . . . 6
Minimum Contents of Loan File . . . . . . . . . . 3
Minimum Servicing Activities During Delinquency . . . . . . . . . . 34
Modification Analysis . . . . . . . . . . 61
Modifications . . . . . . . . . . 5, 18
MOM Loan . . . . . . . . . . 6
Monies Due Client . . . . . . . . . . 14
Monies Due Designated Servicer . . . . . . . . . . 14
Monies Paid for Servicing Released . . . . . . . . . . 13
Monthly/Periodic Reports . . . . . . . . . . 64
Mortgage Insurance . . . . . . . . . . 25
Mortgage Insurance Claims . . . . . . . . . . 85
Mortgage Insurer . . . . . . . . . . 7
Mortgage Loan Servicing . . . . . . . . . . 1
Mortgaged Premises . . . . . . . . . . 7
Mortgagee Clause . . . . . . . . . . 23, 29, 31
Multipurpose Loan Service Report . . . . . . . . . . 93

# N

Name in which to Foreclose . . . . . . . . . . 66
Natural Disaster Losses . . . . . . . . . . 19
NCUA . . . . . . . . . . 7
NCUSIF . . . . . . . . . . 7
NCUSIF Insured Depository . . . . . . . . . . 7
Net Worth Requirements . . . . . . . . . . 2
Non-Conforming Loans . . . . . . . . . . 34
Non-reimbursable Expenses . . . . . . . . . . 80
Non-solicitation . . . . . . . . . . 4
Note . . . . . . . . . . 7
Notice of Liens, Vacancy, Waste, Etc. . . . . . . . . . . 42

Notices To Borrowers . . . . . 20
Notification of Change in Servicer . . . . . 8
Notification of Change in Servicer Status . . . . . 15
Notification of Credit Bureau . . . . . 21, 13
Notification Of Foreclosure Sale And Acquisition Of Title . . . . . 74
Notification Of Junior Lien Holder . . . . . 5
Notification of Purchase . . . . . 13
Notification Process . . . . . 15
Notifying Credit Bureaus . . . . . 43

# O

Offer of Payment During Foreclosure . . . . . 72
oiler Explosion Insurance . . . . . 28
Overlimit . . . . . 8

# P

Partial Prepayments . . . . . 4, 7
Partial Release, Easements, and Eminent Domain . . . . . 6
Partial Releases . . . . . 12, 7
Payment Advances . . . . . 26, 23
Payment Of Insurance . . . . . 5
Payment Of Taxes . . . . . 6
Payment Plan/Extension . . . . . 20
Payoff/Liquidation . . . . . 7
Payoff/Liquidation File . . . . . 11
Penalties . . . . . 55
Penalties On Post-acquisition Expenses . . . . . 81
Penalties On Post-supplemental Expenses . . . . . 81
Penalties On Pre-acquisition Expenses . . . . . 81
Penalty For Failure To Notify Of Foreclosure Sale . . . . . 74
Per Diem . . . . . 7
Personal Contacts with the Borrower . . . . . 32
Pool Insurance . . . . . 87
Pool Insurance, Filing Claims . . . . . 88
Pool Insurance, Penalties . . . . . 89
Portfolio Credit Review . . . . . 13
Post Foreclosure Sale Procedures . . . . . 26, 23
Post Purchase Sale Of Servicing . . . . . 12
Post-acquisition Expenses . . . . . 78
Pre-acquisition Expenses . . . . . 78
Pre-foreclosure Sale/short Payoff . . . . . 51

Pre Foreclosure Sales . . . 15
Preseizure, Responding To Government Inquiry . . . 40
Primary Mortgage Insurance Cancellation . . . 25
Prime Loan . . . 7
Principal And Interest . . . 14
Principal and Interest Advances . . . 79
Principal And Interest Custodial Accounts . . . 7
Principal Curtailment . . . 14, 15
Principal Curtailments To Credit Line . . . 12
Processing Transfers Of Ownership . . . 10
Program Eligibility . . . 2
Proof of Compliance . . . 12
Property Inspection . . . 36, 28, 12
Property Seizure Follow-Up Inspection . . . 39
Property Seizure Reporting Information . . . 39
Property Seizures . . . 38
Property Seizure Follow-Up Remedies . . . 40
Public Liability Insurance . . . 29
Public Liability Insurance, PUD . . . 31
PUD Blanket Insurance Coverage . . . 30
PUD Common Property Coverage . . . 30
PUD Insurance . . . 30
Purchase of Servicing . . . 9

# R

Rate Reduction . . . 8
Rate Reduction Requests . . . 9
Real Estate Owned (REO) . . . 82, 7
Reamortization . . . 5
Reapplication Of Prior Prepayments . . . 5
Recalculation of Acceptable Delinquency Rates . . . 16
Receipt Deadlines . . . 10
Reconciliation by GMAC-RFC . . . 11
Reconciliation Of Custodial Accounts . . . 8
Record Maintenance . . . 3
Recovery Of Insufficiencies . . . 16
Rehabilitation . . . 85
Reimbursement . . . 54
Reimbursements On Processing Claims . . . 59, 75
Release of Loan Documents . . . 1
Remedies of GMAC-RFC . . . 18
Remittance of Sale Proceeds and Penalties . . . 90
Remittances . . . 13
Repayment Plan . . . 47
Reporting . . . 9

Reporting Method . . . . . 9
Reporting Preseizure Information . . . . . 38
Reporting to the Internal Revenue Service (IRS) . . . . . 95
Representations and Warranties of Servicer . . . . . 10
Repurchase As A Result Of Conversion . . . . . 19
Repurchase Or Substitution . . . . . 19
Request for Loan Service Approval . . . . . 94
Required Documentation and Reporting . . . . . 84
Required Interim Remittances . . . . . 15
Required Monthly Remittances . . . . . 14
Required Notices To GMAC-RFC . . . . . 20
Required Servicing Documents . . . . . 10
Re-set option . . . . . 8
Restrictions on Foreclosure Action . . . . . 42
Restrictions On Loan Eligibility . . . . . 3
Returned Mail . . . . . 3, 2
Review Of The Application . . . . . 11
Right of Set-Off . . . . . 24
Right To Cure . . . . . 15

# S

SAIF . . . . . 8
Sale Date . . . . . 10
Sale or Transfer of Servicing . . . . . 12
Sales to Affiliated Persons . . . . . 90
Scheduled Principal Balance . . . . . 9, 8
Scheduled Principal Balance/Effect Of Curtailments . . . . . 21
Scheduled Remittances And Reporting . . . . . 7
Security Instrument . . . . . 8
Seller . . . . . 8
Servicer . . . . . 8
Servicer Approval of Legal Documents . . . . . 5, 3
Servicer Contractual Obligations . . . . . 1
Servicer Guide . . . . . 8
Servicer Guide Online . . . . . 3
Servicer ID Number . . . . . 2
Servicer's Recommendation . . . . . 53
Servicer's Report to Mortgage Insurer . . . . . 41
Servicing Agent . . . . . 8
Servicing Agent Certification . . . . . 16
Servicing Released . . . . . 1
Servicing Released Premium (SRP) . . . . . 8
Servicing Released Submission of Purchase . . . . . 9
Servicing Released Warranties And Covenants . . . . . 4
Servicing Rights . . . . . 8



Servicing Standards . . . . . 1
Settlement . . . . . 54
Short Payoff . . . . . 15
Single Contract . . . . . 1
Special Flood Hazard Insurance . . . . . 28
Special Forbearance Relief Agreement . . . . . 47
Specific Warranties . . . . . 10
State . . . . . 9
Stop Payment Requests . . . . . 13
Subordination Requests . . . . . 4
Subordination Requirements . . . . . 12
Sub-Prime Loan . . . . . 9
Sub-Prime Loans in Foreclosure . . . . . 2
Sub-Prime Loss Mitigation . . . . . 3
Sub-Prime Second Trust Deeds . . . . . 3
Sub-Prime Servicing Standards . . . . . 1
Subservicing Election . . . . . 17
Substitution . . . . . 19
Substitution Date . . . . . 9
Superior Lienholder Mortgage Purchase . . . . . 26, 23
Supplemental Post-acquisition Expenses . . . . . 78
Sup-Prime Servicer Eligibility . . . . . 1

# T

Tax Parcel . . . . . 6
Tax Service Contract . . . . . 12
Tax Service Contracts . . . . . 6
Tax Service Notification . . . . . 8
Temporary Buydown . . . . . 9
Temporary Buydown Funds . . . . . 8
Temporary Indulgence . . . . . 45
Termination of Automatic Payment . . . . . 9
Termination of Servicing . . . . . 20
Termination Without Cause . . . . . 21
Terms Of Servicing Agent . . . . . 17
Third Party Sale . . . . . 74
Toxic Waste Or Other Environmental Hazards . . . . . 71
TransAction Reporting Method Description . . . . . 9
Transfer of Ownership . . . . . 10
Treatment Of Overlines For Home Equity Lines Of Credit . . . . . 8
Trustee's Sale Guarantee . . . . . 68

I
Page 12

GMAC-RFC

Servicer Guide
Index

## U

Updates and Amendments . . . . . 4

## V

Value . . . . . 10

## W

Welcome Package . . . . . 3
Workout Analysis Requirements . . . . . 50
Workout Documentation Requirements . . . . . 24
Workout Expenses . . . . . 51
Workout Program . . . . . 22
Write Offs . . . . . 24
Write-Offs . . . . . 58, 16

362

BT 000683