# EXHIBIT 6-B

Claimant's Responses to Interrogatories

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

---

RESIDENTIAL CAPITAL, LLC, et al.,

    Post-Effective Date Debtors                                Chapter 11

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RESCAP BORROWER CLAIMS TRUST,            Case No. 12-12020-mg

    Objector

v.

TIA DANIELLE SMITH,

    Creditor-Beneficiary

---

**CLAIMANT TIA SMITH'S INITIAL RESPONSE TO OBJECTOR'S FIRST SET OF INTERROGATORIES**

---

    Tia Danielle Smith, Claimant, by her attorney, Wendy Alison Nora of ACCESS LEGAL SERVICES provides the following preliminary responses to the First Set of Interrogatories, subject to the objection and reservation herein. By agreement with counsel for Objector, Ms. Smith will be producing responses to these Interrogatories on a rolling basis through December 22, 2015. Objector has been informed that relief from the Scheduling Order forthwith because expert and lay opinion testimony was not anticipated and has not been scheduled.

## GENERAL OBJECTIONS

    Ms. Smith cannot respond to these Interrogatories using the definitions supplied by Objector because some of the definitions of words and phrases supplied by the Objector would cause any response to Interrogatories containing those words and phrases to be false or misleading. Therefore, Ms. Smith will refer to the definitions of words and phrases she supplied in her written discovery when she substitutes those definitions for those supplied by the Objector.

    Most of the evidence and documents Ms. Smith needs to respond to these Interrogatories is in the exclusive control of GMAC Mortgage, LLC (GMACM), Homecomings Financial, Inc. (Homecomings), Residential Accredit Loans, Inc. (RALI), and Residential Funding Company, LLC (RFC).

## RESERVATION OF RIGHTS

    Ms. Smith reserves the right to update, amend or supplement these responses when she receives the responses to her written discovery propounded on November 20, 2015, notwithstanding any interpretation of the Scheduling Order setting a discovery closing date or

the denial of relief from the Scheduling Order should such relief be requested, opposed and denied.

## RESPONSES

**INTERROGATORY #1.** Set forth the name and last known address of all persons who have knowledge or who are believed to have knowledge of any facts relevant to the subject matter of the UCL Claim, and summarize the relevant knowledge he or she is believed or known to have.

**RESPONSE TO INTERROGATORY #1.**

**Ms. Smith objects to the form of this Interrogatory to the extent that it implies that Ms. Smith has discovered <u>all</u> of the witnesses who have personal knowledge of <u>any</u> facts relevant to the subject matter of the UCL. Discovery and investigation are pending and continuing. Without waiving the objection, Claimant responds:**

**a. Akerman LLP, 725 South Figueora Street, 38th Floor, Los Angeles, California 90017, counsel for Defendants Aurora Loan Services LLC, Mortgage Electronic Registration Systems, Inc., Deutsche Bank Trust Company Americas as trustee for the Certificate-Holders of the RALI 2007-QO1 Trust, Nationstar Mortgage LLC and Homesearch.com Realty Services, Inc.**

**Counsel, and presumably the Defendants, have knowledge of the facts in support of Claimant's UCL claim set forth in Claimant's Third Amended Complaint.**

**b. Wright, Finlay & Zak, 4665 MacArthur Court, Suite 200 Newport Beach, California 92660, counsel for Defendant Cal-Western Reconveyance Corporation**

**Counsel, and presumably the Defendant, have knowledge of the facts in support of Claimant's UCL claim set forth in Claimant's Third Amended Complaint.**

**c. Severson & Werson, 19100 Von Karman Avenue, Suite 700, Irvine, California 92612, Counsel for Debtors: GMACM, Homecomings, RALI and RFC**

**Counsel, and presumably the Defendants, have knowledge of the facts in support of Claimant's UCL claim, set forth in Claimant's Third Amended Complaint.**

**d. Attorney General Kamala Harris, 1300 I Street, Sacramento, California 95814**

**Attorney General Harris' office has knowledge of Claimant's UCL claim, which has been provided to the Attorney General for the State of California, and may have knowledge of some of the facts in support thereof.**

**e. Consumer Financial Protection Bureau, P.O. Box 4053, Iowa City, Iowa 52244**

**Consumer Financial Protection Bureau (CFPB) has knowledge of Claimant's UCL claim, which has been provided to the CFPB, and may have knowledge of the facts in support thereof.**

    **f.  Gregory Patterson, 1230 Rosecrans Avenue, Suite 300, Manhattan Beach, California 90266**

    **Counsel for IH4 Properties West, LLP**

    **Counsel may have knowledge of some of the facts in support of Claimant's UCL claim, set forth in Claimant's Third Amended Complaint.**

    **g.  Deanna Horst, Chief Claims Officer**

    **The RESCAP Liquidating Trust**

    **Ms. Horst is expected to testify that she has no personal knowledge of any facts and that all evidence she has provided to the Court was based on records and documents created by others.   She is expected to testify that she has no personal knowledge how the records and documents upon which she relies are created and maintained.**

**INTERROGATORY #2**. For all written and oral contacts and communications between you and the Debtors with respect to the subject matter of the UCL Claim, set forth the date of the contact or communication, the substance of the contact or communication, and the identity of the individuals who participated in such contact or communication.

**RESPONSE TO INTERROGATORY #2.**

    **Ms. Smith objects to the form of this Interrogatory to the extent that it implies that Ms. Smith had written and oral communications with employees of any of the Debtors regarding the subject matter of the UCL claim prior to the alleged sale, transfer or assignment of servicing rights to Aurora Loan Services, LLC (Aurora). Most of the conduct now complained of was concealed from the Claimant and still has not been completely discovered and was unknown prior to the alleged sale, transfer or assignment of servicing rights in the Mortgage Loan as described above.**

    **Without waiving this objection, Claimant responds:**

    **Claimant contacted Homecomings in or near mid-September, 2007 by dialing (800) 206-2901 to inquire about obtaining a loan modification.  Claimant does not recall the time. The Homecomings representative identified itself as Amerivan, #83243.  Homecomings explained because Claimant was current on her mortgage payments she would need to skip at least three (3) monthly mortgage payments to be considered for a loan modification. Claimant does not recall the time.  Claimant said she would consider Homecomings advice, thanked the representative and ended the call.**

    **On or near November 15, 2007, Claimant either spoke with Miriam an alleged representative of Homecomings or possibly GMACM regarding obtaining a loan modification.  Because Claimant was current on her Mortgage Loan, the representative advised and/or instructed Claimant she must skip at least 3 monthly mortgage payments in order to qualify for and apply for a loan modification. Claimant was also assured that she would not be considered in default.**

**INTERROGATORY # 3.** Identify any and all experts whom you expect to call at trial as an expert witness in the Contested Matter, and for each such expert witness, set forth his or her area of expertise in relation to the claims set forth in the UCL Claim.

**RESPONSE TO INTERROGATORY #3.**

**Objection is made because the current Scheduling Order does not address expert testimony and must be modified. Ms. Smith was proceeding pro se when the Scheduling Order was entered. She agreed to the proposed Scheduling Order provided by the Objector. The proposed Scheduling Order is not the Court's standard form Scheduling Order insofar as it does not address the discovery of opinion evidence.**

**Ms. Smith is seeking to obtain expert testimony from the following persons:**

**Associate Professor William K. Black**
**University of Missouri-Kansas City Law School**
**203B Manheim**
**500 E 52nd Street**
**Kansas City, Missouri 64110**
**Phone: 816-235-1314**
**(Initial Contact Pending)**

**Professor Black is an expert on regulation of financial institutions and the use of "liars loans" as a business fraud model. It has been discovered that Ms. Smith's loan was a liars loan because, after she signed her loan application, her income was altered to far exceed what she reported to AMN.**

**Nawaz Raja**
**42907 Park Brooke Court**
**Broadlands, Virginia 20148**
**BE(Mechanical) (Pak)**
**ME (Equipment)  (Pak)**
**LLB (Pak)**
**Member Pak Engineering Council (Pak)**
**Member Institute Of Engineers (UK)**
**Member American Society Of Mechanical Engineers(USA)**
**(540) 687-0004**

**Mr. Raja has conducted substantial research into the process of "securitization" and is expected to testify that the securities acquired from homeowners are sold multiple times and up to 20 times the face value of the securities.**

**Virginia Parsons**
**Publisher, Lead Writer**
**Deadly Clear**
**Kona, Hawaii**

**(808) 870-8992**

**Ms. Parsons has conducted substantial research into the process of "securitization" and is expected to testify to the process and procedures used in the securitization process, by which the collateral documents are sold multiple times; paid multiple times; and repeatedly re-hypothecated (pledged) as security to multiple entities.**

 **Attorney Gary Dubin**
 **55 Merchant St # 3100, Honolulu, HI 96813**
**Honolulu, Hawaii 96813**
**Phone:(808) 537-2300**
**(Initial Contact Pending)**

**Attorney Dubin is familiar with the use of homeowners' collateral documents as security for warehouse loans. It is believed that he can testify that, by engineering defaults, as happened in this case and hundreds of thousands of others where homeowners were advised to skip payments in order to be able to qualify for loan modifications, mortgage insurance and other third party payments were obtained by mortgage servicers.**

**INTERROGATORY # 4.** For each expert identified in response to the preceding Interrogatory, provide a complete statement of the expert's opinions and the basis therefor; the facts and data considered in forming the opinions; the treatises, authorities or other sources upon which the expert will rely to support his or her testimony or conclusions, the qualifications of the expert, including a list of all publications authored by the expert within the preceding ten years; the docket number, names of the parties, date, and court of all cases in which the expert testified at deposition or trial in the past five years; whether compensation has been or is to be paid for the report and testimony and, if so, the terms of the compensation; and identify any and all written reports rendered by the expert.

**RESPONSE TO INTERROGATORY #4.**

**Objection is made because the current Scheduling Order does not address expert testimony and must be modified. Ms. Smith was proceeding pro se when the Scheduling Order was entered. She agreed to the proposed Scheduling Order provided by the Objector. The proposed Scheduling Order is not the Court's standard form Scheduling Order insofar as it does not address the discovery of opinion evidence.**

**EXPERTS ARE BEING VETTED, OPINIONS AND CURRICULA VITAE ARE BEING SOUGHT.**

**INTERROGATORY # 5.** If you intend to offer any lay opinion testimony at trial for the Contested Matter, identify each witness through whom you will present such testimony and, for each such witness, set forth the substance of the opinions to which he or she is expected to testify; the grounds for each such opinion; any special qualifications or experience that the

5

witness has in relation to the opinion; and identify any and all documents upon which the witness relied in forming his or her opinion.

**RESPONSE TO INTERROGATORY #5.**

> **Objection is made because the current Scheduling Order does not provide a deadline for the disclosure of lay opinion testimony. Without waiving the objection, if any of Ms. Smith's proposed experts, other than Professor Black, are not permitted to testify as expert witness, their testimony will be offered as lay opinion testimony. Additional law opinion testimony will be sought from the following former officers and employees of the Debtors, who are also fact witnesses:**
>
> **Thomas Marano**
>
> **Generally, Mr. Marano will be asked to describe the business model and to explain the securitization process, the sales of collateral, credit enhancements, insurances, TARP fund payments, and payments from all sources on multiple transaction in a typical Mortgage Loan placed in a RALI-Trust.**
>
> **James Whitlinger**
>
> **Generally, Mr. Whitlinger will be asked to describe the post-petition business model and to explain the process of applying proceeds from the sales of collateral, credit enhancements, insurances, TARP fund payments, payments from all sources on multiple transaction in a typical Mortgage Loan placed in a RALI-Trust, including foreclosure liquidation proceeds.**

**INTERROGATORY #6.** Identify the name of all person(s) whom you intend to call as a witness at the trial of this Contested Matter, and identify the subjects on which each witness will testify.

**RESPONSE TO INTERROGATORY #6.**

> **All witnesses listed above and, in addition:**
>
> **Tia Smith, Claimant**
>
> **Ms. Smith will testify to all facts in support of her UCL Claim of which she has personal knowledge and knowledge of the authenticity of documents to be produced by**
>
> **Anthony Renzi, Managing Director of Residential Funding Company, LLC (RFC) (senior officer in charge of the servicing function):**
>
> **Pursuant to the 10K Form filed on behalf of the RALI 2007-QO1 Trust, all loans**

6

deposited in the RALI 2007-QO1 Trust that were serviced by Homecomings were transferred to GMACM in September of 2007 and after September 24, 2007, Homecomings no longer serviced any loans in the RALI 2007-QO1 Trust.

**Darsi Meyer, RFC Director:**

Pursuant to the 8K Form filed on behalf of the RALI 2007-QO1 Trust, all loans deposited in the RALI 2007-QO1 Trust that were serviced by Homecomings were transferred to GMACM in September of 2007 and after September 24, 2007, Homecomings no longer serviced any loans in the RALI 2007-QO1 Trust.

**Judy Faber, claiming to be Vice-President of Residential Funding Company, LLC (RFC):**

Ms. Faber will be asked how and when the promissory note was endorsed and by the authority of what entity. She will be asked to produce the Power of Attorney which authorized the endorsement.

**Judy, ILLEGIBLE, yet to be identified (discovery pending)**

Judy ILLEGIBLE will be asked how and when the allonge to the promissory note was endorsed and by the authority of what entity. She will be asked to produce the Power of Attorney which authorized the endorsement.

Theodore Schultz, purported Vice President of Mortgage Electronic Registration Systems, Inc., actually an employee of Aurora. Mr. Schultz will be asked how and when he obtained the authority to execute documents in the name Mortgage Electronic Registration Systems, Inc. and to identify the entity which gave him the authority to execute the Corporate Assignment of Deed of Trust. He will be asked to produce the Power of Attorney which authorized the execution of the Corporate Assignment of Deed of Trust from AMN to Aurora.

**INTERROGATORY #7.** Detail the factual basis for your claim that Homecomings is liable to you for violation of the California Business and Professions Code, including each and every fact upon which this claim is based and the identity of all persons having knowledge of such facts.

**RESPONSE TO INTERROGATORY #7.**

Objection to the definition of Mortgage Loan supplied by the Objector. This Response uses the Claimant's definition of Mortgage Loan, to wit:

"Mortgage Loan" refers to AMN's acquisition of collateral documents consisting of a Note and Deed of Trust executed and granted by Claimant on December 2, 2006, identifying AMN as the payee and Lender, respectively.

7

**(1)  Homecomings never held the servicing rights to the Mortgage Loan because the Mortgage Loan was never deposited into the RALI 2007-QO1 Trust.  As a result Homecomings Financial, Inc. (Homecomings), did not have the right to demand and/or collect monthly mortgage payments from Claimant,  make negative reports to credit agencies, or sells, transfer or assign the servicing rights to Aurora Loan Servicing, LLC (Aurora) or any other entity.**

**(2)  If somehow it is established that the Mortgage Loan was properly deposited in the RALI 2007-QO1 Trust, then Homecomings misrepresented itself as the rightful servicer after transferring all servicing rights to GMACM in September of 2007, thereby inducing and misleading Claimant to skip certain mortgage payments. As a result Homecomings failed to notify Claimant that the servicing rights to the Mortgage Loan (only as defined by Claimant in her Written Discovery) had been transferred to GMAC Mortgage, LLC (GMACM) violation of RESPA.  As a result Homecomings neither had the right to demand and/or collect monthly mortgage payments from Claimant after September 24, 2007, nor make negative reports to credit agencies, nor sale, transfer or assign the servicing rights to Aurora or any other entity after September 24, 2007.**

**It logically follows that if the RALI-Trust didn't take title to the Note and Deed of Trust (collateral document) in accordance with the terms and conditions of the Trust, then Aurora as purported servicer and/or purported successor in interest to Homecomings or GMACM, as purported servicing agent for the Trust, would be without any authority to enforce the Mortgage Loan, notwithstanding their assertions to the contrary, because "Nemo dat quod non habet" ("You cannot give what you do not have.")**

**(3) Representatives of GMACM and/or Homecomings induced Plaintiff into a false default by advising her to skip numerous monthly mortgage payments in order to qualify and be considered for a loan modification to reduce her monthly mortgage payments.**

**(4) Virginia Parsons**
**Deadlyclear.wordpress.com**
**The RALI 2007-QO1 Trust filed a Form 8-K and Form 10-K with the Securities and Exchange Committee claiming that Homecomings transferred all servicing rights to GMACM and Homecomings did not service ANY loans after September 24, 2007.**

**INTERROGATORY # 8.** Detail the factual basis for your claim that Residential Funding Company is liable to you for violation of the California Business and Professions Code, including each and every fact upon which this claim is based and the identity of all persons having knowledge of such facts.

8

**RESPONSE TO INTERROGATORY #8.**

**(1)  As master servicer and co-conspirator, RFC had knowledge that Homecomings never held the servicing rights to the Mortgage Loan because the Mortgage Loan was never deposited into the RALI 2007-QO1 Trust.  As a result Homecomings neither had the right to demand and/or collect monthly mortgage payments from Claimant, nor make negative reports to credit agencies nor sale, transfer or assign the servicing rights to Aurora or any other entity.**

**(2)  If somehow it is established that the Mortgage Loan was properly deposited in the RALI 2007-QO1 Trust then as master servicer and co-conspirator, RFC had knowledge that Homecomings misrepresented itself as the rightful servicer after transferring all servicing rights to GMACM in September of 2007. As a result Homecomings neither had the right to demand and/or collect monthly mortgage payments from Claimant after September 24, 2007, nor make negative reports to credit agencies, nor sale, transfer or assign the servicing rights to Aurora or any other entity after September 24, 2007.**

**(3) According to the "Smith Servicing Notes" admitted into evidence by the Borrowers' Trust, RFCorp is the Investor of the Mortgage Loan and shows the Mortgage Loan was purchased on May 25, 2007.  As a result, RFC misrepresented its status and the status of the Mortgage Loan.**

**(4)  According to a judicial admission made by Aurora, DBTCA funded the Mortgage Loan. As a result, RFC misrepresented its status and the status of the Mortgage Loan.**

**(5)  Debtors RFC, GMAC, Homecomings and co-conspirator DBTCA designed a scheme to induce Plaintiff into a false default by advising her to skip numerous monthly mortgage payments in order to qualify and be considered for a loan modification to reduce her monthly mortgage payments, in order to obtain payments from mortgage insurance, credit default swaps, Troubled Asset Relief Program (TARP) funds and multiple derivative contracts.**

**INTERROGATORY # 9**. Detail the factual basis for your claim that GMAC Mortgage, LLC is liable to you for violation of the California Business and Professions Code, including each and every fact upon which this claim is based and the identity of all persons having knowledge of such facts.

**RESPONSE TO INTERROGATORY #9.**

**Claimant's investigation continues.  Claimant is awaiting the responses to her Requests for Written Discovery and will update these responses when the responses of RFC, GMACM, Homecomings and Residential Accredit Loans, Inc. (RALI).**

**(1) Homecomings never held the servicing rights to the Mortgage Loan because the**

**Mortgage Loan was never deposited into the RALI 2007-QO1 Trust. As a result Homecomings neither had the right to demand and/or collect monthly mortgage payments from Claimant, nor make negative reports to credit agencies nor sale, transfer or assign the servicing rights to Aurora or any other entity.**

**(2) If somehow it is established that the Mortgage Loan was properly deposited in the RALI 2007-QO1 Trust then GMACM fraudulently represented itself as Homecomings after receiving all servicing rights from Homecomings in September of 2007, thereby inducing and misleading Claimant to skip certain mortgage payments. Homecomings and GMACM failed to follow the requirements of RESPA to Claimant that the servicing rights to her Mortgage Loan had been sold, assigned or transferred as between them. The failure to notify Smith of the alleged transfer of servicing rights from Homecomings to GMACM was part of the scheme to defraud Smith in violation of the UCL because it concealed and continues to conceal the identity of the entity employing the individuals who made the misrepresentations concerning Ms. Smith's need to skip payments in order to apply for a modification of the Mortgage Loan. Because Homecomings is a wholly owned subsidiary of GMACM and the identity of the entity making the false representation concerning the need to skip mortgage payments was concealed from Ms. Smith, Ms. Smith will seek to pierce the corporate veil to hold GMACM liable for the actions of Homecomings or will seek to hold GMACM liable for the actions of Homecomings as Respondeat Superior, depending on the sufficiency of the evidence for either theory. RFC is also a wholly owned subsidiary of GMACM and the same theories of liability apply to RFC, as "master servicer" of the RALI-Trust.**

**(3) Debtors American Mortgage Network, Inc. (AMN), a subsidiary or affiliate of Well Fargo Bank, N.A.; RFC; GMACM; and Homecomings conspired with Deutsche Bank Trust Company Americas (DBTCA) to defraud Claimant by concealing the nature of the transaction masquerading as a conventional mortgage loan, when the true nature of the transaction a securities acquisition, undisclosed to Ms. Smith. AMN, was not the Lender, but acted in the actual capacity of "loan originator," which conceals its actual function as a purchaser of securities (Notes and Mortgages of Deeds of Trust) for sale to entities which function as bundlers of securities acquired collateral documents from so-called loan originators, which were actually unlicensed securities dealers. When the "servicing rights" (collection rights) were sold to Aurora, Aurora falsely assigned the DOT to itself for the benefit DBTCA. RFC, GMACM and Homecomings acted on behalf of into a false default by advising her to skip numerous monthly mortgage payments in order to qualify and be considered for a loan modification to reduce her monthly mortgage payments, in order to obtain payments from mortgage insurance, credit default swaps, Troubled Asset Relief Program (TARP) funds and multiple derivative contracts.**

**INTERROGATORY #10.** Detail the factual basis for your claim that Residential Accredit Loans, Inc. is liable to you for violation of the California Business and Professions Code, including each and every fact upon which this claim is based and the identity of all persons

10

having knowledge of such facts.

**RESPONSE TO INTERROGATORY #10.**

**As depositor, creator of the issuing entity and co-conspirator, RALI had knowledge that Homecomings never held the servicing rights to the Mortgage Loan because the Mortgage Loan was never deposited into the RALI 2007-QO1 Trust. As a result RALI fraudulently represented that it purchased the Mortgage Loan from RFC and then sold it to DBTCA.**

**INTERROGATORY # 11**. If you claim that any Debtor or any of its agents made any admissions with regard to the allegations, claims, or defenses in the Contested Matter have been made by any person or entity, set forth or identify for each such admission the exact words, if known, and if not known, the substance of it, the date it was made, the person who made it, all persons present when it was made (if oral), all persons to whom it was made or provided (if written), the place where it was made and the method of its communication.

**RESPONSE TO INTERROGATORY #11.**
**Research and investigation pending. Ms. Smith was uncertain what, in volumes of documents might constitute an admission.**

**The filings for the RALI Series 2007-QO1 Trust with the SEC are admissions and to the extent that they contradict other evidence there was either fraud in the SEC filings or fraud in the representations which contradict the SEC filing.**

**INTERROGATORY # 12**. Describe in detail any statement you have obtained from any person not a party to this Contested Matter relating to any of the allegations, claims, or defenses in this case, including the person who gave each statement and the person who obtained each statement; whether it was oral or in writing; the date it was obtained; if it was oral, whether a recording was made, and, if so, the type of recording and the name(s) and present address(es) of the person(s) who have custody of it; if it was written, whether it was signed by the person making it; and if it was oral, a detailed summary of its contents.

**RESPONSE TO INTERROGATORY #12.**

**On 10/24/2012, Laurie Howell, attorney for Aurora made the following judicial admission in its motion for relief from stay in Stanley Barnett's bankruptcy case # 2:12-28433-RN:**

**"Movant also asks the Court to note that the argument raised by Debtor's landlady, Tia D Smith, that Deutsche Bank did not assign the note to Movant is unmerited in that Ms. Smith fails to consider that Deutsche Bank was the investor who provided the funds for the loan, not the lender or beneficiary for purposes of the note and deed of trust"**

**This statement was written and signed by Laurie Howell.**
**No recording was made of this statement**

**INTERROGATORY # 13**. Detail the nature and amount of damages you are seeking to recover on account of the UCL Claim. Your response should include a description by category, of the damages incurred, and an explanation of the manner and method by which the dollar amount of your damages was calculated.

**RESPONSE TO INTERROGATORY #13.**

**Loss of income: documentation pending, estimated at $250,000.00**
**Medical expense: documentation in process**
**Loss of title to real estate: $650,000.00 (net of lawful encumberances)**
**Mental anguish: to be determined at the evidentiary hearing**
**Loss of credit worthiness: to be determined**
**Disgorgement of profits from the multiple payments from third parties**
**resulting from the engineered default: at least $3,000,000.00**

**INTERROGATORY # 14**. For each attorney who represented you in relation to the Mortgage Loan, Proofs of Claim, or Contested Matter, set forth in detail the terms of your fee arrangement, including but not limited to, the date on which you signed the written fee agreement, and amounts billed to date, and amounts paid to date.

**RESPONSE TO INTERROGATORY #14.**

**Ms. Smith has not been represented by counsel until her counsel in this case**
**appeared pro hac vice on November 2, 2015.  Present counsel has not provided**
**Ms. Smith with a written fee agreement or a bill for services.  Nothing has**
**been paid to present counsel to date.**

**INTERROGATORY # 15**. Identify the dates and times that you spoke with a representative of Homecomings regarding your account during the period from February 1, 2007 through April 1, 2008 and describe what was discussed during these conversations.

**RESPONSE TO INTERROGATORY #15.**

**Claimant thought she was speaking with Homecomings during the months of**
**September, October, November and December, but she might have been speaking with**
**GMACM.**

**The September Conversation:**
**Claimant contacted Homecomings in or near mid-September, 2007 by dialing (800)**
**206-2901 to inquire about obtaining a loan modification.  Amerivan, #83243, a**
**Homecomings representative explained because Claimant was current on her**
**mortgage payments she would need to skip at least three (3) monthly mortgage**

**payments to be considered for a loan modification. Claimant said she would consider Homecomings advice, thanked the representative and ended the call.**

**The October Conversation:**
**Claimant contacted Homecomings in or near mid-October, 2007 by dialing (800) 206-2901 to tell them she did not receive her October mortgage statement. Homecomings representative, stated that it was mailed, however, it would send a duplicate statement as a courtesy.**

**The November Conversation:**
**Claimant contacted Homecomings on or near mid-November, 2007 by dialing (800) 206-2901 to tell them she neither received her October nor November mortgage statements. Homecomings stated that both were mailed, however, it would send her duplicates.**

**The December Conversation:**
**Claimant contacted Homecomings in or near mid-December, 2007 by dialing (800) 206-2901 to again tell them she never received her October, November or December mortgage statements. Paula, an alleged representative of Homecomings, stated that all three were mailed, and that duplicate statements for October and November were already mailed.  Homecomings stated they would resend all three.**

**INTERROGATORY # 16**. Identify the date and time of the alleged conversation between You and a representative of Homecomings in which You allege you were told you needed to skip three mortgage payments in order to qualify for a loan modification and describe in detail what was said during this conversation.

**RESPONSE TO INTERROGATORY #16.**

**Claimant contacted Homecomings in or near mid-September, 2007 by dialing (800) 206-2901 to inquire about obtaining a loan modification.  Claimant does not recall the exact date of the call.  The Homecomings representative identified himself or herself (could not ascertain) as Amerivan, #83243.  The Homecomings representative explained because Claimant was current on her mortgage payments she would need to skip at least three (3) monthly mortgage payments to be considered for a loan modification. Claimant said she would consider Homecomings' advice, thanked the representative and ended the call.**

**Claimant contacted Homecomings on or near mid-November, 2007 by dialing (800) 206-2901.  Claimant does not recall the exact date.  The Homecomings representative identified herself as Miriam. Claimant explained to Homecomings that because of the current economic climate she needed to reduce her mortgage payments.  Claimant orally answered Homecomings' questions regarding her financial status.  Claimant explained how her salon business was severely declining because she offered luxury and pampering services and her clientele was beginning to slow down because of the**

13

**economy, how her tenants in her investment properties couldn't pay or refused to pay their rents, how her mother could not continue to contribute financially to the household and decided to move out and how she had lost her retirement fund and her daughter's college fund due to the stock market crash. Because of a sudden decrease in her prospective monthly income, Claimant needed to reduce her mortgage payments. Homecomings informed Claimant because she was current it could not allow her to apply for a loan modification. Claimant began to protest because the media was reporting that President Obama was encouraging homeowners to seek loan modifications from their lenders even if they were not delinquent in their payments. Again, Homecomings stated that she could not qualify or even apply unless she skipped at least 3 monthly mortgage payments. Claimant shared with Homecomings her concerns in relation to her credit rating. Homecomings assured Claimant that she would not be considered in default. Homecomings never told Claimant she should "default" in order to be considered, Homecomings specifically instructed Claimant to skip at least 3 monthly mortgage payments. Claimant told Homecomings she would consider its advice.**

**INTERROGATORY # 17**. Describe your reason(s) for not timely making your monthly mortgage payment that was due January 1, 2008.

**RESPONSE TO INTERROGATORY #17.**

**Claimant was instructed to skip at least 3 monthly mortgage payments**

**INTERROGATORY # 18**. Describe your reason(s) for not timely making your monthly mortgage payment that was due February 1, 2008.

**RESPONSE TO INTERROGATORY #18.**

**Claimant was instructed to skip at least 3 monthly mortgage payments**

**INTERROGATORY # 19**. Describe your reason(s) for not timely making your monthly mortgage payment that was due March 1, 2008.

**RESPONSE TO INTERROGATORY #19.**

**Claimant was instructed to skip at least 3 monthly mortgage payments**

**INTERROGATORY # 20**. Detail each instance you requested a loan modification from Homecomings, including but not limited to the date of the request, the nature of the request, and whether the request was made over the phone or in writing.

**RESPONSE TO INTERROGATORY #20.**

**Claimant made a request for a loan modification on or near mid-September, 2007.**

**Claimant does not recall the date the request was made. The request was made over the telephone by dialing (800) 206-2901.**

**Claimant made a request for a loan modification on or near November 15, 2007. At the time of said request Claimant believed that she was speaking with Homecomings. Claimant does not recall the time the request was made. The request was made over the telephone by dialing (800) 206-2901.**

## DECLARATION OF CLAIMANT

I, Tia Danielle Smith, assisted in the preparation of the foregoing Responses to the Interrogatories and have read the foregoing Responses.  I declare under penalty of perjury pursuant to 28 U.S. C. sec. 1746 that the same are true, according to the best of my knowledge, information and belief.   I have been advised of my duty to correct these Responses should any mistakes or misstatements come to my attention, as well as my continuing duty to update these Responses with new or additional information.  I have authorized my attorney via email to affix my electronic signature to these Responses and have retained my original signature hereto to be produced upon request therefor.

Dated at Los Angeles, California this 16th day of December, 2015.

*/s/ Tia Danielle Smith*
_____
Tia Danielle Smith

As to Objections:
E-Signed:

*/s/ Wendy Alison Nora*

_____
Wendy Alison Nora
ACCESS LEGAL SERVICES
310 Fourth Avenue South, Suite 5010
Minneapolis, Minnesota 55415
VOICE (612) 333-4144
FAX (612) 206-3170
accesslegalservices@gmail.com