EXHIBIT 22

# EXHIBIT B




This page is part of your document - DO NOT DISCARD

**06 2729009**

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
**12/08/06 AT 08:00am**

# TITLE(S) :





L E A D    S H E E T

| FEE | | D.T.T. |
|---|---|---|



FEE $ 17.00
DAF $ 2
C-20

CODE
20

CODE
19

CODE
9_____

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.          **Number of AIN's Shown**



THIS FORM IS NOT TO BE DUPLICATED

# NORTH AMERICAN TITLE COMPANY

Recording Requested By,
NORTH AMERICAN TITLE

Return To

AMERICAN MORTGAGE NETWORK, INC
P  O. BOX 85463
SAN DIEGO, CALIFORNIA 92186

12/8/06

**20062729009**

Prepared By,
TIFFANY RICE

K5740196-3       ——[Space Above This Line For Recording Data]——

## DEED OF TRUST

MIN  1001310-2060989130-2
LOAN NO.

**DEFINITIONS**
Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21  Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  NOVEMBER 13, 2006
together with all Riders to this document
(B) "Borrower" is

TIA DANIELLE SMITH, AN UNMARRIED WOMAN

Borrower's address is  4011 HUBERT AVENUE, LOS ANGELES, CALIFORNIA 90008-2621
Borrower is the trustor under this Security Instrument
(C) "Lender" is  AMERICAN MORTGAGE NETWORK, INC., A DELAWARE CORPORATION

Lender is a  CORPORATION
organized and existing under the laws of  THE STATE OF DELAWARE

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS       Form 3005  1/01

-6A(CA) (0207) 01
Page 1 of 15

VMP Mortgage Forms  Inc

199CA

Public Record

Lender's address is   P. O. BOX 85463, SAN DIEGO, CA 92186

(D) "Trustee" is    FIRST AMERICAN TITLE INSURANCE COMPANY

(E) "MERS" is Mortgage Electronic Registration Systems, Inc MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P O  Box 2026, Flint, MI 48501-2026, tel (888) 679-MERS

(F) "Note" means the promissory note signed by Borrower and dated   NOVEMBER 13, 2006
The Note states that Borrower owes Lender   FIVE HUNDRED FIFTY SIX THOUSAND AND
   00/100                                                        Dollars
(U S $    556,000.00    ) plus interest  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than      DECEMBER 01, 2036

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower  The following Riders are to be executed by Borrower [check box as applicable]

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] PREPAYMENT PENALTY RIDER |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

-6A(CA) (0207) 01                          Page 2 of 15                          Form 3005  1/01

4

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C Section 2601 et seq ) and its implementing regulation, Regulation X (24 C F R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS  This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                           of             LOS ANGELES
[Type of Recording Jurisdiction]                 [Name of Recording Jurisdiction]

LOT 23 OF TRACT 11193, IN THE CITY OF LOS ANGELES,
COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER
MAP RECORDED IN BOOK 202, PAGES 18 AND 19 OF MAPS,
RECORDS IN THE OFFICE OF THE COUNTY RECORDER OF SAID
LOS ANGELES COUNTY.

Parcel ID Number   5033-016-023                    which currently has the address of
                   4011 HUBERT AVENUE                              [Street]
                   LOS ANGELES                    [City], California  90008      [Zip Code]
("Property Address").

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property  All replacements and additions shall also be covered by this Security Instrument  All of the foregoing is referred to in this Security Instrument as the "Property " Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

⬭ -6A(CA) (0207) 01                    Page 3 of 15                         Form 3005  1/01

Public Record

5

of record  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS  Borrower and Lender covenant and agree as follows.

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.**
Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender  (a) cash, (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15 Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted  If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds  Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current  If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower  If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure  No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority. (a) interest due under the Note; (b) principal due under the Note, (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any, (c) premiums for any and all insurance required by Lender under Section 5, and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10  These items are called "Escrow Items "  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay to Lender Funds for any or all Escrow Items  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time  Any such waiver may only be

-6A(CA) (0207) 01                    Page 4 of 15                                Form 3005  1/01

in writing In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9 If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower, (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement, (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

-6A(CA) (0207) 01                        Page 5 of 15                        Form 3005  1/01

7

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires  What Lender requires pursuant to the preceding sentences can change during the term of the Loan  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either  (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification  Borrower shall  also be responsible for the payment  of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense  Lender is under no obligation to purchase any particular type or amount of coverage  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance  Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices  If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender  Lender may make proof of loss if not made promptly by Borrower  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened  During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds  Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

06
27296009

-6A(CA) (0207) 01                Page 6 of 15                Form 3005  1/01

Order: Non-Order Search  Doc: LA:2006 02729009          Page 7 of 24          Created By: kareny   Printed: 9/16/2009 9:19:02 AM PST

9

the excess, if any, paid to Borrower  Such insurance proceeds shall be applied in the order provided for in Section 2

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters  If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given  In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property  Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage  If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed  If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property  Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property  Lender's actions can include, but are not limited to  (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court, and (c) paying reasonable

**-6A(CA)** (0207) 01                                    Page 7 of 15                                    Form **3005**  1/01

9

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed Borrower is not a party to the Mortgage Insurance

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance " Further

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.



VMP -6A(CA) (0207) 01                    Page 8 of 15                    Form 3005  1/01

10

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower  Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due  "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument  Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

-6A(CA) (0207) 01                     Page 8 of 15                          Form 3005  1/01

Public Record

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"), (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note) Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address, If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure There may be only one designated notice address under this Security Instrument at any one time Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument

-6A(CA) (0207) 01                    Page 10 of 15                    Form 3005  1/01

Public Record

12

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (b) words in the singular shall mean and include the plural and vice versa, and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate, or (c) entry of a judgment enforcing this Security Instrument Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or agreements, (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity, or (d) Electronic Funds Transfer Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

-6A(CA) (0207) 01                          Page 11 of 15                          Form 3005  1/01

13

requires in connection with a notice of transfer of servicing  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20

**21. Hazardous Substances.** As used in this Section 21 (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances  gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials, (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection, (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property  Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products)

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law  Nothing herein shall create any obligation on Lender for an Environmental Cleanup

-6A(CA) (0207)01                     Page 12 of 15                    Form 3005  1/01

14

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California

Public Record

15

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Security Instrument and in any Rider executed by Borrower and recorded with it

Witnesses:

_____          _____ (Seal)
                                 TIA DANIELLE SMITH        -Borrower

_____          _____ (Seal)
                                                          -Borrower

_____ (Seal)   _____ (Seal)
                       -Borrower                          -Borrower

_____ (Seal)   _____ (Seal)
                       -Borrower                          -Borrower

_____ (Seal)   _____ (Seal)
                       -Borrower                          -Borrower

VMP -6A(CA) (0207).01            Page 14 of 15            Form 3005  1/01

Public Record

16

State of California
County of Los Angeles          } ss.

On 12-2-06          before me, Rosalind G. Asevedo, notary public
                                                    personally appeared

Tia Danielle Smith          , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

_____ (Seal)

ROSALIND G. ASEVEDO
Commission # 1666236
Notary Public - California
Los Angeles County
My Comm. Expires May 12, 2010

-6A(CA) (0207).01          Page 15 of 15          Form 3005  1/01

Public Record

17

EXHIBIT "A"
(LEGAL DESCRIPTION)

LOT 23 OF TRACT 11193, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 202, PAGES 18 AND 19 OF MAPS, RECORDS IN THE
OFFICE OF THE COUNTY RECORDER OF SAID LOS ANGELES COUNTY.

*18*

Doc ID#.

## ADJUSTABLE RATE RIDER

### (MTA-Twelve Month Average Index - Payment Caps)

THIS ADJUSTABLE RATE RIDER is made this      13TH       day of      NOVEMBER,
2006          , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
AMERICAN MORTGAGE NETWORK, INC., A DELAWARE CORPORATION
("Lender") of the same date and covering the property described in the Security Instrument and
located at.
4011 HUBERT AVENUE, LOS ANGELES, CALIFORNIA 90008-2621
[Property Address]

THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE
AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT
THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL
AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY
BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THE NOTE.

ADDITIONAL COVENANTS: In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agrees as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for changes in the interest rate and the monthly payments, as follows.

2.   INTEREST
(A)  Interest Rate
Interest will be charged on unpaid Principal until the full amount of Principal has been paid  I
will pay interest at a yearly rate of    1.500    %.  The interest rate I will pay may change.
The interest rate required by this Section 2 is the rate I will pay both before and after any
default described in Section 7(B) of the Note

(B)  Interest Rate Change Dates
The interest rate I will pay may change on the   1ST        day of     JANUARY,
2007          , and on that day every month thereafter. Each date on which my interest
rate could change is called an "Interest Rate Change Date." The new rate of Interest will become
effective on each Interest Rate Change Date. The interest rate may change monthly, but the
monthly payment is recalculated in accordance with Section 3.

PayOption MTA ARM Rider
FE-5315 (0511)                          Page 1 of 5

385ST

19

LOAN NO.

**(C) Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding   THREE AND 400/1000        percentage point(s)  3.400   % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than   9.950  %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

**3.   PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the   1ST        day of each month beginning on JANUARY   01, 2007.  I will make these payments every month until I have paid all the Principal and Interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  DECEMBER 01, 2036   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   P. O. BOX 85302
                          ATTN:  CASHIER'S DEPT., SAN DIEGO, CA 92186
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $    1,918.87      unless adjusted under Section 3 (F).

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the   1ST   day of   JANUARY, 2008   , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

**PayOption MTA ARM Rider**
**FE-5315 (0511)**                      Page 2 of 5

Public Record

LOAN NO. 

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D)  Calculation of Monthly Payment Changes**
At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date  The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7 5% of my prior monthly payment  This 7 5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075.  The result of this calculation is called the "Limited Payment " Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

**(E)  Additions to My Unpaid Principal**
Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3 (D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2  For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3 (A)

**(F)  Limit on My Unpaid Principal; Increased Monthly Payment**
My unpaid Principal can never exceed the Maximum Limit equal to    ONE HUNDRED FIFTEEN percent (    115    % )of   the   Principal   amount   I   originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases  In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new  monthly payment  This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7 5% Payment Cap  The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate

**(G)  Required Full Payment**
On the    TENTH    Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again  I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

PayOption MTA ARM Rider
FE-5315 (0511)                              Page 3 of 5

Order: Non-Order Search  Doc: LA:2006 02729009              Page 20 of 24              Created By: kareny  Printed: 9/16/2009 9:19:03 AM PST

LOAN NO.

*U*

**(H) Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

(i)   **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii)   **Fully Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments

(iii)   **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term

These Payment Options are only applicable if they are greater than the Minimum Payment

**B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument   Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing

PayOption MTA ARM Rider
FE-5315 (0511)                      Page 4 of 5

LOAN NO. ~~~~~~~~~

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider

_____
TIA DANIELLE SMITH                                    -Borrower

_____
                                                      -Borrower

_____
                                                      -Borrower

_____
                                                      -Borrower

PayOption MTA ARM Rider
FE-5315 (0511)                    Page 5 of 5

23

## RIDER TO NOTE AND SECURITY INSTRUMENT

LOAN NO.

THIS RIDER is made this 13TH day of          NOVEMBER,   2006          and is
incorporated into and shall be deemed to amend and supplement both the Note and Mortgage, Deed of
Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the
"Borrower") to secure Borrower's Note (the "Note") to    AMERICAN MORTGAGE NETWORK, INC., A
                                                          (the "Lender")
DELAWARE CORPORATION
of the same date and covering the property described in the Security Instrument and located at.

4011 HUBERT AVENUE, LOS ANGELES, CALIFORNIA 90008-2621

[Property Address]

### PREPAYMENT PENALTY - FIRST    12    MONTHS OF NOTE

You have the right to make payments of Principal at any time before they are due. A payment of
Principal only is known as a "Prepayment". When you make a Prepayment, you must tell the Note
Holder in writing that you are doing so.

Subject to the Prepayment Penalty specified below, you may make a full Prepayment or partial
Prepayment of your obligation The Note Holder will use all of your Prepayments to reduce the amount
of principal that you owe under this Note. If you make a partial Prepayment, there will be no changes in
the due date(s) or in the amount of your monthly payment unless the Note Holder agrees in writing to
those changes

If within the 12 month period beginning with the date of the Note, (the "Penalty Period"), you
make a full or partial Prepayment, you will pay a prepayment charge as consideration for the Note
Holder's acceptance of such payment. No prepayment charge will be assessed for any prepayment
made after the Penalty Period.

You may prepay an amount not exceeding twenty percent (20%) of the original principal amount in
any twelve month period commencing from the date of the Note or anniversary dates thereof
without penalty. However, during the Penalty Period, if the aggregate amount of the principal
prepaid in any twelve month period exceeds twenty percent (20%) of the original principal amount
of this loan, then as consideration of the acceptance of such Prepayment and in addition to any
other sum payable hereunder, you agree to pay the Note Holder hereof a sum equal to six (6)
months interest on the amount prepaid in excess of twenty percent (20%) of the original principal
amount at the rate specified in the Note.

Such additional sums shall be paid whether prepayment is voluntary or involuntary including any
prepayment affected by the exercise of any acceleration provisions contained in the Note to which
this Rider is attached, or in the Security Instrument securing the Note to which this Rider is
attached.

| 1/18/05 | Page 1 of 2 | ACST1551 |
|         | 155ST       | B1CA     |

24

All other terms and conditions of the Note remain in full force and effect

By signing below, Borrower accepts and agrees to the terms and provisions contained in this Rider to Note and Security Instrument

## NOTICE TO BORROWER

**Do not sign this loan agreement before you read it. This loan agreement provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayments in the loan agreement.**

_____  12/2/06
TIA DANIELLE SMITH        Date

_____
                          Date

_____
                          Date

_____
                          Date

90 2722 90006

1/18/05                   Page 2 of 2                    ACST1552

Public Record

Order: Non-Order Search  Doc: LA:2006 02729009        Page 24 of 24        Created By: kareny  Printed: 9/16/2009 9:19:03 AM PST