# EXHIBIT 28

# EXHIBIT I

Deutsche Bank

1761 East St. Andrew Place
Santa Ana, CA 92705-4934

Tel  714 247 6000
Fax  714 247 6009

## MEMORANDUM

TO:    SECURITIZATION LOAN SERVICERS

FROM:  DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE
       DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE

DATE: July 28, 2008

RE:    Advisory Concerning Servicing Issues Affecting Securitized Housing Assets

Each addressee of this Memorandum services mortgage loans on behalf of one or more securitization trusts (the "Trusts") for which Deutsche Bank National Trust Company or Deutsche Bank Trust Company Americas act as trustee (the "Trustee"). This memorandum focuses on certain issues relating to servicing practices that have come to the attention of the Trustee since the issuance of its Memorandum to Securitization Loan Servicers dated August 30, 2007 (the "First Servicer Memorandum"—copy enclosed). Because the issues addressed in the First Servicer Memorandum continue to be relevant in the current servicing environment, the Trustee respectfully requests that all servicers review the First Servicer Memorandum and adhere to the practices that it describes, as well as those described in this Memorandum.

The continued distressed state of residential real estate markets has placed increased burdens on all parties involved in the loss mitigation process, including servicing personnel, third-party contractors and professionals engaged by servicers, government agencies, and borrowers. In addition, the increased numbers of delinquencies and foreclosures, and resulting financial losses, have led to a climate in which the performance of securitization parties is being scrutinized carefully by various constituencies.

Against this background, the Trustee therefore asks that all servicers servicing loans on behalf of the Trusts remain particularly mindful of the following issues.

(1) **Foreclosure Procedures: Proof of "Ownership" of Loans.** As stated in the First Servicer Memorandum, servicers must exercise diligence to assure that they conduct *all* foreclosures and other actions with respect to REO properties (including actions affecting tenants of such properties) in compliance with all federal, state, and local laws, rules, regulations and court procedures. In recent months, it has been reported that the number of contested foreclosure proceedings has substantially increased nationwide. In the

Securitization Servicers
July 28, 2008
Page 2 of 4

context of these adversarial proceedings, some courts are demanding that the party seeking to foreclose prove "ownership" and other particulars of loans earlier in the proceedings, and with more exacting standards of proof, than has previously been customary. Other courts are evaluating the propriety of various other servicing, foreclosure, and workout practices. Because loan servicers have contractual obligations to handle workouts and foreclosures in compliance with law and in accordance with industry standards, they must make sure that all servicing personnel and professionals handling foreclosures on behalf of the Trusts, including legal counsel retained by servicers, fully understand and comply with these changing standards and legal requirements. Failure to do so may result in servicer liability to the Trusts for losses caused by delays or, in some situations, forfeiture of collateral.

In this regard, the Trustee is concerned that servicers make clear to their servicing personnel and other professionals, including legal counsel retained by servicers, that securitization trusts typically become the owners of, and take title to, mortgage loans <u>at the time the securitization trusts are formed</u>. While the use of powers of attorney to complete recorded chains of title may be appropriate in some circumstances, servicers must <u>take care not to confuse the record</u> regarding the time at which securitization trusts actually first obtain legally enforceable rights in the mortgage loans. <u>Servicers must ensure that loss mitigation personnel and professionals engaged by servicers, including legal counsel retained by servicers, understand the mechanics of relevant securitization transactions, and related custodial practices, in sufficient detail to address such questions in a timely and accurate manner. In particular, servicing professionals must become sufficiently familiar with the terms of the relevant securitization documents for each Trust for which they act to explain and, where necessary, prove those terms and the resulting ownership interests to courts and government agencies.</u>

(2) <u>Proper Description of the Servicer, the Trustee and their Roles in Proceedings</u>. Servicers act for the benefit of the Trusts, and in the name of the Trustee, but are not themselves the Trustee. Servicing professionals and other agents engaged by servicers have adopted widely varying approaches to identifying the source of their authority. Some say they represent "the servicer," others say they represent "the trustee" or "the trust," and some simply say they represent "the bank" or "the lender." These disparate practices have caused significant confusion regarding the roles of the parties to securitization transactions. The Trustee believes that all persons retained by the servicer should accurately identify the specific role or capacity in which they are acting. For example, an attorney for a servicer foreclosing on a property mortgaged to a securitization Trust would be less accurate in this respect if he or she claimed to be "[Name], Attorney for [Name of Trustee]." A more accurate statement would be "[Name], Attorney for [Servicer Name], Acting for [Name of Trustee] as Trustee of the [Name of Trust]". In no event should servicer-retained foreclosure professionals, including counsel, mislead third parties, including courts, into believing that the Trustee directly controls the foreclosure process or any related litigation process. In addition, the Trustee should never be described as the party who "made" or is in "in the business of

Securitization Servicers
July 28, 2008
Page 3 of 4

making/securitizing" loans. Such descriptions inaccurately reflect the role of a securitization trustee and may expose the Trusts and the Trustee to unwarranted legal liability and expense.

(3) <u>Maintenance of REO Properties</u>. The Trustee has received a number of inquiries and complaints from government officials and community groups about the physical condition of REO properties. Such inquiries and complaints also are receiving increasing attention from the media, law enforcement agencies, and courts. <u>Under standard securitization documentation, loan servicers are expressly responsible for managing all aspects of the REO disposition process, including appropriate maintenance of REO properties</u>. Failure to fulfill these responsibilities may expose the Trusts to financial losses, potentially depressing the value of Trust property and exposing the Trusts to legal and financial liability. Because title to REO properties typically includes the name of the Trustee institution, these failures also expose the Trustee to legal claims and reputational harm. To protect against such consequences, which are likely to give rise to indemnification claims against servicers, the Trustee urges servicers to exercise heightened diligence with respect to REO maintenance and disposition. In addition, we urge Servicers to engage property managers who will take proactive steps to protect REO properties, especially when they are vacant for extended periods of time.

(4) <u>Tracking and Engaging in Public-Private Initiatives</u>. The Trustee urges servicers to stay abreast of and, where appropriate, participate in, governmental policy discussions and rule-making processes that may affect servicing activities. Given the widespread misunderstanding of how securitization transactions work, servicers, trustees, and other financial institutions involved in the administration of securitization transactions should seek to educate others appropriately about the rights and responsibilities of the parties to these transactions. Without adequate understanding and sensitivity to these issues, officials may adopt rules or policies that adversely affect the interests of securitization investors. Active participation in government-industry discussions of these issues may help avert such outcomes. Shortly after the issuance of the First Servicer Memorandum, federal and state banking regulators issued their "Statement on Loss Mitigation Strategies for Servicers of Residential Mortgages." In addition, in December 2007, the American Securitization Forum, in consultation with U.S. Treasury officials, promulgated the "Streamlined Foreclosure and Loss Avoidance Framework for Securitized Subprime Adjustable Rate Mortgage Loans." Both of these documents reflect the kind of careful balancing of policy objectives and contract rights that can be achieved by engaging in responsible substantive discussions with affected constituencies. In addition, the Trustee urges servicers to exercise diligence and, where appropriate, involve or cooperate with law enforcement agencies regarding a variety of unethical and, in some cases, illegal real estate transaction schemes targeting distressed borrowers. In particular, servicers should be on the lookout for third parties who: (a) seek private data concerning borrowers, loans or loan portfolios without proper authorization or (b) purport to act based on an asserted affiliation or association with the servicer, the Trustee or the Trusts. Such practices may subject borrowers, servicers, the Trustee and the Trusts to financial and reputational harm.

Securitization Servicers
July 23, 2008
Page 4 of 4

The Trustee believes that adherence to the foregoing recommendations on a consistent basis will not only protect the interests of investors, but benefit all constituencies by minimizing misunderstandings that impede timely and fair resolution of foreclosure matters.

Thank you for your cooperation.

DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee
DEUTSCHE BANK TRUST COMPANY AMERICAS, as Trustee