# EXHIBIT 42

12-12020-mg    Doc 9579-69    Filed 02/02/16    Entered 02/02/16 16:18:14    Exhibit 42:
Deposition Testimony of Judy Faber on June 2    2008 filed in U.S. Ba    Pg 2 of 54
Case: 1:09-cv-00549 Document #: 64-13 Filed: 11/18/09 Page 1 of 53 PageID #:946

1

```
 1      IN THE UNITED STATES DISTRICT COURT FOR THE
        NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION
 2

 3

 4    - - - - - - - - - - - - - - - - - - - - - - - - - -
      U. S. Bank National
 5    Association as Trustee,

 6
              Plaintiff,
 7
        vs.                    File No. 07 C 1544
 8
      Wendy S. Cook, a/k/a
 9    Wendy C. Cook,

10
              Defendant.
11    - - - - - - - - - - - - - - - - - - - - - - - - - -

12

13
      -----------------------------------------------
14
                     DEPOSITION OF
15
                      JUDY FABER
16
      -----------------------------------------------
17

18

19

20

21
```

22

23

24

25   Taken June 2, 2008        By Paula K. Richter

12-12020-mg    Doc 9579-69    Filed 02/02/16    Entered 02/02/16 16:13:14    Exhibit 42:
Deposition Testimony of Judy Faber on June 2    2008 filed in U.S. Ba    Pg 4 of 54
Case 1:09-cv-00547 Document #: 64-13 Filed: 11/18/08 Page 3 of 53 PageID #:949

2

```
 1   APPEARANCES VIA TELEPHONE:

 2
          POTRATZ & HOLLANDER, P.C.
 3         30 North LaSalle Street, Suite 3900
          Chicago, IL 60602
 4         Phone:  312-364-9100
          Fax:  312-364-0289
 5         By: Gary Hollander
             For Defendant
 6

 7         KROPIK, PAPUGA & SHAW
          120 South LaSalle Street
 8         Chicago, IL 60603
          Phone:  312-236-6405
 9         Fax:  312-236-8060
          Email:  kropik@kropik.net
10         By: Kenneth K. Shaw, Jr.
             For Plaintiff
11

12         SCHWARTZ COOPER CHARTERED
          180 North LaSalle, Suite 2700
13         Chicago, IL 60601
          Phone:  312-264-2442
14         Email:  bcreel@scgk.com
          By: B. Wayne Creel
15           For Plaintiff

16

17
     APPEARANCE IN PERSON:
18

19         GMAC
          One Meridian Crossing
20         Richfield, MN 55423
          Phone:  952-857-7000
```

21    By: David Hagens
      For GMAC
22

23

24

25

3

1                    INDEX

2
    Examination by Mr. Hollander, page 4
3

4

5  OBJECTIONS BY:
        Mr. Shaw ................7, 12, 15, 16, 18, 19
6

7

8
    NO EXHIBITS WERE MARKED FOR IDENTIFICATION
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1 THE DEPOSITION OF JUDY FABER is taken on this 2nd

2 day of June, 2008, at the offices of GMAC, One

3 Meridian Crossing, Richfield, MN 55423, commencing

4 at approximately 2:20 p.m. pursuant to notice.

5

6                    JUDY FABER,

7          a witness in the above-entitled

8          action, after having been first

9          duly sworn, deposes and says as

10          follows:

11

12                    EXAMINATION

13

14 BY MR. HOLLANDER:

15 Q.  Please state your full name.

16 A.  Judy Faber.

17 Q.  F-A-B-E-R?

18 A.  F-A-B-E-R, yes.

19 Q.  For the record, this is the deposition of

20      Judy Faber, taken pursuant to notice set for

21    today's date by agreement of the parties.

22    Counsel, can I just ask -- I want to confirm

23    there's no new documents being produced for

24    this deposition.

25         MR. SHAW:  No.  We brought the

Case 1:09-cv-01543    Document #    04-13 Filed 12/18/08 Page 9 of 53 PageID 954

5

1    documents you asked us to have for this

2    deposition.  That's it.

3            MR. HOLLANDER:  Thank you.

4   BY MR. HOLLANDER:

5   Q.  Ms. Faber, have you given a deposition

6    before?

7   A.  Yes.

8   Q.  Okay.  I'll be very brief then.  As you know,

9    this is a process by which I'm asking

10    questions regarding a pending lawsuit here in

11    Chicago called U.S. Bank National Association

12    versus Wendy S. Cook.

13            If you don't understand any

14    question that I ask you, please let me know

15    that and I'll be happy to try and rephrase

16    the question.  Please answer the questions

17    yes or no so that we're clear on what your

18    answer is.  And if you have any questions or

19    want to take a break or anything like that,

20    just speak right up and I'll be happy to

Case 2:07-cv-01545 Document # 04-23   filed 11/28/08   Page 10 of 53   PageID #353

21    accommodate you?

22  A.  Okay.

23  Q.  Fair enough?

24  A.  Sure.

25  Q.  By whom are you employed?

6

1   A.  Residential Funding Company, LLC.

2   Q.  For how long have you been employed there?

3   A.  Eleven years.

4   Q.  And what's your position there?

5   A.  Director of Records Management, the Minnesota

6       site.

7   Q.  For how long have you held that position?

8   A.  Eleven years.

9   Q.  What are your duties and responsibilities in

10      that position?

11  A.  I manage the records for the Residential

12      Funding Corporation.  Basically, the physical

13      paper and the images that are created from

14      the physical paper, fulfilling requests for

15      those and then managing the physical

16      documents.

17  Q.  Now, when you said you're the Director of

18      Records Management for the Minnesota office?

19  A.  Uh-huh.

20  Q.  Are there other offices of Residential

Case: 2:07-cv-01545 Document #: 64-13 Filed: 11/26/08 Page 12 of 53 PageID #:857

21    Funding that maintain records that you are

22    not responsible for?

23  A.  There are records services sites in Iowa and

24    in Pennsylvania.  Those deal mostly with the

25    GMAC mortgage assets.

7

1  Q.  GMAC?

2  A.  Right.

3  Q.  Okay.  And do you have any responsibility for

4     maintaining those records?

5  A.  No.

6  Q.  The records that relate to the loan at issue

7     in this case, that being the loan to a

8     gentleman named Peter Cook, are those records

9     that are maintained at the Minnesota office?

10  A.  Yes.

11  Q.  And what, if anything, is your responsibility

12     with regard to those records?

13  A.  To track the physical paper for those

14     assets -- or that asset.

15  Q.  Are you what you consider to be the keeper of

16     the records for those documents?

17  A.  Sure, yep.

18         MR. SHAW:  I object to the extent

19     he's asking for a legal conclusion.

20  BY MR. HOLLANDER:

Case 3:07-cv-01549 Document # 04-13 Filed 11/26/084 Page 94 of 53 14 age ID #:959

21  Q.  So in the chain of command at Resident -- I'm

22      sorry, the name of the company is Residential

23      Funding?

24  A.  Residential Funding Company.

25  Q.  I'm going to call it Residential Funding?

8

1   A.  Or you can say --

2   Q.  In the chain of command at Residential

3       Funding, who is your immediate superior?

4   A.  Rachel Switzer.

5   Q.  How do you spell the last name?

6   A.  S-W-I-T-Z-E-R.

7   Q.  Thank you.  What's Ms. Switzer's title?

8   A.  I -- I hesitate because we -- we're not hung

9       up on titles, I guess.  She's my manager.

10  Q.  So she does not have a title as far as you

11      know?

12  A.  I -- I don't know.

13  Q.  Okay.  On a day-to-day basis, what job

14      responsibilities do you have at the company?

15  A.  Day-to-day?

16  Q.  Yeah.

17  A.  Probably more project type management as we

18      look at different systems, look at different

19      processes.  Are we doing what we should be

20      doing?  Looking at key metrics.  What does it

Case 2:09-cv-01545 Document # 64-13  Filed 11/18/2008  Page 96 of 331  Page ID #361

21    cost us to do what we do?  How many widgets

22    can we produce in a given day -- or given --

23    one person.

24  Q.  When you say project management, are you

25    talking about projects regarding how the

9

1    company manages its records?

2    A.  Some.  Probably more -- right now probably

3       more system related as to how do we track our

4       records.

5    Q.  Okay.  And then when somebody wants to view

6       specific records from your system, is that

7       something that you're responsible for

8       obtaining as part of your day-to-day

9       responsibilities?

10   A.  The people that report to me, yes, or the

11      vendor that -- that we have retained to do

12      those functions, yes.  I don't do that

13      myself.

14   Q.  Who's the vendor that you retain to do that?

15   A.  A company called ACS.

16   Q.  ACS?

17   A.  Yep.

18   Q.  And what does ACS do with regard to the

19      records?

20   A.  They fulfill the request.  So if somebody

Case 2:07-cv-01549 Document # 04-23 Filed 11/18/2008 Page 18 of 53 PageID #863

21     needs a credit folder or a legal folder, they

22     research where those documents are, obtain

23     the documents and then provide that requestor

24     with either the paper documents or images.

25  Q.  And ACS is an independent company?

Case 2:07-cv-01548 Document 49 04-23 filed 11-18-08 Page 33 of 53 Page ID #364

10

1    A.  Yes.

2    Q.  As part of your day-to-day responsibilities,

3         do you give direction to employees of ACS?

4    A.  Yes.

5    Q.  And what types of matters do you supervise or

6         direct the ACS employees on?

7    A.  Basically, the fulfillment services.  So how

8         do you fulfill a request for a document or a

9         folder.

10   Q.  Now, in this case, did somebody request that

11        you obtain documents from your system?

12   A.  Can you clarify?

13   Q.  Yes.  Let's put it this way:  When was the

14        first time you were even aware that the

15        lawsuit of U.S. Bank versus Cook was pending?

16   A.  I -- I couldn't really tell you.

17   Q.  Within the last month?

18   A.  I believe it was before that.  I believe I --

19        if this -- I believe I received some type of

20        notification, which I handed over to the

21    legal department here.

22    Q.  By notification, what do you mean?

23    A.  I think a notice of the -- of the lawsuit or

24    the deposition.  I apologize.  I -- I

25    honestly don't remember.  But it was --

Case 2:07-cv-01545 Document 4    Filed 11/28/08    Page 21 of 53    Page ID #365

11

1  Q.  Don't apologize.  Whatever you know is all

2      we're asking.

3  A.  Yeah.  It was probably within the last couple

4      months.

5  Q.  And the first -- your first knowledge of the

6      lawsuit was when you got some kind of notice

7      that you would be giving a deposition?

8  A.  I think so, yeah.

9  Q.  Okay.  After you received -- well, prior to

10     you receiving that notice, you had nothing to

11     do with this case or any of the documents in

12     the case.  Would that be correct?

13  A.  Correct, yep.

14  Q.  After you received the notice of the

15     deposition, did you ever obtain documents

16     from your computer system or direct anybody

17     else to obtain documents from the computer

18     system?

19  A.  I -- I did not, no.

20  Q.  And you didn't direct anybody else to,

Case 2:07-cv-01545 Document # 64-23 filed 11/28/084 Page 22 of 53 PageID #367

21    correct?

22  A.  No.

23  Q.  Not correct or it is correct?

24  A.  Oh.  That is correct.  Sorry.

25  Q.  It's okay.

Case 2:07-cv-01545 Document 1 filed 04/23/ filed 11/18/2008 Page 23 of 53 Page ID #:908

12

1            MR. SHAW:  I want to object.

2      Would you clarify that line of questioning

3      because now I'm very confused as to what the

4      answer was to which question.

5            MR. HOLLANDER:  I think you're

6      going to have the opportunity, but I

7      understand it.  I'm just going to move along

8      here.  If you think you need clarification,

9      by all means, when I'm done go ahead.

10   BY MR. HOLLANDER:

11   Q.  Ms. Faber, you have some documents in front

12      of you that on their face purport to relate

13      to the loan to Peter Cook; is that correct?

14   A.  If you could clarify which documents you're

15      referring to.

16   Q.  I'm just referring -- you have a group of

17      documents that relate to this loan, correct?

18   A.  In regards to the -- the letter that was

19      sent?

20   Q.  Do you have documents with you now?

Case 2:07-cv-01545 Document #: 64-23 Filed: 11/26/08 Page 24 of 53 PageID #:969

21          MR. HAGENS:  Let me just clarify.

22     David Hagens here.  She has in front of her

23     the package of documents that I think came

24     from your office, and she also has a copy --

25     or she doesn't have a copy -- she has the

13

1    original loan file.

2              MR. HOLLANDER:  Okay.  Thanks.

3              MR. HAGENS:  Sure.

4  BY MR. HOLLANDER:

5  Q.  Is that correct then, Ms. Faber?

6  A.  Yes.

7  Q.  And the original loan file, where did you

8     obtain that from?

9  A.  From Skyler Hanson in our legal department.

10  Q.  Do you have any idea where that person got

11     the documents from?

12  A.  It would have come from our off-site vendor.

13  Q.  How do you know that?

14  A.  In our system, it shows the tracking of the

15     loan file.

16  Q.  And is there something on these documents

17     that shows where they came from?

18  A.  Well, on the original file itself, there's

19     a -- a sticker that shows that it came from

20     our off-site vendor.

Case 2:07-cv-01548 Document # 64-13  Filed 11/26/084  Page 26 of 531  Page ID #:874

21  Q.  There's a file folder that shows it came from

22     the outside vendor?

23  A.  Yes.  Their sticker is affixed to the front

24     of the folder, so I know it came from them.

25  Q.  Okay.  And then is there anything on the

Case 2:07-cv-01545 Document 1-4 23-1 Filed 11/26/08 Page 27 of 53 14    PageID #: 872

14

1    documents themselves that show where they

2    came from?

3  A.  No.

4  Q.  And by the outside vendor, do you mean ACS?

5  A.  No.  Actually, the vendor that stores the

6    actual folder is Iron Mountain.

7  Q.  So there's a sticker on that file that shows

8    it came from Iron Mountain?

9  A.  Correct, yes.

10  Q.  Does Iron Mountain maintain your system or do

11    they just maintain hard copies of documents?

12  A.  They maintain the hard copies of the

13    documents.

14  Q.  Not any records on your computer system,

15    correct?

16  A.  No.

17  Q.  Is that correct?

18  A.  Correct.

19  Q.  Okay.  So the file you have in front of you,

20    based on the sticker, indicates to you that

Case 2:07-cv-01545 Document # 64-13  Filed 11/18/084 Page 28 of 53  PageID #873

21    that came from Iron Mountain?

22  A.  Right.  And that's also validated by our

23    tracking system that shows that it came from

24    Iron Mountain.

25  Q.  What tracking system is that?

Case 2:07-cv-01945 Document 49 04-23 filed 11/18/084 Page 29 of 53 PageID #874

15

1  A.  RMS.

2  Q.  What does RMS stand for?

3  A.  Records Management System.

4  Q.  Is that the name of a company or your actual

5     system?

6  A.  That's our system.  It's a homegrown system.

7  Q.  Do you have a document with you from RMS that

8     shows what you just mentioned to me?

9  A.  No, I don't.

10  Q.  So how do you know that RMS shows where the

11     records came from?

12  A.  When Skyler gave me the file, I had to go

13     into RMS and change the location from Skyler

14     to myself.

15  Q.  Okay.

16  A.  And at that point, I could see the history of

17     the movement of the file.

18  Q.  And then did you add to that history?

19  A.  Yes.

20  Q.  And those are documents that have not been

Case 2:07-cv-01543-Document # 64-13 Filed 11/28/084 Page 30 of 53 PageID #875

21    produced to me, correct?

22  A.  I don't know.

23            MR. SHAW:  I object.  She does not

24    know what's been produced to you.

25  BY MR. HOLLANDER:

12-12020-mg    Doc 9579-69    Filed 02/02/16    Entered 02/02/16 16:18:14    Exhibit 42:
Deposition Testimony of Judy Faber on June 2    2008 filed in U.S. Ba    Pg 32 of 54

Case 2:07-cv-01546 Document 1    04-23 filed 11/18/08    Page 31 of 53    PageID #:876

16

1  Q.  Ms. Faber, the documents you have in front of

2      you at this time, are the RMS records showing

3      the tracking of these documents included

4      within what's in front of you?

5  A.  No.

6            MR. SHAW:  I object.  I think

7      she's answered what's in front of her at this

8      time.

9  BY MR. HOLLANDER:

10  Q.  You can answer.

11  A.  No.

12  Q.  When you looked at the tracking system, it

13      shows the movement of documents.  Does it

14      show specific documents?

15  A.  No.  It shows the movement of the folder.

16  Q.  The folder containing the hard copies?

17  A.  Right.

18  Q.  Okay.  Other than the fact that these

19      documents came from storage at Iron Mountain,

20      do you have any other personal knowledge of

21      where these documents came from?

22   A.  No.

23   Q.  Have you ever done a search of the system at

24      Residential Funding to determine what

25      documents are kept on that computer system?

Case 2:07-cv-01545    Document #: 04-13    Filed 11/18/2008    Page 93 of 53    PageID #:878

17

1  A.  I'm sorry.  Can you restate that?  I'm not

2      sure what you're asking.

3  Q.  Sure.  Does the computer system maintained by

4      Residential Funding contain within it images

5      of documents that relate to the Peter Cook

6      loan?

7  A.  Yes.

8  Q.  Have you looked at any of those documents?

9  A.  No.

10  Q.  Do you have any personal knowledge of whether

11      Wendy Cook has signed any of the documents

12      that relate to the loan involved in the U.S.

13      Bank versus Cook lawsuit?

14  A.  No.

15  Q.  Would you have any way to recognize Wendy

16      Cook's signature?

17  A.  No.

18  Q.  What's the relationship between Residential

19      Funding Company, LLC and U.S. Bank National

20      Association?

Case 2:07-cv-01548 Document # 64-23 filed 11/28/084 Page 94 of 531 PageID #873

21    A.  In -- in this instance, U.S. Bank is the

22        trustee on the security that this loan is in.

23        And RFC was the issuer of the security that

24        was created.

25    Q.  Who was the issuer of the security?

Case 2:07-cv-01448 Document 1-4 04-23 filed 11/18/084 Page 95 of 53 14 age ID #986

18

1    A.  RFC was the issuer of the security.

2    Q.  Oh, RFC is what you call Residential Funding

3        Company?

4    A.  Yes.

5    Q.  So RFC issued the security?

6    A.  Right.

7    Q.  Can you explain to me what that means?

8    A.  No, I can't.

9    Q.  Okay.  How do you know RFC issued the

10       security?

11   A.  It's the normal course of business as to how

12       our -- our business works.  RFC is in the

13       business of acquiring assets and putting them

14       together into securities to sell in the -- in

15       the market.

16           MR. SHAW:  I would like to

17       register a general objection to this line of

18       questioning.  There's not been a foundation

19       laid for Judy Faber being competent to reach

20       some of these conclusions that are being

21    stated on the record.

22    BY MR. HOLLANDER:

23    Q.  So in this particular instance, do you have

24    any personal knowledge of the relationship

25    between RFC and U.S. Bank National

19

1    Association as trustee?

2    A.  No.

3    Q.  For whom is U.S. Bank National Association

4        acting as the trustee?

5    A.  I believe it would be for the investors of

6        the -- that have bought the securities.

7    Q.  I'm sorry.  Something happened with the phone

8        and I didn't hear your answer.  I'm sorry.

9    A.  I believe it would be for the different

10       investors who have bought pieces of that

11       security that was issued.

12   Q.  Are there different investors that have

13       purchased the Peter Cook note?

14   A.  I don't think I'm qualified to answer that.

15       You know, I can tell you from what my basic

16       understanding is from the process, but I'm

17       not an expert.

18           MR. SHAW:  Once again, I'd like to

19       raise a continuing general objection that she

20       being -- testifying with respect to what her

21    job is, and I believe you're getting into

22    areas that is other than what her job is and

23    you're asking for possibly even legal

24    conclusions here.  So I would like to raise

25    that objection again.

Case 2:07-cv-01548 Document # 04-23 filed 11-26-08 Page 99 of 531 Page ID # 584

20

1   BY MR. HOLLANDER:

2   Q.  Are you aware of any investors who have

3       purchased or have an interest in the mortgage

4       purportedly signed by Wendy Cook?

5   A.  No.

6   Q.  You haven't seen any records that would tell

7       you who the trustee is; is that correct?

8   A.  I know who the trustee is, but I don't know

9       who any -- who any of the investors would be.

10  Q.  I'm sorry.  I apologize.  That was a poor

11      question.  Is it correct that you have not

12      seen any records that indicate who the

13      investors or owners are of the Peter Cook

14      note or the mortgage allegedly signed by

15      Peter and Wendy Cook?

16  A.  That is correct.

17  Q.  If you could please look at -- I just want to

18      go through a few of the exhibits in front of

19      you.

20  A.  Okay.

21   Q.  The one I want to start with should be

22        Exhibit 3.  That says Corporation Assignment

23        of Mortgage.

24   A.  Okay.

25   Q.  Other than the fact that this document was in

12-12020-mg    Doc 9579-69    Filed 02/02/16    Entered 02/02/16 16:18:14    Exhibit 42:
Deposition Testimony of Judy Faber on June 2    2008 filed in U.S. Ba    Pg 42 of 54

21

1    the file you received from Iron Mountain, do

2    you have any other knowledge of the creation

3    or maintenance of this document?

4   A.  No.

5   Q.  Have you seen an assignment that relates to

6    the mortgage or loan involved in this lawsuit

7    other than Exhibit 3?

8   A.  No.

9   Q.  If you could please look at Exhibit 2.

10   A.  Okay.

11   Q.  Could you tell me what that document is?

12   A.  To me, it appears to be a pay history.

13   Q.  Do you have personal knowledge of whether

14    this is a document that is maintained in the

15    normal course of business by RFC?

16   A.  Not spes -- no.

17   Q.  And there's some entries on this document.

18    Do you understand what those entries mean?

19   A.  No.

20   Q.  Those are the only questions I have,

Case 2:07-cv-01545 Document # 04-13    Filed 11/26/084 Page 42 of 53    Page ID #687

21    Ms. Faber.  Thank you very much for taking

22    the time to answer these questions.

23        THE WITNESS:  Okay.

24        MR. SHAW:  If we could have a

25    moment, I would like to discuss something

22

1    with Wayne Creel.  I will leave the room for

2    a second.

3         MR. HOLLANDER:  If you want, I can

4    get off the phone and call back in, or you

5    can give me a call and let me know when

6    you're ready for me to rejoin the --

7         MR. SHAW:  Yeah.  Let's just do

8    that.

9         MR. HOLLANDER:  I'll get off now

10   and then I'll just wait for you to call me

11   back.

12        MR. SHAW:  At what number should I

13   call back?

14        MR. HOLLANDER:  312-364-9100.

15        MR. SHAW:  Okay.  I'll call you

16   back.

17        MR. HOLLANDER:  Thank you.

18        (Off the record from 2:45 until

19   2:57 p.m.)

20        MR. SHAW:  We have no further

Case 2:09-cv-01545 Document # 04-23  Filed 11/26/084  age 44 of 53  age ID #385

21    questions.

22          MR. HOLLANDER:  Okay.  What do you

23    want to do with signature?

24          MR. SHAW:  Reserve it.

25          MR. HOLLANDER:  Okay.  Everybody

23

1    thank you very much.  I appreciate this and

2    we'll be talking to you soon.

3            (Whereupon, the foregoing

4    deposition was adjourned at 2:58 p.m.)

5

6

7

8  *** REPORTER'S NOTE:   The original transcript is

9  being delivered to Attorney Gary Hollander.

10

11

12

13

14

15

16

17

18

19

20

Case 3:09-cv-01545-D Document 47 04-23-1 filed 11/26/084 Page 46 of 53 PageID 3941

21

22

23

24

25

24

1       DEPOSITION CORRECTION SHEET

2

3   PAGE / LINE            REASON

4   _____

5   _____

6   _____

7   _____

8   _____

9   _____

10  _____

11  _____

12  _____

13  _____

14  _____

15  _____

16  _____

17  _____

18  _____

19  _____

20  _____

21  _____

22  _____

23  _____

24  _____

25  _____

Case 2:09-cv-01545 Document 71 04-13 Filed 11/18/2008 Page 49 of 53 Page ID #:894

25

1    I, JUDY FABER, have read this deposition transcript

2    and acknowledge herein its accuracy except as noted:

3

4

5

6

7          _____

8                Signature

9

10

11

12

13          _____

14                Notary Public

15

16

17

18

19

20

Case 2:09-cv-01545 Document # 64-23 filed 11/18/084 Page 9c of 53    Page ID #695

21

22

23

24

25

26

```
 1  STATE OF MINNESOTA)
              ) ss          CERTIFICATE
 2  COUNTY OF RAMSEY  )

 3
         I, PAULA K. RICHTER, Registered
 4  Professional Reporter, hereby certify that I
    reported the deposition of Judy Faber on the 2nd
 5  day of June, 2008, in Richfield, Minnesota, and
    that the witness was by me first duly sworn to
 6  tell the truth, the whole truth and nothing but
    the truth concerning the matter in controversy
 7  aforesaid;
         That I was then and there a Notary
 8  Public in and for the County of Ramsey, State of
    Minnesota;
 9       That by virtue thereof I was duly
    authorized to administer an oath;
10       That the foregoing transcript is a true
    and correct transcript of my stenographic notes in
11  said matter, transcribed under my direction and
    control;
12       That the cost of the original has been
    charged to the party who noticed the deposition,
13  and that all parties who ordered copies have been
    charged at the same rate for such copies;
14       That the reading and signing of the
    deposition by the witness was not waived;
15       That I am not related to nor an employee
    of any of the attorneys or parties hereto, nor a
16  relative or employee of any attorney or counsel
    employed by the parties hereto, nor financially
17  interested in the outcome of the action and have
    no contract with the parties, attorneys or persons
18  with an interest in the action that affect or has
    a substantial tendency to affect my impartiality;
19       WITNESS MY HAND AND SEAL this 9th day of
    June, 2008.
20
```

Case 2:07-cv-01845 Document # 64-13 Filed 11/26/08 Page 52 of 53 PageID #997

21

22

23    _____

24         Paula K. Richter
           Registered Professional Reporter
25          Notary Public