**Hearing Date and Time: February 10, 2016 at 10:00 a.m. (prevailing Eastern Time)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Douglas H. Mannal
Joseph A. Shifer
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | Chapter 11 |
| Debtors. | Jointly Administered |

**REPLY OF THE RESCAP LIQUIDATING TRUST
IN FURTHER SUPPORT OF ITS OMNIBUS MOTION TO ENFORCE
INJUNCTIVE PROVISIONS OF PLAN AND CONFIRMATION ORDER**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The ResCap Liquidating Trust (the "**Liquidating Trust**"), as successor to the debtors

(the "**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**"), hereby files this reply

(the "**Reply**") in further support of, and in response to the objections to, its *Omnibus Motion to*

*Enforce Injunctive Provisions of Plan and Confirmation Order* [Docket No. 9489] (the

"**Enforcement Motion**").[1]  In support of this Reply, the Liquidating Trust respectfully represents

as follows:

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the
Enforcement Motion.

**REPLY**

1.    As detailed in the Enforcement Motion, the Liquidating Trust and its counsel have worked diligently in accordance with the Procedures Order, first, to review the pending litigations against the Debtors and make a good faith determination of which litigations were violative of the Plan Injunction Provisions, and, second, to work with the litigants to consensually resolve their litigations.  Despite these efforts, certain parties persist in prosecuting their litigations in violation of the Plan Injunctive Provisions.  Accordingly, the Liquidating Trust was constrained to bring the Enforcement Motion.[2]

2.    Two objections were filed to the Enforcement Motion: (i) *Opposition and Objection to ResCap Liquidating Trust's Omnibus Motion to Enforce Plan and Injunctive Provisions of Plan and Confirmation Order* filed by Christopher Martinez [Docket No. 9575] (the "**Martinez Objection**") and *Objections: To ResCap Liquidating Trust's Omnibus Motion to Enforce Injunctive of Plan and Confirmation Order* filed by Marilyn Lawrence [Docket No. 9576] (the "**Lawrence Objection**," and together with the Martinez Objection, the "**Objections**").  The arguments raised in the Objections are meritless, and the Court should overrule the Objections and grant the relief sought in the Enforcement Motion.

A.    **Martinez Objection**

3.    On March 31, 2014, Mr. Martinez filed a complaint (the "**Martinez Complaint**") pro se in the Eighth Judicial District Court in Clark County, Nevada against, among others, Debtor GMAC Mortgage, LLC ("**GMACM**"), in an action styled *Martinez v. USAA Federal Savings Bank, et al.*, Case No. A-14-698046-C (the "**Nevada Action**").  A copy of the Martinez Complaint is annexed hereto at **Exhibit 1-A**.

---

[2] The Liquidating Trust's review of the pending litigations and efforts to reach consensual resolutions is ongoing, and the Liquidating Trust expects to file additional enforcement motions in the future.

4.      The Martinez Complaint relates to the foreclosure of the mortgage of non-parties, from whom Mr. Martinez received a quitclaim deed.  On or about July 28, 2009, Daniel and Yuliana Medeles executed a promissory note promising to repay $245,760.00 plus interest to lender USAA Federal Savings Bank, and the promissory note was secured by a deed of trust (the "**Deed of Trust**") against real property located at 6408 Sea Swallow St., North Las Vegas, NV 89084 (the "**Nevada Property**").  *See* Martinez Obj. Ex. 1-2.  On January 11, 2011, an Assignment of Deed of Trust was recorded transferring the Deed of Trust to GMACM.  *See* Martinez Complaint at p. 4; Martinez Obj. Ex. 3.  On June 24, 2013, a Substitution of Trustee was recorded, substituting Cooper Castle Law Firm, LLP, as the trustee under the Deed of Trust. *See* Martinez Obj. Ex. 6.  After the Medeleses defaulted on their monthly mortgage payments and failed to cure the default,  Mr. Martinez filed the Martinez Complaint in an attempt to delay the foreclosure of the Nevada Property.  Mr. Martinez's interest in the Nevada Property relates solely to a quitclaim deed he procured from the Medeleses on May 3, 2013.  *See* Martinez Complaint at p.2.

5.      On April 14, 2014, the Nevada Action was removed by the defendants to the U.S. District Court for the District of Nevada (the "**Nevada District Court**"), Case No. 2:14-CV-00567-RCJ-PAL.  On May 6, 2014, GMACM filed its *Notice of Bankruptcy Filing and Entry of Confirmation Order* [Nevada District Court Docket No. 22], in the Nevada District Court to apprise the Nevada District Court and the parties about the confirmation of the Plan and a description of the Plan Injunction Provisions.  A copy of the notice is annexed hereto as **Exhibit 1-B**.

6.      On June 16, 2014, the Nevada District Court entered an order granting the defendants' motions to dismiss (the "**Dismissal**") [Nevada District Court Docket No. 40].  A

copy of the Dismissal is annexed hereto at **Exhibit 1-C**.  Mr. Martinez appealed the Dismissal to

the U.S. Court of Appeals for the Ninth Circuit.  That appeal remains pending before the Ninth

Circuit at Case No. 14-16349 (the "**Martinez Appeal**").

      7.     Mr. Martinez raises several arguments in his objection.  All are meritless

and the Martinez Objection should be overruled.

      8.     <u>First</u>, Mr. Martinez argues that this Court should "exercise restraint" and

defer to the Ninth Circuit as the Ninth Circuit has been "fully briefed on this Courts' ruling

regarding the prohibition of monetary claims."  Martinez Obj. ¶ 8.  Under Article XII of the Plan,

however, this Court retained exclusive jurisdiction to hear and determine all matters pertaining to

the Plan Injunction Provisions.  Moreover, none of the briefs before the Ninth Circuit address the

issue of the Plan Injunction Provisions, nor would the issue be properly before the Ninth Circuit,

as the Nevada District Court did not rule on the issue.  *See* Appellant Opening Brief [Docket No.

7]; Appellees Answering Brief [Docket No. 11]; Appellant Reply Brief [Docket No. 27].

      9.     <u>Second</u>, Mr. Martinez appears to argue that his pursuit of monetary claims

against GMACM is permitted by the Court's Supplemental Servicing Order.  Martinez Obj. ¶ 9-

10.  In support of this argument, Mr. Martinez quotes extensively from the Court's Supplemental

Servicing Order.  *See id.*  The quoted provisions, however, relate to the Debtors' ability to have

settled foreclosure-related claims during the pendency of the Chapter 11 Cases, not a creditor's

ability to pursue claims in violation of the Plan Injunction Provisions.  Indeed, as cited in the

Enforcement Motion, the Supplemental Servicing Order permitted only the pursuit of

<u>nonmonetary</u> claims relating "exclusively to the property that is the subject of the loan owned or

serviced by a Debtor for the purposes of defending, unwinding, or otherwise enjoining or

precluding any foreclosure . . . or  eviction proceeding."  Supplemental Servicing Order ¶ 14(a).

Claims for monetary relief of any kind or nature and claims for "relief that if granted, would not terminate or preclude the prosecution and completion of a foreclosure or eviction" were not permitted. *Id*. at ¶ 14(b). None of Mr. Martinez's quotations from the Supplemental Servicing Order is to the contrary.

10.     Third, Mr. Martinez raises equitable considerations, characterizing the Enforcement Motion as an attempt to "white-wash" improper conduct by Debtor GMACM. Mr. Martinez appears to concede that he was aware of the deadline to file his claims, but did not do so because he only discovered his potential causes of action in March 2014.

11.     As an initial matter, as the Court is well aware, the Liquidating Trust's sole concern is the wind-down of the Debtors' estates and the distribution of the proceeds to the Debtors' unsecured creditors in accordance with the priority scheme provided for in the Bankruptcy Code and the Plan. Permitting Mr. Martinez to conduct an end-run around the claims resolution process will only have the potential effect of harming other creditors in the event that Mr. Martinez is permitted to seek judgment on his claims from another court.

12.     In addition, the gravamen of the Martinez Complaint relates to the origination and securitization process of the Medeles' mortgage loan—events that occurred in 2009. *See* Martinez Complaint. Thus, any claim related to that mortgage loan arose well before the General Bar Date of November 16, 2012. In any event, the terms of the Plan, including the Plan Injunction Provisions, do not make exceptions for creditors who have failed to comply with the claims resolution process in these Chapter 11 Cases. Mr. Martinez did not file any proof of claim (nor any other pleading in the Bankruptcy Cases prior to the Martinez Objection). Accordingly, he is barred from asserting monetary claims against the Debtors, including

GMACM.[3]

### B.      Lawrence Objection

13.      On February 16, 2012, Ms. Lawrence filed a complaint (the "**Lawrence Complaint**") pro se in the U.S. District Court for the Central District of California (the "**California District Court**") against, among others, Debtor Executive Trustee Services, LLC ("**ETS**"), in an action styled *Lawrence v. Sadek, et al.,* Case No. 12-cv-01372 (the "**Lawrence Action**").    On July 24, 2012, Ms. Lawrence filed an amended complaint (the "**Amended Lawrence Complaint**").    A copy of the Amended Lawrence Complaint is annexed hereto as **Exhibit 2-A**.

14.      All defendants in the Lawrence Action have been dismissed except ETS, and the Lawrence Action remains pending, but stayed, against ETS.

15.      Ms. Lawrence does not appear to dispute the fact that she neglected to timely file a proof of claim, nor does she dispute that the Amended Lawrence Complaint asserts monetary claims against the Debtors.    The crux of the Lawrence Objection appears to be that Ms. Lawrence did not timely file any proof of claim in the Chapter 11 Cases because she did not receive appropriate notice until counsel to the Liquidating Trust sent her a letter in June 2015, pursuant to the Plan Injunction Procedures, requesting that she dismiss the monetary claims against ETS asserted in the Lawrence Action.    Lawrence Obj. ¶ 2.

16.      Ms. Lawrence was served with the *Notice of Chapter 11 Bankruptcy Cases, Meeting of Creditors and Deadlines* (the "**Notice of Commencement**") at the address

---

[3] To the extent Mr. Martinez argues he was not served with notice of the bar dates, Mr. Martinez was not served because he was not a known creditor of the Debtors. The Medeleses were served with the Bar Date Notice. *See Affidavit of Service of Clarissa D. Cu* [Docket No. 9586].

provided in the Lawrence Complaint.[4]  Although the Amended Lawrence Complaint provided a different address for Ms. Lawrence, to the Liquidating Trust's knowledge Ms. Lawrence did not notify the Debtors of the address change, nor does Ms. Lawrence allege to have done so. Accordingly, the *Notice of Deadlines for Filing Proofs of Claim* (the "**Bar Date Notice**") was also served to the address provided in the Lawrence Complaint.[5]

17.    Ms.  Lawrence  does  not  appear  to  dispute  that  the  Notice  of Commencement was sent to the appropriate address, stating only that she "never received this notice." Lawrence Obj. ¶ 3.  It is a well-settled principle that "proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." *Hagner v. United States*, 285 U.S 427, 430 (1932); *see also Akey v. Clinton County*, 375 F.3d 231, 235 (2d Cir. 2004) (when a party "provides evidence that the notices . . . were properly addressed and mailed in accordance with regular office procedures, it is entitled to a presumption that the notices were received."). Ms. Lawrence was further made aware of the Chapter 11 Cases pursuant to the *Notice of Bankruptcy and Suggestion of Automatic Stay* filed by ETS in the Lawrence Action on July 24, 2013 [Lawrence Action Docket No. 55].  A copy of the notice is annexed hereto as **Exhibit 2-B**.

18.    Although Ms. Lawrence did file proofs of claim after receiving letters from the Liquidating Trust informing her that continued pursuit of monetary claims against ETS violated the Plan Injunction Provisions, those claims were filed in August 2015 or later (i.e., almost <u>three years</u> after the General Bar Date).  As provided for in the confirmed Plan, "any and all proofs of claim filed after the applicable bar date shall be deemed disallowed, discharged,

---

[4] *See Affidavit of Service of Melissa Loomis re: 1) Notice of Chapter 11 Bankruptcy Cases, Meeting of Creditors, and Deadlines*, Ex. C at p. 3446 [Docket No. 336-5].

[5] *See Affidavit of Service of Clarissa D. Cu re: Notice of Deadlines for Filing Proofs of Claim*, Ex. I at p. 6921 [Docket No. 1412-7].

released, and expunged as of the effective date without any further notice to or action, order, or

approval of the Bankruptcy Court" unless said claim is deemed timely filed by the Court.  *See*

Plan, Art. VIII.B.  Accordingly, the proofs of claims Ms. Lawrence filed were expunged by the

Claims Agent in accordance with the Plan.

19.    Further, Ms. Lawrence's continued pursuit of monetary claims against

ETS is barred by California law.  On May 16, 2012, ETS filed a *Declaration of Non-Monetary

Status* in the Lawrence Action pursuant to California Civil Code Section 2924l, setting forth that

ETS "knows or maintains a reasonable belief that it has been named as a defendant . . . solely in

its capacity as a trustee under the DOT and not arising out of any wrongful acts or omissions on

its part in the performance of its duties as trustee."  [Lawrence Action Docket No. 18 ¶ 5].[6]

Given there was no objection filed within 15 days, monetary damages against ETS are barred.[7]

20.    The Liquidating Trust submits that the proper service of the Notice of

Commencement and the *Notice of Bankruptcy and Suggestion of Automatic Stay* filed in the

Lawrence Action were sufficient to put Ms. Lawrence on notice of the General Bar Date.

Moreover, even if Ms. Lawrence was not on notice of the General Bar Date, the Plan Injunction

Provisions are absolute and Ms. Lawrence cannot be allowed to prosecute her claims against the

Debtors before the California District Court.

---

[6] Cal. Civ. Code § 2924l(a) provides:  "In the event that a trustee under a deed of trust is named in an action or proceeding in which that deed of trust is the subject, and in the event that the trustee maintains a reasonable belief that it has been named in the action or proceeding solely in its capacity as trustee, and not arising out of any wrongful acts or omissions on its part in the performance of its duties as trustee, then, at any time, the trustee may file a declaration of nonmonetary status."

[7] "In the event that no objection is served within the 15-day objection period, the trustee shall not be required to participate any further in the action or proceeding, shall not be subject to any monetary awards as and for damages, attorneys' fees, or costs, shall be required to respond to any discovery requests as a nonparty, and shall be bound by any court order relating to the subject deed of trust that is subject of the action or proceeding." Cal. Civ. Code § 2924l(d).

## CONCLUSION

WHEREFORE, the Liquidating Trust respectfully requests that the Court overrule the

Objections and grant the relief requested in the Enforcement Motion and such other and further

relief as is just and proper.

Dated:    New York, New York
          February 8, 2016

                                       KRAMER LEVIN NAFTALIS & FRANKEL LLP

                                       /s/ Joseph A. Shifer
                                       Kenneth H. Eckstein
                                       Douglas H. Mannal
                                       Joseph A. Shifer
                                       1177 Avenue of the Americas
                                       New York, New York 10036
                                       Telephone: (212) 715-9100
                                       Facsimile: (212) 715-8000
                                       *Counsel for the ResCap Liquidating Trust*

## **EXHIBIT 1-A**

Case 2:14-cv-00567-RCJ-PAL   Document 1-1   Filed 04/14/14   Page 65 of 92

Electronically Filed
03/31/2014 03:59:53 PM

**CLERK OF THE COURT**

EIGHTH JUDICIAL DISTRICT COURT

CLARK COUNTY, NEVADA

| | | |
|---|---|---|
| CHRISTOPHER MARTINEZ, | § | |
|            Plaintiff, | § | Case No. A-14-698046-C |
| | § | Dept. 28 |
| vs. | § | |
| | § | |
| USAA FEDERAL SAVINGS BANK; | § | AMENDED    APPLICATION    FOR |
| GOVERNMENT NATIONAL | § | TEMPORARY RESTRAINING ORDER, |
| MORTGAGE ASSOCIATION AS | § | PRELIMINARY    INJUNCTION    AND |
| TRUSTEE FOR SECURITIZED | § | FOR DECLARATORY RELIEF |
| TRUST GINNIE MAE REMIC TRUST | § | |
| 2009-70; OCWEN LOAN | § | |
| SERVICING, LLC; MORTGAGE | § | |
| ELECTRONIC REGISTRATION | § | |
| SYSTEM, AKA "MERS"; GMAC | § | |
| MORTGAGE, LLC; THE COOPER | § | |
| CASTLE LAW FIRM, LLP; AND | § | |
| DOES 1 THROUGH 100, | | |
| INCLUSIVE | | |
| | | |
|            DEFENDANTS | | |

COMPLAINT

Case 2:14-cv-00567-RCJ-PAL    Document 1-1    Filed 04/14/14    Page 66 of 82

## AMENDED APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND DECLARATORY RELIEF

COMES NOW, Plaintiff CHRISTOPHER MARTINEZ ("Plaintiff") and files **Verified Emergency Petition for Temporary Restraining Order and/or Preliminary Injunction, and Declaratory Relief** against the listed Defendants. A temporary restraining order is appropriate to maintain the status quo. Plaintiff's home will be sold within the next month and Plaintiff is subject to eviction actions, without immediate intervention from this Court.

## A. PARTIES

Plaintiff now, and at all times relevant to this action, is a resident of the County of CLARK, State of NEVADA.

DANIEL and YULIANA MEDELES are the borrowers listed on the Promissory Note and Deed of Trust in question; and the Plaintiff CHRISTOPHER MARTINEZ, is the current title holder of record, of the subject property.

Defendant, USAA FEDERAL SAVINGS BANK (herein referred to as "USAA") is a National Banking Association, doing business in the County of CLARK, State of NEVADA. Plaintiff is further informed and believes, and thereon alleges, that USAA is the Originator of the loan.

Defendant, GOVERNMENT NATIONAL MORTGAGE ASSOCIATION (herein referred to as "GINNIE MAE"), as Trustee for securitized trust GINNIE MAE REMIC TRUST 2009-70 (herein referred to as "TRUST 2009-70"). Plaintiff is informed and believes, and thereon alleges that, Defendant GINNIE MAE, is a national banking association, doing business in the County of CLARK, State of NEVADA and is the purported Trustee for Securitized Trust and/or a purported participant in the imperfect securitization of the Promissory Note and/or Deed of Trust as more particularly described in this Complaint.

Defendant, GMAC MORTGAGE, LLC. Plaintiff is informed and believes, and therefore alleges that, Defendant is a corporation that is doing business in the County of Clark, State of Nevada, and is the purported current holder of the Promissory Note secured by the Deed of Trust, the beneficiary of the Deed of Trust, and/or a purported

Case 2:14-cv-00567-RCJ-PAL  Document 1-1  Filed 04/14/14  Page 67 of 82

1   participant in the imperfect securitization of the Promissory Note and/or Deed of Trust,

2   as more particularly described in this Complaint.

3        Defendant, OCWEN LOAN SERVICING, LLC Plaintiff is informed and believes,

4   and thereon alleges that, Defendant OCWEN LOAN SERVICING, LLC, is a

5   corporation, doing business in the County of CLARK, State of NEVADA and is the

6   purported Servicer for the Deed of Trust and/or a purported participant in the imperfect

7   securitization of the Promissory Note and/or Deed of Trust, as more particularly

8   described in this Complaint.

9        Defendant, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., aka

10  MERS ("MERS"), Plaintiff is informed and believes, and thereon alleges, that MERS is

11  a corporation duly organized and existing under the laws of NEVADA, whose last

12  known address is 1818 Library Street, Suite 300, Reston, Virginia 20190; website:

13  http://www.mersinc.org. MERS is doing business in the County of CLARK, State of

14  NEVADA. Plaintiff is further informed and believes, and thereon alleges, that

15  Defendant MERS is the purported Beneficiary under the Deed of Trust and/or is a

16  purported participant in the imperfect securitization of the Promissory Note and/or the

17  Deed of Trust, as more particularly described in this Complaint.

18       Defendant, THE COOPER CASTLE LAW FIRM, LLP. Plaintiff is informed and

19  believes, and therefore alleges that, Defendant is a corporation that is doing business

20  in the County of Clark, State of Nevada, and is the purported foreclosing Trustee of the

21  Deed of Trust, as more particularly described in this Complaint.

22       Plaintiff does not know the true names, capacities, or basis for liability of

23  Defendants sued herein as Does 1 through 100, inclusive, as each fictitiously named

24  Defendant is in some manner liable to Plaintiff, or claims some right, title, or interest in

25  the Property. Plaintiff will amend this Complaint to allege their true names and

26  capacities when ascertained. Plaintiff is informed and believes, and therefore alleges,

27  that at all relevant times mentioned in this Complaint, each of the fictitiously named

28  Defendants are responsible in some manner for the injuries and damages to Plaintiff

so alleged and that such injuries and damages were proximately caused by such

Defendants, and each of them.

1    Plaintiff is informed and believes, and thereon alleges, that at all times herein
2    mentioned, each of the Defendants were the agents, employees, servants and/or the
3    joint-ventures of the remaining Defendants, and each of them, and in doing the things
4    alleged herein below, were acting within the course and scope of such agency,
5    employment and/or joint venture.

6

7                          **B. INTRODUCTION**

8        DANIEL and YULIANA MEDELES (borrowers) signed a quitclaim deed in favor
9    of the 6408 Trust – Equity Housing LLC as Trustee and recorded on March 22, 2011
10   as Instrument number 20110322-0002844. Subsequently, Equity Housing LLC as
11   Trustee of the 6408 Trust signed a quitclaim deed in favor of the Plaintiff
12   CHRISTOPHER MARTINEZ on May 3, 2013 and recorded as Instrument number
13   20130503-0002367.

14       DANIEL and YULIANA MEDELES (borrowers) signed a special power of
15   attorney on February 14, 2011, granting to Plaintiff CHRISTOPHER MARTINEZ *"...full
16   power and authority to institute, maintain, defend, compromise, arbitrate or otherwise
17   dispose of, any and all actions, suits, attachments or other legal proceedings for or
18   against me..."*

19       Plaintiff CHRISTOPHER MARTINEZ, disputes the title and ownership of the
20   real property in question (the "Home"), which is the subject of this application, in that
21   the originating mortgage lender, and others alleged to have ownership of the
22   MEDELES (borrowers) Promissory Note and/or Deed of Trust, have unlawfully sold,
23   assigned and/or transferred their ownership and security interest in the Promissory
24   Note and Deed of Trust related to the Property; and thus, DO NOT have lawful
25   ownership or a security interest in Plaintiff's Home, which is described in detail herein.

26       Defendant USAA did NOT cause to be recorded a notice of default in the official
27   records of CLARK County, NEVADA, alleging that a breach of the obligation secured
28   by the Deed of Trust has occurred as required by law.[1]

         Defendant, THE COOPER CASTLE LAW FIRM, LLP intends to sell the

---

[1] Nev. Rev. Stat. Ann. § 107.080(c) (2011)

[2] http://www.sec.gov/Archives/edgar/data/815018/000116231807000567/m0565424b5.htm

Case 2:14-cv-00567-RCJ-PAL   Document 1-1   Filed 04/14/14   Page 69 of 82

1  property, having given notice that sale of the property as Notice of Trustee's Sale,
2  recorded on February 25, 2014 as document number 201402250000850 with a sale
3  date of April 30, 2014. Unless restrained, Defendants, and each of them, will thus sell
4  the property or cause the property to be sold. This sale would be to Plaintiff's great and
5  irreparable injury, for which pecuniary compensation would not afford adequate relief,
6  in that plaintiff, having no right to redeem the property from the sale, will forfeit the
7  property if the sale takes place as scheduled.
8
9                         **C. FACTUAL ALLEGATIONS**
10         Plaintiff is informed and alleges that the alleged beneficiary of the Deed of
11 Trust, Defendant GMAC MORTGAGE, LLC, and its Servicing Agent, Defendant
12 OCWEN LOAN SERVICING, LLC claim that they have acquired the right to foreclose
13 on the Plaintiff's property, by way of an Assignment of Deed of Trust; supposedly
14 excuted by Defendant MERS, recorded on January 11, 2011 as document number
15 201101111535. However, Plaintiff alleges that this assignment is a forged, "robo-
16 signed" document because the assignor, Anthony McLaughlin as "Assitant Secretary"
17 of Defendant MERS, was in fact an active employee of Defendant GMAC
18 MORTGAGE, LLC as a Category 3 and 4 Authorized Officer, with an employment
19 address of 1100 Virginia Drive, Fort Washington, PA 19034-3200. The Defendant
20 GMAC MORTGAGE, LLC also has a corporate office located at the same address.
21         In other words, Defendant GMAC MORTGAGE, LLC had its own employee
22 assign the Deed of Trust to itself, and Mr. McLaughlin deliberity misrepresented
23 himself as an employee of Defendant MERS to conceal his true employement status
24 and authority to assign, in clear violation of NEVADA law AB 284 (NRS 107.080).
25 Therefore, Defendants GMAC MORTGAGE, LLC  and OCWEN LOAN SERVICING,
26 LLC do not have the requisite title, perfected security interest and/or standing to
27 proceed in a foreclosure; and/or they are not the real party in interest, or agent or
28 nominee of the real party in interest, with regard to any action taken or to be taken
   against the Property.
         On or about AUGUST 28, 2009 (hereinafter referred to as "Closing Date")
   DANIEL and YULIANA MEDELES (borrowers) entered into a consumer credit

---

4
COMPLAINT

transaction with Defendant USAA FEDERAL SAVINGS BANK by obtaining a $245,760.00 mortgage loan secured by the borrowers' principal residence, (Subject Property). A Deed of Trust on the Property in favor of Defendant USAA FEDERAL SAVINGS BANK secured this Promissory Note. The borrowers are also third party intended beneficiaries, under the terms of the PSA.

Furthermore, Defendants, and each of them, failed to secure written authorization from the borrowers (DANIEL and YULIANA MEDELES) to change the terms of the Promissory Note, by fractionalizing the Promissory Note and converting it into a series of security certificates. Nothing written in the Promissory Note and/or Deed of Trust permits this fractionalization; therefore, this change substantively affected the nature and terms of the Promissory Note, requiring the borrowers written authorization in order to effectuate this change in the Promissory Note and/or Deed of Trust, and be enforceable under their respective terms and conditions.

This loan was securitized, with the Promissory Note not being properly transferred to Defendant, GINNIE MAE, acting as the Trustee for the TRUST 2009-70 Trust holding the borrowers' Promissory Note. Documents filed with the SEC by the securitization participants allegedly claim that the Promissory Note and Deed of Trust at issue in this case were sold, transferred and securitized by Defendants, with other loans and mortgages, with an aggregate principal balance of approximately $245,760.00 into the TRUST 2009-70 Trust; which is a Common Law Trust formed pursuant to New York law. A detailed description of the mortgage loans which form the TRUST 2009-70 Trust is included in Form 424B5 ("the Prospectus"), which has been duly filed with the SEC and which can be accessed through the above mentioned footnote.

An expert, certified, forensic audit of the MEDELES' (borrowers) loan documents reveals that the Promissory Note was required to at least go through this assignment chain of key parties before it reached the REMIC trustee it was destined for:

COMPLAINT



The PSA requires that the Promissory Note and/or Deed of Trust have to be indorsed and assigned, or transferred, respectively, to the Trust and executed by multiple intervening parties in the above chain of assignment, before it reached the REMIC Trustee.

DANIEL and YULIANA MEDELES (borrowers) executed a series of documents, including but not limited to a Promissory Note and Deed of Trust, securing the Property in the amount of the Promissory Note. The original beneficiary and nominee under the Deed of Trust was Defendant MERS.

Plaintiff is informed and believes, and thereon alleges, that the purchase loan on the Property, the debt or obligation evidenced by the Promissory Note and the Deed of Trust executed by the borrowers in favour of the original lender and other Defendants, regarding the Property, was not properly assigned and/or transferred to Defendant GINNIE MAE as Trustee of the TRUST 2009-70 Trust, operating the pooled mortgage funds or REMIC Trust in accordance with the PSA and/or NEVADA law, to the entities making and receiving the purported assignments to this Trust.

From 1998 until the financial crash of 2008-2009, over 60 million home loans where sold by originating lender banks to investment banks to be securitized in a complex series of billions of transactions. The borrower's home loan was one of the 60 million notes that were securitized.

Securitization is the process whereby mortgage loans are turned into securities, or bonds, and sold to investors by Wall Street and other firms. The purpose is to provide a large supply of money to lenders for originating loans, and to provide investments to bond holders, which were expected to be relatively safe. The procedure for selling of the loans was to create a situation whereby certain tax laws known as the

Real Estate Mortgage Investment Conduit (hereinafter "REMIC") Act were observed, and whereby the Issuing Entities and the Lenders would be protected from either entity going into bankruptcy. In order to achieve the desired "bankruptcy remoteness," numerous "True Sales" of the loans had to occur, in which loans were sold and transferred to the different parties to the securitization.

How a particular mortgage loan ended up being transferred to a REMIC TRUST in the securitization process is governed by a contract known as a Pooling and Servicing Agreement ("PSA"). The PSA is a Trust Agreement required to be filed under penalty of perjury with the United States Securities and Exchange Commission ("SEC") and which, along with another document, the Mortgage Loan Purchase Agreement ("MLPA"), is the operative securitization document created by the finance and securitization industry to memorialize securitization transactions. Plaintiff's PSA required at minimum this chain of title:



A "True Sale" of the loan would be a circumstance whereby one party owned the Note and then sold it to another party. An offer would be made, accepted and compensation given to the "seller" in return for the Note. The Notes would be transferred, and the Deeds of Trust assigned to the buyers of the Note, with an Assignment made every step of the way, and, furthermore, each Note would be indorsed to the next party by the previous assignee of record.

In order for the Trustee of the Securitized REMIC Trust to have a valid and enforceable secured claim against Plaintiff's Home, the Trustee must prove and certify to all parties that, among other things required under the PSA:

　　　　　a. There was a complete and unbroken chain of indorsements and transfers of the Note from and to each party to the securitization transaction (which should be from the (A) Mortgage Originator to the (B)

COMPLAINT

Sponsor to the (C) Depositor to the (D) Trust/Trustee, and that all of these indorsements and transfers were completed prior to the Trust closing dates (see discussion below); and

b. The Trustee of the Securitized Trust had actual physical possession of the Note at that point in time, when all indorsements and assignments had been completed. Absent such proof, Plaintiff alleges that the Trust cannot demonstrate that it had perfected its security interest in Plaintiff's Home that is the subject of this action. Therefore, if the Defendants, and each of them, did not hold and possess the Note on or before the closing date of the Trust herein, they are estopped and precluded from asserting any secured or unsecured claim in this case.

Plaintiff is informed and believes, and thereon alleges, that pursuant to the terms of the PSA, the Mortgage Originator (i.e., the original lender herein) agreed to transfer and indorse to the Trustee for the Securitized Trust, without recourse, including all intervening transfers and assignments, all of its right, title and interest in and to the mortgage loan (Promissory Note) of DANIEL and YULIANA MEDELES (borrowers) herein and all other mortgage loans identified in the PSA.

Based upon the foregoing, Plaintiff is further informed and believes, and thereon alleges, that the following deficiencies exist, in the "True Sale" and securitization process as to this Deed of Trust which renders invalid any security interest in the mortgage, including, but not limited to:

a. The splitting or separation of title, ownership and interest in the Note and Deed of Trust of which the original lender is the holder, owner and beneficiary of said Deed of Trust;

b. When the loan was sold to each intervening entity, there were no Assignments of the Deed of Trust to or from any intervening entity at the time of the sale. Therefore, "True Sales" could not and did not occur;

8
COMPLAINT

c.  The failure to assign and transfer the beneficial interest in said Deed of Trust to GINNIE MAE, in accordance with the PSA of the Defendants, as Securitization Participants;

d.  The failure to indorse, assign and transfer the Note and/or Deed of Trust to Defendant GINNIE MAE, as Trustee for TRUST 2009-70 Trust, in accordance with the PSA;

e.  No Assignments of Beneficiary or Indorsements of the Note to each of the intervening entities in the transaction ever occurred under NEVADA law, which is conclusive proof that no true sales occurred as required under the PSA filed with the SEC; and

f.  Defendants, and each of them, violated the pertinent terms of the PSA.

Plaintiff alleges that the PSA requires that each Promissory Note had to be indorsed, assigned, or transferred, respectively, to the Trust and executed by multiple intervening parties before it reached the Trust. Here, neither the borrowers' (DANIEL and YULIANA MEDELES) Promissory Note or the Deed of Trust, were assigned to the Securitized Trust by the closing date and neither were transferred or executed in a manner consistent with the PSA. Therefore, under the PSA, any assignments of the Deed of Trust beyond the specified closing date for the Trust are void.

Plaintiff further alleges that even if the Deed of Trust had been transferred into the Trust by the closing date, the transaction is still void as the Promissory Note would not have been transferred according to the requirements of the PSA, since the PSA requires a complete and unbroken chain of transfers/assignments to and from each intervening party.

Plaintiff is informed and believes, and thereon alleges, that the TRUST 2009-70 Trust had no officers or directors and no continuing duties other than to hold assets and to issue the series of certificates of investment in mortgage backed securities as described in the Prospectus identified herein below. A detailed description of the

Case 2:14-cv-00567-RGLPAL    Document 1-1    Filed 04/14/14    Page 75 of 82

1  mortgage loans which form the TRUST 2009-70 Trust is included in Form 424B5 ("the

2  Prospectus"), which has been duly filed with the SEC and which can be accessed

3  through the below mentioned footnote.[2]

4      Plaintiff also alleges that the Promissory Note was secured by the Deed of

5  Trust. Plaintiff alleges that as of the date of the filing of this Complaint, the Deed of

6  Trust had not been legally assigned to any other party or entity.

7      Plaintiff is informed and believes, that Defendant GINNIE MAE as Trustee of

8  the TRUST 2009-70 Trust, alleges that it is the "holder and owner" of the Promissory

9  Note and the beneficiary of the Deed of Trust. However, the Promissory Note and

10 Deed of Trust identify the mortgagee as Defendant MERS as nominee of the lender,

11 Defendant USAA FEDERAL SAVINGS BANK, and Promissory Note holder as the

12 original lending institution, Defendant USAA FEDERAL SAVINGS BANK or Mortgage

13 Originator. Documents state that the original lender allegedly sold the mortgage loan

14 to Defendant GINNIE MAE as Trustee of the REMIC TRUST 2009-70 Trust.

15     Plaintiff further alleges that no documents or records can be produced that

16 demonstrate that prior to the closing date for TRUST 2009-70 Trust, the Promissory

17 Note was duly indorsed, transferred and delivered to TRUST 2009-70 Trust, including

18 all intervening transfers. Nor can any documents or records be produced that

19 demonstrate that prior to the closing date, the Deed of Trust was duly assigned,

20 transferred and delivered to TRUST 2009-70 Trust, via the trustee Defendant GINNIE

21 MAE, including all intervening transfers/assignments.

22     Plaintiff further alleges that any documents that purport to transfer any interest

23 in the Promissory Note to TRUST 2009-70 Trust after the Trust closing date are void

24 as a matter of law, pursuant to New York trust law and relevant portions of the PSA.

25     Moreover, there is no provision in either the Promissory Note or Deed of Trust

26 that permits the fractionalization of the Promissory Note into security instruments.

27 Such a substantive change in the terms of the Promissory Note would require the

28 borrowers' (DANIEL and YULIANA MEDELES) express written consent, before those

changes could take effect and be enforceable. The Defendants, and each of them,

---

[2] http://www.sec.gov/Archives/edgar/data/815018/000116231807000567/m0565424b5.htm

Case 2:14-cv-00567-RCJ-PAL  Document 1-1  Filed 04/14/14  Page 76 of 82

made no attempt to secure such authorization from the borrowers and have therefore rendered the Promissory Note void.

The MEDELES (borrowers) debt or obligation did not comply with New York law, and/or other laws and statutes, and, thus, do not constitute valid and enforceable "True Sales." Any security interest in the Property was, thus, never perfected. The alleged holder of the Promissory Note, Defendant GINNIE MAE as Trustee of the REMIC TRUST 2009-70 Trust, is not the beneficiary of the Deed of Trust.

Futhermore, Defendants GMAC MORTGAGE, LLC and OCWEN LOAN SERVICING, LLC do not own the borrowers' (DANIEL and YULIANA MEDELES) Promissory Note and they do not have the requisite title, perfected security interest or standing to proceed in a foreclosure; and/or they are not the real party in interest, or agent or nominee of the real party in interest, with regard to any action taken or to be taken against the Property.

Plaintiff is also informed and believes, and thereon alleges that at all times herein mentioned, and any assignment of a Deed of Trust without proper transfer of the obligation that it secures is a legal nullity (NRS 107.086).

In order for the Defendants, including the Trustee of the Securitized REMIC Trust, to have a valid and enforceable secured claim against Plaintiff's (CHRISTOPHER MARTINEZ) Home, the party claiming the right to foreclose must prove and certify to all parties that, among other things required under the PSA, NRS 107.086 and Article 3 of the Uniform Commercial Code (NRS 104.3101 - .3605):

    a. There was a complete and unbroken chain of indorsements and transfers of the Promissory Note from and to each party to the securitization transaction (which should be from the (A) Mortgage Originator to the (B) Sponsor to the (C) Depositor to the (D) Trust/Trustee, and that all of these indorsements and transfers were completed prior to the Trust closing dates (see discussion below); and

    b. The Trustee of the Securitized Trust had actual physical possession of the Promissory Note at that point in time, when all indorsements and assignments had been completed. Absent such proof, Plaintiff alleges

Case 2:14-cv-00567-RCJ-PAL    Document 1-1    Filed 04/14/14    Page 77 of 82

1          that the Trust cannot demonstrate that it had perfected its security

2          interest in Plaintiff's Home that is the subject of this action. Therefore, if

3          the Defendants, and each of them, did not hold and possess the

4          Promissory Note on or before the closing date of the Trust herein, they

5          are estopped and precluded from asserting any secured or unsecured

6          claim in this case, through their agents or otherwise.

7

8          Plaintiff is informed and believes, and thereon alleges, that pursuant to the

9 terms of the PSA, the Mortgage Originator (i.e., the original lender herein) agreed to

10 transfer and indorse to the Trustee for the Securitized Trust, without recourse,

11 including all intervening transfers and assignments, all of its right, title and interest in

12 and to the mortgage loan (Promissory Note) of DANIEL and YULIANA MEDELES

13 herein and all other mortgage loans identified in the PSA.

14          Plaintiff is further informed and believes, and thereon alleges, that the PSA

15 provides that the transfers and assignments are absolute, were made for valuable

16 consideration, to wit, in exchange for the certificates described in the PSA, and were

17 intended by the parties to be a "bona fide" or a "True Sale." Since, as alleged herein

18 below, True Sales did not actually occur, Plaintiff alleges that the Defendants are

19 estopped and precluded from asserting any secured or unsecured claim in this case.

20          Plaintiff is further informed and believes, and thereon alleges, that as a result of

21 the PSA and other documents signed under oath in relation thereto, the Mortgage

22 Originator, sponsor and Depositor are estopped from claiming any interest in the

23 Promissory Note that is allegedly secured by the Deed of Trust on Plaintiff's Home

24 herein.

25          Plaintiff is informed and believes, and thereon alleges, that the Promissory Note

26 in this case and the other mortgage loans identified in the PSA, were never actually

27 transferred and delivered by the Mortgage Originator to the Sponsor or to the

28 Depositor nor from the Depositor to the Trustee for the Securitized Trust. Plaintiff

further alleges, on information and belief, that the PSA herein provides that the

Mortgage Files of the Mortgages were to be delivered to TRUST 2009-70 Trust, which

Mortgage Files include the original Deeds of Trust, herein.

COMPLAINT

Based upon the foregoing, Plaintiff is further informed and believes, and thereon alleges, that the following deficiencies exist, in the "True Sale" and securitization process as to the Promissory Note and/or Deed of Trust which renders invalid any security interest in the Promissory Note and/or Deed of Trust, including, but not limited to:

a. The splitting or separation of title, ownership and interest in the Promissory Note and Deed of Trust of which the original lender is the holder, owner and beneficiary of the Deed of Trust;

b. When the loan was sold to each intervening entity, there were no Assignments of the Deed of Trust to or from any intervening entity at the time of the sale. Therefore, "True Sales" could not and did not occur;

c. The failure to assign and transfer the beneficial interest in the Deed of Trust to GINNIE MAE as Trustee of the REMIC TRUST 2009-70 Trust, in accordance with the PSA of the Defendants, as Securitization Participants;

d. The failure to indorse, assign and transfer the Promissory Note and/or Deed of Trust to Defendant GINNIE MAE, as Trustee for TRUST 2009-70 Trust, in accordance with the PSA and applicable New York law, NRS 107.086 and/or Article 3 of the Uniform Commercial Code (NRS 104.3101 - .3605);

e. No Assignments of Beneficiary or indorsements of the Promissory Note to each of the intervening entities in the transaction ever occurred under NEVADA law (NRS 107.086), which is conclusive proof that no true sales occurred as required under the PSA filed with the SEC; and

COMPLAINT

f. Defendants, and each of them, violated the terms of the PSA, which the borrowers (DANIEL and YULIANA MEDELES) are third party intended beneficiaries thereof.

Plaintiff, therefore, alleges, upon information and belief, that none of the parties to the securitization transaction, nor any of the Defendants in this case, hold a perfected and secured claim in the Property; and that all Defendants are estopped and precluded from asserting an unsecured claim against Plaintiff's property.

## D. THE STANDARD FOR INJUNCTIVE RELIEF IS SATISFIED

### 1. FORECLOSURE TRO'S:

Injunctive or declaratory relief may be available to prevent an improper private sale of encumbered property on such grounds as that there is no actual default justifying the sale (Bisno v. Sax (1959, 2nd Dist) 175 Cal App 2d 714, 346 P2d 814), that the secured transaction is itself invalid (Daniels v. Williams (1954) 125 Cal App 2d 310, 270 P2d 556), that the requirements of mandatory mediation have been violated (*Holt v. Reg'l Tr. Services Corp.*, 266 P.3d 602, 606 (Nev. 2011)), a prima facie showing of possible agency (*Dixon v. Thatcher*, 103 Nev. 414, 416 (Nev. 1987)), or that inadequate notice of default was given. (Lupertino v. Carbahal (1973, 3rd Dist) 35 Cal App 3d 742, 111 Cal Rptr 112) This relief may also be available to resolve a dispute as to the amount of the default. (More v. Calkins (1890) 85 Cal 177, 24 P 729).

### 2. PRELIMINARY INJUNCTION:

"An injunction may be granted in the following cases:

1. When it shall appear by the complaint that the plaintiff is entitled to the relief demanded, and such relief or any part thereof consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually.

2. When it shall appear by the complaint or affidavit that the commission or continuance of some act, during the litigation, would produce great or irreparable injury to the plaintiff.

14

COMPLAINT

3. When it shall appear, during the litigation, that the defendant is doing or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual."

Nev. Rev. Stat. Ann. § 33.010 (2011)

"The standard for issuing a permanent injunction is substantially the same as that applied to a request for preliminary injunctive relief." *Quiroga v. Chen*, 735 F. Supp. 2d 1226, 1229 (D. Nev. 2010). "Plaintiff seeking permanent injunction must demonstrate that: (1) it has suffered irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering balance of hardships between plaintiff and defendant, remedy in equity is warranted; and (4) public interest would not be disserved by permanent injunction." *Id.* (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006)). Moreover, a party seeking an injunction must show that it is likely, rather than simply possible, that he will succeed on the merits. *Id.* at 1229.

## 3. TEMPORARY RESTRAINING ORDER:

"Temporary restraining orders are governed by the same standard applicable to preliminary injunctions." *Quiroga v. Chen*, 735 F. Supp. 2d 1226, 1228 (D. Nev. 2010).

## E. PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS AT TRIAL.

The foreclosure sale and/or any further transfer of ownership or encumbrance must be enjoined because the evidence elicited demonstrates that Plaintiff will succeed on the merits at trial. Plaintiff has successfully alleged nine causes of action against Defendants in this case, including violations of TILA and RESPA; Fraud; Unfair and Deceptive Business Practice; Unconscionability; and Quiet Title.

An actual controversy has arisen and now exists between plaintiff and defendants regarding their respective rights and duties. Plaintiff contends that his note and deed of trust where not transferred and/or assigned pursuant to Plaintiff's loan's PSA and/or Nevada Law, that defendants violated Federal TILA and RESPA laws, as well as committed fraud in the inducement and concealment at the initiation of the loan. A judicial declaration is necessary and appropriate at this time under all the

Case 2:14-cv-00567-RCJ-PAL   Document 1-1   Filed 04/14/14   Page 81 of 82

circumstances so that the Plaintiff may determine his rights and duties under the note and *deed of trust*, specifically,

At the very basis of Plaintiff's Complaint, based upon the facts outlined herein and above, Plaintiff has alleged and can demonstrate at trial that Defendants breached their PSA contract and through misrepresentation are about to foreclose on Plaintiff's real property, and that because of the securitization process Defendants and their predecessors in interest failed to properly assign Plaintiff's Mortgage note and Deed of Trust according to state law and the PSA governing the original loan.

## PRAYER

WHEREFORE, plaintiff requests judgment as follows:

1. A temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining Defendants, Defendants' agents, attorneys, and representatives, and all persons acting in concert or participating with them, from selling, attempting to sell, or causing to be sold the property, either under the power of sale in the Deed of Trust or by foreclosure action, currently scheduled for April 30, 2014 at 10:00 AM, or at any other date and/or time;

2. A declaration by the court that sale of the property to enforce the Deed of Trust is improper in that Plaintiff has raised a claim that the Defendant's do not legally hold the Promissory Note or Deed of Trust and/or do not have right to foreclose on the subject property;

3. Costs of suit;

4. Sanction the Defendant GMAC MORTGAGE, LLC in the amount of $10,000.00 for knowingly recording a fraudulent Assignment of Deed of Trust and Slander of Title;

5. Sanction the Defendant THE COOPER CASTLE LAW FIRM, LLP in the amount of $5,000.00 for recording the Notice of Default and Election to Sell, Notice of Trustee's Sale without having the legal authority to do so, and for Slander of Title; and

6. Any further relief that the court may deem just and equitable.

Dated: March 31, 2014

CHRISTOPHER MARTINEZ – Plaintiff, pro per

## VERIFICATION

I am the plaintiff in this action. I have read the foregoing complaint and it is true of my own knowledge, except as to those matters stated on information or belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct.

Date of execution: March 31, 2014

CHRISTOPHER MARTINEZ – Plaintiff, pro per

NOTARY PUBLIC

STEPHANIE CARLISLE
Notary Public, State of Nevada
Appointment No. 13-10327-1
My Appt. Expires Jan 25, 2017

17
COMPLAINT

**EXHIBIT 1-B**

WRIGHT, FINLAY & ZAK, LLP
Dana Jonathon Nitz, Esq.
Nevada Bar No. 0050
R. Samuel Ehlers, Esq.
Nevada Bar No. 9313
5532 South Fort Apache Road, Suite 110
Las Vegas, NV 89148
(702) 475-7964; Fax: (702) 946-1345
sehlers@wrightlegal.net
*Attorneys for Defendants GMAC Mortgage, LLC, Ocwen Loan Servicing, LLC, Mortgage
Electronic Registration Systems, Inc and Governmental National Mortgage Association as
Trustee for Securitized Trust Ginnie Mae REMIC TRUST 2009-70*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| CHRISTOPHER MARTINEZ,<br><br>Plaintiff, pro se<br><br>vs.<br><br>USAA FEDERAL SAVINGS BANK; GOVERNMENTAL NATIONAL MORTGAGE ASSOCIATION AS TRUSTEE FOR SECURITIZED TRUST GINNIE MAE REMIC TRUST 2009-70; OCWEN LOAN SERVICING, LLC; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, AKA "MERS"; GMAC MORTGAGE, LLC; THE COOPER CASTLE LAW FIRM, LLP; AND DOES 1 THROUGH 100, INCLUSIVE,<br><br>Defendant(s) | Case No.:   14-cv-00567-RCJ-PAL<br><br><br>**GMAC MORTGAGE, LLC'S NOTICE OF BANKRUPTCY FILING AND ENTRY OF CONFIRMATION ORDER** |

## GMAC MORTGAGE, LLC'S NOTICE OF
## BANKRUPTCY FILING AND ENTRY OF CONFIRMATION ORDER

Defendant GMAC Mortgage, LLC by and through its undersigned counsel, respectfully

submits this Notice of Bankruptcy and Entry of Confirmation Order, and states as follows:

On May 14, 2012 (the "Petition Date"), Residential Capital, LLC and certain of its direct

and indirect subsidiaries, including GMAC Mortgage, LLC ("GMACM"), and collectively, (the

"Debtors"), filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the

"Bankruptcy Filing") in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004-1408 (the "Bankruptcy Court"). The Debtors' Chapter 11 cases are being jointly administered, indexed at case number 12-12020 (MG).

As a result of the Bankruptcy Filing, on the Petition Date, the protections of the automatic stay codified in section 362(a) of the Bankruptcy Code arose with regard to the Debtors. Section 362(a), among other things, operates as an automatic stay of: (i) "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding" against the Chapter 11 Debtors that was or could have been commenced before the Petition Date (11 U.S.C. § 362(a)(1)); (ii) any act to create, perfect, or enforce against property of the Debtors any lien to the extent that such lien secures a claim that arose prior to the Petition Date (11 U.S.C. § 362(a)(5)); (iii) acts to "collect, assess, or recover a claim" against the Debtors arising prior to the Petition Date (11 U.S.C. § 362(a)(6)); and (iv) the setoff of any debt owing to the Debtors that arose before the Petition Date (11 U.S.C. § 362(a)(7)).

To the extent the prosecution of any claims asserted in the above-referenced proceeding are not enjoined by Section 362(a) of the Bankruptcy Code, Section 362(a)(3) nonetheless stays any act to obtain possession of property of the estate or of property from the estate, or to exercise control over property of the estate. Moreover, Section 362(a)(4) stays any act to create, perfect or enforce any lien against property of the estate. Accordingly, while a party may seek to liquidate a cause of action that is not otherwise subject to the automatic stay of Section 362(a), such party is stayed from attempting to collect from the Debtors' estate on account of such claim, as any collection attempt would be an act to obtain possession of estate property under Section 362(a)(3).

On July 13, 2012, the Bankruptcy Court entered a final supplemental order granting, among other things, the Debtors' motion for limited relief from the automatic stay to permit non-Debtor parties in foreclosure and eviction proceedings, borrower bankruptcy cases and title disputes to continue to assert and prosecute certain defenses, claims and counter-claims [Bankruptcy Docket No. 774][1] (the "Final Supplemental Order"). The relief granted by the Final Supplemental Servicing Order remains in full force and effect and Paragraphs 14, 15, 16 and 17 of the Final Supplemental Order identify the categories of defenses, claims and counter-claims for which the automatic stay has been modified (the "Permitted Claims").

As set forth in the Final Supplemental Order, Permitted Claims are those asserted by a borrower, mortgagor, or lienholder that relate "exclusively to the property that is the subject of the loan owned or serviced by a Debtor for the purposes of defending, unwinding, or otherwise enjoining or precluding any foreclosure, whether in a Judicial State or a Non-Judicial State, or eviction proceeding..." (Exh. A, ¶ 14(a)). Claims for monetary relief of any kind or nature and claims "for relief that if granted, would not terminate or preclude the prosecution and completion of a foreclosure or eviction" are not Permitted Claims. (Id., ¶ 14(b)). Accordingly, the claims asserted in this matter by Plaintiff may proceed, however, Plaintiff is prohibited from collecting or otherwise enforcing in any way any monetary award against the GMACM or any property of the Debtors' bankruptcy estate, should Plaintiff be awarded monetary relief. Plaintiff, in such a situation, be required to file a claim and/or relevant pleading in the Debtors' bankruptcy case pending in the United States Bankruptcy Court for the Southern District of New York, case no. 12-12020, should Plaintiff seek to enforce such monetary award against the GMACM.

On August 29, 2012, the Bankruptcy Court entered an order, among other things, establishing a deadline and procedures for filing of proofs of claim and approving the form and

---

[1] Copies of bankruptcy documents referenced herein may be obtained at no charge at http://www.kccllc.net/rescap

manner of notice thereof [Docket No. 1309] (the "Bar Date Order"). Paragraph 11 of the Bar

Date Order requires that any party asserting a claim against one of the Debtors must file a claim

in the Debtors' bankruptcy cases to preserve the claims against GMACM on or before November

9, 2012, and subsequently extended by the Bankruptcy Court until November 16, 2012 ("Claims

Bar Date"). A party that fails to file a proof of claim is "forever barred, estopped and enjoined

from asserting such claim against the Debtors. . . ." (Bar Date Order, ¶ 11.) Plaintiff did not file

a proof of claim pursuant to the Bar Date Order.

On December 11, 2013, the Bankruptcy Court entered an order, among other things,

confirming the Debtors' Chapter 11 plan [Bankruptcy Docket No. 6065] (the "Confirmation

Order"). A copy of the Chapter 11 plan is annexed to the Confirmation Order as Appendix 1

(the "Plan").

Paragraph 42 of the Confirmation Order and Article IX.K of the Plan, titled "Satisfaction

and Release of Claims and Equity Interests," gives further effect to the Bar Date Order and

provides as follows:

> The rights afforded herein and the treatment of all Claims and Equity Interests
> herein shall be in exchange for and in complete satisfaction and release of all
> Claims of any nature whatsoever, including any interest accrued on such claims
> from and after the Petition Date, against the Debtors, the Liquidating Trust, or any
> of their respective assets or properties arising prior to the Effective Date. Except
> as otherwise expressly specified in the Plan, after the Effective Date, any holder
> of such Claim or Equity Interest shall be precluded from asserting against the
> Debtors, the Liquidating Trust, or any of their respective assets or properties, any
> other or further Claim based upon any document, instrument, act, omission,
> transaction, or other activity or any kind or nature that occurred before the entry
> of the Confirmation Order.

Moreover, Section G of Paragraph 40 of the Confirmation Order and Article IX.I of Plan

contain an "Injunction" provision that, among other things, enjoins all parties from commencing

or continuing any action or other proceeding that is released or satisfied under the Plan and

provides as follows:

> Except as otherwise provided in the Plan or this Order and in accordance with Article IX.E of the Plan, all Entities, including Investors, who have held, hold or may hold Claims, Equity Interests, Causes of Action or liabilities that constitute Released Claims,[2] are permanently enjoined and precluded, from and after the Effective Date of the Plan, from: (a) commencing or continuing in any manner or action or other proceeding of any kind against any Released Party whether directly, derivatively or otherwise, on account of or in connection with or with respect to any Released Claims; (b) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any Released Party on account of or in connection with or with respect to any Released Claims; (c) creating, perfecting or enforcing any lien (other than any charging lien of a trustee under its respective indenture), claim or encumbrance of any kind against any Released Party on account of or in connection with or with respect to any Released Claims; (d) asserting any right to setoff, subrogation or recoupment of any kind against any obligation due from any Released Party on account of or in connection with or with respect to any Released Claims unless such holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in a Proof of Claim or Equity Interest or otherwise that such holder asserts, has or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise; (e) commencing or continuing in any manner or action or other proceeding of any kind against any Released Party on account of or in connection with or with respect to any Released Claims; and (f) seeking relief or collecting judgments on an Investor-related securities claim in a manner that fails to conform with the terms of the judgment reduction provision set forth in the Plan and the Confirmation Order; provided, that nothing contained in the Plan shall be construed to prevent any entity from objecting to claims or defending against claims objections or collection actions whether by asserting a right of setoff or otherwise to the extent permitted by law. Such injunction shall extend to the successors of the Liquidating Trust, if any, and to their respective properties and interests in property. Any person injured by any willful violation of this injunction shall be entitled to recover actual damages, including costs and attorneys' fees and, in appropriate circumstances, may recover punitive damages from the willful violator.

> For the avoidance of doubt, nothing in Article IX.E of the Plan shall expand or limit the application of Article IX.I of the Plan to Claims, Equity Interests, Causes of Action or liabilities against the Debtors or the Liquidating Trust.

---

[2]     A "Released Claim" includes those Claims, Equity Interests, Causes of Action or liabilities that have been discharged, terminated, or *satisfied* pursuant to the terms of the Plan.

Accordingly, with respect to any monetary award Plaintiff may be awarded tin the pending matter, Plaintiff has not filed a claim prior to the Claims Bar Date and is now time-barred from doing so pursuant to the Bar Date Order, and Plaintiff did not file any other relevant pleading in the Debtors' bankruptcy case prior to the Effective Date. As of the Effective Date, any claims not properly asserted in the Bankruptcy Court against GMACM were discharged pursuant to the Plan. Due to the absence of a timely-filed claim, and in accordance with the Bar Date Order, the Plan, and the "Injunction" provision of the Confirmation Order and Plan, the prosecution of any and all monetary claims asserted against GMACM are permanently enjoined, and therefore are void, prohibited and forever barred from being asserted against GMACM.

Respectfully submitted this ___ day of May, 2014.

WRIGHT, FINLAY & ZAK, LLP

_____
R. Samuel Ehlers, Esq.
Nevada Bar No. 9313
5532 South Fort Apache Road, Suite 110
Las Vegas, NV 89148
*Attorneys for Defendants GMAC Mortgage, LLC, Ocwen Loan Servicing, LLC, Mortgage Electronic Registration Systems, Inc and Governmental National Mortgage Association as Trustee for Securitized Trust Ginnie Mae REMIC TRUST 2009-70*

1

## CERTIFICATE OF MAILING

2

3
    I HEREBY CERTIFY that I am an employee of WRIGHT, FINLAY & ZAK, and LLP;

4
that service of the foregoing **GMAC MORTGAGE, LLC'S NOTICE OF BANKRUPTCY**

5
**FILING AND ENTRY OF CONFIRMATION ORDER** was made on the _6_ day of May,

6
2014, to all parties and counsel as identified on the Court-generated Notice of Electronic Filing

7
and by depositing a true copy of same in the United States Mail, at Las Vegas, Nevada,

8
addressed as follows:

9

10
    Christopher Martinez

11
    848 N. Rainbow Blvd., #240
    Las Vegas, NV 89107

12
    *Pro se*

13
    Janet L. Rosales, Esq.

14
    Kolesar and Leatham
    400 S. Rampart Boulevard, Suite 400

15
    Las Vegas, NV 89145
    *Attorney for USAA Federal Savings Bank*

16

17
    Ashley G. Hanks, Esq.
    The Castle Law Group, LLP

18
    5275 South Durango Drive
    Las Vegas, NV 789117

19
    *Attorney for The Cooper Castle Law Firm, LLP*

20

21

22
    _____
    An Employee of WRIGHT, FINLAY & ZAK, LLP

23

24

25

26

27

28

# Exhibit 1

# Exhibit 1

# Exhibit 1

OMITTED

**<u>EXHIBIT 1-C</u>**



# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

CHRISTOPHER MARTINEZ,

        Plaintiff,

    vs.

USAA FEDERAL SAVINGS BANK et al.,

        Defendants.

Case No.: 2:14-cv-00567-RCJ-PAL

**ORDER**

    This case arises out of the foreclosure of the mortgage of non-parties, from whom Plaintiff received a quit claim deed. Pending before the Court are three Motions to Dismiss (ECF Nos. 11, 13, 20). For the reasons given herein, the Court grants the motions.

## I.    FACTS AND PROCEDURAL HISTORY

    Non-parties Daniel and Yuliana Melendes (collectively, "Borrowers") gave lender USAA Federal Savings Bank ("USAA") a promissory note in the amount of $245,760 (the "Note") and, as security therefor, a deed of trust (the "DOT") against real property at 6408 Sea Swallow St., North Las Vegas, NV 89084 (the "Property"). (*See* DOT 1–3, July 28, 2009, ECF No. 13-1). Non-party Michael J. Broker was the trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") was the lender's nominee and the beneficiary of the DOT. (*See id.* 2). MERS later simultaneously assigned USAA's interest in the Note and its own interest in the DOT to GMAC

Mortgage, LLC ("GMAC"). (*See* Assignment, Jan. 4, 2011, ECF No. 13-2). The assignment of

the Note and DOT to a common holder cured the initial split in the mortgage created in the DOT.

*See Edelstein v. Bank of N.Y. Mellon*, 286 P.3d 249, 258–60 (Nev. 2012). GMAC then

substituted Cooper Castle Law Firm, LLP ("CCLF") as trustee. (*See* Substitution, June 24, 2013,

ECF No. 13-3). CCLF then filed a Notice of Default (the "NOD") and accompanying Affidavit

of Authority (the "AA") based upon Borrowers' default since August 2010. (*See* NOD & AA,

Aug. 7, 2013, ECF No. 13-4). The Deputy Director of the State of Nevada Foreclosure

Mediation Program ("FMP") certified that the program did not apply to the Property. (*See*

Certificate, Dec. 26, 2013, ECF No. 13-5). CCLF noticed a trustee's sale for March 26, 2014.

(*See* Notice of Sale, Feb. 25, 2014, ECF No. 13-6).

      After their default but before the NOD issued, Borrowers had given non-party Equity

Housing LLC a quitclaim deed to the Property, (*see* Deed, Feb. 14, 2011, ECF No. 13-7), and

Equity Housing LLC had subsequently given Plaintiff a quitclaim deed to the Property, (*see*

Deed, May 3, 2013, ECF No. 13-10).

      Plaintiff filed the present suit in state court less than a week prior to the scheduled

trustee's sale, and the state court preliminarily enjoined the sale. Defendants removed and have

moved to dismiss.

## II.    LEGAL STANDARDS

      Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of

what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47

(1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action

that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule

1    12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720

2    F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for

3    failure to state a claim, dismissal is appropriate only when the complaint does not give the

4    defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell*

5    *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is

6    sufficient to state a claim, the court will take all material allegations as true and construe them in

7    the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th

8    Cir. 1986).  The court, however, is not required to accept as true allegations that are merely

9    conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden*

10    *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action

11    with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own

12    case making a violation plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79

13    (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff

14    pleads factual content that allows the court to draw the reasonable inference that the defendant is

15    liable for the misconduct alleged.").  In other words, under the modern interpretation of Rule

16    8(a), a plaintiff must not only specify or imply a cognizable legal theory (*Conley* review), but

17    also must plead the facts of his own case so that the court can determine whether the plaintiff has

18    any plausible basis for relief under the legal theory he has specified or implied, assuming the

19    facts are as he alleges (*Twombly-Iqbal* review).

20         "Generally, a district court may not consider any material beyond the pleadings in ruling

21    on a Rule 12(b)(6) motion.  However, material which is properly submitted as part of the

22    complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner*

23    *& Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted).  Similarly, "documents

24

whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

## III.    ANALYSIS

The Court grants the motions. A quitclaim deed is simply a waiver of the grantor's right to claim superior title to the grantee. It does not vest in the grantee any title that the grantor does not possess. It certainly does not affect any third-party liens against the property. Plaintiff makes no allegations plausibly indicating that the foreclosure is not statutorily proper. The Court rejects Plaintiff's show-me-the-note and securitization-type arguments, as it has rejected those arguments in the past. The public records adduced prove Defendants' right to foreclose. Next, the claim for intentional infliction of emotional distress cannot be based on a proper foreclosure, which is not extreme and outrageous, and the TILA and RESPA claims fail because Plaintiff is not the borrower and therefore has no standing to bring those claims. *See Correa v. BAC Home Loans Servicing LP*, 853 F. Supp. 2d 1203 (M.D. Fla. 2012).

///

///

///

1

**CONCLUSION**

2   IT IS HEREBY ORDERED that the Motions to Dismiss (ECF Nos. 11, 13, 20) are

3   GRANTED, and any injunctions in place against the sale of the property are LIFTED.

4   IT IS FURTHER ORDERED that the Clerk shall enter judgment and close the case.

5   IT IS SO ORDERED.

6   Dated this 16th day of June, 2014.

7

8   _____
    ROBERT C. JONES
9   United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**EXHIBIT 2-A**

MARILYN S. LAWRENCE
5362 W.OLYMPIC BLVD #1
LOS ANGELES, CALIFORNIA 90036
TELEPHONE (323) 933-1349
PRO SE for PLAINTIFF
*(323) 933-1349*



FILED

2012 JUL 24 PM 4: 13

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION


MARILYN S. LAWRENCE

CA NO. CV12-1372 CAS (CWX)
HONORABLE: CHRISTINA A. SYNDER




PLAINITIFF

First
AMENDANT COMPLAINT
BREACH, MISREPESENTATION
FRAUD, USURY, DAMAGES
REQUESTING JURY TRIAL

V.


DANIEL SADEK, QUICK LOAN FUNDING
OCWEN LOAN SERVICING LLC: (MERS)
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, LLC dba ETS SERVICE, LLC;
LLEANNA PERTERSON: DOES 1 through 50,
Inclusive:



DEFENDANTS

_____

I.

# INTRODUCTION

PLAINTIFF MARILYN S. LAWRENCE alleges that Defendants Daniel Sedek, dba Quiet Loan Funding and all named employers and agents and their Alleged Successors Ocwen Loan Servicing, Mortgage Electronic Registration Systems, (MERS); Executive trustee Service, LLC dba ETS service, LLC: LLleanna Peterson,; Does 1through 50. Defendants have unlawfully shared in servicing, concealing, and scheming in fraudulent Predatory Mortgage Lending and transactions. Defendants license were suspended in May of 2002 through Jan. 2008 See (Exhibit A) License suspended. Defendants Unlawfully conducted business without legal authority. Unlawfully conducted and engaged in a predatory loan with the Plaintiff in May 2006, unlawfully submitted false and fraudulent claims and forged statements causing irreparable harm to Plaintiff.

### First cause of Action Breach

1. PLAINTIFF MARILYN S. LAWRENCE believes and alleges that the Defendants unlawfully breach their Fiduciary duty to disclose material facts. The PLAINTIFF relied and acted upon the duty and responsibility of the Defendants to perform their own diligence to determine if the borrower is being placed in a loan that is Legal and Properly disclosed and affordable.

2. The Defendants placed the Plaintiff in a loan that the borrower could not afford to repay given plaintiffs' Loan data history and income given to the Defendants. The Defendants Unlawfully Schemed concealed and practiced Predatory lending knowing that the plaintiff would default. The Plaintiff is seeking damages for irreparable lost of home. RELIEF MONEY Demanded In COMPLAINT $750,000.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### SECOND CAUSE OF ACTION FRAUD

3. The Plaintiff believes and alleges that the Defendants willfully and unlawfully induce the PLAINTIFF, with the intent to defraud the plaintiff into a $229,000.00 mortgage transaction that could not meet normal underwriting standards for residential mortgage, with an income of only $1500 a month.

4. The Defendants unlawfully breach their Fiduciary duty to place the Plaintiff in a loan that the plaintiff could not afford to repay by unlawfully inflating the Real property value of the Plaintiff home to $455,000 which the Plaintiff relied upon. Then the Defendants continue in unlawful schemes and fraud by Inflating the Plaintiff Income to $6200 a month To Proceed with a Predatory loan that they knew the Plaintiff could not qualify for and knowing that plaintiff would default. SEE (Exhibit B) Loan App. Falsely Stated. 4 pages.

5. The Plaintiff believes and alleges that the Defendants unlawfully set out to intentionally defraud and misrepresent appraised fair market value of the Plaintiff Home for personal gain. Plaintiff was a Divorcee, A Foster parent of one child and Disable. My income was $950 to $1500 a month. My mortgage payment was only $600 a month. See (Exhibit C) Letter Foster Parent.

6. Plaintiff is informed and believes that the Defendants have unlawfully schemed and intentional defrauded the plaintiff for improper use of plaintiff's identity to extort $20,000.00 in Plaintiff name in addition to excessive escrow fees of over $13,000.00 negligent and /or intentional Fraudulent misrepresentation. See (Exhibit D,& E )Settlement Statement.

7. The Defendants and all employed participants including The Allege Successors (MERS) Ocwen Loan Servicing and Does 1 - 50 have unlawfully participated in this Secularization of concealment of unlawful Schemes to defraud.

## FRAUDULENT MISREPRESENTATION THIRD CAUSE OF ACTION

8.   The Defendants Unlawfully breach their fiduciary duty to disclose facts that would have presumably influence the Plaintiff to act. Failure to do so would give rise to a tort cause of action . The non-disclosure or Silence my be deemed a Misrepresentation.

9.   The Defendants Unlawfully violated their duty to the borrower and such of an act of deception would be considered fraud on the Plaintiff and predatory lending practices.

10.   The Defendants unlawfully Misrepresentation by failing to disclose material facts put Plaintiff in (harms) way. The Defendants unlawful fraudulent practices conceals facts of borrower obligation, and income, and Defendant making a loan that the Plaintiff could not afford to pay back, inflating both the value of Real Property and inflating borrowers income. Please See(Exhibit B) Unlawful Intentional Misrepresentation.

11.   The Unlawful intentional Misrepresentation  of the Defendants is fraud in the inducement, fraud in the execution, Usury and breach.

### FOURTH CAUSE OF ACTION USURY

12. The Defendants have unlawfully  used plaintiff identity  for personal gain. The Plaintiff income could never meet normal underwriting standard To practice predatory lending, and unlawfully outright extort $20,000. Plaintiff only  learn of all the Fraudulent conduct of the Defendant In September 2010 when  I was advised to get a  forensic Audit. See (Exhibit F&G) Underwriting Summary  3 pages and Home Loan Applicant Credit Score 2 pages.

**Conclusion**

The Plaintiff learned of The Defendants Does 1- 50 Unlawful conduct around September 2010. I was advised to get a forensic Audit. I have requested the Defendants to make good of their Unlawful violations mention above with no success. See(Exhibit H) 7 pages. To The Defendants seeking relief. Letter 1 dated October 5,2010 , Feb.24,2011 Mar.4, 2011, May 18, 2011, Aug. 19, 2011 Oct. 18, 2011. Please See Last (Exhibit I & J). Mortgage Note before Predatory and Borrower Summary.

**CLAIMS FOR RELIEF**

(1). Return Property clear Title to the Property and any money made including all payment made plus Interest.

(2). Termination of the mortgage and security interest in the property the subject of the mortgage loan documents created in the transaction.

(3). Relinquishment of the right to retain any proceeds . Clear Credit and any outstanding fees pertaining to this mortgage loan.

(4). Actual damages in an amount to be determined at a trial by JURY including attorney fees IF NOT RESOLVED

MARILYN S. LAWRENCE

SINCERELY

Marilyn Lawrence
7-24-2012

4

# EXHIBITS

# OMITTED

**EXHIBIT 2-B**

SUZANNE M. HANKINS (State Bar No. 157837)
YARON SHAHAM (State Bar No. 217192)
ys@severson.com
SEVERSON & WERSON
A Professional Corporation
19100 Von Karman Ave., Suite 700
Irvine, CA 92612
Telephone:(949) 442-7110
Facsimile: (949) 442-7118

JOHN B. SULLIVAN (State Bar No. 96742)
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone:(415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendants
EXECUTIVE TRUSTEE
SERVICES, LLC dba ETS
SERVICES, LLC and ILEANNA
PETERSON (erroneously sued as
Lleanna Peterson)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARILYN LAWRENCE, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>DANIEL SADEK; QUICK LOAN FUNDING; OCWEN LOAN SERVICING, LLC; (MERS) MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, LLC DBA ETS SERVICES, LLC; LLEANNA PETERSON; DOES 1 THROUGH 50, INCLUSIVE,<br><br>Defendants. | Case No.: 2:12-cv-01372-CAS-CW<br>Hon. Christina A. Snyder<br>Ctrm No. 5 – 2nd Floor<br><br>**DEFENDANT EXECUTIVE TRUSTEE SERVICES, LLC DBA ETS SERVICES, LLC'S NOTICE OF BANKRUPTCY STAY AND SUGGESTION OF AUTOMATIC STAY IN RESPONSE TO PLAINTIFF'S FIRST AMENDED COMPLAINT** |

**TO THE HONORABLE COURT, PLAINTIFF, AND ALL OTHER INTERESTED PARTIES:**

Defendant Executive Trustee Services, LLC dba ETS Services, LLC ("ETS" or "Defendant"), by and through its undersigned counsel, in accordance and consistent with section 362(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), hereby respectfully submits this Notice of Bankruptcy and Suggestion of Automatic Stay, and states as follows:

1.     On May 14, 2012 (the "Petition Date"), Residential Capital, LLC and certain of its direct and indirect subsidiaries (collectively, the "Debtors"), including Defendant, filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004-1408 (the "Bankruptcy Court").

2.     The Debtors' Chapter 11 cases being jointly administered, indexed at case number 12-12020 (MG), and are captioned as follows:

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>RESIDENTIAL CAPITAL, LLC, *et al.*,<br><br>            Debtors. | Chapter 11<br><br>Case No. 12-12020 (MG)<br><br>Jointly Administered |

3.     As a result of the Bankruptcy Filing, on the Petition Date, the protections of the automatic stay codified in section 362(a) of the Bankruptcy Code arose with regard to the Debtors.  Section 362(a), among other things, operates as an automatic stay of:  (i) "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding" against the Chapter 11 Debtors (11 U.S.C. § 362(a)(1)); (ii) acts to "obtain possession of property" of the Debtors' Chapter 11 estates (11 U.S.C. §

24064.1270/2806578.1

362(a)(3)); and (iii) acts to "collect, assess, or recover a claim" against the Debtors arising prior to the Petition Date (11 U.S.C. § 362(a)(6)).

4.   On July 13, 2012, the Bankruptcy Court entered a Final Supplemental Order granting, among other things, the Debtors' Motion for Limited Relief from the automatic stay to permit non-Debtor parties in foreclosure and eviction proceedings, borrower bankruptcy cases and title disputes to continue to assert and prosecute certain defenses, claims and counter-claims (the "Final Supplemental Order"). Paragraphs 14, 15, 16 and 17 of the Final Supplemental Order identify the categories of defenses, claims and counter-claims for which the automatic stay has been modified (the "Permitted Claims"). A copy of the Final Supplemental Order is annexed hereto as **Exhibit A**.

5.   Based upon a review of the current status of the Lawsuit, the claims against Defendant for Breach of Fiduciary Duty, Fraud, Fraudulent Misrepresentation, and Usury are not Permitted Claims because they are outside the scope of the relief covered in the Final Supplemental Order (the "Stayed Claims"). The continued prosecution of the Stayed Claims would violate the automatic stay, 11 U.S.C. § 362(a)(1), which expressly precludes "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title."

6.   Pursuant to paragraph 23 of the Final Supplemental Order, any dispute regarding the extent, application and/or effect of the automatic stay under the Final Supplemental Order, must be heard and determined in the United States Bankruptcy Court for the Southern District of New York, jointly administered under Case No. 12-12020, in accordance with the Case Management Order entered in the Debtors' case [Docket No. 141] and such other and further orders as may be entered by the

1  United States Bankruptcy Court for the Southern District of New York.[1]

2      7.     This notice has been sent, with a cover letter, to Plaintiff Marilyn

3  Lawrence.

4  DATED: July 24, 2013             SEVERSON & WERSON

5                             A Professional Corporation

6

7

8                           By: /s/ Yaron Shaham

9                            YARON SHAHAM

10                          Attorneys for Defendants

11                          EXECUTIVE TRUSTEE SERVICES, LLC dba ETS SERVICES, LLC and

12                          ILEANNA PETERSON (erroneously sued as Lleanna Peterson)

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[1] A copy of the Case Management Order may be obtained at no charge at http://www.kccllc.net/rescap.

24064.1270/2806578.1             - 4 -

Notice of Bankruptcy Stay

# EXHIBIT "A"

OMITTED