USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/25/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
In the Matter of                                               :
                                                               :
Residential Capital, LLC.                                      :
---------------------------------------------------------------X         15-CV-6457 (VEC)
BARRY F. MACK,                                                 :
                                                               :         MEMORANDUM &
                            Appellant,                         :         ORDER
                                                               :
            -against-                                          :
                                                               :
RESCAP BORROWER CLAIMS TRUST,                                  :
                                                               :
                            Appellee.                          :
---------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

  Appellant Barry Mack ("Mack") appeals from two orders of the United States Bankruptcy Court for the Southern District of New York (Martin Glenn, B.J.) (the "Bankruptcy Court"): (1) sustaining the objection of ResCap Borrower Claims Trust ("ResCap") to Mack's proof of claim alleging malicious prosecution, and (2) sustaining ResCap's objection to Mack's proof of claim alleging a violation of Section 6(e) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e).[1]  For the following reasons, the Bankruptcy Court's decisions are AFFIRMED, and the case is DISMISSED.

## BACKGROUND

  This case presents in a microcosm many of the elements of this country's housing collapse. Appellant and his now-deceased wife bought a house in Florida that they could not

---

[1] Mack may not have properly preserved the malicious prosecution claim for appeal. Mack only states that he appeals the Bankruptcy Court's August 4, 2015 order (Bankr. Dkt. 8969). Appellant's Br. 5 (Dkt. 16). While the August 4 order officially expunged the entirety of the Macks' proof of claim, it did not preclude the Macks' claim for malicious prosecution. Only the Bankruptcy Court's July 24, 2014 order (Bankr. Dkt. 7297) addressed the Macks' malicious prosecution claim. Nevertheless, the Court will consider Mack's appeal of the Bankruptcy Court's decision sustaining ResCap's objection to the malicious prosecution claim.

1

reasonably afford. The lender underwrote a mortgage loan that was obviously beyond the financial capability of the borrowers to repay. The mortgage was sold to a different financial institution that hired a lawyer of questionable ethics and ability. That lawyer filed a foreclosure action before conducting any due diligence to ensure that there was a reasonable factual basis for the foreclosure. Beyond that high level summary, the Court assumes the parties are familiar with the facts.

### 1. The Florida State Court Foreclosure Action

On August 20, 2009, GMAC Mortgage LLC ("GMACM"), the servicer of the Macks' mortgage, caused a Florida attorney to initiate a foreclosure action in Florida state court against the Macks, even though the Macks were not in default, on behalf of Deutsche Bank, which at this point owned the mortgage. Bankr. Dkt. 8743 at III(6), (7), (17). GMACM realized that it had made a mistake and notified local counsel on September 2, 2009, to dismiss the foreclosure. *Id.* at III(19). Although the attorney confirmed to GMACM that he had closed the case, he did not actually dismiss the foreclosure action until December 8, 2009. *Id.* at (III)20-21. Mack contends on appeal that Deutsche Bank claimed to be the prevailing party in its voluntary dismissal. Appellant's Br. 7.

In the interim, on September 11, 2009, the Macks counterclaimed against Deutsche Bank, seeking damages for alleged violations of RESPA and slander of title. Bankr. Dkt. 8743 at III(25). Deutsche Bank failed to respond to the counterclaims, as did GMACM, allegedly because their Florida attorney failed to notify them of the counterclaims. Bankr. Dkt. 7297 at 7. On October 21, 2009, the Florida court entered a clerk's default on the counterclaims. *Id.* On May 5, 2011, the Florida court issued a final judgment in favor of the Macks, awarding them approximately $460,000 in damages for the loss in the value of their property and for Mrs.

Mack's emotional pain and suffering. *Id.* According to GMACM and Deutsche Bank, they only learned of the Macks' counterclaims after the final judgment. *Id.* at 8.

On July 13, 2011, Deutsche Bank moved to set aside the final judgment and to vacate the judgment on the RESPA claims on the merits. *Id.* After several hearings, on February 26, 2013, the Florida court issued a final order, confirming judgment as to slander of title, but vacating judgment as to RESPA. *Id.* The Court reduced the damages award to approximately $320,000, *id.*, which the Macks received in March 2013, *id.* at 9. The Florida appellate court affirmed the reduced judgment. *Id.*

### 2. The October 26, 2009 Letter and Mrs. Mack's Health

In addition to telephone contact with GMACM, on October 26, 2009, the Macks wrote to GMACM asking why the foreclosure was proceeding when GMACM had assured them that they were not in default. Bankr. Dkt. 7297 at 5-6. The Macks did not send the letter to the address designated for Qualified Written Requests ("QWR"), which was provided on the monthly mortgage statements sent to borrowers. Bankr. Dkt. 8743 at III(26). Instead, the letter was addressed to: GMAC Mortgage, Attn: Customer Care, P.O. Box 4622, Waterloo, IA 50704-4622. Bankr. Dkt. 8969 at 6. The only difference between the address provided for General Inquiries on borrowers' monthly mortgage statements—the address to which the Macks sent their letter—and the address provided for QWRs on those statements was the P.O. Box. *Id.* at 10. GMACM did not respond to or acknowledge receipt of the October 2009 letter. *Id.* at 6.

Also in October 2009, after sending the letter, Mrs. Mack attempted suicide. Bankr. Dkt. 7297 at 6. The cause of the attempted suicide allegedly was anxiety over the possibility of losing her home in the foreclosure action, *id.*, but she also suffered from chronic depression, Bankr. Dkt. 8743 at (III)49-54. The October 2009 suicide attempt left Mrs. Mack with permanent

3

kidney damage. Bankr. Dkt. 7297 at 6. On October 25, 2013, Mrs. Mack died, in part due to kidney failure. *Id.*

### 3. The Bankruptcy

On May 14, 2012, ResCap filed for bankruptcy. Bankr. Dkt. 6763 at 2. On August 8, 2012, the Macks filed a proof of claim against GMACM for $32,850,000, representing the loss in value to their home, Mrs. Mack's pain and suffering, and punitive damages. *Id.* at 5. ResCap objected to the Macks' claim. *Id.* at 1. On July 24, 2014, the Bankruptcy Court sustained in part and overruled in part ResCap's objection. Bankr. Dkt. 7297. Specifically, the Bankruptcy Court sustained ResCap's objection to the malicious prosecution claim, holding that it was barred by res judicata. *Id.* at 30. The Bankruptcy Court overruled ResCap's objection to the Macks' RESPA claim, however. *Id.* On June 10 and 11, 2015, the Bankruptcy Court conducted a trial on the RESPA claim. Bankr. Dkt. 8969 at 1. On August 4, 2015, the Bankruptcy Court sustained ResCap's objection to the RESPA claim because GMACM had no statutory obligation to respond to the Macks' October 26, 2009 letter because the letter was sent to the wrong address. *Id.* at 19.

## DISCUSSION

District courts have appellate jurisdiction over bankruptcy court rulings under 28 U.S.C. § 158(a)(1). "A district court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*." *Thakur v. S.J.P.B., Inc. (In re Thakur)*, 498 B.R. 410, 418 (S.D.N.Y. 2013) (citing *Overbaugh v. Household Bank, N.A. (In re Overbaugh)*, 559 F.3d 125, 129 (2d Cir. 2009)).

Mack presents two issues on appeal. The first is whether his malicious prosecution claim should have been dismissed on the basis of res judicata. Appellant's Br. 5. The second is

4

whether his RESPA claim should have been dismissed on the ground that the Macks' October 26, 2009 letter was sent to the wrong address. *Id.* at 5-6. The Court AFFIRMS the Bankruptcy Court's ruling on both issues.

### I.     The Malicious Prosecution Claim

The Bankruptcy Court precluded the portion of the Macks' proof of claim alleging malicious prosecution on the ground of res judicata because the claim arose out of the same nucleus of operative facts that gave rise to the Macks' counterclaims in the Florida action. Bankr. Dkt. 7297 at 21. Mack contends on appeal that the malicious prosecution claim is not barred by res judicata because the Macks could not have brought it when they filed their counterclaims in Florida state court. Appellant's Br. 16. Specifically, Mack argues that he and his wife could not have brought the malicious prosecution claim before the Florida appellate court denied Deutsche Bank's appeal in 2013 because malicious prosecution requires that an original proceeding be terminated in the present plaintiff's favor. *Id.* at 16-17. ResCap responds that Mack failed to make this argument in Bankruptcy Court and therefore failed to preserve it for appeal. Appellee's Br. 17 (Dkt. 17). The Court agrees with the Bankruptcy Court and ResCap and affirms the Bankruptcy Court's decision to dismiss the malicious prosecution portion of the Macks' proof of claim.

#### A.  Argument Raised for the First Time on Appeal

On an appeal from a bankruptcy court's ruling, a party cannot raise an argument not made to the bankruptcy court. *In re Lehman Bros. Holdings Inc.,* 435 B.R. 122, 133 (S.D.N.Y. 2010) ("Arguments not properly made below are not preserved for appeal." (citation omitted)), *aff'd sub nom. Suncal Communities I LLC v. Lehman Commercial Paper, Inc.*, 402 F. App'x 634 (2d Cir. 2010); *In re Alper Holdings USA, Inc.*, 398 B.R. 736, 760 (S.D.N.Y. 2008) ("[G]enerally

a district court will not consider arguments not raised in the bankruptcy court below." (citing *In re Chateaugay Corp.*, 165 B.R. 130, 134 (S.D.N.Y. 1994))). A court may, however, exercise its discretion to consider such arguments. *In re Chateaugay Corp.*, 165 B.R. at 134 (citation omitted).

Mack argues that he and his wife could not have brought the malicious prosecution claim during the state court proceeding because the claim was not ripe. Mack insists that he raised this argument before the Bankruptcy Court. Appellant's Reply 5 (Dkt. 19). He cites as evidence his April 29, 2014 Response to ResCap's Objection to his proof of claim, Bankr. Dkt. 6834 at 12-13, and an oral argument that occurred on October 30, 2014. Appellant's Reply 5. In his April 29, 2014 Response to ResCap's Objection to his proof of claim, Mack argued that his claims in the bankruptcy proceeding are different causes of action than the Macks had brought in Florida state court; as to his malicious prosecution claim, Mack simply listed the elements of a malicious prosecution claim. Bankr. Dkt. 6834 at 13. Nowhere did Mack argue that the malicious prosecution claim should not be barred by res judicata because it was not ripe before a bona fide termination in the Macks' favor in 2013. *See* Bankr. Dkt. 6834. When the Court pressed Mack's counsel during oral argument on this appeal for a specific reference to this issue in the transcript of the October 30, 2014 argument before the Bankruptcy Court, he conceded that this argument was not made during any of the oral arguments before the Bankruptcy Court.

In short, Mack waived this argument for appeal because it was not raised before the Bankruptcy Court. Even if he had not waived it, the argument is without merit.

### B. Bona Fide Termination in Favor of Defendant in Original Proceeding

The preclusive effect of a state court action in a subsequent federal action is governed by the law of the state in which the state court action occurred. *In re Eurocrafters, Ltd.*, 183 F.

6

App'x 70, 71 (2d Cir. 2006) (citations omitted). Because the foreclosure action occurred in Florida, Florida law applies to determine whether the Macks' malicious prosecution claim was properly precluded in the federal bankruptcy proceeding. Under Florida law, res judicata prohibits claims that were raised and claims that could have been raised in a prior action. *Topps v. State*, 865 So. 2d 1253, 1255 (Fla. 2004). "The doctrine of res judicata applies when four identities are present: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the quality of the persons for or against whom the claim is made." *Id.* Mack argues on appeal only that the malicious prosecution claim could not have been raised in the prior Florida action.

In Florida, a claim for malicious prosecution must plead the following elements: "(1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damages conforming to legal standards resulting to plaintiff." *Johnson Law Grp. v. Elimadebt USA, LLC*, No. 09-CV-81331, 2010 WL 2035284, at *4 (S.D. Fla. May 24, 2010) (citations omitted).

Only the third element—a bona fine termination of the original proceeding in favor of the Macks—is at issue here. A bona fide termination in favor of a party requires that the termination "reflect on the merits of the case; technical or procedural victories are not sufficient." *Id.* at *6 (citing *Union Oil of California, Amsco Div. v. Watson*, 468 So. 2d 349, 353 (Fla. Dist. Ct. App. 1985)). Bona fide "means that the termination was not bargained for or obtained by the accused upon a promise of payment or restitution." *Union Oil*, 468 So. 2d at 353 n.3. Moreover, "[a] favorable termination exists where a dismissal is of such a nature as to indicate the innocence of

the accused." *Id.* at 353 (citations omitted). A voluntary dismissal by the plaintiff can qualify as a bona fide termination in favor of the defendant. *Johnson Law Grp.*, 2010 WL 2035284, at *6 (citing *Union Oil*, 468 So. 2d at 353). To determine whether a voluntary dismissal "tends to indicate innocence on the part of the defendant one must look to whether the manner of termination reflects on the merits of the case." *Union Oil*, 468 S. 2d at 354 (citations omitted). If "the record contains evidence indicating a lack of probable cause," a voluntary dismissal may reflect on the merits. *Id.* (citations omitted); *see also Doss v. Bank of Am., N.A.*, 857 So. 2d 991, 995, 997 (Fla. Dist. Ct. App. 2003). In addition, a voluntary dismissal reflects on the merits if "the allegations in the underlying complaint are demonstrated to be false and there is evidence the plaintiff knew they were false." *Cohen v. Corwin*, 980 So. 2d 1153, 1156 (Fla. Dist. Ct. App. 2008).

      Deutsche Bank's voluntary dismissal of the foreclosure action constituted a bona fide termination in favor of the Macks. The dismissal was based on the merits, not on technical or procedural grounds. Deutsche Bank voluntarily dismissed the foreclosure action because it knew it was mistaken in pursuing foreclosure because the Macks were not in default. Bankr. Dkt. 8743 at III(19-21). The Macks did not bargain for or pay Deutsche Bank in a settlement in order to persuade Deutsche Bank to dismiss the foreclosure action voluntarily. To the contrary, the record is clear that the allegations underlying the foreclosure action were false and that Deutsche Bank and GMACM knew they were false while the foreclosure action was ongoing. If the Macks wanted to bring a malicious prosecution claim, they could have amended their counterclaims in late 2009, immediately after Deutsche Bank voluntarily dismissed the foreclosure action.

8

Mack argues on appeal that because Deutsche Bank maintained that it was the prevailing party in its voluntary dismissal, there was no bona fide termination in favor of the Macks until there was a judicial determination in favor of the Macks on their counterclaims. Appellant's Br. 17. This is incorrect. Whether a voluntary dismissal qualifies as a bona fide termination in favor of the defendant "depends on the total circumstances surrounding the [voluntary dismissal]." *Doss,* 857 So. 2d at 995 (citing *Union Oil*, 468 So.2d at 355). Although Deutsche Bank may have stated that it was the prevailing party, the circumstances surrounding the dismissal make clear that Deutsche Bank was not the prevailing party. Most critically, no foreclosure took place and no money passed from the Macks to Deutsche Bank, clearly indicating that Deutsche Bank did not prevail. Any court faced with these facts would have "conclude[d] with confidence, that the termination of the first suit [voluntary dismissal of a foreclosure action] was not only favorable to the defendant in that suit, but also that it demonstrated the first suit's lack of merit," *Doss*, 857 So. 2d at 994. In short, the Macks did not need to wait for a judicial determination in favor of their counterclaims to bring a malicious prosecution claim; the voluntary dismissal itself was a bona fide termination in favor of the Macks.[2] Consequently, the Macks could have brought the malicious prosecution claim along with their other counterclaims in Florida state court as of December 10, 2009. The Bankruptcy Court therefore correctly determined that res judicata barred the Macks' proof of claim alleging malicious prosecution.

---

[2] Mack argues on appeal that the malicious prosecution claim did not become ripe until the appeal in the Florida action was resolved in the Macks' favor after February 26, 2013. Appellant's Br. 17. It is true that a malicious prosecution claim cannot be filed until the appeal in the original action is complete. *Cazares v. Church of Scientology of California, Inc.*, 444 So. 2d 442, 447 (Fla. Dist. Ct. App. 1983). But there was no appeal of Deutsche Bank's foreclosure action; the appeal related only to the Macks' counterclaims. Thus, the original action was complete at the time Deutsche Bank voluntarily dismissed it. At that time, the Macks could have amended their counterclaims to include a malicious prosecution claim. *See Olson v. Johnson*, 961 So. 2d 356, 359 (Fla. Dist. Ct. App. 2007) (The right to initiate a malicious prosecution suit "arises upon termination of the prosecution favorably to the plaintiff." (citations omitted)).

9

**II.    The QWR Claim under RESPA**

The Bankruptcy Court sustained ResCap's objection to the portion of the Macks' proof of claim alleging violation of Section 6(e) of RESPA, 12 U.S.C. § 2605(e), on the ground that a QWR must be sent to the address designated by the servicer for QWRs in order to trigger liability for failure to respond, and the Macks sent their QWR to a different address.  Bankr. Dkt. 8969 at 19.  On appeal, Mack contends that he and his wife should not have been required to send their letter to the QWR address in order for Section 6(e) liability to arise because: (1) the Macks did not know what a QWR was; (2) there was no evidence that GMACM had established a separate physical office to handle QWRs; and (3) Section 6(e) should be liberally construed in favor of consumers and strictly construed against mortgage servicers.  Appellant's Br. 19-22.  ResCap argues that Mack waived this argument by failing to raise it before the Bankruptcy Court and that, on the merits, Mack is wrong.  Appellee's Br. 17-18.  The Court finds that Mack sufficiently raised his RESPA argument before the Bankruptcy Court, *see* Bankr. Dkt. 8884 at 17-21, and that the Bankruptcy Court correctly sustained ResCap's objection.[3]

A QWR is written correspondence "that identifies a borrower's account and 'includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.'"  *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 181 (2d Cir. 2014) (quoting 12 U.S.C. § 2605(e)(1)(B)(ii)).  RESPA imposes time limits within which mortgage servicers must respond to QWRs.  *Id.*  A RESPA-implementing regulation allows servicers to establish a specific address for QWRs.  *Id.* (citing 24 C.F.R. § 3500.21(e)(1) ("By notice either included in the

---

[3]   ResCap argues four additional grounds upon which to affirm the Bankruptcy Court's decision, including grounds that would require this Court to hold that the Bankruptcy Court erred in other rulings.  The Court will not consider those arguments because they should have been raised in a cross-appeal and because the Court finds sufficient basis to affirm the Bankruptcy Court's decision without looking to additional grounds.

Notice of Transfer or separately delivered by first-class mail, postage prepaid, a servicer may establish a separate and exclusive office and address for the receipt and handling of qualified written requests.")).[4] The final rulemaking notice for another implementing regulation states that "if a servicer establishes a designated QWR address, 'then the borrower must deliver its request to that office in order for the inquiry to be a qualified written request.'" *Id.* (quoting Real Estate Settlement Procedures Act, Section 6, Transfer of Servicing of Mortgage Loans (Regulation X), 59 Fed. Reg. 65,442, 65,446 (Dec. 19, 1994) (internal quotation marks omitted)). So long as the servicer gives proper notice to the borrower of the specific QWR address, if a borrower sends a written request to a different address, the servicer's duties under RESPA are not triggered, and the written request is not a QWR. *Id.* (citing *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1148-49 (10th Cir. 2013)). Most courts that have considered the issue have held that if there is an address designated for QWRs, the correspondence must be sent to that designated address in order for RESPA duties to apply to the servicer. *Moody v. CitiMortgage, Inc.*, 32 F. Supp. 3d 869, 873 (W.D. Mich. 2014) (collecting cases).

There is no dispute that the Macks did not send their October 26, 2009 letter to the correct address. Bankr. Dkt. 8743 at III(26). Thus, the Court agrees with the Bankruptcy Court that GMACM had no duty to respond and no liability for failing to respond. The Court is not aware of any case law establishing an exception for borrowers who do not know what a QWR is. Such an exception would place an unrealistic burden on servicers: a servicer would be liable for failing to respond regardless of the address to which the borrower sends the QWR and even

---

[4] Title X of the Dodd-Frank Wall Street Reform and Consumer Protection Act transferred administration of RESPA from the Department of Housing and Urban Development to the Consumer Financial Protection Bureau, making this regulation no longer operative as of June 16, 2014. Removal of Regulations Transferred to the Consumer Financial Protection Bureau, 79 FR 34224-01.

though the servicer established a specific QWR handling office with procedures designed to ensure compliance. While the rule that exists provides some limited protection to servicers, RESPA also protects borrowers by requiring them to send QWRs to the designated address *only if* the servicer provides them with sufficient notice of that address. *See Moody*, 32 F. Supp. 3d at 873 (collecting cases); *see, e.g., Hittle v. Residential Funding Corp.*, No. 2:13-CV-353, 2014 WL 3845802, at *6 (S.D. Ohio Aug. 5, 2014).[5]

In addition, the Court is not aware of any case law indicating that the Court should construe Section 6(e) liberally in favor of borrowers and strictly against servicers to the extent that the Court should impose liability on a servicer for failing to respond to a QWR sent to the wrong address. Borrowers are only excused from sending a QWR to the correct address if the servicer failed properly to notify the borrower of the QWR specific address. *See Moody*, 32 F. Supp. 3d at 873 (collecting cases); *see, e.g., Hittle*, 2014 WL 3845802, at *6. After a two-day trial, the Bankruptcy Court determined that GMACM adequately notified the Macks of the address to which QWRs must be sent, Bankr. Dkt. 8969 at 18, and Mack has not argued that fact finding was erroneous.

Finally, there is nothing in Section 6(e), its implementing regulations, or case law of which the Court is aware that requires a servicer to establish a separate *physical* office in order to benefit from the rule requiring QWRs to be sent to the address designated by the servicer. The most logical construction of the term "separate and exclusive office" as used in the regulation is not that the office must be separate physically but that the office must be separate organizationally. The importance of having a separate office is to ensure that there are specific

---

[5] GMACM defined QWR in its monthly mortgage statements sent to borrowers, Bankr. Dkt. 8969 at 10, weakening the argument that the Macks did not send their letter to the correct address because they did not know what a QWR was.

people responsible for responding to QWRs in compliance with the deadlines set by law. A separate physical office—whether located in the same building, in another city, or in another state—is irrelevant to that purpose.

At trial before the Bankruptcy Court, ResCap made a sufficient showing that there was a team—"the Voice of the Customer"—dedicated to handling QWRs. Bankr. Dkt. 8757 at 28:4-10, 29:7-9.[6] Thus, GMACM had a separate organizational entity with a separate address to process QWRs, GMACM properly notified the Macks of that address, and the Macks did not send a letter to that address.

Accordingly, the Court affirms the Bankruptcy Court's decision to expunge the Macks' proof of claim alleging violation of RESPA Section 6(e).[7]

---

[6] The testimony at trial was as follows:

> Q: Mr. Cunningham, was there a particular department or group that dealt with RESPA inquir[i]es, QWRs?
>
> A: Yes.
>
> Q: What was the name of that group?
>
> A: It was called the Voice of the Customer in Customer Care.
>
> Q: That was their job?
>
> A: Yes.
>
> …
>
> Q: But to be clear, the subgroup that dealt with QWRs, that was their job?
>
> A: Correct.

Bankr. Dkt. 8757 at 28:4-10, 29:7-9.

[7] Even if the Mack's letter had complied with Section 6(e), the Court agrees with ResCap that Mack has failed to link GMACM's failure to respond to the letter to his damages. Mrs. Mack attempted suicide a few days after the letter was sent, well before GMACM would have had a duty to respond to the QWR.

13

## CONCLUSION

For the foregoing reasons, the order of the Bankruptcy Court is AFFIRMED. The Clerk of Court is respectfully directed to terminate the case.

**SO ORDERED.**

**Date: January 25, 2016**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**