UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 12-12020-mg

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


RESIDENTIAL CAPITAL, LLC, et al.,


        Debtors.


- - - - - - - - - - - - - - - - - - - -x


        United States Bankruptcy Court

        One Bowling Green

        New York, New York


        February 4, 2016

        2:07 PM


B E F O R E:

HON. MARTIN GLENN

U.S. BANKRUPTCY JUDGE

Telephonic Status Conference Regarding Discovery for the Rode Claims Objection Matter.

Transcribed by: Penina Wolicki

eScribers, LLC

700 West 192nd Street, Suite #607

New York, NY 10040

(973)406-2250

operations@escribers.net

```
 1
 2  A P P E A R A N C E S :   (TELEPHONICALLY)
 3  MORRISON & FOERSTER LLP
 4       Attorneys for The ResCap Borrower Claims Trust
 5       250 West 55th Street
 6       New York, NY 10019
 7
 8  BY:  JORDAN A. WISHNEW, ESQ.
 9       ERICA J. RICHARDS, ESQ.
10
11
12  ACCESS LEGAL SERVICES
13       Attorneys for Richard Rode
14       310 Fourth Avenue South
15       Suite 5010
16       Minneapolis, MN 55415
17
18  BY:  WENDY ALISON NORA, ESQ.
19
20
21  ALSO PRESENT:
22       Richard Rode, Claimant
23
24
25
```

1                    P R O C E E D I N G S
2            THE COURT:  All right, this is Judge Glenn.  We're on
3   the record in Residential Capital, number 12-12020.  This is
4   the case management conference involving the contested matter
5   of the claims of Richard D. Rode.
6            Can I have the appearances, please?
7            MS. RICHARDS:  Good afternoon, Your Honor --
8            MS. NORA:  This is -- oh, go ahead.  Go ahead, sorry.
9            MS. RICHARDS:  Erica Richards and Jordan Wishnew of
10  Morrison & Foerster appearing on behalf of the ResCap Borrower
11  Claims Trust.
12           THE COURT:  Thank you.
13           MS. NORA:  Wendy Alison --
14           MR. RODE:  Richard Rode -- go ahead.
15           THE COURT:  Good afternoon, Mr. Rode.
16           MR. RODE:  Good afternoon, Judge.
17           MS. NORA:  And Wendy Alison Nora for the claimant.
18           THE COURT:  Good afternoon, Ms. Nora.
19           Okay.  This is the scheduled case management
20  conference.  Under the case management and scheduling order
21  entered on November 23, 2015, all fact discovery shall be
22  completed by February 16th, 2016.  So we're almost there.
23  There is time built into the schedule for expert witness
24  testimony, if that's necessary.  That's supposed to be
25  completed by April 1st.

1              And I scheduled the conference for now to try and see
2     where things stand.  Ms. Nora recently began representing Mr.
3     Rode.  So let me ask Ms. Richards or Mr. Wishnew, whoever's
4     going to speak first, from the standpoint of the Trust, what
5     remains to be done?
6              MS. RICHARDS:  Well, Your Honor, so I'm happy to
7     report that each side has served discovery requests on the
8     other.  Mr. Rode through his counsel has provided responses.
9     The Borrower Trust's responses are not yet due.  They're due
10    right at the deadline for the close of fact discovery.  So we
11    have not yet provided our responses, but we're working on
12    preparing those.
13             We've also had, as required under the case management
14    order, a meet-and-confer with Ms. Nora, and have agreed on a
15    schedule for expert discovery going forward.
16             So we're proceeding apace.  We do have one open
17    discovery issue that we'd like to raise with the Court.
18             THE COURT:  Okay.  Well, so under the Court's --
19    excuse me -- under the Court's memorandum opinion and order
20    sustaining in part and overruling in part the ResCap Borrower
21    Claims Trust's objection to claims number 5610 and 5612 filed
22    by Richard D. Rode, that opinion was issued on September 2,
23    2015, the only surviving claim in the case is the breach of
24    contract claim with respect to the so-called "October
25    agreement", the October 7, 2009 agreement.

1              Mr. Rode contends that there is a binding agreement.
2    The Trust contended there was not.  I addressed this and
3    obviously many other issues in the opinion.  So that's the only
4    claim that survives in the case.
5              On what issues -- does the Trust intend to call an
6    expert, Ms. Richards?
7              MS. RICHARDS:  We do not, Your Honor.
8              THE COURT:  All right.  Ms. Nora, where do things
9    stand from the standpoint of Mr. Rode?
10             MS. NORA:  Well, Your Honor, we are in the process of
11   obtaining expert reports out.  Before the close of fact
12   discovery, I'm going to be amending the interrogatories,
13   because the tax professional that I had hoped to use to
14   evaluate and explain the consequences of a 1099(c) advises me
15   that he's unlikely to be able to meet the deadline of this
16   Court because of the intensity of his practice in March, where
17   he does a lot returns for corporations.  So I'm going to be
18   substituting for Mr. Roland Morrison (ph.), and I'm working on
19   that, to find someone who is more available during that
20   critical time.  And that will be in an amendment to the
21   responses to interrogatories, where are asked to name our
22   experts.
23             So the rest of our -- our other expert is Jeffery
24   Usick (ph.) counsel for Mr. Rode, to the extent that Mr. Rode
25   incurred attorneys' fees due to what we contend is the breach

1  of the loan modification agreement, as consequential damages,
2  Your Honor.
3           THE COURT:  Okay.  That doesn't sound -- that doesn't
4  sound like expert testimony.  That sounded like fact testimony.
5  What's the expert opinion Mr. Usick's going to give?
6           MS. NORA:  The reasonableness of attorneys' fees for
7  that type of case.  In many cases the testimony is directed
8  toward knowledge of the prevailing rates for services for
9  attorneys in similar matters.
10          THE COURT:  Okay, I understand what.  And so you're
11 looking for a tax expert.  And just generally, what's the
12 subject matter they're going to testify about?
13          MS. NORA:  Well, a 1099(c) was provided to Mr. Rode
14 where it appears that debt forgiveness was issued with respect
15 to the disputed funds in the escrow account, which led to what
16 we contend is the unilateral breach of the HAMP, because GMAC
17 Mortgage did not want to refund funds that were in the escrow
18 account or otherwise credit them.
19          It's Mr. Rode's position that those were his funds.
20 They should have been applied to the loan account or returned
21 to him.  And the 1099(c) addresses some debt forgiveness which
22 was actually -- forgiveness of payment of his own funds.  So we
23 think it's inverted.
24          THE COURT:  Okay.  Just bear with me a second again.
25          MS. NORA:  And I am hoping that Mr. Morrison can free

1  himself up, Your Honor.  He'd certainly be able to come to New
2  York in June, because that's after the critical time frame for
3  both corporate partnership and individual returns.  The
4  individual returns are due on the 15th of April; corporate and
5  partnership filings are due on the 15th of May, which -- excuse
6  me, March, which falls right in the deadlines set by the Court.
7           THE COURT:  Well, let me ask this.  Has your tax
8  expert -- did he do preliminary work on this already?
9           MS. NORA:  I've discussed it with him, but he has not
10 yet analyzed the information that I can provide him with.  I
11 was still contemplating whether we would be using him or
12 another person --
13          THE COURT:  Okay.
14          MS. NORA:  -- capable of assessing and evaluating what
15 that 1099(c) purported to do.  But it looks to me like it was
16 forgiving debt that wasn't owed to GMAC Mortgage; it was owed
17 to Mr. Rode.
18          THE COURT:  Okay.  While I try to run a -- keep a
19 tight schedule, if the issue is a tax accountant, because the
20 deadline currently in the order is April 1st -- if I moved it
21 to May 1st, would that solve your problem, Your Honor?
22          MS. NORA:  Oh, Your Honor, it would.  And I do want to
23 work with Mr. Morrison.  I've worked with him for several
24 decades now.  I myself have a tax practice as an attorney, and
25 I have a great deal of confidence and comfort in dealing with

1    Mr. Morrison's analyses of things.  We don't always agree.
2            And right now, what he's concerned about is looking at
3    protocols for mortgage servicers, because he will only make his
4    own opinion based on the accounting that is used by mortgage
5    servicers.
6            THE COURT:  Ms. Richards, do you have a problem with
7    me moving the date?  Because it's not -- I don't believe a
8    trial date's been set in this yet.  And I certainly want to
9    keep this on track, but do you have an objection to me moving
10   the deadline for expert discovery to May 1?
11           MS. RICHARDS:  No, Your Honor, we don't.
12           THE COURT:  Does that help your problem, Ms. Nora?
13           MS. NORA:  I'm sure that it will, Your Honor.
14           THE COURT:  All right.  So I'm not going to enter
15   an -- unless there's some more that we do here, I'm not going
16   to enter a separate written order.  I'm so ordering the
17   transcript that in the November 23rd, 2015 case management
18   scheduling order in paragraph 3(a) where it currently provides
19   that all expert discovery shall be completed no later than
20   April 1, 2016, on the record, I'm extending that deadline to
21   May 1, 2016.  Okay.
22           All right, so maybe that will help you with your
23   problem on the tax expert.  Okay.
24           MS. NORA:  Thank you, Your Honor.
25           THE COURT:  Ms. Richards, is there another -- is there

12-12020-mg    Doc 9635    Filed 02/05/16    Entered 02/18/16 15:43:28    Main Document
     Pg 10 of 20
                        RESIDENTIAL CAPITAL, LLC, ET AL.                          10

1  a discovery issue that you wanted to raise?

2          MS. RICHARDS:  There is, Your Honor.

3          THE COURT:  Go ahead.

4          MS. RICHARDS:  So briefly, the Borrower Trust's

5  objections to Mr. Rode's breach of contract claims which was

6  filed at docket number 8452, raised a number of affirmative

7  defenses to that claim.  And among other things, we argue that

8  Mr. Rode had independently breached the loan modification

9  agreement by failing to make payments under it.  That argument

10 is found at paragraph 75 of the Borrower objection.

11         And the Court's memorandum opinion, which as you noted

12 was filed at docket number 9094, acknowledged the Trust's

13 various affirmative defenses, including that one.  And you

14 overruled the objection noting, among other things, that based

15 on the record before you, it was unclear why Mr. Rode did not

16 make the payments required under the loan modification

17 agreement.

18         THE COURT:  Right.  There was an issue that his

19 attorney had been in communication with GMAC or -- I don't know

20 whether GMAC or Homecomings -- and he was, as I understood it

21 from prior arguments, he was ready, willing, and able to make

22 the payment, but he wanted to know that Homecomings was going

23 to live by the agreement.

24         MS. RICHARDS:  That's right, Your Honor.  But there

25 was no evidence that the debtors actually told Mr. Rode that

                    eScribers, LLC | (973) 406-2250
                operations@escribers.net | www.escribers.net

1  they were not performing under the loan modification agreement
2  before he -- before the first payment became due.  So --
3          THE COURT:  So what's the discovery you want to take?
4          MS. RICHARDS:  So we'd like discovery on documents
5  reflecting his ability to make the loan payments at the time
6  the loan modification agreement was signed up:  bank
7  statements, what his expenses and income were at the time.  In
8  other words, did he not make the payments because he was unable
9  to --
10         THE COURT:  Sure.
11         MS. RICHARDS:  -- or did he not make the payments
12 because he believed GMAC Mortgage was already in breach.  We
13 requested --
14         THE COURT:  So the payment was due on November 1st,
15 2009, as I see from looking at the opinion.  So essentially, I
16 mean, it would seem to me that bank statements or things of
17 that nature maybe for September, October, and November 2009
18 would be the relevant time period?
19         MS. RICHARDS:  I would say even afterwards, Your
20 Honor, just because perhaps he could have submitted payment but
21 a little bit late, and it wouldn't have --
22         THE COURT:  Well, would you agree, then, September
23 through December 2009 is the relevant time period?
24         MS. RICHARDS:  That sounds reasonable to me, Your
25 Honor.

1           THE COURT:  All right.  Ms. Nora?  I mean, I
2   certainly -- I reread the opinion earlier today, so I'm aware
3   of the affirmative defenses that Ms. Richards refers to and how
4   I dealt with it in the opinion as disputed issues of fact.  I
5   mean, I think it's as fair issue for the Trust to take
6   discovery regarding Mr. Rode's financial condition in September
7   through December 2009.  Do you object to that?
8           MS. NORA:  Well, Your Honor, this was previously in
9   the County of Harris in Texas and then removed to the Central
10  District Court in the Southern District of Texas for the
11  Houston Division.  Counsel there successfully opposed this type
12  of discovery, because the issue is that Mr. Rode did not breach
13  this agreement.  The modification agreement does not go into
14  effect until it is returned to Mr. Rode, and it was not
15  returned.
16          THE COURT:  That's exactly --
17          MS. NORA:  So our --
18          THE COURT:  -- Ms. Nora, that's exactly contrary to
19  what I wrote in the opinion.  The Trust made the argument there
20  was no agreement, because they hadn't returned the agreement to
21  Mr. Rode.  And I specifically stated in the opinion that that
22  was not stated as a requirement.  The letter to Mr. Rode
23  attaching the agreement said he had to sign and return it.  It
24  didn't say anything -- maybe I'm mistaken about this -- but
25  that's certainly what I wrote.

1          Reading at page 27:  "The amended opinion attaches a
2    letter from GMAC-M dated September 24, 2009 acknowledging
3    receipt of Rode's contribution payment in connection with the
4    October agreement.  Additionally, the Trust acknowledges that
5    the debtors received an executed version of the October
6    agreement on October 5, 2009.  Moreover" -- then I go into that
7    Homecomings countersigned it but didn't return it.
8          And I believe the argument that I found persuasive
9    from Mr. Rode when he didn't have counsel was that he didn't
10   have to return it -- they didn't have to return it to him.  He
11   had to sign it and return it; and he did that.
12         So I don't care what the Texas court argued.  I know
13   what was argued before me and I know what I ruled.  So
14   discovery with respect to Mr. Rode's financial condition
15   between September 2009 and December 31, 2009 is relevant, and
16   that discovery should be provided.
17         Now, I have to say, Ms. Richards, it may be that even
18   if Mr. Rode didn't have the money in his bank account that if
19   there was an agreement, he would have found a way to pay it.
20   So that may well be his testimony.  I'm not saying that you're
21   not entitled to discover whether he had the funds presently in
22   his bank accounts or what other resources he had.  But that's
23   not necessarily the full answer to the question.
24         But I agree that it's relevant to the subject -- to
25   the claims and defenses, and you're entitled to that discovery.

1              Are there other issues, Ms. Richards?

2              MS. RICHARDS:  Not at this time, Your Honor.

3              THE COURT:  Okay.  Ms. Nora?  Do you understand my

4  ruling?  I'm not going to enter a separate written order.  Do

5  you understand my ruling on it?

6              MS. NORA:  Yes, I do, Your Honor.  And we will produce

7  those --

8              THE COURT:  That's fine.

9              MS. NORA:  -- records to the extent that they are in

10 Mr. Rode's possession as required by the rules of discovery.

11             THE COURT:  Okay.  If -- I've got to tell you, Ms.

12 Nora, if your response is well, he doesn't have those bank

13 statements from then, we're not producing them, the Trust may

14 argue from whatever inferences it wants.  But you'll do you

15 what you want.  What can I tell you?

16             MS. NORA:  Well, Your Honor, the banks tend to destroy

17 records after six years.  So we will do our very best even to

18 inquire of the banks if they have copies if Mr. Rode does not.

19             THE COURT:  Okay, fair enough.  That's all I can ask.

20             Ms. Richards, did you take Mr. Rode's deposition

21 already?

22             MS. RICHARDS:  We have not deposed Mr. Rode.

23             THE COURT:  Are you going to?

24             MS. RICHARDS:  It's under discussion, but we think

25 it's unlikely that we will.

1       THE COURT:  Okay.  Fair enough.

2       Ms. Nora, other issues you want to raise?

3       MS. NORA:  No Your Honor.

4       THE COURT:  Okay.  Let's see.  Bear with me a second,
5  okay?

6       MS. NORA:  Well, except that we do challenge the
7  identity of the objector here.  That has been separately filed
8  with an adversary proceeding.

9       THE COURT:  I'll deal with that when the appropriate
10 time comes, Ms. Nora.

11      MS. NORA:  Thank you, Your Honor.

12      THE COURT:  All right, just bear with me a second,
13 here.

14    (Pause)

15      THE COURT:  All right.  I'm going to schedule a case
16 management and scheduling conference for 2 p.m. Thursday, May
17 5th, 2016.  So it's after the close of expert discovery.  And
18 at that time, I expect to set a deadline for submitting a joint
19 pre-trial conference order and also to schedule trial.  So each
20 of you should be prepared to tell me on May 5th how many
21 witnesses each of you anticipate calling.

22      As I think both counsel know, I ordinarily have the
23 direct testimony in declaration or affidavit form with the
24 declarants in court for cross-examination.  With respect to
25 experts, you should discuss it.  I mean, what I've often done

1   is assuming that the expert report is properly prepared, is to
2   admit the expert report as the direct testimony of the expert,
3   with the expert in court for cross-examination.  I'm not
4   directing that now.  I'm just telling you that's what I've
5   often done.  You ought to discuss that.
6           So all of that, we ought to discuss at the next case
7   management conference on May 4th.  And I will -- May 5th,
8   excuse me -- May 5th, and I will probably require a joint pre-
9   trial order within a couple of weeks after that and schedule a
10  trial for shortly after the joint pre-trial order is due.
11          So I think you all ought to anticipate and look at
12  your calendars for a trial in late May or early June.  But I'm
13  not setting dates now.  But just I'll ask you for availability.
14          Mr. Rode, you're working now?
15          MR. RODE:  I'm sorry?
16          THE COURT:  Are you working now?
17          MR. RODE:  Yes.
18          THE COURT:  I want to be mindful of what Mr. Rode's
19  schedule is so as to inconvenience him in the least way
20  possible.  But you ought to be thinking about -- because you'll
21  have to testify in the courtroom.  And so you'll need to think
22  about what your availability is in late May or early June.
23  Okay?
24          MR. RODE:  Thank you, Your Honor.
25          THE COURT:  Okay.

1    MS. NORA:  This is Wendy Alison Nora, Your Honor.  Mr.
2 Rode has always been self-employed in construction.
3    THE COURT:  Okay.
4    MS. NORA:  He has his own company.  So he will give
5 the trial date the priority that an owner of a company has the
6 ability to do.  So --
7    THE COURT:  Ms. --
8    MS. NORA:  -- he will be covered for.
9    THE COURT:  Ms. Nora, Mr. Rode has appeared multiple
10 times here, and I always enjoyed having him, because he was
11 very respectful and argued clearly.  So I'll be happy to see
12 you again, Mr. Rode.  So I'm just -- let's work -- I try to
13 work with people's schedules when I can.  Okay?
14    So we'll talk about all of that on May 5th.  If there
15 are any issue -- if there are discovery issues or other issue
16 that arise before then, don't wait until May 5th to raise them.
17    MS. NORA:  Sure.
18    THE COURT:  If you can't -- you need to try and
19 resolve them among yourselves.  If you can't, you'll arrange a
20 telephone call and we'll try and deal with them.  Okay?
21    MR. RODE:  Yes, Your Honor.
22    MS. NORA:  Yes.  Your Honor, this is Wendy Alison Nora
23 again.  And I would like to indicate that we may be expanding
24 our expert witness list within the time remaining for responses
25 to discovery.

1          THE COURT:  Okay.  I'm not dealing with that today.
2          MS. NORA:  Thank you, Your Honor.
3          THE COURT:  Okay.  Ms. Richards or Mr. Wishnew,
4  anything else you want to say?
5          MS. RICHARDS:  Nothing further, Your Honor.
6          THE COURT:  Okay.  All right, we're adjourned.  Thank
7  you very much.
8          MR. RODE:  Thank you, Your Honor.  This is Rich Rode.
9  Bye.
10         THE COURT:  Okay.
11      (Whereupon these proceedings were concluded at 2:29 PM)

**I N D E X**

RULINGS

|  | PAGE | LINE |
|---|---|---|
| Expert discovery deadline is extended to May 1, 2016. | 9 | 15 |
| Trust is entitled to receive discovery on Mr. Rode's financial records from September through December 2009. | 13 | 15 |

1
2            C E R T I F I C A T I O N
3
4 I, Penina Wolicki, certify that the foregoing transcript is a
5 true and accurate record of the proceedings.
6
7
8
9 *[signature: Penina Wolicki]*
10
11 _____
PENINA WOLICKI
12
AAERT Certified Electronic Transcriber CET**D-569
13
14
eScribers
15
700 West 192nd Street, Suite #607
16
New York, NY 10040
17
18
Date:   February 5, 2016
19
20
21
22
23
24
25