1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 12-12020-mg

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  RESIDENTIAL CAPITAL, LLC, et al.,

9

10          Debtors.

11

12  - - - - - - - - - - - - - - - - - - - -x

13

14          United States Bankruptcy Court

15          One Bowling Green

16          New York, New York

17

18          February 10, 2016

19          10:01 AM

20

21  B E F O R E:

22  HON. MARTIN GLENN

23  U.S. BANKRUPTCY JUDGE

24

25

1

2    Doc# 9489 Omnibus Motion to Enforce Injunctive Provisions of

3    Plan and Confirmation Order.

4    Document #:  9489

5    Marked Up Documents:  9489, 9503, 9575, 9576, 9594

6

7    Doc# 9523 Case Management Conference Concerning the Remaining

8    Claim of Frank Reed.

9    Document #:  9523

10   Marked Up Documents:  9473, 9523, 9598

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Hana Copperman

```
 1
 2   A P P E A R A N C E S :
 3   KRAMER, LEVIN, NAFTALIS & FRANKEL LLP
 4        Attorneys for ResCap Liquidating Trust
 5        1177 Avenue of the Americas
 6        New York, NY 10036
 7
 8   BY:   JOSEPH A. SHIFER, ESQ.
 9         NATHANIEL ALLARD, ESQ.
10
11
12   RESIDENTIAL CAPITAL, LLC
13        Associate Counsel for ResCap Liquidating Trust
14        8400 Normandale Lake Boulevard
15        Suite 175
16        Bloomington, MN 55437
17
18   BY:   KATHY PRIORE, ESQ. (TELEPHONICALLY)
19
20
21
22
23
24
25
```

4

1

2   MORRISON & FOERSTER LLP

3        Attorneys for the ResCap Borrower Claims Trust

4        250 West 55th Street

5        New York, NY 10019

6

7   BY:   JORDAN A. WISHNEW, ESQ.

8

9

10   REED SMITH

11        Counsel to Debtors for Certain Consumer Lending and

12        State Tax Matters

13        Three Logan Square

14        1717 Arch Street

15        Suite 3100

16        Philadelphia, PA 19103

17

18   BY:   BARBARA K. HAGER, ESQ.

19

20

21   ALSO APPEARING:

22        FRANK REED, Pro Se

23        MARILYN LAWRENCE, Pro Se (TELEPHONICALLY)

24        CHRISTOPHER MARTINEZ, Pro Se (TELEPHONICALLY)

25

RESIDENTIAL CAPITAL, LLC, ET AL.                                    5

1                      P R O C E E D I N G S

2          THE COURT:  All right.  Please be seated.

3          We're here in Residential Capital, number 12-12020.

4          All right.  The first matter this morning is the

5   ResCap Liquidating Trust's omnibus motion to enforce injunctive

6   provisions of plan and confirmation order.

7          MR. SHIFER:  Good morning, Your Honor.  Joseph Shifer

8   of Kramer, Levin, Naftalis & Frankel for the ResCap Liquidating

9   Trust.

10         THE COURT:  Good morning, Mr. Shifer.  And do we have

11  people on the phone for this?

12         MR. SHIFER:  I believe there are, Your Honor.

13         MS. LAWRENCE:  Yes.

14         THE COURT:  Could you please identify yourself,

15  please?

16         MS. LAWRENCE:  Yes.  My name is Marilyn Lawrence, pro

17  per.

18         THE COURT:  Okay.  Thank you, Ms. Lawrence.

19         Anybody else?

20         MS. PRIORE:  Yes.  This is Kathy Priore with ResCap.

21         THE COURT:  All right.  Anybody else?

22         MR. MARTINEZ:  Christopher Martinez.

23         THE COURT:  Okay.  Thank you very much, Mr. Martinez.

24         All right.  Mr. Shifer?

25         MR. SHIFER:  All right, Your Honor.  This motion is

1    pursuant to the Court's order establishing procedures to

2    enforce the plan injunction provisions.  It was filed at docket

3    number 9489.  In support of the motion we filed the declaration

4    of Kathy Priore, who's the Liquidating Trust's associate

5    counsel.  That was attached to the motion as Exhibit 2.  And,

6    as Your Honor knows, Ms. Priore's on the line if you have any

7    questions.

8         Your Honor, you may be wondering why there was a delay

9    between the entry of the procedures order and this enforcement

10   order that we filed.

11        THE COURT:  I assume you were working diligently to --

12        MR. SHIFER:  Yes, Your Honor.

13        THE COURT:  -- avoid having to bring the motion.

14        MR. SHIFER:  As you might recall, we filed a lengthy

15   exhibit to the procedures motion, which included many parties.

16        THE COURT:  Right.

17        MR. SHIFER:  And there was some confusion as to

18   whether or not they were, in fact, pursuing monetary claims.

19   And before we brought the enforcement motion we wanted to be

20   absolutely sure that whoever we listed on our motion is, in

21   fact, pursuing monetary claims.  And we really -- the ResCap

22   Liquidating Trust really took a bottoms up approach to

23   rebuilding that list, reviewing every docket, reviewing every

24   complaint and every dispositive motion, just to be sure that

25   whoever we initially contacted, pursuant to the procedures,

1    was, in fact, pursuing monetary claims against the debtors

2    without having filed a proof of claim.

3         And, Your Honor, to some extent we were a victim of

4    our own success, where once the process got started, and we

5    were sending out these initial letters, in fact, we were able

6    to resolve a number of these matters consensually, without

7    having to bring the motion.

8         THE COURT:  So your Exhibit 5 lists eleven matters.

9         MR. SHIFER:  Yes, Your Honor.  In fact, since we filed

10   the motion one other matter has been resolved consensually.

11        THE COURT:  Which one's that?

12        MR. SHIFER:  Just give me one moment, Your Honor.

13   That's Mickey Jones, number 9 on the exhibit.

14        THE COURT:  Okay.

15        MR. SHIFER:  And one other thing that we were careful

16   of as we undertook this process of identifying parties who are

17   violating the plan injunction provisions, we wanted to make

18   sure that before we filed a motion enforcing the provisions,

19   that people were actually getting notice, and we weren't just

20   sending out letters into the air, and that whoever was going to

21   be subject to the Court's order did, in fact, get proper notice

22   of both the motion and of the existence of the plan injunction.

23   And in any instance where we sent out correspondence, and it

24   came back undeliverable, we took those parties off of the list.

25   And since we filed the motion we actually got one of these

1  unreturnables very, very late, and that's Edgart Gonzalez,

2  who's listed as number 2 on the exhibit.

3          THE COURT:  So it's not going --

4          MR. SHIFER:  And we're withdrawing the motion as to

5  him.  We're going to try to figure out how to get a hold of him

6  before we seek an enforcement.

7          THE COURT:  Okay.

8          MR. SHIFER:  Your Honor, the specific relief that --

9          THE COURT:  Did he have -- I mean, because that's

10  pending in the Ninth Circuit, right?  He had no address listed

11  on the docket in the Ninth Circuit?

12          MR. SHIFER:  It came back undeliverable.

13          THE COURT:  Okay.  All right.

14          MR. SHIFER:  We have to figure out what happened

15  there.

16          THE COURT:  That's fine.

17          MR. SHIFER:  Your Honor, the specific relief that

18  we're seeking in the enforcement motion is a finding that

19  continued pursuit of these actions are in violation of the plan

20  injunctions.  We're not actually seeking sanctions at this

21  point.  We just first want to get that order entered.  And it

22  also permits us to file a notice with the Court, wherever these

23  various actions are pending, letting them know that the Court's

24  ordered a finding that it's in violation of the plan

25  injunctions.

RESIDENTIAL CAPITAL, LLC, ET AL.                     9

1          Your Honor, there were two objections that were filed

2     to the motion, and we filed a reply at docket number 9594.

3          The first objection is by Christopher Martinez at

4     9575.  The second one was by Marilyn Lawrence at 9576.  I can

5     go through the objections if you'd like, Your Honor, or we --

6          THE COURT:  Yes.

7          MR. SHIFER:  -- the reply, I think, addressed them.

8          THE COURT:  You did.  But why don't you -- Mr.

9     Martinez is on the phone.  Let's deal with the Martinez matter

10    first.  Go ahead.

11         MR. SHIFER:  Okay.  Your Honor, Mr. Martinez's action

12    is current.  There's an appeal pending before the Ninth Circuit

13    from a dismissal from the District Court, the District of

14    Nevada.  He was actually not a creditor of the estates.

15         THE COURT:  I understand.

16         MR. SHIFER:  He wasn't a borrower.  He got a

17    quitclaim.

18         THE COURT:  He got a quitclaim.  Actually, twice

19    removed.

20         MR. SHIFER:  Right.  Exactly.  And therefore we can

21    see that he didn't receive initial notice of the bar date or

22    notice of commencement, but Mr. Martinez --

23         THE COURT:  He has no great -- he has no greater

24    rights than the initial transferor.

25         MR. SHIFER:  Correct, Your Honor.  And, in fact, many

1  of the events that he cites in his objection occurred well

2  before the effective date of the plan.  And we do note that we

3  actually served -- we filed a notice in the action letting him

4  know of the existence of the plan injunction provisions and the

5  various deadlines.  That was back, I believe, in 2014.

6          THE COURT:  Yes.  That's the question.

7          MR. SHIFER:  And Mr. Martinez never even -- never

8  sought --

9          THE COURT:  Okay.

10          MR. SHIFER:  -- to file a proof of claim.

11          THE COURT:  The question I have, because Judge Jones'

12  order dismissing the case in the district court was entered on

13  June 16, 2014.  And I guess my question is did the Trust file a

14  notice of bankruptcy before Judge Jones ruled?

15          Ordinarily, if that had been done the district court

16  wouldn't have ruled -- I don't know whether the district

17  court -- that's what raised a question in my mind, was when did

18  you file a notice in the district court action?  Did --

19          MR. SHIFER:  It was prior to the order being entered.

20          THE COURT:  Did anyone on behalf of the debtors or

21  their successors in interest join in the motion to dismiss?

22          MR. SHIFER:  Your Honor, not to my knowledge.  I would

23  have to go back and check with local counsel.

24          THE COURT:  Okay.  Because on the issue of whether to

25  enforce the injunction with respect to the appeal, I would like

1  to know whether the debtors or their successors in interest

2  participated in the district court and joined -- because the

3  judge granted -- in his opening, the second sentence is:

4  "Pending before the Court are three motions to dismiss".  I

5  didn't log onto the ECF to see what they were.  The ECF docket

6  numbers of the motions are there.  And it just was unclear to

7  me whether GMACM or successors appeared in the district court,

8  filed the motion.  I'm not saying it would be dispositive of

9  the outcome.

10          MR. SHIFER:  I don't want to put her on the spot, but

11  Ms. Priore is on the phone.

12          THE COURT:  Okay.

13          MR. SHIFER:  I just want to check to see whether she

14  might have an answer.

15          THE COURT:  Ms. Priore, can you enlighten me?

16          MS. PRIORE:  Yes.  I don't know the answer off the top

17  of my head, but I can try to reach out and find out quickly.

18          THE COURT:  Okay.  I'll ask Mr. Martinez when we come

19  to him.

20          But that's really my only question, Mr. Shifer, is

21  you're trying to preclude Mr. Martinez from proceeding with his

22  fully briefed appeal in the Ninth Circuit and --

23          MR. SHIFER:  Only with respect to the debtors.

24          THE COURT:  I understand.  But it would -- I want to

25  know whether any of the debtors participated in the district

1   court action, specifically filed the motion to dismiss.  That

2   motion would have been filed well after plan confirmation.  And

3   that's what I want to know.

4           MR. SHIFER:  We would have to look into the specifics,

5   Your Honor.

6           THE COURT:  Okay.  All right.  Okay.  So go on to the

7   Lawrence.

8           MR. SHIFER:  Your Honor, the Lawrence objection is

9   mostly focused around the -- from what we can tell, that Ms.

10  Lawrence did not receive notice of the bar date or the plan

11  injunction provisions.

12          Give me a moment, Your Honor.  I apologize.

13          We did serve -- or, I should say, the debtors did

14  serve notice of commencement on Ms. Lawrence at the address

15  listed at the complaint.  We do note that --

16          THE COURT:  She was pro se.

17          MR. SHIFER:  -- Ms. Lawrence subsequently filed an

18  amended complaint.

19          THE COURT:  Yes.

20          MR. SHIFER:  And --

21          THE COURT:  With a different address.

22          MR. SHIFER:  But because she didn't actually send in a

23  change of address to the noticing agent, apparently that was

24  never processed, and all subsequent notices went to the old

25  address.

1          THE COURT:  Okay.

2          MR. SHIFER:  That was listed on the complaint.

3          I would note that since receiving correspondence from

4    the Liquidating Trust Ms. Lawrence has attempted to file proofs

5    of claim, beginning in August, 2015, but because there is --

6          THE COURT:  The plan --

7          MR. SHIFER:  The plan --

8          THE COURT:  The plan deals with --

9          MR. SHIFER:  The plan provides that those are

10   automatically expunged without --

11         THE COURT:  Correct.

12         MR. SHIFER:  -- without prior approval of the Court.

13         THE COURT:  Right.

14         MR. SHIFER:  And those have been expunged.

15         THE COURT:  So Ms. Lawrence's -- I'm looking at the

16   first amended complaint filed in the Central District of

17   California.  There are nondebtor defendants as well.  And do

18   you know what has transpired with the action since it was --

19   since the first amended complaint was filed?

20         MR. SHIFER:  I believe that action has been stayed

21   entirely.  I believe.  I'd have to double check that there.

22         THE COURT:  And do you know why it was stayed as

23   against the nondebtor defendants?

24         MR. SHIFER:  Again, I'd have to check the specifics,

25   but we found in many instances once that notice of -- sorry.

RESIDENTIAL CAPITAL, LLC, ET AL.                    14

1        My colleague informs me, and I apologize, Your Honor,

2   that ETS, the debtor entity, Executive Trustee Services, is

3   actually the only remaining defendant in that action.

4        THE COURT:  Okay.

5        MR. SHIFER:  And it remits that the others have been

6   dismissed.

7        THE COURT:  They've been dismissed?

8        MR. SHIFER:  Yes.

9        THE COURT:  Do you know why the action was dismissed

10  against the other defendants?

11       MR. SHIFER:  I don't know, Your Honor.

12       THE COURT:  Okay.  Anything else you want to add, Mr.

13  Shifer?

14       MR. SHIFER:  No.

15       THE COURT:  Okay.  Mr. Martinez, do you want an

16  opportunity to respond?

17       MR. MARTINEZ:  Yes, Your Honor.  There's a few things

18  I'd like to clarify regarding your question regarding whether

19  the debtors joined the motion to dismiss before the district

20  court in Nevada.  They did not.  The only thing that was ever

21  filed, and it was the first time I learned of the plan

22  provisions, and how GMAC's bankruptcy in general was on the

23  6th, was when the counsel for GMAC filed their notice.  It says

24  "GMAC Mortgage, LLC's notice of bankruptcy filing and entry of

25  confirmation order", which was filed with the district court on

1    May 6, 2014 by R. Samuel Ehlers, who was the counsel for the

2    debtors in the Nevada case.  That was the first time I ever

3    heard of this or even received any copy whatsoever of this

4    Court's orders.

5            So I wasn't aware, and counsel present today did not

6    join in the motion to dismiss, but the district court in Nevada

7    was made aware of this, as was I, on the 6th of May, 2014.  And

8    that document was also submitted to the Ninth Circuit.  So they

9    are aware of that, and the counsel for GMAC did submit a seven-

10   page explanation with the notice describing the history and

11   also the notice itself, which is, as I'm sure you're aware of,

12   it's nineteen pages long.

13           So the matter was made available to the Court, but I

14   understand what you're saying in terms of why didn't counsel

15   join that motion, but they didn't.

16           THE COURT:  No, I'm not.  I'm not asking why he

17   didn't.  I'd be surprised if he did.  You've acknowledged that

18   he did not.

19           The bankruptcy injunction would have prevented the

20   action from proceeding against GMAC, and the reason I asked the

21   question was because if GMAC actively participated in the

22   action and joined in the motion to dismiss, that would have

23   been inconsistent with the injunction.  Okay?  You've

24   acknowledged that they did not participate, so you've actually

25   answered my question.

1      May I ask you this, Mr. Martinez?  When did you obtain

2  your quitclaim to the property?

3      MR. MARTINEZ:  That was in 2013.  Actually, the actual

4  procedure was the borrowers, Daniel and Yuliana Medeles, placed

5  the property into a land trust in 2011, and then in 2013 it was

6  removed from the land trust and into my name, so it would be a

7  quitclaim deed.

8      THE COURT:  When in 2013?

9      MR. MARTINEZ:  I'm sorry?

10     THE COURT:  When in 2013?

11     MR. MARTINEZ:  The exact date -- if you just give me

12  one moment.

13     THE COURT:  Sure.

14     MR. MARTINEZ:  Your Honor, I'll just need a minute to

15  look that up, but I'm sure I have it right here.

16     THE COURT:  Okay.

17     MR. SHIFER:  Your Honor, I have that date from the

18  complaint.

19     THE COURT:  Go ahead, Mr. Shifer.

20     MR. SHIFER:  It's listed on the complaint as May 3,

21  2013.

22     THE COURT:  Okay.  So, Mr. Martinez, you couldn't

23  acquire any greater rights then the transferors had.  I mean,

24  you can't, by obtaining a quitclaim deed after the confirmation

25  of a plan and plan injunction, think that you can assert a

1    damages claim against GMAC that the original borrower would be

2    barred from doing.  Why do you think you can do that?

3          MR. MARTINEZ:  Well, Your Honor, there's a couple of

4    things.  A quitclaim deed is acceptable under Nevada law.  I

5    think I cited it in my brief --

6          THE COURT:  Oh, it is.  I have no doubt that a

7    quitclaim is acceptable.  But you can't acquire any greater

8    rights than the transferors had.  Why do you think if the -- if

9    the original mortgagor would be barred from asserting damage

10   claims against GMAC, why do you think you can?  How did you

11   acquire rights to assert claims against GMAC that the original

12   transferors did not have?

13         MR. MARTINEZ:  Well, I would say that under 11 U.S.C.

14   523(a) and 11 U.S.C. 727(a)(4)(C) the issue here really is a

15   question of fraud that I was alleging against the debtors.  In

16   this case they've continued to file and continue to assert an

17   interest in the property without actually having an interest in

18   the property.  And, as it says in my brief, there were a number

19   of documents that were recorded, starting in 2011, all the way

20   through 2014, where they've attempted on multiple occasions to

21   foreclose nonjudicially under Nevada law, and but also in

22   violation of Nevada law.

23         So to put it as simply as I possibly can, Your Honor,

24   I don't think that it is equitable for the defendants to commit

25   fraud and then hide behind the bankruptcy court, potentially.

1        THE COURT:  So how --

2        MR. MARTINEZ:  It would be --

3        THE COURT:  Why did you lose in the state court?

4        MR. MARTINEZ:  Well, the orders, I believe, you

5   already have, but this is my own personal opinion.  I don't

6   believe that the judge in the district court understood what

7   was the essence of my case.

8        THE COURT:  Okay.

9        MR. MARTINEZ:  There are multiple ways of looking at

10  the facts in this case.  And I spent a lot of time focusing on

11  issues pertaining to the securitization and the errors in the

12  securitization process, that if the correct party of the -- the

13  reported correct party had initiated a foreclosure

14  proceeding -- in this case it was Ginnie Mae as trustee of the

15  REMIC Trust.  If they had asserted an interest, but they

16  haven't, but if they did that their -- they would be unable to

17  enforce the note because of the errors in the securitization

18  process.  And much of the brief, and too much of the brief was

19  focused on that question, and not enough on the primary issue,

20  which is that the wrong party, who does not have an endorsement

21  of the original promissory note into their name, has initiated

22  foreclosure, which is in violation of Nevada law.

23        THE COURT:  Okay.  I have your argument.

24        Mr. Shifer, anything you want to add?

25        MR. SHIFER:  I just want to note two things, Your

1  Honor.  Many of the actions that Mr. Martinez complains of

2  actually occurred after the sale of the debtors' servicing

3  business.  And Mr. Martinez conflates actions by GMAC Mortgage

4  and Ocwen.

5          THE COURT:  All right.

6          MR. SHIFER:  That's it.  I believe it was February,

7  2013 the businesses were transferred over to by Ocwen.

8          THE COURT:  Okay.

9          MR. SHIFER:  And, in addition, the May 3rd date, May

10  3, 2013, was during the proceedings of the bankruptcy court.

11  We still didn't finish this case by that point.  There wasn't a

12  plan.  Mr. Martinez could have been -- should have been on

13  notice of the proceedings in the court.

14          THE COURT:  All right.  Thank you.  I'll take -- well,

15  let me go on here.

16          Ms. Lawrence, do you want to speak?

17          MS. LAWRENCE:  Yes, Your Honor.  Marilyn Lawrence.

18  And I received a letter from Mr. Shifer, just as I've stated in

19  my brief there, my objections, June the 31st (sic), 2015.  Only

20  after -- and the filing date had passed -- I contacted him

21  immediately, because at the bottom of his letter it stated

22  that, you know, if you disagree with it to call.  And so I

23  called him and stated to him I never, ever received any mail

24  stating that I needed to file a proof of claim because of the

25  Liquidating Trust.  Again, the decision that was made, you

 1  know, in good faith determination.

 2       So he said, again, I said so.  What do you want to do?

 3  Because I don't know, you know.  So he said -- he asked me if I

 4  had an attorney.  I told him no, I didn't -- I haven't had one.

 5  I couldn't afford one.  Everything that I have had was lost

 6  when I lost the home.

 7       So I did call around, and I went to Legal Aid and went

 8  to several different places, but with no success.  And even

 9  with Mr. Shifer.

10       So I began to call around and to -- trying to see what

11  I could do till -- so one office did tell me file a proof of

12  claim.  So I didn't know exactly what that was.  But, anyway, I

13  went on the Internet and got some information.  And finally,

14  after I began to communicate with, I guess, the ones that are

15  actually serving for the Liquidating Trust, I was able to get

16  some information.

17       And so, again, my Exhibit A is actually the first

18  letter that I got from Mr. Shifer.  And the second one is

19  actually the affidavit that it was actually mailed out and what

20  time it was mailed out.  And I think they sent me a third

21  exhibit, which was the matrix, master list of mailing, and it

22  had over 5,000 pages.

23       And so I had to search through it to find my name, and

24  when I did I could see that -- and in 2012 this information,

25  whatever they were sending out, was to a wrong address, 5851

1  Seventh Avenue, which was --

2          THE COURT:  May I ask you this, Ms. Lawrence?  Mr.

3  Shifer said that the address that the mailing was sent to was

4  the address you used in your original complaint.  Is that

5  correct?  Was that your -- I take it you moved, but that was

6  your former address?

7          MS. LAWRENCE:  No.  No.  I never -- no, no, no, Your

8  Honor.  This address, 5363 (sic) West Olympic Boulevard, has

9  been my mailing address for over twenty years.  And all the

10 Court -- all the mortgages, all sent my mail to my -- my

11 mailing address, which is 53, which I've been living, I could

12 say it, for over twenty years.

13         So when I saw this on this master mailing list that

14 they had actually sent it to a wrong address, then I stated

15 that to him, and then one of his colleagues called me back and

16 asked me did I have any proof.  And so I said, you know, no, I

17 don't have any proof.  And then when I got -- when I asked what

18 is your mailing list?  If someone can give me copies of it?

19         And so they sent it on my e-mail, and it was so large

20 that no one could open it.  And finally I just kept putting

21 forth this effort to ask them when, you know, going to

22 different places like Office Depot, Staples, and on and on.

23 Finally they were able to open it.

24         And when it came out, I could see, and I told Mr.

25 Shifer that no, my mailing address with the court and with --

1  if there's anything different there, I can't even imagine,

2  because everything, all of my documents that I know that I

3  filed with the court, had 5362, even ETA, even their

4  defendants.

5          Again, when they would send in their quarterly report,

6  it would come to me.  But it was saying no meeting or no trial

7  was necessary.  And it never stated in there that a decision

8  had been made, you know, that I would receive damages, but it

9  says that -- it would just always state it's pending.  And up

10  until July, when I first received this statement from Mr.

11  Shifer, I was getting mail from, again, the defendants to the

12  correct address.  And so I didn't understand it all.  But I

13  actually was able to actually get that information to show in

14  the exhibits that I set there.

15          And I know that everything may not be in such great

16  order, because I got a virus on my computer right as I was --

17  and on my left side that I had to redo all this, you know, and

18  it was just overwhelming.  But I'm sorry if it's not so much in

19  order, but I've had a very difficult time not being able to

20  have anyone to help me.

21          Like I said, I communicated with Mr. Shifer.  I tried

22  to.  And, like I could -- only thing I could come up with is to

23  show -- once I learned that -- what his letter was stating,

24  then I did go to the court here and ask to give a status

25  report, you know, of the information that I had learned.  And

1  at first they just held it, and then they said they would have

2  to go to the judge to see if she would accept it, compile it,

3  and she did.  She accepted it.  And so but even in that letter

4  I stated I've never, ever, and all the information that I have

5  here before me, is proof that I never received it.

6          THE COURT:  All right.  Mr. Shifer, you want to

7  address the issue of the addresses?

8          MR. SHIFER:  Your Honor, I apologize.  I thought we

9  actually had a copy of the original complaint, but it appears

10  we don't.

11          THE COURT:  You don't.

12          MR. SHIFER:  So I apologize for that, Your Honor.  I

13  do have the original affidavit of service --

14          THE COURT:  And was it mailed to --

15          MR. SHIFER:  -- that shows that it was served, you

16  know, that has the caption of the case, and it has the address

17  as 5851 Seventh Avenue in Los Angeles.

18          But in any event, Your Honor, we did file a notice of

19  bankruptcy in the action.

20          THE COURT:  When was that filed?

21          MR. SHIFER:  One moment, Your Honor.  That was July

22  24, 2013.  And a copy of it is attached as Exhibit 2-B to our

23  reply.

24          THE COURT:  I think you told me earlier that the

25  mailing was to what you thought was Ms. Lawrence's prior

1   address, that it was the address on the complaint.

2        MR. SHIFER:  This was actually filed in the action.

3        THE COURT:  All right.  But I --maybe I misunderstood.

4   I thought you told me that there was a mailing to Ms. Lawrence,

5   but it was --

6        MR. SHIFER:  There was.  Ms. --

7        THE COURT:  -- to the address shown on the original

8   complaint.

9        MR. SHIFER:  Yes, Your Honor.

10       THE COURT:  But I don't have the original complaint.

11       MR. SHIFER:  And I apologize for that, Your Honor.

12       THE COURT:  And Ms. Lawrence says that was never her

13  address.

14       MR. SHIFER:  Without having the complaint in front of

15  us --

16       THE COURT:  Okay.  All right.  Here's what I'm going

17  to do.  The motion to enforce is granted -- you need to

18  revise -- as to everyone other than Martinez and Lawrence.  And

19  I'm going to take it under sub -- and obviously you've

20  withdrawn it as to Gonzalez, and you've resolved it as to

21  Jones.

22       I'm going to take it -- well, with respect to Lawrence

23  and Martinez -- with respect to Martinez, Mr. Martinez has

24  acknowledged that the debtor or its successors did not join in

25  the motion to dismiss in the district court.  That satisfied a

RESIDENTIAL CAPITAL, LLC, ET AL.                    25

1    question I had as to whether the debtor actively participated

2    and sought dismissal.  Mr. Martinez has said no.

3            So as to Martinez, the matter is under submission.

4            As to Lawrence, please file a supplemental declaration

5    attaching the original complaint, showing the address that you

6    said.  I want to compare.  I want to see whether -- and make

7    clear in a supplemental declaration whether the mailing -- show

8    me where -- give me a page from the service list that shows

9    that it was served to that address, and the matter will be

10   deemed under submission at that point.

11           MR. SHIFER:  Your Honor, it's a 1,500 page --

12           THE COURT:  I don't want the whole.  I don't want the

13   whole.

14           MR. SHIFER:  Well, we'll just have the excerpted page.

15           THE COURT:  I want an excerpt of the -- was matrix, I

16   guess.  I don't want the whole thing.  I want the page.  And

17   obviously you need to serve Ms. Lawrence with it.  I want to be

18   able to compare where the mailing was done to with the address

19   shown on the original complaint, which I don't have.

20           After receiving that, I'll decide whether there's any

21   further briefing or anything I need, or whether the matter will

22   be deemed under submission at that point.  But I want to see

23   that.

24           MR. SHIFER:  And just to make sure I have it clear,

25   Your Honor.  We're going to submit a revised exhibit, removing

RESIDENTIAL CAPITAL, LLC, ET AL.                    26

1    Martinez and Lawrence and the other two matters --

2            THE COURT:  With the orders.  Okay?

3            MR. SHIFER:  -- and with the order.

4            THE COURT:  The order ought to reflect those actions

5    as to which the injunction is being enforced.  As to Martinez

6    and Lawrence, as to Martinez, it's under submission.  As to

7    Lawrence, I want this additional filing.

8            MR. SHIFER:  Okay.

9            THE COURT:  Okay.  And after receiving the additional

10   filing on Lawrence I'll decide whether the matter may be deemed

11   under submission at that point, or I may ask for a supplemental

12   brief.  I'll see what -- after I see what you've given me.

13           MR. SHIFER:  Thank you, Your Honor.

14           THE COURT:  But I don't want the whole 1,500 pages.

15           MR. SHIFER:  Absolutely not.

16           THE COURT:  Okay.  Anything else you want to raise?

17           MS. LAWRENCE:  Your Honor?

18           MR. SHIFER:  That's it for today.

19           THE COURT:  All right.  Ms. Lawrence, anything else

20   you want to raise at this point?

21           MS. LAWRENCE:  Yes.  I just want to tell you in my

22   report there to you I actually -- I sent one to Mr. Shifer too.

23   Everything, this page that they mailed the information to, it

24   should be right there.  It's the docket, 336-5, and it --

25           THE COURT:  Yes.  But what I don't have, Ms. Lawrence,

1   is the original complaint that you filed.  They attached the

2   first amended complaint.  Mr. Shifer has said you had a

3   different address on the original complaint.  That's what I

4   want to be able to see.  I don't have that.  Okay?

5          You'll get a copy of what he's filing.  He has to

6   serve you with it.

7          MS. LAWRENCE:  Okay.

8          THE COURT:  Okay?  Anything else you want to say, Ms.

9   Lawrence?

10         MS. LAWRENCE:  Thank you.  Thank you so much for just

11  even considering this information, because --

12         THE COURT:  Well, okay.  Thank you very much, Ms.

13  Lawrence.

14         Mr. Martinez, anything you want to add?

15         MR. MARTINEZ:  Yes, Your Honor.  I just wanted to add

16  that the actions regarding, in my case, started, actually, in

17  2011, prior to GMAC even filing for bankruptcy.  The chain of

18  events that I'm alleging are tortious to the title started

19  actually in January of 2011.  That was more than a year

20  before --

21         THE COURT:  That's the --

22         MR. MARTINEZ:  -- they actually filed.

23         THE COURT:  Mr. Martinez, that's the whole point.

24  That's the whole point.  What you're complaining about are acts

25  or events that occurred before the petition date, which would

1    be barred and discharged by the confirmed plan and injunction.

2    That's precisely what the Trust is arguing.

3          Okay.  You don't --

4          MR. MARTINEZ:  Yes, Your Honor.  I --

5          THE COURT:  Mr. Martinez.  You get no greater rights

6    than the original transferors had.  If they had a claim, they

7    had asserted here.  The plan and discharge injunction bar any

8    claims for damages against the debtors or their successors.

9    Okay?  We're still going through the claims resolution process,

10   but it's where timely proofs of claim were filed.  Okay.

11         All right.  The matter is under submission.  Thank you

12   very much.

13         MR. MARTINEZ:  Thank you, Your Honor.  And may we be

14   excused before the next matter?

15         THE COURT:  You can be excused.

16         MR. MARTINEZ:  Thank you.

17         THE COURT:  Okay.  Mr. Wishnew?  Mr. Reed?

18         All right.  The next matter is the ResCap Borrower

19   Claims Trust's objections to proofs of claim filed by Frank

20   Reed and Christina Reed.  The objection was originally filed at

21   docket number 7017.  The matter is here on remand from the

22   district court.

23         On January 20, 2016 the Court entered an order

24   scheduling the case management conference concerning the

25   remaining claims of Frank Reed.  That's what we're here on

1  today.

2         Pursuant to the order, with an extension of his time

3  to do so, Mr. Reed filed what he styled as "cognizable damages

4  statement" dated February 5, 2016.

5         All right.  Mr. Wishnew?

6         MR. WISHNEW:  Thank you, Your Honor.

7         THE COURT:  Let me get the appearances first.

8         MR. WISHNEW:  Jordan Wishnew, Morrison & Foerster, for

9  the ResCap Borrower Claims Trust.  I'm here with my cocounsel,

10  Barb Hager of the Reed Smith firm.

11         THE COURT:  Thank you.

12         MS. HAGER:  Good morning, Your Honor.

13         THE COURT:  Mr. Reed, make your appearance.

14         MR. REED:  Frank Reed, creditor pro se.

15         THE COURT:  Okay.  Mr. Wishnew, go ahead.

16         MR. WISHNEW:  Your Honor, I'll just address one

17  preliminary matter, and then I'll turn the presentation over to

18  Ms. Hager to address discovery and the related matters.

19         One issue that causes the Trust a bit of concern is

20  the statement made by Mr. Reed on page 4 of his cognizable

21  damages statement where he says in the middle of the page:

22         "Take notice that today, February 5, 2016, I have

23  filed an amendment to my original proof of claim to include a

24  claim for violation of the Fair Debt Collection Practices Act."

25         I won't go on, but --

1        THE COURT:  Let me put that matter to rest right now.

2   It's too late in the day for an amendment to the proof of

3   claim.  Mr. Reed is bound by the claim that he -- claims that

4   were filed -- the Court's decision might -- this Court's

5   decision and Judge Wood's decision remanding the matter to me.

6   What remains to be determined by this Court only are the issues

7   of damages with respect to breach of contract and Consumer

8   Fraud Act claims and New Jersey law.

9        MR. WISHNEW:  Right.

10        THE COURT:  That's the only thing that remains.  If

11   Mr. Reed filed a motion to amend his proof of claim and an

12   additional claim, it's denied.

13        MR. WISHNEW:  Thank you for that clarification, Your

14   Honor.

15        THE COURT:  Okay.  So that ought to -- that's how

16   we're proceeding.

17        MR. WISHNEW:  Understood.  In that regards, I will

18   turn the podium over to Ms. Hager.

19        MS. HAGER:  Good morning, Your Honor.

20        THE COURT:  Thank you.  Good morning.

21        MS. HAGER:  So, Your Honor, we're here to talk about

22   Mr. Reed's filing and his damages, his additional damages that

23   he's seeking.

24        THE COURT:  But he didn't really do what I told him to

25   do.  But go ahead.

1          MS. HAGER:  Well, so, Your Honor, what he filed, to

2    me, is, sort of, a generic statement of the damages that he's

3    seeking.

4          THE COURT:  It is.  I said be specific.  I want to

5    know exactly what damages he's claiming.  He didn't do that.

6    But the question is where we go from here.

7          MS. HAGER:  Right.  So from where we sit, we had a

8    couple of ideas.  One would be to ask Mr. Reed, within a short

9    period of time, to provide a witness list, including names and

10   addresses and topics on which his witnesses would testify,

11   including any proposed experts.

12         Once we have that in place, we thought that we could

13   start with a ninety-day discovery period.

14         THE COURT:  I don't see why it needs to be ninety

15   days.  The only issues remaining are the cognizable damages for

16   other than the principal property that was involved.

17         MS. HAGER:  Understood.  I suppose in looking at his

18   submission it's hard to exactly determine what we will need.

19   Certainly we would plan on serving written discovery.  My

20   recollection of having served written discovery on Mr. Reed

21   previously in this case was that it -- I don't believe he

22   responded, or, if he did, we did not get complete responses.

23   So I think in my head I'm anticipating some potential issues

24   with that, but if we wanted to do a shorter discovery schedule

25   we could certainly work with that and serve our discovery as

1    expeditiously as possible.  And then if we have any issues with

2    responses we could come to the Court to resolve those.

3         Certainly once we have the witness list, though, we'll

4    have a better idea of how many depositions we will need and how

5    long that will take.  Again, thinking back to the summer of

6    2014, before the trial in this matter, there was originally a

7    witness list that was provided to us, which was fairly lengthy.

8    So I, again, I'm, sort of, anticipating something that looks

9    similar to that previous witness list.

10        I could be completely wrong.  Maybe there are one or

11   two witnesses, and, of course, we wouldn't need as much time,

12   but I think without having that witness list, and certainly

13   without knowing whether Mr. Reed anticipates calling experts,

14   it's a little hard to get started.  So we --

15        THE COURT:  So in reading his statement on page 3,

16   listed under "Damages" he lists four specifics.  Well, there

17   are four numbered items, not specific.

18        The first one, "Damages from lost real estate projects

19   which were owned and in progress", and he lists two.  Old Dell

20   Trace, Richmond, Virginia, and Brookschase Lane in Richmond,

21   Virginia.  So that he's been specific about.  Not about the

22   amount of damages he's seeking to recover, but he's been

23   specific as to the lost real estate projects.

24        And then in number 2, "Damages from lost rental

25   properties", he doesn't identify which properties.  And under 2

1   he has a), b), and c), and c) is "Judgement Deficiency owed due

2   to loss of the rental properties."  I have no idea what that's

3   about.  And I will ask Mr. Reed.

4        And then for 3 he has "Attorneys fees and experts fees

5   litigating over the damages caused to my other properties and

6   business interests by the debtor's bad act".  We'll leave to

7   some -- obviously you'll have to be specific about it, but

8   whether such damages are recoverable, we'll see.

9        And then he has 4. "The stress of debtor's wrongful

10  act has wrought physical harm that has contributed to my

11  complete physical disability as recognized by Federal Law."

12  And then he goes on from there.

13       His stress, the debtor's wrongful act, I don't believe

14  is recoverable on breach of contract.  Whether such damages are

15  recoverable under the Consumer Fraud Act we'll see.  You'll

16  brief it, and we'll see.

17       Let me hear from Mr. Reed.  And you can speak from

18  there without getting up.  Just pull the microphone a little

19  closer to you, Mr. Reed.  Okay?  Thank you.

20       MS. HAGER:  Thank you, Your Honor.

21       MR. REED:  Your Honor, the -- on the page 3 where I

22  discussed the rental properties and the income from it and the

23  deficiency judgment, those were in the record along with my

24  proofs of claim and in the supplemental when requested by the

25  debtors.  They were --

RESIDENTIAL CAPITAL, LLC, ET AL.                          34

1          THE COURT:  Well, but it didn't tell me what they are,

2    so --

3          MR. REED:  I'm sorry.  I didn't realize that.

4          THE COURT:  Well, the whole idea -- the reason I said

5    be specific, Mr. Reed, and I said -- it was a short order, a

6    one-page order -- but it put "with specificity" in italics,

7    because I was going to decide today exactly how we're going

8    forward from today.  Okay?  And that means I need to know --

9          So as to the first "lost real estate projects" you

10   identified two.  Okay?  And

11         MR. REED:  I can identify the addresses of the three

12   rental properties.  They're, as I said, they're part of the

13   record.  I can recite them today.

14         THE COURT:  So there are three rental properties.

15         MR. REED:  Correct.

16         THE COURT:  Okay.  And just, without going into great

17   detail, did you have tenants in the properties?

18         MR. REED:  Long-term institutional tenants from a

19   nonprofit organization, and the -- we provided a letter from

20   their national president.  They've 1,800 houses nationwide.

21   And when they learned that I was in foreclosure, it just

22   happened to coincide with lease renewals, and they wouldn't

23   renew, although they had been with me for fifteen years --

24         THE COURT:  How much were the rental?  What was the

25   rental rates of the three properties?

RESIDENTIAL CAPITAL, LLC, ET AL.                    35

1          MR. REED:  Twenty-one, I think, hundred or so.  1,750,

2    1,850, those -- those -- those kind of --

3          THE COURT:  A month for each of those?

4          MR. REED:  Yes.  Yes.  Yes.

5          THE COURT:  All right.  What was the judgment

6    deficiency that you have?

7          MR. REED:  I didn't -- when they left, I couldn't --

8    it was -- we were hard pressed to find tenants to replace them.

9          THE COURT:  Okay.

10         MR. REED:  I couldn't complete servicing the

11   mortgages, and they were --

12         THE COURT:  Were they foreclosed?

13         MR. REED:  They were, Your Honor, and --

14         THE COURT:  All three?

15         MR. REED:  Correct.

16         THE COURT:  Okay.  And are you liable on a deficiency

17   judgment?

18         MR. REED:  I am, because they sued on the note and on

19   the mortgage and --

20         THE COURT:  Where are the properties?

21         MR. REED:  In Camden County, New Jersey.

22         THE COURT:  Okay.  These were recourse loans?

23         MR. REED:  Yes.  There was -- yes.  And that's why

24   they had -- they sued on the note as well, and got the dollar

25   amount.  That's where the -- maybe I'm using the wrong term,

1  deficiency.  Judgment, what we have is, you know, they

2  foreclosed on the properties.  There was a value at the time of

3  foreclosure, which would be setoff to the --

4          THE COURT:  Well, let me ask you.  Are you personally

5  liable on --

6          MR. REED:  Yes.

7          THE COURT:  -- judgments?

8          MR. REED:  Yes.  Yes, Your Honor.

9          THE COURT:  If you could just -- I'm not going to pin

10 you down to the penny, but can you tell me approximately what

11 the aggregate amount of the deficiency judgments on the three

12 properties?

13         MR. REED:  Seven hundred and fifty thousand dollars.

14         THE COURT:  The three?  Okay.

15         MR. REED:  And the president of the organization had

16 provided letter confirmation that that was the reason they

17 didn't renew.  I provided that letter.  With our proof of

18 claim, I provided it in the supplemental.

19         Of course we didn't go there, because all those

20 damages were not examined.

21         THE COURT:  Let me ask you this.  When were

22 foreclosure actions commenced against those three properties?

23         MR. REED:  I can't -- Your Honor, it was after the

24 foreclosure action started, but I don't remember when.  I

25 can't.  I'm sorry.

1          THE COURT:  Okay.  All right.

2          How do you propose to prove your cognizable damages as

3    the district court is permitting you to do?

4          MR. REED:  As I understand them, Your Honor, and

5    that's why I talked about the CFA law in my filing a little

6    bit, and as my personal experience in this court has taught me,

7    I'm going to need more witnesses to demonstrate that the -- the

8    status of the properties, that I owned the properties, that,

9    you know, the documents we're going to provide showing I owned

10   them.  Documents showing that they were in progress.  You know,

11   subcontractors who were working on them that can verify what

12   stage of progress we were on and how much monies, maybe, that I

13   needed to complete them.  Realtors who were involved with me,

14   who knew me for a decade and a half, who've bought -- been

15   involved with the buying and then selling of my properties.

16         Part of the law on loss profits is you have to prove

17   about previous experience and similar projects.  I mean, you

18   know, this Court has shown itself to not believe my statements

19   and not credit them as valuable, so I need to bring in other

20   people who are going to correlate what I say.  And I have no

21   choice.  I have no choice.  So I'm trying to figure out --

22         THE COURT:  Well, I conducted a trial, and I made

23   findings of fact.  And other than excluding you from attempting

24   to prove damages on properties other than the property at issue

25   here, the decision was affirmed.

1          Have you lined up your expert witnesses?

2          MR. REED:  I have not.  Each property works -- I'm

3    expecting there's likely to be an appraiser as an expert that

4    has to be involved with each one.  I have to contact -- there

5    were appraisals done at certain points.  We'd have to contact

6    those firms first to see if they have documents in their file,

7    to see if they'll be accepted as relevant to these proceedings.

8    If not, we have to have, perhaps, new appraisals done for

9    specific time periods that we may be discussing this on the

10   values of the loss, because, you know, I foresee counsel saying

11   well, this is outside the time scope of the damage.  It was

12   preceding, but who knows what the value of the property is at

13   the particular time of the loss.  And, you know, does the

14   appraisal have to be done now retroactively to that date, which

15   appraisers do.

16         These are all things I'm trying to be more careful

17   with, and I've also been -- and just the Court to be aware

18   of -- been interviewing a number of attorneys who are familiar

19   with --

20         THE COURT:  Well, we're not going to sit back, Mr.

21   Reed, and let you leisurely decide what you're going to pursue.

22         MR. REED:  I surely didn't expect that.

23         THE COURT:  You were -- wanted to make an offer of

24   proof at the time of trial as to your damages, which I thought

25   were speculative.  You seem to have been prepared at that trial

1     to have put on your proof.  It's time to put on your proof.

2            So I'm going to give you sixty days to provide the

3     Trust's counsel with expert reports and a list of all witnesses

4     who you expect to call as witnesses at the trial.

5            MR. REED:  Why not deny --

6            THE COURT:  Just a second, Mr. Reed.  Don't interrupt

7     me.

8            I'm going to give you sixty days to provide the

9     witness list and any expert reports you intend to offer in

10    evidence at the trial on damages.  Once you provide the trust

11    counsel with the witness list and the expert reports, I will

12    give the trust counsel forty-five days to depose your witnesses

13    and to present any expert reports it intends to offer.

14           So I'm giving you sixty days; you're pro se.  I'm

15    giving them forty-five days.  You've got the burden.  Okay?

16    I'm going to give them forty-five days.  And then after you get

17    their reports, in addition to their expert reports, a list of

18    any witnesses the trust intends to call who are not on

19    Mr. Reed's list, we'll set another conference and I'll give you

20    an opportunity to depose the trust witnesses; I'm not going to

21    set the time limit for that now.

22           But that's how we're going to proceed, Mr. Reed.  Your

23    failure to provide -- if you don't provide expert reports and

24    the witness list within the sixty days, you will be precluded

25    from offering any other evidence, any witnesses or experts, at

RESIDENTIAL CAPITAL, LLC, ET AL.                    40

1   the time of the trial.  I plan to promptly -- after you come

2   forward with your witness list and expert reports and the trust

3   has done the same, I'll give you a chance to depose their

4   witnesses if you choose to, and then I'm going to promptly

5   schedule a trial.  If you're going to retain counsel, then you

6   better do it soon.  We've been through this rodeo before,

7   Mr. Reed.  I encouraged you earlier in the case -- I'm not

8   faulting you for it; you're entitled to proceed pro se.  And I

9   know you had indicated you had tried to retain counsel earlier

10  in the case.  But this is going to be the schedule.

11          It's important that all remaining claims unresolved

12  against the trust be resolved as soon as possible.  I'm already

13  giving you more time than I might otherwise be inclined to do.

14  But we'll enter a written order to this effect today.

15          Ms. Hager, anything else that you would like --

16          MS. HAGER:  Yes, Your Honor.  With respect to written

17  discovery within the rubric that Your Honor just set out, would

18  we be able to send out written discovery sooner rather than

19  later?

20          THE COURT:  Well, what written discovery do you want

21  to send?

22          MS. HAGER:  To get any other documents that Mr. Reed

23  might have --

24          THE COURT:  Sure, you can.

25          MS. HAGER:  -- that wouldn't be -- okay.

1          THE COURT:  Okay.  But I'm ordering him to disclose

2     and provide the expert reports, so I don't see a particular

3     need for you to serve interrogatories about experts, for

4     example.  You're going to get -- you're going to get his

5     reports and you're going to get his witness list.  Yes, you are

6     entitled to documents.

7          Because the only issue is your damages, Mr. Reed, it

8     didn't seem to me -- what, if any, discovery you believe you're

9     entitled to from the trust, at this point.  And the only issue

10    that came back were your damages.

11         MR. REED:  I haven't -- it hasn't coalesced exactly,

12    the connectivity --

13         THE COURT:  Mr. Reed, I entered an order.  Yeah, I

14    said I was going to set -- "The Court intends to enter a case

15    management order following the conference setting forth the

16    schedule for filing written direct testimony of fact and expert

17    witnesses and for the trial of the remaining issue".  So you

18    had to come prepared today.  When you get -- actually,

19    Mr. Reed, I'm going to direct, in that sixty-day period, in

20    addition to the expert reports, you file direct written

21    testimony of your fact witnesses as well.

22         Okay, so you've got sixty days, following today's

23    conference, to file written direct testimony of fact witnesses

24    and provide the expert reports of your expert witnesses.  And

25    then the trust can take -- trust counsel can take depositions

1    of your fact witnesses and your expert witnesses.  If the trust

2    puts -- if they give you expert witnesses, I'm going to

3    require, Ms. Hager, that at the same time you provide any

4    expert reports, you provide proposed written direct testimony

5    of any fact witnesses you intend to offer.

6            MS. HAGER:  Yes, Your Honor.

7            THE COURT:  Obviously you'll get to cross-examine each

8    other's witnesses.

9            I want to proceed expeditiously -- fairly but

10   expeditiously, to try and resolve the remaining issues in the

11   case.

12           MS. HAGER:  Your Honor, one other point for us would

13   be an opportunity to have pre-trial briefing.

14           THE COURT:  Oh, you will.  I'm not setting that now.

15           MS. HAGER:  Okay.

16           THE COURT:  When we get this discovery out of the way

17   and I set a trial date, the trial schedule will include

18   briefing.

19           MS. HAGER:  Okay.  Thank you, Your Honor.

20           THE COURT:  Okay.  Mr. Reed?

21           MR. REED:  Your Honor, the other thought that I wanted

22   to address today was I suggested -- or I requested

23   arbitration --

24           THE COURT:  You're not getting arbitration.  I

25   encourage you to try and settle with them.

1       MR. REED:  I'm open to it, Your Honor.  Very open to

2  it.

3       THE COURT:  I don't want to know any details; have you

4  had any discussions about settlement, since Judge White's

5  opinion -- Judge Woods' opinion?

6       MR. REED:  I sent over a proposal but I didn't hear

7  any response.  So, I mean, I'm open to hear -- as I said before

8  in my communications, I'm open to hear, frankly, where they

9  have issues with -- but I don't think they -- they may not

10  know, because they don't have all the facts.

11       THE COURT:  Mr. Reed, until they know what -- that is

12  one of the reasons that I wanted you to specifically

13  identify --

14       MR. REED:  Um-hum.  Um-hum.

15       THE COURT:  Okay, so you've identified three specific

16  projects that you were working on, and I'm not going to let you

17  add more now, okay?

18       MR. REED:  There's no more.

19       THE COURT:  Okay.  Okay.  And you said there were how

20  many rental properties?  Four?

21       MR. REED:  Three.

22       THE COURT:  Three.  Okay.  So give them -- don't

23  delay.  Well, they'll ask for documents on it.

24       But see if you can work it out informally, Ms. Hager.

25  You may be able to get the document, the leases, and who the

1    tenants were and what the rents were, and other background,

2    okay?

3          MS. HAGER:  Yes, Your Honor.

4          THE COURT:  Before you go charging off, sending

5    written discovery, talk to Mr. Reed, see if you can work out as

6    much as you want to get at this point.  And then if you have to

7    serve more discovery, go ahead and do that, okay?

8          MS. HAGER:  Yes, Your Honor.

9          THE COURT:  Okay.  Because I don't want Mr. Reed

10   burdened with unnecessary discovery.

11         MS. HAGER:  Understood.

12         THE COURT:  I don't want the trust burdened with

13   unnecessary discovery.  Okay?  But at this stage, the issues

14   are the damages, okay?  And we'll move from there.  Okay?

15         And, Mr. Reed, once discovery's done, once the expert

16   reports are exchanged and each side's had a chance to depose

17   the experts, you're going to get a quick trial date.  Okay.

18   And I think you know; generally what I do is have written

19   direct testimony and then the cross-examination of witnesses,

20   at trial, okay, because it tends to --

21         MR. REED:  Yeah, that was different than what we

22   experienced.  We didn't have written direct testimony.

23         THE COURT:  Well, part of it was you're pro se.  And I

24   really don't mean any offense with this.  Sometimes during the

25   trial it was hard to keep you focused on what you had to --

1          MR. REED:  I --

2          THE COURT:  -- had to do.

3          MR. REED:  I understand that.

4          THE COURT:  Okay.

5          MR. REED:  And I saw that.

6          THE COURT:  And so I tried to adjust the procedure,

7    hopefully to accommodate you to some extent.

8          But we'll get to the trial.

9          Mr. Wishnew, Ms. Hager, sit down with Mr. Reed and see

10   whether you can settle this matter, okay?  You no doubt need

11   some information before you can do that.  I mean, you need to

12   provide them with -- the only way settlement works, Mr. Reed,

13   is if it's a level playing field.  You have three projects;

14   three rental properties.  Give them your numbers, okay?  You

15   could exchange information for settlement purposes and agree

16   that that specifically won't be used for trial; the expert --

17         MR. REED:  I'm okay with that.

18         THE COURT:  -- reports will, obviously.

19         Okay.  But I'm not dictating that; I want you to

20   see -- let's see if we can move this forward, okay?

21         All right, nice to see you, Mr. Reed.

22         We're adjourned.

23         IN UNISON:  Thank you, Your Honor.

24       (Whereupon these proceedings were concluded at 11:00 AM)

25

1

2                                    I N D E X

3

4                                    RULINGS

5                                                     PAGE      LINE

6  Motion to enforce is granted as to everyone   24         17

7  other than Mr. Martinez and Ms. Lawrence

8  Mr. Reed's motion to amend his proof of         30         12

9  claim and file an additional claim are

10 denied

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                       C E R T I F I C A T I O N

3

4    I, Hana Copperman, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8        *Hana Copperman*

9

10   _____

11   HANA COPPERMAN

12   AAERT Certified Electronic Transcriber CET**D 487

13

14   eScribers

15   700 West 192nd Street, Suite #607

16   New York, NY 10040

17

18   Date:  February 11, 2016

19

20

21

22

23

24

25

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net