**Hearing Date:  March 22, 2016 at 10:00 a.m. (Prevailing Eastern Time)**
**Response Deadline:  March 15, 2016 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone:     (212) 468-8000
Facsimile:     (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Benjamin W. Butterfield

*Counsel for the ResCap Borrower*
*Claims Trust*

**UNITED STATES BANKRFUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------- )
In re:                                              )        Case No. 12-12020 (MG)
                                                    )
RESIDENTIAL CAPITAL, LLC, <u>et al</u>.,           )        Chapter 11
                                                    )
                          Debtors.                  )        Jointly Administered
                                                    )
-------------------------------------------------------------- )

**RESCAP BORROWER CLAIMS TRUST'S OBJECTION**
**TO PROOF OF CLAIM NO. 4834 FILED BY**
**<u>TERRANCE P. GORMAN AND KAREN GORMAN</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

JURISDICTION, VENUE, AND STATUTORY PREDICATE ...................................3

BACKGROUND ...........................................................................................................3

    I.    Overview ...........................................................................................3

    II.    Background of the Claim.....................................................................5

        A.    The Loan and the Property .........................................................5

        B.    The Default and Foreclosure Action ..........................................6

        C.    The Interest Rate Adjustment ....................................................7

        D.    The Loan Modification...............................................................7

        E.    Breach of Modified Loan ...........................................................8

        F.    The Foreclosure Action ..............................................................8

        G.    The Federal Court Action ...........................................................9

RELIEF REQUESTED ................................................................................................11

OBJECTION ...............................................................................................................11

    I.    The Claim Fails on the Merits ..........................................................12

        A.    Applicability of Federal Pleading Standards ............................12

        B.    The Fraud Claim Must Fail Because Claimants Have Not Pled the Claim with Sufficient Particularity and the Claim is Barred by the Statute of Limitations and the Statute of Frauds ....................................13

            (i)    The Fraud Claim Was Not Pled With Sufficient Particularity ...................................................................13

            (ii)    The Fraud Claim is Barred by the Statute of Limitations.............14

            (iii)    The Fraud Claim is Barred by the Statute of Frauds ...................15

        C.    The Fraudulent Inducement Claim Must Fail Because Claimants Have Not Alleged the Elements of Fraud and Do Not Allege The Existence of Any Contract Induced by Fraud ..........................................15

        D.    The Usury Claim Must Fail Because Claimants Have Not Adequately Pled the Claim and Have Failed to Establish that GMAC Mortgage Intended to Charge More Interest than Allowed by Law ................................................................................................16

# TABLE OF CONTENTS
### (continued)

**Page**

E.    The Breach of Contract Claim Must Fail Because the Loan Representations Are Unenforceable Under the Statute of Frauds Absent a Written Agreement and Claimants Have Not Established that GMAC Mortgage Breached Any Other Contract ............................ 18

        (i)    The Loan Representations and Modification Representations Are Unenforceable Under the Texas Statute of Frauds ................................................................... 19

        (ii)   Claimants Have Failed to Allege that GMAC Mortgage Breached the Non-Recourse Protections or the Notice Requirements ................................................................... 19

F.    The TDCPA Claim Must Fail Because Claimants Have Failed to Adequately Plead Any Violation of the TDCPA by GMAC Mortgage ................................................................................... 20

G.    There Is No Predatory Lending Cause of Action Under Texas Law ........ 22

H.    The Lender Liability Claim Must Fail Because There is No "Special Relationship" Between Claimant and GMAC Mortgage Under Texas Law ........................................................................... 22

I.    The Request for Declaratory Relief and Civil Conspiracy Claim Must Fail Because Claimants Have Not Demonstrated that They Have a Viable Claim Against GMAC Mortgage ...................................... 23

NOTICE ........................................................................................................ 24

CONCLUSION .............................................................................................. 24

-ii-

## TABLE OF AUTHORITIES

**Page(s)**

CASES

Adams v. Bank of Am.,
No. 4:10-cv-709, 2011 WL 5080217 (E.D. Tex. Oct. 26, 2011) ....................................22, 23

Ally v. Bank & Trust of Bryan/Coll. Station,
No. 10-11-00080-CV, 2012 WL 662324 (Tex. Ct. App. Feb. 29, 2012) ..............................17

Ashcroft v. Iqbal,
556 U.S. 662 (2009) ............................................................................................................12

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007) ............................................................................................................12

Brown v. Aurora Loan Servs., LLC,
No. 4:11-cv-111, 2011 WL 2783992 (E.D. Tex. June 7, 2011)............................................22

Chance v. Aurora Loan Servs., L.L.C.,
No. 3:11-cv-1237-BH, 2012 WL 912939 (N.D. Tex. Mar. 19, 2012) ..................................15

Collins v. Allied Pharmacy Mgmt., Inc.,
871 S.W.2d 929 (Tex. Ct. App. 1994).................................................................................15

Domizio v. Progressive Cnty. Mut. Ins. Co.,
54 S.W.3d 867 (Tex. Ct. App. 2001) ..................................................................................16

Dracopoulas v. Rachal,
411 S.W.2d 719 (Tex. 1967) ...............................................................................................15

Fed. Deposit Ins. Corp. v. Coleman,
795 S.W.2d 706 (Tex. 1990) ...............................................................................................22

Feinberg v. Bank of N.Y. (In re Feinberg),
442 B.R. 215 (Bankr. S.D.N.Y. 2010) .................................................................................12

Ford v. Exxon Mobil Chem. Co.,
235 S.W.3d 615 (Tex. 2007) ...............................................................................................14

Foster v. Bank One Texas NA,
No. 02-50686, 2002 WL 31730405 (5th Cir. 2002)..............................................................16

Fry v. Wilson,
No. 05-94-01396-CV, 1995 WL 376499 (Tex. Ct. App. June 26, 1995)...............................17

GMAC Commercial Mortg. Corp. v. E. Tex. Holdings, Inc.,
441 F. Supp. 2d 801 (E.D. Tex. 2006) ................................................................................16

iii

## TABLE OF AUTHORITIES

**Page(s)**

In re Residential Capital, LLC,
   524 B.R. 465 (Bankr. S.D.N.Y. 2015), aff'd sub nom., Morse v. ResCap Borrower
   Claims Trust, No. 15-595-BK, 2016 WL 277732 (2d Cir. Jan. 22, 2016) .............................. 23

In re Residential Capital, LLC,
   No. 12-12020 (MG), 2015 WL 2375979 (Bankr. S.D.N.Y. May 15, 2015) .......................... 12

Oyster Creek Fin. Corp. v. Richwood Investments II, Inc.,
   176 S.W.3d 307 (Tex. Ct. App. 2004) ..................................................................................... 16

Petrohawk Props., L.P. v. Jones,
   455 S.W.3d 753 (Tex. Ct. App. 2015) ............................................................................... 15, 19

Pineridge Assocs., L.P. v. Ridgepine, LLC,
   337 S.W.3d 461 (Tex. Ct. App. 2011) ..................................................................................... 17

Pooley v. Seal,
   802 S.W.2d 390 (Tex. Ct. App. 1990) ..................................................................................... 14

River Capital Advisors of N.C., Inc. v. FCS Advisors, Inc.,
   NO. 4:10-cv-471, 2011 WL 831282 (E.D. Tex. Feb. 7, 2011) ................................................ 15

Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter,
   607 F.3d 1029 (5th Cir. 2010) ................................................................................................. 13

Shields v. Citytrust Bancorp, Inc.,
   25 F.3d 1124 (2d Cir. 1994) .............................................................................................. 13, 14

Simien v. Unifund CCR Partners,
   321 S.W.3d 235 (Tex. Ct. App. 2010) ..................................................................................... 19

TIG Ins. Co. v. Aon Re, Inc.,
   521 F.3d 351 (5th Cir. 2008) ................................................................................................... 14

Tri v. J.T.T.,
   162 S.W.3d 552 (Tex. 2005) .................................................................................................... 23

Triton Commercial Props., Ltd. v. Norwest Bank Tex., N.A.,
   1 S.W.3d 814 (Tex. Ct. App. 1999) ......................................................................................... 15

Warren v. Bank of Am., N.A.,
   No. 3:13-CV-1135-M, 2013 WL 8177096 (N.D. Tex. Nov. 15, 2013) .............................. 20, 22

Weissman v. Nat'l Ass'n of Secs. Dealers, Inc.,
   500 F.3d 1293 (11th Cir. 2007) ............................................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

Wells Fargo Bank, N.A. v. Murphy,
    458 S.W.3d 912 (Tex. 2015) ................................................................................................ 17

Wells v. Lomita Subdivision,
    No. 13-07-070-CV, 2008 WL 1901672 (Tex. Ct. App. Apr. 29, 2008) .................................. 23

Zoluaga v. BAC Home Loans Servicing, L.P.,
    No. 4:11-cv-369, 2011 WL 5600377 (E.D. Tex. Nov. 16, 2011) ........................................... 23

STATUTES

11 U.S.C. § 502(a) ..................................................................................................................... 11

11 U.S.C. § 502(b)(1) ................................................................................................................ 12

TEX. BUS. COM. CODE ANN. § 26.02(b) (West 2015) .................................................................. 15

TEX. FIN. CODE ANN. §§ 392.301-04 (West 2015) ............................................................... 21, 22

OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) .................................................................................................................... 13

v

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

The ResCap Borrower Claims Trust (the "**Borrower Trust**"), established pursuant to the

terms of the chapter 11 plan (the "**Plan**") confirmed in the above-captioned bankruptcy cases

(the "**Chapter 11 Cases**") [Docket No. 6065], as successor in interest to the above-captioned

debtors (collectively, the "**Debtors**") with respect to Borrower Claims,[1] hereby submits this

objection (the "**Objection**") seeking to disallow and expunge, without leave to amend, proof of

claim number 4834 (the "**Claim**") asserting claims of Terrance P. Gorman and Karen Gorman

(the "**Claimants**") against Debtor GMAC Mortgage, LLC ("**GMAC Mortgage**") pursuant to

section 502(b) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 3007(a)

of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") on the ground that the

Claim fails to state a claim against GMAC Mortgage.  A copy of the Claim is attached to the

Lathrop Declaration (defined below) as Exhibit A.  The Borrower Trust seeks entry of an order,

substantially in the form attached hereto as **Exhibit 1** (the "**Proposed Order**"), granting the

requested relief.  In support of the Objection, the Borrower Trust submits the Declaration of Sara

Lathrop (the "**Lathrop Declaration**"), attached hereto as **Exhibit 2**, and the Declaration of

Grant Premo (the "**Premo Declaration**"), attached hereto as **Exhibit 3**, and respectfully states as

follows:

**PRELIMINARY STATEMENT**

1.     The Claim is predicated on a complaint (the "**Amended Complaint**") filed by the

Claimants on March 21, 2012 in the Texas Federal Court (defined below), Case No. 4:12-CV-

00098 (the "**Federal Court Action**"), which asserts claims against GMAC Mortgage for:

(1) fraud; (2) fraud in the inducement; (3) usury; (4) breach of contract; (5) violations of the

---

[1]  As used herein, the terms "**Borrower**" and "**Borrower Claims**" have the meanings ascribed to them in the Plan
(defined below).

Texas Debt Collections Practices Act; (6) predatory and unconscionable lender practices; (7) lender liability (special relationship); (8) conspiracy; and (9) declaratory judgment.  The Federal Court Action is currently stayed as to GMAC Mortgage, and the Texas Federal Court has not yet ruled on any of the dispositive motions filed by the other defendants.

2.     The Federal Court Action arises out of Claimants' default on their mortgage loan and GMAC Mortgage's subsequent efforts to collect on that loan.   Claimants' allegations largely rest on their allegation that GMAC Mortgage somehow violated the non-recourse provisions of Claimants' note when it demanded (in the absence of a foreclosure judgment) that Claimants make their regularly scheduled loan payments.  The Claimants do not allege that GMAC Mortgage attempted to enforce a judgment on a mortgage loan against Claimants' personal assets.  Rather, Claimants advance the legal theory that a mortgage lender's only enforcement remedy to collect payment due on a note is to foreclose on the property that secures the note.  This allegation fails as a matter of law, and Claimants' claims based on this allegation should be dismissed with prejudice for failure to state a claim.

3.     In addition to the aforementioned ground for dismissal of the Claim, the Claim also fails because:

(a) Claimants' fraud claim is barred by the applicable statute of limitations and the Texas statute of frauds;

(b) Claimants' fraudulent inducement claim fails because Claimants do not allege the existence of any contract that was induced by GMAC Mortgage;

(c) Claimants' usury claims fail because Claimants have not adequately pled the claim and have failed to establish that GMAC Mortgage intended to charge usurious interest;

(d) Claimants' breach of contract claims are barred by the Texas statute of frauds;

2

(e) Claimants' claims under the Texas Debt Collection Practices Act (the "**TDCPA**") fail because Claimants have failed to identify any specific provision of the TDCPA that GMAC Mortgage allegedly violated;

(f) Claimants' claim for predatory and unconscionable lending practices fail because that is not a recognized cause of action in the state of Texas;

(g) Claimants' claim for lender liability fails because there is no special relationship between a mortgagor and a mortgagee under Texas law; and

(h) Claimants' request for declaratory relief and claim for civil conspiracy fail because Claimants have not demonstrated that they have a viable claim against GMAC Mortgage.

4.      For all of these reasons, the Claim, on its face, fails to assert valid prepetition causes of action against GMAC Mortgage and should be disallowed and expunged with prejudice.

## JURISDICTION, VENUE, AND STATUTORY PREDICATE

5.      This Court has jurisdiction over this Objection under 28 U.S.C. § 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

6.      The statutory predicates for the relief requested herein are section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007(a).

## BACKGROUND

I.      **Overview**

7.      On May 14, 2012, the Debtors filed these Chapter 11 Cases, which are being jointly administered pursuant to Bankruptcy Rule 1015(b).

8.      On May 16, 2012, this Court entered an order [Docket No. 96] appointing Kurtzman Carson Consultants LLC ("**KCC**") as the notice and claims agent in these Chapter 11

3

Cases. Among other things, KCC is authorized to (a) receive, maintain, record, and otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain the official claims register for the Debtors (the "**Claims Register**").

9.     On November 15, 2012, Claimants filed the Claim, asserting a claim against GMAC Mortgage in the amount of $500,000. See Claim at Ex. A to the Lathrop Declaration, at 1. A copy of the Amended Complaint was appended to the Claim. See Claim at pp. 3-44.

10.    On March 21, 2013, this Court entered an order approving procedures for the filing of objections to proofs of claim filed in these Chapter 11 Cases (the "**Procedures Order**") [Docket No. 3294]. The Procedures Order includes specific protections for Borrowers and sets forth a process for the Debtors to follow before objecting to certain categories of Borrower Claims.

11.    On December 11, 2013, this Court entered the *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* [Docket No. 6065] approving the terms of the Plan filed in these Chapter 11 Cases. The Effective Date (as defined in the Plan) of the Plan occurred on December 17, 2013. See Docket No. 6137.

12.    The Plan provides for the creation and implementation of the Borrower Trust, which is established for the benefit of Borrowers who filed claims to the extent such claims are ultimately allowed either through settlement or pursuant to an Order of the Court. See Plan, Art. IV.F. The Borrower Trust was established to, among other things, "(i) direct the processing, liquidation and payment of the Allowed Borrower Claims in accordance with the Plan, and the distribution procedures established under the Borrower Claims Trust Agreement, and

4

(ii) preserve, hold, and manage the assets of the Borrower Claims Trust for use in satisfying the Allowed Borrower Claims." See id.

## II.    Background of the Claim

### A.    The Loan and the Property

13.    On or about May 9, 2005, Claimants executed a Texas Home Equity Adjustable Rate Note (the "**Note**") in favor of First Consolidated Mortgage Company ("**FCMC**"). See Note at Ex. B to the Lathrop Declaration.  After Claimants executed the Note, FCMC conveyed the Note to IMPAC Funding Corporation ("**IMPAC**").  See id. at 5.

14.    Concurrent with the execution of the Note, Claimants executed a Texas Home Equity Security Instrument ("**Security Instrument**" and, together with the Note, the "**Loan**"), granting a lien on certain real property located at 2812 Browning Drive, Plano, Texas 75093 (the "**Property**").  See Security Instrument at Ex. C to the Lathrop Declaration.  The Security Instrument named as its beneficiary Mortgage Electronic Registration Systems, Inc. ("**MERS**"), as nominee for FCMC and its successors and assigns. See id. at 1.

15.    Concurrent with the execution of the Security Instrument, Claimants also executed, among other things:  (i) a Texas Home Equity Adjustable Rate Rider (the "**Adjustable Rate Rider**") which amended and supplemented the Security Instrument; (ii) a Texas Home Equity Affidavit and Agreement (the "**Home Equity Affidavit**"); and (iii) a Disclosure Statement regarding the Note's adjustable interest rate (the "**Adjustable Rate Statement**"). Copies of the Adjustable Rate Rider, the Home Equity Affidavit, and the Adjustable Rate Statement are attached to the Lathrop Declaration as Exhibits D, E, and F, respectively.

16.    On January 2, 2009, MERS executed an assignment (the "**Assignment**") of its beneficial interest in the Security Instrument to Deutsche Bank National Trust Company, as Indenture Trustee under the Indenture Relating to IMH Assets Corp., Collateralized Asset-

5

Backed Bonds, Series 2005-7 ("**Deutsche Bank**").  <u>See</u> Assignment at Ex. G to the Lathrop Declaration.

17.    GMAC Mortgage began servicing the Loan on December 7, 2005. <u>See</u> Servicing Notes at Ex. H to the Lathrop Declaration, at 173.

**B.    The Default and Foreclosure Action**

18.    The Loan first became delinquent when Claimants failed to make the monthly mortgage payment due on January 1, 2006.  <u>See</u> Servicing Notes at 9.  In response to Claimants' delinquency, GMAC Mortgage sent letters to Claimants setting forth the amount of the delinquency and Claimants' options to avoid foreclosure (each an "**Options Letter**") on February 10, 2006, June 12, 2006, September 13, 2006, October 11, 2006, and November 10, 2006.  <u>See</u> Options Letters at Exhibit I to the Lathrop Declaration, at 1-10.  GMAC Mortgage also sent Claimants breach of contract letters (each a "**Breach Letter**") on March 6, 2006, July 3, 2006, and December 4, 2006, each of which set forth the amount of Claimants' delinquency as of the date of the letter and provided a thirty (30) day period for Claimants to cure their delinquency before the Claimants' account would be referred to foreclosure.  <u>See</u> Breach Letters at Exhibit J to the Lathrop Declaration, at 1-6.

19.    Between January 2006 and January 2007, Claimants made partial payments to GMAC Mortgage on the Note; however, at no point during this time did Claimants become current on their obligations.  <u>See</u> Servicing Notes at 7-9.  Accordingly, on January 3, 2007, GMAC Mortgage sent a letter informing Claimants that their account "may be sent to an attorney to initiate foreclosure action" (the "**RFC Letter**").  <u>See</u> RFC Letter at Ex. K to the Lathrop Declaration, at 1.  GMAC Mortgage officially referred Claimants' account to foreclosure on January 24, 2007. <u>See</u> Servicing Notes at 164.

### C.       The Interest Rate Adjustment

20.       On May 11, 2007, GMAC Mortgage sent Claimants a letter (an "**Interest Rate Adjustment Letter**") notifying Claimants that, pursuant to the terms of the Note and the Adjustable Rate Statement, the interest rate on the Note would adjust from 9.49% to 12.49% as of July 1, 2007. See Interest Rate Adjustment Letter at Ex. L to the Lathrop Declaration, at 1. As a result of this Interest Adjustment Letter, Claimants' monthly mortgage payment increased from $2205.33 to $2780.09 as of July 1, 2007.

### D.       The Loan Modification

21.       On June 18, 2007, GMAC Mortgage received a fax from Claimants requesting information about options for modifying the Loan. See Servicing Notes at 151. At this point in time, Claimants' account had been delinquent for over 180 days and a foreclosure sale was scheduled for September 2007. See id. On August 30, 2007, GMAC Mortgage received Claimants' completed workout package and began reviewing the package for loss mitigation options in advance of the foreclosure sale scheduled for the following week. See Servicing Notes at 144.

22.       The following day, August 31, 2007, GMAC approved and mailed Claimants a proposed repayment plan for the Note. See Servicing Notes at 140-143. Claimants agreed to the repayment plan and the foreclosure sale was postponed for 30 days. On October 17, 2007, GMAC Mortgage sent Claimants a letter that offered Claimants a traditional step-rate modification for the Note. See Servicing Notes at 136. In November 2007, Claimants and GMAC Mortgage entered into an agreement modifying the terms of the Note (the "**Loan Modification**"). See Loan Modification at Ex. M to the Lathrop Declaration.

7

### E.    Breach of Modified Loan

23.    Claimants failed to make the monthly payment due on the modified Note for February 2008.  See Servicing Notes at 6.  In response to this new delinquency, GMAC Mortgage sent Options Letters to Claimants on March 13, 2008, April 11, 2008, May 12, 2008, June 11, 2008, and July 11, 2008.  See Options Letters at 11-20.  GMAC Mortgage also sent Breach Letters to Claimants on March 4, 2008, April 2, 2008, May 5, 2008, June 2, 2008, and July 3, 2008.  See Breach Letters at 7-16.  On September 9, 2008, GMAC Mortgage again referred Claimants' account to foreclosure because payments for June 2008 through September 2008 remained due and owing.  See Servicing Notes at 122.

### F.    The Foreclosure Action

24.    On February 4, 2009, Deutsche Bank filed an application for expedited foreclosure pursuant to Rule 736 of the Texas Rules of Civil Procedure  with the District Court of Collin County, Texas (the "**Collin County Court**"), Case No. 296-00440-2009 (the "**First Foreclosure Proceeding**").  On April 24, 2009, the Collin County Court entered an *Order to Proceed with Notice of Foreclosure Sale and Foreclosure Sale* (the "**Order to Proceed**"), which authorized Deutsche Bank to proceed with foreclosure under the Security Instrument.  See Order to Proceed at Ex. A. to the Premo Declaration.  On January 7, 2010, the Collin County Court granted a *Bill of Review* (the "**Order Granting Review**") filed by Claimants, set aside the Order to Proceed, and scheduled a trial in the First Foreclosure Proceeding for March 22, 2010.  See Order Granting Review at Ex. B. to the Premo Declaration.

25.    On March 14, 2010, Claimants filed a petition (the "**Contested Foreclosure Petition**") in a separate action before the Collin County Court, Case No. 269-01079-2010 (the "**Contested Foreclosure Action**"), asserting the following claims against Deutsche Bank: (i) violation of the Texas Finance Act; (ii) violation of "the applicable Texas Usury laws";

8

(iii) violation of "the applicable Texas collection debt practices laws"; (iv) violation of "public policy of the State of Texas"; (v) "unconscionable and tortious" actions "with regard to the actions of a lender to a borrower"; and (vi) "'predatory lending practices' in violation of the laws and conscious [sic] of the State of Texas." See Contested Foreclosure Petition at Ex. C. to the Premo Declaration.

26.     On March 15, 2010, the Claimants filed a *Motion to Abate and Dismiss Rule 736 Proceedings* (the "**Motion to Abate**"), which argued that the Collin County Court should abate and dismiss the First Foreclosure Proceeding pursuant to Rule 736 of the Texas Rules of Civil Procedure with the filing of the Contested Foreclosure Action.  See Motion to Abate at Ex. D to the Premo Declaration.  On March 22, 2010, the Collin County Court entered an order granting the Motion to Abate.  The Contested Foreclosure Action was later dismissed by the Collin County Court.  Deutsche Bank restarted the foreclosure process shortly thereafter.

27.     On July 6, 2011, Deutsche Bank filed a second application for expedited foreclosure pursuant to Rule 736 of the Texas Rules of Civil Procedure to the Collin County Court, Case No. 429-2799-2011 (the "**Second Foreclosure Proceeding**").  The Collin County Court subsequently entered an order abating and dismissing the Second Foreclosure Proceeding pursuant to Rule 736 of the Texas Rules of Civil Procedure in response to the filing of the Complaint (defined below).  Accordingly, no foreclosure sale occurred.

**G.     The Federal Court Action**

28.     On January 17, 2012, Claimants filed a complaint (the "**Complaint**") against FCMC, MERS, Ray T. Dewitt III, and GMAC Mortgage in the Collin County Court, Cause No. 401-00145-2012 (the "**State Court Action**").  See Complaint at Ex. E to the Premo Declaration.

9

29.     On February 17, 2012, Deutsche Bank, MERS and GMAC Mortgage jointly filed a notice (the "**Removal Notice**") removing the State Court Action to the United States District Court for the Eastern District of Texas, Sherman Division (the "**Texas Federal Court**"), Case No. 4:12-cv-00098-RAS (the "**Federal Court Action**"). <u>See</u> Removal Notice at Ex. F to the Premo Declaration.

30.     On March 21, 2012, the Claimants filed an amended complaint (the "**Amended Complaint**"), which, among other things, asserted claims against GMAC Mortgage for: (1) fraud; (2) fraud in the inducement; (3) usury; (4) breach of contract; (5) violations of the Texas Debt Collections Practices Act; (6) predatory and unconscionable lender practices; (7) lender liability (special relationship); (8) civil conspiracy; and (9) declaratory judgment. <u>See</u> Amended Complaint at Ex. G to the Premo Declaration, at 2.

31.     On April 3, 2012, Deutsche Bank, MERS and GMAC Mortgage jointly filed a motion to dismiss the Amended Complaint (the "**Motion to Dismiss**"), and on May 2, 2012, Claimants filed a response (the "**MTD Response**") to the Second Motion to Dismiss. Copies of the Second Motion to Dismiss and the MTD Response are attached to the Premo Declaration as Exhibits H and I, respectively. On May 21, 2012, Deutsche Bank, MERS, and GMAC Mortgage jointly filed a reply ("**MTD Reply**") to the MTD Response. <u>See</u> MTD Reply at Ex. J to the Premo Declaration.

32.     On July 27, 2012, GMAC Mortgage filed its Notice of Bankruptcy and Suggestion of Automatic Stay (the "**Notice of Stay**"). <u>See</u> Notice of Stay at Ex. K to the Premo Declaration.

10

33.     On October 12, 2012, the Texas Federal Court entered an order (the "**Stay Order**") staying the Federal Court Action in its entirety as to GMAC Mortgage.  See Stay Order at Ex. L to the Premo Declaration.

34.     On December 7, 2012, Deutsche Bank and MERS jointly filed a motion for summary judgment (the "**MSJ**") in the Federal Court Action.  See MSJ at Ex. M to the Premo Declaration.

35.     On December 31, 2012, the Claimants filed a *Motion to Strike Defendants' MSJ Evidence and Brief in Support Thereof* (the "**Motion to Strike**") and a response to the MSJ (the "**MSJ Response**") and on January 11, 2013, Deutsche Bank and MERS filed a response to the Motion to Strike (the "**MTS Response**") and a reply to the MSJ Response (the "**MSJ Reply**"). Copies of the Motion to Strike, the MSJ Response, the MTS Response and the MSJ Reply are attached to the Premo Declaration as Exhibits N, O, P and Q, respectively.

36.     On February 18, 2013, Claimants, Deutsche Bank and MERS jointly filed a final pretrial order (the "**Joint Pretrial Order**").  See Joint Pretrial Order at Ex. R to the Premo Declaration.  The Motion to Dismiss, MSJ, and Motion to Strike are all currently pending before the Texas Federal Court.

## RELIEF REQUESTED

37.     The Borrower Trust files this Objection pursuant to section 502(b) of the Bankruptcy Code, seeking to disallow and expunge the Claim in its entirety from the Claims Register.

## OBJECTION

38.     A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).  Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and

11

property of the debtor, under any agreement or applicable law . . . ."  11 U.S.C. § 502(b)(1).

Furthermore, once a debtor refutes an essential element of the claim, the burden of persuasion is

on the holder of a proof of claim to establish a valid claim by a preponderance of the evidence.

Feinberg v. Bank of N.Y. (In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010).

## I.    The Claim Fails on the Merits

### A.    Applicability of Federal Pleading Standards

39.    "Federal pleading standards apply when assessing the validity of a proof of

claim."  In re Residential Capital, LLC, No. 12-12020 (MG), 2015 WL 2375979, at *6 (Bankr.

S.D.N.Y. May 15, 2015).

40.    While factual allegations are not required to be detailed under Rule 8 of the

Federal Rules of Civil Procedure, they nonetheless must contain more than "labels and

conclusions[] and a formulaic recitation of the elements of a cause of action . . . ."  Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rule 8 "demands more than an unadorned, the-

defendant-unlawfully-harmed-me accusation."    Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(citation omitted).  Instead, "[f]actual allegations must be enough to raise a right to relief above

the speculative level."  Twombly, 550 U.S. at 555 (citations omitted).  "Facts that are merely

consistent with the plaintiff's legal theory will not suffice when, without some further factual

enhancement [they] stop short of the line between possibility and plausibility of entitle[ment] to

relief."  Weissman v. Nat'l Ass'n of Secs. Dealers, Inc., 500 F.3d 1293, 1310 (11th Cir. 2007)

(citation and internal quotations omitted).  Should the plaintiff fail to "nudge [his] claims across

the line from conceivable to plausible, [his] complaint must be dismissed."  Twombly, 550 U.S.

at 570.

12

**B.** **The Fraud Claim Must Fail Because Claimants Have Not Pled the Claim with Sufficient Particularity and the Claim is Barred by the Statute of Limitations and the Statute of Frauds**

41.     In support of their claim for fraud, Claimants allege that, at the time of the Loan Modification, Claimant Terrance P. Gorman was advised by an unnamed representative of GMAC Mortgage that the Loan "would subsequently be modified to a fixed interest rate" (the "**Modification Representation**").  See Amended Complaint at ¶ 52.  As set forth below, Claimants' fraud claim fails as a matter of law because the claim (i) was not plead with sufficient particularity, and is barred by (ii) the applicable statute of limitations, and (iii) the statute of frauds.

(i)     The Fraud Claim Was Not Pled With Sufficient Particularity

42.     "The elements of fraud in Texas are (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury."  Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter, 607 F.3d 1029, 1032-33 (5th Cir. 2010).

43.     The Federal Rules of Civil Procedure requires a plaintiff to plead "circumstances constituting fraud" with particularity.  Fed. R. Civ. P. 9(b).  Rule 9(b) "is intended to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit . . . ."  Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) (internal quotations and citations omitted). To satisfy the particularity requirement of Rule 9(b), a complaint must:  "(1) specify the statements that the plaintiff contends were fraudulent, (2)

13

identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." See id. at 1127-28 (citations omitted).

44.    Here, Claimants have not alleged any concrete details about the Modification Representation itself, including crucial information such as the date on which and the rate at which the interest rate would purportedly become fixed. Furthermore, Claimants have failed to allege how the Modification Representation was communicated to the Claimants (*i.e.*, by phone, written communication, email, or otherwise) as well as the name of the purported GMAC Mortgage representative who allegedly communicated the Modification Representation to Claimants. Accordingly, Claimants have failed to state a claim for fraud because the allegations of fraud set forth in the Amended Complaint do not satisfy the requirements of Rule 9(b).

(ii)    The Fraud Claim is Barred by the Statute of Limitations

45.    Under Texas law, a fraud claim must be brought "within four years of when the fraud should have been discovered by reasonable diligence." Ford v. Exxon Mobil Chem. Co., 235 S.W.3d 615, 617 (Tex. 2007). The fraud claim "accrues upon the perpetration of the fraud, or if the fraud is concealed, when it is discovered or, through the exercise of reasonable diligence, should have been discovered." Pooley v. Seal, 802 S.W.2d 390, 393 (Tex. Ct. App. 1990). "[T]he question of when a cause of action accrues is a matter of law for the court to decide . . . ." See TIG Ins. Co. v. Aon Re, Inc., 521 F.3d 351, 355 (5th Cir. 2008).

46.    Claimants allege that the Modification Representation was made at the time that Claimant Terrance P. Gorman and GMAC Mortgage agreed to the Loan Modification. See Amended Complaint at ¶¶ 50-52. The Loan Modification became effective as of December 13, 2007. See Loan Modification Documents at 1. Claimants filed the Complaint on or about January 17, 2012—more than four years later. Claimants do not allege that Defendants concealed the fraud. Claimants' fraud claims are therefore time barred.

14

(iii)    The Fraud Claim is Barred by the Statute of Frauds

47.    The Texas statute of frauds states that "[a] loan agreement in which the amount involved . . . exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative." TEX. BUS. COM. CODE ANN. § 26.02(b) (West 2015) (the "**Statue of Frauds**"). "Generally, any modification to an agreement subject to the statute of frauds must also be in writing." Petrohawk Props., L.P. v. Jones, 455 S.W.3d 753, 764 (Tex. Ct. App. 2015); see also Dracopoulas v. Rachal, 411 S.W.2d 719, 721 (Tex. 1967); Triton Commercial Props., Ltd. v. Norwest Bank Tex., N.A., 1 S.W.3d 814, 818 (Tex. Ct. App. 1999) ("where the oral modification . . . materially affects the written contract . . . [the modification] must itself be in writing."). "Application of the statute of frauds to a contract vitiates a fraud claim based on the same facts." Collins v. Allied Pharmacy Mgmt., Inc., 871 S.W.2d 929, 936 (Tex. Ct. App. 1994) (citing Webber v. M.W. Kellogg Co., 720 S.W. 2d 124, 129 (Tex. Ct. App. 1986).

48.    Here, the Loan is subject to the Statue of Frauds, but Claimant does not allege that the Modification Representation was ever memorialized in writing.  A fraud claim cannot be premised on an unwritten promise to modify a contract that is subject to the Statute of Frauds. As a result, the Claimants' fraud cause of action must fail.

**C.    The Fraudulent Inducement Claim Must Fail Because Claimants Have Not Alleged the Elements of Fraud and Do Not Allege The Existence of Any Contract Induced by Fraud**

49.    "To state a claim for fraudulent inducement under Texas law, a plaintiff must prove the basic elements of fraud as well as an underlying contract which was induced." Chance v. Aurora Loan Servs., L.L.C., No. 3:11-cv-1237-BH, 2012 WL 912939, at *5 (N.D. Tex. Mar. 19, 2012); see also River Capital Advisors of N.C., Inc. v. FCS Advisors, Inc., NO. 4:10-cv-471, 2011 WL 831282, at *5 (E.D. Tex. Feb. 7, 2011) ("Fraudulent inducement is a particular species

15

of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof.") (citation omitted); GMAC Commercial Mortg. Corp. v. E. Tex. Holdings, Inc., 441 F. Supp. 2d 801, 807 (E.D. Tex. 2006) ("Fraudulent inducement is a fraud claim in the context of the formation of a contract."). Moreover, for a valid claim of fraudulent inducement, "the fraud must be something more than merely oral representations that conflict with the terms of the written contract." Foster v. Bank One Texas NA, No. 02-50686, 2002 WL 31730405, at *3 (5th Cir. 2002) (quoting Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 179 (Tex. 1997)).

50.    For reasons forth above in Section I(B)(i), Claimants have failed to allege the elements of fraud, which is required under Texas law to state a claim for fraudulent inducement. Additionally, Claimants do not allege the existence of any contract that was induced by the Modification Representation, which is also required under Texas law to state a claim for fraudulent inducement.  As a result, the Claimants' fraudulent inducement claim must fail.

**D.    The Usury Claim Must Fail Because Claimants Have Not Adequately Pled the Claim and Have Failed to Establish that GMAC Mortgage Intended to Charge More Interest than Allowed by Law**

51.    Under Texas law, the "essential elements of a usurious transaction are:  (1) a loan of money, (2) an absolute obligation that the principal be repaid, and (3) the exaction of a greater compensation than allowed by law for the use of the money by the borrower." Domizio v. Progressive Cnty. Mut. Ins. Co., 54 S.W.3d 867, 872 (Tex. Ct. App. 2001).  "A court will not hold a contract in violation of usury laws unless, upon reasonable interpretation of all terms, the lender intended to charge more interest than allowed by the law." Oyster Creek Fin. Corp. v. Richwood Investments II, Inc., 176 S.W.3d 307, 323 (Tex. Ct. App. 2004).

52.    As a preliminary matter, courts interpreting Texas usury laws have stated that a claim for usury should be dismissed as "inadequately briefed" where a plaintiff "neither

16

adequately explains the alleged [usurious charges] nor provides a citation to the record showing the [usurious charges]." See Ally v. Bank & Trust of Bryan/Coll. Station, No. 10-11-00080-CV, 2012 WL 662324, at *9 (Tex. Ct. App. Feb. 29, 2012). Here, Claimants have failed to adequately explain or identify the usurious charges by GMAC Mortgage or provide a citation to the record showing the usurious charges. Accordingly, the Court should dismiss Claimants' usury claims as being inadequately pled.

53.     Moreover, Claimants' usury claims demonstrate a fundamental misunderstanding of secured transactions law. A nonrecourse loan prohibits a lender from attempting to seek a deficiency judgment from a borrower personally if the security value for the loan falls below the amount required to repay the loan. See, e.g., Wells Fargo Bank, N.A. v. Murphy, 458 S.W.3d 912, 917 (Tex. 2015) ("Wells Fargo could seek payment of the home-equity loan only from the collateral, and could not seek a deficiency judgment against the Murphys personally."); Fry v. Wilson, No. 05-94-01396-CV, 1995 WL 376499, at *3 (Tex. Ct. App. June 26, 1995) ("Because his mortgage was treated as nonrecourse, appellant was not liable for any deficiency when the bank foreclosed on his property after the sale to Mills failed."). "A nonrecourse note has the effect of making a note payable out of a particular fund or source, namely, the proceeds of the sale of the collateral securing the note." Pineridge Assocs., L.P. v. Ridgepine, LLC, 337 S.W.3d 461, 465 (Tex. Ct. App. 2011) (citation omitted).

54.     Here, Claimants allege that GMAC Mortgage violated Texas usury laws by demanding that Claimants make their regularly scheduled loan payments (i.e., "personal payments"). See Amended Complaint at ¶¶ 78-79. Claimants conflate their obligation to make monthly mortgage payments on the Note with the fact that Claimants are not personally responsible to pay any deficiency that may exist after GMAC Mortgage forecloses on the

17

Property and applies the amounts received at a foreclosure sale to the balance owing under the

Note. Accordingly, Claimants have failed to demonstrate that "upon reasonable interpretation"

of the Note, GMAC Mortgage intended to charge more interest than allowed by the law and their

claims for usury must fail for this additional reason.

> **E.    The Breach of Contract Claim Must Fail Because the Loan Representations Are Unenforceable Under the Statute of Frauds Absent a Written Agreement and Claimants Have Not Established that GMAC Mortgage Breached Any Other Contract**

55.    In support of the claim for breach of contract, Claimants allege that GMAC

Mortgage violated the following purported representations and/or agreements:

- a representation made by FCMC to Claimant Terrance P. Gorman that (i) although the Note had an adjustable interest rate provision, the interest rate would never go above nine percent (9%) because the interest rate would be subsequently adjusted to a fixed amount; and (ii) the Note would be sold to parties that would be willing to convert the Note to a fixed interest rate (together, the "**Loan Representations**");

- the Modification Representations;

- Section 9 of the Note, which states that "the Note Holder can enforce its rights under this Note solely against the property described above and not personally against any owner of such property or the spouse of an owner" (the "**Non-Recourse Protections**"); and

- Section 7(C) of the Note and Section 21 of the Security Instrument, which each require that holder of the Note provide Claimants with a notice of default and at least 30 days to cure such default prior to acceleration of the sums owed under the Note (the "**Notice Requirements**").

<u>See</u> Amended Complaint at ¶¶ 19, 37, 52, 157-160.

56.    As set forth below, Claimants breach of contract claims fails because such claims

are unenforceable under the Statute of Frauds and/or fail to allege the necessary elements of

breach of contract under Texas law.

(i)    The Loan Representations and Modification Representations Are Unenforceable Under the Texas Statute of Frauds

57.    As discussed *supra* in Section I(B)(iii), the Loan is subject to the Statute of Frauds.  As a general rule, "any modification to an agreement subject to the statute of frauds must also be in writing."  Petrohawk, 455 S.W.3d at 764.  Claimant does not allege that either the Modification Representation or the Loan Representation was ever memorialized in writing.  As a result, Claimants' breach of contract claims based on the Modification Representation or the Loan Representation are unenforceable under the Statute of Frauds.

(ii)    Claimants Have Failed to Allege that GMAC Mortgage Breached the Non-Recourse Protections or the Notice Requirements

58.    Under Texas law, the "essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained as a result of the breach."  Simien v. Unifund CCR Partners, 321 S.W.3d 235, 237 (Tex. Ct. App. 2010).  Here, Claimants have failed to establish that GMAC Mortgage breached either the Non-Recourse Protections or the Notice Requirements.

59.    *First*, Claimants have failed to allege a violation of the Non-Recourse Protections because Claimants have not alleged that GMAC Mortgage sought to enforce a deficiency judgment against Claimants personally.  As discussed *supra* in Section I(D), GMAC Mortgage simply demanded that Claimants make their monthly mortgage payment.  Claimants do not allege that GMAC Mortgage attempted to enforce a judgment on the Note against Claimants' personal assets.  Accordingly, Claimants have failed to establish that GMAC Mortgage breached the Non-Recourse Protections.

60.    *Second*, Claimants have failed to allege a violation of the Notice Requirements because GMAC Mortgage provided Claimants with multiple Options Letters and Breach Letters

19

before referring Claimants' account to foreclosure on September 9, 2008, including a Breach

Letter on March 4, 2008—well in advance of the 30 days required.  Accordingly, Claimants'

breach of contract claim must fail because Claimants have not alleged any breach of the Non-

Recourse Provisions or the Notice Requirements by GMAC Mortgage.

### F.    The TDCPA Claim Must Fail Because Claimants Have Failed to Adequately Plead Any Violation of the TDCPA by GMAC Mortgage

61.    In support of the claim for violation of the Texas Debt Collection Practices Act

(the "**TDCPA**"), Claimants allege that GMAC Mortgage:  (i) "attempted to collect funds from

Plaintiffs Gorman personally, for which Plaintiffs Gorman were not personally liable" or "loan

payments that were not legally due"; and (ii) "utilized harassing, improper, and extortionary

techniques in attempting to collect funds from Plaintiffs Gorman."  See Amended Complaint at

¶¶ 170-172.  As set forth below, Claimants' TDCPA claims fail because Claimants have not

adequately pled any violation of the TDCPA by GMAC Mortgage.

62.    As a preliminary matter, courts interpreting the TDCPA have stated that a "claim

under the TDCPA should be dismissed" where the plaintiff "fails to identify a specific provision

that [the defendant] allegedly violated."  Warren v. Bank of Am., N.A., No. 3:13-CV-1135-M,

2013 WL 8177096, at *10 (N.D. Tex. Nov. 15, 2013) (citing Iqbal, 556 U.S. at 678).  Claimants

have failed to identify any specific provision of the TDCPA that GMAC Mortgage violated.

Accordingly, the Court should dismiss Claimants' TDCPA claims on this basis alone for

inadequate pleading.

63.    Moreover, the TDCPA prohibits a debt collector from employing a specific

enumerated list of practices when seeking to collect a debt, including  "using or threatening to

use violence," "threatening that the debtor will be arrested," "threatening to take an action

prohibited by law," "using profane or obscene language," "placing telephone calls without

20

disclosing the name of the individual making the call," "causing a person to incur a long distance telephone toll," "causing a telephone to ring repeatedly or continuously," "seeking or obtaining a written statement . . . that specifies that a consumer's obligation is one incurred for necessaries of life," and "attempting to collect an obligation under a check . . . [if] the check . . . was dishonored . . . because the check . . . was not drawn . . . by a person authorized to use the applicable accounts." See TEX. FIN. CODE ANN. §§ 392.301-03 (West 2015). Furthermore, the TDCPA prohibits a debt collector from using "fraudulent, deceptive, or misleading representation[s]" when taking actions to collect a debt. See TEX. FIN. CODE ANN. § 392.304 (West 2015).

64.    Here, Claimants allege that GMAC Mortgage violated the TDCPA by attempting "to collect funds . . . [and] loan payments" from Claimants, for which Claimants allege they "were not personally liable" and which "were not legally due." See Amended Complaint at ¶¶ 170-71. As discussed *supra* in Sections I(D) and I(E)(ii), Claimants have failed to establish that GMAC Mortgage violated the Non-Recourse Protections contained in the Note. Accordingly, Claimants' TDCPA claims fail because Claimants have not alleged that GMAC Mortgage engaged in any "fraudulent, deceptive, or misleading representation[s]," or any other violations of the TDCPA, in seeking to collect the amounts due under the Note.

65.    Furthermore, Claimants allege that GMAC Mortgage violated the TDCPA by demanding repayment of the Note "through seemingly endless phone calls" to Claimants' home, which occurred "throughout the day, with multiple calls the same day" and "late in the evening." See Amended Complaint at ¶¶ 60-62. Claimants also allege that GMAC Mortgage placed phone calls "to [Claimants'] relatives at such relatives' home" and "to [Claimant] Terry Gorman at his

21

place of work,[2]" and sent Claimants "numerous and seemingly endless letters."  See Amended

Complaint at ¶¶ 63-65.  None of the foregoing activities are prohibited by the TDCPA.  See TEX.

FIN. CODE ANN. §§ 392.301-304 (West 2015).

66.     Accordingly, Claimants' TDCPA claims fail because Claimants have not alleged

that GMAC Mortgage engaged in "fraudulent, deceptive, or misleading" representations or any

of the enumerated practices specifically prohibited by the TDCPA.  See Warren, 2013 WL

8177096, at *10.

### G.    There Is No Predatory Lending Cause of Action Under Texas Law

67.     There is no recognized cause of action under Texas law for predatory and

unconscionable lending practices.  See Brown v. Aurora Loan Servs., LLC, No. 4:11-cv-111,

2011 WL 2783992, at *4 (E.D. Tex. June 7, 2011) ("Defendants are correct in stating that there

is no "predatory lending" cause of action in Texas.").  Accordingly, Claimants' "predatory and

unconscionable lend[ing] practices" claim against GMAC Mortgage, see Amended Complaint at

¶¶179-180, must be dismissed.

### H.    The Lender Liability Claim Must Fail Because There is No "Special Relationship" Between Claimant and GMAC Mortgage Under Texas Law

68.     Under Texas law, generally speaking, there is no special relationship between a

mortgagor and mortgagee.  See Fed. Deposit Ins. Corp. v. Coleman, 795 S.W.2d 706, 709 (Tex.

1990) ("The relationship of mortgagor and mortgagee ordinarily does not involve a duty of good

faith."); Adams v. Bank of Am., No. 4:10-cv-709, 2011 WL 5080217, at *7 (E.D. Tex. Oct. 26,

2011) ("In Texas, there is no special relationship between a mortgagor and mortgagee.")

---

[2] Clamant Terrance P. Gorman operates a law practice as a solo practitioner and requested on numerous occasions that GMAC Mortgage contact him by telephone at his work.  See Servicing Notes at 145, 146, 168, 170. Accordingly, Claimants' allegation that GMAC Mortgage violated the TDCPA by placing telephone calls to Claimant Terry P. Gorman at his work phone number is baseless.  Relatedly, in light of Claimants' self-representation, repeated allegations that Claimants were "required to engage an attorney . . . in this matter," see Amended Complaint at ¶¶ 80, 81, 82, 83, 84, and request for reimbursement of attorneys' fees, see id. at 199, are disingenuous.

(internal quotations and citations omitted); <u>Zoluaga v. BAC Home Loans Servicing, L.P.</u>, No. 4:11-cv-369, 2011 WL 5600377, at *6 (E.D. Tex. Nov. 16, 2011) (same). Thus, "absent a 'special relationship,' any duty to act in good faith is contractual in nature and its breach does not amount to an independent tort." <u>Adams</u>, 2011 WL 5080217, at *7 (internal quotations and citation omitted).

69.    Claimants allege that the relationship between Claimants and GMAC Mortgage is a "special relationship" that "includes the implied covenant to act in a manner of good and fair dealing." <u>See</u> Amended Complaint at ¶¶ 181, 191, 192. This single assertion is contrary to well-established Texas law. Claimants do not allege any other facts establishing that a special relationship between Claimants and GMAC Mortgage existed otherwise. Accordingly, Claimants' claim of lender liability fails as a matter of law and must be dismissed.

## I.    The Request for Declaratory Relief and Civil Conspiracy Claim Must Fail Because Claimants Have Not Demonstrated that They Have a Viable Claim Against GMAC Mortgage

70.    Claimants argue that they are entitled to declaratory relief and assert a claim for civil conspiracy against GMAC Mortgage. Because Claimants have not demonstrated that they have a viable claim against GMAC Mortgage, they cannot be entitled to declaratory relief and the civil conspiracy claim must likewise fail. <u>See</u> <u>In re Residential Capital, LLC</u>, 524 B.R. 465, 487 (Bankr. S.D.N.Y. 2015), <u>aff'd</u> <u>sub</u> <u>nom.</u>, <u>Morse v. ResCap Borrower Claims Trust</u>, No. 15-595-BK, 2016 WL 277732 (2d Cir. Jan. 22, 2016) ("Since the Court finds that not one of [plaintiff's] underlying causes of action is valid, the Court further finds that his request for declaratory . . . relief is unsubstantiated."); <u>Tri v. J.T.T.</u>, 162 S.W.3d 552, 556 (Tex. 2005) (holding that "the elements of an actionable civil conspiracy" claim include "one or more unlawful, overt acts"). Furthermore, "[d]eclaratory relief is not available to settle a dispute that is currently pending before a court." <u>Wells v. Lomita Subdivision</u>, No. 13-07-070-CV, 2008 WL

1901672, at *5 (Tex. Ct. App. Apr. 29, 2008).  Accordingly, Claimants' request for declaratory

relief and civil conspiracy claim fail as a matter of law and must be dismissed.

## NOTICE

The Borrower Trust has provided notice of this Motion in accordance with the Case

Management Procedures Order approved by this Court on May 23, 2012 [Docket No. 141] and

the Claims Procedures Order [Docket No. 3294].

## CONCLUSION

WHEREFORE, the Borrower Trust respectfully requests entry of an Order, substantially

in the form attached here to as **Exhibit 1**, granting the relief requested herein and such other and

further relief as the Court may deem proper.

Dated: February 23, 2016

/s/ Norman S. Rosenbaum
Norman S. Rosenbaum
Jordan A. Wishnew
Benjamin W. Butterfield
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone:  (212) 468-8000
Facsimile:   (212) 468-7900

*Counsel for the ResCap Borrower
Claims Trust*

24