## **EXHIBIT 2**

**Lathrop Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) ) | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | ) ) ) | Chapter 11 |
| Debtors. | ) ) | Jointly Administered |

**DECLARATION OF SARA LATHROP IN SUPPORT OF RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO PROOF OF CLAIM NO. 4834 FILED BY TERRANCE P. GORMAN AND KAREN GORMAN**

I, Sara Lathrop, hereby declare as follows:

1.  I serve as Senior Claims Analyst for the ResCap Borrower Claims Trust (the "**Borrower Trust**"), established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] confirmed in the above-captioned bankruptcy cases (the "**Chapter 11 Cases**") of Residential Capital, LLC ("**ResCap**"), a limited liability company organized under the laws of the state of Delaware, and certain of its subsidiaries (collectively, the "**Debtors**"). In such capacity, I am familiar with the Debtors' claims reconciliation process and the loan servicing operation of GMAC Mortgage, LLC ("**GMAC Mortgage**"). I am over the age of 18 and authorized to submit this declaration (this "**Declaration**") in support of the Borrower Trust's objection (the "**Objection**") to Proof of Claim No. 4834 (the "**Claim**")[1] filed by Terrance P. Gorman and Karen Gorman (together, the "**Claimants**").

2.  I began my association with ResCap in June 2006 as an associate in the Default Division of the loan servicing operation of GMAC Mortgage. In 2008, I became a

---

[1] A copy of the Claim is attached hereto as **Exhibit A**.

1

ny-1222968 v1

Default Quality Control Specialist at GMAC Mortgage, a position that I held until I became a Supervisor in the Default Division in 2009. In 2011, I became a Supervisor in the Loss Mitigation Division of GMAC Mortgage's loan servicing operation, and in February 2012, I became a Manager in that division. In this role, I supervised GMAC Mortgage associates in their efforts to provide Borrowers[2] with loss mitigation options and assisted in the development of GMAC Mortgage's loss mitigation policies. In January of 2013, I became the Regulatory Compliance Manager for ResCap. I became Senior Claims Analyst for ResCap in July 2013 and continued in this role when the ResCap Liquidating Trust (the "**Liquidating Trust**") was established in December 2013.[3] As noted above, my current position is Senior Claims Analyst for the Borrower Trust.

    3.  Except as otherwise indicated, all facts set forth in this Declaration are based upon my familiarity with the Debtors' operations, the Debtors' books and records kept in the course of their regularly conducted business activities (the "**Books and Records**"), the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "**Schedules**"), my review and reconciliation of claims, information learned from my review of relevant documents, and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors and the Liquidating Trust, and the Borrower Trust's professionals and consultants. If I were called upon to testify, I could and would testify competently to the facts set forth in this Declaration on that basis.

---

[2] As used herein, the term "**Borrower**" has the meaning ascribed to it in the Plan.

[3] The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

2

ny-1222968 v1

4.     I or Liquidating Trust personnel have reviewed and analyzed the proof of claim forms and supporting documentation filed by the Claimant.  Since the Plan went effective and the Borrower Trust was established, I, along with members of the Liquidating Trust have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims, and determine the appropriate treatment of the same.  In connection with such review and analysis, where applicable, I or Liquidating Trust personnel, together with professional advisors, have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (vi) the official claims register maintained in the Chapter 11 Cases.

**The Loan and the Property**

5.     On or about May 9, 2005, Claimants executed a Texas Home Equity Adjustable Rate Note (the "**Note**") in favor of First Consolidated Mortgage Company ("**FCMC**").  See Note, attached hereto as **Exhibit B**.  After Claimants executed the Note, FCMC conveyed the Note to IMPAC Funding Corporation ("**IMPAC**").  See id. at 5.

6.     Concurrent with the execution of the Note, Claimants executed a Texas Home Equity Security Instrument ("**Security Instrument**" and, together with the Note, the "**Loan**"), granting a lien on certain real property located at 2812 Browning Drive, Plano, Texas 75093 (the "**Property**").  See Security Instrument, attached hereto as **Exhibit C**.  The Security Instrument named as its beneficiary Mortgage Electronic Registration Systems, Inc. ("**MERS**"), as nominee for FCMC and its successors and assigns.  See id. at 1.

7.     Concurrent with the execution of the Security Instrument, Claimants also executed, among other things:  (i) a Texas Home Equity Adjustable Rate Rider (the "**Adjustable Rate Rider**") which amended and supplemented the Security Instrument; (ii) a Texas Home

3

ny-1222968 v1

Equity Affidavit and Agreement (the "**Home Equity Affidavit**"); and (iii) a Disclosure Statement regarding the Note's adjustable interest rate (the "**Adjustable Rate Statement**"). Copies of the Adjustable Rate Rider, the Home Equity Affidavit, and the Adjustable Rate Statement are attached hereto as **Exhibits D**, **E**, and **F**, respectively.

8. On January 2, 2009, MERS executed an assignment (the "**Assignment**") of its beneficial interest in the Security Instrument to Deutsche Bank National Trust Company, as Indenture Trustee under the Indenture Relating to IMH Assets Corp., Collateralized Asset-Backed Bonds, Series 2005-7 ("**Deutsche Bank**"). See Assignment, attached hereto as **Exhibit G**.

9. GMAC Mortgage began servicing the Loan on December 7, 2005. See Servicing Notes, attached hereto as **Exhibit H**, at 173.

### The Default and Foreclosure Action

10. The Loan first became delinquent when Claimants failed to make the monthly mortgage payment due on January 1, 2006. See Servicing Notes at 9. In response to Claimants' delinquency, GMAC Mortgage sent letters to Claimants setting forth the amount of the delinquency and Claimants' options to avoid foreclosure (each an "**Options Letter**") on February 10, 2006, June 12, 2006, September 13, 2006, October 11, 2006, and November 10, 2006. See Options Letters, attached hereto as **Exhibit I**, at 1-10. GMAC Mortgage also sent Claimants breach of contract letters (each a "**Breach Letter**") on March 6, 2006, July 3, 2006, and December 4, 2006, each of which set forth the amount of Claimants' delinquency as of the date of the letter and provided for thirty (30) day period for Claimants to cure their delinquency before the Claimants' account would be referred to foreclosure. See Breach Letters, attached hereto as **Exhibit J**, at 1-6.

4

11. Between January 2006 and January 2007, Claimants made partial payments to GMAC Mortgage on the Note; however, at no point during this time did Claimants become current on their obligations. See Servicing Notes at 7-9. Accordingly, on January 3, 2007, GMAC Mortgage sent a letter informing Claimants that their account "may be sent to an attorney to initiate foreclosure actions" (the "**RFC Letter**"). See RFC Letter, attached hereto as **Exhibit K**, at 1. GMAC Mortgage officially referred Claimants' account to foreclosure on January 24, 2007. See Servicing Notes at 164.

### The Interest Rate Adjustment

12. On May 11, 2007, GMAC Mortgage sent Claimants a letter (an "**Interest Rate Adjustment Letter**") notifying Claimants that, pursuant to the terms of the Note, the interest rate on the Note would adjust from 9.49% to 12.49% as of July 1, 2007. See Interest Rate Adjustment Letter, attached hereto as **Exhibit L**, at 1. As a result of this Interest Adjustment Letter, Claimants' monthly mortgage payment increased from $2205.33 to $2780.09 as of July 1, 2007.

### The Loan Modification

13. On June 18, 2007, GMAC Mortgage received a fax from Claimants requesting information about options for modifying the Loan. See Servicing Notes at 151. At this point in time, Claimants' account had been delinquent for over 180 days and a foreclosure sale was scheduled for September 2007. See id. On August 30, 2007, GMAC Mortgage received Claimants' completed workout package and began reviewing the package for loss mitigation options in advance of the foreclosure sale scheduled for the following week. See Servicing Notes at 144.

5

14. The following day, August 31, 2007, GMAC approved and mailed Claimants a proposed repayment plan for the Note. See Servicing Notes at 140-143. Claimants agreed to the repayment plan and the foreclosure sale was postponed for 30 days. On October 17, 2007, GMAC Mortgage sent Claimants a letter that offered Claimants a traditional step-rate modification for the Note. See Servicing Notes at 136. In November 2007, Claimants and GMAC Mortgage entered into an agreement modifying the terms of the Note (the "**Loan Modification**"). See Loan Modification, attached hereto as **Exhibit M**.

### Breach of Modified Loan

15. Claimants failed to make the monthly payment due on the modified Note for February 2008. See Servicing Notes at 6. In response to this new delinquency, GMAC Mortgage sent Options Letters to Claimants on March 13, 2008, April 11, 2008, May 12, 2008, June 11, 2008, and July 11, 2008. See Options Letters at 11-20. GMAC Mortgage also sent Breach Letters to Claimants on March 4, 2008, April 2, 2008, May 5, 2008, June 2, 2008, and July 3, 2008. See Breach Letters at 7-16. On September 9, 2008, GMAC Mortgage again referred Claimants' account to foreclosure because payments for June 2008 through September 2008 remained due and owing. See Servicing Notes at 122.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 23, 2016

/s/ Sara Lathrop
Sara Lathrop
Senior Claims Analyst for ResCap Borrower Claims Trust

6

ny-1222968 v1