## Exhibit A

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Claim #4834 Date Filed: 11/15/2012

| Name of Debtor and Case Number: **GMAC Mortgage, LLC, Case No. 12-12032** |  |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**Terrance P. Gorman and Karen Gorman**

Name and address where notices should be sent:

**Terrance P. Gorman**
**2812 Browning Drive**
**Plano, Texas 75093**

Telephone number: 214-802-3477          email: terry@gormanlawtexas.com

Name and address where payment should be sent (if different from above):

**same**

Telephone number: same          email: same

- ☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:** _____
*(If known)*

Filed on: _____

- ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed: $** 500,000.00

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

- ☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Fraud Fraud in the Inducement, Usury, Breach of Contract, Texas Debt Collection Practices Act Violations, Predatory & Unconscionable
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:**

____ ____ ____ ____

**3a. Debtor may have scheduled account as:**
_____
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):**
_____
(See instruction #3b)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate ☐ Motor Vehicle ☐ Other
**Describe:**

**Value of Property: $**_____ **Annual Interest Rate**_____% ☐ Fixed ☐ Variable
(when case was filed)

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim,**

if any: $_____          **Basis for perfection:** _____

**Amount of Secured Claim: $**_____          **Amount Unsecured: $**_____

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$_____ (See instruction #6)

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**9. Signature: (See instruction #9)** Check the appropriate box.

- ■ I am the creditor.
- ☐ I am the creditor's authorized agent.
(Attach copy of power of attorney, if any.)
- ☐ I am the trustee, or the debtor, or their authorized agent.
(See Bankruptcy Rule 3004.)
- ☐ I am a guarantor, surety, indorser, or other codebtor.
(See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Terrance P. Gorman and Karen Gorman
Title: _____
Company: _____          (Signature)          (Date) 11/13/2012
Address and telephone number (if different from notice address above):
same as above
_Karen Gorman_

Telephone number: same as above          Email: same as above

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or bo

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

- ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).
- ☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).
- ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).
- ☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).
- ☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).
- ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

\* *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

RECEIVED
NOV 1 5 2012
KURTZMAN CARSON CONSULTANTS

1212032121115000000000029

# GORMAN LAW OFFICES, P.C.



**terry@gormanlawtexas.com**
**972-235-4700 Phone, 214-540-6609 Fax**

November 14, 2012

***Via Federal Express-Overnight Delivery***

ResCap Claims Processing Center c/o KCC
2335 Alaska Avenue
El Segundo, California 90245

      **Re: GMAC Mortgage, LLC-----Case No. 12-12032**
      Proof of Claim filed by Terrance P. Gorman and Karen Gorman

Dear KCC:

      Please file the enclosed Proof of Claim being filed by the above named creditors against GMAC Mortgage, LLC.

      Sincerely,

                Gorman Law Offices, P.C.

                By: _____
                    Terry P. Gorman
                *Direct all responses regarding this communication*
                  *to the Dallas office referenced below*

Enclosure

*15950 N. Dallas Parkway, Suite 400*              *1875 I Street, NW, Suite 500*
*Dallas, Texas 75248-6628*                  *Washington, D.C. 20006-5425*

GMAC Mortgage, LLC-----Case No. 12-12032

Chapter 11-Southern District of New York

Jointly Administered under Case No. 12-12020 (MG)

# Addendum
# To
# Proof of Claim
# Of
# Terrance P. Gorman and Karen Gorman

Attached hereto and made a part of the foregoing claim is the Plaintiffs' First-Amended Complaint filed by the foregoing creditors against Debtor GMAC Mortgage, LLC:

## IN THE UNITED STATED DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **TERRY PATRICK GORMAN and**<br>**KAREN GORMAN** | § | |
| **Plaintiffs** | § | **CIVIL ACTION No.: 4:12-CV-00098** |
| **vs.** | § | |
| | § | |
| **FIRST CONSOLIDATED MORTGAGE** | § | |
| **COMPANY;** | § | (Removed from the 401st Judicial District |
| **MORTGAGE ELECTRONIC** | § | Court of Collin County, Texas. |
| **REGISTRATION SYSTEMS, INC.;** | § | Cause No. 401-00145-2012) |
| **DEUTSCHE BANK NATIONAL TRUST** | § | |
| **COMPANY, AS INDENTURE TRUSTEE** | § | |
| **UNDER THE INDENTURE RELATING** | § | |
| **TO IMH ASSETS CORP,** | § | |
| **COLLATERALIZED ASSET-BACKED** | § | **Jury Requested** |
| **BONDS, SERIES 2005-7;** | § | |
| **RAY T. DEWITT III; and** | § | |
| **GMAC MORTGAGE, LLC** | § | |
| **Defendants** | § | |

# IN THE UNITED STATED DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| **TERRY PATRICK GORMAN and**<br>**KAREN GORMAN** | § | |
| **Plaintiffs** | § | **CIVIL ACTION No.: 4:12-CV-00098** |
| **vs.** | § | |
| | § | |
| **FIRST CONSOLIDATED MORTGAGE** | § | |
| **COMPANY;** | § | (Removed from the 401st Judicial District |
| **MORTGAGE ELECTRONIC** | § | Court of Collin County, Texas. |
| **REGISTRATION SYSTEMS, INC.;** | § | Cause No. 401-00145-2012) |
| **DEUTSCHE BANK NATIONAL TRUST** | § | |
| **COMPANY, AS INDENTURE TRUSTEE** | § | |
| **UNDER THE INDENTURE RELATING** | § | |
| **TO IMH ASSETS CORP,** | § | |
| **COLLATERALIZED ASSET-BACKED** | § | **Jury Requested** |
| **BONDS, SERIES 2005-7;** | § | |
| **RAY T. DEWITT III; and** | § | |
| **GMAC MORTGAGE, LLC** | § | |
| **Defendants** | § | |

## PLAINTIFFS' FIRST-AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Plaintiffs **TERRY PATRICK GORMAN** and **KAREN GORMAN** to

file this their "Plaintiffs' First-Amended Complaint" as follows:

### PROCEDURAL PREAMBLE

Plaintiffs initiated this action in the Texas District Courts of Collin County, Texas. This action was subsequently removed to this Court. This Plaintiffs' First-Amended Complaint is hereby tendered to this Court to comply with the "more stringent" pleading requirements of the Federal Rules of Civil Procedure and in Response to the pending Motion to Dismiss filed by certain Defendants.

Plaintiffs have filed the forgoing suit to prevent the foreclosure of their Homestead (defined hereafter) and to seek additional relief related to the Home Equity Loan (defined hereafter). Plaintiffs assert the following causes of actions against the following Defendants (as such Defendants are defined hereafter):

**Fraud**--against First Consolidated, DeWitt, MERS, GMAC, and Deutsche Bank;

**Fraud in the Inducement**-against First Consolidated, DeWitt, MERS, GMAC, and Deutsche Bank;

**Usury**-against First Consolidated, DeWitt, MERS, GMAC, and Deutsche Bank;

**Breach of Contract**-against First Consolidated, DeWitt, MERS, Deutsche Bank, and GMAC;

**Violations of the Texas Debt Collections Practices Act**-against MERS, Deutsche Bank and GMAC;

**Predatory and Unconscionable Lender Practices** -against First Consolidated, DeWitt, MERS, Deutsche Bank and GMAC;

**Lender Liability (Special Relationship)**-against First Consolidated, DeWitt, MERS, Deutsche Bank and GMAC;

**Conspiracy**- against First Consolidated, DeWitt, MERS, GMAC, and Deutsche Bank; and

**Declaratory Judgment Relief**

### A. Jurisdiction and Venue

1.    The Court has jurisdiction over the following claims because this is a civil matter, the damages sought meet the jurisdictional requirements of the Court, and this matter has been removed to this Court by certain Defendants.

2.    Venue is proper in this Federal District because it is the District in which the Homestead is located and the District where all or a substantial part of the events giving rise to the claim occurred.

### B. Parties and Service

3.    Plaintiffs **TERRY PATRICK GORMAN** and **KAREN GORMAN** are individuals residing in Collin County, Texas.

4.    Defendant **FIRST CONSOLIDATED MORTGAGE COMPANY** (hereafter, "First Consolidated") is a Texas corporation, residing and conducting business in the State of Texas, and may be served with summons upon its following agent for service of process:

> Ray T. Dewitt III
> 4544 Fairway Ave.
> Dallas, Texas 75219

5.    Defendant **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

("MERS") is a Delaware corporation doing business in the State of Texas, and, has made an

appearance herein.

6.    Defendant **DEUTSCHE BANK NATIONAL TRUSTCOMPANY, AS**

**INDENTURE TRUSTEE UNDER THE INDENTURE RELATING TO IMH ASSETS**

**CORP, COLLATERALIZED ASSET-BACKED BONDS, SERIES 2005-7** (hereafter,

"Deutsche Bank") is a business entity doing business in the State of Texas, and, has made an

appearance herein.

7.    Defendant **RAY T. DeWITT III** (hereafter, "DeWitt") is a resident of the State

of Texas, resides and conducts business in the State of Texas, and may be served with summons

upon him at:

> Ray T. Dewitt III
> 4544 Fairway
> Dallas, Texas 75219

8.    Defendant **GMAC MORTGAGE, LLC** ("GMAC") is a business entity located

and doing business in the State of Texas, and, has made an appearance herein.

## C.   GENERAL BACKGROUND

### TABLE OF CONTENTS OF THE FACTS

a.    **Creation of the Home Equity Loan**
b.    **Ownership and Servicing of the Home Equity Loan**
c.    **Refusal to modify Home Equity Loan as Promised**
d.    **Improper Home Equity Loan Collection Efforts**
e.    **Coercive attempts to collect money not personally due**
f.    **Attempts to improperly foreclose**
g.    **GMAC's Improper Servicing and Foreclosure Efforts**

> **h.   GMAC collects over $12 Billion in Federal Assistance but continues to
> attempt improper foreclosure**
> **i.   DeWitt's potential liability.**

**a.   Creation of the Home Equity Loan**

9.   Plaintiffs Gorman purchased their home located at 2812 Browning Drive, Plano, Collin County, Texas 75093 ("Homestead") in 2001.

10.   When Plaintiffs Gorman purchased their Homestead in 2011, the purchase money loan was made by a party not related to this matter.

11.   The monthly loan payment being paid by Plaintiffs Gorman in 2001 was under $2,000 per month, for a fixed term of thirty (30) years.

12.   In the Spring of 2005, Plaintiff Terry Gorman (sometimes hereafter referred to as, "Terry") was pursued by a representative from First Consolidated, requesting that First Consolidated by allowed to refinance the then current loan on the Homestead, utilizing a Texas home equity loan ("Home Loan Proposal").

13.   During the Home Loan Proposal, Terry was told by representatives of First Consolidated that the proposed home equity loan would have to begin as an adjustable interest rate loan, but that after 9 months to a year, the loan could be adjusted to a fixed term interest rate.

14.   Relying on the representations made by First Consolidated in the Home Loan Proposal, Plaintiffs Gorman agreed to pursue the Home Loan Proposal.

15.   On or about May 9, 2005, in conjunction with the Home Loan Proposal for the Homestead, Plaintiffs Gorman executed that certain debt instrument ("Home Equity Note") payable to the order of Defendant First Consolidated in the amount of $262,500.00.

16.   To secure the Home Equity Note, a lien was placed upon the Homestead ("Home Equity Lien") in purported compliance with the home equity laws of the State of Texas,

**PLAINTIFFS' FIRST-AMENDED COMPLAINT**                                           4
glaw 3.21.2012

including those found under the Texas Constitution in Article XVI, Section 50(a)(6) ("Constitutional Protections").

17.    For the purposes hereof, the terms Home Equity Note and Home Equity Lien may be sometimes collectively referred to as the "Home Equity Loan."

18.    The Home Equity Loan prohibits the recovery of funds or other financial damages from Plaintiffs resulting from any delinquency or default of obligations to make payments otherwise due under the Home Equity Loan.

19.    The Home Equity Loan is non-recourse, in that, the sole remedy to recover any unpaid amounts due under the Home Equity Loan is to obtain a foreclosure of the Homestead (hereafter, the "Non-Recourse Protections").

20.    Although the Home Equity Note was made payable to First Consolidated, MERS was listed as the "beneficiary" under the Home Equity Lien.

21.    During the Home Loan Proposal process, no one ever told Terry that the beneficiary of the Home Equity Lien would be anyone other than First Consolidated.

22.    In May 2005, MERS was a complete stranger to Plaintiffs.

23.    No one from MERS had ever spoken to Plaintiffs during the Home Loan Proposal process.

24.    No one from MERS had ever spoken to Plaintiffs during the consummation of the Home Equity Loan.

25.    If Plaintiffs Gorman had been informed that the beneficiary of the Home Equity Loan was going to be someone other than First Consolidated, Plaintiffs Gorman would not have made the Home Equity Loan.

**PLAINTIFFS' FIRST-AMENDED COMPLAINT**                                                                 5
glaw 3.21.2012

26.     An integral element in the Plaintiffs Gorman's decision to proceed with the Home Loan Proposal was the belief that all the lender parties would be Dallas based parties.

27.     An integral element in the Plaintiffs Gorman's decision to proceed with the Home Loan Proposal was the belief that all the lender parties would be parties that Plaintiffs had met.

28.     Upon information and belief, MERS has never been a Dallas based party.

29.     After Plaintiffs Gorman executed the Home Equity Note, Defendant First Consolidated (acting through its president DeWitt) sold or otherwise conveyed the Home Equity Note to a party called IMPACT Funding Corporation ("IMPACT").

30.     During the Home Loan Proposal process, no one ever told Terry that the Home Equity Note would be immediately assigned to IMPACT.

31.     In May 2005, IMPACT was a complete stranger to Plaintiffs.

32.     No one from IMPACT had ever spoken to Plaintiffs during the Home Loan Proposal process.

33.     No one from IMPACT had ever spoken to Plaintiffs during the consummation of the Home Equity Loan.

34.     If Plaintiffs Gorman had been informed that the Home Equity Loan was going to be immediately conveyed to someone other than First Consolidated, Plaintiffs Gorman would not have made the Home Equity Loan.

35.     An integral element in the Plaintiffs Gorman's decision to proceed with the Home Equity Loan was the belief that all the lender parties would be Dallas based parties.

36.     An integral element in the Plaintiffs Gorman's decision to proceed with the Home Equity Loan was the belief that all the lender parties would be parties that Plaintiffs had met.

37.    During the Home Loan Proposal process, specific representations were made by Defendant First Consolidated to Plaintiff Terry that:

a)    although the Home Equity Note had an adjustable interest rate provision, the interest rate would never go above nine percent (9%) because the interest rate would be subsequently adjusted to a fixed amount; and

b)    the Home Equity Note would be sold to parties that would be willing to convert the Home Equity Note to a fixed interest rate.

(For the purposes hereof, the foregoing statements shall be referred to as the "Loan Representations").

38.    At the closing of the Home Equity Loan, Plaintiffs Gorman paid thousands and thousands of dollars in fees which were required by First Consolidated (hereafter, "Loan Fees").

39.    The Home Equity Note was signed on the same day that Plaintiffs Gorman received a final itemized disclosure of the actual fees, points, interest, costs, and charges that were charged at the closing of the Home Equity Loan.

40.    Plaintiffs Gorman completed the final version of the loan application for the Home Equity Loan the same day that Plaintiffs Gorman signed all the loan documents for the Home Equity Loan.

41.    The day that Plaintiffs Gorman signed all the loan documents for the Home Equity Loan, Plaintiffs Gorman did not ever receive a written notice stating that:

"NOTICE CONCERNING EXTENSIONS OF CREDIT DEFINED BY SECTION 50(a)(6), ARTICLE XVI, TEXAS CONSTITUTION:

"SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION ALLOWS CERTAIN LOANS TO BE SECURED AGAINST THE EQUITY

IN YOUR HOME.  SUCH LOANS ARE COMMONLY KNOWN AS EQUITY LOANS.  IF YOU DO NOT REPAY THE LOAN OR IF YOU FAIL TO MEET THE TERMS OF THE LOAN, THE LENDER MAY FORECLOSE AND SELL YOUR HOME.   THE CONSTITUTION PROVIDES THAT:

"(A) THE LOAN MUST BE VOLUNTARILY CREATED WITH THE CONSENT OF EACH OWNER OF YOUR HOME AND EACH OWNER'S SPOUSE;

"(B) THE PRINCIPAL LOAN AMOUNT AT THE TIME THE LOAN IS MADE MUST NOT EXCEED AN AMOUNT THAT, WHEN ADDED TO THE PRINCIPAL BALANCES OF ALL OTHER LIENS AGAINST YOUR HOME, IS MORE THAN 80 PERCENT OF THE FAIR MARKET VALUE OF YOUR HOME;

"(C) THE LOAN MUST BE WITHOUT RECOURSE FOR PERSONAL LIABILITY AGAINST YOU AND YOUR SPOUSE UNLESS YOU OR YOUR SPOUSE OBTAINED THIS EXTENSION OF CREDIT BY ACTUAL FRAUD;

"(D) THE LIEN SECURING THE LOAN MAY BE FORECLOSED UPON ONLY WITH A COURT ORDER;

"(E) FEES AND CHARGES TO MAKE THE LOAN MAY NOT EXCEED 3 PERCENT OF THE LOAN AMOUNT;

"(F) THE LOAN MAY NOT BE AN OPEN-END ACCOUNT THAT MAY BE DEBITED FROM TIME TO TIME OR UNDER WHICH CREDIT MAY BE EXTENDED FROM TIME TO TIME UNLESS IT IS A HOME EQUITY LINE OF CREDIT;

"(G) YOU MAY PREPAY THE LOAN WITHOUT PENALTY OR CHARGE;

"(H) NO ADDITIONAL COLLATERAL MAY BE SECURITY FOR THE LOAN;

"(I) THE LOAN MAY NOT BE SECURED BY HOMESTEAD PROPERTY THAT IS DESIGNATED FOR AGRICULTURAL USE AS OF THE DATE OF CLOSING, UNLESS THE AGRICULTURAL HOMESTEAD PROPERTY IS USED PRIMARILY FOR THE PRODUCTION OF MILK;

"(J) YOU ARE NOT REQUIRED TO REPAY THE LOAN EARLIER THAN AGREED SOLELY BECAUSE THE FAIR MARKET VALUE OF YOUR HOME DECREASES OR BECAUSE YOU DEFAULT ON ANOTHER LOAN THAT IS NOT SECURED BY YOUR HOME;

"(K) ONLY ONE LOAN DESCRIBED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION MAY BE SECURED WITH YOUR HOME AT ANY GIVEN TIME;

"(L) THE LOAN MUST BE SCHEDULED TO BE REPAID IN PAYMENTS THAT EQUAL OR EXCEED THE AMOUNT OF ACCRUED INTEREST FOR EACH PAYMENT PERIOD;

"(M) THE LOAN MAY NOT CLOSE BEFORE 12 DAYS AFTER YOU SUBMIT A LOAN APPLICATION TO THE LENDER OR BEFORE 12 DAYS AFTER YOU RECEIVE THIS NOTICE, WHICHEVER DATE IS LATER; AND MAY NOT WITHOUT YOUR CONSENT CLOSE BEFORE ONE BUSINESS DAY AFTER THE DATE ON WHICH YOU RECEIVE A COPY OF YOUR LOAN APPLICATION IF NOT PREVIOUSLY PROVIDED AND A FINAL ITEMIZED DISCLOSURE OF THE ACTUAL FEES, POINTS, INTEREST, COSTS, AND CHARGES THAT WILL BE CHARGED AT CLOSING; AND IF YOUR HOME WAS SECURITY FOR THE SAME TYPE OF LOAN WITHIN THE PAST YEAR, A NEW LOAN SECURED BY THE SAME PROPERTY MAY NOT CLOSE BEFORE ONE YEAR HAS PASSED FROM THE CLOSING DATE OF THE OTHER LOAN, UNLESS ON OATH YOU REQUEST AN EARLIER CLOSING DUE TO A DECLARED STATE OF EMERGENCY;

"(N) THE LOAN MAY CLOSE ONLY AT THE OFFICE OF THE LENDER, TITLE COMPANY, OR AN ATTORNEY AT LAW;

"(O) THE LENDER MAY CHARGE ANY FIXED OR VARIABLE RATE OF INTEREST AUTHORIZED BY STATUTE;

"(P) ONLY A LAWFULLY AUTHORIZED LENDER MAY MAKE LOANS DESCRIBED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION;

"(Q) LOANS DESCRIBED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION MUST:

"(1) NOT REQUIRE YOU TO APPLY THE PROCEEDS TO ANOTHER DEBT EXCEPT A DEBT THAT IS SECURED BY YOUR HOME OR OWED TO ANOTHER LENDER;

"(2) NOT REQUIRE THAT YOU ASSIGN WAGES AS SECURITY;

"(3) NOT REQUIRE THAT YOU EXECUTE INSTRUMENTS WHICH HAVE BLANKS FOR SUBSTANTIVE TERMS OF AGREEMENT LEFT TO BE FILLED IN;

"(4) NOT REQUIRE THAT YOU SIGN A CONFESSION OF JUDGMENT OR POWER OF ATTORNEY TO ANOTHER PERSON TO CONFESS JUDGMENT OR APPEAR IN A LEGAL PROCEEDING ON YOUR BEHALF;

"(5) PROVIDE THAT YOU RECEIVE A COPY OF YOUR FINAL LOAN APPLICATION AND ALL EXECUTED DOCUMENTS YOU SIGN AT CLOSING;

"(6) PROVIDE THAT THE SECURITY INSTRUMENTS CONTAIN A DISCLOSURE THAT THIS LOAN IS A LOAN DEFINED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION;

"(7) PROVIDE THAT WHEN THE LOAN IS PAID IN FULL, THE LENDER WILL SIGN AND GIVE YOU A RELEASE OF LIEN OR AN ASSIGNMENT OF THE LIEN, WHICHEVER IS APPROPRIATE;

"(8) PROVIDE THAT YOU MAY, WITHIN 3 DAYS AFTER CLOSING, RESCIND THE LOAN WITHOUT PENALTY OR CHARGE;

"(9) PROVIDE THAT YOU AND THE LENDER ACKNOWLEDGE THE FAIR MARKET VALUE OF YOUR HOME ON THE DATE THE LOAN CLOSES; AND

"(10) PROVIDE THAT THE LENDER WILL FORFEIT ALL PRINCIPAL AND INTEREST IF THE LENDER FAILS TO COMPLY WITH THE LENDER'S OBLIGATIONS UNLESS THE LENDER CURES THE FAILURE TO COMPLY AS PROVIDED BY SECTION 50(a)(6)(Q)(x), ARTICLE XVI, OF THE TEXAS CONSTITUTION; AND

"(R) IF THE LOAN IS A HOME EQUITY LINE OF CREDIT:

"(1) YOU MAY REQUEST ADVANCES, REPAY MONEY, AND REBORROW MONEY UNDER THE LINE OF CREDIT;

"(2) EACH ADVANCE UNDER THE LINE OF CREDIT MUST BE IN AN AMOUNT OF AT LEAST $4,000;

"(3) YOU MAY NOT USE A CREDIT CARD, DEBIT CARD, OR SIMILAR DEVICE, OR PREPRINTED CHECK THAT YOU DID NOT SOLICIT, TO OBTAIN ADVANCES UNDER THE LINE OF CREDIT;

"(4) ANY FEES THE LENDER CHARGES MAY BE CHARGED AND COLLECTED ONLY AT THE TIME THE LINE OF CREDIT IS ESTABLISHED AND THE LENDER MAY NOT CHARGE A FEE IN CONNECTION WITH ANY ADVANCE;

"(5) THE MAXIMUM PRINCIPAL AMOUNT THAT MAY BE EXTENDED, WHEN ADDED TO ALL OTHER DEBTS SECURED BY YOUR HOME, MAY NOT EXCEED 80 PERCENT OF THE FAIR MARKET VALUE OF YOUR HOME ON THE DATE THE LINE OF CREDIT IS ESTABLISHED;

"(6) IF THE PRINCIPAL BALANCE UNDER THE LINE OF CREDIT AT ANY TIME EXCEEDS 50 PERCENT OF THE FAIR MARKET VALUE OF YOUR HOME, AS DETERMINED ON THE DATE THE LINE OF CREDIT IS ESTABLISHED, YOU MAY NOT CONTINUE TO REQUEST ADVANCES UNDER THE LINE OF CREDIT UNTIL THE BALANCE IS LESS THAN 50 PERCENT OF THE FAIR MARKET VALUE; AND

"(7) THE LENDER MAY NOT UNILATERALLY AMEND THE TERMS OF THE LINE OF CREDIT.

"THIS NOTICE IS ONLY A SUMMARY OF YOUR RIGHTS UNDER THE TEXAS CONSTITUTION. YOUR RIGHTS ARE GOVERNED BY SECTION 50, ARTICLE XVI, OF THE TEXAS CONSTITUTION, AND NOT BY THIS NOTICE."

42.    Since the creation of the Home Equity Loan, Plaintiffs Gorman have made significant payments to be applied to interest and principal due under the Home Equity Loan.

**b.    Ownership and Servicing of the Home Equity Loan.**

43.    Upon information and belief, subsequent to the making of the Home Equity Loan, the Home Equity Note was further subsequently assigned (for a profit) to Deutsche Bank, but it is unclear whether the assignor on such assignment had any interest in the Home Equity Note.

44.    Upon information and belief, subsequent to the making of the Home Equity Loan, the Home Equity Lien was purportedly assigned to Deutsche Bank, but it is unclear whether the assignor on such assignment had any interest in the Home Equity Lien.

45.    Although the Home Equity Loan is purportedly owned by Deutsche Bank, there is no indication that the Home Equity Note was ever assigned by First Consolidated or Impact Funding to Deutsche Bank.

46.    Upon information and belief, subsequent to the making of the Home Equity Loan, the servicing of the Home Equity Loan was purportedly assigned to GMAC, whereby GMAC would receive a fee for the servicing of the Home Equity Loan.

47.    Plaintiffs Gorman have no knowledge whether the purported assignment (of the servicing) to GMAC was made by anyone with authority to make such assignment.

**c.    Refusal to modify Home Equity Loan as Promised**

48.    After some period of making the monthly payments due under the Home Equity Loan, Plaintiff Terry contacted GMAC (acting as the agent for MERS and Deutsche Bank) and requested that the Home Equity Loan be modified to a fixed interest rate.

49.    GMAC (acting as the agent for MERS and Deutsche Bank) informed Plaintiff Terry that there was no agreement to modify the Home Equity Loan into a fixed interest rate.

50.    GMAC (acting as the agent for MERS and Deutsche Bank) also informed Plaintiff Terry that the then holder of the Home Equity Note and the Home Equity Lien (upon information and belief, at that point in time being Deutsche Bank and MERS, respectfully) were not obligated to modify the Home Equity Loan into a fixed interest rate.

**PLAINTIFFS' FIRST-AMENDED COMPLAINT**                                                                 12
glaw 3.21.2012

51.    After further discussions between Plaintiff Terry and GMAC (acting as the agent for MERS and Deutsche Bank), GMAC did agree to a temporary reduction in the amount of the monthly mortgage payments.

52.    At that time, Plaintiff Terry was told by GMAC (acting as the agent for MERS and Deutsche Bank) that the Home Equity Loan would subsequently be modified to a fixed interest rate ("Modification Representation").

53.    However, GMAC (acting as the agent for MERS and Deutsche Bank) subsequently refused to modify the Home Equity Loan to a fixed interest rate.

54.    As recently as during the Fall of 2011, Plaintiff Terry had a direct conversation with a representative for GMAC (acting as the agent for MERS and Deutsche Bank) regarding whether the Home Equity Loan would be modified as promised.

55.    During said Fall 2011 discussion, the representative for GMAC (acting as the agent for MERS and Deutsche Bank) bluntly told Plaintiff Terry that "there would never be a modification of the Home Equity Loan, and they would just go foreclose as soon as possible."

56.    Due to the failure to abide by the Loan Representations, the monthly payments on the Home Equity Loan skyrocketed, and a fixed rate of interest was never imposed.

57.    Due to the failure to abide by the Loan Representations and without the promised modification of the Home Equity Loan, the monthly payments grew to over $3,000 per month because of interest rate increases.

58.    Had Plaintiffs ever been informed that their monthly payments due under the Home Equity Loan would rise to over $3,000 per month, Plaintiffs Gorman never would have entered into the Home Equity Loan.

**PLAINTIFFS' FIRST-AMENDED COMPLAINT**
glaw 3.21.2012

13

**d.      Improper Home Equity Loan Collection Efforts**

59.      Beginning at some point in time and continuing until the late Fall of 2011, GMAC (acting as the agent for MERS and Deutsche Bank) began demanded (from Plaintiffs Gorman) payments purportedly personally due under the Home Equity Note.

60.      The foregoing described demands made by GMAC (acting as the agent for MERS and Deutsche Bank) (many of which were made through seemingly endless phone calls), were harassing in nature.

61.      The foregoing described phone calls made by GMAC (acting as the agent for MERS and Deutsche Bank) were made to Plaintiffs at Plaintiffs' home throughout the day, with multiple calls the same day.

62.      The foregoing described phone calls made by GMAC (acting as the agent for MERS and Deutsche Bank) were made to Plaintiffs at Plaintiffs' home late in the evening.

63.      The foregoing described phone calls made by GMAC (acting as the agent for MERS and Deutsche Bank) were made to Plaintiffs' relatives at such relatives' home.

64.      The foregoing described phone calls made by GMAC (acting as the agent for MERS and Deutsche Bank) were made to Plaintiff Terry Gorman at his place of work.

65.      During the foregoing time period, Plaintiffs received numerous and seemingly endless letters demanding payments on the Home Equity Note, from GMAC (acting as the agent for MERS and Deutsche Bank).

66.      The above-described letters demanded personal payments under the Home Equity Note.

67.      The calls and letters made Plaintiffs Gorman feel as if vultures were circling the Plaintiffs' Homestead, just waiting for the Plaintiffs to step outside.

**PLAINTIFFS' FIRST-AMENDED COMPLAINT**                                                        14
glaw 3.21.2012

68.     As the purported servicing agent for the Home Equity Note, the foregoing described harassing demands made by GMAC were made as the agent, and on behalf, of the owner of the Home Equity Note at the time of such demands.

**e.      Coercive attempts to collect money not personally due**

69.     As stated, the foregoing demands made by GMAC (acting as the agent for MERS and Deutsche Bank) included demands that Plaintiffs Gorman make personal payments purportedly due under the Home Equity Note.

70.     Such demands were made by GMAC (acting as the agent for MERS and Deutsche Bank) despite the fact that Plaintiffs Gorman are not personally liable under the Home Equity Note.

**f.      Attempts to improperly foreclose**

71.     Without issuing the notice and cure provisions required by the Home Equity Loan and the Constitutional Protections, the Home Equity Loan was declared to be in default by Deutsche Bank and GMAC (acting as the agent for MERS and Deutsche Bank).

72.     Ever since, Deutsche Bank and GMAC (acting as the agent for MERS and Deutsche Bank) have been attempting to foreclose on the Plaintiffs' Homestead.

73.     Deutsche Bank and GMAC (acting as the agent for MERS and Deutsche Bank) have pursed an improper foreclosure sale of the Homestead by an attempted use of the Home Equity Lien.

74.     Deutsche Bank and GMAC (acting as the agent for MERS and Deutsche Bank) have:

        (a)     failed to establish that the Home Equity Lien was properly formed in

                accordance with the requirements of Chapter 50(a)(6) of the Constitution

**PLAINTIFFS' FIRST-AMENDED COMPLAINT**                                                  15
glaw 3.21.2012

of the State of Texas;

(b)    failed to provide the notices of default, notices of opportunity to cure, notices of intent to accelerate, and notice of acceleration required by the Constitutional Protections;

(c)    attempted to foreclose on the Homestead, notwithstanding the failure to honor the Loan Representations; and

(d)    attempted to foreclose on the Homestead, notwithstanding the failure to honor the Modification Representation.

75.    Notwithstanding the foregoing failures, Deutsche Bank and GMAC (acting as the agent for MERS and Deutsche Bank) have sought to foreclosure the Homestead.

76.    In pursuing improper foreclosure efforts against the Homestead, Deutsche Bank and GMAC (acting as the agent for MERS and Deutsche Bank) have violated the Constitutional Protections afforded Plaintiffs as to the Homestead.

77.    In pursuing improper foreclosure efforts against the Plaintiffs' Homestead, Deutsche Bank and GMAC (acting as the agent for MERS and Deutsche Bank) have attempted to coerce and extort payments from Plaintiffs Gorman.

78.    Deutsche Bank and GMAC (acting as the agent for MERS and Deutsche Bank) have publically refuted, repudiated, and violated the Non-Recourse Protections by seeking personal payments from Plaintiffs.

79.    In purposefully violating the Non-Recourse Protections, Deutsche Bank and GMAC (acting as the agent for MERS and Deutsche Bank) have attempted to coerce and extort payments from Plaintiffs.

80.    To prevent the Defendants Deutsche Bank and GMAC (acting as the agent for MERS and Deutsche Bank) from improperly foreclosing on Plaintiffs' Homestead, Plaintiffs were required to engage an attorney to represent Plaintiffs in this matter.

81.    To protect Plaintiffs from the improper and illegal efforts of Deutsche Bank and GMAC (acting as the agent for MERS and Deutsche Bank) to collect funds not due, Plaintiffs were required to engage an attorney to represent Plaintiffs in this matter.

82.    To redress the violations by Deutsche Bank and GMAC (acting as the agent for MERS and Deutsche Bank) of the Constitutional Protections, Plaintiffs were required to engage an attorney to represent Plaintiffs in this matter.

83.    To protect Plaintiffs Gorman from the improper and illegal efforts of Deutsche Bank and GMAC (acting as the agent for MERS and Deutsche Bank) to collect funds from Plaintiffs Gorman which they are not liable for, Plaintiffs were required to engage an attorney to represent Plaintiffs in this matter.

84.    To prevent Deutsche Bank and GMAC (acting as the agent for MERS and Deutsche Bank) from extorting and coercing money from Plaintiffs, Plaintiffs were required to engage an attorney to represent Plaintiffs in this matter.

85. In doing so, Plaintiffs have incurred damages to defend such actions against Plaintiffs.

**g.    GMAC's Improper Servicing and Foreclosure Efforts**

86.    During the above-described time period that GMAC was improperly coercing Plaintiffs Gorman and attempting to improperly foreclosure on the Plaintiffs Homestead. GMAC was busy with similar illegal acts regarding other home mortgages being serviced by GMAC across the county.

**PLAINTIFFS' FIRST-AMENDED COMPLAINT**                                                                17
glaw 3.21.2012

87.     During the relevant time periods, GMAC was the recipient of various cease and desist orders from attorneys general of various states and federal regulators.

88.     During the relevant time periods, GMAC was also named as a defendant in various class action suits by homeowners being mistreated by GMAC around the country.

89.     Plaintiffs Gorman have themselves been alerted in writing that Plaintiffs may have been the victim of GMAC's improper servicing actions, including overcharging of fees.

**h.      GMAC collects over $12 Billion in Federal Assistance but continues to attempt improper foreclosure**

90.     During the relevant time period, GMAC received over $12.5 Billion in financial assistance from the United States.

91.     Notwithstanding the "bail out" of GMAC, during that same time period, and thereafter, GMAC has continued to pursue its improper foreclosure efforts as to Plaintiffs' Homestead.

92.     Although the principal amount due under the Home Equity Note is less than $262,500.00, the value of Plaintiffs' Homestead is near $400,000.00, thereby creating a differential that creates a profit motive for GMAC (acting as the agent for MERS and Deutsche Bank) to take the Homestead away from Plaintiffs.

93.     Had Plaintiffs Gorman known that the Non-Recourse Protections were knowingly made by First Consolidated for the sole purpose of enticing Plaintiffs into completing the Home Equity Loan so that such Loan could subsequently be sold for a profit to Deutsche Bank, Plaintiffs Gorman would have never entered into the Home Equity Loan.

94.     Had Plaintiffs Gorman known that the Loan Representations were knowingly made by First Consolidated for the sole purpose of enticing Plaintiffs into completing the Home

Equity Loan so that such Loan could subsequently be sold for a profit to Deutsche Bank, Plaintiffs Gorman would have never entered into the Home Equity Loan.

95.    Had Plaintiffs Gorman known that the Modification Representations were knowingly made by GMAC (acting as the agent for MERS and Deutsche Bank) for the sole purpose of enticing Plaintiffs into continuing to make payments under the Home Equity Loan, Plaintiffs Gorman would have never continued to make payments under the Home Equity Loan.

96.    Upon information and believe, First Consolidated, MERS, Deutsche Bank, and GMAC acted together to complete the acts taken against Plaintiffs Gorman, so that each party could financially profit at the expense of Plaintiffs Gorman.

**i.    DeWitt's potential liability.**

97.    As the signatory on the Home Equity Note for First Consolidated and as the purported lone remaining shareholder of First Consolidated, the actions complained of above as to First Consolidated are also asserted herein against Defendant DeWitt.

99.    All conditions precedent to Plaintiffs bringing these claims have been met.

**D.   Plaintiffs Gorman's Causes of Action**

100.   Plaintiffs Gorman incorporate by reference the facts set forth in Section C hereof.

**Count 1: Fraud by First Consolidated**

101.   First Consolidated knowingly made the referenced false statements to Plaintiffs Gorman during the Home Loan Proposal process, which Plaintiffs Gorman relied upon, which turned out indeed to be false, and which had Plaintiffs Gorman known, Plaintiffs would not have entered into the Home Equity Loan.

102.    First Consolidated knowingly made the false Loan Representations to Plaintiffs Gorman, which Plaintiffs Gorman relied upon, which turned out indeed to be false, and which had Plaintiffs Gorman known, Plaintiffs would not have entered into the Home Equity Loan.

103.    First Consolidated knowingly included MERS in the formation of the Home Equity Loan and purposely failed to inform Plaintiffs Gorman of the involvement of MERS. Had Plaintiffs Gorman known of the involvement of MERS with the formation of the Home Equity Loan, Plaintiffs would not have entered into the Home Equity Loan.

104.    First Consolidated knowingly assigned the Home Equity Note to IMPACT and purposely failed to inform Plaintiffs Gorman of the involvement of IMPACT. Had Plaintiffs Gorman known of the planned sale to IMPACT, Plaintiffs would not have entered into the Home Equity Loan.

105.    First Consolidated knowingly created the Home Equity Loan without following the Texas Constitutional Protections. Had Plaintiffs Gorman known that the Home Equity Loan was knowingly formed without complying with the Texas Constitutional Protections, Plaintiffs would not have entered into the Home Equity Loan.

106.    Plaintiffs have been financially harmed as a result of the actions taken by First Consolidated, and Plaintiffs Gorman sue First Consolidated for damages based upon the foregoing stated causes of action, in an amount within the jurisdictional limits of this Court for which Plaintiffs now seeks from Defendant First Consolidated.

### Count 2: Fraud by MERS

107.    MERS knowingly failed to disclose its involvement in the formation of the Home Equity Loan. Had Plaintiffs Gorman known of such involvement by MERS, Plaintiffs would not have entered into the Home Equity Loan.

**PLAINTIFFS' FIRST-AMENDED COMPLAINT**                                                        20

108.    MERS knowingly allowed First Consolidated to make the referenced false statements to Plaintiffs Gorman during the Home Loan Proposal process, which Plaintiffs Gorman relied upon, which turned out indeed to be false, and which had Plaintiffs Gorman known, Plaintiffs would not have entered into the Home Equity Loan.

109.    MERS knowingly allowed First Consolidated to knowingly make the false Loan Representations to Plaintiffs Gorman, which Plaintiffs Gorman relied upon, which turned out indeed to be false, and which had Plaintiffs Gorman known, Plaintiffs would not have entered into the Home Equity Loan.

110.    MERS knowingly allowed First Consolidated to create the Home Equity Loan without following the Texas Constitutional Protections. Had Plaintiffs Gorman known that the Home Equity Loan was knowingly formed without complying with the Texas Constitutional Protections, Plaintiffs would not have entered into the Home Equity Loan.

111.    MERS (through its agent GMAC) knowingly made the false Modification Representations to Plaintiffs Gorman, which Plaintiffs Gorman relied upon, which turned out indeed to be false, and which had Plaintiffs Gorman known, Plaintiffs would not have continued to make payments under the Home Equity Loan.

112.    Plaintiffs have been financially harmed as a result of the actions taken by MERS, and Plaintiffs Gorman sue MERS for damages based upon the foregoing stated causes of action, in an amount within the jurisdictional limits of this Court for which Plaintiffs now seeks from Defendant MERS.

### Count 3: Fraud by Deutsche Bank

113.    Deutsche Bank knowingly made the false Modification Representations to Plaintiffs Gorman, which Plaintiffs Gorman relied upon, which turned out indeed to be false, and

**PLAINTIFFS' FIRST-AMENDED COMPLAINT**                                21
glaw 3.21.2012

which had Plaintiffs Gorman known, Plaintiffs would not have continued to make payments under the Home Equity Loan.

114.    Plaintiffs have been financially harmed as a result of the actions taken by Deutsche Bank, and Plaintiffs Gorman sue Deutsche Bank for damages based upon the foregoing stated causes of action, in an amount within the jurisdictional limits of this Court for which Plaintiffs now seeks from Defendant Deutsche Bank.

### Count 4: Fraud by GMAC

115.    GMAC knowingly made the false Modification Representations to Plaintiffs Gorman, which Plaintiffs Gorman relied upon, which turned out indeed to be false, and which had Plaintiffs Gorman known, Plaintiffs would not have continued to make payments under the Home Equity Loan.

116.    Plaintiffs have been financially harmed as a result of the actions taken by GMAC, and Plaintiffs Gorman sue GMAC for damages based upon the foregoing stated causes of action, in an amount within the jurisdictional limits of this Court for which Plaintiffs now seeks from Defendant GMAC.

### Count 5: Fraud in the Inducement by First Consolidated

117.    First Consolidated knowingly made the referenced false statements to Plaintiffs Gorman during the Home Loan Proposal process for the sole purpose of enticing Plaintiffs Gorman entering into the Home Equity Loan Process, which Plaintiffs Gorman relied upon, which turned out indeed to be false, and which had Plaintiffs Gorman known, Plaintiffs would not have entered into the Home Equity Loan.

118.    First Consolidated knowingly made the false Loan Representations to Plaintiffs Gorman for the sole purpose of enticing Plaintiffs Gorman entering into the Home Equity Loan,

**PLAINTIFFS' FIRST-AMENDED COMPLAINT**                                                          22
glaw 3.21.2012

which Plaintiffs Gorman relied upon, which turned out indeed to be false, and which had

Plaintiffs Gorman known, Plaintiffs would not have entered into the Home Equity Loan.

119.    First Consolidated knowingly included MERS in the formation of the Home

Equity Loan and purposely failed to inform Plaintiffs Gorman of the involvement of MERS for

the sole purpose of enticing Plaintiffs Gorman entering into the Home Equity Loan. Had

Plaintiffs Gorman known of the involvement of MERS with the formation of the Home Equity

Loan, Plaintiffs would not have entered into the Home Equity Loan.

120.    First Consolidated knowingly assigned the Home Equity Note to IMPACT and

purposely failed to inform Plaintiffs Gorman of the involvement of IMPACT for the sole purpose

of enticing Plaintiffs Gorman entering into the Home Equity Loan. Had Plaintiffs Gorman

known of the planned sale to IMPACT, Plaintiffs would not have entered into the Home Equity

Loan.

121.    First Consolidated knowingly created the Home Equity Loan without following

the Texas Constitutional Protections for the sole purpose of enticing Plaintiffs Gorman entering

into the Home Equity Loan.  Had Plaintiffs Gorman known that the Home Equity Loan was

knowingly formed without complying with the Texas Constitutional Protections, Plaintiffs would

not have entered into the Home Equity Loan.

122.    Plaintiffs have been financially harmed as a result of the actions taken by First

Consolidated, and Plaintiffs Gorman sue First Consolidated for damages based upon the

foregoing stated causes of action, in an amount within the jurisdictional limits of this Court for

which Plaintiffs now seeks from Defendant First Consolidated.

**Count 6: Fraud in the Inducement by MERS**

123.    MERS knowingly failed to disclose its involvement in the formation of the Home

Equity Loan for the sole purpose of enticing Plaintiffs Gorman entering into the Home Equity

Loan. Had Plaintiffs Gorman known of such involvement by MERS, Plaintiffs would not have

entered into the Home Equity Loan.

124.    MERS knowingly allowed First Consolidated to make the referenced false

statements to Plaintiffs Gorman during the Home Loan Proposal process for the sole purpose of

enticing Plaintiffs Gorman entering into the Home Equity Loan process, which Plaintiffs

Gorman relied upon, which turned out indeed to be false, and which had Plaintiffs Gorman

known, Plaintiffs would not have entered into the Home Equity Loan.

125.    MERS knowingly allowed First Consolidated to knowingly make the false Loan

Representations to Plaintiffs Gorman for the sole purpose of enticing Plaintiffs Gorman entering

into the Home Equity Loan, which Plaintiffs Gorman relied upon, which turned out indeed to be

false, and which had Plaintiffs Gorman known, Plaintiffs would not have entered into the Home

Equity Loan.

126.    MERS knowingly allowed First Consolidated to create the Home Equity Loan

without following the Texas Constitutional Protections for the sole purpose of enticing Plaintiffs

Gorman entering into the Home Equity Loan. Had Plaintiffs Gorman known that the Home

Equity Loan was knowingly formed without complying with the Texas Constitutional

Protections, Plaintiffs would not have entered into the Home Equity Loan.

127.    MERS (through its agent GMAC) knowingly made the false Modification

Representations to Plaintiffs Gorman for the sole purpose of enticing Plaintiffs Gorman to

continue to make payments under the Home Equity Loan, which Plaintiffs Gorman relied upon,

**PLAINTIFFS' FIRST-AMENDED COMPLAINT**                                                                          **24**
glaw 3.21.2012

which turned out indeed to be false, and which had Plaintiffs Gorman known, Plaintiffs would not have continued to make payments under the Home Equity Loan.

128.    Plaintiffs have been financially harmed as a result of the actions taken by MERS, and Plaintiffs Gorman sue MERS for damages based upon the foregoing stated causes of action, in an amount within the jurisdictional limits of this Court for which Plaintiffs now seeks from Defendant MERS.

### Count 7: Fraud in the Inducement by Deutsche Bank

129.    Deutsche Bank knowingly made the false Modification Representations to Plaintiffs Gorman for the sole purpose of enticing Plaintiffs Gorman to continue to make payments under the Home Equity Loan, which Plaintiffs Gorman relied upon, which turned out indeed to be false, and which had Plaintiffs Gorman known, Plaintiffs would not have continued to make payments under the Home Equity Loan.

130.    Plaintiffs have been financially harmed as a result of the actions taken by Deutsche Bank, and Plaintiffs Gorman sue Deutsche Bank for damages based upon the foregoing stated causes of action, in an amount within the jurisdictional limits of this Court for which Plaintiffs now seeks from Defendant Deutsche Bank.

### Count 8: Fraud in the Inducement by GMAC

131.    GMAC knowingly made the false Modification Representations to Plaintiffs Gorman for the sole purpose of enticing Plaintiffs Gorman to continue to make payments under the Home Equity Loan, which Plaintiffs Gorman relied upon, which turned out indeed to be false, and which had Plaintiffs Gorman known, Plaintiffs would not have continued to make payments under the Home Equity Loan.

**PLAINTIFFS' FIRST-AMENDED COMPLAINT**
glaw 3.21.2012

25

132.    Plaintiffs have been financially harmed as a result of the actions taken by GMAC, and Plaintiffs Gorman sue GMAC for damages based upon the foregoing stated causes of action, in an amount within the jurisdictional limits of this Court for which Plaintiffs now seeks from Defendant GMAC.

### Count 9: Usury by First Consolidated

133.    By charging Loan Fees far greater than the amount of fees and interest allowed under the laws of the State of Texas, First Consolidated violated the Texas Usury laws in completing the formation of the Home Equity Loan.

134.    Plaintiffs have been financially harmed as a result of the actions taken by First Consolidated, and Plaintiffs Gorman sue First Consolidated for damages based upon the foregoing stated causes of action, in an amount within the jurisdictional limits of this Court for which Plaintiffs now seeks from Defendant First Consolidated.

### Count 10: Usury by MERS

135.    By knowingly allowing First Consolidated to charge Loan Fees far greater than the amount of fees and interest allowed under the laws of the State of Texas, MERS violated the Texas Usury laws in completing the formation of the Home Equity Loan.

136.    MERS attempted to collect funds from Plaintiffs Gorman personally, for which Plaintiffs Gorman were not personally liable.  In doing so, MERS violated Texas Usury Laws.

137.    MERS attempted to collect loan payments that were not legally due. In doing so, MERS violated Texas Usury Laws

138.    Plaintiffs have been financially harmed as a result of the actions taken by MERS, and Plaintiffs Gorman sue MERS for damages based upon the foregoing stated causes of action,

in an amount within the jurisdictional limits of this Court for which Plaintiffs now seeks from Defendant MERS.

### Count 11: Usury by Deutsche Bank

139.    Deutsche Bank attempted to collect funds from Plaintiffs Gorman personally, for which Plaintiffs Gorman were not personally liable.  In doing so, Deutsche Bank violated Texas Usury Laws.

140.    Deutsche Bank attempted to collect loan payments that were not legally due. In doing so, Deutsche Bank violated Texas Usury Laws

141.    Plaintiffs have been financially harmed as a result of the actions taken by Deutsche Bank, and Plaintiffs Gorman sue Deutsche Bank for damages based upon the foregoing stated causes of action, in an amount within the jurisdictional limits of this Court for which Plaintiffs now seeks from Defendant Deutsche Bank.

### Count 12: Usury by GMAC

142.    GMAC attempted to collect funds from Plaintiffs Gorman personally, for which Plaintiffs Gorman were not personally liable.  In doing so, GMAC violated Texas Usury Laws.

143.    GMAC attempted to collect loan payments that were not legally due. In doing so, GMAC violated Texas Usury Laws.

144.    Plaintiffs have been financially harmed as a result of the actions taken by GMAC, and Plaintiffs Gorman sue GMAC for damages based upon the foregoing stated causes of action, in an amount within the jurisdictional limits of this Court for which Plaintiffs now seeks from Defendant GMAC.

### Count 13: Breach of Contract by First Consolidated

145.    By violating the Loan Representations, First Consolidated knowingly breached its agreement with Plaintiffs Gorman regarding such Loan Representations.

146.    Plaintiffs have been financially harmed as a result of the actions taken by First Consolidated, and Plaintiffs Gorman sue First Consolidated for damages based upon the foregoing stated causes of action, in an amount within the jurisdictional limits of this Court for which Plaintiffs now seeks from Defendant First Consolidated.

### Count 14: Breach of Contract by MERS

147.    By violating the Loan Representations, MERS knowingly breached the agreement with Plaintiffs Gorman regarding such Loan Representations.

148.    By violating the Modification Representations, MERS knowingly breached its agreement with Plaintiffs Gorman regarding such Modification Representations.

149.    By violating the Non-Recourse Protections, MERS knowingly breached the Non-Recourse Protections agreement with Plaintiffs Gorman.

150.    By improperly accelerating the Home Equity Note without issuance of the proper notifications, MERS knowingly breached the terms and conditions of the Home Equity Loan.

151.    Plaintiffs have been financially harmed as a result of the actions taken by MERS, and Plaintiffs Gorman sue MERS for damages based upon the foregoing stated causes of action, in an amount within the jurisdictional limits of this Court for which Plaintiffs now seeks from Defendant MERS.

### Count 15: Breach of Contract by Deutsche Bank

152.    By violating the Loan Representations, Deutsche Bank knowingly breached the agreement with Plaintiffs Gorman regarding such Loan Representations.

153.   By violating the Modification Representations, Deutsche Bank knowingly breached the agreement with Plaintiffs Gorman regarding such Modification Representations.

154.   By violating the Non-Recourse Protections, Deutsche Bank knowingly breached the Non-Recourse Protections agreement with Plaintiffs Gorman.

155.   By improperly accelerating the Home Equity Note without issuance of the proper notifications, Deutsche Bank knowingly breached the terms and conditions of the Home Equity Loan.

156.   Plaintiffs have been financially harmed as a result of the actions taken by Deutsche Bank, and Plaintiffs Gorman sue Deutsche Bank for damages based upon the foregoing stated causes of action, in an amount within the jurisdictional limits of this Court for which Plaintiffs now seeks from Defendant Deutsche Bank.

### Count 16: Breach of Contract by GMAC

157.   By violating the Loan Representations, GMAC knowingly breached the agreement with Plaintiffs Gorman regarding such Loan Representations.

158.   By violating the Modification Representations, GMAC knowingly breached its agreement with Plaintiffs Gorman regarding such Modification Representations.

159.   By violating the Non-Recourse Protections, GMAC knowingly breached the Non-Recourse Protections agreement with Plaintiffs Gorman.

160.   By improperly accelerating the Home Equity Note without issuance of the proper notifications, GMAC knowingly breached the terms and conditions of the Home Equity Loan.

161.   Plaintiffs have been financially harmed as a result of the actions taken by GMAC, and Plaintiffs Gorman sue GMAC for damages based upon the foregoing stated causes of action, in an amount within the jurisdictional limits of this Court for which Plaintiffs now seeks from

Defendant GMAC.

### Count 17: Violation of the Texas Debt Collection Practices Act by MERS

162.    MERS attempted to collect funds from Plaintiffs Gorman personally, for which Plaintiffs Gorman were not personally liable.  In doing so, MERS violated the Texas Debt Collection Practices Act.

163.    MERS attempted to collect loan payments that were not legally due. In doing so, MERS violated the Texas Debt Collection Practices Act.

164.    MERS has utilized harassing, improper, and extortionary techniques in attempting to collect funds from Plaintiffs Gorman. In doing so, MERS violated the Texas Debt Collection Practices Act.

165.    Plaintiffs have been financially harmed as a result of the actions taken by MERS, and Plaintiffs Gorman sue MERS for damages based upon the foregoing stated causes of action, in an amount within the jurisdictional limits of this Court for which Plaintiffs now seeks from Defendant MERS.

### Count 18: Violation of the Texas Debt Collection Practices Act by Deutsche Bank

166.    Deutsche Bank attempted to collect funds from Plaintiffs Gorman personally, for which Plaintiffs Gorman were not personally liable.  In doing so, Deutsche Bank violated the Texas Debt Collection Practices Act.

167.    Deutsche Bank attempted to collect loan payments that were not legally due. In doing so, Deutsche Bank violated the Texas Debt Collection Practices Act.

168.    Deutsche Bank has utilized harassing, improper, and extortionary techniques in attempting to collect funds from Plaintiffs Gorman. In doing so, Deutsche Bank violated the Texas Debt Collection Practices Act.

**PLAINTIFFS' FIRST-AMENDED COMPLAINT**                                                    30
glaw 3.21.2012

169.    Plaintiffs have been financially harmed as a result of the actions taken by
Deutsche Bank, and Plaintiffs Gorman sue Deutsche Bank for damages based upon the foregoing
stated causes of action, in an amount within the jurisdictional limits of this Court for which
Plaintiffs now seeks from Defendant Deutsche Bank.

### Count 19: Violation of the Texas Debt Collection Practices Act by GMAC

170.    GMAC attempted to collect funds from Plaintiffs Gorman personally, for which
Plaintiffs Gorman were not personally liable.   In doing so, GMAC violated the Texas Debt
Collection Practices Act.

171.    GMAC attempted to collect loan payments that were not legally due. In doing so,
GMAC violated the Texas Debt Collection Practices Act.

172.    GMAC has utilized harassing, improper, and extortionary techniques in
attempting to collect funds from Plaintiffs Gorman. In doing so, GMAC violated the Texas Debt
Collection Practices Act.

173.    Plaintiffs have been financially harmed as a result of the actions taken by GMAC,
and Plaintiffs Gorman sue GMAC for damages based upon the foregoing stated causes of action,
in an amount within the jurisdictional limits of this Court for which Plaintiffs now seeks from
Defendant GMAC.

### Count 20: Predatory and Unconscionable Lender Practices by First Consolidated

174.    First Consolidated has committed predatory and unconscionable lender practices
against Plaintiffs Gorman when First Consolidated:

      a)      committed fraud as previously above;

      b)      committed fraud in the inducement as previously described above;

      c)      committed usury as previously described above;

**PLAINTIFFS' FIRST-AMENDED COMPLAINT**                                                                 31
glaw 3.21.2012

d)      breached the agreements made with Plaintiffs Gorman as previously described above;

e)      entered into and attempted to then enforce the Home Equity Loan that was created in violation of the Texas Constitutional Protections; and

f)      conspired to harm Plaintiffs, as described hereafter.

175.   Plaintiffs have been financially harmed as a result of the actions taken by First Consolidated, and Plaintiffs Gorman sue First Consolidated for damages based upon the foregoing stated causes of action, in an amount within the jurisdictional limits of this Court for which Plaintiffs now seeks from Defendant First Consolidated.

### Count 21: Predatory and Unconscionable Lender Practices by MERS

176.   MERS has committed predatory and unconscionable lender practices against Plaintiffs Gorman when MERS:

a)      committed fraud as previously above;

b)      committed fraud in the inducement as previously described above;

c)      committed usury as previously described above;

d)      breached the agreements made with Plaintiffs Gorman as previously described above;

e)      violated the Texas Debt Collections Practices Act as previously described above;

f)      entered into and attempted to then enforce the Home Equity Loan that was created in violation of the Texas Constitutional Protections; and

g)      conspired to harm Plaintiffs, as described hereafter.

176.   Plaintiffs have been financially harmed as a result of the actions taken by MERS, and Plaintiffs Gorman sue MERS for damages based upon the foregoing stated causes of action, in an amount within the jurisdictional limits of this Court for which Plaintiffs now seeks from

**PLAINTIFFS' FIRST-AMENDED COMPLAINT**                            32
glaw 3.21.2012

Defendant MERS.

### Count 22: Predatory and Unconscionable Lender Practices by Deutsche Bank

177.     Deutsche Bank has committed predatory and unconscionable lender practices against Plaintiffs Gorman when Deutsche Bank:

a)      committed fraud as previously above;

b)      committed fraud in the inducement as previously described above;

c)      committed usury as previously described above;

d)      breached the agreements made with Plaintiffs Gorman as previously described above;

e)      violated the Texas Debt Collections Practices Act as previously described above;

f)      entered into and attempted to then enforce the Home Equity Loan that was created in violation of the Texas Constitutional Protections; and

g)      conspired to harm Plaintiffs, as described hereafter.

178.     Plaintiffs have been financially harmed as a result of the actions taken by Deutsche Bank, and Plaintiffs Gorman sue Deutsche Bank for damages based upon the foregoing stated causes of action, in an amount within the jurisdictional limits of this Court for which Plaintiffs now seeks from Defendant Deutsche Bank.

### Count 23: Predatory and Unconscionable Lender Practices by GMAC

179.     GMAC has committed predatory and unconscionable lender practices against Plaintiffs Gorman when GMAC:

a)      committed fraud as previously above;

b)      committed fraud in the inducement as previously described above;

c)      committed usury as previously described above;

     d)     breached the agreements made with Plaintiffs Gorman as previously described above;

     e)     violated the Texas Debt Collections Practices Act as previously described above;

     f)     entered into and attempted to then enforce the Home Equity Loan that was created in violation of the Texas Constitutional Protections; and

     g)     conspired to harm Plaintiffs, as described hereafter.

180.    Plaintiffs have been financially harmed as a result of the actions taken by GMAC, and Plaintiffs Gorman sue GMAC for damages based upon the foregoing stated causes of action, in an amount within the jurisdictional limits of this Court for which Plaintiffs now seeks from Defendant GMAC.

### Lender Liability-Special Relationship

181.    Because the relationship between a home equity borrower and a home equity lender is a relationship protected by the laws of the State of Texas, including but not being limited to the projections afforded by the Texas Constitution, such a home equity relationship is a "special relationship" under the laws of the State of Texas, that includes the implied covenant to act in a manner of good and fair dealing.

182.    By executing the Home Equity Note, such a "special relationship" exists between Plaintiffs Gorman, on the one hand, and Home Equity Note owner and servicer, on the other hand.

183.    By executing the Home Equity Lien, such a "special relationship" exists between Plaintiffs Gorman on the one hand, and beneficiary (and its agents) of the Home Equity Lien, on the other hand.

184.    A violation of such "special relationship" and a failure to act in a manner of good and fair dealing-when committed by a lender, or its agents, creates a cause of action for lender liability.

### Count 24: Lender Liability-Special Relationship violation by First Consolidated

185.    First Consolidated committed acts of lender liability by violating the special relationship that exists between First Consolidated and Plaintiffs Gorman when First Consolidated:

       a)       committed fraud as previously above;

       b)       committed fraud in the inducement as previously described above;

       c)       committed usury as previously described above;

       d)       breached the agreements made with Plaintiffs Gorman as previously described above;

       e)       entered into and attempted to then enforce the Home Equity Loan that was created in violation of the Texas Constitutional Protections; and

       f)       conspired to harm Plaintiffs, as described hereafter.

186.    Plaintiffs have been financially harmed as a result of the actions taken by First Consolidated, and Plaintiffs Gorman sue First Consolidated for damages based upon the foregoing stated causes of action, in an amount within the jurisdictional limits of this Court for which Plaintiffs now seeks from Defendant First Consolidated.

### Count 25: Lender Liability-Special Relationship violation by MERS

187.    MERS committed acts of lender liability by violating the special relationship that exists between MERS and Plaintiffs Gorman when MERS:

       a)       committed fraud as previously above;

       b)       committed fraud in the inducement as previously described above;

**PLAINTIFFS' FIRST-AMENDED COMPLAINT**                                                                35
glaw 3.21.2012

c)    committed usury as previously described above;

d)    breached the agreements made with Plaintiffs Gorman as previously
described above;

e)    violated the Texas Debt Collections Practices Act as previously described
above;

f)    entered into and attempted to then enforce the Home Equity Loan that was
created in violation of the Texas Constitutional Protections; and

g)    conspired to harm Plaintiffs, as described hereafter.

188.    Plaintiffs have been financially harmed as a result of the actions taken by MERS,

and Plaintiffs Gorman sue MERS for damages based upon the foregoing stated causes of action,

in an amount within the jurisdictional limits of this Court for which Plaintiffs now seeks from

Defendant MERS.

### Count 26: Lender Liability-Special Relationship violation by Deutsche Bank

189.    Deutsche Bank committed acts of lender liability by violating the special

relationship that exists between Deutsche Bank and Plaintiffs Gorman when Deutsche Bank:

a)    committed fraud as previously above;

b)    committed fraud in the inducement as previously described above;

c)    committed usury as previously described above;

d)    breached the agreements made with Plaintiffs Gorman as previously
described above;

e)    violated the Texas Debt Collections Practices Act as previously described
above;

f)    entered into and attempted to then enforce the Home Equity Loan that was
created in violation of the Texas Constitutional Protections; and

g)    conspired to harm Plaintiffs, as described hereafter.

190.    Plaintiffs have been financially harmed as a result of the actions taken by
Deutsche Bank, and Plaintiffs Gorman sue Deutsche Bank for damages based upon the
foregoing stated causes of action, in an amount within the jurisdictional limits of this Court for
which Plaintiffs now seeks from Defendant Deutsche Bank.

### Count 27: Lender Liability-Special Relationship violation by GMAC

191.    GMAC committed acts of lender liability by violating the special relationship that
exists between GMAC and Plaintiffs Gorman when GMAC:

> a)    committed fraud as previously above;
>
> b)    committed fraud in the inducement as previously described above;
>
> c)    committed usury as previously described above;
>
> d)    breached the agreements made with Plaintiffs Gorman as previously
>        described above;
>
> e)    violated the Texas Debt Collections Practices Act as previously described
>        above;
>
> f)    entered into and attempted to then enforce the Home Equity Loan that was
>        created in violation of the Texas Constitutional Protections; and
>
> g)    conspired to harm Plaintiffs, as described hereafter.

192.    Plaintiffs have been financially harmed as a result of the actions taken by GMAC,
and Plaintiffs Gorman sue GMAC for damages based upon the foregoing stated causes of action,
in an amount within the jurisdictional limits of this Court for which Plaintiffs now seeks from
Defendant GMAC.

### Count 28: Conspiracy between First Consolidated, MERS, and Deutsche Bank

193.    In order to create a Home Equity Loan that would be more profitable for a
subsequent sale, upon and information and belief, First Consolidated, MERS, and Deutsche Bank

acted in concert to harm Plaintiffs Gorman, when First Consolidated and MERS acted together and:

   a)  committed fraud as previously above;

   b)  committed fraud in the inducement as previously described above;

   c)  committed usury as previously described above;

   d)  breached the agreements made with Plaintiffs Gorman as previously described above; and

   e)  entered into and attempted to then enforce the Home Equity Loan that was created in violation of the Texas Constitutional Protections.

194. Plaintiffs have been financially harmed as a result of the conspiratorial actions taken by First Consolidated, MERS, and Deutsche Bank; and Plaintiffs Gorman sue First Consolidated, MERS, and Deutsche Bank for damages based upon the foregoing stated causes of action, in an amount within the jurisdictional limits of this Court for which Plaintiffs now seeks from Defendants First Consolidated, MERS, and Deutsche Bank.

### Count 29: Conspiracy between MERS, Deutsche Bank, and GMAC

195. In order to create a Home Equity Loan that would be more profitable through monthly payments and excessive fees, upon and information and belief, MERS, Deutsche Bank, and GMAC acted in concert to harm Plaintiffs Gorman, when MERS, GMAC Deutsche Bank, acted together and:

   a)  committed fraud as previously above;

   b)  committed fraud in the inducement as previously described above;

   c)  committed usury as previously described above;

   d)  breached the agreements made with Plaintiffs Gorman as previously described above;

    e)      violated the Texas Debt Collections Practices Act as previously described above; and

    f)      entered into and attempted to then enforce the Home Equity Loan that was created in violation of the Texas Constitutional Protections.

196.    Plaintiffs have been financially harmed as a result of the conspiratorial actions taken by MERS, Deutsche Bank, and GMAC; and Plaintiffs Gorman sue MERS, Deutsche Bank, and GMAC for damages based upon the foregoing stated causes of action, in an amount within the jurisdictional limits of this Court for which Plaintiffs now seeks from Defendants MERS, Deutsche Bank, and GMAC.

### Count 30: Request for Declaratory Judgment Relief

197.    Because of existing uncertainties as:

    a)      to the ownership of the Home Equity Note;

    b)      the owner of the rights of the beneficiary under the Home Equity Lien;

    c)      the validity of the Home Equity Loan;

    d)      the correct interest rate applicable to the Home Equity Note;

    e)      whether the Home Equity Lien was properly accelerated; and

    e)      the amounts properly due under the Home Equity Loan

Plaintiffs Gorman seek declaratory rulings as to such matters as such rulings are allowed by **Chapter 37 of the Texas Civil Practice & Remedies Code** with regard to what rights, if any, MERS, Deutsche Bank, and GMAC have as to the above issues.

### Count 31: Potential Liability as to DeWitt

198.    As the signatory on the Home Equity Note for First Consolidated and as the purported lone remaining shareholder of First Consolidated, Plaintiffs Gorman also sue Defendant DeWitt as to all the actions asserted against First Consolidated.

### Count 32: Attorneys' Fees

199.    Plaintiffs also request the reasonable and necessary attorneys' fees incurred by Plaintiffs to prosecute this matter.

### Count 33: Exemplary Damages

200.    As described above, the actions of Defendants First Consolidated, MERS, Deutsche Bank, and GMAC towards Plaintiffs Gorman have also been, as stated, fraudulent, unconscionable, and malicious in such a nature to entitle Plaintiffs Gorman to all penalty, exemplary, and punitive damages allowed by law, in an amount within the jurisdictional limits of this Court.

### Count 34: Pre and Post Judgment Interest

201.    Plaintiffs Gorman also request the award of pre-judgment and post-judgment interest as allowed by law.

### E. Request for Jury

202.    Plaintiffs Gorman previously requested a jury in its original petition filed with the Collin County District Court and hereby further request a jury and tender herewith the appropriate fee.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Gorman pray that upon final trial hereof, that judgment be entered in favor of Plaintiffs Gorman, that all costs of Court be taxed against Defendants, and that Plaintiffs Gorman have such further and other relief, general and special, both at law or in equity, to which they may show themselves to be justly entitled.

Respectfully submitted,

Gorman Law Offices, P.C.


By:        //S// Terry P. Gorman
           Terry P. Gorman
           State Bar No. 08218200
           1400 Preston Road, Suite 400
           Plano, Texas  75093-5186
           Telephone:     (972) 235-4700
           Telecopier:    (214) 540-6609
           terry@gormanlawtexas.com
           **COUNSEL FOR TERRY PATRICK GORMAN
           and KAREN GORMAN**


## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2012, I served a copy of the foregoing to the following:

**Via First Class Mail**

Keith S. Anderson
Graham W. Herhardt
Bradley Arant Boult Cummings, LLP
One Federal Place
1819 Fifth Avenue North Birmingham
Alabama 35203
**ATTORNEYS FOR DEFENDANTS
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.;
DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE UNDER THE
INDENTURE RELATING TO IMH ASSETS CORP., COLLATERALIZED ASSET-BACKED BONDS,
SERIES 2005-7 AND
GMAC MORTGAGE, LLC**


        //S// Terry P. Gorman
        Terry P. Gorman


**PLAINTIFFS' FIRST-AMENDED COMPLAINT**                                    41
glaw 3.21.2012