**<u>Exhibit B</u>**

Identifier: 7173    Doc Type: NOTEN

12-12020-mg    Doc 9659-5    Filed 02/23/16    Entered 02/23/16 15:32:39    Lathrop
Decl. Exhibit B    Pg 2 of 6

Loan No: MR500062
Borrower: TERRY PATRICK C**MAN

 

Data ID: 634


0359227173

**THIS IS AN EXTENSION OF CREDIT AS DEFINED BY SECTION 50(a)(6),
ARTICLE XVI OF THE TEXAS CONSTITUTION**

**THIS EXTENSION OF CREDIT HAS A VARIABLE RATE OF INTEREST AS AUTHORIZED BY
SECTION 50(a)(6)(O), ARTICLE XVI OF THE TEXAS CONSTITUTION**

## TEXAS HOME EQUITY
## ADJUSTABLE RATE NOTE         MIN: ████████5421
(LIBOR Six-Month Index (As Published In The Wall Street Journal)—Rate Caps)
(First Lien)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE
AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE
CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

May 9, 2005    Place of Execution:         DALLAS            TEXAS
                                            [City]            [State]
                                   2812 BROWNING DRIVE
                                   PLANO, TEXAS 75093
                                     [Property Address]

### 1. BORROWER'S PROMISE TO PAY

This is an extension of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution (the "Extension of Credit"). In return for the Extension of Credit that I have received, I promise to pay U.S. $ 262,500.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is **FIRST CONSOLIDATED MORTGAGE COMPANY**. I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

I understand that this is not an open-end account that may be debited from time to time or under which credit may be extended from time to time.

The property described above by the Property Address is subject to the lien of the security instrument executed concurrently herewith (the "Security Instrument").

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **9.490 %**. The interest rate I will pay may change in accordance with Section 4 of this Note. It is agreed that the total of all interest and other charges that constitute interest under applicable law shall not exceed the maximum amount of interest permitted by applicable law. Nothing in this Note or the Security Instrument shall entitle the Note Holder upon any contingency or event whatsoever, including by reason of acceleration of the maturity or prepayment of the Extension of Credit, to receive or collect interest or other charges that constitute interest in excess of the highest rate allowed by applicable law on the Principal or on a monetary obligation incurred to protect the property described above authorized by the Security Instrument, and in no event shall I be obligated to pay interest in excess of such rate.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

TEXAS HOME EQUITY ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-Fannie Mae UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                    Form 3520  1/01 (Rev. 10/03)    *(Page 1 of 5 Pages)*

INITIALS:

Identifier: 7173    Doc Type:NOTEN

12-12020-mg    Doc 9659-5    Filed 02/23/16    Entered 02/23/16 15:32:39    Lathrop
Decl. Exhibit B    Pg 3 of 6

Loan No: 062                                                                    Data ID: 634

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on **July 1, 2005**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **June 1, 2035**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 1700 PACIFIC AVENUE, SUITE 2400, DALLAS, TEXAS 75201, or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 2,205.33. This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of the Extension of Credit and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The initial interest rate I will pay may change on the first day of **June, 2007**, and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **SEVEN and THREE/FOURTHS** percentage points ( 7.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal successive monthly payments, each of which will exceed the amount of accrued interest as of the date of the scheduled installment. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 12.4900 % or less than 9.4900 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **ONE and ONE/HALF** percentage points (1.50 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 16.4900 % or less than 9.4900 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

TEXAS HOME EQUITY ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-Fannie Mae UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                    Form 3520  1/01 (Rev. 10/03)    *(Page 2 of 5 Pages)*

INITIALS

Identifier: 7173   Doc Type:NOTEN

12-12020-mg   Doc 9659-5   Filed 02/23/16   Entered 02/23/16 15:32:39   Lathrop
Decl. Exhibit B   Pg 4 of 6

Loan No: 062                      Data ID: 634

## 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates or amounts of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.  LOAN CHARGES

All agreements between the Note Holder and me are expressly limited so that any interest, loan charges, or fees (other than interest) collected or to be collected from me, any owner or the spouse of any owner of the property described above in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by applicable law.

If a law, which applies to this Extension of Credit and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this Extension of Credit exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder will make this refund by making a payment to me. **The Note Holder's payment of any such refund will extinguish any right of action I might have arising out of such overcharge.**

It is the express intention of the Note Holder and me to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of this Note, the Security Instrument or any other loan document related to this Extension of Credit transcends the limit of validity prescribed by applicable law, then such promise, payment, obligation or provision shall be reduced to the limit of such validity, or eliminated as a requirement, if necessary for compliance with such law, and such document may be reformed by written notice from the Note Holder without the necessity of the execution of any new amendment or new document by me.

The provisions of this Section 6 shall supersede any inconsistent provision of this Note or the Security Instrument.

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)  Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.00 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means. This Note may not be accelerated because of a decrease in the market value of the property described above or because of the property owner's default under any indebtedness not evidenced by this Note or the Security Instrument.

### (D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

TEXAS HOME EQUITY ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-Fannie Mae UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna          Form 3520  1/01 (Rev. 10/03)     (Page 3 of 5 Pages)

INITIALS:

Identifier: 7173    Doc Type: NOTEN

12-12020-mg    Doc 9659-5    Filed 02/23/16    Entered 02/23/16 15:32:39    Lathrop
Decl. Exhibit B    Pg 5 of 6

Loan No: 062     Data ID: 634

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law, including Section 50(a)(6) Article XVI of the Texas Constitution. Those expenses include, for example, reasonable attorneys' fees. I understand that these expenses are not contemplated as fees to be incurred in connection with maintaining or servicing this Extension of Credit.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address. However, if the purpose of the notice is to notify Note Holder of failure to comply with Note Holder's obligations under this Extension of Credit, or noncompliance with any provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then notice by certified mail is required.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

Subject to the limitation of personal liability described below, each person who signs this Note is responsible for ensuring that all of my promises and obligations in this Note are performed, including the payment of the full amount owed. Any person who takes over these obligations is also so responsible.

I understand that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that this Note is given without personal liability against each owner of the property described above and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud. This means that, absent such actual fraud, the Note Holder can enforce its rights under this Note solely against the property described above and not personally against any owner of such property or the spouse of an owner.

If this Extension of Credit is obtained by such actual fraud, I will be personally liable for the payment of any amounts due under this Note. This means that a personal judgment could be obtained against me if I fail to perform my responsibilities under this Note, including a judgment for any deficiency that results from Note Holder's sale of the property described above for an amount less than is owing under this Note.

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Section 9 shall not impair in any way the right of the Note Holder to collect all sums due under this Note or prejudice the right of the Note Holder as to any promises or conditions of this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, the Security Instrument, dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
>
> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
>
> If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument.
>
> If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

TEXAS HOME EQUITY ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-Fannie Mae UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna        Form 3520  1/01 (Rev. 10/03)    (Page 4 of 5 Pages)

INITIALS:

Identifier: 7173    Doc Type:NOTEN

12-12020-mg    Doc 9659-5    Filed 02/23/16    Entered 02/23/16 15:32:39    Lathrop
Decl. Exhibit B    Pg 6 of 6

Loan No: 062      Data ID: 634

## 12. APPLICABLE LAW

This Note shall be governed by the law of Texas and any applicable federal law.

In the event of any conflict between the Texas Constitution and other applicable law, it is the intent that the provisions of the Texas Constitution shall be applied to resolve the conflict. In the event of a conflict between any provision of this Note and applicable law, the applicable law shall control to the extent of such conflict and the conflicting provisions contained in this Note shall be modified to the extent necessary to comply with applicable law. All other provisions in this Note will remain fully effective and enforceable.

## 13. NO ORAL AGREEMENTS

THIS NOTE CONSTITUTES A "WRITTEN LOAN AGREEMENT" PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES. THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

[DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]

..............................................................(Seal)
TERRY PATRICK GORMAN —Borrower

..............................................................(Seal)
KAREN GORMAN —Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF
  **IMPAC FUNDING CORPORATION**
WITHOUT RECOURSE

FIRST CONSOLIDATED MORTGAGE COMPANY

By:_____
          DEWITT T. RAY,III, PRESIDENT

PAY TO THE ORDER OF

WITHOUT RECOURSE
IMPAC FUNDING CORPORATION

BY:_____
OGUZHAN GOGOLU, AUTHORIZED SIGNATORY