## Exhibit E

CAUSE NO. 401-00145-2012

| | | |
|---|---|---|
| TERRY PATRICK GORMAN and KAREN GORMAN | § § § | |
| **Plaintiffs** | § | IN THE DISTRICT COURT OF |
| vs. | § § | |
| FIRST CONSOLIDATED MORTGAGE COMPANY; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE UNDER THE INDENTURE RELATING TO IMH ASSETS CORP, COLLATERALIZED ASSET-BACKED BONDS, SERIES 2005-7; RAY T. DEWITT III; and GMAC MORTGAGE, LLC | § § § § § § § § § § § § § § § | COLLIN COUNTY, TEXAS |
| **Defendants** | § | 401 JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Plaintiffs **TERRY PATRICK GORMAN** and **KAREN GORMAN** to

file this their "Plaintiffs' Original Petition" as follows:

## PREAMBLE

Plaintiffs have filed the forgoing suit to prevent the foreclosure of their Homestead (defined hereafter) and to seek additional relief related to the Home Equity Loan (defined hereafter). Plaintiffs assert the following causes of actions against the following Defendants (as such Defendants are defined hereafter):

**Fraud and Fraud in the Inducement**-against First Consolidated, DeWitt, MERS, GMAC, and Deutsche Bank;

**Conspiracy**- against First Consolidated, DeWitt, MERS, GMAC, and Deutsche Bank;

**Usury**-against First Consolidated and MERS;

**Breach of Contract**-against First Consolidated, DeWitt, MERS, Deutsche Bank, and GMAC;

**Violations of the Texas Debt Collections Practices Act**-against Deutsche Bank and GMAC;

**Lender Liability**-against First Consolidated, DeWitt, MERS, Deutsche Bank and GMAC; and

**Declaratory Judgment Relief**-as to First Consolidated, MERS, Deutsche Bank, and GMAC.

**PLAINTIFFS' ORIGINAL PETITION**
glaw 1.16.2012

FILED

12 JAN 17  AM 8: 43

DISTRICT CLERK
COLLIN COUNTY, TEXAS

BY _____

## A. Designation of Discovery Control Plan

1.      Discovery for the following claims is intended to be conducted under Level 3 of the Texas Rules of Civil Procedure 190.

## B. Subject Matter Jurisdiction and Venue

2.      The Court has jurisdiction over the following claims because this is a civil matter and the damages sought are within the jurisdictional limits of the Court.

3.      Venue is proper in Collin County because it is the county in which all or a substantial part of the events giving rise to the claim occurred.

## C. Personal Jurisdiction

4.      This Court has personal jurisdiction over each of the Defendants because each Defendant has conducted business in Collin County of the State of Texas, and availed themselves of the laws of the State of Texas.

## D. Parties and Service

5.      Plaintiffs **TERRY PATRICK GORMAN** and **KAREN GORMAN** are individuals residing in Collin County, Texas.

6.      Defendant **FIRST CONSOLIDATED MORTGAGE COMPANY** (hereafter, "First Consolidated") is a Texas corporation, residing and conducting business in the State of Texas, and may be served with process by service upon its following agent for service of process:

> **Ray T. Dewitt III**
> **1700 Pacific Avenue, Suite 2400**
> **Dallas, Texas 75201**

7.      Defendant **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

("MERS") is a Delaware corporation doing business in the State of Texas, does not have a

registered agent for service of process on file with the Texas Secretary of State, and, may

therefore, be served with citation upon the following:

> **MORTGAGE ELECTRONIC**
> **REGISTRATION SYSTEMS, INC.**
> **c/o Office of the Secretary of State**
> **Statutory Documents Section - Citations Unit**
> **1019 Brazos Street**
> **Austin, Texas 78701**

8.      Defendant **DEUTSCHE BANK NATIONAL TRUSTCOMPANY, AS**

**INDENTURE TRUSTEE UNDER THE INDENTURE RELATING TO IMH ASSETS**

**CORP, COLLATERALIZED ASSET-BACKED BONDS, SERIES 2005-7** (hereafter,

"Deutsche Bank") is a business entity doing business in the State of Texas and may be served

with process by service upon its following agent for service of process:

> **Texas Secretary of State**
> **1019 Brazos**
> **Austin, Texas**
> **for mailing to:**
> **C T Corporation System**
> **350 North St. Paul St.**
> **Dallas, TX 75201 USA**

9.      Defendant **RAY T. DeWITT III** (hereafter, "DeWitt") is a resident of the State

of Texas, resides and conducts business in the State of Texas, and may be served with process by

service upon him at:

> **Ray T. Dewitt III**
> **4544 Fairway**
> **Dallas, Texas 75219**

10.     Defendant **GMAC MORTGAGE, LLC** ("GMAC") is a business entity located

and doing business in the State of Texas, and may be served with process by service upon its

following agent for service of process:

> **Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company
> 211 E. 7[th] Street, Suite 620
> Austin, Texas 78701-3218**

### E.  GENERAL BACKGROUND

### TABLE OF CONTENTS OF THE FACTS

- a.     **Creation of the Home Equity Loan**
- b.     **Ownership and Servicing of the Home Equity Loan**
- c.     **Plaintiffs Fall Behind**
- d.     **Improper Home Equity Loan Collection Efforts**
- e.     **Coercive attempts to collect money not personally due**
- f.     **Attempts to improperly foreclose**
- g.     **GMAC's Improper Servicing and Foreclosure Efforts**
- h.     **GMAC collects over $12 Billion in Federal Assistance but continues to attempt improper foreclosure**

### a.     Creation of the Home Equity Loan

11.     Since the year 2001, Plaintiffs Gorman have been the owners of their home

located at 2812 Browning Drive, Plano, Collin County, Texas 75093 ("Homestead").

12.     On or about May 9, 2005, in conjunction with a home equity refinance of the

Homestead, Plaintiffs Gorman executed that certain debt instrument ("Home Equity Note")

payable to the order of Defendant First Consolidated in the amount of $262,500.00.

13.     To secure the Home Equity Note, a lien was placed upon the Homestead ("Home

Equity Lien") in purported compliance with the home equity laws of the State of Texas,

including those found under the Texas Constitution in Article XVI, Section 50(a)(6)

("Constitutional Protections"). For the purposes hereof, the terms Home Equity Note and Home

Equity Lien may be sometimes collectively referred to as the "Home Equity Loan."

**PLAINTIFFS' ORIGINAL PETITION**                                                              4
glaw 3.26 2012

14.     Consistent with the Constitutional Protections, the Home Equity Loan prohibits the recovery of funds or other financial damages from Plaintiffs resulting from any delinquency or default of obligations to make payments otherwise due under the Home Equity Loan.

15.     Consistent with the Constitutional Protections, the Home Equity Loan is non-recourse, in that, the sole remedy to recover any unpaid amounts due under the Home Equity Loan is to obtain a foreclosure of the Homestead (hereafter, the "Non-Recourse Protections").

16.     Although the Home Equity Note was made payable to First Consolidated, MERS was listed as the "beneficiary" under the Home Equity Lien.

17.     Since the creation of the Home Equity Loan, Plaintiffs Gorman have made significant payments to be applied to interest and principal due under the Home Equity Loan.

18.     When making the Home Equity Loan, specific representations were made by Defendant First Consolidated to Plaintiff Terry Gorman that:

    a)     although the Home Equity Note had an adjustable interest rate provision, the interest rate would never go above nine percent (9%); and

    b)     the Home Equity Note would be sold to parties that would be willing to convert the Home Equity Note to a fixed interest rate.

(For the purposes hereof, the foregoing statements shall be referred to as the "Loan Representations").

19.     At the closing of the Home Equity Loan, Plaintiffs Gorman paid thousands and thousands of dollars in fees which were required by First Consolidated.

20.     The Home Equity Note was signed on the same day that Plaintiffs Gorman received a final itemized disclosure of the actual fees, points, interest, costs, and charges that were charged at the closing of the Home Equity Loan.

**PLAINTIFFS' ORIGINAL PETITION**                                                                    5
plas 1.16.2012

12c-2020-m9-cv-0009878A2 Document13/1Filed 02/17/02/29/16 15:3229 PageID 40 Decl.
Case 4:12-cv-0009-RAS Document13/1Filed 02/17/02/29/16 15:3229 Page 5 of 23 PageID 40
Exhibit E   Pg 7 of 23

21.   Plaintiffs Gorman completed the final version of the loan application for the
Home Equity Loan the same day that Plaintiffs Gorman signed all the loan documents for the
Home Equity Loan.

22.   Plaintiffs Gorman did not ever receive a written notice stating that:

"NOTICE CONCERNING EXTENSIONS OF CREDIT DEFINED BY
SECTION 50(a)(6), ARTICLE XVI, TEXAS CONSTITUTION:

"SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION
ALLOWS CERTAIN LOANS TO BE SECURED AGAINST THE EQUITY
IN YOUR HOME. SUCH LOANS ARE COMMONLY KNOWN AS
EQUITY LOANS. IF YOU DO NOT REPAY THE LOAN OR IF YOU
FAIL TO MEET THE TERMS OF THE LOAN, THE LENDER MAY
FORECLOSE AND SELL YOUR HOME. THE CONSTITUTION
PROVIDES THAT:

"(A) THE LOAN MUST BE VOLUNTARILY CREATED WITH THE
CONSENT OF EACH OWNER OF YOUR HOME AND EACH OWNER'S
SPOUSE;

"(B) THE PRINCIPAL LOAN AMOUNT AT THE TIME THE LOAN IS
MADE MUST NOT EXCEED AN AMOUNT THAT, WHEN ADDED TO
THE PRINCIPAL BALANCES OF ALL OTHER LIENS AGAINST YOUR
HOME, IS MORE THAN 80 PERCENT OF THE FAIR MARKET VALUE
OF YOUR HOME;

"(C) THE LOAN MUST BE WITHOUT RECOURSE FOR PERSONAL
LIABILITY AGAINST YOU AND YOUR SPOUSE UNLESS YOU OR
YOUR SPOUSE OBTAINED THIS EXTENSION OF CREDIT BY
ACTUAL FRAUD;

"(D) THE LIEN SECURING THE LOAN MAY BE FORECLOSED UPON
ONLY WITH A COURT ORDER;

"(E) FEES AND CHARGES TO MAKE THE LOAN MAY NOT EXCEED 3
PERCENT OF THE LOAN AMOUNT;

"(F) THE LOAN MAY NOT BE AN OPEN-END ACCOUNT THAT MAY
BE DEBITED FROM TIME TO TIME OR UNDER WHICH CREDIT MAY

BE EXTENDED FROM TIME TO TIME UNLESS IT IS A HOME EQUITY
LINE OF CREDIT;

"(G) YOU MAY PREPAY THE LOAN WITHOUT PENALTY OR
CHARGE;

"(H) NO ADDITIONAL COLLATERAL MAY BE SECURITY FOR THE
LOAN;

"(I) THE LOAN MAY NOT BE SECURED BY HOMESTEAD PROPERTY
THAT IS DESIGNATED FOR AGRICULTURAL USE AS OF THE DATE
OF CLOSING, UNLESS THE AGRICULTURAL HOMESTEAD
PROPERTY IS USED PRIMARILY FOR THE PRODUCTION OF MILK;

"(J) YOU ARE NOT REQUIRED TO REPAY THE LOAN EARLIER
THAN AGREED SOLELY BECAUSE THE FAIR MARKET VALUE OF
YOUR HOME DECREASES OR BECAUSE YOU DEFAULT ON
ANOTHER LOAN THAT IS NOT SECURED BY YOUR HOME;

"(K) ONLY ONE LOAN DESCRIBED BY SECTION 50(a)(6), ARTICLE
XVI, OF THE TEXAS CONSTITUTION MAY BE SECURED WITH
YOUR HOME AT ANY GIVEN TIME;

"(L) THE LOAN MUST BE SCHEDULED TO BE REPAID IN
PAYMENTS THAT EQUAL OR EXCEED THE AMOUNT OF ACCRUED
INTEREST FOR EACH PAYMENT PERIOD;

"(M) THE LOAN MAY NOT CLOSE BEFORE 12 DAYS AFTER YOU
SUBMIT A LOAN APPLICATION TO THE LENDER OR BEFORE 12
DAYS AFTER YOU RECEIVE THIS NOTICE, WHICHEVER DATE IS
LATER; AND MAY NOT WITHOUT YOUR CONSENT CLOSE BEFORE
ONE BUSINESS DAY AFTER THE DATE ON WHICH YOU RECEIVE A
COPY OF YOUR LOAN APPLICATION IF NOT PREVIOUSLY
PROVIDED AND A FINAL ITEMIZED DISCLOSURE OF THE ACTUAL
FEES, POINTS, INTEREST, COSTS, AND CHARGES THAT WILL BE
CHARGED AT CLOSING; AND IF YOUR HOME WAS SECURITY FOR
THE SAME TYPE OF LOAN WITHIN THE PAST YEAR, A NEW LOAN
SECURED BY THE SAME PROPERTY MAY NOT CLOSE BEFORE ONE
YEAR HAS PASSED FROM THE CLOSING DATE OF THE OTHER
LOAN, UNLESS ON OATH YOU REQUEST AN EARLIER CLOSING
DUE TO A DECLARED STATE OF EMERGENCY;

"(N) THE LOAN MAY CLOSE ONLY AT THE OFFICE OF THE
LENDER, TITLE COMPANY, OR AN ATTORNEY AT LAW;

"(O) THE LENDER MAY CHARGE ANY FIXED OR VARIABLE RATE OF INTEREST AUTHORIZED BY STATUTE;

"(P) ONLY A LAWFULLY AUTHORIZED LENDER MAY MAKE LOANS DESCRIBED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION;

"(Q) LOANS DESCRIBED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION MUST:

"(1) NOT REQUIRE YOU TO APPLY THE PROCEEDS TO ANOTHER DEBT EXCEPT A DEBT THAT IS SECURED BY YOUR HOME OR OWED TO ANOTHER LENDER;

"(2) NOT REQUIRE THAT YOU ASSIGN WAGES AS SECURITY;

"(3) NOT REQUIRE THAT YOU EXECUTE INSTRUMENTS WHICH HAVE BLANKS FOR SUBSTANTIVE TERMS OF AGREEMENT LEFT TO BE FILLED IN;

"(4) NOT REQUIRE THAT YOU SIGN A CONFESSION OF JUDGMENT OR POWER OF ATTORNEY TO ANOTHER PERSON TO CONFESS JUDGMENT OR APPEAR IN A LEGAL PROCEEDING ON YOUR BEHALF;

"(5) PROVIDE THAT YOU RECEIVE A COPY OF YOUR FINAL LOAN APPLICATION AND ALL EXECUTED DOCUMENTS YOU SIGN AT CLOSING;

"(6) PROVIDE THAT THE SECURITY INSTRUMENTS CONTAIN A DISCLOSURE THAT THIS LOAN IS A LOAN DEFINED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION;

"(7) PROVIDE THAT WHEN THE LOAN IS PAID IN FULL, THE LENDER WILL SIGN AND GIVE YOU A RELEASE OF LIEN OR AN ASSIGNMENT OF THE LIEN, WHICHEVER IS APPROPRIATE;

"(8) PROVIDE THAT YOU MAY, WITHIN 3 DAYS AFTER CLOSING, RESCIND THE LOAN WITHOUT PENALTY OR CHARGE;

"(9) PROVIDE THAT YOU AND THE LENDER ACKNOWLEDGE THE FAIR MARKET VALUE OF YOUR HOME ON THE DATE THE LOAN CLOSES; AND

"(10) PROVIDE THAT THE LENDER WILL FORFEIT ALL PRINCIPAL AND INTEREST IF THE LENDER FAILS TO COMPLY WITH THE LENDER'S OBLIGATIONS UNLESS THE LENDER CURES THE FAILURE TO COMPLY AS PROVIDED BY SECTION 50(a)(6)(Q)(x), ARTICLE XVI, OF THE TEXAS CONSTITUTION; AND

"(R) IF THE LOAN IS A HOME EQUITY LINE OF CREDIT:

"(1) YOU MAY REQUEST ADVANCES, REPAY MONEY, AND REBORROW MONEY UNDER THE LINE OF CREDIT;

"(2) EACH ADVANCE UNDER THE LINE OF CREDIT MUST BE IN AN AMOUNT OF AT LEAST $4,000;

"(3) YOU MAY NOT USE A CREDIT CARD, DEBIT CARD, OR SIMILAR DEVICE, OR PREPRINTED CHECK THAT YOU DID NOT SOLICIT, TO OBTAIN ADVANCES UNDER THE LINE OF CREDIT;

"(4) ANY FEES THE LENDER CHARGES MAY BE CHARGED AND COLLECTED ONLY AT THE TIME THE LINE OF CREDIT IS ESTABLISHED AND THE LENDER MAY NOT CHARGE A FEE IN CONNECTION WITH ANY ADVANCE;

"(5) THE MAXIMUM PRINCIPAL AMOUNT THAT MAY BE EXTENDED, WHEN ADDED TO ALL OTHER DEBTS SECURED BY YOUR HOME, MAY NOT EXCEED 80 PERCENT OF THE FAIR MARKET VALUE OF YOUR HOME ON THE DATE THE LINE OF CREDIT IS ESTABLISHED;

"(6) IF THE PRINCIPAL BALANCE UNDER THE LINE OF CREDIT AT ANY TIME EXCEEDS 50 PERCENT OF THE FAIR MARKET VALUE OF YOUR HOME, AS DETERMINED ON THE DATE THE LINE OF CREDIT IS ESTABLISHED, YOU MAY NOT CONTINUE TO REQUEST ADVANCES UNDER THE LINE OF CREDIT UNTIL THE BALANCE IS LESS THAN 50 PERCENT OF THE FAIR MARKET VALUE; AND

"(7) THE LENDER MAY NOT UNILATERALLY AMEND THE TERMS OF THE LINE OF CREDIT.

"THIS NOTICE IS ONLY A SUMMARY OF YOUR RIGHTS UNDER THE TEXAS CONSTITUTION. YOUR RIGHTS ARE GOVERNED BY SECTION 50, ARTICLE XVI, OF THE TEXAS CONSTITUTION, AND NOT BY THIS NOTICE."

b.    **Ownership and Servicing of the Home Equity Loan.**

23.    After to the formation of the Home Equity Note. the Home Equity Note was subsequently assigned and made payable to Impact Funding Corporation ("Impact Funding").

24.    Later, after the Loan Representations were ignored and the interest rate on the Home Equity Note had risen sharply. the Home Equity Loan was purportedly assigned by First Consolidated and MERS (for a profit) to Deutsche Bank.

25.    The Home Equity Lien was purportedly assigned to Deutsche Bank, but it is unclear whether the assignor on such assignment had any interest in the Home Equity Lien.

26.    Although the Home Equity Loan is purportedly owned by Deutsche Bank. there is no indication that the Home Equity Note was ever assigned by Frist Consolidated or Impact Funding.

27.    The servicing of the Home Equity Loan was purportedly assigned to GMAC.

c.    **Plaintiffs Fall Behind**

28.    Due to the failure to abide by the Loan Representations. the monthly payments on the Home Equity Loan skyrocketed. and a fixed rate of interest was never imposed.

29.    Because of the unexpected and improper increase in the payments on the Home Equity Loan. Plaintiffs Gorman fell behind in their obligations under the Home Equity Loan.

d.    **Improper Home Equity Loan Collection Efforts**

30.    Beginning at the time that Plaintiffs fell behind on their payments under the Home Equity Note and continuing until the late Fall of 2011, GMAC and Deutsche Bank have demanded (from Plaintiffs Gorman) payments purportedly personally due under the Home Equity Note.

31. The foregoing described demands made by GMAC and Deutsche Bank (many of which were made through seemingly endless phone calls), were harassing in nature.

32. The foregoing described phone calls made by GMAC and Deutsche Bank were made to Plaintiffs at Plaintiffs' home throughout the day, with multiple calls the same day.

33. The foregoing described phone calls made by GMAC and Deutsche Bank were made to Plaintiffs at Plaintiffs' home late in the evening.

34. The foregoing described phone calls made by GMAC and Deutsche Bank were made to Plaintiffs' relatives at such relatives home.

35. The foregoing described phone calls made by GMAC and Deutsche Bank were made to Plaintiff Terry Gorman at his place of work.

36. During the foregoing time period, Plaintiffs received numerous and seemingly endless letters demanding payments on the Home Equity Note, from GMAC and Deutsche Bank.

37. The above-described letters from different companies (including GMAC and Deutsche Bank) demanded personal payments under the Home Equity Note.

38. The calls and letters (made by GMAC and Deutsche Bank) made Plaintiffs Gorman feel as if vultures were circling the Plaintiffs' Homestead, just waiting for the Plaintiffs to step outside.

39. As the purported servicing agent for the Home Equity Note, the foregoing described harassing demands made by GMAC were made as the agent, and on behalf, of the owner of the Home Equity Note at the time of such demands.

**e.   Coercive attempts to collect money not personally due**

40. As stated, the foregoing demands made by GMAC and Deutsche Bank included demands that Plaintiffs Gorman make personal payments purportedly due under the Home
**PLAINTIFFS' ORIGINAL PETITION**                                                      11
glaw 1 16 2012

Equity Note.

41.     Such demands were made by GMAC and Deutsche Bank despite the fact that Plaintiffs Gorman are not personally liable under the Home Equity Note.

**f.      Attempts to improperly foreclose**

42.     Without issuing the notice and cure provisions required by the Home Equity Loan and the Constitutional Protections, the Home Equity Loan was declared to be in default by Deutsche Bank and GMAC. Ever since, Deutsche Bank and GMAC have been attempting to foreclose on the Plaintiffs' Homestead.

43.     GMAC and Deutsche Bank have pursed an improper foreclosure sale of the Homestead by an attempted use of the Home Equity Lien.

44.     However, GMAC and Deutsche Bank have:

(a)     failed to establish that the Home Equity Lien was properly formed in accordance with the requirements of Chapter 50(a)(6) of the Constitution of the State of Texas; and

(b)     failed to provide the notices of default, notices of opportunity to cure, notices of intent to accelerate, and notice of acceleration required by the Constitutional Protections.

45.     Notwithstanding the foregoing failures, GMAC and Deutsche Bank have sought to foreclosure the Homestead.

46.     In pursuing improper foreclosure efforts against the Homestead, GMAC and Deutsche Bank have violated the Constitutional Protections afforded Plaintiffs as to the Homestead.

47.    In pursuing improper foreclosure efforts against the Plaintiffs' Homestead, GMAC and Deutsche Bank have attempted to coerce and extort payments from Plaintiffs Gorman.

48.    GMAC and Deutsche Bank have publically refuted, repudiated, and violated the Non-Recourse Protections by seeking personal payments from Plaintiffs.

49.    In purposefully violating the Non-Recourse Protections, GMAC and Deutsche Bank have attempted to coerce and extort payments from Plaintiffs.

50.    To prevent the Defendant GMAC and Deutsche Bank from improperly foreclosing on Plaintiffs' Homestead, to protect Plaintiffs from the improper and illegal efforts of GMAC and Deutsche Bank to collects funds not due, to redress the violations (by GMAC and Deutsche Bank) of the Constitutional Protections, to protect Plaintiffs Gorman from the improper and illegal efforts of GMAC and Deutsche Bank to collects funds from Plaintiffs Gorman which they are not liable for, and to prevent GMAC and Deutsche Bank from extorting and coercing money from Plaintiffs, Plaintiffs were required to engage Terry P. Gorman as an attorney to represent Plaintiffs in this matter.  In doing so, Plaintiffs have incurred damages to defend such actions by Plaintiffs.

g.    **GMAC's Improper Servicing and Foreclosure Efforts**

51.    During the above-described time period that GMAC was improperly coercing Plaintiffs Gorman and attempting to improperly foreclosure on the Plaintiffs Homestead, GMAC was busy with similar illegal acts regarding other home mortgages being serviced by GMAC across the county.

52.    During the relevant time periods, GMAC was the recipient of various cease and desist orders from attorneys general of various states and federal regulators.

**PLAINTIFFS' ORIGINAL PETITION**                                                                          13
glaw 1 16.2012

53.    During the relevant time periods, GMAC was also named as a defendant in various class action suits by homeowners being mistreated by GMAC around the country.

54.    Plaintiffs Gorman have themselves been alerted in writing that Plaintiffs may have been the victim of GMAC's improper servicing actions, including overcharging of fees.

## h.    GMAC collects over $12 Billion in Federal Assistance but continues to attempt improper foreclosure

55.    During the time that Plaintiffs Gorman fell behind in their obligations under the Home Equity Loan, GMAC received over $12.5 Billion in financial assistance from the United States. Notwithstanding the "bail out" of GMAC, during that same time period, and thereafter, GMAC has continued to pursue its improper foreclosure efforts as to Plaintiffs' Homestead.

56.    As the signatory on the Home Equity Note for First Consolidated and as the purported lone remaining shareholder of First Consolidated, the actions complained of above as to First Consolidated are also asserted herein against Defendant DeWitt.

57.    Although the principal amount due under the Home Equity Note is less than $262,500.00, the value of Plaintiffs' Homestead is near $400,000.00, thereby creating a differential that creates a profit motive for GMAC and Deutsche Bank to take the Homestead away from Plaintiffs.

58.    Further, had Plaintiffs Gorman known that the Loan Representations were false and were knowingly made for the sole purpose of enticing Plaintiffs into completing the Home Equity Loan so that such Loan could subsequently be sold for a profit to Deutsche Bank, Plaintiffs Gorman would have never entered into the Home Equity Loan.

59.    All conditions precedent to Plaintiffs bringing these claims have been met.

**PLAINTIFFS' ORIGINAL PETITION**                                                    14
glaw 1 16 2012

### F.  Plaintiffs Gorman's Causes of Action

60.    Plaintiffs Gorman incorporate by reference the facts set forth in Section E hereof.

### 1.  Fraud and Fraud in the Inducement

61.    First Consolidated made the referenced Loan Representations to Plaintiffs Gorman, which Plaintiffs Gorman relied upon, which turned out to be false, and which had Plaintiffs Gorman known, Plaintiffs would not have entered into the Homestead Note; all such actions constituting fraud and fraud in the inducement. MERS participated in such Loan Representations by participating in the Home Equity Lien, based on the fraudulent Loan Representations made by First Consolidated.

62.    Further, Defendants GMAC and Deutsche Bank have fraudulently attempted to foreclosure on the Homestead, fraudulently attempted to collect funds from Plaintiffs Gorman, and fraudulently attempted to extort funds from Plaintiffs Gorman. To prevent the foregoing harm and to protect their Constitutional Protections, Plaintiffs engaged legal counsel to stop the harm described above, and Plaintiffs have suffered financial damages by the expenditure and accrual of attorneys' fees.

63.    As a result of the foregoing actions, Plaintiffs Gorman sue for damages against First Consolidated, MERS, Deutsche Bank and GMAC for the foregoing stated causes of action, respectfully, in an amount within the jurisdictional limits of this Court for which Plaintiffs now seeks from Defendants.

### 2.  Conspiracy

64.    In order to create a Home Equity Loan that would be more profitable for a subsequent sale, First Consolidated, MERS, and Deutsche Bank acted in concert to complete the fraud in the inducement alleged above.

**PLAINTIFFS' ORIGINAL PETITION**                                                                    15
glaw 1 16 2012

65.     By acting in concert with one another, First Consolidated, MERS, and Deutsche Bank have conspired to harm Plaintiffs Gorman.

66.     To prevent the foregoing harm and to protect their Constitutional Protections, Plaintiffs engaged legal counsel to stop the harm described above, and Plaintiffs have suffered financial damages by the expenditure and accrual of attorneys' fees.

67.     As a result of the foregoing actions, Plaintiffs Gorman sue for damages against First Consolidated, MERS, and Deutsche Bank for the foregoing stated causes of action, respectfully, in an amount within the jurisdictional limits of this Court for which Plaintiffs now seeks from Defendants.

68.     Further, after the creation of the Home Equity Loan, GMAC and Deutsche Bank in concert to improperly attempt a foreclosure of the Homestead, to collect funds that were personally not due from Plaintiffs Gorman, and to attempt to coerce payments from Plaintiffs Gorman through the improper and harassing efforts described above.

69.     By acting in concert with one another. GMAC and Deutsche Bank have conspired to harm Plaintiffs Gorman.

70.     To prevent the foregoing harm and to protect their Constitutional Protections, Plaintiffs engaged legal counsel to stop the harm described above, and Plaintiffs have suffered financial damages by the expenditure and accrual of attorneys' fees.

71.     As a result of the foregoing actions. Plaintiffs Gorman sue for damages against GMAC and Deutsche Bank for the foregoing stated causes of action, respectfully, in an amount within the jurisdictional limits of this Court for which Plaintiffs now seeks from Defendants.

### 3. Usury

72.    By charging fees (at the time of the creation of the Home Equity Loan) in excess of the lawful amount allowed by the Texas limitations on interest, First Consolidated and MERS have violated the Usury Laws of the State of Texas.

73.    By charging and accepting such excessive fees, Plaintiffs Gorman have been harmed.

74.    To collect the excessive fees, Plaintiffs engaged legal counsel to stop the harm described above, and Plaintiffs have suffered financial damages by the charging of the excessive fees and the expenditure and accrual of attorneys' fees.

75.    As a result of the foregoing actions, Plaintiffs Gorman sue for damages against First Consolidated and MERS for the foregoing stated causes of action, respectfully, in an amount within the jurisdictional limits of this Court for which Plaintiffs now seeks from Defendants.

### 4. Breach of Contract

76.    As a result of the Loan Representations, First Consolidated and MERS agreed not to charge an interest rate under the Home Equity Note above nine percent (9%) and that ultimately, a fixed interest rate would be ascribed to the Home Equity Note.  However, by charging interest rates in excess of such amount and never setting a fixed rate, First Consolidated, MERS, GMAC, and Deutsche Bank have breached the contract with Plaintiffs Gorman.

77.    By violating the agreement on interest rates, Plaintiffs Gorman have been harmed.

78.    To collect the amount of interest improperly charged and to prevent further harm,
Plaintiffs engaged legal counsel to stop the harm described above, and Plaintiffs have suffered
financial damages by the charging of the improper interest rate and the expenditure and accrual
of attorneys' fees.

79.    As a result of the foregoing actions, Plaintiffs Gorman sue for damages against
First Consolidated, MERS, GMAC, and Deutsche Bank for the foregoing stated causes of action,
respectfully, in an amount within the jurisdictional limits of this Court for which Plaintiffs now
seeks from Defendants.

### 5. Violations of the Texas Debt Collections Practices Act

80.    By making and coordinating the harassing collection efforts, by attempting to
collect funds not do personally due from Plaintiffs Gorman, and by attempting to coerce funds
from Plaintiffs Gorman, GMAC and Deutsche Bank have violated the Texas Debt Collection
Practices Act.

81.    By violating such Act, Plaintiffs Gorman have been harmed.

82.    To protect Plaintiffs, Plaintiffs engaged legal counsel to stop the harm described
above, and Plaintiffs have suffered financial damages by the charging of the improper interest
rate and the expenditure and accrual of attorneys' fees.

83.    As a result of the foregoing actions, Plaintiffs Gorman sue for damages against
First GMAC and Deutsche Bank for the foregoing stated cause of action, respectfully, in an
amount within the jurisdictional limits of this Court for which Plaintiffs now seeks from
Defendants.

### 6. Lender Liability

84.    Because the relationship between a home equity borrower and a home equity lender is a relationship protected by the laws of the State of Texas, including but not being limited to the projections afforded by the Texas Constitution, such a home equity relationship is a "special relationship" under the laws of the State of Texas, that includes the implied covenant to act in a manner of good and fair dealing.

85.    By executing the Home Equity Note, such a "special relationship" exists between Plaintiffs Gorman, on the one hand, and Home Equity Note owner and servicer, on the other hand.

86.    By executing the Home Equity Lien, such a "special relationship" exists between Plaintiffs Gorman on the one hand, and beneficiary (and its agents) of the Home Equity Lien, on the other hand.

87.    A violation of such "special relationship" and a failure to act in a manner of good and fair dealing-when committed by a lender, or its agents, creates a cause of action for lender liability.

88.    First Consolidated, MERS, GMAC, and Deutsche Bank violated said "special relationship" and failed to act in a manner of good faith and fair dealing as to the Plaintiffs when they (respectively):

   a)    committed fraud and fraud in the inducement as described above;

   b)    conspired to harm Plaintiffs, as described above;

   c)    committing usury, as described above;

   d)    breaching the agreement as to the interest rate limit to be charged under the Home Equity Note, as described above

**PLAINTIFFS' ORIGINAL PETITION**                                                                 19
glaw 1 16 2012

     e)      violating the Texas Debt Collections Practices Act a described above; and

     f)      by entering into and attempting to then enforce the Home Equity Loan that was created in violation of the Constitutional Protections;

     89.     Plaintiffs have suffered damages as a resulting of the foregoing actions of lender liability committed by Defendant Deutsche Bank.

     90.     Plaintiffs now sue First Consolidated, MERS, GMAC, and Deutsche Bank for their respective foregoing acts of lender liability, and Plaintiffs request that Plaintiffs recover the amount of such damages suffered, and all other relief available to them as a result thereof, including but not being limited to reasonable and necessary attorneys' fees incurred by Plaintiffs and pre and post judgment interest as may be allowed by law.

     **7.**     **Declaratory Judgment Relief**

     91.     Because of existing uncertainties as to the ownership of the Home Equity Note; the owner of the rights of the beneficiary under the Home Equity Lien; and the amounts properly due under the Home Equity Loan, Plaintiffs seek declaratory rulings as to such matters as such rulings are allowed by **Chapter 37 of the Texas Civil Practice & Remedies Code.**

     92.     Declaratory rulings (are requested by Plaintiffs) as to existing uncertainties as to the ownership of the Home Equity Note and the owner of the rights of the beneficiary under the Home Equity Lien are sought as to Defendants First Consolidated, MERS, GMAC, and Deutsche Bank.

     93.     After declaratory rulings are made as to the ownership of the Home Equity Note and the owner of the rights of the beneficiary under the Home Equity Lien, the Plaintiffs request Declaratory Rulings as and the amounts properly due under the Home Equity Loan.

94.     After declaratory rulings are made as to the forgoing, the Plaintiffs request Declaratory Rulings as to whether the Home Equity Note was properly accelerated and whether or not any party has a current right to foreclose upon the Plaintiffs' Homestead.

95.     As the signatory on the Home Equity Note for First Consolidated and as the purported lone remaining shareholder of First Consolidated, Plaintiffs Gorman also sue Defendant DeWitt as to all the actions asserted against First Consolidated.

96.     Plaintiffs also request any and other remedies available to it as a result of the foregoing, including but not being limited to reasonable and necessary attorneys' fees incurred by Plaintiffs.

97.     As described above, Defendants' actions towards Plaintiffs Gorman have also been, as stated, fraudulent, unconscionable, further, and malicious in such a nature to entitle Plaintiffs Gorman to all penalty, exemplary, and punitive damages allowed by law, in an amount within the jurisdictional limits of this Court.

98.     Further, Plaintiffs Gorman are entitled to recover reasonable and necessary attorney fees under the laws of the State of Texas and hereby request same, in an amount within the jurisdictional limits of this Court.

### G. Request for Jury

99.     Plaintiffs Gorman hereby request a jury and tender herewith the appropriate fee.

### H. Request for Disclosures

100.    Plaintiffs Gorman hereby request that Defendants provide the applicable answers to the Request for Disclosure provided by the Texas Rules of Civil Procedure.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Gorman pray that upon final trial hereof, that judgment be entered in favor of Plaintiffs Gorman, that all costs of Court be taxed against Defendants, and that Plaintiffs Gorman have such further and other relief, general and special, both at law or in equity, to which they may show themselves to be justly entitled.

Respectfully submitted,

Gorman Law Offices, P.C.

By:

Terry P. Gorman
State Bar No. 08218200
1400 Preston Road, Suite 400
Plano, Texas 75093-5186
Telephone:     (972) 235-4700
Telecopier:    (214) 540-6609
terry@gormanlawtexas.com
**COUNSEL FOR TERRY PATRICK GORMAN
and KAREN GORMAN**