## Exhibit H

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **TERRY PATRICK GORMAN and** | ) | |
| **KAREN GORMAN,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Civil Action No.: 4:12-cv-00098-RAS** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **FIRST CONSOLIDATED MORTGAGE** | ) | |
| **CO.; MORTGAGE ELECTRONIC** | ) | |
| **REGISTRATION SYSTEMS, INC.;** | ) | |
| **DEUTSCHE BANK NATIONAL TRUST** | ) | |
| **COMPANY, AS INDENTURE** | ) | |
| **TRUSTEE UNDER THE INDENTURE** | ) | |
| **RELATING TO IMH ASSETS CORP,** | ) | |
| **COLLATERALIZED ASSET-BACKED** | ) | |
| **BONDS, SERIES 2005-7; RAY T.** | ) | |
| **DEWITT III; and GMAC MORTGAGE,** | ) | |
| **LLC** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## DEFENDANTS' MOTION TO DISMISS
## PLAINTIFFS' FIRST AMENDED COMPLAINT UNDER RULE 12(b)(6)
## AND INCORPORATED BRIEF IN SUPPORT THEREOF

---

**COME NOW** Defendants Deutsche Bank National Trust Company, as Indenture Trustee

under the Indenture Relating to IMH Assets Corp., Collateralized Asset-Backed Bonds, Series

2005-7 ("Deutsche"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and GMAC

Mortgage, LLC ("GMAC") (collectively, "Defendants"), and hereby move the Court to dismiss

Plaintiffs Terry Patrick Gorman and Karen Gorman's ("Plaintiffs") First Amended Complaint

("Amended Complaint") in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).  In further support of

this Motion, Defendants state as follows:

1

## I. Introduction

This lawsuit arises out of Plaintiffs' default on their mortgage loan and Defendants' subsequent efforts to collect on that loan.   Plaintiffs seek, *inter alia*, damages and declaratory relief invalidating Defendants' lien on Plaintiffs' property.   This Amended Complaint is Plaintiffs third pleading related to the facts and circumstances surrounding the formation, servicing, and foreclosure of the mortgage loan. As set forth in greater detail below, Plaintiffs' allegations fail to support a cognizable cause of action and, therefore, Plaintiffs' Amended Complaint is due to be dismissed under Rule 12(b)(6).

## II. Statement of the Issues

Pursuant to Local Rule CV-7, Defendants state that the issue to be decided by the Court is whether Plaintiffs' Amended Complaint fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) and should be dismissed with prejudice.

## II. Factual and Procedural Background

1.      On May 9, 2005, Plaintiffs executed a Texas Home Equity Adjustable Rate Note ("Note") in the original principle amount of $262,500.00.  (Orig. Pet., ¶ 12).  A true and correct copy of the Note is attached hereto as Exhibit A.[1]

2.      Concurrent with the execution of the Note, Plaintiffs executed a Texas Home Equity Security Instrument ("Security Instrument"), granting a lien on the property at 2812 Browning Drive, Plano, Texas 75093 (the "Property"). (Orig. Pet., ¶ 13).  A true and correct

---

[1] In ruling on a Rule 12(b)(6) motion to dismiss, the Court may consider documents referred to in the Complaint that are central to the parties' claims.  *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)) ("When reviewing a [Rule 12(b)(6)] motion to dismiss, a district court 'must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motion to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'").

1/2313772.1

copy of the Security Instrument is attached hereto as Exhibit B.  The Security Instrument was assigned to Deutsche on January 2, 2009.

3.      On July 6, 2011, Defendant submitted an Application for Expedited Foreclosure Proceeding Pursuant to Rule 736 of the Texas Rules of Civil Procedure to the Collin County District Court ("Foreclosure Application"), styled as Cause No. 429-2799-2011.

4.      On October 26, 2011, Plaintiffs filed an action against Deutsche and GMAC— styled *Terry P. Gorman and Karen Gorman v. Deutsche Bank National Trust Company, as Indenture Trustee under the Indenture Relating to IMH Assets Corp., Collateralized Asset-Backed Bonds, Series 2005-7 and GMAC Mortgage, LLC*, Cause No. 429-04450-2011 in the 429th Judicial District Court of Collin County Texas.  Deutsche and GMAC removed that action to the United States District Court for the Eastern District of Texas, Sherman Division on November 14, 2011, Case No. 4:11-cv-00748.  Plaintiffs voluntarily dismissed that action on December 14, 2011.  (Case No. 4:11-cv-00748, Doc. 9, 10).

5.      On or about January 17, 2012, Plaintiffs filed the instant, above-styled action against Defendants in the 401st Judicial District Court of Collin County, Texas, Cause No. 401-00145-201.  Defendants timely removed this action to the United States District Court for the Eastern District of Texas, Sherman Division, on February 17, 2012.

6.      Defendants filed their Motion to Dismiss Plaintiffs' Original Petition on February 24, 2012.  (Doc. 8).

7.      Plaintiffs filed the instant Amended Complaint on March 21, 2012.  (Doc. 10).

### III. Plaintiffs' Allegations

The allegations in Plaintiffs' Amended Complaint primarily revolve around alleged misrepresentations made at the inception of the mortgage loan.  (*See* Am. Compl., ¶¶ 9-41).

1/2313772.1

Plaintiffs also make vague allegations that the Assignment transferring the interest in the Note and Security Instrument to Defendants is invalid and seek a court declaration to that effect. Notably, Plaintiffs admitted in the Original Petition that they are in default under the terms of their Note.[2] (Orig. Pet., ¶¶ 28-29).

Plaintiffs' Amended Complaint mischaracterizes the terms of the Note and Security Instrument, and shows a misunderstanding of basic secured-transactions law. Plaintiffs allege that Defendants "demand[ed] . . . personal payments purportedly due under the Home Equity Note . . . despite the fact that Plaintiffs [] are not personally liable under the Home Equity Note." (Am. Pet., ¶ 69, 70). Plaintiffs paint Defendants as having "publically refuted, repudiated, and violated the Non-recourse Protections" of the Note by requesting that Plaintiffs pay the amounts due under the terms of the Note.[3] (See Am. Pet., ¶ 78). Plaintiffs, however, conflate the remittance and collection of amounts due under the terms of the Note with the enforcement of a judgment on the Note. The Note states that "each person who signs the Note is responsible for ensuring that all of [the] promises and obligations in this Note are performed, including payment of the full amount owed." (Ex. A, ¶ 9). The Note's guarantee that it is made "without personal liability" against Plaintiffs relates to the enforcement of a judgment on the Note, not the obligation to make the payments due under the terms of the Note.[4] (See id.). Plaintiffs' nonsensical argument that they were not personally liable for making payments according to the terms of the Note contradicts the explicit language of the Note and defies logic. Simply put,

---

[2] As of June 2011, Plaintiffs were behind on the payments due under the Note by more than $150,000.00.

[3] Notably, Plaintiffs do not assert that Defendants attempted to garnish their wages or seize Plaintiffs' personal property. Rather, Plaintiffs are arguing that the simple act of demanding payment pursuant to the terms of the Note constitutes a violation of the non-recourse provisions of the Note.

[4] Setting aside the legal implausibility of this argument, Plaintiffs conception of what is "personally due" under the Note is completely impractical. Under Plaintiffs' reasoning, Defendants could not send a bill, statement, or default notice, since this would be seeking a "personal payment" on the Note.

1/2313772.1

Defendants could not possibly have violated any non-recourse provisions of the Note or pursuant to Texas law, because there *has not been a judgment* on the Note and Defendants have not attempted to attach any of Plaintiffs' personal assets.[5]  *See Black's Law Dictionary*, 435 (3d pocket ed. 2006) (defining "nonrecourse loan" as a "secured loan that allows the lender to attach only the collateral, not the borrower's personal assets, if the loan is not repaid").

Plaintiffs also disingenuously allege that they "were required to engage an attorney to represent Plaintiffs in this matter" and have suffered financial damages by the expenditure and accrual of attorneys' fees.  (Orig. Pet., ¶¶ 80-84).  The attorney for Plaintiffs is Terry P. Gorman. *Plaintiff* Terry Patrick Gorman and *attorney* Terry P. Gorman are, in fact, one-in-the-same. While Plaintiff Terry Gorman is a licensed attorney, he is representing *himself* and his wife in this action.  *See Kay v. Ehrler*, 499 U.S. 432 (1991) (denying an award of attorney's fees to an attorney representing himself in a civil rights action).

## IV. Standard of Review

It is well-established that a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what . . . the claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-51 (2009); FED. R. CIV. P. 8(a)(2). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level."  *Twombly*, at 555.  Further, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."  *Id.* at 562.  "Where the complaint is devoid of facts that would put the defendant on notice as to what conduct supports the claims, the complaint fails to satisfy the

---

[5] In fact, Plaintiffs filed this very action to prevent Defendants from enforcing the Note and Security Instrument *against the secured collateral*, through foreclosure.

1/2313772.1

requirement of notice pleading." *Anderson v. U.S. Dept. of Housing and Urban Development*, 554 F.3d 525, 528 (5th Cir. 2008).

Further, conclusory allegations and legal conclusions are insufficient to sustain this burden. *Iqbal*, 129 S. Ct. at 1949-50; *Lechner v. CitiMortgage, Inc.*, No. 4:09-CV-302-Y, 2009 WL 2356142, at *2 (N.D. Tex. July 29, 2009) ("The plaintiff must . . . plead specific facts, not mere conclusory allegations, to avoid dismissal."). In fact, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Hamilton v. First American Title Co.*, No. 3:07-CV-1442-G, 2008 WL 382803 at *2 (N.D. Tex. Feb. 13, 2008) (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations, unwarranted deductions of fact, or legal conclusions masquerading as factual allegations will not suffice to prevent the granting of a motion to dismiss." *Percival v. American Home Mortgage Corp.*, 469 F. Supp. 2d 409, 412 (N.D. Tex. Jan. 16, 2007). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S. Ct. at 1950.

Dismissal under Rule 12(b)(6) is warranted where the complaint either lacks a cognizable legal theory or lacks sufficient facts alleged under a cognizable legal theory. The Fifth Circuit may have provided the most apt explanation of Rule 8(a)'s requirement in *Anderson* when it noted: "[u]nder Rule 8(a), a complaint must do more than name laws that may have been violated by the defendant; it must also allege facts regarding what conduct violated those laws. In other words, a complaint must put the defendant on notice as to what conduct is being called for defense in a court of law." 554 F.3d at 528-29.

<u>V. Argument</u>

**A.    Plaintiffs fail to state a claim for fraud (Counts 2-4).**

Plaintiffs' fraud claims fail as a matter of law because the claim does not include all the necessary elements of fraud under Texas law, is barred by the applicable statute of limitations to the extent it relies upon alleged misrepresentations or nondisclosures made at the inception of the loan, is barred by the statute of frauds to the extent it relies upon alleged oral representations, and is barred by the economic loss doctrine.

**1.    Plaintiffs' fraud claim does not state all the elements of fraud required by Texas law.**

"The elements of fraud in Texas are (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury." *Shandong Yinguang Chemical Industries Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010).   The elements of fraud by nondisclosure are "(1) the defendant failed to disclose facts to the plaintiff, (2) the defendant had a duty to disclose those facts, (3) the facts were material, (4) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts, (5) the defendant was deliberately silent when it had a duty to speak, (6) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting, (7) the plaintiff relied on the defendant's nondisclosure, and (8) the plaintiff was injured as a result of acting without that knowledge." *7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys*., 245 S.W.3d 488, 507 n. 27 (Tex. App.-Houston [14th Dist.] 2007, pet. denied)

Plaintiffs' Amended Complaint completely fails to state all the elements of fraud. Plaintiffs' fraud claim against MERS—Count 2—fails first and foremost because, contrary to Plaintiffs' contentions, MERS' involvement in the mortgage loan was explicitly disclosed in the Security Instrument. MERS is, in fact, defined on page 1 of the Security Instrument as "the beneficiary of this security instrument." (Ex. B, p. 1). Moreover, page 3 of the Security Instrument states that the "beneficiary of [the] Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns)." (*Id.* at p. 3). Plaintiffs acknowledge in the Amended Complaint that MERS is listed as the beneficiary of the Note and Security Instrument. (*See* Am. Compl. ¶ 20). Thus, not only was there no false representation or nondisclosure, but Plaintiffs also failed to establish that they did not have an equal opportunity to discover the facts.

The other alleged misrepresentations and nondisclosures complained of in the Amended Complaint were actually clearly set out in the loan agreements executed by Plaintiffs. The Note clearly states that the interest rate "may change" and provides, in great detail, the circumstances and calculations that affect the Note's interest rate. (Note, Ex. A., ¶ 2, 4). Moreover, Plaintiffs executed a "Texas Home Equity Adjustable Rate Rider" ("Adjustable Rate Rider") contemporaneously with the Note that emphasizes that the Note's interest rate may vary between 15.4900% and 9.4900%, and reaffirms the circumstances and calculations that affect the Note's interest rate. (Texas Home Equity Adjustable Rate Rider, attached hereto as Exhibit C). Regardless of the alleged representations made before the closing of the loan, Plaintiffs executed the Note and Adjustable Rate Rider that clearly and conspicuously contain terms allowing for an interest rate between 9.4900% and 15.4900%.

Additionally, Plaintiffs' Amended Complaint does not establish the element of damages. Plaintiffs merely recite that they "have been financially harmed" as a result of the alleged fraud.

8

This formulaic recitation is precisely the type of pleading that *Twombly* found insufficient to withstand a motion to dismiss. *See Twombly*, 550 U.S. at 555. Accordingly, Plaintiffs do not—and cannot—meet all the elements of a proper fraud claim under Texas law.[6]

> **2.    Plaintiffs' fraud claims are barred by the statute of limitations to the extent they rely upon alleged misrepresentations or nondisclosures made at the inception of the loan.**

Under Texas law, a fraud claim must be brought "within four years of when the fraud should have been discovered by reasonable diligence." *Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 617 (Tex. 2007) (citations omitted). The fraud claim "accrues upon the perpetration of the fraud, or if the fraud is concealed, when it is discovered or, through the exercise of reasonable diligence, should have been discovered." *Pooley v. Seal*, 802 S.W.2d 390, 393 (Tex. App.—Corpus Christi 1990, writ denied). "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling. . . ." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). "[T]he question of when a cause of action accrues is a matter of law for the court to decide." *See TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 355 (5th Cir. 2008).

To the extent they rely upon misrepresentations or nondisclosures made at the inception of the loan, Plaintiffs' fraud claims are time barred under the applicable four-year statute of limitations. Any alleged fraud occurring at the closing of the loan took place on or before May

---

[6] Plaintiff's Amended Complaint also includes a vague claim relating to the constitutional protections for a home equity loan afforded by the Texas constitution. Plaintiffs, however, have not established a fraud claim based on these allegations, because the allegations fail to identify a representation, intent, reliance, or injury related to the alleged constitutional violations. Nonetheless, any claim under the Texas constitution's homestead protections would be barred by the applicable four-year statute of limitations, as the loan was closed on May 9, 2005 and the Original Petition was not filed until January 16, 2012. *See Blodgett v. BAC Home Loans Servicing, LP*, 2012 WL 32950, at *1-3 (E.D. Tex. Jan. 6, 2012) (holding that a four-year statute of limitations, accruing at the closing of the loan, applied to violations of the Texas constitution's homestead protections); *Rivera v. Countrywide Home Loans, Inc.*, 262 S.W.2d 834, 840 (Tex. App.-Dallas 2008, no pet.) (holding that the four-year statute of limitations for a violation of Texas constitution's homestead protections accrued on the date when the extension of credit is made).

9, 2005. Plaintiffs filed their Original Petition on or about January 16, 2012—more than six years later. Plaintiffs do not allege that Defendants concealed the fraud. In fact, the conflict between the alleged representations and nondisclosures and the contract was apparent from the face of the contract as executed on May 9, 2005. *See Val-Com Acquisitions Trust v. Wells Fargo Bank, Nat. Ass'n*, 2011 WL 2517230, at *5 (N.D. Tex. June 23, 2011) (dismissing a borrower's fraud claims based on representations made prior to the closing of the loan under the statute of limitations and holding that the claims accrued at the execution of the loan). Plaintiffs' fraud claims are therefore time barred and due to be dismissed.

### 3. Plaintiffs' fraud claims are barred by the statute of frauds to the extent they rely upon alleged oral representations.

The Texas statute of frauds states that "[a] loan agreement in which the amount involved . . . exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative." TEX. BUS. & COM. CODE § 26.02(b). Further, "[t]he rights and obligations of the parties to [a loan] agreement . . . shall be determined solely from the written loan agreement, and any prior oral agreements between the parties are superseded by and merged into the loan agreement." *Id.* at § 26.02(c). A loan agreement "may not be varied by any oral agreements or discussions that occur before or contemporaneously with the execution of the agreement." *Id.* at § 26.02(d). Thus, § 26.02 bars any claim of fraud based on prior or contemporaneous oral representations that conflict with the written terms of the contract. *See Foster*, 2002 WL 31730405, at *3 (holding that a similar claim of fraudulent inducement based on oral representations prior to the execution of the written contract were barred by § 26.02).

Plaintiffs' fraud claims are barred by the statute of frauds to the extent Plaintiffs complain of alleged *oral* representations that conflicted with the written terms of the loan. Because an

1/2313772.1

enforceable, written contract exists, the statute of frauds bars Plaintiffs from asserting a cause of action for oral representations that are alleged to vary the terms of the written contract. *See Foster*, 2002 WL 31730405 at \*3.

The Note clearly indicates that only the written documents govern the agreement and precludes any prior, contemporaneous, or subsequent oral agreements. The Note signed by Plaintiffs on May 9, 2005, contains the following paragraph:

> **THIS NOTE CONSTITUTES A "WRITTEN LOAN AGREEMENT" PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES. THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.[7]**

This conspicuous merger clause precludes any claims of an oral agreement under Tex. Bus. & Com. Code § 26.02. That statute states very clearly that any loan agreement[8] of greater than $50,000.00 is not enforceable unless the agreement is in writing and signed by the party to be bound or its agent and that the rights and obligations of the parties "shall be determined solely from the written loan agreement." Tex. Bus. & Com. Code § 26.02(b)-(c). The statute clearly includes the allegations of Plaintiffs here, where the financial institution "delays repayment of or agrees to loan or delay repayment of money…or make a financial accommodation." *Id.* at § 26.02(a)(2). Plaintiff admitted to signing the Note and Security Instrument (Am. Compl., ¶¶

---

[7] Note, Exh. A (emphasis original).

[8] "'Loan agreement' means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or **delays repayment of or agrees to loan or delay repayment of money**, goods, or another thing of value or to otherwise extend credit **or make a financial accommodation**." Tex. Bus. & Com. Code § 26.02(a)(2) (emphasis added). *See also*, *Schuhart v. Chase Home Finance, LLC*, 2006 WL 1897263 \*3 (S.D. Tex., July 10, 2006) ("If an agreement falls within the statute of frauds, then any modification materially affecting the character or value of the agreement also falls within the statute of frauds.") (internal citations omitted).

1/2313772.1

15-16).  The statute of frauds as codified in Tex. Bus. & Com. Code § 26.02 is applicable and bars Plaintiffs' claims regardless of whatever oral statements they allege may have been made to them.[9]

In a case similar to the instant action, a Texas Appellate Court held that "any agreement to forego or delay foreclosure…would fall under the provisions of section 26.02(b), and be included under the definition of 'loan agreement' in section 26.02(a)(2)."  *Krudop v. Bridge City State Bank*, 2006 WL 3627078 *4 (Tex. App.-Beaumont Dec. 14, 2006).  That court held that "any alleged oral agreement entered into between [the parties] subsequent to the execution of the written loan agreement is unenforceable as a matter of law, regardless of whether or not it materially modifies the underlying written loan agreements."  *Id.*   Since the merger clause was as conspicuous in the *Krudop* case as in the instant action, "the presence of the 'merger clause' in loan agreements prohibits the enforceability of any alleged oral modification of the provisions of the written loan agreements."  *Id.*

Other similar cases in Texas federal district courts have stated that any supposed modification to a loan agreement must be in writing to be enforceable under Tex. Bus. & Com. Code § 26.02(a).  *Deuley v. Chase Home Finance*, LLC, 2006 WL 1155230 (S.D. Tex. Apr. 26, 2006), addressed allegations very similar to those made by Plaintiff here.  The Court in *Deuley* concluded that the statute of frauds had not been satisfied where the lender had orally agreed to accommodate their request for financial assistance but subsequently denied their application for assistance.  *Id.* at *1.  Applying Section 26.02 of the Texas Business and Commerce Code, the Court concluded that the alleged oral agreement was subject to the statute of frauds and therefore

---

[9] Whether an agreement falls within the Statute of Frauds is a matter of law for the court to determine.  *Tabrizi v. Daz-Rez Corp.*, 153 S.W.3d 63, 63 (Tex.App.-San Antonio 2004); *Metromarketing Servs., Inc. v. HTT Headwear, Ltd.*, 15 S.W.3d 190, 195 (Tex.App.-Houston [14 Dist.] 2000).

1/2313772.1

unenforceable.  *Id.* at *2-3.  Because the purported modification related to an agreement that must be in writing, the modification also had to be in writing.  *Id.* at *6.

Here, Plaintiffs' fraud claims are indisputably barred under the application of § 26.02. *See Hugh Symons Group v. Motorola, Inc.*, 292 F.3d 466, 470 (5th Cir. 2002) (*citing Haase v. Glazner*, 62 S.W.3d 795, 797 (Tex. 2001)) ("a plaintiff may not recover damages in tort for claims arising out of an unenforceable contract under the statute of frauds").   Although a plaintiff may be entitled to "out of pocket" expenses under *Haase v. Glazner*, 62 S.W.3d 795, 797 (Tex. 2001), even when a fraud claim is barred by the statute of frauds, there is no sustainable claim for "out of pocket" expenses here.  First, Plaintiffs have not alleged any out of pocket expenses.  *See McMillian v. Hillman Intern Brands, Ltd.*, 2004 WL 1660760 *3 n.2 (Tex.App.-Hous. [14th Dist.] July 27, 2004) (summary judgment upheld when plaintiff alleged no out of pocket expenses in his petition); *Haase*, 62 S.W.3d at 799-800 (court examines the claims in the petition for "out of pocket" expenses); *Schuhart*, 2006 WL 1897263 at *5-6 (granting summary judgment where plaintiffs had no evidence of "out of pocket" expenses); *Camp v. Ruffin*, 30 F.3d 37, 38 (5th Cir. 1994) ("To support an action for fraud or misrepresentation, a plaintiff must show what he has actually lost—i.e., out-of-pocket damages or pecuniary loss.").   Rather, the only damages alleged are "attorneys' fees" and actual and punitive damages.  (*See* Am. Compl., pp. 17, 40).  None of these qualify as "out of pocket" expenses.  While Plaintiffs request attorney's fees in their prayer for relief, attorneys' fees do not amount to "out of pocket" expenses, as they were expended as part of the litigation at Plaintiffs' own election, not in relation to the subject matter of the transaction.  Legitimate "out of pocket" expenses would encompass all pecuniary amounts expended in reasonable reliance upon the representation, of which Plaintiffs here have alleged none.

4.      **Plaintiffs' fraud claims are barred by the economic loss doctrine.**

"It is well-settled under Texas law ... that, '[w]hen the injury is only the economic loss to the subject matter of a contract itself, the action sounds in contract alone.'" *Wismer Distributing Co. v. Brink's, Inc.*, 202 F. App'x 729, 731 (5th Cir. 2006) (*quoting Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)); *S & W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 538 (5th Cir. 2003); *Southwestern Bell Telephone Co. v. DeLanney*, 809 S.W.2d 493 (Tex. 1991).

The only possible injury here is the economic loss related to the homestead—the subject matter of the contract.  (*See* Orig. Pet., ¶ 61).  Therefore, the only cause of action available to Plaintiffs is in contract, and not in tort.  *See Kiggundu v. Mortgage Electronic Registration Systems, Inc.*, 2011 WL 2606359, at *7 (S.D. Tex. June 30, 2011) (dismissing similar fraud claims under the economic loss theory).  Accordingly, Plaintiffs' fraud claims are due to be dismissed.

B.      **Plaintiffs' fraud in the inducement claims—Counts 6-8—are due to be dismissed because the loan agreement executed by Plaintiffs directly contradicts the alleged misrepresentations that constitute the fraud, the claims are barred by the statute of frauds and statute of limitations, and the only injury is economic loss.**

Plaintiffs' fraud in the inducement claim is untenable because it is directly contradicted by the loan documents executed by Plaintiffs at the closing of the loan, is barred by the statute of frauds and statute of limitations, and Plaintiffs' only injury is economic loss.

"To state a claim for fraudulent inducement under Texas law, a plaintiff must prove the basic elements of fraud as well as an underlying contract which was induced." *Chance v. Aurora Loan Services, L.L.C.*, 2012 WL 912939, at *5 (N.D. Tex. Marsh 19, 2012); *see also River Capital Advisors of North Carolina, Inc. v. FCS Advisors, Inc.*, 2011 WL 831282, at *5 (E.D. Tex. February 7, 2011) ("Fraudulent inducement is a particular species of fraud that arises only

14

in the context of a contract and requires the existence of a contract as part of its proof"); *GMAC Commercial Mortg. Corp. v. East Texas Holdings, Inc.*, 441 F.Supp.2d 801, 807 (E.D. Tex. 2006) ("Fraudulent inducement is a fraud claim in the context of the formation of a contract."). Moreover, for a valid claim of fraudulent inducement, "the fraud must be something more than merely oral representations that conflict with the terms of the written contract." *Foster v. Bank One Texas NA*, 54 Fed. Appx. 592, 2002 WL 31730405, at *3 (5th Cir. 2002) (*quoting Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 179 (Tex. 1997)).

As previously described, Plaintiffs fail to state a claim for fraud for four separate and independent reasons: (1) Plaintiffs do not—and cannot—establish all the elements of a fraud claim; (2) any fraud claim is barred by the statute of limitations to the extent it relies upon alleged representations made at the inception of the loan; (3) any fraud claim is barred by the statute of frauds to the extent that it contradicts the terms of the written loan agreements; and (4) the economic loss doctrine bars any fraud claim. Accordingly, Plaintiffs do not state a claim for fraudulent inducement, and their fraudulent inducement claims are due to be dismissed.

### C.    Plaintiffs' usury claims—Counts 10-12—are time barred, fail to state a claim, and fail to meet the pleading requirements of *Twombly* and *Iqbal*.

Plaintiffs' usury claims against Defendants fail as a matter of law because they are barred by the applicable statute of limitations, are based on Plaintiffs' untenable personal liability theory, and are not pled with sufficient particularity.

The statute of limitations on a debtor's usury claim begins to run at the time an allegedly usurious payment is made. TEX. FIN. CODE. § 305.006(a) ("An action under this chapter must be brought within four years after the date on which the usurious interest was contracted for, charged, or received."); *Sotelo v. Interstate Financial Corp.*, 224 S.W.3d 517, 519 n.3 (Tex. App.—El Paso 2007); *Hurley v. Nat'l Bank of Commerce*, 529 S.W.2d 788, 790 (Tex. Civ.

1/2313772.1

App.—Dallas 1975, *writ ref'd n.r.e.*).  To the extent Plaintiffs' usury claim stems from the fees charged at the inception of the loan, this claim—if it exists—arose when the alleged usurious fees were charged, contracted for, and received at the creation of the loan on May 9, 2005.  (*See* Orig. Pet., ¶¶ 12, 72).  Plaintiffs filed their Original Petition on or about January 17, 2012, more than six years after the alleged usurious fees were charged.  Therefore, Plaintiffs' usury claim related to fees charged at the inception of the loan is barred as a matter of law by the four-year statute of limitations.

Further, Plaintiffs usury claims are due to be dismissed to the extent they rely upon Plaintiffs' theory that they were not personally liable on the note.  As previously discussed, Plaintiffs *are* personally responsible for making payments pursuant to the terms of the Note.  (*See* Ex. A, ¶ 3 ("I will pay principle and interest by making a payment every month.")).  Defendants did not and could not have violated the non-recourse provisions of the Note or Texas law because Defendants have not obtained a judgment on the Note.

Lastly, Plaintiffs failed to plead their usury claim with the specificity required by *Twombly* and *Iqbal*.  Plaintiffs state that Defendants "attempted to collect loan payments that were not legally due."  (Am. Compl., ¶¶ 137, 104, 143).  Plaintiffs do not state any actual facts sufficient to identify the alleged illegal payments.  This legal conclusion fails to meet *Twombly* and *Iqbal's* pleading standards and fails to put Defendants on proper notice of the basis for Plaintiffs' claims.  *See Iqbal*, 129 S. Ct. at 1949-50.

### D.    Plaintiffs' fail to state a claim for breach of contract (Counts 14-16).

Plaintiffs do not—and cannot—state all the elements of a breach of contract claim and, moreover, their breach of contract claims are barred by the statute of frauds to the extent they are based on alleged oral misrepresentations and barred by the four-year statute of limitations to the extent they are based on representations made at the inception of the loan.

1/2313772.1

Case 4:12-cv-00098-RAS Document 12 Filed 02/23/16 Page 17 of 28 PageID #: 240

12-12020-mg    Doc 9659-25    Filed 02/23/16    Entered 02/23/16 15:32:39    Pierce Decl.
Exhibit H    Pg 18 of 26

First, Plaintiffs' Amended Complaint does not state all the elements of a breach of contract cause of action.  Under Texas law, the "essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained as a result of the breach." *Simien v. Unifund CCR Partner*s, 321 S.W.3d 235, 247 (Tex. App.—Houston [1st Dist.] 2010); *see also Watson v. Citimortgage, Inc.*, 814 F.Supp.2d 726, 732 (E.D. Tex. 2011). Plaintiffs first breached the contract by defaulting on the terms of the Note and Deed of Trust. Thus, Plaintiffs did not perform under the contract and are barred as a matter of law from pursuing a breach of contract claim.  *Carr v. Norstok Bldg. Sys*., 767 S.W.2d 936, 939 (Tex. App.—Beaumont 1989, no writ) ("[A] party to a contract cannot enforce it or recover damages for its breach unless that party shows that he or she or it has performed the obligations imposed upon him or that he or she has offered to perform them and was able to do so or unless the party shows some valid excuse for failure perform.");  *Interceramic, Inca v. South Orient R.R. Co., Ltd*., 999 S.W.2d 920, 924 (Tex. App.—Texarkana 1999, pet. denied) ("[A] party who fails to perform his obligation may not thereafter enforce the remaining terms of the contract against the other party."); *see also Watson*, 814 F. Supp. 2d at 732 (holding that a plaintiff's failure to make the required monthly payments on the loan barred his breach of contract claim); *Wilkerson v. Citimortgage, Inc.*, 2011 WL 6937382, at *2 (N.D. Tex. Oct. 24, 2011) (denying plaintiff's breach of contract claim regarding lack of notice where plaintiff first breached the contract by failing to submit payments pursuant to the agreement).

Also, as previously discussed, the Texas' statute of frauds, TEX. BUS. & COM. CODE § 26.02(b), applies to Plaintiffs' loan and bars any claim relating to the breach of an oral contract. Thus, Plaintiffs' breach of contract claims which rely upon the breach of an oral agreement or

oral misrepresentations that vary from the written terms of the Note and related loan agreements are barred by § 26.02.  *See Fankhauser v. Fannie Mae*, 2011 WL 1630193, at *3 (E.D. Tex. March 30, 2011) (dismissing plaintiff's breach of contract claim based on an oral representation).

Further, Plaintiffs' breach of contract claims are barred by the statute of limitations to the extent they rely on alleged oral contracts entered into at the inception of the loan.  The statute of limitations for breach of contract is four years under Texas law.  TEX. PRAC. & REM. CODE § 16.004; *Law Offices of Moore & Associates v. Aetna Ins. Co.*, 902 F.2d 418, 423 (5th Cir. 1990). Plaintiffs' breach of contract claims relating to the alleged oral contracts made at the inception of the loan arose when the alleged misrepresentations were made—May 9, 2005.  (*See* Am. Compl., ¶¶ 147, 152, 157).  Plaintiffs filed this action on or about January 17, 2012, more than six years after the alleged harm occurred.  Therefore, Plaintiffs' breach of contract claims relating to these alleged oral contracts are barred by the applicable four-year statute of limitations and are due to be dismissed.

**E.    Plaintiffs' Texas Debt Collections Practices Act ("TDCA") causes of action— Counts 17-19—fail to state a claim.**

Plaintiffs' TDCA claims contain only scant factual details and are primarily comprised of legal conclusions.  To state a plausible claim for relief under the TDCA, however, Plaintiffs must allege facts showing that a violation of the statute occurred and that they were actually injured. Plaintiffs must also allege facts establishing a causal link between the conduct constituting the violation and the alleged injury.  *See* TEX. FIN. CODE § 392.403(a)(2).  Plaintiffs do not cite the section of the TDCA that was allegedly violated, nor provide more than legal conclusions to support this claim.  (*See* Am. Compl., ¶¶ 162-173)  Plaintiffs have done nothing more than provide speculative and conclusory allegations, which fail to pass muster under *Twombly* and *Iqbal. See also Dubrock v. GMAC Mortgage, LLC*, 2012 WL 629397, at *2 (E.D. Tex. Feb. 27,

Case 4:12-cv-00098-RAS Document #: 14 Filed 04/03/12 Page 15 of 28 PageID #: 240

12-12020-mg    Doc 9659-25    Filed 02/23/16    Entered 02/23/16 15:32:39    Pierce Decl.
Exhibit H    Pg 20 of 26

2012) (holding that speculative allegations were insufficient to sustain a claim under the TDCA).

Moreover, when requesting damages due to a TDCA violation, a plaintiff must show that his

damages were "sustained as a result of a violation of [the TDCA]." TEX. FIN. CODE §

392.403(a)(2). Plaintiffs' conclusory allegations that they were financially harmed as a result of

Defendants' actions are not entitled to an "assumption of truth." *Iqbal*, 129 S. Ct. at 1950.

### F.   Texas law does not recognize a cause of action for "predatory and unconscionable lender practices" (Counts 21-23).

There is no recognized cause of action under Texas law for "predatory and

unconscionable lending practices." *Brown v. Aurora Loan Services, LLC*, 2011 WL 2783992, at

*4 (E.D. Tex. June 7, 2011) (stating that "there is no 'predatory lending' cause of action in

Texas"); *Smith v. National City Mortg.*, 2010 WL 3338537, at *3 (W.D. Tex. Aug. 23, 2010)

(dismissing a plaintiff's "predatory lending" claim under Rule 12(b)(6) for failure to state a

claim). Accordingly, Plaintiffs' "predatory and unconscionable lending practices" claims—

Counts 21-23—are due to be dismissed.

### G.   Plaintiffs' lender liability claims—Counts 25-27—are due to be dismissed because no special relationship exists between Defendants and Plaintiffs.

Plaintiffs' claims of "lender liability" fail as a matter of law because no "special

relationship" existed between Plaintiffs and Defendants. "The duty of good faith and fair dealing

only exists in Texas where express language in a contract creates the duty or where a special

relationship of trust exists between the parties." *Graves v. Deutsche Bk. Nat. Trust Co.*, 2011 WL

2119189, at *3 (N.D. Tex. May 27, 2011). It is well established under Texas law that, ordinarily,

there is no special relationship between a mortgagor and mortgagee. *See Federal Deposit Ins.*

*Corp. v. Coleman*, 795 S.W.2d 706 (Tex. 1990) ("The relationship of a mortgagor and mortgagee

ordinarily does not involve a duty of good faith."); *Adams v. Bank of Am.*, 2011 WL 5080217, at

*7 (E.D. Tex. Oct. 26, 2011) ("In Texas, there is 'no special relationship between a mortgagor

19

and mortgagee.'") (*quoting Collier v. Wells Fargo Home Mortg.*, 2006 WL 1464170, at *8 (N.D.

Tex. May 26, 2006)); *Zoluaga v. BAC Home Loans Servicing, L.P.*, 2011 WL 5600377, at *6

(E.D. Tex. Nov. 16, 2011) (same). Thus, "absent a 'special relationship,' any duty to act in good

faith is contractual in nature and its breach does not amount to an independent tort." *Adams*,

2011 WL 5080217, at *7. (internal quotations omitted).

Plaintiffs simply allege that a special relationship exists between Plaintiffs and

Defendants by virtue of the execution of the Note and Security Instrument and Texas law. (Am.

Compl., ¶¶ 181-184). This is contrary to well-established Texas law, which holds that a special

relationship is not ordinarily created between a mortgagor and mortgagee. Plaintiffs do not—and

cannot—allege any other facts to demonstrate that a special relationship between Plaintiffs and

Defendants existed otherwise. Moreover, Plaintiffs affirmatively state that they had no prior

relationship with MERS. (Am. Compl., ¶ 24). Accordingly, Plaintiffs' claim of lender liability

fails as a matter of law and is due to be dismissed.

### H.    Plaintiffs' conspiracy claim—Counts 28-29—are time barred and otherwise fails to state a claim.

Plaintiffs' civil conspiracy claims against Defendants fail as a matter of law because they

are barred by the applicable statute of limitations and fail to state a claim. "Under Texas law, the

essential elements of a civil conspiracy are: (1) two or more persons; (2) an object to be

accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more

unlawful, overt acts; and (5) damages as a proximate result. Civil conspiracy requires specific

intent to agree to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful

means." *Wackman v. Rubsamen*, 602 F.3d 391, 408 (5th Cir. 2010) (*citing Tri v. J.T.T.*, 162

S.W.3d 552, 556 (Tex. 2005), *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996)) (internal

quotation marks omitted). The statute of limitations for a civil conspiracy claim is two years

under Texas law. *Stevenson v. Koutzarov*, 795 S.W.2d 313, 318 (Tex. App.—Houston [1st Dist.] 1990, writ denied). Further, a cause of action accrues when the wrongful act causes a legal injury, even if the fact of injury is not discovered until later, and even if the damages from the injury had not yet occurred. *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996).

To the extent Plaintiffs' conspiracy claim is based on the alleged misrepresentations made at the origination of the loan, Plaintiffs' claim of civil conspiracy is time-barred by the two-year statute of limitations. This claim relates to the alleged misrepresentations made upon the inception of the loan, which took place on May 9, 2005. Plaintiffs filed their Original Petition on or about January 17, 2012, more than six years after the events that Plaintiffs contend constitute conspiracy. Because the contract directly contradicts the alleged misrepresentations, Plaintiffs discovered or could have discovered that the alleged misrepresentations conflicted upon executing the contract. Therefore, Plaintiffs' civil conspiracy cause of action is barred as a matter of law by the two-year statute of limitations to the extent it relies upon the alleged misrepresentations made at the origination of the loan.

Plaintiffs' Amended Complaint further fails to set forth an unlawful act; accordingly, Plaintiffs have not stated all of the elements of a conspiracy claim. *See Kiggundu*, 2011 WL 2606359, at *7 (granting summary judgment on a civil conspiracy claim where the plaintiff's complaint failed to set forth an illegal action). Plaintiffs' conspiracy claim is predicated upon Plaintiffs' fraud, fraudulent inducement, usury, breach of contract, Texas Debt Collections Practices Act, and Texas Constitutional violations claims. (Am. Compl., ¶¶ 193, 195). As previously discussed, all of these claims fail as a matter of law. Accordingly, Plaintiffs failed to allege an unlawful act, and this claim is due to be dismissed.

**I.     Plaintiffs' declaratory judgment cause of action—Count 30—is due to be dismissed because no actual controversy exists.**

1/2313772.1

Plaintiffs' declaratory judgment cause of action is baseless and due to be dismissed because no actual controversy exists. "When a declaratory judgment action filed in state court is removed to federal court, that action is, in effect, converted into one brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202." *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998); *DiSanti v. Mortg. Elec. Registration Systems*, *Inc*., No. 4:10-CV-103, 2010 WL 3338633, at *3-4 (E.D. Tex. Aug. 23, 2010). However, application of either the Federal Declaratory Judgment Act or the Texas Declaratory Judgment Act, TEX. PRAC. & REM. CODE CH. 37, *et seq.*, produces the same result. Both the Federal and Texas Declaratory Judgment Acts require the existence of a justiciable controversy. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41 (1937); *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995).

To the extent Plaintiffs' declaratory relief is redundant of Plaintiffs other claims, no actual controversy exists, as all of Plaintiffs' claims are due to be dismissed. To the extent Plaintiffs seek a court declaration regarding the ownership of the Note and Security Instrument, Plaintiffs fail to allege an actual controversy. (*See* Orig. Pet., ¶¶ 91-92). Plaintiffs' base this request on Plaintiffs' uncertainties about the assignment of the Note and Security Instrument. (*See* Orig. Pet., ¶¶ 25-26). Though Plaintiffs only provide scant details which fail to demonstrate any deficiencies in the Assignment of the Note and Security Instrument, this claim is nonetheless barred because Plaintiffs' lack standing to challenge the assignment.

A borrower has no standing to challenge an assignment of his Security Instrument, as he is not a party to the assignment. *See, e.g.*, *Eskridge v. Fed. Home Loan Mortgage Corp*., 2011 WL 2163989, at *5 (W.D. Tex. Feb. 24, 2011) (dismissing plaintiff's claims under Rule 12(b)(6) because plaintiff had "no standing to contest the various assignments as she was not a party to the assignments."); *Spositi v. Federal Nat. Mortg. Ass'n*, 2011 WL 5977319, at *2-3 (E.D. Tex.

Nov. 3, 2011); *Malikyar v. BAC Home Loans Servicing, LP*, 2011 WL 5837262, at *4 (E.D. Tex.

Oct. 28, 2011); *Perry v. JPMorgan Chase*, 2011 WL 5837297, at *2-3 (E.D. Tex. Oct. 28, 2011);

*Lackey v. Reliance Mortg. Co., Inc.*, 2011 WL 5838189, at *3-4 (E.D. Tex. Oct. 28, 2011);

*Schieroni v. Deutsche Bank Nat. Trust Co.*, 2011 WL 3652194, at *6 (S.D. Tex. Aug. 18, 2011)

(granting defendant's 12(b)(6) motion and stating that where "the borrowers are not parties to the

assignment contracts, courts decline to find that an attempted foreclosure is invalid or otherwise

grant relief."); *DeFranceschi v. Wells Fargo Bank, NA*, 2011 WL 3875338, at *5 (N.D. Tex.

Aug. 31, 2011) ("Plaintiffs do not have standing to challenge the assignments because they were

not a party to those assignments."); *McAllister v. BAC Home Loans Servicing, LP*, 2011 WL

2200672, at *5 (E.D. Tex. April 28, 2011) (dismissing plaintiff's claim because "plaintiffs lack

standing to contest any assignment"); *Adams v. Bank of America*, 2011 WL 5080217, at *4 (E.D.

Tex. Oct. 26, 2011) (granting defendant's 12(b)(6) motion to dismiss and stating that "[p]laintiff

lacks standing to contest any assignment").   Accordingly, to the extent Plaintiffs base their

declaratory judgment cause of action on issues with the assignment of the Note and Security

Instrument, Plaintiffs do not state a cognizable cause of action.

Because Plaintiffs failed to plead the necessary facts to support a cognizable legal theory,

no actual justiciable controversy exists and Plaintiffs' declaratory judgment cause of action is

due to be dismissed.  *See Broyles v. Chase Home Finance*, No. 3:10-CV-2256-G, 2011 WL

1428904, at *5 (N.D. Tex. Apr. 13, 2011) (dismissing a similar declaratory judgment claim

where the plaintiff failed to plead a cognizable claim); *DiSanti*, 2010 WL 3338633, at *4

(granting motion to dismiss on plaintiff's declaratory judgment action where no live controversy

existed because plaintiff failed to plead a proper claim); *Wigginton v. Bank of New York Mellon*,

No. 3:10–CV–2128–G, 2011 WL 2669071, at *5 (N.D. Tex. July 7, 2011) (declining to consider

plaintiff's request for declaratory relief where plaintiff "failed to plead any cognizable claim against any of the defendants").

### J.     Plaintiffs should not be given an opportunity to amend.

Although district courts often afford plaintiffs an opportunity to cure pleading defects before dismissing a case with prejudice, such a dismissal without first granting leave to amend is proper where "it is clear that the defects are incurable." *Great Plains Trust Co.*, 313 F.3d 305, 329 (5th Cir. 2002).  Here, no such allowance is warranted, as Plaintiffs' Amended Complaint is based on untenable legal theories and a fundamental misunderstanding of secured transactions law.  Plaintiffs' claims based on their misunderstanding of their "personal liability" under the Note are pervasive and uncurable.  Moreover, the Amended Complaint is Plaintiffs' third bite at the apple.  Thus, any attempt at amendment would be futile and result in needless delay. *See Carlisle v. JPMorgan Chase Bank, N.A.*, 2012 WL 912735, at *3 (S.D. Tex. March 16, 2012) (dismissing plaintiff's claims related to a loan modification with prejudice where amendment would be futile because plaintiff's claims were based on untenable legal theories); *Geske v. Bank of America Home Loans*, 2011 WL 6968317, at *5 (N.D. Tex. Dec. 12, 2011) (denying plaintiffs an opportunity to amend where their claims were based on "erroneous legal assumptions").

## VI. Conclusion

Plaintiffs' Amended Complaint fails to state any viable causes of action.  There is no need for this case to occupy the Court's time or for any discovery to be conducted as there is simply no merit to any of the allegations.

**WHEREFORE**, for the reasons set forth above, Defendants respectfully request that Plaintiffs' Amended Complaint be dismissed in its entirety with prejudice.

DATED: April 3rd, 2012.

1/2313772.1

Respectfully submitted,

*/s/* Keith S. Anderson
Keith S. Anderson (TX Bar No. 24075789)
Graham W. Gerhardt (TX Bar No. 24075698)
BRADLEY ARANT BOULT CUMMINGS, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
kanderson@babc.com
ATTORNEYS FOR DEFENDANTS MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC.;
DEUTSCHE BANK NATIONAL TRUST COMPANY, AS
INDENTURE TRUSTEE UNDER THE INDENTURE
RELATING TO IMH ASSETS CORP., COLLATERALIZED
ASSET-BACKED BONDS, SERIES 2005-7; AND GMAC
MORTGAGE, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on April 3rd, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Terry P. Gorman
1400 Preston Road, Suite 400
Plano, TX 75093

*/s/* Keith S. Anderson
OF COUNSEL

1/2313772.1