## Exhibit M

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| **TERRY PATRICK GORMAN and KAREN GORMAN,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Civil Action No.: 4:12-cv-00098-RAS** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **FIRST CONSOLIDATED MORTGAGE CO.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE UNDER THE INDENTURE RELATING TO IMH ASSETS CORP, COLLATERALIZED ASSET-BACKED BONDS, SERIES 2005-7; RAY T. DEWITT III; and GMAC MORTGAGE, LLC** | ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| **Defendants.** | ) | |

---

### DEFENDANTS MORTGAGE ELECTRONIC REGISTRATIONS SYSTEMS, INC. & DEUTSCHE BANK NATIONAL TRUST COMPANY'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED BRIEF IN SUPPORT THEREOF

---

**COME NOW** Defendants Mortgage Electronic Registration Systems, Inc. ("MERS") and Deutsche Bank National Trust Company, as Indenture Trustee under the Indenture Relating to IMH Assets Corp., Collateralized Asset-Backed Bonds, Series 2005-7 ("Deutsche") (collectively, "Defendants") hereby submit this Motion for Summary Judgment and Incorporated Brief in Support Thereof pursuant to Fed. R. Civ. P. 56. Plaintiffs' claims are plainly contradicted by the loan documents involved and contrary to applicable law; thus, no genuine factual dispute exits and Defendants are entitled to summary judgment.

1

# I. Introduction

This lawsuit arises out of Plaintiffs' default on their mortgage loan and Defendants' subsequent efforts to collect on that loan.  Plaintiffs seek, *inter alia*, damages and declaratory relief invalidating Defendants' lien on Plaintiffs' property.  Plaintiffs' Amended Complaint is Plaintiffs' third pleading related to the facts and circumstances surrounding the formation, servicing, and foreclosure of the mortgage loan. As set forth in greater detail below, Plaintiffs' allegations are contradicted by the undisputed facts and fail to state a claim under applicable law. Defendants are due summary judgment on all of Plaintiffs' claims, as no genuine dispute of material fact exists.

# II. Statement of the Issues

Pursuant to Local Rule CV-7, Defendants state that the issue to be decided by the Court is whether Defendants are due summary judgment on all of Plaintiffs' causes of action against them.

# III. Summary Judgment Evidence

In support of this motion, Defendants rely upon and incorporate herein by reference the following evidence submitted in the Appendix accompanying this Brief:

| | |
|---|---|
| **Exhibit A:** | Affidavit of Juan Aguirre, with Attachments |
| **Exhibit A-1:** | Texas Home Equity Note |
| **Exhibit A-2:** | Texas Home Equity Security Instrument |
| **Exhibit A-3:** | Texas Home Equity Adjustable Rate Rider |
| **Exhibit A-4:** | Texas Home Equity Affidavit and Agreement |
| **Exhibit A-5:** | Adjustable Rate Disclosure Statement |
| **Exhibit A-6:** | Notice Concerning Extensions of Credit Defined by Section 50(a)(6), Article XVI, Texas Constitution |
| **Exhibit A-7:** | Assignment |

1/2418507.2

### IV. Undisputed Facts and Procedural Background

1.      On May 9, 2005, Plaintiffs executed a Texas Home Equity Adjustable Rate Note ("Note") in the original principle amount of $262,500.00.  (Am. Compl., ¶ 15; Affidavit of Juan Aguirre, attached hereto as Exhibit A, ¶ 4).  A true and correct copy of the original Note is attached hereto as Exhibit A-1.

2.      Concurrent with the execution of the Note, Plaintiffs executed a Texas Home Equity Security Instrument ("Security Instrument"), granting a lien on the property at 2812 Browning Drive, Plano, Texas 75093 (the "Property"). (Am. Compl., ¶ 16; Aguirre Aff., ¶ 5).  A true and correct copy of the Security Instrument is attached hereto as Exhibit A-2.

3.      The Security Instrument was assigned to Deutsche on January 2, 2009.  (Aguirre Aff., ¶ 10).  A true and correct copy of the Assignment is attached hereto as Exhibit A-7.

4.      As a part of the Security Instrument, Plaintiffs also executed a Texas Home Equity Adjustable Rate Rider concurrent with the Note and Security Instrument.  (Aguirre Aff., ¶ 6).  A true and correct copy of the Texas Home Equity Adjustable Rate Rider is attached hereto as Exhibit A-3.

5.      Plaintiffs also executed a Texas Home Equity Affidavit and Agreement concurrent with the Note and Security Instrument.  (Aguirre Aff., ¶ 7).   A true and correct copy of the Texas Home Equity Affidavit and Agreement is attached hereto as Exhibit A-4.

6.      Plaintiffs also executed a Disclosure Statement regarding the Note's adjustable interest rate concurrent with the execution of the Note and Security Instrument.  (Aguirre Aff., ¶ 8).   A true and correct copy of the Adjustable Rate Disclosure Statement is attached hereto as Exhibit A-5.

1/2418507.2

7.      Plaintiffs also executed a Notice Concerning Extensions of Credit Defined by Section 50(a)(6), Article XVI, Texas Constitution concurrent with the execution of the Note and Security Instrument.  (Aguirre Aff., ¶ 9).  A true and correct copy of the Notice Concerning Extensions of Credit Defined by Section 50(a)(6), Article XVI, Texas Constitution is attached hereto as Exhibit A-6.

8.      Defendants are in possession of the original Note.[1]  (Aguirre Aff., ¶ 11).

9.      Plaintiffs defaulted on the Note by failing to make the required monthly payments.  (Aguirre Aff., ¶ 12).  Plaintiffs are currently due for their June 2008 installment payment.  (*Id.*).  As of December 15, 2012, the total amount due to reinstate and bring the Note current is $191,170.42.

10.     On July 6, 2011, Defendant submitted an Application for Expedited Foreclosure Proceeding Pursuant to Rule 736 of the Texas Rules of Civil Procedure to the Collin County District Court ("Foreclosure Application"), styled as Cause No. 429-2799-2011.  (Aguirre Aff., ¶ 13).  The foreclosure action, however, was automatically stayed and dismissed pursuant to Texas Rule of Civil Procedure 736.11 with the filing of the instant Action.  Accordingly, no foreclosure sale occurred.  (*Id.*).

11.     On October 26, 2011, Plaintiffs filed an action against Defendants Deutsche and GMAC Mortgage, LLC ("GMAC")—styled *Terry P. Gorman and Karen Gorman v. Deutsche Bank National Trust Company, as Indenture Trustee under the Indenture Relating to IMH Assets Corp., Collateralized Asset-Backed Bonds, Series 2005-7 and GMAC Mortgage, LLC*, Cause No. 429-04450-2011 in the 429th Judicial District Court of Collin County Texas.  Deutsche and GMAC removed that action to the United States District Court for the Eastern District of Texas,

---

[1] Defendants will make the original Note available to the Court for inspection upon request.

Case 4:12-cv-00098-RAS   Document 30-1   Filed 12/07/12   Page 5 of 30 PageID #: 234

12-12020-mg   Doc 9658-30   Filed 02/23/16   Entered 02/23/16 15:32:09   Promo Decl.
Exhibit M   Pg 6 of 31

Sherman Division on November 14, 2011, Case No. 4:11-cv-00748, and filed a motion to dismiss (doc. 4). After filing an amended complaint, Plaintiffs voluntarily dismissed that action on December 14, 2011. (Case No. 4:11-cv-00748, Doc. 9, 10).

12. On or about January 17, 2012, Plaintiffs filed the instant, above-styled action against Defendants in the 401st Judicial District Court of Collin County, Texas, Cause No. 401-00145-201. Defendants timely removed this action to the United States District Court for the Eastern District of Texas, Sherman Division, on February 17, 2012.

13. Defendants filed their Motion to Dismiss Plaintiffs' Original Petition on February 24, 2012. (Doc. 8).

14. Plaintiffs filed the instant Amended Complaint on March 21, 2012. (Doc. 10).

15. Defendants filed their Motion to Dismiss Plaintiffs' Amended Complaint on April 3, 2012. (Doc. 12). Plaintiffs' Response (doc. 14) consisted of nothing more than suggestions that Note and Security Instrument attached to the Motion were hearsay and that reasonable inferences should be made in Plaintiffs' favor. (*See id.*). Defendants' reply (doc. 16) addressed Plaintiffs' untenable arguments. Defendants' Motion to Dismiss is currently pending before the Court and is due to be granted.

16. On July 27, 2012, Defendant GMAC Mortgage, LLC filed its Notice of Bankruptcy and Suggestion of Automatic Stay. (Doc. 18). The Notice set out that the claims seeking non-monetary relief related to the foreclosure of the Property could proceed, but claims for monetary relief against GMAC are subject to the stay. The Court issued an Order on October 12, 2012 staying the entire case as to Defendant GMAC. (Doc. 21). The stay is not applicable to Defendants MERS or Deutsche. (*Id.*).

5

Case 4:12-cv-00098-RAS   Document 30-1   Filed 12/07/12   Page 6 of 30   PageID #: 435

12-12020-mg   Doc 9658-30   Filed 02/28/16   Entered 02/23/16 15:32:39   Promo Decl.
Exhibit M   Pg 7 of 31

## V. Standard of Review

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). After the movant has carried its burden to identify issues where there is no genuine issue of material fact, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the non-moving party bears the burden of proof at trial, the moving party need only point to the absence of any fact issue in the record, and the evidentiary burden then shifts to the non-moving party to show with "significant probative" evidence that there exists a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Although reasonable inferences must be drawn in favor of the non-moving party, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Further, vague allegations and legal conclusions are insufficient. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992). Summary judgment must be granted if the movant satisfies his burden and the non-movant fails to show that a genuine issue exists as to a material fact. FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322.

## VI. Argument and Authorities

**A.     Plaintiffs' allegation and legal theory that Defendants violated the nonrecourse provisions of the Note and Security Instrument by seeking personal payments is fundamentally flawed and misinterprets basic secured transactions law.**

Throughout Plaintiffs' Amended Complaint, Plaintiffs argue and allege that Defendants "demand[ed] . . . personal payments purportedly due under the Home Equity Note . . . despite the fact that Plaintiffs [] are not personally liable under the Home Equity Note." (Am. Pet., ¶ 69,

6

Case 4:12-cv-00098-RAS   Document 30   Filed 02/23/16   Page 8 of 31   PageID #: 256

12-12020-mg   Doc 9658-30   Filed 02/23/16   Entered 02/23/16 15:32:39   Promo Decl.
Exhibit M   Pg 8 of 31

70). Plaintiffs paint Defendants as having "publically refuted, repudiated, and violated the Non-recourse Protections" of the Note by requesting that Plaintiffs pay the amounts due under the terms of the Note.[2] (*See* Am. Pet., ¶ 78). This argument and legal theory simply is not valid.

Plaintiffs conflate the remittance and collection of amounts due under the terms of the Note with the enforcement of a judgment on the Note. The Note states that "each person who signs the Note is responsible for ensuring that all of [the] promises and obligations in this Note are performed, including payment of the full amount owed." (Ex. A, ¶ 9). The Note's guarantee that it is made "without personal liability" against Plaintiffs relates to the enforcement of a judgment on the Note, not the obligation to make the payments due under the terms of the Note.[3] (*See id.*).

A nonrecourse loan is the "[t]ype of loan which prohibits the lender from attempting to recover against the borrower (personally) if the security value for the loan falls below the amount required to repay the loan." Mortgage Bankers Association, Mortgage Banking Terms 106 (10th ed., 2004). In other words, a foreclosure sale of the secured property is deemed to fully satisfy the indebtedness, despite any shortage from the sale of the secured property. *See, e.g.*, *Fry v. Wilson*, 1995 WL 376499, at * 3 (Tex. App.—Dallas June 26, 1995) ("Because his mortgage was treated as nonrecourse, appellant was not liable for any deficiency when the bank foreclosed on his property after the sale to Mills failed."). The court in *Pineridge Associates, L.P. v. Ridgepine, LLC*, 337 S.W.3d 461 (Tex. App.—Fort Worth 2011), aptly described the effect of a nonrecourse loan:

---

[2] Notably, Plaintiffs do not assert that Defendants attempted to garnish their wages or seize Plaintiffs' personal property. Rather, Plaintiffs are arguing that the simple act of demanding payment pursuant to the terms of the Note constitutes a violation of the non-recourse provisions of the Note.

[3] Setting aside the legal implausibility of this argument, Plaintiffs conception of what is "personally due" under the Note is completely impractical. Under Plaintiffs' reasoning, Defendants could not send a bill, statement, or default notice, since this would be seeking a "personal payment" on the Note.

1/2418507.2

Case 4:12-cv-00098-RAS   Document 30-1   Filed 12/07/12   Page 9 of 31   PageID #: 257

12-12020-mg   Doc 8658-30   Filed 02/23/16   Entered 02/23/16 15:32:39   Promo Decl.
Exhibit M   Pg 9 of 31

A recourse loan "allows the lender, if the borrower defaults, not only to attach the collateral but also to seek judgment against the borrower's (or guarantor's) personal assets." Black's Law Dictionary 1021 (9th ed. 2009). Conversely, the maker of a nonrecourse loan "does not personally guarantee repayment of the note and will, thus, have no personal liability." *Fein v. R.P.H., Inc.*, 68 S.W.3d 260, 266 (Tex. App.-Houston [14th Dist.] 2002, pet. denied). "A nonrecourse note has the effect of making a note payable out of a particular fund or source, namely, the proceeds of the sale of the collateral securing the note." *Id.* (*citing Burns v. Resolution Trust Corp.*, 880 S.W.2d 149, 153 (Tex. App.-Houston [14th Dist.] 1994, no writ) *and Hinckley v. Eggers*, 587 S.W.2d 448, 450 (Tex. Civ. App.-Dallas 1979, writ ref'd n.r.e.)). In other words, under a true nonrecourse loan, the borrower has no personal liability beyond the loss of the collateral securing the note. *Id.*

337 S.W.3d at 461.

Plaintiffs' attempt to conflate a demand for "personal payments purportedly due under the Home Equity Note" with a judgment on a mortgage loan against a borrower's personal assets rather than against the property secured by the mortgage is nonsensical. Under Plaintiffs' reasoning, a mortgage lender could not seek a regularly scheduled loan payment, but instead could only foreclose on the property secured by mortgage to collect a payment due on the Note. This scenario, obviously, is illogical and contrary to the basic function and purpose of a mortgage.

Defendants here could not have possibly violated any nonrecourse provisions of the Note or Security Instrument because there has been no judgment on the Note, and, accordingly, Defendants could not even attempt to enforce a judgment against Plaintiffs' personal assets. (Aguirre Aff., ¶ 14). Rather, Plaintiffs filed this lawsuit to prevent Defendants from enforcing the Note *against the secured property through foreclosure*.

This untenable theory is pervasive throughout Plaintiffs' Amended Complaint. The following causes of action rely on this untenable theory: Counts 10 (Usury by MERS), 11 (Usury by Deutsche Bank), 12 (Usury by GMAC), 14 (Breach of Contract by MERS), 15

8

(Breach of Contract by Deutsche Bank), 16 (Breach of contract by GMAC),  17 (Violation of the Texas Debt Collection Practices Act by MERS), 18 (Violation of the Texas Debt Collection Practices Act by Deutsche Bank), 19 (Violation of the Texas Debt Collection Practices Act by GMAC), 21 (Predatory and Unconscionable Lender Practices by MERS), 22 (Predatory and Unconscionable Lender Practices by Deutsche Bank), 23 (Predatory and Unconscionable Lender Practices by GMAC), 25 (Lender Liability-Special Relationship violation by MERS), 26 (Lender Liability-Special Relationship violation by Deutsche Bank), 27 (Lender Liability-Special Relationship violation by GMAC), 28 (Conspiracy between First Consolidated, MERS, Deutsche Bank, and GMAC), and 29 (Conspiracy between MERS, Deutsche Bank, and GMAC). Accordingly, all of these claims fail to the extent they rely on this untenable theory, and Defendants are due summary judgment on each of these claims.

**B.      Plaintiffs received and executed a Notice Concerning Extensions of Credit Defined by Section 50(a)(6), Article XVI, Texas Constitution.**

Though it is unclear which, if any, of Plaintiffs' causes of action rely on the allegation, Plaintiffs allege that they did not receive the notice required under Texas Constitution Article XVI, § 50(a)(6).  (Am. Compl., ¶ 41).  Plaintiffs, however, *did* receive the notice and acknowledged their receipt by executing a copy of the Notice.  (Aguirre Aff., ¶ 9; Ex. A-6). Notably, the language in the Notice tracks the language in the Texas Constitution and quoted verbatim in Plaintiffs' Amended Complaint.  (Ex. A-6).  Plaintiffs' receipt of this Notice conclusively establishes that Defendants did not violate of the Texas Constitution, as Plaintiffs previously acknowledge receipt of the notice.  *See Puig v. Citibank, N.A.*, 2012 WL 1835721, at *10-11 (N.D. Tex. May 21, 2012) (stating that a borrower "is presumed to know what he signed" and granting lender judgment as a matter of law where the borrower executed a document acknowledging receipt of the § 50(a)(6) notice).  Moreover, Plaintiffs executed a Texas Home

9

Equity Affidavit and Agreement, which affirms that all of the requirements of an extension of credit under § 50(a)(6) were satisfied. (Ex. A-4). To the extent that any of Plaintiffs' causes of action rely on this patently false allegation, Defendants are due summary judgment.

### C. Defendants are due summary judgment on Plaintiffs claims for fraud (Counts 2-3).

Plaintiffs' fraud claims fail as a matter of law because the claims do not include all the necessary elements of fraud under Texas law, are barred by the applicable statute of limitations to the extent they rely upon alleged misrepresentations or nondisclosures made at the inception of the loan, are barred by the statute of frauds to the extent they rely upon alleged oral representations, and are barred by the economic loss doctrine.

### 1. Plaintiffs' fraud claim does not state all the elements of fraud required by Texas law.

"The elements of fraud in Texas are (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury." *Shandong Yinguang Chemical Industries Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010). The elements of fraud by nondisclosure are "(1) the defendant failed to disclose facts to the plaintiff, (2) the defendant had a duty to disclose those facts, (3) the facts were material, (4) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts, (5) the defendant was deliberately silent when it had a duty to speak, (6) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting, (7) the plaintiff relied on the defendant's nondisclosure, and (8) the plaintiff was injured as a result

10

Case 4:12-cv-00098-RAS Document 50-14 Filed 12/07/12 Page 15 of 30 PageID #: 490

12-12029-mg Doc 9659-30 Filed 02/23/16 Entered 02/23/16 15:32:39 Premo Decl.
Exhibit M Pg 12 of 31

of acting without that knowledge." *7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys*., 245 S.W.3d 488, 507 n. 27 (Tex. App.-Houston [14th Dist.] 2007, pet. denied)

Plaintiffs' Amended Complaint completely fails to state all the elements of fraud. Plaintiffs' fraud claim against MERS—Count 2—fails first and foremost because, contrary to Plaintiffs' contentions, MERS' involvement in the mortgage loan was explicitly disclosed in the Security Instrument. MERS is, in fact, defined on page 1 of the Security Instrument as "the beneficiary of this security instrument." (Ex. A-2, p. 1). Moreover, page 3 of the Security Instrument states that the "beneficiary of [the] Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns)." (*Id.* at p. 3). Plaintiffs acknowledge in the Amended Complaint that MERS is listed as the beneficiary of the Note and Security Instrument. (*See* Am. Compl. ¶ 20). Thus, not only was there no false representation or nondisclosure, but Plaintiffs also failed to establish that they did not have an equal opportunity to discover the facts.

The other alleged misrepresentations and nondisclosures complained of in the Amended Complaint were actually clearly set out in the loan agreements executed by Plaintiffs. The Note clearly states that the interest rate "may change" and provides, in great detail, the circumstances and calculations that affect the Note's interest rate. (Note, Ex. A-1, ¶ 2, 4). Moreover, Plaintiffs executed a "Texas Home Equity Adjustable Rate Rider" ("Adjustable Rate Rider") contemporaneously with the Note that emphasizes that the Note's interest rate may vary between 15.4900% and 9.4900%, and reaffirms the circumstances and calculations that affect the Note's interest rate. (Ex. A-3). In addition to the Note and the Adjustable Rate Rider, Plaintiffs received and acknowledged receipt by executing a Disclosure Statement regarding the adjustable rate. (Ex. A-5). The Disclosure Statement explains the terms and function of the adjustable rate Note in plain and clear terms. (*See id.*). Regardless of the alleged representations made before

11

the closing of the loan, Plaintiffs executed the Note, Adjustable Rate Rider, and Disclosure

Statement which all clearly and conspicuously contain terms allowing for a variable interest rate

between 9.4900% and 15.4900%.

Additionally, Plaintiffs' Amended Complaint does not establish the element of damages.

Plaintiffs merely recite that they "have been financially harmed" as a result of the alleged fraud.

This formulaic recitation is precisely the type of pleading that *Twombly* found insufficient to

withstand a motion to dismiss. *See Twombly*, 550 U.S. at 555. Accordingly, Plaintiffs do not—

and cannot—meet all the elements of a proper fraud claim under Texas law and Defendants are

due summary judgment on Counts 2 and 3.[4]

### 2.    Plaintiffs' fraud claims are barred by the statute of limitations to the extent they rely upon alleged misrepresentations or nondisclosures made at the inception of the loan.

Under Texas law, a fraud claim must be brought "within four years of when the fraud

should have been discovered by reasonable diligence." *Ford v. Exxon Mobil Chem. Co*., 235

S.W.3d 615, 617 (Tex. 2007) (citations omitted). The fraud claim "accrues upon the perpetration

of the fraud, or if the fraud is concealed, when it is discovered or, through the exercise of

reasonable diligence, should have been discovered." *Pooley v. Seal*, 802 S.W.2d 390, 393 (Tex.

App.—Corpus Christi 1990, writ denied). "[T]he question of when a cause of action accrues is a

---

[4] Plaintiff's Amended Complaint also includes a vague claim relating to the constitutional protections for a home equity loan afforded by the Texas constitution. Plaintiffs, however, have not established a fraud claim based on these allegations, because the allegations fail to identify a representation, intent, reliance, or injury related to the alleged constitutional violations. Nonetheless, any claim under the Texas constitution's homestead protections would be barred by the applicable four-year statute of limitations, as the loan was closed on May 9, 2005 and the Original Petition was not filed until January 16, 2012. *See Blodgett v. BAC Home Loans Servicing, LP*, 2012 WL 32950, at *1-3 (E.D. Tex. Jan. 6, 2012) (holding that a four-year statute of limitations, accruing at the closing of the loan, applied to violations of the Texas constitution's homestead protections); *Rivera v. Countrywide Home Loans, Inc.*, 262 S.W.2d 834, 840 (Tex. App.-Dallas 2008, no pet.) (holding that the four-year statute of limitations for a violation of Texas constitution's homestead protections accrued on the date when the extension of credit is made).

matter of law for the court to decide." *See TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 355 (5th Cir. 2008).

To the extent they rely upon misrepresentations or nondisclosures made at the inception of the loan, Plaintiffs' fraud claims are time barred under the applicable four-year statute of limitations. Any alleged fraud occurring at the closing of the loan took place on or before May 9, 2005. Plaintiffs filed their Original Petition on or about January 16, 2012—more than six years later. Plaintiffs do not allege that Defendants concealed the fraud. In fact, the conflict between the alleged representations and nondisclosures and the contract was apparent from the face of the contract as executed on May 9, 2005. *See Val-Com Acquisitions Trust v. Wells Fargo Bank, Nat. Ass'n*, 2011 WL 2517230, at *5 (N.D. Tex. June 23, 2011) (dismissing a borrower's fraud claims based on representations made prior to the closing of the loan under the statute of limitations and holding that the claims accrued at the execution of the loan). Defendants are due summary judgment on Plaintiffs' fraud claims, as they are time-barred and due to be dismissed.

### 3.    Plaintiffs' fraud claims are barred by the statute of frauds to the extent they rely upon alleged oral representations.

The Texas statute of frauds states that "[a] loan agreement in which the amount involved . . . exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative." TEX. BUS. & COM. CODE § 26.02(b). Further, "[t]he rights and obligations of the parties to [a loan] agreement . . . shall be determined solely from the written loan agreement, and any prior oral agreements between the parties are superseded by and merged into the loan agreement." *Id.* at § 26.02(c). A loan agreement "may not be varied by any oral agreements or discussions that occur before or contemporaneously with the execution of the agreement." *Id*. at § 26.02(d). Thus, § 26.02 bars any claim of fraud based on prior or contemporaneous oral representations that conflict with the

Case 4:12-cv-00098-RAS-DDB Document 30 Filed 12/07/12 Page 14 of 30 PageID #: 429

12-12029-mg Doc 9659-30 Filed 02/23/16 Entered 02/23/16 15:32:39 Pierce Decl.
Exhibit M    Pg 15 of 31

written terms of the contract. *See Foster*, 2002 WL 31730405, at *3 (holding that a similar claim of fraudulent inducement based on oral representations prior to the execution of the written contract were barred by § 26.02).

Plaintiffs' fraud claims are barred by the statute of frauds to the extent Plaintiffs complain of alleged *oral* representations that conflicted with the written terms of the loan. Because an enforceable, written contract exists, the statute of frauds bars Plaintiffs from asserting a cause of action for oral representations that are alleged to vary the terms of the written contract. *See Foster,* 2002 WL 31730405 at *3.

The Note clearly indicates that only the written documents govern the agreement and precludes any prior, contemporaneous, or subsequent oral agreements. The Note signed by Plaintiffs on May 9, 2005, contains the following paragraph:

> **THIS NOTE CONSTITUTES A "WRITTEN LOAN AGREEMENT" PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES. THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.[5]**

This conspicuous merger clause precludes any claims of an oral agreement under Tex. Bus. & Com. Code § 26.02. That statute states very clearly that any loan agreement[6] of greater than $50,000.00 is not enforceable unless the agreement is in writing and signed by the party to

---

[5] Note, Ex. A-1 (emphasis original).

[6] "'Loan agreement' means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or **delays repayment of or agrees to loan or delay repayment of money**, goods, or another thing of value or to otherwise extend credit **or make a financial accommodation**." Tex. Bus. & Com. Code § 26.02(a)(2) (emphasis added). *See also*, *Schuhart v. Chase Home Finance, LLC,* 2006 WL 1897263 *3 (S.D. Tex., July 10, 2006) ("If an agreement falls within the statute of frauds, then any modification materially affecting the character or value of the agreement also falls within the statute of frauds.") (internal citations omitted).

14

Case 4:12-cv-00098-RAS-DDB Document 56-14 Filed 02/07/12 Page 15 of 30 PageID #: 444

12-12029-mg    Doc 9659-30    Filed 02/23/16    Entered 02/23/16 15:32:39    Pierce Decl.
Exhibit M    Pg 16 of 31

be bound or its agent and that the rights and obligations of the parties "shall be determined solely from the written loan agreement." Tex. Bus. & Com. Code § 26.02(b)-(c). The statute clearly includes the allegations of Plaintiffs here, where the financial institution "delays repayment of or agrees to loan or delay repayment of money…or make a financial accommodation." *Id.* at § 26.02(a)(2). Plaintiff admitted to signing the Note and Security Instrument (Am. Compl., ¶¶ 15-16). The statute of frauds as codified in Tex. Bus. & Com. Code § 26.02 is applicable and bars Plaintiffs' claims regardless of whatever oral statements they allege may have been made to them.[7]

In a case similar to the instant action, a Texas Appellate Court held that "any agreement to forego or delay foreclosure . . . would fall under the provisions of section 26.02(b), and be included under the definition of 'loan agreement' in section 26.02(a)(2)." *Krudop v. Bridge City State Bank*, 2006 WL 3627078 *4 (Tex. App.-Beaumont Dec. 14, 2006). That court held that "any alleged oral agreement entered into between [the parties] subsequent to the execution of the written loan agreement is unenforceable as a matter of law, regardless of whether or not it materially modifies the underlying written loan agreements." *Id.* Since the merger clause was as conspicuous in the *Krudop* case as in the instant action, "the presence of the 'merger clause' in loan agreements prohibits the enforceability of any alleged oral modification of the provisions of the written loan agreements." *Id.*

Other similar cases in Texas federal district courts have stated that any supposed modification to a loan agreement must be in writing to be enforceable under Tex. Bus. & Com. Code § 26.02(a). *Deuley v. Chase Home Finance*, LLC, 2006 WL 1155230 (S.D. Tex. Apr. 26,

---

[7] Whether an agreement falls within the Statute of Frauds is a matter of law for the court to determine. *Tabrizi v. Daz-Rez Corp.*, 153 S.W.3d 63, 63 (Tex.App.-San Antonio 2004); *Metromarketing Servs., Inc. v. HTT Headwear, Ltd.*, 15 S.W.3d 190, 195 (Tex.App.-Houston [14 Dist.] 2000).

Case 4:12-cv-00098-RAS-DDB Document 50-14 Filed 12/07/12 Page 16 of 30 PageID #: 426

12-12029-mg Doc 9659-30 Filed 02/23/16 Entered 02/23/16 15:32:39 Pierre Decl.
Exhibit M Pg 17 of 31

2006), addressed allegations very similar to those made by Plaintiff here. The Court in *Deuley* concluded that the statute of frauds had not been satisfied where the lender had orally agreed to accommodate their request for financial assistance but subsequently denied their application for assistance. *Id.* at *1. Applying Section 26.02 of the Texas Business and Commerce Code, the Court concluded that the alleged oral agreement was subject to the statute of frauds and therefore unenforceable. *Id.* at *2-3. Because the purported modification related to an agreement that must be in writing, the modification also had to be in writing. *Id.* at *6.

Here, Plaintiffs' fraud claims are indisputably barred under the application of § 26.02. *See Hugh Symons Group v. Motorola, Inc.*, 292 F.3d 466, 470 (5th Cir. 2002) (*citing Haase v. Glazner*, 62 S.W.3d 795, 797 (Tex. 2001)) ("a plaintiff may not recover damages in tort for claims arising out of an unenforceable contract under the statute of frauds"). Although a plaintiff may be entitled to "out of pocket" expenses under *Haase v. Glazner*, 62 S.W.3d 795, 797 (Tex. 2001), even when a fraud claim is barred by the statute of frauds, there is no sustainable claim for "out of pocket" expenses here. First, Plaintiffs have not alleged any out of pocket expenses. *See McMillian v. Hillman Intern Brands, Ltd.*, 2004 WL 1660760 *3 n.2 (Tex.App.-Hous. [14th Dist.] July 27, 2004) (summary judgment upheld when plaintiff alleged no out of pocket expenses in his petition); *Haase*, 62 S.W.3d at 799-800 (court examines the claims in the petition for "out of pocket" expenses); *Schuhart*, 2006 WL 1897263 at *5-6 (granting summary judgment where plaintiffs had no evidence of "out of pocket" expenses); *Camp v. Ruffin*, 30 F.3d 37, 38 (5th Cir. 1994) ("To support an action for fraud or misrepresentation, a plaintiff must show what he has actually lost—i.e., out-of-pocket damages or pecuniary loss."). Rather, the only damages alleged are "attorneys' fees" and actual and punitive damages. (*See* Am. Compl., pp. 17, 40). None of these qualify as "out of pocket"

16

Case 4:12-cv-00098-RAS-30   Document 50   Filed 12/07/12   Page 17 of 30   PageID #: 420

12-12020-mg   Doc 9659-30   Filed 02/23/16   Entered 02/23/16 15:32:39   Pierre Decl.
Exhibit M   Pg 18 of 31

expenses. While Plaintiffs request attorney's fees in their prayer for relief, attorneys' fees do not amount to "out of pocket" expenses, as they were expended as part of the litigation at Plaintiffs' own election, not in relation to the subject matter of the transaction.[8] Legitimate "out of pocket" expenses would encompass all pecuniary amounts expended in reasonable reliance upon the representation, of which Plaintiffs here have alleged none.

### 4. Plaintiffs' fraud claims are barred by the economic loss doctrine.

"It is well-settled under Texas law ... that, '[w]hen the injury is only the economic loss to the subject matter of a contract itself, the action sounds in contract alone.'" *Wismer Distributing Co. v. Brink's, Inc.*, 202 F. App'x 729, 731 (5th Cir. 2006) (*quoting Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)). *See also Myers v. Bank of America, N.A.*, 4:11-cv-457, 2012 WL 1107687, at *3 (E.D. Tex. March 31, 2012) (Schell, J.) (dismissing a fraud and negligent misrepresentation claim based on the economic loss rule and stating that "if a tort claim arises solely from the parties' contractual relationship, Texas courts disallow such a claim"); *S & W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 538 (5th Cir. 2003); *Southwestern Bell Telephone Co. v. DeLanney*, 809 S.W.2d 493 (Tex. 1991).

The only possible injury here is the economic loss related to the homestead—the subject matter of the contract. Therefore, the only cause of action available to Plaintiffs is in contract, and not in tort. *See Kiggundu v. Mortgage Electronic Registration Systems, Inc.*, 2011 WL 2606359, at *7 (S.D. Tex. June 30, 2011) (dismissing similar fraud claims under the economic loss theory). Accordingly, Plaintiffs' fraud claims are due to be dismissed.

---

[8] Plaintiffs disingenuously allege that they "were required to engage an attorney to represent Plaintiffs in this matter" and have suffered financial damages by the expenditure and accrual of attorneys' fees. (Am. Compl., ¶¶ 80-84, 199). *Plaintiff* Terry Patrick Gorman and *attorney* Terry P. Gorman are, in fact, one-in-the-same. While Plaintiff Terry Gorman is a licensed attorney, he is representing *himself* and his wife in this action. *See Kay v. Ehrler*, 499 U.S. 432 (1991) (denying an award of attorney's fees to an attorney representing himself in a civil rights action).

Case 4:12-cv-00098-RAS-DDB Document 50 Filed 12/07/12 Page 19 of 30 PageID #: 487

12-12020-mg   Doc 9659-30   Filed 02/23/16   Entered 02/23/16 15:32:39   Pierro Decl.
Exhibit M   Pg 19 of 31

**D.   Defendants are due summary judgment on Plaintiffs' fraud in the inducement claims—Counts 6-7—because the loan agreement executed by Plaintiffs directly contradicts the alleged misrepresentations that constitute the fraud, the claims are barred by the statute of frauds and statute of limitations, and the only injury is economic loss.**

Plaintiffs' fraud in the inducement claim is untenable because it is directly contradicted by the loan documents executed by Plaintiffs at the closing of the loan, is barred by the statute of frauds and statute of limitations, and Plaintiffs' only injury is economic loss.

"To state a claim for fraudulent inducement under Texas law, a plaintiff must prove the basic elements of fraud as well as an underlying contract which was induced." *Chance v. Aurora Loan Services, L.L.C.*, 2012 WL 912939, at *5 (N.D. Tex. Marsh 19, 2012); *see also River Capital Advisors of North Carolina, Inc. v. FCS Advisors, Inc.*, 2011 WL 831282, at *5 (E.D. Tex. February 7, 2011) ("Fraudulent inducement is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof"); *GMAC Commercial Mortg. Corp. v. East Texas Holdings, Inc*., 441 F.Supp.2d 801, 807 (E.D. Tex. 2006) ("Fraudulent inducement is a fraud claim in the context of the formation of a contract."). Moreover, for a valid claim of fraudulent inducement, "the fraud must be something more than merely oral representations that conflict with the terms of the written contract." *Foster v. Bank One Texas NA*, 54 Fed. Appx. 592, 2002 WL 31730405, at *3 (5th Cir. 2002) (*quoting Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 179 (Tex. 1997)).

As previously described, Plaintiffs fail to state a claim for fraud for four separate and independent reasons: (1) Plaintiffs do not—and cannot—establish all the elements of a fraud claim; (2) any fraud claim is barred by the statute of limitations to the extent it relies upon alleged representations made at the inception of the loan; (3) any fraud claim is barred by the statute of frauds to the extent that it contradicts the terms of the written loan agreements; and (4)

18

the economic loss doctrine bars any fraud claim. Accordingly, Defendants are due summary judgment because Plaintiffs do not state a claim for fraudulent inducement.

### E. Plaintiffs' usury claims—Counts 10-11—are time barred and fail to state a claim.

Plaintiffs' usury claims against Defendants fail as a matter of law because they are barred by the applicable statute of limitations, are based on Plaintiffs' untenable personal liability theory, and are not pled with sufficient particularity.

The statute of limitations on a debtor's usury claim begins to run at the time an allegedly usurious payment is made. TEX. FIN. CODE. § 305.006(a) ("An action under this chapter must be brought within four years after the date on which the usurious interest was contracted for, charged, or received."); *Sotelo v. Interstate Financial Corp.*, 224 S.W.3d 517, 519 n.3 (Tex. App.—El Paso 2007); *Hurley v. Nat'l Bank of Commerce*, 529 S.W.2d 788, 790 (Tex. Civ. App.—Dallas 1975, *writ ref'd n.r.e.*). To the extent Plaintiffs' usury claim stems from the fees charged at the inception of the loan, this claim—if it exists—arose when the alleged usurious fees were charged, contracted for, and received at the creation of the loan on May 9, 2005. (*See* Am. Compl., ¶ 15). Plaintiffs filed their Original Petition on or about January 17, 2012, more than six years after the alleged usurious fees were charged. Therefore, Plaintiffs' usury claim related to fees charged at the inception of the loan is barred as a matter of law by the four-year statute of limitations.

Further, Plaintiffs usury claims are due to be dismissed to the extent they rely upon Plaintiffs' theory that they were not personally liable on the note. As previously discussed, Plaintiffs *are* personally responsible for making payments pursuant to the terms of the Note. (*See* Ex. A-1, ¶ 3 ("I will pay principle and interest by making a payment every month.")).

1/2418507.2

Defendants did not and could not have violated the non-recourse provisions of the Note or Texas law because Defendants have not obtained a judgment on the Note.

Lastly, Plaintiffs failed to plead their usury claim with the specificity required by *Twombly* and *Iqbal*. Plaintiffs state that Defendants "attempted to collect loan payments that were not legally due." (Am. Compl., ¶¶ 137, 104, 143). Plaintiffs do not state any actual facts sufficient to identify the alleged illegal payments. This legal conclusion fails to meet *Twombly* and *Iqbal's* pleading standards and fails to put Defendants on proper notice of the basis for Plaintiffs' claims. *See Iqbal*, 129 S. Ct. at 1949-50. Accordingly, there is no genuine dispute of material fact, and Defendants are due summary judgment.

### F. Defendants are due summary judgment on Plaintiffs' claims for breach of contract (Counts 14-15).

Plaintiffs do not—and cannot—state all the elements of a breach of contract claim and, moreover, their breach of contract claims are barred by the statute of frauds to the extent they are based on alleged oral misrepresentations and barred by the four-year statute of limitations to the extent they are based on representations made at the inception of the loan.

First, Plaintiffs' Amended Complaint does not state all the elements of a breach of contract cause of action. Under Texas law, the "essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained as a result of the breach." *Simien v. Unifund CCR Partner*s, 321 S.W.3d 235, 247 (Tex. App.—Houston [1st Dist.] 2010); *see also Watson v. Citimortgage, Inc.*, 814 F.Supp.2d 726, 732 (E.D. Tex. 2011) (Schell, J). Also, "in order to properly plead a claim based on breach of the Note and Deed of Trust, the Plaintiff must point to a specific provision in the contract that was breached by the Defendants."

*Milton v. U.S. Bank Nat. Ass'n*, No. 4:10–CV–538, 2012 WL 1969935, at *2 (E.D. Tex. May 31, 2012) (Schell, J.).

Here, Plaintiffs fail to point to a provision of the Note or Security Instrument that was breached. Moreover, Plaintiffs first breached the contract by defaulting on the terms of the Note and Deed of Trust. (Aguirre Aff., ¶ 12). Thus, Plaintiffs did not perform under the contract and are barred as a matter of law from pursuing a breach of contract claim. *Carr v. Norstok Bldg. Sys.*, 767 S.W.2d 936, 939 (Tex. App.—Beaumont 1989, no writ) ("[A] party to a contract cannot enforce it or recover damages for its breach unless that party shows that he or she or it has performed the obligations imposed upon him or that he or she has offered to perform them and was able to do so or unless the party shows some valid excuse for failure perform."); *Interceramic, Inca v. South Orient R.R. Co., Ltd.*, 999 S.W.2d 920, 924 (Tex. App.—Texarkana 1999, pet. denied) ("[A] party who fails to perform his obligation may not thereafter enforce the remaining terms of the contract against the other party."); *see also Watson*, 814 F. Supp. 2d at 732 (holding that a plaintiff's failure to make the required monthly payments on the loan barred his breach of contract claim); *Wilkerson v. Citimortgage, Inc.*, 2011 WL 6937382, at *2 (N.D. Tex. Oct. 24, 2011) (denying plaintiff's breach of contract claim regarding lack of notice where plaintiff first breached the contract by failing to submit payments pursuant to the agreement).

Also, as previously discussed, the Texas' statute of frauds, Tex. Bus. & Com. Code § 26.02(b), applies to Plaintiffs' loan and bars any claim relating to the breach of an oral contract. Thus, Plaintiffs' breach of contract claims which rely upon the breach of an oral agreement or oral misrepresentations that vary from the written terms of the Note and related loan agreements are barred by § 26.02. *See Fankhauser v. Fannie Mae*, 2011 WL 1630193, at *3 (E.D. Tex. March 30, 2011) (dismissing plaintiff's breach of contract claim based on an oral representation).

Further, Plaintiffs' breach of contract claims are barred by the statute of limitations. The statute of limitations for breach of contract is four years under Texas law. TEX. PRAC. & REM. CODE § 16.004; § 16.051 (residual four-year statute of limitations); *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) (statute of limitations for breach of contract is four years and breach of contract claim accrues when contract is breached); *Law Offices of Moore & Associates v. Aetna Ins. Co.*, 902 F.2d 418, 423 (5th Cir. 1990). Plaintiffs' breach of contract claims relating to the alleged oral contracts made at the inception of the loan arose when the alleged misrepresentations were made—May 9, 2005. (*See* Am. Compl., ¶¶ 147, 152, 157). Plaintiffs filed this action on or about January 17, 2012, more than six years after the alleged harm occurred. Therefore, Plaintiffs' breach of contract claims relating to these alleged oral contracts are barred by the applicable four-year statute of limitations and are due to be dismissed.

**G.  Defendants are due summary judgment on Plaintiffs' Texas Debt Collections Practices Act ("TDCPA") causes of action—Counts 17-18.**

Plaintiffs' TDCA claims contain only scant factual details and are primarily comprised of legal conclusions. Defendants are due summary judgment on these vague claims because Plaintiffs cannot possibly recover under the TDCPA based on the pleadings and the summary judgment evidence.

To state a plausible claim for relief under the TDCPA, Plaintiffs must allege facts showing that a violation of the statute occurred and that they were actually injured. Plaintiffs must also allege facts establishing a causal link between the conduct constituting the violation and the alleged injury. *See* TEX. FIN. CODE § 392.403(a)(2). Plaintiffs do not cite the section of the TDCPA that was allegedly violated, nor provide more than legal conclusions to support this claim. (*See* Am. Compl., ¶¶ 162-173) Here, Plaintiffs have done nothing more than provide speculative and conclusory allegations, which fail to pass muster under *Twombly* and *Iqbal. See*

22

Case 4:12-cv-00098-RAS-DDB Document 50-13 Filed 02/07/12 Page 23 of 30 PageID #: 462

12-12020-mg    Doc 9659-30    Filed 02/23/16    Entered 02/23/16 15:32:39    Promo Decl.
Exhibit M    Pg 24 of 31

*also Ellis v. Bank of New York Mellon Trust Co.*, No. 4:11–CV–049, 2012 WL 359673, at *2
(E.D. Tex. Feb. 2, 2012) (Schell, J.) (dismissing a borrower's TDCPA where the borrower
"failed to assert sufficient facts to state a plausible claim under the TDCPA"); *Dubrock v. GMAC
Mortgage, LLC*, 2012 WL 629397, at *2 (E.D. Tex. Feb. 27, 2012) (holding that speculative
allegations were insufficient to sustain a claim under the TDCPA).

The methods employed to collect the monthly payments due on the Note—which
included only telephone calls and letters—were customary and in line with the methods typically
employed in the mortgage servicing industry.  (Aguirre Aff., ¶ 11).  Even Plaintiffs' own
allegations concerning Defendants collections efforts—which describe phone calls and letters
only—are insufficient to constitute a violation of the TDCPA as a matter of law.  Even after
amending their Original Petition, Plaintiffs allegations simply do no support any reasonable
inference that Defendants committed any act prohibited by the TDCPA.  *See Watson v.
Citimortgage*, No. 4:10-cv-707, 2012 WL 381205, at *7-8 (E.D. Tex. Feb. 3, 2012) (Schell, J.)
(granting lender's summary judgment motion on plaintiff's TDCPA claim where the summary
judgment evidence failed to support a reasonable inference that the TDCPA had been violated).

Moreover, when requesting damages due to a TDCPA violation, a plaintiff must show
that his damages were "sustained as a result of a violation of [the TDCPA]." TEX. FIN. CODE §
392.403(a)(2).  Plaintiffs' Amended Complaint does not allege sufficient facts to demonstrate the
financial harm required by the TDCPA.  Although Plaintiffs formulaically allege that they have
been "financially harmed" by the alleged violation of the TDCPA, neither the pleadings nor the
summary judgment evidence demonstrate any financial harm.  In fact, Plaintiffs have lived in the
Property without making a payment in accordance with the terms of the Note and Security
Instrument since June 2008—over four years.  (Aguirre Aff., ¶ 12).  Rather than being

23

financially harmed by any action by Defendants—let alone any alleged conduct that would constitute a violation of the TDCPA—Plaintiffs have experienced a four-year windfall.

**H.**     **Texas law does not recognize a cause of action for "predatory and unconscionable lender practices" (Counts 21-22).**

There is no recognized cause of action under Texas law for "predatory and unconscionable lending practices." *Brown v. Aurora Loan Services, LLC*, 2011 WL 2783992, at *4 (E.D. Tex. June 7, 2011) (stating that "there is no 'predatory lending' cause of action in Texas"); *Smith v. National City Mortg.*, 2010 WL 3338537, at *3 (W.D. Tex. Aug. 23, 2010) (dismissing a plaintiff's "predatory lending" claim under Rule 12(b)(6) for failure to state a claim). Accordingly, there is no genuine dispute and Defendants are due summary judgment on Plaintiffs' "predatory and unconscionable lending practices" claims.

**I.**     **Defendants are due summary judgment on Plaintiffs' lender liability claims—Counts 25-26—because no special relationship exists between Defendants and Plaintiffs.**

Plaintiffs' claims of "lender liability" fail as a matter of law because no "special relationship" existed between Plaintiffs and Defendants. "The duty of good faith and fair dealing only exists in Texas where express language in a contract creates the duty or where a special relationship of trust exists between the parties." *Graves v. Deutsche Bk. Nat. Trust Co.*, 2011 WL 2119189, at *3 (N.D. Tex. May 27, 2011). It is well established under Texas law that, ordinarily, there is no special relationship between a mortgagor and mortgagee. *See Federal Deposit Ins. Corp. v. Coleman*, 795 S.W.2d 706 (Tex. 1990) ("The relationship of a mortgagor and mortgagee ordinarily does not involve a duty of good faith."); *Adams v. Bank of Am.*, 2011 WL 5080217, at *7 (E.D. Tex. Oct. 26, 2011) ("In Texas, there is 'no special relationship between a mortgagor and mortgagee.'") (*quoting Collier v. Wells Fargo Home Mortg.*, 2006 WL 1464170, at *8 (N.D. Tex. May 26, 2006)); *Zoluaga v. BAC Home Loans Servicing, L.P.*, 2011 WL 5600377, at *6

24

Case 4:12-cv-00098-RAS-DDB Document 50 Filed 02/23/16 Page 25 of 30 PageID #: 464

12-12020-mg    Doc 9650-30    Filed 02/23/16    Entered 02/23/16 15:32:39    Piemo Decl.
Exhibit M    Pg 26 of 31

(E.D. Tex. Nov. 16, 2011) (same); *Federal Deposit Ins. Corp. v. Coleman*, 795 S.W.2d 706 (Tex. 1990) ("The relationship of mortgagor and mortgagee ordinarily does not involve a duty of good faith."). Thus, "absent a 'special relationship,' any duty to act in good faith is contractual in nature and its breach does not amount to an independent tort." *Adams*, 2011 WL 5080217, at *7. (internal quotations omitted).

Plaintiffs only allege that a special relationship exists between Plaintiffs and Defendants by virtue of the execution of the Note and Security Instrument and Texas law. (Am. Compl., ¶¶ 181-184). This is contrary to well-established Texas law, which holds that a special relationship is not ordinarily created between a mortgagor and mortgagee. Plaintiffs do not—and cannot— allege any other facts to demonstrate that a special relationship between Plaintiffs and Defendants existed otherwise. Moreover, Plaintiffs affirmatively state that they had no prior relationship with MERS. (Am. Compl., ¶ 24). Accordingly, there is no genuine dispute of material fact, as Plaintiffs' claim of lender liability fails as a matter of law and is due to be dismissed.

### J. Plaintiffs' conspiracy claims—Counts 28-29—are time barred and otherwise fail to state a claim.

Plaintiffs' civil conspiracy claims against Defendants fail as a matter of law because they are barred by the applicable statute of limitations and fail to state a claim. "Under Texas law, the essential elements of a civil conspiracy are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. Civil conspiracy requires specific intent to agree to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Wackman v. Rubsamen*, 602 F.3d 391, 408 (5th Cir. 2010) (*citing Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005); *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996)) (internal

quotation marks omitted). The statute of limitations for a civil conspiracy claim is two years under Texas law. *Stevenson v. Koutzarov*, 795 S.W.2d 313, 318 (Tex. App.—Houston [1st Dist.] 1990, writ denied). Further, a cause of action accrues when the wrongful act causes a legal injury, even if the fact of injury is not discovered until later, and even if the damages from the injury had not yet occurred. *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996).

Plaintiffs' conspiracy claim is based on the alleged misrepresentations made at the origination of the loan, Plaintiffs' claim of civil conspiracy is time-barred by the two-year statute of limitations. This claim relates to the alleged misrepresentations made upon the inception of the loan, which took place on May 9, 2005. (Am. Compl., ¶ 15). Plaintiffs filed their Original Petition on or about January 17, 2012, more than six years after the events that Plaintiffs contend constitute conspiracy. Because the contract directly contradicts the alleged misrepresentations, Plaintiffs discovered or could have discovered that the alleged misrepresentations conflicted upon executing the contract. Therefore, Plaintiffs' civil conspiracy cause of action is barred as a matter of law by the two-year statute of limitations.

Plaintiffs' Amended Complaint further fails to set forth an unlawful act; accordingly, Plaintiffs have not stated all of the elements of a conspiracy claim. *See Kiggundu*, 2011 WL 2606359, at *7 (granting summary judgment on a civil conspiracy claim where the plaintiff's complaint failed to set forth an illegal action). Plaintiffs' conspiracy claim is predicated upon Plaintiffs' fraud, fraudulent inducement, usury, breach of contract, Texas Debt Collections Practices Act, and Texas Constitutional violations claims. (Am. Compl., ¶¶ 193, 195). As previously discussed, all of these claims fail as a matter of law. Accordingly, Plaintiffs failed to allege an unlawful act, and this claim is due to be dismissed.

**K.      Defendants are due summary judgment on Plaintiffs' declaratory judgment cause of action—Count 30—because no actual controversy exists.**

Plaintiffs' declaratory judgment cause of action is baseless and due to be dismissed because no actual controversy exists.  "When a declaratory judgment action filed in state court is removed to federal court, that action is, in effect, converted into one brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202."  *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998); *DiSanti v. Mortg. Elec. Registration Systems, Inc.*, No. 4:10-CV-103, 2010 WL 3338633, at *3-4 (E.D. Tex. Aug. 23, 2010).  However, application of either the Federal Declaratory Judgment Act or the Texas Declaratory Judgment Act, Tex. Prac. & Rem. Code Ch. 37, *et seq.*, produces the same result.  Both the Federal and Texas Declaratory Judgment Acts require the existence of a justiciable controversy.  *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41 (1937); *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995).  Moreover, a declaratory judgment "is simply a form of relief based on an underlying claim."  *Watson*, 2012 WL 381205, at *9.

To the extent Plaintiffs' declaratory relief is redundant of Plaintiffs other claims, no actual controversy exists, as all of Plaintiffs' claims are due to be dismissed. To the extent Plaintiffs seek a court declaration regarding the ownership of the Note and Security Instrument, Plaintiffs fail to allege an actual controversy, as Defendants are in possession of the original Note.  (*See* Aguirre Aff., ¶ 10).  Plaintiffs base this request on Plaintiffs' uncertainties about the assignment of the Note and Security Instrument.  (*See* Am. Compl., ¶¶ 43-45).  First, Defendants' possession of the properly endorsed original Note absolutely entitles them to foreclose under Texas Business and Commercial Code § 3.301.  Further, although Plaintiffs only provide scant details which fail to demonstrate any deficiencies in the Assignment of the Note

27

Case 4:12-cv-00098-RAS-DDB Document 56-1 Filed 02/07/12 Page 29 of 30 PageID #: 457

12-12029-mg    Doc 9659-30    Filed 02/23/16    Entered 02/23/16 15:32:39    Pierce Decl.
Exhibit M    Pg 29 of 31

and Security Instrument, this claim is nonetheless barred because Plaintiffs' lack standing to challenge the assignment.

A borrower has no standing to challenge an assignment of his Security Instrument, as he is not a party to the assignment. *See, e.g.*, *Eskridge v. Fed. Home Loan Mortgage Corp*., 2011 WL 2163989, at *5 (W.D. Tex. Feb. 24, 2011) (dismissing plaintiff's claims under Rule 12(b)(6) because plaintiff had "no standing to contest the various assignments as she was not a party to the assignments."); *Spositi v. Federal Nat. Mortg. Ass'n*, 2011 WL 5977319, at *2-3 (E.D. Tex. Nov. 3, 2011); *Malikyar v. BAC Home Loans Servicing, LP*, 2011 WL 5837262, at *4 (E.D. Tex. Oct. 28, 2011); *Perry v. JPMorgan Chase*, 2011 WL 5837297, at *2-3 (E.D. Tex. Oct. 28, 2011); *Lackey v. Reliance Mortg. Co., Inc.*, 2011 WL 5838189, at *3-4 (E.D. Tex. Oct. 28, 2011); *Summers v. PennyMac Corp.*, No. 3:12–CV–01235–L, 2012 WL 5944943, at *6-7 (N.D. Tex. Nov. 28, 2012) ("The court therefore agrees that Plaintiffs, who are not parties to or beneficiaries of the alleged assignments and securitization, lack standing to challenge the assignment of the Note and PennyMac's authority as mortgagee to enforce the Note and Security Instrument and foreclose on the property based on securitization of the mortgage."); *Kidd v. Fed. Nat'l Mortg. Ass'n*, No. 3:12-CV-1733-B, 2012 WL 4900962, at *2 (N.D. Tex. Oct. 15, 2012) ("It is now well-established by this Court and others in this Circuit that 'borrowers do not have standing to challenge the assignments of their mortgages because they are not parties to those assignments.'"); *Jasso v. Fed. Nat'l Mortg.*, No. 4:11-CV-3253, at *4 (S.D. Tex. Sept. 12, 2012) (Thus, 'a nonparty to the mortgage assignment ... does not have standing to contest it.'"); *Crone v. Bank of Am.*, No. 4:11-CV-733, 2012 WL 4754434, at *3 (E.D. Tex. Sept. 6, 2012) ("The Court agrees that Plaintiffs lack standing to contest any assignment."); *Marsh v. JPMorgan Chase Bank, N.A.*, No. SA-12-CA-599-FB, 2012 WL 3756276, at *3 (W.D. Tex., Aug. 29, 2012)

("As stated, plaintiffs lack standing to challenge the Assignment between MERS and BOA because plaintiffs were not parties to that Assignment."); *Masuku v. Bank of Am., N.A.*, No. H-11-1443, 2012 WL 3528006, at *4 (S.D. Tex. Aug. 14, 2012) (holding that a borrower lacked "standing as a non-party to the assignment because '[w]hen ... the borrowers are not parties to the assignment contracts, courts decline to find that an attempted foreclosure is invalid or otherwise grant relief.'"). Accordingly, to the extent Plaintiffs base their declaratory judgment cause of action on issues with the assignment of the Note and Security Instrument, Plaintiffs do not state a cognizable cause of action.

Because Plaintiffs failed to plead the necessary facts to support a cognizable legal theory, no actual justiciable controversy exists and Plaintiffs' declaratory judgment cause of action is due to be dismissed. *See Broyles v. Chase Home Finance*, No. 3:10-CV-2256-G, 2011 WL 1428904, at *5 (N.D. Tex. Apr. 13, 2011) (dismissing a similar declaratory judgment claim where the plaintiff failed to plead a cognizable claim); *DiSanti*, 2010 WL 3338633, at *4 (granting motion to dismiss on plaintiff's declaratory judgment action where no live controversy existed because plaintiff failed to plead a proper claim); *Wigginton v. Bank of New York Mellon*, No. 3:10–CV–2128–G, 2011 WL 2669071, at *5 (N.D. Tex. July 7, 2011) (declining to consider plaintiff's request for declaratory relief where plaintiff "failed to plead any cognizable claim against any of the defendants"). Accordingly, Defendants are due summary judgment on Plaintiffs' declaratory judgment cause of action.

## VII. Conclusion

This Action simply has no merit. Plaintiffs do not dispute their substantial default, but rather rely on an untenable legal theory and allegations that directly conflict with the written loan documents, which Plaintiffs executed. Thus, Plaintiffs' Amended Complaint fails to state any

1/2418507.2

viable causes of action and the summary judgment evidence demonstrates that Defendants are entitled to summary judgment on all of Plaintiffs' claims. As Defendants are due summary judgment on all of Plaintiffs' claims, Plaintiffs' requests for attorneys' fees, exemplary damages, and pre- and post-judgment interest are due to be denied.

**WHEREFORE**, for the reasons set forth above, Defendants respectfully request that the Court grant this Motion for Summary Judgment as to all of Plaintiffs' claims against them.

DATED: December 7, 2012.

Respectfully submitted,

*/s/* Keith S. Anderson
Keith S. Anderson (TX Bar No. 24075789)
Graham W. Gerhardt (TX Bar No. 24075698)
Grant A. Premo
BRADLEY ARANT BOULT CUMMINGS, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
kanderson@babc.com
ATTORNEYS FOR DEFENDANTS MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; DEUTSCHE BANK NATIONAL TRUST COMPANY; AND GMAC MORTGAGE, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Terry P. Gorman
1400 Preston Road, Suite 400
Plano, TX 75093

*/s/* Keith S. Anderson
OF COUNSEL

1/2418507.2