## Exhibit R

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| TERRY PATRICK GORMAN and<br>KAREN GORMAN, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No.: 4:12-cv-00098-RAS |
| | ) | |
| v. | ) | |
| | ) | |
| FIRST CONSOLIDATED MORTGAGE<br>CO.; MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS, INC.;<br>DEUTSCHE BANK NATIONAL TRUST<br>COMPANY, AS INDENTURE<br>TRUSTEE UNDER THE INDENTURE<br>RELATING TO IMH ASSETS CORP,<br>COLLATERALIZED ASSET-BACKED<br>BONDS, SERIES 2005-7; RAY T.<br>DEWITT III; and GMAC MORTGAGE,<br>LLC | ) | |
| | ) | |
| Defendants. | ) | |

---

## JOINT FINAL PRETRIAL ORDER

---

Plaintiffs Terry Gorman and Karen Gorman (collectively, "Plaintiffs") and Defendants Mortgage Electronic Registration Systems, Inc. ("MERS") and Deutsche Bank National Trust Company, as Indenture Trustee under the Indenture Relating to IMH Assets Corp., Collateralized Asset-Backed Bonds, Series 2005-7 ("Deutsche" or "Deutsche Bank") (collectively, "Defendants") submit this Joint Final Pre-Trial Order pursuant to Local Rule CV-16.4 and this Court's Scheduling Order.

## PLAINTIFFS' SPECIAL PROVISO

Because the Court (a) has stayed Plaintiffs' claims against Defendant GMAC Mortgage, LLC ("GMAC") as a result of the bankruptcy filing by GMAC, and (b) has not yet ruled on

1/2449333.1

Plaintiffs' motions to complete the steps necessary to complete service upon Defendants First Consolidated Mortgage Company ("First Consolidated") and Ray T. DeWitt III ("DeWitt"), the following Joint Final Pre-Trial Order does not include any matters relevant to Plaintiffs' claims against Defendants GMAC, First Consolidated and DeWitt; rather, the following Joint Final Pre-Trial Order has been prepared based only on a trial of Plaintiffs v. Defendants MERS and Deutsche Bank.  Defendants' position on GMAC's bankruptcy and Plaintiffs' Motion for Substituted Service as to Defendants First Consolidated and DeWitt are set forth in GMAC's Notice of Bankruptcy and Suggestion of Automatic Stay (doc. 18) and Defendants' Objection to Plaintiffs' Motion to Extend Time and for Substituted Service (doc. 29).

## A.     COUNSEL FOR THE PARTIES

Plaintiffs:

Gorman Law Offices, P.C.
Terry P. Gorman, Esq.
State Bar No. 08218200
15950 N. Dallas Parkway, Suite 400
Dallas, Texas 75248-6628
Telephone: (972) 235-4700
Telecopier:    (214) 540-6609
terry@gormanlawtexas.com
**ATTORNEYS FOR PLAINTIFFS**
**TERRY PATRICK GORMAN AND KAREN GORMAN**

Defendants:

Bradley Arant Boult Cummings, LLP
Keith S. Anderson, Esq.
Graham W. Gerhardt, Esq.
Grant A. Premo, Esq.
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
**ATTORNEYS FOR DEFENDANTS**
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.;**
**DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE UNDER THE**
**INDENTURE RELATING TO IMH ASSETS CORP., COLLATERALIZED ASSET-BACKED**
**BONDS, SERIES 2005-7; and GMAC MORTGAGE, LLC**

2

Case 4:12-cv-00098-RAS   Document 44-18   Filed 02/18/13   Page 5 of 29   PageID #: 694

12-12020-mg   Doc 9658-35   Filed 02/23/16   Entered 02/23/16 15:32:39   Primo Decl.
Exhibit R    Pg 4 of 30

## B.    STATEMENT OF JURISDICTION

Jurisdiction in this case is based on diversity of citizenship under Title 28 U.S.C. § 1332. Jurisdiction is not disputed.

## C.    NATURE OF THE ACTION

### 1.    Plaintiffs' Statement as to Plaintiffs' Claims

Defendants MERS and Deutsche began foreclosure proceeding against Plaintiffs' Homestead in Texas State District Court by the filing of a Texas Rule 736 Proceeding in Collin County, Texas. In accordance with Rule 736 of the Texas Rules of Civil Procedure, Plaintiffs instituted a separate lawsuit alleging the following causes of actions:

**Fraud** – against First Consolidated, DeWitt, MERS, GMAC, and Deutsche Bank;

**Fraud in the Inducement** - against First Consolidated, DeWitt MERS, GMAC, and Deutsche Bank;

**Usury** – against First Consolidated, DeWitt, MERS, GMAC, and Deutsche Bank;

**Breach of Contract** – against First Consolidated, DeWitt, MERS, Deutsche Bank, and GMAC;

**Violations of the Texas Debt Collections Practices Act**-against MERS, Deutsche Bank and GMAC;

**Predatory and Unconscionable Lender Practices** - against First Consolidated, DeWitt MERS, Deutsche Bank and GMAC;

**Lender Liability (Special Relationship)** - against First Consolidated, DeWitt, MERS, Deutsche Bank and GMAC;

**Conspiracy** - against First Consolidated, DeWitt, MERS, GMAC, and Deutsche Bank; and

**Declaratory Judgment Relief**

Plaintiffs are no longer pursuing their Conspiracy claim and are no longer seeking a reimbursement of attorneys' fees.  Further, because Defendants GMAC, First Consolidated, and

3

Case 4:12-cv-00098-RAS Document 44 Filed 02/18/13 Page 4 of 29 PageID #: 693

12-12020-mg Doc 8658-5 Filed 02/23/16 Entered 02/23/16 15:32:39 Promo Decl. Exhibit R Pg 5 of 30

DeWitt are not currently before the Court at this time, only the foregoing stated causes of action which are asserted against Defendants MERS and Deutsche are addressed in this Joint Final Pretrial Order, with such claims being hereafter referred collectively referred to as "Plaintiffs' Claims."

Plaintiffs' Claims result from the creation of the Loan (a home equity loan against the Homestead of the Plaintiffs), with Defendant First Consolidated being the maker of the Loan. Although the Loan provided for a variable interest rate on the principal amount of $262,500.000, an agreement entered into by Plaintiffs and First Consolidated (signed at the closing and creation of the Loan) provided that if Plaintiffs were able to make the payments under the Loan as created for twelve (12) months, the Loan would be modified to a fixed rate interest rate ("Fixed Rate Rider").

Plaintiffs paid the amount due during the first twelve (12) months, and subsequently requested that the Loan be modified to a fixed rate of interest. Plaintiffs' request to modify the Loan in accordance with the Fixed Rate Rider was rejected by Defendants (acting solely through their agent GMAC). Finally, after the interest rate rose to twelve percent (12%) per annum, Plaintiffs stopped making payments under the Loan on or about May 2008. Ever since, Plaintiffs have been attempting to obtain the agreed upon modification of the interest rate on the loan.

Plaintiffs' Claims include various requests for Declaratory Relief including requests related to purported transfers of the Loan, the ownership of the Loan, and the ownership of the lien securing the Loan.

Defendants MERS and Deutsche Bank (acting solely through their agent GMAC) assert that they have no knowledge of the Fixed Rate Rider; deny any wrong doing as to Plaintiffs, and assert that there is no need for any declaratory rulings.

4

### 2. Defendants' Statement as to Plaintiff's Claims

As set forth in more detail in their Original Answer to Plaintiffs' First Amended Complaint, Defendants deny Plaintiffs' allegations set forth in their Amended Complaint and in Paragraph C-1 above,. (Doc. 19). Defendants incorporate as if set forth fully herein the arguments set forth in their Motion to Dismiss and Motion for Summary Judgment. (Doc. 12, 30). Defendants assert that no such agreement to modify the loan to a fixed interest rate exists or ever existed. Further, any such oral agreement would be barred by the statute frauds and is contrary to the terms of the Texas Home Equity Adjustable Rate Note and Texas Home Equity Security Instrument and any Rider affixed to and may part of said instruments, which constitutes the entire agreement between the parties. Defendants further aver that all of Plaintiffs' claims are barred in whole or part due to, among other things, the statute of limitations, the statute of frauds, and the economic loss doctrine, as set forth fully in Defendants' Motion to Dismiss and Motion for Summary Judgment. (Doc. 12, 30). Defendants reserve the right to amend this statement as to Plaintiffs' Claims.

### 3. Defendants' Claims

Defendants have not asserted any claims for relief against Plaintiffs.

## D. CONTENTIONS OF THE PARTIES

### D-1. Plaintiffs' Contentions

Capitalized terms used within the following Plaintiffs' Contentions and not specifically defined shall carry the meanings as defined hereafter <u>Section F-1</u>, being Plaintiffs' Statement of Contested Facts and Law

1. That First Consolidated knowingly made the referenced false statements to Plaintiffs Gorman during the Home Loan Proposal process, which Plaintiffs Gorman relied upon, which indeed turned out to be false, and which had Plaintiffs Gorman known, Plaintiffs would not have entered into the Home Equity Loan.

5

2.      That First Consolidated knowingly made the following false Loan Representations to Plaintiffs (during the Home Loan Proposal process), which Plaintiffs Gorman relied upon, which indeed turned out to be false, and which had Plaintiffs Gorman known, Plaintiffs would not have entered into the Home Equity Loan.

3.      That First Consolidated knowingly included MERS in the formation of the Home Equity Loan and purposely failed to inform Plaintiffs Gorman of the involvement of MERS.

4.      That had Plaintiffs Gorman known of the involvement of MERS with the formation of the Home Equity Loan, Plaintiffs would not have entered into the Home Equity Loan.

5.      That First Consolidated knowingly assigned the Home Equity Note to IMPACT Funding Corporation ("IMPACT") and purposely failed to inform Plaintiffs Gorman of the planned involvement of IMPACT.

6.      That had Plaintiffs Gorman known of the planned sale of the Home Equity Note to IMPACT, Plaintiffs would not have entered into the Home Equity Loan.

7      That First Consolidated knowingly created the Home Equity Loan without following the Texas Constitutional Protections.

8.      That had Plaintiffs Gorman known that the Home Equity Loan was knowingly formed without complying with the Texas Constitutional Protections, Plaintiffs would not have entered into the Home Equity Loan.

## Fraud by MERS

9.      That MERS knowingly failed to disclose its involvement in the formation of the Home Equity Loan.

10.     That had Plaintiffs Gorman known of such involvement by MERS, Plaintiffs would not have entered into the Home Equity Loan.

11.     That MERS knowingly allowed First Consolidated to make the false Loan Representations to Plaintiffs Gorman during the Home Loan Proposal process, which Plaintiffs Gorman relied upon, which indeed turned out to be false, and which had Plaintiffs Gorman known, Plaintiffs would not have entered into the Home Equity Loan.

12.     That MERS knowingly allowed First Consolidated to knowingly make the false Loan Representations to Plaintiffs Gorman, which Plaintiffs Gorman relied upon, which indeed turned out to be false, and which had Plaintiffs Gorman known, Plaintiffs would not have entered into the Home Equity Loan.

13.     That MERS knowingly allowed First Consolidated to create the Home Equity Loan without following the Texas Constitutional Protections.

6

14.     That had Plaintiffs Gorman known that the Home Equity Loan was knowingly formed without complying with the Texas Constitutional Protections, Plaintiffs would not have entered into the Home Equity Loan.

15.     That MERS (through its agent GMAC) knowingly made the false Modification Representations (defined hereafter) to Plaintiffs Gorman, which Plaintiffs Gorman relied upon, which indeed turned out to be false, and which had Plaintiffs Gorman known, Plaintiffs would not have continued to make payments under the Home Equity Loan.

16.     Plaintiffs have been financially harmed as a result of the actions taken by MERS.

17.     That First Consolidated knowingly made the false Loan Representations to Plaintiffs Gorman during the Home Loan Proposal process for the sole purpose of enticing Plaintiffs Gorman entering into the Home Equity Loan Process, which Plaintiffs Gorman relied upon, which turned out indeed to be false, and which had Plaintiffs Gorman known, Plaintiffs would not have entered into the Home Equity Loan.

18.     That First Consolidated knowingly made the false Loan Representations to Plaintiffs Gorman for the sole purpose of enticing Plaintiffs Gorman entering into the Home Equity Loan, which Plaintiffs Gorman relied upon, which turned out indeed to be false, and which had Plaintiffs Gorman known, Plaintiffs would not have entered into the home Equity Loan.

19.     That First Consolidated knowingly included MERS in the formation of the Home Equity Loan and purposely failed to inform Plaintiffs Gorman of the involvement of MERS for the sole purpose of enticing Plaintiffs Gorman entering into the Home Equity Loan, but had Plaintiffs Gorman known of the involvement of MERS with the formation of the Home Equity Loan, Plaintiffs would not have entered into the Home Equity Loan.

20.     First Consolidated knowingly assigned the Home Equity Note to IMPACT and purposely failed to inform Plaintiffs Gorman of the involvement of IMPACT for the sole purpose of enticing Plaintiffs Gorman entering into the Home Equity Loan.

21.     That had Plaintiffs Gorman known of the planned sale to IMPACT, Plaintiffs would not have entered into the Home Equity Loan.

22.     That First Consolidated knowingly created the Home Equity Loan without following the Texas Constitutional Protections for the sole purpose of enticing Plaintiffs Gorman entering into the Home Equity Loan.

23.     That had Plaintiffs Gorman known that the Home Equity Loan was knowingly formed without complying with the Texas Constitutional Protections, Plaintiffs would not have entered into the Home Equity Loan.

**Fraud in the Inducement by MERS**

1/2449333.1

24.     That MERS knowingly failed to disclose its involvement in the formation of the Home Equity Loan for the sole purpose of enticing Plaintiffs Gorman entering into the Home Equity Loan.

25.     That had Plaintiffs Gorman known of such involvement by MERS, Plaintiffs would not have entered into the Home Equity Loan.

26.     That MERS knowingly allowed First Consolidated to make the referenced false Loan Representations to Plaintiffs Gorman during the Home Loan Proposal process for the sole purpose of enticing Plaintiffs Gorman entering into the Home Equity Loan process, which Plaintiffs Gorman relied upon, which turned out indeed to be false, and which had Plaintiffs Gorman known Plaintiffs would not have entered into the Home Equity Lean.

27.     That MERS knowingly allowed First Consolidated to knowingly make the false Loan Representations to Plaintiffs Gorman for the sole purpose of enticing Plaintiffs Gorman entering into the Home Equity Loan, which Plaintiffs Gorman relied upon, which turned out indeed to be false, and which had Plaintiffs Gorman known, Plaintiffs would not have entered into the Home Equity Loan.

28.     That MERS knowingly allowed First Consolidated to create the Home Equity Loan without following the Texas Constitutional Protections for the sole purpose of enticing Plaintiffs Gorman entering into the Home Equity Loan.

29.     That had Plaintiffs Gorman known that the Home Equity Loan was knowingly formed without complying with the Texas Constitutional Protections, Plaintiffs would not have entered into the Home Equity Loan.

30.     That MERS (through its agent GMAC) knowingly made the false Modification Representations to Plaintiffs Gorman for the sole purpose of enticing Plaintiffs Gorman to continue to make payments under the Home Equity Loan, which Plaintiffs Gorman relied upon, which turned out indeed to be false, and which had Plaintiffs Gorman known, Plaintiffs would not have continued to make payments under the Home Equity Loan.

31.     That Plaintiffs have been financially harmed as a result of the actions taken by MERS.

**Usury by MERS**

32.     That by knowingly allowing First Consolidated to charge Loan Fees far greater than the amount of fees and interest allowed under the laws of the State of Texas, MERS violated the Texas Usury laws in completing the formation of the Home Equity Loan.

33.     That MERS (through its agent GMAC) attempted to collect funds from Plaintiffs Gorman personally for which Plaintiffs Gorman were not personally liable, and that, in doing so, MERS violated Texas Usury Laws.

34.     That MERS (through its agent GMAC) attempted to collect loan payments that were not legally due, and, that in doing so, MERS violated Texas Usury Laws.

1/2449333.1

Case 4:12-cv-00098-RAS Document 44 Filed 02/18/13 Page 5 of 23 PageID #: 700

12-12020-mg Doc 9658-5 Filed 02/23/16 Entered 02/23/16 15:32:39 Promo Decl.
Exhibit R    Pg 10 of 30

35.     That Plaintiffs have been financially harmed as a result of the actions taken by MERS.

## Usury by Deutsche Bank

36.     That, Deutsche Bank (through its agent GMAC) attempted to collect funds from Plaintiffs Gorman personally, for which Plaintiffs Gorman were not personally liable, and that, in doing so, Deutsche Bank (through its agent GMAC) violated Texas Usury Laws.

37.     That Deutsche Bank (through its agent GMAC) attempted to collect loan payments that were not legally due; in doing so, Deutsche Bank violated Texas Usury Laws.

38.     That Plaintiffs have been financially harmed as a result of the actions taken by Deutsche Bank.

## Breach of Contract by MERS

39.     That by violating the Loan Representations, MERS knowingly breached the agreement with Plaintiffs Gorman regarding such Loan Representations.

40.     That by violating the Fixed Rate Rider, MERS knowingly breached such agreement with Plaintiffs Gorman.

41.     That by violating the Modification Representations (being when Plaintiffs were told by GMAC (acting as the agent for MERS and Deutsche Bank) that the Home Equity Loan would subsequently be modified to a fixed interest rate), MERS knowingly breached its agreement with Plaintiffs Gorman regarding such Modification Representations.

42.     That by violating the Non-Recourse Protections, MERS knowingly breached the Non-Recourse Protections agreement with Plaintiffs Gorman.

43.     That by improperly accelerating the Horne Equity Note without issuance of the proper notifications, MERS knowingly breached the terms and conditions of the Home Equity Loan.

44.     That Plaintiffs have been financially harmed as a result of the actions taken by MFRS.

## Breach of Contract by Deutsche Bank

45.     That, by violating the Loan Representations, Deutsche Bank knowingly breached the agreement with Plaintiffs Gorman regarding such Loan Representations.

46.     That by violating the Fixed Rate Rider, Deutsche Bank knowingly breached such agreement with Plaintiffs Gorman.

47.     That by violating the Modification Representations, Deutsche Bank knowingly breached the agreement with Plaintiffs Gorman regarding such Modification Representations.

48.     That by violating the Non-Recourse Protections, Deutsche Bank knowingly breached the Non-Recourse Protections agreement with Plaintiffs Gorman.

49.     That by improperly accelerating the Home Equity Note without issuance of the proper notifications, Deutsche Bank knowingly breached the terms and conditions of the Home Equity Loan.

50.     That Plaintiffs have been financially harmed as a result of the actions taken by Deutsche Bank.

### Violation of the Texas Debt Collection Practices Act by MERS

51.     That MERS attempted to collect funds from Plaintiffs Gorman personally, for which Plaintiffs Gorman were not personally liable, and, that in doing so, MERS violated the Texas Debt Collection Practices Act.

52.     That MERS attempted to collect loan payments that were not legally due, and, that in doing so, MERS violated the Texas Debt Collection Practices Act.

53.     That MERS has utilized harassing, improper, and extortionary techniques in attempting to collect funds from Plaintiffs Gorman, and, that in doing so, MERS violated the Texas Debt Collection Practices Act.

54.     That Plaintiffs have been financially harmed as a result of the actions taken by MERS.

### Violation of the Texas Debt Collection Practices Act by Deutsche Bank

55.     That Deutsche Bank attempted to collect funds from Plaintiffs Gorman personally, for which Plaintiffs Gorman were not personally liable, and, that in doing so, Deutsche Bank violated the Texas Debt Collection Practices Act.

56.     That Deutsche Bank attempted to collect loan payments that were not legally due, and, that in doing so, Deutsche Bank violated the Texas Debt Collection Practices Act.

57.     That Deutsche Bank has utilized harassing, improper, and extortionary techniques in attempting to collect funds from Plaintiffs Gorman, and, that in doing so, Deutsche Bank violated the Texas Debt Collection Practices Act.

58.     That Plaintiffs have been financially harmed as a result of the actions taken by Deutsche Bank.

### Predatory and Unconscionable Lender Practices by MERS

59.     That, MERS has committed predatory and unconscionable lender practices against Plaintiffs Gorman when MERS:

a)      committed fraud as previously above;

     b)      committed fraud in the inducement as previously described above;

     c)      committed usury as previously described above;

     d)      breached the agreements made with Plaintiffs Gorman as previously described above;

     e)      violated the Texas Debt Collections Practices Act as previously described above; and

     f)      entered into and attempted to then enforce the Home Equity Loan that was created in violation of the Texas Constitutional Protections.

60.    That Plaintiffs have been financially harmed as a result of the actions taken by MERS.

### Predatory and Unconscionable Lender Practices by Deutsche Bank

61.    That Deutsche Rank has committed predatory and unconscionable lender practices against Plaintiffs Gorman when Deutsche Rank:

     a)      committed usury as previously described above;

     b)      breached the agreements made with Plaintiffs Gorman as previously described above;

     c)      violated the Texas Debt Collections Practices Act as previously described above; and

     d)      entered into and attempted to then enforce the Home Equity Loan that was created in violation of the Texas Constitutional Protections.

62.    That Plaintiffs have been financially harmed as a result of the actions taken by Deutsche Bank.

### Lender Liability-Special Relationship

63.    That because the relationship between a home equity borrower and a home equity lender is a relationship protected by the laws of the State of Texas, including but not being limited to the projections afforded by the Texas Constitution, such a home equity relationship is a "special relationship" under the laws of the State of Texas, that includes the implied covenant to act in a manner of good and fair dealing.

64.    That by executing the Home Equity Note, such a "special relationship" exists between Plaintiffs Gorman, on the one hand, and Home Equity Note owner and servicer, on the other hand.

Case 4:12-cv-00098-RAS-DDB Document 44 Filed 02/18/16 Page 13 of 29 PageID #: 703

12-12020-mg    Doc 9659-35    Filed 02/23/16    Entered 02/23/16 15:32:39    Pierce Decl.
Exhibit R    Pg 13 of 30

65.    By executing the Home Equity Lien, such a "special relationship" exists between Plaintiffs Gorman on the one hand, and beneficiary (and its agents) of the Home Equity Lien, on the other hand.

66.    That a violation of such "special relationship" arid a failure to act in a manner of good and fair dealing-when committed by a lender, or its agents, creates a cause of action for lender liability.

## Lender Liability-Special Relationship violation by MERS

67.    That MERS committed acts of lender liability by violating the special relationship that exists between MERS and Plaintiffs Gorman when MERS:

    a)    committed fraud as previously above;

    b)    committed fraud in the inducement as previously described above;

    c)    committed usury as previously described above;

    d)    breached the agreements made with Plaintiffs Gorman as previously described above;

    e)    violated the Texas Debt Collections Practices Act as previously described above;

    f)    entered into and attempted to then enforce the Home Equity Loan that was created in violation of the Texas Constitutional Protections; and

    g)    conspired to harm Plaintiffs, as described hereafter.

68.    That Plaintiffs have been financially harmed as a result of the actions taken by MERS.

## Lender Liability-Special Relationship violation by Deutsche Bank

69.    That Deutsche Bank committed acts of lender liability by violating the special relationship that exists between Deutsche Bank and Plaintiffs Gorman when Deutsche Bank:

    a)    committed usury as previously described above;

    b)    breached the agreements made with Plaintiffs Gorman as previously described above;

    c)    violated the Texas Debt Collections Practices Act as previously described above; and

    d)    entered into and attempted to then enforce the Home Equity Loan that was created in violation of the Texas Constitutional Protections.

12

70.     That Plaintiffs have been financially harmed as a result of the actions taken by Deutsche Bank.

### Declaratory Judgment Relief

71.     That neither Deutsche Bank nor MERS are the current owners of the Home Equity Note and the applicable Home Equity Lien.

72.     That the Constitutional Protections were not followed with the Creation of the Home Equity Loan.

### Exemplary Damages

74.     That because the actions of Defendant MERS towards Plaintiffs Gorman have also been, as stated, fraudulent, unconscionable, and malicious in such a nature, Plaintiffs are entitled to all penalty, exemplary, and punitive damages allowed by law.

### Pre and Post Judgment Interest

75.     That Plaintiffs Gorman also are entitled to the award of pre-judgment and post-judgment interest as allowed by law.

### D-2.    Defendant Contentions

Defendants incorporate as if set forth fully herein the arguments set forth in their *Motion to Dismiss* and *Motion for Summary Judgment*.  (Doc. 12, 30).  As set forth in the *Motion to Dismiss* and *Motion for Summary Judgment*, Defendants contest each and every factual and legal allegation set forth by Plaintiffs in the Amended Complaint, except the uncontested facts set forth in subsection (D) of this Order,   To the extent that Plaintiffs' allegations conflict with the written terms of the Texas Home Equity Adjustable Rate Note, Texas Home Equity Security Instrument, and any other documents executed by Plaintiffs concurrently therewith or as part of the loan transaction, Defendants contest any issues raised by Plaintiffs which conflict with the unambiguous terms of said documents, including, but not limited to, the terms of said interest stating that the Note included an adjustable interest rate, that MERS is the beneficiary of the Security Instrument, and that there are no unwritten oral agreement between the parties to the Note.   Defendants reserve the right to amend this statement of their contentions.

13

## E.     STIPULATIONS AND UNCONTESTED FACTS

1.      Plaintiffs purchased the property commonly known as 2812 Browning Drive, Plano, Texas 75093 (hereafter, the "Property" or "Homestead) in 2001.

2.      When Plaintiffs purchased their Homestead in 2001, a purchase money loan was made by a party not related to this matter.

3.      On May 9, 2005, Plaintiffs executed a Texas Home Equity Adjustable Rate Note (hereafter, "Note" or "Home Equity Note") in the original principle amount of $262,500.00.

4.      Concurrent with the execution of the Note, Plaintiffs executed a Texas Home Equity Security Instrument (hereafter, "Security Instrument" or "Home Equity Lien"), granting a lien on the Property.

5.      As a part of the Security Instrument, Plaintiffs also executed a Texas Home Equity Adjustable Rate Rider concurrent with the Note and Security Instrument.

6.      Plaintiffs also executed a Texas Home Equity Affidavit and Agreement concurrent with the execution of the Note and Security Instrument.

7.      Plaintiffs also executed a Disclosure Statement regarding the Note's adjustable interest rate concurrent with the execution of the Note and Security Instrument.

8.      Plaintiffs are currently due for their June 2008 installment payment, and Plaintiffs have made no payments under the Loan since May 2008.

9.      The Home Equity Loan is non-recourse, in that the sole remedy to recover any unpaid amounts due under the Home Equity Loan is to obtain a foreclosure of the Homestead.

10.     The Home Equity Note was made payable to First Consolidated. MERS, as nominee for First Consolidated, is listed as the "beneficiary" under the Home Equity Lien.

11.     In May 2005, MERS was a complete stranger to Plaintiffs.

12.     No one from MERS has ever spoken to Plaintiffs.

13.     After Plaintiffs executed the Note, First Consolidated conveyed the Note to IMPACT.

14.     Subsequent to the making of the Home Equity Loan, the servicing of the Home Equity Loan was assigned to GMAC Mortgage, LLC ("GMAC").

15.     On July 6, 2011, Defendant submitted an Application for Expedited Foreclosure Proceeding Pursuant to Rule 736 of the Texas Rules of Civil Procedure to the Collin County District Court, styled as Cause No. 429-2799-2011.

16.     The July 6, 2011 foreclosure action was automatically stayed and dismissed pursuant to Texas Rule of Civil Procedure 736.11.

14

17.    No foreclosure sale of the Property has occurred.

18.    The recorded Texas Home Equity Security Instrument states: "Borrower [Terry Gorman and Karen Gorman] accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it."

19.    The only rider referenced in the Security Instrument is the Texas Home Equity Adjustable Rate Rider.

20.    The only rider recorded with Texas Home Equity Security Instrument was the Texas Home Equity Adjustable Rate Rider.

## F.    CONTESTED ISSUES OF FACT AND LAW

### F-1.    Plaintiffs' Statement of Contested Issues of Fact and Law

1.    The monthly loan payment being paid on the Homestead by Plaintiffs Gorman in 2001 was under $2,000 per month, for a fixed term of thirty (30) years.

2.    In the Spring of 2005, Plaintiff Terry Gorman (sometimes hereafter referred to as, "Terry") was pursued by a representative from First Consolidated, requesting that First Consolidated by allowed to refinance the then current loan on the Homestead, utilizing a Texas home equity loan ("Home Loan Proposal").

3.    During the Home Loan Proposal, Plaintiff Terry was told by representatives of First Consolidated that the proposed home equity loan would have to begin as an adjustable interest rate loan, but that after 9 months to a year, the loan could be adjusted to a fixed term interest rate.

4.    Relying on the representations made by First Consolidated in the Home Loan Proposal, Plaintiffs Gorman agreed to pursue the Home Loan Proposal.

5.    Plaintiffs Gorman and First Consolidated also executed, at the closing and creation of the Loan, an agreement which provided that if Plaintiffs were able to make the payments under the Loan (as created) for twelve (12) months, the Loan would be subsequently modified to a fixed rate interest rate ("Fixed Rate Rider").

6.    For the purposes hereof, the terms Home Equity Note and Home Equity Lien may be sometimes collectively referred to as the "Home Equity Loan."

7.    During the Home Loan Proposal process, no one ever told Terry that the beneficiary of the Home Equity Lien would be anyone other than First Consolidated.

8.    If Plaintiffs Gorman had been informed that the beneficiary of the Home Equity Loan was going to be someone other than First Consolidated, Plaintiffs Gorman would not have made the Home Equity Loan.

9.    An integral element in the Plaintiffs Gorman's decision to proceed with the Home

1/2449333.1

Loan Proposal was the belief that all the lender parties would be Dallas based parties.

10.    An integral element in the Plaintiffs Gorman's decision to proceed with the Home Loan Proposal was the belief that all the lender parties would be parties that Plaintiffs had met.

11.    MERS has never been a Dallas based party.

12.    During the Home Loan Proposal process, no one ever told Plaintiff Terry that the Home Equity Note would be immediately assigned to IMPACT.

13.    In May 2005, IMPACT was a complete stranger to Plaintiffs.

14.    No one from IMPACT had ever spoken to Plaintiffs during the Home Loan Proposal process.

15.    No one from IMPACT had ever spoken to Plaintiffs during the consummation of the Home Equity Loan.

16.    If Plaintiffs Gorman had been informed that the Home Equity Loan was going to be immediately conveyed to someone other than First Consolidated, Plaintiffs Gorman would not have made the Home Equity Loan.

17.    An integral element in the Plaintiffs Gorman's decision to proceed with the Home Equity Loan was the belief that all the lender parties would be Dallas based parties.

18.    An integral element in the Plaintiffs Gorman's decision to proceed with the Home Equity Loan was the belief that all the lender parties would be parties that Plaintiffs had met.

19.    During the Home Loan Proposal process, specific representations were made by Defendant First Consolidated to Plaintiff Terry that:

   a)    although the Home Equity Note had an adjustable interest rate provision, the interest rate would never go above nine percent (9%) because the interest rate would be subsequently adjusted to a fixed amount; and

   b)    the Home Equity Note would be sold to parties that would be willing to convert the Home Equity Note to a fixed interest rate.

(For the purposes hereof, the foregoing statements shall be referred to as the "Loan Representations").

20.    At the closing of the Home Equity Loan, Plaintiffs Gorman paid thousands and thousands of dollars in fees which were required by First Consolidated (hereafter, "Loan Fees").

21.    The Home Equity Note was signed on the same day that Plaintiffs Gorman received a final itemized disclosure of the actual fees, points, interest, costs, and charges that

16

were charged at the closing of the Home Equity Loan.

22.      Plaintiffs Gorman completed the final version of the loan application for the Home Equity Loan the same day that Plaintiffs Gorman signed all the loan documents for the Home Equity Loan.

23.      The day that Plaintiffs Gorman signed all the loan documents for the Home Equity Loan, Plaintiffs Gorman did not ever receive a written notice stating that:

> "NOTICE CONCERNING EXTENSIONS OF CREDIT DEFINED BY SECTION 50(a)(6), ARTICLE XVI, TEXAS CONSTITUTION:
> "SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION ALLOWS CERTAIN LOANS TO BE SECURED AGAINST THE EQUITY IN YOUR HOME.  SUCH LOANS ARE COMMONLY KNOWN AS EQUITY LOANS.  IF YOU DO NOT REPAY THE LOAN OR IF YOU FAIL TO MEET THE TERMS OF THE LOAN, THE LENDER MAY FORECLOSE AND SELL YOUR HOME.  THE CONSTITUTION PROVIDES THAT:
>
> "(A) THE LOAN MUST BE VOLUNTARILY CREATED WITH THE CONSENT OF EACH OWNER OF YOUR HOME AND EACH OWNER'S SPOUSE;
>
> "(B) THE PRINCIPAL LOAN AMOUNT AT THE TIME THE LOAN IS MADE MUST NOT EXCEED AN AMOUNT THAT, WHEN ADDED TO THE PRINCIPAL BALANCES OF ALL OTHER LIENS AGAINST YOUR HOME, IS MORE THAN 80 PERCENT OF THE FAIR MARKET VALUE OF YOUR HOME;
>
> "(C) THE LOAN MUST BE WITHOUT RECOURSE FOR PERSONAL LIABILITY AGAINST YOU AND YOUR SPOUSE UNLESS YOU OR YOUR SPOUSE OBTAINED THIS EXTENSION OF CREDIT BY ACTUAL FRAUD;
>
> "(D) THE LIEN SECURING THE LOAN MAY BE FORECLOSED UPON ONLY WITH A COURT ORDER;
>
> "(E) FEES AND CHARGES TO MAKE THE LOAN MAY NOT EXCEED 3 PERCENT OF THE LOAN AMOUNT;
>
> "(F) THE LOAN MAY NOT BE AN OPEN-END ACCOUNT THAT MAY BE DEBITED FROM TIME TO TIME OR UNDER WHICH CREDIT MAY BE EXTENDED FROM TIME TO TIME UNLESS IT IS A HOME EQUITY LINE OF CREDIT;

1/2449333.1

"(G) YOU MAY PREPAY THE LOAN WITHOUT PENALTY OR CHARGE;

"(H) NO ADDITIONAL COLLATERAL MAY BE SECURITY FOR THE LOAN;

"(I) THE LOAN MAY NOT BE SECURED BY HOMESTEAD PROPERTY THAT IS DESIGNATED FOR AGRICULTURAL USE AS OF THE DATE OF CLOSING, UNLESS THE AGRICULTURAL HOMESTEAD PROPERTY IS USED PRIMARILY FOR THE PRODUCTION OF MILK;

"(J) YOU ARE NOT REQUIRED TO REPAY THE LOAN EARLIER THAN AGREED SOLELY BECAUSE THE FAIR MARKET VALUE OF YOUR HOME DECREASES OR BECAUSE YOU DEFAULT ON ANOTHER LOAN THAT IS NOT SECURED BY YOUR HOME;

"(K) ONLY ONE LOAN DESCRIBED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION MAY BE SECURED WITH YOUR HOME AT ANY GIVEN TIME;

"(L) THE LOAN MUST BE SCHEDULED TO BE REPAID IN PAYMENTS THAT EQUAL OR EXCEED THE AMOUNT OF ACCRUED INTEREST FOR EACH PAYMENT PERIOD;

"(M) THE LOAN MAY NOT CLOSE BEFORE 12 DAYS AFTER YOU SUBMIT A LOAN APPLICATION TO THE LENDER OR BEFORE 12 DAYS AFTER YOU RECEIVE THIS NOTICE, WHICHEVER DATE IS LATER; AND MAY NOT WITHOUT YOUR CONSENT CLOSE BEFORE ONE BUSINESS DAY AFTER THE DATE ON WHICH YOU RECEIVE A COPY OF YOUR LOAN APPLICATION IF NOT PREVIOUSLY PROVIDED AND A FINAL ITEMIZED DISCLOSURE OF THE ACTUAL FEES, POINTS, INTEREST, COSTS, AND CHARGES THAT WILL BE CHARGED AT CLOSING; AND IF YOUR HOME WAS SECURITY FOR THE SAME TYPE OF LOAN WITHIN THE PAST YEAR, A NEW LOAN SECURED BY THE SAME PROPERTY MAY NOT CLOSE BEFORE ONE YEAR HAS PASSED FROM THE CLOSING DATE OF THE OTHER LOAN, UNLESS ON OATH YOU REQUEST AN EARLIER CLOSING DUE TO A DECLARED STATE OF EMERGENCY;
"(N) THE LOAN MAY CLOSE ONLY AT THE OFFICE OF THE LENDER, TITLE COMPANY, OR AN ATTORNEY AT LAW;

"(O) THE LENDER MAY CHARGE ANY FIXED OR VARIABLE RATE OF INTEREST AUTHORIZED BY STATUTE;

"(P) ONLY A LAWFULLY AUTHORIZED LENDER MAY MAKE LOANS DESCRIBED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION;

"(Q) LOANS DESCRIBED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION MUST:

"(1) NOT REQUIRE YOU TO APPLY THE PROCEEDS TO ANOTHER DEBT EXCEPT A DEBT THAT IS SECURED BY YOUR HOME OR OWED TO ANOTHER LENDER;

"(2) NOT REQUIRE THAT YOU ASSIGN WAGES AS SECURITY;

"(3) NOT REQUIRE THAT YOU EXECUTE INSTRUMENTS WHICH HAVE BLANKS FOR SUBSTANTIVE TERMS OF AGREEMENT LEFT TO BE FILLED IN;

"(4) NOT REQUIRE THAT YOU SIGN A CONFESSION OF JUDGMENT OR POWER OF ATTORNEY TO ANOTHER PERSON TO CONFESS JUDGMENT OR APPEAR IN A LEGAL PROCEEDING ON YOUR BEHALF;

"(5) PROVIDE THAT YOU RECEIVE A COPY OF YOUR FINAL LOAN APPLICATION AND ALL EXECUTED DOCUMENTS YOU SIGN AT CLOSING;

"(6) PROVIDE THAT THE SECURITY INSTRUMENTS CONTAIN A DISCLOSURE THAT THIS LOAN IS A LOAN DEFINED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION;

"(7) PROVIDE THAT WHEN THE LOAN IS PAID IN FULL, THE LENDER WILL SIGN AND GIVE YOU A RELEASE OF LIEN OR AN ASSIGNMENT OF THE LIEN, WHICHEVER IS APPROPRIATE;

"(8) PROVIDE THAT YOU MAY, WITHIN 3 DAYS AFTER CLOSING, RESCIND THE LOAN WITHOUT PENALTY OR CHARGE;

"(9) PROVIDE THAT YOU AND THE LENDER ACKNOWLEDGE THE FAIR MARKET VALUE OF YOUR HOME ON THE DATE THE LOAN CLOSES; AND
"(10) PROVIDE THAT THE LENDER WILL FORFEIT ALL PRINCIPAL AND INTEREST IF THE LENDER FAILS TO COMPLY WITH THE LENDER'S OBLIGATIONS UNLESS THE LENDER CURES THE FAILURE TO COMPLY AS PROVIDED BY SECTION 50(a)(6)(Q)(x), ARTICLE XVI, OF THE TEXAS CONSTITUTION; AND

1/2449333.1

"(R) IF THE LOAN IS A HOME EQUITY LINE OF CREDIT:

"(1) YOU MAY REQUEST ADVANCES, REPAY MONEY, AND REBORROW MONEY UNDER THE LINE OF CREDIT;

"(2) EACH ADVANCE UNDER THE LINE OF CREDIT MUST BE IN AN AMOUNT OF AT LEAST $4,000;

"(3) YOU MAY NOT USE A CREDIT CARD, DEBIT CARD, OR SIMILAR DEVICE, OR PREPRINTED CHECK THAT YOU DID NOT SOLICIT, TO OBTAIN ADVANCES UNDER THE LINE OF CREDIT;

"(4) ANY FEES THE LENDER CHARGES MAY BE CHARGED AND COLLECTED ONLY AT THE TIME THE LINE OF CREDIT IS ESTABLISHED AND THE LENDER MAY NOT CHARGE A FEE IN CONNECTION WITH ANY ADVANCE;

"(5) THE MAXIMUM PRINCIPAL AMOUNT THAT MAY BE EXTENDED, WHEN ADDED TO ALL OTHER DEBTS SECURED BY YOUR HOME, MAY NOT EXCEED 80 PERCENT OF THE FAIR MARKET VALUE OF YOUR HOME ON THE DATE THE LINE OF CREDIT IS ESTABLISHED;

"(6) IF THE PRINCIPAL BALANCE UNDER THE LINE OF CREDIT AT ANY TIME EXCEEDS 50 PERCENT OF THE FAIR MARKET VALUE OF YOUR HOME, AS DETERMINED ON THE DATE THE LINE OF CREDIT IS ESTABLISHED, YOU MAY NOT CONTINUE TO REQUEST ADVANCES UNDER THE LINE OF CREDIT UNTIL THE BALANCE IS LESS THAN 50 PERCENT OF THE FAIR MARKET VALUE; AND

"(7) THE LENDER MAY NOT UNILATERALLY AMEND THE TERMS OF THE LINE OF CREDIT.

"THIS NOTICE IS ONLY A SUMMARY OF YOUR RIGHTS UNDER THE TEXAS CONSTITUTION. YOUR RIGHTS ARE GOVERNED BY SECTION 50, ARTICLE XVI, OF THE TEXAS CONSTITUTION, AND NOT BY THIS NOTICE."

24.    Since the creation of the Home Equity Loan, Plaintiffs Gorman have made significant payments to be applied to interest and principal due under the Home Equity Loan.

25.    When the Home Equity Loan was subsequently purportedly conveyed (for a profit) to Deutsche Bank, it is unclear whether the assignor on such assignment had any interest in the Home Equity Note.

26.    When the Home Equity Loan was subsequently purportedly conveyed (for a profit) to Deutsche Bank, it is unclear whether the assignor on such assignment had any interest

in the Home Equity Lien.

27.     Although the Home Equity Loan is purportedly owned by Deutsche Bank, there is no indication that the Home Equity Note was ever assigned by First Consolidated or Impact Funding to Deutsche Bank.

28.     Plaintiffs Gorman have no knowledge whether the purported assignment (of the servicing) to GMAC was made by anyone with authority to make such assignment.

29.     After at least twelve months of making the monthly payments due under the Home Equity Loan, Plaintiff Terry contacted GMAC (acting as the agent for MERS and Deutsche Bank) and requested that the Home Equity Loan be modified to a fixed interest rate.

30.     GMAC (acting as the agent for MERS and Deutsche Bank) informed Plaintiff Terry that there was no agreement to modify the Home Equity Loan into a fixed interest rate.

31.     GMAC (acting as the agent for MERS and Deutsche Bank) also informed Plaintiff Terry that the then holder of the Home Equity Note and the Home Equity Lien (at that point in time being Deutsche Bank and MERS, respectfully) were not obligated to modify the Home Equity Loan into a fixed interest rate.

32.     After further discussions between Plaintiff Terry and GMAC (acting as the agent for MERS and Deutsche Bank), GMAC did agree to a temporary reduction in the amount of the monthly mortgage payments.

33.     At that time, Plaintiff Terry was told by GMAC (acting as the agent for MERS and Deutsche Bank) that the Home Equity Loan would subsequently be modified to a fixed interest rate ("Modification Representations").

34.     However, GMAC (acting as the agent for MERS and Deutsche Bank) subsequently refused to modify the Home Equity Loan to a fixed interest rate.

35.     As recently as during the Fall of 2011, Plaintiff Terry had a direct conversation with a representative for GMAC (acting as the agent for MERS and Deutsche Bank) regarding whether the Home Equity Loan would be modified as promised.

36.     During said Fall 2011 discussion, the representative for GMAC (acting as the agent for MERS and Deutsche Bank) bluntly told Plaintiff Terry that "there would never be a modification of the Home Equity Loan, and they would just go foreclose as soon as possible."

37.     Due to the failure to abide by the Loan Representations, the monthly payments on the Home Equity Loan skyrocketed, and a fixed rate of interest was never imposed.

38.     Due to the failure to abide by the Loan Representations and without the promised modification of the Home Equity Loan, the monthly payments grew to over $3,000 per month because of interest rate increases.

39.     Had Plaintiffs ever been informed that their monthly payments due under the Home Equity Loan would rise to over $3,000 per month, Plaintiffs Gorman never would have entered into the Home Equity Loan.

40.     Beginning at some point in time and continuing until the late Fall of 2011, GMAC (acting as the agent for MERS and Deutsche Bank) began demanded (from Plaintiffs Gorman) payments purportedly personally due under the Home Equity Note.

41.     The foregoing described demands made by GMAC (acting as the agent for MERS and Deutsche Bank) (many of which were made through seemingly endless phone calls), were harassing in nature.

42.     The foregoing described phone calls made by GMAC (acting as the agent for MERS and Deutsche Bank) were made to Plaintiffs at Plaintiffs' home throughout the day, with multiple calls the same day.

43.     The foregoing described phone calls made by GMAC (acting as the agent for MERS and Deutsche Bank) were made to Plaintiffs at Plaintiffs' home late in the evening.

44.     The foregoing described phone calls made by GMAC (acting as the agent for MERS and Deutsche Bank) were made to Plaintiffs' relatives at such relatives' home.

45.     The foregoing described phone calls made by GMAC (acting as the agent for MERS and Deutsche Bank) were made to Plaintiff Terry Gorman at his place of work.

46.     During the foregoing time period, Plaintiffs received numerous and seemingly endless letters demanding payments on the Home Equity Note, from GMAC (acting as the agent for MERS and Deutsche Bank).

47.     The above-described letters demanded personal payments under the Home Equity Note.

48.     The calls and letters made Plaintiffs Gorman feel as if vultures were circling the Plaintiffs' Homestead, just waiting for the Plaintiffs to step outside.

49.     As the purported servicing agent for the Home Equity Note, the foregoing described harassing demands made by GMAC were made as the agent, and on behalf, of the owner of the Home Equity Note at the time of such demands.

50.     As stated, the foregoing demands made by GMAC (acting as the agent for MERS and Deutsche Bank) included demands that Plaintiffs Gorman make personal payments purportedly due under the Home Equity Note.

51.     Such demands were made by GMAC (acting as the agent for MERS and Deutsche Bank) despite the fact that Plaintiffs Gorman are not personally liable under the Home Equity

Note.

52.     Without issuing the notice and cure provisions required by the Home Equity Loan and the Constitutional Protections, the Home Equity Loan was declared to be in default by Deutsche Bank and GMAC (acting as the agent for MERS and Deutsche Bank).

53.     Ever since, Deutsche Bank and GMAC (acting as the agent for MERS and Deutsche Bank) have been attempting to foreclose on the Plaintiffs' Homestead.

54.     Deutsche Bank and GMAC (acting as the agent for MERS and Deutsche Bank) have pursed an improper foreclosure sale of the Homestead by an attempted use of the Home Equity Lien.

55.     Deutsche Bank and GMAC (acting as the agent for MERS and Deutsche Bank) have:

(a)     failed to establish that the Home Equity Lien was properly formed in accordance with the requirements of Chapter 50(a)(6) of the Constitution of the State of Texas;

(b)     failed to provide the notices of default, notices of opportunity to cure, notices of intent to accelerate, and notice of acceleration required by the Constitutional Protections;

(c)     attempted to foreclose on the Homestead, notwithstanding the failure to honor the Loan Representations; and

(d)     attempted to foreclose on the Homestead, notwithstanding the failure to honor the Modification Representation.

56.     Notwithstanding the foregoing failures, Deutsche Bank and GMAC (acting as the agent for MERS and Deutsche Bank) have sought to foreclosure the Homestead.

57.     In pursuing improper foreclosure efforts against the Homestead, Deutsche Bank and GMAC (acting as the agent for MERS and Deutsche Bank) have violated the Constitutional Protections afforded Plaintiffs as to the Homestead.

58.     In pursuing improper foreclosure efforts against the Plaintiffs' Homestead, Deutsche Bank and GMAC (acting as the agent for MERS and Deutsche Bank) have attempted to coerce and extort payments from Plaintiffs Gorman.

59.     Deutsche Bank and GMAC (acting as the agent for MERS and Deutsche Bank) have publically refuted, repudiated, and violated the Non-Recourse Protections by seeking personal payments from Plaintiffs.

60.     In purposefully violating the Non-Recourse Protections, Deutsche Bank and GMAC (acting as the agent for MERS and Deutsche Bank) have attempted to coerce and extort

1/2449333.1

payments from Plaintiffs.

61.    To prevent the Defendants Deutsche Bank and GMAC (acting as the agent for MERS and Deutsche Bank) from improperly foreclosing on Plaintiffs' Homestead, Plaintiffs were required to engage an attorney to represent Plaintiffs in this matter.

62.    During the above-described time period that GMAC was improperly coercing Plaintiffs Gorman and attempting to improperly foreclosure on the Plaintiffs Homestead. GMAC was busy with similar illegal acts regarding other home mortgages being serviced by GMAC across the county.

63.    During the relevant time periods, GMAC was the recipient of various cease and desist orders from attorneys general of various states and federal regulators.

64.    During the relevant time periods, GMAC was also named as a defendant in various class action suits by homeowners being mistreated by GMAC around the country.

65.    Plaintiffs Gorman have themselves been alerted in writing that Plaintiffs may have been the victim of GMAC's improper servicing actions, including overcharging of fees.

66.    During the relevant time period, GMAC received over $12.5 Billion in financial assistance from the United States.

67.    Notwithstanding the "bail out" of GMAC, during that same time period, and thereafter, GMAC has continued to pursue its improper foreclosure efforts as to Plaintiffs' Homestead.

68.    Although the principal amount due under the Home Equity Note is less than $262,500.00, the value of Plaintiffs' Homestead is near $400,000.00, thereby creating a differential that creates a profit motive for GMAC (acting as the agent for MERS and Deutsche Bank) to take the Homestead away from Plaintiffs.

69.    Had Plaintiffs Gorman known that the Non-Recourse Protections were knowingly made by First Consolidated for the sole purpose of enticing Plaintiffs into completing the Home Equity Loan so that such Loan could subsequently be sold for a profit to Deutsche Bank, Plaintiffs Gorman would have never entered into the Home Equity Loan.

70.    Had Plaintiffs Gorman known that the Loan Representations were knowingly made by First Consolidated for the sole purpose of enticing Plaintiffs into completing the Home Equity Loan so that such Loan could subsequently be sold for a profit to Deutsche Bank, Plaintiffs Gorman would have never entered into the Home Equity Loan.

71.    Had Plaintiffs Gorman known that the Modification Representations were knowingly made by GMAC (acting as the agent for MERS and Deutsche Bank) for the sole purpose of enticing Plaintiffs into continuing to make payments under the Home Equity Loan, Plaintiffs Gorman would have never continued to make payments under the Home Equity Loan.

1/2449333.1

72. Upon information and believe, First Consolidated, MERS, Deutsche Bank, and GMAC acted together to complete the acts taken against Plaintiffs Gorman, so that each party could financially profit at the expense of Plaintiffs Gorman.

**F-2. Defendants' Statement of Contested Issues of Fact and Law**

Defendants do not consent to and deny the allegations and contentions set forth in Plaintiffs' Amended Complaint and Paragraphs C-1, D-1, and F-1. Defendants incorporate their arguments set forth in their *Motion to Dismiss* and *Motion for Summary Judgment* as if set forth fully herein as their contested issues of law and fact. (Doc. 12, 30). As set forth in the *Motion to Dismiss* and *Motion for Summary Judgment*, Defendants contest each and every factual and legal allegation set forth by Plaintiffs in the Amended Complaint, except the above-referenced uncontested facts set forth in subsection (D) of this Order, To the extent that Plaintiffs' allegations conflict with the written terms of the Texas Home Equity Adjustable Rate Note, Texas Home Equity Security Instrument, and any other documents executed by Plaintiffs concurrently therewith or as part of the loan transaction, Defendants contest any issues raised by Plaintiffs which conflict with the unambiguous terms of said documents, including, but not limited to, the terms stating that the Note included an adjustable interest rate, that MERS is the beneficiary of the Security Instrument, and that there were no unwritten oral agreement between the parties to the Note. Accordingly, Defendants' contested issues of fact and law include, but are not limited to, the following:

1. Whether any agreement, whether oral or written, to convert the Home Equity Loan to a fixed rate exists or ever existed. Further, whether any such agreement satisfies the statute of frauds. Defendants contest that the instrument referred to by Plaintiffs as the "Future Fixed Rate Rider" exists.

2. Whether Plaintiffs failed to receive the proper disclosures required by the Texas Constitution, including, but not limited to, the 50(a)(6) notice referenced in Paragraph 41 of the Amended Complaint.

3. Whether Defendants ever violated the non-recourse provisions of the Home Equity Loan. Specifically, Defendants contest Plaintiffs' definition and characterization of the term "non-recourse" and the protections provided by the Texas Constitution related to non-recourse protections in Home Equity Loans. Further, Defendants allege that, under Texas law, nothing other than seeking to enforce a judgment on the Note and Security Instrument against Plaintiffs' personal assets (as opposed to seeking a foreclosure of the Property) violates the non-recourse provisions of the Note and Security Instrument.

4. Whether Defendants' collection efforts were improper.

5. Whether Defendants' foreclosure was improper.

6. Whether Defendants are "debt collectors" under the Texas Debt Collection Act. If so, whether Defendants misrepresented the character, extent, or amount of a consumer debt and whether Defendants' effort to enforce its contractual rights under the Deed of Trust constitutes a violation of the Texas Debt Collection Act.

7. Whether the Note's interest rate was or is usurious.

8. Whether Defendants breached the Note or Security Instrument.

9. Whether a cause of action exists under Texas law for "Predatory and Unconscionable Lender Practices."

10. Whether Defendants and Plaintiffs had a special relationship.

11. Whether Plaintiffs are entitled to any injunctive relief.

12. Whether Plaintiffs are entitled to any relief whatsoever.

Plaintiffs and Defendants reserve the right to amend their respective statements of their contested issues.

## G. LIST OF WITNESSES

### G-1. Witnesses who may be called by Plaintiffs to testify at trial.

Plaintiffs Gorman submit the following list of witnesses pursuant to the Court's

Scheduling Order. Plaintiffs specifically reserve the right to amend or supplement this list and

to use in their case in chief or in rebuttal any witnesses listed by Defendants.

### 1. Terry. P. Gorman

Testimony to include information regarding the making of the Loan; the subsequent efforts to have the Loan modified as agreed to; the purported transfer of the Loan to others beyond First Consolidated; the servicing of the Loan by GMAC; GMAC's refusal to modify the Loan as was

26

Case 4:12-cv-00098-RAS35 Document 44-1 Filed 02/18/13 Page 25 of 29 PageID #: 710

12-12020-mg Doc 9650-35 Filed 02/23/16 Entered 02/23/16 15:32:39 Bruno Decl.
Exhibit R   Pg 28 of 30

originally agreed to, improper collection efforts undertaken by GMAC; GMAC's temporary modification of the Loan; GMAC's efforts to Foreclose Plaintiffs' Homestead on behalf of MERS and Deutsche Bank; GMAC´s bankruptcy, GMAC final refusal to modify the Loan; the value of **the** Homestead; allegations that the LIBOR rate was intentionally manipulated to establish a false. and improperly high, interest rate; damages suffered by Plaintiffs; and all other matters asserted in PLAINTIFFS' FIRST-AMENDED COMPLAINT filed in this matter.

**2.     Karen J Gorman**

Testimony to include information regarding the making of the underlying Loan; collection efforts by GMAC; collection calls made by GM AC to her parents' home; and efforts by GMAC to foreclose the Plaintiffs' Homestead.

**3.     Corporate representatives attending the trial on behalf of any of the Defendants**

Testimony regarding the purported transfer of the Loan to others beyond First Consolidated; the servicing of the Loan by GMAC; GMAC's refusal to modify the Loan as was originally agreed to, improper collection efforts undertaken by GMAC; GMAC's temporary modification of the Loan; GMAC's efforts to foreclose Plaintiffs' Homestead on behalf of MERS and Deutsche Bank; GMAC's bankruptcy; GMAC's final refusal to modify the Loan; the value of the Homestead; and allegations that the LIBOR rate was intentionally manipulated to establish a false, and improperly high, interest rate.

By listing the above witnesses, Plaintiffs do not represent or commit that the individual will be present or available at trial.   Plaintiffs reserve the right to amend this witness list as new information becomes available and will promptly notify Defendants of same.

**4.     Any person listed as a trial witness by any of the Defendants.**

**5.     Any witness needed for impeachment or rebuttal; and**

**6.     Witnesses who may be presented by Plaintiffs through deposition excerpts:**

None.

**G-2.   Witnesses who may be called by Defendants to testify at trial.**

See Defendants' List of Witness, attached hereto as Exhibit A.

**H.     LIST OF EXHIBITS**

**1.     Plaintiffs' List of Exhibits**

See Plaintiffs' Exhibit List, attached hereto as Exhibit B.

**2.     Defendants' List of Exhibits**

See Defendants' Exhibit List, attached hereto as Exhibit C.

27

## I.   LIST OF ANY PENDING MOTIONS

1.   Docket Matter 12- MOTION to Dismiss *Plaintiffs' First Amended Complaint Under Rule 12(b)(6)7 Incorporated Brief in Support Thereof* by Deutsche Bank National Trust Company, First Consolidated Mortgage, GMAC Mortgage, LLC, Mortgage Electronic Registration Systems, Inc.

2.   Docket Matter 24- MOTION To Extend Time Under Rule 4(m) As To Defendant Dewitt by Karen Gorman, Terry Patrick Gorman.

3.   Docket Matter 25- MOTION For Substitute Service As To Defendant Dewitt

4.   Docket Matter 26- MOTION To Extend Time Under Rule 4(m) As To Defendant First Consolidated

5.   Docket Matter 27- MOTION For Substituted Service As To Defendant First Consolidated

6.   Docket Matter 30- MOTION for Summary Judgment *and Incorporated Brief in Support Thereof* by Deutsche Bank National Trust Company, Mortgage Electronic Registration, Systems, Inc.

7.   Docket Matter 35- MOTION to Strike *Defendants' MSJ Evidence and Brief In Support Thereof*

8.   Docket Matter 42- Plaintiffs' Opposed MOTION in Limine

9.   Docket Matter 43- MOTION in Limine by Deutsche Bank National Trust Company, Mortgage Electronic Registration Systems, Inc.

## J.   PROBABLE LENGTH OF TRIAL

The probable length of trial is 3 days.

## K.   MANAGEMENT CONFERENCE LIMITATIONS

None yet established.

## L.   CERTIFICATIONS

The undersigned counsel for each of the parties in this action does hereby certify and

acknowledge the following:

(1)   Full and complete disclosure has been made in accordance with the Federal Rules of Civil Procedure, the Court's orders, and the agreement among the Parties to not tender the otherwise required Initial Disclosure or conduct any discovery until

28

after this Court ruled on the referenced pending Motion to Dismiss filed by Defendants.

(2)     Each exhibit in the List of Exhibits herein:

a.     Is in existence;
b.     Is numbered; and
c.     Will be disclosed and shown to opposing counsel.

## APPROVED AS TO FORM AND SUBSTANCE:


  /s/ Terry P. Gorman _____
Terry P. Gorman, Attorney for Plaintiffs


  /s/ Keith S. Anderson _____
Keith S. Anderson, Attorney for Defendants


This Joint Pre-Trial Order is hereby approved this _____ day of _____, 2013.


_____
UNITED STATES DISTRICT JUDGE