**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------
)
In re:                                                              )          Case No. 12-12020 (MG)
                                                                    )
RESIDENTIAL CAPITAL, LLC, et al.,                                   )          Chapter 11
                                                                    )
                                        Debtors.                    )          Jointly Administered
                                                                    )
--------------------------------------------------------------------

## ORDER GRANTING THE RESCAP BORROWER CLAIMS TRUST'S NINETY-SECOND OMNIBUS OBJECTION TO CLAIMS ((A) NO LIABILITY BORROWER CLAIMS AND (B) ALLOWED IN FULL BORROWER CLAIM)

Upon *The ResCap Borrower Claims Trust's Ninety-Second Omnibus Objection to Claims ((A) No Liability Borrower Claims and (B) Allowed in Full Borrower Claim* (the "Objection")[1] of The ResCap Borrower Claims Trust (the "Borrower Trust") established pursuant to the terms of the confirmed Plan filed in the above-referenced Chapter 11 Cases, as successor in interest to the above-captioned debtors (collectively, the "Debtors") with respect to Borrower Claims, seeking entry of an order, pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007(d) of the Federal Rules of Bankruptcy Procedure, and this Court's order approving procedures for the filing of omnibus objections to proofs of claim [Docket No. 3294] (the "Procedures Order"), (i) disallowing and expunging the No Liability Borrower Claims on the basis that the Debtors' books and records reflect no liability for amounts owed for such Claims against the Debtors' estates and (ii) allowing the Allowed in Full Borrower Claim in the amount of $22,600.00, all as more fully described in the Objection; and it appearing that this Court has jurisdiction to consider the Objection pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Objection and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to

---

[1]    Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Objection.

28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Objection having been provided, and it appearing that no other or further notice need be provided; upon consideration of the Objection, the *Declaration of Sara Lathrop in Support of The ResCap Borrower Claims Trust's Ninety-Second Omnibus Objection to Claims ((A) No Liability Borrower Claims and (B) Allowed in Full Borrower Claim)*, annexed to the Objection as <u>Exhibit 2</u>; and the Court having found and determined that the relief sought in the Objection is in the best interests of the Borrower Trust, its constituents, the Debtors, and all parties in interest, and that the legal and factual bases set forth in the Objection establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

**ORDERED** that the relief requested in the Objection is granted to the extent provided herein; and it is further

**ORDERED** that pursuant to section 502(b) of the Bankruptcy Code, the claims listed on <u>Exhibit A</u> annexed hereto (collectively, the "<u>No Liability Borrower Claims</u>") are disallowed and expunged with prejudice; and it is further

**ORDERED** that Kurtzman Carson Consultants LLC, the Debtors' claims and noticing agent ("<u>KCC</u>"), is directed to disallow and expunge the No Liability Borrower Claims identified on the schedule attached as <u>Exhibit A</u> hereto so that such claims are no longer maintained on the Claims Register; and it is further

**ORDERED** that pursuant to section 502(b) of the Bankruptcy Code, claim number 5523 filed by Sonia Visajel aka Sonia Medina (the "<u>Allowed in Full Borrower Claim</u>") is hereby allowed as a general unsecured claim against Debtor GMAC Mortgage, LLC in the filed amount of $22,600.00 and shall receive the treatment provided for Allowed Borrower

Claims against the GMACM Debtors provided for in Article III.D.2(f) of the Plan; and it is

further

      **ORDERED** that KCC is directed to reflect on the Claims Register that the

Allowed in Full Borrower Claim is allowed as a general unsecured claim against GMAC

Mortgage, LLC in the amount of $22,600.00; and it is further

      **ORDERED** that the Borrower Trust is authorized and empowered to take all

actions as may be necessary and appropriate to implement the terms of this Order; and it is

further

      **ORDERED** that notice of the Objection, as provided therein, shall be deemed

good and sufficient notice of such objection, and the requirements of Bankruptcy Rule 3007(a),

the Case Management Procedures entered on May 23, 2012 [Docket No. 141], the Procedures

Order, and the Local Bankruptcy Rules of this Court are satisfied by such notice; and it is further

      **ORDERED** that this Order has no res judicata, estoppel, or other effect on the

validity, allowance, or disallowance of any claim that is not identified in this Order or listed on

Exhibit A annexed to this Order, and the Trust's and any party in interest's right to object on any

basis are expressly reserved with respect to any such claim that is not identified in this Order or

listed on Exhibit A annexed hereto; and it is further

      **ORDERED** that this Order shall be a final order with respect to each of the No

Liability Borrower Claims identified on Exhibit A annexed hereto, as well as the Allowed in Full

Borrower Claim, as if each such Claim had been individually objected to; and it is further

**ORDERED** that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

**IT IS SO ORDERED.**

Dated:  February 25, 2016
        New York, New York

                               _____/s/Martin Glenn_____
                                    MARTIN GLENN
                        United States Bankruptcy Judge

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| 4267 | Jeffrey and Jacqueline Piper<br><br>2132 Galloway Ct Cincinnati, OH 45240<br><br>Unliquidated<br><br>GMAC Mortgage, LLC | Judicial Estoppel | Intervale Mortgage Corporation originated the loan on May 17, 2006. Debtor Residential Funding Company, LLC purchased the loan from Intervale and transferred its interest when the loan was securitized on or about July 1, 2006 where JP Morgan Chase Bank, NA was appointed as trustee.  Debtor Homecomings Financial serviced the loan from July 13, 2006 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage LLC serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimant asserts "illegal charges against mortgage and note" as basis for claim in box 2 of the proof of claim form.  Claimant attaches mortgage statements from June, July and August 2010, but provides no additional explanation or documentation in support of the claim. On June 21, 2013 Debtors sent Claimant a letter requesting additional information and documentation in support of the claim; however, Claimant failed to respond.<br><br>Debtors have no liability for Claimants' assertions because Claimant did not preserve this claim in their personal bankruptcy, and therefore, is estopped from asserting the claim against the Debtors.  Debtors' records and research show that Claimant, Jacqueline Piper, filed a petition for chapter 13 bankruptcy protection on June 2, 2010 (Ohio Southern District Bankruptcy Court, Case 10-bk-13818) and received an order of joint discharge October 10, 2013. Claimant Jeffrey Piper was listed as a co-debtor for the specific mortgage debt to GMAC Mortgage on | 13 |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Schedule H of Jacqueline Piper's bankruptcy schedules.   The Claimants filed Claim No. 4267 on November 9, 2012.  Claimant's schedules filed in her chapter 13 case do not show any liquidated, unliquidated or contingent claims against any of the Debtors that are consistent with the allegations in the Claimant's proofs of claim. Some or all of the allegations and issues of fact regarding the alleged "illegal fees" occurred prior to Claimant's chapter 13 petition date, and Claimant never amended schedules to reflect a claim against the Debtors prior to Claimant's discharge in 2013. | |
| 1384 | Edward Dierkes<br><br>610 Riverfront Drive Sheboygan, WI 53081<br><br>$12,864.25<br><br>GMAC Mortgage, LLC | Wrongful Foreclosure; Loan Modification | Homecomings Financial Network, Inc. originated the loan on August 15, 2005. Debtor Residential Funding Company, LLC purchased the loan from Homecomings and transferred its interest when the loan was securitized on or about September 1, 2005 where Deutsche Bank Trust Company Americas was appointed as Trustee. Debtor Homecomings Financial serviced the loan from August 15, 2005 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage LLC serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimants assert "Misrepresentations, errors during foreclosure process" as basis for claim in box 2 of the proof of claim form. Attached to the Proof of Claim was a further explanation asserting "1) We were giving two modification and told if we made three trial payments our loan would be modified. We made the payments and after the 3rd payment they said no.  2) They told us the foreclosure was on | 10-11, 12 |

2

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | hold, but it wasn't, it was a robo signed case." Additional assertions include:<br><br>1) Loan was discharged in Chapter 7 Bankruptcy<br>2) Applied for modification, was told foreclosure on hold<br>3) They sent me packet and told me if we made the 3 payments on time our mortgage would be modified.<br>4) We sent packet back<br>5) Made the 3 required payments on time<br>6) Received letter of denial stating 'HAMP Program denied due to insufficient'<br>7) I would not have sent in the payments totaling \$2,264.25, if they didn't tell me I was approved , especially since I had discharged the debt.<br>8) They submitted the 'Robo Signed' affidavit of Jeffrey Stephan<br>9) We moved out of our property because of the foreclosure judgment, based on Jeffrey Stephans affidavit.<br>10) We rented an apartment beginning on June 1st 2010.<br>11) They vacated the judgment due to robo signed affidavit of Jeffrey Stephan.<br>12) They kept possession of the property by changing the locks, which denied us access and cost us the additional expenses.<br>13) I would not have had to move and acquired the expenses I did.<br>14) I am requesting the below listed damages<br><br>3 payments to GMAC  @ \$754.75  - \$2,264.25<br>Rent 6-1-2010 to 5-31-2011 @ \$750.00  -  \$9,000.00 | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Rent 6-1-2011 to 7-1-2011 @ $800.00  -  $1,600.00"<br><br>Claimants filed Chapter 7 Bankruptcy on July 17, 2008. At the time of the BK filing the loan was due for the June 1, 2008 payment. Debtors filed a motion for relief from the automatic stay on September 25, 2008, and that motion was granted. The chapter 7 trustee abandoned the property on October 22, 2008. Debtors pursued collection proceedings, as well as foreclosure. Claimants received their chapter 7 discharged from Bankruptcy on November 3, 2008.<br><br>Debtors referred the loan to foreclosure on August 12, 2009. At the time of the referral, the loan was due for May 1, 2009. On September 14, 2009, Claimants contacted Debtors for a workout package. Debtors sent out the package the next day. On September 22, 2009, Debtors received a work out package; however the Proof of Income and form 4506-T (a form for requesting transcripts of tax returns) were missing. Those missing items were received on September 28, 2009.<br><br>Debtors stopped any foreclosure sale, and placed the file on hold on October 27, 2009 due to loan modification activity and review. Claimants were approved for a three month HAMP Trial Modification on October 27, 2009 that consisted of three payments in the amount of $754.75, due on December 1, 2009; January 1, 2010 and February 1, 2010. The Claimants were informed that upon successful completion of the trial, a review would be completed to determine if a | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | permanent modification can be completed.  Claimants were advised of the trial approval via phone on October 29, 2009. Claimants were advised at that time that there was no guarantee of a permanent modification because a review would still be needed after the trial plan was approved. Debtors received the executed modification documents on November 14, 2009.<br><br>Claimants completed the trial modification in February 2010. The permanent modification review process began on February 8, 2010. On March 24, 2010, after receiving updated income information from the Claimants, the Claimants were denied a HAMP Modification, due to the Debtors not being able to forbear enough of the principal loan amount to reach the 31% payment amount. The account was denied for a traditional modification as well, as it was determined that the Claimants would not be able to afford the payments. Claimants called on March 30, 2010 and were advised of the modification denial. The Debtors also mailed a letter to Claimants informing them of the denial on March 26, 2010. Claimants advised that they had more income, and would reapply.  Debtors mailed a new workout package on March 31, 2010 for Claimants to complete; however, the Debtors' books and records do not reflect that it was returned.<br><br>On June 21, 2010, Debtors received word from a property inspector that Claimants' property was vacant. Debtors proceeded with property preservation work to secure and winterize the property, as well as make repairs. This included | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | changing the locks. On September 3, 2010, Debtors removed the hold from foreclosure and advised the attorneys to proceed because the account was not approved for a permanent modification and the Debtors had been advised that the property was vacated.  A judgment of foreclosure was entered on November 30, 2010.<br><br>On December 21, 2010, Debtors petitioned the courts to vacate the foreclosure judgment. The order vacating the Foreclosure Judgment was entered January 4, 2011. A new Affidavit was executed on December 1, 2011, and a new Judgment Order was entered January 9, 2012. The foreclosure sale was held on August 2, 2012, with a six month redemption period.   At the time of the sale, the account was owing for the July 2009 through August 2012 payments.<br><br>The Debtors have no liability related to the loan modification because the Claimants were never guaranteed a permanent modification and any payments made during the trial modification was their obligation under the terms of the loan.  Claimants are not entitled to the monies they paid for apartment rent, as they did not have to vacate the property until after the foreclosure sale, and subsequent redemption period. They moved out in June 2010, however, the foreclosure sale did not occur until August 2012. Eviction would not have begun, if necessary, until February 2013 at the earliest.  Debtors never told Claimants they needed to move out prior to the foreclosure sale. In fact, when the | |

6

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Claimants moved out of the property, the foreclosure was still on hold. | |
| 1282 | Joelle Horan<br><br>9414 NW 72nd Court Tamarac, FL 33321<br><br>$12,000.00<br><br>Residential Capital LLC GMAC Mortgage LLC | Interest Rates and Fees; Wrongful Foreclosure; Loan Modification | Homecomings Financial Network, LLC F/K/A Homecomings Financial Network, Inc. originated the loan on January 31, 2007.  Debtor GMAC Mortgage, LLC purchased the loan from Homecomings and transferred its interest to Fannie Mae.  Debtor Homecomings Financial serviced the loan from January 31, 2007 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage LLC serviced the loan until servicing transferred to GreenTree Servicing on February 1, 2013.<br><br>Claimants assert "wrongful mortgage fees" as basis for claim in box 2 of the proof of claim form. Attached to the proof of claim is a letter that asserts, "The debt owed to me at this time is still being reviewed by the governmental agency of reviewers of mortgage companies that falsely placed people into foreclosure. I was one of those people, and would like my claim included in the items they are required to pay. I was in the Home Affordable Modification program and had received a loan work out plan. Included in all of the notifications for foreclosure, GMAC stated that if you were currently in the program the notice didn't include you. GMAC decided to place my house with an attorney into foreclosure, never served me foreclosure documents, never placed notices at my property in an attempt to serve me, and I had been in constant contact with GMAC personnel at | 10-12 |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | a minimum of once every other week, if not weekly . I was never notified I was in foreclosure until I received a sell date notice.  I was forces to take a loan out to pay off the attorney and all the fees, had the association file documents against me due to the false placing of my property in foreclosure as well as the city of Tamarac, filed against me as well, as once again GMAC falsely placed my case into foreclosure.<br><br>This act cause me grave financial hardship, which I am still enduring at this time. I would like my debt, that will be approved by the national foreclosure group included in the debt that GMAC has to pay, as I find it unfair that they were able to force me to pay money that was not owed to them, but they try to not have to pay back by filing bankruptcy.<br><br>The website that was supposed to provide the forms did no such thing, and again they provided misinformation to attempt to make filing a claim that much more difficult. " It does not appear that a follow up letter was sent by the Debtors.<br><br>Debtors have no liability on Claimant's assertion of wrongfully placing loan into foreclosure because i) Claimant's loan was severely delinquent; ii) Claimant was not active in loss mitigation activity during foreclosure process and iii) all attempts to notify Claimants of foreclosure were performed properly. | |

ny-1214694

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Claimant started to become delinquent on her loan in January 2009. Servicing notes show that on January 10, 2009, Claimant stated via phone conversation, that she was jobless and would try to make payment before January 31st. Debtors sent an Options to Avoid Foreclosure letter to Claimant on February 12, 2009 and March 18, 2009. A Home Affordable Modification Program package/letter was sent to Claimant April 1, 2009.<br><br>Debtors received a workout package via fax from Claimant on April 14, 2009. The complete financials were missing. The financial statement was received on May 1, 2009. Claimant was denied for a HAMP Modification, as well as a Traditional Modification due to insufficient income. Debtors sent a denial letter to Claimants on June 12, 2009. The loan was then referred to foreclosure on June 16, 2009. At the time of the referral the loan was due for February 1, 2009.<br><br>Debtors filed the foreclosure complaint on July 1, 2009, but never served the complaint on Claimant.<br><br>Claimant called Debtors on June 29, 2009 stating that she was denied for the "Obama plan." She stated that she was working full time and receiving child support and that she could provide a letter of new pay; however, she would not be home until August. Claimants faxed another workout package on July 9, 2009; however the required additional paystub, tax return and form 4506-T were | |

9

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | missing.<br><br>At Claimant's request, Debtors provided reinstatement figures to the foreclosure attorney on July 22, 2009. Debtors had a phone conversation with Claimant on August 3, 2009. Claimant inquired about the missing documentation for loan modification review. Claimant stated that she was out of the country frequently and was not aware of upcoming sale. Foreclosure attorney received reinstatement funds in the amount of $8,550.36 from Claimant on August 3, 2009. Funds were sent to Debtors. The missing items needed for loan modification review were received from Claimant on August 4, 2009, and the review process began. Debtors received the reinstatement funds on August 7, 2009, and the loan was officially reinstated and brought current. The foreclosure attorney was advised on August 10, 2009 to close the file.<br><br>Claimant was approved for a Trial HAMP Modification on August 17, 2009. She was to make four monthly payments of $766.88 beginning on October 1, 2009. Debtors sent the Trial Modification documentation to Claimant on August 18th, but they were returned unsigned on August 31, 2009. The Claimant had crossed out amounts and terms, and wanted a new plan. Pursuant to the Debtors' business practices, because an executed modification agreement was not returned, the trial modification was denied on September 1, 2009. | |

ny-1214694

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | On October 14, 2009, Claimant contacted Debtors, as she was advised the loan was delinquent. Claimant stated she was on a trial loan modification and they have been following the terms. Debtors advised that the modification was not agreed to. Claimant advised she was interested in a modification. Due to the plan being cancelled, the review process needed to start over.  A new Trial Modification was set upon October 27, 2009. New terms show that, effective December 1, 2009 Claimant was to make four monthly payments in the amount of $658.38. New documents were sent to Claimants on November 2, 2009, and were signed and received by Debtors on November 4, 2009.<br><br>The Trial HAMP Modification was completed with the March 1, 2010 payment and the Permanent Modification was approved March 16, 2010. Terms show a new P&I payment of $325.07; New Interest Rate of 2.00%; New Term 480; Forbearance 1293.08; PITI $658.38; New Ceiling 5.00% after 5 years will increase 1.00% a year until reaching the ceiling. The Loan Modification documents were sent to Claimant on March 22, 2010 and received back executed on March 25, 2010. The loss mitigation file was closed out on April 16, 2010 after all documentation was completed and received, and the proper updates were made to the loan.   The Claimant's account remained current until servicing of the loan was transferred to Greentree.<br><br>Claimant's loan was part of the federal foreclosure review because her loan had a | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | foreclosure in process during the relevant period.  The Claimant received a $500 remediation payment as part of that review. | |
| 2449 | Jeffrey L. Collins & Laura L. Collins<br><br>2962 Jamaca Boulevard South Lake Havasu City, AZ 86406<br><br>$10,552.84<br><br>GMAC Mortgage, LLC | General No Liability | GMAC Mortgage Corporation DBA ditech.com originated the loan on December 18, 2000 and thereafter transferred its interest to Fannie Mae.  Debtor GMAC Mortgage LLC serviced the loan from December 18, 2000 until servicing transferred to GreenTree Servicing on February 1, 2013.<br><br>Claimants assert "mortgage payments were not applied to our loan" as basis for claim in box 2 of the proof of claim form and Claimants attach a monthly account statement dated May 18, 2010. Debtors mailed a letter to Claimants on June 21, 2013 requesting additional information regarding the claim; however, Debtors did not receive a response from Claimants.<br><br>Debtors have no liability to Claimants' assertion that mortgage payments were not applied to the loan because Claimants provide no specific information or proof of payments not being properly applied to the account. Debtors' servicing records show payments were applied to the account timely and appropriately. | 7-8 |
| 783 | Darryl Anderson<br><br>150 Mayland St Philadelphia, PA 19144 | General No Liability | Hart Mortgage Corp. originated the loan on June 8, 1995. Debtor GMAC Mortgage LLC serviced the loan from December 6, 1996 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimant asserts "contractor ran off with my money" as basis for claim in box 2 of | 7-8 |

ny-1214694

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | $10,000<br><br>GMAC Mortgage, LLC | | the proof of claim form and Claimant attached a handwritten statement which states "The above Harcum and Sons Harry Harcum ran off with $10,000 that was to rebuild my house from fire damage."  The Claimant alleged that the contractor took the funds on March 7, 2005.<br><br>Debtors have no liability to Claimant regarding Claimant's contractor taking his funds without fulfilling work that was to be completed on the property because Debtors remitted funds to contractor that was set to do work.  Per Claimant's request, any issues with the contractor would need to be handled by Claimant.  Furthermore, any cause of action for breach of contract is six years and the statute of limitations for fraud or conversion is three years.  See Mass. Gen. Laws ch. 260, section 2 (breach of contract) Mass. Gen. Laws ch. 260, section 2A (fraud and conversion).  As a result, the relevant statute of limitations expired before the claim was filed. | |
| 3777 | Louis Phillips<br><br>2338 Asbury Sq<br>Atlanta, GA<br>30346-2429<br><br>$20,446.20<br>GMAC Mortgage, LLC | Origination Issues | Bayrock Mortgage Corporation originated the loan on November 21, 2006. The loan was subsequently securitized.  Debtor GMAC Mortgage LLC serviced the loan from February 26, 2007 until servicing transferred to Ocwen Loan Servicing on February 16, 2013.<br><br>Claimant asserts "Interest payments made over a 5yr/60 month period.  At 8% 11/2005-11/2011" as basis for claim in box 2 of the proof of claim form. Attached to the Proof of Claim is a copy of the Chapter 13 Trustee Final Report. A letter was | 9 |

13

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | mailed to Claimant on July 22, 2013 requesting additional information and a response was received on July 29, 2013 stating "the monetary claim sought are those paid into this interest only program, over a period of 60 months which resulted in no principal reduction on the loan. This loss of money paid into GMAC/ResCap, prior to their filing Chapter 11 resulted in an additional principal balance of $42,000+ owed on the loan. While GMAC/ResCap, under Chapter 11 filing, cleared its losses, the homeowners affected by this should be compensated as well to some % of this resolution."<br><br>Debtor did not originate the loan.  This loan was a second mortgage (the first lien was originated on the same day with the same company).  The terms of the loan were an initial principal of $44,600.00, at 9.625% interest.  Payments were to be interest only for the first five years, with principal and interest payments to begin with the January 1, 2012 payment.  Thus, the amount Claimant alleges was improper is the amount that he agreed to when the mortgage was originated.  Furthermore, because the mortgage was not originated by any of the Debtors, the Debtors cannot have any liability for improper terms of the loan from the date of origination.  The Claimant has not alleged any wrongdoing by a Debtor entity.<br><br>In fact, the Debtors modified the loan on February 1, 2011, so that monthly payments would be applied to principal and interest.  Per the Modification | |

14

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Agreement, the principal balance remained the same, but the interest rate was lowered to 8.000%, and payments of principal and interest began on March 1, 2011.<br><br>Debtors modified the loan a second time on May 1, 2012.  Per the payment history, the principal balance was not increased at that time.  Per the Modification Agreement, the interest rate was lowered to 4.125%. | |
| 5649 | Dori Wojcik<br><br>20 Lake Ave Barrington, RI 02806<br><br>$18,116.00 GMAC Mortgage, LLC | Wrongful Foreclosure; Loan Modification; General Servicing Issues | GMAC Mortgage Corporation originated the loan on April 30, 2003. The loan was subsequently transferred and securitized by a non-Debtor entity.  Debtor GMAC Mortgage LLC serviced the loan from April 30, 2003 until servicing transferred to Ocwen Loan Servicing on February 16, 2013.<br><br>Claimant asserts "Mortgage/Note" as basis for claim in box 2 of the proof of claim form.  A letter attached to the Proof of Claim asserts "I hold a mortgage with GMAC Mortgage Corp. My mortgage went into foreclosure without my knowledge due to GMAC taking my payments and putting them into an account listed as other [illegible] to my payments being sent for more than the mortgage amount. After 3 months of this I received a letter stating my home was in foreclosure for non payment because GMAC never paid the mortgage for the months and instead put the funds in this other account. As soon as I was finally aware of this I called GMAC they refused to transfer the funds from the other account to pay the 3mo of payments.  The refused and claimed $4,000 was going | 8, 10-12 |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | to be paid to GMAC attorneys for foreclosure fees and legal documents. I immediately filed for loan modification and was rejected . They claim I made too much and would not factor in my indebtedness and they only calculate my earnings to qualify for Obama modification. In the meantime I was told to make all payments which I did until I was approved for a traditional modification, which only changed my mortgage by $1.06. They ruined my credit, they showed that during the time awaiting my modification approval that no payments were being made to my mortgage and I kept receiving delinquent notes that they stated to disregard that all payments were put into a modification fund and would be put on the loan when the modification was approved and all discrepancies removed from my credit. This never happened. Also the month that the modification was approved they told me to send in my regular payment and that was not going to be applied to the mortgage but to the modification admin fee which was 1556.00. This whole case should have never happened to me. I am 100 percent disabled veteran and GMAC took total advantage of me. When I was trying to everything right. This had impacted me emotionally, physically and financially. I am the sole provider of my family and I feel  GMAC damaged my credit and stole thousands from me. Because of there [sic] own mistakes on my account, I truly hope you can help. Saving a $1.06 on my mortgage 1) Cost me my credit rating 2) Caused me to fall behind on all my other bills due to paying for an attorney 3) Taken [sic] my mortgage payments and spending the funds on late fees, admin fees, and attorneys fees, administrative fees, etc.  What I lost: 3 months mortgage | |

ny-1214694

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | payments of 1556.00 each  1,500 for my own attorney whom got nowhere with GMAC;  7 months mortgage payments of 1556.00 into a modification fund account; 1556.00 for approved modification admin fee that reduced my payment by only $1.06. Estimated total $18,116.00." No follow up letter was sent by Debtors.<br><br>Claimant's assertion that some of her payments were misapplied is accurate; however, these errors were corrected and had no affect on the Claimant's delinquency and subsequent foreclosure referral. The Debtors' servicing notes show that the Claimant contacted Debtors on December 21, 2005 to advise that a mortgage payment that posted on November 9, 2005 in the amount of $1,554.14 was applied only to escrow when it should have been applied to both principal, interest, and escrow. It was reversed on December 22, 2005 and applied correctly as a regular payment.<br><br>Claimant again contacted Debtors on January 27, 2006 to alert them that the same error was made to the November 2005 payment, but that the December 2005 and January 2006 payments were correct. As a result, on February 2, 2006, Debtor reversed Claimant's January 12, 2006 payment, in the amount of $1,147.39, from escrow and applied it as a regular payment.<br><br>Debtors made another reversal of payment on October 16, 2006 in the amount of | |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | $1,354.01 because the Debtors had applied that payment as a regular payment when the Claimant wanted it to be applied to principal only. After the reversal, the Debtors applied funds as additional principal.<br><br>Claimants made a payment dispute on January 24, 2007, stating that the payments have been misapplied. Research completed on February 22, 2007 showed that Debtors made an error to the October 16th reversal. The funds should not have gone to only principal, but should have been applied as a regular payment. As a result, the payment was corrected.  After the reversal, the account was due for the February 1, 2007 payment and the  Debtors also waived a $53.83 late fee charge from January 2007.<br><br>Claimant's delinquency began in 2008. Claimant paid the February 1, 2008 payment on March 11, 2008. The payments for March, April, May and June were also 30 days late. On July 15, 2008, Debtors returned a check in the amount of $1,856.52 due to insufficient funds.  This caused the loan to be over 60 days delinquent. Claimant continued to make monthly payments, however the delinquency remained. On March 25, 2009, Claimant contacted Debtors about a letter received stating she was two months behind. Claimant acknowledged being two months late in payments, as she had been out of work since December 2007. During the call, the Debtors discussed repayment plan options with the Claimant. | |

18

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Debtors received a workout package on July 9, 2009, however there were items missing (financial statement; hardship affidavit; hardship letter and income tax return). A letter was sent to Claimant on August 14, 2009 informing her that the modification review had been closed because no complete workout package was received. Debtors continued to follow up with Claimant to try to obtain the missing information. Claimant continued to make payments but remained delinquent.<br><br>Debtors sent Claimant a Breach Letter on January 5, 2010. At the time the loan was due for the November 1, 2009. Claimant sent in another workout package on January 6, 2010 but it was again missing information. An Options to Avoid Foreclosure was sent to Claimants on January 12, 2010. Debtors also sent a 10 Day Letter to obtain additional information for the loan modification review on January 15, 2010. The loan was referred to foreclosure on February 8, 2010. At the time of the referral, the loan was due for December 1, 2009, however a check in the amount of $1,856.00 was returned to the Claimants for insufficient funds on February 9, 2010, making the account due for November 2009.<br><br>Claimant sent in another incomplete work out package on February 26, 2010. That package was missing the Hardship Affidavit; Hardship Letter and signed tax return. That information was received on March 1, 2010. Claimant was denied for a HAMP Modification because the Debt to Income ratio was 21.171%, which was | |

19

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | less than the 31% requirement, and showed that Claimant should be able to afford the monthly payments. A Traditional Modification review was pursued, and the foreclosure was postponed for 45 days for the review to be completed. A repayment plan had been set up on March 3, 2010, but was cancelled on March 9, 2010 after another check in the amount of $1,700.00 was returned for insufficient funds.<br><br>Claimant was denied the Traditional Modification on April 22, 2010. Per the Mortgage Insurance Guidelines, Claimant should have made at least six consecutive timely payments prior to the modification review.  Claimant was set up on a Repayment Plan, with the intent to have the modification re-reviewed. Claimants were to make payments in the amount of $1677.40 for the months of May through November 2010. On May 4, 2010, the Debtors told the foreclosure attorneys to close the file, because of the repayment plan.<br><br>Debtors considered the repayment plan complete, and began the review for a permanent modification. The Permanent Modification was approved on December 8, 2010. Terms of the modification effective January 1, 2011 were:<br><br>• New Fixed Interest Rate 5.125% (Old 5.75%)<br>• New Unpaid Principal $168,120.28 (Old $162,586.90)<br>• New P&I Payment Amount $1054.55 (Old $1076.70) | |

20

ny-1214694

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Claimant was to make a contribution to the plan on January 1, 2011 in the amount of $1677.44. The new payments begin on February 1, 2011. The Escrow Shortage was spread over a 60 month payment. Claimant was reported current on January 14, 2011.<br><br>At the time of the servicing transfer to Ocwen Loan Servicing on February 16, 2013 the loan was current. | |
| 1937 | Rene & Joanne Evans<br><br>10941 Wingate Rd Jacksonville, FL 32218<br><br>$147,842.00<br><br>Residential Capital, LLC | Escrow Issues; General No Liability | GMAC Mortgage Corporation originated the loan on April 25, 2005 and thereafter transferred its interest to Freddie Mac. Debtor GMAC Mortgage LLC serviced the loan from April 25, 2005 until servicing transferred to Ocwen Loan Servicing on February 16, 2013.<br><br>Claimants assert "Excessive escrow shortages and PMI Insurance for black unreasonable – no cancellation" as basis for claim in box 2 of the proof of claim form.  A letter attached to the Proof of Claim asserts "My claim is GMAC Mortgage – Residential Capital is excessive. Regarding PMI Insurance/Escrow Shortages."  Claimants allege their escrow account was not properly managed.<br><br>Debtors' books and records show that Claimants' escrow account was properly managed.  The first escrow analysis was performed on February 26, 2006.  The escrow shortage at this time was $2,532.60.  Per the escrow analysis and the | 7-8, 9-10 |

21

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | payment history, the initial escrow disclosure statement did not include an amount for hazard insurance. Lender-placed insurance was paid in the amount of $3,852.00 on September 1, 2005. A refund was received by the Debtors on October 27, 2005 in the amount of $2,711.00, leaving $1,141.00 to be paid by Claimants. Claimants' hazard insurance in the amount of $786.00 was paid by the Debtors on October 6, 2005. In addition, when the property taxes were disbursed on November 10, 2005, Borrower had made six payments and four months' taxes had been held at closing, leaving two months unpaid.<br><br>Per payment history and escrow statements, in subsequent years, the escrow shortages were due to increases in the insurance and taxes, and delinquencies in paying shortages from the prior year. Additionally, per the escrow statements, there were surpluses in the escrow in 2007 (in amount of $364.02) and 2008 (in the amount of $245.74), and Claimants received refunds in those years.<br><br>The requirements to waive PMI insurance at the times of Claimants' inquiries were:<br><br>• The ratio of the current loan balance to the property value in a current appraisal must be less than 80%<br>• Borrower must have 24 months of good payment history, defined as no payments more than 30 days delinquent in the prior 12 months and no | |

ny-1214694

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | payments more than 60 days delinquent in the prior 24 months.<br><br>At origination on April 25, 2005, the loan amount was $212,500 and the appraised value was $240,000 which is an LTV (loan-to-value) of 88.5%.  Per servicing notes, Claimants requested that the PMI be waived on March 15, 2006, and this request was denied because there had not yet been 24 months of payment history.  Claimants requested again that the PMI be waived on February 16, 2007, and paid for a Broker Price Opinion (BPO).  The BPO gave a property value of $257,600, and the principal balance at that time was $208,036.78, for a LTV of 80.8%.  Claimants were denied again for having less than 24 months of payment history.  Claimants were denied a third time on October 26, 2007 as "not eligible" for PMI waiver.  Per the payment history, the loan was more than 30 days delinquent on that date.  The servicing notes do not reflect any further requests to remove the PMI.  The payment history indicates that Claimants had not had the requisite 24 consecutive months of good payment history while the loan was being serviced by the Debtors. | |
| 5270 | William A. Corbell & Shirley A. Corbell<br><br>26060 Acero, Ste. 115 Mission Viejo, CA 92691 | Interest Rates and Fees; General No Liability | First Guaranty Financial Corporation originated the loan on July 19, 2004. The loan was subsequently transferred and securitized.  Debtor GMAC Mortgage LLC serviced the loan from December 15, 2004 until servicing transferred to Ocwen Loan Servicing on February 16, 2013.<br><br>Claimants assert " overpayment on mortgage due to wrongfully frozen interest | 7-8, 11-12 |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | $14,104.79<br><br>GMAC Mortgage, LLC | | rate" as basis for claim in box 2 of the proof of claim form.  A letter attached to the Proof of Claim asserts "Spreadsheet demonstrating Amount of overpayment of mortgage due to GMAC Mortgage, LLC's wrongful freeze of Borrowers/Creditors' interest rate."<br><br>Debtors have no liability against Claimants' assertion of improper rate freeze, as the decision was made by the Investor of the loan, not a Debtor.<br><br>Per the Claimants' note, the interest rate at origination was 6.125%. The note states that the interest rate may change on August 1, 2009, and may change every six months thereafter. The interest change was based on the LIBOR (London Interbank Offered Rate). The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs. This is called the Current Index. The new interest rate will be calculated by adding 3.875% to the Current Index.<br><br>In December of 2008, the Investor, IMPAC Funding, completed a Blanket Modification Campaign. Those loans that met certain criteria set by IMPAC Funding would receive a rate freeze. Debtors sent a letter to Claimants on December 12, 2008, that they were approved for a rate freeze. Effective December 1, 2008, the interest rate would remain at 6.125% for a period of five years. At the time of the Blanket Modification Campaign, the interest rate would | |

ny-1214694

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | have been 7.85%.<br><br>On March 3, 2009, Claimants contacted Debtors via telephone with regards to a payment change letter that was received. Advised that they had received a rate freeze letter, and that the payment should not go up. Debtors explained that the payment change letter was sent for informational purposes. Claimants also inquired about refinancing at that time and the Debtors provided them with the phone number of the department that handles refinancing.<br><br>Claimants contacted Debtors again on December 29, 2009 to inquire why their loan interest rate has not reset.  Debtors explained about the Blanket Modification and rate freeze letter. Claimants asked for the loan terms to go back to what they were at origination, as well as a copy of the letter. Debtors sent a copy of letter, but also advised the Claimants that it may not be possible to change the terms of the loan back. Claimants did not contact Debtors again until October of 2011, when a Qualified Written Request was received. Debtors responded to that request on November 4, 2011. Debtors again explained the rate freeze by the Investor, and that the Claimants were made aware of it, as well as refinance options when the market turned. | |
| 4725 | Virginia Bragg and Gregory Bragg v Decision One | General No Liability | Loan was originated by Decision One Mortgage Company, LLC on November 4, 2004.  Debtor Residential Funding Company purchased the loan from Decision One and transferred its interest when the loan was securitized on or about | 7-8 |

25

ny-1214694

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | Mortgage Company LLC GMAC Mortgage LLC The WV Mortgage Store Corp et al<br><br>1031 Quarrier St Ste 200 Charleston, WV 25301<br><br>$105,000.00<br><br>GMAC Mortgage, LLC | | February 1, 2005 where US Bank, NA was appointed as trustee.  Homecomings Financial serviced the loan from February 11, 2005 until servicing transferred to GMAC Mortgage on or about July 1, 2009.  GMAC Mortgage serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimants attaches to their proof of claim litigation against GMAC Mortgage, and non-Debtors Decision One Mortgage, WV Mortgage Store Corp, Greta Anne and Frank Dearing and US Bank filed in the circuit court of Kanawha County, West Virginia, Case No.  11-C-2104 on November 28, 2011.  The allegations in the complaint primarily relate to the origination of the loan.  The causes of action are for: unconscionable inducement (against broker, lender and holder), breach of fiduciary duty (against broker), and for illegal fees (against Debtor as servicer).  The litigation (and POC) also includes a Stipulation, signed by Claimants and filed on the same date, stating that Claimants damages, and all other relief being sought, does not exceed $75,000 and if awarded Claimants would not take in excess of $75,000.  Debtor sent a request for additional information on June 21, 2013, but no response was received.<br><br>In the litigation, Debtor filed a Notice of Bankruptcy on May 17, 2012 that stayed the claims against GMAC Mortgage.  On June 7, 2012, Claimants filed a Motion to Amend Complaint to drop Debtor from the case and assert the servicing claims against US Bank as trustee of the loan.   On August 9, 2012, US Bank filed a motion for partial stay of the litigation based on the automatic stay of servicing | |

26

ny-1214694

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | claims originally pled against Debtor.    On November 28, 2012, the court entered an Order granting the motion for staying claims against US Bank related to monetary relief under the servicing cause of action.<br><br>The claim for illegal fees states that the servicer "in the course of attempting to collect on alleged claims from the Plaintiffs, routinely assessed illegal charges that are not authorized by agreement or law, in violation of WV Code 46A-2-127(g) and 128(c)."  And that Debtors "threatened to add fees and charges, in violation of WV Code 46A-2-127(g) and 124(f)."  These chapters deal with collection of attorneys fees and charges on the consumer's account by fraud, deceptive or misleading representations, or unfair or unconscionable means.  Debtors are unable to determine what alleged violations are the basis of Claimants' allegations.  However, Debtors reviewed its books and records and did not find any instance where attorneys fees were charged to the Claimants or where Debtor attempted to collect attorneys fees from the Claimants. | |
| 2111 | Renee Caciopoli vs. GMAC Mortgage LLC<br><br>Law Offices of Lawrence S. Dressler 516 Ellsworth Ave. New Haven, CT 06511 | Duplicate/Redun dant | Claim No. 2111 is identical to surviving Claim No. 2107, except that Claim No. 2111 is filed by in the name of the Claimant and Claim No. 2107 is filed in the name of her attorney, Dressler Law Offices. | 15 |

27

ny-1214694

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | $60,000 General Unsecured<br><br>GMAC Mortgage, LLC | | | |

ny-1214694