**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | NOT FOR PUBLICATION |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Case No. 12-12020 (MG) |
| Debtors. | Chapter 11 |
| | (Jointly Administered) |

**MEMORANDUM OPINION AND ORDER SUSTAINING THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM NO. 6270 FILED BY THOMAS G. COOPER AND CATHERINE D. COOPER**

*A P P E A R A N C E S:*

MORRISON & FOERSTER LLP
*Attorneys for the ResCap Borrower Claims Trust*
250 West 55th Street
New York, New York 10019
By:   Jordan A. Wishnew, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Thomas G. Cooper and Catherine D. Cooper (the "Coopers") filed Claim Number 6270 (the "Claim") against Debtor Residential Capital, LLC ("ResCap"), asserting a secured claim of $50,000. The Claim was later reclassified as a general unsecured claim against Debtor GMAC Mortgage, LLC ("GMACM") pursuant to the Court's *Order Granting Debtors' Thirty-Sixth Omnibus Objection to Claims (Misclassified and Wrong Debtor Borrower Claims)* (the "Thirty-Sixth Omnibus Order," ECF Doc. # 5895). The ResCap Borrower Claims Trust (the "Trust") objects to the Claim, arguing that the Claim fails to state a basis for liability against the Debtors and should be disallowed and expunged.

The Trust adequately shifted the burden by rebutting the prima facie validity of the Claim and the Coopers have failed to meet their burden to establish the viability of their claim. Therefore, the Objection is **SUSTAINED** and the Claim is **DISALLOWED** and **EXPUNGED**.

# I. BACKGROUND

Pending before the Court is the *ResCap Borrower Claims Trust's Ninetieth Omnibus Objection to Claims ((I) No Liability Borrower Claims, (II) Reduce and Allow Borrower Claim, and (III) Allowed in Full Borrower Claim)* (the "Objection," ECF Doc. # 9296),[1] solely with respect to the Claim. The Trust seeks to disallow and expunge the Claim on the ground that it does not state a basis for liability against the Debtors. The Coopers filed an opposition to the Objection (the "Opposition," ECF Doc. # 9379)[2] The Trust filed a reply in support of the Objection (the "Reply," ECF Doc. # 9396).[3]

On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The General Bar Date to file proofs of claim was originally set as November 9, 2012, and was extended to November 16, 2012 at 5:00 p.m. (Prevailing Eastern Time) (ECF Doc. # 2093). The Claim was timely filed on November 9, 2012.

## A. Coopers' Loan History

GMACM originated a home equity line of credit to the Coopers in August 2003 (the "HELOC") secured by a mortgage (the "Mortgage") on 175 South Street, Concord, New Hampshire 03301, which was recorded in September 2003. (Reply ¶ 18.) GMACM serviced the HELOC from September 2003 until servicing was transferred to Ocwen in February 2013. (*Id.* ¶ 19.)

---

[1] The Objection is supported by the declarations of Sara Lathrop (the "Lathrop Declaration," *id.* Ex. 2) and Norman S. Rosenbaum (the "Rosenbaum Declaration," *id.* Ex. 3).

[2] The Objection classifies Claim Number 6270 (the "Claim") filed by the Coopers as a No Liability Claim. (*See* Obj. Ex. 1-A at 1–5.)

[3] The Reply is supported by the supplemental declaration of Sara Lathrop (the "Supplemental Lathrop Declaration," Reply Ex. 1).

2

In May 2005, the Coopers made a $45,508.82 payment to GMACM on the HELOC, reducing the principal balance of the HELOC to zero. (*Id.* ¶ 20.)[4] The Trust maintains that there is nothing in the Debtors' books and records to indicate that this payment was accompanied by a letter from the Coopers closing the account. (*Id.*)

In September 2005, the Coopers spoke with GMACM by phone and indicated that they intended to draw funds soon. (*Id.* ¶ 21.) The Trust maintains that during this conversation, the Coopers did not state that the HELOC should have been closed. (*Id.*) The Coopers subsequently withdrew $10,000 from the HELOC in October 2005, and thereafter made monthly payments on the account. (*Id.* ¶ 21; "Servicing Notes," Reply Ex. L at 3–4.) The Coopers withdrew additional amounts on the HELOC in March 2006 ($10,000), November 2006 ($1,000), January 2007 ($5,000), August 2007 ($6,000), November 2007 ($9,000), December 2007 ($6,000), and February 2008 ($2,500). (*Id.* ¶ 23; Servicing Notes at 3–4.) The Coopers do not dispute that they drew funds from the HELOC after they allege they closed the account in May 2005. (Opp'n ¶ 7 (conceding that the Coopers drew funds from the HELOC "over 6 months after the original note was extinguished on May 27, 2005.").)

As of February 2008, the unpaid principal balance on the HELOC was $49,049.55 and the Coopers made monthly payments on this amount until servicing of the HELOC was transferred to Ocwen. (Reply ¶ 24.) In October 2012, the Coopers requested a full account history. According to the Debtors' records, this was the first time the Coopers had made such a request. (*Id.* ¶ 25.) In October 2012, GMACM mailed the Coopers copies of the following documents: payment history, HELOC, Mortgage, Coopers' loan application, and HUD-I. (*Id.*)

---

[4]  There is a discrepancy between the two dates that the parties provide for the alleged closing of the HELOC. The Trust contends that the Debtors received the Coopers' payment May 27, 2005, reducing the principal balance to zero; the Coopers contend they made this payment and closed the account on May 19, 2005. (*Compare* Reply ¶ 20 *with* Opp'n ¶ 4.) This discrepancy is of no moment because the Coopers' potential claims arising from the alleged failure to close the account are time-barred under either date, as described later.

### B. The Claim

On or around November 9, 2012, the Coopers filed the Claim, asserting a secured claim of $50,000 against ResCap. (Reply ¶ 17.) The Claim was reclassified as a general unsecured claim against GMACM pursuant to the Thirty-Sixth Omnibus Order. (*Id.*)

### C. The Objection

The Trust seeks to disallow the Claim in its entirety. (Obj. Ex. 1-A.) The Trust argues that the Debtors have no liability for the Debtors' alleged failure to close the HELOC. (*Id.*) The Debtors' records show that the Debtors applied $45,508.82 to loan on May 27, 2005, bringing the principal balance down to $0.00. However, there is no record of the Debtors receiving a letter from the Coopers requesting the HELOC be closed, and as a result, the line remained open. (*Id.*)

The Debtors also contend that their records show that the Coopers spoke to the Debtors via phone on September 13, 2005, at which time the Debtors advised the Coopers that there was no amount due on the account and the total advance amount was able to be used on the HELOC. (*Id.*) The Trust contends that during this call, the Coopers stated their intention to draw funds soon and did not dispute that the home equity line should remain open. (*Id.*) Additionally, the Debtors note that the Coopers continued to advance funds from the line of credit. (*Id.*)

### D. The Opposition

The Coopers argue that "on not less than 12 separate occasions" during 2012, they attempted by telephone, writing and email to obtain from "GMAC" an accounting of all transactions and all paperwork pertaining to their line of credit. (*Id.* ¶ 2.) They contend that they have only been provided with five pages of an original note dated June 21, 2003, which was "apparently only signed by us." (*Id.*) The only other information they have been provided is a computer generated printout showing payment and balance activity on their account from

4

October 2009 through September 2012. (*Id.*) The Coopers contend that they have yet to receive a detailed account of all charges assessed to them, including the interest rate and related assessments from August 2003 to the present. (*Id.* ¶ 3.)

The Coopers state that at the May 19, 2005 closing which took place in Concord, New Hampshire at the Bank of New Hampshire, they signed a document specifically closing the "GMAC" account and requesting "GMAC" to execute and record a mortgage discharge for the June 21, 2003 note. (*Id.* ¶ 4.) The Coopers maintain that this documentation closing the account was included in a letter from the Bank of New Hampshire dated May 19, 2005 along with a check payable to "GMAC" of $45,508.82. (*Id.*) The Coopers note that "GMAC" never recorded the discharge of mortgage. (*Id.*)

The Coopers contend that over the past three years, they have provided proof to the Debtors and the claims agent. (*Id.* ¶ 6.) The Coopers maintain that they provided the Debtors with the correspondence from the Bank of New Hampshire to "GMAC" and contains the signatures of the Coopers, was accompanied by a check of $45,508.82 (payment in full for the account), and contained the following language "Please accept the signatures below as the borrower's authorizations to close and terminate their rights to any future transactions on this account. Please take steps to payoff and close out this line/loan, and to discharge your mortgage (if applicable)." (*Id.*)

The Coopers maintain that they have been unable to refinance their home mortgage to take advantage of low interest rates because the "GMAC" mortgage continues to encumber their property. (*Id.* ¶ 7.) Additionally, the Coopers assert that they have been unable to move forward with other related financial plans because "GMAC" failed to provide them with the requested information and provide them with the accounting as to what the Coopers owe. (*Id.*)

5

The Coopers argue that there is no promissory note regarding the funds advanced by "GMAC" over six months after the original note was extinguished on May 27, 2005. (*Id.*) The Coopers maintain that their claim is for the entire amount of the undischarged encumbrance along with financial losses suffered as a result of being required to pay interest on their underlying home mortgage (5.25%) instead of the lower interest rates they could have obtained. (*Id.*)

### E. The Reply

The Trust maintains that the Debtors have no record of receiving the letter attached to the Opposition. (Reply ¶ 31.) The Trust contends that even if the Debtors received such letters, any claim the Coopers had for breach of contract for failing to close the HELOC is waived and barred by the statute of limitations. (*Id.*)

The Trust argues that the statute of limitations for breach of contract in New Hampshire is three years. (*Id.* ¶ 32.) Since the Coopers allegedly attempted to close the HELOC in May 2005, any cause of action arising from GMACM's failure to close the HELOC would have expired in May 2008. (*Id.*)

Furthermore, the Trust contends, that the Coopers made multiple draws on the HELOC after they allegedly attempted to have it closed and such multiple draws amount to a waiver of any breach of contract cause of action that may be asserted. (*Id.* ¶ 33.) The Coopers waived their right to enforce the alleged termination of the HELOC when they continued to draw on the HELOC and make payments on the amount owing. (*Id.*) Additionally, they never objected to the HELOC remaining open. (*Id.*) As such, their behavior demonstrates that they abandoned their right to protest that the HELOC was not closed in May 2005. (*Id.*)

Additionally, the Trust notes that the Coopers allege that in 2012 they requested a history of the activity and did not receive an appropriate response. (*Id.* ¶ 34.) The Trust argues that the

Coopers do not allege how they were damaged by this alleged failure or why the documents provided were insufficient.

## II. DISCUSSION

### A. Legal Standard

Correctly filed proofs of claim "constitute[] prima facie evidence of the validity [and amount] of the claim. To overcome this prima facie evidence, the objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000) (internal citations omitted). By producing "evidence equal in force to the prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Tr. (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted). If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim." 4 COLLIER ON BANKRUPTCY ¶ 502.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

Federal pleading standards apply when assessing the validity of a proof of claim. *See, e.g.*, *In re Residential Capital, LLC*, 518 B.R. 720, 731 (Bankr. S.D.N.Y. 2014); *In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party

7

has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure." (citations omitted)). Accordingly, a claimant must allege "enough facts to state a claim for relief that is *plausible* on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (emphasis in original) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal citation and quotation marks omitted). Plausibility "is not akin to a probability requirement," but rather requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal citation and quotation marks omitted). The court must accept all factual allegations as true, discounting legal conclusions clothed in factual garb. *See, e.g.*, *id.* at 677–78; *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true" (citing *Iqbal*, 556 U.S. at 678)). The court must then determine if these well-pleaded factual allegations state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). A claim that pleads only facts that are "merely consistent with a defendant's liability" does not meet the plausibility requirement. *Id.* at 678 (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.*

8

(internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "The pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

### B.    The Statute of Limitations and Waiver Bar the Claim

The statute of limitations for breach of contract in New Hampshire is three years. *See* N.H. REV. STAT ANN. § 508:4 (West 2016). The Coopers allege that GMACM failed to close the HELOC after the Coopers paid the balance on the HELOC and mailed a letter requesting that the account should be closed in May 2005. (Opp'n ¶ 4.) This potential failure of GMACM to close the HELOC, if true, would possibly amount to a breach of the note. However, such a breach of contract claim would be time-barred, as the statute of limitations for breach of contract in New Hampshire is three years. *See* N.H. REV. STAT ANN. § 508:4 (West 2016). The Coopers did not file their proof of claim until November 2012, while the statute of limitations would have passed by May 2008.

Further, as the Debtors' records show and as the Coopers concede, the Coopers made multiple draws on the HELOC after they claim to have attempted to close the account. The Coopers' conduct—continuing to draw on the HELOC after they claim they closed it—amounts to an implied waiver of any breach of contract claim that the Coopers may bring. *See Forbes Farm P'Ship v. Farm Family Mut. Ins. Co.*, 769 A.2d 366, 370 (N.H. 2001) ("To establish waiver, the plaintiff must show explicit language indicating the defendant's intent to forego a known right, or conduct from which it may be inferred that the defendant abandoned this right."); *Renovest v. Hodges Dev. Corp.*, 600 A.2d 448, 453 (N.H. 1991) (concluding that waiver may be express or implied). Here, the Coopers' conduct making multiple loan draws and

9

making payments on their loan balance shows that they waived any claim they may have had based on the alleged failure to close the HELOC account in 2005.

### III. CONCLUSION

For the above reasons, the Objection is **SUSTAINED** and the Claim is **DISALLOWED** and **EXPUNGED**.

**IT IS SO ORDERED.**

Dated:   March 2, 2016
         New York, New York

*Martin Glenn*
MARTIN GLENN
United States Bankruptcy Judge