**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re:                                                      :
                                                            :
                                                            :
      RESIDENTIAL CAPITAL, LLC, *et. al.*    :    Chapter 11
                                                            :    Case No. 12-12020 (MG)
                                                            :
                                Debtors,        :
------------------------------------------------------------x
                                                            :
THE RESCAP BORROWER CLAIMS,                                 :
    TRUST,                                                :
                                                            :
                                Objector,       :
                                                            :
        - against -                                       :
                                                            :
KENNETH DLIN,                                               :    PRETRIAL ORDER
                                                            :    (PROPOSED)
                                                            :
                                Claimant.       :
                                                            :
------------------------------------------------------------x

       The Trust and Claimant having conferred, and having conferred with the Court pursuant to Fed. R. Civ. P. 16, the following statements, directions and agreements are adopted as the Pretrial Order herein.

I.    NATURE OF THE CASE

       Kenneth Dlin ("Claimant") obtained a loan from Greenpoint Mortgage Funding, Inc. ("Greenpoint") pursuant to the terms of a note dated February 20, 2004 (the "Note"). The Note was secured by a deed of trust (the "Deed of Trust" and, together with the Note, the "Mortgage Loan") on property located at 3431 Welch Ave., Kitteredge, CO 80547 (the "Property"). Debtor GMAC Mortgage, LLC ("GMACM") serviced the Mortgage Loan from the July 1, 2004 until servicing was transferred to Ocwen Loan Servicing LLC ("Ocwen") on February 16, 2013.

       In 2008, the Claimant spoke to several representatives of GMACM via telephone. During these phone calls, the Claimant informed the representatives that he would like to be considered for a loan modification. The representatives of GMACM informed the Claimant that he could not be considered for a loan modification because his loan was not in default. The Claimant asserts that these statements were deceptive. Claimant then failed to make the payments due on December 1, 2008, January 1, 2009, and February 1, 2009.

1

The Claimant was approved for a loan modification on February 27, 2009, which the Claimant executed on March 20, 2009. The Claimant asserts that the terms of the loan modification were improper because his monthly mortgage obligation under the loan modification increased.

The Claimant made the mortgage payments on the Mortgage Loan from May 2009 through September 2009 but failed to make any further payments. In November 2009, GMACM was contacted by the Claimant's real estate agent, Norma Loyd ("Ms. Loyd") and advised GMACM that the Claimant was interested in a short sale and would be pursuing this option. Ms. Loyd presented GMACM with offers to purchase the property on February 8, 2010, April 5, 2010, and May 25, 2010; however, none of these offers could be approved because the offering prices were too low to be accepted by the investor. During this period, GMACM was also moving forward with foreclosure proceedings against the Property that were initiated on January 13, 2010.

On June 13, 2010, Ms. Loyd presented GMACM with an offer to purchase the Property for $525,000, a sufficient price under the investor's guidelines. The investor also required the approval of the holder of the second lien on the Property, Bank of America. No approval from Bank of America was ever received, and as a result, the foreclosure sale was completed on July 28, 2010.

The Claimant asserts GMACM wrongfully foreclosed on the Property, and that as a result he was damaged.

II.  BASIS FOR JURISDICTION, WHETHER THE CASE IS CORE OR NON-CORE, AND WHETHER THE BANKRUPTCY JUDGE MAY ENTER FINAL ORDERS OR JUDGMENT

This Court has core jurisdiction to hear and decide this matter under 28 U.S.C. sections 1334(a), 1334(b), 157(a), 157(b)(1), 157(b)(2)(B), 157(c)(2) (if needed), by consent of the parties and the Amended Standing Order of Reference in Case No. 12 MISC 00032 (filed February 1, 2012, Dkt. No. 1). This is a core matter with respect to which the bankruptcy court may enter final orders.

III.  STIPULATED FACTS

*Loan Origination and Ownership*

1. On February 20, 2004, Greenpoint provided the Claimant with the Mortgage Loan in the amount of $633,000.00, plus interest.

2. The Mortgage Loan is evidenced by a Note to Greenpoint executed by the Kenneth Dlin on February 20, 2004.

3. The Mortgage Loan was an interest-only loan from April 1, 2004 through April 1, 2009.

4. The Mortgage Loan is secured by a deed of trust on 3431 Welch Ave., Kittredge, CO 80457.

5. On or about April 1, 2004, the Mortgage Loan was transferred to HSBC Bank U.S.A. as Trustee.

*Servicing, Loss Mitigation Attempts, and Foreclosure*

6. GMACM serviced the Mortgage Loan from July 1, 2004 until servicing was transferred to Ocwen Loan Servicing on February 16, 2013.

7. As of November 19, 2008, the Claimant was current on payments on the Mortgage Loan.

8. In 2008, the Claimant spoke with a representative of GMACM via phone.

9. During that call, the Claimant spoke with a representative of GMACM and was told to call back the next month if he was still having trouble making payments.

10. Later, the Claimant spoke to a second associate of GMACM via phone.

11. During this call, GMACM's associate explained to the Claimant that since the account was current, Dlin can call back next month when the loan is due for a payment as there are no options since no payment is due.

12. Also during this call, the Claimant stated that he would like a repayment arrangement, and was advised by GMACM's associate that no payment arrangement could be offered at that time.

13. Later, the Claimant spoke to a third representative of GMACM via the phone.

14. During this call, the Claimant was advised by the GMACM associate that there will be no payment options available until next month.

15. The Claimant did not make the monthly mortgage payment due on December 1, 2008.

16. Subsequently, the Claimant spoke to a representative of GMACM.

17. During this call, the Claimant was informed by GMACM's to call the Hope for Homeowners program and gave him the phone number.

18. The Claimant did not make the monthly payment due for January 1, 2009.

3

ny-1222822

19. On January 30, 2009, the Claimant spoke with a representative of GMACM via phone, at which time the Claimant requested a loan modification and the representative took the Claimant's financial information.

20. On January 30, 2009, GMACM referred the Claimant's account for a loan modification review.

21. On or around February 4, 2009, the Claimant's account was denied for a loan modification due to insufficient income.

22. On February 17, 2009, the Claimant spoke with a representative of GMACM via phone.

23. During the phone conversation on February 17, 2009, the Claimant informed a representative of GMACM that the financial information he had previously provided was incorrect. The Claimant then provided updated financial information to the GMACM representative.

24. With the updated information received on February 17, 2009, GMACM again referred the Claimant's account for a loan modification review.

25. On or around February 27, 2009, GMACM approved the Claimant's account for a loan modification. The Claimant received notice of approval around that same time.

26. The Loan Modification, dated March 20, 2009, capitalized $13,324.29 in past due interest to the principal balance, reduced the interest rate to 3.2% and brought the account current for the past due payments of December 2008 through April 2009. The Loan Modification also included a payment contribution of $3,483.46 due on March 15, 2009 and a monthly principal and interest payment of $3,138.56.

27. Prior to the modification, the Claimant's monthly payment, which was interest only, was $2,834.51.

28. At the time the Loan Modification was provided, there was no modification option that would have provided for a lower monthly payment, as there were no modification options that permitted interest-only payments.

29. On or around March 9, 2009, the Claimant spoke with a representative of GMACM via phone.

30. During the phone conversation on March 9, 2009, the Claimant questioned why the proposed monthly payment increased, and the representative explained the terms of the modification and that there was no modification option available that would lower the monthly payment.

ny-1222822

31. On or around March 19, 2009, the Claimant spoke with a representative of GMACM.

32. During the phone conversation on March 19, 2009, the Claimant was informed by a representative of GMACM that in order to bring the loan current he could either accept the proposed terms of the Loan Modification or pay the delinquent balance on the loan.

33. On or around March 20, 2009, the Claimant provided the executed documents for the Loan Modification to GMACM.

34. On or around March 27, 2009, the Claimant provided the first payment due under the Loan Modification.

35. Prior to providing the executed Loan Modification documents and first payment due under the Loan Modification, the Claimant was not told by GMACM or a representative of GMACM that a loan modification would reduce his monthly payment.

36. The Claimant was aware at the time he executed the Loan Modification that, under the original terms of the Mortgage Loan, his monthly payment would increase on April 1, 2009 as a result of his interest-only payment changing to a principal and interest payment.

37. Had the Claimant not entered into the loan modification or failed to make any monthly payments, his monthly payment beginning in April 2009 would have been $3,296.73, as a result of the interest-only option under the Mortgage Loan expiring.

38. The Claimant made timely monthly payments on the Mortgage Loan consistent with the terms of the loan modification from May 2009 through September 2009.

39. After the September 2009 payment, the Claimant did not make any further payments on the Mortgage Loan.

40. On or around November 2009, the Claimant hired a real estate agent, Norma Loyd ("Ms. Loyd") to conduct a short sale of the Property.

41. On November 16, 2009, GMACM was contacted by Ms. Loyd, who advised GMACM that the Claimant was interested in a short sale.

42. On November 17, 2009, GMACM began the short sale process by ordering an internal broker price option ("BPO") on the Property.

43. On November 19, 2009, GMACM received the results of the BPO, which valued the Property at $580,000.00.

5

44. On or around December 2, 2009, the Claimant received a letter from GMACM informing him that he was in default.

45. On January 6, 2010, GMACM referred the Claimant's account to foreclosure as it was owing for the October 1, 2009 payment.

46. It was not GMACM's practice to place a foreclosure on hold during a short sale review.

47. On January 13, 2010, GMACM commenced a foreclosure action against the Property by filing a Notice of Election and Demand for Sale with the Jefferson County Public Trustee.

48. On January 29, 2010, a representative of GMACM spoke to Ms. Loyd via phone about the sale of the Property.

49. On or around February 8, 2010, GMACM received a short sale offer for $400,000.00.

50. The offer on February 8, 2010 would have provided the investor with net proceeds of $331,441.70.

51. The February 8, 2010 offer was not approved because the investor required short sale offers to net at least 85% of the market value of the Property, as determined by the BPO.

52. The Claimant was informed by his real estate agent that the offer made on the Property on or around February 8, 2010 for $400,000 would not be approved by the investor of the Mortgage Loan.

53. On March 26, 2010, GMACM received the results of a new BPO conducted on the Property, which valued it at $500,000.00.

54. Also on March 26, 2010, GMACM filed a Verified Motion for Order Authorizing Sale in the District Court of Jefferson County.

55. On April 5, 2010, GMACM received a short sale offer of $450,000.00.

56. The offer on April 5, 2010 would have provided the investor with net proceeds of $380,632.44.

57. The April 5, 2010 offer was not approved because the investor required short sale offers to net at least 85% of the market value of the Property, as determined by the BPO.

58. The Claimant was informed by his real estate agent that the offer made on the Property on or around April 5, 2010 for $450,000 would not be approved by the investor of the Mortgage Loan.

6

ny-1222822

59. On May 25, 2010, GMACM received another offer in the amount of $450,000.

60. The offer on May 25, 2010 would have provided the investor with net proceeds of $376,473.24.

61. The May 25, 2010 offer was not approved because the investor required short sale offers to net at least 85% of the market value of the Property, as determined by the BPO.

62. The Claimant was informed by his real estate agent that the offer made on the Property on or around May 25, 2010 for $450,000 would not be approved by the investor of the Mortgage Loan.

63. Also on May 27, 2010, a hearing was held in the District Court. At the hearing, the District Court granted an Order Authorizing Sale, finding that GMACM was the holder of the Note and the Deed of Trust and that the Claimant was in default of his obligations thereunder.

64. On May 27, 2010, the foreclosure sale of the Property was postponed to June 16, 2010.

65. On June 13, 2010, Ms. Loyd presented GMACM with an offer of $525,000.

66. On or around June 14, 2010, the foreclosure sale of the Property was postponed until July 14, 2010.

67. On June 24, 2010, GMACM submitted the offer received on June 13, 2010 for investor approval.

68. On or around July 6, 2010, the foreclosure sale of the Property was postponed to July 28, 2010.

69. On July 7, 2010, GMACM emailed Ms. Loyd to ask if Bank of America, the holder of the second lien on the property, had approved the short sale, and advised that the investor would not consider the offer unless the Second Lien Holder approved.

70. GMACM sent another email to Ms. Loyd on July 9, 2010 again asking if Bank of America had approved the short sale, and advised her that the foreclosure sale was scheduled for July 28, 2010.

71. On July 20, 2010, GMACM again contacted Ms. Loyd through email and advised her that the investor of the Mortgage Loan would not postpone the sale without getting approval from the second lien holder, Bank of America.

72. On July 27, 2010, GMACM received an email from Ms. Loyd informing it that she was still waiting for authorization from the Second Lien Holder. In the email, Ms. Loyd acknowledged that the foreclosure sale was set for the next day.

7

73. On July 28, 2010, a foreclosure sale of the Property was conducted because approval was not received from Bank of America to go forward with the foreclosure sale.

74. GMACM successfully bid on the Property at the foreclosure sale, with a bid of $477,000.00.

75. The Claimant was aware prior to the foreclosure sale on July 28, 2010 that a short sale would not be approved unless GMACM received approval from the holder of the second lien on the Property.

76. As the applicant for the short sale, it was the Claimant's responsibility to obtain approval from the second lienholder.

77. At the time of the foreclosure sale on July 28, 2010, the Claimant did not provide anything to GMACM indicating that the sale was approved by the holder of the second lien on the Property.

78. At the time of the foreclosure sale, the Mortgage Loan was owing for the October 1, 2009 through July 2010 payments.

79. An eviction action was never completed against the Claimant.

80. The Claimant currently resides in the Property.

## IV. PARTIES' CONTENTIONS

The pleadings are deemed amended to embrace the following, and only the following, contentions of the parties:

### A. Claimant's Contentions

In addition to the allegation made in Claimant's pleadings in this Court:

1. On February 20, 2004, Greenpoint purchased the original loan from Country Wide and provided the Claimant with the Mortgage Loan in the amount of $633,000.00, plus interest.

2. On or about August 19, 2008, the Claimant spoke with a representative of GMACM via phone.

3. During the initial call on or about August 19, 2008, the Claimant spoke with a representative of GMACM and stated that he was having difficulties paying his mortgage payments and would like to get a loan modification and was told to call back the next month if he was still having trouble making payments.

4. On or about September 19, 2008, the Claimant spoke to a second associate of GMACM via phone.

5. During the second call on or about September 19, 2008, GMACM's associate explained to the Claimant that since the account was current, Dlin can call back next month when the loan is due for a payment as there are no options since no payment is due.

6. During the second call on or about September 19, 2008, the Claimant stated that he would like a repayment arrangement, and was advised by GMACM's associate that no payment arrangement could be offered at that time.

7. On or about October 19, 2009, the Claimant spoke to a third representative of GMACM via the phone.

8. During the third call on or about October 19, 2009, the Claimant was advised by the GMACM associate that there will be no payment options available and that he should call back next month.

9. At this point, the Claimant explained his frustration to the third representative of GMACM that he would like a loan modification and was told to call back on the two previous occasions.

10. The representative of GMACM then told Mr. Dlin that since the loan was not in default they could not even discuss a loan modification. The representative said that if Mr. Dlin were in default they could then begin discussion options and advised Mr. Dlin to call back the next month.

11. Mr. Dlin followed the advice of the 3rd representative and stopped paying his mortgage loan payment due the month of November 1, 2008.

12. On or about November 19, 2008, the Claimant spoke with a fourth representative of GMACM.

13. During the fourth phone call on or about November 19, 2008, the Claimant requested a loan modification from the representative of GMACM and was told that Mr. Dlin was in default and that he should hang in there and call back the following month.

14. The Claimant did not make the monthly mortgage payment due on December 1, 2008.

15. On or about December 19, 2008, the Claimant spoke to a fifth representative of GMACM.

16. During the fifth call on or about December 19, 2008, the Claimant again requested a loan modification and again was told by the representative of GMACM to call back the following month. The Claimant was informed by the GMACM representative to call the Hope for Homeowners program and gave him the phone number.

9

ny-1222822

17. The Claimant did not make the monthly payment due on January 1, 2009.

18. On or about January 30, 2009, the Claimant spoke with a sixth representative of GMACM.

19. During the phone call on or about January 30, 2009, the Claimant requested a loan modification.

20. The February 8, 2010 offer was not approved because the investor required short sale offers to net at least 85% of the market value of the Property, as determined by the BPO. The Claimant had no knowledge of this fact as she was not informed of this by a representative of GMACM.

21. On February 23, 2010, the representative of GMACM did not speak with Ms. Loyd via telephone and inform her that the investor did not approve the short sale because the investor required the offer to net at least 85% of the fair market value. The GMACM representative advised her that the investor would not accept such an offer because it was too low but would not say what amount of an offer would be accepted.

22. On March 26, 2010, GMACM received the results of a new BPO conducted on the Property, which valued it at $500,000.00. The Claimant was not made aware of this.

23. The April 5, 2010 offer was not approved because the investor required short sale offers to net at least 85% of the market value of the Property, as determined by the BPO although this fact was not shared with the Claimant or Ms. Loyd.

24. The May 25, 2010 offer was not approved because the investor required short sale offers to net at least 85% of the market value of the Property, as determined by the BPO and again this fact was not shared with the Claimant and his real estate agent.

25. Frustrated that none of the offers were being accepted by the GMACM representative, Ms. Loyd made several attempts to contact the GMACM representative in an effort to discover why the offers were not being accepted.

26. On or about May 27, 2010, Ms. Loyd was able to speak with the GMACM representative Mark Booth, and asked why the offers were not being accepted. She was told that their investor would not accept an offer less than $505,000.00

27. Claimant avers that the GMAC Representatives stated more to him than is reported in this pretrial order and reserves the right to testify to their conversations during trial.

28. Claimant argues that GMAC knew of a short sale offer that was pending and failed to ascertain the intentions of the second lien holder causing the Claimant an injury that would lead to a judgment against the Claimant.

ny-1222822

**B.     Trust's Contentions**

*Loan Origination and Ownership*

1. On February 20, 2004, Greenpoint provided the Claimant with the Mortgage Loan in the amount of $633,000.00, plus interest.

*Servicing, Loss Mitigation Attempts, and Foreclosure*

2. On November 19, 2008, the Claimant spoke with a representative of GMACM via phone.

3. During the initial call on November 19, 2008, the Claimant spoke with a representative of GMACM and was told to call back the next month if he was still having trouble making payments.

4. On November 19, 2008, the Claimant spoke to a second associate of GMACM via phone.

5. During the second call on November 19, 2008, GMACM's associate explained to the Claimant that since the account was current, Dlin can call back next month when the loan is due for a payment as there are no options since no payment is due.

6. During the second call on November 19, 2008, the Claimant stated that he would like a repayment arrangement, and was advised by GMACM's associate that no payment arrangement could be offered at that time.

7. On November 19, 2008, the Claimant spoke to a third representative of GMACM via the phone.

8. During the third call on November 19, 2008, the Claimant was advised by the GMACM associate that there will be no payment options available until next month.

9. On November 19, 2008, the Claimant spoke with a fourth representative of GMACM via phone and stated he would like a loan modification.

10. During the fourth call on November 19, 2008, the Claimant was advised by a representative of GMACM that a loan modification is a default option and the account is currently not in default and thus a modification is not available.

11. On November 19, 2008, the Claimant spoke with a fifth representative of GMACM via phone.

12. During the fifth call on November 19, 2008, GMACM's representative advised Dlin that his account is current and that he should call back once the account is due as there were no payment options available at that time.

13. On November 19, 2008, the Claimant spoke with a sixth representative of GMACM via phone.

14. During the sixth phone call on November 19, 2008, GMACM's associate advised the Claimant that a loan modification option is not available until the account is due for two months or more, and that if GMACM referred his account for loan modification review, it would be denied because the account was current.

15. On November 19, 2008, the Claimant spoke to a seventh representative of GMACM via phone.

16. During the seventh phone call on November 19, 2008, GMACM's representative advised Mr. Dlin that his account is current and that there is nothing to offer him at that time.

17. On December 5, 2008, the Claimant spoke to a representative of GMACM via phone.

18. During the phone call on December 5, 2008, the Claimant was advised by GMACM's associate that his account was current and that he could call back when his account was thirty days or more late.

19. During the phone call on December 5, 2008, the Claimant was informed by GMACM's representative that if the Claimant was late with a monthly payment, he would be charged a late fee and his credit could be affected.

20. During the phone call on December 5, 2008, the Claimant was informed by GMACM's to call the Hope for Homeowners program and gave him the phone number.

21. On or around January 6, 2009, the Claimant spoke with a representative of GMACM via phone.

22. During the phone call on January 6, 2009, the Claimant was advised by the representative of GMACM that a loan modification was not available at that time but that new modification options may be available in February of 2009.

23. The February 8, 2010 offer was not approved because the investor required short sale offers to net at least 85% of the market value of the Property, as determined by the BPO.

24. On February 23, 2010, a representative of GMACM spoke with Ms. Loyd via telephone and informed her that the investor did not approve the short sale because the investor required the offer to net at least 85% of the fair market value. The GMACM representative advised her that the investor would not accept such an offer because it required offers to net at least 85% of the market value of the property.

25. On March 26, 2010, GMACM received the results of a new BPO conducted on the Property, which valued it at $500,000.00.

26. The April 5, 2010 offer was not approved because the investor required short sale offers to net at least 85% of the market value of the Property, as determined by the BPO.

27. The May 25, 2010 offer was not approved because the investor required short sale offers to net at least 85% of the market value of the Property, as determined by the BPO.

28. The Claimant resides in the Property.

V. ISSUES TO BE TRIED

1. Whether a representative of GMACM knowingly made any misrepresentations to the Claimant regarding the requirements to be considered for a loan modification.

2. Whether a representative of GMACM knowingly made any misrepresentations to the Claimant regarding the terms of any loan modification he was approved for.

3. Whether GMACM improperly did not accept offers on the Property that were not approved by the second lien holder, Bank of America.

4. The extent of actual damages, if any, proximately caused to the Claimant by GMACM's alleged wrongful foreclosure of the Property in July 2010 under the theories of breach of contract, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, deceptive trade practices, negligence, interference with contract, negligent infliction of emotional distress, wrongful foreclosure, and fraud.

VI. CLAIMANT'S EXHIBITS

1. All documentation disclosed on the discovery and supplied by GMAC to us.

VII. TRUST'S EXHIBITS

1. Note, dated February 20, 2004

2. Deed of Trust, dated February 20, 3004

3. Loan History (i.e., Servicing Notes) for the Mortgage Loan account from July 9, 2004 to February 11, 2013

4. Adjustable Rate Loan Modification Agreement, dated March 20, 2009

5. Broker Priced Opinion, Dated November 19, 2009

      6.     Breach Letter, dated December 2, 2009

      7.     Notice of Election and Demand for Sale by Public Trustee, dated January 13, 2010

      8.     Short Sale Package, dated February 3, 2010

      9.     Short Sale Package, dated April 2, 2010

      10.    Order Authorizing Sale, dated April 15, 2010

      11.    HUD-1 Settlement Statement, dated May 25, 2010

      12.    Email from Norma Loyd, dated June 13, 2010

      13.    Email from Norma Loyd, dated July 27, 2010

      14.    Amortization Chart from myamortizationchart.com

      15.    The Claimant's Responses to the Trust's Requests for Admission, dated February 16, 2016

      16.    The Claimant's Responses to the Trust's Interrogatories, dated February 16, 2016

      17.    Amortization Schedule

      18.    Letter from GMACM, dated September 3, 2010

      19.    Email from Laura Jeffrey, dated July 7, 2010

No exhibit not listed by Claimant or the Trust may be used at trial except (a) for cross-examination purposes , (b) for rebuttal, or (c) if good cause for its exclusion from the pretrial order is shown.

VIII.    STIPULATIONS AND OBJECTIONS WITH RESPECT TO EXHIBITS

    **A.**    **The Parties stipulate to the authenticity of the following Exhibits**

      1.     Note, dated February 20, 2004

      2.     Deed of Trust, dated February 20, 3004

      3.     Loan History (i.e., Servicing Notes) for the Mortgage Loan account from July 9, 2004 to February 11, 2013

      4.     Adjustable Rate Loan Modification Agreement, dated March 20, 2009

      5.     Broker Priced Option, Dated November 19, 2009

    6.    Breach Letter, dated December 2, 2009

    7.    Notice of Election and Demand for Sale by Public Trustee, dated January 13, 2010

    8.    Short Sale Package, dated February 3, 2010

    9.    Short Sale Package, dated April 2, 2010

    10.    Order Authorizing Sale, dated April 15, 2010

    11.    HUD-1 Settlement Statement, dated May 25, 2010

    12.    Email from Norma Loyd, dated June 13, 2010

    13.    Email from Norma Loyd, dated July 27, 2010

    14.    Amortization Chart from myamortizationchart.com

    15.    The Claimant's Responses to the Trust's Requests for Admission, dated February 16, 2016

    16.    The Claimant's Responses to the Trust's Interrogatories, dated February 16, 2016

    17.    Letter from GMACM, dated September 3, 2010

    18.    Email from Laura Jeffrey, dated July 7, 2010

**B.    Claimant's Objections**

    1.    [RESERVED]

**C.    Trust's Objections**

    1.    The Trust objects to "All documentation disclosed on the discovery and supplied by GMAC to us" because it is not sufficiently specific regarding which of the numerous documents produced the Claimant wishes to introduce.

## IX.    CLAIMANT'S WITNESS LIST

    1.    Kenneth Dlin

    2.    Norma Loyd

    3.    Mark Booth

    4.    Jenny Kachnic

X.  TRUST'S WITNESS LIST

    1.  Sara Lathrop

The witness listed may be called at trial. No witness not identified herein shall be permitted to testify on either party's case in chief absent good cause shown. Each party shall list the witnesses it intends to call on its case in chief and, if a witness's testimony will be offered by deposition, shall designate by page and line numbers the portions of the deposition transcript it intends to offer. Each party shall set forth any objections it has to deposition testimony designated by the other and the basis therefor.

XI.  RELIEF SOUGHT

**Relief Sought By Claimant**

Claimant is seeking damages for the wrongful termination and foreclosure. He is asking for the following damages:

    A. The total damages being sought is $345,432.00 for the second mortgage that was adjudicated and granted a judgment against Mr. Dlin the Claimant.

    B. Damages for the lost equity in the property valued at $43,000.00.

    C. A total of damages valued at $388,432.00.

    D. Mr. Dlin the claimant also asks the court to award his attorney fees paid of $31,250.00.

**Relief Sought by Trust**

    The Trust is seeking to have the Claimant's Proof of Claim disallowed and expunged

XII.  DEADLINES AND HEARING DATE

The Trust proposes the following pretrial deadlines, contested by the Claimant:

- Written direct testimony for each witness that the parties intend to call at trial shall be exchanged **not later than April 26, 2016**. Two courtesy copies of each witness's written direct testimony shall be provided to chambers concurrently with the parties' exchange. Neither party shall be permitted to call any witness to testify at trial (except rebuttal witnesses, if any) unless such witness's direct testimony has been provided to the opposing party by April 26, 2016.

- Pretrial memoranda of law, which shall include a statement of the elements of each claim or defense involving such party, together with a summary of the facts relied upon to establish each element, and addressing any evidentiary issues anticipated to arise during evidentiary hearing on this matter (the "Trial"), shall be filed **not later than April 26, 2016**.

16

ny-1222822

The parties jointly propose the following pretrial deadlines:

- The parties shall participate in a telephonic pretrial conference at **10:00 a.m. prevailing Eastern Time on March 10, 2016**.

- **Not later than 5:00 p.m. prevailing Eastern Time on May 3, 2016**, each party shall provide to the Court with (but not file) two copies of (i) the respective party's final witness and exhibit lists and (ii) pre-marked exhibits (Claimant to identify their exhibits with numbers, e.g., 1, 2, 3, etc.; the Trust to identify its exhibits with letters, e.g., A, B, C, etc.), assembled sequentially in notebooks and tabbed, or, if too voluminous, with each exhibit placed in a separate manila folder with number or letter visible on the lip, and the folder placed in a suitable container or box for ready reference. Each exhibit list shall include a description of each exhibit. One copy of the witness and exhibit lists and one set of exhibits should be provided to opposing counsel. No witnesses or exhibits that are not listed in the witness and exhibit lists may be used at the Trial.

The Trial shall take place on **May 11, 2016 at 9:00 a.m. prevailing Eastern Time**.

XIII.    EVIDENTIARY HEARING PROCEDURES

    A.    **Use of Exhibits During Trial**

Counsel is responsible for marking his or her own exhibits. Counsel must identify for the Court and opposing counsel, and give a copy to the witness, each exhibit before using it at the Trial. All exhibits that will be shown to a witness should, if possible, be placed before the witness at the start of counsel's witness examination. Questions and arguments should be delivered from the lectern, but counsel may approach the witness without asking leave whenever it is necessary. And, if counsel is standing near the witness for the purpose of pointing something out on an exhibit, opposing counsel may also be present to observe first-hand what is being pointed out.

    B.    **"Timed" Trial**

The Trial will be a "timed trial," with a maximum of 6-trial hours during the course of 1 day. Each side will be allocated a maximum of 3-trial hours to use for opening statement, all direct, cross-examination and redirect witness examinations, and summation. Counsel is responsible for having her or his witnesses present and ready to testify without any delays or gaps in testimony.

    C.    **Status Report**

**Not later than 5:00 p.m. prevailing Eastern Time on May 3, 2016**, counsel shall submit a written status report to the Court, identifying any issues that must be resolved before the Trial starts, and also whether counsel believe the case may be resolved by settlement before the Trial begins.

17

| | |
|---|---|
| Dated: March 2, 2016 | /s/   Jordan A. Wishnew<br>Norman S. Rosenbaum<br>Jordan A. Wishnew<br>Jessica Arett<br>MORRISON & FOERSTER LLP<br>250 West 55th Street<br>New York, New York 10019<br>Telephone: (212) 468-8000<br>Facsimile: (212) 468-7900<br><br>*Counsel for the ResCap Borrower Claims Trust* |
| Dated: March 2, 2016 | /s/   Brian H. Wilson<br>Brian H. Wilson<br>Wilson Law Office P.C.<br>43 Bulldogger Ct.<br>Bailey, CO 80421<br><br>*Counsel for Kenneth Dlin* |

**IT IS SO ORDERED:**

---

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**