# EXHIBIT  A



**SERVICELINK**
A BLACK KNIGHT COMPANY

Reference ID: 0000848549

Title No: 150298425

## SEARCH NO. FARS-1027271

## MORTGAGE FORECLOSURE CERTIFICATE

### Certifies:

That a search has been made against the premises described in Schedule "A" to the date hereof, and title to said premises is vested of record in

### John H. Wishman Jr  and Mary Frances Wishman

-------------------------------------------------------------------------------------

**Warranty** Deed dated **April 18, 2015**
given by
**Dominick L. Farbo**
to
**John H. Wishman Jr. and Mary Frances Wishman**
recorded in the **Erie**  County Clerk's Office on **April 25, 1998**
in Book **10870** of Deeds at page **2457.**

This certificate includes schedules as follows:
Schedule A:       Description of Certified Premises
Schedule B:       Mortgages and Assignments of Record
Schedule C:       Necessary Parties
Schedule D:       Bankruptcy Search
Schedule E:       Exceptions, Objections and Other Information
Schedule F:       Tax Search

Certified as of **November 13, 2015 at 7:59 am.**

## SEARCH NO.  1027271

6425 Engle Drive , Hamburg, NY  (Town  of Hamburg ) Erie  County
**TAX ACCT. NO.  195.03-2-5**



**SERVICELINK**

Reference ID: **000848549**                                   Title No: 150298425

**SEARCH NO. FARS-1027271**

**Schedule A- Description of the Premises**

ALL THAT TRACT OR PARCEL OF LAND, situate in the Town of Hamburg,
County of Erie and State of New York, being part of Lot No. 18, Township 9,
Range 8 of the Holland Land Company's Survey and further distinguished as
Subdivision Lot No. 3 as shown on a map filed in the Erie County Clerk's Office
under Cover No. 1761.

6425 Engle Drive , Hamburg, NY  (Town  of Hamburg ) Erie  County
**TAX ACCT. NO.  195.03-2-5**



SERVICELINK

Reference ID:  **000848549**                                    Title No: 150298425

**SEARCH NO. FARS-**1027271

### Schedule B-  Mortgages and Assignments of Record

**Mortgages to be Foreclosed:**

A.          Mortgage made by
            **John H. Wishman Jr. and Mary Frances Wishman**  to
            **Wells Fargo Home Mortgage, Inc**  for
            **$222,400.00** and interest, dated
            **June 25, 2003** and recorded on
            **July 1, 2003** in
            Book **13085** of Mortgages, at page **3219.**

------------------------------------------------------------------------------------------

**Prior Mortgages:**

            NONE

------------------------------------------------------------------------------------------

**Subordinate Mortgages:**

B.          Mortgage made by
            **John H. Wishman Jr. and Mary Frances Wishman**  to
            **Mortgage Electroinc Registrtion Systems, Inc., as nominee for**
            **GMAC Mortgage Corporation DBA ditech.com** for
            **$137,700.00** and interest, dated
            **April 29, 2006** recorded on
            **June 1, 2006** in
            Book **13293** of Mortgages, at page **2014.**

------------------------------------------------------------------------------------------



# SERVICELINK

Reference ID: **0000848549**                    Title No: 150298425

### SEARCH NO. FARS-1027271

## Schedule C- Necessary/ Permissible Parties

This certification is made on the assumption that all parties are to be personally served in the proposed action. If any of the persons hereinafter name be dead, their legal representatives and successors in interest should be made parties defendant after search has been amended. If investigation by applicant discloses that there are other persons having an interest in the property whose rights are subordinate to the mortgage to be foreclosed, such persons should also be made parties defendant after search has been amended. If any leases, mortgages or other liens recorded prior to the period covered by this search, but which, by reason of subordinate clauses contained therein or otherwise, are in fact subordinate to the lien of the mortgages or other liens should also be made parties defendant after search has been amended.

If the United States of America, State of New York, or City of New York or any of its agencies, are made parties, the complaint must set forth the reason therefore in detail. (See R.P.A.P.L. Sec. 202 and 202A and 28 U.S.C.A. 2410.)

The addresses of parties herein given, were obtained from the record and are not represented to be the present addresses of the parties.

Consideration should be given to the desirability of naming as defendants the obligor named in the bond or in any extension, assumption or guaranty agreement.

The company should be requested to continue searches to the date of filing the lis pendens.

| Necessary/ Permissible Parties | Interest in Premises |
|---|---|
| **John H. Wishman Jr**<br>6425 Engle Drive<br>Hamburg, NY | Record Owner and mortgagor |
| **Mary Frances Wishman**<br>6425 Engle Drive<br>Hamburg, NY | Record Owner and mortgagor |
| **Mortgage Electronic Registration Systems, Inc., as nominee for GMAC Mortgage Corporation DBA ditech.com**<br>P.O. Box 2026<br>Flint, MI | Subordinate Mortgagee |
| **Lyon Financial Services, Inc., d/b/a US Bancorp Manifest Funding Services**<br>1310 Madrid Street<br>Marshal, Minnesota<br>(See Exception Number 4 on Schedule E Hereto) | Judgment Creditor (2) |
| **Garret Komarisky**<br>125 North St. Apt. 4<br>Auburn, NY | Judgment Creditor |



SERVICELINK

Reference ID: **0000848549**                    Title No: 150298425

### SEARCH NO. FARS-1027271

**CACH, LLC**                                    Judgment Creditor
4340 S. Monaco 2nd Fl.
Denver, CO

**Capital One Bank (USA), N.A.**                 Judgment Creditor
1680 Capital One Dr.
McClean, VA

**Capital One Bank (USA), N.A.**                 Judgment Creditor
15000 Capital One Dr.
Richmond, VA

**Lisa Hageman**                                 Judgment Creditor
336 Bellevue Ave.
Depew, NY

**First Niagara Bank, N.A.**                     Judgment Creditor (2)
726 Exchange Street Suite 900
Buffalo, NY

**Financial Pacific Leasings LLC as Assignee of  Judgment Creditor
Five Point Capital**
3455-344th Way Suite 300
Auburn, Washington

**John and Mary Doe**                            Said names being fictitious, it being the intention
                                                 of Plaintiff to designate any and all occupants,
                                                 tenants, persons or corporations, if any, having or
                                                 claiming an interest in or lien upon the premises,
                                                 being foreclosed herein.



**SERVICELINK**

Reference ID:  **0000848549**                                    Title No: 150298425

### SEARCH NO. FARS-1027271

### Schedule D- Bankruptcy Search

A Corporation duly incorporated under the Laws of the State of New York, for a valuable consideration to it paid, does hereby certify, that upon examination of the INDEXES TO BANKRUPTCY PROCEEDINGS and to ORDERS APPOINTING RECEIVERS in the Office of the Clerk of the United States District Court for the Western  District of New York against the following names, for the respective periods of time as listed below, and for six months prior and subsequent to each such period, and finds nothing except as set out herein,

| NAME | FROM | TO |
|------|------|-----|
| **John Wishman** | **April 18, 2015** | **November 13, 2015** |

**Except Case No. 1-03-12027-CLB; Case No. 1-98-01211-MJK**

| | | |
|------|------|-----|
| **Mary Frances Wishman** | **April 18, 2015** | **November 13, 2015** |

## SERVICELINK

Reference ID: **0000848549**                                    Title No: 150298425

### SEARCH NO. FARS-1027271

### Schedule E- Exceptions, Objections and Other Information

If title is to be made through a Referee in Foreclosure, the Referee is treated the same as any would be Transferor under the Capital Gains Law. Depending upon the ultimate purchase price, Either a Referee's Affidavit (TP 584) or Albany approval (TP 585 or TP 582) will be required to record the Referee's Deed.

1. FOR INFORMATION ONLY:  Attorneys Fees permitted pursuant to paragraph 22 of Mortgage.

2. FOR INFORMATION ONLY:  Demand Letter required as condition precedent to acceleration pursuant to Paragraph 22 of Mortgage.

3. No surrogate records found versus John H. Wishman Jr. and Mary Frances Wishman.

4. Order to Vacate Default Judgment recorded February 19, 2013 in Book 282 at page 5084 vacates and sets aside a judgment upon certain terms and conditions set forth therein. See copy attached.

5. Lis Pendens dated July 15, 2011 and filed July 18, 2011 and Lis Pendens dated November 3, 2015 re-filed November 13, 2015 under Index No. 2011603629 entitled Wells Fargo Bank, N.A. successor by merger to Wells Fargo Home Mortgage, Inc vs. John H. Wishman et al. gives notice of commencement of an action to foreclose the mortgage recorded in Book 13085 at Page 3219. Civil action file shows filing of summons and complaint, affidavits of service, order of reference and judgment of foreclosure and sale.

6. Questions regarding this report should be directed to **DefaultTitleQuestions@svclnk.com**



# SERVICELINK

Reference ID: **0000848549**                    Title No: 150298425

## SEARCH NO. FARS-1027271

### Schedule F- Tax Search

## TAX ACCT. NO. 195.03-2-5

| County | Town | Name of Street | Acres | School Dist. |
|--------|------|----------------|-------|--------------|
| **Erie** | **Hamburg** | **6425 Engle Drive** | **120 x 336** | **Hamburg** |

ASSESSED TO: John H. Wishman Jr. and Mary Frances Wishman

The unpaid taxes, water rates, assessments and other matters relating to taxes which are property filed and indexed liens at the date of this search are set forth below. This search does not insure against such items which may not have become a lien upon the date of this search. Recent payments of any open liens may not be reflected on public records.

| DESCRIPTION OF TAX | AMOUNT | REMARKS |
|--------------------|--------|---------|
| 2015 Town/County Tax | $3,994.94 | Paid 1/28/15 |
| 2015/2016 School Tax | $4,992.51 | Paid 10/7/15 |
| Water Charges      Account No. 06233992-4     Next billing 1/3/16     (716) 849-8444 ECWA | $145.13 | Owing to 12/31/15 |

Sewer Charges are included in the Town/County Taxes.

**LAND ASSESSMENT: $11,600**

**TOTAL ASSESSMENT: $148,600**

**PROPERTY CLASS CODE: 210**

**SERVICELINK shall bear no liability for erroneous or inaccurate tax information provided by the Department of Finance or a third party.**

**See Schedule E for a record of Tax Liens sold to Third Parties, if any**

Payee:

Town of Hamburg, Receiver of Taxes 6100 South Park Avenue Hamburg, NY 14075

Erie County Water Authority 350 Ellicott Square Bldg. Buffalo, NY 14202

Erie County Tax Dept. 95 Franklin Street Room 100 Buffalo, NY 14202

THIS IS NOT
A BILL



Erie County Clerk's Office
County Clerk's Recording Page

Control #   199404251254

Index   DEED LIBER

Book  10870      Page  2457

No. Pages  0003

Return To:

Instrument  DEED
Date :   4/25/1994
Time :   3:46:32

BOX 143

FARBO
DOMINICK          L

## MORTGAGE TAX

Serial #

| | | |
|---|---|---|
| City/Town | $ | .00 |
| S.M.A. | $ | .00 |
| Trans. Auth. | $ | .00 |
| Total | $ | .00 |

| | | |
|---|---|---|
| COUNTY | $ | 25.00 |
| STATE | $ | 25.00 |
| COE | $ | 5.00 |
| TRANSFER | $ | 612.00 |
| | $ | .00 |
| NFTA TT | $ | 765.00 |
| | $ | .00 |
| | $ | .00 |
| | $ | .00 |

Total:            $      1,432.00

STATE OF NEW YORK
Erie County Clerk's Office

## TRANSFER TAX

WARNING - THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 316-A(5) OF
THE REAL PROPERTY LAW OF THE STATE OF NEW YORK
DO NOT DETACH

Transfer Tax $    1,377.00

Amount    $      153,000.00

Transfer Tax # TT1993020136

DAVID J SWARTS
County Clerk



D10870Z457

Warranty Deed with Lien Covenant
Laws of 1917, Chap. 681, Laws of 1954

THIS INDENTURE, made the 18 day of April, 1994

BETWEEN        Dominick L. Farbo
               6425 Engel Drive
               Hamburg, New York 14075

                                        Grantor(s), and

               John H. Wishman Jr. and Mary Frances Wishman
               4835 Webster Road
               Fredonia, New York 14063

                                        Grantee(s),

WITNESSETH, that the said Grantor(s), in consideration of One and More
Dollars ($1.00 and more) lawful money of the United States, paid by the Grantee(s)
does hereby grant and release unto the Grantee(s), their heirs and assigns forever.

ALL THAT TRACT OR PARCEL OF LAND, situate in the Town of Hamburg,
County of Erie and State of New York, being part of Lot. No. 18, Township 9,
Range 8 of the Holland Land Company's Survey and further distinguished as
Subdivision Lot No. 3 as shown on a map filed in the Erie County Clerk's Office
under Cover No. 1761.

Box 143

HMB-153.00C
DTB

TOGETHER with the appurtenances and all the estate and rights of the Grantor(s) in and to the said premises.

TO HAVE AND TO HOLD, the above granted premises unto the said Grantee(s).

AND the said Grantor(s) does covenant with said Grantee(s) as follows:

FIRST. - That the Grantee(s) shall quietly enjoy the said premises.

SECOND. - That the Grantor(s) will forever WARRANT the title to said premises.

THIRD. - Subject to the trust fund provisions of section thirteen of the lien law.

IN WITNESS WHEREOF, the said Grantor(s) has hereunto set his hand and seal the day and year first above written.

_____
Dominick L. Farbo

_____

_____

STATE OF NEW YORK, COUNTY OF Erie) ss:

On this 18 day of April, 1994, before me, the subscriber(s), personally appeared Dominick L. Farbo to me personally known and known to me to be the same person described in and who executed the within instrument, and he acknowledged to me that he executed the same.

_____
Notary Public



ERIE COUNTY CLERKS OFFICE
County Clerk's Recording Page

Return To:

    WELLS FARGO HOME MORTGAGE INC
    1 HUNTINGTON QUAD
    STE 1 SO 4
    MELVILLE NY  11747

Index   MORTGAGE LIBER

Book   13085   Page   3219

No. Pages   0019

Instrument   MTG 1-2 BANK

Date :     7/01/2003

Time :    11:27:47

Control #    200307010589

WISHMAN
JOHN                   H JR
WISHMAN
MARY                   FRANCIS
WELLS FARGO HOME MORTGAGE INC

SER #            MT CU    018335

Employee ID    DMZ

### MORTGAGE TAX

| | | | | | | |
|---|---|---|---|---|---|---|
| COUNTY | $ | 62.00 | MTG AMOUNT | $ | 222,400.00 |
| COE STATE | $ | 4.75 | | | |
| BASIC | $ | 1,112.00 | Basic | $ | 1,112.00 |
| ADD'L | $ | 531.00 | | | |
| NFTA MT | $ | 556.00 | Additional | $ | 531.00 |
| COE COUNTY | $ | 1.00 | | | |
| COE ST GEN | $ | 14.25 | Special Addl | $ | 556.00 |
| | $ | .00 | | | |
| | $ | .00 | Total | $ | 2,199.00 |

Total:     $     2,281.00

STATE OF NEW YORK
ERIE COUNTY CLERKS OFFICE

WARNING - THIS SHEET CONSTITUTES THE CLERK'S
ENDORSEMENT, REQUIRED BY SECTIONS 319&316-a
(5) OF THE REAL PROPERTY LAW OF THE STATE OF
NEW YORK. DO NOT DETACH. THIS IS NOT A BILL.

    DAVID J SWARTS
    COUNTY CLERK



M130853219

Return To:
Wells Fargo Home Mortgage, Inc.
1 HUNTINGTON QUAD STE. 1 SO. 4
MELVILLE, NY 11747
631-843-9000

Prepared By:
JOAN CARIELLO
1 HUNTINGTON QUAD STE. 1 SQ. 4
MELVILLE, NY 11747
631 843-9000

———————————————[Space Above This Line For Recording Data]———————————————

Loan Id:

WFHM Loan #:

# MORTGAGE

## WORDS USED OFTEN IN THIS DOCUMENT

**(A) "Security Instrument."** This document, which is dated    June 25th, 2003
together with all Riders to this document, will be called the "Security Instrument."
**(B) "Borrower."**   JOHN H. WISHMAN JR. and MARY FRANCES WISHMAN

whose address is  6425 ENGEL DRIVE, HAMBURG, NY 14075

sometimes will be called "Borrower" and sometimes simply "I" or "me."
**(C) "Lender."**    WELLS FARGO HOME MORTGAGE, INC.

will be called "Lender." Lender is a corporation or association which exists under the laws of
"The State of California"            . Lender's address is 405 SW FIFTH STREET
, DES MOINES, IA  55309

**NEW YORK** - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**          Form 3033 1/01

VMP-6(NY) (0005) 04

Page 1 of 17          Initials

VMP MORTGAGE FORMS - (800)521-7

(D) "Note." The note signed by Borrower and dated      June 25th, 2003                , will be called the "Note." The Note shows that I owe Lender Two Hundred Twenty Two Thousand Four Hundred and no/100

Dollars (U.S. $   222,400.00            ) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by      July 1st, 2033

(E) "Property." The property that is described below in the section titled "Description of the Property." will be called the "Property."

(F) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(H) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

[ ] Adjustable Rate Rider    [ ] Condominium Rider              [ ] Second Home Rider
[ ] Balloon Rider            [ ] Planned Unit Development Rider  [ ] 1-4 Family Rider
[ ] VA Rider                 [ ] Biweekly Payment Rider         [ ] Other(s) [specify]

(I) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(J) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(K) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(M) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(N) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(P) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

VMP-6(NY) (0005) 04                    Page 2 of 17                 Initials:                    Form 3033 1/01

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

**DESCRIPTION OF THE PROPERTY**

I give Lender rights in the Property described in (A) through (G) below:

(A) The Property which is located at

6425 ENGEL DRIVE                        [Street]

HAMBURG              [City, Town or Village] , New York  14075          [Zip Code].

This Property is in                  ERIE                        County. It has the following legal
description:

SEE ATTACHED SCHEDULE 'A'


Item #: .


(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

-6(NY) (0005).04                     Page 3 of 17              Initials:              Form 3033 1/01

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:

1. **Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. **Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

VMP®-6(NY) (0005) 04                    Page 4 of 17                    Form 3033 1/01

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

### 3. Monthly Payments For Taxes And Insurance.

#### (a) Borrower's Obligations.

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien:"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Escrow Funds.**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments and Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security

-6(NY) (0005) 04                          Page 6 of 17                          Form 3033 1/01

Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given. Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration: (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument: or (c)

Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a) Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

**(b) Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or Security Instrument. False, misleading, or inaccurate statements about information important to Lender did not provide Lender with such information), Lender will treat my actions as a default under this would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance

coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11.  **Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in

value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

12. **Continuation of Borrower's Obligations And of Lender's Rights.**

(a) **Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) **Lender's Rights.**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

13. **Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations. If** more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to

delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

-6(NY) (0005) 04                    Page 12 of 17        Initials                    Form 3033 1/01

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time

period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to

the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment In Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. **Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. **Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. **Borrower's Statement Regarding the Property [check box as applicable].**

[x] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

VMP -6(NY) (0005) 04                    Page 15 of 17                    Form 3033 1/01

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          JOHN H. WISHMAN JR.              -Borrower

_____          _____ (Seal)
                                          MARY FRANCES WISHMAN             -Borrower

_____ (Seal)   _____ (Seal)
                       -Borrower                                          -Borrower

_____ (Seal)   _____ (Seal)
                       -Borrower                                          -Borrower

_____ (Seal)   _____ (Seal)
                       -Borrower                                          -Borrower

VMP-6(NY) (0005).04              Page 16 of 17              Form 3033 1/01

**STATE OF NEW YORK,**                    ERIE                    County ss:

On the    25th    day of    June 2003                    before me, the undersigned, a notary public in and for said state, personally appeared JOHN H. WISHMAN JR. and MARY FRANCES WISHMAN

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

Tax Map Information:

PETER P. VASILION
Notary Public, State of New York
Qualified in Erie County
My Commission Expires 2-23-2005

$SBL\#$    195.03-2-5

VMP-6(NY) (0005).04                    Page 17 of 17                    Form 3033 1/01

Title No.: 905-E-213137

## SCHEDULE A

ALL THAT TRACT OR PARCEL OF LAND, situate in the Town of Hamburg, County of Erie and State of New York, being part of Lot No. 18, Township 9, Range 8 of the Holland Land Company's Survey and further distinguished as Subdivision Lot No. 3 as shown on a map filed in the Erie County Clerk's Office under Cover No. 1761.

COVER SHEET REV 02-14-06



## ERIE COUNTY CLERKS OFFICE

**County Clerk's Recording Page**

Book: **13293**    Page: **2014**

### Return To:

US RECORDINGS INC
3925 COUNTRY DRIVE
SUITE 201
ST PAUL MN 55117

Page Count: **8**

Doc Type: **MTG 1-2 BANK**

Rec Date: **06/01/2006**

Rec Time: **10:48:50 AM**

Control #: **2006121000**

User ID: **mari**

Party 1:

**WISHMAN JOHN H JR**

Trans Num: **160092**

DEED SEQ:

MTG SEQ: **MTCX2006006962**

UCC:

Party 2:

**GMAC MORTGAGE CORPORATION DBA**

SCAR:

INDEX:

| Recording Fees: | | Consideration Amount: | $137,700.00 |
|---|---|---|---|
| RECORDING | $41.00 | BASIC | $688.50 |
| COE COUNTY | 1.00 | SONYMA | $0.00 |
| BASIC | $688.50 | ADDL | $319.25 |
| SONYMA | $0.00 | NFTA MT | $344.25 |
| ADDL | $319.25 | TRANSFER | $0.00 |
| NFTA MT | $344.25 | NFTA TT | $0.00 |
| COE STATE GENERAL | $14.25 | | |
| COE STATE RM | $4.75 | | |

| | Total: | $1,413.00 |
|---|---|---|

**STATE OF NEW YORK**
**ERIE COUNTY CLERK'S OFFICE**

**WARNING - THIS SHEET CONSTITUTES THE CLERK'S**
**ENDORSEMENT, REQUIRED BY SECTIONS 319&316-a**
**(5) OF THE REAL PROPERTY LAW OF THE STATE OF**
**NEW YORK. DO NOT DETACH. THIS IS NOT A BILL.**

**David J. Swarts**
**County Clerk**

Book13293/Page2014

Recording Requested by &
When Recording Return To:
US Recordings, Inc.
2925 Country Drive Ste 201
St. Paul, MN 55117

The premises are improved or are to be improved by a one or two family residence or
dwelling only.

## MORTGAGE

MIN

**WORDS USED OFTEN IN THIS DOCUMENT**

(A) "Mortgage." This document, which is dated 04/29/2006 , will be called the "Mortgage."
(B) "Borrower." John H. Wishman, Jr. and Mary Frances Wishman

whose address is 6425 Engel Dr, Hamburg, NY  14075
will sometimes be called the "Borrower" and sometimes simply "I."
(C) "Lender." GMAC Mortgage Corporation DBA ditech.com

will be called the "Lender." Lender is a corporation or association which was formed and which exists under the laws of
Commonwealth of Pennsylvania                                                                    Lender's address is
3200 Park Center Dr. Suite 150, Costa Mesa, CA  92626

(D) "Note." The junior lien note signed by Borrower and dated 04/29/2006 , and extensions
and renewals of that note, will be called the "Note." The Note shows that I owe Lender U.S. $137,700.00
plus interest, which I have promised to pay in full by June 1, 2031
(E) "Property." The property that is described below in the section titled "Description of the Property" will be called the
"Property."
(F) "MERS." The Mortgage Electronic Registration System, Inc. will be called "MERS." MERS is a separate corporation
that is acting solely as nominee for Lender [as defined in (C) above] and Lender's successors and assigns. MERS is
organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI
48501-2026, tel. (888) 679-MERS. FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE
MORTGAGEE OF RECORD.

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS, (solely as nominee for Lender and Lender's successors and assigns),
subject to the terms of this Mortgage. I understand and agree that MERS holds only legal title to the interests granted by
me in this Mortgage; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's
successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to
foreclose and sell the Property; and to take any action required of Lender including, but not limited to, discharging this
Mortgage. This means that, by signing this Mortgage, I am giving Lender those rights that are stated in this Mortgage and
also those rights that the law gives to lenders who hold mortgages on real property. I am giving Lender these rights to
protect Lender from possible losses that might result if I do not:
(A)  Pay all the amounts that I owe Lender as stated in the Note;
(B)  Pay, with interest, any amounts that Lender spends under this Mortgage to protect the value of the Property and
     Lender's rights in the Property; and
(C)  Keep all of my promises and agreements under this Mortgage.
With respect to the amounts that I owe under the Note and under this Mortgage, I waive the benefit of the right which is
known as the "homestead exemption." A homestead exemption is a property owner's right to keep a portion of his
property (usually up to a certain dollar amount) free from the claims of creditors. My waiver of this right means that the
Lender may exercise all of its rights under this Mortgage as if I were not entitled, under law, to the benefits of a
homestead exemption.

**DESCRIPTION OF THE PROPERTY**

I give Lender rights in the following Property:
(A)  The property which is located at 6425 Engel Dr                                        [Street]
Hamburg                                     [City], New York              [State], 14075     [Zip Code]
This Property is in Erie                                                    County in the State of New York.
It has the following legal description:
The Assessor's Parcel Number (Property Tax ID#) for the Real Property is 195-03-2-5.
see attached legal description

Section:                    Block: 18                    Lot:                         Unit:

NEW YORK - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS

-76N(NY) (0608)                            Page 1 of 6                              Form 3833
                        VMP Mortgage Solutions, Inc. (800)521-7291                 Amended 4/01

Book13293/Page2015

(B)  All buildings, structures and other improvements that are located on the property described in paragraph (A) of this section;

(C)  All rights in other property that I have as owner of the property described in paragraph (A) of this section. These rights are known as "easements, rights and appurtenances attached to the property";

(D)  All rents or royalties from the property described in paragraph (A) of this section; and

(E)  All of the property described in paragraphs (B) through (D) of this section that I acquire in the future, and all rights described in paragraphs (B) through (D) of this section that I acquire in the future.

It may be that I do not own the Property but am a tenant under a lease. In that case, the rights I am giving to Lender by this Mortgage are rights in my tenancy.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property other than claims and charges of record. I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because, as a result of something I have done, someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**UNIFORM PROMISES**

I promise and I agree with Lender as follows:

1.  **BORROWER'S PROMISE TO PAY PRINCIPAL AND INTEREST UNDER THE NOTE AND TO FULFILL OTHER PAYMENT OBLIGATIONS**

I will promptly pay to Lender when due principal and interest under the Note and late charges as stated in the Note.

2.  **AGREEMENTS ABOUT MONTHLY PAYMENTS FOR TAXES AND INSURANCE**

**(A) Borrower's Obligation to Make Monthly Payments to Lender for Taxes and Insurance**

I will pay to Lender all amounts necessary to pay for taxes, assessments, ground rents (if any), and hazard insurance on the Property and mortgage insurance (if any). I will pay those amounts to Lender (i) unless Lender tells me, in writing, that I do not have to do so or (ii) unless the law requires otherwise. Also, I will not have to pay to Lender any amount for which I am already making monthly payments to the holder of any superior mortgage or deed of trust, if it is a savings or banking institution. I will make those payments on the same day that my monthly payments of principal and interest are due under the Note.

The amount of each of my payments under this Paragraph 2 will be the sum of the following:

(i)  One-twelfth of the estimated yearly taxes, assessments (including condominium and planned unit development assessments, if any) and ground rents (if any) on the Property which under the law may be superior to this Mortgage; plus

(ii)  One-twelfth of the estimated yearly premium for hazard insurance covering the Property; plus

(iii)  One-twelfth of the estimated yearly premium for mortgage insurance (if any).

Lender will determine from time to time my estimated yearly taxes, assessments, ground rents and insurance premiums based upon existing assessments and bills, and reasonable estimates of future assessments and bills. (Taxes, assessments, ground rents and insurance premiums will be called "taxes and insurance.")

The amounts that I pay to Lender for taxes and insurance under this Paragraph 2 will be called the "Funds." The Funds are additional protection for Lender in case I do not fulfill my obligations under the Note and under this Mortgage.

**(B) Lender's Obligations Concerning Borrower's Monthly Payments for Taxes and Insurance**

Lender will keep the Funds in a savings or banking institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency. If Lender is such an institution then Lender may hold the Funds. Except as described in this Paragraph 2, Lender will use the Funds to pay taxes and insurance. Lender will give to me, without charge, an annual accounting of the Funds. That accounting must show all additions to and deductions from the Funds, and the reason for each deduction.

Lender may not charge me for holding or keeping the Funds on deposit, for using the Funds to pay taxes and insurance, for analyzing my payments of Funds, or for receiving, verifying and totalling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Funds and if the law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Funds unless either (i) Lender and I agree in writing, at the time I sign this Mortgage, that Lender will pay interest on the Funds; or (ii) the law requires Lender to pay interest on the Funds.

If Lender's estimates are too high or if taxes and insurance rates go down, the amounts that I pay under this Paragraph 2 will be too large. If this happens at a time when I am keeping all of my promises and agreements made in this Mortgage, I will have the right to have the excess amount either promptly repaid to me as a direct refund or credited to my future monthly payments of Funds. There will be excess amounts if, at any time, the sum of (a) the amount of Funds which Lender is holding or keeping on deposit, plus (b) the amount of the monthly payments of Funds which I still must pay between that time and the due dates of taxes and insurance, is greater than the amount necessary to pay the taxes and insurance when they are due.

If, when payments of taxes and insurance are due, Lender has not received enough Funds from me to make those payments, I will pay to Lender whatever additional amount is necessary to pay the taxes and insurance in full. I must pay that additional amount in one or more payments as Lender may require.

When I have paid all of the amounts due under the Note and under this Mortgage, Lender will promptly refund to me any Funds that are then being held or kept on deposit by Lender. If, under Paragraph 20 below, either Lender acquires the Property or the Property is sold, then immediately before the acquisition or sale, Lender will use any Funds which Lender is holding or has on deposit at that time to reduce the amount that I owe to Lender under the Note and under this Mortgage.

Book13293/Page2016

3. **APPLICATION OF BORROWER'S PAYMENTS**

Unless the law requires otherwise, Lender will apply each of my payments under the Note and under Paragraphs 1 and 2 above in the following order and for the following purposes:

(A)  First, to pay the amounts then due to Lender under Paragraph 2 above;

(B)  Next, to pay interest then due under the Note; and

(C)  Next, to pay principal then due under the Note.

4. **BORROWER'S OBLIGATION TO PAY PRIOR MORTGAGES, CHARGES AND ASSESSMENTS AND TO SATISFY CLAIMS AGAINST THE PROPERTY**

I will keep all promises that I have made in any superior mortgage or deed of trust, including my promises to make payments when due. I will pay all taxes, assessments, and any other charges and fines that may be imposed on the Property and that may be superior to this Mortgage. I will see that any claim, demand or charge that is made against the Property because an obligation has not been fulfilled (known as a "lien") is promptly paid or satisfied if the lien may be superior to this Mortgage. I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property.

5. **BORROWER'S OBLIGATION TO OBTAIN AND TO KEEP HAZARD INSURANCE ON THE PROPERTY**

I will obtain hazard insurance to cover all buildings, structures and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies, and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender.

I may choose the insurance company, but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of the insurance policies and renewals of those policies must include what is known as a "standard mortgage clause" to protect Lender. The form of all policies and the form of all renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals, subject to the terms of any superior mortgage or deed of trust.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim for insurance benefits, then Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the amount that I owe to Lender under the Note and under this Mortgage. The 30-day period will begin on the date the notice is mailed, or if it is not mailed, on the date the notice is delivered.

6. **BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL OBLIGATIONS IN LEASE AND CONDOMINIUM AND PUD DOCUMENTS**

I will keep the Property in good repair. I will not destroy, damage or substantially change the Property, and I will not allow the Property to deteriorate. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. If the Property is a unit in a condominium or in a planned unit development, I will fulfill all of my obligations under the declaration, by-laws, regulations and other documents that create or govern the condominium or the planned unit development.

7. **LENDER'S RIGHT TO TAKE ACTION TO PROTECT THE PROPERTY**

If: (A) I do not keep my promises and agreements made in this Mortgage, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as, for example, a legal proceeding in bankruptcy, in probate, for condemnation, or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions under this Paragraph 7 may include, for example, appearing in court, paying reasonable attorneys' fees, and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions.

I will pay to Lender any amounts, with interest, which Lender spends under this Paragraph 7. This Mortgage will protect Lender in case I do not keep this promise to pay those amounts with interest.

I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will also pay interest on those amounts at the same rate stated in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. However, Lender and I may agree in writing to terms of payment that are different from those in this paragraph. Although Lender may take action under this Paragraph 7, Lender does not have to do so.

8. **LENDER'S RIGHT TO INSPECT THE PROPERTY**

Lender, and others authorized by Lender, may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times. However, before one of those inspections is made, Lender must give me notice stating a reasonable purpose for the inspection. That purpose must be related to Lender's rights in the Property.

9. **AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY**

A taking of property by any governmental authority by eminent domain is known as "condemnation." I give to Lender my right: (A) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the Property; and (B) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender, subject to the terms of any superior mortgage or deed of trust.

10. **BORROWER'S OBLIGATIONS TO PAY MORTGAGE INSURANCE PREMIUMS**

If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, I will pay the premiums for that mortgage insurance. I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law. Lender may require me to pay premiums in the manner described in Paragraph 2 above.

Book13293/Page2017

**11. CONTINUATION OF BORROWER'S OBLIGATIONS**

Lender may allow a person who takes over my rights and obligations to delay or to change the amount of the monthly payments of principal and interest due under the Note or under this Mortgage. Even if Lender does this, however, that person and I will both still be fully obligated under the Note and under this Mortgage.

Lender may allow those delays or changes for a person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a person for not fulfilling obligations under the Note or under this Mortgage, even if Lender is requested to do so.

**12. CONTINUATION OF LENDER'S RIGHTS**

Even if Lender does not exercise or enforce any right of Lender under this Mortgage or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will still have the right, under Paragraph 20 below, to demand that I make Immediate Payment In Full (see Paragraph 20 for a definition of this phrase) of the amount that I owe to Lender under the Note and under this Mortgage.

**13. LENDER'S ABILITY TO ENFORCE MORE THAN ONE OF LENDER'S RIGHTS**

Each of Lender's rights under this Mortgage is separate. Lender may exercise and enforce one or more of those rights, as well as any of Lender's other rights under the law, one at a time or all at once.

**14. OBLIGATIONS OF BORROWERS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**

Subject to the terms of Paragraph 19 below, any person who takes over my rights or obligations under this Mortgage will have all of my rights and will be obligated to keep all of my promises and agreements made in this Mortgage. Similarly, any person who takes over Lender's rights or obligations under this Mortgage will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Mortgage. (In this Mortgage, the word "person" means any person, organization, governmental authority or any other party.)

If more than one person signs this Mortgage as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Mortgage. Lender may enforce Lender's rights under this Mortgage against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under the Note and under this Mortgage. However, if one of us does not sign the Note, then: (A) that person is signing this Mortgage only to give that person's rights in the Property under the terms of this Mortgage; and (B) that person is not personally obligated to make payments or to act under the Note or under this Mortgage. Any person signing this Mortgage but not signing the Note also agrees (i) that Lender may allow any other Borrower to delay or to change payments due under the Note or under this Mortgage and (ii) that Lender may make other accommodations under the Note or under this Mortgage. Lender may do this without obtaining anyone's consent and without modifying the effect of this Mortgage.

**15. AGREEMENT ABOUT GIVING NOTICES REQUIRED UNDER THIS MORTGAGE**

Unless the law requires otherwise, any notice that must be given to me under this Mortgage will be given by delivering it or by mailing it by certified mail addressed to me at the address stated in the section above titled "Description Of The Property." A notice will be delivered or mailed to me at a different address if I give Lender a notice of my different address. Any notice that must be given to Lender under this Mortgage will be given by mailing it by certified mail to Lender's address stated in paragraph (C) of the section above titled "Words Used Often In This Document." A notice will be mailed to Lender at a different address if Lender gives me a notice of the different address. A notice required by this Mortgage is given when it is mailed or when it is delivered according to the requirements of this Paragraph 15.

**16. LAW THAT GOVERNS THIS MORTGAGE**

The state and local law that applies in the place that the Property is located will govern this Mortgage. This will not limit Federal law that applies to this Mortgage. If any term of this Mortgage or of the Note conflicts with the law, all other terms of this Mortgage and of the Note will still remain in effect if they can be given effect without the conflicting term. This means that any terms of this Mortgage and the Note which conflict with the law can be separated from the remaining terms, and the remaining terms will still be enforced.

As used in this Mortgage, the words "costs," "expenses" and "attorneys' fees" include all amounts not prohibited by applicable law or limited in this Mortgage.

**17. BORROWER'S COPY OF THE NOTE AND OF THIS MORTGAGE**

I will be given copies of the Note and of this Mortgage. Those copies must show that the original Note and Mortgage have been signed. I will be given those copies either when I sign the Note and this Mortgage or after this Mortgage has been recorded in the proper official records.

**18. REHABILITATION LOAN AGREEMENT**

I will comply with all of the terms and conditions of any home rehabilitation, improvement, repair, modernization, remodeling or similar loan agreement I have with Lender. If Lender requests it, I will sign and give to Lender an assignment of any rights or claims I might have against persons who supply labor, materials or services in connection with improving the Property. This assignment will be in a form acceptable to Lender.

**19. AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

Lender may require immediate payment in full of all sums secured by this Mortgage if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person. However, Lender shall not require immediate payment in full if this is prohibited by federal law on the date of this Mortgage.

If Lender requires immediate payment in full under this Paragraph 19, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Mortgage without giving me any further notice or demand for payment.

-76N(NY) (0504)                    Page 4 of 8                    Form 3833

## NON-UNIFORM PROMISES

I also promise and agree with Lender as follows:

**20. LENDER'S RIGHTS IF BORROWER FAILS TO KEEP PROMISES AND AGREEMENTS**

If all of the conditions stated in subparagraphs (A), (B), and (C) of this Paragraph 20 are satisfied, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Mortgage. Lender may do this without making any further demand for payment. This requirement will be called "Immediate Payment In Full."

If Lender requires Immediate Payment In Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and to have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "foreclosure and sale." If the proceeds of this sale are insufficient to repay Lender the amounts due to Lender from me under the Note and under this Mortgage, Lender may obtain a court judgment against me personally for the difference between all amounts due from me under the Note and this Mortgage and the sale proceeds. In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and expenses of the foreclosure and sale allowed by law.

Lender may require Immediate Payment In Full under this Paragraph 20 only if all of the following conditions are satisfied:

(A) I fail to keep any promise or agreement made in this Mortgage, including the promises to pay when due the amounts that I owe to Lender under the Note and under this Mortgage; and

(B) Lender gives to me, in the manner described in Paragraph 15 above, a notice that states:

    (i) The promise or agreement that I failed to keep;

    (ii) The action that I must take to correct that failure;

    (iii) A date by which I must correct the failure. That date must be at least 10 days from the date on which the notice is mailed to me;

    (iv) That if I do not correct the failure by the date stated in the notice, I will be in default and Lender may require Immediate Payment In Full, and Lender or another person may acquire the Property by means of foreclosure and sale;

    (v) That if I meet the conditions stated in Paragraph 21 below, I will have the right to have any lawsuit for foreclosure and sale discontinued and to have the Note and this Mortgage remain in full force and effect as if Immediate Payment In Full had never been required; and

    (vi) That I have the right in any lawsuit for foreclosure and sale to argue that I did not fail to keep any of my promises or agreements under the Note or under this Mortgage, and to present any other defenses that I may have; and

(C) I do not correct the failure stated in the notice from Lender by the date stated in that notice.

**21. BORROWER'S RIGHT TO HAVE LENDER'S LAWSUIT FOR FORECLOSURE AND SALE DISCONTINUED**

Even if Lender has required Immediate Payment In Full, I may have the right to have discontinued any lawsuit brought by Lender for foreclosure and sale or for other enforcement of this Mortgage. I will have this right at any time before a judgment has been entered enforcing this Mortgage if I meet the following conditions:

(A) I pay to Lender the full amount that would have been due under this Mortgage and the Note if Lender had not required Immediate Payment In Full; and

(B) I correct my failure to keep any of my other promises or agreements made in this Mortgage; and

(C) I pay all of Lender's reasonable expenses in enforcing this Mortgage including, for example, reasonable attorneys' fees; and

(D) I do whatever Lender reasonably requires to assure that Lender's rights in the Property, Lender's rights under this Mortgage, and my obligations under the Note and under this Mortgage continue unchanged.

If all of the conditions in this Paragraph 21 are fulfilled, then the Note and this Mortgage will remain in full force and effect as if Immediate Payment In Full had never been required.

**22. LENDER'S RIGHTS TO RENTAL PAYMENTS FROM THE PROPERTY AND TO TAKE POSSESSION OF THE PROPERTY**

As additional protection for Lender, I give to Lender all of my rights to any rental payments from the Property. However, until Lender requires Immediate Payment In Full under Paragraphs 19 or 20 above, or until I abandon the Property, I have the right to collect and keep those rental payments as they become due. I have not given any of my rights to rental payments from the Property to anyone other than the holder of the Superior Mortgage, and I will not do so without Lender's consent in writing. If Lender requires Immediate Payment In Full under Paragraphs 19 or 20 above, or if I abandon the Property, then Lender, persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter on and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change leases. I agree that if Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 22, the tenants may make those rental payments to Lender without having to ask whether I have failed to keep my promises and agreements under this Mortgage.

If there is a judgment for Lender in a lawsuit for foreclosure and sale, I will pay to Lender reasonable rent from the date the judgment is entered for as long as I occupy the Property. However, this does not give me the right to be a tenant on the Property.

All rental payments collected by Lender or by a receiver, other than the rent paid by me under this Paragraph 22, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the amount that I owe to Lender under the Note and under this Mortgage. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees, and the cost of any necessary bonds. Lender and the receiver will be obligated to account only for those rental payments that they actually receive.

-76N(NY) (0609)                                                    Page 6 of 6                                    Initials:                    Form 3833

23. **LENDER'S OBLIGATION TO DISCHARGE THIS MORTGAGE WHEN THE NOTE AND THIS MORTGAGE ARE PAID IN FULL**

When Lender has been paid all amounts due under the Note and under this Mortgage, Lender will discharge this Mortgage by delivering a certificate stating that this Mortgage has been satisfied. I will not be required to pay Lender for the discharge, but I will pay all costs of recording the discharge in the proper official records.

24. **AGREEMENTS ABOUT NEW YORK LIEN LAW**

I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that if, on the date this Mortgage is recorded in the proper official records, construction or other work on any building or other improvement located on the Property has not been completed for at least four months, I will: (A) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a "trust fund"; and (B) use those amounts to pay for that construction or the work before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that I have a special responsibility under the law to use the amounts in the manner described in this Paragraph 24.

25. **BORROWER'S STATEMENT REGARDING THE PROPERTY.** Check box(es) as applicable.

[X] This Security Instrument covers real property improved, or to be improved, by a one (1) or two (2) family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six (6) residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

REQUEST FOR NOTICE OF DEFAULT
——————————— AND FORECLOSURE UNDER SUPERIOR ———————————
MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any superior mortgage or deed of trust to notify Lender in writing, at Lender's address on page 1 of this Mortgage, if the Borrower is required to make "Immediate Payment in Full" and if there is "foreclosure and sale" under that superior mortgage or deed of trust.

By signing this Mortgage I agree to all of the above.

Witnesses:

_____        *Mary Frances Wishman*        _____ (Seal)
                               Mary Frances Wishman           -Borrower

_____        *John H. Wishman Jr.*          _____ (Seal)
                               John H. Wishman Jr.            -Borrower

_____                                (Seal)        _____        _____ (Seal)
                                                    -Borrower                                       -Borrower

_____                                (Seal)        _____        _____ (Seal)
                                                    -Borrower                                       -Borrower

_____                                (Seal)        _____        _____ (Seal)
                                                    -Borrower                                       -Borrower

*[Sign Original Only]*

STATE OF NEW YORK,            ERIE            County ss.

On the 29th day of April, 2006          before me, the undersigned, a notary public in and for said state, personally appeared

MARY FRANCES WISHMAN and JOHN H. WISHMAN, JR.

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

ROBERT L. MARINELLI
Notary Public, State of New York
Reg. #01MA7714710
Qualified in Erie County
My Commission Expires 4/30/2010

Tax Map Information: 195-03-2-5

Book13293/Page2020

| Customer Name: | MARY F WISHMAN |
| Application #: | |
| Order #: | |

### Exhibit A (Legal Description)

ALL THAT PARCEL OF LAND IN ERIE COUNTY, STATE OF NEW YORK, AS MORE FULLY DESCRIBED IN DEED BOOK 10870, PAGE 2457, ID# 195-03-2-5, BEING KNOWN AND DESIGNATED AS .

ALL THAT TRACT OR PARCEL OF LAND SITUATE IN THE TOWN OF HAMBURG COUNTY OF ERIE AND STATE OF NEW YORK BEING PART OF LOT NO. 18 TOWNSHIP 9, RANGE 8 OF THE HOLLAND LAND COMPANY'S SURVEY AND FURTHER DISTINGUISHED AS SUBDIVISION LOT NO. 3 AS SHOWN ON A MAP FILED IN THE ERIE COUNTY CLERK'S OFFICE UNDER COVER NO. 1761.

JOHN H. WISHMAN, JR. AND MARY FRANCES WISHMAN BY FEE SIMPLE DEED FROM DOMINICK L. FARBO AS SET FORTH IN BOOK 10870 PAGE 2457 DATED 04/18/1994 AND RECORDED 04/25/1994, ERIE COUNTY RECORDS, STATE OF NEW YORK.

MORTGAGE
I ORNE
US Recordings

COVER SHEET REV 20100709a



**ERIE COUNTY CLERKS OFFICE**

**County Clerk's Recording Page**

    Return To:

Book: **228**       Page: **4988**

Page Count: **2**

Doc Type: **JUDGMENT/MOTION**

Rec Date: **10/29/2010**

Rec Time: **01:26:23 PM**

Control #: **2010197770**

User ID: **bev**

Party 1:

**BELLA DAY SPA LLC AKA**

Trans Num: **973811**

DEED SEQ:

MTG SEQ:

Party 2:

**LYON FINANCIAL SERVICES INC DBA**

UCC:

SCAR:

INDEX:

| Recording Fees: | | Consideration Amount: | $24,200.01 |
|---|---|---|---|
| | | BASIC | $0.00 |
| | | SONYMA | $0.00 |
| STATE COURT $45 FEE | $45.00 | ADDL | $0.00 |
| | | NFTA MT | $0.00 |
| | | TRANSFER | $0.00 |
| | | NFTA TT | $0.00 |
| **Total:** | **$45.00** | | |

**STATE OF NEW YORK**
**ERIE COUNTY CLERK'S OFFICE**

**COURT DOCUMENT SCANNED TO**
**CREATE ELECTRONIC RECORD**

        Kathleen C. Hochul
        County Clerk,
        Clerk for Erie County
        Supreme&County Courts

Book228/Page4988

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE                                                        Index No. 2010-002211

LYON FINANCIAL SERVICES, INC. d/b/a US BANCORP MANIFEST FUNDING
SERVICES,
                                                          Plaintiff

                    *against*                                        *STATEMENT
                                                                     FOR
BELLA DAY SPA, LLC a/k/a MJ PROPERTIES 5, LLC, JOHN J. WISHMAN, JR.   JUDGMENT*
and MARY FRAN WISHMAN a/k/a MARY FRAN ZERKOWSKI,
                                                          Defendants

| | | | |
|---|---|---|---|
| *Amount claimed in Complaint......(Less attorneys' fees)* ............ | | | $23,665.01 |
| *Interest......................... (waived)* | | | |
| | | | |
| *Costs by Statute*............................................ | $200.00 | | |
| *Service of Summons and Complaint*................. | $50.00 | | |
| *Affidavits*.................................................. | | | |
| *Transcripts and Docketing*.......................... | | | |
| *Clerk's Fees entering Judgment*..................... | | | |
| *Postage*................................................... | | | |
| *Sheriff's Fees on Execution*.......................... | $50.00 | | |
| *Request for Judicial Intervention* .................. | | | |
| *Taxing Costs*.............................................. | | | |
| *Fee for Index Number*.................................. | $210.00 | TOTAL | $535.00 |
| | | | |
| *Costs taxed at $..................* | | | |
| .............................................................Clerk | | | |
| | | *Total*.......... | $24,200.01 |

## ATTORNEY'S AFFIRMATION

STATE OF NEW YORK, COUNTY OF KINGS          ss.:

The undersigned, attorney at law of the State of New York, CHARLES A. GRUEN, ESQ., attorney of record for the plaintiff herein,
states that the disbursements above specified are correct and true and have been or will necessarily be made or incurred herein and are
reasonable in amount; that the time of the defendant(s) to appear or answer herein has expired and that the said defendant(s) has not appeared
or answered herein. The undersigned affirms this statement to be true under the penalties of perjury.

Dated: October 12, 2010

                                                          CHARLES A. GRUEN

JUDGMENT entered on                       , 2010. The Summonses and Complaint in this action having been personally served upon

BELLA DAY SPA, LLC a/k/a MJ PROPERTIES 5, LLC, JOHN J. WISHMAN, JR. and MARY FRAN WISHMAN a/k/a MARY FRAN

ZERKOWSKI, defendant(s) herein and the time of said defendant(s) to appear or answer having expired, and said defendant(s) not

having appeared or answered herein.

NOW ON MOTION OF Charles A. Gruen, Esq., attorney for plaintiff it is,

ADJUDGED that LYON FINANCIAL SERVICES, INC. d/b/a US BANCORP MANIFEST FUNDING SERVICES, Plaintiff, with an

address at 1310 Madrid Street, Suite 100, Marshall, MN 56258, do recover of Defendants, BELLA DAY SPA, LLC a/k/a MJ PROPERTIES 5,

LLC, JOHN J. WISHMAN, JR. and MARY FRAN WISHMAN a/k/a MARY FRAN ZERKOWSKI, with addresses at 6425 Engel Drive,

Hamburg, NY 14075 the sum of $23,665.01, the amount claimed with $535.00 costs and disbursements amounting in all to the sum of

$24,200.01, (plaintiff having waived any claim for interest) and that the plaintiff(s) have execution therefor.

*Judgement Signed and Filed this 29 Day of October 2010*
                                                          .....................Clerk
*Kathleen C. Hochul COUNTY CLERK*

A notice of default must be mailed to defendants in an action against a natural person based upon non-payment of a contractual obligation (CPLR 308, as amended)

                                                          777D

                                                          1444-1-DK

Book228/Page4989

COVER SHEET REV 20101214



**ERIE COUNTY CLERKS OFFICE**
**County Clerk's Recording Page**
<u>Return To:</u>

| | |
|---|---|
| Book: **189** | Page: **4671** |

Page Count: **3**

Doc Type: **PARTIAL SATIS**

Rec Date: **04/12/2011**

Rec Time: **12:53:50 PM**

Control #: **2011074999**

User ID: **david**

Party 1:
**PARTIAL SATISFACTION**

Trans Num: **11051653**

DEED SEQ:

MTG SEQ:

Party 2:
UCC:

SCAR:

INDEX:

**Recording Fees:**

| **Consideration Amount:** | **$18,666.72** |
|---|---|
| BASIC | **$0.00** |
| SONYMA | **$0.00** |
| ADDL | **$0.00** |
| NFTA MT | **$0.00** |
| TRANSFER | **$0.00** |
| NFTA TT | **$0.00** |

**Total:** $0.00

STATE OF NEW YORK
ERIE COUNTY CLERK'S OFFICE

COURT DOCUMENT SCANNED TO
CREATE ELECTRONIC RECORD

Kathleen C. Hochul
County Clerk,
Clerk for Erie County
Supreme&County Courts

Book189/Page4671



# MARTIN A. BIENSTOCK
## Badge No. 75

**Marshal City of New York**

36-35 Bell Boulevard
P.O. Box 610700
Bayside, N.Y. 11361-0700
FAX: 718-423-0014

*Q228-4988*

January 27, 2011

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF ERIE INDEX# **002211/10**

                                    Judgment Creditor
**LYON FINANCIAL SVCS,INC.DBA US
BANCORP MANIFEST FUNDING SVCS**

            vs

                                    Judgment Debtor

**BELLA DAY SPA,LLC AKA MJ PROP-
ERTIES 5,LLC JOHN J.WISHMAN JR
& MARY FRAN WISHMAN AKA MARY
6425 ENGEL DRIVE
HAMBURG, NY 14075**

# CITY MARSHAL'S RETURN OF EXECUTION

The Execution in the above-captioned matter is hereby returned
P A R T I A L L Y   S A T I S F I E D

TO THE EXTENT OF JUDGMENT:      18,666.72
                    INTEREST:         460.29

Marshal's Reference No.: **M 233524**

                          MARTIN A. BIENSTOCK
                          MARSHAL, CITY OF NEW YORK
                          BADGE NO. 75

*74999*

*123-2*

Book189/Page4672

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

Index No. 2010-002211 *M233524*

LYON FINANCIAL SERVICES, INC. d/b/a US BANCORP MANIFEST FUNDING
SERVICES,

Plaintiff

*against*

BELLA DAY SPA, LLC a/k/a MJ PROPERTIES S, LLC, JOHN J. WISHMAN, JR. and
MARY FRAN WISHMAN a/k/a MARY FRAN ZERKOWSKI

Defendants

*EXECUTION
WITH NOTICE TO
GARNISHEE*

## The People of the State of New York

TO THE SHERIFF OF ANY COUNTY, GREETINGS:

WHEREAS, in an action in the *Supreme Court of New York, County of Erie*, between LYON FINANCIAL SERVICES, INC. d/b/a US BANCORP MANIFEST FUNDING SERVICES, *as plaintiff* and BELLA DAY SPA, LLC a/k/a MJ PROPERTIES S, LLC, JOHN J. WISHMAN, JR. and MARY FRAN WISHMAN a/k/a MARY FRAN ZERKOWSKI, *as defendant(s), who are all the parties named in said action, a judgment was entered on* October 29, 2010, *in favor of* LYON FINANCIAL SERVICES, INC. d/b/a US BANCORP MANIFEST FUNDING SERVICES, *and against* , BELLA DAY SPA, LLC a/k/a MJ PROPERTIES S, LLC, *whose last known address is* 84 Lake Street, Hamburg, NY 14075, JOHN J. WISHMAN, JR. *and* MARY FRAN WISHMAN a/k/a MARY FRAN ZERKOWSKI, *whose last known address is* 6425 Engel Drive, Hamburg, NY 14075, *in the amount of* $24,200.01 *including costs, of which* $24,200.01 *together with interest thereon from* October 29, 2010 *remains due and unpaid;*

WHEREAS, *a transcript of the judgment was filed on* October 29, 2010 *with the Clerk of Erie County, in which county the judgment was entered; and*

WHEREAS, *a transcript of the judgment was docketed in the office of the Clerk of your county on*                    20

NOW, THEREFORE, WE COMMAND YOU *to satisfy the said judgment out of the real and person property of the above named judgment debtor and the debts due to him; and that only the property in which said judgment debtor who is not deceased has an interest or the debts owed to him shall be levied upon or sold hereunder; AND TO RETURN this execution to the clerk of the above captioned court within 60 days after issuance unless service of this execution is made within that time or within extensions of that time made in writing by the attorney(s) for the judgment creditor.*

Notice to Garnishee  TO:        **BANK OF AMERICA**

WHEREAS, *it appears that you are indebted to the judgment debtor, above named, or in possession or custody of property not capable of delivery in which the judgment debtor has an interest, including, without limitation, the following specified debt and property:*

Any and all bank accounts of the Defendants, BELLA DAY SPA, LLC a/k/a MJ PROPERTIES
S, LLC, JOHN J. WISHMAN, JR. and MARY FRAN WISHMAN a/k/a MARY FRAN
ZERKOWSKI, located at BANK OF AMERICA.

NOW THEREFORE, YOU ARE REQUIRED, *by section 5232(a) of the Civil Practice Law and Rules forthwith to transfer to the sheriff all personal property not capable of delivery in which the judgment debtor is known or believed to have an interest now in or hereafter coming into you possession or custody including any property specified in this notice; and to pay to the sheriff, upon maturity, all debts now due or hereafter coming due from you to the judgment debtor, including any debts specified in this notice; and to execute any documents necessary to effect such transfer or payment;*

AND TAKE NOTICE *that until such transfer or payment is made or until the expiration of 90 days after the service of this execution upon you or such further time as is provided by any order of the court served upon you whichever event first occurs, you are forbidden to make or suffer any sale, assignment or transfer of, or any interference with, any such property, or pay over or otherwise dispose of any such debt, to any person other than the sheriff, except upon direction of the sheriff or pursuant to and order of the court;*

AND TAKE FURTHER NOTICE THAT, *at the expiration of 90 days after a levy is made by service of this execution, or of such further time as the court upon notion of the judgment creditor has provided, this levy shall be void except as to property or debts which have been transferred or paid to the sheriff or as to which a proceeding under sections 5225 or 5227 of the Civil Practice Law and Rules has been brought.*

AND TAKE FURTHER NOTICE THAT *a notice as prescribed by Section 5222 has been delivered within the past year upon the judgment debtor.*

Dated:  December 16, 2010

Charles A. Gruen

Attorney(s) for Judgment Creditor          Law Offices of Charles A. Gruen
Office and Post Office Address              44 Court Street, Suite 1212, Brooklyn, New York 11201 and
                                           381 Broadway, Suite 300, Westwood, New Jersey 07675 (201) 342-1212

ERIE COUNTY CLERK'S OFFICE



County Clerk's Recording Page

Return to:

Party 1:
ORDER TO VACATE/DISMISS

Party 2:

**Recording Fees:**

Fee 1                                  $0.00

**Book Type: K  Book: 282  Page: 5084**
Page Count:   3
Doc Type:     ORDER VACATE/DISMISS
Rec Date:     02/19/2013
Rec Time:     11:25:56 AM
Control #:    2013039361
UserID:       David B
Trans #:      13027616
Document Sequence Number
  I 2010002211

**Consideration Amount:**

BASIC MT           $0.00
SONYMA MT          $0.00
ADDL MT/NFTA       $0.00
SP MT/M-RAIL       $0.00
NY STATE TT        $0.00
ROAD FUND TT       $0.00

**Total: $0.00**

STATE OF NEW YORK
ERIE COUNTY CLERK'S OFFICE

COURT DOCUMENT SCANNED TO CREATE ELECTRONIC RECORD

Christopher L. Jacobs
County Clerk

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

LYON FINANCIAL SERVICES, INC. d/b/a US
BANCORP MANIFEST FUNDING SERVICES,

*Q 238 · 4983*
*I*

Index No. 2010-002211

                                    Plaintiff,

            -against-

BELLA DAY SPA, LLC a/k/a MJ PROPERTIES 5,
LLC, JOHN J. WISHMAN, JR. and MARY FRAN
WISHMAN a/k/a MARY FRAN ZERKOWSKI,

                                    Defendant.

**CONSENT ORDER TO VACATE
DEFAULT JUDGMENT, RELEASE
LEVIED FUNDS AND ALLOW
DEFENDANTS TIME TO ANSWER**

THIS MATTER having come before the Court by the The Synder Law Office, attorneys

for Defendants, BELLA DAY SPA, LLC a/k/a MJ PROPERTIES 5, LLC, JOHN J.

WISHMAN, JR. and MARY FRAN WISHMAN a/k/a MARY FRAN ZERKOWSKI, and it

appearing that the Law Offices of Charles A. Gruen, as counsel for the Plaintiff in this matter,

has consented to the form and entry of this Consent Order, and it appearing that Judgment by

Default was entered against the Defendants in this matter on October 29, 2010, and for good

cause shown;

IT IS on this _30th_ day of _January_ ,2013;

ORDERED that the Judgment by Default entered on October 29, 2010 be, and the same

is hereby vacated; and it is further

ORDERED that Defendants' Order to Show Cause is withdrawn as moot; and it is

further

ORDERED that Defendants BELLA DAY SPA, LLC a/k/a MJ PROPERTIES 5, LLC,

JOHN J. WISHMAN, JR. and MARY FRAN WISHMAN a/k/a MARY FRAN ZERKOWSKI,

acknowledge service of process, waive jurisdictional defenses as to BELLA DAY SPA, LLC,

*039361    116-2*

JOHN J. WISHMAN, JR. and MARY FRAN WISHMAN *only*, and shall file a responsive

pleading to Plaintiff's Complaint within ten (10) days from the date hereto; and it is further

    ORDERED that any levies against MJ PROPERTIES 5, LLC and/or MARY FRAN

ZERKOWSKI shall be vacated; and it is further

    ORDERED that counsel for Plaintiff release all funds which Plaintiff's counsel has

received in this action within ten (10) days from the date hereto; and it is further

    ORDERED that facsimile signatures by the parties hereto shall be deemed as original;

and it is further

    ORDERED that a copy of this Order shall be served on all parties to this action and any

other parties in interest (including the City Marshal) within _10_ days from the date hereto

by facsimile and Certified U.S. Mail, Return Receipt Requested.

DATED: January 30, 2013

                                                 , J.S.C.

Consent to the form and entry
of the foregoing Consent Order
is hereby acknowledged:

**GRANTED**

JAN 3 0 2013

LAW OFFICES OF CHARLES A. GRUEN
Attorneys for Plaintiff

BY: _Judith M. Conners_
JUDITH M. CONNERS
COURT CLERK

By: _____
    CHARLES A. GRUEN


SNYDER LAW OFFICE
Attorneys for Defendants

By: _____
    ADAM MARKEL

2

ERIE COUNTY CLERK'S OFFICE



County Clerk's Recording Page

Return to:

Party 1:
BELLA DAY SPA LLC AKA

Party 2:
LYON FINANCIAL SERVICES INC DBA

**Recording Fees:**

RECORDING                    $0.00

| | |
|---|---|
| Book Type: **Q**  Book: **263**  Page: **3044** | |
| Page Count: | 4 |
| Doc Type: | JUDGMENT ROLL |
| Rec Date: | 08/26/2013 |
| Rec Time: | 09:46:20 AM |
| Control #: | 2013195234 |
| UserID: | dak |
| Trans #: | 13135453 |
| Document Sequence Number | |
| I 2010002211 | |

**Consideration Amount:**     28785.64

| | |
|---|---|
| BASIC MT | $0.00 |
| SONYMA MT | $0.00 |
| ADDL MT/NFTA | $0.00 |
| SP MT/M-RAIL | $0.00 |
| NY STATE TT | $0.00 |
| ROAD FUND TT | $0.00 |

**Total: $0.00**

STATE OF NEW YORK
ERIE COUNTY CLERK'S OFFICE

COURT DOCUMENT SCANNED TO CREATE ELECTRONIC RECORD

Christopher L. Jacobs
County Clerk

Book263/Page3044                    Page 1 of 4

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

LYON FINANCIAL SERVICES, INC. d/b/a US
BANCORP MANIFEST FUNDING SERVICES,

                                    Plaintiff,

            -against-

BELLA DAY SPA, LLC a/k/a MJ PROPERTIES
5, LLC, JOHN H. WISHMAN, JR. and MARY
FRAN WISHMAN a/k/a MARY FRAN
ZERKOWSKI,

                                    Defendants.

Index No.: 2010-002211

*CIVIL ACTION*

**ORDER FOR JUDGMENT**

THIS MATTER having come before the Court by Charles A. Gruen, Esq., attorney for

the Plaintiff, LYON FINANCIAL SERVICES, INC. d/b/a US BANCORP MANIFEST

FUNDING SERVICES, on August 5, 2011 for an Order granting a Motion for Summary

Judgment against the Defendants, BELLA DAY SPA, LLC a/k/a MJ PROPERTIES 5, LLC,

JOHN H. WISHMAN, JR. and MARY FRAN WISHMAN a/k/a MARY FRAN ZERKOWSKI,

upon the Notice of Motion dated June 20, 2011, and the Affidavit of Teresa Schreurs, Plaintiff's

Recovery Specialist, dated April 29, 2011, and it appearing that Plaintiff's Motion was granted

on August 5, 2011 by the Honorable Joseph R. Glownia, J.S.C., and for good cause shown;

        NOW ON MOTION of Charles A. Gruen, Esq., attorney for the Plaintiff, LYON

FINANCIAL SERVICES, INC. d/b/a US BANCORP MANIFEST FUNDING SERVICES, it is

        ADJUDGED that Plaintiff, LYON FINANCIAL SERVICES, INC. d/b/a US

BANCORP MANIFEST FUNDING SERVICES, with offices located at 1310 Madrid Street,

Marshal, Minnesota 56258, recover of the Defendants, BELLA DAY SPA, LLC a/k/a MJ

PROPERTIES 5, LLC, JOHN H. WISHMAN, JR. and MARY FRAN WISHMAN a/k/a

MARY FRAN ZERKOWSKI, located at 6425 Engle Drive, Hamburg, New York 14075,

jointly and severally, the sum of $28,155.64, with costs and disbursements as taxed by the

Clerk in the sum of $ _630.00_ , making a total sum of $ _28,785.64_ , and the

Plaintiff have execution therefor.

                                ENTER:


                                    _JOSEPH R. GLOWNIA, J.S.C._

**GRANTED**

                SEP   2 2011

BY _Wendy K Haseley_
            WENDY K. HASELEY
            COURT CLERK

_Judgement Signed and Filed this 26 Day of August 2013_
                            COUNTY CLERK

- 2 -

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

Index No. 2010-002211

LYON FINANCIAL SERVICES, INC. d/b/a US BANCORP
MANIFEST FUNDING SERVICES,

                                    *Plaintiff*

                    *against*                    **Costs of Plaintiff**

BELLA DAY SPA, LLC a/k/a MJ PROPERTIES 5, LLC JOHN H.
WISHMAN, JR. and MARY FRAN WISHMAN a/k/a MARY FRAN
ZERKOWSKI,

                                    *Defendant(s)*

| COSTS | $ | | DISBURSEMENTS | $ | |
|---|---|---|---|---|---|
| Costs before note of issue CPLR §8201 subd. 1 | | | Fee for Index number CPLR §8018(a) | 210 | 00 |
| Costs after note of issue CPLR §8201 subd. 2 | 200 | 00 | Referee's fees CPLR §8301(a)(1), 8003(a) | | |
| Trial of issue CPLR §8201 subd. 3 | | | Commissioner's compensation CPLR §8301(a)(2) | | |
| Allowance by statute CPLR §8302 (a), (b) | | | Clerk's fee, filing notice of pend. or attach CPLR §8021(a)(10) | | |
| Additional allowance CPLR §8302 (d) | | | Entering and docketing Judgment CPLR §8301(a)(7), 8016 (a)(2) | | |
| Motion costs CPLR §8202 | | | Paid for searches CPLR §8301(a)(10) | | |
| Appeal to Appellate Term CPLR §8203 (b) | | | Affidavits and acknowledgments CPLR §8009 | | |
| Appeal to Appellate Division CPLR §8203 (a) | | | Serving copy summons & complaint CPLR §8011(1)(7), 8301(d) | | |
| Appeal to Court of Appeals CPLR §8204 | | | Request for judicial intervention | 75 | 00 |
| Costs upon frivolous claims and counterclaims CPLR §8203 (a) | | | Note of issue CPLR §8020(a) | 95 | 00 |
| | | | Paid referee's report CPLR §8301(a)(12) | | |
| | | | Certified copies of papers CPLR §8301(a)(4) | | |
| | | | Satisfaction piece CPLR §5020(a), 8021 | | |
| | | | Transcripts and filing CPLR §8021 | | |
| | | | Certified copy of judgment CPLR §8021 | | |
| | | | Postage CPLR §8301(a)(12) | | |
| | | | Jury fee CPLR §8020(c) | | |
| | | | Stenographers' fees CPLR §8002, 8301 | | |
| | | | Sheriff's fees on execution CPLR §8011, 8012 | 50 | 00 |
| | | | Sheriff's fees, attachment, arrest, etc. CPLR §8011 | | |
| | | | Paid printing cases CPLR §8301(a)(6) | | |
| | | | Clerk's fees Court of Appeals CPLR §8301(a)(12) | | |
| | | | Paid copies of papers CPLR §8016(a)(4) | | |
| | | | Motion expenses CPLR §8301(b) | | |
| | | | Fees for publication CPLR §8301(a)(3) | | |
| | | | Serving subpoena CPLR §8011(h)1, 8301(d) | | |
| | | | Paid for Search CPLR §8301(a)(10) | | |
| | | | | | |
| | | | Referee's report | | |
| | | | Attendance of witnesses CPLR §8001(a)(b)(c) §8301(a)(1) | | |

| | $ | | | $ | |
|---|---|---|---|---|---|
| COSTS | 200 | 00 | | | |
| DISBURSEMENTS | 430 | 00 | | | |
| TOTAL | 630 | 00 | | 430 | 00 |

## ERIE COUNTY CLERK'S OFFICE



County Clerk's Recording Page

Return to:

Party 1:
MJ PROPERTIES

Party 2:
KOMARISKY GARRET

**Recording Fees:**

RECORDING                    $10.00

Book Type: Q  Book: 272  Page: 4029
Page Count:    2
Doc Type:      TRANSCRIPT
Rec Date:      07/10/2014
Rec Time:      03:05:21 PM
Control #:     2014135277
UserID:        Loretta
Trans #:       14106057
Document Sequence Number

**Consideration Amount:    554.16**

| | |
|---|---|
| BASIC MT | $0.00 |
| SONYMA MT | $0.00 |
| ADDL MT/NFTA | $0.00 |
| SP MT/M-RAIL | $0.00 |
| NY STATE TT | $0.00 |
| ROAD FUND TT | $0.00 |

**Total: $10.00**

STATE OF NEW YORK
ERIE COUNTY CLERK'S OFFICE

COURT DOCUMENT SCANNED TO CREATE ELECTRONIC RECORD

Christopher L. Jacobs
County Clerk

Book272/Page4029                    Page 1 of 2

# Transcript of Judgement

| JUDGEMENT DEBTOR | JUDGEMENT CREDITOR |
|---|---|
| MJ PROPERITES / JOHN WISHMAN<br>59 CRANE ST<br>(OFFICE)<br>DEPEW, NY 14043 | GARRET KOMARISKY<br>125 NORTH ST APT 4<br>AUBURN, NY 13021 |

| AMOUNT OF JUDGEMENT | JUDGEMENT RENDERED |
|---|---|
| Damages: $ 542.16<br>Costs: $ 12.00<br>Interest: $ 0.00<br>Total: $ 554.16 | Hon. Gordon N. Willis<br>Depew Justice Court<br>County of Erie<br>State of New York<br>Hearing: 05/19/2014 11:00AM<br>Docketed: 05/19/2014 11:00am |

| REMARKS | ATTORNEY FOR JUDGEMENT CREDITOR |
|---|---|
|  |  |

I, Dawn Gauthier, Court Clerk of the Depew Justice Court, County of Erie, hereby certify that the above is a true and correct TRANSCRIPT from the docket of judgments in my office. In testimony whereof, I have hereunto set my name and affixed my official seal.

Dated: July 10, 2014

_Dawn Gauthier_

Dawn Gauthier, Court Clerk

This is to certify that there are no pending income executions, or garnishee executions, outstanding in the above entitled action.

Dated: _____    _____

Judgment Creditor

100-1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE                                                    Index No. 803522/2014

-----------------------------------------------------------------X

CACH, LLC

                                        Plaintiff,                     **STATEMENT FOR JUDGMENT**

            -Against-

JOHN WISHMAN

                                        Defendant(s).

-----------------------------------------------------------------X

This action is against a natural person based upon non-payment of a contractual obligation.

| | |
|---|---|
| Amount claimed in complaint | $1,785.40 |
| Less Payments received | $0.00 |
| | |
| Balance of claim amount due | $1,785.40 |
| Interest Fees WAIVED | $0.00 |
| Attorneys fees WAIVED | $0.00 |
| | |
| | $1,785.40 |
| Costs by statute | $200.00 |
| Service of summons and complaint | $10.00 |
| Affidavits | $10.00 |
| Sheriffs fees | $25.00 |
| Fee for index No. | $210.00 |
| | |
| | $455.00 |
| | Total: $2,240.40 |

STATE OF NEW YORK COUNTY OF NASSAU

    The undersigned attorney at law of the State of New York, one of the attorney(s) of record for the Plaintiff, under penalties of perjury, affirms the following to be true: I am a member of the firm of Daniels Norelli Scully & Cecere, P.C., attorneys for the plaintiff in the within action; plaintiff is a corporation and affirmant as its attorney has full knowledge of the facts and the disbursements specified above have been or will necessarily be made or incurred therein are reasonable in amount.

    The summons and complaint in this action having been served on JOHN WISHMAN, as Defendant(s) per the affidavit(s) of service filed with this court, and the time of said Defendant(s) to appear or answer having expired, and said Defendant(s) not having appeared or answered herein.

    NOTICE of default (a copy of the summons and verified complaint) was mailed to Defendant(s) on 05/21/2014 a date, which is at least 20 days prior to entry of this judgment and proof of service thereon.

    The basis of venue is the county where the Defendant(s) reside(s).

    After reasonable inquiry, I have reason to believe that the Statute of Limitations has not expired upon commencement of the action.

    As of the date of this affirmation, the debt has not been assigned or sold to another entity.

    And it is further adjudged that Plaintiff's claim for attorney's fees shall be and the same hereby is waived.

NOW ON MOTION OF   Daniels Norelli Scully & Cecere, P.C., 1 Old Country Road, Suite LL5, Carle Place, NY 11514 , Attorneys for Plaintiff, it is ADJUDGED that CACH, LLC, Plaintiff residing at 4340 S. Monaco, 2nd Fl. Denver, CO 80237 do recover of JOHN WISHMAN, Defendant(s) residing at 6425 Engel Dr, Hamburg, NY 14075 ,  , the sum of $1,785.40 the amount claimed with interest of $0.00 together with $455.00 costs and disbursements amounting in all to the sum of $2,240.40 and that plaintiff have execution thereof.

DATED: 6/30/14

                                        Fred G. Daniels, Esq./George E. Norelli, Esq./James P. Scully, Esq.
                                        Daniels Norelli Scully & Cecere, P.C.
                                        1 Old Country Road, Suite LL5, Carle Place, NY 11514 (516) 338-7520

JUDGMENT entered the        day of            2014

                    **Judgment Signed and Filed** 7/7/2014

CLERK _____
120017113342-261-14

                    Christopher L. Jacobs County Clerk

## ERIE COUNTY CLERK'S OFFICE



County Clerk's Recording Page

<u>Return to:</u>

**Party 1:**
WISHMAN JOHN

**Party 2:**
CAPITAL ONE BANK (USA) NA

**Recording Fees:**

| | |
|---|---|
| Fee 1 | $0.00 |
| STATE COURT $45 FEE | $45.00 |

| | |
|---|---|
| Book Type: **Q**  Book: **257**  Page: **822** | |
| Page Count: | 2 |
| Doc Type: | JUDGMENT/MOTION |
| Rec Date: | 02/14/2013 |
| Rec Time: | 10:43:49 AM |
| Control #: | 2013037189 |
| UserID: | Janet A |
| Trans #: | 13025964 |
| Document Sequence Number | |
|   I 2012606242 | |

| **Consideration Amount:** | **13441.52** |
|---|---|
| BASIC MT | $0.00 |
| SONYMA MT | $0.00 |
| ADDL MT/NFTA | $0.00 |
| SP MT/M-RAIL | $0.00 |
| NY STATE TT | $0.00 |
| ROAD FUND TT | $0.00 |

**Total: $45.00**

STATE OF NEW YORK
ERIE COUNTY CLERK'S OFFICE

COURT DOCUMENT SCANNED TO CREATE ELECTRONIC RECORD

Christopher L. Jacobs
County Clerk

Book257/Page822                         Page 1 of 2

INDEX NO. I-2012606242
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE
--------------------------------------
CAPITAL ONE BANK (USA), N.A.

                                    PLAINTIFFS,

            AGAINST

JOHN WISHMAN

                        DEFENDANTS.
                    N340000040786236
--------------------------------------
JUDGMENT        ON DEFAULT *
--------------------------------------

AMOUNT CLAIMED IN COMPLAINT     $    12,916.52
LESS PMTS THRU                  $          .00

BALANCE OF CLAIM AMOUNT DUE     $    12,916.52
INTEREST WAIVED                 $          .00
ATTORNEYS FEES WAIVED           $          .00

                                $    12,916.52
COSTS BY STATUTE                   200.00
SERVICE OF SUMMONS & COMP           30.00
FILING OF SUMMONS & COMP           210.00
MOTION FEE                          45.00
PROSPECTIVE EXECUTION FEE           40.00
FILING OF JUDGMENT
REQ JUD INT
SATISFACTION PIECE
              SUBTOTAL             525.00
              TOTAL           $      13,441.52
  * PURSUANT TO FDCPA, PLEASE TAKE  *
  * NOTICE THAT FORSTER & GARBUS LLP *
  * IS A DEBT COLLECTOR.            *

JUDGMENT ENTERED ON:

JUDGMENT IS RENDERED IN FAVOR OF THE
PLAINTIFF
CAPITAL ONE BANK (USA), N.A.
1680 CAPITAL ONE DR  MCCLEAN VA 22102

AND AGAINST THE FOLLOWING DEFENDANT(S)
JOHN WISHMAN
6425 ENGEL DR
HAMBURG NY 14075

*Judgement Signed and Filed this* 14 *Day of* February 2013
                                *COUNTY CLERK*

AS HEREIN ABOVE COMPUTED IN THE SUM
OF $ 13,441.52
AND IT IS ADJUDGED THAT THE PLAINTIFF
HAS EXECUTION THEREFORE.

                              , CLERK
--------------------------------------

STATE OF NY, COUNTY OF SUFFOLK  SS:
JOEL D. LEIDERMAN AFFIRMS TRUE UN-
DER PENALTY OF PERJURY: HE IS ASSOC
WITH PLAINTIFF'S ATTY, ADMITTED TO
PRACTICE IN NY; DISBURSEMENTS SPECI-
FIED HEREIN, HAVE BEEN OR WILL
NECESSARILY BE MADE OR INCURRED, ARE
REASONABLE IN AMOUNT; SERVICE OF
SUMMONS AND COMPLAINT HAS BEEN
MADE UPON DEFENDANT BY PERSONAL/SUB
SERVICE AS APPEARS BY AFFIDAVIT
OR ACKNOWLEDGEMENT OF SERVICE. THE
TIME OF DEFENDANT/S TO APPEAR
OR ANSWER HAS EXPIRED AND THE DE-
FENDANT/S HAVE NOT APPEARED OR AN-
SWERED. THIS AFFIRMATION IS MADE IN
COMPLIANCE WITH 50 USCS APPX SECS
501 ET SEQ AND N.Y.M.L. 300-328.
THE DEFENDANT IS NOT AT THE
PRESENT TIME IN THE MILITARY OR
NAVAL SERVICE OF THE USA OR OF
ANY ALLIED NATION OF THE USA AS
SUCH TERM IS DEFINED BY THE ACTS OF
CONGRESS. I BASE SUCH STATEMENTS
ABOVE UPON THE FACTS STATED IN THE
ATTACHED DOD MANPOWER DATA REPORT.
AFFIRMANT GAVE ADDITIONAL
NOTICE OF THIS ACTION TO DEFENDANTS
BY MAILING A COPY OF THE SUMMONS
IN FIRST CLASS POSTAGE PAID
ENVELOPES MARKED "PERSONAL AND
CONFIDENTIAL" WITH NO INDICATION
THAT IT WAS FROM AN ATTORNEY OR
CONCERNED AN ALLEGED DEBT
ON            10/26/12
BY DELIVERING IT TO AN EMPLOYEE OF
THE USPS AT OUR OFFICES (USPS
DOMESTIC MAIL MANUAL SEC. 507
SUB 6.0 ET. SEQ.)
THE ENVELOPES WERE ADDRESSED TO

                        FILED
                        02/14/2013/ 10:43:49
JOHN WISHMAN           ERIE COUNTY CLERK
                       RCPT $ 13025964
THE DEFENDANT/S   AT J 2012606242
6425 ENGEL DR
HAMBURG NY 14075

THIS BEING THE LAST KNOWN RESIDENCE
OF THE DEFENDANT/S.
    MORE THAN 20 DAYS HAVE ELAPSED
SINCE THEN, AND THE SUMMONS SO
MAILED HAS NOT BEEN RETURNED BY THE
USPO AS UNDELIVERABLE.
I AFFIRM THE SUMMONS AND COMPLAINT
AND AFFIDAVIT (OR ACKNOWLEDGMENT)
HAVE BEEN FILED IN THIS COURT UNDER
THE ABOVE INDEX #.

DATED: 11/27/12

                        JOEL D. LEIDERMAN
FORSTER & GARBUS LLP, ATTYS FOR PLTF
60 MOTOR PKWY, COMMACK, NY 631-393-9400

144-1-DK

ERIE COUNTY CLERK'S OFFICE    

County Clerk's Recording Page

Return to:

Party 1:
WISHMAN MARY FRAN

Party 2:
CAPITAL ONE BANK (USA) NA

**Recording Fees:**

| | |
|---|---|
| Fee 1 | $0.00 |
| STATE COURT $45 FEE | $45.00 |

Book Type: **Q**  Book: **254**  Page: **3688**
Page Count:     2
Doc Type:     JUDGMENT/MOTION
Rec Date:     11/28/2012
Rec Time:     11:35:10 AM
Control #:     2012265869
UserID:     Melinda
Trans #:     12184214
Document Sequence Number
    I 2012606421

**Consideration Amount:     24018.15**

| | |
|---|---|
| BASIC MT | $0.00 |
| SONYMA MT | $0.00 |
| ADDL MT/NFTA | $0.00 |
| SP MT/M-RAIL | $0.00 |
| NY STATE TT | $0.00 |
| ROAD FUND TT | $0.00 |

**Total: $45.00**

STATE OF NEW YORK
ERIE COUNTY CLERK'S OFFICE

COURT DOCUMENT SCANNED TO CREATE ELECTRONIC RECORD

    Christopher L. Jacobs
    County Clerk

SUPREME COURT OF THE STATE OF NEW YORK
County of ERIE

Index No: 012606421
Account No:
Our File No.: 0808B 280218

----------------------------------------x
CAPITAL ONE BANK (USA), N.A.

                                    Plaintiff,

JUDGMENT

          -against-

MARY FRAN WISHMAN

Plaintiff's Address:
15000 Capital One Dr.
Richmond VA 23238

                                    Defendant(s)
----------------------------------------x

Amount Claimed in Complaint (less payments of $     .00 ).$ 23797.15
Attorney Fees (Waived in the amount of $     .00 ).......$     .00
Interest from Date of Complaint (09/06/12  )............$     .00
TOTAL..................................................$ 23797.15
Costs by Statute.......................................$     .00
Service of Summons and Complaint.......................$   11.00
Filing of Summons and Complaint........................$  210.00
Prospective Execution Fees.............................$     .00
Military Service Affidavit.............................$     .00
TOTAL COSTS............................................$   221.00
TOTAL JUDGMENT AMOUNT..................................$ 24018.15

ATTORNEY'S AFFIRMATION-STATE OF NEW YORK -COUNTY OF NASSAU
The undersigned Attorney at Law of New York State, affirms the following to be
true under the penalties of perjury:

     The Defendant(s) have failed to answer or appear and the time to
do so having expired, Plaintiff is entitled to judgment by default.  The
disbursements herein specified have been or will necessarily be incurred and are
reasonable in amount. Pursuant to affidavits of service on file herein, deponent
alleges that Defendant(s) are not in the military service.

     A copy of the summons was mailed to Defendant(s) by first class mail
postage paid (CPLR 3215) on 10/03/12 which is at least 20 days prior to the
entry of the judgment. The summons was sent to Defendant(s) place of residence
in an envelope bearing the legend "personal & confidential" and not indicating
on the outside of the envelope that the communication was from an attorney
or that it concerned an alleged debt.
Dated: 11/07/12

                              Adam Hughes, Jeffrey Wolstein

JUDGMENT rendered in favor of Plaintiff:
CAPITAL ONE BANK (USA), N.A.
15000 Capital One Dr.
Richmond VA 23238
against the following Defendant(s):
MARY FRAN WISHMAN 6425 ENGEL DR HAMBURG NY 14075
As herein above computed the TOTAL JUDGMENT AMOUNT is $ 24018.15
and it is ADJUDGED that Plaintiff have execution therefor.

                                        Dated:

                              _____
                                        Clerk

Malen & Associates, p.c. 123 Frost Street, Suite 203, Westbury, NY 11590 (516) 334-3500
This is an attempt to collect a debt, any information obtained shall be used for
that purpose. We are a Debt Collector.

Judgement Signed and Filed this 28 Day of November 2012

                              COUNTY CLERK

144-1-DK

# ERIE COUNTY CLERK'S OFFICE



County Clerk's Recording Page

Return to:

Party 1:
WISHMAN JOHN

Party 2:
HAGEMAN LISA

**Recording Fees:**

| Fee 1 | $10.00 |
|-------|--------|

Book Type: Q  Book: 253  Page: 3737
Page Count:    2
Doc Type:      TRANSCRIPT
Rec Date:      10/29/2012
Rec Time:      12:25:34 PM
Control #:     2012243899
UserID:        Danielle
Trans #:       12168253
Document Sequence Number

| Consideration Amount: | 370.00 |
|----------------------|--------|
| BASIC MT | $0.00 |
| SONYMA MT | $0.00 |
| ADDL MT/NFTA | $0.00 |
| SP MT/M-RAIL | $0.00 |
| NY STATE TT | $0.00 |
| ROAD FUND TT | $0.00 |

**Total: $10.00**

STATE OF NEW YORK
ERIE COUNTY CLERK'S OFFICE

COURT DOCUMENT SCANNED TO CREATE ELECTRONIC RECORD

Christopher L. Jacobs
County Clerk

DFW187 - Transcript of Judgment; 11/99

# TRANSCRIPT OF JUDGMENT

David F. Williamson Co., Inc., Publishers
Buffalo, New York 14203 (716) 852-0028

**Surname**

**Given Name**

John Wishman

**Name**

Lisa Hageman

## JUDGMENT DEBTOR

**Trade or Profession**
Property Manager
MJ Properties

**Last Known Address**
Po Box 434
Lakeview, NY 14085

or

54 George St (6 Mo)
Depew, NY 14043

## JUDGMENT CREDITOR

**Address**
336 Bellevue Ave.
Depew, NY 14043

**Attorney for Judgment Creditor**

**Address**

| AMOUNT OF JUDGMENT | | JUDGMENT RENDERED |
|---|---|---|
| | | Court Village of Depew 85 Manitou St Depew NY 14043 |
| Damages ..... $ 320.00 | | County Erie |
| | | Index No. |
| Costs ....... $ 50.00 | | Date |
| | | Hr. & Min. |
| Total $ 370.00 | | JUDGMENT DOCKETED |
| | | Date 7-13-12 |
| | | Hr. & Min. 7:20 pm |

**EXECUTION**

**When Issued**

**When Returned Unsatisfied**

**When**

REMARKS: Date and Manner of Change of Status of Judgment

**SATISFIED**

**How and to What Extent**

STATE OF NEW YORK, COUNTY OF Erie
Justice Court ........ County of Erie ......... ss.:

hereby certify that the above is a correct Transcript from the Docket of Judgments in my office.
IN TESTIMONY WHEREOF, I have hereunto set my name *(and affixed my official seal) this 25th
day of October .........., 20 12

........................................ (*Clerk, Judge or Justice) of the ........................

........................................ (*Clerk, ........................)

*Strike out unnecessary words

D
100-1

ERIE COUNTY CLERK'S OFFICE



County Clerk's Recording Page

Return to:

Party 1:
MJ PROPERTIES 5 LLC

Party 2:
FIRST NIAGARA BANK NA

**Recording Fees:**

Book Type: Q  Book: 251  Page: 1781
Page Count:    7
Doc Type:      JUDGMENT ROLL
Rec Date:      09/04/2012
Rec Time:      11:11:15 AM
Control #:     2012198683
UserID:        dak
Trans #:       12136315
Document Sequence Number
   I 2011600951

| Fee 1 | $0.00 |
|-------|-------|

**Consideration Amount:    169909.92**

| | |
|---|---|
| BASIC MT | $0.00 |
| SONYMA MT | $0.00 |
| ADDL MT/NFTA | $0.00 |
| SP MT/M-RAIL | $0.00 |
| NY STATE TT | $0.00 |
| ROAD FUND TT | $0.00 |

**Total: $0.00**

STATE OF NEW YORK
ERIE COUNTY CLERK'S OFFICE

COURT DOCUMENT SCANNED TO CREATE ELECTRONIC RECORD

        Christopher L. Jacobs
        County Clerk

At an IAS Term of the New York Supreme
Court, County of Erie, held at the Erie
County Hall, 25 Delaware Avenue, Buffalo,
New York on November 22, 2011

PRESENT: HON. JOHN L. MICHALSKI, A.J.S.C.
Acting Supreme Court Justice

STATE OF NEW YORK
SUPREME COURT : COUNTY OF ERIE

---

**FIRST NIAGARA BANK, N.A.,**

Index No.: 1F2011600951

Plaintiff,

vs.

Hon. John L. Michalski, A.J.S.C.
IAS Justice Assigned

**MJ PROPERTIES 5, LLC, BELLA DAY SPA, LLC,
JOHN H. WISHMAN, MARY FRANCES WISHMAN,
LYON FINANCIAL SERVICES, INC. D/B/A US BANCORP
MANIFEST FUNDING SERVICES,
FINANCIAL PACIFIC LEASING, LLC,
US BANCORP, LEAF FUNDING, INC.,
PENTECH FINANCIAL SERVICES, INC., WELLS
FARGO BANK, N.A., BANK OF AMERICA N.A.
COMMERCIAL MANAGEMENT AGENCY,
STATE TAX COMMISSION OF THE STATE
OF NEW YORK, PEOPLE OF THE STATE OF
NEW YORK,**

Mortgaged Premises:
84 Lake Street
Hamburg, New York

Defendants.

ERIE COUNTY CLERK'S OFFICE
2011 NOV 29 PM 12: 06
FILED

---

**ORDER CONFIRMING REFEREE'S REPORT OF SALE
AND GRANTING DEFICIENCY JUDGMENT
AND
DEFICIENCY JUDGMENT**

Plaintiff, First Niagara Bank, N.A. ("Plaintiff"), moved this Court by Notice of

Motion dated October 27, 2011 ("the Motion") for an order: a) ratifying and confirming the

Referee's Report of Sale sworn to by Robert G. DiVita, Esq. on September 29, 2011 and

filed in the above-entitled action on October 6, 2011, b) making the foreclosure sale

described in the Referee's Report of Sale absolute and binding forever, and c) granting a

2uc-4          JU

REC OF
104-6-011

deficiency judgment against defendants MJ Properties 5, LLC, Bella Day Spa, LLC, John H. Wishman and Mary Frances Wishman (collectively, "the Defendants"). The Motion duly came on to be heard by this Court on November 22, 2011.

The Court has read and filed the said Notice of Motion and the affidavit submitted in support thereof sworn to by Franklin W. Heller, Esq. on October 27, 2011 and the exhibits attached thereto, including the restricted appraisal report prepared by Klauk, Lloyd & Wilhelm, Inc. in support of the Motion (Exhibit D to Mr. Heller's affidavit), the Referee's Report of Sale sworn to by Robert G. DiVita, Esq., the Referee appointed by the Partial Judgment of Foreclosure and Sale granted in the Action on August 23, 2011; and an affidavit sworn to by Mr. Heller on November 11, 2011 establishing due and timely service of the Motion on each of the Defendants.

On November 22, 2011, the Court heard Damon Morey LLP (Franklin W. Heller, Esq., of counsel) in support of the Motion. Although duly and timely served, none of the Defendants appeared in person or by counsel in opposition to the Motion, nor did any of the Defendants submit an affidavit in opposition to the Motion.

Based upon the foregoing, the Court has determined that the Motion was duly and timely made and served on defendants MJ Properties 5, LLC, Bella Day Spa, LLC, John H. Wishman and Mary Frances Wishman within ninety (90) days of delivery of the Referee's deed of conveyance to First Niagara Realty, Inc., as purchaser. The Court is satisfied that the sale price of the mortgaged premises upon the Referee's sale on September 22, 2011 as set forth in Mr. DiVita's Report of Sale was $199,000.00, and that the fair market value of the mortgaged premises on that date was not greater than $247,000.

2

NOW therefore, on motion of Damon Morey LLP (Franklin W. Heller, Esq., of counsel), it is hereby:

ORDERED, that the Referee's Report of Sale of Robert G. DiVita, Esq. be, and the same hereby is in all respects, ratified and confirmed, and it is further

ORDERED, that the sale described in the Referee's Report of Sale be and hereby is made absolute and binding forever; and it is further

ORDERED, that the fair market value of the mortgaged premises on the date of the foreclosure sale, as evidenced by the restricted appraisal report of Klauk, Lloyd & Wilhelm, Inc., was not greater than $247,000; and it is further

ORDERED, that based upon the Referee's Report of Sale, MJ Properties 5, LLC, Bella Day Spa, LLC, John H. Wishman and Mary Frances Wishman are entitled the benefit of the fair market value of the mortgaged premises upon the sale, being $247,000; and it is further

ORDERED, ADJUDGED AND DECREED, that Plaintiff be and hereby is granted a deficiency judgment against MJ Properties 5, LLC, Bella Day Spa, LLC, John H. Wishman and Mary Frances Wishman, jointly and severally, in the sum of $167,351.80, being the difference between $414,351.80 and $247,000, plus interest on $167,351.80 from September 22, 2011 at the New York judgment rate of nine percent (9%) per annum; and it is further

ORDERED, ADJUDGED AND DECREED, that Plaintiff, whose address is 726 Exchange Street, Suite 900, Buffalo, New York 14210, be and hereby is awarded a deficiency judgment against each of the following defendants, jointly and severally: MJ Properties 5, LLC, having a business address at 6425 Engle Drive, Hamburg, New York

3

14075, Bella Day Spa, LLC, having a business address at 6425 Engle Drive, Hamburg, New York 14075, John H. Wishman, whose residence address is 6425 Engle Drive, Hamburg, New York 14075, and Mary Frances Wishman, whose residence address at 6425 Engle Drive, Hamburg, New York 14075, in the total sum of **$169,909.92** (being the sum of $167,351.80 plus interest thereon of $2,558.12 calculated at the New York judgment rate of nine percent (9%) per annum from September 22, 2011 to November 22, 2011 [$41.26 per day x 62 days]); and it is further

**ORDERED, ADJUDGED AND DECREED**, that the Clerk of the County of Erie enter and docket a deficiency judgment in the total amount of $169,909.92 against each of the four above-named defendants at their said respective address, and that Plaintiff is hereby awarded execution and all other enforcement remedies afforded by New York law with respect thereto.

HON. JOHN L. MICHALSKI, J.S.C.
Acting Supreme Court Justice

**ENTER**

GRANTED
NOV 2 8 2011

#1632526

COURT CLERK

*Judgement Signed and Filed this* 4 *Day of* September 2012
COUNTY CLERK

4

At an IAS Term of the New York State
Supreme Court, Erie County, Part 18, 3rd Floor,
25 Delaware Avenue, Buffalo, NY on August
_15_, 2012.

Presiding Justice: Hon. John L. Michalski, A.J.S.C.

STATE OF NEW YORK
SUPREME COURT : COUNTY OF ERIE

_____

FIRST NIAGARA BANK, N.A.,
                       Plaintiff,

vs.

MJ PROPERTIES 5, LLC, BELLA DAY
SPA, LLC, JOHN H. WISHMAN, MARY
FRANCES WISHMAN, LYON FINANCIAL
SERVICES, INC. D/B/A US BANCORP
MANIFEST FUNDING SERVICES,
FINANCIAL PACIFIC LEASING, LLC,
US BANCORP, LEAF FUNDING, INC.,
PENTECH FINANCIAL SERVICES, INC., WELLS
FARGO BANK, N.A., BANK OF AMERICA N.A.
COMMERCIAL MANAGEMENT AGENCY,
STATE TAX COMMISSION OF THE STATE
OF NEW YORK, PEOPLE OF THE STATE OF
NEW YORK,
                       Defendants.

_____

Index No.: RE2011600951

**Mortgaged Premises:**
84 Lake Street
Hamburg, New York

### ORDER DIRECTING DOCKETING AND RECORDING OF JUDGMENT AND DEFICIENCY JUDGMENT _NUNC PRO TUNC_

    Upon application of plaintiff/judgment creditor First Niagara Bank, N.A., and upon all

prior proceedings had to date in the above-entitled action, and this Court having found that as a

result of a clerical error the "Order Confirming Referee's Report of Sale and Granting

Deficiency Judgment and Deficiency Judgment" ("Deficiency Judgment") which the Court

granted in favor of First Niagara Bank, N.A. in the action on November 28, 2011, and was filed

in the office of the Erie County Clerk on November 29, 2011, was not duly entered and docketed

1

24C-2

Book255/Page4944

Book251/Page1786

Page 2 of 3

Page 6 of 7

as a judgment, as was therein directed, in the records of the Erie County Clerk on November 29, 2011; it is hereby

ORDERED, ADJUDGED and DECREED that the Erie County Clerk is hereby directed to enter and docket the Deficiency Judgment *nunc pro tunc* to November 29, 2011 as a judgment; and it is further

ORDERED, ADJUDGED and DECREED that the Deficiency Judgment shall have the same priority and effect for all purposes as if it had been entered and docketed with the Erie County Clerk on November 29, 2011.

GRANTED:

Hon. John L. Michalski, A.J.S.C.

Doc #1723295.1

GRANTED
AUG 1 5 2012
*Laura Rodgers*
COURT CLERK

2

Book255/Page4945

Book251/Page1787

Page 3 of 3

Page 7 of 7



## ERIE COUNTY CLERK'S OFFICE

County Clerk's Recording Page

Return to:

Party 1:
WISHMAN JOHN H

Party 2:
FIRST NIAGARA BANK NA

Recording Fees:

| Fee 1 | $0.00 |
| STATE COURT $45 FEE | $45.00 |

Book Type: Q  Book: 236  Page: 32
Page Count:    3
Doc Type:      JUDGMENT/MOTION
Rec Date:      05/13/2011
Rec Tim:       12:09:32 PM
Control #:     2011100352
UserID:        Kim
Trans #:       11069439
Document Sequence Number
 I 2011600919

Consideration Amount:    83403.37

| BASIC | 0 |
| SONYMA | 0 |
| ADDL | 0 |
| NFTA MT | $0.00 |
| TRANSFER | $0.00 |
| NFTA TT | $0.00 |

**Total: $45.00**

STATE OF NEW YORK
ERIE COUNTY CLERK'S OFFICE

COURT DOCUMENT SCANNED TO CREATE ELECTRONIC RECORD

Kathleen Hochul
County Clerk

STATE OF NEW YORK
SUPREME COURT :: COUNTY OF ERIE

FIRST NIAGARA BANK, N.A.,
                    Plaintiff,

                                    STATEMENT FOR DEFAULT JUDGMENT
                                    AGAINST JOHN H. WISHMAN AND
                                    MARY FRANCES WISHMAN A/K/A
                                    MARY FRAN WISHMAN, JOINTLY AND SEVERALLY,
                                    AND ORDER OF SEVERANCE OF
                                    REMAINING DEFENDANTS

vs.

BELLA DAY SPA, LLC,
JOHN H. WISHMAN,
MARY FRANCES WISHMAN a/k/a                    Index No.: 2011600919
MARY FRAN WISHMAN,
KARA E. KLAASEZ,
                    Defendants.

Amount claimed in Complaint against defendants John H. Wishman and
Mary Frances Wishman a/k/a Mary Fran Wishman, jointly and severally

| | | |
|---|---|---|
| **Amount Claimed in First Cause of Action** | $ | 69,159.39 |
| Interest on $68,500 principal balance of obligation alleged therein at the rate of Plaintiff's prime lending rate plus six percent (P+6%) per annum from 11/19/10 to 5/13/11 | | 3,768.16 |
| **Amount claimed in Fifth Cause of Action** | $ | 2,732.41 |
| Interest on $2,482.81 principal balance of obligation alleged therein at the rate of Plaintiff's prime lending rate plus two percent (P+2%) per annum from 11/19/10 to 5/13/11 | | 63.36 |
| **Amount Claimed in Sixth Cause of Action** | $ | 1,020.39 |
| Interest on $906.48 accelerated payoff balance at the rate of 18% per annum from 2/16/11 to 5/13/11 | | 39.15 |
| **Amount Claimed in Eighth Cause of Action** | $ | 5,623.49 |
| Interest on $4,979.13 accelerated payoff balance at the rate of 18% per annum from 2/16/11 to 5/13/11 | | 214.02 |
| Total | $ | 82,620.37 |

| | | |
|---|---|---|
| Costs by Statute | $ 200.00 | |
| Service of Summons and Complaint | 88.00 | |
| Transcripts and Docketing | -0- | |
| Sheriff's Fees on Execution    ($120 each) | 240.00 | |
| Fee for Index Number . | 210.00 | |
| Clerk's Fee for filing default judgment | 45.00 | |
| Costs taxed at | $ | 783.00 |
| Total | $ | 83,403.37 |

STATE OF NEW YORK, COUNTY OF ERIE                    ATTORNEY'S AFFIRMATION

       The undersigned attorney-at-law of the State of New York, who is a partner of Damon Morey LLP, attorneys for the plaintiff in the above-entitled action, states that the disbursements above specified have been or will necessarily be made or incurred therein and are reasonable in amount, that the time of defendants John H. Wishman and Mary Frances Wishman a/k/a Mary Fran Wishman to appear and answer plaintiff's Complaint has expired, and that said defendants did not appear or answer the Complaint, and that said defendants are in default in the action.

       The undersigned affirms this statement to be true under the penalties of perjury.

Dated:    May 13, 2011

                                    Franklin W. Heller

Service of the Summons and Complaint in this action on defendants John H. Wishman and Mary Frances Wishman a/k/a Mary Fran Wishman having been effected on March 26, 2011 by service pursuant to §308(4) of the New York Civil Practice Law and Rules, the affidavits of such service having been filed in the office of the Erie County Clerk on March 29, 2011, and more than 30 days have elapsed since March 29, 2011; and an additional copy of the Summons having been mailed to the defendants on April 1, 2011, in accordance with CPLR §3215(g)(3)(i); the affidavits of such mailing having been filed in the said Clerk's office on April 5, 2011, and more than 20 days having elapsed since that date, and the said defendants having wholly defaulted in the action,

NOW, ON MOTION OF DAMON MOREY LLP, attorneys for the plaintiff, it is,

ADJUDGED, that, plaintiff First Niagara Bank, N.A., having offices at 726 Exchange Street, Buffalo, New York 14210, does recover of defendants John H. Wishman and Mary Frances Wishman a/k/a Mary Fran Wishman, jointly and severally, residing at 6425 Engle Drive, Hamburg, New York 14075, the sum of $82,620.37, together with $783.00 costs and disbursements, amounting in all to the sum of $83,403.37 .

### ORDER OF THE CLERK PURSUANT TO CPLR 3215(a):

Judgment having been applied for against less than all of the defendants in the action and the action continuing against defendants Bella Day Spa, LLC and Kara E. Klaasez, it is hereby ORDERED that this action be severed as against defendants Bella Day Spa, LLC and Kara E. Klaasez.

JUDGMENT entered on

Clerk

Judgement Signed and Filed this 13 Day of May 2011

Kathleen C. Hochul COUNTY CLERK

#1581293

ERIE COUNTY CLERK'S OFFICE



County Clerk's Recording Page

Return to:

Party 1:
PARTIAL SATISFACTION

Party 2:

**Book Type:** K  **Book:** 203  **Page:** 7960
**Page Count:** 2
**Doc Type:** PART SATIS JUDG
**Rec Date:** 08/08/2011
**Rec Tim:** 03:32:49 PM
**Control #:** 2011160877
**UserID:** Dorothy
**Receipt#:** 11113429
Document Sequence Number

Recording Fees:

| Fee 1 | $0.00 |

| Consideration Amount: | 6995.04 |
|---|---|
| BASIC | 0 |
| SONYMA | 0 |
| ADDL | 0 |
| NFTA MT | $0.00 |
| TRANSFER | $0.00 |
| NFTA TT | $0.00 |

**Total: $0.00**

STATE OF NEW YORK
ERIE COUNTY CLERK'S OFFICE

COURT DOCUMENT SCANNED TO CREATE ELECTRONIC RECORD

John J. Crangle, Jr.
Interim    CLERK FOR ERIE COUNTY SUPREME - COUNTY COURTS

Book203/Page7960                    Page 1 of 2

160877

STATE OF NEW YORK
SUPREME COURT :: COUNTY OF ERIE

Q 236/32

| | |
|---|---|
| **FIRST NIAGARA BANK, N.A.,** | **PARTIAL SATISFACTION OF JUDGMENT** |
| Plaintiff, | |
| vs. | Index No.: EF2011600919 |
| **BELLA DAY SPA, LLC, JOHN H. WISHMAN, MARY FRANCES WISHMAN a/k/a MARY FRAN WISHMAN, KARA E. KLAASEZ,** | |
| Defendants. | |

**WHEREAS,** a judgment was entered in the above entitled action on May 13, 2011 in the Supreme Court of Erie County, in favor of plaintiff First Niagara Bank, N.A. and against **John H. Wishman** and **Mary Frances Wishman a/k/a Mary Fran Wishman**, for the sum of $83,403.37, which judgment was docketed on May 13, 2011 in the office of the Clerk of the County of Erie, and said judgment was *partially* paid in the sum of $6,995.04 on June 21, 2011, and the sum of $77,210.37 remained unpaid as of that date.

**THEREFORE,** *partial* satisfaction of said judgment in the sum of $6,995.04 is hereby acknowledged, and the said Clerks are hereby authorized and directed to make an entry of said *partial* satisfaction on the docket of said judgment. Interest will continue to accrue at the statutory rate on the $77,210.37 balance of the judgment.

Dated: Buffalo, New York
       August 8, 2011

DAMON MOREY LLP

By: _Thaddeus W. Heller_
Franklin W. Heller, Esq.
Attorneys for Plaintiff
*First Niagara Bank, N.A.*
The Avant Bldg, Suite 1200
200 Delaware Avenue
Buffalo, New York  14202-2150
Telephone: (716) 856-5500

STATE OF NEW YORK    )
COUNTY OF ERIE       ) SS:

On August 8, 2011, before me personally came Franklin W. Heller, personally known to me and to me known to be a member of the law firm of Damon Morey LLP, attorneys of record for the plaintiff herein, and to me known to be the person described in and who executed the foregoing satisfaction of judgment in the firm name of Damon Morey LLP and acknowledged that he executed same as the act and deed of said firm for the uses and purposes therein mentioned.

_Colleen M. Snyder_
Notary Public

COLLEEN M. SNYDER
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01MA6151529
Qualified in Erie County
Commission Expires August 21, 2014

#1607676

128-1

ERIE COUNTY CLERK'S OFFICE



County Clerk's Recording Page

Return to:

Party 1:
BELLA DAY SPA LLC

Party 2:
FINANCIAL PACIFIC LEASING LLC

**Recording Fees:**

| | |
|---|---|
| Fee 1 | $0.00 |

Book Type: **Q** Book: **243** Page: **4867**
Page Count:    4
Doc Type:      JUDGMENT ROLL
Rec Date:      01/12/2012
Rec Tim:       10:06:20 AM
Control #:     2012009403
UserID:        dak
Receipt#:        12005814
Document Sequence Number
   I 2010600512

**Consideration Amount:**    9196.67

| | |
|---|---|
| BASIC | 0 |
| SONYMA | 0 |
| ADDL | 0 |
| NFTA MT | $0.00 |
| TRANSFER | $0.00 |
| NFTA TT | $0.00 |

**Total: $0.00**

STATE OF NEW YORK
ERIE COUNTY CLERK'S OFFICE

COURT DOCUMENT SCANNED TO CREATE ELECTRONIC RECORD

Christopher L. Jacobs
CLERK FOR ERIE COUNTY SUPREME - COUNTY COURTS

Book243/Page4867                    Page 1 of 4

At the Supreme Court of the State of New
York held in and for the County of Erie at
the Courthouse located at 50 Delaware
Avenue, Buffalo, New York 10013 on
~~November~~ _December_ _5_ , 2011

P R E S E N T :

HONORABLE JUDGE DONNA M. SIWEK

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

FINANCIAL PACIFIC LEASING, LLC AS ASSIGNEE       *l 2010-600512*
OF FIVE POINT CAPITAL                           ~~Index No. 117938/09~~
                        Plaintiff,
-against-
                                              ORDER AND JUDGMENT

BELLA DAY SPA LLC D/B/A BELLA DAY SPA, LLC
AND JOHN H/ WISHMAN AND MARY WISHMAN

                Defendants.

Plaintiff, having duly moved for an Order pursuant to Civil Practice Law and Rules

("C.P.L.R.") §3212, seeking summary judgment in favor of plaintiff, Financial Pacific Leasing,

LLC as assignee of Five Point Capital  ("Plaintiff") and against defendants, Bella Day Spa LLC

d/b/a Bella Day Spa, LLC and John H. Wishman and Mary Wishman (hereinafter collectively

referred to as "Defendants"), and said motion having regularly come on to be heard before the

Honorable Donna M. Siwek of the Supreme Court of the State of New York, held at the

Courthouse thereof, located at 50 Delaware Avenue, Buffalo, NY 14202 on the June 23, 2011

and upon reading and filing the Notice of Motion dated April 5, 2011, Affirmation of Jaclyn

Thomas dated April 5, 2011 and the Affidavit of Dawn Pierce sworn to on the 16th day of

*104-3-DK*

February, 2011 and the defendants having submitted no opposition and due deliberation having

been had thereon; and upon the decision of the Honorable Donna M. Siwek dated June 23, 2011

granting the motion on default, and

NOW, on the motion of Platzer, Swergold, Karlin, Levine, Goldberg & Jaslow, LLP,

attorneys for Plaintiff and the decision of this Court dated June 23, 2011; it is

ORDERED, that the relief sought within Plaintiff's Complaint is granted; and it is

further,

ORDERED, that a default judgment is granted in favor of plaintiff, in the principal

amount of $32,270.46, with interest at 18% per annum from June 15, 2010 through and

including the date of entry of judgment in the sum of $ 8551.67 , plus costs and as taxed by the

Clerk of the Court in the sum of $ 645.00 , all totaling the sum of $ 9196.67 ; and it is

further,

ORDERED, ADJUDGED AND DECREED, that the Clerk of the Court is hereby

directed to enter the Judgment in favor of the Plaintiff, Financial Pacific Leasing, LLC as

assignee of Five Point Capital with offices located at 3455-344th Way, Suite 300, Auburn,

Washington 98001 and against the defendants, Bella Day Spa LLC d/b/a Bella Day Spa, LLC

located at 84 Lake Street, Hamburg, New York 14075 and John H. Wishman and Mary

Wishman, each residing at 6425 Engel Drive, Hamburg, New York 14075, in the principal

amount of $32,270.46, with interest at 18% per annum from June 15, 2010 through and including

the date of entry of judgment in the sum of $ 8551.67 and disbursements , plus costs and as taxed by the Clerk of

the Court in the sum of $ 805 , all totaling the sum of $ 9196.67 , and that the Plaintiff

have execution thereof.

**GRANTED** ORDERED:

DEC 0 5 2011

BY _Michele Carter_
MICHELE CARTER
COURT CLERK

_Donna M. Siwek_

Hon. Donna M. Siwek, J.S.C.

Judgement Signed and Filed this  Day of February 2012
COUNTY CLERK

SUPREME   COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

| FINANCIAL PACIFIC LEASING, LLC AS ASSIGNEE OF FIVE POINT CAPITAL | Index No.600512/10 |
| --- | --- |
| Plaintiff(s), | BILL OF COSTS |
| -against- | |
| BELLA DAY SPA LLC D/B/A BELLA DAY SPA, LLC AND JOHN H. WISHMAN AND MARY WISHMAN Defendant(s). | |

| COSTS | | DISBURSEMENTS | |
| --- | --- | --- | --- |
| Costs before note of issue ............... CPLR §8201 subd. 1 | $  200.00 | Fee for index number CPLR §8018(a) ........................................... | $  210.00 |
| Costs after note of issue .................. CPLR §8201 subd. 2 | $     0.00 | Referee's fees CPLR §8301(a)(1), §8003(a)..................................... | $     0.00 |
| | | Commissioner's compensation CPLR §8301(a)(2)........................... | $     0.00 |
| Trial of issue ................................. CPLR §8201 subd. 3 | $     0.00 | Clerk's fee, filing notice of pend. Or attach CPLR §8021(a)(10) ..... | $     0.00 |
| | | Entering and docketing judgment CPLR §8301(a)(7), 8016(a)(2)... | $     0.00 |
| Allowance by statute...................... CPLR §8302(a), (b) | $     0.00 | Paid for searches CPLR §8301(a)(10)........................................... | $     0.00 |
| | | Affidavits and acknowledgements CPLR §8009.............................. | $     0.00 |
| Additional allowance ...................... CPLR §8302 (d) | $     0.00 | Serve copy of summons & complaint CPLR §8011(h)(1), 8301(d). | $   55.00 |
| | | Request for judicial intervention ................................................... | $   95.00 |
| Motion costs.................................. CPLR §8202 | $     0.00 | Note of issue CPLR §8020(a)........................................................ | $     0.00 |
| | | Paid referee's report CPLR §8301(a)(12)....................................... | $     0.00 |
| Appeal to Appellate Term............... CPLR §8203(b) | $     0.00 | Certified copies of papers CPLR §8301(a)(4) ................................ | $     0.00 |
| | | Satisfaction piece CPLR §5020(a), §8021.................................... | $     0.00 |
| Appeal to Appellate Division.......... CPLR §8203 (a) | $     0.00 | Transcripts and filing CPLR §8021 .............................................. | $     0.00 |
| | | Certified copy of judgment CPLR §8021 ...................................... | $     0.00 |
| Appeal to Court of Appeals ............ CPLR §8204 | $     0.00 | Postage CPLR §8301(a)(12)......................................................... | $     0.00 |
| | | Jury fee CPLR §8020(c).............................................................. | $     0.00 |
| Costs upon frivolous claims ............ CPLR §8303-a | $     0.00 | Stenographers' fees CPLR §8002, 8301 ....................................... | $     0.00 |
| | | Sheriff's fees on execution CPLR §8011, 8012 ............................ | $   40.00 |
| | | Sheriff's fees, attachment, arrest, etc. CPLR §8011...................... | $     0.00 |
| | | Paid printing cases CPLR §8301(a)(6)......................................... | $     0.00 |
| | | Clerk's fees Court of Appeals CPLR §8301(a)(12) ....................... | $     0.00 |
| | | Paid copies of papers CPLR §8016(a)(4) ...................................... | $     0.00 |
| | | Motion expenses CPLR §8301(b)................................................. | $   45.00 |
| | | Fees for publication CPLR §8301(a)(3) ........................................ | $     0.00 |
| | | Serving subpoena CPLR §8011(h)(1), 8301(d) ............................ | $     0.00 |
| | | Paid for search CPLR §8301(a)(10) ............................................. | $     0.00 |
| | | Misc. fees (describe)_____ ........................................... | $     0.00 |
| | | Other (describe)_____ ................................................ | $     0.00 |
| | | Referee's report......................................................................... | $     0.00 |
| | | Attendance of witness(es) CPLR §8001(a)(b)(c), 8301(a)(1) ......... | $     0.00 |
| | | AMOUNT: | $  445.00 |
| COSTS.......................................... | $200.00 | | |
| DISBURSEMENTS......................... | $445.00 | | |
| TOTAL ........................................ | $645.00 | | |

**CLOSED**

# U.S. Bankruptcy Court
## Western District of New York (Buffalo)
### Bankruptcy Petition #: 1-03-12027-CLB

|  |  |
|---|---|
| | *Date filed:* 03/25/2003 |
| *Assigned to:* Hon. Carl L. Bucki | *Date terminated:* 07/21/2003 |
| Chapter 7 | *Date discharged:* 07/02/2003 |
| Voluntary | *Deadline for objecting to* 06/30/2003 |
| No asset | *discharge:* 00:00 |

*Debtor*
**John H. Wishman**
4835 Webster Rd.
Fredonia, NY 14063
CHAUTAUQUA-NY
SSN / ITIN: xxx-xx-3635

represented by **Lydia V. Evans**
Evans & Evans Law Office
131 Temple Street
Fredonia, NY 14063
(716) 679-7200
Email: evans@netsync.net

*Trustee*
**Thomas A. Dorey**
Box 247
Lakewood, NY 14750
(716) 763-7023

*U.S. Trustee*
**U.S. Trustee's Office,**
42 Delaware Ave.
Suite 100
Buffalo, NY 14202
(716) 551-5541
*TERMINATED: 09/30/2004*

| Filing Date | # | Docket Text |
|---|---|---|
| 03/25/2003 | 1 | Voluntary petition; [1-1] all schedules and statements. (RP) (Entered: 03/25/2003) |
| 03/25/2003 | | Real property scheduled: 4835 Webster Road, Fredonia, NY 14063. (RP) (Entered: 03/25/2003) |
| 03/25/2003 | 2 | Filing fee paid; Receipt No.: 11060655 [2-1] (RP) (Entered: 03/26/2003) |
| 03/27/2003 | 3 | Notice of Sec. 341 Meeting Meeting set for 11:15 5/1/03 at Mayville Complaints re discharge due by: 6/30/03 ; Thomas Dorey appointed trustee. (RP) (Entered: 03/27/2003) |

| | | |
|---|---|---|
| 03/29/2003 | 4 | Court's BNC Certificate of Service re: 341 notice [3-1] . # of Notices: 49 were sent. (DBA) (Entered: 03/31/2003) |
| 04/11/2003 | 5 | Letter to debtor's attorney re returned 341 notices; 1 returns; Dawn Keller, 87 Main Street, Apt. #4, Depew, NY 14043. [5-1] (CJW) (Entered: 04/11/2003) |
| 04/22/2003 | 6 | Affidavit of Mailing re: returned notices [5-1] [6-1] (JMR) (Entered: 04/22/2003) |
| 05/01/2003 | 7 | MINUTES [7-1] 341 Mtg. - Debtor(s) sworn,examined; MC; Tr, db atty appeared. (JMR) (Entered: 05/09/2003) |
| 05/09/2003 | 8 | Trustee's report of no assets (JMR) (Entered: 05/09/2003) |
| 05/22/2003 | 9 | Amendment [9-1] re: Schedule F adding creditors; reciept #11062749. (JMR) (Entered: 05/23/2003) |
| 07/02/2003 | 10 | Order Discharging Debtor Signed on 7/2/2003 (RE: related document(s) 3 Meeting of Creditors). (Rodriguez, J.) (Entered: 07/02/2003) |
| 07/04/2003 | 11 | BNC Certificate of Mailing. Service Date 07/04/2003. (Related Doc # 10) (Admin.) (Entered: 07/05/2003) |
| 07/21/2003 | | It appearing to the Court that the Trustee in the above-entitled case has filed a Report of No Distribution and that the said Trustee has performed all other duties required of the Trustee in the administration of said case; now, therefore, IT IS ORDERED that said report be and is hereby approved and the case is closed; and the Trustee is discharged from and relieved of his/her trust. Paul R. Warren Clerk Signed on 7/21/2003. (Rodriguez, J.) (Entered: 07/21/2003) |
| 07/21/2003 | | Bankruptcy Case Closed (Rodriguez, J.) (Entered: 07/21/2003) |
| 08/13/2003 | | Trustee Fee Paid. P1# 03465500766. (Bibbs, D.) (Entered: 08/13/2003) |

| **PACER Service Center** |
|---|
| **Transaction Receipt** |
| |

| 11/17/2015 13:45:33 | | | |
|---|---|---|---|
| **PACER Login:** | fa0117:2546803:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1-03-12027-CLB Fil or Ent: filed Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

**CLOSED**

# U.S. Bankruptcy Court
## Western District of New York (Buffalo)
## Adversary Proceeding #: 1-98-01211-MJK

*Assigned to:* Hon. Michael J. Kaplan                *Date Filed:* 07/15/98
*Lead BK Case:* 98-13272                              *Date Terminated:* 10/26/99
*Lead BK Title:* Christine M. Ohnmeiss
*Lead BK Chapter:* 7
*Demand:*

*Nature[s] of Suit:* 454 Recover Money/Property

### Plaintiff

**William E. Lawson,** *Trustee in Bankruptcy for*        represented by **William E. Lawson**
***Christine Ohnmeiss***                                  730 Convention Tower
730 Convention Tower                                      43 Court Street
43 Court Street                                           Buffalo, NY 14202
Buffalo, NY 14202                                        (716) 854-3015
(716) 854-3015                                           Email: lawson@aarondautch.com
                                                         *LEAD ATTORNEY*

V.

### Defendant

**John H. Wishman**                                      represented by **John K. Jordan**
34 Lincoln Street                                        107 Delaware Ave.Ste. 1580
Angola, NY 14006                                         Buffalo, NY (14202
                                                         716-842-2558
                                                         Fax : 716-842-2580
                                                         Email: jjordan123@adelphia.net
                                                         *LEAD ATTORNEY*

| Filing Date | # | Docket Text |
|---|---|---|
| 07/15/1998 | 1 | Complaint filed to (AP Dkt. 98-1211) William E. Lawson Trustee in Bankruptcy for Christine Ohnmeiss vs. John H. Wishman Recover money or property [1-1] (PH) (Entered: 07/15/1998) |
| 07/15/1998 | | |

|  |  | Filing fee deferred; payable from estate if any estate realized; Amount due: $150.00. (PH) (Entered: 07/15/1998) |
| --- | --- | --- |
| 07/15/1998 | 2 | Summons issued. [2-1] Answer due: 8/14/98 for John H. Wishman (PH) (Entered: 07/15/1998) |
| 07/16/1998 | 3 | Affidavit of Mailing re: summons [2-1], complaint Recover money or property [1-1] [3-1] (PH) (Entered: 07/16/1998) |
| 08/20/1998 | 4 | Answer filed on behalf of John H. Wishman [4-1] by John K. Jordan (PH) (Entered: 08/20/1998) |
| 08/25/1998 | 5 | Notice of Pre-trial Conference: [5-1] 10:00 9/10/98 at Part I; w. Lawson, J. Jordan (PH) (Entered: 08/25/1998) |
| 09/22/1998 | 6 | Scheduling order [6-1] Set for Calendar Call: 11:30 11/25/98 at Part I; voluntary discovery only; W. Lawson, J. Jordan (PH) (Entered: 09/22/1998) |
| 11/25/1998 | 7 | MINUTES: CC [7-1] Adjourned calendar call: 11:30 12/16/98 at Part I; W. Lawson (PH) (Entered: 12/01/1998) |
| 12/16/1998 | 8 | MINUTES: CC: [8-1] Set for Calendar Call: 11:30 2/17/99 at Part I Courtroom; W. Lawson (JF) (Entered: 12/21/1998) |
| 02/17/1999 | 9 | MINUTES: CC: [9-1] Adjourned calendar call: 11:30 4/21/99 at Part I Courtroom; amended answer to be filed within 1 week; set for pre-trial; W. Lawson, J. Jordan (JF) (Entered: 02/19/1999) |
| 02/22/1999 | 10 | Notice of Pre-trial Conference: [10-1] 10:00 3/5/99 at Part I Courtroom (JF) (Entered: 02/22/1999) |
| 02/23/1999 | 11 | Amended Answer filed on behalf of John H. Wishman [11-1] by John Jordan (PH) (Entered: 02/23/1999) |
| 02/25/1999 | 12 | Notice of Pre-trial Conference: [12-1] 9:00 3/19/99 at Part I Courtroom; W. Lawson, J.Jordan (PH) (Entered: 02/25/1999) |
| 03/22/1999 | 13 | Scheduling order [13-1] Set for Calendar Call: 11:30 7/21/99 at Part I Courtroom; trustee will have Clerk's Office send asset notice. If that doesn't result in settlement then the Section 544(a)(3) issue will require briefs; voluntary discovery only (PH) (Entered: 03/22/1999) |
| 04/21/1999 | 14 | MINUTES: CC [14-1] Adjourned calendar call: 11:30 7/21/99 at Part I Courtroom (PH) (Entered: 04/21/1999) |

| 07/21/1999 | 15 | MINUTES: cc: [15-1] Set for Calendar Call: 11:30 8/25/99 at Part I Courtroom; J. Jordan, W. Lawson (JF) (Entered: 07/23/1999) |
| 08/25/1999 | 16 | MINUTES: Calendar Call held 8/25/99; call Lawson [16-1] (JF) (Entered: 08/26/1999) |
| 08/26/1999 | 17 | Order entered setting September 29, 1999 for the parties to this action to file Briefs with the Court; [17-1] (JF) (Entered: 08/26/1999) |
| 09/20/1999 | 18 | Motion re: to compromise controversy w/ John H. Wishman in the amount of $25,000.00 [18-1] Filed by: William E. Lawson (PH) (Entered: 09/20/1999) |
| 09/21/1999 | 19 | Hearing set [19-1] re: motion to compromise controversy w/ John H. Wishman in the amount of $25,000.00 [18-1] for 10:00 10/20/99 at Part I Courtroom (PH) (Entered: 09/21/1999) |
| 10/20/1999 | 20 | MINUTES [20-1] re: motion to compromise controversy w/ John H. Wishman in the amount of $25,000.00 - granted; W. Lawson (PH) (Entered: 10/21/1999) |
| 10/20/1999 | 21 | MINUTES: CC [21-1] settled and approved (PH) (Entered: 10/21/1999) |
| 10/26/1999 | 22 | Order [22-1] granting motion to compromise controversy w/ John H. Wishman in the amount of $25,000.00 and his withdrawal of any claims filed by him in the bankruptcy estate; [18-1] (PH) (Entered: 10/26/1999) |
| 10/26/1999 | 23 | AP Closed [23-1] (AP Dkt. 98-1211) (PH) (Entered: 10/26/1999) |

| **PACER Service Center** | | | |
| --- | --- | --- | --- |
| **Transaction Receipt** | | | |
| 11/17/2015 13:45:13 | | | |
| PACER Login: | fa0117:2546803:0 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 1-98-01211-MJK Fil or Ent: filed Doc From: 0 Doc To: 99999999 Term: included Format: html Page |

| | | | counts for documents: included |
|---|---|---|---|
| Billable Pages: | 2 | Cost: | 0.20 |

# Official Records: Document Search Results

[Search Criteria --> Enter Number l 2011603629]
Search Results: 43 Records - VERIFIED AS OF 11-06-2015 - 11/16/2015 12:37 PM

| Party Code | NoPic Data | NoPub Image | Name | Date | Type | Book Type | Book | Page | Instr# | Legal | Ref 1 | Ref 2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| D | O | O | AFFIDAVIT BY MAIL | 7/22/2011 | 24C | K | 201 | 7580 | 2011150565 | | | 2011603629 |
| D | O | O | AFFIDAVIT OF SERVICE | 7/22/2011 | 24C | K | 201 | 7574 | 2011150562 | | | 2011603629 |
| D | O | O | AFFIDAVIT OF SERVICE | 7/22/2011 | 24C | K | 201 | 7576 | 2011150563 | | | 2011603629 |
| D | O | O | AFFIDAVIT OF SERVICE | 7/22/2011 | 24C | K | 201 | 7578 | 2011150564 | | | 2011603629 |
| D | O | O | AFFIDAVIT OF SERVICE | 7/25/2011 | 24C | K | 201 | 7660 | 2011150595 | | | 2011603629 |
| D | O | O | AFFIDAVIT OF SERVICE | 7/28/2011 | 24C | K | 202 | 4331 | 2011153971 | | | 2011603629 |
| D | O | O | AFFIDAVIT OF SERVICE | 7/28/2011 | 24C | K | 202 | 4333 | 2011153972 | | | 2011603629 |
| D | O | O | AFFIDAVIT OF SERVICE | 9/21/2011 | 24C | K | 209 | 4284 | 2011191303 | | | 2011603629 |
| D | O | O | ANSWER | 8/26/2011 | 24C | K | 206 | 2464 | 2011173858 | | | 2011603629 |
| D | O | O | CONSENT TO CHANGE ATTORNEY | 12/5/2011 | 24C | K | 219 | 270 | 2012242818 | | | 2011603629 |
| D | O | O | DITECH.COM AKA | 7/18/2011 | 212S | K | 200 | 8709 | 2011146337 | | | 2011603629 |
| D | O | O | DITECH.COM AKA | 11/13/2015 | 351 | L | 420 | 2763 | 2015233736 | HMB 18 9/8 S3 C1761 | | 2011603629 |
| D | O | O | DITECH.COM AKA | 7/18/2011 | 212S | K | 200 | 8709 | 2011146337 | | | 2011603629 |
| D | O | O | FIRST NIAGARA BANK NA | 7/18/2011 | 351 | L | 415 | 4001 | 2011146338 | HMB 18 9/8 S3 C1761 | | 2011603629 |
| D | O | O | FIRST NIAGARA BANK NA | 11/13/2015 | 351 | L | 420 | 2763 | 2015233736 | HMB 18 9/8 S3 C1761 | | 2011603629 |
| D | O | O | FIRST NIAGARA BANK NA | 7/18/2011 | 212S | K | 200 | 8709 | 2011146337 | | | 2011603629 |
| D | O | O | GMAC MORTGAGE CORPORATION DBA | 7/18/2011 | 351 | L | 415 | 4001 | 2011146338 | HMB 18 9/8 S3 C1761 | | 2011603629 |
| D | O | O | GMAC MORTGAGE CORPORATION DBA | 11/13/2015 | 351 | L | 420 | 2763 | 2015233736 | HMB 18 9/8 S3 C1761 | | 2011603629 |
| D | O | O | GMAC MORTGAGE CORPORATION DBA | 11/13/2015 | 351 | L | 420 | 2763 | 2015233736 | HMB 18 9/8 S3 C1761 | | 2011603629 |
| A/R | O | O | KNUCKLES KOMOSINSKI&ELLIOTT LLP | 7/18/2011 | 351 | L | 415 | 4001 | 2011146338 | HMB 18 9/8 S3 C1761 | | 2011603629 |
| D | O | O | LYON FINANCIAL SERVICES INC DBA | 7/18/2011 | 351 | L | 200 | 8709 | 2011146337 | | | 2011603629 |
| D | O | O | LYON FINANCIAL SERVICES INC DBA | 7/18/2011 | 351 | L | 415 | 4001 | 2011146338 | HMB 18 9/8 S3 C1761 | | 2011603629 |
| D | O | O | LYON FINANCIAL SERVICES INC DBA | 11/13/2015 | 351 | L | 420 | 2763 | 2015233736 | HMB 18 9/8 S3 C1761 | | 2011603629 |
| D | O | O | NOTICE OF APPEARANCE | 7/27/2011 | 24C | K | 202 | 2190 | 2011153031 | | | 2011603629 |
| D | O | O | NOTICE OF APPEARANCE | 9/21/2011 | 24C | K | 209 | 4281 | 2011119302 | | | 2011603629 |
| A/R | O | O | REQUEST FOR JUDICIAL INTERVENTION | 10/18/2011 | 204S | K | 213 | 330 | 2011220737 | | | 2011603629 |
| D | O | O | STEVEN J BAUM PC | 7/18/2011 | 351 | L | 415 | 4001 | 2011146338 | HMB 18 9/8 S3 C1761 | | 2011603629 |
| A/R | O | O | SUMMONS&COMPLAINT | 7/18/2011 | 24C | K | 200 | 8711 | 2011146339 | | | 2011603629 |
| D | O | O | US BANCORP MANIFEST FUNDING SERVICES | 11/13/2015 | 351 | L | 420 | 2763 | 2015233736 | HMB 18 9/8 S3 C1761 | | 2011603629 |
| D | O | O | US BANCORP MANIFEST FUNDING SERVICES AKA | 7/18/2011 | 351 | L | 200 | 8709 | 2011146337 | | | 2011603629 |
| D | O | O | US BANCORP MANIFEST FUNDING SERVICES DBA | 7/18/2011 | 351 | L | 415 | 4001 | 2011146338 | HMB 18 9/8 S3 C1761 | | 2011603629 |
| R | O | O | WELLS FARGO BANK NA | 7/18/2011 | 351 | L | 200 | 8709 | 2011146337 | | | 2011603629 |
| R | O | O | WELLS FARGO BANK NA | 11/13/2015 | 351 | L | 415 | 4001 | 2011146338 | HMB 18 9/8 S3 C1761 | | 2011603629 |
| R | O | O | WELLS FARGO BANK NA | 11/13/2015 | 351 | L | 420 | 2763 | 2015233736 | HMB 18 9/8 S3 C1761 | | 2011603629 |
| R | O | O | WELLS FARGO HOME MORTGAGE INC SUC | 11/13/2015 | 351 | L | 420 | 2763 | 2015233736 | HMB 18 9/8 S3 C1761 | | 2011603629 |
| R | O | O | WELLS FARGO OME MORTGAGE INC SUC | 7/18/2011 | 212S | K | 200 | 8709 | 2011146337 | | | 2011603629 |
| R | O | O | WELLS FARGO OME MORTGAGE INC SUC | 7/18/2011 | 351 | L | 415 | 4001 | 2011146338 | HMB 18 9/8 S3 C1761 | | 2011603629 |
| D | O | O | WISHMAN JOHN H JR | 7/18/2011 | 212S | K | 200 | 8709 | 2011146337 | | | 2011603629 |
| D | O | O | WISHMAN JOHN H JR | 7/18/2011 | 351 | L | 415 | 4001 | 2011146338 | HMB 18 9/8 S3 C1761 | | 2011603629 |
| D | O | O | WISHMAN JOHN H JR | 11/13/2015 | 351 | L | 420 | 2763 | 2015233736 | HMB 18 9/8 S3 C1761 | | 2011603629 |
| D | O | O | WISHMAN MARY FRANCES | 7/18/2011 | 351 | L | 200 | 8709 | 2011146337 | | | 2011603629 |
| D | O | O | WISHMAN MARY FRANCES | 7/18/2011 | 351 | L | 415 | 4001 | 2011146338 | HMB 18 9/8 S3 C1761 | | 2011603629 |
| D | O | O | WISHMAN MARY FRANCES | 11/13/2015 | 351 | L | 420 | 2763 | 2015233736 | HMB 18 9/8 S3 C1761 | | 2011603629 |

# ERIE COUNTY CLERK'S OFFICE



County Clerk's Recording Page

**Return to:**


**Party 1:**
WISHMAN JOHN H JR

**Party 2:**
WELLS FARGO BANK NA

**Recording Fees:**

| | |
|---|---|
| Fee 1 | $40.00 |
| Fee 2 | $1.00 |
| COE STATE $14.25 GEN | $14.25 |
| COE STATE $4.75 RM | $4.75 |
| MARKOFF FEE | $0.50 |

Book Type: **L** Book: **415** Page: **4001**
Page Count:    4
Doc Type:    LIS PENDENS
Rec Date:    07/18/2011
Rec Tim:    09:55:18 AM
Control #:    2011146338
UserID:    Sara
Receipt#:    11102547
Document Sequence Number
   I 2011603629

**Consideration Amount:**

| | |
|---|---|
| BASIC | 0 |
| SONYMA | 0 |
| ADDL | 0 |
| NFTA MT | $0.00 |
| TRANSFER | $0.00 |
| NFTA TT | $0.00 |

**Total: $60.50**

STATE OF NEW YORK
ERIE COUNTY CLERK'S OFFICE

WARNING – THIS SHEET CONSTITUTES THE CLERK'S ENDORSEMENT REQUIRED
BY SECTION 319&316-a (5) OF THE REAL PROPERTY LAW OF THE STATE OF NEW
YORK. DO NOT DETACH. THIS IS NOT A BILL.

John J. Crangle, Jr.
Interim    COUNTY CLERK

Book415/Page4001                              Page 1 of 4

STATE OF NEW YORK
COUNTY COURT: COUNTY OF ERIE
-----------------------------------------------------------X

WELLS FARGO BANK, N.A. SUCCESSOR BY
MERGER TO WELLS FARGO HOME MORTGAGE,
INC.
3476 Stateview Boulevard
Ft. Mill, SC 29715

                    Plaintiff,

vs.

JOHN H. WISHMAN, JR., MARY FRANCES
WISHMAN, FIRST NIAGARA BANK NA, GMAC
MORTGAGE CORPORATION DBA DITECH.COM,
LYON FINANCIAL SERVICES, INC. D/B/A US
BANCORP MANIFEST FUNDING SERVICES,

JOHN DOE (Said name being fictitious,
it being the intention of Plaintiff to
designate any and all occupants of
premises being foreclosed herein, and
any parties, corporations or entities,
if any, having or claiming an interest
or lien upon the mortgaged premises.)

                    Defendant(s).
-----------------------------------------------------------X

FILED
07/18/2011/ 09:55:18
ERIE COUNTY CLERK
RCPT # 11102547
I 2011603629

**NOTICE OF PENDENCY OF
ACTION**

ORIGINAL FILED WITH THE
CLERK ON _____

INDEX NO.:  *I 20116*_____

MORTGAGED PREMISES:
6425 ENGEL DRIVE
HAMBURG, NY 14075

SBL #:
195.03-2-5

NOTICE IS HEREBY GIVEN, that an action has been commenced and is now pending in the County Court of Erie County upon the Complaint of the above named Plaintiff against the above named Defendant(s) for the foreclosure of a mortgage bearing date the 25th day of June, 2003 executed by JOHN H. WISHMAN, JR. and MARY FRANCES WISHMAN to secure the sum of $222,400.00, and recorded at Liber 13085 of Mortgages at Page 3219 in the Office of the Clerk of the County of Erie, on the 1st day of July, 2003;

AND, NOTICE IS FURTHER GIVEN, that the mortgaged premises described in such mortgage(s) affected by the said foreclosure action, were, at the time of the commencement of this action, and at the time of the filing of this Notice, situated in the County of Erie and State of New York, and are described in "Schedule A - Legal Description" attached hereto and made a part hereof.

351·3·1·35

The Clerk of the County of Erie, is directed to index this Notice against the names of all the Defendant(s).

DATED:    July 15, 2011
SBL No.:    195.03-2-5

By: _James T. Farrell_

James T. Farrell, Esq.
**Steven J. Baum, P.C.**
**Attorneys for Plaintiff**
**220 Northpointe Parkway Suite G**
**Amherst, NY 14228**
**Tel.: 716-204-2400**

The law firm of Steven J. Baum, P.C. and the attorneys whom it employs are debt collectors who are attempting to collect a debt. Any information obtained by them will be used for that purpose.

Title No.: 905-E-213137

## SCHEDULE A

ALL THAT TRACT OR PARCEL OF LAND, situate in the Town of Hamburg, County of Erie and State of New York, being part of Lot No. 18, Township 9, Range 8 of the Holland Land Company's Survey and further distinguished as Subdivision Lot No. 3 as shown on a map filed in the Erie County Clerk's Office under Cover No. 1761.

## Schedule A

**ERIE COUNTY CLERK'S OFFICE**



County Clerk's Recording Page

Return to:

Party 1:
WISHMAN JOHN H JR

Party 2:
WELLS FARGO BANK NA

**Recording Fees:**

| | |
|---|---|
| RECORDING | $40.00 |
| COE CO $1 RET | $1.00 |
| COE STATE $14.25 GEN | $14.25 |
| COE STATE $4.75 RM | $4.75 |

Book Type: L  Book: 420  Page: 2763
Page Count:   4
Doc Type:     LIS PENDENS
Rec Date:     11/13/2015
Rec Time:     12:02:34 PM
Control #:    2015233736
UserID:       lichtenl
Trans #:      15185381
Document Sequence Number
  I 2011603629

**Consideration Amount:**

| | |
|---|---|
| BASIC MT | $0.00 |
| SONYMA MT | $0.00 |
| ADDL MT/NFTA | $0.00 |
| SP MT/M-RAIL | $0.00 |
| NY STATE TT | $0.00 |
| ROAD FUND TT | $0.00 |

**Total: $60.00**

STATE OF NEW YORK
ERIE COUNTY CLERK'S OFFICE

WARNING – THIS SHEET CONSTITUTES THE CLERK'S ENDORSEMENT REQUIRED
BY SECTION 319&316-a (5) OF THE REAL PROPERTY LAW OF THE STATE OF NEW
YORK. DO NOT DETACH. THIS IS NOT A BILL.

Christopher L. Jacobs
County Clerk

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE
------------------------------------------------------------------X    Re-Filed:

WELLS FARGO BANK, N.A. SUCCESSOR BY
MERGER    TO    WELLS    FARGO    HOME
MORTGAGE, INC.    Filed: 07/18/2011
3476 Stateview Boulevard
Ft. Mill, SC 29715

                            Plaintiff,    Index No.: 603629/2011
   -against-    NOTICE OF PENDENCY


JOHN H. WISHMAN, JR., MARY FRANCES WISHMAN,
FIRST NIAGARA BANK NA, GMAC MORTGAGE
CORPORATION DBA DITECH.COM, LYON FINANCIAL
SERVICES, INC. D/B/A US BANCORP MANIFEST
FUNDING SERVICES,
JOHN DOE(Said name being fictitious, it being the intention of
Plaintiff to designate any and all occupants of premises being
foreclosed herein, and any parties, corporations or entities, if any,
having or claiming an interest or lien upon the mortgaged
premises.)
                          Defendants.

------------------------------------------------------------------X

      NOTICE IS HEREBY GIVEN, that an action has been commenced and is
pending in this Court upon a complaint of the above named Plaintiff against the above
named Defendants for the foreclosure of a mortgage bearing date June 25, 2003 given by
John H. Wishman Jr. and Mary Frances Wishman to Wells Fargo Home Mortgage, Inc. to
secure the sum of $222,400.00 and recorded in Book 13085 at Page 3219 in the office of the✓
County Clerk/City Register of Erie County on July 1, 2003.

      AND NOTICE IS FURTHER GIVEN, that the mortgaged premises affected
by the said foreclosure action was, at the time of the commencement of said action, and at
the time of the filing of this Notice, situated in the Town of Hamburg, County of Erie and
State of New York, and being known as and by the street address of 6425 Engel Dr.
Hamburg, New York 14075 and more particularly described on the tax map of the Town of
Hamburg as Section 195.03 Block 2 Lot 5 and more particularly described in the said
mortgage, to wit, see Schedule "A" annexed.

351-3-1

The Clerk/City Register of the County of Erie is directed to index this notice to the names of the Defendants.

DATED:    Elmsford, New York
          November 3, 2015

          *Julie Iacobucci*

          Julie E. Iacobucci, Esq.
          Knuckles, Komosinski & Elliott, LLP
          Attorneys for Wilmington Savings Fund
          Society, FSB, doing business as Christiana
          Trust, not in its individual capacity, but
          Solely as trustee for BCAT 2015-13BTT
          565 Taxter Road, Suite 590
          Elmsford, New York 10523
          Phone: (914) 345-3020

2267-000481-FC/Rushmore Loan Management Services, LLC

Title No.: 905-E-213137

## SCHEDULE A

ALL THAT TRACT OR PARCEL OF LAND, situate in the Town of Hamburg, County of Erie and State of New York, being part of Lot No. 18, Township 9, Range 8 of the Holland Land Company's Survey and further distinguished as Subdivision Lot No. 3 as shown on a map filed in the Erie County Clerk's Office under Cover No. 1761.



Landmax Data Systems, Inc. www.landmaxdata.com - Map ID: maps/ERIE/144689/195_03.tif



Landmax Data Systems, Inc. www.landmaxdata.com - Map ID: maps/ERIE/144889/195_03.tif



Landmax Data Systems, Inc. www.landmaxdata.com - Map ID: maps/ERIE/144889/195_03.tif