UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ X

In re:                                          :
                                                :
RESIDENTIAL CAPITAL, LLC, *et al.*,             :
                                                :
                            Debtors.            :
------------------------------------------------ :

KAREN MICHELE ROZIER,                           :
                                                :
                            Appellant,          :
                                                :
                v.                              :
                                                :
RESCAP BORROWER CLAIMS TRUST,                   :
                                                :
                            Appellee.           :
------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: February 22, 2016

15 Civ. 3248 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

This bankruptcy appeal stems from litigation concerning Appellant Karen
Michele Rozier's California residence. Over the history of the mortgage loan
that Rozier obtained in late 2005 — a history that the parties to this litigation
vigorously dispute — a number of entities have acted as holder, servicer, or
trustee of Rozier's mortgage or its related documentation. As relevant here,
from approximately October 2006 until February 2013, Debtor GMAC
Mortgage, LLC ("GMACM") had servicing obligations towards the note; for some
portion of that period, Debtor Executive Trustee Services, LLC ("ETS") (with
GMACM, the "Debtors") served as trustee. For her part, between 2005 and
2013, Rozier executed a note; rescinded that note; entered into a modification
of the loan's terms; failed to make payments on the note for at least six years;
received several notices of foreclosure; fended off foreclosure actions; filed

lawsuits relating to the foreclosure actions in California state courts;
transferred her interest in the property to an irrevocable trust for the benefit of
certain of her family members; and filed for protection under the Bankruptcy
Code.

In 2012, the Debtors, along with a number of related entities, filed
chapter 11 bankruptcy petitions.  Rozier filed claims in the jointly administered
bankruptcy proceeding against the Debtors, and the United States Bankruptcy
Court for the Southern District of New York (Glenn, *J.*) disallowed and
expunged her claims in a Memorandum Opinion and Order dated December
22, 2014 (Bankr. Dkt. #7909) (the "Claims Disallowance Order").  *See In re
Residential Capital, LLC*, 523 B.R. 24 (Bankr. S.D.N.Y. 2014), *corrected on
reconsideration*, No. 12-12020 (MG), 2015 WL 1598090 (Bankr. S.D.N.Y.
Apr. 9. 2015).  Rozier, proceeding *pro se*, appeals from the Claims Disallowance
Order, the related decision denying Rozier's motion for reconsideration (the
"Reconsideration Motion") of the Claims Disallowance Order (Bankr. Dkt.
#8446) (the "Reconsideration Order"), and certain prior orders of the
Bankruptcy Court.  For the reasons set forth in the remainder of this Opinion,
the Bankruptcy Court's rulings are affirmed.

# BACKGROUND[1]

## A.    Factual Background

On December 23, 2005, Rozier executed a note in the amount of $576,000 (the "Note") in connection with a mortgage loan for her principal residence located at 7957 Dahlia Circle, Buena Park, California 90620 (the "Property").  (Bankr. Dkt. #7474-4, Ex. 3-A (Declaration of Deanna Horst in Support of the Objection ("Horst Decl.")) Ex. 3-A.1).  The Property's deed of trust identified WMC Mortgage Corp. ("WMC") as the lender, Westwood Associates ("Westwood") as the trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary of the security instrument.  (*Id.* at Ex. 3-A.2).

Two months later, WMC notified Rozier in a letter dated February 24, 2006, that WMC had not provided an accurate disclosure statement with respect to her loan, as required by the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667f.  (*See* Horst Decl. Ex. 3-A.3).  Under TILA, Rozier had the right to rescind the Note, a right she exercised on February 28, 2006, by completing a form provided by WMC.  (*See id.* at Ex. 3-A.4).  Of course, having rescinded the Note, Rozier could not simply retain the proceeds of the loan.

---

[1]    A more detailed recitation of the facts is set forth in the Background section of the Claims Disallowance Order.  The facts set forth herein are taken from the record on appeal as designated by the parties.  (*See* Dkt. #2, 5, 10, 14).  The parties did not produce a joint appendix in connection with this appeal (preferring instead to file separate appendices), so the Court cites directly to the designated documents as they appear on the Bankruptcy Court's docket, *In re Residential Capital, LLC*, No. 12-12020 (MG) (Bankr. S.D.N.Y.).

For convenience, Appellant's opening brief is referred to as "Appellant Br."; Appellee's opposition is referred to as "Appellee Opp."; and Appellant's reply is referred to as "Appellant Reply."

Consequently, on May 5, 2006, WMC sent Rozier a letter acknowledging receipt of her rescission and providing Rozier with the options of tendering the amount due on her loan or modifying the loan terms.  (*See id.* at Ex. 3-A.5).

Rozier entered into a Modification of Note with WMC (the "Modification of Note") on May 22, 2006 — thereby reducing her monthly payments, interest rate, and first change date — along with a Modified Deed of Trust Agreement (the "Modified Deed of Trust Agreement") and a general release.  (*See* Horst Decl. Ex. 3-A.6).[2]  The general release provided that in consideration for the loan modification, Rozier released WMC from all claims, including "the Right of Rescission, as outlined in the Truth-in-Lending Act, and it[]s implementing Regulation Z," and, further, that Rozier affirmed she did not wish to rescind the loan.  (*Id.*).

On October 3, 2006, GMACM acquired the servicing rights to Rozier's loan.  (Horst Decl. ¶ 14).[3]  MERS, as nominee for WMC, substituted ETS as trustee under the deed of trust in place of Westwood, and the agreement was recorded on March 4, 2008.  (*Id.* at Ex. 3-A.8).  On March 3, 2008, ETS sent Rozier a Notice of Default and Election to Sell Under Deed of Trust (the "March 2008 Default Notice"), because Rozier had failed to make monthly payments since December 1, 2007.  (*See id.* at Ex. 3-A.9).  The foreclosure sale was

---

[2]    On February 10, 2009, Rozier sent a letter to GE Money, the parent company of WMC, purporting to rescind the Modification of Note and Modification of Deed of Trust.  (*See* Horst Decl. Ex. 3-A.22).

[3]    Residential Funding Corporation became master servicer of the Note (with GMACM as sub-servicer) from January 1, 2007, until February 15, 2013, when servicing was transferred to Ocwen Loan Services, LLC ("Ocwen").  (Horst Decl. Ex. 3-A.23).

cancelled, however, after the Debtors attempted to work out repayment plans
and/or a short sale with Rozier; these efforts failed when Rozier canceled the
short sale and failed to make payments. (*See, e.g., id.* at Ex. 3-A.10, A.11,
A.12; *see also id.* at ¶¶ 17-20, 22). On December 15, 2009, ETS executed a
Notice of Rescission of Notice of Default, rescinding the March 2008 Default
Notice. (*Id.* at Ex. 3-A.13).

In 2011, an Assignment of Deed of Trust transferred Westwood's interest
as trustee in the deed of trust to Bank of America, N.A. ("BOA"); the assignment
was recorded on March 9, 2011. (*See* Horst Decl. Ex. 3-A.14). Following the
assignment, ETS was named substitute trustee under the deed of trust, which
transaction was recorded on April 11, 2011. (Bankr. Dkt. #7679, Ex. 1). ETS
again executed a Notice of Default and Election to Sell Under Deed of Trust (the
"April 2011 Default Notice"), which was recorded on April 11, 2011. (Horst
Decl. Ex. 3-A.16). Following the April 2011 Default Notice, Rozier transferred
her interest in the Property to an irrevocable trust created for the benefit of
certain family members (the "Rozier Trust"). (*See id.* at Ex. 3-A.17).

On January 4, 2012, BOA transferred all beneficial interests and rights
in the deed of trust to U.S. Bank, N.A. ("U.S. Bank"), as trustee, as successor in
interest to BOA, as successor by merger to LaSalle Bank, N.A., and as trustee
for RAAC2007RP1, and this assignment was recorded on January 13, 2012.
(*See* Bankr. Dkt. #7653, Ex. A). The Debtors again initiated foreclosure
proceedings and executed a Trustee's Deed Upon Sale of the Property, noting
the sale of the Property to BOA, which was recorded on September 26, 2012

(the "September 2012 Deed Upon Sale"). (*See* Horst Decl. Ex. 3-A.18). ETS

rescinded the September 2012 Deed Upon Sale after discovering a defect in the

applicable notice. (*See* Horst Decl. Ex. 3-A.19). Thereafter, ETS provided

Rozier with another Notice of Trustee's Sale on October 12, 2012; this notice

scheduled a sale for November 13, 2012, but the sale did not go forward

because the Rozier Trust filed for bankruptcy protection. (*See* Horst Decl. ¶ 26

n.8).

In 2013, GMACM transferred its rights in the deed of trust to U.S. Bank,

and Rozier's loan is currently being serviced by Ocwen. A foreclosure sale of

Rozier's property was not completed during the time the Debtors serviced

Rozier's loan or held an interest in the deed of trust.

## B.    Procedural Background

### 1.    Rozier's Civil Lawsuits in California

On September 27, 2012, Rozier filed a complaint in California state court

against GMACM, ETS, BOA, and several John Doe defendants. *See Rozier* v.

*Bank of America, N.A., et al.*, Case No. 30-2012-00601310-CU-OR-CJC (the

"California Action"). (*See also* Bankr. Dkt. #7474-5, Ex. 3-B (Declaration of

Yaron Shaham in Support of the Objection ("Shaham Decl.")).[4] In her First

Amended Verified Complaint in the California Action, Rozier asserted, among

---

[4]     Rozier had previously filed a complaint on October 28, 2008, against GMACM and
        MERS in California state court; the matter was removed to the United States District
        Court for the Central District of California and dismissed without prejudice after Rozier
        failed to file an opposition to GMACM's motion to dismiss. *See Rozier* v. *GMAC
        Mortgage, LLC et al.*, No. 8:09-cv-00961-DOC-RNB. (Bankr. Dkt. #7474-9, Ex. 7 (order
        of dismissal)).

other things: (i) wrongful foreclosure; (ii) temporary and permanent injunctive relief; (iii) violation of California Civil Code section 2923.5; (iv) violation of California Civil Code section 2924; (v) slander of title; (vi) violation of California Business and Professions Code sections 17200 *et seq.* (also known as the Unfair Competition Law or "UCL"); (vii) negligence; (viii) defamation of character; and (ix) quiet title.  (*See* Bankr. Dkt. #7474-1, Ex. 1-A (GMACM Claim Form)).  Rozier's complaint also "denie[d] any debt to any and all Defendants."  (*Id.* at 8).[5]

Ultimately, Rozier filed a Second, and then a Third, Amended Complaint in the California Action.  The Third Amended Complaint modified both the parties to the litigation and certain of the causes of action.  The Debtor entities are not currently parties to the California Action, though several of the claims originally raised in that action are renewed by Rozier in the instant matter. (*See generally* Shaham Decl. Ex. 3-B.7 (Third Amended Complaint)).

### 2.    Rozier's Individual Bankruptcy Case

Rozier filed a chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Central District of California on August 22, 2011. (Bankr. Dkt. #7474-10, Ex. 8).  On January 12, 2012, the case was converted to one under chapter 7 of the Bankruptcy Code.  (Dkt. #7474-11, Ex. 9).

---

[5]    Separately, on February 5, 2013, David Eugene Rozier, Sr., as Trustee for the Rozier Trust, moved for preliminary injunctive relief in a related state court matter, *David Bear Irrevocable Living Trust* v. *U.S. Bank et al.*, Case No. 30-2012-00619543-CU-OR-CJC. His application was granted that same day, which had the effect of enjoining any foreclosure proceedings brought by U.S. Bank. (Shaham Decl. Ex. 3-B.5; Bankr. Dkt. #7474 ¶¶ 40, 46-47).  On July 2, 2014, the order of injunction was lifted as to U.S. Bank.  (Shaham Decl. Ex. 3-B.16).

James J. Joseph was appointed the chapter 7 trustee, and he purportedly

emailed Rozier on October 30, 2014, to advise her that he did not object to

Rozier asserting any claims that the bankruptcy estate may possess in the

Residential Capital bankruptcy.  (*See* Bankr. Dkt. #7730, Ex. 7).

Rozier's chapter 7 bankruptcy case remains pending as of the date of this

Opinion.  *See In re Rozier*, No. 8:11-bk-21727-CB (Bankr. C.D. Cal.).

### 3.    The Proceedings in the Residential Capital Bankruptcy

### a.    The Petitions and the Chapter 11 Plan

On May 14, 2012, each of the Debtors, along with a number of related

entities, filed voluntary petitions for relief under chapter 11 of the Bankruptcy

Code.  (*See* Bankr. Dkt. #1).  The Second Amended Joint Chapter 11 Plan (the

"Plan"), confirmed by the Bankruptcy Court in December 2013, established the

Residential Capital Borrower Claims Trust (the "Trust").  (*See* Bankr. Dkt.

#6065).  The Trust manages the bankruptcy process on behalf of the Debtors,

and has the authority to object to claims.  (*Id.*).

### b.    Rozier's Claims in the Bankruptcy

On November 12, 2012, Rozier timely filed two claims in the Residential

Capital bankruptcy proceeding (collectively, the "Claims"), each for $666,000.

(Bankr. Dkt. #7474-1, Ex. 1-A; Bankr. Dkt. #7474-2, Ex. 1-B).[6]  Rozier filed

claim number 4738 against GMACM (the "GMACM Claim"); the claim form

recites that the GMACM Claim is based on "wrongful foreclose[ure] / IFR / Civil

---

[6]    Subsequently, Rozier modified her motion for payment with respect to the GMACM
Claim to seek $29,175,120.01.  (Bankr. Dkt. #6199-1).

8

Case 30-2012-00601310 [i.e., the California Action]." (GMACM Claim Form at

2). Rozier also filed claim number 5632 against ETS (the "ETS Claim"); the

claim form recites that the ETS Claim is based on "gross negligence,

harassment, other affirmative defenses raised [in the California Action]."

(Bankr. Dkt. #7474-2, Ex. 1-B (ETS Claim Form) at 2). Among other

documents, Rozier appended the First Amended Complaint in the California

Action to each of the Claims.

### c.    Rozier's Motions for Payment of Claims

On December 23, 2013, Rozier moved for immediate payment of what

she termed her "unopposed claim[s]." (Bankr. Dkt. #6173, 6199-1). In an

order dated February 26, 2014, the Bankruptcy Court sustained the Trust's

objection to these motions for payment (Bankr. Dkt. #6519); by subsequent

order dated June 2, 2014, it denied Rozier's motion to reconsider the prior

order (Bankr. Dkt. #7028). That same day, Rozier moved to strike the Debtors'

objection to her reconsideration motion (Bankr. Dkt. #7047), which motion was

denied by the Bankruptcy Court by order dated June 5, 2014 (Bankr. Dkt.

#7055), and reconsideration of which was denied by order dated July 1, 2014

(Bankr. Dkt. #7210) (with docket entries 6519, 7028, and 7055, the "Payment

Orders").

### d.    The Trust's Objection to the Claims

On September 3, 2014, the Trust filed an objection to the Claims (the

"Objection") based on Rozier's purported failure to state a basis for liability.

(*See* Bankr. Dkt. #7474). Among other arguments, the Trust contended that

Rozier: (i) lacked standing to bring the Claims (both under California law and as a consequence of her chapter 7 bankruptcy proceeding); (ii) was more than six years delinquent in making mortgage payments; and (iii) misperceived the applicable law, including in particular the legal effect of her May 2006 agreement to modify the Note.  (*See id.*).  Rozier filed an opposition to the Objection, as well as motions to strike the declarations of Deanna Horst and Yaron Shaham that were submitted in its support (the "Motions to Strike"). (Bankr. Dkt. #7620, 7620-2, 7620-7).

The Bankruptcy Court held a hearing on the Objection on October 22, 2014, and Rozier appeared by telephone.  The Trust conceded at the hearing that Rozier had standing to assert causes of action that had accrued after January 12, 2012 — the date that Rozier's chapter 13 case was converted to one under chapter 7.  (*See* Bankr. Dkt. #7686 (Transcript of Oct. 22, 2014 Hearing ("Hr'g Tr.")) 10:12-11:8).  Rozier also conceded that she had not paid any mortgage payments on the Property for six years.  (*Id.* at 35:20-22).

### e.    The Claims Disallowance Order

On December 22, 2014, the Bankruptcy Court entered the Claims Disallowance Order, which disallowed and expunged both of Rozier's Claims and denied Rozier's Motions to Strike.  (Bankr. Dkt. #7909).  The Order spans 44 pages, and addresses with commendable assiduity the parties' arguments. After reviewing the factual and procedural histories, the Bankruptcy Court swiftly dispatched with Rozier's Motions to Strike, which it found to be both

foreclosed as a matter of law and unsupported as a matter of fact. (Claims Disallowance Order 15-16).

Judge Glenn then considered the antecedent issue of Rozier's standing. After reviewing the arguments (and concessions) of the parties, as well as the relevant case law, he concluded that Rozier had standing only to bring claims that post-dated January 12, 2012, the date her case was converted to a chapter 7 bankruptcy proceeding; claims that arose prior to that date were considered property of the estate and could only be brought by the chapter 7 trustee. (Claims Disallowance Order 16-17). And while Rozier had included an email from that trustee indicating his lack of objection to Rozier pursuing these claims, Judge Glenn noted that section 554 of the Bankruptcy Code required notice and a hearing in order for such a waiver or abandonment of estate property to have legal effect. (*Id.* at 18).

From there, the Bankruptcy Court proceeded to address the merits of the Claims. As to the principal claim of wrongful foreclosure, the Court disagreed with Rozier's foundational premise that the February 2006 rescission stripped the Debtors of their ability to foreclose; to the contrary, it agreed with the Debtors' arguments that (i) Rozier's actions in modifying the loan, executing new documents attendant to that modification, and executing a release as to the pre-modification TILA claims amounted to a waiver of the rescission, and (ii) Rozier had shown no justification for the non-payments that precipitated the foreclosure actions. (Claims Disallowance Order 23-26). The Court then rejected Rozier's various claims under California statutory law, finding

deficiencies in standing or on the merits. (*Id.* at 27-31, 40-44). Finally, the

Bankruptcy Court rejected Rozier's common law claims for slander of title,

negligence, defamation of character, cancellation of voidable instruments, and

intentional infliction of emotional distress for failure to state a claim; and her

fraud-based claims for failure to plead with particularity and lack of standing.

(*Id.* at 31-40).

### f.    The Reconsideration Order

Rozier sought reconsideration of the Bankruptcy Court's decision. To

that end, on January 6, 2015, Rozier filed a request for a seven-day extension

of time to file a motion for reconsideration of the Claims Disallowance Order.

(Bankr. Dkt. #8001). Rozier filed the Reconsideration Motion on January 21,

2015. (Bankr. Dkt. #8014). The Bankruptcy Court ordered the Trust to

respond to the Reconsideration Motion. (Bankr. Dkt. #8025). In response, the

Trust timely filed an objection to the Reconsideration Motion, and Rozier timely

filed a reply. (Bankr. Dkt. #8081, 8138).

On April 9, 2015, the Bankruptcy Court entered the Reconsideration

Order, denying Rozier's Reconsideration Motion and correcting two non-

substantive errors in the Claims Disallowance Order pursuant to Fed. R. Civ.

P. 60(a). (Bankr. Dkt. #8446).[7] Considering the motion first under Fed. R.

Bankr. P. 9023, which incorporates Fed. R. Civ. P. 59, the Bankruptcy Court

found it to be untimely. (Reconsideration Order 11-12). Alternatively, the

---

[7]    Pursuant to Bankruptcy Rule 9032, the Federal Rules of Civil Procedure apply in cases
under the Bankruptcy Code.

Court concluded, Rozier's motion failed on the merits, because Rozier had identified neither an intervening change in the controlling law, newly-discovered evidence, nor the need to correct a clear error. (*Id.* at 12-15).

Consideration of Rozier's claims under Fed. R. Bankr. P. 9024, which incorporates Fed. R. Civ. P. 60, obtained no difference in result. The Bankruptcy Court noted the wealth of case law making clear that Rule 60(b) motions were disfavored in the absence of "exceptional circumstances." (Reconsideration Order 15-16 (collecting cases)). It found none in this case.[8]

### 4.    The Instant Appeal

On April 13, 2015, Rozier filed a notice of appeal of the Claims Disallowance Order and the Reconsideration Order (the "Notice of Appeal"), and on April 27, 2015, she filed a designation of record and statement of issues of record pursuant to Fed. R. Bankr. P. 8006. (Dkt. #1-2). The Court issued a Bankruptcy Appeal Scheduling Order on May 4, 2015, requiring Rozier to file her opening brief in support of the appeal by June 18, 2015. (Dkt. #4). The Court extended the deadline to June 25, 2015, and Rozier filed her opening brief on June 29, 2015. (Dkt. #9). The Trust filed its brief on July 30, 2015, and the appeal was fully submitted on August 13, 2015, when Rozier filed her reply brief. (Dkt. #13, 17).

---

[8]    As noted, the Bankruptcy Court corrected two non-substantive errors in the Claims Disallowance Order as a consequence of a scrivener's error and certain documents submitted by the parties in connection with the Reconsideration Motion. (Reconsideration Order 16-17). In resolving the instant appeal, this Court reads the Claims Disallowance Order to include those modifications.

In her opening brief, Rozier summarizes her challenges to the

Bankruptcy Court's orders as follows:

> Appellant asserts that the lower Court did not address
> many of the issues raised in [Appellant's] claims, that it
> ignored factual evidence and relied on proven false
> facts, that it incorrectly interpreted California law, and
> that as a consequence, the Court's ruling[s] are
> incorrect, contrary to policy, and unconscionable.
> Appellant asserts that she presented sufficient evidence
> to rebut [Debtors'] presumptions and that the Court
> improperly favored [Debtors'] opinion over her evidence.

(Appellant Br. 4).

## DISCUSSION

## A.    The Standard of Review

The Court has jurisdiction to hear this appeal pursuant to 28 U.S.C.

§ 158(a).  A district court reviews a bankruptcy court's findings of fact under a

clearly erroneous standard, its conclusions of law *de novo*, and its evidentiary

rulings for an abuse of discretion.  *See In re Ames Dep't Stores, Inc.*, 582 F.3d

422, 426 (2d Cir. 2009) (findings of fact and conclusions of law); *Automodular

Corp.* v. *Delphi Corp.* (*In re Delphi Corp.*), 394 B.R. 342, 344 (S.D.N.Y. 2008)

(evidentiary rulings).  "[A] finding is 'clearly erroneous' when" the reviewing

court is "left with the definite and firm conviction that a mistake has been

made." *In re Ames Dep't Stores, Inc.*, 582 F.3d at 426 (quoting *United States* v.

*U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).  In general, "[a] ruling is an abuse

of discretion only if the bankruptcy court 'bases its ruling on a mistaken

application of the law or a clearly erroneous finding of fact.'" *Stasko* v. *Motors

Liquidation Co.* (*In re Motors Liquidation Co.*), No. 10 Civ. 4322 (JGK), 2011 WL

2462773, at *2 (S.D.N.Y. June 20, 2011) (quoting *Duane Reade, Inc.* v. *St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005)).

"A district court should not overturn a bankruptcy court decision if an error is harmless, meaning the error 'is not inconsistent with substantial justice or does not affect the substantial rights of the parties.'" *Morse* v. *Rescap Borrower Claims Trust*, No. 14 Civ. 5800 (GHW), 2015 WL 353931, at *3 (S.D.N.Y. Jan. 26, 2015) (quoting *Cavalry Constr., Inc.* v. *WDF, Inc.* (*In re Cavalry Constr., Inc.*), 428 B.R. 25, 42 (S.D.N.Y. 2010), *aff'd*, 425 F. App'x 70 (2d Cir. 2011) (summary order)).  Similarly, a district court "may affirm [the bankruptcy court's decision] on any ground that finds support in the record, and need not limit its review to the bases raised or relied upon in the decision[] below." *Freeman* v. *Journal Register Co.*, 452 B.R. 367, 369 (S.D.N.Y. 2010). That said, the district court may not consider evidence outside the record below.  *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 339 (S.D.N.Y. 2008).  Moreover, any argument not raised in the bankruptcy court is considered waived and will not be considered by the district court, unless such a waiver would result in manifest injustice. *See Klein* v. *Civale & Trovato, Inc.* (*In re Lionel Corp.*), 29 F.3d 88, 92 (2d Cir. 1994); *see also Best Payphones, Inc.* v. *Manhattan Telecommc'ns Corp.* (*In re Best Payphones, Inc.*), 432 B.R. 46, 60 (S.D.N.Y. 2010), *aff'd*, 450 F. App'x 8 (2d Cir. 2011) (summary order).

Finally, a bankruptcy court's "denial of a motion to reconsider a disallowed claim is a discretionary decision, reviewed under the familiar and

15

deferential abuse-of-discretion standard." *Statek Corp.* v. *Dev. Specialists Inc.* (*In re Coudert Bros. LLP*), 673 F.3d 180, 186 (2d Cir. 2012).

## B.    Analysis

Because Rozier is proceeding *pro se*, the Court will liberally construe her submissions and consider them as presenting issues for appeal and explaining her purported bases for appeal. *See Triestman* v. *Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("[S]ubmissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest.*'" (citation omitted)). On the other hand, "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Id.* at 477 (citation omitted).

### 1.    The Court Will Consider Rozier's Arguments

On appeal, Rozier argues that the Bankruptcy Court erred in (i) denying her motion for payment and related motions, (ii) disallowing and expunging the Claims, and (iii) denying her Reconsideration Motion.[9] As a preliminary matter, the Court must address the Trust's argument that because Rozier's appellate brief was filed four days late, the appeal should be denied for failure

---

[9]    Rozier's claim that the Bankruptcy Court is biased — based solely on judicial rulings with which she disagrees — can be summarily rejected. *See Litkey* v. *United States*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion."). In connection with the instant appeal, the Court has reviewed a number of the Bankruptcy Court's decisions resolving arguments made by or concerning Rozier; in all of them, Judge Glenn demonstrated characteristic care, patience, and knowledge of the law, with no hint of bias.

Rozier also makes mention in her Statement of Issues of a due process claim. (*See* Dkt. #2 at 5). However, because she makes no arguments in that regard, the Court does not consider the issue.

to comply with a court order.  (Appellee Opp. 18-19 (citing Fed. R. Bankr.

P. 8018(a)(4))).  The law is clear that "[a] court need not automatically dismiss

the appeal of a party who has not complied" with filing deadlines, and that it

should instead "determine whether the dismissal is appropriate under the

circumstances." *Fletcher* v. *Davis* (*In re Fletcher Int'l, Ltd.*), 536 B.R. 551, 558

(S.D.N.Y. 2015).  The short length of the delay — combined with a lack of bad

faith or prejudice to the Trust — weigh against dismissal.[10]  Accordingly, the

Court declines to dismiss this appeal on account of the late filing.

### 2.    The Instant Appeal Does Not Extend to the Payment Orders

In her appellate briefs, Rozier challenges the Payment Orders (Bankr.

Dkt. #6519, 7028, 7055, 7210), wherein the Bankruptcy Court denied Rozier's

requests for immediate payment of the Claims.  (*See*, *e.g.*, Appellant Br. 30-34).

Rozier's Notice of Appeal, however, does not in fact designate any of the

Payment Orders, and is instead limited to the Claims Disallowance Order and

the Reconsideration Order.  (*See* Dkt. #1).  Furthermore, neither the Claims

Disallowance Order nor the Reconsideration Order reconsiders any of the

Payment Orders.

A notice of appeal must "designate the judgment, order, or part thereof

being appealed." Fed. R. App. P. 3(c).  "The Court has jurisdiction to review

only those bankruptcy court orders 'designated' in the Notice of Appeal." *In re

Dana Corp.*, 412 B.R. 53, 59 (S.D.N.Y. 2008) (citing *Shrader* v. *CSX Transp.*,

---

[10]    The reason for the delay is unclear, but Rozier's request for an extension, dated
June 17, 2015, cites a family emergency.  (Dkt. #7).

*Inc.*, 70 F.3d 255, 256 (2d Cir. 1995)).  "While the Court is compelled to 'construe notices of appeal liberally,' a notice that 'fail[s] to mention' a specific order does not confer subject matter jurisdiction as to that order on the reviewing court." *Heller* v. *Emanuel* (*In re Emanuel*), 450 B.R. 1, 6 (S.D.N.Y. 2011) (citation omitted), *aff'd*, 460 F. App'x 48 (2d Cir. 2012) (summary order). Because Rozier failed to designate the Payment Orders in the Notice of Appeal, and because the orders she did designate are wholly distinct from the Payment Orders, the Court has no jurisdiction to review the Payment Orders.[11]

### 3.   The Claims Disallowance Order Is Affirmed

Turning now to the orders that were properly designated, the Court first considers Rozier's challenges to the Claims Disallowance Order.  Specifically, Rozier challenges the disallowance of her claims for wrongful foreclosure and fraud; she contends that the Claims Disallowance Order was unconscionable; and she argues that the Bankruptcy Court erred in denying her Motions to Strike.  The Court considers each of these arguments separately, ultimately upholding the Bankruptcy Court's conclusions.[12]

---

[11]   Even if the Court had jurisdiction, it would uphold the Bankruptcy Court's decisions on the Payment Orders.  Rozier cannot, and does not, challenge the Bankruptcy Court's "conclusion that [Rozier] was not entitled to *immediate* payment based on the Plan." (Appellant Br. 32 (emphasis in original)).  Rather, she seeks only to object to certain "incorrect statements contained in the ruling" (*id.*), and such "blue-penciling" is not a proper basis for appeal.

[12]   As the Trust noted in its opposition brief (*see* Appellee Opp. 27), it is unclear whether Rozier is challenging as well the Bankruptcy Court's resolution of her arguments under the UCL and for intentional infliction of emotional distress (*see* Appellant Br. 8-9). Rozier mentions *Ragland* v. *U.S. Bank Nat'l Ass'n*, 209 Cal. App. 4th 182 (4th Dist. 2012), which found that a party could seek emotional distress damages in connection with a claim for intentional infliction of emotional distress.  However, Rozier does not attempt to link that case with either of the Orders from which she appeals, and the Court therefore finds that she has not challenged those portions of the Bankruptcy

### a.    The Proof of Claims Process

Critical to an analysis of the Claims Disallowance Order is an understanding of the legal framework governing the administration of proofs of claims.  A proof of claim "is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  "[E]ven where a party in interest objects, [however,] the court 'shall allow' the claim 'except to the extent that' the claim implicates any of the nine exceptions enumerated in § 502(b)[,]" including where "the claim at issue is 'unenforceable against the debtor . . . under any agreement or applicable law.'"  *Travelers Cas. & Sur. Co. of Am.* v. *Pac. Gas & Elec. Co.*, 549 U.S. 443, 449 (2007) (citation omitted).  Section 502(b)(1) has been interpreted "to provide that, with limited exceptions, any defense to a claim that is available outside the bankruptcy context is also available in bankruptcy."  *Id.* at 450.

Once a party objects — as the Trust did here — courts employ a burden-shifting framework to determine whether a claim should be allowed or disallowed.  "A proof of claim is prima facie evidence of the validity and amount of a claim, and the objector bears the initial burden of persuasion."  *In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd*, No. 09 Civ. 2229 (DC), 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010).  "To overcome this prima facie evidence, the objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim."  *Sherman* v.

---

Court's decisions.  In any event, the Court finds no basis to disturb the Bankruptcy Court's decisions in either of these two areas.

*Novak* (*In re Reilly*), 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000), *aff'd*, 242 F.3d

367 (2d Cir. 2000).  "When the burden is shifted back to the claimant, [she]

must then prove by a preponderance of the evidence that under applicable law

the claim should be allowed."  *In re Oneida, Ltd.*, 400 B.R. at 389; *see also In re*

*Reilly*, 245 B.R. at 773 ("The ultimate burden always rests with the claimant.").

### b.    The Bankruptcy Court Correctly Disallowed Rozier's Wrongful Foreclosure Claim

Rozier principally appeals from the Bankruptcy Court's disallowance of

her wrongful foreclosure claim, citing five facts that she believes were

inadequately considered below: (i) Rozier did not waive rescission of the Note;

(ii) Rozier entered into a new note in 2006 that replaced the Note; (iii) Rozier did

not default on her loan in March 2008 because she made a payment one

month earlier that the Debtors failed to credit; (iv) the September 2012 Deed

Upon Sale was defective because it conveyed the Property to BOA rather than

U.S. Bank; and (v) MERS improperly assigned Westwood's interest as trustee to

BOA.  (*See generally* Appellant Br. 4-8, 12-21, 26-30, 40-43).

Under California law, in order to bring a valid claim for wrongful

foreclosure, the plaintiff must allege that:

> [i] the trustee or mortgagee caused an illegal,
> fraudulent, or willfully oppressive sale of real property
> pursuant to a power of sale in a mortgage or deed of
> trust; [ii] the party attacking the sale (usually but not
> always the trustor or mortgagor) was prejudiced or
> harmed; and [iii] in cases where the trustor or
> mortgagor challenges the sale, the trustor or mortgagor
> tendered the amount of the secured indebtedness or
> was excused from tendering.

20

*Robinson* v. *Am. Home Mortg. Servicing, Inc.* (*In re Mortg. Elec. Registration Sys., Inc.*), 754 F.3d 772, 784 (9th Cir. 2014) (citation and emphasis omitted). Courts have found that a plaintiff cannot state a claim for wrongful foreclosure under California law where no foreclosure sale has taken place.  *See Tamburri* v. *SunTrust Mortg., Inc.*, 623 F. App'x 878, 878 (9th Cir. 2015) (unpublished opinion); *Rosenfeld* v. *JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 961 (N.D. Cal. 2010); *Vega* v. *JPMorgan Chase Bank, N.A.*, 654 F. Supp. 2d 1104, 1113 (E.D. Cal. 2009) ("The wrongful foreclosure claim fails to allege a cognizable cause of action in absence of a foreclosure sale."); *see also Manzano* v. *Metlife Bank N.A.*, No. Civ. 2:11-651 WBS DAD, 2011 WL 2080249, at *6 (E.D. Cal. May 25, 2011) (finding that "[b]ecause plaintiff's house has not yet been sold, a claim for wrongful foreclosure is not yet ripe").

Rozier's claim for wrongful foreclosure fails because there is no evidence in the record that a foreclosure sale was completed during the time the Debtors serviced Rozier's loan or held an interest in the deed of trust.  (*See* Bankr. Dkt. #7653, Ex. A).  The first element of wrongful foreclosure requires "an illegal, fraudulent, or willfully oppressive *sale* of real property."  *In re Mortg. Elec. Registration Sys., Inc.*, 754 F.3d at 784 (emphasis added).  Despite several attempts to conduct a foreclosure sale, it does not appear that the Property has been sold, and thus Rozier's claim for wrongful foreclosure is premature and misdirected.  *See Tamburri*, 623 F. App'x at 878; *Vega*, 654 F. Supp. 2d at 1113.  On this basis, the Bankruptcy Court's disallowance of Rozier's Claims insofar as they were predicated on a wrongful foreclosure theory is affirmed.

Even if there had been a foreclosure sale, Rozier's arguments on appeal would still be unavailing. *First*, Rozier argues that she has a valid wrongful foreclosure claim because she did not waive her right to rescind the Note. As outlined *supra* in the Factual Background section, Rozier rescinded the Note on February 28, 2006, after WMC notified her that it had not provided an accurate TILA disclosure with respect to her loan. On May 22, 2006, Rozier executed the Modification of Note, Modified Deed of Trust Agreement, and general release, all of which the Bankruptcy Court reviewed in concluding that Rozier had waived her right to rescind the Note. (Claims Disallowance Order 24-25).

A word is in order concerning Rozier's briefing on this point, both here and before the Bankruptcy Court: Recognizing that Rozier is *pro se*, the Court is nonetheless constrained to observe that her submissions are so circuitous that the Court was often unsure of precisely what was being argued. The Court suspects that the Bankruptcy Court and the Trust had similar difficulty. In particular, in reviewing Rozier's appellate briefs, the Court discerned two arguments regarding the impact of TILA on Rozier's wrongful foreclosure claim, *viz.*, that (i) any waiver by Rozier of her right to rescind was invalid because it did not contain the language prescribed by TILA, and (ii) WMC (and, by extension, any transferee or assignee) waived its right to demand tender of the funds it had advanced to Rozier in December 2005 after receiving her notice of rescission in February 2006 and failing to respond within 20 days. (*See, e.g.*, Appellant Br. 2, 5, 13-21). *See* 15 U.S.C. § 1635(b), (d) (addressing process of

rescission and waiver of rescission under TILA); 12 C.F.R. § 226.23 (specifying contents of waiver of right to rescind under TILA).

Given the prominence of these arguments in Rozier's appeal, the Court was initially surprised to find that they were not addressed in greater detail in the briefing below or in the Orders appealed from.  Upon reviewing the record with greater care, however, the Court believes that the arguments may not have been articulated sufficiently in Rozier's initial Claims, and that they may not have been discernable until her subsequent Reconsideration Motion or, perhaps, her appellate submissions.[13]  The Court considered a finding that Rozier had failed to raise these arguments adequately below, and thus had failed to preserve them for appeal.  Ultimately, it elects to consider the merits of these arguments, in part in deference to Rozier's *pro se* status, and in part because resolution of these arguments does not detract from the correctness of the Bankruptcy Court's ultimate decisions.

---

[13]    *See, e.g.*, Bankr. Dkt. #7620-7 at 15 (Rozier's argument in motion to strike that "[w]ithin twenty days of rescission of the December 2005 Note, I asked WMC Mortgage to put me back in my original position and they failed to respond.  Due to their failure to respond, I hired the Law Office of Judith Deming to represent me in finalizing the transaction.  She wrote WMC Mortgage and informed them that the rescinded Note was a nullity and that they were required by law to put me back in my original position."); Bankr. Dkt. #8014 at 12 (Rozier's argument in Reconsideration Motion that she "rescinded and offered WMC all of its money back and demanded to be placed in her original position.  WMC failed to comply with federal and state law, thus making the Dec[ember] 2005 note a nullity."); *id.* at 28 ("Additionally, the law is clear that rescission rights [cannot] be waived unless there is an emergency and Rozier was no financial emergency."); Bankr. Dkt. #8138 at 4 (Rozier's reply in the Reconsideration Motion disagreeing "with the [Bankruptcy] Court that the May 22, 2006 waiver of rescission of rights was allowed on May 22, 2006. 1[5] U.S.C. § 1635[(d)] specifically prohibits waiver of rescission rights unless there is an emergency or hardship case."); *id.* ("After 20-days, WMC had no legal right to demand tender. . . .  After the borrower offers tender and the lender refuses to accept tender, the lender loses all rights by statute.  Once WMC lost the right to demand tender, the December 2005 note became a nullity and a nullity cannot be modified[.]").

Rozier concedes that "she entered into a loan modification and general release in May 2006, affirming her intention not to rescind the loan" she had obtained in December 2005. (Appellant Br. 2). She argues that she rescinded the loan nonetheless because the general release did not meet the requirements for a waiver of the right to rescind under TILA and Regulation Z, 12 C.F.R. pt. 226, promulgated thereunder. (*See, e.g.*, *id.* at 7, 13, 19-21). Specifically, Regulation Z requires a dated written statement that describes the consumer's "bona fide personal financial emergency," specifically waives the right to rescind, and contains the consumer's signature. 12 C.F.R. § 226.23(e).

In response, the Trust argues that *Ramsey* v. *Vista Mortg. Corp.* (*In re Ramsey*), 176 B.R. 183 (B.A.P. 9th Cir. 1994), supports its position that Rozier waived the rescission of the Note by entering into the loan modification documents. (Appellee Opp. 24). In *Ramsey*, a chapter 11 debtor sought rescission of a home refinancing loan for a violation of TILA. 176 B.R. at 185-86. After exercising his right of rescission under TILA, the debtor "withdrew his cancellation in a handwritten note and requested that [the lender] proceed with the loan." *Id.* at 185. A Bankruptcy Appellate Panel of the United States Court of Appeals for the Ninth Circuit affirmed the lower court's grant of summary judgment on several grounds, including that the debtor would "not be entitled to rescind the loan agreement, having already exercised *and waived* his right of rescission with full knowledge of the loan modification." *Id.* at 189 (emphasis added).

24

Rozier withdrew her rescission of the loan on May 22, 2006, and in that respect is similar to the debtor in *Ramsey*.  *See In re Ramsey*, 176 B.R. at 189. The Court cannot say, however, that the two cases are identical, because it does not know the contents of the written waiver in *Ramsey*, and, in consequence, it cannot say whether that waiver complied with TILA's requirements.  *See* 12 C.F.R. § 226.23(e).  Accordingly, the Court cannot find that Rozier waived her right of rescission under TILA, as the Trust argued and the Bankruptcy Court found.

Any victory to Rozier, however, is Pyrrhic, because the Bankruptcy Court's conclusion of disallowance of the wrongful foreclosure claim remains correct.  There is no evidence in the record that Rozier rescinded the Note again after May 22, 2006, and her right of rescission expired three years after the date of the consummation of the transaction.  *See* 15 U.S.C. § 1635(f); *Beach* v. *Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) ("§ 1635(f) completely extinguishes the right of rescission at the end of the 3-year period").[14]  Having failed to act within the limitations period, Rozier cannot now be heard to complain about TILA violations that may have inhered in the December 2005 transaction, such as a putative violation of the time limits contained in 15 U.S.C. § 1635.

*Second*, Rozier disputes the Bankruptcy Court's finding of fact that she did not enter into a new loan on June 1, 2006.  (Appellant Br. 28).  At the

---

[14]    Rozier's letter to GE Money, dated February 10, 2009, purportedly rescinded the Modification of Note and Modified Deed of Trust Agreement, but did not rescind the original Note, which is the transaction in which the TILA violations Rozier now claims are alleged to have occurred.  (*See* Horst Decl. Ex. 3-A.22).

October 22, 2014 hearing before the Bankruptcy Court, Rozier indicated that
she submitted "loan closing documents from the June 1st loan," including an
"itemization of amount financed in the three-day closing, which is all dated
June 1st, 2006." (Hr'g Tr. 42:12-17).  After considering all of the evidence
introduced at the hearing, the Bankruptcy Court found that the document
Rozier referenced at the hearing was a "TILA disclosure statement provided in
connection with her Modification of Note, not evidence of her entry into a new
loan." (Claims Disallowance Order 24 (citation omitted)).

This Court reviews the Bankruptcy Court's findings of fact under the
clearly erroneous standard.  *In re Ames Dep't Stores, Inc.*, 582 F.3d at 426.
"The burden of demonstrating that the Bankruptcy Court's findings of fact are
clearly erroneous rests squarely on the shoulders of the appellant." *Ivers* v.
*Ciena Capital LLC* (*In re Ciena Capital LLC*), 440 B.R. 47, 52 (S.D.N.Y. 2010);
*see also Bay Harbour Mgmt., L.C.* v. *Lehman Bros. Holdings, Inc.* (*In re Lehman
Bros. Holdings, Inc.*), 415 B.R. 77, 83 (S.D.N.Y. 2009) ("While the bankruptcy
court's findings of fact are not conclusive on appeal, 'the party that seeks to
overturn them bears a heavy burden.'" (citation omitted)).  Because Rozier still
has not submitted a copy of the June 1, 2006 loan papers, which were not
recorded, she has not demonstrated that the Bankruptcy Court's finding of fact
was clearly erroneous.

*Third*, Rozier challenges the Bankruptcy Court's findings of fact
concerning her failure to make monthly payments on the loan beginning
December 1, 2007. (*See* Claims Disallowance Order 5).  Rozier does not

26

dispute that she has not made payments on her loan for at least six years;

rather, she asserts that her last payment was on February 26, 2008, and that

Debtors accepted the payment, issued the March 2008 Default Notice, and

then returned her payment. (Appellant Br. 2, 8). Rozier also claims that a

GMACM employee instructed her to skip payments and that she relied on those

instructions. (*Id.*). Rozier does not address, however, the fact that ETS

rescinded the March 2008 Default Notice and the foreclosure sale contemplated

by that Notice was not completed. (*See* Horst Decl. ¶ 20; *id.* at Ex. 3-A.13).

Accordingly, even if Rozier met her "heavy burden" of demonstrating that her

claims were true, *In re Lehman Bros. Holdings, Inc.*, 415 B.R. at 83, she failed

to establish that the Debtors' actions prejudiced or harmed her — particularly

since she admits not making monthly payments on her loan for at least six

years — which is a necessary component of a wrongful foreclosure claim. *See*

*In re Mortg. Elec. Registration Sys., Inc.*, 754 F.3d at 784.

*Fourth*, Rozier contends that she has a valid wrongful foreclosure claim

because the September 2012 Deed Upon Sale, which was executed after BOA

transferred its interests in the deed of trust to U.S. Bank, erroneously conveyed

the Property to BOA rather than U.S. Bank. (*See* Appellant Br. 12, 41; *see also*

Horst Decl. Ex. 3-A.18). It is true that ETS rescinded the September 2012

Deed Upon Sale after discovering a defect in the applicable notice. (*See* Horst

Decl. Ex. 3-A.19). This fact alone does not bestow a viable claim on Rozier. As

noted, in order to bring a valid claim for wrongful foreclosure under California

law, Rozier must allege prejudice or harm. *See In re Mortg. Elec. Registration*

*Sys., Inc.*, 754 F.3d at 784. "Prejudice is not presumed from 'mere irregularities' in the process." *Herrejon* v. *Ocwen Loan Servicing, LLC*, 980 F. Supp. 2d 1186, 1201 (E.D. Cal. 2013) (citation omitted). "Plaintiffs must demonstrate 'that the foreclosure would have been averted but for [the] alleged deficiencies.'" *Kilpatrick* v. *U.S. Bank, NA*, No. 12 Civ. 1740 W(NLS), 2013 WL 4525571, at *4 (S.D. Cal. Aug. 26, 2013) (citations omitted). Here, Rozier fails to allege how the purported deficiency in the September 2012 Deed Upon Sale caused her prejudice or harm, particularly given its prompt rescission, and she has plainly failed to explain how a foreclosure that did not happen would have been averted but for the alleged deficiency.

*Finally*, Rozier asserts that MERS improperly assigned Westwood's interest as trustee to BOA, because MERS had previously substituted ETS as trustee in place of Westwood. (Appellant Br. 8).[15] The Bankruptcy Court found that MERS's substitution of trustee agreement and subsequent assignment of Westwood's interest in the deed of trust to BOA were valid. (*See* Claims Disallowance Order 25-26). These findings of fact are well-supported and are not clearly erroneous. *In re Ames Dep't Stores, Inc.*, 582 F.3d at 426. Although MERS had named ETS as substitute trustee in place of Westwood in 2008, MERS did not assign Westwood's interest in the deed of trust to ETS at that

---

[15]    Rozier also argues that Westwood and MERS were not legally registered in California while they held an interest in the deed of trust. (*See* Appellant Br. 13; Appellant Reply 4-5). The Bankruptcy Court did not reach this issue in either decision on appeal, and "we may not decide factual issues not addressed by the Bankruptcy Court." *Omni Partners, L.P.* v. *Pudgie's Dev. of NY, Inc.* (*In re Pudgie's Dev. of NY, Inc.*), 239 B.R. 688, 697 (S.D.N.Y. 1999). In any event, Rozier does not provide any support for this claim.

time, and thus MERS could properly assign Westwood's interest in the deed of trust to BOA on March 3, 2011. (*See* Horst Decl. Ex. 3-A.8, A.14).

For all of these reasons, the Court affirms the Bankruptcy Court's ruling sustaining the Trust's objection to Rozier's Claims insofar as they are predicated on a wrongful foreclosure theory.

### c.    The Bankruptcy Court Correctly Disallowed Rozier's Fraud-Based Claims

Rozier next appeals from the Bankruptcy Court's ruling that she lacked standing to pursue certain fraud-based claims that are alleged to have arisen prior to January 12, 2012. (Appellant Br. 9-10, 34). By way of background, Rozier filed a chapter 13 bankruptcy petition on August 22, 2011, and on January 12, 2012, the case was converted to chapter 7 and a chapter 7 trustee was appointed. (*See* Dkt. #7474-11, Ex. 9). Rozier's chapter 7 bankruptcy case remains pending as of the date of this Opinion.

The Bankruptcy Court found — and Rozier does not challenge — that claims that accrued before the chapter 7 petition date (January 12, 2012) are property of Rozier's bankruptcy estate and may generally be brought only by the chapter 7 trustee. (Claims Disallowance Order 17). Instead, Rozier argues that the Bankruptcy Court erred in not finding that the chapter 7 trustee had abandoned Rozier's claims against the Debtors, because such a finding would have meant that the claims were no longer property of the estate and could be brought by Rozier. (Appellant Br. 9-10). The argument fails.

Under the Bankruptcy Code, abandonment of property by the trustee requires notice and a hearing. 11 U.S.C. § 554(a)-(b); *see also Quarre* v. *Saylor*

(*In re Saylor*), 108 F.3d 219, 221 n.3 (9th Cir. 1997) ("Abandonment requires

formal notice and a hearing."); Fed. R. Bankr. P. 6007(a) (outlining procedures

for proposed abandonment or disposition of property).  "[P]roperty is not

considered abandoned from the estate unless the procedures specified in § 554

are satisfied."  *Catalano* v. *C.I.R.*, 279 F.3d 682, 687 (9th Cir. 2002).  Therefore,

abandonment is not effective without notice to the creditors.  *Holta* v. *Zerbetz*

(*In re Anchorage Nautical Tours, Inc.*), 145 B.R. 637, 642 (B.A.P. 9th Cir. 1992)

(citing *Sierra Switchboard Co.* v. *Westinghouse Elec. Corp.*, 789 F.2d 705, 709

(9th Cir. 1986)).

Rozier argues that the chapter 7 trustee abandoned Rozier's claims

against the Debtors, and that this abandonment was evidenced by the trustee's

email to Rozier stating that he did not object to Rozier asserting claims she may

possess in the Residential Capital bankruptcy, so long as any distribution

received on account of such claims was held pending the trustee's further

instruction.  (*See* Bankr. Dkt. #7730, Ex. 7).  Because there has been neither

notice to creditors nor a hearing regarding abandonment, the Bankruptcy

Court did not err in finding that the chapter 7 trustee had not abandoned

Rozier's claims, and thus Rozier lacks standing to assert any claims arising

prior to January 12, 2012.  11 U.S.C. § 554; *Catalano*, 279 F.3d at 687.[16]

---

[16]    Even had the abandonment been effective, it is not clear that Rozier could pursue the
pre-petition fraud claims. *See In re Manshul Constr. Corp.*, 223 B.R. 428, 429-30
(Bankr. S.D.N.Y. 1998) (reviewing cases for the proposition that in a chapter 7 case, a
debtor lacks standing to pursue an action even if the trustee has failed to do so
"because [the debtor] has no interest in the distribution to creditors of assets of the
estate").

Rozier's fraud-based claim that "her name was forged in the initial transaction" plainly arose prior to January 12, 2012, and thus Rozier lacks standing to assert this claim. (Appellant Br. 23; *see also* Bankr. Dkt. #8014-1, Ex. 8). Even if Rozier had standing, her claim regarding forgery would not satisfy all of the elements of a fraud claim under California law, which are: "[i] misrepresentation (false representation, concealment or nondisclosure); [ii] knowledge of the falsity (or 'scienter'); [iii] intent to defraud, i.e., to induce reliance; [iv] justifiable reliance; and [v] resulting damage." *Altman* v. *PNC Mortg.*, 850 F. Supp. 2d 1057, 1068 (E.D. Cal. 2012) (citation omitted). "'[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and specifically, all of the elements of the cause of action.'" *Id.* at 1069 (citation omitted). Rozier has not shown that she justifiably relied on the allegedly forged documents, nor that she suffered any damages on account of such reliance. *See also* Fed. R. Civ. P. 9(b) (requiring particularity with respect to allegations of fraud). Accordingly, Rozier has not brought valid fraud-based claims, and the Bankruptcy Court's ruling sustaining the Trust's objection to the Claims to the extent they were predicated on allegations of fraud is affirmed.

### d.    The Court May Not Consider Rozier's Unconscionability Arguments on Appeal

Rozier argues for the first time on appeal that certain rulings in the Claims Disallowance Order are "unconscionable." (Appellant Br. 44-45). Rozier has waived this argument because she did not raise it before the Bankruptcy Court. *See In re Lionel Corp.*, 29 F.3d at 92; *see also In re Best*

*Payphones, Inc.*, 432 B.R. at 60.  In any event, under California law,

unconscionability is a defense to the enforcement of a contract, not an

affirmative claim.  *Ngoc Nguyen* v. *Wells Fargo Bank, N.A.*, 749 F. Supp. 2d

1022, 1037 (N.D. Cal. 2010); *see also Rubio* v. *Capital One Bank*, 613 F.3d

1195, 1206 (9th Cir. 2010) (finding that "plaintiff cannot assert

unconscionability as an independent claim for relief").  Accordingly, Rozier's

arguments concerning unconscionability are legally and factually unavailing.

> ### e.    The Bankruptcy Court Properly Denied Rozier's Motions to Strike

Finally, Rozier appeals from the Bankruptcy Court's denial of her

motions to strike the declarations of Deanna Horst and Yaron Shaham that

were submitted in support of the Objection.  (Appellant Br. 10).  This Court

reviews the Bankruptcy Court's denial of the Motions to Strike for abuse of

discretion.  *See In re Delphi Corp.*, 394 B.R. at 344; *see also Turner* v. *NYU

Hosps. Ctr.*, 470 F. App'x 20, 26 (2d Cir. 2012) (summary order).

The Bankruptcy Court properly denied Rozier's Motions to Strike

because Fed. R. Civ. P. 12(f) applies to pleadings and declarations are not

pleadings.  *See* Fed. R. Civ. P. 7(a); *see also In re Bear Stearns Companies, Inc.

Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 581 (S.D.N.Y. 2011)

(denying motion to strike because "[a] motion to dismiss is not a pleading").

And even if there were inconsistencies in the declarations, as Rozier alleges,

"[t]he mere fact that testimony is inconsistent is insufficient to justify striking

an entire document."  *Trinidad* v. *Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d

545, 553 (S.D.N.Y. 2013).  The Bankruptcy Court also "appropriately weighed and considered the allegations made by all parties" in the Motions to Strike and found that both declarations were admissible.  (Claims Disallowance Order 15-16 & n.15).  Accordingly, the Bankruptcy Court did not abuse its discretion in denying the Motions to Strike.[17]

In sum, the Bankruptcy Court did not err in disallowing and expunging Rozier's Claims nor in denying the Motions to Strike, and thus the Claims Disallowance Order is affirmed.

### 4.    The Reconsideration Order Is Affirmed

Separately, Rozier appeals from the Bankruptcy Court's denial of her motion for reconsideration of the Claims Disallowance Order under Bankruptcy Rules 9023 and 9024.  (Bankr. Dkt. #8446).  This Court reviews the Bankruptcy Court's denial of the Reconsideration Motion for an abuse of discretion.  *In re Coudert Bros. LLP*, 673 F.3d at 186.

Contrary to Rozier's argument (*see* Appellant Br. 24-25), the Bankruptcy Court correctly found that Bankruptcy Rules 9023 and 9024 applied to the Reconsideration Motion.  Under section 502(j) of the Bankruptcy Code, "[a] claim that has been allowed or disallowed may be reconsidered for cause."  11 U.S.C. § 502(j).  The Bankruptcy Code does not define "cause," but when

---

[17]    Rozier also argues that the Bankruptcy Court abused its discretion in allowing the Trust to withdraw a declaration by Michael J. Talarico in support of the Trust's Motion for Order Estimating Claims and Establishing the Disputed Claims Reserve.  (Appellant Br. 41).  Because this issue was not raised below, and because no manifest injustice would result from a waiver, the Court deems the argument to have has been waived and will not consider it.  *See In re Lionel Corp.*, 29 F.3d at 92; *see also In re Best Payphones, Inc.*, 432 B.R. at 60.

deciding a motion under Section 502(j), the bankruptcy court applies the same analysis that it would to alter or amend a judgment under Bankruptcy Rule 9023 (incorporating Fed. R. Civ. P. 59), or to grant relief from a final judgment, order, or proceeding under Bankruptcy Rule 9024 (incorporating Fed. R. Civ. P. 60), depending on whether the movant sought reconsideration within fourteen days after the entry of the order disallowing the claim, or did so only later. *See In re AMR Corp.*, No. 11-15463 (SHL), 2015 WL 4186798, at *2 (Bankr. S.D.N.Y. July 10, 2015); *see also In re Enron Corp.*, 352 B.R. 363, 368 (Bankr. S.D.N.Y. 2006) (construing motion filed after the time period specified in Fed. R. Civ. P. 59(e) as a motion under Fed. R. Civ. P. 60).

Turning first to the issue of timeliness, Rozier argues that she met the excusable neglect standard that would have allowed the Bankruptcy Court to accept her late-filed Reconsideration Motion. (*See* Appellant Br. 10-11, 25 (noting the facts that the Claims Disallowance Order was filed during the holiday season and was transmitted to her electronically and in an envelope that misspelled her name, as well as contemporaneous illnesses of family and friends)).[18] Rule 9023 requires that "[a] motion . . . to alter or amend a judgment shall be filed . . . no later than 14 days after entry of judgment." Fed. R. Bankr. P. 9023. The Bankruptcy Court found that "[b]ecause the Motion was not timely filed, Rozier cannot obtain relief under Bankruptcy Rule 9023,"

---

[18]    Rozier also suggests that the Bankruptcy Court waived any timeliness argument by scheduling a date for her reply brief. (Appellant Br. 10, 24, 39). The argument fails, among other reasons, because Rozier's motion was also brought under Bankruptcy Rule 9024, which did not have a fourteen-day limitations period.

and that "even if the [m]otion were timely filed," reconsideration would not be warranted under Bankruptcy Rule 9023. (Reconsideration Order 12).

This Court agrees with the Bankruptcy Court that Rozier's Reconsideration Motion was untimely under Bankruptcy Rule 9023. Even were the Court to find otherwise, it would conclude that any error was harmless, because the Bankruptcy Court proceeded to analyze Rozier's Reconsideration Motion under Bankruptcy Rule 9023 (and Rule 9024) notwithstanding the late filing. (*See* Reconsideration Order 12-15). *See also Morse*, 2015 WL 353931, at *3 ("A district court should not overturn a bankruptcy court decision if an error is harmless, meaning the error 'is not inconsistent with substantial justice or does not affect the substantial rights of the parties.'" (citation omitted)).

The Bankruptcy Court did not err in its evaluation of the merits of Rozier's proffered bases for reconsideration. Here, as below, Rozier argues that her Reconsideration Motion should have been granted because of an intervening change in the controlling law, namely, the Supreme Court decision in *Jesinoski* v. *Countrywide Home Loans, Inc.*, 135 S. Ct. 790 (2015). (Appellant Br. 43-44). A decision is "controlling" for purposes of ruling on a motion for reconsideration where it "might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257. In *Jesinoski*, the Supreme Court held that written notice of rescission within three years of a loan's consummation is all that is required for a borrower to exercise his right to rescind under TILA. 135 S. Ct. at 793. Because *Jesinoski* did not concern a

35

borrower withdrawing a rescission under TILA, the Bankruptcy Court did not abuse its discretion in finding that *Jesinoski* was not an intervening change of controlling law.  Similarly, while Rozier may have disagreed with the Bankruptcy Court's findings of fact, she was and remains unable to identify any newly-discovered evidence that warranted alteration of those findings, or of the legal conclusions that flowed from them.

Finally, Rozier argues on appeal that the Bankruptcy Court erred in concluding that relief was not warranted pursuant to Fed. R. Civ. P. 60(b)(6), because she "alleged fraud and forgery in the underlying transaction." (Appellant Br. 29-30).  Rule 60(b)(6) permits a court to grant relief from a final judgment or order for "any other reason that justifies relief."  Under Rule 60(b)(6), relief is warranted "if extraordinary circumstances are present or the failure to grant relief would work an extreme hardship on the movant."  *ISC Holding AG* v. *Nobel Biocare Fin. AG*, 688 F.3d 98, 109 (2d Cir. 2012).  "The burden of proof is on the party seeking relief from judgment."  *United States* v. *Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001).  Rozier has not met this high standard, because she presented inadequate evidence of fraud or forgery, and she has not otherwise demonstrated that any "extraordinary circumstance" or "extreme hardship" exists that would justify granting the Reconsideration Motion.  Accordingly, the Bankruptcy Court did not abuse its discretion in denying relief under Fed. R. Civ. P. 60(b)(6).

In sum, the Bankruptcy Court did not abuse its discretion in finding that the Reconsideration Motion did not warrant relief under Bankruptcy Rule 9023 or 9024, and thus Rozier's appeal of the Reconsideration Order is denied.

## CONCLUSION

For the foregoing reasons, the Claims Disallowance Order and the Reconsideration Order are AFFIRMED, and Rozier's appeal from the Orders is DENIED.  The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated:  February 22, 2016
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

_Sent by First Class Mail to_:
Karen Michele Rozier
1313 Idylwood Road
Pikesville, MD 21208