UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|   |   |
|---|---|
| In re: | ) **NOT FOR PUBLICATION** |
|  | ) |
|  | ) Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | ) |
|  | ) Chapter 11 |
| Debtors. | ) |
|  | ) (Jointly Administered) |

**MEMORANDUM OPINION AND ORDER SUSTAINING THE RESCAP BORROWER
CLAIMS TRUST'S OBJECTION TO CLAIM NO. 1083
FILED BY MARIA M. & ELDA M. THOMPSON**

*A P P E A R A N C E S:*

MORRISON & FOERSTER LLP
*Attorneys for the ResCap Borrower Claims Trust*
250 West 55th Street
New York, New York 10019
By:   Jordan A. Wishnew, Esq.

MARIA M. THOMPSON
*Pro Se*
29 General Lane
Willingboro, New Jersey 08046
By:   Maria M. Thompson

ELDA M. THOMPSON
*Pro Se*
29 General Lane
Willingboro, New Jersey 08046
By:   Elda M. Thompson

**MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the ResCap Borrower Trust's (the "Trust") objection (the

"Objection," ECF Doc. # 7736)[1] to Claim Number 1083 (the "Claim") filed by Maria M.

---

[1] The Objection is supported by the declarations of Kathy Priore ("Priore Decl.," ECF Doc. # 7736-3) and Norman S. Rosenbaum ("Rosenbaum Decl.," ECF Doc. # 7736-4). The Thompsons filed an opposition to the Objection (the "Opposition," ECF Doc. # 7817). The Trust thereafter filed a reply (the "Reply," ECF Doc. # 7967), supported by a supplemental declaration of Ms. Prior (the "Priore Supp.," ECF Doc. # 7967-1). On September 18, 2015, the Thompsons filed an addendum to their response to the Objection (the "First Addendum," ECF. Doc. #

Thompson and Elda M. Thompson (the "Thompsons") filed against Debtor GMAC Mortgage, LLC ("GMACM"),[2] asserting a secured claim in the amount of $158,336.03 and a general unsecured claim in the amount of $500,000.

The Claim raises numerous allegations based on two primary arguments: (i) a breach of contract based on improper servicing conduct and wrongful initiation of foreclosure proceedings, and (ii) violations of certain New Jersey statutes relating to mortgage loans. On July 1, 2015, the Court issued the *Memorandum Opinion and Order Sustaining in Part and Overruling in Part the Rescap Borrower Claims Trust's Seventy-Sixth Omnibus Objection to Claims (No Liability Borrower Claims) as to Claim Number 1083 Filed by Maria M. and Elda Thompson* (the "Prior Opinion," ECF Doc. # 8823). In the Prior Opinion, the Court sustained the Objection as to all but one of the Thompsons' arguments. Familiarity with the Prior Opinion is assumed. The sole issue remaining before the Court is whether Debtor GMACM improperly charged the Thompsons interest on the Loan (as defined below).

The Court held an evidentiary hearing on January 25, 2016.[3] The Thompsons did not appear at the evidentiary hearing in person because of health and weather conditions. The Court allowed the Thompsons to appear telephonically. Elda Thompson was sworn and testified telephonically. Sara Lathrop, an employee of the Trust, testified at the hearing; she was cross-examined by Elda Thompson. The Court admitted in evidence documents offered by the Trust. At the conclusion of the evidentiary hearing, the Court took the matter under submission. This

---

9199). On October 6, 2015, the Debtors filed the declaration of Sara Lathrop in support of the Objection (the "Lathrop Decl.," ECF Doc. # 9224). On October 6, 2015, the Thompsons filed a second addendum to their response to the Objection (the "Second Addendum," ECF Doc. # 9238).

[2]     The Claim was originally filed against Debtor Residential Capital, LLC ("ResCap") but was reclassified as a claim against GMACM by this Court's order. (*See* ECF Doc. # 5895.)

[3]     The evidentiary hearing was originally scheduled for November 3, 2015. However, it was rescheduled at the request of Elda Thompson due to health issues.

Opinion includes the Court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052.

As detailed below, the Court concludes that the Trust adequately shifted the burden by rebutting the prima facie validity of the Claim and that the Thompsons failed to meet their burden to establish the viability of the Claim. Therefore, the Objection is **SUSTAINED** and the Claim is **DISALLOWED** and **EXPUNGED**.

## I.     BACKGROUND

On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code. The second joint amended chapter 11 plan proposed by the Debtors and the Official Committee of Unsecured Creditors (the "Plan," ECF Doc. # 6065) was confirmed on December 11, 2013 and became effective on December 17, 2013. (*See* ECF Doc. # 6137.)

**A. The Loan History**

JP Morgan Chase Bank, N.A. ("JP Morgan") originated a loan to the Thompsons in 2005, secured by a mortgage recorded on May 12, 2005, encumbering real property located at 137 Ellery Avenue, Newark, New Jersey 07106 (the "Property"). (*See* Claim at 11–12.) On June 25, 2005, the Thompsons obtained a new loan from Ameriquest (the "Loan"), evidenced by a promissory note (the "Note," Priore Supp. Ex. C) secured by a mortgage (the "Mortgage," *id.* Ex. D) on the Property. The terms of the Note expressly provide that it:

> CONTAINS PROVISIONS ALLOWING FOR CHANGES IN
> [THE] INTEREST RATE AND [THE] MONTHLY PAYMENT.
> THIS NOTE LIMITS THE AMOUNT [THE] INTEREST RATE
> CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM
> RATE [THE THOMPSONS] MUST PAY.

3

(Priore Supp. Ex. C). The original interest rate under the Note was 5.990% and the initial monthly payment was $1,227.77. (*Id.* at 1.) The original interest rate was subject to periodic changes pursuant to the terms of the Note. (*Id.*) Specifically, in order to calculate the new interest rate on specified "change dates," 2.75% would be added to the current index rate and the sum would be rounded to the nearest one-eighth of one percent. (*Id.*) The Note expressly provided that the interest rate on the Loan could not be less than 5.99% or exceed 11.990%.

The Note was transferred to GMACM, evidenced by Ameriquest's endorsement in blank (*see id.*; Reply ¶ 8), and the Mortgage was assigned to U.S. Bank N.A. ("U.S. Bank") as trustee for the securitization trust, Citigroup Mortgage Loan Trust Inc. series 2005-09 ("Citigroup") (*see* "Assignment of Mortgage," Priore Supp. Ex. E). GMACM serviced the Loan from October 20, 2005 until servicing was transferred to Ocwen Loan Servicing, LLC ("Ocwen") on February 16, 2013. (Obj. Ex. 1-A at 7; Reply ¶ 8.)

GMACM's servicing records show that the account first fell behind on October 16, 2006 when the Thompsons sent a payment with insufficient funds. (Obj. Ex. A. at 9–10.) The Thompsons attempted to make payments on November 7, 2006 and January 16, 2007 that were also returned because of insufficient funds. (*Id.* at 10.) After the return of the January 2007 payment, GMACM placed a restriction on the Thompsons' account that required that payments be made in certified funds. (*Id.*)[4]

Although the Thompsons made their March 9, 2007 payment, the Trust contends that the payment was ultimately returned because it was not made in certified funds. (*Id.* at 10–11.) The

---

[4] Once three payments were returned due to insufficient funds, GMACM's company policy required GMACM to place a restriction on an account. (Obj. Ex. A. at 10.)

Thompsons failed to make their payments in April or May 2007, causing the account to fall delinquent again. (*Id.* at 10.)

On June 5, 2007, the Debtors mailed a breach letter to the Thompsons. (*Id.* at 11.) Despite receiving a payment on June 21, 2007 from the Thompsons, the Debtors returned the payment because the Thompsons had submitted only one of the three payments due on the account. (*Id.*) According to GMACM's guidelines that were in effect at the time, the Thompsons were required to pay half of the total amount due on the account in order for a payment to be accepted. (*Id.*) The Debtors received a larger payment from the Thompsons on February 22, 2007, but this payment was also returned due to insufficient funds. (*Id.*)

On July 10, 2007, the Thompsons' account was referred for foreclosure as the Thompsons had failed to make their payments for March through July 2007. (*Id.*) GMACM received a payment from the Thompsons on July 16, 2007, which was returned because it was sufficient to only pay for one of the five payments due on the account.[5] (*Id.*) The Thompsons attempted to make payments on August 15 and September 14, 2007 that were similarly returned. (*Id.*)

GMACM received workout information from the Thompsons on September 21, 2007. (*Id.* at 12.) GMACM determined that the Thompsons qualified for a 12-month repayment plan with a $4,000 down payment and a payment of $2,215 due on the 30th of each month, starting in September 2007 and ending in September 2008. (*Id.*) On October 30, 2007, GMACM received an executed repayment plan agreement from the Thompsons. (*Id.*) Pursuant to this repayment plan, the Thompsons successfully brought their account current. (*Id.*)

---

[5] GMACM's guidelines at the time required the borrower of an account in active foreclosure to pay the total amount due, including foreclosure fees, in order for payments to be accepted.

On November 25, 2008, after the completion of the repayment plan, Maria Thompson spoke with GMACM on the phone and asked why the interest rate on the Loan had increased to 6%. (*Id.*) GMACM advised her that the Loan was an adjustable rate mortgage. (*Id.*) Maria Thompson stated that she wanted a fixed rate mortgage and GMACM advised her to contact the Direct Lending Department to discuss her options. (*Id.*) Maria Thompson also stated that she had not received a monthly account statement that month. (*Id.*) GMACM advised her that the monthly account statement was mailed to the correct address on November 4, 2008. (*Id.*) GMACM also faxed a copy of the account statement to Maria Thompson. (*Id.*)

On January 5, 2010, GMACM received another workout package from the Thompsons requesting a loan modification. (*Id.*) On January 7, 2010, GMACM denied the loan modification because there was no verifiable income to support the loan modification. (*Id.*) On the same day, GMACM received a payment from the Thompsons, which was subsequently returned to the Thompsons due to insufficient funds. (*Id.*) On January 11, 2010, GMACM called the Thompsons to advise them that the loan modification was denied, but no one answered the phone. (*Id.*)

On May 5, 2010, Maria Thompson called GMACM regarding the fact that her credit bureau reports reflected a late payment. (*Id.* at 12–13.) GMACM advised her that they had received the January payment 35 days after its due date. (*Id.* at 13.) Although Maria Thompson indicated that she wanted the credit report amended, GMACM advised her that it would not amend the credit report because it believed the information reported was accurate. (*Id.*)

On May 14, 2010, GMACM received a letter from Maria Thompson disputing how payments were posted. (*Id.*) In response, GMACM provided Maria Thompson with copies of the account payment history and the 2007 12-month repayment agreement. (*Id.*) Additionally,

6

GMACM advised the Thompsons that their credit reports would continue to reflect a payment delinquency because the account was delinquent and there was no agreement to amend the credit report. (*Id.*)

On September 10, 2010, GMACM received another workout package from the Thompsons requesting a loan modification. (*Id.*) On October 6, 2010, the request was denied because the financial package indicated that the Property was occupied by a non-owner. (*Id.*)

On September 24, 2010, GMACM obtained information from the Newark City Tax Department that the Thompsons were behind on paying the third and fourth installments for their 2009 property taxes, as well as the first and second installments of the 2010 property taxes. (*Id.*) GMACM paid the delinquent taxes and added an escrow to the Thompsons' loan account. (*Id.*) On October 2, 2010, Maria Thompson called GMACM to inquire regarding the escrow that had been added to the account. (*Id.*) GMACM advised her that the escrow was added as part of the loan modification process. (*Id.*) On October 12, 2010, GMACM mailed a letter to the Thompsons to inform them that the escrow had been removed from the account because the previous loan modification had been denied. (*Id.* at 13–14.) The letter further advised that there was a shortage on the account for delinquent taxes that needed to be repaid. (*Id.* at 14.)

On December 2, 2010, GMACM mailed a copy of the Mortgage to the Thompsons to demonstrate that the escrow could be added to protect the Property. (*Id.*) On December 3, 2010, Maria Thompson called GMACM and disputed the addition of the escrow. (*Id.*) She argued that the taxes and insurance had already been paid and that the foreclosure on the account was illegal. (*Id.*) On December 6, 2010, GMACM spoke with Maria Thompson, at which time Maria Thompson stated that she did not have to pay the negative escrow balance. (*Id.*) GMACM advised her that the account would not be escrowed in the future, but that she was required to

7

pay the negative balance incurred during the prior escrow period. (*Id.*) Maria Thompson disputed the foreclosure that was commenced in 2007. (*Id.*) GMACM advised her that it would review her account. (*Id.*) On December 7, 2010, GMACM emailed the Thompsons to advise them that GMACM had paid delinquent taxes on their account. (*Id.*)

On December 11, 2010, the Thompsons called GMACM requesting an update on the foreclosure dispute. (*Id.*) GMACM advised the Thompsons that it needed more time to review the account. (*Id.*) The Thompsons disputed the escrow. (*Id.*) GMACM advised them that the escrow account was not illegal and that the Thompsons needed to pay the negative escrow balance. (*Id.*)

On December 30, 2010, the Thompsons called GMAMC disputing the escrow payments due on the account. (*Id.*) GMACM advised the Thompsons that the Mortgage allowed the escrow account to be added if necessary and advised that it would mail a copy of the mortgage deed to them for their review. (*Id.* at 15.) On January 5, 2011, GMACM mailed the Thompsons a copy of the Mortgage. (*Id.*) On January, 25, 2011, the Thompsons called GMACM and stated that the payments made to GMACM in September through November 2007 had not posted on their account, but their bank records indicated that the payments had cleared at the bank. (*Id.*) GMACM requested that the Thompsons provide it with copies of the bank statements. (*Id.*)

On April 19, 2011, GMACM received a Qualified Written Request from the Thompsons. (*Id.*) GMACM replied on May 9, 2011—providing copies of the Note, HUD documents, mortgage deed and payment history—and advised the Thompsons of the assignment of the mortgage deed. (*Id.*)

On July 7, 2011, GMACM again referred the account to foreclosure because payments were due from April through July 2011. (*Id.*) GMACM returned a payment that it received on

8

July 11, 2011 to the Thompsons because it was not sufficient to bring the account current. (*Id.*) On July 15, 2011, the Thompsons called and inquired regarding the returned payment, at which time GMACM advised them that the account was in active foreclosure. (*Id.*)

On July 16, 2011, the Thompsons called GMACM regarding a representative that came onto their Property to do an inspection. (*Id.*) The Thompsons argue that this constituted harassment. (*Id.*) GMACM explained that the purpose of the property inspection was to ensure that the Property was occupied and was being maintained. (*Id.*) GMACM mailed a copy of the Note to the Thompsons' on July 19, 2011. (*Id.*) On July 21, 2011, GMACM returned another payment it received from the Thompsons because it again was insufficient to bring the account current. (*Id.*)

Thereafter, GMACM received a letter from the Thompsons that included certain copies of certain tax payments that had been made and requesting that GMACM send its response to the Thompsons' attorney. (*Id.* at 15–16.) GMACM responded to the attorney with the prior responses that it had sent to the Thompsons and a copy of the tax authority's complaint. (*Id.* at 16.) GMACM indicated that these issues had been addressed and would not continue to be addressed any further. (*Id.*) Additionally, GMACM advised the attorney that the tax receipts that the Thompsons had provided reflected that taxes had been paid in 2007 and 2008, but GMACM had paid taxes for 2009 and 2010. (*Id.*)

Subsequently, GMACM returned payments to the Thompsons that it had received on the following dates: August 5, August 11, August 17, September 6, September 12, September 15, September 21, September 23, September 27, September 28, October 3, October 10, October 13, and October 17, 2011. (*Id.*) Each payment was returned to the Thompsons because it was not sufficient to bring the account current. (*Id.*)

9

On April 20, 2012, GMACM spoke with Alex Ramos, a third party authorized by the Thompsons to speak on their behalf. (*Id.*) Ramos asked if the account was under review for loan modification. (*Id.*) GMACM indicated that the account was not under review and that the account was in active foreclosure. (*Id.*) Ramos indicated that the Thompsons wanted to be considered for a loan modification; however, GMACM responded that the Thompsons needed to submit a workout package for review. (*Id.*) On April 24, 2012, GMACM mailed a workout package to the Thompsons. By February 16, 2013, the date when the Loan was transferred to Ocwen, the workout package had not been returned by the Thompsons. (*Id.*)

### B.  The Claim

On October 9, 2012, the Thompsons timely filed their Claim, asserting a secured claim in the amount of $158,336.03 and a general unsecured claim in the amount of $500,000 against ResCap. (Priore Supp. Ex. B.) The Claim was reclassified as a general unsecured claim in the amount of $658,336.03 against GMACM by way of this Court's order. (*See* ECF Doc. # 5895.)

The Thompsons listed "breach of contract" as the basis for their Claim and attached a letter indicating that Elda Thompson "made [certain] payments to GMAC[M] from August 2005 through September 2011, in which month GMAC[M] began to deny accepting mortgage payments, for a grand total of $158,336.23; therefore, GMAC[M] owes [them] $158,336.23." (Claim # 1083.) The Thompsons also attached the following documents to their Claim:

(1)     a forensic review report, dated July 23, 2012, prepared by the Foreclosure Law Center (the "Forensic Report");

(2)     a letter, dated July 13, 2005, from Chase Home Finance LLC to Maria Thompson allegedly evidencing the "[f]ull [p]ayment of [the Thompsons'] mortgage;"

(3)     a copy of the JP Morgan mortgage a "Cancelled of Record" stamp dated August 16, 2005;

(4)     a copy of the Ameriquest Mortgage with handwritten notes; and

10

(5)  copies of certain pages of the Ameriquest Note.

(*Id.*) The Thompsons' Claim is based numerous allegations. However, pursuant to the Prior Opinion, the sole issue remaining before the Court is whether Debtor GMACM improperly charged the Thompsons interest on the Loan.

### C. The Objection as it Relates to the Interest Rate Argument

Through the Objection, the Trust seeks to disallow and expunge the Claim in its entirety, asserting that GMACM is not liable to the Thompsons under any basis or theory of relief alleged in the Claim. The Trust contends that GMACM correctly charged, collected, and applied payments in accordance with the terms of the Note and Mortgage, which consisted of an adjustable rate mortgage. (Obj. Ex. 1-A at 9.)

According to the Trust, section 4 of the Note provides for a fixed interest of 5.99% from the date of origination through August 1, 2008. However, beginning on August 1, 2008, the interest rate would adjust, and continue to adjust, every six months on certain "Change Dates." (Lathrop Dec. ¶ 6.) Under these terms, the new interest rate would be calculated by refinancing the average of the interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"). (*Id.*) Specifically, before each Change Date, the new interest rate would be calculated by adding two and three-quarters percentage points (2.75%) to the LIBOR listed 45 days prior to the Change Date, and then rounding the result to the nearest one-eighth of one percent (0.125%). (*Id.*) Further, pursuant to the terms of the Note, the interest rate could not exceed 11.99% or be less than 5.99%. (*Id.*) Moreover, the interest rate would not be increased or decreased on any single Change Date by more than one percentage point from the rate of interest for the preceding six months. (*Id.*)

11

The Trust asserts that it sent various letters to the Thompsons regarding the adjustable nature of the interest rate on the Loan (the "Interest Rate Notification Letters"). (Obj. Ex. 1-A at 9.) According to the Lathrop Declaration, all of the Interest Rate Notification Letters, except for the Interest Rate Notification Letter dated May 27, 2008, indicated that the applicable interest rate was 5.99%. The Interest Rate Notification Letter dated May 27, 2008 indicated that effective August 1, 2008, the applicable interest rate would be 6.00% for a six-month period.

### D. The Opposition as it Relates to the Interest Rate Argument

The Thompsons argue that GMACM charged them a higher interest rate than the rate disclosed on the billing statements. (Opp. at 3.) In support, the Thompsons rely on a copy of the Forensic Report to demonstrate that GMACM charged them an interest rate above the contractual amount. (*See* Opp. Ex. E.) According to the Thompsons, the Forensic Report "shows the mortgage loan on said property did not pass the state regulations and that GMAC[M] was also charging a higher interest rate than what is stated on the billing statements." (*Id.* at 3.)

Specifically, the Thompsons argue that the Mortgage had an APR of 5.99% with a principal and interest payment of $1,227.71 per month and a margin of 2.75%. (*Id.* at 3.) The Thompsons assert that the Forensic Report indicates that the Mortgage had a disclosed APR of 6.6540% and a calculated APR of 6.6554%—with a difference of 0.0014%.

### E. The Reply as it Relates to the Interest Rate Argument

In the Reply, the Trust argues that the Debtors cannot be liable for charging an incorrect interest rate amount because the Interest Rate Notification Letters sent to the Thompsons reflected the correct terms per the Note, and the Thompsons failed to put forward any evidence to refute this argument. (Reply ¶ 43.)

## II.    DISCUSSION

### A.  Legal Standard

Correctly filed proofs of claim "constitute[] prima facie evidence of the validity [and amount] of the claim.  To overcome this prima facie evidence, the objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000) (internal citations omitted).  By producing "evidence equal in force to the prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Tr. (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted).  If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim."  4 COLLIER ON BANKRUPTCY ¶ 502.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law."  11 U.S.C. § 502(b)(1).  To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law."  *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

Federal pleading standards apply when assessing the validity of a proof of claim.  *See, e.g.*, *In re Residential Capital, LLC*, 518 B.R. 720, 731 (Bankr. S.D.N.Y. 2014); *In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure." (citations omitted)).

Accordingly, a claimant must allege "enough facts to state a claim for relief that is *plausible* on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (emphasis in original) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal citation and quotation marks omitted). Plausibility "is not akin to a probability requirement," but rather requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal citation and quotation marks omitted). The court must accept all factual allegations as true, discounting legal conclusions clothed in factual garb. *See, e.g.*, *id.* at 677–78; *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true" (citing *Iqbal*, 556 U.S. at 678)). The court must then determine if these well-pleaded factual allegations state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 678 (citation omitted). A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). A claim that pleads only facts that are "merely consistent with a defendant's liability" does not meet the plausibility requirement. *Id.* (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

(citation omitted). "The pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

### B. Breach of Contract

As detailed above, the Thompsons argue that GMACM improperly charged and applied interest to their Loan in breach of the terms of the Note and Mortgage. In support, the Thompsons rely on the Forensic Report, prepared by the Foreclosure Law Center. The Thompsons pre-marked a copy of the Forensic Report as Exhibit E, but the Court refused to admit it in evidence. The Forensic Report constituted impermissible hearsay. No sponsoring witness testified at trial, and the face of the Forensic Report clearly shows that the necessary foundation for the Forensic Report cannot be established.

The credibility and accuracy of the Forensic Report is questionable. The Forensic Report states that the disclosed APR on the Loan is 6.65400%, the calculated APR is 6.6554% and the "limit rate" is 12.7300%. (Second Addendum, Ex. E.) The Forensic Report does not explain the source of the disclosed APR or the "limit rate." The Forensic Report does not explain the methodology that was applied to calculate the APR on the Loan. In fact, the Forensic Report does not provide any technical or analytical support. The Forensic Report was originally attached to the Claim. (Claim # 1083.) This copy of the Forensic Report included a cover page that was excluded from the copy of the Forensic Report that the Thompsons' pre-marked as Exhibit E. The cover page indicates that the

> review required that The Foreclosure Law Center make reasonable assumptions respecting certain loan terms that, if erroneous, may result in material differences between the System findings and the loan's actual compliance with applicable regulatory requirements . . . . No representations or warranties are made respecting the appropriateness of The Foreclosure Law Center's assumptions, the

15

>completeness of the information considered or the accuracy of the findings.

(Claim # 1083.)

The Note signed by the Thompsons was subject to an adjustable interest rate. (Lathrop Dec., Ex. A.) The express terms of the Note stated: "[b]eginning with the first Change Date, my interest rate will be based on an index. The 'Index' is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market . . . ." (*Id.*, Ex. A at 1.) The Note provided that the interest rate would not be less than 5.99% or exceed 11.990%. (*Id.*, Ex. A at 2.) Accordingly, the Debtors had the ability to increase the Thompsons' interest rate. The evidence established that the Debtors sent various Interest Rate Notification Letters to the Thompsons informing them of their interest rate on each Change Date.[6] The interest rate on the Loan never exceeded 6.00%. Indeed, the interest rate increased from 5.99% to 6.00% for *one* six-month period only, before it was reduced again (pursuant to the formula set forth in the Note) to 5.99%. *The Thompsons' monthly Loan payment increased by $1.21 for that one six-month period*.

Contrary to the Thompsons' arguments during trial, Sara Lathrop testified credibly that Thompsons' monthly payment amount was correctly based on the applicable interest rate. Lathrop also testified that she had not been able to locate any evidence to substantiate the Thompsons allegation that they were charged a 6.6554% interest rate. No credible evidence supports the Thompsons' contention that the Debtors charged the Thompsons an annual percentage rate of 6.6554%.

---

[6] The Thompsons clearly received notice of the interest rate change. They included one of the Interest Rate Notification Letters as an exhibit to their Second Addendum. (*See* Second Addendum, Ex. C.)

16

### III.    CONCLUSION

The Court finds and concludes that the Trust adequately shifted the burden of proof to the Thompsons by way of its Objection and Reply and that the Thompsons thereafter failed to satisfy their burden in establishing the viability of their Claim. The Objection is **SUSTAINED** and the Claim is **DISALLOWED** and **EXPUNGED**.

**IT IS SO ORDERED.**

Dated:   March 10, 2016
         New York, New York

*Martin Glenn*
MARTIN GLENN
United States Bankruptcy Judge