KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Douglas H. Mannal
Joseph A. Shifer
1177 Avenue of the Americas
New York, New York  10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | Chapter 11 |
| Debtors. | Jointly Administered |

**SIXTH POST-CONFIRMATION STATUS**
**REPORT OF THE RESCAP LIQUIDATING TRUST**

The ResCap Liquidating Trust (the "**Liquidating Trust**"), as successor in interest to the debtors (collectively, the "**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**"), hereby submits this post-confirmation status report for the annual period ending on December 31, 2015 (the "**Reporting Period**"), and respectfully represents as follows:

**STATUS REPORT**

1.      On December 11, 2013, the Court entered the *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "**Confirmation Order**") [Docket No. 6065] approving the terms of the Chapter 11 plan, as amended (the "**Plan**"), filed in these Chapter 11 Cases [Docket No. 6065-1].[1]

2.      On December 17, 2013, the Effective Date of the Plan occurred (the "**Effective Date**"), and the Liquidating Trust was established [Docket No. 6137].  Pursuant to the Plan, the Liquidating Trust was established to wind down the affairs of the Debtors.  *See* Plan, Art. VI.

---
[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

3.      On August 13, 2014, the Liquidating Trust filed an application for entry of a post-confirmation order (the "**Post-Confirmation Order**") [Docket No. 7385].  On August 26, 2014, the Court entered an amended Post-Confirmation Order [Docket No. 7431].  Pursuant to the Post-Confirmation Order, the Liquidating Trust is required to file quarterly and annual status reports detailing the actions taken by the Liquidating Trust and the progress made toward the consummation of the Plan.

4.      Attached hereto as **Exhibit A** is a copy of the Liquidating Trust's consolidated financial statements and letter to beneficiaries (collectively, the "**Financial Statements**") detailing the Liquidating Trust's activity during the Reporting Period.  The Financial Statements have been posted to the Liquidating Trust's website at  http://rescapliquidatingtrust.com.

## NOTICE

5.      Notice of this Status Report has been provided to the parties identified on the Special Service List and General Service List, as those terms are defined in the Notice, Case Management, and Administrative Procedures approved by the Court [Docket No. 141], including the Office of the U.S. Trustee for the Southern District of New York.

Dated: March 10, 2016
     New York, New York

KRAMER LEVIN NAFTALIS & FRANKEL LLP

/s/ Joseph A. Shifer
Kenneth H. Eckstein
Douglas H. Mannal
Joseph A. Shifer
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the ResCap Liquidating Trust*

**<u>Exhibit A</u>**

ResCap Liquidating Trust

# ResCap Liquidating Trust

**Consolidated Financial Statements**
**as of and for the Year Ended December 31, 2015**
**(Unaudited)**

ResCap Liquidating Trust

**Table of Contents**

**Consolidating Statement of Net Assets in Liquidation** ............................................................................ 3

**Consolidated Statement of Cash Receipts and Disbursements** ................................................................ 4

**Consolidated Statement of Changes in Net Assets in Liquidation** ............................................................ 5

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS** ................................................................................ 6

1.     Description of Business and Basis of Presentation ...................................................... 6

2.     Restricted Cash ............................................................................................................. 9

3.     Mortgage Assets ......................................................................................................... 10

4.     Claims and Settlements ............................................................................................... 12

5.     Estimated Costs to Operate the Trust ........................................................................ 12

6.     Distributions to Beneficiaries and Disputed Claims Reserve ..................................... 13

7.     Subsidiary Distributions .............................................................................................. 15

8.     Commitments and Contingencies ............................................................................... 15

9.     Subsequent Events ..................................................................................................... 16

## ResCap Liquidating Trust

# Consolidating Statement of Net Assets in Liquidation

**(Unaudited)**
*In thousands (except per unit)*

| | December 31, 2015 | | | | December 31, 2014 |
|---|---|---|---|---|---|
| **Assets:** | **ResCap Liquidating Trust** | **Cap Re of Vermont, LLC** | **International** | **Consolidated ResCap Liquidating Trust** | **Consolidated ResCap Liquidating Trust** |
| Cash and cash equivalents | $  89,383 | $  3,006 | $  3,229 | $   95,618 | $  311,859 |
| Restricted cash | 135,509 | 51,802 | - | 187,311 | 207,742 |
| Mortgage assets | 211,143 | - | - | 211,143 | 288,438 |
| Other receivables | 10,279 | 7,218 | 133 | 17,630 | 15,829 |
| Other assets | 711 | 56 | 7 | 774 | 18 |
| Total assets | 447,025 | 62,082 | 3,369 | 512,476 | 823,886 |
| | | | | | |
| **Liabilities:** | | | | | |
| Claims and settlements | 36,633 | 25,700 | 1,196 | 63,529 | 88,628 |
| DOJ/AG consent settlement | 35,485 | - | - | 35,485 | 52,389 |
| Estimated costs to operate Trust | 203,915 | 1,047 | 489 | 205,451 | 203,250 |
| Liability for undistributed funds | 78,876 | - | - | 78,876 | 73,118 |
| Total liabilities | 354,909 | 26,747 | 1,685 | 383,341 | 417,385 |
| | | | | | |
| **Net Assets in Liquidation** | $   92,116 | $ 35,335 | $  1,684 | $  129,135 | $  406,501 |
| | | | | | |
| Total units in the Trust | | | | 100,000,000 | 100,000,000 |
| Net assets per authorized unit | | | | $       1.29 | $      4.07 |

The Notes to Consolidated Financial Statements are an integral part of these statements.

3

## ResCap Liquidating Trust

## Consolidated Statement of Cash Receipts and Disbursements
**(Unaudited)**
*In thousands*

| | Quarter ended December 31, 2015 | Year ended December 31, 2015 | Effective Date through December 31, 2015 |
|---|---|---|---|
| **Receipts** | | | |
| Receipts on mortgage assets | $ 11,725 | $ 63,578 | $ 394,496 |
| Litigation/claim recoveries | 9,868 | 42,192 | 60,347 |
| Other receipts | 1,624 | 13,356 | 78,244 |
| Plan settlements | - | - | 2,100,000 |
| Total receipts | 23,217 | 119,126 | 2,633,087 |
| | | | |
| **Disbursements** | | | |
| Claims and settlements | (1,264) | (17,676) | (1,616,448) |
| DOJ/AG consent settlement | (4,924) | (16,928) | (56,053) |
| Costs to operate the Trust | (43,953) | (126,953) | (204,013) |
| Declared distribution | - | (200,000) | (2,230,000) |
| Change in undistributed funds | (742) | 5,758 | 78,876 |
| Total disbursements | (50,883) | (355,799) | (4,027,638) |
| | | | |
| **Net cash flow** | (27,666) | (236,673) | (1,394,551) |
| | | | |
| **Cash and restricted cash, beginning of period** | 310,595 | 519,602 | 1,677,480 |
| **Cash and restricted cash, December 31, 2015** | $ 282,929 | $ 282,929 | $ 282,929 |

The Notes to Consolidated Financial Statements are an integral part of these statements.

## ResCap Liquidating Trust

## Consolidated Statement of Changes in Net Assets in Liquidation

**(Unaudited)**
*In thousands (except per unit)*

| | Quarter ended December 31, 2015 | Year ended December 31, 2015 | Effective Date through December 31, 2015 |
|---|---|---|---|
| **Net cash flow** | $ (27,666) | $ (236,673) | $ (1,394,551) |
| | | | |
| Other non-cash changes: | | | |
| Increase (decrease) in asset value assumptions | 8,220 | (21,939) | (74,716) |
| Increase in costs to operate the Trust | (35,254) | (126,679) | (205,712) |
| increase in DOJ/AG consent settlement | (490) | (25) | (14,058) |
| Basis of assets/liabilities liquidated/resolved | 42,752 | 113,708 | (618,553) |
| Decrease (increase) in distributions held for Beneficiaries | 742 | (5,758) | (78,876) |
| Total non-cash changes | 15,970 | (40,693) | (991,915) |
| | | | |
| Total decrease in net assets | (11,696) | (277,366) | (2,386,466) |
| | | | |
| **Net assets in liquidation, beginning of period** | 140,831 | 406,501 | 2,515,601 |
| **Net assets in liquidation, December 31, 2015** | $ 129,135 | $ 129,135 | $ 129,135 |

| **Per unit information:** | | | |
|---|---|---|---|
| | $ per Unit | $ per Unit | $ per Unit |
| **Net assets per unit, beginning of period** | $ 1.41 | $ 4.07 | $ 25.16 |
| Decrease in net assets per unit | (0.12) | (0.78) | (1.57) |
| Declared distribution per unit | 0.00 | (2.00) | (22.30) |
| **Net asset per unit, December 31, 2015** | $ 1.29 | $ 1.29 | $ 1.29 |

The Notes to Consolidated Financial Statements are an integral part of these statements.

5

ResCap Liquidating Trust

# NOTES TO CONSOLIDATED FINANCIAL STATEMENTS
**(Unaudited)**

## 1.  Description of Business and Basis of Presentation

The ResCap Liquidating Trust ("Trust") was formed in connection with the Plan of Reorganization under chapter 11 of the United States Bankruptcy Code ("Plan") in the bankruptcy case of Residential Capital, LLC ("ResCap") and 50 of its direct and indirect subsidiaries (collectively, the "Debtors").  The Plan was confirmed by the bankruptcy court on December 11, 2013 and became effective on December 17, 2013 ("Effective Date").

Under the terms of the Plan and Liquidating Trust Agreement, units of beneficial interest ("Units") were issued by the Trust to holders of allowed general unsecured claims ("Allowed Claims") against the Debtors, other than holders of general unsecured claims in classes for which the Plan prescribes payments of cash. The Units entitle their holders ("Beneficiaries") to receive a proportionate amount of cash distributions made by the Trust. The Units are issued only in book-entry form in accordance with the procedures of the Depository Trust Company. Certain holders of Allowed Claims are still in the process of providing information needed to be issued their Units.

The Liquidating Trust Agreement allows for additional distributable cash distributions ("Declared Distributions") after the initial distribution to occur no less frequently than semi-annually; however the Trust is not required to make a semi-annual distribution if aggregate distributable cash at the time is such as would make the distribution impracticable, as determined by the Liquidating Trust Board ("Board").

The Disputed Claims Reserve ("DCR") was established to hold Units, and cash and other assets for the benefit of holders of general unsecured claims that become Allowed Claims after the Effective Date, unless such claims are satisfied in cash in accordance with the Plan. The Trust makes distributions of Units and cash from the DCR to holders of disputed claims that become Allowed Claims at intervals determined by the Board.

The Consolidated Financial Statements (the "Consolidated Financial Statements") have not been prepared in accordance with generally accepted accounting principles; rather they have been prepared using a liquidation basis of accounting, which the Trust considers an appropriate basis of accounting at this time.  The assets are stated at their estimated net realizable value, which is the amount of cash into which an asset is expected to be converted during the liquidation period.  Assets are also established for future income expected to be earned by the Trust.  Mortgage assets are valued based on projected recoveries for each asset type, and include mortgage loans, servicer advances, interest income, mortgage servicing rights, real estate owned, and trading securities.  Costs to dispose of assets are also projected and are netted in mortgage assets.  The Trust also accrues costs that it expects to incur through the end of its liquidation, if and when it has a reasonable basis for estimation.  The Trust will record and value affirmative settlements or judgments when realized and collectability is assured.  The Trust records estimated costs of litigation activities based on the current management strategy and does not accrue contingent costs.

The Consolidated Financial Statements include the accounts of the Trust and its majority-owned subsidiaries after eliminating all significant intercompany balances and transactions.  The Consolidating

## ResCap Liquidating Trust

Statement of Net Assets in Liquidation combines assets held in bailment and non-material subsidiaries into the Trust entity.  Other wholly owned subsidiaries include Cap Re of Vermont, LLC, ("Cap Re"), a captive reinsurance company, and RFC Foreign Equity Holding Co ("International"), which holds all international businesses, and has adopted a Plan of Liquidation.  Intercompany balances between entities are excluded, consisting of a Trust receivable from Cap Re of $18.5 million.

The Consolidated Financial Statements as of and for the year ended December 31, 2015, are unaudited and reflect all adjustments that are, in management's opinion, necessary for the fair presentation of the results for the periods presented.

**Significant Accounting Policies**

Cash and Cash Equivalents, and Restricted Cash
Cash and cash equivalents include cash on hand and short term, liquid investment securities with a maturity of three months or less when purchased.  Restricted cash consists of cash that is restricted for specific purposes and is not generally available to the Trust.

Mortgage Assets
Mortgage assets include mortgage loans, servicer advances, mortgage servicing rights, interest income, real estate owned, trading securities, and costs to sell assets.

Mortgage Loans
Government-insured mortgage loans were either originally acquired by the Debtors from off-balance sheet securitizations guaranteed by the Government National Mortgage Association ("GNMA") or were originated by the Debtors for sale to GNMA, but were ineligible for sale due to insufficient documentation in the loan file.  As a result of borrower default or contractual delinquency triggers, they ultimately may become claims for reimbursement from the Federal Housing Association ("FHA") or Veterans Administration ("VA") for eligible mortgage loan principal and interest.  All government-insured mortgage loans are shown as mortgage loans on the Consolidated Statement of Net Assets in Liquidation, regardless of their status in the claims process.

Non-insured mortgage loans consist primarily of mortgage loans removed from Federal National Mortgage Association and Federal Home Loan Mortgage Association securitizations or loans excluded from asset sales and certain additional borrower advances on home equity line of credit loans excluded from securitizations when a rapid amortization event occurred.  Certain of these loans are significantly delinquent or are otherwise in distress.

The value of mortgage loans is determined by modeling the cash flows expected to be received over the life of the loan, based on asset resolution strategies.  The delinquency, non-accrual or foreclosure status of the loans, including timing of the insurance reimbursement process and the reimbursement policies of the government agencies, all contribute to the carrying value.

Servicer Advances
The Trust is required, from time to time, to make certain servicer advances on loans that it owns or on loans where it retains the servicing rights.  These servicer advances are for property taxes and insurance premiums ("Escrow") and for default and property maintenance payments ("Corporate").  Servicer Advances are modeled based on expected recovery of the advance

## ResCap Liquidating Trust

either through borrower repayment, collection from government agencies on insured loans or sale to a third party.

### Interest Receivables

Interest Receivables generally arise from interest payments on mortgage loans.  All future estimated interest income is capitalized and is valued based on the asset management strategies and modeled cash flows of the underlying assets.

### Real Estate Owned

Real estate owned from loan foreclosures ("REO") are classified as REO when physical possession of the collateral is taken.  REOs are carried at their liquidation value and are held in a subsidiary whose stock is owned by the Trust.

### Costs to Sell Assets

Lifetime costs to sell assets are estimated based on the asset disposition strategy and are recorded as a contra asset within mortgage assets.

### Affirmative Recoveries

The Trust will record and value affirmative settlements or judgments within Other Receivables when realized and collectability is assured.

### Claims and Settlements

Claims and settlements are recorded based upon obligations of the Trust under the Plan, the impact of potential settlements to liquidate certain assets and estimates of future insurance claims related to Cap Re.

Cap Re has excess layer reinsurance agreements with non-affiliated private mortgage insurance ("PMI") companies that provide PMI on mortgage loans.  Cap Re assumes the risk of loss over a specified first loss percentage for covered loans and in return earns a portion of the PMI premium associated with those mortgage loans.  Cap Re reserves for loss and loss adjustment expenses when notices of default on insured mortgage loans are received and the specified first loss percentage covered by the ceding company is exhausted.

Claims and settlement reserves reflect management's best estimate of probable amounts payable in connection with such matters.  As a claim or settlement matter develops, management evaluates on an ongoing basis whether such matter presents a liability that is both probable and estimable.  When the liability related to a matter is deemed to be both probable and estimable, a liability is recognized.  These liabilities are continuously monitored and adjusted to reflect the most recent information related to each matter.   In matters for which a liability is not deemed probable, but rather reasonably possible to occur, management would attempt to estimate an amount related to that event.  For these matters, a liability is not recorded.  However, if an amount can be estimated, this amount would be disclosed if it is material to the Consolidated Financial Statements.  There is no accrual and no disclosure for matters which are deemed remote.

### Estimated Costs to Operate the Trust

The Trust accrues for all costs it expects to incur during its lifetime, when it has a reasonable basis for estimation.  These costs are estimated based on asset resolution strategies and modeled wind-down expenses of the Trust's operations and are recorded as liabilities.

## ResCap Liquidating Trust

Income Taxes

The Trust is a Grantor Trust, treated as a flow-through entity for U.S. federal and state income tax purposes.  As a flow-through entity, all income and expense flows through to the Beneficiaries to be reported on their respective income tax returns.  The Trust is not subject to U.S. federal or state income taxes; therefore, no accrual for these taxes is made.  The Trust files a Federal return and multiple state returns and all tax periods since the Trust's Effective Date remain open for examination.

The consolidated subsidiaries are wholly owned by the Trust, including those that may own REO.  These subsidiaries are subject to U.S. federal, state or foreign income taxes.

Additionally, the Trust elected for U.S. federal and state income tax purposes to report the DCR as a Disputed Ownership Fund.   The assets transferred to the DCR are considered to be passive assets; thus, the DCR will also be subject to U.S. federal and/or state income taxes.

All estimated taxes to be paid are included in estimated costs to operate the Trust.  Any tax filing interest and penalties incurred by the Trust's subsidiaries will be recognized as estimated costs to operate the Trust in the period incurred.

## 2.  Restricted Cash

Restricted cash is comprised of the following (in $000's):

|  | December 31, 2015 | December 31, 2014 |
|---|---|---|
| Cash held in DCR | $      76,439 | $      72,024 |
| Distributions held for Beneficiaries | 2,437 | 1,094 |
| APSC claims and other administrative claims reserve | 36,633 | 47,996 |
| DOJ/AG consent settlement reserve | 20,000 | 24,324 |
| Trust subtotal | 135,509 | 145,438 |
| Cap Re restricted cash | 51,802 | 62,304 |
| Total restricted cash | $      187,311 | $      207,742 |

The restricted cash reserve for administrative and other priority claims, secured claims, unsecured convenience claims and certain other unsecured claims ("APSC") was funded to satisfy obligations for APSC and other administrative claims.  The Trust's liability for such obligations is not limited by the reserve balance.

Activity related to the APSC claims restricted cash reserve is as follows (in $000's):

|  | Quarter ended December 31, 2015 | Year ended December 31, 2015 | Effective Date through December 31, 2015 |
|---|---|---|---|
| Balance, beginning of period | $   $37,448 | $    47,946 | $              - |
| Additions – cash / assets | - | - | 75,928 |
| Withdrawals – Allowed Claims | (815) | (11,313) | (39,295) |
| Balance, December 31, 2015 | $    36,633 | $    36,633 | $      36,633 |

The DOJ/AG Consent Settlement restricted cash reserve was originally funded to satisfy obligations under the DOJ/AG Consent Settlement.  The Trust's liability for such obligations is not limited by the

## ResCap Liquidating Trust

reserve balance.  The reserve must maintain a minimum balance of $20.0 million until April 5, 2016, at which time the reserve can be reduced in accordance with a prescribed formula.  See Note 8 Commitments and Contingencies for further information.

Activity related to the DOJ/AG Consent Settlement restricted cash reserve is as follows (in $000's):

|  | Quarter ended December 31, 2015 | Year ended December 31, 2015 | Effective Date through December 31, 2015 |
|---|---|---|---|
| Balance, beginning of period | $    20,000 | $    24,324 | $    55,000 |
| Additions | - | 19,368 | 23,530 |
| Releases / Payments | - | (23,692) | (58,530) |
| Balance, December 31, 2015 | $    20,000 | $    20,000 | $    20,000 |

### 3.  Mortgage Assets

Mortgage assets are comprised of the following (in $000's):

|  | December 31, 2015 | | December 31, 2014 | |
|---|---|---|---|---|
|  | Gross Balance | Carrying Value | Gross Balance | Carrying Value |
| Mortgage loans | $    248,322 | $    160,570 | $    314,936 | $    222,882 |
| Servicing advances | 65,006 | 27,382 | 62,060 | 40,525 |
| Mortgage servicing rights | - | - | 306 | 56 |
| Interest receivable | 17,542 | 17,542 | 15,149 | 15,149 |
| Real estate owned | 9,207 | 4,862 | 15,468 | 8,967 |
| Trading securities | 787 | 787 | 859 | 859 |
| Total mortgage assets | $    340,864 | $    211,143 | $    408,778 | $    288,438 |

The Trust's carrying value of mortgage assets uses internal models to determine the cash flows expected to be received over the life of the loan, based on asset resolution strategies.  The Trust's recovery estimates and assumptions are based on existing portfolio statistics, including, but not limited to, delinquency status, aging, and claim vs loan status.  Because of the uncertainties associated with estimating the amounts, timing and likelihood of possible outcomes, actual results could differ from the Trust's estimates.

On February 25, 2016, the Federal Housing Administration ("FHA") of the United States Department of Housing and Urban Development ("HUD") informed the Trust that it would be temporarily suspending payments of FHA insurance claims to the Trust's FHA Trustee, Bank of New York Mellon Trust, which holds legal title to the underlying FHA insured loans.  Under the governing agreements, Bank of New York Mellon Trust is obligated to forward such FHA claim proceeds received from HUD to Ocwen as the servicer.  After Ocwen makes allowable deductions, the Trust has the right to receive the residual funds from the claim proceeds.  HUD has asserted a claim within the DCR against GMAC Mortgage, and has indicated to Ocwen that its suspension of the FHA claim payments is related to the resolution of its claim against GMAC Mortgage.  If the FHA prevails on its setoff claims against the Trust, the carrying value of the Trust's FHA mortgage loans and claims could be materially and adversely affected.  The Trust disagrees with the FHA's position and intends to vigorously oppose any attempt to assert setoff rights against the Trust.

## ResCap Liquidating Trust

Mortgage loans are comprised of the following material sub-portfolios.  (Unpaid principal balance "UPB" in $000's):

| | December 31, 2015 | | December 31, 2014 | |
|---|---|---|---|---|
| | UPB | % of Total | UPB | % of Total |
| Pre foreclosure loans | $ 168,415 | 67.8% | $ 194,416 | 61.7% |
| FHA initial claims | 46,931 | 18.9% | 90,661 | 28.8% |
| FHA reconveyance claims | 23,796 | 9.6% | 21,599 | 6.9% |
| Other | 9,180 | 3.7% | 8,260 | 2.6% |
| Total mortgage loans | $ 248,322 | 100.0% | $ 314,936 | 100.0% |

Pre-foreclosure loans include government insured and non-insured and non-securitized loans. Delinquency attribution of the pre-foreclosure mortgage loans is as follows (UPB in $000's):

| | December 31, 2015 | | December 31, 2014 | |
|---|---|---|---|---|
| | UPB | % of Total | UPB | % of Total |
| 0-29 days delinquent | $  36,042 | 21.4% | $ 28,159 | 14.5% |
| 30-59 days delinquent | 2,936 | 1.7% | 3,316 | 1.7% |
| 60-89 days delinquent | 382 | 0.2% | 2,302 | 1.2% |
| Contractually 90+ days delinquent | 19,604 | 11.7% | 48,291 | 24.8% |
| Non-performing bankruptcy | 6,431 | 3.8% | 13,717 | 7.1% |
| Performing bankruptcy plan | 7,693 | 4.6% | 8,405 | 4.3% |
| Active in loss mitigation | 6,279 | 3.7% | 8,395 | 4.3% |
| In foreclosure | 89,048 | 52.9% | 81,831 | 42.1% |
| Total | $  168,415 | 100.0% | $ 194,416 | 100.0% |

FHA initial claim aged from the initial liquidation event such as foreclosure or short sale is as follows (UPB in $000's):

| | December 31, 2015 | | December 31, 2014 | |
|---|---|---|---|---|
| | UPB | % of Total | UPB | % of Total |
| 0 - 29 days | $ 1,141 | 2.4% | $ 3,298 | 3.6% |
| 30 - 59 days | 906 | 1.9% | 2,727 | 3.0% |
| 60 - 89 days | 1,353 | 2.9% | 1,156 | 1.3% |
| 90 - 179 days | 618 | 1.3% | 8,176 | 9.0% |
| 180 days - 1 year | 1,849 | 4.0% | 12,865 | 14.2% |
| 1 - 2 years | 7,778 | 16.6% | 19,648 | 21.7% |
| 2+ years | 33,286 | 70.9% | 42,791 | 47.2% |
| Total | $ 46,931 | 100.0% | $ 90,661 | 100.0% |

# ResCap Liquidating Trust

The table below represents the aging attribution for FHA reconveyance claims (aged from the date the claim was reconveyed from HUD (UPB in $000's) :

|  | December 31, 2015 | | December 31, 2014 | |
| --- | --- | --- | --- | --- |
|  | UPB | % of Total | UPB | % of Total |
| 0 - 29 Days | $ 219 | 0.9% | $ 163 | 0.7% |
| 30 - 59 Days | 1,004 | 4.2% | 278 | 1.3% |
| 60 - 89 Days | 646 | 2.7% | 552 | 2.6% |
| 90 - 179 Days | 1,593 | 6.7% | 1,130 | 5.2% |
| 180 Days - 1 Year | 4,342 | 18.3% | 4,440 | 20.6% |
| 1 - 2 Years | 4,716 | 19.8% | 6,956 | 32.2% |
| 2+ Years | 11,276 | 47.4% | 8,080 | 37.4% |
| Total | $ 23,796 | 100.0% | $ 21,599 | 100.0% |

## 4.  Claims and Settlements

Claims and settlements are comprised of the following (in $000's):

|  | December 31, 2015 | December 31, 2014 |
| --- | --- | --- |
| **Bankruptcy related claims:** | | |
| APSC claims and other administrative claims | $ 36,633 | $ 47,102 |
| ETS unsecured claim | - | 1,069 |
| Subtotal – bankruptcy related claims | 36,633 | 48,171 |
| **Settlements:** | | |
| Cap Re reserves | 25,700 | 39,322 |
| Other settlements | 1,196 | 1,135 |
| Subtotal – settlements | 26,896 | 40,457 |
| Total claims and settlements | $ 63,529 | $ 88,628 |

## 5.  Estimated Costs to Operate the Trust

Estimated costs to operate the Trust are comprised of the following (in $000's):

|  | December 31, 2015 | December 31, 2014 |
| --- | --- | --- |
| Professional fees | $ 99,562 | $ 85,657 |
| Compensation | 36,296 | 29,574 |
| Document management | 17,772 | 33,398 |
| Information technology | 16,963 | 13,078 |
| Transition services | 9,078 | 5,261 |
| Other operating costs | 25,780 | 36,282 |
| Total costs to operate the Trust | $ 205,451 | $ 203,250 |

Estimated costs to operate the Trust include incurred costs and estimates of all future cash outlays required to operate the Trust throughout its lifetime, when there is a reasonable basis for estimation.

## ResCap Liquidating Trust

### 6.  Distributions to Beneficiaries and Disputed Claims Reserve

Declared Distributions are distributions determined by the Board in which a pro rata share of distributable cash is received by each Beneficiary of record at the time of the distribution record date. Releases to Beneficiaries represent distribution of Units and cash for certain Beneficiaries who subsequently provided the necessary information to the Trust.  Distributions on Allowed Claims represent Units and related cash released from the DCR for claims that became Allowed Claims between December 17, 2013 and December 15, 2015, and includes Units and cash designated as Distributions Held for Beneficiaries, pending receipt of certain information from the holders.  Allowed Claims after December 15, 2015 will receive their Units at the next Unit distribution date.

| | Quarter ended December 31, 2015 | | | |
|---|---|---|---|---|
| Units | Distributed to Beneficiaries | Held by DCR | Held for Beneficiaries | Total Distribution |
| Balance, September 30, 2015 | 96,429,693 | 3,443,796 | 126,511 | 100,000,000 |
| Declared distribution | - | - | - | - |
| Releases to Beneficiaries | 33,269 | - | (33,269) | - |
| Distributions on Allowed Claims | - | (16,070) | 16,070 | - |
| Balance, December 31, 2015 | 96,462,962 | 3,427,726 | 109,312 | 100,000,000 |

| | Quarter ended December 31, 2015 | | | |
|---|---|---|---|---|
| Cash (in 000's) | Distributed to Beneficiaries | Distributions Held by DCR | Distributions Held for Beneficiaries | Total Distribution |
| Balance, September 30, 2015 | $ 2,150,382 | $ 76,797 | $ 2,821 | $ 2,230,000 |
| Declared distribution | - | - | - | - |
| Releases to Beneficiaries | 742 | - | (742) | - |
| Distributions on Allowed Claims | - | (358) | 358 | - |
| Balance, December 31, 2015 | $ 2,151,124 | $ 76,439 | $ 2,437 | $ 2,230,000 |

| | Year ended December 31, 2015 | | | |
|---|---|---|---|---|
| Units | Distributed to Beneficiaries | Held by DCR | Held for Beneficiaries | Total Distribution |
| Balance, December 31, 2014 | 96,398,151 | 3,547,976 | 53,873 | 100,000,000 |
| Declared distribution | - | - | - | - |
| Releases to Beneficiaries | 64,811 | - | (64,811) | - |
| Distributions on Allowed Claims | - | (120,250) | 120,250 | - |
| Balance, December 31, 2015 | 96,462,962 | 3,427,726 | 109,312 | 100,000,000 |

| | Year ended December 31, 2015 | | | |
|---|---|---|---|---|
| Cash (in 000's) | Distributed to Beneficiaries | Distributions Held by DCR | Distributions Held for Beneficiaries | Total Distribution |
| Balance, December 31,2014 | $ 1,956,882 | $ 72,024 | $ 1,094 | $ 2,030,000 |
| Declared distribution | 192,850 | 7,096 | 54 | 200,000 |
| Releases to Beneficiaries | 1,392 | - | (1,392) | - |
| Distributions on Allowed Claims | - | (2,681) | 2,681 | - |
| Balance, December 31, 2015 | $ 2,151,124 | $ 76,439 | $ 2,437 | $ 2,230,000 |

## ResCap Liquidating Trust

|  | Effective Date through December 31, 2015 | | | |
| --- | --- | --- | --- | --- |
| Units | Distributed to Beneficiaries | Held by DCR | Held for Beneficiaries | Total Distribution |
| Balance, December 17, 2013 | - | - | - | - |
| Declared distribution | 96,329,687 | 3,619,088 | 51,225 | 100,000,000 |
| Releases to Beneficiaries | 114,267 | - | (114,267) | - |
| Distributions on Allowed Claims | 19,008 | (191,362) | 172,354 | - |
| Balance, December 31, 2015 | 96,462,962 | 3,427,726 | 109,312 | 100,000,000 |

|  | Effective Date through December 31, 2015 | | | |
| --- | --- | --- | --- | --- |
| Cash (in 000's) | Distributed to Beneficiaries | Distributions Held by DCR | Distributions Held for Beneficiaries | Total Distribution |
| Balance, December 17, 2013 | $ - | $ - | $ - | $ - |
| Declared distribution | 2,148,427 | 80,504 | 1,069 | 2,230,000 |
| Releases to Beneficiaries | 2,324 | - | (2,324) | - |
| Distributions on Allowed Claims | 373 | (4,065) | 3,692 | - |
| Balance, December 31, 2015 | $ 2,151,124 | $ 76,439 | $ 2,437 | $ 2,230,000 |

Activity related to disputed claims is as follows ($ in 000's):

|  | Quarter ended December 31, 2015 | | Year ended December 31, 2015 | | Effective Date ended December 31, 2015 | |
| --- | --- | --- | --- | --- | --- | --- |
|  | Number of Claims | Asserted Amount | Number of Claims | Asserted Amount | Number of Claims | Asserted Amount |
| Disputed Claims, beginning of period | 144 | $ 292,662 | 278 | $ 314,980 | - | $ - |
| Amount established during the period | - | - | 12 | - | 812 | 382,332 |
| Allowed Claims | (1) | (4,554) | (9) | (16,794) | (27) | (51,732) |
| Disallowed Claims | (63) | (84,594) | (192) | (93,568) | (674) | (123,841) |
| Reclassified to Convenience Claims | (4) | (144) | (13) | (1,248) | (35) | (3,389) |
| Disputed Claims, December 31, 2015 | 76 | $ 203,370 | 76 | $ 203,370 | 76 | $ 203,370 |

Distributions of Units will be made to holders of Allowed Claims based on the following issuance ratios, consistent with the distributions made as of the Effective Date:

- For holders of claims against the ResCap Debtors: 0.014305344 Units per dollar of Allowed Claim;
- For holders of claims against the GMACM Debtors: 0.011848742 Units per dollar of Allowed Claim;
- For holders of claims against the RFC Debtors: 0.003528361 Units per dollar of Allowed Claim.

The Asserted Amount in the DCR includes a reserve of approximately $30.9 million for the unliquidated portion of claims that are in the DCR. The amount of unliquidated and partially unliquidated claims is not determinable at this time and could exceed this reserve. Due to this uncertainty, the issuance ratios may be subject to reduction based upon the total value of future Allowed Claims and the balance of the Units held in the Disputed Claims Reserve.

At the discretion of the Board, Units in the DCR corresponding to claims that have been disallowed may be cancelled and any related cash made available for distribution to all Beneficiaries or added to the

## ResCap Liquidating Trust

Administrative Expenses Set Aside.  Alternatively, such Units and cash may be retained in the DCR for satisfaction of Allowed Claims in the future.

### 7.  Subsidiary Distributions

The goal of the Trust is to wind down the operations of its international subsidiaries. During 2015, the Trust placed several international subsidiaries into liquidation including:

- GMAC-RFC Europe Limited,
- GMAC-RFC Espana Hiptecas SL
- GMAC-RFC Holdings Limited
- GMAC-RFC Property Finance Limited

In addition, the Trust's international subsidiaries declared and paid distributions of $21.7 million to RFC Foreign Equity Holdings Co, a US subsidiary of the Trust and parent entity to the international subsidiaries, which also adopted its own Plan of Liquidation. As part of this Plan of Liquidation, RFC Foreign Equity Holdings Co distributed $16.6 million to the Trust.

### 8.  Commitments and Contingencies

#### DOJ/AG Consent Settlement

On February 9, 2012, Ally Financial, Inc., ResCap and certain of ResCap's subsidiaries reached an agreement in principle with respect to investigations into procedures followed by mortgage servicing companies and banks in connection with mortgage origination and servicing activities and foreclosure home sales and evictions ("DOJ/AG Consent Settlement") which was subsequently filed as a consent judgment in the US District Court.  On and after the Effective Date, the Trust must continue to perform the remaining obligations under the DOJ/AG Consent Settlement, other than certain obligations assumed by the purchasers of ResCap's mortgage servicing rights in the sales that occurred during the chapter 11 cases pursuant to section 363 of the United States Bankruptcy Code (the "Section 363 Sales").  Under the terms of the DOJ/AG Consent Settlement, the Trust is obligated for certain Office of Mortgage Settlement Oversight ("OMSO") costs related to the purchasers in the Section 363 Sales.

The Trust estimated and established a liability for its DOJ/Consent Settlement obligations and related costs and expenses of $35.5 million and $52.4 million as of December 31, 2015 and December 31, 2014, respectively.

#### Litigation

Claims have been asserted against the Trust.  At this time, the Trust cannot estimate the possible financial effect of these claims.

#### Affirmative Matters

The Trust is pursuing various affirmative litigation and claim matters.  These include:

- Indemnity and breach of contract claims against correspondent lenders that sold loans to Residential Funding Company LLC ("RFC") (a subsidiary of ResCap ), seeking recovery of liabilities and losses that RFC incurred by virtue of its purchase from the defendants of residential mortgage loans that breached the defendants' representations and warranties.

  For the year ended December 31, 2015, the Trust entered into 10 settlement agreements with correspondents, including one case where litigation had not yet been filed, in exchange for

## ResCap Liquidating Trust

$41.4 million. The agreements provide for the full and final resolution of pending litigation against the correspondents and a mutual release of all claims relating to residential mortgage loans that the correspondents sold to RFC.

In addition, in 2015, one new case was filed, one case was dismissed, and two cases were stayed.  As of December 31, 2015, there were 68 total filed cases pending; one case dismissed and on appeal; two cases stayed; and tolling agreements with 6 other correspondent lenders.

- Claims pursuant to transactions with foreign subsidiaries.  During 2015, five matters related to the Trust's foreign subsidiaries were settled.

- Other affirmative litigation matters. The Trust is party to certain other affirmative litigation, principally in adversary proceedings before the bankruptcy court seeking avoidance of transfers made to creditors prior to the commencement of the bankruptcy.  The Trust also is party to an action against certain insurers for failure to cover certain settlement costs.

- Reservation of rights.  The Trust has reserved its rights with respect to other affirmative claims it may bring in the future.

At this time, the Trust cannot predict the outcome of these litigations or estimate the possible financial effect of these matters on the Consolidated Financial Statements, and as such, neither contingent gains nor any contingent costs to pursue these matters are currently recorded.

### *Other*

Prior to the formation of the Trust, on March 18, 2013, the U.S. Attorney's Office for the Central District of California served an investigative subpoena on Residential Capital, LLC pursuant to 12 U.S.C. 1833a (Financial Institutions Reform, Recovery, and Enforcement Act of 1989, or FIRREA).  On February 13, 2014, and March 2, 2015, supplemental subpoenas were served on Residential Capital, LLC.  The subpoenas seek documents and information related to the Debtor's securitization activities, including the purchase of loans from third-parties.  The Trust continues to cooperate with the U.S. Attorney's Office in connection with its investigation.

## 9.  Subsequent Events

Events subsequent to December 31, 2015 were evaluated through March 9, 2016, the date on which these Consolidated Financial Statements were issued.

Subsequent to December 31, 2015, six additional settlements were reached with correspondent lenders.

**RESCAP**

LIQUIDATING TRUST

March 9, 2016

Dear Beneficiaries:

Effective January 1, 2016, I took over as Liquidating Trust Manager. While I will remain a member of the Board, I stepped down as Chairman and Mitchell Sonkin moved into that role. As we move forward into 2016, our mission is to focus on maximizing returns to beneficiaries by evolving into a litigation-centric organization to drive aggressive prosecution of our affirmative actions, while also managing the timely and efficient winddown of the remaining Trust assets and activities.

The Trust's quarterly financial report as of and for the period ended December 31, 2015, has been posted on our website at http://rescapliquidatingtrust.com/financialtaxinformation.aspx.

As noted in footnote 3 of our financial report, on February 25, 2016, the Federal Housing Administration ("FHA") of the United States Department of Housing and Urban Development ("HUD") informed the Trust that it would be temporarily suspending payments of FHA insurance claims to the Trust's FHA Trustee, Bank of New York Mellon Trust, which holds legal title to the underlying FHA insured loans. Under the governing agreements, Bank of New York Mellon Trust is obligated to forward such FHA claim proceeds received from HUD to Ocwen as the servicer. After Ocwen makes allowable deductions, the Trust has the right to receive the residual funds from the claim proceeds. HUD has asserted a claim within the DCR against GMAC Mortgage, and has indicated to Ocwen that its suspension of the FHA claim payments is related to the resolution of its claim against GMAC Mortgage. If the FHA prevails on its setoff claims against the Trust, the carrying value of the Trust's FHA mortgage loans and claims could be materially and adversely affected. The Trust disagrees with the FHA's position and intends to vigorously oppose any attempt to assert setoff rights against the Trust.

During the fourth quarter, the Trust continued to prosecute our affirmative actions and focus our efforts on resolving asset recoveries and settling claims and liabilities. Based upon the timing of this effort and the investments required, the Board determined that we would not make any distribution to our Beneficiaries at this time. In accordance with the Liquidating Trust Agreement, we will review this again after 2Q 2016.

The fourth quarter of 2015 successes included:

- Continuing to work with the mediators in our correspondent lender litigation to settle these cases on terms that we feel are appropriate. In the interim we have been heavily engaged in pre-trial discovery, including document and data production, conducting depositions and other pre-trial investigation and preparation work as part of the various court proceedings.

1

RESCAP

LIQUIDATING TRUST

- Additional efforts for winding down the international entities resulted in repatriation of $0.7 million back to the Trust and the remaining two UK entities placed into liquidation.

- The Trust entered into an agreement to sell approximately 2,000 charged off loans for $2.1 million.

- The transfer of the final servicing deal excluded from the Section 363 Asset Sale was completed. In addition to a net receipt of $0.5 million, the transaction provided for an $84 million claim included in the Disputed Claims Reserve (DCR), to be withdrawn.

- The Trust claim in the Chapter 7 bankruptcy case of WL Homes was allowed and an initial claim payment of $2.34 million was received.

- Collected $11.7 million in normal course recoveries relating to the Trust's portfolio of mortgage assets. As previously reported, the Trust continues to devote significant efforts toward maximizing the remaining portfolio of FHA and VA loans. These efforts include working with the servicer to improve the portfolio performance and considering other options to maximize the value of the portfolio.

**Correspondent Lender  Litigation and Other Settlements**

As of the end of fourth quarter of 2015, the Trust was prosecuting 68 correspondent lender litigations, 59 of which were pending in the federal District Court in Minnesota, 5 of which were pending in the federal Bankruptcy Court for the Southern District of New York, and 4 of which were pending in Minnesota state court. An additional case, which the Minnesota federal District Court dismissed in 2014, remains on appeal to the U.S. Court of Appeals for the Eighth Circuit, and two cases were stayed in the federal District Court in Minnesota due to the bankruptcy filings of the defendants. The Trust has tolling agreements with 6 other correspondent lenders.

The parties to the correspondent lender litigations continue to engage in pre-trial discovery and motion practice. Additionally, depositions of both plaintiff and defendant fact and 30(b)(6) witnesses began in the fourth quarter.

During the quarter, the Trust entered into settlement agreements with 5 correspondent lenders. After December 31, 2015, an additional 6 settlement agreements were reached, 3 correspondent litigation and  3 other correspondent claims.   The settlements provide for the full and final resolution of all pending claims against the defendants and mutual releases.

RESCAP

LIQUIDATING TRUST

## Claims

We continue to make progress resolving complex claims in the unsecured Disputed Claims Reserve, reducing the number of active claims by 68 in the fourth quarter, from 144 to 76. We are in the process of reconciling the remaining claims and have been in contact with all of the claimants to work toward a final resolution.

Administrative Priority, Secured, Convenience and ETS claims decreased in the fourth quarter from 26 to 11. All claims within ETS have been resolved. We continue to work towards a resolution of our largest administrative claim with Ocwen.

## Regulatory

The Trust, as successor to the Debtors in the Bankruptcy case, together with other large mortgage servicers, is party to a settlement with the Department of Justice ("DOJ") which requires a review of mortgage loans for potential violations under the Servicemembers Civil Relief Act ("SCRA"). Rust Consulting serves as settlement administrator on behalf of the Trust and PricewaterhouseCoopers ("PwC") is the Consultant performing the loan reviews.

It is expected that the Trust's efforts to complete the data analysis on the remaining loans and submit the results to the DOJ will extend into Q2 2016. Assuming we receive approval from the DOJ to proceed with the remediation activity, we will work with Rust Consulting to begin this final phase of the remediation activity. At that point, and in accordance with the DOJ settlement, this final remediation phase will take approximately two years to complete.

In the fourth quarter, the Federal Reserve Board ("FRB") issued details regarding the closeout activities for the Independent Foreclosure Review ("IFR"). The requirements include a) an additional mass check mailing in June 2016 with a proportionate amount being issued to borrowers who have already cashed checks and b) an independent audit of Rust Consulting related to the check issuance requirements of the settlement.

## Administrative Expenses Set Aside

The Administrative Expenses Set Aside holds cash and other assets, for the payment of Trust operating expenses. As of December 31, 2015, the Administrative Expenses Set Aside consisted of $50.4 million in cash and $169.0 million in pledged proceeds from future asset sales and/or recoveries.

3

RES CAP

LIQUIDATING TRUST

Activity related to the Administrative Expenses Set Aside is as follows (in $000's):

| | Quarter ended December 31, 2015 | Year ended December 31, 2015 | Effective Date to December 31, 2015 |
|---|---|---|---|
| Balance, Beginning of period | $ 224,509 | $ 227,259 | $ - |
| Additions - cash | 16 | 93 | 286,304 |
| Additions - pledged proceeds from future asset sales and/or recoveries | 8,874 | 168,981 | 168,982 |
| Withdrawals - cash | (14,000) | (176,934) | (235,887) |
| Balance, December 31, 2015 | $ 219,399 | $ 219,399 | $ 219,399 |

* * * * *

The Board and management of the Trust continue to devote their efforts to maximize value for Beneficiaries in the most efficient manner possible.  We look forward to reporting on the results of these efforts.

Sincerely,

John S. Dubel
Liquidating Trust Manager

4