**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | NOT FOR PUBLICATION |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Case No. 12-12020 (MG) |
| Debtors. | Chapter 11 |
| | Jointly Administered |

**MEMORANDUM OPINION AND ORDER OVERRULING THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM NUMBER 2055 FILED BY MICHAEL AND KRISTIN KARMAZYN AND DETERMINING AMOUNT OF ALLOWED CLAIM**

*A P P E A R A N C E S:*

MORRISON & FOERSTER LLP
*Attorneys for the ResCap Borrower Claims Trust*
250 West 55th Street
New York, New York 10019
By:   Jordan A. Wishnew, Esq.
        Jessica J. Arett, Esq.

Kristin Karmazyn
*Pro Se*
5262 S. Malta Way
Centennial, Colorado 80015
By:   Kristin Karmazyn

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the objection of the ResCap Borrower Claims Trust (the "Trust") to claim number 2055 (the "Claim") filed by Michael and Kristin Karmazyn (the "Karmazyns").[1] The objection was included as part of the *ResCap Borrower Claims Trust's Seventy-Sixth Omnibus Objection to Claims (No Liability Borrower Claims)* (the "Objection,"

---

[1]   Michael Karmazyn has died.  Kristin Karmazyn has continued to prosecute the Claim.

ECF Doc. # 7736).  After a hearing on January 14, 2015, and supplemental submissions by the Trust and Karmazyn, as directed, the Court overruled the Trust's Objection to Karmazyn's Claim due to disputed issues of fact that had to be resolved at an evidentiary hearing.  (*See Order Overruling the ResCap Borrower Claims Trust's Objection to Claim Number 2055 filed by Michael and Kristin Karmazyn*, dated April 1, 2015 ("Prior Order," ECF Doc. # 8410).)  Familiarity with the Prior Order is assumed.  The Court held an evidentiary hearing on the contested issues on March 1, 2016 (the "Trial").  This Opinion and Order contains the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bank. P. 7052.

Based on the evidence and arguments presented at the Trial, the Trust's Objection is **OVERRULED** and the Claim is **ALLOWED** in the amount of $2,621.40.  Additionally, the Court directs the Trust to use reasonable efforts to remove the Foreclosure (as defined below), and related credit report entries, from Karmazyn's credit report(s).

## I.    BACKGROUND

On October 31, 2012, the Karmazyns filed the Claim against Debtor Residential Capital, LLC ("ResCap"), asserting a general unsecured claim in the amount of $389,000.10.  An earlier Order reclassified the Claim as a claim against Debtor GMAC Mortgage, LLC ("GMACM") (ECF Doc. # 5898).  The stated basis for the Claim is "[w]rongful foreclosure by GMAC[M], determined by Independent Foreclosure Review."  GMACM completed foreclosure of the Karmazyns' home on October 7, 2009 (the "Foreclosure").  (Trust Ex. O).  Karmazyn contends the Foreclosure was improper because (1) proper notice of the date for the foreclosure sale was not given and (2) the Karmazyns had timely made all required payments under the Second Foreclosure Forbearance Agreement.

To avoid foreclosure under the Second Foreclosure Forbearance Agreement, the Karmazyns were required to make a payment to GMACM, on or before October 5, 2009, in the amount of $1,244.65, in certified funds. The Trust contends that GMACM gave proper notice of the foreclosure sale and that GMACM did not receive the payment from the Karmazyns until October 7, 2009, the day the foreclosure sale took place. However, Karmazyn contends the payment was received and deposited by GMACM on October 3, 2009 and, accordingly, the foreclosure sale should not have occurred. Karmazyn also contends that other payments made by the Karmazyns to GMACM were improperly applied by the Debtors.

In the Joint Pretrial Order, agreed to by the parties and entered by the Court (ECF Doc. # 9419), four issues were identified for trial:

1. Whether Karmazyn timely remitted payment under the Trial Plan on or before October 5, 2009.
2. Whether GMACM provided notice of the foreclosure sale as required under Colorado law.
3. Whether any payments made on the Loan by the Karmazyns were improperly applied by Homecomings (as defined below) or GMACM.
4. The extent of actual damages, if any, proximately caused to Claimant by GMACM's alleged wrongful foreclosure of the property.

Many of the facts in this contested matter are undisputed and are included in the Stipulated Facts contained in the Joint Pretrial Order. Karmazyn contends that all required payments were timely made to GMACM. She also contends that she and her husband never received notice of the foreclosure sale. As a result of the Foreclosure, Karmazyn asserts that (i) she and her husband suffered loss of credit and paid a total of $39,000 in rent and deposits, and (ii) paid $12,130 for the mental health care of their daughter, who allegedly suffered severe depression from being forced to move from her home. Karmazyn also seeks $125,000 for lost

3

equity in their home and $250,000 in emotional distress damages resulting from a strain on her marriage.

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW[2]

The Prior Order recounts the Karmazyns' loan history. As relevant here debtor Residential Funding Company, LLC ("RFC") purchased the Karmazyns' original loan on May 1, 2007, transferred its interest in the loan (the "Loan") to a securitization trust, with U.S. Bank, N.A. as trustee. Debtor Homecomings Financial, LLC ("Homecomings") serviced the Loan

---

[2] During the Trial, the following exhibits were introduced in evidence without objection:

1. Adjustable Rate Note, dated August 5, 2005 (the "Note," Trust Ex. A);
2. Deed of Trust, dated August 5, 2005 2005 (the "Mortgage," Trust Ex. B);
3. Servicing notes for the loan account (the "Servicing Notes," Trust Ex. C);
4. Adjustable Rate Loan Modification Agreement, dated February 1, 2009 (the "Loan Modification," Trust Ex. D);
5. Letter, dated January 30, 2009, from Homecomings (as defined below) to the Karmazyns describing reasons for returning personal check 1093 in the amount of $2,000 (Trust Ex. E);
6. Letter, dated March 11, 2009, from Homecomings to the Karmazyns describing reasons for returning personal check 1115 in the amount of $4,000 (Trust Ex. F);
7. Repayment Agreement, dated March 23, 2009 (the "Trial Plan," Trust Ex. G);
8. Letter, dated April 21, 2009, from Homecomings to the Karmazyns describing reasons for returning personal check 1194 in the amount of $2,000 (Trust Ex. H);
9. Letter, dated May 14, 2009, from Homecomings to the Karmazyns describing the reasons for the cancellation of the Trial Plan (Trust Ex. I);
10. Foreclosure Repayment Agreement, dated July 29, 2009 (the "First Foreclosure Forbearance Agreement," Trust Ex. J);
11. Letter, dated September 17, 2009, from GMACM (as defined below) to the Karmazyns describing the reasons for the cancellation of the First Foreclosure Plan (Trust Ex. K);
12. Letter, dated September 23, 2009, from GMACM to the Karmazyns describing the reasons for returning official check 6365504983 in the amount of $1,530 (Trust Ex. L);
13. Foreclosure Repayment Agreement, dated September 24, 2009 (the "Second Foreclosure Forbearance Agreement," Trust Ex. M);
14. Letter, dated October 7, 2009, from GMACM to the Karmazyns describing the reasons for returning official check 6365505039 in the amount of $1,244.65 (Trust Ex. N);
15. Public Trustee's Certificate of Purchase, dated October 7, 2009 (Trust Ex. O);
16. July 2009 Broker Priced Opinions (Trust Ex. P);
17. Trust's Request for Admissions (the "Request for Admissions," Trust Ex. Q);
18. Declaration of Sara Lathrop (Trust Ex. R); and
19. October 24, 2015 Appraisal (Claimant Ex. 9).

With the exception of the Loan Modification, each of the repayment plans and forbearance agreements expressly stated that payments must be made in the form of certified funds.

4

from October 1, 2005 until it transferred servicing rights to GMACM on July 1, 2009. GMACM serviced the Loan until the Foreclosure.

On January 15, 2009, Homecomings approved the Loan Modification. The Loan Modification (i) required a contribution of $1,979.14 in certified funds by January 25, 2009; (ii) reduced the applicable interest rate from 9.10% to 4.85%; and (iii) added to the principal balance $12,407.30 for interest and escrow that had accrued since the Karmazyns' last loan payment to bring the loan current. (Trust Ex. D.) Homecomings mailed the Loan Modification documents to the Karmazyns on January 21, 2009, and they were returned on January 30, 2009 with a *personal check* for $2,000. (Prior Order at 3.) Because the payment was not sent to Homecomings in certified funds, Homecomings did not accept or cash the Karmazyns' personal check and the Loan Modification was terminated. (Trust Ex. E.) On March 11, 2009, Homecomings received another personal check from the Karmazyns in the amount of $4,000. (Trust Ex. F.) Homecomings returned the payment to the Karmazyns and mailed them a letter informing them the payment was returned because it was not in certified funds. (*Id.*)

On March 20, 2009, Homecomings approved the Loan for the Trial Plan, a traditional three-month trial plan, which required an initial contribution payment of $4,000 and two monthly contribution payments of $2,035. The Trial Plan required that all payments be made in certified funds. (Trust Ex. G.) Homecomings received (i) the required initial $4,000 contribution payment in certified funds on March 24, 2009 and (ii) the Karmazyns' signed agreement for the Trial Plan on March 30, 2009. On April 21, 2009, Homecomings received a personal check in the amount of $2,000 from the Karmazyns. (Prior Order at 4.) However, given that the payment was not in certified funds, Homecomings returned it to the Karmazyns and mailed them a letter informing them that the payment was returned because it was not in certified funds. (Trust Ex.

5

H.) On May 4, 2009, the Karmazyns called Homecomings and inquired why the April 2009 payment was returned. (Trust Ex. C.) Homecomings explained the payment had to be made in certified funds and the Karmazyns represented that they would make a payment that day. (*Id.*) On May 14, 2009, Homecomings cancelled the Trial Plan and denied loan modification review after the Karmazyns failed to send Homecomings the payment required under the Trial Plan. (Trust Ex. I.)

On June 2, 2009, the Karmazyns sent Homecomings a $2,000 payment via Western Union. But that payment was insufficient to bring the Loan current. Because the Trial Plan had been cancelled on May 14, 2009, the full amount of payment arrears was due. Therefore, Homecomings returned the payment to the Karmazyns. (Trust Ex. C.) Homecomings received workout packages from the Karmazyns on June 10, June 15, and June 29, 2009. (Prior Order at 5.)

Loan servicing was transferred from Homecomings to GMACM on July 1, 2009. On July 29, 2009, a GMACM representative spoke by telephone with the Karmazyns and set up the First Foreclosure Forbearance Agreement, a five-month foreclosure repayment plan to allow the Karmazyns time to submit missing documents required for loan modification review. The First Foreclosure Forbearance Agreement required monthly payments of $1,528.92. After the Karmazyns failed to make a required contribution payment, GMACM cancelled the First Foreclosure Forbearance Agreement on September 15, 2009. On September 17, 2009, GMACM mailed a letter to the Karmazyns, informing them that the First Foreclosure Plan was terminated. (Trust Ex. K.) The Karmazyns then sent GMACM a $1,530 check on September 23, 2009. The check was returned because the First Foreclosure Forbearance Agreement was no longer active and the funds were not sufficient to reinstate the account. (Trust Ex. L.)

6

On September 24, 2009, GMACM sent the Karmazyns a new foreclosure repayment plan, the Second Foreclosure Forbearance Agreement, and informed them that a $1,244.65 payment was due by October 5, 2009, followed by three additional payments of $1,244.65 due on November 5, 2009, December 5, 2009, and January 5, 2010. (Prior Order at 5.) GMACM informed the Karmazyns that a foreclosure sale of the Property was scheduled for October 7, 2009 and that the initial payment under the Second Foreclosure Forbearance Agreement was due by October 5, 2009 in order to halt foreclosure. (Trust Ex. C.) The Trust presented evidence at Trial—through the testimony of Sara Lathrop, the Trust's witness and the Servicing Notes (Trust Ex. C at 15), and through Karmazyn's deemed admission due to her failure to respond to the Trust's Request for Admission No. 34[3]—that, contrary to Karmazyn's testimony, GMACM received a payment from the Karmazyns *on October 7, 2009*, in the amount of $1,244.65. If that evidence is credited, the payment was not timely received and, thus, was in an insufficient amount to reinstate the account (given that the Second Foreclosure Forbearance Agreement was no longer in effect). GMACM returned the check to the Karmazyns on October 7, 2009. (Trust Ex. N.) GMACM completed a foreclosure sale of the Property that same day. (Trust Ex. O.) At the time of the foreclosure sale, the Loan had an unpaid principal balance in the amount of $285,480.45, and the account was delinquent for payments from November 2008 through October 2009. (Trust Ex. C.)

With respect to the issue of allegedly improper notice of the foreclosure sale, the evidence at Trial established that GMACM notified the Karmazyns of the Second Foreclosure Plan by telephone. Additionally, notice of the date scheduled for the foreclosure sale was mailed

---

[3] Request for Admission No. 34 states "[t]he Claimant and/or Michael Karmazyn sent the Final Mortgage Payment in the amount of $1,244.65 that was received by GMACM on October 7, 2009."

7

to the Karmazyns in a "Combined Notice of Sale and Right to Cure and Redeem, and was also published in a newspaper of general circulation in Arapahoe County, the county where the [P]roperty was located." (Trust Ex. O.) GMACM also informed the Karmazyns of the pending foreclosure sale by telephone on September 24, 2009.

Karmazyn contends that the Second Foreclosure Forbearance Agreement provided that GMACM was to be paid the initial installment in the amount of $1,244.65 during October 2009. But she correctly points out that the specific date within October 2009 when the payment was due was not included in the exhibit the Trust introduced during Trial—Trust Ex. M. The Trust contends that the payment was due on or before October 5, 2009. Lathrop testified that based on GMACM's business practice, a printed payment schedule would have been attached to the September 27, 2009 letter, but the schedule was not imaged and retained as part of GMACM's records. Lathrop pointed to entries in the Loan Servicing Notes for September 24, 2009, memorializing a telephone conversation between Arkeisha Johnson-Smi,[4] a GMACM employee, and Karmazyn. The Servicing Notes provide that the payment was to be made by October 5, 2009, and the Foreclosure remained scheduled for October 7, 2009. Because of Karmazyn's failure to respond to the Request for Admission, she would be deemed to admit that GMACM received the payment on October 7, 2009. Adding to the confusion, another entry in the Servicing Notes for October 9, 2009 appears to indicate that the payment from Karmazyn was actually received by GMACM on October 2, 2009, in the correct amount of $1244.65 in certified funds, but that GMACM rejected the payment because it was less than what GMACM claimed was the required amount of $1,530.00, and the payment was untimely. (Trust Ex. C at 12.) However, per the evidence submitted by the Trust (the testimony of Lathrop, the Servicing

---

[4]     The name of the GMACM employee appears to be cut off.

Notes, and the Second Foreclosure Forbearance Agreement), the required payment under the Second Foreclosure Forbearance Agreement was $1,244.65, not $1,530.00, and it was due on October 5, 2009. Thus, GMACM's rejection of Karmazyn's performance under the Second Foreclosure Forbearance Agreement, the timely payment of $1,244.65, would constitute a breach of contract on GMACM's part. *See W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (stating that the elements of a breach of contract are "(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." (internal citations omitted)).

Here, the Court is faced with two competing contentions: (a) Karmazyn's deemed admission that GMACM received payment on October 7, 2009 and (b) the Servicing Notes (offered by the Trust) that indicate that GMACM received payment on October 2, 2009 in the correct amount. With respect to Karmazyn's deemed admission, the Court has discretion to excuse it, especially in light of the fact that Karmazyn is a *pro se* litigant. *See Local Union No. 38, Sheet Metal Workers' Int'l. Ass'n, AFL-CIO v. Tripodi*, 913 F. Supp. 290, 293 (S.D.N.Y. 1996) (exercising discretion to excuse a deemed admission where the excusal did not, among other things, prejudice the opposing party).[5] Here, as in *Tripodi*, Karmazyn is a *pro se* litigant who "may not have been aware of the Request for Admission, much less the consequences of failing to respond to it." *Id.* at 294. The Court would be reluctant to exclude the effect of the deemed admission in most circumstances, but here *it was the Trust* that offered the Servicing

---

[5] In 2007, as part of a general restyling of the Rules, the language of Federal Rule of Civil Procedure 36 (applicable as Federal Bankruptcy Rule of Procedure 7036) was amended to make it more easily understood and to make terminology consistent throughout the Rules. *See* FED. R. CIV. P. ADVISORY COMMITTEE NOTES (2007). Such changes were intended to be stylistic only. *Id.*

9

Notes—its business records—that contradicted the deemed admission. Lathrop testified based on the Servicing Notes, not as a percipient witness. Under these circumstances, the Court relieves Karmazyn of the effect of the deemed admission and finds that the payment in the correct amount was timely received by GMACM on October 2, 2009.

With respect to damages arising from GMACM's breach of the Second Foreclosure Forbearance Agreement, Karmazyn testified that, as a result of the Foreclosure, she had to pay rent of $1,900 per month. The Karmazyns' payments under the Second Foreclosure Forbearance Plan were $1,244.65 per month for October 2009, November 2009, December 2009 and January 2010; Karmazyn was therefore damaged in the amount of $2,621.40 (*i.e.*, the difference between Karmazyn's rental payments and the payments under the Second Foreclosure Forbearance Plan for October 2009, November 2009, December 2009 and January 2010).

The Second Foreclosure Forbearance Agreement was just that—an agreement not to foreclose for four months, to give the borrowers a chance to get their finances in order, or to apply for a new loan modification. The Second Foreclosure Forbearance Agreement was not a loan modification; it did not reduce the monthly Loan payments after January 2010. The Debtors approved the Karmazyns for two separate loan modification plans, but both plans were cancelled when the required payments were not made. The most recent modification was the Trial Plan, approved in March 2009 and cancelled in May 2009—it required monthly payments of $2,035, more than the monthly amount the Karmazyns paid in rent. There is no evidence that the Karmazyns would have been approved for a permanent loan modification with $1,224.65 monthly payments. Under the Second Foreclosure Forbearance Plan, the amount necessary to cure Karmazyns' default was $41,749.43, and the amount would increase until the default in the account was brought current. (*See* Second Foreclosure Forbearance Plan ¶ 2.)

The Court concludes that Karmazyn may recover damages for breach of contract, but Colorado law does not recognize a claim for damages wrongful foreclosure. *See Knowles v. Bank of Am., N.A.*, No. 12-cv-00621-RBJ, 2012 WL 5882570, at *2 (D. Colo. Nov. 21, 2012) ("Colorado does not recognize a claim for damages based on wrongful foreclosure." (internal citations omitted)). The only damages that Karmazyn proved at Trial for breach of contract were $2,621.40.

The evidence at Trial does not support Karmazyn's claim for lost equity in her home. The Trust introduced a broker price opinion (Trust Ex. P) that placed a value on the Karmazyns' home in July 2009, at $225,000 (based on a comparison with 3 comparable sales and 3 comparable listings). The unpaid principal balance on the Loan at the time of the foreclosure was $285,480.45. Therefore, the Karmazyns did not suffer a loss of equity as a result of the foreclosure.[6]

With respect to Karmazyn's claim for damages for loss of credit, she offered no evidence to support any damages, even assuming that there is a legal theory that would support such a recovery in this case. Unfortunately, the Karmazyns were financially distressed, not as the result of any conduct on the part of the Debtors, and Loan payments were in default for the period from November 2008 to October 2009. The Second Foreclosure Forbearance Plan did not cure the existing defaults. As such, it is hard to see how the Karmazyns sustained economic damages from loss of credit due to just the Foreclosure, and, in any event, no evidence was offered in support. However, despite this, the Foreclosure did occur as a result of the Debtors' breach of the Second Foreclosure Forbearance Plan, and, thus, the foreclosure of Karmazyn's home should

---

[6]    Karmazyn introduced in evidence an appraisal of the property as of October 24, 2015 with a value of $345,000 to $355,000. (Claimant Ex. 9.) The Court concludes that the 2015 value is not relevant to the claim for lost equity based on the foreclosure in October 2009.

11

not have occurred when it did. The Court directs the Trust to use reasonable best efforts to remove the Foreclosure, and related credit report entries, from Karmazyn's credit report(s).

With respect to Karmazyn's claim for mental health care for her daughter and for emotional distress damages for herself, under Colorado law a claim for negligent infliction of emotional distress requires the plaintiff to plead and prove, among other things, that the plaintiff sustained physical injury or was in the "zone of danger."[7] *See Culpepper v. Pearl St. Bldg., Inc.*, 877 P.2d 877, 880 n.3 (Colo. 1994) (noting that Colorado law does not recognize a cause of action for emotional distress grounded in negligence without proof that the plaintiff sustained physical injury or was in the "zone of danger"). The "zone of danger" has been defined as the subjection of a person to "an unreasonable risk of bodily harm." *See Colwell v. Mentzer Invs., Inc.*, 973 P.2d 631, 638–39 (Colo. App. 1998). Here, Karmazyn does not allege that she suffered personal injury, and as serious as foreclosure of a home is, it did not place Karmazyn in the zone of danger for personal injury. Karmazyn also did not offer any evidence that she or her family sustained physical injury as a result of the Debtors' actions in breaching the Second Foreclosure Forbearance Agreement or otherwise. Karmazyn did not offer any evidence establishing the proximate cause of any mental health issues faced by her daughter or of the amount expended for such mental health care. The Court concludes that Karmazyn cannot recover damages for negligent infliction of emotional distress.

[*REMAINDER OF PAGE INTENTIONALLY BLANK*]

---

[7] Karmazyn offered no evidence that would support a claim for intentional infliction of emotional distress.

Accordingly, the Trust's Objection is **OVERRULED** and the Claim is **ALLOWED** in the amount of $2,621.40.  Further, the Court directs the Trust to use reasonable best efforts to have the Foreclosure, and any related credit report entries, removed from Karmazyn's credit report(s).

**IT IS SO ORDERED.**

Dated:   March 11, 2016
         New York, New York

                                                    **    /s/Martin Glenn           **
                                                    MARTIN GLENN
                                                    United States Bankruptcy Judge