**Exhibit 1**

# GMAC Mortgage

May 24, 2012

Dear HELOC customer,

Residential Capital, LLC (ResCap), recently announced that it and its subsidiaries are restructuring under Chapter 11. ResCap is the parent company of GMAC Mortgage, which funds your Home Equity Line of Credit (HELOC).

As a result of this action, your HELOC with GMAC Mortgage has been frozen, which means that you will not be able to make new draws (ex: checks or wire transfers). In addition, any checks or transfer requests that were not received by GMAC Mortgage by May 14, 2012, cannot be honored. Please note this action does not change your obligation to repay the amount previously drawn, including interest, by the terms outlined in your agreement.

Enclosed is a notice of Important Information Regarding Your Home Equity Line of Credit and the Notice of Commencement.

We understand you may have some questions. Please feel free to contact our toll-free Homeowner Hotline at (888) 926-3480 between 8 a.m. and 5 p.m. EST, or refer to http://www.kccllc.net/rescap for additional information regarding ResCap's Chapter 11 reorganization.

We apologize for the inconvenience and thank you for your cooperation.

Sincerely,

Thomas Marano
Chief Executive Officer
Residential Capital, LLC

GMAC Mortgage, LLC
1100 Virginia Drive
Fort Washington, PA 19034

| Company | Preferred Stock purchased (billions USD) | Assets guaranteed (billions USD) | Repaid TARP money (billions USD) | Additional details |
|---|---|---|---|---|
| Citigroup | $45 | $306 | Partial ($20);[44] | Two allocations: $25 on October 28, 2008 and $20 in January 2009. The rest was converted to common equity which was sold by the Treasury Department over time with the final sale taking place in December 2010 at a $12 billion profit.[45] |
| Bank of America | $45 | $118 | Y[46][47] | Two allocations: $25 on October 28, 2008, and $20 in January 2009 |
| AIG (American International Group) | $40 | | $36[48] | |
| JPMorgan Chase | $25 | | Y | October 28, 2008 |
| Wells Fargo | $25 | | Y[44] | October 28, 2008 |
| GMAC Financial Services (Ally) | $17.3 | | - | Three TARP transactions made: $5 billion, $7.5 billion, and $4.8 billion. Now renamed to Ally Financial. |
| General Motors | $13.4 | | Y | Total loan portion repaid with interest to U.S. & Canadian governments as of April 21, 2010, ; $2.1 billion in preferred stock and 61 percent common equity share outstanding[49] |
| Goldman Sachs | $10 | | Y | October 28, 2008 |
| Morgan Stanley | $10 | | Y | Repaid June 17, 2009[50] |
| PNC Financial Services Group | $7.579 | | Y[51] | Bought longtime rival National City Corp. within hours of receiving TARP money. Announced on February 2, 2010, that it would repay its TARP loan.[52] |
| U.S. Bancorp | $6.6 | | Y | |
| Chrysler | $4 | | Y | Although Chrysler repaid their loans,[53] the Treasury sold its 6% stake in the company to Fiat at a $1.3 billion loss.[54] |
| Capital One Financial | $3.555 | | Y | |
| Regions Financial Corporation | $3.5 | | Y | Repaid April 4, 2012[55] |
| American Express | $3.389 | | Y | |
| Bank of New York Mellon Corp | $2 to $3 | | Y | |
| State Street Corporation | $2 to $3 | | Y | |
| Discover Financial | $1.23[56] | | Y[57] | |

Claim #6270  Date Filed: 11/9/2012

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Name of Debtor: RESIDENTIAL CAPITAL, LLC et al    Case Number: 12-12020 (MG) et al
GMAC MORTGAGE, LLC    12-12023 (MG) et al

NOTE: This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A request for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (the person or other entity to whom the debtor owes money or property):

THOMAS G. COOPER AND CATHERINE J. COOPER

□ Check this box if this claim amends a previously filed claim.

Name and address where notices should be sent:    NameID: 10969348

THOMAS G. COOPER
CATHERINE D. COOPER
PO BOX 3671
~~Salem, New Hampshire~~
Concord, NH 03302-3671

Court Claim Number:
_(if known)_

Filed on:

Telephone number:    email:

Name and address where payment should be sent (if different from above):

□ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

Telephone number:    email:

**1. Amount of Claim as of Date Case Filed:** $ 50,000 00

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

□ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** HOME EQUITY - FAILURE TO ACCOUNT FOR PAYMENTS
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:** 0 840

**3a. Debtor may have scheduled account as:** N/A
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):** N/A
(See instruction #3b)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** □ Real Estate □ Motor Vehicle □ Other
Describe:

**Value of Property:** $ 262,905   **Annual Interest Rate** _____ □ Fixed ☒ Variable
(when case was filed)

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:** $

**Basis for perfection:**

**Amount of Secured Claim:** $ 50,000 00   **Amount Unsecured:** $

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

□ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

□ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

□ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

□ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

□ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

□ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

**RECEIVED**
DEC 03 2012
KURTZMAN CARSON CONSULTANTS

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim. UNKNOWN - GMAC HAS NOT PROVIDED ACCOUNTING AS REQUESTED BY THE PARTIES (SEE LETTER)

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. (See instruction #8, and the definition of "redacted".)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain: DEBTOR HAS NOT PROVIDED (see letter)

**9. Signature:** (See instruction #9) Check the appropriate box.

☒ I am the creditor. □ I am the creditor's authorized agent. □ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.) □ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: CATHERINE D. COOPER
THOMAS G. COOPER
Title: CREDITORS
Company:
Address and telephone number (if different from notice address above):
PO BOX 3671
CONCORD NH 03302-3671
(603) 496-2452

_(Signature)_   11/28/12 _(Date)_

Claim #6272  Date Filed: 11/9/2012

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT | PROOF OF CLAIM |
|---|---|

**Name of Debtor:** GMAC Mortgage, LLC

**Case Number:** 12-12032 (MG)

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

**Name of Creditor** (the person or other entity to whom the debtor owes money or property): Thomas G. Cooper and Catherine D. Cooper

**Name and address where notices should be sent:**
Thomas G. Cooper and Catherine D. Cooper
P.O. Box 3671
Concord, NH 03302-3671
**Telephone number:** 603 496-5097   **email:** Tom.Cooper1@comcast.net

☐ Check this box if this claim amends a previously filed claim. N

**Court Claim Number:** _____
*(If known)*

**Filed on:** _____

**Name and address where payment should be sent** (if different from above):

**Telephone number:**   **email:**

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**RECEIVED**

**1. Amount of Claim as of Date Case Filed:** $ 50,000

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

DEC 0 3 2012

KURTZMAN CARSON CONSULTANTS

**2. Basis for Claim:** Home Equity Loan - Failure to account for payments.
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:** 0840

**3a. Debtor may have scheduled account as:** NA
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):** NA
(See instruction #3b)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate ☐ Motor Vehicle ☐ Other
**Describe:**

**Value of Property:** $ 262,905

**Annual Interest Rate** _____% ☐ Fixed or ☑ Variable
(when case was filed)

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**
$ _____

**Basis for perfection:** _____

**Amount of Secured Claim:** $ 50,000

**Amount Unsecured:** $ _____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☑ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

**Amount entitled to priority:**
$ _____

*Unknown – GMAC has not provided accounting as requested by the parties. (See Attached)

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

## XFINITY Connect

# GMACRESCAP Claims #6270 and 6272

**From :** tcoopeructpa@comcast.net                    Mon, Jul 22, 2013 03:27 PM

**Subject :** GMACRESCAP Claims #6270 and 6272

**To :** bpowers@silvermanacampora.com

**Bcc :** tom cooper1 <tom.cooper1@comcast.net>

Brian: This will confirm that you have received our follow up claim information which was required to be filed on July 22, 2013. I sent the documentation to Claims.Management@gmacrescap.com but was advised that it was not able to be delivered as the recipients mailbox was full. Hopefully by now you have received that link. If not, please let me know and I will forward it to you again. It is my understanding that this will comply with the requirements of the June 21, 2013 letter and that you will let us know if additional documentation is required. Thank you for your help. Tom Cooper 603-496-5997

## XFINITY Connect

tcoopeructpa@comcast.ne

± Font Size ±

# Undeliverable: Rescap Claim Information Claim Number 6270 and 6272

From : postmaster@gmacrescap.com

Mon, Jul 22, 2013 03:03 PM

Subject : Undeliverable: Rescap Claim Information Claim Number 6270 and 6272

📎 1 attachment

To : tcoopeructpa@comcast.net

**Delivery has failed to these recipients or distribution lists:**

claims.management@gmacrescap.com
The recipient's mailbox is full and can't accept messages now. Microsoft Exchange will not try to redeliver this message for you.
Please try resending this message later, or contact the recipient directly.

Sent by Microsoft Exchange Server 2007

**Diagnostic information for administrators:**

Generating server: gmacm.gmacr.corp

claims.management@gmacrescap.com
#550 5.2.2 STOREDRV.Deliver: mailbox full. The following information should help identify the cause:
"MapiExceptionShutoffQuotaExceeded:16.18969:C6000000, 17.27161:000000009400000000000000000000000000000000,
255.23226:00000000, 255.27962:FE000000, 255.17082:DD040000, 0.26937:08000000, 4.21921:DD040000, 255.27962:FA000000,
255.1494:86000000, 255.26426:FE000000, 4.7588:0F010480, 4.6564:0F010480, 4.4740:05000780, 4.6276:05000780,
4.5721:DD040000, 4.6489:DD040000, 4.2199:DD040000, 4.17097:DD040000, 4.8620:DD040000, 255.1750:0F010480,
0.26849:0F010480, 255.21817:DD040000, 0.26297:DD040000, 4.16585:DD040000, 0.32441:DD040000, 4.1706:DD040000,
0.24761:2F400000, 4.20665:DD040000, 0.25785:DD040000, 4.29881:DD040000". ##

Original message headers:

Received: from TX_NODE01.GMACM.COM (192.241.28.13) by
DAL1AMSPMX012.gmacm.gmacr.corp (192.241.27.26) with Microsoft SMTP Server id
8.3.298.1; Mon, 22 Jul 2013 14:03:12 -0500
X-IronPort-AV: E=Sophos;i="4.89,720,1367989200";
   d="pdf?scan'208,217";a="94793819"
Received: from qmta09.westchester.pa.mail.comcast.net ([76.96.62.96]) by
TX_NODE01.GMACRFC.COM with ESMTP; 22 Jul 2013 14:02:05 -0500
Received: from omta07.westchester.pa.mail.comcast.net ([76.96.62.59])          by
qmta09.westchester.pa.mail.comcast.net with comcast          id
3Qti1m0031GhbT859X24ei; Mon, 22 Jul 2013 19:02:04 +0000
Received: from sz0067.wc.mail.comcast.net ([68.87.26.138])          by
omta07.westchester.pa.mail.comcast.net with comcast          id
3X241m00Q2ymm843TX24Ds; Mon, 22 Jul 2013 19:02:04 +0000
Date: Mon, 22 Jul 2013 19:02:04 +0000
From: <tcoopeructpa@comcast.net>
To: <Claims.Management@gmacrescap.com>
Message-ID: <614068278.1655829.1374519724073.JavaMail.root@sz0067a.westchester.pa.mail.comcast.net>

In-Reply-To: <759703059.1655729.1374519584186.JavaMail.root@sz0067a.westchester.pa.mail.comcast.net>
Subject: Rescap Claim Information Claim Number 6270 and 6272
MIME-Version: 1.0
Content-Type: multipart/mixed;
        boundary="----=_Part_1655827_2053208475.1374519724048"
X-Originating-IP: [199.192.2.46, ::ffff:208.87.233.180]
X-Mailer: Zimbra 6.0.13_GA_2944 (ZimbraWebClient - IE8 (Win)/6.0.13_GA_2944)
DKIM-Signature: v=1; a=rsa-sha256; c=relaxed/relaxed; d=comcast.net;
        s=q20121106; t=1374519724;
        bh=XlujvSvpstJPnS028kOaUkD7yUV1IJaDL7zv7AYFfgU=;
        h=Received:Received:Date:From:To:Message-ID:Subject:MIME-Version:
        Content-Type;
        b=pMN94CyGBApjBEKRwEoEEVYWwpGADpwD4pV0cQZmUr8OfDLZRCX5Ca90wLwlIQZqh
        ZLS2+dcb7iZUAWR/fs++8C74GfNBrTIR5PnymXAE7ZE6owDTU0MET6UaMzPBibpynP
        FD6QICmtuCFrHPqXICX8Li9cvPv9GHD79HXI6mu72wxiO8YhiSyLgVRKE4GQKLhfHg
        XNbPGumZowV8Ugtf5BV7j5OcdasuXkhrk2Xrmfc7l5bHmN0DjVrSJ66coLccF8F8in
        HCYIF6IcI4RYzzh4Hu+SsdJ1VpIQ9Y1tKUYbRRoOcz4WAwi9Odp0aDhtX+kUWd7zRl
        iq+eZkGZA1Dmw==
Return-Path: tcoopeructpa@comcast.net

---

**From** : tcoopeructpa@comcast.net                                 Mon, Jul 22, 2013 07:02 PM

**Subject** : Rescap Claim Information Claim Number 6270 and 6272             5 attachments

      **To** : Claims Management <Claims.Management@gmacrescap.com>

---

    **TDBankpayoff5-19-05.pdf**
    445 KB  View Download

    **6272.pdf**
    423 KB  View Download

    **6270.pdf**
    345 KB  View Download

    **4912.pdf**
    395 KB  View Download

    **2418.pdf**
    339 KB  View Download

    Download all attachments as zip file

July 14, 2013


Residential Capital, LLC
PO Box 385220
Bloomington, Minnesota  55438

       RE:  RESCAP Claim #6270 and 6272
       Thomas G. Cooper and Catherine D. Cooper


To Whom it May Concern:

     This is in response to the letter we received from RESCAP Morrison-Foerster dated June 21, 2013 regarding the above claims.  We have previously provided attached documentation to the proof of claim form which was attached to your letter.  Your letter requests a statement of our claim and to attach documentation for the claim.  Our claim is as follows:

     On not less than 12 separate occasions during 2012 we have attempted by telephone, in writing, and by e-mail to obtain from GMAC an accounting of all transactions and all paperwork pertaining to a line of credit we opened with GMAC on August 25, 2003 (Account Number 8002690840:  Property located at 175 South Street Concord, NH 03301).  To date we have been provided only 5 pages of an original note dated June 21, 2003 which was apparently signed only by us.  The only other information we have been provided – and we have been provided this same information on two separate occasions – is a computer generated printout showing payment and balance activity on this account for the period from October 20, 2009 through September 20, 2012.

     We have yet to receive a detailed accounting for all charges assessed to us, including the interest rate and related assessments from the time period from August 25, 2003 to the present.  And we do not have any documents other than the August 25, 2003 note.  This is particularly significant because on May 19, 2005 at a closing which took place in Concord, NH at Bank of New Hampshire (now TD BANK) we signed a document specifically closing the GMAC account and requesting GMAC to execute and record a mortgage discharge for the June 21, 2003 note.  This documentation closing the account was included in a letter from the Bank of New Hampshire dated May 19, 2005 along with an Official Check payable to GMAC in the amount of $45,508.82.  GMAC never recorded the Discharge of Mortgage.

     We have consistently been unable to proceed with a refinance of our home mortgage and to take advantage of significantly lower interest rates because the GMAC mortgage continues to show up as an encumbrance on the property.  We have been unable to move forward with these and related financial plans as a

result of GMAC's failure to provide us with the requested information. Our claim
is for the entire amount of the undischarged encumbrance along with financial
losses suffered as a result of being required to pay interest on our home mortgage
(5.25%) as opposed to the 3.5% we should have been in a position to obtain but
for the GMAC encumbrance.

We have tried on numerous occasions to resolve this matter and would like
to bring this issue to conclusion in the very near future. Attached is additional
documentation. Please feel free to contact us at: 603-496-5997


Thomas G. Cooper
Catherine D. Cooper
PO Box 3671
Concord, NH 03301

**Exhibit 7**

July 22, 2013

Residential Capital, LLC
PO Box 385220
Bloomington, Minnesota 55438

**RE: GMAC and RESCAP Claim #6270 and #6272**
Thomas G. Cooper and Catherine D. Cooper
GMAC Loan No. 8002690840
Property Address: 175 South Street, Concord, NH 03301

**VIA E-MAIL TO: Claims.Management@gmacrescap.com**

To Whom it May Concern:

This is in response to the letter we received from RESCAP Morrison-Foerster dated June 21, 2013 regarding the above claims. We have previously provided attached documentation to the proof of claim form which was attached to your letter. Your letter requests a statement of our claim and to attach documentation for the claim. Our claim is as follows:

On not less than 12 separate occasions during 2012 we have attempted by telephone, in writing, and by e-mail to obtain from GMAC an accounting of all transactions and all paperwork pertaining to a line of credit we opened with **GMAC** on August 25, 2003 (**Account Number 8002690840:** Property located at 175 South Street Concord, NH 03301). To date we have been provided only 5 pages of an original note dated June 21, 2003 which was apparently signed only by us. The only other information we have been provided – and we have been provided this same information on two separate occasions – is a computer generated printout showing payment and balance activity on this account for the period from October 20, 2009 through September 20, 2012.

We have yet to receive a detailed accounting for all charges assessed to us, including the interest rate and related assessments from the time period from August 25, 2003 to the present. And we do not have any documents other than the August 25, 2003 note. This is particularly significant because on May 19, 2005 at a closing which took place in Concord, NH at Bank of New Hampshire (now TD BANK) we signed a document specifically closing the GMAC account and requesting GMAC to execute and record a mortgage discharge for the June 21, 2003 note. This documentation closing the account was included in a letter from the Bank of New Hampshire dated May 19, 2005 along with an Official Check payable to GMAC in the amount of $45,508.82. GMAC never recorded the Discharge of Mortgage.

We have consistently been unable to proceed with a refinance of our home mortgage and to take advantage of significantly lower interest rates because the GMAC mortgage continues to show up as an encumbrance on the property. We have been unable to move forward with these and related financial plans as a result of GMAC's failure to provide us with the requested information. Our claim is for the entire amount of the undischarged encumbrance along with financial losses suffered as a result of being required to pay interest on our home mortgage (5.25%) as opposed to the 3.5% interest rate (and, at times, lower)we should have been in a position to obtain but for the GMAC encumbrance.

We have tried on numerous occasions to resolve this matter and would like to bring this issue to conclusion in the very near future. Attached is our claim documentation which was submitted in support of our claim and which you may not have reviewed or been provided with prior to sending your letter of June 21, 2013. Please let us know what other documentation is required to evaluate and adjudicate our claim. Please feel free to contact us at: 603-496-5997. Thank you for your consideration.

Thomas G. Cooper
Catherine D. Cooper
PO Box 3671
Concord, NH 03301

Attachments to Claim sent in accompanying e-mails to:
Claims.Management@gmacrescap.com

## XFINITY Connect

tom.cooper1@comcast.net

± Font Size ±

# Residential Capital bankruptcy cases - Objections to Claims

**From :** Meryl L. Rothchild <MRothchild@mofo.com>

**Subject :** Residential Capital bankruptcy cases - Objections to Claims

**To :** 'tom.cooper1@comcast.net' <tom.cooper1@comcast.net>

Mon, Jul 01, 2013 01:33 PM
📎6 attachments

Mr. Cooper,

Per my voicemail, I'm attaching the two objections that affect your proofs of claim. I'm also attaching the proofs of claim that you currently have on the Debtors' register. They are Claim Nos. 2418, 4912, 6270, 6270.

**Please note that you still have two claims remaining on the Debtors' claims register.** These objections are intended to clean up claims that are either redundant or duplicative of one another, as well as claims that were later amended, and thus superseded, by a subsequently filed claim.

In your case, the Debtors are asserting that Claim No. 2418 was amended by Claim No. 6272. Because that later claim appears to be filed for the same reasons as 2418, the Debtors are asking that only 6272 remain on the claims register at this time. Accordingly, Claim No. 6272 is still on the register, and has not been objected to at this time.

Also, the Debtors are asserting that Claim No. 4912 is redundant – meaning, substantially similar and almost an identical duplicate to – Claim No. 6270. Accordingly, because it appears as though these claims were filed for the same reasons, the Debtors are asking that only 6270 remain on the claims register at this time. Accordingly, Claim No. 6270 is still on the register, and has not been objected to at this time.

I'm happy to discuss any of this with you. Feel free to call me at the number below.

Best,

Meryl

**Meryl Rothchild**
Morrison & Foerster LLP
1290 Avenue of the Americas | New York, NY 10104-0050
P: 212.336.4168 | C: 201.638.4232
MRothchild@mofo.com | www.mofo.com

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230/

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.

**Seventh Omnibus Claims Objection - Amended and Superseded Borrower Claims.pdf**
521 KB

**Eighth Omnibus Claims Objection - Redundant Borrower Claims.pdf**
548 KB

**Cooper POC 2418.pdf**
405 KB

**Cooper POC 4912.pdf**
474 KB

**Cooper POC 6270.pdf**
408 KB

**Cooper POC 6272.pdf**
505 KB

January 31, 2015

Residential Capital, LLC
c/o KCC
2335 Alaska Ave
El Segundo, CA 90245

Residential Capital, LLC
PO Box 385220
Bloomington, Minnesota 55438

**RE: United States Bankruptcy Court –Southern District of New York**
**In RE: Residential Capital, LLC, et al Debtors  Case No. 12-12020 (MG)**

**GMAC and RESCAP Claim #6270 and #6272**
Thomas G. Cooper and Catherine D. Cooper
GMAC Loan No. 8002690840
Property Address: 175 South Street, Concord, NH 03301

**VIA E-MAIL TO:  Claims.Management@gmacrescap.com**

To Whom it May Concern:

We are writing to follow up earlier correspondence with you and to inquire as to the status of our claim.  In July of 2014 Rescap Liquidating Trust filed a motion to extend the deadline for adjudicating claims.  We were provided notice of the motion pursuant to paragraph 21 along with "all claimants with Unresolved Claims."  Paragraph 18 of the Motion states in part: "...extending the Claims Objection Deadline to June 15, 2015 will allow it and the Borrower Claims Trust to dedicate the necessary time and resources toward reviewing, objecting to, settling, satisfying, or otherwise resolving claims."  Our purpose in writing to you today is to inquire as to the status of our claim and what, if any additional information you need from us to resolve this matter.

We provided substantial written documentation of the claim when we wrote on July 22, 2013. At that time we also offered to provide you with whatever additional documentation you needed to evaluate and adjudicate the claim.  I am enclosing a copy for your ease of reference.

We know that there are a multitude of claims which you are trying to address and that our claim is very small compared to others.  We have been patient throughout this process and would greatly appreciate your letting us know an approximate time from for when our claim might be addressed and favorably considered.

Please feel free to contact us at:  603-496-5997 after 6:00PM as this is a workplace support cellular telephone number.  Thank you for your consideration.

Thomas G. Cooper
Catherine D. Cooper
PO Box 3671
Concord, NH 03301

Letter and attachments also sent to:Claims.management@gmacrescap.com

# RESCAP BORROWER CLAIMS TRUST
## 29209 Canwood St. Suite 210
## Agoura Hills, CA 91301

February 6, 2015

VIA U.S. MAIL
Thomas G. Cooper and Catherine D. Cooper
P.O. Box 3671
Concord, NH 03302-3671

**FOR SETTLEMENT PURPOSES ONLY**
**SUBJECT TO FRE 408**

Re:    **In re Residential Capital, LLC, et al.**
       **U.S. Bankruptcy Court, Southern District of New York**
       **Case No. 12-12020 (MG)**
       **Resolution of Proof of Claim No. 6272, 6270**

Dear Claimant:

I am writing to you in my capacity as the Trustee for the ResCap Borrower Claims Trust. In connection with the Residential Capital, LLC Chapter 11 cases, you filed a proof of claim No. 6272 against Debtor GMACM in the amount of $50,000.00 and additional duplicative proof of claim No,(s) 6270.

On December 11, 2013, the Bankruptcy Court presiding over the ResCap Chapter 11 cases confirmed the Debtors' Chapter 11 Plan (the "Plan") [Docket No. 6065] which established the ResCap Borrower Claims Trust ("Borrower Trust"). The Borrower Trust's responsibilities include reviewing, litigating and settling proofs of claim filed by Borrowers, such as you, as well as making monetary distributions to individuals whose proofs of claim are ultimately allowed. Your claim can be resolved through litigation or through a consensual settlement.

Litigation

The litigation track usually involves the Borrower Trust investigating and then filing an Objection to your claim. You then can oppose the Objection if you choose by filing a responsive pleading. The Borrower Trust can thereafter, if necessary, file a pleading to respond to your pleading. The Objection is then scheduled for a hearing and the Court rules on the objection. If the court denies the Borrower Trust's Objection, then typically the matter would be set for an actual trial. All of the pleadings, the hearing and the trial will be in the U.S. Bankruptcy Court, Southern District of New York in New York, New York.

As of December 12, 2014, the data for the Objections filed by the Debtors and the Borrower Trust and ruled on by the court reflects that 2,421 claims were objected to by the Debtors and the Borrower Trust and 2,324 of the filed Objections were granted by the Court. In other words, of the 2,421 claims subject to filed Objections, 2,324 of the claims were expunged and the claimant lost their right to receive a monetary distribution from the Borrower Trust. While an Objection has not yet been filed as to your claim, the Debtors and the Borrower Trust have been successful expunging 96% of the claims that were the subject of a filed claims Objection.

ny-1160465 v2

Settlement

Another method to resolve your claim is through a settlement. We are in the process of investigating the remaining unresolved claims such as yours ahead of filing an Objection. However, before filing an Objection to your claim and in furtherance of the Borrower Trust's claim reconciliation efforts, the Borrower Trust extends the following offer to resolve your proof of claim:

> *The Borrower Trust will agree to allow Claim No. 6272 against GMACM as a general unsecured claim in the amount of $6,000.00. This proof of claim will be treated as a Class GS-5 claim under the Plan, and you will receive a cash distribution under the Plan consistent with other creditors in Class GS-5 at a time to be determined in the sole discretion of the Borrower Trust. Your additional Claim No.(s) 6270 shall be disallowed and expunged without further order of the Bankruptcy Court.*

**This offer expires three (3) weeks from the date of this letter**.

Under the terms of the Plan, it is estimated that creditors with allowed claims against GMACM will receive distributions of approximately thirty cents on the dollar for their allowed claims (or, **for example**, approximately $3,000 cash for an allowed claim of $10,000).

**If you agree to this settlement offer**, kindly return a countersigned copy (all claimants must sign) to me in the stamped envelope enclosed herein before the expiration date, and the Borrower Trust will consider your signature(s) to represent a binding agreement between the parties and your proof of claim will be deemed Allowed (as such term is defined in the Plan) in the amount stated above.

**If you do not agree to this settlement offer**, then the Borrower Trust reserves the right to file an Objection to your claim with the Bankruptcy Court and ask that the claim be disallowed.

Should you have any questions about this offer, please contact Peter Kravitz by email, phone or mail as set forth below. Email is more efficient and will typically generate a more rapid response.

> Peter S. Kravitz, Trustee
> ResCap Borrower Claims Trust
> 29209 Canwood St. Suite 210
> Agoura Hills, CA 91301
> Phone: 310-974-6351
> Email: admin@solutiontrust.com

Sincerely,

Peter S. Kravitz
Trustee, ResCap Borrower Claims Trust

ny-1160465 v2

Thomas G. Cooper and Catherine D. Cooper
P.O. Box 3671
Concord, NH 03302-3671                    **Resolution of Proof of Claim No.(s) 6272, 6270**

I/WE _____, ACKNOWLEDGE & AGREE TO
RESOLVE PROOF OF CLAIM NUMBER 6272 FOR AN ALLOWED GENERAL
UNSECURED CLAIM AGAINST GMACM IN THE AMOUNT OF $6,000.00 AND
FURTHER ACKNOWLEDGE AND AGREE THAT ADDITIONAL CLAIM NO.(S)
6270 SHALL BE DISALLOWED  AND EXPUNGED WITHOUT FURTHER ORDER
OF THE BANKRUPTCY COURT.

Dated: _____          Dated: _____

By: _____             By: _____
    Print Name                                  Print Name

    _____                    _____
    Signature                                   Signature

ny-1160465 v2

News: PR Newswire

Kirby McInerney LLP Announces Proposed Settlement with the Rothstein Plaintiffs in GMAC
Mortgage, LLC Class Action Litigation
Print Share Font-size
02/23/16 11:30 AM EST
Kirby McInerney LLP Announces Proposed Settlement with the Rothstein Plaintiffs in GMAC
Mortgage, LLC Class Action Litigation

PR Newswire

NEW YORK, Feb. 23, 2016

NEW YORK, Feb. 23, 2016 /PRNewswire/ --

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE RESIDENTIAL CAPITAL, LLC, et al.,


Debtors.


Case No. 12-12020 (MG)


Chapter 11


Jointly Administered

SUMMARY NOTICE OF (I) PENDENCY OF CLASS ACTION;.
(II) PROPOSED SETTLEMENT AND PLAN OF ALLOCATION;
(III) SETTLEMENT FAIRNESS HEARING; AND (IV) MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

TO:    All residential mortgage loan borrowers whose loans were serviced by GMAC Mortgage,
LLC ("GMACM") and from whose payments GMACM recouped or recovered, in whole or part,
charges for lender-placed hazard insurance on residential real property ("Lender-Placed
Insurance"), including, without limitation, any borrowers whose payments were applied, in whole
or part, to charges for Lender-Placed Insurance, at any time from February 3, 2004 through

October 2, 2013 (the "Class Period").

THIS NOTICE WAS AUTHORIZED BY THE BANKRUPTCY COURT. IT IS NOT A LAWYER SOLICITATION. PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY, YOUR RIGHTS MAY BE AFFECTED BY A CLASS ACTION SETTLEMENT THAT HAS BEEN PROPOSED IN THE ABOVE-CAPTIONED BANKRUPTCY BEFORE THIS COURT.

YOU ARE HEREBY NOTIFIED, pursuant to Rule 7023 and 9019 of the Federal Rules of Bankruptcy Procedure and an Order of the United States Bankruptcy Court for the Southern District of New York, (i) that Bankruptcy Proof of Claim No. 4074 (the "Bankruptcy Proof of Claim") in the above-captioned bankruptcy has been preliminarily certified as a Class Proof of Claim on behalf of a class of all residential mortgage loan borrowers whose loans were serviced by GMACM and from whose payments GMACM recouped or recovered, in whole or in part, charges for Lender-Placed Insurance, including, without limitation, any borrowers whose payments were applied, in whole or part, to charges for Lenders-Placed Insurance, at any time during the Class Period (the "Settlement Class"), except for certain persons and entities who are excluded from the Settlement Class, as defined in the Stipulation and Agreement of Settlement With Rothstein Plaintiffs (the "Stipulation"); and (ii) that the Court-Appointed Class Representatives, as defined in the Stipulation, have reached an agreement to settle the Bankruptcy Proofs of Claim for an allowed unsecured claim not subject to subordination in the amount of $13 million against GMAC only (the "Allowed Claim"). The Allowed Claim will be an "Allowed Borrower Claim" in Class GS-5, as set forth in the Chapter 11 Plan.

A hearing will be held on May 24, 2016 at 10:00 a.m. before the Honorable Martin Glenn at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004-1408, to determine, among other things: (i) whether the proposed settlement should be approved as fair, reasonable and adequate; (ii) whether the Bankruptcy Proof of Claim should be dismissed on the merits and with prejudice against all the Settling Defendants, and whether the releases specified and described in the Stipulation should be granted; (iii) whether the proposed Plan of Allocation should be approved as fair and reasonable; and (iv) whether Lead Class Counsel's application for an award of attorneys' fees and reimbursement of expenses should be approved.

If you are a member of the Settlement Class, your rights will be affected by the Proceeding and the settlement, and you may be entitled to share in the Settlement Fund. If you have not yet received the Summary Direct U.S. Mail Postcard Notice that refers to, among others, the full printed Notice of (I) Pendency of Class Action; (II) Proposed Settlement and Plan of Allocation, (III) Settlement Fairness Hearing, and (IV) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice"), copies of the full printed Notice can be downloaded from the website maintained by the Claims Administrator at www.GMACMortgageLenderPlacedInsuranceClassActionSettlement.com.

If you are a member of the Settlement Class and you wish to participate in the settlement and receive the benefits to which you are entitled, you do not need to do anything. By participating in

the settlement, you will be bound by the release provisions and other provisions of the proposed settlement including any judgments or orders entered by the Court.

However, if you are a member of the Settlement Class and do not wish to participate in the settlement and do not wish to be bound by the release provisions and other provisions of the proposed settlement, you must submit a request for exclusion from the Settlement Class such that it is received no later than May 10, 2016, in accordance with the instructions set forth in the Notice. If you properly and timely exclude yourself from the Settlement Class, you will not be bound by any judgments or orders entered by the Court in the Proceeding and you will not be eligible to share in the proceeds of the settlement. Please note however, that you will be otherwise enjoined from commencing any such lawsuit, arbitration or other proceeding by the Chapter 11 Plan and orders of the Bankruptcy Court.

Any objections to any aspect of the proposed settlement, the proposed Plan of Allocation or Lead Class Counsel's application for an award of attorneys' fees and reimbursement of expenses must be filed with the Court and delivered to designated representative Lead Class Counsel and counsel for the Settling Defendants such that they are received no later than May 10, 2016, in accordance with the instructions set forth in the Notice.

PLEASE DO NOT CONTACT THE BANKRUPTCY COURT OR THE CLERK'S OFFICE REGARDING THIS NOTICE. Inquiries, other than requests for the Notice, may be made to Class Counsel:

Mark A. Strauss, Esq.
Thomas W. Elrod, Esq.
KIRBY McINERNEY LLP
825 Third Avenue
New York, NY 10022
(212) 371-6600

Dated: February 23, 2016

By Order of the United States Bankruptcy

Court for the Southern District of New York

To view the original version on PR Newswire,
visit:http://www.prnewswire.com/news-releases/kirby-mcinerney-llp-announces-proposed-settle

ment-with-the-rothstein-plaintiffs-in-gmac-mortgage-llc-class-action-litigation-300221103.html

SOURCE Kirby McInerney LLP
Print Share Font-size
Sponsored Links
Sponsor Center

Corrections  Help  Advertising  Opportunities  Licensing  Topics  MorningstarAdvisor  Glossary
RSS  Store  Affiliate  Careers  Company Site

   International Sites
   Australia
   Canada
   China
   France
   Germany
   Hong Kong
   Italy
   The Netherlands
   Norway
   Spain
   U.K.
   Switzerland
   India
   Finland

Independent. Insightful. Trusted. Morningstar provides stock market analysis; equity, mutual fund, and ETF research, ratings, and picks; portfolio tools; and IRA, 401k, and 529 plan research. Our reliable data and analysis can help both experienced enthusiasts and newcomers.

© Copyright 2015 Morningstar, Inc. All rights reserved. Please read our Terms of Use and Privacy Policy. Dow Jones Industrial Average, S&P 500, Nasdaq, and Morningstar Index (Market Barometer) quotes are real-time.

## TD Bank

PAGE 1 OF 1

STATEMENT DATE   10/31/15

002

000245 06HLCN01



THOMAS G COOPER
CATHERINE D COOPER
PO BOX 3671
CONCORD, NH   03302

CORRESPONDENCE:
LOAN OPERATIONS
32 CHESTNUT STREET
LEWISTON, ME   04240
1-800-224-5563
www.TDBank.com

OUR RECORDS INDICATE THAT YOUR PAYMENT IS NOW PAST DUE. PLEASE MAKE THE
PAYMENT INDICATED TO BRING YOUR ACCOUNT TO DATE. PLEASE DISREGARD THIS NOTICE
IF PAYMENT HAS ALREADY BEEN MADE.

THIS IS NOTIFICATION THAT THIS PAYMENT IS COMING DUE ACCORDING TO THE TERMS SPECIFIED BELOW:

HOME EQUITY STATEMENT                                         ACCOUNT NUMBER 0000953013797

```
*********** ACCOUNT SUMMARY ***********************************************  PAYMENT SUMMARY *******
STATEMENT CLOSING DATE            10/31/15      PAYMENT DUE DATE            11/23/15
DAYS IN BILLING CYCLE                   31      PROTECTOR FEE/INS PREM           .00
CREDIT LINE                     133824.00      LOC NET FINANCE CHARGE        309.23
CREDIT LINE USED                132398.59      LOC NET PRINCIPAL            1112.59
AVAILABLE CREDIT                      .00      TOTAL CURRENT DUE            1421.82
CURRENT INTEREST RATE             2.75000      TOTAL AMOUNT PAST DUE        5470.95
DAILY PERIODIC RATE(DPR)          .00007534    TOTAL MINIMUM DUE            6892.77
AVERAGE DAILY BALANCE           132398.59      LATE CHARGES                   71.09
                                               FEES AND OTHER CHARGES          .00
                                               TOTAL AMOUNT DUE            6963.8
```

```
******************************** INTEREST RATE SUMMARY ************************************************
PRODUCT   DAYS      ANNUAL        DAILY        AVERAGE      FINANCE          INT ADJ
TYPE      RATE IN   PERCENTAGE    PERIODIC     DAILY        CHARGE           DUE TO
          EFFECT    RATE          RATE         BALANCE      THIS PERIOD      BACKDATING
LOC       31        2.7500000     .00007534    132,398.59   309.23           0.00
```

```
******************************** TRANSACTION SUMMARY ***********************************************
EFF    DESCRIPTION       AMOUNT    LATE/OTHER    PROTECTOR FEE    FINANCE     PRINCIPAL    CURRENT
DATE                               CHARGES       OR INS PREM      CHARGE                   BALANCE
10/01  LAST STMT BAL                                                                      132398.59
10/08  LATE CHARGE FEE     71.09                                                          132398.59
10/14  SECURE PROPERTY     11.00                                                          132398.59
10/19  VALUATION          125.00                                                          132398.59
10/31  ENDING STMT BAL                                                                    132398.59
```

**See reverse side for important information.**

**Please return lower portion with your payment.**

---

# PAYMENT COUPON

Payment received at the mailing address (shown below) before 5:00 p.m. EST on any business
day will be credited to your account as of the date received. Payments received at any other
location may be subject to a delay in crediting of up to 5 days after the date of receipt.

HOME EQUITY STATEMENT

ACCOUNT NUMBER   00009530137979
PAYMENT DUE DATE 11/23/15

TD BANK NEW HAMPSHIRE
PO BOX 8400
LEWISTON, ME   04243-8400

05220028000009530137979808000069638669

THOMAS G COOPER
CATHERINE D COOPER
PO BOX 3671
CONCORD, NH   03302

TOTAL CURRENT DUE         1421.82
TOTAL AMOUNT PAST DUE     5470.95
TOTAL MINIMUM DUE         6892.77
OTHER AND LATE CHARGES      71.09
TOTAL AMOUNT DUE          6963.86

| Amount Enclosed | |
|---|---|

⑃5220⑉0280⑈ 00009530137979⑈



## APPRAISAL OF REAL PROPERTY

### LOCATED AT:

175 South Street
See enclosed deed
Concord, NH 03301

### FOR:

Thomas G. & Catherine Dube-Cooper
175 South Street
Concord, NH 03301

### AS OF:

April 1, 2015

### BY:

Louis C. Manias

File No. 16-74

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 175 South Street | | | | |
| City | Concord | County Merrimack | State NH | Zip Code 03301 |
| Lender | Thomas G. & Catherine Dube-Cooper | | | | |

## APPRAISAL AND REPORT IDENTIFICATION

**This Report is one of the following types:**

☒ Appraisal Report    (A written report prepared under Standards Rule    2-2(a)  , pursuant to the Scope of Work, as disclosed elsewhere in this report.)

☐ Restricted    (A written report prepared under Standards Rule    2-2(b)  , pursuant to the Scope of Work, as disclosed elsewhere in this report,
Appraisal Report    restricted to the stated intended use by the specified client or intended user.)

### Comments on Standards Rule 2-3

I certify that, to the best of my knowledge and belief:
— The statements of fact contained in this report are true and correct.
— The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
— Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of this report and no  personal interest with respect to the parties involved.
— Unless otherwise indicated, I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.
— I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.
— My engagement in this assignment was not contingent upon developing or reporting predetermined results.
— My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
— My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.
— Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.
— Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).

### Reasonable Exposure Time    (USPAP defines Exposure Time as the estimated length of time that the property interest being
appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal.)
My Opinion of Reasonable Exposure Time for the subject property at the market value stated in this report is:    3-6 months

### Comments on Appraisal and Report Identification
Note any USPAP-related issues requiring disclosure and any state mandated requirements:

The preprinted section of the appraisal has an area where the Intended Use and User are defined. This form has been developed by the financial industry for mortgage lending purposes. However, it can also serve other purposes. The Intended User of the report is the client named herein and the Intended Use is to assist with possible tax abatement decisions regarding the subject property and no other purpose.

This is a retrospective valuation assignment which requires the extraordinary assumption that the subject property was in the same condition on the effective date of appraisal as observed on the actual date of inspection which is February 9, 2016. The use of this extraordinary assumption does not render the appraisal any less credible.

I or Capital Appraisal Associates have performed services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment. I completed an appraisal of the subject property for the same client on August 31, 2013.

The photographs included in the appraisal report are the same used from the 2013 appraisal. There were no changes to the subject property except those indicated in the addendum section of the appraisal report regarding the heating system and additional damage due to the leaking roof.

**APPRAISER:**

Signature: _____
Name: Louis C. Manias

State Certification #: NHCG #5
or State License #: _____
State: NH    Expiration Date of Certification or License: 04/13/2014
Date of Signature and Report: February 26, 2016
Effective Date of Appraisal: April 1, 2015
Inspection of Subject: ☐ None ☐ Interior and Exterior ☐ Exterior-Only
Date of Inspection (if applicable): April 1, 2015

**SUPERVISORY or CO-APPRAISER (if applicable):**

Signature: _____
Name: _____

State Certification #: _____
or State License #: _____
State: _____ Expiration Date of Certification or License: _____
Date of Signature: _____

Inspection of Subject: ☐ None ☐ Interior and Exterior ☐ Exterior-Only
Date of Inspection (if applicable):

16-74
File # 16-74

Main File No. 16-74 | Page #4

## Uniform Residential Appraisal Report

| | | |
|---|---|---|
| The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property. | | |

**SUBJECT**

| | | | |
|---|---|---|---|
| Property Address 175 South Street | City Concord | State NH | Zip Code 03301 |
| Borrower N/A | Owner of Public Record Catherine Dube-Cooper | County Merrimack | |

Legal Description   See enclosed deed

| Assessor's Parcel # Map 9, Block 2, Lot 3 | Tax Year 2015 | R.E. Taxes $ 8,065.30 |
|---|---|---|
| Neighborhood Name N/A | Map Reference 3 | Census Tract 032100 |

Occupant ☒ Owner ☐ Tenant ☐ Vacant    Special Assessments $ None    ☐ PUD    HOA $ N/A    ☐ per year    ☐ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) Possible tax abatement proceedings

Lender/Client Thomas G. & Catherine Dube-Cooper   Address 175 South Street, Concord, NH 03301

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s). Multiple Listing Service & owner

I ☐ did ☒ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed. N/A

**CONTRACT**

Contract Price $ N/A   Date of Contract 4/1/15 Eff.   Is the property seller the owner of public record? ☐ Yes ☐ No  Data Source(s) N/A

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☒ No

If Yes, report the total dollar amount and describe the items to be paid.   N/A

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | One-Unit Housing Trends | One-Unit Housing | | Present Land Use % |
|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | Property Values ☐ Increasing ☐ Stable ☒ Declining | PRICE | AGE | One-Unit 85 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | $ (000) | (yrs) | 2-4 Unit 10 % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☐ Under 3 mths ☐ 3-6 mths ☒ Over 6 mths | 150 Low 20 | | Multi-Family % |
| Neighborhood Boundaries   See attached addenda. | | 500 High 100 | | Commercial 5 % |
| | | 250 Pred. 75 | | Other % |

Neighborhood Description   The subject property is considered suburban in nature and is located close to downtown Concord where all facilities and conveniences can be found. This area affords a mix of different style and age of single family homes. This area also reflects all city services including city water and sewer and natural gas.

Market Conditions (including support for the above conclusions)   See attached addenda.

**SITE**

| Dimensions See Deed. 115' Road Front | Area 1.29 +/- acres | Shape Irregular | View Average |
|---|---|---|---|

Specific Zoning Classification RS - Single Residence   Zoning Description Minimum 12,500 s.f. lot size and minimum 100' of frontage.

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No  If No, describe As vacant, it is my opinion the highest and best use is for a single home site.

| Utilities | Public | Other (describe) | Off-site Improvements - Type | Public | Private |
|---|---|---|---|---|---|
| Electricity | ☒ | | Street Asphalt Paved | ☒ | |
| Gas | ☒ | Water ☒ | Alley None | | |
| | | Sanitary Sewer ☒ | | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No   FEMA Flood Zone X   FEMA Map # 33013C 0541 E   FEMA Map Date 4/19/10

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No  If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No  If Yes, describe

See attached addenda.

**IMPROVEMENTS**

| General Description | Foundation | Exterior Description materials/condition | Interior materials/condition |
|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | ☐ Concrete Slab ☐ Crawl Space | Foundation Walls PC/Avg. | Floors Tile,HW/Avg. |
| # of Stories 2 | ☒ Full Basement ☐ Partial Basement | Exterior Walls Vinyl Clap/Avg. | Walls Plstr, SR/Avg. |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | Basement Area 1,543 sq.ft. | Roof Surface Shingles/Poor | Trim/Finish Wood/Average |
| ☒ Existing ☐ Proposed ☐ Under Const. | Basement Finish 25 % | Gutters & Downspouts Adeq. Ovrhng | Bath Floor Tile/Average |
| Design (Style) Colonial | ☒ Outside Entry/Exit ☐ Sump Pump | Window Type Wood DH | Bath Wainscot Fiberglass/Average |
| Year Built 1910 | Evidence of ☐ Infestation | Storm Sash/Insulated Yes/yes | Car Storage ☐ None |
| Effective Age (Yrs) A-102 E-20 | ☐ Dampness ☐ Settlement | Screens Yes | ☒ Driveway   # of Cars 2+ |
| Attic ☐ None | Heating ☐ FWA ☐ HWBB ☐ Radiant | Amenities ☐ Woodstove(s) # | Driveway Surface Asphalt |
| ☐ Drop Stair ☐ Stairs | ☒ Other Steam  Fuel Nat Gas | ☐ Fireplace(s) # 0 ☐ Fence | ☒ Garage   # of Cars 2 Att. |
| ☐ Floor ☒ Scuttle | Cooling ☐ Central Air Conditioning | ☒ Patio/Deck Patio ☐ Porch Cov. | ☐ Carport   # of Cars |
| ☐ Finished ☐ Heated | ☐ Individual ☐ Other | ☐ Pool ☐ Other | ☒ Att. ☐ Det. ☐ Built-In |

Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☐ Disposal ☐ Microwave ☐ Washer/Dryer ☐ Other (describe)

Finished area above grade contains:   8 Rooms   4 Bedrooms   2.5 Bath(s)   2,535 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.).   See attached addenda.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).   See attached addenda.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☒ Yes ☐ No  If Yes, describe

See comments on condition.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No  If No, describe

| | | |
|---|---|---|
| Freddie Mac Form 70 March 2005 | Page 1 of 6 | Fannie Mae Form 1004 March 2005 |

## Uniform Residential Appraisal Report

16-74
File # 16-74

There are **4** comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 219,900 to $ 299,900.

There are **9** comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 175,000 to $ 315,000.

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | +(-) $ Adjustment | COMPARABLE SALE # 2 | +(-) $ Adjustment | COMPARABLE SALE # 3 | +(-) $ Adjustment |
|---|---|---|---|---|---|---|---|
| Address | 175 South Street Concord, NH 03301 | 312 South Street Concord, NH 03301 | | 13 Rumford Street Concord, NH 03301 | | 89 Liberty Street Concord, NH 03301 | |
| Proximity to Subject | | Same Street | | 1.1 miles north | | 1.4 miles north | |
| Sale Price | $ N/A | $ 245,000 | | $ 313,000 | | $ 295,000 | |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 109.42 sq.ft. | | $ 106.68 sq.ft. | | $ 133.85 sq.ft. | |
| Data Source(s) | | MLS#4350496/Bean Group | | MLS#4349727:BHHS Verani | | MLS#4368884; Duval RE | |
| Verification Source(s) | | Appraiser - Sean Darby | | Appraiser - Sean Darby | | Appraiser - Mark Correnti | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | Conventional None reported | | Conventional None reported | | Conventional Seller Conc. | -6,000 |
| Date of Sale/Time | | 6/18/14 | | 7/22/14 | | 7/29/14 | |
| Location | Urban/Average | Urban/Average | | Urban/Sl. Sup. | -15,650 | Urban/Sl. Sup. | -14,450 |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 1.29 +/- acres | 1.0 +/- Acres | | 0.22 +/- acres | +5,000 | 0.37 +/- acres | +5,000 |
| View | Average | Average | | Average | | Average | |
| Design (Style) | Colonial | Colonial | | Victorian | | Cape | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | A-102 E-20 | A-135,E-25 | | A-160 E-20 | | A-84 E-15 | |
| Condition | Average | Average | +12,250 | Average | | Sl. Sup. (-5%) | -14,450 |
| Above Grade | Total / Bdrms. / Baths | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | |
| Room Count | 8 / 4 / 2.5 | 8 / 4 / 1.5 | +4,000 | 9 / 4 / 2.5 | | 7 / 3 / 2.5 | +4,000 |
| Gross Living Area | 2,535 sq.ft. | 2,239 sq.ft. | +8,880 | 2,934 sq.ft. | -11,970 | 2,204 sq.ft. | +9,930 |
| Basement & Finished Rooms Below Grade | 1,543 Sq.Ft. 25% | Full Unfinished | +5,000 | Full Unfinished | +5,000 | Full Unfinished | +5,000 |
| Functional Utility | Average~ | Average | -15,000 | Average | -15,000 | Average | -15,000 |
| Heating/Cooling | None | FHW/Oil/None | -20,000 | Gas Steam | -20,000 | FHW/Oil/None | -20,000 |
| Energy Efficient Items | Typical | Typical | | Typical | | Typical | |
| Garage/Carport | 2 Att. | 2 Att. | | 2 Att. | | None | +10,000 |
| Porch/Patio/Deck | Op. Porch,Patio | Porch | +4,000 | Porch | | Op. Porch,Patio | |
| Fpl, W6St | None | 1 ws-hu | -2,000 | 2 Frpl | -8,000 | 2 Frpl | -8,000 |
| Other | 2 Sheds, Scrn | None | +1,000 | None | +1,000 | None | +1,000 |
| Other | | | | | | | |
| Net Adjustment (Total) | | ☐ + ☒ - | -1,870 | ☐ + ☒ - | -59,620 | ☐ + ☒ - | -42,970 |
| Adjusted Sale Price of Comparables | | Net Adj. 0.8 % Gross Adj. 29.4 % | $ 243,130 | Net Adj. 19.0 % Gross Adj. 26.1 % | $ 253,380 | Net Adj. 14.6 % Gross Adj. 38.2 % | $ 252,030 |

☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☒ did ☐ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data Source(s)   Owner & Public Records

My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.

Data Source(s)   Real Data and city assessment.

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | No Prior Sale in 3 Yrs | No other prior sales per | No other prior sales per | No other prior sales per |
| Price of Prior Sale/Transfer | N/A | MLS & Real Data within | MLS & Real Data within | MLS & Real Data within |
| Data Source(s) | Public Records | 1 year of this appraisal | 1 year of this appraisal | 1 year of this appraisal |
| Effective Date of Data Source(s) | Current | Current | Current | Current |

Analysis of prior sale or transfer history of the subject property and comparable sales   No sales of the comparables in the year previous to the sale date listed was found.

Summary of Sales Comparison Approach   The value developed for the subject via the sales comparison approach, based on the sales employed, ranges from $243,130 to $253,380. Considering the subject's age, condition and overall market appeal, a value of $250,000 is considered appropriate. This does not even take into account the potential impact of the legal issues regarding the land. Those issues could impact the property further as there could be a loss in privacy to the home as well as the legal costs suffered by the homeowner in defending their position which would be necessary if the property were to be sold as of the effective date of the appraisal.

Indicated Value by Sales Comparison Approach $ 250,000

Indicated Value by: Sales Comparison Approach $ 250,000   Cost Approach (if developed) $   Income Approach (if developed) $

Primary emphasis is placed on the market approach. The income approach is considered inapplicable to the subject property as it would typically be utilized as a primary residence. The comparables utilized are considered the best available. The range of values illustrated by the sales is fairly narrow. It is my opinion that final estimate of value is quite well supported.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:  Limiting conditions and general assumptions are attached. See attached addenda for additional reconciliation comments.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is

$ 250,000 , as of   April 1, 2015 , which is the date of inspection and the effective date of this appraisal.

16-74

## Uniform Residential Appraisal Report

File # 16-74

MARKET DATA ANALYSIS: The comparable sales utilized for this report were taken from similar competing neighborhoods in Concord and are similar in design and appeal, room count, size and overall market appeal. These sales are located from one block to just under a mile away, sold within the last 12 months and represent the best available comparable sales at the time of this report.

COMMENTS ON THE ADJUSTMENTS: The following adjustments are based on market extractions and/or anticipated market reaction. When adjustments could not be extracted from a paired sales analysis, the adjustment is estimated based on the appraiser's familiarity and knowledge of the market area. In addition, consideration was given to input derived from conversations with realtors and other parties having a direct knowledge of the comparable sales.

TIME ADJUSTMENT: Time adjustments are a reflection of appreciation or depreciation of the market value of a property over a certain time period. Time adjustments are usually expressed as a percentage from information and data collected from the real estate market. An examination of sales data from this segment of the market for the period between 2012 and up to the date of this report was undertaken in order to establish the appropriate incremental time adjustments needed to be made to the comparable sales utilized in this report. The primary resources available and utilized include MLS services, statistical information and conversations with local brokers as well as other appraisers. Based on my analysis of the current market of this segment of the market, I am of the opinion that no time adjustments for homes in this category and time period are justifiable for this particular segment of the market.

GROSS LIVING AREA ADJUSTMENT: A building size adjustment has been made to recognize differences in total building areas when they exist between the sales and the subject. The sales have been adjusted at a rate of $30.00 per square foot to reflect the contributory value of additional gross living areas when present. This adjustment does not represent replacement costs but rather the contributory value of the greater or lesser size.

OTHER ADJUSTMENTS: All of the adjustments for bedroom count ($4,000 for each), basement area, fireplace, porches, patio and deck have been made and reflect the actions observed in the market as it relates to these items. A negative condition adjustment has been applied to Comparable #3. A positive adjustment is applied to Comparable #1 due to slightly inferior condition. Functional utility adjustment reflects the cost to replace the roof and repair water damage. A separate adjustment to install a heating system is also included. Comparables 2 & 3 are found on streets with considerably less traffic making them slightly superior neighborhoods. A paired sales analysis with Comparable #1 provides the basis for the adjustment shown.

RECONCILIATION: Application of all of the approaches to value were considered in the preparation of this report. The sales comparison approach has been given the greatest weight because it most closely reflects the actions of a buyer and seller. The cost approach has not been utilized as explained in the cost approach section of this report. The income was not utilized as these types of properties are mostly utilized as single family homes where this approach is not applicable.

A visual inspection of the subject property did not reveal any obvious signs of hazardous materials or contaminants. According to the city, the subject property has not been placed on the list of contaminated properties by the New Hampshire Department of Environmental Services. I am not an expert in determining the presence or absence of hazardous substances and I assume no responsibility for studies and analyses which would be required to conclude the presence or absence of such substances or potential impact as a result of the presence of such substances.

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value) ____ The subject's land value is based on recent sales data. Very few land sales in Concord over the past year. Land value estimated at $100,000 due to large size and the location.

| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | =$ |
|---|---|---|---|---|
| Source of cost data   N/A | DWELLING | 2,535 Sq.Ft. @ $ | | =$ |
| Quality rating from cost service   N/A   Effective date of cost data   N/A | Basement | 1,543 Sq.Ft. @ $ | | =$ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | | =$ |
| Due to the actual age and condition of the subject property, the | Garage/Carport | Sq.Ft. @ $ | | =$ |
| depreciation observed in the subject from all sources, greatly exceeds | Total Estimate of Cost-New | | | =$ |
| those percentages which would normally dictate reliable conclusions. | Less    Physical    Functional    External | | | |
| Because of this, the cost approach has not been developed for this | Depreciation | | | =$( ) |
| property. | Depreciated Cost of Improvements | | | =$ |
| | *As-is* Value of Site Improvements | | | =$ |
| Estimated Remaining Economic Life (HUD and VA only)   42 Years | INDICATED VALUE BY COST APPROACH | | | =$ |

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

Estimated Monthly Market Rent $   N/A   X Gross Rent Multiplier   N/A   = $ ____    Indicated Value by Income Approach ____

Summary of Income Approach (including support for market rent and GRM)   N/A

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☒ No   Unit type(s) ☐ Detached ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project   N/A

| Total number of phases   N/A | Total number of units   N/A | Total number of units sold   N/A |
|---|---|---|
| Total number of units rented   N/A | Total number of units for sale   N/A | Data source(s)   N/A |

Was the project created by the conversion of existing building(s) into a PUD? ☐ Yes ☐ No   If Yes, date of conversion.   N/A

Does the project contain any multi-dwelling units? ☐ Yes ☐ No   Data Source   N/A

Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No   If No, describe the status of completion.   N/A

Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No   If Yes, describe the rental terms and options.   N/A

Describe common elements and recreational facilities.   N/A

16-74
## Uniform Residential Appraisal Report
File # 16-74

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Uniform Residential Appraisal Report

16-74
File # 16-74

APPRAISER'S CERTIFICATION: The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

16-74

## Uniform Residential Appraisal Report

File # 16-74

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  Louis C. Manias | Name |
| Company Name   Capital Appraisal Associates, Inc. | Company Name |
| Company Address   128 So. Fruit Street, Concord, NH 03301 | Company Address |
| Telephone Number   (603) 228-9040 | Telephone Number |
| Email Address   capitalappraisal@comcast.net | Email Address |
| Date of Signature and Report    February 26, 2016 | Date of Signature |
| Effective Date of Appraisal    April 1, 2015 | State Certification # |
| State Certification #   NHCG #5 | or State License # |
| or State License # | State |
| or Other (describe) _____ State # _____ | Expiration Date of Certification or License |
| State  NH | |
| Expiration Date of Certification or License     04/13/2014 | **SUBJECT PROPERTY** |
| | ☐ Did not inspect subject property |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did inspect exterior of subject property from street |
| 175 South Street | Date of Inspection |
| Concord, NH 03301 | ☐ Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $       250,000 | Date of Inspection |
| LENDER/CLIENT | |
| Name | **COMPARABLE SALES** |
| Company Name   Thomas G. & Catherine Dube-Cooper | |
| Company Address   175 South Street, Concord, NH 03301 | ☐ Did not inspect exterior of comparable sales from street |
| | ☐ Did inspect exterior of comparable sales from street |
| Email Address | Date of Inspection |

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Supplemental Addendum

File No. 16-74

| | |
|---|---|
| Borrower/Client | N/A |
| Property Address | 175 South Street |
| City | Concord |
| County | Merrimack |
| State | NH |
| Zip Code | 03301 |
| Lender | Thomas G. & Catherine Dube-Cooper |

### • URAR : Neighborhood - Boundaries

The subject is found in the South End of Concord. It is bounded by the Bow town line to the south, Clinton Street to the north, South Main Street to the east and Silk Farm Road to the west.

### • URAR : Neighborhood - Market Conditions

In 2008 there were 232 residential sales with a median sold price of $227,750 in Concord. 2009 shows 243 sales with a median sold price of $200,000 a decrease of 12.18%. 2010 indicates 217 sales with a median sold price of $199,000. 2011 indicates 223 sales with a median sold price of $192,000 which is a decrease of 3.5% from 2010. 2012 sales were numbered at 278 with a median sold price of $185,600, a decrease of 3.33%. 2013 indicates a total of 321 residential sales with a median sold price of $203,000 which is an increase of 8.8% over the previous year. 2014 indicates a total of 317 sales with a median sold price of $200,000 which is 1.5% lower than the previous year. The data does indicate that prices are nearly identical to 2010 which shows a fairly stable market over the last five years. That is not to say that there are neighborhoods where property values can show an increase. It is strictly a general measure of the local market. Rates are very low and vary from 4.25% up to 7% depending on your credit risk, loan term and loan to value ratio. No unusual concessions noted in the typical single family market place.

### • URAR : Site - Adverse Conditions or External Factors

The subject site appears to be a legal and conforming lot of record as it meets the minimum lot requirements for this zoning district. The site is actually quite large for being within the city proper. It is a long deep lot with more than one acre of land. The site drops off with some steep topography at the rear where a brook is along the rear border. There is extensive landscaping at the front and rear of the site but it has not been maintained well. It is overgrown and can detract from the appeal of the home. Although a large in town site, it does not have enough frontage for subdivision. It is connected to all municipal services. No adverse elements noted on the site at the time of the viewing.

A new issue with respect to the site has arisen over the past year. The neighbor to the north is making a claim that part of the land utilized and understood to be owned by the client is under a different ownership. In fact, the representations on the city web site regarding the site, although not a legal document, appear to include the area under question with the subject property. Legal action has been instituted by the adjoining land owner to issue a petition to quiet title regarding that property dispute. It is and has become a potential case regarding adverse possession. As of the effective date of the appraisal, this legal issue was not resolved and could have a major impact on the value of the property were it to be marketed for sale. A property, in the midst of a legal battle, often has great difficulty in marketing because there are costs involved and a potential for a ruling that might impact the subject. Most buyers would not want to be involved with properties undergoing a legal dispute between owners. Not only are there significant legal costs involved for the property owner, there is also the potential for losing buyers that might be interested in this property but don't want to wait until this issue is resolved. I include this information as it was known and occuring as of the effective date of the appraisal. This could be considered an adverse external effect on the subject property.

### • URAR : Improvements - Additional Features

Subject is a colonial style home built in 1910 according to the assessment records. There are two entries to the main level from the front of the house. One leads to a side hallway with stairs leading to the upper level. The second entry is between the house and the garage. It is access by an ell shaped open, covered porch. This is the primary access to the home. There are two fairly large closets and a half bath with a tiled floor in this part of the building. It leads to an open concept style family room with a cathedral ceiling. There is a mud room at the left rear of the house. It has a tiled floor and there is a counter and cabinets. A full bath with a small linen closet and a built in vanity with two sinks as well as a fiberglass tub and shower unit are located in this area. There is also a small pantry closet. There is a fairly large kitchen with granite counter tops and wood front cabinets. After passing through the kitchen one walks into the living room which stretches across the house. There is an opening in the front wall of the living room which leads to the den which was formerly a porch. The living room and the dining room have tin ceilings that are believed to be original to the home. The second floor of this home has a total of four bedrooms with hardwood floors and small closets. There is one full bath on this level with a fiberglass tub and shower unit. The basement level of this home is fairly large and there is a partially finished room on this level. It has sheet rock walls and ceilings that are painted and a carpeted floor. However, there is no heat to this room. The home, as of the effective date of appraisal is unheated by a central heating system. There was a significant problem with the heating system and it has been removed. The home was formerly heated with a natural gas fired, boiler with steam radiators. Electricity is through a 200 amp circuit breaker panel. There is an attached two car garage. Behind the house is a detached one car garage that cannot be accessed by vehicles. It is in poor condition and is used for additional storage of lawn mowers and yard maintenance equipment. At one time, the access was from between the house and the garage but this was changed when an addition blocked that access. There is a detached screenhouse that is also in fairly poor condition. A large deck was found in the back yard where a pool used to be located. The stairs and the deck exist with a railing on one side but the curved part of the deck which was against the pool is open with no rails or balusters. An additional 10 x 12 shed is found in the back yard.

## Supplemental Addendum

File No. 16-74

| Borrower/Client | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 175 South Street | | | | | | |
| City | Concord | | County Merrimack | | State NH | Zip Code 03301 | |
| Lender | Thomas G. & Catherine Dube-Cooper | | | | | | |

### • URAR : Improvements - Condition of the Property

The subject property is considered to be in average condition for its age. Some issues with respect to the home include the heating system. It was removed, as were all the radiators due to significant problems after it failed. This occurred prior to the effective date of the appraisal. The owner has secured some rough estimates to install a new heating system and they are in excess of $20,000 as, not only would the main system be necessary, it would also include providing heat to all the rooms in the home with baseboards for a hot water system or ductwork for a warm air system. The cost is high because the home would have to be retrofitted for either system. Currently the owner has two space heaters providing some heat for the home. Currently those two space heaters are located on the main level. The basement level and the second floor remain unheated. This is a functional utility issue which should be considered as having an effect on the market value of the home. The den at the front of the house (former porch) is unheated even though it is open to the living room. Walking on the main level is difficult as the family room, dining room and kitchen are all on slightly different levels and one has to step up or down into each room. The roof on the house still needs to be replaced. In 2013, I viewed this property and the condition of the roof was questionable at that time. My view of the roof showed that most of the roof is in fair to poor condition. There is evidence of roof leaks in the mud room and in the family room at the rear of the house. There was significant water damage over the winter of 2014/15 which entered into the mudroom . There are several holes that were cut in to the wall and ceiling to prevent further damage. Many of the shingles are buckled, curled and there is moss growing all over the roof. These are obvious signs of disrepair. A cost of $15,000 to $20,000 is reasonable to replace the existing roof which would include removal of the existing shingles, repair and replacement of existing sheathing where damaged, installation of an ice and water shield and new shingles. Almost the entire roof, which is of several different pitches and angles would have to be replaced. The family room addition was constructed  10 to 12 years ago and the construction is considered average. There are no  features that would make this appraiser consider this an upgraded or custom home. The bathrooms were upgraded  but the vanities and sinks are stock items from a home improvement store. As mentioned earlier, the detached garage is in fair to poor condition as are the screen house and the other shed. The free standing deck is 30 to 40 feet from the house and adds no appeal or value since its functionality was originally to be around an above ground pool that does not exist any more.

### • URAR : Additional Commentary

The 2014 equalization rate for Concord is reported to be 98.5%
Comparable #1 is assessed for $245,600. The full value is $249,340. The assessment reflects 101.8% of market value based on the sales price.
Comparable #2 is assessed for $302,300. The full value is $306,903. The assessment reflects 98.05% of market value based on the sales price.
Comparable #3 is assessed for $286,900. The full value is $291,269. The assessment reflects 98.74% of market value based on the sales price.

The subject is assessed for $295,000. The full value is $299,492. Based on the appraised value of $250,000, the assessment reflects 119.8% of market value.

**Building Sketch**

| | |
|---|---|
| Borrower/Client | N/A |
| Property Address | 175 South Street |
| City Concord | County Merrimack | State NH | Zip Code 03301 |
| Lender | Thomas G. & Catherine Dube-Cooper |



MAIN LEVEL

NOT TO SCALE

SECOND LEVEL

Sketch by Apex IV™

**[Main File No. 16-74] Page #13]**

## Building Sketch

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 175 South Street | | | | | |
| City | Concord | County | Merrimack | State | NH | Zip Code  03301 |
| Lender | Thomas G. & Catherine Dube-Cooper | | | | | |

### AREA CALCULATIONS SUMMARY

| Code | Description | Size | Net Totals |
|---|---|---|---|
| GLA1 | First Floor | 1719.00 | 1719.00 |
| GLA2 | Second Floor | 816.00 | 816.00 |

| | | |
|---|---|---|
| TOTAL LIVABLE | (rounded) | 2535 |

### LIVING AREA BREAKDOWN

| Breakdown | | | Subtotals |
|---|---|---|---|
| First Floor | | | |
| 8.0 | x | 22.0 | 176.00 |
| 18.0 | x | 18.0 | 324.00 |
| 10.0 | x | 16.0 | 160.00 |
| 14.0 | x | 17.0 | 238.00 |
| 1.0 | x | 29.0 | 29.00 |
| 24.0 | x | 33.0 | 792.00 |
| Second Floor | | | |
| 24.0 | x | 34.0 | 816.00 |

| | | |
|---|---|---|
| 7 Calculations Total (rounded) | | 2535 |

**First Floor**                                      GLA1

| | | | | |
|---|---|---|---|---|
| 8.0 | x | 22.0 | = | 176.00 |
| 18.0 | x | 18.0 | = | 324.00 |
| 10.0 | x | 16.0 | = | 160.00 |
| 14.0 | x | 17.0 | = | 238.00 |
| 1.0 | x | 29.0 | = | 29.00 |
| 24.0 | x | 33.0 | = | 792.00 |

| | | |
|---|---|---|
| Area total (rounded) | = | 1719 |

**Second Floor**                                     GLA2

| | | | | |
|---|---|---|---|---|
| 24.0 | x | 34.0 | = | 816.00 |

| | | |
|---|---|---|
| Area total (rounded) | = | 816 |

### Assessment Card p1

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 175 South Street | | | | | |
| City | Concord | County | Merrimack | State | NH | Zip Code | 03301 |
| Lender | Thomas G. & Catherine Dube-Cooper | | | | | |

## 175 SOUTH ST

| Location | 175 SOUTH ST | Assessment | $295,000 |
|---|---|---|---|
| Mblu | 9/ 2/ 3/ / | Appraisal | $295,000 |
| Owner | COOPER CATHERINE D | PID | 479 |
| | | Building Count | 1 |

### Current Value

| Appraisal | | | |
|---|---|---|---|
| Valuation Year | Improvements | Land | Total |
| 2016 | $199,000 | $96,000 | $295,000 |

| Assessment | | | |
|---|---|---|---|
| Valuation Year | Improvements | Land | Total |
| 2016 | $199,000 | $96,000 | $295,000 |

### Owner of Record

| Owner | COOPER CATHERINE D | Sale Price | $0 |
|---|---|---|---|
| Co-Owner | | Certificate | |
| Address | PO BOX 3671 | Book & Page | 1984/1184 |
| | CONCORD, NH 03302-3671 | Sale Date | 04/07/1995 |
| | | Instrument | 1A |

### Ownership History

| Ownership History | | | | |
|---|---|---|---|---|
| Owner | Sale Price | Certificate | Book & Page | Instrument | Sale Date |
| COOPER CATHERINE D | $0 | | 1984/1184 | 1A | 04/07/1995 |
| COOPER THOMAS G & CATHERINE D | $0 | | 1596/0121 | | |

### Building Information

#### Building 1 : Section 1

| Year Built: | 1910 |
|---|---|
| Living Area: | 2535 |
| Replacement Cost: | $268,907 |
| Building Percent Good: | 72 |
| Replacement Cost Less Depreciation: | $195,500 |

**Building Layout**



| Building Attributes | |
|---|---|
| Field | Description |
| Style | Colonial |
| Model | Residential |
| Grade: | Average +20 |
| Stories: | 2 Stories |
| Occupancy | 1 |
| Exterior Wall 1 | Vinyl Siding |
| Exterior Wall 2 | |
| Roof Structure: | Gable/Hip |
| Roof Cover | Asph/F Gls/Cmp |
| Interior Wall 1 | Drywall/Sheet |
| Interior Wall 2 | Plastered |
| Interior Flr 1 | Hardwood |

| Building Sub-Areas | | | Legend |
|---|---|---|---|
| Code | Description | Gross Area | Living Area |
| BAS | First Floor | 1719 | 1719 |
| FUS | Upper Story, Finished | 816 | 816 |
| FBM | Basement, Finished | 480 | 0 |
| FGR | Garage | 676 | 0 |
| FOP | Porch, Open | 228 | 0 |

## Assessment Card p2

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 175 South Street | | | | | |
| City | Concord | | County Merrimack | | State NH | Zip Code 03301 |
| Lender | Thomas G. & Catherine Dube-Cooper | | | | | |

| Interior Flr 2 | |
|---|---|
| Heat Fuel | Gas |
| Heat Type: | Steam |
| AC Type: | None |
| Total Bedrooms: | 4 Bedrooms |
| Total Bthrms: | 2 |
| Total Half Baths: | 1 |
| Total Xtra Fixtrs: | 2 |
| Total Rooms: | 9 Rooms |
| Bath Style: | Average |
| Kitchen Style: | Modern |

| Code | Description | | |
|---|---|---|---|
| UBM | Basement, Unfinished | 1063 | 0 |
| WDK | Deck, Wood | 60 | 0 |
| | | S042 | 2535 |

### Extra Features

| Extra Features | Legend |
|---|---|
| No Data for Extra Features | |

### Land

**Land Use**

| | |
|---|---|
| Use Code | 1010 |
| Description | SINGLE FAM MDL-01 |
| Zone | RS |
| Neighborhood | 0101 |
| Alt Land Appr | No |
| Category | |

**Land Line Valuation**

| | |
|---|---|
| Size (Acres) | 1.29 |
| Frontage | 0 |
| Depth | 0 |
| Assessed Value | $96,000 |
| Appraised Value | $96,000 |

### Outbuildings

| Outbuildings | | | | Legend |
|---|---|---|---|---|
| Code | Description | Size | Value | Bldg # |
| SHD1 | SHED FRAME | 216 S.F. | $1,300 | 1 |
| SHD1 | SHED FRAME | 120 S.F. | $700 | 1 |
| FOP | F-SCREEN HOUSE | 128 S.F. | $500 | 1 |
| PAT1 | PATIO-AVG | 394 S.F. | $800 | 1 |
| DECK | DECK | 252 S.F. | $200 | 1 |

(c) 2014 Vision Government Solutions, Inc. All rights reserved.

**Deed**

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 175 South Street | | | | | |
| City | Concord | County | Merrimack | State | NH | Zip Code | 03301 |
| Lender | Thomas G. & Catherine Dube-Cooper | | | | | |

242623          95 APR 11 PM 12:01          BK 1984 PG 1184

## WARRANTY DEED

KNOW ALL MEN BY THESE PRESENTS THAT I, Thomas G. Cooper, married, of 175 South Street, Concord, County of Merrimack and State of New Hampshire and Catherine D. Cooper, married of 175 South Street, Concord, County of Merrimack and State of New Hampshire, for consideration paid, grant to Catherine D. Cooper, married of 175 South Street, Concord, said County and State, with WARRANTY COVENANTS, all right, title and interest in the following described premises:

Three tracts of land, with the buildings thereon, situate in Concord, Merrimack County, New Hampshire, bounded and described as follows:

Tract I. Beginning on the easterly side of South Street at the southwesterly corner of land now or formerly of J.W. King; thence easterly by said King land 257 feet, more or less, to a fence corner; thence southerly by the fence, by land now or formerly of Isaac W. Bushey Estate 100 feet; thence westerly by said Bushey land 312 feet, more or less, to South Street; thence northerly by said Street 100 feet to the point of beginning.

Tract II. Beginning on the easterly side of South Street at the southwesterly corner of land now or formerly of Barton P. Bachelder, said point being also 100 feet south of the southwesterly corner of land of King; thence S. 88 degrees 52 minutes E. by Bachelder land 300.6 feet to a bound; thence S. 4 degrees E. by land of Isaac W. Bushey Estate, 130.3 feet; thence N. 68 degrees 50 minutes W. by land now or formerly of Philip Cedergren 337.9 feet to South Street; thence N. 21 degrees 10 minutes E. by said Street 15 feet to the point of beginning.

Tract III. Begin situate in the rear of land at 175 South Street. Beginning at the south boundary line of Deer Park, owned by the City of Concord, at the northeasterly corner of land now or formerly of Barton P. Bachelder; thence easterly by Deer Park to the center of a brook; thence southerly by the center of said brook to a stone marker where the brook meets the west bank of gulley at the northwest corner of land now or formerly of Charles M. and Dorothy A. Falconer; thence south by said Falconer land about 165 feet to a stone marker; thence westerly to a gas pipe at the southeasterly corner of land now or formerly of Leslie Clark; thence northerly about 315 feet, by land now or formerly of Leslie Clark and land of said Batchelder, to the point of beginning.

**Deed**

| Borrower/Client | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 175 South Street | | | | | | |
| City | Concord | | County | Merrimack | State | NH | Zip Code | 03301 |
| Lender | Thomas G. & Catherine Dube-Cooper | | | | | | |



BK 1984 PG 1185

-2-

Meaning and intending to describe and convey the same premises conveyed to Thomas G. Cooper and Catherine D. Cooper by Thomas G. Cooper by deed dated September 16, 1986 and recorded in Volume 1596, Page 0121 of the Merrimack County Registry of Deeds.

The within conveyance is a non-contractual conveyance. No release of liability for the remaining term of the loan.

IN WITNESS WHEREOF I have hereunto set my hand and seal this 7th day of April, 1995.

Thomas G. Cooper

Catherine D. Cooper

STATE OF NEW HAMPSHIRE
COUNTY OF MERRIMACK

Personally appeared before me the above-named Thomas G. Cooper and Catherine D. Cooper and made oath that the foregoing was their voluntary act and deed. Before me,

Notary Public

My commission expires: 03/21/2009

MERRIMACK COUNTY RECORDS

Kathi L. Guay, Register

**Overhead View**

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 175 South Street | | | | | |
| City | Concord | | County | Merrimack | State NH | Zip Code 03301 |
| Lender | Thomas G. & Catherine Dube-Cooper | | | | | |



August 30, 2013

## Site Map

| | |
|---|---|
| Borrower/Client | N/A |
| Property Address | 175 South Street |
| City | Concord | County | Merrimack | State | NH | Zip Code | 03301 |
| Lender | Thomas G. & Catherine Dube-Cooper |



August 30, 2013

City of Concord, New Hampshire

### Flood Map

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 175 South Street | | | | |
| City | Concord | County Merrimack | | State NH | Zip Code 03301 |
| Lender | Thomas G. & Catherine Dube-Cooper | | | | |



InterFlood
by a la mode
www.interflood.com • 1-800-252-6633

**Prepared for:**
Capital Appraisal Assoc., Inc.

175 South St.
Concord, NH 03301-2719

FLOODSCAPE

Flood Hazards Map

Map Number
33013C0541E

Effective Date
April 19, 2010

Powered by FloodSource
877.77.FLOOD
www.floodsource.com

© 1999-2013 SourceProse and/or FloodSource Corporations. All rights reserved. Patents 6,631,326 and 6,678,615. Other patents pending. For info: info@floodsource.com

## Subject Photo Page

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 175 South Street | | | | | |
| City | Concord | | County Merrimack | State NH | Zip Code 03301 | |
| Lender | Thomas G. & Catherine Dube-Cooper | | | | | |



**Subject Front**

175 South Street

| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 2,535 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2.5 |
| Location | Urban/Average |
| View | Average |
| Site | 1.29 +/- acres |
| Quality | Average |
| Age | A-102 E-20 |



**Subject Rear**



**Subject Street**

**Photograph Addendum**

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 175 South Street | | | | |
| City | Concord | County  Merrimack | | State  NH | Zip Code  03301 |
| Lender | Thomas G. & Catherine Dube-Cooper | | | | |



**Side**



**Two Car Garage**



**Rear**



**Rear & Patio**



**Street Scene**



**Garage/Shed at rear**

**Photograph Addendum**

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 175 South Street | | | | |
| City | Concord | County Merrimack | | State NH | Zip Code 03301 |
| Lender | Thomas G. & Catherine Dube-Cooper | | | | |



Shed



Screenhouse



Old Pool Deck



Bedroom



Bedroom



Bathroom

**Photograph Addendum**

| Borrower/Client | N/A |
|---|---|
| Property Address | 175 South Street |
| City | Concord | County Merrimack | State NH | Zip Code 03301 |
| Lender | Thomas G. & Catherine Dube-Cooper |



**Bedroom**



**Bedroom**



**Den (Front Porch)**



**Living Room**



**Living Room**



**Gas appliance**

**Photograph Addendum**

| Borrower/Client | N/A | | | |
|---|---|---|---|---|
| Property Address | 175 South Street | | | |
| City | Concord | County Merrimack | State NH | Zip Code 03301 |
| Lender | Thomas G. & Catherine Dube-Cooper | | | |



**Side Entry**



**Dining Room**



**Kitchen**



**Mud Room**



**Kitchen**



**1st Floor Full Bath**

**Photograph Addendum**

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 175 South Street | | | | |
| City | Concord | County Merrimack | | State NH | Zip Code 03301 |
| Lender | Thomas G. & Catherine Dube-Cooper | | | | |




Unfinished Basement                    Basement unfinished room




Laundry in basement                    Basement finished room

### Comparable Photo Page

| Borrower/Client | N/A |
|---|---|
| Property Address | 175 South Street |
| City | Concord | County | Merrimack | State | NH | Zip Code | 03301 |
| Lender | Thomas G. & Catherine Dube-Cooper |



### Comparable 1

312 South Street
| | |
|---|---|
| Prox. to Subject | Same Street |
| Sales Price | 245,000 |
| Gross Living Area | 2,239 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 1.5 |
| Location | Urban/Average |
| View | Average |
| Site | 1.0 +/- Acres |
| Quality | Average |
| Age | A-135,E-25 |

MLS File Photo



### Comparable 2

13 Rumford Street
| | |
|---|---|
| Prox. to Subject | 1.1 miles north |
| Sales Price | 313,000 |
| Gross Living Area | 2,934 |
| Total Rooms | 9 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2.5 |
| Location | Urban/Sl. Sup. |
| View | Average |
| Site | 0.22 +/- acres |
| Quality | Average |
| Age | A-160 E-20 |

MLS File Photo



### Comparable 3

89 Liberty Street
| | |
|---|---|
| Prox. to Subject | 1.4 miles north |
| Sales Price | 295,000 |
| Gross Living Area | 2,204 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.5 |
| Location | Urban/Sl. Sup. |
| View | Average |
| Site | 0.37 +/- acres |
| Quality | Average |
| Age | A-84 E-15 |

MLS File Photo

### Assessment Comparable #1

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 175 South Street | | | | | |
| City | Concord | County | Merrimack | State | NH | Zip Code 03301 |
| Lender | Thomas G. & Catherine Dube-Cooper | | | | | |

---

## 312 SOUTH ST

| | | | |
|---|---|---|---|
| **Location** | 312 SOUTH ST | **Assessment** | $245,600 |
| **Mblu** | 84/ 1/ 7/ / | **Appraisal** | $245,600 |
| **Owner** | BRODERICK THOMAS R & FRANCESCA E | **PID** | 5892 |
| | | **Building Count** | 1 |

### Current Value

| Appraisal | | | |
|---|---|---|---|
| **Valuation Year** | **Improvements** | **Land** | **Total** |
| 2016 | $149,800 | $95,800 | $245,600 |

| Assessment | | | |
|---|---|---|---|
| **Valuation Year** | **Improvements** | **Land** | **Total** |
| 2016 | $149,800 | $95,800 | $245,600 |

### Owner of Record

| | | | |
|---|---|---|---|
| **Owner** | BRODERICK THOMAS R & FRANCESCA E | **Sale Price** | $245,000 |
| **Co-Owner** | | **Certificate** | |
| **Address** | 312 SOUTH ST | **Book & Page** | 3444/0850 |
| | CONCORD, NH 03301-2600 | **Sale Date** | 06/18/2014 |
| | | **Instrument** | 01 |

### Ownership History

| Ownership History | | | | | |
|---|---|---|---|---|---|
| **Owner** | **Sale Price** | **Certificate** | **Book & Page** | **Instrument** | **Sale Date** |
| BRODERICK THOMAS R & FRANCESCA E | $245,000 | | 3444/0850 | 01 | 06/18/2014 |
| ZENKE JENI L | $272,500 | | 3150/1797 | 01 | 08/20/2009 |
| BOURGEOIS PETER D & AMY R | $260,000 | | 2360/0918 | 01 | 04/29/2002 |
| CHAMPAGNE MARK A | $128,500 | | 2037/0632 | 00 | 10/11/1996 |
| SADLEHIRE ROBERT & PAMELA | $186,000 | | 1636/0947 | | 04/09/1987 |

### Building Information

#### Building 1 : Section 1

| | |
|---|---|
| **Year Built:** | 1880 |
| **Living Area:** | 2231 |
| **Replacement Cost:** | $191,778 |
| **Building Percent Good:** | 70 |
| **Replacement Cost Less Depreciation:** | $135,600 |

**Building Layout**



| Building Attributes | |
|---|---|
| **Field** | **Description** |
| Style | Colonial |
| Model | Residential |
| Grade: | Average +20 |
| Stories: | 2 Stories |
| Occupancy | 1 |
| Exterior Wall 1 | Clapboard |
| Exterior Wall 2 | |
| Roof Structure: | Gable/Hip |
| Roof Cover | Asph/F Gls/Cmp |

| Building Sub-Areas | | | Legend |
|---|---|---|---|
| **Code** | **Description** | **Gross Area** | **Living Area** |
| BAS | First Floor | 1172 | 1172 |
| FUS | Upper Story, Finished | 748 | 748 |

## Assessment Comparable #1

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 175 South Street | | | | |
| City | Concord | County Merrimack | | State NH | Zip Code 03301 |
| Lender | Thomas G. & Catherine Dube-Cooper | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Interior Wall 1 | Plastered | | EAF | Attic, Expansion, Finished | 409 | 164 |
| Interior Wall 2 | Drywall/Sheet | | FAT | Attic, Finished | 736 | 147 |
| Interior Flr 1 | Pine/Soft Wood | | FOP | Porch, Open | 340 | 0 |
| Interior Flr 2 | Carpet | | STP | Stoop/WDK | 20 | 0 |
| Heat Fuel | Gas | | UBM | Basement, Unfinished | 456 | 0 |
| Heat Type: | Forced Air-Duc | | | | 3681 | 2231 |
| AC Type: | None | | | | | |
| Total Bedrooms: | 4 Bedrooms | | | | | |
| Total Bthrms: | 1 | | | | | |
| Total Half Baths: | 1 | | | | | |
| Total Xtra Fixtrs: | | | | | | |
| Total Rooms: | 8 Rooms | | | | | |
| Bath Style: | Average | | | | | |
| Kitchen Style: | Modern | | | | | |

### Extra Features

| Extra Features | | | | Legend |
|---|---|---|---|---|
| Code | Description | Size | Value | Bldg # |
| HRT1 | HEARTH1 | 1 UNITS | $500 | 1 |

### Land

#### Land Use

| | |
|---|---|
| Use Code | 1010 |
| Description | SINGLE FAM MDL-01 |
| Zone | RS |
| Neighborhood | 0101 |
| Alt Land Appr | No |
| Category | |

#### Land Line Valuation

| | |
|---|---|
| Size (Acres) | 1 |
| Frontage | 0 |
| Depth | 0 |
| Assessed Value | $95,800 |
| Appraised Value | $95,800 |

### Outbuildings

| Outbuildings | | | | Legend |
|---|---|---|---|---|
| Code | Description | Size | Value | Bldg # |
| BRN5 | BARN-2 STORY | 880 S.F. | $10,600 | 1 |
| BRN1 | BARN – 1 STORY | 400 S.F. | $3,000 | 1 |

(c) 2014 Vision Government Solutions, Inc. All rights reserved.

### Assessment Comparable #2

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 175 South Street | | | | | |
| City | Concord | | County Merrimack | State NH | Zip Code 03301 | |
| Lender | Thomas G. & Catherine Dube-Cooper | | | | | |

## 13 RUMFORD ST

| | | | |
|---|---|---|---|
| **Location** | 13 RUMFORD ST | **Assessment** | $302,300 |
| **Mblu** | 37/ 3/ 5/ / | **Appraisal** | $302,300 |
| **Owner** | SUMMERS JAMES M & KAYLA J | **PID** | 2417 |
| | | **Building Count** | 1 |

### Current Value

| Appraisal | | | |
|---|---|---|---|
| **Valuation Year** | **Improvements** | **Land** | **Total** |
| 2016 | $210,600 | $91,700 | $302,300 |

| Assessment | | | |
|---|---|---|---|
| **Valuation Year** | **Improvements** | **Land** | **Total** |
| 2016 | $210,600 | $91,700 | $302,300 |

### Owner of Record

| | | | |
|---|---|---|---|
| **Owner** | SUMMERS JAMES M & KAYLA J | **Sale Price** | $313,000 |
| **Co-Owner** | | **Certificate** | |
| **Address** | 13 RUMFORD ST | **Book & Page** | 3449/0302 |
| | CONCORD, NH 03301-3906 | **Sale Date** | 07/25/2014 |
| | | **Instrument** | 01 |

### Ownership History

| Ownership History | | | | | |
|---|---|---|---|---|---|
| **Owner** | **Sale Price** | **Certificate** | **Book & Page** | **Instrument** | **Sale Date** |
| SUMMERS JAMES M & KAYLA J | $313,000 | | 3449/0302 | 01 | 07/25/2014 |
| KELLEY BENJAMIN S & KARINA L | $197,500 | | 3396/1991 | 1NR | 07/08/2013 |
| REINGOLD RUTH WEEDEN | | | 0 | 1X | 06/29/2012 |
| WEEDEN RUTH LOUISE | $0 | | | 1A | 07/13/1987 |
| OSGOOD RUTH LOUISE | $0 | | 1410/1030 | | |

### Building Information

#### Building 1 : Section 1

| | |
|---|---|
| **Year Built:** | 1855 |
| **Living Area:** | 2934 |
| **Replacement Cost:** | $279,569 |
| **Building Percent Good:** | 72 |
| **Replacement Cost Less Depreciation:** | $205,300 |

**Building Layout**



| Building Attributes | |
|---|---|
| **Field** | **Description** |
| Style | Conventional |
| Model | Residential |
| Grade: | Average +20 |
| Stories: | 2 Stories |
| Occupancy | 1 |
| Exterior Wall 1 | Clapboard |
| Exterior Wall 2 | |
| Roof Structure: | Gable/Hip |
| Roof Cover | Slate |

| Building Sub-Areas | | Legend | |
|---|---|---|---|
| **Code** | **Description** | **Gross Area** | **Living Area** |
| BAS | First Floor | 1508 | 1508 |
| FUS | Upper Story, Finished | 1268 | 1268 |

## Assessment Comparable #2

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 175 South Street | | | | | |
| City | Concord | County | Merrimack | State | NH | Zip Code | 03301 |
| Lender | Thomas G. & Catherine Dube-Cooper | | | | | |

| Interior Wall 1 | Plastered |
|---|---|
| Interior Wall 2 | |
| Interior Flr 1 | Hardwood |
| Interior Flr 2 | Pine/Soft Wood |
| Heat Fuel | Gas |
| Heat Type: | Steam |
| AC Type: | None |
| Total Bedrooms: | 4 Bedrooms |
| Total Bthrms: | 2 |
| Total Half Baths: | 1 |
| Total Xtra Fixtrs: | |
| Total Rooms: | 9 |
| Bath Style: | Average |
| Kitchen Style: | Modern |

| | | | |
|---|---|---|---|
| FAT | Attic, Finished | 792 | 158 |
| FOP | Porch, Open | 159 | 0 |
| UAT | Attic, Unfinished | 476 | 0 |
| UBM | Basement, Unfinished | 792 | 0 |
| | | 4995 | 2934 |

### Extra Features

| | Extra Features | | | Legend |
|---|---|---|---|---|
| Code | Description | Size | Value | Bldg # |
| NFP3 | NFP-FP-2.0STY | 1 UNITS | $1,100 | 1 |
| NFP0 | NFP-EXTRA OPEN | 1 UNITS | $400 | 1 |

### Land

**Land Use**

| | |
|---|---|
| Use Code | 1010 |
| Description | SINGLE FAM MDL-01 |
| Zone | RN |
| Neighborhood | 0104 |
| Alt Land Appr | No |
| Category | |

**Land Line Valuation**

| | |
|---|---|
| Size (Acres) | 0.21 |
| Frontage | 0 |
| Depth | 0 |
| Assessed Value | $91,700 |
| Appraised Value | $91,700 |

### Outbuildings

| | Outbuildings | | | Legend |
|---|---|---|---|---|
| Code | Description | Size | Value | Bldg # |
| BRN5 | BARN-2 STORY | 400 S.F. | $3,800 | 1 |

(c) 2014 Vision Government Solutions, Inc. All rights reserved.

### Assessment Comparable #3

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 175 South Street | | | | | |
| City | Concord | County | Merrimack | State NH | Zip Code | 03301 |
| Lender | Thomas G. & Catherine Dube-Cooper | | | | | |

## 89 LIBERTY ST

| | | | |
|---|---|---|---|
| Location | 89 LIBERTY ST | Assessment | $286,900 |
| Mblu | 49/ 3/ 2/ / | Appraisal | $286,900 |
| Owner | ACQUILANO RICHARD J | PID | 3479 |
| | | Building Count | 1 |

### Current Value

| Appraisal | | | |
|---|---|---|---|
| Valuation Year | Improvements | Land | Total |
| 2016 | $194,400 | $92,500 | $286,900 |

| Assessment | | | |
|---|---|---|---|
| Valuation Year | Improvements | Land | Total |
| 2016 | $194,400 | $92,500 | $286,900 |

### Owner of Record

| | | |
|---|---|---|
| Owner | ACQUILANO RICHARD J | |
| Co-Owner | | Sale Price $295,000 |
| Address | 89 LIBERTY ST | Certificate |
| | CONCORD, NH 03301-3171 | Book & Page 3449/1715 |
| | | Sale Date 07/30/2014 |
| | | Instrument 00 |

### Ownership History

| Ownership History | | | | | |
|---|---|---|---|---|---|
| Owner | Sale Price | Certificate | Book & Page | Instrument | Sale Date |
| ACQUILANO RICHARD J | $295,000 | | 3449/1715 | 00 | 07/30/2014 |
| GETZIN LAWRENCE D & BRENDA E | $290,000 | | 3268/0235 | 00 | 08/15/2011 |
| GRONDIN KAREN L | | | 2820/0080 | 1A | 09/12/2005 |
| GRONDIN FAMILY REVOC TR 2003 | | | 2529/1138 | 1A | 07/07/2003 |
| GRONDIN PETER J & KAREN L | $186,000 | | 2139/1964 | 01 | 01/22/1999 |

### Building Information

#### Building 1 : Section 1

| | |
|---|---|
| Year Built: | 1931 |
| Living Area: | 2204 |
| Replacement Cost: | $238,214 |
| Building Percent Good: | 80 |
| Replacement Cost Less Depreciation: | $188,700 |

**Building Layout**



| Building Attributes | |
|---|---|
| Field | Description |
| Style | Cape |
| Model | Residential |
| Grade: | Average +20 |
| Stories: | 1 1/2 Stories |
| Occupancy | 1 |
| Exterior Wall 1 | Brick Veneer |
| Exterior Wall 2 | Wood Shingle |
| Roof Structure: | Gable/Hip |
| Roof Cover | Asph/F Gls/Cmp |



| Building Sub-Areas | | | Legend |
|---|---|---|---|
| Code | Description | Gross Area | Living Area |
| BAS | First Floor | 1784 | 1784 |
| FHS | Half Story, Finished | 700 | 420 |

## Assessment Comparable #3

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 175 South Street | | | | | |
| City | Concord | | County  Merrimack | | State  NH | Zip Code  03301 |
| Lender | Thomas G. & Catherine Dube-Cooper | | | | | |

| Interior Wall 1 | Drywall/Sheet |
|---|---|
| Interior Wall 2 | |
| Interior Flr 1 | Hardwood |
| Interior Flr 2 | Carpet |
| Heat Fuel | Oil |
| Heat Type: | Hot Water |
| AC Type: | None |
| Total Bedrooms: | 3 Bedrooms |
| Total Bthrms: | 2 |
| Total Half Baths: | 1 |
| Total Xtra Fixtrs: | 1 |
| Total Rooms: | 7 Rooms |
| Bath Style: | Average |
| Kitchen Style: | Modern |

| | | | |
|---|---|---|---|
| FOP | Porch, Open | 60 | 0 |
| UBM | Basement, Unfinished | 1108 | 0 |
| UGR | Garage, Unfinished | 600 | 0 |
| WDK | Deck, Wood | 112 | 0 |
| | | 4364 | 2204 |

### Extra Features

| | Extra Features | | | Legend |
|---|---|---|---|---|
| Code | Description | Size | Value | Bldg # |
| FPL1 | FIREPL 1 STORY | 1 UNITS | $2,400 | 1 |
| FPL3 | FIREPL 2 STORY | 1 UNITS | $3,000 | 1 |

### Land

**Land Use**

| | |
|---|---|
| Use Code | 1010 |
| Description | SINGLE FAM MDL-01 |
| Zone | RS |
| Neighborhood | 0105 |
| Alt Land Appr | No |
| Category | |

**Land Line Valuation**

| | |
|---|---|
| Size (Acres) | 0.37 |
| Frontage | 0 |
| Depth | 0 |
| Assessed Value | $92,500 |
| Appraised Value | $92,500 |

### Outbuildings

| | Outbuildings | | | Legend |
|---|---|---|---|---|
| Code | Description | Size | Value | Bldg # |
| PAT1 | PATIO-AVG | 120 S.F. | $300 | 1 |

(c) 2014 Vision Government Solutions, Inc. All rights reserved.

Main File No. 16-74 Page #34

## Location Map

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 175 South Street | | | | | |
| City | Concord | County | Merrimack | State | NH | Zip Code 03301 |
| Lender | Thomas G. & Catherine Dube-Cooper | | | | | |



**Appraiser Qualifications**

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 175 South Street | | | | | |
| City | Concord | | County | Merrimack | State | NH | Zip Code | 03301 |
| Lender | Thomas G. & Catherine Dube-Cooper | | | | | |

## APPRAISAL QUALIFICATIONS
### of
### LOUIS C. MANIAS
### New Hampshire Certified General Appraiser
### License No. 5

**Education**

Appraisal University
2012 - Site Analysis and Valuation
2012 - Appraising Historic Property

New Hampshire Real Estate Appraiser Board
2005 - Supervisor/Apprentice Training Seminar

LeMay School of Real Estate
2015 - Darker Shades of Gray
2014 - The Strange Case on Agile Mountain
2013 - National USPAP Update
2012 - Beyond Paired Sales
2010 - 2010-2011 National Uniform Standards of Appraisal Practice Update Seminar
2009 - National Uniform Standards of Appraisal Practice Update Course
2006- Federal Land Acquisition Appraising
2005 - Statistics & Modeling

Brooks Real Estate Services
2012 - National Uniform Standards of Appraisal Practice Update Course
2003 - National Uniform Standards of Appraisal Practice Update Course

Society of Real Estate Appraisers Seminar
Guide to Small Residential Income Property Form

Marshall & Swift
2004 - Calculator Method Workshop

JMB Real Estate Academy
2011 - Statistics, Modeling & Finance
1996 - Uniform Standards of Appraisal Practice Update Course
1995 - Appraising Income Properties

Institute of Real Estate Technologies
1993 - Let's Get Real About the Cost Approach

American Institute of Real Estate Appraisers
2007 - Appraising Contaminated Properties Seminar
1999 - Board of Tax & Land Appeal Preparedness Seminar
1998 - Litigation Skills for the Real Estate Appraiser
1988 - Standards of Professional Practice
1987 - Capitalization Techniques, Parts A & B
1986 - Basic Valuation Procedures
         Principles of Real Estate Appraisal

McKissock Data Systems
2014 - Appraising Self Storage Facilities
2011 - Introduction to Expert Witness Testimony
2008 - Private Appraisal Assignments
         The Cost Approach
         Mortgage Fraud - Protect Yourself

**Appraiser Qualifications**

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 175 South Street | | | | |
| City | Concord | County | Merrimack | State NH | Zip Code 03301 |
| Lender | Thomas G. & Catherine Dube-Cooper | | | | |

2005 - National Uniform Standards of Appraisal Practice Update Course
Fannie Mae Revisions and the Appraiser
Appraising High Value Residential Properties
Appraisal Review

1999 - FHA Exam Prep and Residential Appraisal Guidelines

Trans-American Institute of Professional Studies, Inc.

2007 - National Uniform Standards of Appraisal Practice Update Course

Lee Institute of Real Estate

1986 - Course for Real Estate Salesman's License

University of New Hampshire

1975 - 1977 - Liberal Arts Course

**Professional Experience**

| | | |
|---|---|---|
| 1989 - Present: | Capital Appraisal Associates<br>128 So. Fruit Street, Concord, New Hampshire 03301 |
| 1985 - 1989: | Manias Appraisal Associates<br>101 Centre Street, Concord, New Hampshire 03301 |
| 1981 - 1985: | Co-owner Fife and Drum Restaurant<br>84 North Main Street, Concord, NH 03301 |

**Professional Affiliations**

2002 - President Elect - Association of Appraiser Regulatory Officials
2001 - Vice President - Association of Appraiser Regulatory Officials
1999 - 2000 - Director at Large - Association of Appraiser Regulatory Officials
2001 - 2003 - Chairman of the New Hampshire Real Estate Appraiser Board
1996 - 2003 - Member of the New Hampshire Real Estate Appraisal Board
Certified Compliance Inspector - U. S. Department of H.U.D.
Certified Appraiser - U. S. Department of H.U.D.

**Court Experience**

Qualified Expert - Belknap County
Qualified Expert - Cheshire County
Qualified Expert - Grafton County
Qualified Expert - Merrimack County
Qualified Expert - Sullivan County
Qualified Expert - Carroll County
Qualified Expert - Hillsborough County
Qualified Expert - Rockingham County
Qualified Expert - Coos County
Qualified Expert - NH Board of Tax & Land Appeals
Qualified Expert - US Bankruptcy Court - NH Division
Qualified as expert in real estate appraisal in many local distric courts.

### Appraiser Certificate

| Borrower/Client | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 175 South Street | | | | | | |
| City | Concord | | County | Merrimack | State | NH | Zip Code  03301 |
| Lender | Thomas G. & Catherine Dube-Cooper | | | | | | |

## State of New Hampshire
### REAL ESTATE APPRAISER BOARD
APPROVED TO PRACTICE AS A
CERTIFIED GENERAL APPRAISER
ISSUED TO:  LOUIS C MANIAS



Certificate No: NHCG-5                    EXPIRATION DATE: 04/30/2016

### State of New Hampshire
**REAL ESTATE APPRAISER BOARD**
APPROVED TO PRACTICE AS A
**Certified General Appraiser**
ISSUED TO:  LOUIS C MANIAS



Certificate No:                    EXPIRATION DATE:
NHCG-5                              04/30/2016

For additional information please contact the Board office at dawn.stawecki@nh.gov or visit our web site at
http://www.nh.gov/nhreab

# Exhibit 13

February 27, 2016

Kathryn H. Temchack
Director of Real Estate Assessment
City Hall, 41 Green Street
Concord, NH 03301

**HAND DELIVERED**

Dear Ms. Temchack:

     Enclosed please find a copy of our ABATEMENT APPLICATION TO MUNICIPALITY in accordance with RSA 76:16 for the 2015 Tax year.

     Thank you for your consideration.

Sincerely,

Catherine M. Dube
Thomas G. Cooper
PO Box 3671
Concord, NH 03301

# TAXPAYER'S RSA 76:16 ABATEMENT APPLICATION TO MUNICIPALITY INSTRUCTIONS

1. Complete the application by typing or printing legibly in ink. **This application does not stay the collection of taxes; taxes should be paid as assessed. If an abatement is granted, a refund with interest will be made.**

2. File this application with the municipality by the deadline (see below). Date of filing is the date this form is either hand delivered to the municipality, postmarked by the post office, or receipted by an overnight delivery service.

**DEADLINES:** The "notice of tax" means the date the board of tax and land appeals (BTLA) determines the last tax bill was sent by the municipality. (If your municipality bills twice annually, you must apply after the bill that establishes your final tax liability and not before.)

**Step One:** Taxpayer must file the abatement application with the municipality by March 1 following the notice of tax.

**Step Two:** Municipality has until July 1 following the notice of tax to grant or deny the abatement application.

**Step Three:** Taxpayer may file an appeal either at the BTLA (RSA 76:16-a) or in the superior court (RSA 76:17), but not both. An appeal must be filed:

    1) no earlier than: a) after receiving the municipality's decision on the abatement application; or b) July 1 following the notice of tax if the municipality has not responded to the abatement application; and

    2) no later than September 1 following the notice of tax.

**EXCEPTION:** If your municipality's final tax bill was sent out after December 31 (as determined by the BTLA), the above deadlines are modified as follows (RSA 76:1-a; RSA 76:16-d, II):

**Step One:** 2 months after notice of tax;

**Step Two:** 6 months after notice of tax; and

**Step Three:** 8 months after notice of tax.

**FORM COMPLETION GUIDELINES:**

1. **SECTION E.** Municipalities may abate taxes "for good cause shown." RSA 76:16. Good cause is generally established by showing an error in the assessment calculation or a disproportionate assessment. Good cause can also be established by showing poverty and inability to pay the tax.

2. **SECTION G.** If the abatement application is based on disproportionate assessment, the taxpayer has the burden to show how the assessment was disproportionate. To carry this burden the taxpayer must show:
a) what the property was worth (market value) on the assessment date; and b) the property's "equalized assessment" exceeded the property's market value. To calculate the equalized assessment, simply divide the assessment by the municipality's equalization ratio (assessment ÷ ratio). Because a property's market value is a crucial issue, taxpayers must have an opinion of the market value estimate. This value estimate can be shown by obtaining an appraisal or presenting sales of comparable properties.

3. **SECTION H.** The applicant(s) must sign the application even if a representative (e.g., Tax Representative, Attorney, or other Advocate) completes Section I.

4. Make a copy of this document for your own records.

# RSA 76:16 ABATEMENT APPLICATION TO MUNICIPALITY

## SECTION A. Party(ies) Applying (Owner(s)/Taxpayer(s))

Name(s): Catherine Dube Cooper, Thomas G. Cooper

Mailing Address(es) PO Box 3671  Concord, NH  03302-3671

Telephone Number(s): (Work) 226-7791 (Home) 496-5997

**Note**: If an abatement is granted and taxes have been paid, interest on the abatement shall be paid in accordance with RSA 76:17-a. Any interest paid to the applicant must be reported by the municipality to the United States Internal Revenue Service, in accordance with federal law. Prior to the payment of an abatement with interest, the taxpayer shall provide the municipality with the applicant's social security number or federal tax identification number. Municipalities shall treat the social security or federal tax identification information as confidential and exempt from a public information request under RSA 91-A.

## SECTION B. Party's(ies') Representative if other than Person(s) Applying (Also complete Section A)
Name(s):
Mailing Address(es):
Telephone Number(s): (Work) (Home)

## SECTION C. Property(ies) for which Abatement is Sought

List the tax map and lot number, the actual street address and town of each property for which abatement is sought, a brief description of the parcel, and the assessment.

Town Parcel ID# Street Address/Town Description Assessment

| | | | |
|---|---|---|---|
| 9/2/3 | 175 South Street  Concord, NH | Single Family MDL-01 | $295,000 |

WAS AN INVENTORY BLANK TIMELY FILED FOR THIS PROPERTY FOR TAX YEAR 20 ?
YES _____ NO _____ N/A _x___

1

List other property(ies) in the municipality owned in the same name(s), even if abatements for the other property(ies) have not been sought. The taxpayer's entire real property estate must be considered in determining whether the appealed property(ies) is (are) disproportionately assessed. Town Parcel ID# Street Address/Town Description Assessment

### SECTION E. Reasons for Abatement Application

RSA 76:16 provides that an abatement may be granted for good cause shown. "Good cause" generally means:
1) establishing an assessment is disproportionate to market value and the municipality's level of assessment; or 2) establishing poverty and inability to pay the tax. This form can be utilized for either basis of requesting an abatement. The taxpayer has the burden to prove good cause for an abatement.
1) If claiming disproportionality, state with specificity all the reasons supporting your application. Statements such as taxes too high, disproportionately assessed or assessment exceeds market value are insufficient. Generally, specificity requires the taxpayer to present material on the following: (all may not apply):

physical data - incorrect description or measurement of property;

market data - the property's market value on the April 1 assessment date, supported by comparable sales or a professional opinion of value; and/or

level of assessment - the property's assessment is disproportionate by comparing the property's market value and the town-wide level of assessment.

Note: If you have an appraisal or other documentation, please submit it with this application.
2) If claiming poverty or inability to pay, state in detail why abatement of taxes is appropriate as opposed to some other relief such as relocating, refinancing or obtaining some alternative public assistance. (See Ansara v. City of Nashua, 118 N.H. 879 (1978)).
(Attach additional sheets if needed.)

We are appealing the assessment for several reasons.

First, there is incorrect information in the assessment and physical data used to determine the assessment on our property as follows:

1) **Central Heating.** The Construction Detail portion of the Assessment Card indicates that the property has gas, steam heat. It does not. Nor does it have any form of central heating system. The property formerly had central steam heat, disbursed throughout the house with radiators and pipes. The full system, including the aged furnace and piping, had to be removed, damaging portions of the *original* tin ceilings, walls, and the wood and tile floors. The cost for installation of a heating system will be in excess of $20,000.00, which does not include the cost of other repairs, which the parties cannot financially perform for the foreseeable future.

2) **Shed Frame 1.** This structure was a single car garage constructed at the time the house was originally constructed in 1910 but has never been used except for limited storage since we purchased the property in 1982. There are major, irreparable cracks in the floor, and a roof with shingles falling off and which haven't been replaced or repaired in over 30 years. In 2012 it was assessed for $1,300.00. It simply cannot have maintained that value since then. In our view the structure has no value and in fact would cost more money to tear it down than to ultimately repair. In the summer of 2014, there was an infestation of carpenter ants which deconstructed some of the woodwork.

3) **Shed frame 2.** This is a storage shed which was purchased over 20 years ago for $600.00 and which has ceiling and floor leakage and has not had any improvements during the life of the shed which is nearing an end. It was assessed in 2012 for $700.00. It simply cannot have maintained that value since the date of assessment. It has no value. In the summer of 2014, there was an infestation of carpenter ants which deconstructed some of the woodwork in this shed as well as Shed Frame 1.

4) **F-Screen house**. This structure is over 30 years old, has holes in the sides, ceiling, and roof. The remaining shingles on the roof are curling. It was assessed in 2012 for $500.00. It cannot have maintained that value since the date of assessment. In the summer of 2014, there was an infestation of carpenter ants which deconstructed some of the woodwork in this screen house as well as Shed Frame 1 and 2. It has no value.

5) **Garage.** In the summer of 2014, there was an infestation of carpenter ants which deconstructed some of the woodwork. The winter storm of 2015 also caused cracking in the foundation of the garage.

6) **Roof**. The roof on most of the house has not been replaced in over 40 years and is in need of repair and replacement at a cost of over $20,000.00. During the catastrophic winter event of 2014-15, the roof sustained significant ice dam damage, which also severely affected the back interior of the home's bathroom, kitchen, and main family room. This has not been reflected in the assessment.

7) **Interior 1st floor**. The winter of 2014-15 caused massive internal damage to the kitchen, bathroom and main living areas as a result of ice dams, hemorrhaging water, exposure to mildew, and the aggravated elongated response time as insurance companies were not able to keep pace with the crisis. The flow of water continued into our home for over 2 days, blowing out all the electrical circuits in the kitchen area.

8) **Total Number of Rooms**. The assessment reflects a total of 9 rooms which I assume includes the 4 bedrooms. There are only 4 rooms on the first floor of the house and the only rooms on the second floor are the bedrooms and one bathroom. This finding has been reflected in the assessment.

9) **Porch, Enclosed, Partially Finished**. The assessment reflects under code FEP a "Porch, Enclosed, Finished" with 176 square feet. The porch does not have a foundation and has no source of heat. This has been reflected in the assessment.

10) **Land Dispute**. A Petition to Quiet Title has been filed with the Merrimack County Superior Court. In the summer of 2015, the Concord Police Department threatened Catherine Cooper with arrest if she continued to occupy and use the land area as depicted on the current City of Concord tax maps, tax maps which are utilized to generate the assessed value of the parcel in question. (See attached photograph dated August 30, 2015). The disputed portion involves the primary frontage and landscape to the existing structure. Further, the adjoining landowner has placed fluorescent orange surveying stakes noticeably cutting across the property. This issue has a significant impact not only on the value of the land, but on the buildings themselves as a result of the location of the disputed area. This is not reflected in the assessment. Further, while the issue is discussed by Mr. Manias in his appraisal of the property no specific adjustment is given in his report. The cost at minimum to prosecute the pending action is in excess of $20,000.00 exclusive of the cost to the Coopers of being unable to sell or refinance the property while the matter is pending, or any change in the use of the property once a decision is issued.

11) **Driveway**. As a result of the winter damage of 2014 2015, portions of the driveway have buckled and sustained pot holes, and the entrance to one entry to the garage is 2 inches below level.

12) **Master Suite**. There is no master suite in this home, which detracts from the market value.

13) **Bathrooms**. Due to the removal of the central heating system, there is no heat in any of the bathrooms. There is 1 undersized bathroom, feeding all 4 bedrooms on the second floor, with an undersized bath/shower combination. It has no linen closet. The bathroom on the first floor also has 2 exterior doors with maximum exposure to the cold.

14) **Bedrooms**. All of the 4 bedrooms have undersized closets.

Beyond the items listed above is the issue of the land appraisal, including the pending litigation, we believe that the figure of $100,900 is too high for several reasons.

1) The location of this house and the land is on a major thoroughfare with heavy, regular traffic. There is no sidewalk along the front of the house, although the city has indicated one in a master plan, which would negatively affect the tone

of the front of the house. The upgrades to the Abbott-Downing regional elementary school and its attendant traffic, motorists frequently park on the parcel of land which is directly adjacent to the street, damaging the yard.

2) A considerable amount of the land area comprising the 1.29 acres is not usable and wet. The entire back portion is steeply graded over a distance of approximately 90 feet into a brook. Further, the overall land acreage is now unknown.

3) The land is not usable and/or developable in the absence of exceptions, permits and variances and requires time consuming and expensive maintenance, which due to the restricting zoning, and the current restrictions on development within the zone, makes the land valueless.

## SECTION F. Taxpayer's(s') Opinion of Market Value

State your opinion of the market value of the property(ies) appealed as of April 1 of the year under appeal.
Town Parcel ID # MAP ID 9/2/3 Appeal Year Market Value $230,000.00
Town Parcel ID # Appeal Year Market Value $

Explain the basis for your value opinion(s). (Attach additional sheets if necessary.)

### Attachment to Section F - Appraisal

1. In addition to the independent expert appraisal of Louis C. Manias dated February 26, 2016 at attached hereto, our opinion is based on the discrepancies between the information contained in the City's assessment cards, the actual physical characteristics of the property, and, the actual and potential use thereof. Additionally, we believe that other properties have received a different assessment for the same or similar characteristics of my property and my assessment should be equitably adjusted downward to reflect this information.

2. With respect to the physical characteristics of the property as described above and in the attached independent appraisal we believe a downward adjustment in the amount of $45,000.00 should be implemented.

3. Based on the description of the land, including its precarious legal status as described above and as referenced in the Independent Appraisal, we believe a downward revision to the assessment in the amount of $20,900 is warranted.

Therefore, we are requesting an abatement to $230,000.00, reserving the right to further amend this in a downward manner pending the outcome of the land dispute.

## SECTION G. Sales, Rental and/or Assessment Comparisons

List the properties you are relying upon to show over assessment of your property(ies). If you are appealing an income producing property, list the comparable rental properties and their rents.

(Attach additional sheets if needed.) All properties listed, considered, and as described in the attached February 26, 2016 **Appraisal of Real Property** performed by Louis C. Manias, Capital Appraisal Inc. including: 312 South Street (MAP ID 84/1/7; 13 Rumford Street (MAP ID 37/3/5); 89 Liberty Street (MAP ID 49/3/2).

## SECTION H. Certification by Party(ies) Applying

Pursuant to BTLA Tax 203.02(d), the applicant(s) **MUST** sign the application. By signing below, the Party(ies) applying certifies (certify) and swear(s) under the penalties of RSA ch. 641 the application has a good faith basis, and the facts stated are true to the best of my/our knowledge.

Date: 2-27-16

Catherine Dube Cooper

Date: _____



Thomas G. Cooper

3 Rev. 4/09 **SECTION I. Certification and Appearance by Representative (If Other Than Party(ies) Applying)** By signing below, the representative of the Party(ies) applying certifies and swears under penalties of RSA ch. 641: 1. all certifications in Section H are true; 2. the Party(ies) applying has (have) authorized this representation and has (have) signed this application; and 3. a copy of this form was sent to the Party(ies) applying. Date: (Representative's Signature) _

—————— ——— ——— ——— ——— ——— ——— ——— Print Name

**SECTION J. Disposition of Application\* (For Use by Selectmen/Assessor)** \*RSA 76:16, II states: the municipality "shall review the application and shall grant or deny the application in writing by July 1 after notice of tax date . . . ." Abatement Request: GRANTED Revised Assessment: $_____ DENIED Remarks: Date: (Selectman/Assessor Signature) (S electman /Assess or Signature) (Selectman/Assessor Signature) (Selectma n/Assess or Signature) 4

# Exhibit 13

February 27, 2016

Kathryn H. Temchack
Director of Real Estate Assessment
City Hall, 41 Green Street
Concord, NH 03301

**HAND DELIVERED**

Dear Ms. Temchack:

Enclosed please find a copy of our ABATEMENT APPLICATION TO MUNICIPALITY in accordance with RSA 76:16 for the 2015 Tax year.

Thank you for your consideration.

Sincerely,

Catherine M. Dube
Thomas G. Cooper
PO Box 3671
Concord, NH 03301

# <u>TAXPAYER'S RSA 76:16 ABATEMENT APPLICATION TO MUNICIPALITY</u>
## INSTRUCTIONS

1. Complete the application by typing or printing legibly in ink. **This application does not stay the collection of taxes; taxes should be paid as assessed. If an abatement is granted, a refund with interest will be made.**

2. File this application with the municipality by the deadline (see below). Date of filing is the date this form is either hand delivered to the municipality, postmarked by the post office, or receipted by an overnight delivery service.

**DEADLINES:** The "notice of tax" means the date the board of tax and land appeals (BTLA) determines the last tax bill was sent by the municipality. (If your municipality bills twice annually, you must apply after the bill that establishes your final tax liability and not before.)

**Step One:** Taxpayer must file the abatement application with the municipality by March 1 following the notice of tax.

**Step Two:** Municipality has until July 1 following the notice of tax to grant or deny the abatement application.

**Step Three:** Taxpayer may file an appeal either at the BTLA (RSA 76:16-a) or in the superior court (RSA 76:17), but <u>not</u> both. An appeal must be filed:

    1) <u>no earlier than</u>: a) after receiving the municipality's decision on the abatement application; or b) July 1 following the notice of tax if the municipality has not responded to the abatement application; and

    2) <u>no later than</u> September 1 following the notice of tax.

**EXCEPTION:** If your municipality's final tax bill was sent out after December 31 (as determined by the BTLA), the above deadlines are modified as follows (RSA 76:1-a; RSA 76:16-d, II):

**Step One:** 2 months after notice of tax;

**Step Two:** 6 months after notice of tax; and

**Step Three:** 8 months after notice of tax.

**FORM COMPLETION GUIDELINES:**

1. **SECTION E.** Municipalities may abate taxes "for good cause shown." RSA 76:16. Good cause is generally established by showing an error in the assessment calculation or a disproportionate assessment. Good cause can also be established by showing poverty and inability to pay the tax.

2. **SECTION G.** If the abatement application is based on disproportionate assessment, the taxpayer has the burden to show how the assessment was disproportionate. To carry this burden the taxpayer must show:
a) what the property was worth (market value) on the assessment date; and b) the property's "equalized assessment" exceeded the property's market value. To calculate the equalized assessment, simply divide the assessment by the municipality's equalization ratio (assessment ÷ ratio). Because a property's market value is a crucial issue, taxpayers <u>must</u> have an opinion of the market value estimate. This value estimate can be shown by obtaining an appraisal or presenting sales of comparable properties.

3. **SECTION H.** The applicant(s) <u>must</u> sign the application even if a representative (e.g., Tax Representative, Attorney, or other Advocate) completes Section I.

4. Make a copy of this document for your own records.

# RSA 76:16 ABATEMENT APPLICATION TO MUNICIPALITY

## SECTION A. Party(ies) Applying (Owner(s)/Taxpayer(s))

Name(s): Catherine Dube Cooper, Thomas G. Cooper

Mailing Address(es) PO Box 3671  Concord, NH  03302-3671

Telephone Number(s): (Work) 226-7791 (Home) 496-5997

Note: If an abatement is granted and taxes have been paid, interest on the abatement shall be paid in accordance with RSA 76:17-a. Any interest paid to the applicant must be reported by the municipality to the United States Internal Revenue Service, in accordance with federal law. Prior to the payment of an abatement with interest, the taxpayer shall provide the municipality with the applicant's social security number or federal tax identification number. Municipalities shall treat the social security or federal tax identification information as confidential and exempt from a public information request under RSA 91-A.

## SECTION B. Party's(ies') Representative if other than Person(s) Applying (Also complete Section A)
Name(s):
Mailing Address(es):
Telephone Number(s): (Work) (Home)

## SECTION C. Property(ies) for which Abatement is Sought

List the tax map and lot number, the actual street address and town of each property for which abatement is sought, a brief description of the parcel, and the assessment.

Town Parcel ID# Street Address/Town Description Assessment

| Town Parcel ID# | Street Address/Town | Description | Assessment |
|---|---|---|---|
| 9/2/3 | 175 South Street  Concord, NH | Single Family MDL-01 | $295,000 |

WAS AN INVENTORY BLANK TIMELY FILED FOR THIS PROPERTY FOR TAX YEAR 20 ?
YES ____ NO ____ N/A _x___

1

List other property(ies) in the municipality owned in the same name(s), even if abatements for the other property(ies) have not been sought. The taxpayer's entire real property estate must be considered in determining whether the appealed property(ies) is (are) disproportionately assessed. Town Parcel ID# Street Address/Town Description Assessment

## SECTION E. Reasons for Abatement Application

RSA 76:16 provides that an abatement may be granted for good cause shown. "Good cause" generally means:
1) establishing an assessment is disproportionate to market value and the municipality's level of assessment; or 2) establishing poverty and inability to pay the tax. This form can be utilized for either basis of requesting an abatement. The taxpayer has the burden to prove good cause for an abatement.
1) If claiming disproportionality, state with specificity all the reasons supporting your application. Statements such as taxes too high, disproportionately assessed or assessment exceeds market value are insufficient. Generally, specificity requires the taxpayer to present material on the following: (all may not apply):

physical data - incorrect description or measurement of property;

market data - the property's market value on the April 1 assessment date, supported by comparable sales or a professional opinion of value; and/or

level of assessment - the property's assessment is disproportionate by comparing the property's market value and the town-wide level of assessment.

Note: If you have an appraisal or other documentation, please submit it with this application.
2) If claiming poverty or inability to pay, state in detail why abatement of taxes is appropriate as opposed to some other relief such as relocating, refinancing or obtaining some alternative public assistance. (See Ansara v. City of Nashua, 118 N.H. 879 (1978)).
(Attach additional sheets if needed.)

We are appealing the assessment for several reasons.

First, there is incorrect information in the assessment and physical data used to determine the assessment on our property as follows:

1) **Central Heating.** The Construction Detail portion of the Assessment Card indicates that the property has gas, steam heat. It does not. Nor does it have any form of central heating system. The property formerly had central steam heat, disbursed throughout the house with radiators and pipes. The full system, including the aged furnace and piping, had to be removed, damaging portions of the *original* tin ceilings, walls, and the wood and tile floors. The cost for installation of a heating system will be in excess of $20,000.00, which does not include the cost of other repairs, which the parties cannot financially perform for the foreseeable future.

2) **Shed Frame 1**. This structure was a single car garage constructed at the time the house was originally constructed in 1910 but has never been used except for limited storage since we purchased the property in 1982. There are major, irreparable cracks in the floor, and a roof with shingles falling off and which haven't been replaced or repaired in over 30 years. In 2012 it was assessed for $1,300.00. It simply cannot have maintained that value since then. In our view the structure has no value and in fact would cost more money to tear it down than to ultimately repair. In the summer of 2014, there was an infestation of carpenter ants which deconstructed some of the woodwork.

3) **Shed frame 2**. This is a storage shed which was purchased over 20 years ago for $600.00 and which has ceiling and floor leakage and has not had any improvements during the life of the shed which is nearing an end. It was assessed in 2012 for $700.00. It simply cannot have maintained that value since the date of assessment. It has no value. In the summer of 2014, there was an infestation of carpenter ants which deconstructed some of the woodwork in this shed as well as Shed Frame 1.

4) **F-Screen house**. This structure is over 30 years old, has holes in the sides, ceiling, and roof. The remaining shingles on the roof are curling. It was assessed in 2012 for $500.00. It cannot have maintained that value since the date of assessment. In the summer of 2014, there was an infestation of carpenter ants which deconstructed some of the woodwork in this screen house as well as Shed Frame 1 and 2. It has no value.

5) **Garage.** In the summer of 2014, there was an infestation of carpenter ants which deconstructed some of the woodwork. The winter storm of 2015 also caused cracking in the foundation of the garage.

6) **Roof**. The roof on most of the house has not been replaced in over 40 years and is in need of repair and replacement at a cost of over $20,000.00. During the catastrophic winter event of 2014-15, the roof sustained significant ice dam damage, which also severely affected the back interior of the home's bathroom, kitchen, and main family room. This has not been reflected in the assessment.

7) **Interior 1st floor**. The winter of 2014-15 caused massive internal damage to the kitchen, bathroom and main living areas as a result of ice dams, hemorrhaging water, exposure to mildew, and the aggravated elongated response time as insurance companies were not able to keep pace with the crisis. The flow of water continued into our home for over 2 days, blowing out all the electrical circuits in the kitchen area.

8) **Total Number of Rooms**. The assessment reflects a total of 9 rooms which I assume includes the 4 bedrooms. There are only 4 rooms on the first floor of the house and the only rooms on the second floor are the bedrooms and one bathroom. This finding has been reflected in the assessment.

9) **Porch, Enclosed, Partially Finished**. The assessment reflects under code FEP a "Porch, Enclosed, Finished" with 176 square feet. The porch does not have a foundation and has no source of heat. This has been reflected in the assessment.

10) **Land Dispute**. A Petition to Quiet Title has been filed with the Merrimack County Superior Court. In the summer of 2015, the Concord Police Department threatened Catherine Cooper with arrest if she continued to occupy and use the land area as depicted on the current City of Concord tax maps, tax maps which are utilized to generate the assessed value of the parcel in question. (See attached photograph dated August 30, 2015). The disputed portion involves the primary frontage and landscape to the existing structure. Further, the adjoining landowner has placed fluorescent orange surveying stakes noticeably cutting across the property. This issue has a significant impact not only on the value of the land, but on the buildings themselves as a result of the location of the disputed area. This is not reflected in the assessment. Further, while the issue is discussed by Mr. Manias in his appraisal of the property no specific adjustment is given in his report. The cost at minimum to prosecute the pending action is in excess of $20,000.00 exclusive of the cost to the Coopers of being unable to sell or refinance the property while the matter is pending, or any change in the use of the property once a decision is issued.

11) **Driveway**. As a result of the winter damage of 2014 2015, portions of the driveway have buckled and sustained pot holes, and the entrance to one entry to the garage is 2 inches below level.

12) **Master Suite**. There is no master suite in this home, which detracts from the market value.

13) **Bathrooms**. Due to the removal of the central heating system, there is no heat in any of the bathrooms. There is 1 undersized bathroom, feeding all 4 bedrooms on the second floor, with an undersized bath/shower combination. It has no linen closet. The bathroom on the first floor also has 2 exterior doors with maximum exposure to the cold.

14) **Bedrooms**. All of the 4 bedrooms have undersized closets.

Beyond the items listed above is the issue of the land appraisal, including the pending litigation, we believe that the figure of $100,900 is too high for several reasons.

1) The location of this house and the land is on a major thoroughfare with heavy, regular traffic. There is no sidewalk along the front of the house, although the city has indicated one in a master plan, which would negatively affect the tone

of the front of the house. The upgrades to the Abbott-Downing regional elementary school and its attendant traffic, motorists frequently park on the parcel of land which is directly adjacent to the street, damaging the yard.

2) A considerable amount of the land area comprising the 1.29 acres is not usable and wet. The entire back portion is steeply graded over a distance of approximately 90 feet into a brook. Further, the overall land acreage is now unknown.

3) The land is not usable and/or developable in the absence of exceptions, permits and variances and requires time consuming and expensive maintenance, which due to the restricting zoning, and the current restrictions on development within the zone, makes the land valueless.

## SECTION F. Taxpayer's(s') Opinion of Market Value

State your opinion of the market value of the property(ies) appealed as of April 1 of the year under appeal.
Town Parcel ID # MAP ID 9/2/3 Appeal Year Market Value $230,000.00
Town Parcel ID # Appeal Year Market Value $

Explain the basis for your value opinion(s). (Attach additional sheets if necessary.)

### Attachment to Section F - Appraisal

1. In addition to the independent expert appraisal of Louis C. Manias dated February 26, 2016 at attached hereto, our opinion is based on the discrepancies between the information contained in the City's assessment cards, the actual physical characteristics of the property, and, the actual and potential use thereof. Additionally, we believe that other properties have received a different assessment for the same or similar characteristics of my property and my assessment should be equitably adjusted downward to reflect this information.

2. With respect to the physical characteristics of the property as described above and in the attached independent appraisal we believe a downward adjustment in the amount of $45,000.00 should be implemented.

3. Based on the description of the land, including its precarious legal status as described above and as referenced in the Independent Appraisal, we believe a downward revision to the assessment in the amount of $20,900 is warranted.

Therefore, we are requesting an abatement to $230,000.00, reserving the right to further amend this in a downward manner pending the outcome of the land dispute.

## SECTION G. Sales, Rental and/or Assessment Comparisons

List the properties you are relying upon to show over assessment of your property(ies). If you are appealing an income producing property, list the comparable rental properties and their rents.

(Attach additional sheets if needed.) All properties listed, considered, and as described in the attached February 26, 2016 **Appraisal of Real Property** performed by Louis C. Manias, Capital Appraisal Inc. including: 312 South Street (MAP ID 84/1/7; 13 Rumford Street (MAP ID 37/3/5); 89 Liberty Street (MAP ID 49/3/2).

## SECTION H. Certification by Party(ies) Applying

Pursuant to BTLA Tax 203.02(d), the applicant(s) **MUST** sign the application. By signing below, the Party(ies) applying certifies (certify) and swear(s) under the penalties of RSA ch. 641 the application has a good faith basis, and the facts stated are true to the best of my/our knowledge.

Date: 2-27-16

Catherine Dube Cooper

Date: _____



Thomas G. Cooper

3 Rev. 4/09 **SECTION I. Certification and Appearance by Representative (If Other Than Party(ies) Applying)** By signing below, the representative of the Party(ies) applying certifies and swears under penalties of RSA ch. 641: 1. all certifications in Section H are true; 2. the Party(ies) applying has (have) authorized this representation and has (have) signed this application; and3. a copy of this form was sent to the Party(ies) applying. Date: (Representative's Signature) _

_____ _____ _____ _____ _____ _____ _____ _____ Print Name

**SECTION J. Disposition of Application\* (For Use by Selectmen/Assessor)** \*RSA 76:16, II states: the municipality "shall review the application and shall grant or deny the application in writing by July 1 after notice of tax date . . . ." Abatement Request: GRANTED Revised Assessment: $_____ DENIED Remarks: Date: (Selectman/Assessor Signature) (S electman /Assess or Signature) (Selectman/Assessor Signature) (Selectma n/Assess or Signature) 4