**Hearing Date: April 19, 2016 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: April 7, 2016 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
250 West 55th St.
New York, NY 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett

*Counsel for the ResCap Borrower Claims
Trust*


**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ )
                                                             )
In re:                                                       )    Case No. 12-12020 (MG)
                                                             )
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,                     )    Chapter 11
                                                             )
                              Debtors.                       )    Jointly Administered
                                                             )
------------------------------------------------------------ )


**RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM NO. 1094 FILED**
**BY HARRY W. MILLER III, AS COUNSEL FOR MARY MARTIN**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

JURISDICTION, VENUE, AND STATUTORY PREDICATE ...................................................3

BACKGROUND .........................................................................................................................3

RELIEF REQUESTED ...............................................................................................................5

OBJECTION ...............................................................................................................................5

BACKGROUND FACTS ............................................................................................................5

ARGUMENT ............................................................................................................................10

1.      The Breach of Contract Claim Fails as a Matter of Law ...............................................10

        a.      The Repayment Agreement ...............................................................................10

        b.      The Deed of Trust..............................................................................................11

2.      The Bad Faith Claim is Not Actionable Under Tennessee Law......................................13

3.      The Debtors Did Not Owe a Fiduciary Duty to Ms. Martin ...........................................14

4.      There Can Be No Outrageous Conduct Claim Under the Facts as Alleged ....................16

5.      The TCPA does not apply to foreclosure activities.........................................................18

6.      A Constructive Trust is Not Appropriate Here................................................................18

CONCLUSION .........................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

ARC LifeMed, Inc. v. AMC-Tenn., Inc.,
 183 S.W.3d 1 (Tenn. Ct. App. 2005) .................................................................................... 10

Bain v. Wells,
 936 S.W.2d 618 (Tenn. 1997) ....................................................................................... 16, 17

Barnes & Robinson Co. v. OneSource Facility Servcs., Inc.,
 No. M2004-01003-COA-R3-CV, 2006 WL 163218 (Tenn. Ct. App. Jan. 23, 2006) ............. 14

Bone v. CSX Intermodal, Inc.,
 No. 01–2245V, 2001 WL 1906279 (W.D. Tenn. Oct. 11, 2001) ........................................... 14

Childs v. HSBC Mortg. Servs., Inc.,
 No. 3:10-cv-0242, 2010 WL 3063724 (M.D. Tenn. Aug. 3, 2010) ....................................... 17

Davenport v. Bates,
 No. M2005-02052-COA-R3-CV, 2006 WL 3627875 (Tenn. Ct. App. Dec. 12, 2006) .......... 18

Denuke Contracting Serv., Inc. v. EnergX, LLC,
 No. 3:07-CV-114, 2007 WL 2509686 (E.D. Tenn. Aug. 30, 2007) ....................................... 14

Duke v. Browning-Ferris Indus. of Tenn., Inc.,
 No. W2005-00146-COA-R3-CV, 2006 WL 1491547 (Tenn. Ct. App. May 31, 2006) ......... 13

Feinberg v. Bank of N.Y. (In re Feinberg),
 442 B.R. 215 (Bankr. S.D.N.Y. 2010) ................................................................................. 5

First Tenn. Bank Nat'l Assoc. v. C.T. Resorts Co.,
 No. 03A019503-CH-00102, 1995 WL 511884 (Aug. 30, 1995) .......................................... 15

Flynn v. GMAC Mortg., LLC,
 No. 3:11-cv-0416, 2011 WL 4708858 (E.D. Tenn. Oct. 4, 2011) ........................................ 18

Hubbard v. Hardeman County Bank,
 868 S.W.2d 656 (Tenn. Ct. App. 1993) ............................................................................... 19

Hunter v. Wash. Mut. Bank,
 No. 2:08-CV-0069, 2008 WL 4206604 (E.D. Tenn. Sep. 10, 2008) ..................................... 18

Livesay v. Keaton,
 611 S.W.2d 581 (Tenn. Ct. App. 1980) ............................................................................... 19

Macon Cty. Livestock Mkt., Inc. v. Ky. State Bank, Inc.,
    724 S.W.2d 343 (Tenn. Ct. App. 1986)......................................................................15

Morrison v. Allen,
    338 S.W.3d 417 (Tenn. 2011) .................................................................................15

Oak Ridge Precision Indus. v. First Tenn. Bank Nat'l Assoc.,
    835 S.W.2d 25 (Tenn. Ct. App. 1992).....................................................................15

Pursell v. First Am. Nat'l Bank,
    937 S.W.2d 838 (Tenn. 1996) .................................................................................18

Schmidt v. Nat'l City Corp.,
    No. 3:06-cv-209, 2008 WL 5248706 (E.D. Tenn. Dec. 17, 2008)..........................11

Solomon v. First Am. Nat'l Bank of Nashville,
    774 S.W.2d 935 (Tenn. Ct. App. 1989)...................................................................14

## STATUTES

11 U.S.C. 502(b)(1) ..........................................................................................................5

11 U.S.C. §502(a) .............................................................................................................5

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the Chapter 11 plan confirmed in the above captioned bankruptcy cases (the "Chapter 11 Cases") [Docket No. 6065], as successor in interest to the above captioned debtors (collectively, the "Debtors") with respect to Borrower Claims (as defined below), hereby submits this objection (the "Objection") seeking to disallow and expunge, without leave to amend, proof of claim no. 1094 (the "Claim") filed by Harry W. Miller III, Attorney at Law (the "Claimant") on behalf of his client, Mary Martin ("Ms. Martin") against Debtor Homecomings Financial, LLC ("Homecomings") for $700,000.00 pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), on the grounds that the Claim fails to state a basis for liability against the Debtors.[1]  The Borrower Trust seeks entry of an order substantially in the form annexed hereto as Exhibit 1 (the "Proposed Order") granting the requested relief.  In support of the Objection, the Borrower Trust submits the declaration of Sara Lathrop, Senior Claims Analyst for the Borrower Trust, attached hereto as Exhibit 2 ("Lathrop Decl.") and the Declaration of Christopher E. Thorsen, Partner at Bradley Arant Boult Cummings, LLP, attached hereto as Exhibit 3 ("Thorsen Decl.").

**PRELIMINARY STATEMENT**

1.    The Borrower Trust examined the Claim and the statements and exhibits submitted in support thereof.  A copy of the Claim is attached hereto as Exhibit 4. The asserted basis for the Debtors' liability is "Hamilton County Tennessee Chancery Court

---

[1]    The Borrower Trust reserves all of its rights to object on any other basis to the Claim not set forth in this Objection, and the Borrower Trust reserves all of its rights to amend this Objection should any further bases come to light.

Case # 8-439 for Breach of Contract and Tort Damages." Attached to the Claim is an amended complaint filed by Ms. Martin against Homecomings and non-Debtor defendants (the "Amended Complaint"). The Amended Complaint asserts causes of action for breach of contract, bad faith, breach of fiduciary duty, outrageous conduct, violation of the Tennessee Consumer Protection Act, and constructive trust.[2] All of the causes of action purportedly arise out of a foreclosure sale of Ms. Martin's property that was conducted in May of 2008.

2.     Ms. Martin has failed to put forward any wrongdoing by any Debtor in relation to her loan or the foreclosure sale of her property. Ms. Martin asserts that Homecomings failed to abide by the terms of a repayment agreement that would have forestalled foreclosure; however, the repayment agreement, which Ms. Martin attaches to the Claim, demonstrates that it was not executed by one of the borrowers under the Note and Deed of Trust. As a result, the repayment agreement was not a valid contract, and Homecomings could not have been in breach of said contract when it commenced foreclosure proceedings.

3.     Ms. Martin's remaining causes of action also fail as a matter of law. Specifically, Ms. Martin's bad faith, breach of fiduciary duty, and TCPA claims fail because either such a cause of action does not exist under Tennessee law or the cause of action cannot be asserted in this situation. Ms. Martin's outrageous conduct claim fails because the facts alleged do not amount to outrageous conduct under Tennessee law. Finally, Ms. Martin's constructive trust cause of action fails because it is not properly before this Court and Ms. Martin has failed to allege any wrongdoing on the part of Homecomings.

---

[2] Ms. Martin subsequently filed a Second Amended and Substituted Complaint (the "Second Amended Complaint") on June 24, 2008, adding two additional defendants. See Second Amended Complaint, attached to the Thorsen Decl. as Exhibit A.

Therefore, as more fully described below, the Claim should be disallowed and expunged in its entirety from the Claims Register (defined below).

## JURISDICTION, VENUE, AND STATUTORY PREDICATE

4.      This Court has jurisdiction over this Objection under 28 U.S.C. § 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

5.      The statutory predicates for the relief requested herein are section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007(a).

## BACKGROUND

6.      On May 14, 2012, each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code.  These Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

7.      On May 16, 2012, the Court entered an order [Docket No. 96] appointing Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in these Chapter 11 Cases.  Among other things, KCC is authorized to (a) receive, maintain, and record and otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain the official claims register for the Debtors (the "Claims Register").

8.      On October 10, 2012, the Claimant filed the Claim.  See Proof of Claim, attached hereto as Exhibit 4.

9.      On March 21, 2013, this Court entered an order approving procedures for the filing of objections to proofs of claim filed in these Chapter 11 Cases [Docket No. 3294] (the "Procedures Order").  The Procedures Order includes specific protections for

3

Borrowers[3] and sets forth a process for the Debtors to follow before objecting to certain categories of Borrower Claims (the "Borrower Claim Procedures").

10.     The Debtors sent Request Letters to certain Borrowers, including the Claimant, requesting additional documentation in support of their claims.  See Lathrop Decl. ¶ 4.  The Request Letters state that the claimant must respond within 30 days with an explanation that states the legal and factual reasons why the claimant believes he is owed money or is entitled to other relief from the Debtors, and the claimant must provide copies of any and all documentation that the claimant believes supports the basis for his claim. The Request Letters further state that if the claimant does not provide the requested explanation and supporting documentation within 30 days, the Debtors may file a formal objection to the claimant's claim, seeking to have the claim disallowed and permanently expunged.  A Request Letter was sent to the Claimant and a response was received on July 26, 2013. See Diligence Response, attached to the Lathrop Decl. as Exhibit A.

11.     On December 11, 2013, the Court entered the *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "Confirmation Order") approving the terms of the Chapter 11 plan, as amended (the "Plan"), filed in these Chapter 11 cases [Docket No. 6065]. On December 17, 2013, the Effective Date (as defined in the Plan) of the Plan occurred [Docket No. 6137].

12.     The Plan provides for the creation and implementation of the Borrower Trust, which is established for the benefit of Borrowers who filed claims to the extent such claims are ultimately allowed either through settlement or pursuant to an Order of the Court.

---

[3]     As used herein, the terms "Borrower" and "Borrower Claims" have the meanings ascribed to them in the Plan (defined below).

4

See Plan, Art. IV.F. The Borrower Trust was established to, among other things, "(i) direct the processing, liquidation and payment of the Allowed Borrower Claims in accordance with the Plan, and the distribution procedures established under the Borrower Claims Trust Agreement, and (ii) preserve, hold, and manage the assets of the Borrower Claims Trust for use in satisfying the Allowed Borrower Claims." See id.

## RELIEF REQUESTED

13.     The Borrower Trust files this Objection, pursuant to Bankruptcy Code section 502(b) and Bankruptcy Rule 3007, and seeks entry of an order, substantially in the form annexed hereto as Exhibit 1, disallowing and expunging the Claim with prejudice from the Claims Register.

## OBJECTION

14.     A filed proof of claim is "deemed allowed, unless a party in interest … objects." 11 U.S.C. §502(a). Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law…." 11 U.S.C. 502(b)(1). Furthermore, the burden of persuasion once an objection refutes an essential allegation of the claim is on the holder of a proof of claim to establish a valid claim against a debtor by a preponderance of the evidence. Feinberg v. Bank of N.Y. (In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010).

## BACKGROUND FACTS

15.     On August 30, 2002, non-Debtor Northwest Georgia Bank ("Northwest") originated a loan (the "Loan") in the amount of $112,000 to Ms. Martin and her then husband, Michael Martin ("Mr. Martin", and with Ms. Martin, the "Martins"), evidenced by a note (the "Note") and secured by a deed of trust (the "Deed of Trust") on

5

property located at 1021 Englewood Ave., Chattanooga, TN 37405 (the "Property"). Copies of the Note (with Allonge) and the Deed of Trust are attached to the Lathrop Decl. as Exhibit B and Exhibit C, respectively. Northwest sold the loan to non-Debtor Synovus Mortgage Corp. Debtor, Residential Funding Company, LLC purchased the loan from Synovus Mortgage Corp. and transferred its interest when the loan was securitized on or about December 1, 2002 where JP Morgan Case Bank was appointed as Trustee. See Lathrop Decl. ¶ 5.

16.     Homecomings serviced the Loan from October 3, 2002 until the property was sold to a third-party in or around June 2008. See Lathrop Decl. ¶ 6.

17.     The Martins defaulted on the Note as early as 2003. See August 4, 2003 Breach Letter, attached to the Lathrop Decl. as Exhibit D.

18.     The Martins divorced in August 2005. See Second Amended Complaint ¶ 19. The Martins did not request that Mr. Martin be removed from the Note or the Deed of Trust. See Lathrop Decl. ¶ 8.

19.     On February 22, 2008, Homecomings sent a letter to the Martins notifying them of their default and informing them of the full amount that needed to be paid within thirty days in order to cure the default. See February 22, 2008 Breach Letter, attached to the Lathrop Decl. as Exhibit E.

20.     The Martins failed to pay the amount due within thirty days. See Servicing Notes, attached to the Lathrop Decl. as Exhibit F. On or around April 14, 2008, McCurdy & Candler, L.L.C. ("McCurdy"), the foreclosure firm hired by Homecomings, sent the Martins a notice notifying them that McCurdy had been retained to collect the

6

outstanding balance on their Loan.  See Letter from McCurdy, attached to the Thorsen Decl. as Exhibit B.

21.    On or about April 15, 2008, Homecomings sent the Martins a letter informing them that the foreclosure sale on the Property had been scheduled for May 15, 2008 and urging them to take action with respect to the loan.  See April 15, 2008 Letter, attached to the Lathrop Decl. as Exhibit G.

22.    On April 17, 2008, Homecomings returned a check from Ms. Martin because it was not sufficient to cure the default on the account (the "First April Payment"). See Servicing Notes at 24 of 40.

23.    On or about April 21, 2008, McCurdy sent the Martins a letter accelerating the Note and demanding payment in full.  See April 21, 2008 Letter, attached to the Thorsen Decl. as Exhibit C.  That letter also enclosed a copy of the Notice of Sale Under Power that was published in the Chattanooga Free Press.  See id.

24.    On April 22, 2008, Homecomings approved the Martins for a repayment agreement and a copy of the agreement was sent to them on May 2, 2008 to be executed (the "Repayment Agreement").  See Servicing Notes at 18 of 40, see also Repayment Agreement, attached to the Proof of Claim.  The Repayment Agreement stated that it was between both Michael A. Martin and Mary Collette Martin.  See Repayment Agreement. As a result, it required both of their signatures to be executed.

25.    Ms. Martin sent a payment of $2,766.96 via a cashier's check (the "May Payment"), however, the check did not contain her account number or any other information sufficient to identify her account.  Pursuant to Homecomings' business practice, upon receipt of the unidentifiable check, on May 2, 2008, Homecomings returned the

cashier's check to its sender, First Tennessee Bank.  See Letter Returning Check, attached to the Thorsen Decl. as Exhibit D; see also Servicing Notes at 18 of 40.

26.    The Martins also failed to provide a fully executed copy of the Repayment Agreement to Homecomings.   Because the Martins failed to execute the Repayment Agreement, Homecomings foreclosed on the Property on May 22, 2008, and the Property was purchased by the investor.  See Servicing Notes at 16 of 40.

27.    On May 22, 2008, Homecomings received an email from Ms. Martin indicating that she would be resending the returned May Payment to Homecomings.  See Servicing Notes at 16 of 40.  On May 23, 2008, Homecomings received the cashier's check for $2,766.96, along with the repayment agreement signed by Ms. Martin (but not Mr. Martin).  Pursuant to the Debtors' business practices, the Repayment Agreement could not be executed because Mr. Martin did not also sign the agreement.  See Lathrop Decl. ¶ 16. Furthermore, because the foreclosure sale had already been completed, Homecomings again returned the May Payment, along with another payment of $1,383.48 that was also received after the foreclosure sale was completed.  See Servicing Notes at 12 of 40.

28.    On June 5, 2008, Homecomings put the sale of the Property on hold to allow time to investigate the returned checks.  See Servicing Notes at 11 of 40.  On June 10, 2008, Homecomings closed the investigation after confirming that the May Payment was returned because the loan number was not provided.  See Servicing Notes at 10 of 40.  The investigation also determined that a modification would not have been an option even if the Repayment Agreement had been executed, which was communicated to Ms. Martin during a phone conversation on June 11, 2008.  See id.

29.    The Property was subsequently sold in or around June 2008 to a non-Debtor third party, I Buy Houses Cash, Inc. ("IBHC").  See Deed of Sale, attached to the Thorsen Decl. as Exhibit E.

30.    On information and belief, Ms. Martin continues to live in the Property.  See Lathrop Decl. ¶ 20.

31.    In 2008, Ms. Martin filed a complaint against Homecomings, the Bank of New York Trust Company, N.A. as Successor to JP Morgan Chase Bank, N.A., as Trustee ("BONY"), and MERS, Inc. ("MERS").  Ms. Martin filed the Amended Complaint on June 19, 2008.  See Amended Complaint.  Subsequently, Ms. Martin filed the Second Amended Complaint, adding IBHC and Jerry Law as defendants.  See Second Amended Complaint.

32.    Homecomings and the other defendants filed answers to the Second Amended Complaint on July 14, 2008.  See Thorsen Decl. ¶ 7.  The parties subsequently engaged in written discovery, including responding to interrogatories and document production requests.  See id.

33.    On March 9, 2012, Homecomings, BONY, and MERS filed a Motion for Summary Judgment and supporting Memorandum in Support of Motion for Summary Judgment and Statement of Undisputed Facts.  See Motion for Summary Judgment, attached to the Thorsen Decl. as Exhibit F.

34.    On or about May 29, 2012, Homecomings filed its Notice of Bankruptcy and Effect of Automatic Stay in the Chancery Court Action.  Then, on or about August 9, 2012, Homecomings filed its Notice of Bankruptcy Filing and Supplement Servicing Order.  See Thorsen Decl. 9.  The Chancery Court Action has effectively been

9

stayed since the filing of Homecoming's bankruptcy proceeding. The Motion for Summary Judgment filed by the defendants identified above remains pending before the Hamilton County Chancery Court and is currently not scheduled for hearing. See id.

## ARGUMENT

35.    Ms. Martin asserts a cause of action for GMACM's foreclosure of the Property. For the reasons provided below, these causes of action fail against the Debtors as a matter of law.

### 1.    The Breach of Contract Claim Fails as a Matter of Law

36.    Ms. Martin alleges that the Debtors breached the terms of the Deed of Trust and the Repayment Agreement. See Second Amended Complaint ¶ 38. Specifically, Ms. Martin alleges that the Debtors foreclosed on the Property "for non-payment of monthly payments when Homecomings created said default by refusing to accept payments." See id ¶ 38(a). Ms. Martin alleges that the Debtors failed to notify her of an alleged rescission of the Repayment Agreement, that they failed to properly apply the payments issued to Homecomings, and that they exercised "discretionary power in an arbitrary, capricious and knowingly harmful manner." See id ¶ 38(d).

#### a.    The Repayment Agreement

37.    The elements for breach of contract in Tennessee are: "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of contract." ARC LifeMed, Inc. v. AMC-Tenn., Inc., 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005). With respect to the Repayment Agreement, there was not an enforceable contract because the Martins never executed and returned the Repayment Agreement. The Repayment Agreement provides Homecomings "agrees to suspend foreclosure activity on the delinquent account provided that [the

ny-1220746

Martins] execute and return th[e] [Repayment Agreement]….” <u>See</u> Repayment Agreement Section 5.

38.    Ms. Martin executed and returned the Repayment Agreement to Homecomings on or about May 18, 2008, but the Repayment Agreement was addressed to **both** of the Martins, who were both borrowers on the loan. <u>See</u> Lathrop Decl. ¶ 12. In addition, the Repayment Agreement had a signature line for Mr. Martin's signature. <u>See</u> Repayment Agreement.  It is clear from the face of the Repayment Agreement that Homecomings' acceptance of the Repayment Agreement and its agreement to suspend foreclosure activity was conditioned upon Mr. Martin's execution of the Repayment Agreement in addition to Ms. Martin's.  Furthermore, the Repayment Agreement was also conditioned on receiving the required payments.  While Ms. Martin sent in a cashier's check, she did not provide sufficient information to allow Homecomings to identify the account it should be applied to, meaning that the required payment was not timely received. Thus, by not fully executing the Repayment Agreement, the Martins never created a contract with Homecomings to suspend the foreclosure on the Property, and any cause of action for an alleged breach or rescission of the Repayment Agreement fails as a matter of law.

### b.    The Deed of Trust

39.    With regard to Ms. Martin's assertion that Homecomings breached the Deed of Trust, such cause of action must fail because Homecomings was not a party to the Deed of Trust.  <u>See</u> <u>Schmidt v. Nat'l City Corp.</u>, No. 3:06-cv-209, 2008 WL 5248706, at *7 (E.D. Tenn. Dec. 17, 2008) (holding that a cause of action for breach of contract against a servicer failed because the servicer was not a party to any contract with the plaintiff).

40.     Ms. Martin alleges that Homecomings breached the Deed of Trust by foreclosing on the Property after purportedly causing the default.  See Second Amended Complaint at ¶ 38a. However, the default was a result of the Martins' failure to make the January 2008 payment,[4] and in such situations, the Note and Deed of Trust permitted the lender to refuse payment that did not fully cure the default.  The Note expressly states that if the Martins did not "pay the full amount of each monthly payment on the date it is due [they] will be in default."  See Note, Section 6(b).  The Deed of Trust also clearly gives the Debtors the right to "return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current."  See Deed of Trust, Uniform Covenant 1.  Additionally, "[a]ny forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments . . . in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy."  See id.

41.     Moreover, the fact that Ms. Martin repeatedly acknowledges in the Second Amended Complaint that Homecomings had "discretionary power" with respect to the Property, the Note, and the Deed of Trust further demonstrates that neither the Note nor the Deed of Trust obligated the acceptance of payments that did not fully cure the default.[5] See Second Am. Complaint ¶ 38d.   Thus, Homecomings acted fully within its rights under the Deed of Trust when it foreclosed on the Property after the Martin's admitted default. Therefore, even assuming Homecomings was a party to the Deed of Trust, which it was not,

---

[4] In her discovery responses, Ms. Martin admitted that "[i]n April of 2008 the January through April 2008 payments ha[d] not been paid."  See Interrog. Resps., attached to the Thorsen Decl. as Exhibit G, No. 10.

[5] This also demonstrates that there was nothing "arbitrary" or "capricious" about Homecomings decision not to accept the partial payment, as such decision is contemplated in the Deed of Trust.  Furthermore, the Borrower Trust is not aware of any authority that would suggest that exercising discretionary power afforded by a contract can result in a claim for breach of contract, even if the exercise of the power can be viewed as "arbitrary" or "capricious."

it did not breach any term of the Deed of Trust when it failed to accept the First April

Payment, Second April Payment, or May Payment.

      42.    Ms. Martin's argument that Homecomings failed to properly apply her

payments is misplaced for the same reasons.  The Deed of Trust clearly lays out the manner

in which payments will be applied.  <u>See</u> Deed of Trust, Uniform Covenant 2.  Ms. Martin

has failed to specifically identify any payment that was not applied consistent with the

manner outlined in the Deed of Trust, and throughout the course of the loan at issue,

payments by the Martins were applied in the manner outlined in Paragraph 2 of the Deed of

Trust.  <u>See</u> Lathrop Decl. ¶ 21.  As a result, Ms. Martin's cause of action for breach of

contract arising from the Deed of Trust must also fail.

### 2.    The Bad Faith Claim is Not Actionable Under Tennessee Law

      43.    Ms. Martin alleges that Homecomings acted in bad faith by

"[f]oreclosing on a valuable property due to a default that they manufactured" and

"[f]oreclosing on a valuable property while negotiating with [Ms. Martin]."  <u>See</u> Am.

Complaint ¶ 28.  As discussed above, the default was created by the Martins' delinquency,

and Homecomings was in compliance with the terms of the Deed of Trust when it

foreclosed on the Property after the Martins failed to execute the Repayment Agreement.

<u>See</u> ¶ 27 *supra*.

      44.    It is unclear what cause of action Ms. Martin is asserting when she

asserts a claim for "bad faith."   It appears that this should be interpreted as a cause of

action for breach of the implied covenant of good faith and fair dealing.  However, in

Tennessee, an alleged breach of the covenant of good faith and fair dealing is not an

independent basis for relief.  <u>See</u> <u>Duke v. Browning-Ferris Indus. of Tenn., Inc.</u>, *No.*

W2005-00146-COA-R3-CV, 2006 WL 1491547, at *9 (Tenn. Ct. App. May 31, 2006) ("[A]

breach of the implied covenant of good faith and fair dealing is not an independent basis for

relief …") (citation omitted); Bone v. CSX Intermodal, Inc., No. 01–2245V, 2001 WL

1906279, at *7 (W.D. Tenn. Oct. 11, 2001) ("[T]he claim of breach of contractual good

faith and fair dealing itself cannot stand alone; it 'is not a cause of action in and of itself but

as a part of breach of contract cause of action.'") (citation omitted).  A plaintiff cannot

recover for an alleged breach of the implied covenant of good faith and fair dealing if the

underlying breach of contract claim is invalid.  See Denuke Contracting Serv., Inc. v.

EnergX, LLC, No. 3:07-CV-114, 2007 WL 2509686, at *3 (E.D. Tenn. Aug. 30, 2007)

("[T]he plaintiff cannot solely rely on the breach of the implied covenant of good faith and

fair dealing to overcome [the defendant's] argument regarding the plaintiffs' failure to plead

a breach of contract."); Barnes & Robinson Co. v. OneSource Facility Servcs., Inc., No.

M2004-01003-COA-R3-CV, 2006 WL 163218, at *3 (Tenn. Ct. App. Jan. 23, 2006)

("Tennessee does not recognize [refusing to find a duty to negotiate in good faith without an

express contractual agreement]").

   45. In addition, if Ms. Martin is asserting a tort of "Bad Faith," Tennessee

does not recognize such an independent tort.  See, e.g., Solomon v. First Am. Nat'l Bank of

Nashville, 774 S.W.2d 935, 945 (Tenn. Ct. App. 1989) (holding that there is no actionable

tort, standing alone, for bad faith).  Thus, whether Claimant's bad faith claim sounds in tort

or contract, it should be dismissed as a matter of law.

   **3.**  **The Debtors Did Not Owe a Fiduciary Duty to Ms. Martin**

   46. Ms. Martin asserts that Homecomings owed her a fiduciary duty as a

result of the nature of their relationship with her and the "degree of control" it had over her.

See Am. Complaint ¶¶ 30-32.  Ms. Martin alleges that  Homecomings breached its alleged

fiduciary duty by foreclosing on the Property, failing to notify her of an alleged rescission

14

of the Repayment Agreement, failing to properly apply payments by her, and exercising a discretionary power in an arbitrary, capricious and knowingly harmful manner. See id. ¶ 33.

47.    A breach of fiduciary duty claim requires proof of (1) the existence of a fiduciary duty; (2) breach of the fiduciary duty; (3) causation of damages resulting from the breach; and (4) damages. Morrison v. Allen, 338 S.W.3d 417, 437-38 (Tenn. 2011). A fiduciary relationship exists "when one person reposes special trust and confidence in another person" and the fiduciary "undertakes to assume responsibility for the affairs of the other party." Id. at 438 (internal citations and quotations omitted). While the Borrower Trust is not aware of a case addressing whether a servicer owes a fiduciary duty to a customer, Tennessee law generally does not recognize a fiduciary relationship between a bank and its customers. Macon Cty. Livestock Mkt., Inc. v. Ky. State Bank, Inc., 724 S.W.2d 343, 349 (Tenn. Ct. App. 1986). Similarly, there is no fiduciary relationship between a creditor and a debtor involved in an arms-length lending transaction. See, e.g., First Tenn. Bank Nat'l Assoc. v. C.T. Resorts Co., No. 03A019503-CH-00102, 1995 WL 511884, at *5 (Aug. 30, 1995) (affirming summary judgment to the lender in an "arms-length" loan transaction on the borrower's breach of fiduciary duty claim). "[T]he dealings between a lender and borrower are not inherently fiduciary absent special facts and circumstances." Oak Ridge Precision Indus. v. First Tenn. Bank Nat'l Assoc., 835 S.W.2d 25, 30 (Tenn. Ct. App. 1992) (affirming summary judgment to the lender on a borrower's breach of fiduciary duty claim).

48.    In the instant case, Ms. Martin has not shown that Homecomings owed her a fiduciary duty. The Complaint makes clear that the Note and Deed of Trust were nothing more than an ordinary, arms-length residential mortgage transaction to which

15

Homecomings was not even a party. Ms. Martin attempts to base the existence of a fiduciary duty on the purported "degree of control" that Homecomings allegedly had over Ms. Martin. <u>See</u> Second Amended Complaint ¶ 42. The Martins voluntarily executed the Note and Deed of Trust because they wanted to refinance the Property, thereby permitting Homecomings to service the Loan on behalf of the Lender. Second Amended Complaint ¶ 18. There are no facts to support the existence of any special or fiduciary duty from Homecomings to Ms. Martin, as Ms. Martin has not alleged that she reposed special trust and confidence in Homecomings or that the alleged fiduciary undertook to assume responsibility for her affairs. This transaction was nothing more than an arms-length, run-of-the-mill residential mortgage transaction. Because Homecomings did not owe Ms. Martin a fiduciary duty as a matter of law, her breach of fiduciary duty claim fails.

**4.    There Can Be No Outrageous Conduct Claim Under the Facts as Alleged**

49.    Ms. Martin alleges that Homecomings, by acting "in flagrant disregard for the letter and spirit of the Loan, Deed of Trust, [Repayment] Agreement . . . and in flagrant disregard for [their alleged] contractual and fiduciary duties to [Ms. Martin]" have acted outrageously under Tennessee law such that they should be found liable to her for the intentional infliction of emotional distress. <u>See</u> Second Amended Complaint ¶¶ 47-50. Proof of an intentional infliction of emotional distress or an outrageous conduct claim requires that: "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civil society; and (3) the conduct complained of must result in serious mental injury." <u>Bain v. Wells</u>, 936 S.W.2d 618, 622 (Tenn. 1997) (citation omitted). With regard to the second element, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in

degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly

intolerable in a civilized community." Id. at 623.

50.     In the instant case, as discussed above, Homecomings acted fully

within their rights under the Note and the Deed of Trust in foreclosing on the Property, and

Homecomings did not owe Ms. Martin any fiduciary duties under Tennessee law.  See ¶ 27

supra.  Ms. Martin's allegations of allegedly outrageous conduct by Homecomings revolve

solely around Homecomings' "discretionary" decision to act within their rights under the

Note and Deed of Trust and foreclose on the Property.  See Second Amended Complaint ¶¶

47-50.  Furthermore, even if the foreclosure was improper (which it was not), courts have

found that wrongful foreclosure, without something more, is not sufficiently outrageous

conduct necessary to support this cause of action.  See Childs v. HSBC Mortg. Servs., Inc.,

No. 3:10-cv-0242, 2010 WL 3063724, at *6 (M.D. Tenn. Aug. 3, 2010) (holding that even

though the plaintiff stated a cause of action for wrongful foreclosure, the foreclosure did not

rise to the level of outrageous).  Thus, Homecomings' conduct was not outrageous as a

matter of law.

51.     Further, Ms. Martin has not and cannot allege that she suffered

"serious mental injury" as a result of Homecomings' actions.  First, Ms. Martin has alleged

only "pain and suffering," see Second Amended Complaint ¶ 50, which does not amount to

the requisite "serious mental injury."  Bain, 936 S.W.2d at 622 (emphasis added).  In

addition, there is nothing to suggest that Ms. Martin's alleged mental injury was sufficiently

serious to warrant liability by Homecomings under Tennessee law.  Secondly, there is a

causation issue. Ms. Martin admitted that she had stress in other areas of her life.

Therefore, she cannot show that any allegedly outrageous conduct by the Debtors was the

17

proximate cause of her purported injury.  In fact, Ms. Martin has freely admitted that, at the

time of the event at issue in this matter in 2008, she "was going through a divorce, [had

been] unemployed for an extended period of time and had other financial problems in

addition to the mortgage payment."  See Pl.'s Interrog. Resps. No. 10.  Given Ms. Martin's

admitted stressors in her life at the time, it is clear that she is unable to prove that her

alleged "pain and suffering" was the result of any conduct by Homecomings.  Therefore,

Ms. Martin's outrageous conduct claim fails as a matter of law.

> **5.    The TCPA does not apply to foreclosure activities.**

52.    Ms. Martin's TCPA claim should be dismissed because the TCPA does

not apply to repossession and collateral disposition activities by creditors, including

foreclosure activities, since those activities do not affect "trade or commerce" as defined by

the act.  See Pursell v. First Am. Nat'l Bank, 937 S.W.2d 838, 841-42 (Tenn. 1996)

(affirming dismissal of TCPA claim; holding that bank's actions in repossessing collateral

did not affect trade or commerce within meaning of the act); Davenport v. Bates, No.

M2005-02052-COA-R3-CV, 2006 WL 3627875, at *18-20 (Tenn. Ct. App. Dec. 12, 2006);

see also Hunter v. Wash. Mut. Bank, No. 2:08-CV-0069, 2008 WL 4206604, at *5-6 (E.D.

Tenn. Sep. 10, 2008) (granting bank's motion to dismiss TCPA claim based upon

foreclosure actions); Flynn v. GMAC Mortg., LLC, No. 3:11-cv-0416, 2011 WL 4708858,

at *2 (E.D. Tenn. Oct. 4, 2011) (same).  Therefore, because Ms. Martin's TCPA claim arises

solely out of the foreclosure activities, the claim fails as a matter of law.

> **6.    A Constructive Trust is Not Appropriate Here**

53.    In her sixth cause of action, Ms. Martin seeks the equitable remedy of

constructive trust on the Property and "transfer [ ] the remaining title in the Property to [Ms.

Martin]."  Second Amended Complaint ¶¶ 58-62.  This cause of action appears to be

18

directed only at non-Debtor defendants BONY and IBHC, however, for the sake of completeness, the Borrower Trust will address it here as well.

54.     A constructive trust may only be imposed "against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment or questionable means, … has obtained [an interest in property] which he ought not, in equity or in good conscience hold and enjoy." <u>Livesay v. Keaton</u>, 611 S.W.2d 581, 584 (Tenn. Ct. App. 1980).  As an initial matter, this remedy is not within the scope of remedies available to the Bankruptcy Court, as a constructive trust would transfer the Property away from IBHC, an entity that is not a party to these proceedings.  Further, "[a] constructive trust cannot be imposed against a party who receives property in good faith and without notice of an adverse claim." <u>Hubbard v. Hardeman County Bank</u>, 868 S.W.2d 656, 660 (Tenn. Ct. App. 1993) (citations omitted).

55.     The undisputed facts in this case make clear that the imposition of a constructive trust is inappropriate as a matter of law.  Ms. Martin has not and cannot show that Homecomings acted wrongfully or fraudulently in conducting the foreclosure proceedings.  Furthermore, the Property was sold to a third at the foreclosure sale in good faith and without notice of Ms. Martin's allegedly adverse claim.  Therefore, Ms. Martin's claim for a constructive trust fails as a matter of law and must be dismissed.

## CONCLUSION

WHEREFORE, the Borrower Trust respectfully requests entry of the Proposed Order granting the relief requested herein and such other and further relief as this Court may deem proper.

ny-1220746

Dated:  March 17, 2016
        New York, New York

/s/  Norman S. Rosenbaum
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett
MORRISON & FOERSTER LLP
250 West 55th St.
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the ResCap Borrower Claims Trust*

20