## __Exhibit 2__

**Lathrop Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------
                                                    )
In re:                                              )    Case No. 12-12020 (MG)
                                                    )
RESIDENTIAL CAPITAL, LLC, et al.,                   )    Chapter 11
                                                    )
                              Debtors.              )    Jointly Administered
                                                    )
---------------------------------------------------------------

**DECLARATION OF SARA LATHROP IN SUPPORT OF THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM NO. 1094 FILED BY HARRY W. MILLER III., AS COUNSEL FOR MARY MARTIN**

I, Sara Lathrop, hereby declare as follows:

1.       I serve as Senior Claims Analyst for the ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] confirmed in the above-captioned Chapter 11 Cases. During the Chapter 11 Cases, I served as Regulatory Compliance Manager and Loss Mitigation Manager in the loan servicing department of Residential Capital, LLC ("ResCap"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "Debtors"). I have been employed by affiliates of ResCap since June 2006. I began my association with ResCap in 2006 working as an associate in the Default Division of the loan servicing operation of GMAC Mortgage, LLC ("GMACM"). In 2008, I became a Default Quality Control Specialist, a position that I held until I became a Supervisor in the Default Division in 2009. In 2011, I then became a Supervisor in the Loss Mitigation Division of GMACM's loan servicing operation, and in February 2012, I became a Manager in that division. In this role, I oversaw GMACM associates in their efforts to

1

provide borrowers with loss mitigation options and assisted in the development of GMACM's

loss mitigation policies. In January of 2013, I became the Regulatory Compliance Manager for

ResCap. I became Senior Claims Analyst for ResCap in July 2013 and continued this role with

the ResCap Liquidating Trust (the "Liquidating Trust") in December 2013. In my current

position as Senior Claims Analyst to the Borrower Trust, among my other duties, I continue to

assist the Borrower Trust in connection with the claims reconciliation process.[1] I am authorized

to submit this declaration (the "Declaration") in support of the *ResCap Borrower Claims Trust's*

*Objection To Claim No. 1094 Filed by Harry W. Miller III, as Counsel for Mary Martin* (the

"Objection").[2]

      2.     Except as otherwise indicated, all facts set forth in this Declaration are

based upon my personal knowledge of the Debtors' operations, information learned from my

review of relevant documents and information I have received through my discussions with other

former members of the Debtors' management or other former employees of the Debtors, the

Liquidating Trust, and the Borrower Trust's professionals and consultants. If I were called upon

to testify, I could and would testify competently to the facts set forth in the Objection on that

basis.

      3.     In my current and former capacities as Senior Claims Analyst and Loss

Mitigation Manager to the Borrower Trust, the Liquidating Trust, and ResCap, I am intimately

familiar with the Debtors' claims reconciliation process. Except as otherwise indicated, all

statements in this Declaration are based upon my familiarity with the Debtors' Books and

Records kept in the course of their regularly conducted business activities (the "Books and

---

[1] The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Objection.

Records"), as well as the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or my review of relevant documents. I or Liquidating Trust personnel have reviewed and analyzed the proof of claim forms and supporting documentation filed by the Claimants. Since the Plan went effective and the Borrower Trust was established, I, along with members of the Liquidating Trust have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims, and determine the appropriate treatment of the same. In connection with such review and analysis, where applicable, I or Liquidating Trust personnel, together with professional advisors, have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (vi) the official claims register maintained in the Debtors' Chapter 11 Cases.

4.      The Debtors have taken steps in these Chapter 11 Cases to afford Borrowers who have filed proofs of claim additional protections, as set forth in the Borrower Claim Procedures approved by the Procedures Order. A Request Letter was sent to the Claimant and a response was received on July 26, 2013, attached hereto as Exhibit A.

5.      On August 30, 2002, non-Debtor Northwest Georgia Bank ("Northwest") originated a loan  (the "Loan") in the amount of $112,000 to Ms. Martin and her then husband, Michael Martin ("Mr. Martin", and with Ms. Martin, the "Martins"), evidenced by a note (the "Note") and secured by a deed of trust (the "Deed of Trust") on property located at 1021 Englewood Ave., Chattanooga, TN 37405 (the "Property"). Copies of the Note (with Allonge) and the Deed of Trust are attached hereto as Exhibit B and Exhibit C, respectively. Northwest sold the loan to non-Debtor Synovus Mortgage Corp.  Debtor, Residential Funding Company,

ny-1224601

LLC purchased the loan from Synovus Mortgage Corp. and transferred its interest when the loan was securitized on or about December 1, 2002 where JP Morgan Case Bank was appointed as Trustee.

6.      Homecomings serviced the Loan from October 3, 2002 until the Property was sold to a third-party in or around June 2008.

7.      The Martins defaulted on the Note as early as 2003.  <u>See</u> August 4, 2003 Breach Letter, attached hereto as <u>Exhibit D</u>.

8.      During the period that the Loan was being serviced, the Martins did not request that Mr. Martin be removed from the Note or the Deed of Trust.

9.      On February 22, 2008, Homecomings sent a letter to the Martins notifying them of their default and informing them of the full amount that needed to be paid within thirty days in order to cure the default. <u>See</u> February 22, 2008 Breach Letter, attached hereto as <u>Exhibit E</u>.

10.      The Martins failed to pay the amount due within thirty days.   <u>See</u> Servicing Notes, attached hereto as <u>Exhibit F</u>.

11.      On or about April 15, 2008, Homecomings sent the Martins a letter informing them that the foreclosure sale on the Property had been scheduled for May 15, 2008 and urging them to take action with respect to the loan.  <u>See</u> April 15, 2008 Letter, attached hereto as <u>Exhibit G</u>.

12.      On April 17, 2008, Homecomings returned a check from Ms. Martin because it was not sufficient to cure the default on the account (the "<u>First April Payment</u>").  <u>See</u> Servicing Notes at 24 of 40.

13.     On April 22, 2008, Homecomings approved the Martins for a repayment
agreement and a copy of the agreement was sent to them on May 2, 2008 to be executed (the
"Repayment Agreement").  See Servicing Notes at 18 of 40, see also Repayment Agreement,
attached to the Proof of Claim.   The Repayment Agreement stated that it was between both
Michael A. Martin and Mary Collette Martin.   See Repayment Agreement. As a result, it
required both of their signatures to be executed.

14.     Ms. Martin sent a payment of $2,766.96 via a cashier's check (the "May
Payment"), however, the check did not contain her account number or any other information
sufficient to identify her account.  Pursuant to Homecomings' business practice, upon receipt of
the unidentifiable check, on May 2, 2008, Homecomings returned the cashier's check to its
sender.  See Letter Returning Check, attached to the Thorsen Decl. as Exhibit D, see also
Servicing Notes at 18 of 40.

15.     The Martins also failed to provide a fully executed copy of the Repayment
Agreement to Homecomings.  Because the Martins failed to execute the Repayment Agreement,
Homecomings foreclosed on the Property on May 22, 2008, and the Property was purchased by
the investor.  See Servicing Notes at 16 of 40.

16.     On May 22, 2008, Homecomings received an email from Ms. Martin
indicating that she would be resending the returned May Payment to Homecomings.  See
Servicing Notes at 16 of 40.  On May 23, 2008, Homecomings received the cashier's check for
$2,766.96, along with the repayment agreement signed by Ms. Martin (but not Mr. Martin).

17.     Pursuant to the Debtors' business practices, the Repayment Agreement
could not be executed because Mr. Martin did not also sign the agreement.  Furthermore, because
the foreclosure sale had already been completed, Homecomings again returned the May

5

Payment, along with another payment of $1,383.48 that was also received after the foreclosure sale was completed.  <u>See</u> Servicing Notes at 12 of 40.

18.    On June 5, 2008, Homecomings put the sale of the Property on hold to allow time to investigate the returned checks.  <u>See</u> Servicing Notes at 11 of 40.  On June 10, 2008, Homecomings closed the investigation after confirming that the May Payment was returned because the loan number was not provided.  <u>See</u> Servicing Notes at 10 of 40.  The investigation also determined that a modification would not have been an option even if the Repayment Agreement had been executed, which was communicated to Ms. Martin during a phone conversation on June 11, 2008.  <u>See</u> <u>id</u>.

19.    The Property was subsequently sold to a non-Debtor third party in or around June 2008.  <u>See</u> Servicing Notes at 9 of 40.

20.     On information and belief, Ms. Martin continues to live in the Property.

21.    Throughout the course of the loan at issue the payments by the Martins were applied in the manner outlined in paragraph 2 of the Deed of Trust.


        Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  March 17, 2016


                                        /s/  Sara Lathrop
                                        Sara Lathrop
                                        Senior Claims Analyst for ResCap
                                        Liquidating Trust

## Exhibit A

# RESCAP

**MORRISON | FOERSTER**

Sent/Received

## Claim Information

JUL 26 2013

| Claim Number | 1094 | To US |
| --- | --- | --- |
| | | By |

**Basis of Claim**

Explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and, you **must** provide copies of any and all documentation that you believe supports the basis for your claim.

The basis of Ms. Martin's claim is in Breach of Contract, Bad Faith, Breach of Fiduciary Duty, Outrageous Conduct and Violation of the Tennessee Consumer Protection Act that allows for treble damages and attorney fees. The facts that support this claim are listed in detail in the attached complaint. Additionally, I have attached some of the exhibits to her complaint.

Basically, Ms. Martin had an agreement with the Debtor and consummated said agreement with timely payment. The Debtor held the payment and then returned the payment after they foreclosed on the property in direct breach of their agreement. Due to the loss of her property she has had to rent the property at a cost of $63,000.00 until she could repurchase the property for $118,000.00. The balance of her damages are in the form of punitive damages, treble damages and attorney fees.

**If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the following loan information, so that we can effectively search our records for information on your property and loan, and evaluate your claim.**

**Loan Number:** ███7927

**Address of property related to the above loan number:**
1021 Englewood Avenue

| City: | State: | ZIP Code: |
| --- | --- | --- |
| Chattanooga | Tennessee | 37405 |

Additional resources may be found at - http://www.kccllc.net/rescap

Residential Capital, LLC    P.O. Box 385220  Bloomington, MN  55438

Claim Number: 1094
HARRY W MILLER III ATT AT LAW
Type: POC

## IN THE CHANCERY COURT FOR
## HAMILTON COUNTY, TENNESSEE, AT CHATTANOOGA

|  |  |  |
|---|---|---|
| **MARY COLLETTE MARTIN,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 08-0439 |
| | ) | Jury Demand |
| **HOMECOMINGS FINANCIAL, LLC,** | ) | |
| **THE BANK OF NEW YORK TRUST** | ) | |
| **COMPANY, N.A. AS SUCCESSOR TO** | ) | |
| **JPMORGAN CHASE BANK N.A. AS** | ) | |
| **TRUSTEE, and MERS, INC.** | ) | |
| Defendants. | ) | |

### AMENDED AND SUBSTUTED COMPLAINT

COMES NOW the Plaintiff, Mary Collette Martin, by and through Counsel and would

show unto this Honorable Court as follows:

### I. PARTIES AND JURISDICTION

1.    Mary Collette Martin (Mary Martin) is a citizen and resident of Chattanooga, Hamilton

County, Tennessee.

2.    Homecomings Financial, LLC. (Homecomings) is a foreign corporation doing business

within Hamilton County, Tennessee.

3.    The Bank of New York Trust Company, N.A. (New York Bank) upon information and

belief a Foreign corporation doing business within Hamilton County, Tennessee and

acting as the Trustee of an undisclosed Specialized Purpose Entity.  Additionally, it is

reported to be a Successor in interest to JPMorgan Chase Bank N.A.

4.    The MERS, Inc. (MERS) upon information and belief a Foreign corporation doing

business within Hamilton County, Tennessee.

5.    This Court has jurisdiction over the subject matter of this litigation pursuant to Tennessee

Code Annotated ' 16-11-101 and 102 (a).

6.    This Court has *in personam* jurisdiction over Defendant Homecomings because it is

doing business in Hamilton County, Tennessee.

7.    This Court has *in personam* jurisdiction over Defendant New York Bank because it is

doing business and is the holder of real property in Hamilton County, Tennessee.

8.    This Court has *in personam* jurisdiction over Defendant MERS because it is doing

business in Hamilton County, Tennessee.

9.    Venue is proper in this Court pursuant to Tennessee Code Annotated ' 20-4-101 and 16-

11-114.

## II. FACTS

10.    The property upon which Mary Martin has owned and lived at since March 15, 1998 was

foreclosed upon on or about May 22, 2008.  Said property being commonly known as

1021 Englewood Avenue, Chattanooga, Tennessee 37405 (hereinafter referred to as

AProperty@). (See Exhibit "C")

11.    The Property has many unique and desirable features including, but not limited to (i) It is

a large house located on two lots;  (ii) it is limited as to neighbors; (iii) it was a family

property that she retained; and (iv) she retained substantial equity within said Property.

The advantage of the size and the road frontage of this Property is that it could potentially

be subdivided into two lots.

12.    In August 1992 Mary Martin married Michael A Martin.

2

13. That Mary Martin purchased the home in March of 1998. Said purchase being recorded in the Register=s Office for Hamilton County, Tennessee in Book GI 5251, Page 567, Instrument No. 1998122100371 some time later on December 21, 1998.

14. On August 30, 2002, Mary Martin and Michael A. Martin entered into a Deed of Trust for the purpose of refinancing the Property. MERS, on information and belief, through its wholly owned subsidiary Mortgage Registration Systems, Inc. (not registered to do business in Tennessee), is listed as nominee for Lender and beneficiary under the security agreement. The Deed of Trust was filed on September 13, 2002 in the Register=s Office for Hamilton County, Tennessee Book 6367, Page 27, Instrument No. 2002091300090. The amount of the mortgage note associated with this Deed of Trust was One Hundred Twelve Thousand Dollars ($112,000.00).

15. In August 2005 Mary Martin obtained a divorce from Michael A. Martin.

16. Homecomings was a undisclosed agent for New York Bank and/or MERS during the following negotiation and foreclosure.

17. In April 2008 Mary Martin entered into negotiations with Homecomings to enter into a Repayment Agreement ("Agreement").

18. Pursuant to the negotiations Mary Martin caused to be issued a Cashiers Check drawn on First Tennessee Bank in the amount of Two Thousand Seven Hundred Sixty-Six and 96/100 Dollars ($2,766.96) on April 25, 2008. (See Exhibit A) Said check was made payable and sent to Homecoming via overnight delivery and delivered on April 26, 2008.

19. On May 2, 2008 Homecomings issued the Agreement that states, in part, that:

    1)    a payment of $2,766.96 was to be paid by 4/28/08;

3

2)      a payment of $1,383.48 was to be paid by 5/28/08; and

3)      to "Please sign and return this agreement by 04/28/08." (Said date being prior to the document being ever issued by Homecomings) (See Exhibit B)

20.   MERS, as declared owner and holder of the note as secured by the Deed of Trust changed the Trustee of the Deed of Trust as set forth in the Appointment of Substitute Trustee as filed on May 13, 2008 in the Register=s Office for Hamilton County, Tennessee Book 8664, Page 547, Instrument No. 2008051300063.

21.   Mary Martin executed the document on May 18, 2008 and returned the Agreement to Homecomings.

22.   The Agreement stated that Homecomings was not going to execute the document until the aforementioned payment has been received.

23.   Pursuant to the Agreement Mary Martin caused to be issued a Cashiers Check drawn on First Tennessee Bank in the amount of One Thousand Three Hundred Eighty-three and 48/100 Dollars ($1,383.48) on May 27, 2008. (See Exhibit A)  Said check was made payable and sent to Homecoming via overnight delivery and delivered on May 27, 2008.

24.   Homecoming refused to accept either of the payments that they requested and instead chose to foreclose.

## III.  FIRST CAUSE OF ACTION B BREACH OF CONTRACT

25.   The allegations contained in paragraphs 1-24 are realleged and incorporated by this reference as if fully set forth herein.

26.   Defendants have breached the terms and conditions of the Deed of Trust and the Agreement by:

4

a) Foreclosing for non-payment of monthly payments when Homecomings created said default by refusing to accept payments;

b) Failing to notify Mary Martin of any recession of the Agreement;

c) Failing to properly apply the payments issued to Homecomings; and

d) Exercising a discretionary power in an arbitrary, capricious and knowingly harmful manner.

## IV.  SECOND CAUSE OF ACTION B BAD FAITH

27.  The allegations contained in paragraphs 1-24 are realleged and incorporated by this reference as if fully set forth herein.

28.  Defendants have acted in bad faith by:

a.  Foreclosing on a valuable property due to a default that they manufactured.

b.  Foreclosing on a valuable property while negotiating with Mary Martin.

## V.  THIRD CAUSE OF ACTION B BREACH OF FIDUCIARY DUTY

29.  The allegations contained in paragraphs 1-24 are realleged and incorporated by this reference as if fully set forth herein.

30.  As a result of the degree of control the Defendants possessed over Mary Martin, the Defendants owed a fiduciary duty to Mary Martin.

31.  As a result of the degree of control the Defendants exercised over the Deed of Trust Trustee, the Defendants owed a fiduciary duty to Mary Martin.

32.  As a result of the Principal/Agent relationship which existed between the Defendants and the Trustee, the Defendants owed a fiduciary duty to Mary Martin.

33.  The Defendants violated their fiduciary duty to Mary Martin by:

5

a.  Foreclosing for non-payment of monthly payments when Homecomings created said default by refusing to accept the negotiated payments.

b.  Failing to notify Mary Martin of any recession of the Agreement.

c.  Failing to properly apply the payments issued to Homecomings.

d.  Exercising a discretionary power in an arbitrary, capricious and knowingly harmful manner.

## VI. FOURTH CAUSE OF ACTION в OUTRAGEOUS CONDUCT OF HOMECOMINGS

34.  The allegations contained in paragraphs 1-24 are realleged and incorporated by this reference as if fully set forth herein.

35.  By its conduct as described herein, in flagrant disregard for the letter and spirit of the Loan, Deed of Trust and the Agreement, and in flagrant disregard for its contractual and fiduciary duties to Mary Martin, the Defendants engaged in conduct for its own financial benefit that was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency.

36.  The Defendants acted in total disregard for the readily foreseeable injury which would almost certainly befall the Plaintiff as a result of the Defendants' wrongful actions, i.e., actual and immediate financial losses coupled with pain and suffering in the form of anxiety, worry, humiliation, embarrassment, insomnia and headaches caused by the Defendants' conduct.

37.  The wrongful and outrageous actions of Defendants as described herein were willful, wanton, gross and intentional.

6

38.   As a direct and proximate result of the wrongful and outrageous actions of Defendants as

described herein, Mary Martin suffered actual and immediate financial losses coupled

with pain and suffering in the form of anxiety, worry, humiliation, embarrassment,

insomnia and headaches caused by Defendants' conduct.

## VII.  FIFTH CAUSE OF ACTION B TENNESSEE CONSUMER PROTECTION ACT

39.   The allegations contained in paragraphs 1-24 are realleged and incorporated by this

reference as if fully set forth herein.

40.   Pursuant to T.C.A. § 47-18-104(b)(27), Defendants dealt unfairly with Mary Martin by

the following acts including, but not limited to:

a.      Fraud in setting forth an Agreement whereby to forestall the foreclosure while

continuing to go forth with the foreclosure when Mary Martin was sending the

requested payments to the Defendants.

41.   As a result of these violations Mary Martin has incurred actual pecuniary loss in trying to

correct this wrongdoing and has otherwise suffered loss.

42.   Under the Tennessee Consumer Protection Act, a remedial law, it is unlawful to engage

in any other act or practice which is deceptive to the consumer or any other person.  See

T.C.A. § 47-18-104 (b)(27).

43.   Some or all of the Defendants are in violation of T.C.A. § 47-18-104, including, but not

limited to, T.C.A. §§ 47-18-104(b)(27).

44.   The Defendants have also failed to conduct their activities under a standard of good faith

and fair dealing.  Defendants unfairly used the specific facts and disparities in this case to

their advantage and to fit their purposes by negotiating with Mary Martin and holding her

7

payments on one hand and by foreclosing upon her on the other hand, thus confusing Mary Martin.

## VIII.  SIXTH CAUSE OF ACTION – CONSTRUCTIVE TRUST

45.   The allegations contained in paragraphs 1-24 are realleged and incorporated by this reference as if fully set forth herein.

46.   Because of its equitable obligations New York Bank has no right to transfer the Property to any other person or entity.

47.   New York Bank may transfer the Property to another party in an attempt to frustrate Mary Martin=s attempts to void or reform the sale of the Property under the Deed of Trust.

48.   This Court can, and should, create an equitable trust in the Property divesting New York Bank of equitable interest in the Property and transferring that equitable interest to Mary Martin.  This Court should then compel the transfer of the remaining title in the Property to Mary Martin.

49.   In the event New York Bank has already transferred the Property, this Court should allow Mary Martin to amend the Complaint to include the new holder of the title to the Property as a named party defendant.  In such case, this Court can, and should, then compel the transfer of the remaining title in the Property to Mary Martin.

## IX. DAMAGES

50.   The allegations contained in paragraphs 1-24 are realleged and incorporated by this reference as if fully set forth herein.

8

51.    Mary Martin is entitled to damages from the Defendants for breach of contract in a sum to

be determined by this Court.

52.    Mary Martin is entitled to damages from the Defendants for acting in bad faith in a sum

to be determined by this Court.

53.    Mary Martin is entitled to damages from the Defendants for breach of its fiduciary duty to

her in a sum to be determined by this Court.

54.    Mary Martin is entitled to damages from the Defendants for outrageous conduct in a sum

to be determined by this Court.

55.    Mary Martin is entitled to punitive damages from the Defendants in an amount necessary

to punish the Defendants for their actions and to deter the Defendants and others from

repeating such acts in the future.

56.    Mary Martin is entitled to damages as set forth in the Tennessee Consumer Protection

Act, including any exemplary damages, treble damages and attorney's fees.


## XI.  PRAYER FOR RELIEF

WHEREFORE AND ALL FOR WHICH having made her Complaint prays for the

following relief from this Court:

1.    That process be issued and served and that Defendants be compelled to

come forth and answer this Complaint;

2.    That a Jury of twelve be impaneled to try this cause;

3.    That Mary Martin obtain a Judgment against the Defendants for direct,

indirect, consequential and incidental damages from the Defendants for

9

breach of contract, acting in bad faith, breach of fiduciary duty, for

outrageous conduct and for violation of the Tennessee Consumer

Protection Act to include, but not limited to, treble damages and attorney

fees;

4.    That Mary Martin obtain a Judgment against the Defendants for punitive damages;

5.    That this Court issue a *Lien Les Pendens* in this action;

6.    That the sale of the Property be voided or reformed as to have the previous owners,

including Mary Martin, renamed as the owner of said Property;

7.    That Property be titled to the previous owners, including Mary Martin, as a result of the

Constructive Trust;  and

8.    Cost of this action to be charged against the Defendants and any other

general relief that this Honorable Court may deem necessary.


Respectfully submitted this 19th day of June 2008.


Harry W. Miller, III
Law Office of W. Thomas Bible, Jr.
Attorney for Plaintiff
7011 Shallowford Road
Suite 106
Chattanooga, Tennessee 37421
(423) 424-3116


THIS IS THE PLAINTIFFS FIRST REQUEST FOR EXTRAORDINARY RELIEF IN
THIS CASE

10

COST BOND

I hereby acknowledge and bind myself for the payment of all non-discretionary costs that may be adjudged herein against Mary C. Martin, the principal, in the event that the principal does not pay them.

Witness my hand this 19th day of June 2008.

_____
Harry W. Miller, III

## CERTIFICATE OF SERVICE

I, Harry W. Miller, III, do hereby certify that a true and exact copy of the foregoing Amended and Subtitled Complaint has been forwarded, via U.S. Post Office, to the following Defendants:

Homecomings Financial, LLC
c/o Corporation Service Company
2908 Poston Avenue
Nashville, Tennessee 37203

The Bank of New York Trust Company, N.A.
700 South Flower Street
Suite 200
Los Angeles, CA 90017

On this the 19th day of June 2008.

_____
Harry W. Miller, III

11

**recom**
IAC Company

5/2/2008

MICHAEL A MARTIN
MARY COLLETTE MARTIN
1021 ENGLEWOOD AVE
CHATTANOOGA TN 37405-2311

Re: Loan Number ████7927

    Property    1021 ENGLEWOOD AV
                CHATTANOOGA TN 37405

Dear MICHAEL A MARTIN and MARY COLLETTE MARTIN:

This Repayment Agreement, ('Agreement'), Made 5/2/2008, (the 'Effective Date'), between MICHAEL A
MARTIN and MARY COLLETTE MARTIN and Homecomings Financial, LLC, ('Lender') and amends and
supplements (1) the Mortgage, Deed of Trust to Secure Debt, (the 'Security Instrument'), dated 08/30/02 and (2)
the promissory note ('Note') bearing the same date as , and secured by, the Security Instrument which covers the
real and personal property described in the Security Instrument.

Borrower acknowledges that Lender is the legal holder and owner of the Note and Security Instrument and further
acknowledges that if Lender transfers the Note, as amended by this Agreement, the transferee shall be the
'Lender' as defined in this Agreement.

In consideration for the mutual promises and agreements exchanged, the parties hereto agree as follows,
(notwithstanding anything to the contrary in the Note or Security Instrument):

1.  Payments must be received on or before the due date of Agreement or this Agreement will be null and void.

2.  All payments must be mailed to:

        Homecomings Financial, LLC
        Attn: Payment Processing Center
        3451 Hammond Avenue
        Waterloo, IA  50702

3.  There presently remains an outstanding indebtedness to the Lender pursuant to a note (the 'Note') and
mortgage (the 'Mortgage') or equivalent Security Instrument executed on 08/30/02 in the original principal
amount of $112,000.00.

1094

4. Lender has instituted foreclosure proceedings against the property securing the indebtedness which will continue to be in full force and effect until the default described herein are cured except as otherwise provided in this agreement.

5. Lender agrees to suspend foreclosure activity on the delinquent account provided that you execute and return this Agreement and the initial payment toward the delinquency in the amount of $2766.96 no later than 04/28/08.

We will require you to make 2 payments at a modified payment amount. At the conclusion of the scheduled payments below, we will review your situation to determine the best option for resolving the remaining delinquency. Your payments are due and payable as follows:

| Date | Amount |
|------|--------|
| 04/28/08 | $ 2766.96 |
| 05/28/08 | $ 1383.48 |

**All payments remitted under this trial plan must be in the form of certified funds (cashier's check, money order, or Western Union Quick Collect)**

6. If a notice of a new or subsequent Bankruptcy is filed during the payments, this Agreement will automatically be voided.

7. We will honor the Agreement if all of the described conditions and requirements are met. If at any time you fail to comply with any of the above-described conditions and requirements, this Agreement will be considered null and void and will resume foreclosure.

Please sign and return this Agreement by 04/28/08.

If the Agreement is cancelled, terminated, or rescinded for any reason, funds remitted will not be refunded and the Loan Modification will not be processed. Any funds received will be applied to the loan.

It is expressly understood and agreed that the default is not cured or waived by acceptance of any monies paid hereunder.

If you should have any questions, please contact me at 1-800-799-9250.

Loan Modification Department

_____            _____            _Mary C Martin_            _5/12/08_
    MICHAEL A MARTIN                     Date              MARY COLLETTE MARTIN          Date

Upon receipt of the trial plan, we will also execute indicate our concurrence with this agreement.

_____           _____

*1094*

---

(upside-down check)

9740007  3 25 C

Corporate Controller

*Donna G. Keen*

Center # 1206

***** $2,766 DOLLARS AND 96 CENTS *****

************* $2,766.96

Pay to the Order of:    HOMECOMING FINANCIAL SERVICES

Remitter:    MARY MARTIN

CASHIER'S CHECK

Date: 04/25/2008

---

CASHIER'S CHECK

**FIRST TENNESSEE**

10542210
Date: 05/27/2008

Remitter:    Mary C. Martin

Pay to the Order of:    Homecomings Financial

************* $1,383.48

***** 1,383 DOLLARS AND 48 CENTS *****

*James F. Keen*

Corporate Controller

Center #    1202

3 25 C    9740007

*1094*

EXHIBIT "C"

Land in Hamilton County, Tennessee, as follows:

IN THE CITY OF CHATTANOOGA, HAMILTON COUNTY, TENNESSEE: Lots Nine (9) and Ten (10), Rainbow Circle, as shown by plat recorded in Plat Book 12, Page 26 of the Registers Office of Hamilton County, Tennessee. According to said plat and lots from one tract of ground fronting 134.3 feet on the Northeast line of Englewood Avenue, and extending back Northeastwardly to Southwest line of Lots 3, 4, 5 and 6 on which it has a footage of 130 feet; its Northwest line being 60.3 feet and its Southeast line being 91 feet in length.

Subject to water and sewer easement recorded in Book 799, Page 297, of the Registers Office of Hamilton County, Tennessee.

Subject to water and sewer easement recorded in Book 940, Page 177, of the Registers Office of Hamilton County, Tennessee.

Subject to Restrictions recorded in Book O, Vol. 23, Page 692, of the Registers Office of Hamilton County, Tennessee.

Subject to any governmental zoning and subdivision ordinances or regulations in effect thereon.

Being the same property conveyed to The bank of Anew York Turst Company, N.A. as successor to JPMorgan Chase Bank N.A. as Turstee by Trustee's Deed, dated May 22, 2008 and filed on June 2, 2008 in Register's Office for Hamilton County, Tennessee, instrument number 2008060200099; Book GI 8679, Page 545.

This is improved property known as 1021 Englewood Avenue, Chattanooga, Tennessee 37405.

*1094*

## Homecomings Financial
*A GMAC Company*
PO Box 205
Waterloo, IA 50704-0205

06/02/08

MICHAEL A MARTIN
MARY COLLETTE MARTIN
1021 ENGLEWOOD AVE

CHATTANOOGA        TN 37405-2311

RE:    Account Number        ████7927
       Property Address      1021 ENGLEWOOD AV

                            CHATTANOOGA        TN 37405

Dear    MICHAEL A MARTIN
        MARY COLLETTE MARTIN

Enclosed is check number checks in the amount of $4,150.44. These funds are being returned
as we can no longer accept funds on your account.

Your account was transferred to foreclosure on April 9, 2007, and the foreclosure sale was held
on May 22, 2008.

If you have any questions or concerns in regards to the foreclosure sale, please contact our
attorney at the following address:

        McCurdy and Candler
        250 East Ponce Day
        Suite 600
        Decatur GA 30030

Foreclosure Department
Loan Servicing

7:54

JUL-15-2008(TUE) 06:54    WAGNER NELSON WEEKS                    1094    P. 002/005



# LEASE AGREEMENT

THIS AGREEMENT, made this the 1st day of July, 2008, by and between Mary Collette Martin hereinafter referred to as LESSOR, and I Buy Houses Cash, Inc., hereinafter referred to as LESSEE:

1.    **PREMISES:** LESSOR leases to LESSEE 1031 Englewood Avenue, Chattanooga, Tennessee 37405.

2.    **TERM:** This is a month to month lease which is terminable either by the failure to pay rent according to the terms herein, or upon the termination of a Hamilton County Chancery Court case styled Mary Collette Martin v. The Homecomings Financial, LLC, et al. under Docket Number 08-0435.

3.    **AUTOMATIC RENEWAL:** At the end of the term, this lease shall be automatically renewed on a month to month basis, unless written notice of termination is given by either party at least 30 days before the end of the expiration date. LESSOR has the right to, upon thirty (30) days' notice after the expiration of the initial term, adjust the rent to the market rate.

4.    **RENT:** LESSEE agrees to pay rent of $1,450.00 to the LESSOR per month throughout the term of this lease.

5.    NOTICE OF TERMINATION OF TENANCY FOR NON-PAYMENT OF RENT IS HEREBY SPECIFICALLY WAIVED. Failure to pay rent by the 5th day of each month may result in the immediate issuance of an unlawful detainer warrant for the eviction of the tenant.

6.    **LATE PENALTY:** LESSEE agrees to pay a late penalty of ten percent (10%) of the total monthly rental which will be added if the rent is not received on or before the 5th day of each month, Saturdays, Sundays, and legal holidays excepted. Acceptance of late payment does not waive any rights of the LESSOR and habitual late payments may be grounds for termination of this lease.

7.    **SECURITY DEPOSIT:** LESSEE hereby deposits $-0- as a security deposit to be held by the LESSOR as long as the LESSEE occupies the leased premises. Said deposit is to be used by the LESSOR to apply toward payment of any damage to the apartment beyond ordinary wear and tear and damages resulting from non-performance of any conditions of this agreement by the LESSEE, including the payment of rent. Said deposit is to be forfeited to the LESSOR if LESSEE vacates the premises prior to the end of the first term without application to other unpaid balances.

8.    **USE OF PREMISES:** LESSEE shall maintain the leased premises in such condition and repair as accepted at the commencement of this lease and shall, on its termination, surrender the premises in the same condition and repair, ordinary wear and tear or unavoidable casualty, excepted. LESSEE shall not make any alterations, additions or improvements to the premises without the written consent of the LESSOR. These premises shall be used for residential purposes only. LESSEE shall not permit any objectionable noise or odors to escape from the unit or to permit or create a nuisance or to disturb any other resident in the building or in any way injure the reputation of the LESSOR or the building itself. LESSEE shall comply with all governmental health and police requirements and regulations respecting said premises.

1

JUL-15-2008(TUE) 06:54    WAGNER NELSON WEEKS                    1094    P. 003/005

9.    **TENANT DAMAGES**:  LESSEE acknowledges the receipt, in good condition, and agrees to keep the property in good condition, including general cleanliness and repair.  Upon vacating the property, the tenant agrees to pay for any damages to the property over and above normal wear and tear.  LESSEE agrees to pay LESSOR the actual costs incurred in making all repairs, including LESSOR'S actual time at $10.00 per hour for all general cleaning and repairs over and above those normally spent to put the property into rentable condition.

10.    **CASUALTY**:  LESSEE is fully responsible for any insurance on personal property contained within the dwelling and LESSOR shall not be liable for damages to persons or property injured while within the premises.  LESSOR does not provide fire and casualty insurance for the LESSEE'S personal property.  In the event of a fire or other casualty, the LESSEE should notify the landlord within fourteen (14) days of his intention to terminate the rental agreement in writing.

11.    **SAFETY AND SECURITY**:  LESSEE states that he has inspected the premises and has determined to his satisfaction that the smoke detector, door locks and latches, window locks and latches, and any other security devices within the unit are adequate and in proper working order.  LESSEE acknowledges that the LESSOR is under no duty to inspect, test or repair any security device unless and until the LESSOR has received written notice from the LESSEE to do so.  LESSOR assumes no responsibility for the security of the dwelling place or the occupants therein and LESSEE further acknowledges and understands that neither the LESSOR nor the owner of the property nor the agent or their agents guarantee, warrant or secure personal security of the LESSEE.

12.    **DEFAULT**:

        (a)    IN THE PAYMENT OF RENT:  In the event the tenant fails to pay rent by the 5th of the month, the landlord has the right to seek immediate recovery of possession of the property without additional notice to the tenant.

        (b)    Upon the failure of the tenant to comply with any notice sent by the landlord regarding compliance with the terms of this agreement, with the rules and regulations attached to this unit, or other governmental laws or regulations, the tenant will be given a specified period of time to vacate the property or be subject to eviction.

13.    **ATTORNEY'S FEES**:  LESSEE agrees to pay LESSOR'S reasonable attorney's fees associated with the enforcement of this agreement and recognizes that such fees amount to one-third (1/3) of any balances owed unless otherwise designated.  LESSEE agrees to pay all reasonable costs of collection, including private process fees charged by private process servers employed for the purpose of effecting relief herein.  The parties agree to pay reasonable attorney's fees to the prevailing party for any action initiated as a result of a violation of this lease.

14.    **RIGHT TO INSPECT DURING LEASE TERM**:  LESSOR or its agents may, at all reasonable times, enter the leased premises to make repairs, examine and inspect them.  LESSEE specifically consents to such entrance upon twenty-four (24) hour's notice by the LESSOR posted on the door of the premises.

15.    **RIGHT TO INSPECT AT TERMINATION**:  LESSEE specifically waives his right of inspection of the property at the conclusion of his tenancy and waives his right to receive notice of scheduling a mutual inspection of the subject premises, as provided in T.C.A. §66-28-301(b)(2).

16.    **REPAIRS**:  All repairs are the full responsibility of the LESSEE who agrees to maintain the premises in the condition that existed at the outset of the tenancy, normal wear and tear excepted.

2

17.   **ABANDONMENT:** The LESSEE must notify the LESSOR of any anticipated extended absence
from the premises in excess of seven (7) days. Notice shall be given on or before the first day of
an extended absence in writing. Should tenant fail to notify landlord, the landlord shall be
authorized to enter the unit to inspect it and if it appears the tenant has vacated the unit, the
landlord shall have the right to declare the property abandoned, post notice and take possession
pursuant to state law.

18.   **UTILITIES:** The tenant is responsible for paying for all utilities. If the tenant
fails to place utility services in his name within ten (10) days of occupancy, the landlord may
discontinue services as authorized by state law. No additional notice to the tenant will be given.
LESSOR is only authorized to discontinue service where such service is not voluntarily provided to
the tenant, by Lessor, as part of the original lease agreement.

19.   **PETS:** No pets are allowed, without prior written approval of the LESSOR. LESSEE is
fully responsible for all damages caused by the pet to the property.

~~20.   RULES AND REGULATIONS:   All rules and regulations are incorporated herein by
reference and made a part hereof.~~

21.   **NOTICES:** Any notices required to be served upon the tenant may be served by
conventional mail, or delivered to the tenant at the leased premises, or may be posted on the front
door of the apartment. Any notices to be delivered to the LESSOR or his agent should be sent to the
following address:   I Buy Houses Cash, Inc., c/o Jerry Lee, P. O. Box 4186, Chattanooga, Tennessee
37405.

22.   **FAILURE TO VACATE AFTER TERMINATION OF TENANCY BY EITHER PARTY.** Upon receipt of
written notice by the LESSEE, or the acceptance of written notice from the LESSEE by the LESSOR of
the intent of the LESSEE to vacate the unit, LESSEE agrees to so vacate unless the parties agree in
writing to vacate the termination notice. In the event the LESSEE holds over beyond the designated
termination date, he agrees to pay two (2) times the normal rent for the subsequent period in
addition to the costs and attorney's fees as set forth herein in addition to the costs and
attorney's fees which the LESSOR may be forced to incur.

23.   **OCCUPANTS:** All adult occupants of the premises are required to qualify as tenants
and sign this Lease Agreement.

24.   **ACKNOWLEDGMENT:** LESSEE hereby acknowledges that he/she has read this agreement,
the rental application and the rules and regulations. LESSEE understands that the rules and
regulations may be amended from time to time and are for the purpose of protecting the premises and
providing for the safety and well-being of the occupants and the premises and affirms that the
LESSEE will, in all respects, comply with the terms and provisions of this Agreement.

25.   **RADON GAS DISCLOSURE:** As required by law, Landlord makes the following disclosure:
"Radon Gas" is a naturally occurring radioactive gas that, when it has accumulated in a building in
sufficient quantities, may present health risks to persons who are exposed to it over time. Levels
of radon that exceed federal and state guidelines have been found in buildings in   N/A.   Additional
information regarding radon and radon testing may be obtained from your county public health unit.

26.   **LEAD PAINT DISCLOSURE:** "Housing built before 1978 may contain lead-based paint,
paint chips and dust can pose health hazards if not managed properly. Lead exposure is especially

3

harmful to young children and pregnant women.   Before renting pre-1978 housing, lessors must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention".

27.   The parties acknowledge that the pending Chancery Court Action referred to above involves the determination of title and that the execution of this Lease does not in any way acknowledge or determine the validity of the matters litigated in the Chancery Court action set forth above under Docket No. 08-0439, In the Chancery Court of Hamilton County, Tennessee.

IN WITNESS WHEREOF, the parties have executed this Agreement on the date and day first above written.

LESSOR: _____
SSN: _____


LESSEE: _____
SSN: _____



LESSOR: _____

_____

LESSOR'S ADDRESS: _____

_____

_____


THIS LEASE PREPARED BY:
WAGNER, NELSON & WEEKS
701 MARKET STREET, SUITE 1418
CHATTANOOGA, TN  37402
(423) 266-0816


4

Instrument: 201204500116
Book and Page: GI 9628 887
MORTGAGE TAX $133.40
MISC RECORDING FEE $25.00
DATA PROCESSING FEE $2.00
PROBATE FEE: $1.00
Total Fees: $161.40
User: RHS
Date: 4/25/2012
Time: 12:05:36 PM
Contact: Pam Hurst, Register
Hamilton County, Tennessee

Tax ID: 127I-D-005
Grantee address: Mary Martin,
1021 Englewood Ave, Chattanooga, TN 37405
Maximum principal indebtedness for Tennessee recording tax purposes is $118,000.00

File: First Title
12-15530

## CONTRACT FOR DEED

SELLER: _____ I BUY HOUSES CASH, INC. _____
BUYER: _____ MARY MARTIN _____

BUYER hereby agrees to purchase and SELLER hereby agrees to sell the following described tract or parcel of property: _____ 1021 ENGLEWOOD AVE, CHATTANOOGA, TN 37405 _____ for the amounts and on the terms set forth herein below.

1. **PURCHASE PRICE:** Buyer will pay $118,000.00 for said real estate, payable as follows:

   A. **DOWN PAYMENT:** The sum of $ _0.00_ paid to SELLER on the date hereof, receipt of which is hereby acknowledged by SELLER; plus

   B. **PURCHASE MONEY LOAN:** in an amount of $118,000.00 which shall bear interest at a rate of _7.25_ % per annum and be paid in Thirty six (36) equal monthly installments of $932.64, beginning on the _5TH_ day of April, 2012, to be applied first to interest and then to principal, with all outstanding principal and interest thereon due and payable on _the 30th day of_ _March, 2015_ ( the "Maturity Date" )

   C. **PREPAYMENT:** There will be no prepayment penalty.

   D. **LATE CHARGE:** None

2. **ITEMS THAT REMAIN** with the property at no additional cost to BUYER: Buyer currently resides in the premises.

3. **OTHER STIPULATIONS** to this Contract :None This contract shall be subordinate to any Mortgage loan or Deed of Trust that Seller shall cause to be executed against this property.

4. **POSSESSION:** Possession of the property shall be delivered to BUYER on the date hereof. Right to possession shall cease and buyer shall peaceably deliver possession to Seller upon any default and the expiration of notice as set forth in para. 8 hereunder.

5. **PROPERTY INSPECTION:** SELLER warrants that it owns, and hereby agrees to sell, all fixtures and equipment attached to the property. Seller has never resided at the premises and makes no warranty or representation as to any "mechanical equipment" or its condition, or any condition of the property. Property is sold as is, where is, no warranty of habitability is given, implied or otherwise, and is hereby accepted by the BUYER in its present condition. For purposes of this paragraph, the term

Prepared by First Title Ins. Co
1303 Carter St. Chattanooga, TN 37402

"mechanical equipment" includes the electrical systems, septic systems, all
appliances, plumbing system (including the water heater), and the heating
and cooling units, attached to the property. BUYER hereby waives any
right to further inspections of the property, such having already been
thoroughly inspected by BUYER. BUYER will be responsible for all future
maintenance and repairs, no alterations without the prior written consent of
SELLER.

6.    **SELLER'S DISCLOSURE:** no disclosure will be done by
Seller, Buyer currently resides in premises, Seller has never lived there and
has no knowledge of property condition. Property sold "as is" "where is".
See Number 5 above.

7.  .  **RISK OF LOSS: BUYER** assumes all risk of loss or damage
to the property by fire, windstorm, or other casualty. In addition to the
monthly payment to the SELLER the BUYER shall pay to the SELLER the
additional sum of $86.00 per month for property insurance on the property
within this contract. In consideration of said payments the SELLER shall
upon any insured pay all of the proceeds from any claim to the BUYER for
the purpose of repair or replacement of said loss. In the event of a total loss
of the property the first proceeds shall be first used to pay any balance of
this land contract and the balance shall be paid to the BUYER. The
minimum amount of insurance to be covered upon this property is
$208,400.00.

8.    **DEFAULT:** Should BUYER fail to make the monthly
payments on the Purchase Money Loan described above in a timely manner
and on the due date, or should any insurance premium go unpaid, or
property taxes not be paid by December 31st of the current tax year, and
such payments continue to be delinquent ten (10) days after written notice
thereof is sent to BUYER from SELLER, this Agreement shall be deemed
terminated and BUYER shall thereafter have no rights or claims hereunder,
against SELLER or against the Property. BUYER'S right of occupancy shall
cease upon any default and expiration of 10 days written notice.

It is further agreed between the parties that if the BUYER shall make
default in paying any of the sums of money and shall be in default for a
period of ten (10) days, after notice to the BUYER and her attorney (Harry
Miller, Law Office of W. Thomas Bible, Jr., 6918 Shallowford Road, Suite
100, Chattanooga, Tennessee 37421) as herein stipulated to be paid to the
SELLER at the time and in the manner above agreed, then this agreement, at
the option of the SELLER shall be terminated and the SELLER shall, at
will, have the right to re-enter upon said land to take and to hold possession
thereof, free of all right, equity of lien or claim on the BUYER, her heirs or

Book and Page: GI 9628 889

representatives. Said termination shall be accomplished by the SELLER
recording a cancellation notice in the Register's Office of Hamilton County,
Tennessee, which will be conclusive evidence of said cancellation.

9.   COMMISSION: BUYER and SELLER each hereby warrant
and confirm the neither has retained the services of any real estate agent or
broker relative to this transaction, except _____ none _____ who will be
paid $_____ 0.00 _____ at Closing. Each party hereto agrees to indemnify
and save the other harmless (including the costs of any attorney's services)
from any incorrect statement in this Land Sales Contract.

10.   PRORATIONS AND EXPENSES: Except as provided
herein, the property taxes for the year 2012 will not be prorated between
BUYER and SELLER as of the date hereof. All prior unpaid taxes or liens
have been paid by SELLER. BUYER will pay taxes for the tax year 2012
and all future taxes by December 31st of the current tax year. Failure to do
so shall be considered a default hereunder.

11.   WARRANTY OF TITLE: Upon payment of all amounts due
under the Purchase Money Loan described above, SELLER shall convey the
Property, with all improvements thereon, to BUYER by special warranty
deed subject only to existing zoning ordinances and to any recorded
restrictions, covenants and easements applicable to the property.

12.   EQUAL HOUSING: THIS PROPERTY IS BEING SOLD
WITHOUT REGARD TO RACE, COLOR, RELIGION, SEX,
HANDICAP, FAMILIAL STATUS, OR NATIONAL ORIGIN.

13.   PLURALS AND SINGULAR: Plurals used herein are to be
read in the singular where appropriate, if Purchaser and/or SELLER consists
of one person or entity.

14.   THIS AGREEMENT IS THE ENTIRE AGREEMENT
BETWEEN THE PARTIES AND THERE ARE NO OTHER
REPRESENTATIONS OR WARRANTIES OTHER THAN THOSE
EXPRESSED IN WRITING AND SIGNED BY ALL PARTIES.

15.   ASSIGNMENT: BUYER shall not sell or assign this contract,
or any interest therein, without written consent of SELLER.

16.   DISCLAIMER: This instrument was prepared with
information furnished by the parties involved and the preparer makes no
representation as to the accuracy of information or to the status of the title.

17.    TIME BEING OF THE ESSENCE. Book and Page: 61  9628  890

Signed this the _10th_ day of April, 2012.

SELLER:                                    BUYER:
I BUY HOUSES CASH, INC.

By: _____                      _____
JERRY LAW, PRESIDENT                      MARY MARTIN

STATE OF Tennessee

COUNTY OF Hamilton

On this _10th_ day of   April , **2012**, before me personally appeared
MARY MARTIN, to me known (or proved to me on the basis of
satisfactory evidence) to be the persons described in and who executed the
foregoing instrument and acknowledged that she executed the same as her
free act and deed.

_5 - 9 - 2012_
My commission expires:              NOTARY PUBLIC

STATE OF Tennessee

COUNTY OF Hamilton

   On this the _10th_ day of April, **2012**, before me personally appeared
Jerry Law_, with whom I am personally acquainted, and who upon oath,
acknowledged herself/himself to be the ___President___ of  I Buy Houses
Cash, Inc._, the within named bargainor, a Corporation, and that he as such
President, being authorized so to do, executed the foregoing instrument for
the purpose therein contained, by signing the name of the Corporation by
himself as such President.

_5-9-2012_
My Commission Expires:              Notary Public

*1094*

Book and Page: 81  9628  891

12-15500

EXHIBIT "A"

IN THE CITY OF CHATTANOOGA, HAMILTON COUNTY,
TENNESSEE:

Lots Nine (9) and Ten (10), Rainbow Circle, as shown by plat recorded in
Plat Book 12, Page 26, in the Register's Office of Hamilton County,
Tennessee. According to said plat lots form one tract of ground fronting
134.3 feet on the Northeast line of Englewood Avenue, and extending back
Northeastwardly to the Southwest line of Lots Three (3), Four (4), Five (5)
and Six (6) on which it has a footage of 130 feet; its Northwest line being
60.3 feet and its Southeast line being 91 feet in length.

For prior title and last instrument of record affecting the above described
property, see deed recorded in Deed Book 8692, Page 744, in said Register's
Office of Hamilton County, Tennessee.

SUBJECT TO any governmental zoning and subdivision ordinances and
regulations in effect thereon.
SUBJECT TO Water and Sewer Easement recorded in Book 799, Page 297,
in said Register's Office.
SUBJECT TO Water and Sewer Easement reserved in Book 940, Page 177,
in said Register's Office.
SUBJECT TO Restrictions recorded in Book O, Vol. 23, Page 692, in said
Register's Office.



Law Office of W. Thomas Bible, Jr.

6918 Shallowford Road, Suite 100
Victorian Gardens Complex
Chattanooga, TN 37421

Residential Capital, LLC
PO Box 385220
Bloomington, Minnesota 55438

## Exhibit B



# NOTE

MIN# ███████7383-0

August 30, 2002                    RINGGOLD                    GEORGIA
   [Date]                          [City]                      [State]

1021 ENGLEWOOD AV.CHATTANOOGA,TN 37405
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $112,000.00    (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is NORTHWEST GEORGIA BANK

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of    10.0000    %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.
I will make my monthly payment on the    1st    day of each month beginning on    October 1, 2002    . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If, on    September 1, 2032    , I still owe amounts under this Note, I will pay those amounts in full on
that date, which is called the "Maturity Date."
I will make my monthly payments at 5063 ALABAMA HIGHWAY, RINGGOLD, GA 30736
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $982.88    .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my
monthly payment unless the Note Holder agrees in writing to those changes.

MIN ███████████    ███383                                                    0

**MULTISTATE FIXED RATE NOTE**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

®  -5N (0005)    MW 05/00    **Form 3200 1/01**
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3    Initials:





## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.0000    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these things, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

 106MARTIN█383

 383

Form 3200
Initials



## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
MICHAEL A MARTIN                -Borrower

_____ (Seal)
MARY COLLETTE MARTIN           -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

WITHOUT RECOURSE
PAY TO THE ORDER OF

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

SYNOVUS MORTGAGE CORP.

_____ (Seal)
BY: DENNIS SUNDERLAND           -Borrower
ITS: ASST. VICE PRESIDENT

_____ (Seal)
                               -Borrower

*[Sign Original Only]*

106MARTIN ▮ 383                    ▮383

SEP-11-2002 WED 09:13 AM                    FAX NO.                    P. 02/02

## ALLONGE TO NOTE

This Allonge is attached to and incorporated into that certain Note dated **August 30, 2002** from

**Michael A. Martin and Mary Collette Martin** to **Northwest Georgia Bank** in the amount of **$112,000.00**.

Without Recourse pay to the order of **Synovus Mortgage Corp.**

By: MIKE CLOUD
Its:VICE PRESIDENT

**<u>Exhibit C</u>**

*8095461*

Return To:

NW GEORGIA LAND TITLE

NW GEORGIA LAND TITLE
CO., INC.
7749 NASHVILLE STREET
RINGGOLD, GEORGIA 30736

Prepared By:

SAme

Instrument: 2002091300090
Book and Page: GI  6367  27
D T Recording Fee              $85.00
Data Processing F               $2.00
Mortgage Tax                  $126.50
Probate Fee                     $1.00
Total Fees:                   $214.50
User: KSPRUIELL
Date: 13-SEP-2002
Time: 09:07:44 A
Contact: Pam Hurst, Register
Hamilton County Tennessee

The Maximum Principal Indebtedness for Tennessee recording tax purposes is $ 112,000.00 .

———————————————[Space Above This Line For Recording Data]———————————————

# DEED OF TRUST

MIN ▮▮▮▮▮▮▮▮▮▮

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated      August 30, 2002
together with all Riders to this document.
**(B) "Borrower"** is MICHAEL A MARTIN and MARY COLLETTE MARTIN, HUSBAND AND WIFE

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is NORTHWEST GEORGIA BANK

Lender is a CORPORATION
organized and existing under the laws of                     GEORGIA

106MARTI▮▮383            ▮▮383                                    0
TENNESSEE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3043  1/01

VMP®  -6A(TN) (0005).01     MW 05/00.02
Page 1 of 15               Initials
VMP MORTGAGE FORMS - (800)521-7291

Book and Page: GI 6367 28

Lender's address is 5063 ALABAMA HIGHWAY, RINGGOLD, GA 30736

(D) "Trustee" is C. ChADD Younge

a resident of _____, Tennessee.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-20216, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated August 30, 2002.
The Note states that Borrower owes Lender One Hundred Twelve Thousand and no/100

Dollars
(U.S. $ 112,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than September 1, 2032. The maximum principal indebtedness for Tennessee recording tax purposes is $ 112,000.00.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider   ☐ Condominium Rider         ☐ Second Home Rider
☐ Balloon Rider           ☐ Planned Unit Development Rider  ☐ 1-4 Family Rider
☐ VA Rider                ☐ Biweekly Payment Rider    ☒ Other(s) [specify] Waiver of
                                                       Borrower's Rights and Closing Attorney's Affidavit

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

██06MARTIN██7383            ██383                  Initials: _____            0

MP -6A(TN) (0005).01          Page 2 of 15                              Form 3043  1/01

Book and Page: GI 6367  29

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.
(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or
not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's
successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to
Lender: (a) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (b)
the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For
this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the
following described property located in the

REGISTER OF DEEDS          of          HAMILTON COUNTY          :
[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]


SEE ATTACHED EXHIBIT "A"


Derivation Clause
The instrument constituting the source of the Borrower's interest in the foregoing described
property was a    Warranty Deed    recorded   in Book  5251, page 567
in the Register's Office of HAMILTON                    County, Tennessee.
Parcel ID Number: 1271-D-005                    which currently has the address of
1021 ENGLEWOOD AV                                                            [Street]
CHATTANOOGA                    [City] , Tennessee    37405   [Zip Code]
("Property Address"):

TO HAVE AND TO HOLD, the aforedescribed property, together with all the hereditaments and
appurtenances thereunto belonging to, or in anywise appertaining, unto the Trustee, its successors in trust
and assigns, in fee simple forever. Borrower understands and agrees that MERS holds only legal title to the
interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom,
MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of
those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any
action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

106MARTIN    383          383                    Initials          0

VMP -6A(TN) (0051).01          Page 3 of 15                    Form 3043  1/01

Book and Page: GI  6367  30

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due

106MARTI█████383                      █████383                                              0

WMP -6A(TN) (00051.01)                Page 4 of 15                                        Form 3043  1/01

Book and Page: GI 6367 31

for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

106MARTI 383 383 0

-6A(TN) (0005).01 Page 5 of 15 Form 3043 1/01

Book and Page: GI 6367 32

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the

106MART1 [redacted] 383                           383                                           0

 -6A(TN) (0005).01                    Page 6 of 15            Initials: [signature]            Form 3043   1/01

Book and Page: GI 6367 33

work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there

106MARTI ██7383                          ██383                                                    0

██ -6A(TN) (0008) 01                    Page 7 of 15                    Initials: ██          Form 3043  1/01

Book and Page: GI  6367  34

is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

106MARTI ███383                    ███383                                        0

VMP -6A(TN) (0005).01                    Page 8 of 15          Initials ▢        Form 3043  1/01

Book and Page: GI 6367 35

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's jud▓▓▓nt, could result in forfeiture of the Property or other material impairment of Lender's interest in th▓▓▓operty or rights under this Sec▓▓▓Instrument. Borrower can cure such a default and, if

106MARTIN▓▓383 ▓▓383 0

Book and Page: GI  6367  36

acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure.

Book and Page: GI  6367  37

There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.



Book and Page: GI  6367  38

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of

106MARTI▓▓7383                    ▓383              Initial _____              0
VMP ®-6A(TN) (0305).01                    Page 12 of 15                    Form 3043   1/01

Book and Page: GI  6367  39

release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Trustee shall give notice of sale by public advertisement in the county in which the Property is located for the time and in the manner provided by Applicable Law, and Lender or Trustee shall mail a copy of the notice of sale to Borrower in the manner provided in Section 15. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and under the terms designated in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant at will of the purchaser and hereby agrees to pay the purchaser the reasonable rental value of the Property after sale.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Waivers.** Borrower waives all right of homestead, equity of redemption, statutory right of redemption and relinquishes all other rights and exemptions of every kind, including, but not limited to, a statutory right to an elective share in the Property.

106MARTIN███383                    ███383                                        0

Book and Page: GI 6367 40

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has executed this Security Instrument.

Witnesses:

_____ (Seal)
                                         -Borrower
MICHAEL A MARTIN

Comm. exp.
5/28/04

_____ (Seal)
                                         -Borrower
MARY COLLETTE MARTIN

_____ (Seal)          _____ (Seal)
              -Borrower                               -Borrower

_____ (Seal)          _____ (Seal)
              -Borrower                               -Borrower

_____ (Seal)          _____ (Seal)
              -Borrower                               -Borrower

106MARTI██7383            383            0

████-6A(TN) (0C05).01            Page 14 of 15            Form 3043  1/01

Identifier: 7927 Doc Type:MTGR

GEORGIA

GEORGIA

**STATE OF** ~~TENNESSEE,~~ Carousi

Book and Page: GI 6367 44

Book and Page: GI 6367 41

County ss:

On this ____ day of ____ , before me personally appeared

MICHAEL A MARTIN and MARY COLLETTE MARTIN

to me known to be the person(s) described in and who executed the foregoing instrument, and who acknowledged the execution of the same to be his/her/their free act and deed. Witness my hand and official seal.

August 30, 2002

My Commission Expires: ~~March 22, 3797~~

Notary Public

Comm. exp.
5/28/04

106MARTI 7383                    383                                                    0

VMP -6A(TN) (0009).01                    Page 15 of 18                    Form 3043 1/01

File No. 11437

Book and Page: GI 6367 42

EXHIBIT "A"

EXHIBIT "A"

IN THE CITY OF CHATTANOOGA, HAMILTON COUNTY, TENNESSEE: Lots Nine (9) and
Ten (10), Rainbow Circle, as shown by plat recorded in Plat Book 12, page 26 of the
Register's Office of Hamilton County, Tennessee. According to said plat said lots from one
tract of ground fronting 134.3 feet on the Northeast line of Englewood Avenue, and
extending back Northeastwardly to the Southwest Line of Lots 3,4,5 and 6 on which it has a
footage of 130 feet; its Northwest line being 60.3 feet and its Southeast line being 91 feet
in length.

Subject to water and sewer easement recorded in Book 799, Page 297, of the Register's
Office of Hamilton County, Tennessee.

Subject to water and sewer easement reserved in Book 940, Page 177, of the Register's
Office of Hamilton County, Tennessee.

Subject to Restrictions recorded in Book O Vol. 23, Page 692 of the Register's Office of
Hamilton County, Tennessee.

Subject to any governmental zoning and subdivision ordinances or regulations in effect
thereon.

For prior title see Book 5251, page 567 in the Register's Office of Hamilton County,
Tennessee.

GEORGIA    LOAN #: ████

GRANTOR:    MARY COLLETTE MARTIN and MICHAEL A. MARTIN

LENDER:    NORTHWEST GEORGIA BANK

LENDER:    NORTHWEST GEORGIA BANK

DATE OF SECURITY DEED:    August 30, 2002    Book and Page: GI 6367 43

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED-FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, sealed and delivered
in the presence of

_____    _____ (SEAL)
MARY COLLETTE MARTIN - Grantor

_____ (SEAL)
MICHAEL A. MARTIN - Grantor

_____ (SEAL)
- Grantor

### CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who having been first duly sworn according to law, on his oath as follows:

Prior to closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of Borrower's Rights" by the Borrowers, I reviewed with and explained to the Borrowers the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrowers of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrowers of Borrower's rights. After said review with and explanation to Borrowers, Borrowers executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based upon the review with and explanation to the Borrowers, it is my opinion that Borrowers knowingly, intentionally and willingly executed the waiver of the aforesaid constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me on the date set forth above.

_____
Closing Attorney

### FORECLOSURE CLOSING DISCLOSURE

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

_____    _____
MARY COLLETTE MARTIN    MICHAEL A. MARTIN

STATE OF TENNESSEE

COUNTY OF HAMILTON

I, PAMELA HURST, Register of Deeds for Hamilton County, Tennessee, do hereby certify that the foregoing is a true and correct copy of DEED OF TRUST from MICHAEL A MARTIN AND MARY COLLETTE MARTIN A/K/A MARY C MARTIN to NORTHWEST GEORGIA BANK filed for registration SEPTEMBER 13, 2002 at 9:07 AM, as same appears of record in Book GI 6367 Page 27 of said Register's Office

WITNESS my hand at office in Chattanooga, Tennessee, 20TH day of NOVEMBER 2002.

PAMELA HURST, REGISTER

By _Anna Wright_____



## Exhibit D

DATE: **August 04, 2003**

**mary C Martin**

RE: Loan Number:  ████**7927**

<u>NOTICE OF RIGHTS</u>

Because the current payment owing on your account became due on **July 01, 2003**, under the terms of the promissory note that you signed, your loan is in default.  The amount due as of the date of this letter is $ **2495.30**.  Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater.  Hence, if you pay the amount shown in this paragraph, an adjustment may be necessary after we receive your payment, in which event we will inform you before depositing your payment.  If you are in doubt as to the amount necessary to cure the default, you should contact us when you are ready to pay the overdue amount.  You have until September 03, 2003, 30 days from the date of this letter, to pay the overdue amount.  If you pay the amount owed by this date, your loan will be reinstated and the default cured.

In the event that you remit some amount less than the overdue amount then owing, we may accept it as partial payment of the delinquency, but you should be aware that such acceptance by us will not cure the default, nor will it affect in any way our ability to accelerate your loan and commence foreclosure proceedings**.**

If you do not cure the default by the date specified in the preceding paragraph, we can exercise our rights under the law, which may include acceleration of all sums due under your loan, initiation of foreclosure proceedings, and subsequent sale of your property under the terms of the security instrument securing your loan.   We are entitled to collect all expenses that we incur in pursuing these remedies, including but not limited to reasonable attorneys fees and costs, trustee's fees, and expenses pertaining to documentary evidence, abstracts and title reports.   If your loan is accelerated, you may have the right to reinstate your loan after acceleration.  You have the right to assert in the foreclosure proceeding, and/or the right to bring a court action to assert, the non-existence of a default or any other defense you may have to the acceleration of the loan and sale of your property.

We are committed to working with you to resolve this matter.  A Homecomings Loan Counselor may be able to provide assistance, and can be reached at the number below.  If you are in need of financial advice, you may contact the Federal Department of Housing and Urban Development (HUD) to obtain a list of approved loan counseling agencies.  HUD may be reached, toll free, at 800-569-4287.  If your delinquency is due to disability or death and you purchased life and/or accident/health insurance on the injured or deceased party, contact us immediately so that claim evaluation can be initiated promptly.

Please give this matter the attention it warrants.  This is an attempt to collect a debt.  Any information obtained will be used for that purpose.

Loan Counseling Department
Homecomings Financial
**800-206-2901**

## Exhibit E

DEF – DMS5 – BRCH (GENERIC) (4).txt

02/22/08

MICHAEL A MARTIN
MARY COLLETTE MARTIN
1021 ENGLEWOOD AVE

CHATTANOOGA          TN 37405-2311

RE:  Account Number      ████7927
     Property Address  1021 ENGLEWOOD AV

                       CHATTANOOGA TN 37405

Dear MICHAEL A MARTIN
     MARY COLLETTE MARTIN

Our records indicate the above-referenced mortgage loan is in
default.

Your account is due for 01/01/08, and succeeding payments. This
is a demand for payment of the total amount due and owing as of
the date of this letter, which is as follows:

    Payments ............................. $      2766.96
    Late Charges ......................... $       835.38
    Fees, Costs, and other amounts accrued
       to date ........................... $       130.00
    Suspense ............................. $         0.00
    Total Amount Due ..................... $      3732.34

You may cure the default by paying the total amount due,
indicated above, within thirty (30) days from the date of this
letter.   You are also responsible for paying any additional
payments, fees, and charges that become due during this 30-day
period.   Payments must be made in certified funds or cashier's
check.   If funds tendered are not honored for any reason, the
default will not be cured.   Our acceptance of any funds less
than the total amount due shall not constitute a waiver of our
rights and/or remedies under the loan documents or applicable
law.

                              (continued on back)

⚲

02/22/08
Account Number     ████7927
Page Two


You are hereby notified your credit rating may be adversely
affected if you fail to fulfill the terms of your credit
obligations.   You are also notified we may visit the
above-referenced property from time to time to determine its

Page 1

                        DEF - DMS5 - BRCH (GENERIC) (4).txt
condition and occupancy status, the costs of which you will be
responsible for.

Unless we receive full payment of all past-due amounts, we will
accelerate the maturity of the loan, declare the obligation due
and payable without further demand, and begin foreclosure
proceedings.  This could result in the loss of your property.
You have the right to assert or defend the non-existence of a
default and you may have other rights under state law.

Once in foreclosure, you have the right to reinstate your
account up to five days prior to the foreclosure sale of the
property if: 1) you pay the total amount due plus any fees, costs
and other amounts accrued through the reinstatement date, and 2)
you take any other action reasonably required by us to assure the
security of the property, as well as your obligations under the
loan documents continue in full force and effect.

HUD-approved counseling is available on FHA guaranteed loans by
calling 800-569-4287.  If you would like to discuss any matter
contained in this notice, we encourage you to contact our loan
counselors immediately at 800-799-9250.


Collection Department
Loan Servicing

Notice - This is an attempt to collect a debt and any information
obtained will be used for that purpose.  If your debt has been
discharged in bankruptcy, our rights are being exercised against
the collateral for the above-referenced loan, not as a personal
liability.

5020

**<u>Exhibit F</u>**

| Account Number | 1 |
|---|---|
| ▆▆▆▆7927 | |

# Loan History

Date Data as-of: March 5, 2014

| Account Number | Name Primary Borrower | Name Secondary Borrower | Property Address | Mailing Address |
|---|---|---|---|---|
| ███7927 | MICHAEL A MARTIN | MARY COLLETTE MARTIN | 1021 ENGLEWOOD AV | 1021 ENGLEWOOD AVE |
| | | | CHATTANOOGA | CHATTANOOGA |
| | | | TN | TN |
| | | | 37405 | 37405-2311 |

**Investor Info**

| | |
|---|---|
| Investor Acct No - Prim | ███5461 |
| Investor Number | ███ |
| Investor Name Full | RESIDENTIAL FUNDING CORP |
| Investor Id | Z85 |

**Previous Servicer Info**

| | |
|---|---|
| Previous Account Number | ███5461 |
| Seller Company Name | SYNOVUS MORTGAGE CORP |

**Loan Info**

| | |
|---|---|
| Arm Flag | N |
| Loan Type | PMI / Conventional Insured |
| Lien Position | 01 |
| Interest Rate | 10.000% |
| Collection Status | PO |

**Dates**

| | |
|---|---|
| Int Collected To | 12/01/2007 |
| Next Due | 01/01/2008 |
| Last Payment | 02/22/2008 |
| Last Activity | 11/13/2008 |
| Setup Date | 10/30/2002 |
| Maturity Date | 09/01/2032 |

**Current Balances**

| | |
|---|---|
| Principal | $0.00 |
| Escrow | $0.00 |
| Unapplied | $0.00 |
| Buydown | $0.00 |

**Uncollected**

| | |
|---|---|
| Late Charges | $0.00 |
| Interest | $0.00 |
| Fees | $0.00 |
| Opt | $0.00 |

**Year-To-Date**

| | |
|---|---|
| Interest | $0.00 |
| Taxes | $0.00 |

**Financial**

| Account Number | Trans Added Date | Date Interest Paid Current | Prin Bal after trans | Transaction Description | Transaction Reason Code | Trans Type | Teller ID | Trans Amount | To Principal | To Interest Amt | To Escrow Amt | To Fee Amt | To Unapplied Funds Amt | To Credit Insurance Amt | To Late Charge Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ███7927 | 11/13/2008 | 12/01/2007 | $0.00 | FEE | 040 | FE | 11256 | $1,116.80 | $0.00 | $0.00 | $0.00 | $1,116.80 | $0.00 | $0.00 | $0.00 |
| ███7927 | 11/13/2008 | 12/01/2007 | $0.00 | FEE | 164 | FE | 11256 | $85.00 | $0.00 | $0.00 | $0.00 | $85.00 | $0.00 | $0.00 | $0.00 |
| ███7927 | 11/13/2008 | 12/01/2007 | $0.00 | PAYMENT | | SR0 | 11256 | ($1,201.80) | $0.00 | $0.00 | ($1,201.80) | $0.00 | $0.00 | $0.00 | $0.00 |
| ███7927 | 10/13/2008 | 12/01/2007 | $0.00 | PAYMENT | | SR | 28729 | $100.00 | $0.00 | $0.00 | $100.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ███7927 | 10/13/2008 | 12/01/2007 | $0.00 | PAYMENT | | SRR | 28729 | ($73.00) | $0.00 | $0.00 | ($73.00) | $0.00 | $0.00 | $0.00 | $0.00 |
| ███7927 | 10/02/2008 | 12/01/2007 | $0.00 | FEE | 011 | FE | 25101 | $78.75 | $0.00 | $0.00 | $0.00 | $78.75 | $0.00 | $0.00 | $0.00 |
| ███7927 | 10/02/2008 | 12/01/2007 | $0.00 | FEE | 040 | FE | 25101 | $1,708.65 | $0.00 | $0.00 | $0.00 | $1,708.65 | $0.00 | $0.00 | $0.00 |
| ███7927 | 10/02/2008 | 12/01/2007 | $0.00 | PAYMENT | | SR | 28729 | $2,462.77 | $0.00 | $0.00 | $2,462.77 | $0.00 | $0.00 | $0.00 | $0.00 |
| ███7927 | 10/02/2008 | 12/01/2007 | $0.00 | PAYMENT | | SRR | 28729 | ($924.42) | $0.00 | $0.00 | ($924.42) | $0.00 | $0.00 | $0.00 | $0.00 |
| ███7927 | 09/17/2008 | 12/01/2007 | $0.00 | Unapplied | | UI | 15894 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $737.10 |
| ███7927 | 09/17/2008 | 12/01/2007 | $0.00 | Write-Off | | WRF | 15894 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $737.10 |
| ███7927 | 09/04/2008 | 12/01/2007 | $0.00 | Write-Off | | WRR | 15894 | $0.00 | $107,615.90 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

**Loan History**

Date Data as-of:  March 5, 2014

| Account Number | Trans Added Date | Date Interest Paid Current | Prin Bal after trans | Transaction Description | Transaction Reason Code | Trans Type | Teller ID | Trans Amount | To Principal | To Interest Amt | To Escrow Amt | To Fee Amt | To Unapplied Funds Amt | To Credit Insurance Amt | To Late Charge Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7927 | 07/17/2008 | 12/01/2007 | $107,615.90 | Escrow Refund-REO Fir | | R23 | 01653 | $73.00 | $0.00 | $0.00 | $73.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7927 | 06/27/2008 | 12/01/2007 | $107,615.90 | PAYMENT | | PT | 01167 | ($436.55) | $0.00 | $0.00 | ($436.55) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7927 | 06/27/2008 | 12/01/2007 | $107,615.90 | PAYMENT | | RT | 01167 | $436.55 | $0.00 | $0.00 | $436.55 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7927 | 06/27/2008 | 12/01/2007 | $107,615.90 | PAYMENT | | SRO | 01932 | ($116,367.77) | $0.00 | $0.00 | $0.00 | $0.00 | ($116,367.77) | $0.00 | $0.00 |
| 7927 | 06/27/2008 | 12/01/2007 | $107,615.90 | Unapplied | | UFM | 01932 | ($116,367.77) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7927 | 06/24/2008 | 12/01/2007 | $107,615.90 | Escrow Disb-REO Fire | | E23 | 32022 | ($100.00) | $0.00 | $0.00 | ($100.00) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7927 | 06/06/2008 | 12/01/2007 | $107,615.90 | PAYMENT | | SR | 01633 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7927 | 06/06/2008 | 12/01/2007 | $0.00 | Unapplied | | UFM | 01633 | $116,367.77 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7927 | 06/06/2008 | 12/01/2007 | $0.00 | Unapplied | | UFY | 00000 | ($116,367.77) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7927 | 06/04/2008 | 12/01/2007 | $107,615.90 | PAYMENT | | SR | 01640 | $116,367.77 | $0.00 | $0.00 | $0.00 | $0.00 | $116,367.77 | $0.00 | $0.00 |
| 7927 | 06/04/2008 | 12/01/2007 | $0.00 | Unapplied | | UFY | 01640 | $116,367.77 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7927 | 05/28/2008 | 12/01/2007 | $107,615.90 | Escrow Disb-REO Fire | | E23 | 32022 | ($100.00) | $0.00 | $0.00 | ($100.00) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7927 | 05/27/2008 | 12/01/2007 | $0.00 | FEE | 040 | FB | 32551 | $2,825.45 | $0.00 | $0.00 | $0.00 | $2,825.45 | $0.00 | $0.00 | $0.00 |
| 7927 | 05/19/2008 | 12/01/2007 | $107,615.90 | PAYMENT | | PT | 25101 | ($236.55) | $0.00 | $0.00 | ($236.55) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7927 | 05/19/2008 | 12/01/2007 | $107,615.90 | PAYMENT | | RT | 25101 | $236.55 | $0.00 | $0.00 | $236.55 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7927 | 05/14/2008 | 12/01/2007 | $0.00 | FEE | 011 | FB | 32506 | $11.25 | $0.00 | $0.00 | $0.00 | $11.25 | $0.00 | $0.00 | $0.00 |
| 7927 | 04/17/2008 | 12/01/2007 | $107,615.90 | PAYMENT | | SR0 | 18928 | ($2,766.96) | $0.00 | $0.00 | $0.00 | $0.00 | ($2,766.96) | $0.00 | $0.00 |
| 7927 | 04/17/2008 | 12/01/2007 | $0.00 | Unapplied | | UFU | 18928 | ($2,766.96) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7927 | 04/16/2008 | 12/01/2007 | $107,615.90 | PAYMENT | | SRA | 00603 | $2,766.96 | $0.00 | $0.00 | $0.00 | $0.00 | $2,766.96 | $0.00 | $0.00 |
| 7927 | 04/16/2008 | 12/01/2007 | $0.00 | Unapplied | | UFU | 00603 | $2,766.96 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7927 | 04/03/2008 | 12/01/2007 | $0.00 | FEE | 011 | FB | 32506 | $11.25 | $0.00 | $0.00 | $0.00 | $11.25 | $0.00 | $0.00 | $0.00 |
| 7927 | 03/04/2008 | 12/01/2007 | $0.00 | FEE | 011 | FB | 32506 | $11.25 | $0.00 | $0.00 | $0.00 | $11.25 | $0.00 | $0.00 | $0.00 |
| 7927 | 02/23/2008 | 12/01/2007 | $107,615.90 | PAYMENT | | PT | 25101 | ($236.55) | $0.00 | $0.00 | ($236.55) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7927 | 02/23/2008 | 12/01/2007 | $107,615.90 | PAYMENT | | RT | 25101 | $236.55 | $0.00 | $0.00 | $236.55 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7927 | 02/22/2008 | 12/01/2007 | $107,615.90 | PAYMENT | | AP | 00602 | $1,383.48 | $85.37 | $897.51 | $400.60 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7927 | 02/22/2008 | 12/01/2007 | $0.00 | Unapplied | | UI | 00602 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($49.14) |
| 7927 | 02/19/2008 | 11/01/2007 | $0.00 | FEE | 164 | FB | 23714 | $85.00 | $0.00 | $0.00 | $0.00 | $85.00 | $0.00 | $0.00 | $0.00 |
| 7927 | 01/11/2008 | 11/01/2007 | $107,701.27 | PAYMENT | | AP | 00602 | $1,383.48 | $84.66 | $898.22 | $400.60 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7927 | 01/11/2008 | 11/01/2007 | $0.00 | Unapplied | | UI | 00602 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($49.14) |
| 7927 | 01/04/2008 | 10/01/2007 | $0.00 | FEE | 011 | FB | 32506 | $11.25 | $0.00 | $0.00 | $0.00 | $11.25 | $0.00 | $0.00 | $0.00 |
| 7927 | 12/14/2007 | 10/01/2007 | $107,785.93 | PAYMENT | | AP | 00602 | $1,383.48 | $83.96 | $898.92 | $400.60 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7927 | 12/14/2007 | 10/01/2007 | $0.00 | Unapplied | | UI | 00602 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($49.14) |

**Loan History**

Date Data as-of:  March 5, 2014

| Account Number | Trans Added Date | Date Interest Paid Current | Prin Bal after trans | Transaction Description | Transaction Reason Code | Trans Type | Teller ID | Trans Amount | To Principal | To Interest Amt | To Escrow Amt | To Fee Amt | To Unapplied Funds Amt | To Credit Insurance Amt | To Late Charge Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7927 | 11/29/2007 | 09/01/2007 | $0.00 | FEE | 011 | FB | 32506 | $11.25 | $0.00 | $0.00 | $0.00 | $11.25 | $0.00 | $0.00 | $0.00 |
| 7927 | 11/27/2007 | 09/01/2007 | $107,869.89 | Escrow Disb-Tax City | | E91 | 32687 | ($992.77) | $0.00 | $0.00 | ($992.77) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7927 | 11/27/2007 | 09/01/2007 | $107,869.89 | Escrow Disb-Tax County | | E90 | 32687 | ($1,370.00) | $0.00 | $0.00 | ($1,370.00) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7927 | 11/16/2007 | 09/01/2007 | $107,869.89 | PAYMENT | | AP | 00602 | $1,344.61 | $83.27 | $899.61 | $361.73 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7927 | 11/16/2007 | 09/01/2007 | $0.00 | Unapplied | | UI | 00602 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($49.14) |
| 7927 | 11/05/2007 | 08/01/2007 | $107,953.16 | Escrow Disb-Fire | | E20 | 32022 | ($1,744.00) | $0.00 | $0.00 | ($1,744.00) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7927 | 11/05/2007 | 08/01/2007 | $0.00 | FEE | 011 | FB | 32506 | $11.25 | $0.00 | $0.00 | $0.00 | $11.25 | $0.00 | $0.00 | $0.00 |
| 7927 | 09/28/2007 | 08/01/2007 | $0.00 | FEE | 011 | FB | 32506 | $11.25 | $0.00 | $0.00 | $0.00 | $11.25 | $0.00 | $0.00 | $0.00 |
| 7927 | 09/24/2007 | 08/01/2007 | $107,953.16 | PAYMENT | | AP | 00602 | $1,344.61 | $82.58 | $900.30 | $361.73 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7927 | 09/24/2007 | 08/01/2007 | $0.00 | Unapplied | | UI | 00602 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($49.14) |
| 7927 | 08/14/2007 | 07/01/2007 | $108,035.74 | PAYMENT | | AP | 00602 | $1,344.61 | $81.90 | $900.98 | $361.73 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7927 | 08/14/2007 | 07/01/2007 | $0.00 | Unapplied | | UI | 00602 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($49.14) |
| 7927 | 07/02/2007 | 06/01/2007 | $108,117.64 | PAYMENT | | AP | 00602 | $1,344.61 | $81.22 | $901.66 | $361.73 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7927 | 07/02/2007 | 06/01/2007 | $0.00 | Unapplied | | UI | 00602 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($49.14) |
| 7927 | 06/15/2007 | 05/01/2007 | $108,198.86 | PAYMENT | | AP | 00602 | $1,344.61 | $80.55 | $902.33 | $361.73 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7927 | 06/15/2007 | 05/01/2007 | $0.00 | Unapplied | | UI | 00602 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($49.14) |
| 7927 | 05/07/2007 | 04/01/2007 | $108,279.41 | PAYMENT | | AP | 00602 | $1,356.84 | $79.89 | $902.99 | $373.96 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7927 | 05/07/2007 | 04/01/2007 | $0.00 | Unapplied | | UI | 00602 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($49.14) |

**Comments:**

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7927 | | 02/21/2014 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 074 | SYSTEM ID |
| 7927 | | 01/21/2014 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 073 | SYSTEM ID |
| 7927 | | 12/23/2013 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 072 | SYSTEM ID |
| 7927 | | 11/21/2013 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 071 | SYSTEM ID |
| 7927 | | 10/22/2013 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 070 | SYSTEM ID |
| 7927 | | 09/23/2013 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 069 | SYSTEM ID |
| 7927 | | 08/21/2013 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 068 | SYSTEM ID |
| 7927 | | 07/23/2013 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 067 | SYSTEM ID |
| 7927 | | 06/21/2013 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 066 | SYSTEM ID |
| 7927 | | 05/21/2013 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 065 | SYSTEM ID |
| 7927 | | 05/01/2013 | LIT | removed litigation codes  lit review | LEIGH FRAME |

# Loan History

Date Data as-of:  March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7927 | | 04/23/2013 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 064 | SYSTEM ID |
| 7927 | | 03/21/2013 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 063 | SYSTEM ID |
| 7927 | | 02/21/2013 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 062 | SYSTEM ID |
| 7927 | | 01/22/2013 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 061 | SYSTEM ID |
| 7927 | | 12/21/2012 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 060 | SYSTEM ID |
| 7927 | | 11/21/2012 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 059 | SYSTEM ID |
| 7927 | | 10/23/2012 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 058 | SYSTEM ID |
| 7927 | | 09/21/2012 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 057 | SYSTEM ID |
| 7927 | | 08/21/2012 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 056 | SYSTEM ID |
| 7927 | | 07/23/2012 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 055 | SYSTEM ID |
| 7927 | | 06/21/2012 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 054 | SYSTEM ID |
| 7927 | | 05/22/2012 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 053 | SYSTEM ID |
| 7927 | | 04/23/2012 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 052 | SYSTEM ID |
| 7927 | | 03/21/2012 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 051 | SYSTEM ID |
| 7927 | | 02/21/2012 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 050 | SYSTEM ID |
| 7927 | | 01/23/2012 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 049 | SYSTEM ID |
| 7927 | | 12/21/2011 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 048 | SYSTEM ID |
| 7927 | | 11/22/2011 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 047 | SYSTEM ID |
| 7927 | DODV | 10/21/2011 | NT | "Per DOD website review the week of August 8, 2011 | API CSRV |
| 7927 | DODV | 10/21/2011 | NT | borrower(s) are not active duty.  Copy of website | API CSRV |
| 7927 | DODV | 10/21/2011 | NT | is imaged in looking glass." | API CSRV |
| 7927 | | 10/21/2011 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 046 | SYSTEM ID |
| 7927 | | 09/21/2011 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 045 | SYSTEM ID |
| 7927 | | 08/23/2011 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 044 | SYSTEM ID |
| 7927 | | 08/04/2011 | LIT | updated legal manager to Lauren Delehy, per j ho's | TAMMY GIBSON |
| 7927 | | 08/04/2011 | LIT | request | TAMMY GIBSON |
| 7927 | | 07/21/2011 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 043 | SYSTEM ID |
| 7927 | | 06/21/2011 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 042 | SYSTEM ID |
| 7927 | | 06/17/2011 | LIT | provided info to legal manager | TAMMY GIBSON |
| 7927 | | 05/23/2011 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 041 | SYSTEM ID |
| 7927 | | 04/21/2011 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 040 | SYSTEM ID |
| 7927 | | 03/22/2011 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 039 | SYSTEM ID |
| 7927 | | 02/22/2011 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 038 | SYSTEM ID |
| 7927 | | 01/21/2011 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 037 | SYSTEM ID |
| 7927 | | 12/21/2010 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 036 | SYSTEM ID |

**Loan History**

Date Data as-of:  March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ███7927 | | 11/23/2010 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 035 | SYSTEM ID |
| ███7927 | | 10/21/2010 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 034 | SYSTEM ID |
| ███7927 | | 09/21/2010 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 033 | SYSTEM ID |
| ███7927 | | 08/23/2010 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 032 | SYSTEM ID |
| ███7927 | | 07/21/2010 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 031 | SYSTEM ID |
| ███7927 | | 06/22/2010 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 030 | SYSTEM ID |
| ███7927 | | 05/21/2010 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 029 | SYSTEM ID |
| ███7927 | | 03/23/2010 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 027 | SYSTEM ID |
| ███7927 | | 02/23/2010 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 026 | SYSTEM ID |
| ███7927 | | 01/21/2010 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 025 | SYSTEM ID |
| ███7927 | | 12/22/2009 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 024 | SYSTEM ID |
| ███7927 | | 11/23/2009 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 023 | SYSTEM ID |
| ███7927 | | 10/21/2009 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 022 | SYSTEM ID |
| ███7927 | | 09/22/2009 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 021 | SYSTEM ID |
| ███7927 | | 08/21/2009 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 020 | SYSTEM ID |
| ███7927 | | 07/21/2009 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 019 | SYSTEM ID |
| ███7927 | | 06/23/2009 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 018 | SYSTEM ID |
| ███7927 | | 05/21/2009 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 017 | SYSTEM ID |
| ███7927 | | 04/21/2009 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 016 | SYSTEM ID |
| ███7927 | | 03/23/2009 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 015 | SYSTEM ID |
| ███7927 | | 02/23/2009 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 014 | SYSTEM ID |
| ███7927 | EOY | 02/11/2009 | NT | 2008 1099A issue due to Foreclosure. | API CSRV |
| ███7927 | | 01/21/2009 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 013 | SYSTEM ID |
| ███7927 | CLM | 01/02/2009 | NT | 9/24/08 Carolann Krause-REC EOB DTD 9/19/08 FROM | MICHELE LIEBERMAN |
| ███7927 | CLM | 01/02/2009 | NT | MGIC IAO $100.00 AS SETTLEMENT OF SUPPLEMENTAL | MICHELE LIEBERMAN |
| ███7927 | CLM | 01/02/2009 | NT | CLAIM - FUNDS DIRECTLY SENT TO HFN | MICHELE LIEBERMAN |
| ███7927 | | 12/23/2008 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 012 | SYSTEM ID |
| ███7927 | | 11/21/2008 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 011 | SYSTEM ID |
| ███7927 | | 11/13/2008 | CLM | FILE CLOSED        (1300) COMPLETED 11/13/08 | VIRPAKSHA HALKUNDI |
| ███7927 | | 11/13/2008 | CLM | RCVD FINAL INV CLM $ (1690) COMPLETED 11/13/08 | VIRPAKSHA HALKUNDI |
| ███7927 | | 11/13/2008 | FOR | FILE CLOSED        (1000) COMPLETED 11/13/08 | VIRPAKSHA HALKUNDI |
| ███7927 | | 11/13/2008 | LMT | FILE CLOSED        (7)   COMPLETED 11/13/08 | VIRPAKSHA HALKUNDI |
| ███7927 | | 11/13/2008 | REO | FILE CLOSED        (1104) COMPLETED 11/13/08 | VIRPAKSHA HALKUNDI |
| ███7927 | | 11/13/2008 | REO | LOSS/GAIN POSTED    (1103) COMPLETED 11/13/08 | VIRPAKSHA HALKUNDI |
| ███7927 | | 11/13/2008 | NT | 1201.80      REVERSED-MISAPPLIED | |

# Loan History

Date Data as-of: March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7927 | | 10/21/2008 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 010 | SYSTEM ID |
| 7927 | 893 | 10/15/2008 | NT | CLAIM WIRE RECVD 10/3/2008 IN THE AMOUNT OF | NUJUANEA LEWIS |
| 7927 | 893 | 10/15/2008 | NT | 6437313.60 NET CLAIM AMOUNT PAID 27.00, | NUJUANEA LEWIS |
| 7927 | 893 | 10/15/2008 | NT | SUBSERVICER ADVANCES - P&I AMOUNT PAID 0.00 | NUJUANEA LEWIS |
| 7927 | 893 | 10/02/2008 | NT | CLAIM WIRE RECVD 9/25/2008 IN THE AMOUNT OF | NUJUANEA LEWIS |
| 7927 | 893 | 10/02/2008 | NT | 44344132.99 NET CLAIM AMOUNT PAID 3325.75, | NUJUANEA LEWIS |
| 7927 | 893 | 10/02/2008 | NT | SUBSERVICER ADVANCES - P&I AMOUNT PAID 0.00 | NUJUANEA LEWIS |
| 7927 | | 09/23/2008 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 009 | SYSTEM ID |
| 7927 | INQ95 | 09/11/2008 | CIT | 007 DONE 09/11/08 BY TLR 13036 | EPHRAIM VICTORIA |
| 7927 | INQ95 | 09/11/2008 | CIT | TSK TYP 251-RUSH COACHLINE | EPHRAIM VICTORIA |
| 7927 | INQ95 | 09/11/2008 | CIT | 007 closing cit 251.called 423-314-7992 @ 1:13 pm | EPHRAIM VICTORIA |
| 7927 | INQ95 | 09/11/2008 | CIT | cst and lmo adv may call the atty handling his | EPHRAIM VICTORIA |
| 7927 | INQ95 | 09/11/2008 | CIT | acct for his concern or call 18002062901. | EPHRAIM VICTORIA |
| 7927 | INQ95 | 09/11/2008 | CIT | ephraim x7167029 | EPHRAIM VICTORIA |
| 7927 | 893 | 09/10/2008 | NT | CLAIM WIRE RECVD 9/4/2008 IN THE AMOUNT OF | NUJUANEA LEWIS |
| 7927 | 893 | 09/10/2008 | NT | 36898566.79 NET CLAIM AMOUNT PAID 0.00, | NUJUANEA LEWIS |
| 7927 | 893 | 09/10/2008 | NT | SUBSERVICER ADVANCES - P&I AMOUNT PAID 5628.79 | NUJUANEA LEWIS |
| 7927 | INQ90 | 09/04/2008 | CIT | 007 fyi cit 251- snt email to legal mngr to see if | CARRIE TARPY |
| 7927 | INQ90 | 09/04/2008 | CIT | can discuss acct. carrie t2365453 | CARRIE TARPY |
| 7927 | INQ95 | 09/04/2008 | CIT | 007 new cit 251. sent email for assistance. | EPHRAIM VICTORIA |
| 7927 | INQ95 | 09/04/2008 | CIT | ephraim x7167029 | EPHRAIM VICTORIA |
| 7927 | INQ | 09/04/2008 | NT | b1 ci re stat of acct elevate call to team lead as | CATHERINE HERRERA |
| 7927 | INQ | 09/04/2008 | NT | acct in litigation catherine h73834 | CATHERINE HERRERA |
| 7927 | | 07/14/2008 | FOR | 07/14/08 - 11:36 - 44646 | NEW TRAK SYSTEM ID |
| 7927 | | 07/14/2008 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| 7927 | | 07/14/2008 | FOR | following event: Attorney Notified | NEW TRAK SYSTEM ID |
| 7927 | | 07/14/2008 | FOR | to Close and Bill Eviction, | NEW TRAK SYSTEM ID |
| 7927 | | 07/14/2008 | FOR | completed on 7/14/2008 | NEW TRAK SYSTEM ID |
| 7927 | | 07/14/2008 | FOR | 07/14/08 - 11:36 - 44646 | NEW TRAK SYSTEM ID |
| 7927 | | 07/14/2008 | FOR | User has completed the | NEW TRAK SYSTEM ID |
| 7927 | | 07/14/2008 | FOR | EV_CloseAndBill data form with the | NEW TRAK SYSTEM ID |
| 7927 | | 07/14/2008 | FOR | following entries:  Indicate reason | NEW TRAK SYSTEM ID |
| 7927 | | 07/14/2008 | FOR | file should be closed: : 7927 | NEW TRAK SYSTEM ID |
| 7927 | | 07/14/2008 | FOR | 07/14/08 - 11:35 - 44646 | NEW TRAK SYSTEM ID |
| 7927 | | 07/14/2008 | FOR | Process opened 7/14/2008 by user | NEW TRAK SYSTEM ID |

# Loan History

Date Data as-of:  March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7927 | | 07/14/2008 | FOR | Rachael Stewart. | NEW TRAK SYSTEM ID |
| 7927 | | 07/14/2008 | FOR | 07/14/08 - 11:35 - 00007 | NEW TRAK SYSTEM ID |
| 7927 | | 07/14/2008 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| 7927 | | 07/14/2008 | FOR | event: User has reprojected the | NEW TRAK SYSTEM ID |
| 7927 | | 07/14/2008 | FOR | step Forcible Detainer Sent to | NEW TRAK SYSTEM ID |
| 7927 | | 07/14/2008 | FOR | 7/14/2008. Reason: Hold Ended. Comme | NEW TRAK SYSTEM ID |
| 7927 | | 07/14/2008 | FOR | 07/14/08 - 11:35 - 00007 | NEW TRAK SYSTEM ID |
| 7927 | | 07/14/2008 | FOR | nts: Hold Ended   . Status: Active, | NEW TRAK SYSTEM ID |
| 7927 | | 07/14/2008 | FOR | approval not required. | NEW TRAK SYSTEM ID |
| 7927 | | 07/14/2008 | FOR | 07/14/08 - 11:35 - 44646 | NEW TRAK SYSTEM ID |
| 7927 | | 07/14/2008 | FOR | Intercom From: Rachael Stewart, | NEW TRAK SYSTEM ID |
| 7927 | | 07/14/2008 | FOR | GMAC - To: Stefanie Perry (GMAC) / | NEW TRAK SYSTEM ID |
| 7927 | | 07/14/2008 | FOR | Subject: Hold Request/Message: | NEW TRAK SYSTEM ID |
| 7927 | | 07/14/2008 | FOR | System updated for the following eve | NEW TRAK SYSTEM ID |
| 7927 | | 07/14/2008 | FOR | 07/14/08 - 11:35 - 44646 | NEW TRAK SYSTEM ID |
| 7927 | | 07/14/2008 | FOR | nt: User has ended the hold. Hold | NEW TRAK SYSTEM ID |
| 7927 | | 07/14/2008 | FOR | End Date: 07/14/2008. Hold type: | NEW TRAK SYSTEM ID |
| 7927 | | 07/14/2008 | FOR | Litigation | NEW TRAK SYSTEM ID |
| 7927 | | 07/14/2008 | FOR | 07/14/08 - 12:12 - 00371 | NEW TRAK SYSTEM ID |
| 7927 | | 07/14/2008 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| 7927 | | 07/14/2008 | FOR | following event: Attorney Confirmed | NEW TRAK SYSTEM ID |
| 7927 | | 07/14/2008 | FOR | File Closed, completed on 7/14/2008 | NEW TRAK SYSTEM ID |
| 7927 | | 07/14/2008 | REE | EVICTION     01-00           SEQNO 04 | RACHAEL BROCK |
| 7927 | | 07/14/2008 | REE | I closed it out as sold occupied. Any that are | RACHAEL BROCK |
| 7927 | | 07/14/2008 | REE | sold during the eviction process are always marked | RACHAEL BROCK |
| 7927 | | 07/14/2008 | REE | sold occupied and the vacate date completed as we | RACHAEL BROCK |
| 7927 | | 07/14/2008 | REE | get credit for the vacancy.  Do not complete | RACHAEL BROCK |
| 7927 | | 07/14/2008 | REE | tasks 32 and 265.  M      Margret A. Wilson | RACHAEL BROCK |
| 7927 | | 07/14/2008 | REE | REO Eviction Department Supervisor   GMAC ResCap | RACHAEL BROCK |
| 7927 | | 07/14/2008 | REE | 2711 North Haskell Ave   15th Floor   Dallas, | RACHAEL BROCK |
| 7927 | | 07/14/2008 | REE | TX 75204   214-874-2987 (direct)   866-340-8452 | RACHAEL BROCK |
| 7927 | | 07/14/2008 | REE | (fax) | RACHAEL BROCK |
| 7927 | | 07/10/2008 | CLM | FILE FINAL INV CLAIM (1689) COMPLETED 07/10/08 | MEGAN STEUBE |
| 7927 | | 07/10/2008 | REO | EVICTION COMPLETED   (3603) COMPLETED 07/10/08 | SUNNY TEELING |
| 7927 | REO90 | 06/27/2008 | CIT | 006 DONE 06/27/08 BY TLR 01932 | AMY HARTSHORN |

# Loan History

Date Data as-of:   March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ███ 7927 | REO90 | 06/27/2008 | CIT | TSK TYP 870-REO CLOSING HEL | AMY HARTSHORN |
| ███ 7927 | REO90 | 06/27/2008 | CIT | 006 CLOSING CIT-FUNDS MOVED TO INVESTOR | AMY HARTSHORN |
| ███ 7927 | REO10 | 06/26/2008 | CIT | 006 Please sweep funds iao $116,367.77 in 4Y to | LARK DEMLER |
| ███ 7927 | REO10 | 06/26/2008 | CIT | the investor | LARK DEMLER |
| ███ 7927 | REO10 | 06/26/2008 | CIT | 003 DONE 06/26/08 BY TLR 20422 | LARK DEMLER |
| ███ 7927 | REO10 | 06/26/2008 | CIT | TSK TYP 870-REO CLOSING HEL | LARK DEMLER |
| ███ 7927 | CLM | 06/23/2008 | NT | FedEx#7919-2009-7780 mi claim to deanna@mgic | THOMAS UHLMANSIEK |
| ███ 7927 | COL40 | 06/23/2008 | CIT | 005 DONE 06/23/08 BY TLR 18991 | THOMAS UHLMANSIEK |
| ███ 7927 | COL40 | 06/23/2008 | CIT | TSK TYP 799-MI CLM COMPLETE | THOMAS UHLMANSIEK |
| ███ 7927 | REO90 | 06/23/2008 | CIT | 005 Open CIT#799 Please print MI claim and send | MICHELE LIEBERMAN |
| ███ 7927 | REO90 | 06/23/2008 | CIT | with required documentation.  (FANCO CLAIM) | MICHELE LIEBERMAN |
| ███ 7927 | COL40 | 06/23/2008 | CIT | 004 DONE 06/23/08 BY TLR 18991 | THOMAS UHLMANSIEK |
| ███ 7927 | COL40 | 06/23/2008 | CIT | TSK TYP 799-MI CLM COMPLETE | THOMAS UHLMANSIEK |
| ███ 7927 | COL40 | 06/23/2008 | CIT | 004 CLOSING CIT#799-FEDEX MI CLAIM TO DEANNA | THOMAS UHLMANSIEK |
| ███ 7927 | COL40 | 06/23/2008 | CIT | INGRELLI@MGIC;SNT DOCS TO IMAGING. | THOMAS UHLMANSIEK |
| ███ 7927 | REO85 | 06/23/2008 | CIT | 004 NEW CIT #799 MI CLAIM MANULLY COMPLETED AND | OLA HARRIS |
| ███ 7927 | REO85 | 06/23/2008 | CIT | EMAILED TO DEB/KATHY DUE TO 0 UPB. PLS SEND | OLA HARRIS |
| ███ 7927 | REO85 | 06/23/2008 | CIT | DOCS ALONG WITH MI FORM | OLA HARRIS |
| ███ 7927 |  | 06/22/2008 | REO | ALL VALUES      (35)   COMPLETED 05/27/08 | JOSE AGUILAR |

**Loan History**

Date Data as-of:  March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7927 | | 06/20/2008 | CLM | FILE INVESTOR CLAIM  (489)  COMPLETED 06/20/08 | JEANETTE COYLE |
| 7927 | | 06/17/2008 | PPT | FILE CLOSED      (2)    COMPLETED 06/17/08 | JOSE RENATO MONZON |
| 7927 | CBR | 06/17/2008 | NT | FCL FIX FILE MAY REPORTING CLOSE DT; BAL; AMT PAST | API CSRV |
| 7927 | CBR | 06/17/2008 | NT | DUE; CBR; PR; HISTORY | API CSRV |
| 7927 | CLAIM | 06/13/2008 | NT | Property went to REO sale. One or all of the | MICHELE LIEBERMAN |
| 7927 | CLAIM | 06/13/2008 | NT | following steps were completed with a script: | MICHELE LIEBERMAN |
| 7927 | CLAIM | 06/13/2008 | NT | Escrow type changed to non-escrow, Tax Contract | MICHELE LIEBERMAN |
| 7927 | CLAIM | 06/13/2008 | NT | canceled and/or Stop Code 3-1 added. | MICHELE LIEBERMAN |
| 7927 | | 06/13/2008 | TX | TAX COMMENTS: REO SOLD-CHNGD TO NON-PAY W/SCRIPT | MICHELE LIEBERMAN |
| 7927 | | 06/13/2008 | TX | TAX COMMENTS: REO SOLD-CHNGD TO NON-PAY W/SCRIPT | MICHELE LIEBERMAN |
| 7927 | | 06/12/2008 | REC | TASK:1103-REO-CHANGD FUPDT  06/12/08 | LARK DEMLER |
| 7927 | | 06/12/2008 | REO | PROCEEDS RECEIVED   (1101) COMPLETED 06/12/08 | LARK DEMLER |
| 7927 | | 06/12/2008 | REO | HUD APPROVED       (1804) COMPLETED 06/12/08 | LARK DEMLER |
| 7927 | | 06/12/2008 | REO | CONTRACT EXECUTED   (1803) COMPLETED 06/12/08 | LARK DEMLER |
| 7927 | | 06/12/2008 | REO | PROPERTY SOLD       (630) COMPLETED 06/12/08 | LARK DEMLER |
| 7927 | REO10 | 06/12/2008 | CIT | 003 REO CLOSING HELD-PROCEEDS FRTHCMG | LARK DEMLER |
| 7927 | | 06/12/2008 | REO | CLOSING HELD       (1805) COMPLETED 06/12/08 | LARK DEMLER |
| 7927 | | 06/12/2008 | REO | CLOSNG APPRVL01-00 1 (5094) COMPLETED 06/12/08 | CHRIS MORGAN |
| 7927 | | 06/12/2008 | REO | STGY APPRVL  01-00 2 (5091) COMPLETED 06/12/08 | CHRIS MORGAN |
| 7927 | | 06/12/2008 | REO | STGY APPRVL  01-00 2 (5011) COMPLETED 06/12/08 | LARK DEMLER |
| 7927 | | 06/12/2008 | REM | LISTING     01-01            SEQNO 01 | JASON PURKISS |
| 7927 | | 06/12/2008 | REM | Andy/Kim,    This property is being placed on | JASON PURKISS |
| 7927 | | 06/12/2008 | REM | hold due a settlement offer GMAC is working. | JASON PURKISS |
| 7927 | | 06/12/2008 | REM | Please cease all activity.    Thanks,    Jason | JASON PURKISS |
| 7927 | CBR | 06/12/2008 | NT | Suppressed Credit due to (Optional Ins Claim). | API CSRV |
| 7927 | CBR | 06/12/2008 | NT | Suppression will expire (00/00/00). | API CSRV |
| 7927 | LMT | 06/11/2008 | NT | ****MANAGER COMMENT****spoke with b2 and adv that | TANISHIA ALBERT-MOSL |
| 7927 | LMT | 06/11/2008 | NT | the sale will not be rescinded. adv that ksaab has | TANISHIA ALBERT-MOSL |
| 7927 | LMT | 06/11/2008 | NT | done the research and has reviewed the info that | TANISHIA ALBERT-MOSL |
| 7927 | LMT | 06/11/2008 | NT | she sent to dbaker. adv that the loan number was | TANISHIA ALBERT-MOSL |
| 7927 | LMT | 06/11/2008 | NT | not on the check that she sent to us therefore we | TANISHIA ALBERT-MOSL |
| 7927 | LMT | 06/11/2008 | NT | had no acct to post the funds to leading to the | TANISHIA ALBERT-MOSL |
| 7927 | LMT | 06/11/2008 | NT | plan failing and the fc going through. adv that | TANISHIA ALBERT-MOSL |

# Loan History

Date Data as-of: March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ■7927 | LMT | 06/11/2008 | NT | ksaab even went as far as to check with the mod | TANISHIA ALBERT-MOSL |
| ■7927 | LMT | 06/11/2008 | NT | team to see if that would have even been an option | TANISHIA ALBERT-MOSL |
| ■7927 | LMT | 06/11/2008 | NT | for her and she did not qualify which would ahve | TANISHIA ALBERT-MOSL |
| ■7927 | LMT | 06/11/2008 | NT | been the only option with her tad. she wanted to | TANISHIA ALBERT-MOSL |
| ■7927 | LMT | 06/11/2008 | NT | speak with ksaab. adv that she is not available | TANISHIA ALBERT-MOSL |
| ■7927 | LMT | 06/11/2008 | NT | and that the info is not going to change. adv that | TANISHIA ALBERT-MOSL |
| ■7927 | LMT | 06/11/2008 | NT | this is the information that was noted by ksaab so | TANISHIA ALBERT-MOSL |
| ■7927 | LMT | 06/11/2008 | NT | speaking wiht her is not going to change it. she | TANISHIA ALBERT-MOSL |
| ■7927 | LMT | 06/11/2008 | NT | demanded that i have ksaab call her back., adv | TANISHIA ALBERT-MOSL |
| ■7927 | LMT | 06/11/2008 | NT | that i will pass on the info but can not guarantee | TANISHIA ALBERT-MOSL |
| ■7927 | LMT | 06/11/2008 | NT | if and when the call will be made. talbert | TANISHIA ALBERT-MOSL |
| ■7927 | LMT | 06/11/2008 | NT | x8746344 | TANISHIA ALBERT-MOSL |
| ■7927 | LMT | 06/11/2008 | NT | tt b1 v/i wanted to speak to a super sttd that she | LATINA DAWN |
| ■7927 | LMT | 06/11/2008 | NT | believe that the home was sold in error explained | LATINA DAWN |
| ■7927 | LMT | 06/11/2008 | NT | the notes to b1 sttd that is incorrect sttd she | LATINA DAWN |
| ■7927 | LMT | 06/11/2008 | NT | held up her end of the bargain so we should have | LATINA DAWN |
| ■7927 | LMT | 06/11/2008 | NT | reverse the sale adv no wanted super xfer talber | LATINA DAWN |
| ■7927 | LMT | 06/11/2008 | NT | ldawn | LATINA DAWN |
| ■7927 | | 06/11/2008 | REG | GENERAL REO    01-01            SEQNO 03 | FLORIE ROBINSON |
| ■7927 | | 06/11/2008 | REG | INVESTOR RELATIONS - REMOVED FROM SM  REMOVING | FLORIE ROBINSON |
| ■7927 | | 06/11/2008 | REG | FROM SM AND POSTING THE 3RD PARTY FUNDS. | FLORIE ROBINSON |
| ■7927 | CSH10 | 06/10/2008 | CIT | 002 DONE 06/10/08 BY TLR 01640 | MARY MARTIN |
| ■7927 | CSH10 | 06/10/2008 | CIT | TSK TYP 870-REO CLOSING HEL | MARY MARTIN |
| ■7927 | LMT | 06/10/2008 | NT | met with modification unit - in order for a mod to | KIRAN KUMAR RUDHRAVA |
| ■7927 | LMT | 06/10/2008 | NT | be sucsfl would have to do a large debt forgive- | KIRAN KUMAR RUDHRAVA |
| ■7927 | LMT | 06/10/2008 | NT | prop cannot be maintained by cust - proceeding | KIRAN KUMAR RUDHRAVA |
| ■7927 | LMT | 06/10/2008 | NT | with third party funds - loan will not be removed | KIRAN KUMAR RUDHRAVA |
| ■7927 | LMT | 06/10/2008 | NT | from reo. cust had sent in a check for the | KIRAN KUMAR RUDHRAVA |
| ■7927 | LMT | 06/10/2008 | NT | possibility of a mod-did not add acct num to | KIRAN KUMAR RUDHRAVA |
| ■7927 | LMT | 06/10/2008 | NT | check and the check could not be identified. it | KIRAN KUMAR RUDHRAVA |
| ■7927 | LMT | 06/10/2008 | NT | was returned to the bank with an unidentified | KIRAN KUMAR RUDHRAVA |
| ■7927 | LMT | 06/10/2008 | NT | payment letter dated 5/2/08-plan failed - | KIRAN KUMAR RUDHRAVA |
| ■7927 | LMT | 06/10/2008 | NT | prop went to sale. Prop will remain in reo ksaab | KIRAN KUMAR RUDHRAVA |
| ■7927 | LMT | 06/10/2008 | NT | 6932 | KIRAN KUMAR RUDHRAVA |
| ■7927 | LMT | 06/10/2008 | NT | tt b2-vai-calling in for update- emailed rep | JORDAN CORCORAN |

**Loan History**

Date Data as-of:  March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ███7927 | LMT | 06/10/2008 | NT | dbaker-sd still in research--dunlop6539 | JORDAN CORCORAN |
| ███7927 | LMT | 06/10/2008 | NT | ttb2 wanted to fu with DBAKER regarding a | SANJAY PATEL |
| ███7927 | LMT | 06/10/2008 | NT | research, Dee not avail sd will cb, her # 423 822 | SANJAY PATEL |
| ███7927 | LMT | 06/10/2008 | NT | 4630 or cell 423 304 2012. Patels 6266 | SANJAY PATEL |
| ███7927 | | 06/06/2008 | CBR | MANUAL REQUEST:  CBR STATUS =    94 | SYSTEM ID |
| ███7927 | | 06/06/2008 | REO | STGY APPRVL  01-00 2 (5091) UNCOMPLETED | FLORIE ROBINSON |
| ███7927 | LMT | 06/06/2008 | NT | rcvd signed agreement | CHARLIE JOHNSON |
| ███7927 | LMT5 | 06/05/2008 | NT | b1 c/o disputes fc sale on 052208..sd that she o/n | DEARTRUS BAKER |
| ███7927 | LMT5 | 06/05/2008 | NT | pmt of 2766.96 on 042808 tracking # | DEARTRUS BAKER |
| ███7927 | LMT5 | 06/05/2008 | NT | eb866986515us.. she stated that she placed only | DEARTRUS BAKER |
| ███7927 | LMT5 | 06/05/2008 | NT | her name on the check and wrote acct# on sticky | DEARTRUS BAKER |
| ███7927 | LMT5 | 06/05/2008 | NT | note.. adv. this is why loan went to sale.. she is | DEARTRUS BAKER |
| ███7927 | LMT5 | 06/05/2008 | NT | still disputing and wants investigation done. | DEARTRUS BAKER |
| ███7927 | LMT5 | 06/05/2008 | NT | consulted kathryn Saab and she is assisting in | DEARTRUS BAKER |
| ███7927 | LMT5 | 06/05/2008 | NT | trying to gather all info for full research. adv. | DEARTRUS BAKER |
| ███7927 | LMT5 | 06/05/2008 | NT | to allow us 5-7 bus working days. | DEARTRUS BAKER |
| ███7927 | LMT5 | 06/05/2008 | NT | dbaker6383 | DEARTRUS BAKER |
| ███7927 | CSH10 | 06/05/2008 | CIT | 002 new cit 870 | MARY MARTIN |
| ███7927 | CSH10 | 06/05/2008 | CIT | reo proc in 4y 116367.77 | MARY MARTIN |
| ███7927 | | 06/05/2008 | REE | EVICTION     01-00            SEQNO 03 | STEPHANIE PERRY |
| ███7927 | | 06/05/2008 | REE | Stefanie,        Please hold off on the sale of | STEPHANIE PERRY |
| ███7927 | | 06/05/2008 | REE | this property  potential litigation due to | STEPHANIE PERRY |
| ███7927 | | 06/05/2008 | REE | missing check prior to fcl. I am working with | STEPHANIE PERRY |
| ███7927 | | 06/05/2008 | REE | cashiering to find out more information at this | STEPHANIE PERRY |
| ███7927 | | 06/05/2008 | REE | time.        More information to come. | STEPHANIE PERRY |
| ███7927 | | 06/05/2008 | REE | Thanks        Kathryn Saab | STEPHANIE PERRY |
| ███7927 | LMT | 06/05/2008 | NT | sup review - email to cashiering for more | KIRAN KUMAR RUDHRAVA |
| ███7927 | LMT | 06/05/2008 | NT | information as to why cert funds check was | KIRAN KUMAR RUDHRAVA |
| ███7927 | LMT | 06/05/2008 | NT | returned on 4/28 - esc issue. Waiting on resp | KIRAN KUMAR RUDHRAVA |
| ███7927 | LMT | 06/05/2008 | NT | prior to proceeding - third party funds appear to | KIRAN KUMAR RUDHRAVA |
| ███7927 | LMT | 06/05/2008 | NT | be in 1U researching... ksaab 6932 | KIRAN KUMAR RUDHRAVA |
| ███7927 | | 06/05/2008 | REO | DECISION MADE       (1802) COMPLETED 06/05/08 | FLORIE ROBINSON |
| ███7927 | | 06/05/2008 | REO | OFFER APPRVL 01-00 2 (5093) COMPLETED 06/05/08 | FLORIE ROBINSON |
| ███7927 | | 06/05/2008 | REO | LST CHG APRVL01-00 2 (5092) COMPLETED 06/05/08 | FLORIE ROBINSON |
| ███7927 | | 06/05/2008 | REO | TASK:0601-REO-CHANGD FUPDT  12/01/08 | FLORIE ROBINSON |

**Loan History**

Date Data as-of: March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7927 | | 06/05/2008 | REO | PROPERTY LISTED    (231)  COMPLETED 06/05/08 | FLORIE ROBINSON |
| 7927 | | 06/05/2008 | REO | LOSS REVIEW2 01-00 2 (5025) COMPLETED 06/05/08 | FLORIE ROBINSON |
| 7927 | | 06/05/2008 | REO | STGY APPRVL  01-00 2 (5091) COMPLETED 06/05/08 | FLORIE ROBINSON |
| 7927 | | 06/05/2008 | REG | GENERAL REO   01-01              SEQNO 02 | FLORIE ROBINSON |
| 7927 | | 06/05/2008 | REG | INVESTOR RELATIONS - FUNDS RECEIVED AND POSTED. | FLORIE ROBINSON |
| 7927 | | 06/05/2008 | REG | REMOVING FROM SPECIAL MARKETING TO CLOSING HELD. | FLORIE ROBINSON |
| 7927 | | 06/04/2008 | NT | b2 ci vi, since accnt is under loss mit, gave ext | REY LUCERO |
| 7927 | | 06/04/2008 | NT | #, and xfr the call.. | REY LUCERO |
| 7927 | | 06/02/2008 | OL | WDOYCSH - FORECLOSURE SALE HELD | ANN EILERS |
| 7927 | STOP | 06/02/2008 | NT | wc5 rtng 2 cash ck 10536091 2766.96, 10542210 | ANN EILERS |
| 7927 | STOP | 06/02/2008 | NT | 1383.48 to cust reo sold | ANN EILERS |
| 7927 | CBR | 06/02/2008 | NT | Removed Credit Suppression Flag | API CSRV |
| 7927 | | 05/30/2008 | REE | EVICTION      01-00              SEQNO 02 | STEPHANIE PERRY |
| 7927 | | 05/30/2008 | REE | The following asset has been placed in special | STEPHANIE PERRY |
| 7927 | | 05/30/2008 | REE | marketing. We are in the process of accepting a | STEPHANIE PERRY |
| 7927 | | 05/30/2008 | REE | settlement offer. This asset will remain in | STEPHANIE PERRY |
| 7927 | | 05/30/2008 | REE | special marketing until further notice. | STEPHANIE PERRY |
| 7927 | | 05/30/2008 | REE | Asset:          7927  Investor: 8095461  Property: | STEPHANIE PERRY |
| 7927 | | 05/30/2008 | REE | 1021 ENGLEWOOD AV CHATTANOOGA, TN 37405 Asset | STEPHANIE PERRY |
| 7927 | | 05/30/2008 | REE | Mgr:Jason Purkiss Servicer: HF    Thanks, | STEPHANIE PERRY |
| 7927 | | 05/30/2008 | REE | Florie Robinson  REO - INVESTOR RELATIONS  GMAC | STEPHANIE PERRY |
| 7927 | | 05/30/2008 | REE | Rescap  P 214.874.2509 F 866.484.4805 | STEPHANIE PERRY |
| 7927 | | 05/30/2008 | REG | GENERAL REO   01-01              SEQNO 01 | FLORIE ROBINSON |
| 7927 | | 05/30/2008 | REG | INVESTOR RELATIONS - PLACED IN SM  The following | FLORIE ROBINSON |
| 7927 | | 05/30/2008 | REG | asset has been placed in special marketing. We are | FLORIE ROBINSON |
| 7927 | | 05/30/2008 | REG | in the process of accepting a settlement offer. | FLORIE ROBINSON |
| 7927 | | 05/30/2008 | REG | This asset will remain in special marketing until | FLORIE ROBINSON |
| 7927 | | 05/30/2008 | REG | further notice. | FLORIE ROBINSON |
| 7927 | FSV | 05/30/2008 | NT | loan on 606 - cancel prop pres and util | MIKE TANYAVIRIYA |
| 7927 | FSV | 05/30/2008 | NT | stop and cancel inspection. Place stop | MIKE TANYAVIRIYA |
| 7927 | FSV | 05/30/2008 | NT | and cancel all. Mike tx 3184 | MIKE TANYAVIRIYA |
| 7927 | | 05/29/2008 | FOR | 05/29/08 - 11:36 - 31486 | NEW TRAK SYSTEM ID |
| 7927 | | 05/29/2008 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| 7927 | | 05/29/2008 | FOR | following event: Eviction Referral | NEW TRAK SYSTEM ID |
| 7927 | | 05/29/2008 | FOR | Received by Attorney, completed on | NEW TRAK SYSTEM ID |

# Loan History

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ■7927 | | 05/29/2008 | FOR | 5/29/2008 (DIS) | NEW TRAK SYSTEM ID |
| ■7927 | | 05/29/2008 | FOR | 05/29/08 - 11:35 - 54613 | NEW TRAK SYSTEM ID |
| ■7927 | | 05/29/2008 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| ■7927 | | 05/29/2008 | FOR | following event: Eviction Referral | NEW TRAK SYSTEM ID |
| ■7927 | | 05/29/2008 | FOR | Sent to Attorney, completed on | NEW TRAK SYSTEM ID |
| ■7927 | | 05/29/2008 | FOR | 5/29/2008 | NEW TRAK SYSTEM ID |
| ■7927 | | 05/29/2008 | FOR | 05/29/08 - 11:35 - 54613 | NEW TRAK SYSTEM ID |
| ■7927 | | 05/29/2008 | FOR | Process opened 5/29/2008 by user | NEW TRAK SYSTEM ID |
| ■7927 | | 05/29/2008 | FOR | Stefanie Perry. | NEW TRAK SYSTEM ID |
| ■7927 | | 05/29/2008 | REO | Est recovery date. | STEPHANIE PERRY |
| ■7927 | | 05/29/2008 | REO | TASK:0032-REO-CHANGD FUPDT  11/29/08 | STEPHANIE PERRY |
| ■7927 | | 05/29/2008 | REO | REFERRED TO ATTORNEY (3601) COMPLETED 05/29/08 | STEPHANIE PERRY |
| ■7927 | | 05/29/2008 | REO | RA OFFER DATE      (4101) COMPLETED 05/29/08 | STEPHANIE PERRY |
| ■7927 | | 05/29/2008 | REO | EVICTION STARTED    (3501) COMPLETED 05/29/08 | STEPHANIE PERRY |

**Loan History**

**Date Data as-of:**  March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| █████ | | █████ | ██ | ████████████ | ███████ |
| █████ | | █████ | ██ | █████████████ | ███████ |
| █████ | | █████ | ██ | ██████████████ | ███████ |
| █████ | | █████ | ██ | ███████████████ | ███████ |
| █████ | | █████ | ██ | ████████████ | ███████ |
| █████ | | █████ | ██ | █████████████ | ███████ |
| █████ | | █████ | ██ | █████████████ | ███████ |
| █████ | | █████ | ██ | ████████████████ | ███████ |
| █████ | | █████ | ██ | ███████████ | ███████ |
| █████ | | █████ | ██ | █████████████ | ███████ |
| █████ | | █████ | ██ | █████████████ | ███████ |
| █████ | | █████ | ██ | ██████████████ | ███████ |
| █████ | | █████ | ██ | ███████████ | ███████ |
| █████ | | █████ | ██ | ██████████████ | ███████ |
| █████ | | █████ | ██ | ███████████████ | ███████ |
| █████ | | █████ | ██ | ██████ | ███████ |
| █████ | | █████ | ██ | ███████████ | ███████ |
| █████ | | █████ | ██ | █████████████ | ███████ |
| █████ | | █████ | ██ | ████████████████ | ███████ |
| █████ | | █████ | ██ | ██████████████ | ███████ |
| █████ | | █████ | ██ | ███████████ | ███████ |
| █████ | | █████ | ██ | ███████████ | ███████ |
| █████ | | █████ | ██ | █████████████ | ███████ |
| █████ | | █████ | ██ | ██████████████ | ███████ |
| █████ | | █████ | ██ | █████████████ | ███████ |
| █████ | | █████ | ██ | ████████████ | ███████ |
| █████ | | █████ | ██ | ██████████████ | ███████ |
| █████ | | █████ | ██ | ████████████████ | ███████ |
| █████ | | █████ | ██ | ████████████ | ███████ |

**Loan History**

Date Data as-of: March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7927 | | 05/28/2008 | REE | EVICTION      01-00           SEQNO 01 | STEPHANIE PERRY |
| 7927 | | 05/28/2008 | REE | The above referenced property was found occupied | STEPHANIE PERRY |
| 7927 | | 05/28/2008 | REE | today, 5/28/08. Our field rep noted people home. | STEPHANIE PERRY |
| 7927 | | 05/28/2008 | REE | Thank you,   Sharon Thompson | STEPHANIE PERRY |
| 7927 | | 05/28/2008 | REO | UNDETERM OCC      (264)  COMPLETED 05/28/08 | CORI MCWAY |
| 7927 | | 05/27/2008 | FOR | 05/27/08 - 08:25 - 60576 | NEW TRAK SYSTEM ID |
| 7927 | | 05/27/2008 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| 7927 | | 05/27/2008 | FOR | event: User has ended the Issue | NEW TRAK SYSTEM ID |
| 7927 | | 05/27/2008 | FOR | associated with this loan. Issue | NEW TRAK SYSTEM ID |
| 7927 | | 05/27/2008 | FOR | Type: Vesting Issue. Comments: The B | NEW TRAK SYSTEM ID |
| 7927 | | 05/27/2008 | FOR | 05/27/08 - 08:25 - 60576 | NEW TRAK SYSTEM ID |
| 7927 | | 05/27/2008 | FOR | ank of New York Trust Company, N.A. | NEW TRAK SYSTEM ID |
| 7927 | | 05/27/2008 | FOR | as successor to JPMorgan Chase Bank | NEW TRAK SYSTEM ID |
| 7927 | | 05/27/2008 | FOR | N.A. as Trustee. | NEW TRAK SYSTEM ID |
| 7927 | | 05/27/2008 | REO | INITIAL MAINT ORDERE (34)  COMPLETED 05/27/08 | JASON PURKISS |
| 7927 | | 05/27/2008 | REO | CHK OCCUPANCY      (261)  COMPLETED 05/27/08 | JASON PURKISS |
| 7927 | | 05/27/2008 | REO | NEW ASST ASSNED    (54)  COMPLETED 05/27/08 | JASON PURKISS |
| 7927 | | 05/27/2008 | REO | REVIEW ASSET ASSIGN  (42)  COMPLETED 05/27/08 | JASON PURKISS |
| 7927 | FSV | 05/27/2008 | NT | On 606 report, put stop on insp's shut | HEATHER KERN |
| 7927 | FSV | 05/27/2008 | NT | down prop pres tracking if open, XLD all | HEATHER KERN |
| 7927 | FSV | 05/27/2008 | NT | pres work and activated stop all flag | HEATHER KERN |
| 7927 | | 05/27/2008 | REO | REFERRED TO BROKER  (3)   COMPLETED 05/27/08 | NIA WOLFGRAMM |
| 7927 | | 05/27/2008 | REO | NOTIFICATION OF REO (2)  COMPLETED 05/27/08 | NIA WOLFGRAMM |
| 7927 | | 05/27/2008 | REO | ACQUIRED        (1)   COMPLETED 05/23/08 | NIA WOLFGRAMM |
| 7927 | | 05/23/2008 | FOR | 05/23/08 - 12:25 - 50025 | NEW TRAK SYSTEM ID |
| 7927 | | 05/23/2008 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| 7927 | | 05/23/2008 | FOR | event: User has created a | NEW TRAK SYSTEM ID |
| 7927 | | 05/23/2008 | FOR | Process-Level issue for this | NEW TRAK SYSTEM ID |
| 7927 | | 05/23/2008 | FOR | loan.Issue Type: Vesting Issue. Issu | NEW TRAK SYSTEM ID |
| 7927 | | 05/23/2008 | FOR | 05/23/08 - 12:25 - 50025 | NEW TRAK SYSTEM ID |
| 7927 | | 05/23/2008 | FOR | e Comments: Please provide the name | NEW TRAK SYSTEM ID |
| 7927 | | 05/23/2008 | FOR | of the entity titles vests into. | NEW TRAK SYSTEM ID |
| 7927 | | 05/23/2008 | FOR | Status: Active | NEW TRAK SYSTEM ID |

# Loan History

Date Data as-of: March 5, 2014

| Transaction s Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7927 | | 05/23/2008 | FOR | 05/23/08 - 10:14 - 38933 | NEW TRAK SYSTEM ID |
| 7927 | | 05/23/2008 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| 7927 | | 05/23/2008 | FOR | following event: Client System | NEW TRAK SYSTEM ID |
| 7927 | | 05/23/2008 | FOR | Updated, completed on 5/23/2008 | NEW TRAK SYSTEM ID |
| 7927 | | 05/23/2008 | FOR | 05/23/08 - 16:12 - 31822 | NEW TRAK SYSTEM ID |
| 7927 | | 05/23/2008 | FOR | System updated for the following | NEW TRAK SYSTEM ID |
| 7927 | | 05/23/2008 | FOR | event: User has approved the issue. | NEW TRAK SYSTEM ID |
| 7927 | | 05/23/2008 | FOR | issue type: Vesting Issue. Status: | NEW TRAK SYSTEM ID |
| 7927 | | 05/23/2008 | FOR | Active, Approved. | NEW TRAK SYSTEM ID |
| 7927 | LMT | 05/23/2008 | NT | snt docs to repay team | CHARLIE JOHNSON |
| 7927 | LMT | 05/23/2008 | NT | rcvd signed agreement and CF#10536091 $2766.96; | CHARLIE JOHNSON |
| 7927 | LMT | 05/23/2008 | NT | snt ck to Cynthia to return to borrower as fcl | CHARLIE JOHNSON |
| 7927 | LMT | 05/23/2008 | NT | sale already occurred | CHARLIE JOHNSON |
| 7927 | | 05/23/2008 | FOR | ACQUIRED        (606)  COMPLETED 05/22/08 | AIMEE BECKERICH |
| 7927 | | 05/23/2008 | FOR | NO REDEMPTION PERIOD (603)  COMPLETED 05/22/08 | AIMEE BECKERICH |
| 7927 | | 05/22/2008 | FOR | 05/22/08 - 13:44 - 49351 | NEW TRAK SYSTEM ID |
| 7927 | | 05/22/2008 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| 7927 | | 05/22/2008 | FOR | following event: Sale Held, | NEW TRAK SYSTEM ID |
| 7927 | | 05/22/2008 | FOR | completed on 5/22/2008 | NEW TRAK SYSTEM ID |
| 7927 | | 05/22/2008 | FOR | 05/22/08 - 13:44 - 49351 | NEW TRAK SYSTEM ID |
| 7927 | | 05/22/2008 | FOR | User has completed the | NEW TRAK SYSTEM ID |
| 7927 | | 05/22/2008 | FOR | F50_SaleResultsTN data form with | NEW TRAK SYSTEM ID |
| 7927 | | 05/22/2008 | FOR | the following entries:  Sale | NEW TRAK SYSTEM ID |
| 7927 | | 05/22/2008 | FOR | Comments: : Sold back to lender for | NEW TRAK SYSTEM ID |
| 7927 | | 05/22/2008 | FOR | 05/22/08 - 13:44 - 49351 | NEW TRAK SYSTEM ID |
| 7927 | | 05/22/2008 | FOR | $116381.77  Property Sold To: : | NEW TRAK SYSTEM ID |
| 7927 | | 05/22/2008 | FOR | Property Acquired | NEW TRAK SYSTEM ID |
| 7927 | | 05/22/2008 | FOR | FORECLOSURE SALE    (605)  COMPLETED 05/22/08 | NEW TRAK SYSTEM ID |
| 7927 | FCL | 05/22/2008 | NT | email, stated sending returned cashier's check of | WILLIAM JENSEN |
| 7927 | FCL | 05/22/2008 | NT | $2,766.96 to waterloo. adv. to contact loss mit | WILLIAM JENSEN |
| 7927 | FCL | 05/22/2008 | NT | dept. with payment intentions. WilliamJ/7557 | WILLIAM JENSEN |
| 7927 | | 05/21/2008 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 005 | SYSTEM ID |
| 7927 | | 05/20/2008 | D28 | FORCED BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7927 | | 05/17/2008 | FOR | FORECLOSURE LA CHANGED FROM 0112886 TO 0070891 | MARINA SERRANO |
| 7927 | | 05/15/2008 | FOR | 05/14/08 - 10:08 - 00007 | NEW TRAK SYSTEM ID |

**Loan History**

Date Data as-of:  March 5, 2014

| Transaction s Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▮7927 | | 05/15/2008 | FOR | Foreclosure - Bidding Instructions | NEW TRAK SYSTEM ID |
| ▮7927 | | 05/15/2008 | FOR | (NIE Id# 6966973) sent to McCurdy | NEW TRAK SYSTEM ID |
| ▮7927 | | 05/15/2008 | FOR | and Candler at 5/14/2008 10:01:54 | NEW TRAK SYSTEM ID |
| ▮7927 | | 05/15/2008 | FOR | AM by Chris Campoli | NEW TRAK SYSTEM ID |
| ▮7927 | | 05/15/2008 | FOR | 05/14/08 - 09:35 - 38999 | NEW TRAK SYSTEM ID |
| ▮7927 | | 05/15/2008 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| ▮7927 | | 05/15/2008 | FOR | following event: Bidding | NEW TRAK SYSTEM ID |
| ▮7927 | | 05/15/2008 | FOR | Instructions To Attorney, completed | NEW TRAK SYSTEM ID |
| ▮7927 | | 05/15/2008 | FOR | on 5/14/2008 | NEW TRAK SYSTEM ID |
| ▮7927 | | 05/15/2008 | FOR | 05/14/08 - 12:56 - 00007 | NEW TRAK SYSTEM ID |
| ▮7927 | | 05/15/2008 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| ▮7927 | | 05/15/2008 | FOR | following event: Bidding | NEW TRAK SYSTEM ID |
| ▮7927 | | 05/15/2008 | FOR | Instructions Received By Attorney, | NEW TRAK SYSTEM ID |
| ▮7927 | | 05/15/2008 | FOR | completed on 5/14/2008 | NEW TRAK SYSTEM ID |
| ▮7927 | | 05/15/2008 | PPT | PURSUE PROP PRES   (1)   COMPLETED 05/15/08 | JOSE RENATO MONZON |
| ▮7927 | | 05/14/2008 | FSV | INSP TP F RESULTS RCVD;  ORD DT=05/09/08 | SYSTEM ID |
| ▮7927 | | 05/14/2008 | FOR | BIDDING INSTRUCTIONS (609) COMPLETED 05/14/08 | CHRIS CAMPOLI |
| ▮7927 | | 05/09/2008 | CBR | FORECLOSURE STARTED | SYSTEM ID |
| ▮7927 | | 05/09/2008 | CBR | DELINQUENT: 120  DAYS | SYSTEM ID |
| ▮7927 | | 05/09/2008 | FSV | INSP TYPE F ORDERED;    REQ CD =AUTO DELQ | SYSTEM ID |
| ▮7927 | LMT | 05/07/2008 | NT | Called Delinquent Repay | TONYA EVANS |
| ▮7927 | | 05/05/2008 | FOR | 05/05/08 - 12:15 - 51307 | NEW TRAK SYSTEM ID |
| ▮7927 | | 05/05/2008 | FOR | User has completed the  Document | NEW TRAK SYSTEM ID |
| ▮7927 | | 05/05/2008 | FOR | Type Returned to Attorney data form | NEW TRAK SYSTEM ID |
| ▮7927 | | 05/05/2008 | FOR | with the following entries:  Type | NEW TRAK SYSTEM ID |
| ▮7927 | | 05/05/2008 | FOR | of Document: : appt being sent tuesd | NEW TRAK SYSTEM ID |
| ▮7927 | | 05/05/2008 | FOR | 05/05/08 - 12:15 - 51307 | NEW TRAK SYSTEM ID |
| ▮7927 | | 05/05/2008 | FOR | ay 5/6/08 | NEW TRAK SYSTEM ID |
| ▮7927 | | 05/05/2008 | FOR | 05/05/08 - 12:15 - 51307 | NEW TRAK SYSTEM ID |
| ▮7927 | | 05/05/2008 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| ▮7927 | | 05/05/2008 | FOR | following event: Doc | NEW TRAK SYSTEM ID |
| ▮7927 | | 05/05/2008 | FOR | Executed/Notarized and Sent to | NEW TRAK SYSTEM ID |
| ▮7927 | | 05/05/2008 | FOR | Attorney, completed on 5/5/2008AutoC | NEW TRAK SYSTEM ID |
| ▮7927 | | 05/05/2008 | FOR | 05/05/08 - 12:15 - 51307 | NEW TRAK SYSTEM ID |
| ▮7927 | | 05/05/2008 | FOR | lose from DDF | NEW TRAK SYSTEM ID |

# Loan History

Date Data as-of: March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7927 | | 05/02/2008 | DM | EARLY IND: SCORE 200 MODEL EI90S | SYSTEM ID |
| 7927 | | 05/02/2008 | FOR | 05/01/08 - 15:21 - 49059 | NEW TRAK SYSTEM ID |
| 7927 | | 05/02/2008 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| 7927 | | 05/02/2008 | FOR | following event: Printed For | NEW TRAK SYSTEM ID |
| 7927 | | 05/02/2008 | FOR | Execution, completed on 5/1/2008 | NEW TRAK SYSTEM ID |
| 7927 | | 05/02/2008 | FOR | 05/01/08 - 15:21 - 49059 | NEW TRAK SYSTEM ID |
| 7927 | | 05/02/2008 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| 7927 | | 05/02/2008 | FOR | following event: Document | NEW TRAK SYSTEM ID |
| 7927 | | 05/02/2008 | FOR | Execution, completed on 5/1/2008 | NEW TRAK SYSTEM ID |
| 7927 | | 05/02/2008 | FOR | 05/01/08 - 15:21 - 49059 | NEW TRAK SYSTEM ID |
| 7927 | | 05/02/2008 | FOR | User has completed the  Document | NEW TRAK SYSTEM ID |
| 7927 | | 05/02/2008 | FOR | Execution data form with the | NEW TRAK SYSTEM ID |
| 7927 | | 05/02/2008 | FOR | following entries: Document | NEW TRAK SYSTEM ID |
| 7927 | | 05/02/2008 | FOR | Execution: : Reviewed For Execution | NEW TRAK SYSTEM ID |
| 7927 | | 05/02/2008 | FOR | 05/01/08 - 15:21 - 49059 | NEW TRAK SYSTEM ID |
| 7927 | | 05/02/2008 | FOR | Process opened 5/1/2008 by user | NEW TRAK SYSTEM ID |
| 7927 | | 05/02/2008 | FOR | Tyra Wilson. | NEW TRAK SYSTEM ID |
| 7927 | INQ | 05/02/2008 | NT | email rec reg paymnt advised spk with rep today | KRISTEN CUMMINGS |
| 7927 | INQ | 05/02/2008 | NT | reg was adv research on pmt will take 5-7 b days | KRISTEN CUMMINGS |
| 7927 | INQ | 05/02/2008 | NT | adivsed to allow time annetteg.4741. | KRISTEN CUMMINGS |
| 7927 | RTLS | 05/02/2008 | NT | trial modification agreement sent | ROSEMARY LOVE |
| 7927 | CSH | 05/02/2008 | NT | b2 ci to ask about a pymnt sent express mail, | ARGELIA LANDEROS |
| 7927 | CSH | 05/02/2008 | NT | tracking#eb866986515us recived on 04/28/2008, | ARGELIA LANDEROS |
| 7927 | CSH | 05/02/2008 | NT | pymnt not posting on acct, not in Lori, sent | ARGELIA LANDEROS |
| 7927 | CSH | 05/02/2008 | NT | missed pymnt form, to track it, tat 5-7 busdays, | ARGELIA LANDEROS |
| 7927 | CSH | 05/02/2008 | NT | acct under LM rpp, transf to LM inf of pymtn | ARGELIA LANDEROS |
| 7927 | CSH | 05/02/2008 | NT | search///ANA L77610 | ARGELIA LANDEROS |
| 7927 | | 05/02/2008 | DM | B2 CI VAI; STS SHE SENT PMNT EXPRSS MAIL TO KY | CHARLESETTA LEWIS |
| 7927 | | 05/02/2008 | DM | ADDRSS I ADV IT HAS NOT PSTD. XFRD CALL TO C/S FOR | CHARLESETTA LEWIS |
| 7927 | | 05/02/2008 | DM | KY PH# .........CLEWIS 8746609 | CHARLESETTA LEWIS |
| 7927 | | 05/02/2008 | DM | ACTION/RESULT CD CHANGED FROM LMDC TO LMDC | CHARLESETTA LEWIS |
| 7927 | | 05/02/2008 | DM | B1 CLD IN REGARDS TO PAYMENT SHE SENT OVERNIGHT ON | CENAVIA LAND |
| 7927 | | 05/02/2008 | DM | FRIDAY, ADV B1 WE HAVEN'T RECVD THE | CENAVIA LAND |
| 7927 | | 05/02/2008 | DM | FUNDS....BCHAITEZVI | CENAVIA LAND |
| 7927 | | 05/02/2008 | DM | ACTION/RESULT CD CHANGED FROM OASK TO LMDC | CENAVIA LAND |

**Loan History**

Date Data as-of:  March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▉7927 | MOD | 05/01/2008 | NT | jgreen4 6967 | JONATHAN GREEN |
| ▉7927 | MOD | 05/01/2008 | NT | this is a  fixed rate loan  and no adjustment to | JONATHAN GREEN |
| ▉7927 | MOD | 05/01/2008 | NT | the rate needs to be done. The payment is | JONATHAN GREEN |
| ▉7927 | MOD | 05/01/2008 | NT | increasing due to capping, but should still be | JONATHAN GREEN |
| ▉7927 | MOD | 05/01/2008 | NT | affordable since they have quite a surplus, The | JONATHAN GREEN |
| ▉7927 | MOD | 05/01/2008 | NT | down payment submitted for the plan is $2766. | JONATHAN GREEN |
| ▉7927 | MOD | 05/01/2008 | NT | There are $0 in outstanding fees and costs at this | JONATHAN GREEN |
| ▉7927 | MOD | 05/01/2008 | NT | time.  The cooperation I have received from the | JONATHAN GREEN |
| ▉7927 | MOD | 05/01/2008 | NT | homeowner, accompanied by the proof of their | JONATHAN GREEN |
| ▉7927 | MOD | 05/01/2008 | NT | financial situation illustrates a capacity and | JONATHAN GREEN |
| ▉7927 | MOD | 05/01/2008 | NT | desire to keep the home.  By allowing for this | JONATHAN GREEN |
| ▉7927 | MOD | 05/01/2008 | NT | modification plan, we are allowing the homeowners | JONATHAN GREEN |
| ▉7927 | MOD | 05/01/2008 | NT | a chance to continue with their effort to get back | JONATHAN GREEN |
| ▉7927 | MOD | 05/01/2008 | NT | Proposed Solution: The proposed plan will be a 3 | JONATHAN GREEN |
| ▉7927 | MOD | 05/01/2008 | NT | month Trial modification.  While  on  Trial plan | JONATHAN GREEN |
| ▉7927 | MOD | 05/01/2008 | NT | will consist of no interest rate change. fix rate | JONATHAN GREEN |
| ▉7927 | MOD | 05/01/2008 | NT | mortg,  Rate will remain at 10.00% and is | JONATHAN GREEN |
| ▉7927 | MOD | 05/01/2008 | NT | adjustable.   The homeowner will be making an | JONATHAN GREEN |
| ▉7927 | MOD | 05/01/2008 | NT | additional installment of $58.37.  Upon successful | JONATHAN GREEN |
| ▉7927 | MOD | 05/01/2008 | NT | completion of the Trial modification, there will | JONATHAN GREEN |
| ▉7927 | MOD | 05/01/2008 | NT | be a remaining arrearage of $4274, which will be | JONATHAN GREEN |
| ▉7927 | MOD | 05/01/2008 | NT | debt forgave at the conclusion of the Trial | JONATHAN GREEN |
| ▉7927 | MOD | 05/01/2008 | NT | modification. | JONATHAN GREEN |
| ▉7927 | MOD | 05/01/2008 | NT | The homeowners have shown a strong desire to keep | JONATHAN GREEN |
| ▉7927 | MOD | 05/01/2008 | NT | their home, and I believe they are willing to do | JONATHAN GREEN |
| ▉7927 | MOD | 05/01/2008 | NT | whatever is necessary to reach that goal.  The | JONATHAN GREEN |
| ▉7927 | MOD | 05/01/2008 | NT | revised exterior value is $160K.  With an unpaid | JONATHAN GREEN |
| ▉7927 | MOD | 05/01/2008 | NT | principal balance of $107K, they have a current | JONATHAN GREEN |
| ▉7927 | MOD | 05/01/2008 | NT | LTV of 67%.  After the capitalization LTV will be | JONATHAN GREEN |
| ▉7927 | MOD | 05/01/2008 | NT | approximately 67%  I feel that this plan is in | JONATHAN GREEN |
| ▉7927 | MOD | 05/01/2008 | NT | both parties best interest by allowing payments to | JONATHAN GREEN |
| ▉7927 | MOD | 05/01/2008 | NT | continue on the property, allowing the homeowners | JONATHAN GREEN |
| ▉7927 | MOD | 05/01/2008 | NT | the opportunity to remain in the property, and by | JONATHAN GREEN |
| ▉7927 | MOD | 05/01/2008 | NT | allowing HFN to sustain minimal losses through | JONATHAN GREEN |
| ▉7927 | MOD | 05/01/2008 | NT | this plan. | JONATHAN GREEN |

# Loan History

Date Data as-of: March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7927 | MOD | 05/01/2008 | NT | The arrearage is too great an amount to pay down | JONATHAN GREEN |
| 7927 | MOD | 05/01/2008 | NT | on a plan of 12 months.  They do not have the | JONATHAN GREEN |
| 7927 | MOD | 05/01/2008 | NT | ability to reinstate because the funds they are | JONATHAN GREEN |
| 7927 | MOD | 05/01/2008 | NT | submitting for the down payment is the largest | JONATHAN GREEN |
| 7927 | MOD | 05/01/2008 | NT | amount they could acquire at this time.  They have | JONATHAN GREEN |
| 7927 | MOD | 05/01/2008 | NT | $2766.96 available 04/28/08  for a down payment. | JONATHAN GREEN |
| 7927 | MOD | 05/01/2008 | NT | With a down payment of $2766, a 12-month plan | JONATHAN GREEN |
| 7927 | MOD | 05/01/2008 | NT | would require an approximate additional amount of | JONATHAN GREEN |
| 7927 | MOD | 05/01/2008 | NT | $666, which will greatly exceed their capacity, | JONATHAN GREEN |
| 7927 | MOD | 05/01/2008 | NT | and I believe would put them in a position to fail | JONATHAN GREEN |
| 7927 | MOD | 05/01/2008 | NT | if we chose this option.  Mod is the best option | JONATHAN GREEN |
| 7927 | MOD | 05/01/2008 | NT | based on NPV of $7683  and estimated gain of $7947 | JONATHAN GREEN |
| 7927 | MOD | 05/01/2008 | NT | The payment history on this account reflects the | JONATHAN GREEN |
| 7927 | MOD | 05/01/2008 | NT | Reason for Delinquency.  Prior to the delinquency, | JONATHAN GREEN |
| 7927 | MOD | 05/01/2008 | NT | the account had good pay history, which | JONATHAN GREEN |
| 7927 | MOD | 05/01/2008 | NT | deteriorated because of RFD.  Other Workout | JONATHAN GREEN |
| 7927 | MOD | 05/01/2008 | NT | Options Considered:  Homeowner is not contributing | JONATHAN GREEN |
| 7927 | MOD | 05/01/2008 | NT | to a 401K plan.  h/o has tried to refins and has | JONATHAN GREEN |
| 7927 | MOD | 05/01/2008 | NT | tried to get a 2nd job , They do not have any | JONATHAN GREEN |
| 7927 | MOD | 05/01/2008 | NT | family that they can turn to for assistance and | JONATHAN GREEN |
| 7927 | MOD | 05/01/2008 | NT | they have no other assets.  The credit report is | JONATHAN GREEN |
| 7927 | MOD | 05/01/2008 | NT | in line with the loan application information. | JONATHAN GREEN |
| 7927 | MOD | 05/01/2008 | NT | There have been 0 recent attempt(s) at a repayment | JONATHAN GREEN |
| 7927 | MOD | 05/01/2008 | NT | Capacity: We received a referral and workout | JONATHAN GREEN |
| 7927 | MOD | 05/01/2008 | NT | package revealing a total household income is | JONATHAN GREEN |
| 7927 | MOD | 05/01/2008 | NT | $3300.  The total household expenses are $3163. | JONATHAN GREEN |
| 7927 | MOD | 05/01/2008 | NT | They currently have a coverage ratio of  104. | JONATHAN GREEN |
| 7927 | MOD | 05/01/2008 | NT | which leaves a surplus of $137.  I believe this | JONATHAN GREEN |
| 7927 | MOD | 05/01/2008 | NT | plan is the best option to allow them a chance to | JONATHAN GREEN |
| 7927 | MOD | 05/01/2008 | NT | catch the mortgage up, while at the same time | JONATHAN GREEN |
| 7927 | MOD | 05/01/2008 | NT | establishing their ability to pay their monthly | JONATHAN GREEN |
| 7927 | MOD | 05/01/2008 | NT | mortgage payment with us.  I believe that they | JONATHAN GREEN |
| 7927 | MOD | 05/01/2008 | NT | have provided sufficient desire to maintain | JONATHAN GREEN |
| 7927 | MOD | 05/01/2008 | NT | ownership of this property and are willing to do | JONATHAN GREEN |
| 7927 | MOD | 05/01/2008 | NT | whatever is necessary to keep this property. | JONATHAN GREEN |

# Loan History

Date Data as-of:  March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7927 | MOD | 05/01/2008 | NT | 3mth trail mod approved, jgreen4 6967 | JONATHAN GREEN |
| 7927 | | 05/01/2008 | LMT | BPO OBTAINED        (5)   COMPLETED 05/01/08 | JONATHAN GREEN |
| 7927 | | 05/01/2008 | LMT | BPO ORDERED        (4)   COMPLETED 05/01/08 | JONATHAN GREEN |
| 7927 | | 05/01/2008 | LMT | TRIAL MOD APPROVED    (1052) COMPLETED 05/01/08 | JONATHAN GREEN |
| 7927 | | 05/01/2008 | LMT | PURSUE LN MODIFCATN  (1000) COMPLETED 05/01/08 | JONATHAN GREEN |
| 7927 | COL10 | 05/01/2008 | CIT | 001 DONE 05/01/08 BY TLR 20285 | JONATHAN GREEN |
| 7927 | COL10 | 05/01/2008 | CIT | TSK TYP 847-LOAN MOD REFERR | JONATHAN GREEN |
| 7927 | | 04/30/2008 | FOR | 04/30/08 - 08:58 - 49351 | NEW TRAK SYSTEM ID |
| 7927 | | 04/30/2008 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| 7927 | | 04/30/2008 | FOR | following event: First Publication, | NEW TRAK SYSTEM ID |
| 7927 | | 04/30/2008 | FOR | completed on 4/30/2008 | NEW TRAK SYSTEM ID |
| 7927 | | 04/30/2008 | FOR | FIRST LEGAL ACTION  (601)  COMPLETED 04/30/08 | NEW TRAK SYSTEM ID |
| 7927 | LMT | 04/30/2008 | NT | Called Customer as Repayment is Late | TONYA EVANS |
| 7927 | | 04/29/2008 | FOR | 04/29/08 - 09:24 - 49351 | NEW TRAK SYSTEM ID |
| 7927 | | 04/29/2008 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| 7927 | | 04/29/2008 | FOR | following event: Upload Document, | NEW TRAK SYSTEM ID |
| 7927 | | 04/29/2008 | FOR | completed on 4/29/2008 | NEW TRAK SYSTEM ID |
| 7927 | | 04/29/2008 | FOR | 04/29/08 - 09:23 - 49351 | NEW TRAK SYSTEM ID |
| 7927 | | 04/29/2008 | FOR | User has completed the  Upload | NEW TRAK SYSTEM ID |
| 7927 | | 04/29/2008 | FOR | Document data form with the | NEW TRAK SYSTEM ID |
| 7927 | | 04/29/2008 | FOR | following entries:  Select File: : | NEW TRAK SYSTEM ID |
| 7927 | | 04/29/2008 | FOR | SOT.pdf  Select Document Type: : SUB | NEW TRAK SYSTEM ID |
| 7927 | | 04/29/2008 | FOR | 04/29/08 - 09:23 - 49351 | NEW TRAK SYSTEM ID |
| 7927 | | 04/29/2008 | FOR | STITUTION OF TRUSTEE  Other | NEW TRAK SYSTEM ID |
| 7927 | | 04/29/2008 | FOR | Document Type: :  Special | NEW TRAK SYSTEM ID |
| 7927 | | 04/29/2008 | FOR | Instructions: : | NEW TRAK SYSTEM ID |
| 7927 | | 04/29/2008 | FOR | 04/29/08 - 09:23 - 49351 | NEW TRAK SYSTEM ID |
| 7927 | | 04/29/2008 | FOR | Process opened 4/29/2008 by user | NEW TRAK SYSTEM ID |
| 7927 | | 04/29/2008 | FOR | Paul Bogle. | NEW TRAK SYSTEM ID |
| 7927 | | 04/28/2008 | DM | PROMISE BROKEN 04/28/08 PROMISE DT 04/28/08 | SYSTEM ID |
| 7927 | | 04/28/2008 | FOR | 04/28/08 - 10:04 - 49351 | NEW TRAK SYSTEM ID |
| 7927 | | 04/28/2008 | FOR | User has completed the  Sale | NEW TRAK SYSTEM ID |
| 7927 | | 04/28/2008 | FOR | Scheduled For data form with the | NEW TRAK SYSTEM ID |
| 7927 | | 04/28/2008 | FOR | following entries:  Previous Sale | NEW TRAK SYSTEM ID |
| 7927 | | 04/28/2008 | FOR | Date: : 5/15/2008  Sale Postponement | NEW TRAK SYSTEM ID |

# Loan History

**Date Data as-of:** March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7927 | | 04/28/2008 | FOR | 04/28/08 - 10:04 - 49351 | NEW TRAK SYSTEM ID |
| 7927 | | 04/28/2008 | FOR | Reason: : Publication Error | NEW TRAK SYSTEM ID |
| 7927 | | 04/28/2008 | FOR | 04/28/08 - 10:04 - 49351 | NEW TRAK SYSTEM ID |
| 7927 | | 04/28/2008 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| 7927 | | 04/28/2008 | FOR | following event: Sale Scheduled | NEW TRAK SYSTEM ID |
| 7927 | | 04/28/2008 | FOR | For. User changed date completed | NEW TRAK SYSTEM ID |
| 7927 | | 04/28/2008 | FOR | from 5/15/2008 to completed on 5/22/ | NEW TRAK SYSTEM ID |
| 7927 | | 04/28/2008 | FOR | 04/28/08 - 10:04 - 49351 | NEW TRAK SYSTEM ID |
| 7927 | | 04/28/2008 | FOR | 2008. Reason: Rescheduled to allow | NEW TRAK SYSTEM ID |
| 7927 | | 04/28/2008 | FOR | for full publication run. | NEW TRAK SYSTEM ID |
| 7927 | | 04/28/2008 | FOR | TASK:0605-FCL-CHANGD FUPDT  05/22/08 | NEW TRAK SYSTEM ID |
| 7927 | | 04/25/2008 | CBR | DELINQUENT:  90  DAYS | SYSTEM ID |
| 7927 | FSV | 04/23/2008 | NT | Loan on pres repay report. Ran script | KIM BERRY |
| 7927 | FSV | 04/23/2008 | NT | to cancel any open insp on mtgs. | KIM BERRY |
| 7927 | | 04/22/2008 | FOR | 04/22/08 - 12:08 - 47442 | NEW TRAK SYSTEM ID |
| 7927 | | 04/22/2008 | FOR | Fees and costs response:  Good | NEW TRAK SYSTEM ID |
| 7927 | | 04/22/2008 | FOR | Through:5/15/2008 Fees: 564.50 | NEW TRAK SYSTEM ID |
| 7927 | | 04/22/2008 | FOR | Costs: 1681.03 Comment: Pub is | NEW TRAK SYSTEM ID |
| 7927 | | 04/22/2008 | FOR | estimated. Actual is not available y | NEW TRAK SYSTEM ID |
| 7927 | | 04/22/2008 | FOR | 04/22/08 - 12:08 - 47442 | NEW TRAK SYSTEM ID |
| 7927 | | 04/22/2008 | FOR | et. | NEW TRAK SYSTEM ID |
| 7927 | | 04/22/2008 | FOR | 04/22/08 - 12:08 - 47442 | NEW TRAK SYSTEM ID |
| 7927 | | 04/22/2008 | FOR | A fees and costs Response Comment | NEW TRAK SYSTEM ID |
| 7927 | | 04/22/2008 | FOR | has been completed for this loan by | NEW TRAK SYSTEM ID |
| 7927 | | 04/22/2008 | FOR | Penny Ray | NEW TRAK SYSTEM ID |
| 7927 | | 04/22/2008 | FOR | 04/22/08 - 11:26 - 47221 | NEW TRAK SYSTEM ID |
| 7927 | | 04/22/2008 | FOR | A fees and costs request has been | NEW TRAK SYSTEM ID |
| 7927 | | 04/22/2008 | FOR | entered for this loan by LaShanda | NEW TRAK SYSTEM ID |
| 7927 | | 04/22/2008 | FOR | Demery, good through 5/15/2008 | NEW TRAK SYSTEM ID |
| 7927 | | 04/22/2008 | DM | TT B2 AND SHE STATES THAT THE RFD IS DUE TO HER | LASHAND DEMERY |
| 7927 | | 04/22/2008 | DM | AND HER HUSBAND SEPARATING AND HER BEING LAID OFF | LASHAND DEMERY |
| 7927 | | 04/22/2008 | DM | WORK. B2 SENT IN A PAYMENT OF $2766.96 THAT WAS | LASHAND DEMERY |
| 7927 | | 04/22/2008 | DM | RETURNED ON 4/17/08- SET UP A 3 MONTH TEMP PLAN | LASHAND DEMERY |
| 7927 | | 04/22/2008 | DM | AND REFERRED FOR A MODIFICATION- ACCEPTED THE | LASHAND DEMERY |
| 7927 | | 04/22/2008 | DM | $2766.96 AS THE DOWN PAYMENT. LDEMERY 6535 | LASHAND DEMERY |

# Loan History

Date Data as-of:  March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7927 | | 04/22/2008 | DM | ACTION/RESULT CD CHANGED FROM OASK TO LMDC | LASHAND DEMERY |
| 7927 | 30DAY | 04/22/2008 | NT | 30 days to sale (no contact) letter | ROSEMARY LOVE |
| 7927 | | 04/22/2008 | LMT | LMT SOLUTN PURSUED   (6)   COMPLETED 04/22/08 | LASHAND DEMERY |
| 7927 | | 04/22/2008 | LMT | COMPLETE FIN PKG REC (3)   COMPLETED 04/22/08 | LASHAND DEMERY |
| 7927 | | 04/22/2008 | LMT | REPAY APPRV BY INV  (4232) COMPLETED 04/22/08 | LASHAND DEMERY |
| 7927 | | 04/22/2008 | LMT | REPAY RECOMD TO INV (4231) COMPLETED 04/22/08 | LASHAND DEMERY |
| 7927 | | 04/22/2008 | LMT | ASSESS FINANCL PKG   (2)   COMPLETED 04/22/08 | LASHAND DEMERY |
| 7927 | | 04/22/2008 | LMT | REFERRD TO LOSS MIT  (1)   COMPLETED 04/22/08 | LASHAND DEMERY |
| 7927 | | 04/22/2008 | LMT | PURSUE REPAY PLAN   (4000) COMPLETED 04/22/08 | LASHAND DEMERY |
| 7927 | | 04/22/2008 | LMT | APPROVED FOR LMT 04/22/08 | LASHAND DEMERY |
| 7927 | MOD | 04/22/2008 | NT | MODIFICATION REFERRAL | LASHAND DEMERY |
| 7927 | MOD | 04/22/2008 | NT | RFD: B2 STATES THAT THE RFD IS DUE TO HER AND HER | LASHAND DEMERY |
| 7927 | MOD | 04/22/2008 | NT | HUSBAND SEPARATING AND SHE WAS LAID OFF WORK FOR 7 | LASHAND DEMERY |
| 7927 | MOD | 04/22/2008 | NT | MONTHS WHICH CAUSED HER TO FALL EVEN FUTHER | LASHAND DEMERY |
| 7927 | MOD | 04/22/2008 | NT | BEHIND. B2 STATES THAT SHE WENT BACK TO WORK IN | LASHAND DEMERY |
| 7927 | MOD | 04/22/2008 | NT | 8/07 BUT TRYING TO PLAY CATCH UP EXHALTED ALL OF | LASHAND DEMERY |
| 7927 | MOD | 04/22/2008 | NT | HER SAVINGS AND FELL BEHIND IN 1/08. SHE IS NOW | LASHAND DEMERY |
| 7927 | MOD | 04/22/2008 | NT | BACK TO WORK AND ON TRACK AND ABLE TO MAKE HER | LASHAND DEMERY |
| 7927 | MOD | 04/22/2008 | NT | PAYMENTS. | LASHAND DEMERY |
| 7927 | MOD | 04/22/2008 | NT | START OF RFD: 1/08-- END OF RFD: 4/08 --401K:NONE | LASHAND DEMERY |
| 7927 | MOD | 04/22/2008 | NT | METHOD OF PAYMENT:W/U - REFI- NOT ABLE DUE TO | LASHAND DEMERY |
| 7927 | MOD | 04/22/2008 | NT | CREDIT- BPO ORDERED: YES-- ESCROWED: YES | LASHAND DEMERY |
| 7927 | COL10 | 04/22/2008 | CIT | 001 CIT 847-MODIFICATION REFERRAL | LASHAND DEMERY |
| 7927 | LMT | 04/22/2008 | NT | SEND CIT 840 TO TELLER 1534 | LASHAND DEMERY |
| 7927 | LMT | 04/22/2008 | NT | DOWN PAYMENT AMOUNT: $2766.96 | LASHAND DEMERY |
| 7927 | LMT | 04/22/2008 | NT | INSTALLMENT AMOUNT: $1383.48 | LASHAND DEMERY |
| 7927 | LMT | 04/22/2008 | NT | INSTALLMENT LENGTH: $1383.48 | LASHAND DEMERY |
| 7927 | LMT | 04/22/2008 | NT | RFD: B2 STATES THAT THE RFD IS DUE TO HER AND HER | LASHAND DEMERY |
| 7927 | LMT | 04/22/2008 | NT | HUSBAND SEPARATING AND SHE WAS LAID OFF WORK FOR 7 | LASHAND DEMERY |
| 7927 | LMT | 04/22/2008 | NT | MONTHS WHICH CAUSED HER TO FALL EVEN FUTHER | LASHAND DEMERY |
| 7927 | LMT | 04/22/2008 | NT | BEHIND. B2 STATES THAT SHE WENT BACK TO WORK IN | LASHAND DEMERY |
| 7927 | LMT | 04/22/2008 | NT | 8/07 BUT TRYING TO PLAY CATCH UP EXHALTED ALL OF | LASHAND DEMERY |
| 7927 | LMT | 04/22/2008 | NT | HER SAVINGS AND FELL BEHIND IN 1/08. SHE IS NOW | LASHAND DEMERY |
| 7927 | LMT | 04/22/2008 | NT | BACK TO WORK AND ON TRACK AND ABLE TO MAKE HER | LASHAND DEMERY |
| 7927 | LMT | 04/22/2008 | NT | PAYMENTS. | LASHAND DEMERY |

# Loan History

Date Data as-of:  March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7927 | LMT | 04/22/2008 | NT | START OF RFD: 1/08-- END OF RFD: 4/08 --401K:NONE | LASHAND DEMERY |
| 7927 | LMT | 04/22/2008 | NT | METHOD OF PAYMENT:W/U - FUTURE CAPACITY- B2 IS | LASHAND DEMERY |
| 7927 | LMT | 04/22/2008 | NT | WORKING.--INTENT- TO KEEP THE PROPERTY-- SOURCE OF | LASHAND DEMERY |
| 7927 | LMT | 04/22/2008 | NT | FUNDS:EMPLOYMENT CHECK | LASHAND DEMERY |
| 7927 | | 04/22/2008 | FOR | LMT BORR FIN REC ADDED | LASHAND DEMERY |
| 7927 | | 04/22/2008 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 004 | SYSTEM ID |
| 7927 | | 04/21/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7927 | | 04/17/2008 | FOR | 04/17/08 - 14:51 - 31486 | NEW TRAK SYSTEM ID |
| 7927 | | 04/17/2008 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| 7927 | | 04/17/2008 | FOR | following event: Title Report | NEW TRAK SYSTEM ID |
| 7927 | | 04/17/2008 | FOR | Received, completed on 4/17/2008 | NEW TRAK SYSTEM ID |
| 7927 | | 04/17/2008 | FOR | (DIS) | NEW TRAK SYSTEM ID |
| 7927 | STOP | 04/17/2008 | NT | Returned eCom ebox for 2766.96 as 2 of 4 pymts due | KAREE DIXON |
| 7927 | | 04/17/2008 | NT | 2766.96     REVERSED-MISAPPLIED | KAREE DIXON |
| 7927 | SKIP | 04/16/2008 | NT | No phone number returned from Innovis skip file | CHAKRADHAR GOJE |
| 7927 | | 04/11/2008 | FOR | FORECLOSURE LA CHANGED FROM 0070891 TO 0112886 | MARINA SERRANO |
| 7927 | | 04/10/2008 | FOR | 04/10/08 - 06:52 - 00007 | NEW TRAK SYSTEM ID |
| 7927 | | 04/10/2008 | FOR | Process opened 4/10/2008 by user | NEW TRAK SYSTEM ID |
| 7927 | | 04/10/2008 | FOR | Fidelity AutoProc. | NEW TRAK SYSTEM ID |
| 7927 | | 04/10/2008 | FOR | 04/10/08 - 14:18 - 00007 | NEW TRAK SYSTEM ID |
| 7927 | | 04/10/2008 | FOR | Foreclosure (NIE Id# 6558433) | NEW TRAK SYSTEM ID |
| 7927 | | 04/10/2008 | FOR | picked up by firm McCurdy and | NEW TRAK SYSTEM ID |
| 7927 | | 04/10/2008 | FOR | Candler at 4/10/2008 2:01:59 PM by | NEW TRAK SYSTEM ID |
| 7927 | | 04/10/2008 | FOR | James Buckingham | NEW TRAK SYSTEM ID |
| 7927 | | 04/10/2008 | FOR | 04/10/08 - 15:12 - 31486 | NEW TRAK SYSTEM ID |
| 7927 | | 04/10/2008 | FOR | Process opened 4/10/2008 by user | NEW TRAK SYSTEM ID |
| 7927 | | 04/10/2008 | FOR | Dan Cannon. | NEW TRAK SYSTEM ID |
| 7927 | | 04/10/2008 | FOR | 04/10/08 - 15:12 - 31486 | NEW TRAK SYSTEM ID |
| 7927 | | 04/10/2008 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| 7927 | | 04/10/2008 | FOR | following event: Sale Scheduled | NEW TRAK SYSTEM ID |
| 7927 | | 04/10/2008 | FOR | For, completed on 5/15/2008 (DIS) | NEW TRAK SYSTEM ID |
| 7927 | | 04/10/2008 | FOR | 04/10/08 - 14:17 - 31486 | NEW TRAK SYSTEM ID |
| 7927 | | 04/10/2008 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| 7927 | | 04/10/2008 | FOR | following event: File Received By | NEW TRAK SYSTEM ID |
| 7927 | | 04/10/2008 | FOR | Attorney, completed on 4/10/2008 | NEW TRAK SYSTEM ID |

# Loan History

Date Data as-of:  March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7927 | | 04/10/2008 | FOR | (DIS) | NEW TRAK SYSTEM ID |
| 7927 | | 04/10/2008 | FOR | 04/10/08 - 14:11 - 00007 | NEW TRAK SYSTEM ID |
| 7927 | | 04/10/2008 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| 7927 | | 04/10/2008 | FOR | following event: File Referred To | NEW TRAK SYSTEM ID |
| 7927 | | 04/10/2008 | FOR | Attorney, completed on 4/10/2008 | NEW TRAK SYSTEM ID |
| 7927 | | 04/10/2008 | FOR | 04/10/08 - 14:03 - 00007 | NEW TRAK SYSTEM ID |
| 7927 | | 04/10/2008 | FOR | Foreclosure (NIE Id# 6558433) sent | NEW TRAK SYSTEM ID |
| 7927 | | 04/10/2008 | FOR | to McCurdy and Candler at 4/10/2008 | NEW TRAK SYSTEM ID |
| 7927 | | 04/10/2008 | FOR | 1:52:40 PM by Automated Tasks | NEW TRAK SYSTEM ID |
| 7927 | | 04/10/2008 | FOR | TASK:0605-FCL-CHANGD FUPDT  05/15/08 | NEW TRAK SYSTEM ID |
| 7927 | | 04/10/2008 | FOR | REFERRED TO ATTORNEY (2)   COMPLETED 04/10/08 | NEW TRAK SYSTEM ID |
| 7927 | | 04/10/2008 | FOR | SALE SCHEDULED     (604) COMPLETED 04/10/08 | NEW TRAK SYSTEM ID |
| 7927 | | 04/09/2008 | FOR | FORECLOSURE APPROVAL (1)   COMPLETED 04/09/08 | MARINA SERRANO |
| 7927 | FCL | 04/09/2008 | NT | Foreclosure Referral Review Completed | MARINA SERRANO |
| 7927 | FCL | 04/09/2008 | NT | and Management Approved | MARINA SERRANO |
| 7927 | | 04/09/2008 | FOR | APPROVED FOR FCL 04/09/08 | MARINA SERRANO |
| 7927 | | 04/03/2008 | FSV | INSP TP D RESULTS RCVD;  ORD DT=03/28/08 | SYSTEM ID |
| 7927 | | 04/03/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 04/03/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 04/03/2008 | DMD | 04/03/08 14:20:16 ANS MACH | DAVOX INCOMING FILE |
| 7927 | | 04/02/2008 | DM | EARLY IND: SCORE 307 MODEL EI90S | SYSTEM ID |
| 7927 | | 04/02/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 04/02/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 04/02/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 04/02/2008 | DMD | 04/02/08 13:35:23          No Answer | DAVOX INCOMING FILE |
| 7927 | | 04/02/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 04/02/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 04/02/2008 | DMD | 04/02/08 09:58:05          No Answer | DAVOX INCOMING FILE |
| 7927 | | 04/02/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 04/01/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 04/01/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 04/01/2008 | DMD | 04/01/08 17:12:16 NO ANS | DAVOX INCOMING FILE |
| 7927 | | 03/31/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 03/31/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |

# Loan History

Date Data as-of: March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ███ 7927 | | 03/31/2008 | DMD | 03/31/08 11:16:27 ANS MACH | DAVOX INCOMING FILE |
| ███ 7927 | | 03/31/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███ 7927 | | 03/31/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███ 7927 | | 03/31/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███ 7927 | | 03/31/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███ 7927 | | 03/31/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███ 7927 | | 03/31/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███ 7927 | | 03/31/2008 | DMD | 03/24/08 13:01:25          No Answer | DAVOX INCOMING FILE |
| ███ 7927 | | 03/31/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███ 7927 | | 03/31/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███ 7927 | | 03/31/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███ 7927 | | 03/31/2008 | DMD | 03/24/08 10:00:24          No Answer | DAVOX INCOMING FILE |
| ███ 7927 | | 03/31/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███ 7927 | | 03/28/2008 | FSV | INSP TYPE D ORDERED;    REQ CD =AUTO DELQ | SYSTEM ID |
| ███ 7927 | | 03/28/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███ 7927 | | 03/28/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███ 7927 | | 03/28/2008 | DMD | 03/28/08 11:48:43 ANS MACH | DAVOX INCOMING FILE |
| ███ 7927 | | 03/28/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███ 7927 | | 03/28/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███ 7927 | | 03/28/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███ 7927 | | 03/28/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███ 7927 | | 03/28/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███ 7927 | | 03/28/2008 | DMD | 03/24/08 13:01:25          No Answer | DAVOX INCOMING FILE |
| ███ 7927 | | 03/28/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███ 7927 | | 03/28/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███ 7927 | | 03/28/2008 | DMD | 03/24/08 10:00:24          No Answer | DAVOX INCOMING FILE |
| ███ 7927 | | 03/28/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███ 7927 | | 03/27/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███ 7927 | | 03/27/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███ 7927 | | 03/27/2008 | DMD | 03/27/08 14:15:44 ANS MACH | DAVOX INCOMING FILE |
| ███ 7927 | | 03/25/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███ 7927 | | 03/25/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███ 7927 | | 03/25/2008 | DMD | 03/25/08 13:28:13 ANS MACH | DAVOX INCOMING FILE |

# Loan History

Date Data as-of: March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | | Trans User Name |
|---|---|---|---|---|---|---|
| 7927 | | 03/21/2008 | CBR | DELINQUENT:  60  DAYS | | SYSTEM ID |
| 7927 | | 03/21/2008 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 003 | | SYSTEM ID |
| 7927 | | 03/20/2008 | DMD | 03/20/08 17:28:19 | LEFT MESSAGE | DAVOX INCOMING FILE |
| 7927 | | 03/20/2008 | DMD | 03/20/08 12:48:27 | NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 03/20/2008 | DMD | 03/20/08 09:20:47 | LEFT MESSAGE | DAVOX INCOMING FILE |
| 7927 | | 03/20/2008 | DMD | 03/20/08 18:05:34 ANS MACH | | DAVOX INCOMING FILE |
| 7927 | | 03/20/2008 | DMD | 03/20/08 15:38:32 ANS MACH | | DAVOX INCOMING FILE |
| 7927 | | 03/20/2008 | DMD | 03/20/08 09:06:35 ANS MACH | | DAVOX INCOMING FILE |
| 7927 | | 03/19/2008 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 7927 | | 03/19/2008 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 7927 | | 03/19/2008 | DMD | 03/19/08 18:27:10 ANS MACH | | DAVOX INCOMING FILE |
| 7927 | | 03/19/2008 | DMD | 03/19/08 12:53:50 ANS MACH | | DAVOX INCOMING FILE |
| 7927 | | 03/19/2008 | DMD | 03/19/08 09:47:39 NO ANS | | DAVOX INCOMING FILE |
| 7927 | | 03/19/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | | SYSTEM ID |
| 7927 | | 03/18/2008 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 7927 | | 03/18/2008 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 7927 | | 03/18/2008 | DMD | 03/18/08 03:32:16 | | DAVOX INCOMING FILE |
| 7927 | | 03/18/2008 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 7927 | | 03/18/2008 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 7927 | | 03/18/2008 | DMD | 03/18/08 13:57:30 ANS MACH | | DAVOX INCOMING FILE |
| 7927 | | 03/17/2008 | DMD | 03/17/08 12:22:55 ANS MACH | | DAVOX INCOMING FILE |
| 7927 | | 03/17/2008 | DMD | 03/17/08 10:01:53 ANS MACH | | DAVOX INCOMING FILE |
| 7927 | | 03/17/2008 | DMD | 03/16/08 17:34:14 ANS MACH | | DAVOX INCOMING FILE |
| 7927 | | 03/17/2008 | DMD | 03/17/08 17:07:18 | LEFT MESSAGE | DAVOX INCOMING FILE |
| 7927 | | 03/17/2008 | DMD | 03/17/08 12:44:18 | NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 03/17/2008 | DMD | 03/17/08 09:20:12 | NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 03/17/2008 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 7927 | | 03/17/2008 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 7927 | | 03/14/2008 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 7927 | | 03/14/2008 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 7927 | | 03/14/2008 | DMD | 03/14/08 09:24:10 ANS MACH | | DAVOX INCOMING FILE |
| 7927 | | 03/14/2008 | DMD | 03/14/08 09:01:38 | NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 03/14/2008 | DMD | 03/14/08 11:46:19 | LEFT MESSAGE | DAVOX INCOMING FILE |
| 7927 | | 03/14/2008 | DMD | 03/14/08 09:01:38 | NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 03/13/2008 | DMD | 03/13/08 18:17:30 ANS MACH | | DAVOX INCOMING FILE |

# Loan History

Date Data as-of:  March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | | Trans User Name |
|---|---|---|---|---|---|---|
| 7927 | | 03/13/2008 | DMD | 03/13/08 13:06:29 ANS MACH | | DAVOX INCOMING FILE |
| 7927 | | 03/13/2008 | DMD | 03/13/08 10:14:06 ANS MACH | | DAVOX INCOMING FILE |
| 7927 | | 03/12/2008 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 7927 | | 03/12/2008 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 7927 | | 03/12/2008 | DMD | 03/12/08 10:15:26 ANS MACH | | DAVOX INCOMING FILE |
| 7927 | | 03/12/2008 | DMD | 03/12/08 09:05:13 | NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 03/12/2008 | DMD | 03/12/08 12:34:17 | NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 03/12/2008 | DMD | 03/12/08 09:05:13 | NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 03/11/2008 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 7927 | | 03/11/2008 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 7927 | | 03/11/2008 | DMD | 03/11/08 01:12:10 | | DAVOX INCOMING FILE |
| 7927 | | 03/11/2008 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 7927 | | 03/11/2008 | DMD | 03/11/08 19:37:26 ANS MACH | | DAVOX INCOMING FILE |
| 7927 | | 03/11/2008 | DMD | 03/11/08 14:31:14 ANS MACH | | DAVOX INCOMING FILE |
| 7927 | | 03/10/2008 | DMD | 03/10/08 17:24:08 | LEFT MESSAGE | DAVOX INCOMING FILE |
| 7927 | | 03/10/2008 | DMD | 03/10/08 12:53:32 | NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 03/10/2008 | DMD | 03/10/08 09:11:12 | LEFT MESSAGE | DAVOX INCOMING FILE |
| 7927 | | 03/10/2008 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 7927 | | 03/10/2008 | DMD | 03/10/08 16:18:08 NO ANS | | DAVOX INCOMING FILE |
| 7927 | | 03/10/2008 | DMD | 03/09/08 18:48:39 ANS MACH | | DAVOX INCOMING FILE |
| 7927 | | 03/07/2008 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 7927 | | 03/07/2008 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 7927 | | 03/07/2008 | DMD | 03/07/08 09:32:10 ANS MACH | | DAVOX INCOMING FILE |
| 7927 | | 03/06/2008 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 7927 | | 03/06/2008 | DMD | 03/06/08 12:33:31 | LEFT MESSAGE | DAVOX INCOMING FILE |
| 7927 | | 03/06/2008 | DMD | 03/06/08 09:21:21 | LEFT MESSAGE | DAVOX INCOMING FILE |
| 7927 | | 03/06/2008 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 7927 | | 03/06/2008 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 7927 | | 03/06/2008 | DMD | 03/06/08 13:43:45 INCOMPLETE | | DAVOX INCOMING FILE |
| 7927 | | 03/04/2008 | FSV | INSP TP D RESULTS RCVD;  ORD DT=02/27/08 | | SYSTEM ID |
| 7927 | | 03/04/2008 | DM | EARLY IND: SCORE 330 MODEL EI30S | | SYSTEM ID |
| 7927 | | 03/04/2008 | DMD | 03/04/08 09:24:18 | NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 03/04/2008 | DMD | 03/04/08 13:01:28 | NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 03/04/2008 | DMD | 03/04/08 09:24:18 | NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 03/04/2008 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |

# Loan History

Date Data as-of: March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7927 | | 03/04/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 03/04/2008 | DMD | 03/04/08 16:41:46 ANS MACH | DAVOX INCOMING FILE |
| 7927 | | 02/29/2008 | DM | AUTOMATED INTEREST ACCRUAL HOLD ACTIVE | SYSTEM ID |
| 7927 | | 02/27/2008 | FSV | INSP TYPE D ORDERED;    REQ CD =FIC-BPO | SYSTEM ID |
| 7927 | | 02/27/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 02/27/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 02/25/2008 | D19 | BREACH MICHAEL A MARTI | SYSTEM ID |
| 7927 | | 02/22/2008 | CBR | DELINQUENT:  60  DAYS | SYSTEM ID |
| 7927 | | 02/22/2008 | DM | AUTOMATED INTEREST ACCRUAL HOLD INACTIVE | SYSTEM ID |
| 7927 | | 02/22/2008 | DMD | 02/22/08 09:15:43        NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 02/22/2008 | DMD | 02/22/08 11:45:36        NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 02/22/2008 | DMD | 02/22/08 09:15:43        NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 02/21/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 02/21/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 02/21/2008 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 003 | SYSTEM ID |
| 7927 | | 02/20/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 02/20/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 02/20/2008 | DMD | 02/20/08 17:13:37        LEFT MESSAGE | DAVOX INCOMING FILE |
| 7927 | | 02/20/2008 | DMD | 02/20/08 14:20:24        NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 02/20/2008 | DMD | 02/20/08 09:20:16        NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 02/20/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 02/20/2008 | DMD | 02/20/08 14:14:41 ANS MACH | DAVOX INCOMING FILE |
| 7927 | | 02/20/2008 | DMD | 02/20/08 11:47:42 ANS MACH | DAVOX INCOMING FILE |
| 7927 | | 02/19/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7927 | | 02/18/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 02/18/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 02/18/2008 | DMD | 02/18/08 14:21:28 ANS MACH | DAVOX INCOMING FILE |
| 7927 | | 02/15/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 02/15/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 02/15/2008 | DMD | 02/15/08 15:30:51  2 | DAVOX INCOMING FILE |
| 7927 | | 02/15/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 02/15/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 02/14/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 02/14/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 02/14/2008 | DMD | 02/14/08 14:42:26  2 | DAVOX INCOMING FILE |

**Loan History**

Date Data as-of: March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7927 | | 02/14/2008 | DMD | 02/14/08 09:31:43          NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 02/14/2008 | DMD | 02/14/08 12:50:39          LEFT MESSAGE | DAVOX INCOMING FILE |
| 7927 | | 02/14/2008 | DMD | 02/14/08 09:31:43          NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 02/14/2008 | LMT | LMT BPO/APPRAISAL REC ADDED | COURTNEY GRIMM |
| 7927 | | 02/13/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 02/13/2008 | DMD | 02/13/08 15:16:06 ANS MACH | DAVOX INCOMING FILE |
| 7927 | | 02/13/2008 | DMD | 02/13/08 12:11:42 ANS MACH | DAVOX INCOMING FILE |
| 7927 | | 02/13/2008 | FSV | INSP TP R RESULTS RCVD;  ORD DT=02/12/08 | ADAM BJORKLUND |
| 7927 | COL | 02/13/2008 | NT | BPO VALUE RECEIVED FROM CLEAR CAPITAL | ADAM BJORKLUND |
| 7927 | | 02/12/2008 | DMD | 02/12/08 09:13:12          NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 02/12/2008 | DMD | 02/12/08 12:47:16          NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 02/12/2008 | DMD | 02/12/08 09:13:12          NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 02/12/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 02/12/2008 | DMD | 02/12/08 18:38:25 ANS MACH | DAVOX INCOMING FILE |
| 7927 | | 02/12/2008 | DMD | 02/12/08 12:21:09 ANS MACH | DAVOX INCOMING FILE |
| 7927 | | 02/12/2008 | FSV | INSP TYPE R ORDERED;     REQ CD =1150 | COURTNEY GRIMM |
| 7927 | | 02/11/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 02/11/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 02/11/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 02/11/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 02/11/2008 | DMD | 02/11/08 13:41:08 ANS MACH | DAVOX INCOMING FILE |
| 7927 | | 02/08/2008 | DMD | 02/08/08 09:26:09          LEFT MESSAGE | DAVOX INCOMING FILE |
| 7927 | | 02/08/2008 | DMD | 02/08/08 11:38:36          LEFT MESSAGE | DAVOX INCOMING FILE |
| 7927 | | 02/08/2008 | DMD | 02/08/08 09:26:09          LEFT MESSAGE | DAVOX INCOMING FILE |
| 7927 | | 02/08/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 02/08/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 02/08/2008 | DMD | 02/08/08 08:08:48 ANS MACH | DAVOX INCOMING FILE |
| 7927 | | 02/07/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 02/07/2008 | DMD | 02/07/08 16:21:28 ANS MACH | DAVOX INCOMING FILE |
| 7927 | | 02/06/2008 | DMD | 02/06/08 17:22:14 | DAVOX INCOMING FILE |
| 7927 | | 02/06/2008 | DMD | 02/06/08 12:53:21          NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 02/06/2008 | DMD | 02/06/08 09:34:30          NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 02/06/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 02/06/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |

# Loan History

Date Data as-of:  March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▮7927 | | 02/06/2008 | DMD | 02/06/08 10:14:05  MSG ANS MACH | DAVOX INCOMING FILE |
| ▮7927 | | 02/05/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7927 | | 02/05/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7927 | | 02/05/2008 | DMD | 02/05/08 17:11:09  MSG ANS MACH | DAVOX INCOMING FILE |
| ▮7927 | | 02/04/2008 | DM | EARLY IND: SCORE 355 MODEL EI30S | SYSTEM ID |
| ▮7927 | | 02/04/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7927 | | 02/04/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7927 | | 02/04/2008 | DMD | 02/04/08 13:09:07  2 | DAVOX INCOMING FILE |
| ▮7927 | | 02/04/2008 | DMD | 02/04/08 09:03:22          NO ANSWER | DAVOX INCOMING FILE |
| ▮7927 | | 02/04/2008 | DMD | 02/04/08 16:02:17 | DAVOX INCOMING FILE |
| ▮7927 | | 02/04/2008 | DMD | 02/04/08 09:03:22          NO ANSWER | DAVOX INCOMING FILE |
| ▮7927 | | 02/01/2008 | FSV | INSP TP D RESULTS RCVD;  ORD DT=01/30/08 | SYSTEM ID |
| ▮7927 | | 01/30/2008 | FSV | INSP TYPE D ORDERED;    REQ CD =AUTO DELQ | SYSTEM ID |
| ▮7927 | | 01/29/2008 | DM | AUTOMATED INTEREST ACCRUAL HOLD ACTIVE | SYSTEM ID |
| ▮7927 | | 01/28/2008 | FSV | INSP TYPE D CANCELLED;  REQ CD =AUTO DELQ | SYSTEM ID |
| ▮7927 | | 01/28/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7927 | | 01/28/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7927 | | 01/28/2008 | DMD | 01/28/08 17:30:23 ANS MACH | DAVOX INCOMING FILE |
| ▮7927 | | 01/23/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7927 | | 01/23/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7927 | | 01/23/2008 | DMD | 01/23/08 18:56:32  MSG ANS MACH | DAVOX INCOMING FILE |
| ▮7927 | | 01/22/2008 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 002 | SYSTEM ID |
| ▮7927 | | 01/21/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7927 | | 01/21/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7927 | | 01/21/2008 | DMD | 01/21/08 16:33:43 ANS MACH | DAVOX INCOMING FILE |
| ▮7927 | | 01/18/2008 | DMD | 01/18/08 17:18:50 ANS MACH | DAVOX INCOMING FILE |
| ▮7927 | | 01/18/2008 | DMD | 01/18/08 13:01:17 ANS MACH | DAVOX INCOMING FILE |
| ▮7927 | | 01/18/2008 | DMD | 01/18/08 08:09:42 ANS MACH | DAVOX INCOMING FILE |
| ▮7927 | | 01/17/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7927 | | 01/17/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7927 | | 01/17/2008 | DMD | 01/17/08 17:23:05  2 | DAVOX INCOMING FILE |
| ▮7927 | | 01/17/2008 | DMD | 01/17/08 14:07:18 ANS MACH | DAVOX INCOMING FILE |
| ▮7927 | | 01/17/2008 | DMD | 01/17/08 08:20:53 ANS MACH | DAVOX INCOMING FILE |
| ▮7927 | | 01/16/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7927 | | 01/16/2008 | DMD | 01/16/08 16:46:10 ANS MACH | DAVOX INCOMING FILE |

**Loan History**

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▉7927 | | 01/16/2008 | DMD | 01/16/08 11:58:27 ANS MACH | DAVOX INCOMING FILE |
| ▉7927 | | 01/15/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7927 | | 01/15/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7927 | LMT | 01/15/2008 | NT | Blanket Letter Campaign | ROSEMARY LOVE |
| ▉7927 | LMT | 01/15/2008 | NT | new wout | ROSEMARY LOVE |
| ▉7927 | LMT | 01/15/2008 | NT | please refer to digit split | ROSEMARY LOVE |
| ▉7927 | | 01/14/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▉7927 | | 01/14/2008 | D19 | DEF - OPTIONS TO AVOID FORECLOSURE | SYSTEM ID |
| ▉7927 | | 01/14/2008 | D19 | BREACH MICHAEL A MARTI | SYSTEM ID |
| ▉7927 | | 01/11/2008 | CBR | DELINQUENT:  60  DAYS | SYSTEM ID |
| ▉7927 | | 01/11/2008 | DM | AUTOMATED INTEREST ACCRUAL HOLD INACTIVE | SYSTEM ID |
| ▉7927 | | 01/11/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7927 | | 01/11/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7927 | | 01/10/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7927 | | 01/10/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7927 | | 01/10/2008 | DMD | 01/10/08 10:21:24  2 | DAVOX INCOMING FILE |
| ▉7927 | | 01/10/2008 | DMD | 01/10/08 09:06:31          NO ANSWER | DAVOX INCOMING FILE |
| ▉7927 | | 01/10/2008 | DMD | 01/10/08 12:57:23          NO ANSWER | DAVOX INCOMING FILE |
| ▉7927 | | 01/10/2008 | DMD | 01/10/08 09:06:31          NO ANSWER | DAVOX INCOMING FILE |
| ▉7927 | | 01/08/2008 | DMD | 01/08/08 17:10:19          LEFT MESSAGE | DAVOX INCOMING FILE |
| ▉7927 | | 01/08/2008 | DMD | 01/08/08 13:00:21          NO ANSWER | DAVOX INCOMING FILE |
| ▉7927 | | 01/08/2008 | DMD | 01/08/08 09:45:27          NO ANSWER | DAVOX INCOMING FILE |
| ▉7927 | | 01/08/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7927 | | 01/08/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7927 | | 01/08/2008 | DMD | 01/08/08 10:46:44  MSG ANS MACH | DAVOX INCOMING FILE |
| ▉7927 | | 01/04/2008 | FSV | INSP TP D RESULTS RCVD;  ORD DT=12/31/07 | SYSTEM ID |
| ▉7927 | | 01/04/2008 | DMD | 01/04/08 10:13:14          NO ANSWER | DAVOX INCOMING FILE |
| ▉7927 | | 01/04/2008 | DMD | 01/04/08 12:27:28          LEFT MESSAGE | DAVOX INCOMING FILE |
| ▉7927 | | 01/04/2008 | DMD | 01/04/08 10:13:14          NO ANSWER | DAVOX INCOMING FILE |
| ▉7927 | | 01/04/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7927 | | 01/04/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7927 | | 01/04/2008 | DMD | 01/04/08 10:16:13  MSG ANS MACH | DAVOX INCOMING FILE |
| ▉7927 | | 01/02/2008 | DM | EARLY IND: SCORE 300 MODEL EI30S | SYSTEM ID |
| ▉7927 | | 01/02/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7927 | | 01/02/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |

**Loan History**

Date Data as-of: March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7927 | | 01/02/2008 | DMD | 01/02/08 09:30:29          NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 12/31/2007 | FSV | INSP TYPE D ORDERED;    REQ CD =AUTO DELQ | SYSTEM ID |
| 7927 | | 12/28/2007 | DM | AUTOMATED INTEREST ACCRUAL HOLD ACTIVE | SYSTEM ID |
| 7927 | | 12/24/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 12/24/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 12/24/2007 | DMD | 12/24/07 09:19:41 ANS MACH | DAVOX INCOMING FILE |
| 7927 | | 12/21/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 12/21/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 12/21/2007 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 002 | SYSTEM ID |
| 7927 | | 12/20/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 12/20/2007 | DMD | 12/20/07 17:19:52 ANS MACH | DAVOX INCOMING FILE |
| 7927 | | 12/20/2007 | DMD | 12/20/07 13:40:45 ANS MACH | DAVOX INCOMING FILE |
| 7927 | | 12/19/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 12/19/2007 | DMD | 12/19/07 18:10:19 ANS MACH | DAVOX INCOMING FILE |
| 7927 | | 12/19/2007 | DMD | 12/19/07 10:34:58 ANS MACH | DAVOX INCOMING FILE |
| 7927 | | 12/18/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 12/18/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 12/18/2007 | DMD | 12/18/07 12:50:19 ANS MACH | DAVOX INCOMING FILE |
| 7927 | | 12/17/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 12/17/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 12/17/2007 | DMD | 12/17/07 15:07:41 ANS MACH | DAVOX INCOMING FILE |
| 7927 | | 12/17/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7927 | | 12/17/2007 | D19 | BREACH MICHAEL A MARTI | SYSTEM ID |
| 7927 | | 12/14/2007 | CBR | DELINQUENT:  60  DAYS | SYSTEM ID |
| 7927 | | 12/14/2007 | DM | AUTOMATED INTEREST ACCRUAL HOLD INACTIVE | SYSTEM ID |
| 7927 | | 12/14/2007 | DMD | 12/14/07 09:10:42          NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 12/14/2007 | DMD | 12/14/07 11:33:13          NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 12/14/2007 | DMD | 12/14/07 09:10:42          NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 12/13/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 12/13/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 12/13/2007 | DMD | 12/13/07 14:49:55 ANS MACH | DAVOX INCOMING FILE |
| 7927 | | 12/12/2007 | DMD | 12/12/07 10:00:42          NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 12/12/2007 | DMD | 12/12/07 13:35:31          NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 12/12/2007 | DMD | 12/12/07 10:00:42          NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 12/12/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |

**Loan History**

Date Data as-of:  March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ███7927 | | 12/12/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███7927 | | 12/12/2007 | DMD | 12/12/07 10:23:27  MSG ANS MACH | DAVOX INCOMING FILE |
| ███7927 | | 12/10/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███7927 | | 12/10/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███7927 | | 12/10/2007 | DMD | 12/10/07 15:13:56  MSG ANS MACH | DAVOX INCOMING FILE |
| ███7927 | | 12/10/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███7927 | | 12/10/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███7927 | | 12/10/2007 | DMD | 12/10/07 13:49:30            PAR3 CONNECT | DAVOX INCOMING FILE |
| ███7927 | LMT | 12/10/2007 | NT | Blanket Letter Campaign | ROSEMARY LOVE |
| ███7927 | LMT | 12/10/2007 | NT | New Wout via regular mail | ROSEMARY LOVE |
| ███7927 | LMT | 12/10/2007 | NT | please refer to digit split | ROSEMARY LOVE |
| ███7927 | | 12/07/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███7927 | | 12/07/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███7927 | | 12/07/2007 | DMD | 12/07/07 15:29:49 ANS MACH | DAVOX INCOMING FILE |
| ███7927 | | 12/06/2007 | DMD | 12/06/07 09:23:42            NO ANSWER | DAVOX INCOMING FILE |
| ███7927 | | 12/06/2007 | DMD | 12/06/07 12:38:27            NO ANSWER | DAVOX INCOMING FILE |
| ███7927 | | 12/06/2007 | DMD | 12/06/07 09:23:42            NO ANSWER | DAVOX INCOMING FILE |
| ███7927 | | 12/06/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███7927 | | 12/06/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███7927 | | 12/06/2007 | DMD | 12/06/07 18:07:08 ANS MACH | DAVOX INCOMING FILE |
| ███7927 | | 12/04/2007 | DM | EARLY IND: SCORE 300 MODEL EI30S | SYSTEM ID |
| ███7927 | | 12/04/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███7927 | | 12/04/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███7927 | | 12/04/2007 | DMD | 12/04/07 21:08:39 | DAVOX INCOMING FILE |
| ███7927 | | 11/29/2007 | DM | AUTOMATED INTEREST ACCRUAL HOLD ACTIVE | SYSTEM ID |
| ███7927 | | 11/29/2007 | FSV | INSP TP D RESULTS RCVD;  ORD DT=11/28/07 | SYSTEM ID |
| ███7927 | | 11/23/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███7927 | | 11/23/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███7927 | | 11/21/2007 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 002 | SYSTEM ID |
| ███7927 | | 11/19/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███7927 | | 11/19/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███7927 | | 11/19/2007 | DMD | 11/19/07 12:22:36 ANS MACH | DAVOX INCOMING FILE |
| ███7927 | | 11/19/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ███7927 | | 11/19/2007 | D19 | BREACH MICHAEL A MARTI | SYSTEM ID |
| ███7927 | | 11/16/2007 | FSV | INSP TYPE D ORDERED;    REQ CD =AUTO DELQ | SYSTEM ID |

**Loan History**

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7927 | | 11/16/2007 | DM | AUTOMATED INTEREST ACCRUAL HOLD INACTIVE | SYSTEM ID |
| 7927 | | 11/16/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 11/16/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 11/16/2007 | DMD | 11/16/07 12:50:57 ANS MACH | DAVOX INCOMING FILE |
| 7927 | | 11/16/2007 | DMD | 11/16/07 14:02:24        LEFT MESSAGE | DAVOX INCOMING FILE |
| 7927 | | 11/16/2007 | DMD | 11/16/07 11:32:45          NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 11/16/2007 | DMD | 11/16/07 09:30:51          NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 11/14/2007 | DMD | 11/14/07 09:15:16          NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 11/14/2007 | DMD | 11/14/07 12:45:26          NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 11/14/2007 | DMD | 11/14/07 09:15:16          NO ANSWER | DAVOX INCOMING FILE |
| 7927 | | 11/14/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 11/14/2007 | DMD | 11/14/07 16:40:37 ANS MACH | DAVOX INCOMING FILE |
| 7927 | | 11/14/2007 | DMD | 11/14/07 13:36:00 ANS MACH | DAVOX INCOMING FILE |
| 7927 | LMT | 11/13/2007 | NT | CAMPAIGN: new wout (reg mail) | ROSEMARY LOVE |
| 7927 | | 11/09/2007 | CBR | DELINQUENT:  60  DAYS | SYSTEM ID |
| 7927 | | 11/09/2007 | CBR | CHANGE IN PRIMARY BORROWERS ADDR | SYSTEM ID |
| 7927 | ASM | 11/09/2007 | NT | adv b1 that no assume can be done at this time do | PAUL EATON |
| 7927 | ASM | 11/09/2007 | NT | to payment history would need to speak attn | PAUL EATON |
| 7927 | ASM | 11/09/2007 | NT | about wife being in contemp of court order paul e | PAUL EATON |
| 7927 | ASM | 11/09/2007 | NT | 4267 | PAUL EATON |
| 7927 | | 11/09/2007 | DM | B1 V/I.GAVE PH # OF B2.BEEN DIVORCE.WANTS TO | RICHIEL HERMOGENO |
| 7927 | | 11/09/2007 | DM | REMOVE HIS NAME ON THE ACCT COZ THE ONE LIVING ON | RICHIEL HERMOGENO |
| 7927 | | 11/09/2007 | DM | THE PROP IS ONLY B2 AND B2 IS THE ONE MKN THE PMTS | RICHIEL HERMOGENO |
| 7927 | | 11/09/2007 | DM | EVER SINCE THEY SEPARATED.B1 DSNT WANT TO PAY | RICHIEL HERMOGENO |
| 7927 | | 11/09/2007 | DM | ANYTHING.ADV B1 DUE FOR SEP-NOV,BREACH,-CR.XFRD TO | RICHIEL HERMOGENO |
| 7927 | | 11/09/2007 | DM | ASM DEPT RE REMOVAL OF NME. | RICHIEL HERMOGENO |
| 7927 | | 11/09/2007 | DM | DFLT REASON 1 CHANGED TO: MARITAL DIFFICULTIES | RICHIEL HERMOGENO |
| 7927 | | 11/09/2007 | DM | ACTION/RESULT CD CHANGED FROM OASK TO BRUN | RICHIEL HERMOGENO |
| 7927 | COL | 11/09/2007 | NT | b1 inq about notice rcvd, xrf to col. bryantb | KATHREEN SMITH |
| 7927 | COL | 11/09/2007 | NT | 73853 | KATHREEN SMITH |
| 7927 | | 11/08/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 11/08/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 11/08/2007 | DMD | 11/08/07 11:32:51 | DAVOX INCOMING FILE |
| 7927 | INQ | 11/08/2007 | NT | b2 ci to ask what her prin. was in feb 05 gave | SCOT MORGAN |
| 7927 | INQ | 11/08/2007 | NT | info.pablo77653 | SCOT MORGAN |

# Loan History

Date Data as-of:  March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ■7927 | | 11/06/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ■7927 | | 11/06/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ■7927 | | 11/06/2007 | DMD | 11/06/07 12:19:31 | DAVOX INCOMING FILE |
| ■7927 | | 11/05/2007 | FSV | INSP TP D RESULTS RCVD;   ORD DT=10/17/07 | SYSTEM ID |
| ■7927 | | 11/05/2007 | D19 | LM - LOSS MIT FCL REFERRAL - FNMA/FHLMC | SYSTEM ID |
| ■7927 | | 11/02/2007 | DM | EARLY IND: SCORE 307 MODEL EI30S | SYSTEM ID |
| ■7927 | | 11/02/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ■7927 | | 11/02/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ■7927 | | 11/02/2007 | DMD | 11/02/07 14:09:47 | DAVOX INCOMING FILE |
| ■7927 | | 10/30/2007 | DM | AUTOMATED INTEREST ACCRUAL HOLD ACTIVE | SYSTEM ID |
| ■7927 | | 10/23/2007 | D92 | MI NOD REPORT: MONTHS DELINQUENT = 002 | SYSTEM ID |
| ■7927 | | 10/19/2007 | D28 |      BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■7927 | | 10/17/2007 | FSV | INSP TYPE D ORDERED;    REQ CD =AUTO DELQ | SYSTEM ID |
| ■7927 | | 10/12/2007 | CBR | DELINQUENT:  30  DAYS | SYSTEM ID |
| ■7927 | | 10/12/2007 | CBR | CHANGE IN PRIMARY BORROWERS ADDR | SYSTEM ID |
| ■7927 | | 10/12/2007 | D19 | DEF - OPTIONS TO AVOID FORECLOSURE | SYSTEM ID |
| ■7927 | | 10/04/2007 | D19 | BREACH MICHAEL A MARTI | SYSTEM ID |
| ■7927 | | 10/02/2007 | DM | EARLY IND: SCORE 351 MODEL EI30S | SYSTEM ID |
| ■7927 | | 09/28/2007 | DM | PROMISE BROKEN 09/28/07 PROMISE DT 09/28/07 | SYSTEM ID |
| ■7927 | | 09/28/2007 | FSV | INSP TP D RESULTS RCVD;   ORD DT=09/17/07 | SYSTEM ID |
| ■7927 | | 09/25/2007 | DM | EARLY IND: SCORE 004 MODEL EI16T | SYSTEM ID |
| ■7927 | | 09/25/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ■7927 | | 09/25/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ■7927 | | 09/25/2007 | DMD | 09/25/07 11:11:24 SUCCESSFUL | DAVOX INCOMING FILE |
| ■7927 | | 09/25/2007 | DM | B2: ADV OF TAD; LC: UNCOLL : SAYS THAT B1 HAS NOT | YVETTE STANDIFER |
| ■7927 | | 09/25/2007 | DM | MADE A PAYMENT ON THE HOME AND SHE IS SOLELY | YVETTE STANDIFER |
| ■7927 | | 09/25/2007 | DM | RESPONSIBLE FOR THE PROP: INTITIALLY ASK FOR HIM | YVETTE STANDIFER |
| ■7927 | | 09/25/2007 | DM | AND SHE SAID WN:REMOVING THE 4233042012 FROM THE | YVETTE STANDIFER |
| ■7927 | | 09/25/2007 | DM | BUSINESS # FOR B1:VAI: THIS IS THE B2'S CELL: | YVETTE STANDIFER |
| ■7927 | | 09/25/2007 | DM | YVETTE S6651 | YVETTE STANDIFER |
| ■7927 | | 09/25/2007 | DM | ACTION/RESULT CD CHANGED FROM OASK TO BRSS | YVETTE STANDIFER |
| ■7927 | | 09/19/2007 | D28 |      BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ■7927 | | 09/17/2007 | FSV | INSP TYPE D ORDERED;    REQ CD =AUTO DELQ | SYSTEM ID |
| ■7927 | | 09/14/2007 | CBR | DELINQUENT:  30  DAYS | SYSTEM ID |
| ■7927 | | 09/14/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |

# Loan History

Date Data as-of:  March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ■ 7927 | | 09/14/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ■ 7927 | | 09/14/2007 | DMD | 09/14/07 10:59:21 UN-SUCCESSFUL | DAVOX INCOMING FILE |
| ■ 7927 | | 09/14/2007 | DM | TT B1 VI,ADV LC,TAD, CRDT, BRCH. B1 STD THT WAS | JENNIFER BACHMANN |
| ■ 7927 | | 09/14/2007 | DM | OOW FOR 7 MO IN 2006 WNT BACK 8/06. STD WUHT THT | JENNIFER BACHMANN |
| ■ 7927 | | 09/14/2007 | DM | AND THE LACK OF B1 INCM AND CHLD SPPRT HAD TO GET | JENNIFER BACHMANN |
| ■ 7927 | | 09/14/2007 | DM | CGHTUP. ADV RPPLN B2 STD NT AFFRDBLE ADV TO CB | JENNIFER BACHMANN |
| ■ 7927 | | 09/14/2007 | DM | ANYWY AND LK INTO IT. B2 STD WILL CB NXT WK TO DO | JENNIFER BACHMANN |
| ■ 7927 | | 09/14/2007 | DM | AUG PYT. MHADLEY 6690 | JENNIFER BACHMANN |
| ■ 7927 | | 09/14/2007 | DM | DFLT REASON 1 CHANGED TO: CURTAILMENT OF INCOME | JENNIFER BACHMANN |
| ■ 7927 | | 09/14/2007 | DM | DFLT REASON 2 CHANGED TO: EXCESSIVE OBLIGATIONS | JENNIFER BACHMANN |
| ■ 7927 | | 09/14/2007 | DM | ACTION/RESULT CD CHANGED FROM OASK TO BRUN | JENNIFER BACHMANN |
| ■ 7927 | | 09/13/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ■ 7927 | | 09/13/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ■ 7927 | | 09/13/2007 | DMD | 09/13/07 09:36:37 NO ANS | DAVOX INCOMING FILE |
| ■ 7927 | COL | 09/13/2007 | NT | REPAY SOLICITATION LETTER | SHANE HENSLEY |
| ■ 7927 | COL | 09/13/2007 | NT | Please waive two late fees if verbal | SHANE HENSLEY |
| ■ 7927 | COL | 09/13/2007 | NT | financials or a completed workout | SHANE HENSLEY |
| ■ 7927 | COL | 09/13/2007 | NT | package can be provided. | SHANE HENSLEY |
| ■ 7927 | | 09/07/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ■ 7927 | | 09/07/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ■ 7927 | | 09/07/2007 | DMD | 09/07/07 13:16:47 NO ANS | DAVOX INCOMING FILE |
| ■ 7927 | | 09/05/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ■ 7927 | | 09/05/2007 | DMD | 09/05/07 13:56:33 | DAVOX INCOMING FILE |
| ■ 7927 | | 09/04/2007 | DM | EARLY IND: SCORE 366 MODEL EI30S | SYSTEM ID |
| ■ 7927 | | 09/04/2007 | D19 | BREACH MICHAEL A MARTI | SYSTEM ID |
| ■ 7927 | | 08/31/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ■ 7927 | | 08/31/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ■ 7927 | | 08/31/2007 | DMD | 08/31/07 08:45:53 NO ANS | DAVOX INCOMING FILE |
| ■ 7927 | | 08/30/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ■ 7927 | | 08/30/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ■ 7927 | | 08/30/2007 | DMD | 08/30/07 06:25:38 | DAVOX INCOMING FILE |
| ■ 7927 | | 08/28/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ■ 7927 | | 08/28/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ■ 7927 | | 08/28/2007 | DMD | 08/28/07 02:41:12 | DAVOX INCOMING FILE |

**Loan History**

Date Data as-of: March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7927 | | 08/22/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 08/22/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 08/22/2007 | DMD | 08/22/07 02:41:01 | DAVOX INCOMING FILE |
| 7927 | | 08/20/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 08/20/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 08/20/2007 | DMD | 08/18/07 02:40:24 | DAVOX INCOMING FILE |
| 7927 | | 08/15/2007 | DM | EARLY IND: SCORE 004 MODEL EI16T | SYSTEM ID |
| 7927 | | 08/15/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7927 | | 08/13/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 08/13/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 08/13/2007 | DMD | 08/13/07 03:32:33 | DAVOX INCOMING FILE |
| 7927 | | 08/10/2007 | CBR | DELINQUENT:  30  DAYS | SYSTEM ID |
| 7927 | | 08/09/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 08/09/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 08/09/2007 | DMD | 08/09/07 03:35:09 | DAVOX INCOMING FILE |
| 7927 | | 08/07/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 08/07/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 08/07/2007 | DMD | 08/07/07 03:34:04 | DAVOX INCOMING FILE |
| 7927 | | 08/03/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 08/03/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 08/03/2007 | DMD | 08/03/07 03:32:14 | DAVOX INCOMING FILE |
| 7927 | | 08/03/2007 | D19 | BREACH MICHAEL A MARTI | SYSTEM ID |
| 7927 | | 08/02/2007 | DM | EARLY IND: SCORE 366 MODEL EI30S | SYSTEM ID |
| 7927 | | 07/31/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 07/31/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 07/31/2007 | DMD | 07/31/07 06:19:23 | DAVOX INCOMING FILE |
| 7927 | | 07/30/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 07/30/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 07/30/2007 | DMD | 07/28/07 05:41:07 | DAVOX INCOMING FILE |
| 7927 | | 07/27/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 07/27/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 07/27/2007 | DMD | 07/27/07 05:15:38 | DAVOX INCOMING FILE |
| 7927 | | 07/26/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 07/26/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 07/26/2007 | DMD | 07/26/07 05:30:31 | DAVOX INCOMING FILE |

# Loan History

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7927 | | 07/25/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 07/25/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 07/25/2007 | DMD | 07/25/07 06:35:03 | DAVOX INCOMING FILE |
| 7927 | COL | 07/19/2007 | NT | REPAY SOLICITATION LETTER | SHANE HENSLEY |
| 7927 | COL | 07/19/2007 | NT | Loan has rolled 30+ for several | SHANE HENSLEY |
| 7927 | COL | 07/19/2007 | NT | consecutive months. Two late fees waived | SHANE HENSLEY |
| 7927 | COL | 07/19/2007 | NT | if workout package completed and | SHANE HENSLEY |
| 7927 | COL | 07/19/2007 | NT | returned by August 1 | SHANE HENSLEY |
| 7927 | | 07/13/2007 | CBR | PREVIOUSLY REPORTED DELINQUENT:NOW CURRENT | SYSTEM ID |
| 7927 | | 07/13/2007 | CBR | CHANGE IN PRIMARY BORROWERS ADDR | SYSTEM ID |
| 7927 | | 07/05/2007 | DM | EARLY IND: SCORE 003 MODEL EI16T | SYSTEM ID |
| 7927 | | 07/03/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7927 | | 07/02/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 07/02/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 07/02/2007 | DMD | 07/02/07 09:48:57 | DAVOX INCOMING FILE |
| 7927 | | 06/29/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 06/29/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7927 | | 06/29/2007 | DMD | 06/30/07 11:40:27 SIT_TONE | DAVOX INCOMING FILE |
| 7927 | | 06/29/2007 | DM | ATTEMPTED CONTACT TO H1 PHONE NUMBER, NUMBER | PATRICIA MEYER |
| 7927 | | 06/29/2007 | DM | DISCONNECTED: 423-266-9015. AJAMES/6511 | PATRICIA MEYER |
| 7927 | | 06/29/2007 | DM | ACTION/RESULT CD CHANGED FROM OASK TO OAAI | PATRICIA MEYER |
| 7927 | | 06/22/2007 | CBR | DELINQUENT:  30  DAYS | SYSTEM ID |
| 7927 | | 06/21/2007 | D92 | MI NOD REPORT: LOAN REINSTATED | SYSTEM ID |
| 7927 | | 06/18/2007 | DM | EARLY IND: SCORE 006 MODEL EI16T | SYSTEM ID |
| 7927 | | 06/18/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7927 | CSH | 06/16/2007 | NT | HFN convrsn clean up: the lc bal from LSAMS was | TRACY ZOBEL |
| 7927 | CSH | 06/16/2007 | NT | incorrectly updated to $0 on MS on  05/04/07, this | TRACY ZOBEL |
| 7927 | CSH | 06/16/2007 | NT | was corrected on 05/30/07 after the May MAS was | TRACY ZOBEL |
| 7927 | CSH | 06/16/2007 | NT | mld; if the customer questions the lc amt | TRACY ZOBEL |
| 7927 | CSH | 06/16/2007 | NT | apologize for the confusion this error may have | TRACY ZOBEL |
| 7927 | CSH | 06/16/2007 | NT | caused; o/s lc due as of 05/30/07 is $-343.98 | TRACY ZOBEL |
| 7927 | | 06/05/2007 | D19 | BREACH MICHAEL A MARTI | SYSTEM ID |
| 7927 | | 06/04/2007 | DM | EARLY IND: SCORE 380 MODEL EI30S | SYSTEM ID |
| 7927 | | 05/25/2007 | CBR | PURCHASED LOAN:  SERVICING DATE =10/30/02 | SYSTEM ID |
| 7927 | | 05/25/2007 | CBR | DELINQUENT:  30  DAYS | SYSTEM ID |

**Loan History**

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7927 | SKIP | 05/22/2007 | NT | No phone number returned from Innovis skip file | KURT BOEVERS |
| 7927 | | 05/22/2007 | D92 | MI NOD REPORT: LOAN REINSTATED | SYSTEM ID |
| 7927 | | 05/08/2007 | DM | EARLY IND: SCORE 006 MODEL EI16T | SYSTEM ID |
| 7927 | | 05/08/2007 | DM | | SHELLY DEVRIES |
| 7927 | | 05/08/2007 | DM | DFLT REASON 1 CHANGED TO: UNABLE TO CONTACT BORR | SHELLY DEVRIES |
| 7927 | COL | 05/08/2007 | NT | "called POE, 423-304-2012, recording stated that | API CSRV |
| 7927 | COL | 05/08/2007 | NT | the number is disconnected " | API CSRV |
| 7927 | | 05/08/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |

**<u>Exhibit G</u>**

LM-FCL REQUEST FOR CONTACT.txt

04/15/08


MICHAEL A MARTIN
MARY COLLETTE MARTIN
1021 ENGLEWOOD AVE

CHATTANOOGA TN 37405-2311



RE:   Account Number      ███████7927
      Property Address  1021 ENGLEWOOD AV

                    CHATTANOOGA TN 37405

Dear MICHAEL A MARTIN
     MARY COLLETTE MARTIN

We want to inform you that the foreclosure sale on your home has
been scheduled for 05/15/08. TIME IS RUNNING OUT. It is extremely
important to contact us. Working together, we may find a solution
before it's too late. You must contact us immediately so that we
can resolve your delinquency before your home goes to foreclosure
sale.

There is still a short period of time left, but we cannot help
you unless you contact us. If your house is worth less than what
is owed on the property or you've spoken with others about
resolving your delinquent mortgage, please contact us. You are in
jeopardy of losing your home through foreclosure, creating a
potential tax liability and severely damaging your credit rating.
We can only attempt to provide a solution if you contact us.

The foreclosure process has already begun and will continue to
proceed until either the foreclosure sale occurs or you have
written documentation from us stating that the foreclosure
process has been stopped.

Do not wait until the last minute to discuss your situation with
us. The longer this situation continues, the more difficult it
becomes to resolve your delinquent loan. Our goal is to solve
this problem, but we cannot help unless you contact us right
away. We can be reached at 800-206-2901.


Loss Mitigation Department
Loan Servicing
5001
♀


* Homeownership counseling is available to you through the
Credit Counseling Resource Center (CCRC), an alliance of
consumer credit counseling agencies. The CCRC has been retained
by Homecomings Financial, LLC            to provide advice to you
on credit issues, including how to reduce debt and improve cash
flow management capabilities. You may contact them at
1-877-806-0775 for assistance at no cost to you, or you may wish
to contact a HUD-approved counseling agency by calling
1-800-569-4287 for further information.
                    Page 1

LM-FCL REQUEST FOR CONTACT.txt