**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DECLARATION AND PROPOSED TESTIMONY IN SUPPORT OF THE RESCAP BORROWER CLAIMS TRUST'S SIXTY-NINTH OMNIBUS OBJECTION TO CLAIMS (NO-LIABILITY BORROWER CLAIMS) AS TO CLAIM NOS. 3889, 4129, 4134, AND 4139 FILED BY TIA DANIELLE SMITH**

I, Sara Lathrop, hereby declare as follows:

1.  I serve as Senior Claims Analyst for the ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] confirmed in the above-captioned Chapter 11 Cases. During the Chapter 11 Cases, I served as Regulatory Compliance Manager and Loss Mitigation Manager in the loan servicing department of Residential Capital, LLC ("ResCap"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "Debtors"). I have been employed by affiliates of ResCap since June 2006. I began my association with ResCap in 2006 working as an associate in the Default Division of the loan servicing operation of GMAC Mortgage, LLC ("GMACM"). In 2008, I became a Default Quality Control Specialist, a position that I held until I became a Supervisor in the Default Division in 2009. In 2011, I then became a Supervisor in the Loss Mitigation Division of GMACM's loan servicing operation, and in February 2012, I became a Manager in that division. In this role, I oversaw GMACM associates in their efforts to

1

ny-1219928

EXHIBIT BT-A

provide borrowers with loss mitigation options and assisted in the development of GMACM's loss mitigation policies. In January of 2013, I became the Regulatory Compliance Manager for ResCap. I became Senior Claims Analyst for ResCap in July 2013 and continued this role with the ResCap Liquidating Trust (the "Liquidating Trust") in December 2013. In my current position as Senior Claims Analyst to the Borrower Trust, among my other duties, I continue to assist the Borrower Trust in connection with the claims reconciliation process.[1] I am authorized to submit this declaration (the "Declaration") in support of the *ResCap Borrower Claims Trust's Sixty-Ninth Omnibus Objection to Claims (No-Liability Borrower Claims) as to Claim Nos. 3889, 4129, 4134, and 4139 Filed By Tia Danielle Smith*.

2.  In my current and former capacities as Senior Claims Analyst and Loss Mitigation Manager to the Borrower Trust, the Liquidating Trust, and ResCap, I am intimately familiar with the Debtors' claims reconciliation process. Except as otherwise indicated, all statements are based upon my familiarity with the Debtors' Books and Records kept in the course of their regularly conducted business activities (the "Books and Records"), as well as the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or my review of relevant documents. I or other Liquidating Trust personnel have reviewed and analyzed the proof of claim forms and supporting documentation filed by the Claimants.

3.  Since the Debtors' chapter 11 Plan went effective and the Borrower Trust was established, I, along with other members of the Liquidating Trust have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims, and determine the

---

[1] The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

2

ny-1219928

appropriate treatment of the same. In connection with such review and analysis, where applicable, I or other Liquidating Trust personnel, together with professional advisors, have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (vi) the official claims register maintained in the Debtors' Chapter 11 Cases.

4. On or about November 9, 2012, the Claimant filed the Claims against GMACM (Claim No. 3889); Homecomings (Claim No. 4129); RFC (Claim No. 4134) and RALI (Claim No. 4139), each asserting a general unsecured claim in the amount of $3,000,000. See Exhibit R to the *Declaration of Deanna Horst in Support of the ResCap Borrower Clams Trust's Reply in Support of Its Sixty-Ninth Omnibus Objection to Claims (No-Liability Borrower Claims) as to Claim Nos. 292, 1279,1466, 3889, 4129, 4134, and 4139* (the "Supp. Decl."). In Box 2 of each proof of claim form (Basis for Claim), the Claims provide that the basis for the claim is "Predatory Lending, Wrongful Foreclosure." See id.

5. On or around December 2, 2006, American Mortgage Network, Inc. ("AMN") originated a loan to the Claimant (the "Mortgage Loan") in the amount of $556,000, secured by a deed of trust on 4011 Hubert Ave., Los Angeles, CA 90008 (the "Property"). See Note and Deed of Trust. RFC purchased the loan from AMN, and the loan was subsequently securitized where Deutsche Bank Trust Company Americas ("Deutsche") was appointed trustee on or about January 30, 2007 (the "Securitization Trust"). See Endorsed Note, showing a chain of endorsement from AMN to Deutsche, attached to the Claimant's Response to the Objection [Docket No. 7300] as Exhibit 6.

3

ny-1219928

6. Homecomings serviced the loan from December 29, 2006 until servicing was transferred to Aurora Loan Servicing ("Aurora") on April 1, 2008. See Servicing Notes.

7. Smith did not make the January 1 or February 1, 2008 payments on the Mortgage Loan. See Servicing Notes at 1 of 15. On February 1, 2008, a Homecomings representative spoke with Claimant, at which time Claimant advised that she was not able to make any payments that day because her business is slow. See Servicing Notes at 5 of 15.

8. On February 8, 2008, a Homecomings representative again spoke with Claimant, at which time Claimant stated that her business is really slow and she would not be able to make a payment until March 13, 2008. See Servicing Notes at 5 of 15. Homecomings sent a letter to Claimant on or around February 11, 2008, detailing the options available to her to avoid foreclosure. See Options to Avoid Foreclosure Letter.

9. On February 11, 2008, a representative of Homecomings also spoke to Claimant, at which time Claimant stated that she could not make a payment at that time because she did not have sufficient funds. See Servicing Notes at 5 of 15. A representative of Homecomings again spoke to Claimant on or around February 13, 2008, at which time Claimant stated that she had been having problems with her business and she was not able to make a payment on that date. See id.

10. On February 22, 2008, another representative of Homecomings spoke to Claimant, at which time Claimant stated that she did not have sufficient funds to make a payment because her mother, who had been assisting her with the payments, had moved out. See Servicing Notes at 4 of 15.

4

11. On or around March 3, 2008, Homecomings sent a letter to Claimant informing her that by not making her payments, she was in breach of the Mortgage Loan. See Breach Letter.

12. On March 10, 2008, a representative of Homecomings spoke to Claimant, at which time Claimant stated that she had made some bad investments in the stock market and her mother, who had been living with her and helping her with her payments, had moved out in October 2007 and as a result she was not able to make a payment at that time. See Servicing Notes at 3 of 15. During this conversation, Homecomings set up a repayment plan for the Claimant, and the Claimant provided bank information to make a payment over the phone. See id.

13. On March 14, 2008, Homecomings sent a letter to Claimant informing her that effective April 1, 2008, servicing of the Mortgage Loan would transfer to Aurora. See Goodbye Letter.

14. On or around March 17, 2008, Claimant remitted the payment made over the phone on March 10, 2008, making the account due for the February 1, 2008 payment. See Servicing Notes at 1 of 15.

15. At the time the servicing of the Mortgage Loan was transferred to Aurora on April 1, 2008, the Mortgage Loan was in default. See Servicing Notes at 1 of 15. No Debtor entity ever commenced any foreclosure proceeding against the Claimant.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 26, 2016

/s/ Sara Lathrop
Sara Lathrop
Senior Claims Analyst for the ResCap Borrower Trust

12-12020-mg    Doc 9765-3    Filed 03/21/16    Entered 03/21/16 16:11:29    Exhibit BT-A
Pg 6 of 6