**Hearing Date: April 7, 2016**
**Reply Deadline: April 4, 2016**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Residential Capital, LLC, *et al.*, | Case No. 12-12020-mg |
| *Debtors.* | Jointly Administered |
| PNC Bank, National Association, et al., | |
| *Movants,* | Case No. 16-mc-00063-P1 |
| v. | Related Case No. 13-cv-3451 (SRN/JJK/HB) in United States District Court for the District of Minnesota |
| MBIA Insurance Corporation, | |
| *Respondent.* | |

**MBIA INSURANCE CORPORATION'S MEMORANDUM OF LAW**
**IN OPPOSITION TO MOVANT-DEFENDANTS' MOTION TO COMPEL**
**COMPLIANCE WITH THIRD PARTY SUBPOENA**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................1

BACKGROUND ...........................................................................................3

    **A.**    MBIA's Litigation Against RFC ...........................................................3

    **B.**    Movant-Defendants' Subpoena to MBIA...............................................3

    **C.**    MBIA's Production of Documents Exchanged in the *MBIA v. RFC* Litigation and Examiner Submission Supporting Materials ....................4

    **D.**    Movant-Defendants' Demands for Internal MBIA Email Correspondence ...........6

    **E.**    Movant-Defendants' Demands for the Examiner Submission ................9

ARGUMENT...............................................................................................9

    **I.**    Standard Applicable to a Motion to Compel Compliance with a Non-Party Subpoena....................................................................................10

    **II.**    The Materials Movant-Defendants Seek are Cumulative and Irrelevant...............11

        **A.**    Movant-Defendants Continue to Request Information Already Produced by MBIA ...................................................................11

        **B.**    MBIA's Subjective Views on the Global Settlement are Irrelevant..........12

    **III.**    Movant-Defendants Seek Information That Is Overwhelmingly Subject to the Attorney-Client Privilege and Mediation Privilege .........................14

        **A.**    Attorney-Client Privilege..........................................................15

        **B.**    Mediation Privilege..................................................................16

        **C.**    Production of a Privilege and Mediation Log Is Itself an Undue Burden.............................................................................17

    **IV.**    If the Court Orders Production, Movant-Defendants Should Be Required to Bear the Costs ...................................................................18

        **A.**    The Court Has the Authority and the Obligation To Order Cost-Shifting Where A Subpoena Imposes Significant Expense on a Non-Party...............................................................................18

        **B.**    Cost-Shifting Is Appropriate Here Because of the Broad Requests, the High Cost of Compliance and MBIA's Status as a Non-Party ............20

    **V.**    Subject to Resolution of Confidentiality Issues, MBIA Is Prepared to Produce Its Examiner Submission .......................................................22

CONCLUSION ..........................................................................................23

8765601

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABC v. Aereo, Inc.*,
   No. 12 Civ. 1540, 2013 U.S. Dist. LEXIS 5316 (S.D.N.Y. Jan. 11, 2013)............................17

*Arista Records LLC v. Lime Grp. LLC*,
   No. 06 CV 5936 (KMW), 2011 U.S. Dist. LEXIS 20709 (S.D.N.Y. Mar. 1,
   2011) .........................................................................................................................................10

*CallWave Commc'ns, Inc v. WaveMarket, LLC*,
   No. C 14-80112 JSW (LB), 2014 U.S. Dist. LEXIS 88073 (N.D. Cal. June 26,
   2014) .........................................................................................................................................20

*Capitol Records, Inc, v. MP3tunes, LLC*,
   261 F.R.D. 44 (S.D.N.Y. 2009) .................................................................................................17

*Cohen v. City of N.Y.*,
   255 F.R.D. 110 (S.D.N.Y. 2008) ...............................................................................................12

*Concord Boat Corp. v. Brunswick Corp.*,
   169 F.R.D. 44 (S.D.N.Y. 1996) ............................................................................................10, 11

*First Am. Corp. v. Price Waterhouse LLP*,
   184 F.R.D. 234 (S.D.N.Y. 1998) ..........................................................................................18, 20

*Legal Voice v. Stormans Inc.*,
   738 F.3d 1178 (9th Cir. 2013) ...................................................................................................18

*Linder v. Calero-Portocarrero*,
   180 F. R.D. 168 (D.D.C. 1998)..................................................................................................20

*Linder v. Calero-Portocarrero*,
   251 F.3d 178 (D.C. Cir. 2001) .............................................................................................18, 20

*Mt. Sinai Med. Ctr. v. Port Auth. of N.Y. & N.J., Inc. (In re World Ctr. Disaster
   Site Litig.)*,
   No. 21-mc-100 (AKH), 2010 U.S. Dist. LEXIS 96819 (S.D.N.Y. Sept. 13,
   2010) .........................................................................................................................................21

*New Prods.Corp. v. Tibble (In re Modern Plastics Corp.)*
   536 B.R. 783 (Bankr. W.D. Mich. 2015) ............................................................................19, 20, 21

*Night Hawk Ltd. v. Briarpatch Ltd., L.P.*,
   No. 03 Civ. 1382, 2003 U.S. Dist. LEXIS 23179 (S.D.N.Y. Dec. 23, 2003)..........................10

*Nova Biomedical Corp. v. i-Stat Corp.*,
    182 F.R.D. 419 (S.D.N.Y. 1998) ........................................................................12

*Prescient Acquisition Grp., Inc. v. MJ Publ'g Trust*,
    No. 05 Civ. 6298, 2006 U.S. Dist. LEXIS 75383 (S.D.N.Y Oct. 13, 2006) ...................18, 19

*In re ResCap Liquidating Trust Mortg. Purchase Litig.*,
    536 B.R. 132 (Bankr. S.D.N.Y. 2015) ............................................................ *passim*

*In re Residential Capital, LLC*,
    No. 12-12020-mg, 2013 Bankr. LEXIS 5683 (Bankr. S.D.N.Y. Dec. 11, 2013) .....................3

*SEC v. Thrasher*,
    No. 92 Civ. 6987, 1996 U.S. Dist. LEXIS 3327 (S.D.N.Y. Mar. 19, 1996)...........................17

*Spears v. City of Indianapolis*,
    74 F.3d 153 (7th Cir. 1996) ........................................................................20

*State Farm Mut. Auto. Ins. Co. v. Fayda*,
    No. 14 Civ. 9792, 2015 U.S. Dist. LEXIS 162164 (S.D.N.Y. Dec. 3, 2015)..........................14

*Estate of Ungar v. Palestinian Auth.*,
    400 F. Supp. 2d 541 (S.D.N.Y. 2005).................................................................14

**Other Authorities**

Fed. R. Civ. P. 26(b)(1).............................................................................11, 17

Fed. R. Civ. P. 26(b)(2).................................................................................10

Fed. R. Civ. P. 26(b)(3).................................................................................12

Fed. R. Civ. P. 45, Advisory Committee's Notes to 1991 Amendment ...............................18

Fed. R. Civ. P. 45(d)(1)..............................................................................10, 18

Fed. R. Civ. P. 45(d)(2)(B)(ii) .........................................................................18

Fed. R. Civ. P. 45(d)(2)(C)(ii) .........................................................................18

Fed. R. Civ. P. 45(d)(3)(A)(iv) .........................................................................10

Fed. R. Civ. P. 45(e)(2).................................................................................19

8765601

Respondent non-party MBIA Insurance Corporation ("MBIA") submits this

Memorandum of Law in opposition to the motion to compel compliance with a Rule 45

subpoena (the "Subpoena") filed by the Subpoena's issuers, fourteen defendants ("Movant-

Defendants") in lawsuits filed by Residential Funding Company, LLC ("RFC") and the ResCap

Liquidating Trust (the "Liquidating Trust," and together with RFC "Plaintiffs") in the District of

Minnesota.[1]

## PRELIMINARY STATEMENT

Movant-Defendants' motion to compel seeks the production of documents that—

to the extent they have relevance at all—are almost certainly privileged, and whose review and

privilege logging would impose a significant undue burden on MBIA.  The demands are directly

contrary to the proportionality precepts reinforced by the recent revisions to the Federal Rules of

Civil Procedure, and should be rejected.

This motion arises out of a series of lawsuits filed by Plaintiffs against the

Movant-Defendants seeking damages for breach of contract and indemnification arising out of

the Movant-Defendants' sale of allegedly non-compliant mortgage loans to RFC during the years

leading up to the 2008 mortgage crisis.[2]  MBIA, a financial guaranty insurer, or "monoline," is

not a party to any of the lawsuits between Plaintiffs and Movant-Defendants, nor was it a party to

any of the contracts underlying those suits.  Rather, Movant-Defendants subpoenaed MBIA

because MBIA pursued mortgage-related claims against RFC, first in New York state court and

---

[1] *In Re: RFC & ResCap Liquidating Trust Litig.*, No. 13-cv-3451 (SRN/JJK/HB) (D. Minn.).

[2] *See, e.g.*, Exhibit A to the Feb. 16, 2016 Declaration of Richard E. Gottlieb ("Gottlieb Decl."),
Plaintiffs' Second Am. Compl., *Residential Funding Co., LLC v. PNC Bank, N.A.*, No. 13-cv-3451
(D. Minn. Dec. 10, 2015), Dkt. 1150.

1

then in the Chapter 11 cases of Residential Capital, LLC ("ResCap") and certain of its affiliates

(the "Chapter 11 Cases").[3]

      In response to the Movant-Defendants' Subpoena, MBIA has provided

approximately 165,000 pages of documents, and the Movant-Defendants now have every

document exchanged and transcripts from every party deposition taken in MBIA's state-court

proceeding against RFC, *MBIA Ins. Corp. v. Residential Funding Corp.*, No. 603552/08 (N.Y.

Sup. Ct.) ("*MBIA v. RFC*").  Movant-Defendants have also received all of the export reports

served in *MBIA v. RFC*, including the reunderwriting report that sets forth MBIA's conclusions

about loan-level breaches and MBIA's damages report setting forth its damages theories and

calculations.  In addition, Movant-Defendants have MBIA's many submissions in the Chapter 11

Cases, including its extensive proof of claim based on payments made under the policies and

projected future payments.

      Despite this exhaustive collection of documents, Movant-Defendants bring the

instant motion to compel MBIA to produce additional materials, including generating a privilege

log.  The materials sought are cumulative, of minimal—if any—relevance, and would be hugely

burdensome for MBIA to review, screen and log for privilege, and to the extent necessary,

produce.  Thus, the motion as to MBIA's internal emails should be denied outright.  If, however,

the Court permits further discovery under the Subpoena, Movant-Defendants should be ordered

to pay all of MBIA's costs, including attorneys' fees, for reviewing the requested documents,

creating mediation and privilege logs, and making a production of any documents that are not

privileged.

---

[3] *In re: Residential Capital, LLC*, No. 12-12020 (MG) (Bankr. S.D.N.Y.).

8765601

# BACKGROUND

## A.    MBIA's Litigation Against RFC

MBIA, a monoline insurer, provided financial guaranty insurance to five RFC securitizations in 2006-2007.[4]  March 25, 2016 Affidavit of Jonathan Harris ("Harris Aff.") ¶¶ 3-4.  In 2008, after the securitizations began to suffer alarming losses, MBIA pursued multiple remedies against RFC, including demanding repurchase of breaching mortgage loans under the securitization documents, filing fraud and breach of contract claims against RFC, and, ultimately, filing proofs of claim against RFC in the Chapter 11 Cases.  Harris Aff. ¶¶ 6, 10.  All of MBIA's claims against RFC were ultimately settled in connection with the "Global Settlement" reached in the Chapter 11 Cases and allowed and paid pursuant to a confirmed plan.   Harris Aff. ¶ 10; *see In re Residential Capital, LLC*, No. 12-12020-mg, 2013 Bankr. LEXIS 5683 (Bankr. S.D.N.Y. Dec. 11, 2013) (Order Confirming Second Amended Joint Chapter 11 Plan).

By 2008, when MBIA began pursuing legal remedies against RFC, MBIA was no longer engaged in the business of writing new financial guaranty policies for RMBS or other structured finance products, and had no ongoing relationship with RFC other than resolution of MBIA's claims.  Harris Aff. ¶ 5, 11.  Indeed, by 2008, the "business" of MBIA was chiefly managing its portfolio of insured structured finance products by monitoring its exposure, paying claims, and seeking remediation through various legal channels.  Harris Aff. ¶ 5.

## B.    Movant-Defendants' Subpoena to MBIA

As part of the underlying litigation involving Plaintiffs' contract and indemnification suits against Movant-Defendants, Movant-Defendants issued the Subpoena to MBIA on January 20, 2015 seeking 20 broad categories of documents, including:

---

[4] The five securitizations at issue in *MBIA v. RFC* were Home Equity Loan Trust 2006-HSA4, Home Equity Loan Trust 2006-HSA5, Home Equity Loan Trust 2007-HSA1, Home Equity Loan Trust 2007-HSA2 and Home Equity Loan Trust 2007-HSA3.

- All documents and communications concerning RFC's compliance or noncompliance with any representations or warranties made to MBIA, including all notices of noncompliance and repurchase demands (Gottlieb Decl. Ex. M, Request 4);

- All document and communications concerning RFC's alleged fraud or fraudulent inducement of MBIA (Gottlieb Decl. Ex. M, Request 6);

- All documents and communications concerning any damages or losses suffered by MBIA from claims made on insurance policies for the RFC securitizations, including damages calculations (Gottlieb Decl. Ex. M, Request 7);

- All documents and communications concerning the cause of any damages or losses suffered by MBIA, including whether or not RFC's fraud or noncompliance with any representation, warranty or underwriting guideline was a cause of such damage (Gottlieb Decl. Ex. M, Request 9);

- All discovery in MBIA's lawsuits against RFC (Gottlieb Decl. Ex. M, Request 10);

- All documents or communications concerning settlement of MBIA's claims against RFC, whether as part of the Global Settlement or otherwise (Gottlieb Decl. Ex. M, Request 11);

- All documents and communications concerning the allocation of RESCU units and MBIA's sale of RESCU units to Paulson & Co. (Gottlieb Decl. Ex. M, Requests 12-13, 19); and

- All communications between MBIA and any attorney representing RFC concerning RFC's litigation against Movant-Defendants (Gottlieb Decl. Ex. M. Request 18).

The Subpoena demanded documents from October 28, 2004 through the present. Gottlieb Decl.

Ex. M. at 9.

## C.      MBIA's Production of Documents Exchanged in the *MBIA v. RFC* Litigation and Examiner Submission Supporting Materials

In meet-and-confer conversations between MBIA's in-house counsel and counsel

for the Movant-Defendants, MBIA informed the Movant-Defendants that most of the documents

it sought were contained in documents and expert reports exchanged in *MBIA v. RFC* or in

8765601

documents exchanged in the Chapter 11 Cases. *See* Harris Aff. ¶¶ 8-9, 13.[5] *MBIA v. RFC*,

which was filed in 2008, was well-advanced when ResCap commenced the Chapter 11 Cases.

Harris Aff. ¶¶ 8-9. The parties in *MBIA v. RFC* had completed an extensive period of fact

discovery, including the exchange of tens of thousands of documents and depositions of dozens

of party witnesses. Documents exchanged included all of MBIA's repurchase requests to RFC

(and supporting materials), loan tapes for the five transactions at issue, third-party due diligence

review of the loans, documents reflecting MBIA's ongoing surveillance of the five transactions'

performance, documents related to servicing of the loans, and evidence of MBIA's claims paid.

Harris Aff. ¶ 8. MBIA and RFC had both served affirmative expert reports, including MBIA's

reunderwriting report, giving detailed analysis of a statistically representative sample of 3,600

loans from the five RFC securitizations that MBIA asserted breached representation and

warranties, and MBIA's damages report which set forth the bases for MBIA's damages

calculations for its fraud and breach of contract claims. Harris Aff. ¶ 9. MBIA also submitted a

comprehensive expert report opining on RFC's securitization practices. *Id.* In short, because

fact discovery was complete and expert discovery well underway when the Chapter 11 Cases

commenced, the full basis and support for MBIA's claims, as well as RFC's defenses, is

contained in the materials exchanged in *MBIA v. RFC*. In addition, MBIA produced to Movant-

Defendants all of the documents supporting the submission it made to the Examiner (the

"Examiner Submission").[6]

---

[5] MBIA's requests to Movant-Defendants to identify particular relevant categories of documents are memorialized in numerous emails. *See* Gottlieb Decl. Ex. P, Sept. 17, 2015 Email from J. Stanisci to P. Heeringa at ¶ 3; Gottlieb Decl. Ex. P, Sept. 29, 2015 Email from J. Stanisci to P. Heeringa at ¶ 3; Gottlieb Decl. Ex. P, Oct. 13, 2015 Email from J. Stanisci to P. Heeringa at ¶ 3; Gottlieb Decl. Ex. P, Oct. 26, 2015 Email from J. Stanisci to P. Heeringa at ¶ 3; Gottlieb Decl. Ex. P, Nov. 4, 2015 Email from J. Stanisci to P. Heeringa at ¶ 3.

[6] Arthur J. Gonzalez, Esq. was appointed as Examiner in the Chapter 11 Cases on July 3, 2012. MBIA produced to Movant-Defendants the documents cited in its Examiner Submission, including certain of its

8765601

Accordingly, MBIA informed the Movant-Defendants that RFC had in its

possession all of the documents exchanged in *MBIA v. RFC* (including expert reports and

transcripts of party depositions) and in the Chapter 11 Cases (collectively referred to as the

"Exchanged Documents"), and that Movant-Defendants should obtain those documents from

Plaintiffs rather than causing MBIA—a non-party—to incur the cost of production.  However,

MBIA agreed to step in and fill any gaps in RFC's collection of Exchanged Documents in order

to ensure that Movant-Defendants had access to all of the documents that had been exchanged in

the litigation and that supported MBIA's claims against RFC.  Harris Aff. ¶ 12.  When Plaintiffs

informed MBIA that there were, in fact, significant gaps in RFC's set of Exchanged Documents,

MBIA promptly restored its litigation document database and produced those documents that

were not available from any other source, ultimately turning over approximately 14,000

documents totaling 165,000 pages.  *Id*.

### D.    Movant-Defendants' Demands for Internal MBIA Email Correspondence

Following their receipt of these documents, Movant-Defendants continued to

demand that MBIA search, review and produce voluminous internal email correspondence;

however, they were unable to tie such requests to relevant, non-privileged categories of

discovery that had not already been produced as part of the Exchanged Documents.  For example,

during a September 10, 2015 call, counsel for MBIA asked counsel for Movant-Defendants to

identify the categories of documents that Movant-Defendants still required.  Gottlieb Decl. Ex. P,

Sept. 17, 2015 Email from J. Stanisci to P. Heeringa.  Movant-Defendants replied that they

sought repurchase correspondence between MBIA and RFC, evaluations or analyses of loans

---

expert reports and documents its experts relied on.  MBIA produced these documents, even though it
understood that all of these materials had already been produced by Plaintiffs.  Gottlieb Decl. Ex. P, Nov.
4, 2015 Email from J. Stanisci to P. Heeringa at ¶ 2.

6

contained in the MBIA-insured securitizations and loan tapes.  *Id.* When MBIA's counsel

pointed out that these documents were all contained in the Exchanged Documents, counsel for

Movant-Defendants replied that the categories were "exemplary" only, but failed to provide any

other examples to narrow the requests or focus the discussion.  Gottlieb Decl. Ex. P, Sept. 17,

2015 Email from J. Stanisci to P. Heeringa; Gottlieb Decl. Ex. P, Oct. 22, 2015 Email from P.

Heeringa to J. Stanisci; Gottlieb Decl. Ex. P, Sept. 29, 2015 Email from J. Stanisci to P.

Heeringa.

On October 2, 2015, Movant-Defendants purported to narrow their requests by

naming "specific categories" of documents.  Gottlieb Decl. Ex. P, Oct. 2, 2015 Email from P.

Heeringa to J. Stanisci.  But the "specific" categories Movants-Defendants identified were even

broader than the categories in the Subpoena itself.  Movants-Defendants now demanded

production of all documents from February 2009 (after MBIA commenced its action against

RFC) onward not covered by the Order Appointing Mediator dated December 26, 2012 (the

"Mediation Order"), "reflecting or related to":

- the Chapter 11 Cases;

- any of MBIA's suits against RFC or its affiliates;

- any of the RFC securitizations for which MBIA provided financial guaranty insurance;

- MBIA's involvement or interaction with the ResCap Liquidating Trust that was created pursuant to the confirmed plan; and

- RFC's litigation against the Movant-Defendants.

Gottlieb Decl. Ex. P, Oct. 2, 2015 Email from P. Heeringa to J. Stanisci.

As to privilege concerns, counsel for MBIA explained that the vast majority of

any internal MBIA emails about *MBIA v. RFC*, the Chapter 11 Cases, or the Global Settlement,

including the Bankruptcy Court-ordered mediation that led to the Global Settlement

8765601

("Mediation"), would be privileged because MBIA's primary interaction with RFC was as a litigation opponent and participant in the Chapter 11 Cases (including the Mediation).  Harris Aff. ¶¶ 11, 15; *e.g.*, Gottlieb Decl. Ex. P, Oct. 26, 2015 Email from J. Stanisci to P. Heeringa.  Further, many communications from December 26, 2012 through December 11, 2013 were protected under the Mediation Order, which this Court declined to modify to lift confidentiality restrictions. Harris Aff. ¶ 15; *e.g.*, Gottlieb Decl. Ex. P, Sept. 17, 2015 Email from J. Stanisci to P. Heeringa at ¶ 3b; Gottlieb Decl. Ex. P, Sept. 29, 2015 Email from J. Stanisci to P. Heeringa at ¶ 3b; Gottlieb Decl. Ex. P, Oct. 13, 2015 Email from J. Stanisci to P. Heeringa at ¶ 3b; *In re ResCap Liquidating Trust Mortg. Purchase Litig.*, 536 B.R. 132 (Bankr. S.D.N.Y. 2015) (decision denying motion seeking to modify Mediation Order).  To log communications resulting from broad search requests with no effort made to exclude privileged documents would put an undue burden on MBIA.  *See* Gottlieb Decl. Ex. P, Sept. 17, 2015 Email from J. Stanisci to P. Heeringa.

In an effort to quantify the burden imposed by Movant-Defendants' proposal, MBIA performed test searches of the search terms proposed by Movant-Defendants on the email files of three business people at MBIA who were the most involved with the oversight of *MBIA v. RFC* and MBIA's claims in the Chapter 11 Cases, returning **over 43,500 documents**.  Harris Aff. ¶ 18.  Moreover, a cursory review of the documents confirms MBIA's view that the majority of the documents are likely privileged:  **12,000 documents** date from the period of the Mediation and over **22,000 documents** contain the name of an in-house or outside attorney or a consultant retained for purposes of litigation.  Harris Aff. ¶¶ 19-20.  MBIA also believes it is likely that emails that do not contain the name of an attorney or litigation consultant reflect privileged legal advice or attorney work product given the nature of MBIA's relationship to RFC during the time period, or contain only irrelevant portfolio-monitoring exercises having no bearing on the issues

8

in the underlying litigation between Plaintiffs and Movant-Defendants.  Harris Aff. ¶ 21.  In

addition, many of these documents likely contain confidential business information about

securitizations entirely unrelated to RFC.  Harris Aff. ¶ 22.

**E.    Movant-Defendants' Demands for the Examiner Submission**

Movant-Defendants also demanded that MBIA produce the Examiner Submission.

As described above, MBIA has already produced all of the documents cited in and supporting the

Examiner Submission.  Harris Aff. ¶ 29; Harris Aff. Ex. 6.  In accordance with the procedures set

forth in the Confidentiality Agreement Regarding Examiner Submission Papers, Harris Aff. Ex.

7,  and the Amended Stipulation and Order for the Production and Exchange of Confidential

Information entered in *MBIA v. RFC* ("*MBIA v. RFC* Protective Order"), Harris Aff. Ex. 8, upon

receiving a request for production of its Examiner Submission, MBIA provided notice to RFC

and other parties of the request.  Harris Aff. ¶ 27; Harris Aff. Ex. 1-2.  RFC objected to MBIA's

production of the Examiner Submission.  Harris Aff. ¶ 28; Harris Aff. Ex. 3.  Accordingly,

MBIA has informed Movant-Defendants that MBIA will produce the Examiner Submission if

RFC withdraws its objection or if the Court orders MBIA to do so.  The dispute over the

Examiner Submission is between RFC and the Movant-Defendants.  MBIA takes no position on

the merits of that issue.  Harris Aff Ex. 5 , March 23, 2015 Email from F. Levin to J. Stanisci.

**ARGUMENT**

Movant-Defendants' motion to compel further production from MBIA fails to

demonstrate how the documents sought are relevant to the claims and defenses in the underlying

litigation between Plaintiffs and Movant-Defendants and fails to justify the substantial burden on

non-party MBIA to review, produce and log tens of thousands of documents protected by

applicable privileges or the Mediation Order.  The obligations imposed by the Subpoena do not

meet the proportionality standard set forth in the Federal Rules of Civil Procedure.  In short, all

9

relevant documents have either already been produced to Movant-Defendants, or are protected

by privilege or the Mediation Order, and the motion to compel should be denied.  If the Court is

inclined to order MBIA to comply with the Subpoena, MBIA respectfully requests that the Court

condition its order on the payment by Movant-Defendants of all fees and expenses incurred by

MBIA in connection with the review and production of documents and the creation of a privilege

log.

## I.    Standard Applicable to a Motion to Compel Compliance with a Non-Party Subpoena

The court "must quash or modify a subpoena that . . . subjects a person to undue

burden."  Fed. R. Civ. P. 45(d)(3)(A)(iv); *see also* Fed. R. Civ. P. 45(d)(1) (court must enforce

subpoenaing party's duty to "avoid imposing undue burden or expense on a person subject").

"Whether a subpoena imposes upon a witness an 'undue burden' depends upon 'such factors as

relevance, the need of the party for the documents, the breadth of the document request, the time

period covered by it, the particularity with which the documents are described and the burden

imposed.'"  *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y.

1996) (quoting *United States v. Int'l Bus. Mach. Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979)); *see*

*also* Fed. R. Civ. P. 26(b)(2) (limiting discovery that unreasonably cumulative, or is obtainable

from a source that is more convenient, less burdensome, or less expensive).  The burden is on the

party issuing the subpoena to demonstrate that the information sought is relevant and material to

the claims and defenses in the underlying proceedings.  *Night Hawk Ltd. v. Briarpatch Ltd., L.P.*,

No. 03 Civ. 1382, 2003 U.S. Dist. LEXIS 23179, at *23 (S.D.N.Y. Dec. 23, 2003).

A subpoenaed entity's status as a non-party entitles it to "consideration regarding

expense and inconvenience."  *Concord Boat*, 169 F.R.D. at 49.  "[W]here, as here, discovery is

sought from a non party, the Court should be particularly sensitive to weighing the probative

value of the information sought against the burden of production on the non party." *Arista*

*Records LLC v. Lime Grp. LLC*, No. 06 CV 5936 (KMW), 2011 U.S. Dist. LEXIS 20709, at *9

(S.D.N.Y. Mar. 1, 2011) (internal quotation and citations omitted); *see Concord Boat*, 169 F.R.D.

at 49.  The discovery sought must not only be relevant, but also "proportional to the needs of the

case."  Fed. R. Civ. P. 26(b)(1).  In determining whether the proportionality requirement is met,

the court should consider the importance of the information sought to resolving the underlying

dispute and "whether the burden or expense of the proposed discovery outweighs its likely

benefit."  *Id*.

## II.    The Materials Movant-Defendants Seek are Cumulative and Irrelevant

In the eight-plus months of negotiations between the parties, Movant-Defendants

have been unable to articulate the specific documents they seek or identify a category of non-

privileged documents supposedly possessed by MBIA that is non-cumulative and relevant to the

underlying dispute.  Movant-Defendants currently seek email communications over the five-year

period from 2009 through 2013 on five topics broadly defined as "(i) the RFC/ResCap

bankruptcy, (ii) MBIA's fraud and other claims against RFC and its related entities, (iii) the

MBIA Lawsuits, (iv) RFC-Sponsored securitizations and the underlying mortgage loans, and

(v) the underlying lawsuits against the Defendants."  Mot. at 8.  Absent some clear

demonstration of the relevance and utility of the documents Movant-Defendants seek, MBIA

should not be put through the time and expense burdens that would be imposed by compliance

with the Subpoena.

### A.    Movant-Defendants Continue to Request Information Already
### Produced by MBIA

During the parties' lengthy meet-and-confer negotiations, the *only* specific

documents Movant-Defendants have identified as responsive to their subpoena are repurchase

11

correspondence, loan tapes, and evidence of MBIA's claims paid. *All* of these documents are contained in the Exchanged Documents and MBIA's submissions in the Chapter 11 Cases already in Movant-Defendants' possession. Movant-Defendants' failure to identify a single non-cumulative category of documents requires denial of their motion to compel. *See* Fed. R. Civ. P. 26(b)(3) (obligation to avoid cumulative discovery); *see, e.g.*, *Nova Biomedical Corp. v. i-Stat Corp.*, 182 F.R.D. 419, 423 (S.D.N.Y. 1998) (quashing a subpoena to a third party that primarily sought materials already provided in an earlier subpoena response); *Cohen v. City of N.Y.*, 255 F.R.D. 110, 122 (S.D.N.Y. 2008) (finding "no basis" to enforce a subpoena that sought from a third party information that was a "literal cop[y]" of information in possession of a party to the action).

Undeterred, Movant-Defendants now argue that the requested documents relate to "the proper allocation of the Global Settlement between the fraud claims—for which RFC is not entitled to indemnification—and other claims for which indemnification theoretically may be available." Mot. at 9. But any non-privileged documents or analyses related to MBIA's claims for fraud against RFC are contained in the Exchanged Documents, which have already been produced, or in MBIA's publicly-filed memoranda in support of confirmation of the plan. For example, MBIA's expert damages report and its proof of claim set forth MBIA's methodology for calculating damages under its fraud and breach of contract claims. Any non-privileged internal correspondence MBIA may have that bears on this issue is merely cumulative of the documents already in Movant-Defendants possession. *See Nova Biomedical*, 182 F.R.D. at 423.

### B.    **MBIA's Subjective Views on the Global Settlement are Irrelevant**

The only other relevance argument Movant-Defendants have proffered in support of their motion is the assertion that MBIA's internal emails "likely contain" information bearing on the reasonableness of the Global Settlement. Mot. at 9. But this Court has already ruled that

12

subjective assessments are irrelevant; under both Minnesota and New York law, the test to

determine the reasonableness of a settlement is an objective one.  *See In re ResCap Liquidating*

*Trust Mortg. Purchase Litig.*, 536 B.R. at 146, 148.  "Communications bearing on parties'

subjective beliefs regarding the reasonableness of the Global Settlement are not necessary to

determine the reasonableness of the settlement under an objective standard."  *Id.* at 148 (holding

that the limited relevance of internal communications about the mediation cannot overcome the

confidentiality interests embodied in the Mediation Order).  As this Court has previously held,

denying Movant-Defendants access to these communications "does not prejudice their ability to

challenge the reasonableness of the Global Settlement; they remain free to challenge the merits

of the claims subject to the Global Settlement and the defenses available at the time, and they can

challenge the methodologies and conclusions in the publicly available expert reports offered in

support of the Global Settlement."  *Id.* at 150.

   Indeed, Movant-Defendants have access to all the materials, including

voluminous expert analysis, that supported MBIA's claims against RFC, and are therefore fully

able to challenge the objective reasonableness of the settlement with MBIA.  Moreover, MBIA's

"subjective" views on the original RMBS settlement and the Global Settlement are fully

contained in its publicly-filed papers in the Chapter 11 Cases.  *See* Objection of MBIA to

Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the RMBS Trust Settlement

Agreements, Dkt. 2180; Gottlieb Decl. Ex. I, MBIA's Memorandum of Points and Authorities in

Support of Confirmation of the Joint Chapter 11 Plan.

   Having failed to meet their burden on relevance, Movant-Defendants' take the

position that MBIA "conceded" the relevance of documents by producing the Exchanged

Documents.  This argument should be rejected out of hand.  In an effort to reach a cost-effective

8765601

compromise on the Subpoena, MBIA agreed to work with the Plaintiffs to ensure that Movant-

Defendants had access to all the documents produced in *MBIA v. RFC* so that they could

evaluate the bases and strength of MBIA's claims against RFC.  Such compromises are to be

encouraged, not used as a bludgeon in future motions to compel.  *See State Farm Mut. Auto. Ins.

Co. v. Fayda*, No. 14 Civ. 9792, 2015 U.S. Dist. LEXIS 162164, at *20 (S.D.N.Y. Dec. 3, 2015)

("Treating as a 'concession' an opponent's cooperation in resolving a discovery dispute . . . is

both a losing argument and a short-sighted strategy that is likely to curtail cooperation among

counsel.").

### III.    Movant-Defendants Seek Information That Is Overwhelmingly Subject to the Attorney-Client Privilege and Mediation Privilege

Putting aside the relevance (or lack thereof) of the documents Movant-Defendants

seek, the practical effect of the Subpoena and proposed search terms is to encompass tens of

thousands of documents that are subject to the attorney-client privilege, the mediation privilege,

or both.  For example, Movant-Defendants' search terms include the docket numbers of MBIA's

suits against RFC and terms like "lawsuit," "fraud" and "underwriting."  Harris Aff. ¶ 16.  This

consideration both limits the relevance of the broad categories of documents sought and

increases the burden of compliance.  *See, e.g., Estate of Ungar v. Palestinian Auth.*, 400 F. Supp.

2d 541, 554 (S.D.N.Y. 2005), *aff'd*, 332 F. App'x 643 (2d Cir. 2009).  Movant-Defendants'

boilerplate request for only "non-privileged" documents does nothing to cure the issue where, as

here, there has been no attempt to limit the categories of documents in a way that will exclude

facially privileged documents or relieve MBIA of its burden to produce an extensive privilege

log.  *See id.* at 554 n. 11.

14

A.       **Attorney-Client Privilege**

The documents requested by the Movant-Defendants are overwhelmingly likely

to be protected by the attorney-client privilege.  From 2009 through 2013—the time period

sought by Movant-Defendants—MBIA was no longer engaged in writing new insurance policies,

and the RMBS market had effectively ceased to function following the mortgage crisis of 2008.

Harris Aff. ¶ 5.  MBIA's only ongoing structured finance business during this time involved

monitoring exposure levels, making claims payments, and seeking remediation on policies issued

in the past, mostly through litigation.  Harris Aff. ¶ 5.  Beginning in at least 2008, when MBIA

filed suit against RFC, MBIA's only relationship with RFC was as a litigation adversary, first in

New York state court and then in the Chapter 11 Cases.  Harris Aff. ¶ 11.  MBIA employees

worked to assist counsel in prosecuting MBIA's claims and were in regular email contact with

inside and outside legal counsel and the consultants counsel hired to assist with forensic

reunderwriting and provide financial analysis to counsel during the Chapter 11 Cases.  Their

other activities with respect to the RFC securitizations consisted of simply monitoring the

performance of the securitizations, making claims payment under the policies, estimating

potential future claims, and formulating projections of loan loss reserves—communications

Movant-Defendants never specifically requested and have not contended are relevant.  *See*

Harris Aff. ¶ 11.  Thus, it is very unlikely that MBIA employees, including business people,

were corresponding about RFC, about RFC securitizations or about the Chapter 11 Cases in

ways that are relevant to the underlying litigation and that do not implicate legal advice.

Unsurprisingly, the test searches performed by MBIA suggest that a high

percentage of the documents sought by the Movant-Defendants are privileged.  Using the three

custodians who were most involved in the RFC litigation and the search terms suggested by

Movant-Defendants, MBIA collected over 43,000 documents.  Of those, more than half—

15

22,000—contained the name of MBIA's counsel or its litigation consultants.  Over 17,000

documents contained the name of an attorney or litigation consultant in the To or From fields.

Many of the remaining 21,000 documents are likely privileged as well, given that much of the

work the three test custodians were engaged in was at the direction of counsel or related to *MBIA*

*v. RFC* and the other RMBS litigations to which MBIA was a party.  Moreover, to the extent

they express views on litigation, those will necessarily have been informed by the advice of

counsel.

### B.    Mediation Privilege

This Court has already determined that "communications among the mediation

parties exchanged outside of mediation sessions *are protected by the Mediation Order to the*

*extent they were produced for or as a result of the mediation."  In re ResCap Liquidating Trust*

*Mortg. Purchase Litig.*, 536 B.R. at 151 (emphasis added, quotation omitted).  Thus,

communications internal to MBIA or between MBIA and other parties that were in furtherance

of the mediation are protected from disclosure by the Mediation Order.  During the period from

December 26, 2012 to December 11, 2013, MBIA's primary dealings with RFC and involvement

in the Chapter 11 Cases were its participation in the mediation.  Its communications during that

time frame—over 12,000 documents returned by the Movant-Defendants' search terms—are

likely to be created in furtherance of the mediation, or reflect MBIA's surveillance activities.

Movant-Defendants have not identified any categories of internal MBIA emails from the

mediation period that they believe are not so protected, nor have they even attempted to limit

their requests to target non-protected communications.  To the contrary, Movant-Defendants

have steadfastly demanded either the documents themselves or a log of documents withheld on

the basis of the mediation privilege.

8765601

### C.    Production of a Privilege and Mediation Log Is Itself an Undue Burden

Where, as here, a subpoena, document request, or ESI protocol is directed at documents that are overwhelmingly likely to be privileged, the production of a privilege log itself is an undue burden.  *See, e.g.*, *ABC v. Aereo, Inc.*, No. 12 Civ. 1540, 2013 U.S. Dist. LEXIS 5316, at *5-8 (S.D.N.Y. Jan. 11, 2013) (holding that where there was a "strong likelihood" that requested documents were privileged, it was unduly burdensome to require review and creation of a privilege log); *SEC v. Thrasher*, No. 92 Civ. 6987, 1996 U.S. Dist. LEXIS 3327, at *1-3 (S.D.N.Y. Mar. 19, 1996) (holding that creation of privilege log was unduly burdensome where a demand "[o]n its face" sought protected documents); *see also Capitol Records, Inc, v. MP3tunes, LLC*, 261 F.R.D. 44, 53 (S.D.N.Y. 2009) (limiting request for discovery where "search terms . . . clearly are overbroad and would likely require the itemization of a raft of privileged documents").

MBIA estimates that it will cost approximately $400,000[7] to review, produce, and where necessary log the 43,500 emails Movant-Defendants currently seek, a significant financial burden for a third-party to undertake.  *See* Harris Aff. ¶ 26.  It is more so here where MBIA has already produced thousands of documents, Movant-Defendants have access to *all* of the documents and information MBIA relied on in support of its claims against RFC, and Movant-Defendants have steadfastly refused to narrow the categories of documents they seek.  The significant costs, including attorneys' fees, that MBIA will incur if it is required to review and log these privileged documents far outweighs the limited utility of any non-privileged documents

---

[7] Counsel for MBIA incorrectly stated $350,000 as the estimate during the March 23 telephonic pre-motion conference with the Court.

MBIA may produce.[8]  This disproportionate burden is the exact problem the recent amendments

to Rule 26 were intended to remedy.  *See* Chief Justice's 2015 Year-End Report on the Federal

Judiciary ("Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through

increased reliance on the common-sense concept of proportionality.")  Movant-Defendants' total

failure to "take reasonable steps to avoid imposing undue burden or expense" on MBIA requires

denial of their motion to compel.  Fed. R. Civ. P. 45(d)(1).

IV.    **If the Court Orders Production, Movant-Defendants Should Be Required to
       Bear the Costs**

    A.    **The Court Has the Authority and the Obligation To Order Cost-
              Shifting Where A Subpoena Imposes Significant Expense on a Non-
              Party**

        If the Court is inclined to grant the motion and require MBIA to comply with

Movant-Defendants' overbroad subpoena and search terms, MBIA—a non-party—should not

bear any of the cost, including attorneys' fees.  Federal Rule 45(d)(2)(B)(ii) requires a court

ordering compliance with a subpoena to protect non-parties from "significant expense resulting

from compliance" by "ensur[ing] that the subpoenaed person will be reasonably

compensated."  Fed. R. Civ. P. 45(d)(2)(B)(ii), (C)(ii); *see also* Advisory Committee's Notes to

1991 Amendments to Rule 45 ("A non-party required to produce documents or materials is

protected against significant expense resulting from involuntary assistance to the court."); *First*

*Am. Corp. v. Price Waterhouse LLP*, 184 F.R.D. 234, 240 (S.D.N.Y. 1998) (holding that Rule 45

made "mandatory" the "discretion" courts previously had to "condition the enforcement of

subpoenas on the [serving party's] paying for the [nonparty's] costs of production.").

---

[8] If Movant-Defendants—or the Court—identify a category of non-privileged, non-cumulative, relevant
documents, MBIA is prepared to design targeted search terms to collect, review and produce only those
documents in a way that limits the burden on MBIA.

18

There can be little doubt that the approximately $400,000[9] cost MBIA estimates for compliance with the Subpoena is "significant," requiring the court to order some form of cost-shifting. *See Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013) ("Thus, when discovery is ordered against a non-party, the only question before the court in considering whether to shift costs is whether the subpoena imposes significant expense on the non-party. If so, the district court must order the party seeking discovery to bear at least enough of the cost of compliance to render the remainder 'non-significant.'"). Cost-shifting is especially appropriate here because the Movant-Defendants have made sweeping—and correspondingly expensive— requests that they have refused to limit or narrow despite MBIA's repeated explanation of the significant burden the requests impose. *See Prescient Acquisition Grp., Inc. v. MJ Publ'g Trust*, No. 05 Civ. 6298, 2006 U.S. Dist. LEXIS 75383, at *7-9 (S.D.N.Y. Oct. 13, 2006) (considering, among other factors "the breadth and scope of the subpoena, the willingness of the serving party to narrow its scope, [and] the level of effort required to comply" in ordering partial cost-shifting). For example, in *New Products Corp. v. Tibble (In re Modern Plastics Corp.)*, the court noted that the issuing party and its counsel refused to "meaningfully engag[e] in efforts to narrow the requests to limit the number of documents subject to collection or mitigate the expense of a privilege review, warranting cost-shifting. 536 B.R. at 783, 788 (Bankr. W.D. Mich. 2015). Furthermore, Movant-Defendants have failed to articulate what non-cumulative documents they seek, making the production they now demand of marginal, if any, relevance. This factor, too, weighs in favor of cost-shifting.

---

[9] Amounts as low as $20,000 have been held to be "significant." *See Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013). The D.C. Circuit noted that a district court was "well within bounds in treating nearly $200,000 as 'significant.'" *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001). In this Circuit, a court considered an expense of less than $100,000 significant for Bank of America. *Prescient Acquisition Grp., Inc. v. MJ Publ'g Trust*, No. 05 Civ. 6298, 2006 U.S. Dist. LEXIS 75383, at *3 (S.D.N.Y Oct. 13, 2006).

19

Attorney time for privilege review and logging are among the costs for which Rule 45 requires cost-shifting because a subpoenaed party's response is required to "expressly make the claim" of privilege and "describe the nature of the withheld documents . . . in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." *See* Fed. R. Civ. P. 45(e)(2). Tellingly, a high proportion of privileged documents requiring costly review and logging is one factor courts consider in determining whether cost-shifting is appropriate. *See Spears v. City of Indianapolis*, 74 F.3d 153, 158 (7th Cir. 1996) ("[T]he timing of the subpoenas, the wealth of materials sought—with the whiff of a fishing expedition apparent—and *the privileged nature of many of the documents* provided a sound basis for the court to order reimbursement under the rules.") (emphasis added); *New Prods. Corp.*, 536 B.R. at 783 (shifting costs for, among other things, reviewing documents for privilege); *CallWave Commc'ns, Inc v. WaveMarket, LLC*, No. C 14-80112 JSW (LB), 2014 U.S. Dist. LEXIS 88073, at *13 (N.D. Cal. June 26, 2014) (recognizing that "creating a privilege log can be costly," which supported cost-shifting). Because MBIA's privilege review and logging is part and parcel of the costs of responding to the subpoena, it is subject to the court's cost-shifting powers in the same way as review time and copying costs. *See First Am.*, 184 F.R.D. at 241 (ordering cost-shifting for non-parties legal costs associated with complying with complying with confidentiality restrictions in order to produce documents because the work benefited the requesting party).

### B.    Cost-Shifting Is Appropriate Here Because of the Broad Requests, the High Cost of Compliance and MBIA's Status as a Non-Party

Under the circumstances here, the factors commonly considered by courts favor shifting all of MBIA's costs to Movant-Defendants. *See First Am.*, 184 F.R.D. at 241 (applying the three-factor test from *Linder v. Calero-Portocarrero*, 180 F. R.D. 168, 177 (D.D.C. 1998)).

8765601

*First*, MBIA has no present interest in the outcome of the underlying Minnesota litigation and has no current holdings in the ResCap Liquidating Trust.  Gottlieb Decl. Ex. O, June 22, 2015 Email from J. Harris; *see Linder* at 177.  MBIA is relevant to the Minnesota litigation only insofar as it received a settlement allocation as part of the Global Settlement, but, as explained above, thousands of documents relating to MBIA's claims against RFC have already been produced.  *Second*, the underlying litigation is not "of great public interest"; it is a private dispute between financial institutions.  *See Mt. Sinai Med. Ctr. v. Port Auth. of N.Y. & N.J., Inc. (In re World Ctr. Disaster Site Litig.)*, No. 21-mc-100 (AKH), 2010 U.S. Dist. LEXIS 96819, at *5-6 (S.D.N.Y. Sept. 13, 2010) (ordering only limited cost-shifting where the litigation was of "great public interest").  *Third*, MBIA is not in a better position to bear the costs of production than Movant-Defendants, a group of fourteen large banks and financial institutions who can pool the costs of the subpoena they chose to issue.  *See id.*

In sum, having made only limited and ineffectual attempts to comply with their obligation under Rule 45 to "take reasonable steps to avoid imposing undue burden or expense," this Court should condition MBIA's obligation to comply on payment by the Movant-Defendants of all fees and expenses incurred by MBIA, including attorneys' fees, in connection with the review and production of documents and the creation of a privilege log.  Nor would cost "sharing," as opposed to full cost-shifting, be appropriate here because Movant-Defendants have failed to take reasonable steps to narrow their requests and limit the burden on MBIA.  *See New Prods. Corp.*, 536 B.R. at 788.

21

## V.    Subject to Resolution of Confidentiality Issues, MBIA Is Prepared to Produce Its Examiner Submission

MBIA has no objection to producing its Examiner Submission, provided it can do so consistent with the Confidentiality Agreement and with the *MBIA v. RFC* Protective Order. The ResCap Liquidating Trust objected to the production.  Harris Aff. ¶ 27.  Out of an abundance of caution for its obligations under the Confidentiality Agreement and the *MBIA v. RFC* Protective Order, MBIA has withheld production of the Examiner Submission until Plaintiffs and the Movant-Defendants have resolved their dispute over the proper interpretation of the Confidentiality Agreement and *MBIA v. RFC* Protective Order, or until MBIA receives an order from this Court that it may produce the Examiner Submission consistent with the Confidentiality Agreement and the *MBIA v. RFC* Protective Order.

MBIA does not object to the production of the Examiner Submission to the extent it contains MBIA's own material, but MBIA understands that the ResCap Liquidating Trust objects because the Examiner Submission makes reference to RFC's documents as well. Plaintiffs intend to submit an opposition brief supporting its position that the Examiner Submission is protected.  MBIA takes no position on that dispute, and will be guided by the Court's ruling.[10]

---

[10] If Movant-Defendants request it, and the Court orders it, MBIA will perform targeted searches for communications between the three designated custodians and the Examiner or his staff, and produce them at its own expense.

8765601

## CONCLUSION

For the foregoing reasons, MBIA requests that this Court deny Movant-

Defendants' motion to compel compliance with the Subpoena.  If the Court grants the motion,

MBIA requests that the Court shift the burden of payment for the document review and privilege

log to Movant-Defendants.

Dated:  New York, New York              Respectfully submitted,
        March 25, 2016
                                        PATTERSON BELKNAP WEBB & TYLER LLP


                                        By:  s/ Michelle W. Cohen_____
                                        Michelle W. Cohen
                                        Stephanie Teplin
                                        1133 Avenue of the Americas
                                        New York, New York 10036
                                        (212) 336-2000
                                        mcohen@pbwt.com
                                        steplin@pbwt.com

                                        *Counsel for Respondent MBIA Insurance
                                        Corporation*

23