UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Residential Capital, LLC, *et al.*,<br><br>　　　　　　　　　　*Debtors*. | Chapter 11<br><br>Case No. 12-12020-mg<br><br>Jointly Administered |
| PNC Bank, National Association, et al.,<br><br>　　　　　　　　　　*Movants*,<br><br>　　　　　v.<br><br>MBIA Insurance Corporation,<br><br>　　　　　　　　　　*Respondent*. | <br><br>Case No. 16-mc-00063-P1<br><br>Related Case No. 13-cv-3451 (SRN/JJK/HB) in United States District Court for the District of Minnesota |

### AFFIDAVIT OF JONATHAN HARRIS IN SUPPORT OF MBIA INSURANCE CORPORATION'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL COMPLIANCE WITH THIRD PARTY SUBPOENA

1. I am the Deputy General Counsel of MBIA Insurance Corporation ("MBIA"), and submit this Affidavit in support of MBIA's Opposition to Defendants' Motion to Compel Compliance with Third Party Subpoena. I have personal knowledge of the facts stated in this Affidavit.

*Attached Exhibits*

2. Attached to this Affidavit are true and correct copies of the following documents, discussed in more detail below:

| Exhibit | Document |
|---|---|
| 1 | Letter from J. Stanisci to J. Battle dated October 8, 2015 |
| 2 | Letter from J. Stanisci to T. Devine, *et al.* dated October 8, 2015 |

8774725

| **Exhibit** | **Document** |
|---|---|
| 3 | Letter from J. Battle to J. Stanisci dated October 15, 2015 |
| 4 | Email Correspondence between J. Stanisci and P. Heeringa dated March 4, 2016 |
| 5 | Email Correspondence between J. Stanisci and F. Levin dated March 23, 2016 |
| 6 | Letter from J. Stanisci to P. Heeringa dated November 3, 2015 |
| 7 | Confidentiality Agreement Regarding Examiner Submission Paper |
| 8 | Amended Stipulation and Order for the Production and Exchange of Confidential Information |

*MBIA and the* **MBIA v. RFC** *Litigation*

3. MBIA is a financial guaranty or "monoline" insurer. During the period leading up to 2008, MBIA provided financial guaranty insurance to structured finance transactions, including to residential mortgage-backed securities ("RMBS").

4. In 2006 and 2007, MBIA insured five securitizations issued by Residential Funding Co., LLC ("RFC"): Home Equity Loan Trust 2006-HSA4, Home Equity Loan Trust 2006-HSA5, Home Equity Loan Trust 2007-HSA1, Home Equity Loan Trust 2007-HSA2 and Home Equity Loan Trust 2007-HSA3 (the "RFC Securitizations").

5. In or about 2008, as the mortgage and housing crisis deepened, MBIA ceased to issue new financial guaranty policies on structured finance products. Instead, MBIA's business focused on remediation efforts for its existing portfolio of policies, including enforcing contractual repurchase or "putback" obligations and, where warranted, filing fraudulent inducement and breach of contract actions against RMBS sponsors. Aside from these remediation activities, MBIA's business was chiefly managing its portfolio of insured structured finance products by monitoring its exposure, paying claims, and projecting future claims.

8774725

6. In 2008, the RFC Securitizations, like many other RMBS, began to suffer large losses and MBIA was required to make claims payments under its financial guaranty policies. MBIA began performing a review of securitized mortgage loans to determine if those loans breached RFC's contractual representations and warranties to MBIA. On December 4, 2008, MBIA filed suit against RFC in New York state court, commencing *MBIA Insurance Corporation v. Residential Funding Company, LLC*, No. 603552/08 (N.Y. Sup. Ct. N.Y. Cnty.) ("*MBIA v. RFC*"). MBIA's complaint, as amended on March 19, 2010, asserted eight causes of action against RFC sounding in fraud, breach of contract and negligent misrepresentation arising out of MBIA's provision of insurance for the five RFC Securitizations. MBIA also filed suit against two affiliates of RFC. *MBIA Ins. Corp. v. GMAC Mortg., LLC*, No. 600837/10 (N.Y. Sup. Ct.), involved two GMAC securitizations. *MBIA Ins. Corp. v. Ally Financial Inc.*, No. 12-cv-2563 (D. Minn.), involved the same five RFC securitizations at issue in *MBIA v. RFC*, as well as the two GMAC securitizations.

7. On May 14, 2012, RFC, along with its parent company Residential Capital, Inc. and other affiliates, filed for Chapter 11 Bankruptcy protection. *In re Residential Capital, Inc.*, No. 12-12020-mg (S.D.N.Y. Bankr.) ("Chapter 11 Cases").

8. When the Chapter 11 Cases were filed, the *MBIA v. RFC* litigation was well-advanced. The parties had completed fact discovery, exchanging tens of thousands of documents and taking approximately one hundred depositions. The discovery exchanged in the case covered a broad range of topics, including:

- loan tapes for each of the RFC Securitizations containing detailed characteristics of the securitized loans;

- MBIA's repurchase demands and other pre-suit correspondence with RFC about the RFC Securitizations and the mortgage loans;

3

8774725

- documents reflecting due diligence reviews of the securitized loans performed by third-party firms; and

- documents reflecting MBIA's ongoing surveillance of the RFC securitizations, including evidence of losses and MBIA's claims paid.

9. Also prior to the commencement of the Chapter 11 Cases, MBIA and RFC had served expert reports on a variety of topics. MBIA's reports disclosed that an expert statistician had selected a statistically valid and representative sample of 3,600 loans from the RFC Securitizations that would allow for the extrapolation of securitization-wide breach rates. MBIA's reunderwriting expert examined each of those 3,600 loans to determine whether the loans breached any representations and warranties made by RFC and established securitization-wide breach rates. MBIA also served a damages report disclosing its calculations for damages under fraud and breach-of-contract theories based on the breach rate, and a report on RFC's securitization practices.

10. MBIA filed a proof of claim against RFC in the Chapter 11 Cases, s*ee* Claim No. 5849, as well as proofs of claim against several other debtors, *see* Claims No. 5846 (Homecomings Financial, LLC), 5847 (Residential Capital, LLC), 5848 (Residential Funding Mortgage Securities II, Inc.), 5850 (Residential Asset Mortgage Products, Inc.), and 5851 (GMAC Mortgage, LLC). Eventually, MBIA's claims against RFC and the other debtors were resolved through the "Global Settlement" reached in the Chapter 11 Cases and allowed and paid pursuant to a confirmed plan.

11. Beginning at least in 2008 when MBIA commenced its loan review and demanded repurchase from RFC, and certainly as of December 2008 when *MBIA v. RFC* was filed, MBIA's primary interaction with RFC was as a litigation adversary. MBIA did not initiate any new business with RFC. Furthermore, MBIA's activities with respect to the RFC Securitizations were largely litigation-focused as MBIA and its employees worked to assist

4

counsel in prosecuting MBIA's claims. The MBIA employees responsible for the RFC Securitizations were in regular contact via email with myself, or other attorneys with whom I worked, outside counsel, and consultants retained by MBIA's outside counsel. Aside from these litigation-related activities, those MBIA employees reviewed monthly trustee reports for the RFC Securitizations, monitored MBIA's exposure, and paid claims under the policies. After litigation was filed, MBIA did not perform evaluations or analyses of the RFC Securitizations apart from its work assisting counsel in the litigation and Chapter 11 Cases.

*Movant-Defendants' Request for MBIA Emails*

12. On January 20, 2015, MBIA received a Subpoena issued by a number of entities who are defendants in litigation brought by RFC and the ResCap Liquidating Trust in the United States District Court for the District of Minnesota ("Movant-Defendants"). Through conversations and correspondence between counsel for Movant-Defendants, myself, and MBIA's outside counsel at Cadwalader, Wickersham & Taft LLP, MBIA informed Movant-Defendants that many of the documents encompassed by the Subpoena had been exchanged in *MBIA v. RFC* and, as such, were in the possession of RFC. However, MBIA agreed that, to the extent there were any gaps in RFC's collection of documents, MBIA would assist in ensuring that any missing documents were produced to Movant-Defendants. Upon being notified by RFC that it was unable to produce certain documents exchanged in *MBIA v. RFC*, MBIA restored its litigation databases and ensured that the missing documents—14,000 documents totaling 165,000 pages—were produced to Movant-Defendants in August 2015. This supplemented RFC's production such that the Movant-Defendants received all documents, exchanged in *MBIA v. RFC*, totaling over 66,000 documents. In addition, Movant-Defendants received all of the

5

expert reports exchanged in *MBIA v. RFC* and all of the transcripts of depositions of party witnesses.

13. MBIA took the position throughout negotiations that Movant-Defendants should review the *MBIA v. RFC* documents, as well as MBIA's publicly available filings in the Chapter 11 Cases, to identify any categories of relevant, non-privileged, and non-duplicative documents they purportedly required from MBIA. Not surprisingly, Movant-Defendants never identified any such categories.

14. On October 2, 2015, Movant-Defendants purported to narrow their requests by naming "specific categories" of documents. But the "specific" categories Movant-Defendants identified were even broader than the categories in the Subpoena itself. Movant-Defendants now demanded production of all documents from February 2009 onward, not covered by the Order Appointing Mediator dated December 26, 2012 (the "Mediation Order"), "reflecting or related to"

- the RFC/ResCap bankruptcy;
- any of MBIA's suits against RFC or its affiliates;
- any of the RFC securitizations for which MBIA provided financial guaranty insurance;
- MBIA's involvement or interaction with the ResCap Liquidating Trust after the bankruptcy; and
- RFC's litigation against the Movant-Defendants.

15. MBIA informed Movant-Defendants' counsel that many of the documents it sought would be protected by the Mediation Order entered in the Chapter 11 Cases or by the attorney-client privilege or work product protection. MBIA explained to Movant-Defendants that during the time after it filed suit against RFC, MBIA's relationship with RFC was that of a

6

8774725

litigation opponent, and the work its employees performed related to RFC consisted primarily of supporting MBIA's legal claims.

16. Movant-Defendants provided MBIA with a list of search strings that they represented would capture the documents they sought. Many of these search terms were so broad that they would hit any email or attachment that referenced RFC or ResCap in proximity to words like "litigation," "lawsuit," "fraud," "warranty," "putback", "loss," "liability" or "underwriting." The search terms included the docket number of the *MBIA v. RFC* litigation.

17. Without agreeing that Movant-Defendants' search terms were appropriate or were reasonably calculated to identify relevant, discoverable documents, in an effort to reach compromise and narrow the issues in dispute, MBIA agreed to test Movant-Defendants' search terms on the emails of three custodians at MBIA who were most involved in the *MBIA v. RFC* litigation and the Chapter 11 Cases: Mitchell Sonkin, Anthony McKiernan, and David Glehan. The time frame for the test searches was February 1, 2009 through December 11, 2013.

18. MBIA's test searches yielded a total of 43,693 emails, including attachments, and de-duplicated across the three custodians—approximately 20 GB of data.

19. Of those results, 12,201 emails and attachments date from the period covered by the Mediation Order, December 26, 2012 through December 11, 2013.

20. To assess the likelihood that documents were privileged, MBIA prepared a list of the names of its in-house and outside counsel as well as its litigation and reunderwriting consultants (retained by counsel) which it compared with the documents returned in the test searches. It found 22,030 documents contained a privileged name. 17,124 emails and attachments had one of these privileged names in the email To or From field.

7

8774725

21. Moreover, it is very likely that any relevant emails that do *not* contain a privileged name reflect legal advice or attorney work product. This is because, as described above, other than the portfolio monitoring work, which Movant-Defendants have not asked for, MBIA's primary "business" with RFC during this time period was pursuing legal remedies against RFC.

22. Furthermore, many of these documents likely contain confidential business information about securitizations entirely unrelated to RFC.

23. Movant-Defendants' solution to this issue was to propose that MBIA could "initially" withhold the 22,000 documents that included a privileged name. This proposal presented two problems. First, as explained above, MBIA believes that many of the documents that do *not* contain a privileged name contain protected communications. Therefore, MBIA would still need to undertake a full review of the produced documents and clawback (and presumably log) privileged documents. Second, Movant-Defendants never agreed that they would forgo production of the documents that included a privileged names; the proposal was only that MBIA need not "initially" produce these documents. *See* Ex. 4-5.

24. MBIA again informed Movant-Defendants that a more productive way to reduce the burden on MBIA was for Movant-Defendants to identify the categories of documents they were seeking more particularly so that the parties could work on a more targeted set of search terms that would return a smaller set of documents. Movant-Defendants again refused to do so. *See id.*, Mar. 23, 206 Email from J. Stanisci to F. Levin.

25. The only representation Movant-Defendants made with respect to cost-sharing was a vague proposal to "share" costs only with respect to MBIA's creation of a "Mediation Log" of documents that are confidential under the Mediation Order.

8

26.     MBIA estimates it would cost approximately $400,000 to review, produce and log the emails returned by Movant-Defendants' search terms. This estimate is based on the following considerations:

- MBIA assumes that an attorney could complete review, logging and redaction of 50 documents an hour. Given the complexity of the privilege issues, this is a very conservative estimate.

- MBIA assumes a blended rate of $440 per hour for associate review. In its litigation against RFC, MBIA employed attorneys from its outside counsel to review the documents it produced and to create privilege logs. Given the complicated privilege issues attendant to the emails Movant-Defendants currently seeks, MBIA would again employee attorneys from its outside counsel to review and log the underlying documents.

- MBIA assumes that more senior attorneys will need to assist in privilege determinations and review the privilege log prior to production at a blended rate of $600 per hour.

*Movant-Defendants' Request for Examiner Submission and Related Documents*

27.     Movant-Defendants' Subpoena also requested that MBIA produce its submission to the Examiner, the Hon. Arthur Gonzalez ("Examiner Submission"). MBIA, the Examiner, and numerous other parties entered into a Confidentiality Agreement with respect to the Examiner Submission. *See* Ex. 7. In addition, MBIA was subject to the Amended Stipulation and Order for the Production and Exchange of Confidential Information entered in *MBIA v. RFC*. *See* Ex. 8. Pursuant to the Confidentiality Agreement and the *MBIA v. RFC* Order, MBIA gave other parties notice and an opportunity to object before it produced its Examiner Submission or other materials pursuant to a subpoena. Accordingly, on October 8, 2015, Outside Counsel sent letters to RFC and other parties to the Confidentiality Agreement giving notice of the Movant-Defendants' request for the Examiner Submission. *See* Ex. 1-2.

28.     On October 15, 2015, counsel for the ResCap Liquidating Trust responded to MBIA's notice, objecting to MBIA's production of its Examiner Submission. The ResCap

Liquidating Trust stated that it had no objection to MBIA's production of the supporting documents to the Examiner Submission, which consisted of discovery materials and expert reports from *MBIA v. RFC*. *See* Ex. 3.

29. Accordingly, on November 3, 2016, MBIA produced to Movant-Defendants the supporting materials to its Examiner Submission, totaling over 18,000 pages. *See* Ex. 6. MBIA informed Movant-Defendants that it had received an objection to the production of the Examiner Submission. Aside from the ResCap Liquidating Trust's objection and its obligations under the Confidentiality Agreement, MBIA has no objection to producing the Examiner Submission, and has informed Movant-Defendants that it can do so promptly if a court determines that production is proper.

[Signature on following page]

Liquidating Trust stated that it had no objection to MBIA's production of the supporting documents to the Examiner Submission, which consisted of discovery materials and expert reports from *MBIA v. RFC*. See Ex. 3.

        29.    Accordingly, on November 3, 2015, MBIA produced to Movant-Defendants the supporting materials to its Examiner Submission, totaling over 18,000 pages. *See* Ex. 6. MBIA informed Movant-Defendants that it had received an objection to the production of the Examiner Submission. Aside from the ResCap Liquidating Trust's objection and its obligations under the Confidentiality Agreement, MBIA has no objection to producing the Examiner Submission, and has informed Movant-Defendants that it can do so promptly if a court determines that production is proper.

March 25, 2016
Purchase, New York

                                                                Jonathan Harris

8774725