# Exh. 5

| | |
|---|---|
| **From:** | Levin, Fredrick <flevin@BuckleySandler.com> |
| **Sent:** | Wednesday, March 23, 2016 3:13 PM |
| **To:** | Stanisci, Jared |
| **Cc:** | Rome, Michael; Heeringa, Paul; Jonathan Harris; Hoff [PARTNER], Jonathan M. |
| **Subject:** | RE: Email confirming March 15 meet and confer discussion |

See my comments, below.

**From:** Stanisci, Jared [mailto:Jared.Stanisci@cwt.com]
**Sent:** Wednesday, March 23, 2016 10:40 AM
**To:** Levin, Fredrick
**Cc:** Rome, Michael; Heeringa, Paul; Jonathan Harris; Hoff [PARTNER], Jonathan M.
**Subject:** RE: Email confirming March 15 meet and confer discussion

Fredrick, thanks for your email.

While MBIA disagrees with your opinions regarding the applicability of the protective order from the MBIA/RFC litigation, we think we are at a satisfactory outcome on the stipulation, subject to a couple of edits for consistency reflected in the attached.  Let us know if these are ok with you.  ==These are okay;  I think we have a deal on the submission papers==

With respect to the emails, you are correct that MBIA will not agree to your proposal to simply turn over, without reviewing them, all emails and attachments pulled in by your search terms that were not Potential Mediation Documents or Potentially Privileged Documents (as defined in your email below).  First, as I explained to you on our call, even documents that don't contain the lawyer names MBIA applied are likely to be privileged.  The reason is that during the applicable timeframe (Feb. 2009 through Dec. 2013), MBIA did not have a business relationship with RFC.  Instead, through its attorneys, MBIA was actively litigating with RFC and then participating in ResCap's Chapter 11 proceedings.  Accordingly, email communications between non-lawyer MBIA employees, or MBIA's employees and its attorneys' advisors, regarding RFC during that timeframe are likely to reflect legal advice or analyses being conducted under the control of or at the request of MBIA's attorneys.  *Second*, the non-waiver/clawback agreement you describe would not alleviate MBIA's burden because MBIA would be required to actually review and analyze each of the documents it turned over to Defendants in order to determine which ones were subject to clawback.  Your email conveniently ignores this fact.  Third, as I said, the emails are likely to contain proprietary or commercially sensitive information and MBIA is not willing to produce documents without first conducting a review for that information.

As I said on the call, if Defendants revisit and narrow their search terms in an effort to substantially decrease the universe of potentially responsive documents at issue, MBIA is willing to continue the meet and confer process, although MBIA still maintains that Defendants have failed to articulate how the documents it seeks from MBIA are relevant to the litigation.  Any efforts by Defendants that decrease the universe of documents will naturally decrease the universe of Potentially Privileged Documents, and we can meet and confer regarding a privilege log at that time.  MBIA continues to object to the creation of a log of all documents protected from disclosure by the Mediation Order, for the reasons MBIA has repeatedly stated and need not repeat here.

==On your other two paragraphs, I do not think we are in agreement.  I am, however, not closing the door to considering whether there is a practicable way to narrow the search.==


Best,
Jared

_____
**Jared Stanisci**

**Cadwalader, Wickersham & Taft LLP**

200 Liberty Street
New York, New York  10281
**T**: 212.504.6075 | **F**: 212.504.6666
jared.stanisci@cwt.com  | www.cadwalader.com

CADWALADER

**From:** Levin, Fredrick [mailto:flevin@BuckleySandler.com]
**Sent:** Friday, March 18, 2016 2:04 PM
**To:** Stanisci, Jared
**Cc:** Rome, Michael; Heeringa, Paul
**Subject:** Email confirming March 15 meet and confer discussion

Jared,

This email will confirm our call on March 15, 2016 regarding the draft examiner submission stipulation and the parties' ongoing discussions with respect to the production of emails.

**The Examiner Submission Stipulation**

With respect to the examiner paper stipulation, you had one comment and one question.  The question was why we had eliminated the portion of the stipulation pertaining to the protective order in the ongoing litigation.  We explained that we did that because we felt it was unnecessary, but agreed to add it back in at your request.  Your comment was that MBIA wanted certain references to the protective order in the RFC/MBIA litigation (the "2009 protective order") added back into the stipulation.  With respect to that comment, we went through the stipulation page-by-page and highlighted the portions you asked to have reinserted.  We sent you the highlights to confirm their accuracy.

With respect to the 2009 protective order, we asked you to explain why it applies to the MBIA examiner submission.  You explained that the submissions contained references to confidential information produced in the RFC/MBIA litigation pursuant to the 2009 protective order.  We explained that in light of the fact that RFC consented to the production of the exhibits to the submissions—i.e., the actual documents produced pursuant to the 2009 protective order—we did not see how the submissions themselves could possibly be covered by the 2009 protective order.  We asked what confidential information *other than* the exhibits already produced is referenced in the examiner submissions (if any), and we explained that we expect the answer is none.  You were unable to explain how the submissions themselves could contain confidential information other than the already-disclosed exhibits.  To be clear, we do not agree at all that the examiner submissions are covered by the 2009 protective order.  The examiner submissions did not exist during the pendency of the New York Supreme Court case and were not produced in discovery in that matter.  To the extent that MBIA contends that the 2009 protective order somehow applies because they refer to materials exchanged in New York Supreme Court case, MBIA has produced those materials with RFC's permission.  Please let us know the basis on which you contend that the 2009 protective order applies.

After our call, I sent you a revised version of the examiner submission stipulation that addressed each of your concerns raised on the call.  We have now received your response to our draft, and expect to respond shortly.

**The Emails**

Given the fact that the parties have been meeting-and-conferring on emails for the better part of a year, we will not attempt to recount the entire history here.  As reflected in Paul Heeringa's email of March 4, you told us on March 4 that the search terms we proposed bought back 20 GB of emails, and approximately half of those were either within the mediation order date range (Dec. 26, 2012 through Dec. 11, 2013) ("Potential Mediation Documents") or were

2

"possibly" privileged insofar as an attorney's name added by MBIA to its computerized search appears somewhere in the document ("Potentially Privileged Documents"). In an effort to reduce any purported burden and narrow the issues presented to the Court, we made the following proposal: (1) MBIA would immediately produce the 10 GB of emails of emails/attachments that fall outside of the Potential Mediation Documents or Potentially Privileged Documents; (2) MBIA could withhold the 10GB of Potential Mediation Documents and Potentially Privileged Documents; and (3) the parties would brief the extent to which MBIA is required to log the basis for withholding the 10GB of Potential Mediation Documents and Potentially Privileged Documents.

On the call, you rejected this proposal. The reason was that MBIA "just does not feel comfortable" producing documents without reviewing each one individually. In response, we noted our disagreement with MBIA's concern. The fact that the documents will be produced pursuant to the protective order in the ongoing litigation alleviates any concern that trade secrets or other commercially sensitive information could be released to the public, so confidentiality is not a legitimate concern. Further, privilege should be no concern, since we have agreed that Plaintiffs may withhold Potentially Privileged Documents from the initial production. Under our proposal, every document that MBIA has preliminary identified as Potentially Privileged – based on the mere fact a computer search found that a lawyer's name appears anywhere in the document -- would be withheld initially. Given this very broad definition of Potentially Privileged Documents, it is very unlikely that any genuinely privileged documents would be produced initially. Similarly, we have accepted a very broad definition of Potential Mediation Documents.

And in the event any genuinely privileged documents, or documents actually subject to withholding under the mediation order, happen to have slipped through, we offered a broad non-waiver/claw back agreement. As we explained on the call, it appears MBIA is insisting on doing a *relevance* review—a review that is inconsistent with MBIA's claims that it is merely a disinterested third party.

As we discussed on the call, we are not saying MBIA *must* forego pre-production review. Our position is that if MBIA is insisting on attorney review rather than readily available and commonly used alternatives to reduce the burden of production, any resulting burden is of MBIA's own making.

With respect to the 10GB of Potential Mediation Documents and Potentially Privileged Documents, we addressed in the meet and confer what factual showing – by way of privilege log or some other means – MBIA was willing to make to satisfy its burden to demonstrate that Potential Mediation Documents and Potentially Privileged Documents are, in fact, entitled to protection. Once again, MBIA was unable to offer anything other than its existing position that it should be required to do absolutely nothing. We offered MBIA one last opportunity to offer any middle ground or counter-proposal on the issue. Please advise ASAP.

Thanks,

Fredrick


Fredrick S. Levin
Partner| **BuckleySandler LLP**
100 Wilshire Boulevard, Suite 1000 | Santa Monica, CA 90401
T. 310.424.3984 | C. 213.248.6545 | F. 310.424.3960
flevin@buckleysandler.com | www.buckleysandler.com
www.infobytesblog.com



This email message (including any attachments) is only for use by the intended recipient(s) and is presumed confidential.  It also may be subject to the attorney-client privilege or other confidentiality protections and may constitute inside information.  If you are not an intended recipient, you may not review, copy, distribute, or otherwise use this message or its contents.  If you received this message in error, please notify the sender and delete this message (including any attachments) from your system immediately.  Any unauthorized reading, copying, distribution, or other use of this message or its contents is strictly prohibited and may be unlawful.

NOTE: The information in this email is confidential and may be legally privileged.  If you are not the intended recipient, you must not read, use or disseminate the information; please advise the sender immediately by reply email and delete this message and any attachments without retaining a copy.  Although this email and any attachments are believed to be free of any virus or other defect that may affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Cadwalader, Wickersham & Taft LLP for any loss or damage arising in any way from its use.