**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PNC BANK, N.A., *et al.*,<br><br>                Movant-Defendants,<br><br>v.<br><br>MBIA INSURANCE CORP.,<br><br>                Respondent. | Adv. Proc. No. 16-____ (MG)<br><br>[Related Case No. 13-cv-3451 (SRN/JJK/HB) pending in the U.S. District Court for the District of Minnesota] |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOVANT-DEFENDANTS' MOTION TO COMPEL RESPONDENT TO PRODUCE DOCUMENTS**

QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
Peter E. Calamari
David Elsberg
Isaac Nesser
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000

*Attorneys for Plaintiffs Residential Funding Company, LLC, and ResCap Liquidating Trust*

Plaintiffs Residential Funding Company, LLC ("RFC") and ResCap Liquidating Trust (together with RFC, "Plaintiffs") respectfully submit this Memorandum in Opposition to Movant-Defendants PNC Bank, N.A., *et al.*'s ("Defendants") Motion to Compel Respondent MBIA Insurance Corporation ("MBIA") to Produce Documents (the "Motion").

## INTRODUCTION

Defendants' Motion seeks, in part, to compel MBIA to produce a position paper it submitted to the Examiner in RFC's bankruptcy case (the "Examiner Submission"). The Examiner Submission is subject to a confidentiality agreement between RFC, MBIA, and over a dozen other entities, including the Examiner, which prohibits disclosure of the Examiner Submission or use of it for any purpose outside the Examiner's investigation. Such assurances of confidentiality are vital to the Examiner's role because they encourage full participation in the Examiner's investigation, and they should not be lightly overridden. *See, e.g.*, *Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. of Chicago (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 432 (S.D.N.Y. 1993) (parties to an examiner investigation "have a greater interest in protecting their privacy" than ordinary litigants). Moreover, the Examiner Submission reflects MBIA's subjective analysis of claims ultimately resolved in the Global Settlement. But this Court has held that Plaintiffs' claims require an *objective* assessment of the Global Settlement. *In re Residential Capital LLC*, 536 B.R. 132, 150 (Bankr. S.D.N.Y. 2015) ("[B]oth New York and Minnesota law make clear that an *objective* test for evaluating the reasonableness of the settlement controls."). Accordingly, MBIA's Examiner Submission is wholly unnecessary. Defendants may undertake their own analysis of the underlying documents, which MBIA has produced. They have no need of MBIA's evaluation, and it should remain confidential. Defendants' Motion should be denied.

## BACKGROUND

From June to August 2012, this Court entered a series of orders appointing Arthur J. Gonzales, Esq., as the Examiner in RFC's bankruptcy case, *In re Residential Capital LLC*, No. 12-bk-12020 (MG) (Bankr. S.D.N.Y.), and granting him broad authority to investigate, among other things, claims pending against RFC (collectively, the "Examiner Orders").[1]  Pursuant to the Examiner Orders, the Examiner requested that MBIA and certain other "parties in interest submit a paper setting forth any arguments, analysis, and supporting documents that such parties believe may bear on the Third-Party Claims," to assist the Examiner in the preparation of his Report. Gottlieb Decl. Ex. R at 1.  To encourage these "parties in interest" to state their views and opinions freely, the Examiner entered into a confidentiality agreement with MBIA, RFC, and over a dozen other entities.  *See id.* (the "Agreement").  The Agreement permits the signatories to share their position papers with each other, but expressly provides that the parties "shall hold each Submission Paper as confidential" and "shall not disclose any Submission Paper or its contents to any person or entity who is not a Party or Recipient" under the Agreement, nor shall the Submission Papers be used "for any purpose" beyond the Examiner's investigation. *Id.* ¶ 7. In the event that a party to the Agreement receives a subpoena demanding production of a

---

[1] *See, e.g.*, Memorandum Opinion & Order Granting Berkshire Hathaway's Motion to Appoint an Examiner Under 11 U.S.C. § 11049(c), *id.* (filed June 20, 2012), ECF No. 454; Order Directing the Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code, *id.* (filed June 28, 2012), ECF No. 536; Order Approving Appointment of Arthur J. Gonzales, Esq., as Examiner, *id.* (filed July 3, 2012), ECF No. 674; Order Approving Scope of Investigation of Arthur J. Gonzales, Examiner, *id.* (filed July 27, 2012), ECF No. 925; Order (I) Granting Examiner Authority to Issue Subpoenas for the Production of Documents and Authorizing the Examination of Persons and Entities, (II) Establishing Procedures for Responding to Those Subpoenas, (III) Approving Establishment of a Document Depository and Procedures to Govern Use, and (IV) Approving Protective Order, *id.* (filed Aug. 20, 2012), ECF No. 1223; Uniform Protective Order for Examiner Discovery, *id.* (filed Aug. 20, 2012), ECF No. 1223-1;

3

Submission Paper, that party is required to object and to oppose any motion to compel on the basis of the Agreement. *Id.* ¶ 10. MBIA prepared and submitted to the Examiner a position paper subject to the Agreement (the "Examiner Submission").

On January 20, 2015, Defendants served a third-party subpoena on MBIA in Plaintiffs' consolidated action, styled *In re RFC & ResCap Liquidating Trust Litigation*, No. 13-cv-3451 (SRN/JJK/HB) (D. Minn.). *See* Declaration of Richard E. Gottlieb ("Gottlieb Decl.") Ex. M (the "Subpoena"), *PNC Bank, N.A. v. MBIA Ins. Corp.*, No. 16-mc-0063 (S.D.N.Y.), ECF No. 3-10. Defendants' Subpoena demanded production of 20 broad categories of documents, ranging from MBIA's insurance of RFC's mortgage-backed securities; to all discovery and settlement communications exchanged by the parties in MBIA's lawsuits against RFC and affiliates, including those relating to the Examiner's investigation; to MBIA's alleged sale of ResCap Liquidating Trust Units. *See id.* at 13-16. MBIA produced thousands of documents in response to Defendants' Subpoena, including the documents cited in MBIA's Examiner Submission. *See* Defs.' Br. 5 ("MBIA has produced approximately 14,000 documents, [including] . . . the documents referenced in MBIA's Submission Paper to the Examiner . . . ." (emphasis omitted)).

Despite having already received the documents upon which MBIA's Examiner Submission was based, Defendants now seek to compel MBIA to produce the confidential Examiner Submission itself. The Motion should be denied.

**LEGAL STANDARD**

"Rule 45(d)(3)(A) instructs a district court to quash or modify a subpoena that . . . 'requires disclosure of privileged or other protected matter, if no exception or waiver applies . . . .'" *Hermitage Glob. Partners L.P. v. Prevezon Holdings Ltd.*, No. 14-mc-0318, 2015 WL 728463, at *3 (S.D.N.Y. Feb. 19, 2015); *see* FED. R. BANKR. P. 9016 (incorporating Federal

Rule of Civil Procedure 45). Courts are further authorized to "protect the person subject to or affected by [a] subpoena from unnecessary or unduly harmful disclosures of confidential information." FED. R. CIV. P. 45 (1991 advisory committee notes). Protectable confidentiality interests exist where, as here, "the information itself is private, confidential, privileged, or highly sensitive," regardless of "the form the records take." *Solow v. Conseco, Inc.*, No. 06-cv-5988, 2008 WL 190340 (S.D.N.Y. Jan. 18, 2008).

In addition, a party seeking to enforce compliance with a subpoena "must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Koch v. Pechota*, No. 10-cv-9152, 2013 WL 5996061, at *1 (S.D.N.Y. Nov. 8, 2013); *see, e.g.*, *U.S. Bank, N.A. v. PHL Variable Ins. Co.*, No. 12-cv-6811, 2013 WL 5495542, at *10 (S.D.N.Y. Oct. 3, 2013) (denying motion to compel the production of documents where the movant failed to demonstrate their relevance). Any "relevance or probative value of the documents being sought" must be "weigh[ed] . . . against the [confidentiality] interests" in those documents. *Solow*, 2008 WL 190340, at *4. Courts also consider "the fact that discovery is being sought from a third or non-party," such as MBIA here, to "weigh[] against permitting discovery." *Tucker v. Am. Int'l Grp., Inc.*, 281 F.R.D. 85, 92 (D. Conn. 2012) (emphasis omitted); *accord Koch*, 2013 WL 5996061, at *1.

## ARGUMENT

Defendants' Motion should be denied for two independent, but related, reasons. *First*, the confidentiality of MBIA's Examiner Submission should be maintained, both to protect the expectations of the parties to the Confidentiality Agreement with the Examiner, and to avoid discouraging future parties from participating fully and openly in the examination process. *Second*, MBIA's Examiner Submission reflects its subjective views of claims asserted in RFC's

5

bankruptcy case, and is not required to defend against Plaintiffs' present claims, which this Court has held require objectively assessing the reasonableness of the underlying settlements.

## I.    THE COURT SHOULD PROTECT THE PARTIES' LEGITIMATE EXPECTATIONS OF CONFIDENTIALITY IN THE EXAMINER PROCESS

The heightened confidentiality concerns inherent in a bankruptcy examiner's investigation are well recognized. Because "Bankruptcy Rule 2004 . . . gives the Examiner scope to investigate which is broader than that of civil discovery under Rule 26," subjects of the investigation, and particularly third parties, "have a greater interest in protecting their privacy." *Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. of Chicago (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 432 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994). One court "compared the function of an examiner to a 'civil grand jury,' and found the "prospect of an Examiner being required to indiscriminately produce investigative materials obtained through promises of confidentiality" to "raise[] grave concerns touching both the integrity of the Bankruptcy Court's processes, as well as the integrity of the statutory position of the Examiner." *Id.* (quoting *In re Baldwin United Corp.*, 46 B.R. 314, 316-17 (S.D. Ohio 1985)).

Accordingly, when the Examiner, pursuant to the authority vested in him by the Examiner Orders, solicited papers from MBIA and other interested parties "setting forth any arguments, analysis, and supporting documents that such parties believe may bear on" claims asserted in RFC's bankruptcy, RFC, MBIA, the Examiner, and over a dozen other parties entered into the Agreement to ensure the confidentiality of those submissions. Under the Agreement, each such paper, including MBIA's Examiner Submission, "shall be and shall remain confidential," and "shall not be disclosed to any other person." Agreement ¶ 1; *accord id.* ¶ 7 ("Each Party and Recipient shall hold each Submission Paper as confidential, [and] shall not disclose any Submission Paper or its contents to any person or entity who is not a Party or

6

Recipient."). In the event any party to the Agreement is subpoenaed for any of the submitted papers, that party is required to object and to oppose any motion to compel on the basis of the Agreement; and in the event of any inadvertent or unauthorized disclosure, the party is required to use its best efforts to claw back the disclosed submission paper. *Id.* ¶¶ 10-11.[2] All parties to the Agreement further recognized that money damages were an insufficient remedy for any breach of the Agreement, and the aggrieved party would be "entitled to seek specific performance and injunctive or other equitable relief." *Id.* ¶ 12.

In light of the greater need for confidentiality in connection with the Examiner's broad investigation under the Examiner Orders, this commitment between the parties to the Agreement should be honored. Just as upholding parties' expectations of confidentiality under a mediation order "protect[s] the integrity of alternative dispute resolution generally," *In re Residential Capital LLC*, 536 B.R. 132, 150 (Bankr. S.D.N.Y. 2015), enforcing the Agreement here protects "the integrity of the Bankruptcy Court's processes" and "the integrity of the statutory position of the Examiner." *Ionosphere Clubs*, 156 B.R. at 432. Indeed, "no-one would bother to sign on to a confidentiality stipulation if it had no lasting effect." *Id.* at 431.[3] To adopt Defendants'

---

[2] As Defendants note, Financial Guaranty Insurance Company ("FGIC"), another party to the Agreement, produced its submission paper in response to Defendants' subpoena. Defs.' Br. 6 n.6. Plaintiffs have requested that FGIC abide by its obligation under the Agreement to claw back the document.

[3] *Cf. Minpeca S.A. v. Conticommodity Servs., Inc.*, 832 F.2d 739, 743 (2d Cir. 1987) ("[T]he reliance on the protective order by nonparties who have been deposed or produced documents . . . supports continued enforcement of the order."); *Palmieri v. State of New York*, 779 F.2d 861, 864-65 (2d Cir. 1985) ("[T]he very papers and information that the Attorney General seeks apparently would not even have existed but for the sealing orders and the magistrate's personal assurances of confidentiality . . . ."); *Residential Capital*, 536 B.R. at 150 ("Were courts to cavalierly set aside confidentiality restrictions on disclosure of communications made in the context of mediation, parties might be less frank and forthcoming during the mediation process or might even limit their use of mediation altogether." (quoting *Savage & Assocs., P.C. v. K & L Gates LLP (In re Teligent, Inc.)*, 640 F.3d 53, 59-60 (2d Cir. 2011))).

position would unilaterally eviscerate the parties' legitimate expectations of confidentiality and weaken the examiner process, which performs a vital role in this Court.

Defendants contend that the Agreement does not prohibit MBIA from producing its own Examiner Submission, on the basis that "the relevant paragraph allowing a party to object to a subpoena . . . is explicitly addressed to subpoenas for *another* party's Submission Paper." Defs.' Br. 6-7. Not so. The relevant paragraph—which *requires* a party to object to a subpoena—contains no such limitation:

> 10. Responses to Subpoenas or Other Process. If any Party or Recipient (a) is subpoenaed in another action, (b) is served with a demand in another action to which it is a party, or (c) is served with any other legal process by a person not a party to this litigation, and is requested to produce or otherwise disclose material covered by this Agreement, the party subpoenaed or served as referred to in this paragraph shall object to production of such information and shall give prompt written notice to each Party or Additional Party whose Submission Paper was subpoenaed or otherwise demanded. If the person seeking access to such information takes action against the party to this Agreement to enforce such a subpoena, demand, or other legal process, that party shall respond by setting forth the existence of this Agreement. Nothing in this Agreement requires the Parties to this Agreement or any Recipient to challenge or appeal any order requiring production of Submission Papers covered by this Agreement.

Agreement ¶ 10.

Defendants construe this provision to require a party to notify itself of a subpoena served upon it for its own submission paper. Because that result is "nonsensical," Defendants argue, the Agreement does not apply to a party's production of its own submission paper. *See* Defs.' Br. 7. But Defendants' conclusion contradicts the plain language of core provisions of the Agreement, which expressly state—again without limitation—that "[e]ach Party and Recipient shall hold *each* Submission Paper as confidential" and "shall not disclose *any* Submission Paper or its contents to any person or entity who is not a Party or Recipient." *Id.* ¶ 7 (emphasis added); *accord* ¶ 1. Therefore, the more natural reading of the Agreement as a whole is that it applies to

8

each and every submission paper and simply does not require the pointless exercise of self-notice. *See, e.g.*, *Consedine v. Portville Cent. Sch. Dist.*, 907 N.E.2d 684, 689 (N.Y. 2009) ("A contract should be read as a whole to ensure that undue emphasis is not placed upon particular words and phrases."). The Court should uphold the parties' legitimate expectations of confidentiality and the integrity of the examiner process, and deny Defendants' Motion.

## II.    MBIA'S EXAMINER SUBMISSION IS UNNECESSARY

In addition to being confidential, MBIA's Examiner Submission is unnecessary to assessing Plaintiffs' claims, and does not warrant thwarting the expectations of confidentiality embodied in the Agreement. This Court has held that "both New York and Minnesota law," which govern Plaintiffs' indemnity claims, "make clear that an *objective* test for evaluating the reasonableness of the settlement controls." *Residential Capital*, 536 B.R. at 148 (emphasis added). The Court therefore found that even if "contemporaneous communications made in the course of settlement may be relevant to the Plaintiff's indemnity claims," *id.*, they were in no way necessary to resolving the claims and did not warrant modifying the Mediation Order to permit their discovery, particularly since Defendants can rely on a plethora of other documents, including "publicly available expert reports." *Id.* at 150.

The same is true here. Because the Examiner Submission is an advocacy paper expressing MBIA's *subjective* view of the claims settled in the Global Settlement for which Plaintiffs seek indemnification, it is not necessary to a defense against Plaintiffs' claims. *Cf. id.* at 148 ("Communications bearing on parties' subjective beliefs regarding the reasonableness of the Global Settlement are not necessary to determine the reasonableness of the settlement under an objective standard."). In addition to the final Examiner Report, various briefing and other filings from RFC's bankruptcy, and millions of pages of discovery regarding Plaintiffs' claims, Defendants have received the very documents on which MBIA's Examiner Submission was

9

based. *See* Defs.' Br. 5 ("MBIA has produced . . . the documents referenced in MBIA's Submission Paper to the Examiner . . . . (emphasis omitted)). Defendants are free to analyze those documents, including in the light of the publicly available Examiner Report, and come to their own conclusions; MBIA's perspective is not required. *Cf. id.* ("[D]enying the Defendants access to mediation communications does not prejudice their ability to challenge the reasonableness of the Global Settlement; they remain free to challenge the merits of the claims subject to the Global Settlement and the defenses available at the time . . . ."). Accordingly, there is no reason to eviscerate the Agreement's promise of confidentiality in connection with the Examiner's investigation. Defendants' Motion should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant-Movants' Motion to Compel Respondent to Produce Documents.

Dated: March 25, 2016

QUINN EMANUEL URQUHART
 & SULLIVAN, LLP

By:   */s/ Isaac Nesser*
    Peter E. Calamari
    David Elsberg
    Isaac Nesser
    51 Madison Avenue, 22nd Floor
    New York, NY 10010
    Telephone: (212) 849-7000
    Facsimile: (212) 849-7100
    petercalamari@quinnemanuel.com
    davidelsberg@quinnemanuel.com
    isaacnesser@quinnemanuel.com

*Attorneys for Plaintiffs Residential Funding Company, LLC, and ResCap Liquidating Trust*