## Exhibit C

Identifier: ███097    Doc Type:MTGR

12-12020-mg    Doc 9796-7    Filed 04/01/16    Entered 04/01/16 12:58:32    Decl.
Exhibit C    Pg 2 of 8

7072129

**Fidelity National Title**

Ч

2006l0240527    7    PGS
l0/24/2006 l:36pm $39.00
PIERCE COUNTY, WASHINGTON

**Return to:** UNITED PACIFIC MORTGAGE
ATTENTION:
21600 OXNARD STREET, #1900
WOODLAND HILLS, CALIFORNIA 91367

DSC   11093057

Property Tax Parcel Number: 758600-014-0
Abbreviated legal: LOT 14, shorecrest 1ˢᵗ Addition
Full legal pg. 2     [Space Above This Line For Recording Data]
Loan No.: 1710042421

# DEED OF TRUST

MIN: ████████████4219

## DEFINITIONS

(A)   "**Security Instrument**" means this document, which is dated OCTOBER 13, 2006
together with all Riders to this document.
(B)   "**Borrower**" is MARY E. PERKINS WHITE, AS HER SOLE AND SEPARATE
PROPERTY

Borrower is the trustor under this Security Instrument.
(C)   "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security
Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number
of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D)   "**Lender**" is UNITED PACIFIC MORTGAGE

Lender is A GENERAL PARTNERSHIP           , organized and existing under the laws of the State of
CALIFORNIA           . Lender's address is 21600 OXNARD STREET, #1900,
WOODLAND HILLS, CALIFORNIA 91367

(E)   "**Trustee**" is FIDELITY NATIONAL TITLE
(F)   "**Secured Indebtedness**" means:
    (1) The debt, interest, finance charges, and other fees and charges incurred under the terms of the Home
    Equity Line of Credit Agreement and Disclosure Statement ("HELOC") dated
        OCTOBER 13, 2006        : the HELOC matures on OCTOBER 13, 2021
    (2) Any advance made to Borrower or obligation incurred by Borrower pursuant to any contract or evidence
    of indebtedness benefitting Lender, regardless of whether such advance has been made or such obligation
    has been incurred in whole or in part as of the date of this Security Instrument.
    (3) Any sum paid and expense incurred by Lender under the terms of this Security Instrument.
(G)   "**Credit Limit**" means the maximum aggregate amount of principal that may be secured by this Security
Instrument at any one time. The Credit Limit is $200,000.00           . Except to the extent
prohibited by Applicable Law, the Credit Limit does not apply to interest, finance charges, and other fees and charges
validly incurred by Borrower under this Security Instrument. The Credit Limit also does not apply to advances made
under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained
in this Security Instrument.
(H)   "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."
(I)   "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders
are to be executed by Borrower [check box as applicable]:

☐ Condominium Rider      ☐ Planned Unit Development Rider
☐ 1-4 Family Rider       ☐ Other(s) [specify]

Borrower Initials: _MW_ _____ _____ _____ _____
**WASHINGTON HELOC Deed of Trust**
**Residential Funding Corporation**      Form Filled Using **DocMagic®**    1/04    (Page 1 of 7 Pages)
© 2005 Middleberg, Riddle & Gianna      800-649-1362  www.docmagic.com           **WALOCRMS**

39-

Identifier: 7097    Doc Type:MTGR

12-12020-mg    Doc 9796-7    Filed 04/01/16    Entered 04/01/16 12:58:32    Decl.
Exhibit C    Pg 3 of 8

Loan No.: 2421

(J)    "Applicable Law" means all controlling applicable federal, state, and local statutes, regulations, ordinances, and administrative rules and orders (that have the effect of law) as well as applicable final, non-appealable judicial opinions.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Secured Indebtedness, and all renewals, extensions, and modifications of the Secured Indebtedness; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the HELOC. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of    PIERCE                    :

LOT 14, SHORECREST FIRST ADDITION, ACCORDING TO PLAT RECORDED IN BOOK 33 OF PLATS AT PAGE 1, IN PIERCE COUNTY WASHINGTON. SITUATE IN THE COUNTY OF PIERCE, STATE OF WASHINGTON.
A.P.N.: 758600-014-0

which currently has the address of                7918 RAY NASH DRIVE NW                    .
                                                    [Street]

GIG HARBOR                , WASHINGTON            98335                ("Property Address"):
        [City]                                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions also shall be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and shall defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

## ADVANCES

Any advances made under the HELOC may be made, repaid, and remade from time to time, subject to the limitations of the HELOC. Regardless of whether the Secured Indebtedness is reduced to a zero balance, this Security Instrument shall remain in effect until released or reconveyed.

Any advances made in excess of the Credit Limit shall not be secured by this Security Instrument if prohibited by Applicable Law or, if not prohibited by Applicable Law, unless (i) Lender agrees to increase the Credit Limit and complies with any subsequent disclosure, rescission, and other requirements under Applicable Law and (ii) Borrower agrees to execute any documents Lender requires to evidence and secure the increase in the Credit Limit. Lender shall not be obligated in any way under this Security Instrument to increase the Credit Limit or to make additional or future loans or advances in any amount.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower Initials: _MW_

**WASHINGTON HELOC Deed of Trust**
**Residential Funding Corporation**
© 2005 Middleberg, Riddle & Gianna

Form Filled Using  *DocMagic®*
800-649-1362    www.docmagic.com

1/04    *(Page 2 of 7 Pages)*
WALOCRMS

Identifier: [redacted]7097    Doc Type:MTGR

12-12020-mg    Doc 9796-7    Filed 04/01/16    Entered 04/01/16 12:58:32    Decl.
Exhibit C    Pg 4 of 8

Loan No.: [redacted]2421

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Secured Indebtedness; Performance of Obligations.** Borrower shall pay when due the Secured Indebtedness and shall perform all of Borrower's obligations under the HELOC and this Security Instrument.

2. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property that can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and the dues, fees, and assessments of a condominium association, homeowners association, or similar organization, if any.

Borrower shall make all payments and comply with all covenants as and when required by any mortgage, deed of trust, security agreement, or other lien document evidencing a lien that is prior to this Security Instrument and that is approved by Lender. Borrower shall not modify, extend, or increase the amount secured by such prior lien document without Lender's written consent.

Upon demand Borrower shall furnish to Lender satisfactory evidence of payment of such taxes, assessments, charges, fines, impositions, and prior liens.

Borrower shall promptly discharge any lien not approved by Lender that has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings that in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien that can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 2.

3. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against fire, hazards included within the term "extended coverage," flood, and any other hazards including without limitation earthquakes, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences may change during the term of the HELOC. Borrower may obtain such insurance from the insurance carrier of Borrower's choice, subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower. Borrower's equity in the Property, or the contents of the Property, against any risk, hazard, or liability, and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 3 shall be Secured Indebtedness and shall be payable according to the terms of the HELOC.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the Secured Indebtedness, whether or not then due, with the excess, if any, paid to Borrower.

Borrower Initials: _AW_  _____  _____  _____  _____

Identifier: ⬛️097          Doc Type:MTGR

12-12020-mg     Doc 9796-7     Filed 04/01/16     Entered 04/01/16 12:58:32     Decl.
Exhibit C     Pg 5 of 8

Loan No.: ⬛️2421

**4. Preservation, Maintenance, and Protection of the Property; Occupancy and Use of the Property; and Inspection.** Borrower shall not destroy, damage, or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value, due to its condition, such as would adversely affect Lender's security in the Property. Unless it is determined pursuant to Section 3 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower shall not be relieved of Borrower's obligation for the completion of such repair or restoration.

Borrower shall not materially change the present occupancy and use of the Property without Lender's written consent. Borrower shall not use the Property in an illegal manner or for any illegal use such as would subject the Property to seizure.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**5. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien that may attain priority over this Security Instrument, or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions may include, but are not limited to: (a) paying any sums secured by a lien that has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees, to the extent not prohibited by Applicable Law, to protect its interest in the Property and/or rights under this Security Instrument, including Lender's secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 5, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 5.

Any amounts disbursed by Lender under this Section 5 shall be Secured Indebtedness and shall be payable according to the terms of the HELOC.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing. If the Property is located in a condominium project or a planned unit development, Borrower shall perform all of Borrower's obligations under the covenants, by-laws, or regulations of the condominium project or planned unit development.

**6. Condemnation.** Borrower shall give Lender prompt notice of any condemnation or eminent domain proceeding or action pending or threatened against the Property and authorizes Lender to intervene in Borrower's name in any such proceeding or action. Borrower assigns to Lender any money awarded to Borrower pursuant to such proceeding or action, and such money shall be applied to the Secured Indebtedness, whether or not then due, with the excess, if any, paid to Borrower.

**7. Loan Charges.** If the HELOC is subject to a law that sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the HELOC exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower that exceeded permitted limits shall be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the HELOC or by making a direct payment to Borrower. If a refund reduces principal, the reduction shall be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the HELOC). Borrower's acceptance of any such refund made by direct payment to Borrower shall constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**8. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement shall satisfy the corresponding requirement under this Security Instrument.

Borrower Initials:  _____  _____  _____  _____  _____

**WASHINGTON HELOC Deed of Trust**
**Residential Funding Corporation**
© 2005 Middleberg, Riddle & Gianna

Form Filled Using *DocMagic®*
800-649-1362     www.docmagic.com

1/04     *(Page 4 of 7 Pages)*
**WALOCRMS**

Identifier: 7097    Doc Type:MTGR

12-12020-mg    Doc 9796-7    Filed 04/01/16    Entered 04/01/16 12:58:32    Decl.
Exhibit C    Pg 6 of 8

Loan No.:        2421

9. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. In the event that any provision or clause of this Security Instrument or the HELOC conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the HELOC that can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

10. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the HELOC (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant, and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear, or make any accommodations with regard to the terms of this Security Instrument or the HELOC without the co-signer's consent.

Subject to the provisions of Section 11, any successor to the interests of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender.

11. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 11, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract, or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of the Secured Indebtedness. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 8 within which Borrower must pay the Secured Indebtedness in full. If Borrower fails to pay the Secured Indebtedness in full prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

12. **Hazardous Substances.** As used in this Section 12: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety, or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, or allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) that creates an Environmental Condition, or (c) that, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower promptly shall give Lender written notice of (a) any investigation, claim, demand, lawsuit, or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release, or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use, or release of a Hazardous Substance that adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority or any private party that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

13. **Escrow for Taxes and Insurance.** Unless otherwise provided in a separate agreement, Borrower shall not be required to pay in escrow to Lender funds for taxes, insurance, and other assessments.

14. **Default.** Borrower shall be in default under the HELOC and this Security Instrument if without limitation any of the following occur: (a) Borrower engaged or engages in fraud or material misrepresentation in connection

Borrower Initials: _____ _____ _____ _____ _____

**WASHINGTON HELOC Deed of Trust**
**Residential Funding Corporation**
© 2005 Middleberg, Riddle & Gianna

Form Filled Using *DocMagic®*
800-649-1362    www.docmagic.com

1/04    *(Page 5 of 7 Pages)*
**WALOCRMS**

Identifier: ███7097    Doc Type:MTGR

12-12020-mg    Doc 9796-7    Filed 04/01/16    Entered 04/01/16 12:58:32    Decl.
Exhibit C    Pg 7 of 8

Loan No.: ███2421

with any aspect of the HELOC or this Security Instrument, including without limitation Borrower's application for the HELOC and Borrower's occupancy of the Property; (b) Borrower does not meet repayment terms under the HELOC; (c) Borrower's action or inaction adversely affects the collateral for the HELOC (including without limitation the Property) or Lender's rights in the collateral including without limitation: (i) Borrower's failure to maintain the insurance required under Section 3 of this Security Instrument; (ii) Borrower's transfer of the Property as provided in Section 11 of this Security Instrument; (iii) Borrower's failure to maintain the Property or use of the Property in a destructive manner; (iv) Borrower's commission of waste of the Property; (v) Borrower's failure to pay taxes due on the Property or Borrower's failure to act such that a lien superior to Lender's lien is filed against the Property; (vi) the death of all Borrowers; (vii) the Property is taken by condemnation or eminent domain; (viii) a judgment is filed against Borrower that subjects the Property to action that adversely affects Lender's interest in the Property; (ix) the creation of a lien on the Property without Lender's permission; or (x) a superior lien holder forecloses on the Property such that Lender's interest in the Property is adversely affected.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**15. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 11 unless Applicable Law provides otherwise). The notice shall comply with Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of the Secured Indebtedness without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 15, including without limitation reasonable attorneys' fees, to the extent not prohibited by Applicable Law, and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including without limitation reasonable Trustee's and attorneys' fees to the extent not prohibited by Applicable Law; (b) to the Secured Indebtedness; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.

If Borrower is in default, Lender may elect not to accelerate the Secured Indebtedness but instead may refuse to make additional advances or reduce the Credit Limit. Even if Lender elects not to exercise any remedy under this Security Instrument, Lender does not forfeit or waive Lender's right to do so at a later time or to do so if Borrower is in default again.

**16. Reconveyance.** Upon payment in full of the Secured Indebtedness, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all agreements and notes evidencing the Secured Indebtedness to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance.

**17. Substitute Trustee.** In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power, and duties conferred upon Trustee herein and by Applicable Law.

**18. Use of Property.** The Property is not used principally for agricultural purposes.

**19. Attorneys' Fees.** Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees, to the extent not prohibited by Applicable Law, incurred by Lender in any bankruptcy proceeding or on appeal.

> ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.

Borrower Initials:  _____  _____  _____  _____  _____

**WASHINGTON HELOC Deed of Trust**
**Residential Funding Corporation**
© 2005 Middleberg, Riddle & Gianna

Form Filled Using *DocMagic®*
800-649-1362    www.docmagic.com

1/04    *(Page 6 of 7 Pages)*
WALOCRMS

Identifier: 7097    Doc Type:MTGR

12-12020-mg    Doc 9796-7    Filed 04/01/16    Entered 04/01/16 12:58:32    Decl.
Exhibit C    Pg 8 of 8

Loan No.: 2421

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it. Borrower also acknowledges receipt of a copy of this Security Instrument.

_____ (Seal)        _____ (Seal)
MARY E. PERKINS WHITE    -Borrower                             -Borrower

_____ (Seal)        _____ (Seal)
                        -Borrower                             -Borrower

_____ (Seal)        _____ (Seal)
                        -Borrower                             -Borrower

——————————————————[Space Below This Line For Acknowledgment] ——————————————————

State of WASHINGTON              §
County of PIERCE                 §

On this day personally appeared before me
MARY E. PERKINS WHITE

to me known to be the person(s) described in and who executed the within and foregoing instrument, and acknowledged that he/she/they executed the same as her/his/their free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this 17th day of October 2006.



_____
Notary Public in and for the State of WA
residing at Olalla

Joan Barry
                        (Printed Name)

My commission expires: 7-7-10

**WASHINGTON HELOC Deed of Trust**
**Residential Funding Corporation**
© 2005 Middleberg, Riddle & Gianna

Form Filled Using *DocMagic®*        1/04    *(Page 7 of 7 Pages)*
800-649-1362    www.docmagic.com                    **WALOCRMS**