**Hearing Date: April 7, 2016**
**Reply Deadline: April 4, 2016**

Richard E. Gottlieb
**BUCKLEYSANDLER LLP**
1133 Avenue of the Americas, Suite 3100
New York, NY 10036
Telephone: 212.600.2400
Fax: 212.600.2405

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| Residential Capital, LLC, *et al.*, | Case No. 12-12020-mg |
| *Debtors*. | Jointly Administered<br>Case No. 16-mc-00063-P1 |
| PNC Bank, National Association, et al.,<br>                                        *Movants*<br>                    v.<br>MBIA Insurance Corporation,<br>                                        *Respondent*. | Related Case No. 13-cv-3451<br>(SRN/JJK/HB) in United States District<br>Court for the District of Minnesota |

## REPLY IN SUPPORT OF MOVANTS' MOTION TO
## COMPLIANCE WITH THIRD PARTY SUBPOENA
## COMPEL COMPLIANCE WITH THIRD PARTY SUBPOENA
## <u>ISSUED TO MBIA INSURANCE CORP.</u>

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

ARGUMENT .............................................................................................................3

    I.    Plaintiffs' Objections Should Be Overruled Because the Examiner
        Submissions Are Relevant and Not Privileged from Discovery.............................3

        A.    The Confidentiality Agreement Does Not Shield the MBIA
            Examiner Submissions from Discovery......................................................3

        B.    Plaintiffs' Perception of What Movants Require Is Not the Test of
            Discoverability Under the Federal Rules...................................................5

    II.    MBIA's Opposition to Production of the Emails Is Meritless Because
        Movants Seek Relevant, Non-Cumulative, Non-Privileged Emails......................5

        A.    The Emails Sought by Movants Are Relevant for Purposes of
            Discovery. ...................................................................................................6

        B.    Movant's Request for Limited Email Discovery Is Not
            Unreasonably Cumulative of Prior Document Discovery. .........................6

        C.    Movants Do Not Seek Emails That Are "Overwhelmingly
            Privileged." ...............................................................................................8

    III.    Cost-Shifting Is Not Warranted Where MBIA Insists on Document-By-
        Document Review and Has Refused to Consider More Economical
        Alternatives. .......................................................................................................10

        A.    This Court Should Decline Cost-Shifting for Privilege Review
            Because MBIA Has Refused to Consider Recognized Alternatives
            to Costly Document-by-Document Review..............................................10

        B.    Should This Court Exercise Its Discretion to Shift Costs, Movants
            Should Not Be Required to Bear the Entirety of Costs or to Pay
            MBIA's Proposed Hourly Rates for Individualized Attorney
            Review. .....................................................................................................14

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adair v. EQT Prod. Co.*,
    No. 1:10CV00037, 2012 WL 2526982 (W.D. Va. June 29, 2012) ...................................12, 16

*Almazo v. M.A. Angeliades, Inc.*,
    No. 11 CV 1717(MGC), 2015 WL 6965116 (S.D.N.Y. Nov. 10, 2015)..................................5

*American Broadcasting Companies, Inc. v. Aereo Inc.*,
    No. 12 CV 1540, 2013 WL 139560 (S.D.N.Y. Jan. 11, 2013) ...............................................13

*Bell Inc. v. GE Lighting*,
    LLC, No. 6:14-CV-00012, 2014 WL 1630754 (W.D. Va. Apr. 23, 2014) ............................12

*Chevron Corp. v. Donziger*,
    11 Civ. 0691(LAK), 2013 WL 1087236 (S.D.N.Y. Mar. 13, 2013) ......................3, 15, 16, 17

*Cornell v. Columbus McKinnon Corp.*,
    No. 13-cv-02188-SI, 2015 WL 4747260 (N.D. Cal. Aug. 11, 2015) ....................................15

*DeGeer v. Gillis*,
    755 F. Supp. 2d 909 (N.D. Ill. 2010) ...................................................................................10

*Dow Chem. Co. v. Reinhard*,
    No. M8-85 (HB), 2008 WL 1968302 (S.D.N.Y. Apr. 29, 2008)...........................................15

*EEOC v. Freeman*,
    No. RWT-09-2573, 2012 WL 2370122 (D. Md. June 21, 2012) .............................................7

*In re First Am. Corp.*,
    184 F.R.D. 234 (S.D.N.Y. 1998) ..........................................................................................15

*In re Ionosphere Clubs, Inc.*,
    156 B.R. 414 (S.D.N.Y. 1993)................................................................................................4

*Israel v. Carpenter*,
    No. 95CIV2703DABJCF, 2002 WL 1424594 (S.D.N.Y. June 28, 2002)..............................17

*J.P. Morgan Chase Bank v. Winnick*,
    No. 03 Civ. 8535(GEL), 2006 WL 3164241 (S.D.N.Y. Nov. 2, 2006)..................................15

*Minpeco S.A. v. Conticommodity Servs., Inc.*,
    832 F.2d 739 (2d Cir. 1987)....................................................................................................4

*Moore v. Publicis Groupe*,
  287 F.R.D. 182 (S.D.N.Y. 2012) ........................................................................16

*Palmieri v. State of New York*,
  779 F.2d 861 (2d Cir. 1985).................................................................................4

*Prescient Acquisition Grp., Inc. v. MJ Publ'g Trust*,
  No. 05 Civ.6298(PKC), 2006 WL 2996645 (S.D.N.Y. Oct. 13, 2006)...........10, 17

*In re Residential Capital LLC*,
  536 B.R. 132 (Bankr. S.D.N.Y. 2015)....................................................................4

*US Bank National Association v. PHL Variable National Insurance Company*,
  12 Civ. 6811 (CM), 2012 WL 5395249 (S.D.N.Y Nov. 5, 2012) ..................2, 11, 13

*Wells Fargo Bank, N.A. v. Konover*,
  259 F.R.D. 206 (D. Conn. 2009)..........................................................................10

*In re World Trade Ctr. Disaster Site Litig.*,
  No. 21 MC 100(AKH), 2010 WL 3582921 (S.D.N.Y. Sept. 14, 2010) ............10, 14

*Zubulake v. UBS Warburg LLC*,
  216 F.R.D. 280 (S.D.N.Y. 2003) .........................................................................12

**Other Authorities**

Fed. R Civ. P. 26(b)(2)(C) .......................................................................................6

Fed R. Civ. P. 45..............................................................................................10, 11, 15

Fed. R. Evid. Rule 502............................................................................................12

Fed. R. Evid. 502(d)......................................................................................2, 12, 16

Local Rule 26.2.................................................................................................13, 16

Rule 26 ....................................................................................................................6

Rule 502 ................................................................................................................13

## INTRODUCTION

In their Motion to Compel Compliance with Third Party Subpoena Issued to MBIA Insurance Corp. (the "Motion"), Movants established that this Court should enforce the subpoena with respect to (i) MBIA's submissions to the bankruptcy examiner ("Examiner Submissions"), and (ii) certain non-privileged emails.  Among other things, Movants pointed to black-letter law establishing that, in the absence of a protective order entered by this Court, the confidentiality agreement entered into by the parties to the ResCap bankruptcy ("Confidentiality Agreement") is insufficient to shield MBIA's Examiner Submissions from production in response to Movants' Subpoena.  (Motion at 7.)  At the March 23, 2016 Preliminary Conference, the Court noted the absence of any authority supporting Plaintiffs'[1] argument – that the Examiner Submissions are entitled to special protection or privilege – and invited Plaintiffs to submit such authority, if it exists, in their opposition brief.  (Tr. at 27:18-20, 32:24-33:5.)[2]  Despite the Court's invitation, Plaintiffs' Opposition Brief ("Pltfs. Opp.") fails to cite any such authority; the case cited is inapposite because it involved enforcement of a protective *order* that does not exist here.

Plaintiffs' only other argument – that production of the Examiner Submissions should be denied because they are "unnecessary" to Movants' claims and defenses in the underlying cases – persists in an incorrect test of discoverability that this Court rejected at the Preliminary Conference.  (Tr. at 30:5-12.)  Accordingly, the Court should authorize production of the MBIA Examiner Submissions.

---

[1] Residential Funding Company ("RFC") and the ResCap Liquidating Trust ("ResCap") are collectively referred to as "Plaintiffs" herein.  They are Plaintiffs in litigation proceeding in the District of Minnesota and adversary proceedings before this Court, but they are not parties to this miscellaneous action.  The Subpoena at issue is not directed to Plaintiffs, nor is the Motion.

[2] A copy of the Preliminary Conference transcript ("Tr.") is attached as Exhibit A to the Declaration of Richard E. Gottlieb ("Gottlieb Decl.") filed contemporaneously herewith.

With respect to discovery of the emails from MBIA, the Preliminary Conference focused primarily on whether, and to what extent, cost-shifting should be permitted.  (Tr. at 12:18-13:13.) In its opposition brief ("MBIA Opp."), MBIA argues that Movants should be required to bear $400,000 in estimated costs.  This Court should reject MBIA's position for several reasons:

*First*, although the Court has discretion to order cost-shifting, cost-shifting should not be ordered for MBIA's privilege review.  *See US Bank National Association v. PHL Variable National Insurance Company*, 12 Civ. 6811 (CM)(JCF), 2012 WL 5395249, at *4 (S.D.N.Y Nov. 5, 2012) (quoting *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309 (S.D.N.Y. 2003)) ("[N]on-parties shall bear their own costs of reviewing the documents for privilege.  Generally, it is not appropriate to shift such costs because 'the producing party has the exclusive ability to control the cost of reviewing the documents.'").  MBIA insists on engaging in document-by-document privilege review and refused Movants' offer of a reasonable, well-recognized, alternative under Fed. R. Evid. 502(d) that would protect its interests at a much lower cost.  In such situations, cost-shifting should be denied.  *Id.* (denying cost-shifting when a clawback order pursuant to Fed. R. Evid. 502(d) gave the non-parties "the option of conducting a more economical analysis while minimizing the risk of waiver").

*Second*, to the extent the Court orders cost-shifting at all, it should shift only a small portion of the cost to Movants because a substantial portion of the costs are attributable to MBIA's refusal to consider less costly alternatives.  This is especially true here, where, as the Court noted, MBIA is "not a stranger" to the underlying litigation "by any means."  (Tr. at 34:14.)  Indeed, among other things, MBIA benefitted significantly from the bankruptcy settlement ("Global Settlement"), which specifically contemplated and drove into existence the litigation that gave rise to the Subpoena.

2

*Third,* assuming that document-by-document privilege review is necessary – as opposed to any one of the alternatives presented by Movants or in the very cases that MBIA cites (*see* MBIA Opp. at 17) – the *amount* of any expense to be shifted must still be reasonable. Here, however, MBIA insists that only attorneys from Cadwalader, Wickersham & Taft LLP (Cadwalader) can conduct the review at hourly rates ranging from $400 to $600 per hour. But MBIA has presented "no legitimate reason why . . . far less costly contract attorneys could not do all or most of the review, as is common in the legal community today." *Chevron Corp. v. Donziger*, 11 Civ. 0691(LAK), 2013 WL 1087236, at *32 (S.D.N.Y. Mar. 13, 2013). Cost-shifting, if any, should be limited here to rates that would be paid to contract attorneys, which, in New York City, would be approximately $50-$53 per hour. (*See* Gottlieb Decl., Ex. B.)

## ARGUMENT

I.    **Plaintiffs' Objections Should Be Overruled Because the Examiner Submissions Are Relevant and Not Privileged from Discovery.**

At the Preliminary Conference, MBIA clarified that it "is not asserting an objection of its own to the production of the [Examiner] [S]ubmission[s]." (Tr. at 19:9-13.) This leaves only Plaintiffs' two objections that: (1) the Confidentiality Agreement provides a privilege from discovery, and (2) the MBIA's Examiner Submissions are irrelevant, *i.e.*, "not required to defend against Plaintiffs' present claims." (Pltfs. Opp. at 5-6.) There is no merit to either objection.

A.    **The Confidentiality Agreement Does Not Shield the MBIA Examiner Submissions from Discovery.**

It is black-letter law that a mere confidentiality agreement, not entered as a court order, cannot shield MBIA's Examiner Submissions from discovery. (Motion at 7 (citing cases).) Indeed, at the Preliminary Conference, this Court recognized that Plaintiffs failed to "identify any authority that would support a privilege or protection from disclosure for information

3

provided to an examiner." (Tr. at 27:5-7.) And Plaintiffs conceded that they were "not aware of any authority" on that specific issue. (*Id.* at 27:18-20.) Plaintiffs further conceded that "there was no confidentiality order" entered by this Court protecting the Examiner Submissions—either MBIA's or any other party's Submissions. (*Id.* at 27:21-28:4.) Therefore, this Court asked Plaintiffs to provide in their Opposition Brief "any authority that [they were] able to submit that would support privilege or protection from disclosure or discovery [for the MBIA Examiners Submissions] subject to confidentiality order that's in place in the Minnesota cases or that's in place in the cases here." (*Id.* at 32:24-33:5.)

Despite the opportunity provided by this Court, Plaintiffs' opposition brief fails to provide authority supporting its position. Instead, it relies solely on the same inapposite case it relied on in its earlier letter to this Court. (Pltfs. Opp. at 2.) That case, *In re Ionosphere Clubs, Inc.*, 156 B.R. 414 (S.D.N.Y. 1993), is readily distinguishable because the examiner's report was protected by an order entered by the court. Further, the movants there included journalists seeking to vindicate the *public*'s right to access and publish the examiner's report.

In contrast, here, all parties agree that there is no order of this Court prohibiting disclosure of the Examiner Submissions. And there is no danger of public disclosure because it is undisputed that the Examiner Submissions would be shielded from the public by the protective order entered by the District of Minnesota in the underlying actions.[3] Accordingly, *In re Ionosphere Clubs* provides no support for Plaintiffs' position that the Examiner Submissions are

---

[3] The other cases cited by Plaintiffs (Pltfs. Opp. at 7 n. 3) are similarly distinguishable. *Minpeco S.A. v. Conticommodity Servs., Inc.*, 832 F.2d 739, 743 (2d Cir. 1987), and *Palmieri v. State of New York*, 779 F.2d 861, 864-65 (2d Cir. 1985), involved enforcement of court orders. *In re Residential Capital LLC*, 536 B.R. 132, 150 (Bankr. S.D.N.Y. 2015) addressed enforcement of this Court's *mediation order* entered in the ResCap bankruptcy.

4

privileged from discovery. (Tr. at 32:24-33:5.)[4]

### B.    Plaintiffs' Perception of What Movants Require Is Not the Test of Discoverability Under the Federal Rules.

Plaintiffs argue that MBIA's Examiner Submissions are "unnecessary to assessing Plaintiffs' claims." (Pltfs. Opp. at 9.) The Court rejected this argument at the Preliminary Conference: "I certainly understand . . . why [the Examiner Submissions are] relevant and material to the issues in dispute in the pending litigation." (Tr. at 30:5-12.) As the Court also correctly noted, discoverability and admissibility are "totally separate issue[s]." (*Id.*) Tellingly, Plaintiffs' Opposition Brief simply restates the argument made at the Preliminary Conference without even attempting to respond to the Court's points above. Plaintiffs' silence tacitly concedes that the Examiner Submissions are relevant for purposes of discovery.[5]

## II.    MBIA's Opposition to Production of the Emails Is Meritless Because Movants Seek Relevant, Non-Cumulative, Non-Privileged Emails.

MBIA argues that Movants should be denied email discovery *entirely*. (MBIA Opp. at 18.) MBIA's basis for this extraordinary result is its unsupported (and ultimately unfounded) assertions that email discovery would be irrelevant and/or unreasonably cumulative of prior discovery, and *might be* overwhelmingly subject to the attorney-client and mediation privileges.

---

[4] Contrary to Plaintiffs' argument, the existence of the black-letter law negates any "legitimate expectation" (Pltfs. Opp. at 9) that the Examiners Submissions would be immune from discovery in subsequent litigation; it has always been the rule that a mere confidentiality agreement, without a court order, is insufficient to protect against otherwise proper discovery.

[5] Notably, MBIA did not object to the production of the Examiner Submissions on relevance grounds. Only Plaintiffs so object, in the context of a subpoena directed to a third party. It is well-settled that Plaintiffs lack standing to object to a subpoena directed to a nonparty solely on the grounds of relevance. *Almazo v. M.A. Angeliades, Inc.*, No. 11 CV 1717(MGC), 2015 WL 6965116, at *5 (S.D.N.Y. Nov. 10, 2015) ("In the absence of a claim of privilege, a party usually does not have standing to object to a subpoena directed to a non-party witness." (quoting *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975))).

(*Id.* at 10-18.)  MBIA's argument is based on a tendentious view of a nearly ***eight-month*** meet-and-confer process and is belied by its own conduct.

### A.    The Emails Sought by Movants Are Relevant for Purposes of Discovery.

MBIA's relevancy argument ignores its own response to the Subpoena.  As MBIA's Opposition emphasizes, it produced 165,000 pages of imaged documents in response to the Subpoena.  That conduct itself demonstrates that document requests contained in the Subpoena are relevant.  Indeed, MBIA's Opposition fails to identify a single document request set forth in the Rider to the Subpoena that it claims is irrelevant for purposes of discovery.  Nor does MBIA even try to argue that the five categories identified in Movants' compromise proposal seek irrelevant information.  (*Compare* Motion at 8 *with* MBIA Opp. at 10-18.)  Instead, it makes a single relevance argument – that "MBIA's subjective views on the global settlement are irrelevant." (MBIA Opp. at 12-13.)  But, as the Court noted at the Preliminary Conference, the argument confuses the admissibility of emails with their discoverability.  (Tr. at 30:5-12 (rejecting identical argument as a basis for withholding the Examiner Submissions).)[6]

### B.    Movant's Request for Limited Email Discovery Is Not Unreasonably Cumulative of Prior Document Discovery.

A court may limit discovery where "the discovery sought is unreasonably cumulative or duplicative." Fed. R Civ. P. 26(b)(2)(C).  However, where a discovery request seeks documents likely to contain new information from what has already been produced, the request is *not*

---

[6]        In declining to modify its mediation order, the Court acknowledged that documents reflecting subjective opinions regarding the Global Settlement "may be relevant to the Plaintiffs' indemnity claims," but denied the motion because "relevance is not the standard for jettisoning the mediation privilege."  Order at 26.  In contrast, Rule 26 relevance is the standard applicable to this discovery motion and MBIA's arguments fall short under this standard.

unreasonably cumulative.  *See EEOC v. Freeman*, No. RWT-09-2573, 2012 WL 2370122, at *2 (D. Md. June 21, 2012).

Here, Movants seek email discovery on five limited topics from only three MBIA custodians for emails generated between 2009 and 2013, and have provided MBIA with search terms that fit within those limited topical and temporal parameters.  Yet, MBIA asserts that Movants' request for email discovery is cumulative of what it has already produced while offering no facts beyond sheer speculation to prove its point.  MBIA does not even argue that all responsive emails that Movants seek have already been produced, much less that a single email would be duplicative of anything already in Movants' possession.  It cannot make these arguments because it refuses to produce any of the emails sought by Movants.

Further, MBIA's reliance on its prior production to maintain its unreasonably cumulative argument is misplaced.  During meet-and-confer, Movants expressly limited their email request to documents *not already produced*.[7]  In particular, MBIA's prior production consisted of documents dubbed the "Exchanged Documents," *i.e.*, documents exchanged between MBIA and RFC in discovery in prior pre- and post-petition litigation.[8]  (*See* Gottlieb Decl., Ex. C, June 22, 2015 Email from Harris to Heeringa.)  Movants told MBIA that the Exchanged Documents do

---

[7]  (*See* Gottlieb Decl., Ex. D, Sept. 22, 2015 Heeringa email to Stanisci ("[W]e seek production of non-privileged MBIA emails and related attachments that (a) fall within the scope of our subpoena, (b) were *not* exchanged with or sent to defendants in the MBIA Lawsuits, as that term is defined in the subpoena, and (c) are *not* prohibited from disclosure by the August 28th mediation order. . . .  None of those emails should be part of the 'Exchanged Documents' that MBIA has already produced.")

[8]  More precisely, the "Exchanged Documents" were defined by MBIA as "documents/privilege logs produced to or shared with RFC/ResCap in the MBIA v. RFC litigation (including fact and expert discovery documents), or in the ResCap bankruptcy proceeding."  (*See* Gottlieb Decl., Ex. C, June 22, 2015 Harris email to Heeringa.)  However, MBIA later confirmed that "MBIA did not produce any documents in connection with Debtors' 9019 Motion" and thus produced only documents from the pre-petition *MBIA v. RFC* litigation in New York state court. (*Id.*, Ex. D, Sept. 17, 2015 Stanisci email to Heeringa.)

7

not include documents created after February 2009—something which MBIA has never challenged or disputed. (*Id.*, Ex. D, Oct. 2, 2015 Heeringa email to Stanisci; Ex. D, Oct. 30, 2015 Heeringa email to Stanisci.) In other words, if MBIA's argument is successful, the effect will be to preclude *nearly all discovery* of documents created after February 2009. MBIA's argument thus turns the concept of unreasonably cumulative on its head, using it to preclude altogether discovery of any documents generated during most of the time period defined by the Subpoena.

### C.   Movants Do Not Seek Emails That Are "Overwhelmingly Privileged."

MBIA's argument that the emails requested by Movants are "overwhelmingly subject to the attorney-client privilege and mediation privilege" (MBIA Opp. at 14-18.) is belied by its own representations. In particular, in or around early March 2016, MBIA searched the three email accounts at issue in this Motion using search strings proposed by Movants. In addition, MBIA added additional search strings *designed by it* to identify potentially privileged documents. MBIA's search strings treated as potentially privileged (1) any email containing the name of an MBIA attorney or (2) any email generated within the mediation order date range of December 26, 2012 through December 11, 2013. (*See* Gottlieb Decl., Ex. E, Mar. 4, 2016 Heeringa Email to Stanisci.)

On March 4, 2016, MBIA reported to Movants the results of that search. It found that the search strings proposed by Movants identified roughly 20 gigabytes (GB) of emails. Of that 20 GB, MBIA's search strings identified 10 GB of potentially privileged emails. In other words, *half* of the emails identified by MBIA as responsive to Movants' request were generated *outside* the date range of the mediation order and *do not* contain the name of an MBIA attorney. On the same day, Movants emailed MBIA's counsel to confirm their understanding that "roughly 10 GB

8

of emails and attachments . . . are neither within the mediation range nor are likely to be privileged." (*Id.*)

Movants and MBIA conducted a lengthy follow up meet-and-confer on the email issue on March 15, 2016. (*See generally* Gottlieb Decl., Exs. E-F.) At no time between March 4 and March 15, or between March 15 and the Preliminary Conference, did MBIA dispute Movant's understanding of MBIA's search results. Thus, MBIA's own description of its search results suggests that at least half of the requested information is *unlikely* to be privileged. Yet, it represents to this Court that *all* 20 GB are "overwhelmingly" likely to be privileged. (MBIA Opp. at 17.) Its position makes no sense.

A few hours before the Preliminary Conference, MBIA sent an email to Movants disputing for the first time MBIA's own previous characterization of its search, and then raised its new characterization before the Court. Under MBIA's new theory, all of the 20 GB of indisputably responsive emails – even the ones excluded by MBIA's extremely broad privilege search – are "likely" to be privileged because MBIA did not have a business relationship with RFC/ResCap between 2009 and 2013. (*See* Gottlieb Decl., Ex. F, Mar. 23, 2016 Stanisci email to Levin.)[9] Contrary to MBIA's position (MBIA Opp. at 15), the fact that MBIA was not issuing new policies to RFC and was in litigation with RFC during this time frame does not mean that *all* its activities are "overwhelmingly" or even partially privileged. And MBIA conceded as much in its description of its supposed "non-privileged" activities during the relevant time period: "[M]onitoring exposure levels, making claim payments, and *seeking remediation on policies*" (*id.* (emphasis added)), are wholly non-privileged activities that may yield relevant information.

---

[9] The same argument was then presented of a few hours later by MBIA's litigation counsel, Michelle Cohen, at the Preliminary Conference (Tr. at 16:12-16) and then again in its March 25 Opposition Brief (MBIA Opp. at 15).

Movants acknowledge that it is possible that *some* actually privileged documents were not identified by MBIA's privilege search. But, it is not plausible for MBIA to now insist, for purposes of denying discovery altogether, that its own privilege search was totally ineffective, that its prior representations were wrong, and/or that all of the emails are "overwhelmingly" privileged. Indeed, as the Court itself recognized, the privilege search parameters employed by Plaintiffs were extremely broad, making it just as likely that the pool of emails identified by MBIA's search as *potentially* privileged actually contain many non-privileged documents. (Tr. at 33:16-25 ("[I]f there's been an overprotection of documents, I'm not going to shift the entire cost of doing a review.").)

## III. Cost-Shifting Is Not Warranted Where MBIA Insists on Document-By-Document Review and Has Refused to Consider More Economical Alternatives.

MBIA's argument for cost-shifting is based on an incorrect view of the law and on the faulty premise that Movants have failed to address its legitimate concerns during meet-and-confer. (MBIA Opp. at 15.) Cost-shifting should be denied accordingly.

### A. This Court Should Decline Cost-Shifting for Privilege Review Because MBIA Has Refused to Consider Recognized Alternatives to Costly Document-by-Document Review.

Under Fed R. Civ. P. 45, the general presumption is that "a party issuing a subpoena is not required to bear the subpoenaed nonparty's cost of compliance." *In re World Trade Ctr. Disaster Site Litig.*, No. 21 MC 100(AKH), 2010 WL 3582921, at *1 (S.D.N.Y. Sept. 14, 2010). Indeed, "a non-party can be required to bear some or all expenses where the equities of a particular case demand it." *Prescient Acquisition Grp., Inc. v. MJ Publ'g Trust*, No. 05 Civ.6298(PKC), 2006 WL 2996645, at *2 (S.D.N.Y. Oct. 13, 2006). Cost-shifting is only warranted when a non-party is subjected to a "significant expense." *DeGeer v. Gillis*, 755 F. Supp. 2d 909, 928 (N.D. Ill. 2010) (citing what is now Fed. R. Civ. P. 45(d)(2)); *see also Wells*

10

*Fargo Bank, N.A. v. Konover*, 259 F.R.D. 206, 207 (D. Conn. 2009) ("Rule 45 protects non-parties from significant expenses incurred in their compliance with a subpoena.").

Importantly, at least one court in the Southern District of New York has decided against shifting costs for privilege review for reasons similar to those at issue in the present case. *US Bank*, 2012 WL 5395249, at *4. *US Bank* involved a contract dispute between an insured (US Bank) and an insurer. *Id.* at *1. US Bank issued subpoenas to certain reinsurers (Transamerica and SCOR). *Id.* The reinsurers moved to quash on the grounds that the information sought was irrelevant and conducting privilege review and logging the result would constitute an undue burden. *Id.* at *3. "Given the broad definition of relevance in the context of discovery," the District Court found that the requests sought relevant information "even if much of it is only marginally so." *Id.* Given the marginal relevance of the information sought, the District Court ordered cost-shifting for searching, collecting, and producing the documents.[10] In so doing, the Court stated:

> However, these non-parties shall bear their own costs of reviewing the documents for privilege. Generally, it is not appropriate to shift such costs because "the producing party has the exclusive ability to control the cost of reviewing the documents." [] Furthermore, I will enter an order pursuant to Rule 502(d) of the Federal Rules of Evidence that will preclude the disclosure of privileged documents in this case from constituting a waiver of privilege or of work product protection in this or any other proceeding, state or federal. Although Transamerica and SCOR are, of course, free to engage in as exacting a privilege review as they wish, entry of a Rule 502(d) order will give them the option of conducting a more economical analysis while minimizing the risk of waiver.

*US Bank*, 2012 WL 5395249, *4 (quoting *Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 290 (S.D.N.Y. 2003)) (internal citation omitted). Numerous other courts have recognized the utility

---

[10] MBIA has not claimed undue burden or sought cost-shifting for costs of search, collection, and production. Indeed, it has never disputed Movants' assertion that such costs here are *de minimis*. (*See* Gottlieb Decl., Ex. E, Mar. 4, 2016 Heeringa email to Stanisci, noting that production costs for the 10GB of the non-privileged emails identified by MBIA would be about $250 per GB (roughly $2,500)).

11

of Federal Rule of Evidence 502(d) for reducing the burden of privilege review and production.

*See, e.g., Bell Inc. v. GE Lighting*, LLC, No. 6:14-CV-00012, 2014 WL 1630754, at *12 (W.D. Va. Apr. 23, 2014) ("[C]ourts in this district have found that it is untenable for a party to insist on individually reviewing all documents for privilege and responsiveness, rather than producing documents under a protective order with a claw back provision"); *Adair v. EQT Prod. Co.,* No. 1:10CV00037, 2012 WL 2526982, at *5 (W.D. Va. June 29, 2012) (ordering the production of documents without prior review where a protective order and claw back agreement were in place); *Zubulake*, 216 F.R.D. at 290 ("[M]any parties to document-intensive litigation enter into so-called 'claw-back' agreements that allow the parties to forego privilege review altogether in favor of an agreement to return inadvertently produced privileged documents").

During meet-and-confer, Movants suggested that MBIA pursue this well-recognized option under Rule 502 as a way to mitigate its undue burden concerns.  (*See* Gottlieb Decl. Ex. E, Mar. 4, 2016 Heeringa email to Stanisci.)  Movants' proposal was as follows:

> [T]o reduce any burden associated with our request . . . our proposal is as follows: First, MBIA would produce to us the 10 GB of emails/attachments that fall outside of the potential mediation documents or privilege documents, as these are unlikely to be privileged or covered by the mediation order and thus would not require any review.  Second, prior to this production, the parties would negotiate and execute a non-waiver/claw back agreement in the event that a privileged or mediation document was inadvertently produced.  Third, given the *de minimus* cost involved, MBIA would pay for this production.  Finally, since the parties are at an impasse as to what MBIA must do to satisfy its obligation to provide a factual basis for withholding information on the grounds of privilege or the bankruptcy court's mediation order, we propose that we should brief those issues for the Court . . . .

(*Id.*)  On March 15, MBIA rejected this proposal, stating that it "'just does not feel comfortable' producing documents without reviewing each one individually."  (*Id.*, Ex. F, Mar. 18, 2016 Levin email to Stanisci.)  In response to this position, Movants explained "we are not saying MBIA *must* forego pre-production review.  Our position is that if MBIA is insisting on attorney

review rather than readily available and commonly used alternatives to reduce the burden of production, any resulting burden is of MBIA's own making." (*Id.*)  That is exactly the position on cost-shifting for privilege review taken by the Southern District of New York in *US Bank*. *See* 2012 WL 5395249, at *4.  Movants' offer, which MBIA ignores in its Opposition, belies its representation to the Court that Movants failed "to take reasonable steps to avoid imposing undue burden or expense." (*See* MBIA Opp. at 21; *see also id.* at 1-21 (omitting discussion of Movants' offer).)[11]

With respect to the privilege log itself, Movants made clear that they would not insist on a document-by-document log.  Instead, they repeatedly implored MBIA "to offer any middle ground or counter-proposal" to its position that MBIA should be required to do "absolutely nothing" to substantiate that the documents it has identified as potentially privileged are, in fact, entitled to protection.  (Gottlieb Decl., Ex. F, March 18, 2016 Levin email to Stanisci.)  MBIA never offered any "middle ground" or "counter-proposal," apparently preferring instead to argue that the alleged burdensomeness of the log should preclude discovery altogether.  (*See* MBIA Opp. at 17.)[12]

As set forth above, MBIA is simply incorrect when it asserts that Movants have made no

---

[11] MBIA did briefly address the issue at the Preliminary Conference, where MBIA argued that Movants' proposal is inadequate because it "would have to, at some level, review the documents even if we did it after we produced documents." (Tr. at 16:18-24.)  However, the Advisory Committee for the Federal Rules of Evidence does not agree.  *See* Explanatory Note to Rule 502 ("The Rule does not require the producing party to engage in post-production review to determine whether any protected communication or information has been produced by mistake.").

[12] Curiously, none of the cases that MBIA cites for that proposition actually refuse discovery.  *Id.*  Instead, each focuses on techniques to mitigate the burden of providing a privilege log.  MBIA mentions none of those techniques in its Opposition.  *See, e.g., American Broadcasting Companies, Inc. v. Aereo Inc.*, No. 12 CV 1540, 2013 WL 139560, at *2 (S.D.N.Y. Jan. 11, 2013) (suggesting "categorical" privilege logs pursuant to S.D.N.Y. Local Rule 26.2).

13

attempt to limit their requests or respond to its concerns regarding undue burden.  In addition to

the meet-and-confer proposal referred to above, Movants have limited their request to three

custodians, limited both the subject matter and temporal scope of the requested production, and

offered a narrowly tailored list of search terms.    Moreover, Movants have continuously

expressed a willingness to work with MBIA to further narrow the request so as to reduce any

perceived burden.  This Court should not order cost-shifting when all of Movants' attempts to

alleviate any undue burden have been met by MBIA with obstinate refusal.

> **B.    Should This Court Exercise Its Discretion to Shift Costs, Movants Should
>         Not Be Required to Bear the Entirety of Costs or to Pay MBIA's Proposed
>         Hourly Rates for Individualized Attorney Review.**

While Movants contend that cost-shifting should not occur, if this court disagrees it

should nonetheless decline to shift the entirety of the costs to Movants.   Courts in this district

consider three factors when determining each party's share of costs: "(1) whether the nonparty

has an interest in the outcome of the case; (2) whether the nonparty can more readily bear the

costs; and (3) whether the litigation is of public importance."   *World Trade Ctr.*, 2010 WL

3582921, at *1.  "This inquiry is fact intensive, turning on the particular aspects of each case."

*Id.*  The first two factors are the primary factors at issue here, and they weigh in Movants' favor.

As this Court correctly recognized, MBIA has "a very large allowed claim for which the

Trust is seeking indemnity, so they're hardly a stranger to the proceeding or disinterested in the

proceeding."   (Tr. at 34:15-17.)   Indeed, MBIA was a key player in crafting the Global

Settlement for which the Liquidating Trust now seeks indemnification, and was awarded the

single largest Allowed Claim in that settlement.  MBIA can hardly claim surprise that it has been

requested to provide evidence in the litigation between the Liquidating Trust and Movants that

was clearly contemplated by the Global Settlement, of which MBIA was a substantial

14

beneficiary. Moreover, MBIA appointed its former executive to the board of the Liquidating Trust; indeed, he is now the *Chairman* of the Liquidating Trust, and his emails are at issue in this Motion. These facts show that MBIA has been "substantially involved in the underlying transaction" giving rise to the litigation such that "expenses should not be awarded." *Chevron,* 2013 WL 1087236, at *33; *see also In re First Am. Corp.*, 184 F.R.D. 234, 242 (S.D.N.Y. 1998) ("Where a nonparty was substantially involved in the underlying transaction and could have anticipated that the failed transaction would reasonably spawn some litigation, expenses should not be awarded." (internal quotation marks and citation omitted)). Certainly, MBIA is not the "quintessential, innocent, disinterested bystander [Rule 45] aims to protect." *Dow Chem. Co. v. Reinhard*, No. M8-85 (HB), 2008 WL 1968302, at *2 (S.D.N.Y. Apr. 29, 2008).

Further, it does not matter that MBIA sold its Units in the Liquidating Trust and no longer has a direct interest in the outcome of the litigation; instead, its actions and involvement in the bankruptcy and the events leading up to it are inextricably intertwined with the underlying litigation. Thus, MBIA's claims of disinterest should fall on deaf ear. *See, e.g., J.P. Morgan Chase Bank v. Winnick*, No. 03 Civ. 8535(GEL), 2006 WL 3164241, at *2 (S.D.N.Y. Nov. 2, 2006) (denying cost-shifting and stating: "Movants' actions were at the heart of this litigation, their interest in which they chose to sell in lieu of seeking recompense themselves. That they will not directly benefit from the recovery obtained by those who purchased their claims does not entitle them to relief.").

Further, MBIA is a major insurance company that is routinely involved in litigation. It had a net income of $569 million in 2014. (Motion, Gottlieb Decl., Ex. G.) It, like other large companies, is fully capable of absorbing the minimal costs of complying with the subpoena— and various courts have ruled similarly. *See, e.g., Cornell v. Columbus McKinnon Corp.*, No.

15

13-cv-02188-SI, 2015 WL 4747260, at *4 (N.D. Cal. Aug. 11, 2015) (denying nonparty company's request for cost-shifting, in part, because "the discovery costs are dwarfed by [the company's] profit figures, and therefore weigh in favor of finding them insignificant"); *cf. Chevron*, 2013 WL 1087236, at *33 (finding that an estimated cost of compliance in the range of $1,060,000 and $1,290,000 was not undue for a nonparty company with over $300 million in gross revenue the previous year and observing that this estimate was not "out of line with what would be typical for nonparty witness in complex commercial litigation"). Moreover, as noted above, MBIA refused to consider Movants' proposal pursuant to Fed. R. Civ. P. 502(d) and proposed no alternatives such as a categorical privilege log under this Court's Local Rules. *See* L.R. 26.2. It has not even entertained the *prospect* of employing predictive coding or other technology-assisted review to alleviate its supposed burden. Instead, MBIA has devised a preliminary estimate of costs using overbroad keyword searches and presupposing the necessity of manual review by attorneys. However, keyword searches "often are over-inclusive," are "usually . . . not very effective," and manual review of keywords hits is "quite costly." *Moore v. Publicis Groupe*, 287 F.R.D. 182, 191 (S.D.N.Y. 2012). This District has endorsed technology-assisted review and observed one study that showed that it was "at least as accurate . . . as that of human re-review." *Id.* at 190. In addition, studies show that technology-assisted review "demonstrate[s] significant cost savings over manual review." *Id.* In short, MBIA has failed to adequately justify the necessity of employing costly attorneys to engage in manual review given several valid and effective cost-saving alternatives, which undermines MBIA's request for costs. *See, e.g.*, *Adair*, 2012 WL 2526982, at *5 (finding cost-shifting unnecessary where costs "could be mitigated by the use of electronic searching and production, together with the protections of the Protective and Clawback Orders").

16

Finally, if the court decides that cost-shifting is warranted, the issuing party is responsible only for "the *reasonable* costs of production." *See Israel v. Carpenter*, No. 95CIV2703DABJCF, 2002 WL 1424594, at *1 (S.D.N.Y. June 28, 2002) (emphasis added); *see also Prescient*, 2006 WL 2996645, at *3 (awarding expenses only after reviewing them and determining they were reasonable). MBIA's staggering estimated $400,000 expense is driven primarily by its desire to use the Cadwalader firm to conduct the privilege review at rates between $400 and $600 per hour. (*See* Harris Decl., ¶ 26; *see also* Tr. 17:1-4 (using Cadwalader).)

MBIA has every right to employ Cadwalader to conduct its privilege review. It is an entirely different question, however, whether MBIA should be permitted to shift $400 to $600 per hour rates for privilege review work to Movants. *See, e.g., Chevron*, 2013 WL 1087236, at *32. (There is "no legitimate reason why . . . far less costly contract attorneys could not do all or most of the review, as is common in the legal community today."). In this regard, Movants submit that contract attorneys may be available at approximately $50 per hour, and a savings of approximately 88 percent per hour. (*See* Gottlieb Decl., Ex. B (showing that licensed New York contract attorneys available for privilege review at $50 to $53 per hour).)

In sum, the equities do not favor shifting the entirety of the costs to Movants. Both MBIA's involvement in the bankruptcy proceedings that spawned the underlying Minnesota litigation and its ability to bear the costs of compliance weigh in favor of MBIA bearing at least a portion (if not all) of the costs. This is particularly true in light of MBIA's insistence on document-by-document review and its refusal to consider more economical alternatives. Moreover, MBIA's high cost estimate results from its insistence on individualized document-by-document pre-production review, its refusal to consider alternatives to pre-production review, its

17

failure to engage meaningfully in meet-and-confer discussions on the scope and form of any

privilege log, its failure to consider or suggest how technology-assisted review may reduce the

expense of pre-production review, and its insistence that all of the review must be conducted at

rates between $400 and $600 per hour.   These assumptions are not reasonable under the

circumstances.  To permit cost-shifting on this basis would do more than compensate MBIA for

reasonably incurred costs, it would permit MBIA to use the prospect of cost-shifting to shield

legitimate discovery.


Dated: April 4, 2016                                    Respectfully submitted,

                                                        **PNC BANK, N.A.**,


                                                        By:      /s/ Richard E. Gottlieb
WACHTELL, LIPTON, ROSEN & KATZ                          BUCKLEYSANDLER LLP
Jonathan M. Moses                                       Richard E. Gottlieb
Elaine P. Golin                                         1133 Avenue of the Americas, Suite 3100
Adam M. Gogolak                                         New York, New York 10036
51 West 52nd Street                                     Brett J. Natarelli
New York, NY 10019                                      353 N. Clark Street, Suite 3600
Telephone: (212) 403-1000                               Chicago, IL 60654
Facsimile: (212) 403-2000                               Telephone:  (312) 924-9800
JMMoses@wlrk.com                                        Facsimile:  (312) 924-9899
EPGolin@wlrk.com                                        rgottlieb@buckleysandler.com
AMGogolak@wlrk.com                                      bnatarelli@buckleysandler.com

BRIGGS AND MORGAN, P.A.                                 Amanda Raines Lawrence
David A. Schooler, #225782                              Jennifer A. Slagle-Peck
Mark G. Schroeder, #171530                              1250 24th Street, NW, Suite 700
Daniel J. Supalla, #0387064                             Washington, DC 20037
2200 IDS Center, 80 S. Eighth Street                    Telephone:  (202) 349-8000
Minneapolis, MN 55402                                   Facsimile:  (202) 349-8080
Telephone: (612) 977-8400                               alawrence@buckleysandler.com
Facsimile: (612) 977-8650                               jslaglepeck@buckleysandler.com
dschooler@briggs.com
mschroeder@briggs.com
dsupalla@briggs.com

Fredrick S. Levin
Michael A. Rome
100 Wilshire Boulevard, Suite 1000
Santa Monica, CA 90401
Telephone:  (310) 424-3900
Facsimile:  (310) 424-3960
flevin@buckleysandler.com
mrome@buckeysandler.com

*Attorneys for Defendant PNC Bank, N.A., as
successor in interest to National City
Mortgage Company, NCMC Newco, Inc., and
North Central Financial Corporation*

**Joining Movants (Signatures by Permission)**

BRIGGS AND MORGAN, P.A.

By:  \_\_\_/s/ David A. Schooler\_\_\_
David A. Schooler, #225782
Daniel J. Supalla, #0387064
2200 IDS Center, 80 S. Eighth Street
Minneapolis, MN 55402
Telephone: (612) 977-8400
Facsimile: (612) 977-8650
dschooler@briggs.com
dsupalla@briggs.com

BUCKLEYSANDLER LLP
Richard E. Gottlieb
Brett J. Natarelli
Kristopher R. Knabe
353 N. Clark Street, Suite 3600
Chicago, IL 60654
Telephone:  (312) 924-9800
rgottlieb@buckleysandler.com
bnatarelli@buckleysandler.com
kknabe@buckleysandler.com

Amanda Raines Lawrence
Jennifer A. Slagle-Peck
1250 24th Street, NW, Suite 700
Washington, DC 20037
Telephone:  (202) 349-8000
alawrence@buckleysandler.com
jslaglepeck@buckleysandler.com

Fredrick S. Levin
Michael A. Rome
100 Wilshire Boulevard, Suite 1000
Santa Monica, CA 90401
Telephone:  (310) 424-3900
flevin@buckleysandler.com
mrome@buckeysandler.com

*Attorneys for Defendants BMO Harris Bank,
N.A. d/b/a M&I Bank*

HELLMUTH & JOHNSON, PLLC

By:  \_\_\_/s/ J. Robert Kenna_____
J. Robert Keena, #258817
Carol R. M. Moss, #0389202
8050 West 78th Street
Edina, MN 55439
Telephone:  (952) 941-4005
Facsimile:  (952) 941-2337
jkeena@hjlawfirm.com
cmoss@hjlawfirm.com

AMERICAN MORTGAGE LAW GROUP
James W. Brody
E. Page Allinson
Jack V. Valinoti
Andrew Steinfeld
75 Rowland Way, Suite 350
Novato, CA 94945
Telephone:  (415) 878-0030
Facsimile:  (415) 878-0035
Jbrody@americanmlg.com
eallinson@americanmlg.com
jvalinoti@americanmlg.com
asteinfeld@americanmlg.com

*Attorneys for Defendant Mortgage Access
Corp.*

MCGUIREWOODS LLP

By:  /s/ William C. Mayberry
William C. Mayberry
Jason D. Evans
Andrew D. Atkins
201 N. Tryon Street, Suite 3000
Charlotte, NC 28202
Telephone:  (704) 343-2000
Facsimile:  (704) 343-2300
bmayberry@mcguirewoods.com
jevans@mcguirewoods.com
aatkins@mcguirewoods.com

LINDQUIST & VENNUM LLP
Mark A. Jacobson, #188943
Kelly G. Laudon, #386854
4200 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone:  (612) 371-3211
Facsimile:  (612) 371-3207
mjacobson@lindquist.com
klaudon@lindquist.com

*Attorneys for Defendant Branch Banking &
Trust Co.*

ANTHONY OSTLUND BAER &
LOUWAGIE P.A.

By:  /s/ Brooke D. Anthony
Joseph W. Anthony, #0002872
Brooke D. Anthony, #387559
Amelia R. Selvig, #393392
90 South Seventh Street, Suite 3600
Minneapolis, MN 55402
Telephone:  (612) 349-6969
Facsimile:  (612) 349-6996
janthony@anthonyostlund.com
banthony@anthonyostlund.com
aselvig@anthonyostlund.com

BILZIN SUMBERG BAENA PRICE &
AXELROD LLP
Philip R. Stein
Shalia Sakona
1450 Brickell Avenue, 23rd Floor
Miami, FL 33131
Telephone: (305) 374-7580
Facsimile: (305) 351-2147
pstein@bilzin.com
ssakona@bilzin.com

*Attorneys for Defendant Mortgage Capital
Associates, Inc.*

21

WILLIAMS & CONNOLLY LLP

By: /s/ R. Hackney Wiegmann
R. Hackney Wiegmann
Matthew V. Johnson
Jesse T. Smallwood
Beth A. Stewart
Noorudin Mahmood Ahmad
Kyle E. Thomason
David S. Blatt
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone:  (202) 434-5000
Facsimile:  (202) 434-5029
Hwiegmann@wc.com
Mjohnson@wc.com
Jsmallwood@wc.com
Bstewart@wc.com
Mahmad@wc.com
kthomason@wc.com
dblatt@wc.com

ZELLE HOFMANN VOELBEL & MASON
LLP
Daniel Millea, #0245963
Elizabeth V. Kniffen, #0346329
500 Washington Avenue South
Suite 4000
Minneapolis, MN 55415
Telephone: (612) 339-2020
Facsimile: (612) 336-9100
dmillea@zelle.com
ekniffen@zelle.com

*Attorneys for Defendant Decision One
Mortgage Company, LLC*

GREENE ESPEL PLLP

By:    /s/ Todd A. Noteboom
STINSON LEONARD STREET LLP
Todd A. Noteboom, #0240047
Sharon R. Markowitz, #0392043
150 South Fifth Street, Suite 2300
Minneapolis, MN 55402
Telephone: (612) 335-1894
Facsimile: (612) 335-1657
Todd.noteboom@stinson.com
Sharon.markowitz@stinson.com

BILZIN SUMBERG BAENA PRICE &
AXELROD LLP
Philip R. Stein
Brandon A. Rose
James J. Ward
Shalia M. Sakona
1450 Brickell Avenue, 23rd Floor
Miami, FL 33131
Telephone: (305) 374-7580
Facsimile: (305) 374-7593
pstein@bilzin.com
brose@bilzin.com
jward@bilzin.com
ssakona@bilzin.com

*Attorneys for Defendant Universal American
Mortgage Company, LLC.*

22

MINENKO & HOFF, P.A.

By:  /s/ Michael Minenko
Michael Minenko
Gene A. Hoff
5200 Willson Road, Suite 150
Edina, MN 55424
Telephone:  (952) 922-6766
Facsimile:  (6952) 928-8370
mike@minenkohoff.com
gene@minenkohoff.com

*Attorneys for Defendant First Mortgage
Corporation*

BECK CHAET BAMBERGER & POLKSY
SC
By:    /s/ Matthew S. Vignali
Matthew S. Vignali
Steven W. Jelenchick
330 East Kilbourn Avenue
Milwaukee, WI  53202
Telephone:  (414) 273-4200
mvignali@bcblaw.net
sjelenchick@bcblaw.net

NILAN JOHNSON LEWIS PA
Gregory A. Bromen, #338047
120 South Sixth Street, Suite 400
Minneapolis, MN 55402-4501
Telephone: (612) 305-7500
Facsimile: (612) 305-7501
gbromen@nilanjohnson.com

*Attorneys for Defendant Guaranty Bank*

FREDRIKSON & BYRON, P.A.

By: /s/ Todd Wind
Todd Wind, #0196514
Nicole M. Moen, #329435
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402
Telephone:  (612) 492-7046
Facsimile: (612) 492-7077
twind@fredlaw.com
nmoen@fredlaw.com

KATTEN MUCHIN ROSENMAN LLP
Stuart M. Richter
Gregory S. Korman
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone:  (310) 788-4400
Facsimile: (310) 788-4471
Stuart.richter@kattenlaw.com
Greg.korman@kattenlaw.com

David J. Stagman
525 W. Monroe Street
Chicago, IL 60661-3693
Telephone:  (312) 902-5499
Facsimile: (312) 577-4416
David.stagman@kattenlaw.com

*Attorneys for Defendant HSBC Finance
Corporation*

JENKINS KAYAYAN LLP

By:  /s/ Jonathan J. Jenkins
Jonathan M. Jenkins
Lara Kayayan
Navdeep Singh
444 S. Flower Street, Suite 1530
Los Angeles, California 90071
Telephone: (310) 984-6800
Facsimile: (310) 984-6840
jjenkins@jklitigators.com
lkayayan@jklitigators.com
nsingh@jklitigators.com

LAPP, LIBRA, THOMSON, STOEBNER &
PUSH, CHARTERED
Richard T. Thomson, #109538
Amy L. Schwartz, #0339350
120 South Sixth Street, Suite 2500
Minneapolis, MN 55402
Telephone: (612) 338-5815
Facsimile: (612) 338-6651
rthomson@lapplibra.com
aschwartz@lapplibra.com

*Attorneys for Sierra Pacific Mortgage
Company, Inc.*

24

MUNGER, TOLLES & OLSON LLP

By:  /s/ Richard C. St. John
Marc T. G. Dworsky
Gregory D. Phillips
Michael E. Soloff
Richard C. St. John
Eric T. Tuttle
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
Telephone:  (213) 683-9100
Facsimile:  (213) 687-3702
Marc.Dworsky@mto.com
Gregory.Phillips@mto.com
Mike.Soloff@mto.com
Richard.StJohn@mto.com
Eric.tuttle@mto.com

LAPP, LIBRA, THOMSON, STOEBNER &
PUSCH, CHARTERED
Richard T. Thomson, #109538
Amy L. Schwartz, #0339350
120 South Sixth Street, Suite 2500
Minneapolis, MN 55402
Telephone: (612) 338-5815
Facsimile: (612) 338-6651
rthomson@lapplibra.com
aschwartz@lapplibra.com

WELLS FARGO LAW DEPT.
Thomas Jacob
45 Freemont Street, 26th Floor
MAC A0194-266
San Francisco, CA 94104
Telephone:  (415) 396-4425
Facsimile:  (415) 975-7819
tojacob@wellsfargo.com

*Attorneys for Defendant Wells Fargo Bank,
N.A and Wells Fargo Financial Retail Credit,
Inc.*

25