1

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 12-12020-mg

5    - - - - - - - - - - - - - - - - - - - - -x

6    In the Matter of:

7

8    RESIDENTIAL CAPITAL, LLC, et al.,

9

10            Debtors.

11

12    - - - - - - - - - - - - - - - - - - - - -x

13

14            United States Bankruptcy Court

15            One Bowling Green

16            New York, New York

17

18            February 25, 2016

19            10:00 AM

20

21    B E F O R E:

22    HON. MARTIN GLENN

23    U.S. BANKRUPTCY JUDGE

24

25

1

2   Doc# 9226 Final Pretrial Conference Regarding The ResCap

3   Liquidating Trusts and ResCap Borrower Claims Trusts Objection

4   to Claim Nos. 112, 114, 416 and 417 Filed by Erlinda Abibas

5   Aniel, Fermin Solis Aniel, and Marc Jason Aniel.  Final

6   Pretrial Conference set for 02/25/2016 at 10:00 am.  Trial set

7   for 3/24/2016 at 9:00 AM.

8

9   Doc# 9364, 9311 Status Conference on ResCap Borrower Claims

10  Trusts Seventy-Fifth Omnibus Objection to Claims (No Liability

11  Borrower Claims) Solely as it Relates to the Claim Filed by

12  Rhonda Gosselin.  Final Pretrial Conference shall be scheduled

13  for the first omnibus hearing date scheduled after 5/13/2016.

14

15

16

17

18

19

20

21

22

23

24

25  Transcribed by:  Hana Copperman

3

```
 1
 2   A P P E A R A N C E S :
 3   MORRISON & FOERSTER LLP
 4         Attorneys for the ResCap Borrower Claims Trust
 5         250 West 55th Street
 6         New York, NY 10019
 7
 8   BY:   JORDAN A. WISHNEW, ESQ.
 9
10
11   WILLIAMS & CONNOLLY LLP
12         Attorneys for Non-Party Individuals Susie Moy, Fernando
13         Acebedo, Nancy Luong, Doris Wong, and Audrey H.
14         Zabriskie, Non-Party HSBC Trial Subpoena Recipients
15         725 Twelfth Street, N.W.
16         Washington, DC 20005
17
18   BY:   MEGHAN A. FERGUSON, ESQ.
19         KEVIN M. HODGES, ESQ.
20
21
22   ALSO APPEARING:
23         ERLINDA ANIEL, In Pro Per/Pro Se (TELEPHONICALLY)
24         RHONDA GOSSELIN, In Pro Per/Pro Se (TELEPHONICALLY)
25
```

1              P R O C E E D I N G S

2         THE COURT:  Please be seated.

3         We're here in Residential Capital, number 12-12020.

4         Mr. Wishnew?

5         MR. WISHNEW:  Good morning, Your Honor.

6         THE COURT:  Good morning.

7         MR. WISHNEW:  Jordan Wishnew, Morrison & Foerster, for

8    the ResCap Borrower Claims Trust.

9         Your Honor, first, thank you to you and your chambers

10   for entering the orders concerning matters 2, 3, and 4 on

11   today's agenda.  So that brings us to only two matters, two

12   status and pre-trial conferences.

13        I think it might be better to first go with the

14   Gosselin matter, which is on page 5.

15        THE COURT:  Okay.

16        MR. WISHNEW:  Ms. Gosselin is on the phone.

17        THE COURT:  Ms. Gosselin, are you on the phone?

18        MS. GOSSELIN:  Yes, I -- Rhonda Gosselin.  Yes, I am.

19        THE COURT:  Good morning.

20        MS. GOSSELIN:  Hi.

21        THE COURT:  Mr. Wishnew, go ahead.

22        MR. WISHNEW:  Sure.  Just by a brief introduction.

23        Your Honor, we were last before the Court on December

24   16th.  The next day the Court entered a case management order

25   setting certain discovery deadlines of March 15th for fact

1  discovery and April 29th for expert discovery.  The Borrower

2  Trust served Ms. Gosselin with requests for admissions,

3  document requests, and interrogatories on December 29, 2015.

4  However, to date we have received no response to any of those

5  discovery requests.

6          We sent a letter requesting responses last week to

7  her.

8          THE COURT:  What was the deadline for responding?

9          MR. WISHNEW:  Roughly, Your Honor, the beginning of

10 February.

11         THE COURT:  Okay.

12         MR. WISHNEW:  Approximately thirty days after December

13 29th.

14         We sent a follow-up letter last week requesting

15 responses by this past Monday, the 22nd.  We still have not

16 received any responses to both discovery requests.

17         The pre-trial order provides for a final pre-trial

18 conference on the first omnibus date after May 13th.  I believe

19 that's going to be May 17th.  However, there is another date

20 later in the month, I think May 31st.  The problem that we face

21 right now, Your Honor, is that we're still in the same place

22 we've been for months now.

23         We have no insights or visibility into Ms. Gosselin's

24 proofs, her damages related to the remaining causes of action,

25 and whether she's even going to utilize an expert.

RESIDENTIAL CAPITAL, LLC, ET AL.                                    6

1          So, I mean, first, we'd obviously like to get

2    responses to our factual discovery.  And, two, if she doesn't

3    intend to introduce an expert, and then the Borrower Trust does

4    not intend to introduce their own expert, we'd like to try and

5    move up the evidentiary hearing to as soon as possible.

6          THE COURT:  Ms. Gosselin, why don't you address the

7    issue of the outstanding discovery first?

8          MS. GOSSELIN:  Rhonda Gosselin.  I'm confused about

9    what you -- actually, I can't really hear you.

10          THE COURT:  Sorry.  Say that again.

11          MS. GOSSELIN:  Can you ask the phone -- Rhonda

12    Gosselin.  The phone is echoing, so I can't really hear you.

13          I have not been able to find an attorney to represent

14    me.

15          THE COURT:  Yes, I know, and I recognize that you were

16    previously represented by counsel in the proceeding.  Certainly

17    when the Court wrote the opinion with respect to sustaining in

18    part and overruling in part the objection to the claim, you

19    were represented by Mr. Heal.  And because of illness he had to

20    withdraw from any matters that he appeared, not just this one.

21    And I know when that happened -- because the Court's original

22    opinion was in April, 2015, and I tried to give you time to

23    find replacement counsel, but the matter has to move forward.

24    We're now in 2016, late February, 2016, and the case has got to

25    move forward.

RESIDENTIAL CAPITAL, LLC, ET AL.                          7

1          I had set a discovery schedule on December 17, 2015.

2    Fact discovery is supposed to be completed by March 15, 2016,

3    which is very soon upon us.  So with or without counsel you

4    need to respond to the Trust's discovery.

5          I recognize that it's difficult for any pro se party

6    to proceed with litigation.  We're proceeding on your claim,

7    and I can't put it off.  We have to move forward.

8          So you need to respond.  I'm going to set a deadline.

9    Just bear with me a minute.

10         MS. GOSSELIN:  Rhonda Gosselin.  I understand.  I

11   don't know how to represent myself in getting the documents

12   from the court on my adversary proceeding and everything that I

13   need without getting an attorney.  And then for the damages, I

14   don't know how to do damages without an attorney.

15         THE COURT:  Well, what I'm going to do, Ms. Gosselin,

16   I'm going to set a deadline of 5 p.m. March 9, 2016 for you to

17   respond to all of the outstanding written discovery.

18         If you fail to respond to the discovery the Trust will

19   have to seek further relief from the Court.  I'm not going to

20   decide now what that relief should be.  You ought to understand

21   that the potential consequences for failing to timely respond

22   to discovery -- you're already out of time.  But I recognize

23   you're pro se, and I'm going to give you a little bit more time

24   to get it done.

25         The Trust may seek wider relief, precluding you from

1   introducing evidence, seeking to have your claim expunged.  I'm

2   not saying what, if any, action the Court will take on it, but

3   you need to move forward.

4          You know, in the prior opinion that I issued in April,

5   2015, a variety of your claim survived the Trust's objection to

6   the claim that sought to expunge it.

7          Your claims, under Massachusetts -- Chapter 93 of the

8   Massachusetts Law -- survived, and it's a serious claim.  And

9   other, I think your wrongful foreclosure claim survived, in

10  part, but you need to be able to move forward.

11         So I'm going to set -- what are the March omnibus

12  hearing dates, Mr. Wishnew?

13         MR. WISHNEW:  One moment, Your Honor.  March 10th,

14  Your Honor, is one.

15         THE COURT:  All right.  I'm going to set this down

16  for --

17         MR. WISHNEW:  And March 22nd is the other.

18         THE COURT:  I'm going to set it down for a hearing on

19  March 10th, because I'm setting the deadline for the discovery

20  as March 9th for responding to the written discovery.

21         Have you taken Ms. Gosselin's deposition, Mr. Wishnew?

22         MR. WISHNEW:  We have not, Your Honor.

23         THE COURT:  All right.  I'm going to put this on the

24  calendar for a status conference.  Let me just -- bear with me

25  a second.

1          Okay.  For 10 a.m. March 10th.  You can appear by

2     telephone again, Ms. Gosselin.

3          MS. GOSSELIN:  Thank -- Rhonda Gosselin.  Thank you.

4          THE COURT:  I'm sorry.  Can you just repeat yourself?

5          MS. GOSSELIN:  Oh, Rhonda Gosselin.  Thank you.

6          THE COURT:  Okay.  Mr. Wishnew, contact Ms. Gosselin

7     and see if you can understand, because I want to be sure that

8     she understands what information she's supposed to be providing

9     for you.  I know you served written discovery, but --

10         MR. WISHNEW:  Sure.

11         THE COURT:  But please talk to her.

12         MR. WISHNEW:  Sure.

13         THE COURT:  And, I mean, it was a serious claim, and I

14    want it resolved on the merits, if at all possible.

15         I don't know whether you've exhausted your efforts to

16    get counsel, Ms. Gosselin, or not.  I can't get in the midst of

17    that.

18         Obviously, I think Mr. Heal had done a very good job

19    for you.  Unfortunately, I think, what, he had a stroke, and he

20    just couldn't continue on in practice.  But quite a bit of time

21    has passed since he was relieved as counsel because of his

22    illness.

23         So we'll put this back on the calendar for 10 a.m.

24    March 10th.  Ms. Gosselin can appear by telephone.  At that

25    time we'll see whether the schedule needs to be adjusted at

1  all.  I want to move the matter forward for resolution.  Okay?

2          Thank you very much, Ms. Gosselin.  You can either

3  remain on the line or you can disconnect now, if you wish.

4          MS. GOSSELIN:  Rhonda Gosselin.  Thank you.  Bye.

5          THE COURT:  Okay, Ms. Gosselin.

6          Okay.  Onto the Aniel claim.

7          MR. WISHNEW:  Yes, Your Honor.  That brings us to the

8  final matter on today's calendar, item 5 on page 4, the pre-

9  trial conference concerning the objection to the claims of

10  Erlinda Aniel.

11          Your Honor, contemporaneous with this conference

12  there's also a -- include a motion to quash.

13          THE COURT:   There is.  Well, there's a letter that --

14          MR. WISHNEW:  I'm sorry.

15          THE COURT:  -- I'm treating as a motion to quash the

16  subpoenas.  Let me take that first.

17          MR. WISHNEW:  Sure.

18          THE COURT:  Okay?

19          MR. WISHNEW:  I'll defer counsel for --

20          THE COURT:  All right.

21          MR. WISHNEW:  Just be seated in the court.

22          THE COURT:  Come on up, counsel.

23          Ms. Aniel, you're on the phone?

24          MS. ANIEL:  Yes.  Yes.  Good morning, Your Honor.  My

25  name --

1          THE COURT:  Good morning.  I'll give you a chance.

2    Counsel for the people who have received the subpoenas is

3    approaching the microphone.  He's going to identify himself,

4    and we'll proceed with that first.

5          All right.  Go ahead.

6          MR. HODGES:  Good morning, Your Honor.  Kevin Hodges

7    of Williams & Connolly on behalf of the five individuals.  With

8    me is Meghan Ferguson, also Williams & Connolly.

9          Ms. Aniel has subpoenaed five employees of HSBC's

10   corporate trust department to appear and testify at trial.  We

11   have asked permission to move to quash those subpoenas on the

12   grounds that they are burdensome and cumulative and irrelevant

13   to the limited issue that remains in this case.

14         As the Court knows, Ms. Aniel has filed claims.  She

15   advanced a number of different theories.  And the Court issued

16   a memorandum opinion and order in June of 2015 that limited the

17   case to one issue, and that issue is whether the debtors GMAC

18   and ETS had authority to commence foreclosure proceedings

19   against Ms. Aniel's property in 2012.  And, specifically, Ms.

20   Aniel has called into question whether an individual named Mira

21   Smoot had authority to execute a 2011 assignment of deed of

22   trust from HSBC to GMAC Mortgage.

23         Now, and there has been some briefing before the Court

24   before it issued its decision.  Before the decision was entered

25   the debtors offered a limited power of attorney from HSBC to

1    GMAC that was dated as of 2013, and that 2013 limited power of

2    attorney, the Court ruled, did not establish GMAC's authority

3    as of 2011, and ruled that it was not relevant to the issue.

4         The debtors subsequently, after the Court had issued

5    its memorandum opinion and order, filed a 2008 limited power of

6    attorney from HSBC to GMAC.  Apparently they had had some

7    difficulty in locating the correct power of attorney.  I'm not

8    sure exactly.  But they did file that, and that was not

9    considered by the Court when it issued its decision.

10        So with that context, Your Honor, Ms. Aniel has

11   subpoenaed five witnesses to testify.  And I can break them

12   into two categories.  The first category consists of two

13   witnesses named Fernando Acebedo and  Audrey Zabriskie.  Mr.

14   Acebedo and Ms. Zabriskie appear only on the 2013 limited power

15   of attorney that the Court has already ruled is not relevant to

16   establishing the power to foreclose in 2012.  And so I would

17   submit that Mr. Acebedo and Ms. Zabriskie do not have testimony

18   that is relevant to the one issue that's before the Court.

19   Neither Mr. Acebedo nor Ms. Zabriskie appear on the 2008 power

20   of attorney or on the 2011 assignment document, which is really

21   the document that's at issue in this matter.

22        The second group consists of three individuals:  Susie

23   Moy, Nancy Luong, and Doris Wong.  These three individuals all

24   appear on the 2008 limited power of attorney from HSBC to GMAC.

25   That document is signed by Susie Moy on behalf of HSBC Bank

1    USA, and Nancy Luong and Doris Wong signed as witnesses.

2            Now, Ms. Aniel, if I understand her claim, is that she

3    doubts the authenticity of that 2008 document.  Now, I have

4    told Ms. Aniel --

5            THE COURT:  Two things.  She --

6            MR. HODGES:  Yes.

7            THE COURT:  She contests the authenticity of the

8    signatures plus the authority of the individuals involved in

9    the power of attorney and assignment to do what they did.

10            So I've read -- let me say I read both your letter of

11    February 22, 2016, and Ms. Aniel responded in a letter on

12    February 23, 2016.  So I've reviewed both of those letters.

13            But let me just back up for just a second, because

14    there's a proposed joint pre-trial conference order that I'll

15    consider in a little while.  It defines, on page 16, four

16    issues to be tried.

17            "1.  Whether Mira Smoot had sufficient authority to

18    execute the 2011 Assignment as an authorized officer of HSBC.

19            2.  Whether GMACM and ETS had sufficient authority to

20    commence the foreclosure action against the Property when it

21    caused the Notice of Default to be recorded on April 27, 2012."

22            There are two other issues.  They're not relevant to

23    this issue about the subpoenas.  But as to the first two, it

24    seems to me that Ms. Aniel's challenges, both as to

25    authenticity but also as to the authority of those who signed

1    both the power of attorney and then the subsequent commencement

2    of the foreclosure --

3              MR. HODGES:  Correct.  And I see that language, Your

4    Honor.  Ms. Smoot is not an HSBC employee.  She --

5              THE COURT:  I understand that.

6              MR. HODGES:  And she is -- she's a --

7              THE COURT:  But the question is did she have the

8    authority?  Was she granted the authority, through the power of

9    attorney, to do what she did?

10             MR. HODGES:  And that's what --

11             THE COURT:  You agree that's an issue?

12             MR. HODGES:  That's the issue.  And that's a legal

13   question, Your Honor.

14             THE COURT:  Well, but, well, it may be.  Okay.  But --

15   I want to hear from Ms. Aniel, and then -- but I understand

16   your argument that Acebedo and Zabriskie, because their only

17   involvement appears to be in connection with the 2013 power of

18   attorney, which the Court already in its -- had been addressed,

19   that wouldn't provided a basis for the notice of foreclosure

20   that was done or the assignment of the deed.

21             So what's relevant to this trial is the 2012 -- is

22   actually the 2011 assignment and the 2008, I guess the earlier

23   power of attorney was from 2008, whether that 2008 power of

24   attorney remained effective at the time of the 2011 assignment,

25   I suppose, is an issue.  And whether it turns out that the

RESIDENTIAL CAPITAL, LLC, ET AL.                    15

1    three witnesses who were three HSBC witnesses who were involved

2    in connection with the 2008 power of attorney, what their

3    testimony is, I'm not going to prejudge it.

4            And Ms. Aniel is absolutely correct on the contested

5    issues that she's raised and the Court addressed in its

6    opinion.  It seems to me that Ms. Aniel has satisfied relevance

7    and materiality, and those three people are going to have to

8    appear at trial, and they're going to be cross-examined.

9            So having read the two letter submissions with respect

10   to the subpoenas, with respect to those three, your application

11   to quash the trial subpoenas is denied.  With respect to

12   Acebedo and  Zabriskie, I want to hear -- is it Zabrowski (ph.)

13   or Zabriskie?

14           MR. HODGES:  Zabriskie, Your Honor.

15           THE COURT:  Zabriskie.  I apologize for

16   mispronouncing.  With respect to Acebedo and  Zabriskie, I want

17   to hear from Ms. Aniel.  I certainly understand your argument

18   with respect to those two, and I want to hear what Ms. Aniel

19   has to say with respect to those two.  Okay?  And then I'll

20   give you a chance to respond.

21           Go ahead, Ms. Aniel.

22           MR. HODGES:  Thank you, Your Honor.

23           MS. ANIEL:  Hi.  Good --

24           THE COURT:  So I don't want to hear any argument with

25   respect to -- I've already heard in your favor with respect to

1  the three witnesses who are involved with the 2008 power of
2  attorney.  So just limit your remarks to Acebedo and  Zabriskie.
3       MS. ANIEL:  Yes, Your Honor.  That family (sic) of
4  Fernando Acebedo and  Audrey Zabriskie, it's important, Your
5  Honor, because I found out that by the time the 2013 limited
6  power of attorney was also -- that Audrey Zabriskie's notary
7  was already expired by the time it was -- it was filed by the
8  debtors.  Okay?  Because --
9       THE COURT:  The 2013 power of attorney is not even
10  coming into evidence.  It's not relevant to the claims.  The
11  claims -- the issues to be tried are set forth in the pre-trial
12  order, proposed pre-trial order, which shall be entered.  We'll
13  talk about it later.  But the 2013, I've already ruled and
14  repeated that the 2013 power of attorney two years after the
15  assignment is of no force or effect, and I'm not going to
16  permit testimony in the trial about the 2013 power of attorney.
17  So I don't see what the relevance of Acebedo and  Zabriskie is.
18       MS. ANIEL:  It's relevant, Your Honor, because if I
19  did not object that plaintiff taking power of attorney, then
20  they would not -- they would not file another 2008 power of
21  attorney, because at the time of the hearing I objected that
22  2013 the Trust, the main trust on that exceeded what's not on
23  there.  That's why you order the counsel to produce a document
24  to authorize Mira Smoot to -- if she has an authority, she has
25  the authority.

1          And you have to remember, Your Honor, that 2013 also

2    POA of attorney is also a fraudulent fabricated document,

3    because some -- so it's very important, because my cause of

4    action survive on the fraud concealment, so until now they

5    still filed that fraudulent publicated (sic) documentation on a

6    notarized that has already been expired.

7          So what do we think about 2008?  Because 2008 will

8    never be submitted if the 2013 I did not object to that 2013.

9    And then I found out that Zabriskie's notary has already been

10   expired since 2011.  I got notice from State of New York that

11   it was expired as of 2011.

12         So it's very relevant, because Fernando Acebedo, I

13   don't believe Fernando Acebedo did that power of attorney.  And

14   if he's the vice president of the corporate trust department in

15   HSBC, he should known because -- also I found out that GMAC,

16   the debtor, is no longer exist, because at that time of the

17   valid -- June, 2013 almost everything loans was transferred to

18   Ocwen.  So how could that power of attorney would be able to

19   give to GMAC, when GMAC is no longer exist?

20         So now it's collaborate -- it correlates with the 2008

21   power of attorney.  You know, it really has to -- it's just the

22   same; the wording's just the same.  I just want the Court to

23   know that this thing happened -- still happening today, that

24   they're still filing a fraudulent and fabricated documentation.

25   Just to prove to the Court that, yes, I am right, I found out

1  that -- that this is a fraudulent document.  That's why it's

2  very important, you know, to find out if these five employees

3  really signed the power of attorney.

4          THE COURT:  All right, thank you very much.

5          MS. ANIEL:  And if you have to --

6          THE COURT:  Ms. Aniel, thank you very much.  I've

7  heard your argument.

8          The --

9          MS. ANIEL:  Thank you very much, Your Honor.

10          THE COURT:  -- application to quash the subpoenas to

11  Acebedo and Zabriskie is granted.  They do not have to --

12  Acebedo and Zabriskie do not have to appear for trial.

13          Ms. Aniel, I'm just telling you right now, I'm not

14  going to hear any evidence about the 2013 power of attorney,

15  which was after this bankruptcy commenced.  The issue that's

16  relevant was defined as one of the issues to be tried, in issue

17  number 1 on page 16 of the proposed pre-trial order, is whether

18  Mira Smoot had sufficient authority to execute the 2011

19  assignment as an authorized officer of HSBC.  The 2008 power of

20  attorney has been proffered by the trust as the basis for

21  Smoot's authority to do so.  The Court will have to determine

22  that at the time of trial.  The other three witnesses are all

23  relevant and material to the 2008 power of attorney and they'll

24  have to appear at trial; Acebedo and Zabriskie will not; the

25  subpoena is quashed as to them.

1       Ms. Aniel, I just want to make clear -- we'll shift to
2  the pre-trial conference in a moment, try and resolve any of
3  the remaining issues -- I think you understand, because it
4  bears -- and you have a disagreement with the trust, about what
5  the length of the trial is.  I do timed trials with limits on
6  each side.  We'll come to what that time period should be.  I
7  will put appropriate limitations on any examination you conduct
8  of the witnesses, when they appear.  Your questions have to
9  seek relevant material facts relating to the issues to be
10  tried.
11       Are you an attorney, Ms. Aniel?
12       MS. ANIEL:  No, I'm not, Your Honor.
13       THE COURT:  Okay.
14       MS. ANIEL:  I'm not.
15       THE COURT:  I must say, the letter that you filed
16  yesterday and that I've certainly considered in connection with
17  the discovery dispute, appears to have been prepared by a
18  lawyer.  Did you have a lawyer who prepared the letter for you?
19       MS. ANIEL:  No, Your Honor.
20       THE COURT:  Did a lawyer --
21       MS. ANIEL:  I just, you know, researched.
22       THE COURT:  Did --
23       MS. ANIEL:  I have been -- I've been researching this
24  for seven years, the case.  I read court opinion (sic).  I read
25  everything about foreclosure.

1          THE COURT:  Uh-huh.

2          MS. ANIEL:  And I think I'm -- I sound like -- I write

3    like an attorney, but I did -- my whole life, Your Honor, for

4    seven years, it's only what I did in my life; that's why --

5          THE COURT:  Okay.

6          MS. ANIEL:  -- it cost me illness, because --

7          THE COURT:  That's fine.

8          MS. ANIEL:  -- I have no attorney to represent me.

9          THE COURT:  You don't have to have an attorney, to

10   appear here.  Just, when I read the letter, which has numerous

11   citations to law and arguments, it appeared to me that an

12   attorney prepared or -- did an attorney assist in preparing the

13   letter?  Because I actually have rules about --

14         MS. ANIEL:  I didn't hear Your Honor.

15         THE COURT:  There actually are rules about so-called

16   shadow counsel who don't file an appearance in a case,

17   participating.  It looked to me that in the four-page letter

18   that you sent to the Court on February 23rd, that it was either

19   drafted by -- or a lawyer assisted in the preparation.  And

20   you're telling me that no lawyer assisted in the preparation of

21   the letter?

22         MS. ANIEL:  No, Your Honor, no.  I did it on my own.

23         THE COURT:  Okay.  That's fine.

24         All right, so with respect to -- so the Court has now

25   ruled with respect to the subpoenas.

1          And, Mr. Hodges, you're free to stay or go, whichever

2     you --

3          MR. HODGES:  Your Honor, may I make one request to

4     the --

5          THE COURT:  Yes.

6          MR. HODGES:  -- with respect to your ruling, which I

7     certainly understand and appreciate.

8          There are three witnesses that are being called for

9     this one document, the 2008 limited power of attorney.  One

10    witness signed in the capacity of the representative of HSBC.

11    The other two were merely witnesses to the document.

12         THE COURT:  They all need to be here for trial,

13    Mr. Hodges.  Ms. Aniel has served valid trial subpoenas on

14    them; she's explained in her letter to the Court, in response

15    to your letter, I think, what appears to be relevant and

16    material evidence that may be provided by the witnesses.  And I

17    am not going to limit at this time either the questioning --

18    I'm making it very clear that at the time they're called as

19    witnesses, as I do in every trial, I limit the testimony to

20    matters that are relevant and material to the issues at trial;

21    that'd be done with respect to HSBC witnesses, it'd be done

22    with respect to any other witnesses, as well.

23         So just have your witnesses here for trial.  Thank

24    you.

25         MR. HODGES:  Understood.  Thank you, Your Honor.

1        THE COURT:  Particularly Ms. Aniel as the claimant

2   would have been first, so put her case on first.  And so she's

3   calling the witnesses and I'm mindful of people -- it's not

4   necessarily the most convenient for people to have to appear

5   for trial, but they'll have to appear.

6        Okay, thank you very much, Mr. Hodges.

7        MR. HODGES:  Thank you, Your Honor.

8        THE COURT:  All right, Mr. Wishnew --

9        MS. ANIEL:  Your Honor, can I say something, Your

10  Honor?

11       THE COURT:  No, we're done on that.  We're moving on

12  to the pre-trial order.

13       Okay, Mr. Wishnew, go ahead.

14       MR. WISHNEW:  Thank you, Your Honor.  Your Honor, I

15  believe there are really two issues to be resolved as it

16  relates to the form of pre-trial order; the first, Your Honor,

17  is, as you previewed, the time of the trial and the time being

18  allocated to each party.

19       THE COURT:  Yes, you've asked for a total of six

20  hours, allocated three hours to each side, and Ms. Gosselin has

21  asked for a total of twelve hours, six hours to each side.

22       MR. WISHNEW:  Ms. Aniel, yes.

23       THE COURT:  Ms. Aniel.  I'm sorry.  My apologies.

24  Ms. Aniel.  Let's --

25       MR. WISHNEW:  Your Honor --

1    THE COURT:  I want to hear from both sides.  I'll deal

2  with the time for trial as a final matter, but --

3    MR. WISHNEW:  I would say, Your Honor, our case will

4  be fairly brief.  We'll be introducing two witnesses:

5  Ms. Priore as a representative of the Borrower Claims Trust and

6  Liquidating Trust; her testimony will be limited to essentially

7  the extent of the trust contentions set forth in the pre-trial

8  order.  And then we will also have Ms. Smoot, and Ms. Smoot's

9  testimony will really be limited to the scope of the

10  declaration that was docketed in the case, at docket number

11  9563, in which she affirms her signature on the 2008 power of

12  attorney and talks about the authority.

13    So our case will be very brief.  We honestly do not

14  believe we need more than the three hours that we've used in

15  other matters.  And given the limited scope of contested issues

16  here, we believe three hours is more than adequate for the

17  claimant to put on her case of relevant evidence in support of

18  why she does have a valid plan.

19    THE COURT:  Let me ask, Mr. Wishnew, are -- obviously,

20  discovery is concluded at this point.

21    MR. WISHNEW:  Yes, Your Honor.

22    THE COURT:  Have you taken Ms. Aniel's deposition?

23    MR. WISHNEW:  We have not, Your Honor.

24    THE COURT:  And --

25    MR. WISHNEW:  Oh, I'm sorry.  Correction, Your Honor.

1    No, we have not.  Ms. Aniel took Ms. Priore's deposition.

2            THE COURT:  Okay.

3            MR. WISHNEW:  But we did not take Ms. Aniel's

4    deposition.

5            THE COURT:  All right.  When I reviewed the proposed

6    pre-trial order, Mr. Wishnew, the claimant's description of the

7    nature of the case frankly seemed to go well beyond the issues

8    that are defined for trial.  The stipulated facts are quite

9    limited.  The claimant's contentions, which are at pages 13

10   through the very top of page 15, in some respects appear to go

11   beyond the issue for trial.  For example, and I've already made

12   this clear, paragraph 15 of Ms. Aniel's contentions -- it's on

13   page 14 of the pre-trial order -- deals with the 2013 power of

14   attorney; and I'm making clear that that's not at issue in the

15   trial.

16           So I'm not going to go through the pre-trial order and

17   strike specific paragraphs, but I want to make clear to both

18   sides the evidence at trial will be limited to the issues that

19   are relevant and material to the issues to be tried.

20           Have you received Ms. Aniel's -- you had indicated you

21   hadn't received Ms. Aniel's exhibits yet.  Have you received

22   them?

23           MR. WISHNEW:  We have not, Your Honor.

24           THE COURT:  Okay.  On page 20 of the pre-trial order,

25   under Roman XII at the bottom of the page, the trust proposed

RESIDENTIAL CAPITAL, LLC, ET AL.                    25

1   pre-trial deadlines.  Were you unable to agree with Ms. Aniel

2   about the proposed deadlines?

3           MR. WISHNEW:  Yes, Your Honor.  We proposed them as we

4   have with many other claimants, consistent with the Court's

5   form of pre-trial order, and I don't want to speak for

6   Ms. Aniel but she would not agree to that.

7           THE COURT:  All right, tell me why you wouldn't agree

8   to the -- the proposed deadlines and hearing dates, starting at

9   page 20 on to 21, are consistent with my general pre-trial

10  procedures; so tell me why they shouldn't be required here.

11          MS. ANIEL:  What page is that, Your Honor?  It says --

12  oh, we've been directed (indiscernible) with this.  Isn't that

13  we're supposed to go direct to the trial, Your Honor?  That's

14  why I contested that.

15          Hello?

16          THE COURT:  I'm here.  Yeah, I'm listening to you.

17          MS. ANIEL:  Yeah, isn't that supposed -- will -- will

18  go directly to the -- to the trial -- for the --

19          THE COURT:  No, but -- Ms. Aniel, I --

20          MS. ANIEL:  Uh-huh.

21          THE COURT:  When cases come to trial before me, all

22  the exhibits have been exchanged.  Anything that has not been

23  listed on your exhibit list is anything that you're not going

24  to be able to use.  And I require the written direct

25  testimony -- obviously you can't do that with respect to the

1    HSBC witness because you don't control them; so you can't do --

2    they'll have to testify live.  But with respect to your

3    proposed testimony, you need to prepare written testimony under

4    oath, as to what your proposed direct testimony will be.

5              MS. ANIEL:  Oh, okay.

6              THE COURT:  And --

7              MS. ANIEL:  Also, this is regarding on me, not on the

8    other witnesses.

9              THE COURT:  Well --

10             MR. WISHNEW:  I mean, it's whoever she's going to put

11   in as direct, Your Honor.

12             THE COURT:  So you can't control -- the witness list

13   you have is Ms. Priore, Ms. Smoot.  You obviously don't control

14   either of them.  You can't put in the written testimony --

15   they're going to be -- their testimony is going to be proffered

16   in writing by the trust; you'll have that.  And if you call

17   them as witnesses, you'll proceed with your cross-examination.

18             Obviously, with your testimony, you need to put that

19   in writing under oath.  And I've already determined that

20   Mr. Acebedo and Ms. Zabriskie are not going to be witnesses at

21   trial.

22             MS. ANIEL:  Okay.

23             THE COURT:  With respect to Wong, Luong and Moy, you

24   obviously can't offer their testimony in writing; you'll have a

25   chance to examine them -- if you call them as witnesses, you'll

1  examine them at trial.

2          The trust has listed Ms. Priore and Ms. Smoot and

3  it'll put their testimony in writing.  You'll be able to cross-

4  examine them.  They'll be able to -- the trust will be able to

5  do further examination of them.

6          I'm going to -- with respect to the portion of the

7  pre-trial order, on page 20, under Deadlines and Hearing Date,

8  the first sentence is going to be changed to "the following

9  deadlines apply" and so that the two bullet points there, the

10  deadline for the written testimony of March 9th, you have to

11  comply with that; the deadline for any pre-trial memorandum not

12  later than March 9th, you need to comply with that.

13          MS. ANIEL:  Yes.  Yes, Your Honor.  Yes, I'm --

14          THE COURT:  We're going forward with the -- we're

15  having -- I'm looking on page 21 now.

16          MS. ANIEL:  Okay.

17          THE COURT:  So the first two bullet points on the top

18  of page 21, they apply as well, as to how you have to deal with

19  exhibits.  And obviously we have the pre-trial conference now.

20          That brings us to the length of the trial.  Why do you

21  believe you need six hours for your portion of the case?

22          MS. ANIEL:  Because these three witnesses from HSBC, I

23  haven't had the time to depose them.  Okay, so I need more time

24  for them to -- to witness -- you know, to give their testimony

25  live.  I mean, I think two hour (sic) each, I think that --

1   that's -- that's an okay time for me to question them.

2       And also, the debtors has also two witnesses, which is

3   Kathy Priore and Mira Smoot.  And I don't know if they want --

4   they're going to call me.

5       THE COURT:  All right.  Mr. Wishnew, you want to say

6   anything further on the length of the trial?

7       MR. WISHNEW:  Yes, Your Honor.  Ms. Aniel's comment

8   really gives me some pause.  She says, well, I didn't get the

9   chance to depose these folks.  The fact of the matter is --

10      THE COURT:  I don't want to hear about depositions.

11  She's --

12      MR. WISHNEW:  No --

13      THE COURT:  She's entitled to --

14      MR. WISHNEW:  No --

15      THE COURT:  -- cross-examine witnesses.

16      MR. WISHNEW:  I understand that, Your Honor; however,

17  I don't want her cross-examination to devolve into a deposition

18  where she's going on a fishing expedition.  There're very

19  narrow, very limited issues here concerning one document.  I

20  don't believe she needs two hours per witness to address that.

21  So I really believe this can be done efficiently within the

22  three-hour period.

23      MS. ANIEL:  Your Honor, just one question.  Means if I

24  don't have enough time to cross-examine Mira Smoot and other

25  witnesses -- that would be the issue, Your Honor, that my --

1          THE COURT:  All right, I'm prepared to --

2          MS. ANIEL:  -- my proof of claim be expunged.

3          THE COURT:  Okay, I understand your position.

4          All right -- just bear with me a minute.

5      (Pause)

6          THE COURT:  All right, I'm going to set the timed

7    trial for a total of ten hours, five hours for each side, on

8    Thursday, March 24th.  We'll start at 9 a.m.  We'll break for

9    lunch at 12:30, and we'll go from 1:30 to 3:30.  There's a

10   little time for recess in there.  And we'll do the same thing

11   on Friday, March 25th.  It seems to me that -- I have my doubts

12   whether all that time is needed.

13         I think -- Mr. Wishnew, I think you, yourself, said

14   you believe you can do your side in three hours, and I hope you

15   can, but I'm allotting equal time to both sides.

16         So it's a total of ten hours for trial:  five hours

17   for each side.

18         Let me explain, Ms. Aniel; when I allocate you five

19   hours, it's for all aspects of the trial:  any opening

20   statement you wish to give, any direct, cross, or redirect

21   examination of witnesses, and any closing argument you wish to

22   make.  So my law clerks keep track of the time that you've

23   used.  I really don't think that ten hours is really needed,

24   but I'm mindful of the fact that you're not a lawyer.

25         I have said earlier that I keep close, tight reins on

1  what questions are asked of witnesses and what testimony comes

2  in, to make sure it focuses on the issues that have to be

3  tried.

4          MS. ANIEL:  Okay, Your Honor.

5          THE COURT:  Okay.  Let me just come back --

6          MS. ANIEL:  Can I add -- can I add more, Your Honor?

7  Just one thing.  I would like also to request to have the

8  document -- the original documents be brought to the -- could

9  we bring to the court.  I will list a document that needs to

10 get first to the -- bring to the court.

11         THE COURT:  You need to -- Ms. Aniel, as provided near

12 the top of page 21, not later than 5 p.m. Eastern time on March

13 16th you need to provide the Court with two copies of your

14 final witness list and exhibit list, pre-marked exhibits, any

15 exhibits that you wish to use; and they each need to be

16 numbered:  1, 2, 3, et cetera; exhibit numbers.  And they need

17 to be -- if they're voluminous, you need to put them either in

18 notebooks or tabbed; labeling goes there.  And one copy of the

19 witness list and exhibit list, and one set of exhibits, should

20 be provided to opposing counsel; that's by that deadline of

21 March 16th.

22         So, anything you want to use -- and you need to bring

23 one set of exhibits to the courtroom.  We don't have extra

24 copies.  The two sets that you have to provide to the Court,

25 one is for me to use and one is for my law clerks to use.  So

RESIDENTIAL CAPITAL, LLC, ET AL.                          31

1   you have to have your own set of the exhibits here.

2          So that's what's contained at the top of page 21.  The

3   deadline for providing that is March 16th.

4          Mr. Wishnew, you or one of your colleagues should make

5   sure you confer with Ms. Aniel ahead of time to make sure --

6          In order for this trial to take place, you're entitled

7   to your day in court.  And in the opinion, you have claims that

8   survived.  But you have to be -- I know you're not a lawyer,

9   but you have to be prepared to go forward consistent with the

10  Court's rules, and I want to be sure you do that.

11         MS. ANIEL:  I agree, Your Honor.

12         THE COURT:  Okay.  Mr. Wishnew, anything else you want

13  to raise now?

14         MR. WISHNEW:  No.  I mean, Your Honor, you confirmed

15  that Ms. Aniel will be putting on her case on first, so --

16         THE COURT:  Yeah, she has to put her case on first.

17         MR. WISHNEW:  Okay.  Think that's it, Your Honor.

18         THE COURT:  Okay.  All right, we're adjourned.

19         Thank you very much, Ms. Aniel.

20         MS. ANIEL:  Okay.  Thank you, Your Honor.  Thank you.

21         THE COURT:  All right.  You can disconnect.

22         This sound system is for the birds in here; we got to

23  get it fixed.

24      (Whereupon these proceedings were concluded at 10:47 AM)

25

```
 1
 2                          I N D E X
 3
 4                          RULINGS
 5                                           PAGE     LINE
 6   Application to quash the subpoenas of     15       11
 7   Susie Moy, Nancy Luong, and Doris Wong
 8   is denied
 9   Application to quash the subpoenas of     18       11
10   Fernando Acebedo and Audrey Zabriskie
11   is granted
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

33

1

2                          C E R T I F I C A T I O N

3

4    I, Hana Copperman, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8    _Hana Copperman_

9

10   _____

11   HANA COPPERMAN

12   AAERT Certified Electronic Transcriber CET**D 487

13

14   eScribers

15   700 West 192nd Street, Suite #607

16   New York, NY 10040

17

18   Date:  February 26, 2016

19

20

21

22

23

24

25