**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE RESIDENTIAL CAPITAL, LLC, *et al.* ) | No. 12-12020 |
| ) | |
| D.B. STRUCTURED PRODUCTS, INC., *et al.*, ) | |
| ) | |
| Movant-Defendants, ) | No. 15-mc-410-P1 |
| ) | |
| v. ) | |
| ) | |
| ALLY FINANCIAL, INC., ) | |
| ) | |
| Respondent. ) | |

**ALLY FINANCIAL, INC.'S SUPPLEMENTAL MEMORANDUM OF LAW IN
OPPOSITION TO MOVANT-DEFENDANTS' MOTION TO COMPEL COMPLIANCE
WITH SUBPOENA ISSUED TO ALLY FINANCIAL, INC.**

1

At the Court's request, Ally Financial, Inc. ("AFI") hereby submits this Supplemental Memorandum of Law in Opposition to Movant-Defendants' Motion to Compel Compliance with Subpoena Issued to Ally Financial, Inc. (the "Motion") and Movant-Defendants' Memorandum of Law in Support of Motion to Compel Compliance with Subpoena Issued to Ally Financial, Inc. (the "Memorandum").[1]  In further response to the Motion and Memorandum, AFI respectfully states as follows:

## BACKGROUND

**A.    Movant-Defendants' Motion[2]**

This matter arises out of a global settlement of the Chapter 11 bankruptcy of Residential Capital, LLC ("ResCap") and its direct and indirect subsidiaries (collectively, the "Debtors"), against which creditors had asserted hundreds of billions of dollars in claims.  Beginning in December 2012, numerous entities participated in a mediation ordered by this Court.[3]  That mediation spanned five months and involved more than twenty different creditors and creditor groups, including AFI.[4]

During the mediation, the parties successfully negotiated a settlement of a large portion of the claims, which was supported by a majority of the creditor constituencies, and the Court

---

[1]  Movant-Defendants filed the Motion and Memorandum in the U.S. District Court for the Southern District of New York (the "District Court").  *See Deutsche Bank Structured Prods., Inc. v. Ally Fin., Inc.*, No. 1:15-mc-00410-P1 (S.D.N.Y. Dec. 18, 2015), ECF Nos. 1 & 2.

[2]  For purposes of efficiency, AFI has restated in this one brief both the relevant background and argument concerning Movant-Defendants' request for AFI's Examiner Production.

[3]  *See* Decl. of William T. Russell, Jr. in Supp. of Defs.' Mot. to Compel Compliance with Subpoena Issued to Ally Financial, Inc. ("Russell Decl.") at Ex. I, Order Appointing Mediator, *In re Residential Capital, LLC*, No. 12-12020-mg (Bankr. S.D.N.Y. Dec. 26, 2012), ECF No. 2519.

[4]  *See* Decl. of Joseph Serino, Jr. in Supp. of Ally Financial, Inc.'s Mem. of Law in Opp'n to Mot. to Compel Compliance with Subpoena Issued to Ally Financial, Inc. ("Serino Decl.") at Ex. 1, Findings of Fact ¶¶ 1, 71, 75-77, *In re Residential Capital, LLC*, No. 12-12020-mg (Bankr. S.D.N.Y. Dec. 11, 2013), ECF No. 6066.

2

was required to conduct a trial only on limited issues and objections.[5] After further mediation, an additional settlement was reached with certain objectors.[6] The Court confirmed the Debtors' Chapter 11 Plan on December 11, 2013.[7]

Following confirmation, the ResCap Liquidating Trust brought lawsuits against mortgage loan originators—including Movant-Defendants—for indemnification of alleged losses incurred by Residential Funding Company ("RFC")—a ResCap subsidiary—due to alleged defects in loans RFC purchased from the originators. (Mem. at 5.) In connection with this litigation, Movant-Defendants—non-parties to the ResCap bankruptcy proceeding—now seek discovery from AFI of broad categories of documents that are not relevant, are not proportional to the needs of the case, or are unduly burdensome to produce.

On May 11, 2015, Movant-Defendants served AFI with a Rule 45 subpoena (the "Subpoena") seeking seventeen broad categories of documents.[8] AFI objected to the Subpoena and the parties met and conferred on three occasions in an attempt to avoid Court intervention.[9] During this time, defendants in the indemnification actions filed a motion to modify the Court's December 2012 Mediation Order to allow discovery of confidential mediation communications, which the Court denied in a comprehensive order entered on August 28, 2015. *See In re Residential Capital, LLC*, 536 B.R. 132 (Bankr. S.D.N.Y. 2015).

---

[5] *See id*. ¶¶ 1, 5-6.

[6] *See id*. ¶ 7.

[7] *See* Serino Decl. Ex. 2, Order Confirming Second Am. Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors, *In re Residential Capital, LLC*, No. 12-12020-mg (Bankr. S.D.N.Y. Dec. 11, 2013), ECF No. 6065.

[8] Russell Decl. Ex. N, Subpoena to Produce Docs., Info., or Objects or to Permit Inspection of Premises in a Civil Action to Ally Financial, Inc. (May 8, 2015).

[9] *See*, *e.g.*, Russell Decl. Ex. O, Letter from D. Donovan to D. Woll (May 20, 2015); Russell Decl. Ex. Q, Letter from J. Parish to R. Gallo (Sept. 29, 2015).

3

Each time the parties met and conferred, counsel for AFI requested that, in light of the Subpoena's broad requests, Movant-Defendants provide additional guidance as to the specific categories of documents needed from AFI (particularly in light of the substantial productions by plaintiffs and available public information).[10] Counsel for AFI additionally asked Movant-Defendants why they did not seek the requested documents from RFC or third parties that actually received the amounts for which plaintiffs are seeking indemnification.[11]

On October 7, 2015, Movant-Defendants asked AFI to prioritize the production of three categories of documents (encompassing seven of the requests in the Subpoena) but expressly refused to narrow the scope of the Subpoena or identify specific categories of documents needed from AFI.[12] On October 16, 2015, Movant-Defendants changed their approach and agreed to "narrow" the Subpoena to five categories of documents:

1. Documents and Communications to or from Ally's risk officer or other individual(s) charged with responsibility for assessing risk for RFC, including Documents concerning Ally's assessment of RFC's liabilities or potential liabilities.

2. Documents and Communications concerning pre-mediation discussions between Ally and any Debtors and/or creditors concerning settlements of RMBS claims, excluding documents that are subject to Judge Glenn's August 28, 2015 Order. This would include, but is not limited to, Documents concerning Ally's third-party release provided in connection with any RMBS settlements and/or the Global Settlement.

3. Documents and Communications concerning the Ally Contribution to the bankruptcy settlement, and any inter-company balances, among Ally and Debtors, that may have been cancelled or off-set as part of the bankruptcy settlement.

4. All Documents produced by Ally to the Examiner in the ResCap Bankruptcy.

---

[10] *See, e.g.*, Russell Decl. Ex. Q, Letter from J. Parish to R. Gallo (Sept. 29, 2015).

[11] *See id.*

[12] *See* Russell Decl. Ex. R, Letter from R. Gallo to J. Parish (Oct. 7, 2015).

4

    5.    All Documents and Communications concerning the negotiation or drafting of the Plan Support Agreement.[13]

One week later, on October 23, 2015, AFI responded that while it "welcome[d]" Movant-Defendants' proposal, Movant-Defendants' revised document requests remained problematic:

> While we welcome Defendants' attempt to focus their requests, the categories of documents set out in your letter remain problematic. Many of the requested documents are subject to the attorney-client privilege. Others, such as communications between Ally and Debtors concerning [the] settlement (*see* Request No. 2) are equally available from Debtors, who—unlike Ally—are parties to the indemnification actions. Still others, such as documents and communications concerning the Ally contribution to the bankruptcy settlement (*see* Request No. 3) and documents and communications concerning the negotiation and drafting of the Plan Support Agreement (*see* Request No. 5) are subject to Judge Glenn's confidentiality order. And, many of the requested documents are not relevant to the claims in the indemnification actions.[14]

Notwithstanding these concerns, AFI asked to proceed with a telephone conference with Movant-Defendants and other defendants in the indemnification actions, which Movant-Defendants had first proposed in July 2015.[15] The purpose of this conference was to identify with greater specificity what, if any, documents AFI has that (1) had not been produced by plaintiffs in the indemnification actions, and (2) are relevant to the indemnification actions.[16] However, on October 28, 2015, Movant-Defendants declined to proceed with their proposed conference and terminated the meet-and-confer process.[17]

On December 18, 2015, Movant-Defendants initiated this action and filed their Motion in the District Court. Subsequently, the District Court granted AFI's motion to transfer this action

---

[13]   *See* Russell Decl. Ex. S, Letter from R. Gallo to J. Parish (Oct. 16, 2015).

[14]   *See* Russell Decl. Ex. T, Letter from J. Parish to R. Gallo (Oct. 23, 2015).

[15]   *See id.*

[16]   *See id.*

[17]   *See* Serino Decl. Ex. 4, Email from R. Gallo to J. Parish (Oct. 28, 2015).

to this Court.[18] On April 1, 2016, the Court requested that the parties file supplemental briefs concerning Movant-Defendants' request that AFI produce "[a]ll documents" it provided to the ResCap Bankruptcy Examiner (the "Examiner").

**B.    AFI's Examiner Production**

On June 4, 2012, Berkshire Hathaway, one of the Debtors' creditors, requested that the Bankruptcy Court appoint an examiner in the Debtors' Chapter 11 cases:

> to investigate and report on the actions of Residential Capital, LLC ("ResCap") and its affiliated debtors (collectively with ResCap, the "Debtors"), including, without limitation, the Debtors' prepetition transactions with Ally Financial Inc. ("Ally"), any claims that the Debtors may hold against their officers or directors, any claims the Debtors may hold against Ally's officers and directors, and any claims that the Debtors propose to release as a part of their plan.[19]

In June, July, and August 2012, the Court entered a series of orders appointing the Hon. Arthur Gonzales (ret.) as Examiner and granting him broad authority to conduct an investigation pursuant to Bankruptcy Code section 1104(c).[20] Over the next ten months, the Examiner

---

[18] *See* Order Granting Motion to Remand to Bankruptcy Court, *Deutsche Bank Structured Prods., Inc. v. Ally Fin., Inc.*, No. 1:15-mc-00410-P1 (S.D.N.Y. Feb. 25, 2016), ECF No. 34.

[19] *See* Mot. of Berkshire Hathaway Inc. for the Appointment of an Examiner Pursuant to 11 U.S.C. § 1104(c), *In re Residential Capital, LLC*, No. 12-12020-mg (Bankr. S.D.N.Y. June 4, 2012), ECF No. 208.

[20] *See, e.g.*, Mem. Op. & Order Granting Berkshire Hathaway's Mot. to Appoint an Examiner Under 11 U.S.C. 1104(c), *In re Residential Capital, LLC*, No. 12-12020-mg (Bankr. S.D.N.Y. June 20, 2012), ECF No. 454; Order Directing the Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code, *In re Residential Capital, LLC*, No. 12-12020-mg (Bankr. S.D.N.Y. June 28, 2012), ECF No. 536; Order Approving Scope of Investigation of Arthur J. Gonzalez, Examiner ("Examiner Scope Approval Order"), *In re Residential Capital, LLC*, No. 12-12020-mg (Bankr. S.D.N.Y. July 27, 2012), ECF No. 925; Order (I) Granting Examiner Authority to Issue Subpoenas for the Produc. of Docs. and Authorizing the Examination of Persons and Entities, (II) Establishing Procedures for Responding to Those Subpoenas, (III) Approving Establishment of a Doc. Depository and Procedures to Govern Use, and (IV) Approving Protective Order, *In re Residential Capital, LLC*, No. 12-12020-mg (Bankr. S.D.N.Y. Aug. 20, 2012), ECF No. 1223; Uniform Protective Order for Examiner Disc., *In re Residential Capital, LLC*, No. 12-12020-mg (Bankr. S.D.N.Y. Aug. 20, 2012), ECF No. 1223-1.

6

requested and reviewed almost nine million pages of documents, conducted ninety-nine interviews with eighty-three different witnesses, and held sixty-six meetings with interested parties.[21] Ultimately, on May 13, 2013, the Examiner produced a 2,200 page report detailing his conclusions.[22]

As a part of his investigation, the Examiner subpoenaed documents from AFI (among other parties) and AFI ultimately produced nearly one million pages of material (the "Examiner Production").[23] AFI understands that Movant-Defendants contend that the Examiner Production is relevant here because (i) the indemnification actions concern the reasonableness of the ResCap bankruptcy settlement, which included resolution of RMBS claims against the Debtors, and (ii) the Examiner's investigation included an assessment of these RMBS claims.[24] But, as set out in the Court's July 27, 2012 Examiner Scope Approval Order, this assessment was only one of several matters considered by the Examiner during his "exceptionally broad" investigation.[25]

This is evidenced by the Examiner's document requests to AFI and the breadth of topics addressed by the documents AFI ultimately produced. During the summer and fall of 2012, the Examiner served AFI with eighty separate requests for documents.[26] Of these eighty requests,

---

[21] *See* Report of Arthur J. Gonzalez, as Examiner ("Examiner Report"), *In re Residential Capital, LLC*, No. 12-12020-mg (Bankr. S.D.N.Y. May 13, 2013) at I-4.

[22] *See generally id.*

[23] *See* Decl. of Jason R. Parish in Supp. of Ally Financial, Inc.'s Suppl. Mem. of Law in Opp'n to Mot. to Compel Compliance with Subpoena Issued to Ally Financial, Inc. ("Parish Decl.") ¶ 7.

[24] *See* Examiner Scope Approval Order at Ex. A ¶ 10 (stating that the Examiner will investigate, among other matters, "all state and federal law claims or causes of action the Debtors propose to release or to be released as part of their plan . . . .").

[25] *See id.* at Ex. A ¶ 10; Examiner Report at I-4.

[26] *See* Parish Decl. Ex. 1, Subpoena for Rule 2004 Examination to Ally Financial, Inc. (June 11, 2012); Parish Decl. Ex. 2, Schedule of Docs. Requested by Examiner (Sept. 4, 2012); Parish

only a small number expressly address RMBS claims against the Debtors. The other address a variety of other topics, including board materials, the corporate organization of AFI and its relationship with the Debtors, documents concerning prepetition transactions, documents concerning the Debtors' financial condition and AFI's efforts to sell the Debtors, and documents concerning AFI's plans and projections for the Debtors' business. Reflecting this, out of the approximately 105,000 documents AFI produced to the Examiner (totaling more than 948,000 pages) only 4,760 documents (44,403 pages) were produced in response to the Examiner's requests for documents concerning RMBS claims against the Debtors.[27]

## ARGUMENT

This Court should deny Movant-Defendants' request for AFI's Examiner Production for three separate, but related reasons. *First*, Movant-Defendants have not established that the Examiner Production—whether taken as a whole or only the small portion that concerns RMBS claims against the Debtors—is relevant to the indemnification actions. *Second*, Movant-Defendants' request for "*[a]ll* documents" produced by AFI to the Examiner is both overbroad and unduly burdensome, and it is not proportional to the needs of the case. *Third*, the Court should uphold the promise of confidentiality on which AFI relied in producing documents to the Examiner.

**I.    THE COURT SHOULD DENY MOVANT-DEFENDANTS' REQUEST FOR AFI'S EXAMINER PRODUCTION.**

   **A.    Movant-Defendants Have Not Established That the Examiner Production Is Relevant.**

---

Decl. Ex. 3, Schedule of Docs. Requested by Examiner (Sept. 13, 2012); Parish Decl. Ex. 4, Schedule of Docs. Requested by Examiner (Sept. 28, 2012).

[27]   *See* Parish Decl. ¶ 7.

Movant-Defendants have acknowledged that they bear the burden of demonstrating that the requested documents are relevant. (*See* Reply Mem. of Law in Supp. of Defs.' Mot. to Compel Compliance with Subpoena Issued to Ally Financial, Inc. at 3 ("Defendants have more than met their burden to show the relevance of the Requests . . . .").) *See also Allison v. Clos-ette Too, L.L.C.*, No. 14 Civ. 1618(LAK)(JCF), 2015 WL 136102, at *8 (S.D.N.Y. Jan. 9, 2015) ("The burden of demonstrating relevance is on the party seeking discovery."). Yet, Movant-Defendants have not once, in any filing to date, provided any explanation of why or how AFI's Examiner Production is relevant to the indemnification actions between RFC and its clients.

As set out above, AFI understands that Movant-Defendants contend that AFI's Examiner Production is relevant because the Examiner's investigation included an assessment of RMBS claims against the Debtors, and these claims are the basis for the indemnification action.[28] This is wrong for several reasons. At the outset, only a small part of the Examiner Production concerns RMBS claims against the Debtors—only 44,000 pages out of 948,000 produced to the Examiner.[29] Even if this small subset of documents is relevant (and it is not, for the reasons

---

[28] This understanding is based in part on statements in briefing filed by defendants in connection with their motion to compel the production of documents from non-party MBIA Insurance Corporation. *See, e.g.*, Mem. of Law in Supp. of Defs.' Mot. to Compel Compliance with Third-Party Subpoena Issued to MBIA Insurance Corp., *In re RFC & ResCap Liquidating Trust Litig.*, No. 1:16-mc-00063-P1 (S.D.N.Y. Feb. 16, 2016), ECF No. 2.

AFI understands that MBIA produced to defendants at least some of the documents it provided to the Examiner. *See id.* at 5. AFI expects Movant-Defendants may reference MBIA's production to support their argument that AFI should also produce documents provided to the Examiner. However, there are fundamental differences between MBIA and AFI: MBIA's involvement in the Chapter 11 cases concerned its status as a plaintiff in RMBS-related litigation against the Debtors. *See id.* at 2-4. As the Debtors' former parent, AFI's involvement in the Chapter 11 cases was much broader. Thus, while many or most of the documents MBIA provided to the Examiner likely addressed RMBS claims against the Debtors, only a small portion of the documents AFI provided to the Examiner addressed these claims.

[29] *See* Parish Decl. ¶ 7.

9

explained below), Movant-Defendants have not demonstrated that the balance of AFI's Examiner Production—the more than 900,000 pages that address other matters—has any relevance whatsoever to the indemnification actions.

In any event, even the 44,000 pages produced in response to the Examiner's requests for documents concerning RMBS claims against the Debtors are not relevant to the indemnification actions. Movant-Defendants offer no basis for their apparent contention these documents concern loans that were sold by defendants and certainly nothing that would inform the question of whether defendants must indemnify the plaintiffs. Second, Minnesota law governs Movant-Defendants' indemnification claims and, under Minnesota law, "RFC alleges and must prove that the RMBS settlement for which it seeks indemnification from Defendants was reasonable." (Mem. at 5 (citation omitted).) That is:

> In the case of one party seeking indemnity from another for a settlement "entered into before trial . . . , the party seeking indemnification must show the settlement was reasonable and prudent." What is reasonable and prudent "involves a consideration of the facts bearing on the liability and damage aspects of plaintiff's claims, as well as the risks of going to trial." The party seeking indemnification need only show it **could have** been liable under the facts shown at trial not whether they **would have** been.

*Jackson Nat'l Life Ins. Co. v. Workman Sec. Corp.*, 803 F. Supp. 2d 1006, 1012 (D. Minn. 2011) (alterations in original) (citations omitted).

Under Minnesota law, the "reasonableness" of a settlement is assessed under an objective standard. *See id.*; *Vetter v. Subotnik*, 844 F. Supp. 1352, 1355 (D. Minn. 1992) ("Because the test is objective, the Court does not ask whether the defendant believed the settlement to be reasonable at the time he entered into it. Instead, the Court . . . determines whether a reasonably prudent person would have settled under the circumstances."), *aff'd sub nom. McNicholes v. Subotnik*, 12 F.3d 105 (8th Cir. 1993). Under this objective standard, courts have held that relevant evidence may include "verdicts in comparable cases, the likelihood of favorable or

10

unfavorable rulings on legal defenses and evidentiary issues if the . . . action had been tried, and other factors of forensic significance." *Alton M. Johnson Co. v. M.A.I. Co.*, 463 N.W.2d 277, 279 (Minn. 1990). Last August, this Court applied this standard when assessing defendants' motion to allow discovery of communications exchanged during the course of the ResCap bankruptcy mediation, concluding that "[c]ommunications bearing on parties' subjective beliefs regarding the reasonableness of the Global Settlement are not necessary to determine the reasonableness of the settlement under an objective standard." *In re Residential Capital, LLC*, 536 B.R. at 148.

For similar reasons, AFI's documents and communications concerning RMBS claims are not relevant here—these documents do not concern the narrow question of whether RFC "could have" been liable for the amounts it paid to settle RMBS claims. Like Movant-Defendants' other document requests, their request for AFI's Examiner Production is directed to AFI's subjective beliefs and assessment of the ResCap bankruptcy settlement. (*See* Opp'n at 10-11.) Accordingly, the Court should deny Movant-Defendants' request for the Examiner Production.

### B.  Movant-Defendants' Request for AFI's Examiner Production Is Overbroad.

"Rule 26(b)(2)(C) was clearly designed to allow a court to intervene and prevent an overly broad search request . . . ." *Tucker v. Am. Int'l Grp., Inc.*, 281 F.R.D. 85, 93 (D. Conn. 2012). Movant-Defendants' request for "[a]ll documents" AFI produced to the Examiner is not limited to documents from any particular custodian(s), regarding any particular topic(s), or from any particular range of dates. Given the broad scope of the Examiner's investigation and AFI's correspondingly broad document production, the request is grossly overbroad, and it is not proportional to the needs of the case. *See Copantitla v. Fiskardo Estiatorio, Inc.*, No. 09 Civ. 1608(RJH)(JCF), 2010 WL 1327921, at *8, *11 (S.D.N.Y. Apr. 5, 2010) (terming as "grossly overbroad" requests for, *inter alia*, "[a]ll documents concerning the business, financial,

11

employment, and/or any other relationship between' the Fantis Companies and Fiskardo"); *Franzon v. Massena Mem'l Hosp.*, 189 F.R.D. 220, 222 (N.D.N.Y. 1999) ("Request 91 is overbroad in that it seeks 'any and all documents' and provides no meaningful limitations. This request should be limited to the past five years and only to records pertaining to the Hospital."); *Badr v. Liberty Mut. Grp., Inc.*, No. 3:06CV1208 (AHN), 2007 WL 2904210, at *3 (D. Conn. Sept. 28, 2007) ("[D]efendant seeks 'any and all records relating to' the plaintiff, not just documents that pertain directly to whether she filed a claim or complaint against a manager at Enterprise. The subpoena, as it is currently drafted, is overly broad." (citations omitted)); *Koch v. Pechota*, No. 10 Civ. 9152, 2012 WL 4876784, at *3 (S.D.N.Y. Oct. 12, 2012) ("[S]ome of Plaintiffs' demands are without limitations as to the relevant period of time or to categories of documents that are material to their action against the Pechota Defendants.").

Movant-Defendants' request also presents an undue burden because it seeks cumulative evidence. As set out above, in May 2013, the Examiner produced a 2,200-page report detailing his conclusions, which included an extensive assessment of RMBS claims against the Debtors. Additional extensive evidence concerning these claims—and the reasonableness of the ResCap bankruptcy settlement—was introduced in multiple hearings and two trials in the Bankruptcy Court.[30] The Phase I trial lasted six days and included written testimony from thirteen witnesses

---

[30] As RFC explained in its response to the indemnification defendants' motion to modify the Mediation Order:

> If the previously-produced materials were sufficient for this Court to assess reasonableness, why are they insufficient for Defendants now? Plaintiffs have produced written testimony, exhibits, briefing, proofs of claim, and settlement agreements that were before the [Bankruptcy] Court at confirmation, and are in the process of producing related hearing transcripts, comprising the entire record on which this Court previously relied. That is not all. As to *claims* at issue, Plaintiffs have produced pre-petition pleadings, depositions, expert reports, and document productions; as to *securitizations* at issue, Plaintiffs are in the process of producing

and the admission of more than 700 exhibits.[31]  During a five-day hearing on plan confirmation and Phase II trial issues in November 2013, the Court admitted into evidence the written testimony of thirty-one witnesses and the parties submitted more than 900 exhibits into evidence.[32]  Much more documentation concerning the ResCap bankruptcy and the settlement is in the public record and available on the Court's docket.

While Movant-Defendants speculate that there may be additional documents they have not yet received and that AFI may possess (*see* Mem. at 15), Movant-Defendants have failed to appropriately focus their requests on such documents.  Movant-Defendants instead seek to embark on a broad fishing expedition, for which AFI will bear the business and financial costs.  *See Tucker*, 281 F.R.D. at 94 (holding that a party that "speculates, rather than knows of, the existence of the emails [it] seeks" weighs against compelling production because "in balancing the interests of the parties with respect to the discovery sought under Rule 26(b)(2), the likelihood of finding the information sought remains in doubt" (emphasis omitted)).

---

closing binders and other materials; and as to ***loans*** at issue, Plaintiffs have produced massive quantities of documents (or pointed Defendants to publicly-available data) including Ocwen Vision Investor reporting data with losses by loan for RMBS Trusts, loan tapes (at issuance) for each RMBS Trust, loan files for at-issue loans, and the Seller Contracts and RFC Client Guide for each Defendant.  Dozens of third parties are in the process of producing huge quantities of additional information, and Defendants apparently intend to depose all or some of them.  Still other materials relating to the bankruptcy case and its resolution are public record and available on the docket in the main bankruptcy case.  Even this sample of what has been produced to Defendants allows them to examine the causes of action, defenses, and damages in the underlying litigation, without confidential mediation materials.

Serino Decl. Ex. 5, Resp. of the ResCap Liquidating Trust & Residential Funding Co. to Defs.' Mot. to Modify Order Appointing Mediator at 12-13, *In re ResCap Liquidating Trust Mortg. Purchase Litig.*, Adv. No. 14-07900-mg (Bankr. S.D.N.Y. July 2, 2015), ECF No. 91 (citations omitted).

[31]  Serino Decl. Ex. 1, Findings of Fact ¶ 306.

[32]  *Id*.

### C. The Court Should Uphold the Promise of Confidentiality on Which AFI Relied in Producing Documents to the Examiner.

Reflecting a bankruptcy examiner's unique status as a "disinterested and nonadversarial" "fiduciary" of the court, *see In re Baldwin United Corp.*, 46 B.R. 314, 316 (Bankr. S.D. Ohio 1985) (citation omitted), there are special confidentiality considerations that attend to an examiner's investigation. *Cf. In re FiberMark, Inc.*, 339 B.R. 321, 325, 327 (Bankr. D. Vt. 2006) (characterizing an examiner as "an objective nonadversarial party" and holding that only the examiner's conclusions, and not evidence of his underlying rationale or findings of fact, could be introduced into evidence over hearsay objection). "[U]nlike civil discovery under Rule 26(c)," an examiner's investigation "is supposed to be a 'fishing expedition,' as exploratory and groping as appears proper to the Examiner." *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 432 (S.D.N.Y. 1993) (citation omitted). For this reason, third parties in particular "have a greater interest in protecting their privacy." *Id.* (citation omitted).

Because of these confidentiality concerns, in August 2012, this Court entered a protective order governing "the disclosure, discovery, production, and use" of documents provided to the Examiner, and all of the documents in AFI's Examiner Production were provided pursuant to this order.[33] The protective order expressly provides that certain documents, designated as "Confidential," "Highly Confidential," or "Professionals' Eyes Only" information, shall not be disclosed beyond the narrow categories of persons set out in the order.[34] AFI and other parties relied on this promise of confidentiality in producing to the Examiner documents concerning matters far beyond the relevant scope of the Chapter 11 cases.

---

[33] *See* Uniform Protective Order for Examiner Disc., *In re Residential Capital, LLC*, No. 12-12020-mg (Bankr. S.D.N.Y. Aug. 20, 2012), ECF No. 1223-1.

[34] *Id.* ¶¶ 4-7.

In order to modify the protective order and obtain discovery of AFI's Examiner Production, Movant-Defendants must show "extraordinary circumstances" or a "compelling need." *See*, *e.g.*, *In re Sept. 11 Litig.*, 262 F.R.D. 274, 277 (S.D.N.Y. 2009) (where a party has reasonably relied on a protective order, a party seeking to modify a that order must show "improvidence in the grant of a Rule 26(c) protective order or some extraordinary circumstance or compelling need."); *see also S.E.C. v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001) ("It is . . . presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied."). But Movant-Defendants have not shown "extraordinary circumstances" or a "compelling need"—or even good cause.

Movant-Defendants' request also compromises the role of a bankruptcy examiner. In *In re Baldwin United Corp.*, the plaintiffs in a securities fraud case sought an order directing the court-appointed examiner in related Chapter 11 cases to preserve documents and other investigative materials in his possession as a result of his investigation of the debtors. 46 B.R. at 314. The plaintiffs indicated that they would, at a later date, seek to require the examiner to turn over documents he obtained through his investigation. *Id*. at 316. The court rejected the request:

> We are not unsympathetic to the . . . plaintiffs' desire to fulfill their discovery needs through the least burdensome and least expensive means possible. Certainly the Examiner's file drawers offer a most enticing alternative to the long and bloody battles which plaintiffs' counsel often face in the discovery phase of securities litigation. However, while we have always hoped that the Examiner's report and chronology would provide a useful tool for all parties in the many proceedings pending against the Debtors, we never contemplated, nor in our opinion does the Bankruptcy Code contemplate, that the Examiner act as a conduit of information to fuel the litigation fires of third-party litigants. ***The prospect of an Examiner being required to indiscriminately produce investigative materials obtained through promises of confidentiality and reliance upon this Court's orders raises grave concerns touching both the integrity of the Bankruptcy Court's processes, as well as the integrity of the statutory position of the Examiner.***

15

*Id.* (emphasis added). While Movant-Defendants here request the Examiner Production directly from AFI (as opposed to requesting it from the Examiner), the confidentiality concerns and the policy implications are the same. Movant-Defendants, like the plaintiffs in *Baldwin*, seek to improperly leverage the examiner process in order to circumvent the usual limits of Rule 26 and get a leg up in their current litigation against plaintiffs.

Movant-Defendants have not specifically requested AFI's Examiner Submissions, but these appear to be included in Movant-Defendants' broad request for "[a]ll documents" provided by AFI to the Examiner (and, as such, they are subject to the Court's protective order). However, there are additional confidentiality considerations that apply to AFI's Examiner Submissions. Following his appointment, the Examiner requested that "parties in interest submit a paper setting forth any arguments, analysis, and supporting documents that such parties believe may bear on the Third-Party Claims and requested that Ally and the Debtors submit responses" in order to assist the Examiner in preparing his Report.[35] To encourage AFI and other parties to be forthcoming, the Examiner, AFI, and other parties entered into a confidentiality agreement dated February 15, 2013.[36] That agreement permits the signatories to share their submissions with one another, but expressly states that the parties "shall hold each Submission Paper as confidential," "shall not disclose any Submission Paper or its contents to any person or entity who is not a Party or Recipient" under the agreement, and shall not use the Submission Papers "for any purpose beyond the Chapter 11 Proceedings."[37]

---

[35] Parish Decl. Ex. 5, Confidentiality Agreement Regarding Examiner Submission Paper (Feb. 15, 2013).

[36] *Id.*

[37] *Id.* ¶ 7.

This Court previously recognized the importance of upholding the parties' expectations concerning the confidentiality of communications during the course of settlement mediation. *See In re Residential Capital, LLC*, 536 B.R. 132, 150-51 (Bankr. S.D.N.Y. 2015). The same considerations apply here—just as no party would participate in mediation if mediation communications were not confidential, "no-one would bother to sign on to a confidentiality stipulation if it had no lasting effect." *Ionosphere Clubs*, 156 B.R. at 431. To order production of AFI's Examiner Submissions would breach this promise of confidentiality and compromise the examiner process.

## II.   IF THE COURT ORDERS PRODUCTION, MOVANT-DEFENDANTS SHOULD BEAR THE ASSOCIATED COSTS.

At the April 1, 2016 status conference, the Court asked the parties to address whether the Court may shift the costs of any document production from AFI to Movant-Defendants. As a threshold matter, for the reasons set out above, the Court should deny Movant-Defendants' request for AFI's Examiner Production. However, if the Court grants Movant-Defendants' request, in whole or in part, AFI—a non-party to the indemnification actions—should not bear any portion of the cost of production, including attorneys' fees.

*First*, the Court clearly may order Movant-Defendants to pay the costs associated with any production of documents by AFI. Rule 45 requires a court ordering compliance with a subpoena to protect non-parties "from significant expense resulting from compliance" by "ensur[ing] that the subpoenaed person will be reasonably compensated." Fed. R. Civ. P. 45(d)(2)(B)(ii), (d)(3)(C)(ii); *see also In re First Am. Corp.*, 184 F.R.D. 234, 240 (S.D.N.Y. 1998) (holding that Rule 45 made "mandatory" the "discretion" courts have "to condition the enforcement of subpoenas on the [serving party's] paying for the [nonparty's] costs of production." (brackets in original) (citation omitted)). Because a subpoenaed party's response is

17

12-12020-mg    Doc 9806    Filed 04/06/16    Entered 04/06/16 07:01:26    Main Document
Pg 18 of 20

required to "expressly make the claim" of privilege and "describe the nature of the withheld documents . . . in a manner that, without revealing the information itself privileged or protected, will enable the parties to assess the claim," Fed. R. Civ. P. 45(e)(2), Rule 45 allows cost-shifting for attorneys' fees incurred in connection with privilege review and preparation of a privilege log. *See Spears v. City of Indianapolis*, 74 F.3d 153, 158 (7th Cir. 1996) ("The timing of the subpoenas, the wealth of materials sought—with the whiff of a fishing expedition apparent—and the privileged nature of many of the documents provided a sound basis for the court to order reimbursement under the rules."); *New Prods. Corp. v. Tibble* (*In re Modern Plastics Corp.*), 536 B.R. 783, 788 (Bankr. W.D. Mich. 2015) (shifting costs for, among other things, privilege review).

*Second*, cost-shifting is appropriate here given that Movant-Defendants have made broad requests for documents and have refused to narrow the scope of their requests (including their request for the Examiner Production). *See Prescient Acquisition Grp., Inc. v. MJ Publ'g Trust*, No. 05 Civ. 6298(PKC), 2006 WL 2996645, at *2-3 (S.D.N.Y. Oct. 13, 2006) (considering among other factors "the breadth and scope of the subpoena, the willingness of the serving party to narrow its scope, [and] the level of effort required to comply" in determining whether to order partial cost-shifting); *Modern Plastics Corp.*, 536 B.R. at 788-89 (determining that cost-shifting was warranted given that the requesting party refused to "meaningfully engage[]" in efforts to narrow the requests to limit the number of documents subject to collection or mitigate the expense of a privilege review).

The costs at issue will depend to a large degree on whether (1) the Court grants Movant-Defendants' request as written or, alternatively, orders production of only a subset of documents, and (2) the number of privileged documents included in the production set that will require

attorney review and logging. But whatever the costs, Movant-Defendants should be required to bear these. Since serving the Subpoena nearly one year ago, Movant-Defendants have consistently refused to "take reasonable steps to avoid imposing undue burden or expense" on non-party AFI, as Rule 45 requires.

## CONCLUSION

For the foregoing reasons, the Court should deny Movant-Defendants' request for AFI's Examiner Production.

Pg 20 of 20

Dated: April 6, 2016

Respectfully submitted,

*/s/ Jason R. Parish*
Jason R. Parish
Steven Hagenbuch
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Tel: (202) 879-5000
Fax: (202) 879-5200

*Counsel for Ally Financial, Inc.*