**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: RESIDENTIAL CAPITAL, LLC, <u>et al.</u> | No. 12-12020 |
| D.B. STRUCTURED PRODUCTS, INC., *et al.*, <br><br> Movant-Defendants, <br><br> v. <br><br> ALLY FINANCIAL, INC., <br><br> Respondent. | No. 15-mc-410-P1 |

### PLAINTIFFS' JOINDER IN OPPOSITION TO MOVANT-DEFENDANTS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENA ISSUED TO ALLY FINANCIAL, INC.

Residential Funding Company, LLC ("RFC") and ResCap Liquidating Trust (together with RFC, "Plaintiffs") hereby join in, and incorporate by reference, those portions of Ally Financial, Inc.'s Supplemental Memorandum of Law in Opposition ("AFI's Opposition") to Movant-Defendants' Motion to Compel Compliance with Subpoena Issued to Allied Financial, Inc. (the "Motion") which concern upholding the confidentiality of documents submitted to the Examiner in RFC's bankruptcy proceeding (the "Examiner Production"). Plaintiffs also respectfully submit the following additional points.

The disclosure of AFI's Examiner Production is governed by the Uniform Protective Order for Examiner Discovery (the "Protective Order") entered by the Court on August 20,

2012.[1] The Court entered the Protective Order to "govern the disclosure, discovery, production and use of all Discovery Material Provided to the Examiner."[2] All of the documents that the parties to the bankruptcy proceeding submitted to the Examiner, including AFI's Examiner Production, were produced pursuant to the Protective Order. The Protective Order expressly provides that documents that the parties designate as "Confidential" shall not be disclosed beyond the narrow categories of persons set out in the order.[3] None of these categories includes Movant-Defendants, who were all non-parties to the bankruptcy proceeding. Movant-Defendants therefore are not entitled to access AFI's Examiner Production unless they establish why the Protective Order should be modified. Because they have not done so, their Motion should be denied.

Where, as here, a party produces documents in reasonable reliance upon the confidentiality provisions of a protective order, the party seeking to modify a protective order bears the high burden of showing either "improvidence in grant of protective order or some extraordinary circumstance or compelling need" for the discovery. *Martindell v. Int'l Tel. and Tel. Corp.*, 594 F.2d 291 (2d Cir. 1979); *Medical Diagnostics v. Care Core Nat'l*, No. 06-Civ-7764, 2009 WL 2135294, *1 (S.D.N.Y. July 16, 2009) (same); *see also SEC v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001) ("It is . . . presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied."). The burden is high because, even in the ordinary case, protective orders serve a vital function of

---

[1] Uniform Protective Order for Examiner Disc., *In re Residential Capital, LLC*, No. 12-12020-mg (Bankr. S.D.N.Y. Aug. 20, 2012), ECF No. 1223-1.

[2] *Id*. ¶ 2.

[3] *Id*. ¶¶ 3-4. The Protective Order imposes tighter restrictions on documents designated as "Highly Confidential" or "Professionals' Eyes Only." *Id*. ¶¶ 5-7.

2

"secur[ing] the just, speedy, and inexpensive determination of civil suits . . . by encouraging full disclosure of all evidence that might conceivably be relevant." *Martindell*, 594 F.2d at 295 (internal citations omitted).

In this case, where the discovery at issue was produced to a bankruptcy examiner, the confidentiality concerns are even higher. Because "Bankruptcy Rule 2004 . . . gives the Examiner scope to investigate which is broader than that of civil discovery under Rule 26," subjects of the investigation, and particularly third parties, "have a greater interest in protecting their privacy." *Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. of Chicago (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 432 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994). One court has "compared the function of an examiner to a 'civil grand jury,' and found the "prospect of an Examiner being required to indiscriminately produce investigative materials obtained through promises of confidentiality" to "raise[] grave concerns touching both the integrity of the Bankruptcy Court's processes, as well as the integrity of the statutory position of the Examiner." *Id.* (quoting *In re Baldwin United Corp.*, 46 B.R. 314, 316-17 (S.D. Ohio 1985)).

AFI, like other parties, relied on the Protective Order's confidentiality provisions when it produced the documents in its Examiner Production. To permit Movant-Defendant-to access those documents would be "presumptively unfair." *TheStreet.com,* 273 F.3d at 229 (2d Cir. 2001).

It would be especially unfair to permit Movant-Defendants to access the position paper that AFI submitted to the Examiner (the "Examiner Submission"), in which AFI set forth its subjective analysis of certain claims settled in the Global Settlement. As with all the documents in the Examiner Production, the Examiner Submission was produced pursuant to the Protective

Order.[4] But in addition to the Protective Order, the Examiner Submission is also protected by a separate confidentiality agreement (the "Agreement") entered into by the Examiner, AFI, RFC, and more than a dozen other parties, in order to encourage these "parties in interest" to state their views and opinions freely.[5] The Agreement imposes confidentiality and use requirements beyond the Protective Order's general provisions regarding "Confidential" information. The Agreement permits the signatories to share their position papers with each other, but expressly provides that the parties "shall hold each Submission Paper as confidential" and "shall not disclose any Submission Paper or its contents to any person or entity who is not a Party or Recipient" under the Agreement, nor shall the Submission Papers be used "for any purpose" beyond the Examiner's investigation.[6] In the event that a party to the Agreement receives a subpoena demanding production of a Submission Paper, that party is required to object and to oppose any motion to compel on the basis of the Agreement.[7] All parties to the Agreement further recognized that money damages were an insufficient remedy for any breach of the

---

[4] To the extent Movant-Defendants assert that the absence of a "confidentiality" stamp removes the Examiner Submission from the Protective Order's restrictions against the use and disclosure of "Confidential Information," that assertion is incorrect. The Protective Order defines "Confidential Information" as "any and all . . . confidential nonpublic information . . . that is marked *or designated* by the Disclosing Party as being 'Confidential.'" Protective Order ¶ 1 (emphasis added). In the Agreement, the parties expressly and collectively designated all Examiner Submissions as "confidential." *See, e.g.*, Agreement at 2 (stating that the agreement's purpose was to "ensur[e] the confidentiality of the Submission Papers" and to establish "procedures governing the confidentiality and use of [the Parties'] Submission Papers"); *id.* ¶ 1 (stating that the parties agree that "the Submission Papers . . . shall be and shall remain confidential"); *id.* ¶ 7 ("Each Party and Recipient shall hold each Submission Paper as confidential . . . .").

[5] Decl. of Jason R. Parish in Supp. of Ally Financial, Inc.'s Suppl. Mem. of Law in Opp'n to Mot. to Compel Compliance with Subpoena Issued to Ally Financial, Inc. ("Parish Decl."), Ex. 5 (Confidentiality Agreement Regarding Examiner Submission Paper, dated Feb. 15, 2013), at 1.

[6] Parish Decl. ¶ 7.

[7] *Id.* ¶ 10.

4

Agreement, and the aggrieved party would be "entitled to seek specific performance and injunctive or other equitable relief."[8]

In light of the greater need for confidentiality in connection with the Examiner's broad investigation, this commitment between the parties to the Agreement should be honored. Just as upholding parties' expectations of confidentiality under a mediation order "protect[s] the integrity of alternative dispute resolution generally," *In re Residential Capital LLC*, 536 B.R. 132, 150 (Bankr. S.D.N.Y. 2015), enforcing the Protective Order and Agreement here protects "the integrity of the Bankruptcy Court's processes" and "the integrity of the statutory position of the Examiner." *Ionosphere Clubs*, 156 B.R. at 432. Indeed, "no-one would bother to sign on to a confidentiality stipulation if it had no lasting effect." *Id.* at 431.[9] To adopt Defendants' position would destroy the parties' legitimate expectations of confidentiality and weaken the examiner process, which performs a vital role in this Court.

Movant-Defendants have not even attempted to establish extraordinary circumstances or a compelling need sufficient to outweigh the confidentiality concerns at stake here. Indeed, they cannot establish *any* need for the discovery they seek. This Court recently held that "both New York and Minnesota law," which govern Plaintiffs' indemnity claims, "make clear that an *objective* test for evaluating the reasonableness of the settlement controls." *In re Residential*

---

[8] *Id.* ¶ 12.

[9] *Cf. Minpeca S.A. v. Conticommodity Servs., Inc.*, 832 F.2d 739, 743 (2d Cir. 1987) ("[T]he reliance on the protective order by nonparties who have been deposed or produced documents . . . supports continued enforcement of the order."); *Palmieri v. State of New York*, 779 F.2d 861, 864-65 (2d Cir. 1985) ("[T]he very papers and information that the Attorney General seeks apparently would not even have existed but for the sealing orders and the magistrate's personal assurances of confidentiality . . . ."); *Residential Capital*, 536 B.R. at 150 ("Were courts to cavalierly set aside confidentiality restrictions on disclosure of communications made in the context of mediation, parties might be less frank and forthcoming during the mediation process or might even limit their use of mediation altogether." (quoting *Savage & Assocs., P.C. v. K & L Gates LLP (In re Teligent, Inc.)*, 640 F.3d 53, 59-60 (2d Cir. 2011))).

5

*Capital, LLC*, 536 B.R. 132, 148 (Bankr. S.D.N.Y. 2015) (emphasis added).  The Court found that even if "contemporaneous communications made in the course of settlement may be relevant to the Plaintiff's indemnity claims," *id.*, they were in no way necessary to resolving the claims and did not warrant modifying the Mediation Order to permit their discovery, particularly since Defendants can rely on a plethora of other documents, including "publicly available expert reports." *Id.* at 150.

The same is true here.  Just as there was no "special need" that warranted modifying the Mediation Order, there is no compelling need to warrant modifying the Protective Order here.  Because the Examiner Submission is an advocacy paper expressing MBIA's *subjective* view of the claims settled in the Global Settlement for which Plaintiffs seek indemnification, it is not necessary to a defense against Plaintiffs' claims.  *Cf. id.* at 148 ("Communications bearing on parties' subjective beliefs regarding the reasonableness of the Global Settlement are not necessary to determine the reasonableness of the settlement under an objective standard."). Movant-Defendants are free to analyze the vast amount of discovery regarding the reasonableness of the Global Settlement that have been produced in the indemnity actions, as well as the huge amount of publicly available information (including the publicly available Examiner Report), and come to their own conclusions.  *Cf. id.* ("[D]enying the Defendants access to mediation communications does not prejudice their ability to challenge the reasonableness of the Global Settlement; they remain free to challenge the merits of the claims subject to the Global Settlement and the defenses available at the time . . . .").

In short, there is no need, much less a compelling one, to destroy the parties' expectations of confidentiality in connection with the Examiner's investigation.  Defendants' Motion should be denied.

6

Dated: April 6, 2016

QUINN EMANUEL URQUHART
&amp; SULLIVAN, LLP

By: ___*/s/ Isaac Nesser*___
Peter E. Calamari
David Elsberg
Isaac Nesser
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
petercalamari@quinnemanuel.com
davidelsberg@quinnemanuel.com
isaacnesser@quinnemanuel.com

*Attorneys for Plaintiffs Residential Funding Company, LLC, and ResCap Liquidating Trust*