1

2 UNITED STATES BANKRUPTCY COURT

3 SOUTHERN DISTRICT OF NEW YORK

4 Case No. 12-12020-mg

5 Adv. Proc. No. 13-01436-mg

6 - - - - - - - - - - - - - - - - - - - -x

7 In the Matter of:

8 RESIDENTIAL CAPITAL, LLC, et al.,

9              Debtors.

10 - - - - - - - - - - - - - - - - - - - -x

11 SHELLEY VON BRINKEN,

12              Plaintiff,

13        v.

14 GMAC MORTGAGE, LLC, et al.,

15              Defendants.

16 - - - - - - - - - - - - - - - - - - - -x

17              United States Bankruptcy Court

18              One Bowling Green

19              New York, New York

20

21              March 22, 2016

22              10:05 AM

23 B E F O R E:

24 HON. MARTIN GLENN

25 U.S. BANKRUPTCY JUDGE

1

2   (CC: Doc #9486) ResCap Borrower Claims Trusts Ninety-Second

3   Omnibus Objection to Claim ((I) No Liability Borrower Claims

4   and (II) Allowed in Full Borrower Claim).  Hearing Going

5   Forward in This Matter, Solely as it Relates to the Claim Filed

6   by Lynn C. Greene and James Cassidy (Claim No. 3484).

7

8   (Doc #9659) Motion for Objection to Claim(s) Number 4834.

9

10  Adversary Proceeding: 13-01436-mg Von Brinken v. GMAC Mortgage

11  LLC, et al.

12  (CC: Doc #23) Motion to Dismiss Adversary Proceeding.

13

14  Adversary Proceeding: 13-01436-mg Von Brinken v. GMAC Mortgage

15  LLC, et al.

16  (CC: Doc #24) Joint Motion of ResCap Liquidating Trust and

17  ResCap Borrower Claims Trust for (I) Dismissal of Adversary

18  Proceeding Pursuant to Bankruptcy Rule 7012(b) and FRCP

19  12(b)(6) and (II) Disallowance of Proof of Claim Number 441

20  Filed by Plaintiff.

21

22

23

24

25

1

2   (CC: Doc #9547) Joint Motion of ResCap Liquidating Trust and

3   ResCap Borrower Claims Trust for (I) Dismissal of Adversary

4   Proceeding Pursuant to Bankruptcy Rule 7012(b) and FRCP

5   12(b)(6) and (II) Disallowance Disallowance of Proof of Claim

6   Number 441 Filed by Plaintiff.

7

8

9

10

11

12

13

14

15

16

17

18

19

20   Transcribed by:  Esther Accardi

21   eScribers, LLC

22   700 West 192nd Street, Suite #607

23   New York, NY 10040

24   (973)406-2250

25   operations@escribers.net

1

2  A P P E A R A N C E S :

3  MORRISON & FOERSTER LLP

4        Attorneys for ResCap Borrower Claims Trust

5         and ResCap Liquidating Trust

6        250 West 55th Street

7        New York, NY 10019

8

9  BY:   JORDAN A. WISHNEW, ESQ.

10        ERICA J. RICHARDS, ESQ.

11

12

13  ALSO APPEARING TELEPHONICALLY:

14        SHELLEY VON BRINKEN, Pro Se

15        LYNNE C. GREENE, Pro Se

16        BERNARD J. KORNBERG, SEVERSON & WERSON, P.C., for Ocwen

17

18

19

20

21

22

23

24

25

RESIDENTIAL CAPITAL, LLC, et al.                                    5

1                    P R O C E E D I N G S

2            THE COURT:  All right, please be seated.

3            We're here on Residential Capital, number 12-12020.

4            Ms. Richards?

5            MS. RICHARDS:  Good morning, Your Honor.  Erica

6    Richards of Morrison & Foerster, appearing today on behalf of

7    the ResCap Liquidating Trust and the ResCap Borrower Claims

8    Trust.

9            I understand Your Honor has agreed to take up the Von

10   Brinken adversary proceeding first.

11           THE COURT:  I have.  And that's adversary proceeding

12   number 13-01436.

13           MS. RICHARDS:  Yes, Your Honor.

14           THE COURT:  Is anyone on the phone for Ms. Von

15   Brinken?

16           MS. VON BRINKEN:  Yes, Your Honor.  This is Shelley

17   Von Brinken.

18           THE COURT:  Thank you very much.

19           Go ahead, Ms. Richards.

20           MS. RICHARDS:  Your Honor, just to reframe for the

21   Court where we are.

22           On March 3rd, 2014 Mrs. Von Brinken filed an amended

23   adversary complaint, which was docketed at docket number 15 in

24   the adversary proceeding.

25           On January 21st of this year, the Court entered a

RESIDENTIAL CAPITAL, LLC, et al.                                    6

1    joint stipulation and scheduling order at docket number 22.

2            THE COURT:  All right.

3            MS. RICHARDS:  Need another pen?

4            Pursuant to which the adversary complaint and Mrs. Von

5    Brinken's proof of claim would be dealt with in tandem, and

6    then set a briefing schedule on those matters.

7            Pursuant to that order, Ocwen filed a motion to

8    dismiss the adversary proceeding as to itself on January 25th.

9    That was filed at docket number 23, and that's matter number 5

10   on the agenda.

11           On that same date the ResCap trusts filed a joint

12   motion to dismiss the adversary proceeding, and to disallow

13   Mrs. Von Brinken's proof of claim.  That was filed at adversary

14   proceeding docket number 24, and that's matter number 6 on the

15   agenda.

16           Mrs. Von Brinken filed a single response to both of

17   those pleadings, which was filed at docket number 26.

18           Ocwen filed its reply on March 14th, 2016 at adversary

19   proceeding docket number 27.

20           And the ResCap trusts filed their reply the day after

21   on March 15th of this year, which was docketed at number 28.

22           I don't know if Your Honor has a preference as to

23   whether you take Ocwen's motion first, or --

24           THE COURT:  No, you deal with them.  Are you going to

25   argue both?  Is --

1          MS. RICHARDS:  Ocwen's counsel is on the line so they

2     can --

3          THE COURT:  Okay.  Well, why don't you argue first?

4          MS. RICHARDS:  Okay.

5          THE COURT:  Who's on the phone for Ocwen?  Is anyone

6     on the telephone representing Ocwen?  Doesn't appear to be

7     anybody.

8          MS. RICHARDS:  I guess he's not on, Your Honor.  I

9     thought he had a live check-in.  But --

10          THE COURT:  Go ahead.

11          MS. RICHARDS:  So I'll briefly address Ocwen's

12     arguments since their counsel is not on the line.

13          In summary, their argument was that Mrs. Von Brinken's

14     complaint named Ocwen in the caption and then failed to raise

15     any allegations whatsoever with respect to them in the

16     pleading, and then first she failed to state a claim against

17     them.  And her motion should be dismissed.

18          Turning to the trusts' pleadings, I'll deal first with

19     our motion to dismiss the adversary proceeding.

20          Our argument there is twofold.  First, the complaint

21     asserts claims for alleged violations by GMAC Mortgage and UTS,

22     of their consent order dated April 13th, 2011 with the Board of

23     Governors, the Federal Reserve System, and the Federal Deposit

24     Insurance Corporation.

25          GMAC Mortgage and certain other parties were a party

RESIDENTIAL CAPITAL, LLC, et al.                                    8

1    to that order, which has been referred to throughout these

2    cases of the FRB consent order.  A copy of that order was

3    attached in Mrs. Von Brinken's complaint, and is Exhibit A to

4    the declaration of Kathy Priore, submitted in support of our

5    motion.

6           That order at paragraph 30 states as follows:

7    "Nothing in this order express or implied shall give to any

8    person or entity, other than the parties hereto and their

9    successors hereunder, any benefit or legal or equitable right,

10   remedy or claim under this order."

11          Under that language, Your Honor, Mrs. Von Brinken, who

12   is not a party to the consent order lacks standing to bring any

13   claims under the order.

14          I would also note that the foreclosure that she is

15   concerned about took place in August 2010, and an order was

16   entered in April 2011.  So to the extent her argument is that

17   the foreclosure violated the order, it took place before the

18   order and couldn't have done so.  For that reason the complaint

19   fails to state a claim as to which relief can be granted, and

20   is subject to dismissal.

21          To the extent her claims do not arise under the FRB

22   consent order, they're also barred under principles of res

23   judicata and collateral estoppel.  And that is because the

24   injury that Mrs. Von Brinken complains of, again is the

25   wrongful loss of her home, as a result of a nonjudicial

RESIDENTIAL CAPITAL, LLC, et al.                    9

1   foreclosure that was conducted by GMAC in its capacity of

2   servicer for Mrs. Von Brinken's loan.  That process resulted in

3   a trustee sale of the property that closed on August 31st,

4   2010.

5             On August 10th, 2010 Mrs. Von Brinken commenced a

6   lawsuit against ETS in the Eastern District of California.  She

7   amended her complaint in September 2010 to add GMAC as a

8   defendant, and amended it again in February 2011 with the --

9   that time with the assistance of counsel.

10            That second amended complaint asserted a litany of

11  claims, all arising out of the wrongful foreclosure, including

12  claims for violations of the Home Ownership Equity Protection

13  Act, or HOEPA, the Real Estate Settlement Procedures Act, or

14  RESPA, the Federal Truth in Lending Act, FTILA, and the Fair

15  Credit Reporting Act.  It also asserted claims for fraudulent

16  misrepresentation, breach of fiduciary duties, unjust

17  enrichment, civil conspiracy, civil RICO violations, quiet

18  title, usury and fraud, wrongful foreclosure, and breach of a

19  security instrument.

20            On June 30th, 2011 the California District Court

21  entered an order dismissing all counts with prejudice, pursuant

22  to Federal Rule of Civil Procedure 12(b)(6).  A copy of that

23  order was attached as Exhibit I to the Priore declaration.  And

24  Mrs. Von Brinken did not appeal that dismissal.

25            In June 2012 Mrs. Von Brinken filed a second complaint

RESIDENTIAL CAPITAL, LLC, et al.                    10

1   in the California District Court against GMAC and several other

2   defendants.  That new complaint asserted claims for violations

3   of the Federal Fair Debt Collection Practices Act, again

4   arising out of what she contended was a wrongful foreclosure.

5           On February 21st, 2013 the district court dismissed

6   that complaint with prejudice as well.  And that order and the

7   magistrate judge's recommendations were appended as Exhibits L

8   and M to the Priore declaration.  Again, Mrs. Von Brinken did

9   not appeal that decision.

10          Although courts have now twice held that GMAC's

11  foreclosure was not wrongful, the instant adversary complaint

12  is Mrs. Von Brinken's attempt to get yet a third bite at the

13  apple.  It should be denied under the doctrines of res judicata

14  and collateral estoppel, because Mrs. Von Brinken has already

15  had the full and fair opportunity to litigate her claims, the

16  merits of those claims against the debtors, and a final

17  judgment has been entered dismissing them.

18          Your Honor, that brings me to the second component of

19  the relief we're seeking today, which is the disallowance of

20  Mrs. Von Brinken's proof of claim.  That claim is also based on

21  Mrs. Von Brinken's allegations that GMAC's foreclosure in

22  August 2010 was wrongful.  It asserts a secured claim against

23  GMAC Mortgage in the amount of $186,940.72, which was the

24  amount paid at the trustee sale of her property.

25          For the reasons I've already discussed, Mrs. Von

RESIDENTIAL CAPITAL, LLC, et al.                    11

1  Brinken's wrongful foreclosure claims should be disallowed, and
2  her proof of claim should also be disallowed.
3            THE COURT:  All right.  Let me see, did Mr. Kornberg
4  call in for Ocwen?
5            MR. KORNBERG:  Your Honor?
6            THE COURT:  Yes.
7            MR. KORNBERG:  Bernard Kornberg appearing for Ocwen.
8  I apologize, CourtCall had me on hold and told me the Court had
9  not taken the bench, so I was just connected in the midst of
10 Ms. Richards' statements about the res judicata.
11           THE COURT:  All right.  Do you want to make an
12 argument on behalf of Ocwen?
13           MR. KORNBERG:  Your Honor, the res judicata effect to
14 the extent it would affect -- to the extent Ocwen would be any
15 way liable, the res judicata effect would apply, as Ocwen is
16 just simply stepping into the shoes of GMAC, the prior
17 servicer.  But as stated in our motion, Ocwen is not even
18 mentioned in this complaint, except in the header.  And, as
19 such, no cause of action has been stated against us.
20           THE COURT:  Okay.  All right, Ms. Von Brinken, you
21 want to respond?
22           MS. VON BRINKEN:  Yes.  Good morning, Your Honor.
23           I'm sixty-six years old now, and this has taken six
24 years of my life to get to this point.  As an American, the
25 home I held dear has been taken from me.  I have not been

1  allowed to have a discovery to show the Court that this

2  foreclosure is void because the lender or servicer had no power

3  to foreclose.

4          I respectfully refer to my submission of opposition of

5  motion to dismiss and ask the Court to deny the defendants'

6  motion to dismiss, and grant me the right to discovery.

7          As to Ocwen, it's Exhibit 5, they were not named in

8  any case.  They did, in fact, try to collect the debt a year-

9  and-a-half after we had been removed from our home, which

10  indicates they were moving against us without any documentation

11  or rights further illustrating the methods used by its parent

12  company, GMAC.  And, in fact, were trying to collect the debt

13  while in bankruptcy.

14          Again, I respectfully refer to my submission of

15  opposition of motion to dismiss, and ask the Court to deny the

16  defendants' motion.  Thank you.

17          THE COURT:  All right.  Anything else you want to add,

18  Ms. Von Brinken?

19          MS. VON BRINKEN:  Not at this time.

20          THE COURT:  All right.  Ms. Richards, anything you

21  want to add?

22          MS. RICHARDS:  No, Your Honor.

23          THE COURT:  Okay.  Mr. Kornberg, anything you want to

24  add?

25          MR. KORNBERG:  No, Your Honor.

1          THE COURT:  All right.  The Court will take it under

2     submission, I'll enter an appropriate opinion or order.  Thank

3     you very much.

4          MS. VON BRINKEN:  Thank you, Your Honor.

5          THE COURT:  Thank you, Ms. Von Brinken.  There will be

6     an opinion order issued at some point after today, okay.

7          MS. VON BRINKEN:  Thank you.

8          THE COURT:  Thank you very much.

9          All right, you're welcome to stay on the line or could

10    drop off if you wish, okay.

11         MS. VON BRINKEN:  Okay.

12         THE COURT:  All right.

13         MS. RICHARDS:  Your Honor, I'll turn the podium over

14    to Mr. Wishnew now.

15         THE COURT:  Okay.  And, Mr. Kornberg, you're certainly

16    free to drop off if you wish as well.

17         THE COURT:  Go ahead, Mr. Wishnew.

18         MR. WISHNEW:  Thank you, Your Honor.

19         Your Honor, the next and last matter on today's

20    calendar is on page 4 under Section 3, claims objections

21    dealing with the claim 3484 of Lynn Greene and James Cassidy.

22    This is a carryover from the previously filed ninety-second

23    omnibus objection to claims filed by the ResCap Borrower Claims

24    Trust.

25         THE COURT:  All right.

1        MR. WISHNEW:  I believe Ms. Greene is on the phone.

2        THE COURT:  Ms. Greene, are you on the phone?

3        MS. GREENE:  Yes, I am.  Good morning, Your Honor.

4        THE COURT:  All right.

5        MS. GREENE:  This is Lynn Greene.

6        THE COURT:  Thank you very much, Ms. Greene.  Go

7   ahead, Mr. Wishnew.  I'll give you a chance to respond after

8   Mr. Wishnew speaks, Ms. Greene.

9        MS. GREENE:  Thank you.

10        THE COURT:  Go ahead, Mr. Wishnew.

11        MR. WISHNEW:  Thank you, You Honor.

12        Your Honor, very briefly, this -- without repeating

13   everything that's in the filed papers, this deals with a

14   dispute over the claimants' escrow accounts.  It relates to a

15   special assessment tax that was included with the county

16   property taxes related to the claimants' real property.  It is

17   the borrower trust's position that at origination, the

18   originating party did not properly assess and include in the

19   HUD-1 the escrow -- it would be additional escrow that was

20   required for this special assessment, and so it became -- the

21   problem multiplied as time went on, because there was a

22   consistent shortage based upon the payments.  In GMAC

23   Mortgage's servicing of this loan, consistent with the terms of

24   the deed of trust, it increased the escrow required to be paid

25   by the claimants in order to address the special assessment

1   that was being levied against -- that was being assessed

2   against the property.

3           It's the borrower trust's position that in GMAC

4   Mortgage servicing of this loan, it acted properly and

5   consistent with the terms of the underlying documents and has

6   provided, through its reply, sufficient documentation to show

7   that monies were, in fact, paid, and that there is no basis for

8   liability against GMAC Mortgage.

9           THE COURT:  May I ask you this, point me to the

10  document that you rely on to show that -- this relates to an

11  assessment for a Country Club lien, is that correct?

12          MR. WISHNEW:  That's -- yes, Your Honor.

13          THE COURT:  All right.  Just what is the document that

14  you believe establishes that GMAC paid amounts for this portion

15  of the lien, okay?

16          MR. WISHNEW:  I would refer Your Honor to Exhibit E of

17  what I believe is the Lathrop declaration.

18          THE COURT:  All right, let me -- I've got this big fat

19  binder, so it's going to take me a little bit to find it.

20          MR. WISHNEW:  Of course, Your Honor.

21          THE COURT:  Okay.  This is behind which tab now?

22          MR. WISHNEW:  E as in eagle.

23          THE COURT:  Okay.  Bear with me.

24      (Pause)

25          THE COURT:  All right.  I'm at Exhibit -- I think I'm

1  at Exhibit E.

2           MR. WISHNEW:  It's marked -- it's docket number -- its

3  stamped 9759-6.  And --

4           THE COURT:  Hold on, I'm --

5           MR. WISHNEW:  Sure.

6           THE COURT:  I got a binder with about six Exhibit Es,

7  so bear with me.

8       (Pause)

9           THE COURT:  You're going to have to help me out here,

10 Mr. Wishnew, because in this big fat bind -- which tab is it

11 behind?

12          MR. WISHNEW:  It should -- it should be behind -- I

13 apologize, Your Honor, I don't have the exact binder that you

14 -- that was given to the Court.

15          THE COURT:  Could you hand me up --

16          MR. WISHNEW:  I will absolutely hand it up to you.

17          THE COURT:  All right.  And --

18          MR. WISHNEW:  I will do my best to work from memory.

19          THE COURT:  I want to be sure Ms. Greene -- Ms.

20 Greene, do you have the papers that they filed?

21          MS. GREENE:  Yes, Your Honor.  I have two different

22 versions of the pleading though, in the -- pleadings are in a

23 different order, so I'm sympathetic to your difficulty.  But I

24 think I can simplify a little perhaps.

25          THE COURT:  No, let's -- bear with me, okay.  Hold on.

1          MS. GREENE:  Yes.

2      (Pause)

3          THE COURT:  All right.  What Mr. Wishnew has handed to

4    me, Ms. Greene, is a document marked as Exhibit E.  At the top

5    of that first page it has docket number 9759-6 filed on March

6    18th, 2016.  And beginning on the second page of the exhibit is

7    the loan history for your loan.  And where were you going to

8    point me within that, Mr. Wishnew?

9          MR. WISHNEW:  I was going to point you, Your Honor, to

10   pages 3 and 4.

11         THE COURT:  So this is 3 of 37?

12         MR. WISHNEW:  Yes, Your Honor.

13         THE COURT:  And 4 of 37?

14         MR. WISHNEW:  Yes, Your Honor.

15         THE COURT:  All right.  Are you able to find that, Ms.

16   Greene?

17         MS. GREENE:  I'm trying.

18         THE COURT:  Okay, I'll wait for you to tell me whether

19   you can or not, okay.

20         MS. GREENE:  Okay.  And you're saying 3 of 37 --

21         THE COURT:  Yes.

22         MS. GREENE:  -- or after that I'm seeing -- I'm seeing

23   10 of 38.

24         THE COURT:  Do you see the numbers in the lower right-

25   hand corner of the pages?

1        MS. GREENE:  Okay.

2        THE COURT:  At the top of the page it's page 4 of 38.

3        MS. GREENE:  Yeah, I see it.

4        THE COURT:  But in the lower right-hand --

5        MS. GREENE:  Yes.

6        THE COURT:  -- corner there are numbers.

7        MS. GREENE:  Okay.

8        THE COURT:  Are you -- are you able to find it?

9        MS. GREENE:  Yes, I am, Your Honor.

10        THE COURT:  Okay.  Mr. Wishnew.

11        MR. WISHNEW:  Thank you, Your Honor.

12        Your Honor, consistent with GMAC Mortgage's standard

13   business practice, when a payment was made on a tax bill it

14   would be reflected in the payment history as "Escrow DSB-Tax

15   County."

16        THE COURT:  Okay.

17        MR. WISHNEW:  And so on pages 3 and 4 I believe are

18   payments, for example, in 2007 and 2008.  And you'll see if you

19   look across, those payments consistent with the amount set

20   forth in our objection.

21        THE COURT:  That's the $3,667.01.

22        MR. WISHNEW:  That's correct, Your Honor.

23        THE COURT:  And I see entries looking at 3 of 37.  I

24   see entries on May 20th, 2008, January 28th, 2008.  And then on

25   4 of 37 I see entries of May 22, 2007, February 5, 2007, May

RESIDENTIAL CAPITAL, LLC, et al.                        19

1    10th, 2006, and January 30, 2006.  Were those the entries

2    you're referring to?

3             MR. WISHNEW:  Those are the entries, Yes, Your Honor.

4    I believe if you looked further -- further into the history --

5             THE COURT:  Yeah.

6             MR. WISHNEW:  -- into 2009 you'd see similar type of

7    disbursements, those might be on page 2 of 37.

8             THE COURT:  Yes, I see entries on page 2 of 37 for May

9    14th, 2010, February 1, 2010, and May 14, 2009, those the

10   entries you're referring to?

11            MR. WISHNEW:  Yes, Your Honor.

12            THE COURT:  Okay.  Ms. Von Brinken (sic), do you see

13   where I pointed to?

14            MR. WISHNEW:  Ms. Greene.

15            THE COURT:  Ms. Greene, I'm sorry.  Do you see that,

16   Ms. Greene?

17            MS. GREENE:  Yes.

18            THE COURT:  Okay.  Go ahead, Mr. Wishnew.

19            MR. WISHNEW:  So to address Your Honor's question, and

20   to respond to the claimants' allegation that GMAC Mortgage

21   should not make the payments, we would submit, Your Honor, the

22   evidence of the loan history maintained by GMAC Mortgage in the

23   regular course of its business practice, to show those payments

24   were, in fact, disbursed.

25            THE COURT:  Okay.

1           MR. WISHNEW:  And because they were disbursed then

2    it's -- then requiring Ms. Greene to address the items through

3    funding of the escrow.

4           THE COURT:  All right.  And is there a document that

5    the trust relies on to show that payments on the Country Club

6    lien had to be paid from the escrow?

7           MR. WISHNEW:  Your Honor, I refer to the deed of

8    trust, Section 3.

9           THE COURT:  Okay.  And where would I find that?

10           MR. WISHNEW:  I'm hoping we don't have the same issue.

11           This is identified as Exhibit C, as in cat, to Ms.

12    Lathrop's declaration.  It's stamped docket 9759-4.

13       (Pause)

14           THE COURT:  You better bring it up.  Wait, hang on.

15    You have to bring it up to me, it's impossible to find anything

16    in this binder.

17           Ms. Greene, are you able to find what Mr. Wishnew is

18    pointing you to?

19           MS. GREENE:  No.  But that's all right, I'm --

20           THE COURT:  No, at the top of the page it has 9 --

21    document 9759-4, filed March 18th, 2016, it's declaration

22    Exhibit C, the deed of trust with the pages at the top begins

23    on 2 of 8.  And what's the provision, Mr. Wishnew, you're

24    pointing to?

25           MR. WISHNEW:  Your Honor, it would be Section 3.  I

1    believe on that document the bottom of the page is marked 2 of

2    8.  And Section 3 carries over to the next page.  I believe in

3    the first full sentence it talks about items for assessments.

4              THE COURT:  All right, let me -- so make sure I'm on

5    track here.  In number 3, "Funds for Escrow Items," is that

6    what you're referring to?

7              MR. WISHNEW:  Exactly, Your Honor.

8              THE COURT:  It begins "Borrower shall pay the lender

9    on the day periodic payments are due under the note, until the

10   note is paid in full, a sum" and then it's defined as "funds,"

11   "to provide for payment of amounts due for A) taxes and

12   assessments" --

13             MR. WISHNEW:  And it carries over.

14             THE COURT:  -- "and other items which can attain

15   priority over this security instrument as a lien or encumbrance

16   on the property."  It goes on from there.  That's where you're

17   referring to?

18             MR. WISHNEW:  That is correct, Your Honor.

19             THE COURT:  All right.  And what is it that shows that

20   the Golf Club lien was a lien on the property?

21             MR. WISHNEW:  One moment, Your Honor.

22        (Pause)

23             THE COURT:  Actually, why don't you show me -- because

24   you refer to the tax bill as including the amount for the Golf

25   Club lien, correct?

RESIDENTIAL CAPITAL, LLC, et al.                    22

1           MR. WISHNEW:  I believe so, Your Honor.

2           THE COURT:  If you could point me to the tax bill,

3    that would probably satisfy me.

4           MR. WISHNEW:  Well, to address your first question,

5    Your Honor, about the -- about the lien, we refer to the proof

6    of claim filed by the claimants.

7           THE COURT:  Yes.

8           MR. WISHNEW:  This is Exhibit A to Ms. Lathrop's March

9    18th declaration, it's thirty-one pages.

10          THE COURT:  Hold on.  All right, go ahead.

11          MR. WISHNEW:  And on page 28 of 31, Your Honor --

12          THE COURT:  Yes.

13          MR. WISHNEW:  -- it is Douglas County, Office of the

14   County Treasurer, document is titled "Release of Assessment

15   Lien."  So I think that's a --

16          THE COURT:  Okay.

17          MR. WISHNEW:  -- government document assessing --

18          THE COURT:  All right.

19          MR. WISHNEW:  -- referring to the lien.

20          THE COURT:  Okay.  All right, anything you want to add

21   at this point, Mr. Wishnew?

22          MR. WISHNEW:  Nothing to it, nothing, Your Honor.

23          THE COURT:  All right, Ms. Greene.

24          MS. GREENE:  Good morning, Your Honor.  This is Lynn

25   Greene.

1       The issue before us is that GMAC wrongfully

2  accelerated the assessment lien at a time when its service of

3  the loan completely disappeared.  They pulled out of Colorado,

4  and for whatever reason the loans here weren't transferred to a

5  servicing agent, or at least weren't effectively transferred.

6  So in spite of lots of effort, we had an extraordinarily

7  difficult time finding anyone.  We went to extraordinary

8  measures to find people to talk to, and it still -- and we

9  couldn't find any servicer or access to the escrow department

10  for a very long time.  An even after we did, it would change,

11  and we'd have to -- it was like -- we'd be redirected to the

12  Philippines and be on hold forever.  And then when somebody

13  answered the phone, and you told them that you were trying to

14  work on a specific issue, they would literally hang up, and

15  there was no way to go forward.

16       But it's an interesting situation, because Country

17  Club is just a name of a road, this was -- we were in a county

18  during a boom time where GMAC and its agent were originating

19  construction loans on very friendly terms in our area.  And the

20  area had antigrowth policies.

21       Our subdivision was an old subdivision where there

22  platted lots that were unimproved, and the county wanted to

23  prevent further subdividing in this area.  So the county came

24  in and started, in a private subdivision, putting in the road

25  and the sewer to the unplatted lots, in what they called

1  limited improvement districts.

2           And I confirmed this again yesterday with the county,

3  and they generated some more information, which I forwarded to

4  the service that the Court is using.

5           But we -- when the County got permission from the

6  county commissioners to quickly go out and create lots that

7  were buildable to reduce the pressure to subdivide open space,

8  it was specifically not given the authority to interfere with

9  anybody's mortgage or relationship with their lenders.  So the

10  special improvement liens were a separate loan that each land

11  owner had to -- each lot owner had to enter into, and they had

12  a low interest rate of about six percent, and a decreasing

13  amortization.  So it was a ten-year amortization schedule where

14  the amount of the loan went down each year.

15           And I do believe that there was an error between the agent

16  at GMAC which was the construction loan originator, and GMAC as

17  far as how the loan was booked, because we paid the payments,

18  just like our neighbors did, directly to the county, and didn't

19  assume that it was part of the construction loan that we were

20  told to pay directly to the county.

21           And then when the construction -- it was a construction-

22  to-perm loan, so when it -- it automatically became the

23  permanent loan, there was not proper escrow if the lender

24  wanted to pay it.

25           So when -- what happened that was wrongful is that when

1   GMAC picked up the amount of the lien, it wrongfully
2   accelerated the loan.  So when it came to us at the time when
3   they disappeared from Colorado, and the market was starting to
4   go sideways, they increased the payment by enough to pay off
5   the entire remaining amortization over ten years in one year.
6   And that's when we started trying to contact people saying wait
7   a minute, this -- we've already paid the biggest payments on
8   the loan.  The loans are getting smaller every year.  We're
9   willing to pay them individually as per our contract with the
10  county.  But even if you choose to pay them under the deed of
11  trust, you're not seeing that this is a automatically
12  decreasing assessment at six percent, and you're wrongfully
13  accelerating the total amount of the assessment into a one-year
14  payment schedule.
15      So obviously it's just because of the fact that the
16  economy and the -- everything was tanking where it'd been --
17  really very rapidly.  Having the loan be treated that way was a
18  hardship.  But the thing that has made us, I think, stick with
19  this is that the lack of servicing of the loan, or any ability
20  to speak to anyone, or to resolve the matter was tremendously
21  frustrating.  And even when we did find someone to speak with
22  and get everything on track, and that's when the papers and all
23  these kinds of things, and there's some letter history in here
24  about that, three months later we would get, you know,
25  foreclosure notices or whatever that would indicate that we

RESIDENTIAL CAPITAL, LLC, et al.                    26

1    were back to square one.  So that happened over and over again,

2    Groundhog Day sort of a thing because of the lack of the

3    ability -- there was nobody servicing the loan.

4         So eventually, we found someone -- and I think that it was

5    just because the worst of the crisis was over and somebody

6    starting staffing the servicing function of GMAC -- and that

7    person completely understood the problem, looked at the

8    payment, saw that my payments are going up even though the debt

9    was going down, and that the ten-year schedule was one that I

10   had a contractual right to.  There hadn't been any event to

11   trigger acceleration of the loan.  And so they said, you know,

12   the only way you're going to change this because the -- first

13   of all, there's nobody for us to talk to.  There is no

14   structure within GMAC at this point where we can take this

15   problem to somebody and get a decision, get it resolved.  So

16   that person advised us to go and just pay off the balance of

17   the loan.  So at a time --

18              THE COURT:  May I ask you this?

19              MS. GREENE:  Yes.

20              THE COURT:  Because it appears to me from the papers I

21   reviewed that GMAC was paying amounts that Douglas County

22   billed, that the amount for, what, I guess, has been referred

23   to as the golf club lien, was included in the Douglas County

24   assessment bills for each six-month period.  Douglas County

25   would, twice a year, send out bills, and Douglas County

1   included the amounts for the so-called country club lien in

2   their tax bills, and that that's what GMAC paid.  Do you agree

3   or disagree with that?

4           MS. GREENE:  I think that, basically, I agree with

5   that.  They showed it as a separate line item, and they also

6   had a separate agreement with us for us to pay the payments

7   directly to them.  And yesterday when I spoke with the person

8   who's managed all the LIDs, the county has been this way, I get

9   the impression that other lenders had problems also trying to

10  understand whether or not they were supposed to collect an

11  escrow for the payment, which is a different issue than

12  acceleration.  But they told us that they absolutely never had

13  the authority to change, even via escrow, the payment between

14  the lender and the borrower.  They had -- they were -- when

15  they were given permission by their county commissioners to

16  start this program, they were specifically not given the right

17  to make the lender liable.  So --

18          THE COURT:  Well, but your -- I mean, your complaint

19  seems to be, frankly, with Douglas County, because Douglas

20  County was sending tax bills to the loan servicer that included

21  amounts for this country club assessment.

22          A failure of a servicer to pay it results in a lien.

23  Well, the servicer has to protect against a lien that could

24  subsequently be foreclosed on.  So I don't know whether you're

25  telling me that you think you paid this twice?

1        I mean I understand that in December of 2008 or in

2   January of 2009 you paid the country club lien in full, and

3   that as a result, the annual tax assessment would be reduced by

4   $4,457.68.  So is that an accurate statement?  Did you, either

5   in December 2008 or beginning of January 2009 pay off the full

6   amount of the tax assessment for -- of the lien, for the

7   country club lien?

8        MS. GREENE:  Yes.  I borrowed the money, and I credit

9   carded twenty-five percent and gave up the six percent

10  decreasing amortization, because of the wrongful acceleration.

11  I'm not --

12       THE COURT:  Well, when you say -- I don't understand

13  what you mean by wrongful acceleration, because if your

14  complaint is -- Douglas County kept sending tax bills that

15  included an amount, a line item, for this country club lien.

16       MS. GREENE:  What happened is that GMAC accelerated

17  the entire principal balance of the loan, even though the loan

18  was not in default, and of the special assessment lien loan.

19  And it was not in default.  There was no reason for them to

20  accelerate --

21       THE COURT:  May I ask you this?

22       MS. GREENE:  -- the balance.

23       THE COURT:  Did you pay directly any of the country

24  club lien before December 2008?

25       MS. GREENE:  Yes.

1          THE COURT:  When?

2          MS. GREENE:  I got the payment schedule from the

3   county yesterday --

4          THE COURT:  Okay.

5          MS. GREENE:  -- and they showed that I made my first

6   payment starting in 2005.

7          THE COURT:  Okay.  And how much were you paying on

8   this country club lien?

9          MS. GREENE:  $2,125.91 per payment.

10          THE COURT:  And how often did you make those payments?

11  Was it twice a year?

12          MS. GREENE:  Yes.

13          THE COURT:  Okay.

14          MS. GREENE:  And it decreased.  So the biggest

15  payments were in the early year.  So it's the wrongful

16  acceleration.

17          You know, I could quibble about the fact that I wasn't

18  given the ordinary, sort of, notice and a right to deal with

19  the escrow, you know, how many months of payments should they

20  hold in reserve, all those kinds of things --

21          THE COURT:  Right.

22          MS. GREENE:  -- when GMAC decided to pay this and to

23  accelerate the loan.  But to me, I believe, that the breach of

24  law by GMAC was the acceleration of the loan.

25          And then the thing that has made us tenacious is that

1   the unreasonable lack of servicing of the loan so that we had

2   no contact.  There was no, you know, escrow phone number to

3   call to discuss your escrow account.  And just how unbelievably

4   difficult it was to resolve an issue led to us having to

5   quickly pay off the loan at twenty-five percent interest

6   instead of continuing our payments that were declining at six-

7   percent interest.

8           So you know, I don't think it's worth your time to

9   dispute the payments that GMAC did make, even though -- even

10  then we were trying to get a servicing person to look at it,

11  because, for instance, on just the escrow reserves, they were

12  continuing to take the payment at the larger amount of the

13  prior year, and then to forecast that into the future year and

14  to say, you know, we have the right to several months of

15  reserve at that level.

16          And then we were trying to find somebody who said but

17  wait a minute, we already have the payment schedule, and we've

18  sent it to you multiple times and there's X numbers where

19  there's nobody home, and this loan goes down pretty

20  precipitously.  So you're over-escrowing.

21          So still during that period, at least, they were

22  making the payments and there was something somewhat logical

23  going on.  But during that same period, they accelerated the

24  balance of the loan which I don't believe they were authorized

25  to do under the deed of trust or any other document recorded

1   against the property, and at the same time there was a total

2   lack of servicing.

3        So we offered to settle this years ago for 6,000

4   dollars, our 28,000-dollar claim.  I signed a settlement

5   agreement that -- you know, we've had ever-changing folks that

6   people like me have been allowed to speak with, and we

7   negotiated a settlement several years ago and signed a

8   settlement agreement, and all that just keeps disappearing.

9        So even though the Court has had an incredible job to

10  try to manage all this, it still, from our point of view,

11  hasn't improved all that much from making all the phone calls

12  to the servicing people that weren't there because it's been

13  very, very hard to have a consistent dealing with this matter

14  with any party --

15       THE COURT:  Right.

16       MS. GREENE:  -- that was looking at our interests.

17       THE COURT:  May I ask you, Ms. Greene, because you

18  said you just got some more papers from the county --

19       MS. GREENE:  Yes.

20       THE COURT:  -- that shows the history of your payment.

21       MS. GREENE:  I've already sent those -- yes.  I sent

22  those to -- it reads on my e-mails "Richie Lim" and I believe

23  that that is a -- I got it right here -- but it's a company

24  that is employed by the court to help with the documents.  It's

25  called Legal Vision Consulting Group in Los Angeles,

1  California.

2          THE COURT:  Okay.  We --

3          MS. GREENE:  So I did forward those yesterday.

4          THE COURT:  Okay.  Here's what I'm -- well, Mr.

5  Wishnew, do you know about these documents, these additional

6  documents?

7          MR. WISHNEW:  I saw an e-mail forwarded from Mr. Lim

8  last evening.  I didn't have a chance to look at them.

9          THE COURT:  All right.  What I'm going to do is I'm

10  going to adjourn this matter.  I want -- Mr. Wishnew, I want

11  you to speak with Ms. Greene and see whether you can come to a

12  resolution.

13          The facts on this are very confusing to me.  And when

14  I came on the bench today, Mr. Wishnew, it was very unclear

15  whether there are disputed issues of fact that would prevent

16  the Court from resolving this on the basis of the claim

17  objection without an evidentiary hearing.

18          After hearing Ms. Greene, it appears to me that there

19  may well be disputed issues of fact, but I'm just uncertain

20  about it.  From reading your papers, Mr. Wishnew, it certainly

21  didn't appear to me that the Greenes had made any of the

22  payments directly to the county for this portion of the

23  assessment.  And --

24          MR. WISHNEW:  My -- oh.

25          THE COURT:  Go ahead.

RESIDENTIAL CAPITAL, LLC, et al.                    33

1          MR. WISHNEW:  My understanding, Your Honor, was that
2    from the time while GMAC Mortgage serviced the loan that, in
3    fact, was the case that they were not --
4          THE COURT:  All right.
5          MR. WISHNEW:  -- making payments to the county.
6          THE COURT:  So what I want you to do is -- Ms. Greene,
7    you don't have an attorney; am I correct?
8          MS. GREENE:  Correct.
9          THE COURT:  Okay.
10          MS. GREENE:  But I would be happy to provide the
11    transaction history, Your Honor.
12          THE COURT:  Well, I want you to speak with Mr.
13    Wishnew, or he'll have one of his colleagues do it, but I want
14    this to be done pretty promptly, Mr. Wishnew.  I think I'd like
15    to get to the bottom of whether there are disputed issues of
16    fact, whether -- Ms. Greene, let me ask you this, for what
17    period of time were you directly paying this assessment to the
18    county?  You referred to 2006, 2007.  Did you continue paying
19    the assessment, because what the submission by the trust is
20    that in 2007 and 2008 and 2009 were you paying the assessment
21    directly to the county during those years: 2007, 2008, 2009?
22          MS. GREENE:  Your Honor, I believe that during the
23    period of the construction loan, which was 2005 and 2006, I
24    paid directly to the county, and I believe when it converted to
25    the permanent loan that the first time that GMAC got its

RESIDENTIAL CAPITAL, LLC, et al.                    34

1  ordinary tax notice, that it paid without contacting us the
2  first year to amend the escrow, and then caught its own error
3  there the second year.  And then besides amending the escrow
4  payment to properly reflect the payments that it was making, it
5  accelerated the loan even though --

6         THE COURT:  Well, it only would have accelerated the
7  loan for nonpayment that --

8         MS. GREENE:  There was no nonpayment.  There was no
9  nonpayment.  There was never a skipped payment.

10        THE COURT:  Right.

11        MR. WISHNEW:  There was never any default.  There was
12 never any nonpayment by anybody.  And the county, of course, if
13 there had been nonpayment under the direct contract between us
14 and the county had its own ability to lien and was trying to
15 service these outside of people's mortgages, because they were
16 spotty and too hard to administer for the county.  When they
17 would go in and put in the water and sewer for a lot, it was
18 spotty where they did it.  So they were trying not to collect
19 them through that sort of assessment, but that's not really
20 important.  What's important --

21        THE COURT:  Well, if they kept sending the bill -- if
22 the county --

23        MS. GREENE:  -- is that --

24        THE COURT:  -- Ms. Greene, if the county kept sending
25 the bill to the loan servicer, they need to pay it.  But here's

RESIDENTIAL CAPITAL, LLC, et al.                    35

1  what you're going to do.  Stop --

2          MS. GREENE:  And it's

3          THE COURT:  Stop --

4          MS. GREENE:  -- one thing --

5          THE COURT:  Stop.

6          MS. GREENE:  -- that I'm saying --

7          THE COURT:  Stop.

8          MS. GREENE:  -- I'm not disputing that.

9          THE COURT:  Ms. Greene, just --

10         MS. GREENE:  I'm disputing the acceleration.

11         THE COURT:  Ms. Greene, just stop.

12         MS. GREENE:  Yes.  I'm sorry, sir.

13         THE COURT:  Okay.  Mr. Wishnew, talk with Ms. Greene.

14  You're going to need to file a supplemental declaration from

15  Ms. Lathrop or the appropriate person.  I need a clear

16  explanation of what this is about, okay.  And you can, instead

17  of giving me a binder that's seven inches thick with papers on

18  multiple matters, you can -- I want resubmitted to me one set

19  of papers that just focus on the Greene matter so that I can

20  follow them, because I got at least six exhibits of the same

21  letter in this binder, and I can't find anything in there.

22  It's just -- okay.  But it may well be that there are disputed

23  issues of fact and this is going to have to go forward with an

24  evidentiary hearing.

25          It was -- this story is not clear to me.  Talk with

RESIDENTIAL CAPITAL, LLC, et al.                    36

1   Ms. Greene.  See if you can get the matter resolved.  If you
2   can't, work out a date with Ms. Greene for an omnibus hearing
3   date when it'll be on the calendar again.
4           If there are disputed issues of fact, please identify
5   what those are.  And if we have to schedule it for an
6   evidentiary hearing, we'll do that.
7           Ms. Greene, I have to tell you, if we schedule it for
8   an evidentiary hearing, you're going to have to be in court.  I
9   don't do evident -- if you're going to have to testify.  I
10   mean, I'm fine with taking exhibits and looking at them if
11   they're not disputed, but if there is disputed testimony, that
12   has to occur in the court; I'm just alerting you to that now.
13           You're entitled to a fair decision on this dispute and
14   you'll get it.  I just need some more clarity about what it is.
15   So why don't you see if you can -- talk to Ms. Greene to see
16   whether you can get it resolved.  Make sure that this -- that
17   the history of this is clearly laid out for the Court.  If it's
18   going to go forward, you're going to have to put in a
19   supplemental declaration to Ms. Greene.  And Ms. Greene, you
20   can put in a statement -- you can put your statement under oath
21   as well and file it.  I'll give you a chance.  Work out that
22   schedule for filings with Mr. Wishnew and let's see if we can
23   get this resolved, okay?
24           MS. GREENE:  Thank you, Your Honor.
25           THE COURT:  All right.  Thank you very much.

RESIDENTIAL CAPITAL, LLC, et al.                    37

1           MS. GREENE:  May I please give Mr. Wishnew my work

2    phone number so that he can find me?

3           THE COURT:  Well, go ahead and give it to him.  He's

4    going to write it down.

5           MS. GREENE:  Okay.  It's 303-681-3073.

6           THE COURT:  All right.

7           MR. WISHNEW:  Thank you.

8           MS. GREENE:  Thank you, Your Honor.

9           THE COURT:  Thank you.

10          MS. GREENE:  Bye-bye.

11          MR. WISHNEW:  Your Honor, may I approach and just take

12   back my exhibits?

13          THE COURT:  Yes, you can take back your exhibits.  If

14   you'd like, I'll give you this whole binder back too.

15          MR. WISHNEW:  Yes.

16          THE COURT:  All right.  Anything else for today, Mr.

17   Wishnew?

18          MR. WISHNEW:  No, that's it, Your Honor.

19          THE COURT:  All right.  We're in recess for five

20   minutes.

21          MS. GREENE:  Thank you.

22          THE COURT:  Thank you.

23     (Whereupon these proceedings were concluded at 10:56 AM)

24

25

38

1

2                        C E R T I F I C A T I O N

3

4    I, Esther Accardi, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9

10   _____

11   ESTHER ACCARDI

12   AAERT Certified Electronic Transcriber CET**D 485

13

14   eScribers

15   700 West 192nd Street, Suite #607

16   New York, NY 10040

17

18   Date:  March 23, 2016

19

20

21

22

23

24

25