UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
Case No. 12-12020-mg

- - - - - - - - - - - - - - - - - - - - - -x

In the Matter of:

RESIDENTIAL CAPITAL, LLC, et al.,

Debtors.

- - - - - - - - - - - - - - - - - - - - - -x

United States Bankruptcy Court
One Bowling Green
New York, New York

March 25, 2016
9:19 AM

B E F O R E:
HON. MARTIN GLENN
U.S. BANKRUPTCY JUDGE

Doc# 9226 Trial Regarding The ResCap Liquidating Trusts and ResCap Borrower Claims Trust's Objection to Claim Nos. 112, 114, 416 and 417 Filed by Erlinda Abibas Aniel, Fermin Solis Aniel, and Marc Jason Aniel. Marked Up Documents: 8475, 8820, 8897, 9003, 9023, 9027, 9051, 9055, 9112, 9119, 9153, 9176, 9228, 9326, 9725, 9741, 9742, 9755.

Transcribed by: David Rutt
eScribers, LLC
700 West 192nd Street, Suite #607
New York, NY 10040
(973)406-2250
operations@escribers.net

A P P E A R A N C E S :

MORRISON & FOERSTER LLP

Attorneys for ResCap Borrower Claims Trust

250 West 55th Street

New York, NY 10019

BY: JORDAN A. WISHNEW, ESQ.

JESSICA J. ARETT, ESQ.

APPEARING PRO SE:

ERLINDA ABIBAS ANIEL

**P R O C E E D I N G S**

**THE COURT: All right, please be seated. We're here in Residential Capital, number 12-12020. This is day 2 in connection with the trial of the contested matter of the Aniel claim.**

**All right, anybody have anything to say before we begin today?**

**Nope. Okay, so we have one witness left: Ms. Aniel. And let me just explain, before you come up, when someone like yourself doesn't have a lawyer, there's obviously no one to ask you questions. And what I typically do, because we've had a series of these trials in ResCap matters, is you'll come up to the witness stand, you'll be sworn, and I let you testify in what's called the narrative form. Essentially, you're going to explain the facts that you want me to know. It may be that Mr. Wishnew may have objections; he will state them if he does. I indicated yesterday, when I have trials that involve pro se parties, people who are not represented by attorneys, I try to provide some leeway because they're usually not really attuned to the Rules of Evidence or other procedural rules.**

**Before you come up, Ms. Aniel, as I explained multiple times yesterday, the issues in this trial were defined by my prior opinion and by the joint pretrial-conference order, which the parties signed and which the Court entered. So you need to focus your testimony on those issues specifically identified**

for trial, either in the prior opinion or the joint pretrial-conference order.

When we finished yesterday, as you know, this is what I refer to as a timed trial; each side had five hours for their presentations. And when we concluded yesterday, I believe it was -- an hour and two minutes was the amount of time that you have remaining. The amount of time that Mr. Wishnew may take in examining you doesn't count against your time; it's your testimony. And then when we get to closing arguments, if you want to make a closing argument, that's what your time is going to count against. Okay?

MS. ANIEL: Okay. Thank you, Your Honor.

THE COURT: All right, so -- and what you should do is you'll come up to the witness stand; bring any papers you want to refer to. And we had numerous exhibits that were introduced in evidence yesterday that were all in evidence. If there're any documents, additional ones, that you're going to offer, you have to make sure you identify by exhibit number what it is you're referring to. If it's not in evidence, you'll have to offer it in evidence if you intend to. If you have any notes that you want to use, I assume -- I note, from watching you yesterday, you were very well prepared and you had notes; you can certainly bring those up with you. Okay?

MS. ANIEL: Okay. Thank you, Your Honor.

THE COURT: All right.

MS. ANIEL: Before I begin to be a witness, I would like to apologize to you yesterday (sic) --

THE COURT: I don't want any apol -- you don't need to apologize to me.

MS. ANIEL: -- because I'm kind of -- I researched; I should not cross-examine my witness. So now I realize that mistake. So I really apologize.

THE COURT: Well, no apology is necessary. And I certainly didn't intend -- I wasn't mad at you at all. And I don't mean -- I don't want you -- I try to be respectful of witnesses but, when the issues for trial are defined, I also try to keep everybody on track for those issues.

MS. ANIEL: I understand.

THE COURT: Okay?

MS. ANIEL: I understand.

THE COURT: So why don't you bring up whatever papers you want. And you saw the routine: you'll come up, you'll be sworn. You'll be either asked to swear or affirm, so -- because I know, for many people, they don't wish to swear, but they affirm the truth of what they're saying. Okay?

MS. ANIEL: Okay. Thank you.

THE COURT: All right. And there is water up at the witness stand.

Maybe somebody could come help her coming up. Okay?

Let somebody help you; you have a lot of paper there.

Okay?

Okay, so come on up, put your papers down, and just stand there and raise your right hand, and the reporter will administer the oath. Okay? Just, why don't you stand, raise your hand. That's --

(Witness sworn)

THE COURT: All right. Mrs. Aniel, please have a seat.

Okay, whenever you're ready, you can begin, okay?

MS. ANIEL: Okay. Good morning, everyone. My name is Erlinda Abibas Aniel. I'm representing myself as pro se. My story began in 2008 when I tried to dispute the late payment that I was assessed by GMAC Mortgage, LLC. And I -- the reason for me calling on the 2008, because there was, like, amount of 375 dollars. My monthly payment was 7,500-something. And if you have a late payment, if they don't receive the payment until the 15th of the month, I will be assessed by a person of my mortgage, until payment.

So I called GMAC to clarify the things, and I said I mail all my bills every 9th or 10th of the month, so there is time for the mail to receive (sic) before the 15th, because some of my bills was received on the 12th. And then they said that they received it on the 16th. So I was asking, why you have penalized me for that 375 dollars plus interest aside? But these are plus interest. And then the customer service --

THE COURT: May I ask you this? How much was the amount of your mortgage? How much was the mortgage?

MS. ANIEL: Payment?

THE COURT: No, not the payment. The total amount that was -- the mortgage you had obtained.

MS. ANIEL: Two million.

THE COURT: Okay, two million. Okay. All right.

MS. ANIEL: And it was adjustable-rate LIBOR. And I have to start from 1.25-percent monthly payment, like, for three months, I think. It says on my --

THE COURT: Um-hum.

MS. ANIEL: And it would -- after five years, it would increase my mortgage payment, and it has negative amortization, meaning that whatever principal -- because I'm just paying the interest of that particular loan, the two million. So whatever negative on that payment, it will add on into my principal balance. I only paid interest, okay, not the principal; only interest. So whatever negative on that would go to my principal balance.

And then during a conversation, I said I'm going to pay that, I'm going to dispute that. And there is some kind of very persistent (sic), by the customer service. I even asked her name. Said, no, we don't give our name, we just say "customer service". And I asked them, you know, if I could modify my loans, and they said, no, ma'am, you cannot modify

the loan, because you have no hardship. I said, what do you mean "hardship"? You don't -- you're always on time on paying your mortgage. I said, you just told me that I was late for, you know, one day, that's why you charged me 375 dollars. And she said, no, you're on time but, only, you have to pay because we received your payment one day behind the -- after the cut -- after the cutoff date of the 15th. And I said -- you have to create hardship. I said, okay, so -- I said, okay, you have to -- I have to create hardship in ninety days and then I have to call them back after ninety days, to be approved for loan modification.

So that's what -- because it was instigated by GMAC, enticed me to default my loans. That's what I did, Your Honor.

MR. WISHNEW: Your Honor, objection.

THE COURT: Overruled.

MS. ANIEL: On -- in September, because I was already late, on -- I did that; I did default, because it was instigated by GMAC. And then by September, you know, I was trying to look for an attorney to help me modify the loan -- help me modify the loan. And I paid money for the attorney, and the attorney did his job; you know, they called GMAC. And my lawyer is complaining it's so hard to get these people, because at that time in 2008, that's where the crisis began, the --

THE COURT: The financial crisis.

MS. ANIEL: The financial crisis began. And then the lending -- you know, borrowing, lending, you know, they cut it off. So I don't have -- we don't have a chance to refinance our loan, because all the bank close the credit lending and we have no -- we have no choice.

And at that time my husband was so angry to me because -- I mean, I was the one doing the financial budgeting, and he said that, why do you have to believe -- why do you have to believe those people? And then after ninety days, I received a late payment (sic) and they add on -- they add on fees, GMAC. I owe a lot of fees that you cannot even afford to pay, you know, aside from the late payment of ninety days, which is total twenty-one days. They add more, like foreclosure fees, attorney's fees, any fees, loan release, that when you call them, you meet the customer service, they just say something; it was scripted there. They just say something differently; oh, Ms. Aniel, you default. I said, you know, you were the one who told me this, to default in the first place. And, Ms. Aniel, the same, the same; it's just like a puppet that keep on repeating their words.

And I was, like, helpless because, you know, a lot of paperwork, notice of default, assignment of the two thousand -- no, substitution of trustee, notice of default. So I kind of like -- I rattle (sic). And that's why I hired the attorney. And the attorney also complaining about GMAC, because he cannot

get the right people who would really, you know, do the processing.

And all of a sudden, I received something, papers; I thought it was loan-modification package. It's a packet of short sale. So I call again and said, I'm not going to have to short-sale my property, I want loan modification. And this guy, this guy, loan customer service -- I think they're a calling center. Okay? And they said, okay, I'm going to pass this on that you'd like loan modification, you don't want short sale. And after that, I keep on calling and calling; you know, sometimes it disconnect.

It's so hard, Your Honor, at that time, you know. And they're so crazy, and everyone were on default -- because I thought I'm the only one who were in default. And then I read in the newspaper that there was a financial crisis that was created by Wall Street, by the bank, by the -- everyone. And so I started --

THE COURT: May I ask you this? When did you buy your house?

MS. ANIEL: I bought it in 2005, Your Honor; it's a fixer-upper. I spent, like, 750- to remodel that house. And I owe some money for my family and my friends. And everyone doesn't care. Even I wrote a letter to my senator, Dianne Feinstein. I wrote a letter to DOJ. I wrote every -- you know, I tried my very best to do my best, okay, to go to my

politicians, to -- you know, to help me understand this crisis, because nobody explained this to us. There were promise from the loan servicer that they will, you know, do the loan modification after I was defaulted. And now I realize I'm not the only one that were promised. Millions of homeowners were promised.

So I said, you know -- I feel bad but I said, oh, I'm not the only one who has this kind of situation, because I was so embarrassed, Your Honor, because no realtor, nothing on my door, you know, and said, oh, we have -- from -- GMAC sent us here, we have to sell your house. And --

THE COURT: Tell me again where the house is.

MS. ANIEL: Pardon me?

THE COURT: Tell me again where the house is.

MS. ANIEL: The house is located in Hillsborough, California.

THE COURT: I'm sorry; where in California?

MS. ANIEL: Hillsborough, California.

THE COURT: Hillsborough.

MS. ANIEL: Yeah.

THE COURT: You're in California? Yeah.

MS. ANIEL: And I become reclusive, myself. So in 2009 I have no choice; I have to -- decided to file bankruptcy, Your Honor, because our culture, when you file bankruptcy, like, you are financially -- like, it's embarrassing and it's

kind of you're a failure financially. But I was forced. All I need is loan modification; that's it. Now I have to dig into this, why I was -- why they told me to foreclose. And for -- since 2008, I start digging, reading. And I found out that the reason why they have to do that: because based on the pooling and servicing agreement, the loan servicer has created an assignment -- they call it assignment -- assumption, assignment, recognition agreement between --

MR. WISHNEW: Objection, Your Honor. Relevance.

THE COURT: Overruled.

MS. ANIEL: -- between the trustee, which is HSBC, Wells Fargo -- I'm sorry, Your Honor; not HSBC. Between Wells Fargo, is master servicer; between Deutsche Bank, because in the pooling and servicing (sic), Deutsche Bank is the seller; and A (ph.) Security -- A is the buyer of those mortgages. And then master servicer is the Wells Fargo. And the loan servicer is GMAC. They made that contract that any loans that been in default will be handled by GMAC.

On this agreement, can I do it as an exhibit, Your Honor?

THE COURT: Sure.

MS. ANIEL: Assignment and recognition. Assignment, assumption, and recognition agreement.

THE COURT: Is that in evidence yet?

MS. ANIEL: Pardon me, Your Honor?

THE COURT: Is that one of the exhibits that came into evidence yesterday, or not?

MS. ANIEL: Yeah, I think -- I think so.

THE COURT: May I see what it is and I'll --

MS. ANIEL: Yeah. I'm sorry.

THE COURT: No, I don't think it was. Is this in your exhibit binder?

MS. ANIEL: Yes, yes.

MR. WISHNEW: Exhibit 9, Your Honor.

THE COURT: All right.

All right, what Ms. Aniel has shown me is Exhibit 9, Aniel Exhibit 9.

Okay, go on with your explanation.

MS. ANIEL: Yeah, explained there that any defaulted loan or charged-off loan, they would have to create an account number, an account -- bank account. So any default, foreclosure, pre-payment penalties, foreclosure, payment penalt -- you know, REO, if they liquidate that -- liquidation and they collect money, they would pay that to the senior certificate -- the one who holds the senior certificate will be paid. Whatever remaining -- that's my understanding: whatever remaining money on that, it goes to the lower certificate; my understanding, goes to the trustee. That's my understanding, you know. I believe on the document.

And at the same time, GMAC also received the loan

servicing, and also the credit-risk manager continued to receive fee from out of that agreement. And then out of that agreement, there's another agreement from Deutsche Bank, between Deutsche Bank, HSBC trustee, and Wells Fargo. It's all about swap transaction.

You know, did you hear about London Whale? That was big news. So since my loan was part of the LIBOR, Your Honor, okay, so they -- what I read about LIBOR scandal Whale is that both banks -- I think those four banks are trying to manipulate the rate.

MR. WISHNEW: Objection, Your Honor.

THE COURT: I'm going to sustain that objection because you indicated that -- you didn't say that -- you didn't say GMAC was a part of any agreement on that, or that that was -- okay, so I'm going to sustain the objection. But go on with your story.

MS. ANIEL: Okay. That's how also they would profit; GMAC would also profit on that servicing -- on that contract, because they are the loan servicer.

And then I found out also, based on the testimony of Kathy Priore, that my deed of trust -- who did the deed of trust, was just on the MIRST (sic) --

THE COURT: MERS.

MS. ANIEL: -- Mortgage Electronic Servicing --

THE COURT: Yeah. Recording --

MS. ANIEL: Or Recording. Yes.

THE COURT: Mortgage Electronic Recording Service.

MS. ANIEL: I cannot straight --

THE COURT: I know.

MS. ANIEL: -- that, Your Honor.

THE COURT: Okay.

MS. ANIEL: MERS. Thank you, Your Honor.

THE COURT: M-E-R-S is MERS.

MS. ANIEL: Yes. Uh-huh.

And then it was just sitting there since 2009. And they are saying that my loan was already in the trash on 2007 and the cutoff date. You cannot add on a loan after the cutoff date, because it violates the pooling and servicing agreement. You cannot add on any loans at all.

What happened during this crisis --

THE COURT: Okay, let me -- I want to stop you because I want -- we got to focus on the issues that are being tried. I'm trying to let you tell your -- explain your story, and I don't want to unduly interfere with it. But as happened yesterday when you were cross-examining Ms. Priore or the other witnesses, the pooling and servicing agreement doesn't have any bearing on the issues that we're trying here. So, try and keep your testimony focused on the issues that are part of this trial, okay?

MS. ANIEL: Okay. Oh, the issue of Mira Smoot?

THE COURT: It's the issues that are in the trial.

MS. ANIEL: Yeah.

THE COURT: I'm trying to let you -- I'm trying not to interrupt you, but you got to stay focused on what are the issues for the trial.

MS. ANIEL: Okay. I was reviewing the 2008 substitution of trustee and then --

THE COURT: Okay, just stop for a second, okay? The 2008 substitution of trustee was introduced in evidence yesterday as Exhibit E.

MS. ANIEL: Yeah. And I was looking on the one who executed it; it was Steel Meers (ph.), but was never mentioned Meers as a nominee for mortgagee. And I don't know -- Your Honor, at that time I don't know who really owns my note, because they're so reluctant to -- because every time I talked to customer (sic), they don't know. So what I did, I wrote a qualified written request many times, many times; I think, three or four. And they would always answer me in different tone: that I owe money, that -- in fact, I just received recently that I owe money to HarborView, from Ocwen, 2006. Even though Ocwen already give IRS notice, 1098 IRS notice that my loan has been paid off, they still keep on going after me, because I think the collector, they never upgraded their information; that's why I was still harassed until now, Your Honor.

THE COURT: May I ask you, are you still living in the house?

MS. ANIEL: Yes, Your Honor.

THE COURT: Okay. Did you pay off the loan to -- did you pay off the loan when Ocwen was servicing the loan?

MS. ANIEL: I received from -- see, what happened when I was fil -- when I went -- when I filed in bankruptcy, and then I disputed the proof of claim that was submitted by GMAC, and the judge says -- I dispute it because they attach a note, promissory note, saying that -- I said I want -- Your Honor, I want to find out who owns my note. And the judge said, there's no endorsement on the back of the note. And the judge says, okay, there was no -- I cannot release the motion for relief from stay, because they want motion for relief from stay. I cannot do that until -- have to find out why is it that there's no endorsement. That was in 2009, in September 2009, that they filed that motion for relief from stay, and also proof of claim.

And then at the same time the judge said, I'm not going to do that. And then they sent me to another -- after sixty months, they sent me to -- and the bankruptcy court stamp "without recourse". That is on part of my exhibit, Your Honor.

THE COURT: May I ask this? Do you still receive statements for monthly mortgage payments, from Ocwen?

MS. ANIEL: Yes, Your Honor, including 1st Place

Insurance. I told them don't -- I have my own insurance and you have no right to ask me that.

THE COURT: What happened once Ocwen started servicing really isn't an issue here, but I just want to know are you paying the mortgage payments to Ocwen or not?

MS. ANIEL: No more.

THE COURT: Okay. Go ahead. Go ahead with your -- let's focus back. And I diverted you away from it. Let's focus on the period when GMAC was servicing the loan. You referred to the substitution of trustee, which is Exhibit E. Why don't you --

MS. ANIEL: Yes.

THE COURT: -- pick up with your explanation.

MS. ANIEL: And then all of a sudden my promissory -- after six months, my promissory note was -- there was an endorsement of my promissory note.

Then I kind of -- wow, this must be -- this must be something else, because the first -- the foreclos -- now I know who (sic) is this foreclosure. Foreclosure means -- that hold in foreclosure means, because they just submitted every documentation in the court, given to them by the client, without even researching it through, Your Honor. You know, my second loan was already paid; I have a second loan, Your Honor; it was (sic) been paid in 2012. The lawyer of GMAC keep on asking me that. I said, did you read my statement that it was

already paid? They come after me, the 500, even though there is already reconveyance, there was already promissory note that was been stop paid that point.

THE COURT: May I ask you, who was the second mortgage with?

MS. ANIEL: Washington.

THE COURT: Washington Mutual?

MS. ANIEL: Mutual.

THE COURT: How much was the second mortgage?

MS. ANIEL: Half million.

THE COURT: Okay. And you paid that?

MS. ANIEL: No, I did not --

THE COURT: No?

MS. ANIEL: -- pay that. It was part of the settlement from West Bank (ph.) -- from MemberCore (ph.); was into receivership.

THE COURT: Okay.

MS. ANIEL: And --

THE COURT: So do you still receive monthly bills for the second mortgage as well?

MS. ANIEL: Oh, no more, Your Honor.

THE COURT: Okay. All right, go ahead.

MS. ANIEL: And so the judge -- when I was -- I was on Chapter 11, Your Honor, and doing it also on my own because I had no money at the time because they were asking me 200,000 in

the preferred (ph.) Chapter 11. I don't even know Chapter 11, what is Chapter 11, you know, so I have to study on my own.

And then the judge says, okay, we will convert your case in 7. And the note on this particular house was -- how do you call that -- was charged off and secured.

THE COURT: How much did you pay for the house when you bought it?

MS. ANIEL: I paid it for 2,210,000. I spent 700-plus on the repair. I cannot sell my property. I want to sell my property. There is a defect on my title right now. Right now I have criminal report there. No, I cannot sell, Your Honor, because of these abuses by GMAC. It has to be stopped.

And the lawyers who is, you know, fighting on behalf the loan servicer, they don't care. They play games to the homeowners. They don't even read the document. Even the 2013 power of attorney they don't even read. I told that to Mr. Wishnew that there is a fraudulent documentation that was filed in this court, and he always say, we don't care.

MR. WISHNEW: Objection, Your Honor.

MS. ANIEL: Yes, I always -- that's why I was surprised.

THE COURT: Sustained.

Go ahead with your story.

MS. ANIEL: No, I'm just, you know --

THE COURT: Focus on the facts when GMAC was servicing

your loan, okay? So you --

MS. ANIEL: GMAC --

THE COURT: -- you told me about the substitution of trustee from 2008. What happened after that?

MS. ANIEL: So after 2008, there was assignment of the deed of trust. Then I found out it says --

THE COURT: Okay, there was an assignment of the deed of trust that was introduced in evidence yesterday as Exhibit F; it was the assignment that was done in August of 2009.

MS. ANIEL: A security deed and recorded, I think, 9/21/2009.

THE COURT: Correct.

MS. ANIEL: And I filed my bankruptcy in February 2009. Okay? And they're not supposed to make that assignment of the deed, because I was in the bankruptcy. They cannot transfer beneficial interest.

THE COURT: Actually they can. It doesn't affect you. They can -- they're permitted to do that when you're in a bankruptcy. It's not an effort -- but let's go on with your story.

MS. ANIEL: Oh, okay. And that's where I found out that HSBC -- I said, what is this HSBC DALT? It says DALT 2007-OA5.

THE COURT: Just say -- so the record's clear, what you're referring to is the 2009 assignment of the deed of

trust. MERS transferred the deed of trust to HSBC Bank for DALT, D-A-L-T, 2007-OA5; that was a securitization trust that held your loan. Okay.

MS. ANIEL: Yes, but I don't know securit -- but that time I really don't know, because I know I owe money to mortgagee. And I said, who is this DALT? Even under -- I Google it. What is this Alt? I really don't understand. And then suddenly I said, why is it like that on my deed of trust I owe money to mortgagee? Now there was a transfer from MERS as beneficiary -- MERS as a nominee for mortgagee.

Then I tried to figure out that MERS and mortgage (sic) sold my property -- I understand, sold my property, because the deed of trust -- and they're not together with the deed -- note together with it. Right? So that's my understanding. I said, probably it was sold in 2009. Okay? But GMAC witnesses that my loan was on the trust in 2007. So how -- why is it only in 2009 that they were able to transfer that interest -- beneficial interest?

So now I have the conclusion that the trust is empty; there is no transfer based on the pooling and servicing agreement, because on the prospectus supplement --

MR. WISHNEW: Objection, Your Honor.

THE COURT: Overruled.

MS. ANIEL: -- there are a list of all the loans that was included on the trust. And I'm going to tell you -- I'm

going to -- this is going to be my exhibit, Your Honor -- this trust belonged to Kennedy (ph.) Family Trust Fund, if you read the prospectus and the pooling and servicing agreement.

THE COURT: All right --

MS. ANIEL: Okay?

THE COURT: -- I'm going to sustain that last objection, because what you're telling me now doesn't bear on the issues for this trial. So, go ahead with your story.

MS. ANIEL: There's a lease of the loans. Whose loans belong to the pooling and servicing agreement under the trust? My loan was never there, and I could show it to Your Honor, if you may.

THE COURT: I decided certain things in the earlier opinion, and we're not going to revisit those issues now.

MS. ANIEL: Okay.

THE COURT: The issues for this trial are those four that were listed -- that are listed in the joint pretrial-conference order. I understand you feel strongly about these additional facts, but let's stay focused on the issues for the trial. Go ahead.

MS. ANIEL: And there was a call -- I received a lot of call from (sic) my phone. That's why I was so scared on my -- line (sic) phones. I was so scared to answer it anymore, Your Honor, because, you know, sometimes it's a recording and like a debt collector going after you about me not paying. And

even the previous foreclosure MERS lawyer during my bankruptcy court -- you know, they would embarrass me, they would call me a -- bad words, you know, that I'm not paying my mortgage. And I keep saying, I don't owe any money to GMAC, you have to prove to me who is the owner. They won't tell, until I find out in September, recorded assignment of the deed in 2009.

I was -- the impression of the people in the bankruptcy, and the impression of the judge at that time -- because I don't know if judges of the court knows about this scam.

MR. WISHNEW: Objection, Your Honor.

MS. ANIEL: These are scam people.

THE COURT: Overruled.

MS. ANIEL: You know, how many --

THE COURT: Let's try and stay focused on the issues --

MS. ANIEL: Yeah.

THE COURT: -- okay?

MS. ANIEL: And then in 2012, before GMAC filed bankruptcy, I received another substitution of trustee; it was still mortgage -- it was still been -- MERS was still executing those in the name of mortgagee; it's not in the name of the trust.

THE COURT: So the 2012 substitution of trustee was introduced in evidence yesterday as Exhibit I, and it's --

MS. ANIEL: Yeah.

THE COURT: -- dated April 5th, 2012; and that's in evidence.

Go ahead.

MS. ANIEL: Yes. And then there was a notice of -- notice of default. There was a notice of trustee sale. And I have no choice. You know, this was after my bankruptcy.

THE COURT: Okay, the notice of default is Exhibit J in evidence.

MS. ANIEL: J, yeah.

THE COURT: Go ahead.

MS. ANIEL: This was after the fact that my bankruptcy -- I was destroyed with my bankruptcy, discharging the two million as unsecured loans. And then they started the process again, you know, to foreclose the property, because they said that I still owe them the deed of trust. I said, deed of trust, I don't owe any deed of trust, it's just security of the note. If the note becomes void, so with the deed of trust. They said, no, Ms. Aniel. I think the name of that lady's Jan -- Janice -- Jan -- forget her name. But I have a letter that I keep that.

So I said, all I ask from you is the reconveyance of my property so that I could move on with my life. And they said, no, your note was discharged but your deed of trust is not discharged.

THE COURT: That's the law. The law is that the personal liability on the note can be discharged in a bankruptcy, but what's referred to is that the lien rides through the bankruptcy, the lien still exists. And after the bankruptcy closes, they can't recover from you as a personal liability but they can foreclose on the property.

MS. ANIEL: Yeah, but I told them --

THE COURT: That's the law.

MS. ANIEL: Yeah, I agree with that. But I told them that they separated my deed of trust and my note.

THE COURT: Okay. Let's go on with this. I understand this is what you said, but let's stay focused on the issues here.

MS. ANIEL: And then in 2012 there was -- before the bankruptcy, there was kind of pressuring, pressuring; another broker, sometimes two times, knocking on my door. And I was so scared. Even the mailman, he did bring a lot of, you know, those that have to sign. Like, I kind of get panicky, you know, that, oh, my God, what's -- another thing, you know. They don't offer anything of loan modification.

There was one letter that I received that I have to call this number, like home ownership, something like that. I tried to call but, Your Honor -- and you know what, the customer service says, before we have to entertain you, you have to pay your arrears, the arrears that they put on my

original notice, like, one million. So I have to pay one million in order for me to try to modify the loan?

I mean, there is no good-faith effort for GMAC, you know, to correct their mistake, even though you already penalized them for 200 million, for wrongful -- for filing --

MR. WISHNEW: Objection, Your Honor.

MS. ANIEL: -- fraudulent documents in the bankruptcy. That's the fact.

THE COURT: Sustained.

Ms. Aniel, you got to stay focused on the issues for the trial. I know you feel very strongly about a lot of the things, but we have to stay focused -- you have to stay focused on the issues that are in this trial.

MS. ANIEL: In 2012, because of the pressure by the debtor GMAC, my son, who is newly graduate law, passed the bar; he was --

THE COURT: I thought you had help in this case, because --

MS. ANIEL: No --

THE COURT: -- you had some very good legal arguments.

MS. ANIEL: No, Your Honor, I'm not a lawyer, Your Honor. You know, you don't need to be a lawyer --

THE COURT: Okay. All right, let's stay --

MS. ANIEL: -- you know --

THE COURT: -- focused on the issues.

MS. ANIEL: Yeah, but I have to be lawyer that --

THE COURT: What --

MS. ANIEL: -- I understand what I'm reading.

THE COURT: Is your son practicing law?

MS. ANIEL: No, he was not. He cannot get a job, because he was forced to file bankruptcy, Your Honor, 2012 --

THE COURT: All right, so let's --

MS. ANIEL: -- because --

THE COURT: -- let's stay focused on the issues.

MS. ANIEL: Um-hum. And I was crying to my son and said, you know, you have -- I put your name on the deed of trust and this is the only way that you have to stop this wrongful foreclosure. And my son says, Mom, I don't owe any money except my student loan, because I promised my son that just --

THE COURT: Okay, let's stay focused on the issues for the trial, okay?

MS. ANIEL: Yeah. And he has no choice; he has to file bankruptcy.

THE COURT: Okay, but let's stay focused on this case, okay?

MS. ANIEL: Okay. Oh, I'm just telling a story, Your Honor. Okay.

THE COURT: I know. I know.

MS. ANIEL: I don't want to be emotional, Your Honor.

But I suffered -- I was separated to (sic) to my husband, Your Honor, because of that. My husband was working in the federal government. And he retired early, Your Honor. He had started the retirement early. He went to the Philippines and never -- you know.

THE COURT: Okay, so let's stay focused on the issues for here. Go ahead.

MS. ANIEL: Yeah, because of GMAC's and ETS's fraudulent conduct, I suffered damages. I suffered wrongful -- because of wrongful --

THE COURT: But let me ask this.

MS. ANIEL: -- conduct.

THE COURT: I know you've -- your claim for wrongful foreclosure remained after the original opinion that I wrote, but the home's never been foreclosed, is that correct?

MS. ANIEL: Yes, Your Honor. I asked -- I even asked Jordan, Jordan, all I need is that since there was already -- it was already reported to IRS -- I cannot file taxes, okay? I talked to -- I told -- I talked to my accountant; there was a report to the IRS that my loan has been paid off, two million fifty-six.

THE COURT: Well, they filed something for debt forgiveness because --

MS. ANIEL: Yes, but --

THE COURT: -- the personal liability was discharged

in the bankruptcy, but not the mortgage obligation.

MS. ANIEL: But the --

THE COURT: But let's focus on the issues here.

MS. ANIEL: Yeah, I don't want the IRS to go back to me and, you know, they --

THE COURT: I can't help you on that. So let's stay focused on the issues here.

MS. ANIEL: Yeah, the damage that they -- this debtor did to me. And then yesterday -- it's true; that's what you want, Your Honor -- the issue is if Mira Smoot has authority as -- authority as an authorized officer of HSBC. She says she was not an authorized (sic) of HSBC.

So all the documentation that was filed in the County San Mateo, in the bankruptcy court, in other court, I had proven to them that it was fabricated, it was not true. And hopefully lawyers for the banks should scrutinize it's not all about money; it's all about ethic and profession. You know, you cannot just accept all this -- that's why they get paid for: for accepting the case, to go through it.

THE COURT: Okay, anything else you want to tell me? My law clerk's just handed me a note that you have twenty-five minutes left.

MS. ANIEL: Oh.

THE COURT: And I want to -- I think you told me your explanation for what happened --

MS. ANIEL: Yeah.

THE COURT: -- but I just want to -- and I want you to be able to save some time for your closing argument. But is there anything else, any other facts that you want to tell me now?

MS. ANIEL: I think I already cover, Your Honor.

THE COURT: Okay. All right.

All right, Mr. Wishnew, you want to cross-examine?

MR. WISHNEW: Your Honor, I have no questions.

THE COURT: Okay. All right, so you can step down; take the papers with you.

MS. ANIEL: Thank you, Your Honor.

THE COURT: You're welcome. Help your --

Are you her son?

MS. ANIEL: A friend, Your Honor.

THE COURT: Is that your son?

MS. ANIEL: Who?

THE COURT: No?

All right, can you help --

MS. ANIEL: Oh, my God, you're my son.

THE COURT: No. Whoever.

MS. ANIEL: Thank you.

THE COURT: Help her with her papers.

MS. ANIEL: Thank you.

THE COURT: And you can --

MS. ANIEL: Yeah.

THE COURT: -- go back.

MS. ANIEL: Uh-huh.

THE COURT: Okay. Take that binder, too, for her. Okay?

All right. Thanks very much.

MS. ANIEL: Thank you, Your Honor.

THE COURT: All right. All right, Ms. Aniel, do you have any other witnesses or evidence that you wish to present?

MS. ANIEL: No more, Your Honor.

THE COURT: Okay, so the term's for that that you rest; that means you put any other --

Mr. Wishnew, is there anything else you want to put in?

MR. WISHNEW: Your Honor, the Borrower Trust rests.

THE COURT: All right, so both parties have rested.

Let's take a ten-minute recess and we'll come back in.

And, Ms. Aniel, you can make a closing argument; you have about twenty minutes to do that. I don't know that you need all that time; I think I understand the issues. But you can. So make some notes to yourself, what you want to tell me in closing argument. Okay? And then after you make an argument, Mr. Wishnew can go ahead and do that.

Okay, so we'll take a ten-minute recess. Make some notes about what you want to say, okay?

MS. ANIEL: Thank you, Your Honor.

(Recess from 10:06 a.m. until 10:33 a.m.)

THE COURT: All right, please be seated.

All right, Ms. Aniel, would you like to make a closing argument? And I'm going to limit each side to twenty minutes.

MS. ANIEL: Okay.

THE COURT: You don't have to use it all, but --

MS. ANIEL: It won't be thirty (sic) minutes, Your Honor.

THE COURT: Okay.

MS. ANIEL: Again good morning to everyone. This is the last stage of this trial, that the parties are allowed to sum up the facts which they believe the evidence has established, through the closing statement. And this is the very reason why I'm standing in front of you right now.

I would like to go back to my opening statement I made yesterday morning, where I stated that, and I quote, "Nonetheless, since I'm the claimant, I took upon myself to prove to the Honorable Court, by preponderance of evidence, that Ms. Smoot has never been authorized to execute 2011 assignment of deed. And if ever such document exists, the same is a void document that confers no right and imposes no obligation." Now I am true to myself, and I have proven that.

Did I make it happen through my evidence? Yes, I did. Ms. Smoot has never been authorized by the trustee, HSBC, in

signing the 2011 assignment of the deed, which is the very issue, among others, in this trial. Truly, as Ms. Smoot judicially admitted under her open-court testimony yesterday, she admitted she signed it, and said that the questionable document, as an officer -- her employer, GMAC. That is very clear-enough evidence about the sheer (ph.) admission, which I would characterize as more than preponderance evidence.

Under the foregoing circumstances, there is therefore no more legal grounds or justifiable reason why my claims identified as 416 and 417 should be objected, or denied for that matter. Therefore, the objector should have allowed my claims process and paid me in full the amount of my claims; in objecting to and not allowing them, the objector committed a gross injustice to me and my family.

Now what is the impact of this established fact that Ms. Smoot did not have an authority on behalf of HSBC is a fact of the wrongful foreclosure committed by GMAC and ETS for which they should be held liable for damages as far as the other causes of action are concerned: fraud, UCL, declaratory relief, and wrongful foreclosure.

I respectfully submit, Your Honor, please, that this issue is also established in my favor because of the fact that the assignment of the deed in 2011, which was needed in order to foreclose my home, was fraudulently manufactured with false information. This was not only a misrepresentation against me

but for every homeowner in California and the whole nation. It's in violation of the UCL, and I'm entitled to be paid damages by them. How many damages I'm entitled to? On what this may consist? I am submitting that I'm entitled to receive actual compensatory consensual (ph.), moral, punitive and even nominal or temporary damages, since they have grossly and willfully violated my right as a homeowner and property owner.

As I stated, I can lose my home at any moment. Since 2008, I have been forced to litigate my claims against GMAC and ETS. At my age -- I will be -- I'm a senior and I'm sixty -- I will be sixty-four this coming July. I could not find any more work when litigating my claim as a pro se. I have had great expense litigating this claim in this court. I cannot sell my property, because of the clouds on title caused by GMAC and ETS. Thus, I should be fairly compensated for my damages.

My credit report has been damaged due to the fact that I was forced to file bankruptcy because of the misrepresentation by GMAC for my loan modification in 2008. And my son was forced to file in 2012 in bankruptcy, to protect his interests and the property on the deed of trust. And he cannot find a job now as an attorney.

Finally, the Court must declare the 2009 and 2011 assignment of the deed void as a matter of law, because of the clear misrepresentation of the document. This is important because loan servicers are actively attempting to foreclose my

property and that they have and they rely on those assignments to fore -- they have standing to foreclose in California.

I pray that Your Honor will examine the documents and testimony presented today and rule in my favor. Thank you very much.

THE COURT: Thank you, Ms. Aniel.

Ms. Arett, how did you know I was going to call on you to do the closing argument?

MS. ARETT: Oh, you were planning on calling on me?

THE COURT: I really was.

MS. ARETT: Well, we have good fortune.

Jessica Arett of Morrison & Foerster, on behalf of the Borrower Trust.

Your Honor, the evidence presented during the trial has made abundantly clear that Ms. Smoot had authority to execute the 2011 assignment and, as a result, the foreclosure that was initiated by GMAC Mortgage --

THE COURT: Just slow down a little bit. Okay?

MS. ARETT: -- against the Aniels in 2012 was proper.

Witnesses from HSBC have validated their signatures and testified to the validity of the power of attorney executed in August 2008, which granted authority to the authorized officers of GMAC Mortgage to execute assignments on HSBC's behalf.

In addition, testimony and documents put into evidence

demonstrate that Ms. Smoot was an authorized officer of GMAC Mortgage in 2011 --

THE COURT: Just a little slower. Okay? Just relax. Okay?

MS. ARETT: Okay. I'm just --

THE COURT: I know. No, don't be nervous about it, okay? Just slow down a little bit.

MS. ARETT: -- in 2011, and had authority to sign such documents. Furthermore, Ms. Smoot explained how she examined the chain of title and reviewed the power of attorney prior to executing the 2011 assignment, to confirm that she had authority to sign on HSBC's behalf.

Moreover, the Aniels have failed to put forward any evidence to demonstrate the invalidity of the documents in evidence and that GMAC Mortgage or ETS somehow acted improperly in filing the notice of default and the notice of sale, in 2012. Additionally, the Aniels have not put forward any evidence that they were damaged by the debtors' actions. The Aniels acknowledge that no foreclosure sale on their property was ever conducted by the debtors and that they continue to live in the property, as Ms. Aniel testified today. As a result, the Aniels have failed to carry their burden of proving that they were harmed by the debtors' actions, and they are therefore not entitled to a claim against the debtors' estates. And therefore, the Borrower Trust asks that the Court expunge

and disallow the remaining claims in their entirety.

THE COURT: Right. Just let me ask you a few questions, okay?

MS. ARETT: Okay.

THE COURT: So we did hear from three of the HSBC witnesses yesterday. And if you look -- if you'll look at Exhibit D, it's the limited power of attorney. You referred, in your closing, to the testimony of the HSBC witnesses, but just if you would briefly explain to me what the testimony was that shows that this was authorized, that it was signed in front of the witnesses and the notary. Okay? Just briefly. Go ahead.

MS. ARETT: So I believe that Susie Moy, Nancy Luong and Doris Wong all testified that when they were executing this document, they were executing it in the same space and that what would happen was that Susie Moy would bring the document to Nancy Luong and Doris Wong, who would recognize Susie Moy's signature, and then it would go to Nancy (sic) Nassar, who is the notary, who we did not have testify.

THE COURT: All right. And I admitted in evidence yesterday Court Exhibits 1, 2 and 3, which were the exemplars of the signatures of the three HSBC witnesses who testified: Moy, Luong, and Wong. And based on the Court's inspection of Court Exhibits 1, 2 and 3, the Court concludes that the signatures appearing on Exhibit D are in fact the signatures of

Moy, Luong, and Wong.

Go ahead.

MS. ARETT: And so I think that the testimony that they provided yesterday was very clear that this document is -- that their signatures make this a valid document and that the document is very clear that it gives power to GMAC Mortgage to sign assignments of deeds of trust on behalf of HSBC.

THE COURT: Okay. Anything else you want to add?

MS. ARETT: I don't believe so, Your Honor.

THE COURT: All right, thank you very much.

All right, the matter is going to be deemed under submission and the Court will enter an order or opinion in due course. Thank you very much. We're adjourned.

MR. WISHNEW: Thank you for your time, Your Honor.

MS. ANIEL: Thank you, Your Honor. Thank you very much.

(Whereupon these proceedings were concluded at 10:44 AM)

# I N D E X



| WITNESS | EXAMINATION BY | PAGE |
|---|---|---|
| Erlinda Abibas Aniel | (Narrative) | 7 |



## C L O S I N G   A R G U M E N T S



| DESCRIPTION | PAGES |
|---|---|
| Claimant | 34-37 |
| Respondent/Borrower Trust | 37-40 |

C E R T I F I C A T I O N

I, David Rutt, certify that the foregoing transcript is a true and accurate record of the proceedings.

______________________________________

DAVID RUTT

AAERT Certified Electronic Transcriber CET**D 635

eScribers

700 West 192nd Street, Suite #607

New York, NY 10040

Date: March 28, 2016