1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 12-12020-mg

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  RESIDENTIAL CAPITAL, LLC, et al.,

9

10             Debtors.

11

12  - - - - - - - - - - - - - - - - - - - -x

13

14             United States Bankruptcy Court

15             One Bowling Green

16             New York, New York

17

18             April 1, 2016

19             11:04 AM

20

21  B E F O R E:

22  HON. MARTIN GLENN

23  U.S. BANKRUPTCY JUDGE

24

25

1

2   Telephone Conference, on the Record

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20   Transcribed by:  Penina Wolicki

21   eScribers, LLC

22   700 West 192nd Street, Suite #607

23   New York, NY 10040

24   (973)406-2250

25   operations@escribers.net

```
 1   A P P E A R A N C E S : (TELEPHONICALLY)

 2   SIMPSON THACHER & BARTLETT LLP

 3         Attorneys for Movants-Defendants

 4         425 Lexington Avenue

 5         New York, NY 10017

 6

 7   BY:   WILLIAM T. RUSSELL, JR., ESQ.

 8         R. DAVID GALLO, ESQ.

 9

10

11   WILLIAMS & CONNOLLY LLP

12         Attorneys for Movants-Defendants

13         725 Twelfth Street, N.W.

14         Washington, DC 20005

15

16   BY:   MATTHEW V. JOHNSON, ESQ.

17

18

19   KIRKLAND & ELLIS LLP

20         Attorneys for Respondent, Ally Financial, Inc.

21         655 Fifteenth Street, N.W.

22         Washington, DC 20005

23

24   BY:   DANIEL T. DONOVAN, ESQ.

25         JASON R. PARISH, ESQ.
```

1

2  QUINN EMANUEL URQUHART & SULLIVAN, LLP

3          Attorneys for Plaintiffs in Minnesota Actions

4          865 South Figueroa Street

5          10th Floor

6          Los Angeles, CA 90017

7

8  BY:   ANTHONY P. ALDEN, ESQ.

9

10

11  QUINN EMANUEL URQUHART & SULLIVAN, LLP

12          Attorneys for Plaintiffs in Minnesota Actions

13          51 Madison Avenue

14          22nd Floor

15          New York, NY 10010

16

17  BY:   JOHN P. SULLIVAN, ESQ.

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2          THE COURT:  All right, we're here in Residential

3    Capital, number 12-12020.  This is in connection with

4    discovery -- a discovery dispute in the Minnesota case,

5    regarding enforcement of subpoena here.  This is a matter --

6    two matters, now, have been referred to this Court by the

7    district court.

8          Could I have the appearances, please, for the moving

9    party?

10         MR. RUSSELL:  Yes, this is William Russell, and with

11   me is David Gallo.  We're with Simpson Thacher & Bartlett, LLP.

12   We're appearing on behalf of defendants-movants, MortgageIT

13   Inc. and DB Structured Products, Inc.

14         THE COURT:  Okay.

15         MR. JOHNSON:  Good morning, Judge Glenn.  This is Matt

16   Johnson of Williams & Connolly on behalf of HSBC Mortgage in

17   the adversary proceedings before Your Honor and on behalf of

18   Decision One Mortgage and Home Loan Center in the District of

19   Minnesota cases.  Like last week, with respect to the MBIA

20   motion to compel, which was discussed with Your Honor on a

21   call, I believe, last Wednesday, I'm largely here in a support

22   role and to provide any resources if there are any SDNY case-

23   specific issues that happen to come up on the call.  But Mr.

24   Russell and Mr. Gallo of Simpson Thacher will be handling the

25   substantive portion of the argument.

1          THE COURT:  All right.  Anybody else on the phone?

2    Who's on behalf of Ally?

3          MR. PARISH:  Good morning, Your Honor.  Jason Parish

4    from Kirkland & Ellis for Ally Financial.

5          MR. ALDEN:  Good morning, Your Honor.  Anthony Alden

6    from Quinn Emanuel for the ResCap Liquidating Trust and RFC.

7          THE COURT:  Okay.  Are the issues on this dispute the

8    same as the ones with respect to MBIA, Mr. Russell?

9          MR. RUSSELL:  Your Honor, I think they are.  I'm not

10   as familiar with the MBIA issues.  I know there are a

11   similarity in the sense that it is defendants in the RFC cases

12   in Minnesota seeking discovery from a third party.  I think the

13   issues are somewhat different because Ally and MBIA are

14   different parties and play different roles in the underlying

15   facts.

16         THE COURT:  Let me ask you, though, are you seeking

17   production of Ally's materials, whatever it's submitted to the

18   examiner?  Is that what this is about?

19         MR. RUSSELL:  We are -- in addition to other

20   categories of documents relating to the bankruptcy settlement,

21   Your Honor.

22         THE COURT:  Well, I --

23         MR. RUSSELL:  I'm not -- I'm sorry.

24         THE COURT:  Have you met and conferred with Ally's

25   counsel?  Tell me what the disputes are.

1        MR. RUSSELL:  Yes, we've met and conferred with Ally's

2   counsel throughout last spring and this fall.  We've narrowed

3   our request to five categories of documents; and to date,

4   they're refused to produce any documents.

5        THE COURT:  What are the five categories?

6        MR. RUSSELL:  The first category is documents and

7   communications to or from Ally's risk officer or other

8   individual charged with responsibility for accepting risk for

9   RFC, including documents concerning Ally's assessment of RFC's

10  liability or potential liability.

11       The second category is documents and communications

12  concerning pre-mediation discussions between Ally and any

13  debtors or creditors, concerning settlements of RMBS claims,

14  excluding documents that are subject to your August 28th 2015

15  order, as being subject to the previous mediation order.

16       And this includes documents concerning Ally's third-

17  party release provided in connection with any RMBS settlements

18  or the global bankruptcy settlement.

19       The third category is documents and communications

20  concerning Ally's contribution to the bankruptcy settlement,

21  and any intercompany balances among Ally and the debtors that

22  may have been canceled or offset as part of the bankruptcy

23  settlement.

24       The fourth category is documents and communications

25  produced by Ally to the examiner.

1         And the last and fifth category is documents and

2    communications concerning the negotiation or drafting of the

3    plan support agreement..

4         THE COURT:  Say that one again?  I can't hear you.

5         MR. RUSSELL:  I'm sorry, Your Honor.  The fifth

6    category is documents and communications concerning negotiation

7    or drafting of the plan support agreement.

8         THE COURT:  All right, Mr. Parish, do you want to

9    respond?

10        MR. PARISH:  Yes, Your Honor.  I want to start with

11   sort of the procedural context of the events sort of leading up

12   to us being before you today.

13        Defendant served a subpoena on May 11th of last year.

14   The subpoena contained seventeen very broad categories for

15   documents, much broader than the five requests that Mr. Russell

16   just walked through.

17        After Ally served its objections to the subpoena, the

18   defendants and Ally had three meet-and-confer calls in June,

19   July, and October.  On each of those calls, Ally sort of set

20   out its objections, including that the requests were very

21   broad; and the message that Ally gave to the defendants on each

22   of those calls was essentially tell us what you're looking for;

23   tell us what you need specifically from Ally that you can't get

24   from the plaintiffs or other third parties that you've already

25   sought documents from.

1        So after that third call on October 16th, defendants

2   finally agreed to narrow the subpoena to the five categories of

3   documents Mr. Russell walked through.  Ally responded with a

4   letter one week later, noting issues with three of those

5   requests; but that letter and subsequent communications

6   contemplated that the parties would have further discussions.

7        However, those discussions never really occurred.

8   Defendants, at that time, terminated the meet-and-confer, and

9   three months later, in January, filed a motion.

10        So I can respond to each of the specific requests, but

11   the sort of meet-and-confer process that I think is

12   contemplated in any sort of discovery situation, in our view,

13   it hasn't really happened here.  Defendants haven't given us

14   their explanation of what specifically they need from Ally with

15   regard to these five categories of documents, which are still

16   quite broad.  And from Ally's reading and understanding of the

17   indemnification litigation, these documents, in many instances,

18   aren't relevant to the issues in the case.

19        THE COURT:  All right, just bear with me, everybody, a

20   second.

21      (Pause)

22        THE COURT:  Mr. Parish, is it correct, the subpoena

23   was issued in connection with the litigation pending in

24   Minnesota before Judge Nelson?

25        MR. PARISH:  I believe so, Your Honor.

1    THE COURT:  Mr. Russell, why shouldn't -- with the

2  exception, perhaps of the issue of the documents produced to

3  the examiner, why shouldn't Judge Nelson decide whether to

4  require discovery as to the other four categories?

5    I except out the examiner issue, because the examiner

6  was appointed by this Court and conducted his investigation

7  pursuant to order of the Court.  But why shouldn't Judge Nelson

8  decide the remaining issues?

9    MR. RUSSELL:  Your Honor, the subpoena was issued out

10  of the Southern District of New York.  So because the subpoena

11  had been issued here, we moved to compel here.  And then given

12  that we filed the motion in the district court, given your

13  familiarity with the case, it was, I believe at Ally's request,

14  referred to the bankruptcy court and assigned to you.

15    The short answer is, because the subpoena was issued

16  out of the Southern District.

17    Your Honor, one point of clarification.  Mr. Gallo

18  corrected me.  I guess the subpoena was technically issued out

19  of the Minnesota court, but the place, the performance was in

20  New York --

21    THE COURT:  Right.

22    MR. RUSSELL:  -- removed to here.

23    THE COURT:  Mr. Parish, why shouldn't Judge Nelson

24  decide the issue as to the four categories other than

25  production of documents to the examiner?

1        MR. PARISH:  Your Honor, I don't know that he (sic)

2   shouldn't, but there --

3        THE COURT:  It's a she.  It's a she.

4        MR. PARISH:  I'm sorry; apologies.  I think it makes

5   sense, just from an efficiency standpoint, to have all of the

6   requests decided together.

7        THE COURT:  Well, I don't think I ought to be sitting

8   and deciding discovery issues in the cases pending in

9   Minnesota.  And I think the issue with respect -- I separate

10  out the issue of material produced to the examiner, because it

11  was pursuant to this Court's order that the examiner was

12  appointed and conducted his investigation, et cetera.   But as

13  to the other four categories, I don't see why I should be the

14  one to do that.

15       Mr. Russell, do you consent to transferring this

16  matter to Judge Nelson for her decision?

17       MR. RUSSELL:  We do.  While we would be happy to have

18  Your Honor decide it, if Your Honor believes it's more

19  appropriate for Judge Nelson to do so, we have no objection.

20       THE COURT:  Mr. Parish, do you consent to transferring

21  this matter to Judge Nelson for her decision?  And I say "her

22  decision", except for the issue of documents produced to the

23  examiner, which is before me in the MBIA matter, and does

24  relate more closely to the bankruptcy.

25       MR. PARISH:  Yes, Your Honor, we would consent to

1    that.

2            THE COURT:  Mr. Johnson, do you want to be heard?

3            MR. JOHNSON:  No, Your Honor.  I think that's

4    sufficient.

5            THE COURT:  Well, what I would like to do --

6            MR. ALDEN:  Your Honor, could I make one comment?

7            THE COURT:  Who's that?

8            MR. ALDEN:  This is Anthony Alden for the Trust.

9            THE COURT:  Yes, go ahead.

10           MR. ALDEN:  Just, Your Honor, I guess, two questions.

11   One is, I think, although I recognize that no one from MBIA is

12   on this call, I think it presents the same issues in that I

13   think there were two categories, one related to the bankruptcy

14   examiner and one unrelated to the bankruptcy examiner

15   submissions.

16           THE COURT:  I read all the briefs that were filed in

17   the MBIA, and the only -- in connection with the MBIA dispute,

18   and all I saw was arguments about information produced to the

19   examiner or relating to communications with the examiner.  What

20   specifically -- I may have missed something?

21           MR. ALDEN:  I believe that the defendants -- certain

22   defendants in the District of Minnesota cases are also seeking

23   custodial productions outside -- unrelated to the bankruptcy

24   examiner submissions.  I'm --

25           THE COURT:  You want to point me to something in the

1  briefs?  I've got the pile of briefs sitting in front of me.
2  I've read them all.

3          MR. ALDEN:  Yeah, I can try and pull them up, Your
4  Honor.

5      (Pause)

6          MR. ALDEN:  Sorry, Your Honor.  I'm just looking at
7  the briefing.

8          Your Honor, I'm just looking at the briefing.  But if
9  one looks at the MBIA -- the defendants' opening brief --

10         THE COURT:  I have it here.  Tell me where to look.

11         MR. ALDEN:  I'm looking at the opening brief, page 4,
12  Your Honor.

13         THE COURT:  Let me -- hang on.

14         MR. ALDEN:  Under subjection (b), MBIA refused to
15  respond fully to defendants' Rule 45 subpoena.  The subpoena
16  sought discovery concerning four subjects:  the global
17  settlement, MBIA's broad claims against RFC, the liquidating
18  trust, and plaintiffs' actual or potential causes of action.

19         THE COURT:  Yeah, but when it goes on, and then when I
20  read MBIA's brief, as to those issues remaining in dispute, it
21  appeared to me, the only thing remaining in dispute focused on
22  the production of stuff to the examiner.

23         I mean, MBIA seems to have -- the parties
24  substantially seem to have agreed the dispute is about whether
25  materials produced to the examiner are required to be produced.

1    And certainly the plaintiff filed its brief and argued why that

2    shouldn't be produced.

3            I understand the opening motion in the district court;

4    but there was a lot of movement when I had a hearing on this

5    matter.  When I say "a lot of movement", I think that the area

6    of dispute was substantially narrowed and focused on the issue

7    of production of anything given to the examiner.

8            MR. ALDEN:  Your Honor, I'm --

9            THE COURT:  That's enough.  I don't want to hear any

10   more.

11           MR. ALDEN:  -- I stand corrected.  You're not

12   representing a party in this dispute, so --

13           MR. ALDEN:  Correct.  And I may be wrong, Your Honor.

14   I was under the --

15           THE COURT:  Stop.  Stop.

16           All right.  With respect to the issue -- and let me

17   tell you what I'm going to do.  I'm going to call Judge Nelson

18   and find out what her position is with respect to the pending

19   motions.  When I say "the pending motions", one with respect

20   to -- and I don't have briefs; I have the letter from Simpson

21   Thacher.

22           Did you actually file a brief in the district court,

23   Mr. Russell?

24           MR. RUSSELL:  We did, Your Honor.

25           THE COURT:  Okay.

1        MR. RUSSELL:  We did.

2        THE COURT:  All right.  But I want to -- some of you

3   on the phone know this, some of you may not -- is that

4   periodically Judge Nelson and I confer because we're trying to

5   coordinate the cases pending before me and the much larger

6   number of cases pending before her.  And I will -- I'm not

7   going to unilaterally simply order that the other issues be

8   transferred to her, since there are no briefs filed yet with

9   respect to the DB Structured Products v. Ally Financial

10  dispute.

11       MR. RUSSELL:  Your Honor, it is actually fully

12  briefed.  We filed our papers in support of the motion.  Ally

13  filed an opposition brief and affidavit, and we submitted and

14  filed a reply brief, Your Honor.

15       THE COURT:  That's in the district court?

16       MR. RUSSELL:  Yes.  Yes, Your Honor.

17       THE COURT:  All right.  And did Ally -- did you file a

18  brief as well, Mr. Parish?

19       MR. PARISH:  Yes, Your Honor.  We filed an opposition

20  brief, I think, in late December.

21       THE COURT:  Okay.  I don't have any of those papers.

22  Really, all I had was the letter from Mr. Russell requesting

23  this conference.

24       MR. ALDEN:  Your Honor, I would just say that the

25  Trust would file something substantially similar to what it

1  filed in MBIA --

2          THE COURT:  Okay.

3          MR. ALDEN:  -- concerning the examiner submissions.

4          THE COURT:  Well, if you're going to file something

5  substantially -- well, to the extent it relates to the examiner

6  issue -- well, here's what I'm going to do.

7          Mr. Russell, have delivered to chambers a full set of

8  the briefs that were filed in the district court.

9          MR. RUSSELL:  Yes, sir, Your Honor.

10          THE COURT:  Everybody's briefs.

11          MR. RUSSELL:  Yes, sir.

12          THE COURT:  I will try and reach Judge Nelson today.

13  I don't know whether I'll be able to or not.  I'll follow up

14  next week if I'm not able to speak with her today.  And it may

15  be that with respect to the discovery disputes in the cases

16  pending before her, other than the examiner issue, that if

17  she's willing to take it, I may well send it to her.  But I'll

18  enter an order if I do that.

19          The parties to that dispute, Mr. Russell -- the

20  counsel for the parties to the dispute, Mr. Russell and Mr.

21  Parish, during the call today -- and this is on the record --

22  have both consented to having the matter transferred to Judge

23  Nelson for her to decide.  But I will speak with Judge Nelson

24  and see what she has to say about it.

25          With respect to the Trust's counsel, if you wish to

RESIDENTIAL CAPITAL, LLC, ET AL.                    17

1  file -- let me ask you now.  Do you want to file a brief on the

2  examiner issue, or are you satisfied to rest on the brief you

3  filed in connection with the MBIA dispute?

4        MR. ALDEN:  I think we would like to file a brief,

5  Your Honor.

6        THE COURT:  Okay.  I will give you until next Thursday

7  at 9 a.m. to file a brief.  I can't believe it's going to be

8  very different from what you've already filed, but I'll

9  certainly allow you to do that.

10        MR. ALDEN:  Thank you, Your Honor.

11        MR. RUSSELL:  Your Honor, this is William Russell.

12  Will we have an opportunity to respond?

13        THE COURT:  No, you've got your -- you said you've

14  already briefed everything in the district court.  I think --

15  look, these issues -- I understand these issues.

16        MR. RUSSELL:  Your Honor, we did not brief the issues

17  that I expect Mr. Alden will raise, but we don't want to burden

18  the Court with excess paper.  And my understanding from

19  speaking to Mr. Johnson and others is that the examiner issue

20  was fully discussed at a conference with respect to the MBIA

21  motion.  So if Your Honor would prefer that we not submit

22  papers, we understand.

23        THE COURT:  Well, my preference is that you not, but

24  I'm not saying you can't.  So if I'm giving Ally until

25  Wednesday at 9 a.m., I'll give you till Friday at 5 p.m., so

1   you'll have their brief.  I mean, I -- get the brief from Mr.

2   Johnson as to what's already been submitted.  I've got a pile

3   of briefs sitting in front of me.

4              MR. RUSSELL:  Thank you, Your Honor.  And it may be

5   that we rely on Mr. Johnson's brief --

6              THE COURT:  Okay.

7              MR. RUSSELL:  -- but we appreciate it, Your Honor.

8   Thank you.

9              THE COURT:  All right.  There's a -- there are

10  potentially some issues that are not addressed in the briefs

11  that were filed in front of me in the MBIA dispute.  And I've

12  done some independent research about it; haven't reached any

13  conclusions.  But that issue is whether information produced

14  either in internal corporate investigations or SEC or CFTC

15  investigations are discoverable, and specifically with respect

16  to nonprivileged material, although there may be an issue of

17  waiver before material is produced.

18             And there is a long line of cases that I've found

19  with -- and I think I raised this issue during a hearing on the

20  MBIA dispute.  But let me just say, in looking at the briefs on

21  the MBIA dispute, I don't see anyone citing any authority,

22  federal authority, that establishes the existence of a

23  privilege for information submitted in an examiner's

24  investigation or an internal investigation, even if there was

25  a -- I'll call it -- a private confidentiality agreement;

1  because this Court never entered a confidentiality order with

2  respect to material produced to the examiner.  And none of the

3  briefs I have so far address any of those issues.

4          MR. PARISH:  Your Honor, It's Mr. Parish for Ally.

5  Our opposition brief to the motion to compel did not focus

6  specifically on the confidentiality or privilege issues

7  involving productions to the examiner.  If I could propose,

8  maybe we could submit a short brief that sort of fleshes out

9  that issue, whether there is a privilege that applies to

10 examiner submissions.  And frankly, I don't know the answer to

11 that, as I sit here right now.  And we could do it, perhaps, on

12 the time frame that you just set out for the plaintiffs'

13 motion, which I think you set it by next Thursday at 9 a.m.

14         THE COURT:  I think it was Wednesday at 9 a.m.

15         MR. PARISH:  Wednesday, 9 a.m.?

16         THE COURT:  Okay, yeah, I'm going to -- if I was

17 inconsistent, Wednesday at 9 a.m. is the first set, and then I

18 give Ally until Friday at 5 p.m.  I want to get this -- I want

19 to get these issues resolved.  I want to see anything that's

20 going to go to Judge Nelson.  I want to get her okay to that.

21         But with respect to the issues of the examiner, again,

22 because the examiner was appointed in my case pursuant to my

23 order, I'll go ahead -- I will discuss, not the merits of it,

24 but the issue of whether she -- if she thinks she ought to

25 decide it in this case, rather than me, I'll certainly consider

RESIDENTIAL CAPITAL, LLC, ET AL.                           20

1   that.  But it does seem to me, just as I decided the mediation

2   privilege issue, I think addressing production of materials to

3   the examiner, I ought to address.

4           The other thing, counsel for Ally, I don't know

5   whether you've read MBIA's filing or not.  I asked that they

6   address, which they did, the issue of cost shifting.  Ally is

7   not a defendant in the Minnesota cases.  Am I correct in that?

8           MR. PARISH:  That's correct, Your Honor.

9           THE COURT:  Yeah.  And MBIA extensively dealt with the

10  issue -- I said during a hearing that I certainly thought I had

11  the power to shift the costs of preparing -- for example

12  preparing a privilege log or other potential costs.  And I

13  asked that that be briefed; and MBIA did that.

14          If Ally wants to include that in its brief, you

15  should, as well.

16          MR. PARISH:  We will do that, Your Honor.

17          THE COURT:  All right.  Anything else for today?

18          UNIDENTIFIED SPEAKER:  No, Your Honor -- I'm sorry.

19          MR. JOHNSON:  Your Honor, just -- Your Honor, this is

20  Matt Johnson.  I just want to make sure there's no confusion on

21  the briefing, because I believe Your Honor said Ally at 5 p.m.

22  on Friday.  What I'm understanding is that the Trust and Ally

23  should submit anything they intend to submit by Wednesday at 9,

24  and that movants-defendants, should submit anything they want

25  to submit in response by Friday at 5 p.m.

1      THE COURT:  Thank you -- Mr. Johnson, thank you for

2  that gentle correction, because you're absolutely correct.

3      Okay, does everybody understand that, that it's got to

4  be in that order?  Everybody understand that?  Thank you, Mr.

5  Johnson.  I misspoke.

6      MR. ALDEN:  Your Honor, this is Anthony Alden for the

7  Trust.  One final thing is the MBIA -- hearing in MBIA is

8  currently scheduled for April 7th.

9      THE COURT:  Actually, you're not coming through

10 clearly.  If you're on speakerphone, pick up the phone.

11     MR. ALDEN:  Your Honor, the MBIA hearing is currently

12 scheduled for April 7th.  I believe that's next Thursday, if

13 I'm not mistaken.  If Your Honor is going to hear the disputes

14 in both cases, at least as to the examiner submission, it would

15 make sense, in the interest of efficiency to hear them at the

16 same time as opposed to two separate hearings, basically,

17 potentially on the same issue.

18     THE COURT:  I think that's correct.  I'll have to look

19 at the calendar.  My courtroom deputy is out today, but I'll

20 probably move that April 7th hearing date.

21     MR. ALDEN:  Okay.  Thank you, Your Honor.

22     THE COURT:  To the extent there are common issues, I

23 want to hear and decide them at the same time.

24     All right, anything else anybody wants to raise today?

25     IN UNISON:  No, Your Honor.

1          THE COURT:  All right.  Thanks very much.  We're

2    adjourned.

3          IN UNISON:  Thank you, Your Honor.

4        (Whereupon these proceedings were concluded at 11:32 AM)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATION

I, Penina Wolicki, certify that the foregoing transcript is a
true and accurate record of the proceedings.


_____

PENINA WOLICKI

AAERT Certified Electronic Transcriber CET**D-569


eScribers

700 West 192nd Street, Suite #607

New York, NY 10040


Date:  April 4, 2016