**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Residential Capital, LLC, *et al.*,<br><br>*Debtors*. | Chapter 11<br><br>Case No. 12-12020-mg<br><br>Jointly Administered |
| DB Structured Products, Inc., et al.,<br><br>*Movants-Defendants*,<br>v.<br>Ally Financial, Inc.,<br><br>*Respondent*. | Case No. 15-mc-00410-P1<br><br>Related Case No. 13-cv-3451 (SRN/JJK/HB) in United States District Court for the District of Minnesota |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF MOVANTS-DEFENDANTS' MOTION TO COMPEL COMPLIANCE WITH THIRD PARTY SUBPOENA ISSUED TO ALLY FINANCIAL, INC.**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ....... 1

BACKGROUND ....... 1

ARGUMENT ....... 2

I. Ally's Examiner Materials Are Not Shielded From Discovery, Are Relevant, and Are Not Burdensome to Produce ....... 3

A. Ally's Examiner Materials Are Discoverable ....... 3

B. Ally's Examiner Materials Are Relevant ....... 6

C. Ally Faces No Burden in Producing its Examiner Materials ....... 8

II. Cost-shifting is Not Appropriate in Light of Ally's Relation to the Actions and its Inability to Articulate its Alleged Burden ....... 9

A. Movants-Defendants Have Already Discharged Any Duty to Reduce Ally's Burden ....... 9

B. Ally Is Not Entitled to Any Costs ....... 10

C. Ally Has Consistently Failed To Articulate Its Alleged Burden ....... 11

CONCLUSION ....... 12

# TABLE OF AUTHORITIES

**Cases**

*Chevron Corp. v. Donziger*,
No. 11-cv-0691(LAK), 2013 WL 1087236 (S.D.N.Y. Mar. 13, 2013) ............ 11, 12

*Cornell v. Columbus McKinnon Corp.*,
No. 13-cv-02188(SI), 2015 WL 4747260 (N.D. Cal. Aug. 11, 2015) ............ 12

*DeGeer v. Gillis*,
755 F. Supp. 2d 909 (N.D. Ill. 2010 ............ 9

*Dow Chem. Co. v. Reinhard*,
No. M8-85(HB), 2008 WL 1968302 (S.D.N.Y. Apr. 29, 2008) ............ 11

*In re Baldwin United Corp*.,
46 B.R. 314 (Bankr. S.D. Ohio 1985) ............ 5, 8

*In re Ionosphere Clubs, Inc.*,
156 B.R. 414 (S.D.N.Y. 1993) ............ 4

*In re Residential Capital, LLC*,
536 B.R. 132 (S.D.N.Y. 2015) ............ 7

*In re Sept. 11 Litig*.,
262 F.R.D. 274 (S.D.N.Y. 2009) ............ 5

*In re Subpoena Duces Tecum Served on Bell Commc'ns Research, Inc.*,
No. MA-85, 1997 WL 10919 (S.D.N.Y. Jan 13, 1997) ............ 6

*J.P. Morgan Chase Bank v. Winnick*,
No. 03-cv-8535, 2006 WL 3164241 (S.D.N.Y. November 2, 2006) ............ 11

*Jackson Nat'l Life Ins. Co. v. Workman Sec. Corp*.,
803 F. Supp. 2d 1006 (D. Minn. 2011) ............ 7

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
298 F.R.D. 184 (S.D.N.Y. 2014) ............ 11

*LG Display Co. v. Chi Mei Optroelectronics Corp*.,
No. 08-cv-2408-L(POR), 2009 WL 223585 (S.D. Cal. Jan. 28, 2009) ............ 9

*Mike v. Dymon, Inc.*,
No. 95-cv-2405(EEO), 1996 WL 606362 (D. Kan. Oct. 17, 1996) ............ 6

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978) ............ 7, 10

*Prescient Acquisition Grp., Inc. v. MJ Publ'g Trust*,
No. 05-cv-6298(PKC), 2006 WL 2996645 (S.D.N.Y. Oct. 13, 2006) ............ 9

*S.E.C. v. TheStreet.com*,
273 F.3d 222 (2d Cir. 2001) ............ 5

*Schoolcraft v. City of New York*,
No. 10-cv-6005(RWS), 2012 WL 2161596 (S.D.N.Y. June 14, 2012) ............ 7

*United Health Grp. Inc. v. Columbia Cas. Co.*,
47 F. Supp. 3d 863 (D. Minn. 2014) ............ 7

*Wells Fargo Bank, N.A. v. Konover*,
259 F.R.D. 206 (D. Conn. 2009) ............ 9

*Zubulake v. UBS Warburg LLC*,
217 F.R.D. 309 (S.D.N.Y. 2003) ............ 10

**Federal Rules**

Fed. R. Civ. P. 26 .......... 10
Fed. R. Civ. P. 45 .......... 9

## PRELIMINARY STATEMENT

At the request of the Court, Movants-Defendants submit this brief in further support of their Motion to Compel Compliance with Third Party Subpoena Issued to Ally Financial, Inc. (the "Motion"). At the end of the April 1, 2006 telephonic conference on the Motion, the Court requested that the parties submit supplemental briefs specifically focusing on two narrow issues: whether there is any privilege or protection that attaches to submissions to a bankruptcy examiner and whether cost-shifting is appropriate in connection with Ally Financial, Inc.'s ("Ally") compliance with the subpoena issued by Movants-Defendants (the "Subpoena"). Ally's supplemental brief ("Supp. Opp."), however, went far beyond those two issues and contains a lengthy re-statement of the background facts and argument concerning the relevance and appropriate scope of the Subpoena. The issues Ally seeks to revisit had already been fully briefed and, upon this Court's request, Movants-Defendants provided those briefs to this Court on Friday, April 1, 2016.

## BACKGROUND

The relevant facts are set forth in Movants-Defendants' previous submissions and Movants-Defendants will not restate them here other than to express their disagreement with Ally's restated statement of the background facts. In particular, Movants-Defendants note that they have made repeated efforts, as set forth in the correspondence submitted by both parties, to prioritize particular categories of documents and to narrow the scope of their requests while Ally has consistently refused to engage in any meaningful dialogue other than to simply repeat its general objections.

## ARGUMENT

Ally has no legal basis for its abject refusal to comply with the Subpoena. Although the Court asked Ally and Plaintiff Residential Funding Company, LLC ("RFC")[1] to submit any authority supporting the existence of an evidentiary privilege or protection for materials submitted to a bankruptcy examiner, they have failed to do so. This failure is understandable; no such authority exists. While Ally and RFC point to a protective order (the "Protective Order") [2] and a confidentiality agreement ("Confidentiality Agreement") [3] which governed submissions to the Bankruptcy Examiner (the "Examiner"), Supp. Opp. at 14; RFC Opp. at 1, those documents merely provide that a party who received certain documents in connection with Examiner-related discovery may not produce them to others. There is absolutely nothing in those documents that creates a right for a party to shield its own documents and information from any discovery to other parties in other actions simply because they provided a copy to the Examiner.

Despite the limited scope of this Court's invitation for supplemental submissions, Ally also argues that Movants-Defendants have not established the relevance of its Examiner Materials. This ignores Movants-Defendants' repeated explanations of relevance, all of which remain applicable regardless of whether this Court limits its review to documents submitted to the Examiner or considers the Motion in its entirety. Ally further argues that production of the materials it submitted to the Examiner ("Examiner Materials") would present an undue burden. Ally still fails to articulate with the requisite specificity what exactly that burden entails. In fact, production of its Examiner Materials would subject Ally to no burden at all, given that this

[1] RFC submitted a joinder ("RFC Opp.") in Ally's supplemental brief.
[2] Uniform Protective Order for Examiner Disc., *In re Residential Capital, LLC*, No. 12-12020-mg (Bankr. S.D.N.Y. Aug. 20, 2012), Dkt. no. 1223-1.
[3] Confidentiality Agreement Regarding Examiner Submission Paper, Declaration of Jason R. Parish, *In re Residential Capital, LLC*, No. 12-12020-mg, Dkt. no. 9810, Ex. 5

discovery already has been completely reviewed, processed, and packaged. Accordingly, the Court should authorize and compel compliance with the Subpoena.

Finally, with respect to any need for cost-shifting here, Ally argues that Movants should be required to bear a significant portion of the estimated costs. The Court should reject Ally's request. Although the Court has discretion to order cost-shifting, it is not necessary or appropriate under the present circumstances. Ally's compliance with the Subpoena does not present an "undue burden" and Ally's central role in and relationship to the parties and issues in the underlying litigations put Ally on notice that it could be called upon to produce limited discovery, such as that sought here. Finally, Movants-Defendants have already made significant efforts to mitigate any burden on Ally, with no corresponding effort by Ally. Accordingly, this Court should not unsettle the fundamental principle that the responding party bears its own burden in discovery.

## I. Ally's Examiner Materials Are Not Shielded From Discovery, Are Relevant, and Are Not Burdensome to Produce

### A. Ally's Examiner Materials Are Discoverable

#### (i) *No Independent Legal Privilege Protects Ally's Examiner Materials from Disclosure*

Despite the opportunity provided by this Court, RFC's and Ally's opposition briefs fail to provide authority supporting the position that any privilege or protection attaches to the materials submitted by Ally to the Examiner. Indeed, as noted above, there is no such privilege or protection and, for purposes of the supplemental submissions, that should end any discussion of the discoverability of these materials.

(ii) *The Protective Order Does Not Protect Ally's Examiner Materials from Disclosure*

The Protective Order merely enables the producing, or "Disclosing," parties to designate some or all of the documents they produce to the Examiner as "Confidential." Protective Order at 1-2. The Order then restricts what "Receiving Parties" can do with "Disclosing Parties'" confidential documents. *Id.* at 4. Movants-Defendants, however, are not seeking any documents Ally received as a Receiving Party. They are seeking Ally's own documents. The Protective Order does not enable a Disclosing Party to shield its own documents from any further discovery to any other party in any other litigation simply by virtue of the fact that copies of those documents were also produced to the Examiner. Indeed, a contrary finding by this Court would allow parties to shield their documents from any future discovery – no matter how relevant – simply by entering into collusive agreements with others.

RFC misquotes the Protective Order to argue that the Protective Order "expressly provides that documents that the parties designate as 'Confidential' shall not be disclosed beyond the narrow categories of persons set out in the order." RFC Opp. at 2. But every provision cited by RFC solely concerns what a Receiving Party can do with *another entity's documents* and says nothing about creating any right for a Disclosing Party to resist further disclosure of its own documents simply because copies were also produced to the Examiner.

Accordingly, the case law cited by Ally and RFC in their supplemental submissions is inapposite. For example, both objecting parties cite *In re Ionosphere Clubs* for the proposition that "no-one would bother to sign on to a confidentiality stipulation if it had no lasting effect." 156 B.R. 414, 431 (S.D.N.Y. 1993). In *In re Ionosphere Clubs*, a receiving party moved the court to modify a protective order, without the consent of the disclosing parties, in order to disseminate the confidential documents to the public. This is clearly inapplicable to the instant

case, where Movants-Defendants are not seeking to modify a protective order to permit otherwise prohibited disclosure, but rather are seeking discovery that is not prohibited by the terms of that order. *In re Ionosphere Clubs* is further distinguishable because Movants-Defendants do not seek to hand over Ally's Examiner Materials to the public. Quite the opposite, all documents produced to Movants-Defendants by Ally would be subject to the protective order entered in the underlying actions, under which Ally's documents would be afforded a number of protections.

Likewise, Ally's citation to *In re Sept. 11 Litig*., 262 F.R.D. 274, 277 (S.D.N.Y. 2009) and *S.E.C. v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001) provides no support, as both cases also involved a request to modify a protective order. Supp. Opp. at 15. Therefore, the "extraordinary circumstances" or "compelling need" required to modify a protective order simply are not required here. *Id.*; RFC Opp. at 2.

Ally relies on *In re Baldwin United Corp.*, in arguing that "policy implications" weigh against compelling production of Ally's Examiner Materials. Supp. Opp. at 16 (citing *In re Baldwin United Corp*., 46 B.R. 314, 316 (Bankr. S.D. Ohio 1985)). However, the court there was concerned with the policy implications of allowing the *examiner* to disclose submissions to third parties. 46 B.R. at 316. This makes sense, as the examiner is always a receiving party and never a disclosing party. Ally recognized this distinguishing feature and insists, without support, that "the policy implications are the same." Supp. Opp. at 16. They are not. The documents sought here were Ally's before they were submitted to the Examiner and they remain Ally's documents today. Therefore, the Court is not being called upon to allow parties to "indiscriminately produce investigative materials." 46 B.R. at 316.

Accordingly, there is nothing in the Protective Order that justifies Ally's failure to comply with the Subpoena.

(iii) *The Confidentiality Agreement Does Not Protect Ally's Examiner Materials From Disclosure*

Similarly, the Confidentiality Agreement provides no excuse for Ally's refusal to comply with the Subpoena. As an initial matter, the Confidentiality Agreement does not apply to all materials provided to the Examiner. Rather, it only applies to a single, written analysis that Ally prepared and submitted to the Examiner. Confidentiality Agreement at 1. Moreover, a confidentiality agreement among Ally, the Examiner and others cannot shield Ally's Examiner Materials from discovery to other, unrelated parties. *See, e.g., In re Subpoena Duces Tecum Served on Bell Commc'ns Research, Inc.*, No. MA-85, 1997 WL 10919, at *2-3 (S.D.N.Y. Jan 13, 1997) (finding that confidentiality agreements cannot be used to shield a party from discovery); *see also Mike v. Dymon, Inc.*, No. 95-cv-2405(EEO), 1996 WL 606362, at *4 (D. Kan. Oct. 17, 1996) ("[C]onfidentiality of itself is not generally grounds to withhold discovery.")

**B. Ally's Examiner Materials Are Relevant**

Ally claims that Movants-Defendants "have not once, in any filing to date, provided any explanation of why of how Ally's Examiner Materials are relevant to the indemnification actions between RFC and its clients." Supp. Opp. at 9. However, the record tells a different story. On no fewer than five occasions, Movants-Defendants have explained to Ally precisely why all of the documents sought under the Subpoena are relevant.[4] These explanations applied with full force to Ally's Examiner Materials as well as the other materials that Movants-Defendants seek in the Subpoena.

[4] *See* Russell Decl., *DB Structured Products, Inc.*, No. 15-mc-00410, Dkt. no. 3, Ex. P at 1, Ex. R at 3, and Ex. S at 2; *see also DB Structured Products, Inc.*, No. 15-mc-00410, Dkt. no. 2 at 10-12 and Dkt. no. 26 at 3-5.

For the reasons set forth in Movants-Defendants' prior briefing, the Examiner Materials, which Ally now admits include 4,760 documents directly related to the RMBS claims against the Debtors for which RFC now seeks a multi-billion dollar recovery from Movants-Defendants, Supp. Opp. at 8, are clearly relevant here. These documents go directly to issues concerning the reasonableness of the settlement for which RFC now seeks indemnification and, accordingly, are relevant under the Federal Rules' liberal discovery standards. *See Schoolcraft v. City of New York*, No. 10-cv-6005(RWS), 2012 WL 2161596, at *12 (S.D.N.Y. June 14, 2012) (applying Rule 26's broad concept of relevance to a non-party subpoena) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

Ally repeats its argument that "the 'reasonableness' of a settlement is assessed under an objective standard," which includes consideration of "facts bearing on the liability and damage aspects" of the settled claims and that Ally's subjective views are therefore irrelevant. Supp. Opp. at 10 (citing *Jackson Nat'l Life Ins. Co. v. Workman Sec. Corp*., 803 F. Supp. 2d 1006, 1012 (D. Minn. 2011)). However, this mischaracterizes what Movants-Defendants are seeking here. They are not just seeking Ally's subjective views; they are seeking the facts and other information on which Ally based those views. These are precisely the "facts bearing on the liability and damages" of claims settled in the ResCap bankruptcy that Ally's own authorities recognize as relevant to a subsequent indemnification claim. Moreover, this Court previously recognized that a settlement is evaluated after the fact, "in light of the information available to [the indemnitee] at that time." *In re Residential Capital, LLC*, 536 B.R. 132, 146 (S.D.N.Y. 2015) (quoting *United Health Grp. Inc. v. Columbia Cas. Co*., 47 F. Supp. 3d 863, 872 (D. Minn. 2014)). Movants-Defendants in fact seek access to the relevant information available "at the time," to the parties who brokered the settlement.

### C. Ally Faces No Burden in Producing its Examiner Materials

Ally repeats its arguments that the discovery sought is overbroad but, as was the case with its prior submissions, Ally makes little or no effort to quantify that burden. In fact, Ally's supplemental submission makes clear that there is virtually burden associated with producing its Examiner Materials. Movants-Defendants are simply requesting the documents that have been previously prepared for production to the Examiner and now presumably exist in a compact and readily producible form. Ally need only forward the production media to Movants-Defendants. Though it ultimately denied discovery for reasons inapplicable here, the court in *In re Baldwin United Corp.* recognized that discovery of examiner submissions like these represents the "the least burdensome and least expensive means possible." *In re Baldwin United Corp*., 46 B.R. at 316.[5]

Ally also repeats its unsupported claims from earlier briefing that documents sought by Movants-Defendants are available from other sources, including from RFC. This is incorrect with respect to each of the requests in the Subpoena, and it is clearly not the case with respect to the materials submitted by Ally to the Examiner. While Ally is permitted under the Protective Order and Confidentiality Agreement to disclose its Examiner Materials to Movants-Defendants, RFC would most certainly not be permitted to do so. In any case, RFC has not disclosed Ally's Examiner Materials to Movants-Defendants. Moreover, the availability of documents from other

---

[5] Ally also argues for the first time in its [supplemental brief] that the Request is overbroad because not all of the Examiner's subpoenas to Ally concerned RMBS claims and that supposedly only "44,000 pages out of 948,000 produced [by Ally] to the Examiner," (Supp. Opp. at [ ]) are relevant and discoverable. This eleventh-hour attempt to avoid production is completely unsupported and belies Ally's burden argument, since it would clearly be more burdensome for Ally to sort through the Examiner Materials to apply its exceedingly narrow view of what is and is not relevant, than it would be to simply re-produce the full set of documents. In any event, had Ally truly thought this was a basis for limiting its production, it should have raised it during the meet and confer process and not in a supplemental submission that goes far beyond the scope of what the Court ordered.

sources is not, in and of itself, a valid basis for refusing to comply with legitimate discovery requests. *See, e.g., LG Display Co. v. Chi Mei Optroelectronics Corp*., No. 08-cv-2408-L(POR), 2009 WL 223585, at *3 (S.D. Cal. Jan. 28, 2009) (allowing discovery of documents which might also be in the possession of parties to the action "in light of Plaintiff's desire to test the accuracy and completeness of the defendants' discovery responses and their denials that additional information exists.")

## II. Cost-shifting is Not Appropriate in Light of Ally's Relation to the Actions and its Inability to Articulate its Alleged Burden

"A non-party can be required to bear some or all expenses where the equities of a particular case demand it." *Prescient Acquisition Grp., Inc. v. MJ Publ'g Trust*, No. 05-cv-6298(PKC), 2006 WL 2996645, at *2 (S.D.N.Y. Oct. 13, 2006). Cost-shifting is only warranted when a non-party is subjected to a "significant expense." *DeGeer v. Gillis*, 755 F. Supp. 2d 909, 928 (N.D. Ill. 2010) (citing what is now Fed. R. Civ. P. 45(d)(2)); *see also Wells Fargo Bank, N.A. v. Konover*, 259 F.R.D. 206, 207 (D. Conn. 2009) ("Rule 45 protects non-parties from significant expenses incurred in their compliance with a subpoena.").

### A. Movants-Defendants Have Already Discharged Any Duty to Reduce Ally's Burden

Rule 45 requires that the party issuing a subpoena "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45 (d)(1). As the record clearly demonstrates, however, Movant-Defendants have made considerable efforts during the parties' meet-and-confer process to narrow the Subpoena in response to Ally's purported objections. Movants-Defendants continue to maintain that the original seventeen requests in the Subpoena complied with the Federal Rules' liberal discovery

standards. Nevertheless, in multiple acts of good faith, Movants-Defendants limited the subpoena to the five specific requests that are at issue in the Motion.

During that same time, from May to October 2015, Ally refused to change its untenable and unsupported position and has done nothing but repeat its largely boilerplate objections. As a consequence, Movants-Defendants have been unable to discuss appropriate limits on search terms and custodians with Ally that could have further reduced any alleged burden. As it stands, any burden on Ally is now largely self-imposed, and any request for cost-shifting should be denied.

**B. Ally Is Not Entitled to Any Costs**

"[T]he presumption is that the responding party must bear the expense of complying with discovery requests." *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 317 (S.D.N.Y. 2003) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978). This is no less true in the context of third parties. *In re World Trade Ctr. Disaster Site Litig.*, 2010 WL 3582921, at *1 ("a party issuing a subpoena is not required to bear the subpoenaed nonparty's cost of compliance.") Under limited circumstances, a court will require cost-shifting if it finds that the requested discovery imposes an "undue burden or expense." *Zubulake*, 217 F.R.D. at 317 (citing Fed. R. Civ. P. 26(c).) When determining whether a burden or expense is "undue," and cost-shifting appropriate, courts look to such factors as "the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Id.* Here, the amount in controversy is staggering, Ally's resources are substantial, and the proposed discovery is critical to one of the central issues in the underlying litigations, namely, the reasonableness of the settlement for which RFC now seeks indemnification. Each of these facts counsels strongly against shifting any costs of Ally's compliance with the substantially narrowed Subpoena to Movants-Defendants.

In particular, Courts will decline to shift costs where the non-party subpoena recipient has a close relationship to the events underlying or leading to the litigation. As discussed at length in Movants-Defendants' earlier briefing, Ally has been "substantially involved in the underlying transaction" giving rise to the litigations such that "expenses should not be awarded." *Chevron Corp. v. Donziger*, No. 11 Civ. 0691(LAK), 2013 WL 1087236, at *33 (S.D.N.Y. Mar. 13, 2013); *In re First Am. Corp.*, 184 F.R.D. 234, 242 (S.D.N.Y. 1998) ("Where a nonparty was substantially involved in the underlying transaction and could have anticipated that the failed transaction would reasonably spawn some litigation, expenses should not be awarded." (internal quotation marks and citation omitted)). Certainly, Ally is not the "quintessential, innocent, disinterested bystander [Rule 45] aims to protect." *Dow Chem. Co. v. Reinhard*, No. M8-85 (HB), 2008 WL 1968302, at *2 (S.D.N.Y. Apr. 29, 2008). Indeed, Ally was an integral participant in the bankruptcy process that specifically envisioned the creation of a litigating trust to pursue the RFC claims at issue here.

Nor does it matter that Ally does not have a direct financial interest in the outcome of the litigation. *See, e.g., J.P. Morgan Chase Bank v. Winnick*, No. 03-cv-8535, 2006 WL 3164241, at *2 (S.D.N.Y. November 2, 2006) (denying cost-shifting even though non-party subpoena recipients "will not directly benefit from the recovery").

**C. Ally Has Consistently Failed To Articulate Its Alleged Burden**

A party resisting discovery must show specifically how the requested discovery "is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014). Cost-shifting is not appropriate here where Ally, to this day, has failed to articulate with any particularity the burden it would face in complying with the Requests. Fed.

R. Civ. P. 45(c)(2)(B) 1991 Advisory Committee's Note ("it may be preferable to leave uncertain costs to be determined after the materials have been produced.").

Ultimately, it is likely that any costs associated with compliance would be minimal for a company of Ally's size. Ally is a major company that is routinely involved in litigation. It, like other large companies, is fully capable of absorbing the costs of complying with the subpoena and, as various courts have ruled similarly, this is a basis for denying any cost-shifting. *See, e.g., Cornell v. Columbus McKinnon Corp.*, No. 13-cv-02188(SI), 2015 WL 4747260, at *4 (N.D. Cal. Aug. 11, 2015) (denying nonparty company's request for cost-shifting, in part, because "the discovery costs are dwarfed by [the company's] profit figures, and therefore weigh in favor of finding them insignificant"); *cf. Chevron*, 2013 WL 1087236, at *33 (finding that an estimated cost of compliance in the range of $1,060,000 and $1,290,000 was not undue for a nonparty company with over $300 million in gross revenue the previous year and observing that this estimate was not "out of line with what would be typical for nonparty witness in complex commercial litigation").

On innumerable occasions, Ally made use of significant resources to insert itself into the matters at issue in the ResCap Bankruptcy, including the negotiation of the settlement for which RFC now seeks indemnification. It should not now be heard to require the financial assistance of Movants-Defendants. Moreover, to the extent that this Court limits its review to the Examiner Materials, as explained above, production of those documents entails little or no burden.

## CONCLUSION

For the foregoing reasons, and those discussed in Movants-Defendants' previous briefing in support of the Motion, Movants-Defendants request that the Court grant the Motion, require

Ally to bear its own costs in connection with its compliance with the Subpoena and grant such other and further relief as it deems just and proper.

Dated: April 8, 2016

Respectfully submitted,

SIMPSON THACHER & BARTLETT LLP,

By: /s/ William T. Russell, Jr.
David J. Woll
(dwoll@stblaw.com)
William T. Russell, Jr.
(wrussell@stblaw.com)
425 Lexington Avenue
New York, New York 10017
Phone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Movants-Defendants MortgageIT, Inc. and DB Structured Products, Inc.*
*(Counsel for additional Movants-Defendants joining this reply listed below in Appendix 1)*

**Appendix 1 – Attorneys of Record for Additional Movants-Defendants Joining the Reply Memorandum**

CARPENTER LAW FIRM PLLC
Mark J. Carpenter, #252189
5200 Willson Rd., Suite 150
Edina, MN 55424
Telephone: (952) 921-7340
Mark@Carpenter-law-firm.com

*Attorney for Defendant Ark-La-Tex Financial Services, LLC*

ALBERTSON LAW
Gina L. Albertson (*pro hac vice*)
Ryan P. Malone, #395795
2082 Michelson Drive,
Suite 100-R Irvine,
California 92612
Telephone: (949) 825-5214
Facsimile: (949) 825-5211
galbertson@albertsonlaw.org
rmalone@albertsonlaw.org

*Attorneys for Defendant Lenox Financial Mortgage Corp.*

LINDQUIST & VENNUM LLP
Mark A. Jacobson, #188943
Kelly G. Laudon, #386854
4200 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 371-3211
Facsimile: (612) 371-3207
mjacobson@lindquist.com
klaudon@lindquist.com

*Attorneys for Defendant Branch Banking & Trust Co.*

BECK CHAET BAMBERGER & POLKSY SC
Matthew S. Vignali (*pro hac vice*)
Steven W. Jelenchick (*pro hac vice*)
330 East Kilbourn Avenue
Milwaukee, WI 53202
Telephone: (414) 273-4200
mvignali@bcblaw.net
sjelenchick@bcblaw.net

NILAN JOHNSON LEWIS PA
Gregory A. Bromen, #338047
120 South Sixth Street, Suite 400
Minneapolis, MN 55402-4501
Telephone: (612) 305-7500
Facsimile: (612) 305-7501
gbromen@nilanjohnson.com

*Attorneys for Defendant Guaranty Bank*

JENKINS KAYAYAN LLP
Jonathan M. Jenkins (*pro hac vice*)
Lara Kayayan (*pro hac vice*)
444 S. Flower Street, Suite 1530
Los Angeles, California 90071
Telephone: (310) 984-6800
Facsimile: (310) 984-6840
jjenkins@jklitigators.com
lkayayan@jklitigators.com

LAPP, LIBRA, THOMSON, STOEBNER & PUSH, CHARTERED
Richard T. Thomson, #109538
Amy L. Schwartz, #0339350
120 South Sixth Street, Suite 2500
Minneapolis, MN 55402
Telephone: (612) 338-5815
Facsimile: (612) 338-6651
rthomson@lapplibra.com
aschwartz@lapplibra.com

*Attorneys for Sierra Pacific Mortgage Company, Inc.*

HELLMUTH & JOHNSON, PLLC
J. Robert Keena, #258817
Carol R. M. Moss, #0389202
8050 West 78th Street
Edina, MN 55439
Telephone: (952) 941-4005
Facsimile: (952) 941-2337
jkeena@hjlawfirm.com
cmoss@hjlawfirm.com

AMERICAN MORTGAGE LAW GROUP
James W. Brody (*pro hac vice*)
E. Page Allinson (*pro hac vice*)
Jack V. Valinoti (*pro hac vice*)
Andrew Steinfeld (*pro hac vice*)
75 Rowland Way, Suite 350
Novato, CA 94945
Telephone: (415) 878-0030
Facsimile: (415) 878-0035
Jbrody@americanmlg.com
eallinson@americanmlg.com
jvalinoti@americanmlg.com
asteinfeld@americanmlg.com

*Attorneys for Defendants First California Mortgage Company; Americash; Broadview Mortgage Corp.; Mortgage Network, Incorporated d/b/a MNET Mortgage Corporation; Mortgage Access Corp.; Wallick & Volk, Inc.; Gateway Bank, F.S.B.; and CMG Mortgage, Inc.*

MUNGER, TOLLES & OLSON LLP
Marc T. G. Dworsky (*pro hac vice*)
Gregory D. Phillips (*pro hac vice*)
Michael E. Soloff (*pro hac vice*)
Richard C. St. John (*pro hac vice*)
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
Marc.Dworsky@mto.com
Gregory.Phillips@mto.com
Mike.Soloff@mto.com
Richard.StJohn@mto.com

LAPP, LIBRA, THOMSON, STOEBNER & PUSCH, CHARTERED
Richard T. Thomson, #109538
Amy L. Schwartz, #0339350
120 South Sixth Street, Suite 2500
Minneapolis, MN 55402
Telephone: (612) 338-5815
Facsimile: (612) 338-6651
rthomson@lapplibra.com
aschwartz@lapplibra.com

*Attorneys for Defendant Wells Fargo Bank, N.A and Wells Fargo Financial Retail Credit, Inc.*

KATTEN & TEMPLE LLP
Nancy A. Temple (*pro hac vice*)
Scott N. Gilbert (*pro hac vice*)
542 South Dearborn Street, 14th Floor
Chicago, IL 60605
Telephone: (312) 663-0800
Facsimile: (312) 663-0900
ntemple@kattentemple.com
sgilbert@kattentemple.com

LEVENTHAL PLLC
Seth Leventhal, #0263357
2100 Rand Tower
527 Marquette Ave. South
Minneapolis, MN 55402
Telephone: (612) 234-7349
Facsimile: (612) 437-4980
seth@leventhalpllc.com

*Attorneys for Defendant National Bank of Kansas City*

MASLON LLP
David T. Schultz, #169730
Nicole E. Narotzky, #329885
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-4140
Telephone: (612) 672-8399
Facsimile:(612)642-8399
david.schultz@maslon.com
nicole.narotzky@maslon.com

WEINER BRODSKY KIDER PC
David M. Souders (*pro hac vice)*
Tessa K. Somers (*pro hac vice*)
1300 19th Street NW Fifth Floor
Washington, DC 20036
Telephone: (202) 628-2000
Facsimile: (202) 628-2011
souders@thewbkfirm.com
somers@thewbkfirm.com

*Attorneys for Defendant PHH Mortgage Corp.*

WILLIAMS & CONNOLLY LLP
R. Hackney Wiegmann (*pro hac vice*)
Matthew V. Johnson (*pro hac vice*)
Jesse T. Smallwood (*pro hac vice*)
Beth A. Stewart (*pro hac vice*)
Noorudin Mahmood Ahmad (*pro hac vice*)
725 Twelfth Street, N.W. Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
Hwiegmann@wc.com
Mjohnson@wc.com
Jsmallwood@wc.com
Bstewart@wc.com
Mahmad@wc.com

ZELLE HOFMANN VOELBEL & MASON LLP
Daniel Millea, #0245963
Elizabeth V. Kniffen, #0346329
500 Washington Avenue South
Suite 4000
Minneapolis, MN 55415
Telephone: (612) 339-2020
Facsimile: (612) 336-9100
dmillea@zelle.com ekniffen@zelle.com

*Attorneys for Defendant Decision One Mortgage Company, LLC; Home Loan Center Inc.; and HSBC Mortgage Corp.*