**<u>Exhibit 2</u>**

**Lathrop Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) ) | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | ) ) | Chapter 11 |
| Debtors. | ) ) ) | Jointly Administered |

**DECLARATION OF SARA LATHROP IN SUPPORT OF THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM NO. 715 FILED BY ZAYTOON ZEEBA PAKSIMA**

I, Sara Lathrop, hereby declare as follows:

1. I serve as Senior Claims Analyst for the ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] confirmed in the above-captioned Chapter 11 Cases. During the Chapter 11 Cases, I served as Regulatory Compliance Manager and Loss Mitigation Manager in the loan servicing department of Residential Capital, LLC ("ResCap"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "Debtors"). I have been employed by affiliates of ResCap since June 2006. I began my association with ResCap in 2006 working as an associate in the Default Division of the loan servicing operation of GMAC Mortgage, LLC ("GMACM"). In 2008, I became a Default Quality Control Specialist, a position that I held until I became a Supervisor in the Default Division in 2009. In 2011, I then became a Supervisor in the Loss Mitigation Division of GMACM's loan servicing operation, and in February 2012, I became a Manager in that division. In this role, I oversaw GMACM associates in their efforts to

1

ny-1227656

provide borrowers with loss mitigation options and assisted in the development of GMACM's loss mitigation policies. In January of 2013, I became the Regulatory Compliance Manager for ResCap. I became Senior Claims Analyst for ResCap in July 2013 and continued this role with the ResCap Liquidating Trust (the "Liquidating Trust") in December 2013. In my current position as Senior Claims Analyst to the Borrower Trust, among my other duties, I continue to assist the Borrower Trust in connection with the claims reconciliation process.[1] I am authorized to submit this declaration (the "Declaration") in support of the *ResCap Borrower Claims Trust's Objection To Claim No. 715 Filed By Zaytoon Zeeba Paksima* (the "Objection").[2]

2. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations, information learned from my review of relevant documents and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors, the Liquidating Trust, and the Borrower Trust's professionals and consultants. If I were called upon to testify, I could and would testify competently to the facts set forth in the Objection on that basis.

3. In my current and former capacities as Senior Claims Analyst and Loss Mitigation Manager to the Borrower Trust, the Liquidating Trust, and ResCap, I am intimately familiar with the Debtors' claims reconciliation process. Except as otherwise indicated, all statements in this Declaration are based upon my familiarity with the Debtors' Books and Records kept in the course of their regularly conducted business activities (the "Books and Records"), as well as the Debtors' schedules of assets and liabilities and statements of financial

---

[1] The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.
[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Objection.

2

ny-1227656

affairs filed in these Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or my review of relevant documents. I or Liquidating Trust personnel have reviewed and analyzed the proof of claim forms and supporting documentation filed by the Claimants. Since the Plan went effective and the Borrower Trust was established, I, along with members of the Liquidating Trust have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims, and determine the appropriate treatment of the same. In connection with such review and analysis, where applicable, I or Liquidating Trust personnel, together with professional advisors, have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (vi) the official claims register maintained in the Debtors' Chapter 11 Cases.

4. The Debtors have taken steps in these Chapter 11 Cases to afford Borrowers who have filed proofs of claim additional protections, as set forth in the Borrower Claim Procedures approved by the Procedures Order. A Request Letter was sent to the Claimant and a response was received on July 3, 2013, attached hereto as Exhibit A.

*The Asbury Loan*

5. On September 2, 2005, non-Debtor Finance America, LLC ("Finance") originated a loan (the "Asbury Loan") in the amount of $360,050 to the Claimant, evidenced by a note (the "Asbury Note") and secured by a warranty deed (the "Asbury Deed") on property located at 328 Asbury St., Houston, TX 77007-7137 (the "Asbury Property"). Copies of the Asbury Note and the Asbury Deed are attached hereto as Exhibit B and Exhibit C, respectively. Debtor Residential Funding Company, LLC purchased the loan from Finance and transferred its

3

ny-1227656

interest when the loan was securitized on or about November 1, 2005 and US Bank, NA was appointed as trustee.

6. GMACM serviced the Asbury Loan from November 20, 2005 until the Asbury Property was sold in a foreclosure sale on September 6, 2011.

7. The Claimant defaulted on the Asbury Loan as early as April 2006. See April 2006 Breach Letter, attached hereto as Exhibit D. On June 1, 2007, GMACM referred the Asbury Loan to foreclosure because it was owing for the March 1, 2007 payment. See Asbury LPS Notes, attached hereto as Exhibit E. The foreclosure sale was scheduled for August 7, 2007. See Asbury LPS Notes at 88.

8. The foreclosure sale was postponed on July 30, 2007 to allow the Claimant time to refinance the Asbury Loan. See Asbury Servicing Notes, attached hereto as Exhibit F at 172 of 176.

9. On November 6, 2007, after no refinance occurred, GMACM conducted a foreclosure sale (the "November 2007 Foreclosure Sale") of the Asbury Property. See Asbury Servicing Notes at 158 of 176. However, that same day, the Claimant filed a chapter 13 bankruptcy proceeding in the U.S. Bankruptcy Court for the Southern District of Texas (the "Texas Bankruptcy Court"), case number 07-37764 (the "First Bankruptcy Case"). See First Bankruptcy Case Docket, attached hereto as Exhibit G; see also Asbury Servicing Notes at 139 of 176.

10. On November 27, 2007, the Texas Bankruptcy Court dismissed the First Bankruptcy Case because the Claimant failed to undergo credit counseling prior to filing her petition. See Order Dismissing Case, attached hereto as Exhibit H.

4

ny-1227656

11. On April 15, 2008, the November 2007 Foreclosure Sale was rescinded due to the First Bankruptcy Case being filed the same day as the sale. See Asbury Servicing Notes at 140 of 176. At the time, the Claimant's credit report was also amended to remove the foreclosure sale. See Asbury Servicing Notes at 137 of 176.

12. On November 4, 2008, the Claimant filed a second chapter 13 bankruptcy petition (the "Second Bankruptcy Case") in the Texas Bankruptcy Court, case number 08-37149. See Second Bankruptcy Case Docket, attached hereto as Exhibit I. On November 24, 2008, the Texas Bankruptcy Court dismissed the Second Bankruptcy Case for failure to comply with a court order regarding the filing of certain documents. See Order of Dismissal, attached hereto as Exhibit J.

13. In September 2008, the Asbury Property was damaged in a hurricane. See Asbury Servicing Notes at 122 of 176. GMACM received an insurance check on November 25, 2008 and placed the funds in a suspense account so draws could be taken for repairs of the home; however, it did not receive documents to draw on this amount until August 31, 2009. See id. at 114 of 176. During the period that the Asbury Property was being repaired, foreclosure activity was suspended. See id. at 122 of 176.

14. On November 29, 2010, GMACM referred the Claimant's account to foreclosure because her account was owing for the March 1, 2007 payment and there had been no cooperation from the Claimant since January 2010. See Asbury Servicing Notes at 66 of 176.

15. Pursuant to GMACM's business practices, because the Asbury Loan was delinquent by more than forty-five days, monthly property inspections were conducted to ensure that the Asbury Property was being maintained and occupied. It was also GMACM's business practice to obtain valuations of property ("BPOs") that secured delinquent loans in order to allow

GMACM to create bidding instructions for foreclosure sales. As a result, between September 2009 and September 2011, GMACM assessed a number of fees related to the property inspections and the BPOs conducted on the Asbury Property, which are reflected in the Servicing Notes. The Borrower Trust has prepared a chart summarizing these payments, attached hereto as Exhibit K.

16. On January 26, 2011, the Claimant provided GMACM with a letter disputing the amount of her debt and requesting that the amount be verified. See January 2011 Debt Validation Letter, attached hereto as Exhibit L. In response, GMACM provided the Claimant with a copy of her loan history showing that her account was owing for the March 1, 2007 payment. See id.

17. On May 2, 2011, GMACM received another letter from the Claimant seeking information regarding the current owner of the Asbury Loan. See May 2011 Debt Validation Letter, attached hereto as Exhibit M. GMACM responded to the letter on May 11, 2011, providing the Claimant with a copy of the Asbury Note and Asbury Deed of Trust and informing her that the owner of the Asbury Loan was U.S. Bank N.A. as Trustee. See id.

18. On September 6, 2011, GMACM conducted a foreclosure sale of the Asbury Property at which time Elbar Investments, Inc. ("Elbar") a non-Debtor third party purchased the Asbury Property at a foreclosure sale for $288,000. See Asbury Servicing Notes at 19 of 176. At the time of the sale, the principal balance owing on the Asbury Loan was $355,944.33. See Asbury Servicing Notes at 2 of 176. On information and belief, the Claimant continues to live in the Asbury Property.

*The Aurora Loan*

19. On September 13, 2005, Kellner Mortgage Investments I, Ltd. ("Kellner") originated a loan (the "Aurora Loan," and with the Asbury Loan, the "Loans") in the amount of $290,000 to the Claimant, evidenced by a note (the "Aurora Note") and secured by a deed of trust (the "Aurora Deed of Trust") on property located at 203 Aurora Street, Houston, TX 77008 (the "Aurora Property," and with the Asbury Property, the "Properties"). Copies of the Aurora Note and the Aurora Deed of Trust are attached hereto as Exhibit N and Exhibit O, respectively. Debtor Residential Funding Company, LLC purchased the loan from Kellner and transferred its interest when the loan was securitized on or about November 1, 2005 and JP Morgan Chase Bank, NA was appointed as trustee.

20. GMACM serviced the Aurora Loan from at least May 22, 2007 until the Aurora Property was sold in a foreclosure sale on June 3, 2009.

21. On July 22, 2008, the account for the Aurora Loan was referred to foreclosure because it was owing for the March 2007 through July 2008 payments. See Aurora Servicing Notes, attached hereto as Exhibit P, at 53-54 of 104. Due to the filing of the Second Bankruptcy Case, the foreclosure was placed on hold until it was dismissed. See id. at 45 of 104.

22. On June 3, 2009, GMACM conducted a foreclosure sale of the Aurora Property, at which time the account was owing for the March 1, 2007 payment. See Aurora Servicing Notes at 10 of 104. GMACM purchased the Aurora Property on behalf of the investor at the foreclosure sale with a bid of $146,618.16. See id. At the time of the foreclosure sale, the unpaid principal balance on the account was $287,093.40. See id. at 2 of 104.

23. On December 17, 2009, GMACM sold the Aurora Property to a non-Debtor third party for $119,616.61. See Aurora Servicing Notes at 6 of 104.

7

*The Lawsuit*

24.     On September 15, 2011, the Claimant filed a "Petition for Declaration of Rights, Wrongful Foreclosure, Unreasonable Collection Efforts, Finance Code and DTPA Violations" (the "Original Petition") against GMACM in the District Court of Harris County, Texas (the "Texas Court"), case number 2011-54902 (the "Lawsuit").  See Original Petition, attached hereto as Exhibit Q.  The Original Petition Related to the Asbury Property and asserted causes of action for (1) unreasonable collection efforts, (2) violation of Texas Finance Code, (3) violation of the DTPA, (4) declaratory action, (5) wrongful foreclosure and set aside of foreclosure sale, and (5) breach of contract.  On October 10, 2011, GMACM filed an answer to the Original Petition.  See Lawsuit Docket, attached hereto as Exhibit R.  On October 25, 2011, the Claimant filed "Plaintiff's First Amended Petition for Declaration of Rights, Wrongful Foreclosure, Unreasonable Collection Efforts, Finance Code and DTPA Violations" (the "Amended Petition"), which also included allegations related to the Aurora Property.  See Amended Petition, attached to the Claim.  On November 1, 2011, the Claimant filed a second amended petition (the "Second Amended Petition") asserting the same claims against Elbar, as well as additional claims for trespass and slander of title against Elbar.  See Second Amended Petition, attached to the Claim.

25.     On May 22, 2012, GMACM filed a notice of bankruptcy in the Lawsuit.  See Lawsuit Docket.  On November 12, 2015, the Texas Court entered an order severing the Lawsuit and creating a new action, case number 2011-54902-A, solely against Elbar.  See Order on Motion to Sever and Retain, attached hereto as Exhibit S.

ny-1227656

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 11, 2016

/s/ Sara Lathrop
Sara Lathrop
Senior Claims Analyst for ResCap Liquidating Trust