## Exhibit 3

**Proof of Claim**

The Debtor has listed your claim as Contingent, Unliquidated and Disputed on the Debtor's Schedule of Liabilities as a General Unsecured claim in the amount of $0.00. YOU MUST timely file a Proof of Claim or you will be forever barred from recovery.

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>GMAC Mortgage, LLC | Case Number:<br>12-12032 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

Zaytoon Zeeba Paksima vs GMAC Mortgage LLC FKA GMAC Mortgage Corporation

Name and address where notices should be sent:                         NameID: 10995506

Zaytoon Zeeba Paksima vs GMAC Mortgage LLC FKA GMAC Mortgage Corporation
CHRISTIAN SMITH and JEWELL LLP
2302 FANNIN STE 500
HOUSTON, TX 77002

Telephone number:                                    email:

Name and address where payment should be sent (if different from above):

Telephone number:                                    email:

☐ Check this box if this claim amends a previously filed claim.

**Court Claim
Number:**_____
(*If known*)

Filed on: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:** $ *300,000 —*

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** *Lawsuit Cause No. 2011-54902 Paksima v GMAC*
(See instruction #2) *In the 152nd District Court of Harris County, TX*

**3. Last four digits of any number by which creditor identifies debtor:**

*3128*

**3a. Debtor may have scheduled account as:**

(See instruction #3a)

**3b. Uniform Claim Identifier (optional):**

(See instruction #3b)

**4. Secured Claim** (See instruction #4)

Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
**Describe:**

**Value of Property:** $ _____  **Annual Interest Rate** _____% ☐ Fixed ☐ Variable
(when case was filed)

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim,**

if any: $ _____        **Basis for perfection:** _____

**Amount of Secured Claim:** $ _____        **Amount Unsecured:** $ _____

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**

Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.

$ _____  (See instruction #6)

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain: *Plaintiff's First Amended Petition*

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$ _____

* *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**9. Signature:** (See instruction #9) Check the appropriate box.

☐ I am the creditor.  ☑ I am the creditor's authorized agent.
(Attach copy of power of attorney, if any.)

☐ I am the trustee, or the debtor, or their authorized agent.
(See Bankruptcy Rule 3004.)

☐ I am a guarantor, surety, indorser, or other codebtor.
(See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: *Allan B. Levine*
Title: *Attorney*
Company: *Christian Smith Jewell, LLP*
Address and telephone number (if different from notice address above):

_____ *(Signature)*    *9/19/12* (Date)

Telephone number: *713-659-7617*    Email: *alevine@csj-law.com*

**RECEIVED**

**SEP 2 4 2012**

KURTZMAN CARSON CONSULTANTS

**COURT USE ONLY**

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

No. <u>2011-54902</u>

| | | |
|---|---|---|
| ZAYTOON ZEEBA PAKSIMA | § | IN THE DISTRICT COURT OF |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | HARRIS COUNTY, T E X A S |
| GMAC MORTGAGE, LLC FKA | § | |
| GMAC MORTGAGE CORPORATION | § | |
| AND ELBAR INVESTMENTS, INC. | § | |
| | § | |
| **Defendants.** | § | 152ND   JUDICIAL   DISTRICT |

### PLAINTIFF'S SECOND AMENDED PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, ZAYTOON ZEEBA PAKSIMA files this her Second Amended Petition for Declaration of Rights, Wrongful Foreclosure, Unreasonable Collection Efforts, Finance Code and DTPA Violations together with application for Temporary Restraining Order and Temporary and injunctive relief against Defendant Elbar and would show the Court as follows:

## I. DISCLOSURES UNDER CHAPTER 30
### Tex. Civ. Prac. & Rem. Code

1.1    The address of Plaintiff is 328 Asbury St., Houston, Texas 77007-7137.

1.2    The last three digits of Plaintiff's Texas Drivers License Number are 862 and the last three digits of Plaintiff's Social Security Number are 596.

## II. DISCOVERY CONTROL PLAN

2.1    Pursuant to Texas Rule of Civil Procedure 190.2, Plaintiff intends that discovery be conducted under Level 2 and affirmatively pleads that she seeks monetary relief aggregating more than $50,000.



## III. PARTIES

3.1    Plaintiff, ZAYTOON ZEEBA PAKSIMA ("Paksima") is a resident of Harris County,

Texas.

3.2    Defendant, GMAC MORTGAGE, LLC fka GMAC MORTGAGE CORPORATION

("GMAC"), is a domestic limited partnership organized and existing under the laws of the State of

Texas, whose principal office is located at 1100 Virginia Drive, Fort Washington, PA 19034, and

which is authorized to do business in the state of Texas.  GMAC has been served with process and

has appeared through its counsel of record and filed an answer.

3.3    Defendant ELBAR INVESTMENTS, INC. ("Elbar") may be served with process

through its counsel of record, Jerel S. Twyman, P. O. Box 272271, Houston, Texas 77277-2271.

## IV. FACTUAL BACKGROUND

4.1    On or about September 2, 2005, Plaintiff purchased her "homestead" property located

at  328 Asbury St., Houston, Texas 77007-7137, Harris County, Texas (the "Property"), through a

loan from Defendant GMAC.  The legal description of the Property is:

> Lot Two (2), save and except the north 1.38 feet thereof, in block one (1), of Rava
> Square, a subdivision of 0.3444 acres being a replat of lots 1, 2, 3, 4, 5, and 6, block
> 36 of Rice Military Addition, according to map plat thereof recorded in Film Code
> No. 465124, of the Map Records of Harris County, Texas.

4.2    This loan was accomplished through an Adjustable Rate Note with Defendant GMAC

as mortgage servicer of the loan.  Plaintiff maintained prepaid hazard insurance on the Property at

all relevant times.

4.3    On or about September 13, 2005 Plaintiff purchased another property located at 203

Aurora, Houston, Texas 77008 through a loan from Defendant GMAC.  The legal description of that

Property is:

The south 77' of lots thirty-one (31), thirty-two (32), in block thrity-six (36) of Sunset
Heights Addition, A subdivision in Harris County, Texas, according to the map or plat
thereof, recorded in volume 3, page 43 of the map records of Harris County, Texas.

4.4    GMAC was in the business of servicing mortgages and loans which in general
includes collecting mortgages and loan payments on behalf of mortgage and loan holders. GMAC
failed to give Plaintiff proper credit for payments as and when they were made or inform Plaintiff
of the charges imposed on her account. Plaintiff has been a victim of GMAC's wrongful conduct.
GMAC violated and breached the terms of Plaintiff's loan by wrongfully adding fees and charging
expenses as well as misapplying payments and attempting to collect the debt by improper debt
collection methods, including but not limited to misrepresentations of amounts due and harrassment.

4.5    Plaintiff made numerous requests for information relating to her loan. This
information was required for Plaintiff either to refinance her mortgage or to sell her home. GMAC
provided Plaintiff with incorrect, inadequate information or none at all.

**V. The Asbury Property**

5.1    On September 6, 2011, Defendant GMAC wrongfully and improperly foreclosed on
the loan on the Asbury property. GMAC did not have proper authorization from the owner/holder
of the note to foreclose. Defendant did not send Plaintiff proper notice by certified mail either of
default or of foreclosure sale, both of which are required by TEXAS PROPERTY CODE §51.002. Their
notice of sale was fatally flawed by not containing the information required by §51.002, §51.0025
and §51.0075. Plaintiff is informed and on said information believes the foreclosure of the Aurora
property was similarly flawed.

5.2    GMAC was in the business of servicing mortgages and loans on behalf of the holders
of mortgages and loans. Defendant incorrectly overcharged Plaintiff interest, late fees, and other
charges on each of the two properties.

5.3    Defendant failed to properly account for Plaintiff's payments, failed to verify debt as requested by Plaintiff, thereby preventing cure of claimed defaults, and engaged in other predatory lending practices, violating the Texas Debt Collection Practices Act, § 392.403 and common law.

5.4    GMAC wrongfully charged and collected various improper fees, costs, and charges, including inspection fees and late fees, and fees for using its payment systems, which fees and charges were not legally due or were in excess of amounts legally due.

5.5    GMAC assessed these improper fees, costs, and charges (collectively, "improper charges") to maximize profits, with the goal of putting borrowers such as Plaintiff into default status. After loan originated, GMAC then demanded payment and collected the improper charges from Plaintiff's monthly payments in a suspense account and claimed Plaintiff in default.

5.6    The improper charges above described resulted in dramatically increased monthly payments and had a snowball effect, forcing Plaintiff into default status. GMAC structures its account statements in a way that makes it difficult or impossible for Plaintiff to determine how much she owed or how any payment would be allocated or even to provide a proper payment history.

5.7    GMAC practices were misleading, deceptive, and unfair under the Texas Debt Collection Practices Act, the Texas Deceptive Trade Practice Act, and Texas common law of unreasonable debt collection.

5.8    Plaintiff asserts that GMAC assessed improper charges, default-related fees not authorized by the terms of the loan contract, or not legally due and owing; issued statements that failed to include accurate and required account information; assessed charges for unnecessary and unauthorized property inspections; assessed improper and excessive late fees, phone fees, administration fees, BPO fees and escrow fees otherwise engaged in systematic improper collection practices in violation of Finance Code § 392.101, *et seq.* and common law.

5.9    On or about September 18, 2008, Hurricane Ike damaged the subject Asbury property and a claim for damages resulted in funds from insurance to be paid to GMAC. GMAC still holds insurance funds and escrow funds in suspense.

## VI. Elbar Investments, Inc.

6.1    In the process of the September 6, 2011 foreclosure, the substitute trustee sold the Asbury property to Elbar Investments, Inc., issuing a trustees deed to Defendant Elbar on October 17, 2011, not withstanding this lawsuit originally filed September 14, 2011 and a lis pendens recorded as document 20110388000 on September 15, 2011. Defendant Elbar filed a lawsuit to evict Plaintiff, No. EV12CC0024335 on October 12, 2011, heard on October 28, 2011 by Judge Petronella. The Original Forcible Detainer lawsuit as served on Paksima is attached herein as Exhibit "I" and Plaintiff's Answer is attached herein as Exhibit "II" with a copy of a title report, Paksima's First Amended Petition and the lis pendens incorporated herein by reference.

6.2    The core issue of this lawsuit, wrongful foreclosure, involves title issues concerning the properties. The Asbury property is the subject of the Elbar forcible detainer lawsuit and Plaintiff's application for a temporary restraining order. T.R.C.P. allows possession issues only in forcible detainer suits, and does not adjudicate title issues as a matter of jurisdiction. Possession issues are determined by superior right to title. The adjudication of the title issues in this lawsuit will determine the right of possession to the Asbury property in any forcible detainer action. The detainer lawsuit was continued to November 4, 2011 by Judge Petronella to give time to obtain a temporary restraining order.

6.3    For a non-judicial foreclosure to be valid, it must comport with the requirements of Ch 51 of the Property Code, which requires a notice of sale that includes the address of the substitute trustee. The notice of sale for the Asbury foreclosure did not include the address of the trustee as

required by Property Code § 51.0075(e) and the sale thus was flawed on its face.  See notice of sale

attached herein as Exhibit "III".

6.4    Elbar can only claim rights from the deed given by the trustee.  If Elbar claims rights

to possession through the deed of trust, such a claim is dependant on the validity of the foreclosure.

6.5    The court should set aside the foreclosure by GMAC because it was not conducted

properly. TEXAS PROPERTY CODE § 51.002 requires a properly authorized and appointed trustee to

provide a debtor with required notices in proper form such as notice of default, allowing debtor at

least twenty (20) days to cure the default and notice of a foreclosure sale twenty-one (21) days in

advance of the actual foreclosure.  Property Code § 51.0075[1] notices are required to be sent by

certified mail by someone properly authorized to pursue foreclosure per the Deed of Trust and

requires the address of the substitute trustee.  The notice was not compliant with required

information. Plaintiff received neither the required proper notice of default nor the required proper

notice of foreclosure twenty-one (21) days before the foreclosure.  Nor was the substitute trustee

properly authorized to conduct the September 6, 2011 sale.

6.6    The defects in Defendant GMAC's foreclosure proceedings make the foreclosure

unconscionable, and Plaintiff asks the court for the equitable remedy of wrongful foreclosure, setting

aside of the foreclosure sale and awarding Plaintiff damages.  If the foreclosure sale cannot be set

aside, then Plaintiff, in the alternative, seeks money damages for the wrongful foreclosure.

6.7    The doctrine of good faith purchaser for value without notice does not apply to a

purchase at a void foreclosure sale.  One who bids upon property at a foreclosure sale does so at his

peril.  If the trustee conducting the sale has no power or authority to offer the property for sale, or

---

[1]Requires a mortgage servicer to be appointed by the mortgagee by power of attorney or corporate
resolution.  GMAC was not so properly authorized.  The notice of sale failed to include required information.

if there is other defect or irregularity which would render the foreclosure sale void, then the
purchaser cannot acquire title to the property. The purchaser(s) at the foreclosure sales of the subject
properties could obtain only such title as the trustee had authority to convey. Because the
foreclosures were void, the purchaser(s) have no valid title.

## VII.    APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY AND PERMANENT INJUNCTIONS

7.1    Based on the preceding facts, Plaintiff's rights to possession of her home
is in jeopardy. Defendant Elbar is not entitled to possession if the foreclosure was
wrongful. Judge Petronella has no jurisdiction to resolve title issues. Paksima is
entitled to establish superior title in the course of the lawsuit. Paksima seeks a
temporary restraining order and injunctive relief to prevent the immediate, imminent
and irreparable injury if ordered to give up possession. The temporary restraining
order and temporary injunctions should embrace all Defendant's agents, servants,
empoyees and persons acting on their behalf with notice of the requested relief.

7.2    This relief is the most efficient and practical remedy. There is no
adequate remedy at law. Plaintiff is willing to post a reasonable bond.

### VIII.  The Aurora Property

8.1    In June 2009, without notice to Plaintiff, GMAC wrongfully non-judicially foreclosed
on the commercial property.

8.2    After wrongfully foreclosing and without a writ for possession or even notice to
Plaintiff, GMAC committed trespass by entering Plaintiff's Aurora Property without permission,

taking possession of the store fixtures and inventory. GMAC sent people to secure the property including the contents.

8.3    Having secured the property and without notifying Plaintiff, Defendant acted recklessly, in consious disregard and indifference to Plaintiff's rights, caused all contents to be removed and discarded as trash.

8.4    By failing to notify Plaintiff to remove her contents, Defendant GMAC had reason to know that a high degree of risk to Plaintiff for damages would occur. Defendant proceeded to act recklessly and in conscious disregard of or indifference to that risk. This conduct was abusive. GMAC had previously changed the locks on Plaintiff's place of business and otherwise invaded her privacy and threatened her. Then engaged in helping itself to the contents and discarding them.

8.5    Defendants conduct above described was intentional or reckless and extreme and outrageous, causing severe emotional distress to Plaintiff which cannot be remedied by any other cause of action. Plaintiff suffered grief, embarrassment, shame, humiliation and worry. `No reasonable person could expect to endure such conduct without undergoing unreasonable suffering. Plaintiff has experienced emotional outbursts, headaches, stress, anxiety, and depression. Plaintiff is entitled to damages for mental anguish within the jurisdictional limits of the court, and exemplary damages resulting from GMAC's malice under TCP&R Code §41.003(a).

## IX. COMMON LAW TORT OF
## UNREASONABLE COLLECTION EFFORTS

9.1    Plaintiff incorporates paragraphs 4.1- 4.19 by reference as though fully set forth. Defendant engaged in reckless disregard for Plaintiff's welfare by unreasonable collection practices in attempting collection of invalid amounts, having failed to verify and compute what was actually

owed. The failure to properly account for Plaintiff's payments and lack of cooperation with Plaintiff

constitutes unreasonable collection practices under Texas common law, and caused emotional

distress.

## X. VIOLATION OF TEXAS FINANCE CODE § 392.001, *ET SEQ.*, AND THE TEXAS DECEPTIVE TRADE PRACTICES ACT

10.1    Plaintiff incorporates paragraphs 4.1-5.1 by reference as though fully set forth.

Plaintiff is a consumer as defined by the Texas Deceptive Trade Practices Act who acquired products

and services from GMAC. Defendant GMAC is a third-party debt collector who is attempting

collection of a consumer debt. Defendant was attempting to collect improper interest and other

charges not authorized by the agreement or not properly incurred, in violation of § 392.303(a)(2),

and § 392.403 misrepresenting the character, extent, or amount of Plaintiff's debt.

10.2    Plaintiff suffered emotional damages and mental anguish from the serious upset and

strain of the overall situation under the Texas Finance code violation and wrongful foreclosure. The

violation of the Code and wrongful foreclosure entitles Plaintiff to actual damages and attorneys fees

and amount to a violation of the Deceptive Trade Practices Act allowing Plaintiff economic and

mental anguish damages. The misconduct was knowing, allowing the imposition of additional

statutory damages.

## XI. DECLARATORY ACTION

11.1    All preceding paragraphs are hereby incorporated by reference.

11.2    Plaintiff asks the Court to declare Plaintiff's right to the "homestead" property.

## XII. WRONGFUL FORECLOSURE AND SET-ASIDE OF FORECLOSURE SALE

12.1    All preceding paragraphs are hereby incorporated by reference.

12.2    GMAC committed wrongful foreclosure by virtue of one or more of the following acts:

a)    failing to comply with the requirements of Ch. 51 of the Property Code;

b)    failing to have proper standing to foreclose;

c)    misapplications of payments and contending that lack of payment was a default;

d)    failing to provide Plaintiff with timely, clear and correct information about the timing and amount of payments due;

e)    misapplying payments received;

f)    failing to comply with proper contractual and/or statutory notice provisions regarding foreclosure;

g)    demanding more than was actually due to avoid foreclosure.

## XIII.  TRESPASS TO TRY TITLE AGAINST DEFENDANT ELBAR INVESTMENTS INC.

13.1    Plaintiff Paksima, sues Elbar Investments, Inc. Per T.R.C.P. 783 *et. seq.* For possession and title to the real estate legally described as :

Lot Two (2), save and except the north 1.38 feet thereof, in block one (1), of Rava Square, a subdivision of 0.3444 acres being a replat of lots 1, 2, 3, 4, 5, and 6, block 36 of Rice Military Addition, according to map plat thereof recorded in Film Code No. 465124, of the Map Records of Harris County, Texas;

and more commonly described as 328 Ashbury, Houston, Texas 77007 ("the property").

13.2    Plaintiff claims fee simple ownership of the aforementioned property.  Plaintiff was in possession of the property until GMAC wrongfully foreclosed the property.  Plaintiff timely filed a lis pendens recorded as file #20110388000 in the Real Property Records of Harris County, Texas prior to GMAC deeding the property to Elbar.

2ND AMD ORIGINAL PETITION FOR DECLARATION OF RIGHTS                                                    PAGE 10

13.3    Defendant Elbar filed a Forcible Detainer Petition seeking possession of the property from Plaintiff and has made a claim of right to fee simple title to the property resulting from a purchase from GMAC at a void foreclosure sale. Plaintiff needs to remove any cloud on title resulting from the actions of Elbar.

13.4    The doctrine of good faith purchases for value without notice does not apply to a purchase at a void foreclosure sale. One who bids upon property at a foreclosure sale does so at his peril. If the trustee conducting the sale has no power or authority to offer the property for sale, or if there is other defect or irregularity which would render the foreclosure sale void, then the purchaser cannot acquire title to the property. Elbar, as purchaser(s) at the foreclosure sale of the subject property could obtain only such title as the trustee had authority to convey. Because the foreclosure was void, Elbar has no valid title.

## XIV.  SLANDER OF TITLE

14.1    Defendant Elbar uttered and published written and oral statements about the state of Plaintiff's title to the property by recording a deed to the property as belonging to it and not Plaintiff. The statement that Defendant, and not Plaintiff owns the property was false. The statement was uttered and published with legal malice, as it was deliberate and without reasonable cause. Elbar had no reasonable belief that it has title to the property. As a result of the false statement, Plaintiff lost a sale opportunity for which Plaintiff is entitled to exemplary damages. Specifically Plaintiff lost a sale opportunity in August 2011 to sell the property. Defendant's false statements and claims caused injury to Plaintiff which resulted in damages to Plaintiff of not more than $50,000.00.

14.2    Because Elbar had actual knowledge of Plaintiff's claim to title of the property and because its claim is based on a void foreclosure it is not a bona fide purchaser.

## XV.  BREACH OF CONTRACT

15.1    All preceding paragraphs are hereby incorporated by reference.

15.2    Plaintiff and Defendant GMAC entered into a valid and enforceable contract by virtue of the note and deed of trust referenced above.  That contract provided that Plaintiff would be entitled to certain payments on certain terms.

15.3    Plaintiff substantially performed her contractual obligations but for those which she was excused from performing or prevented from performing by Defendant GMAC, as set out above.

15.4    GMAC breached the contract by its improper charges and acts set forth above.  The breach caused injury to Plaintiff which resulted in damages to Plaintiff including the out of pocket costs incurred by virtue of the improper charges and her costs to recover "homestead" property wrongfully taken.

15.5    Plaintiff is entitled to recover attorneys fees under Ch. 38, TRCP.

15.6    All conditions precedent to Plaintiff's claims for relief have been performed or have occurred.

## XVI.  ATTORNEY'S FEES

16.1    All preceding paragraphs are hereby incorporated by reference.

16.2    Pursuant to the Declaratory Judgment Act, TEXAS CIVIL PRACTICE AND REMEDIES CODE § 37.009 and and Ch. 38 of the Texas Finance Code, Texas Insurance Code and Deceptive Practices Act, Plaintiff asks the Court to award her reasonable and necessary costs and attorney's fees related to bringing this declaratory judgment action.

## XVII. PRAYER

WHEREFORE, Plaintiff requests that Defendant GMAC be cited to appear and answer and that on final trial, the Plaintiff have the following awarded against GMAC:

1. Judgment for title to and possession of the "homestead" property which is the subject matter of this suit;

2. Damages plus prejudgment interest as provided by law;

3. Exemplary damages;

4. Actual and additional damages for the violation of common law tort of unreasonable collection efforts, with damages for emotional distress under the Texas Finance Code, § 392.001, *et seq.* Insurance Code § 541 and the Deceptive Trade Practices Act;

5. Attorney's fees according to Texas Civil Practice and Remedies Code § 37.009 & 38.001 *et seq*, Texas Finance Code § 392.403(b), Texas Insurance Code § 541.142 and/or Texas Deceptive Trade Practices Act, TX Bus. & Comm. Code § 17.505.

6. Costs of suit;

7. Reasonable attorneys' fees for trial and appeal as pleaded;

8. Post-judgment interest as provided by law from the date of judgment until paid; and

9. Such other and further relief to which the Plaintiff may be justly entitled.

DATED:  November ___/___, 2011.

Respectfully Submitted,

**CHRISTIAN SMITH & JEWELL, L.L.P.**

By: _____

    ALLAN G. LEVINE
    State Bar No. 12257140
    2302 Fannin, Suite 500
    Houston, Texas 77002
    Telephone: 713.659.7617
    Facsimile: 713.659.7641
    **ATTORNEY FOR PLAINTIFF**

<u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing was served on each attorney of record or party by hand delivery, facsimile and/or certified mail return receipt requested in accordance with Tex R. Civ. P. 21(a) on November _/_ , 2011.

Jon H. Patterson
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2119
205-521-8000
205-521-8800 Fax

_____
ALLAN G. LEVINE

NO. EVI2C0024335

| | | |
|---|---|---|
| ELBAR INVESTMENTS, INC. | § | IN THE JUSTICE COURT |
| V. | § | HARRIS COUNTY, TEXAS |
| ZAYTOON ZEEBA PAKSIMA, | § | |
| AND ALL OCCUPANTS | § | PRECINCT NUMBER 1, PLACE 2 |

## ORIGINAL FORCIBLE DETAINER PETITION



TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Elbar Investments, Inc. (hereinafter called "Plaintiff"), complaining of Zaytoon Zeeba Paksima, and all other occupants (hereinafter called "Defendant" whether one or more) of the real property described as follows:

> LOT TWO (2), SAVE AND EXCEPT THE NORTH 1.38 FEET THEREOF, IN BLOCK ONE (1), OF RAVA SQUARE, A SUBDIVISION OF 0.3444 ACRES BEING A REPLAT OF LOTS 1, 2, 3, 4, 5, AND 6, BLOCK 36 OF RICE MILITARY ADDITION, ACCORDING TO MAP PLAT THEREOF RECORDED IN FILM CODE NO. 465124, OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS, and commonly known as 328 Asbury, Houston TX 77007 (hereinafter referred to as the "Property").

1.    Plaintiff intends to conduct discovery under Level 1.

2.    The above-described Property is within the boundaries of this Court and this Court has jurisdiction.

3.    In accordance with the Texas Rules of Civil Procedure, service may be had on the Defendant Zaytoon Zeeba Paksima at 328 Asbury, Houston TX 77007, Harris County, Texas, or on someone over the age of sixteen years at 328 Asbury, Houston TX 77007. This sworn complaint lists all home and work addresses of the Defendant which are known to the Plaintiff, and no other home or work addresses of the Defendant are known to Plaintiff. If the officer receiving citation is unsuccessful in serving such citation under Rule 742, service may be done according to Rule 742a.

4.    Plaintiff became entitled to possession upon becoming the purchaser of the Property.



NO. EV12CC024335

| | | |
|---|---|---|
| ELBAR INVESTMENTS, INC. | § | IN THE JUSTICE COURT |
| | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ZAYTOON ZEEBA PAKSIMA, | § | |
| AND ALL OCCUPANTS | § | PRECINCT NUMBER 1, PLACE 2 |

COPY

## CERTIFICATE OF LAST KNOWN ADDRESS

The best last known address for each Defendant, against who this case has been filed and in which a judgment is sought is:

Zaytoon Zeeba Paksima
328 Asbury
Houston TX 77007

All Occupants
328 Asbury
Houston TX 77007

Respectfully Submitted.

Jerel S. Twyman, SBOT 00788564
P.O. Box 272271
Houston, Texas 77277-2271
713-664-0770 ph
713-664-4289 fax
ATTORNEY FOR PLAINTIFF ELBAR
INVESTMENTS, INC.

NO. EV12C0O 24335

| | | |
|---|---|---|
| ELBAR INVESTMENTS, INC. | § | IN THE JUSTICE COURT |
| | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ZAYTOON ZEEBA PAKSIMA, | § | |
| AND ALL OCCUPANTS | § | PRECINCT NUMBER 1, PLACE 2 |

### MILITARY AFFIDAVIT

COPY

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

BEFORE ME, the undersigned authority, personally appeared Jerel S. Twyman, who after being by me duly sworn, upon his oath deposes and swears that the following information is based upon personal knowledge, and is, in all respects, true and correct:

My name is Jerel S. Twyman. I am over the age of eighteen (18), of sound mind, capable of making this Affidavit, and I am fully competent to testify to the matters stated herein. I have personal knowledge of the facts stated herein.

_____ I do not know if Defendant Zaytoon Zeeba Paksima is in the Military, or

√ Defendant Zaytoon Zeeba Paksima _____ is ✓ is not in the military (check one). My knowledge is based upon (check all that apply)

✓ conversations with the Defendant or other persons.

_____ Department of Defense website (copy is attached).

_____ Other (please explain):

FURTHER AFFIANT SAYETH NOT.

_____
Jerel S. Twyman

EV-Citation-739
Receipt Number: 1611452                    Receipt Date: 10/14/11          Cons Fee $70.00                    Tracking Number: B0192070

### Case Number: EV12C0024335

| | | |
|---|---|---|
| ELBAR INVESTMENTS, INC. | § | In the Justice Court |
| Plaintiff | § | Harris County, Texas |
| vs. | § | Precinct 1, Place 2 |
| ZAYTOON ZEEBA PAKSIMA | § | |
| Defendant | § | 1302 PRESTON |
| | § | ROOM 103 |
| | § | HOUSTON, TX 77002 |

### Citation - Eviction

THE STATE OF TEXAS
COUNTY OF HARRIS
TO: ANY SHERIFF, CONSTABLE, OR OTHER PERSON AUTHORIZED BY LAW:

Deliver this Citation to the Defendant, at least six days before the return day of this Citation:
**ZAYTOON ZEEBA PAKSIMA AND ALL OCCUPANTS**
**328 ASBURY**
**HOUSTON, TX 77007**

Delivered this _21_ day of _Oct_, 20_11_

JACK F. ABERCIA, Constable
Precinct #1, Harris County

and return this Citation on or before the day assigned for trial.

By _____
DEPUTY

TO THE DEFENDANT:

#### SUIT TO EVICT

THIS SUIT TO EVICT INVOLVES IMMEDIATE DEADLINES. CALL THE STATE BAR OF TEXAS TOLL-FREE AT 1-877-9TEXBAR IF YOU NEED HELP LOCATING AN ATTORNEY. IF YOU CANNOT AFFORD TO HIRE AN ATTORNEY, YOU MAY BE ELIGIBLE FOR FREE OR LOW-COST LEGAL ASSISTANCE;

#### DEMANDA PARA DESALOJAR

ESTA DEMANDA PARA DESALOJAR INVOLUCRA PLAZOS INMEDIATOS. LLAME AL COLEGIO DE ABOGADOS DE TEXAS (STATE BAR OF TEXAS), LLAMADA GRATUITA AL 1-877-9TEXBAR SI USTED NECESITA AYUDA PARA LOCALIZAR A UN ABOGADO. SI NO ESTÁ A SU ALCANCE CONTRATAR A UN ABOGADO, USTED PUDIERA SER ELEGIBLE PARA ASESORIA LEGAL GRATUITA O DE BAJO COSTO.

YOU ARE COMMANDED to appear before:
   JUDGE DAVID M. PATRONELLA
   Justice of the Peace, Precinct 1, Place 2
   1302 PRESTON, COURTROOM 211
   HOUSTON, TX 77002

You are commanded to appear before the Justice of the Peace of this Justice Court, at 9:30 A.M., the following week on the same day of the week that this citation was served upon you. In the event that such day is a Saturday, Sunday or legal holiday, you are required to appear at 9:30 A.M. on the day next following such day which is not a Saturday, Sunday or legal holiday then and there to answer this eviction action.

Date Petition filed: 10/13/11
Nature of demand made by Plaintiff(s): Possession of the property known as 328 ASBURY together with attorney's fees, costs of court, interest as provided by law and general relief. A Copy of the petition is attached.

#### NOTICE

You are required to appear before the Justice of the Peace of this Justice Court, at 9:30 A.M., the following week on the same day of the week that this citation was served upon you. In the event that such day is a Saturday, Sunday or legal holiday, you are required to appear at 9:30 A.M. on the day next following such day which is not a Saturday, Sunday or legal holiday then and there to answer this eviction action.

Upon timely request and payment of a jury fee no later than five (5) days after you are served with this citation, the case shall be heard by a jury.

You have been sued. You may employ an attorney. If you do not appear as required, a default judgment may be taken against you.

**FAILURE TO APPEAR FOR TRIAL MAY RESULT IN A DEFAULT JUDGMENT BEING ENTERED AGAINST YOU**

JUS4E

EVCIT
Page 1 of 2

EV-Citation-739

Issued on: 10/18/2011



_Daniel M. Patronella_

JUDGE DAVID M. PATRONELLA
Justice of the Peace, Precinct 1 Place 2

Address of Plaintiff
ELBAR INVESTMENTS INC
P.O. BOX 272271
HOUSTON, TX 77277 2271

Address of Plaintiffs Attorney
JEREL SCOTT TWYMAN
P.O. BOX 272271
HOUSTON, TX 77277 2271
Phone Number: (713) 664-0770

### Return

Received this Citation on _____, at _____.M.

Executed on _____, at _____.M., by delivering a copy of the Citation together with a copy of the Petition to:

_____

at _____ by _____

Signed on: _____

Signature
Name: _____

Title: _____

NO. <u>EV12CC0024335</u>

| | | |
|---|---|---|
| ELBAR INVESTMENTS, INC. | § | IN THE JUSTICE COURT OF |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | HARRIS COUNTY, T E X A S |
| ZAYTOON ZEEBA PAKSIMA, | § | |
| AND ALL OCCUPANTS | § | |
| | § | |
| **Defendants.** | § | PRECINCT NUMBER 1, PLACE 2 |

### DEFENDANT'S ORIGINAL ANSWER AND COUNTERCLAIM
### TO PLAINTIFF'S ORIGINAL FORCIBLE DETAINER PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant, ZAYTOON ZEEBA PAKSIMA (hereinafter known as "Paksima") files this her Original Answer and Counterclaim to Plaintiff ELBAR INVESTMENTS, INC.'s (hereinafter known as "Elbar") Original Forcible Detainer Petition and would show the Court as follows:

### A. <u>GENERAL DENIAL</u>

1.     Defendant Paksima generally denies the allegations in Plaintiff's Original Forcible Detainer Petition.

### B. <u>PLEA TO THE JURISDICTION</u>

2.     Defendant asks the court to dismiss Plaintiff's suit because of lack of jurisdiction. Plaintiff claims it became entitled to possession upon becoming the purchaser of the property. That is not true. Defendant, as of all relevant times was and is the title holder of record. See title report attached hereto as Exhibit "A". This court has no jurisdiction in a case where title is to be determined. Defendant is the Plaintiff in the case styled Cause No. 2011-54902; Zaytoon Zeeba Paksima v. GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation; In the 152nd Judicial



District Court of Harris County, Tex$^{as}$, involving wrongful foreclosure and other issues. See pleadings attached herein as Exhibit "B" and lis pendens attached herein as Exhibit "C".

3.    TRCP 746 states the only issue in a forcible entry or forcible detainer case is the right to actual possession; and "the merits of the title shall not be adjudicated".

### C. AFFIRMATIVE DEFENSES

4.    Defendant denies Plaintiff has the legal capacity to sue because Plaintiff is not a tenant and did not enter the property wrongfully. Defendant has a superior right to title.

5.    Plaintiff does not have a valid claim as a good faith purchaser for value because that doctrine does not apply to a purchaser at a void foreclosure sale. The doctrine of good faith purchaser for value without notice does not apply to a purchase at a void foreclosure sale. One who bids upon property at a foreclosure sale does so at his peril. If the trustee conducting the sale has no power or authority to offer the property for sale, or if there is other defect or irregularity which would render the foreclosure sale void, then the purchaser cannot acquire title to the property. The purchaser(s) at the foreclosure sales of the subject properties could obtain only such title as the trustee had authority to convey. Because the foreclosures were void, the purchaser(s) have no valid title.

### D. COUNTERCLAIM

6.    Plaintiff was aware of the pending lawsuit prior to filing this frivolous forcible detainer action. Elbar had actual knowledge because a copy of the original petition in the lawsuit mentioned above was sent to him, and Elbar had constructive knowledge as well from the recorded lis pendens. Defendant is entitled to an award of attorney fees along with costs of the court per Prop. Code § 24.006.

### E. PRAYER

2

7.    For these reasons Defendant asks the court to dismiss this suit or render judgment that Plaintiff take nothing, assess costs and attorney fees against Plaintiff and award all such other and further relief to which the Defendant may be justly entitled or that the court deems proper.

DATED:  October _26_, 2011.

Respectfully Submitted,

**CHRISTIAN SMITH & JEWELL, L.L.P.**

By: _____

ALLAN G. LEVINE
State Bar No. 12257140
2302 Fannin, Suite 500
Houston, Texas 77002
Telephone: 713.659.7617
Facsimile: 713.659.7641
**ATTORNEY FOR DEFENDANT**

<u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing was served on each attorney of record or party by hand delivery, facsimile and/or certified mail return receipt requested in accordance with Tex R. Civ. P. 21(a) on October _26_ 2011.

Jerel S. Twyman
P. O. Box 272271
Houston, Texas  77277-2271
713-664-0770
713-664-4289  Facsimile

_____
ALLAN G. LEVINE

3

NO. <u>EV12CC0024335</u>

| | | |
|---|---|---|
| **ELBAR INVESTMENTS, INC.** | § | **IN THE JUSTICE COURT OF** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **HARRIS COUNTY, T E X A S** |
| **ZAYTOON ZEEBA PAKSIMA,** | § | |
| **AND ALL OCCUPANTS** | § | |
| | § | |
| **Defendants.** | § | **PRECINCT NUMBER 1, PLACE 2** |

<u>**VERIFICATION OF ZAYTOON ZEEBA PAKSIMA**</u>

BEFORE ME, the undersigned authority, on this day personally appeared

ZAYTOON ZEEBA PAKSIMA, being first duly sworn on oath deposes and says:

1.      My name is Zaytoon Zeeba Paksima. I am over 18 years of age, of sound mind, and capable of making this affidavit. I am familiar with the facts and transactions stated in Defendant's Original Answer and Counterclaim to Plaintiff's Original Forcible Detainer Petition.

2.      The facts stated in this affidavit are within my personal knowledge and are true and correct to the best of my ability.

Further, Affiant sayeth not.

_____
ZAYTOON ZEEBA PAKSIMA

        SWORN TO AND SUBSCRIBED before me by Zaytoon Zeeba Paksima, on this the _24_ day of October, 2011.

NADIA MATEJEK
My Commission Expires
February 12, 2014

_____
Notary Public in and for the State of Texas

1

# NOTICE OF SUBSTITUTE TRUSTEE'S SALE

DATE: Aug 01, 2011
TS# TX-272475-C

**DEED OF TRUST, SECURITY AGREEMENT-FINANCING STATEMENT:**

| | |
|---|---|
| Date: | 09/02/2005 |
| Grantor: | ZAYTOON ZEEBA PAKSIMA, A SINGLE WOMAN |
| Beneficiary: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., IS ACTING SOLELY AS NOMINEE FOR FINANCE AMERICA, LLC |
| Trustee: | LINDA MARTINEZ, ESQ. |
| Recording Information: | Instrument Y760145, Volume XX, Page XX, Real Property Records, Harris County, TX, Recorded on: 09/13/2005 |
| Property: | See EXHIBIT "A" |
| Mortgage Servicer: | GMAC MORTGAGE, LLC FKA GMAC MORTGAGE CORPORATION |

**NOTE:**

| | |
|---|---|
| Date: | 09/02/2005 |
| Amount: | $360,050.00 |
| Debtor: | ZAYTOON ZEEBA PAKSIMA, A SINGLE WOMAN |
| Holder: | U.S. Bank National Association as Trustee for RASC 2005KS11, By: Residential Funding, LLC fka Residential Funding Corporation, Attorney-in-Fact. |
| SUBSTITUTE TRUSTEE: | Jeff Leva, Audrey Lewis, Theresa Perales, Sandy Dasigenis, Noel McNally, Cassandra Inouye or Erika Puentes |

**DATE OF SALE OF PROPERTY:**

Tuesday, 09/06/2011 at 10:00 A.M. but in no event later than three (3) hours thereafter

**PLACE OF SALE OF PROPERTY:**

In the area Northwest of the stairwell railing, on the first floor of the Family Law Center, 1115 Congress, Houston, Texas

If no place is designated by the Commissioner, the sale will be conducted at the place where the Notice of Substitute Trustee's Sale was posted, or any other area designated by the courthouse or Commissioner of Courts pursuant to Sec 51.002 of the Texas Property Code.





PLAINTIFF'S
EXHIBIT

TS# TX-272475-C

NOTICE IS HEREBY GIVEN that because the default in performance of the obligations of the Deed of Trust, Substitute Trustee will sell the property by public auction to the highest bidder for cash at the place and date specified to satisfy the debt secured by the Deed of Trust. The sale will begin at the earliest time stated above or within three hours after that time.

GMAC MORTGAGE, LLC FKA GMAC MORTGAGE CORPORATION is acting as the mortgage servicer for U.S. Bank National Association as Trustee for RASC 2005KS11, By: Residential Funding, LLC fka Residential Funding Corporation, Attorney-in-Fact. who is the mortgagee of the Note and Deed of Trust associated with the above referenced loan.

GMAC MORTGAGE, LLC FKA GMAC MORTGAGE CORPORATION, as Mortgage Servicer, is representing the Mortgagee, whose address is U.S. Bank National Association as Trustee for RASC 2005KS11, By: Residential Funding, LLC fka Residential Funding Corporation, Attorney-in-Fact.:

C/O    GMAC MORTGAGE, LLC FKA GMAC MORTGAGE CORPORATION
       1100 VIRGINIA DRIVE
       FORT WASHINGTON, PA 19034



Jeff Leva, Audrey Lewis, Theresa Perales, Sandy Dasigenis, Noel McNally, Cassandra Inouye or Erika Puentes

Substitute Trustee



Return to:
Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120

TX-272475-C

### EXHIBIT "A"

LOT TWO (2), SAVE AND EXCEPT THE NORTH 1.38 FEET THEREOF, IN BLOCK ONE (1), OF RAVA SQUARE, A SUBDIVISION OF 0.3444 ACRES BEING A REPLAT OF LOTS 1, 2, 3, 4, 5, AND 6, BLOCK 36 OF RICE MILITARY ADDITION, ACCORDING TO MAP PLAT THEREOF RECORDED IN FILM CODE NO. 465124, OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

A.P.N. 1215330010002



## COMMITMENT FOR TITLE INSURANCE

Issued by **Commonwealth Land Title Insurance Company**


**Commonwealth**
LAND TITLE INSURANCE COMPANY

*Commonwealth Land Title Insurance Company*
*Attention: Claims Department*
*P.O. Box 45023*
*Jacksonville, FL 32232-5023*

THE FOLLOWING COMMITMENT FOR TITLE INSURANCE IS NOT VALID UNLESS YOUR NAME AND THE POLICY AMOUNT ARE SHOWN IN <u>SCHEDULE A</u>, AND OUR AUTHORIZED REPRESENTATIVE HAS COUNTERSIGNED BELOW.

We (COMMONWEALTH LAND TITLE INSURANCE CORPORATION) will issue our title insurance policy or policies (the Policy) to You (the proposed insured) upon payment of the premium and other charges due, and compliance with the requirements in Schedule B and Schedule C. Our Policy will be in the form approved by the Texas Department of Insurance at the date of issuance, and will insure your interest in the land described in Schedule A. The estimated premium for our Policy and applicable endorsements is shown on Schedule D. There may be additional charges such as recording fees, and expedited delivery expenses.

This Commitment ends ninety (90) days from the effective date, unless the Policy is issued sooner, or failure to issue the Policy is our fault. Our liability and obligations to you are under the express terms of this Commitment and end when this Commitment expires.

**Commonwealth Title of Houston**
**550 Westcott, Suite 260**
**Houston, TX 77007**
**713-426-4949**

**COMMONWEALTH LAND TITLE INSURANCE COMPANY**

By: _____
President

SEAL

Attest _____
Secretary

_____
Authorized Officer or Agent

### CONDITIONS AND STIPULATIONS

1.  If you have actual knowledge of any matter which may affect the title or mortgage covered by this Commitment, that is not shown in Schedule B, you must notify us in writing. If you do not notify us in writing, our liability to you is ended or reduced to the extent that your failure to notify us affects our liability. If you do notify us, or we learn of such matter, we may amend Schedule B, but we will not be relieved of liability already incurred.

2.  Our liability is only to you, and others who are included in the definition of Insured in the Policy to be issued. Our liability is only for actual loss incurred in your reliance on this Commitment to comply with its requirements, or to acquire the interest in the land. Our liability is limited to the amount shown in Schedule A of this Commitment and will be subject to the following terms of the Policy: Insuring Provisions, Conditions and Stipulations, and Exclusions.

Commonwealth Land Title Insurance Company
Commitment For Title Insurance - T-7
Form 1177-15A (Rev. 11/01/09)

Valid only if Schedules A, B and C are attached


**PLAINTIFF'S EXHIBIT**
A

THE LANGUAGE SET FORTH BELOW *MUST* BE INCORPORATED INTO A COVER LETTER AND SUCH COVER LETTER *MUST* BE ATTACHED TO ALL TITLE INSURANCE COMMITMENTS. EXCEPTION: IF THE RECIPIENT IS AN OUT-OF-COUNTY TITLE COMPANY, USE THE OUT-OF-COUNTY TITLE COMPANY COVER LETTER.

## Required Language for a Title Insurance Commitment Cover Letter

The attached title insurance commitment contains information which has been obtained or derived from records and information owned by Title Data, Inc. or one of its subsidiaries (collectively "Title Data"). Title Data owns and maintains land title plants for Harris, Brazoria, Chambers, Fort Bend, Galveston, Liberty, Montgomery and Waller counties, Texas. Title Data created its title plants through the investment of extensive time, labor, skill and money. **The information contained in the title plants is protected by federal copyright law and Texas common law on trade secrets and contract.**

Title Data has granted our company a license to use one or more of its title plants. Our company's right to access and use Title Data's title plants is governed by our contract with Title Data. Our contract with Title Data restricts who can receive and/or use a title insurance commitment which is based, in whole or in part, upon Title Data's records and information.

Under the terms of our contract with Title Data, we are permitted to provide you with the attached title insurance commitment **for limited use and distribution only.** Specifically, you are sublicensed to deliver, exhibit, or furnish the attached title insurance commitment (or any copies thereof) ONLY to your bona fide employees and a third party who is playing a bona fide role in this proposed real estate transaction, including a lawyer, a lender, a surveyor, a real estate broker or agent, and the parties to this proposed transaction.

For purposes of our agreement with Title Data, "deliver, exhibit, or furnish" includes, without limitation, copying this title insurance commitment (whether such copying be by means of a photocopier, facsimile machine, another electronic scanning device, or any other method of reproduction) and providing such copy to any third party.

Your furnishing of the attached title insurance commitment to anyone not specifically enumerated above is not permitted by our contract with Title Data and constitutes a breach of our sublicense to you. Your furnishing of the attached title insurance commitment to anyone not specifically enumerated above is also a violation of federal copyright law and Texas common law.

Therefore, as an express condition of us providing you with the attached title insurance commitment, you specifically agree to limit its uses to those set forth herein, and to provide a copy of this letter to any party to whom you deliver, exhibit, or furnish the attached title insurance commitment (or any copies thereof).

In the event you are unable or unwilling to comply with these conditions, immediately return the attached title insurance commitment to our company, without reviewing, copying, or otherwise utilizing in any way the information contained therein.

**A COPY OF THIS LETTER MUST ACCOMPANY THE ATTACHED TITLE INSURANCE COMMITMENT AT ALL TIMES. ALL DOWNSTREAM RECIPIENTS MUST PROVIDE A COPY OF THIS LETTER TO ANY OTHER AUTHORIZED USERS OF THE ATTACHED TITLE INSURANCE COMMITMENT.**

| **IMPORTANT NOTICE** | **AVISO IMPORTANTE** |
|---|---|
| To obtain information or make a complaint: | Para obtener informacion o para someter una queja: |
| You may call Commonwealth Land Title Insurance Company's toll-free telephone number for information or to make a complaint at: | Usted puede llamar al numero de telefono gratis de Commonwealth Land Title Insurance Company's para informacion o para someter una queja al: |
| **1-800-654-7041** | **1-800-654-7041** |
| You may also write to Commonwealth Land Title Insurance Company at: | Usted tambien puede escribir a Commonwealth Land Title Insurance Company: |
| **Attention: Claims Department**<br>**P.O. Box 45023**<br>**Jacksonville, FL 32232-5023** | **Attention: Claims Department**<br>**P.O. Box 45023**<br>**Jacksonville, FL 32232-5023** |
| You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at: | Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al: |
| **1-800-252-3439** | **1-800-252-3439** |
| You may write to the Texas Department of Insurance: | Puede escribir al Departamento de Seguros de Texas: |
| P. O. Box 149104<br>Austin, TX 78714-9104<br>Fax: (512) 475-1771<br>Web: http://www.tdi.state.tx.us<br>E-mail: ConsumerProtection@tdi.state.tx.us | P. O. Box 149104<br>Austin, TX 78714-9104<br>Fax: (512) 475-1771<br>Web: http://www.tdi.state.tx.us<br>E-mail: ConsumerProtection@tdi.state.tx.us |
| **PREMIIUM OR CLAIM DISPUTES:** | **DISPUTAS SOBRE PRIMAS O RECLAMOS:** |
| Should you have a dispute concerning your premium or about a claim you should contact the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance. | Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con la compania primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI). |
| **ATTACH THIS NOTICE TO YOUR POLICY:** | **UNA ESTE AVISO A SU POLIZA:** |
| This notice is for information only and does not become a part or condition of the attached document. | Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto. |

Commonwealth Land Title Insurance Company
Commitment For Title Insurance - T-7
Form 1177-15A

Valid only if Schedules A, B and C are attached

# Fidelity National Financial, Inc.
## Privacy Statement

Fidelity National Financial, Inc. and its subsidiaries ("FNF") respect the privacy and security of your non-public personal information ("Personal Information") and protecting your Personal Information is one of our top priorities. This Privacy Statement explains FNF's privacy practices, including how we use the Personal Information we receive from you and from other specified sources, and to whom it may be disclosed. FNF follows the privacy practices described in this Privacy Statement and, depending on the business performed, FNF companies may share information as described herein.

**Personal Information Collected**
We may collect Personal Information about you from the following sources:

Information we receive from you on applications or other forms, such as your name, address, social security number, tax identification number, asset information, and income information;

Information we receive from you through our internet websites, such as your name, address, email address, Internet Protocol address, the website links you used to get to our websites, and your activity while using or reviewing our websites;

Information about your transactions with or services performed by us, our affiliates, or others, such as information concerning your policy, premiums, payment history, information about your home or other real property, information from lenders and other third parties involved in such transaction, account balances, and credit card information; and

Information we receive from consumer or other reporting agencies and publicly recorded documents.

**Disclosure of Personal Information**
We may provide your Personal Information (excluding information we receive from consumer or other credit reporting agencies) to various individuals and companies, as permitted by law, without obtaining your prior authorization. Such laws do not allow consumers to restrict these disclosures. Disclosures may include, without limitation, the following:

To insurance agents, brokers, representatives, support organizations, or others to provide you with services you have requested, and to enable us to detect or prevent criminal activity, fraud, material misrepresentation, or nondisclosure in connection with an insurance transaction;

To third-party contractors or service providers for the purpose of determining your eligibility for an insurance benefit or payment and/or providing you with services you have requested;

To an insurance regulatory authority, or a law enforcement or other governmental authority, in a civil action, in connection with a subpoena or a governmental investigation;

To companies that perform marketing services on our behalf or to other financial institutions with which we have joint marketing agreements; and/or

To lenders, lien holders, judgment creditors, or other parties claiming an encumbrance or an interest in title whose claim or interest must be determined, settled, paid or released prior to a title or escrow closing.

We may also disclose your Personal Information to others when we believe, in good faith, that such disclosure is reasonably necessary to comply with the law or to protect the safety of our customers, employees, or property and/or to comply with a judicial proceeding, court order or legal process.

<u>Disclosure to Affiliated Companies</u> - We are permitted by law to share your name, address and facts about your transaction with other FNF companies, such as insurance companies, agents, and other real estate service providers to provide you with services you have requested, for marketing or product development research, or to market products or services to you. We do not, however, disclose information we collect from consumer or credit reporting agencies with our affiliates or others without your consent, in conformity with applicable law, unless such disclosure is otherwise permitted by law.

<u>Disclosure to Nonaffiliated Third Parties</u> - We do not disclose Personal Information about our customers or former customers to nonaffiliated third parties, except as outlined herein or as otherwise permitted by law.

**Confidentiality and Security of Personal Information**
We restrict access to Personal Information about you to those employees who need to know that information to provide products or services to you. We maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard Personal Information.

**Access to Personal Information/**
**Requests for Correction, Amendment, or Deletion of Personal Information**
As required by applicable law, we will afford you the right to access your Personal Information, under certain circumstances to find out to whom your Personal Information has been disclosed, and request correction or deletion of your Personal Information. However, <u>FNF's current policy is to maintain customers' Personal Information for no less than your state's required record retention requirements for the purpose of handling future coverage claims.</u>

For your protection, <u>all requests made under this section must be in writing and must include your notarized signature to establish your identity.</u> Where permitted by law, we may charge a reasonable fee to cover the costs incurred in responding to such requests. Please send requests to:
Chief Privacy Officer
Fidelity National Financial, Inc.
601 Riverside Avenue
Jacksonville, FL 32204

**Changes to this Privacy Statement**
This Privacy Statement may be amended from time to time consistent with applicable privacy laws. When we amend this Privacy Statement, we will post a notice of such changes on our website. The effective date of this Privacy Statement, as stated above, indicates the last time this Privacy Statement was revised or materially changed.

## COMMITMENT FOR TITLE INSURANCE

### SCHEDULE A

**Effective Date: September 18, 2011**                                   GF. No. 2646000678

Commitment No.:  Not Applicable   Issued: October 4, 2011
(if applicable)

1.    The policy or policies to be issued are:

   (a)    OWNER'S POLICY OF TITLE INSURANCE (Form T-1)
          (Not applicable for improved one-to-four family residential real estate)
          Policy Amount:
          PROPOSED INSURED:

   (b)    TEXAS RESIDENTIAL OWNER'S POLICY OF TITLE INSURANCE -
          ONE-TO-FOUR FAMILY RESIDENCES (Form T-1R)
          Policy Amount: .              **$464,079.00**
          PROPOSED INSURED:      **Zeeba Paksima**

   (c)    LOAN POLICY OF TITLE INSURANCE (Form T-2)
          Policy Amount:
          PROPOSED INSURED:
          Proposed Borrower:        **Zeeba Paksima**

   (d)    TEXAS SHORT FORM RESIDENTIAL LOAN POLICY OF TITLE INSURANCE (Form T-2R)
          Policy Amount:
          PROPOSED INSURED:
          Proposed Borrower:

   (e)    LOAN TITLE POLICY BINDER ON INTERIM CONSTRUCTION LOAN (Form T-13)
          Binder Amount:
          PROPOSED INSURED:
          Proposed Borrower:

   (f)    OTHER
          Policy Amount:
          PROPOSED INSURED:

2.    The interest in the land covered by this Commitment is:
      **Fee Simple**

3.    Record title to the land on the Effective Date appears to be vested in:
      **ZAYTOON ZEEBA PAKSIMA**

4.    Legal description of land:

      **Lot 2, SAVE AND EXCEPT the North 1.38 feet thereof, in Block 1, of RAVA SQUARE, a subdivision in Harris County, Texas, according to the map or plat thereof, recorded under Film Code No. 465124, of the Map Records of Harris County, Texas.**

Order No. 2646000678

**COMMITMENT FOR TITLE INSURANCE**

**SCHEDULE B**

**EXCEPTIONS FROM COVERAGE**

In addition to the Exclusions and Conditions and Stipulations, your Policy will not cover loss, costs, attorneys' fees, and expenses resulting from:

1.    The following restrictive covenants of record itemized below (We must either insert specific recording data or delete this exception):

     **Film Code No. 465124 of the Map Records of Harris County, Texas; and filed under Harris County Clerk's File No(s). U686369 and V045076.**

2.    Any discrepancies, conflicts, or shortages in area or boundary lines, or any encroachments or protrusions, or any overlapping of improvements.

3.    Homestead or community property or survivorship rights, if any, of any spouse of any insured. (Applies to the Owner's Policy only).

4.    Any titles or rights asserted by anyone, including, but not limited to, persons, the public, corporations, governments or other entities,

     a.    to tidelands, or lands comprising the shores or beds of navigable or perennial rivers and streams, lakes, bays, gulfs or oceans, or

     b.    to lands beyond the line of harbor or bulkhead lines as established or changed by any government, or

     c.    to filled-in lands, or artificial islands, or

     d.    to statutory water rights, including riparian rights, or

     e.    to the area extending from the line of mean low tide to the line of vegetation, or the rights of access to that area or easement along and across that area.

     (Applies to the Owner's Policy only.)

5.    Standby fees, taxes and assessments by any taxing authority for the year **2011**, and subsequent years; and subsequent taxes and assessments by any taxing authority for prior years due to change in land usage or ownership, but not those taxes or assessments for prior years because of an exemption granted to a previous owner of the property under Section 11.13, *Texas Tax Code*, or because of improvements not assessed for a previous tax year.  (If Texas Short Form Residential Loan Policy (T-2R) is issued, that policy will substitute "which become due and payable subsequent to Date of Policy" in lieu of "for the year **2011**, and subsequent years.")

6.    The terms and conditions of the documents creating your interest in the land.

7.    Materials furnished or labor performed in connection with planned construction before signing and delivering the lien document described in Schedule A, if the land is part of the homestead of the owner.  (Applies to the Loan Title Policy Binder on Interim Construction Loan only, and may be deleted if satisfactory evidence is furnished to us before a binder is issued.)

8.    Liens and leases that affect the title to the land, but that are subordinate to the lien of the insured mortgage. (Applies to Loan Policy (T-2) only.)

9.    The Exceptions from Coverage and Express Insurance in Schedule B of the Texas Short Form Residential Loan Policy (T-2R).  (Applies to Texas Short Form Residential Loan Policy (T-2R) only.  Separate exceptions 1 through 8 of this Schedule B do not apply to the Texas Short Form

Continuation of Schedule B                                                      Order No. 2646000878

Residential Loan Policy (T-2R).

10.    The following matters and all terms of the documents creating or offering evidence of the matters (We must insert matters or delete this exception.):

a.    Easement(s) for the purpose(s) shown below and rights incidental thereto as delineated or as offered for dedication, on the recorded plat:

Purpose: drainage
Affects:  15 feet in width on each side of the center line of all natural drainage courses

b.    Easement(s) for the purpose(s) shown below and rights incidental thereto as delineated or as offered for dedication, on the recorded plat:

Purpose:  shared driveway
Affects:  east 16 feet

c.    A building set-back line, as disclosed by said map/plat.

Affects:  west 10 feet

d.    A building set-back line, as disclosed by said map/plat.

Affects:  4 feet west of and adjacent to 16 foot shared driveway

e.    Dedication of Common area as set out and described by instruments filed under Harris County Clerk's File No(s). U686359 and V045076.

Order No. 2646000678

## COMMITMENT FOR TITLE INSURANCE

### SCHEDULE C

Your Policy will not cover loss, costs, attorneys' fees, and expenses resulting from the following requirements that will appear as Exceptions in Schedule B of the Policy, unless you dispose of these matters to our satisfaction, before the date the Policy is issued:

1.    Documents creating your title or interest must be approved by us and must be signed, notarized and filed for record.

2.    Satisfactory evidence must be provided that:

    a.    no person occupying the land claims any interest in that land against the persons named in paragraph 3 of Schedule A,

    b.    all standby fees, taxes, assessments and charges against the property have been paid,

    c.    all improvements or repairs to the property are completed and accepted by the owner, and that all contractors, subcontractors, laborers and suppliers have been fully paid, and that no mechanic's, laborer's or materialmen's liens have attached to the property,

    d.    there is legal right of access to and from the land,

    e.    (on a Loan Policy only) restrictions have not been and will not be violated that affect the validity and priority of the insured mortgage.

3.    You must pay the seller or borrower the agreed amount for your property or interest.

4.    Any defect, lien or other matter that may affect title to the land or interest insured, that arises or is filed after the effective date of this Commitment.

5.    **Vendor's Lien retained in the following Deed securing the payment of one note in the principal amount shown below, and any other obligation secured thereby:**

    **Dated:  September 6, 2005**
    **Grantor:  SIAVOSH F. RAVARI**
    **Grantee:  ZAYTOON SEEBA PAKSIMA**
    **Note Amount:  Three Hundred Sixty Thousand Fifty ($360,050.00)**
    **Payable to:  FINANCE AMERICA, LLC (MERS)**
    **Recording Date:  September 13, 2005**
    **Recording No.:  Harris County Clerk's File No(s). Y760144 of the Real Property Records of HARRIS County, Texas**

    **Additionally secured by Deed of Trust of even date therewith as set forth below, and subject to all of the terms, conditions, and stipulations contained therein including but not limited to any future indebtedness also secured by this lien:**

    **To:  LINDA MARTINEZ, Trustee**
    **Recording No.:  Harris County Clerk's File No(s). Y760145**

6.    An assignment of the beneficial interest under said deed of trust which names:

    **Assignee:  U.S. BANK NATIONAL ASSOCIATION as TRUSTEE for RASC 2005KS11**
    **Loan No.** ▮▮▮▮3359

Commonwealth Land Title Insurance Company                    Schedule C, Page 1
Form T-7:  Commitment for Title Insurance (Rev. 02/01/10)

Continuation of Schedule C                                                    Order No. 2646000878

Recording Date:  January 13, 2011
Recording No:  Harris County Clerk's File No(s). 20110019575

A substitution of trustee under said deed of trust which names, as the substituted trustee, the following

Recording Date:  January 18, 2011
Recording No: Harris County Clerk's File No(s). 20110023575

NOTE: We find a Substitute Trustee's Deed filed under Harris County Clerk's File No(s). 20080044644. Then find a Notice of Rescission of Acceleration filed under Harris County Clerk's File No(s). 20080601402.  Notice of Rescission of Substitute Trustee's Deed filed under Harris County Clerk's File No(s). 20080259596.

7.      An abstract of judgment for the amount shown below and any other amounts due:

        Amount: $40,000.00
        Debtor: ZAYTOON ZEEBA PAKSIMA
        Creditor:  ALI AKBAR MOHSENI
        Recording Date: June 24, 2008
        Recording No:  Harris County Clerk's File No(s). 20080329650

8.      Notice of Lis Pendens styled Zaytoon Zeeba Paksima, as Plaintiff, versus GMAC Mortgage, LLC fka GMAC Mortgage Corporation Zaytoon Zeeba Paksima, as Defendant, dated September 14, 2011, recorded in/under 20110388000 of the Real Property Records of HARRIS County, Texas, under Cause Number 2011-54902, 152nd Judicial District Court Court, HARRIS County, Texas.  Company requires that suit be dismissed with prejudice or obtain and file Release of Lis Pendens notice as to subject property.

9.      The Company finds bankruptcy proceedings filed by ZAYTOON ZEEBA PAKSIMA, proposed purchaser, Case No. 08-37149 (1596).  The Company must be provided with satisfactory orders of the bankruptcy court authorizing the proposed transaction.  If said proceedings, do not involve applicant purchaser, the Company must be provided with sufficient information as to that fact.

        The Company reserves the right to except additional items and/or make additional requirements after reviewing said documents.

10.     Application indicates that the lien recorded at Harris County Clerk's File No(s). Y760145, is to be foreclosed.  The Company must be furnished with the following information, reduced to recordable affidavit pertaining to the trustee's sale along with the recorded (Substitute) Trustee's Deed:

        That the foreclosure was in strict accord to the terms of the Deed of Trust

        Who was present at the sale

        Where and by whom notices of the sale were posted

        Whether the defaulting mortgagor(s) was a member(s) of the Armed Forces of the United States of America at any time within three months prior to the date of the sale.

        Whether the defaulting mortgagor(s) was living and competent on the date of posting of notice(s) for the sale and on the date of the sale.

        Who is in possession of subject property at the present time

Commonwealth Land Title Insurance Company                                    Schedule C, Page 2
Form T-7:  Commitment for Title Insurance (Rev. 02/01/10)

Continuation of Schedule C                                                          Order No. 2646000678

Proof of compliance with Property Code, Chapter 51, Section 51.0002 showing that the
holder of indebtedness foreclosed having given written notice of the right to secure the
default and of the proposed sale by certified mail to all debtors (including all assumptions)
obligated to pay said debt, according to the records of the holder of said indebtedness that
the sale was held at the place designated for such sales and within three hours of the
earliest time specified in the notice of trustee's sale.

The Company reserves the right to add additional items/exceptions or make further
requirements after review of the requested documentation.

11.    Note: The name(s) of the proposed insured(s) furnished with this application for title
insurance is/are:

No names were furnished with the application.  Please provide the name(s) of the buyers
as soon as possible.

12.    The Company reserves the right to add additional items/exceptions or make further
requirements after review of the requested documentation.

13.    According to City of Houston Ordinance No. 89-1312, set forth below, seller is obligated to
provide notice of restrictive covenants to purchaser, which notice is to be filed for record if
the Land is found to be located within the boundaries of the City of Houston.  A seller who
fails to provide such notice may be subject to a fine levied by the City of Houston.

Recording No.:Clerk's File No. M337573 and in Volume 2157, Page 1924

14.    The following note is for informational purposes only:

The following deed(s) affecting said Land were recorded within twenty-four (24) months of
the date of this report:

None found of record.

The last Deed found of record affecting the Land was recorded September 13, 2005 at
Harris County Clerk's File No(s). Y760144, wherein the grantee acquired subject property.

Order No. 2646000676

## COMMITMENT FOR TITLE INSURANCE

## SCHEDULE D

G.F. No. or File No. 2646000676                                Effective Date: September 18, 2011
Pursuant to the requirements of Rule P-21, Basic Manual of Rules, Rates and Forms for the writing of Title Insurance in the State of Texas, the following disclosures are made:

1.   The following individuals are directors and/or officers, as indicated, of the Title Insurance Company issuing this Commitment. Commonwealth Land Title Insurance Company is a wholly owned subsidiary of Chicago Title Insurance Company, a Nebraska Corporation.

Commonwealth Land Title Insurance Company's Officers and Directors are as follows:

| OFFICERS | DIRECTORS |
|---|---|
| Raymond R. Quirk, Chairman of The Board, President and Chief Executive Officer | Christopher Abbinante |
| Anthony John Park, Executive Vice President | Roger Scott Jewkes |
| Michael Louis Gravelle, Executive Vice President and Corporate Secretary | Theodore L. Kessner |
| Daniel K. Murphy, Senior Vice President and Treasurer | Erika Meinhardt |
| | Anthony John Park |
| | Raymond R. Quirk |

2.   The following disclosures are made by the Title Insurance Agent issuing this Commitment:  LandAmerica Commonwealth Title of Houston, Inc. d/b/a Commonwealth Title of Houston
a.   The names of each shareholder, owner, partner or other person having, owning or controlling one percent (1%) or more of the Title Insurance Agent that will receive a portion of the premium are as follows:  Commonwealth Land Title Insurance Company owns 100% of LandAmerica Commonwealth Title of Houston, Inc. d/b/a Commonwealth Title of Houston.

b.   Each shareholder, owner, partner or other person having, owning or controlling ten percent (10%) or more of an entity that has, owns or controls one percent (1 %) or more of the Title Insurance Agent that will receive a portion of the premium are as follows:  Commonwealth Land Title Insurance Company owns 100% of LandAmerica Commonwealth Title of Houston, Inc. d/b/a Commonwealth Title of Houston.

c. The following persons are officers and directors of the Title Insurance Agent:  LandAmerica Commonwealth Title of Houston, Inc. d/b/a Commonwealth Title of Houston

| Directors: | Anthony John Park |
|---|---|
| | Raymond Randall Quirk |
| Officers: | Raymond Randall Quirk, President |
| | Anthony John Park, Executive Vice President and Chief Financial Officer |
| | Michael Louis Gravelle,  Executive Vice President, Legal and Corporate Secretary |
| | Daniel K. Murphy, Senior Vice President and Treasurer |
| | Richard Lynn Cox, Senior Vice President and Tax Officer |

3.   You are entitled to receive advance disclosure of settlement charges in connection with the proposed transaction to which this commitment relates.  Upon your request, such disclosure will be made to you. Additionally, the name of any person, firm or corporation receiving a portion of the premium from the settlement of this transaction will be disclosed on the closing or settlement statement.

You are further advised that the estimated title premium' is:

| Owner's Policy | |
|---|---|
| Loan Policy | |
| Endorsements | |
| Other | $ |
| Total | |

Of this total amount: 15% will be paid to the policy issuing Title Insurance Company; 85% will be retained by the issuing Title Insurance Agent; and the remainder of the estimated premium will be paid to other parties as follows:

| Amount | To Whom | For Services |
|---|---|---|
| 85.00% | Jerel J. Hill | |

The estimated premium is based upon information furnished to us as of the date of this Commitment for Title Insurance. Final determination of the amount of the premium will be made at closing in accordance with the Rules and Regulations adopted by the Commissioner of Insurance.

Commonwealth Land Title Insurance Company
Commitment For Title Insurance - T-7
Form 1177-16A  (Rev. 02/01/2010)

Order No. 2646000678

## TEXAS TITLE INSURANCE INFORMATION

| | |
|---|---|
| Title Insurance insures you against loss resulting from certain risks to your title. | El seguro de título le asegura en relación a pérdidas resultantes de ciertos riesgos que pueden afectar el título de su propiedad. |
| The Commitment for Title Insurance is the title insurance company's promise to issue the title insurance policy. The Commitment is a legal document. You should review it carefully to completely understand it before your closing date. | El Compromiso para Seguro de Título es la promesa de la compañía aseguradora de títulos de emitir la póliza de seguro de título. El Compromiso es un documento legal. Usted debe leerlo cuidadosamente y entenderlo completamente antes de la fecha para finalizar su transacción. |

Your Commitment for Title Insurance is a legal contract between you and us. The Commitment is not an opinion or report of your title. It is a contract to issue you a policy subject to the Commitment's terms and requirements.

Before issuing a Commitment for Title Insurance (the Commitment) or a Title Insurance Policy (the Policy), the Title Insurance Company (the Company) determines whether the title is insurable. This determination has already been made. Part of that determination involves the Company's decision to insure the title except for certain risks that will not be covered by the Policy. Some of these risks are listed in Schedule B of the attached Commitment as Exceptions. Other risks are stated in the Policy as Exclusions. These risks will not be covered by the Policy. The policy is not an abstract of title nor does a Company have an obligation to determine the ownership of any mineral interest.

- MINERALS AND MINERAL RIGHTS may not be covered by the Policy. The company may be unwilling to insure title unless there is an exclusion or an exception as to Minerals and Mineral Rights in the Policy. Optional endorsements insuring certain risks involving minerals, and the use of improvements (excluding lawns, shrubbery and trees) and permanent buildings may be available for purchase. If the title insurer issues the title policy with an exclusion or exception to the minerals and mineral rights, neither this Policy, nor the optional endorsements, ensure that the purchaser has title to the mineral rights related to the surface estate.

Another part of the determination involves whether the promise to insure is conditioned upon certain requirements being met. Schedule C of the Commitment lists these requirements that must be satisfied or the Company will refuse to cover them. You may want to discuss any matters shown on Schedules B and C of the Commitment with an attorney. These matters will affect your title and your use of the land.

When your Policy is issued, the coverage will be limited by the Policy's Exceptions, Exclusions and Conditions, defined below.

- EXCEPTIONS are title risks that a Policy generally covers but does not cover in a particular instance. Exceptions are shown on Schedule B or discussed in Schedule C of the Commitment. They can also be added if you do not comply with the Conditions section of the Commitment. When the Policy is issued, all Exceptions will be on Schedule B of the Policy.

- EXCLUSIONS are title risks that a Policy generally does not cover. Exclusions are contained in the Policy but not shown or discussed in the Commitment.

- CONDITIONS are additional provisions that qualify or limit your coverage. Conditions include your responsibilities and those of the Company. They are contained in the Policy but not shown or discussed in the Commitment. The Policy Conditions are not the same as the Commitment Conditions.

Commonwealth Land Title Insurance Company
Commitment For Title Insurance - T-7
Form 1177-15A

Order No. 2646000678

You can get a copy of the policy form approved by the Texas Department of Insurance by calling the Title Insurance Company at _____ or by calling the title insurance agent that issued the Commitment. The State Board of Insurance may revise the policy form from time to time.

You can also get a brochure that explains the Policy from the Texas Department of Insurance by calling 1-800-252-3439.

Before the Policy is issued, you may request changes in the Policy.  Some of the changes to consider are:

- Request amendment of the "area and boundary" exception (Schedule B, paragraph 2).  To get this amendment, you must furnish a survey or comply with other requirements of the Company. On the Owner's Policy, you must pay an additional premium for the amendment.  If the survey is acceptable to the Company and if the Company's other requirements are met, your Policy will insure you against loss because of discrepancies or conflicts in boundary lines, encroachments or protrusions, or overlapping of improvements.  The Company may then decide not to insure against specific boundary or survey problems by making special exceptions in the Policy. Whether or not you request amendment of the "area and boundary" exception, you should determine whether you want to purchase and review a survey if a survey is not being provided to you.

- Allow the Company to add an exception to "rights of parties in possession."  If you refuse this exception, the Company or the title insurance agent may inspect the property.  The Company may except to and not insure you against the rights of specific persons, such as renters, adverse owners or easement holders who occupy the land.  The Company may charge you for the inspection.  If you want to make your own inspection, you must sign a Waiver of Inspection form and allow the Company to add this exception to your Policy.

The entire premium for a Policy must be paid when the Policy is issued.  You will not owe any additional premiums unless you want to increase your coverage at a later date and the Company agrees to add an Increased Value Endorsement.

Commonwealth Land Title Insurance Company
Commitment For Title Insurance - T-7
Form 1177-15A

Order No. 2646000678

## DELETION OF ARBITRATION PROVISION
### (Not Applicable to the Texas Residential Owner's Policy)

ARBITRATION is a common form of alternative dispute resolution. It can be a quicker and cheaper means to settle a dispute with your Title Insurance Company. However, if you agree to arbitrate, you give up your right to take the Title Company to court and your rights to discovery of evidence may be limited in the arbitration process. In addition, you cannot usually appeal an arbitrator's award.

Your policy contains an arbitration provision (shown below). It allows you **or the Company** to **require arbitration** if the amount of insurance is $2,000,000 or less. If you want to retain your right to sue the Company in case of a dispute over a claim, you must request deletion of the arbitration provision before the policy is issued. You can do this by signing this form and returning it to the Company at or before the Closing of your real estate transaction or by writing to the Company.

The Arbitration provision in the Policy is as follows:

"Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured, unless the Insured is an individual person (as distinguished from an Entity). All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction."

I request deletion of the Arbitration provision.

_____

Signature                              Date

Commonwealth Land Title Insurance Company
Commitment For Title Insurance - T-7
Form 1177-15A

No. <u>2011-54902</u>

| | | |
|---|---|---|
| ZAYTOON ZEEBA PAKSIMA | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | HARRIS COUNTY, T E X A S |
| GMAC MORTGAGE, LLC FKA | § | |
| GMAC MORTGAGE CORPORATION | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | 152ND  JUDICIAL  DISTRICT |

## PLAINTIFF'S FIRST AMENDED PETITION FOR DECLARATION OF RIGHTS, WRONGFUL FORECLOSURE, UNREASONABLE COLLECTION EFFORTS, FINANCE CODE AND DTPA VIOLATIONS

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, ZAYTOON ZEEBA PAKSIMA ("Plaintiff") files this her First Amended Petition for Declaration of Rights, Wrongful Foreclosure, Unreasonable Collection Efforts, Finance Code and DTPA Violations and would show the Court as follows:

## I. DISCLOSURES UNDER CHAPTER 30
### TEX. CIV. PRAC. & REM. CODE

1.1     The address of Plaintiff is 328 Asbury St., Houston, Texas 77007-7137.

1.2     The last three digits of Plaintiff's Texas Drivers License Number are 862 and the last three digits of Plaintiff's Social Security Number are 596.

## II. DISCOVERY CONTROL PLAN

2.1     Pursuant to TEXAS RULE OF CIVIL PROCEDURE 190.2, Plaintiff intends that discovery be conducted under Level 2 and affirmatively pleads that she seeks monetary relief aggregating more than $50,000.

1ST AMD ORIGINAL PETITION FOR DECLARATION OF RIGHTS                    PAGE 1

PLAINTIFF'S EXHIBIT

### III. PARTIES

3.1    Plaintiff, ZAYTOON ZEEBA PAKSIMA is a resident of Harris County, Texas.

3.2    Defendant, GMAC MORTGAGE, LLC fka GMAC MORTGAGE CORPORATION ("GMAC"), is a domestic limited partnership organized and existing under the laws of the State of Texas, whose principal office is located at 1100 Virginia Drive, Fort Washington, PA 19034, and which is authorized to do business in the state of Texas. GMAC has been served with process and has appeared through its counsel of record and filed an answer.

### IV. FACTUAL BACKGROUND

4.1    On or about September 2, 2005, Plaintiff purchased her "homestead" property located at 328 Asbury St., Houston, Texas 77007-7137, Harris County, Texas (the "Property"), through a loan from Defendant GMAC. The legal description of the Property is:

> Lot Two (2), save and except the north 1.38 feet thereof, in block one (1), of Rava Square, a subdivision of 0.3444 acres being a replat of lots 1, 2, 3, 4, 5, and 6, block 36 of Rice Military Addition, according to map plat thereof recorded in Film Code No. 465124, of the Map Records of Harris County, Texas.

4.2    This loan was accomplished through an Adjustable Rate Note with Defendant GMAC as mortgage servicer of the loan. Plaintiff maintained prepaid hazard insurance on the Property at all relevant times.

4.3    On or about September 13, 2005 Plaintiff purchased her commercial property located at 203 Aurora, Houston, Texas 77008 through a loan from Defendant GMAC. The legal description of the Property is:

> The south 77' of lots thirty-one (31), thirty-two (32), in block thrity-six (36) of Sunset Heights Addition, A subdivision in Harris County, Texas, according to the map or plat thereof, recorded in volume 3, page 43 of the map records of Harris County, Texas.

4.4    GMAC was in the business of servicing mortgages and loans which in general includes collecting mortgages and loan payments on behalf of mortgage and loan holders. GMAC failed to give Plaintiff proper credit for payments as and when they were made or inform Plaintiff of the charges imposed on her account. Plaintiff has been a victim of GMAC's wrongful conduct. GMAC violated and breached the terms of Plaintiff's loan by wrongfully adding fees and charging expenses as well as misapplying payments and attempting to collect the debt by improper debt collection methods, including but not limited to misrepresentations of amounts due and harrassment.

4.5    Plaintiff made numerous requests for information relating to her loan. This information was required for Plaintiff either to refinance her mortgage or to sell her home. GMAC provided Plaintiff with incorrect, inadequate information or none at all.

4.6    On September 6, 2011, Defendant GMAC wrongfully and improperly foreclosed on the loan on the "homestead" property. GMAC did not have proper authorization from the owner/holder of the note to foreclose. Defendant did not send Plaintiff proper notice by certified mail either of default or of foreclosure sale, both of which are required by TEXAS PROPERTY CODE §51.002. Their notice of sale was fatally flawed by not containing the information required by §51.002, §51.0025 and §51.0075. Plaintiff is informed and on said information believes the foreclosure of the Aurora property was similarly flawed.

4.7    GMAC was in the business of servicing mortgages and loans on behalf of the holders of mortgages and loans. Defendant incorrectly overcharged Plaintiff interest, late fees, and other charges.

4.8    Defendant failed to properly account for Plaintiff's payments, failed to verify debt as requested by Plaintiff, thereby preventing cure of claimed defaults, and engaged in other predatory lending practices, violating the Texas Debt Collection Practices Act, § 392.403 and common law.

4.9    GMAC wrongfully charged and collected various improper fees, costs, and charges, including inspection fees and late fees, and fees for using its payment systems, which fees and charges were not legally due or were in excess of amounts legally due.

4.10    GMAC assessed these improper fees, costs, and charges (collectively, "improper charges") to maximize profits, with the goal of putting borrowers such as Plaintiff into default status. After loan originated, GMAC then demanded payment and collected the improper charges from Plaintiff's monthly payments in a suspense account and claimed Plaintiff in default.

4.11    The improper charges above described resulted in dramatically increased monthly payments and had a snowball effect, forcing Plaintiff into default status. GMAC structures its account statements in a way that makes it difficult or impossible for Plaintiff to determine how much she owed or how any payment would be allocated or even to provide a proper payment history.

4.12    GMAC practices were misleading, deceptive, and unfair under the Texas Debt Collection Practices Act, the Texas Deceptive Trade Practice Act, and Texas common law of unreasonable debt collection.

4.13    Plaintiff asserts that GMAC assessed improper charges, default-related fees not authorized by the terms of the loan contract, or not legally due and owing; issued statements that failed to include accurate and required account information; assessed charges for unnecessary and unauthorized property inspections; assessed improper and excessive late fees, phone fees, administration fees, BPO fees and escrow fees otherwise engaged in systematic improper collection practices in violation of Finance Code § 392.101, *et seq.* and common law.

4.14    On or about September 18, 2008, Hurricane Ike damaged the subject homestead property and a claim for damages resulted in funds from insurance to be paid to GMAC. GMAC still holds insurance funds and escrow funds in suspense.

4.15    In June 2009, without notice to Plaintiff, GMAC wrongfully non-judicially foreclosed on the commercial property.

4.16    After wrongfully foreclosing and without a writ for possession or even notice to Plaintiff, GMAC committed trespass by entering Plaintiff's store without permission, taking possession of the store fixtures and inventory. GMAC sent people to secure the property including the contents.

4.17    Having secured the property and without notifying Plaintiff, Defendant acted recklessly, in consious disregard and indifference to Plaintiff's rights, caused all contents to be removed and discarded as trash.

4.18    By failing to notify Plaintiff to remove her contents, Defendant GMAC had reason to know that a high degree of risk to Plaintiff for damages would occur. Defendant proceeded to act recklessly and in conscious disregard of or indifference to that risk. This conduct was abusive. GMAC had previously changed the locks on Plaintiff's place of business and otherwise invaded her privacy and threatened her. Then engaged in helping itself to the contents and discarding them.

4.19    Defendants conduct above described was intentional or reckless and extreme and outrageous, causing severe emotional distress to Plaintiff which cannot be remedied by any other cause of action. Plaintiff suffered grief, embarrassment, shame, humiliation and worry. No reasonable person could expect to endure such conduct without undergoing unreasonable suffering. Plaintiff has experienced emotional outbursts, headaches, stress, anxiety, and depression. Plaintiff is entitled to damages for mental anguish within the jurisdictional limits of the court, and exemplary damages resulting from GMAC's malice under TCP&R Code §41.003(a).

## V. COMMON LAW TORT OF
## UNREASONABLE COLLECTION EFFORTS

5.1    Plaintiff incorporates paragraphs 4.1- 4.19 by reference as though fully set forth.

Defendant engaged in reckless disregard for Plaintiff's welfare by unreasonable collection

practices in attempting collection of invalid amounts, having failed to verify and compute what

was actually owed.  The failure to properly account for Plaintiff's payments and lack of

cooperation with Plaintiff constitutes unreasonable collection practices under Texas common

law, and caused emotional distress.

## VI. VIOLATION OF TEXAS FINANCE CODE § 392.001, *ET SEQ.*,
## AND THE TEXAS DECEPTIVE TRADE PRACTICES ACT

6.1    Plaintiff incorporates paragraphs 4.1-5.1 by reference as though fully set forth.

Plaintiff is a consumer as defined by the Texas Deceptive Trade Practices Act who acquired

products and services from GMAC.  Defendant GMAC is a third-party debt collector who is

attempting collection of a consumer debt. Defendant was attempting to collect improper interest

and other charges not authorized by the agreement or not properly incurred, in violation of

§ 392.303(a)(2), and § 392.403 misrepresenting the character, extent, or amount of Plaintiff's

debt.

6.2    Plaintiff suffered emotional damages and mental anguish from the serious upset

and strain of the overall situation under the Texas Finance code violation and wrongful

foreclosure.  The violation of the Code and wrongful foreclosure entitles Plaintiff to actual

damages and attorneys fees and amount to a violation of the Deceptive Trade Practices Act

allowing Plaintiff economic and mental anguish damages.  The misconduct was knowing,

allowing the imposition of additional statutory damages.

## VII. DECLARATORY ACTION

7.1    All preceding paragraphs are hereby incorporated by reference.

7.2    Plaintiff asks the Court to declare Plaintiff's right to the "homestead" property.

## IX. WRONGFUL FORECLOSURE AND
## SET-ASIDE OF FORECLOSURE SALE

8.1    All preceding paragraphs are hereby incorporated by reference.

8.2    GMAC committed wrongful foreclosure by virtue of one or more of the following

acts:

a)    failing to comply with the requirements of Ch. 51 of the Property Code;

b)    failing to have proper standing to foreclose;

c)    misapplications of payments and contending that lack of payment was a default;

d)    failing to provide Plaintiff with timely, clear and correct information about the timing and amount of payments due;

e)    misapplying payments received;

f)    failing to comply with proper contractual and/or statutory notice provisions regarding foreclosure;

g)    demanding more than was actually due to avoid foreclosure.

8.3    The court should set aside the foreclosure by GMAC because it was not conducted

properly. TEXAS PROPERTY CODE § 51.002 requires a properly authorized and appointed trustee to

provide a debtor with required notices in proper form such as notice of default, allowing debtor at

least twenty (20) days to cure the default and notice of a foreclosure sale twenty-one (21) days in

advance of the actual foreclosure.  Property Code § 51.0075[1] notices are required to be sent by

---

[1]Requires a mortgage servicer to be appointed by the mortgagee by power of attorney or corporate resolution. GMAC was not so properly authorized. The notice of sale failed to include required information.

certified mail by someone properly authorized to pursue foreclosure per the Deed of Trust and requires the address of the substitute trustee. The notice was not compliant with required information. Plaintiff received neither the required proper notice of default nor the required proper notice of foreclosure twenty-one (21) days before the foreclosure. Nor was the substitute trustee properly authorized to conduct the September 6, 2011 sale.

8.4    The defects in Defendant GMAC's foreclosure proceedings make the foreclosure unconscionable, and Plaintiff asks the court for the equitable remedy of wrongful foreclosure, setting aside of the foreclosure sale and awarding Plaintiff damages. If the foreclosure sale cannot be set aside, then Plaintiff, in the alternative, seeks money damages for the wrongful foreclosure.

8.5    The doctrine of good faith purchaser for value without notice does not apply to a purchase at a void foreclosure sale. One who bids upon property at a foreclosure sale does so at his peril. If the trustee conducting the sale has no power or authority to offer the property for sale, or if there is other defect or irregularity which would render the foreclosure sale void, then the purchaser cannot acquire title to the property. The purchaser(s) at the foreclosure sales of the subject properties could obtain only such title as the trustee had authority to convey. Because the foreclosures were void, the purchaser(s) have no valid title.

## IX. BREACH OF CONTRACT

9.1    All preceding paragraphs are hereby incorporated by reference.

9.2    Plaintiff and Defendant GMAC entered into a valid and enforceable contract by virtue of the note and deed of trust referenced above. That contract provided that Plaintiff would be entitled to certain payments on certain terms.

9.3    Plaintiff substantially performed her contractual obligations but for those which she was excused from performing or prevented from performing by Defendant GMAC, as set out above.

9.4    GMAC breached the contract by its improper charges and acts set forth above. The breach caused injury to Plaintiff which resulted in damages to Plaintiff including the out of pocket costs incurred by virtue of the improper charges and her costs to recover "homestead" property wrongfully taken.

9.5    Plaintiff is entitled to recover attorneys fees under Ch. 38, TRCP.

9.6    All conditions precedent to Plaintiff's claims for relief have been performed or have occurred.

## X.  ATTORNEY'S FEES

X.1    All preceding paragraphs are hereby incorporated by reference.

X.2    Pursuant to the Declaratory Judgment Act, TEXAS CIVIL PRACTICE AND REMEDIES CODE § 37.009 and and Ch. 38 of the Texas Finance Code, Texas Insurance Code and Deceptive Practices Act, Plaintiff asks the Court to award her reasonable and necessary costs and attorney's fees related to bringing this declaratory judgment action.

## XI. PRAYER

WHEREFORE, Plaintiff requests that Defendant GMAC be cited to appear and answer and that on final trial, the Plaintiff have the following awarded against GMAC:

1.  Judgment for title to and possession of the "homestead" property which is the subject matter of this suit;

2.  Damages plus prejudgment interest as provided by law;

3.  Exemplary damages;

4.  Actual and additional damages for the violation of common law tort of unreasonable collection efforts, with damages for emotional distress under the Texas Finance Code, § 392.001, *et seq.* Insurance Code § 541 and the Deceptive Trade Practices Act;

5.  Attorney's fees according to Texas Civil Practice and Remedies Code § 37.009 & 38.001 *et seq*, Texas Finance Code § 392.403(b), Texas Insurance Code § 541.142 and/or Texas Deceptive Trade Practices Act, TX Bus. & Comm. Code § 17.505.

6.  Costs of suit;

7.  Reasonable attorneys' fees for trial and appeal as pleaded;

8.  Post-judgment interest as provided by law from the date of judgment until paid; and

9.  Such other and further relief to which the Plaintiff may be justly entitled.

DATED:  October 25, 2011.

Respectfully Submitted,

**CHRISTIAN SMITH & JEWELL, L.L.P.**

By: _____
ALLAN G. LEVINE
State Bar No. 12257140
2302 Fannin, Suite 500
Houston, Texas 77002
Telephone: 713.659.7617
Facsimile: 713.659.7641
**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served on each attorney of record or party by hand delivery, facsimile and/or certified mail return receipt requested in accordance with Tex. R. Civ. P. 21(a) on October 25, 2011.

Jon H. Patterson
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2119
205-521-8000
205-521-8800 Fax

ALLAN G. LEVINE

## NOTICE OF LIS PENDENS

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

20110388000
09/15/2011  RP2  $16.00

NOTICE IS HEREBY GIVEN that Cause No. *2011-54902*, styled ZAYTOON ZEEBA PAKSIMA v GMAC MORTGAGE, LLC fka GMAC MORTGAGE CORPORATION was commenced in the *152nd* Judicial District Court of Harris County, TEXAS on the *14th* day of September, 2011, and is now pending in such court.

The action involves the title to real property situated in Harris County, TEXAS, and is more legally described as:

> Lot Two (2), save and except the north 1.38 feet thereof, in block one (1), of Rava Square, a subdivision of 0.3444 acres being a replat of lots 1, 2, 3; 4, 5, and 6, block 36 of Rice Military Addition, according to map plat thereof recorded in Film Code No. 465124, of the Map Records of Harris County, Texas.

The action is for a declaration of Plaintiff's rights to the property and to set aside any possible or pending sale on the property.

Signed this *14th* day of September, 2011.

_____
ALLAN G. LEVINE
Attorney for Zaytoon Zeeba Paksima

### ACKNOWLEDGMENT

**RECORDER'S MEMORANDUM:**
At the time of recordation, this instrument was found to be inadequate for the best photographic reproduction because of illegibility, carbon or photo copy, discolored paper, etc. All blockouts, additions and changes were present at the time the instrument was filed and recorded.

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

BEFORE ME, the undersigned Notary Public, on this day personally appeared ALLAN G. LEVINE, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

GIVEN under my hand and seal of office this *14th* day of September, 2011.

_____
Notary Public in and for
The State of Texas

NADIA MATEJEK
My Commission Expires
February 12, 2014

AFTER RECORDING RETURN TO:
Allan G. Levine
Christian, Smith & Jewell, L.L.P.
2302 Fannin, Suite 500
Houston, Texas 77002
713-659-7617


PLAINTIFF'S
EXHIBIT

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me, and was duly RECORDED, in the Official Public Records of Real Property of Harris County, Texas

SEP 15 2011

Stan Stanart
COUNTY CLERK
HARRIS COUNTY, TEXAS

FILED
2011 SEP 15 AM 8: 06
Stan Stanart
COUNTY CLERK
HARRIS COUNTY, TEXAS

No. <u>2011-54902</u>

| | | |
|---|---|---|
| **ZAYTOON ZEEBA PAKSIMA** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **HARRIS COUNTY, T E X A S** |
| **GMAC MORTGAGE, LLC FKA** | § | |
| **GMAC MORTGAGE CORPORATION** | § | |
| **AND ELBAR INVESTMENTS, INC.** | § | |
| | § | |
| **Defendants.** | § | **152ND · JUDICIAL   DISTRICT** |

**TEMPORARY RESTRAINING ORDER AND**
**ORDER SETTING HEARING FOR  TEMPORARY INJUNCTION**

1.      After considering Plaintiff ZAYTOON ZEEBA PAKSIMA's application for temporary restraining order, the pleadings, the affidavits, and arguments of counsel, the court finds there is evidence that harm is imminent to Plaintiff, and if the court does not issue the temporary restraining order, Plaintiff will be irreparably injured due to the scheduled eviction hearing on November 4, 2011.

2.      Therefore, by this order, the Court orders the following:

   a)      Defendant ELBAR INVESTMENTS, INC. is hereby restrained and enjoined from evicting Plaintiff from the property located at 328 Asbury, Houston, Texas 77007 and that Defendant's suit, Cause No. EV12CC0024335 against Plaintiff be dismissed without prejudice.

   b)      It is Ordered that the Clerk issue notice to Defendants that the hearing on Plaintiff's application for temporary injunction is set for _____, 2011 at _____ a.m..  The purpose of the hearing shall be to determine whether this temporary restraining order should be made a temporary injunction pending a full trial on the merits.

   c)      Bond is set at $_____.

This Order expires on _____, 2011.

SIGNED on November ____, 2011, at _____ a..m./p.m.

_____

JUDGE PRESIDING

TRO & ORDER SETTING HEARING                                                        PAGE 1

