Christopher E. Green
GreenLawFirm PS
Two Union Square Suite 4285
601 Union Street
Seattle, Washington 98101
(206) 686-4558 Fax: (206) 686-2558
WSBA No. 19410
Attorney For Claimant Mary Perkins White
Admitted Pro Hac Vice (Doc. No. 9848)


**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re: RESIDENTIAL CAPITAL, LLC, et al. | Hearing Date: May 17, 2016<br>Hearing Time: 11:00am<br><br>Case No.: 12-12020 (Chapter 11)<br><br>Assigned to:<br>Hon. Martin Glenn<br>Bankruptcy Judge |

**OPPOSITION AND RESPONSE OF MARY PERKINS WHITE TO THE OBJECTION OF THE RESCAP BORROWER CLAIM TRUST TO CLAIM NUMBER 1296**

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ........................................................................... 3
**STATUTORY BASIS** ............................................................................................ 4
**BACKGROUND AND FACTS** ............................................................................ 4
   1. Homeowner Mary Perkins White ..................................................................... 4
   2. Loan Is Modified From Open End to Installment By GMAC ......................... 5
   3. GMAC States Loan Is Three Months Delinquent ........................................... 5
   4. Green Tree Takes Servicing Rights From GMAC ........................................... 6
   5. Mary White's First Communications to Green Tree ....................................... 7
   6. GMAC Continues Defamatory Reporting ....................................................... 7
   7. Adverse Actions During This Period - Mary White's Credit Reduced ........... 7
   8. GMAC Reports False Information and Mary White's Attempts to Correct ... 8
      a. May 2010 – GMAC Reports Account 90 Days Delinquent ...................... 8
      b. October 2010 – GMAC Reports White 90-119 Days Delinquent ........... 8
      c. November 2010 – PEMCO Insurance Adverse Action Notice ................. 9
      d. December 2010 – GMAC Reports "R9" And Application Denied .......... 9
      e. December 2010 – GMAC Reports "Charge Off" ..................................... 9
      f. December 2010 – Another Dispute to GMAC ........................................... 9
      g. June 8, 2011 - Suit Filed Against GMAC ................................................. 9
      h. September 2011- GMAC Reports False Information ............................... 9
      i. December 15, 2011 - Dispute GMAC Reporting .................................... 10
      j. December 2011 – GMAC and PEMCO Insurance Notice ..................... 10
      k. January 2012 - Dispute GMAC Reporting to Equifax ............................ 10
      l. February 2012 – GMAC Reports 119 Days Late ................................... 11
   9. Bankruptcy and Claim ................................................................................... 11
**RESPONSE TO UNNUMBERED ASSERTIONS** ......................................... 11
   1. Claims Under the FCRA Are Not Limited to Statutory Damages ................. 12
   2. GMAC Mortgage Documents Are Not Reliable ........................................... 12
**RESPONSE TO SPECIFIC OBJECTIONS** ................................................... 13
   1. State Causes of Action ................................................................................... 13
   2. Damages Have Been Sufficiently Alleged .................................................... 14
   3. Punitive Damages .......................................................................................... 16
**CONCLUSION** .................................................................................................. 17

## TABLE OF AUTHORITIES

**Cases**
In re Feinberg, 442 B.R. 215 (Bankr. S.D.N.Y. 2010 .................... 4
Morris v. Credit Bureau of Cincinnati, Inc., 563 F. Supp. 962 (SD Ohio 1983) .................... 9
Murray v GMAC Mortg. Corp, 434 F.3d 948 (7th Cir 2006) .................... 12
Hammer v JP's Southwestern Foods LLC, 739 F.Supp. 2d 1155 (WD Mo 2010) .................... 11
Nelson v Chase Manhattan Mortg. Corp., 282 F.3d 1057 (9th Cir 2002) .................... 13
Dvorak v AMC Mortgage Services, Inc., 2007 WL 4207220 (ED Wash. 2007) .................... 13
Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147 (9th Cir. 2009) .................... 13
Loomis v. US Bank Home Mortg., 912 F. Supp. 2d 848 (Dist. Ariz. 2012) .................... 14
Lambert v. Beneficial Mortg. Corp., 2006 U.S. Dist. LEXIS 49212
    (W.D. Wash., July 19, 2006) .................... 15
Acton v. Bank One Corp., 293 F.Supp.2d 1092 (D. Ariz. 2003) .................... 15
Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329 (9th Cir. 1995) .................... 15

**Statutes**
11 U.SC. § 101(5) .................... 4
11 U.S.C. § 502(b) .................... 4
15 USC § 1681s-2(b) .................... 14
15 U.S.C § 1681n .................... 12
15 U.S.C § 1681o .................... 12

**Rules**
Fed.R.Bankr.P 3007 .................... 4
Fed.R.Bankr.P. 3001(f) .................... 4

## PRELIMINARY STATEMENT

Mary Perkins White (Claimant) opposes the objection to claim filed by ResCap Borrower Claims Trust (Trust). Doc# 9796-1. The Trust, relying on faulty records left to it by GMAC Mortgage LLC (GMAC) drastically undervalues Mary White's claim and then plucks a provision from the Fair Credit Reporting Act, 15 U.S.C. §s 1681 – 1681u et seq. (FCRA) intended to provide minimum implied damages to encourage class actions and proposes it instead of a trial to assess damages. The Trust then attempts to eliminate state causes of action that would have no real effect on the claim. Finally the Trust does not address information already provided regarding her vulnerability, many disputes and her damages including 29 months of extremely

3

damaging false information reported on her credit reports with threats of foreclosure. Her testimony deserves to be heard.

## STATUTORY BASIS

The Bankruptcy Code allows creditors to file claims for unliquidated causes of action whether or not they have been reduced to judgment. 11 U.SC. §101(5). If a written proof of claim is filed with supporting information, the filing thereof is prima facie evidence of the claim's validity and amount. Fed.R.Bankr.P. 3001(f). Objections to a proof of claim are governed by Fed.R.Bankr.P 3007 and § 502 of the Bankruptcy Code. Once an objection is made, after notice and a hearing, the Court shall determine the amount of the claim and allow the claim except to the extent it is not enforceable against the debtor and property of the debtor. 11 U.S.C. § 502(b).

> In an ordinary claims-objection scenario, the creditor files a claim, the debtor files an objection, and the Court makes a determination of whether the claim is supported by the evidence. Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is "prima facie" valid.... [and] the... burden of going forward then shifts to the objector to produce evidence sufficient to negate the prima facie validity of the filed claim.

In re Feinberg, 442 B.R. 215, 221 (Bankr. S.D.N.Y. 2010)(citing In re Allegheny Int'l, Inc., 954 F.2d 167, 173-74 (3d Cir.1992))

## BACKGROUND AND FACTS

### 1. Homeowner Mary Perkins White

Mary Perkins White is a single 55-year-old grandmother and resident of Pierce County Washington who had excellent credit and credit score before she came in contact with GMAC. Her home was at 7918 Ray Nash Drive Northwest Gig Harbor Washington. In 2006, she applied for a home equity line of credit (HELOC) with United Pacific Mortgage. Almost immediately after the loan funded, it apparently was sold and/or transferred to Homecomings, then again to

4

GMAC.  Declaration Of Mary Perkins White In Support Of Opposition To Objection Of The Rescap Borrower Claim Trust To Claim Number 1296 (hereafter "Dec. White"), ¶ 6. The HELOC was an open-end loan with a credit limit of $200,000 and its highest balance was $155,309.87.  Id**.** ¶¶ 7, 55, Exh. A.

### 2. Loan Is Modified From Open End to Installment By GMAC

On August 28, 2008, Homecomings stated the loan was frozen because of market wide decline in real estate values. Dec. White, ¶ 7.  As a result of this and the uncertainty in the economy Mary White decided to have the loan modified to an installment loan to lower her payments. Id. ¶ 8.

On July 14, 2009, GMAC mailed the modification agreement document for signature. She signed and notarized the installment note that replaced the HELOC and had monthly payments at a fixed rate, along with the down payment. Dec. White, ¶ 10. She sent the original note with her signature and kept a copy for her records. She made the payments as instructed on the loan.  Dec. White, ¶ 11.

### 3. GMAC States Loan Is Three Months Delinquent

On August 23, 2009, Mary White called a representative of GMAC by phone after receiving a collection letter dated August 21, 2009 for late payments on the old loan. Dec. White, ¶ 13, 14. On August 27, 2009, Mary White contacted a representative of GMAC by phone and talked with its representative "Raj" who assured her it was a "system generated a default letter in error, keep making payments as instructed on the loan modification" and he confirmed that the loan modification paperwork was received and was being entered into the system. Dec. White, ¶ 13.

In September or October 2009, GMAC reported to credit bureaus Trans Union LLC, Equifax Information Service LLC, and Experian Information Solutions, Inc. that Mary White was late paying the account in August, September and October 2009. Dec. White ¶ 16, Exh. B hereto.

**4. Green Tree Takes Servicing Rights From GMAC**

On or about October 23, 2009, Mary White received a letter from GMAC dated October 23, 2009, informing her the loan servicing was transferred to Green Tree Servicing LLC ("Green Tree"). Green Tree almost immediately began reporting the loan 90 days past due beginning in November 2009 based on false information provided to it by GMAC, with a past due amount of $2,928. Dec. White, ¶ 55, Exh. B; Exhibit 1 to Opposition, Expert Report of Evan Hendricks at p.7. Green Tree also reported the loan to Equifax as a HELOC with high balance of $140,977, a monthly payment of $1,428 and a credit limit of $200,000 based on information forwarded to it by GMAC. This information was false. Id. ¶¶ 10 and 11.

In November 2009, GMAC continued to report Mary White late to Experian, Equifax and Trans Union in her payments to it and reported she was 90 days late paying her mortgage and missing her October, September, and August 2009 payments and was past due by $5,856. Id. ¶¶ 47, 56. Exh. C.

In a subsequent reporting on December 30, 2009, Green Tree apparently reported to Equifax Mary White was now 90 days delinquent in November 2009 based on information it obtained directly from GMAC. Id.

6

**5. Mary White's First Communications to Green Tree**

In or about December 2009, Green Tree started repeated collection calls to Mary White throughout the week until the collection calls ceased in November 2010. She was reported late to credit bureaus paying her loan by Green Tree until September 29, 2011. Dec. White, ¶ 46, 51.

**6. GMAC Continues Defamatory Reporting**

After about September, 2009, GMAC continued to report Mary White inaccurately for 29 month thereafter. At times the account was reported 119 days late, a "charge off", deleting derogatory information some months, reinserting it to other months, changing the amount of delinquency and the months supposedly delinquent and reporting it as a HELOC even though it was refinanced to an installment account.

In December 2010, Mary White made an offer on a house, applied for a home loan and had adverse action taken based on her credit report. The interest rates offered was much higher than market and she could not afford the rate quoted. Eagle Home Mortgage Loan Officer Paul Careaga told her that GMAC was reporting the account as a "charge off" on the Innovis credit report. Dec. White, ¶ 31, Exh. H. The high interest rates prevented plaintiff from qualifying for an acceptable mortgage. Id.

**7. Adverse Actions During This Period - Mary White's Credit Reduced**

Starting October 15, 2009, Mary White began receiving notices in the mail from creditors changing the terms of existing accounts. Dec. White, ¶ 16. Long-standing credit lines were reduced to their existing balances, essentially eliminating available credit. The reduction in credit limits negatively affected Mary White's debt to credit ratio. Id. As a result of the loss of previously available credit, Mary White was forced to sell personal belongings to meet financial obligations and manage unexpected expenses as they arose. Dec. White, ¶¶ 55, 69.

7

**8. GMAC Reports False Information 2010-2012**

Mary White had many contacts with the GMAC and Green Tree which was supplied false information by GMAC. It is important to note GMAC was the source of Green Tree's reporting.[1] Mary White provides more specific information on communications 2010 to 2012 with and by GMAC as follows:

a. **May 2010 – GMAC Reports Account 90 Days Delinquent.**

On May 10, 2010, Ms. White obtained her Equifax report and learned Equifax was reporting she was late paying her loan. GMAC was reporting to Equifax plaintiff was 90-120 days delinquent in November 2009. She used the Equifax website where she obtained the Equifax report online and filled in dispute information and printed the dispute screen. Dec. White, ¶ 56, Exh. C hereto.

b**. October 2010 – GMAC Reports White 90-119 Days Delinquent.**

October 2, 2010, Mary White obtained a credit report showing GMAC was reporting to Equifax, Experian and Trans Union she was 90 days late paying the account in October 2009. Dec. White, ¶ 26. The same day she disputed the reporting online with Equifax, Experian and Trans Union. Dec. White, ¶ 10, 26. Mary White sent Equifax, Experian and Trans Union disputes regarding the false information GMAC was reporting. In turn, Equifax, Experian and Trans Union sent this information electronically to GMAC in an Automated Consumer Dispute Verification and GMAC affirmed its reporting. Dec. White, ¶¶ 27, 57 Exh. D and F.

Two days later, Equifax sent Mary White the "results of investigation" still reporting Mary White failed to pay GMAC and was 90-119 days delinquent in October 2009, 60-89 days past due in September and 30-59 days past due in September. Id. GMAC was reporting the

---

[1] Expert Report of Hendricks "It's important to remember that GMAC was the source of Plaintiffs information for both Green Tree and Defendant CRAs, and that GMAC was unreliable." Exhibit 1, p. 7

same derogatory information to Trans Union. Id. ¶ 58, Exh. E hereto.

On October 29, 2010, the account came back as "charge off". Id. ¶ 28.

c. **November 2010 – PEMCO Insurance Adverse Action Notice.**

On November 12, 2010, PEMCO Insurance sent Mary White a letter informing her of adverse action taken on her home and auto insurance. According to PEMCO Insurance, this was based on her Equifax credit report stating it was due to the number of accounts "currently, or in the past delinquent". Dec. White, ¶ 60, Exh. G.

d. **December 2010 – GMAC Reports "R9" And Application Denied.**

On December 7, 2010, Mary White applied for a home loan with Eagle Home Mortgage, which in turn used Innovis to obtain a credit report from Equifax. The Equifax report procured stated a credit score of "652" and GMAC was reporting "serious delinquency" with a "Rev-09" status. Dec. White, ¶ 61, Exh. H. A representative of Eagle Home Mortgage advised Mary White "Rev-09" indicates "charged off". Dec. White, ¶ 31, Exh.H. See also, Morris v. Credit Bureau of Cincinnati, Inc., 563 F. Supp. 962, 964 (SD Ohio 1983) (" 'R-9' indicates 'bad debt' "). GMAC was also reporting the Mary White's account as "charged off" to Trans Union. Dec. White, ¶ 31.

e. **December 2010 – GMAC Reports "Charge Off".** On December 9, 2010, Mary White obtained a credit report showing GMAC reported Mary White's account as a "charge off". Dec. White, ¶¶ 30, 62, Exh. I.

f. **December 2010 – Another Dispute to GMAC.** On December 13, 2010, Ms. White disputed the reporting online. Dec. White, ¶ 32. She entered information that Equifax used to create a narrative "Disputes Current/Previous account status/Payment history profile/ Payment rating. Verify Payment history profile, account status and payment rate". Mary White typed in

9

her dispute: "Loan modification executed July 16, 2009. All payments made on time. Have contacted GMAC numerous times to correct errors. They received all payments on time and did not apply them to my account properly. See Green Tree report of account. Paid on time." Id.

    g. **June 8, 2011 Suit Filed Against GMAC.** On June 8, 2011, Mary White filed suit with cause number 3:11-cv-05439 in US District Court for the Western District of Washington against GMAC, Green Tree and the national credit reporting bureaus under the FCRA and for Washington State common law claims. Dec. White, ¶ 33.

    h. **September 2011 – GMAC Reports False Information.** On September 29, 2011, Mary White obtained and reviewed her Equifax credit report. The report correctly stated she was timely with all her payments on the account with Green Tree and GMAC, however it continued to report false information that the loan was an open type loan (i.e. a HELOC) with a high balance of $200,000.00. The real loan never reached a high balance approaching the maximum loan amount. Dec White, ¶ 63, Exh. J.

    i. **December 15, 2011 - Dispute GMAC Reporting.** Mary White received a copy of her December 20, 2011, credit report in the mail from Equifax which still reported the GMAC account as a HELOC, with an "available limit" of $200,000, and a "high balance" of $200,000. Dec. White, ¶¶ 40, 41, 63, Exh. M. None of that information was correct. Id.

    j. **December 2011 – GMAC And Second PEMCO Insurance Notice.** On December 29, 2011, PEMCO sent Mary White a letter informing her of adverse action taken on her home and auto insurance based on her Equifax credit report stating it was due to the number of accounts "currently, or in the past delinquent". Dec. White, ¶ 49, 68.

    k. **January 2012  - Dispute GMAC Account to Equifax**

On January 13, 2012, Mary White sent a "Request for Research" to Equifax to determine

10

the accuracy and completeness of the information in the credit report as reported by GMAC and Green Tree. Dec. White, ¶¶ 65, 66 , Exh L.

    l. **February 2012 – GMAC Reports 119 Days Late.**

On February 8, 2012, Equifax responded to Mary White it had researched the account and GMAC had verified the high credit limit and provided additional information from the source and inserted fresh derogatory information that Mary White had been <u>119 days</u> late paying her GMAC HELOC in June, July and August 2009 with a former "High Balance" and loan limit of $200,000. Dec. White, ¶ 44, 65 and 66, Exh. N; Declaration of Christopher Green, ¶¶ 3 and 4 at Exhibit 3.

    **9. Bankruptcy And Claim**. Thereafter GMAC filed the above captioned action in May 2012. On October 15, 2012, Mary White provided a claim numbered 1296 in the amount of $320,000.

**RESPONSE TO UNNUMBERED ASSERTIONS**

    **1. Claims Under the FCRA Are Not Limited To Statutory Damages:** The Trust plucked a statutory damages clause from the FCRA and apparently concedes GMAC acted willfully. From here the Trust attempts to use this provision that only applies to willful behavior to craft a kind of liquidated damages clause out of thin air. The Trust claims damages for willful violations of the FCRA are limited to $1,000 per violation. Trust Objection, p. 7 ("The remedy for a willful violation of 15 USC § 1681 include actual or statutory damages . . ."). The background of the FCRA and its interpretation demonstrate $1,000 per violation is not a ceiling but rather a floor to encourage consumers to bring cases for willful violations of the FCRA even if there are no actual damages[2]. To think otherwise would require one to believe Congress

---

[2] Many of the cases dealing with the statutory damages clause concern an older version of 15 USC § 1681c(g) that required credit card account information be truncated on receipts. <u>See</u>

intended that consumers have a severe limit on willful violations but unlimited claims for negligent violation.[3]

The Trust provides no basis for this bold claim. The section of the 1996 Reform Act that amended 15 USC § 1681n to provide for statutory damages is entitled *Minimum* Civil Liability for Willful Non-Compliance.[4] Emphasis added. Statutory damages clearly are not meant to severely limit damages for willful violations. Instead they are so well suited to class actions. Murray v GMAC Mortg. Corp., 434 F.3d 948 (7th Cir. 2006). Cases at page 15 infra make it clear emotional distress damages are available as actual damages for claims of willfulness under § 1681n and negligence under § 1681o.

**2. GMAC Mortgage Documents Are Not Reliable.**

The Trust relied on faulty records left to it by GMAC that provide a fraction of the communications between Mary White and GMAC, between GMAC and Green Tree and between GMAC and with Equifax, Experian and Trans Union. Objection to Claim, Exhibit 3 Lathrop Declaration ¶ ¶ 7 and 8; compared to Dec. White ¶ ¶ 20, 21, 25, 28, 30, 36, 37, 38, 39, 40, 41, 43, 44, 47; Dec. Green, Exh. 3 to Opposition Brief. It is little wonder the Trust undervalued the claim[5] – GMAC's business records are unreliable. The records miss many communications and apparently eliminate altogether an egregious violation of the FCRA when GMAC reported Mary White 129 days delinquent on the account well after she filed suit against

---

generally, Hammer v JP's Southwestern Foods LLC, 739 F.Supp. 2d 1155 (WD Mo 2010); Ramirez v Midwest Airlines, 537 F. Supp. 2d 1161 (D. Kansas 2008).

[3] 15 USC § 1681o. While a plaintiff who proves willful noncompliance becomes eligible for punitive damages, those damages unlike actual damages are discretionary: "as the court may allow" 15 USC § 1681n(a)(2).

[4] Omnibus Consolidated Appropriations Act, subtitle D. ch. 1§ 2412(b), Pub. L. No. 104-208, 110 Stat. 3009 (Sept. 30 1996).

[5] The Trust states at page 1 of it's brief "claimant's damages under the act are limited to $7,000 in statutory damages."

GMAC. Dec. Lathrop ¶ 8.[6] GMAC's records keeping was apparently haphazard at best and self serving at worse as it is hard to imagine re-reporting this information in the middle of a case where punitive damages were sought it would not show in the account notes in detail. Exh. E to Dec. Lathrop at p. 5 of 17.

Because of GMAC's unreliable records, the only reliable account of what happened comes from Mary White. Fortunately Mary White, a consumer who is not required by law to maintain records has better record keeping, retention and accuracy than GMAC did. See, Dec. White, between ¶ 20 and ¶ 47 and Exhibits B, C, D, E, F, G, H, I, J, K, L, M and N. She is ready and willing to share her knowledge of how GMAC reported her with the Court under oath.

### RESPONSE TO SPECIFIC OBJECTIONS

**1.  State Causes of Action:** The Trust seeks to bar other claims based on preemption by the FCRA but provides no guidance to the Court on whether this is why it valued Mary Whites claim at $7,000. Mary White provided information to the Trust that she disputed the false information reported by GMAC through the credit reporting bureaus and through GMAC many times and those disputes are the basis for the liability of a "furnisher" like GMAC under the FCRA. See generally, Nelson v. Chase Manhattan Mortg. Corp., 282 F.3d 1057 (9th Cir. 2002) and 15 USC § 1681s-2(b). The Trust first refers to Dvorak v. AMC Mortgage Services, Inc., 2007 WL 4207220 (E.D.Wash.2007). However it does not provide the Ninth Circuit case concerning this issue. Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1167 (9th Cir. 2009)("Although § 1681t(b)(1)(F) appears to preempt all state law claims based on a creditor's responsibilities under § 1681s-2, § 1681h(e) suggests that defamation claims can proceed against creditors as long as the plaintiff alleges falsity and malice."). The Ninth Circuit did not in the end

---

[6] "On February 25, 2011, GMACM submitted a correction to the credit bureaus to amend the Claimant's credit report to reflect timely payments for the months of August, September, and October 2009."

rule on preemption, and district courts in the Ninth Circuit have criticized the approach in the Dvorak case.

> Furthermore, the Court does not find that §1681h was repealed by implication. "[R]epeals by implication are not favored." Radzanower v. Touche Ross & Co., 426 U.S. 148, 154, 96 S.Ct. 1989, 48 L. Ed.2d 540 (1976). A repeal by implication occurs when the intent of the legislature is clear and where either "provisions in the two acts are in irreconcilable conflict" or where "the later act covers the whole subject of the earlier one and is clearly intended as a substitute." Id. Section 1681t(b)(1)(F) does not cover the entire subject of §1681h, and while both sections address the responsibilities of a furnisher of information, the Court finds it possible to give substantive meaning to both sections. While §1681t(b)(1)(F) generally preempts both statutory and common law claims, relating to the responsibilities of a furnisher of information, See Roybal v. Equifax, 405 F.Supp.2d 1177, 1181 (E.D. Cal. 2005), §1681h(e) provides an exception for four specific common law torts including defamation, libel, negligence, and invasion of privacy when a plaintiff alleges malice or willful intent to injure.

Loomis v. US Bank Home Mortg., 912 F. Supp. 2d 848, 859 (Dist. Ariz. 2012).

Preempting the common law claims is not supported by the Ninth Circuit and the Trust never states how eliminating common law claims relates to its extremely low valuation of the claim stated at page 1 of its brief. The conduct that covers actual damages mostly comes under the FCRA so in the end the analysis by GMAC is a distinction without a difference.

  **2. Damages Have Been Sufficiently Alleged:** Mary White provided the Trust with information including credit reports, complaints, expert reports, responses to discovery made under oath and offered testimony under oath. At a minimum the Trust cannot deny Mary White showed in the claim, and in supplement that GMAC was reporting extremely damaging information regarding her creditworthiness and reputation for 29 months. The Trust would be very challenged to prove any person with an excellent credit reputation who was reported falsely to be extremely delinquent for 29 months on a mortgage connected to her home would not suffer actual damage including emotional distress damages especially with treat of foreclosure. And the Trust would be even more challenged to prove Mary White was not greatly distressed when after

14

hiring attorneys, filing a suit in US District Court, hiring an expert on credit reporting and after months of pursuing her case, GMAC reported she was 119 days delinquent on the same loan.

Beyond the inherent damage to a creditworthy person being reported as seriously delinquent on a mortgage loan, Mary White experienced great emotional distress to which no declaration can do justice and she has offered to provide more information to the Trust. Ms. White is a very capable, creditworthy, resourceful person but the campaign of defamation by GMAC with threat of foreclosure changed her world and affected her relationships. It was all very frightening to a single person seeking to protect herself and keep her home during a severe recession. Dec. White, ¶¶ 46, 50, 51, 52, 53, 69 and 70.

The Trust did not analyze emotional distress damages allowed under the FCRA, especially in the Ninth Circuit. A Western District of Washington case guides most claims for FCRA damages in Washington. Lambert v. Beneficial Mortg. Corp., 2006 U.S. Dist. LEXIS 49212 (W.D. Wash., July 19, 2006) provided a detailed explanation of FCRA damages as follows:

> The FCRA provides for compensation in the form of actual damages if a consumer reporting agency's negligent failure to comply with any provision of the FCRA causes such damages. 15 U.S.C § 1681o. As shown above, a consumer can also recover punitive damages for willful noncompliance. 15 U.S.C. § 1681n. Recovery of damages is not predicated on evidence of a denial of credit, but may be appropriate even where mere credit inaccuracies exist. See Guimond, 45 F.3d at 1333. Where the issue of damages depends on whether a violation of the FCRA occurred, as it does here, the question of damages is reserved for the jury. Cairns, 2007 U.S. Dist. LEXIS 16689 at *27, 2007 WL 735564 at *7.
>
> Plaintiffs have also provided sufficient evidence to raise a triable issue whether they were damaged by a denial of credit [*20] based on Trans Union's allegedly inaccurate reporting. The declaration provided by Mr. Adams, a mortgage broker for A&E Mortgage Specialists, states that Plaintiffs would be unable to complete financing on their loan request while the Beneficial account was still showing a balance and past due amount. plaintiff need only produce evidence from which a reasonable trier of fact could infer that the alleged inaccurate reporting was a "substantial factor" that brought about A&E Mortgage Specialists' denial of credit. See Philbin, 101 F.3d at 968.

15

> Plaintiffs have met that burden in this instance with the credit denial described by Adams.
>
> Actual damages can also include recovery for emotional distress and humiliation. <u>Guimond</u>, 45 F.3d at 1333. The Ninth Circuit has not addressed what evidence is required to support an award of emotional distress damages under the FCRA. However, the Ninth Circuit has stated in another context that "[w]hile objective evidence requirements may exist in other circuits, such a requirement is not imposed by case law in the Ninth Circuit, or the Supreme Court." <u>Acton v. Bank One Corp.</u>, 293 F.Supp.2d 1092, 1101 (D. Ariz. 2003) [*21] (quoting <u>Zhang v. Am. Gem Seafoods, Inc.</u>, 339 F.3d 1020, 1040 (9th Cir. 2003) (holding in a discrimination action that the plaintiff's testimony alone is sufficient to qualify the jury's award of emotional distress damages)) (internal quotations omitted). See also <u>Johnson v. Hale</u>, 13 F.3d 1351, 1352-53 (9th Cir. 1994) (acknowledging that "compensatory damages may be awarded for humiliation and emotional distress established by testimony or inferred from the circumstances, whether or not plaintiffs submit evidence of economic loss or mental or physical symptoms.")
>
> Deborah Lambert declares that she suffered from embarrassment, humiliation, frustration, stress, and strain on her marriage. William Lambert describes the alleged credit reporting mistakes as stress inducing and devastating. Meanwhile, their son verifies their alleged suffering through his own observations that their distress during that time was significant. While plaintiffs' evidence is not overwhelming, the evidence of emotional distress is sufficient to create a question for a jury, particularly when the facts are viewed in the light most favorable to the plaintiffs. The Court denies [*22] Trans Union's motion for summary judgment regarding emotional distress damages.

The testimony of a consumer such as Mary White is all that is necessary to prove emotional distress. <u>Id.</u> Mary White would look forward to testifying and has offered the Trust further information on her emotional distress damages and there is no reason she should not give her testimony on her communications, her vulnerability and how the false reporting affected her. But beyond even her own testimony, Mary White provides the Expert Report of Evan Hendricks in which he opines:

> The inaccurate accounts permitted and perpetuated by Defendants seriously damaged Plaintiffs creditworthiness. In fact, they destroyed her creditworthiness as long as they remained. This is because the inaccurate Green Tree and GMAC accounts constituted significant, "fresh" derogatories under the FICO scoring model. It was also because the tradelines furnished by Defendants wrongly portrayed Plaintiff as "past due."

16

Expert Report Evan Hendricks, Exhibit 1, p. 4.

In addition Mary White provided documents proving damages to her credit reputation including evidence the account was reported many times. Objection Motion by Trust at Exh. 1 pp. 39 to 51, Doc # 9796-2; Lathrop Dec. Exh. A, pp. 65-68; Dec. White ¶ 16 through ¶ 44, Exhibits A through N. Finally Mary White provides a list of cases brought under the FCRA and recoveries awarded. Exhibit 2.

3. **Punitive Damages.** Mary White's proof of claim did not include posturing or randomly added zeros. It was a deeply considered decision and is approximately the total damage done to her by GMAC. It was made in the spirit of cooperation and showed respect for the bankruptcy process. The Trust makes a comparison to the Reed Claim (Proofs of Claim Nos. 3708, 3759, 4736 and 4759), but that is not a fair comparison. Unlike the Reed Claim, Mary White is not a million-dollar plus investor with multiple properties. Mary White is an individual homeowner who lived in the home the mortgage covered and made all her payments as agreed. However even with the Reed Claim, the Court let the matter proceed to trial. This Court ruled:

> The Objection [of the Trust] is OVERRULED as to claims 2 (negligence) and 4 (punitive damages Doc 7246; While the merits of the Reeds' punitive damage claim (Claim No. 4) seem highly doubtful—the Reeds acknowledge they stopped making their mortgage payments before the Foreclosure Action was commenced—the Court cannot resolve the claim without an evidentiary hearing. The Court OVERRULES the Objection and will make a determination following the trial.
>
> Order Sustaining In Part And Overruling Without Prejudice In Part The Rescap Borrower Trust's Objection To The Reed Claims And Setting Evidentiary Hearing, Doc #7246 at p.7.

A full payment of Mary White's claim presents no risk of substantially reducing the amount available to the Trust. However arguing over details that don't affect the amount of the claim present a higher risk of unnecessarily depleting funds available to the Trust than her total claim ever could.

Mary White should be allowed to prove claims for punitive damages under § 1681n as it would allow fact finding on reckless conduct, address the public policy endorsed by Congress in enacting § 1681n, allow a full examination of the reliability of documents GMAC maintained while presenting no substantial risk of great financial loss to the Trust. In the end, the objectives of this Honorable Court and Congress would be furthered at little cost to the Trust.

**4. Attorneys Fees.** Borrowers Trust does not contest attorneys' fees as provided at in its brief at page 9 and Mary White should be free to claim the fees of her attorneys.

## CONCLUSION

The Trust does not meet its burden of proof with any of its objections and Mary White should be permitted to present her evidence to this Court. Most all the Trust's assertions are based on GMAC records that are self-serving to the former GMAC entity and inaccurate by omission.  Further the Trust has not stated how elimination of common law claims would reduce her damages to the drastic extent it claims. Any person with excellent credit would suffer a great deal of damage including emotional distress if false highly damaging information after many disputes was reported for 29 months with threats of foreclosure and Mary White should be permitted to present her evidence in trial before this Honorable Court.

Dated: April 20, 2016　　　　　　　　/s/ Christopher E Green_____
Seattle Washington　　　　　　　　　Christopher E. Green
　　　　　　　　　　　　　　　　　　GreenLawFirm PS
　　　　　　　　　　　　　　　　　　Two Union Square Suite 4285
　　　　　　　　　　　　　　　　　　601 Union Street
　　　　　　　　　　　　　　　　　　Seattle, Washington 98101
　　　　　　　　　　　　　　　　　　(206) 686-4558 Fax: (206) 686-2558
　　　　　　　　　　　　　　　　　　WSBA No. 19410
　　　　　　　　　　　　　　　　　　Attorney For Claimant Mary Perkins White
　　　　　　　　　　　　　　　　　　Admitted Pro Hac Vice (Doc. No. 9848)