1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 12-12020-mg

5   - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7

8   RESIDENTIAL CAPITAL, INC., et al.,

9

10            Debtors.

11  - - - - - - - - - - - - - - - - - - - -x

12

13            United States Bankruptcy Court

14            One Bowling Green

15            New York, New York

16

17            April 19, 2016

18            2:01 PM

19

20  B E F O R E:

21  HON. MARTIN GLENN

22  U.S. BANKRUPTCY JUDGE

23

24

25

1

2   Doc #9829 Hearing on Motion to Compel Compliance With Subpoena

3   by Ally Financial, Inc. (related document(s) 9810, 9808)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20   Transcribed by:  Esther Accardi

21   eScribers, LLC

22   700 West 192nd Street, Suite #607

23   New York, NY 10040

24   (973)406-2250

25   operations@escribers.net

1

2    A P P E A R A N C E S :

3    QUINN EMANUEL URQUHART & SULLIVAN, LLP

4          Attorneys for ResCap Liquidating Trust and RFC

5          51 Madison Avenue

6          22nd Floor

7          New York, NY 10010

8

9    BY:    ISAAC NESSER, ESQ.

10          THOMAS J. LEPRI, ESQ.

11

12

13   SIMPSON THACHER & BARTLETT LLP

14          Attorneys for MortgageIT, Inc. and

15           DB Structured Products, Inc.

16          425 Lexington Avenue

17          New York, NY 10017

18

19   BY:    WILLIAM T. RUSSELL, JR., ESQ.

20          R. DAVID GALLO, ESQ.

21

22

23

24

25

1

2    KIRKLAND & ELLIS LLP

3          Attorneys for Ally Financial, Inc.

4          655 Fifteenth Street, N.W.

5          Washington, DC 20005

6

7    BY:    JASON R. PARISH, ESQ.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                   P R O C E E D I N G S

2           THE COURT:  Please be seated.

3           We're here on Residential Capital, 12-12020.  We're

4   here in connection with the motion to compel compliance with

5   subpoena by Ally Financial, Inc.

6           Can I have the appearances, please?

7           MR. RUSSELL:  Good afternoon, Your Honor.  William

8   Russell, Simpson Thacher & Bartlett LLP.  With me is my

9   colleague David Gallo.  We're here on behalf of movants-

10  defendants MortgageIT, Inc. and DB Structure Products, Inc.

11          THE COURT:  Thank you.

12          MR. PARISH:  Good afternoon, Your Honor.  Jason Parish

13  from Kirkland & Ellis for Ally Financial, Inc.

14          THE COURT:  Thank you.

15          MR. NESSER:  Good afternoon, Your Honor.  Isaac Nesser

16  of Quinn Emanuel for the ResCap Liquidating Trust and RFC.  And

17  here with me is Tom Lepri of my firm.

18          THE COURT:  Thank you.

19          Mr. Russell.

20          MR. RUSSELL:  Good afternoon, Your Honor.

21          I'd like to begin by asking the Court actually a

22  question, if I may.  When we had the telephone conference on

23  April 1, Your Honor indicated that the Court was considering

24  referring at least part of the motion to Judge Nelson.  I'm not

25  sure of the status of that, whether you'd like us to address

1    the entirety of the motion today, or to limit our comments and

2    argument to just the submissions of the examiner?

3            I don't want to take up the Court's time --

4            THE COURT:  No.

5            MR. RUSSELL:  -- in argument that may be unnecessary.

6            THE COURT:  No, it's a very fair question.

7            Judge Nelson and I had a brief conversation.  And she

8    expressed willingness for me to refer matters to her.  I told

9    her -- I discussed with her, and she had no problem, I said I

10   would retain the issue of whether the confidentiality agreement

11   or protective order protected Ally from having to produce.  But

12   beyond that, that she would do that.  I need to have another

13   conversation with her.

14           While we're hearing your motion today, I have heard

15   the argument on the motion to compel MBIA to produce documents.

16   And there was -- I hadn't raised with them before the hearing

17   the issue of referring matters to Judge Nelson.  In a letter

18   after the argument, they agreed.

19           I think you'll see when you hear some of my questions

20   today -- I don't want to get -- I'll make this clear, I don't

21   want to get in the middle of regulating discovery in the

22   Minnesota actions.  I do think it's appropriate for me to

23   decide whether either the confidentiality agreement or the

24   protective order protect Ally or MBIA in its matter from having

25   to produce documents.  So there may not be a completely clear

1   answer.

2          I intend to have another conversation with Judge

3   Nelson, hopefully this week.  And that's the best I can tell

4   you now.  Okay.

5          MR. RUSSELL:  I think so.  If I could ask one more

6   question --

7          THE COURT:  Sure.

8          MR. RUSSELL:  -- just so I'm clear?  Would you like to

9   address the entirety of the motion, or would you like me really

10  to limit my comments to the issue you mentioned, Your Honor.

11  That's whether the confidentiality agreement, protective order

12  provide some sort of protection and prohibition on the

13  disclosure of the examiner materials.

14         THE COURT:  Let me see if I can frame the issue a

15  little --

16         MR. RUSSELL:  Sure.

17         THE COURT:  -- the issues a little better.

18         So as I understand it, Ally produced documents

19  pursuant to the examiner's subpoena.  And that production, it's

20  my understanding -- and if the parties disagree they'll tell

21  me -- was subject to the protective order, the uniform

22  protective order, that was entered and I did enter.  And it

23  has -- it's a lengthy document, it -- like most protective

24  orders, it has various categories of protection.  Those things

25  that are designated confidential, those things that are

1   attorney's eyes only.  I think there's a designation of "highly

2   confidential" under the uniform protective order because -- as

3   certainly you argue and Ally can respond to -- you presented

4   that they basically stonewalled you.  My term, not necessarily

5   your term, but that's essentially what I take away from your

6   motion.  You tried to engage them in a meet-and-confer, narrow

7   the request for production, and you feel you've been

8   stonewalled.  Okay.

9           So I don't know at this stage whether -- how they

10  have -- what designation they've given to the documents that

11  they've produced to the examiner, and I need to know a little

12  bit more about that.  Let me hone in on one area in particular.

13          Under the uniform protective order, it has provisions

14  for preserving attorney-client privilege and attorney work

15  product.  And it requires that any documents for which such

16  protection is sought have to be labeled "highly confidential".

17  I don't know whether there are documents that Ally produced to

18  the examiner that labeled highly confidential or not.

19          I'm not prejudging anything, but I mean

20  designating -- you make this point in your papers, designating

21  documents as confidential doesn't make them so, doesn't make

22  then nondiscoverable in another matter, for example.  And so

23  generally speaking, and you're not a party to the uniform

24  protective order, and you're representing defendants in the

25  action in Minnesota -- actions plural -- and if the documents

1  you're seeking are relevant and material to a defense of those

2  actions, they're ordinarily discoverable.

3           My understanding is, and you can confirm this, that

4  there is a protective order in place in Minnesota, and whatever

5  documents Ally produces, they can produce it pursuant to that

6  protective order.  And if there's disputes about what they

7  designated confidential, Judge Nelson or one of the magistrate

8  judges assigned to the matter will resolve the issue.  Am I

9  right so far?

10          MR. RUSSELL:  Your Honor, you pretty much summarized

11  my argument

12          THE COURT:  Right.

13          MR. RUSSELL:  -- on those points.  So --

14          THE COURT:  Right.

15          So, as you know, I ordered Ally to produce for in-

16  camera review the submission -- what in the separate

17  confidentiality agreement is identified as "submission papers".

18  And the confidentiality agreement doesn't have the imprimatur

19  of this Court; it was entered into between the examiner and

20  various other parties, including Ally.

21          At the last MBIA hearing, Mr. Nesser was there, and he

22  argued that the papers that the Trust had submitted didn't make

23  the argument.  He argued that the submissions were -- they may

24  have gotten some protection from the confidentiality agreement,

25  but were subject to the uniform protective order.  That was the

RESIDENTIAL CAPITAL, INC., et al.                    10

1    first I'd heard that.

2          MBIA produced its submissions, and it turned out there

3    were two rather than one.  There was an initial one and there

4    was a reply.  And I've examined them in camera.  It was after

5    reviewing those that I entered an order requiring Ally to

6    produce its submission paper for in-camera review, and I've

7    reviewed that.

8          And when Mr. Harris addresses me, he's going to

9    address specifically the AFI submission paper to the examiner

10   does not contain any legend designating -- I'm going to be very

11   specific -- it has no legend designating the submission paper

12   as highly confidential.  I mean, I'll tell you, both the MBIA

13   submission papers -- plural, because there are two -- and the

14   Ally submission paper, have what I would characterize as

15   classic work product.  It's an attorney document; they're

16   essentially briefs addressing legal arguments.  That's work

17   product.  Under the uniform protective order, it would have had

18   to be identified -- labeled as "highly confidential".  If the

19   uniform protective order applied in order to protect work

20   product, it would have to be designated as highly confidential,

21   and there is no such designation on what I reviewed in camera.

22         What complicated the analysis for me is, somewhat to

23   my surprise until I received the MBIA submissions in camera,

24   first I didn't know there were two -- everybody had seemed to

25   be talking about one -- but lo and behold it was designated as

1    subject to protective order.  Well, the only protective order

2    entered is the uniform protective order.  And it said "and

3    con" -- it said "protective order and confidentiality

4    agreement".  It didn't include a designation on the documents

5    of highly confidential.  But MBIA says it doesn't object to the

6    production.  But the Ally submission paper, which doesn't

7    identify itself as highly confidential, doesn't purport to say

8    that it's subject to the uniform protective order, specifically

9    addresses the issues raised in MBIA's opening paper.  And then

10    MBIA files a reply addressing arguments that were made.

11           So I'm just laying out for everybody what -- I got

12    this big pile of papers, some of it is the things that were

13    submitted in camera and some of it is just cases that I've

14    read.

15           It might make more sense, Mr. Russell, if I hear from

16    Mr. Harris (sic) first, and then give you a chance to

17    responded.  Okay?

18           MR. RUSSELL:  Your Honor, I think that does make

19    sense.

20           THE COURT:  Yeah.

21           MR. RUSSELL:  Because as I said before, the Court I

22    think has summarized my arguments for me.  Ally has not

23    produced any --

24           THE COURT:  Oh, yeah.

25           MR. RUSSELL:  -- documents to us, so I can't comment

1  on what's in the written submission.

2          THE COURT:  Let me just say -- okay, let me hear from

3  Mr. Harris (sic).

4          MR. RUSSELL:  Thank you, Your Honor.

5          THE COURT:  Thank you very much, Mr. Russell.

6          MR. PARISH:  Good afternoon, Your Honor.  Jason Parish

7  for --

8          THE COURT:  Oh, Parish, I don't --

9          MR. PARISH:  Parish with a "P".

10          THE COURT:  Yeah, you put it in -- I apologize for

11  mishearing.

12          MR. PARISH:  My handwriting is really bad.

13          THE COURT:  No, no, it's my hearing.  And go ahead.

14  Now I hear you loud and clear, okay.

15          MR. PARISH:  So I'm happy to talk about the context of

16  why we're here, sort of what happened before the motion was

17  filed, and then go into the -- address the specific argument

18  that we have related to the examiner production, if that would

19  be helpful.  Otherwise, I can sort of skip the preliminaries

20  and go right to --

21          THE COURT:  I think you can skip the preliminaries,

22  because yes, I made the comment that Mr. Russell sort of -- my

23  term, not his, that you've stonewalled him.  I don't so much

24  believe it and I don't really care about it.  What I care about

25  is what the position is today and what I have to rule.  So

1    let's deal with -- let's say it's fresh.

2            You got this, you've asserted confidentiality -- but

3    let's deal, if you would if you don't mind, Mr. Parish, deal

4    first with the documents that were produced pursuant to

5    subpoena under the uniform protective order.  Okay?

6            MR. PARISH:  And to set the table, the first and

7    second arguments that we made in our supplemental brief related

8    to the relevance of the documents that Ally produced to the

9    examiner, and the breadth of the request for those documents

10   that's been propounded by the defendants.

11           THE COURT:  I want to interrupt you for one minute,

12   because, Mr. Russell, I might have a different view about what

13   Ally has to produce if it relates to the RMBS issues that are

14   involved in the Minnesota cases.  And I have some of the cases

15   here, so I'm not blind to this.  Whatever I'm going to rule is

16   going to come back to bite me because it's going to come up in

17   the cases here.  Mr. Johnson isn't here; he argued last time,

18   so I -- and I know that, he's losing cases there and cases

19   here.  Okay.

20           But what's the breadth of what you're seeking?  I

21   mean -- because Ally -- the examiner's subpoena was very broad.

22   There are a lot of other issues.  I mean, you read the

23   examiner's report and you can see the scope of the issues that

24   the examiner addressed and there -- not all, but there are

25   certainly quite a few that address Ally.  And if what you're

RESIDENTIAL CAPITAL, INC., et al.                    14

1    telling me is that you're prepared to narrow your request for

2    the documents that Ally produced that -- I'm going to shorthand

3    it, it may not be the exact definition, but there are -- they

4    relate to the RMBS claims because that's what the litigation in

5    Minnesota is about.  Could you tell me why?

6              MR. RUSSELL:  Sure.

7              THE COURT:  You can stay up there, Mr. Parish, because

8    I just want to -- I just want to see if I can -- I want to see

9    how broad the dispute is between --

10             MR. RUSSELL:  Your Honor is correct; we agreed to

11   narrow -- first we told Ally kind of the areas we were

12   particularly interested in, and then we actually agreed to just

13   narrow our request to five specific requests.  One of which is

14   all materials produced to the examiner.

15             THE COURT:  That's overbroad, okay.

16             MR. RUSSELL:  Sure.  Sure, I understand that, Your

17   Honor.

18             The other areas in which we're interested essentially

19   go to the RMBS claims asserted against Residential Funding

20   Company, kind of the strength and merits of those claims, and

21   in addition, the settlement reached in front of Your Honor.  So

22   it's not just the claims themselves, but the settlement

23   because, in essence, what's going on in Minnesota, as in I

24   think the cases in front of you as well, Your Honor, RFC is

25   suing the defendants seeking indemnification for the cost

1    incurred in the bankruptcy including the settlement.  So the

2    reasonableness of the settlement, and not just the recent --

3              THE COURT:  Well, let me ask you this.  Do you agree

4    that Ally need not produce documents that are covered by the

5    mediation privilege about which I have specifically have

6    written?

7              MR. RUSSELL:  I --

8              THE COURT:  You're not seeking -- so it may be

9    that -- because as soon as you say the reasonableness of the

10   settlement, well, they give -- there was a mediation that went

11   on for, I don't know, six, nine months by my former colleague

12   Judge Peck, and Ally was a very active partner, and put up at

13   the end of the day 2.1 billion dollars as a result.  And I

14   don't know what's going -- whether it's going to protect every

15   scrap of paper that was in that time period, but substantially.

16   And so -- you're not trying -- are you trying to backdoor on

17   the mediation privilege?

18             MR. RUSSELL:  Absolutely not, Your Honor.

19             THE COURT:  Okay.

20             MR. RUSSELL:  Defendant's filed a motion in front of

21   Your Honor last year.

22             THE COURT:  I know.

23             MR. RUSSELL:  You Honor ruled, the ruling is very

24   clear.

25             THE COURT:  Okay.

RESIDENTIAL CAPITAL, INC., et al.                        16

1          MR. RUSSELL:  And we've been very clear with Ally --

2          THE COURT:  Okay.

3          MR. RUSSELL:  -- since August 28th when we had your

4   decision --

5          THE COURT:  Right.

6          MR. RUSSELL:  -- that we're not seeking any materials

7   protected by your mediation order.

8          THE COURT:  All right.  Could I ask -- I just want to

9   see if we can cut -- see if we can cut through it.  Do you

10  agree to limit -- and I know -- which is typical for

11  negotiations, let's prioritize it, let's figure out what order.

12  But I didn't see you saying we'll withdraw our request for any

13  documents that don't relate to the RMBS claims.  I do have a

14  problem if you were seeking documents that go beyond your --

15  that've been produced to the examiner pursuant to the uniform

16  protective order, that go beyond the issues in the Minnesota

17  litigation or the litigation here.

18         MR. RUSSELL:  Sure.  And, Your Honor, if there are --

19  let me take a step back.

20         THE COURT:  Okay.

21         MR. RUSSELL:  If Ally wants to simply give us the

22  examiner production because it's easier for them --

23         THE COURT:  I bet they won't.

24         MR. RUSSELL:  If they did --

25         THE COURT:  I bet you they won't.

1          MR. RUSSELL:  We're happy to do the work as sorting

2    the wheat from the chaff.

3          THE COURT:  Yeah, I'm sure.

4          MR. RUSSELL:  Assuming they don't --

5          THE COURT:  Okay.

6          MR. RUSSELL:  -- if there are documents in that

7    production say related to Ally's interest in other companies

8    other than RFC, yeah, they're not relevant, we have no interest

9    in them.

10          THE COURT:  Well, I would leave it to you and Mr.

11   Harris (sic) and his colleagues to enforce this and sort out

12   the definition, because I'm not trying to write it --

13          MR. RUSSELL:  Sure.

14          THE COURT:  -- now; I'm shorthanding it by saying

15   relevant to the RMBS claims.  That helps, let me -- I'm going

16   to accept your representation that you are limiting your

17   request for production relating to Ally's submission to the

18   examiner to RMBS claims appropriately defined, and not

19   including anything subject to a mediation privilege; is that a

20   fair statement?

21          MR. RUSSELL:  It is.  If I could clarify one point --

22          THE COURT:  Go ahead.

23          MR. RUSSELL:  -- because I don't want to ever be

24   accused of --

25          THE COURT:  Yeah.

RESIDENTIAL CAPITAL, INC., et al.                    18

1              MR. RUSSELL:  -- of sandbagging the Court or the

2    parties.

3              THE COURT:  It wouldn't be a good thing.

4              MR. RUSSELL:  One, I want to be clear, we're not

5    seeking anything --

6              THE COURT:  Okay.

7              MR. RUSSELL:  -- covered by the mediation --

8              THE COURT:  All right.

9              MR. RUSSELL:  -- order.  I don't want to narrow it to

10   just RMBS claims, because we are seeking, to the extent there

11   are documents related to the settlement for which RFC is trying

12   to hold us liable that aren't protected by the mediation

13   order --

14             THE COURT:  Okay.

15             MR. RUSSELL:  -- we would like those documents as

16   well.

17             THE COURT:  All right, I understand that.  Okay,

18   thanks.

19             MR. RUSSELL:  With that clarification, you have it

20   absolutely right, Your Honor.

21             THE COURT:  All right.  Well, it was, thanks very

22   much, Mr. Russell.  Mr. Harris -- Mr. Parish.

23             MR. PARISH:  Yes, Your Honor.

24             Maybe -- it seems like there's a way to sort of

25   address this in a global way, which I think we were looking to

RESIDENTIAL CAPITAL, INC., et al.                    19

1    do in the period leading up to the filing of the motion.

2              THE COURT:  Well, we're dealing with it today, so

3    what's your suggestion.

4              MR. PARISH:  Because the request for the examiner

5    production, even limited as Your Honor laid out, and a request

6    for the other categories of documents all overlap to some

7    degree.  So what I think makes sense here, what may avoid this

8    thicket of issues involving the protective order and the

9    confidentiality agreement would be for the parties to meet and

10   confer on a limited custodial production of documents.  They

11   have given --

12             THE COURT:  Well, that should have happened already,

13   so I don't know if your firm -- you haven't been before me

14   before, but lots of your colleagues have been in the ResCap

15   matters and know very well what my procedures for discovery

16   disputes are, and they very clearly require a meet-and-confer

17   before you stand up in my court in responding to this motion to

18   compel compliance.  Let me ask you a few more questions.

19             In your examiner production, pursuant to a subpoena --

20             MR. PARISH:  Yes.

21             THE COURT:  -- are there documents that you designated

22   as  highly confidential because you believe they contain

23   attorney-client privilege or work product?

24             MR. PARISH:  There are documents that are designated

25   as highly confidential.

1          THE COURT:  No, I'm asking specifically are they --

2    look --

3          MR. PARISH:  I --

4          THE COURT:  I'm specifically ask -- I really -- let

5    me -- I'll reframe it then.  Are there documents that you

6    produced to the examiner pursuant to the uniform protective

7    order that Ally contends are protected by attorney-client

8    privilege or attorney work product?

9          MR. PARISH:  I can't say with certainty that there

10   are.

11         THE COURT:  Have you looked?

12         MR. PARISH:  I have looked.  I expect that there are,

13   but I don't know that for certain.

14         THE COURT:  Okay.

15         MR. PARISH:  I mean that total production is --

16         THE COURT:  But the reason I'm raising this is because

17   the uniform protective order provides -- has clauses that

18   provide the protection that Federal Rules of Evidence, is it

19   503 -- you remind me, Mr. Nesser, because this came up the last

20   time, which I don't have -- I didn't bring my evidence rules

21   out with me and I think --

22         MR. RUSSELL:  I think it's 502(d), Your Honor.

23         THE COURT:  502(d); thank you, Mr. Russell.

24         So 502(d) permits parties to produce privileged work

25   product document without waiving that if the Court orders it,

1    and I did.  Okay.  So I kind of put that in one corner.  I had

2    my doubts -- well, you either did or didn't produce documents

3    that fall into that category.

4         But anything else that you designated confidential or

5    highly confidential, that doesn't create a privilege or

6    protection against production.  It may be it has information

7    that would be subject to Bankruptcy Code Section 107(b),

8    proprietary business information, things like that.  It doesn't

9    protect it from production; it just protects it from public

10   disclosure.  That's what discovery protective orders are, in

11   part, designed to do.  And I don't know whether I've seen one

12   that Judge Nelson entered, but I'm sure it has that kind of

13   protection in it.

14        So, look, I've got everything in front of me now; this

15   is -- I have two of these proceedings in front of me.  Ally

16   needs to produce anything that relates to the RMBS claims or

17   the reasonableness or evaluation of the settlement that's not

18   protected by attorney-client privilege, attorney work product,

19   or the mediation privilege.  I'm putting aside the examiner,

20   the submission paper, okay.  I'm only talking about what was

21   produced pursuant to the uniform protective order.

22        MR. RUSSELL:  And, Your Honor, and to clarify we're

23   talking about documents within the examiner production?

24        THE COURT:  Yes, I am.  I'm talking about documents

25   within the examiner production.  And if you get into a dispute

1  with Mr. Russell because you think this particular document or

2  a handful of particular documents -- the protective order

3  requires you to label them.  And if you didn't label them

4  highly confidential, you can't preserve attorney-client

5  privilege or attorney work product.  It's really as simple as

6  that; the protective order is clear on its face.  Okay.

7          But if there are documents you labeled attorney-

8  client -- that you labeled as highly confidential, and you have

9  a dispute about whether you have to produce them or not, you'll

10  come back to me about it because that relates to the uniform

11  protective order that I entered, all right, I approved.  When I

12  say I approved it; there was a form of uniform protective order

13  that was approved by the Court -- by Court order, and I didn't

14  have to sign every single -- thereafter sign every single

15  protective order that used that form; it was designed that way

16  to expedite the process.

17          Okay.  So that -- you need to meet with Mr. Russell

18  promptly in an effort to resolve these issues.  I'm not -- I've

19  shorthanded when I say related to RMBS claims.  And you need to

20  try and get that worked out promptly.  There are discovery

21  deadlines that Judge Nelson has imposed.  And I'm not going to

22  let you or anyone else try to run out the clock.

23          MR. PARISH:  Your Honor, to be clear, we're not trying

24  to run out the clock.

25          THE COURT:  Okay.  I'm just making clear to everybody,

1   okay, nobody's going to -- because I don't want to have Judge

2   Nelson come back and say to me, they've been before you for how

3   many months, and they still don't have production; it's slowing

4   down my cases, here.  That's not going to happen.  Okay.  So

5   this needs to get clarified very quickly.  But there just --

6   you don't gain protection for documents by the fact that you

7   produced -- you gave them to the examiner pursuant to subpoena,

8   with the exception of the attorney-client privilege work

9   product documents, okay, because that privilege was preserved,

10  not waived.

11          So now it's come to the examiner submission paper.

12  And I did review it in camera, and I commented already.  There

13  was no -- frankly, unlike the MBIA submission papers, which

14  did -- I'll find it.

15          The legend on the MBIA documents, and there are two,

16  two document, says, "Confidential materials enclosed subject to

17  court orders and terms of confidentiality agreements".  The

18  court order -- the only court order I'm aware of is the uniform

19  protective order.  But MBIA is not objecting to production, and

20  I'm sure I'll hear Mr. Nesser, but there -- with respect to

21  MBIA, their discovery in one of the actions was completed; they

22  produced expert reports.  Mostly what they rely on in the MBIA

23  submission their expert reports produced pre -- that were

24  created pre-petition.  They're not subject, in my view, to any

25  protection.  MBIA can -- if they wanted to assert privilege,

1    they could have asserted privilege or protection.  They could

2    have, but they didn't, they said they had no objection to

3    producing it.

4          It's the reply which does address things in your

5    client's submission that at least gave me pause because I said

6    well, I better see what Ally put on its submission.  Did they

7    say highly confidential?  Did they say it was subject to the

8    uniform protective order?  Well, it didn't.  You want to

9    address that?

10         MR. PARISH:  You are correct; the document itself is

11   not designated as confidential.  And I don't know what the

12   history was leading up to that.  There may have been that there

13   were discussions among the parties about how these would be

14   treated; it may not be the case.

15         In February 2013, though, the parties and the examiner

16   entered into a confidentiality agreement.  And our position,

17   and the basis for our objection, related to the examiner's

18   submission specifically, is that that confidentiality agreement

19   operates as sort of a post-hac designation of the submission as

20   confidential.

21         THE COURT:  But designating it as confidential

22   wouldn't do it in my view.  I mean, you can try and persuade me

23   otherwise, but -- designated as confidential wouldn't preserve

24   privilege.  Privilege is only preserved if there's a

25   written -- if there's a protective order that's been entered by

1   the Court that has that protection built in.

2              Bear with me, please.

3        (Pause)

4              THE COURT:  Rule 502(d) and (e) -- this Rules of

5   Evidence -- are the two applicable provisions.  502(d):  "A

6   federal court may order that the privilege or protection is not

7   waived by disclosure connected with the litigation pending

8   before the court -- in which event the disclosure is not a

9   waiver in any other federal or state" court.  Well, the uniform

10  protective order had provisions on that.  And then 502(e),

11  "Controlling Effect of a Party Agreement.  An agreement on the

12  effect of disclosure in a federal proceeding is binding only on

13  the parties to the agreement, unless it is incorporated into a

14  court order."  So it's those two provisions that I look to to

15  determine whether Ally has gained protection from disclosure in

16  the actions in which it's not a party in Minnesota or here.

17             And Mr. Nesser argued on the MBIA case -- it wasn't in

18  the papers, but he argued, well, we think it's subject -- we

19  think the submission was subject to the uniform protective

20  order, not just the confidentiality agreement.  Well, then lo

21  and behold, it's not entirely clear but -- the designation

22  isn't exactly the same, but I mentioned I read that from the

23  MBIA submission paper they referred to it as being subject to

24  protective orders.  Well, there's only one.  But they're not

25  objecting to producing it.

1          I didn't want to be in a position of ordering

2    production of the MBIA submission papers when I saw there was

3    two, there was a reply that referred to your client -- referred

4    to Ally's submission.  And I said, well, I better see

5    what -- whether Ally has preserved privilege or work product as

6    to it before I say that MBIA can produce their reply that

7    addresses what's in the Ally submission.  And the

8    confidentiality agreement may be effective for parties to

9    review it but not as to Mr. Russell's clients.  What's your

10   view of that?

11          MR. PARISH:  Well, the -- I'm sorry.  Could you ask

12   the question again?  I'm not sure I understood.

13          THE COURT:  Well, on what basis do you believe Ally

14   should not be required to produce, subject to whatever

15   confidentiality provision is in place in the Minnesota actions,

16   its examiner submission?

17          MR. PARISH:  I think the position that we set out in

18   our papers is that it is protected by the confidentiality

19   agreement, which operates as a designation under the protective

20   order.

21          THE COURT:  No, it doesn't.  Come on.  Where do you

22   derive that from?  Well, first off, even -- it wouldn't get you

23   there because you didn't designate it as highly confidential.

24   The uniform protective order requires, in order to gain that

25   protection for attorney-client privilege and attorney work

RESIDENTIAL CAPITAL, INC., et al.                                    27

1    product, that you designate things as highly confidential.  And

2    I don't magically pull out of the air the designation of highly

3    confidential when no designation whatsoever appears.

4            MR. PARISH:  I don't have a further response.

5            THE COURT:  Okay.

6            MR. PARISH:  The issue here, and that's complicating

7    my ability to respond to the question is the request for an

8    examiner submission was not made specifically.  The request

9    that we're dealing with on the defendant's motion and the

10   briefing has been for the examiner production.  So it may be

11   possible that there is some indication of a highly confidential

12   designation.  I have not --

13           THE COURT:  Well, what indication?

14           MR. PARISH:  In a cover letter in --

15           THE COURT:  I asked you for the document.  I got the

16   document from you.

17           MR. PARISH:  There may be a cover letter.  There may

18   be some other document.  I don't know the answer to that.

19           THE COURT:  Anything else you want to add at this

20   point?

21           MR. PARISH:  Pardon me?

22           THE COURT:  Is there anything else you wish to add at

23   this point?

24           MR. PARISH:  No, Your Honor.

25           THE COURT:  All right, Mr. Nesser.

1        (Pause)

2            MR. NESSER:  Your Honor, I have a famous Quinn Emanuel

3    handout.  Would that be okay?

4            THE COURT:  Sure.  Did you give it to Mr. Russell?

5            MR. NESSER:  I did not.

6            THE COURT:  Could you give one to Mr. Russell?

7            MR. NESSER:  Yes.

8            THE COURT:  Let me ask.  Mr. Russell, do you have any

9    objection to Mr. Nesser showing me his handout?

10           MR. RUSSELL:  I haven't seen it, yet, Your Honor, but

11   I have no objection, no.

12           THE COURT:  Okay.

13           MR. RUSSELL:  I'm used to Mr. Nesser springing

14   handouts in Minnesota with no prior notice, so I don't see why

15   this should be any different.

16           MR. NESSER:  Your Honor, we prepared this just to run

17   through how we perceive the confidentiality agreement and

18   protective order to interact with one another.  From the

19   discussion with counsel, it appears to me that most of that is

20   already clear to the Court.  I think the only portion of this

21   that I would direct the Court's attention to are Roman numerals

22   II and III.

23           So Roman number II, we reproduce language from

24   paragraph 1 of the protective order, in which it states that

25   "Confidential information means anything that is marked or

1   designated by such disclosing party as being confidential."

2   And the emphasis for today's purposes is marked or designated,

3   in the alternative; so even if the document is not marked, it

4   may still be designated, and thereby become confidential

5   information under the protective order.

6         And then in turn, in Roman numeral III, the

7   confidentiality agreement, as we read it, as reflected here,

8   states that "Submission papers shall be and shall remain

9   confidential."  And that, in our view, is a designation under

10  the protective order, by the parties.

11        THE COURT:  It's not, okay, but go ahead.

12        MR. NESSER:  And I am not, Your Honor, contending that

13  this language on its own is a designation that the submissions

14  are highly confidential, which I know is the focus of Your

15  Honor's questioning to counsel before I stood up, but it does

16  seem to us to be the case that it is a direct designation of

17  the examiner's submissions as subject to the protective order,

18  which then is reflected --

19        THE COURT:  Go ahead.

20        MR. NESSER:  -- which then, as Your Honor has

21  observed, at least in the case of MBIA, the parties -- MBIA

22  itself understood that to be the case at the time.

23        THE COURT:  Well, they did and they didn't.  They

24  didn't because they didn't designate their submission as highly

25  confidential.

1          MR. NESSER:  Well, we can discuss with --

2          THE COURT:  Well, come on.

3          MR. NESSER:  MBIA may want to offer a view as to why

4     they did or didn't do that.

5          THE COURT:  MBIA already offered its view.  It says it

6     does not object to the production.

7          MR. NESSER:  That I understand.  It may be that MBIA

8     didn't consider the submission to be attorney work product.

9     But clearly --

10         THE COURT:  I raised the question during the hearing.

11    I said -- I looked at it and it looks quintessentially work

12    product.

13         MR. NESSER:  And for whatever reason, maybe they're

14    waiving work product.  I don't know, but what I do know is that

15    the document, on its face, states that it's subject to a

16    protective order.  Your Honor, I'll say that based on our

17    review, MBIA is not the only party in its examiner submission

18    to include a stamp like that.  Ally did not, but others did.

19         THE COURT:  Okay.

20         MR. NESSER:  And so we think it's not only clear on

21    the face of the confidentiality agreement and protective order

22    that this is how they are supposed to work, but we also think

23    it is clear from the parties' practice that this is how they

24    were conducting themselves.

25         I'd like to make -- I'd like to respond to a series of

1    questions Your Honor has been posing today, which is, well, if

2    you didn't designate it highly confidential, therefore, you

3    don't get to preserve your work product under the protective

4    order language, and so --

5          THE COURT:  It's paragraph 25 of the --

6          MR. NESSER:  Correct, and so how on earth, Your Honor

7    is asking, do you now get to stand up and say that this is not

8    subject to disclosure?

9          THE COURT:  That's a good question, so why don't you

10   answer it?

11         MR. NESSER:  And what I'll say is that, first of all,

12   as Your Honor observed, the disclosures -- each of the

13   submissions include materials that the submitting party had

14   received from others.

15         THE COURT:  Okay, so with respect to MBIA, which I

16   read very carefully --

17         MR. NESSER:  Um-hum.

18         THE COURT:  -- it appeared to me it included

19   everything they had received pre-petition in their discovery.

20   Discovery was done.  Their expert -- mostly they rely on their

21   own expert reports.  It's not examiner submissions.  They had

22   at least two actions.  I guess there was one that discovery was

23   not yet done, but one of them where they say fact discovery was

24   done.  Their expert reports were done.  They probably already

25   had a brief written, but I'm not -- look, let me make clear.

RESIDENTIAL CAPITAL, INC., et al.                    32

1   I'm not deciding today whether -- that every examiner

2   submission by any other party is or is not entitled to any

3   protection and having ResCap label its examiner submission

4   paper.

5           MR. NESSER:  Your Honor, I don't know the answer to

6   that standing here.  But what I'm trying to -- the point I'm

7   trying to make, Your Honor, is, as Your Honor observed, MBIA's

8   submission cited Ally's submission.  Ally's --

9           THE COURT:  Only their reply; only their reply.

10          MR. NESSER:  Correct.  I have not -- correct.  Ally's

11  submission that we're talking about today cites AIG's

12  submission, FHLB's submission, MBIA's submission, the JSN's

13  submission and standing committee's -- the steering committee's

14  submission.  All of those were subject to the protective order,

15  as well.

16          THE COURT:  Well, I don't know whether -- don't tell

17  me they're subject -- I'm not buying into your argument that

18  this stuff is subject to the protective order.  Okay.  And I'm

19  not going to decide that in the abstract.  Your telling me it

20  so doesn't make it so.  There was a separate confidentiality

21  agreement not approved by the Court, pursuant to which

22  submission papers were exchanged.

23          MR. NESSER:  Um-hum.

24          THE COURT:  Whether anybody submitting one of those

25  sought to cloak it within the uniform protective order, I don't

1   know.  Ally did not.  I know that.  Whether anybody else did, I

2   don't know.

3         MR. NESSER:  Your Honor, I think the answer is that it

4   was not necessary for Ally to make that designation on the

5   paper because all of the parties had already made that

6   designation in the confidentiality agreement.  That was the

7   purpose of the confidentiality agreement.

8         THE COURT:  Well, confidentiality agreement only

9   applies between the parties to that agreement.  It does

10  not -- you don't gain protection of a document that's otherwise

11  not protected by having a bunch of parties sign an agreement

12  and don't get approval from the Court.

13        MR. NESSER:  And I don't -- and I don't mean to

14  disagree with that in any respect.  What I'm suggesting, Your

15  Honor, as Mr. Parish suggested, is that Ally understood the

16  confidentiality order to be operating as a desi --

17        THE COURT:  I don't care what Ally -- what it thinks.

18  It's subjective belief which you can't make statements about.

19  You're not -- I'm sorry; I don't mean this pejoratively, but

20  you're not competent to tell me what Ally believed when it

21  produced a submission paper.  Okay.

22        There was a uniform protective order in place.  There

23  was a separate confidentiality agreement.  The uniform

24  protective order grants certain protections because it had the

25  imprimatur of the Court's approval.  The confidentiality

1  agreement didn't.  Subjective beliefs are not relevant to this

2  inquiry, and you're not competent to tell me what their

3  subjective beliefs are.

4       MR. NESSER:  Your Honor, I apologize, and I was not

5  meaning to do that.  I only was repeating what I thought I

6  heard Mr. Parish say.  But ultimately, I think the real issue

7  and real arguments, Your Honor, boils down to Roman numerals II

8  and III on this piece of paper.  And if you agree with us, then

9  you do, and if you don't -- if you're not following us on that,

10  then I think that you're not following us.

11       THE COURT:  Look, Roman II --

12       MR. NESSER:  Yes.

13   (Pause)

14       THE COURT:  All right, what I'm looking at is I'm

15  looking at 107(b) of the Bankruptcy Code, which doesn't have

16  the exact same wording, but the whole concept of

17  confidentiality and protective orders, in my view, is derived,

18  at least in the first instance, by what's protectable under the

19  Bankruptcy Code in 107(b), and then in the practicalities of

20  discovery, so you don't have to litigate every single document.

21  Protective orders have provisions about parties in good faith

22  can designate documents.  And then there are procedures.  If

23  somebody wants to dispute it, they can come to court, if they

24  can't work it out.

25       The fact that information may have proprietary and

 1  confidential nonpublic information doesn't mean it's

 2  protectable from discovery.  It may mean that discovery will

 3  only be granted pursuant to a protective order.  And in many

 4  instances, before a written protective order is in place, I

 5  will simply, to expedite matters, say I'm so ordering a

 6  transcript to provide it's attorney's-eyes only, until the

 7  parties work out the terms of a protective order.  And usually

 8  within a week I get it.

 9       What I'm always careful about is that it doesn't

10  hamstring me from making any determination about what can come

11  into evidence and things like that, but what you're -- Roman II

12  specifically says, "marked or designated by such disclosing

13  parties being confidential."

14       And every firm has got their confidential stamp that

15  they impress on at least the first page of each document that

16  it wants to be designated as confidential.  And this protective

17  order has additional categories, "highly confidential" being

18  one, which certainly applies to privilege and work product

19  information.  Anything else you want to add?

20       MR. NESSER:  Just two things, if I may.

21       THE COURT:  Go ahead.

22       MR. NESSER:  And if Your Honor thinks it would be

23  productive, which of course you can't prejudge.

24       THE COURT:  You always ask so nicely, though, Mr.

25  Nesser, I always want to listen to what you have to say.

1    You're a reasonable man; I'm willing to listen to you.

2            MR. NESSER:  I'll try -- I'll try my damndest.  The

3    first is that as I've been trying to argue, each of these

4    submissions cites, in turn, other submissions.  And so to the

5    extent --

6            THE COURT:  But MBIA opening submission does not.

7            MR. NESSER:  I'm sorry?

8            THE COURT:  The MBIA opening submission does not.

9            MR. NESSER:  Yes, and I apologize for continuing to

10   trip over that one, but the Ally submission certainly does

11   refer to at least five other examiner submissions.  And AIG is

12   not here; the FHLB is not here; the JSN is not here; the

13   steering committee is not here.  And so if their confidential

14   submissions are going to be disclosed, they ought to have an

15   opportunity to participate.  And that was the purpose of the

16   protective order and confidentiality agreement, which is to say

17   we're going to have an examiner process, and it should be

18   shielded.  That's point number one, and I won't go further.

19           Point number two is that I just did want to address

20   something Your Honor mentioned last time, which is I had said

21   that, in our view, this issue is analogous to the issue that

22   Your Honor resolved with respect to the mediation order.

23           THE COURT:  And you didn't get much traction from me

24   on that argument.

25           MR. NESSER:  I got no traction whatsoever, Your Honor.

1    And what Your Honor told me at the time was, well, look, that's

2    because there's a recognized mediation privilege and there is

3    no recognized examiner privilege.

4                    THE COURT:  Right.

5                    MR. NESSER:  And I and I did just want to indicate

6    today, and if -- I think this is responsive to the comment, but

7    perhaps not.  Your Honor's decision last year held that Second

8    Circuit's decision in Teligent requires exceptional

9    circumstances in order to lift a mediation -- lift a protective

10   order.

11                   Teligent, by its terms, Your Honor, is not

12   limited -- the standard in Teligent, by its terms, is not

13   limited to mediation documents.  And in fact, Teligent

14   explicitly cites SEC v. TheStreet.com, a 2001 Second Circuit

15   decision that, at page 229, explicitly holds that the

16   exceptional circumstances test applies to any protective order.

17                   THE COURT:  Let me put -- let's put aside the

18   submission paper.

19                   MR. NESSER:  So that's --

20                   THE COURT:  Let's put it aside.  You can't seriously

21   be contending that because documents were produced to the

22   examiner pursuant to the uniform protective order -- putting

23   aside the submission paper -- that the documents suddenly gain

24   protection from discovery in other actions?

25                   MR. NESSER:  Your Honor, what I'm trying to say is

1    that --

2                THE COURT:  Well, answer my question.  Are you

3    contending that if Ally produced business records, that by

4    producing them to the examiner pursuant to a subpoena, subject

5    to the uniform protective order, that Ally gains protection

6    from having to produce the documents in third-party litigation?

7    Do you have any case that says that?

8                MR. NESSER:  That is not the argument that I'm making

9    here, Your Honor.

10               THE COURT:  Well, I'm trying to separate out, and

11   that's why I -- the documents that Ally produced -- well, let

12   me -- I want to understand.

13               Putting aside the documents Ally produced pursuant to

14   subpoena from the examiner, and that were made subject to the

15   uniform protective order, do you believe that Ally gains

16   protection against disclosure in the third-party actions either

17   before me or before Judge Nelson, by having produced documents

18   to an examiner?

19               MR. NESSER:  No.

20               THE COURT:  Okay.

21               MR. NESSER:  I do think that Ally gains protection as

22   to its submission paper to the examiner.

23               THE COURT:  Well, I've been troubled by the submission

24   paper.  I mean, no question about it.

25               MR. NESSER:  And as Your Honor will recall, we

1    consent -- the plaintiffs consented to MBIA's production of the

2    documents underlying MBIA's submission paper.

3              THE COURT:  All right.

4              MR. PARISH:  So I'm not making an argument about the

5    underlying documents.  I'm making an argument about the brief.

6              THE COURT:  Can you just tell me why -- I didn't ask

7    you this at the last hearing, but I remember their paper is

8    replete with references to their expert reports.  I assume that

9    those were produced, as well, as part of the documents

10   submitted.

11             MR. NESSER:  I believe so.

12             THE COURT:  Yeah.  I mean, it's heavily cited

13   throughout.  They were probably produced in the litigation

14   before the bankruptcy, but I don't know that.

15             MR. NESSER:  I am not -- I should say I am not

16   certain.  I believe so.  If it's material, we can let Your

17   Honor know separately.

18             But Your Honor, that is the argument that we're

19   making, that when they made a confidential submission to the

20   examiner, that they understood it to be subject to the

21   protective order.  I shouldn't say that they understood it to

22   be.  That the protective order covers, and that the

23   confidentiality agreement covers --

24             THE COURT:  Well, you say they understood.  You're

25   falling in the same trap again, telling me what Ally's

RESIDENTIAL CAPITAL, INC., et al.                    40

1  subjective belief was.

2        MR. NESSER:  That's why I immediately stepped back

3  from that cliff.  What I -- to say nothing of the sword of

4  Damocles hanging over my head.

5        THE COURT:  Not exactly.

6        MR. NESSER:  What I mean to say is not subjective.

7  What I mean to say is actually objective.  The protective order

8  says that confidential documents -- the protective order says

9  that documents designated confidential are not to be disclosed.

10  And the confidentiality agreement says the following documents

11  are confidential.  Period.  And that's our -- that's how we

12  read the documents, and that's how the documents fit together.

13  And it makes sense, Your Honor, because when Your Honor entered

14  the protective order --

15        THE COURT:  If I accept what you've just told me, any

16  piece of paper, whether it was designated as confidential or

17  not, you say is automatically designated confidential?  What's

18  the whole point about a protective order that says, okay, if

19  you believe it's confidential, stamp it confidential.

20        MR. NESSER:  Your Honor, respectfully, two responses.

21  Number one, that's not what the protective order says.  What

22  the protective order says is you can mark it or designate it,

23  either.

24        THE COURT:  Okay, Mr. Parish, do you have some

25  designation of the submission as confidential?

1              No, stop.

2              Do you have -- there's nothing on it, Mr. -- you're

3    making it up as you go.

4              MR. NESSER:  No, I'm not.  There's nothing on the

5    document.  I'm not contending there's anything on the document.

6    What I'm contending, Your Honor, is that the defendants make

7    this argument in their papers, that the confidentiality

8    agreement was a very narrow document covering a very narrow

9    category of documents.

10             The only thing that the confidentiality agreement

11   covers are examiner submissions.  And so what the parties did

12   in the confidentiality agreement -- the meaning of the

13   confidentiality agreement precisely was a statement by the

14   parties that their examiner submissions are going to be

15   confidential.  That is what the document is.

16             THE COURT:  Show -- which is the provision of the

17   protective order you're relying on that you believe makes

18   anything confidential?

19             MR. NESSER:  Paragraph 1 -- of the protective order?

20             THE COURT:  Yeah.

21             MR. NESSER:  Paragraph 1, confiden -- it's Roman

22   numeral II on my handout.

23             THE COURT:  Well, show me where Ally designated its

24   submission -- where they marked or designated its submission as

25   being "confidential".

1          MR. NESSER:  In paragraph 1 of the confidentiality

2   agreement.

3          THE COURT:  No.  No.  No.  No.  No.  No.  You don't

4   produce documents without a designation and say -- and come

5   back later and say, oh, but that was confidential.  This

6   requires -- the language you're referring to requires

7   "proprietary and confidential nonpublic information, whether in

8   writing or orally or in any other format, produced, provided,

9   given, or exchanged by disclosing party defined below, that is

10  marked or designated by such disclosing party as confidential."

11         MR. NESSER:  Correct.

12         THE COURT:  So show me what Ally -- where did they

13  designate its submission as confidential?  I haven't seen a

14  single scrap of paper --

15         MR. NESSER:  Ally --

16         THE COURT:  -- where they designated their submission

17  as confidential.

18         MR. NESSER:  Ally signed a piece of paper in which it

19  stated -- in which is stated that its submission paper "shall

20  be and shall remain confidential."

21         THE COURT:  So you're relying on the separate

22  confidentiality agreement.

23         MR. NESSER:  Correct, and if Your Honor disagrees with

24  our reading, then I'll sit down, but that is the argument we're

25  making.

RESIDENTIAL CAPITAL, INC., et al.                    43

1        THE COURT:  All right.  I'm going to take the matter

2   into submission with -- I'll take it under submission with

3   respect to the examiner submission, the Ally examiner

4   submission.  I'm not taking it under submission with respect to

5   the examiner production, which means everything other than the

6   examiner submission.

7        I'm requiring that the moving parties and Ally's

8   counsel confer promptly and seek to reach an agreement as to

9   what will be produced and when it will be produced.  If there

10  are remaining disagreements that you can't resolve, you

11  can -- the party needing the assistance from the Court can call

12  my chambers, and we'll do it by telephone.  It shouldn't

13  happen.  Okay?  And as I said, this needs to get done quickly,

14  because there are discovery deadlines in place here, discovery

15  deadlines in Minnesota.

16       With respect to the examiner submission, I certainly

17  saw in the Ally's -- actually, in the MBIA reply, I saw it

18  refer to two examiner submissions, Ally and ResCap.  It's a

19  long document, but I believe those were the two that it

20  referred to, it addressed in their reply.  Can you address

21  that, Mr. Nesser?

22       MR. NESSER:  Your Honor, I know that the MBIA reply

23  cites to the Ally submission.  Standing here, I don't know --

24       THE COURT:  It referred to the ResCap submission

25  too.  Or debtors, it may have been.  I can look.  I have it

1  here.  But it referred to debtors.  I didn't see it referring

2  anything other than AFI and debtors.

3         MR. NESSER:  That may well be the case, Your Honor.

4  I've no reason to doubt that.  It also, I believe, refers to

5  documents that various parties produced.

6         THE COURT:  I don't think -- it has all the production

7  numbers from their prior litigation.

8         MR. NESSER:  Certainly, the Ally submission cited

9  documents that had been -- that it had obtained from various

10 other parties, confidential documents it had obtained from

11 other people.  And it's the same argument I've been trying to

12 make, which is those parties' confidential information, and the

13 way one might expect it to operate is that they have an

14 opportunity to be involved.  But for reasons that are not

15 clear, the defendants haven't been pressing -- either didn't

16 issue or haven't been pressing discovery requests as to those

17 other parties.

18        THE COURT:  Well, I think under the -- if you believe

19 the uniform protective order applies, Ally should have notified

20 any party that they've received a subpoena for documents that

21 somebody else protects as under the protective order.  So

22 don't -- Ally had that responsibility.  You disagree with that?

23        MR. NESSER:  Your Honor, my view is that confidential

24 designations --

25        THE COURT:  Do you disagree with that?  The protective

1  order -- if the uniform protective order applies, it has

2  provisions requiring a party to give notice when it receives a

3  subpoena for anybody else's protected information.

4          MR. NESSER:  Yes, I agree with that.  And I agree that

5  if my memory of Boeing is correct, then one would have thought

6  that any of the parties had an obligation to notify everyone

7  else.  I don't know whether Ally did that or not, but I --

8          THE COURT:  Mr. Parish, do you know whether Ally

9  notified anybody else that there was a subpoena that would call

10  for anybody else's confidential or protected information?

11          MR. PARISH:  Your Honor, I don't know the answer to

12  that.

13          MR. NESSER:  Your Honor, but I also don't know why it

14  ought to matter.  If there is a designation of a document as

15  confidential, then that doc -- assume with me for the moment,

16  Your Honor, that my crazy argument is correct; the documents

17  marked confidential are, in fact, subject to the Court's

18  protective order.  The failure of Ally to notify those parties

19  or the notification of Ally of those parties --

20          THE COURT:  Well, they can come back and -- they can

21  come back and sue Ally for failing to --

22          MR. NESSER:  I suppose they could, but in any event,

23  whether Ally does that or not, the documents are still

24  protected by a court order.  The fact that Ally may or may not

25  have notified them doesn't strip the protection that was

1    accorded those documents by the Court.  Frankly, I don't see

2    how it could strip --

3               THE COURT:  Well --

4               MR. NESSER:  -- any protection that exists by virtue

5    of the parties' own agreements.  I mean --

6               THE COURT:  The only thing that would be protected

7    from disclosure, in my view, Mr. Nesser, is highly confidential

8    information, documents that are -- it's what I said before.

9    You don't gain protection over documents simply because you

10   think they're confidential.

11              MR. NESSER:  And as I said --

12              THE COURT:  That doesn't protect them from disclosure.

13              MR. NESSER:  Yeah, and as I said, we are not making

14   any argument with respect to the underlying documents.  What

15   Ally's position on that is not my concern.  I don't know what

16   their position is.  Our position is that the examiner

17   submission itself is and was always a confidential document

18   subject to the protective order.  And I don't think there's any

19   great prejudice to any --

20              THE COURT:  A confidential document would not provide

21   it protection from disclosure.  If it's a work product and yet

22   it was designated as highly confidential, it may well have some

23   protection.  But just saying confidential does not protect it

24   from discovery.

25              MR. NESSER:  I would have thought that, at minimum, it

1  protects it from discovery in so far as it is relied upon,

2  citing, or quoting other parties' confidential materials.

3  But --

4          THE COURT:  We'll see.

5          MR. NESSER:  -- I recognize I've reached the end of my

6  road.

7          THE COURT:  All right.  We're stop -- we're stopping

8  now.

9          MR. NESSER:  And so I'll stop before I get cut off.

10         THE COURT:  We're stopping now.  Okay.

11         So Mr. Parish, you understand you need to confer with

12  Mr. Russell, and promptly resolve -- and I guess what I would

13  ask is that -- if you provide the Court with a status letter by

14  next Tuesday at 5 o'clock, that'd give you a week to get these

15  issues resolved.  That's going to -- that should resolve

16  everything other than the examiner submission issue.  Okay?

17         MR. RUSSELL:  Understood.  Thank you, Your Honor.

18         THE COURT:  Okay.  All right.  We're adjourned.

19         MR. NESSER:  Thank you, Your Honor.

20     (Whereupon these proceedings were concluded at 3:11 PM)

21

22

23

24

25

1

2                  C E R T I F I C A T I O N

3

4   I, Esther Accardi, certify that the foregoing transcript is a

5   true and accurate record of the proceedings.

6

7

8

9

10   _____

11   ESTHER ACCARDI

12   AAERT Certified Electronic Transcriber CET**D 485

13

14   eScribers

15   700 West 192nd Street, Suite #607

16   New York, NY 10040

17

18   Date:  April 20, 2016

19

20

21

22

23

24

25

12-12020-mg    Doc 9861    Filed 04/20/16    Entered 04/22/16 11:16:42    Main Document

RESIDENTIAL CAPITAL, LLC, et al.    Pg 49 of 56

Case No. 12-12020-mg    April 19, 2016

**A**

**ability (1)**
27:7
**Absolutely (2)**
15:18;18:20
**abstract (1)**
32:19
**accept (2)**
17:16;40:15
**accorded (1)**
46:1
**accused (1)**
17:24
**action (1)**
8:25
**actions (9)**
6:22;8:25;9:2;
23:21;25:16;26:15;
31:22;37:24;38:16
**active (1)**
15:12
**actually (4)**
5:21;14:12;40:7;
43:17
**add (3)**
27:19,22;35:19
**addition (1)**
14:21
**additional (1)**
35:17
**address (10)**
5:25;7:9;10:9;
12:17;13:25;18:25;
24:4,9;36:19;43:20
**addressed (2)**
13:24;43:20
**addresses (3)**
10:8;11:9;26:7
**addressing (2)**
10:16;11:10
**adjourned (1)**
47:18
**AFI (2)**
10:9;44:2
**afternoon (5)**
5:7,12,15,20;12:6
**again (2)**
26:12;39:25
**against (3)**
14:19;21:6;38:16
**agree (5)**
15:3;16:10;34:8;
45:4,4
**agreed (3)**
6:18;14:10,12
**agreement (37)**
6:10,23;7:11;9:17,
18,24;11:4;19:9;
24:16,18;25:11,11,
13,20;26:8,19;28:17;
29:7;30:21;32:21;

**33:6,7,8,9,11,23;**
**34:1;36:16;39:23;**
**40:10;41:8,10,12,13;**
**42:2,22;43:8**
**agreements (2)**
23:17;46:5
**ahead (5)**
12:13;17:22;
29:11,19;35:21
**AIG (1)**
36:11
**AIG's (1)**
32:11
**air (1)**
27:2
**Ally (62)**
4:3;5:5,13;6:11,
24;7:18;8:3,17;9:5,
15,20;10:5,14;11:6,
22;13:8,13,21,25;
14:2,11;15:4,12;
16:1,21;20:7;21:15;
24:6;25:15;26:5,7,
13;30:18;33:1,4,15,
17,20;36:10;38:3,5,
11,13,15,21;41:23;
42:12,15,18;43:3,18,
23;44:8,19,22;45:7,
8,18,19,21,23,24
**Ally's (10)**
17:7,17;26:4;32:8,
8,10;39:25;43:7,17;
46:15
**alternative (1)**
29:3
**always (4)**
35:9,24,25;46:17
**among (1)**
24:13
**analogous (1)**
36:21
**analysis (1)**
10:22
**apologize (3)**
12:10;34:4;36:9
**appearances (1)**
5:6
**appeared (1)**
31:18
**appears (2)**
27:3;28:19
**applicable (1)**
25:5
**applied (1)**
10:19
**applies (5)**
33:9;35:18;37:16;
44:19;45:1
**appropriate (1)**
6:22
**appropriately (1)**
17:18
**approval (2)**

**33:12,25**
**approved (4)**
22:11,12,13;32:21
**April (1)**
5:23
**area (1)**
8:12
**areas (2)**
14:11,18
**argue (2)**
8:3;36:3
**argued (5)**
9:22,23;13:17;
25:17,18
**argument (18)**
6:2,5,15,18;9:11,
23;12:17;32:17;
36:24;38:8;39:4,5,
18;41:7;42:24;
44:11;45:16;46:14
**arguments (5)**
10:16;11:10,22;
13:7;34:7
**aside (5)**
21:19;37:17,20,
23;38:13
**assert (1)**
23:25
**asserted (3)**
13:2;14:19;24:1
**assigned (1)**
9:8
**assistance (1)**
43:11
**assume (2)**
39:8;45:15
**Assuming (1)**
17:4
**attention (1)**
28:21
**attorney (7)**
8:14;10:15;20:8;
21:18;22:5;26:25;
30:8
**attorney- (1)**
22:7
**attorney-client (7)**
8:14;19:23;20:7;
21:18;22:4;23:8;
26:25
**Attorneys (1)**
4:3
**attorney's (1)**
8:1
**attorney's-eyes (1)**
35:6
**August (1)**
16:3
**automatically (1)**
40:17
**avoid (1)**
19:7
**aware (1)**

**23:18**
**away (1)**
8:5

**B**

**back (8)**
13:16;16:19;
22:10;23:2;40:2;
42:5;45:20,21
**backdoor (1)**
15:16
**bad (1)**
12:12
**bankruptcy (5)**
15:1;21:7;34:15,
19;39:14
**Bartlett (1)**
5:8
**based (1)**
30:16
**basically (1)**
8:4
**basis (2)**
24:17;26:13
**Bear (1)**
25:2
**become (1)**
29:4
**begin (1)**
5:21
**behalf (1)**
5:9
**behold (2)**
10:25;25:21
**belief (2)**
33:18;40:1
**beliefs (2)**
34:1,3
**below (1)**
42:9
**best (1)**
7:3
**bet (2)**
16:23,25
**better (3)**
7:17;24:6;26:4
**beyond (3)**
6:12;16:14,16
**big (1)**
11:12
**billion (1)**
15:13
**binding (1)**
25:12
**bit (1)**
8:12
**bite (1)**
13:16
**blind (1)**
13:15
**Boeing (1)**
45:5

**boils (1)**
34:7
**both (1)**
10:12
**breadth (2)**
13:9,20
**brief (4)**
6:7;13:7;31:25;
39:5
**briefing (1)**
27:10
**briefs (1)**
10:16
**bring (1)**
20:20
**broad (2)**
13:21;14:9
**built (1)**
25:1
**bunch (1)**
33:11
**business (2)**
21:8;38:3
**buying (1)**
32:17

**C**

**call (2)**
43:11;45:9
**came (1)**
20:19
**camera (6)**
9:16;10:4,21,23;
11:13;23:12
**Can (29)**
5:6;7:3,14;8:3;9:3,
5;12:19,21;13:23;
14:7,8;16:9,9;23:25;
24:22;26:6;30:1;
34:22,23;35:10;39:6,
16;40:22;43:11,11,
20,25;45:20,20
**Capital (1)**
5:3
**care (3)**
12:24,24;33:17
**careful (1)**
35:9
**carefully (1)**
31:16
**case (7)**
24:14;25:17;
29:16,21,22;38:7;
44:3
**cases (8)**
11:13;13:14,14,17,
18,18;14:24;23:4
**categories (1)**
7:24;19:6;35:17
**category (1)**
21:3;41:9
**certain (3)**

20:13;33:24;39:16
**certainly (6)**
    8:3;13:25;35:18;
    36:10;43:16;44:8
**certainty (1)**
    20:9
**chaff (1)**
    17:2
**chambers (1)**
    43:12
**chance (1)**
    11:16
**characterize (1)**
    10:14
**Circuit (1)**
    37:14
**Circuit's (1)**
    37:8
**circumstances (2)**
    37:9,16
**cited (3)**
    32:8;39:12;44:8
**cites (4)**
    32:11;36:4;37:14;
    43:23
**citing (1)**
    47:2
**claims (10)**
    14:4,19,20,22;
    16:13;17:15,18;
    18:10;21:16;22:19
**clarification (1)**
    18:19
**clarified (1)**
    23:5
**clarify (2)**
    17:21;21:22
**classic (1)**
    10:15
**clauses (1)**
    20:17
**clear (16)**
    6:20,25;7:8;12:14;
    15:24;16:1;18:4;
    22:6,23,25;25:21;
    28:20;30:20,23;
    31:25;44:15
**clearly (2)**
    19:16;30:9
**client (2)**
    22:8;26:3
**clients (1)**
    26:9
**client's (1)**
    24:5
**cliff (1)**
    40:3
**cloak (1)**
    32:25
**clock (2)**
    22:22,24
**Code (3)**
    21:7;34:15,19

**colleague (2)**
    5:9;15:11
**colleagues (2)**
    17:11;19:14
**comment (3)**
    11:25;12:22;37:6
**commented (1)**
    23:12
**comments (2)**
    6:1;7:10
**committee (1)**
    36:13
**committee's (2)**
    32:13,13
**companies (1)**
    17:7
**Company (1)**
    14:20
**compel (3)**
    5:4;6:15;19:18
**competent (2)**
    33:20;34:2
**completed (1)**
    23:21
**completely (1)**
    6:25
**compliance (2)**
    5:4;19:18
**complicated (1)**
    10:22
**complicating (1)**
    27:6
**con (1)**
    11:3
**concept (1)**
    34:16
**concern (1)**
    46:15
**concluded (1)**
    47:20
**conducting (1)**
    30:24
**confer (3)**
    19:10;43:8;47:11
**conference (1)**
    5:22
**confiden (1)**
    41:21
**confidential (71)**
    7:25;8:2,16,18,21;
    9:7;10:12,18,20;
    11:5,7;19:22,25;
    21:4,5;22:4,8;23:16;
    24:7,11,20,21,23;
    26:23;27:1,3,11;
    28:25;29:1,4,9,14,
    25;31:2;35:1,13,14,
    16,17;36:13;39:19;
    40:8,9,11,16,17,19,
    19,25;41:15,18,25;
    42:5,7,10,13,17,20;
    44:10,12,23;45:10,
    15,17;46:7,10,17,20,

22,23;47:2
**confidentiality (36)**
    6:10,23;7:11;9:17,
    18,24;11:3;13:2;
    19:9;23:17;24:16,
    18;25:20;26:8,15,18;
    28:17;29:7;30:21;
    32:20;33:6,7,8,16,
    23,25;34:17;36:16;
    39:23;40:10;41:7,10,
    12,13;42:1,22
**confirm (1)**
    9:3
**connected (1)**
    25:7
**connection (1)**
    5:4
**consent (1)**
    39:1
**consented (1)**
    39:1
**consider (1)**
    30:8
**considering (1)**
    5:23
**contain (2)**
    10:10;19:22
**contending (5)**
    29:12;37:21;38:3;
    41:5,6
**contends (1)**
    20:7
**context (1)**
    12:15
**continuing (1)**
    36:9
**Controlling (1)**
    25:11
**conversation (3)**
    6:7,13;7:2
**corner (1)**
    21:1
**cost (1)**
    14:25
**counsel (3)**
    28:19;29:15;43:8
**course (1)**
    35:23
**COURT (154)**
    5:2,11,14,18,21,
    23;6:4,6;7:7,14,17;
    9:12,14,19;11:20,21,
    24;12:2,5,8,10,13,
    21;13:11;14:7,15;
    15:3,8,19,22,25;
    16:2,5,8,20,23,25;
    17:3,5,10,14,22,25;
    18:1,3,6,8,14,17,21;
    19:2,12,17,21;20:1,
    4,11,14,16,23,25;
    21:24;22:13,13,25;
    23:17,18,18;24:21;
    25:1,4,6,8,9,14;

26:13,21;27:5,13,15,
19,22,25;28:4,6,8,12,
20;29:11,19,23;30:2,
5,10,19;31:5,9,15,
18;32:9,16,21,24;
33:8,12,17;34:11,14,
23;35:21,24;36:6,8,
23;37:4,17,20;38:2,
10,20,23;39:3,6,12,
24;40:5,15,24;41:16,
20,23;42:3,12,16,21;
43:1,11,24;44:6,18,
25;45:8,20,24;46:1,
3,6,12,20;47:4,7,10,
13,18
**Court's (4)**
    6:3;28:21;33:25;
    45:17
**cover (2)**
    27:14,17
**covered (2)**
    15:4;18:7
**covering (1)**
    41:8
**covers (3)**
    39:22,23;41:11
**crazy (1)**
    45:16
**create (1)**
    21:5
**created (1)**
    23:24
**custodial (1)**
    19:10
**cut (3)**
    16:9,9;47:9

## D

**damndest (1)**
    36:2
**Damocles (1)**
    40:4
**David (1)**
    5:9
**day (1)**
    15:13
**DB (1)**
    5:10
**DC (1)**
    4:5
**deadlines (3)**
    22:21;43:14,15
**deal (3)**
    13:1,3,3
**dealing (2)**
    19:2;27:9
**debtors (3)**
    43:25;44:1,2
**decide (2)**
    6:23;32:19
**deciding (1)**
    32:1

26:13,21;27:5,13,15,
19,22,25;28:4,6,8,12,
20;29:11,19,23;30:2,
5,10,19;31:5,9,15,
18;32:9,16,21,24;
33:8,12,17;34:11,14,
23;35:21,24;36:6,8,
23;37:4,17,20;38:2,
10,20,23;39:3,6,12,
24;40:5,15,24;41:16,
20,23;42:3,12,16,21;
43:1,11,24;44:6,18,
25;45:8,20,24;46:1,
3,6,12,20;47:4,7,10,
13,18
**decision (4)**
    16:4;37:7,8,15
**defendants (6)**
    5:10;8:24;13:10;
    14:25;41:6;44:15
**Defendant's (2)**
    15:20;27:9
**defense (1)**
    9:1
**defined (2)**
    17:18;42:9
**definition (2)**
    14:3;17:12
**degree (1)**
    19:7
**derive (1)**
    26:22
**derived (1)**
    34:17
**desi (1)**
    33:16
**designate (7)**
    26:23;27:1;29:24;
    31:2;34:22;40:22;
    42:13
**designated (22)**
    7:25;9:7;10:20,25;
    19:21,24;21:4;24:11,
    23;29:1,2,4;35:12,
    16;40:9,16,17;41:23,
    24;42:10,16;46:22
**designating (5)**
    8:20,20;10:10,11;
    24:21
**designation (18)**
    8:1,10;10:21;11:4;
    24:19;25:21;26:19;
    27:2,3,12;29:9,13,
    16;33:4,6;40:25;
    42:4;45:14
**designations (1)**
    44:24
**designed (2)**
    21:11;22:15
**determination (1)**
    35:10
**determine (1)**
    25:15
**different (2)**
    13:12;28:15
**direct (2)**
    28:21;29:16
**disagree (4)**
    7:20;33:14;44:22,
    25
**disagreements (1)**
    43:10
**disagrees (1)**
    42:23
**disclosed (2)**
    36:14;40:9
**disclosing (4)**
    29:1;35:12;42:9,

10

**disclosure (11)**
7:13;21:10;25:7,8,
12,15;31:8;38:16;
46:7,12,21

**disclosures (1)**
31:12

**discoverable (1)**
9:2

**discovery (18)**
6:21;19:15;21:10;
22:20;23:21;31:19,
20,22,23;34:20;35:2,
2;37:24;43:14,14;
44:16;46:24;47:1

**discuss (1)**
30:1

**discussed (1)**
6:9

**discussion (1)**
28:19

**discussions (1)**
24:13

**dispute (4)**
14:9;21:25;22:9;
34:23

**disputes (2)**
9:6;19:16

**doc (1)**
45:15

**document (22)**
7:23;10:15;20:25;
22:1;23:16;24:10;
27:15,16,18;29:3;
30:15;33:10;34:20;
35:15;41:5,5,8,15;
43:19;45:14;46:17,
20

**documents (62)**
6:15,25;7:18;8:10,
15,17,21,25;9:5;
11:4,25;13:4,8,9;
14:2;15:4;16:13,14;
17:6;18:11,15;19:6,
10,21,24;20:5;21:2,
23,24;22:2,7;23:6,9,
15;34:22;37:13,21,
23;38:6,11,13,17;
39:2,5,9;40:8,9,10,
12,12;41:9;42:4;
44:5,9,10,20;45:16,
23;46:1,8,9,14

**dollars (1)**
15:13

**done (5)**
31:20,23,24,24;
43:13

**doubt (1)**
44:4

**doubts (1)**
21:2

**down (3)**
23:4;34:7;42:24

**during (1)**
30:10

**E**

**earth (1)**
31:6

**easier (1)**
16:22

**Effect (2)**
25:11,12

**effective (1)**
26:8

**effort (1)**
22:18

**either (5)**
6:23;21:2;38:16;
40:23;44:15

**ELLIS (2)**
4:2;5:13

**else (9)**
21:4;22:22;27:19,
22;33:1;35:19;
44:21;45:7,9

**else's (2)**
45:3,10

**Emanuel (2)**
5:16;28:2

**emphasis (1)**
29:2

**enclosed (1)**
23:16

**end (2)**
15:13;47:5

**enforce (1)**
17:11

**engage (1)**
8:6

**enter (1)**
7:22

**entered (9)**
7:22;9:19;10:5;
11:2;21:12;22:11;
24:16,25;40:13

**entirely (1)**
25:21

**entirety (2)**
6:1;7:9

**entitled (1)**
32:2

**ESQ (1)**
4:7

**essence (1)**
14:23

**essentially (3)**
8:5;10:16;14:18

**evaluation (1)**
21:17

**even (3)**
19:5;26:22;29:3

**event (2)**
25:8;45:22

**everybody (3)**

10:24;11:11;22:25

**everyone (1)**
45:6

**Evidence (4)**
20:18,20;25:5;
35:11

**exact (2)**
14:3;34:16

**exactly (2)**
25:22;40:5

**examined (1)**
10:4

**examiner (48)**
6:2;7:13;8:11,18;
9:19;10:9;12:18;
13:9,24;14:14;16:15,
22;17:18;19:4,19;
20:6;21:19,23,25;
23:7,11;24:15;
26:16;27:8,10;
30:17;31:21;32:1,3;
36:11,17;37:3,22;
38:4,14,18,22;39:20;
41:11,14;43:3,3,5,6,
16,18;46:16;47:16

**examiner's (5)**
7:19;13:21,23;
24:17;29:17

**example (1)**
8:22

**exception (1)**
23:8

**exceptional (2)**
37:8,16

**exchanged (2)**
32:22;42:9

**exists (1)**
46:4

**expect (2)**
20:12;44:13

**expedite (2)**
22:16;35:5

**expert (6)**
23:22,23;31:20,21,
24;39:8

**explicitly (2)**
37:14,15

**expressed (1)**
6:8

**extent (2)**
18:10;36:5

**eyes (1)**
8:1

**F**

**face (3)**
22:6;30:15,21

**fact (6)**
23:6;31:23;34:25;
37:13;45:17,24

**failing (1)**
45:21

**failure (1)**
45:18

**fair (2)**
6:6;17:20

**faith (1)**
34:21

**fall (1)**
21:3

**falling (1)**
39:25

**famous (1)**
28:2

**far (2)**
9:9;47:1

**February (1)**
24:15

**Federal (4)**
20:18;25:6,9,12

**feel (1)**
8:7

**few (2)**
13:25;19:18

**FHLB (1)**
36:12

**FHLB's (1)**
32:12

**Fifteenth (1)**
4:4

**figure (1)**
16:11

**filed (2)**
12:17;15:20

**files (1)**
11:10

**filing (1)**
19:1

**Financial (3)**
4:3;5:5,13

**find (1)**
23:14

**firm (3)**
5:17;19:13;35:14

**first (11)**
10:1,24;11:16;
13:4,6;14:11;26:22;
31:11;34:18;35:15;
36:3

**fit (1)**
40:12

**five (2)**
14:13;36:11

**focus (1)**
29:14

**following (3)**
34:9,10;40:10

**form (2)**
22:12,15

**format (1)**
42:8

**former (1)**
15:11

**frame (1)**
7:14

**frankly (2)**
23:13;46:1

**fresh (1)**
13:1

**front (5)**
14:21,24;15:20;
21:14,15

**Funding (1)**
14:19

**further (2)**
27:4;36:18

**G**

**gain (5)**
23:6;26:24;33:10;
37:23;46:9

**gained (1)**
25:15

**gains (3)**
38:5,15,21

**Gallo (1)**
5:9

**gave (2)**
23:7;24:5

**generally (1)**
8:23

**given (3)**
8:10;19:11;42:9

**global (1)**
18:25

**Good (8)**
5:7,12,15,20;12:6;
18:3;31:9;34:21

**granted (1)**
35:3

**grants (1)**
33:24

**great (1)**
46:19

**guess (2)**
31:22;47:12

**H**

**hamstring (1)**
35:10

**handful (1)**
22:2

**handout (1)**
28:3,9;41:22

**handouts (1)**
28:14

**handwriting (1)**
12:12

**hanging (1)**
40:4

**happen (2)**
23:4;43:13

**happened (2)**
12:16;19:12

**happy (2)**
12:15;17:1

12-12020-mg    Doc 9861    Filed 04/20/16    Entered 04/22/16 11:16:42    Main Document
RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg                                    Pg 52 of 56
April 19, 2016

**Harris (5)**
    10:8;11:16;12:3;
    17:11;18:22
**head (1)**
    40:4
**hear (5)**
    6:19;11:15;12:2,
    14;23:20
**heard (3)**
    6:14;10:1;34:6
**hearing (6)**
    6:14,16;9:21;
    12:13;30:10;39:7
**heavily (1)**
    39:12
**held (1)**
    37:7
**helpful (1)**
    12:19
**helps (1)**
    17:15
**highly (24)**
    8:1,16,18;10:12,
    18,20;11:5,7;19:22,
    25;21:5;22:4,8;24:7;
    26:23;27:1,2,11;
    29:14,24;31:2;
    35:17;46:7,22
**history (1)**
    24:12
**hold (1)**
    18:12
**holds (1)**
    37:15
**hone (1)**
    8:12
**Honor (65)**
    5:7,12,15,20,23;
    7:10;9:10;11:18;
    12:4,6;14:10,17,21,
    24;15:18,21,23;
    16:18;18:20,23;
    19:5;20:22;21:22;
    22:23;27:24;28:2,10,
    16;29:12,20;30:16;
    31:1,6,12;32:5,7,7;
    33:3,15;34:4,7;
    35:22;36:20,22,25;
    37:1,11,25;38:9,25;
    39:17,18;40:13,13,
    20;41:6;42:23;
    43:22;44:3,23;45:11,
    13,16;47:17,19
**Honor's (2)**
    29:15;37:7
**hopefully (1)**
    7:3

**I**

**identified (2)**
    9:17;10:18
**identify (1)**

    11:7
**II (6)**
    28:22,23;34:7,11;
    35:11;41:22
**III (3)**
    28:22;29:6;34:8
**immediately (1)**
    40:2
**imposed (1)**
    22:21
**impress (1)**
    35:15
**imprimatur (2)**
    9:18;33:25
**in- (1)**
    9:15
**Inc (5)**
    4:3;5:5,10,10,13
**in-camera (1)**
    10:6
**include (3)**
    11:4;30:18;31:13
**included (1)**
    31:18
**including (3)**
    9:20;15:1;17:19
**incorporated (1)**
    25:13
**incurred (1)**
    15:1
**indemnification (1)**
    14:25
**indicate (1)**
    37:5
**indicated (1)**
    5:23
**indication (2)**
    27:11,13
**information (12)**
    21:6,8;28:25;29:5;
    34:25;35:1,19;42:7;
    44:12;45:3,10;46:8
**initial (1)**
    10:3
**inquiry (1)**
    34:2
**instance (1)**
    34:18
**instances (1)**
    35:4
**intend (1)**
    7:2
**interact (1)**
    28:18
**interest (2)**
    17:7,8
**interested (2)**
    14:12,18
**interrupt (1)**
    13:11
**into (9)**
    9:19;12:17;21:3,
    25;24:16;25:13;

    32:17;35:11;43:2
**involved (2)**
    13:14;44:14
**involving (1)**
    19:8
**Isaac (1)**
    5:15
**issue (11)**
    6:10,17;7:10,14;
    9:8;27:6;34:6;36:21,
    21;44:16;47:16
**issues (9)**
    7:17;11:9;13:13,
    22,23;16:16;19:8;
    22:18;47:15

**J**

**JASON (3)**
    4:7;5:12;12:6
**Johnson (1)**
    13:17
**JSN (1)**
    36:12
**JSN's (1)**
    32:12
**Judge (10)**
    5:24;6:7,17;7:2;
    9:7;15:12;21:12;
    22:21;23:1;38:17
**judges (1)**
    9:8

**K**

**kind (4)**
    14:11,20;21:1,12
**KIRKLAND (2)**
    4:2;5:13

**L**

**label (3)**
    22:3,3;32:3
**labeled (5)**
    8:16,18;10:18;
    22:7,8
**laid (1)**
    19:5
**language (4)**
    28:23;29:13;31:4;
    42:6
**last (7)**
    9:21;13:17;15:21;
    20:19;36:20;37:7;
    39:7
**later (1)**
    42:5
**laying (1)**
    11:11
**leading (2)**
    19:1;24:12
**least (7)**

    5:24;24:5;29:21;
    31:22;34:18;35:15;
    36:11
**leave (1)**
    17:10
**legal (1)**
    10:16
**legend (3)**
    10:10,11;23:15
**lengthy (1)**
    7:23
**Lepri (1)**
    5:17
**letter (4)**
    6:17;27:14,17;
    47:13
**liable (1)**
    18:12
**lift (2)**
    37:9,9
**limit (3)**
    6:1;7:10;16:10
**limited (3)**
    19:5,10;37:12,13
**limiting (1)**
    17:16
**Liquidating (1)**
    5:16
**listen (2)**
    35:25;36:1
**litigate (1)**
    34:20
**litigation (7)**
    14:4;16:17,17;
    25:7;38:6;39:13;
    44:7
**little (3)**
    7:15,17;8:11
**LLP (2)**
    4:2;5:8
**lo (2)**
    10:25;25:20
**long (1)**
    43:19
**look (7)**
    20:2;21:14;25:14;
    31:25;34:11;37:1;
    43:25
**looked (3)**
    20:11,12;30:11
**looking (3)**
    18:25;34:14,15
**looks (1)**
    30:11
**losing (1)**
    13:18
**lot (1)**
    13:22
**lots (1)**
    19:14
**loud (1)**
    12:14

**M**

**magically (1)**
    27:2
**magistrate (1)**
    9:7
**makes (3)**
    19:7;40:13;41:17
**making (9)**
    22:25;35:10;38:8;
    39:4,5,19;41:3;
    42:25;46:13
**man (1)**
    36:1
**many (2)**
    23:3;35:3
**mark (1)**
    40:22
**marked (7)**
    28:25;29:2,3;
    35:12;41:24;42:10;
    45:17
**material (2)**
    9:1;39:16
**materials (6)**
    7:13;14:14;16:6;
    23:16;31:13;47:2
**matter (5)**
    6:24;8:22;9:8;
    43:1;45:14
**matters (6)**
    6:8,17;19:15;35:5
**may (26)**
    5:22;6:5,25;9:23;
    14:3;15:8;19:7;21:6;
    24:12,14;25:6;26:8;
    27:10,17,17;29:4;
    30:3,7;34:25;35:2,
    20;43:25;44:3;
    45:24,24;46:22
**Maybe (2)**
    18:24;30:13
**MBIA (29)**
    6:15,24;9:21;10:2,
    12,23;11:5,10;23:13,
    15,19,21,22,25;
    25:17,23;26:2,6;
    29:21,21;30:3,5,7,
    17;31:15;36:6,8;
    43:17,22
**MBIA's (5)**
    11:9;32:7,12;39:1,
    2
**mean (15)**
    8:19;10:12;13:21,
    22;20:15;24:22;
    33:13,19;35:1,2;
    38:24;39:12;40:6,7;
    46:5
**meaning (2)**
    34:5;41:12
**means (2)**

28:25;43:5
**mediation (12)**
  15:5,10,17;16:7;
  17:19;18:7,12;
  21:19;36:22;37:2,9,
  13
**meet (2)**
  19:9;22:17
**meet-and-confer (2)**
  8:6;19:16
**memory (1)**
  45:5
**mentioned (3)**
  7:10;25:22;36:20
**merits (1)**
  14:20
**middle (1)**
  6:21
**might (3)**
  11:15;13:12;44:13
**mind (1)**
  13:3
**minimum (1)**
  46:25
**Minnesota (11)**
  6:22;8:25;9:4;
  13:14;14:5,23;
  16:16;25:16;26:15;
  28:14;43:15
**minute (1)**
  13:11
**mishearing (1)**
  12:11
**moment (1)**
  45:15
**months (2)**
  15:11;23:3
**more (4)**
  7:5;8:12;11:15;
  19:18
**MortgageIT (1)**
  5:10
**most (2)**
  7:23;28:19
**Mostly (2)**
  23:22;31:20
**motion (12)**
  5:4,24;6:1,14,15;
  7:9;8:6;12:16;15:20;
  19:1,17;27:9
**movants- (1)**
  5:9
**moving (1)**
  43:7
**much (5)**
  9:10;12:5,23;
  18:22;36:23

## N

**narrow (7)**
  8:6;14:1,11,13;
  18:9;41:8,8

**necessarily (1)**
  8:4
**necessary (1)**
  33:4
**need (6)**
  6:12;8:11;15:4;
  22:17,19;47:11
**needing (1)**
  43:11
**needs (3)**
  21:16;23:5;43:13
**negotiations (1)**
  16:11
**Nelson (9)**
  5:24;6:7,17;7:3;
  9:7;21:12;22:21;
  23:2;38:17
**NESSER (73)**
  5:15,15;9:21;
  20:19;23:20;25:17;
  27:25;28:2,5,7,9,13,
  16;29:12,20;30:1,3,
  7,13,20;31:6,11,17;
  32:5,10,23;33:3,13;
  34:4,12;35:20,22,25;
  36:2,7,9,25;37:5,19,
  25;38:8,19,21,25;
  39:11,15;40:2,6,20;
  41:4,19,21;42:1,11,
  15,18,23;43:21,22;
  44:3,8,23;45:4,13,
  22;46:4,7,11,13,25;
  47:5,9,19
**next (1)**
  47:14
**nicely (1)**
  35:24
**nine (1)**
  15:11
**nobody's (1)**
  23:1
**nondiscoverable (1)**
  8:22
**nonpublic (2)**
  35:1;42:7
**notice (2)**
  28:14;45:2
**notification (1)**
  45:19
**notified (3)**
  44:19;45:9,25
**notify (2)**
  45:6,18
**number (4)**
  28:23;36:18,19;
  40:21
**numbers (1)**
  44:7
**numeral (2)**
  29:6;41:22
**numerals (2)**
  28:21;34:7
**NW (1)**

4:4

## O

**object (2)**
  11:5;30:6
**objecting (2)**
  23:19;25:25
**objection (4)**
  24:2,17;28:9,11
**objective (1)**
  40:7
**obligation (1)**
  45:6
**observed (3)**
  29:21;31:12;32:7
**obtained (2)**
  44:9,10
**o'clock (1)**
  47:14
**off (2)**
  26:22;47:9
**offer (1)**
  30:3
**offered (1)**
  30:5
**one (25)**
  7:5;8:12;9:7;10:3,
  3,25;13:11;14:13;
  17:21;18:4;21:1,11;
  23:21;25:24;28:6,
  18;31:22,23;32:24;
  35:18;36:10,18;
  40:21;44:13;45:5
**only (18)**
  8:1;11:1;21:20;
  23:18;24:24;25:12,
  24;28:20;30:17,20;
  32:9,9;33:8;34:5;
  35:3,6;41:10;46:6
**opening (3)**
  11:9;36:6,8
**operate (1)**
  44:13
**operates (2)**
  24:19;26:19
**operating (1)**
  33:16
**opportunity (2)**
  36:15;44:14
**orally (1)**
  42:8
**order (91)**
  6:11,24;7:11,21,
  22;8:2,13,24;9:4,6,
  25;10:5,17,19,19;
  11:1,1,2,3,8;13:5;
  16:7,11,16;18:9,13;
  19:8;20:7,17;21:21;
  22:2,6,11,12,13,15;
  23:18,18,19;24:8,25;
  25:6,10,14,20;26:20,
  24,24;28:18,24;29:5,

10,17;30:16,21;31:4;
  32:14,18,25;33:16,
  22,24;35:3,4,7,17;
  36:16,22;37:9,10,16,
  22;38:5,15;39:21,22;
  40:7,8,14,18,21,22;
  41:17,19;44:19,21;
  45:1,1,18,24;46:18
**ordered (1)**
  9:15
**ordering (2)**
  26:1;35:5
**orders (7)**
  7:24;20:25;21:10;
  23:17;25:24;34:17,
  21
**ordinarily (1)**
  9:2
**others (2)**
  30:18;31:14
**Otherwise (3)**
  12:19;24:23;33:10
**ought (2)**
  36:14;45:14
**out (14)**
  10:2;11:11;16:11;
  17:11;19:5;20:21;
  22:20,22,24;26:17;
  27:2;34:24;35:7;
  38:10
**over (3)**
  36:10;40:4;46:9
**overbroad (1)**
  14:15
**overlap (1)**
  19:6
**own (3)**
  29:13;31:21;46:5

## P

**page (2)**
  35:15;37:15
**paper (24)**
  10:6,9,11,14;11:6,
  9;15:15;21:20;
  23:11;25:23;32:4;
  33:5,21;34:8;37:18,
  23;38:22,24;39:2,7;
  40:16;42:14,18,19
**papers (12)**
  8:20;9:17,22;
  10:13;11:12;23:13;
  25:18;26:2,18;29:8;
  32:22;41:7
**paragraph (5)**
  28:24;31:5;41:19,
  21;42:1
**Pardon (1)**
  27:21
**PARISH (39)**
  4:7;5:12,12;12:6,
  6,8,9,9,12,15;13:3,6;

14:7;18:22,23;19:4,
  20,24;20:3,9,12,15;
  22:23;24:10;26:11,
  17;27:4,6,14,17,21,
  24;33:15;34:6;39:4;
  40:24;45:8,11;47:11
**part (3)**
  5:24;21:11;39:9
**participate (1)**
  36:15
**particular (3)**
  8:12;22:1,2
**particularly (1)**
  14:12
**parties (26)**
  7:20;9:20;18:2;
  19:9;20:24;24:13,
  15;25:13;26:8;
  29:10,21;33:5,9,11;
  34:21;35:7,13;41:11,
  14;43:7;44:5,10,17;
  45:6,18,19
**parties' (4)**
  30:23;44:12;46:5;
  47:2
**partner (1)**
  15:12
**party (12)**
  8:23;25:11,16;
  29:1;30:17;31:13;
  32:2;42:9,10;43:11;
  44:20;45:2
**pause (3)**
  24:5;25:3;28:1;
  34:13
**Peck (1)**
  15:12
**pejoratively (1)**
  33:19
**pending (1)**
  25:7
**people (1)**
  44:11
**perceive (1)**
  28:17
**perhaps (1)**
  37:7
**period (3)**
  15:15;19:1;40:11
**permits (1)**
  20:24
**persuade (1)**
  24:22
**piece (3)**
  34:8;40:16;42:18
**pile (1)**
  11:12
**place (5)**
  9:4;26:15;33:22;
  35:4;43:14
**plaintiffs (1)**
  39:1
**Please (3)**

5:2,6;25:2

**plural (2)**
8:25;10:13

**PM (1)**
47:20

**point (8)**
8:20;17:21;27:20,
23;32:6;36:18,19;
40:18

**points (1)**
9:13

**portion (1)**
28:20

**posing (1)**
31:1

**position (7)**
12:25;24:16;26:1,
17;46:15,16,16

**possible (1)**
27:11

**post-hac (1)**
24:19

**practicalities (1)**
34:19

**practice (1)**
30:23

**pre (1)**
23:23

**precisely (1)**
41:13

**prejudge (1)**
35:23

**prejudging (1)**
8:19

**prejudice (1)**
46:19

**preliminaries (2)**
12:19,21

**prepared (2)**
14:1;28:16

**pre-petition (2)**
23:24;31:19

**presented (1)**
8:3

**preserve (3)**
22:4;24:23;31:3

**preserved (3)**
23:9;24:24;26:5

**preserving (1)**
8:14

**pressing (2)**
44:15,16

**pretty (1)**
9:10

**prior (2)**
28:14;44:7

**prioritize (1)**
16:11

**privilege (22)**
8:14;15:5,17;
17:19;19:23;20:8;
21:5,18,19;22:5;
23:8,9,25;24:1,24,

24;25:6;26:5,25;
35:18;37:2,3

**privileged (1)**
20:24

**probably (2)**
31:24;39:13

**problem (2)**
6:9;16:14

**procedures (2)**
19:15;34:22

**proceeding (1)**
25:12

**proceedings (2)**
21:15;47:20

**process (2)**
22:16;36:17

**produce (16)**
6:11,15,25;9:5,15;
10:6;13:13;15:4;
20:24;21:2,16;22:9;
26:6,14;38:6;42:4

**produced (27)**
7:18;8:11,17;10:2;
11:23;13:4,8;14:2,
14;16:15;20:6;
21:21;23:7,22,23;
33:21;37:21;38:3,11,
13,17;39:9,13;42:8;
43:9,9;44:5

**produces (1)**
9:5

**producing (3)**
24:3;25:25;38:4

**product (18)**
8:15;10:15,17,20;
19:23;20:8,25;
21:18;22:5;23:9;
26:5;27:1;30:8,12,
14;31:3;35:18;46:21

**production (23)**
7:19;8:7;11:6;
12:18;16:22;17:7,
17;19:5,10,19;20:15;
21:6,9,23,25;23:3,
19;26:2;27:10;30:6;
39:1;43:5;44:6

**productive (1)**
35:23

**Products (1)**
5:10

**prohibition (1)**
7:12

**promptly (4)**
22:18,20;43:8;
47:12

**propounded (1)**
13:10

**proprietary (3)**
21:8;34:25;42:7

**protect (6)**
6:24;10:19;15:14;
21:9;46:12,23

**protectable (2)**

34:18;35:2

**protected (11)**
6:11;16:7;18:12;
20:7;21:18;26:18;
33:11;45:3,10,24;
46:6

**protection (25)**
7:12,24;8:16;9:24;
20:18;21:6,13;23:6,
25;24:1;25:1,6,15;
26:25;32:3;33:10;
37:24;38:5,16,21;
45:25;46:4,9,21,23

**protections (1)**
33:24

**protective (80)**
6:11,24;7:11,21,
22,23;8:2,13,24;9:4,
6,25;10:17,19;11:1,
1,2,3,8;13:5;16:16;
19:8;20:6,17;21:10,
21;22:2,6,11,12,15;
23:19;24:8,25;25:10,
19,24;26:19,24;
28:18,24;29:5,10,17;
30:16,21;31:3;32:14,
18,25;33:22,24;
34:17,21;35:3,4,7,
16;36:16;37:9,16,22;
38:5,15;39:21,22;
40:7,8,14,18,21,22;
41:17,19;44:19,21,
25;45:1,18;46:18

**protects (3)**
21:9;44:21;47:1

**provide (5)**
7:12;20:18;35:6;
46:20;47:13

**provided (1)**
42:8

**provides (1)**
20:17

**provision (2)**
26:15;41:16

**provisions (6)**
8:13;25:5,10,14;
34:21;45:2

**public (1)**
21:9

**pull (1)**
27:2

**purport (1)**
11:7

**purpose (2)**
33:7;36:15

**purposes (1)**
29:2

**pursuant (13)**
7:19;9:5;13:4;
16:15;19:19;20:6;
21:21;23:7;32:21;
35:3;37:22;38:4,13

**put (7)**

12:10;15:12;21:1;
24:6;37:17,17,20

**putting (3)**
21:19;37:22;38:13

**Q**

**quickly (2)**
23:5;43:13

**Quinn (2)**
5:16;28:2

**quintessentially (1)**
30:11

**quite (1)**
13:25

**quoting (1)**
47:2

**R**

**raised (3)**
6:16;11:9;30:10

**raising (1)**
20:16

**rather (1)**
10:3

**reach (1)**
43:8

**reached (2)**
14:21;47:5

**read (6)**
11:14;13:22;
25:22;29:7;31:16;
40:12

**reading (1)**
42:24

**real (2)**
34:6,7

**really (5)**
7:9;12:12,24;20:4;
22:5

**reason (3)**
20:16;30:13;44:4

**reasonable (1)**
36:1

**reasonableness (3)**
15:2,9;21:17

**reasons (1)**
44:14

**recall (1)**
38:25

**received (4)**
10:23;31:14,19;
44:20

**receives (1)**
45:2

**recent (1)**
15:2

**recognize (1)**
47:5

**recognized (2)**
37:2,3

**records (1)**

38:3

**refer (3)**
6:8;36:11;43:18

**references (1)**
39:8

**referred (6)**
25:23;26:3,3;
43:20,24;44:1

**referring (4)**
5:24;6:17;42:6;
44:1

**refers (1)**
44:4

**reflected (2)**
29:7,18

**reframe (1)**
20:5

**regulating (1)**
6:21

**relate (2)**
14:4;16:13

**related (6)**
12:18;13:7;17:7;
18:11;22:19;24:17

**relates (3)**
13:13;21:16;22:10

**relating (1)**
17:17

**relevance (1)**
13:8

**relevant (4)**
9:1;17:8,15;34:1

**relied (1)**
47:1

**rely (2)**
23:22;31:20

**relying (2)**
41:17;42:21

**remain (2)**
29:8;42:20

**remaining (1)**
43:10

**remember (1)**
39:7

**remind (1)**
20:19

**repeating (1)**
34:5

**replete (1)**
39:8

**reply (10)**
10:4;11:10;24:4;
26:3,6;32:9,9;43:17,
20,22

**report (1)**
13:23

**reports (5)**
23:22,23;31:21,
24;39:8

**representation (1)**
17:16

**representing (1)**
8:24

**reproduce (1)**
    28:23
**request (10)**
    8:7;13:9;14:1,13;
    16:12;17:17;19:4,5;
    27:7,8
**requests (2)**
    14:13;44:16
**require (1)**
    19:16
**required (1)**
    26:14
**requires (6)**
    8:15;22:3;26:24;
    37:8;42:6,6
**requiring (3)**
    10:5;43:7;45:2
**ResCap (5)**
    5:16;19:14;32:3;
    43:18,24
**Residential (2)**
    5:3;14:19
**resolve (5)**
    9:8;22:18;43:10;
    47:12,15
**resolved (2)**
    36:22;47:15
**respect (8)**
    23:20;31:15;
    33:14;36:22;43:3,4,
    16;46:14
**respectfully (1)**
    40:20
**respond (3)**
    8:3;27:7;30:25
**responded (1)**
    11:17
**responding (1)**
    19:17
**response (1)**
    27:4
**responses (1)**
    40:20
**responsibility (1)**
    44:22
**responsive (1)**
    37:6
**result (1)**
    15:13
**retain (1)**
    6:10
**review (5)**
    9:16;10:6;23:12;
    26:9;30:17
**reviewed (2)**
    10:7,21
**reviewing (1)**
    10:5
**RFC (4)**
    5:16;14:24;17:8;
    18:11
**right (18)**
    9:9,12,14;12:20;

16:5,8;18:8,17,20,
21;22:11;27:25;
34:14;37:4;39:3;
43:1;47:7,18
**RMBS (9)**
    13:13;14:4,19;
    16:13;17:15,18;
    18:10;21:16;22:19
**road (1)**
    47:6
**Roman (7)**
    28:21,23;29:6;
    34:7,11;35:11;41:21
**rule (3)**
    12:25;13:15;25:4
**ruled (1)**
    15:23
**Rules (3)**
    20:18,20;25:4
**ruling (1)**
    15:23
**run (3)**
    22:22,24;28:16
**RUSSELL (56)**
    5:7,8,19,20;6:5;
    7:5,8,16;9:10,13;
    11:15,18,21,25;12:4,
    5,22;13:12;14:6,10,
    16;15:7,18,20,23;
    16:1,3,6,18,21,24;
    17:1,4,6,13,21,23;
    18:1,4,7,9,15,19,22;
    20:22,23;21:22;22:1,
    17;28:4,6,8,10,13;
    47:12,17
**Russell's (1)**
    26:9

# S

**same (4)**
    25:22;34:16;
    39:25;44:11
**sandbagging (1)**
    18:1
**saw (3)**
    26:2;43:17,17
**saying (3)**
    16:12;17:14;46:23
**scope (1)**
    13:23
**scrap (2)**
    15:15;42:14
**seated (1)**
    5:2
**SEC (1)**
    37:14
**second (3)**
    13:7;37:7,14
**Section (1)**
    21:7
**seek (1)**
    43:8

**seeking (8)**
    9:1;13:20;14:25;
    15:8;16:6,14;18:5,10
**seem (1)**
    29:16
**seemed (1)**
    10:24
**seems (1)**
    18:24
**sense (4)**
    11:15,19;19:7;
    40:13
**separate (5)**
    9:16;32:20;33:23;
    38:10;42:21
**separately (1)**
    39:17
**series (1)**
    30:25
**seriously (1)**
    37:20
**set (2)**
    13:6;26:17
**settlement (7)**
    14:21,22;15:1,2,
    10;18:11;21:17
**shall (4)**
    29:8,8;42:19,20
**shielded (1)**
    36:18
**shorthand (1)**
    14:2
**shorthanded (1)**
    22:19
**shorthanding (1)**
    17:14
**Show (3)**
    41:16,23;42:12
**showing (1)**
    28:9
**sic (3)**
    11:16;12:3;17:11
**sign (3)**
    22:14,14;33:11
**signed (1)**
    42:18
**simple (1)**
    22:5
**simply (3)**
    16:21;35:5;46:9
**Simpson (1)**
    5:8
**single (4)**
    22:14,14;34:20;
    42:14
**sit (1)**
    42:24
**six (1)**
    15:11
**skip (2)**
    12:19,21
**slowing (1)**
    23:3

**somebody (2)**
    34:23;44:21
**somewhat (1)**
    10:22
**soon (1)**
    15:9
**sorry (3)**
    26:11;33:19;36:7
**sort (7)**
    7:12;12:16,19,22;
    17:11;18:24;24:19
**sorting (1)**
    17:1
**sought (2)**
    8:16;32:25
**speaking (1)**
    8:23
**specific (3)**
    10:11;12:17;14:13
**specifically (8)**
    10:9;11:8;15:5;
    20:1,4;24:18;27:8;
    35:12
**springing (1)**
    28:13
**stage (1)**
    8:9
**stamp (3)**
    30:18;35:14;40:19
**stand (2)**
    19:17;31:7
**standard (1)**
    37:12
**standing (3)**
    32:6,13;43:23
**state (1)**
    25:9
**stated (2)**
    42:19,19
**statement (2)**
    17:20;41:13
**statements (1)**
    33:18
**states (3)**
    28:24;29:8;30:15
**status (2)**
    5:25;47:13
**stay (1)**
    14:7
**steering (2)**
    32:13;36:13
**step (1)**
    16:19
**stepped (1)**
    40:2
**still (3)**
    23:3;29:4;45:23
**stonewalled (3)**
    8:4,8;12:23
**stood (1)**
    29:15
**stop (3)**
    41:1;47:7,9

**stopping (2)**
    47:7,10
**Street (1)**
    4:4
**strength (1)**
    14:20
**strip (2)**
    45:25;46:2
**Structure (1)**
    5:10
**stuff (1)**
    32:18
**subject (24)**
    7:21;9:25;11:1,8;
    17:19;21:7;23:16,
    24;24:7;25:18,19,23;
    26:14;29:17;30:15;
    31:8;32:14,17,18;
    38:4,14;39:20;
    45:17;46:18
**subjective (5)**
    33:18;34:1,3;40:1,
    6
**submission (68)**
    9:16,17;10:6,9,11,
    13,14;11:6;12:1;
    17:17;21:20;23:11,
    13,23;24:5,6,18,19;
    25:19,23;26:2,4,7,
    16;27:8;29:8,24;
    30:8,17;32:2,3,8,8,
    11,12,12,12,13,14,
    22;33:21;36:6,8,10;
    37:18,23;38:22,23;
    39:2,19;40:25;41:24,
    24;42:13,16,19;43:2,
    2,3,4,4,6,16,23,24;
    44:8;46:17;47:16
**submissions (15)**
    6:2;9:23;10:2,23;
    29:13,17;31:13,21;
    36:4,4,11,14;41:11,
    14;43:18
**submitted (3)**
    9:22;11:13;39:10
**submitting (2)**
    31:13;32:24
**subpoena (11)**
    5:5;7:19;13:5,21;
    19:19;23:7;38:4,14;
    44:20;45:3,9
**substantially (1)**
    15:15
**suddenly (1)**
    37:23
**sue (1)**
    45:21
**suggested (1)**
    33:15
**suggesting (1)**
    33:14
**suggestion (1)**
    19:3

**suing (1)**
14:25
**summarized (2)**
9:10;11:22
**supplemental (1)**
13:7
**suppose (1)**
45:22
**supposed (1)**
30:22
**sure (13)**
5:25;7:7,16;14:6,
16,16;16:18;17:3,13;
21:12;23:20;26:12;
28:4
**surprise (1)**
10:23
**sword (1)**
40:3

**T**

**table (1)**
13:6
**talk (1)**
12:15
**talking (5)**
10:25;21:20,23,
24;32:11
**telephone (2)**
5:22;43:12
**Teligent (4)**
37:8,11,12,13
**telling (3)**
14:1;32:19;39:25
**term (3)**
8:4,5;12:23
**terms (4)**
23:17;35:7;37:11,
12
**test (1)**
37:16
**Thacher (1)**
5:8
**thanks (2)**
18:18,21
**that'd (1)**
47:14
**that've (1)**
16:15
**thereafter (1)**
22:14
**thereby (1)**
29:4
**therefore (1)**
31:2
**TheStreetcom (1)**
37:14
**thicket (1)**
19:8
**third-party (2)**
38:6,16
**though (2)**

**thought (3)**
34:5;45:5;46:25
**throughout (1)**
39:13
**today (9)**
6:1,14,20;12:25;
19:2;31:1;32:1,11;
37:6
**today's (1)**
29:2
**together (1)**
40:12
**told (4)**
6:8;14:11;37:1;
40:15
**Tom (1)**
5:17
**total (1)**
20:15
**traction (2)**
36:23,25
**transcript (1)**
35:6
**trap (1)**
39:25
**treated (1)**
24:14
**tried (1)**
8:6
**trip (1)**
36:10
**troubled (1)**
38:23
**Trust (2)**
5:16;9:22
**try (5)**
22:20,22;24:22;
36:2,2
**trying (11)**
15:16,16;17:12;
18:11;22:23;32:6,7;
36:3;37:25;38:10;
44:11
**Tuesday (1)**
47:14
**turn (2)**
29:6;36:4
**turned (1)**
10:2
**two (15)**
10:3,13,24;21:15;
23:15,16;25:5,14;
26:3;31:22;35:20;
36:19;40:20;43:18,
19
**typical (1)**
16:10

**U**

**ultimately (1)**
34:6

**Um-hum (2)**
31:17;32:23
**under (13)**
8:2,13;10:17;13:5;
26:19;29:5,9;31:3;
34:18;43:2,4;44:18,
21
**underlying (3)**
39:2,5;46:14
**understood (7)**
26:12;29:22;
33:15;39:20,21,24;
47:17
**uniform (29)**
7:21;8:2,13,23;
9:25;10:17,19;11:2,
8;13:5;16:15;20:6,
17;21:21;22:10,12;
23:18;24:8;25:9,19;
26:24;32:25;33:22,
23;37:22;38:5,15;
44:19;45:1
**unless (1)**
25:13
**unlike (1)**
23:13
**unnecessary (1)**
6:5
**up (11)**
6:3;13:16;14:7;
15:12;19:1,17;
20:19;24:12;29:15;
31:7;41:3
**upon (1)**
47:1
**used (2)**
22:15;28:13
**usually (1)**
35:7

**V**

**various (4)**
7:24;9:20;44:5,9
**view (11)**
13:12;23:24;
24:22;26:10;29:9;
30:3,5;34:17;36:21;
44:23;46:7
**virtue (1)**
46:4

**W**

**waived (2)**
23:10;25:7
**waiver (1)**
25:9
**waiving (2)**
20:25;30:14
**wants (3)**
16:21;34:23;35:16
**Washington (1)**

4:5
**way (4)**
18:24,25;22:15;
44:13
**week (3)**
7:3;35:8;47:14
**what's (9)**
12:1;13:20;14:23;
15:14;19:3;26:7,9;
34:18;40:17
**whatsoever (2)**
27:3;36:25
**wheat (1)**
17:2
**Whereupon (1)**
47:20
**whole (2)**
34:16;40:18
**William (1)**
5:7
**willing (1)**
36:1
**willingness (1)**
6:8
**wish (1)**
27:22
**withdraw (1)**
16:12
**within (4)**
21:23,25;32:25;
35:8
**without (2)**
20:25;42:4
**wording (1)**
34:16
**work (22)**
8:14;10:15,16,19;
17:1;19:23;20:8,24;
21:18;22:5;23:8;
26:5,25;30:8,11,14,
22;31:3;34:24;35:7,
18;46:21
**worked (1)**
22:20
**write (1)**
17:12
**writing (1)**
42:8
**written (5)**
12:1;15:6;24:25;
31:25;35:4

**Y**

**year (2)**
15:21;37:7

**1**

**1 (5)**
5:23;28:24;41:19,
21;42:1
**107b (3)**

21:7;34:15,19
**12-12020 (1)**
5:3

**2**

**2.1 (1)**
15:13
**20005 (1)**
4:5
**2001 (1)**
37:14
**2013 (1)**
24:15
**229 (1)**
37:15
**25 (1)**
31:5
**28th (1)**
16:3

**3**

**3:11 (1)**
47:20

**5**

**5 (1)**
47:14
**502d (5)**
20:22,23,24;25:4,5
**502e (1)**
25:10
**503 (1)**
20:19

**6**

**655 (1)**
4:4