1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 12-12020-mg

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  RESIDENTIAL CAPITAL, LLC, et al.,

9

10            Debtors.

11

12  - - - - - - - - - - - - - - - - - - - -x

13

14            United States Bankruptcy Court

15            One Bowling Green

16            New York, New York

17

18            October 8, 2015

19            10:01 AM

20

21  B E F O R E:

22  HON. MARTIN GLENN

23  U.S. BANKRUPTCY JUDGE

24

25

1

2  Status conference re: claim of Rhonda Gosselin.

3

4  Hearing re: motion of the ResCap Liquidating Trust for an order

5  enforcing plan injunction and confirmation order. (CC: Doc#

6  8947, 8948, 8949,9078,9079, 9082, 9083, 9084, 9086).

7

8

9

10

11

12

13

14

15

16

17

18

19

20  Transcribed by:  David Rutt

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

1

2  A P P E A R A N C E S:

3  QUINN EMANUEL URQUHART & SULLIVAN, LLP

4        Attorneys for ResCap Liquidating Trust

5        805 South Figueroa Street

6        10th Floor

7        Los Angeles, CA 90017

8

9  BY:   MATTHEW R. SCHECK, ESQ.

10

11

12  QUINN EMANUEL URQUHART & SULLIVAN, LLP

13        Attorneys for ResCap Liquidating Trust

14        51 Madison Avenue

15        22nd Floor

16        New York, NY 10010

17

18  BY:   ISAAC NESSER, ESQ.

19

20

21

22

23

24

25

4

```
 1
 2    CARPENTER LIPPS & LELAND LLP
 3          Special Litigation Counsel for the Debtors
 4          280 N. High Street
 5          Suite 1300
 6          Columbus, OH 43215
 7
 8    BY:   JEFFREY A. LIPPS, ESQ.
 9
10
11    ALSTON & BIRD LLP
12          Attorneys for Wells Fargo Bank
13          90 Park Avenue
14          New York, NY 10016
15
16    BY:   JOHN P. DOHERTY, ESQ.
17
18
19    ANASTASI JELLUM, P.A.
20          Attorneys for Honor Bank, f/k/a/ The Honor Bank
21          14985 60th Street North
22          Stillwater, MN 55082
23
24    BY:   T. CHRIS STEWART, ESQ.
25
```

```
 1
 2   COZEN O'CONNOR
 3        Attorneys for Sierra Pacific Mortgage Co., Inc.
 4        277 Park Avenue
 5        New York, NY 10172
 6
 7   BY:   FREDERICK E. SCHMIDT, ESQ.
 8
 9
10   JENKINS KAYAYAN LLP
11        Attorneys for Sierra Pacific Mortgage Company, Inc.
12        444 S. Flower Street
13        Suite 1530
14        Los Angeles, CA 90071
15
16   BY:   JONATHAN M. JENKINS, ESQ. (TELEPHONICALLY)
17
18
19   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP & AFFILIATES
20        Attorneys for UBS Real Estate Securities, Inc.
21        4 Times Square
22        New York, NY 10036
23
24   BY:   ALEXANDER C. DRYLEWSKI, ESQ.
25
```

1

2   WILLIAMS & CONNOLLY, LLP

3          Attorneys for Decision One Mortgage Company, LLC

4          725 12th Street NW

5          Washington, DC 20005

6

7   BY:   DAVID S. BLATT, ESQ.

8          MATTHEW V. JOHNSON, ESQ.

9

10

11  WROBEL SCHATZ & FOX LLP

12         Attorneys for PHH Mortgage

13         1040 Avenue of the Americas

14         New York, NY 10001,

15

16  BY:   DANIEL F. MARKHAM, ESQ.

17

18

19

20

21

22

23

24

25

RESIDENTIAL CAPITAL, LLC, et al.                                7

1                     P R O C E E D I N G S

2              THE CLERK:  All rise.

3              THE COURT:  All right, please be seated.  Good

4    morning, everybody.  We're going to take first Residential

5    Capital, 12-12020.  We're going to hear first the status

6    conference regarding the Rhonda Gosselin claim.  Who's going to

7    argue for the trust?

8              No one?

9              Is anyone on the telephone for Rhonda Gosselin?

10             THE COURTCALL OPERATOR:  And that live attorney has

11   not dialed in yet, Your Honor.

12             THE COURT:  Okay.  Don't know why.  No one's here on

13   behalf of the ResCap Borrowers' Trust?

14             I don't understand it.

15             Okay.  Let's go on to the ResCap Liquidating Trust's

16   motion for an order enforcing the plan injunction and

17   confirmation order.  Yeah, I guess I have the list of

18   appearances in front of me, so we'll just begin.

19             MR. SCHECK:  Good morning, Your Honor.  Matthew Scheck

20   from Quinn Emanuel, on behalf of the ResCap Liquidating Trust.

21             THE COURT:  Okay.

22             MR. SCHECK:  And this is the trust's motion to enforce

23   the bar-date order, the plan injunction and the confirmation

24   order, to enjoin certain claims being asserted by Decision One,

25   PHH, Honor Bank, and Sierra Pacific, against RFC and the trust,

RESIDENTIAL CAPITAL, LLC, et al.                                    8

1   in Minnesota District Court.

2          As Your Honor knows, these bankruptcy cases are

3   complex and involve thousands of creditors and claims.  The

4   debtors in this court established a process for creditors to

5   assert their claims against the debtors, and all creditors

6   holding a claim were subject to that same process and the same

7   rules.  The holder of any claim against a debtor, including

8   contingent and unmatured claims, was required to file a proof

9   of claim to assert and preserve its rights.

10         It is undisputed that under that process, claimants

11  received notice at every step of these bankruptcy cases,

12  including notice of the bankruptcy filing, the bar date, the

13  disclosure statement, the plan, and the confirmation hearing.

14  It is also undisputed the claimants did nothing in response:

15  they did not file proofs of claim; they did not object to

16  confirmation of the plan.  And to the extent the claimants are

17  arguing that the pre-petition contracts they claim RFC breached

18  are executory contracts, those contracts were rejected by the

19  plan and claimants did not file any claim for rejection

20  damages.

21         THE COURT:  What's your position with respect to

22  whether those contracts were executory contracts?

23         MR. SCHECK:  I'm sorry, Your Honor?

24         THE COURT:  What is your position with respect to

25  whether those contracts were executory contracts?

1          MR. SCHECK:  We do not -- we certainly don't concede

2     that they were executory --

3          THE COURT:  Could you tell me what your position is,

4     whether your position is that they were executory contracts?

5          MR. SCHECK:  Our position is that they were not

6     executory contracts but, to the extent that they were, they

7     were rejected by the plan.

8          THE COURT:  Go ahead.

9          MR. SCHECK:  Your Honor, Claimants are sophisticated

10    financial institutions; they sold more than eleven billion

11    dollars in loans to RFC, pursuant to the very pre-petition

12    contracts they are now suing on.  Decision One itself sold

13    nearly 8 billion dollars in loans, and none of the claimants

14    sold less than 190 million dollars in loans.

15         THE COURT:  Can you tell me whether the debtors or the

16    trust pre-confirmation served demand letters on any of these

17    four defendants, with respect to alleged breaches of

18    representations and warranties or indemnification?

19         MR. SCHECK:  I do not know whether demand letters were

20    served, and that is something that's ongoing in discovery, in

21    terms of which notices were served, repurchase requests, and

22    communications between the parties.  But I do not, standing

23    here today, know whether the debtors pre-confirmation served

24    demand notices.

25         THE COURT:  Were repurchase requests served on these

1  four defendants pre-confirmation?

2          MR. SCHECK:  With respect to the loans that are the

3  subject of this lawsuit?

4          THE COURT:  Yes.

5          MR. SCHECK:  There may have been some repurchase

6  requests --

7          THE COURT:  Do you know whether --

8          MR. SCHECK:  -- but I don't know one way or another.

9          THE COURT:  Have you tried to find out?

10         MR. SCHECK:  Whether re --

11         THE COURT:  Yes.  Do you know, with respect to the

12  loans that are in suit in Minnesota for these four defendants,

13  whether the debtors served repurchase demands on the defendants

14  pre-confirmation?

15         MR. SCHECK:  No, Your Honor, the only thing that we

16  know is that the loans -- there are losses on those loans

17  outstanding that weren't --

18         THE COURT:  Have you --

19         MR. SCHECK:  -- repurchased.

20         THE COURT:  -- investigated whether any demands were

21  served on these four defendants, with respect to the loans in

22  suit, pre-confirmation?

23         MR. SCHECK:  That investigation is ongoing, but we

24  don't know the answer as we stand here today.

25         THE COURT:  So there is an investigation ongoing and

1  so far you have not found evidence of any demand on these four

2  defendants, with respect to the loans in suit, is that correct?

3          MR. SCHECK:  Well, that's part of the ongoing --

4          THE COURT:  Could you answer my question?

5          MR. SCHECK:  -- discovery, so that is -- that is

6  correct, Your Honor.

7          THE COURT:  Okay.  Go ahead.

8          MR. SCHECK:  Your Honor, Claimants are not

9  unsuspecting tort victims or unknown creditors that did not

10 receive any of the notices in these bankruptcy cases.  And it's

11 not unreasonable to require or expect claimants to file proofs

12 of claim asserting their rights under pre-petition contracts,

13 including contingent claims.

14         THE COURT:  Well, look, let's get down to the issues

15 that are squarely raised here.  First let me ask, with respect

16 to these four defendants, with respect to which defendants did

17 the contracts with RFC include prevailing-party attorney's-fee

18 clauses?

19         MR. SCHECK:  Decision One.  With respect to Decision

20 One, there was a prevailing-party attorney's-fee clause.  And I

21 believe, with respect to Sierra Pacific, there was a

22 prevailing-party's attorney's-fee clause under the settlement

23 agreement, which is the pre-petition contract at issue.

24         THE COURT:  And what about as to the other two

25 defendants?

1          MR. SCHECK:  As to the other two defendants, they are

2     only asserting claims for breach of contract and they are

3     asserting attorney's fees as damages.

4          THE COURT:  So then as to the other two defendants,

5     you know of no prevailing-party attorney's-fee clause in any of

6     their contracts, is that correct?

7          MR. SCHECK:  I do not, and they have not asserted any.

8          THE COURT:  Okay.  Go ahead.

9          MR. SCHECK:  Your Honor, claimants cannot dispute that

10    the bar-date order, the plan and the confirmation order are

11    binding on them and that they expressly bar any claims arising

12    prior to the effective date.  Instead, claimants argue that

13    their claims are not pre-petition claims but, rather, arose

14    after the effective date.  But that is incorrect as a matter of

15    well-established Second Circuit law.

16         THE COURT:  Well, let me ask you about that.  So let

17    me refer to --

18         MR. JENKINS:  Pardon me.  It's -- Your Honor,

19    apologies.  Jonathan Jenkins appearing via CourtCall, on behalf

20    of Sierra Pacific.  The CourtCall operator just instructed me

21    to state my appearance on the record.

22         THE COURT:  All right.

23         MR. JENKINS:  I apologize for the interruption.

24         THE COURT:  Thank you.

25         All right, Mr. Scheck, I want to ask you about Judge

1    Hardin's decision in Texaco, 254 B.R. 536 (Bankr. S.D.N.Y.
2    2000).  At page 559 Judge Hardin states the following:  "It is
3    not surprising that no court has ever held that future claims
4    for possible future breaches of contract constitute 'claims'
5    under Section 101(5) that must be filed pre-confirmation.
6    Neither Sanders nor Chateaugay nor any of the other decisions
7    relied upon by Texaco involved discharge of a future contract
8    claim.  Indeed, this Court expressly declined to rule on
9    contract claims in Sanders."  I'll leave out the cites.  "See
10   also, this Court's analysis in Wolverine," I'll leave out the
11   cite, "which held that post-confirmation pricing claims were
12   not barred, even though based upon the same allegedly erroneous
13   pricing formula that Texaco had established pre-confirmation.

14           "Simply stated, the basic rule is that claims arising
15   after confirmation from a contractual relationship are not
16   barred by a confirmation order.  It is only where the liability
17   asserted in a claim is based upon a breach of contract that
18   occurred before confirmation that the claim must be filed in
19   the bankruptcy.  Potential claims for liabilities for breach of
20   obligations which might occur after confirmation cannot be
21   filed before confirmation even if they could be anticipated."

22           Why doesn't that decision from one of my former
23   colleagues in the Texaco case apply equally in the
24   circumstances of this case?

25           MR. SCHECK:  Your Honor, in that case the contracts

1  were neither assumed nor rejected, and Judge Hardin

2  specifically held that they rode through the bankruptcy.

3          THE COURT:  Well, he has a lengthy discussion about

4  assumption, rejection, and the contracts riding through

5  bankruptcy.  But it seemed to me -- well, let me put it this

6  way, and I'm going to certainly ask the other side about this:

7  it did not appear to me that the discussion that I just quoted,

8  at page 559, depended upon whether the contracts were executory

9  or not, the point being that if the liability asserted in a

10  claim is based upon a breach of contract that occurred before

11  confirmation, it needs to be filed in the bankruptcy; and if it

12  arises from a breach after confirmation, it can't be filed in

13  the bankruptcy.  And it would follow that that post-

14  confirmation breach wouldn't be discharged.  Why is that wrong?

15          MR. SCHECK:  Well, Your Honor, it really had to have

16  been based on the fact that the contracts were in fact assumed

17  and the parties were operating under those contracts, because

18  otherwise it is inconsistent with Second Circuit law that came

19  prior to it and after.  In fact, the Bradlees Stores decision

20  held, and this is an exact quote, "[T]he Second Circuit

21  recognizes that contract-based claims are deemed to arise at

22  the time the contract is executed, and therefore a post-

23  petition breach of a pre-petition contract gives rise solely to

24  a pre-petition claim."  That's an exact quote from the Bradlees

25  Store decision from the Southern District of New York, in our

1  reply.

2          And, Your Honor, that makes sense because at the very

3  moment that RFC and the claimants executed the contract, that

4  gave rise to certain rights to payment.  And one of those

5  rights to payment was a contingent right to payment that was

6  contingent upon the other party --

7          THE COURT:  So --

8          MR. SCHECK:  -- breaching.

9          THE COURT:  -- you expect -- if a contract -- let's

10  just focus on a contract that has a prevailing-party

11  attorney's-fee clause.  No litigation has been commenced pre-

12  confirmation, and your position is that while a debtor

13  successor can sue for breach of that contract, the prevailing-

14  party attorney's-fee clause is -- any obligation from that is

15  discharged?

16          MR. SCHECK:  Yes, Your Honor --

17          THE COURT:  Is that your position?

18          MR. SCHECK:  -- it is discharged --

19          THE COURT:  You have any case -- there's no case --

20  would you agree there's no case in the Second Circuit -- from

21  the Second Circuit, district court, or a bankruptcy court in

22  the Second Circuit, that's held that a prevailing-party

23  attorney's-fee clause in a pre-petition contract is dischar --

24  the obligation from that is discharged, where the debtor

25  successor, here the trust, brings a post-confirmation action?

RESIDENTIAL CAPITAL, LLC, et al.                    16

1   There is no case in the Second Circuit, do you agree?

2          MR. SCHECK:  Your Honor, there's no case going either

3   way in the Second Circuit --

4          THE COURT:  Okay.

5          MR. SCHECK:  -- that's clear.

6          THE COURT:  But there is in the Ninth Circuit and the

7   Seventh Circuit?

8          MR. SCHECK:  That's correct, but the Second Circuit

9   cases are very clear that the rule is that any contractual

10  claim arising out of a pre-petition contract was a contingent

11  claim --

12         THE COURT:  None of those cases --

13         MR. SCHECK:  -- at the time it was executed.

14         THE COURT:  -- involved any circumstance similar to

15  the one that's posited here, correct?

16         MR. SCHECK:  Well, Your Honor, it all --

17         THE COURT:  Yes or no?

18         MR. SCHECK:  It depends whether you're talking about a

19  breach or a prevailing-parties clause.  With respect to --

20         THE COURT:  I'm focusing right now --

21         MR. SCHECK:  Okay.

22         THE COURT:  -- on the prevailing-party attorney's-fee

23  clause.

24         MR. SCHECK:  None of those cases address prevailing-

25  parties' attorney's-fee clause, but I would submit --

1        THE COURT:  Nothing even close to a prevailing-party

2   attorney's-fee clause.  You want to be able to bring suit,

3   which you did, post-confirmation, based on a contract that

4   contained a prevailing-party attorney's-fee clause, and say,

5   well, that's too bad, we can sue, if they win it's too bad,

6   they can't recover their attorney's fees.  That's your

7   position?  That's not the position one of your partners took in

8   Minnesota, is that correct?

9        MR. SCHECK:  Well, no, one of the partners in

10  Minnesota -- I think you're referring to Mr. Calamari in a --

11       THE COURT:  I am.

12       MR. SCHECK:  -- transcript.  And all he said was that

13  the trust had the funds necessary if attorney's fees were

14  awarded, but not that it would not have potential defenses,

15  including under the Bankruptcy Code, to any such claim.

16       THE COURT:  So you think that I'm bound by -- which

17  decision in the Second Circuit do you believe I'm bound by that

18  would cause me to disregard the rulings of the Seventh and

19  Ninth Circuit, with respect to prevailing-party attorney's-fee

20  clauses?

21       MR. SCHECK:  Your Honor, in the Second Circuit, the

22  Manville case -- it was cited in our motion -- states that --

23  an indemnity claim there arose pre-petition "upon the signing

24  of the indemnity agreements".

25       THE COURT:  Yes, but an indemnity claim -- that's not

1    involved here; there's no issue about an indemnity claim here.

2    And I would fully agree that indemnity or contribution is a

3    contingent claim that would need to be asserted by a proof of

4    claim in the bankruptcy case.  That's not this case.  Agreed?

5         MR. SCHECK:  Agreed, but, Your Honor, the Second

6    Circuit's rule is clear regarding purely contractual claims.

7    These are still purely contractual claims arising out of a

8    contract.  And Congress was --

9         THE COURT:  Was it in the contemplation of these --

10        MR. SCHECK:  Your Honor --

11        THE COURT:  Stop.  Don't interrupt.

12        MR. SCHECK:  Sorry, Your Honor.

13        THE COURT:  Was it within the contemplation of these

14   parties that the trust was going to turn around and sue them

15   post-confirmation under the contracts that contained

16   prevailing-party attorney's-fee clauses?

17        MR. SCHECK:  Your Honor, the Pearl case in the

18   district court, which we cite in both our motion and reply,

19   states that, with respect to a contract, a breach of that

20   contract and rights arising out of that contract are within the

21   contemplation of the parties.  And that's why Congress

22   enacted -- or changed the definition of "claim" in the

23   Bankruptcy Code, which is to get rid of the uncertainty with

24   respect to the provability of claims.  And what that did --

25   Congress specifically said in the legislative history that they

1   were including within "claim" any claim no matter how

2   contingent or remote.

3        THE COURT:  Still has to be -- I thought the Second

4   Circuit case law still focuses on -- it has to be within the

5   contemplation of the parties; that's, I think, the term that's

6   been -- the phrase that's been used.  It has to be something

7   that would have been within the contemplation of the parties.

8   But where it's the trust, the post-confirmation trust brings

9   the lawsuit.  That's why I ask you the question do you have any

10  evidence that the pre-confirmation debtors made a demand on any

11  of these defendants for repurchase of the loans.  And you told

12  me you know of no such demand having been made.  That was

13  exactly why I asked to see whether you'd have an argument that

14  it was within the contemplation of the parties that such a

15  lawsuit that was filed post-confirmation would be filed.

16       MR. SCHECK:  Your Honor, I understand the test to be

17  within the presumed or actual contemplation of the parties at

18  the time the contract was entered.  And it doesn't relate to

19  specifically what exact contractual right is in question but

20  whether the party will breach the contract or whether the party

21  will take action that gives rise to rights under the contract.

22       THE COURT:  So what about -- you would agree that the

23  trust succeeded to the rights of the debtor, whatever they

24  were, at the time the confirmation -- at the time the plan can

25  be effective, correct?

1        MR. SCHECK:  Yes, Your Honor.

2        THE COURT:  And so with respect to one of these four

3   defendants, the settlements that had been entered into -- I

4   think you said Sierra Pacific?

5        MR. SCHECK:  Yes, Your Honor.

6        THE COURT:  -- had a covenant not to sue?

7        MR. SCHECK:  Yes, Your Honor.

8        THE COURT:  And the covenant not to sue becomes a

9   nullity upon confirmation, that you can go ahead and sue

10  despite the covenant not to sue, and any claim arising from the

11  covenant not to sue has been discharged?

12       MR. SCHECK:  Well, Your Honor, our position is that to

13  preserve that claim and any contingent rights under the

14  contract, Sierra Pacific, or whatever claimant it may be,

15  should file a proof of claim.

16       THE COURT:  So when they enter into a settlement,

17  which is what they did, and it included a covenant not to sue,

18  are they supposed to think that, oh, they're going to go ahead

19  and breach that contract and sue us anyway?  Is that what

20  your -- that's your position?

21       MR. SCHECK:  Well, Your Honor --

22       THE COURT:  That was supposed to be within the

23  contemplation of the parties at the time they enter into a

24  settlement agreement that includes a covenant not to sue, that,

25  hmm, maybe my counterparty to this contract will ignore the

1    express contractual covenant not to sue, that it's agreed, and

2    turn around right after confirmation and sue me anyway?  That's

3    your position?

4              MR. SCHECK:  I believe that's the position of the

5    Southern District of New York in the --

6              THE COURT:  You think so?

7              MR. SCHECK:  -- Pearl case, but --

8              THE COURT:  Point me to a case that would support that

9    proposition.

10             MR. SCHECK:  The Pearl case does support that

11   proposition --

12             THE COURT:  Does it really?

13             MR. SCHECK:  -- because it supports the proposition

14   that a breach is always within the presumed --

15             THE COURT:  Any breach, no matter what?  We don't have

16   to have any idea of what provision in a contract might be

17   breached?  Any provision of any contract?  So the rule you're

18   stating would mean that any party to any contract must -- when

19   no claim has been asserted, must nevertheless file a protective

20   proof of claim and require a court to determine whether what

21   the -- somebody's going to have to -- I'm going to have to go

22   through a claim objection and determine what that is?  That's

23   your position?

24             MR. SCHECK:  Your Honor, claimants -- it is our

25   position, because claimants all the time file purely contingent

1    protective proofs of claim based on --

2              THE COURT:  Well, if --

3              MR. SCHECK:  -- contracts.

4              THE COURT:  -- if I rule in your favor on this

5    argument, you're guaranteeing that ridiculous claims are going

6    to be filed, when there's no basis to think -- I mean, your

7    predecessor-in-interest enters into a contract with a cov --

8    look, I'm not saying that -- I'm not deciding now whether any

9    defense or any affirmative claim is valid; that's not an issue

10   for me.  Okay.  I'm dealing with -- you agree with that, I take

11   it?

12             MR. SCHECK:  Yes, Your Honor.

13             THE COURT:  Okay.  But the debtor -- one of the

14   debtors entered into a contract with Sierra, settling claims,

15   and including a covenant not to sue, and you inherit -- the

16   trust inherits the rights of both parties under that contract,

17   agreed?

18             MR. SCHECK:  Yes.

19             THE COURT:  Doesn't matter whether it's executory or

20   not.  You agree?

21             MR. SCHECK:  Yes, Your Honor.

22             THE COURT:  Okay.  And the Sierra contract included a

23   covenant not to sue, and the trust went ahead and sued.  And if

24   a court determines that by suing it breached that contract,

25   your position is any liability arising from that post-

 1   confirmation breach has been discharged?

 2           MR. SCHECK:  Your --

 3           THE COURT:  That's your position?

 4           MR. SCHECK:  Your Honor, yes, that it is our position,

 5   because the contract was entered into pre-petition and the bar-

 6   date order specifically said --

 7           THE COURT:  And there's not a single case in this

 8   circuit that has gone as far as you're arguing for.

 9           MR. SCHECK:  But the Second Circuit, Your Honor, has

10   created a bright-line rule from purely contractual claims that

11   arise out of pre-petition contracts.  There has not -- there

12   has been no case either way on the issue of a prevailing-

13   party's attorney's-fee clause.

14           THE COURT:  So when you dissect each of the cases in

15   this circuit that have found that -- because some of them

16   involve whether the claim should be a pre-petition unsecured

17   claim or whether it's a post-petition claim.  But did any of

18   those cases involve the issue of whether a post-confirmation

19   breach was -- any claim arising from a post-confirmation breach

20   was discharged?

21           MR. SCHECK:  They address -- I believe they address

22   whether a post-petition breach is discharged.

23           THE COURT:  No, I want -- could you answer my

24   question?

25           MR. SCHECK:  Sure.

1          THE COURT:  Look, let's not fence.  Listen to my
2     question --
3          MR. SCHECK:  Sure.
4          THE COURT:  -- answer my question, and then you can go
5     on and give a further explanation if you wish.  Do you agree
6     that there's no case from this circuit that determined whether
7     liability for a post-confirmation breach was discharged?
8          MR. SCHECK:  I agree, we have not seen a case from
9     this circuit.
10         THE COURT:  Okay.
11         MR. SCHECK:  I agree.
12         THE COURT:  All right.  All right, now go ahead and
13    you can give your further expl -- but when I ask a direct
14    question, I want a direct answer --
15         MR. SCHECK:  Understood, Your Honor.
16         THE COURT:  -- and then I'll allow you to elaborate.
17         MR. SCHECK:  I apologize.
18         THE COURT:  So if you want to go ahead and explain, go
19    ahead.
20         MR. SCHECK:  Your Honor, the Second Circuit is still
21    clear that what matters is that it was pursuant to a pre-
22    petition contract.  The time of the breach, regardless of
23    whether it was post-petition or otherwise, is not what's
24    relevant, because it's a purely contractual right.  And that's
25    completely in line with how Congress chose to define "claim" in

1  the Bankruptcy Code.  That was a change from the Bankruptcy

2  Act, which required provability.  And Congress meant to include

3  every single claim, no matter how remote or contingent.  And

4  these were contingent claims arising under a pre-petition

5  contract; they aren't based on post-petition tortious activity,

6  they aren't based on sanctions or fees awarded post-petition

7  pursuant --

8          THE COURT:  I'd like you to address the Ninth Circuit

9  Siegel and Ybarra cases.

10         MR. SCHECK:  Certainly, Your Honor.  Your Honor,

11 Ybarra was not a pre-petition contract case; the fees there

12 are --

13         THE COURT:  Deal with Siegel first; it's a 1998 case

14 and Ybarra is a 2005.  So deal with Siegel first.

15         MR. SCHECK:  Sure, Your Honor.  Your Honor, in Siegel

16 there are several important distinctions which we set forth in

17 our reply brief, and I think they are meaningful distinctions;

18 one is that -- one distinction, for example:  In Siegel, you

19 had a debtor that got the benefit of the discharge and also had

20 not objected to the creditors' proofs of claim; those claims

21 were allowed.  And then the debtor, for his own benefit, not

22 for the benefit of creditors or the estate, went forward and

23 pursued litigation over the same claims that had just been

24 allowed by the bankruptcy court, and the Ninth Circuit held

25 that those were not discharged.  Here you have a trust that is

1    pursuant to the terms of the plan and confirmation order that

2    gave it the responsibility and right to bring these claims,

3    bringing them for the benefit of creditors.  And we're not

4    doing so in direct violation -- or -- I'm sorry -- with respect

5    to claims that have been allowed, there was no claims process

6    here, because the claimants didn't file proofs of claim.  So

7    that issue is --

8              THE COURT:  Why does that bear on whether the

9    prevailing-party attorney's-fee clause remains effective post-

10   confirmation?

11             MR. SCHECK:  It bears on whether the liability of RFC

12   or the trust remains --

13             THE COURT:  No, but the court found liability on a

14   prevailing-party attorney's-fee clause, agree?

15             MR. SCHECK:  Yes, Your Honor.

16             THE COURT:  And the court found that liability on a

17   prevailing-party attorney's-fee clause was not discharged as

18   part of the bankruptcy, correct?  It would be unfair to do so?

19             MR. SCHECK:  Yes, Your Honor.

20             THE COURT:  And that same is true in Ybarra, correct?

21             MR. SCHECK:  Yes, Your Honor, although that was not

22   pursuant to an attorney's-fees clause in the contract; that was

23   by --

24             THE COURT:  Statute.

25             MR. SCHECK:  -- California statute.

1        THE COURT:  So why would it make a difference whether

2   it's prevailing-party attorney's-fees by statute versus by

3   contract, if -- why does that make a difference?

4        MR. SCHECK:  Your Honor, because the sanctions award,

5   for example, in Ybarra, was a post-confirmation sanctions

6   award, not pursuant to a pre-petition contract; so it didn't

7   have its grounding in a pre-petition contract, it wasn't a

8   contingent contractual claim.  And the Second Circuit again is

9   very clear about contingent contractual claims:  they arise

10  when the contract was executed.  Whether it be indemnity or

11  breach of contract, those claims are pursuant to a pre-petition

12  contract.

13       And to the extent that Siegel says otherwise, because

14  that is a pre-petition-contract case, we submit that it's

15  factually distinguishable and so the unfairness factors that

16  the Ninth Circuit cited are simply not at play here.

17       THE COURT:  So --

18       MR. SCHECK:  And --

19       THE COURT:  -- which is the Seventh Circuit case?  Is

20  it Ruben?

21       MR. SCHECK:  The Seventh Circuit case is Ruben.

22       THE COURT:  Yeah.

23       MR. SCHECK:  And Reuben was also not a pre-petition

24  contract case, in the sense that the arbitration fees at issue

25  there did not arise out of a pre-petition contract; they arose

1  out of the arbitrator's award of attorney's fees post-petition.

2  And in fact --

3          THE COURT:  What was the basis for the award of

4  attorney's fees by the arbitrator?

5          MR. SCHECK:  The arbitrator found that Mr. Ruben, who

6  was the debtor, had actually committed -- well, found that the

7  acts for which he was being sued, which was under a fraud

8  theory, had already been compensated but that the plaintiff

9  shouldn't have to pay the arbitration costs for those claims;

10 it was a nondischargeable fraud claim.  And so it makes sense

11 that the fees associated with it were also nondischargeable.

12 And it's also a factor that the Seventh Circuit cited that one

13 of the reasons for their decision was that the disciplinary

14 board had actually found that Mr. Ruben had engaged in some of

15 his fraudulent conduct post-petition and continued to defend

16 his fraudulent conduct.  So that was a factor in the Seventh

17 Circuit's decision, which they cited specifically.  And those

18 same circumstances are simply not present here.

19         And, Your Honor, that theme runs through the cases

20 that the claimants cite; they cite the Wuthrich case, which is

21 a 2015 Northern District of California case, and in that case

22 the debtor was the sole shareholder of a company and he induced

23 another company to sell him goods and then didn't pay for the

24 goods.  And they found that he didn't receive a discharge

25 because (1) the creditor didn't even receive notice of the

1    bankruptcy at all, which is certainly not the case here; they

2    received notice at every step.  The creditor also supplied

3    goods post-petition for the benefit of the company and the

4    shareholder.

5              So all of those cases the defendants -- I'm sorry --

6    that the claimants rely upon are distinguishable; the unfair

7    circumstances that were at play there were completely

8    different.  And only the Siegel case and the Sure-Snap case

9    arose out of pre-petition contracts.

10             THE COURT:  Okay, talk about Sure-Snap.

11             MR. SCHECK:  Sure.  In Sure-Snap it's actually very

12   similar to Siegel because --

13             THE COURT:  It's Eleventh Circuit.  Go ahead.

14             MR. SCHECK:  Yes.  In Sure-Snap, the reorganized

15   debtor, again on its own behalf, after receiving a discharge,

16   pursued litigation not for the benefit of creditors but for

17   itself, and it --

18             THE COURT:  This litigation is being pursued for the

19   benefit of creditors, right?  But you standing in the shoes of

20   the debtor, okay, why does that make a difference?

21             MR. SCHECK:  I understand, Your Honor, and on the law

22   the Ninth Circuit and the Eleventh Circuit cases, since they

23   cannot be reconciled with the Second Circuit cases on pre-

24   petition contracts --

25             THE COURT:  Well, they can be reconciled, because none

1   of the Second Circuit cases involved post-confirmation conduct

2   by the debtor or the debtor successor.  So you want me to apply

3   language in earlier Second Circuit, district court or

4   bankruptcy court decisions that perfectly proper, as applied to

5   the facts in those cases -- you want to -- you've acknowledged

6   that there are no cases from any level court in the Second

7   Circuit that deal with post-confirmation conduct and whether

8   the liability for claims based on post-confirmation conduct, at

9   least not within the reasonable contemplation of the parties

10  earlier -- you want me to just extend the prior cases in the

11  Second Circuit to apply here and say that it discharged any

12  liability?

13          MR. SCHECK:  Yes, Your Honor, because the conduct in

14  question, when it comes to a purely contractual claim as are

15  being brought here, is the conduct of executing the contract.

16          THE COURT:  How was Sierra supposed to -- was it

17  supposed to presume that allegedly -- I mean, look, with

18  respect to Sierra, it mostly showed that through amendments of

19  the pleadings, when there were originally 3,000-and-some-odd

20  loans in suit, it's now been reduced to 500.  But nevertheless,

21  the litigation continues as the 500.  So whether or not -- I

22  want to make clear, none of my comments are intended to suggest

23  that there has been an actionable breach of a covenant not to

24  sue.  Okay.  I'm asking hypothetical questions.  Okay, but

25  someone later reads this transcript, if I rule in favor -- if I

1  deny your motion and Judge Nelson subsequently has before her

2  proceedings regarding Sierra, my questions are really intended

3  to be hypothetical.  Okay?

4           So let's assume that all of the loans in suit were

5  covered by the prior settlements -- let's take that

6  hypothetical -- and a covenant not to sue is granted.  Was

7  Sierra supposed to assume during the bankruptcy -- were they

8  supposed to presume that the debtors or the debtor successor-

9  in-interest would simply ignore an express covenant not to --

10  settlement agreement and covenant not to sue, and sue on the

11  same loans again and, any damages flowing from that, the

12  liability was discharged?  What supports that argument?

13           MR. SCHECK:  In the hypothetical, Your Honor, Sierra

14  is supposed to protect its rights by filing a contingent proof

15  of claim, which is done all the time.

16           THE COURT:  Is it really?

17           MR. SCHECK:  Directors and officers file proofs of

18  claim, even when there's no pre-petition litigation, for

19  contingent rights to reimbursement, under contracts or under

20  articles of the company.

21           THE COURT:  You think they really do that, when there

22  hasn't been any threatened or commenced securities litigation

23  or breach-of-fiduciary-duty litigation?  You think that the

24  former directors, officers, just as a matter of course, file

25  protective proofs of claim just in case somebody should turn

1  around and sue me?

2          MR. SCHECK:  Certainly, when there's not commenced

3  litigation, I believe they do, and I believe they did so in

4  this case.  One director -- I actually just yesterday in

5  searching proofs of claim, public record, looked at a proof of

6  claim filed against one of the debtors:  Proof of Claim 4452.

7  I'll give a copy to the claimants.  And if Your Honor doesn't

8  mind, I can hand it up.

9          THE COURT:  Sure; come on.

10         Thank you.

11         MR. SCHECK:  And, Your Honor, this is Proof of Claim

12 4452 filed against Debtor GMAC Model Home Finance I, LLC, by

13 Ronald Kravit.  And in this proof of claim, if you turn to page

14 1 of the addendum, in paragraph 5 Mr. Kravit states, "In the

15 event an action or proceeding is commenced against Claimant,

16 for which Claimant may have a claim for indemnification under

17 contract or applicable law, Claimant seeks to preserve such

18 rights against the debtors and all affiliates and

19 subsidiaries."  And, Your Honor, this is just illustrative that

20 when you have a contract -- and as I mentioned before, these

21 parties had contracts pursuant to which they were selling --

22 they sold billion dollars -- hundreds of million dollars of

23 loans, with a counterparty that goes into bankruptcy -- you

24 receive, just as these claimants did, a notice telling you that

25 you need to file a claim to preserve your rights; and that

1    includes, under the Bankruptcy Code, contingent claims.  And

2    the Second Circuit's law is clear the contingent claims include

3    those arising under a pre-petition contract; the second that

4    contract is executed, there are contingent claims --

5          THE COURT:  So it's within -- obviously the debtor or

6    a successor has no control over what third parties may do.  And

7    you say that same rule ought to apply, they just ought to

8    presume that whatever the debtor has -- whatever position --

9    give me a covenant not to sue, settled -- ask you

10   hypothetically to assume that they settle as to loans, so it

11   isn't at issue whether it's 500; it's still being disputed --

12   that unless -- and we're in a contract where by law has a

13   prevailing-party attorney's-fee provision.  You're saying

14   nevertheless you need to go ahead and file a contingent claim

15   in order to preserve your rights?

16         MR. SCHECK:  Yes, Your Honor.  If I under --

17         THE COURT:  All right.  Let me hear from the other

18   side, because I got a very heavy calendar this morning.  Thank

19   you very much.

20         MR. SCHECK:  Thank you, Your Honor.

21         MR. BLATT:  Good morning, Your Honor.  David Blatt on

22   behalf of Decision One.  Your Honor asked three times of

23   counsel whether he can identify any case, in this circuit, that

24   addressed the issue of post-confirmation conduct by a debtor,

25   and three times he said he wasn't able to.

1              THE COURT:  But the cases --

2              MR. BLATT:  And I would take that one step fur --

3              THE COURT:  But, you know, he is correct that the

4    cases from the Second Circuit, district courts, bankruptcy

5    courts, use the language about any claims based on a pre-

6    petition contract --

7              MR. BLATT:  And --

8              THE COURT:  -- or discharge.

9              MR. BLATT:  And the general mantra or principle that

10   they are invoking is that principle of a post-petition breach

11   of a pre-petition contract gives rise to a pre-petition claim.

12   And what I have --

13             THE COURT:  Well, it's even -- I mean, at least one

14   case talks about post-confirmation breach --

15             MR. BLATT:  Well, I --

16             THE COURT:  -- of a pre-petition contract.

17             MR. BLATT:  -- I would say there is no -- actually,

18   not only is there no case in the Second Circuit, but they're

19   not able to cite a single case in the country, in which a post-

20   confirmation conduct by the debtor was held to discharge a pre-

21   petition contract.  There's not a single authority.  And as

22   Your Honor noted, were this court, in this circuit, this

23   jurisdiction, to rule for Plaintiff in this case, I think it

24   would actually create a circuit split with the Ninth, the

25   Eleventh and the --

1           THE COURT:  Well --

2           MR. BLATT:  -- Seventh Circuits.

3           THE COURT:  -- what a bankruptcy judge does doesn't

4    create a circuit split, so --

5           MR. BLATT:  That's why I said were courts --

6           THE COURT:  Were it only so --

7           MR. BLATT:  -- in this jurisdiction.

8           THE COURT:  -- but, you know, it --

9           MR. BLATT:  But it would be --

10          THE COURT:  -- doesn't work that way.

11          MR. BLATT:  -- it would be unprecedented, and the

12   reason is that courts have articulated two exceptions to that

13   general principle, the principle that they're evoking.  And the

14   first exception that the courts of appeals have invoked is they

15   uniformly hold that when a debtor post-petition chooses to

16   return to the fray, they're free and clear and they choose to

17   return to the fray and use a contract as a weapon, it's

18   perfectly just and within the purposes of bankruptcy law to

19   allow the same weapon to be used against them.  That's the

20   principle articulated by Siegel; it's the principle articulated

21   by -- Siegel, Ninth Circuit; Sure-Snap in the Eleventh Circuit.

22          These are the only cases, by the way, that are cited

23   by either party in a motion, where a debtor post-discharge

24   pursued litigation, actively pursued litigation, based on a

25   pre-petition contract.  And both allow the fee claims against

1   the debtor.  And the trust tries to distinguish Siegel, but no

2   distinction addresses that basic principle that when a debtor

3   engages in a new course of conduct by filing litigation, by

4   filing a lawsuit post-discharge, it is subject to potential

5   liability for harm that it causes by that post-discharge

6   conduct.

7            THE COURT:  Mr. Blatt, let me ask you -- because I

8   asked Mr. Scheck about Judge Hardin's decision in Texaco and I

9   quoted the language.  Part of his answer was, well, that was an

10  executory contract.  What's your position as to whether these

11  contracts were executory contracts?

12           MR. BLATT:  Well, we have not -- and I don't know the

13  answer to that, Your Honor, because we haven't developed a

14  position on that, because it's not necessary for this

15  proceeding.

16           THE COURT:  You agree that they were rejected -- if

17  they were executory contracts, the plan rejected them?  They

18  weren't --

19           MR. BLATT:  And --

20           THE COURT:  -- expressly assumed and the plan

21  provided, unless expressly assumed, contracts are rejected?

22           MR. BLATT:  That's what they say --

23           THE COURT:  Well --

24           MR. BLATT:  -- and I can't --

25           THE COURT:  -- do you dispute that?

1        MR. SCHECK:  -- I don't -- no, Your Honor, I don't --

2        THE COURT:  Okay.

3        MR. BLATT:  -- I don't dispute that.

4        THE COURT:  All right.  So what Judge Hardin said, is

5   it limited to executory contracts that ride through bankruptcy?

6        MR. BLATT:  No.  I think the general principle that

7   courts both in the Seventh and Ninth Circuit and the Eleventh

8   Circuit and other courts as well, in the district courts -- and

9   I think counsel referred to the Northern District of California

10  case, and other district courts, that when there's post-

11  confirmation conduct by a debtor, that post-confirmation

12  conduct does not give rise to a pre-petition claim.  And that's

13  the second exception; the first one was, when the debtor

14  returns to the fray, tries to use the contract as a weapon, it

15  is within the purposes of the bankruptcy law that the weapon

16  can be used against it.

17        The second exception is that it does not give rise to

18  a pre-petition claim when a debtor engages in voluntary, post-

19  confirmation, affirmative conduct; that's what the Sure-Snap

20  case held, that's what Wuthrich held, that's what the Spencer

21  case held.  They're not able to cite a single case disputing

22  that, not one.  There's not a single case.

23        And --

24        THE COURT:  Let me ask you this:  Siegel, Ybarra,

25  Sure-Snap, they all involved prevailing-party attorney's-fee

1  clauses?

2          MR. BLATT:  Some did, some didn't.  Some --

3          THE COURT:  Which didn't?

4          MR. BLATT:  The Ruben case did not; that was the

5  arbitration award.

6          THE COURT:  Right.

7          MR. BLATT:  The Ybarra case, I believe, was a

8  statutory.

9          THE COURT:  Okay.  But the --

10         MR. BLATT:  And the other two, Sure-Snap and Siegel,

11 did involve prevailing-party attorney-fee.  And what the cases

12 they cite set forth is in footnote 12 of our opposition brief;

13 they involve contingencies that are triggered by one of the

14 three things:  they're triggered either by a third party's

15 actions, not the debtor's; they're triggered by pre-discharge

16 conduct -- they don't take any dispute with that.  We put that

17 in our brief.  They haven't challenged that.  And in the reply

18 brief, they also -- the cases, they involve -- the Texaco case,

19 the Chrysler case, the Applied Theory, the Drexel, the Caldor,

20 the Bradlees cases, those involve pre-discharge conduct and

21 whether they qualify for administrative priority, which is

22 obviously a different situation here.

23         Their lead cite is the Caldor case; they said it again

24 today.  And the Caldor case was whether a claim arose during

25 the operating period during the bankruptcy or during the wind-

1  down period during --

2          THE COURT:  I understand that.  I understand the

3  distinction you're drawing.  Let me ask a different question.

4  At least one of these defendants -- maybe all of them; maybe

5  all the four -- have asserted as a breach the sole-remedy

6  provision in some of the contracts.  And certainly when the

7  issue was presented to me on a motion to dismiss, I denied a

8  motion to dismiss, based on the sole-remedy clause in at least

9  some of the contracts.  Did Judge Nelson address that in any

10  decisions?

11          MR. BLATT:  Your Honor, unfortunately I'm not the one

12  of these four --

13          THE COURT:  Well, ask your --

14          MR. BLATT:  -- who can answer that --

15          THE COURT:  We got a lot of lawyers here, so --

16          MR. BLATT:  -- because in the Decision One case, we

17  actually have a specific --

18          THE COURT:  Yes, I know.

19          MR. BLATT:  Yes.  And so --

20          THE COURT:  You have --

21          MR. BLATT:  -- we --

22          THE COURT:  You tout your unique provision unlike any

23  of the other contracts.

24          MR. BLATT:  To which I heard today that they have no

25  evidence in which they actually gave an opportunity to

1    repurchase and cure.  And so I actually think that it's a --

2              THE COURT:  Well, I'm not so sure about that, but --

3              MR. BLATT:  We'll get to -- that's not for this

4    proceeding.

5              THE COURT:  That Judge Nelson can deal with.  Can you

6    ask your colleagues, did Judge Nelson rule on any motions to

7    dismiss because of the alleged sole-remedy-clauses provision in

8    contracts?

9              MR. BLATT:  I don't think she did -- I'm not aware of

10   her doing that but --

11             THE COURT:  Okay.

12             MR. BLATT:  -- if someone knows --

13             THE COURT:  But you've already acknowledge that you're

14   not really --

15             MR. BLATT:  I'm not the person to --

16             THE COURT:  I know, but you've got other people here

17   who are involved.

18             MR. STEWART:  Your Honor, I'm not aware of any.

19   Chris --

20             THE COURT:  You -- okay.

21             MR. STEWART:  -- Stewart.

22             THE COURT:  Okay, Mr. Stewart.  Thank you.

23             MR. BLATT:  Now, interesting --

24             THE COURT:  So but let me -- but here's my point.

25   Your arguments with respect to the prevailing-party attorney's-

1   fee clause is -- I'm not deciding anything today, but it's

2   obviously resonated with me.  Okay?  And it's consistent with

3   the Ninth Circuit decisions and the Seventh Circuit decision,

4   which argue -- whether unfairness is enough to tip the balance,

5   they argue it would be unfair to allow a debtor or its

6   successor, post-confirmation, to sue on a contract that had a

7   prevailing-party attorney's-fee clause, or where there's a

8   state statute for prevailing-party attorney's-fees, and say oh,

9   that claim is discharged because you didn't file a proof of

10  claim.  Okay?

11       But I'm not sure that the issue is the same where the

12  alleged breach, if it was a breach, was that there was a sole-

13  remedy provision in the contract.

14       You've asserted -- you go out of your way in your

15  papers to say nothing before the Court now determines -- and

16  they've said as well, none of this determines what defenses may

17  be valid defenses to the claims that the Trust has asserted.

18  But I'm having trouble with where the alleged breach is not of

19  a prevailing-party attorney's-fee clause.  They still have to

20  prevail in order to -- you still have to prevail in order to

21  recover under it.

22       Go ahead.

23       MR. BLATT:  But Your Honor, I think the clauses stand

24  on the same footing under the principles articulated by the

25  cases.  By --

1        THE COURT:  No, not the Ninth Circuit cases that --

2    not the cases that talk about it would be unfair to allow them

3    to sue on the contract but say that the prevailing-party

4    attorney's-fee provision is discharged.

5        MR. BLATT:  And that certainly was the specific

6    circumstances in which that arose.  But the language of the

7    court was that it's just and within the purposes of

8    bankruptcy -- I think the bankruptcy law -- to allow the same

9    weapon to be used against the debtor who's asserting it.

10       And I don't think that's limited to an attorney fee

11   provision.  If, for instance, they argue --

12       THE COURT:  I might feel different -- I feel -- your

13   argument is stronger with respect to the covenant not to sue,

14   express promise not to file a lawsuit.

15       MR. BLATT:  And that's what we have in Decision One.

16       THE COURT:  Now, what you have as to 2,500 loans but

17   not 500, approximately.  Do you agree with that?

18       MR. BLATT:  Yes.

19       THE COURT:  There are approximately 500 loans that

20   remain in suit in the Minnesota court.  Not for the --

21       UNIDENTIFIED SPEAKER:  Your Honor, that was ours.

22   That was CRO.

23       THE COURT:  I'm sorry, that's CRO.  I'm sorry.

24       MR. BLATT:  May I --

25       THE COURT:  Yeah, I only have a few minutes, because

1  I've got a long calendar of other things this morning, but I'm

2  going to cut you off soon.

3          MR. BLATT:  Okay.  Anytime.

4          THE COURT:  Sure.

5          MR. BLATT:  So the provision --

6          THE COURT:  It's usually Mr. Nesser who hands up books

7  with slides.  I can't remember whether Mr. Johnson has done

8  that before.  Probably.  Go ahead.  I'm sorry.

9          MR. JOHNSON:  Maybe.  One or two times.

10          THE COURT:  I'm sorry, go ahead, Mr. Blatt.

11          MR. BLATT:  And this is the provision in the Decision

12  One contract, that RFC shall not exercise any rights,

13  remedies -- any other rights and remedies with respect to

14  Decision One, the client, or any affected loan, unless and

15  until the client's first been afforded the opportunity to cure

16  or repurchase such affected loan.

17          THE COURT:  Yeah, but in my decision on the motions to

18  dismiss in this case, I certainly left open the issue whether,

19  for example, such a clause would bar a claim for

20  indemnification where they went ahead and settled.  So it's

21  not -- I understand your argument, but I put it on a different

22  footing than I would either a covenant not to sue or

23  prevailing-party attorney's-fee clause.

24          MR. BLATT:  Well, and Your Honor, there are -- we've

25  cited multiple cases here that have allowed the claims other

RESIDENTIAL CAPITAL, LLC, et al.                    44

1    than for attorney fees.  In the Wuthrich case it was a claim

2    for a breach of contract.  In the Spencer case it was a claim

3    for a breach of payment on a condo assessment.  Obviously, in

4    the Siegel case it talks about allowing the weapon to be

5    used -- the weapon that the debtor uses to be used against it.

6    There are obviously -- and I know they are distinguishing --

7    but the Lear case, the O'Loghlin case, the Velo case --

8            THE COURT:  I've read everybody's briefs.

9            MR. BLATT:  Okay.  All right.

10           THE COURT:  I'm going to take this matter under

11   submission.

12           MR. BLATT:  Thank you, Your Honor.

13           THE COURT:  Thank you very much, Mr. Blatt.

14           MR. BLATT:  Okay.

15           THE COURT:  All right.  Let me ask -- I don't want to

16   hear any more argument.  Is there anyone here for either the

17   Trust or Gosselin, with respect to what was on the calendar for

18   a case management conference with respect to the remaining

19   claims of Rhonda Gosselin?

20           I don't know why they're not here.  It's on the

21   calendar.  All right.  We're going to take a short recess.  My

22   courtroom deputy has to patch additional people in on

23   CourtCall.

24       (Recess from 10:52 a.m. until 11:04 a.m.)

25           THE COURT:  All right, please be seated.

1          MR. JOHNSON:  Your Honor, just to clarify for --

2          THE COURT:  You have to identify yourself.

3          MR. JOHNSON:  Sorry.  Matt Johnson on behalf of HSBC

4    Mortgage Corp.  Just on behalf of some of the folks that were

5    here on the ResCap Liquidating Trust litigation.  We understand

6    the motion was finished.  We were unclear about whether you're

7    moving into a new matter --

8          THE COURT:  I am.

9          MR. JOHNSON:  Okay.

10         THE COURT:  I know you had requested a conference.

11   We're going to have to do that by telephone.  We'll do it by

12   telephone.  I just -- I've got a full calendar today.

13         MR. JOHNSON:  Understood, Your Honor.  We were just a

14   little unclear.

15         THE COURT:  And I guess my -- if we were able to

16   finish by 11 o'clock -- before 11 o'clock, I would have had a

17   discussion about the issues that remain.  What I would suggest

18   is that the two of you talk with my courtroom deputy, see if

19   you can work out a convenient -- I know you've got a lot of

20   other people here who maybe want to be heard as well -- but see

21   if you can work out a mutually convenient time for a call with

22   the Court.

23         I typically do those telephone conferences later

24   afternoon, then everybody can -- somebody just has to arrange a

25   call-in number.

RESIDENTIAL CAPITAL, LLC, et al.                    46

1          MR. JOHNSON:  Sure.

2          THE COURT:  Deanna can give you a date, okay?

3          MR. JOHNSON:  Very well.

4          THE COURT:  I just am jam-packed today.

5          MR. JOHNSON:  Understand.  Thank you, Your Honor.

6          THE COURT:  Okay?  Thanks very much.

7      (Whereupon these proceedings were concluded at 11:05 AM)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                              C E R T I F I C A T I O N

3

4    I, David Rutt, certify that the foregoing transcript is a true

5    and accurate record of the proceedings.

6

7

8

9

10

11   _____

12   DAVID RUTT

13   AAERT Certified Electronic Transcriber CET**D 635

14

15   eScribers

16   700 West 192nd Street, Suite #607

17   New York, NY 10040

18

19   Date:  October 9, 2015

20

21

22

23

24

25